

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL No. 1657 |
|     Products Liability Litigation | * | |
| | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | DANIEL E. KNOWLES, III |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIS DOCUMENT RELATES TO: *Cook v. Merck & Co., Inc. et al.*, No. 05-0431, previously filed as CV-02-RRA-2710-S, N.D.Ala.

## DEFENDANTS' OBJECTIONS TO, AND MOTION TO REVIEW, THE MAGISTRATE'S FEBRUARY 10, 2005, REMAND ORDER

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Defendants Merck & Co., Inc. ("Merck"), Gary Harlan, and Robert Wall (Harlan and Wall are referred to herein as "Employee Defendants") object to the Magistrate's Order of February 10, 2005 (a copy of which is attached hereto as Exhibit A), remanding this case to state court and as grounds therefore state:

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of costs and interest, Plaintiff is diverse from Merck, and the Employee Defendants are fraudulently joined.

2.      Plaintiff's original Complaint, as well as his proposed Amended Complaint, demonstrates that, under the facts of this case, there is no possibility that the Plaintiff would be

___ Fee_____
___ Process_____
X  Dktd_____
V  CtRmDep_____
V  Doc. No _____

able to establish a cause of action against the Employee Defendants, both of whom are non-diverse, Alabama residents, in Alabama state court.  The Employee Defendants are therefore fraudulently joined.

3.      To the extent the Magistrate allowed the Plaintiff to rely on allegations that were not included in his original Complaint in order to avoid this Court's jurisdiction, the Magistrate erred.

4.      To the extent the Magistrate allowed the Plaintiff to amend the Complaint in order to avoid this Court's jurisdiction, the Magistrate erred.

Defendants are simultaneously filing a memorandum of law in support of these objections, which is incorporated herein by reference.

A copy of the Defendants' Objections to, and Motion to Review, the Magistrate's February 10, 2005, Remand Order and Memorandum in Support, moreover, are being delivered to Judge Eldon E. Fallon, Magistrate Judge Daniel E. Knowles, III, the magistrate judge in this MDL, and Magistrate Judge Robert R. Armstrong, Jr., the ruling magistrate judge in this case.

Respectfully submitted,

By: _____

    Richard C. Stanley, 8487
    Bryan C. Reuter, 23910
    W. Raley Alford, III, 27354
    Thomas P. Owen, Jr., 28181
**STANLEY FLANAGAN & REUTER, L.L.C.**
909 Poydras Street, Suite 2500
New Orleans, LA  70112
Telephone:  (504) 523-1580

Thomas E. Walker
Helen Kathryn Downs
**JOHNSTON BARTON PROCTOR &
POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618
Telephone:     (205) 458-9500
Facsimile:     (205) 458-9500

Norman C. Kleinberg
Theodore V.H. Mayer
Charles Avrith
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York  10004
Telephone:     (212) 837-6000
Facsimile:     (212) 422-4726

Attorneys for Defendants
Merck & Co., Inc., Gary Harlan,
and Robert Wall

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Defendants' Objections to, and Motion to Review, the Magistrate's February 10, 2005, Remand Order has been served upon the following counsel of record as well as all counsel of record listed on Schedule B to Pretrial Order No. 1 via facsimile and/or United States Mail, postage pre-paid this 25th day of February, 2005:

> Andy D. Birchfield, Jr., Esq.
> J. Paul Sizemore, Esq.
> Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
> Post Office Box 4160
> Montgomery, Alabama  36103-4160
>
> W. Lewis Garrison, Jr., Esq.
> Garrison Scott P.C.
> 2224 1st Avenue North
> Birmingham, Alabama  35203

FILED

2005 Feb-10  PM 01:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

WILLIAM COOK,                    )
                                 )
          Plaintiff,             )
                                 )
vs                               )     CIVIL ACTION NO. 02-RRA-2710-S
                                 )
MERCK & COMPANY, INC., et al,    )
                                 )
          Defendants.            )

## ORDER

The motion to remand is **GRANTED**, and this case is ORDERED remanded to the state court from which it was removed.  The Clerk shall effect the remand after ten (10) days.[1]

DONE this day 10th of February, 2005.

ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE

---

[1]The parties are directed to Rule 72(b), *Federal Rules of Civil Procedure*, and the General Order of Referrals of Civil Matters to United States Magistrate Judges at paragraph 5.

**EXHIBIT A**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | * MDL No. 1657 |
|     Products Liability Litigation | * |
| | * SECTION L |
| | * |
| | * JUDGE ELDON E. FALLON |
| | * |
| | * MAGISTRATE JUDGE |
| | * DANIEL E. KNOWLES, III |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

THIS DOCUMENT RELATES TO: *Cook v. Merck & Co., Inc. et al.*, No. 05-0431, previously filed as CV-02-RRA-2710-S, N.D.Ala.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S
## FEBRUARY 10, 2005, REMAND ORDER

Defendants, Merck & Co., Inc. ("Merck"), Gary Harlan, and Robert Wall (Harlan and Wall are referred to collectively in this memorandum as "Employee Defendants"), through their undersigned counsel, respectfully submit their Objections to the recommendation of Magistrate Judge Robert R. Armstrong, Jr., of the United States District Court for the Northern District of Alabama, that this case be remanded to state court. Defendants are submitting these objections in the understanding that the time-period set forth in 28 U.S.C. § 636 is jurisdictional in nature and thus cannot be extended by the Court's general order suspending briefing deadlines. Nonetheless, Defendants believe that the Court should consider this remand motion as part of a coordinated process, along with other cases in which plaintiffs have improperly sued Merck employees in an effort to evade diversity jurisdiction.

## PROCEDURAL SUMMARY

The complaint initiating this civil action was filed on October 1, 2002. On November 4, 2002, Merck timely removed this action to the United States District Court for the Northern District of Alabama (the "Northern District") based on diversity jurisdiction. Pursuant to the Northern District's General Order for Referral of Civil Matters to the United States Magistrate Judges dated May 8, 1998 (the "General Order"), every sixth civil case filed in the Northern District is assigned "to a magistrate judge randomly selected, who shall be responsible for all pretrial management of the cases assigned to him or her in this manner, including determination of all non-dispositive motions in the case." This case so qualified, and was assigned to Magistrate Judge Armstrong. Neither side consented, pursuant to 28 U.S.C. § 636(c), to jurisdiction by a magistrate judge.[1]

On November 18, 2002, the plaintiff moved to remand this case to state court. The parties subsequently filed various submissions in support of and in opposition to the motion to remand. Eventually, on February 10, 2005, Magistrate Judge Armstrong entered a two-sentence order providing that at the expiration of ten days, the case was to be remanded to state court. Under the Northern District's General Order, Merck and the Employee Defendants had the right to seek review of the Magistrate's remand order. Merck and the Employee Defendants were in the process of preparing their objections to the order when, on February 16, 2005, the Judicial Panel on Multidistrict Litigation (the "Panel") entered its Transfer Order, which specifically transferred this case, among others, to the Eastern District of Louisiana for coordinated pretrial proceedings. On February 17, 2005, the Panel's Transfer Order was filed with the Clerk's Office in the Eastern District of Louisiana, thereby vesting exclusive jurisdiction over this case in the

Eastern District of Louisiana. Accordingly, Merck and the Employee Defendants have filed Defendants' Objections to the Magistrate's February 10, 2005, Remand Order in the Eastern District of Louisiana, along with this Memorandum in Support.

