IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAR 18  PM 4: 00

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| IN RE VIOXX PRODUCTS LIABILITY LITIGATION<br><br>This filing applies to All Actions | Docket No. MDL 1657<br>Section: L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### NOTICE OF FILING OF APPLICATION FOR APPOINTMENT OF THOMAS M. SOBOL TO A LEADERSHIP COMMITTEE FOR THE END-PAYOR CLASS ACTION PLAINTIFFS OR IN THE ALTERNATIVE FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE

NOW COMES Thomas M. Sobol, Attorney at Law, who files the attached Application Of Thomas M. Sobol For Appointment To A Leadership Committee For The End-Payor Class Action Plaintiffs Or In The Alternative For Appointment To The Plaintiffs' Steering Committee with the Clerk of the United States District Court for the Eastern District of Louisiana in the above captioned matter.

Dated: March 17, 2005

Respectfully submitted,

_____
THOMAS M. SOBOL
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street
4th Floor
Cambridge, MA 02142
Tel. 617-482-3700
Fax 617-482-3003
tom@hbsslaw.com

*Counsel for Cavalier Homes, Inc., American Federation Of State, County And Municipal Employees, United Senior Action Of Indiana, Inc., New York Statewide Senior Action Council, Edward W. Wright, Melvin Williams, Sharon Murphy, and Christine Seitz,*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon (i) Court-appointed Liaison Counsel for Plaintiffs and Defendant via facsimile, electronic mail, and United States mail; and (ii) all counsel on the Panel Attorney Service List by United States Mail, postage prepaid and properly addressed this 17th day of March, 2005.

_____
ELIZABETH A. FEGAN

## APPLICATION OF THOMAS M. SOBOL FOR APPOINTMENT TO A LEADERSHIP COMMITTEE FOR THE PRICING CLASS ACTION PLAINTIFFS OR IN THE ALTERNATIVE FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE

For years, my partners and I at Hagens Berman Sobol Shapiro LLP ("HBSS") have aggressively pursued pharmaceutical pricing litigation, leading the fight for more affordable prescription drugs and for a more responsible pharmaceutical industry. The importance of HBSS' pharmaceutical pricing litigation practice stands second to none. We work with consumers, consumer organizations, and third-party payors, many of which are affiliated with the Prescription Access Litigation project, the leading national organization of almost 100 members from about three-dozen states seeking to achieve more affordable prescription drugs by enforcing existing federal and state laws. As a result of HBSS' aggressive pursuit, in 2004 HBSS announced pharmaceutical pricing settlements amounting to almost *one-half billion dollars* in gross settlement funds. We would be honored to use that experience for the benefit of the Vioxx Pricing Class Actions now pending before this Court.

The following limited examples show existing pharmaceutical pricing matters in which HBSS, and myself personally, play a lead role:

*In Re: Lupron® Marketing and Sales Practices Litigation*, United States District Court, District of Massachusetts, MDL No. 1430. HBSS is court-appointed liaison counsel and I am court-appointed co-lead counsel. This case alleges widespread fraudulent marketing and sales practices against TAP Pharmaceuticals, a joint venture between Abbott Laboratories and Takeda Pharmaceuticals, Inc., and it follows TAP's agreement to pay $875 million in combined criminal and civil penalties regarding marketing and sales practices for the prostate cancer drug Lupron. In late 2004, a proposed resolution on behalf of consumers and third-party payers of Lupron in the amount of $150 million was announced.

*In Re: Augmentin® Antitrust Litigation*, United States District Court, District of Eastern Virginia, Docket No. 2:02cv442. I am court-appointed co-lead counsel in this antitrust litigation against Glaxo SmithKline Corporation and its predecessors alleging that GSK engaged in a pattern and practice of sham litigation and fraudulent procurement of a patent relating to the broad spectrum antibiotic, Augmentin. A proposed settlement of $29 million on behalf of consumers and other payers of Augmentin was recently consummated.

*In Re: Paxil® Direct Purchaser Litigation*, United States District Court, Eastern District of Pennsylvania, Docket No. 03-4578. I am court-appointed co-lead counsel in this litigation on behalf of direct purchasers of the "blockbuster" selective seratonin reuptake inhibitor Paxil in claims against Glaxo SmithKline Corporation alleging that GSK engaged in sham patent litigation with respect to certain patents, all in an effort to delay competition from the entry of a generic form of the drug. HBSS announced a $100 million resolution of these claims in 2004.

*In Re: Neurontin Marketing and Sales Practices Litigation*, United States District Court, District of Massachusetts, MDL No. 1629. I am the court-appointed liaison counsel for Plaintiffs and a member of the five-firm Plaintiffs Class Steering Committee. This lawsuit against Pfizer and its subsidiary, Parke-Davis, accuses the companies of circumventing FDA regulations to promote scientifically unproven "off-label" use of their drug Neurontin®.

