FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAR 22  PM 2: 26

LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

In Re:  VIOXX PRODUCTS LIABILITY LITIGATION

Docket No. MDL 1657
Section: L

MDL 1657

This Document Relates to All Cases

Judge Fallon
Mag. Judge Knowles

## NOTICE OF FILING OF APPLICATION FOR APPOINTMENT OF BARBARA J. HART TO A LEADERSHIP COMMITTEE FOR THE END-PAYOR CLASS ACTION PLAINTIFFS OR IN THE ALTERNATIVE FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE

NOW COMES Barbara J. Hart, Attorney at Law, who files the attached application for appointment to a leadership committee for the end-payor class action plaintiffs or in the alternative for appointment to the Plaintiffs' Steering Committee in the above captioned matter.

Dated: New York, New York
       March 17, 2005

Respectfully submitted,

BARBARA J. HART
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, New York  10017
Phone: 212-907-0862

*Counsel for the County of Suffolk, New York*
*-and-*
*Counsel for Local 237 Teamsters Retirees Benefit Fund, Local 237 Teamsters-Plainview-Old Bethpage Central School District Health and Welfare Trust Fund, Local 237 Teamsters-North Babylon School District Health and Welfare Trust Fund, Local 237 Teamsters-Brentwood School District Health and Welfare Trust Fund, and Local 237 Teamsters-Suffolk Regional Off-Track Betting Corporation Health and Welfare Trust Fund*

___ Fee _____
_✓_ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No _____

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon counsel for all parties by United States Mail, postage prepaid and properly addressed this 17th day of March, 2005.

KIMBERLY NELSON

### APPLICATION FOR APPOINTMENT OF BARBARA J. HART TO A LEADERSHIP COMMITTEE FOR THE END-PAYOR CLASS ACTION PLAINTIFFS OR IN THE ALTERNATIVE FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE

I am a partner with the New York office of Goodkind Labaton Rudoff & Sucharow LLP. In the *Vioxx Litigation* I am counsel for a group of six health and welfare funds affiliated with the Teamsters Local 237 union (the "Funds"). These entities are third-party "end-payors" on whose behalf I have filed a class action complaint against Merck & Co., Inc. relating to economic injuries they and other end-payors have suffered stemming from their purchases of Vioxx. The Funds are not-for-profit trusts established and maintained to provide comprehensive health care benefits to over 24,000 participant-workers employed under various collective bargaining agreements, and to their dependents. I am also counsel for the County of Suffolk, New York ("Suffolk"), and I have been authorized to file a class action complaint in this matter on its behalf as well. Suffolk is one of the largest employers on Long Island, New York, employing nearly 14,000 people. Suffolk funds its own health insurance plan for the benefit of its employees, through which it pays part or all of the purchase price for its employees' prescription drugs.

For purposes of this application for a leadership role in the *Vioxx Litigation*, I have the support of counsel for thirteen other entities and individuals who have likewise filed class action cases on behalf of the thousands of third party payors and millions of consumers with similar economic injuries claimed.

My goal with this application is to provide the Court with information sufficient to satisfy the requirements listed in ¶16 of Pretrial Order #1 ("PTO #1") as to why I should be appointed to a leadership role on behalf of the plaintiffs in this litigation. As important, however, is the need to satisfy the mandates of Fed. R. Civ. P. 23(g). Although PTO #1 does not address it, Rule 23(g) sets forth criteria that the Court "must consider" in appointing interim counsel to act on behalf of a putative class before a determination on the issue of class certification. In that connection, I and other attorneys at my firm were among the leaders in the collaborative process that resulted in the Suggested Agenda Items and Proposed Case Management Proposals (the "Suggested Agenda Items") jointly submitted on behalf of end-payor class action plaintiffs on March 11, 2005. In that submission, counsel in several *Vioxx Litigation* cases asserting claims on behalf of end-payors respectfully suggested that the Court appoint interim co-lead counsel for end-payors, or, in the alternative, that the Court appoint end-payor counsel to the Plaintiffs' Steering Committee ("PSC") and charge such counsel with responsibility for the prosecution of claims on behalf of end-payor plaintiffs. Tom Sobol of Hagens Berman Sobol & Shapiro LLP and Bill Kane of Miller Faucher and Cafferty LLP likewise played significant roles in developing the Suggested Agenda Items, and each is filing an application with this Court for a leadership role on behalf of the putative end-payor class. I support their applications and respectfully suggest that our three firms be appointed as interim co-lead counsel for end-payors, or as members of the PSC.

My firm, Goodkind Labaton, has for over forty years been a leader in antitrust, consumer fraud and securities class action litigation. Relevant here, and as discussed further below, is the fact that Goodkind Labaton has been in the forefront of protecting consumers and third-party payors in class action litigation involving pharmaceutical products. I have spent my entire legal career with Goodkind Labaton, having joined the firm as a law clerk almost 15 years ago while in my final year at Fordham University School of Law, and I have been personally involved with many of the firm's successes during that time. Additional information about the firm (and about me) can be obtained at our website: http://www.glrslaw.com.

Rule 23(g) requires the Court to consider "the work counsel has done in identifying or investigating potential claims in the action." On October 19, 2004, on behalf of the Funds, I filed one of the first

actions seeking economic damages on behalf of end-payors following Merck's withdrawal of Vioxx from the market on September 30, 2004.

