UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUSIANA

| | | |
|---|---|---|
| IN RE: | VIOXX : | MDL NO. 1657 |
| | PRODUCTS LIABILITY LITIGATION : | |
| | : | SECTION L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

*************************************************************************

### NOTICE OF FILING OF APPLICATION OF DENNIS J. JOHNSON FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE, ECONOMIC CLASS ACTIONS

Dennis J. Johnson hereby files the attached Application for Appointment to the Plaintiffs' Steering Committee, pursuant to Pretrial Order No. 1.

Dated: March 25, 2005.

Respectfully submitted,

Dennis J. Johnson, Esq.
**JOHNSON & PERKINSON**
1690 Williston Rd.
P.O. Box 2305
S. Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060
email@jpclasslaw.com

## JOHNSON & PERKINSON
ATTORNEYS AT LAW
1690 WILLISTON ROAD
SOUTH BURLINGTON, VT 05403
www.jpclasslaw.com

TEL: (802) 862-0030 • FAX (802) 862-0060

E-MAIL email@jpclasslaw.com

DENNIS J. JOHNSON
ALSO ADMITTED TO PA AND DC*

JACOB B. PERKINSON
ALSO ADMITTED TO ME

*INACTIVE

ROBIN A. FREEMAN, JR.
ALSO ADMITTED TO OH*

JAMES F. CONWAY, III
ALSO ADMITTED TO MA

PETER J. MCDOUGALL
ALSO ADMITTED TO MA

*VIA FEDERAL EXPRESS*                                                           March 25, 2005
The Honorable Eldon E. Fallon
U.S.D.C., Eastern District of Louisiana
500 Poydras St., Rm. #C-456
New Orleans, LA 70130

Re:   *In Re VIOXX Products Liability Litigation*, MDL No. 1657, Section L

Dear Judge Fallon:

By this letter, I am applying for a position on the PSC. My firm, Johnson & Perkinson ("J&P"), of which I am the lead partner, filed an action seeking the statutory remedy of a return of consideration paid on behalf of all Vermont consumers and third-party payors who purchased Vioxx. As I am from the distant state of Vermont and not a regular player in the mass-tort MDL arena, I believe a short recitation of my background will assist the Court and demonstrate that I am uniquely qualified to represent of the class actions seeking economic relief.

After graduating first in my class from Vermont Law School in 1980, I served five years as an attorney with the Enforcement Division of the SEC in Washington, D.C. In 1985, I moved to Philadelphia and initiated a firm's securities fraud class action practice. Since forming my own firm in 1989, I have focused almost exclusively on class action misrepresentation/fraudulent conduct cases under the federal securities laws, the Vermont Consumer Fraud Act, other state consumer protection statutes, as well as class actions brought under federal or state antitrust statutes.

Initially, as a solo practitioner, I personally litigated all aspects of these actions, including the necessary investigation and initiation of those actions, document and deposition discovery and pre-trial expert discovery.[1] Since then, my firm has expanded to two partners, three associates (in South Burlington), two full-time attorneys living in New York and working on the *Initial Public Offering* class action and two regularly employed contract attorneys in South Burlington. From my modest beginnings

---

[1] For the Court's convenience, our firm resume is attached hereto as Exhibit A. As set forth therein, my firm has regularly achieved substantial returns of class members' losses, even after payment of fees and expenses.

have grown substantial successes. For example, J&P was Co-Lead Counsel in *In re: i2 Sec. Litig.,* No. 3:01-CV-418 (N. D. Tex.), which settled for $87.4 million and serves on the Executive Committee in *In re: Global Crossing Sec. Litig.,* MDL 1472 (S.D.N.Y.), wherein settlements of $320 million have been obtained to date. We are also serving as Co-Lead Counsel in *In re: Xerox Sec. Litig.*, No. 3:00-CV-1621 (D. Conn.), alleging a $6 billion overstatement of revenue, and *In re: Priceline Sec. Litig.,* No. 3:00-CV-1884 (D. Conn.). As a result of my hands-on experiences in these and the many other cases set forth in our Resume, I bring to this litigation a thorough understanding of the manner in which major corporations, such as Merck, paper their decisions and the proof necessary (and available) to prove deception on behalf of not just Vermonters, but all members of the economic class actions.

I, personally, am prepared to, and will, make this case my top priority. Thus, if appointed, I will participate in the PSC decisions, attend the monthly hearings and offer my expertise on an ongoing basis. I pledge to work cooperatively with all members of the PSC, including any members appointed on behalf of the "pricing class actions," and with other counsel in the economic class actions so that they, too, may participate in the common litigation in a productive and non-duplicative fashion. I have no conflicts of interest which will prevent me from doing so. And, I am happy to say, I was clueless about Your Honor's references to "side agreements" to get off of a PSC.

