UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to all cases | * | |
| | * | MAGISTRATE JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT MERCK'S SUBMISSION REGARDING
COMMUNICATIONS WITH PLAINTIFFS' HEALTHCARE PROVIDERS**

This memorandum responds to the Court's request for briefing on how it should regulate counsel communications with plaintiffs' treating physicians and other healthcare providers. With respect to defense counsel contacts with such individuals, consideration of this issue requires a two-part inquiry: First, there is the question whether state law recognizes the physician-patient privilege and if so, whether it construes the filing of a lawsuit as a waiver thereof. Although state laws on these issues vary, a number of jurisdictions allow defendants to have unfettered communications with plaintiffs' physicians – particularly where the plaintiffs are suing over an alleged bodily injury. Second, there is the question whether in jurisdictions lacking privilege-based communications restrictions, informal, *ex parte* contact with healthcare providers is permissible as a matter of federal procedural law. On that point, federal courts differ, citing a variety of policy rationales.

In considering this issue, Merck respectfully submits that the Court should simultaneously assess how plaintiff counsel communications with healthcare providers should be regulated. The fact that some plaintiffs' lawyers have named physicians as co-defendants in VIOXX suits suggests that *ex parte* communications by plaintiffs' lawyers with plaintiffs' physicians could raise ethical and fundamental fairness concerns – that is, there are legitimate concerns that the testimony of some healthcare providers could be swayed by the threat (explicit or implicit) that they may be named as defendants. (*See* "Preparing the Treating Physicians," presented at VIOXX Harris-Martin Conference, April 2005, at 3 (attached hereto as Ex. A) ("The only way a plaintiff will win a VIOXX case is if the treating physicians support plaintiffs' case.").)

For the reasons detailed below, Merck believes that the most equitable, common-sense method for harmonizing the various policies reflected in the federal and state laws noted above and ensuring that interactions with potential fact witnesses do not proceed in an inappropriate manner is to simply require that *all* contacts with the healthcare providers of plaintiffs in this proceeding take place with notice and an opportunity for attorneys for all parties – the plaintiff and all defendants – to be present. Accordingly, Merck respectfully requests that the Court direct Liaison Counsel to confer and to craft a proposed order to that effect.

**Argument**

I. **MANY STATES EITHER DO NOT RECOGNIZE THE PHYSICIAN-PATIENT PRIVILEGE OR FIND A WAIVER OF THAT PRIVILEGE IF THE PATIENT FILES A PERSONAL INJURY SUIT.**

Any assertion that the physician-patient privilege bars informal, *ex parte* communications between defense counsel and plaintiffs' treating physicians in all the cases in this proceeding is simply wrong. Because the individual personal injury actions in this proceeding are diversity jurisdiction actions, issues of privilege are governed by state law. *See* Fed. R. Evid. 501. And as with any question drawing upon the legal rules of the fifty states, the existence, scope, and waiver of such a privilege do not reduce to a "one-size-fits-all" rule. In fact, many states do not recognize the physician-patient privilege, particularly where the patient has filed a lawsuit placing his or her medical condition at issue.

As a threshold matter, many states do not recognize a physician-patient privilege at all. *See Romine v. Medicenters of Am., Inc.*, 476 So. 2d 51, 55 n.2 (Ala. 1985) ("There is no testimonial privilege in Alabama covering communications between a physician and his patient or the physician's knowledge of the patient's condition acquired by reason of the relationship."); *Veasley v. State*, 275 Ga. 516, 518 (2002) ("Georgia does not recognize a common-law or statutory physician-patient privilege. . . ."); *McCormick v. England*, 494 S.E.2d 431 (1997).

Moreover, even in those states that do recognize a physician-patient privilege, most construe the filing of a lawsuit placing a plaintiff's medical condition at issue as a waiver of that privilege. *See, e.g., Langdon v. Champion*, 745 P.2d 1371 (Alaska 1987) (filing of personal

injury lawsuit waives privilege); *Nelson v. United States*, 649 A.2d 301, 308 (D.C. 1994) ("We have recognized that a patient waives the privilege as to relevant evidence by filing a lawsuit which places in issue the patients [sic] medical condition."); Haw. Rev. Stat. Ann. § 504(d)(3) ("There is no privilege under this rule as to a communication relevant to the physical, mental, or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of the patient's claim"); Idaho Code § 9-203(4)(D) (filing of personal injury action constitutes consent to physician testimony); Me. R. Evid. 503(e)(3) (there is "no privilege" when medical condition is put at issue in lawsuit). Some states do not even restrict the waiver to information relevant to the medical condition at issue. *See, e.g., Bryant v. Hilst*, 136 F.R.D. 487, 491 (D. Kan. 1991) ("no privilege" under Kansas law when lawsuit puts medical condition at issue, even "as to conditions other than the condition at issue"). *But see Duquette v. Superior Court*, 161 Ariz. 269, 778 P.2d 634 (1989) (no implied waiver from filing of action); *Franklin v. Nationwide Mut. Fire Ins. Co.*, 566 So. 2d 529, 531, 534-35 (Fla. Dist. Ct. App. 1990) (same).

