COPY IN CHAMBERS

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2005 MAY 24  AM 7: 49
LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | Section L |
| | * | |
| | * | Judge Fallon |
| **THIS DOCUMENT RELATES TO ALL CASES** | * | Mag. Judge Knowles |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' REPLY TO DEFENDANT MERCK'S "SUPPLEMENTAL SUBMISSION" REGARDING EX PARTE CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS

### I.  INTRODUCTION

Defendant's "Supplemental Submission Regarding Communications With Plaintiffs' Healcare Providers" demands a brief reply.  In short, Merck glosses over the dire manageability problems that would attend any decision to permit defense contact with treating physicians.  Merck's attempt to bar all contact with treating physicians is based on scant and easily distinguishable authority.  And Merck's criticism of Plaintiffs' counsel with respect to the *Smith v. Home Products* case is unfounded.

### II.  ARGUMENT

#### A.  Merck Glosses Over Manageability Problems.

Defendant suggests on the one hand that this Court must apply *Erie*, (Def. Supp. Submission at 2), while on the other hand recognizing that "[t]he law regarding ex parte contacts is confused." (Def. Initial Submission at 5.)  Applying the laws of the 50 states in this action would indeed be confusing and wasteful (assuming it would even be possible).



Plaintiffs said as much in their initial brief. (Pltfs. Initial Brief at 4.) Yet Merck suggests that it "should be permitted to have equal access to plaintiffs' healthcare providers . . . ." (Def. Initial Submission at 9.) In fact, under the *Erie* approach Merck advocates, it would be barred access altogether in many instances and its access would be require extensive court supervision in others, giving rise to the very manageability problems Merck raised in the first place.[1] Perhaps recognizing the hopelessness of this task, Merck takes a quantum leap to the opposite extreme and suggests that if it may not have contact with treating physicians, then no one should, including the patients' attorneys.

### B. Forbidding All Contacts With Treating Physicians is an Unprecedented Request for an Aberrant Ruling.

Merck's proposal to bar contact between Plaintiffs' counsel and Plaintiffs' treating physicians has no legal foundation. To support its request, Merck cites only three cases. None is apposite, much less controlling.

Merck first cites *Felder v. Wyman*, 139 F.R.D. 85 (D.S.C. 1991), a medical malpractice case predicting the state law of South Carolina. *See id.* at 86-87. Based upon its prediction, the *Felder* court considered and denied plaintiff's motion to prohibit ex parte interviews by

---

[1] Incidentally, Merck has suggested that the Court may simply order Plaintiffs to waive their substantive state rights to confidentiality by the oxymoronic procedure of "compelling" patient "authorizations." (Def. Supp. Submission at 3.) Even assuming the Court had this power, it would not solve the thorny issue of inadvertent disclosure of irrelevant information, which would compromise Plaintiff/patient rights and could subject physicians to liability under state law despite waiver of the privilege. *See, e.g., Givens v. Est. of McElwaney*, 75 S.W.2d 383 (Tenn. 2002); *Brandt v. Med. Defense Assocs.*, 856 S.W.2d 667 (Mo. 1993); *Kitzmiller v. Henning*, 437 S.E.2d 452 (W. Va. 1993).

defense counsel. The *Felder* court *did not hold* that all ex parte contacts were prohibited as Merck suggests by citing the case in support of its attempt to achieve such a ruling here. In short, *Felder* is one of a handful of state law cases permitting unfettered access to treating physicians—the very antithesis of the proposition for which Merck cites the case.[2]

Merck also cites *Bryant v. Hilst*, 136 F.R.D. 487 (D. Kan. 1991). (Def. Initial Submission at 11, 13.) Strikingly similar to *Felder*, the *Bryant* case involved a plaintiff's motion for protective order barring defense contact with plaintiff's treating physicians. *See id.* at 488 (characterizing the issue as whether a plaintiff "may preclude the adverse party from *ex parte* communications with his health care providers . . . ."). Predicting Kansas law, *see id.* at 491, the court held that defense counsel was not barred from ex parte contacts. *See id.* at 489. The *Bryant* court *did not hold* that plaintiffs' counsel was barred from contacting the plaintiff's physicians, or that plaintiff was required to notify the defendant were such an interview to be conducted.

Finally, Merck cites *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126 (D.D.C. 1983). (Def. Initial

---

[2] In fairness, it may be noted that Merck seems to suggest that this Court ultimately permit ex parte contact between Plaintiffs' counsel and Plaintiffs' treating physicians, but only with Merck present. (Def. Initial Submission at 10-11.) Of course, by definition such contacts would not be ex parte. To hold that Merck must be present at any physician interview conducted by Plaintiffs' counsel would be to hold that Plaintiffs' counsel are barred from ex parte contacts. Merck cites no authority for this perverse result; a result that not only would implicate all of the confidentiality issues inherent in deciding whether to permit Merck its own ex parte contacts, but would produce a procedure no more efficient than formal discovery and which would amount to a compelled waiver of confidentiality (see n.1 *supra*). *Felder* neither barred plaintiff's counsel from contacting plaintiff's treating physicians nor required notification to defendant when such contacts were anticipated.

