IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAY 26  PM 4: 43

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | Section L |
| | * | |
| | * | Judge Fallon |
| **THIS DOCUMENT RELATES TO ALL CASES** | * | Mag. Judge Knowles |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' STEERING COMMITTEE'S REPORT
TO THE COURT CONCERNING ITS   PROPOSED
MERCK INDIVIDUAL CASE PROFILE FORM**

The Plaintiffs' Steering Committee (PSC) files this report to the Court on the status of the Merck Individual Case Profile Form (also known as "Defense Fact Sheet" or "DFS"). As set forth more fully below, the parties have conceptually agreed to many aspects of the information required in the DFS. However, despite diligent efforts by the parties, several significant areas of inquiry proposed by the PSC to be included in the DFS have not been agreed to by Merck. As a result, the PSC respectfully submits the competing DFS forms exchanged between the parties and identifies the issues to be decided by this Court.[1]

**BACKGROUND**

In this litigation, the PSC has requested that defendant Merck prepare an individual DFS in all cases filed in this Court.   A copy of the PSC's proposed DFS ("PSC proposed DFS") is attached hereto as <u>Exhibit 1</u>. According to the PSC, a DFS should be served by Merck in each case that a

---

[1]  In negotiating the Plaintiffs Fact Sheet, the parties worked primarily from the form document submitted by Merck. Although the PSC has repeatedly urged Merck to work from the form DFS drafted by the PSC, Merck has insisted on exchanging its own form. Therefore, the PSC submits the PSC's own Proposed DFS (Exhibit 1) as well as Merck's competing proposed DFS (Exhibit 2).

Fee
Process
X  Dktd
CtRmDep
Doc. No.

plaintiffs fact sheet is required. The PSC further requests that a DFS be produced ninety (90) days after Merck is served with a plaintiffs fact sheet or at least thirty (30) days before the first case specific deposition is taken, whichever is earlier.

The PSC's purpose in requesting a DFS is to enable plaintiffs with cases in this MDL to 1.) obtain information uniquely in the possession of Merck so that a plaintiff will be as informed as Merck's counsel relevant to case specific depositions; 2.)  allow plaintiff to fully investigate and evaluate the merits of their cases, and 3.) to assist plaintiff in connecting certain relevant information to the facts of plaintiff's case.  In this respect, the DFS serves the very same function for plaintiffs as the Plaintiff's Fact Sheet does for Merck which, according to the current plan, each plaintiff must fill out in every case.

Among the categories of information requested in the PSC version of the DFS (Exhibit 1)  are:

1.) Information on any communications between Merck and plaintiff's prescribing doctors, including "Dear Doctor Letters." See PSC Proposed DFS at § II(A);

2.) Information on individual Merck Sales Representatives ("Detailers") who  had contact with plaintiff's prescribing doctor. See, PSC Proposed DFS at II (B)(1),(2), (3), (4), (5). Among the important information requested is the identity and location of the detailer and his or her custodial files, as well as daily and weekly notes on visits to prescribing doctors.;

3.) Information concerning plaintiff's prescribing doctor's employment as a consultant with Merck and his or her participation in Merck sponsored programs.  See, PSC proposed DFC at III(1),(2),(3);

4.) Information collected/and or used by Merck concerning plaintiff's prescribing doctor's prescribing practices.  See, PSC Proposed DFS at IV

5.) Information collected and analyzed by Merck on the specific plaintiff in the normal course of its business activities. See, PSC Proposed DFS at VI;

6.) Advertising by Merck in plaintiff's and plaintiff's prescribing doctor's area  See, PSC Proposed DFS at VII.

Merck has never disputed the relevance of any of the information sought by the PSC in its version of the DFS. Further, Merck agrees that the information requested by the PSC should be provided before case-specific depositions begin.   Nevertheless, Merck proposes that it should not have to produce the information automatically in a fact sheet form and further claims that it should not have to serve a DFS in all cases in which plaintiff must fill out and serve a "plaintiff's fact sheet."   In this regard, Merck has prepared a competing proposed DFS (Merck Proposed DFS) which the PSC attached hereto as Exhibit 2.

While the PSC and Merck counsel have resolved many of their disputes concerning the content of the DFS, several broad areas of disagreement remain.  These areas are:

A. Merck WILL agree to represent whether it ever actually sent "Dear Doctor Letters" to plaintiff's prescribing doctor and will further state the date *it believes* it was sent. However, it WILL NOT produce the actual Merck record that demonstrates this. Compare PSC Proposed DFS at II(A)(1)(e.) with Merck Proposed DFS at II (1).

B. Merck WILL agree to identify the case specific detailer and state whether he or she is a present or former employee of Merck.  However, Merck's willingness to provide any identifying information concerning the case specific detailer is contingent on the willingness of a plaintiffs' counsel to agree not to contact the detailer in all cases.

C. Merck WILL produce "call notes," "weekly notes" and other reports of contacts between the detailer and prescribing doctors and the sales and marketing division.  However, it WILL NOT produce the case specific detailers "custodial file," including promotional documents and notes in his possession that he or she used to detail plaintiff's prescribing doctor.  See, PSC Proposed DFS at II(B)(2) and (4).   Moreover, Merck has LIMITED that production to a period not beyond six(6) months after plaintiff's claimed Vioxx injury.   See, Merck Proposed DFS at p. 1 Preamble) and Merck Proposed DFS at II(B)(3);

D. Merck WILL provide information in its possession about Vioxx samples packets left with plaintiff's prescribing doctor.  However, Merck WILL NOT provide lot numbers for the packets left. Compare PSC Proposed DFS II(B) (7)(c) with Merck Proposed DFS II (B)(2).

