UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES: | | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

***********************************************************************

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING EX PARTE COMMUNICATION WITH TREATING PHYSICIANS

MAY IT PLEASE THE COURT:

There is absolutely no legal support for the defendant's request that this Court abolish plaintiff counsels' longstanding right to conduct client-authorized ex parte communications with that client's treating physician.

Your Honor is allowing the parties to file an additional supplemental memorandum regarding the issue of ex parte communications with treating physicians. This issue originally arose in the context of plaintiffs' request that the defendant be prohibited from engaging in ex parte communications with plaintiffs' treating physicians. The defendant, in response, has taken the unprecedented and unsupported position that the plaintiffs should be prohibited from engaging in ex parte communications with their client's treating physicians. Defendant cites no legal authority for this unorthodox proposition.

This memorandum will address, and plaintiffs respectfully submit that, a physician's potential tort liability is of no moment and cannot act to deny plaintiff' counsels' clear and longstanding right to ex parte communications with their clients' treating physicians.

__ Fee_____
__ Process_____
_X_ Dktd_____
_/_ CtRmDep_____
__ Doc. No._____

## BACKGROUND

The physician-patient privilege is one that is well-recognized and time-honored in this society. It is fortified not only by the patient's fundamental right of privacy, but also by the imperative to facilitate physician care in an environment of confidence and trust. The original question before the Court – whether defense counsel is permitted to have ex parte communications with a plaintiff's treating physician – necessarily places at issue the viability of this privilege.

In prior briefs, plaintiffs have set forth the legal and policy grounds for the maintenance and protection of the physician-patient privilege against the encroachment proposed and contemplated by Merck. This supplemental brief will address the special nature of the physician-client privilege and the question of whether the status of a physician as a potential defendant is of any moment in the Court's analysis. Plaintiffs respectfully submit that, if anything, the potential liability of treating physicians in this matter enhances the need to limit Merck's information-gathering activity vis-a-vis these physicians to the formal discovery methods under the Federal Rules of Civil Procedure.

## SCOPE OF PHYSICIANS' POTENTIAL LIABILITY IS NEARLY UNIVERSAL

Potential physician liability in the instant matter is not significantly different from most tort cases generally and pharmaceutical litigation specifically. For example, in Dumas v. State, 2002-0563 (La. 10/15/02), 828 So.2d 530, the Louisiana Supreme Court indicated that a treating physician's fault is subject to quantification in essentially ALL personal injury cases, whether medical malpractice or not.

In the highly-publicized case at bar, it is reasonable to conclude that every physician who has prescribed Vioxx is alert to the issue of potential liability. To the extent that fault is seen as

placing the physician in a position adverse to the plaintiff-patient, it also is fair to assume that each prescribing physician will take any and all appropriate action to protect his/her interests, in response to an invitation to confer with plaintiff's counsel upon the patient's express waiver of the physician-patient privilege.   A number of options – ranging from the physician having counsel present, to a declaration of the plaintiff's intention with regard to potential legal claims against the physician – are available to, and negotiable between, the physician and patient participants in such a conference.  Such arrangements are hardly uncommon.

### THE SPECIAL RELATIONSHIP BETWEEN PLAINTIFFS AND THEIR DOCTORS DOES NOT CONSTITUTE AN "UNFAIR ADVANTAGE"

There is simply no support for the defendants' position that "if they (Merck) are not allowed to communicate ex parte with plaintiffs' treating physicians, then no one should be able to".

Judge Davis, echoing the Minnesota Supreme Court, dismissed the almost identical argument made by Bayer in the Baycol MDL litigation.

> "Defendants only argument is that Plaintiffs will gain a tactical advantage, and the Court agrees with the Minnesota Supreme Court that this is not a proper reason to erode the physician-patient privilege."   In re BAYCOL PRODUCTS LITIGATION, No. MDL 1431, 219 F.R.D. 468.

More recently,  in the Vioxx litigation, Superior Court of New Jersey, Judge Higbee, in the same opinion (Attached hereto as Exhibit B) wherein she denied defense requests for ex parte communications with plaintiffs' treating physicians on manageability grounds, had this to say about the identical argument made by Merck:

> "The defendant argues that in the interest of fairness if the defendant's counsel can't do an ex parte interview with plaintiffs' doctors, then plaintiffs' counsel should not be able to speak to their clients' own doctors either.  There is no decision known to this court where a Judge has restrained counsel from talking to their client's own doctors."  Exhibit B, p. 8.

