UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : 

**THIS DOCUMENT RELATES TO ALL CASES**

**ORDER & REASONS**

Before the Court are Plaintiffs' and Defendants' memoranda regarding ex parte communications with Plaintiffs' healthcare providers. For the following reasons, the Court holds that if either side wishes to interview a Plaintiff's prescribing physician, that party must first serve opposing counsel with five days notice of such interview in order to give opposing counsel the opportunity to be present and participate in the interview.

**I. BACKGROUND**

This matter arises from damages Plaintiffs claim to have suffered from the manufacture, sale, distribution and/or use of the medication known generically as Vioxx, produced by Defendant Merck & Co., Inc. ("Merck") to treat arthritis and acute pain. The Plaintiffs have filed individual and class action suits in federal courts throughout the nation, alleging certain actual and potential risks associated with Vioxx. The Plaintiffs contend that Vioxx caused death and other injuries to themselves or their family members who took Vioxx.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims

involved common questions of fact and that centralization under 28 U.S.C. §1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  Therefore, on February 16, 2005, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Vioxx claims into a single multidistrict proceeding ("MDL 1657").  MDL 1657 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases.  Subsequent Vioxx cases filed in federal court have been transferred to this district court to become part of MDL 1657 as "tag along" cases.

## II. EX PARTE COMMUNICATIONS WITH PLAINTIFFS' HEALTHCARE PROVIDERS

At the April 28, 2005 monthly pretrial conference, Plaintiffs' Liaison Counsel informed the Court of the Plaintiffs' Steering Committee's request that no interviews, discussions or communications with a plaintiff's healthcare provider take place with Defendants directly or indirectly through their representatives, employees, agents, or counsel without motions being filed with the Court of by consent of the plaintiff.  The Court allowed the parties to file briefs on the issue.  In the Plaintiffs' briefs, the Plaintiffs argue that the physician-patient privilege is well-recognized and time-honored in our society.  The Plaintiffs point to several issues regarding a patient's fundamental right of privacy and the need to facilitate an environment of trust and confidence between a patient and his or her healthcare provider as reasons to prohibit defense counsels' ex parte communications with a plaintiff's treating physician.  Among those arguments, the Plaintiffs claim that ex parte interview would violate the Health Insurance Portability and Accessibility Act of 1996, 42 U.S.C. §1320d, et seq. ("HIPAA"), which is

intended to "ensure the integrity and confidentiality of [patients'] information" and to protect against "unauthorized uses or disclosures of the information." 42 U.S.C. §1320d-2(d)(2)(A) & (B)(ii).  Furthermore, The Plaintiffs' express a concern that defense counsel may influence the doctors' view of the litigation if Defendants are afforded unfettered ex parte communication with Plaintiffs' healthcare providers.

Merck's briefs argue that many states do not recognize the physician-patient privilege or find a waiver of that privilege if the patient files a personal injury suit.  Merck further argues that ex parte interviews with physicians are not prohibited by HIPAA so long as those interviews are undertaken in compliance with its requirements.  Merck points to the fact that the Plaintiffs' healthcare providers are named defendants or potential defendants in the MDL.  Therefore, Merck explains that, like the Plaintiffs, the Defendants worry that if the opposing party is afforded unfettered ex parte access to the Plaintiffs's physicians, opposing counsel may improperly influence the doctors.  Merck posits that the most equitable solution is for the Court to require the presence of all counsel for any party's communications with treating physicians and other healthcare providers.  Plaintiffs, however, feel that there is no legal support for Merck's request that the Court abolish the longstanding right of plaintiff's counsel to conduct client-authorized ex parte communications with that client's treating physician.

## III.  LAW AND ANALYSIS

There are several reasons for courts to prohibit or place constraints on a defendant's ex parte interviews of a plaintiff's physician.  Such ex parte communications raise issues concerning privacy, HIPAA, and physician-patient privilege.  Several courts have expressed

concern that ex parte interviews of plaintiffs' doctors by defendants' counsel could encourage improper collusion between plaintiffs' doctors and attorneys representing defendants or otherwise undermine the confidential nature of the physician-patient relationship.  *See Manion v. N.P.W. Medical Center of N.E. Pa., Inc.*, 676 F.Supp. 585, 593 (M.D. Pa. 1987); *see also Harlan v. Lewis*, 141 F.R.D. 107, 111 (E.D. Ark. 1992); *see further Cristi v. Moffatt*, 389 S.E 2d. 41, 46 (N.C. 1990).  Furthermore, courts have interpreted HIPAA as prohibiting ex parte interviews of a plaintiff's treating physician by defense counsel in the absence of strict compliance with HIPAA. *Law v. Zuckerman*, 307 F.Supp. 2d 705, 707 (D. Md. 2004).  All of these concerns have led judges, such as the presiding judge in the currently-pending New Jersey Vioxx litigation, to prohibit defendant's ex parte communications with the plaintiffs' treating physicians.  *In re Vioxx*, Memorandum of Decision on Plaintiffs' Motion to Prohibit Ex Parte Interviews, Nov. 17, 2004).

     This Court recognizes the impropriety of allowing Merck unfettered access to the Plaintiffs' healthcare providers.  However, in the instant litigation, the same concerns that warrant restricting the Merck's ex parte interviews with Plaintiff's doctors who have prescribed Vioxx also apply to plaintiff counsels' communications with those doctors.  The Plaintiff's prescribing physicians in MDL 1657 are potential defendants in the MDL, if they are not named defendants already.  Furthermore, the prescribing physicians are either potentially or currently subject to indemnity agreements with Merck.  Therefore, the Plaintiffs' prescribing physicians are not merely bystanders to this litigation.  Rather, physicians who have prescribed Vioxx to Plaintiffs in this MDL have actualized or potential interests in this lawsuit.  Therefore, they are just as susceptible to being influenced and colluding with Plaintiffs' counsel as they are to

engaging in improper agreements with Defendants' counsel.  Therefore, this Court finds that permitting unconstrained interviews or prescribing doctors by Plaintiffs' counsel is equally problematic.

The Federal Rules of Civil Procedure give federal courts wide discretion in case management.  Federal courts possess an "'inherent power' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). Given the unique position of the prescribing physicians in this multidistrict litigation, this Court determines that this case would be most efficiently and fairly managed by disallowing unilateral interviews of prescribing physicians by any party.  If either side wishes to interview a Plaintiff's prescribing physician, that party must first serve opposing counsel with five days notice of such interview in order to give opposing counsel the opportunity to be present and participate in the interview.  This procedure for communications with prescribing physicians will provide a safeguard against improper influence by any party.  The scope of such interviews will still be subject to limits set forth in HIPAA and any other applicable state or federal law.  In essence, this ruling merely requires both Plaintiffs and Defendants to be given an opportunity to participate in any interview of healthcare providers who have prescribed Vioxx to a plaintiff in this litigation.

**III.  CONCLUSION**

For the reasons set forth above, IT IS ORDERED that any party wishing to interview a Plaintiff's prescribing physician must serve Liaison Counsel for the opposing party with five

days notice of such interview.  Opposing counsel will then be permitted to attend and participate in the noticed interview.  If opposing counsel decides not to participate in the interview, the noticing party may conduct said interview without opposing counsel's presence.

New Orleans, Louisiana, this __6th__ day of __June__, 2005.

_____
UNITED STATES DISTRICT JUDGE