

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 29  PM 2: 58

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>This document relates to<br>All Cases | MDL Docket No. 1657<br>SECTION L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

### PSC'S PETITION FOR AN ORDER SECURING AN EQUITABLE ALLOCATION OF COUNSEL FEES AND COSTS FOR MDL ADMINISTRATION AND COMMON BENEFIT WORK

The Plaintiffs' Steering Committee ("PSC") respectfully moves this Court for an Order in the form appended hereto, securing an equitable allocation of counsel fees and costs for MDL administration and common benefit work.

In support of this Petition, the PSC relies upon the attached Memorandum of Law and exhibits thereto.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

By: _____
Russ M. Herman (Bar No.6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*HERMAN, HERMAN, KATZ & COTLAR, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
504-581-4892 (telephone)
504-561-6024 (telecopier)
PLAINTIFFS' LIAISON COUNSEL

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Suite 2800
New Orleans, LA 70163-2800
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)
Christopher A. Seeger, Esquire
SEEGER WEISS

One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
Fred S. Longer, Esquire (on the brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337) 494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PSC's Petition For an Order Securing an Equitable Allocation of Counsel Fees and Costs for MDL Administration and Common Benefit Work has been served on Defendant's Liaison Counsel, by hand delivery and e-mail and by e-service to all parties, on this 29th day of June, 2005.

**Leonard A. Davis**

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1657 SECTION L |
| This document relates to All Cases | JUDGE FALLON |
| | MAGISTRATE JUDGE KNOWLES |

### MEMORANDUM OF LAW IN SUPPORT OF THE PSC'S PETITION FOR AN ORDER SECURING AN EQUITABLE ALLOCATION OF COUNSEL FEES AND COSTS FOR MDL ADMINISTRATION AND COMMON BENEFIT WORK

I.    PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

To date, this burgeoning multidistrict litigation involves hundreds of individual lawsuits brought in over 40 different federal district courts by men and women who were injured by the prescription drug Rofecoxib, more commonly known by its brand name Vioxx. Vioxx has been associated with strokes, heart attacks, cardiovascular events and other serious injuries, including deaths. Vioxx is a prescription drug designed for the treatment of osteoarthritis and acute pain management. It was marketed as having fewer gastrointestinal problems compared with non-selective non-steroid anti-inflammatory drugs ("NSAIDs").

Vioxx was first approved for marketing in the United States in May 1999. However, since the drug's approval, by one account, it has been associated with at least 38,000 deaths. The serious health risks posed by Vioxx were plainly exposed during a long delayed clinical study, whose intermediate results confirmed that Vioxx posed a significantly increased risk of cardiovascular

4

events. Unable to evade the data, Merck withdrew the drug from the marketplace effective September 30, 2004. Already the subject of litigation in several jurisdictions, the expansion of filing of numerous lawsuits against Merck followed.

On February 16, 2005, the Judicial Panel for Multidistrict Litigation entered an Order transferring all federal cases involving such claims to the United States District Court for the Eastern District of Louisiana for coordinated discovery and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

On April 8, 2005, this Court, as the transferee court, entered Pretrial Order No. 6, which created the Plaintiffs' Steering Committee ("PSC") consisting of 12 persons.[1] Andy Birchfield and Christopher Seeger were selected as co-lead counsel, along with Russ Herman serving as Plaintiffs' Liaison Counsel, to comprise the PSC Executive Committee. *See* Pretrial Order No. 6 at 2. The Court set forth certain duties and responsibilities of the PSC, including the preparation and completion of pleadings; the filing of motions; responding to motions; discovery; pretrial preparation; settlement; docket management; the establishment and administration of a document depository; communication with individual plaintiffs and their counsel; liaison with defendants; and court appearances. PTO 6 at 2-4.

In contemplation of the fact that the PSC would perform these services on behalf of all plaintiffs in the litigation, the Court provided in Pretrial Order No. 6 a mechanism by which attorneys working for the PSC would report the amount of time expended for such activities, in the

---

[1]      The members of the PSC are: Andy D. Birchfield, Jr., Christopher A. Seeger, Richard J. Arsenault, Elizabeth J. Cabraser, Thomas R. Kline, Arnold Levin, Carlene Rhodes Lewis, Gerald E. Meunier, Troy A. Rafferty, Drew Ranier, Mark P. Robinson, Jr., and Christopher V. Tisi.

expectation of being compensated for their time and reimbursed for expenses incurred on behalf of plaintiffs.

Since the entry of PTO No.6, the PSC has set up the plaintiffs' document depository. From its inception, the PSC has represented the plaintiffs at the Court's status conferences and has begun the arduous task of managing this prolix litigation.

In the next several months, the PSC plans to complete the review of the multitude of documents produced by the defendants, take the depositions of all the key witnesses including employees and agents of the defendants, third parties, and officials of the United States Food and Drug Administration, with respect to the issues of liability. In addition, the PSC plans to retain leading physicians and scientists with knowledge in fields such as pharmacology, epidemiology, cardiology and the like to provide "generic" expert testimony regarding the causal relationship between exposure to Vioxx and the development of injuries claimed by the plaintiffs which will be preserved in the form of videotaped depositions.

Accordingly, the purpose of this motion is to seek an Order creating a "fund" consisting of the recoveries in the federal court cases and claim payments to plaintiffs in state courts that agree to coordination, from which the PSC and other attorneys performing "common benefit work" for plaintiffs may obtain compensation for the benefits which they confer on plaintiffs,[2] to provide that

---

[2]     It is not intended that the Court's order apply to any global or class action settlement reached in the litigation. In the event there is a recovery in any action certified as a class action under Fed. R. Civ. P. 23, plaintiffs intend to apply for an award of attorneys' fees and costs in accordance with governing law, which does not place a defined limit on the award of fees and costs. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Strong v. Bell South Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.* 487 F.2d 161, 165 (3d Cir. 1973); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 821 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995). This is consistent with established MDL practice. *See In re Propulsid Products Liability Litigation*, MDL No. 1355 (E.D.La.); *In re Rezulin*

the benefits of the PSC arrangement will be available to litigants in other state courts who elect to

avail themselves of the opportunity for state and federal coordination, and to provide a mechanism to

protect against the misappropriation of the work product created by the PSC and coordinating state

counsel.

For the reasons which follow, such relief is appropriate.

II.    ARGUMENT

      A.    Securing an Equitable Allocation of Fees and Costs for the PSC and the
Attorneys it Designates to Administer the MDL Docket and Perform
Common Benefit Work is Necessary and Appropriate at This Time

The common fund doctrine is a principle of equity designed to prevent unjust enrichment by

providing that "a litigant or a lawyer who recovers a common fund for the benefit of persons other

than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*

*Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Sprague v. Ticonic National Bank*, 307 U.S.

161, 166 (1939); *Trustees v. Greenough*, 105 U.S. 527, 534-536 (1881); *In re SmithKline Beckman*

*Corp. Securities Litigation*, 751 F. Supp. 525, 530 (E.D. Pa. 1990).  As the Third Circuit stated in

*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487

F.2d 161, 165 (3d Cir. 1973):

> These equitable powers, may, under the equitable fund doctrine, be
> used to compensate individuals whose actions in commencing,
> pursuing or settling litigation, even if taken solely in their own name
> and for their own interest, benefit a class of persons not participating
> in the litigation.  *See Sprague v. Ticonic National Bank*, 307 U.S.
> 161, 59 S. Ct. 777, 83 L.Ed. 1184 (1939).

---

*Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.); *In re Phenylpropanolamine (PPA) Products
Liability Litigation*, MDL No. 1407 (W.D.Wash.); *In re Diet Drugs Products Liability Litigation*, 1999 WL
124414 (E.D. Pa.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D.Pa.).

\*　　\*　　\*

> The award of fees under the equitable doctrine fund is analogous to
> an action in quantum meruit: the individual seeking compensation
> has, by his actions, benefited another and seeks payment for the value
> of the service performed.

See also *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Strong v.*

*Bell South Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).

In order for the common fund doctrine to apply, the beneficiaries of the fund need not be

members of a class and the benefit need not have been conferred in the context of a class action

because the common fund principle is a long-standing principle of equity which predates modern

class actions. *See Trustees v. Greenough*, 105 U.S. 527 (1881). As the court stated in *Vincent v.*

*Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977):

> The common fund doctrine provides that a private plaintiff, or his
> attorney, whose efforts create, discover, increase or preserve a fund to
> which others also have a claim is entitled to recover from the fund the
> costs of his litigation, including attorneys' fees. The doctrine is
> "employed to realize the broadly defined purpose of recapturing
> unjust enrichment." I Dawson 1597. That is, the doctrine is designed
> to spread litigation costs proportionally among all the beneficiaries
> so that the active beneficiary does not bear the entire burden alone
> and the "stranger" beneficiaries do not receive their benefits at no cost
> to themselves.

*Id.* at 769. *See also In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977)

(court awarded fees to lead counsel by ordering each other attorney representing a plaintiff to pay to

lead counsel part of his fee from his client); *City of Klawock v. Gustafson*, 585 F.2d 428, 431 (9th

Cir. 1978) (court held that attorneys whose litigation efforts benefited their client as well as other

native towns may be entitled to attorneys' fees under the common benefit theory); *In re MGM Grand*

*Hotel Fire Litigation*, 660 F. Supp. 522 (D. Nev. 1987) (court awarded legal committee seven

percent of gross recovery of "global settlement" funds to reasonably compensate committee for professional labors and for bearing considerable long-standing risks).

Apart from application of the common fund doctrine as an equitable principle governing the payment of counsel fees and litigation expenses, it has consistently been recognized that federal courts possess the inherent power to appoint counsel to coordinate and manage complex multiparty litigation and to require that such counsel be paid for discharging these duties out of the proceeds of the litigation generally. *See, e.g., In re Propulsid Products Liability Litigation*, MDL No. 1355, PTO No. 16 (E.D.La. Dec. 26,2001)(set aside of 6% for federal cases and 4% for coordinating state cases); *In re Rezulin Products Liability Litigation*, MDL No. 1348, PTO No. 67 (S.D.N.Y. March 20, 2002)(set aside of 6% for federal cases and 4% for coordinating state cases); *In re Diet Drugs Products Liability Litigation*, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999) (PTO No. 467) (court set aside 9% of any recovery for cases in MDL to create fund for PMC members to be compensated)[3]; *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014, 1996 WL 900349 (PTO 402) (E.D. Pa. June 17, 1996) (parties ordered to sequester 12% of recoveries for fees and 5% of recoveries for costs in order to create fund from which Court-appointed Plaintiffs' Legal Committee could seek reimbursement for the work performed on behalf of all plaintiffs); *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 982 F.2d 603, 606-07 (1st Cir.

---

[3]   PTO No. 467 was later expanded by PTO No. 517 to include litigation in all coordinating states. Both orders were subsequently modified by PTO No. 2628 to reduce the assessment by 1/3 to 6% for federal cases and 4% for coordinating state cases.

1992); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1011-17; *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. at 522, 524-26.

Thus, in mass tort cases involving consolidated MDL proceedings, counsel who have been appointed by the Court to manage the litigation for the benefit of all plaintiffs should receive reimbursement for the costs expended in that effort and compensation for their services from all of the plaintiffs on a ratable basis. *In re Diet Drugs Products Liability Litigation*, *supra*; *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014; *In re Nineteen Appeals*, 982 F.2d at 606-07; *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1019-21.

These principles were articulated in *Nineteen Appeals* as follows:

> Under standard American rule practice, each litigant pays his or her own attorneys' fees. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245, 95 S. Ct. 1612, 1615, 44 L.Ed.2d 141 (1975). Yet, there are times when the rule must give way. For example, when a court consolidates a large number of cases, stony adherence to the American rule invites a serious free-rider problem. *See generally* Mancus Olson, *The Logic of Collective Action* (1071). If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals.
>
> A court supervising mass disaster litigation may intervene to prevent or minimize an incipient free-rider problem and to that end, may employ measures reasonably calculated to avoid "unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." *Catullo v. Metzner*, 834 F.2d 1075, 1083 (1st Cir. 1987). Such courts will most often address the problem by specially compensating those who work for the collective good, chiefly through invocation of the so-called common fund doctrine.

* * *

> Here, [the District Court's] decision to use a steering committee [to manage consolidated mass tort litigation on behalf of all plaintiffs] created an occasion for departure from the American rule. In apparent recognition of the free-rider problem, the judge served notice from the beginning that he would eventually make what he, relying in part one appellees' counsel, *see Fees Op.*, 768 F. Supp. at 924 n. 42, later termed a "common fund fee award" to remunerate PSC members for their efforts on behalf of communal interests. This was a proper exercise of judicial power. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 90 S. Ct. 616, 625, 24 L.Ed.2d 563 (1970); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 240 (2d Cir. 1987) (upholding a fee award to a plaintiffs' steering committee under the equitable fund doctrine); *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986) (collecting cases); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 526 (D. Nev. 1987).

*In re Nineteen Appeals*, 982 F.2d at 606-07.

In order to protect the right of common benefit attorneys to receive a fee from the proceeds of the litigation in which they have participated and diligently worked on behalf of plaintiffs, courts have consistently ruled that it is appropriate to direct that all or part of the counsel fees which may become payable in each action which was the subject of coordinated or consolidated proceedings be deposited in an escrow account for allocation by the Court in accordance with appropriate legal standards. *In re Diet Drugs Products Liability Litigation*, *supra*; *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 300 (1st Cir. 1995); *Smiley v. Sincoff*, 958 F.2d 498, 499 (2d Cir. 1992); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014, *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *In re Silicone Gel Breast Implant Product Liability Litigation*, MDL 926, Pretrial Order Nos. 13 & 23 (N.D. Ala. July 23, 1993 and July 28, 1995) (Exhibit "1"). Thus, this

11

Court should properly enter an Order requiring that some portion of the fees earned in each individual action which is the subject of these consolidated MDL 1355 proceedings be withheld for distribution to counsel acting for the benefit of all litigants.

A question then remains as to the proportion of plaintiffs' recoveries which should be subject to such sequestration. Ultimately, the amount of the fee to be awarded must be determined either under the lodestar approach recognized by the Fifth Circuit or under the percentage of the fund approach based upon a judicial assessment of the amount and quality of work performed by the common benefit lawyers in relation to the size of the recoveries which have been generated. *See, e.g., In re Diet Drugs Products Liability Litigation, supra; In re Orthopedic Bone Screw Product Liability Litigation*, MDL 1014, PTO 402 (12% for fees and 5% for costs sequestered); *Johnson*, 488 F.2d at 717-19; *In re Thirteen Appeals*, 56 F.3d at 304-07; *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994), *aff'd in part*, 19 F.3d 1306 (9th Cir. 1994); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), *cert. denied*, 488 U.S. 822 (1988).

Because the instant action is ongoing, it is impossible to ascertain the total amount of time which will have been expended by the PSC and associated counsel for the common benefit or to ascertain the amounts which will be generated for the plaintiffs as a whole. Thus, it is impossible to determine the precise percentage of plaintiffs' recoveries which should be subject to an Order requiring payment to the Common Benefit Attorneys under the equitable principles set forth above. However, there are good precedents to guide the Court's determination in this regard. In particular, the same situation was presented to the Court in the *Propulsid Litigation*, MDL No. 1355. There,

this Court directed the sequestration of a total of 6 or 4 percent of the case recoveries for those actions in transferred in the MDL or state cases coordinated with the MDL in order to create a fund from which the PSC could later seek payment of fees and reimbursement of costs. *Id.*, *See* PTO No. 16. There is every reason to believe that this PSC and its associated counsel will perform at least as much work as the PSC in *Propulsid*.

Unlike *Propulsid* and other similar MDL cases, the *Vioxx* MDL presents itself to this Court with a unique history. Vioxx litigation against Merck has been ongoing well before the CTO of the JPML. As a consequence, many plaintiffs' counsel that were previously litigating in state courts have now become involved in the MDL and have both state and federal cases. To address this situation, the PSC proposes to create an MDL assessment fund that welcomes counsel who consent to fully participate in this litigation by providing them a reduced assessment on all of their cases, while allowing counsel that later choose to coordinate with the MDL what has become the traditional method of assessing claims. Either way, the assessment is intended to act only to preserve a *res* until an opportune time arrives when the court can make a determination of any appropriate award of either fees or costs. To assure that the *res* is preserved, the responsibility for paying the assessment into the fund established is that of any defendant, since they alone will have the intimate knowledge of sometimes confidential settlements and initial access to the funds themselves.

13

The PSC suggests that this Court implement an assessment, effective immediately, that allows counsel 90 days to choose to opt-in for all of their clients (whether filed in federal or state court, subject to a tolling agreement or unfiled, past, present or future).[4]  By accepting this so-called "Full Participation Option (or FPO)," counsel understand that their clients will be subject to an across-the-board assessment limited to 3% (2% fees/1% costs) of any recovery made.[5]  According to the Full Participation Option Agreement, the 3% assessment should be allocated as follows:  2% shall be deemed fees and subtracted from the attorneys' fees portions of individual fee contracts and 1% shall be deemed costs and subtracted from the client's portions of the individual fee contract.

After this initial 90 day period, a traditional assessment should be implemented (the "Traditional Assessment Option" or "TAO"), like that in *Propulsid.*  In this latter situation, the fund created by the Court will sequester 6% of plaintiffs' recoveries in federal court (and four (4%) percent of the plaintiffs' recoveries in cases pending in state courts which consent to coordination under such terms).[6]

---

[4]      These mandatory assessments would apply to all counsel appointed by this Court to serve on the PSC and those counsel appointed by the PSC to serve on any MDL committee, including the court appointed State Liaison Counsel Committee.  Thus, the above described counsel would be subject to a 3% assessment (2% fees/1% costs) for all of their cases in the MDL and a 3% assessment (2% fees/1% costs) for any of their state court cases, cases on tolling agreements or unfiled claims to maintain their appointment.

[5]      The proposed Agreement for attorneys who voluntarily agree to the Full Participation Option is attached hereto as Exhibit "A".

[6]      The PSC recognizes the need to have voluntary cooperation of counsel in connection with their state court cases.  *See In re Showa Denko K.K. L-Tryptophan Products Liability Litigation II*, 953 F.2d 162 (4th Cir. 1992).  Thus, only those counsel that agree to the terms of the Traditional Assessment Option will be bound thereby.  The proposed Agreement for attorneys who voluntarily agree to the Traditional Assessment Option  is attached hereto as Exhibit "B".

14

This plan of sequestering funds is designed to facilitate state and federal coordination. Under the unique circumstances of this litigation, it seems more than fair, particularly when viewed in light of the *Propulsid* experience. *See generally*, Francis McGovern, *Toward a Cooperative Strategy for Federal and State Judges In Mass Tort Litigation*, 148 U.Pa.L.Rev. 1867 (2000); William Schwarzer, *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 Va.L.Rev. 1689 (1992).

We respectfully submit that it is imperative that the Court immediately enter the form of order which we have proposed providing for an assessment of 3% (2 % fees/1% costs) of the gross amount awarded to plaintiffs whose counsel choose to accept the Full Participation Option in the next 90 days. This will create an immediate incentive for counsel to participate in the MDL. The Court should then implement the Traditional Assessment Option of 6% of the gross recovery of federal cases and 4% of the gross amount awarded to plaintiffs in any state-court proceedings where the state court or counsel has agreed to coordination subject to the terms of this Order. This assessment would extend to participating cases of counsel that are still unfiled or on tolling agreements. For those attorneys not taking advantage of the TAO, they will still be subject to the assessment on all of their federal cases (the "Lone MDL assessment") but will not be able to receive the MDL work product unless they agree not to use the work product in their non-participating state cases (the "Limited Waiver Option").[7]

For all counsel, distribution of any funds sequestered will be pursuant to a subsequent order by the Court in accordance with applicable principles of law governing fee awards. At an

---

[7]     The proposed Limited Waiver Option Agreement for participating attorneys who voluntarily agree not to use the MDL work product in their state cases is attached hereto as Exhibit "C".

appropriate time, when the Court enters an award on the MDL assessments, it will apportion costs and fees.

It is anticipated that in support of any award of fees and costs to the PSC and common benefit attorneys, a petition in conformity with Fifth Circuit jurisprudence will be presented. *See Johnson, supra,* and other cases, footnote 2, *supra.* It is further anticipated that the PSC will reimburse costs on an item by item basis for previously performed selective state attorney work-product that is accepted and incorporated as part of the MDL work-product.

III.      CONCLUSION

For the foregoing reasons, the PSC requests that its Petition be granted and the proposed Order entered by the Court.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

By: _____
      Russ M. Herman (Bar No.6819)
      Leonard A. Davis (Bar No. 14190)
      Stephen J. Herman (Bar No. 23129)
      HERMAN, HERMAN, KATZ & COTLAR, LLP
      820 O'Keefe Avenue
      New Orleans, LA 70113
      504-581-4892 (telephone)
      504-561-6024 (telecopier)

PLAINTIFFS' LIAISON COUNSEL

16

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Suite 2800
New Orleans, LA 70163-2800
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
Fred S. Longer, Esquire (on the brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

# AGREEMENT
## (FULL PARTICIPATION OPTION)

This Agreement is made this _____ day of _____, 2005, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Eastern District of Louisiana in MDL Docket No. 1657 and **[FILL IN THE NAME OF THE FIRM EXECUTING THE AGREEMENT]** (hereinafter "the Participating Attorneys").

WHEREAS, the United States District Court for the Eastern District of Louisiana has appointed Russ Herman, Andy D. Birchfield, Jr., Christopher A. Seeger, Richard J. Arsenault, Elizabeth J. Cabraser, Thomas R. Kline, Arnold Levin, Carlene Rhodes Lewis, Gerald E. Meunier, Troy A. Rafferty, Drew Ranier, Mark P. Robinson, Jr., and Christopher V. Tisi to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use of Vioxx.

WHEREAS, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed or are in the process of developing work product which will be valuable in the litigation of state court proceedings involving Vioxx induced injuries (the "PSC Work Product") and

WHEREAS, the Participating Attorneys are desirous of acquiring the PSC Work Product and establishing an amicable, working relationship with the PSC for the mutual benefit of their clients;

NOW, THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

1.      With respect to each client who they represent in connection with a Vioxx related claim, whether currently with a filed claim in state or federal court or unfiled or on a tolling

**EXHIBIT "A"**

agreement, each of the Participating Attorneys shall deposit or cause to be deposited in an MDL Fee and Cost Account established by the District Court in the MDL a percentage proportion of the gross amount recovered by each such client which is equal to three percent (3%) of the gross amount of recovery of each such client (2% fees; 1% costs). For purposes of this Agreement, the gross amount of recovery shall include the present value of any fixed and certain payments to be made to the plaintiff or claimant in the future. It is the intention of the parties that such assessment shall be in full and final satisfaction of any present or future obligation on the part of each Plaintiff and/or Participating Attorney to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the MDL and/or any Common Benefit Attorneys.

2.      The Participating Attorneys, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent in connection with any Vioxx induced injury, to the full extent permitted by law, in order to secure payment in accordance with the provisions of paragraph 1 of this Agreement. The Participating Attorneys will undertake all actions and execute all documents which are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

3.      The amounts deposited in the MDL Fee and Cost Account shall be available for distribution to attorneys who have performed professional services or incurred expenses for the benefit of the plaintiffs in MDL 1657 and the coordinated state court litigation pursuant to written authorization from the Liaison counsel of the PSC. Such sums shall be distributed only upon an Order of the Court in MDL 1657 which will be issued in accordance with applicable law governing the award of fees and costs in cases involving the creation of a common benefit. Appropriate

2

consideration will be given to the experience, talent and contribution made by all of those authorized to perform activities for the common benefit, including the Participating Attorneys.

4.      As the litigation progresses and work product of the same type and kind continues to be generated, the PSC will provide Participating Attorneys with such work product and will otherwise cooperate with the Participating Attorneys to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

5.      No assessment will be paid by the Participating Attorneys on any recovery resulting from a medical malpractice claim against a treating physician.

6.      It is understood and agreed that the PSC and Common Benefit Attorneys may also apply to the Court for class action attorneys' fees and reimbursement of expenses, if appropriate, and this Agreement is without prejudice to the amount of fees or costs to which the PSC and Common Benefit Attorneys may be entitled to in such an event.

7.      Upon execution of this Agreement, the PSC will provide to the Participating Attorneys, to the extent developed, the PSC Work Product, including access to the PSC's virtual depository.

8.      The Participating Attorneys shall have the following rights:

   a.      Full participation in discovery matters and appropriate committee assignments with full recognition of the participation of the Participating Attorneys;

   b.      Appropriate participation and consultation in settlement negotiations;

   c.      Appropriate participation in trials, class matters, management, fund administration and allocation of fees and costs.

3

10.     Both the PSC and the Participating Attorneys recognized the importance of individual cases and the relationship between case-specific clients and their attorneys.  Regardless of the type of settlement or conclusion eventually made in either state or federal matters, the PSC will recommend to Judge Fallon that appropriate consideration will be given to individual case contracts between attorneys and their clients and to work that has been performed by attorneys in their individual cases.

11.     The PSC agrees that, should there be a global settlement against any defendant(s), with the possibility of opt-outs under Rule 23(b)(3), the PSC will complete discovery against any such defendant(s) and will not agree to or seek a stay of discovery against any such defendant(s).

12.     It is understood that at the conclusion of each MDL deposition, a designee of Participating Attorneys will be permitted to ask the deponent additional non-duplicative questions.

13.     The Participating Attorneys represent that the list appended hereto as Exhibit "A" correctly sets forth the name of each client represented by them who has filed a civil action arising from the use of Vioxx together with the Court and docket number of each such case and that the list attached hereto as Exhibit "B" contains the name and social security number of each client represented by them who has not yet filed a civil action arising from the use of Vioxx.

14.     The Participating Attorneys shall supplement the lists appended hereto as Exhibit "A" and "B" on a quarterly basis.

15.     This Agreement shall apply to each and every claim or action arising from the use of Vioxx in which the Participating Attorneys have a right to a fee recovery.

PLAINTIFFS' STEERING COMMITTEE

By: _____

      Russ Herman, Esquire
      820 O'Keefe Avenue
      New Orleans, LA 70113
      504-581-4892

AND

By:_____

      Participating Attorney
      [Firm Name]

# AGREEMENT
## (TRADITIONAL ASSESSMENT OPTION)

This Agreement is made this _____ day of _____, 2000, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Eastern District of Louisiana in MDL Docket No. 1657 and **[FILL IN THE NAME OF THE FIRM EXECUTING THE AGREEMENT]** (hereinafter "the Participating Attorneys").

WHEREAS, the United States District Court for the Eastern District of Louisiana has appointed Russ Herman, Andy D. Birchfield, Jr., Christopher A. Seeger, Richard J. Arsenault, Elizabeth J. Cabraser, Thomas R. Kline, Arnold Levin, Carlene Rhodes Lewis, Gerald E. Meunier, Troy A. Rafferty, Drew Ranier, Mark P. Robinson, Jr., and Christopher V. Tisi to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use of Vioxx.

WHEREAS, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed or are in the process of developing work product which will be valuable in the litigation of state court proceedings involving Vioxx induced injuries (the "PSC Work Product") and

WHEREAS, the Participating Attorneys are desirous of acquiring the PSC Work Product and establishing an amicable, working relationship with the PSC for the mutual benefit of their clients;

NOW, THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

**EXHIBIT "B"**

1.    With respect to each client who they represent in connection with a Vioxx related claim filed or unfiled, other than clients with claims filed or pending in any Federal court, each of the Participating Attorneys shall deposit or cause to be deposited in an MDL Fee and Cost Account established by the District Court in the MDL a percentage proportion of the gross amount recovered by each such client which is equal to four percent (4%) of the gross amount of recovery of each such client. For purposes of this Agreement, the gross amount of recovery shall include the present value of any fixed and certain payments to be made to the plaintiff or claimant in the future.

2.    With respect to each client who they represent in connection with a Vioxx related claim which is filed or pending in any Federal court, unfiled or subject to a tolling agreement, each of the Participating Attorneys shall deposit or cause to be deposited in an MDL Fee and Cost Account established by the District Court in the MDL, a percentage proportion of the gross amount recovered by each such client which is equal to six percent (6%) of the gross recovery by each such client. For purposes of this Agreement, the gross amount of recovery shall include the present value of any fixed and certain payments to be made to the plaintiff in the future.

3.    The Participating Attorneys, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent in connection with any Vioxx induced injury, to the full extent permitted by law, in order to secure payment in accordance with the provisions of paragraphs 1 and 2 of this Agreement. The Participating Attorneys will undertake all actions and execute all documents which are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

2

4.      The amounts deposited in the MDL Fee and Cost Account shall be available for distribution to attorneys who have performed professional services or incurred expenses for the benefit of the plaintiffs in MDL 1657 and the coordinated state court litigation pursuant to written authorization from the Liaison counsel of the PSC.  Such sums shall be distributed only upon an Order of the Court in MDL 1657 which will be issued in accordance with applicable law governing the award of fees and costs in cases involving the creation of a common benefit.  Appropriate consideration will be given to the experience, talent and contribution made by all of those authorized to perform activities for the common benefit, including the Participating Attorneys.

5.      As the litigation progresses and work product of the same type and kind continues to be generated, the PSC will provide Participating Attorneys with such work product and will otherwise cooperate with the Participating Attorneys to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

6.      No assessment will be paid by the Participating Attorneys on any recovery resulting from a medical malpractice claim against a treating physician.

7.      It is understood and agreed that the PSC and Common Benefit Attorneys may also apply to the Court for class action attorneys' fees and reimbursement of costs, if appropriate, and this Agreement is without prejudice to the amount of fees and costs to which the PSC and Common Benefit Attorneys may be entitled to in such an event.

8.      Upon execution of this Agreement, the PSC will provide to the Participating Attorneys, to the extent developed, the PSC Work Product, including access to the PSC's virtual depository.

9.      The Participating Attorneys shall have the following rights:

3

a.     Full participation in discovery matters and appropriate committee assignments with full recognition of the participation of the Participating Attorneys;

b.     Appropriate participation and consultation in settlement negotiations;

c.     Appropriate participation in trials, class matters, management, fund administration and allocation of fees and costs.

10.     Both the PSC and the Participating Attorneys recognized the importance of individual cases and the relationship between case-specific clients and their attorneys. Regardless of the type of settlement or conclusion eventually made in either state or federal matters, the PSC will recommend to Judge Fallon that appropriate consideration will be given to individual case contracts between attorneys and their clients and to work that has been performed by attorneys in their individual cases.

11.     The PSC agrees that, should there be a global settlement against any defendant(s), with the possibility of opt-outs under Rule 23(b)(3), the PSC will complete discovery against any such defendant(s) and will not agree to or seek a stay of discovery against any such defendant(s).

12.     It is understood that at the conclusion of each MDL deposition, a designee of Participating Attorneys will be permitted to ask the deponent additional non-duplicative questions.

13.     The Participating Attorneys represent that the list appended hereto as Exhibit "A" correctly sets forth the name of each client represented by them who has filed a civil action arising from the use of Vioxx together with the Court and docket number of each such case and that the list attached hereto as Exhibit "B" contains the name and social security number of each client represented by them who has not yet filed a civil action arising from the use of Vioxx.

4

14.    The Participating Attorneys shall supplement the lists appended hereto as Exhibit "A" and "B" on a quarterly basis.

15.    This Agreement shall apply to each and every claim or action arising from the use of Vioxx in which the Participating Attorneys have a right to a fee recovery.

PLAINTIFFS' STEERING COMMITTEE


By: _____

Russ Herman, Esquire
820 O'Keefe Avenue
New Orleans, LA 70113
504-581-4892


AND


By:_____

Participating Attorney
[Firm Name]

5

# AGREEMENT

(Limited Waiver Option)

This Agreement is made this _____ day of _____, 2000, by and between Plaintiffs' Steering Committee ("PSC") in MDL 1657 and **[FILL IN THE NAME OF THE FIRM EXECUTING THE AGREEMENT]** (hereinafter "the Requesting Attorneys").

## W I T N E S S E T H:

WHEREAS, the Requesting Attorneys have clients with filed federal cases that are subject to an assessment of 6% of any recovery obtained therein and have requested that the PSC supply them with work product materials described in Pretrial Order No. _____ entered by the United States District Court for the Eastern District of Louisiana.

WHEREAS, the parties have agreed that the requested materials should be supplied by the PSC to the requesting attorneys subject to the terms hereinafter set forth.

WHEREAS, the Requesting Attorney has affirmatively stated that he or she will <u>not</u> use the PSC work product in their state cases.

NOW, THEREFORE, in consideration of the covenants contained herein and intending to be legally bound, the parties agree as follows:

1.      Subject to proper payment for the actual costs of providing the materials, the PSC will provide the Requesting Attorneys with PSC work product materials and any supplements thereto on a prompt and timely basis.

2.      The Requesting Attorneys expressly agree that the materials supplied by the PSC to the Requesting Attorneys under the terms of this Agreement will be used solely for purposes

**EXHIBIT "C"**

1

of prosecuting federal cases which are or have been subject to consolidated or coordinated pretrial proceedings in MDL 1657.

3.      The Requesting Attorneys further agree and expressly represent that they will **NOT** use the materials supplied by the PSC hereunder for purposes of prosecuting any litigation pending in State Court without the express written consent of the liaison counsel for the PSC.

4.      Further, the Requesting Attorneys expressly agree and represent that with respect to the materials provided to them by the PSC pursuant to this Agreement they will not provide such materials, copies of such materials, duplicates of such materials, summaries of such materials, and the like to any other attorney, person, firm or entity whatsoever.

5.      Because the damages attributable to breach of this Agreement are difficult to ascertain, the PSC and the Requesting Attorneys hereby agree that in the event of a breach of this Agreement by the Requesting Attorneys, the damages for such breach will be an amount equal to six percent (6%) of the total amount recovered by each of every client through settlement, verdict, judgment or otherwise where that client was represented by a Requesting Attorney or any other attorney who has received or used the confidential work product materials.

6.      It is further stipulated and agreed that this Agreement shall be construed and enforced under the laws of Louisiana and that all proceedings to enforce the terms of this Agreement shall take place exclusively in the Courts of Louisiana and nowhere else.

2

PLAINTIFFS' STEERING COMMITTEE


By:   _____
        Russ Herman, Esquire
        820 O'Keefe Avenue
        New Orleans, LA 70113
        504-581-4892


AND


By:

        Requesting Attorney
        [Firm Name]

3

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX                                    :          **MDL NO. 1657**
      **PRODUCTS LIABILITY LITIGATION**:
                                    :          **SECTION: L**
                                      :
**THIS DOCUMENT RELATES TO ALL CASES:**          **JUDGE FALLON**
                                      :          **MAG. JUDGE KNOWLES**

## NOTICE OF HEARING

Please take notice that, upon the pleadings, the depositions, and other matters of record, the undersigned will move the Court before the Honorable Judge Eldon E. Fallon, United States District Court for the Eastern District of Louisiana, Room C456, United States Courthouse, 500 Camp Street, New Orleans, Louisiana, 70130, at 9:30 a.m., at the monthly status conference on the 19th day of July, 2005, or as soon thereafter as counsel can be heard, for an order on the PSC's Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for MDL Administration and Common Benefit Work, and for such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

W:\25000-29999\27115\000\PLD\Notice of Hearing on Memo re Assessment 2005-6-29.doc

1

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH:  (318) 487-9874<br>FAX:  (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>FAX:  (504) 528-9973 |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH:  (850) 435-7000<br>FAX:  (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH: (215) 772-1000<br>FAX:  (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH:  (215) 592-1500<br>FAX:  (215) 592-4663 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH:  (713) 650-0022<br>FAX:  (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH:  (202) 783-6400<br>FAX:  (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 29th day of June, 2005.

W:\25000-29999\27115\000\PLD\Notice of Hearing on Memo re Assessment 2005-6-29.doc