FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL -5 PM 12: 11

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:** | * | **MDL Docket No. 1657** |
| | * | |
| **VIOXX PRODUCTS LIABILITY** | * | **SECTION L** |
| **LITIGATION** | * | |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** *Margaret Aguirre* | * | |
| *v. Merck & Co., Inc., et al.*, **no. 05-2268** | * | **MAG. JUDGE KNOWLES** |
| * * * * * * * * * * * * * * * * * * * | * | |
| | * | |

## MERCK'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Comes now Merck & Co., Inc. ("Merck") and for its opposition to Plaintiff's motion to remand states as follows:

## Background

This is a case involving the prescription drug VIOXX®. Plaintiff alleges that as a result of taking VIOXX®, she suffered a stroke. (Comp. ¶ 2). In her complaint, Plaintiff alleges a variety of claims against Merck arising out of her contention that VIOXX® is "a defective and dangerous pharmaceutical." (Comp. ¶ 1).

In a transparent attempt to defeat Merck's removal rights, plaintiff also asserts claims based on strict liability, negligence, and breach of implied warranty against Walgreen Co.



733525/1

Plaintiff bases these claims on the allegations that the Walgreens filled her prescriptions for VIOXX® and failed to warn her of the dangers associated with VIOXX® when she had her prescriptions filled.

## Argument

Plaintiff's motion should be denied because the Court has diversity jurisdiction over plaintiff's claims.   Plaintiff does not dispute in her motion to remand that the amount-in-controversy requirement is satisfied.  Plaintiff also does not dispute that plaintiff and Merck are citizens of different states.   Thus, the only question is whether the non-diverse pharmacy defendant is fraudulently joined so that diversity jurisdiction is proper.   As set forth below, plaintiff has no intention of seeking relief from this defendant; nor could she if she so desired. Accordingly, this defendant should be ignored for purposes of determining jurisdiction, and plaintiff's motion should be denied.

In the Seventh Circuit, "[d]iversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).   If a party is determined to be fraudulently joined, that party's citizenship is disregarded for diversity purposes. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999).  In determining whether a defendant was fraudulently joined, the Seventh Circuit requires not just an analysis of whether plaintiff stated a "claim," but also whether plaintiff has a "reasonable possibility" of recovery on that claim. *See id.* (finding removal proper because of fraudulent joinder, notwithstanding the fact that plaintiff had a "claim" under the concept of notice pleading).

Plaintiff's motion to remand misstates the standard for determining whether a party has been fraudulently joined to defeat diversity.  Plaintiff states in her brief that the non-diverse defendant is not fraudulently joined because Merck has not shown that there is "no possibility"

that plaintiff can state a cause of action against the non-diverse defendant. *See* Plaintiffs'

Memorandum in Support of Plaintiffs' Motion to Remand ("Pltfs. Mem."), p. 4. However, under

Seventh Circuit law, a defendant need only show that there exists no "***reasonable*** possibility"

that plaintiff will recover on her claims against the resident defendant. *Schwartz*, 174 F.3d at

878. Here, based on the facts alleged in plaintiffs' complaint, there is no reasonable basis

supporting any claims against the pharmacy defendant.

> A.     The Pharmacy Defendant Is Fraudulently Joined Because The Claims
>        Against It Cannot Be Reconciled With The Gravamen Of Plaintiff's
>        Complaint – That Merck Withheld Information About Alleged VIOXX®
>        Risks From Everyone Including The "Health Care Industry."

The pharmacy defendant is fraudulently joined because plaintiff's claims against the

pharmacy are wholly inconsistent with the gravamen of her allegations: that Merck misled the

public and the medical community regarding the safety of VIOXX®. (Comp. ¶¶ 17, 18, 30, 32,

Count II, Counts IV-V.)[1]  After all, plaintiff repeatedly asserts in her complaint that Merck

misled and withheld information regarding the safety of VIOXX® from plaintiff herself, "the

consuming public" generally, and even from "the health care industry." At the same time,

plaintiff also alleges that the pharmacy defendant – a mere service provider who fills

prescriptions made by doctors – was sufficiently aware of the risks associated with VIOXX®

that its failure to disclose those risks breached a duty to plaintiff. The incompatibility of these

two theories has been acknowledged by several hundred plaintiffs in similar VIOXX® cases.

*See* Plaintiffs Memorandum in Support of Motion to Modify Order of June 6, 2005 Regarding

Physician Contacts, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. June 15, 2005)

---

[1]     Under the learned intermediary doctrine, plaintiff can only recover against Merck if she can demonstrate
        that Merck withheld information from the medical community. *Kirk v. Michael Reese Hosp. & Med. Ctr.*,
        117 Ill.2d 507, 519 (Ill. 1987).

778885v.1

("Plaintiffs' principal allegation in this case is that Merck failed to disclose known risks of heart attacks to the medical community . . . . *That theory is by and large incompatible with a claim that the doctor is at fault*" (emphasis added)).  Plaintiff's allegations against the pharmacy are irreconcilable with the core allegations in her complaint not only because they completely depend on the proposition that the pharmacy defendant knew information which plaintiff alleges Merck withheld from it, but also because these allegations necessarily posit that the pharmacy somehow had more information about the risks of VIOXX® than plaintiff's own prescribing physicians.

In similar circumstances, courts around the country have ruled that non-diverse plaintiffs were fraudulently joined. *See, e.g., In re Rezulin Prods. Liab. Litig.* ("*Rezulin I*"), 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (finding that non-diverse physicians were fraudulently joined because the plaintiffs' allegations that the drug manufacturer had concealed the drug's risks from everyone "refutes the assumption that . . . [the] physicians had knowledge of [the drug's] harmful effect"); *Wiggins v. Am. Home Prods. Corp.*, 2001 WL 34013629 (N.D. Ala. Oct. 2, 2001) (in-state pharmacy was fraudulently joined where plaintiff made no specific allegation against the pharmacy); *In re Diet Drug Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (in-state physician fraudulently joined).

> B.  **Plaintiff Has No Reasonable Basis For Breach Of Warranty Claims Against the Pharmacy Under Illinois Law.**

The pharmacy defendant is also fraudulently joined because plaintiff has no reasonable possibility of prevailing on any of the causes of action plaintiff pleads against it.  Plaintiff's complaint seeks to pursue a breach of warranty claim against the pharmacy defendant based upon its role as a pharmacy that dispensed VIOXX®.  (Comp., Count VI.)  Plaintiff's breach of warranty claim is unfounded in either law or fact.

4

778885v.1

Breach of warranty claims only apply to the sale of goods, *see* 810 ILCS 5/2-102, and under Illinois law, filling a prescription as instructed by a physician constitutes a service – not the sale of goods. Case law from the Illinois Supreme Court makes this distinction clear. In *Brandt v. Boston Scientific Corp.*, the Illinois Supreme Court ruled that the sale of medical products in connection with surgery is *not* a sale of goods, and, thus, that a breach of warranty claim could not be brought against a hospital for the provision of a defective medical product. 204 Ill. 2d 640 (Ill. 2003). Because Illinois follows the "predominant purpose" test under the UCC, *see id.*, the same principle would clearly apply to filling prescriptions. Other courts interpreting the laws of states that follow a similar approach have reached this precise conclusion. As stated by one court:

> [J]ust as there is no basis for finding consumer reliance on pharmacists, so too there is no basis for adopting the view that a pharmacist is a retail merchant like any other with respect to the sale of prescription drugs. A pharmacist's sales of prescription drugs are not attributable to his or her marketing the properties of the drugs. They are attributable to physicians' prescriptions. In this sense, a pharmacist provides 'a service to the doctor and [acts] as an extension of the doctor in the same sense as a technician who takes an x-ray or analyzes a blood sample on a doctor's order.' In light of the special circumstances of pharmacy sales, 'it is purely hyperbole to suggest . . . that the role of the pharmacist is similar to that of a clerk in an ordinary retail store.'"

*Rezulin I*, 133 F. Supp. 2d at 292 (citation omitted); *Makripodis v. Merrell-Dow Pharm., Inc.*, 523 A.2d 374, 377 (Pa. Super. Ct. 1987) ( "the dominant role of the pharmacist in filing a prescription is the performance of a service rather than the sale of a product and thus . . . no warranties arise as an incident of the sale of a prescription drug").

Additionally, even if filling a prescription were, in fact, a sale of goods, "almost every state that has considered the issue has declined to find pharmacists liable for breach of either implied or express warranty with respect to properties of prescription drugs." *Rezulin I*, 133 F. Supp. 2d at 292. *See, e.g., In re New York Diet Drug Litig.*, 691 N.Y.S.2d 501, 502 (N.Y. App.

5

Div. 1999) (because plaintiffs failed to allege that the pharmacy did not fill their prescriptions as directed by the manufacturers and physicians, "there is no basis to hold the pharmacist liable under theories of . . . breach of warranty"); *McLeod v. W.S. Merrell Co.*, 174 So.2d 736, 739 (Fla. 1965) (holding that a transaction in which a pharmacist sells a prescription drug to a customer "is not one out of which a warranty, even under most modern standards, would be implied"); *Bichler v. Willing*, 58 A.D.2d 331, 333-34 (N.Y. App. Div. 1977) (concluding that there is no cause of action for breach of any implied warranties where a pharmacist properly fills a prescription with an unadulterated drug).

In determining that a pharmacist cannot be held liable for breach of warranties from the sale of a prescription drug, the courts have reasoned that:

> [I]mplied warranties are conditioned on the buyer's reliance upon the skill and judgment of the seller but when a consumer asks a druggist to fill a prescription, thus enabling him to obtain a drug which is not otherwise available to the public, he does not rely on the druggist's judgment as to whether that particular drug is inherently fit for its intended purpose but rather he places that confidence  and reliance in the physician who prescribed the remedy.

*Bichler*, 58 A.D.2d at 333-34; *see also McLeod*, 174 So.2d at 739 ("Obviously, the patient-purchaser did not rely upon the judgment of the retail druggist in assuming that the drug would be fit for its intended purpose.  This confidence had been placed in the physician who prescribed the remedy").  In this case, plaintiff specifically states in her complaint that she purchased VIOXX® pursuant to her physician's prescription.  (Comp. ¶ 33 ("[p]ursuant to ***prescriptions received from [her] treating physician, the Plaintiff regularly purchased and ingested Vioxx*** for various periods of time." (emphasis added).)  Thus, plaintiff admits that she was relying on her physician's skill and judgment in purchasing VIOXX®, not the skill and judgment of the pharmacy defendant.

6

Plaintiff argues that "[p]roperly considered, the *Brandt* case is inapposite to the instant case." (Pltf. Mem. at 8.)  Contrary to plaintiff's characterization, the holding in *Brandt* is precisely on point.  As discussed above, the Court in *Brandt* held that the sale of medical products in connection with a surgery was *not* the sale of goods, and, thus, that a breach of warranty claim could not be brought against a hospital for the provision of a defective medical product.  Moreover, Plaintiff cites no case whatsoever where the sale of *drugs* was held to be a sale of goods, and, given the learned intermediary doctrine's acceptance in Illinois, such a sale clearly would not be found to be the sale of goods, but rather the provision of services.  A "pharmacist does not have discretion to alter or refuse to fill a prescription because the risks and benefits of that prescription for that particular patient have already been weighed by the physician." *Coyle v. Richardson-Merrell, Inc.*, 526 Pa. 208, 214, 584 A.2d 1383 (1991).  *See also Leesley v. West,* 165 Ill. App. 3d 135, 137 (2d Dist. 1988) (affirming, without comment, summary judgment granted to pharmacist on warranty claims); *Bichler*, 397 N.Y.S.2d at 59 (no basis for liability for breach of warranty where no allegations that pharmacist altered the product in any way or had proffered any oral or written warranty as to product's safety or side effects).

Accordingly, because a pharmacist cannot create an express or implied warranty relating to properties of prescription drugs, plaintiff cannot make out a breach of warranty claim against the pharmacy defendant.  The pharmacy defendant is fraudulently joined and its citizenship should be disregarded for purposes of evaluating removal.

C.     Plaintiff Has No Reasonable Basis For Her Strict Liability and Negligent
       Failure To Warn Claim Under Illinois Law.

Plaintiff's complaint also seeks to pursue both a strict liability and a negligence action against the pharmacy defendant based upon its alleged failure to provide adequate warnings regarding the potential dangers associated with the use of VIOXX®.  (Comp. Count VI and

778885v.1

VIII.)   As discussed above, plaintiff accuses the pharmacies of failing to warn plaintiff even though the essence of plaintiff's entire complaint is that Merck allegedly failed to disclose these very same risks and consequences to the community at large, including the health care industry. Because Illinois law does not permit a failure-to-warn claim against a pharmacy as alleged here, plaintiff's claim fails as a matter of law.

A pharmacist's duty to warn has been discussed at length by the Illinois courts.   In *Leesley v. West*, 165 Ill. App. 3d 135 (2d Dist. 1988), the Illinois court of appeals specifically addressed the issue of whether a pharmacist had a duty under either strict liability or negligence to warn the consumer of known risks and side effects of a prescription medication. *Id.* at 140. The court held that it did not.   The court noted that the Illinois Supreme Court had already determined that a manufacturer of a drug has no duty to provide warnings directly to customers, and thus concluded that "it would be illogical and inequitable under a strict liability theory to impose a duty on the pharmacist with respect to a prescription drug that is not imposed on the drug's manufacturer." *Id.* at 141.   The court held that in order to find a pharmacy liable under a strict liability theory, it "would have to conclude that the product somehow became unreasonably dangerous in [the pharmacy's] hands," and "[s]uch a conclusion would obviously be unreasonable." *Id.*   The court further reasoned that "placing on the pharmacist a duty to warn either the physician or the customer would 'compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability,'" and "would be very burdensome." *Id.* at 141-42 (citation omitted).[2]

---

[2]     *See also Jones v. Irvin*, 602 F. Supp. 399, 402 (S.D. Ill. 1985) (it is not the duty of the pharmacist, but rather "the duty of the prescribing physician . . . to warn the patient of any dangers associated with taking the drug"); *Frye v. Medicare-Glaser Corp.*, 153 Ill.2d 26, 34 (Ill. 1992) ("In our opinion, consumers should principally look to their prescribing physician to convey the appropriate warnings regarding drugs, and it is the prescribing physician's duty to convey these warnings to patients."); *Kasin v. Osco Drug, Inc.*, 312 Ill.

Because under Illinois law a pharmacy does not have a duty to warn and cannot be strictly liable for drugs provided, Illinois courts repeatedly have held that claims such as those alleged by plaintiff fail as a matter of law. *See, e.g., Fakhouri*, 248 Ill. App. 3d at 334 (affirming trial court's dismissal of plaintiff's failure to warn claim because plaintiff failed to establish existence of a legal duty owed to him by the pharmacy defendant); *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124, 130 (4th Dist. 1985) (affirming trial court's dismissal of plaintiff's negligence claim against pharmacy because "a pharmacist has no common law or statutory duty to refuse to fill a prescription simply because it is for a quantity beyond that normally prescribed or to warn the patient's physician of that fact"). These courts have found that no causes of action such as plaintiff has alleged exist under Illinois law.

In her memorandum in support of her motion to remand, plaintiff argues that her motion to remand should be granted because she could have stated a claim against the pharmacy defendant under one of the two exceptions to this general "no duty" rule recognized by Illinois courts. (Pltf. Mem. at p. 5-8.) However, plaintiff refuses to identify a single allegation supporting such a possibility.

The Illinois courts have recognized two narrow instances where a pharmacy may have a duty to warn.[3/] First, the Illinois Supreme Court has held that "a narrow duty to warn exists where, . . . , a pharmacy has patient-specific information about drug allergies, and knows that a

---

App. 3d 823, 826 (2d Dist. 2000) (noting that the learned intermediary doctrine has been applied by Illinois courts to "exempt pharmacies and pharmacists from giving warnings to patients."); *Fakhouri v. Taylor*, 248 Ill. App. 3d 328, 333-34 (1st Dist. 1993) (plaintiff failed to state a claim against pharmacy for negligent failure to warn when he alleged only that the pharmacy "did nothing more than fill the prescriptions as ordered by the physician."

[3] Plaintiff states in her memorandum that Merck's assertion in its notice of removal that there are only two recognized exceptions to the general rule that a pharmacy cannot be held liable under the theories of strict liability and negligence is "misleading." (Pltf. Mem. at 5.) However, plaintiff presents *no* cases where Illinois courts have recognized more than the two general exceptions discussed above.

778885v.1

Standard

drug being prescribed is contraindicated for the individual patient." *Happel v. Wal-Mart Stores, Inc.*, 199 Ill.2d 179, 197 (Ill. 2002). Plaintiff has not asserted any allegations in her complaint that show that this narrow exception would apply here and cites the Court to nothing in her complaint. (Pltf Mem. at 5-6.) Plaintiff did not plead anywhere in her complaint that the pharmacy defendant knew about any of her specific drug allergies or medical conditions or that they knew that VIOXX® was contraindicated for her because those conditions. In fact, plaintiff has not pleaded that she even suffered from any such conditions. *See* Comp. Count VI, Count VIII.

Plaintiff also has no chance of success under the second narrow exception. The second exception occurs where a pharmacy voluntarily undertakes to provide a customer with information or warnings about a prescription drug, then the pharmacy assumes a duty of care limited to the extent of its undertaking. *See Frye*, 153 Ill.2d at 32. In this case, plaintiff does assert in her complaint that the VIOXX® she received was "accompanied" by warnings. However, plaintiff does not allege who provided the warnings, *i.e.*, Merck, the prescribing physician, or the pharmacy defendant. Furthermore, Illinois law is clear that even if the pharmacy defendant had provided warnings as to some possible side effects, that alone does ***not*** create a duty to warn plaintiff of *all* possible side effects of the drug. *See Frye*, 153 Ill.2d at 33 (holding that pharmacy's undertaking to warn plaintiff that drug may cause drowsiness did not require it to warn plaintiff of all potential side effects of drug); *Kasin*, 312 Ill. App. 3d at 829 ("By voluntarily undertaking to list some of the drug's side effects, [the pharmacy] did not assume a duty to list all possible side effects"). Again, there is no reasonable possibility of success here and a finding of fraudulent joinder is appropriate.

10

Additionally, plaintiff argues that she has a claim against the pharmacy defendant because she "alleges both that the defendant had a duty to exercise reasonable care in the sale of products at issue and a duty to communicate accurate information concerning any unreasonable dangers associated with the intended use of the products." (Pltf. Mem. at 7.)  In support of her argument, plaintiff cites to Illinois cases discussing, in general, when a seller of a product can be held liable for failure to warn.  (*Id.* at 6-7.)  However, none of these cases involve the sale of a prescription drug by a pharmacy.  On that issue, Illinois courts have clearly held that a duty to warn does not exist on the part of the pharmacy.  Illinois courts have determined that the role of the physician takes these cases out of the line of cases upon which plaintiff relies.  *See, e.g., Leesley*, 165 Ill. App. 3d at 140-42.[4]

Plaintiff clearly has not raised allegations against the pharmacy defendant upon which she would have any chance of success.  Plaintiff makes no allegation that the pharmacy defendant failed to fill her prescription according to the physician's instructions, failed to label the bottles accurately, or otherwise failed to exercise due care in filling her prescription for VIOXX®.  Because a pharmacy has no duty to warn of risks and side effects of a prescription drug, and because plaintiff has not alleged any facts supporting the application of any exception to that general rule, plaintiff cannot make out a negligence or strict liability claim against the pharmacy defendant.  The pharmacy defendant is fraudulently joined and it citizenship should be disregarded for purposes of evaluating removal.

---

[4]     Finally, plaintiff states that this case must be remanded because Merck has merely "asserted" the learned intermediary doctrine as an affirmative defense.  Plaintiff claims that "[f]or Merck to succeed with its affirmative defense, it must do more than simply assert it!" (Pltf. Mem. at 8.)  Plaintiff is mistaken.  When a plaintiff pleads a theory that has been repeatedly *rejected* by the courts, nothing more is needed.  Plaintiff pleaded that her physician prescribed VIOXX®.  Illinois courts, as a matter of law, have held the learned intermediary defense applies.  *See Jones v. Irvin*, 602 F. Supp. 399, 402-03 (S.D. Ill. 1985) (granting a pharmacy's motion to dismiss plaintiff's failure to warn claim because the pharmacy has no duty to warn).

778885v.1

## Conclusion

For the foregoing reasons, Merck respectfully requests that the Court stay consideration of plaintiff's motion to remand pending an imminent ruling by the MDL Panel on Merck's motion to transfer and coordinate this and numerous other cases.   In the alternative, Merck requests that plaintiff's motion be denied.

Respectfully submitted,

Phillip A. Wittman, 13625
Anthony M. DiLeo, 4942
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone:  504-581-3200
Fax:  504-581-3361

Defendants' Liaison Counsel

Dan H. Ball
Robert T. Ebert, Jr.
Stephen G. Strauss
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Phone:  314-259-2000
Fax:  314-259-2020

Counsel for Merck & Co., Inc.

778885v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Opposition to Plaintiff's Motion to Remand has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 5th day of July, 2005.

778885v.1