```
                                                    FILED
                                           U.S. DISTRICT COURT
                                         EASTERN DISTRICT OF LA

                                            2005 JUL 12  AM 11: 27

                                           LORETTA G. WHYTE
                                                     CLERK
```

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | * | |
| | * | **MDL Docket No. 1657** |
| **VIOXX PRODUCTS LITIGATION** | * | |
| | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to *Felicia Garza v.*** | * | **MAG JUDGE KNOWLES** |
| ***Heart Clinic, P.A.,*** No. 05-2586 | | |

## MERCK'S OPPOSITION TO PLAINTIFFS'
## <u>MOTION FOR EMERGENCY HEARING</u>

Plaintiffs in *Garza* yet again seek an emergency hearing on their motion to remand this case to state court, even though similar requests for expedited consideration or special treatment have already been denied by the federal transferor court and by the MDL Panel. Plaintiffs' remand motion presents a recurring issue that exists in numerous cases in this MDL proceeding—namely, whether in-state prescribing doctors can properly be joined in VIOXX cases in order to defeat diversity. Members of the Plaintiffs' Steering Committee have already conceded that joinder of nondiverse doctors generally is improper because plaintiffs' claims against Merck are "by and large incompatible with a claim that the doctor is at fault." (*See* Pls. Mem. in Supp. of Mot. to Modify Order of June 6, 2005 Regarding Physician Contacts at 3.)

```
___  Fee_____
___  Process_____
_X_  Dktd_____
_V_  CtRmDep_____
___  Doc. No _____
```

779845v.1

The *Garza* Plaintiffs have provided no basis for believing that their claims against the doctor defendants here are special, or that the outcome of the joinder analysis will be any different in this case. Nor have the *Garza* Plaintiffs presented any compelling reason why this recurring issue should be considered out-of-turn in their case, before the Court has the opportunity to group similar remand motions together to ensure consistency, as contemplated in the Court's June 23 Minute Entry.

Contrary to Plaintiffs' insinuations of procedural delay by Merck, the record in this case raises serious issues about whether Plaintiffs have engaged in inequitable conduct—including taking different positions when in state court versus federal court—in order to manipulate the diversity rules and defeat federal jurisdiction. When this case was first removed, Plaintiffs' expert cardiologist, Dr. Simonini, submitted affidavit testimony that the doctor defendants had violated the standard of care in dispensing VIOXX to Mr. Garza. After the case was returned to state court and the one-year removal deadline had passed, Dr. Simonini completely recanted his affidavit, testifying at his deposition that the doctor defendants had complied with the standard of care. Plaintiffs also amended their state-court pleadings and discovery responses to drop their separate negligent misdiagnosis theory against the doctor defendants. However, when Merck re-removed to federal court based on these significant developments, Plaintiffs promptly submitted a new affidavit from their second medical expert, Dr. Bush, attempting to revive the theory that Mr. Garza's doctors were negligent in dispensing VIOXX to him. This new affidavit contained untimely, previously undisclosed opinions from Dr. Bush that *directly contradicted* the deposition testimony of Dr. Simonini.

Plaintiffs' attempt to use a new, untimely, and materially different affidavit from Dr. Bush to salvage their abandoned claims against the nondiverse doctors smacks of

2

779845v.1

jurisdictional gamesmanship. The Fifth Circuit clearly held in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003), that such transparent attempts to manipulate the diversity rules and avoid a federal forum shall not be tolerated. For this reason, Plaintiffs' suggestion that this case is not properly part of a federal MDL proceeding is unfounded. Accordingly, the Court should deny Plaintiffs' motion for emergency hearing, and should take up the joinder issue presented here along with other cases involving the improper joinder of nondiverse doctors.

## I.   THE HISTORY OF THIS CASE REVEALS THAT PLAINTIFFS HAVE NO CLAIM AGAINST THE NONDIVERSE DOCTORS AND HAVE ENGAGED IN REPEATED JURISDICTIONAL GAMESMANSHIP.

Shortly after this suit was filed in state court in March 2003, Merck removed the case to the Southern District of Texas, contending that the two doctor defendants were improperly joined to defeat diversity. In response, Plaintiffs moved to remand and submitted supporting affidavits from two medical experts. One expert, Dr. Simonini, opined that the in-state doctor defendants acted negligently by dispensing VIOXX to Mr. Garza in the face of known cardiac risks, and by negligently misdiagnosing Mr. Garza's symptoms. (*See* Ex. 1 (Simonini Aff.), ¶¶ 5-6.) Plaintiffs' other expert, Dr. Bush, opined merely that the doctor defendants had negligently misdiagnosed Mr. Garza's symptoms; notably, Dr. Bush rendered no opinion concerning Plaintiffs' negligent dispensing theory. (*See* Ex. 2 (Bush Aff.).)

Based in part on these expert affidavits, Judge Ricardo Hinojosa of the Southern District of Texas remanded the case, concluding that Plaintiffs had stated a potential negligence claim against the doctor defendants. (*See* Ex. 3 (Remand Order and Hearing Trans.).) However, after submitting an affidavit to help Plaintiffs obtain remand, and after the one-year removal deadline of 42 U.S.C. § 1446(b) had passed, Dr. Simonini later repudiated the opinions presented in his federal-court affidavit. Specifically, at his state-court deposition on December 9, 2004, Dr. Simonini testified that the doctor defendants "had no reason to suspect" adverse cardiac effects

3

from VIOXX (Ex. 4 (Simonini Dep.) at 213), and that they had fully complied with the standard of care in diagnosing Mr. Garza's condition and dispensing VIOXX to him:

> Q:    Based upon everything you have reviewed in your training, experience and education, would you agree that the treatment they gave, at the time they gave it, they complied with the standard of care?
>
> A:    Yes.

*Id.* at 214.  Plaintiffs have offered no explanation for the 180-degree reversal in Dr. Simonini's testimony concerning whether the doctor defendants were negligent.

Because the deadline for Plaintiffs to proffer new expert opinions had passed, Dr. Simonini's reversal left Plaintiffs' original negligent dispensing theory completely unsupported by any expert testimony, and thus with no prospect of success under state law.  Plaintiffs also submitted "supplemental" discovery responses in state court, suggesting that they are no longer advancing the negligent dispensing theory. (*See* Ex. 5 (Plfs.' Supp. Responses to Merck's First Request for Admissions) at 6.)   Only Plaintiffs' negligent misdiagnosis theory remained. However, a few days later, on December 17, 2004, Plaintiffs filed a Second Amended Original Petition, in which they voluntarily abandoned their negligent misdiagnosis claim against the doctor defendants. (*See* Ex. 6 (Second Am. Pet.), ¶¶ 7-9.)

Although the Second Amended Original Petition still purports to assert a claim for negligent dispensing, that theory is unsupported by any specific factual allegations and has been entirely negated by the deposition testimony of Dr. Simonini, Plaintiffs' only expert on that subject.  Under established Fifth Circuit standards, in-state defendants are improperly joined when a plaintiff's pleading contains only conclusory allegations as to those defendants, unsupported by any specific allegations of actionable conduct. *See, e.g., Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (holding that an in-state defendant is improperly

779845v.1

joined when the plaintiff's petition "fails to state any specific factual conduct on her part whatsoever").

In light of these significant procedural developments which negated any claim against the doctor defendants, Merck invoked the *Tedford* doctrine and re-removed this case on January 18, 2005, on the basis of improper joinder.  Plaintiffs again moved to remand, submitting a revised affidavit from their second expert, Dr. Jerry Bush, dated January 21, 2005.  In a telling sign of Plaintiffs' continuing jurisdictional manipulation, Dr. Bush's revised affidavit purported to opine for the first time in support of a negligent dispensing theory (*see* Ex. 14 (Revised Bush Aff.))— even though Dr. Bush did not previously opine on that theory in either federal or state court; even though Dr. Bush's report did not timely disclose this opinion as required by the state court's October 12 expert designation deadline (*see* Ex. 7 (Docket Control Order)); even though the negligent dispensing theory has been recanted by its sole original proponent, Dr. Simonini; and even though Plaintiffs expressly disclaimed this theory in their "supplemental" state-court discovery responses filed a mere four days before removal.  Plaintiffs offer no explanation for why, after 22 months of litigation, Dr. Bush suddenly developed a new opinion that was not presented in his first remand affidavit or properly disclosed before removal.

The simple answer is that Plaintiffs and their experts were content to gradually abandon their claims against the doctor defendants, so long as they were in state court.  However, within days of removal to federal court, Plaintiffs and Dr. Bush trumped up an untimely, previously undisclosed opinion on negligent dispensing, all in hopes of convincing Judge Hinojosa that Plaintiffs still had a viable state-law claim against the doctor defendants, despite Dr. Simonini's unequivocal testimony to the contrary.

779845v.1

Plaintiffs' apparent willingness to take different positions regarding the doctor defendants while in different courts, and to present the federal court with a revised expert affidavit on previously recanted theories, demonstrates that Plaintiffs have engaged in an inequitable strategy to defeat diversity jurisdiction through improper joinder and manipulation of the one-year removal deadline of 28 U.S.C. § 1446(b).  Under such circumstances, the Fifth Circuit has held that the one-year deadline for removal is subject to equitable extension.  *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003).  Accordingly, Merck's re-removal of the case was entirely proper.

## II.   THE JOINDER ISSUES PRESENTED BY PLAINTIFFS' MOTION SHOULD NOT BE DECIDED ON AN "EMERGENCY" BASIS AHEAD OF SIMILAR ISSUES IN OTHER CASES.

This is the third time that Plaintiffs have sought "emergency" or special consideration of their remand motion.  Both prior requests were denied in deference to the interest of efficient and consistent judicial resolution of recurring issues in an MDL proceeding.  Plaintiffs' current request presents nothing new, and it should likewise be denied.

Shortly after removal, Plaintiffs filed a motion for emergency hearing of the remand and joinder issues before Judge Hinojosa.  (*See* Ex. 8 (Mot. for Emergency Hearing).)  After initially setting a hearing on Plaintiffs' request for emergency relief (*see* Ex. 9 (Notice of Hearing dated Feb. 8, 2005)), Judge Hinojosa later canceled the hearing, based largely on the pendency of Merck's motion to transfer the case to this MDL proceeding.  (*See* Ex. 10 (Southern District of Texas docket sheet); Ex. 11 (Minute Entry of May 31, 2005).)  Later, after the Judicial Panel on Multidistrict Litigation (JPML) had conditionally transferred the case to this MDL proceeding, Plaintiffs filed a motion to vacate the conditional transfer order based on the same remand and joinder issues asserted here.  (*See* Ex. 15 (Mot. to Vacate Conditional Transfer Order).)  The JPML denied Plaintiffs' request for special treatment and proceeded to transfer the case, noting

6

that this case "involve[s] common questions of fact" with other VIOXX cases and that transfer would "promote the just and efficient conduct of this litigation." (*See* Ex. 12 (Transfer Order of June 20, 2005).)

This Court should similarly deny Plaintiffs' attempt to obtain a short-fuse remand based on a hasty and incomplete consideration of issues involving fraudulent joinder of nondiverse doctors. The Plaintiffs' Steering Committee has already indicated that the joinder of nondiverse, prescribing doctors is usually baseless, and this issue is presented in pending remand motions filed in numerous other VIOXX cases in this MDL proceeding. Accordingly, as contemplated in the Court's June 23 Minute Entry, this Court should consider Plaintiffs' motion along with the remand motions in other cases involving joinder of nondiverse doctors so that the interests of judicial efficiency, fully-informed consideration, and consistent treatment of MDL cases may be served.

III.    **CONTRARY TO PLAINTIFFS' SUGGESTIONS, MERCK'S RE-REMOVAL OF THIS CASE WAS NOT A PROCEDURAL GAMBIT TO AVOID A TRIAL SETTING IN STATE COURT.**

In an attempt to divert the Court's attention from their own inequitable conduct concerning jurisdiction, Plaintiffs accuse Merck of re-removing this case in a desperate attempt to avoid a trial setting in state court. Contrary to Plaintiffs' suggestions, however, although the state court had initially set the case for trial beginning February 14, 2005, that setting was moot by the time of Merck's second removal. Before removal, Merck's counsel filed a verified motion for continuance to permit one of Merck's lawyers, Hon. Rene Oliveira, a member of the Texas House of Representatives, to attend the 2005 Texas legislative session. (Ex. 13 (Am. Motion of Merck & Co., Inc. to Continue Trial Setting).) Merck had also previously filed a motion for continuance based on the need for both sides' experts to review forthcoming data from the clinical trial that led to the voluntary withdrawal of VIOXX from the market.

7

Under Texas law, a state court has no discretion to deny a motion for legislative continuance if (1) the motion is supported by an affidavit from the lawyer-legislator; and (2) the lawyer-legislator was employed at least 30 days before the trial setting. TEX. CIV. PRAC. & REM. CODE § 30.003(c); *see also id.* § 30.003(f) (noting that a legislative continuance "is one of right"). The statute provides that, when a motion for legislative continuance is filed, the state "court shall continue the case until 30 days after the date on which the legislature adjourns." *Id.* § 30.003(b).

Representative Oliveira's request for legislative continuance was filed in state court on January 14, 2005, demonstrating that he was employed by Merck at least 30 days before the February 14 trial setting. (*See id.*) The motion was supported by the affidavit required under Section 30.003(d). Accordingly, Plaintiffs' suggestion that Merck's Second Notice of Removal was a "procedural 'Hail Mary'" (Plfs. Motion for Emergency Hearing at 5) to disrupt a February trial setting in state court is unfounded. To the contrary, from the outset of this litigation, Merck has consistently contended that it belongs in a federal forum. Instead, Merck's re-removal on January 18th was triggered by *Plaintiffs'* tactics—namely, Dr. Simonini's testimony recanting his prior opinion and plaintiffs' subsequent amendment of the complaint—which together demonstrated that the doctors had been fraudulently joined and that federal jurisdiction was proper. Thus, there is nothing unusual about the timing of Merck's Second Notice of Removal, which in accordance with 28 U.S.C. § 1446(b) was filed within 30 days of the date on which Plaintiffs filed their amended pleading dropping their negligent misdiagnosis claim against the doctor defendants. Accordingly, Merck's Second Notice of Removal represents a legitimate, appropriate, and timely invocation of federal diversity jurisdiction based on significant factual and procedural developments that revealed Plaintiffs' jurisdictional gamesmanship and rendered

8

this case re-removable.  Moreover, because the ongoing expert analysis now being coordinated through this MDL proceeding is directly relevant to the *Garza* Plaintiffs' claims, the suggestion that this case is ready for an immediate trial is simply inaccurate.

## CONCLUSION

Plaintiffs have made no showing that an emergency hearing or expedited relief on their motion to remand are justified.  Rather, Plaintiffs' motion advances an argument similar to that being advanced in remand motions pending in numerous other VIOXX cases—and it is an argument which the Plaintiffs' Steering Committee has conceded should not prevail in most cases.  Accordingly, the Court should deny Plaintiffs' motion for emergency hearing and should proceed to consider Plaintiffs' remand motion in coordination with the other remand motions presenting the issue of whether nondiverse, prescribing doctors can properly be joined in VIOXX cases to defeat diversity.

Respectively submitted,

*Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Anthony M. DiLeo, 4942
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN
L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

9

779845v.1

Rene O. Oliveira
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Road, Suite 9
Brownsville, TX  78520-8718
(956) 542-5666
Telecopy (956) 542-0016

Richard L. Josephson
State Bar No. 11031500
Federal ID No. 04614
BAKER BOTTS L.L.P.
910 Louisiana
Houston, Texas 77002
(713) 229-1460
Telecopy: (713) 229-1522

Attorneys for Merck & Co., Inc.

OF COUNSEL:
Travis J. Sales
State Bar No. 17532080
Federal ID No. 9173
BAKER BOTTS L.L.P.
910 Louisiana
Houston. Texas 77002
(713) 229-1234
Telecopy (713) 229-1522

Jaime A. Saenz
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Brownsville, TX  78522-2155
(956) 542-7441
Telecopy (956) 541-2170

Baldemar Garza
State Bar No. 07730300
Federal ID No. 8646
LAW OFFICE OF BALDEMAR GARZA
200 East Second Street
Rio Grande City, Texas 78582
(956) 487-7131
Telecopy (956) 487-8806

779845v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Opposition to Plaintiffs' Motion for Emergency Hearing has been served on Liaison Counsel, Russ Herman by hand delivery and by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 12th day of July 2005.  I further certify that the foregoing was served on the following plaintiffs' counsel via fed ex on this 12th day of July, 2005:

Joe Escobedo, Jr.  (*byFedEx*)
David H. Hockema
Mauro F. Ruiz
HOCKEMA, TIPPIT & ESCOBEDO, L.L.P.
1 Paseo del Prado, Bldg. 101
Edinburg, Texas 78539-9672

Mike Mills  (*by FedEx*)
ATLAS & HALL
Professional Arts Bldg.
818 Pecan Boulevard
McAllen, TX  78502

Alberto A. Munoz, II  (*by FedEx*)
LAW OFFICE OF ALBERTO A. MUNOZ, II, P.C.
1 Paseo del Prado, Bldg. 101
Edinburg, Texas 78539

Kathryn Snapka  (*by FedEx*)
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 North Carancahua, Suite 1511
Corpus Christi, TX 78403

Ronald G. Hole  (*by FedEx*)
HOLE & ALVAREZ, L.L.P.
612 W. Nolana, Suite 370
McAllen, TX 78504

11

779845v.1