FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 13 PM 3: 58

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL Docket No. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION L |
| | ) | |
| | ) | JUDGE FALLON |
| | ) | |
| | ) | MAG. JUDGE KNOWLES |
| | ) | |

## THE UNITED STATES' STATEMENT OF INTEREST

Pursuant to 28 U.S.C. § 517, the United States Department of Justice respectfully files this Statement of Interest on behalf of the Department of Health and Human Services ("HHS"), the Department of Defense ("DOD"), the Department of the Army, the Department of the Navy, the Department of the Air Force, the Indian Health Service ("IHS") and the Department of Veterans Affairs ("VA").[1] The United States files this Statement of Interest to advise the Court and the parties of the United States' rights under federal law to recover amounts expended for

---

[1] By filing this Statement of Interest, the United States does not intend to waive its right to intervene in this action at a later date if intervention becomes necessary to protect its rights. See 42 U.S.C. § 2651(b); 42 U.S.C. 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.26(b).

medical care provided to certain Plaintiffs in this action, and the United States' desire to discuss global settlement possibilities.

Numerous federal agencies may have paid for or provided medical care allegedly related to the ingestion of VIOXX. HHS administers the Medicare program, which pays for medical care for the aged, disabled, and persons suffering from end stage renal disease. Some government employees, former government employees, and their families receive health care services through various federal programs, including programs administered by the VA, IHS, and DOD. Pursuant to federal statutes and regulations, all government health care programs minimize costs to the taxpayers by ensuring that those who cause beneficiaries' injuries reimburse the United States for the cost of medical care.

## I. THE MEDICARE SECONDARY PAYER PROVISIONS, INCLUDING RECENT CLARIFYING AMENDMENTS, PROVIDE FOR THE RECOVERY OF CONDITIONAL MEDICARE PAYMENTS FROM THE DEFENDANTS

### A. Factual Background

The United States is entitled to recover costs of medical care paid by the United States relating to the ingestion of VIOXX manufactured, distributed or sold by the defendants. No one can dispute, particularly with respect to the purpose of this drug, *i.e.*, alleviating the pain of arthritis, that there will be an unusually high percentage of Plaintiffs for whom Medicare paid medical expenses, pursuant to the statutory framework discussed below. In this instance, as an accommodation provided by statute, Medicare paid benefits for certain of the Plaintiffs because they were Medicare eligible and because payment could not be expected promptly under a liability insurance policy or plan. As outlined below, such payments are conditional, and any

subsequent payment for, <u>inter alia</u>, medical expenses, constitutes an overpayment; the United States is entitled to be reimbursed for all amounts the defendants are "required or responsible to pay."

### B. Statutory Background

The Centers for Medicare and Medicaid Services ("CMS") administers the Medicare program, which pays for medical care for the aged, disabled, and persons suffering from end stage renal disease. For the first fifteen years of the Medicare program's existence, Medicare generally paid for medical services regardless of whether the beneficiary was also covered by another health plan. <u>See</u> Social Security Amendments of 1965, Pub. L. No. 89-97, § 1862(b), 79 Stat. 286. Beginning in 1980, however, Congress enacted a series of amendments "designed to make Medicare a 'secondary' payer with respect to such plans." <u>Health Ins. Ass'n of America, Inc. v. Shalala</u>, 23 F.3d 412, 414 (D.C. Cir. 1994) ("<u>HIAA</u>"); <u>accord</u> <u>U.S. v. Baxter International, Inc.</u>, 345 F.3d 866, 888-89 (11 Cir. 2003) ("<u>Baxter</u>"). The amendments have been codified at 42 U.S.C. § 1395y(b)(2) and are referred to as the Medicare Secondary Payer (or "MSP") provisions.

The MSP provisions were designed to curb skyrocketing health care costs and to preserve the fiscal integrity of the Medicare system. <u>Fanning v. United.States</u>, 346 F.3d 386, (3d Cir. 2003) ("<u>Fanning</u>", citing <u>Zinman v. Shalala</u>, 67 F.3d 841, 843, 845 (9th Cir. 1995)); H.R. Rep. No. 96-1167, at 352 (1980), <u>reprinted in</u> 1980 U.S.C.C.A.N. 5526, 5717. "In a nutshell, the MSP declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds," <u>Baxter</u>, 345 F.3d at 875, by requiring Medicare beneficiaries to exhaust all

available insurance coverage before resorting to their Medicare coverage. See United States v. Rhode Island Insurers' Insolvency Fund, 80 F.3d 616, 618 (1st Cir. 1996).

Toward that end, Congress established two principal directives. First, the MSP provisions direct that Medicare should not make payment under certain circumstances. The provisions direct that Medicare should not pay benefits when "payment has been made or can be expected to be made promptly * * * under a * * * liability insurance policy or plan (including a self-insured plan)." 42 U.S.C. § 1395y(b)(2)(A). This prohibition "is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead." Evanston Hosp. v. Hauck, 1 F.3d 540, 544 (7th Cir. 1993) (citation omitted); accord, Fanning, 346 F.3d at 389.

Second, the MSP provisions require that, under certain circumstances, Medicare must be reimbursed for the payments that it makes. If payment from another insurer (including a self-insurer) cannot reasonably be expected to be made promptly, such as in this case, Medicare is authorized to make payment to accommodate its beneficiaries. See Baxter, 345 F.3d at 875 (citing Cochran v. HCFA, 291 F.3d 775, 777 (11th Cir. 2002)). The statute specifies, however, that such Medicare payments are conditional and subject to reimbursement to the appropriate Medicare Trust Fund once the federal government receives notice that a third-party payment has been or could be made with respect to the same item or service. 42 U.S.C. § 1395y(b)(2)(B)(i); Blue Cross and Blue Shield of Texas v. Shalala, 995 F.2d 70,73 (5th Cir. 1993). When another insurer makes a payment with respect to medical care for which the Medicare program has already paid, this second payment constitutes a Medicare overpayment by operation of the MSP

provisions.[2]  See 42 C.F.R. § 405.704(b)(13); Buckner v. Heckler, 804 F.2d 258, 259 (4th Cir. 1986); H.R. Rep. No. 98-432 (Vol. 1), at 1803 (1984), reprinted in 1984 U.S.C.C.A.N. 697, 1417.  Congress very clearly intended Medicare to recoup overpayments to the extent possible, and the Eleventh Circuit noted Congress's frustration with Medicare's inability to identify all Medicare secondary payer situations, and disappointment that Medicare was not recouping more from primary payers.  Baxter, 345 F.3d at 891 n. 16.

If the reimbursement required under the MSP provisions is not made, the MSP provisions authorize the United States to bring an action against "any entity which is required or responsible * * * to make payment * * * under a primary plan" and against "any other entity (including a physician or provider) that has received payment from that entity." 42 U.S.C. § 1395y(b)(2)(B)(ii).  In this case, it would appear that the defendants constitute a primary plan to the extent that they are self insured and pay into a settlement fund, and as an entity that "received payment" from a primary plan to the extent that they should be reimbursed for any amounts paid into a settlement fund.  Id. at 908.  The MSP provisions also give the United States a separate right of subrogation.  See id. § 1395y(b)(2)(iii).  The United States may collect double damages from any entity responsible to make payment under a primary plan which fails to provide for primary payment or appropriate reimbursement to the United States.  42 U.S.C. 1395y(b)(2)(B)(ii); 42 C.F.R. 411.24(c)(2).

---

[2] The MSP provisions afford beneficiaries who dispute Medicare's claim for reimbursement with a carefully crafted administrative process.  Fanning, 346 F.3d at 400 (noting that administrative review of MSP overpayments and waiver determinations is clearly provided for by statutory scheme).

C. **The Medicare Prescription Drug, Improvement, and Modernization Act of 2003**

The recently passed Medicare bill specifically amended several of the MSP provisions that have been the subject of litigation. Medicare Prescription Drug, Improvement, and Modernization Act of 2003, H.R. Conf. Rep. No. 391, 108th Cong., 1st Sess. 162 (2003).

1. Conditional Payments Must be Reimbursed to the Medicare Trust Fund.

With respect to the "prompt payment issue," the new statutory language clarifies Congress' original intent that Medicare be reimbursed for conditional payments when the beneficiary cannot expect "prompt payment" from another source:

> (B) Repayment required
>
>> (i) AUTHORITY TO MAKE CONDITIONAL PAYMENT. - The Secretary may make payment under this title with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

Id. at 161.

2. A Primary Plan May Not Extinguish Its Obligations Under the MSP Provisions By Paying the Wrong Party

A primary plan cannot extinguish its obligations under the MSP provisions by paying the wrong party (i.e., by paying the Medicare beneficiary or the provider instead of reimbursing the Medicare Trust Fund.). Id.

     3.     <u>No Finding or Admission of Liability Is Required To Trigger the Primary Plan's Responsibility To Make Payment</u>

A primary plan's responsibility to make payment with respect to the same item or service paid for by Medicare may be demonstrated, among other ways, by a judgment, or a payment conditioned upon the recipient's compromise, waiver or release of items or services included in the claim against the primary plan or its insurer. No finding or admission of liability is required. A settlement, judgment, award, or release is not required if an entity makes payment without a requirement that the recipient execute a settlement, judgment, award, or release. <u>Id</u>.

     4.     <u>Clarification of the Entities/Persons From Whom Medicare Can Seek Reimbursement of the Conditional Payments</u>

The Medicare program may obtain reimbursement from a primary plan, from any or all of the entities responsible for or required to make payment under a primary plan, and also from any entity that has received payment from the proceeds of a primary plan's payment. <u>Id</u>. at 162.

     5.     <u>Clarification of the Definition of "Self-Insured"</u>

The new amendments leave no doubt about what constitutes a self-insured plan:

> An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

<u>Id</u>. at 161.

Thus, recent case law and legislative clarifications leave no doubt that in this case, whether defendants constitute self-insureds or "an entity that received payment" or both, they must repay Medicare for conditional payments made to Medicare beneficiary plaintiffs that relate to the ingestion of VIOXX.

## II.  MCRA PROVIDES FOR OTHER FEDERAL AGENCIES TO RECOVER THE COST OF PROVIDING OR PAYING FOR BENEFICIARY'S HEALTH CARE.

The Medical Care Recovery Act ("MCRA"), 42 U.S.C. §§ 2651-53, likewise provides the United States with a broad range of rights against various parties to recover amounts it expends for medical care when a liability settlement takes place.  The MCRA provides the United States with a right to recover from tortfeasors the "reasonable value" of medical treatment furnished or paid for by the United States to persons injured or diseased because of a tort.  42 U.S.C. § 2651.  The MCRA provides the United States with an independent right to recover, as well as a subrogation right.  See 42 U.S.C. § 2651(a).

## III. EARLY DISCUSSIONS MAKE A GLOBAL SETTLEMENT MORE LIKELY

The United States believes that in this case, the parties have a very real chance of a global settlement.  The factors that contribute to high chances of such a settlement in this case include (a) involvement of CMS and other government agencies early on before an actual settlement has been negotiated between plaintiffs and defendants, (b) open communication among plaintiffs, defendants and the United States, within the confines of the privacy laws, about which plaintiffs are beneficiaries, and (c) the commitment of the parties to proceed with reasonable and fair alternatives that might be available to the parties to facilitate a settlement, such as modeling.Clearly settlement of the United States' claims can benefit all parties and avoid unnecessary delays in the plaintiffs receiving any settlement monies.

The United States would like to begin discussions with the parties as soon as practicable.

Respectfully submitted,

Jim Letten
United States Attorney

Sharon D. Smith
Assistant United States Attorney
Hale Boggs Federal Building
500 Poydras Street, Rm. B210
New Orleans, LA 70130
(504) 680-3004

PETER D. KEISLER
Assistant Attorney General

J. CHRISTOPHER KOHN
SANDRA P. SPOONER
CATHY J. BURDETTE
Department of Justice
Civil Division
Ben Franklin Station
P.O. Box 875
Washington, DC  20044
(202) 616-2316

Attorneys for United States of America

Dated: July 13, 2005

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL Docket No. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION L |
| | ) | |
| | ) | JUDGE FALLON |
| | ) | |
| | ) | MAG. JUDGE KNOWLES |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that the United States's Statement of Interest has been served on liaison counsel, Russ Herman and Phillip Wittmann by U.S. Mail and email in accordance with PreTrial Order No. 8, as modified per instructions of the Court, on this 13th day of July, 2005.

Cathy J. Burdette