FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 14 PM 2: 39

LORETTA G. WHYTE
CLERK

COPY IN CHAMBERS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
      PRODUCTS LIABILITY LITIGATION

§
§
§
§
§
§
§
§

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

§   §   §   §   §   §   §   §

This Document Relates To:   *C A  05— 2586 L*

*FELICIA GARZA, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR.**, **LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA,** and **GLORIA GARZA**, individually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.** vs. **HEART CLINIC, P.A., MICHAEL D. EVANS, M.D., JUAN D. POSADA, M.D.,** and **MERCK & CO., INC.***

## PLAINTIFFS' OPPOSED MOTION TO REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes **FELICIA GARZA**, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR.**, **LEONEL GARZA, JR.**, **LUIS JAIME GARZA**, **LAURO GUADALUPE GARZA**, and **GLORIA GARZA**, Individually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.**, Plaintiffs pursuant to LR 7.1E file this, their (Opposed) Motion To

ORIGINAL

Remand, and would show the Court as follows:

## I. FACTUAL BACKGROUND

This is a medical malpractice/products liability case arising from the death of Leonel Garza, Sr. (hereafter "Mr. Garza"). Mr. Garza received routine medical treatment for a heart condition from cardiologists, Dr. Michael D. Evans and Dr. Juan D. Posada (hereafter "Defendant Doctors"). During the spring of 2001, Defendant Doctors treated Mr. Garza with Vioxx samples. During the course of his Vioxx treatment, on April 21, 2001, Mr. Garza suffered a fatal heart attack. Vioxx is manufactured, marketed, and placed into the stream of commerce by Defendant, Merck & Co. Inc.

## II. PROCEDURAL HISTORY

Merck removed this case a second time on Tuesday, January 18th, to delay and avoid trying this case on February 14, 2005. Merck bases its removal on the deposition testimony of one of Plaintiffs' experts (Dr. Simonini), yet Merck waited a month after that deposition - until it was more likely that the trial date would be affected - before filing this second removal. During the pendency of this second removal, the JPML sought to transfer the instant case to this Court as a "tag along" matter. Plaintiffs filed a motion to vacate on April 2, 2005, which was later denied on June 20, 2005. Consequently, Plaintiffs file this their Motion To Remand. Concurrent with this filing, Plaintiffs also file their Memorandum in Support and a Motion for Emergency Hearing and for Oral Argument.

## III. SUMMARY OF PLAINTIFFS' ARGUMENT

Pursuant to 42 U.S.C. § 1446(b), Plaintiffs would respectfully show that this Honorable Court's review of this second removal is limited to whether application of *Tedford's* equitable tolling exception is warranted in the instant case. Plaintiffs would show the Court that it is not and that the general rule barring removal outside one-year period controls. Alternatively, should the Court's inquiry go further, it is Plaintiffs' position that, as in the first removal, Plaintiffs continue to have a "possibility of recovery" against the non-diverse Defendant Doctors. As more fully shown in Plaintiffs' Memorandum in Support of Remand, this case does not warrant equitable tolling principles established by the 5th Circuit in *Tedford v. Warner - Lambert Co., 327 F.3d 423 (5th Cir. [Tex.] 2003)*. In sum, it is Plaintiffs' position that:

A.   **The general rule precluding removal outside the one-year period controls this case - There are no facts, even remotely, analogous to *Tedford,* warranting "equitable tolling;" and**

B.   **Nothing has changed since Merck's first removal: There still exists today a "possibility of recovery" by Plaintiffs against the Defendant Doctors.**

## IV. CONCLUSION

Based on the above and as more fully shown in the Memorandum in Support of Remand, the Garza family requests that the Court grant its Motion to Remand.

Respectfully submitted,

**HOCKEMA, TIPPIT & ESCOBEDO, L.L.P.**
1 Paseo del Prado, Bldg. 101
Edinburg, TX 78539-9672

*Page 3 of 6*

*Mailing address:*
P.O. Box 720540
McAllen, TX 78504-0540
Telephone: (956) 631-9112
Telecopier: (956) 630-9472

BY: _____
Joe Escobedo, Jr.
State Bar No. 06665850
Federal Bar No. 12203
Attorney in Charge
David H. Hockema
State Bar No. 16687200
Federal Bar No. 1204
Attorney in Charge
Mauro F. Ruiz
State Bar No. 24007960
Federal Bar No. 23774

Kathryn Snapka
State Bar No. 18781200
**S N A P K A ,     T U R M A N     &
WATERHOUSE, L.L.P.**
P.O. Drawer 23017
Corpus Christi, Tx 78504
Telephone: (361) 888-7676
Telecopier: (361) 884-8545

**CO-COUNSEL:**
Alberto A. Munoz, II
State Bar No. 14669800
**LAW OFFICE OF ALBERTO A. MUNOZ, II, P.C.**
1 Paseo del Prado, Bldg. 101
Edinburg, TX 78539
*Mailing address:*
P.O. Box 9600
McAllen, TX 78502-9600
Telephone:  (956) 631-3444
Telecopier:  (956) 631-9187

Mike Mills
State Bar No. 14163500
Federal Bar No. 1211
**ATLAS & HALL**
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Telecopier:  (956) 686-6109

**ATTORNEYS FOR PLAINTIFFS FELICIA GARZA**, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR., LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA**, and **GLORIA GARZA**, lindividually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs contacted Mr. Sales, Merck's counsel, of the law firm of Baker Botts on Friday, July 1, 2005; and he opposed the merits of the motion. Counsel for Plaintiffs also contacted Mr. Hole, counsel for Defendants, Drs. Evans and Posada, who opposed the merits of Plaintiffs' motion as well.

David H. Hockema
Joe Escobedo, Jr.
Mauro F. Ruiz

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of **July, 2005**, a true and correct copy of the above and foregoing **PLAINTIFFS' OPPOSED MOTION TO REMAND** was served upon counsel of record:

Mr. Russ M. Herman
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Ave., Suite 100
New Orleans, LA 70113

Mr. Phillip A. Wittmann
Stone, Pigman, Walther, Wittmann, L.L.C.
546 Carondelet Street
New Orleans, LA 70130

David H. Hockema
Joe Escobedo, Jr.
Mauro F. Ruiz

*Page 6 of 6*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX           § <br>     PRODUCTS LIABILITY LITIGATION  § <br> §<br>§<br>§<br>§ | MDL NO. 1657 <br><br> SECTION L <br><br> JUDGE FALLON |

§    §    §    §    §    §    §    §        **MAG. JUDGE KNOWLES**

**This Document Relates To:** *05-2586 L*

*FELICIA GARZA, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR., LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA,** and **GLORIA GARZA**, individually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.** vs. **HEART CLINIC, P.A., MICHAEL D. EVANS, M.D., JUAN D. POSADA, M.D.,** and **MERCK & CO., INC.***

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF ITS OPPOSED MOTION TO REMAND**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes **FELICIA GARZA**, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR., LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA,** and **GLORIA GARZA**, Individually, and as heirs to the **ESTATE OF**

*Page 1 of 21*    ORIGINAL

**LEONEL GARZA, SR.**, Plaintiffs, pursuant to LR 7.4, file this, their (Opposed) Motion To Remand, and would show the Court as follows:

### I. FACTUAL BACKGROUND

This is a medical malpractice/products liability case arising from the death of Leonel Garza, Sr. (hereafter "Mr. Garza"). Mr. Garza received routine medical treatment for a heart condition from cardiologists, Dr. Michael D. Evans and Dr. Juan D. Posada (hereafter "Defendant Doctors"). During the spring of 2001, Defendant Doctors treated Mr. Garza with Vioxx samples. During the course of his Vioxx treatment, on April 21, 2001, Mr. Garza suffered a fatal heart attack. Vioxx was manufactured, marketed, and placed into the stream of commerce by Defendant, Merck & Co. Inc.

### II. PROCEDURAL HISTORY

The procedural history is as follows:

On or about March 10, 2003, Plaintiffs filed suit against all Defendants (Merck and Co., Inc. Dr. Evans and Dr. Posada) in the 229th Judicial District Court of Starr County, Texas. *See* **Exhibit A**. Defendants, in turn, filed Motions to Transfer Venue and Original Answers. Shortly thereafter, on April 14, 2003, Merck filed its first notice of Notice of Removal.

On or about April 23, 2004, after U.S. District Court Judge Ricardo Hinojosa's Court remanded the case, the parties entered an Agreed Order Setting Jury Trial (*See* **Exhibit B**), which provided for a Monday, November 8, 2004, trial setting and an alternative trial date of Monday, February 14, 2005.

Merck has moved to continue the trial settings in this case five (5) times.

Merck filed its **first** continuance for continuance under the guise of a Motion to Adopt February 14th, 2005, Trial Setting.  *See* **Exhibit C**.  The continuance was granted by Starr County District Judge Gabert. On or about September 15th, 2004, the Court issued a Docket Control Order controlling all pre-trial matters leading up to the February 14th, 2005, trial setting.  *See* **Exhibit D**.

On September 30, 2004, Merck  recalled Vioxx based on the findings in a study known as APPROVe, which sought to determine whether Vioxx was a viable treatment for colon polyps.  *See* **Exhibit E**.

Arguing that the APPROVe study findings were preliminary, Merck, in October, 2004, filed a **second** Motion to Continue, seeking to pass  the February 14th, 2005, trial setting.  *See* **Exhibit F**.

Under Texas laws, attorneys elected to the Texas Legislature are afforded the benefit of a "Legislative Continuance," by which active trial settings can be put off.  *See* **Exhibit W**.

Plaintiffs' ask to the Court to take judicial notice that on Tuesday, January 11, 2005, the Texas Legislature convened.

On January 12, 2004, Merck filed a Notice of Appearance adding State Senator Chuy Hinojosa as counsel.  Senator Hinojosa's so-called participation served as the basis of Merck's **third** Motion to Continue the February 14th trial setting.  *See* **Exhibit G**.  *See* **also Exhibit W**.  After some local media exposure, on Thursday, January 13th, 2005, Senator Hinojosa withdrew Merck's Motion for Continuance, filing a Notice of Withdrawal of Merck & Co. Inc.'s Motion to Continue Trial Setting on the ground that the Motion for

Continuance was signed by "mistake." *See* **Exhibit H**. *See* also **Exhibit W**. Merck at this time, of course, was already represented by three law firms: Baker Botts, L.L.P.; Rodriguez, Colvin, Chaney & Saenz, L.L.P.; and the Law Offices of Baldemar Garza.

Refusing to throw in the towel, Merck's **fourth** Motion to Continue was filed on Friday, January 14th, 2005, by another last-minute lawyer/legislator, State Representative Rene Oliveira of Brownsville and his firm, Roerig, Oliveira & Fisher. *See* **Exhibit I**. *See also* **Exhibit X**. Interestingly, according to the Notice of Appearance, Rep. Oliveira, who (like Senator Hinojosa) had not participated during any phase of this case, was to serve as "lead counsel" and (like Senator Hinojosa) his involvement was in no way for purposes of delaying the trial. *See also* **Exhibit X**. Concurrent with Merck's fourth Motion to Continue, Merck filed its **fifth** and final (to date) continuance motion, titled Merck & Co. Inc.'s Supplemental Motion for Continuance. *See* **Exhibit J**. It goes without saying that Merck's 11th hour, deadline-beating continuance motions targeted the mandatory thirty (30) day-deadline for filing continuance motions. See attached Texas Civil Practice and Remedies Code §30.003.

Not to be outdone by the suspicious, two lawyer/legislator-based Motions for Continuance, Merck, in what can only be characterized as a procedural "Hail Mary", removed this case a second time on Tuesday, January 18th, to delay and avoid trying this case on February 14, 2005. *See* **Exhibit K**. Interestingly, Merck bases its removal on the deposition testimony of one of Plaintiffs' experts (Dr. Simonini), yet Merck waited a month after that deposition - until it was more likely that the trial date would be affected - before filing this second removal. During the pendency of this second removal, the JPML sought

to transfer the instant case to this Court as a "tag along" matter.  Plaintiffs filed a motion

to vacate on April 2, 2005, which was later denied on June 20, 2005.[1]  *See* **Exhibit "V"**.

Consequently, Plaintiffs file this their Motion To Remand.  Concurrently, with this filing,

Plaintiffs also file a Motion for Emergency Hearing and for Oral Argument.

## III. EXHIBITS

Plaintiffs incorporate by reference the following exhibits in support of its Motion to

Remand:

A.    Plaintiffs' Original Petition;

B.    Agreed Order Setting Jury Trial;

C.    Defendant Merck & Co., Inc.'s Motion to Adopt February 14, 2005 Trial Setting and Accompanying Deadlines;

D     Docket Control Order;

E     Merck News Release;

F     Merck & Co., Inc.'s Motion for Continuance dated October 22, 2004;

G.    Motion of Merck & Co., Inc. to Continue Trial Setting dated January 12, 2005;

H.    Notice of Withdrawal of Motion for Legislative Continuance;

I.     Amended Motion of Merck & Co., Inc. to Continue Trial Setting;

J.     Merck's Supplemental Motion for Continuance;

K.    Defendant Merck & Co., Inc.s Second Notice of Removal;

L.     Plaintiffs' Second Amended Original Petition;

M.    Affidavits of Jerry W. Bush (2) and Americo Simonini (1);

---

[1]The JPML in its Transfer Order noted, "Whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay.  See Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38."  See **Exhibit V**.

N.      Deposition of Merlin Wilson;

O.      Deposition of John M. Gaziano;

P.      Plaintiffs' Fourth Supplemental Responses to All Defendants' Rule 194
        Requests for Disclosures;

Q.      Correspondence dated November 24, 2004, from Ron G. Hole to Mauro F.
        Ruiz;

R.      Correspondence dated January 14, 2005, from Ron G. Hole to Mauro F.
        Ruiz;

S.      Notice of Claim letters;

T.      Doctors' Responses to Discovery Propounded by Plaintiffs and Deposition
        of Dr. Evans;

U.      Agreed Order Denying Defendant Juan D. Posada, M.D.'s Motion for Partial
        Summary Judgment; and

V.      JPML order denying Plaintiffs' Motion To Vacate;

W.      Newspaper Clippings Re: Senator Hinojosa dated January 13, 2005 and
        January 14, 2005; and

X.      Newspaper Clipping Re: Representative Oliveira dated January 15, 2005;

Y.      Orders from U.S. District Court – Southern District of Texas - Corpus Christi
        Division.

## IV. AUTHORITIES CITED

Plaintiffs rely on the following authorities in support of its Motion to Remand:

1.      Texas Civil Practice & Remedies Code § 30.003;

2.      *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5th Cir. 1992);

3.      *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. Sept.
        10, 2004);

4.      *Hartley v. CSX Transp. Inc.* 187 F.3d 422, 426 (4th Cir. 1999);

5.      28 U.S.C. § 1446 (b);

6.   28 U.S.C. § 1447 (d);

7.   *Tedford v. Warner - Lambert Co.*, 327 F.3d 423 (5th Cir. [Tex.] 2003);

8.   *Naficy v. Braker*, 642 S.W.2d 282, 282-83 (Tex. App. – Houston 1982, writ ref'd n.r.e.);

9.   *Haskett v. Butts*, 83 S.W.3d 213 (Tex. App. – Waco 2002, pet. denied) ;

10.  *Sloan v. Molandes*, 32 S.W.3d 745 (Tex. App. – Beaumont 2000, no pet.);

11.  *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir.  2002);

12.  *Doris Clark v. Nestle USA, Inc.*, 2004 WL 1661202 (Jul. 22, 2004);

13.  *Foster v. Landon and Hertz Corporation, d/b/a Hertz Rent A Car*, 2004 WL 2496216 (Nov. 4, 2004);

14.  *Hart v. Bayer Corp.* 199 F.3d 239, 246 (5th Cir.2000);

15.  *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003); and

16.  Texas Rule of Civil Procedure 45, 47.

## V. SUMMARY OF PLAINTIFFS' LEGAL ARGUMENT

Plaintiffs would respectfully show that this Honorable Court's review of this second removal is limited to whether application of *Tedford's* equitable tolling exception is warranted in the instant case.  Plaintiffs would show the Court that it is not and that the general rule barring removal outside one-year period controls.  Alternatively, should the Court's inquiry go further, it is Plaintiffs' position that, as in the first removal, Plaintiffs continue to have a "possibility of recovery" against the non-diverse Defendant Doctors.

## VI. LEGAL ARGUMENT & ANALYSIS

**A.   The general rule precluding removal outside the one-year period controls this case - There are no facts, even remotely, analogous to**

*Tedford,* warranting "equitable tolling;" and

**1.    28 U.S.C. § 1446 (b): The One-Year Rule.**

This second removal by Merck is untimely.  In what is often referred as "the one year rule," §1446(b) prohibits removal of a case more than one year after the commencement of the action.  Plaintiffs' lawsuit was originally filed in state district court on March 10, 2003.  Consequently, Merck's removal is untimely in that it is was filed over one year from the commencement of the case.

**2.    28 U.S. C. § 1447 (d): No Second Bite.**

Merck's second removal second-guesses Judge Hinojosa's original Order of Remand.  28 U.S.C. §1447(d) prohibits an order remanding a case to the state court from being reviewed on "appeal" or "otherwise."  Merck's second removal operates as an "appeal" of Judge Hinojosa's Order, and further violates the "otherwise" language in §1447(d).

**3.    Tedford v. Warner - Lambert Co., 327 F.3d 423 (5th Cir. [Tex.] 2003).**

Merck relies on *Tedford* as the basis of this second removal.  Its reliance, however, is entirely misplaced and inapplicable to the instant case.  Simply stated, the Fifth Circuit "equitabl[y] toll [ed]" § 1446(b)'s one-year removal limitations period in *Tedford* because that case presented rare and exceptional facts whereby counsel for the plaintiff engaged in blatant forum manipulation.

**a.    *Burden of Proof.***

The Fifth Circuit has held that the party who invokes equitable tolling bears the burden of proof.  See *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir.  2002) (Plaintiff

sought tolling of the EEOC's 45 day rule for informal counseling).  Equitable tolling applies

in "rare and exceptional circumstances." See *Id*. citing to *Davis v. Johnson*, 158 F.3d 806,

811 (5th Cir. 1998).  Courts grant requests for tolling where a party is "actively misled" or

is "prevented in some extraordinary way from asserting his rights."  See *Id*. citing to *United

States v. Patterson*, 211 F. 3d 927 (5th Cir. 2000).  Merck's burden is a heavy one.  There

is no evidence that the conduct of Plaintiffs or its attorneys "actively misled" or prevented

Merck from asserting its "rights."

      **b.**    ***Tedford's Rare and Exceptional Facts.***

    Without having to speculate, one can easily conclude that the procedural posture

of *Tedford* was entirely choreographed for the sole purpose of defeating diversity and

manipulation of the removal statute.  In *Tedford*, the plaintiffs sued two defendants,

Warner-Lambert and a non-diverse physician. The plaintiffs, however, had no cognizable

claim against the non-diverse physician: (1) Tedford had not been treated by the non-

diverse physician despite suggesting treatment in her pleadings, and (2) Tedford also filed

her claim in an improper venue.  See *Tedford*, 327 F.3d at 425, 427.  Further, only three

(3) hours after counsel for the plaintiffs learned of the defendant's intended removal, the

plaintiff sued her own treating physician, a non-diverse defendant. The treating physician,

however, did not receive proper notice under the Texas Medical Liability and Insurance

Improvement Act, pre-requisite in Texas to maintain a claim against a physician.  The

plaintiff also did not engage in any discovery against the treating physician.

    Despite Warner-Lamberts' motion that both physicians's were fraudulently joined,

the Court remanded the action.  <u>Before</u> expiration of the one-year anniversary of the

commencement of her lawsuit, Tedford's attorney signed and <u>post</u>-dated a Notice of Non-

Suit as to her treating physician without notifying Warner-Lambert.  Once the one year anniversary had expired,  Warner-Lambert was notified of the Notice of Non-Suit.  Ten days after the one-year removal  limitation, Warner-Lambert removed the case for a second time.

*Tedford* is easily distinguishable from the instant case.

### c.   *No Rare/Exceptional Conduct In the Instant Case.*

Merck argues that *Tedford* is applicable in this case because one of the Plainitffs' experts, Dr. Americo Simonini, changed his opinion concerning the defendant doctor's liability during his deposition in December of 2004.  What Merck fails to tell this court is that Plaintiffs had timely and properly designated another expert, Dr. Jerry Bush, to testify relating to the defendant doctor's breach of the standard of care in prescribing Vioxx to Mr. Garza, an individual with a history of cardiovascular illness.  *See* **Exhibit M**.  Merck's reliance on *Tedford* is also inappropriate for the following reasons.

Merck sought the consent of the Defendant Doctors.  If the fraudulent joinder was as clear as Merck would have this Court believe, there would have been no need to seek the "consent" of the Defendant Doctors.  Merck would have simply removed the case.

To Merck's dismay, the fact that Plaintiffs' expert changed his opinion is not (even remotely) analogous to *Tedford,* requiring this Court to exercise federal jurisdiction.  During the first removal, Plaintiffs presented U.S. District Judge Ricardo Hinojosa the opinions of two physicians who found the Defendant Doctors had breached the standard of care.  Their testimony served as the bases of the Court's decision to remand Plaintiffs' case, and

that is still the opinion of Dr. Bush.[2]  *See* **Exhibit M**.  Further, unlike *Tedford*, Plaintiffs

complied with the Texas Medical Liability and Insurance Improvement Act, providing both

Defendant Doctors with notice letters.  *See* **Exhibit S**.  Plaintiffs never abandoned their

claims against the Defendant Doctors, in fact, Plaintiffs have propounded formal, written

discovery to both Defendant doctors and have taken the deposition of Dr. Evans.  *See*

**Exhibits T**.  Moreover, Plaintiffs defeated Defendant Doctors' Motion for Summary

Judgement.  In fact, Counsel for the Defendant Doctors, Mr. Ron Hole, entered an

"Agreed" Order Denying Motion for Summary Judgment.  *See* **Exhibit U**.  Lastly, Plaintiffs

have even gone so far so as to cross-examine two of Merck's medical experts as to the

surprising position of Dr. Evans, who testified that even after the 2002 label change, he

would have no problem prescribing Vioxx to patients with known cardiovascular risk

factors.[3]  *See* **Exhibits N** and **O**.  There can be no doubt that Plaintiffs have actively

prosecuted their claims against the Defendant Doctors from the start.

      d.     *Cases from the U.S. District for the Eastern District of Louisiana Applying a Tedford Analysis.*

A Westlaw "citation" search of other federal courts' application of *Tedford* (currently

only Westlaw citations are available) reveals courts in the  U.S. District Court – Eastern

District of Louisiana, including this Honorable Court, have been presented with removals

where the Defendants urged application of *Tedford*'s equitable tolling exception.

Remanding both cases, the Court's were not presented with fact patterns which clearly

warranted application of equitable tolling.

---

[2]Defendant Merck has never deposed or sought to depose Dr. Bush.

[3]On April 11, 2002, the FDA instructed Merck to include in the package insert for Vioxx certain precautions based on the results of the VIGOR studies, including strong precautions relating to cardiovascular side effects.

In *Doris Clark v. Nestle USA, Inc.*, 2004 WL 1661202 (Jul. 22, 2004), the Defendant removed the case on the basis of alleged forum manipulation where the Plaintiff, after four years of litigation, sought to withdraw her earlier stipulation that the amount in controversy was less than the amount required for federal diversity jurisdiction. Based on the intended change in the amount and with less than three months before trial, Nestle USA urged application of equitable tolling. Considering *Tedford* and other pre-*Tedford* cases involving blatant forum manipulation, Judge Vance's Order noted that, "Although Clark's action could reflect an effort to manipulate the forum, the record here is less clear cut than the pattern of manipulation and the telltale, post-dated notice of non-suit in *Tedford*, the intentional delay of service in *Kinabrew*, or the open admission of forum manipulation in *Morrison*." See *Clark*, 2004 WL at 2. The Court remanded the case, holding Nestle had not been "vigilant in asserting its rights" under § 1444(b) and the equitable test for invoking estoppel. See *Id.*

Similarly, in *Foster v. Landon and Hertz Corporation, d/b/a Hertz Rent A Car*, 2004 WL 2496216 (Nov. 4, 2004), the Defendant urged application of the equitable tolling exception. The Defendant justified removal outside the one year period on the ground that the Plaintiff provided medical records, which would have shown the amount in controversy exceeded $75,000, and sent a demand letter until *after* the one year anniversary of the lawsuit. Despite recognizing the "suspicious" conduct "giving rise to an aroma of manipulation," this Court granted the plaintiff's motion to remand, noting that the case did "not present the egregious, clear pattern of forum manipulation." See *Foster*, 2004 WL at 2. This Court went on to explain Congress "intended to reduce the opportunity for removal after *substantial* progress has been made in state court." See *Foster*, 2004 WL at 2 citing

to *Tedford*, 327 F.3d at 427.  Lastly, drawing upon the egregious manipulation in *Tedford*, this Court explained its reluctance to engage in "speculation as to the cause of Plaintiff's conduct."

Like the Defendants in *Clark* and *Foster*, Merck has a heavy burden to meet.  The facts of this case, however, do not present the evidence of egregious forum manipulation justifying this second removal.

        e.    ***Merck's Justifications for Equitable Tolling Are An Excuse.***

This Court is already aware that Merck employs a  systematic policy of removing every state court Vioxx case.  It is not too far-fetched to expect Merck will also continue to remove cases a second time alleging *Tedford* forum manipulation as an excuse to avoid trial as it has done so in this case and others.  Plaintiffs would submit to this Court that Merck's comes to this proceeding with unclean hands.  Merck's conduct in hiring two lawyer/legislators to continue this case shortly before trial is more of a clear cut example of manipulation than an expert changing his opinions before trial.  Ironically, Merck's attempt to remove this case a second time is as unjust, manipulative and egregious as the plaintiff's conduct in *Tedford*, which fashioned the equitable tolling exception.

Based on the above, Plaintiffs would show the Court that there no facts to support federal jurisdiction based on *Tedford's* equitable tolling exception.

        **B.**    **Nothing has changed since Merck's first removal: There still exists today a "possibility of recovery" by Plaintiffs against the Defendant Doctors.**

Should the Court's inquiry go beyond a *Tedford* analysis, Merck's second removal is supported by misrepresentations to this Court solely calculated to delay the state court

trial.  According to Merck's Second Notice of Removal,  "Plaintiffs have no reasonable possibility of recovery against the Doctor Defendants under state law."  See Merck & Co. Inc.'s Second Notice of Removal, p. 6.  This is simply incorrect.

### 1.    Plaintiffs Continue to Meet the Correct Standard of "Any Possibility of Recovery."

The party alleging improper joinder bears the burden of persuasion, and that burden is quite stringent.  *See Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir.2000). To prove improper joinder, defendants must show that, at the time of removal, there was: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court.  *See Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003).  Only ten months ago, in *Smallwood v. Illinois Central Railroad Co.,* 358 F.3d 568, 573 (5th Cir. 2004), the Fifth Circuit, in an *en banc* opinion, held:

> the test for fraudulent joinder is whether the defendant has demonstrated that there is **no possibility of recovery** by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an instate defendant.

In evaluating allegations of fraudulent or improper joinder, Courts must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.  See *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir. 1992).  According to *Dodson,* the Court is then required to "determine whether the party has any possibility of recovery against the party whose joinder is questioned" See *Dodson,* 951 F.2d at 42.

The Court need not decide "whether the plaintiff will actually or even probably prevail on the merits, but only for *a possibility* that he may do so".  See *Dodson,* 951 F.2d

at 43-44 citing to *Green v. Amerada Hess Corp.*, 707 F.2d 201 (5th Cir. 1983), cert. denied, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). At least one court has held that remand is proper where there is a "slight" possibility of recovery. See *Hartley v. CSX Transp. Inc.* 187 F.3d 422, 426 (4th Cir. 1999).

As more fully shown below, Plaintiffs have more than a mere possibility of prevailing against the Defendant Doctors.

### 2. Plaintiffs continue to Assert the Defendant Doctors Breached the Standard of Care.

a. *Liberal Pleading Rules.*

Texas employs a notice pleading standard. Texas Rule of Civil Procedure. 45, 47. See, e.g., *Naficy v. Braker,* 642 S.W.2d 282, 282-83 (Tex. App. – Houston 1982, writ ref'd n.r.e.) (petition, which alleged merely that patient sustained injury as a result of physician's failure to exercise the degree of care that an ordinary prudent physician would have exercised under same or similar circumstances, was sufficient to give fair notice of claim under Texas MLIIA statute). Alternate claims and different types of claims may be asserted at the same time. *See* Texas Rule of Civil Procedure 47.

b. *Claim For Negligent Prescription.*

Texas recognizes a claim for negligent prescription. Negligence in regard to prescription medication states a claim for medical malpractice in Texas. *See, e.g., Haskett v. Butts,* 83 S.W.3d 213 (Tex. App. – Waco 2002, pet. denied) (failure to properly prescribe Pitocin); *Sloan v. Molandes*, 32 S.W.3d 745 (Tex. App. – Beaumont 2000, no pet.) (failure to properly prescribe steroids).

c. *Plaintiffs Allege Negligent Prescription As To Defendant Doctors.*

It is undisputed that Plaintiffs' live pleading and discovery responses continue to reflect assertions of negligence against the Defendant Doctors.  For instance, Dr. Bush continues to opine that the Defendant Doctors breached the standard of care.  *See* **Exhibit M, Affidavits of Dr. Bush**.  Further, as described in Plaintiffs' Supplemental Responses to Disclosures (*See* **Exhibit P**), Dr. Bush will testify that the Defendant Doctors breached the standard  of care in that they knew or should of known of the dangers associated with treating a patient, like Mr. Garza with Vioxx 25 mg.  *See* **Exhibit M, Affidavit of Dr. Bush Dated Friday, January 21, 2005;**  *See also* **Exhibit L**.

As of January , 2005, Plaintiffs cross-examination of Merck's medical experts explores whether they believe Dr. Evans' attitude towards continuing to give Vioxx to patients (with cardiovascular risk factors) is reasonable under current medical standards. For instance, during the deposition of Merck's expert, Dr. Gaziano, he was asked:

> Q:     Dr. Evans testified that even after April of 2002, with Vioxx's new label change of April 2002, he still prescribed Vioxx to patients that obviously had cardiovascular risks.  Do you agree with this position?

Dr. Gaziano responded:

> A:     You know, actually, it probably would be best for me not to make an opinion on something that might be taken out of context.  I'm not–I don't know what he would be referring to.

*See* **Exhibit N**.

Moreover, Merlin Wilson, M.D., another Merck expert, was asked whether he was critical of Dr. Evans' testimony that he would still prescribe Vioxx to his heart patients, despite the warnings reflecting an increased risk of cardiovascular events.

> Q:     Dr. Evans testified that even after the - - even after Vioxx' label was changed

in April of 2002, to reflect the findings of the Vigor study that he still prescribed Vioxx to patients that obviously had cardiovascular risk factors. My question is, do you agree with Dr. Evan's position and statement?

A:     Yes.

*See* **Exhibit O**.

Plaintiffs asked these questions to those experts to attempt to bolster its negligent prescription claims against the Defendant Doctors.  Indeed, Plaintiff would not have had any reason to ask these questions if Plaintiff had no intention to pursue the negligent prescription claims against the Defendant Doctors.

### 3.     Plaintiffs continue to designate Dr. Bush as a Testifying Expert Against Defendant Doctors.

Defendants', Merck and Defendant Doctors, increased Plaintiffs' likelihood of recovering against the Defendant Doctors since Dr. Bush was not timely deposed. Nor did any of the defendants file timely *Daubert/Robinson* motions for that matter.

It is evident from Plaintiffs' thirty-day discovery supplementation that Plaintiffs continue to actively prosecute the medical malpractice action, intending for  Dr. Bush to testify as an expert witness against the Defendant Doctors.  See **Exhibit P**, Plaintiffs live Disclosure Responses.  Merck fails to disclose in its second removal notice that it has never once asked to take the deposition of Dr. Bush during the discovery phase of the state court action. In fact, until this second removal, Merck's deadline to depose Dr. Bush had lapsed.  *See* **Exhibit D**, (reflecting January 14th, 2005, discovery cutoff date).  Hence, Merck would have been barred from taking Dr. Bush's deposition.

In fact, Dr. Bush's deposition was scheduled for mid-December 2004, but was later passed by agreement by counsel for the Defendant Doctors, Mr. Ron Hole.  *See* **Exhibit**

Q. At no point did Merck cross-notice Dr. Bush' deposition. It was not until last week, during the flurry of legislative continuance filings, that Mr. Hole, once again, requested dates on which to depose Dr. Bush. *See* **Exhibit R**. Defendant Doctors also missed the April 14th discovery deadline by which to depose Dr. Bush.

### 4.    U.S. Southern District of Texas – Corpus Christi Division

Besides U.S. District Judge Ricardo Hinojosa, Judge Janis Jack of the Corpus Christi Division has addressed at least two removals where Merck alleged the non-diverse physicians were fraudulently joined. Both matters were remanded by Judge Jack. *See* **Exhibit Y**. In both cases, Merck asserted the statute of limitations barred plaintiffs' claims against the non-diverse physician, and therefore, Plaintiffs had "no possibility of recovery." Judge Jack rejected Merck's argument, noting that plaintiffs had a "reasonable possibility of overcoming the statute of limitations and recover on their medical negligence claims." *See* **Exhibit Y**.

### VIII. CONCLUSION

Based on the above, the Garza family requests that the Court set an emergency hearing to rule on the merits of Merck's second removal as soon as practicable. Further, the Garza family requests that the Court grant its Motion to Remand.

Respectfully submitted,

**HOCKEMA, TIPPIT & ESCOBEDO, L.L.P.**
1 Paseo del Prado, Bldg. 101
Edinburg, TX 78539-9672
*Mailing address:*
P.O. Box 720540
McAllen, TX 78504-0540
Telephone:  (956) 631-9112
Telecopier:  (956) 630-9472

BY:_____
       Joe Escobedo, Jr.
       State Bar No. 06665850
       Federal Bar No. 12203
       Attorney in Charge
       David H. Hockema
       State Bar No. 16687200
       Federal Bar No. 1204
       Attorney in Charge
       Mauro F. Ruiz
       State Bar No. 24007960
       Federal Bar No. 23774

       Kathryn Snapka
       State Bar No. 18781200
       **S N A P K A ,    T U R M A N    &
       WATERHOUSE, L.L.P.**
       P.O. Drawer 23017
       Corpus Christi, Tx 78504
       Telephone: (361) 888-7676
       Telecopier: (361) 884-8545

**CO-COUNSEL:**
Alberto A. Munoz, II
State Bar No. 14669800
**LAW OFFICE OF ALBERTO A. MUNOZ, II, P.C.**
1 Paseo del Prado, Bldg. 101
Edinburg, TX 78539
*Mailing address:*
P.O. Box 9600
McAllen, TX 78502-9600
Telephone:  (956) 631-3444
Telecopier:  (956) 631-9187

Mike Mills
State Bar No. 14163500
Federal Bar No. 1211
**ATLAS & HALL**
P.O. Box 3725
McAllen, Texas 78502
Telephone:  (956) 682-5501
Telecopier:  (956) 686-6109

**ATTORNEYS FOR PLAINTIFFS FELICIA GARZA,** Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR., LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA,** and **GLORIA GARZA,** lindividually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs contacted Mr. Sales, Merck's counsel, of the law firm of Baker Botts on Friday, July 1, 2005; and he opposed the merits of the motion. Counsel for Plaintiffs also contacted Mr. Hole, counsel for Defendants, Drs. Evans and Posada, who opposed the merits of Plaintiffs' motion as well.

David H. Hockema
Joe Escobedo, Jr.
Mauro F. Ruiz

*Page 20 of 21*

## CERTIFICATE OF SERVICE

I hereby certify that on the ___6th___ day of **July, 2005**, a true and correct copy of the above and foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS OPPOSED MOTION TO REMAND** was served upon counsel of record via federal express:

Mr. Russ M. Herman
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Ave., Suite 100
New Orleans, LA 70113

Mr. Phillip A. Wittmann
Stone, Pigman, Walther, Wittmann, L.L.C.
546 Carondelet Street
New Orleans, LA 70130

David H. Hockema
Joe Escobedo, Jr.
Mauro F. Ruiz

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED