

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    JUL 19 2005

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | § | MDL NO. 1657 |
|     PRODUCTS LIABILITY LITIGATION | § | |
| | § | |
| | § | SECTION L |
| | § | |
| | § | JUDGE FALLON |
| § § § § § § § § | | MAG. JUDGE KNOWLES |

**This Document Relates To: EDLA Case No. 05-2586**

*FELICIA GARZA, Individually and on behalf of the ESTATE OF LEONEL GARZA, SR., LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA, and GLORIA GARZA, Individually, and as Heirs to the ESTATE OF LEONEL GARZA, SR. vs. MICHAEL D. EVANS, M.D., JUAN D. POSADA, M.D., and MERCK & CO., INC.*

---

**PLAINTIFFS' REPLY TO MERCK'S OPPOSITION TO PLAINTIFFS'
EMERGENCY HEARING AND REQUEST FOR ORAL ARGUMENT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes **FELICIA GARZA**, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR.**, **LEONEL GARZA, JR.**, **LUIS JAIME GARZA**, **LAURO GUADALUPE GARZA**, and **GLORIA GARZA**, Individually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.**, Plaintiffs pursuant to Local Rule 7.1E and file this, their Reply to



ORIGINAL

Fee_____
_____ Process_____
X Dktd_____
_____ CtRmDep_____
_____ Doc. No _____

Merck's Response to Plaintiffs' Opposed Motion For Emergency Hearing and Request for Oral Argument (hereafter "Plaintiffs' Motion" ) pursuant to Uniform Local Rule 78.1 E, and would show the Court as follows:

In Merck's Opposition to Plaintiffs' Motion for Emergency Hearing, Defendant Merck argues that Plaintiffs' remand motion presents a "recurring issue that exists in numerous cases in this MDL proceeding—namely, whether in-state prescribing doctors can be properly joined in VIOXX cases in order to defeat diversity." In truth, this case presents the following unique issue: <u>Are the facts of this case in any way similar to the facts of *Tedford v. Warner-Lambert Co.*, so as to allow Merck to remove this case at a time well in excess of one year from the date of the initial filing</u>? As shown below, the answer to this question is clearly no, and this Court should grant Plaintiffs' Motion to Remand.

## I.  Tedford v. Warner-Lambert's Equitable Exception Does Not Apply to This Case.

### A.  Limited Procedural History of Case and Discovery Proceedings

Throughout its Opposition to Plaintiffs' Motion, Merck accuses Plaintiffs' of manipulating the federal diversity statute by virtue of Dr. Simonini's expert testimony. Specifically, Merck argues that "[p]laintiffs have offered no explanation for the 180-degree reversal in Dr. Simonini's testimony whether the doctor defendants were negligent." As Plaintiffs' will show, Dr. Simonini explained the reasons in the very deposition that Merck is using to attempt to prove manipulation of the diversity rules by the plaintiffs. Before we get to that explanation, Plaintiffs must briefly provide the Court with a brief history of the discovery relating to defendants **MICHAEL D. EVANS, M.D.** and **JUAN D. POSADA, M.D.** (hereinafter referred to as "Defendant Doctors").

Prior to filing this lawsuit, Plaintiffs requested the entire medical file pertaining to the decedent, Mr. Leonel Garza, in the possession of Defendant Doctors  See Exhibit A, May 16, 2002 letter Requesting Medical Records and Medical Records Affidavit.

In response to Plaintiffs' request, on or about June 13, 2002, the Defendant Doctors forwarded what Plaintiffs' understood was the *complete* medical file of Mr. Garza.  *See* Exhibit B, 26 Pages of Records Obtained Through Affidavit from Medical Providers.

Plaintiffs filed this case in Starr County District Court on or about March 10, 2003.

These records were provided to Plaintiffs' experts, Dr. Simonini on May 7, 2003, and Dr. Bush on March 25, 2003.  These are the same records referenced by Dr. Simonini in his affidavit which served as the bases of Plaintiffs' successful Motion to Remand of Merck's first removal to federal court.  *See* Exhibit C, Affidavit from Dr. Simonini. *See also* Exhibit D, Plaintiffs' Motion to Remand (without exhibits)

The case was remanded to state court on or about July 31, 2003.

On November 6, 2003, Plaintiffs propounded their First Set of Requests for Production to Defendant Doctors. *See* Exhibits E, Dr. Evans; *See also* Exhibit F, Dr. Posada.  Request No. 13 read as follows:

### Request for Production No. 13

**Copies of all medical records of Leonel Garza, deceased, which are in YOUR possession, custody or control.**

On December 9, 2003, the Defendant Doctors served their Responses and Objections to Plaintiffs' First Requests for Production *See* Exhibit G.  In response to Request No. 13, the Defendant Doctors responded that they would make the medical records available at their lawyer's office.

On December 15, 2003, Plaintiffs sent a letter to the lawyers for the Defendant Doctors requesting, among other things, "copies of all medical records responsive to Request for Production No. 13." *See* Exhibit H.  On December 19, 2003, the lawyers for the Defendant Doctors responded that "[r]egarding Mr. Garza's medical records, as requested in Request for Production No. 13, we will make copies of those records and provide those to you as soon as they are available." *See* Exhibit I.

On March 3, 2004, lawyers for the Defendant Doctors supplemented their Response to Request No. 13 and provide Plaintiffs with a copy of Leonel Garza's medical records. *See* Exhibit J.  This is the first time that the thallium scans (Bates Nos. MED 0487, 0488 and 0492) were produced by the Defendant Doctors to the Plaintiffs.  These records were not included in the production of 26 pages of records  which were provided to Plaintiffs on June 13, 2002. *See* Exhibit B.

On August 19, 2004, Plaintiffs deposed Defendant Dr. Evans.  During the deposition, it again became evident that Plaintiffs had not been provided with the complete medical records on Mr. Garza.  *See* deposition of Dr. Michael Evans at pages 56, 58, attached hereto as Exhibit K.  As a result, the next day, on August 20, 2004, Plaintiffs propounded their Second Set of Requests for Production to Dr. Evans,  *(See* Exhibit L) requesting  all the records relied on by Dr. Evans' prior to his deposition:

**Request for Production No. 1**

**All documents reviewed by Michael D. Evans, M.D. in preparation for his deposition on August 19, 2004.**

Further, also on August 20, 2004, Plaintiffs sent a letter to the lawyers representing Dr. Evans for the medical records relating to Mr. Garza which Dr. Evans testified existed but

had not been produced up to that time.  *See* Exhibit M (letter requesting billing sheets for Mr. Garza's visits).[1]

On or about October 4, 2004, Defendant, Dr. Michael D. Evans, forwarded Supplemental Response to Plaintiffs' Second Set of Request for Production.  *See* Exhibit O (medical records supplemented).  This was the first time that Plaintiffs received the Mr. Garza's complete medical records from the Defendant Doctors.

Shortly thereafter, on October 21, 2004, Plaintiffs' counsel forwarded these documents to Dr. Simonini.  *See* Exhibit P, Correspondence from Hockema, Tippit & Escobedo Dated October 21, 2004.

Dr. Simonini was deposed on December 9, 2004.  *See* Exhibit Q, Condensed Deposition of Dr. Simonini.

## B.   Dr. Simonini's Opinion Was Revised Because He Did Not Have Mr. Garza's Complete Medical File At The Time He Drafted His Affidavit.

Merck, in its Response, challenged Plaintiffs to explain the circumstances underlying the change in Dr. Simonini's testimony.  The explanation for the revision in Dr. Simonini's opinion is simple: Dr. Evans did not produced his entire medical file until March and October of 2004.  As more fully shown below, Merck can point to no "smoke and mirrors", and certainly there are no facts remotely similar to those in *Tedford*.

The Court has been provided with documentation reflecting Plaintiffs' efforts to secure the entire medical file of Mr. Garza.  It is quite clear that Plaintiffs finally obtained

---

[1] The billing sheets were critical in that Plaintiffs had evidence that one billing sheet contained information that the other medical records did not contain.  The billing sheet for the March 27, 2001 visit contains Dr. Evan's notes that he provided samples of VIOXX to Mr. Garza.  *See* Exhibit N.  Plaintiffs would invite the Court to review the medical records produced on June 13, 2002 (*See* Exhibit B); this billing sheet was not included in those medical records.

the complete medical records of Mr. Garza when Dr. Evans supplemented his discovery request to Plaintiffs' Second Set of Requests for Production on October 2004. As can be seen by a review of the records, there are numerous medical documents pertaining to Mr. Garza, which were not produced by the Defendant Doctors until March and October 2004, including the thallium stress test taken of Mr. Garza on April 4, 2001.

To understand the significance of the thallium scans to Dr. Simonini, we need to discuss the facts of this case. On March 27, 2001, Mr. Garza presented to Dr. Evans complaining of intermittent numbness, left arm pain and weakness. See Exhibit C, Affidavit of Americo Simonini at pg. 2. The Defendant Doctors concluded that the pain and numbness was not a cardiovascular event and prescribed VIOXX for Mr. Garza. Id. In his affidavit, Dr. Simonini was critical of the Defendant Doctors in failing to recognize that the pain and numbness could have been an anginal equivalent and treat Mr. Garza accordingly.

In his deposition, Dr. Simonini explained numerous times that the thallium scan was the significant factor responsible for his different expert opinion in December 2004. See Exhibit P, deposition of Dr. Simonini at pages 125, 126-127, 132, 134-135.

When this case was removed for a second time in January, 2005, Merck was aware that Dr. Simonini had not reviewed the thallium stress test findings when he provided his affidavit of May 14, 2003. Dr. Simonini had not reviewed the thallium stress test findings, because they had not been produced by Defendant Doctors at that time, despite Plaintiff's request for Mr. Garza's entire medical file. Merck has known this to be the reason for the change in Dr. Simonini's opinion. In fact, counsel for Merck, Mr. Josephson, questioned Dr. Simonini on this subject:

Q:     And you are saying that at the time you did the affidavit you did not have the autopsy report?

A:     **At the time I did the affidavit, I didn't have the thallium report**. In other words, I couldn't really look at, comment on blood flow of the heart– the overall blood flow. I didn't have the thallium scans, these pictures. So I couldn't really comment. All I had to comment on apical ischemia was a handwritten report, which doesn't afford me the opportunity to look at the entire anatomy and see what else was there.

*See* Exhibit Q, p. 132 (emphasis added).

Counsel for Merck also inquired if the thallium reports was the reason for the change in Dr. Simonini's opinion that Mr. Garza's pain and numbness should have been recognized as an anginal equivalent:

Q:     So basically, then, you no longer believe that the complaint of left arm pain and numbness should have been recognized as an anginal equivalent?

A      Well, I believe that -- let me state it again.  A gentleman coming with this history and this presentation, presenting with that complaint, that should be your first suspicion.  And then you must take steps accordingly to rule out whether or not the pain was due to that.  Having done the tests and having had the images, then one could say that based on the tests   that were done and images that were done that this -- the pain that he was complaining of were less likely -- cannot be explained by this stress test. So therefore one would have to conclude that they weren't due to this stress test abnormality.

*See* Exhibit Q, pages 126-127.

Plaintiffs can only speculate why Merck has repeatedly failed to advise this Court of this explanation.  Instead, Merck has chosen to ignore the explanation, pretend that there is no explanation and argue that this proves Plaintiffs were manipulating the diversity jurisdiction rules.

There is absolutely no similarity between the facts of this case and the egregious

facts of the *Tedford* opinion.  Based upon the facts of this case, evidence and argument, the Court should reject Merck's argument that *Tedford*'s equitable exception to the one-year limitation on removal should apply to this case and remand this case to the state court.

## II.     IN THE ALTERNATIVE, PLAINTIFFS DID NOT FRAUDULENTLY JOIN THE DEFENDANT DOCTORS

Plaintiffs contend that the Court need not reach the issue of fraudulent joinder in granting Plaintiffs' Motion to Remand; the *Tedford* equitable exception does not apply under the facts of this case.  In the alternative, should the Court decide to review the substantive arguments relating to the cause of action asserted against the Defendant Doctors, Plaintiffs will show that the Defendant Doctors were not fraudulently joined in this case.  While Plaintiffs do not intend to repeat our arguments contained in our Motion to Remand and Memorandum in Support thereof, Merck has made numerous arguments in its Opposition to Plaintiffs' Motion for Emergency Hearing that Plaintiffs feel compelled to address.

### A. PLAINTIFFS HAVE ALWAYS PLED A NEGLIGENT DISPENSING THEORY

Merck argues that Plaintiffs have "suggested that they are no longer advancing the negligent dispensing theory." *See* Merck's Opposition at Page 4.  This theory has been properly pled by the Plaintiffs since their Original Petition. *See* Plaintiffs' Original Petition attached hereto as Exhibit R.

Merck argues that at the time Dr. Simonini testified in his deposition, Plaintiffs' "negligent dispensing theory [was] completely unsupported by any specific factual allegations." *See* Merck's Opposition at Page 4.  This is completely incorrect.  In Plaintiffs'

Second Supplemental Responses to All Defendants' Rule 194 Requests for Disclosures (Expert Designations as to Defendant, Merck & Co, Inc.), in addition to the experts previously discussed, the Plaintiffs designated Dr. Albert Edwards with the following description:

> Dr. Edwards will opine regarding the applicable standards of care as they pertain to cardiologists's care of patients and specifically, the standard of medical care afforded to Mr. Leonel Garza, by Dr. Evans and Dr. Posada. The general substance of his opinions are outlined in his report attached hereto.

*See* Exhibit S, at page 3. In his report, Dr. Edwards provides the factual allegations which support Plaintiffs' negligent dispensing theory. Specifically, he states:

> I have found no record of any counseling given to Mr. Garza by Drs. Evans and Posada as to the risks, more specifically the cardiovascular risks of VIOXX. In addition, since no prescription was written for VIOXX, no additional health professional, like a pharmacist, had an opportunity to counsel Mr. Garza on the risks of taking VIOXX. Drs. Evans and Posada were Mr. Garza's only learned intermediary as far as the risks and benefits of VIOXX were concerned. I find no evidence or record that Drs. Evans and Posada acted as Mr. Garza's learned intermediary in describing the heart attack risk to Mr. Garza when Vioxx was given to him.

Further, Dr. Bush continues to opine that the Defendant Doctors breached the standard of care. *See* Exhibit T, Affidavit of Dr. Bush. Further, as described in Plaintiffs' Supplemental Responses to Disclosures (*See* Exhibit U), Dr. Bush will testify that the Defendant Doctors breached the standard of care in that they knew or should of known of the dangers associated with treating a patient, like Mr. Garza, with Vioxx 25 mg. *See* Exhibit T, Affidavit of Dr. Bush Dated Friday, January 21, 2005. Merck has never even requested to depose Dr. Bush. Defendant Merck's sole argument against this affidavit is that it was not submitted timely pursuant to the state court's docket control order. Clearly, this argument should be made to the judge of the State District Court. Further, other courts

have ruled that procedural arguments are insufficient to prove fraudulent joinder where the possibility exists that the Plaintiffs may be able to overcome those arguments. Judge Janis Jack of the Corpus Christi Division has addressed at least two removals where Merck alleged the non-diverse physicians were fraudulently joined. Both matters were remanded by Judge Jack. *See* Exhibit V. In both cases, Merck asserted the statute of limitations barred plaintiffs' claims against the non-diverse physician, and therefore, Plaintiffs had "no possibility of recovery." Judge Jack rejected Merck's argument, noting that plaintiffs had a "reasonable possibility of overcoming the statute of limitations and recover on their medical negligence claims." *See* Exhibit V. Given the fact that the deadlines established by the docket control order were based upon a February 2005 trial setting that Merck has successfully derailed, it is highly probable that the state district court will impose new deadlines once a new trial setting is established.

Therefore, the negligent dispensing theory was properly pled and is supported by factual allegations and the expert testimony of Dr. Bush. *See* affidavit of Dr. Bush, Exhibit T.

**B.    COMMENT BY MDL'S STEERING COMMITTEE DOES NOT SUPPORT FRAUDULENT JOINDER**

In what can only be described as a desperate attempt to deflect this Court's attention from the proper legal analysis, Merck argues that Plaintiffs in this case have fraudulently joined the Defendant Doctors based upon a comment made by members of the Plaintiffs' Steering Committee in a pleading. Specifically, Merck argues that members of the Plaintiffs' Steering Committee have conceded that the joinder of nondiverse doctors generally is improper because Plaintiffs' claims against Merck are by and large

incompatible with a claim that the doctor is at fault.  *See* Merck's Opposition at Page 1.

While Plaintiffs dispute that the Plaintiffs' Steering Committee made that outright concession, that is immaterial in determining whether the Defendant Doctors were fraudulently joined in this case. Only ten months ago, in *Smallwood v. Illinois Central Railroad Co.*, 358 F.3d 568, 573 (5th Cir. 2004), the Fifth Circuit, in an *en banc* opinion, held:

> the test for fraudulent joinder is whether the defendant has demonstrated that there is **no possibility of recovery** by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Texas recognizes a claim for negligent prescription.  Negligence in regard to prescription medication states a claim for medical malpractice in Texas.  *See, e.g., Haskett v. Butts,* 83 S.W.3d 213 (Tex. App. – Waco 2002, pet. denied) (failure to properly prescribe Pitocin); *Sloan v. Molandes*, 32 S.W.3d 745 (Tex. App. – Beaumont 2000, no pet.) (failure to properly prescribe steroids).  This claim is properly supported by the facts of this case and expert testimony.

Therefore, Merck's claim of fraudulent joinder in this case fails and Plaintiffs' Motion to Remand to state court should be granted.

## IV. CONCLUSION

Based on the above, Plaintiffs respectfully request that this Court grant Plaintiffs' Emergency Motion And Request For Oral Argument and upon hearing Plaintiffs' Motion to Remand to state court, that the Court grant said Motion to Remand and all other relief at law or equity to which them may be entitled.

Respectfully submitted,

**HOCKEMA, TIPPIT & ESCOBEDO, L.L.P.**
1 Paseo del Prado, Bldg. 101
Edinburg, TX 78539-9672
*Mailing address:*
P.O. Box 720540
McAllen, TX 78504-0540
Telephone:   (956) 631-9112
Telecopier:   (956) 630-9472

BY: _____
      Joe Escobedo, Jr.
      State Bar No. 06665850
      Federal Bar No. 12203
      Attorney in Charge
      David H. Hockema
      State Bar No. 16687200
      Federal Bar No. 1204
      Attorney in Charge
      Mauro F. Ruiz
      State Bar No. 24007960
      Federal Bar No. 23774

Kathryn Snapka
State Bar No. 18781200
**SNAPKA, TURMAN & WATERHOUSE, L.L.P.**
P.O. Drawer 23017
Corpus Christi, Tx 78504
Telephone: (361) 888-7676
Telecopier: (361) 884-8545

**CO-COUNSEL:**

Alberto A. Munoz, II
State Bar No. 14669800
**LAW OFFICE OF ALBERTO A. MUNOZ, II, P.C.**
1 Paseo del Prado, Bldg. 101
Edinburg, TX 78539
*Mailing address:*
P.O. Box 9600
McAllen, TX 78502-9600
Telephone:   (956) 631-3444
Telecopier:   (956) 631-9187

Mike Mills
State Bar No. 14163500
Federal Bar No. 1211
**ATLAS & HALL, L.L.P.**
P.O. Box 3725
McAllen, Texas 78502
Telephone:   (956) 682-5501
Telecopier:   (956) 686-6109

**ATTORNEYS FOR PLAINTIFFS FELICIA GARZA**, Individually and on behalf of the **ESTATE OF LEONEL GARZA, SR.**, **LEONEL GARZA, JR., LUIS JAIME GARZA, LAURO GUADALUPE GARZA,** and **GLORIA GARZA**, Individually, and as heirs to the **ESTATE OF LEONEL GARZA, SR.**

## CERTIFICATE OF SERVICE

I hereby certify that on the ___14th___ day of **July, 2005**, a true and correct copy of the

above and foregoing **PLAINTIFFS' REPLY TO MERCK'S OPPOSITION TO PLAINTIFFS'**

**EMERGENCY HEARING AND REQUEST FOR ORAL ARGUMENT** was served upon

counsel of record:

Mr. Phillip A. Wittmann
Stone, Pigman, Walther, Wittmann, L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Mr. Russ M. Herman
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Ave., Suite 100
New Orleans, LA 70113

David Hockema
Joe Escobedo
Mauro F. Ruiz

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED