

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:** | * | **MDL Docket No. 1657** |
| | * | |
| **VIOXX PRODUCTS LIABILITY** | * | **SECTION L** |
| **LITIGATION** | * | |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** *Walter* | * | |
| *Dochsteiner, et al. v. Merck & Co., Inc., et* | * | **MAG. JUDGE KNOWLES** |
| *al.*, no. 05-2930 | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MERCK'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Plaintiffs in this case have sought to evade diversity jurisdiction by fraudulently joining a number of non-diverse defendants and misjoining twelve plaintiffs, from various jurisdictions in Missouri and Arkansas, in one case without meeting Rule 20(a)'s requirement that joint claims must arise out of the same "transaction, occurrence, or series of transactions or occurrences." Because the non-diverse plaintiffs and defendants have been fraudulently joined, they should be disregarded for the purposes of determining whether there is complete diversity, and plaintiffs' motion to remand should therefore be denied.

\_\_\_ Fee_____
\_\_\_ Process_____
\_X\_ Dktd_____
\_\_\_ CtRmDep_____
\_\_\_ Doc. No _____

781440v.1

## Background

This is a case involving the prescription drug VIOXX®. In this case, twelve[1] plaintiffs allege that, as a result of taking VIOXX®, they suffered a variety of serious injuries, including strokes, heart attacks, blood clots, TIAs, and other heart and cardiovascular problems. (Petition ¶¶ 2-12, 14.) Plaintiffs allege a variety of claims against Merck arising out of their contention that "Vioxx is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use." (*Id.* at ¶ 15.)

In a transparent attempt to defeat Merck's removal rights, plaintiffs also assert a variety of claims against two of Merck's professional representative employees – Amy Sepko and Sherry Alberts – alleging that they were involved in the "distributing, marketing, and selling of Vioxx." (*Id.* at ¶¶ 18-19.) In addition, plaintiffs bring six counts – strict liability, negligent failure to warn, breach of warranty, concert of action, conspiracy, and negligent promotion – against a number of pharmacies, including Walgreen Co. d/b/a Walgreens, Mineral Area Health Services, Inc., Elliott Pharmacy, Inc., Stephens Pharmacy, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, Inc. Plaintiffs base these claims on the allegations that the pharmacies filled their prescriptions for VIOXX® and failed to warn them of the dangers associated with VIOXX® when they had their prescriptions filled.[2]

---

[1] Plaintiffs have voluntarily dismissed Josif Negrau as a plaintiff in this case. *See* Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Remand ("Pltfs. Mem."), p. 1, n. 2.

[2] Plaintiffs also assert claims against one hundred fictional defendants, John and/or Jane Does 1-100. (Petition ¶ 20.) As these defendants are fictional, they should be disregarded for purposes of determining diversity. *See* 28 U.S.C. § 1441(a); *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1161 (8th Cir. 1981). As such, Merck will not discuss the claims against these defendants in this opposition.

2

As discussed below, remand should be denied because as a matter of law, the employees and the pharmacy defendants are fraudulently joined, and their citizenship should thus be ignored for purposes of determining diversity. At the very least, remand should be denied as to those plaintiffs whose claims are completely diverse from the pharmacy defendants from whom they allegedly purchased VIOXX® because plaintiffs' claims were fraudulently misjoined.

**Argument**

I.   **The Court Has Diversity Jurisdiction Over Plaintiffs' Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.**

Plaintiffs' motion should be denied because the Court has diversity jurisdiction over plaintiffs' claims. Plaintiffs do not dispute in their motion to remand that the amount-in-controversy requirement is satisfied. Thus, the only question facing the Court is whether the non-diverse pharmacy defendants and the employee defendants were fraudulently joined. As set forth below, plaintiffs have no intention of seeking relief from these defendants; nor could they if they so desired. Accordingly, these defendants should be ignored for purposes of determining jurisdiction, and plaintiffs' motion should be denied.[3]

In the Eighth Circuit, "[j]oinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1984). "The doctrine of fraudulent joinder is designed to prevent plaintiffs from naming parties

---

[3]   Plaintiffs object that all of the defendants have not consented to removal; however, it is well established that fraudulently joined defendants need not consent to removal. *See e.g., Roberts v. Palmer*, 354 F. Supp. 2d 1041, 1046 (E.D. Mo. 2005) ("A plaintiff may successfully challenge removal based on lack of unanimous consent only with respect to non-fraudulently joined defendants served or otherwise in receipt of the complaint by the time of removal. [Where a defendant] does not fit into either category, its consent to removal was not and is not required." (alteration in original)); *Bean v. Warner-Lambert Co.*, 2000 U.S. Dist. LEXIS 20411 at *12-13 (W.D. Mo. Jan. 26, 2000) (holding that "unanimity rule" does not apply in case involving allegations of fraudulent joinder of parties).

781440v.1

of the same citizenship merely to avoid removal of an action to federal court." *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 2d 885, 889 (W.D. Ark. 1999).

Plaintiffs' motion to remand misstates the standard for determining whether a party has been fraudulently joined to defeat diversity. Plaintiffs repeatedly state throughout their brief that the non-diverse defendants are not fraudulently joined because there is "arguably a reasonable basis for predicting that Missouri law *might* impose liability" on the non-diverse defendants. *See* Pltfs. Mem. at 2, 4-5, 9, 11-14. But this is not the proper test: rather, under Eighth Circuit law, "[j]oinder is fraudulent and removal is proper where there exists *no reasonable basis in fact and law* supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002) (emphasis added). The Eighth Circuit has emphasized that the "paramount consideration" in fraudulent joinder determinations is "the *reasonableness* of the basis underlying the claim." *Filla v. Norfolk S. Rwy. Co.*, 336 F.3d 806, 809-11 (8th Cir. 2003) (explicitly rejecting alternative standards for determining fraudulent joinder) (emphasis added).

As set forth below, based on the facts alleged in plaintiffs' petition, there is no reasonable basis supporting any claims against the pharmacy defendants or the employees.

A.   Pharmacy Defendants Are Fraudulently Joined.

Plaintiffs have sued Walgreens, Mineral Area Health Services, Elliott Pharmacy, Stephens Pharmacy, Wal-Mart Stores East, LP, and Wal-Mart Stores East, Inc.,[4/] alleging that all

---

[4/]   Plaintiffs allege in both their complaint and their motion to remand that Wal-Mart Stores, East, LP is a citizen of the state of Missouri for purposes of diversity. *See* Pet. ¶ 55 ("numerous . . . Missouri residents are general or limited partners of Wal-Mart Stores East LP"); Pltfs. Mem. at 1 (stating that Wal-Mart Stores East, LP is a "citizen of Arkansas and Missouri"). Contrary to plaintiffs' allegation, however, none of the limited or general partners of Wal-Mart Stores East LP are citizens of the state of Missouri. *See* Affidavit of K. Elizabeth Crawford, ¶ 3 a copy of which is attached hereto as Exhibit A. Likewise, Wal-Mart Stores East, Inc. is not incorporated nor does it have its principal place of business in the state of Missouri. *Id.* at ¶ 4.

4

are Missouri, Arkansas, and Illinois citizens, on the grounds of strict product liability (Count III),

negligent failure to warn (Count VI), breach of warranty (Count XI), concert of action (Count

XII), conspiracy (Count XIII), and negligent promotion (Count XIV).  The pharmacy defendants

were fraudulently joined for several reasons.[5]

> 1.   **The Pharmacy Defendants Are Fraudulently Joined Because The Claims Against Them Cannot Be Reconciled With The Gravamen Of Plaintiffs' Petition – That Merck Withheld Information About Alleged VIOXX® Risks From Everyone Including The "Health Care Industry."**

First, the pharmacy defendants are fraudulently joined because plaintiffs' claims against

the pharmacies are wholly inconsistent with the gravamen of their allegations:  that Merck

misled the public and physicians regarding the safety of VIOXX®.  (Petition ¶¶ 32, 33, 45, 47,

Count II, Count V, Counts VII-X, Counts XII-XIV.)[6]  After all, plaintiffs repeatedly assert in

their petition that Merck misled and withheld information regarding the safety of VIOXX® from

plaintiffs themselves, "the consuming public" generally, and even from "the health care

industry."  At the same time, plaintiffs also allege that the pharmacy defendants – mere service

providers who fill prescriptions made by doctors – were sufficiently aware of the risks associated

with VIOXX® that their failure to disclose those risks breached a duty to plaintiffs.  The

incompatibility of these two theories has been acknowledged by several hundred plaintiffs in

similar VIOXX® cases.  *See* Plaintiffs Memorandum in Support of Motion to Modify Order of

---

[5]   Plaintiffs' opposition brief addresses only Missouri law.  Thus, they are apparently conceding that to the extent any plaintiffs purchased their VIOXX® in Illinois or Arkansas, they cannot state claims against the non-diverse defendants.  Accordingly, the only issue the court need consider is whether Missouri law bars the claims of any plaintiffs who purchased their VIOXX® in this state.

[6]   Under the learned intermediary doctrine, plaintiffs can only recover against Merck if they can demonstrate that Merck withheld information from the medical community.  *Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419-20 (Mo. App. 1999).

781440v.1

June 6, 2005 Regarding Physician Contacts, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. June 15, 2005) ("Plaintiffs' principal allegation in this case is that Merck failed to disclose known risks of heart attacks to the medical community . . . . *That theory is by and large incompatible with a claim that the doctor is at fault*" (emphasis added)). Plaintiffs' allegations against the pharmacies are irreconcilable with the core allegation in their petition not only because they completely depend on the proposition that the pharmacy defendants knew information which plaintiffs allege Merck withheld from them, but also because these allegations necessarily posit that the pharmacies somehow had more information about the risks of VIOXX® than plaintiffs' own prescribing physicians.

In similar circumstances, courts around the country have ruled that non-diverse plaintiffs were fraudulently joined. *See, e.g., In re Rezulin Prods. Liab. Litig.* ("*Rezulin I*"), 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (finding that non-diverse physicians were fraudulently joined because the plaintiffs' allegations that the drug manufacturer had concealed the drug's risks from everyone "refutes the assumption that . . . [the] physicians had knowledge of [the drug's] harmful effect"); *Wiggins v. Am. Home Prods. Corp.*, 2001 WL 34013629 (N.D. Ala. Oct. 2, 2001) (in-state pharmacy was fraudulently joined where plaintiff made no specific allegation against the pharmacy), *aff'd mem.*, No. 02-10528, 2002 WL 1276993 (11th Cir. May 29, 2002); *In re Diet Drug Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (in-state physician fraudulently joined).

> **2.    The Pharmacy Defendants Are Also Fraudulently Joined Because There Is No Reasonable Possibility That Plaintiffs Would Prevail On Any Of Their Claims Against Them.**

The pharmacy defendants are also fraudulently joined because plaintiffs have no reasonable possibility of prevailing on any of the causes of action plaintiffs plead against them.

781440v.1

In their memorandum, plaintiffs do not present *any argument* as to why there is a reasonable basis in fact or law to support their claims against the pharmacy defendants for strict liability, breach of warranty, concert of action, or conspiracy, even though they alleged such claims in their petition and Merck challenged their ability to state such causes of action in its notice of removal. *See* Notice of Removal, ¶¶ 22-25. Moreover, plaintiffs' counsel has *admitted* on the record in a hearing on motions to remand filed by him in four other VIOXX® cases,[7/] that, under the holding in *Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678 (Mo. banc 2000), his claims against pharmacies for breach of warranty and strict liability must fail.

Accordingly, because plaintiffs appear to have abandoned their concert of action and conspiracy counts against the pharmacy defendants, and because plaintiffs' counsel has conceded that claims for strict liability and breach of warranty are not viable against pharmacy defendants under Missouri law, Merck will not engage in an extensive discussion of these counts here. Instead, Merck will focus on the only remaining causes of action plaintiffs assert against the pharmacy defendants – negligent failure to warn and negligent promotion.

**a.      Plaintiffs Have No Reasonable Basis For Their Failure
To Warn Claim Under Missouri Law.**

Plaintiffs seek to pursue a negligence action against the pharmacy defendants based upon their alleged failure to provide adequate warnings regarding the potential dangers associated with the use of VIOXX®. (Petition Count VI.) As discussed above, plaintiffs accuse the pharmacy defendants of failing to warn plaintiffs even though the essence of plaintiffs' entire petition is premised on the claim that Merck allegedly failed to disclose these very same risks and consequences to the community at large, including the health care industry. (*See id.* at ¶¶ 32, 33,

---

[7/]      *Black v. Merck & Co., Inc.*, 4:05cv00297 ERW; *Holmes v. Merck & Co., Inc.*, 4:05cv00439 ERW; *Butler v. Merck & Co., Inc.*, 4:05cv00442 ERW; *Mullins v. Merck & Co., Inc.*, 4:05cv00569 ERW.

7

45, 47, Count II, Count V, Counts VII-X, Counts XII-XIV.)  Because Missouri law does not permit a failure-to-warn claim against a pharmacy as alleged here, plaintiffs' claim fails as a matter of law.

Although a pharmacy has a duty to fill prescriptions correctly, it is well-recognized that "pharmacies generally have no common-law or statutory duty to warn customers of the risks associated with the drugs they purchase." *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 2d 885, 893 (W.D. Ark. 1999).  Plaintiffs' allegations against the pharmacies likewise fail under Missouri law.  *See Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. App. 1999) (*citing Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo. 1967) *and Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670 (8th Cir. 1985) (applying Missouri law)) (recognizing that Missouri follows the learned intermediary doctrine).  Plaintiffs attempt to circumvent Missouri's learned intermediary doctrine by citing *Horner v. Spallito*, 1 S.W.3d 519 (Mo. App. 1999), a case in which a Missouri appellate court found that a pharmacy could be negligent for filling a prescription for what the pharmacist knew to be a lethal dose outside recommended dosage guidelines.  However, as the court in *Rezulin I* recognized, such a cause of action does not abrogate the learned intermediary doctrine or prevent a finding of fraudulent joinder in a case such as plaintiffs'; *Horner* merely "dealt with the unquestioning provision of addictive drugs over lengthy periods." 133 F. Supp. 2d at 289-90 (finding claims against pharmacies to be fraudulent joinder notwithstanding possibility that Mississippi would agree with *Horner*).

At the same time, *Horner* validated the fundamental proposition that the *physician* is in a "superior position to judge the propriety of a particular patient's drug regimen." *Id.* at 524 n. 5. Indeed, *Horner* relied extensively upon the landmark case *McKee v. American Home Products*, 782 P.2d 1045 (Wash. 1989), which held that a pharmacist is not required to "warn customers of

8

781440v.1

the hazardous side effects associated with a drug" selected by the physician. *Horner*, 1 S.W.3d at 524, n. 5. *Horner* left open the question of whether this pharmacist had an additional obligation – such as inquiring about clearly excessive dosages of a "strong hypnotic drug" – but it never took issue with *McKee*'s conclusions regarding a duty to warn. *Horner* simply does not create a unique "Missouri rule" that pharmacists have a duty to warn that other states have rejected.

Plaintiffs also claim that Missouri courts might recognize a negligent failure to warn cause of action against the pharmacy defendants because Missouri has adopted the *Restatement (Second) of Torts* § 388. (Plfts. Mem. at 9-11.) However, no Missouri court has allowed claims such as plaintiffs raise in their petition based upon § 388. Whether Missouri courts recognize a negligent failure to warn claim in some other theoretical context is irrelevant here. The issue is whether such a claim can be brought against a pharmacy that properly filled a doctor-prescribed prescription. Because Missouri has adopted the learned intermediary doctrine (*see Doe*, 3 S.W.3d at 419), plaintiffs' reliance on *Morris v. Shell Oil Co.*, 467 S.W.2d 39 (Mo. 1971), a failure to warn case involving a cleaning solvent, is completely inapposite. In Missouri, it is the doctor, not the pharmacy who advises regarding prescription medication. Plaintiffs' cleaning solvent case does nothing to change that, and nothing in Restatement § 388 abrogates the learned intermediary doctrine.

Plaintiffs next assert that Missouri regulations impose a duty to warn on the pharmacies under MO. CODE REGS. ANN. tit. 4, § 220-2.190. (Pltfs. Mem. at 8.) Contrary to plaintiffs' assertion, however, nothing in § 220-2.190 imposes on a pharmacist a general duty to warn about the dangers of prescription drugs. Rather, § 220-2.190 merely requires a pharmacist to "offer" to "discuss" with and "counsel" the purchaser upon receipt of a prescription drug. MO. CODE REGS.

ANN. tit. 4, § 220-2.190(1).  Nowhere in plaintiffs' voluminous petition or lengthy memorandum do they contend that the pharmacy defendants did not offer to counsel or discuss VIOXX® with these plaintiffs.  Additionally, the purpose of this "counseling" is not to give warnings, but instead to help the patient achieve the "maximum therapeutic outcomes." *Id*.  Furthermore, § 220-2.190(1) provides that the counseling shall be "consistent with applicable state laws." *Id*.  As discussed above, neither Missouri law nor the overwhelming majority of jurisdictions impose on pharmacies a generalized duty to warn of the potential dangers of prescription drugs, and such a duty would in fact be contrary to Missouri's learned intermediary doctrine. *See Doe*, 3 S.W.3d at 419.

Plaintiffs also specifically claim in their memorandum that the pharmacy defendants violated these Missouri regulations by failing to warn plaintiffs "of the dangers of Vioxx that [they] knew about, despite knowing plaintiffs' respective medical history." (Pltfs. Mem. at 9.) Plaintiffs then state, with no factual support, that "Vioxx was contraindicated or not advisable for plaintiffs." (*Id*.)  However, plaintiffs did not allege anywhere in their petition that these pharmacy defendants actually knew of the medical histories of these particular plaintiffs, or knew that VIOXX® was contraindicated for these plaintiffs because of their medical histories, or even that VIOXX® was actually contraindicated for these plaintiffs because of their medical histories. *See Malone v. Schapun, Inc.*, 965 S.W.2d 177, 184-85 (Mo. App. 1998) (in order to be liable in negligence for failure to warn, a seller must know or have reason to know of information regarding the allegedly dangerous nature of the product).  Plaintiffs' vague "upon information and belief" allegation of knowledge on the part of the pharmacies, without any factual support, falls short of stating a cause of action for failure to warn, even under the Federal Court's notice pleading standard.  (*See* Petition ¶ 100.)

10

Plaintiffs further ague that because the defendant pharmacies have voluntarily undertaken to provide customers with information or warnings about the prescription drug, the pharmacies have assumed a duty of care limited to the extent of their undertaking. (Pltfs. Mem. at 8-9.) *See Hoover's Dairy, Inc. v. Mid-Am. Dairymen*, 700 S.W.2d 426, 432 (Mo. banc 1990); *Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 132 (Mo. App. 1993). Plaintiffs are wrong. First, the cases on which they rely have nothing to do with pharmacies filling prescriptions. On that issue, Missouri courts have clearly held no duty to warn exists. *See Doe*, 3 S.W.3d at 419. Second, plaintiffs' vague allegation of an "undertaking," without any factual support or even a mere reference to the actual warnings allegedly given by the pharmacy defendants, falls short of stating a cause of action, even under the Federal Court's notice pleading standard. (*See* Petition ¶ 101.) Not only do plaintiffs' "upon information and belief" allegations fail to state the nature and substance of these alleged warnings, but they also do not allege that any of the pharmacy defendants actually provided the alleged warnings to *these particular plaintiffs*. Even if the pharmacy defendants had provided warnings as to some of the possible side effects of a drug, that does not mean that they assumed a duty to warn plaintiffs about *all* possible side effects of the drug. *See, e.g., Kasin v. Osco Drug, Inc.*, 312 Ill. App. 3d 823, 829 (2d Dist. 2000) ("By voluntarily undertaking to list some of the drug's side effects, [the pharmacy] did not assume a duty to list all possible side effects").

Finally, Plaintiffs contend that the learned intermediary doctrine does not apply here because **Merck**, not the pharmacies, advertised VIOXX® directly to the public. (Pltfs. Mem. at 10-11.) Plaintiffs state that "[i]f *manufacturers* want to directly deal with consumers in promoting their pharmaceutical drugs and conveying information directly to them, than (*sic*) normal common law rules of failure to warn should apply as would be the case with over-the-

11

counter drugs." (*Id.* at 11.) Regardless of whether there is any merit to this argument as it relates to Merck, it obviously is not relevant to the *pharmacy* defendants, who are not alleged to have done any such direct marketing of VIOXX®.

The allegations here cannot withstand this well-reasoned law. As discussed above, courts in Missouri and across the country agree that pharmacy defendants simply are not required to, and indeed should not be, second-guessing plaintiffs' doctors concerning whether VIOXX® should be prescribed or what discussion of side effects should take place, as plaintiffs allege. Plaintiffs make no allegation that the pharmacy defendants failed to fill their prescriptions according to the physicians' instructions, failed to label the bottles accurately, or otherwise failed to exercise due care in filling their prescriptions for VIOXX®. Because a pharmacy has no duty to warn of risks and side effects of a prescription drug under Missouri law, and because plaintiffs have not alleged any facts supporting the application of any exception to that general rule, plaintiffs cannot make out a negligence claim against the pharmacy defendants. Accordingly, the pharmacy defendants are fraudulently joined and the Court should disregard their citizenship when evaluating removal.[8/]

---

[8/]    Plaintiffs claim that the Health Care Provider Statute does not apply to the pharmacy defendants because they are "corporate seller defendants" and "not healthcare providers" within the meaning of the statute. (Pltfs. Mem. at 10, n. 7.) Any contention by plaintiffs that the pharmacy defendants, as pharmacies and corporations, are not "health care providers" under the statute is simply wrong. The statute specifically includes "pharmacists" as well as "any other person or entity that provides health care services under the authority of a license or certificate." Rev. Stat. Mo. § 538.205(4) (emphasis added); *Beuke v. Pharmacia & Upjohn Co.*, 2000 WL 34430453 at *2. It is undisputed by plaintiffs that the pharmacy defendants are entities engaged in the practice of pharmacy, which under the plain terms of the statute constitutes health care services. Furthermore, this argument is completely disingenuous given that plaintiffs also strenuously argue that the "corporate seller defendants" are pharmacies subject to the holding in *Horner* and the Missouri regulations applicable to pharmacists. (Pltfs. Mem. at 8.) In fact, plaintiffs even refer to these "seller defendants" as "healthcare providers" in other portions of their memorandum. *See* Pltfs. Mem. at 2, n. 4 ("In April of 2002, Merck sent a Dear Healthcare Provider letter to *healthcare providers like the seller defendants*." (emphasis added)). Plaintiffs' attempt to have it both ways further reveals that their sole

12

### b. Plaintiffs' Negligent Promotion Claim Against The Pharmacies Also Fails.

Apparently recognizing the failure of the their various claims against the pharmacy defendants, plaintiffs seek to create a new Missouri cause of action in this case – for "negligent promotion." Plaintiffs make a one sentence argument in a footnote to support of this cause of action: "Missouri law might also impose liability on the seller defendants for negligent promotion." (Pltfs. Mem. at 9, n. 6.) Plaintiffs provide no legal support for this argument. Not surprisingly, Merck uncovered no case in Missouri or any state finding a pharmacy liable for negligent promotion. However, even if such a claim were recognized in Missouri (which it has never been), it would fail here for many of the same reasons as plaintiffs' other claims.

Specifically, plaintiffs seek to hold the seller defendants liable "upon information and belief" for having negligently "advertised, marketed, and promoted VIOXX®." (Petition, Count XIV.) However, plaintiffs never allege that the pharmacy defendants actually advertised VIOXX® or bother to explain what was negligent about any of the pharmacy defendants' alleged advertising or promotion. Apparently, plaintiffs are contending that merely advertising and selling VIOXX® is itself a culpable act. But, in Missouri, merely selling a product under the circumstances alleged here is not actionable where the manufacturer is in the case. *See* Rev. Stat. Mo. § 537.762; *Letz v. Turbomeco Engine Corp.*, No. 93-1058-cv-w-6, 1993 WL 469182 at *1 (W.D. Mo. 1993). Put simply: plaintiffs are asking the Court to create a new cause of action that is directly contrary to a statute enacted by the legislature. The Court should decline the invitation.

---

purpose in joining the pharmacy defendants is not to pursue them to judgment, but merely to defeat jurisdiction by keeping them in the case in any way possible.

781440v.1

The absence of actual facts, as opposed to legal conclusions, is also fatal to plaintiffs' negligent promotion claim. Plaintiffs' "information and belief" allegations do not allege that they saw any promotions at any of the pharmacies, and plaintiffs do not identify any discounts or "other incentives" offered by any of the pharmacy defendants which allegedly encouraged them to fill their VIOXX® prescription at any particular pharmacy. Without identifying the alleged misrepresentations or "promotions" on which they relied, plaintiffs cannot satisfy the reliance or proximate cause elements of a negligence claim. *See, e.g., Faust v. Ryder Comm. Leasing & Srvs.*, 954 S.W.2d 383, 393 (Mo. App. 1997) (negligent misrepresentation requires plaintiff to "show 'reliance' on a representation which proximately caused the damages claimed").

B.     The Professional Representative Employee Defendants Are Fraudulently Joined.

Plaintiffs have sued Amy Sepko and Sherry Alberts, alleging causes of action for negligent failure to warn, deceptive trade practices, negligent misrepresentation, fraudulent misrepresentation, fraudulent omission, conspiracy, concert of action, and negligent promotion. Plaintiffs assert these claims under Missouri law. The professional representative employees were fraudulently joined for several reasons.

**1.     Plaintiffs Make Absolutely No Individualized Factual Allegations To Support Their Claims Against The Professional Representatives.**

First, the professional representatives were fraudulently joined because plaintiffs fail to allege any actual facts to support the claims against them. To the contrary, plaintiffs simply allege general facts regarding the "defendants" that clearly relate to Merck and not the individual defendants. In similar circumstances, courts have readily found that non-diverse defendants were fraudulently joined. *See, e.g., In re Diet Drugs,* 220 F. Supp. 2d at 424 (pharmaceutical representatives fraudulently joined where "there is no indication . . . that any of the plaintiffs, or any of the plaintiffs' doctors, received any drugs from the sales representative defendants");

14

*Rezulin I*, 133 F. Supp. 2d at 281-83 (denying remand where pharmaceutical representatives had no contact or communication with either plaintiffs or physicians and thus plaintiffs' claims lacked any "reasonable basis in fact"); *Wiggins v. Am. Home Prods. Corp.*, 2001 WL 34013629 at *3 n. 4 (N.D. Ala. Oct. 2, 2001) (finding resident defendant fraudulently joined because "plaintiffs ma[de] no specific allegation[s] against [the in-state defendant] at all in any of the eight counts of the complaint"), *aff'd*, 37 Fed. Appx. 980 (11th Cir. 2002); *Lyons v. Am. Tobacco Co.*, 1997 WL 809677at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

Plaintiffs assert various claims against both Merck and the employee defendants. However, plaintiffs do not allege in their petition or assert in their brief that the employee defendants ever said or did anything that connects them to plaintiffs; nor is there any reasonable basis to infer that the employee defendants personally did anything from which individual liability could flow. Instead, plaintiffs make only broad conclusory assertions about all the defendants and lump the employee defendants together with Merck. (*See, e.g.*, Petition, Counts V, VII-X, XII-XIV.) Because such collective allegations are not sufficient to state a factual basis for any claim against the employee defendants, this alone is reason to deny plaintiffs' motion to remand. *See, e.g., Tillman v. RI Reynolds Tobacco,* 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined where "plaintiff failed to tie these defendants to the underlying allegations of the complaint").

781440v.1

2.      **The Employee Defendants Are Also Fraudulently Joined Because There Is No Reasonable Basis That Plaintiffs Can Prevail On Any Of The Claims Against Them.**

The employee defendants are also fraudulently joined because plaintiffs have no reasonable possibility of prevailing on any of the causes of action plaintiffs pleaded against them. Below, we discuss generally why all the claims against the employee defendants must fail.

a.      **Plaintiffs Cannot Prevail Against The Employee Defendants For Deceptive Trade Practices, Negligence, Misrepresentation, And Fraudulent Omission.**

Plaintiffs have no reasonable factual or legal basis for recovery against the employee defendants on their fraud-based and failure-to-warn claims for several reasons.

First, plaintiffs' claims are devoid of any factual allegations that would support a finding that the employee defendants had any contact with plaintiffs' doctors or plaintiffs' pharmacies or plaintiffs themselves. Without such a causal connection, plaintiffs cannot allege proximate cause – an essential element of fraud and negligence claims[9/] – and thus have no basis for recovery against the employee defendants. *See, e.g., Rezulin I*, 133 F. Supp. 2d at 282, 287 ("The absence of any alleged connection between the sales representative and plaintiffs' decedent . . . is fatal to all of the claims against the sales representative").

Second, plaintiffs have not identified any specific representations, either in their petition or in their motion to remand, made by the employee defendants on which they relied. Failure to plead such representations with particularity is fatal to a statutory and common law fraud claim, as Federal Courts require a heightened pleading standard for such claims. *See, e.g., Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963-64 (D. Minn. 2000) (court "strongly disagreed" with plaintiffs' argument that a statutory fraud claim was not subject to the heightened pleading

---

[9/]     *Hartsfield v. Barkley*, 856 S.W.2d 342, 345-46 (Mo. App. 1993) (fraud); *Like v. Glaze*, 126 S.W.3d 783, 785 (Mo. App. 2004) (negligence).

standard of Rule 9(b), finding that Rule 9(b) applies where, as here, the "gravamen of the complaint is fraud"); *Summer Chase Second Addition Subdiv. Homeowners Ass'n v. Taylor-Morley, Inc.*, 146 S.W.3d 411, 419 (Mo. App. 2004) (to state a claim for negligent misrepresentation, the plaintiff must plead facts that show reliance on the defendant's information).[10]

With regard to their negligence claim, plaintiffs argue that Missouri courts "might" impose liability on the employee defendants for these causes of action, because an agent may be held liable in Missouri "whenever, under the circumstances, he owes a duty of care in regard to such matters to such third persons and he is liable whenever he is culpable of such negligence as would create a liability to another person if no relationship of master and servant or principal and agent existed between him and someone else." *Gen. Elec. Capital Corp. v. Rauch*, 970 S.W.2d 348, 356 (Mo. App. 1998). But this principle is inapplicable in this case: the employee defendants do not owe plaintiffs a duty of care, in that they do not have a duty to, as plaintiffs' allege, warn plaintiffs, re-design the product, do additional "testing," "advise the FDA," or change the packaging labels. (Petition ¶ 94.)

---

[10]    Plaintiffs attach to their motion several articles printed off the Internet, which they say show that the employee defendants "engaged in tortious activity in the sale and promotion of Vioxx." (Pltfs. Mem. at 2, n. 3, 13.) Merck objects to these exhibits because plaintiffs provide no evidence to authenticate them. *See* Fed. R. Evid. 901; *Coughlin*, 571 F.2d at 307 ("There can be no doubt but that the party who seeks to introduce written evidence must in some way authenticate it"). In addition, as plaintiffs attempt to use the articles to prove that the employee defendants engaged in the activities discussed in the articles, they are hearsay and inadmissible. *See In re Acceptance Ins. Co.*, 352 F. Supp. 2d at 950 (holding that newspaper articles are hearsay and quotations in articles are double hearsay); *Arkansas Right to Life State Political Action Comm. v. Butler*, 983 F. Supp. 1209, 1217 (W.D. Ark. 1997) (holding that photocopies of newspaper articles and press releases were inadmissible hearsay). Finally, plaintiffs offer no evidence that *these* employee defendants ever engaged in the alleged activities, and, if so, that they did it as to *these* plaintiffs. Plaintiffs' generic, unauthenticated hearsay articles are simply irrelevant to the alleged conduct of Ms. Sepko and Ms. Alberts. Plaintiffs offer nothing to connect these articles or their contents to this case, these employees, or these plaintiffs.

781440v.1

Plaintiffs also rely on several unpublished opinions to support their position that Missouri courts may impose liability on the employee defendants for negligent misrepresentation, misrepresentation, and fraudulent omission. However, all of the cases cited by plaintiffs are inapposite. For example, in *Ingwerson v. Wyeth-Ayerst Labs.*, the only case plaintiffs cite that applies Missouri law, the district court did not hold that there is a reasonable basis to support claims such as those asserted by plaintiffs here under Missouri law; rather, the court found that the pharmaceutical representative defendants were not fraudulently joined because the pharmaceutical manufacturer did "not dispute that Plaintiffs may [have] asserted a cognizable cause of action under Missouri law against" the pharmaceutical representatives. *Ingwerson*, No. 02-0982-CV-W-ODS (W.D. Mo. Jan. 22, 2003). Similarly, in *Marshall v. Wyeth*, while the court initially found that the pharmaceutical representative defendants were not fraudulently joined, the court *never adopted that decision*, and eventually determined:

> This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against a representative unless there is evidence that he or she personally and actively sold or promoted the alleged product to applicable plaintiffs or their physicians after he or she had knowledge that the product was dangerous or defective or after he or she had knowledge that warnings had not been otherwise appropriately given.

*Marshall v. Wyeth*, CV 04-PT-179-S (N.D. Ala. June 30, 2004). Finally, the two cases from the Middle District of Florida (*Parent* and *Hroncich*) are inapposite because they both rely on a case from the Florida state court which specifically held that Florida law recognizes a cause of action in fraud against pharmaceutical sales representatives. There is no such case in Missouri.

In short, plaintiffs utterly fail to state claims for failure-to-warn or misrepresentation against the employee defendants, and even applying plaintiffs' standard, there is no reasonable basis for predicting that they could prevail on these claims.

18

### b.   Plaintiffs Cannot Prevail Against The Employee Defendants For Concert Of Action Or Conspiracy.

Finally, there is no reasonable possibility that plaintiffs could prevail against the employee defendants for concert of action or conspiracy. (Petition Counts XII, XIII.) First, plaintiffs' failure to state any underlying claim against the employee defendants, as discussed above, means that there can be no claim for conspiracy or concert of action. *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 864 (Mo. App. 2000) ("[i]f the underlying tort claims failed to state causes of action . . . then a claim of conspiracy based on those tort claims will not stand"); *Bradley v. Ray*, 904 S.W.2d 302, 315, n. 11 (Mo. App. 1995) (*citing Richardson v. Holland*, 741 S.W.2d 751 (Mo. App. 1987) (rejecting claim under *Restatement (Second) Torts* § 876(c) because the defendant's conduct did not, on its own, constitute a breach of duty to the plaintiff).

Second, the universal law is that employees cannot conspire with their employer. *See Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 176 (Mo. App. 1996) ("the general rule holds that a corporation cannot conspire with its own employees."); *cf. Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978) ("unilateral activity by a single firm" cannot constitute concert of action); *H.J. Hodes & Co. v. Triangle Brass & Specialties Co.*, 1979 WL 1804 (W.D. Mo. Oct. 11, 1979) (same). Plaintiffs attempt to shoehorn their petition into a rarely used exception to this general rule by alleging that the employee defendants had an independent interest because they have something to gain for themselves, *i.e.*, bonuses and incentives from the increased sale of VIOXX® (Petition ¶¶ 152-53), does not overcome the general prohibition because, "without an organization legally distinct from the principal defendant, it would be impossible for an employee to have an interest that was truly independent" of the employer's, and hence, no claim for civil conspiracy exists. *Mika*, 112

781440v.1

S.W.3d at 95. Selling VIOXX® did not go beyond the employee defendants' agency relationship with Merck – it was entirely within the scope of the agency relationship. An employee attempting to increase sales for an employer and, in turn, receiving bonuses and incentives from the employer, which is essentially what the employee defendants are being accused of, is simply not acting independently of the employer. *See Trau-Med. of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703-04 (Tenn. 2002) ("there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment").

Further, as to plaintiffs' concert of action claim, the very few courts that have addressed "concert of action" in Missouri have limited this cause of action to extraordinary circumstances far unlike the everyday behavior of the employee defendants here. As one court noted: concert of action is a cause of action intended to address conduct like "automobile drag racing" and to otherwise deter "antisocial group conduct." *See, e.g., Zaft v. Eli Lilly & Co., Inc.*, 676 S.W.2d 241, 245 (Mo. banc 1984). Sales representatives promoting VIOXX® as alleged by plaintiffs is certainly not "antisocial group conduct" akin to drag racing. The employee defendants were doing their jobs as Merck employees – nothing more. Plaintiffs simply have no authority that this type of employee behavior is a separate "concert of action" tort.

By relying on *Restatement (Second) of Torts* § 876 ("Persons Acting in Concert") (Pltfs. Mem. at 12) in an attempt to support their theoretical cause of action, plaintiffs only highlight the inadequacy of this theory, as "*no* Missouri court has recognized a tort based on Restatement (Second) of Torts § 876(b), [and] Missouri courts have *rejected* claims fashioned after the Restatement (Second) of Torts § 876(c)." *Bradley*, 904 S.W.2d at 315 n. 11 (emphasis added).

781440v.1

Furthermore, under subsections (a) and (c), the Restatement requires that the defendant's conduct itself be "tortious" or, "separately considered, constitute[] a breach of duty" to the plaintiff. *Restatement (Second) of Torts* § 876(a), (c). As set forth above, no separate tort or breach of duty has been properly alleged against the employee defendants.[11/]

For this reason too, plaintiffs cannot reasonably prevail on their claims against the employee defendants, and the Court should disregard their presence for purposes of determining jurisdiction.

## II.     The Plaintiffs Have Been Fraudulently Misjoined.

Even if the non-diverse pharmacy defendants were not fraudulently joined, the Court would still have jurisdiction over eight of the twelve plaintiffs' claims because those plaintiffs do not assert claims against non-diverse defendants (other than the baseless claims against Merck's employees) and because plaintiffs' claims in this case are improperly joined.

As discussed in Merck's Motion to Sever, plaintiffs have sought to improperly join in one lawsuit the claims of twelve different people, from varying jurisdictions in Missouri and Arkansas, each of whom allege that they suffered personal injuries from taking VIOXX®. Notably, plaintiffs have not alleged that they were prescribed VIOXX® by the same doctor or for the same purpose. Plaintiffs have not alleged that they each purchased VIOXX® at the same pharmacy. Plaintiffs do not allege that their doctors each were visited by the same Merck professional representatives. Rather, plaintiffs' allegations reveal substantial differences in their claims: plaintiffs admit that they took VIOXX® over different time periods; plaintiffs have different medical backgrounds and different medical histories; and plaintiffs allege injuries that vary in nature. Without question, each separate alleged injury will turn on its own unique facts.

---

[11/]    For the additional reasons set forth above in section I.A.2.b. above, negligent promotion is not a viable claim against the employee defendants either.

21

As numerous other courts have recognized, claims such as these do not arise out of the same transaction or occurrence and, thus, cannot be joined in one suit.  Therefore, plaintiffs have been fraudulently misjoined, and the Court should separately determine whether it has jurisdiction over each claim.[12/]

Even if this Court determines that some of the plaintiffs have claims against non-diverse defendants and those defendants were not fraudulently joined, it should sever those plaintiffs' cases and remand them to state court while maintaining federal court jurisdiction over those plaintiffs who only have claims against diverse defendants.  Therefore, regardless of the Court's ruling on the fraudulent joinder issues, the claims of eight plaintiffs (Walter Dochsteiner, John Edwards, Melonie Robinson, Sally Johnson, May Donahue, Arnold Dean, Sharon McKiven, and Alma Mackey) are completely diverse as to the pharmacy defendants from whom they allegedly purchased VIOXX® and should not be remanded.  *See* Exhibit 3 to Merck's Notice of Removal.

---

[12/]    Relying on the unpublished opinion *Ballard v. Wyeth*, 4:04CV1111 CDP (E.D. Mo. Nov. 8, 2004), plaintiffs argue that the Court "cannot" consider Merck's fraudulent misjoinder argument because the Eighth Circuit has not yet recognized the doctrine.  (Pltfs. Mem., at 15.)  As an initial matter, the question of fraudulent misjoinder (and fraudulent joinder) *is* one of jurisdiction; it is simply not the case that a plaintiff can avoid a federal court ruling on fraudulent misjoinder by engaging in fraudulent misjoinder.  *See generally In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001).  Moreover, the mere fact that the Eighth Circuit has not yet adopted the fraudulent misjoinder theory does not require it to be disregarded by the Court as argued by plaintiffs.  Neither the Eighth Circuit nor any other Court of Appeals has rejected the fraudulent misjoinder doctrine.  Plaintiffs provide no reason why the Eighth Circuit should create a circuit split with the Eleventh and Fifth Circuits over a procedural theory that is entirely consistent with Eighth Circuit law that "[j]oinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal."  *Anderson*, 724 F.2d at 84.

## Conclusion

Plaintiffs here have engaged in manipulative pleading tactics by misjoining numerous claims by different plaintiffs and naming defendants against whom they have no reasonable chance of prevailing. For all of the foregoing reasons, the Court should deny plaintiffs' motion to remand.

Respectfully submitted,

Phillip A. Wittmann, 13625
Anthony M. DiLeo, 4942
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Dan H. Ball
Robert T. Ebert, Jr.
Stephen G. Strauss
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Phone: 314-259-2000
Fax: 314-259-2020

Counsel for Merck & Co., Inc.

23

781440v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Opposition to Plaintiff's Motion to Remand has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 22 day of July, 2005.

*Dorothy H. Wimberly*

781440v.1

STATE OF ARKANSAS      )
                              )

BENTON COUNTY          )

### AFFIDAVIT OF K. ELIZABETH CRAWFORD

I, K. Elizabeth Crawford ("Affiant"), being first duly sworn on oath, hereby deposes and states as follows:

1.    I am over the age of eighteen and competent to make this declaration.

2.    I am the Subsidiary Administrator for Wal-Mart Stores, Inc. I have personal knowledge as to the corporate structure of Wal-Mart Stores East, LP and Wal-Mart Stores East, Inc. and could testify competently thereto if called as a witness.

3.    None of the limited or general partners of Wal-Mart Stores East, LP are citizens of the state of Missouri.

4.    Wal-Mart Stores East, Inc. is not incorporated nor does it have its principal place of business in the state of Missouri.

FURTHER AFFIANT SAYETH NOT.

*K. Elizabeth Crawford*

SUBSCRIBED AND SWORN TO
Before me this 24th day of May,
2005.

*Sunshine Hester Redmond*
Notary Public

SUNSHINE HESTER REDMOND
NOTARY PUBLIC-STATE OF ARKANSAS
BENTON COUNTY
My Commission Expires 5-23-2013

**EXHIBIT A**