FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 28  PM 12:56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: <br><br> VIOXX PRODUCTS LITIGATION <br><br><br> This document relates to *Felicia Garza v. Merck & Co., Inc.*, No. 05-2586 | No. MDL Docket No. 1657 <br><br> Section L <br><br> JUDGE FALLON <br> MAG JUDGE KNOWLES |

## MERCK'S SURREPLY IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR EMERGENCY HEARING

In the guise of a reply brief in support of their motion for an emergency hearing, plaintiffs have filed additional briefing on the merits of Merck's removal. Specifically, plaintiffs seek to justify their expert's late-in-the-day 180-degree change in testimony and thereby escape *Tedford* by arguing that it was the doctor defendants' fault for failing to provide certain records. In fact, contrary to plaintiffs' suggestions, the record establishes that the thallium scans discussed in plaintiffs' reply were available to plaintiffs and their experts from the outset of this litigation. Moreover, plaintiffs cannot save their claims against the physicians by reference to irrelevant statements by a pharmacist. Finally, as Merck has previously argued, plaintiffs' ongoing claims

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep____
___ Doc. No_____

782195v.1

that their case presents an emergency are also without merit; there is no emergency that requires the Court to take up plaintiffs' case separately from the many similar pending motions involving the fraudulent joinder of doctors.

I.   **PLAINTIFFS CANNOT JUSTIFY THE DRAMATIC REVERSAL IN DR. SIMONINI'S OPINIONS BASED ON HIS PURPORTED LAST-MINUTE REVIEW OF ALLEGEDLY CRUCIAL THALLIUM SCANS.**

As set forth in the parties' prior briefing, plaintiffs defeated Merck's first removal of this case by relying on the affidavit of Dr. Simonini to validate malpractice claims against local, diversity-defeating physicians. Then, after the normal one-year removal period had expired, Dr. Simonini suddenly testified that the doctor defendants were not negligent. In their latest filing, plaintiffs try to minimize the import of that devastating shift in position by suggesting that Dr. Simonini only changed his opinion because, at the time of his original affidavit in support of the motion to remand, plaintiffs had not been given crucial thallium scans from Mr. Garza's cardiolite test. (Pls.' Reply at 5.) In fact, however, plaintiffs and their experts have had access to the thallium scans from the earliest stages of this litigation.

The existence of such scans was clearly revealed in the medical records that plaintiffs obtained from the doctor defendants through an informal, pre-suit request. (Records Produced Per Pre-Suit Request (Ex. 1).) Dr. Simonini recounts in his federal-court remand affidavit that he reviewed all of these records in preparing the affidavit in May 2003. (Simonini Aff. ¶ 3 (Ex. 2).) If the thallium scans were likely to be material to his opinions, he could and should have requested copies before proffering his opinions to a federal court in support of plaintiffs' initial motion to remand.

Plaintiffs' reply also insinuates that Dr. Simonini did not review the thallium scans early in this litigation because the doctors' counsel suspiciously delayed producing the scans for

months.[1] Of course, the doctors would have no motive to withhold scans that demonstrate (even to Dr. Simonini's satisfaction) that they correctly diagnosed Mr. Garza. More importantly, plaintiffs' own evidence reveals that the doctor defendants made the thallium scans available for inspection by plaintiffs on December 9, 2003 (Pls.' Reply Ex. G), and actually sent copies to plaintiffs' counsel on March 3, 2004. (Pls.' Reply Ex. F.) Inexplicably, however, plaintiffs' counsel apparently failed to forward this evidence – now characterized as crucial to Dr. Simonini's opinions – to their expert by the time he submitted his July 6, 2004 expert report, re-stating his earlier opinions about the doctors' negligence. (Simonini Expert Report (Ex. 3).) Indeed, plaintiffs' counsel claim that they did not send copies of these scans, which had been in their possession for months, to Dr. Simonini until October 2004. (Pls.' Reply Ex. P.) Plaintiffs provide no explanation for their delay in transmitting this purportedly crucial medical evidence, which they now suggest materially changed their expert's fundamental liability opinions in this case.

Based on this record, there is no legitimate explanation for the change in Dr. Simonini's opinion, and the *Tedford* doctrine applies to extend the removal deadline and prevent plaintiffs from using a flip-flopping expert to manipulate the diversity rules and twice evade a federal forum.

## II. PLAINTIFFS' SUGGESTION THAT THEIR CLAIMS AGAINST THE PHYSICIANS WERE VALIDATED BY A PHARMACIST ARE ALSO MERITLESS.

Plaintiffs' belated assertion in their reply brief that their negligent dispensing claim was supported by the report of Dr. Edwards, an expert pharmacist, is also unavailing. As a pharmacist, Dr. Edwards is obviously not qualified to opine on the standard of care for

---

[1] The lawyer handling the case for the doctor defendants, including discovery responses and document production, was Micaela Alvarez, now United States District Judge for the Southern District of Texas, Laredo Division. (*See* Plfs.' Reply Exs. G-J.)

physicians. Moreover, Dr. Edwards, a former FDA employee, was designated as an expert on issues of FDA labeling and drug distribution, not on whether the doctor defendants acted negligently. (Edwards Expert Report (Ex. 4).) In any event, his testimony relates to Merck's supposed failure to revise its warning label until one year after Mr. Garza's death. *Id.* Thus, Dr. Edwards' testimony undermines a claim of negligent prescription – rather than supporting it. (*See* Pls. Mem. in Supp. of Mot. to Modify Order of June 6, 2005 Regarding Physician Contacts at 3 (plaintiffs' claims against Merck are "by and large incompatible with a claim that the doctor is at fault").)

In short, after Dr. Simonini's deposition on December 9, 2004, in which he recanted his support for the claims against the physicians, plaintiffs' negligent dispensing claim was left with no expert support and no possibility of success under Texas law. Moreover, shortly thereafter, plaintiffs amended their state-court pleading to delete all factual allegations concerning their other claim against the physicians – for negligent misdiagnosis. (*Compare* First Am. Pet., ¶ 8(b) *with* Second Am. Pet., ¶ 7(b).) (Exs. 5 and 6, respectively.) At that point, plaintiffs' second negligence theory also became untenable, and the case became removable on fraudulent joinder grounds. *See, e.g., Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (holding that an in-state defendant is fraudulently joined when the plaintiff's petition "fails to state any specific factual conduct on her part whatsoever").

### III. THE SUBSTANTIVE FRAUDULENT JOINDER ISSUE PRESENTED IN *GARZA* SHOULD BE DECIDED IN COORDINATION WITH OTHER CASES.

Finally, plaintiffs continue to urge that their motion should be heard ahead of all the other cases involving fraudulent joinder because it represents a unique *Tedford* issue. However, the *Garza* plaintiffs' motion to remand presents both a question of substantive diversity law and an issue of removal procedure. The substantive question – namely, whether any viable negligence

782195v.1

claim can be stated against the prescribing doctors under state law – is presented in many other Vioxx cases in this MDL proceeding. The procedural question – namely, whether the *Tedford* doctrine applies on these facts to extend the time for removal – depends on the unique procedural history of *Garza*. Contrary to plaintiffs' suggestions, the presence of an additional procedural issue in *Garza* provides no basis for taking up the common substantive issue in this case now, ahead of other cases. Rather, the purpose of an MDL proceeding is to coordinate cases so that, regardless of procedural differences, common substantive issues are addressed consistently and efficiently across cases.

There are currently 120 cases in the MDL proceeding that raise fraudulent joinder issues; many of these cases involve non-diverse physicians. If the Court expedites consideration of this remand motion, these plaintiffs will all file emergency motions too, similarly arguing that they can get a quick trial in state court. This Court has indicated an intent to address remand issues in a coordinated manner and there is nothing special about this case to cause the Court to veer from that course. The MDL goals of uniformity and judicial economy both favor deferring consideration of the *Garza* remand motion until similar remand motions in the various cases involving fraudulent joinder of doctors can be considered together.[2]

---

[2] In any event, plaintiffs have shown no need for any "emergency" relief because, despite their complaints about missing a February 2005 state-court trial setting, there would be no imminent trial even if this case were remanded to state court. Merck's trial team includes Texas state Rep. Rene Oliveira, who has been attending the regular legislative session and two special legislative sessions since January 2005. The special session was recently extended to on or before August 20. Under Texas law, the state trial court must grant a nondiscretionary legislative continuance until 30 days after the legislature adjourns. TEX. CIV. PRAC. & REM. CODE § 30.003. Accordingly, Merck's removal of this case in mid-January 2005 did not disrupt a February trial setting, and even if the case were remanded, it would be at a standstill. This Court should consider the plaintiffs' remand motion along with the similar motions filed in other cases in a deliberate, coordinated manner.

## CONCLUSION

Plaintiffs' motion for an emergency hearing should be denied.

                                      Respectively submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Anthony M. DiLeo, 4942
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Rene O. Oliveira
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Road, Suite 9
Brownsville, TX  78520-8718
(956) 542-5666
Telecopy (956) 542-0016

Richard L. Josephson
State Bar No. 11031500
Federal ID No. 04614
BAKER BOTTS L.L.P.
910 Louisiana
Houston, Texas 77002
(713) 229-1460
Telecopy: (713) 229-1522

Attorneys for Merck & Co., Inc.

6

782195v.1

OF COUNSEL:
Travis J. Sales
State Bar No. 17532080
Federal ID No. 9173
BAKER BOTTS L.L.P.
910 Louisiana
Houston. Texas 77002
(713) 229-1234
Telecopy (713) 229-1522

Jaime A. Saenz
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Brownsville, TX  78522-2155
(956) 542-7441
Telecopy (956) 541-2170

Baldemar Garza
State Bar No. 07730300
Federal ID No. 8646
LAW OFFICE OF BALDEMAR GARZA
200 East Second Street
Rio Grande City, Texas 78582
(956) 487-7131
Telecopy (956) 487-8806

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Surreply in Opposition to Plaintiff's Motion for Emergency Hearing has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 28th day of July, 2005.

*Dorothy H. Wimberly*

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED