FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 29  PM 4:32

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | |
| | * | SECTION: L |
| | * | |
| **This Document Relates To: 2:05-cv-01034-EEF-DEK** | * | Judge Fallon |
| | * | Magistrate Judge Knowles |

**************************************************

### DEFENDANT MEDICINE SHOPPE INTERNATIONAL, INC.'S
### MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Medicine Shoppe International, Inc. ("MSI"), by and through undersigned

counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submits its Motion to

Dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted, and

states as follows:

1.      Plaintiffs have brought suit under multiple theories seeking damages for personal

injuries and economic loss as a result of their alleged use of the prescription pharmaceutical

product VIOXX®, manufactured by Merck & Co., Inc. ("Merck").

2.      Plaintiff George Bailey is a resident of Kansas, the other fourteen plaintiffs are

residents of Missouri and each alleges that they were sold VIOXX® by MSI.  Plaintiffs assert

five causes of action against MSI: strict product liability (Count III), negligent failure to warn

(Count VI), breach of warranty (Count VII), violation of the Missouri Merchandising Practices

Act (Count VIII) and conspiracy (Count XII).

3.      As set forth in MSI's accompanying Memorandum, filed contemporaneously

herewith and incorporated as if fully set forth herein, each of these counts fail to state a cause of

action on which relief may be granted, and MSI should be dismissed.

3114698                                    1

Fee_____
Process_____
X  Dktd_____
   CtRmDep_____
   Doc. No_____

4.      Initially, each of the plaintiffs' claims relies on plaintiffs' assertion that MSI "sold pharmaceuticals" including VIOXX®.  (Complaint ¶ 11).  Plaintiffs' claims fail because MSI never sold VIOXX® to plaintiffs or anyone else.  *See* Affidavit of Mary J. Connell at ¶ 3, attached hereto as Exhibit A.  Therefore, because each of plaintiffs' claims relies on MSI's alleged status as a seller of VIOXX®, which it is not and has not been, each of plaintiffs' claims should be dismissed.

5.      Plaintiffs' strict liability claim fails because under Missouri and Kansas law, it is well-recognized that a pharmacy, which plaintiffs purport MSI to be, cannot be sued under a theory of strict liability.  *Beuke v. Pharmacia & Upjohn Co.*, No. 4:99cv1606, 2000 WL 34430453 at *1 (E.D. Mo. 2000); *Budding v. SSM Healthcare System*, 19 S.W.3d 678, 682 (Mo. 2000).  *See also* K.S.A. § 60-3302.  Alternatively, MSI may be dismissed pursuant to R.S. Mo. § 537.762 and K.S.A. § 60-3306 because any potential liability against MSI is based solely on its alleged status as a seller in the stream of commerce.  Attached is Exhibit A which affidavit verifies that MSI would have the status of an innocent seller here.

6.      Plaintiffs' breach of warranty claim fails because filling a prescription as alleged by plaintiffs here is a service, not the sale of goods, and a pharmacist cannot create an express or implied warranty relating to properties of prescription drugs.  *See* R.S. Mo. § 538.205(5); *Beucke*, 2000 WL 34430453 at *1 (filling a prescription covered by the healthcare provider statute); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 292 (S.D.N.Y. 2001).  In addition, the same policy reasons that prevent a claim against a pharmacy in strict liability for filling a prescription would similarly prevent a breach of warranty claim.  *See Budding*, 19 S.W.3d at 678.

7.      Plaintiffs' negligent failure to warn claim fails because pursuant to the learned intermediary doctrine in Missouri and Kansas, it is the physician, not the pharmacy, who is responsible for advising the plaintiffs of risks and side effects of a prescription drug as plaintiffs have alleged.  *See Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670, 671 (8th Cir. 1985); *Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. App. 1999); *Nichols v. Central Merchandise, Inc.*, 817 P.2d 1131, 1133-34 (Kan. App. 1991).

8.      Plaintiffs' claims under the Missouri Merchandising Practices Act R.S. Mo. § 407.020 also fail.  The MMPA does not apply to the filling of prescriptions, because a pharmacy, as MSI is alleged to be by plaintiffs, is not a "seller" of "merchandise," but rather a provider of health care services.  Under the plaintiffs' allegations, MSI is not a "seller" of "merchandise" defrauding a customer.  Moreover, plaintiffs have utterly failed to comply with the heightened pleading standard required under Rule 9(b), in that plaintiffs have failed to identify what misrepresentations or communications MSI made to them, when they were made to them, and the contents of what was said, not said, or should have been said.

9.      Because plaintiffs' underlying tort claims fail to state a cause of action, plaintiff's conspiracy claim fails as well. *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848 (Mo. App. 2000); *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 31 P.3d 970, 976 (Kan. App. 2001).  In addition, plaintiffs have failed to adequately plead facts evidencing that MSI agreed to or participated in a conspiracy with Merck.

WHEREFORE, for the foregoing reasons and for those set forth in MSI's accompanying Memorandum, MSI respectfully requests that this Court enter its Order dismissing plaintiffs' complaint against MSI with prejudice, and for such further relief as this Court deems just and appropriate.

Respectfully submitted,

THOMPSON COBURN

By _____

David A. Dick, #65275 (E.D. Mo.)
B. Matthew Struble, #498813 (E.D. Mo.)
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000

Attorneys for Defendant Medicine Shoppe
International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant Medicine Shoppe International, Inc.'s Motion to Dismiss Plaintiffs' Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 14th day of July, 2005.

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave., Suite 100
New Orleans, LA 70113
Email:  rherman@hhkc.com
*Liaison Counsel for Plaintiffs*

Phillip A. Wittmann
Stone Pigman Walther Wittmann, LLC
546 Carondelet St.
New Orleans, LA 70130
Email:  pwittmann@stonepigman.com
*Liaison Counsel for Defendants*

3114698                          4

## AFFIDAVIT OF MARY J. CONNELL

Mary J. Connell, being duly sworn, deposes and says:

1.    I have personal knowledge of the matters and facts set forth herein and I am competent to testify thereto.

2.    I am the General Counsel for Medicine Shoppe International, Inc. ("MSI"). In that capacity, I am familiar with the general scope of MSI's operations.

3.    MSI does not own or operate retail pharmacies. MSI is a franchisor of retail pharmacies operating as Medicine Shoppe® pharmacies. Owned and operated by independent retail franchisees, Medicine Shoppe® pharmacies sell pharmacy products. MSI has not sold VIOXX® to consumers.

4.    MSI did not manufacture or participate in the manufacture of the prescription drug VIOXX®.

5.    MSI did not exercise any control over the design and manufacture of VIOXX®, or provide instructions or warnings to the manufacturer of VIOXX®.

6.    At all times relevant to this litigation, MSI possessed no knowledge or information regarding any defect in VIOXX® that might or could cause the injuries or damages alleged by plaintiffs in this matter.

7.    MSI did not make any changes to VIOXX® prior to sale of the product to consumers.

8.    MSI is not aware of any facts or circumstances on which  a verdict might be reached against it in claims arising out of the sale of Vioxx to consumers.

Mary J. Connell

3111583

Subscribed and sworn to before me, a Notary Public, on this 21ˢᵗ day of _April_ 2005.

_Jannie Whittington_

My Commission Expires: _8/27/06_

JANNIE WHITTINGTON
Notary Public - Notary Seal
State of Missouri
County of St. Louis
My Commission Exp. 08/27/2006

JANNIE WHITTINGTON
Notary Public - State of Missouri
County of St. Louis
My Commission Expires Aug. 27, 2006

3111583                                    - 2 -

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL No. 1657 |
|     PRODUCTS LIABILITY LITIGATION | * | |
| | * | |
| | * | SECTION: L |
| | * | |
| **This Document Relates To: 2:05-cv-01034-EEF-DEK** | * | Judge Fallon |
| | * | Magistrate Judge Knowles |

**************************************************

### DEFENDANT MEDICINE SHOPPE INTERNATIONAL, INC.'S
### MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Medicine Shoppe International, Inc. ("MSI"), submits the following memorandum in support of its motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted.

### Introduction

Plaintiffs have brought suit under multiple theories seeking damages for personal injuries and economic loss as a result of their alleged use of the prescription pharmaceutical product VIOXX®, manufactured by Merck & Co., Inc. ("Merck").  Plaintiff George Bailey is a resident of Kansas, the other fourteen plaintiffs are residents of Missouri and each alleges that they were sold VIOXX® by MSI.  Plaintiffs assert five causes of action against MSI: strict product liability (Count III), negligent failure to warn (Count VI), breach of warranty (Count VII), violation of the Missouri Merchandising Practices Act (Count VIII) and conspiracy (Count XII).  Because plaintiffs' complaint fails to state a cause of action as to any of the Counts directed at MSI, MSI should be dismissed.

### Argument

Pursuant to Rule 12(b)(6), a motion to dismiss is warranted when the pleadings fail to

state a claim upon which relief may be granted.  Dismissal under Rule 12(b)(6) "serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  To avoid dismissal, a "complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions."  *Id.*; *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999).

## I.   PLAINTIFFS' CLAIMS AGAINST MSI FAIL BECAUSE MSI DID NOT SELL VIOXX TO ANYONE, INCLUDING PLAINTIFFS

Initially, each of the plaintiffs' claims relies on plaintiff's assertion that MSI "sold pharmaceuticals" including VIOXX®.  (Complaint ¶ 11).  Plaintiffs' claims fail because MSI never sold VIOXX® to plaintiffs or anyone else.  *See* Affidavit of Mary J. Connell at ¶ 3, attached hereto as Exhibit A.  As set forth in Ms. Connell's affidavit, MSI is a franchisor of retail pharmacy stores and those pharmacy stores sell retail products to customers.  *Id.*  MSI does not own or operate retail pharmacies and has not sold VIOXX® to plaintiffs or anyone else.  *Id.*  Therefore, because each of plaintiffs' claims relies on MSI's alleged status as a seller, which it is not and has not been, each of plaintiffs' claims should be dismissed.

## II.   PLAINTIFFS' CLAIMS AGAINST MSI FOR STRICT LIABILITY (COUNT III) FAIL FOR TWO REASONS.

### A.   Under Missouri and Kansas Law, Health Care Providers Such As Pharmacies Cannot Be Sued In Strict Liability.

Under Missouri and Kansas law, a pharmacy, as plaintiffs allege MSI to be, cannot be sued under a theory of strict liability.  *See Beuke v. Pharmacia & Upjohn Co.*, No. 4:99cv1606, 2000 WL 34430453 at *1 (E.D. Mo. 2000).  In *Beuke*, the plaintiff filed a product liability suit against Upjohn and Schroeder's Pharmacy, alleging that a product manufactured by Upjohn caused her personal injuries.  *Id.*  Plaintiff's sole claim against the pharmacy was based on its

sale of the prescription drug. *Id.* Plaintiff alleged that the pharmacy failed to provide adequate warnings about the alleged defective nature of the drug. *Id.*

In holding that there was no reasonable basis in law supporting a claim against the pharmacy (and that it was therefore fraudulently joined), Judge Jackson relied on the Missouri Supreme Court's ruling in *Budding v. SSM Healthcare System*, 19 S.W.3d 678, (Mo. 2000), that "strict liability claims against health care providers . . . are not viable in Missouri." 2000 WL 34430453 at *1. According to the *Beuke* decision, "[t]he *Budding* court concluded that the Missouri legislature intended to eliminate liability of health care providers in strict products liability claims." *Id.* The court expressly found that this rule applied to pharmacies because they are health care providers under the act. *Id.* at *2. "Because, under Missouri law, [pharmacy defendant] is a health care provider, it cannot be sued under a theory of strict liability." *Id. See also* R.S. Mo. § 538.205(4).

Similarly, the Kansas Product Liability Act, K.S.A. § 60-3302, specifically excludes "health care providers" from its definition of "product sellers" who can be liable for strict products liability. "Health care provider" is specifically defined to include "a pharmacist licensed by the state board of pharmacy." K.S.A. § 40-3401. The same logic that defines MSI as a health care provider under Missouri law applies with equal force under Kansas law.

Like the pharmacy defendant's conduct in *Beuke*, MSI's alleged conduct of filling a prescription is covered by the Missouri health care provider statute and the Kansas Product Liability Act. Therefore, under Missouri and Kansas law, such health care providers, and specifically pharmacies, cannot be held liable in strict products liability. Accordingly, Count III must be dismissed.

**B.     Count III Should Also Be Dismissed Under R.S. Mo. § 537.762 and K.S.A. § 60-3306 Because Of Merck's Presence In the Case.**

Count III should also be dismissed for the separate and independent reason that under Missouri law, "a defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim" when "another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." R.S. Mo. § 537.762. *See, e.g., Letz v. Turbomeco Engine Corp.*, No. 93-1058-cv-w-6, 1993 WL 469182 at *1 (W.D. Mo. 1993).

Similarly, K.S.A. § 60-3306 provides that a product seller shall not be subject to product liability if the seller had no knowledge of the defect, could not have discovered the defect while exercising reasonable care, was not a manufacturer of the defective product, and the manufacturer is before the court and could satisfy any judgment against it.

Any potential liability against MSI is based solely on its alleged status as a seller in the stream of commerce.  MSI does not know of any other facts on which liability against it could be based.  *See* Exhibit A.  Additionally, Merck, the manufacturer of the drug, is properly before the court.  As alleged by plaintiffs, Merck had worldwide sales of $2.5 billion for VIOXX® in 2003.  (Complaint ¶ 49.)  Plaintiffs could obtain total recovery from Merck if they were to prevail on their claims.  Thus, Mo. R.S. § 537.762 and K.S.A. § 60-3306 provide yet another reason for this Court to dismiss plaintiffs' strict liability claim.  *See, e.g., Letz*, 1993 WL 469182 at *1; *Bizzle v. McKesson Corp.*, 961 F.2d 719, 721 (8th Cir. (Mo.) 1992).

## III.     COUNT VII FAILS TO STATE A CLAIM AGAINST MSI FOR BREACH OF WARRANTY.

In Count VII, plaintiffs seek to pursue a breach of warranty claim against MSI based upon its alleged role as a pharmacy that dispensed VIOXX®. (*See* Complaint ¶ 111 (alleging

that MSI breached warranties "by selling to plaintiffs VIOXX® that was not of merchantable quality, was unsafe and whose potential side effects were substantially untested")).  Plaintiffs' breach of warranty claim is legally insufficient.  In Missouri, pharmacies are not liable for breach of warranty for filling a prescription because under Missouri's health care provider statute, filling a prescription constitutes a "service," rather than the sale of goods.  Under R.S. Mo. § 538.205(4), pharmacists and pharmacies are classified as health care providers. *See Beuke*, 2000 WL 34430453 at *1 (filling a prescription covered by the healthcare provider statute).  In addition, the sale of a product to a patient "incidental or pursuant to the practice of the health care professional's profession" is classified as health care services. *See* R.S. Mo. § 538.205(5).  Breach of warranty actions as alleged here apply only to the sale of goods – not the provision of services. *See* R.S. Mo. § 400.2-102; *Technicon Instruments Corp. v. Pease*, 829 S.W.2d 489, 490 (Mo. App. 1992).  Therefore, plaintiffs' breach of warranty claim must be dismissed.

Notably, such a result is consistent with the policy concerns that underlay the Missouri Supreme Court's holding in *Budding*, barring strict product liability claims against pharmacies. After all, the logic of *Budding* in barring strict liability claims against health care providers was based partly on the fact that the statutory health care affidavit which must be filed in all actions against health care providers, pursuant to R.S. Mo. § 538.225, requires that the reviewing expert find that the health care provider deviated from the standard of care.  The Missouri Supreme Court found that it would be illogical to assume that the Missouri legislature would permit strict liability claims against health care providers where deviation from the standard of care need not be shown, in light of the affidavit requirement. *Budding*, 19 S.W.3d at 678.  This logic is equally applicable to breach of warranty actions against health care providers such as pharmacies,

because such contract claims do not require a showing that a standard of care was violated.

Furthermore, "almost every state that has considered the issue has declined to find pharmacists liable for breach of either implied or express warranty with respect to properties of prescription drugs." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 292 (S.D.N.Y. 2001). *See, e.g., In re New York Diet Drug Litig.*, 691 N.Y.S.2d 501, 502 (N.Y. App. Div. 1999) (because plaintiffs failed to allege that the pharmacy did not fill their prescriptions as directed by the manufacturers and physicians, "there is no basis to hold the pharmacist liable under theories of . . . breach of warranty"); *McLeod v. W.S. Merrell Co.*, 174 So.2d 736, 739 (Fla. 1965) (holding that a transaction in which a pharmacist sells a prescription drug to a customer "is not one out of which a warranty, even under most modern standards, would be implied"); *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70, 75 (Ga. Ct. App. 1997) ("implied warranties do not apply to the dispensing of medication by a pharmacist"); *Bichler v. Willing*, 58 A.D.2d 331, 333-34 (N.Y. App. Div. 1977) (concluding that there is no cause of action for breach of any implied warranties where pharmacist properly fills a prescription with an unadulterated drug); *Batiste v. Am. Home Prods. Corp.*, 231 S.E.2d 269, 276 (N.C. App. 1977) (court was "not willing to extend the applicability of implied warranties of fitness and merchantability" to sale of prescription drug by pharmacy); *Makripodis v. Merrell-Dow Pharm., Inc.*, 523 A.2d 374, 377 (Pa. Super. Ct. 1987) (pharmacist who dispenses prescription drugs pursuant to a prescription from a licensed physician cannot be held liable for breach of the warranties of merchantability and fitness).

In determining that a pharmacist cannot be held liable for breach of warranties from the sale of a prescription drug, the courts have reasoned that:

> [I]mplied warranties are conditioned on the buyer's reliance upon
> the skill and judgment of the seller but when a consumer asks a

> druggist to fill a prescription, thus enabling him to obtain a drug which is not otherwise available to the public, he does not rely on the druggist's judgment as to whether that particular drug is inherently fit for its intended purpose but rather he places that confidence and reliance in the physician who prescribed the remedy.

*Bichler*, 58 A.D.2d at 333-34; *see also McLeod*, 174 So.2d at 739 ("Obviously, the patient-

purchaser did not rely upon the judgment of the retail druggist in assuming that the drug would

be fit for its intended purpose. This confidence had been placed in the physician who prescribed

the remedy"); *Batiste*, 231 S.E.2d at 276 (same). An additional reason given for rejecting

plaintiffs' breach of warranty claims against pharmacies is that:

> [J]ust as there is no basis for finding consumer reliance on pharmacists, so too there is no basis for adopting the view that a pharmacist is a retail merchant like any other with respect to the sale of prescription drugs. A pharmacist's sales of prescription drugs are not attributable to his or her marketing the properties of the drugs. They are attributable to physicians' prescriptions. In this sense, a pharmacist provides 'a service to the doctor and [acts] as an extension of the doctor in the same sense as a technician who takes an x-ray or analyzes a blood sample on a doctor's order.' In light of the special circumstances of pharmacy sales, 'it is purely hyperbole to suggest . . . that the role of the pharmacist is similar to that of a clerk in an ordinary retail store.'"

*Rezulin*, 133 F. Supp. 2d at 292 (citation omitted); *Makripodis*, 523 A.2d at 593-94 ( "the

dominant role of the pharmacist in filling a prescription is the performance of a service rather

than the sale of a product and thus . . . no warranties arise as an incident of the sale of a

prescription drug"); *cf. Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640, 652-53 (Ill. 2003)

(holding that hospital's provision of defective surgical device was primarily a transaction for

services rather than goods so plaintiff did not have a claim for breach of the implied warranty of

merchantability under the UCC).

In short, the majority of states, including Missouri, recognize that filling a prescription

cannot result in the creation (or breach) of a warranty.  Moreover, the Missouri Supreme Court's logic in *Budding* would also apply to bar breach of warranty claims against pharmacies. Additionally, there are no Kansas decisions reaching a different result.  Accordingly, plaintiffs cannot make out a breach of warranty claim against MSI, and Count VII should be dismissed.[1/]

## IV.  COUNT VI SHOULD BE DISMISSED BECAUSE MSI HAD NO DUTY TO WARN PLAINTIFFS OF THE ALLEGED RISKS OF VIOXX.

Plaintiffs' failure to warn claim (Count VI) fails because MSI had no duty to warn him of the alleged risks of VIOXX®.  In seeking to recover from Merck on this negligence theory, plaintiffs do not allege that MSI failed to fill their prescriptions according to the physician's instructions, failed to label the bottles accurately, or otherwise failed to exercise due care in filling their prescriptions for VIOXX®.  Rather, plaintiffs simply accuse MSI of negligently failing to warn plaintiffs "that VIOXX® had serious side effects." (Complaint ¶ 105).  Such a claim is not cognizable under Missouri or Kansas law.

It is well-established in Missouri that it is the physician, not pharmacies or other distributors, who is to communicate risks to the patient.  *See Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670, 671 (8th Cir. 1985) ("in cases involving prescription drugs, the manufacturer has 'a duty to properly warn the doctor of the danger involved.'  The physician acts as a 'learned intermediary' between the manufacturer and the patient.  Thus, a warning to the doctor is deemed a warning to the patient; the manufacturer need not communicate directly with all ultimate users of prescription drugs"), citing *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo. 1967) (other

---

[1/] Plaintiffs' breach of warranty claim could also be dismissed because plaintiff fails to plead any express warranties made by MSI.  Plaintiff only alleges that MSI "sold" VIOXX® to them.  Because the creation of an express warranty requires an affirmation of fact or promise that becomes "part of the basis of the bargain," an express warranty claim cannot stand.  *See* R.S. Mo. § 400.2-313 (2004), K.S.A. § 84-2-313. Plaintiffs cannot allege any "express warranties" made by MSI because plaintiffs could only make their decision to purchase VIOXX® based on the direction of their physicians, not on any representation made by MSI.

citations omitted).  *See also Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. App. 1999).

Likewise, Kansas has also expressly extended the learned intermediary doctrine to include a pharmacy that properly fills a prescription pursuant to a physician's order.  Thus, in *Nichols v. Central Merchandise, Inc.*, 817 P.2d 1131, 1133-34 (Kan. App. 1991), the court held that a pharmacist does not have a duty to warn a customer of the dangers presented by a prescription drug when the pharmacist accurately filled the prescription, there were no clear errors on the face of the prescription, and the drug was not contraindicated for the patient.  Here, plaintiffs do not allege that MSI had patient-specific information that VIOXX® was contraindicated, or that the prescriptions allegedly filled by MSI were for a dosage that was erroneous on its face.  Rather, plaintiffs allege that the prescription drug itself was dangerous.  In this circumstance, as held by courts throughout the country, a pharmacy does not have a duty to warn plaintiffs.

It is well-recognized in numerous other states that "pharmacies generally have no common-law or statutory duty to warn customers of the risks associated with the drugs they purchase."  *Kohl v. American Home Prods. Corp.*, 78 F. Supp. 2d 885, 893 (W.D. Ark. 1999).  *See also Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004); *Cottam v. CVS Pharmacy*, 764 N.E.2d 814 (Mass. 2002); *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. App. 2000); *Fakhouri v. Taylor*, 618 N.E.2d 518 (1993); *Walker v. Jack Eckerd Corp.*, 434 S.E.2d 63 (Ga. App. 1993); *McKee v. American Home Prods. Corp.*, 782 P.2d 1045 (Wash. 1989); *Ealy v. Richardson-Merrell, Inc.*, No. 83-3504, 1987 WL 159970 at *3 (D.D.C. 1987); *Pysz v. Henry's Drug Store*, 457 So.2d 561 (Fla. App. 1984).

Missouri law has never recognized a duty to warn in a case such as this, and *Horner v.*

*Spallito*, 1 S.W.3d 519 (Mo. App. 1999) cited by plaintiffs' counsel in other similar VIOXX®

cases, is not to the contrary.  In *Horner*, the pharmacist knew the dosage of the "strong hypnotic

drug" was three times greater than the recommended maximum dose <u>and</u> that a second

depressant medicine was being dangerously combined.  *Id.* at 520.  As the *Rezulin* court

recognized in distinguishing *Horner*, such a cause of action does not abrogate the learned

intermediary doctrine in a case such as this; rather, *Horner* "dealt with the unquestioning

provision of addictive drugs over lengthy periods." 133 F. Supp. 2d at 289-90.  The differences

between this case and *Horner* are self-evident.  In contrast to the plaintiff there, plaintiffs do not

allege that they were prescribed an unusually high dose, or that they were prescribed

contraindicated medicines that reacted poorly with one another.  Rather, they allege that the mere

act of filling their VIOXX® prescriptions constituted negligence.  Missouri law simply does not

require a pharmacy to second-guess plaintiffs' doctors concerning whether VIOXX® should be

prescribed or what discussion of side effects needs to take place, as plaintiffs allege.

Numerous other courts agree.  For example, in *Kohl*, the court recognized that a

pharmacy must use reasonable care "to fill prescriptions as prescribed and properly label the

prescriptions," but this limited duty did not impose a broader duty to warn on pharmacies.  The

court stated that, "we do not believe this duty [of due care] encompasses a general duty to warn

customers of potential drug side effects or to give advice on the efficacy of the drug . . . ." 78 F.

Supp. 2d at 892.  The *Kohl* court also recognized that imposing a duty to warn on pharmacists

would make no practical sense for prescription drugs, and would inappropriately interfere with

the doctor-patient relationship:

> Physicians exercising sound medical judgment act as
> intermediaries in the chain of distribution, preempting, as it were,
> the exercise of discretion by the supplier-pharmacist . . . . [W]e see
> no sound reason for imposing on pharmacists the duty to supply

>information about the risks of drugs that have already been
>prescribed. On the contrary, such a rule would have the effect of
>undermining the physician-patient relationship by engendering
>fear, doubt, and second-guessing.

*Id.* at 893 (quoting *Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383 (Pa. 1991)); *see also*

*McKee v. American Home Prods. Corp.*, 782 P.2d 1045 (Wash. 1989); *Moore v. Memorial*

*Hospital of Gulfport*, 825 So.2d 658, 664 (Miss. 2002); *Adkins v. Mong*, 425 N.W.2d 151, 152

(Mich. App. 1988); *Ferguson v. Williams*, 399 S.E.2d 389, 393 (N.C. App. 1991); *Moran v. Wal-*

*Mart Stores, Inc.*, 30 S.W.3d 455, 469 (Tex. App. 2000).

Because a pharmacy has no duty to warn of risks and side effects of a prescription drug

as alleged, plaintiffs have not alleged a viable failure to warn negligence claim against MSI

under Missouri or Kansas law.

## V.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MSI UNDER THE MMPA.

In Count VIII, plaintiffs allege that MSI "violated the [Missouri Merchandising Practices

Act"] by their use of false and misleading misrepresentations or omissions of material fact in

connection with the sale of VIOXX®." (Compl. ¶ 116).  Missouri's Merchandising Practices

Act ("MMPA") states that "[t]he act, use or employment by any person of any deception, fraud,

false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression,

or omission of any material fact in connection with the sale or advertisement of any merchandise

in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice."

R.S. Mo. § 407.020 (2004).  This claim must fail. [2/]

First, the MMPA does not apply to the filling of prescriptions, because a pharmacy, as

MSI is alleged to be by plaintiffs, is not a "seller" of "merchandise," but rather a provider of

health care services.  This statute was not intended to apply to passive acts such as filling a

---

[2/]     Additionally, plaintiff Bailey fails to state a claim under the Act because, as alleged in the complaint, he is
a resident of Kansas, not Missouri.

prescription. MSI did not actively seek out plaintiffs to purchase this prescription drug. This is simply not a case of a "seller" of "merchandise" defrauding a customer. Not surprisingly, MSI did not uncover any Missouri case in which a health care provider could be liable to private individuals under the MMPA for allegedly simply (and correctly) filling a prescription issued by a physician. For this reason, the MMPA claim should be dismissed.

Moreover, to the extent any "fraud, deception, false pretense, etc." is alleged here, it is aimed at Merck and its employees, not MSI. For example, plaintiffs do not and cannot allege that MSI engaged in the "Dodgeball VIOXX®" marketing scheme allegedly practiced by Merck and its employees. Plaintiffs are in essence merely alleging that MSI failed to warn of dangers that it should have known about it. As discussed above, MSI owed plaintiffs no duty to warn under Missouri law.

As a fundamental matter, plaintiffs simply do not identify any trickery or misrepresentations made by MSI to plaintiffs. Plaintiffs have utterly failed to identify what misrepresentations or communications MSI made to them, when they were made to them, and the contents of what was said, not said, or should have been said to them. Failure to plead such representations with particularity is fatal to a statutory fraud claim, as Federal Courts require a heightened pleading standard for such claims. *See In re General Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) ("The pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes." Court dismissed plaintiffs' consumer fraud claims because "plaintiffs have failed to plead these claims with the specificity required by Fed.R.Civ.P. 9(b)."); *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963-64 (D. Minn. 2000) (Court "strongly disagreed" with plaintiff's argument that a statutory fraud claim was not subject to the heightened pleading standard of Rule 9(b), finding that Rule 9(b)

applies where, as here, the "gravaman of the complaint is fraud"). For this additional reason, the Court should dismiss plaintiffs' MMPA claim.

## VI.   THERE IS NO BASIS TO HOLD MSI LIABLE IN CONSPIRACY.

Count XII, which alleges conspiracy, must fail for several reasons. First, this claim is derivative of plaintiffs' other claims against MSI, all of which are legally insufficient. A "civil conspiracy" is defined in Missouri as "an agreement between two or more persons to do an unlawful act or a lawful act in an unlawful manner." *Tindall v. Holder*, 892 S.W.2d 314, 321 (Mo. App. 1994). "In order to establish a cause of action for civil conspiracy, the plaintiff must plead sufficient facts to support the following elements: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful acts; and 5) damages." *Schott v. Beussink*, 950 S.W.2d 621, 627 (Mo. App. 1997).

However, under Missouri and Kansas law, "there can be no cause of action for conspiracy in the absence of an underlying wrongful act or tort." *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 864 (Mo. App. 2000). Thus, when "underlying tort claims fail[] to state cause of action . . . a claim of conspiracy based on those tort claims will not stand." *Id.* (plaintiff's conspiracy claim failed because the underlying tort claims brought by plaintiff were either dismissed for failure to state a claim or there was a defendant's verdict at trial). *See also Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 31 P.3d 970, 976 (Kan. App. 2001). As discussed above, plaintiffs' underlying tort claims fail to state a cause of action. Therefore, the conspiracy count directed to MSI should be dismissed.

Second, plaintiffs' conspiracy claim must fail because plaintiffs' generic allegations are directed at Merck and Merck's employees, not MSI. Here, the entire premise of plaintiffs' concert of action and conspiracy claims is that MSI conspired "to sell more profitable

3114720                                    13

prescriptions of Vioxx," but all of the allegations are aimed at Merck, which allegedly failed to warn of the adverse health effects of VIOXX® and allegedly "creat[ed] and draft[ed] a training manual for the sales force to dodge and mislead doctors when they were asked questions about the cardiothrombotic effects of Vioxx," also known as "Dodgeball Vioxx." (Complaint ¶¶ 152, 153). Plaintiffs cannot and do not allege that MSI was in any way involved in Merck's alleged "Dodgeball VIOXX®" marketing program or that MSI had any involvement with the marketing of VIOXX® generally. Plaintiffs also do not allege that MSI committed any overt act in furtherance of the alleged "Dodgeball VIOXX®" conspiracy.

Plaintiffs also allege that Merck and Merck's professional representatives (Sepko and Alberts) had a common plan to withhold information from "plaintiffs, plaintiffs' treating physician, health care providers and/or the general public." *Id.* at ¶ 155. These allegations have nothing to do with MSI. MSI as an alleged seller of VIOXX® could not logically have been part of a plan to withhold information from plaintiffs or plaintiffs' treating physicians. Morever, if MSI was a seller as plaintiffs allege, MSI would be last in the chain of distribution. Only after Merck manufactured the drug and only after plaintiffs received their prescriptions from their physicians does MSI allegedly come into play. At that point, MSI would have had no duty but to accurately fill a facially valid prescription.

In short, both Missouri and Kansas law, as well as common sense, demand that the conspiracy allegations against MSI be dismissed. *See e.g., Snelling v. Westhoff,* 972 F.2d 199, 200 (8th Cir. (Mo.) 1992) citing *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir. (Mo.) 1988) ("conspiracy claim requires allegations of specific facts showing 'meeting of minds' among alleged conspirators"); *Zafft,* 676 S.W.2d at 245; *Bradley,* 904 S.W.2d at 315.

## Conclusion

None of the plaintiffs' claims against MSI can be sustained under Missouri or Kansas law. For the foregoing reasons, MSI respectfully requests that this Court enter an Order dismissing plaintiffs' claims against MSI with prejudice, and for such other and further relief as this Court deems just and necessary.

Respectfully submitted,

THOMPSON COBURN

By _____
David A. Dick, #65275 (E.D. Mo.)
B. Matthew Struble, #498813 (E.D. Mo.)
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000

Attorneys for Defendant Medicine Shoppe
International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant Medicine Shoppe International, Inc.'s Memorandum in Support of Its Motion to Dismiss has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 14th day of July, 2005.

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave., Suite 100
New Orleans, LA 70113
Email: rherman@hhkc.com
*Liaison Counsel for Plaintiffs*

Phillip A. Wittmann
Stone Pigman Walther Wittmann, LLC
546 Carondelet St.
New Orleans, LA 70130
Email: pwittmann@stonepigman.com
*Liaison Counsel for Defendants*

3114720                                    16

## AFFIDAVIT OF MARY J. CONNELL

Mary J. Connell, being duly sworn, deposes and says:

1.     I have personal knowledge of the matters and facts set forth herein and I am competent to testify thereto.

2.     I am the General Counsel for Medicine Shoppe International, Inc. ("MSI"). In that capacity, I am familiar with the general scope of MSI's operations.

3.     MSI does not own or operate retail pharmacies. MSI is a franchisor of retail pharmacies operating as Medicine Shoppe® pharmacies. Owned and operated by independent retail franchisees, Medicine Shoppe® pharmacies sell pharmacy products. MSI has not sold VIOXX® to consumers.

4.     MSI did not manufacture or participate in the manufacture of the prescription drug VIOXX®.

5.     MSI did not exercise any control over the design and manufacture of VIOXX®, or provide instructions or warnings to the manufacturer of VIOXX®.

6.     At all times relevant to this litigation, MSI possessed no knowledge or information regarding any defect in VIOXX® that might or could cause the injuries or damages alleged by plaintiffs in this matter.

7.     MSI did not make any changes to VIOXX® prior to sale of the product to consumers.

8.     MSI is not aware of any facts or circumstances on which a verdict might be reached against it in claims arising out of the sale of Vioxx to consumers.

_____
Mary J. Connell

3111583

Subscribed and sworn to before me, a Notary Public, on this 21st day of _April_
2005.

My Commission Expires: _8/27/06_

JANNIE WHITTINGTON
Notary Public - Notary Seal
State of Missouri
County of St. Louis
My Commission Exp. 08/27/2006

JANNIE WHITTINGTON
Notary Public - State of Missouri
County of St. Louis
My Commission Expires Aug. 27, 2006

3111583                              - 2 -

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL No. 1657 |
|      PRODUCTS LIABILITY LITIGATION | * | |
| | * | |
| | * | SECTION: L |
| | * | |
| **This Document Relates To: 2:05-CV-01034-EEF-DEK** | * | Judge Fallon |
| | * | Magistrate Judge Knowles |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## [PROPOSED] ORDER

The Court, having reviewed Defendant Medicine Shoppe International, Inc.'s Motion to Dismiss and Memorandum in Support, hereby finds that Defendant's Motion is well taken. The Court therefore GRANTS said Motion and hereby ORDERS that Plaintiffs' claims against Medicine Shoppe International, Inc. be, and hereby are, dismissed with prejudice.

_____

DATE:_____

3165648

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL No. 1657 |
|       PRODUCTS LIABILITY LITIGATION | * | |
| | * | |
| | * | SECTION: L |
| | * | |
| This Document Relates To: *George Bailey, et al. v.* | * | |
| *Merck & Co., Inc. et al.*, No. 2:05-cv-01034-EEF-DEK | * | Judge Fallon |
| | * | Magistrate Judge Knowles |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendant Medicine Shoppe International, Inc.'s Motion

to Dismiss will be brought on for hearing on January 4, 2006 at 9:00 a.m. before the Honorable

Judge Fallon, United States District Court, Eastern District of Louisiana, 500 Poydras Street,

New Orleans, Louisiana. Defendant Medicine Shoppe International, Inc. further states that it

anticipates the noticed hearing may be continued without date by the Court, in accordance with

the continuance of other, similar motions filed in MDL 1657.

Respectfully submitted,

THOMPSON COBURN LLP

By _____

David A. Dick, #65275 (E.D. Mo.)
B. Matthew Struble, #498813 (E.D. Mo.)
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000

Attorneys for Defendant Medicine Shoppe
International, Inc.

1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Hearing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 29th day of July, 2005.

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave., Suite 100
New Orleans, LA 70113
Email: rherman@hhkc.com
*Liaison Counsel for Plaintiffs*

Phillip A. Wittmann
Stone Pigman Walther Wittmann, LLC
546 Carondelet St.
New Orleans, LA 70130
Email: pwittmann@stonepigman.com
*Liaison Counsel for Defendants*