Case 2:05-md-01657-EEF-DEK   Document 795   Filed 08/04/05   Page 1 of 11



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG -4  AM 9: 13

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | * | MDL Docket No. 1657 |
| | * | |
| VIOXX PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to *Regina Neel v. Merck & Co., Inc., et al.*, no. 05-1029 | * | MAG. JUDGE KNOWLES |
| * * * * * * * * * * * * * * * * * * | * | |

## MERCK'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Comes now Merck & Co., Inc. ("Merck") and for its opposition to plaintiffs' motion to remand states as follows:

### Background

This is a case involving the prescription drug VIOXX®. In this case, plaintiff alleges that, as a result of taking VIOXX®, she suffered serious debilitating cardiovascular events, including a heart attack. (First Amended Petition ("FAP") ¶ 14.) Plaintiff alleges a variety of claims against Merck arising out of her contention that VIOXX® is defectively designed, inadequately tested, and lacked proper warnings associated with its use. (*Id.* at ¶¶ 19, 24-25, 31-32.)

1

783126v.1

In a transparent attempt to defeat Merck's removal rights, plaintiff also asserted a claim in her petition for negligent failure to warn against SEMO Drugs of Kennett, Inc. (Petition for Damages, Count I.) Plaintiff based this claim on the allegations that the pharmacy filled her prescriptions for VIOXX® and negligently failed to warn her of the dangers associated with VIOXX® when she had her prescriptions filled. Prior to Merck's removal, plaintiff filed a first amended petition, in which she substituted Teko Pharmacy for SEMO Drugs. Subsequent to Merck's removal of this case, plaintiff filed a Second Amended Complaint, in which she added Teko to her strict liability counts. *See* Second Amended Complaint ("SAC"), Counts II and III.

It is well-established that the amended petition, filed after removal, is a procedural nullity and is to be disregarded in the remand analysis. *See, e.g., Hollenbeck v. Outboard Marine Corp.*, 201 F. Supp. 2d 990, 993 (E.D. Mo. 2001). However, even if the Court were to consider plaintiff's Second Amended Complaint, it too fails to state a claim against the resident defendant. Therefore, remand should be denied because as a matter of law, the pharmacy defendant is fraudulently joined, and its citizenship should thus be ignored for purposes of determining diversity.

## Argument

### I. The Court Has Diversity Jurisdiction Over Plaintiff's Claims Because The Pharmacy Defendant Has Been Fraudulently Joined.

Plaintiff's motion should be denied because the Court has diversity jurisdiction over plaintiff's claims. Plaintiff does not dispute in her motion to remand that the amount-in-controversy requirement is satisfied. Thus, the only question facing the Court is whether the non-diverse pharmacy defendant was fraudulently joined. As set forth below, plaintiff has no intention of seeking relief from this defendant; nor could she if she so desired. Accordingly, this

defendant should be ignored for purposes of determining jurisdiction, and plaintiff's motion should be denied.

In the Eighth Circuit, "[j]oinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1984). "The doctrine of fraudulent joinder is designed to prevent plaintiffs from naming parties of the same citizenship merely to avoid removal of an action to federal court." *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 2d 885, 889 (W.D. Ark. 1999). "Joinder is fraudulent and removal is proper where there exists **no reasonable basis in fact and law** supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002) (emphasis added). The Eighth Circuit has emphasized that the "paramount consideration" in fraudulent joinder determinations is "the ***reasonableness*** of the basis underlying the claim." *Filla v. Norfolk S. Rwy. Co.*, 336 F.3d 806, 809-11 (8th Cir. 2003) (explicitly rejecting alternative standards for determining fraudulent joinder) (emphasis added).

As set forth below, based on the facts alleged in both plaintiff's first amended petition and her second amended complaint, there is no reasonable basis supporting any claims against the pharmacy defendant.

II.  **The Pharmacy Defendant Is Fraudulently Joined Because The Claims Against It Cannot Be Reconciled With The Gravamen Of Plaintiff's Petition – That Merck Withheld Information About Alleged VIOXX® Risks From Everyone, Including "The Health Care Industry."**

The pharmacy defendant is fraudulently joined because plaintiff's claims against it are wholly inconsistent with the gravamen of her allegations: that Merck misled the public and

health care providers regarding the safety of VIOXX®. (FAP and SAC, ¶¶ 8-11, 13.)[1]  After all, plaintiff repeatedly asserts in her petition that Merck misled and withheld information regarding the safety of VIOXX® from plaintiff herself, other consumers generally, and even from "the health care community" and "the health care industry." (*See, e.g., id.* at ¶ 19(a)-(i).) At the same time, plaintiff also alleges that the pharmacy defendant – a mere service provider who fills prescriptions made by doctors – was sufficiently aware of the risks associated with VIOXX® that its failure to disclose those risks breached a duty to plaintiff. The incompatibility of these two theories has been acknowledged by this Court and several hundred plaintiffs in similar VIOXX® cases. *See* July 21, 2005 Order and Memorandum, p. 2, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. July 21, 2005) (the MDL Plaintiffs generally will not be asserting claims against the prescribing doctors because such a claim would "undermine" Plaintiffs "main theory . . . that Merck failed to disclose known risks of heart attacks to the medical community"). Plaintiff's allegations against the pharmacy are irreconcilable with the core allegation in her petition not only because they completely depend on the proposition that the pharmacy defendant knew information which plaintiff alleges Merck withheld from it, but also because these allegations necessarily posit that the pharmacy somehow had more information about the risks of VIOXX® than plaintiff's own prescribing physicians.

In similar circumstances, courts around the country have ruled that non-diverse plaintiffs were fraudulently joined. *See, e.g., In re Rezulin Prods. Liab. Litig.* ("*Rezulin I*"), 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (finding that non-diverse physicians were fraudulently joined because the plaintiffs' allegations that the drug manufacturer had concealed the drug's risks from

---

[1] Under the learned intermediary doctrine, plaintiff can only recover against Merck if she can demonstrate that Merck withheld information from the medical community. *Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419-20 (Mo. App. 1999).

everyone "refutes the assumption that . . . [the] physicians had knowledge of [the drug's] harmful effect"); *Wiggins v. Am. Home Prods. Corp.*, 2001 WL 34013629 (N.D. Ala. Oct. 2, 2001) (in-state pharmacy was fraudulently joined where plaintiff made no specific allegation against the pharmacy), *aff'd mem.*, No. 02-10528, 2002 WL 1276993 (11th Cir. May 29, 2002); *In re Diet Drug Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (in-state physician fraudulently joined).

### III. The Pharmacy Defendant Is Also Fraudulently Joined Because There Is No Reasonable Possibility That Plaintiff Would Prevail On Any Of Her Claims Against It.

#### A. Plaintiff Has No Reasonable Basis For Her Negligent Failure To Warn Claim Under Missouri Law.

Plaintiff seeks to pursue a negligence action against the pharmacy defendant based upon its alleged failure to provide adequate warnings regarding the potential dangers associated with the use of VIOXX®. (FAP and SAC, Count I.) Plaintiff makes a one sentence argument to support this cause of action: "The negligence count stands on its own." (Plaintiff's Memorandum in Support of Her Motion to Remand Case to State Court Under 28 USC § 1447 ("Pltf. Mem.") at 2.) Plaintiff provides no legal or factual support for this argument. Contrary to plaintiff's bold statement, however, Missouri law does not permit a failure-to-warn claim against a pharmacy as alleged here.

Although a pharmacy has a duty to fill prescriptions correctly, it is well-recognized that "pharmacies generally have no common-law or statutory duty to warn customers of the risks associated with the drugs they purchase." *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 2d 885, 893 (W.D. Ark. 1999). *See also Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004); *Cottam v. CVS Pharmacy*, 764 N.E.2d 814 (Mass. 2002); *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. App. 2000); *Fakhouri v. Taylor*, 248 Ill. App. 3d 328 (1st Dist. 1993); *Walker*

v. *Jack Eckerd Corp.*, 434 S.E.2d 63 (Ga. App. 1993); *McKee v. Am. Home Prods. Corp.*, 782 P.2d 1045 (Wash. 1989); *Ealy v. Richardson-Merrell, Inc.*, 1987 WL 159970 at *3 (D.D.C. 1987); *Pysz v. Henry's Drug Store*, 457 So.2d 561 (Fla. App. 1984).

Plaintiff's allegations against the pharmacies likewise fail under Missouri law. *See Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. App. 1999) (*citing Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo. 1967); *Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670 (8th Cir. 1985) (applying Missouri law)) (recognizing that Missouri follows the learned intermediary doctrine); *Horner v. Spallito*, 1 S.W.3d 519, 524 n. 5 (Mo. App. 1999) (validating the fundamental proposition that the *physician* is in a "superior position to judge the propriety of a particular patient's drug regimen").

Plaintiff's allegation cannot withstand this well-reasoned law. The law in Missouri and across the country is that pharmacies simply are not required to, and indeed should not be, second-guessing plaintiffs' doctors concerning whether VIOXX® should be prescribed or what discussion of side effects should take place, as plaintiff alleges. Plaintiff makes no allegation that the pharmacy defendant failed to fill her prescription according to the physicians' instructions, failed to label the bottles accurately, or otherwise failed to exercise due care in filling her prescription for VIOXX®. Because a pharmacy has no duty to warn of risks and side effects of a prescription drug under Missouri law, plaintiff cannot make out a negligence claim against the pharmacy defendant. Accordingly, the pharmacy defendant is fraudulently joined and the Court should disregard its citizenship when evaluating removal.

> B. Plaintiff Has No Reasonable Basis for Her Strict Liability Claims Under Missouri Law

In her Second Amended Complaint, Plaintiff also seeks to pursue a strict liability action against the pharmacy defendant based upon VIOXX®'s alleged design defect and the pharmacy

defendant's alleged failure to provide adequate warnings regarding the potential dangers associated with the use of VIOXX®. (SAC, Counts II and III.) Plaintiff accuses the pharmacy defendant of failing to warn plaintiff even though the essence of her entire complaint is that Merck allegedly failed to disclose these very same risks and consequences to the community at large, including the health care industry. (*See id.* at ¶¶ 8-11, 13, 19(a)-(i).) Plaintiff filed the Second Amended Complaint after Merck removed the case to federal court.

Plaintiff did not raise strict liability claims against the pharmacy defendant in either her original or first amended petition. The law is crystal clear on this point: Post-removal amendments to the petition are to be disregarded by the Court. *See, e.g., Hollenbeck*, 201 F. Supp. 2d at 993 ("The plaintiff cannot, after removal, deprive the district court of jurisdiction by stipulation, affidavit or by amendment of his pleadings"); *Harris v. Deaconess Health Serv. Corp.*, 61 F. Supp. 2d 889, 893 (E.D. Mo. 1999) ("[T]o determine whether subject matter jurisdiction exists, the Court examines the original petition, *not* the amended complaint"). Therefore, even if plaintiff had a reasonable basis in fact supporting her strict liability claims against the pharmacy defendant, which, as discuss below, she does not, this still would not require the case to be remanded.

Alternatively, should the Court chose to consider plaintiff's second amended petition, her claims still fail as a matter of law. Strict liability claims against health care providers are barred under Missouri law. *See Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 680-82 (Mo. banc 2000); *Redfield v. Beverly Health & Rehab. Servs., Inc.*, 42 S.W.3d 703, 714 n. 3 (Mo. App. 2001) (noting that "the statutory products liability provisions under Sections 537.760 to 537.765, . . . , are inapplicable to health care providers"). Under Revised Statute of Missouri § 538.205(4) and *Beuke v. Pharmacia & Upjohn Co.*, 2000 WL 34430453 (Mo. App. 2000), pharmacists and

pharmacies are classified as health care providers. In addition, the sale of a product to a patient "incidental or pursuant to the practice of the health care professional's profession" is classified as a health care service. Rev. Stat. Mo. § 538.205(5).

In *Budding*, the Missouri Supreme Court held that strict products liability claims against health care providers are barred. The logic of *Budding* was based partly on the fact that the statutory health care affidavit which, pursuant to Revised Statute of Missouri § 538.225, must be filed in all actions against health care providers, requires that the reviewing expert find that the health care provider deviated from the standard of care. The Missouri Supreme Court held that it would be illogical to assume that the Missouri legislature would permit strict liability claims against health care providers where deviation from the standard of care need not be shown, in light of the affidavit requirement of § 538.225. *Budding*, 19 S.W.3d at 678. Furthermore, the Court noted that its conclusion was further supported by Revised Statute of Missouri § 538.300, which provides that the statutory provisions "relating to strict products liability actions, are *not* applicable to actions against health care providers." *Id.* at 681 (emphasis added). The Court reasoned that "[t]he exception of health care providers from the provisions codifying strict products liability is yet another clear indication that the general assembly intended to abrogate such liability for health care providers. Just as enactment of sec. 537.760 codified strict products liability, the exception provided for in sec. 538.300 was intended to eliminate such statutory liability for health care providers." *Id.*

The Eastern District of Missouri has specifically found that the holding in *Budding* precluded a pharmacy from being held strictly liable based on the sale of a prescription drug. *Beuke*, 2000 WL 34430453. In *Beuke*, a Missouri plaintiff brought suit against a New Jersey drug manufacturer and a Missouri pharmacy, claiming that both the manufacturer and the

783126v.1

pharmacy were strictly liable for failing to provide warnings about an allegedly defective prescription medication. The drug manufacturer removed the case to federal court on the grounds that plaintiff could not state a claim against the pharmacy and the pharmacy was fraudulently joined. Plaintiff filed a motion to remand, arguing that a "pharmacy" is not a "health care provider" as defined in Revised Statute of Missouri § 538.205(4), and, therefore, is not subject to the holding in *Budding*. *Id.* at *1-2.

The Court denied remand, finding that the pharmacy had been fraudulent joined. *Id.* at *2. In so holding, the Court rejected plaintiff's argument, and instead found that "a pharmacy is a health care provider, for it renders services to a patient in the ordinary course of a pharmacist's profession." *Id.* Thus, the Court concluded: "Because, under Missouri law, defendant [pharmacy] is a health care provider, it cannot be sued under a theory of strict liability." *Id.*

Plaintiff here does not present any legal or factual support as to why she has a reasonable possibility of prevailing on her strict products liability claims against the pharmacy defendant. Plaintiff's entire argument centers around how a dismissal under Revised Statute of Missouri § 537.762 is not an involuntary dismissal and does not require the case to be remanded. Contrary to plaintiff's argument, however, Merck does not assert in its notice of removal that the pharmacy defendant should be dismissed from this lawsuit as a seller in the stream of commerce under § 537.762. Rather, Merck contends that, under Missouri law, plaintiff has no reasonable possibility of prevailing on any of her claims against the pharmacy and, as such, the pharmacy is fraudulently joined and its citizenship must be ignored for diversity purposes. *See* Merck's Amended Notice of Removal, ¶¶ 18-20.

Because Missouri law does not permit strict products liability claims against pharmacies as alleged by plaintiff in this case, plaintiff has no reasonable possibility of prevailing against the pharmacy defendant, and it has been fraudulently joined in this action.

## Conclusion

Plaintiff here has engaged in manipulative pleading tactics by naming a defendant against whom she has no reasonable chance of prevailing. For all of the foregoing reasons, the Court should deny plaintiff's motion to remand.

Respectfully submitted,

_____
Phillip A. Wittmann, 13625
Anthony M. DiLeo, 4942
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Dan H. Ball
Robert T. Ebert, Jr.
Stephen G. Strauss
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Phone: 314-259-2000
Fax: 314-259-2020

Counsel for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Merck's Opposition to Plaintiff's Motion to Remand has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 4th day of August, 2005.

*Dorothy H. Wimberly*