FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 SEP 26  PM 4: 40

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION )<br><br>THIS DOCUMENT RELATES TO<br>ALL CASES | MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

## MERCK & CO., INC.'S OPPOSITION TO MOTION TO COMPEL ANSWERS TO MASTER SET OF INTERROGATORIES AND RESPONSES TO MASTER SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (CONCERNING ARCOXIA)

Defendant Merck & Co., Inc. ("Merck"), by and through its counsel, respectfully submits this Opposition to Plaintiffs' Motion to Compel Answers to Master Set of Interrogatories and Responses to Master Set of Requests for Production of Documents (Concerning ARCOXIA).

Plaintiffs' motion to compel should be denied. As a threshold matter, there is serious doubt that any information related to ARCOXIA® is relevant to this litigation. The drug is not sold or marketed in the United States, and no plaintiff in this litigation alleges that he or she ever took it. For this reason, one appellate court – on a petition for mandamus – has already rejected plaintiffs' efforts to obtain *any* ARCOXIA®-related information. *See In re Merck & Co., Inc.*, No. 04-04-00389-CV, slip op. at 1 (Tex. App. Sept. 15, 2004) (ordering trial court to vacate

____ Fee_____
____ Process_____
_X_/ Dktd_____
_✓_ CtRmDep_____  787487v.1
____ Doc. No._____

Order requiring Merck to produce unredacted documents related to ARCOXIA®) (attached as Ex. 1).

Even assuming, *arguendo*, that some ARCOXIA® material is relevant to this litigation, plaintiffs already have far more than they could possibly need.  Contrary to plaintiffs' allegations, Merck has already produced thousands of documents related to ARCOXIA® in this proceeding – information that is more than sufficient to satisfy their asserted needs.  Ordering Merck to produce more of this irrelevant material would impose an unreasonable burden on Merck that outweighs any marginal benefit to plaintiffs and would risk disclosure of trade secrets that Merck is entitled to protect.  For these reasons, plaintiffs' motion should be denied.

## BACKGROUND

ARCOXIA® is a Non-Steroidal Anti-Inflammatory Drug ("NSAID"), not available in the United States.  (*See* Declaration of Ned Braunstein, M.D. ("Braunstein Decl.") ¶ 6 (attached as Ex. 2).)  Like Vioxx®, it is a selective COX-2 inhibitor, but it is more highly selective (*i.e.*, it has a higher ratio of blocking COX-2 compared to COX-1 than Vioxx).  (*Id.*)  ARCOXIA® has a different molecular structure and a different patent from Vioxx.  (*Id.*)  It is also indicated for more conditions than Vioxx.  (*Id.*)

ARCOXIA® is currently approved for sale outside the United States in more than 50 countries around the world.  (*Id.* at 18.)  In December 2003, Merck filed a New Drug Application ("NDA") for ARCOXIA® with the FDA.  (*Id.* at 7.)   In October 2004, the FDA issued an Approvable Letter, indicating that additional data was necessary before the drug could be approved for marketing.  (*Id.* at 8.)  Merck continues to conduct clinical safety studies in preparation for additional submissions to FDA.  (*Id.*)

787487v.1

Plaintiffs have already sought ARCOXIA® documents in two other Vioxx proceedings. First, plaintiffs sought these documents in a Texas state court case captioned *Garza v. Merck*, DC-03-84 (Tex. Dist. Ct., Starr Co.).   After a trial court ordered Merck to produce the documents, Merck filed a writ of mandamus with an intermediate Texas appeals court.   The Texas appeals court reversed the trial court order and held that Merck should not be required to produce *any* ARCOXIA®-related documents because "it is difficult to envision how the totally unrelated prescription medication ARCOXIA would be relevant in this lawsuit." *See In re Merck & Co., Inc.*, No. 04-04-0389-CV, slip op. at 4 (Tex. App. Sept. 15, 2004) (attached as Ex. 1).

Plaintiffs also sought the ARCOXIA® material in the New Jersey Coordinated Proceeding.   There, Judge Higbee initially ruled that Merck was not required to produce any information about ARCOXIA®. *See* Transcript of Motions at 8, *In re Vioxx*, Case No. 816 (N.J. Super. Ct. Law Div. July 16, 2004) ("As far as the drug ARCOXIA I don't think that the plaintiffs should be entitled to anything regarding that drug.   And I'm going to order that the defendants can redact any information concerning that drug and keep it private.") (attached as Ex. 3).   Several months later, however, the New Jersey plaintiffs requested that Judge Higbee reconsider that ruling, and Judge Higbee ordered a limited production of ARCOXIA®-related clinical and regulatory documents. *See In re VIOXX*, Case No. 619, slip op. at 1-2 (N.J. Super. Ct. Law Div. Mar. 31, 2005) (attached as Ex. 4).   These documents, which Merck produced to plaintiffs several months ago, include clinical study reports, clinical investigator brochures, forms of informed consent, and study protocols and amount to more than 280,000 pages. (*See* Braunstein Decl. ¶ 9 (attached as Ex. 2).)   In addition, Judge Higbee ordered that Merck lift ARCOXIA® redactions from already-produced documents that discuss ARCOXIA® clinical

3

study results, or expressly compare ARCOXIA® with Vioxx or another NSAID.  (*See In re Vioxx*, slip op. at 1-2 (attached as Ex. 4).)  Merck undertook a re-review of all its produced documents and lifted or minimized ARCOXIA® redactions on 612,394 pages of documents.

Plaintiffs are now asking for a third bite at the apple – *i.e.*, that this Court order Merck to produce additional ARCOXIA®-related documents that they were not able to obtain in the New Jersey or Texas proceedings.  According to plaintiffs, such information is relevant to Merck's assertions that any alleged cardiovascular risks of Vioxx are a class-wide risk inherent in all COX-2 drugs. (Pls.' Mem. at 9-12.)

## ARGUMENT

Fed. R. Civ. P. 26(b)(1) allows parties to obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party."  However, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Most notably, Rule 26 does not authorize so-called "fishing expeditions" in which a party is forced to respond to overly broad discovery requests.  *See, e.g., Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (affirming district court's denial of motion to compel discovery responses where interrogatories were found to be too broad and oppressive).  *See also Nat'l Labor Relations Bd. v. U.S. Postal Serv.*, 128 F.3d 280, 284 (5th Cir. 1997) (denying enforcement of order requiring production of entire personnel file of employee to union where not all information was relevant to action and some relevant information had been produced); *Garcel, Inc. v. Hibernia Nat'l Bank*, Civil Action No. 01-0772 SECTION "T" (4), 2002 U.S. Dist. LEXIS 2390, at *8 (E.D. La. Jan. 24, 2002) (party may not propound overbroad discovery requests "in an effort to obtain any information that may be relevant to its claim").  Moreover, Rule 26(b)(2)(iii) authorizes courts to

4

limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." *See also Intralox, L.L.C. v. Habasit Belting, Inc.*, Civil Action No. 04-840 SECTION "L" (4), 2004 U.S. Dist. LEXIS 26355, at *11-12 (E.D. La. Dec. 27, 2004) (denying motion to compel discovery where the requests imposed an unfair burden on the receiving party).

That is precisely the case here.  Plaintiffs seek to undertake an excessively burdensome "fishing expedition" with regard to ARCOXIA®, a drug that none of them claims ever to have taken and that is not even available in the United States.  As set forth below, plaintiffs' request should be denied because:  (1) they already possess (and clearly have not even looked at) vast quantities of material regarding ARCOXIA®; (2) the additional material they seek is not even arguably relevant to their claims and would be enormously burdensome to produce; and (3) their request would threaten the confidentiality of Merck's trade secrets.

## I.   MERCK HAS ALREADY PRODUCED VOLUMES OF INFORMATION ON ARCOXIA® TO PLAINTIFFS.

Contrary to plaintiffs' assertion that "Merck has flatly refused to produce *any* ARCOXIA information" (Pls.' Mem. at 4), Merck has in fact produced *more than 280,000 pages* of regulatory documents related to ARCOXIA® in the New Jersey Coordinated Litigation, including clinical study reports ("CSRs"), clinical investigator brochures, forms of informed consent, and study protocols.  (*See* Braunstein Decl. ¶ 9 (attached as Ex. 2).)  Merck has also lifted redactions from another 612,000 pages of documents, including correspondence, internal memos, and emails, discussing or comparing ARCOXIA® study results.  As plaintiffs well know, any information produced by Merck in the New Jersey Coordinated Litigation has also been made available to plaintiffs in this litigation.  (*See* PTO 17, at 4 ("Merck shall provide or make available to Plaintiffs' Liaison Counsel copies of all . . . documents previously produced or to be produced by Merck in any other litigation").)  Accordingly, even if plaintiffs were correct

5

that information related to the potential cardiovascular risks of ARCOXIA® is relevant to this litigation, plaintiffs have more than enough information to explore this avenue of inquiry.

Among the material that plaintiffs seek in their motion to compel are numerous categories of documents *already in their possession*. These include:

- All clinical study reports;[1]

- Study protocols;

- Forms of informed consent;

- Investigator brochures;

- Publication information;

- Study results (including cardiovascular and efficacy data);

- Chemical and pharmacological information;

- Results of pre-clinical testing; and

- Information concerning any amendments to study protocols or data analysis plans.

(*See* Braunstein Decl. ¶¶ 9, 16 (attached as Ex. 2).)  These documents amount to 280,770 pages concerning 65 trials,[2] in 55 countries involving 49,000 patients.  (*Id.* ¶ 7, 9.)

Rather than review the materials they have, determine what information they contain about the potential risks of ARCOXIA®, and then decide whether they have a legitimate need

---

[1]    *See* Braunstein Decl. ¶ 10 ("A CSR is an integrated full report of an individual study.  Its content is consistent with guidances issued by the International Conference on Harmonization (ICH) and by FDA. Each CSR contains clinical and statistical descriptions, presentations, and analyses as well as the protocol number and study name, the names of all investigators, and a description of the study protocol including amendments.  CSR appendices contain the actual study protocol, sample case report forms, investigator-related information, information related to the investigational product, technical statistical documentation, related publications, and technical statistical details such as derivations, computations, analyses, and computer output.") (attached as Ex. 2).)

[2]    Because two of the ARCOXIA® trials, including an approximately 23,500 patient mega-trial and an approximately 4000 patient study, are ongoing, no CSRs yet exist.  For each ongoing ARCOXIA® clinical trial, Merck collected and produced the study protocol and all amendments.  (*See* Braunstein Decl. ¶ 13 (attached as Ex. 2).)

787487v.1

for more, plaintiffs have marched into court and filed a motion to compel seeking, *inter alia*, thousands of documents already in their possession.  Plaintiffs have not even demonstrated that they are entitled to the material already produced – let alone any more.  For this reason alone, their motion should be denied.

## II.   THE ADDITIONAL MATERIAL SOUGHT BY PLAINTIFF IS NOT EVEN OF ARGUABLE RELEVANCE.

In addition to the ARCOXIA® material already produced (of which plaintiffs are apparently unaware and clearly never looked at), plaintiffs demand that Merck produce information related to virtually all aspects of its development of ARCOXIA®, including all documents concerning ARCOXIA®'s chemical and pharmacological properties, all documents concerning its risks, potential side effects, and adverse effects, and all documents concerning all pre-clinical testing and clinical testing of the drug.  (*See* Pls.' Mem. at 3-4.)  Even assuming that some ARCOXIA® material is relevant to this litigation, these requests go too far.  Put simply, ***plaintiffs are seeking a second document production of the same scope as the entire Vioxx production*** for a drug that is of marginal relevance – at best – to this litigation.

As plaintiffs concede, ARCOXIA® is not marketed or sold in the United States.  (*See* Pls.' Mem. at 3 n.1.)  In addition, the two drugs have different molecular structures, different patents, different New Drug Applications, and are indicated for different conditions.  (*See* Braunstein Decl. ¶ 6.)  For these reasons, an appellate court in Texas – on mandamus appeal – overturned a trial court order requiring Merck to produce ARCOXIA®-related material. According to the Fourth Court of Appeals:

> The rules of civil procedure initially demand that a request for discovery be "relevant to the subject matter of the pending action . . . ."  Here, it is undisputed that the prescription medication VIOXX is the only drug used by the deceased plaintiff, and the only claimed defective product at issue in this suit.  Moreover, Merck proffered testimony by affidavit . . . that "ARCOXIA is different from VIOXX in that it has a different molecular structure, is indicated for more

7

> conditions than VIOXX, is the subject of a different New Drug Application, and
> is a more highly selective COX-2 inhibitor than VIOXX." Finally, Merck
> established that ARCOXIA is not yet being sold in the United States. ***Therefore,***
> ***it is difficult to envision how the totally unrelated prescription medication***
> ***ARCOXIA would be relevant in this lawsuit.***

*In re Merck & Co., Inc.*, No. 04-04-0389-CV, slip op. at 3-4 (Tex. Dist. Ct. App. Sept. 15, 2004)

(emphasis added and citation omitted) (attached as Ex. 1).

Other courts have reached similar conclusions in analogous circumstances. For example,

in *Upjohn Co. v. Dalton*, 829 S.W.2d 83 (Mo. Ct. App. 1992), Upjohn sought a writ of

prohibition challenging the decision of the trial court ordering it to produce documents and

answer interrogatories in litigation involving its drug, Halcion. *Id.* at 84. Plaintiffs had sued

Upjohn for wrongful death, alleging that the decedent's suicide was caused by delirium induced

by the drug. *Id.* Plaintiffs propounded broad document requests that included, among other

things, "'any and all' . . . documents related not only to Halcion, but to other drugs as well." *Id.*

Defendant Upjohn objected that the requests were overbroad, burdensome, and not relevant to

the lawsuit. The trial judge granted plaintiffs' motion to compel and ordered Upjohn to produce

the documents and answer the interrogatories. *Id.* In granting the writ of prohibition, the court

of appeals noted that the discovery was overbroad because, among other things, it asked for

information on drugs other than Halcion. *Id.* at 85. In the court's words, plaintiffs' discovery

went beyond a "fishing expedition" and "seems designed to 'drain the pond and collect the fish

from the bottom.'" *Id.* (quoting *In re IBM Peripheral EDP Devices Antitrust Litig.*, 77 F.R.D. 39,

42 (N.D. Cal. 1977)).

Similarly, in *American Medical Systems, Inc. v. Osborne*, 651 So. 2d 209 (Fla. Dist. Ct.

App. 1995), plaintiff brought a products liability case against the manufacturer of a penile

implant that allegedly failed, and sought to compel the production of information on a model that

787487v.1

was different from the one that was implanted in him. *Id.* at 210. The court of appeals issued a writ of mandamus ordering the trial court to vacate its decision requiring the production of the information. *Id.* at 211. The court reasoned that "there must be a connection between the discovery sought and the injury claimed. Otherwise, it is an improper fishing expedition." *Id.*

Likewise, in *Arnett v. TAP Pharmaceuticals, Inc.*, No. 8:03-cv-304-T-26TBM, slip op. (M.D. Fla. Dec. 4, 2003) (attached as Ex. 5), the plaintiff in a product liability action involving a prescription drug in one formulation (Lupron 3.75 mg.) sought discovery related to all other formulations of Lupron, seeking all clinical studies, post-marketing surveillance of adverse effects, and documents related to regulatory approvals of the drug. The court followed the logic of *Osborne* and ruled that the plaintiff was not entitled to discovery relating to different formulations of the drug at issue in the lawsuit. *See id.* at 1.

As in *Upjohn*, *Osborne*, and *Arnett*, plaintiffs seek information about another pharmaceutical product that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. As numerous courts have found, evidence of "similar products" (Pl. Mem. at 5) is not relevant in the context of pharmaceuticals because even small changes at the molecular level can result in dramatic differences among products. *See, e.g., Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 990 (8th Cir. 2001) ("Even minor deviations in molecular structure can radically change a particular substance's properties and propensities.").[3] Moreover, even assuming that some ARCOXIA® information is relevant to the question whether the alleged cardiovascular risks of Vioxx are common to all COX-2 inhibitors (Pls.' Mem. at 9-12), plaintiffs already have more than enough material on that subject. And, plaintiffs do not limit the

---

[3] *See also Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 564 (W.D. Pa. 2003); *Sharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1364-65 (N.D. Ga. 2001), *aff'd* 295 F.3d 1194 (11th Cir. 2002); *Downs v. Perstorp Components, Inc.*, 126 F. Supp. 2d 1090, 1125 (E.D. Tenn. 1999); *DeLuca v. Merrell Dow Pharms., Inc.*, 791 F. Supp. 1042, 1054 (D.N.J. 1992), *aff'd* 6 F.3d 778 (3d Cir. 1993); *Bayer AG v. Carlsbad Tech., Inc.*, No. Civ. 01-867-B, 2001 WL 34125673, at *5 (S.D. Cal. Oct. 24, 2001).

9

information sought to the issue they claim is relevant here, namely ARCOXIA®'s relationship to Vioxx in terms of cardiovascular risks.  Instead, they seek to compel interrogatory responses identifying "*every* clinical (Human) study" involving ARCOXIA® (*see id.* at 3 (emphasis added)), and demand "all documents" concerning ARCOXIA®'s chemical properties and pharmacological properties, as well as all of its risks, adverse effects, side effects, clinical experience, pre-clinical testing and clinical testing, whether related to patients' cardiovascular health or not.  (*Id.* at 4.)  These requests are not tailored to obtain the cardiovascular information that plaintiffs claim is relevant to their case (and which they already have), but instead, are expansive, open-ended requests that seek all of Merck's documents related to ARCOXIA® for no legitimate purpose.

This Court has rejected such overly broad requests in the past and should do so again here.  *See Intralox, L.L.C. v. Habasit Belting, Inc.*, Civil Action No. 04-840 SECTION "L" (4), 2004 U.S. Dist. LEXIS 26355, at *11-12 (E.D. La. Dec. 27, 2004) (defendants not required to respond to requests that went beyond plaintiff's specific claim; "compelling responses . . . would enable [the moving party] to go on a prohibited 'fishing expedition' through all of [plaintiff's] business documents having anything to do with" its analysis of all of its competitors); *Garcel v. Hibernia Nat'l Bank*, Civil Action No. 01-0772 SECTION "T" (4), 2002 U.S. Dist. LEXIS 2390, at *8 (E.D. La. Jan. 24, 2002) (defendant not required to respond to discovery that "would grant [plaintiff] the opportunity to engage in a fishing expedition in an effort to obtain any information that may be relevant to its claim").  For this reason alone, plaintiffs' motion should be denied.

## III.   PLAINTIFFS' MOTION SHOULD ALSO BE DENIED BECAUSE THE BURDEN OF PRODUCING THE REQUESTED INFORMATION FAR OUTWEIGHS ANY MARGINAL BENEFIT TO PLAINTIFFS.

In addition, plaintiffs' motion should be denied because it is unduly burdensome.  *See* Fed. R. Civ. P. 26(b)(2)(iii) (authorizing courts to limit discovery where "the burden or expense

787487v.1

of the proposed discovery outweighs its likely benefit"); *Intralox, L.L.C. v. Habasit Belting, Inc.*, Civil Action No. 04-840 SECTION "L" (4), 2004 U.S. Dist. LEXIS 26355, at *9 (E.D. La. Dec. 27, 2004) (same). As explained below, responding to plaintiffs' requests would require Merck to search the files of Merck employees in dozens of offices around the world in search of all documents that relate to ARCOXIA®. Such an expensive, time-consuming undertaking is all the more inappropriate because Merck has already produced any arguably relevant ARCOXIA® documents.

Because ARCOXIA® is approved for sale in more than 50 countries, plaintiffs' requests would force Merck to search through the files of hundreds of Merck employees in offices in the United States and overseas, searching for everything from correspondence to drafts and duplicates of reports. (*See* Braunstein Decl. ¶¶ 18, 23 ("In Canada alone, there are approximately 100 personnel in preclinical and clinical research who have worked on ARCOXIA® and are likely to possess ARCOXIA® documents. The numbers of individuals around the world could not be estimated without a formal survey, but likely extends into the hundreds.") (attached as Ex. 2).) Such an undertaking would take "one or more years" to complete "at extraordinary cost" to Merck. (*See id.* ¶ 32.)

Plaintiffs' request for preclinical data would also be excessively burdensome, requiring Merck to produce millions of more pages of document regarding a drug that is not at issue in this litigation. (*See id.* ¶ 24 ("There are approximately 350 Merck personnel in the United States who have had pre-clinical and clinical ARCOXIA® responsibilities at some time and may possess ARCOXIA® documents in their files, including the statisticians who have analyzed clinical data. Collecting and producing these custodial files would almost certainly result in the production of millions of pages of documents.").) Indeed, the size of the ARCOXIA® production sought by

11

plaintiffs would likely parallel the entire Vioxx production to date. Given that plaintiffs already possess clinical study reports, study protocols, investigator brochures and other ARCOXIA® materials that more than adequately address potential cardiovascular risks (plaintiffs' purported reason for seeking the documents), there is simply no basis for forcing Merck to undertake this expense.

Courts regularly refuse to require compliance with discovery requests that involve burdens far less substantial than this – particularly where, as here, the information sought is of dubious relevance. *See, e.g., Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) ("a trial court retains discretion to determine that a discovery request is too broad and oppressive"). *See also Lectrolarm Custom Sys. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 571 (E.D. Cal. 2002) (denying motion to compel discovery responses where receiving party had already produced substantial information and the propounding party's requests were "overly broad, burdensome and . . . cumulative of other discovery"). In *Marshall,* for example, the plaintiff propounded interrogatories to an employer in an age discrimination case seeking information about "all persons whose employment with the defendant's elevator division was terminated between 1972 and the present." 576 F.2d at 592. The trial court refused to require the defendant to respond, stating that the request was oppressive and unduly burdensome. *Id.* The U.S. Court of Appeals for the Fifth Circuit affirmed, stating that the request "encompassed some 7,500 employees in thirty-two districts and three manufacturing plants" and that because the plaintiff failed to narrow the request to show a particularized need and relevance, the district court's refusal was not in error. *Id.* As discussed above, plaintiffs' requests here – which would require Merck to undertake a global collection of documents – are even more burdensome.

787487v.1

In short, plaintiffs should not be able to demand a prohibitively expensive, burdensome production related to a drug that none of them has ever taken without a very compelling demonstration that they need these documents to litigate their Vioxx claims against Merck. Plaintiffs have failed to demonstrate any need for the documents at issue – let alone a compelling one – and for this reason too, their motion should be denied.

## IV.   COMPELLING MERCK TO PRODUCE ADDITIONAL ARCOXIA® DOCUMENTS RISKS DISCLOSURE OF TRADE SECRETS THAT MERCK IS ENTITLED TO PROTECT.

Finally, Merck should not be compelled to produce additional ARCOXIA® documents because such disclosure risks exposing valuable trade secrets which are clearly entitled to protection. Because this information has been developed at considerable expense by Merck and would be of great value to Merck's competitors, Merck has a legitimate, compelling interest in preventing the disclosure of this information. *See Citizens Comm'n. on Human Rights v. Food and Drug Admin.*, No. CV 92-5313 JMI(Sx), 1993 U.S. Dist. LEXIS 21369, at *2-3 (C.D. Cal. May 17, 1993) (information from Eli Lilly and Company's New Drug Application for Prozac constituted trade secret for purposes of FOIA), *aff'd in part*, 45 F.3d 1325 (9th Cir. 1995).

"A trade secret is any formula, pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it." *Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994). If the party seeking to shield trade secrets from discovery can establish that the information is confidential and/or proprietary in nature, and that disclosure of it might be harmful, then the burden shifts to the party seeking disclosure to demonstrate that the information is both relevant and necessary. *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, Civil Action No. 03-1496 c/w 03-1664 SECTION "A" (4), 2004 U.S. Dist LEXIS 6015, at *14 (E.D. La. Apr. 7,

787487v.1

2004) (denying discovery request where plaintiff had taken "reasonable steps to maintain relative secrecy with respect to the documents").

The ARCOXIA® information at issue here constitutes precisely the type of trade secret that courts routinely protect because it involves proprietary information relating to the development, testing, and marketing of ARCOXIA®, information that Merck believes is likely to cause it substantial competitive harm if released.   In addition, plaintiffs' requests for ARCOXIA® information would also require production of Merck's clinical trial database ("CTS"), the company's highly proprietary repository for all clinical data.  (*See* Braunstein Decl. ¶ 26 (attached as Ex. 2).)

The disclosure of such information to Merck's competitors, even if inadvertent, would cause competitive harm to Merck.  (*See id.* ¶ 33 ("it is impossible to calculate the potential damage to the company in the event of an unauthorized disclosure of trade secreted information concerning ARCOXIA®--a  drug that is not marketed in the United States--but it is certain that such a disclosure would be damaging").)  Moreover, plaintiffs fall far short of their burden of demonstrating a need for this material that outweighs Merck's concerns about protecting its confidentiality.  To the contrary, the fact that plaintiffs already have received nearly one million pages of ARCOXIA®-related documents, far more than is arguably relevant to this litigation, makes it all the more inappropriate to permit more discovery that would jeopardize Merck's trade secrets.

14

787487v.1

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that the Court deny plaintiffs' Motion to Compel Answers to Master Set of Interrogatories and Responses to Master Set of Requests for Production of Documents (Concerning ARCOXIA).

Respectfully submitted,

Phillip A. Wittmann, 13625
Anthony DiLeo, 4942
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
One United Plaza
4041 Essen Lane, Suite 501
Baton Rouge, Louisiana 70809
Phone: 225-490-8900
Fax: 225-490-8960

Defendants' Liaison Counsel

15

787487v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 26th day of September, 2005.

Phil Wittmann

787487v.1

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED