U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   SEP 2 8 2005

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX PRODUCTS LIABILITY LITIGATION | : | MDL Docket NO. 1657 |
| | : | |
| | : | SECTION L |
| | : | |
| This document relates to: All Personal Injury Class Action Cases pending or Subject to Transfer to MDL 1657 | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

### THE PLAINTIFFS' STEERING COMMITTEE'S
### MOTION TO STAY CLASS BRIEFING

The Plaintiffs' Steering Committee ("PSC") hereby move this Honorable Court for a stay of class briefing in all personal injury class action cases pending or subject to transfer to MDL 1675 until after several federal MDL trials have been completed, such that class certification rulings will be made after the issues have become more defined and mature, and this Court will have a more complete foundation upon which to make those rulings.

The reasons in support of this motion are explained in greater detail in the PSC's

____ Fee_____
____ Process_____
__X__ Dktd_____
____ CtRmDep_____
____ Doc. No _____

Memorandum of Law in Support of Motion to Stay Class Briefing, which is incorporated by

reference as though fully set forth herein.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

By:_____

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:     (504) 581-4892
FAX:  (504) 561-6024

**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

PLAINTIFFS' LIAISON COUNSEL

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Dianne M. Nast, Esquire **(on brief)**
Jennifer S. Snyder, Esquire **(on brief)**
RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000 (telephone)
(717) 892-1200 (telecopier)
**Vice Chairperson Law and Briefing
Committee**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 28th day of September, 2005.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:  VIOXX PRODUCTS
        LIABILITY LITIGATION       :      MDL Docket NO. 1657

                                         :      SECTION L

This document relates to:  All Personal    :
Injury Class Action Cases pending or     :
Subject to Transfer to MDL 1657        :     JUDGE FALLON
                                         :     MAG. JUDGE KNOWLES

## NOTICE OF HEARING

Please take note that on the ___ day of _____, 2005 at _____ _.m. or as soon

thereafter as counsel can be heard, United States District Court, Eastern District of Louisiana, 515

Rusk St., Suite 8613, Houston, Texas, the undersigned will bring the Plaintiffs' Steering

Committee's Motion to Stay Class Briefing.

New Orleans, Louisiana, this _____ day of September, 2005.


                                              _____
                                            UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX PRODUCTS<br>      LIABILITY LITIGATION | : | MDL Docket NO. 1657 |
| | : | |
| | : | SECTION L |
| | : | |
| This document relates to:  All Personal | : | |
| Injury Class Action Cases pending or | : | |
| Subject to Transfer to MDL 1657 | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

PLAINTIFFS' STEERING COMMITTEE'S
MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO STAY CLASS BRIEFING

**I.     INTRODUCTION**

On June 2, 2005, this Court issued PTO No. 16 to address the orderly processing of the

numerous class actions filed in MDL No. 1657. The Court contemplated a staged procedure

whereby the Plaintiffs' Steering Committee ("PSC") would file master class action complaints

based on logically grouped legal theories, thereafter, Merck would be permitted to file answers to

the complaints, or, in lieu of answers, motions to dismiss the complaints.  In the event that Merck

filed motions to dismiss, PTO No. 16 provided a briefing schedule on the motions.  The Order

also contemplated that if answers were filed to the Complaints, the PSC would be obliged to file

motions for class certification pursuant to a delimited schedule.

Consistent with PTO No. 16, on August 2, 2005, the PSC filed  three master class action

complaints (re: personal injury, medical monitoring and purchase classes).  In response to these

1

pleadings, Merck took several inconsistent actions.  First, in response to the personal injury master class action complaint, Merck filed <u>both</u> an answer *and* a Motion to Partially Strike Plaintiffs' Personal Injury and Wrongful Death Master Class Action Complaint (filed Sept. 15, 2005).  Second, in response to the medical monitoring class action, Merck has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  Finally, in response to the purchase claims, Merck filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  Merck's answer and motion to strike portions of the personal injury class action complaint compels the PSC to request a stay of class briefing on the matter until such time as all of the motions addressing the several master complaint pleadings are resolved to avoid any inconsistencies in pleading practice.

In addition, the PSC has also long held its expressed view that a stay of proceedings regarding the personal injury class action briefing on class certification will also serve practical benefits as it will later enable the Court to consider Rule 23 predominance and superiority matters in the context of a mature tort and allow the PSC to complete the identification of representative plaintiffs that are presenting claims by means  of our pending motions to amend the master complaints.  As these peripheral matters could distract from the briefing of class certification, the PSC submits that a stay of class briefing on the personal injury class action complaint be granted to enable the parties to resolve these outstanding legal matters.

## II.   ARGUMENT

The 2003 amendment of Fed.R.Civ.P. extends the court's discretion regarding the timing of class certification by directing courts to make certification decisions "at an early practicable time", Fed.R.Civ.P. 23(c)(1)(A).  That time occurs only "when the court has sufficient information to decide whether the action meets the certification criteria of Rules 23(a) and (b)."

Manual for Complex Litigation, §21.133 (4th Ed. 2004)[hereafter "Manual"]. For this reason, "[a]ppropriate timing will vary with the circumstances of the case." *Id.* The PSC submits that in light of Merck's motion to strike and its other Rule 12(b) motions, coupled with the absence of any trial experience in the MDL, now is not a practicable time to consider class certification of personal injury claims.

As an initial matter, it is often practicable and in the interests of efficiency and economy for courts to resolve preliminary matters such as jurisdictional challenges and motions to dismiss before turning to class certification. *See* Manual, §21.133, *citing Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C.Cir. 2001) and *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474-75 (7th Cir. 1997). Here, the defendants have challenged the ability of plaintiffs to present the personal injury class action with "headless" classes. The PSC has available several arguments to dispute the merits of the defendant's motion to strike which would clearly impact on the presentation of a motion for class certification. For example, the PSC submits that one of the class representatives who was nominated both as a class representative for New Jersey as well as for a nationwide class, could function as the class representative for the so-called "headless" classes. Resolution of the matter before briefing takes place on class certification would obviously streamline the class briefing depending upon the Court's determination of the issue.[1]

Further, the PSC has recently filed motions to amend the master class action complaints for both the personal injury and the medical monitoring classes to fill several of the interstices left blank by identifying representative plaintiffs whose presence was unknown at the time of the filing of the master class action complaints. Amending the master complaints to include these

---

[1]The PSC will answer Merck's so-called motion to strike in a timely and separate filing.

additional representative plaintiffs will impact on Merck's outstanding motions to dismiss and motion to strike and accordingly will have an effect on the ultimate motion for class certification. Given the uncertainty of the pleadings in light of the defendant's motion to strike, motions to dismiss, as well as the PSC's motion to amend the complaint, it ill-behooves the parties to embark upon a motion for class certification addressing only the personal injury claims. Rather than let the cart get before the horse, the PSC submits that efficiency dictates that the pleadings should be closed prior to class certification.

Not only should the pleadings be resolved before class certification, but the PSC submits that the maturing of the litigation is also a practical consideration that should be addressed prior to briefing certification issues.

Under the aegis of the Fifth Circuit, consideration of the maturity of the claim is a matter of importance to the class certification determination in aggregated personal injury claims. In *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), the Fifth Circuit was confronted with an appeal from a certified class of nicotine-dependent cigarette smokers seeking compensatory and punitive damages under a variety of legal theories. In reversing the district court's certification determination, the Fifth Circuit imposed a maturation requirement that is not yet present in Vioxx litigation. Specifically, the court held:

> Our specific concern is that a mass tort cannot be properly certified
> without a prior track record of trials from which the district court
> can draw the information necessary to make a predominance and
> superiority analysis required by Rule 23. This is because
> certification of an immature tort results in a higher than normal risk
> that the class action may not be superior to individual adjudication.

*Id.* at 747. The holding of *Castano* has resonated in other courts that find a "prior track record"

4

helpful to the determination of judicial efficiency. *See, e.g., Arch v. American Tobacco Co., Inc.,* 175 F.R.D. 469, 495 (E.D.Pa. 1997). *See also McGovern,* An Analysis of Mass Torts for Judges, 73 Tex.L.Rev. 1821, 1843 (1995)(observing that courts in mass tort actions are better able to make an informed case management decisions after the actions have matured); *McGovern,* Resolving Mass Tort Litigation, 69 B.U.L.Rev. 659 (1989)("Maturity exists on a continuum," however, maturity in a specific cases depends on the circumstances of that case.").

Under the circumstances, Vioxx litigation is relatively immature. Only one state case has gone to a verdict in a jury trial. *See Ernst v. Merck & Co., Inc.,* No. 19961 (Tex.D., 23rd Jud.Dist. Brazoria, Cty.)(<u>$253 million verdict for plaintiff</u>). In New Jersey state litigation, only the second case to proceed to a jury trial is currently in progress. *See Humeston v. Merck & Co., Inc.,* No. 619, No. ATL-L-2272-03MT (N.J. Super., Atl. Cty.). No case in this MDL has gone to trial, although the first trial is scheduled to begin on November 28, 2005.

Allowing a limited number of federal test cases to proceed to trial before deciding class certification could provide the Court with a wealth of additional information pertinent to the Rule 23 criteria.

For example, trials would further demonstrate whether the affirmative defenses that Merck raises in its Answer to Plaintiffs' Amended Master Class Action Complaint (Personal Injury and Wrongful Death Actions) are "common" or "typical" defenses, which Merck can be expected to raise across the board. If Merck pursues these defenses, many involve matters that will be disposed of before trial, such as whether plaintiffs have stated claims upon which relief may be granted. Briefing, oral argument and rulings on those issues will provide the Court with information on issues that ultimately will be common and typical (or not) to a would-be class.

Personal injury trials would also help demonstrate whether the ultimate issues – such as whether Vioxx caused the plaintiffs' injuries and whether Merck is liable for them – as well as Merck's related defenses are common and typical on a classwide basis.

Superiority is another Rule 23(a) issue that may be better determined by the Court after further discovery, pretrial proceedings and a handful of trials. Courts making early decisions in the tobacco litigation, for example, struggled with superiority issues when those cases were in their nascent stages, as they had little in the way of benchmarks against which to determine whether class treatment would be superior to individual trials. *See, e.g., Castano,* 84 F.3d at 748-49 ("Only after the courts have more experience with this type of case can a court certify issues in a way that preserves judicial resources"); *Ruiz v. American Tobacco, Co.,* 180 F.R.D. 194, 198 (D. P.R. 1998) (lack of maturity did not support superiority on class certification); *Arch,* 175 F.R.D. at 495 (immaturity of cases made issue of superiority one of mere speculation). *See also In re Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300 (7th Cir. 1995) (HIV-tainted blood products liability case noting that, where case was immature, individual trials were not a wasteful alternative to class treatment).

After finding that it was unable to determine the question of superiority when faced with a relatively immature tort action, *Arch* explained the benefit of allowing the issues to mature:

> If there existed a prior track record of trials in these types of cases, the Court would be able to make a more accurate determination of judicial efficiency. The Court could refer to the actual issues and problems that arise in these cases, instead of being forced to speculate as to what these issues and problems may be. Additionally, individual trials in these cases may winnow out many of the individual issues that are now before this court. . . . After individual trials are conducted in these cases, the courts will have the necessary information to make a thoughtful and logical

6

superiority determination.

*Arch*, 175 F.R.D. at 495-96.

Two opinions from the United States District Court for the Eastern District of

Pennsylvania in the Fen-Phen (*Diet Drugs*) litigation show the benefit of allowing the issues in a

personal injury mass tort to mature.  In the first opinion, the court held that the immature status

of the case at the time, including the completion of just one trial and a lack of advanced

settlement discussions, prevented the court from certifying a proposed settlement class.  *In re*

*Diet Drugs*, MDL 1203, Civ. A. 98-20594, 1999 WL 782560, *7 (E.D. Pa. Sept. 27, 1999).

In the second opinion, the same court held later in the case that the advanced state of

discovery, definition of substantive issues, identification of the risks of establishing liability and

damages, and overall "trial readiness" supported its decision to certify a settlement class and

approve a proposed settlement (albeit a different one, with a different defendant, than had been

proposed earlier).  *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, *63 (E.D. Pa.

Aug. 28, 2000).

The resolution of Rule 23(b) issues may also be more difficult when the issues in a

personal injury mass tort action have not had time to mature, as the United States Court of

Appeals for the Fifth Circuit noted in *Castano*:

> Even assuming that certification at this time would result in
> judicial efficiencies in individual trials, certification of an
> immature tort brings with it unique problems that may consume
> more judicial resources than certification will save. . . .
>
> The primary procedural difficulty created by immature torts is the
> inherent difficulty a district court will have in determining whether
> the requirements of rule 23 have been met. . . .

7

> The district court's predominance inquiry, or lack of it, squarely
> presents the problems associated with certification of immature
> torts. Determining whether the common issues are a "significant"
> part of each individual case has an abstract quality to it when no
> court in this country has ever tried an injury-as-addiction claim.

*Castano*, 84 F.3d at 749.

By contrast, allowing the parties to develop the issues in the personal injury claims, through further discovery, pretrial proceedings and several federal MDL trials, the Court would be in a superior position to rule on the relevant certification criteria under Rules 23(a) and 23(b). The parties would be better prepared to brief the issues, and the Court would then have an improved foundation from which to rule.

Finally, resolution of Merck's other motions to dismiss the medical monitoring and purchasers class could bear on the approach the PSC takes to the personal injury classes. The PSC submits that it is premature and ill-conceived to approach the class actions in a piecemeal, staggered fashion. Such an approach was not contemplated by PTO No. 16 and should not be condoned at this junction in the litigation.

## III.   CONCLUSION

For the reasons set forth above, the PSC respectfully asks that the requirements of PTO No. 16 as amended be stayed as it relates to the PSC's obligation to file a motion for class certification regarding the personal injury claims until thirty days after resolution of the pending motions to dismiss the master class action complaints (re: medical monitoring and purchaser class) and the motion to partially strike plaintiffs' personal injury and wrongful death mast class action complaint, whichever is later.

8

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

By:_____

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:    (504) 581-4892
FAX:  (504) 561-6024

**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

9

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX  77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

Dianne M. Nast, Esquire **(on brief)**
Jennifer S. Snyder, Esquire **(on brief)**
RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA  17601
(717) 892-3000 (telephone)
(717) 892-1200 (telecopier)
**Vice Chairperson Law and Briefing
Committee**

10

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 28th day of September, 2005.