IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX                               ) | MDL NO. 1657 |
|     PRODUCTS LIABILITY LITIGATION   ) | SECTION: L |
|                                                         ) | JUDGE FALLON |
| This Document Relates to all Cases   ) | MAG. JUDGE KNOWLES |

**PLAINTIFFS' REPLY TO MERCK & CO., INC.'S OPPOSITION TO
MOTION TO COMPEL ANSWERS TO MASTER SET OF INTERROGATORIES
AND RESPONSES TO MASTER SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS (CONCERNING ARCOXIA)**

Merck's Opposition to Plaintiffs' Motion to Compel fails to address the central arguments submitted and neglects to acknowledge its unwillingness to meet and confer to address its concerns. Merck does not refute Plaintiffs' relevance arguments. Instead, it has, without any asserted basis, argued that further production of ARCOXIA safety information is not relevant. Next, Merck contends that Plaintiffs' Requests for Production and Interrogatories are overbroad and burdensome, but fails to acknowledge it refused to meet and confer on these points, choosing instead to state that the ARCOXIA information was "off limits." And finally, Merck's arguments regarding the protection of Trade Secret information are vague, without basis, and provide no basis to deny Plaintiffs' Motion. Consequently, Plaintiffs' Motion to Compel should be granted and the parties should be instructed to meet and confer to determine the scope, timing, and manner of the remaining ARCOXIA production.

I. **MERCK'S PRODUCTION IN THE NEW JERSEY LITIGATION IS INADEQUATE.**

Merck's production in the New Jersey litigation is limited and not adequate to fairly litigate the central issues in this action. While Merck has produced a significant amount of information about the ARCOXIA trials, it is not sufficient to allow Plaintiffs to assess the extent and timing of Merck's knowledge regarding the cardiovascular and cerebrovascular (CV) risks associated with ARCOXIA. Merck has not produced many of the categories of documents which address the key liability questions in this litigation. To the extent that there is information related to the CV risks of ARCOXIA, that information is central to this litigation and must be produced. That said, Plaintiffs have repeatedly stated they are amenable to narrowing their initial requests to alleviate any unreasonable burdens that might be created.

II. **MERCK FAILS TO COUNTER PLAINTIFFS' ARGUMENTS THAT THE REQUESTED ARCOXIA INFORMATION IS RELEVANT.**

Merck asserts that the ARCOXIA information Plaintiffs seek is not even arguably relevant, but then fails to address any of Plaintiffs' relevance arguments. Nor does it refute that its own personnel considered that information relevant to their understanding of the thromboembolic effects of VIOXX, as the documents submitted with this Motion demonstrate. Indeed, Peter Kim, the President of Merck Research Laboratories, acknowledged that relevance in a deposition earlier this year.

```
                        461
25   Q.   Have you felt at least at some points

                        462
1    in time that the results of what you're seeing in
2    ARCOXIA trials may be relevant to what you're
3    thinking about with regard to VIOXX?
4        A.   Yes.
```

Exhibit A, Excerpt of Peter Kim Deposition, dated March 16, 2005, at 461-62.

2

Merck has not refuted Plaintiffs' arguments regarding the relevance of the ARCOXIA safety information Plaintiffs seek, but rather has arbitrarily limited what part of that information should be produced. There is, however, no justification for deeming the ARCOXIA trials relevant and, for instance, the discussions of the results of those trials, irrelevant.

Nor does the limitation on the scope of the New Jersey production present such a justification. The scope of that production was the result of a meet and confer process in the New Jersey litigation designed to advance the litigation, not a limitation imposed by Judge Carol Higbee.[1] Moreover, nothing in the agreed order limited the Plaintiffs' ability to seek an expanded production at a later date. Consequently, Merck provides no basis to limit its ARCOXIA production to the information produce thus far.

### III. MERCK'S ARGUMENTS REGARDING THE BREADTH AND BURDEN OF PLAINTIFFS' REQUESTS DO NOT JUSTIFY DENYING PLAINTIFFS' MOTION.

Merck contends that Plaintiffs' Motion should be denied because their requests are overly broad and burdensome. Merck's argument should not be entertained at this juncture. Despite numerous requests to discuss Plaintiffs' discovery requests pertaining to ARCOXIA, Merck repeatedly refused, stating that ARCOXIA was simply "off-limits." Exhibit B, E-mail from Christopher Tisi to Jan Call, dated Aug. 1, 2005; See Exhibit C, Letter from Phil Wittman to Russ Herman, dated July 29, 2005. Their flat refusal to discuss any further production of ARCOXIA material forced Plaintiffs to file the instant Motion and flies in the face of the Court's instruction to meet and confer on these discovery matters. Merck's arguments on this point may

---

[1] In its Opposition, Merck makes repeated reference to the Texas appellate court opinion issued before VIOXX was withdrawn, barring production of ARCOXIA material. Judge Higbee in New Jersey made a similar ruling in August 2004, also before VIOXX was withdrawn and before Merck had produced documents demonstrating the relevance of ARCOXIA. When Judge Higbee was given an opportunity to revisit the question, the agreed production was ordered.

3

well have been addressed in a meet and confer. They do not justify completely barring further ARCOXIA discovery.

### IV. MERCK'S TRADE SECRET CONCERNS ARE WITHOUT BASIS.

Lastly, Merck argues that it should not be required to produce any other information because such production would jeopardize its Trade Secret protection. This argument does not justify denial of Plaintiffs' Motion. Indeed, it is so vaguely stated that it is difficult to ascertain precisely what information Merck contends are Trade Secrets.

That said, the ARCOXIA information sought is no more trade secret information than is the VIOXX information already produced. Even if there were some greater justification for protecting some of the ARCOXIA documents, it is unclear why further production would reveal trade secret information if the initial production of ARCOXIA documents did not. Moreover, even if there were Trade Secret issues at stake there is a confidentiality agreement in place to address such concerns. Finally, if additional concerns had been presented during the court-ordered meet and confer process, it is likely that they could have been addressed. Because Defendants' Trade Secret argument is inappropriately vague and without basis, it is insufficient to justify denial of this Motion.

### CONCLUSION

Plaintiffs have met their burden of demonstrate the relevance of the documents sought and Defendants have failed to counter those arguments. As instructed by this Court, Plaintiffs attempted to meet and confer with Defendant Merck to address any residual concerns regarding the production but Merck refused and instead filed an opposition to this Motion which asserts only vague concerns that may well have been addressed in a more specific discussion.

4

For these reasons, Plaintiffs respectfully request that this Court grant its Motion to Compel Production of Redacted ARCOXIA-Related Material.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

By: _____
Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024

**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

PLAINTIFFS' LIAISON COUNSEL

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)

(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
P.O. Box 960

5

| | |
|---|---|
| 191 East Second Street<br>New Roads, LA 70760<br>(225) 638-6137<br>(225) 638-8836 (fax) | (713) 650-0022 (telephone)<br>(713) 650-1669 (telecopier) |

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire
Daniel C. Levin, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 30th day of September, 2005.

476534.1

Confidential - Subject to Protective Order 299

```
 1                  SUPERIOR COURT OF NEW JERSEY
                    LAW DIVISION - ATLANTIC COUNTY
 2                       -  -  -

 3   IN RE:  VIOXX LITIGATION : CASE NO. 619
     -------------------------------------------------
 4      IN THE CIRCUIT COURT OF CLAY COUNTY, ALABAMA

 5   CHERYL ROGERS, et al.    : CASE NO.
              Plaintiff       :
 6       v.                   :
     MERCK & CO., INC., et al.,:
 7       Defendants           : CV-03-73
     -------------------------------------------------
 8              CAUSE NO. 19961*BH02
                       -  -  -
 9   CAROL ERNST, INDIVIDUALLY : IN THE DISTRICT COURT OF
     AND AS PERSONAL          :
10   REPRESENTATIVE OF THE    :
     ESTATE AND HEIRS OF ROBERT:
11   CHARLES ERNST, DECEASED;  :
     R. CHARLES ERNST;         :
12   ANGELA F. ERNST           : BRAZORIA COUNTY, TEXAS
              v.               :
13   MERCK & CO., INC.,        :
     HARVEY RESNICK, M.D. AND  :
14   R/D CLINICAL RESEARCH,    :
     INC., BRENT H. WALLACE    :
15   M.D.                      : 23RD JUDICIAL DISTRICT

16   -------------------------------------------------
                       -  -  -
17                  CONFIDENTIAL
              SUBJECT TO PROTECTIVE ORDER
18                     -  -  -

19                     -  -  -
                    March 16, 2005
20                     -  -  -

21        Continued videotape deposition of PETER S.
     KIM, Ph.D.
22
                ESQUIRE DEPOSITION SERVICES
23             1880 John F. Kennedy Boulevard
                       15th Floor
24            Philadelphia, Pennsylvania 19103
                    (215) 988-9191
25
```

ESQUIRE DEPOSITION SERVICES

Exhibit "A"

Confidential - Subject to Protective Order 300

```
1   PHILIP & CYNTHIA DIPIETRO  :  COURT OF COMMON PLEAS
            (h/w)              :  DELAWARE COUNTY
2          v.                  :
    MERCK & CO., INC.          :
3          AND                 :
    ROBERT F. CROWELL, D.O.    :
4          AND                 :
    BROOKHAVEN MEDICAL         :  CIVIL ACTION
5   ASSOCIATES                 :  NO: 04-19198

6                       - - -
                     CONFIDENTIAL
7            SUBJECT TO PROTECTIVE ORDER
                        - - -
8

9           Continued videotape deposition of PETER S.

10   KIM, Ph.D., held in the offices of Dechert LLP, 1717

11   Arch Street, Philadelphia, Pennsylvania 19103,

12   commencing at 9:03 a.m., on the above date, before

13   Linda L. Golkow, a Federally-Approved Registered

14   Diplomate Reporter and Certified Shorthand Reporter.

15

16                       - - -

17

18

19

20

21

22

23

24

25
```

ESQUIRE DEPOSITION SERVICES

Confidential - Subject to Protective Order 461

1   a box that says "Labeling, data driven, weight of
2   evidence, discontinuous, Arcoxia, healthy, benefit/
3   risk."
4           Q.      What does the term "discontinuous"
5   and then "Arcoxia" refer to?
6           A.      Oh, I don't think the Arcoxia is tied
7   to the discontinuous.  And I don't know what the
8   discontinuous is referring to.
9           Q.      What does Arcoxia refer to?
10          A.      That refers to another COX-2
11  inhibitor.
12          Q.      Why were you writing Arcoxia?
13          A.      I'm not sure.  But I was certainly --
14  during this time period, I was certainly interested
15  in assessing what we should be doing with Arcoxia.
16          Q.      Did you feel like that the findings
17  of APPROVe might be relevant to what you were doing
18  with Arcoxia?
19          A.      Well, that was exactly the question
20  that I wanted to assess.
21          Q.      Correspondingly, have you felt at
22  least at some points in time that the results in
23  Arcoxia is relevant to what you're doing with Vioxx?
24          A.      I'm sorry, can you say that again?
25          Q.      Have you felt at least at some points

ESQUIRE DEPOSITION SERVICES

Confidential - Subject to Protective Order 462

1   in time that the results of what you're seeing in
2   Arcoxia trials may be relevant to what you're
3   thinking about with regard to Vioxx?
4       A.      Yes.
5       Q.      Please continue.
6       A.      Then it says, "APPROVe, APTC, 200,
7   number needed to harm.
8               "VIGOR, complicated GI, 35, number
9   needed to treat (prior history age greater than 70,"
10  something which I can't read and "severe" something
11  which I can't read.
12      Q.      That's because it's cut off; correct?
13  You would expect in the original notes we would be
14  able to read these; correct?
15      A.      I would assume, but I don't know
16  that.
17      Q.      Okay.
18      A.      "VIGOR, APTC, 150, number need to
19  harm."
20      Q.      What does that refer to?
21      A.      What it refers to is a terminology
22  which is used when people -- it's terminology when
23  people are trying to assess risk that might be
24  associated with a drug. And so what it refers to is
25  that under a certain set of assumptions over a

```
From: Cvtisi@aol.com [mailto:Cvtisi@aol.com]
Sent: Mon 8/1/2005 4:01 PM
To: jan.call@dechert.com
Cc: Ben.Barnett@dechert.com; eben.flaster@dechert.com;
dbuchanan@seegerweiss.com; trafferty@levinlaw.com; LDavis@hhkc.com
Subject: Re: MDL Master Interrogatories
```

Dear Jan:

I'd like to set up a time to speak tomorrow so we can finalize where we agree and where we disagree. Are you available?

In this regard, please find my initial comments below in red. In making these comments, I want to confirm that, with the exception of the interrogatories that are identified below, Merck agree to substantively answer the interrogatories which we have skipped over. Moreover, I want to reiterate that it is the PSC's position that most questions require an affirmative answer, not an incorporation by reference.

Chris Tisi

In a message dated 7/28/2005 4:56:10 P.M. Eastern Standard Time, jan.call@dechert.com writes:

> Chris,
>
> As we discussed yesterday, I wanted to update you on some issues related to the Master Interrogatories. I am still trying to gather information on other matters we discussed, and of course, am waiting to hear back from you on some. We will obviously be able to report to the Court that we have made some progress and are continuing to work on this matter, although no final agreement has been reached.
>
> Interrogatory No. 3 -- Feel free to persuade me otherwise, but because there are no manufacturing defect claims in the litigation, the manufacturing division of Merck has no relationship to any issue in the litigation.

CVT Comment: As you know, these are intended to be a "master set" of interrogatories that cover all present and future cases in the MDL as well as state cases that may be coordinated with it. I am not sure that there are no current manufacturing claims and, even if there are not, there are likely to be some. Moreover, the location of

Exhibit "B"

manufacturing facilities may be relevant to other legal issues, including choice of law and jurisdiction.

No. 5.   -- If this interrogatory can be re-drafted to make clear that it requests information concerning employees "retained" or "consulted" as factual witnesses (even thought they might later give expert-type testimony), and is not meant to encompass former employees retained purely as consulting experts in the litigation, I believe we don't have any dispute over this interrogatory. As we discussed yesterday, the same type of clarifying language should be incorporated into No. 50, so that it only seeks information regarding outside consultants retained in the ordinary course of business and not for purposes of litigation.

CVT Comment: We would be willing to amend interrogatory No. 5 as follows:

Have you have retained and/or contracted, informally or formally, with any former employee of Merck for the purposes of providing factual testimony should it be requested by either Merck of another party either by deposition or for trial. If your answer is "yes," please state the name, last position held with Merck, date agreement was reached, the amount of compensation agreed to, how much compensation has been paid to date and identify by bates number any written contract which memorializes the agreement. (Please note that this interrogatory is intended to identify persons who are under contract to provide factual testimony, if needed, and is not intended to discover the identity of former employees who were retained solely as a consultant for litigation purposes.)

CVT Comment:  For No. 50, we would amend it to state as follows:

Please identify every outside consultant that you employed, retained or consulted in the normal course of business with respect to cardiovascular and cerebrovascular issues relating to Vioxx stating their name, address, period(s) of contact, and the work they were asked to do. (Please note that this interrogatory is not intended to identify consultants who were retained exclusively for purposes of litigation)

CVT Comment:  Interrogatory No. 9:  We agree that section (h) should read "The date of any Vioxx "Dear Doctor" or Vioxx "Dear Healthcare Provider" letters indicating the substance and purpose of that letter;

No. 10 -- I am still investigating what information is available, but do want to restate that we believe it is sufficient to respond by referencing publicly-available documents.

CVT Comment:  We disagree with your statement last Thursday that this financial information is not relevant and discoverable by way of answer

to interrogatories at this time. As I said last week, I do not think that the information is solely related to punitive damages. Indeed, much of the financial information sought provides motive evidence for why Merck did or did not do certain things while Vioxx was on the market. Clearly, motive evidence is a proper subject for interrogatories. Moreover, as you agreed, this is evidence that may clearly be relevant on this issue of punitive damages and, given the proximity of trial, the information is timely. Further, we see no basis for your suggestion that we seek this information form publicly available documents and not by interrogatory. As you have pointed out when we were discussing the Plaintiff's Profile Form documents are not often under oath, may need foundation and may not be in admissible form, By contrast, interrogatories are answered under oath and do not need foundation to be admissible. In fact, this is why Merck insisted that much of the information in the Plaintiff Profile Form be included in the profile form itself and not by reference to medical or prescription records. The PSC believes that producing this information by interrogatory will assist the Court and a Jury on the motive, state of mind and punitive damages issues.

     Nos. 18-22 (and 36 to the extent it seeks foreign information) - - It looks like we are going to have to agree to disagree on these, unless the PSC iswilling to narrow the requests significantly. Please let me know if there is a more narrow set you would like us to consider.

CVT Comment: As you now, many courts have found that foreign activities in marketing, approval, removing and labeling of drugs is relevant. It provides state of mind evidence, state or of knowledge evidence, feasibility evidence and may be evidence on the standard of care. Given the law in this area, we believe that it is improper to withhold this information in these Master interrogatories. Clearly, such evidence is discoverable even if later, Merck were to challenge admissibility or some of this evidence at the time of trial.

Interrogatory No. 24: The PSC has considered your request to drop this question in light of the in camera review. We cannot do so. We will, however, agree that you can answer this interrogatory by incorporating the documents sent to Judge Fallon for in camera review to the extent that it is responsive to sections (a), (b), and (h). In any event, we think you do need to answer the remainder, including subsections (c)-(g)

     25. -- The need for a list of "legal" personnel to evaluate the privilege log is understood -- we will get back to you on how we might be able to do this.

CVT Comment: I am glad that we were able to agree to this. We agree to limit the list to legal personal from the date of the first document for which you have claimed attorney-client privilege.

Interrogatories 31 and 35: As we discussed, we think there is no basis for you declining to identify the databases even if you claim it should be shielded from production.

36. -- It is my understanding that the PSC asked only for prescribing physician practice data for the MPF and was apparently sufficient to the PSC, so we question the need for additional information outside the MPF. In any event, I am still investigating what information Merck has in what format, other than the IMS database, which, as you know, is the subject of other discussions and disputes.

CVT Comment: I think you are referring to a different interrogatory?

Interrogatory No 39: You asked that the PSC consider withdrawing this interrogatory. We decline to do so. We believe that we are entitled to this information as to what conduct of any of Merck;s sales forced was considered improper promotion and who engaged in that activity.

Interrogatory No 47: When we spoke, you indicated that any discovery directed towards the Arcoxia issue would be "off limits." We respectfully disagree. First, I note that you have produced Arcoxia documents in New Jersey and should agree to such discovery in the MDL. Second, one of the positions taken is that all NSAIDS and COX-2's carry risk. We believe that Arcoxia evidence may be relevant to that question. Finally, the Arcoxia studies done may be relevant to whether some of the Arcoxia studies were feasible with respect to Vioxx.

49. -- Have you thought more about the best language to use to clarify that you are seeking information about non-Merck "controlled" or "contracted" studies -- are you comfortable with those terms or have you come up with anything else?

CVT Comment: Yes. We can rephrase it to begin" Did you ever provide financial or other assistance for the performance of a study not specifically contracted by Merck concerning the safety and/or efficacy of Vioxx?"

54 and 55. -- Again, as we discussed, these are not questions that will provide a simple "yes" or "no" answer that you would be able to display for the jury at trial. I am not at all sure what plaintiffs expect to gain from these interrogatories, or whether the PSC will insist on including these questions in the final version of the Master Interrogatories.

CVT Comments: We believe that these are proper interrogatories that are designed to identify areas of agreement or disagreement. Surely, we (and the Court and a Jury) are entitled to know under oath whether or

not Vioxx is capable of causing a heart attack or a cerebrovacular accident in humans.

I am still gathering information on some of the other issues we discussed. I will also wait to hear from you on those issues you were going to take back to the PSC, such as Nos. 24 and 29. I won't be in the office tomorrow, but will check my e-mail and will forward any additional information to you.

Jan Fink Call

Dechert LLP

4000 Bell Atlantic Tower

1717 Arch Street

Philadelphia, PA 19103-2793

215.994.2275 (phone)

215.851.6275 (fax)

jan.call@dechert.com

www.dechert.com

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
To reply to our email administrator directly, send an email to postmaster@lchb.com


# Dechert LLP

July 29, 2005

**Via Hand Delivery**

BOSTON

BRUSSELS

CHARLOTTE

FRANKFURT

HARRISBURG

HARTFORD

LONDON

LUXEMBOURG

MUNICH

NEW YORK

NEWPORT BEACH

PALO ALTO

PARIS

PHILADELPHIA

PRINCETON

SAN FRANCISCO

WASHINGTON

Honorable Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Camp Street, C456
New Orleans, LA 70130

Re: **In re: Vioxx: 1657** – **Status Report Concerning PSC's Master Discovery**

Dear Judge Fallon:

The Defense Steering Committee ("DSC") respectfully submits the following status report relating to the master set of discovery. As set forth more fully below, counsel from the PSC and DSC have been diligently working together in good faith and have made substantial progress towards creation of an agreed-upon set of negotiated master discovery requests. Furthermore, the parties are focusing on the prompt production of responsive documents even in the absence of final agreement as to the scope and language of the master document requests.

The PSC has requested specific categories of documents and the DSC has, in turn, been able to identify custodians and/or departments at Merck & Co., Inc. ("Merck") that contain documents responsive to such requests. Representatives of the DSC initially identified approximately ninety document requests where Merck has already produced responsive documents. Without addressing the sufficiency of the production of documents responsive to this subset of document requests, counsel for both sides agreed to focus discussions on the remaining set of essentially novel requests. In an effort to accommodate the PSC and start producing additional responsive documents as soon as possible, the DSC has established a schedule for the collection, review, and production of documents supplementing productions in other Vioxx litigation.

The DSC has agreed to produce a first wave of responsive documents, as early as the third week of August 2005, consisting of the custodial files of various Merck personnel: Reid Miller (Forecasting & Decision Research, Business Analysis and Decision Support ("BADS")), Candace Ritchie (Medical Services), Ricardo Arce (USHH - FIT), Laura Villardo (RESS), Lisa Lamond (A&A FBG), and Mark Williams (DHSS). The DSC anticipates production of a second wave of responsive documents, which has already been collected and is currently under review, consisting of general departmental files from BADS, USMedsa, Academic and Professional Affairs, and Customer Marketing and Sales. The third wave will consist of key personnel from the BADS department, including the custodial files of Nancy Wicks, Mark Degatano, Brant Biehn, Jeff McKeever, Christ Posner, James Lee, Vishal Kapur, Mike Stanton, Shane Campbell, Ron Diebold, Diana Donnelly, Chris Donald, Ben Adeyi, Chris Kauffman, Tamara Hayden. We are also

C:\Documents and Settings\eflaster\Desktop\Vioxx\Letter to Judge Fallon on Master Discovery.doc 9/30/05 12:19 PM

**Law Offices of Dechert LLP**
4000 Bell Atlantic Tower • 1717 Arch Street • Philadelphia, PA 19103-2793 • Tel: 215.994.4000 • Fax: 215.994.2222 • www.dechert.com

Exhibit "C"

Honorable Eldon E. Fallon
July 29, 2005
Page 2

currently in the process of collecting documents from the department known as Research Information Systems at Merck as well as reviewing and producing datasets and documents relating to the ViP and VICTOR clinical trials.

Counsel have engaged in similar discussions relating to the first set of interrogatories propounded by the PSC. There is, in fact, little disagreement on the majority of the interrogatories and only a few categories require further investigation and discussion among counsel. The representative of the PSC has agreed to language to clarify several interrogatories, whereas other interrogatories will require more substantive discussion among the members of the PSC as a group. Similarly, the DSC is in the process of gathering information on several other interrogatories. Finally, there are at least two categories of interrogatories and document requests that may need to be brought before the Court – namely, discovery that implicates foreign entities and Arcoxia.

Additional discussions between counsel will be necessary to target areas of further discovery and coordinate a reasonable timeframe during which counsel can deliver documents in the midst of other ongoing litigation obligations. As referenced above, there may prove a limited number of areas where the parties are unable to reach agreement on discovery, but the parties will continue to work together constructively towards a resolution without requiring intervention by the Court at this time. Presently, counsel for the PSC and DSC are satisfied with their informal discussions and the proposed plan to address the master discovery in the MDL.

Respectfully submitted,


Phillip A. Wittmann