## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to All Class Action | : | JUDGE FALLON |
| Cases | : | MAG. JUDGE KNOWLES |

**MEMORANDUM IN SUPPORT OF THE PLAINTIFF STEERING COMMITTEE'S REPLY TO MERCK'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ANSWERS TO MASTER SET OF INTERROGATORIES AND RESPONSES TO MASTER SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (FOREIGN RELATED ACTIVITIES)**

On August 26, 2005, the Plaintiff's Steering Committee (PSC) filed its Motion to Compel documents related to Merck's foreign activities involving Vioxx (rofecoxib).  The specific items sought include information and evidence concerning clinical and other studies, adverse experiences, warnings given in other countries, and other information.  In its motion, the PSC argued that since such evidence is relevant and admissible in both Federal and State Court, it should be compelled as part of discovery. See, eg. In Re Rezulin Products Liability Litigation, 309 F. Supp. 2d 531 (S.D.N.Y);

On September 26, 2005, Merck filed its opposition to the PSC motion.  With one notable exception, Merck did not raise any issue that has not already been addressed already by the  PSC in its original opening brief.  That sole exception is this Court's ruling on foreign issues in In Re Propulsid Product Liability Litigation, MDL 1355, Minute Entry  4 ( May 14, 2001)(attached as

exhibit 1). Relying on its opening brief, PSC will not reargue issues already briefed and confines

this short reply to a discussion of this Court's ruling in <u>Propulsid</u> and its impact on this case. As

set forth below, both the facts of <u>Propulsid</u> and this Courts reasoning support the PSC motion to

Compel and are at odds with Merck's position in this case.

    1.)  <u>The Facts of This Case Differ From The Facts that were at Issue in *Propulsid*</u>

    The facts which underlie this Court's ruling in <u>Propulsid</u>, could not be more distinct from

the facts in this case. Unlike Merck in this case, Janssen actually *agreed* to and did voluntarily

produce documents from its key foreign entity and further *agreed* to produce foreign documents.

Specifically, this Court in <u>Propulsid</u> found it noteworthy that Jansen had shown flexibility and

had agreed to produce all relevant documents from "Janssen Pharmaceutica N.V. in Bearse,

Belgium." <u>See</u>, May 14, 2001 Minute Entry, Hearing Transcript (H. Tr.) At 38. Janssen *agreed*

to produce all relevant documents which would happen to be "located in any Jansen or Johnson

and Johnson in the United States as well as Jansen Pharmaceutical in Bearse, Belgium" even if

those documents had originated elsewhere. <u>Id</u> at 39. Janssen produced a substantial amount of

foreign documents. In stark contrast to Janssen, Merck has been utterly inflexible and has

refused to collect documents from <u>any</u> of its subsidiaries, including Merck Frosst, the Canadian

subsidiary where Vioxx was conceived and developed[1] and Merck, Sharp and Frosst, the British

subsidiary where many of the Vioxx clinical trials were conducted. Merck has refused to

produce such documents in its possession by stating that if it concerned foreign conduct, it is not

discoverable. Indeed, Merck has purposefully culled from its production any document--even

---

[1]See, eg Website for Merck Frosst, attached as Exhibit 2. Noteworthy in Propulsid, the Belgium documents would be a similar type of request.

those in its possession and control-- which touches upon its foreign studies, marketing, approval, warnings, adverse experiences, or other communications.  Clearly, the facts in Propulsid are very different than the facts in this case.

2.)  The Court in *Propulsid* Found Foreign Information to be Relevant

In its opposition, Merck argues strenuously that courts have found foreign documents of the kind that the PSC seeks "utterly irrelevant." Merck Opp. At 3.  Apart from the fact that Merck is wrong. on the law[2], it implies that this Court already found such material irrelevant in Propulsid. See, *Merck Opposition* at 6, citing Propulsid Minute Entry of May 11, 2001 at  4. However, this Court in Propulsid held otherwise.  In Propulsid, the Court noted that:

> However, the defendants arguments attacking or seeking to debunk relevance is substantially weakened when the nature of plaintiff' claims is scrutinized.  The plaintiffs contend that the defendants designed, manufactured and marketed an unsafe product.  That they misrepresented the safety of the product, which they knew or should have known was unsafe.  That they failed to warn of the known risks of the product.  What the defendants knew or what they should have known, and when they knew it, and when they should have known it is an issue in the plaintiff's case
>
> *...Therefore, the relevance requirement [for foreign documents], even under the most conservative or restrictive view of the present rule 26, may be satisfied.*

Id at 40-41 (emphasis added).

3.)   The PSC Interrogatories and Request for Production are Narrowly Tailored and Therefore Differ from the Discovery Found Burdensome in *Propulsid.*

Recognizing that information on foreign issues was indeed "relevant" under Rule 26, this Court in Propulsid then turned to the question of whether the requests were overly burdensome,

---

[2]  See, PSC Motion to Compel at 6-9 and cases cited therein.

expensive and disruptive on Jansen's Foreign Operating Companies (FOCs).  Before making its

ruling, the Court noted that: 1)  The plaintiffs were seeking to conduct *foreign discovery* on

*foreign* FOC's and 2)  That the discovery sought was extremely over broad.  Id at 43  Given these

facts, the Court denied the motion to compel without prejudice to make additional specific and

focused requests.  Id

Again, the facts this Court faced in Propulsid could not have been more different than

they are here.  What the PSC seeks in this case is not in the direct possession of Merck and it is

not believed to be in the possession of any FOC and therefore does not involve "foreign

discovery" at all.  Rather, the foreign documents and information sought are already in the

possession of Merck itself and should be produced under the federal rules.

The PSC seeks "foreign discovery" from Merck's foreign subsidiaries (the equivalent of

the Johnson and Johnson FOCs).  This information was critical to the development, testing and

sales of Vioxx in the United States.  It is directly related and comprises a substantial amount of

material where much of the work was done on Vioxx.

Finally, and perhaps most importantly, this PSC has not requested overbroad types of

requests that this court found problematic in Propulsid.  The requested information refers to very

specific documents that were referred to by Merck witnesses in their deposition. [3]  Further, many

questions deal with discrete and relevant issues like adverse event reports received by Merck's

foreign subsidiaries No. 24, 50, 52, 80-83, 85), labeling for risks (no. 35-39; 35-39; 95-105) and

studies (nos. 46-48, 51-57).  Similarly, the PSC asked a total of five (5) interrogatories which

---

[3]  See, eg, Request for Production, Nos 81-83; 90  (asking for specific documents referred
to in Exhibits attached to the deposition of Thomas Bold, MD)

For these reasons, Plaintiffs respectfully request that this Court grant its Motion to Compel Production of Redacted ARCOXIA-Related Material.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

By: _____

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024

**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)

(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
P.O. Box 960

5

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
   MEUNIER & WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire
Daniel C. Levin, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 30th day of September, 2005.

476534.1

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAY 14 AM 11: 37
MAY 1 4 2001
LORETTA G. WHYTE
CLERK

MINUTE ENTRY
FALLON, J.
May 11, 2001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: PROPULSID | : | MDL NO. 1355 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION "L" |
|  | : | JUDGE FALLON |

THIS DOCUMENT RELATES TO ALL CASES:

Following the pretrial status conference on April 19, 2001, the Court heard argument

from counsel on Plaintiffs' motions to strike objections to discovery and to compel production of

documents from entities under the control of defendants Johnson & Johnson and Janssen

Pharmaceutica. The Court denied Plaintiffs' motions. The reasons orally assigned for the Court's

ruling at the conference are attached to this minute entry.

DATE OF ENTRY
MAY 1 4 2001

Fee
Process
X Dktd
CtRmDep
Doc.No.

Exhibit "1"

10    THE COURT:   Thank you.  Both sides, as I have said,

11  have favored me with thorough briefs, and I have profitted from

12  the oral arguments.   I'm ready to rule on the motions.

13    The plaintiffs in this particular case submitted a Rule

14  34 merits request for production of documents.   The request

15  contains over one hundred requests with over one hundred

16  subparts.   The plaintiffs' request for production defines the

17  defendant, that is to say the party or parties who are to furnish

18  the response, to respond to the response, to include, "every

19  company affiliated with each such company by common ownership or

20  control."

21    The defendants object to the production of the

22  documents from any foreign facilities other than the documents

23  from Jansen Pharmaceutica N.V. in Beerse, Belgium.   Such

24  documentation the defendants claim are neither relevant nor

25  reasonably likely to lead to relevant discoverable material.

1    Therefore, the defendants, in essence, decline to produce

2    documents created, or for that matter, located at other foreign

3    operating companies, [FOCs, as they term them] affiliated with

4    Jansen, even though these companies may have had something to do

5    with Propulsid.

6         It should be noted, however, that the defendants have

7    agreed to produce, and are actually producing, or will produce

8    all potentially  relevant documents located in any Jansen or

9    Johnson and Johnson in the United States as well as the Jansen

10   Pharmaceutica N.V. in Beerse, Belgium.  These documents are being

11   provided in CD ROM format with sortable index of objective coding

12   and searchable OCR text for unredacted  documents.

13        The plaintiffs move to strike the defendants'

14   objections and seek also to compel production of the documents

15   from all foreign entities affiliated by common ownership or

16   control.  The plaintiffs claim that the information is relevant

17   and necessary to the preparation of their particular case.

18   Defendants, on the other hand, respond that the requests are

19   overly broad, they also argue the requested material is

20   irrelevant and that the requests are burdensome.

21        The defendants' claim of irrelevance does have some

22   merit.  There has been some change in the definition of

23   "relevance".  For over five decades Rule 26 defined the scope of

24   discovery as, "Any matter not privileged which is relevant to the

25   SUBJECT MATTER involved in the pending action."  On December the

1   1st of 2000, the rule was amended to limit discovery, "to matters
2   relevant to the CLAIM OR DEFENSE OF THE PARTY," except for good
3   cause.   The thrust of the change seems to be to reign in
4   discovery, or restrict it somewhat and to give the Court a
5   greater hand in deciding the scope and nature of the discovery.
6   Moreover, some of the requests call for information which is or
7   may be specific to the location or locality.   For example, the
8   application requirements to regulatory agencies may be different;
9   also, stress, diet, custom usage, and other factors may well
10  differ greatly from country to country. All of this supports a
11  claim of irrelevancy.

12           However, the defendants arguments attacking or seeking
13  to debunk relevancy is substantially weakened when the nature of
14  the plaintiffs' claims is scrutinized.   The plaintiffs contend
15  that the defendants designed, manufactured and marketed an unsafe
16  product.   That they misrepresented the safety of the product,
17  which they knew or should have known was unsafe.   That they
18  failed to warn of known risks of the product.  What the
19  defendants knew or what they should have known, and when they
20  knew it, or when they should have known it is an "issue" in the
21  plaintiffs' claims.

22           In this regard, it is significant to note that the
23  plaintiffs claim that there is some evidence to indicate that
24  Propulsid was marketed for years abroad before approved in the
25  United States.   The drug was introduced in Europe in 1988 and was

1   placed on the market in the United States in 1993.  Plaintiffs

2   suggest that there may have been some side affects or adverse

3   reactions before 1993, the time it was introduced in the United

4   States and perhaps as far back as 1981.  If so, the foreign

5   subsidiaries, so say the plaintiffs, may be the warehouse or the

6   repository of such information.  Therefore, the relevance

7   requirement, even under the most conservative or restrictive view

8   of the present Rule 26, may be satisfied.

9        However, relevancy is not the only factor to be

10  considered, particularly in a manner of this nature.  An MDL case

11  involving perhaps several million documents, costing many

12  millions of dollars to produce, with potential likelihood of

13  business interruption presents peculiar problems.  The court,

14  according to the cases, is authorized to limit discovery if it

15  determines that, (1) the discovery sought is cummulative or

16  duplicative or is obtainable from some other source that is more

17  convenient, less burdensome, or even less expensive.  Or where

18  the burden or expense of the proposed discovery outweighs its

19  likely benefit, taking into account the needs of the case, the

20  Court may consider the amount in controversy, the parties

21  resources, the importance of the issues at stake in the

22  litigation, and the importance of the proposed discovery in

23  seeking to resolve the issues.

24        Moreover, in this particular case, we are confronted

25  with foreign discovery which adds an additional element.  The

1   cases seem to make some distinction in foreign discovery as it
2   relates to non-foreign or United States discovery.  The seminal
3   case on this issue is Societe Nationale Industrielle Aerospatiale
4   v. United States 482 U. S. 522 (1987), which the Fifth Circuit
5   picked up in In Re Anschuetz and Co 838 F.2d, 1362, (1998).
6          The Court in Aerospatiale suggests that American courts
7   in supervising pretrial proceedings involving foreign entities
8   should exercise special vigilence in order to protect foreign
9   litigants from the danger of unnecessary or unduly burdensome
10  discovery.  Objections to discovery that foreign litigants
11  advance should receive most careful consideration.  The exact
12  line, the Courts say between reasonable and abusive discovery
13  must be drawn by the trial court based on the particular facts of
14  the case and the foreign interest involved.
15         Foreign discovery, it seems to me, as articulated in
16  the cases that I have reviewed, imposes issues of comity between
17  nations and also key issues of enforceability.  Neither issue is
18  insurmountable, but does require a cautious, deliberate and
19  specific approach.
20         · After considering all of the above matters and
21  balancing the benefit with the burden of the discovery of the
22  records of these FOCs, other than Beerse, it is the conclusion of
23  the Court that it is not appropriate to conduct the broad based
24  discovery that the plaintiff now seeks.  At this time, discovery
25  should be limited to the United States and Beerse, as well as

1   those FOC documents which are being produced and that are
2   traditionally sent to the FDA in the United States and those
3   matters dealing with labeling or scientific safety data, or
4   adverse event evaluation material.

5           Accordingly, the plaintiffs' motion to strike the
6   objections and the motion to compel production are denied.  But
7   let me say this:  the problem that I see with the current status
8   of the discovery request is it's broad nature.  The broad nature
9   of the requests, in themselves, as I said once before, make it
10  overly burdensome, difficult and in the long run complicates
11  matters more than it helps.  The requests are too general and
12  lack any reasonable specificity.

13          If the parties, in the future, reach the point in
14  discovery where certain specific items, specific locations,
15  specific references in depositions focus on areas which can be
16  defined with more certainty, with greater specificity, then this
17  material or some material from the FOCs may well be not only
18  relevant but also produceable.

19          Hopefully, learned counsel for both sides will know
20  whether or not this occurs and will act appropriately and it will
21  not be necessary for the Court to take action or even consider
22  the matter.

23          Thank you, gentlemen.

24                          *       *       *

25