IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:    VIOXX PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 1657<br><br>SECTION: 1<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| This document relates to *CAROLINE NEVELS, et al.*<br>*Individually and as Representative for persons identified*<br>*under R.S. Mo. 537.080(1) concerning the Wrongful Death*<br>*of SHELLY SOUTH, and on behalf of all others similarly situated,*<br>*v. MERCK & CO., INC., et al.*; USDC-WD-MO #04-0952-CV-W-DW | |

### PLAINTIFFS' FIRST AMENDED PETITION FOR DAMAGES

COMES NOW Caroline Nevels, Individually, as Plaintiff Ad Litem on behalf of Shelly South, as the Representative for persons identified under R.S. Mo. 537.080.1(1) concerning the wrongful death of Shelly South, and as representative of the putative class herein described, and for their First Amended Petition, adding counts for Punitive Damages, Lost Chance of Recovery and Lost Chance of Survival, states:

1

1. This Petition is filed because Defendant Merck and Co., Inc. ("Merck"), beginning in approximately 1999, marketed a defective pharmaceutical product known as Vioxx (rofecoxib), a medication mainly designed to reduce pain and inflamation associated with arthritis. Sometime between May and July of 2000, Shelly South began taking Vioxx and was thereby injured, developing, *inter alia*, adverse reactions and/or conditions which ultimately led to her death on November 5, 2002. On September 30, 2004, Defendant Merck announced that it would withdraw Vioxx from national and world markets because of its propensity to cause the same injuries as those suffered by Shelly South.

2. Caroline Nevels, on behalf of her deceased daughter, Shelly South, and the Class of persons identified herein, seeks to recover damages from the Defendant Merck. Specifically, Plaintiff seeks:

   (a) Compensatory and punitive damages caused by Defendant Merck's intentional, reckless, and/or negligent design, testing, formulation, manufacture, marketing and selling of the defective product Vioxx (rofecoxib); and,

   (b) Damages for medically indicated medical monitoring of the Class to insure prompt treatment of injuries caused by Vioxx (rofecoxib).

## JURISDICTION AND VENUE

3. Caroline Nevels is an individual residing at P.O. Box 442, Lexington, Missouri, 64067. She is the natural mother of Shelly South, who died on November 5, 2002, at a hospital located in Jackson County, Missouri.. Shelly South was at all times hereinafter mentioned a resident

of Lexington, Missouri. Caroline Nevels is and was at all times hereinafter mentioned, a resident of Lexington, Missouri.

4.     Defendant Merck is a New Jersey Corporation doing business and maintaining offices and a manufacturing facility in the State of Missouri.

5.     This Court has jurisdiction pursuant to R.S.Mo. § 506.500 (1) (3), since the defective product was sold, the Plaintiff's injuries occurred, and the tort was completed, in Eastern Jackson County, Missouri.

6.     Venue is proper pursuant to R.S.Mo. § 508.010 (6), since the cause of action accrued in Eastern Jackson County, Missouri.

## PARTIES

7.     Plaintiff Caroline Nevels brings this action pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure on behalf of her deceased daughter, Shelly South, and on behalf of the entire Class of persons, described below, who are similarly situated.

8.     At the time of the negligent acts complained of herein and at all time hereinafter mentioned, Defendant Waclaw Alex Dymek, M.D. ("Dymek") has been a physician, representing and holding himself out to the public, and in particular to Shelly South, as a health care provider, operating in Carrollton, Missouri, and specializing in internal medicine, and providing such services to patients in exchange for valuable consideration paid by them.

9. The class of persons whom the Plaintiff represents consists of all persons who, a) have been damaged by taking Vioxx (rofecoxib), or b) who will suffer damage as a result of taking Vioxx (rofecoxib) as designed, tested, formulated, manufactured, marketed and/or sold by Defendant Merck.

10. The members of this Class are so numerous that joinder of all of them is impracticable.

11. There are questions of law or fact common to the Class, including:

    (a) Whether Vioxx (rofecoxib) is defective;

    (b) Whether Vioxx (rofecoxib) is reasonably fit for the ordinary purposes for which it is intended;

    (c) Whether Defendant Merck was negligent in the design, testing, formulation, manufacture, marketing and selling of the defective product Vioxx (rofecoxib);

    (d) Whether Defendant Merck failed to warn and to adequately disclose information regarding the adverse affects of the defective product Vioxx (rofecoxib);

    (e) Whether Defendant Merck is liable to the Plaintiff for punitive damages and, if so, the amount of punitive damages to be awarded.

12. Plaintiff's claims are typical of the claims of the Class and predominate over any questions affecting only individual members.

4

13. The Plaintiff has retained counsel who are competent and experienced in class action and personal injury litigation, and will fairly and adequately protect the interests of the Class.

14. A class action, under Mo. R. Civ. P. 52.08, is superior to other available methods for the fair and efficient adjudication of this controversy because:

(a) The named Representative has the same interest as other members of the Class, and is financially able to, and will, vigorously prosecute this action on behalf of the Class;

(b) It is desirable to concentrate the litigation in this forum because the damages suffered by individual members of the Class may be relatively small, and the expense and burden of individual litigation make it impracticable for each Class member to pursue separate litigation. Such a situation would permit the Defendant to retain the benefits of its wrongdoing despite violations of the law; and,

(c) No difficulties are likely to be encountered in the management of this litigation as a class action.

## FACTS

15. At all times relevant hereto, Defendant Merck designed, tested, formulated, manufactured, marketed and sold the defective drug known as Vioxx (rofecoxib). Vioxx is a member of a class of drugs that are commonly referred to as "COX-2 inhibitors." COX-2 inhibitors are non-steroidal anti-inflammatory drugs (NSAIDs) used to relieve pain by temporarily blocking

5

the body's production of prostaglandins, the chemicals which are generally associated with the pain and inflammations of injuries and immune reactions.

16. Beginning in 1999, Defendant Merck launched promotion and sales of Vioxx not only in the United States, but in more than 80 countries worldwide.

17. Despite knowledge in its clinical trials and post-marketed reports associating Vioxx with hypertension and/or hypertension-related adverse health effects, as well as heightened risk of cardiovascular complications including, *inter alia*, heart attacks and strokes; Defendant Merck marketed and promoted Vioxx as safe and effective for persons with hypertension, or persons who had risk factors for stroke or other cardio-related health problems.

18. While all COX-2 inhibitors have been associated with rare reports of increased risk of cardiovascular events, such as heart attack and stroke; such reports have occurred significantly more frequently in conjunction with the use of Vioxx than for other FDA approved COX-2 inhibitors.

19. On September 30, 2004, Defendant Merck announced that it would withdraw Vioxx from the U.S. market, allegedly due to "**new**" data which confirmed the heightened risk of cardiovascular events with the use of Vioxx. The FDA agreed with and supported this decision. However, clinical studies long before this date consistently showed results indicating that use of Vioxx significantly increases the patient's risk of heart attacks and strokes.

20. On September 30, 2004, Defendant Merck issued a letter to health-care professionals about Vioxx which states, in pertinent part:

> Merck & Co., Inc. today announced a voluntary worldwide withdrawal of Vioxx® (rofecoxib), its arthritis and acute pain medication.
>
> In this study, there was an increased relative risk for confirmed cardiovascular events, such as heart attack and stroke.
>
> Results of the VIGOR (Vioxx Gastrointestinal Outcomes Research) study, released in March 2000, demonstrated that the risk of gastrointestinal toxicity with Vioxx was less than with Naproxen, but indicated an increased risk of cardiovascular events versus Naproxen.

21. In 1994, Shelly South was diagnosed with arthritis. Sometime between May and July of 2000, Shelly South, who had been on a prescription for another COX-2 inhibitor drug known as Celebrex, began taking Vioxx at the direction of her personal physician, Defendant Dymek. Shelly South took her prescription as prescribed and directed.

22. After more than two and one half (2 ½) years on Vioxx, Shelly South was admitted to Lafayette Regional Health Center on October 17, 2002 with recurrent chest pain syndrome and was transferred to Research Medical Center shortly thereafter.. On November 5, 2002, Shelly South died from a myocardial infarction in Jackson County, Missouri, while still a patient at Research Medical Center..

23. Shelly South incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic losses, and eventually died at the age of thirty-four (34) as a direct and proximate result of the defective drug Vioxx (rofecoxib).

24. Other members of the Class who are taking, or have taken, Vioxx (rofecoxib) are in continuing danger making medical monitoring medically necessary and reasonable.

## COUNT I
## NEGLIGENCE - WRONGFUL DEATH
(All Plaintiffs v. Defendant Merck)

25. Plaintiff adopts and incorporates the allegations in paragraphs 1 through 24 above, as though fully set forth herein.

26. Defendant Merck had a duty to use the degree of care that an ordinarily careful and/or very careful person, or member of Defendant Merck's business and/or profession, would use under the same or similar circumstances to design, test, formulate, manufacture, market, issue warnings calculated to be read and heeded by consumers, and/or sell the product Vioxx (rofecoxib).

27. Defendant Merck failed to use due care under the circumstances and was thereby negligent in the performance of such duties.

28. As a direct and proximate result of Defendant Merck's negligence and breach of duty, Shelly South and the Class have been injured and damaged as herein described.

29. Shelly South and the Class have incurred necessary and reasonable medical expenses, suffered (and continue to suffer) physical pain and mental anguish, experienced (and continue to

8

experience) other economic hardships such as lost wages and loss of household services, and in Shelly South's case, lost her life, all as a direct and proximate result of the defective drug Vioxx (rofecoxib). The Class will additionally continue to incur expenses for medical monitoring.

30.   Defendant Merck's conduct which caused this damage was willful and in reckless disregard of the health and safety of others, justifying imposition of punitive damages.

WHEREFORE, Plaintiff, individually and as representative of the putative class described herein, prays for an award of damages for herself and for the Class against the Defendant in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit, and such other relief as is just and proper.

## COUNT II
## STRICT LIABILITY
### (All Plaintiffs v. Defendant Merck)

31.   Plaintiff adopts and incorporates the allegations of paragraphs 1 through 30 as if fully set forth herein.

32.   Defendant Merck sold Vioxx in the course of Defendant's business.

33.   Vioxx was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

34.   Shelly South and the Class used Vioxx in a manner reasonably anticipated.

35.   Shelly South and the Class were damaged as a direct result of such defective condition as existed when Vioxx was sold. Shelly South and the Class have incurred necessary and

reasonable medical expenses, suffered (and continue to suffer) physical pain and mental anguish, experienced (and continue to experience) other economic hardships such as lost wages and loss of household services, and in Shelly South's case, lost her life, all as a direct and proximate result of the defective drug Vioxx (rofecoxib). The Class will additionally continue to incur expenses for medical monitoring.

36. Defendant Merck's conduct which caused this damage was willful and in reckless disregard of the health and safety of others, justifying imposition of punitive damages.

WHEREFORE, Plaintiff, individually and as representative of the putative class described herein, prays for an award of damages for herself and for the Class against the Defendant in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit, and such other relief as is just and proper.

### COUNT III
### STRICT LIABILITY FOR FAILURE TO WARN
(All Plaintiffs v. Defendant Merck)

37. Plaintiff hereby adopts and incorporates the allegations of paragraphs 1 through 36 as if fully set forth herein.

38. Defendant Merck sold Vioxx in the course of Defendant's business.

39. Vioxx was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics.

40. Defendant Merck did not give an adequate warning of the danger.

10

41. Shelly South and the Class used the product in a manner reasonably anticipated.

42. Shelly South and the Class were damaged as a direct result of Vioxx being sold without an adequate warning. Shelly South and the Class have incurred necessary and reasonable medical expenses, suffered (and continue to suffer) physical pain and mental anguish, experienced (and continue to experience) other economic hardships such as lost wages and loss of household services, and in Shelly South's case, lost her life, all as a direct and proximate result of the defective drug Vioxx (rofecoxib). The Class will additionally continue to incur expenses for medical monitoring.

43. Defendant Merck's conduct which caused this damage was willful and in reckless disregard of the health and safety of others, justifying imposition of punitive damages.

WHEREFORE, Plaintiff, individually and as representative of the putative class described herein, prays for an award of damages for herself and for the Class against the Defendant in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit, and such other relief as is just and proper.

### COUNT IV
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### UNDER UNIFORM COMMERCIAL CODE
### (All Plaintiffs v. Defendant Merck)

44. Plaintiff hereby adopts and incorporates the allegations of paragraphs 1 through 43 as if fully set forth herein.

45. Defendant Merck sold and Shelly South and the Class purchased Vioxx.

46. When sold by Defendant Merck, Vioxx was not fit for one of its ordinary purposes.

47. Shelly South and the Class used Vioxx for such a purpose.

48. Within a reasonable time after Shelly South and the Class knew or should have known the product was not fit for such purpose, Shelly South and the Class gave Defendant notice thereof.

49. As a direct result of Vioxx being unfit for such purpose, Shelly South and the Class were damaged. Shelly South and the Class have incurred necessary and reasonable medical expenses, suffered (and continue to suffer) physical pain and mental anguish, experienced (and continue to experience) other economic hardships such as lost wages and loss of household services, and in Shelly South's case, lost her life, all as a direct and proximate result of the defective drug Vioxx (rofecoxib). The Class will additionally continue to incur expenses for medical monitoring.

50. Defendant Merck's conduct which caused this damage was willful and in reckless disregard of the health and safety of others, justifying imposition of punitive damages.

WHEREFORE, Plaintiff, individually and as representative of the putative class described herein, prays for an award of damages for herself and for the Class against the Defendant in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit, and such other relief as is just and proper.

## COUNT V
## MEDICAL NEGLIGENCE
### (Plaintiff Caroline Nevels, Individually and as Representative for Shelly South v. Defendant Dymek)

51. Plaintiffs hereby adopt and incorporate paragraphs 1 through 50 above as if fully set forth herein.

52. At the time of the negligent acts complained of herein and at all times mentioned, Defendant Dymek had a duty to possess and use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession in the treatment and care of Shelly South.

53. Defendant Dymek breached his duty and is guilty of the following acts of negligence and carelessness, by failing to measure up to the standards of due care, skill and practice required by members of his profession, to wit:

   a) In negligently and carelessly failing to timely monitor, diagnose and recognize the severity of Shelly South's cardiac condition;

   b) In negligently and carelessly prescribing Vioxx to Shelly South even though such a prescription was contraindicated by virtue of Shelly South's medical history.

54. Defendant Dymek's negligence and carelessness directly and proximately caused, or directly contributed to cause Shelly South to suffer severe, permanent and progressive injuries, which ultimately led to her death at the age of thirty-four (34).

13

55. As a direct and proximate result of Defendant Dymek's negligence, Plaintiff was forced to expend monies for medical treatment, suffered loss of the use and enjoyment of various physical capacities, and the loss of enjoyment of life, and was caused to suffer great mental pain, anguish and suffering all to Plaintiff's damage in an amount which at this time cannot be calculated

WHEREFORE, Plaintiff prays judgment against Defendant Dymek in an amount to be determined by the jury, together with interest and cost of suit, and such other relief as is just and proper.

### COUNT VI
### (LOST CHANCE OF RECOVERY AND SURVIVAL)
### (Caroline Nevels as Plaintiff Ad Litem for Shelly South v. All Defendants)

COMES NOW Caroline Nevels, as Plaintiff Ad Litem for Shelly South, by and through counsel, and pursuant to the authority granted to her by R.S.Mo. §§ 537.020 and 537.021 and the Missouri Supreme Court Opinion in *Wollen v. Depaul Health Center*, 828 S.W.2d 682 (Mo. Banc 1992) hereby brings this action on behalf of Shelly South, as if she were bringing this action for her damages, and pleading alternatively, states and alleges as follows:

56. Plaintiff hereby incorporates paragraphs 1 through 55 above as though fully set forth herein.

57. At the time of the negligent acts complained of herein and at all times mentioned, Caroline Nevels has been the natural mother of Shelly South. As such, and pursuant to R.S.Mo.

537.021, Caroline Nevels is the proper party to be appointed by the Court as Plaintiff Ad Litem on behalf of Shelly South in order to pursue any and all claims of Shelly South's which survive her death, including any surviving personal injury and/or lost chance of survival and/or recovery claims.

58. At the time of the negligent acts complained of herein, Shelly South was receiving medical care for a condition that if promptly and properly cared for and treated provided Shelly South with a statistically significant chance of obtaining a full or partial recovery.

59. The Defendants committed the acts of negligence, fraud and strict liability more fully set forth above.

60. The acts of negligence, fraud and strict liability committed by the defendants, as more fully set forth above, directly and proximately caused or directly contributed to cause Shelly South to sustain personal injury, including but not limited to the injuries and damages more fully set out above, and/or to lose any and all chance of recovery and survival.

61. Such lost chance of recovery and/or survival was material and resulted in Shelly South suffering severe, permanent and progressive injuries and damages, all leading to Shelly South's untimely death. Such injuries and damages would not have been sustained by Shelly South, or would have been minimized, had the defendants not committed the acts of negligence, fraud and strict liability more fully set forth above.

WHEREFORE, Caroline Nevels, as Plaintiff Ad Litem for Shelly South, prays judgement against the defendants, and each of them jointly and severally, for such sums as are fair and

reasonable, together with any and all costs herein incurred and expended, for punitive damages, and for such other and further relief as this Court may deem just and proper.

## COUNT VII
### (SHELLY SOUTH'S SURVIVING PERSONAL INJURY CLAIM)
(Caroline Nevels as Plaintiff Ad Litem for Shelly South v. All Defendants)

Plaintiff Caroline Nevels, as Plaintiff Ad Litem for Shelly South, hereby brings this personal injury claim on behalf of Shelly South, as if she were bringing this action for her own damages, and pleading alternatively, alleges and states as follows:

62. Plaintiff hereby incorporates paragraphs 1 through 61 above as though fully set forth herein.

63. At the time of the negligent acts complained of herein and at all times mentioned, Caroline Nevels has been the natural mother of Shelly South. As such, and pursuant to R.S.Mo. 537.021, Caroline Nevels is the proper party to be appointed by the Court as Plaintiff Ad Litem on behalf of Shelly South in order to pursue any and all claims of decedent's which survive her death, including any surviving personal injury and/or lost chance of survival and/or recovery claims.

64. The defendants committed the acts of negligence, fraud and strict liability more fully set forth above.

65. The acts of negligence, fraud and strict liability committed by the defendants, as more fully set forth above, directly and proximately caused, or directly contributed to cause

16

Shelly South to sustain personal injury, including but not limited to the injuries and damages more fully set forth above.

66.     The acts of negligence, fraud and strict liability committed by the defendants, more fully set forth above, directly and proximately caused, or directly contributed to cause Shelly South to suffer severe, permanent and progressive injuries and damages prior to her untimely death, including but not limited to physical and emotional pain and suffering and economic damages in the form of medical bills.

WHEREFORE, Caroline Nevels, as Plaintiff Ad Litem for Shelly South, prays judgements against the defendants, and each of them jointly and severally, for such sums as are fair and reasonable, together with any and all costs herein incurred and expended, for punitive damages, and for such other relief as this Court may deem just and proper.

### COUNT VIII
### AGGRAVATING CIRCUMSTANCES - PUNITIVE DAMAGES
### (Plaintiffs v. All Defendants)

67.     Plaintiffs hereby incorporates paragraphs 1 through 66 above as though fully set forth herein.

68.     The defendants committed one or more of the willful, wanton and malicious acts more fully set forth above which individually and/or cumulatively justify the submission of punitive damages in this case.

17

69. The defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as more fully set forth above, created a high degree of probability of injury or death to Shelly South and other similarly situated patients.

70. The willful, wanton and malicious acts of the defendants, as more fully set forth above, evidence the defendants' complete indifference to and/or conscious disregard for the safety of Shelly South, and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Caroline Nevels, individually and as Plaintiff Ad Litem on behalf of Shelly South, prays for judgment against the defendants, and each of them jointly and severally, and for punitive damages in such an amount as will serve to punish and deter the defendant, and others similarly situated, from engaging in like conduct.

### DEMAND FOR JURY TRIAL OF ALL ISSUES

Plaintiff in the above-entitled cause demands a trial by jury.

Respectfully submitted,

HUMPHREY, FARRINGTON, & McCLAIN

By: *[signature]*
Kenneth B. Mcclain (MO#32430)
Daniel A. Thomas (MO#52030)
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816) 836-5050; fax (816) 836-8966

18

ALLAN KANNER & ASSOCIATES, P.L.L.C.

By: _____
Allan Kanner (LA#20580)
Elizabeth B. Cowen (LA#23697)
701 Camp Street
New Orleans, LA 70130
(504) 524-5777; fax (504) 524-5763

**ATTORNEYS FOR PETITIONERS**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was served on designated Plaintiff and Defendant Liaison Counsel by U.S. Mail, properly addressed and first class postage prepaid, this 26th day of August, 2005.

_____
ELIZABETH B. COWEN, ESQ.

19