IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | ) MDL NO. 1657 ) ) SECTION: L |
| THIS DOCUMENT RELATES TO ALL CASES | ) ) JUDGE FALLON ) ) |

**MERCK & CO., INC.'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS TO MASTER SET OF INTERROGATORIES AND RESPONSES TO MASTER SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (FOREIGN VIOXX RELATED ACTIVITIES)**

Defendant Merck & Co., Inc. ("Merck"), by and through its counsel, respectfully submits this Surreply in order to respond to plaintiffs' contention in their reply brief that the facts surrounding plaintiffs' request for millions of foreign documents in this litigation differ materially from those in the *Propulsid* case, where the Court denied a similar motion.

According to plaintiffs, this matter is different from *Propulsid* because in contrast to Janssen, which "*agreed* to . . . produce documents from its key foreign entity," Merck has "refused to collect documents from any of its subsidiaries, including Merck Frosst, the Canadian subsidiary" where Vioxx® was developed and "Merck, Sharp and Frosst,[1] the British subsidiary where many of the Vioxx clinical trials were conducted." (Pl. Reply at 2. (emphasis in original)) Plaintiffs' contention that Merck has refused to produce science-related foreign Vioxx documents is erroneous. In reality, Merck has made a substantial production of such documents. Plaintiffs now seek to require Merck to undertake a massive production of utterly irrelevant

---

[1] There is, in fact, no entity called "Merck, Sharp and Frosst." Merck assumes that plaintiffs are referring to Merck Sharp & Dohme Limited.

documents related to the marketing, sale, and regulation of Vioxx in foreign jurisdictions. For the reasons set forth below and in Merck's prior briefing, plaintiffs' request should be denied.

*First*, in direct contradiction to plaintiffs' contention that Merck "has refused to collect documents from any of its subsidiaries, including Merck Frosst" (Pl. Reply at 2 (emphasis in original)), Merck has produced 80,000 pages of documents from the custodial files of certain employees at Merck Frosst's facilities in Canada. (*See* Declaration of Charles W. Cohen ("Cohen Decl.") ¶ 10 (attached as Ex. A).) Nor are plaintiffs correct in arguing that Merck has refused to produce documents in its possession containing foreign-related information. To the contrary, Merck has produced "millions of pages of custodial files, committee materials, and other documents" regarding pre-clinical work, including documents related to VIOXX Project Team studies performed at Merck Frosst. (*See id.* ¶ 11.) Merck has also produced the Vioxx New Drug Application, which contains results of pre-clinical testing at Merck Frosst. (*Id.*) Finally, Merck has produced extracts from the Worldwide Adverse Experiences Systems ("WAES") database. (*See id.* ¶ 7.) As its name suggests, WAES contains documents related to adverse experiences from *all over the world* – not just the United States. (*Id.*) Thus, it is simply not true, as plaintiffs contend, that this case differs from *Propulsid* because Merck has not actually and voluntarily "produce[d] documents from its key foreign entity and further *agreed* to produce foreign documents." (Pl. Reply at 2 (emphasis in original).)

*Second*, plaintiffs' motion to compel seeks to require Merck to produce millions of pages of utterly irrelevant sales, marketing and regulatory documents from more than 50 countries in which Vioxx is sold. (*See, e.g.*, Declaration of Sandra L. Simpson ¶ 3 (attached to Merck's Opposition Brief as Ex. 3) ("The number of marketing and regulatory documents located outside the United States – in more than 100 locations in more than 50 countries around the world –

would be staggering.").) Those documents have no bearing on the claims of U.S. Vioxx-users, and producing them would impose an enormous, unjustified burden on Merck. To be clear, what plaintiffs now seek are not clinical materials – which relate to the development and testing of Vioxx and are conceivably relevant to the merits of their claims – but rather documents related to sales and marketing and foreign regulatory filings. Merck has never uniformly refused to produce foreign scientific documents relating to Vioxx, and has produced many categories of documents regarding foreign information relating to pre-clinical trials, scientific presentations, and adverse experiences that occurred outside the Unites States. (Cohen Decl. ¶¶ 5-6, 8-9, 11.) But plaintiffs have no legitimate need for global sales, marketing, and regulatory documents, and as this Court recognized in *Propulsid*, they should be barred from undertaking a massive, highly burdensome fishing expedition in more than fifty countries around the world that will do nothing to materially advance resolution of their claims.

For the foregoing reasons and those set forth in Merck's prior briefing, plaintiffs' motion to compel should be denied.

        Respectfully submitted,

        */s/ Phil Wittmann*
        Phillip A. Wittmann, 13625
        Dorothy H. Wimberly, 18509
        Stone Pigman Walther Wittmann L.L.C.
        One United Plaza
        4041 Essen Lane, Suite 501
        Baton Rouge, LA  70809
        Phone: 225-490-8900
        Fax:    225-490-8960

        Defendants' Liaison Counsel

        Counsel for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 7th day of October, 2005.

*/s/ Phil Wittmann*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL<br>CASES | MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON |

## DECLARATION OF CHARLES W. COHEN

1. I am a partner in the law firm of Hughes Hubbard & Reed LLP ("Hughes Hubbard"), which is one of the firms coordinating the national defense strategy for Merck & Co., Inc. ("Merck") in the VIOXX® litigation. I make this declaration in opposition to plaintiffs' Motion to Compel Answers to Master Set of Interrogatories and Responses to Master Set of Request for Production of Documents (Foreign Related Materials).

2. I am personally familiar with the discovery had in the New Jersey Coordinated Litigation, including the document requests, responses, negotiations, agreements, and document production. I am also personally familiar with Judge Higbee's orders sustaining certain of Merck's objections to the production of foreign-related information. I also have personal knowledge of the MDL 1657 document productions.

3. The Plaintiffs Steering Committee ("PSC") has stated that Merck has "purposefully culled from its production any document – even those in its possession and control – which touches upon its foreign studies, marketing, approval, warnings, adverse experiences, or other communications." (Pl. Reply at 2-3.) This is not true.



4. The PSC has also stated that Merck has "refused to collect documents from any of its subsidiaries, including Merck Frosst . . . ." (Pl. Reply at 2.) This is also not true.

## Plaintiffs Incorrectly Describe the Nature of Merck's Objection and Document Production

5. As specifically set forth in General Objection #11 in Merck's document request responses in the New Jersey VIOXX® litigation, which were served on the MDL co-lead counsel firm Seeger Weiss on January 16, 2004, and in General Objection #10 in the document request responses served in this litigation, Merck's objection to producing foreign materials is limited. It is primarily directed at marketing and regulatory activities outside of the United States. Indeed Merck's objection to producing foreign materials states on its face that it does not include "(1) documents (other than submissions to foreign agencies and correspondence about those submissions) that contain VIOXX® science or report on scientific studies, regardless of where in the world the studies were conducted; (2) documents concerning scientific presentations about VIOXX® made at medical conferences held outside the United States, such as EULAR; (3) information about adverse experiences reported to have occurred outside the United States; or (4) foreign regulatory documents if Merck also submitted them to the FDA, such as the periodic safety update reports."

6. Consistent with its written responses, Merck has produced from the U.S.-based custodial files and other document sources many categories of documents regarding foreign information, including the categories specifically set forth in the limiting sentence of the General Objection. In addition, many of the documents Merck has produced regarding U.S.-based activities also contain foreign information.

7. One example of a worldwide production is Merck's production of information regarding reports of adverse experiences temporally associated with VIOXX®. Merck has made a production of information regarding every single such adverse experience housed in its adverse experience database as of the date Merck voluntarily withdrew VIOXX® from the market. The database from which Merck made its production is called the Worldwide Adverse Experience System ("WAES") database. As its title suggests, WAES contains information relating to adverse experiences reported from anywhere in the world; its contents are not merely limited to the United States.

Merck's Production of Documents from Canadian Subsidiary Merck Frosst

8. At the July 16, 2004 hearing on the New Jersey plaintiffs' motion to compel, the Seeger Weiss firm represented to the Court that they did not see a need for every document from Merck Frosst, and instead proposed that Merck provide a list of 10-15 people from Merck Frosst whose custodial files could be produced. After reviewing that list, and the many documents concerning the pre-clinical work that plaintiffs had received to date from Merck U.S. locations, plaintiffs would then make a proposal regarding a Merck Frosst document production.

9. In accordance with the Seeger Weiss proposal, at the August 2004 New Jersey status conference, Merck provided plaintiffs with a list of twelve people from Merck Frosst. On August 18, 2004, plaintiffs made their final proposal, which included most of the custodial files Merck had offered plus an additional custodian. Merck agreed to make that production and completed the production to the Seeger Weiss firm in October 2004. In accordance with PTO-17, Merck has produced in this MDL the non-case-specific documents produced in the New Jersey proceedings.

10. The production included custodial files from the following Merck Frosst custodians: Kathleen Metters, Mike Gresser, David Percival, Jilly Evans, Ian Rodger, Deborah Nicoll-Griffith, Robert Young, Denis Reindeau, and Kevin Bateman. In total, over 80,000 pages of documents from the files of these Merck Frosst custodians have been produced.

11. In addition to these custodial files, Merck has produced many other documents relating to the pre-clinical work Merck Frosst personnel conducted with respect to VIOXX®. For example, the New Drug Application contains the results of the pre-clinical study program. In addition, Merck has produced over five thousand pages of minutes, agendas, and other material from the VIOXX® Project Team. These materials contain information regarding the pre-clinical work. Information regarding pre-clinical work can also be found across a wide spectrum of the millions of pages of custodial files, committee materials, and other documents Merck has produced.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
CHARLES W. COHEN

Executed on: October 7, 2005

4