# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    OCT 1 1 2005

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES: | | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

*********************************************************************

## NOTICE OF MOTION AND MOTION
## TO COMPEL PRODUCTION OF DOCUMENTS
## IMPROPERLY CLAIMED AS PRIVILEGED ON MERCK'S PRIVILEGE LOG

NOW INTO COURT come Plaintiffs' Liaison Counsel and the Plaintiffs' Steering Committee who move this court for an Order compelling production of documents improperly claimed as privilege on Merck's Privilege Log. As is more fully set forth in the attached memorandum and the prior position paper submission of the PSC on this issue submitted September 28, 2005, the Court should find that the following categories of documents are not privileged and order production of all documents listed on Merck's privilege logs that fall within these categories:

(1)     Entries where no author(s) and/or no recipient(s) are listed;

(2)     Entries where no legal personnel are listed as having authored or received the communication;

(3)     Entries that do not reveal that any legal advice was given or requested or where an attorney was merely copied on the communication;

(4)     Entries that deal with "STUDY ISSUES," "STUDY DATA," "STUDY," "DRAFT MANUSCRIPT," "MANUSCRIPT," "PROTOCOL" or any other topic concerning scientific issues;

(5)     Entries that deal with "PROMOTIONAL ACTIVITY," "PROMOTION," "MARKETING" and/or "PUBLIC RELATIONS."

(6)     Entries that deal with "LABELING," "REGULATION' or "REGULATORY ISSUES';

(7)     Entries where a non-party is an author and/or listed as receiving a copy; and

(8)     Entries that do not describe the subject matter of the communication, are too vague and/or are inconsistent with the information on the privilege log (including redacted documents not listed on the privilege log).

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq. | Gerald E. Meunier, Esq. |
| P.O.Box 1190 | Energy Centre |
| 2220 Bonaventure Court | 1100 Poydras Street, Suite 2800 |
| Alexandria, LA  71309-1190 | New Orleans, LA  70163-2800 |
| PH: (318) 487-9874 | PH: (504) 522-2304 |
| FAX: (318) 561-2591 | FAX: (504) 528-9973 |
| | |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**) | Troy Rafferty, Esq. |
| P.O. Box 4160 | 316 S. Baylen Street, Suite 400 |
| 234 Commerce Street | Pensacola, FL  32502 |
| Montgomery, AL  36103-4160 | PH: (850) 435-7000 |
| PH: (800) 898-2034 | FAX: (850) 497-7059 |
| FAX: (334) 954-7555 | |

| | |
|---|---|
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## <u>PLAINTIFFS' STEERING COMMITTEE</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 7th day of October, 2005.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | **MDL NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION:** | | |
| | : | **SECTION: L** |
| | : | |
| **THIS DOCUMENT RELATES TO ALL CASES:** | | **JUDGE FALLON** |
| | : | **MAG. JUDGE KNOWLES** |

**********************************************************************

## MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## IMPROPERLY CLAIMED AS PRIVILEGED ON MERCK'S PRIVILEGE LOG

## I.     INTRODUCTION

The party asserting a privilege over a document has the burden of proving that the document is privileged. Furthermore, the party asserting the privilege must articulate the basis for the privilege in sufficient detail so that an evaluation can be made regarding the efficacy of the privilege. A central problem with the defendant's privilege log is the description inadequacy. Notwithstanding Merck's inadequate descriptions in the instant litigation, there are a variety of discernable categories that still allow one to reach the conclusion that the privilege is inapplicable. As such, the resolution of certain legal questions may make the inadequate description issue moot. This brief describes the nature of the inadequate descriptions, identifies specific legal questions which may narrow the scope of the dispute at bar and presents a practical framework within which to address this issue.

Withholding documents under a claim of privilege is, as the term reflects, a privilege – one that must be used with prudence to ensure that there is no abuse. Merck has listed on its privilege log approximately 40,000 documents (from non-attorney custodial files) and has not indicated that its log is complete. Documents on Merck's privilege log include calendars, journal

notes, agendas, presentations, articles, studies and other items not likely to be privileged. Moreover, many of the items listed are not authored by or sent to an attorney. In fact, there are over 3,600 instances where Merck has failed to identify an author and/or recipient of the document in question.

Merck has the burden of justifying each claim of privilege. It is Merck's responsibility to make the privilege apparent on the face of its privilege log and to provide a detailed description of the documents being withheld. Merck has abdicated that responsibility by failing to list dates, failing to list authors and/or recipients, providing no and/or weak connections to any legal issue, and listing vague and incomplete descriptions of its allegedly privileged documents.

An example privilege claim made by Merck is listed, in pertinent part, as follows:

| MRK-AFJ Bates Nos. | Date | Author | Recipient | Description of Document | Withheld/ Redacted | Privilege Asserted |
|---|---|---|---|---|---|---|
| 0000376-88 | Undated | Peter Kim | N/A | Notes | Portion reflecting a request for legal advice & opinions re: study issues. | Attorney-Client Privilege |

This privilege claim is typical of thousands asserted in Merck's log – it has inadequate information and ON ITS FACE THERE IS NO PRIVILEGE. It is not authored by an attorney. It is not sent to an attorney. There is no date. Apparently the document is "reflecting" a request for legal advice/opinions even though no recipient is listed. And the substance of the withheld material is vague – "study issues." These problems outline plaintiffs' contentions with Merck's privilege log and illustrate why entire groups of privilege claims are invalid and/or improper for either of two mutually exclusive reasons: 1) The information and/or descriptions provided by Merck are so inadequate that any claim of privilege is waived, or 2) the privilege claims are on their face invalid and have not been proven through the privilege log as required by law.

Pursuant to the Court's requests, plaintiffs have categorized the deficiencies with Merck's privilege log in order provide a reasonable and efficient method for addressing the privilege log issues.  Plaintiffs respectfully request that the Court find the following categories of claims not privileged and order production of all documents falling within these categories:

(1)     Entries where no author(s) and/or no recipient(s) are listed;

(2)     Entries where no legal personnel are listed as having authored or received the communication;

(3)     Entries that do not reveal that any legal advice was given or requested;

(4)     Entries that deal with "STUDY ISSUES," "STUDY DATA," "STUDY," "DRAFT MANUSCRIPT," "MANUSCRIPT," "PROTOCOL" or any other topic concerning scientific issues;

(5)     Entries that deal with "PROMOTIONAL ACTIVITY," "PROMOTION," "MARKETING" and/or "PUBLIC RELATIONS;"

(6)     Entries that deal with "LABELING," "REGULATION' or "REGULATORY ISSUES';

(7)     Entries where a non-party is an author or listed as receiving a copy; and

(8)     Entries that do not describe the subject matter of the communication, are too vague and/or are inconsistent with the information on the privilege log (including redacted documents not listed on the privilege log).

## III.    ARGUMENT

### A.    Merck Bears the Burden of Establishing Any Right to Withhold Documents from the Truth Finding Process

The basic rule of discovery is that all relevant documents must be disclosed unless they are protected by the attorney-client (or other) privilege.  The attorney-client privilege protects only communications made *in confidence* for the purpose of obtaining *legal* advice *from a*

*lawyer.* United States v. El Paso Co., 682 F.2d 530, 538 (5th Cir. 1982); New Orleans Saints v. Griesedieck, 612 F. Supp. 59, 62-63 (E.D. La. 1985).[1]

Privileges are narrowly construed because their assertion results in the suppression of relevant evidence. United States v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976) (Privilege should be "strictly confined within the narrowest possible limits consistent with the logic of its principle" because it "stands in derogation of the public's 'right to everyman's evidence' and as 'an obstacle to the investigation of the truth.'") (citations omitted).   Thus, "[t]he burden of demonstrating the applicability of the privilege rests on the party who invokes it." Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir. 1985).   The privilege must be "specifically asserted with respect to particular documents" and cannot be "tossed as a blanket over an undifferentiated group of documents."   El Paso Co., 682 F.2d at 539 (citing United States v. Davis, 636 F.2d 1028, 1044 n. 20 (5th Cir.), cert. denied, 454 U.S. 862 (1981)); see also In re Shell Refinery, 812 F. Supp. 658, 661 (E.D. La. 1993) ("The asserting party must

---

[1] The privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [a] member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Proceedings, 517 F.2d 666, 670 (5th Cir. 1975) (adopting the much-quoted formulation of United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358-359 (D. Mass. 1950)).   "A failure of proof as to any element causes the claim of privilege to fail." Bulk Lift Int'l v. Flexcon & Systems Inc., 122 F.R.D. 482, 492 (W.D. La. 1988).

adequately substantiate the claim of privilege; a party cannot rely on a blanket assertion of privilege.").[2]

**B.    Merck Fails to Establish that Many Documents Reflect Legal Advice to or From an Attorney**

The attorney-client privilege is, of course, limited to the provision or receipt of legal advice by or to an attorney.  Yet in numerous instances, Merck has failed to establish (1) from whom or to whom a document was sent, (2) that a particular document is to or from an attorney, or (3) that legal advice was given.  Such omissions require that these categories of documents be disclosed to plaintiffs.

**1.    Privilege Log Entries That Fail to Identify The Author(s) or Recipient(s) of the Document**

It is axiomatic that the privilege protects only attorney-client communications.  Yet in more than **8,000** instances, Merck's privilege log identifies no author or recipient.  Rather than provide the names of the individuals involved, Merck either claims that this information is "N/A" – not available – or describes them as "Distribution."[3]  Indeed, Merck recently admitted that the privilege log "often states 'N/A' under the categories of 'Author' or

---

[2] While Merck claims attorney client privilege over the vast majority of the documents it has withheld, it also lodges some work product claims.  The principles set forth in this memorandum apply with equal force to claims of work product.  See e.g. El Paso Co., 685 F. 2d at  542 (documents prepared in the ordinary course of business are not protected by the work product doctrine); Davis, 636 F.2d 1028, 1040 (5th Cir. 1981) (only if litigation is the "primary motivating purpose" behind the creation of a particular document is it protected by the work product doctrine); Union Carbide Corp. v. Dow Chem.Co., 619 F. Supp. 1036, 1051 (D. Del. 1985) ("[F]actual recitations of technical data and research experiments conducted by Carbide's employees" was not protected even if "the documents were prepared by or forwarded to Carbide's in-house counsel.").  Accordingly, Merck's work product claims are also improper.

[3]  The term "N/A" is used approximately 3,600 times and "Distribution" approximately 4,150 times.  Certification of Anthony Irpino ¶ 5. (Ex. "A").  Merck uses other non-descriptive terms such as "Project Team" or "Project Team Members" to identify the authors and/or recipients for another approximately 750 entries on its logs.  Id.

'Addressee/Recipient'" and that "this means that the actual document does not list or otherwise contain the name of any author or recipient on the document itself."[4]

It is well recognized, however, that "[t]he name and title of both the persons sending and receiving a particular document are critical to two elements of the attorney-client privilege." 2 P. Rice, Attorney-Client Privilege in the United States § 11.6, p. 56 (2d ed. 1999). The "identity of individuals" involved in allegedly privileged communications is information that "must be disclosed in order to factually prove the elements of the privilege." Id., § 11:6, pp. 46-47.

No claim of privilege can be maintained for the category of documents where Merck has failed to identify the author and/or recipient. Freeport-McMoran Sulphur L.L.C. v. Millen Energy Equip. Res., 2004 WL 1299042, at *11 (E.D. La. 2004) ("[T]here is no way for the Court to know who prepared the draft insert, for whom it was prepared, and whether it was prepared for the purpose of seeking or rendering legal advice. Freeport has failed to establish that a privilege applies here."), reconsideration denied, 2004 WL 1488665 (June 30, 2004); see also Smiley v. City of Philadelphia, 1995 WL 639799 (E.D. Pa. 1995) ("[F]or each document asserted to be protected" the privilege proponent "must provide both the plaintiff and the Court with the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document . . .. Absent such a designation, a party may not rely upon the privilege [].").

### 2. Privilege Log Entries That Fail to Identify an Attorney as Author or Recipient

Similarly, in countless instances, while listing an author or recipient, Merck fails to identify that person as an attorney or other legal personnel protected by the privilege. Documents in this category include communications between non-legal Merck employees about

---

[4] See p. 18 of transcript of the 9/22/05 privilege log meet and confer previously submitted to the Court on 9/28/05 with the PSC Memorandum Report Regarding Defendant's Privilege Log Issues.

a variety of non-legal topics, such as "study issues," "public relations issues," "marketing" and other similar topics. Obviously, it is difficult to see how such documents would be privileged where there is no legal involvement or an adequate description of same.

Courts commonly find that a claim of privilege cannot be sustained over documents where there is no evidence that an attorney was involved. For instance, in <u>Guzzino v. Felterman</u>, 174 F.R.D. 59, 61 (W.D. La. 1997), the court concluded that privilege was not proven where "[r]eview of the privilege log yields no evidence that a single one of the withheld documents was authored by an attorney, received by an attorney, or prepared for the purpose of obtaining legal advice from an attorney."

Nor does Merck's reliance on its log that the documents pertain to "legal advice" suffice. In <u>Guzzino</u>, the court found that a "vague statement" that an internal investigation was performed "in connection with communication with . . . law department" was insufficient to establish privilege where there was no evidence of a "direct communication" with counsel "for the purpose of obtaining legal advice." 174 F.R.D. at 61-62; <u>see also</u> <u>In re Omeprazole Patent Litigation</u>, 2005 WL 818858, at * 9 (S.D.N.Y. Feb. 18, 2005) (Motion to compel appropriate where "description in the privilege log appeared to be calculated more to make it appear that these documents are properly subject to claims of privilege than to accurately describe what they actually are.").

To the extent that Merck is claiming that a document sent from and to a non-attorney may still be privileged because it comments on or summarizes legal advice of an attorney, the privilege fails for either of two reasons. First, it is axiomatic that no attorney-client privilege arises unless the attorney and client intended the communication to be <u>in confidence</u>. "The assertor of the lawyer-client privilege must prove [among other requirements] . . . that he made a

*confidential* communication." United States v. Robinson, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original).  The presence of others in addition to the attorney and client when the communication occurs precludes any privilege.  See New Orleans Saints v. Griesedieck, 612 F. Supp. 59, 63 (E. D. La. 1985), aff'd, 790 F.2d 1249 (5th Cir. 1986).  Documents from one non-attorney to another hardly reflect this confidentiality requirement.

Second, even assuming that the privilege somehow initially attached to any of these documents, it is waived if the communication is subsequently disclosed to others, as is suggested by the fact that these documents are from and to non-attorneys.  New Orleans Saints, 612 F. Supp. at 63 (E. D. La. 1985); see United States Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 162 (E.D.N.Y. 1994) ("[T]he fact the document is sent to a third party ordinarily removes the cloak of confidentiality necessary for protection under the attorney-client privilege.").

Here, Merck's privilege log fails to show that these documents—which Merck admits were sent to and from non-attorneys—nevertheless are privileged.  The log fails to establish that the documents contain legal advice that was originally intended to be confidential and that that confidentiality was maintained.  As the Fifth Circuit has ruled, a party invoking the privilege must "particularize its assertion of the privilege and prove its case with respect to any specific document."  El Paso Co., 682 F.2d at 541.  The "failure to prove which documents were prepared by attorneys considerably undermines [any] claim to the attorney-client privilege."  Id.  Because the log does disclose only that the documents were to and from non-attorneys, the court must presume that the documents were never protected by the privilege or that any privilege was waived.

### 3.   Privilege Log Entries That Fail to Show a Request for Legal Advice

Finally, although Merck's privilege log often indicates that a particular document was sent by or to an attorney, it fails to establish that the documents actually reflected or sought legal advice. Even if a document is to or from an attorney, it is not protected by the attorney-client privilege unless the document seeks or conveys legal advice. In re Central Gulf Lines, 2000 WL 1793395, *1-2 (E.D. La. Dec. 4, 2000) (citing Simon v. G.D. Searle & Co., 816 F.2d 397, 403 (8th Cir. 1987)). "[T]he mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged." Phelps Dodge Refining Corp., 852 F. Supp. at 160. Documents that do not contain any "confidential client communications or legal advice" are simply not privileged regardless of whether sent to or from an attorney. Id. at 163.

In many instances, Merck has invoked the privilege simply because an attorney, oftentimes in-house Merck counsel, is copied on a document. But the subject matter of many of these documents concerns "public relations," "study issues" and other similar non-legal topics. Thus, Merck apparently is attempting to claim privilege for communications that are not predominantly legal in nature merely because an attorney was copied.

But an otherwise unprivileged document does not gain the protection of the privilege by being funneled through an attorney. It is clear that "counsel cannot suppress evidence by taking possession of it." 1 Rice, supra, § 7:11. p. 72. The privilege is "never available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure." Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314, 324 (7th Cir. 1963).

For example, "a document sent from one corporate officer to another is not privileged simply because a copy is sent to counsel." In re Central Gulf Lines, 2000 WL 1793395, at *1-2 (citing Simon, 816 F.2d at 403).   And documents "written for some other purpose than to seek legal advice and [which] would have been prepared whether or not the attorney was sent a copy" are not privileged. Phelps Dodge Refining Corp., 852 F. Supp. at 163.

Documents that are primarily related to business, scientific or technical matters rather than seeking or conveying legal advice, cannot be privileged by routing them through attorneys. For example, "[a] general claim that the tax department funnels tax work through its attorneys will not do." El Paso Co., 682 F.2d at 541. And "'[a] business document is not made privileged by providing a copy to counsel.'" Simon, 816 F.2d at 403 (also noting that "a number of courts have determined that the attorney-client privilege does not protect client communications that relate only to business or technical data"). Likewise, scientific information does not become privileged merely because it is incorporated into a communication between an attorney and client. Upjohn Co. v. United States, 449 U.S. 383, 395 (1981) (clarifying that privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").

In Hasty v. Lockheed-Martin Corp., 1999 WL 600322, at *2 (E. D. La. Aug. 6, 1999), the court ordered production of internal memoranda among Lockheed managers that were copied to in-house counsel. The court determined that the documents were not privileged because the routing to counsel was for "for informational purposes rather than for legal advice." Id. (citing Phelps Dodge Refining Co., 852 F. Supp. at 164. Additionally, the court noted that the attorney-client privilege is "blurred" with respect to in-house counsel because they often act as a "business advisor" and the privilege is not invoked. Even for communications involving "both a

business policy and a legal evaluation," the court concluded the "business aspects of the decision are not protected simply because legal considerations are also involved." Hasty, 1999 WL 60322, at *2 (citing Hardy v. New York News, Inc., 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987)).

Other Louisiana courts have reached a similar conclusion. See Freeport-McMoran Sulphur L.L.C., 2004 WL 1299042, at *7 ("A document sent from one corporate officer to another is not privileged simply because a copy is sent to counsel."); Guzzino v. Felterman, 174 F.R.D. 59, 61 (E.D. La. 1997) (stating that documents "which are not otherwise protected by the attorney-client relationship are not immunized from discovery by mere delivery of the documents to the hands of an attorney.") (citing United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981)).

### C.   Merck Cannot Sustain Its Claim of Privilege Over "Study" and Other Scientific Documents

Perhaps most problematic is the fact that Merck's privilege log contains literally thousands of documents authored by high-level Merck scientists and researchers that are described as pertaining to "study issues," "study data," "studies," draft manuscripts," "manuscripts," "protocols" and other scientific issues.[5] Despite the claim of privilege, many of these entries do not even list an attorney as a recipient of the document.

There is nothing privileged about scientific research. Indeed, there are "few, if any, conceivable circumstances where a scientist or engineer employed to gather data" should be viewed as falling within the privilege. Phelps Dodge Refining Corp., 852 F. Supp. at 162; see also Simon, 816 F.2d at 403 ("the attorney-client privilege does not protect client communications that relate only to business or technical data"); Roesberg v. Johns-Manville

---

[5] For example, Merck's privilege log includes more than **9,000** entries for documents regarding "study" issues. Certification of Anthony Irpino, ¶ 6. (Ex. "A").

Corp., 85 F.R.D. 292, 301-02 (E.D. Pa. 1980) (requiring production of information regarding manufacturer's knowledge of the health hazards of asbestos even where in hands of non-testifying consultants).

The privilege log provides countless examples of Merck's attempt to withhold scientific information and data under the veil of privilege. This information is discoverable because a "litigant cannot shield from discovery the knowledge it possessed by claiming it had been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer." Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 864 (3d Cir. 1994); see also Crowe by Dyer v. Lederle Laboratories, 510 N.Y.S.2d 228, 229 (N.Y. App. 1986) (scientific reports conducted to "monitor complaints," even if also used in litigation, are discoverable).

Nor can Merck filter "study" data through their in-house attorneys to shield it from discovery. The decision in Burton v. R.J. Reynolds Tobacco Co., 170 F.R.D. 481 (D. Kan. 1997) is instructive. There, the court rejected claims of privilege over internal memoranda relating to "research and development," letters from outside counsel relating to scientific research, literature reviews prepared by scientists at the direction of counsel, a letter from a scientific consultant for outside counsel, minutes of an internal scientific meeting, and notes by employees from an industry meeting relating to scientific research. 170 F.R.D. at 487-490. Thus, Merck's claims of privilege with respect to scientific information – even if filtered through counsel -- cannot be sustained and the Court should find this category of documents discoverable.

**D.     Merck Cannot Sustain its Claim of Privilege Over "Public Relations," "Marketing" and "Promotion" Documents**

Merck's privilege log includes countless documents regarding "public relations," "promotion" and "marketing" activities.[6]   Courts are particularly skeptical of these types of privilege claims since these communications involve predominantly business advice, which is not privileged.   Burroughs Wellcome Co. v. Barr Labs Inc., 143 F.R.D. 611, 615 (E.D.N.C. 1992) (noting that privilege has not been extended to "[b]usiness advice such as that related to product marketing").   The privilege does not protect "communications made to an attorney in connection with business, rather than legal, advice."   Id. at 616.   Nor does the privilege "protect non-legal business advice given by a lawyer; rather the primary purpose of the communication must be to secure legal advice."   Id. at 618.

"[H]andling publicity and dealing with the media are typically business concerns."   Id. at 619.   Accordingly, a "draft press release and accompanying memorandum requesting comments from counsel" prepared by a public relations firm are not privileged where they "disclose[] neither confidential client communications made for the purpose of seeking legal advice nor attorney work product."   Calvin Klein Trademark Trust v. Wachner, 124 F. Supp.2d 207, 209-10 (S.D.N.Y. 2000).   The court in Freeport-McMoran Sulphur L.L.C. reached a similar conclusion even with respect to draft press releases that contained the handwritten comments of counsel, noting that the attorney comments "represent no more than marketing advice as opposed to legal advice."   2004 WL 1299042, at *16.

---

[6] For example, Merck lists more than 14,000 documents regarding either "promotional" or "public relations" issues as privileged.   Certification of Anthony Irpino, ¶ 7. (Ex. "A").

Such communications lack not only the requisite legal advice, but also the necessary confidentiality. Thus, "a draft press release submitted to plaintiff's legal department for review is not privileged because it was not intended to be confidential." Burroughs Wellcome Co., 143 F.R.D. at 619. Likewise, in Freeport-McMoran Sulphur, L.L.C., Magistrate Roby found that draft press releases, even though forwarded to an attorney, were not privileged: "a press release, by its very nature, is meant for the public eye and is not privileged." 2004 WL 1299042, at *24 (E.D. La. 2004); see also In re 3 Com Crop. Securities Litigation, 1992 WL 456813, *1 (N.D. Cal. Dec. 10, 1992) (finding that "because the documents were intended for publication, there was a lack of intent to maintain confidentiality, a requirement of privilege").

**E.    Merck Cannot Sustain its Claim of Privilege Over "Regulatory" and "Labeling" Documents**

For the same reasons Merck's public relations documents are not privileged, Merck's entries pertaining to "labeling" or "regulatory" documents are not privileged. Merck has included a significant number of documents on its log that are vaguely described as relating to "labeling" or "regulatory" issues. [7] Presumably these documents concern Merck's responses to industry obligations stemming from, or in anticipation of, FDA regulations.

A privilege does not apply to information that the client intends his attorney to impart to others. United States v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976). Thus, Louisiana federal courts, when confronted with claims of privilege over regulatory documents, have founds such claims unfounded. See Guzzino v. Felterman, 174 F.R.D. 59, 61-63 (W.D. La. 1997) (documents concerning a "federal regulatory investigation" are not privileged); Freeport-McMoran, 2004 WL 1299042, at * 9 (draft SEC filings are not privileged).

---

[7] Nearly 5,000 documents on Merck's privilege log are described as involving "regulatory" and/or "labeling" issues. Certification of Anthony Irpino, ¶ 8. (Ex. "A").

**F.     Entries on Merck's Privilege Log Disclosing the Presence of Third-Parties Destroy Privilege**

To be protected by the attorney-client privilege, the communication itself must have been made in confidence. El Paso Co., 682 F.2d at 538. Merck's privilege log discloses a number of instances where third parties were recipients of the allegedly privileged communication. The presence of third parties who are not agents of the lawyer destroys the confidentiality necessary for privilege to attach. See New Orleans Saints, 612 F. Supp. at 63 (presence of third parties at meeting where legal advice is rendered "negate[s] the confidential element of the meeting and its minutes"). Merck has not provided any evidence to establish that the third parties were acting as its agents. Accordingly, privilege cannot attach to this category.

**G.     Merck Has Waived Any Claim of Privilege Over Privilege Log Entries That Fail to Describe the Subject Matter of the Communication.**

For hundreds of entries Merck has failed to provide **any meaningful** description of the subject matter of the allegedly-privileged documents. Examples from Merck's privilege log include the following subject matter descriptions: "Draft correspondence reflecting legal advice and client confidences," "Handwritten note reflecting a request for legal advice and opinions," and "E-mail reflecting client confidences and preparatory measures taken in anticipation of litigation." Additionally, there are many instances where Merck has redacted documents and has not listed those privilege redaction assertions on their privilege log.

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires that, when a party withholds otherwise discoverable information under claims of privilege, the party shall "describe the nature of the documents. . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." See also Rule 26(b)(5), advisory committee notes, 1993 amendments ("The party must also

provide sufficient information to enable other parties to evaluate the applicability of the claim privilege or protection.").

To meet the burden imposed by Rule 26(b)(5), Louisiana courts require that a privilege log must provide **specific** information about the subject matter of the withheld documents.  In Felham Enterprises (Cayman) Ltd v. Certain Underwriters of Lloyd's, the court found that simple descriptions like "attorney report," "client inquiry," "payment" and "attorney communication," were not sufficient to support a claim of privilege.  Felham Enterprises (Cayman) Ltd v. Certain Underwriters of Lloyd's 2004 WL 2360159, at *3 (E.D. La. October 19, 2004).  Accordingly, the court found that any claim of privilege had been waived.  In In re Papst Licensing, 2001 WL 1135268, at * 2 (E.D. La. Sept. 19, 2001), the court found that a privilege log must be produced in the "manner described by Professor Rice in P. Rice, Attorney-Client Privilege in the United States § 11.8."  The subject matter descriptions contained in Professor Rice's sample privilege log are as follows:

- Results of review with regulatory counsel (J. Werner) of steps to be taken in opposing ATT Local Distribution Facilities Tariff;

- Legal memo discussing WUI's claim that WU violates "International Formula" in handling unrouted overseas messages.

2 P. Rice, § 11.8 at , p. 75.[8]

_____

[8] Ample case authority supports the principle that specificity – not generality – is required in Merck's privilege logs.  See Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993) ("[V]ery skeletal description of 'subject'" such as "proxy statement" do not meet the proponent's burden of establishing privilege); Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992) ("[D]escriptions such as 'letter re claim,' 'analysis of claim,' or 'report in anticipation of litigation' – with which we have grown all too familiar – will be insufficient."); Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 643 (S.D.N.Y. 1991) (description such as "legal analysis," "legal opinion," "legal strategy," "legal recommendation," or legal advice," were "paltry and self-serving" and unacceptable proof of privilege.").

None of the entries in Merck's privilege log contain this level of specificity. And for the documents in this category, Merck has failed to even provide a generic description – such as, "study issues," "public relations issues" – of the document's subject matter. Instead, there is no subject matter description provided whatsoever. In this circumstance, the only proper remedy is a finding that Merck has waived any claim of privilege. Stempler v. Collect America, Ltd., 2000 WL 288377, at *2 (E.D. La. March 14, 2000) ("If the privilege log is not specific enough, the Court may find that Dendy has waived all claims of privilege."); United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (waiver found where the privilege log contained only "cursory descriptions" of the contents of the documents withheld from production); Willemijn v. Apollo Computer, 707 F. Supp. 1429, 1443 (D. Del. 1989) (ordering production solely on grounds documents were inadequately described on privilege log). Finally, Merck's failure to list certain of their redacted documents on its privilege log is inconsistent with and in violation of the Federal Rules. Accordingly, Merck has waived the privilege for any and all redacted documents which they did not list on their privilege log, and this Court should order Merck to produce said documents (without redactions).

IV.    **CATEGORY-BY-CATEGORY REVIEW IS PERMISSIBLE AND A VIABLE OPTION FOR EVALUATING MERCK'S NUMEROUS AND UNFOUNDED CLAIMS OF PRIVILEGE**

Merck's privilege claims lend themselves to adjudication by category. The log already groups withheld documents in a few broad generic categories, from which a review can be conducted on a category basis. In fact, **many, if not all, of these categories reflect, on their face, a failure on Merck's part to substantiate its claim of privilege**. Accordingly, a claim of privilege cannot be sustained and your Honor should order production of all documents which

fall within such a category.  In the alternative, the PSC requests that the Court review *in camera* a sampling of documents falling within each category to determine the propriety of Merck's privilege claims.

Merck has claimed attorney-client privilege for thousands of documents in a privilege log which fail to adequately describe the documents.  Of course, "[t]he burden of demonstrating the applicability of the privilege rests on the party who invokes it."  Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 720 (5th Cir. 1985).  Merck cannot properly claim privilege for such a large group of documents and expect the court to review each document individually.  Merck cannot shift its burden of preparing a sufficient privilege log to the court.  Obviously, a document-by-document review is both impractical and inefficient.  Instead, a feasible alternative is an *in camera* review of samples of documents from each of several categories identified herein.

The Court has wide discretion regarding discovery — including privilege determinations — and category review is necessary ... otherwise, the sheer volume of Merck's claims immunize them against challenge.  See In re Sealed Case, 676 F.2d 792, 814 (D.C. Cir. 1982) (noting that courts have discretion to avoid "[a]ny system that requires courts to make highly refined judgments – perhaps concerning volumes of documents – [that] will most likely collapse under its own weight").  The Fifth Circuit allows privilege determination based upon review of a sufficient number of documents—not necessarily every one for which Merck has claimed privilege—to assure an informed decision on privilege.  See Sealed Appellees vs. Sealed Appellants, 112 F.3d 173, 174 (5th Cir. 1997) (noting that "[t]he preferable practice" in such circumstances "is for the court to examine a sufficient number of the contested documents to insure the informed protection of the privilege").

This is consistent with the practice of courts around the country.  Courts have often determined the validity of mass privilege claims by isolating documents into categories and then sampling, within those categories, a sufficient number of documents to determine the privilege status of all documents in each particular category.  In <u>In re A.H. Robins</u>, the federal district court in Kansas supervising the multi-district Dalkon Shield litigation set forth a procedure for the determination of privilege by categories or "batches" of documents.  107 F.R.D. 2, 15 (D. Kan. 1985).  In the Minnesota tobacco litigation, the court used a "category approach" to judge the validity of defendants' privilege claims over 230,000 documents.  That process was upheld on appeal against defendants' due process and takings clause challenges.  <u>See</u> <u>State ex rel Humphrey v. Philip Morris Inc.</u>, 606 N.W.2d 676 (Minn. App. 2000), <u>pet. for review denied</u>, 2000 Minn. LEXIS 271 (Minn. 2000); <u>see also</u> <u>United States v. KPMG, LLP</u>, 237 F. Supp. 2d 35, 38 (D.D.C. 2002) (endorsing a sampling process to "to compare the sufficiency of the document description contained in the privilege log with the actual documents, and ultimately determining the validity of KPMG's assertion of privilege").  Similarly, in <u>In re American Honda Motor Co., et al.</u>, the Fourth Circuit held that the district court was not required to review each and every document before ordering disclosure.  No. 98-1414-1415 (slip op.) (4th Cir. March 24, 1998).  Ex. "B."

## V.   LIST OF DOCUMENTS ALLEGED TO BE PRIVILEGED WHICH PLAINTIFFS REQUEST DEFNDANTS PRODUCE TO THE COURT FOR IN CAMERA REVIEW AND RULING WITH RESPECT TO PRIVILEGE.

Plaintiffs restate their assertion that, based solely upon the inadequate information and/or descriptions in the privilege log, Merck has waived any privilege with respect to the following documents (as well as any other documents that fall into the categories at issue).  Indeed, the log itself is supposed to prove the privilege and it does not do so on its face.  Nonetheless, if the

Court sees otherwise, plaintiffs suggest that a review of some allegedly privileged documents may be illustrative of privilege claim invalidity.

Plaintiffs hereby list the following documents which they request the defense produce to the Court for *in camera* review. This Court can then rule on the validity of the privilege that the defense claims with respect to said documents. These documents merely represent a sampling from the categories of invalid privilege claims raised herein. If the Court wishes, plaintiffs can and will provide a list of hundreds or thousands of such documents.

(1)    Entries where no specific author(s) and/or no specific recipient(s) are listed.
     a) MRK-AFJ 0000376-88 (Exhib. "O")
     b) MRK-AAD 0414602 (Exhib. "F-1")
     c) MRK-ABC 0014871 (Exhib. "G")
     d) MRK-ABK 0098654-73 (Exhib. "J")

(2)    Entries where no legal personnel are listed as having authored or received the communication.
     a) MRK-ABI 0005240-4 (Exhib. "H-3")
     b) MRK-ABI 0005252* (not listed on privilege log)
     c) MRK-ABI 0006489 (Exhib. "H-4")

(3)    Entries that do not reveal that any legal advice was given or requested.
     a) MRK-ABI 0005268-71 (Exhib. "H-3")
     b) MRK-AAB 0122493-500 (Exhib. "C")

(4)    Entries that deal with "STUDY ISSUES," "STUDY DATA," "STUDY," "DRAFT MANUSCRIPT," "MANUSCRIPT," "PROTOCOL" or any other topic concerning scientific issues.
     a) MRK-ABI 0008291-97 (Exhib. "I")
     b) MRK-ACO 0071351 (Exhib. "M")
     c) MRK-AAD: 0420746-8 (Exhib. "F-4")
     d) MRK-AAD 0416052-3, 0416054-5, 0416056-7, 0416058-9  (Exhib. "F-3")

(5)    Entries that deal with "PROMOTIONAL ACTIVITY," "PROMOTION," "MARKETING" and/or "PUBLIC RELATIONS."

     a) MRK-ADO 0104552-5 (Exhib. "N-1")
     b) MRK-ADO 0105338-40 (Exhib. "N-2")
     c) MRK-ABI 0005200-3 (Exhib. "H-2")
     d) MRK-ABI 0005744-5 (Exhib. "H-3")
     e) MRK-ABW 0005616 (Exhib. "K")

f) MRK-AAD 0415838-9 (Exhib. "F-2")

(6)     Entries that deal with "LABELING," "REGULATION' or "REGULATORY ISSUES."
a) MRK-ABI 0002126-8 (Exhib. "H-1")
b) MRK-AAD 0229900-3 (Exhib. "E-1")
c) MRK-AAD 0416180-1 (Exhib. "F-3")

(7)     Entries where a non-party is an author or listed as receiving a copy.
a) MRK-ACI 0014544-7 (Exhib. "L")
b) MRK-AAD 0253316-9 (Exhib. "E-2)
c) MRK-ABX 0032716-25 (Exhib. "P")

(8)     Entries that do not describe the subject matter of the communication, are too vague and/or are inconsistent with the information on the privilege log (including redacted documents not listed on the privilege log).
a) MRK-ADL 0077042* (not listed on privilege log)
b) MRK-ABA 0008327-28* (not listed on privilege log)
c) MRK-AGZ 0006451* (not listed on privilege log)
d) MRK-ABI 0001968 (Exhib. "H-1")
e) MRK-AAC 0052217-9 (Exhib. "D")

## VI.   CONCLUSION

For the foregoing reasons, the PSC respectfully requests that the Court find that the categories of Merck privilege claims described herein are not privileged and order the immediate production of documents falling with each such category.  In the alternative, the PSC respectfully

request that the Court review *in camera* a sampling of documents falling within each category and then issue a ruling as to the privileged nature (or lack thereof) of each category.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esq.
P.O.Box 1190
2220 Bonaventure Court
Alexandria, LA  71309-1190
PH:  (318) 487-9874
FAX:  (318) 561-2591

Andy D. Birchfield, Esq. **(Co-Lead Counsel)**
P.O. Box 4160
234 Commerce Street
Montgomery, AL  36103-4160
PH:  (800) 898-2034
FAX:  (334) 954-7555

Elizabeth Cabraser, Atty.
Embarcadero Center West
275 Battery Street, 30th Floor
San Franciso, CA  94111-3339
PH:  (415) 956-1000
FAX:  (415-956-1008

Thomas Kline, Esq.
1525 Locust St.
19th Floor
Philadelphia, PA  19102
PH:  (215) 772-1000
FAX:  (215) 772-1371

Gerald E. Meunier, Esq.
Energy Centre
1100 Poydras Street, Suite 2800
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX:  (504) 528-9973

Troy Rafferty, Esq.
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
PH:  (850) 435-7000
FAX:  (850) 497-7059

Drew Ranier, Esq.
1419 Ryan Street
Lake Charles, LA  70601
PH:  (337) 494-7171
FAX:  (337) 494-7218

Mark Robinson, Esq.
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
PH:  (949) 720-1288
FAX:  (949) 720-1292

Christopher Seeger, Esq. **(Co-Lead Counsel)**
One William Street
New York, NY  10004
PH:  (212) 584-0700
FAX:  (212) 584-0799

| | |
|---|---|
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 7th day of October, 2005.

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: **VIOXX** | ) | **MDL NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | ) | **SECTION: L** |
| | ) | **JUDGE FALLON** |
| **This Document Relates to all Cases** | ) | **MAG. JUDGE KNOWLES** |

### CERTIFICATION OF ANTHONY IRPINO

1. My name is Anthony Irpino and I am a person of sound mind and body of the full age of majority. I am an attorney who has been working with the Plaintiffs' Steering Committee (PSC) in the In Re: Vioxx Products Liability Litigation - USDC, EDLA, MDL# 1657. In connection with my work with the PSC, one of my roles has been head of the PSC's Privilege Log Sub-Committee. As head of the Privilege Log Sub-Committee, I am thoroughly familiar with all procedural and substantive aspects of Merck's privilege log.

2. I received a copy of Merck's MDL privilege log on or about August 22, 2005. Since that time, I have personally reviewed Merck's MDL privilege log and I have coordinated/supervised efforts of the PSC Privilege Log Sub-Committee's critical review of Merck's MDL privilege log. I have personal knowledge of the fact that Merck's MDL privilege log is substantively identical to Merck's privilege log produced in the New Jersey consolidated Vioxx litigation. Additionally, I have personally met and discussed with Merck's attorneys this issue, and they agree that the MDL privilege log is substantively identical to the New Jersey privilege log.

3. Merck's MDL privilege log was produced on CD in the form of one hundred eighty (180) separate PDF files. I have conducted various computer searches of Merck's MDL privilege log. My computer searches of Merck's MDL privilege log involved word and/or phrase searches through the 180 PDF privilege log files which comprise Merck's MDL privilege log.

4. Based upon my review, Merck's MDL privilege log contains:
    a) 21,302 privilege claims/entries where the entire document was withheld,
    b) 24,239 privilege claims/entries where a document was redacted, and
    c) a total of 45,541 privilege log claims and/or entries.
    I determined these numbers by conducting the following phrase and/or word searches of the 180 PDF files which comprise Merck's MDL privilege log: a) "entire document" = 21,302 entries, and b) "portions" and "portion" = 24,239 entries. I added these two numbers together to come-up with the total number of privilege log claims/entries = 45,541.



EXHIBIT

A

5.   Based upon my review, Merck's MDL privilege log contains:
     a) 3,632 instances where no author, no recipient and/or no date was listed,
     b) 4,158 instances where the word "Distribution" was used to describe the author and/or
     recipient(s) of the document in question (rather than list actual and/or specific individuals
     who authored and/or received the document),
     c) 760 instances where the phrases/words "Project Team Members," "Project Team"
     and/or "Team" was used to describe the author and/or recipient(s) of the document in
     question (rather than list actual and/or specific individuals who authored and/or received
     the document).
     I determined these numbers by conducting the following phrase and/or word searches of
     the 180 PDF files which comprise Merck's MDL privilege log: a) "N/A" = 3,632 entries,
     b) "Distribution" = 4,158 entries, and c) "Project Team Members," "Project Team"
     and/or "Team" = 760.

6.   Based upon my review, Merck's MDL privilege log contains:
     9,194 instances where Merck claims a privilege relating to "study" issues.
     I determined these numbers by conducting the following phrase and/or word searches of
     the 180 PDF files which comprise Merck's MDL privilege log: "regarding study" =
     9,194.

7.   Based upon my review, Merck's MDL privilege log contains:
     a) 11,601 instances where Merck claims a privilege relating to "promotional" issues,
     b) 3,444 instances where Merck claims a privilege relating to "public relations" issues,
     c) 176 instances where Merck claims a privilege relating to "marketing" issues, and
     d) a total of 15,221 instances where Merck claims a privilege relating to "promotional"
     and/or "public relations" issues.
     I determined these numbers by conducting the following phrase and/or word searches of
     the 180 PDF files which comprise Merck's MDL privilege log: a) "regarding
     promotional" = 11,601 entries, b) "regarding public relations" = 3,444 entries, and c)
     "regarding marketing" = 176, and d) adding the three numbers together to come-up with
     the total number of instances where "promotional," "public relations" and/or "marketing"
     issues were connected to privilege claims.

8.   Based upon my review, Merck's MDL privilege log contains:
     4,984 instances where Merck claims a privilege relating to "regulatory" issues.
     I determined these numbers by conducting the following phrase and/or word searches of
     the 180 PDF files which comprise Merck's MDL privilege log: "regarding regulatory" =
     4,984.

10.  These computer searches and/or reviews of Merck's MDL privilege log were conducted
     by me personally and the information provided herein is of my own personal knowledge.
     These searches were conducted in good faith in an effort to provide the Court and the
     parties with some contextual information regarding Merck's MDL privilege log.

11.     The foregoing statements are hereby certified by me as being true and accurate to the best of my personal knowledge.  They are representations to the Court and the parties made by me as an officer of the Court.

                                        _____
                                        ANTHONY D. IRPINO (LA BAR NO. 24727)
                                        Irpino Law Firm
                                        201 St. Charles Ave., 25th Floor
                                        New Orlenas, LA 70170
                                        Tel:     (504) 599-5912
                                        Fax:     (504) 599-5913

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 98-1414

In Re:  MARK A. BROOKS,

Petitioner.

No. 98-1415

In Re:  AMERICAN HONDA
MOTOR COMPANY, INC.;
HONDA NORTH AMERICA, INC.;
KOICHI AMEMIYA,

Petitioners.

O R D E R

Mark A. Brooks and American Honda Motor Company, Inc.
("American Honda"), Honda North America, Inc. ("HNA"), and Koichi
Amemiya (collectively, "Honda") have moved for a stay of an order
entered by the district court pending further appellate review.
Pursuant to F.R.A.P. 8(a), in view of the shortness of time, I have
considered the motions for stay as a single judge.  Both Brooks'
and Honda's motions for stay are denied.  Raising essentially the
same questions, they are consolidated.

EXHIBIT
B

I.

The instant applications for relief arise out of litigation brought by various Honda automobile dealers against American Honda, HNA, and other defendants. The dealers have alleged that former employees of American Honda accepted gratuities from other dealers in exchange for favorable treatment in the allocation of automobiles and award of new dealer locations. The cases were consolidated for pre-trial proceedings pursuant to an order from the Judicial Panel on Multi-District Litigation under 28 U.S.C. § 1407, dated August 1, 1995. Brooks, though an HNA employee, is not a defendant in the consolidated cases and has been lead in-house counsel for HNA in the litigation since its inception.

In November 1997, the lead plaintiffs filed a motion to set aside the attorney-client and work product privileges with respect to all communications on the subject of gratuities among American Honda, HNA, and any of their attorneys, including both outside and in-house counsel, between 1979 and June 1993. The plaintiffs maintained that the crime-fraud exception vitiated the privileges asserted by Honda.

On December 19, 1997, after briefing by both parties, the district court held a hearing on the plaintiffs' motion to set aside the privilege. Subsequent correspondence led the district court to approve a proposal suggested by American Honda under which American Honda agreed: (1) to permit discovery of all facts

2

R. APP. 066

relating to gratuities that were communicated between American Honda and outside counsel during the relevant time period; (2) to produce to the court in camera documents regarding legal advice given to American Honda by its lawyers; and (3) to advise the court by April 3, 1998 whether American Honda intended to rely on the defense of advice of counsel at trial so as to render moot some of the claims of privilege.

On March 2, 1998, American Honda informed the district court that it had provided the plaintiffs with all documents for which American Honda had voluntarily waived the attorney-client and work product privileges. American Honda asserted that, following production, only a "handful" of written communications between outside counsel and American Honda on the subject of dealer gratuities remained undisclosed. American Honda described the documents that it was submitting to the court in camera, including investigative files created at the direction of outside counsel.

On March 10, 1998, after reviewing the documents submitted to the court in camera, the district court granted the plaintiffs' motion to set aside the attorney-client privilege and, with specified limitations, work product privilege based on the crime-fraud exception. The district court ordered production of all communications with and all work product of specified outside counsel and in-house counsel relating to gratuities for the 13 years between 1979 and June 1993. The order encompasses a limited

3

number of documents between various persons and Brooks, who became a Honda employee only in 1990.

Honda and Brooks submitted independent correspondence to the district court, each seeking consideration of certain specific issues relating to the court's ruling on the issue of privilege. Honda alternatively requested a stay to permit appellate review in this court. At a telephonic hearing on March 20, 1998, the district court reaffirmed the earlier ruling and granted a stay until Tuesday, March 24, 1998 at 12:00 p.m. to permit Honda and Brooks to seek relief from this court.

## II.

Four factors govern the decision whether to stay an order pending further appellate review: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). Neither Brooks nor Honda has made the requisite "strong showing" of a likelihood of success on the merits.

The plaintiffs have contended that the crime-fraud exception vitiates the attorney-client and work product privileges with respect to all communications among American Honda, its in-house counsel, and outside counsel on the subject of gratuities between

4

1979 and June 1993.   According to the plaintiffs' detailed allegations, Honda did not employ counsel to obtain legitimate legal advice on the subject of gratuities, but rather did employ counsel to assist, whether knowingly or unwittingly, in the wrongful concealment of evidence of bribery.

The attorney-client and work product privileges do not shield from disclosure information given or received in furtherance of a crime or fraud.  In re Grand Jury Proceedings, 102 F.3d 748, 750-51 (4th Cir. 1996); In re Grand Jury Proceedings, 33 F.3d 342, 348-49 (4th Cir. 1994).  Applicability of the crime-fraud exception does not depend on the attorney's knowing participation in the client's crime or fraud: "the concealment or cover-up of its criminal or fraudulent activities by the client, . . . rather than the attorney's lack of knowledge of the criminal or fraudulent activity or activities of the client, controls the court's analysis."  In re Grand Jury Proceedings, 102 F.3d at 751 (citation omitted).

To establish the applicability of the crime-fraud exception, the party attempting to overcome the privilege must make a prima facie showing that the communications sought fell within the crime-fraud exception.  In re Grand Jury Proceedings, 33 F.3d at 349; In re Grand Jury Subpoena, 884 F.2d 124, 127 (4th Cir. 1989).  "'(W)hile a prima facie showing need not be such as to actually prove the disputed fact, it must be such as to subject the opposing party to the risk on non-persuasion if the evidence as to the

5

undisputed fact is left unrebutted.'" _In re Grand Jury Proceedings_,
33 F.3d at 352 (quoting _Duplan Corp. v. Deering Milliken, Inc._, 540
F.2d 1215, 1220 (4th Cir. 1976)).

   After careful consideration of the parties' written and oral
submissions, I discern no error in the district court's finding
that the plaintiffs made a strong _prima facie_ showing that American
Honda's purpose in consulting counsel on the subject of gratuities
was not to obtain legitimate legal advice, but fraudulently to
conceal evidence of bribes.  Given the fundamental illegitimacy of
Honda's purpose in consulting counsel on the topic of gratuities,
the breadth of the district court's order was not unjustified.
Based on the evidence before it, the district court reasonably
concluded that the communications between American Honda and its
counsel, including Brooks, in their entirety, furthered American
Honda's fraudulent design.

   Honda's assertion that the district court was required to
review each allegedly privileged communication _in camera_ before
ordering disclosure is without merit.  This court has explained:

   Under _Zolin_, the decision to review the 'allegedly
   privileged documents _in camera_ is one within the district
   court's discretion: "Once that threshold showing is made,
   the decision whether to engage in _in camera_ review rests
   in the sound discretion of the district court."

_In re Grand Jury Proceedings_, 33 F.3d at 350 (quoting _United States
v. Zolin_, 491 U.S. 554, 572 (1989)).

6

Moreover, I find no merit in Honda's contention that it had insufficient opportunity to rebut the plaintiffs' case. The privilege question was fully briefed and argued before the district court.

In sum, Brooks and Honda have failed to demonstrate a reasonable likelihood of success on the merits. The apparent breadth of American Honda's design to enlist the assistance, knowing or otherwise, of its attorneys in concealing evidence of gratuities supports the district court's finding that the privileges asserted in the instant case are negated by the crime fraud exception.

Therefore, Brooks' and Honda's motions for stay are

Francis D. Murnaghan Jr.
Francis D. Murnaghan, Jr.
United States Circuit Judge

March 24, 1998

