FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 11  PM 3: 14

LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | |
| ALL PERSONAL INJURY CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 | MAGISTRATE JUDGE KNOWLES |

**MERCK & CO., INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO STAY CLASS BRIEFING**

Defendant Merck & Co., Inc. ("Merck"), by its undersigned counsel, respectfully submits this memorandum in opposition to Plaintiffs' Motion to Stay Class Briefing ("Motion to Stay").

## BACKGROUND

On August 2, 2005 (only about two months ago), plaintiffs filed a personal injury master complaint, certified under Rule 11, in which they proposed classes that they specifically alleged met all the requirements of Fed. R. Civ. P. 23, including the superiority requirement of Rule 23(b)(3). (Personal Injury Master Compl. ¶¶ 151-65.) Now, relying on a long line of cases in which federal courts have denied class certification or simply dismissed similar product liability class actions, plaintiffs concede that their proposed class(es) do not satisfy Rule 23(b)(3)'s superiority requirement after all.

Rather than seek voluntary dismissal (the only logical course of action given the admittedly dispositive flaw in their class proposal), plaintiffs instead argue that their class actions

___ Fee _____
___ Process _____
X / Dktd _____
✓ CtRmDep _____
___ Doc. No. _____

should be stayed, ostensibly hoping that at some unspecified future date, they might be able to meet the class certification requirements that their complaint admittedly does not satisfy now. The all-too-obvious purpose of this tactic is to use the class device to obtain an across-the-board tolling of the limitations or prescriptive periods for Vioxx® personal injury claims under the *American Pipe* tolling doctrine. But tolling is not the purpose of a class action, and plaintiffs' proposal thus amounts to an impermissible abuse of the class device. Given plaintiffs' own admission that their class action proposal does not comply with Rule 23, they should voluntarily dismiss their personal injury complaint (without prejudice to refiling if at some future date they conclude that their proposed use of the class device is legally viable). If they refuse to do so, the Court should issue an order now summarily denying class certification.

## ARGUMENT

In arguing that the Court should suspend the schedule for class certification briefing set forth in Pretrial Order No. 16 ("PTO-16"), plaintiffs rely on: (1) Rule 23(c)(1)(A), which contemplates that class certification will take place at an "early practicable time"; and (2) federal caselaw denying certification of class actions that involved "immature" torts. (Pl. Mem. at 2, 4-5.)

As set forth below, however, Rule 23(c)(1)(A) is reason to *reject* (not embrace) plaintiffs' proposal. PTO-16 established by agreement an "early practicable time" for briefing class certification issues in the personal injury actions, as directed by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23(c)(1)(A). Under the schedule set forth in PTO-16, plaintiffs must file a class certification motion within thirty days of the time when Merck answers the relevant complaint. (PTO-16, at 4.) The PSC stipulated to that schedule, and the parties jointly submitted PTO-16 to the Court. During the discussions that resulted in that stipulated schedule, there was

no suggestion that instead of proceeding on the schedule to which they had agreed, plaintiffs would ask the Court to put their proposed class action on ice. Moreover, while Merck strongly agrees with plaintiffs' apparent concession that Fifth Circuit law bars certification of their proposed personal injury class, that is a reason to *dismiss* plaintiffs' complaint or to deny certification of the classes proposed therein – not a reason to stay their putative class action indefinitely.

## I.   THE PERSONAL INJURY MASTER COMPLAINT IS RIPE FOR CLASS CERTIFICATION BRIEFING.

Initially, plaintiffs try to make various procedural arguments for delaying certification proceedings in this matter. Specifically, plaintiffs argue that: (1) there are motions to dismiss pending with regard to the other two master complaints; (2) they intend to seek to add more class representatives; and (3) the language of Rule 23(c)(1)(A) was tweaked in 2003 to require that class certification be resolved "at an early practicable time" rather than "as soon as practicable." (Pl. Mem. at 2-5.) None of these arguments supports plaintiffs' proposal.

First, plaintiffs argue – without any justification – that class certification briefing in the personal injury actions should await resolution of motions to dismiss the *other* master complaints filed by plaintiffs (that is, the complaints asserting economic loss and medical monitoring claims). Not only is that proposed approach directly contrary to the clear dictates of PTO-16 (submitted by the parties as an agreed order), but it makes no sense. The text of PTO-16 expressly contemplates the possibility that different briefing schedules might apply to different master complaints, depending on whether Merck moved to dismiss or answered. (PTO-16, at 2-4.) Moreover, there is simply no basis to argue that plaintiffs are unable to formulate their arguments in support of class certification with regard to the personal injury master complaint until the Court has resolved Merck's motions to dismiss the other master complaints that involve

3

separate and distinct claims (as indicated by the fact that they were included in separate and distinct master complaints).

Second, plaintiffs' argument that certification should be delayed so they can continue to add more named plaintiffs is similarly specious. Plaintiffs' counsel have been filing and litigating numerous Vioxx personal injury cases against Merck for years, providing them ample time to identify class representatives. To allow plaintiffs to drag their feet indefinitely while they purportedly search for representative plaintiffs would be patently unfair to Merck, as well as to those plaintiffs seek to represent. For this reason, Merck has argued in its Response to Plaintiffs' Motion to Amend that the Court should set a deadline of October 21, 2005, for plaintiffs to add new class representatives to their complaints. (*See* Def.'s Resp. To Pl.'s Mots. To Amend, Oct. 7, 2005.) Certainly, plaintiffs' desire to continue amending the master complaint cannot warrant the nullification of the briefing schedule agreed to by the parties and established by the Court.

Finally, plaintiffs' reliance on Rule 23(c)(1)(A), which calls for class certification decisions to be made at an "early practicable time," is misplaced. Nowhere does Rule 23 suggest that a court should indefinitely delay resolution of class certification motions because the plaintiffs believe their proposed class action is not currently certifiable and might benefit from indefinite delay. To the contrary, the rule still calls for certification proceedings to take place at an "early" time, and the Advisory Committee notes explicitly state that "active management may be necessary to ensure that the certification decision is not unjustifiably delayed." *See* Fed. R. Civ. P. 23 (c)(1)(A) advisory committee notes. *See also Denney v. Jenkins & Gilchrist*, No. 03 Civ. 5460(SAS), 2005 WL 388562, at *24 (S.D.N.Y. Feb. 18, 2005) ("Rule 23 directs courts to make a decision as to certification 'at an early practicable time.' As the U.S. Court of Appeals for the Second Circuit has observed, '[t]he reason for this rule is plain: ***fundamental fairness***

requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages.'") (quoting *Siskind v. Sperry Ret. Program*, 47 F.3d 498, 503 (2d Cir. 1995)) (emphasis added); *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1411-12 (D.C. Cir. 1984) ("Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages. . . . That, at bottom, is a matter of simple justice.").

In addition, the Advisory Committee notes make clear that the purpose of Rule 23(c)(1)(A) is to ensure that class certification decisions are not made before the parties have had a chance to conduct discovery and file dispositive motions regarding the named plaintiffs' claims. *See* Fed. R. Civ. P. 23 (c)(1)(A) advisory committee notes. But those concerns are not implicated here. Merck has already answered the Personal Injury Master Complaint,[1] and plaintiffs are not asserting that there is insufficient time to conduct discovery before proceeding with their class certification motion. Indeed, when they agreed to the schedule that they now seek to change, they presumably took account of whatever time would be needed for discovery, and nothing has changed in that regard. Clearly, plaintiffs propose indefinite delay for tactical reasons. Such an approach finds no support in Rule 23.

## II.  IF PLAINTIFFS BELIEVE THEIR PROPOSED CLASSES ARE NOT CERTIFIABLE, THEY SHOULD DISMISS THEIR CLASS COMPLAINT.

Once plaintiffs move beyond their weak procedural arguments, they reveal the true motive behind their motion. According to plaintiffs, a stay is warranted because their personal

---

[1] To the extent plaintiffs complain that they cannot proceed until Merck's pending motion to strike their "headless" classes has been resolved, that suggestion has no merit either. Merck intends to file its reply brief later this week, and given the relative simplicity of the issue and this Court's prompt attention to pending motions, any expectation for delay is unfounded.

injury class action has not risen to the level of a "mature tort." (Pl. Mem. at 4.) Relying on a series of cases in which mass torts were found to be "immature," plaintiffs argue that they should be able to file class action suits and then stay them for an indefinite period of months or years while a "number of federal test cases . . . proceed to trial" and "additional information pertinent to the Rule 23 criteria" is amassed. (Pl. Mem. at 5.) Of course, while these class actions languish, plaintiffs will also argue that all applicable statutes of limitations on all potential VIOXX-related personal injury claims are being tolled pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 561 (1973). Once again, however, plaintiffs' arguments do not support a stay of this case.

What plaintiffs fail to acknowledge is that in each of the "immature" tort cases they cite, the trial court did not stay the class certification determination in order to allow the mass tort to mature. Instead, in every case upon which plaintiffs rely, the trial court denied class certification outright. For example, in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), the Fifth Circuit both reversed class certification of an immature tort and ordered the dismissal of the class complaint, citing a "higher than normal risk that the class action may not be superior to individual adjudication" and noting that "historically, certification of mass tort litigation classes has been disfavored." *Id.* at 746-47. The court's "specific concern [was] that a mass tort cannot be properly certified without a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority requirement required by rule 23." *Id.* at 747. Faced with an immature tort and "extensive manageability problems," the court simply could not "make a superiority determination based on such speculation" and therefore determined that class certification was improper. *Id.* at 747-48. *See also Arch v. American Tobacco Co.*, 175 F.R.D. 469, 495 (E.D. Pa. 1997) (observing that "[a]ny attempt to

6

make a superiority determination in the absence of a prior track record of individual trials is necessarily based on pure speculation" and then denying class certification on that basis). Nothing in *Castano* and other cases like it supports plaintiffs' proposal to delay resolution of class certification, particularly when that "maturing" delay may simply produce more evidence that the claims at issue cannot be tried on a class basis. Rather, the cases plaintiffs cite afford them two options: voluntary dismissal or immediate denial of class certification.

It is readily apparent that the real reason plaintiffs are seeking to postpone a class certification decision on their personal injury claims is their realization that the Fifth Circuit and courts around the country have repeatedly denied efforts to certify personal injury product liability class actions, especially when nationwide classes are sought, not just on grounds of "immaturity," but also because they recognize other unique problems presented by such proposals. These problems include: (1) the impossibility of proving specific causation (in these cases, that Vioxx caused each person's claimed ailment) on a classwide basis; and (2) the insurmountable burden posed by application of fifty states' negligence and other legal schemes. *See, e.g., In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1304 (7th Cir. 1995) (observing that "[m]ost federal courts . . . refuse to permit the use of the class-action device in mass-tort cases" and "[t]hose courts that have permitted it have been criticized"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 65-66 (S.D.N.Y. 2002) (stating that it is "not surprising that all relevant Court of Appeals and the bulk of relevant district court decisions have rejected class certification in products liability cases") (footnote omitted) (collecting cases); *In re Paxil Litig.*, 212 F.R.D. 539, 548 (C.D. Cal. 2003) (denying class certification because the court saw "individual issues . . . as an overarching barrier to class action treatment" and "putative plaintiffs [we]re many and their circumstances, varied"). Indeed, some courts have gone so far as to strike personal injury class

action complaints on the ground that such cases can never be certified.  *See, e.g., In re PPA Prods. Liab. Litig.*, 208 F.R.D. 625, 632 & n.9 (W.D. Wash. 2002) (noting that "an assessment of specific causation . . . necessarily dissolves into a myriad of individualized causation inquiries" and emphasizing the "multitude of decisions declining to certify products liability class actions").  Long odds, however, are not a basis to delay this litigation.  To the contrary, as the *PPA* MDL court recognized, the fact that plaintiffs are proposing a highly dubious class action is all the more reason to resolve class certification early.

Having admitted in their papers that their proposed personal injury classes do not presently meet critical prerequisites of Rule 23, plaintiffs face two options under the controlling caselaw.  Either plaintiffs should voluntarily dismiss their personal injury class complaint without prejudice to refiling their case if they ever reach a point at which they can allege consistent with Fed. R. Civ. P. 11 that they are proposing a class that meets all of the applicable requirements of Rule 23, or the Court should promptly issue an order denying class certification based on plaintiffs' own admission that their proposed classes do not satisfy the superiority prerequisite of Rule 23(b)(3).

## **CONCLUSION**

For the reasons set forth above, Merck respectfully requests that the Court deny Plaintiffs' Motion to Stay.  Further, Merck asks that the Court issue an order to the effect that if plaintiffs do not voluntarily dismiss the Personal Injury complaint within five days, the Court will issue an order denying certification of the proposed personal injury classes based on plaintiffs' own admissions that those putative classes do not comply with Fed. R. Civ. P. 23.

788497v.1

Respectfully submitted,

*Dorothy H. Wimberly* (signature)

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
One United Plaza
4041 Essen Lane, Suite 501
Baton Rouge, LA 70809
Phone: 225-490-8900
Fax: 225-490-8960

Defendants' Liaison Counsel

Counsel for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 11 day of October, 2005.

*Dorothy H. Wimberly* (signature)

788497v.1