U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISI...

FILED  **OCT 1 1 2005**

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES C. FOTI, JR., ET AL. | * CIVIL ACTION |
| | * |
| VERSUS | * NO. 05-3700 |
| | * |
| MERCK & CO., INC. | * SECTION "L" |
| | * |
| | * JUDGE FALLON |
| | * |
| | * MAGISTRATE KNOWLES |
| | * |

## PETITIONERS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

NOW COME Petitioners, the Louisiana Attorney General, CHARLES C. FOTI, JR.,

THE STATE OF LOUISIANA (the "State"), and the LOUISIANA DEPARTMENT OF

HEALTH AND HOSPITALS ("DHH") (hereinafter sometimes referred to collectively as

"Petitioners"), and, respectfully offer the following memorandum in support of their Motion to

Remand.

The Defendant erroneously asserts that this Court enjoys diversity jurisdiction over this

dispute. Here, however, the State of Louisiana is a named party plaintiff. It is well-settled law

that diversity jurisdiction does not attach where a state is a named party because a state is not a

citizen for diversity jurisdiction purposes. *See Texas Dep't of Hous. & Cmty. Affairs v. Verex*

*Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995).

Furthermore, the Defendant wrongly asserts that Petitioners' lawsuit–which sets forth only state law causes of action against it–is removable on the basis of federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Citing the U.S. Supreme Court's recent *Grable* decision,[1] and an even more recent decision from the Eastern District of New York in the *Zyprexa* MDL 1596,[2] Defendant asserts that federal question subject matter jurisdiction is triggered merely because a determination of Petitioners' state law claims might require the court to consider the federal Medicaid statutes.

Accepting Defendant's argument would require a vast overexpansion of the Supreme Court's *Grable* holding. *Grable* does not extend the scope of federal question subject matter jurisdiction nearly as far as Defendant contends. Furthermore, before the ink was dry on *Grable*, Judge Weinstein issued his opinion in *Zyprexa*, expanding the reach of federal question ("arising under") subject matter jurisdiction beyond the *Grable* limits. As set forth more fully below, the *Zyprexa* decision is flawed because the court completely ignored half of the federal "arising under" jurisdictional analysis required under *Grable*.

While it is no secret that Petitioners disagree with the *Zyprexa* ruling, believing that it overextended the reach of federal question subject matter jurisdiction,[3] Defendant has asked this court to extend the reach of such jurisdiction even further still.

In removing this case, the Defendant is asking this Court to expand the Supreme Court's holding in *Grable* to the point where virtually every lawsuit in which a court might have to

---

[1]    *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, ___ U.S. ___, 125 S.Ct. 2363 (2005).

[2]    *In re: Zyprexa Products Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y.).

[3]    It was the Louisiana Attorney General's motion to remand that the court denied in that matter. *In re: Zyprexa*, 375 F. Supp. 2d at 173.

examine a federal statute or a federal regulation would be removable.  The Supreme Court did

not go that far in *Grable*–not even Judge Weinstein went that far in *Zyprexa*.

Curiously, Merck chose to omit from its Notice of Removal any reference to Judge Haik's

very recent decision in the Risperdal litigation, also entered post-*Grable*, granting the Louisiana

Attorney General's motion to remand.  *Charles Foti, et al. v. Janssen Pharmaceutica, et al.*, No.

04-2575, 2576, United States District Court for the Western District of Louisiana.[4]  Janssen

removed the Louisiana Attorney General's Risperdal suit to the Western District of Louisiana,

where Judge Haik: (1) elected to hear the motion to remand rather than defer the remand issue to

the Risperdal MDL; and (2) rejected the same federal question arguments the Defendant has

asserted here and remanded the case to Louisiana state court.

In short, this case belongs in state court.  Petitioners respectfully request that Your Honor

send it back from whence it came.

## BACKGROUND

In this lawsuit, the Louisiana Attorney General, the State, and DHH, seek injunctive relief

and damages against the Defendant arising out of its misrepresentations, negligence, unfair

methods of competition, and/or unfair and deceptive acts or practices in the design,

manufacturing, and/or marketing of its blockbuster drug, Vioxx.  Vioxx is in a new class of non-

steroidal anti-inflammatory drugs ("NSAIDs"), called COX-2 inhibitors, which selectively block

only COX-2 enzymes but do not block COX-1 enzymes, and thereby purport to reduce

inflammation and its symptoms with purportedly less gastrointestinal side effects.  Compared to

other NSAIDs, Vioxx has caused a high incidence of cardiovascular injury among those

---

[4]        A copy of Judge Haik's June 20, 2005 Order granting the Louisiana Attorney General's motion to
remand is attached hereto as Exhibit "A".

individuals who ingested it, including, but not limited to heart attacks, strokes, sudden cardiac death, and death.

On September 30, 2004, Merck voluntarily withdrew Vioxx from the market after the data safety monitoring board overseeing a long-term study of the drug recommended that the study be halted because of an increased risk of serious cardiac events, including heart attack and strokes. The risk was approximately twice that of individuals taking a placebo.

Petitioners have asserted Louisiana state law causes of action for Defendant's violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), redhibition, strict liability, failure to warn, breach of express and implied warranties, misrepresentation, negligence, and unjust enrichment. The Petition sets forth detailed allegations of the Defendant's misconduct. In short, the Defendant misrepresented Vioxx's efficacy and the true level of its adverse side-effects. Petitioners relied upon those misrepresentations to their detriment, by placing Vioxx on the Louisiana Medicaid formulary and/or paying for Louisiana Medicaid recipients' Vioxx prescriptions. Petitioners were further damaged to the extent that they paid medical expenses for those Louisiana Medicaid recipients who were injured by Vioxx.

In addition to the injunctive relief requested, Petitioners want their money back for the Vioxx for which they paid, and they also want to be reimbursed the amounts of the medical expenses they incurred for Vioxx-related injuries.

## ARGUMENT

Federal courts are courts of limited jurisdiction, which may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. U.S. CONST. art. III §§ 1-2; *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). Accordingly, "there is a presumption against subject matter jurisdiction

that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  To support the propriety of removal, the defendant bears the burden of establishing facts to demonstrate that the Court enjoys subject-matter jurisdiction over the dispute.  *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).  Any doubt as to the propriety of removal must be resolved in favor of remand.  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

In the present case, Merck has failed to satisfy its burden of proving the existence of either federal question or diversity jurisdiction.

## I.    FEDERAL QUESTION SUBJECT MATTER JURISDICTION DOES NOT EXIST.

The Defendant erroneously maintains that federal subject matter jurisdiction exists over this dispute pursuant to 28 U.S.C. § 1331.  This case, however, does not give rise to federal question subject matter jurisdiction.

### A.    *Grable* Does Not Support a Finding of Federal Question Subject Matter Jurisdiction in This Instance.

The U.S. Supreme Court's *Grable* decision does not support a finding of federal question subject matter jurisdiction in this instance.  In *Grable*, the Supreme Court reaffirmed the two-part test for federal question ("arising under") jurisdiction, which the Supreme Court had previously enunciated in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229 (1986).[5]  For a state law claim to give rise to federal "arising under" jurisdiction, *Grable* holds that courts must consider: (1) whether the state law issues presented implicate significant federal issues (i.e. that the state law issues turn on substantially important issues of federal law); and (2)

---

[5]    The Supreme Court expressly stated: "*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L. Ed. 2d 650 (1986), **on which Grable rests its position**, is not to the contrary." *Grable*, at 125 S.Ct. at 2369 (emphasis added).

even if that is so, whether the application of federal question jurisdiction will disrupt the congressionally imposed division of labor between state and federal courts. *Id*. at 2369-70.

In *Grable*, the IRS seized and sold a piece of property because the owner had failed to pay its federal taxes. It was undisputed that the owner received actual notice by certified mail before the tax sale was consummated. Despite having received actual notice, the owner did not exercise its statutory right to redeem the property within 180 days, and the IRS gave the tax sale buyer a quitclaim deed. Five years later, the original owner filed a quiet title action in state court against the tax sale buyer, claiming that the tax sale buyer's record title was invalid because the IRS had failed to notify the original owner of the seizure via personal service. The owner claimed that notice via certified mail–despite having actually been received–was insufficient under 26 U.S.C. § 6335. *Grable*, 125 S.Ct. at 2366.

The Supreme Court found that the first prong of the "arising under" jurisdiction test was clearly met. Interpretation of the federal statute was the only issue in dispute in the entire case. The Supreme Court held:

> Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and **the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case.** The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. (Emphasis added).

*Grable*, 125 S.Ct. at 2368. Although the original owner's suit involved a state law title claim, no state law issues had to be examined. The only issue in dispute was whether the IRS's notice met the federal statute's notice requirements. If notice was proper under the federal statute, the sale was proper and the tax sale buyer's title valid. Clearly, under those circumstances, the federal issues were significant and predominated over the state law issues.

6

The Supreme Court then went on to hold that recognizing federal "arising under" jurisdiction in that instance would not disrupt the Congressionally mandated state/federal court balance. The Supreme Court concluded that very few state court title dispute cases would involve the application of federal statutes. *Id.* Accordingly, the Supreme Court determined that the effect on the state/federal court balance would be minimal and affirmed the lower courts' decisions that federal question subject matter jurisdiction existed. *Id.* at 2371.

The present action meets neither prong of the *Grable/Merrell Dow* federal "arising under" jurisdiction test. Here, the state law issues predominate. Petitioners have asserted numerous Louisiana issues that will need to be examined, including, but not limited to, the following:

(1)     did the Defendant's conduct and misrepresentations in the design, manufacturing, and/or marketing of Vioxx constitute unfair methods of competition, and/or unfair and deceptive acts or practices so as to justify the imposition of injunctive relief, damages or other remedies under LUTPA;

(2)     was Vioxx defective so as to give rise to a claim for redhibition;

(3)     did the Defendant knowingly conceal Vioxx's redhibitiory defects so as to give rise to bad faith redhibition remedies;

(4)     did the Defendant's conduct with respect to Vioxx give rise to liability under Louisiana theories of negligence, strict liability, failure to warn, misrepresentation, and/or breach of express or implied warranty; and

(5)     whether, to the extent that Petitioners do not enjoy any claims at law against the Defendant, has the Defendant been unjustly enriched at the expense or impoverishment of Petitioners.

While the court that ultimately hears the case may have to consider the federal Medicaid statutes to a certain degree, Petitioners completely disagree with Defendant with respect to just how much the Medicaid statutes will come into play in the determination of whether Defendant is liable to Petitioners for any of the state law claims being advanced.

What do the Medicaid statutes have to do with whether the Defendant's conduct violated LUTPA, or whether Vioxx was defective, or whether the Defendant knowingly misrepresented Vioxx's efficacy or safety?  In the Notice of Removal, Defendant seems to say that because it was successful in duping the federal government with respect to Vioxx's efficacy and/or safety, it can not be held accountable to Petitioners.  Petitioners completely disagree with that proposition.  In any event, Medicaid statutory interpretation is certainly not the only issue being presented for adjudication, which distinguishes the instant case from *Grable*.

Furthermore, while very few land title dispute cases will involve the application of a federal statute such that shifting those suits to a federal court forum will not significantly alter the state/federal court balance, shifting this suit and others like it from state to federal court would significantly alter the state/federal court balance.

Louisiana and other states are increasingly filing suit against pharmaceutical manufacturers seeking to recover their Medicaid payments due to defective pharmaceutical products that cause injury to the state's Medicaid recipients.  There are 50 states who can make claims such as those presented in this suit.  Furthermore, given the rate at which pharmaceutical products are being withdrawn from the market due to lack of efficacy, unreasonable rate of injury, and other problems, a large number of very significant cases would be improperly shifted from the state court system into the federal court system.

If Congress wants to render cases such as this one "federal question" cases, Congress should expressly do so.  The federal courts should not further expand the federal "arising under" jurisdiction analysis so as to subsume cases such as this one.  Such an expansion is simply not appropriate under *Grable*, *Merrell Dow*, or any other Supreme Court precedent.

### B. Judge Weinstein's *Zyprexa* Decision Does Not Support a Finding of Federal Question Subject Matter Jurisdiction in This Instance.

In addition to the fact that Judge Weinstein's decision from the Eastern District of New York in *Zyprexa* is not controlling law in this District, the decision appears to be the first case in which a federal court has found federal question subject matter jurisdiction to exist in case brought by or on behalf of a State against a pharmaceutical manufacturer.

In *Zyprexa*, the State of Louisiana filed suit in Louisiana state court against Zyprexa's manufacturer, Eli Lilly, seeking reimbursement of State Medicaid payments due to Eli Lilly's marketing and/or promotion of Zyprexa for pediatric and other "off-label" purposes, i.e., to treat illnesses for which it was not primarily designed and FDA-authorized.  *Zyprexa*, 375 F. Supp. 2d at 172.  The State contended that Eli Lilly's off-label marketing and promotion violated FDA regulations as well as provisions of the Food Drug and Cosmetic Act (the "FDCA").  Eli Lilly removed the suit to the Western District of Louisiana, and the suit was transferred to the Zyprexa MDL proceeding in the Eastern District of New York prior to the State having filed its motion to remand.  Accordingly, Judge Weinstein heard the remand issue in the MDL proceeding.

In the fresh wake of *Grable*,[6] Judge Weinstein determined that the alleged violations of FDA regulations and the FDCA due to off-label marketing and promotion as well as the federal Medicaid funding provisions "present[ed] a core of substantial issues more federally oriented

---

[6]   The *Grable* decision was issued only 17 days before Judge Weinstein issued his *Zyprexa* ruling.

than those in *Merrell Dow*." *Id.* at 172-73. On this basis alone, and without any consideration of the impact his decision might have on the state/federal court balance (i.e., the second prong of the *Grable/Merrell Dow* test), Judge Weinstein held that federal question subject matter jurisdiction existed and denied the Louisiana Attorney General's motion to remand. *Id.* at 173.

Because Judge Weinstein failed to address the second prong of the federal "arising under" jurisdiction test, the *Zyprexa* holding is flawed and should not be followed. Furthermore, with respect to the first prong of the analysis, the State's Zyprexa case is factually distinguishable from the State's Vioxx case. Even Judge Weinstein conceded that not all pharmaceutical cases present substantial issues of federal law so as to justify the imposition of federal "arising under" jurisdiction. He stated that the determination should be made based upon "[t]he specific allegations and subtle distinctions in pleadings among pharmaceutical cases...." *Id.* at 172.

*Zyprexa* is an "off-label" marketing and promotion case. The instant Vioxx suit presents no such claims. As such, none of the FDA Regulations or FDCA provisions regarding off-label promotion and marketing, upon which Judge Weinstein relied in finding federal "arising under" jurisdiction, are present in this suit.

C.     **No Other Reported Pharmaceutical Case Supports a Finding of Federal Question Subject Matter Jurisdiction in this Instance.**

Prior to Judge Weinstein's *Zyprexa* decision, all prior attempts to remove pharmaceutical cases on the basis of federal question jurisdiction because the state law claims being advanced involved the examination of federal statutes were routinely rejected. In *Merrell Dow*, the Supreme Court held that a consumer's state court action against a drug manufacturer, based on the theory that the manufacturer's violation of the FDCA constituted negligence, did not present a federal question so as to justify removal of the action to federal court. *Merrell Dow*, 478 U.S. at 818, 106 S.Ct. at 3237.

Prior to the recent district court *Zyprexa* decision, *Merrell Dow* had been consistently followed by other district and circuit courts. As previously mentioned, Judge Haik in the Western District of Louisiana very recently, and notably post-*Grable*, entered an order granting the Louisiana Attorney General's motion to remand in the Risperdal litigation. *Charles Foti, et al. v. Janssen Pharmaceutica, et al.*, No. 04-2575, 2576, United States District Court for the Western District of Louisiana.[7] Like *Zyprexa*, Risperdal involved claims for off-label marketing and promotion. Janssen removed the Louisiana Attorney General's Risperdal suit to the Western District of Louisiana, where Judge Haik: (1) elected to hear the motion to remand rather than defer the remand issue to the Risperdal MDL; and (2) then rejected the same federal question arguments the Defendant has asserted here.

In *Rubel v. Pfizer, Inc.*, 276 F. Supp. 2d 904 (N.D. Ill. 2003), the district court held that a claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act against the manufacturers of the prescription drug Neurontin for off-label marketing did not give rise to federal question jurisdiction, despite the fact that the state law claim was based in part on allegations that manufacturers had acted in contravention to federal Medicare, Medicaid, and FDA regulations. *Id.* at 907-08.

In *Minnesota v. Pharmacia Corp.*, 278 F. Supp 2d 101 (D. Mass. 2003), Judge Saris rejected Pharmacia's argument that federal question jurisdiction existed over the State of Minnesota's state law *parens patriae* claims for discrepancies between the average wholesale prices ("AWP") reported by Pharmacia and the meaning of AWP under the federal Medicare statutes. *Id.* at 102. Accordingly, Judge Saris remanded the case back to Minnesota State Court.

---

[7]     A copy of Judge Haik's June 20, 2005 Order granting the Louisiana Attorney General's motion to remand is attached hereto as Exhibit "A".

*Id.* at 104.  *See also, Little v. Perdue Pharma, L.P.*, 227 F. Supp. 2d 838, 852-60 (S. D. Ohio 2002).

## II.     DIVERSITY SUBJECT MATTER JURISDICTION DOES NOT EXIST.

The State of Louisiana is a named plaintiff in the lawsuit, as is the Louisiana Attorney General.  The Defendant completely ignores this key fact.  It is well-settled law that, where a state is a party, there can be no federal diversity jurisdiction because a state is not a citizen for purposes of diversity jurisdiction.  *See Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995); *see also* 13 B.C. Wright, A. Miller, & Cooper, Federal Practice and Procedure § 3602, p. 366-67 (2d ed. 1984).

Merck attempts to sidestep this jurisdictional hurdle by asserting that DHH is the "real party in interest on the plaintiff's side of this case, because it is the entity that holds the substantive right sought to be enforced, even if it is not the entity that will ultimately benefit from the recovery."[8]

None of the authorities to which Merck cites, however, state that DHH has an exclusive right to file suit to recover the State Medicaid monies which are at issue here.  The State of Louisiana has every right to seek to recover the monies it paid out, and it has come forth as a named plaintiff.  As such, there is no diversity subject matter jurisdiction.

In addition, the Louisiana Constitution vests the Attorney General with authority "to institute, prosecute, or intervene in any civil action or proceeding" which is "necessary for the assertion or protection of any right or interest of the state."[9]  The Louisiana Legislature, furthermore, expressly designated the Attorney General as the appropriate person to bring this

---

[8]          See Merck's Notice of Removal at p. 9, ¶19.

[9]          La. Const. art. IV, §8.

12

action when it enacted the Louisiana Unfair Trade Practices Act ("LUTPA")[10] in 1972. The

Legislature subsequently confirmed its desire that the Attorney General actively and aggressively

pursue LUTPA violators by Legislative Resolution in 1995, in which the Legislature resolved:

> to urge and request the attorney general of Louisiana to
> immediately investigate, enforce, and prosecute violations of
> [LUTPA] and to allocate staff and other resources sufficient to take
> such actions.[11]

Quite simply, DHH does not have either the Constitutional or legislative authority to

bring the LUTPA claims that the Louisiana Attorney General has advanced in this suit.

It should be noted that, for very similar reasons, District Judge Yeakel in the Western

District of Texas granted the State of Texas' motion to remand its Vioxx lawsuit, noting that the

Texas Medicaid Fraud Prevention Act, like LUTPA specifically authorized the Attorney General

to bring action.  State of Texas v. Merck & Co., Inc., No. A-05-CA-606-LY, United States

District Court for the Western District of Texas, Austin Division, slip op. at 4.[12]

---

[10]    La. Rev. Stat. Ann. § 51:1401, et seq.  The official name of the law is the Louisiana Unfair Trade
Practices and Consumer Protection Law, but it is more commonly referred to as the Louisiana Unfair Trade Practices
Act or LUTPA.

[11]    1995 La. Sess. Law Serv. H.R. Res. 72 (West)(as quoted from Comment: *Louisiana Unfair Trade
Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law*, 41 Loy.
L. Rev. 759, 765 n. 51 (1996)).

[12]    A copy of Judge Yeakel's August 29, 2005 Order Granting Plaintiff's [Texas] Motion to Remand is
attached hereto as Exhibit "B".

## CONCLUSION

For the foregoing reasons, this suit should be remanded without further delay.

Respectfully submitted, this ___11___ day of October, 2005,

DUGAN & BROWNE, a P.L.C.


_____
JAMES R. DUGAN, II, T.A. (Bar No. 24785)
DAVID L. BROWNE (Bar No. 20729)
DOUGLAS R. PLYMALE (Bar No. 28409)
1181 West Tunnel Boulevard  - Suite A
Houma, Louisiana  70360
Telephone:  (985) 580-4573
Facsimile: (985) 873-9534

Special Assistant Attorneys General for the State of
Louisiana and Counsel for Petitioners

CHARLES C. FOTI, JR.
Attorney General

TINA VICARI GRANT
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

LOUISIANA DEPARTMENT OF HEALTH
AND HOSPITALS

FRANCISCO H. PEREZ
General Counsel
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petitioners' Memorandum in Support of Motion to Remand has this day been served on all counsel of record by hand, by facsimile, or by depositing same into the United States Mail, postage pre-paid, and properly addressed, this _11th_ day of October, 2005.

_____

RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _6_2_1_03_
     G&

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **CHARLES FOTI, et al** | * | **CIVIL ACTION 04-2575/2576** |
| **VERSUS** | * | **JUDGE HAIK** |
| **JANSSEN PHARMACEUTICA, et al** | * | **MAGISTRATE METHVIN** |

**************************************************************************

## ORDER

**************************************************************************

Pending before the Court is the Motion to Remand [14] filed on behalf of the Plaintiffs.
After reviewing the record in this matter and being fully apprized of the premises of the Motion,
the Court hereby GRANTS the Motion and remands this matter to the 15th Judicial District
Court, Vermillion Parish, Louisiana.

**THUS DONE AND SIGNED** in Lafayette, Louisiana, on the ___20th___ day of ~~~~~~~~~~~
June, 2005.

RICHARD T. HAIK, SR.
U. S. District Judge

EXHIBIT

A

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS 29 PM 4: 55
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
CLERK

THE STATE OF TEXAS,                       §
                                          §
            PLAINTIFF,                     §
                                          §
V.                                         §        CAUSE NO. A-05-CA-606-LY
                                          §
MERCK & CO., INC.,                         §
                                          §
            DEFENDANT                      §

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Before the Court are (1) the MOTION OF THE STATE OF TEXAS TO REMAND ACTION TO TEXAS

STATE COURT filed August 4, 2005, (Doc. #3); (2) THE STATE OF TEXAS' MEMORANDUM OF LAW

IN SUPPORT OF MOTION TO REMAND filed August 4, 2005 (Doc. #4); (3) OPPOSITION OF DEFENDANT

MERCK & CO., INC. TO PLAINTIFF'S MOTION TO REMAND filed August 18, 2005 (Doc. #11); (4) THE

STATE OF TEXAS' OPPOSED REQUEST FOR EXPEDITED CONSIDERATION ON ITS MOTION TO REMAND

filed August 10, 2005 (Doc. #6); (5) DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR

EXPEDITED CONSIDERATION OF PLAINTIFF'S MOTION TO REMAND filed August 12, 2005 (Doc. #7);

(6) MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER

DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION filed August 8, 2005 (Doc. #5);

(7) OPPOSITION OF STATE OF TEXAS TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS filed

August 12, 2005 (Doc. #8); and (8) MERCK'S REPLY IN SUPPORT OF MOTION TO STAY filed August

16, 2005 (Doc. #9). Having considered the motions, responses, and reply, the Court grants

Plaintiff's motion to remand, dismisses Plaintiff's request for an expedited hearing, and dismisses

Defendant Merck & Co. Inc.'s motion to stay for the following reasons.



EXHIBIT

B

## I. Background

On June 30, 2005, the State of Texas ("Texas") as the Plaintiff filed suit in state court in Travis County against Merck & Co. Inc. ("Merck") regarding Merck's alleged misrepresentations about VIOXX, which had been placed on Texas's Medicaid formulary. Texas brought suit against Merck for damages and civil penalties pursuant to the State of Texas Medicaid Fraud Prevention Act ("TMPFA"). *See* TEX. HUM. RES. CODE §36.001–§36.132 (2005). In part, Texas alleges that Merck made false statements or misrepresentations of material fact concerning the safety of VIOXX, concealed or failed to disclose the truth about VIOXX, and made claims under the Texas Medicaid Program for a product that is substantially inadequate or inappropriate when compared to generally recognized standards within the health care industry or for a product that is otherwise inappropriate. Texas alleges that Merck's conduct regarding VIOXX violates TMPFA sections 36.002(1), (2), (4) and (7). TEX. HUM. RES. CODE §§ 36.002(1), (2), (4) & (7). As damages, Texas seeks restitution with interest for the value of all payments which Texas has made for VIOXX prescriptions under the Texas Medicaid Program; civil penalties; twice the value of all payments which Texas has made for VIOXX prescriptions under the Texas Medicaid Program; and fees, expenses, and costs associated with the lawsuit.

Merck removed the lawsuit to this Court on August 2, 2005, on the basis of both federal-question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332 & 1441 (2005). In its notice of removal, Merck argues federal-question jurisdiction exists because Texas's "claims are premised on the allegations that Merck violated regulations promulgated and enforced by the Food and Drug Administration . . . under statutory authority conferred by the federal Food, Drug & Cosmetic Act . . . 21 U.S.C. § 301, *et. seq.*" Additionally, Merck claims Texas's petition raises "important federal

2

questions related to the federal Medicaid statute and it associated regulations." Merck claims that diversity jurisdiction exists because the Texas Health and Human Services Commission ("THHSC"), and not Texas, is the real plaintiff. Texas has now moved to remand the case.

## II. Analysis

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. CONST. art. III §§ 1-2; *see also Kokkonen*, 511 U.S. at 377. As such, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Thus, to support the propriety of removal, the defendant bears the burden of establishing facts demonstrating that the Court has subject-matter jurisdiction of the cause. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Any doubt as to the propriety of the removal is to be resolved in favor of remand. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

In the present case, Merck has not satisfied its burden of proving the existence of diversity jurisdiction. Texas is the named plaintiff in the lawsuit, and it is well-settled law that a state is not a citizen for purposes of diversity jurisdiction. *See Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir.1995). Where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because the state is not a citizen for purposes of diversity jurisdiction. *Id. See also* 13B C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3602, p. 366-67 (2d ed. 1984).

3

Nor has Merck persuaded the Court that the real party in interest is not Texas but THHSC. For example, TMPFA makes clear that a person who commits an unlawful act under the statute "is liable to the *state*." TEX. HUM. RES. CODE § 36.052(a) (emphasis added). By the express language of the statute under which Texas seeks to hold Merck liable, a wrongdoer is liable to Texas, not to THHSC. Further, Subchapter B is entitled "Action By Attorney General," and section 36.052(e) of the subchapter specifically authorizes the attorney general, not THHSC, to bring the type of action that Texas, acting through the attorney general, has brought against Merck. TEX. HUM. RES. CODE § 36.052(e). There can be no question that Texas is the real party in interest in this lawsuit.

Likewise, Merck has not carried its burden of proving the existence of federal-question jurisdiction. A determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint. *Carpenter*, 44 F.3d at 366. Generally, a suit arises under federal law if there appears on the face of the complaint some substantial, disputed question of federal law. *Id.* Here, based on Texas's state-court petition, Texas clearly has asserted against Merck only Texas state-law claims under a Texas statute.

Specifically, Texas sues Merck under the following TMPFA provisions:

A person commits an unlawful act if the person:

(1) knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:
(A) on an application for a contract, benefit, or payment under the Medicaid program; or
(B) that is intended to be used to determine a person's eligibility for a benefit or payment under the Medicaid program;

* * * *

(2) knowingly or intentionally conceals or fails to disclose an event:
(A) that the person knows affects the initial or continued right to a benefit or payment under the Medicaid program of:

4

(i) the person; or

(ii) another person on whose behalf the person has applied for a benefit or payment or is receiving a benefit or payment; and

(B) to permit a person to receive a benefit or payment that is not authorized or that is greater than the payment or benefit that is authorized;

* * * *

(4) knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

(A) the conditions or operation of a facility in order that the facility may qualify for certification or recertification required by the Medicaid program, including certification or recertification as:

(i) a hospital;

(ii) a nursing facility or skilled nursing facility;

(iii) a hospice;

(iv) an intermediate care facility for the mentally retarded;

(v) an assisted living facility; or

(vi) a home health agency; or

(B) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

* * * *

(7) knowingly or intentionally makes a claim under the Medicaid program for:

(A) a service or product that has not been approved or acquiesced in by a treating physician or health care practitioner;

(B) a service or product that is substantially inadequate or inappropriate when compared to generally recognized standards within the particular discipline or within the health care industry; or

(C) a product that has been adulterated, debased, mislabeled, or that is otherwise inappropriate.

TEX. HUM. RES. CODE § § 36.002(1), (2), (4) & (7).

As the Court reads these particular TMPFA sections, they are not focused on or concerned with any regulations promulgated or enforced by the Food and Drug Administration, despite Merck's suggestion in its Notice of Removal. Rather, these state-law provisions, as well as Texas's allegations in its petition, involve Merck's conduct toward and with Texas in requesting and receiving approval from Texas to add VIOXX to Texas's Medicaid program. Further, the "Medicaid

program" referred to in these provisions is Texas's Medicaid program, not the federal medicaid program. *See* TEX. HUM. RES. CODE § 36.001(6). The Court concludes that there are no federal questions involved in Texas's lawsuit against Merck.

Since neither diversity jurisdiction nor federal-question jurisdiction exists, the Court finds that remand is warranted.

IT IS THEREFORE ORDERED that the MOTION OF THE STATE OF TEXAS TO REMAND ACTION TO TEXAS STATE COURT (Doc. #3) is GRANTED.

IT IS FURTHER ORDERED that THE STATE OF TEXAS' OPPOSED REQUEST FOR EXPEDITED CONSIDERATION ON ITS MOTION TO REMAND (Doc. #6) is DISMISSED.

IT IS FURTHER ORDERED that the MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION (Doc. #5) is DISMISSED.

IT IS FINALLY ORDERED that this action is REMANDED to the 345th Judicial District Court of Travis County, Texas.

SIGNED the 29th of August 2005.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

6