UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | |
| : | SECTION: L |
| : | |
| THIS DOCUMENT RELATES TO ALL : | JUDGE FALLON |
| PERSONAL INJURY CLASS ACTION CASES : | MAG. JUDGE KNOWLES |
| PENDING OR SUBJECT TO TRANSFER TO : | |
| MDL 1657 : | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STAY CLASS BRIEFING

#### INTRODUCTION

Merck's opposition to the PSC's Motion to Stay ignores the procedural posture and practical realities of this case and inappropriately asserts that the real reason that the PSC seeks a stay is the PSC's purported belief that the case for certification is a weak one. Merck could not be more incorrect. The reasons stated in the PSC's previous memorandum are not only genuine, but also sound.

A limited stay will serve the interests of both parties, as well as the Court, by providing all with additional and useful information pertinent to class certification and allowing time for peripheral matters, including Merck's pending motion to strike, to be addressed.

There can be only one reason that Merck opposes a stay: its fear that additional information will further secure and confirm Plaintiffs' position that the class should be certified.

In the end, the interest in a well-informed, fully supportable class certification decision, be that certification or denial of certification, must trump Merck's self-interest in shielding information that is pertinent to that decision, but harmful to Merck.

## ARGUMENT

Merck's primary argument against a stay is hinged on the incorrect assumption that Plaintiffs believe that they cannot presently meet the Rule 23 requirements for class certification. In its attempt to spin the PSC's motion, Merck discounts and disregards the legitimate reasons underlying it.

In moving for a stay, the PSC in no way seeks to delay the progress of this case. Rather, the PSC seeks to improve the factual foundation upon which the important issue of class certification will be decided – for the benefit of *both* parties, as well as this Court.

While class certification could be decided at present, and while Plaintiffs believe that their position on class certification is both sound and superior to that of Merck, there can be little doubt that a ruling on class certification would benefit from additional information. While a correct decision cannot be made "more correct," it can be better supported, and thus less subject to second-guesses, or attack on motions for reconsideration or appeal.

Further, contrary to Merck's foreboding, the PSC does not seek an indefinite stay. The stay that the PSC seeks is finite and has practical limits that are consistent with the reasons for the stay. The trials of several MDL actions will shed substantial additional light on the issues, and when those trials end, the goals of the stay will have been reached and the stay will likewise end.

Ultimately, it is up to this Court to determine when it believes that the parties have had the opportunity to garner sufficient information to assist the Court's determination of whether this case meets the certification criteria of Rules 23(a) and (b). *Manual* § 21.133 (discussing the timing of certification decisions and the requirements of Fed. R. Civ. P. 23(c)(1)(A)). The PSC

respectfully submits that a brief stay will be beneficial, yet allow the Court to rule on class certification at an "early practicable time." Fed. R. Civ. P. 23(c)(1)(A).

In addition, while it is Merck's contention that the PSC's interest in a stay inappropriately breaks from the PSC's earlier position as to scheduling, parties routinely agree or seek the courts' authorization to amend scheduling orders, including orders to which the parties agreed. The inherent powers of federal courts, as well as the broad-reaching powers of Rule 16 permit courts broad discretion to modify case schedules in appropriate circumstances. Rule 16(c)(12), for example, permits federal courts to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Further, it is well known to Merck's experienced and able counsel that parties frequently alter schedules or seek revised scheduling orders when doing so is for the overall benefit of the litigation.

Moreover, while this is neither the time nor the place to address the merits of class certification, Merck's suggestion is amiss that the PSC simply fears denial of class certification and seeks to postpone the decision because some courts have declined to certify personal injury class actions. First, the PSC is well aware (and has been since well prior to the start of this litigation) that some courts have denied certification of personal injury litigation classes. Although contrary authority is always a legitimate concern, if the PSC believed that these cases presented an insurmountable bar to certification, the PSC would not have decided to pursue class certification in the first place, and would not have represented to the parties and the Court the intention to do so.

Second, lest there be any doubt, personal injury litigation classes have been certified in other cases. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir.

1987); *In re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.*, 172 F.R.D. 271, 280 (S.D. Ohio 1997); *In re Copley Pharmaceutical, Inc. "Albuterol" Prod. Liab. Litig.*, 158 F.R.D. 485, 491-92 (D. Wyo. 1994). *See also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996) (there is no "absolute bar to the certification of a multi-state plaintiff class action in the medical products liability context."). Denial of class certification is thus by no means the foregone conclusion that Merck suggests. As Plaintiffs anticipate demonstrating to this Court, class certification is not only plausible, but appropriate in this case.

Third, the PSC has a duty to act in the best interests of their clients and the putative class. If the PSC were unnecessarily delaying a decision on class certification, or if the PSC believed that class certification were not possible, the PSC would be shirking that obligation.

Fourth, unnecessarily delaying the class certification decision also would not be in the best interest of the PSC, particularly if certification were to be denied. The PSC have and are continuing to invest substantial time and expense in the cases comprising this MDL action, much of which will only be recouped if the personal injury class is certified. In light of these practicalities, Merck's assertion that the PSC is merely attempting to postpone the inevitable denial of class certification makes no sense.

For the reasons set forth in the PSC's previous submission, this case will benefit from the completion of several MDL trials, which will permit the issues in this case to become more defined and mature, and will aid the parties in briefing class certification, and the Court in considering it.[1] *See Manual* § 22.314 (discussing the benefits of allowing torts to mature);

---

[1] Merck adverts to several decisions, including *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), where class certification was denied based in part upon findings that the tort was not yet mature. In those cases, the plaintiffs proceeded to certification based upon records of their choosing. The *Castano* decision itself noted the lack of a trial track record on the proposed class claims. *Id.* at 749. Here, the PSC submits that in only a short while, the record will encompass at least one federal trial and federal

McGovern, *An Analysis of Mass Torts for Judges*, 73 Tex. L. Rev. at 1843 (explaining that courts in mass tort actions are better able to make informed case management decisions after the actions have matured). Class certification also will be far less complicated once various outstanding peripheral matters have been addressed, *see Manual* § 21.133, including and especially those that Merck has raised, such as its pending motion to strike and its recent request for a deadline for Plaintiffs to add new class representatives to their master complaint. The PSC will not belabor these points here, but respectfully refers the Court to the PSC's moving brief, in which they are explained in detail.

## CONCLUSION

For the above reasons and those set forth in the PSC's previous memorandum, the PSC respectfully requests that this Honorable Court stay class briefing in all personal injury class action cases pending or subject to transfer to MDL 1675 until after several federal MDL trials have been completed.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:    (504) 581-4892
FAX:   (504) 561-6024

---

*Daubert* findings that will serve to inform the Court of the merits of Vioxx litigation. The PSC would choose to have a brief stay so that all will be better served by allowing such a record to be established.

W:\25000-29999\27115\000\PLD\PSC's Reply Memo re Motion to Stay 2005-10-17.doc

Temporary Address:

3411 Richmond Avenue, Suite 460
Houston, TX 77046
PH:   (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 17th day of October, 2005.