

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 05-4046* | * | |
| EVELYN IRVIN PLUNKETT<br>as Personal Representative of the Estate of<br>RICHARD IRVIN, JR., | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MERCK & CO., INC.'S MOTION TO EXCLUDE TESTIMONY OF RICHARD M. KAPIT, M.D.

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to Rule 702 of the Federal Rules of Evidence, hereby moves to exclude the testimony of plaintiff's expert Richard M. Kapit, M.D. The facts and law supporting this motion are more fully set forth

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

789214v.1

in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

                    Respectfully submitted,

                    /s/ Phil Wittmann
                    Phillip A. Wittmann, 13625
                    Dorothy H. Wimberly, 18509
                    STONE PIGMAN WALTHER WITTMANN L.L.C.
                    4041 Essen Lane
                    One United Plaza, Suite 501
                    Baton Rouge, Louisiana 70809
                    Phone:  225-490-8900
                    Fax:    225-490-8960

                    Defendants' Liaison Counsel

                    Philip S. Beck
                    Adam L. Hoeflich
                    Tarek Ismail
                    BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
                    54 West Hubbard Street, Suite 300
                    Chicago, Illinois  60610
                    Phone:  312-494-4400
                    Fax:    312-494-4440

                    And

                    Douglas Marvin
                    WILLIAMS & CONNOLLY LLP
                    725 Twelfth Street, N.W.
                    Washington, D.C.  20005
                    Phone: (202) 434-5000
                    Fax:    (202) 434-5029

                    Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing Motion to Exclude Testimony of Richard M. Kapit, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 21st day of October, 2005.

_____

789214v.1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

### MERCK & CO., INC.'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF RICHARD M. KAPIT, M.D.

As part of the effort to prove that Richard Irvin's sudden death was caused by his purported ingestion of a common, therapeutic dosage of Vioxx® over a period of less than one month, plaintiff's expert, Richard M. Kapit, M.D., opines, among other things, that: (1) Merck was not forthcoming with the FDA with respect to the risks of Vioxx; (2) Merck should have changed the label without the FDA's approval; (3) Merck had an "ethical" or "moral" obligation

to ensure the safety of the medication; (4) Merck was motivated by competition to withhold information regarding the danger of Vioxx; and (5) Merck violated FDA regulations.

At its core, Dr. Kapit's testimony seeks to judge and reverse decisions made by the FDA. Federal law clearly preempts such testimony. Moreover, no matter how described, Dr. Kapit's testimony is little more than a summary of the evidence and law as seen by plaintiff's lawyers. As such, it constitutes improper expert testimony. Merck therefore seeks an Order in advance of trial barring such opinion testimony.

I.   **DR. KAPIT'S TESTIMONY CONCERNING HIS JUDGMENT OF THE FDA'S DECISIONS WITH RESPECT TO VIOXX LABELING IS PREEMPTED BY FEDERAL LAW.**

To the extent that Dr. Kapit plans to testify regarding the inadequacy of Merck's interactions with the FDA or the FDA's decisions with respect to VIOXX, such testimony is preempted by federal law. The Supreme Court has held that claims of fraud on the FDA – which is essentially what Dr. Kapit's expected testimony implies – are preempted by the FDCA. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350, 353 (2001).[1]

Dr. Kapit's report is replete with "opinions" that are critical of the FDA regulatory process and the adequacy of Merck's disclosure and actions related to labeling. Specifically, Dr. Kapit claims "[t]here is evidence that Merck may not have been fully cooperative and may have taken longer than necessary to respond to the FDA's labeling initiative." (Expert Report of Richard M. Kapit, M.D. ("Kapit Report"), attached as Ex. 35 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions to Exclude Testimony ("Wittmann Decl. I") at ¶ 102.)

---

[1] Although it is a case involving medical devices, the reasoning and holding of *Buckman* apply equally to cases involving pharmaceuticals. *See, e.g., Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("The Court does not need to engage in searching analysis of *Buckman* to determine that claims of fraud on the FDA are preempted with respect to pharmaceuticals.") (*citing Kemp v. Medtronic, Inc.*, 231 F.3d 216, 236 (6th Cir. 2000)).

2

Dr. Kapit also asserts that Merck resisted and rejected proposed labeling changes. (*Id.* at ¶¶ 99-121.) Dr. Kapit further opines: "In my opinion, information about an increased rate of so serious an event as myocardial infarction belongs in Warnings, not Precautions. That is also what the FDA's cardiovascular reviewer recommended. Merck's response to the FDA would have watered down the impact of the label changes, and it delayed the implementation." (*Id.* at ¶ 116.) Finally, despite admitting that he had no actual evidence of fraud, Dr. Kapit testified about the "possibility" that Merck failed to provide information to the FDA and insisted on "leav[ing] open" this avenue of testimony:

> Q.  Okay. You're not offering any opinions in this case that Merck failed to provide any data to the FDA prior to the time of the initial approval of the NDA, are you?
>
> A.  ***That's going to have to stay an open question. I'm not asserting that that was the case, but there's enough of an issue about that in regard to any drug that develops serious safety problems and one that doesn't that I'm going to say the answer to your question is I don't know of any such thing now and I'm not asserting it at the present time, but I'm going to leave open the possibility that such information may come to me at some point in the future.***

(Deposition of Richard M. Kapit, M.D. ("Kapit Dep."), attached as Ex. 11 to Wittmann Decl. I at 184:7-19 (emphasis added).)[2]

Dr. Kapit clearly seeks to judge Merck's disclosures and interactions with the FDA – disclosures and interactions that the FDA itself has never questioned. The Supreme Court in *Buckman* specifically foreclosed such evidence, cautioning that companies should not have to

---

[2] Under Federal Rule of Civil Procedure 26, a party must disclose expert witnesses and expected testimony. Under Federal Rule of Civil Procedure 37(c)(1), "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information no so disclosed." Accordingly, where, as here, the witness was directly asked for his opinions on an important topic, he cannot assert that it might be forthcoming. Expert testimony at trial is limited to the opinions and matters that were timely disclosed before trial. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040-41 (5th Cir. 1999) (upholding district court's exclusion of expert testimony where party failed to disclose it in timely manner).

3

"fear that their disclosures to the FDA, although deemed appropriate by the Administration, will later be judged insufficient in state court." *See Buckman Co.*, 531 U.S. at 351. Such fear, the Supreme Court explained, could lead to results undesired by the regulatory scheme. For instance, it may place additional burdens on the FDA, which would likely face a deluge of unnecessary disclosures; it may discourage pharmaceutical companies from seeking approval of helpful uses of medical devices or drugs; and, in general, it could skew the balance sought by the FDCA. *See id.* at 348, 350-51.

Rather than allow juries to police the adequacy of disclosures made to the FDA, Congress "amply empower[ed] the FDA to punish and deter fraud against the Administration . . . ." *See id.* at 348. Dr. Kapit should not be permitted to supplant the FDA's determination as to the adequacy of the information Merck disclosed regarding Vioxx. Any testimony suggesting that Merck misled or concealed information from the FDA makes a claim of fraud on the FDA and is preempted. *See Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA."); *see also Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 346-49 (Minn. Ct. App. 2001) (excluding evidence of fraud on the FDA and explaining that "[a]s in *Buckman*, the existence of state-law claims against applicants for, and recipients of, FDA drug approval for alleged violation of FDA regulations conflicts with the FDA's authority to consistently police fraud within the agency's powers.").

In addition, based on the principles articulated in *Buckman*, testimony criticizing the FDA's actions in connection with its regulation of Vioxx also is preempted. In his deposition testimony, Dr. Kapit was highly critical of the FDA. (Kapit Dep. at 121:5-122:9.) That testimony would be just as likely to cause the jurors to second-guess decisions delegated by law

to the FDA as testimony criticizing Merck's conduct before the FDA. *See Buckman Co.*, 531 U.S. at 350-51; *see also Horn v. Thoratec Corp.*, 376 F.3d 163, 178 (3d Cir. 2004) (identifying the dangers of allowing a jury to second-guess the regulatory decisions of the FDA in holding that plaintiff's claims were preempted by the FDCA). Dr. Kapit's testimony relating to the adequacy of Merck's disclosures to the FDA and the decisions made by the FDA should be excluded.

## II. DR. KAPIT'S TESTIMONY MUST BE EXCLUDED BECAUSE IT DOES NOT QUALIFY AS SCIENTIFIC, TECHNICAL OR OTHER EXPERT EVIDENCE ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 702.

Federal Rule of Evidence 702 allows for the admission of scientific, technical, and other expert evidence to "assist the trier of fact to understand the evidence or to determine a fact in issue." Such evidence is only admissible "if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.[3]

The trial court is tasked with acting as a gatekeeper to ensure the relevance and reliability of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Supreme Court in *Daubert* identified the following non-exclusive factors a district court may consider in evaluating an expert's testimony: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance

---

[3] Congress enacted the current version of Rule 702 in response to the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, which held that trial courts cannot admit expert or scientific testimony without first determining that the testimony is both "reliable" and "relevant" to the facts at issue. 509 U.S. 579, 589 (1993); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (holding that plaintiff must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable"); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 605-06 (E.D. La. 2003).

of standards and controls; and (5) the theory or technique's degree of acceptance in the scientific community. *Id.* at 593-94; *Moore*, 151 F.3d at 275; *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 605-06 (E.D. La. 2003). Courts may also use their discretion to apply the *Daubert* factors to experience-based testimony. In *Kumho Tire*, the Supreme Court clarified that the overarching goal of *Daubert*'s gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Here, Dr. Kapit's testimony falls far short of what is required by Rule 702 and the cases applying that Rule. Dr. Kapit's deposition testimony is replete with references to what he believes Merck *should* have done under various written or assumed ethical or regulatory standards. Such testimony is neither relevant nor reliable under Federal Rule of Evidence 702. In addition, Dr. Kapit's report and deposition testimony makes plain that he plans to testify as to what he believes was Merck's "state of mind" and motive with respect to certain decisions. Such testimony is squarely barred by Rule 702.

A.  **Mr. Kapit's Testimony Concerning Merck's Alleged Failure to Meet an Expert's Subjective Normative Standards is Neither Relevant nor Reliable Under Rule 702.**

Dr. Kapit's report relies heavily on his opinion as to what Merck *should have* done based on his subjective view of what standards *should* be followed by pharmaceutical companies:

- Dr. Kapit stresses that "Merck *ought to* have put out a public statement," that "Merck *should have* changed the label," that Merck "*should also have* instructed their sales representatives," and Merck "*should have* ... advise[d] about the use of aspirin." (Kapit Report at ¶¶ 76-79 (emphasis added)); and

6

- Dr. Kapit also repeatedly refers to pharmaceutical companies' ethical obligations to ensure the safety of the medications they provide to the public. (Kapit Report at ¶ 18; Kapit Dep. at 186:23-188:25.)

The course of action Dr. Kapit claims Merck "should" have taken is directly contrary to FDA regulations. These subjective and normative opinions as to what a "responsible" company "should have done" (Kapit Report at ¶¶ 76-79) are irrelevant to the issue the jury must decide – whether Merck met its *legal* obligations to plaintiffs. Testimony about the former does nothing to advance fact-finding on the latter. As the court in *In re Rezulin* explained: "While the defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of their actions simply is not relevant to these lawsuits." 309 F. Supp. 2d 531, 542-545 (S.D.N.Y. 2004) (excluding expert testimony on subjective ethical standards because it was: "(1) unreliable because purely speculative; (2) unhelpful to the fact-finder because irrelevant in a case where liability is premised on legal, not ethical, standards; and (3) likely to prejudice and confuse fact-finders concerning the pertinent legal standards"); *id.* at 557 (testimony on legal obligations would "usurp . . . the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *see also Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) (finding admission of expert testimony was abuse of discretion when particular opinion had no apparent underlying support); *DiBella v. Hopkins*, No. 01 Civ. 11779 (DC), 2002 U.S. Dist. LEXIS 20856, at *12 (S.D.N.Y. Oct. 30, 2002) (holding "business ethics" expert testimony inadmissible in commercial dispute because "dispute here is not over what is ethical . . . [r]ather, the dispute is over what happened"), *aff'd*, 403 F.3d 102 (2d Cir. 2005).[4]

---

[4] Plaintiffs have had their "ethics" expert stricken in the Vioxx case currently being tried in New Jersey. *See Humeston v. Merck*, No. 619 (N.J. Super. Ct. Law. Div. Sept. 26, 2005 (order striking plaintiff's expert testimony from W. Michael Hoffman, PhD in its entirety).

7

Moreover, to be reliable under Rule 702, the "reasoning or methodology [must be applicable] to the facts in issue" and scientifically valid." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003) (*citing Daubert*, 509 U.S. at 592-93). By definition, subjective normative testimony is unreliable under *Daubert*. In a recent order in *In re Welding Fume Products Liability Litigation*, the federal court faced this question of whether to allow expert testimony concerning whether a defendant had acted as it "*should have.*" *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, MDL 1535, 2005 WL 1868046, at *18 (N.D. Ohio Aug. 8, 2005) (order). The proffered expert articulated principles "to which . . . all modern businesses should adhere," but the court refused to allow the expert testimony:

> No right-minded person would disagree with the aspirational character of [the expert's] ethical principles. But the critical question for the jury in this case is whether the defendant corporations did what the law *required* them to do, not whether, from a societal perspective, they did what an "ethical corporation" *should have* done. [The expert's] opinions regarding the latter, accordingly, will tend to misdirect the finder of fact.

*Id.* at *20. The court found that the expert's subjective standards "set[] out a standard in excess of what the law requires," and that "this [wa]s unlikely to 'assist the trier of fact to understand the evidence or to determine a fact in issue'" as required by Rule 702. *Id.*

Dr. Kapit himself admits that his normative standards and ethical obligations are not a "written standard" and that they are unavailable for objective analysis:

> Q. In paragraph 18, you make reference to medical and ethical obligations that compel pharmaceutical companies to ensure the safety of medications they sell. Do you recall that?
>
> A. Yes.
>
> Q. What standard are you applying for purposes of your opinion there?
>
> A. Well, I mean, I don't know that there's any written standard anywhere. You know, the pharmaceutical companies used to call themselves, and Merck was one of them, used to call themselves the ethical pharmaceutical companies, and

8

>they wanted to distinguish themselves I suppose from snake oil salesmen and other people like that, and there's an inherent ethical standard that pertains to any company that puts out drugs that are supposed to improve the health of Americans, and that standard is that they are supposed to do everything to make sure that the drugs they put out promote health and don't detract from health in very serious ways. And so that's an inherent part of being a pharmaceutical company, that you have those responsibilities, and they're responsibilities that are ethical responsibilities to the American public and medical responsibilities to the doctors in particular and the patients in particular. I don't think that I know of any place that these are written down in any words and can be cited as so and so's standard or a particular standard, but I don't think that that means that they aren't real.

(Kapit Dep. at 186:23-188:2.)

Expert testimony permitted under *Daubert* and Rule 702 requires an objective and empirical foundation, not subjective, moralistic conjecture by an expert. As the Supreme Court explained in *Kumho Tire*, the goal is to "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U.S. at 152; *see also Daubert*, 509 U.S. at 594. Subjective, normative testimony does not have the same assurances of relevance and reliability that empirically verifiable specialized knowledge provides. When expert testimony lacks this reliability – when it strays from specialized knowledge and lacks supporting authority – it is properly excluded under Rule 702. *See, e.g., Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999).

### B. Dr. Kapit May Not Testify as to Merck's State of Mind.

Dr. Kapit purports to offer his views on Merck's state of mind and, specifically, on what Merck knew about the alleged risks of Vioxx. Dr. Kapit, in his report, claims that it is "clear that [Merck] was worried about the elevated rate in that group of patients" (Kapit Report at ¶ 68), and that Merck "had reason to worry about the cardiovascular effects of Vioxx for at least a couple of years" (*id.* at ¶ 50). Dr. Kapit attempts to explain Merck's motives for taking specific actions, claiming that: "Vioxx had lots of competition. If Merck put out that Vioxx might be causing

such serious problems as heart attacks, it was possible that it would lose market share or even be widely rejected." (Kapit Report at ¶¶ 50, 68, 82-84.) Dr. Kapit offers these opinions despite acknowledging that "it is impossible to know the hearts and minds of the Merck doctors." (*Id.* at ¶ 82.) Courts routinely exclude opinion testimony concerning state of mind such as motive and intent, and this Court should do the same.

Rule 702 allows for introduction of "scientific, technical, or other specialized knowledge" that will "assist the trier of fact." Dr. Kapit has no qualifications or "specialized" expertise in divining a company's knowledge or state of mind. As the court in another failure-to-warn case against a pharmaceutical manufacturer reasoned when rejecting similar expert testimony regarding corporate intent and state of mind:

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000); *see also In re Rezulin*, 309 F. Supp. 2d at 546 (rejecting expert testimony "on the intent, motives or states of mind of corporations, regulatory agencies and others" because they "have no basis in any relevant body of knowledge or expertise").

Dr. Kapit bases his opinions regarding Merck's state of mind exclusively on a review of selected internal Merck documents produced in this litigation. (Kapit Report at ¶¶ 40-130 (summarizing plaintiff's lawyers' review of evidence).) In the endnotes to his expert report typed by the plaintiff's lawyers, Dr. Kapit refers to document after document, providing nothing more than a review of the documents produced in this litigation. (Kapit Dep. at 34:8-15.) More importantly, it was clear from his deposition that Dr. Kapit's review omitted key documents. For

10

example, Dr. Kapit had not reviewed: (1) the Integrated Summary of Safety or the Integrated Study of Efficiency for VIOXX; (2) the periodic safety updates submitted by Merck to the FDA; (3) any part of Merck's New Drug Application to the FDA for Vioxx; (4) the deposition of any Merck employee (except for a short excerpt from one of Dr. Scolnick's depositions); or (5) the transcript of any of the FDA Advisory Committee meetings (although his report makes repeated reference to their findings). (*Id.* at 70:5-73:6.) Other examples of Dr. Kapit's one-sided review abound. For example, plaintiff sent Dr. Kapit two copies of the September 2001 DDMAC Warning letter, but never provided him with Merck's response thereto or the FDA's resulting letter closing the matter. (*Id.* at 176:7-179:4.; *see also* Facsimile dated January 2, 2002 to Thomas M. Casola from Laura Governale, Ph.D., attached as Ex. __ to Wittmann Decl. I.)

Moreover, the jury is able to examine these documents that Dr. Kapit refers to, together with Merck's responses and the other related documents that Dr. Kapit did not examine. The jury is fully capable of deciding whether the total evidence supports plaintiffs' claims about what Merck knew and intended. *See In re Rezulin*, 309 F. Supp. 2d at 546 (excluding expert testimony as to corporate state of mind because otherwise experts would "improperly . . . assume the role of advocates for the plaintiffs' case"); *see also In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d at 616 ("A court should not 'admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'") (*quoting Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Tanner*, 174 F.3d at 548. To the extent that evaluating the evidence requires a credibility determination about Merck, it is especially important that that judgment be reserved for the jury and not supplanted by a paid "expert." *See Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (expert accountant was not "specially equip[ped] to divine what [defendant] truly believed" about reliability of financial reports; any opinions offered in

11

that regard are "at worst, rank speculation" and at best, "credibility choices that are within the province of the jury").[5]

Similarly, to the extent that Dr. Kapit suggests that Merck attempted to conceal or manipulate scientific data, that testimony also must be excluded. (*See, e.g.*, Kapit Dep. at 184:7-19; Kapit Report at ¶¶ 46-60, 102.) As the *In re Rezulin* court explained, purported "expert" testimony on data-suppression, like testimony concerning state-of-mind generally, "pertains to lay matters which a jury is capable of understanding and deciding without the expert's help." 309 F. Supp. 2d at 554. These "experts" have no "first-hand knowledge of the circumstances underlying [any] charge of data-suppression," *see id.*, and they add nothing to the jury's own consideration of the documentary evidence.

### III.     CONCLUSION.

For all of the foregoing reasons, Merck respectfully requests that the Court grant its motion to exclude Dr. Kapit's testimony in its entirety.

---

[5] A similar attempt by plaintiff to introduce experts to simply parrot his view of the world was rejected by the court in a recent pharmaceutical product liability multi-district litigation case, where the district court noted that plaintiffs were increasingly attempting to twist the Federal Rules of Evidence to allow expert witnesses to be "oath helpers":

> A practice reminiscent of wager of law has become fashionable among some well-financed litigants – the engagement of "expert" witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit. These "experts" thus are loosely analogous to compurgators, also known as oath helpers, in that they lend their credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue.

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 538.

789215v.1

Respectfully submitted,

*Phil Wittmann*
_____
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
4041 Essen Lane
One United Plaza, Suite 501
Baton Rouge, Louisiana 70809
Phone:  225-490-8900
Fax:     225-490-8960

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

Attorneys for Merck & Co., Inc.

13

789215v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion to Exclude the Testimony of Richard M. Kapit, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 21st day of October, 2005.

_____Phil Wittmann_____

789215v.1