UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 24  AM 10: 52

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| IN RE: VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | |
| | SECTION: L |
| This Document Relates To  05-4046 | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | MAG. JUDGE KNOWLES |

### PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY OF THOMAS M. WHEELER, MD

PLAINTIFF, EVELYN IRVIN PLUNKETT, moves this Court for an Order to Exclude Opinion Testimony of Thomas M. Wheeler, and requests that the Court consider the Memorandum in Support incorporated herein and rule in plaintiff's favor pursuant to the Federal Rules of Civil Procedure. This Motion and accompanying pleadings are submitted by Plaintiff's Liaison Counsel on behalf of counsel for plaintiff, Evelyn Irvin Plunkett, and to accommodate such counsel.

Respectfully submitted,

_____
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:   (504) 581-4892
FAX:  (504) 561-6024

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX  77046
PH:   (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

___ Fee_____
___ Process____
_X_ Dktd_____
_✓_ CtRmDep___
___ Doc. No___

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler 2005-10-21.doc

1

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 21st day of October, 2005.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| | : | |
| This Document Relates To | : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | : | MAG. JUDGE KNOWLES |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO EXCLUDE OPINION
TESTIMONY OF THOMAS M. WHEELER, MD**

MAY IT PLEASE THE COURT:

PLAINTIFF, Evelyn Irvin Plunkett, files this Memorandum in Support of Motion to Exclude Opinion Testimony of Thomas M. Wheeler, M.D., and in support thereof shows:

**I.    INTRODUCTION**

Defendants have designated Thomas M. Wheeler, M.D., (Dr. Wheeler) a pathologist and interim Chairman of the Department of Pathology at the Baylor College of Medicine, as an expert who intends to testify regarding: (1) the cause and manner of Mr. Richard Irvin's (Mr. Irvin) death; (2) the role of Mr. Irvin's pre-existing atherosclerosis in Mr. Irvin's death, specifically as it relates to an ostensible rupture of Mr. Irvin's atherosclerotic plaque; (3) the role of hypertrophy of Mr. Irvin's heart in Mr. Irvin's death; and (4) the lack of evidence to link "short –term use of 25 mg. Vioxx"[1] with serious adverse cardiovascular events.[2]  In short, Dr. Wheeler sees "no causal association between his (Mr. Irvin's) use of Vioxx and his death"[3.]  Dr. Wheeler is not qualified to render opinions regarding the subjects on which he intends to testify,

---

[1] Thomas M. Wheeler Rule 26(a)(2)(B) report attached as Exhibit A, at Page 2, September 28, 2005.
[2] A separate motion has been filed to challenge opinion testimony related to the 18 month hypothesis.
[3] *Id.*

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

1

including cardiac pathology and the short term use of 25mg Vioxx, as he has no appropriate expertise.

## II. LEGAL STANDARDS

The *Daubert* trilogy cases, *Daubert, General Electric Co. v. Joiner*, (522 U.S. 136, 118 S.Ct. 512, 517-519 (1997) and *Kumho Tire Co. v. Carmichael*, (526 U.S. 137 (1999) have made the district judge the "gatekeeper who must pass on the reliability and relevance of proffered evidence pursuant to Federal Rule of Evidence 702."[4] Rule 702 takes into account the trilogy and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experiences, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**Fed. R. Evid. 702. This Rule establishes general standards for the judge to use in determining the reliability of expert testimony. The Rule "not only requires that the testimony be relevant, but also that it be based on sufficient facts or data, that it be the product of reliable principles and methods, and that the witness applied those principles and methods reliably to the facts of the case."[5] Rule 702, as interpreted by the Supreme Court, requires that before an expert may permitted to express an on *any* issue, the following requirements must be satisfied:**

1. The expert must be <u>qualified</u> to express the opinion;

2. The expert's opinion must be <u>reliable</u>;

3. The expert's opinion must be <u>relevant</u>; and

---

[4] Manual for Complex Litigation. 472 (4th ED. 2004)
[5] *Id.* at 484.
W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

2

4. The expert's opinion must be <u>otherwise admissible</u>.[6].

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure states the following:

> "Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness".

The *Daubert* Court went on to identify several considerations that might bear on whether the testimony in question is scientifically valid and trustworthy, including:

1. whether the theory or technique has been tested;

2. whether the theory or technique can be or has been peer reviewed or published;

3. the known or potential error rate;

4. the 'existence and maintenance of standards controlling the technique's operation'; and

5. the general acceptance by the relevant scientific community and the testimony's degree of acceptance therein.[7]

However, following both the *Joiner* and *Kuhmo* decisions, the considerations to be evaluated by the district judge was expanded in order to assist in determining the reliability of expert testimony. The following are some examples:

1. Whether the expert is testifying about matters growing naturally and directly out of research independent of litigation;

---

[6] See Fed. R. Evid. 702; *Daubert*, 509 U.S. 579, 588, 590-95.
[7] <u>Manual for Complex Litigation</u>, supra, at 476-77 (footnote omitted).
W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

3

2. Whether the expert has engaged in any improper extrapolation, for example, drawing an unsupported conclusion from animal studies to humans;

3. Whether the expert has taken into account all possible alternative explanations;

4. Whether the expert has been as careful as she would be in her regular professional work as in paid litigation;

5. Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give;

6. Whether the expert has relied on anecdotal evidence, such as case studies, or whether the expert has relied on other types of scientifically reliable evidence;

7. Whether there is a temporal relationship between the exposure event and the subsequent injury;

8. The relationship of the technique used by the expert to established methodologies;

9. The expert's qualifications to use the methodology; and

10. The non-litigation uses to which the methodology has been put.

The person seeking to admit expert testimony bears the burden of proving reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chemical, Inc.*, F.3d 269, 276 (5th Cir. 1998) (en banc).

The current version of Rule 702 was enacted in response to the Supreme Court's opinion in the *Daubert* case. The trial court was charged with assessing the reliability of the methodology used by the proffered expert in addition to the relevance of the expert's proposed testimony. The trial court was affirmed as a 'gatekeeper' and the Advisory Committee Notes accompanying

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

4

Rule 702 provided general standards that the trial court must use to assess the reliability and helpfulness of the proffered expert testimony.[8]

## III. ARGUMENT

Dr. Wheeler is simply not qualified to render opinions regarding the subjects on which he proposes to testify. By his own admission, Dr. Wheeler: 1) has no post-graduate training or specialized expertise in cardiac pathology; and 2) is neither a member of the Baylor College of Medicine Department of Cardiology nor its Department of Surgery. Rather, Dr. Wheeler's focus is in the area of prostate pathology. Thus, he lacks the *particularized* expertise necessary to opine on the issues in this case.

## IV. DR. WHEELER'S LACKS THE NECESSARY EXPERTISE.

An expert must be qualified by "knowledge, skill, experience, training, or education" in order to express an opinion on a particular issue. Fed R. Evid. 702; *See also In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 855 (3d Cir. 1990). A witness who does not possess sufficient knowledge of the subjective matter is not qualified to offer an expert opinion. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371-72 (5th Cir. 2000) (finding the plaintiff's proffered expert testimony inadmissible because the expert did not have any formal or professional accounting training and was going to testify in a complex case involving trademark infringement) (citations omitted); *see also Allen v. Penn. Engineering Corp.*, 102 F.3d 194, 196 (5th Cir. 1996). ("[A] trial court has a duty to screen expert testimony for both its relevance and reliability. An expert's opinion must have a 'reliable basis in the knowledge and experience of his discipline.' Specifically, the court must determine that the reasoning and methodology

---

[8] Advisory Committee Notes, FED. R. EVID. 702.
W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

5

underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue.") (citations omitted).

This case 'sounds' in *cardiac* pathology: the presence of atherosclerosis in Mr. Irvin's coronary arteries, specifically the Left Anterior Descending (LAD) coronary artery, the death by SCD, the presence of a thrombosis within the LAD, the degree of occlusion of the LAD by both the thrombosis and the atherosclerotic plaque, the 'integrity' of the 'fibrous cap' overlying the atherosclerotic plaque, e.g., is the 'cap' intact and, thus protecting the blood from the thrombogenic materials located within the atherosclerotic plaque or has the 'cap' eroded, become disrupted and ruptured allowing thrombogenic material to leak out and initiating the clotting cascade leading to the development of the thrombus. In addition, the matter is complicated by Mr. Irvin's ingestion of 25 mg of Vioxx, a COX-2 inhibitor associated with pro-thrombotic properties, epidemiologically linked with increased risks of 'cardiovascular events' (including SCD and thrombotic events). Furthermore, Dr. Wheeler is of the opinion that Mr. Irvin suffered from 'cardiac hypertrophy', or an enlarged heart. As described and discussed below, Dr. Wheeler lacks the requisite education, training, experience and expertise necessary under the *Daubert* trilogy to be able to opine on the association or causal relationship between the atherosclerotic plaque found within Mr. Irvin's Left Anterior Descending coronary artery and the thrombosis which caused Mr. Irvin's SCD.

Dr. Wheeler completed a residency in general pathology in 1981. There was no specialization in cardiac pathology. Following the conclusion of his residency program he did not formal postgraduate training, such as a fellowship, in cardiac pathology or any other

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

6

subspecialty of pathology.[9] Upon completion of his residency he became an Assistant Professor of Pathology at the Baylor College of Medicine (BCM).

Over the course of nearly a quarter of a century, Dr. Wheeler has established himself as a recognized authority on prostate pathology, but has done little work in the area of cardiac pathology at issue in this case. In this regard, Dr. Wheeler: 1) has never conducted any independent studies of his own into the cause of sudden cardiac death (SCD); 2) does not recall offering pathological expertise in any formal study looking into SCD; and 3) has not authored or co-authored a publication as a result of a study into SCD.[10] Dr. Wheeler is further distinguished from the medical examiner or forensic pathologist who specifically addresses cause of death as a matter of routine.

Dr. Wheeler considers himself an expert in cardiac arrhythmias only "in a general medical sense, not in terms of a cardiologist"[11] However, while estimating that he had reviewed an EKG strip "probably within a year", the strip he was "reviewing" was his own.

The issue in this litigation regarding the cause of death is the etiology of the thrombus both plaintiffs' experts and Dr. Wheeler believe caused Mr. Irvin's SCD. While plaintiff's experts are of the opinion that Vioxx, with its pro-thrombotic properties caused, or significantly contributed to the development of the thrombus, Dr. Wheeler is of the opinion that Vioxx did not cause the thrombus. This is his opinion, even though Dr. Wheeler acknowledges the standard mechanism postulated for how Vioxx can cause a thrombus. Specifically, he testified:

> "Well, I haven't reviewed all the different mechanisms. There's certainly -- certainly different drugs --like, protamine is used to reverse heparin, which is an anti -- heparin is an anti-coagulant. I couldn't sit down right now and give all the mechanisms by which one would cause a thrombotic tendency with a lot of different

---

[9] *See* Exhibit B, Deposition Testimony of Thomas Wheeler, MD, at Page 35, Lines 11 - 15.
[10] *Id.* at Page 106, Lines 18 – 25; Page 107, Lines 1 - 9.
[11] *Id.* at Page 110, Lines 6 - 21.

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

classes of medication. You know, I'm generally familiar with the Fitzgerald hypothesis regarding Vioxx about the imbalance of thromboxane and prostacyclin, but only in a very general sense. It's not -- it's not forming the basis of my opinions in this case."[12]

Despite being proffered as an expert in cardiac pathology in this case, without having the advantage of reviewing the medical literature, the best Dr. Wheeler can offer as a mechanism by which a drug can cause a thrombus formation is to state that:

> "Well, it's -- I mean, we could talk about the whole coagulation system and it would take me a little bit to organize my thoughts. In terms of the coagulation system, there's the entrance, the pathway, and there's also the platelet system and alteration in any of those may actually lead to an increased thrombotic tendency. Some of the coagulation factors can be influenced by drugs which are administered and certainly the platelets can be affected by certain drugs that are administered."[13]

When asked if platelet aggregation was one of the mechanism by which a clot can form in the body, Dr. Wheeler responded that it was. When asked to name a single drug that is known to cause platelet aggregation in the human body, Dr. Wheeler answered by saying "Just off the top of my head, I can't".[14] Dr. Wheeler was also asked to name a drug which leads to clot formation as a result of direct damage to the endothelium. The best answer Dr. Wheeler could offer was "nicotine – it depends on how you classify it. It could be classified as a drug..."[15]

Furthermore, though proffered as an expert in cardiac pathology in this matter, of the "one or two" cases of SCD which involved a thrombus formation that Dr. Wheeler has autopsied in the last 6 or so years, he can't remember if either of those drugs involved a pro-thrombotic drug.[16] Dr. Wheeler has *never* diagnosed a case of a drug-induced myocardial infarction (heart

---

[12] *Id.*
[13] *Id.* at Page 118, Lines 4 – 13.
[14] *Id.* at Page 118, Lines 3 – 6.
[15] *Id.* at Page 119, Lines 15 - 22.
[16] *Id.* at Page 142, Lines 6 - 9.

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

8

attack) nor has he *ever* diagnosed a case of drug-induced cardiac thrombosis formation.[17] He has never conducted original research on the development of a thrombosis within the human heart. Dr. Wheeler has never published on the development of thrombosis in the human heart. Further, Dr. Wheeler has never lectured to a professional society on the development of a thrombosis in a human heart.

Another issue upon which Dr. Wheeler intends to offer expert opinion without, in fact, possessing the requisite expertise, is the issue of what Dr. Wheeler refers to as the cardiac hypertrophy, or enlargement of Mr. Irvin's heart. To be fair, the original autopsy report also lists one of the findings as "cardiomegaly", which is an enlargement of the heart.[18] However, this autopsy was performed by a county coroner, not a Professor of Pathology and appears to be based solely upon the weight of Mr. Irvin's heart at the time of the autopsy.

Dr. Wheeler testified that he believed Mr. Irvin suffered from cardiac hypertrophy "to a small degree"[19] He bases this opinion upon the fact that Mr. Irvin's heart weighed "around 420" grams at the time of his death and "if you look at tables, the normal heart weight or the mean heart weight for someone his age would be less than 400 grams, and he was over that."[20] Furthermore, upon histological examination, Dr. Wheeler observed what he described as "microscopic evidence of hypertrophic fibers."[21]

Dr. Wheeler demonstrates the lack of expertise required by the *Daubert trilogy* in the following manner:

1. The 'mean' weight is nothing more than the 'average weight. A heart approximately 20 grams above the mean is no more 'abnormal' than a heart 1

---

[17] *Id.* at Page 143, lines 7 - 12
[18] Irvin Autopsy Report attached as Exhibit C.
[19] *See* Exhibit B at Page 157, lines 13 – 15.
[20] *Id.* at Page 157, Lines 19 – 22.
[21] *Id.* at Page 157, Lines 22-23.

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

9

gram above the mean or a heart 20 grams *below* the mean provided that the range is within the 95% confidence interval. In this case, it is and Dr. Wheeler admits as much;[22]

2. He has never conducted research into the causes of cardiac hypertrophy;[23]

3. He has never published an article on cardiac hypertrophy; and[24]

4. He has never lectured, outside of his institution, on the causes of cardiac hypertrophy.[25]

Dr. Wheeler agrees that there is a correlation between body mass and cardiac weight and that an individual such as Shaq O'Neil, approximately 7'0 and 280 lbs would have a larger heart than a 6'3, 220 lbs individual while still being 'normal' for his size.[26] Mr. Irvin is described as being 5'11" or 6' and 230 by Dr. Wheeler. Mr. Irvin played college football and is enshrined in the Florida Collegiate Hall of Fame. However, Dr. Wheeler is not "too familiar" with the term 'athlete's heart' although he admits that the heart muscle:

> "like the muscles in the biceps, responds to work by increasing the size of the fibers....in terms of the athlete, it really depends on what type of exercise one participates in. For example, aerobic exercise doesn't really build muscle mass. You become lean and -- but weight - lifting, for example, will cause muscle to hypertrophy. And I assume that's also true in the athlete to some extent where it concerns the heart, but...." he "would like to have a chance to review it. And it could be that the heart will -- may be somewhat reversible in terms of showing less hypertrophy if it were associated with an athletic activity, but I would like the chance to review that."[27]

---

[22] Id. at Page 157, line 25, page 158, lines 1 – 13.
[23] Id. at Page 162, Lines 22-24.
[24] Id. at Page 162, Lines, 3-7.
[25] Id. at Page 163, Lines 8-11.
[26] Id. at Page 163, Lines 16-22.
[27] Id. at Pages 160, lines 12 – 25, page 161, lines 1 – 18.

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

10

Dr. Wheeler's opinion in this regard is contrary to the published literature because he simply does not possess the requisite *knowledge* that will assist the trier of fact to understand the evidence or to determine a fact in issue. Dr. Wheeler is not a "witness qualified as an expert by knowledge, skill, experiences, training, or education" as required by both the *Daubert* trilogy and Rule 702.

## V.   UNDISCLOSED OPINION

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipsi dixit of the expert."[28] Despite clear language in his Rule 26(a)(2)(B) letter to defense counsel that two of the sections of coronary artery show "a portion of the this fibrous cap is infiltrated by macrophages, acute hemorrhage into the lipid rich core, and **focal rupture of the thin fibrous cap**"[29] Dr. Wheeler did NOT, in fact, observe the rupture he states was present *at the time he wrote his report*. (Emphasis added).

Dr. Wheeler was specifically asked the following question[30]:

Q   I'm reading from your report. It states, "A portion of the thin fibrous cap is infiltrated by macrophages. There is acute hemorrhage into the lipid-rich core and focal rupture of the thin fibrous cap." Can you mark for us on the – that which you saw on or before September 28th which is the focal rupture of what you spoke?

To which Dr. Wheeler admitted:

A   Okay. Do you want me to mark the other things that I mentioned or just the focal rupture....Okay. The focal rupture is the fact that in order to get the thrombus, which is right here, in between the fibrous cap and the cholesterol core, **there had to be a rupture of the cap in this area here. I don't actually see a site of rupture**, but it's -- **in my way of thinking and analyzing this case**, the way the clot got in there is that **there had to be rupture somewhere** so that the blood was exposed to the fibrous -- I'm sorry -- to the lipid-rich core and formed a thrombus. **In other words, I**

---

[28] *General Electric Company v. Joiner*, 66 USLW 4063, 1997 WL 764563 (December 15, 1997)
[29] *See* Exhibit A at Page 2.
[30] *See* Exhibit B at Page 219, Lines 10 – 17.

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

11

**don't see a way to have the fibrous cap, the thrombus, and the lipid-rich core without having this cap having ruptured.**[31] (Emphasis added)

Dr. Wheeler *did not* visualize a ruptured fibrous cap in the materials he reviewed *prior* to writing his Rule 26(a)(2)(B) report dated September 28, 2005. He believes that there "had to be a rupture" because he lacks the expertise in cardiac pathology necessary which would allow him to then consider an alternate 'cause' for the fatal thrombosis. In his "way of thinking and analyzing this case" there *had* to be a rupture because he has no other explanation for the presence of the thrombosis despite understanding that Mr. Irvin was taking Vioxx, a recognized pro-thrombotic drug removed from the marketplace for causing exactly what happened in this case: Sudden Cardiac Death.

Furthermore, this type of rank 'conjecture' was discussed in *Black v. Food Lion,* 171 F 3d. 308 (5th Cir 1999). In *Black* the court focused on the testimony of the plaintiff's expert which was that "I didn't find the cause (of the plaintiff's fibromyalgia). I found an event that contributed to the development of the symptom. I did not find the cause."[32] The court concluded that this was "conjecture, not deduction from scientifically-validated information".[33]

## VI. CONCLUSION

For the reasons stated herein, Dr. Wheeler's opinions do not meet the scientific standards for expert testimony. Plaintiff respectfully requests that the Court strike any opinion or fact

---

[31] *Id.* at Pages 219-220, Lines 18 – 8.
[32] *Black v Lion*, at 313.
[33] *Id.*

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

testimony from Dr. Wheeler in this regard and for such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

_____

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX  77046
PH:    (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

| | |
|---|---|
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

### PLAINTIFFS' STEERING COMMITTEE

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 21st day of October, 2005.

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler MEMO IN SUPPORT 2005-10-21.doc

14

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX                              :   MDL NO. 1657
    PRODUCTS LIABILITY LITIGATION:
                                           :   SECTION: L
                                           :
This Document Relates To                  :   JUDGE FALLON
Evelyn Irvin Plunkett v. Merck & Co, Inc. :   MAG. JUDGE KNOWLES

## NOTICE OF HEARING

Please take notice that, upon the pleadings, the depositions, and other matters of record, the undersigned will move the Court before the Honorable Judge Eldon E. Fallon, United States District Court for the Eastern District of Louisiana, 515 Rusk Street, Suite 8613, Houston, Texas 77002, on the 14th day of November, 2005, at 9:00 o'clock a.m., or as soon thereafter as counsel can be heard, for an order on the Plaintiff's Motion to Exclude Opinion Testimony of Thomas M. Wheeler, M.D., and for such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX 77046
PH:   (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler NOTICE OF HEARING 2005-10-21.doc

1

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

W:\25000-29999\27115\000\PLD\Daubert\Wheeler Daubert Exhibits\Daubert Motion re Dr. Thomas Wheeler NOTICE OF HEARING 2005-10-21.doc

2

SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED