# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA



| | |
|---|---|
| IN RE: VIOXX<br>PRODUCTS LIABILITY LITIGATION: | MDL NO. 1657<br>SECTION: L |
| This Document Relates To 05-4046<br>Evelyn Irvin Plunkett v. Merck & Co, Inc. | JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY THAT NAPROXEN® IS SUFFICIENTLY CARDIOPROTECTIVE TO EXPLAIN EXCESS CARDIAC RISK IN VIGOR

PLAINTIFF, EVELYN IRVIN PLUNKETT, moves this Court for an Order to Exclude Opinion Testimony that Naproxen® is Sufficiently Cardioprotective to Explain Excess Cardiac Risk in Vigor, and requests that the Court consider the Memorandum in Support incorporated herein and rule in plaintiff's favor pursuant to the Federal Rules of Civil Procedure. This Motion and accompanying pleadings are submitted by Plaintiff's Liaison Counsel on behalf of counsel for plaintiff, Evelyn Irvin Plunkett, and to accommodate such counsel.

Respectfully submitted,

_____
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:   (504) 561-6024

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX 77046
PH:   (713) 877-1843
FAX:   (713) 871-9750
**Plaintiffs' Liaison Counsel**

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen 2005-10-21.doc

1

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 21st day of October, 2005.

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen 2005-10-21.doc

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| | : | |
| This Document Relates To | : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | : | MAG. JUDGE KNOWLES |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY
THAT NAPROXEN® IS SUFFICIENTLY CARDIOPROTECTIVE
TO EXPLAIN EXCESS CARDIAC RISK IN VIGOR**

MAY IT PLEASE THE COURT:

PLAINTIFF, EVELYN IRVIN PLUNKETT, files this Memorandum in Support of Motion to Exclude Opinion Testimony that Naproxen is Sufficiently Cardioprotective to Explain Excess Cardiac Risk in VIGOR, and in support thereof shows:

**I.   Statement of Relevant Facts**

In April and May of 2001, Richard Irvin was a new user of Vioxx®. He ingested 25 mg. Vioxx® for approximately 30 days before suffering sudden thrombotic cardiac death on May 15, 2001, at age 53. An autopsy revealed an unattached coronary thrombus (clot) in the left anterior descending (LAD) coronary artery. The unattached clot was grossly visible to the pathologist, was identified on the autopsy record, and has been further documented through photomicrographs. There is no dispute that Richard Irvin suffered a thrombotic cardiac event during a period of ingestion of Vioxx®.

Vioxx® was first marketed in the United States in May of 1999. By the end of 1999, Merck had completed its first large, randomized clinical trial (VIGOR) comparing Vioxx® to naproxen in rheumatoid arthritis patients to determine the effects of the medications on pre-

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

1

specified gastrointestinal endpoints. An additional finding of the VIGOR clinical trial was a 5.0 increased relative risk for myocardial infarction among Vioxx® users and a 2.80 increased relative risk for serious coronary heart disease (myocardial infarction and sudden cardiac death).[1] It is not disputed that the full results of VIGOR were known throughout Merck by March of 2000, some 13 months before Richard Irvin ingested Vioxx.[2]

In evaluating the cardiac events, Dr. Edward Scolnick, a Senior Merck Scientist and part of Senior Management at Merck, stated in an email on March 9, 2000, that the cardiovascular events were clearly there and were mechanism based as Merck feared they were.[3] The cardiac results are not disputed. After Dr. Scolnick's email, the theory publicly set forth by Merck about the cardiac events has become known as the naproxen theory[4] – the hypothesis that naproxen may have cardioprotective qualities like aspirin and therefore account for the significant difference in cardiac events in the Vioxx® arm of VIGOR.

The naproxen theory has never been proven through valid epidemiologic studies.[5] Adverse cardiac risks from Vioxx® ingestion were shown through multiple epidemiologic studies over the next several years, culminating on September 30, 2004, when Merck removed Vioxx® from the market worldwide and reported that its long term prospective clinical trial

---

[1] In the relevant epidemiology community, and in courts evaluating the magnitude of such risks, these relative risks correlate to attributable risks of 80.2 percent and 64.5 percent, respectively. See, Report of Plaintiff's expert pharmacoepidemiologist, Dr. Wayne Ray, Section 5, Attributable Proportion of Increased Risk.

[2] There is further no dispute that the VIGOR labeling changes to incorporate the adverse cardiac events were not made until April of 2002, almost a year after Richard Irvin's death.

[3] Exhibit A attached and incorporated herein for all purposes.

[4] Merck issued a press release on March 27, 2000, to tout the alleged gastrointestinal benefits of Vioxx® over Naproxen and stated therein that "fewer thromboembolic events were observed in patients taking naproxen in this GI outcomes study, which is consistent with naproxen's ability to block platelet aggregation," and "[m]edicines like aspirin and naproxen that significantly inhibit COX-1 block platelet aggregation and therefore have the potential to provide cardioprotection." Exhibit B is attached and incorporated herein for all purposes. In a Warning Letter in September of 2001, FDA told Merck to stop saying this because it was an unproven theory. Exhibit C is attached and incorporated herin for all purposes.

[5] The relevant naproxen literature is set out in Section II below.

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

2

(APPROVe) resulted in statistically significant increases in confirmed thrombotic cardiac events among Vioxx® users compared to placebo.

## II. From 2000 to Present, The Naproxen Theory Has Never Been Proven By Reliable Epidemiologic Evidence

On November 23, 2000, Merck published the VIGOR study in a New England Journal of Medicine article entitled, *"Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis."* In this study, Merck and its consultant authors again set out the naproxen theory and admitted it was theoretical and needed further confirmation in larger studies. The final three paragraphs of the article provide as follows:

> Naproxen inhibits the production of Thromboxane by 95 percent and inhibits platelet aggregation by 88 percent, and this effect is maintained throughout the dosing interval; therefore, the effects of regular use of naproxen *may* be similar to those of aspirin. Flurbiprofen, another NSAID that is a potent inhibitor of platelet-derived Thromboxane, led to a 70 percent reduction in the rate of reinfarction as compared with placebo among patients in whom acute myocardial infarction was successfully treated with thrombolysis, angioplasty, or both.
>
> Analysis of 7535 patients in double-blind trials comparing rofecoxib with placebo and other NSAIDs (diclofenac, ibuprofen, and nabumetone) that do not produce sustained, maximal inhibition of platelet aggregation revealed similar rates of myocardial infarction in all groups (and unpublished data). Thus, our results are consistent with the *theory* that naproxen has a coronary protective effect and highlight the fact that rofecoxib does not provide this type of protection owing to its selective inhibition of cyclooxygenase-2 at its therapeutic dose and a higher doses. ***The finding that naproxen therapy was associated with a***

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

3

> ***lower rate of myocardial infarction needs further confirmation in larger studies.***
>
> In summary, the use of the cyclooxygenase-2-selective inhibitor rofecoxib resulted in significantly fewer clinically important upper gastrointestinal events than did treatment with naproxen, a nonselective NSAID. The two drugs had similar rates of clinical effectiveness.

*See* Exhibit D.(emphasis added).

By October of 2001, Merck had conducted and published its own pooled analysis in an attempt to show that Vioxx® ingestion did not cause cardiac events at the 25 mg dose based upon Merck's internal data including ongoing, completed, stopped and/or unpublished trials. *See* Exhibit E. This was published in the Clinical Investigation and Reports section of the journal, Circulation, and was entitled, *"Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib."* Similar to the NEJM article on VIGOR, the authors were unable to scientifically confirm a cardioprotective effect of naproxen. Indeed, the very last sentence of the article states that "[t]he data suggest, ***but are insufficient to ascertain***, the cardioprotective benefits of naproxen." *Id*. (emphasis added).

In 2002, Dr. Wayne Ray and colleagues at Vanderbilt University were unable to confirm a cardioprotective effect of naproxen in a large observational study of the TennCare database. *See* Exhibit F.

By the time of the withdrawal of Vioxx® from the market on September 30, 2004, multiple studies had confirmed adverse cardiac events among Vioxx® as against multiple comparators as well as placebo. A summary analysis of these can be found in Dr. Wayne Ray's and Dr. John Farquahar's reports in this case, appended to Plaintiff's Science Brief.

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

4

On November 5, 2004, an analysis of the observational studies and clinical trials on Vioxx® was published in the Lancet by Peter Juni and colleagues. *See* Exhibit G. In this article, *Risk of cardiovascular events and rofecoxib: cumulative meta-analysis*, the authors concluded that "the Cardioprotective effect of naproxen was small and **could not** have explained the findings of the VIGOR trial." (emphasis added). Merck's authors and consultants cited to the Juni article in Merck's publication of the APPROVe data on February 15, 2005, and admitted therein that "[a] recent meta-analysis [Juni et al] suggested that the magnitude of any Cardioprotective effect of naproxen is unlikely to account entirely for these findings." *See* Exhibit H. The APPROVe study reported Merck's finding of an increase in thrombotic events associated with Vioxx® compared to placebo.

On June 11, 2005, Julia Hippisley-Cox and Carol Coupland published the results of a large observational study in the British Medical Journal and reported:

> We found **no evidence** to support the hypothesis, proposed by the authors of the VIGOR trial, that naproxen actually lowers the risk of a myocardial infarction. This **lack of a cardioprotective effect for naproxen** in our study is consistent with other studies that have **failed to find any** protective effect for naproxen and a recent meta-analysis. We found one study that suggested a weak protective effect of naproxen for acute myocardial infarction, but the detailed analysis failed to show any proximity-response relation between exposure to naproxen and acute myocardial infarction.

*Id.* at 4-5. (emphasis added).

There is no dispute that there is no reliable epidemiologic evidence to support the naproxen hypothesis. Thus, there is no reliable basis to present the theory to a jury through opinion testimony.

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

5

### III. Authority

The United States Supreme Court determined non-exclusive factors for reliability regarding the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 585-588, 113 S.Ct. 2786, 2792-93 (1993). These factors include (1) whether and if the theory or technique has been tested; (2) whether it has been subjected to peer review and/or publication; (3) its potential or known rate of error; (4) whether it has been generally accepted within the relevant scientific community; and (5) whether there is an analytical gap between the underlying data and the opinion proffered. *Id.* In addition, the court must determine that the proposed opinion is relevant to any issues in dispute in the particular case. *Id.* at 2796.

It is further well settled that, under *Daubert*, scientific knowledge must derive from the scientific method. While the determination of reliability is left to the discretion of the court, the Supreme Court found that a trial court does not have to accept an opinion only by the *ipse dixit* of an expert's testimony. Stated simply, the mere fact that an expert says something does not make it so. *General Electric v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 517-519 (1997). Indeed, proper credentials are necessary but not sufficient to admit an expert's testimony. *Kuhmo Tire Co., Ltd., et al. v. Carmichael, et al.*, 526 U.S. 137, 119 S.Ct. 1167, 1176-77 (1999). In *Kuhmo Tire*, the Supreme Court re-emphasized that expert testimony is only admissible when the proponent demonstrates by a preponderance of the evidence that the expert is qualified, the evidence is relevant to the suit, and the factual basis, data, principles, methods and applications are all reliable. *Id.* at 1175-1179.

Opinion testimony is initially governed by FED. R. EVID. 701-703. Rule 702 provides as follows:

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

6

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experiences, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (West 2005). Rule 703 requires that the facts or data in the particular case upon which an expert bases an opinion or inference shall not be disclosed to a jury unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. FED. R. EVID. 703. According to the Advisory Committee on Evidence Rules, these amendments incorporate *Daubert/Kumho Tire* standards, reinforce the gatekeeper role of the trial judge as to all experts and reemphasize that the standard is preponderance of the evidence. In addition, Rule 703 provides that an expert's reliance on otherwise inadmissible evidence does not automatically warrant its disclosure without a balancing test similar to FED. R. EVID. 403.

Under these standards, and as set forth below, the opinion testimony here should be excluded.

**IV. Rule 702 Applies to Naproxen Theory and Merck's Proposed Expert's**

Merck offers Dr. David Silver (an internist), Dr. Barry Rayburn and Dr. Michael Gaziano (epidemiologist) for the scientific opinion that naproxen may be cardioprotective and/or it is a

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

7

reasonable theory or hypothesis. Dr. Rayburn best summarizes the naproxen hypothesis in his deposition:

> Mr. Birchfield: And when you reviewed the VIGOR study, did you – did you accept that naproxen is cardioprotective and explained the difference – and that was sufficient to explain the difference in the rate of myocardial infarctions?
>
> Mr. Blatt: Objection.
>
> Dr. Rayburn: I accepted the *belief* that naproxen certainly *could have* had a protective effect and reduced the myocardial infarction risk in the patients who received that agent.

*See* Exhibit I.

Nowhere do these experts cite to a scientifically reliable basis for their opinions that would survive a *Daubert* analysis. The experts admit there is no valid epidemiologic proof that naproxen is cardioprotective.[6] The epidemiologic evidence strongly refutes the theory or hypothesis.

Merck should not be allowed to bolster a fabricated hypothesis by couching it as opinion testimony. Neither Rule 702, nor the Advisory Committee's Notes limit the application of reliability and relevance standards to Plaintiff's experts. To the contrary, the Supreme Court's

---

[6] For example, Dr. Barry Rayburn, a Merck proffered expert, was asked in deposition as follows:
> Mr. Birchfield: Are you aware of any randomized clinical trial that shows naproxen has a cardioprotective effect comparable to aspirin?
> Dr. Rayburn: No, I'm not much aware of such a trial nor would I expect any such trial to ever be conducted.
> Mr. Birchfield: But without it you're willing to accept that naproxen has a Cardioprotective effect comparable to aspirin?
> Dr. Rayburn: I think that without a randomized control trial there are data that certainly are consistent with naproxen having a Cardioprotective effect that *could be* comparable to aspirin, yes.

Exhibit I, Rayburn deposition. (emphasis added)

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

8

language in *Daubert* and *Kumho Tire* demonstrates the broad application of the reliability inquiry to all experts. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Court stated that under Fed. R. Evid. 702 "the trial judge must ensure that *any and all* scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. 1t 589 (emphasis added). In *Kumho Tire*, the Court held that the gatekeeping obligation applied not only to scientific evidence but to all expert testimony and evidence. *Kumho Tire*, 526 U.S. 1t 147. Although the application of *Daubert* factors might differ based on the facts of each case and the type of testimony or evidence being offered, the *Kumho Tire* Court stated that the trial court's obligation of assuring the relevance and reliability of the evidence does not. *Id.* at 151-52.

In applying the *Daubert* factors, the naproxen theory has never (1) been tested in a controlled clinical trial; (2) has never been accepted as scientifically true in a peer review and/or publication; (3) has an unknown rate of error and/or has a high rate of error since it has been proven to the contrary in large epidemiological studies; (4) has not been generally accepted within the relevant scientific community; and (5) there is an overwhelming analytical gap between the underlying data and the opinion proffered.

V.  **Conclusion**

From the time Vioxx® was placed on the market to present the reliable epidemiological evidence has shown that the naproxen theory as an explanation for the VIGOR results is not

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

9

supported. Accordingly, Plaintiff requests that the Court exclude opinion testimony on the Naproxen hypothesis or theory as not reliable and lacking in scientific proof.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX  77046
PH:    (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

10

| | |
|---|---|
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

<u>**PLAINTIFFS' STEERING COMMITTEE**</u>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 21st day of October, 2005.

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen MEMO IN SUPPORT 2005-10-21.doc

11

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
|     PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| This Document Relates To  05-4046 | : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | : | MAG. JUDGE KNOWLES |

## NOTICE OF HEARING

Please take notice that, upon the pleadings, the depositions, and other matters of record, the undersigned will move the Court before the Honorable Judge Eldon E. Fallon, United States District Court for the Eastern District of Louisiana, 515 Rusk Street, Suite 8613, Houston, Texas 77002, on the 14th day of November, 2005, at 9:00 o'clock a.m., or as soon thereafter as counsel can be heard, for an order on the Plaintiff's Motion to Exclude Opinion Testimony that Naproxen® is Sufficiently Cardioprotective to Explain Excess Cardiac Risk in VIGOR, and for such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

_____
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:   (504) 581-4892
FAX:  (504) 561-6024

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen NOTICE OF HEARING 2005-10-21.doc

1

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX  77046
PH:   (713) 877-1843
FAX: (713) 871-9750
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY  10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

W:\25000-29999\27115\000\PLD\Daubert\Naproxen Daubert Exhibits\Daubert Motion re Naproxen NOTICE OF HEARING 2005-10-21.doc

2

SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED