UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 24  AM 10: 44

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| IN RE: VIOXX : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | |
| : | SECTION: L |
| This Document Relates To  05-4046 : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. : | MAG. JUDGE KNOWLES |

### PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY THAT VIOXX® CANNOT CAUSE ADVERSE THROMBOTIC CARDIAC EVENTS UNLESS INGESTED EIGHTEEN (18) MONTHS OR LONGER

PLAINTIFF, EVELYN IRVIN PLUNKETT, moves this Court for an Order to Exclude Opinion Testimony that Vioxx® Cannot Cause Adverse Thrombotic Events Unless Ingested Eighteen (18) Months or Longer, and requests that the Court consider the Memorandum in Support incorporated herein and rule in plaintiff's favor pursuant to the Federal Rules of Civil Procedure. This Motion and accompanying pleadings are submitted by Plaintiff's Liaison Counsel on behalf of counsel for plaintiff, Evelyn Irvin Plunkett, and to accommodate such counsel.

Respectfully submitted,

*/s/*

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024
Temporary address:
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH:   (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

W:\25000-29999\27115\000\PLD\Daubert\18 Mos Daubert Exhibits\Daubert Motion re 18 months 2005-10-21.doc

1

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 21st day of October, 2005.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| This Document Relates To | : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | : | MAG. JUDGE KNOWLES |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY THAT VIOXX® CANNOT CAUSE ADVERSE THROMBOTIC CARDIAC EVENTS UNLESS INGESTED EIGHTEEN (18) MONTHS OR LONGER

MAY IT PLEASE THE COURT:

PLAINTIFF, EVELYN IRVIN PLUNKETT, files this Memorandum in Support of Motion to Exclude Opinion Testimony that Vioxx® Cannot Cause Adverse Thrombotic Events Unless Ingested Eighteen (18) Months or Longer, and in support thereof shows:

I. **Statement of Relevant Facts**

In April and May of 2001, Richard Irvin was a new user of Vioxx®, which was first marketed in the United States by Merck & Co., Inc., in May of 1999. Richard Irvin ingested 25 mg. Vioxx® for approximately 30 days before suffering sudden thrombotic cardiac death on May 15, 2001, at age 53.

The Emergency Room Physician at Flagler Hospital in St. Augustine, Florida, requested an autopsy related to Mr. Irvin's death because the cause of his death was not known with clinical certainty. The autopsy revealed an unattached coronary thrombus (clot) in the left anterior descending (LAD) coronary artery. The unattached clot was grossly visible to the pathologist, was identified on the autopsy record, and has been further documented through

photomicrographs. There is no dispute that Richard Irvin suffered a thrombotic cardiac event during a period of ingestion of Vioxx®.

On September 30, 2004, Merck removed Vioxx® from the market worldwide and reported that its long term prospective clinical trial (APPROVe) resulted in statistically significant increases in confirmed thrombotic cardiac events among Vioxx® users compared to placebo. In the resulting publication of the APPROVe data, Merck and its consultants conducted a *post hoc* analysis on duration of use and reported in the publication that "[i]n a *post hoc* analysis, the difference between the two groups in the incidence of thrombotic events was evident in the second 18 months of the study, whereas the event rates were similar for the first 18 months." See Exhibit A, p. 6. (emphasis added). While the APPROVe authors provided a graph exhibiting the Kaplan-Meier estimate of the cumulative incidence of confirmed serious thrombotic events over time (Figure 2), the Kaplan-Meier curve for Investigator-Reported cardiac events throughout the study was withheld from the New England Journal of Medicine and was not published.[1] This data set showed the incidence of cardiac events throughout the study was similar, regardless of duration. The trials and studies before APPROVe were of shorter duration and showed the excess in cardiac events during short term use.[2] Subsequent to publication of APPROVe, the risk of cardiac events from short term use was confirmed.[3]

Despite the *post hoc* nature of the analysis, as well as other epidemiologic literature and clinical trials sufficiently powered to refute the *post hoc* 18-month subgroup analysis[4], Merck &

---

[1] The result of the Kaplan Meier curve that was withheld by Merck is contained in the report of Plaintiff's expert, John W. Farquhar, M.D., Exhibit B, at page 82, ¶177, and Figure 6, p. 36.
[2] See infra at Section IV-C.
[3] See infra at Section IV-D.
[4] As more fully outlined in Plaintiff's Science Brief, the epidemiologic literature shows that short term Vioxx® ingestion can cause a thrombotic cardiac event. For instance, two epidemiologic studies with sufficient sample size to assess duration of Vioxx® use were published by Dr. Daniel Solomon and Dr. Soren Johnsen and colleagues. In the first, Dr. Solomon reported the cardiac risk associated with Vioxx® use of 1-30 days and of 31-90 days was significantly greater. (1.40 and 1.38 respectively). In the latter, Dr. Johnsen and colleagues reported a risk

Co., Inc., announced to the public and has proffered experts for the opinion that Vioxx® cannot cause thrombotic cardiac events unless ingested for 18 months or longer (referred to hereafter as the 18-month hypothesis). More specifically, Dr. Thomas Wheeler, a prostate and urology pathologist, has offered the opinion that "[s]hort term use of 25 mg. Vioxx®, such as in the case of Mr. Irvin, does not appear to confer an increased risk of serious adverse cardiovascular events, based upon my review of the peer-reviewed literature."[5]  Dr. Michael Gaziano, Merck's proffered epidemiologist, opines that the APPROVe trial shows "no evidence" of an increased risk for a period of at least 18 months of continuous daily use.[6] Dr. Silver goes so far as to postulate that there are no effects until 36 months of ingestion.[7]

Because the 18-month hypothesis is based upon the speculative *post hoc* subgroup analysis by Merck from the APPROVe clinical trial, flies in the face of results from Merck's own clinical trials and other epidemiologic studies, and is wholly without any biological plausibility, the 18-month hypothesis runs afoul of the reasoned principles for reliable opinion testimony set forth in Federal Rules of Evidence 701-703 and the line of interpretive cases. *See e.g., Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *Kumho Tire Co., v. Carmichael*, 526 U.S. 137 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997).

---

of 2.52 for new users, defined as 1-30 of days Vioxx® ingestion. Dr. Wayne Ray, an epidemiologist at Vanderbilt University, addresses the causation of cardiac events among new or short term users of Vioxx® in his report in this case, Exhibit C, Section 6. In addition, relevant information on duration is found in the reports of Plaintiff's experts Dr. Richard Kronmal and Dr. John W. Farquhar appended to Plaintiff's Science Brief. The published article of Dr. Peter Juni published in the journal Lancet and also referenced in Plaintiff's Science Brief, reports that the adverse cardiac risk was present in Vioxx® users regardless of duration.

[5]   See Merck's Report of Thomas M. Wheeler, M.D., Exhibit D, p. 2 ¶2.
[6]   See Merck's Report of Michael Gaziano, M.D., Exhibit E, ¶¶ 100, 107, and 109.
[7]   Dr. Silver, an internist who admits he is not an epidemiology or pharmacoepidemiology expert, testified that it took 36 months based "on the study I read and the FDA documents that I reviewed." Exhibit F, at 0053:9-14.

## II.    Summary of Arguments

The 18-month hypothesis is a *post hoc* subgroup analysis that is not generally accepted by the relevant epidemiological and scientific community. In addition, the *post hoc* subgroup analysis is underpowered and has an error rate that gives the 18-month hypothesis an only 1 in 5 (20%) chance of accurately detecting the risk of cardiac events by duration in this subgroup. Based upon these critical failings, the factual bases, data, principles, methods and applications employed by Merck's experts in offering the 18-month hypothesis are not reliable.

It is further clear the 18-month hypothesis was formulated for purposes of litigation only and should therefore be given little, if any, scientific weight.

In addition, the results of the *post hoc* subgroup analysis are inconsistent with the results of prior and subsequent clinical trials and epidemiological studies. Thus, the analysis is so contrary to the available data that there is too large an analytical gap between the data and the opinion offered.

Finally, the notion of an 18-month threshold had never previously been raised nor postulated. No Merck expert has offered support for the biological plausibility of such a threshold as no evidence exists in the entire body of published cox-2 scientific research. Indeed, Merck's own proffered pathologist, Dr. Thomas Wheeler, testified that he knew of no study that would support an 18-month threshold.[8]  Therefore, there is too large an analytical gap between the hypothesis and the available data to render the opinion reliable.

---

[8]   Dr. Wheeler testified:

>   Mr. Restanio:   And can you, as you sit here today, share with us any drug that you recognize as being -- having the potential to cause a heart attack that requires 18 months of usage or longer prior to manifesting its effects?
>   Dr. Wheeler   I can't think of one as I sit here today.

*See* Exhibit G, 222: 3-8.

### III. Relevant Legal Authority

The United States Supreme Court determined non-exclusive factors for reliability regarding the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 585-588, 113 S.Ct. 2786, 2792-93 (1993). These factors include (1) whether and if the theory or technique has been tested; (2) whether it has been subjected to peer review and/or publication; (3) its potential or known rate of error; (4) whether it has been generally accepted within the relevant scientific community; and (5) whether there is an analytical gap between the underlying data and the opinion proffered. *Id.* In addition, the court must determine that the proposed opinion is relevant to any issues in dispute in the particular case. *Id.* at 2796.

It is further well settled that, under *Daubert*, scientific knowledge must derive from the scientific method. While the determination of reliability is left to the discretion of the court, the Supreme Court found that a trial court does not have to accept an opinion only by the *ipse dixit* of an expert's testimony. Stated simply, the mere fact that an expert says something does not make it so. *General Electric v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 517-519 (1997). Indeed, proper credentials are necessary but not sufficient to admit an expert's testimony. *Kuhmo Tire Co., Ltd., et al. v. Carmichael, et al.*, 526 U.S. 137, 119 S.Ct. 1167, 1176-77 (1999). In *Kuhmo Tire*, the Supreme Court re-emphasized that expert testimony is only admissible when the proponent demonstrates by a preponderance of the evidence that the expert is qualified, the evidence is relevant to the suit, and the factual basis, data, principles, methods and applications are all reliable. *Id.* at 1175-1179.

Opinion testimony is initially governed by FED. R. EVID. 701-703. Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experiences, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (West 2005). Rule 703 requires that the facts or data in the particular case upon which an expert bases an opinion or inference shall not be disclosed to a jury unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. FED. R. EVID. 703. According to the Advisory Committee on Evidence Rules, these amendments incorporate *Daubert/Kumho Tire* standards, reinforce the gatekeeper role of the trial judge as to all experts and reemphasize that the standard is preponderance of the evidence. In addition, Rule 703 provides that an expert's reliance on otherwise inadmissible evidence does not automatically warrant its disclosure without a balancing test similar to FED. R. EVID. 403.

Under these standards, and as set forth below, the opinion testimony here should be excluded.

## IV. Discussion

As established below, a *post hoc* subgroup analysis is not a generally accepted methodology within the relevant scientific community and is strongly cautioned against in the relevant epidemiological literature as unreliable. In addition, the error rate is unacceptably high

for an underpowered subgroup analysis in general, and is specifically high here where the 18-month hypothesis has no better than a 20 percent chance of reliability. This results in an 80-percent likelihood that the 18-month hypothesis is wrong. Further, the analysis was prepared by Merck during a period when Merck was set for trial in several lawsuits where the exposure was under 18 months and faced the prospects of thousands of suits to come where the exposure would not reach 18 months. The studies show that the cardiac risk was present in all trials at shorter than 18-months. Finally, neither Merck nor its experts have offered any reliable evidence or data that there is an 18-month threshold for cardiac risks from Vioxx® ingestion.

A.  **The *post hoc* subgroup analysis is fatally flawed**

A *post hoc* subgroup analysis is particularly susceptible to misleading interpretations. One seminal article addressing this issue was published in the Journal of the American Medical Association in 1991.[9] According to the authors, a subgroup analysis, even if relatively large, leads to comparisons concerning individual subgroups that are woefully lacking in power. *Id.* Power refers to the probability of a statistical analysis to detect an effect.[10] As noted by Dr. Wayne Ray, an epidemiologist identified by a senior Merck epidemiologist as well-respected in the field of pharmacoepidemiology[11], it is a generally accepted precept of clinical research that reliable analyses should have a power of at least 80% or better so that, given an effect exists, the analysis will detect it at least 4 times out of 5.[12] Failure of sufficient power renders any such

---

[9] Yusuf S, Wittes J, Probstfield J, Tyroler HA, Analysis and interpretation of treatment effects in subgroups of patients in randomized clinical trials. JAMA 1991; 266:93-98, Exhibit H hereto.
[10] *See generally* Report of Dr. Wayne Ray, Exhibit C, Section 6 and specifically note b, identifying power insufficiency as a well-classified Type II error where it is defined after a study is conducted, such as here. An example cited in the Yusuf article is that "[t]he Second International Study of Infarct Survival (ISIS-2) presented results by the astrological sign under which patients were born. Aspirin was clearly beneficial overall and for persons born under all signs except Libra and Gemini, for which apparent harmful effects were observed." *Id.* If *post hoc* subgroup analyses were appropriate, aspirin use would be determined by the patient's zodiac sign. *Id.*
[11] Exhibit C.
[12] *See supra* at note 7.

analysis unreliable.[13] Merck's own proffered cardiology expert, Dr. Craig Pratt, testified that APPROVe was not powered to answer the question of duration.[14]

In addition to Dr. Ray, Dr. Peter Juni, and colleagues published in the medical journal, Lancet that the 18-month hypothesis by Merck had only a 20% power to detect an increased risk of 2 or greater.[15] At 20%, the hypothesis would have an only 1 in 5 chance to detect an effect and falls well short of the generally accepted methodology of a minimum power of 80% for a reliable analysis. As such, the hypothesis fails to meet the reliability prong of the Rules and interpretive case law.

### B. The post hoc analysis was done for litigation

In addition to the statistical flaws, some consideration is warranted as to the timing of statements based upon an admittedly *post hoc* subgroup analysis. The publication was sponsored by Merck and Merck's consultant authors after several hundred lawsuits had been filed against Merck based upon the alleged cardiotoxic properties of Vioxx®. Indeed, at the time of the publication several cases were set for trial where the Plaintiff at issue ingested Vioxx® less than 18 months. Since the subgroup analysis was not a pre-specified grouping and the study resulted in the withdrawal of Vioxx from the market worldwide for all users, the strongest assumption would be that the subsequent, *post hoc* subgroup analysis was done solely for purposes of litigation.

---

[13] *Id.* and Friedman LM, Furberg CD, DeMets DL, Fundamentals of Clinical Trials. Boston: John Wright & Sons, 1983.

[14] *See* Deposition Testimony of Craig Pratt, MD, 115: 2- 116: 2:
    Mr. Honnold: Do you believe APPROVe was adequately powered to say that there actually is a difference in cardiovascular events for usage that's less than 18 months versus usage that's greater?...
    Dr. Pratt: Well, I mean, certainly the trial wasn't powered to answer that question.... So, in that question – in that sense, no.

[15] Juni P, et al., Discontinuation of Vioxx, Lancet 2005; 265(January 1):23-28, Exhibit J hereto.

### C.     The cardiac events are there in the short term

The 18-month hypothesis is inconsistent with the findings in VIGOR where the median duration of Vioxx® therapy was only 9 months and the maximum duration was 13 months. If Merck's 18-month hypothesis were correct, there should have been no increased risk of cardiac events in the VIGOR trial. Dr. Richard Kronmal conducted an independent analysis of the occurrence of cardiac events in the VIGOR trial and the time to event curve diverged within 2 months.[16] Other trials prior to APPROVe demonstrated short-term use of Vioxx® increased risk of cardiac events. In the ADVANTAGE trial, with duration of only 12 weeks, there was an 8-fold increased risk of serious coronary heart disease for patients taking Vioxx®.[17] Dr. Kronmal also analyzed and conducted a pooled analysis of myocardial infarctions for 23 clinical trials of Vioxx® with a duration of 4 weeks or more for osteoarthritis, rheumatoid arthritis, Alzheimer's and low back pain and showed the risk was greater within the first month of use and fairly constant over time.[18] The published analysis of Dr. Peter Juni and colleagues in the Lancet in 2004 confirms that of Kronmal.[19] The test of heterogeneity according to duration of use showed that the risk was constant whether greater than 6 months or less than 6 months.[20]

Two epidemiologic studies that had sufficient sample size to assess duration of Vioxx® use were conducted by Dr. Daniel Solomon and colleagues and Dr. Soren Johnsen and colleagues.[21] Solomon, in a study funded by Merck, showed that the risk associated with Vioxx ingestion was highest within the first 90 days.[22] Johnsen reported that the risk for new users, those within 1-30 days, was 2.52. These findings provide strong evidence that the risk is not

---

[16] Report of Richard A. Kronmal, 8 April 2005, Humeston v. Merck, attached as Exhibit K J hereto.
[17] Report of Wayne Ray, Exhibit C, Section 6.3.2.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] Exhibits L and M.
[22] *Id.* and *supra* at n. 16, Section 6.4.

limited to durations of 18 months or longer.[23] In addition, three other published studies show that the risk is present for short-term users.[24]

As set out in much of the literature since the withdrawal of Vioxx® and Bextra® from the market, it is apparent that the relevant scientific community believes that the suppression of PGI-2 synthesis is a class effect of the coxibs.[25] The published studies on the other coxibs show that the elevated cardiac risks are present in the very short term (10-14 days) and are conclusive in demonstrating that the risk can occur with very short duration of use, consistent with the probable mechanism.[26]

The 18-month hypothesis is so contrary to the weight of the epidemiologic evidence showing the cardiac risks during short term use that there is too large an analytical gap between the data available and the opinion offered.

### D.  There is no biological plausibility to the 18-month threshold hypothesis

It is biologically implausible that cardiac risk from Vioxx® begins at 18 months and no sooner. Merck and its experts provide no scientifically reliable evidence that it is plausible that Vioxx® ingestion that is pharmacologically causing the unopposed inhibition of PGI-2 within hours of ingestion takes 18 months or longer to cause cardiac events. Thus, there is too large an analytical gap between the hypothesis and the data to render the opinion reliable.

### V.  Conclusion

The generally accepted and reliable methodology among the epidemiologic community relating to conducting subgroup analyses shows that the 18-month hypothesis is unreliable because it was arguably done for purposes of litigation only, goes against standard

---

[23]  *Id.*
[24]  *Id.* citing to Kimmel et al, Graham et al, and Levesque et al.
[25]  *Id.* at Section 6.2.
[26]  *Id.*

W:\25000-29999\27115\000\PLD\Daubert\18 Mos Daubert Exhibits\Daubert Motion re 18 months MEMO IN SUPPORT 2005-10-21.doc

methodological practice in the relevant scientific community, is fatally underpowered, and has an error rate as high as 80%. The analysis was created for litigation purposes only and is highly suspect. The data is convincing that ingestion causes cardiac events in the short term, and wholly unconvincing that there is an 18-month threshold. Accordingly, Plaintiff respectfully requests that the Court strike any opinion or fact testimony on this issue.

Respectfully submitted,

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX 77046
PH:   (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |

| | |
|---|---|
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 21st day of October, 2005.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| This Document Relates To  05-4046 | : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | : | MAG. JUDGE KNOWLES |

## NOTICE OF HEARING

Please take notice that, upon the pleadings, the depositions, and other matters of record, the undersigned will move the Court before the Honorable Judge Eldon E. Fallon, United States District Court for the Eastern District of Louisiana, 515 Rusk Street, Suite 8613, Houston, Texas 77002, on the 14th day of November, 2005, at 9:00 o'clock a.m., or as soon thereafter as counsel can be heard, for an order on the Plaintiff's Motion to Exclude Opinion Testimony That Vioxx® Cannot Cause Thrombotic Cardiac Events Unless Ingested Eighteen (18) Months or Longer, and for such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

_____
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024

W:\25000-29999\27115\000\PLD\Daubert\18 Mos Daubert Exhibits\Daubert Motion re 18 months NOTICE OF HEARING 2005-10-21.doc

1

Temporary address:

3411 Richmond Ave., Suite 460
Houston, TX 77046
PH:  (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

W:\25000-29999\27115\000\PLD\Daubert\18 Mos Daubert Exhibits\Daubert Motion re 18 months NOTICE OF HEARING 2005-10-21.doc

SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED