# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | : | |
| | : | SECTION: L |
| This Document Relates To   05-4046 | : | JUDGE FALLON |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | : | MAG. JUDGE KNOWLES |

## PLAINTIFF'S BRIEF REGARDING APPLICABLE STANDARD UNDER *DAUBERT*

MAY IT PLEASE THE COURT:

This brief is submitted by Plaintiff's Liaison Counsel on behalf of counsel for plaintiff, Evelyn Irvin Plunkett, and to accommodate such counsel.

PLAINTIFF, EVELYN IRVIN PLUNKETT, files this Brief in conjunction with other motions moving the Court to exclude expert testimony outlining the relevant case law applying the *Daubert* standard.

Plaintiff firmly believes that under *Daubert* and its progeny, many issues relating to the reliability of scientific evidence generally go to the weight of the evidence -- not its admissibility – and are best addressed by cross-examination. But, those expert opinions proffered by Merck & Co. and outlined in Plaintiff's motions are extraordinarily unreliable and are not admissible under the most liberal standards set forth by the Court in *Daubert*: (1) opinion testimony that Naproxen® is sufficiently cardioprotective to explain excess cardiac risk in VIGOR; (2) opinion testimony that Vioxx® cannot cause adverse thrombotic cardiac events unless ingested eighteen (18) months or longer; (3) opinion testimony that Vioxx® is the same as all NSAIDs regarding cardiotoxic effects; (4) opinion testimony that Merck could not provide risk information through labeling or marketing without prior approval of the federal Food and Drug Administration; (5)

testimony of Dr. David Silver; (6) testimony of Drs. Thomas M. Wheeler, J. Michael Gaziano, and Janet Arrowsmith-Lowe; and (7) testimony of Dr. Frank Lanza and Dr. Merlin Wilson.

## I. Statement of Relevant Facts

In April and May 2001, Richard Irvin was a new user of Vioxx®, which was first marketed in the United States by Merck & Co., Inc., in May 1999. Richard Irvin ingested 25 mg. Vioxx® for approximately 30 days before suffering sudden thrombotic cardiac death on May 15, 2001, at age 53. The Emergency Room Physician at Flagler Hospital in St. Augustine, Florida, requested an autopsy related to a death because the cause of death was not known with clinical certainty. The autopsy revealed an unattached coronary thrombus (clot) in the left anterior descending (LAD) coronary artery. There is no dispute that Richard Irvin suffered a thrombotic cardiac event during a period of ingestion of Vioxx®.

## II. Expert Testimony Must Be Reliable

Opinion testimony is initially governed by FED. R. EVID. 701-703. Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (West 2005). Rule 703 requires that the facts or data in the particular case upon which an expert bases an opinion or inference shall not be disclosed to a jury unless the

court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. FED. R. EVID. 703.

The United States Supreme Court requires the Court to act as the "gatekeeper" for testimony based upon "scientific, technical or other specialized knowledge." See Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); see also *Kumho Tire Co., Ltd. v. Carmichael*, 119 S. Ct. 1167 (1999). A trial judge must ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. *Daubert*, 509 U.S. at 589. Under *Daubert*, the Court may consider in determining the reliability of expert testimony: (1) whether the method "can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) the methodology's "known or potential rate of error," and "standards controlling the techniques operation"; and (4) whether the methodology has been generally accepted in the relevant expert community. *Daubert*, 509 U.S. at 593-95.

This Court has noted that a proponent of evidence must "demonstrate that the expert's findings and conclusions are based on the scientific method." *Berk-Cohen Associates v. Orkin Exterminating Co.*, No. 94-3090, 2004 WL 445132, at * 2 (E.D. La. March 10, 2004) (quoting *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc), *cert. denied*, 526 U.S. 1064 (1999)). The United States Supreme Court has held that while the determination of reliability is left to the discretion of the trial court; the trial court does not have to accept an opinion only by the *ipse dixit* of an expert's testimony. *General Electric v. Joiner*, 118 S. Ct. 512, 517-519 (1997).

Proper credentials are necessary but not sufficient to admit an expert's testimony. *Kuhmo Tire Co.. v. Carmichael*, 119 S. Ct. 1167, 1176-77 (1999). In *Kuhmo Tire*, the Supreme Court re-emphasized that expert testimony is only admissible when the proponent demonstrates by a

preponderance of the evidence that the expert is qualified, the evidence is relevant to the suit, and the factual basis, data, principles, methods and applications are all reliable. *Id.* at 1175-1179. "The objective of the gatekeeping function, therefore, 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Tolliver v. Naor*, No. 99-0587, 2001 WL 1345735, at *2 (E.D. La. Nov. 1, 2001) (Fallon, J.) (quoting *Kumho Tire*, 526 U.S. at 152).

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biometrix, Inc.*, 288 F.3d 239, 244 (5 Cir. 2002) (citations omitted). "The district court must focus on methodology, not conclusions." *In re Propulsid Liability Litigation*, 261 F.Supp.2d 603, 606 (E.D. La. 2003).

In *Pipitone v. Biometrix, Inc.*, 288 F.3d 239, 244 (5 Cir. 2002), the United States Court of Appeals for the Fifth Circuit reviewed the decision of the district court excluding the evidence of plaintiff's expert. In *Pipitone*, Thomas Pipitone and his wife brought suit against Biometrix, Inc., alleging that Biometrix's product, Synvisc, was defective. Synvisc is a replacement fluid for treatment of the knee which is rendered from rooster combs. After Mr. Pipitone's was injected with Synvisc, he contracted salmonella. The district court excluded the testimony of Dr. Millet, Mr. Pipitone's treating orthopedic surgeon, and Dr. Coco, an infectious disease physician who treated Mr. Pipitone during his hospitalization for salmonella. On appeal, the Circuit Court affirmed the trial court's decision regarding Dr. Millet but reversed the lower court's decision to disallow Dr. Coco's testimony.

In addressing *Daubert's* requirements, the Circuit Court noted that Dr. Coco had not tested his hypothesis that the syringe was contaminated with the infection, that no rate of error was known in relation to the hypothesis, and that no epidemiological studies relating to Pipitone's infection were performed. Rather, Dr. Coco conducted a literature search and after he found no studies arising from knee injection products, based his opinion on "mainly personal observations, professional experiences, education, and training," *Pipitone,* 288 F.3d at 247, Dr. Coco eliminated other possible causes of the infection and finally concluded that Mr. Pipitone contracted salmonella through the injection. The Circuit Court reasoned that the "lack of literature on injection-related salmonella infections of the joint does not undermine Dr. Coco's hypothesis" noting the Supreme Court's reasoning in *Kumho Tire. Id.* at 246. "It might not be surprising in a particular case, for example, that a claim made by a scientist has never been the subject of peer review, for the particular application as issue may never previously interested any scientist." *Kumho Tire,* 526 U.S. at 151. The Circuit Court held that Dr. Coco's opinion was sufficiently reliable to present to a jury and concluded that it would be up to the jury to decide whether they would accept or reject Dr. Coco's opinion.

Plaintiff urges the Court to take the same well-reasoned approach as in *Pipitone*. The Circuit Court viewing the unique factual basis for the opinion held that Dr. Coco's opinion was reliable. The underlying scientific basis for Plaintiff's claim in this case is quite different. First, unlike Mr. Pipitone who appeared to be the only person who contracted salmonella after receiving the knee injection, thousands[1] of individuals have suffered heart attacks as a result of ingesting Vioxx. Mr. Irvin's death is not an isolated case but part of arguably one of the largest public health debacles in the history of the drug industry. Secondly, unlike in *Pipitone* where no

---

[1] Estimates that between 88,000 and 144,000 persons have suffered from a heart attack or stroke while ingesting Vioxx® have been suggested.

W:\25000-29999\27115\000\PLD\Daubert\Applicable Standard\Applicable Standard Brief 2005-10-24.doc

5

relevant epidemiological studies existed, myriad epidemiological studies have addressed the adverse cardiovascular effects of Vioxx and other Cox-2 inhibiting drugs. Expansive epidemiological data is available. Plaintiff's experts base their opinions on numerous peer-reviewed and sufficiently-powered studies.

In *Vice v. Northern Telecom, Inc.*, the Court acknowledged that epidemiological evidence is the strongest evidence of causation.

> The Court agrees with NTI that, where it exists, the strongest evidence of a cause-effect relationship between a factor and a disease is epidemiological data, derived from studies carefully constructed to eliminate bias, demonstrating a positive, statistically significant exposure-response relationship.

*Vice*, No. 94-1235, 1996 WL 200281, at * 7 (E.D. La. April 23, 1996). Other district courts have found, however, that epidemiological data cannot support an inference that a suspected factor caused an injury unless:

> (i) the analysis of the data is statistically significant under scientifically accepted statistical norms; (ii) the statistical relationship is sufficiently strong to support a "more likely than not" inference; and (iii) the data being relied upon "fits" the facts of the plaintiff's individual case.

*Smith v. Wyeth-Ayerst Laboratories Co.*, 278 F. Supp.2d 684, 691 (W.D.N.C. 2003).

No epidemiological support exists for Defendant's hypotheses that Naproxen® is sufficiently cardioprotective to explain excess cardiac risk in VIGOR. The Naproxen theory has never been tested in a controlled clinical trial; has never been accepted as scientifically true in a peer-reviewed article and/or publication; has an unknown rate of error or has a high rate of error since it has been proven to the contrary in large epidemiological studies; and there is an overwhelming analytical gap between the underlying data and the opinion offered. Moreover, there is also no scientific evidence to support the hypothesis that Vioxx® cannot cause adverse thrombotic cardiac events unless ingested eighteen (18) months or longer. The 18-month

hypothesis is a *post hoc* subgroup analysis that is not generally accepted by the relevant epidemiologic and scientific community; was formulated for purposes of litigation; and is inconsistent with the results of prior and subsequent clinical trials and epidemiology studies. It is proper to attack an expert opinion where the methodology upon which is it based is faulty. *JRL Enterprises, Inc. v. Procorp Associates,* No. 01-2893, 2003 WL 21284020 (E.D. La. June 3, 2003) (Fallon, J.).

Though factually distinguishable, *Pipitone* is instructive in this instance – the Court's exercise of its gate-keeping responsibilities should not result in admissibility of expert testimony being too permissive or too restrictive -- but one of reasonableness based on the totality of the circumstances. In light of the significant number of studies that have taken place, many of which were designed and sponsored by Merck, Merck should not be allowed to assert expert opinions and theories that are not supported by the resulting epidemiological data.

The Court's decision in *In re Propulsid Liability Litigation,* 261 F.Supp.2d 603 (E.D. La. 2003), is instructive. The science underlying the plaintiff's claim was undeveloped and "inhibited since peer review ha[d] not occurred." *Propulsid,* 261 F. Supp.2d at 615. The Court found that the experts in question had "untested hypotheses," that they had left "too great a gap in their theory of biologic plausibility to support their arguments," that they failed to identify the mechanism of action, that there was "no known or potential rate of error" and finally that there was "no general acceptance of their methods in the scientific community." *Id* at 615-617. The Court excluded the testimony of the plaintiff's experts as unreliable under *Daubert* and not relevant to the plaintiff's case. *Id.* at 618.

Unlike in *Propulsid*, the science related to Vioxx is well developed. As noted above, myriad scientific data are available. Similarly, the expert theories proffered by Merck and

outlined above are "untested hypotheses," there is "too great a gap" in their theories and scientific data to support their arguments," have "no known or potential rate of error" and finally, do not have "general acceptance of their methods in the scientific community. Where an expert opinion is based on data, methodology or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate an exclusion of the opinion as unreliable. See *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-267 (2nd Cir. 2002); see also *Heller v. Shaw Indus.*, 167 F.3d 146, 155 (2nd Cir. 1999).

"The test of reliability is flexible and bends according to the particular circumstances of the testimony at issue." *Tanner v. Westbrook*, 174 F.3d 542, 547 (5 Cir. 1999) (citing *Moore v. Ashland Chemical, Inc.* 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions."

### III.     Conclusion

Many issues relating to the reliability of scientific evidence generally go to the weight of the evidence -- not its admissibility – and are best addressed by cross-examination. But, as indicated by Plaintiff's motions, expert opinions asserted by Merck & Co. are extraordinarily unreliable and are not admissible under the most liberal standards set forth by the Court in *Daubert*:   (1) opinion testimony that Naproxen® is sufficiently cardioprotective to explain excess cardiac risk in VIGOR; (2) opinion testimony that Vioxx® cannot cause adverse thrombotic cardiac events unless ingested eighteen (18) months or longer; (3) opinion testimony that Vioxx® is the same as all NSAIDs regarding cardiotoxic effects; (4) opinion testimony that Merck could not provide risk information through labeling or marketing without prior approval

of the federal Food and Drug Administration; (5) testimony of Dr. David Silver; (6) testimony of Drs. Thomas M. Wheeler, J. Michael Gaziano, and Janet Arrowsmith-Lowe; and (7) testimony of Dr. Frank Lanza and Dr. Merlin Wilson. Therefore, Plaintiff urges the Court to grant her motions and exclude the expert opinions referred to therein.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
Temporary address:
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH:    (713) 877-1843
FAX:  (713) 871-9750
**Plaintiffs' Liaison Counsel**

| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
|---|---|

W:\25000-29999\27115\000\PLD\Daubert\Applicable Standard\Applicable Standard Brief 2005-10-24.doc

| | |
|---|---|
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

### PLAINTIFFS' STEERING COMMITTEE

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 24th day of October, 2005.