UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES: | | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY CLAIMED AS PRIVILEGED ON MERCK'S PRIVILEGE LOG

I.  **INTRODUCTION**

On July 27, 2005, plaintiffs sent a twenty (20) page letter to Merck's attorneys notifying them, in factual and legal detail, about how Merck's New Jersey privilege log was inadequate (overly vague) such that production of the same log in the MDL would constitute a procedural waiver of their privilege claims.[1] Plaintiff's July 27th letter also gave notice that many of Merck's privilege claims were clearly improper, and substantively invalid.[2] Subsequent thereto, plaintiffs wrote additional letters, held meet and confers, and filed updates with the Court again warning Merck about these procedural and substantive privilege log issues.[3] Nonetheless, Merck produced the same procedurally inadequate (overly vague) log containing the same substantively invalid privilege claims (e.g., no authors/recipients listed). Merck has had three (3) months to produce an adequate privilege log with valid privilege claims, however, it has not done so. Now,

---

[1] *See* Exhibit "B" to the transcript of the 9/22/05 privilege log Meet and Confer previously submitted to the Court on 09/28/05 with the PSC Memorandum Report Regarding Defendant's Privilege Log Issues.

[2] Id.

[3] *See* transcript of the 9/22/05 privilege log Meet and Confer (with exhibits B & D attached thereto) previously submitted to the Court on 09/28/05 with the PSC Memorandum Report Regarding Defendant's Privilege Log Issues.

W:\25000-29999\27115\000\PLD\Reply Brief re MTC re Privilege Log 2005-10-25.doc

1

one (1) month before the first MDL trial, Merck admits that its privilege log is inadequate, and that it will produce a new log "within the next several weeks." Merck's Opposition, p. 1.

There are two (2) different reasons why Merck should be compelled to produce documents listed on its privilege log: 1) Merck has waived its privilege claims by producing an inadequate privilege log, AND/OR 2) the vast majority of the privilege claims made by Merck are substantively invalid, and, in fact, are invalid on their face. Plaintiffs respectfully suggest that the Court should follow the precedent of the Fifth Circuit and Eastern District of Louisiana and order that the admitted inadequacies waive Merck's privilege claims. In the alternative, given the invalid nature of Merck's privilege claims - which have been put into 8 categories by plaintiffs (Plaintiff's Memorandum, p. 3), and Merck's total failure of proof with respect these claims, the Court should order that all documents within those categories are not privileged and must be produced.

## II. SINCE MERCK ADMITS ITS LOG IS INADEQUATE, THE COURT SHOULD FIND THAT MERCK HAS WAIVED PRIVILEGE.

Throughout its Opposition, Merck admits that its privilege log is both inadequate and overbroad. Now, Merck proposes a "re-review" of its log, by which it will "re-designate" documents. Merck's Opposition, pp. 3-5. As part of this "re-review," Merck will provide "more complete descriptions where necessary," including for those entries which Merck concedes "do not describe the subject matter of the communication . . ." Merck's Opposition, p. 3. Merck also proposes to explain the basis of the privilege claim for those entries which Merck admits lack (purportedly inadvertently) that information. Id., at p. 5. Merck also proposes to correct its "insufficient entries" with regard to subject matter of documents claimed as privileged. Id., at pp. 5-6. The end result of this "re-review" is that "Merck expects that by the time it is finished with this project, the number of privileged documents will be substantially reduced." Merck's

Opposition, p. 4. Merck's promises concede that the current log fails to provide the information required and, in any event, improperly asserts privilege over many documents.

The remedy for these clear inadequacies is not, however, to allow Merck to try again. Merck expects to complete its proposed "re-review" and new log within **"the next several weeks."** Merck's Opposition, p. 1. The first MDL Vioxx trial begins on November 29, within the **next few weeks.** Thus, Merck's proposal is just an attempt at victory by delay. By restarting the privilege process from scratch, Merck ensures that the Court will not be able to decide the status of any documents (even the substantial number of documents Merck admits should not be on the log!) in time for the first MDL trial. This will prevent plaintiffs from putting forward their strongest possible case, and undercut the value of the first Vioxx verdict as a barometer for other cases.

The law provides clear relief for inadequate privilege logs. A party cannot suppress evidence by promising to someday -- i.e., when it is too late to allow a court to timely judge privilege claims -- provide the legally required log. In such circumstances, the proper remedy is a finding that Merck has waived any claim of privilege. United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (waiver found where the privilege log contained only "cursory description[s]" of the contents of the documents withheld from production); Stempler v. Collect America, Ltd., 2000 WL 288377, at *2 (E.D. La. March 15, 2000) ("If the privilege log is not specific enough, the Court may find that Dendy has waived all claims of privilege."); Willemijn v. Apollo Computer, 707 F. Supp. 1429, 1443 (D. Del. 1989) (ordering production solely on grounds documents were inadequately described on privilege log).

Merck was on fair notice regarding both the information required on a privilege log by this District and that the failure to provide that information would waive all privilege claims.

The Fifth Circuit held in United States v. El Paso Co., 682 F.2d 530, 541 (5th Cir. 1982) that the blanket assertion of privilege would not be tolerated as "[s]uch assertions disable the court and the adversary party from testing the claim of privilege." The Fifth Circuit acknowledged that a prior case had relaxed that rule because of confusion regarding tax summons enforcement proceedings, but warned future litigants of their obligations:

> We cautioned, however, that 'future litigants who make only blanket assertions of privilege. . . should not expect such grace.' El Paso had fair notice of the obligation to make its privilege claim precise. We cannot excuse its failure to do so.

This District has held litigants to the standard set forth in El Paso. In In re Papst Licensing, 2001 WL 1135268, at * 2 (E.D. La. Sept. 19, 2001), the court found that a privilege log must be produced in the "manner described by Professor Rice in P. Rice, Attorney-Client Privilege in the United States § 11.8." That standard, as set forth in Plaintiffs' Memorandum, p. 10, requires far more information than Merck provides. In Felham Enterprises (Cayman) Ltd. v. Certain Underwriters of Lloyd's, the court found that simple descriptions -- very similar to thousands on Merck's log -- like "attorney report," "client inquiry," "payment" and "attorney communication," were not sufficient to support a claim of privilege. 2004 WL 2360159, at *3 (E.D. La. October 19, 2004). Accordingly, the court found that any claim of privilege had been waived. Similarly, in Stempler v. Collect America, Ltd., the Eastern District of Louisiana found that "if the privilege log is not specific enough, the Court may find that Dendy has waived all claims of privilege." Stempler, 2000 WL 288377, at *2.

Plaintiffs alerted Merck, in a letter dated July 27, 2005, that the logs produced in the New Jersey litigation were insufficient and would, if served in the MDL, lead plaintiffs to file a

motion asking that the Court find waiver of the privilege.[4] Since Merck went ahead and provided essentially the same logs in the MDL, logs that Merck now admits are legally inadequate, the Court should find waiver and order all documents produced.

### III. MERCK'S ARGUMENTS THAT THE CATEGORIES SET FORTH ARE PRIVILEGED ARE UNSUPPORTED BOTH FACTUALLY AND LEGALLY.

Merck's argument that the documents in the categories set forth by plaintiffs are privileged rests upon Merck's ipsit-dixit characterization of the documents as being predominantly legal in nature. Merck claims that the communications are "specifically related to obtaining, communicating or action upon legal advice" (Merck's Opposition, p. 9), that they are communications "made to an attorney for the primary purpose of obtaining legal advice or legal opinion, i.e., the very types of documents on Merck's privilege log" (Merck's Opposition, p. 11), or that they "reflect Merck internal communications regarding legal advice." Merck's Opposition, p. 5. Of course, Merck's log proves otherwise. Merck concedes that the log claims privilege over non-privileged documents, and fails to provide required subject matter descriptions. Merck's Opposition, pp. 3-5. The log does not support the post-hoc characterization of the documents set forth in Merck's Opposition.

In the Fifth Circuit, the attorney-client privilege is "strictly confined within the narrowest possible limits . . . [because it is] 'an obstacle to the investigation of the truth.'" United States v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976) (citations omitted). The "burden of demonstrating the applicability of the privilege rests on the party who invokes it." Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir. 1985). A "failure of proof as to any element causes the claim of privilege to fail." Bulk Lift Int'l v. Flexcon & Systems Inc., 122 F.R.D. 482, 492 (W.D. La. 1988).

---

[4] *See* Exhibit "B" to the transcript of the 9/22/05 privilege log Meet and Confer previously submitted to the Court on 09/28/05 with the PSC Memorandum Report Regarding Defendant's Privilege Log Issues.
W:\25000-29999\27115\000\PLD\Reply Brief re MTC re Privilege Log 2005-10-25.doc

Not only does Merck's privilege log fail this proof requirement, so does Merck's Opposition. The isolated, foreign cases Merck relies upon stress the detailed showings made by the party seeking to suppress discovery. In Eutectic Corp. v. Metco, Inc., 61 F.R.D. 35 (E.D.N.Y 1973) (cited in Merck's opposition, p. 8), the court accepted the withholding party's claim that documents were specifically for the purpose of obtaining legal advice only because the court felt "constrained to accept [that party's] unconverted affidavit showing the narrow function of these documents." Eutectic Corp., 61 F.R.D. at 39. Similarly, in Santrade, Ltd. v. Gen. Elec. Co., 150 F.R.D. 539 (E.D.N.C. 1993) (cited in Merck's Opposition, p. 7), the court relied upon numerous affidavits submitted by the party opposing discovery. Santrade, Ltd., 150 F.R.D. at 543. Merck submits nothing to justify its admittedly overbroad claims, relying only on its naked assertions that the communications at issue somehow are specifically related to legal advice. Merck cannot prevail with such a tactic. It is clear in the Fifth Circuit that privilege must be "specifically asserted with respect to particular documents" and cannot be "tossed as a blanket over an undifferentiated group of documents." El Paso Co., 682 F.2d at 539 (citing United States v. Davis, 636 F.2d 1028, 1044 n. 20 (5th Cir.), cert. denied, 454 U.S. 862 (1981)); see also In re Shell Refinery, 812 F. Supp. 658, 661 (E.D. La. 1993) ("The asserting party must adequately substantiate the claim of privilege; a party cannot rely on a blanket assertion of privilege.").

### IV. THE COURT SHOULD ORDER PRODUCTION OF THE DOCUMENTS IN THE CATEGORIES SET FORTH BY PLAINTIFFS

Under the most persuasive and controlling authority, and indeed, even much of the case law relied upon by Merck, the categories of documents set forth by plaintiffs are not, especially in light of Merck's total failure of proof, privileged.

A.  **Merck's Failure to Provide The Fundamental Information Needed to Establish Privilege Defeats Its Blanket Claims**

Merck does not dispute that documents that lack basic information cannot be privileged. More than **8,000** entries on the Merck log identify neither author nor recipient, information that "<u>must</u> be disclosed in order to factually prove the elements of the privilege." 2 P. Rice, <u>Attorney-Client Privilege in the United States</u> § 11.6, pp. 46-47 (2d ed. 1999). This District is clear that claims of privilege cannot be maintained for the category of documents where Merck has failed to identify the author and/or recipient. <u>Freeport-McMoran Sulphur, L.L.C. v. Millen Energy Equip. Res.</u>, 2004 WL 1299042, at *11 (E.D. La. 2004) ("[T]here is no way for the Court to know who prepared the draft insert, for whom it was prepared, and whether it was prepared for the purpose of rendering or seeking legal advice. Freeport has failed to establish that a privilege applies here."), <u>reconsideration denied</u>, 2004 WL 1488665 (June 30, 2004).

Similarly, Merck does not dispute that its many entries that provide no description of the subject matter of the withheld document are on their face insufficient to establish privilege. <u>See</u> <u>e.g.</u> Ex. H-3 to Irpino Certification (several entries describe subject matter only as "project."). This lack of subject matter disclosure precludes privilege. <u>Felham Enterprises (Cayman) Ltd. v. Certain Underwriters of Lloyd's</u>, 2004 WL 2360159, at *3 (E.D. La. October 19, 2004).

Merck contends that the numerous documents it has withheld which have no legal personnel "listed as having authored or received the communication" are nonetheless privileged because there is no requirement that the documents reflect that they were sent to or from an attorney. Merck's Opposition, pp. at 6-7. Although the attorney-client privilege may in limited circumstances extend to communications between non-lawyer employees, those communications must still meet the basic requirements of privilege law -- essentially, that the document reflects confidential communications between a client and its attorney regarding legal advice. The

privilege in the corporate context is confined to certain -- and identifiable -- individuals capable of acting as agents of their corporate employer.

Merck is required to establish that the Category 2 documents (between non-attorneys) contain privileged legal requests or advice communicated in confidence between Merck employees who are corporate agents **for purposes of the privilege**. Although in Upjohn Co. v. United States, 449 U.S. 383, 392 (1981) the Supreme Court rejected the highly-restrictive "control group" test, the privilege in the corporate context does not extend to any and every corporate employee. Merck contends that Upjohn "ruled unequivocally that the attorney-client privilege protects all communication pertaining to legal advice made by and to all corporate employees as agents of the corporate client" (Merck Opposition, p. 7). However, "[n]ot all corporate employee communications with counsel that seem to be within general privilege doctrine would meet the corporate privilege test." John W. Gergacz Attorney-Corporate Client Privilege § 3.103 (3d ed. 2000). The Court expressly limited its ruling to the facts before it and refused to articulate any general test, much less the overly-broad one advocated by Merck. Id. § 3.74-.75.

The cases upon which Merck relies only hold that a particular non-attorney agent of a corporation may communicate privileged legal advice to another particular corporate agent. In re Grand Jury 90-1, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (corporate president may relate to board of directors legal advice given by corporation's counsel); Bank Brussels Lambert v. Creidt Lyonnais (Suisse) S.A., 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (same) (citing In re Grand Jury 90-1); Eutectic Corp. v. Metco, Inc. 61 F.R.D. 35, 38 (E.D.N.Y. 1973) (noting that proposed Federal Rule of Evidence 503 -- which was not adopted -- extends privilege to "representatives

of the client"). These cases do not support Merck's position that the privilege somehow extends to all communications between unknown and unidentified individuals.

Here, Merck's privilege log, much less its current Opposition, simply fail to establish that the withheld documents reflect communications between such qualified corporate agents. Merck offers nothing more than legal argument without the necessary factual support of its privilege claims. In such circumstances, the court has no option but to order the documents produced.

Finally, Merck places too much reliance on the decision from Judge Higbee in the New Jersey litigation. First, that decision has no precedent here as it was from a state district court applying New Jersey law. Second, the dispute before Judge Higbee involved a single document, which the Judge had before her. None of the critical issues here -- the insufficiency of Merck's logs, Merck's complete failure of proof with respect to whether the withheld communications are primarily legal in nature, and the timing of Merck's ploys in face of an impending MDL trial -- were before Judge Higbee. Additionally, Judge Higbee merely ruled that one sentence within the one document could remain redacted – the remaining portions of the document were not redacted. (Exhibit "A" to Merck's opposition at p. 32). In contrast, Merck's privilege log contains over 21,000 entries where the entire document was withheld. This begs the question: How many of Merck's 21,000+ entirely withheld documents only contain one sentence (or a few sentences) truly privileged?

> **B.  Merck Fails To Show That The Primary Purpose of Its Withheld Scientific Documents is Legal.**

Before any communication can be privileged, its primary purpose must be to obtain or disseminate legal advice. In re Grand Jury Proceedings, 517 F.2d 666, 670 (5th Cir. 1975). Under this standard, Merck cannot justify inclusion on its privilege log of an alarming number of documents that deal with scientific evidence or Merck's "study issues." See Anthony Irpino

Certification, paragraph 4 (over 9000 privilege claims asserted over "study issues"). Merck contends that these documents embody "communications made to an attorney for purposes of obtaining legal advice or legal opinion" (Merck's Opposition, p. 11), but Merck's log belies that characterization. A vast number of entries involving scientific evidence are from one scientist to another, with no lawyer or legal personnel in sight. See e.g., Exhibit F-3 to memo in support of motion to compel. Most of the authorities cited by Merck concern direct communications to or from attorneys, thus providing no support for Merck's attempt to withhold communications solely between scientists about epidemiology, draft articles or other study issues. See AT&T Corp. v. Microsoft, Corp., 2003 WL 21212614 (N.D. Cal. Apr. 18, 2003); Hydraflow, Inc. v. Enidine, Inc. 145 F.R.D. 626 (W.D.N.Y. 1993); Laitram Corp. v. Hewlett-Packard Co., 827 F. Supp. 1242 (E.D. La. 1993).

Moreover, the cases on which Merck relies are largely patent infringement cases. In the patent context, unlike the product liability arena, the legal issues are, by definition, inherently scientific or technical and the communications from the patent applicant to its attorney necessarily center on scientific or technical issues. Even so, "the weight of authority favors disclosure of draft patent applications," in part because "the advice and services sought are not purely, or even primarily, legal." Saxholm AS v. Dynal, Inc., 164 F.R.D. 331, 335 (E.D.N.Y. 1996).

Merck also argues that its massive claims of privilege over scientific evidence is justified because the documents "reflect advice" from lawyers. Merck's Opposition, p. 10. The very cases Merck relies upon require that Merck substantiate, not just argue, that fact. Merck is obligated to support its claims by "submission of affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege." Saxholm AS, 164 F.R.D. at

333; accord AT&T Corp. v. Microsoft, Corp., 2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) (noting that party asserting privilege must provide not only an adequate privilege log, but also "affidavits describing the confidential nature of the documents"). Here, as in Smith v. Texaco, Inc. -- a case relied upon by Merck -- Merck's "emphatic and persistent arguments on points of law are curiously combined with a singularly evasive approach to substantiating its [privilege] claims." 186 F.R.D. 354, 356 (E.D. Tex. 1999).

Apart from the fact that Merck simply provides no support on its log or otherwise that its scientific documents "reflect" privilege, authority Merck itself cites repudiates Merck's position that the vast numbers of scientific documents could have a primary purpose that is legal in nature. Santrade, cited by Merck in its Opposition at page 7, clarifies first that technical or business information generally lacks the predominant legal purpose required before it is privileged. Santrade, 150 F.R.D. at 543 ("Some of the information is technical or business information that is not protected by the attorney-client privilege. . . ). Santrade also repudiates Merck's many claims of privilege over drafts of manuscripts or reports. Santrade holds that "preliminary drafts of published data, including attorney's notes necessary to the preparations of the documents, are discoverable." Santrade, 150 F.R.D. at 544 (citing Republican Party of North Carolina v. Martin, 136 F.R.D. 421 (E.D.N.C. 1991)). Indeed, Merck makes numerous claims that entire "study issue" documents are privileged, even some sets of data, as if its scientists had been deputized into the legal department. See e.g. entries for Doc. No. 005215, 0052194 and 0052216 on Ex. D to Irpino Certification. Obviously, a claim of privilege over entire study documents or collections of data suppresses underlying facts, which are not privileged. Upjohn Co., 449 U.S. at 395 (privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").

### C. Public Relations and Marketing Documents

Merck claims the public relations and marketing documents it withholds "reflect confidential communications between Merck employees and Merck lawyers for the purpose of seeking legal advice." Merck's Opposition, p. 12. But again, Merck offers no support for its contention. Generally, public relations documents are not privileged because "handling publicity and dealing with the media are typically business concerns." Burroughs Wellcome Co. v. Barr Labs, Inc., 143 F.R.D. 611, 619 (E.D.N.C. 1992). The Eastern District so held in Freeport-McMoran Sulphur L.L.C. even with respect to draft press releases that contained the handwritten comments of counsel, noting that the attorney comments "represent no more than marketing advice as opposed to legal advice." 2004 WL 1299042, at *16. Thus Merck's reliance on In re Adobe Sysems, Inc. Secutrities Litigation, 1991 U.S. Dist LEXIS 15929 (N.D. Cal. 1991), is contrary to the law of this District.

Public relations and promotional communications lack not only the requisite legal advice, but also the necessary confidentiality. Thus, "a draft press release submitted to plaintiff's legal department for review is not privileged because it was not intended to be confidential." Burroughs Wellcome Co., 143 F.R.D. at 619. While Merck relies upon In re Kidder Peabody Sec. Lit., 168 F.R.D. 459, 474 (1996), to argue against this recognized principle (Merck Opposition, p. 14), Freeport-McMoran Sulphur, L.L.C. conclusively rejects that argument. In Freeport-McMoran Sulphur, L.L.C., Magistrate Roby found that draft press releases, even though forwarded to an attorney, were not privileged: "a press release, by its very nature, is meant for the public eye and is not privileged." 2004 WL 1299042, at *24 (E.D. La. 2004).

Merck also relies on In re Grand Jury Subpoenas Dated March 24, 2003, 265 F. Supp. 2d 321 (S.D. N.Y. 2003), which presents wholly different facts. In that case, attorneys had hired the

W:\25000-29999\27115\000\PLD\Reply Brief re MTC re Privilege Log 2005-10-25.doc

12

public relations firm to assist in their representation of the client, who was under investigation. The court found that certain public relations communications were privileged, not because public relations documents are privileged per se, but because under the particular circumstances, the public relations firm qualified as one of the persons or entities "assisting the lawyer in the rendition of legal services" to which "in appropriate circumstances [the privilege] extends." Id. at 325. Here, Merck claims privilege over public relations documents loosely distributed between non-attorneys, unrelated to any legal proceeding. See Anthony Irpino Opposition, para. 7 (Merck lodges over 15,000 privilege claims over marketing, promotional or public relations documents). Is it reasonable to believe that the primary purpose of these documents is to obtain or disseminate legal advice? Either way, no such showing has been made by Merck.

### D. Regulatory Documents

Merck's argument that nearly 5,000 of its regulatory documents are privileged runs afoul of the universally accepted rule that business activities lack the primary legal nature required before there can be privilege. Simon v. G.D. Searle, Co., 816 F.2d 397, 403 (8th Cir. 1987) ("[A] number of courts have determined that the attorney-client privilege does not protect client communications that relate only to business or technical data."). Given the in-house counsel's "blurred" role (often a business advisor), even where communications involve both a business policy and a legal evaluation, the "business aspects of the decision are not protected simply because legal considerations are also involved." Hasty v. Lockheed Martin, 1999 WL 60322, at *2 (citing Hardy v. New York News, Inc., 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987)). Louisiana courts have followed this rule and rejected attempts to withhold information about regulatory matters on grounds of privilege. See, e.g., Guzzino v. Felterman, 174 F.R.D. 59, 63 (W.D. La. 1997) (information about internal regulatory investigation not protected, in part because "it was


conducted in the ordinary course of business and/or to prepare for potential investigation by the SEC and NASD").

The cases cited by Merck do not help its attempt to suppress regulatory information. In re Buspirone Antitrust Litigation, 2002 U.S. Dist. LEXIS 23463 (S.D.N.Y. 2002) involved documents that were expressly addressed to patent counsel. Most of Merck's withheld regulatory documents, as with all other categories of Merck documents, are to and from non-legal personnel. See, e.g., entries for Doc. Nos. 0420785 and 0420791 on Ex. F-4 to memo in support of motion to compel. Indeed, Buspirone suggests such communications are not privileged as they seek non-legal personnel to respond to problems or issues raised in the document. In re Buspirone Antitrust Litigation, 2002 U.S. Dist. LEXIS 1413 at *9 ("Where non-legal personnel are asked to provide a response to a matter raised in a document, it cannot be said that the 'primary purpose' of the document is to seek legal advice."). Likewise with Andritz Sprout-Bauer v. Beazer E., Inc., 174 F.R.D. 609, 635-36 (M.D. Pa. 1997). In that case, all communications at issue were either received by, sent to or circulated among counsel. Andritz suggests wider circulation, as seen with Merck's documents, defeats privilege. Andritz, 174 F.R.D. at 635-36 ("Such documents are protected by the attorney/client privilege so long as they were not circulated to other individuals outside this circle who did not have a need to know what decisions were made or provide input and so long as Brett was acting solely in the role of legal advisor in receiving or generating such documents.").

Finally, McCaugherty v. Siffermann, 132 F.R.D. 234 (N. D. Cal. 1990) weighs against Merck's massive claims. In McCaugherty, the Magistrate held that even communications directly between counsel and federal regulators (in that case the FSLIC and the FADA) might not be privileged since the communications had a business goal. The court held that "in this

setting where there is a clear business purpose . . . the court should sustain an assertion of privilege only when there is a clear evidentiary predicate for concluding that each communication in question was made primarily for the purpose of generating legal advice." McCaugherty, 132 F.R.D. at 238. Merck certainly as not met that burden.

The Fifth Circuit repudiated Merck's suggestion that regulatory information merely sent to "corporate counsel in order to keep them apprised of ongoing business developments" is privileged (Merck Opposition, pp. 15-16, citing In re Buspirone Antitrust Litigation, 2002 U.S. Dist. LEXIS 1413 at * 12. In Davis, 636 F.2d at 1040, the Fifth Circuit observed that documents not otherwise protected by the privilege are not immunized from discovery by mere delivery to the hands of an attorney. In Guzzino, the Western District of Louisiana Federal District Court relied upon Davis to hold that information concerning a regulatory investigation was not privileged, even if it was forwarded to the law department. Guzzino, 174 F.R.D. at 62.

### V.   IN CAMERA REVIEW, IF STILL NECESSARY, CANNOT WAIT MERCK'S "RE-REVIEW."

Merck proposes that the Court undertake a review of withheld documents. Merck's Opposition, p. 1 ("Merck has no objection to an in camera review of a truly random selection of documents."). Such an effort is not necessary, as set forth above, there are compelling reasons for the Court to find: 1) all Merck privilege claims are waived or 2) the documents that fall within the categories set forth by plaintiffs are not privileged and must be produced. If the Court finds that neither of plaintiffs' claims have merit, and decides to conduct random in camera review, two conditions argued by Merck must be rejected. First, the random in camera review cannot await Merck's "re-review" of its privilege claims. Obviously waiting the "next several weeks" (Merck Opposition, p. 1) before commencing the in camera review simply rules out use of any wrongly-withheld documents in the upcoming MDL trial. Second, any random

selection cannot be from Merck's proposed revised log. Merck can too easily skew any sample by deciding, after the Court has decided to conduct a random sampling, the pool of documents from which the sampling will occur. Finally, the results of the Court's determination over the documents sampled from the current log must be extrapolated to the documents as a whole. See State ex rel Humphrey v. Philip Morris Inc., 606 N.W.2d 676 (Minn. App. 2000), pet. for review denied, 2000 Minn. LEXIS 271 (Minn. 2000) (affirming court's use of a "category approach" to judge the validity of defendants' privilege claims over 230,000 documents).

## VI.   CONCLUSION

For the foregoing reasons, the PSC respectfully requests that the Court order that Merck has waived its claims of privilege or, in alternative, find that the categories of Merck privilege claims described herein are not privileged and order the immediate production of documents falling with each such category.

Respectfully submitted,

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:   (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| Richard J. Arsenault, Esq. | Gerald E. Meunier, Esq. |
|---|---|
| P.O.Box 1190 | Energy Centre |
| 2220 Bonaventure Court | 1100 Poydras Street, Suite 2800 |
| Alexandria, LA 71309-1190 | New Orleans, LA 70163-2800 |
| PH: (318) 487-9874 | PH: (504) 522-2304 |
| FAX: (318) 561-2591 | FAX: (504) 528-9973 |

W:\25000-29999\27115\000\PLD\Reply Brief re MTC re Privilege Log 2005-10-25.doc

| | |
|---|---|
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

<u>**PLAINTIFFS' STEERING COMMITTEE**</u>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 25th day of October, 2005.