FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 28  PM 4: 11

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** | * | |
| **Case No. 05-4046\*** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| **EVELYN IRVIN PLUNKETT** | * | |
| as Personal Representative of the Estate of | * | |
| **RICHARD IRVIN, JR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MERCK & CO., INC.'S MOTION TO EXCLUDE TESTIMONY OF OF BENEDICT R. LUCCHESI, M.D., PH.D., M.S., F.A.H.A.

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to

Rule 702 of the Federal Rules of Evidence, hereby moves to exclude the testimony of plaintiff's

expert Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A.  The facts and law supporting this

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

789660v.1

motion are more fully set forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

Respectfully submitted,

Phil Wittmann

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
4041 Essen Lane
One United Plaza, Suite 501
Baton Rouge, Louisiana 70809
Phone:  225-490-8900
Fax:      225-490-8960

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:      (202) 434-5029

Attorneys for Merck & Co., Inc.

789660v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion to Exclude Testimony of Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 28th day of October, 2005.

*Phil Wittmann*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:  VIOXX** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** | * | |
| **Case No. 05-4046*** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| **EVELYN IRVIN PLUNKETT** | * | |
| as Personal Representative of the Estate of | * | |
| **RICHARD IRVIN, JR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. TO EXCLUDE
TESTIMONY OF BENEDICT R. LUCCHESI, M.D., PH.D., M.S., F.A.H.A.**

**I.      INTRODUCTION.**

Plaintiff has proffered Dr. Lucchesi, a pharmacologist, as an all-purpose expert who

purports to have formed opinions on a host of topics ranging from medical causation to a broad

array of non-scientific issues such as advertising and drug pricing.  Dr. Lucchesi's opinions on

non-scientific matters fall, by his own admission, well outside his expertise and have no reliable

scientific basis as required by Federal Rule of Evidence 702 and by *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  They consist only of his inferences and conclusions

drawn from documents that plaintiff hopes to offer into evidence and his irrelevant personal judgments on the propriety of Merck's conduct in developing and marketing Vioxx®. Dr. Lucchesi's opinions on causation are likewise unreliable and inadmissible. For the reasons discussed in this memorandum, his testimony must be excluded.

## II.    THE LEGAL STANDARD.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. As a threshold matter, Rule 702 requires exclusion of testimony beyond a witness's expertise. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (trial court properly excluded property appraisal testimony since witness not a licensed appraiser or real estate broker and lacked training or formal schooling in appraisal methods). Once the proponent of evidence proves that the offered testimony is based on sufficient facts or data and within the expert's actual expertise, he or she must then "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 589, the Supreme Court explained that district courts must act as gatekeepers to ensure that expert testimony is both relevant and reliable. In carrying out this function, courts may and should consider the following non-exclusive factors: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the theory or technique's degree of acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94; *Moore*, 151 F.3d at 275; *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 605-06 (E.D. La. 2003). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the Supreme Court further explained that the objective of *Daubert*'s gatekeeping requirement is "to

make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

As discussed below, Dr. Lucchesi's proposed testimony fails to meet these legal standards. For that reason, his testimony must be excluded.

## III.   TESTIMONY FROM DR. LUCCHESI THAT PURPORTS TO STATE WHAT MERCK KNEW OR WHETHER MERCK ACTED PROPERLY IN DEVELOPING AND MARKETING VIOXX IS NOT ADMISSIBLE UNDER RULE 702.

Dr. Lucchesi's report and deposition confirm that he is prepared to offer his personal views on a breathtakingly wide variety of non-scientific topics. The subjects that Dr. Lucchesi intends to address range from Merck's knowledge and state of mind, to whether the manner in which Merck developed and marketed Vioxx conformed with Dr. Lucchesi's personal standards of appropriate conduct, to what the content of the warning applicable Vioxx should be in physician prescribing information, patient information in package inserts, and even consumer advertising.

Dr. Lucchesi states that he was "asked to review pertinent materials and formulate opinions relating to the . . . conduct of Merck relating to its testing, research and marketing of Vioxx." (Expert Report of Dr. Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A ("Lucchesi Report") at 9, attached as Ex. 3 to the Declaration of Phillip A. Wittmann in Support of Merck's Motion to Exclude Testimony of Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. ("Wittmann Decl.").) His report and his deposition testimony are rife with assertions of what Merck knew about the alleged cardiovascular risks associated with Vioxx and with value judgments on the propriety of "the conduct of Merck …related to Vioxx." (*Id.* at 10.) For example, he states that:

3

- "Merck was either actually aware or should have been aware based on available scientific literature, of the potential vascular and hemostatic (prothrombotic) responses associated with Vioxx before placing this product on the market." (*Id.*)

- "Merck did not conduct, or if conducted did not publish, the necessary testing, and its failure to do so was and is beneath the standard of care, contrary to industry standards and good clinical practice." (*Id.*)

- "The DSMB minutes in the VIGOR trial show that Merck had actual knowledge before November of 1999 that vascular risks were present in Vioxx users. Merck's conduct as it relates to these data is questionable and put consumers as patients enrolled in the clinical trials at unnecessary risk." (*Id.* at 14.)

- "Merck should have avoided direct to consumer marketing." (*Id.* at 18.)

- "Vioxx should have undergone more extensive study at the basic level prior to initially marketing Vioxx, as well as post-marketing." (*Id.*)

- "Vioxx should contain a strong warning to physicians that patients with cardiovascular disease or risk factors for cardiovascular disease may be at increased risk of a thrombotic event when taking Vioxx.' There should also be "[a]n additional black box warning." (*Id.* at 21.)

Dr. Lucchesi's opinions in all of these areas have no proper place in this trial. Dr. Lucchesi is a professor of pharmacology. He is not qualified to state what Merck knew, and he is not qualified to opine on the propriety of Merck's actions with respect to Vioxx. Testimony from Dr. Lucchesi on these matters would not "assist the trier of fact," as Rule 702 requires. Instead, admitting such opinions would simply permit Dr. Lucchesi in effect to usurp the function of the jury. His testimony on Merck's knowledge and his personal value judgments do not meet the requirements for admissibility laid down in Rule 702 and for that reason must be excluded.

### A.  Dr. Lucchesi Should Not Be Permitted To Testify About What Merck "Knew Or Should Have Known."

Rule 702 allows opinion testimony from a witness with "scientific, technical, or other specialized knowledge" that will "assist the trier of fact." Fed. R. Evid. 702. It does not permit

"opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d at 616 (*citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004). As one court reasoned when rejecting expert testimony regarding a pharmaceutical manufacturer's intent and state of mind:

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000). In this case as well, the Court should exclude Dr. Lucchesi's testimony regarding Merck's knowledge or state of mind.

Dr. Lucchesi bases his opinions in this regard on a review of internal Merck documents produced in this litigation that were selected by plaintiff's counsel. (Oct. 18, 2005 Deposition of Dr. Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. ("Lucchesi 10/18/05 Dep.") at 164:11-165:14, attached as Ex. 1 to Wittmann Decl.) From this selective set, he draws inferences regarding what Merck knew. For example, he acknowledged that his opinion that as early as 1997 Merck "was actually aware" of Vioxx's alleged prothrombotic potential is based on inferences he drew from internal Merck e-mails and certain Merck patent applications that were selectively given him by plaintiff's counsel. (*Id.* at 226:1-18.) But examining the evidence and

5

drawing factual inferences from the documents admitted into evidence is the exclusive role of the jury. The jury does not need Dr. Lucchesi's assistance in carrying out that responsibility.[1]

In fact, to the extent he would simply make inferences and draw conclusions from the documents about what Merck knew and other aspects of Merck's state of mind, Dr. Lucchesi would not properly be testifying as an "expert" at all. Such testimony would not bring any "scientific, technical, or other specialized knowledge" to bear on an issue that would assist the jury. Instead, he would simply be acting as a paid advocate for the plaintiff, and for this reason his testimony must be excluded. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546 (excluding expert testimony addressing corporate state of mind because otherwise experts would "improperly … assume the role of advocates for the plaintiffs' case"); *see also Tanner v. Westbrook,* 174 F.3d, 542, 548 (5th Cir. 1999); *In re Propulsid Prods. Liab. Lit.*, 261 F. Supp. 2d at 616; *cf. Sec. & Exch. Comm'n v. Lipson,* 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (expert accountant was not "specially equip[ped] to divine what [defendant] truly believed" about reliability of financial reports; any opinions offered in that regard are "at worst, rank speculation" and at best, "credibility choices that are within the province of the jury"). In excluding similar testimony proffered on corporate state of mind, the *Rezulin* Court succinctly

---

[1]    Similarly, the jurors do not need for Dr. Lucchesi to "interpret" documents for them, something he is apparently poised to do, as the following excerpt illustrates:

Q:  And I would be happy, sir, if you would confine your opinions to those that are your area of scientific interest. But you are telling me you are intending to comment at trial on FDA regulation of pharmaceutical marketing.

A:  Well, I think I can –  I can simply look at this letter [from a division of the FDA to the former Merck CEO] and read the second paragraph and get a flavor of what is happening here, and I think I – I can interpret that for a jury.

(Oct. 26, 2005 Deposition of Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. ("Lucchesi 10/26/05 Dep.") at 350:17-25, attached as Ex. 2 to Wittmann Decl.)

summed up the problem when what is actually advocacy of one party's cause is offered in the

guise of expert testimony:

> A practice reminiscent of wager of law has become fashionable among some well-financed litigants – the engagement of "expert" witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit. These "experts" thus are loosely analogous to compurgators, also known as oath helpers, in that they lend their credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue.

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 538. That is an apt description of the real

nature of Dr. Lucchesi's proposed non-scientific testimony as well.

**B.**     **Testimony To The Effect That Merck Failed To Meet Dr. Lucchesi's Subjective Normative Standards Is Neither Relevant Nor Reliable And Thus Should Be Excluded Under Rule 702.**

Dr. Lucchesi repeatedly passes judgment on the propriety of a broad array of Merck's

decisions and practices relating to the development, testing, and marketing of Vioxx (*see*

Lucchesi 10/18/05 Dep. at 148:17-149:2) – even though he acknowledges that he is not an expert

in these areas (*e.g.*, Lucchesi 10/26/05 Dep. at 375:12-378:6). For example, he asserts that "[t]he

DSMB [*i.e.*, Data Safety Monitoring Board] minutes in the VIGOR trial show that Merck had

actual knowledge before November of 1999 that vascular risks were present in Vioxx users," that

"Merck's conduct as it relates to these data is questionable," and that Merck should have stopped

the VIGOR study and that its failure to do so "was below the standard of care." (Lucchesi

Report at 14-15.)[2]

---

[2]     As another example, Dr. Lucchesi asserts that the manner in which Merck advertised Vioxx led to overuse "at a significantly increased price to consumers" (Lucchesi Report at 18), even though he is not an expert in advertising or drug pricing (Lucchesi 10/26/05 Dep. at 387:1-388:24).

These and all other subjective judgments by Dr. Lucchesi have no place at this trial.[3]
Courts have repeatedly ruled that such personal views of a witness who has been designated as
an expert are irrelevant and thus inadmissible. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F.
Supp. 2d at 542-45 (expert testimony on subjective ethical standards was "(1) unreliable because
purely speculative; (2) unhelpful to the fact-finder because irrelevant in a case where liability is
premised on legal, not ethical, standards, and (3) likely to prejudice and confuse fact-finders
concerning the pertinent legal standards"); *id.* at 557 (testimony on legal obligations would
"usurp . . . the role of the trial judge in instructing the jury as to the applicable law [and] the role
of the jury in applying that law to the facts before it"); *see also Black v. Food Lion, Inc.*, 171
F.3d 308, 314 (5th Cir. 1999) (admission of expert testimony was abuse of discretion when
particular opinion had no apparent underlying support); *DiBella v. Hopkins*, No. 01 Civ. 11779
(DC), 2002 U.S. Dist. LEXIS 20856, at *12 (S.D.N.Y. Oct. 30, 2002) ("business ethics" expert
testimony inadmissible in commercial dispute because the "dispute here is not over what is
ethical...[r]ather, the dispute is over what happened."), *aff'd*, 403 F.3d 102 (2d Cir. 2005).

Moreover, to be reliable under Rule 702, the "reasoning or methodology properly" must
be applied to the "facts in issue." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003) (citing
*Daubert*, 509 U.S. at 592-93). By definition, subjective normative testimony is unreliable under

---

[3]    That Dr. Lucchesi is making normative judgments about Merck's conduct on the basis of
his personal (and irrelevant) ethical standards is exemplified by the following exchange:

Q:  Sir, if you're asked and allowed to testify at trial about Dodge Ball, that it
reflects improper training of sales representatives, what standard of care are you,
Dr. Lucchesi, applying?

A:  My standard of care what I believe to be ethical behavior.

(Lucchesi 10/18/05 Dep. at 163:9-14.)

*Daubert. Cf. In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, MDL 1535, 2005 WL 1868046, at *18, *20 (N.D. Ohio, Aug. 8, 2005) (Order) ("[T]he critical question for the jury in this case is whether the defendant corporations did what the law required them to do, not whether, from a societal perspective, they did what an "ethical corporation" should have done. [The expert's] opinions regarding the latter, accordingly, will tend to misdirect the finder of fact.").

Expert testimony that is admissible under *Daubert* and Rule 702 must be based on objective, empirical, ascertainable, and verifiable bases, not on subjective notions of propriety, or morality, or appropriateness.  The goal in admitting expert testimony is to "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.,* 526 U.S. at 152; *see also Daubert*, 509 U.S. at 594.  Subjective and normative testimony does not have the same assurances of relevance and reliability that empirically verifiable specialized knowledge provides.  Expert testimony that lacks this reliability, that is not based on specialized knowledge, and that lacks supporting authority may not be admitted. *See Tanner*, 174 F.3d at 548.

**C.   Dr. Lucchesi May Not Testify That The Warnings That Accompanied Vioxx Were Inadequate Or Testify As To What The Warnings That Vioxx Carries Should Say.**

While he did not expressly opine (or "comment") that the Vioxx package insert contained false information (Lucchesi 10/18/05 Dep. at 289:6-290:7), Dr. Lucchesi did offer specific recommendations on the content, placement, and even the color of warnings about Vioxx that he believes should be carried in physician information, patient package inserts, and direct-to-consumer advertising.  (Lucchesi Report at 21-24.)  But of course in opining on what the label *should* say, by negative implication Dr. Lucchesi would also be opining that the warning was inadequate, notwithstanding his stance that he has not done so.

9

All such testimony must be excluded.  It is fundamental that an expert witness may not testify about matters outside his area of expertise.  Fed. R. Evid. 702; *Hidden Oaks Ltd.*, 138 F.3d at 1050.  By his own admission, Dr. Lucchesi is not an expert in the labeling of FDA-regulated drugs:

> Q:  Are you familiar with FDA regulations on labeling?
>
> A:  Not as well as a person who deals with labeling.
>
> Q:  Have you ever written a drug label?
>
> A:  You know I haven't.
>
> Q:  And have you read FDA's regulations on labeling?
>
> A:  I don't bother reading the regulations on labeling.  I have no interest in the regulations on labeling.  I can suggest to the FDA what the labeling should be, and many people have.
>
> Q:  You don't have any particular expertise on writing an FDA approved label. Correct?
>
> A:  My CV tells me where my expertise ends.  You don't have to ask me those questions.
>
> Q:  Right.  And your CV does not reflect any expertise in FDA approved labeling. Correct?
>
> A:  That is right.

(Lucchesi 10/18/05 Dep. at 282:19-283:12; *see also id.* at 289:10-15.)  He also is not an expert in the advertising or marketing of prescription medications.  (Lucchesi 10/26/05 Dep. at 376:6-13.) He therefore should not be permitted to testify at trial about any alleged inadequacy of the warning Vioxx carried or about what the content of warnings should be.[4]

Nor can any such testimony meet the requirement of reliability.  *See Moore*, 151 F.3d at 276.  Dr. Lucchesi identifies no methodology, research or standard against which the Court can

---

[4]   Since it amounts to an implicit attack on the actual content of the Vioxx warning that was mandated by the FDA, moreover, such testimony falls into an area of inquiry that is preempted by the FDCA.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350, 353 (2001); (Merck & Co. Inc.'s Motion To Exclude The Testimony Of Richard M. Kapit, M.D. at 2-5, filed October 21, 2005).

789711v.1

assess the reliability of any opinion relating to the adequacy of warnings.  For this reason as well, his testimony on this topic is inadmissible.[5]

## IV.     DR. LUCCHESI HAS NO SCIENTIFICALLY RELIABLE BASIS TO OPINE ON GENERAL CAUSATION.

Dr. Lucchesi's opinion that Vioxx "caused or contributed substantially to cause the adverse cardiac event experienced by Mr. Richard Irvin that culminated in . . . sudden cardiac death" (Lucchesi Report at 45) is not supported by any reliable scientific data.  Merck will not burden the Court with another full briefing on the lack of reliable scientific evidence demonstrating that Vioxx at the 25 mg dose can cause thrombotic cardiovascular events in the less than 30 days of use.  As Merck explained in its Causation Testimony Brief, no clinical trial or observational epidemiological study has ever demonstrated an increased risk of thrombotic cardiovascular events with Vioxx 25 mg in short-term use.  *See* Causation Testimony Brief at 23-49 and accompanying Appendix of Studies Relied on by Plaintiff's Experts ("Appendix"), filed October 21, 2005.).  Dr. Lucchesi, along with the other plaintiff experts, draw scientifically unreliable inferences from numerous studies in an attempt to bolster plaintiff's claim in this case.  However, Dr. Lucchesi's and others' attempts to excuse the absence of scientific data supporting their short-term use theory falls well short of the threshold set forth by F.R.E. 702 and *Daubert*.

---

[5]     Insofar as he purports to opine on what warnings should be contained in patient inserts or direct-to-consumer advertising, moreover, Dr. Lucchesi's opinions are irrelevant.  Under the learned intermediary doctrine, it is the adequacy of the drug manufacturer's warning to the prescribing physician that is determinative.  *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989).

789711v.1

### A.   Dr. Lucchesi's Animal Data and Case Reports Are Insufficient to Establish Causation.

Lacking reliable trial and epidemiologic data, Dr. Lucchesi points to data from animal studies he conducted and a case report written by Dr. Leslie Crofford.  But neither amounts to reliable scientific evidence of causation.

As explained in the Declaration of Dr. Gaziano, animal studies are generally viewed as an insufficient basis for inferring causation in humans – particularly where, as here, such studies are inconsistent with data from clinical studies.  (Declaration of J. Michael Gaziano, M.D., M.P.H. ("Gaziano Decl.") at ¶ 26, filed October 21, 2005; *see also* Causation Testimony Brief at 35-36.) In fact, when confronted with questions involving the toxicity of substances, the Fifth Circuit has held that animal studies have "very limited usefulness."  *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989) (rejecting animal studies given high doses involved and difficulty extrapolating results to humans); *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 197-98 & n.5 (5th Cir. 1996) (excluding expert opinion based in part on "inconclusive" and "unreliable" animal studies); *Gulf S. Insulation v. U.S. Consumer Prod. Safety Comm'n*, 701 F.2d 1137, 1146 (5th Cir. 1983).

In addition to the insufficiency of animal studies generally, much of Dr. Lucchesi's animal work has involved the use of a drug *other than* Vioxx, making it even more unreliable here.  (*See* Aug. 28, 2005 Trial Testimony of Dr. Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. in *Ernst v. Merck* at 40:19-23, attached as Ex. 45 to Declaration of Phillip A. Wittmann in Support of Merck's Motions to Exclude Evidence ("Wittmann Decl. I"), filed October 21, 2005; Lucchesi Report at 8.)  Dr. Lucchesi himself appears to recognize this fact, noting "there may be subtle differences in [the] respective pharmacodynamic properties [of various COX-2 inhibitors] that determine the duration of exposure before the development of an adverse

12

[cardiovascular] event . . . ." (Lucchesi Report at 35.)  Indeed, numerous courts have recognized that data involving one drug cannot prove that a different drug causes harm.  *See, e.g., Joiner*, 522 U.S. at 145-46; *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1246 (11th Cir. 2005) (excluding expert's opinion that ephedrine causes vasospasms based on analogy to different drug and noting that "even small differences in chemical structure can sometimes make very large differences in the type of toxic response that is produced" (internal citation and quotation marks omitted)); *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002).  At bottom, animal studies involving different drugs at different dosages and for different durations are not a reliable basis on which to opine that 25 mg Vioxx taken for less than 30 days has a prothrombotic effect in humans.

Similarly, Dr. Lucchesi's reliance on a case report written by Dr. Leslie Crofford, involving four patients with connective tissue disease who were taking the drug Celebrex, cannot be considered reliable evidence of causation.[6]  (Lucchesi Report at 39.)  To begin with, a *Celebrex* study cannot prove that *Vioxx* causes adverse health effects.  *Joiner*, 522 U.S. at 145-46; *McClain*, 401 F.3d at 1246.  In addition, case reports are not evidence of causation.  They describe a single individual or a series of individuals who have coincident exposure and diseases. Although they can be useful in generating testable hypotheses, case reports cannot establish a cause and effect relationship.  (Gaziano Decl. at ¶ 30.)  That is because case reports do not – and cannot – control for the role of chance, bias, or confounding.  (*Id.*)

Accordingly, in case after case courts have rejected anecdotal evidence like case reports as proof of general causation.  *See, e.g., Black*, 171 F.3d at 312 & n.2 (reasoning that "case series

---

[6]     Leslie Crofford et al., *Thrombosis in patients with connective tissue diseases treated with specific cyclooxygenase 2 inhibitors. A report of four cases*, ARTHRITIS RHEUM. 2000, 43:1891-6.

or case reports" are "insufficient to establish causal relationships"); *McClain*, 401 F.3d at 1250, 1254 ("Uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation. . . . Simply stated, case reports raise questions; they do not answer them."); *Newton*, 243 F. Supp. 2d at 679-80 (reliance on case reports rendered expert's opinion "well below" the "standards of scientific validity"); *Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 787 (S.D. Tex. 2000); *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989-90 (8th Cir. 2001); *Haggerty v. UpJohn Co.*, 950 F. Supp. 1160, 1165-66 (S.D. Fla. 1996); *Casey v. Ohio Med. Prods., Inc.*, 877 F. Supp. 1380, 1385 (N.D. Cal. 1995). Indeed, Dr. Crofford herself agrees that her case report does not and cannot establish causation: "[a] causal relationship between the initiation of treatment with a specific COX-2 inhibitor and these thrombotic events ***cannot be established*** on the basis of the available evidence . . . ."[7]

### B.   Dr. Lucchesi Concedes His Proposed Pharmacological Mechanisms By Which Vioxx Supposedly Has a Thrombotic Cardiovascular Effect Are Not Proven.

Dr. Lucchesi not only lacks scientifically reliable evidence supporting plaintiff's general causation theory, he also cannot identify to a reasonable degree of medical certainty the mechanism by which the short-term use of Vioxx supposedly is capable of causing sudden cardiac death. As the Fifth Circuit has held, knowing the mechanism by which a substance acts on the body is an essential predicate of any cause-and-effect testimony. *Black,* 171 F.3d at 314 ("The underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur."); *see also In re Propulsid Prods. Liab. Lit.*, 261

---

[7]   Leslie Crofford et al., *Thrombosis in patients with connective tissue diseases treated with specific cyclooxygenase 2 inhibitors. A report of four cases*, ARTHRITIS RHEUM. 2000, 43:1891-6 (emphasis added).

F. Supp. 2d at 616 ("In this case . . . Drs. Shell and Eckberg . . . fail to identify the exact mechanism by which a person's QT interval can become permanently prolonged well after that person has ceased taking Propulsid. . . . They have theories but they have no proof to support those theories. . . . Under the prevailing logic of *Daubert* and *Black*, their testimony is unreliable."); *McClain*, 401 F.3d at 1253 (excluding expert testimony where plaintiffs' experts have not "offered a reliable explanation of the physiological process by which Metabolife causes heart attacks and ischemic strokes, i.e., establish general causation"). Nevertheless, Dr. Lucchesi admits that each potential mechanism he proffers – *e.g.*, the FitzGerald imbalance hypothesis, plaque rupture, acceleration of atherosclerosis, and ischemic preconditioning – is unproven.

1.     Dr. Lucchesi Cannot Establish the Mechanism By Which Vioxx Supposedly Has A Thrombotic Cardiovascular Effect.

As explained in Merck's Causation Testimony Brief and accompanying Appendix of Studies, the FitzGerald hypothesis remains just that – a hypothesis. (*See* Causation Testimony Brief at 40-44.) [8] Dr. FitzGerald has so stated on multiple occasions, and plaintiff's experts do not dispute that Dr. FitzGerald's preliminary work with metabolites of prostacyclin in urine do not, and cannot, answer the question of whether Vioxx inhibits prostacyclin levels in the vasculature. (*Id.*) Nor can plaintiff's experts, assuming *arguendo* that Vioxx could inhibit prostacyclin in the vasculature, estimate the degree to which it could do so, or even the level at which such inhibition would become clinically significant. As Dr. Lucchesi admits:

Q:  Have you ever studied the degree to which any reduction in prostacyclin synthesis, small or large, was clinically significant in patients?

---

[8]     Dr. Lucchesi explains that this theory stems from the work of Dr. John Vane and his colleagues and notes that he believes it "has been referred to erroneously as the "FitzGerald Hypothesis." (Lucchesi Report at 10 n.1.)

789711v.1

A:  Once again, I am not concerned with the degree.  I am concerned with the mechanism and the concept.

(Oct. 3, 2002 Deposition of Dr. Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. ("Lucchesi 10/3/02 Dep.") at 96:7-11, attached as Ex.16 to Wittmann Decl. I.)  Without knowing the level of prostacyclin inhibition that supposedly is necessary to produce a clinical result, Dr. Lucchesi cannot testify to a reasonable degree of medical certainty that Vioxx is capable of having a pro-thrombotic effect in any case.  *See, e.g., Allen*, 102 F.3d at 199; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998); *Thompson v. S. Pac. Transp. Co.*, 809 F.2d 1167, 1169 (5th Cir. 1987).

In April 2005, the FDA confirmed that the FitzGerald imbalance hypothesis remains unproven.  After observing that selective COX-2 inhibitors were associated with an increased risk of adverse cardiovascular events, the FDA addressed the FitzGerald hypothesis:

> *It remains unclear, however, that it is the presence of, or the degree of, COX-2 selectivity that accounts for these observations, as some have hypothesized.*  As noted above, in various controlled clinical trials, COX-2 selective drugs have been indistinguishable from non-selective NSAIDs (i.e., ibuprofen, diclofenac) in studies of substantial size and duration.  Further, although on theoretical grounds the addition of low-dose aspirin (a COX-1 inhibitor) to a COX-2 selective drug should resolve any increased CV risk caused by COX-2 selectivity, this effect has not in fact been observed in several studies in which such comparisons are possible.  *Taken together, these observations raise serious questions about the so-called "COX-2 hypothesis," which suggests that COX-2 selectivity contributes to increased CV risk.*

(April 6, 2005 FDA Memo at 8 (emphasis added).)

>   2.   Dr. Lucchesi Cannot Establish the Mechanism By Which
>        Vioxx Supposedly Causes Plaque Ruptures.

Dr. Lucchesi also has no basis on which to opine that Vioxx contributes to plaque ruptures.  Dr. Lucchesi, like plaintiff's other experts, admits that there are no published studies establishing that Vioxx is capable of causing coronary plaque ruptures.  (*See* Causation Testimony Brief at 45-46.)

Q: Would you agree, sir, that there's not a single piece of peer-reviewed medical literature that demonstrate even in an animal model that Vioxx contributes to plaque rupture in the coronary artery?

A: There many not be today.

. . .

Q: Are you agreeing, sir, or not?

A: I'll agree to that because I don't know of any literature that relates to that specific point.

(Lucchesi 10/18/05 Dep. at 331:21-332:6.)  Dr. Lucchesi admits that there is absolutely no proof – even in an animal model – that Vioxx contributes to plaque rupture.  Plaintiff should not be permitted to present the jury a theory of general causation that plaintiff's own experts admit is completely unsupported by scientific evidence.

      3.      Dr. Lucchesi Cannot Establish the Mechanism By Which Vioxx Supposedly Accelerates Atherosclerosis.

Dr. Lucchesi has also hatched a theory that Vioxx accelerates atherosclerosis.  But he reluctantly concedes "[t]he theory is that, just theory."  (Lucchesi 10/18/05 Dep. at 318:14-23.)  For that reason alone, the Court should exclude Dr. Lucchesi's opinion on this issue.[9]  *In re Propulsid Prods. Liab. Lit.*, 261 F. Supp. 2d at 616 (excluding expert testimony that amounts to "mere theory").  Moreover, Dr. Lucchesi admits that the theory has not been tested in either an animal or a human model, and that he has "never seen a peer-reviewed piece of medical literature that demonstrates that [any] selective COX-2 inhibitor [including Vioxx] accelerates the formation of plaque in a coronary artery."  (Lucchesi 10/18/05 Dep. at 299:11-17, 301:12-20, 305:9-19; 320:1-321:18.)  Instead, he bases his opinion on studies that were performed in test tubes.  (*Id.* at 308:12-13; Apr. 25, 2005 Deposition of Dr. Benedict R. Lucchesi, M.D., Ph.D.,

---

[9]      Moreover, plaintiff's other experts concede that Mr. Irvin's atherosclerosis took years to develop.  (*See* Causation Testimony Brief at 60-61.)

M.S., F.A.H.A. ("Lucchesi 4/25/05 Dep.") at 89:1-12, attached as Ex. 14 to Wittmann Decl. I.)
To apply, as Dr. Lucchesi suggests, the results of *in vitro* studies to humans is scientifically
improper. (Gaziano Decl. at ¶ 26.) It is likewise legally insufficient. The Fifth Circuit has held
that *in vitro* studies generally provide no basis for opining about general causation. As explained
by the court in *Allen*, *in vitro* studies showing that a drug may have an adverse effect are "the
beginning, not the end of the scientific inquiry and prove[] nothing about causation without other
scientific evidence." 102 F.3d at 198; *see also Richardson v. Richardson-Merrell, Inc.*, 857 F.2d
823, 830 (D.C. Cir. 1988); *Cerna v. S. Fla. Bioavailability Clinic, Inc.*, 815 So. 2d 652, 656 (Fla.
App. 2002).

      4.      **Dr. Lucchesi Cannot Establish the Mechanism By Which**
                    **Vioxx Supposedly Impacts Ischemic Preconditioning.**

Finally, Dr. Lucchesi opines in his report that COX-2 inhibitors annul the
cardioprotective mechanism of "ischemic preconditioning,"[10] thus "increasing the extent of
myocardial tissue injury and the potential for increased morbidity (heart failure) or sudden death
due to an arrhythmic event." (Lucchesi Report at 24.) But, at deposition, Dr. Lucchesi conceded
that there is no reliable scientific data supporting the proposition that COX-2 inhibitors,
including Vioxx, have an effect in humans on ischemic preconditioning. Indeed, he conceded
that "we do not have solid human data"; the data on this issue is "just beginning to emerge in the
clinical literature"; and "it has not been definitely proven." (Lucchesi 10/26/05 Dep. at 401:14-
402:9, 400:14-401:2, 402:14-22.) These concessions demonstrate the unreliability and
inadmissibility of any testimony Dr. Lucchesi may proffer regarding the potential impact of

---

[10]      "Ischemic preconditioning" is a theorized physiological process wherein "brief periods of
experimental coronary artery occlusion and reperfusion before a more sustained period of
occlusion result in marked reduction in the amount of necrosis that develops." Eugene
Braunwald et al., HEART DISEASE: A TEXTBOOK OF CARDIOVASCULAR MEDICINE 1144
(6th ed. 2001).

Vioxx on ischemic preconditioning.  *See, e.g., In re Propulsid Prods. Liab. Lit.*, 261 F. Supp. 2d

at 615 ("The Court is aware that the future may shed more light on this matter.  Medical science

may one day determine with sufficient reliability that a causal relationship exists . . . but it is not

there yet and may never be.  A trial court must function in the present assessing evidence that

presently exists." (citation omitted).)  Moreover, the only foundation Dr. Lucchesi could provide

for his opinion on "ischemic preconditioning" comes from animal studies conducted by Dr.

Roberto Bolli.  (Lucchesi Report at 24; Lucchesi 10/26/05 Dep. at 400:14-401:2.)  As noted

above, animal studies generally do not constitute the type of reliable scientific data necessary to

support a causation opinion.  *Allen*, 102 F.3d at 195, 197-98 & n.5 (excluding expert opinion

based in part on "inconclusive" and "unreliable" animal studies).

## V.    DR. LUCCHESI HAS NO SCIENTIFICALLY RELIABLE BASIS TO OPINE ON SPECIFIC CAUSATION.

Although he received a medical degree in 1964, Dr. Lucchesi is not a licensed physician;

he has never been licensed to practice medicine; he has never treated a patient as a licensed

physician; and he has never been allowed to prescribe medications.  (Lucchesi 10/18/05 Dep. at

53:8-17, 62:16-63:14.)

Even assuming *arguendo* that he had the appropriate medical background to opine on

specific causation, Dr. Lucchesi concedes that he has no basis to opine on whether Mr. Irvin died

due to any of the alleged mechanisms by which he believes Vioxx supposedly can cause or

contribute to sudden cardiac death.  First, even if the FitzGerald imbalance hypothesis were

proven, Dr. Lucchesi has no reliable scientific basis to testify that Mr. Irvin actually suffered an

imbalance of prostacyclin and thromboxane from Vioxx use, or even the degree of prostacyclin

inhibition necessary to cause a clinically significant result.

Second, Dr. Lucchesi is not in a position to testify about whether Mr. Irvin suffered a plaque rupture. Dr. Lucchesi did not look at the pathology slides himself and he stipulated that he will not opine about whether Mr. Irvin suffered a plaque rupture. (Lucchesi 10/18/05 Dep. at 40:17-19, 328:23-329:18.)

Third, Dr. Lucchesi cannot opine on whether Vioxx contributed to the formation of plaque in Mr. Irvin's coronary arteries. It is undisputed that Mr. Irvin had preexisting, severe atherosclerosis. (*See* Causation Testimony Brief at 8-9, 58-61.) Dr. Lucchesi testified at deposition that he does not know "one way or the other" whether Vioxx contributed to plaque formation in Mr. Irvin, but claimed that he "just . . . [has] a high suspicion." (Lucchesi 10/18/05 Dep. at 322:7-11.) Dr. Lucchesi's "suspicion" does not rise to the level of reasonable medical certainty that is needed to establish specific causation. *Moore*, 151 F.3d at 279 (improper to "leap[] from an accepted scientific premise to an unsupported one"); *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) (causation opinions based on a "mere possibility" are insufficient; when matter remains one of "speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant"). Ultimately, Dr. Lucchesi reluctantly conceded that there is no way to know whether Vioxx accelerated Mr. Irvin's atherosclerosis:

> Q: How do you know Mr. Irvin was that special individual in those special circumstances in which a selective COX-2 inhibitor would accelerate the formation of plaque?
>
> A: All right. ***We can't predict that this would accelerate his plaque.***

(Lucchesi 10/18/05 Dep. at 326:23-327:3 (emphasis added).)

Moreover, as explained in Merck's Causation Testimony Brief, Dr. Lucchesi – like plaintiff's other experts – cannot rule out other causes of Mr. Irvin's death. Both the Fifth

Circuit and this Court have confirmed that it is crucial for purposes of *Daubert* that an expert witness rule out possible alternative causes of a plaintiff's injury. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (expert cannot, in the face of multiple "potential" causes, "simply pick[] the cause that is most advantageous to [plaintiff's] claim[s]"); *Moore*, 151 F.3d at 279; *see also In re Propulsid Prods. Liab. Lit.*, 261 F. Supp. 2d at 618 (excluding experts' opinions because experts "cannot show that Propulsid caused Brock's symptoms, as they have failed to exclude other possible symptoms"). But Dr. Lucchesi cannot do that here.

Dr. Lucchesi admits that Mr. Irvin had "very scanty medical records" and that he does not know what preexisting medical conditions Mr. Irvin may have suffered from prior to his death. (Lucchesi 10/18/05 Dep. at 290:25-292:6; 292:7-16 ("I don't know what he had.").) As explained in Merck's Causation Testimony Brief, given the near complete absence of information regarding Mr. Irvin's medical history, Dr. Lucchesi has no way of reliably ruling out possible alternative causes for his sudden cardiac death. (*See* Causation Testimony Brief at 56-58, *citing In re Silica Prods. Liab. Litig.*, No. MDL 1553, 2005 WL 1593936, at *21 (S.D. Tex. June 30, 2005) (excluding causation opinions of plaintiff's experts because "the medical histories, physical examinations and other tests were either nonexistent or cursory"), *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 609 (D.N.J. 2002) ("reliable" causal analysis "typically is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests").)

Most notably, it is undisputed that Mr. Irvin had preexisting, severe atherosclerosis. (*See* Causation Testimony Brief at 8-9, 58-61.) Dr. Lucchesi cannot rule out Mr. Irvin's significant heart disease as evidenced by "moderate to severe" atherosclerosis in multiple coronary arteries. (Autopsy Report, attached as Ex. 44 to Wittmann Decl. I.) The microscopic slides from the

autopsy reveal that Mr. Irvin had a 60% to 70% occlusion in his left anterior descending coronary artery. (Autopsy Report; Declaration of Dr. Thomas Wheeler ("Wheeler Decl.") at ¶ 2 & Ex. A at 2, filed October 21, 2005.) Dr. Lucchesi himself acknowledges that the left anterior descending coronary artery is associated with a "high" incidence of sudden cardiac death in the general population and especially in men. (Lucchesi 4/25/05 Dep. at 49:20-50:21.) And Dr. Lucchesi testified that "it's estimated that 450,000 individuals die a year suddenly" and a "significant number" of those individuals never had any previous cardiac symptoms. (Lucchesi 4/25/05 Dep. at 43:8-16.) Because Dr. Lucchesi has not ruled out Mr. Irvin's undisputed preexisting atherosclerosis and other risk factors as likely causes of his death, Dr. Lucchesi's causation opinion is speculative, unreliable, and fails the *Daubert* threshold. (*See generally* Causation Testimony Brief at 56-61.)

## VI.  CONCLUSION.

For all the forgoing reasons, Merck respectfully requests that the Court grant its motion to exclude Dr. Lucchesi's testimony in its entirety.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
4041 Essen Lane
One United Plaza, Suite 501
Baton Rouge, Louisiana 70809
Phone:  225-490-8900
Fax:      225-490-8960

Defendants' Liaison Counsel

789711v.1

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:     (202) 434-5029

Attorneys for Merck & Co., Inc.

23

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Merck & Co., Inc.'s Motion to Exclude Testimony of Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 28th day of October, 2005.

*Phil Wittmann*

789711v.1