FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 28  AM 11: 25

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | ) MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) |
| | ) SECTION: L |
| THIS DOCUMENT RELATES TO ALL | ) |
| CASES | ) JUDGE FALLON |
| | ) MAG. JUDGE KNOWLES |

## MERCK & CO., INC.'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS LISTED ON MERCK'S PRIVILEGE LOG

In their reply brief, plaintiffs accuse Merck of undue delay in conducting a privilege re-review, seek to impose draconian sanctions on Merck for inadvertent errors that are inevitable in litigation of this scope, and continue to ask that the Court force production of clearly privileged documents merely because they relate to studies, public relations and marketing.  In so doing, plaintiffs mischaracterize the scope of applicable privileges and well established rules governing privilege log content, as well as the chain of events that preceded their motion.  Contrary to plaintiffs' suggestion that the current privilege re-review effort is a last-minute delay tactic launched in response to the pending motion, Merck informed plaintiffs in a letter in August that a re-review process was underway.  (*See* Letter from Phillip A. Wittman to Russ M. Herman, Esq. at 3 (Aug. 19, 2005) (attached as Ex. 1).)  And Merck has not suddenly conceded that its privilege log is "inadequate and overbroad."  To the contrary, plaintiffs seek to impose unreasonable requirements on Merck that go far beyond established standards for privilege logs – particularly given the tremendous scope of the document production in this matter.  For the

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_ 789554v.1 / 789554v.1
___ Doc. No._____

following reasons and those set forth in Merck's prior briefing, plaintiffs' motion should be denied.

*First*, plaintiffs' claims that Merck is seeking to delay production of any de-designated documents from its privilege re-review until after the *Irvin* trial is simply not true.  To the contrary, Merck is seeking to complete the re-review as quickly as possible to ensure that any de-designated documents *are* available to plaintiffs for that trial.  As plaintiffs well know, however, they have made conflicting discovery requests of Merck, labeling all of them "high priority." Even though Merck's attorneys are attempting to respond to those discovery demands on an expedited basis, Merck is simultaneously continuing to work diligently on the burdensome re-review process (including corresponding revisions to the privilege log).

As part of its re-review, Merck expects that it will remove a substantial number of documents from the log, resulting in their production to plaintiffs' counsel.  Another sizable group of documents previously withheld are being partially redacted to address privilege issues and will need to be re-listed on the log.  *Merck will begin producing copies of the documents that are removed from the privilege log (in whole or in part) on a rolling basis next week and will complete that production by November 11th.  Merck will also provide the Court and plaintiffs' counsel with the revised log on or before Monday, November 7th.*  That should provide sufficient time for plaintiffs to review the documents prior to the *Irvin* trial.

Because the *Irvin* trial is set for late November, Merck would agree to immediate *in camera* review of a Court-selected random sampling of documents that remain on the log – as proposed by the Court at the last status conference – immediately thereafter.  Merck will provide the Court with the documents it selects for any random *in camera* review within 24 hours after the Court notifies the parties of its selections.

789554v.1

*Second*, plaintiffs' claim that Merck has broadly waived the attorney-client privilege by conducting a re-review is a draconian sanction wholly inappropriate under these circumstances. As a threshold matter, Merck has not – as plaintiffs suggest – admitted that its privilege log is "inadequate and overbroad." (Pls. Reply Mem. In Support Of Mot. To Compel ("Pls. Reply") at 2.) Rather, Merck has conducted a routine re-review of its privilege log because of the sheer volume of documents at issue in this litigation and its desire to ensure that it has not inadvertently withheld documents that fall outside the scope of the privilege. Such re-reviews are commonplace and are obviously not grounds for the highly punitive sanction sought by plaintiffs.

In any event, *none* of the cases cited by plaintiffs supports their claim that privilege should be waived under these circumstances. For example, *United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) (Pls. Reply at 3), involved a dispute over a subpoena which required a party to produce certain employment records and other employment-related documents. *Id.* at 467. Though the court did order the party resisting the subpoena to produce the requested documents and rejected that party's claims of privilege, nowhere in the opinion does the court conclude that the party "waived" its claim of privilege and, therefore, should be compelled to produce all the documents remaining on its privilege log. Indeed, the court specifically concluded that the party's allegations of privilege were not supported as to any of the documents at issue. *Id.* at 473. Similarly, in *Felham Enterprises (Cayman) Ltd. v. Certain Underwriters At Lloyd's*, No. Civ.A. 02-3588 C/W 0, 2004 WL 2360159 (E.D. La. Oct. 19, 2004) (Pls. Reply at 4), the court ordered production of a discreet number of documents – not wholesale waiver of legitimate privilege designations. *Id.* at *3. *Stempler v. Collect America, Ltd.*, Civ A No. 00-MC-0328, 2000 WL 288377 (E.D. La. Mar. 15, 2000) (Pls. Reply at 3-4)

789554v.1

does not support plaintiffs' waiver argument either. *Stempler* involved a deposition witness who asserted attorney-client privilege with respect to certain documents requested pursuant to a *subpoena duces tecum. Id.* at *2. Unlike the present case, the witness in *Stempler* had ***not yet provided*** the court or the plaintiff with a privilege log and, accordingly, the court merely ordered that one be produced to substantiate the witness' claim of privilege. *Id.* Thus, nothing in *Stempler* can be construed to support plaintiffs' assertion that Merck has waived its claim to privilege and any reliance on this case is misplaced. *See also In re Papst Licensing*, No. CIV. A. MDL 1298, 2001 WL 1135268 (E.D. La. Sept. 19, 2001) (Pls. Reply at 4) (ordering production of a revised privilege log and not reaching the issue of waiver).

In fact, when courts have imposed the highly punitive sanctions sought by plaintiffs, they have been swiftly reversed. *See Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the United States*, 406 F.3d 867 (7th Cir. 2005). In *American National Bank*, for example, the Seventh Circuit reversed an order requiring a plaintiff to produce all the documents on its privilege log. *American National Bank* involved a discovery dispute wherein the defendant had "produced more than 20,000 documents but initially withheld approximately 750 documents, asserting the attorney-client privilege" – in other words, a production that was just a tiny fraction of the production at issue here. *Id.* at 870. Plaintiffs challenged the defendant's privilege designations with regard to documents that involved "in-house counsels, their notes, their e-mails, and fine line distinctions between legal and nonlegal (i.e., business) advice." *Id.* After finding that some of the documents were not privileged, the magistrate ordered the company to produce all the documents for which it had asserted a privilege. In reversing that order, the Seventh Circuit held, *inter alia*, that the defendant had "exhibited good faith" by "conced[ing] the need to revise its initial log" and "volunteer[ing] a second-amended log." *Id.* at 879. In other

- 4 -

words, the court found that an effort like Merck's here was not a ground for imposing punishment – but rather for reversing it.

**Third,** plaintiffs' continued arguments that Merck has failed to "provide the fundamental information needed to establish privilege" ignores Merck's prior briefing and the contents of the log itself. (Pls. Reply at 7.)  As Merck explained in its Opposition, many of the documents contained in Merck's privilege log "consist of notes and other types of documents for which there is no recipient." (Merck's Opp. at 4.)  Other documents which lack an author or recipient are attachments to e-mails that do not include a "to/from" field.  (*Id.*)  Merck has sought to complete the "to" and "from" columns of the log to the extent feasible for every document over which it has asserted a claim of privilege.  The fact that it has not been able to do so in each instance due to the nature of the documents themselves does not vitiate the privilege.

**Fourth,** plaintiffs mischaracterize Merck's arguments regarding the application of the attorney-client privilege to communications between agents of a corporate client.  In their Motion to Compel, plaintiffs originally argued that a document could not be protected under the attorney-client privilege unless it was directly authored or received by an attorney.  (*See* Pls.' Mem. in Support of Mot. to Compel at 7.)  Merck explained in its opposition that under the Supreme Court's ruling in *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) and its progeny, "documents not authored or received by an attorney are nonetheless privileged if the documents 'includ[e] communications involving corporate officers and agents who possessed the information requested by the attorney or who will act on the legal advice." (Merck's Opp. at 7 (quoting *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)).)  At no point did Merck contend, as Plaintiffs' Reply claims, that "the privilege somehow extends to all communications between unknown and unidentified individuals." (Pls. Reply at 9.)  To the

789554v.1

contrary, Merck asserts that the documents withheld reflect communications between Merck's corporate agents who are protected under the privilege.

Unable to support their arguments under applicable law, plaintiffs resort to innuendo. For example, in seeking to minimize the significance of a ruling by Judge Higbee that upheld the privilege designation for a document that was not written by or to a lawyer, plaintiffs state: "Judge Higbee merely ruled that one sentence within the one document could remain redacted . . . . This begs the question: How many of Merck's 21,000+ entirely withheld documents only contain one sentence (or a few sentences) truly privileged." (Pls. Reply at 9.)  In fact, Merck had only asserted that the one sentence was privileged, and Judge Higbee thus upheld Merck's privilege designation in its entirety.  To the extent plaintiffs imply that Merck is withholding documents rather than redacting them, that is completely false.  To the contrary, one reason the re-review is taking longer than plaintiffs would like is that Merck is painstakingly reviewing each document to determine whether it can be redacted rather than withheld to maximize plaintiffs' access to the requested documents.

*Finally*, plaintiffs' continued argument that documents touching on certain topics are categorically unprotected by the attorney-client privilege even if their purpose is to seek or provide legal advice is contrary to law and unsupported by plaintiffs' own cited cases.  As Merck asserts, and as the court acknowledged in *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), the *sine qua non* of a claim of the attorney-client privilege is that the communication at issue be confidential and made for the purpose of obtaining legal advice from the attorney; if those requirements are met, the subject matter of those communications is irrelevant. *Id.* at 539 ("While the elements of the privilege have been comprehensively restated elsewhere, it is sufficient here to note that what is vital to the privilege is that the communication be made in

- 6 -

confidence for the purpose of obtaining legal advice from the lawyer.") (internal quotation and alteration omitted).  In insisting that whole categories of documents are unprivileged based simply on their subject matter, plaintiffs either misapprehend – or urge the Court to misapply – the attorney-client privilege.

Moreover, despite a second round of briefing on the issue, plaintiffs have yet to cite a single case that supports their categorical objection to Merck's privilege designations for any documents related to studies, public relations or regulatory issues.  To the contrary, all of plaintiffs' cases recognize that the existence of privilege turns on the nature of the communications – *i.e.*, whether it reflects legal advice – not the topic on which legal counsel was sought.  *See, e.g., Freeport-McMoran Sulphur, LLC v. Millen Energy Equip. Res., Inc.*, No. Civ.A. 03-1496,2004 WL 1299042, at *8 (E.D. La. 2004) (Pls. Reply at 12) ("There is no indication that in forwarding this draft press release," the corporate vice president "was seeking legal advice."); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987) ("Client communications intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice based thereon.") (quotations omitted) (Pls. Reply at 13); *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 335 (E.D.N.Y. 1996) (rejecting the privilege based on determination that "the advice and services sought are not purely, or even primarily, legal") (Pls. Reply at 10); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997) (concluding that specific draft press releases were unprotected because they did not reflect "legal advice").

In short, notwithstanding plaintiffs' overheated rhetoric, Merck has sought – and continues to seek – to comply with its discovery obligations in a timely and thorough manner. Merck has employed numerous attorneys who are working around the clock to complete the

- 7 -

privilege re-review and will provide the revised log to the Court and to plaintiffs' counsel by

November 7, 2005.  At that point, if there continue to be disputes between the parties regarding

Merck's privilege assertions, Merck believes that the Court's proposal to undertake a "random"

*in camera* review of documents on the log would be appropriate – and as noted above, could be

done expeditiously.[1]  Merck expects that such *in camera* review will support Merck's proper

assertion of the attorney-client privilege; in the event the Court disagrees with any of Merck's

privilege designations, the parties and the Court will determine how and to what extent the

Court's decision can or should be extrapolated to other documents.

For the foregoing reasons and those set forth in Merck's prior briefing, plaintiffs' motion

to compel should be denied.

Respectfully submitted,

*Phil Wittmann*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
One United Plaza
4041 Essen Lane, Suite 501
Baton Rouge, Louisiana  70809
Phone:  225-490-8900
Fax:  225-490-8960

Defendants' Liaison Counsel

---

[1]      Notably, plaintiffs appear to have backed off their original misguided proposal that *they* (as opposed to the Court) select the documents for *in camera* review – an approach that has been rejected as likely to result in bias.  *See Am. Nat'l Bank & Trust Co.*, 406 F.3d at 878-79.

789554v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Surreply Memorandum has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 26th day of October, 2005.

Phil Wittmann

789554v.1

# STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

66,000

August 19, 2005

**BY E-MAIL & U.S. MAIL**

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar
820 O'Keefe Avenue
New Orleans, LA  70113

Re:    In re:  VIOXX® Product Liability Litigation, MDL 1657

Dear Russ:

This letter responds to your correspondence of August 17, 2005, which followed our conference with Judge Fallon on August 16, 2005.  Consistent with Judge Fallon's orders during that conference, we will respond to your request for priority production of documents for the Irvin and Hoffman trials as well as provide you with additional information regarding Merck's interrogatory responses and privilege log.

## I.    Request for Production of Documents

As set forth more fully below, the vast majority of the items you identified in Section I(a)-(e) of your letter for "priority" production Merck has already produced to the PSC or has agreed to produce to the PSC.

(a)    Merck has produced the data encompassed by this request in multiple forms and on multiple occasions.  Merck's clinical trial database, CTS, contains all "source" data relating to all patients in VIOXX clinical trials.  Merck has already produced the relevant CTS data extract to the PSC.  Moreover, Merck has made a complete production of all Case Report Forms (CRFs) submitted to FDA relating to VIOXX (MRK-AIV 0000001-0277994), and a complete production of all Case Report Tabulations submitted to the FDA, which are tabulations of the data within the CRFs (MRK-ZAA-0000001-0003578; MRK-AAT 0007895-0224848).  Merck has made a complete production of all Clinical Study Reports, which contain narratives for all serious adverse events that occurred during a clinical trial.

With regard to adverse events reporting, Merck has produced to the PSC the CTS and WAES databases, which houses adverse event reporting information for all adverse events, including those from clinical trials, as well as targeted productions of adverse event reports for

785517v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

2

August 19, 2005

cardiac adverse events (MRK-AEE-000001-0008455) and vascular adverse events (MRK-AFM-000001-0006945). Merck has also produced departmental files from the Epidemiology department (MRK-ADT-0000001-0003011). In addition, Merck has produced all of the CV adjudication packages (MRK-AFH-000001-0092245), which contain underlying medical records for clinical cardiovascular events and adjudicator findings, as well as the VECS database, which contains data relating to the CV adjudication program.

(b)     Merck has already produced to the PSC all correspondence to and from FDA, including attachments, concerning the possible re-introduction of VIOXX to the United States market (MRK-I8940096269-96387; MRK-S0420111969-112005). Merck agrees to produce any future correspondence to and from FDA on this subject.

(c)     Merck has already produced forms of Professional Information Requests relating to cardiovascular safety and the VIGOR trial (MRK-ADZ-000001-0019164). In addition, Merck has agreed to provide case-specific productions of PIRs in MDL No. 1657 in connection with the Merck Profile Form. Accordingly, Merck has already agreed to produce any PIRs sent to prescribing physicians in the Irvin and Hoffman cases.

(d)     As to the custodial files of current or former Merck employees that the PSC seeks to depose, Merck has already produced documents for all but one of them. These include productions from the custodial files of Eliav Barr (MRK-ACF-0000001-0068749; MRK-ACF-0800000-0800007), Susan Baumgartner (MRK-AFI-0000001-0290517; MRK-08000000-00050), Gilbert Block (MRK-AFW-0000001-0026897), Tom Cannell (MRK-ADG-0000001-0080117), James Dunn (MRK-ADW-0000001-0051358), and Greg Geba (MRK-AGV-0000001-0167998). These productions total over 664,000 pages of documents. Merck will produce the documents consistent with a negotiated deposition schedule. It is our understanding that the PSC has not agreed to the depositions dates proposed by Merck for these witnesses and, as you are aware, Merck objects to further depositions of James Dunn and Susan Baumgartner who have been deposed at length, including by members of the PSC.

(e)     Merck has already made substantial productions relating to its communications with FDA concerning labeling issues. Productions of FDA correspondence can be found at MRK-AAF-0000001-0017701. In addition, Merck has produced custodial files for the individuals involved in labeling discussions with the FDA, including Ned Braunstein (MRK-AFV-0000001-0387294), Dennis Erb (MRK-AID 0000001-0011995), Brian Daniels (MRK-ACL-0000001-0011705; MRK-ACL-0011714-0011715), Bonnie Goldmann (MRK-AFT-0000001-0015640), Alise Reicin (MRK-AAD-0000001-0421964; MRK-AAD-0800000-0800079), Ed Scolnick (MRK-ABH-0000001-0026963; MRK-ABH-0800000-0800033), Bob Silverman (MRK-ACD-0000001-0146725; MRK-ACD-0800000-0800069), Eve Slater (MRK-ABD-0000001-0004824), and others.

(f)     The request for "Merck Frosst document" has a number of inherent problems. First, we do not know whether this is a request for the privileged CMI document which was a

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
3

August 19, 2005

"Merck Frosst document" or simply a typographic error meant to refer to "Merck Frosst
documents."  In any event, this request is clearly contrary to Judge Fallon's instruction that the
PSC specifically identify the documents needed for the Irvin and Hoffman trials. Put simply, the
PSC must provide more than a three-word description if Merck is to be able respond to this
request in any fashion. Notwithstanding these problems, after an extensive negotiation with the
Seeger Weiss firm, Merck made a production of the Merck Frosst custodial files of nine people,
including Kevin Bateman (MRK-AEJ-0000001-0000022), Jilly Evans (MRK-AEA-0000001-
0000062), Michael Gresser (MRK-AEY-0000001-0000178), Kathleen Metters (MRK-AEE-
0000001-0002609), Deborah Nicoll-Grifith (MRK-AEF-0000001-0004297), David Percival
(MRK-AEI-0000001-0006421), Denis Riendeau (MRK-AEG-0000001-0050417), Ian Rodger
(MRK-AED-0000001-0000321), and Robert Young (MRK-AEH-0000001-0016903).

        (g)      Merck has already committed to providing the documents identified in Section C.
of my letter dated August 15, 2005 in accordance with the schedule set forth in that letter.

## II.     Interrogatories

        If the PSC will identify specific interrogatories for which the PSC believes it
needs responses prior to the depositions which the PSC seeks to schedule in September 2005, we
will endeavor to respond to those interrogatories prior to the depositions and serve our objections
and responses to remaining interrogatories on a rolling basis.  In any event, Merck will serve its
objections and responses to the PSC interrogatories to which Merck has agreed to respond or
which the PSC has agreed to revise by September 15, 2005.

## III.    Privilege Log

        Merck will produce no later than Monday, August 22, 2005 the privilege log for
the nine (9) million pages of documents previously produced to the PSC.  Thereafter, Merck
proposes to follow the protocol that has been in place in the New Jersey Coordinated Litigation
whereby Merck produces a privilege log on a rolling basis approximately two (2) weeks after
documents are produced to the PSC. The form of the privilege log was previously addressed by
my letter of August 16, 2005.  You should be aware that we are currently conducting a privilege
re-review that will likely result in the production of additional VIOXX-related documents and
may address some of the issues concerning the Merck privilege log set forth in your letter of July
27, 2005.

## IV,    Foreign Regulatory and ARCOXIA Documents

        You are correct that in the negotiations over the PSC Master Discovery there has
been disagreement regarding Merck's obligation to produce ARCOXIA-related documents -- in
addition to the substantial ARCOXIA information that has been produced after extensive
negotiation with the Seeger Weiss firm -- as well as documents submitted to foreign regulatory
agencies to the PSC.  Your letter appears to suggest, however, that such negotiations have

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

4

August 19, 2005

reached an impasse and must be submitted to the Judge. We do not share your view. These negotiations effectively stopped upon receipt of Lenny Davis' letter of August 5, 2005. Judge Fallon has made it clear that he expects both the PSC and DSC to make a good faith effort to resolve all discovery issues and only bring to him those issues where there is no prospect of agreement. In light of that mandate, we believe that representatives from the PSC and DSC should once again try to resolve the limited areas of disagreement in the PSC's interrogatories and document requests until the monthly conference. If any issues are not resolved by the August 25th conference, the PSC will move to compel on September 1, 2005 and counsel for Merck will respond on September 8, 2005.

With kind regards, I remain

Sincerely,

Phillip A. Wittmann

PAW/dlm
cc:     Defense Steering Committee (via e-mail)

785517v.1