FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L[A]

2005 NOV -2  PM 3: 35

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 05-4046 | * | |
| EVELYN IRVIN PLUNKETT as Personal Representative of the Estate of RICHARD IRVIN, JR., | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY OF THOMAS M. WHEELER, M.D.**

Merck files this Opposition to Plaintiff's Motion to Exclude Opinion Testimony of Thomas M. Wheeler, M.D. Plaintiff does not contest that Dr. Wheeler is a nationally-recognized, triple board-certified pathologist who has performed or supervised hundreds of full-body autopsies over a 25-year period. Plaintiff further does not charge that Dr. Wheeler failed to conduct a thorough investigation into the subject matter of his opinions. Instead, Plaintiff can do no better than claim that Dr. Wheeler is not qualified to opine on the cause and manner of Mr.

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No_____
789939v.1

Irvin's death because his research interests have generally focused on prostate pathology rather than cardiac pathology.

Plaintiff's position is without merit. Simply put, under plaintiff's approach, pathologists would be barred from testifying on heart-related causes of death unless they are recognized specialists in cardiac pathology. Although Federal Rule of Evidence 702 requires a court to make sure that expert witnesses are qualified "by knowledge, skill, experience, training, or education" in the areas in which they are testifying, plaintiff's standard is far beyond what is required by law. *See* FED. R. EVID. 702. In fact, courts routinely find that doctors with far less experience and expertise than Dr. Wheeler are qualified to provide expert testimony on an individual's cause of death.

Plaintiff's other objections to Dr. Wheeler's testimony are equally baseless. Plaintiff challenges Dr. Wheeler's qualification to testify on the hypertrophy of Mr. Irvin's heart on the grounds that he has not lectured, published, or conducted research regarding cardiac hypertrophy. Again, plaintiff misunderstands the requirements of Rule 702. As an accomplished professor of pathology who has conducted, supervised, and instructed on full-body autopsies for many years, Dr. Wheeler is more than qualified to testify as to Mr. Irvin's cardiac hypertrophy. Plaintiff also contends that Dr. Wheeler should be barred from offering the opinion that a focal rupture of Mr. Irvin's atherosclerotic plaque played a role in his death because Dr. Wheeler had not actually observed the specific microscopic rupture site in the slides of Mr. Irvin's coronary artery tissue at the time he wrote his report. However, given that: (1) Dr. Wheeler determined the existence of the rupture through standard, accepted methods of diagnosis; (2) two of plaintiff's experts arrived at the same conclusion as Dr. Wheeler based on the same slides; and (3) other slides of Mr. Irvin's coronary arteries (specifically, Mr. Irvin's left anterior descending

789939v.1

coronary artery) unambiguously demonstrate the existence of ruptured plaque, plaintiff's objection is nonsensical.

In sum, Dr. Wheeler is clearly qualified under Rule 702 to provide testimony on the subjects for which he has been designated an expert witness. Plaintiff's motion should be denied.[1]

## I.   DR. WHEELER POSSESSES SUFFICIENT EXPERTISE TO TESTIFY ON THE CAUSE AND MANNER OF MR. IRVIN'S DEATH.

In challenging Dr. Wheeler's capacity to serve as an expert in this proceeding with respect to the cause and manner of Mr. Irvin's death, plaintiff does not – and cannot –dispute that Dr. Wheeler is a recognized expert in pathology, *i.e.*, the branch of medicine devoted to the study and diagnosis of disease. Dr. Wheeler is a nationally-recognized pathologist, currently serving as the Interim Chairman of the Department of Pathology at the Baylor College of Medicine, who has practiced and taught pathology for nearly 25 years. (*See* Expert Report of Thomas M. Wheeler, M.D. ("Wheeler Report"), *Curriculum Vitae* ("Wheeler C.V.") at 1-2, attached as Ex. 22 to Wittmann Decl.) Indeed, he is currently a member of the Board of Governors of the College of American Pathologists, the principal professional organization for American

---

[1] Plaintiff also challenges Dr. Wheeler's qualifications to testify on "the lack of evidence to link 'short-term use of 25 mg. Vioxx' with serious adverse cardiovascular events." (Plaintiff's Motion to Exclude Opinion Testimony of Thomas M. Wheeler, M.D. ("Mot.") at 1.) However, Plaintiff does not address this issue substantively in either this motion or (as she indicated she would do) in her motion challenging expert opinion testimony related to the 18-month analysis. (*See id.* at 1 n.2.) Dr. Wheeler clearly has sufficient qualifications to analyze and testify on the results of the APPROVe study – he is a board-certified pathologist with a substantial background in epidemiology; he has substantial experience with Kaplan Meier curves in his research and writing; and he has reviewed the APPROVe study, the VIGOR study, and the FDA's recent Decision Memorandum summarizing the potential for cardiovascular risk associated with all NSAIDs. (Deposition of Dr. Thomas M. Wheeler at 85:21-87:4; 121:25-122:23, 135:10-136:15, attached as Ex. 12 to Declaration of Phillip A. Wittmann in Support of Merck's Opposition Briefs ("Wittmann Decl.").)

pathologists, and he has been voted by his peers as one of America's Top Doctors – an honor bestowed upon only one to two percent of doctors nationwide. (Wheeler C.V. at 2-3; *see also* Testimony of Dr. Thomas Wheeler, *Ernst et al. v. Merck & Co.*, Inc, No. 19961*BH02 (Dist. Ct. Brazoria County Tex. filed May 24, 2002) of August 8, 2005 ("Ernst Test.") at 24:7-24:12, attached as Ex. 25 to Wittmann Decl.)

Plaintiff nonetheless contends that Dr. Wheeler should be precluded from opining on the cause and manner of Mr. Irvin's death because Dr. Wheeler lacks sufficient expertise in cardiac pathology. Plaintiff observes that "[t]his case 'sounds' in cardiac pathology" and turns on the cause of the thrombosis that led to Mr. Irvin's sudden cardiac death ("SCD"). (Mot. at 6.) Plaintiff asserts that Dr. Wheeler has only minimal experience with cardiac pathology, stating that he has no formal postgraduate education in the subspecialty; has not conducted independent research, lectured, or published in the area of SCD; has only performed a couple of autopsies involving SCD in the past six years; and has never diagnosed a case of drug-induced thrombosis formation or myocardial infarction. (*Id.* at 6-9.) Plaintiff concludes that these supposed deficiencies render Dr. Wheeler incapable of offering an expert opinion on the cause of Mr. Irvin's death.

As an initial matter, plaintiff dramatically understates Dr. Wheeler's experience in cardiac pathology. Dr. Wheeler has been board-certified in both anatomic and clinical pathology – certifications which include examination in cardiac pathology – for nearly 25 years.[2] (Deposition of Dr. Thomas M. Wheeler ("Wheeler Dep.") at 225:4-225:15, attached as Ex. 12 to

---

[2]   Notably, Dr. Bloor, one of plaintiff's expert pathologists in this case, does not share these qualifications. Dr. Bloor admitted that he is not board certified in either clinical or anatomic pathology. (Deposition of Colin M. Bloor, M.D. ("Bloor Dep.") at 9:15-10:4, attached as Ex. 1 to Wittmann Decl.) Yet plaintiff has proposed that he be permitted to testify concerning Mr. Irvin's cause of death.

4

Wittmann Decl.; *see also* Wheeler C.V. at 1.) In fact, for three years in the late 1990s, Dr. Wheeler served on the American Board of Pathology Anatomic Pathology Test Committee and help designed the anatomic pathology certification examination. (Wheeler C.V. at 3; Ernst Test. at 15:13-15:20.) Moreover, Dr. Wheeler did his pathology residency at Methodist Hospital, an institution then widely known for its expertise in cardiac pathology, and he received substantial and intensive training in cardiac pathology during his residency. (Wheeler Dep. at 224:9-225:3.) In addition, Dr. Wheeler maintained privileges at Methodist for many years after his residency, and performed numerous autopsies involving cardiovascular issues. (*Id.* at 224:11-225:20.) Over the course of his medical career, Dr. Wheeler has performed or supervised several hundred autopsies, many of which involved atherosclerotic coronary vascular disease. (*Id.* at 47:13-47:22, 225:23-226:17.) In short, Dr. Wheeler has substantial experience in cardiac pathology and the matters at issue with respect to Mr. Irvin's death.

Not only is plaintiff's argument factually baseless, but it is unsound as a matter of law. Although Federal Rule of Evidence 702 requires relevant expertise in the subject on which the expert is opining, it does not require the level of specialization plaintiff suggests. For example, the Fifth Circuit has held that an expert cardiologist had sufficient expertise to offer testimony on the extent to which a patient's heart problems caused the patient's death, even though he was not a pathologist and even though his testimony was contradicted by three testifying pathologists. *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994). In the same vein, the U.S. District Court for the Central District of California has determined that "lack of sub-specialization" by a board-certified pathologist "does not render [the pathologist's] testimony inadmissible." *In re Silicone Gel Breasts Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 916 (C.D. Cal. 2004). Other federal courts have arrived at similar conclusions. *See, e.g., Gaydar v. Sociedad Instituto*

*Gineco-Quirurgico Y Planificacion Familiar*, 345 F.3d 15, 24-25 (1st Cir. 2003) ("The proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline. In fact, it would have been an abuse of discretion for the court to exclude Dr. Rodriguez's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics." (internal citations omitted)); *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.").

In sum, Federal Rule of Civil Procedure 702 does not require a doctor to be an internationally-recognized cardiac pathologist with multiple publications in the field to provide expert testimony on cardiac-related causes of death. Rather, a proposed expert witness must have the relevant knowledge and experience. Indeed, the testimony of plaintiff's own expert pathologist, Dr. Colin Bloor, appears to contradict plaintiff's argument, as Dr. Bloor testified that general pathologists have the expertise necessary to interpret slides of specific body systems. (Bloor Dep. at 67:4-15.) Given Dr. Wheeler's extensive experience, training, and qualifications in pathology generally and cardiac pathology specifically, he clearly possesses the requisite qualifications under Rule 702 to offer testimony on the cause and manner of Mr. Irvin's death.

## II. DR. WHEELER POSSESSES SUFFICIENT EXPERTISE TO TESTIFY ON MR. IRVIN'S CARDIAC HYPERTROPHY.

Plaintiff similarly challenges Dr. Wheeler's capacity to offer expert opinion on the hypertrophy, or enlargement, of Mr. Irvin's heart. (Mot. at 9.) Dr. Wheeler testified that Mr. Irvin suffered from cardiac hypertrophy "to a small degree." (Wheeler Dep. at 157:13-157:15.) Dr. Wheeler based this conclusion on the fact that the weight of Mr. Irvin's heart was slightly

789939v.1

greater than the mean heart weight for a man his age and that Dr. Wheeler observed "microscopic evidence of hypertrophic fibers" in his review of the tissue Mr. Irvin's heart. (Wheeler Dep. at 157:17-158:13, 164:10-164:12.) Plaintiff, however, contends that Dr. Wheeler should not be permitted to offer expert opinion on these matters because he lacks sufficient expertise in the area of cardiac hypertrophy. (Mot. at 9.) Plaintiff offers two arguments in support of this contention: (1) Dr. Wheeler has not conducted research, published an article, or lectured outside his institution on cardiac hypertrophy; and (2) mean weight is not a reliable tool for determining hypertrophy. (Mot. at 9-11.)

Neither argument has merit. As noted above, Dr. Wheeler need not have made cardiac hypertrophy his primary research focus to qualify as an expert under Federal Rule 702. Rather his substantial experience and training as a pathologist and his voluminous experience with respect to cardiac-related autopsies more than qualify Dr. Wheeler to provide expert testimony on this subject. *See Holbrook*, 80 F.3d at 782 (concluding that trial court erred in excluding medical expert's testimony because expert failed to practice a particular specialty).

Similarly, the fact that plaintiff does not find Dr. Wheeler's use of mean weight persuasive is not grounds for striking Dr. Wheeler's testimony. Whether Dr. Wheeler's testimony or plaintiff's criticisms are more credible is ultimately a matter for the jury. *See Carroll*, 17 F.3d at 790. It should be noted, however, that Dr. Wheeler specifically accepted plaintiff's central criticism of the use of mean heart weight to evaluate whether Mr. Irvin suffered from cardiac hypertrophy – namely, that mean weight is an average and that the weight of Irvin's heart fell within the range for normal based on 95% confidence intervals. (Mot. at 9-10; Wheeler Dep. at 158:2-158:4.) Dr. Wheeler simply noted that certain studies had classified hearts with weights greater than the mean as enlarged. (Wheeler Dep. at 158:10-158:13.)

Furthermore, as plaintiff concedes, Dr. Wheeler did not base his testimony that Mr. Irvin suffered from cardiac hypertrophy solely on the weight of Mr. Irvin's heart; rather, it was the weight of the heart, coupled with Dr. Wheeler's findings of microscopic evidence of hypertrophic fibers, that led Dr. Wheeler to his conclusion. (*Id.* at 166:4-166:8.) Thus, plaintiff has failed to offer any grounds for disqualifying Dr. Wheeler's testimony on Mr. Irvin's cardiac hypertrophy.

### III. DR. WHEELER'S TESTIMONY REGARDING THE FOCAL RUPTURE OF THE FIBROUS CAP IS RELIABLE.

Plaintiff's final challenge is to Dr. Wheeler's finding in his expert report that two cross-sections of Mr. Irvin's coronary artery show a "focal rupture of the thin fibrous cap." (Mot. at 11.) Plaintiff notes that Dr. Wheeler testified that he did not visualize the ruptured fibrous cap, but rather concluded one was present based on other observable phenomena in the autopsy slides that he reviewed. (*Id.* at 11-12.) Plaintiff contends that this sort of reasoning is prohibited by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), and the Fifth Circuit's decision in *Black v. Food Lion*, 171 F.3d 308 (5th Cir. 1999). (*Id.* at 12.) Plaintiff is wrong for several reasons.

First, plaintiff does not contend that Dr. Wheeler's opinion on plaque rupture is in any way incorrect. Nor could plaintiff challenge the accuracy of Dr. Wheeler's opinion, since two of her own pathology experts *agree with Dr. Wheeler*. Dr. Burton and Dr. Frist plainly state that Mr. Irvin suffered plaque rupture. (*See* Deposition of Dr. Joseph L. Burton at 180:7-180:13, 181:21-181:25, 277:25-280:3, attached as Ex. 2 to Wittmann Decl.; Expert Report of Dr. Brian S. Frist, attached as Ex. 28 to Wittmann Decl.)

Second, plaintiff's argument that Dr. Wheeler speculated as to the existence of plaque rupture in his report – because the set of pathology slides he then possessed did not clearly show

the actual site of the rupture – ignores how Dr. Wheeler actually formed his opinion. In reviewing slides of Mr. Irvin's heart tissue, Dr. Wheeler observed that plaque had broken off from the cap and that a hemorrhage had occurred within the lipid-rich core. (Wheeler Dep. at 189:7-189:13, 196:5-196:6, 219:10-219:14.) Based on those observations, he diagnosed that a rupture had occurred since those two observations are classic signs of a fibrous cap rupture. (Wheeler Dep. at 220:5-220:8.) That analysis is not conjecture or speculation; rather, it is a standard method for arriving at a medical diagnosis and falls well within the guidelines of Rule 702. *See, e.g., Gen. Elec. Co.*, 522 U.S. at 146 ("[t]rained experts commonly extrapolate from existing data."); *Black*, 171 F.3d at 313 (an expert may engage in "deduction from scientifically-validated information.")

Third, plaintiff's argument is further undermined by the fact that the rupture clearly appears on additional slides produced by plaintiff to Dr. Wheeler and the Defendants after Dr. Wheeler submitted his report (but prior to his deposition). (Wheeler Dep. at 192:9-193:11; 195:7-195:20, 220:9-220:11.) The slides that formed the basis for the opinion of plaintiff's two experts (Dr. Burton and Dr. Frist) that Mr. Irvin suffered plaque rupture were made available by plaintiff for Dr. Wheeler's review just before his deposition. After reviewing this set of additional slides, Dr. Wheeler testified that they clearly demonstrated the existence of the ruptured plaque and confirmed his original opinion. An additional third set of slides – slides that plaintiff had provided to its third pathologist expert, Dr. Bloor – were reviewed by Dr. Wheeler after his deposition and did not alter his conclusions. Thus, plaintiff's challenge ultimately boils down to the contention that a medical diagnosis arrived at through standard diagnosis procedure, that was agreed to by two of plaintiff's own experts, and that was subsequently confirmed by

789939v.1

additional medical evidence should be excluded as "rank conjecture." Such a position is patently absurd.

IV.     **CONCLUSION.**

For the reasons stated above, Merck respectfully requests that this Court deny Plaintiff's Motion to Exclude Opinion Testimony of Thomas M. Wheeler, M.D.

Respectfully submitted,

*/s/ Phil Wittmann*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

789939v.1

       John H. Beisner
        Charles C. Lifland
        Richard B. Goetz
       O'MELVENY & MYERS LLP
       400 South Hope Street
       Los Angeles, CA 90071
       Phone: (213) 430-6000
       Fax: (213) 430-6407

       Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

 I hereby certify that the above and forgoing Opposition of Merck & Co., Inc. To Plaintiff's Motion To Exclude Opinion Testimony Of Thomas M. Wheeler, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 2nd day of November, 2005.

        /s/ Phil Wittmann
        _____

789939v.1