FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -1  PM 3: 57

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| | JUDGE FALLON |
| This document relates to<br>Case No. 05-3700 | |
| | MAGISTRATE JUDGE KNOWLES |
| STATE OF LOUISIANA, ex rel.<br>CHARLES C. FOTI, JR., ATTORNEY<br>GENERAL | |
| Plaintiffs, | |
| vs. | |
| MERCK & CO., INC., | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION OF DEFENDANT MERCK & CO., INC.
## TO PETITIONERS' MOTION TO REMAND

Defendant Merck & Co., Inc. ("Merck") respectfully submits this memorandum in

opposition to Petitioners' Motion To Remand.  As set forth below, the Court should deny

Petitioners' motion for two independent reasons.  First, the Court has substantial federal question

jurisdiction over this case, insofar as Petitioners' claims center around the allegedly deceptive

marketing of Vioxx®, an FDA-approved prescription drug whose marketing and inclusion in the

Louisiana Medicaid program implicates significant issues of federal law.  Second, diversity

1

Fee_____
Process_____
Dktd_____  789897CT
CtRmDep_____
Doc. No_____

jurisdiction exists because, although Petitioners have identified the State of Louisiana (a noncitizen) as a nominal party, the real party in interest is the Louisiana Department of Health and Hospitals ("DHH"), one of Petitioners and an independent state agency whose citizenship is diverse from Merck's.

## ARGUMENT

### THIS COURT HAS JURISDICTION OVER PETITIONERS' CLAIMS

Petitioners' motion should be denied because this Court has both substantial federal question jurisdiction and diversity jurisdiction over this case.

**A.   Federal Question Jurisdiction Exists Because Petitioners' Claims Turn On Substantial Federal Issues.**

First, federal jurisdiction exists under the "substantial federal question" doctrine because federal law comprehensively regulates the alleged activities at the heart of this suit — Merck's public statements regarding Vioxx.  Petitioners' negligence, redhibition, products liability, and unfair trade practices claims are premised on the allegation that Louisiana would not have paid for Vioxx prescriptions filled by Louisiana Medicaid recipients — and paid for treatment for their alleged resulting injuries — had it possessed information allegedly misrepresented or withheld by Merck.  (*See* Pet. for Injunctive Relief and Damages ("Pet.") ¶ 18.)  Petitioners state that "[the State and the DHH] relied upon those misrepresentations to their detriment, by placing Vioxx on the Louisiana Medicaid formulary and/or paying for Louisiana Medicaid recipients' Vioxx prescriptions.  [The State and the DHH] were further damaged to the extent that they paid medical expenses for those Louisiana Medicaid recipients who were injured by Vioxx."  Petitioners' Memorandum In Support Of Motion To Remand ("Pet'rs Mem.") at 4.)

This core allegation directly implicates two areas of federal law:  the Food Drug and Cosmetic Act ("FDCA"), which regulates prescription drug manufacturers' public and

2

promotional statements about prescription drugs, and federal Medicaid law, which determines both which drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs. *See* 42 U.S.C. §§ 1396r-8(d)(1)(B); 1396r-8(d)(4). Accordingly, Petitioners' allegations will require them to demonstrate violations of the FDCA and that they would not have been required to reimburse Merck for Vioxx under the Medicaid statutory provisions.

Recent Supreme Court precedent makes clear that the dependency of Petitioners' claims on the resolution of questions of federal food and drug and Medicaid law establishes substantial federal question jurisdiction over those claims. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005). In *Grable,* the United States Supreme Court held that federal jurisdiction lies over "state law claims[s] [that] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S. Ct. at 2368. In so holding, the Supreme Court clarified the limitation on its prior opinion in *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804 (1986), by making clear that a parallel federal private right of action is ***not*** necessary to establish federal question jurisdiction over state law claims. The *Grable* decision, in fact, was recently applied by an MDL court on facts directly analogous to those presented by the Petition in this case. In *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the court asserted jurisdiction over state-law claims that turned on allegations of a manufacturer's marketing a prescription drug in a manner that violated federal law. As shown below, Petitioners' claims present just such a dependency on federal law and this Court should therefore follow *Zyprexa*'s application of *Grable* and assert jurisdiction over Petitioners' claims.

1.    **Federal Law Comprehensively Regulates Merck's Statements That Underlie Their Claims.**

Federal law governs nearly every aspect of Merck's public statements regarding Vioxx. Under the Food Drug and Cosmetic Act ("FDCA"), the Food and Drug Administration ("FDA") is charged with determining whether a drug is approved for use by humans, as well as the specific uses for which it is approved.  21 U.S.C. § 393(b)(1) & (b)(2)(B).  The FDCA prohibits drug manufacturers from labeling or otherwise marketing a drug for a use that the FDA has not approved.  21 U.S.C. § 331(a) & (d); *see Wash. Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000).  As part of the federal regulatory scheme, the FDA's Center for Drug Evaluation & Research regulates prescription drug advertising, including the Package Inserts that outline benefit and risk information, and monitors marketed drugs for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market.[1]   Under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling.  21 C.F.R. § 202.1(e)(4) (2005).  Indeed, Petitioners' factual allegations recognize that approval of prescription drugs and their labeling is the function of the FDA (*see* Pet. ¶¶ 9-13), and make clear that "concealment of information from the FDA" (*id.* ¶ 21) (which violates federal law), was at the heart of Merck's alleged misconduct.  These issues will be at the center of resolving this case because Petitioners allege that Merck's alleged concealment of risk information from the FDA led to allegedly wrongful formulary and prescription drug payments by the DHH.

---

[1]    *See* Center for Drug Evaluation and Research, *Frequently Asked Questions to CDER*, Sept. 19, 2002, http://www.fda.gov/cder/about/faq/default.htm.

### 2.    Petitioners' Claims Raise Significant Issues Under the Federal Medicaid Program.

Petitioners' allegations implicate significant issues under federal Medicaid law because they depend on the interpretation and application of federal statutory provisions regulating Medicaid, which govern what can be included in or rejected from State Medicaid formularies.

The Medicaid program authorizes federal money grants to states to provide medical assistance to low-income individuals.  42 U.S.C. § 1396, *et seq.*; 42 C.F.R. § 430, *et seq.* "Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502 (1990).  In Louisiana, the Medicaid program is administered by the DHH.  42 C.F.R. § 431.10(b) (requiring states to designate "a single State agency  . . . to administer or supervise the administration of the [Medicaid] plan").

For example, under federal law, a "covered outpatient drug" is one "which may be dispensed only upon prescription" and "which is approved for safety and effectiveness as a prescription drug" under the FDCA. 42 U.S.C. § 1396r-8(k)(2)(A)(i).  *See also* Pet. ¶ 9 (discussing FDA's approval of Vioxx).

Furthermore, federal law expressly requires states, subject to certain narrow exceptions, to reimburse the covered outpatient drugs of any manufacturer that has entered into and complies with a rebate agreement with the Secretary of Health and Human Services.  42 U.S.C. § 1396r-8(d)(4)(B).  Thus, Louisiana was required under federal law to reimburse companies for drugs (such as Vioxx) if the manufacturer complied with federal requirements.

The only situation in which a state can exclude a covered outpatient drug subject to a rebate agreement from its formulary is "with respect to the treatment of a specific disease or

5

condition for an identified population (if any) only if, based on the drug's labeling . . . the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." 42 U.S.C. § 1396r-8(d)(4)(C). Even in such a situation, however, the state cannot deny coverage altogether; rather, it must condition such reimbursement on prior authorization, meaning that the state may require that it approve the drug's dispensation before it is dispensed. 42 U.S.C. § 1396r-8(d)(4)(D). Any such prior authorization program also must satisfy federally mandated requirements. 42 U.S.C. §§ 1396r-8(d)(4)(E), 1396r-8(d)(5). Because the Louisiana Medicaid program operates within this overarching federal regulatory framework, Petitioners' claims alleging that Vioxx should not have been a part of that program necessarily implicate and turn on questions of federal Medicaid law.

### 3.   Recent Federal Precedent Makes Clear That Federal Jurisdiction Lies Over Petitioners' Claim.

The Supreme Court's recent decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005) makes clear that federal jurisdiction lies over Petitioners' claims because those claims turn on a substantial question of federal law—namely, whether Merck's statements about Vioxx, the content of which is regulated by federal law, were in fact misrepresentations. In *Grable,* the Supreme Court addressed whether a quiet title claim brought in state court that depended upon the interpretation of a federal tax law provision presented substantial federal question jurisdiction, even though the plaintiff had not purported to state any claim under federal law.   In finding federal jurisdiction was present, the Court asserted unequivocally:

> [T]his Court [has] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant

6

federal issues.  The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Id.* at 2367 (citations omitted).  The *Grable* Court also clarified the Supreme Court's prior opinion in *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804 (1986).  Over the last two decades, courts have interpreted *Merrell Dow* to hold that substantial federal question jurisdiction only exists when the federal law implicated by the state-law claims provides a private right of action.   In *Grable,* the Court rejected that interpretation of *Merrell Dow,* explaining that while the provision of a federal private right of action can be evidence of whether Congress intended for there to be federal forum for the issue raised by the claims, the key question, as stated above, is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 125 S. Ct. at 2368.

The application of *Grable* to this case warrants this Court's assertion of federal question jurisdiction because Petitioners' claims turn on the application of the FDCA and federal Medicaid laws. First, the Petition alleges claims that turn directly on whether Merck "falsely and deceptively misrepresented or omitted . . . material facts concerning [the safety of] Vioxx" (Pet. ¶ 20), and, as explained above, those statements are regulated by federal law.  All of Merck's Vioxx-related communications to the DHH and to healthcare providers in Louisiana are contained within, and restricted by, warning, labeling, and marketing materials (such as the Package Insert) that are vetted, approved, and monitored by the FDA to ensure the provision of accurate up-to-date risk/benefit information.  Moreover, the DHH's management of Medicaid drug lists must comply with federal rules and laws.  La. Rev. Stat. § 46:153.3(B)(2)(a)(iii).

7

Furthermore, the LUTPA, pursuant to which the DHH is seeking actual damages, is almost identical to the Federal Trade Commission Act ("FTC Act"), and Louisiana courts have used the standard established by the Federal Trade Commission to determine what constitutes an unfair act or practice. *See, e.g., State ex rel. Guste v. Orkin Exterminating Co.*, 528 So. 2d 198, 201 (La. Ct. App. 1988) (citations to FTC opinions omitted). Therefore, any federal agency decisions concerning statements about prescription drugs will control whether Merck's alleged misrepresentations violated the LUTPA. Accordingly, federal question jurisdiction exists because "the propriety of [defendant's] actions, as prescribed under federal law . . . is at the heart of [Petitioners'] allegations." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 101-03 (2d Cir. 2001) (finding federal jurisdiction because state law tort claims were "predicated on alleged breaches of" federal securities law by defendants). *See also Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) (finding federal question jurisdiction present where interpretation of a federal right is an essential element of the state claim and is necessary to resolve the case such that "the claim[s] arise[] from state law but . . . turn on a question of federal law embedded in the matrix of state law"); *Drawhorn v. Qwest Commc'ns Int'l, Inc.*, 121 F. Supp. 2d 554, 564 (E.D. Tex. 2000) (holding that federal question jurisdiction exists where "the interpretation of the federal statutes . . . is a necessary and substantial part of the Petitioners' own causes of action").[2]

Second, because there are only narrow circumstances under which a state can exclude a covered drug like Vioxx from its Medicaid formulary, the Court will also be required to

---

[2] Although Petitioners intimate otherwise, *Grable* does not require that a federal statute be the only legal or factual issue in dispute. In fact, federal courts have asserted jurisdiction where as here, and as stated in *Grable*, the state law claims necessarily raise an issue of federal law. *See State ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 n.6 (9th Cir. 2004) (asserting jurisdiction where complaint alleged state law claims but repeatedly alleged defendants' violation of federal tariff regulation); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209, 1211 (9th Cir. 1998) (asserting subject matter jurisdiction where plaintiff corporation brought state law claims against securities association for delisting its stock on the NASDAQ and suspending its trading based in part on association's violation of federal exchange rules).

interpret federal Medicaid law in assessing the validity of Petitioners' claims. Thus, the Court will need to determine whether Louisiana was required to include Vioxx on its Medicaid formulary because, under the federal statutory and regulatory provisions, it was a "covered outpatient drug," (*i.e.,* it was "dispensed only upon prescription" and had been "approved for safety and effectiveness" under the FDCA), that was subject to a rebate agreement between Merck and the Secretary of Health and Human Services. 42 U.S.C. § 1396r-8(d)(4)(B). In addition, as noted above, Louisiana could have excluded Vioxx from its Medicaid formulary "only if, based on the drug's labeling . . . the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness or clinical outcome . . . over other drugs included in the formulary." 42 U.S.C. § 1396r-8(d)(4)(C) (emphasis added). Because the Petition expressly raises the issue of whether Vioxx was less safe than other cheaper and effective drugs in its class (Pet. ¶ 16), this federal provision is implicated as well.

In addition, even if Louisiana could have excluded Vioxx from its Medicaid formulary under those federal standards, federal law would still have limited Louisiana's ability to refuse payment for Vioxx. As noted above, in the narrow circumstances where a state can exclude medication from its Medicaid formularies, federal law requires the state to pay for those drugs, subject to a prior authorization program, which itself is subject to federally mandated requirements. 42 U.S.C. §§ 1396r-8(d)(4)(D), 1396r-8(d)(4)(E), 1396r-8(d)(5). Clearly, the significant dependency of Petitioners' claims on federal Medicaid law is sufficient to come within *Grable*'s grant of federal question jurisdiction.

Merck's application of *Grable* is confirmed by the MDL court's ruling in *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), which asserted jurisdiction over third-

789897v.1

party claims based on substantial federal question jurisdiction.  As in this case, the complaint in

*Zyprexa* purported to state claims under state law based on alleged conduct regulated by the

FDA.  *Id.* at 172.  The core allegation was that the manufacturer of the prescription drug Zyprexa

marketed the drug for off-label or non-FDA-approved uses, which, as is alleged here, caused the

DHH to disburse wrongfully millions of dollars in Medicaid funds to pay for Zyprexa

prescriptions and the alleged resulting Zyprexa-related injuries.  The MDL court applied *Grable*

to assert jurisdiction over the state-law claims seeking reimbursement of those Medicaid funds

because of the "substantial federal funding provisions involved" and because allegations that the

manufacturer had improperly marketed Zyprexa for non-FDA-approved uses rendered the case

"federally oriented."  *Id.* at 172-73.  The same federal funding provisions are integral here,[3] and

the question of whether Merck's federally-regulated marketing activities surrounding Vioxx

involved misrepresentations, as well as the interface between Petitioners' claims and federal

Medicaid program requirements, render this case equally "federally oriented."  Accordingly, as

in *Zyprexa,* this Court should conclude that under *Grable* federal question jurisdiction exists.

Petitioners' efforts to distinguish *Zyprexa,* arguing that it is "flawed" and "an 'off-label'

marketing and promotion case" (Pet'rs Mem. at 10), are unavailing.  First, the *Zyprexa* holding

was not limited to claims based on off-label marketing; rather, the court found that off-label

marketing was one type of core allegation that presents "federally-oriented" issues.  Promotional

statements about prescription drugs are just as much the province of the FDA as off-label

promotion, and thus, Petitioners' claims here also are substantially federally oriented and come

---

[3]     For fiscal year 2004 (October 1, 2003 to September 30, 2004), for example, federal funds accounted for 71.63% of Louisiana Medicaid financing.  *See* Federal Financial Participation in State Assistance Expenditures; Federal Matching Shares for Medicaid, the State Children's Health Insurance Program, and Aid to Needy Aged, Blind, or Disabled Persons for October 1, 2003 Through September 30, 2004, 67 Fed. Reg. 69,223, 69,224 (Nov. 15, 2002), *available at* http://www.aspe.hhs.gov/health/fmap04.htm) (attached as Ex. A).  Thus, the majority of the money Petitioners seek to recoup through this lawsuit is federal money.

within *Zyprexa.*   Second, Petitioners make much of *Grable's* caution against disrupting the division of labor between federal and state courts and deem *Zyprexa* flawed for not undertaking that inquiry.  Petitioners argue that because the plaintiffs' bar, which represents Petitioners here, is bringing so many suits against pharmaceutical companies, such suits are outside of *Grable.* To embrace this logic is to ignore *Grable*'s.   Merck does not argue that every case brought against a pharmaceutical company is within *Grable.*  Merck's point, rather, is that as in Zyprexa, **this case** is removable to federal court because (1) the core of the Petition is Merck's alleged misrepresentations about Vioxx (which the Petition exhaustively catalogs) and federal law regulates those representations; and (2) the Petition seeks to recoup Medicaid funds, which are mainly federal funds and dispensed subject to certain federal requirements.  375 F. Supp. 2d at 172.

Petitioners' concern that asserting jurisdiction here would swing open the gates of federal courts to product liability claims is misplaced.  (Pet'rs Mem. at 8.)  After all, the substantial federal issues that Petitioners' claims implicate are not raised by claims asserted by a consumer or private third-party payor.  Of the thousands of cases involving Vioxx transferred to this Court and being litigated around the country, this case is one of only three cases brought by state Medicaid agencies.  Thus, there is no merit to Petitioners' argument that removal of this case would disturb the balance of judicial responsibilities between state and federal courts.

### 4.    Petitioners' Cases Are Inapposite.

*Grable* also negates Petitioners' reliance on the "pharmaceutical cases" they cite.  *See, e.g., Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838 (S.D. Ohio 2002); *Rubel v. Pfizer, Inc.*, 276 F. Supp. 2d 904 (N.D. Ill. 2003) (Pet. Mem. at 11-12); *Minnesota v. Pharmacia*

789897v.1

*Corp.*, 278 F. Supp. 2d 101 (D. Mass. 2003).[4]  Each case was decided well before *Grable* and

remanded the case based on the factor that *Grable* expressly overrules—namely, the lack of

any private right of action in the federal law implicated by the state law claims.  *See Little*, 227

F. Supp. 2d at 856-57; *Rubel*, 276 F. Supp. 2d at 907-08; *Pharmacia Corp.*, 278 F. Supp. 2d at

103.  Moreover, none of those cases involved the federal Medicaid provisions at issue here.

*Rubel* and *Little* involved private plaintiffs who were not seeking to recover Medicaid funds on

behalf of a state Medicaid agency.  *Pharmacia Corp.* addressed allegations of price inflation.

None of these cases alleged that a state would have refused to agree to pay for any particular

medication through its (mostly federally-funded) Medicaid program, and thus none involved

the substantial federal questions the Petition here raises.

The *Grable* decision also makes clear that Petitioners' reliance on *Merrell Dow*

*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) is misplaced.  The decision expressly

clarifies the narrowness of *Merrell Dow*, stating that "[*Merrell Dow*] did not mean to make a

federal right of action mandatory" and "disclaimed the adoption of any bright-line rule."  125 S.

Ct. at 2370.  Instead, *Merrell Dow* requires on a case-by-case basis "'careful judgments' about

the 'nature of the federal interest at stake.'"  *Id.* (quoting *Merrell Dow,* 478 U.S. at 814 & n.12).

The *Zyrexa* court also noted that *Grable* advised a case-by-case approach and as such, "*Merrell*

*Dow* must now, under *Grable,* be reviewed to determine whether it should be distinguished on its

facts.  The specific allegations and subtle distinctions in pleadings among pharmaceutical cases

may require exercise of jurisdiction in cases which appear close to, but jurisdictionally different

from, *Merrell Dow.*"  375 F. Supp. 2d at 172.

The present case is just such a case.  The federal interest presented by the Petition is far

---

[4]  Petitioners' contention that only "pharmaceutical cases" are applicable to the federal question analysis is
without merit. (Pet'rs Mem. at 10).  What matters is not the industry involved in the action, but, as *Grable*
makes clear, the extent to which the allegations and state law claims necessarily turn upon federal law.

more integral to Petitioners' claims here than in *Merrell Dow* where "the federal statute [at issue] was merely incorporated by reference as a standard of conduct in a state negligence action." *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987); *see also Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 551 (8th Cir. 1996) (noting that "the federal standard used in *Merrell Dow* was merely one criterion the jury could use to decide whether the defendant's acts were unreasonable as a matter of state law"); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000) ("[*Merrell Dow*] clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised in a complaint framed in terms of state law and if resolution of that federal question is necessary to the resolution of the state law claim.").

Here, in contrast, Petitioners' pleading, as in *Zyprexa,* goes far beyond borrowing a federal standard for purposes of assessing state-law negligence. Rather, Petitioners' entire claim rests on one core allegation – that Merck intentionally or knowingly misrepresented the safety of Vioxx. Moreover, the substantial federal issues raised by the Petition implicate not just the FDCA, but also federal Medicaid law. Thus, the Petition raises federal issues that are far more substantial than the mere reference to an FDCA standard at issue in *Merrell Dow*. Nor, after *Grable*, can *Merrell Dow* be applied to prohibit federal jurisdiction over any case involving litigation over a pharmaceutical product, as Petitioners seem to suggest.

Because it is federal law and not state law that determines whether a statement concerning a prescription drug is a misrepresentation, Petitioners' claims "present a core of substantial issues more federally oriented than those in *Merrell Dow*," 375 F. Supp. 2d at 172-73, and thus this Court may assert federal question jurisdiction.

13

**B.      Diversity Jurisdiction Exists Over Petitioners' Claims.**

    **1.      The DHH is the Real Party in Interest.**

Second, this matter is also subject to diversity jurisdiction because the real party in interest – the DHH – is diverse from Merck.

Although the Office of the Attorney General filed this suit in the name of the State of Louisiana, it is clear that the real party in interest is not the state itself, but rather the DHH.[5] The DHH is the agency that administers both federally-provided and state-provided Medicaid funds in Louisiana, and is the only entity that could have detrimentally relied on Merck's alleged misstatements by providing Medicaid coverage for Vioxx.  The Petition, in fact, repeatedly references as the key damages sought the Medicaid funds allegedly wrongfully disbursed by the DHH in reliance on Merck's alleged misrepresentations.  (*See* Pet. ¶¶ 2, 18, 22, 24, 32, 33, 53, 57, 60, 61, 62, & Prayer for Relief ¶ 6.)  Under Fifth Circuit standards, the real party in interest is the entity that holds the substantive right sought to be enforced, even if it will not ultimately benefit from any recovery.  *See Farrell Constr. Co. v. Jefferson Parish,* 896 F.2d 136 (5th Cir. 1990).  Because this case involves misstatements allegedly made to and relied on by the DHH for the purpose of administering the Medicaid program, it is the DHH's substantive rights Petitioners' claims put at issue.

The presence of the Attorney General and the State of Louisiana in the caption of the Petition does not destroy diversity, because "[i]f a state is named as a party, but has no real substantial legal interest in the controversy, its nominal status does not defeat federal diversity jurisdiction." *Jakoubek v. Fortis Benefits Ins. Co.,* 301 F. Supp. 2d 1045, 1049 (D. Neb. 2003)

---

[5]    Where the Attorney General brings an action on behalf of a state agency, either the Attorney General or the state agency is the real party in interest.  In other words, the Attorney General is considered a nominal party if the court finds that the state agency is a real party in interest. *See State ex rel. Guste v. Fedders Corp.,* 524 F. Supp. 552 (M.D. La. 1981) (finding Louisiana Department of Urban and Community Affairs to be independent of the state and a Louisiana citizen).

789897v.1

(finding that State of Nebraska defendants were nominal parties where they had no financial interest in insurance benefits being litigated), citing *Ex parte State of Nebraska*, 209 U.S. 436, 445 (1908). Here, the Attorney General has no real substantial interest in the controversy, because under Louisiana law, as explained below, neither the Attorney General's office, nor the general state treasury will benefit from any recovery of Medicaid funds that may be awarded in this action. *See* La. Rev. Stat. § 46:438.6(A). Therefore, the Attorney General is not the real party in interest, because he has "no ownership or interest in the benefits at issue." *Jakoubek*, 301 F. Supp. 2d at 1049; *see also State of Louisiana, ex rel. Guste v. Fedders Corp.*, 524 F. Supp. 552 (M.D. La. 1981) (finding Louisiana Department of Urban and Community Affairs to be independent of the state and a Louisiana citizen where the action brought by the Attorney General on its behalf would not benefit the state treasury).

The LUTPA also makes clear that the claims for damages asserted in the Petition are those of the DHH because it does not authorize the Attorney General to sue for damages. The statute specifies that only a person who has suffered an ascertainable loss of money or movable property "may bring an action individually *but not in a representative capacity* to recover actual damages." La. Rev. Stat. § 51:1409 (emphasis added). Because the DHH is alleged to have suffered the ascertainable monetary loss that this suit seeks to recover, it is the real party in interest. In fact, Petitioners themselves recognize this limitation on the Attorney General's authority by mentioning the DHH only in the Prayer for Relief, which requests "pursuant to the LUTPA . . . all remedies available to the State of Louisiana *and/or DHH under La. Rev. Stat. Ann. §51:1409, including actual damages*." (Pet., Prayer for Relief ¶ 4.)[6]

---

[6]  This statement in the Petition, of course, squarely contradicts Petitioners' statement in their motion to remand that "[q]uite simply, DHH does not have either the Constitutional or legislative authority to bring the LUTPA claims that the Louisiana Attorney General has advanced in this suit." (Pet'rs Mem. at 13).

2.    **The DHH is a Louisiana Citizen Under *Tradigrain*.**

The DHH is a citizen of Louisiana for purposes of determining diversity jurisdiction. Petitioners state correctly that normally a state is not a "citizen" for diversity jurisdiction purposes (Pet'rs Mem. at 12), but wholly ignore that if an "agency is an independent one, separate and distinct from the state," the agency is deemed a citizen for purposes of diversity analysis. *Tradigrain, Inc. v. Miss. State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983). In *Tradigrain*, the Fifth Circuit set forth an illustrative list of factors for determining whether an agency is independent of the state for diversity purposes. *Id.* The key factors include: whether the agency has been granted the right to hold and use property; whether it has the express authority to sue and be sued; the extent of the agency's independent management authority; its power to make its own hiring decisions and enter into contracts; whether the state is responsible for the agency's debt; and the degree of general financial autonomy of the agency. *Id.* at 1132. In applying these factors, "the essential question is whether the state is the real party in interest in the lawsuit." *Id.* Thus, no one factor is dispositive, and "the court must balance [all factors] against each other in reaching its conclusion." *Id.* at 1133; *see also PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416 (5th Cir. 1996). But *the crux* of the *Tradigrain* analysis is the degree of independent operational and financial autonomy exercised by the state agency. 701 F.2d at 1132.

As discussed below, DHH is a citizen under *Tradigrain* because the statutory framework that governs the organization and operation of the DHH fulfills virtually all of the factors set forth in *Tradigrain* and because the DHH is set up to operate independently of the state, especially with regard to the damages sought in this action.

### a.   The DHH Has Been Granted The Right To Hold And Use Property.

One of the factors considered under *Tradigrain* is whether the agency has the right to hold and use property.  The DHH satisfies this factor because it controls many pieces of property attendant to its public health function.  *See* Louisiana Department of Health & Hospitals, *Current Reports*, http://www.dhh.louisiana.gov/reports.asp (*see* Administrative and Financial Reports) (providing appraisal reports for every piece of property under DHH control).  The DHH controls, maintains, and operates more than sixty hospitals, mental health centers, drug and alcohol rehabilitation centers, and forensic facilities throughout the state.  (*See* List of DHH Facilities (attached as Ex. B).)[7]  The Secretary of the DHH also may grant rights of way, servitudes, and easements across state-owned lands under his jurisdiction.  La. Rev. Stat. § 36:254(B)(6) & (C).

### b.   The DHH Has The Authority To Sue And Be Sued In Its Own Name.

*Tradigrain* also asks whether the agency can sue or be sued in its own name.  This factor is met here and Louisiana law provides this independent power to the DHH.  *See* La. Rev. Stat. § 36:251(A).  *See also Dep't of Health & Rehab. Svcs., State of Florida v. Davis*, 616 F.2d 828, 833 (5th Cir. 1980) (finding the Florida Department of Health and Rehabilitative Services a state citizen because it is invested with the power to sue and be sued).

### c.   The DHH Has Independent Management Authority.

A key factor to consider under *Tradigrain* is whether the agency exercises significant independent management authority.  There is no question that this factor is met, particularly with respect to Medicaid funds, which Petitioners seek to recoup.  The DHH by law has exclusive authority to manage Louisiana Medicaid funds. Louisiana law vests the day to day operational

---

[7]     As of February 2005, this document was available at http://www.gcr1.com/fpc/faclist2.asp.  The document appears to be no longer available on the internet.

789897v.1

and financial control of the state Medicaid program in the DHH.  La. Rev. Stat. § 36:254.  Most, if not all, of the expenditures made by the DHH for Vioxx came from Medicaid funding.

Moreover, the DHH spends mainly federal, not state, funds.  The DHH is "the sole agent of the state . . . in the administration of federal funds granted to the state or directly to the department to aid in the furtherance of any function of the department or its offices, including but not limited to funding for the Medical Assistance Program [Medicaid]."  *Id.* § 254(A)(6)(a).

Furthermore, the DHH can be a party to contracts.  It enters into Provider Agreements with health care providers pursuant to its making payments under the Medicaid program.  *Id.* § 46:437.11.  The DHH also independently operates a quasi-judicial process by which claims are reviewed and sanctions imposed.  *Id.* § 437.4.  The DHH can even independently settle claims disputes, *id.* § 437.5, as well as terminate Provider Agreements for cause and, under certain circumstances, without written notice.  *Id.* § 437.11.

The DHH also exercises significant, independent management authority apart from the Medicaid program.  The DHH sets its own policies, promulgates rules necessary to its function, and advises the governor on its administration.  La. Rev. Stat. § 36:254(A).  In addition, the DHH allocates funding among medical education institutions and employs personnel.  *Id.*

### d.     The DHH Will Receive Any Damages Awarded.

*Tradigrain* also counsels an assessment of who will receive any damages awarded.  In *Tradigrain,* the state was the defendant, and therefore the Fifth Circuit deemed it pertinent to the independence inquiry whether the state would pay any judgment against the DHH.  But here, the DHH is one of Petitioners and this suit has been brought to recover DHH funds.  The issue, therefore, is not whether state funds will be used to pay any potential judgment, but rather whether the state will *receive* any damages awarded.  Here the state would not receive any monies recovered.  Under La. Rev. Stat. § 46:446, the DHH has a privilege on amounts received

18

by a state Medicaid recipient from a third party. *Id.* § 46:446(F). Moreover, as discussed above, the federal government contributes the majority percentage of the cost of the Louisiana Medicaid program. When the DHH receives a third party reimbursement for Medicaid payments, the DHH must pay the federal government its portion of that reimbursement, as determined by its federal medical assistance percentage. 42 C.F.R. § 433.140 (2005). Therefore, just over 70% of any judgment awarded to reimburse the DHH in this case must be paid by the DHH to the federal government. *See supra,* footnote 3.

### e. The DHH Exercises Significant Financial Autonomy, Especially With Regard To The Damages This Action Seeks To Recover.

Finally, *Tradigrain* instructs courts to consider whether the agency exercises a significant degree of financial autonomy. There is no doubt that the DHH fulfills this factor. Almost $4.9 billion of the DHH's budget is earmarked for payments to private providers of healthcare to Louisiana residents eligible for Medicaid. *See* H.B. 1 at 109-111, 2004 Reg. Sess. (La. 2004), *available at* www.legis.state.la.us/leg_docs/04RS/CVT1/OUT/0000LWO8.PDF (excerpts attached as Ex. C). As noted previously, the Secretary of the DHH is vested with the sole authority to administer these funds. As approximately $3.6 billion of the $4.9 billion is covered by federal funds, the Secretary autonomously disburses mostly non-state funds pursuant to the Medicaid program. *Id.* at 111. In fact, the majority of the DHH's budget is federally funded. For example, for fiscal year 2004-2005, the DHH budget is over $6 billion, 65.5% of which is federally-funded. *See* H.B. 1 at 103-136 (attached as Ex. C).

Furthermore, as mentioned, the DHH has a privilege in payments made by third parties to state Medicaid recipients to recover medical assistance payments it provided, La. Rev. Stat. § 46:446(F), and it is responsible for returning to the federal government its portion of such payments. 42 C.F.R. § 433.140 (2005).

19

\*       \*       \*

In sum, application of the *Tradigrain* factors makes clear that the DHH is an independent entity for the purpose of federal diversity jurisdiction because Louisiana law empowers it with a significant degree of independent operational and financial autonomy.   701 F.2d at 1132. Moreover, because the DHH is the real party in interest, complete diversity exists between that agency (which is a Louisiana citizen) and Merck (which is a citizen of New Jersey).

Petitioners' cases are not to the contrary.   In fact, the only case they cite, *Texas Department of Housing & Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922 (5th Cir. 1995) (Pet'rs Mem. at 12), contradicts their position.   There, the Fifth Circuit, applying the *Tradigrain* factors, held that the Texas Housing Authority ("THA") is a citizen for diversity purposes given its "relative independence in controlling its operations and managing its finances." *Id.* at 928.   The Court found that the THA had the right to hold and use property and to sue and be sued in its corporate name, and was responsible for preparing its own budget and managing its own finances.   The THA also had the power to make contracts and employment decisions. *Id.* at 926-27.   As set forth above, the DHH exercises similar powers, and therefore, it is an independent entity and a Louisiana citizen.   The Fifth Circuit has made clear that this independent status is not undermined by an agency's affiliation with the state:

> Although there are, necessarily, many ties between THA and the State, this would be true with any state created agency no matter how independent . . . Given THA's relative independence in controlling its operations and managing its finances, we hold that the state was not the real party in interest, and that THA is indeed a citizen for purposes of our diversity jurisdiction.

*Id.* at 928.

This same reasoning applies to the DHH, and thus Petitioners' motion to remand should be denied on the ground of diversity jurisdiction as well.

20

789897v.1

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that the Court deny Petitioners' Motion to Remand and assert jurisdiction over this matter.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

21

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Remand Opposition has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 1st day of November, 2005.

789897v.1

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED