UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 05-4046* | * | |
| EVELYN IRVIN PLUNKETT as Personal Representative of the Estate of RICHARD IRVIN, JR., | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**MOTION OF MERCK & CO., INC. ("MERCK') TO EXCLUDE
(1) EVIDENCE OF MOTIVE AND (2) EVIDENCE RELATING TO
THE ASSETS AND PROFITABILITY OF MERCK OR TO THE COMPENSATION
AND FINANCIAL DECISIONS OF ITS EMPLOYEES**

(MOTION IN LIMINE NO. 2)

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, and 403, hereby moves to exclude (1) evidence of motive and (2) evidence relating to the assets and profitability of Merck or to the compensation and financial decisions of its employees. The facts and law supporting this motion are more fully set

790332v.1

forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

           Respectfully submitted,

           */s/ Dorothy H. Wimberly*
           Phillip A. Wittmann, 13625
           Dorothy H. Wimberly, 18509
           STONE PIGMAN WALTHER
           WITTMANN L.L.C.
           546 Carondelet Street
           New Orleans, Louisiana  70130
           Phone: 504-581-3200
           Fax: 504-581-3361

           Defendants' Liaison Counsel

           Philip S. Beck
           Adam L. Hoeflich
           Tarek Ismail
           BARTLIT BECK HERMAN PALENCHAR
           & SCOTT LLP
           54 West Hubbard Street, Suite 300
           Chicago, Illinois  60610
           Phone:  312-494-4400
           Fax: 312-494-4440

           Douglas Marvin
           WILLIAMS & CONNOLLY LLP
           725 Twelfth Street, N.W.
           Washington, D.C.  20005
           Phone: (202) 434-5000
           Fax: (202) 434-5029

           John H. Beisner
           Charles C. Lifland
           Richard B. Goetz
           O'MELVENY & MYERS LLP
           400 South Hope Street
           Los Angeles, CA 90071
           Phone: (213) 430-6000
           Fax: (213) 430-6407

           Attorneys for Merck & Co., Inc.

790332v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Its Employees has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*Dorothy H. Wimberly*

790332v.1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE (1) EVIDENCE OF MOTIVE AND (2) EVIDENCE RELATING TO THE ASSETS AND PROFITABILITY OF MERCK OR TO THE COMPENSATION AND FINANCIAL DECISIONS OF ITS EMPLOYEES

(MOTION IN LIMINE NO. 2)

This case is about whether Vioxx® caused the death of Richard Irvin, and, if it did, whether Merck had given adequate warnings to his prescribing doctor.  It is not about the "motives" of Merck or its employees, the assets or profitability of Merck, or how much Merck's CEO and other employees earned.   Those issues have nothing to do with whether the 25 mg of

790334v.1

Vioxx that Mr. Irvin allegedly took for less than a month injured him, or whether Merck provided adequate warnings. Those issues have no place in actions that, like this case, are based on strict liability or negligence.

Moreover, such evidence has no place in a trial limited solely to liability for compensatory damages.[1] Plaintiff is limited to the issues raised by her claims, and she should not be allowed to inflame the jury with assertions that are legally irrelevant. Moreover, the Court should forestall any attempt by plaintiff to do so here before *voir dire* examination of jurors begins. Any such argument or evidence would improperly seek to appeal to jurors' biases and solicit a verdict based on passion and prejudice instead of relevant facts. That is exactly the type of trial tactic that Federal Rule of Evidence 403 was designed to prevent.

I.  **EVIDENCE OR ARGUMENT CONCERNING MERCK'S PURPORTED "MOTIVES" IS IRRELEVANT AND INADMISSIBLE.**

This case will turn on whether 25 mg of Vioxx allegedly taken for les than a month caused Mr. Irvin's death and, if so, whether Merck's warnings regarding the risks associated with Vioxx use were adequate. Evidence is generally deemed relevant only if it has some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. A "central consideration in determining probative value is how strongly the proffered evidence tends to prove an issue of consequence in the litigation." *United States v. Palmer*, 37

---

[1] Where, as here, the Court has bifurcated liability and punitive damages issues, plaintiff must first establish Merck's liability for compensatory damages before it is determined whether a second stage addressing punitive damages is even necessary. *See O'Malley v. United States Fid. & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) (approving bifurcation of liability and bad faith punitive damage claims); *State Farm Fire & Cas.y v. Woods*, 896 F. Supp. 658, 659-60 (E.D. Tex. 1995) (bifurcating liability and punitive damages issues and noting that evidence of a party's net worth would "severely prejudice" the calculation of actual damages).

2

F.3d 1080, 1084 (5th Cir. 1994). "Evidence which is not relevant is inadmissible." FED. R. EVID. 402.

If prior Vioxx trials are any guide, plaintiff will attempt to introduce evidence that she contends shows Merck rushed Vioxx to market because of various internal factors, including the existence of new drugs in development, its possible effect on sales and actual or projected profitability, and possible competition from Celebrex®. But evidence of these possible "motives" has no logical connection to any fact of consequence at issue here; they do not relate to either the cause of Mr. Irvin's heart attack or the information his prescribing physician (and son-in-law), Dr. Schirmer relied on. *See, e.g., In re Norplant Prod. Liab. Litig.*, No. MDL 1038, 1997 U.S. Dist. LEXIS 11118, at *1-2 (E.D. Tex. Feb. 19, 1997) (excluding evidence of pharmaceutical company's gross profit margins because "the evidence is not relevant to any failure to warn issue."). Additionally, evidence of purported "motives" of Merck or its employees concerning new drugs in development, sales, actual or projected profitability, or competition from other medications is irrelevant and inadmissible in an action based on either negligence or strict liability. *See, e.g., Kunz v. Utah Power & Light Co.,* 913 F. 2d 599, 605 (9th Cir. 1990) (since "neither motive nor intent are material in a negligence action . . . the district court could have concluded that evidence tending to prove a business motive for Utah Power's conduct was excludable as irrelevant." (internal citation omitted)); *Gray v. Hoffman-La Roche,* 82 Fed. Appx. 639, 651 (10th Cir. 2003) (defendant company's "alleged motive for failing to issue a stronger warning is immaterial to any element of [plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case") (unpublished opinion) (footnote omitted); *La Plante v. Am. Honda Motor Co.,* 27 F.3d 731, 740 (1st Cir. 1994) (holding that evidence of manufacturer's profits were inadmissible at retrial because likely prejudice

3

outweighed any probative value and trial judge "did not alert the jury to the impropriety of punishing Honda for an unsavory motive").

In short, evidence purporting to show Merck's "motives" is irrelevant to any issue to be determined in the compensatory phase of trial of this case.[2]

## II. ADMITTING EVIDENCE OF MERCK'S PURPORTED "MOTIVES" FOR ITS MARKETING ACTIVITIES WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND UNDUE DELAY.

Excluding evidence allegedly showing Merck's motives for its marketing activities is independently warranted to prevent unfair prejudice, juror confusion, and undue delay. *See* FED. R. EVID. 403. Merck denies that it acted with any improper motive and, as discussed above, an examination of Merck's motives should not be a part of this phase of trial. But again, if prior Vioxx trials are any guide, plaintiff will attempt to mischaracterize documents and introduce irrelevant evidence allegedly bearing on motive to portray Merck as a "bad actor" and to suggest that Merck recklessly rushed Vioxx to market recklessly. Admitting evidence proffered for the purpose of inflaming the jury's prejudices would be improper, particularly where it would shift the juror's attention away from the facts of the case and toward unrelated, collateral matters.

---

[2] Even if evidence of a generalized profit "motive" were relevant to plaintiff's fraudulent misrepresentation and concealment claims – and it is not – those claims fail as a matter of law, and plaintiff should not be permitted to use defunct claims as a vehicle to introduce irrelevant and inflammatory evidence. Plaintiff's concealment claims are essentially the same as her failure-to-warn claim, recast in terms of "intentional suppression" of material information. (*See* Compl. at ¶ 197(a) (Merck "fraudulently withheld and concealed information about the substantial cardiovascular risks of using Vioxx.").) But Florida law does not recognize an "intentional suppression/failure to warn" claim. *Jones v. GMC*, 24 F. Supp. 2d 1335, 1338-39 (M.D. Fla. 1998) ("Florida courts ... have not recognized 'intentional suppression/failure to warn' as a separate and independent failure to warn claim in a products liability action.") (citing *Ferayorni v. Hyundai Motor Corp.*, 711 So. 2d 1167 (Fla. Dist. Ct. App. 1998)). Furthermore, plaintiff does not – and cannot – claim that Mr. Irvin or Dr. Schirmer saw or relied on any Merck marketing or promotional materials, which is a prerequisite to establishing a *prima facie* case of fraud based on an affirmative misrepresentation. *See Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1483 (M.D. Fla. 1992).

Even if evidence of Merck's purported "motive" had any probative value, the primary effect of such evidence would be to distract the jury from what is at issue in this case: whether 25 mg of Vioxx allegedly taken for less than a month caused Mr. Irvin's heart attack and, if so, whether Merck adequately warned Mr. Irvin's physician of the medication's risks. *See* FED. R. EVID. 403.

Admitting evidence allegedly showing Merck's internal corporate rationale for its marketing strategy also carries a high risk of confusing the jury. Such evidence can only distract the jury from the core issues in the case. *See United States v.* Simkanin, 420 F.3d 397, 412-13 (5th Cir. 2005) (upholding the exclusion of tax law sources in a tax evasion case due to the likelihood of confusing the jury as to the state of the law); *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3rd Cir. 1980) ("[Evidence] is unfairly prejudicial if it ... may cause a jury to base its decision on something other than the established propositions in the case.").

Moreover, admission of this "motive" evidence would result in undue delay because Merck would be compelled to contest relevance and admissibility on an act-by-act basis. Courts have excluded tangential evidence under Rule 403 or analogous rules in other jurisdictions where the risk of confusion and waste of time would be considerable. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence because, *inter alia*, "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources . . . ."); *see also, e.g., Bob Maxfield, Inc., v. American Motors Corp.*, 637 F.2d 1033, 1039 (5th Cir. 1981); *Wilson v. Bicycle S., Inc.*, 915 F.2d 1503, 1510 (11th Cir. 1990); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) (the waste of the trier's time is a particularly telling factor in complex and protracted litigation), *aff'd*, 818 F.2d 187 (2d Cir. 1987). If such evidence were admitted, Merck

also would be entitled (and obligated) to introduce contrary evidence to demonstrate both that its internal marketing motivations were not wrongful and that, in any case, they should not affect the jury's findings in this case. The result would be a lengthy diversion into a trial of an entirely tangential issue. Such undue delay and needless waste of this Court's time is an independent reason to exclude evidence of Merck's purported internal motives.

### III.   EVIDENCE OR ARGUMENT REGARDING ASSETS, PROFITABILITY, AND EMPLOYEE COMPENSATION IS IRRELEVANT AND INADMISSIBLE.

Plaintiff further should not be permitted to make the hyperbolic claim, made in a different Vioxx case, that Merck's former CEO and others managed the company for the purpose of their own enrichment and that of shareholders and at the expense of the safety of its products. Any such assertion is completely baseless. Moreover, assuming for the sake of argument that it were true (it is not), this allegation has no probative value with respect to whether Merck is liable for Mr. Irvin's heart attack. Such alleged "evidence" does not go to the issue of whether Vioxx injured Mr. Irvin or whether Merck provided adequate warnings to his physician, Dr. Schirmer. *See, e.g., In re Norplant*, 1997 U.S. Dist. LEXIS 11118, at *1-2 (excluding evidence of defendant's gross profit margins as irrelevant).

Nor is any such evidence relevant to show improper "motive" in the manner in which Merck developed, tested, and marketed Vioxx. As discussed above, motive evidence is not relevant in actions based on theories of negligence and strict liability, and it is particularly inappropriate in the first compensatory phase of this bifurcated trial. *See, e.g., Woods*, 896 F. Supp. at 660 (prohibiting the introduction during the first phase trial of "any evidence … bearing only on punitive damages.").

Simply put, financial evidence pertaining to Merck employees and to Merck itself has no probative value in connection with any of the issues that will determine liability for

compensatory damages. It is thus irrelevant and inadmissible.[3]

IV. **ADMITTING EVIDENCE OF MERCK'S ASSETS, PROFITABILITY, OR THE COMPENSATION OR FINANCIAL DECISIONS OF ITS EMPLOYEES WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND UNDUE DELAY.**

Federal Rule of Evidence 403 provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. In determining whether to exclude evidence on Rule 403 grounds, the Court must balance the probative value, if any, of the proffered evidence against the prejudice to the opposing party, delay, and jury confusion that admission of the evidence would cause. Here, evidence regarding Merck's assets, profitability, and employee compensation has nothing to do with whether Vioxx caused Mr. Irvin's heart attack or whether Merck adequately warned of Vioxx's risks. Allowing plaintiff to introduce or even comment on that evidence in this initial stage of trial will seriously prejudice Merck.

Plaintiff will have every opportunity to present evidence concerning causation and the adequacy of Merck's warnings. But the compensation paid to Merck executives or evidence of Merck's wealth simply has no bearing on these, or any other, issues to be tried. Permitting plaintiff to adduce evidence of this nature risks invoking any latent antipathy, animosity, or resentment that jurors might harbor towards large corporations or their officers. Evidence proffered with the intent to inflame a jury's prejudices in this manner is plainly improper, particularly where the effect is to divert the jurors' attention from the outcome-determinative

---

[3] Merck does not concede that evidence of financial status would be admissible in whole or part even in a punitive damages phase of trial. Punitive damages are not sought from any of Merck's officers or employees. Moreover, Merck would object to admitting evidence of its assets or wealth on constitutional grounds. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-23, 429 (2003) (prohibiting exemplary damages awards based on conduct having no relationship to the plaintiff's alleged injury).

facts and, instead, to unrelated, collateral matters. *See* FED. R. EVID. 403. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("We agree with the overwhelming majority of courts which have examined this issue and which have disapproved of the use of a defendant's financial condition in determining compensatory damages."). *See also, e.g., Parkins v. Brown*, 241 F.2d 367, 368 n.2 (5th Cir. 1957); *Blankenship v. Rowntree,* 219 F.2d 597, 598 (10th Cir. 1955) ("It is the general rule that … the admission of evidence concerning wealth of a party litigant constitutes error. The underlying reason for the rule is that such evidence tends to inject … a foreign, diverting, and distracting issue which may effectuate prejudicial results.") (citations omitted); *Woods*, 896 F. Supp. at 660 (noting that admitting evidence of a party's net worth would "severely prejudice" the calculation of actual damages). The serious risk of unfair prejudice that evidence of assets, income, or wealth poses was also addressed in the Supreme Court's decision in *State Farm,* 538 U.S. at 421-27, where the Supreme Court observed that the wealth of the defendant insurance company "had little to do with the actual harm sustained by the [plaintiffs]." *Id.* at 427. The Supreme Court further cautioned that "[w]ealth provides an open-ended basis for inflating awards when the defendant is wealthy." *Id.* at 427-28 (internal quotation marks and citation omitted).

The risk of unfair prejudice is clearly present here. Any statement by plaintiff's counsel or their witnesses on the alleged "wealth," profits, stock holdings, stock options, or income of Merck and its officers would be a blatant appeal to the prejudices of the jury. At a minimum, admitting such evidence creates a significant risk that the jury will improperly speculate that Merck can readily afford a verdict for the plaintiff, regardless of the evidence.

## V.  CONCLUSION.

For the foregoing reasons, Merck respectfully requests that the Court exclude all evidence offered to show the alleged "motive" of Merck or its officers or employees in developing and marketing Vioxx, including any evidence relating to Merck's wealth, profitability, assets, income, or net worth, as well as the compensation, stock holdings, or stock options of its officers and employees.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790334v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*/s/ Dorothy H. Wimberly*

SF1:607121.1