

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MOTION OF MERCK & CO., INC. ("MERCK")TO EXCLUDE
EVIDENCE OR ARGUMENT PERTAINING TO CONDUCT
WITH NO NEXUS TO ISSUES BEING TRIED IN THIS CASE**

(MOTION IN LIMINE NO. 3)

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, 403, 801, 802, and 803, hereby moves to exclude all evidence or argument pertaining to conduct with no nexus to issues being tried in this case. The

facts and law supporting this motion are more fully set forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

          Respectfully submitted,

          */s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790294v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude Evidence or Argument Pertaining to Conduct with No Nexus to Issues Being Tried in This Case has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*/s/ Dorothy H. Wimberly*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE EVIDENCE OR ARGUMENT PERTAINING TO CONDUCT
WITH NO NEXUS TO ISSUES BEING TRIED IN THIS CASE**

**(MOTION IN LIMINE NO. 3)**

Merck seeks an order excluding evidence or argument with no conceivable relevance or connection to any issue being tried in this case.  The evidence covered by this motion includes:

- Plaintiff's Exhibit 1.0176, a letter from a California doctor to Merck's CEO accusing Merck of "downplaying some unusual" side effects of Vioxx and "attack[ing] those . . . speakers who expressed . . . critical opinions."  The letter is inaccurate and, like similar exhibits, is inadmissible hearsay, irrelevant, and unfairly prejudicial;

790296v.1

- A newspaper article referenced in Dr. Farquhar's report that Merck allegedly pressured a researcher to change his opinion about the likely cause of death of a participant in the ADVANTAGE study, and Plaintiff's Exhibit 1.0368, a news article about a legal action that Merck's United Kingdom subsidiary brought against the publisher of a Spanish drug bulletin. These articles are inadmissible hearsay and concern actions that had no conceivable impact on Dr. Schirmer or Mr. Irvin;

- Claims that (1) Merck paid individuals to be listed as authors of Merck-commissioned articles or letters, (2) removed individual's names as authors of Merck commissioned studies for improper reasons, and (3) listed authors of Vioxx articles did not disclose alleged financial ties to Merck. There is no evidence that Dr. Schirmer or Mr. Irvin ever read any such article or letters, ever heard of such articles or letters, or that any such practices (which Merck denies) affected any information received by Dr. Schirmer or Mr. Irvin about Vioxx; and

- Evidence relating to the regulation of Vioxx in foreign jurisdictions, including marketing and labeling standards. Mr. Irvin lived in Florida, he was prescribed Vioxx there, and he died there. Evidence of regulatory action by countries other than the United States or by regulatory authorities other than the FDA is irrelevant, and introducing such evidence would lead to jury confusion and unreasonably lengthen trial.

Nearly all of this proposed evidence constitutes inadmissible hearsay, and none of it has any relevance to Mr. Irvin's sudden death. Accordingly, the Court should exclude the evidence because it is irrelevant and because it would unfairly prejudice Merck and unnecessarily prolong trial. *See* FED. R. EVID. 401-403.

I. **THE COURT SHOULD EXCLUDE PLAINTIFF'S EXHIBITS 1.0176 AND 1.0368 AND ALL OTHER EVIDENCE CONCERNING SIMILARLY IRRELEVANT ISSUES.**

Plaintiff's Exhibit List indicates that she may seek to introduce a January 9, 2001 letter from Dr. James Fries, a professor at Stanford University Medical Center, to Raymond Gilmartin, then Merck's CEO (the "Letter" or "Fries Letter"). In this Letter, marked as Exhibit 1.0176, Dr. Fries lauded the benefits of Vioxx, stating that it "represent[s] a major medical advance in terms of improving [gastrointestinal safety]," and "should . . . save a substantial number of lives." He continued by describing how Vioxx (and other drugs in its class) "are our best approach toward

2

better drug safety in this area." At the same time, however, he complained about specific alleged marketing activity by certain Merck employees, accusing these employees of "downplaying some unusual" side effects of Vioxx and "attack[ing] those . . . speakers who expressed . . . critical opinions." Dr. Fries recounted conversations with the physicians allegedly "attacked." He also claimed to have spoken with unnamed former Merck employees who, he claims, confirmed these actions. The Fries Letter is inadmissible for at least three independent reasons. First, it is hearsay. Second, and perhaps more importantly, it is completely irrelevant to the facts of this case, as there is no evidence that any physician referenced in the Letter had any involvement with Mr. Irvin or Dr. Schirmer or that the conduct alleged in the Letter had any relation to Dr. Schirmer's prescription or Mr. Irvin's use of Vioxx. Third, admitting such irrelevant and collateral evidence would unfairly prejudice Merck, cause juror confusion, and result in undue delay.

The same is true of two newspaper articles plaintiff apparently seeks to admit. The first, Plaintiff's Exhibit 1.0368, is an article about a lawsuit brought outside the United States by a foreign subsidiary of Merck. The second, relied on by one of plaintiff's expert witnesses, is a newspaper article stating that Merck allegedly pressured a researcher to change his opinion about the likely cause of death of a participant in the ADVANTAGE clinical trial. (*See* Expert Report of John W. Farquhar, M.D. ("Farquhar Report") at ¶ 127, attached as Ex. 41 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions in Limine ("Wittmann Decl.").) These newspaper articles, and any references to them, should be excluded on the same grounds as the Fries Letter.

      A.    **The Fries Letter And The Two Newspaper Articles Should Be Excluded Because They Are Inadmissible Hearsay.**

The Fries Letter is a textbook example of inadmissible hearsay, as it contains out-of-court

3

statements that plaintiff would offer to prove the truth of the matters asserted.  *See* FED. R. EVID. 801(c); *Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 719 (6th Cir. 2005).  Indeed, the Fries Letter is hearsay within hearsay under Federal Rule of Evidence 805, because Dr. Fries was repeating what other individuals purportedly told him.

Plaintiff cannot carry her burden of proving that this Letter qualifies as an exception to the hearsay rule.  *See* FED. R. EVID. 802.  It certainly does not fall within the exception for "records of regularly conducted activity" provided in Federal Rule of Evidence 803(6), because it was not, for example, Dr. Fries' regular practice or duty to prepare such a letter.  *See U.S. v. Robinson*, 700 F.2d 205, 210 (5th Cir. 1983) (handwritten notes not admissible as a business record without showing that author regularly compiled them as part of his duties), *cert. denied* 465 U.S. 1008 (1984); *see also U.S. v. Bortnovsky*, 879 F.2d 30, 34-35 (2d Cir. 1989); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984).  To the contrary, Dr. Fries stated in the text of the Letter that his involvement in the matter was "accidental."  Nor does the Fries Letter meet the trustworthiness requirement of Rule 803(6); it merely recounts what other physicians, many of whom are unidentified, related to him.  *See Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1187 n.6 (8th Cir. 1981) (Under the business record hearsay exception, where "there is a lack of evidence of the source of the testimony, it is inherently untrustworthy and must be kept out.")

Further, the statements in the Letter do not qualify under any exception necessary to overcome their double hearsay.  *See* FED. R. EVID. 805; *see also Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (summary of complaints "amounts to nothing more than a summary of allegations by others which constitute hearsay"); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (hospital records inadmissible because patient's statements in

790296v.1

records "must fall within another hearsay exception to be admissible"). In fact, the sources of most of the statements are unidentified, making it impossible to verify their personal knowledge. The Fries Letter is no more than a summary of unsubstantiated allegations made by third parties that is inadmissible hearsay under Rule 802.[1] All testimony relating to its contents is similarly inadmissible.[2]

Likewise, the newspaper article referenced in Dr. Farquhar's report that Merck allegedly pressured a researcher to change his opinion, as well as the newspaper article marked as Exhibit 1.0368, are hearsay and are not subject to any exception. *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("newspaper articles – classic, inadmissible hearsay").

B.  **Evidence Regarding Alleged "Attacks" Or Similar Conduct By Merck Employees, Including The Fries Letter, Should Be Excluded As Irrelevant.**

The Court should also exclude the Fries Letter, newspaper articles, and all other evidence purportedly showing "attacks" or similar conduct by Merck employees for a second independent

---

[1] The Court should reject any attempt by plaintiff to avoid operation of the hearsay rule by claiming that the Fries Letter should be admitted for a non-hearsay purpose. Whether the former CEO of Merck was "on notice" of unsubstantiated, untrustworthy allegations has no logical connection with any fact issue in dispute in this case. *See U.S. v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) ("The essential prerequisite of admissibility is relevance. . . . Implicit in [the definition of relevance] are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.")

[2] (*See, e.g.*, Deposition of Louis Sherwood, Sept. 30, 2004, at 418:1-422:17, 429:7-432:8, 436:23-441:18; Deposition of Raymond Gilmartin, April 11, 2005, at 514:25-539:17, 591:6-593:20; Deposition of Raymond Gilmartin, April 18, 2005, at 309:15-337:19; Deposition of Raymond Gilmartin, June 17, 2005, at 1011:23-1013:15; Deposition of Edward Scolnick, May 17, 2005, at 408:23-409:15, 413:9-14, 422:17-423:4, 435:7-18, 677:9-679:6, 682:22-683:9, 670:16-671:5, 684:25-686:2, 501:6-503:4; Deposition of David Anstice, Mar. 17, 2005, at 484:24-486:2, 491:17-492:5, 505:10-507:6, 489:3-16, 495:8-22.)

reason: such evidence is completely irrelevant to any issue in this case.[3] *See* FED. R. EVID. 401-402.

Even assuming *arguendo* that Merck employees actually engaged in such conduct (which Merck denies), there is absolutely no evidence that any of the physicians at whom this conduct was allegedly directed were involved in any way with Mr. Irvin or Dr. Schirmer or had any effect on the availability of information received by Mr. Irvin or Dr. Schirmer. Indeed, there is no evidence that any physician identified in the Fries Letter changed his position or findings regarding Vioxx because of the alleged conduct. There is nothing in the Fries Letter or newspaper articles relevant to any fact at issue in this case. Accordingly, they are completely irrelevant and should be excluded for that reason alone.

### C. Evidence Regarding Alleged "Attacks" Or Similar Conduct By Merck Employees, Including The Fries Letter, Should Be Excluded Because They Would Cause Unfair Prejudice, Jury Confusion, And Undue Delay.

Such evidence should be excluded for a third independent reason: it would be offered solely to prove the inflammatory allegation that Merck employees "attacked" members of the scientific community, thereby causing unfair prejudice to Merck, juror confusion, and undue delay in trial. *See* FED. R. EVID. 403. Under Rule 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. In this case, these inflammatory allegations would invite the jury to determine liability not based on the relevant facts, but on unsubstantiated allegations of misconduct unrelated to the specific facts of this case.

---

[3] Other exhibits that plaintiff apparently intends to offer for this purpose include Plaintiff's Exhibit Nos. 1.0178-1.0185. All these exhibits (which in any event do not reflect improper conduct) are inadmissible on one or more grounds discussed in the main text.

6

The potential for unfair prejudice to Merck from admitting the Fries Letter is increased by the fact that Dr. Fries is a physician and researcher from a well-known, respected institution. *Cf. Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 673 (5th Cir. 1999) (upholding exclusion of reports from the Mississippi Department of Environmental Quality in part because the evidence of likely violations of environmental regulations that they contained "would have been unduly prejudicial due to its apparent official nature"); *Johnson*, 988 F.2d at 580 (excluding letters from the National Highway Transportation Safety Administration under Federal Rule of Evidence 403 because "the official nature of the inquiries could have misled the jury into believing that 'something' was wrong with Ford cars").

In addition, irrelevant information regarding certain physicians' perceived anti-Merck or anti-Vioxx bias and alleged responses by certain Merck employees can only confuse the jurors and divert their attention from the real issues they should be considering – whether 25 mg of Vioxx taken for approximately 23 days caused Mr. Irvin's death and whether Merck's labeling adequately identified known risks. *See, e.g., Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d 883, 888 (5th Cir. 1983) ("The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later."); *cf. Weir v. Crown Equip. Corp.*, 217 F.3d 453, 459 (7th Cir. 2000) ("To have dumped all these hearsay accident reports about various brake problems on the jury would have caused untold juror confusion and possible prejudice."). The Fries Letter and these newspaper articles will only serve to distract the jury from its consideration of the relevant facts and the proper outcome-determinative issues.

Admitting the Fries Letter and other evidence of similar allegations also would unnecessarily prolong the trial. Dr. Fries identified eight physicians who allegedly experienced

some form of pressure by Merck employees because of a "perceived anti-Merck bias." If the Letter or related evidence were admitted, Merck would be compelled to call rebuttal witnesses to refute that charge. That would lead to a series of evidentiary presentations and mini-trials, wasting the litigants' and the Court's time and resources. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence based in part because "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources").

## II. THE COURT SHOULD EXCLUDE EVIDENCE REGARDING MERCK'S RELATIONSHIPS WITH AUTHORS OF PUBLISHED ARTICLES OR LETTERS ABOUT VIOXX.

Plaintiff also may seek to offer evidence that purportedly shows that Merck wrote or commissioned articles and either removed authors from the articles for improper reasons or paid individuals with no apparent ties to Merck to allow the articles to be published in medical journals under their names (and followed a similar practice with respect to letters published in newspapers). Plaintiff may also suggest, through argument, questions to witnesses, and evidence, that authors of articles about Vioxx failed to disclose alleged financial ties to Merck. There is no affirmative evidence that Merck or outside authors actually engaged in such practices (as opposed to insinuation in questions from counsel in depositions and trial).[4] The Court should

---

[4] For example, in the deposition of Merck employee Susan Baumgartner, the interrogating attorney implied the existence of such practices through his questions. (Feb. 25, 2005 Deposition of Susan Baumgartner ("Baumgartner 2/25/05 Dep.") at 158:24-163:19, attached as Ex. 6 to Wittmann Decl.) The witness testified that she was unaware of any such practices. (Mar. 11, 2005 Deposition of Susan Baumgartner ("Baumgartner 3/11/05 Dep.") at 456:9-16, attached as Ex. 7 to the Wittmann Decl.) During the *Humeston v. Merck* trial in New Jersey, plaintiff's counsel suggested that Dr. Carolyn Cannuscio was removed as an author from an article concerning an observational study because Merck "didn't like the result." (*See* Testimony of Barry Gertz, *Humeston v. Merck* No. No. 619 (N.J. Super. Ct. Law Div. filed August 19, 2003) ("Gertz *Humeston* test.") of October 20, 2005 at 4816:25-4817:17, attached as Ex. 49 to the Wittmann Decl.) In fact, Dr. Cannuscio's name is not listed on the study because the study mischaracterized and omitted data. (*See id.*)

8

preclude any evidence allegedly showing any of these practices, practices that would have no bearing whatsoever on any material issue in this case.

This case concerns whether Merck failed to warn Dr. Schirmer of known risks that relate to the injury Mr. Irvin suffered and, if so, whether that failure and Mr. Irvin's ingestion of 25 mg of Vioxx for approximately three weeks proximately caused his death. As a general matter, the *content* of a given article or letter about Vioxx might be relevant if it could be shown that the prescribing physician was aware of the content before prescribing Vioxx to his patient. There is no evidence, however, to suggest that Dr. Schirmer was aware of any such articles or letters before he prescribed Vioxx to Mr. Irvin. Moreover, even if Dr. Schirmer had seen such documents, whether or not the author listed was in fact the person who wrote a given article or letter would be irrelevant.[5] Similarly, any failure by an author of an article about Vioxx to disclose alleged financial ties to Merck is irrelevant. There is no evidence that this in fact occurred but, even if it did, any such omission by an individual author would be irrelevant to any material issue in this case or Merck's liability. (*See, e.g.*, Plaintiff's Exhibit No. 1.0410.)

This proposed evidence should also be precluded under Rule 403 because it invites the jury to punish Merck for alleged "bad acts" that are completely unrelated to the conduct that allegedly caused Mr. Irvin's death. It is plainly improper to offer evidence to inflame a jury so that it rules against a party based in whole or in part on bias or prejudice.

Admitting such evidence would also unnecessarily lengthen the trial and confuse the issues by forcing the examination of irrelevant matters. *See Grenada Steel Indus.*, 695 F.2d at

---

[5] Nor is such evidence relevant to any issue of exemplary damages. Admitting evidence that cannot possibly have any relationship to the conduct that allegedly caused Mr. Irvin's death (none of which took place in Florida) would plainly contravene the Supreme Court's ruling in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-27 (2003).

9

888. If admitted, Merck would have no choice but to present evidence to rebut any inference of impropriety, consuming significant trial time on irrelevant side issues.

## III. THE COURT SHOULD EXCLUDE EVIDENCE OF FOREIGN REGULATORY MATTERS.

Mr. Irvin resided in the United States, was prescribed Vioxx in the United States, ingested it in the United States, and suffered his injury in the United States. Whether Vioxx was approved for marketing in other countries, under what conditions, and with what labeling are all matters that have no bearing on the FDA-approved marketing and labeling of Vioxx that was available to Mr. Irvin and Dr. Schirmer. Such evidence is irrelevant and its admission would unfairly prejudice Merck, which would have to submit additional testimony and evidence just to explain the difference in each of the various regulatory schemes to avoid confusing the jury. Finally, such evidence is inadmissible hearsay.

### A. Evidence Of Foreign Regulation Of Vioxx Is Irrelevant And Its Admission Would Unfairly Prejudice Merck, Confuse The Jury, And Unnecessarily Delay The Trial.

Vioxx was approved for sale in at least 74 countries. Each of these countries has its own regulatory agency that applies its own laws and policies in deciding which drugs to approve, what information the label should contain and, how those labels should appear, how and when the drug should be used, and at what dosages it should be used. *See, e.g.*, DES Action Canada in Collaboration with Women and Health Protection, *How Safe Are Our Medicines? Monitoring the Risks of Drugs After They Are Approved for Marketing* (2d ed. 2003), *available at* http://www.whp-apsf.ca/ en/documents/how_safe.html (discussing the process of bringing a drug to market in Canada, and comparing the secrecy of that process with the more open process in the United States). Likewise, each foreign regulatory body independently decides what prescribing information may or must be provided to physicians and/or patients.

Foreign regulatory action is often driven by factors arising from each country's unique political, social, and economic circumstances. Because of the diverse factors underlying each country's approach to drug regulation and the analysis required to balance the risks and benefits of a medication, different countries sometimes reach different conclusions about prescription drugs and their approvals. *See Doe v. Hyland Therapeutics*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992) ("The forum whose market consumes the product must make its own determination as to the levels of safety and care required."). Because of these differences, evidence pertaining to foreign regulatory schemes and actions does nothing to inform a jury about the relevant issues regarding drugs approved by the FDA. *Cf. Jones v. Lederle Labs.*, 785 F. Supp. 1123, 1127 (E.D.N.Y. 1992) (because of the less stringent testing standards of vaccine in Japan, testimony regarding the vaccine's experience in Japan was not acceptable evidence to support plaintiff's claim that a safer vaccine existed), *aff'd*, 982 F.2d 63 (2d Cir. 1992).

The alleged wrongdoing in this case occurred in the United States, all relevant events occurred in the United States, and United States regulations and standards exclusively apply. As explained by the federal court in *Harrison v. Wyeth Labs.*, a pharmaceutical manufacturer's liability must be judged solely on its actions in the country where the alleged injury occurred, because each country applies its own standards:

> Each government must weigh the merits of permitting the drug's use and the necessity of requiring a warning. Each makes its own determination as to the standards of degree of safety and duty of care. This balancing of the overall benefits to be derived from a product's use with the risk of harm associated with that use is peculiarly suited to a forum of the country in which the product is to be used. Each country has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits, and which will tip the balance for it one way or the other. . . . [F]airness to the defendant mandates that defendant's conduct be judged by the standards of the community affected by its actions.

510 F. Supp. 1, 4-5 (E.D. Pa. 1980), *aff'd*, 676 F.2d 685 (3d Cir. 1982). Any other standard is irrelevant. *See, e.g., Deviner v. Electrolux Motor, A.B.*, 844 F.2d 769, 771 n.2, 773 (11th Cir. 1988) ("Swedish standards are not relevant in a U.S. product liability case;" excluding evidence that Swedish standards required chain saws to be equipped with chain brakes); *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1327 (6th Cir. 1992) (excluding British legal standards as evidence in a product liability case); *Garmon v. Cincinnati, Inc.*, No. 02A01-9203-CV-00033, 1993 WL 190923, at *3 (Tenn. Ct. App. June 4, 1993) (finding that foreign regulatory "rules and standards not having the force and effect of law" were not admissible in a product liability case). Accordingly, foreign regulatory schemes and actions are completely irrelevant and should be excluded. (*See, e.g.*, Plaintiff's Exhibit Nos. 1.1181, 1.1296 and 1.1310.)

Evidence of the regulation of Vioxx outside of the United States would also be profoundly confusing to the jury. The jury would be required to process information about multiple diverse and complex regulatory schemes and would then be required to parse through those schemes, isolate only the pertinent FDA regulations that apply to this case, and disregard the inapplicable foreign regulations. Courts widely recognize this problem of information overload and act to prevent it. *See Deviner*, 844 F.2d at 773 (in affirming exclusion of evidence regarding Swedish law, acknowledging the district court's "desire to avoid confusing the jury with Swedish law and statistics," especially where "issues arising under Alabama and federal law and technical issues of fact . . . [were] sufficient to keep the minds of the jurors alert to the problems confronting them in the case at bar") *see also Sherry v. Massey-Ferguson, Inc.*, No. 1:96-CV-76, 1997 WL 480893, at *2 (W.D. Mich. June 5, 1997) ("evidence of European legal standards and requirements . . . will unnecessarily confuse the jury"); *Buzzell v. Bliss*, 358 N.W.2d 695, 699 (Minn. Ct. App. 1984) (finding the probative value of the English practices to

be "outweighed by its potential to confuse or mislead the jury").

Admitting foreign regulatory evidence would also unfairly prejudice Merck because Merck would need to present unnecessary evidence and argument to ensure that the jury understands both the basis of each foreign regulatory action and the foreign legal and regulatory structure and standards. This additional evidence and testimony regarding matters with no probative value in this case would be a waste of time and would create undue delay.

### B.     Evidence of Foreign Regulatory Matters Is Inadmissible Hearsay.

Evidence containing statements of foreign regulatory agencies about Vioxx is also inadmissible because it is hearsay and fits no exception to the hearsay rule. *See* FED. R. EVID. 801-803. Plaintiff cannot show, for example, that the opinions of foreign regulators are public records admissible as an exception to the hearsay rule. *See* FED. R. EVID. 803(8). Any evidence or argument that documents or refers to an exchange of opinions of foreign regulators regarding the safety of Vioxx or the appropriate contents of its label would not fall within the exception because it does not set forth the factual findings or conclusion of the agency. *See Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) ("The memoranda do not reflect 'factual findings' of the [agency]. Rather, they embody the positions and opinions of individual staff members."); *see also Toole v. McClintock*, 999 F.2d 1430, 1434-35 (11th Cir. 1993) ("Rule 803 makes no exception for tentative or interim reports subject to revision and review."). Such evidence lacks the trustworthiness required of a public record because, among other things, it is not an official statement of the agency. Indeed, even if it were an official agency statement, it might well not rise to the level of a public record given the differences that foreign regulatory bodies have in evaluating, arriving at, and documenting decisions and the weight given to those decisions.

Likewise, foreign regulatory statements are not exempt from the hearsay rule as business records. *See* FED. R. EVID. 803(6). Plaintiff would have to present foundational evidence on the foreign regulatory process to demonstrate whether the statements are of the type kept in the ordinary course of business. *See United States v. Young Bros., Inc.*, 728 F.2d 682, 693-94 (5th Cir. 1984) (party seeking admission of purported business records under hearsay exception must lay a foundation); *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 279 (5th Cir. 1991) (excluding accident report because "each participant in the making of the record must be acting in his normal course of business before the record becomes admissible under the Rule 803(6) exception"). Plaintiff would then be required to demonstrate the knowledge of those making the statement. FED. R. EVID. 803(6) (records of regularly conducted activity are made by "a person with knowledge"). Finally, plaintiff would need to lay a foundation that the foreign regulatory information they seek to introduce constitute records "made at or near the time" of the event or observation. *Id.*

For the same reasons that such evidence does not possess the qualities that make it admissible as trustworthy public records, foreign regulatory statements are not business records.

## IV. CONCLUSION.

For the reasons discussed above, Merck respectfully requests that the Court exclude all evidence of and argument referring to the specific exhibits and other matters addressed in this motion, as well as all other evidence of conduct that is equally remote and does not have any nexus with the claims made in this case.

Respectfully submitted,

*[signature]*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:   504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:   312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:   (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:   (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude Evidence or Argument Pertaining to Conduct With No Nexus to Issues Being Tried in This Case has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*Dorothy H. Wimberly*