

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE EVIDENCE OR
ARGUMENT PREEMPTED BY FEDERAL REGULATIONS**

(MOTION IN LIMINE NO. 5)

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350, 353 (2001), hereby moves to exclude evidence or argument preempted by federal regulations. The facts and law supporting

790303v.1

this motion are more fully set forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

        Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790303v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude Evidence or Argument Preempted by Federal Regulations has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*[signature]*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 05-4046 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT<br>as Personal Representative of the Estate of<br>RICHARD IRVIN, JR., | * | |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**MEMORANDUM IN SUPPORT OF MOTION OF
MERCK & CO., INC. ("MERCK") TO EXCLUDE EVIDENCE
OR ARGUMENT PREEMPTED BY FEDERAL REGULATIONS**

(MOTION IN LIMINE NO. 5)

This motion seeks to exclude all evidence and argument preempted by federal regulations applicable to pharmaceutical companies.  First, plaintiff should not be permitted to argue that Merck's warnings for Vioxx® were inadequate because Merck did not add a black-box warning to the label.  The decision to add a black-box warning rests exclusively with the FDA and the FDA did not require such a warning for Vioxx.  Second, plaintiff should not be permitted to

790309v.1

argue that Merck committed "fraud" on the FDA, misled the FDA, did not cooperate with the FDA, or otherwise violated the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, and its implementing regulations (collectively "FDCA"). All such arguments and supporting evidence are preempted under federal law and by the Supreme Court's decision in *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350, 353 (2001). For this same reason, other evidence or argument criticizing or second-guessing the FDA regulatory process must also be excluded.

I.  **THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT THAT THE VIOXX LABEL SHOULD HAVE CONTAINED A BLACK-BOX WARNING.**

A black-box warning is a prominently displayed box that the FDA requires for special problems. *See* 21 C.F.R 201.57(e). The FDA has stated that "to ensure the significance of boxed warnings in drug labeling, they are permitted in labeling only when specifically required by the FDA." 44 Fed. Reg. 37,434, 37,448 (June 26, 1979) (comments of the Commissioner of the FDA regarding 21 C.F.R. 201.57); *see also* 21 C.F.R. 201.57(e) ("If a boxed warning is required, its location will be specified by the Food and Drug Administration."). The FDA required no such label here. Because Merck was not permitted to add such a warning in the absence of FDA mandate, any suggestion that the Vioxx label was inadequate for not having a black-box warning would directly conflict with federal law and is preempted.

A federal regulation preempts any state-imposed requirement if, among other things, state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, or the state law mandates or places irresistible pressure on the subject of the regulation to violate federal law. *See AT&T Corp. v. Public Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004). Argument suggesting that Merck should have included a black-box warning on the Vioxx label, when the FDA required no such label, would trigger both of these bases for preemption. Such action would be contrary to stated FDA regulation and policy. And

a finding of liability based upon Merck's alleged failure to do what FDA regulations prohibited it from doing would be completely unfair and inappropriate; Merck should not have to violate express FDA regulation and policy in order to avoid future civil liability. (*See* Daniel E. Troy, *FDA Involvement in Product Liability Lawsuits*, UPDATE, Jan./Feb. 2003, at 4, attached as Ex. 52 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions in Limine ("Wittmann Decl.") ("Allowing state courts and juries to impose additional requirements in direct conflict with FDA determinations could require drug firms to choose between state and federal compliance. It also could lead to inconsistency in drug firms' communications to physicians and patients about drugs.").) Any argument or evidence regarding a black-box warning for Vioxx should be excluded as preempted by federal law. *See Ehlis v. Shire Richwood, Inc.*, 233 F. Supp. 2d 1189, 1197 (D. N.D. 2002) (FDCA found to preempt a state failure-to-warn claim, where plaintiffs asserted that the label for Adderall® should have contained a black-box warning).

## II. THE COURT SHOULD EXCLUDE ANY EVIDENCE OR ARGUMENT ALLEGING MERCK MISLED OR DID NOT COOPERATE WITH THE FDA.

It is clear from statements by plaintiff's FDA expert, Dr. Richard M. Kapit, as well as documents on plaintiff's exhibit list, that plaintiff intends to introduce evidence and argue that Merck concealed information from the FDA, or misled or did not cooperate with the FDA concerning Vioxx.

For example, in his report, Dr. Kapit alleges that "[t]he FDA had to request Merck to submit the report of [the ADVANTAGE] study three times" and that "[e]ven then it was not complete, lacking certain data sets and patient records." (Expert Report of Richard M. Kapit, M.D. ("Kapit Report") at p. 22, attached as Ex. 43 to Wittmann Decl.) And although at deposition, Dr. Kapit stated that he was not offering an opinion that Merck failed to provide any data to the FDA prior to the time of the initial approval or after April 2002, he refused to rule out

the possibility that he might later reach such a conclusion. (Deposition of Richard M. Kapit, M.D. ("Kapit Dep.") at 184:7-19, 186:16-22, attached as Ex. 20 to Wittmann Decl.) Indeed, in his report, Dr. Kapit spends seven paragraphs detailing FDA requirements of full disclosure and honesty from a drug manufacturer. (Kapit Report at 7-9.)

Tellingly, attacks on Merck's disclosures to the FDA have been made at each of the first two Vioxx trials. For example, in *Ernst*, plaintiff's expert repeatedly alleged that Merck hid data from the FDA.[1] In *Humeston*, plaintiffs' counsel argued, "And here is all the data . . . And you know something? This wasn't given to the FDA." (Testimony of closing argument, *Humeston v. Merck*, No. ATL-L-2272-03MT (N.J. Sup. Ct. Atlantic County, Civ. Div. filed August 19, 2003) ("*Humeston* Closing Test.") of November 1, 2005 at 6558:11-14, attached as Ex. 49 to Wittmann Decl.); *id.* at 6551:20-21 ("That's the way they presented the data to the FDA. They mixed it up with everything else.")).

Additionally, plaintiff has on her exhibit list internal communications at Merck in which Merck employees express frustration with the FDA and the progress of discussions with FDA concerning the label change after the VIGOR trial. (*see, e.g.*, Plaintiff's Exhibits 1.0002 and 1.0003). It is clear from arguments made in other Vioxx cases and Kapit's report in this case that plaintiff intends to use this evidence to allege a type of fraud on the FDA – that Merck did not cooperate fully with the FDA concerning Vioxx. For example, in closing arguments in the

---

[1] Dr. Egilman testified: "So those were deleted the second time they gave the data to the FDA. Deleted. When they published a summary in the medical literature of their medical articles, they published only eight. Again, they omitted 010." (Testimony of Dr. David S. Egilman, *Ernst v. Merck*, No. 19961*BH02 (Dist Ct. Brazoria County Tex. filed May 24, 2002) ("Egilman *Ernst* Test.") of July 28, 2005 at 25:25-26:4, attached as Ex. 47 to Wittmann Decl.)). This was just one of many of Dr. Egilman's statements making such allegations. (*Id.* at 69:23-25 ("All of the heart attack specific analysis was deleted from the published paper and was not given to the Food & Drug Administration."); 74:19-20 ("This page is the excuse they use for not giving the data to the FDA.").)

*Humeston* case, plaintiffs' counsel urged the jury to consider e-mails from Dr. Scolnick and his attitude toward the FDA, and to therefore disregard the fact that the FDA had approved the Vioxx label.[2] (*Humeston* Closing Test. at 6584:20-6585:19.) While Dr. Kapit does not reference any specific e-mail or other supporting evidence, he refers generally to the discussions between Merck and the FDA during this time, testifying at deposition that Merck "openly and directly resist[ed] the FDA and stonewall[ed] it." (Kapit Dep. at 277:17-18.)

The truth is that Merck consistently disclosed relevant data to the FDA, and the FDA has never suggested anything to the contrary. Merck should not have to defend itself against such accusations in this proceeding under the Supreme Court's holding in *Buckman* that the FDA, not a jury, is exclusively empowered to police disclosures made to the FDA. *See* 531 U.S. at 350, 353. Any contention of this nature is foreclosed by *Buckman*. *Id*.

Further, any evidence or testimony proffered to criticize Merck's discussions with the FDA that occurred *after* Mr. Irvin's death on May 15, 2001 – including much of the discussion concerning label changes to incorporate the VIGOR data – is irrelevant for the added reason that it could not have any possible relation to the adequacy of the warning provided to Mr. Irvin.

---

[2] More specifically, plaintiff's counsel argued:

> I hope you do me one favor in that back room. Somebody remember what their attitude toward the FDA is. Think about their attitude toward the FDA when Dr. Scolnick wrote these e-mails calling them devious and antagonistic, that they can't possibly keep up with the science because their hiring constraints, this group is dysfunctional, never seen being nice to the FDA pay off, and they look like Grade D high school students. . . . If they did what they were supposed to do, these problems would have been caught early. They would have been labeled appropriately. . . . Don't let them come in here and fool us with this, when they have this attitude toward the FDA. They can't come in here and hide behind them now. That wouldn't be right.

(*Humeston* Closing Test. at 6584:20-6585:19.)

5

Lacking any probative value, its use would serve only to prejudice Merck unfairly. It should therefore be excluded.

### A. Claims Of Fraud On The FDA Are Preempted By Federal Law, And Alleged Evidence Or Argument In Support Of Such Claims Should Be Excluded.

As the Supreme Court observed in *Buckman*, Congress has established a carefully-balanced statutory and regulatory scheme for approving new drugs and medical devices in the United States. 531 U.S. at 348. That scheme empowers the FDA to control the details of the approval process and to punish and deter fraud where it occurs. *Id.* This balance is important, as "the FDA is charged with the difficult task of regulating the marketing and distribution of medical devices[3] without intruding upon decisions statutorily committed to the discretion of health care professionals." *Id.* at 350. The Court found that "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Id.* Thus, the Court held that state law claims of fraud arising solely out of the FDCA requirements, where the federal law is a critical element in the case, are impliedly preempted. *Id.* at 352-53 (preempting claims that defendant made fraudulent statements to the FDA to obtain approval to market a medical device and that, had the misrepresentations not been made, the devices would not have been approved and plaintiff would not have been injured).

Because such claims are preempted by federal law, plaintiff may not offer evidence or argument aimed toward establishing a fraud on the FDA. *See Bouchard v. Am. Home Prods.*

---

[3] Although *Buckman* involved medical devices, its reasoning and holding apply with equal force to cases involving pharmaceuticals. *See Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("The Court does not need to engage in searching analysis of *Buckman* to determine that claims of fraud on the FDA are preempted with respect to pharmaceuticals.") (citing *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 236 (6th Cir. 2000)).

6

*Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA."); *see also Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 346-49 (Minn. Ct. App. 2001) (excluding evidence of fraud on the FDA and explaining that "[a]s in *Buckman*, the existence of state-law claims against applicants for, and recipients of, FDA drug approval for alleged violation of FDA regulations conflicts with the FDA's authority to consistently police fraud within the agency's powers.").[4] The preemptive effect of *Buckman* is not limited to direct claims of fraud, but applies to any attempt to prove fraud on the FDA in state-law actions. *See, e.g, Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965-66 (6th Cir. 2004) ("This case, however, presents a somewhat different legal regime from the one invalidated in *Buckman*. . . . This difference, however, is immaterial in light of *Buckman*. As the district court properly found, '*Buckman* teaches that state tort remedies requiring proof of fraud committed against the FDA are foreclosed since federal law preempts such claims.'") (citation omitted).

Plaintiff need not state that Merck engaged in overt "fraud" to trigger preemption under *Buckman*. Given the importance of allowing the FDA to regulate and maintain the necessary balance inherent in the FDCA, the Court must not allow plaintiff to side-step the preemptive effect of the FDCA by introducing evidence suggesting there was fraud on the FDA without expressly identifying it as such. *See Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36 (D.C. Cir. 2003) ("plaintiffs cannot bootstrap their arguments regarding defendant's alleged failure to

---

[4] Merck does not claim that all aspects of its interactions with the FDA should be excluded under *Buckman*. For example, if plaintiff wishes to use otherwise admissible FDA evidence for a purpose other than proving the inadequacy of the FDA regulatory process for Vioxx or the lack of disclosure to the FDA, plaintiffs may do so. *See Buckman*, 531 U.S. at 352-53. Likewise, Merck may use FDA evidence to demonstrate that Merck fulfilled its duty as a drug manufacturer.

7

report and to investigate adverse incidents to the FDA into a defective warning case."); *Cupek v. Medtronic, Inc.*, 405 F.3d 421, 424 (6th Cir. 2005) (finding claim of negligence per se was a "disguised fraud on the FDA claim"). It is plain from her expert's testimony and listed exhibits that plaintiff will argue that, even if Merck did not conceal information from the FDA, Merck was uncooperative in the approval process for Vioxx and its label and that, had Merck been more cooperative, the FDA might somehow have acted differently. Such evidence or argument would be no more than a thinly-veiled attempt to suggest that Merck somehow was less than candid with the FDA. That is precisely what *Buckman* intended to preclude, as Merck's interaction with the FDA in that regard "exist[s] solely by virtue of the FDCA disclosure requirements." *See Buckman*, 531 U.S. at 353; *see also id.* at 347 ("[t]he relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law"). It is therefore preempted.

### B. Any Evidence Suggesting Fraud On The FDA After Mr. Irvin's Death Is Irrelevant And Would Be Unfairly Prejudicial.

Included on plaintiff's exhibit list is an e-mail from Dr. Edward Scolnick dated October 16, 2001, in which Dr. Scolnick expresses his frustration with the FDA and the progress of discussions with the FDA concerning the label change after the VIGOR trial. (Pl.'s Ex. 1.0002). In other Vioxx trials, plaintiffs have used this e-mail to suggest, incorrectly, that Merck was attempting to prevent or delay the FDA from adding a cardiovascular warning to the Vioxx label. (*Humeston* Closing Test. at 6584:20-6585:19.) Not only is plaintiff's use of this e-mail and other similar evidence preempted, but it is irrelevant to the key issue to be decided in this case – whether the warning provided to Mr. Irvin, through his prescribing physician Dr. Schirmer, was adequate. Mr. Irvin died on May 15, 2001. Dr. Scolnick's e-mail was sent five months later in October 2001 and relates to discussions of the label occurring after Mr. Irvin's death. Decisions

by Merck and the FDA regarding the Vioxx label after Mr. Irvin passed away simply did not affect the warning he received while he was alive. Any post-death discussions of the contents of the Vioxx label are irrelevant and therefore inadmissible. FED. R. EVID. 401, 402.

Given the above limitations, it is clear that the real reason plaintiff would offer evidence or argument criticizing Merck's communications with or about the FDA and the FDA's regulation of Vioxx would be to attempt to tarnish Merck in the eyes of the jurors and divert the jury's attention from fairly evaluating the pertinent factual and legal issues in this case. Such improper use of evidence and argument would unfairly prejudice Merck, and for that reason should be excluded under Rule 403. FED. R. EVID. 403 and Note of Advisory Committee (Evidence is unfairly prejudicial if it has an "undue tendency to suggest decision on an improper basis, commonly, although not necessarily, an emotional one."); *Carter v. Hewitt*, 617 F.2d 961, 972 (3rd Cir. 1980) (Evidence that is unfairly prejudicial "'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" ).

### III.  EVIDENCE OR ARGUMENT SECOND-GUESSING THE FDA MUST BE EXCLUDED.

Not only does plaintiff's expert take aim at Merck's conduct before the FDA, but he also casts doubt upon the actions of the FDA itself. Although he does not explicitly state the FDA made a mistake, Dr. Kapit suggested as much when he testified in deposition that FDA approval of a drug does not necessarily mean that the benefits of the drug outweigh the risks. (Kapit Dep. at 90:24-91:21 ("it's quite possible unfortunately that FDA can approve a drug even if the risk-benefit evaluation has not been completely or fully made for one reason or another.").) Dr. Kapit suggested that the FDA may not have adequate resources to make a decision or it may have been pressured from outside the agency. (*See id.*)

9

Any such evidence or argument that the FDA failed to meet FDCA (or other) standards in connection with Vioxx should be excluded, as it too would infringe on the carefully-constructed regulatory scheme for drug approval guarded by the Supreme Court in *Buckman*. Courts have recognized the dangers in allowing juries in state law cases to impose their judgments on the adequacy of the FDA-approval process. *See Buckman*, 531 U.S. at 350-51 (would-be applicants may be discouraged from seeking approval for beneficial off-label uses or may burden the FDA with unnecessary disclosures for fear of being judged insufficient in state court); *see also Horn v. Thoratec Corp.*, 376 F.3d 163, 178 (3d Cir. 2004) (identifying the dangers of allowing a jury to second-guess the regulatory decisions of the FDA in holding that plaintiff's claims were preempted by the FDCA). As the Third Circuit held in *Horn*:

> [I]t is inappropriate for a jury to second-guess FDA's scientific judgment on such a matter that is within FDA's particular expertise. . . . The agency makes a reasoned and deliberate decision as to the correct pathway of regulation and whether to approve the device. Juries lack the scientific knowledge and technical expertise necessary to make such judgments . . . . [T]he prospect of hundreds of individual juries determining the propriety of particular device approvals, or the appropriate standards to apply to those approvals, is the antithesis of the orderly scheme Congress put in place and charged the FDA with implementing.

376 F.3d at 178.

Other federal courts have acknowledged the inappropriateness of such second-guessing in the drug-approval context:

> Many of Plaintiffs' arguments highlight the alleged inadequacy of the FDA's administrative procedures. Plaintiffs contend that the FDA has failed to obtain sufficient information from the manufacturers of [the category of drugs], or has failed to draw from the evidence presented the conclusions Plaintiffs advocate. Even if Plaintiffs' arguments factually have some weight, generally, they are not probative on the claim Plaintiffs here advocate. A state law tort suit urging warnings that the FDA expressly has rejected is not the proper vehicle to remedy these deficiencies in the FDA's performance.

*Dusek v. Pfizer, Inc.*, No. Civ. A. H-02-3559, 2004 WL 2191804, at *10 (S.D. Tex. Feb. 20, 2004). Plaintiff must not be permitted to invite the jury to supplant the FDA's careful risk-

10

benefit analysis with their own, nonscientific conclusions as to the risks and benefits of Vioxx.[5]

Accordingly, it would be inappropriate to allow the jury to consider any complaints plaintiff may have with the FDA's conduct in connection with Vioxx.

## IV.   CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court exclude all evidence and argument:  (i) suggesting that Merck could or should have included a black-box warning on the Vioxx label; or (ii) alleging a deficiency in the FDA regulatory process.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

---

[5] This is precisely the improper argument plaintiffs' counsel made in closing argument in the Humeston case, asking the jury, "Did the FDA get things wrong?  You'll decide that when you are back there.  You'll decide if you think you are comfortable with the kind of scrutiny this drug got before it was sold to 21 million people."  (*Humeston* Closing at 6536:22-6537:2.)

11

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

12

790309v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co, Inc. to Exclude Evidence or Argument Preempted By Federal Regulations has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

_Dorothy H. Wimberly_