UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| This document relates to<br>Case No. 05-4046* | * | JUDGE FALLON |
| EVELYN IRVIN PLUNKETT<br>as Personal Representative of the Estate of<br>RICHARD IRVIN, JR., | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**MOTION OF MERCK & CO., INC ("MERCK") TO EXCLUDE EVIDENCE
OF AND REFERENCE TO ESTIMATES OF DR. DAVID GRAHAM**

**(MOTION IN LIMINE NO. 8)**

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to Federal Rule of Evidence 403, hereby moves to exclude evidence of and reference to estimates of Dr. David Graham. The facts and law supporting this motion are more fully set forth in the

accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

      Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:     (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:     (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude Evidence of and Reference to Estimates of Dr. David Graham has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*Dorothy H. Wimberly*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF
MERCK & CO., INC ("MERCK") TO EXCLUDE EVIDENCE OF
AND REFERENCE TO ESTIMATES OF DR. DAVID GRAHAM**

(MOTION IN LIMINE NO. 8)

In a recently published article[1], Dr. David Graham and his colleagues (including Professor Wayne A. Ray, one of plaintiff's experts) purported to estimate the excess number of myocardial infarctions (*i.e.*, heart attacks) and deaths in the general population allegedly

---

[1] *See* David J. Graham, et al., *Risk of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs: nested case-control.*

attributable to Vioxx® usage through statistical extrapolation of data from various studies. The article, plaintiff's exhibit 2.0050, is a retrospective observational study (hereinafter the "Graham Study") in which Dr. Graham purports to find an increased risk of heart attacks and sudden cardiac death associated with the use of Vioxx as compared to Celebrex.[2] Plaintiff's experts apparently intend to rely on and testify about the estimates contained in it. (*See* Expert Report of Dr. Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. ("Lucchesi Report") at 29-30, attached as Ex. 45 to Declaration of Phillip A. Wittmann in Support of Merck's Motions To Exclude Evidence ("Wittmann Decl."); July 13, 2005 Deposition of Wayne A. Ray, Ph.D. taken in *Humeston v. Merck*, No. 619 (N.J. Super. Ct. Law Div. filed August 19, 2003) ("Ray 7/13/05 Dep.") at 105:06-13, attached as Ex. 27 to Wittmann Decl.; March 31, 2005 Deposition of Wayne A. Ray, Ph.D. taken in *Ernst v. Merck*, No. 19961*BH02 (Dist. Ct. Brazoria County Tex. filed May 24, 2002) ("Ray 3/31/05 Dep.") at 184:23-185:4, 192:6-10, 192:23-193:17, 202:5-21, attached as Ex. 28 to Wittmann Decl.; Expert Report of John W. Farquhar, M.D. ("Farquhar Report") at ¶ 160, attached as Ex. 41 to Wittman Decl.)

Plaintiff apparently will attempt to use the Graham study to show that Vioxx purportedly caused tens of thousands of heart attacks and deaths. In the study, Dr. Graham hypothesizes, based on a statistical analysis of data from the APPROVe and VIGOR studies and various other sources, that Vioxx caused 144,000 excess heart attacks in the United States and that approximately 44% of these excess heart attacks were fatal. Graham Study at 6.

Plaintiff's expert, Benedict Lucchesi, relies on this study as support for the proposition that Vioxx has been "linked . . . to more than 27,000 heart attacks or sudden cardiac deaths

---

[2] Like Vioxx, Celebrex is an NSAID that selectively inhibits the COX-2 enzyme. For a discussion of the science behind COX-2 inhibitors, see Merck & Co., Inc's Memorandum Regarding Vioxx Science Issues ("Science Brief") and Merck & Co., Inc.'s Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation, filed October 21, 2005, which Merck incorporates herein by reference.

2

nationwide from the time it came on the market in 1999 through 2003." (Lucchesi Report at 29-30.) Professor Ray intends to rely on this study as well. (Ray 7/13/05 Dep. at 105:06-13 (acknowledging that the Graham study informed his opinions); *see also* Ray 3/31/05 Dep. at 184:23-185:4, 192:6-10, 192:23-193:17, 202:5-21.) Dr. Farquhar also cites the Graham Study. (Farquhar Report at ¶ 160.)

Dr. Graham's flawed estimates and any reference to those estimates are inadmissible on multiple grounds: they are not scientifically reliable; they are irrelevant; and they are inflammatory, unduly prejudicial, and will only confuse and mislead the jury.

I. **THE GRAHAM STUDY'S ESTIMATES OF ALLEGED EXCESS NUMBERS OF FATAL AND NON-FATAL HEART ATTACKS ARE NOT SCIENTIFICALLY RELIABLE AND ARE IRRELEVANT.**

Dr. Graham purports to find an increased risk of serious coronary heart disease and death associated with the use of Vioxx as compared to Celebrex. *See* Graham Study at 1. For at least the following three reasons, Dr. Graham's estimates are not scientifically reliable and thus are irrelevant.

First, and most fundamentally, the conclusion that Vioxx caused tens of thousands of heart attacks and deaths is completely disconnected from the analysis of the data in the study. Dr. Graham does not offer any supportable methodology for arriving at those figures, and his estimates regarding the excess number of heart attacks and deaths supposedly attributable to Vioxx are inconsistent with the results of his own study. Dr. Graham found *no* statistically significant increased risk of heart attacks or deaths associated with Vioxx use at the 25 mg dose when compared to Celebrex, to the current use of traditional NSAIDs, or to the remote use of

NSAIDs.[3]  *See* Graham Study at 4, Table 3; (Ray 3/31/05 Dep. at 87:18-21).  In fact, Dr. Graham purported to find an increased risk of heart attacks and deaths only when he combined data from patients taking Vioxx at both the 25 and 50 mg doses, and then compared that data to data from patients taking Celebrex.  *See* Graham Study at 4, Table 3.  Any such comparison of cardiovascular event rates in two groups of patients taking different COX-2 selective inhibitors is fraught with uncertainty.  As the FDA explained in its recent analysis, the best available scientific data do not allow "for a rank ordering of the approved COX-2 selective drugs with regard to CV risk." (April 6, 2005 FDA Memorandum ("FDA Memorandum") at 10, attached as Ex. 51 to Wittmann Decl.)  Dr. Graham's estimates regarding the number of excess heart attacks and deaths supposedly attributable to Vioxx usage are pure speculation and have no probative value to any issue in this case.

In addition, Dr. Graham's estimates are flatly inconsistent with the findings of the APPROVe and VIGOR studies on which he relies.  The APPROVe study did not reveal any increased risk of adverse cardiovascular events associated with continuous use of Vioxx at the 25 mg dose during the first 18 months of use.  (Expert Report of J. Michael Gaziano, M.D., M.P.H. ("Gaziano Report") at ¶ 68, attached as Ex. 42 to Wittmann Decl.)  The VIGOR study is irrelevant because it involved the continuous use of 50 mg Vioxx, and Mr. Irvin took only 25 mg Vioxx tablets.[4]  Further, both the APPROVe and VIGOR studies did not find any increased risk

---

[3] The comparison group comprised of remote users of NSAIDs – *i.e.*, patients who have not taken any NSAIDs within the previous 60 days – essentially constitutes a placebo comparison group.

[4] (*See* Deposition of Richard Aycock ("Aycock Dep.") at 30:22-31:19, attached as Ex. 3 to Wittmann Decl.; Deposition of Evelyn Irvin Plunkett ("Plunkett Dep.") at 72:18-22, attached as Ex. 26 to Wittmann Decl.; September 6, 2005 Deposition of Dr. Christopher Schirmer ("C. Schirmer 9/6/05 Dep.") at 51:1-16, 52:20-24, 53:8-11, attached as Ex. 33 to Wittmann Decl.; December 7, 2004 Deposition of Dr. Christopher Schirmer ("C. Schirmer 12/7/04 Dep.") at 14:21-25, attached as Ex. 34 to Wittmann Decl.; *see also* Walgreen's Record, attached as Ex. 54 to Wittmann Declaration.)

of death associated with the use of Vioxx at any dosage or duration. (Gaziano Report at ¶ 68, 75, Figure 5.) These data are all consistent with the findings of a recent analysis by the FDA regarding NSAIDs and cardiovascular risk, where the FDA concluded that the "short-term" use of COX-2 selective inhibitors like Vioxx "does not appear to confer an increased risk of serious adverse CV [i.e., cardiovascular] events."[5] (FDA Memorandum at 2.) Accordingly, Dr. Graham's estimates have no relevance to this case, where plaintiff claims that Mr. Irvin took Vioxx at the 25 mg dose for less than a month.[6]

Third, the best way to determine whether ingestion of a drug caused a specific injury in any person is to conduct a medical examination and rule out other possible causes of that person's injury. Dr. Graham did no such analysis. *See* Graham Study at 1-3. Accordingly, his estimates regarding the number of heart attacks and deaths in the general population that

---

Mr. Irvin's daily ingestion of a 25 mg dose of Vioxx for less than one month cannot legitimately or accurately be analogized to the VIGOR study. Because "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect," *see McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005), the results of VIGOR, which involved the use of high-dose Vioxx, cannot and do not provide a generally accepted scientific basis for concluding that the short-term use of Vioxx at a 25 mg dose was capable of causing Mr. Irvin's sudden cardiac death. *See also Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991) (district court was justified in excluding testimony based upon inaccurate dose data); *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991) (holding that clinical studies, to be admissible, must compare the drugs at issue in comparable doses). In addition, because the VIGOR study compared Vioxx to naproxen rather than placebo, it cannot be determined from the VIGOR study alone whether the relative increase of adverse cardiovascular events seen in the Vioxx arm of the study is attributable to (1) a cardiovascular risk associated with high-dose Vioxx, (2) a cardio-protective effect associated with naproxen; or (3) chance, either in whole or in part. (Gaziano Report at ¶¶ 50-51.)

[5] Moreover, insofar as long-term use of 25 mg Vioxx and other COX-2 selective NSAIDs is concerned, the FDA noted that the available epidemiological data—such as the data reported in the Graham Study – "could not definitively address the question of a modestly increased CV risk for the COX-2 selective compared to the non-selective NSAIDs." (FDA Memorandum at 7.) Even plaintiff's own expert, Dr. Farquhar, can muster only a half-hearted endorsement of Dr. Graham's conclusions concerning 25 mg dosages, calling them of "borderline significance." (Farquhar Report at ¶ 160.)

[6] Mortality figures also do not support Dr. Graham's contention that Vioxx has caused tens of thousands of additional heart attacks. According to the National Center for Health Statistics, from 1999 to 2002, the period looked at by Dr. Graham, MI mortality steadily decreased.

supposedly are attributable to Vioxx are not probative of the only issue that matters in this case – whether Mr. Irvin's use of Vioxx caused his sudden cardiac death.[7]

## II. DR. GRAHAM'S UNRELIABLE ESTIMATES ARE HIGHLY INFLAMMATORY AND, IF ADMITTED, WOULD CAUSE UNFAIR PREJUDICE TO MERCK AND WOULD CONFUSE AND MISLEAD THE JURY.

Plaintiff's expert witnesses should not be permitted to pass on the Graham Study's scientifically flawed estimates that tens of thousands of people had heart attacks or died because they took Vioxx. There is no question that such assertions would be highly inflammatory. The jury would be induced to base its determinations in this case not on fact but on emotion and bias. Federal Rule of Evidence 403 was designed to prevent just such a scenario.

Evidence having an "undue tendency to suggest decision on an improper basis, commonly … an emotional one," should be excluded as unfairly prejudicial. Note of Advisory Committee, FED. R. EVID. 403. Evidence is unfairly prejudicial where it "'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3rd Cir. 1980) (quoting 1 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE 403(03), at 403-15 to 403-17 (1978)).

The available clinical trial data involving tens of thousands of patients do not demonstrate an increased risk of adverse cardiovascular events or death associated with Vioxx during the first two months of use. (Gaziano Report at ¶ 68.) The FDA agrees, finding from its

---

[7] Although liability for punitive damages will not be tried in this phase of trial, it is worth noting that such evidence could not even serve as a basis for imposing exemplary damages. Federal constitutional law prohibits awarding punitive damages based on a defendant's alleged conduct in other states, or its alleged conduct in Florida, unless it is connected to the plaintiff's specific claim. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996). A jury may base a punitive damages award only on evidence of Merck's in-state conduct that is related to the plaintiff's specific claim. *State Farm*, 538 U.S. at 423.

review of all the scientific data that the "short-term" use of COX-2 selective inhibitors like Vioxx "does not appear to confer an increased risk of serious adverse CV events." (FDA Memorandum at 2.) And Dr. Graham's own study found no increased risk associated with the use of Vioxx at the 25 mg dose. *See* Graham Study at 4, Table 3.

Allowing plaintiff to offer evidence of or make reference to Dr. Graham's estimates, which lack a reliable scientific basis and have no probative value, would unquestionably be unfairly prejudicial to Merck. As noted, the Graham Study itself showed no statistically significant increased risk with use of the 25 mg dose of Vioxx. If jurors were presented with speculative evidence that tens of thousands of people died from Vioxx-related heart attacks, an assertion that Dr. Graham makes because he combined *all* dosages of Vioxx for *all* durations of use, there is a real and substantial risk that the jurors would be improperly swayed and diverted from the real issues that they must decide. *See Mobil Exploration & Producing v. A-Z/Grant Int'l Co.*, No. CIV. A. 91-3124, CIV. A. 91-4056, 1996 WL 194931, at *5 (E.D. La. Apr. 22, 1996) (excluding evidence of prior unrelated incidents because such evidence addressed problems with no apparent connection to the case and if admitted would lead to a mini-trial, confuse the jury, and waste time); *see also Lowry v. Seaboard Airline R. Co.*, 171 F.2d 625, 627 (5th Cir. 1949) (noting the risks of diversion posed by litigating the facts of prior unrelated incidents and observing that "[f]ixing the blame in another case would not fix it in this one"); *Walker v. Yellow Freight Sys., Inc.*, No. CIV. A. 98-3565, 1999 WL 955364, *4 (E.D. La. Oct. 19, 1999) (excluding evidence of prior incidents with potential to unduly confuse jury). In short, the Graham Study's estimates "would be a time consuming distraction, with real potential for unfair prejudice and essentially no potential to contribute to an accurate decision." *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 224 (N.D. Ill. 1996).

III. **CONCLUSION.**

For the reasons stated above, Merck respectfully requests that the Court exclude all evidence of and reference to Dr. Graham's estimates of the excess number of heart attacks and deaths that supposedly are attributable to Vioxx, in addition to any similar such estimates.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:   504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:   312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:   (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude Evidence of and Reference to Estimates of Dr. David Graham has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.