## PRELIMINARY STATEMENT

In the MDL litigation involving the diet drug combination popularly known as fen-phen, the United States District Court for the Eastern District of Pennsylvania – the court charged by the Judicial Panel on Multidistrict Litigation with the responsibility for overseeing literally thousands of the diet drug cases – surveyed the overwhelming evidence of fraudulent joinder of defendants such as sales representatives in those cases and concluded that such improper and blatant forum manipulation "can only be characterized as a sham, at the unfair expense not only of [the drug manufacturer] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the drug manufacturer], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002). The court in *Anderson* found that plaintiffs in the diet drug litigation "are engaging in improper efforts to prevent [the drug manufacturer] from exercising its statutory right … to remove cases based on diversity of citizenship to the federal court …." *Id.*

Plaintiff here has done the same thing. William Cook ("Cook") is attempting to prevent Merck, the manufacturer of VIOXX®, from exercising its statutory right to remove this case to federal court. In support of that effort, he has named as defendants two sales representatives, Harlan and Wall, both of whom are non-diverse, Alabama residents, despite there being no possibility of a valid cause of action against them under Alabama's substantive law.

---

[1] To the contrary, on or about March 11, 2003, the plaintiff filed a Request for Reassignment of Case to a United States District Judge, which was denied by Order dated March 12, 2003, as being premature.

## **BACKGROUND**

Cook commenced this action on October 1, 2002, against, among others, Merck and the Employee Defendants by filing a Complaint in the Circuit Court of Jefferson County, Alabama, Bessemer Division.  He alleges in his Complaint that "VIOXX® caused [him] to suffer personal injury and damages."  (Complaint at 1.).   He asserts causes of action for designing, manufacturing, and/or selling a defective product and for failure to warn ("Count I") (Complaint ¶¶ 17-21); negligence ("Count II") (*Id.* ¶¶ 22-25); breach of express warranty ("Count III") (*Id.* ¶¶ 26-31); breach of implied warranty ("Count IV") (*Id.* ¶¶ 32-36); and negligent, reckless, intentional and fraudulent misrepresentation ("Count V") (*Id.* ¶¶ 37-40).   Throughout his complaint, Cook refers to the defendants collectively as "Defendants" and appears to be asserting each claim against all defendants.  Cook did not describe any specific conduct on the part of the Employee Defendants, nor did he allege that the Employee Defendants personally participated in any wrongdoing.

On November 4, 2002, Merck timely removed this action based on diversity jurisdiction, maintaining that the only non-diverse defendants, the Employee Defendants, were fraudulently joined.

On November 18, 2002, Cook moved to remand this case to state court.  Merck filed its opposition to the motion to remand on January 3, 2003.  Subsequently, both Cook and Merck provided the Court with supplemental briefs on the issue of fraudulent joinder.  Merck's submissions provided the Court with relevant authority and argument establishing that the Employee Defendants were not "sellers" or "suppliers" of VIOXX® for purposes of the

4

Alabama Extended Manufacturers Liability Doctrine (or "AEMLD")[2] or of Alabama's version of the Uniform Commercial Code, that Cook had not alleged personal participation by the Employee Defendants in any of the alleged wrongful conduct by Merck, and that Cook's allegations of fraud failed to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

On July 15, 2004, Magistrate Judge Armstrong entered an order stating that "[i]n order to consider the motion to remand, the Court desires to know what misrepresentations material to the Complaint were made by the individual defendants." The Court ordered Cook to state with "specificity" the material misrepresentations allegedly made by the Employee Defendants.

In response to the Court's July 15, 2004 order, Cook filed a motion for leave to amend the Complaint to add an additional count, Count VI.[3]  Cook's proposed Count VI refers to and attaches as exhibits certain bulletins or notices to Merck professional representatives and documents referred to by plaintiff as training materials (collectively, "Training Materials"). *See* (Amended Complaint Exhibits A, B, C, D, E, I, and J.) Cook also refers to a portion of the deposition of his prescribing physician, Dr. Reid Christopher (*Id.* Ex. F), and to certain Merck-created documents other than Training Materials, including sample responses drafted by Merck to be used to respond to unsolicited requests from physicians for additional information on various topics (*Id.* Ex. H) and a detail piece created by Merck at some point in 2000 (*Id.* Ex. G). Cook also refers to and attaches three (3) memos to field personnel that did not discuss substantive information regarding the safety and efficacy of VIOXX® (*Id.* Ex. K and L). All of

---

[2]   The AEMLD is a judicially created doctrine that was first recognized by the Supreme Court of Alabama in *Atkins v. American Motors Corp.*, 335 So. 2d 134 (Ala. 1976), and its companion case, *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128 (Ala. 1976). *See Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1310 (11th Cir. 2000).

the exhibits to Cook's proposed amended complaint, except for the excerpts from the transcript of the deposition of Dr. Reid Christopher, were produced by Merck to plaintiff's counsel in August 2002, two (2) months before Cook filed his original complaint in this action. (*See* Declaration of Charles W. Cohen in support of Merck's Opposition to Plaintiff's Motion to Amend Complaint and Response to Court's July 15, 2004 Order Regarding Plaintiff's Motion to Remand, dated August 9, 2004, and filed August 10, 2004). According to Cook, these materials contain misstatements concerning the cardiovascular safety of VIOXX®. (Amended Complaint ¶¶ 48, 50). Cook also alleges, without support, that the Employee Defendants were required by Merck to repeat such misstatements to physicians. (*Id.* ¶ 50).

On July 23, 2004, the Magistrate Judge entered the following order:

> In the order of July 5, 2004, concerning remand, the plaintiff was ordered to state, with specificity, the material misrepresentations made by the individual defendants. The plaintiff responded by filing a motion for leave to amend the complaint. The court was not requesting an amended complaint; however, the proposed amended complaint contains a purported compliance with the court's order.
> The defendants have ten (10) days to file a short response.

On August 10, 2004, Merck filed its opposition to Cook's attempt to amend his complaint. Merck argued that Cook should not be permitted to rely on allegations that were not included in his original Complaint, that Cook's proposed amendment was more than a year late under the Court's scheduling order, that the proposed amended complaint was nothing more than an improper post-removal attempt to destroy federal jurisdiction and defeat removal, and that, in any event, the purported "new" allegations in Cook's proposed amended complaint were still insufficient to state a possible claim against the Employee Defendants.

---

[3]   As far as the record is concerned, the Magistrate Judge has not ruled on Cook's motion for leave to amend his complaint. There has been no order entered granting or denying Cook's motion.

On February 10, 2005, Magistrate Judge Armstrong entered a two-sentence order providing that at the expiration of ten (10) days, the case was to be remanded to state court. The order contains no explanation of the reasons for the remand.

## ARGUMENT

Based on the allegations in Cook's original complaint, this Court should conclude that there is no possibility that Cook would be able to establish a cause of action against the Employee Defendants in Alabama state court. The Employee Defendants are therefore fraudulently joined.[4]

I.     **The Operative Pleading For Purposes Of Removal Was The Original Complaint; That Pleading Clearly Shows That The Non-Diverse Parties Were Fraudulently Joined.**

When considering whether non-diverse defendants are fraudulently joined, the Court must consider only the original complaint, because the question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings at the time of removal. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939); *Amanah Khan v. Oceanruler Shipping Limited*, 1992 U.S. Dist. LEXIS 7134 *2 (E.D. La. April 30, 1992) (citing *Nolan v. Boeing Co.*, 919 F.2d 1058, 1063 n.5 (5th Cir. 1990), *cert. den.*, 111 S.Ct. 1587 (1991) and *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980), *cert. den.*, 450 U.S. 949 (1981), for the proposition that that "[i]t is axiomatic that in an action removed from state court, whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed,

---

[4]   An MDL court usually relies on the law of its circuit in deciding procedural issues like a motion to remand. *See In re Korean Airlines Disaster*, 829 F.2d 1171 (D.C. Cir. 1987) (MDL court applies the fraudulent joinder standard of the circuit in which it sits); *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 423-24 (E.D. Pa. 2002).

unaided by any other pleadings"); *Tillman v. R. J. Reynolds Tobacco*, 253 F.3d 1302, 1306 n. 1 (11th Cir. 2001) (citation omitted).[5]

A party is fraudulently joined when there is no reasonable basis for predicting that the plaintiff might establish liability on his or her claims against an in-state defendant. *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir. 2000); *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997) (the court must determine "whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved"); *accord TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1313-14 (M.D. Ala. 2002) (applying "reasonable basis" standard and denying motion to remand); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1217 (S.D. Ala. 1998) (same); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 279-80 & n. 4 (S.D.N.Y. 2001) (standard for fraudulent joinder is whether "there is 'no reasonable basis' for predicting liability on the claims alleged"). Numerous courts have found fraudulent joinder in circumstances highly similar to those here, where the plaintiff throws some vague allegations into a complaint about the collective defendants and then seeks remand to state court. Instead of alleging facts specifying the Employee Defendants' allegedly wrongful conduct, Cook directed the allegations of his original complaint at "Defendants" collectively. Such collective allegations indicate fraudulent joinder. *See, e.g., Tillman*, 253 F.3d at 1305; *Wakeland*, 996 F. Supp. at 1221; *Calloway* 1995 WL 912708, *1; *Lyons v. American Tobacco Co.*, Civ. A. 96-0881-BH-S, 1997 SL 809677, at *5 (S.D. Ala. 1997) (distributor defendants fraudulently joined where the complaint contains "no specific factual allegations ... to support

---

[5]   Indeed, Cook's attempted amendment of his complaint should have been deemed an admission that his original complaint does not provide any possible basis for liability against the Employee Defendants. *See Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S. D. Ala. Sept. 30, 1997) ("[i]f plaintiffs were unable at the time they formulated the complaint to set forth any specific factual allegations against the [non-diverse] defendants upon which [their claims could be based], there can be no better admission of fraudulent joinder of these defendants").

such claims against the distributors" but only "refer[s] to all defendants collectively"); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) ("*Rezulin II*") (pharmaceutical representatives fraudulently joined due to general collective allegations regarding "defendants"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) ("*Rezulin I*") (same).

It is evident that the non-diverse employees in this case were fraudulently joined for the following reasons: the Employee Defendants are not "sellers" or "suppliers" under the AEMLD and thus cannot be liable under Count I; the Employee Defendants cannot possibly be liable for negligence under Count II because Cook did not allege that the Employee Defendants personally participated in Merck's alleged wrongful conduct and because, in any event, Cook cannot demonstrate any causal connection, or proximate cause, between the behavior of the Employee Defendants and the injuries or damages he claims; as to Counts III and IV the Employee Defendants are not suppliers or sellers of VIOXX® under Alabama's UCC and thus cannot be liable for breach of warranty; and, finally, the fraud claim against the Employee Defendants (Count V) is both inadequate under Rule 9(b) of the Federal Rules of Civil Procedure and, like Cook's negligence claim, suffers from a lack of proximate cause.

## II. The Employee Defendants Are Not "Sellers" or "Suppliers" under the AEMLD (Count I).

Plaintiff cannot state a claim against the non-diverse defendants under Count I because the Employee Defendants are not "sellers" or "suppliers."

To establish liability under the AEMLD, a plaintiff must prove the defendants sold or supplied the product in question. *See Spain*, 230 F.3d at 1308 (plaintiff must prove that "'an injury was caused by *one who sold a* product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer . . . '" in order to prevail on AEMLD

claim) (emphasis added); *see also* Plaintiff's Brief in Support of Motion to Remand at 14-15

(admitting that an AEMLD claim is only cognizable against a manufacturer, seller or supplier)

(quoting *Bell v. T.R. Miller Mill Co.,* 768 So. 2d 953, 957 (Ala. 2000)).  The AEMLD does not

impose liability on the lower-level employees of a seller or supplier, because "neither the

applicable case law nor the policy objectives articulated by Alabama and other state courts can

support the extension of the AEMLD to encompass [employees of the seller or supplier]."

*Bowman v. Coleman Co., Inc.,* No. 96-0448-P-C, Slip. Op. at 8 (S.D. Ala. Sept. 3, 1996) (retail

store manager is not a "seller"); *accord Rezulin I,* 133 F. Supp. 2d at 287 (applying Alabama

law) (pharmaceutical representatives are not sellers or suppliers of the prescription drug they

represent).

The Alabama Supreme Court has pointed out that the AEMLD is "founded on broader

moral notions of consumer protection and on economic and social grounds, placing the burden to

compensate for loss incurred by defective products on the one best able to prevent the

distribution of those products." *Atkins v. American Motors Corp.,* 335 So. 2d 134, 139 (Ala.

1976); *accord Bowman,* No. 96-0448-P-C, Slip. Op. at 6; *Rezulin I,* 133 F. Supp. 2d at 287.  The

Employee Defendants in this case are not the type of defendants that the Alabama Supreme

Court intended to hold liable under the AEMLD doctrine because they are not the ones "best able

to prevent the distribution of those products."  *Rezulin I* is on point.  Like the Plaintiff here, the

plaintiffs in *Rezulin* attempted to defeat diversity by joining the pharmaceutical manufacturer's

Alabama sales representatives.  133 F. Supp. 2d at 287.  The *Rezulin I* Court denied the motion

to remand, holding:

> There is another problem with the Alabama complaint against the sales
> representative.  The AEMLD is founded on "broader moral notions of consumer
> protection and on economic and social grounds, placing the burden to compensate
> for loss incurred by defective products on the one best able to prevent the

10

distribution of these products." Accordingly, the AEMLD imposes liability only
on manufacturers, sellers and suppliers. The sales representative joined in the
Alabama case neither manufactured, sold nor supplied Rezulin. Rather, he was an
agent of the manufacturer and seller. As a corporate employee, he was not "the
one best able" to prevent sales of defective drugs. In light of the Alabama
Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no
reasonable basis for supposing that it would impose liability on the sales
representative in this case.

*Id.* (citing *Atkins,* 335 So. 2d at 139; *Turner v. Azalea Box Co.,* 508 So. 2d 253, 254 (Ala. 1987);

*King v. S.R. Smith, Inc.,* 578 So. 2d 1285, 1287 (Ala. 1991)). Here, the Employee Defendants,

like the sales representatives in *Rezulin I* cited above, are not sellers or suppliers of VIOXX®.

Accordingly, they cannot possibly be held liable under the AEMLD. *See Rezulin I,* 135 F. Supp.

2d at 287. *Accord In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab.

Litig.* ("*In re Diet Drugs*"), 220 F. Supp. 2d 414, 424-25 (E.D. Pa. 2002) (resident

pharmaceutical representatives fraudulently joined); *Furlough v. Warner Lambert Co.,* Civil

Action No. 01-0704 (W.D. La. Aug. 8, 2001 & Sept. 13, 2001) (Order adopting Report and

Recommendation) (resident pharmaceutical representative fraudulently joined); *Dacosta v.

Novartis AG,* 180 F. Supp. 2d 1178, 1183 (D. Or. 2001) (same); *Johnson v. Parke-Davis,* 114 F.

Supp. 2d 522, 525 (S.D. Miss. 2000) (same; applying Mississippi law); *Louis v. Wyeth-Ayerst

Pharm., Inc.,* No. 5:00CV102LN (S.D. Miss. Sept. 25, 2000) (same). *See also Abrusley v. Merck

& Co., Inc.,* No. 02-0196 (W.D. La. July 23, 2002 & June 18, 2002) (Order adopting Report and

Recommendation) (denying post-removal motion to amend to add in-state pharmaceutical

representatives).

Moreover, shortly after the *Rezulin I* court's decision that Alabama law would not permit

recovery from the pharmaceutical representative under AEMLD, wantonness, warranty or fraud

claims, the Eleventh Circuit reached the same result with respect to claims against the in-state

employee of a cigarette manufacturer. *Tillman v. R.J. Reynolds Tobacco,* 253 F.3d 1302, 1305

11

(11th Cir. 2001). In *Tillman*, the plaintiff alleged that "by virtue of their positions with [the manufacturer defendant], [the employee defendants] had superior knowledge to that of the average consumer regarding the addictive nature of Winston cigarettes and the dangers and hazards attendant with smoking them." *Id.* This was not enough to state a claim against the employee defendant, who, like the Employee Defendants in this case, had no personal involvement in the design, manufacture, or labeling of the product at issue. *Id.* Plaintiff here alleges even less and, accordingly, has failed to allege the necessary active participation of the Employee Defendants in the alleged misconduct of their employer. Like the plaintiff in *Tillman,* Plaintiff here fails to state a viable claim against the Employee Defendants. *Id. See also* Restatement Third of Torts: Products Liability § 20, Comment g (defining "One Who Sells or Otherwise Distributes"). Comment g to section 20 of the Restatement Third of Torts: Products Liability provides:

> Other means of commercial distribution:   product distribution facilitators. Persons assisting or providing services to product distributors, . . . are not subject to liability under the rules of this Restatement. Thus, commercial firms engaged in advertising products are outside the rules of this Restatement, as are firms engaged exclusively in the financing of product sale or lease transactions. *Sales personnel and commercial auctioneers are also outside of the rules this restatement.*

*Id.* (emphasis added.)

In summary, Plaintiff cannot possibly state a claim against the Employee Defendants under the AEMLD.

### III.    The Employee Defendants Cannot Possibly Be Liable for Negligence (Count II) Because Cook Did Not Allege Personal Participation In The Wrongful Conduct And Cannot Demonstrate Proximate Cause.

Cook's negligence claims against the Employee Defendants are also facially invalid. First, he did not allege personal participation in the wrongful conduct.  Second, he fails to properly allege – or demonstrate – proximate cause, a central element of a negligence claim.

12

### A.   Cook Did Not Allege Personal Participation By The Employee Defendants.

Alabama law does not hold an employee liable for the negligence of his employer unless the plaintiff personally participated in the alleged wrongful conduct of his employer. *See, e.g., Mills v. Wex-Tex Industries,* 991 F. Supp. 1370, 1382 (M.D. Ala. 1997) (employee not individually liable absent allegation of personal participation in alleged tortious conduct); *Turner v. Hayes,* 719 So. 2d 1184, 1188 (M.D. Ala. 1997) ("corporate employees are liable personally for the wrongful action of the company or its other employees *only if* they personally participate in the tort") (emphasis added). Personal participation requires more than employment or possession of knowledge by means of employment. *See, e.g., Tillman,* 253 F.3d at 1305 (plaintiff fails to state a claim for strict liability, negligence, or wantonness simply by alleging that employee defendant acted with superior knowledge possessed by virtue of his employment).

Where, as here, the alleged misconduct of the employer is failure to warn, personal participation requires, at a minimum, that the Employee Defendants knew of the information at issue – the alleged cardiovascular risks that Cook maintains are associated with VIOXX®. *See, e.g., Devise v. Kenmore,* Civ. Action No. 03-J-943-S, slip op. At 6 (S.D. Ala. May 12, 2003). To find otherwise would mean that every employee could be held liable for its employer's alleged misconduct, a result that courts applying a personal participation standard have been unwilling to reach. *See, e.g., Tillman,* 253 F. 3d at 1305 (employee of retail tobacco manufacturer fraudulently joined); *Devise,* Civ. Action No. 03-J-943-S, slip op. at 7-8 n.6 (retail salesperson fraudulently joined absent allegation of basis for knowledge of alleged product defect); *see also James v. Parke-Davis,* Civ. Action No. 1:00-CV-1203-JEC, slip op. at 19 (N.D. Ga. Nov. 30, 2000) (applying Georgia's personal participation standard; pharmaceutical representative fraudulently joined absent allegation that representative was the "guiding spirit" or the "central

13

figure" in the tortious act or any other basis for the representative's knowledge of the information that employer was accused of failing to warn of); *Zellmer v. Merck & Co., Inc.*, Civil Action No. 1:03-CV-2530-RWS, slip op. At 5 (N.D. Ga. Nov. 17, 2003) (applying Georgia law; pharmaceutical representatives fraudulently joined absent sufficient allegations in complaint); *Stern v. Wyeth*, Case No. 02-80620-CIV-MARRA, slip op. At 6 (S.D. Fla. Jan. 22, 2003 (applying Florida's personal participation standard; chief financial officer fraudulently joined absent sufficient allegation of basis for his knowledge of information alleged to have been misrepresented or suppressed).

In *James*, the plaintiff asserted a claim against non-diverse pharmaceutical professional representatives based on alleged representations made to the medical community regarding the prescription medicine Rezulin. Civ. Action No. 1:00-CV-1203-JEC, slip op. at 17. In finding no reasonable basis to predict liability against the representatives on the claims as pleaded, the court in *James* explained:

> Under plaintiff's theory of liability, every single employee of Warner-Lambert/Parke-Davis who played a role in the production and marketing of Rezulin could be held personally liable. Not only is this result counter to common sense, but plaintiff has failed to cite a single case where a court allowed such a claim. Accordingly, the Court concludes that plaintiff has failed to state a negligence claim against defendants Schultz and Paternostro.

*Id.* at 20.

Cook, like the plaintiffs in the above-cited cases, did not allege any basis for the Employee Defendants' knowledge of the information that Cook claims Merck misrepresented or failed to disclose, namely the alleged cardiovascular risks of VIOXX®. As noted above, under Alabama law, an employee cannot be held liable in these circumstances. *See Tillman*, 253 F.3d at 1305.

**B.    Cook Cannot Demonstrate Proximate Cause, A Necessary
        Element For A Claim.**

Even if Cook could demonstrate personal participation, his negligence claims against the

employee defendants would still fail because he cannot demonstrate proximate cause.  *See*

*Mobile City Lines, Inc. v. Proctor*, 130 So. 2d 388 (1961) (defendant's negligence must

proximately cause the alleged injury).  Fraudulent joinder can be shown by uncontroverted

evidence that a plaintiff has no factual basis for his claims. See *Wilson v. Republic Iron & Steel*

*Co.*, 257 U.S. 92, 98 (1921); *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 419-20

(E.D. Pa. 2002) (although in determining fraudulent joinder contested issues of substantive fact

must be resolved in favor of plaintiff, that does not "mean [the court] must blindly accept

whatever plaintiffs may say no matter how incredible or how contrary to the overwhelming

weight of the evidence"); *see, e.g., Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118-19

(M.D. Ala. 1996) (denying motion to remand because of uncontroverted evidence that the non-

diverse defendant was not liable; "the evidence in the record reflects that the [salesmen] were not

present when the home insurance policy was sold to Plaintiff"); *Mask v. Chrysler Corp.*, 825 F.

Supp. 285, 288 (N.D. Ala. 1993) (fraudulent joinder may be proven by showing "that the

plaintiff stated the facts knowing them to be false, or with enough information within reach so

that he should have known them to be false" (citations omitted)).

The Fifth Circuit has sanctioned the use of a summary judgment-like procedure.  "Even if

the petition facially states a claim against an in-state defendant, the Court may pierce the

pleadings to examine affidavits and other summary judgment-type evidence." *Katherine Ann*

*Walker v. Philip Morris Inc.*, 2003 U.S. Dist. LEXIS 14017 at *3-5 (E.D. La. August 8, 2003)

(citing *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751

(5th Cir. 1996)).  "In such a case, removal jurisdiction is established if, in light of the evidence

15

presented, construing all disputed questions of fact and ambiguities in state law in plaintiffs'

favor, the Court finds that 'there is no reasonable basis for predicting that plaintiffs might

establish liability in their … claim against the in-state defendants.'" *Id.* (citing *Badon v. RJR*

*Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (*Badon I*)).  Indeed, according to the court in

*Walker*,

> The Fifth Circuit not only has sanctioned use of this summary judgment-like
> procedure, it has urged it.  *See Sid Richardson*, 99 F.3d at 751 ("We have
> consistently held that claims of fraudulent joinder *should* be resolved by a
> summary judgment-like procedure whenever possible.") (emphasis added); *Badon*
> *I*, 224 F.3d at 393 ("our precedent establishes that 'a removing party's claim of
> fraudulent joinder to destroy diversity is viewed as similar to a motion for
> summary judgment.'") (quoting *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th
> Cir. 1992)).  "While such a procedure requires that 'all *disputed* questions of fact'
> be 'resolved in favor of the nonremoving party,' 'in determining diversity the
> mere assertion of "metaphysical doubt as to the material facts" is insufficient to
> create an issue if there is no basis for those facts.'" *Badon I*, 224 F.3d at 393
> (emphasis in original) (quoting *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98,
> 100 (5th Cir.), cert. denied, 498 U.S. 817, 112 L.Ed.2d 35, 111 S.Ct. 60 (1990),
> and *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)).  The Court
> must "'resolve factual controversies in favor of the [plaintiff], but *only* when there
> is an actual controversy, that is, when *both* parties have submitted *evidence* of
> contradictory facts.'" *Badon I*, 224 F.3d at 393-94 (emphasis in original) (quoting
> *Little v. Liquid Air Corp*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

*Katherine Ann Walker v. Philip Morris Inc.*, 2003 U.S. Dist. LEXIS 14017 at *3-5 (E.D. La.

August 8, 2003); *see also In re Korean Airlines Disaster*, 829 F.2d 1171 (D.C. Cir. 1987) (MDL

court applies the fraudulent joinder standard of the circuit in which it sits).

Cook's new allegations, the exhibits attached to his proposed amended complaint, and a

declaration filed by Merck with the Court and provided to the Magistrate Judge demonstrate the

lack of any proximate cause as required for a negligence claim.  First, uncontroverted evidence

shows that one of the Employee Defendants (Harlan) did not even call on Cook's prescribing

physician regarding VIOXX®.  (Declaration of Kimberly Bahry, dated and filed August 10,

2001, ¶ 4.)  Accordingly, none of his actions could have proximately caused Cook's alleged injury.

Second, uncontroverted evidence shows that the other Employee Defendant (Wall) called on Cook's prescribing physician, Dr. Reid Christopher, regarding VIOXX® only once and that was on September 22, 1999.  (Bahry Decl. ¶ 6.)  At the time Wall called on Dr. Christopher, Merck had not yet distributed the documents attached to Cook's proposed amended complaint on which Cook relies.  Of the documents attached to Cook's proposed Amended Complaint, only Exhibits B, K and L could have been distributed by Merck to its professional representatives prior to Wall's single meeting with Dr. Christopher on September 22, 1999.  Furthermore, although Cook alleges to have suffered a myocardial infarction (Am. Compl. ¶ 56), and is complaining about alleged misstatements concerning cardiovascular safety (see, e.g., Am. Compl. ¶¶ 44, 51, 53, 56), Exhibits B, K and L do not contain any discussion of cardiovascular issues.  Accordingly, these documents or any statements in these documents could not provide a possible factual basis for Plaintiff's contention that the Employee Defendants made misstatements concerning cardiovascular safety to Cook's prescribing physician.

Finally, and perhaps most tellingly, Dr. Reid Christopher testified that, in prescribing VIOXX® to Cook, Dr. Christopher relied on his independent professional judgment based on his own independent assessment of the risks and benefits of the drug, including his own review of a study on VIOXX® in existence at the time and the Physician's Desk Reference.  (Christopher depo. at pp. 78-79, 84, 133-34).[6]  He did not rely on the statements of a Merck or, for that matter, any other manufacturer's sales representative.  (See Christopher depo. at p. 133.)  ("They [meaning manufacturer's sales representatives generally] throw crap at us all day, every day, non

---

[6] Excerpts from the deposition of Dr. Christopher are attached as Exhibit 1.

17

stop.")  Thus, even if Cook had attached an exhibit to his proposed amended complaint that Merck had created before September 22, 1999, and even if that exhibit actually addressed the cardiovascular safety of VIOXX®, Cook would be unable to establish any causal connection between the behavior of a Merck sales representative and his alleged injury.

### IV.   The Employee Defendants Are Not Suppliers Or Sellers Of VIOXX® Under Alabama's UCC (Counts III and IV).

Cook's warranty claims as to the Employee Defendants fail for the same reason his AEMLD claim must fail – the Employee Defendants are manifestly not suppliers or sellers of VIOXX®.  The *sine qua non* of a breach of warranty claim – whether for breach of express warranty or breach of implied warranty – is that a warranty is made only by "the seller" of the goods.  See Ala. Code §§ 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the "seller").  As in the case of an AEMLD claim, the seller of a product is, as a matter of law, the corporate entity that makes the sale – not the employee of the corporation.  *See Rezulin I*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative); *see also Laboto v. Pay Less Drug Stores, Inc.*, 261 F. 2d 406, 408 (10th Cir. 1958) (drug store employee who sold defective product was fraudulently joined because he was not a "seller" and thus could not be held liable for breach of warranty); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product."); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160 (S.D. Miss. 1997) (stating that courts cannot hold sales representatives liable for breach of warranty when they are "not in the business of selling

18

products but rather are *employed* in the business of selling products") (emphasis added) (citations omitted).

V.   **Cook's Fraud Claim (Count V) Is Also Facially Invalid: He Failed To Comply With Rule 9(b) And He Cannot Demonstrate Proximate Cause.**

Cook's fraud claim against the Employee Defendants fails for similar reasons. First, the fraud claim is highly conclusory, making it inadequate under Rule 9(b). Second, Cook cannot demonstrate proximate cause for the reasons already discussed in Section III.B, *supra*.

A.   **Cook's Claims Do Not Even Meet Basic Pleading Standards – Let Alone The Heightened Standard For Pleading Fraud.**

It is well-settled that a plaintiff cannot defeat diversity jurisdiction simply by alleging vague fraud claims against an in-state defendant. *See*, *e.g.*, *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined where "plaintiff failed to tie these defendants to the underlying allegations of the complaint"); *Wakeland*, 996 F. Supp. at 1221 (non-diverse distributor defendants fraudulently joined because "the complaint simply does not specify what affirmative misrepresentation any defendant – let alone any distributor defendant – is alleged to have made"); *Calloway v. Baker Furniture Co.*, No. CV 94-PT-2751-S, 1995 WL 912708, *1 (N.D. Ala. 1995) (finding resident subsidiaries of corporate co-defendant fraudulently joined because "[c]onclusory allegations are insufficient").

Rather, fraud claims must be pleaded with the particularity required in Rule 9(b) of the Federal Rules of Civil Procedure in order to be credited for purposes of the jurisdictional analysis. Rule 9(b) of the Alabama Rules of Civil Procedure also requires fraud to be pleaded with particularity. Ala. R. Civ. P. 9(b), Committee Comments on 1973 Adoption ("[Subdivision 9(b)] is identical with federal Rule 9(b)"). Particularity "requires plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *See*

*McAllister Towing & Transp. Co. v. Thorn's Diesel Serv., Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001). The pleading requirements are not satisfied if a plaintiff "fail[s] to distinguish among Defendants and specify their respective role in the alleged fraud[.]" *Id.* Thus, a plaintiff must allege the matters such as time, place, content and speaker of the allegedly fraudulent misrepresentations. *Rezulin I*, 133 F. Supp. 2d at 283

In *Rezulin I*, the plaintiffs alleged that "on or after March, 1997, in the State of Mississippi, and particularly in LeFlore County, Mississippi the individually named sales representatives represented to [plaintiffs] that the Rezulin drug was not defective or unreasonably dangerous to its users." The court denied remand, finding, in part, that such allegations fell "well short of the mark" for fraud claims. *Id.* (citations omitted). The court further found that plaintiffs' catch-all allegations regarding the "defendants" could not satisfy the Rule 9(b) requirements. *Id* at 283-84. Consequently, the court found that there was no reasonable basis to predict that the plaintiffs could prevail on their fraud claims against the resident pharmaceutical representatives. *Id.*

In this case, Cook has alleged as little or even less than the plaintiffs in *Rezulin I*, making a finding of fraudulent joinder even more appropriate. In his complaint, Cook makes no allegations regarding where the Employee Defendants allegedly made fraudulent statements or misrepresentations, when such statements were made, by whom such statements were made, or what the content of the alleged statements were.[7] Absent such specific allegations, his fraud claim is facially invalid and supports a finding of fraudulent joinder.

---

[7] The court in *Rezulin I* anticipated the possibility that a plaintiff might try to amend his complaint to cure obvious deficiencies and rejected such a possibility as a basis for remand. According to the court, "the mere possibility that [plaintiffs] *might* successfully amend their complaints to state a cause of action against non-diverse defendants" cannot defeat removal, because "the propriety of joinder is to be determined based on the pleadings." *Rezulin I*, 133 F. Supp. 2d at 283-84 (citations omitted) (emphasis in original).

**B.      Once Again, Cook Cannot Establish Proximate Cause.**

Like Cook's claim for negligence, his fraud claim requires that he establish proximate causation. *Desroches v. Complete Auto Transit., Inc.,* 409 So.2d 417, 420 (Ala. 1981) ("one of the essential elements that must be proved by one charging fraud is reliance"); *Wolff v. Allstate Life Ins., Inc Co..,* 985 F.2d 1524 (11th Cir. 1993) (the elements of fraud based on the suppression of material facts include action by the plaintiff in reliance on the suppression).  For the reasons already described in Section III.B above, Cook cannot establish that any misrepresentation or suppression on the part of the Employee Defendants proximately caused his alleged injuries.

**V.      Cook's Motion for Leave to Amend His Complaint Should Have Been Denied.**

Although it is not clear from the Magistrate's perfunctory remand order of February 10, 2005, whether the Court in fact considered Cook's proposed amended complaint in ordering remand, any reliance on that amended complaint by the Magistrate would have been inappropriate.[8]  First, as was discussed at the outset, the propriety of removal is determined based on the operative complaint at the time of removal.

Second, the proposed amendment was filed more than one (1) year late under the Court's Scheduling Order.  (Scheduling Order, dated April 30, 2003.)  Rule 16(b) of the Federal Rules of Civil Procedure required that such an untimely motion for leave to amend be denied.

A scheduling order entered by the Court pursuant to Federal Rule of Civil Procedure 16(b) may only be amended "upon a showing of good cause."  FED. R. CIV. P. 16(b).  Recently, the Fifth Circuit made clear that when, as here, a scheduling order has been issued by the district

---

[8]      As noted earlier in footnote 2, there is no order in the record in this case granting or denying Cook's motion for leave to amend the Complaint.

court, Rule 16(b) governs amendment of pleadings. *See S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535-36 (5th Cir. 2003). The liberal standard for amendment of Rule 15 will apply only if Rule 16(b)'s good cause requirement has been satisfied. *S&W Enterprises, L.L.C.*, 315 F.3d at 536. To demonstrate good cause, a party must "'show that the deadlines cannot reasonably be met despite the diligence of the party needing extension.'" *S&W Enterprises*, 315 F.3d at 535 (quoting 6A CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)); *accord Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension") (internal quotations omitted). Where the moving party offers no explanation for failing to adhere to the deadlines in the scheduling order, there is simply no basis for the court not to enforce the deadlines provided in the scheduling order. *See White v. Volvo Trucks of N. Am., Inc.*, 211 F.R.D. 668, 670 (M.D. Ala. 2002). Plaintiff does not attempt to meet this good cause standard; nor can he. Among other things, the documents on which he bases his amended pleading were produced to his counsel in August 2002, two months *before* Plaintiff filed his original Complaint. (*See* Cohen Decl. at ¶ 2.) *See also Sosa*, 133 F.3d at 1419 (denying leave to amend where party was in possession of information necessary to amend complaint well before the deadline to amend, but simply chose not to).

## CONCLUSION

For all of the foregoing reasons, this Court should sustain Merck's objections to the Magistrate's February 10, 2005, remand order and deny Cook's motion to remand this case to state court. There is not one valid cause of action in the complaint against the non-diverse defendants, and their presence in the case should be ignored.

22

Respectfully submitted,

By: _____

Richard C. Stanley, 8487
Bryan C. Reuter, 23910
W. Raley Alford, III, 27354
Thomas P. Owen, Jr., 28181
**STANLEY FLANAGAN & REUTER, L.L.C.**
909 Poydras Street, Suite 2500
New Orleans, LA  70112
Telephone:  (504) 523-1580

Thomas E. Walker
Helen Kathryn Downs
**JOHNSTON BARTON PROCTOR &
POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618
Telephone:      (205) 458-9500
Facsimile:       (205) 458-9500

Norman C. Kleinberg
Theodore V.H. Mayer
Charles Avrith
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York  10004
Telephone:      (212) 837-6000
Facsimile:       (212) 422-4726

Attorneys for Defendants
Merck & Co., Inc., Gary Harlan,
and Robert Wall

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of

Defendants' Objections to the Magistrate's February 10, 2005, Remand Order has been served

upon the following counsel of record as well as all counsel of record listed on Schedule B to

Pretrial Order No. 1 via facsimile and/or United States Mail, postage pre-paid this 25th day of

February, 2005:

> Andy D. Birchfield, Jr.
> J. Paul Sizemore, Esq.
> Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
> Post Office Box 4160
> Montgomery, Alabama  36103-4160
>
> W. Lewis Garrison, Jr., Esq.
> Garrison Scott P.C.
> 2224 1st Avenue North
> Birmingham, AL  35203

```
 1        IN THE UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF ALABAMA

 3                SOUTHERN DIVISION

 4   WILLIAM COOK,           )

 5   Plaintiff,             )

 6                          )

 7   VS.                    )CIVIL ACTION NO:

 8   MERCK & COMPANY, INC.)CV 02-RRA-2710-S

 9   et al.,                )

10                          )DEPOSITION OF:

11      Defendant.      )REID S. CHRISTOPHER,

12                         M.D.

13


14        S T I P U L A T I O N S

15      IT IS STIPULATED AND AGREED, by and

16   between the parties through their

17   respective counsel, that the deposition

18   of:

19        REID S. CHRISTOPHER, M.D.,

20   may be taken before Sandra Bain Moon,

21   Commissioner and Notary Public, State at

22   Large, at Internal Medicine West, 1088 9th

23   Ave. S.W., Suite 104, Bessemer, Alabama
```

COPY

1  Q       And as you go through these records

2  from Wal-Mart, we see a number of times

3  that Vioxx prescription were filled for

4  Mr. Cook with your -- one of your partners'

5  names next to it.  Would you have any

6  reason to disagree with any of those

7  entries of the Wal-Mart records?

8  A       No.

9  Q       When you decided to prescribe Vioxx

10  to Mr. Cook, did you take into account the

11  benefits and the possible side effects of

12  the drug that were familiar to you?

13  A       Yes.

14  Q       And in your medical judgment, that

15  was the appropriate medication prescribed

16  for the condition that he had?

17  A       Yes.

18  Q       And I'm asking you just a little bit

19  differently in relying on your knowledge of

20  properties of Vioxx and Mr. Cook's physical

21  condition.  Did you exercise your informed

22  judgment as a physician to determine if the

23  benefits for prescribing Vioxx to Mr. Cook

1  outweigh the potential risks?

2  A      Yes.

3  Q      Did Vioxx help reduce Mr. Cook's

4  elbow pain?

5  A      Yes.

6  Q      I believe you even noted that in his

7  follow-up visit in February 7; is that

8  correct?

9  A      Correct.

10  Q      Let me ask you a few other questions

11  just about some medication so I can be sure

12  I'm clear on what they were for.  The

13  Wal-Mart records indicate that in September

14  of '98 Mr. Cook was on Glucotrol?

15  A      Correct.

16  Q      What is that used for?

17  A      Diabetes.

18  Q      And September of '99 there's a

19  notation of eight refillable prescription

20  of Avandia.  What is that used for?

21  A      Another diabetic medication.

22  Q      How is Avandia different from

23  Glucotrol, if it is?

1   was your understanding of the end goal of

2   that study, reason why it was undertaken in

3   the first place?

4   A      I guess to compare Vioxx and

5   Naproxen.

6   Q      Just relative to the GI, not the

7   impact of those two medications?

8          MR. MICELI:   Object to the form of

9   the question.

10  A      I don't remember the goal of the

11  study or its end point.

12  Q      Did you see or become aware through

13  articles or information that was

14  circulating in the medical community that

15  there was some cardiovascular data about

16  occurrences of MI's in patients that were

17  involved in that Vigor study?

18  A      Yes.

19  Q      What was your understanding of that

20  after you reviewed that information?

21  A      That, in short, Vioxx did not

22  increase the incidence or cause heart

23  attacks.

1  discussions you had with Mr. Cook were

2  specific to him and based on your records

3  regarding your treatment of William Cook?

4  A      Exactly.

5  Q      Mr. Miceli asked you some questions

6  about the article that may or may not have

7  been given to you by a Merck

8  representative.  Let me ask you if it was

9  just possible that it might have been given

10  to you by a representative of another drug

11  company?

12  A      Let me tell you something.  We get

13  handed a ton of articles every day.  I

14  don't recall who, you know.  I don't

15  remember what article or how many.  I don't

16  remember that many.  That's why I said one

17  or two.  Yes, this was more sensational.

18  It was in the paper so it caught your

19  attention.  I still don't recall

20  specifically who gave it to me or which

21  articles they were.  They throw crap at us

22  all day, every day, non stop.  While this

23  was more sensational a little bit, I don't

Page 134

1    recall the specifics of the article.

2    Q        The important thing is you got it

3    and remember seeing it?

4    A        I was real intrigued by it.  I

5    remember that.  I remember talking to

6    another physician.  I think I talked to

7    Carlisle about it in cardiology.  I did

8    research it to my degree until I was

9    comfortable using the medication.

10   Q        And you made an independent medical

11   judgment based on your experience?

12   A        Sure.

13   Q        One other thing Mr. Miceli asked you

14   if you had met anybody from my law firm

15   today.  We did meet previously, I believe,

16   didn't we, Dr. Christopher?

17   A        Yeah.

18   Q        We talked just briefly about it.

19   And one other question.  The fact that you

20   respect Dr. Carlisle's opinions doesn't

21   mean you always agree with him on every

22   issue?

23   A        No.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>    Products Liability Litigation | *   MDL No. 1657<br>*<br>*   SECTION L<br>*<br>*   JUDGE ELDON E. FALLON<br>*<br>*   MAGISTRATE JUDGE<br>*   DANIEL E. KNOWLES, III<br>*<br>*<br>* |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

THIS DOCUMENT RELATES TO: *Cook v. Merck & Co., Inc. et al.*, No. 05-0431, previously filed as CV-02-RRA-2710-S, N.D.Ala.

## NOTICE OF HEARING

TO:    William Cook,
        through his attorneys:

| | |
|---|---|
| W. Lewis Garrison, Jr.<br>Garrison Scott, PC<br>2224 First Avenue North<br>P.O. Box 11310<br>Birmingham, AL  35202 | Andy D. Birchfield, Jr.<br>J. Paul Sizemore<br>Beasley, Allen, Crow, Methvin, Portis & Miles, PC<br>P.O. Box 4160<br>Montgomery, AL  36103-4160 |

**PLEASE TAKE NOTICE** that the defendants, Merck & Co., Inc., Gary Harlan, and Robert Wall, will bring on for hearing their Objections to and Motion to Review the Magistrate's February 10, 2005, Remand Order before the Honorable Judge Eldon E. Fallon on April 27, 2005, at 9:00 o'clock a.m.

Respectfully submitted,

By: _____
     Richard C. Stanley, 8487
     Bryan C. Reuter, 23910
     W. Raley Alford, III, 27354
     Thomas P. Owen, Jr., 28181

**STANLEY FLANAGAN & REUTER, L.L.C.**
909 Poydras Street, Suite 2500
New Orleans, LA  70112
Telephone:  (504) 523-1580

Thomas E. Walker
Helen Kathryn Downs
**JOHNSTON   BARTON   PROCTOR   &
POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618
Telephone:     (205) 458-9500
Facsimile:     (205) 458-9500

Norman C. Kleinberg
Theodore V.H. Mayer
Charles Avrith
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York  10004
Telephone:     (212) 837-6000
Facsimile:     (212) 422-4726

Attorneys for Defendants
Merck & Co., Inc., Gary Harlan,
and Robert Wall

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Hearing has been

served upon the following counsel of record as well as all counsel of record listed on Schedule B

to Pretrial Order No. 1 via facsimile and/or United States Mail, postage pre-paid this 25th day

of February, 2005:

> Andy D. Birchfield, Jr., Esq.
> J. Paul Sizemore, Esq.
> Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
> Post Office Box 4160
> Montgomery, Alabama  36103-4160
>
> W. Lewis Garrison, Jr., Esq.
> Garrison Scott P.C.
> 2224 1st Avenue North
> Birmingham, Alabama  35203