*In Re: Neurontin Antitrust Litigation*, United States District Court, District of New Jersey, MDL No. 1479. I am court appointed co-lead counsel representing consumers and third-party payors in this suit seeking injunctive relief and reimbursement for the artificially high price paid by consumers for Neurontin® as a result of Warner Lambert's antitrust violations and deceptive business practices, in an attempt to delay and prevent generic competition.

*In Re: Relafen Antitrust Litigation*, United States District Court, District of Massachusetts, Master File No. 01-12239-WGY. HBSS is court-appointed liaison counsel and the firm has helped spearhead this litigation against Glaxo SmithKline Corporation and its predecessors alleging that GSK fraudulently obtained a patent to prevent a generic version of Relafen, a frequently prescribed brand name pharmaceutical, from coming to market. Litigated for about one a one-half years, HBSS announced a proposed $75 million resolution of end-payor claims in 2004.

HBSS focuses its practice of law in those areas for which its lawyers feel most passionately – representing plaintiffs in class actions and multi-party, large-scale complex litigation that encompasses the public interest and the potential for a positive impact on the protection of important rights of consumers, investors, workers and the environment. HBSS' Massachusetts office, of which I am Managing Partner, represents the hub for the firm's nationwide representation of states and private parties in actions challenging illegal industry pricing practices by many of the major pharmaceutical companies.

Special mention must be made of the lead role my partner Steve W. Berman and I play in the largest and most complex drug pricing class action now pending in the United States, entitled *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456. Filed against at least twenty-two pharmaceutical business organizations, the case alleges systemic abuse of Medicare Part B and private payer reimbursement schemes through the artificial inflation and maintenance of the so-called "average wholesale price" in order to disguise payments, including kick-backs, to providers and others in the drug distribution chain. Over three years ago, after extensive investigation and analysis, HBSS' lawyers, representing the states of Nevada and Montana, third-party prescription drug payors, and consumers commenced these actions – the first and most comprehensive cases in the nation challenging unfair tactics used by many prescription drug manufacturers to price their products to states, employee benefit plans, insurers and consumers. Mr. Berman and I are court-appointed lead counsel and liaison counsel in this consolidated multi-district litigation now pending in federal court in Massachusetts.

At the same time, HBSS is litigating more than a dozen other significant prescription drug cases involving antitrust and consumer protection claims. The various cases being prosecuted by HBSS challenge many aspects of systemic misconduct by pharmaceutical manufacturers and others in the prescription drug distribution chain, but they all have the same fundamental purposes: to lower prices of prescription drugs, improve access for consumers, and recover funds unfairly paid by governmental and private purchasers around the country. As far as we can tell, no other firm has devoted more time and effort to prescription drug pricing matters than HBSS.

These experiences show that, along with my HBSS partners, I "live and breathe" pharmaceutical pricing litigation issues – something which is a practical necessity if a litigant is going to effectively understand the myriad issues of pharmaceutical regulatory approvals, the federal and state law patchwork governing drug marketing, promotions and sales practices, public health economics and the "cottage industry" of class action and pharmaceutical case court rulings and statutes.

As to Vioxx Pricing Class Actions, I participated in the first such case ever filed entitled *Dorothy Heindel et al. v. Pfizer Inc., Pharmacia Corp., Monsanto Co., G.D. Searle & Co., and Merck & Co., Inc.*, No. 02-3348 (filed on July 10, 2002). My co-counsel were the first to identify the importance of economic injury cases to Vioxx and Celebrex end payers, and they asked me and HBSS to bring our vast experience with pricing class actions to bear in the COX-2 litigation issues. We spent significant time and resources analyzing documents, and taking the depositions of key marketing and pricing personnel at both Merck and Pfizer, all well before most follow-on Vioxx Pricing Class Actions were conceived. In addition, we retained and consulted with a number of experts, including economist Charles King III, a former Harvard Law School professor, who has remained steadfast in his opinion that as a matter of economic theory, assuming the allegations in the Pricing Class Action complaints to be true, all or substantially all of the members of the Class would have been injured. Moreover, he opines that the economic harm to the Pricing Class arose from one or both of the following: (1) paying a premium price for Vioxx that would not have been possible if these risks had been disclosed or (2) purchasing Vioxx when Vioxx would not have been purchased if the risks had been disclosed. Thus, each of these would result in economic injury to the Plaintiffs, and can be assessed on a class-wide basis.

Since that first Vioxx Pricing Class Action, my partners and I have continued to pursue Merck's alleged wrongdoing. No less than nine HBSS lawyers from each of the firm's five offices, including myself and founding partner Steve W. Berman, have conducted a thorough analysis of the causes of action related to and economic injury that resulted from defendant's alleged conduct, resulting in the filing of at least eight Vioxx Pricing Class Actions in state courts in Arizona, California, Illinois, and New Jersey, and in federal courts in the Eastern District of Louisiana and the Districts of New Jersey and Massachusetts. Now pending before this Court are Pricing Class Actions filed on behalf of our clients, which include consumers, third party payers and associations, entitled: *Cavalier Homes, Inc., individually and on behalf of all others similarly situated, v. Merck & Co., Inc.*, No. 04 C 6383 (D.N.J.); *Edward W.*

*Wright, individually and on behalf of all others similarly situated, v. Merck & Co., Inc.*, No. CV04-3037 PHX-SRB (D. Ariz.); *Melvin Williams and Sharon Murphy, et al., v. Merck & Co., Inc.*, No. 05-50 MJR (S.D. Ill.); and *Christine Seitz, American Federation Of State, County And Municipal Employees, United Senior Action Of Indiana, Inc., and New York Statewide Senior Action Council, et al., v. Merck & Co., Inc.*, No. 05-0749 (E.D. La.).

      I have worked to coordinate our Pricing Class Actions with the Mass Tort actions, including facilitating discussions with the Mass Tort counsel, submitting information for the Pricing Class Actions to Liaison Counsel for insertion in last week's Court-ordered Plaintiffs' status report, and working with Mass Tort counsel in the New Jersey state court cases to ensure that prosecution of the Pricing Class Actions is coordinated with the Mass Tort and other matters there. I have also engaged in extensive discussions with most, if not all of the attorneys who have filed Pricing Class Actions in the MDL regarding coordination with the Mass Tort actions and the requirements of *Amchem*. Through those discussions, I was able to coordinate 14 nationally-recognized class actions firms, who had filed eight separate Pricing Class Actions and represented at least 15 proposed Class Representatives. Each of them agreed, after extensive discussion and joint strategy discussions, to join us in our March 11, 2005 submission to the Court entitled "Pricing Class Action Plaintiffs' Suggested Agenda Items And Case Management Proposals For March 18, 2005 Initial Pretrial Conference." Moreover, Barbara Hart of Goodkind Labaton Rudoff & Sucharow LLP and William Kane of Miller Faucher and Cafferty LLP played significant roles in developing the Suggested Agenda Items, and I understand that each is filing an application with this Court for a leadership role on behalf of the putative end-payor class. I fully support their applications.

      In addition to leading pharmaceutical pricing litigation matters, HBSS has served as lead counsel in many significant class actions throughout the nation. For example, in the groundbreaking state tobacco litigation, the firm represented the States of Alaska, Arizona, Idaho, Illinois, Indiana, Montana, Nevada, New York, Ohio, Oregon, Rhode Island, Vermont, and Washington as special assistant attorneys general in their law enforcement actions against the tobacco industry. In addition, lawyers who have joined HBSS since the completion of the tobacco litigation served as special assistant attorneys general in Massachusetts, New Hampshire and Rhode Island. HBSS' lawyers played lead roles in the tobacco litigation that resulted in cumulative recoveries in excess of $260 billion.

      In the Washington Public Power Supply System Securities ("WPPSS") Litigation, HBSS represented bondholders and the bondholder trustee of WPPSS bonds in an action to recover following the largest municipal bond default in history. After more than five years of intensive litigation, the trustee and the other plaintiffs recovered in excess of $850 million in settlements from more than 100 defendants. As another example, HBSS filed suit against credit card giants VISA and MasterCard, challenging charges the companies imposed in connection with use of debit cards and deceptive tactics to encourage the use of these cards. The case ended with a settlement in excess of $2 billion and an agreement to reform the practices that drove up transactions costs for consumers. In litigating these cases and others like them, the firm has become particularly adept at managing multi-state and nationwide litigation through an organized, coordinated approach that implements an efficient and aggressive prosecutorial strategy. The common theme of all of our cases is that we use the tools of complex litigation to achieve economic recovery and corporate reform on behalf of consumers, workers, investors, and taxpayers.

      Thus, I respectfully request appointment to the Plaintiffs' Steering Committee on behalf of the Pricing Class Actions, or to a separate committee designed to spearhead the efforts on behalf of the Pricing Class. It is clear that my partners and I at HBSS possess the legal and technical expertise to successfully prosecute the Pricing Class Actions, as well as the resources of a law firm that is second to none in these types of cases. Moreover, I believe that I have the respect of my peers who have joined me in submitting to the Court our concerns regarding the need for separate representation of the Pricing Class. I further believe that I have the ability to successfully coordinate with the Mass Tort counsel to avoid any unnecessary duplication or burden on the defendant, while at the same time providing the Pricing Class with the best counsel possible through the use of my abilities and experience and the resources of the HBSS team. It would be my honor to be appointed by this Court.