Since then, I have continued to work to protect the interests of Vioxx third-party payors. For instance, Merck's answer to the Funds' complaint asserted among its twenty-three affirmative defenses "accord-and-satisfaction" and "payment-and-release." In December 2004, I learned that Merck had been soliciting the participation of third-party payors in its Vioxx reimbursement program through letters sent to pharmacy benefit managers. In light of Merck's assertion of these affirmative defenses, it appeared as though participating in Merck's reimbursement scheme could cause putative class members unknowingly to release the claims the Funds had asserted on their behalf. We promptly moved for a temporary restraining order and preliminary injunction to restrict Merck's contacts with putative class members. At the December 24, 2004 oral argument for the TRO, the Honorable Richard J Holwell, U.S.D.J., stated as follows:

> my view is that the plaintiff raises serious issues of the supervision of communication with absent class members. And that the supervision of that communication may be an appropriate subject for the District Court as a fiduciary of sorts to class members.

Transcript at 14-15. While motion was ultimately denied, that did not occur until after Merck conceded on the record that it intended to waive its defenses of accord-and-satisfaction and payment-and-release – a waiver that would not have occurred had the motion not been brought.

Rule 23(g) requires the court to consider "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action" and "counsel's knowledge of the applicable law." Likewise, the Court sought information concerning counsel's "professional experience in this type of litigation." PTO # 1 at ¶ 6. My and my firm's experience and knowledge relating to claims of end-payors in pharmaceutical litigation are extensive. For instance, I served as co-lead counsel on behalf of third-party payors in *In re Buspirone Antitrust Litigation*, in which we obtained approval of a $90 million settlement that allocated funds to consumers, union prescription benefit providers and other third-party payors to settle claims alleging monopolistic, anti-competitive conduct over the marketing of an anti-anxiety drug sold under the name BuSpar®. In connection with the final approval of the settlement, United States District Judge John Koeltl commented that the lawyering in this case was "stupendous."

In *In re Warfarin Sodium Antitrust Litigation*, as co-lead class counsel, I completed the successful representation of consumers and third-party payors in litigation against DuPont Pharmaceuticals Company regarding its marketing of Coumadin®, which resulted in a settlement of $44.5 million. The Court, in approving the result, granted a $10 million fee awarded for the significant success, effort, and risk. It bears mentioning that the ultimate settlement figure on behalf of consumers amounted to **100%** of the overcharge.

In the landmark case *In re Brand Name Prescription Drugs Antitrust Litigation*, I was also one of Goodkind Labaton's principal litigators responsible for a $64.3 million settlement with certain brand name prescription drug manufacturers whose conduct allegedly caused retail pharmacy customers to overpay for prescription drugs. For that effort, I and the litigation team were widely praised by members of the judiciary. Judge Steve Leben noted that in *Holdren v. Abbott Laboratories, et al.*, (Dist. Ct., Johnson County, Kans., Nov. 19, 1998) "a substantial expertise was required to prosecute this litigation." Judge Robert M. Brutinel commented, "I think the quality of counsel is excellent" when approving the settlement in *McLaughlin v. Abbott Laboratories, et al.*, (Yavapai County, Ariz., Oct. 28, 1998).

Similarly, Judge Bradford approved the settlement stating, "I'll join my learned colleagues from this and other jurisdiction[s] in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity, and especially the cost effective way in which the settlement is proposed to be distributed" *Karofsky v. Abbott Laboratories, et al.*, (Cumberland County, Maine, Dec. 2, 1998).

Among the more prominent prescription drug cases in which Goodkind Labaton is currently serving or has served as lead, co-lead or third-party payor counsel are: *In re Ciprofoxacin Antitrust Litigation* (MDL 1383) (E.D.N.Y.); *In re K-Dur Antitrust Litigation* (D.N.J.); *In re Premarin Antitrust Litigation* (S.D. Ohio); and *In re Tamoxifen Citrate Litigation* (E.D.N.Y.).

Most recently, Goodkind Labaton worked with other counsel to obtain settlements on behalf of end-payor plaintiffs in *In re Augmentin Antitrust Litigation* ($29 million) and *In re Paxil Antitrust Litigation* ($65 million). I was designated third-party payor allocation counsel in both actions. And my experience, moreover, extends beyond the realm of prescription drug litigation. For example, on behalf of the lead plaintiff, Connecticut Retirement Plans and Trust Funds, I and my firm achieved an extraordinary settlement in *In re Waste Management, Inc. Securities Litigation* (MDL 1422) (S.D. Tx.), providing for $457 million in cash and substantial relief concerning Waste Management's corporate governance. It was at the time the third-largest securities class action settlement ever achieved and the largest in the Fifth Circuit.

Rule 23(g) requires the Court to consider "the resources counsel will commit to representing the class." In a similar vein, the Court requested information concerning the "willingness and availability to commit to a time-consuming present." PTO # 1 at ¶ 16. Goodkind Labaton has the resources, and I personally will make the time commitment, necessary to prosecute this case. The firm has over 50 attorneys, more than half of whom devote all or a substantial portion of their practice to the prosecution of class action cases. As exemplified by the results achieved in the cases cited above, the firm has had – and continues to have – the resources available to prosecute effectively major complex litigation. At present, I and three other attorneys from my firm have handled the bulk of the work on the *Vioxx Litigation*, pulling in additional help as needed on an *ad hoc* basis. Moreover, whoever is assigned a leadership role with respect to end-payor claims will have at his or her disposal the resources of other firms. There are numerous firms that have filed similar cases. We often assign work in complex MDL matters to other firms, which can be efficiently utilized (with appropriate supervision as to the quality and quantity of their work) to further the prosecution of the case.

Which brings me to the last of the Court's criteria, *i.e.*, the "ability to work cooperatively with others." PTO #1 at ¶ 16. Working well with other firms in other cases is one of the major reasons that I and my firm have been supported by other counsel in applications for leadership appointments. Indeed, our ability to work cooperatively and in a coordinated manner with other counsel is evidenced by the Suggested Agenda Items submitted in this case. In sum, I and my firm have a proven track record of working well both with other plaintiffs' counsel as well as with defense counsel in achieving results for our clients.