There is, however, another reason why I am uniquely qualified to serve in the requested capacity. Just as there are vast differences in the proof necessary to prove tort liability and violations of state consumer protection laws, there are also vast differences in the proof necessary to demonstrate liability between various categories of such state laws. Only four states (Vermont, California, North Carolina, and New Jersey) and the District of Columbia provide consumers with a statutory right to receive a return of consideration paid. As both New Jersey and North Carolina require proof of causation and actual damages as a prerequisite to liability, only Vermont, D.C., and California permit a return of consideration paid merely upon showing of deceptive or unlawful acts or practices.[2] Four other states (Arizona, Idaho, Maine

---

[2] Thus, the Maryland State Court of Appeals, in *Citaramanis v. Hallowell*, 613 A.2d 964, (Md. 1992) found that there were three categories of consumer statutes then in place, but noted that:

> An exception [to all three categories] is Vermont's consumer protection act, Vt. Stat. Ann. tit. 9, §§ 2453, 2461 (1984), which permits an aggrieved consumer to recover damages, *or the consideration or the value of the consideration given by the consumer*, reasonable attorney's fees, and exemplary damages, *but does not require proof of actual injury or damage. See Peabody v. P.J.'s Auto Village, Inc.,* 153 Vt. 55, 58-59, 569 A.2d 460, 463 (1989).

and Texas) permit actions for rescission or restitution, the availability of which turns on whether the Plaintiffs must return any benefits they may have received, which Defendants will argue cannot be done as to ingested drugs. All of the remaining states require Plaintiffs to show actual damage.

As the statutes in these states demonstrate, the necessity of proving damages goes directly to the Plaintiffs' standing to bring suit and/or Plaintiffs' ability to demonstrate Defendants' liability.[3] To be entitled to any relief under such statutes, the extensive factual and expert discovery and testimony identified at pp. 9-10 of Hagens Berman's March 11, 2005 submission will be necessary to prove the overpayment (or damage) caused by virtue of the product misrepresentations. At least in Vermont, D.C. and California, such proof is unnecessary. Upon a showing of Defendants' deception, Plaintiffs are entitled to a return of consideration.

If appointed, I will seek to front load discovery toward the issues in common (deception) and vigilantly work to obtain court resolution of the various legal issues necessary to permit remand of the various categories of economic cases at the earliest time possible. At the same time, I am thoroughly committed to serve on the PSC for the duration of the MDL proceedings for the common benefit of all cases in the MDL.

There is the potential for conflict between the various categories of economic loss cases. In the context of settlement, claims with lesser standards of proof for liability and for a greater portion of return for every dollar spent are clearly more valuable on a person-to-person basis. Such class members are entitled to have their interests separately represented during settlement discussions by counsel possessing knowledge of the occurrences transpiring in the proceedings leading up to such discussions. In short, my appointment will both facilitate judicial efficiency and ensure compliance with *Amchem* and Fed. R. Civ. P. 23(g)(2)(B) (appointment of interim class counsel best able to represent interests of putative class).

Respectfully submitted,

Dennis J. Johnson, Esq.

---

*Id.* at 970, ftnt. 4. (emphasis added).

[3]   Indiana, Ohio and New Hampshire apparently permit suit even if the plaintiffs were not damaged, but no recovery may be had in that instance.

# JOHNSON & PERKINSON
ATTORNEYS AT LAW
1690 WILLISTON ROAD
SOUTH BURLINGTON, VT 05403
www.jpclasslaw.com

TEL: (802) 862-0030 • FAX (802) 862-0060

E-MAIL email@jpclasslaw.com

DENNIS J. JOHNSON
ALSO ADMITTED TO PA AND DC*

JACOB B. PERKINSON
ALSO ADMITTED TO ME

*INACTIVE

ROBIN A. FREEMAN, JR.
ALSO ADMITTED TO OH*

JAMES F. CONWAY, III
ALSO ADMITTED TO MA

PETER J. MCDOUGALL
ALSO ADMITTED TO MA

Johnson & Perkinson (formerly the Law Offices of Dennis J. Johnson) ("J&P") was formed on January 1, 1994. J&P conducts a national practice focusing on securities, anti-trust and consumer class-action litigation on behalf of injured investors and consumers and currently serves as lead and co-lead counsel in various class action cases, including, In re: Xerox Sec. Litig., No. 3:00-CV-1621 (JCH) (D. Conn.); In re: Xchange, Inc. Sec. Litig., No. 01-10322 (RWZ) (D. Mass.); In re: Priceline Sec. Litig., No. 3:00-CV-1884 (DJS) (D. Conn.); In re: i2 Tech., Inc. Sec Litig., 3:01-CV-418-H (N. D. Tex.); Elkins v. Microsoft, No. 165-4-01 Wmc (Windham County) (Vermont); and Green v. Adelphia, No. 443-8-99WNCV (Washington Sup. Ct.) (Vermont). In addition, J&P serves on the executive committee sharing responsibility for numerous aspects of the class action litigation in In re: Global Crossing Ltd. Sec. Litig., M.D.L. 1472 (S.D.N.Y.).

In October 2004, J&P, serving as co-lead counsel, obtained final approval of a partial settlement of $84.85 million and significant corporate governance reforms in In re: i2 Tech., Inc. Sec. Litig., No. 3:01-CV-418-H (N. D. Tex.) Currently pending for final approval is a preliminary settlement against i2's accountant, Arthur Andersen, for $2.9 million. In July 2004, J&P, serving as lead counsel representing a class of Vermont consumers who purchased Microsoft software products alleging violations of Vermont's consumer fraud laws, and following a successful appeal to the Vermont Supreme Court, obtained preliminary approval of a settlement valued at $9.7 million in Elkins v. Microsoft Corp., No. 165-4-01 (Windham Sup. Ct.) (Vermont). In 2003, J&P, serving as co-lead counsel, obtained a settlement of $12.026 million in In re: Allaire Corp. Sec. Litig., No. 00-CV-11972 (WGY) (D. Mass). Additionally, J&P serves on the executive committee in In re: Global Crossing Ltd. Sec. Litig., S.D.N.Y. (M.D.L. 1472), in which partial settlements of approximate $320 million have been obtained. The case continues to be litigated against numerous other defendants. J&P also participated in the prosecution of In re: Compact Disk Minimum Advertised Price Antitrust Litig., M.D.L. 1361 (D. Me.), which resulted in a settlement of $63.375 million in cash and $75.7 million worth of compact disks distributed to not-for-profit, charitable, government and/or public entities.

J&P has successfully collected significant portions of the losses suffered by various classes. For example, the firm was sole lead counsel in Schwartz v. Celestial Seasonings, Inc., No. 95-K-045 (D. Colo.), wherein class members received a return of 30% of their recognized losses after payment of attorney's fees and expenses, prompting Chief Judge Kane to note that "this Court was blessed with vigorous and talented counsel of high standing and reputation on both sides, which made it truly a pleasure to have this case in front of me" and "you've done an excellent job, and you haven't done it without equally competent opposition." Additionally, the firm served as co-lead counsel in Pozzi v. Smith, et al, No. 95-CV-1454 (ER) (E.D. Pa.), resulting in the return of 100% of all recognized losses of all claimants, after the payment of all expenses and attorneys' fees; lead counsel in Savoie v. Merchants Trust Co., No. 2:94-CV-213 (D. Vt.), in which a $9.2 million common fund was created for the benefit of the class, resulting in a recovery for the class of approximately 93% of their out of pocket losses (an additional $2.1 million settlement was recovered in 2001 on behalf of the class by J&P, resulting in an overall recovery of nearly 98%, after payment of attorneys' fees and expenses); lead counsel in Jakobe v. Ben & Jerry's Homemade, Inc., No. 1:95-CV-373 (D. Vt.) resulting in a return to investors of 20% of their recognized losses, after payment of all fees and expenses; lead counsel in Jakobe v. Rawlings Sporting Goods, Inc., No. 4:95-CV-2288 (DJS) (E.D. Mo.), resulting in a return to the class of 22% of their recognized losses, after payment of attorney's fees and litigation expenses; lead counsel in In re Corvas Inter., Inc., Sec. Litig., No. 93-279 NAJ (CM) (S.D. Cal.), resulting in a return to class members of over 30% of their recognized losses after payment of fees and expenses; lead counsel in In re New Hampshire Savings Bank Corp., No. 90-227B (D.N.H.), resulting in a return to investors, after payment of fees and expenses, of approximately 28% of the class' recognized losses; and lead counsel in Walsh v. Chittenden Corp., No. 2-91-CV-208 (D. Vt.) which resulted in a return to investors of almost 35% of their recognized

losses after payment of fees and expenses and prompted Judge Parker, later a member of the Second Circuit Court of Appeals, to compliment counsel at the settlement hearing for doing "a real good job of lawyering" and indicate that the "documentation and briefing in this case really has been very high caliber all around." Additionally, while not designated "lead counsel," J&P was one of three firms primarily responsible for the litigation effort leading to a $10 million settlement in In re Fidelity/Micron Sec. Litig., No. 95-12671 (D. Mass.) and actively participated in the discovery proceedings in the antitrust case entitled In re: Nasdaq Market-Makers Antitrust Litig., 94-CV-3996 (S.D.N.Y.) (M.D.L. 1023), in which settlements were reached with thirty brokerage firm defendants for over $1 billion.

### DENNIS J. JOHNSON

Mr. Johnson is a 1980 magna cum laude graduate of Vermont Law School. Mr. Johnson graduated first in his class and was thereby awarded the Learned Hand Award for Academic Excellence. Mr. Johnson received thirteen American Jurisprudence Awards for obtaining the highest grade in, among others, the following courses: Administrative Law, Agency and Partnership, Constitutional Law, Contracts, Criminal Procedure, Estates, Evidence and Property. While a student, Mr. Johnson served as a staff member on the Vermont Law Review and, during his senior year, as an editor and business manager.

Following his graduation from law school, Mr. Johnson joined the enforcement division of the Securities and Exchange Commission ("SEC") in Washington, D.C. As a staff attorney, Mr. Johnson worked on investigations of federal securities law violations involving market manipulations, unregistered distributions, trading on material non-public information, proxy solicitation violations and the filing of false registration statements. Mr. Johnson was one of the lead attorneys in SEC v. Universal Energy Corp., et al., No. 84-0643 (D.D.C.) and four related administrative proceedings in which a total of sixteen defendants (including two securities brokerage firms and three registered representatives) were enjoined or sanctioned for violations of numerous sections of the federal securities laws including those pertaining to an unregistered distribution of stock, market manipulation and misappropriation of company assets.

In early 1985, Mr. Johnson became an associate with the firm of Meredith & Cohen, P.C., where he participated actively in the prosecution of various derivative and class action securities fraud actions including In re Coleco Sec. Litig., No. 83-CV-9199 (S.D.N.Y.); Greenstein v. AIA Indust., Inc., No. 84-4691 (E.D. Pa.) and Robinson v. Allegheny Beverage Corp., No. M-86-2309 (D. Md.). In the Allegheny case, as lead counsel, Mr. Johnson was instrumental in obtaining a settlement of $6.9 million on behalf of the class.

From January 1988 through December 1993, Mr. Johnson was Of Counsel to the firm of Zlotnick & Thomas. While affiliated with that firm, Mr. Johnson dedicated his practice to litigating securities fraud and breach of fiduciary duty cases. While with Zlotnick & Thomas, Mr. Johnson was one of three co-lead counsel in In re Surgical Laser Tech. Sec. Litig., No. 91-CV-2478 (E.D. Pa.), in which a $5.5 million settlement was obtained; one of two lead counsel in Lyons v. Calderone, No. 89-4631 (D.N.J.), in which a settlement of $3.0 million was reached; co-lead counsel in a class action styled Goldstein v. Advest, No. H-88-262 (PCD) (D. Conn.), in which a settlement of $1,725,000 was reached; and lead counsel in Appleton v. Veenstra, No. 89-1352 (MGC) (S.D.N.Y.) in which a settlement of $775,000 was reached. In Lines v. Marble Bank, No. 90-167 (D. Vt.), a case in which Mr. Johnson was co-lead counsel and in which a $2 million settlement was obtained, the Court stated:

> The firms acting as lead counsel in this case present detailed resumes. They specialize in securities class actions and have shown outstanding ability to efficiently and successfully prosecute major litigation on a national scale. Their expertise no doubt contributed to the speedy and successful resolution of this case.

Although not serving as lead counsel, Mr. Johnson actively participated in the discovery program conducted in In re United States Telecommunication Inc. Sec. Litig., No. 90-2251-0 (D. Kan.) in which a $25 million settlement was achieved.

2

Mr. Johnson is admitted to practice in the District of Columbia (inactive), the Commonwealth of Pennsylvania, the State of Vermont, the U.S. District Court for Vermont, the U.S. District Court for the Eastern District of Pennsylvania, the Second, Eighth and Tenth Circuit Courts of Appeal and the Supreme Court of the United States. Additionally, Mr. Johnson serves on the Family Advisory Committee for the Baird Center for Children and Families, Chittenden County's agency overseeing mental health services for children and families.

## JACOB B. PERKINSON

Jacob B. Perkinson is a partner in the firm and previously worked as an associate with the Law Offices of Dennis J. Johnson, beginning in August 1995. Mr. Perkinson graduated magna cum laude from Vermont Law School in 1995, receiving American Jurisprudence Awards for obtaining the highest grade in Civil Procedure, Constitutional Law, Corporations, Estates, International Law, Commercial Law, and Lawyering. Mr. Perkinson also served as a member and editor of the Vermont Law Review from 1993 to 1995.

In 1994, Mr. Perkinson served in the SEC's Honors Program, while working in the Enforcement Division and participating in a number of investigations, including joint investigations with the Department of Justice. Mr. Perkinson's work with the SEC involved investigations of registration statement violations, fraudulent filings, and various other violations of the federal securities laws.

Mr. Perkinson is admitted to practice in the State of Maine, the State of Vermont, the U.S. District Courts for the Districts of Vermont, Colorado and the Southern District of New York, the Courts of Appeals for the First and Eighth Circuits and the Supreme Court of the United States. He is an active member of the American Bar Association, the Vermont Bar Association, the Association of Trial Lawyers of America and the Vermont Trial Lawyers Association. In addition, Mr. Perkinson is active in his community, serving as a member of the Burlington Fire Commission and the Community Restorative Justice Panel and volunteering pro bono services to the Vermont Volunteer Lawyers Project and other non-profit organizations.

## ROBIN A. FREEMAN

Robin Freeman graduated from the University of Cincinnati College of Law in 2001, where he repeatedly received Dean's List Honors. Mr. Freeman began with the firm as a law clerk in February of 2002 and joined the firm as an associate, in May of 2002. His work in Ohio involved substantial litigation experience in a wide variety of personal injury, criminal and civil rights matters. Mr. Freeman practices class action litigation under the federal securities laws, antitrust law and consumer fraud. Mr. Freeman is admitted to practice law in the State of Vermont, the State of Ohio and the U.S. District Court for the District of Vermont.

## JAMES F. CONWAY, III

James F. Conway, III joined the firm in November of 2002. Mr. Conway graduated cum laude from Suffolk University Law School in 2002. At Suffolk, he completed the Financial Services Concentration "With Distinction" for the maintenance of exemplary grades in the study of securities law and the regulation of financial markets. Mr. Conway worked as an intern at the Securities Enforcement Division of the Office of the Secretary of the Commonwealth of Massachusetts where he participated in multiple investigations into violations of securities laws. Prior to joining the firm, Mr. Conway worked as a clerk at a civil litigation firm in Boston. Mr. Conway's practice focuses on the litigation of class action matters prosecuted under ERISA, the federal securities laws and state consumer protection laws. Mr. Conway is admitted to practice law in the state and federal courts in Vermont and Massachusetts.

**PETER J. MCDOUGALL**

Peter McDougall joined the firm in 2003. Mr. McDougall graduated cum laude from Vermont Law School in 2001 and received an L.L.M. in Banking and Financial Law from Boston University School of Law in 2002.

Mr. McDougall served as a law clerk to the Hon. Senator Patrick J. Leahy and the Democratic Staff of the United States Senate Judiciary Committee in 1999. In addition, Mr. McDougall has clerked for the Vermont Department of Banking, Insurance, Securities and Health Care Administration as well as the Montpelier law firm of Wilson & White, P.C.   Mr. McDougall's practice focuses on the litigation of class action matters prosecuted under the federal securities laws and state consumer protection laws.

Mr. McDougall is admitted to practice law in Vermont and the Commonwealth of Massachusetts. Mr. McDougall has extensive volunteer experience which includes serving on the organizing committee for the Vermont Special Olympic Winter Games from 1991-1999. Additionally, Mr. McDougall has served as a volunteer on numerous political campaigns throughout New England on the local, state and National level.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUSIANA

| | | | |
|---|---|---|---|
| IN RE: | VIOXX<br>PRODUCTS LIABILITY LITIGATION | : <br> : <br> : <br> : <br> : <br> : | MDL NO. 1657 <br><br> SECTION L <br><br> JUDGE FALLON <br> MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO ALL CASES | | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICATE OF SERVICE

I hereby certify that I am serving the Application of Dennis J. Johnson for Membership on Plaintiffs' Steering Committee, Economic Class Actions, on all counsel of record by sending it to Plaintiffs' Liaison Counsel, Herman, Herman, Katz & Cotlar, LLP, who will forward it on to all counsel of record.

Dated: March 25, 2005.

Respectfully submitted,

Dennis J. Johnson, Esq.
**JOHNSON & PERKINSON**
1690 Williston Rd.
P.O. Box 2305
S. Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060
email@jpclasslaw.com