In short, the physician-patient privilege does not bar informal, *ex parte* communications by defendants with plaintiffs' physicians with regard to those VIOXX plaintiffs whose claims are governed by state laws that: (1) simply do not recognize the physician-patient privilege; or (2) provide that the privilege is waived when a patient files a personal injury suit.

II.     **THE LAW REGARDING *EX PARTE* CONTACTS IS CONFUSED.**

For those states in which there is no physician-patient privilege or in which that privilege is waived by the initiation of litigation, there arises the question whether a defendant can engage in *ex parte* contacts with a plaintiff's healthcare providers. This is an issue of federal law because federal procedural law governs the means by which litigants may uncover non-privileged information even in diversity jurisdiction cases. *See, e.g., Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) ("the issue of how discovery may be conducted is one of federal procedure"); *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991) ("Federal Rules of Civil Procedure govern the discovery conducted in this case [and] [n]othing in those Rules prohibits informal interviews of the type which plaintiff seeks to prohibit").

Federal courts are divided on this question and have developed "two opposing lines of cases [that] defy reconciliation." *Stewart v. Women in Cmty. Serv., Inc.*, No. CV-N-97-234-DWH (PHA), 1998 U.S. Dist. LEXIS 17741, at *7 (D. Nev. Sept. 11, 1998). The better-reasoned decisions, however, have concluded that informal, *ex parte* contact with healthcare providers should be permitted because: (1) the Federal Rules of Civil Procedure do not prohibit informal, *ex parte* contact with a fact witness, and (2) informal discovery of fact witnesses is a long-accepted means of conducting discovery efficiently, inexpensively, and without troubling the court. It is a "time-honored and decision-honored principle[] . . . that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Int'l Bus. Mach.*

*Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975); *see also Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995). Barring any applicable privilege, plaintiffs' healthcare providers should be treated no differently.

A leading case on this issue is *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126 (D.D.C. 1983). In that case, the plaintiffs conceded that they waived the privilege by placing their medical condition at issue, but nonetheless refused to permit informal *ex parte* interviews of their physicians by defense counsel. 99 F.R.D. at 127. The court compelled plaintiffs to authorize such interviews, first noting that "no party to litigation has anything resembling a proprietary right to any witness's evidence." *Id.* at 128. "Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows. . . , and . . . the Federal Rules of Civil Procedure . . . have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak." *Id.* The informal process, the court concluded, has several benefits to recommend it, including that it is less costly and logistically simpler, it is "conducive to spontaneity and candor in a way depositions never can be," and it provides litigants a "cost-efficient" means of whittling down a witness list. *Id.* While recognizing the virtues of the privilege, the court pointedly noted that it is subject to abuse: "[t]he privilege was never intended . . . to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time." *Id.* Conditioning informal interviews on plaintiff's consent "enables the party so wielding the privilege to monitor

6

his adversary's progress in preparing his case by his presence on each occasion such information is revealed, while his own preparation is under no such scrutiny." *Id.* at 128-29. The court concluded that "it would be an abuse of the privilege to allow it to be used in such a manner which has no relation to the purposes for which it exists." *Id.* at 129.

*Doe* has repeatedly been followed by federal courts around the country based on a view that it provides the most cogent explanation of the inequities and inefficiencies of barring defendants from *ex parte* contact with plaintiffs' physicians. *See, e.g., Stewart*, 1998 U.S. Dist. LEXIS 17741, at *10 (federal rules permit informal ex parte communications; cases rejecting the *Doe* line "are not persuasive"); *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991); *Felder v. Wyman*, 139 F.R.D. 86, 90 (D.S.C. 1991).[1]

The case for unfettered access to healthcare providers may be even greater in the context of pharmaceutical products liability cases (such as those in this MDL proceeding),

---

[1] *Johns v. United States*, Civ. Act. No. 96-1058, 1997 U.S. Dist. LEXIS 17979 (E.D. La. Nov. 6, 1997), does not dictate a different result. In that case, only Louisiana privilege law was at issue, and the state statutes providing for waiver of the privilege in medical malpractice and personal injury cases specifically limited the means by which that information could be gathered. Specifically, information as to which the privilege was waived could "only be disclosed pursuant to one of the discovery methods authorized" by the Louisiana Code of Civil Procedure. *Id.* at *8. The court recognized that federal district courts are "evenly split" on the issue, and that "[s]trong public policy arguments support each of the opposing positions." *Id.* at *9-10. The court believed it did not have to engage in this debate, however, because the Louisiana legislature had already decided the matter. *Id.* at *13. "The discovery limitations incorporated into the statutory waiver of a plaintiff's provider/patient privilege act as a substantive part of the State's privilege law," not merely as a matter of state procedure. *Id.* at *14. In any event, Louisiana appears to be among the minority of states that restrict defense counsel's ability to obtain non-privileged information solely to formal discovery methods. The vast majority of claimants in this MDL proceeding are not Louisiana residents subject to Louisiana law.

because the most critical information possessed by the physicians (their own knowledge of the product) is not subject to any privilege. In such cases, the physician's knowledge of the plaintiff's medical condition is important, but it "pales in comparison to the significance of the physician's product knowledge." Barbara Podlucky Berens, *Defendants' Right to Conduct Ex Parte Interviews with Treating Physicians in Drug or Medical Device Cases*, 73 MINN. L. REV. 1451, 1483 (1989). After all, "[t]he defendants' ability to investigate physicians' independent knowledge about the product and the adequacy of the product's warning is a prerequisite to preparation of the learned intermediary and proximate cause defenses." *Id.* at 1484 (footnote omitted). That information obviously is not privileged, as it does not arise from the physician-patient relationship, but is gathered from independent sources. Accordingly, "prohibiting ex parte interviews robs defendants of their right to prepare this unprivileged testimony privately without the presence of patients' counsel." *Id.*[2]

---

[2] As the *Johns* court noted, in a few states, the question of *ex parte* contacts may be substantive rather than procedural, and thus state law may apply. 1997 U.S. Dist. LEXIS 17979, at *14. However, state courts are as divided on this issue as federal courts. Most state courts conclude that informal communication is both efficient and appropriate. *See, e.g., Langdon*, 745 P.2d 1371 (Alaska 1987) (defense counsel may engage in *ex parte*, informal communications with treating physicians); *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 143 (1997) ("the formal discovery rules do not preclude informal communications between defense counsel and ordinary fact witnesses"). Other states permit such contact but impose various restrictions. *See Samms v. District Court*, 908 P.2d 520, 526 (Colo. 1995) (permitting "informal interviews in the absence of a plaintiff or the plaintiff's attorney with physicians who have treated the plaintiff," so long as plaintiff is given notice and an opportunity to attend); *Stempler v. Speidell*, 495 A.2d 857, 864 (N.J. 1985) (permitting *ex parte* interviews with certain restrictions). And a few simply bar *ex parte* contact. *See Duquette v. Superior Court*, 778 P.2d 634 (Ariz. Ct. App. 1989) (defense counsel in a medical malpractice case may not engage in *ex parte* communications without plaintiff's consent); *Franklin v. Nationwide Mut. Fire Ins. Co.*, 566 So. 2d 529, 531, 534-35 (Fla.

In short, while the law admittedly is somewhat unsettled, there is strong support for the proposition that defense counsel should be permitted to have equal access to plaintiffs' healthcare providers, particularly in a pharmaceutical case, so as to promote the free flow of information and fairness to all parties.

III. **THE MOST EQUITABLE SOLUTION IS TO REQUIRE THE PRESENCE OF ALL COUNSEL FOR ANY PARTY'S COMMUNICATIONS WITH TREATING PHYSICIANS AND OTHER HEALTHCARE PROVIDERS.**

For the reasons set forth above, Merck believes that in the majority of states, applicable law does allow defendants unfettered access to a plaintiff's healthcare providers. However, because it would be difficult for the Court to supervise 50 different regimes governing physician contacts and because of Merck's concerns regarding procedural unfairness and ethical issues that could arise if plaintiffs' counsel are permitted to engage in such *ex parte* contracts, Merck proposes that all parties be provided with notice and an opportunity to be present at any informal interviews with physicians in these matters. Several considerations support such a rule:

***First***, *ex parte* contacts by plaintiffs in this situation raise significant ethical concerns because, in plaintiffs' words, "[t]he only way a plaintiff will win a VIOXX case is if the treating physicians support plaintiffs' case." (*See* "Preparing the Treating Physicians," presented at VIOXX Harris-Martin Conference, April 2005 (attached hereto as Ex. A).) In materials disseminated at a recent VIOXX conference, plaintiffs' lawyers explained how counsel

---

Dist. Ct. App. 1990) (defense counsel may not have informal communications with treating physician).

should use their own informal *ex parte* meetings with treating physicians to urge them to adopt and support plaintiffs' theories, because "[t]he winner of the case will likely be the party who convinces the subsequent treating physician to support their case." (*Id.* at 2.) For this reason, "preparation of these critical witnesses is the key!" (*Id.* at 3 (emphasis in original).) In a section titled "Deposition Preparation of 'Prescribing Physician,'" the materials advise plaintiffs' counsel to review specific materials with each physician, in order to encourage the physician to arrive at the following conclusion:

> Question: Based upon all of the information that you have now seen for the first time in this litigation, would you still have prescribed Vioxx to plaintiff?
>
> Answer: **No!**

(*Id.* at 13 (emphasis in original).) The presentation concludes with the following statement: "If the treating physicians are supportive, you will have hit a home run!" (*Id.* at 21 (emphasis in original).) This is a textbook example of the improper and unfair advantage plaintiffs' counsel would obtain if they are permitted unfettered access to healthcare providers, while defendants are denied such contact.

This indication that plaintiffs intend to contact physicians to prepare them for depositions and then to rely heavily on healthcare provider testimony, coupled with the fact that many physicians may fear being named in VIOXX suits, also raises serious concerns about plaintiffs exercising undue influence over physicians' testimony. *Cf. Felder*, 139 F.R.D. at 89 (noting situation where "patient insists on sending his lawyer to monitor the doctor's

conversation under the implicit threat that the patient will sue the doctor or initiate disciplinary proceedings should the doctor reveal more than the patient wishes to make known about his health."). Requiring that all conversations take place with both parties present would alleviate this concern.

*Second*, one-sided access to critical fact witnesses would allow plaintiffs' counsel to use the privilege as a tactical weapon to suppress the flow of information to defendants. As noted in *Doe*, "[t]he privilege was never intended . . . to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time." 99 F.R.D. at 128. Conditioning informal interviews on a plaintiff's consent "enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information is revealed, while his own preparation is under no such scrutiny." *Id*. at 128-29. Other courts similarly have recognized the unfairness that can result from this approach. In *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991), the court observed that

> It is plaintiff that has placed his medical condition in issue in this action. Plaintiff's treating physicians and other health care providers are fact witnesses. What plaintiff requests is complete control over a group of fact witnesses. If the court were to grant plaintiff's request, plaintiff's counsel would have unrestricted access to these witnesses, but *by the court's order* defendant's counsel would not be allowed to interview these witnesses simply because they were treating physicians, although they are witnesses with nonduplicable information concerning major areas of the action . . . . Plaintiff would have regular access on multiple occasions to each witness, while defendant would be limited to a

> single "on the record" inquiry. There is no such similar circumstance with respect to other fact witnesses.

136 F.R.D. at 491-92 (emphasis in original). In *Felder v. Wyman*, 139 F.R.D. 86, 90 (D.S.C. 1991), the court remarked that "Plaintiff's proposed order allowing him to monitor defendants' case preparation and control access to witnesses obstructs [the search for the truth]." Contrary to the position asserted by plaintiffs, "[d]efendants are entitled, as a matter of justice, to fully explore decedent's health without plaintiff unnecessarily intruding into the process and exerting undue pressure upon witnesses to censor their speech." *See also Stewart*, 1998 U.S. Dist. LEXIS 17741, at *11 ("policy considerations which support giving plaintiffs 'inordinate control over a witness's disclosures and . . . allowing plaintiff[s] to monitor the work of defendants in preparing their case,' . . . act in favor of an unfair discovery process and are not persuasive") (quoting *Felder*, 139 F.R.D. at 90); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1996 WL 530107, at *2 (E.D. Pa. Sept. 16, 1996) (lifting ban on *ex parte* communications with physicians because it hindered defendant's trial preparations).

In addition to unfairly controlling defendants' access to crucial witnesses, plaintiffs would be permitted a tactical advantage by their exclusive access – even absent ethical concerns. Free to meet privately with treating physicians to explore the nature and extent of the physicians' opinions, plaintiffs' counsel would not risk revealing mental impressions, case strategy, legal theories, or other sensitive information to defense counsel during a deposition. Defendant would have no such luxury. During these private meetings, plaintiffs' counsel would present their view of the case to the treating physicians (as plaintiffs here are certain to do, *see*

discussion, *supra*), potentially biasing them against defendant in advance of the depositions. Plaintiffs' counsel would also possess an unfair advantage at the depositions because their prior knowledge of the physician's testimony would eliminate the need to waste limited deposition time simply discovering the extent of the physician's knowledge. Defense counsel, on the other hand, would be forced to use their limited time covering ground already known to plaintiff.[3]

**Third**, if plaintiffs (and not defendants) were allowed unfettered access, all of the benefits of informal discovery recognized in *Doe* would be available only to plaintiffs. As that court noted, the informal process is "less costly," "conducive to spontaneity and candor in a way depositions can never be," and provides an inexpensive way to pare witness lists. *Doe*, 99 F.R.D. at 128. The unequal access proposed by plaintiffs would require defendants to bear the cost and inconvenience of taking a deposition where plaintiffs may simply pick up the phone to obtain the same information. *See also Bryant*, 136 F.R.D. at 492 ("Defendant's counsel would always be required to expend the funds necessary to take a deposition in order to determine whether treating physicians are in possession of any facts material to the action. As a result, the costs to defendant would be materially increased to obtain the same facts available to plaintiff

---

[3] *See also* Thomas V. Laprade, *A Proposal for Broader Access to Treating Physicians During Litigation*, 19 MAINE BAR J. 90, 95 (2004) ("The courts that have focused their decisions on the physician-patient privilege have failed to recognize the unfairness created by allowing only one litigant access to a treating physician who, in most cases, is really no different from any other percipient witness. Plaintiff's attorneys routinely speak with their clients' treating physicians. For a plaintiff to argue that defense counsel should be governed by different rules is akin to arguing in favor of unfairness.").

without deposition costs."). Moreover, only plaintiffs would be privy to the "spontaneity and candor" provided in an informal setting.

In sum, given the large number of suits, the administrative complexity of managing the docket, the questions of efficiency and fairness, and the ethical concerns discussed above, Merck believes that the most appropriate and equitable solution to this issue is simply to require that all parties must be invited to be present for any communications with a plaintiff's healthcare providers.[4] This proposal would level the playing field so that neither party has an unfair advantage as a result of unequal access to critical fact witnesses.

### Conclusion

As set forth above, many states either do not recognize the physician-patient privilege or recognize that the privilege is waived if the patient files a personal injury suit. Accordingly, it would be inappropriate for the Court to simply bar defense counsel from engaging in contacts with healthcare providers across the board. At the same time, given the large number of suits and the administrative complexity of managing the docket, the Court may prefer a more practical approach. Moreover, allowing plaintiffs unfettered contact with

---

[4] To the extent that HIPAA requires patient consent or the entry of a protective order for the release of medical information by healthcare providers, the parties can confer and submit appropriate language for such documents to this Court. *See Bayne v. Provost*, 359 F. Supp. 2d 234 (N.D.N.Y. 2005) (permitting *ex parte* interviews subject to a HIPAA-compliant protective order); *see also Doe*, 99 F.R.D. 126 (court has authority to compel plaintiffs to execute appropriate authorization to communicate with treating physician).

771386v.1

physicians, while denying such contact to defendants, raises serious questions of efficiency and fairness, and even ethical concerns.

For the foregoing reasons, Merck respectfully requests that the Court either: (1) deny plaintiffs' request to bar defendants from having contacts with plaintiffs' physicians or healthcare providers; or (2) prohibit *all* counsel (or any persons working at their direction) from having informal, *ex parte* contact with plaintiffs' healthcare providers unless they first provide notice and an opportunity to be present to counsel for all opposing parties. Merck suggests that the Court ask Liaison Counsel to develop an Order that would so provide and set forth mutually agreeable notice protocols.

Respectfully submitted,

Phil Wittmann

Phillip A. Wittmann, 13625
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Defendant Merck's Submission Regarding Communications With Plaintiffs' Healthcare Providers has been served upon Plaintiffs' Liaison counsel of record and all defense counsel of record by electronic transmission, this 5th day of May, 2005.

_____
Phil Wittmann

771386v.1

SEE RECORD FOR

EXHIBITS

OR

ATTACHMENTS

NOT SCANNED