Submission at 6-7, 11, 13.) Just as with *Felder* and *Bryant*, the *Doe* case did not involve a prohibition against plaintiff counsel's contact with plaintiff's physicians, nor did it involve any requirement that plaintiff's counsel notify the defendant in advance of any such contacts. Rather, it involved the dubious procedure of compelling the two plaintiffs to waive their confidentiality rights and permit ex parte interviews by the defendant. *See id.* at 127, 129. The case simply has nothing to do with the proposition for which Merck cites it.

Notably, Merck touts *Doe* as a "leading case," that "has repeatedly been followed." (*Id.* at 6, 7.) Yet Merck cites only three cases that have followed *Doe*. Two of those three cases are *Felder* and *Bryant*, discussed above. The third was an unpublished decision that, according to Merck's own characterization, did nothing more than permit ex parte interviews by defendants. (*Id.* at 7.)

It is true that each of these cases discusses policy reasons why a plaintiff's attorney's unilateral right to contact a plaintiff's treating physician may be a less than ideal situation. But it is critical to recognize that none of these cases reached, or even considered, the result that Merck suggests here—an order banning ex parte contact between Plaintiffs' counsel and their clients' treating physicians while conditioning all physician contact on advance notice to the defendant. In opposition to the three inapposite cases Merck cited is an entire universe of cases yielding up not a single decision to support the outcome Merck seeks here. It is no wonder; would Merck agree to an order requiring that it speak only with its scientists, chemists or its sales representatives with advance notification to and equal access by

Plaintiff's counsel? Of course not. While Merck suggests on the surface that the most equitable outcome would be to permit its attendance at any "ex parte" interview between Plaintiffs' counsel and Plaintiff's treating physicians, the purpose and ultimate effect of its request is to ban all such contacts. It is a literally unprecedented request—Merck cites not a single case supporting this result.

C. Merck's Ad Hominem Attack Regarding the PPA Litigation Highlights the Desperation of Its Position.

Though incidental to the merits of this issue, Plaintiffs' counsel cannot ignore Merck's unfounded accusation that they "mischaracterized" the New Jersey court's holding in the *Smith v. Am. Home Prods. Corp.*, 855 A.2d 608 (Sup. Ct. N.J. 2003). (Def. Supp. Submission at 4.) Plaintiffs stated that the New Jersey court forbid ex parte contacts altogether, citing the "inherent complexity" of the issue. (Pltfs. Initial Brief at 4.) That is precisely what the New Jersey court held and the basis on which it rendered its decision. *See id.* at 627. It is true that the *Smith* court said it *could* take a different tack were it a brand new case, *id.* at 625, but it did not do so. As Plaintiffs' initial brief noted, the *Smith* case "involved only New Jersey law and 300 cases approaching trial. *Id.* at 625. This MDL is national in scope and potentially involves tens of thousands of cases." (Pltfs. Initial Brief at 4-5.) Plaintiffs never argued that this court *could not* "hold extensive hearings," as the New Jersey court said it would be required to do. *See id.* Plaintiffs posited that doing so would be a monumental waste of resources—a contention with which Merck apparently agrees. (Def. Initial Submission at 9.)

## II. CONCLUSION.

Merck recognizes that applying the laws of 50 states would be unmanageable. The conclusion it draws is that Plaintiffs' should be required to notify Merck if any physician contact is contemplated and to permit Merck's presence at any such interviews. That is tantamount to barring all ex parte contact between Plaintiffs' counsel and Plaintiffs' physicians. Merck has not cited a single case endorsing this result. Nor has Merck cited any case suggesting that a plaintiff's attorney has no right to contact a treating physician without first notifying the defendant and arranging for its presence at the interview. Because the law either forbids Merck's ex parte contacts with these healthcare providers or is so unmanageable as to facilitate such contacts where permissible, Merck seeks to deprive Plaintiffs of their right to all such contacts—a result that enjoys literally no support in the law that Merck relies upon. For the reasons set forth in the Plaintiffs' initial brief, this Court should forbid Defendant's ex parte contacts with Plaintiffs' healthcare providers, and no more.

Respectfully submitted,

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH:  (318) 487-9874<br>FAX:  (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>FAX:  (504) 528-9973 |
| Andy D. Birchfield, Esq. (Co-Lead Counsel)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH:  (850) 435-7000<br>FAX:  (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH:  (215) 772-1000<br>FAX:  (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH:  (215) 592-1500<br>FAX:  (215) 592-4663 | Christopher Seeger, Esq. (Co-Lead Counsel)<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH:  (713) 650-0022<br>FAX:  (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH:  (202) 783-6400<br>FAX:  (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defense Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this _____ day of _____, 2005.