E. Merck WILL NOT produce information on reprimands and disciplinary action taken against the case-specific detailer at issue in the individual case.  See, PSC Proposed DFS

at II(B)(6).

F.  Merck WILL NOT provide access to the existing database in its possession and control which shows the plaintiff's own doctor's prescribing practices of Vioxx and other Cox-2 drugs. <u>See</u>, PSC proposed DFS at IV(1);

G.  Merck WILL identify and produce some documents collected by it and generated by it in the normal course of Merck's business concerning the specific plaintiffs, including any Medwatch and backup medical information it collected on plaintiff. <u>See</u>, Merck proposed DFS at IV (B.). However, it WILL NOT produce any "causation analysis" performed by Merck in the normal course of its business, i.e., for non-litigation purposes. <u>See</u>, PSC Proposed DFS at VI (2).

H.  Merck WILL NOT produce information concerning televison and print advertizing it did for Vioxx where plaintiff or plaintiff's doctors live. See, PSC Proposed DFS at VII.

## ARGUMENT

## I.  PROCEDURAL ISSUES CONCERNING THE MERCK FACT SHEET

There are two general areas of dispute concerning the procedure for serving a DFS. These are whether a DFS is served in every case and the time frame in which a DFS will be served. Plaintiff addresses each of these in turn.

1.  <u>Merck Should Be Required to Produce a Defense Fact Sheet in Each Case That Plaintiffs must Produce a Plaintiff's Fact Sheet.</u>

As set forth above, the PSC proposes a DFS to enable each plaintiff to evaluate their individual claims, to participate in case specific discovery with the same information available to Merck's attorneys and to "connect up" certain generic evidence to the facts of their case. For this reason, the PSC proposes that a DFS must be produced in each case in which a PFS is served.

In contrast, while Merck requests that a plaintiffs fact sheet be provided in each and every case for its own purposes, it would limit its own obligations to only a few cases which are actually chosen for trial. <u>See</u>, Merck Proposed DFS at p. 1 (Preamble).

By its nature, discovery is reciprocal. The reasons why Merck would require plaintiff to file a

fact sheet are the very same reasons why the plaintiffs will require a fact sheet from Merck.  In order for plaintiffs to initiate case-specific discovery, offer the Court suggestions on potential trials or connect some generic evidence to the individual case at trial, they must have the ability to conduct a full investigation of the facts–including facts uniquely in defendants possession.  Merck appears to concede this but states that the process is a burdensome one.  Contrary to Merck's position, the PSC would urge that a DFS is more economical and better suited to streamline discovery.  Absent a DFS, plaintiff would, for example, be required to take corporate depositions to obtain basic case-specific information before other case-specific discovery could commence.  The adoption of a universal fact sheet therefore streamlines discovery and decreases costs to both plaintiff and to Merck.  In the end, the PSC simply asks that Merck be required to do precisely what it expects plaintiff's to do.

2.  Merck Should Be Required to Serve a DFS Within 90 Days of Being Served with a PFS, or Within 30 Days of the First Case Specific Deposition, Whichever Is Earlier

The PSC has proposed that the DFS be served in all cases withing 60-90 days of having been served with plaintiff's fact sheet or 30 days before the first case-specific deposition is scheduled, whichever is earlier.  The PCS believes that this provides the best balance between the need for disclosure and the need to conduct discovery expeditiously.

## II. SUBSTANTIVE DISPUTES CONCERNING THE MERCK FACT SHEET.

As set forth above there are eight (8) general substantive areas of dispute concerning the content of the DFS.  While Merck concedes the relevance of these eight areas of inquiry, it still resists their use in a fact sheet.  The PSC will address each of these general areas of inquiry below.

1. Information Concerning the Date "Dear Doctor" Letters Were Actually Sent to Plaintiff's Doctors

In this case, as in all pharmaceutical liability cases, the issue of what information was communicated between the manufacturer and the plaintiff's prescribing doctor and when it was communicated is always a central question. One of the methods that pharmaceutical companies use to communicate with prescribing doctors is the so-called "Dear Doctor" letter. These letters are mass mailings ostensibly sent to thousands of doctors, usually by outside vendors, done at the direction of the drug manufacturer. Unfortunately, discovery in other cases has demonstrated that these letters are sometimes misaddressed or not sent on the date indicated on the letter. Before any doctor is shown a "Dear Doctor letter" at a deposition, plaintiff needs to have proof that one was actually sent to the doctor and the date it was sent. This information is requested in the PSC Proposed PFS at II (A).

Merck does not dispute the relevance of this information and agrees that plaintiff should have it. However, Merck insists that it need not identify the actual evidence that the letters were sent and when they were actually sent. Rather, it says that it can simply state its response to the information requested and that this should be the end of the inquiry. The PSC disagrees and believes that it should see the evidence. The PSC suggests that Merck's offer is akin to the plaintiff offering to "certify" in the Plaintiff's fact sheet that the dates of her Vioxx use in lieu of producing her pharmacy or medical records–a proposition that Merck would surely not accept.

2. Plaintiff Should be Provided With Identifying Information Concerning the Case Specific Sales Representative Without Having to Agree to Not Contacting that Witness.

In Section II (B) of the PSC Proposed PFS, it is requested that Merck produce the identity of the detail person that contacted plaintiff's prescribing doctor, to state the last known address of the

person and to state that person's current relationship to Merck.  Merck agrees to produce the requested information *subject to* a an agreement that plaintiffs will limit their case investigation and "will not contact its former employees."  See, Merck proposed DFS at II(B)(2).  As there are not generally accepted prohibitions against contacting former employees of a defendant and the ability to make such contact is subject to the ethical rules of each individual state, no general discovery prohibition should be placed in the DFS.

3. <u>Plaintiffs Should Be Permitted Access To All Information in The Case Specific Detailer's Custodial File</u>.

In Section II(B) of the PSC's Proposed DFS, Merck is requested to either identify or produce documents in its possession concerning the individual case specific sales representative.  Subject to a time limitation (See below), Merck agrees to produce all of the information (including "call notes," "customer belief notes" and the like) except that it will not produce or identify the sales person's "custodial file."[2]  Among other things that "custodial file," is likely to contain the information actually in that detailer's possession concerning Vioxx and the knowledge base he or she had when discussing Vioxx with the doctors.  The PSC submits that this evidence is directly relevant to case-specific depositions that will be taken in each particular case.

Nor should the plaintiff be limited to a period of " up to six months after the date of injury identified in Plaintiff's Profile Form" as suggested by Merck.  See, Merck's Proposed DFS at p. 1 (preamble)  As Merck is aware, a doctor may be questioned about knowledge he or she may possess that was gained long after the plaintiff's injury.  For example, a doctor may be called upon to explain why he or she continued to prescribe Vioxx until the last day it was on the market in light of certain

---

[2]  Of course, Merck could simply identify the bates range of their document production where that information is kept.

published studies. That is, of course, an inquiry that will require plaintiff to know what that doctor was told by Merck about those studies. Similarly, some doctors may be called upon to render an opinion on causation. Again, all of the information Merck shared (or did not share) with that doctor may be relevant to that inquiry. In short, there is simply no justification for the arbitrary six (6) month limitation proposed by Merck.

4. The Lot Numbers For the Vioxx Samples Should Be Produced.

In Section II (B)(7) of its Proposed DFS, the PSC requests that Merck reveal the lot numbers for any Vioxx samples left with the plaintiff's prescribing doctor. Product identification may be an important issue in cases where the plaintiff was given Vioxx samples. Again, Merck does not dispute the relevance of this information but states that the information is burdensome to collect. To accommodate Merck, the PSC proposed that the information be limited to those cases where plaintiff alleges that they had been given samples. Nevertheless, Merck continues to insist that it will not produce this information even though the information is in its exclusive control.

5. Information Concerning Disciplinary Action Regarding a Detailer

In Section II(B)(6) of its proposed DFS, the PSC requests that Merck state whether the detailer has been "investigated or reprimanded for his/her marketing practices..." Id. Again, this information is directly relevant to the issues in this case as to whether the Merck (through its employees) actively misled doctors concerning the safety and efficacy of Vioxx. The information requested is meant to allow plaintiff access to that kind of information.

6. Plaintiff Should have Access to the Prescribing Practice Data Collected by Merck.

In Section IV of its proposed DFS, the PSC requests information collected by Merck concerning Vioxx (and other COX-2) prescribing patterns of the case-specific doctor. Such information is routinely collected by pharmaceutical companies and is used to detail them, i.e, to get them to

prescribe Vioxx more often.  In litigation, this information is helpful in deposing a doctor about how he or she responded to certain information, i.e.,  marketing information, Dear Doctor Letters, news reports and other significant events.

Again, Merck does not dispute that the data is relevant and does not dispute that it has that information.  Rather, it contends that the information is "proprietary."  In this regard, the PSC notes that this very information has been produced by pharmaceutical companies and has been used in other pharmaceutical cases as it is both relevant and material to the case.. See, e.g., In re: Diet Drug product Liability Litigation, Pretrial Order 1160 (February 25, 2000)[Exhibit 3].[3]  Further, the Court has entered a confidentiality order which should provide comfort to Merck's concerns.

7.  Merck Should Produce all Information Collected on a Plaintiff During Its Normal Course of Business.

In Section VI of its Proposed DFS[4], the PSC requests that Merck disclose medical information that may have been reported to it through it Safety Surveillance Departments and any "causation analysis" performed on this information during the normal course of its business.  Merck agrees to produce this case-specific medical information but excepts any analysis it may have performed on causation.  Plaintiff is unsure of the basis for Merck withholding this information.  However, Merck's non-litigation position concerning the cause of a plaintiff's injury is clearly relevant.

---

[3]  In PTO 1160, the Court refused to order "automatic disclosure" of this information in each case noting that the APOLLO database containing this information had been produced to the PSC.  What the Court did not consider, however, is the burden on plaintiff to "authenticate" and "connect up" the data extracted from the database to the doctor.  PSC here submits that the automatic disclosure serves those interests.

[4]In the version of the DFS that was circulated to Merck and which is attached hereto as exhibit 1, the PSC misnumbered the roman numeral sections and omitted section "V."  PSC will, of course renumber this but did not want to do so since this version was the last version to be circulated to defense counsel.

Page 9 of 11

8.   <u>Merck Should Identify Advertising It Did To Plaintiffs and Their Doctors</u>

Vioxx was one of the most heavily promoted drugs in history.  Its advertising–including its "direct-to-consumer" advertising–permeated the marketplace. The nature and extent of Merck's advertising and its use in plaintiff's area is important to a variety of issues, including the so-called "learned intermediary defense."

For this reason,  Section VII of PSC's proposed  DFS requests information concerning advertising directed to the plaintiff or the plaintiffs doctors and when those ads ran. This information would assist the parties in deposing all witnesses about what they knew and when they knew it. Again, Merck does not dispute plaintiff's need for this information but would suggest that plaintiff need take depositions of its employees to "connect up" the advertising in the individual case.  That would be cumbersome, inefficient and unduly expensive.  Requiring that the information be revealed in the DFS may obviate the need for expensive discovery for both plaintiff and for Merck.

<u><strong>CONCLUSION</strong></u>

The PSC respectfully requests that the Court approve the PSC's version of the DFS attached hereto as Exhibit 1.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH:  (318) 487-9874<br>FAX:  (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>FAX:  (504) 528-9973 |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH:  (850) 435-7000<br>FAX:  (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH:  (215) 772-1000<br>FAX:  (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH:  (215) 592-1500<br>FAX:  (215) 592-4663 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH:  (713) 650-0022<br>FAX:  (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH:  (202) 783-6400<br>FAX:  (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defense Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 26th day of _____May_____, 2005.

**DRAFT 5–May 20, 2005**

**Draft–For Discussion and for Negotiation purposes only**

**In Re: Vioxx Product Liability Litigation**

**MDL No. 1657**

**DEFENDANT MERCK CASE PROFILE FORM**

For each case, Defendant Merck must complete this Case Profile Form.  This Case Profile Form  must be completed and served on all counsel in the action identified in Section I below.  This must be answered and served 60 days after the date that the Plaintiff's Profile Form has been served on Defendant Merck & Co.

You should attach additional sheets of paper if that is necessary to completely answer the following questions.

I.     **Case Information**

This defendant fact sheet pertains to the following case:

Case caption:_____

Civil Action No._____

Court in which action was originally filed:_____

Name and Address of all person(s) who provided information responsive to the questions posed in this fact sheet:

A:     _____
       (Name)

       _____
       (Address)

       _____

II.    **Contacts With Dispensing Health Care Provider**

In Section IV(A.) of Plaintiff's Profile Form, plaintiff identified persons or entities who

**EXHIBIT 1**

prescribed or dispensed Vioxx to plaintiff (hereinafter "Prescribing Health Care Provider").  For each prescribing health care provider identified, please state and, where requested, provide the following:

A.)   Dear Doctor or Dear Healthcare Provider Letters:

      1.   For each "Dear Doctor" or "Dear Healthcare Provider" letter that you contend was *actually sent* to plaintiff's prescribing health care provider, please: a.) identify the letter sent; b.) state the date that each letter was actually sent to plaintiff's dispensing health care provider; c.) state the person to whom each letter was actually sent, d.) state the address where it was sent, e.) identify the database or documents that demonstrate these facts and,  f.)  identify the persons who provided information responsive to this request.

---

*NOTE:  Please attach hereto a copy of each letter allegedly sent to plaintiff's dispensing health care provider.*

B.   OTHER CONTACTS

      1.   For each prescribing health care provider identified, please identify all contacts between Merck sales representatives and that provider please produce the following information:

| Plaintiff's Dispensing Health Care Provider | Identity and last known address and telephone number Merck representative | The current relationship, if any, between Merck and the sales representative | Date(s) of Contact |
|---|---|---|---|
| | | | |

      2.   For each Merck sales representative identified above, please identify or produce his/her custodial file, including and all personal notes, calender entries, computer entries, backgrounder documents, marketing information that is/was in their possession concerning Vioxx or any other pain relief medication.

3.      For each Merck sales representative identified above, please identify and produce any and all call notes, customer belief notes or other documents that reflects or refers to any communications with any of plaintiff's prescribing health care providers.

4.      For each Merck sales representative identified above, please identify and produce documents, including journal articles, informational material or promotional information that the sales representative or detail person distributed to or discussed with plaintiff's prescribing health care providers.

5.      For each sales representative identified above, please identify and produce Vioxx-related weekly notes.

6.      For each sales representative identified above, please state whether he/she is has been investigated or reprimanded for his/her marketing practices by either Merck or some other governmental agency.  If your answer is "yes", please state whether the investigation is complete and the results of the investigation and identify or produce documents which refer to the investigation or reprimand.

7.      For each prescribing health care provider, please state whether Merck or its representatives ever provided him or her (or anyone in their practice) Vioxx samples.  If the answer is "yes," please state:

   A.)   The number or sample packets provided and the dosages provided;
   B)    The dates that they were shipped and/ or provided;
   C.)   The lot numbers for the samples provided on each date identified;

-3-

D.)    The identity of the person or persons who provided the samples.

NOTE:    *Please attach hereto any documentation that refers or related to the information requested above and attach a copy or copies of the packaging for samples that were provided.*

8.    Please identify the person or persons who provided information responsive to Section II or any of its subparts.

_____

## III    Consulting With Plaintiff's Dispensing Health Care Provider

1    In Section IV(A) of Plaintiff's Profile Form, plaintiff identified his/her prescribing health care provider(s)  If you have ever retained any of plaintiff's prescribing health care providers as a "thought leader," a member of Merck's Speaker Program, a Merck Clinical Investigator, or a consultant in any other capacity on the subject of pain medications (including Vioxx, Celebrex, Bextra or any other NSAID) or cardiovascular risk, please state

a.)    The identity of the heath care provider consultant:

_____.

b.)    The dates they were affiliated with Merck:

_____

c.)    The amount of money Merck paid in expenses, honoraria and fees, per calender year.

_____

d.)    Please identify or produce all consulting agreements and contracts.

_____

2.    For each of plaintiff's prescribing healthcare providers identified in section III(A) above, please state whether they were ever invited to attend and/or did in fact attend any Merck sponsored conferences or events.   If your answer is "yes," please state:

-4-

a.)    The identity of the health care provider attendee::

_____.

b.)    The title, location and date of the speaker's program attended:

_____

c.)    The topic of the speaker's program:.

_____

d.)    All speakers at the speaker's Program:

_____

e.)    Please provide or identify the agenda/brochure for the conference or program

_____

3.    Has plaintiff's Prescribing healthcare provider ever contacted you to request information concerning Vioxx, its indications, its effects and/or its risks?

_____           _____
Yes                  No

If your answer is "yes," please identify and attach any document which refers to your communication with plaintiff's Prescribing healthcare provider.

_____

4.    Please identify the person or persons who provided information responsive to Section III or any of its subparts, giving their name, address, telephone number indicating whether said person is currently an employee of Merck and the dates of employment.

_____

## IV    Plaintiff's Prescribing Health Care Provider's Prescribing Practices

In Section IV(A) of plaintiff's fact sheet, plaintiff identified his/her Prescribing health care provider(s). For each listed provider, please state and produce the following:

1.    Do you have or have you had access to any database or information which purports to track any of plaintiff's Prescribing healthcare provider's prescribing

practices with respect to Vioxx, Celebrex, Bextra or any other prescription NSAID (e.g. Voltaren) (including, but not limited to the product(s) prescribed, the number or prescriptions, the number of refills and the time frame when these products were prescribed or (re) filled)

_____    _____
Yes                No

If your answer is "yes," please produce or identify the database or document which captures that information.

_____

**VI**     **Plaintiff's Medical Condition**

1.     Have you been contacted by Plaintiff, any of his/her physicians, or anyone on behalf of plaintiff concerning plaintiff?

_____        _____
Yes                No

 If your answer is "yes", please a.) state the name of the person(s) who contacted you, b.) state the person(s) who were contacted including their name, address and telephone number and, .c.)  produce or identify any and all documents which reflect any communication between any person and you concerning plaintiff.

2.     Please produce a copy of any MedWatch form which refers or relates to plaintiff, including back-up documentation concerning plaintiff and any evaluation you did concerning the plaintiff.

3.     Please identify the person or persons who provided information responsive to Section IV or any of its subparts

_____

**VII.**     **Advertising**

1.     Did you advertise Vioxx in the Media Market that plaintiff lived at the time that he/she took Vioxx?

_____        _____
Yes                No

2.  If your answer to the preceding question is "yes," please identify all such advertising stating the nature of the advertisement (i.e., in magazines, newspapers, television or other media), the identity of the media outlet,  the dates that the advertisements ran, and the cost of the ad campaign

| Identity of the Advertisement and intended media marketplace | Nature of media (print of television) | Identity of the media outlet | Dates that advertisements ran and cost of the campaign |
|---|---|---|---|
|  |  |  |  |

*Please provide or identify true and accurate copies of any advertisement identified above*

3.  Did you advertise Vioxx in the Media Market that plaintiff's prescribing healthcare provider's office was located at the time that plaintiff took Vioxx?

_____          _____
Yes                           No

4.  If your answer to the preceding question is "yes," please identify all such advertising stating the nature of the advertisement (i.e., in magazines, newspapers, television or other media),the identity of the media outlet and  the dates that the advertisements ran.

| Identity of the Advertisement and intended media marketplace | Nature of media (print of television) | Identity of the media outlet | Dates that advertisements ran and cost of the campaign |
|---|---|---|---|
|  |  |  |  |

*Please provide copies of true and accurate copies of any advertisement identified above*

## VIII.  Documents

To the extent you have not already done so, please produce a copy of all documents and things that fall into the categories listed below.  These include documents in the possession of any of your present and former employees, including information

provided to your attorneys:

1.    Any document which relates to or refers to plaintiff.

2.    Any document sent to or received from any of plaintiff's prescribing physicians.

3.    Any document reflecting any actual communication between you and plaintiff's prescribing physician's concerning the risks cardiovascular risks associated with any COX-2 drug

4.    Any document which purports to describe the prescribing practices of any of plaintiff's prescribing physicians.

## **CERTIFICATION**

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge and that I have supplied all requested documents to the extent that such documents are in my possession, custody and control (including the custody and control of my lawyers).

_____     _____     _____
Signature                                        Print name                                        Date

DRAFT

DRAFT - May 20, 2005

Draft-For Discussion and for Negotiation Purposes Only

In Re: VIOXX® Product Liability Litigation MDL No. 1657

**DEFENDANT MERCK'S INDIVIDUAL CASE PROFILE FORM**

Pursuant to the Court's Order of April 28, 2005, Defendant Merck & Co., Inc.("Merck") submits this Individual Case Profile Form Fact Sheet, which will be completed and served on all plaintiffs' counsel of record in the action identified in Section I below 120 days after service of completed Plaintiff's Profile Form or 60 days after entry of an Order of this Court authorizing case-specific discovery in the action identified below, whichever time period is shortest.

The information provided in this Individual Case Profile Form, where identified below, will be limited to the period of time up to six months after the date of injury identified in Plaintiff's Profile Form. Merck's agreement to produce information on this Individual Case Profile Form is further contingent on the agreement by the Plaintiffs' Steering Committee or Plaintiff's counsel of record not to seek duplicative information in discovery and agreement not to contact former Merck employees that might be identified in the Profile Form.

To the extent that Merck produces information or records responsive to the questions or categories listed below in discovery in MDL No. 1657, Merck is not required to re-produce such information in this Individual Case Profile Form, provided that Merck identifies on this form the prior production of the responsive information.

Merck may attach a report or reports to this Individual Case Profile Form to answer the following questions to the extent necessary or applicable.

I.      **Case Information**

This Individual Case Profile Form pertains to the following case:

Case caption: _____

Civil Action No. _____

Court in which action was originally filed: _____

A.      Name and Address of all person(s) who provided information responsive to the questions posed in this fact sheet:

**EXHIBIT 2**

A.
(Name)
(Address)

B.
(Name)
(Address)

II.    **Contacts With Prescribing Health Care Providers**

In Section IV.A of Plaintiff's Profile Form, Plaintiff identified a person or persons who prescribed VIOXX® to Plaintiff (hereinafter "Prescribing Health Care Provider"). For each Prescribing Health Care Provider so identified, Merck will provide the following information:

A.    Letters To Prescribing Heath Care Provider

1.    Merck will identify any "Dear Doctor" or "Dear Healthcare Provider" letters that Merck contends or believes were actually sent to the Plaintiff's Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form within the relevant time period set forth above. Merck will also identify: (a) the date that each letter was sent to Plaintiff's Prescribing Health Care Provider; and (b) the address where each letter was sent.

In addition, Merck will identify any Professional Information Request letters that Merck contends or believes were actually sent to the Plaintiff's Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form within the relevant time period set forth above. Merck will also identify: (a) the date that each letter was sent to Plaintiff's Prescribing Health Care Provider; and (b) the address where each letter was sent.

2.    Merck will provide a certification that the information listed in Section II.A.1 is true and correct.

B.    Other Contact With Prescribing Heath Care Providers

1.    For each Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form, Merck will provide a report that contains the following information: (a) the identity of any Merck Professional Representative(s) who recorded a detail call(s) regarding VIOXX® on the identified Prescribing Health Care Provider within the relevant time period set forth above; (b) the dates of such detail calls; (c) whether identified

- 2 -

Merck Professional Representative is a current Merck employee; and (d) subject to the agreement set forth above not to contact former employees, the last known address of the identified former Merck Professional Representative(s).

| Identity of Merck Professional Representative | Date of Detail Call(s) | The Employment Status of the Merck Professional Representative | Last Known Address of Former Merck Professional Representative |
|---|---|---|---|
| | | | |

2.  For each Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form, Merck will provide a report that contains the following information:  (a) the identity of the Merck Sales Representative who left VIOXX® samples with the Prescribing Health Care Provider during the relevant time period set forth above; (b) the dates on which VIOXX® samples were left with the Prescribing Health Care Provider; and (c) the number and dosage of VIOXX® samples left with the Prescribing Health Care Provider.

| Identity of Merck Professional Representative | Date of VIOXX® Sample Delivery | VIOXX® Sample Dosage | Number of VIOXX® Samples |
|---|---|---|---|
| | | | |

3.  For each Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form Merck will provide a report or series of reports that contain the following information during the relevant time period set forth above:

•  The text of VIOXX®-related call notes and customer belief notes, if any, recorded by Professional Representatives relating to their VIOXX®-related detail calls with the Prescribing Health Care Provider;

- 3 -

| Identity of Merck Professional Representative | Date of VIOXX® related Call Notes | Text of VIOXX®-related Call Notes |
|---|---|---|
|  |  |  |

- The text of VIOXX® related weekly notes, if any, recorded by Professional Representatives relating to their VIOXX®-related detail calls with the Prescribing Health Care Provider;

| Identity of Merck Professional Representative | Date of VIOXX® related Weekly Notes | Text of VIOXX®-related Weekly Notes |
|---|---|---|
|  |  |  |

- Merck will identify the person or persons who provided information responsive to section II or any of its subparts.

III.  **Consulting With Plaintiff's Prescribing Health Care Provider**

1.   In Section IV(A) of Plaintiff's Profile Form, plaintiff identified his/her Prescribing Health Care Provider(s).  To the extent that Merck has records Merck will identify:  (a) whether the Prescribing Health Care Provider(s) ever acted as a consultant for VIOXX® or a clinical investigator for a clinical trial on VIOXX®, (b) the date that the Prescribing Health Care Provider began acting in the applicable role; and (c) the compensation paid by Merck to the Prescribing Health Care Provider for acting as a consultant for VIOXX® or a clinical investigator for clinical trial on VIOXX®. To the extent that Merck has such records, Merck will also provide a copy of any contract and/or consulting agreement between the Prescribing Health Care Provider(s) and Merck.

| Identity of Plaintiff's Prescribing Health Care Provider who Acted as a Consultant or Clinical Investigator for Merck | Date(s) that the Plaintiff's Prescribing Health Care Provider Began Acting as a Consultant or Clinical Investigator | Compensation paid by Merck to Prescribing Health Care Provider For Serving as a Consultant or Clinical Investigator |
|---|---|---|
|  |  |  |

2.  In Section IV.A of Plaintiff's Profile Form, Plaintiff identified his/her Prescribing Health Care Provider(s).  If Merck has a record of the Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form participating in a speaker program with regard to VIOXX®, osteoarthritis, pain or any other topic related to VIOXX® or NSAIDs, Merck will provide the following information:

| The Name of the Speaker | The Date of the Program | The Location of the Program | The Topic of the Program | The Honorarium Paid to the Speaker |
|---|---|---|---|---|
|  |  |  |  |  |

- Additionally, Merck will identify the names of the health care providers and Merck employees of whom Merck has a record of attending the program.

3.  In Section IV.A of Plaintiff's fact sheet, Plaintiff identified his/her Prescribing Health Care Provider(s).  If Merck has a record of Plaintiff's Prescribing Health Care Provider identified in Section IV.A of Plaintiff's Profile Form ever attending a VIOXX®-related program, Merck will provide the following information:

| The Name of the Speaker | The Date of the Program | The Location of the Program | The Topic of the Program | The Honorarium Paid to the Speaker |
|---|---|---|---|---|
|  |  |  |  |  |

- Additionally, Merck will identify the names of the Health Care Providers and Merck employees of whom Merck has a record of attending the program.

4.  To the extent that Merck has records, Merck will provide a copy of any contracts and/or consulting agreements between the Prescribing Health Care Provider(s) identified in Section III above and Merck.

5.  Merck will provide copies of any documents relating to any specific requests to Merck's National Service Center from the Prescribing Health Care Provider regarding VIOXX® and Merck's response thereto.

- 5 -

IV.    **Contacts With Merck Regarding Plaintiff**

      A.    To the extent that Merck has any records of Plaintiff contacting Merck regarding VIOXX, Merck will provide a copy of such records.

      B.    To the extent that Merck can identify Plaintiff as the subject an Adverse Event report for VIOXX, Merck will provide solely to Plaintiffs' counsel of record a copy of the Adverse Event report and associated WAES files that relate to Plaintiff.  Consistent with FDA regulations, Merck's production of this information will not disclose the identity of the voluntary reporter.  Moreover, Merck will not produce any other Adverse Event information that relates to any individual other than Plaintiff.

I verify under oath that the above responses are true and correct to the best of my knowledge.

Dated                                         Name of Merck Employee Completing Form

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/<br>FENFLURAMINE/DEXFENFLURAMINE)<br><br>PRODUCTS LIABILITY LITIGATION | MDL 1203<br>This Order Applies to<br>all Cases |

| | |
|---|---|
| EILEEN S. COLLINS and<br>WILLIAM COLLINS<br><br>       Plaintiffs,<br><br>   v.<br><br>AMERICAN HOME PRODUCTS<br>CORPORATION, et al.<br><br>       Defendants. | Civil Action No.:<br>98-20299 (E.D. Pa) |

PRETRIAL ORDER NO. _1166_

This matter comes before the Court on _2/25/00_.

    The Plaintiff's Management Committee ("PMC") has moved in this Court for an Order

directing defendant American Home Products, including its related entities ("AHP"), automatically to

disclose certain case-specific information regarding AHP contacts or communications with individual

plaintiffs' prescribing or treating physicians as well as other specific information.   AHP has

responded to the PMC's motion and described the accessibility of some of the requested information

**EXHIBIT 3**

and has opposed the PMC's request for automatic disclosure of case-specific information. AHP has also asserted that it is precluded by Food and Drug Administration ("FDA") regulation from producing certain other information requested by the PMC.

This Order applies to documents previously produced or that are to be produced in the future by AHP as part of the general document production it has made and is making in this MDL litigation. Those documents were produced by AHP in redacted form in accordance with AHP's position that such redaction is required by FDA regulations.

This Order does not require the production or identification of any document withheld under the attorney client or attorney work product privilege, or other applicable privilege or immunity.

Having considered the PMC's application and motion, AHP's reply and opposition, the arguments of counsel and the recommendations of the Special Master, it is this __ day of _____ _____ ordered that the PMC's motion is GRANTED in part and DENIED in part as follows:

(A)     Communications between AHP and Plaintiffs' Treating and Prescribing Physicians
and ADE Records

The PMC has sought to compel AHP automatically to disclose all AHP communications concerning the individual plaintiffs[1] and which relate to their use of Pondimin (fenfluramine) or Redux (dexfenfluramine) without a request from any specific plaintiff. The communications sought also include communications between AHP and plaintiff's treating or prescribing physicians concerning the plaintiff, the drugs Pondimin or Redux, or Adverse Drug Events ("ADE's") related to these drugs.

---

[1] As used in this Order, the term "plaintiff" refers to the person who ingested Pondimin and/or Redux and who is alleged to have been injured as a result thereof.

WASH1:241519:3.2/14/00
7736-9

AHP opposes automatic disclosure of this information and further argues that FDA regulations prohibit the identification of ADE's related to persons other than plaintiff if disclosure would tend to identify the voluntary reporter or the subject of the report. See 21 CFR § 20.63(f).

The PMC's motion is GRANTED in part and DENIED in part as follows:

(1)     Except for ADE records which are addressed in §§ A(3) or A(4) below, and records addressed in §§ (B), (C) or (D) herein, AHP shall, upon request of counsel for a particular plaintiff, identify or disclose to that counsel, all documents in the MADIRA database which reflect communications regarding Pondimin or Redux between AHP and prescribing physicians identified in that plaintiff's fact sheet at section VI (A) and which do not contain any information that would identify the physician as a voluntary reporter of an adverse event.  This disclosure may be made by reference to specific production numbers in AHP's document production.  Counsel for a particular plaintiff may make such request by interrogatory as follows:

> Please identify or produce each communication covered by PTO_____  (A)(1) between AHP and the prescribing physicians identified in Section VI(A) of the Plaintiff's Fact Sheet in this action.

(2)     Except for ADE records which are addressed in § A(3) and § A(4) below and records addressed in §§ (B), (C) or (D) herein, AHP shall, upon request of counsel for a particular plaintiff, identify or disclose to that counsel all documents in the MADIRA database which reflect communications regarding Pondimin and Redux between AHP and any physician identified in plaintiff's fact sheet at Section VII (A3)  as having advised plaintiff with respect to whether plaintiff's condition is related to diet drugs and/or any physician identified in plaintiff's fact sheet at Section V (R) as a treating physician and which do not contain any information that would identify the physician as a voluntary reporter of an adverse event.  This disclosure may be made by reference to

- 3 -

specific production numbers in AHP's document production. Counsel for a particular plaintiff may make such request by interrogatory as follows:

> Please identify or produce each communication covered by PTO_____ (A)(2) between AHP and the physicians identified in Section VII (A3) of the Plaintiff's Fact Sheet in this action.

> Please identify or produce each communication covered by PTO _____(A)(2) between AHP and the following physicians identified in Section V (R) of the Plaintiff's Fact Sheet in this action. Names:_____.

(3)    AHP shall, upon request of counsel for a particular plaintiff, identify or disclose to that counsel any Pondimin or Redux ADE report (including the accompanying ADE file maintained by Wyeth-Ayerst Global Safety, Surveillance and Epidemiology) relating to that plaintiff. See 21 CFR § 20.63(f)(1)(iii). This disclosure may be made with reference to specific production numbers in AHP's document production. Counsel for a particular plaintiff may make such interrogatory as follows

> Please identify or produce any Pondimin or Redux ADE report regarding plaintiff _ _____, including the accompanying ADE file maintained by Wyeth-Ayerst Global Safety, Surveillance and Epidemiology.

(4)    AHP has previously produced and continues to produce Pondimin and Redux ADE reports in the general document production it has made and is making in this case. Produced Pondimin and Redux ADE reports are redacted by AHP to eliminate any patient and reporter identifying information. AHP shall not be required to identify which Pondimin or Redux ADE report (including the accompanying ADE file maintained by Wyeth-Ayerst Global Safety, Surveillance and Epidemiology) made by a Plaintiff's prescribing or treating physician relating to any person other than the Plaintiff, even if the identity of the subject is redacted, as doing so might tend to identify the voluntary reporter which AHP believes would violate FDA regulatory requirements.   With respect to

- 4 -

Pondimin or Redux ADE reports made by a Plaintiff's prescribing or treating physician relating to persons other than the Plaintiff, AHP, its agents and/or its counsel, are precluded in any MDL action, other than an action involving that other person, from using such redacted information.

(5) All disclosures which are required to be made pursuant to §1, §2, or §3 above shall be made within 30 days of receipt of plaintiff's interrogatory.

(B)   **Detailing Information**

The PMC has sought to compel AHP automatically to disclose communications between its Redux sales force and the physician who prescribed or dispensed Pondimin or Redux to the Plaintiff. AHP objects to automatically disclosing this information, referred to herein as "detailing information," stating that detailing information is contained primarily in the AHP-R and AHP-SC series of documents which have been produced to the PMC.

The PMC's motion is GRANTED in part and DENIED in part as follows:

(1) AHP shall not be required automatically to disclose detailing information as requested by PMC.

(2) Counsel for a particular plaintiff may elect to propound individual interrogatories to AHP to obtain detailing information. The interrogatories that shall be permitted are as follows:

1.   Please identify each AHP Redux sales representative (stating the name of persons employed by AHP, and, if not employed by AHP, their last known address and telephone number) who communicated with any of the following physicians who are alleged to have prescribed or dispensed Pondimin or Redux to the plaintiff: [LIST PRESCRIBING PHYSICIANS]

2.   If any physician who prescribed or dispensed Pondimin or Redux to plaintiff ("prescribing physician") was contacted by an AHP Redux sales representative, please identify by production number range in the AHP-R series or in any other AHP production, the series of documents that contains files maintained by that sales representative(s). In addition, please identify by production number range in

WASH1:241519:3:2/14/00
7736-9

the AHP-R series or in any other AHP production, the series of documents that contains files maintained by that sales representative's supervisor.

(3)     Responses to these interrogatories shall be made within 30 days of receipt.

(C)     <u>Dear Health Care Professional Information</u>

The PMC has requested an order compelling AHP automatically to disclose whether it sent one or more of the following "Dear Health Care Professional" letters regarding Redux and/or Pondimin to plaintiffs' prescribing physicians:  April 30, 1996; August 22, 1996; December, 1996; January, 1997; July 24, 1997; September 15, 1997.   These are the six "Dear Health Care Professional" letters sent by AHP to physicians regarding Redux and/or Pondimin.  (AHP sent additional similar letters to pharmacists.)  AHP opposes automatic disclosure contending that it has produced the requested information to the PMC in two formats.  Specifically, AHP contends that it has provided the "Dear Health Care Professional" letter list (the AHP-DL series of documents) which disclose the names of those healthcare providers to whom such letters were sent.  AHP has advised that these listings are organized by letter date and by zipcode which can be visually searched for the physician's name.   In addition, AHP has produced to the PMC a database from its vendor, St. John's Company, which can be electronically searched to determine whether such letters were sent. This information can be obtained from the PMC upon request, in writing, by counsel for a particular plaintiff.

For the reasons stated by AHP, the PMC's request for automatic disclosure of information showing whether "Dear Health Care Professional" letters were sent to prescribing physicians is DENIED.

- 6 -

**(D)      Prescribing Physicians' Pondimin and Redux Prescription History**

The PMC also requests that AHP automatically disclose the prescription history for a plaintiff's prescribing physicians.  AHP opposes this request on the grounds that it has produced to the PMC the APOLLO database.  This database provides October 1995 (Month 1) to September 1997 (Month 24) prescribing information which is sorted by physician name for Redux, Pondimin, Adipex, Fastin, Ionamin, and Phentermine.  For each month, the database reports total prescriptions and "new" prescriptions.  This information may be obtained from the PMC upon request, in writing, by counsel for a particular plaintiff.

For the reasons stated by AHP, the PMC's request for automatic disclosure of prescribing history of a plaintiff's prescribing physician is DENIED.

SO ORDERED

Louis C. Bechtle
Chief Judge Emeritus

Date: 2/25/00

WASH1:241519:3:2/14/00
7736-9