It is important to recognize that in the historic and traditional interactions between physicians and attorneys, <u>both</u> professions have recognized that express waiver of the physician-patient privilege is an absolute prerequisite to discussions between an attorney and a physician. An illustrative example appears in the "Interprofessional Code for Physicians and Attorneys," (attached hereto as Exhibit A) published by the joint membership of the Louisiana State Medical Society and the Louisiana State Bar Association.  Specifically under the heading which covers "Physicians/Attorney Conferences," the legal and medical professionals who co-authored this code saw fit to state the following:

> The attorney requesting the conference <u>must</u> provide the physician
> with a written authorization from the patient/client in order to
> obviate the physician's concerns about unauthorized disclosures.
> [Emphasis added].  Exhibit A.

These physician "concerns" simply cannot be obviated without a written authorization to waive the physician-patient privilege; and these same concerns, historically recognized as threshold concerns by both medical and legal professionals, lie at the heart of the present dispute.

With appropriate actions, negotiations and safeguards available to the physician to address the issue of potential fault, there is no need  to deviate from the well-settled principle that the physician-patient privilege is of primary importance in any disclosure or discussion involving an attorney and a plaintiff's treating physician.   If the plaintiff's attorney produces the appropriate authorization waiving the privilege, communication with a treating physician must be allowed to proceed, with the physician having secured whatever protections he or she might feel appropriate as a potential defendant.  But absent such an authorization waiving the privilege, it is imperative that a defendant such as Merck not be allowed to obtain the disclosure of privileged information, particularly if this occurs in the context of a potential allocation of fault

between Merck and the physician (either as a party or a non party in jurisdictions where fault can be allocated to a non party).

### PLAINTIFFS (AND THEREFORE THEIR ATTORNEYS) ENJOY A SPECIAL RELATIONSHIP WITH TREATING PHYSICIANS

HIPAA establishes that the patient is the gatekeeper of his or her own health information. 45 C.F.R. § 164.508(a)(1). Plaintiffs, therefore, have the right to authorize their attorneys and doctors to speak privately, and to make such communication as restrictive or expansive as they desire. Plaintiffs' attorneys have formal, regulated fiduciary and professional relationships with the plaintiffs when acting on their behalf. This is contrasted with defense counsel acting directly in opposition to plaintiff in the litigation.

Plaintiffs have an unfettered right of access to their own doctors and denying that same access to the other side is exactly the situation anticipated and intended by HIPAA. One of the stated purposes is "[to] protect and enhance the rights of consumers by providing them access to their health information and controlling the inappropriate use of that information." 65 Fed. Reg. at 82463.

### DOCTORS'S RIGHTS ARE PROTECTED BY THE ETHICS RULES

There is always a risk in any civil investigation that discussions with witnesses and potential witnesses might lead to that witness or potential witness becoming party to the suit.

In addition to the doctor's ability to engage counsel at any stage or employ the safeguards previously noted, the rules of ethics also intervene to protect the treating doctors' rights. Doctors are a sophisticated group of citizens. They have education and resources available far above the average citizen. Each doctor will make a choice as to whether or not he or she acquires counsel to assist in discovery (as was done somewhat commonly in the PPA litigation).

Therefore, there will be two classes of doctors who are not parties to the suit: those unrepresented by counsel (the vast majority), and those who will retain counsel to assist them in their testimony. The Model Rules, widely adopted by most bars, operate to protect both classes of treating physicians. If the doctor is unrepresented, Rule 4.3 (In addition to Rule 4.1 requiring truthfulness in dealing with third persons) will directly affect the conduct of plaintiffs' counsel during the course of any ex parte communication. It requires that the lawyer not state or imply that he is not disinterested. Further, if the lawyer knows or reasonably believes that the interests of the third person is or has a reasonable possibility of being in conflict with the client's interest (i.e. the doctor admits he knew something was wrong with the drug but prescribed it anyway), the only advice the lawyer can give is to seek competent legal counsel.

If the treating physician is represented for purposes of discovery, then all communications with said physician will be required to have the advance notification and consent of the retained counsel, and the doctor will have the benefit of that counsel.

Therefore, the ethical rules will operate to serve as additional protection of the rights of any and all physicians with which plaintiffs' counsel conduct ex parte communications.

## CONCLUSION

A doctor's potential liability is of no moment and does not support or otherwise justify the radical and heretofore unprecedented abolition of plaintiff counsel's right to conduct client-authorized ex parte communications with his or her client's doctor. The defendant's suggestion to the contrary enjoys absolutely no legal support. Instead, as noted herein, when the issue has surfaced, either directly or indirectly, experienced mass tort jurists have been quick to decline the defendant's unorthodox invitation to prohibit a fundamental and critical right.

Finally, any ruling either prohibiting plaintiffs' counsel and/or allowing defense counsel to conduct ex parte communications with treating physicians will have the unfortunate (but understandable) effect of discouraging participation in this MDL by plaintiffs' counsel in the overwhelming majority of states where under state law a defendant is strictly prohibited from having that ex parte communication and where, on the other hand, the plaintiffs have the universally recognized right to do so.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. **(Co-Lead Counsel)** |

| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 27 day of May , 2005.

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED