FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -4  PM 2: 02

UNITED STATES DISTRICT COURT LORETTA G. WHYTE
CLERK

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE ALL EVIDENCE OF AND REFERENCE TO ADVERSE EVENT REPORTS AND CASE REPORTS

### (MOTION IN LIMINE NO. 11)

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to

Federal Rules of Evidence 401, 402, 403, 801, 802, 803, and 805, hereby moves to exclude all

evidence of and reference to adverse event reports and case reports.   The facts and law

Fee_____
Process_____
X Dktd_____
CtRmDep 790326v.1
Doc. No._____

supporting this motion are more fully set forth in the accompanying memorandum, declarations,

and exhibits, which are incorporated as if fully set forth herein.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude All Evidence of and Reference to Adverse Event Reports and Case Reports has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

_Dorothy H. Wimberly_

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC.
("MERCK") TO EXCLUDE ALL EVIDENCE OF AND REFERENCE
TO ADVERSE EVENT REPORTS  AND CASE REPORTS**

**(MOTION IN LIMINE NO. 11)**

**I.      INTRODUCTION.**

Plaintiff apparently will rely on case reports, including spontaneous Adverse Event

Reports ("AERs"), to attempt to prove causation, negligence and/or product defect.  The Court

should reject these efforts.  Pharmaceutical manufacturers are required to submit to the FDA

information about all reports they receive of adverse events in connection with their drugs.

However, the AER system is totally voluntary – no healthcare provider or patient is required to report adverse events.  Further, manufacturers are required to submit AERs without regard to causality.  Therefore, any person (whether medically trained or not) can trigger the submission of an AER by making a spontaneous report.  Because AERs are collected in an uncontrolled manner, are based on incomplete information, and consist of unreliable hearsay, many courts have excluded their admissibility in trials.  Similarly, this Court should exclude AERs and similar case report accounts, as such evidence is irrelevant and can serve only to confuse the jury and to prejudice Merck unfairly.

## II.   THE COURT SHOULD EXCLUDE ALL EVIDENCE OF AND REFERENCE TO AERS AND OTHER CASE REPORTS OFFERED TO PROVE MEDICAL CAUSATION OR "NOTICE" TO MERCK.

In accordance with the overwhelming weight of authority, AERs and other case reports,[1] as well as counts of such reports, should be excluded because: (1) they are irrelevant; (2) they are inadmissible and unreliable hearsay; and (3) any probative value that they may have is greatly outweighed by the unfair prejudice to Merck and the undue delay and jury confusion that would result from their admission.[2]

### A.   The FDA Has Repeatedly Cautioned That an AER Is Not a Reliable Indicator of Causation.

The FDA requires a prescription drug manufacturer to submit to the FDA the data for an AER any time it receives information that a domestic patient taking one of its drugs suffered an

---

[1] AERs and other second-hand, anecdotal reports to which this motion relates are distinguishable from the first-hand testimony of physicians with vast experience prescribing Vioxx about the efficacy of the medication, which is relevant to plaintiff's design defect claim.

[2] The reports that this motion addresses may also be called "Adverse Experience Reports," "Drug Experience Reports," "Adverse Drug Experience Reports," "Adverse Drug Event Reports," "Adverse Reaction Reports," or simply "Case Reports."  Entries on plaintiff's exhibit list that should be excluded if this motion is granted include, as examples, nos. 1.0758, 1.0759, 1.1007, 1.1008, 1.1009, 1.1211, 1.0293, 1.0370, 1.0399, 1.0421, and 1.0505.

790327v.1

adverse reaction or "adverse drug experience."  21 C.F.R. § 314.80(c).  FDA regulations define

an adverse drug experience as "[a]ny adverse event associated with the use of a drug in humans,

*whether or not considered drug related. . . ." Id.* § 314.80(a) (emphasis added).  Thus, a reported

adverse experience could range from a life-threatening reaction observed first-hand by a treating

physician, to a headache that an individual had, to an unproven allegation in a lawsuit that the

manufacturer diligently reported to the FDA even while contesting the suit.

All manufacturer-submitted AERs are based on reports voluntarily made to the

manufacturer by healthcare professionals or other individuals.  Individuals, usually healthcare

practitioners, may also voluntarily submit reports of suspected adverse drug events directly to the

FDA.[3]

FDA regulations explicitly caution against drawing any inference of causation from

AERs:

> A report or information submitted by an applicant under this
> section (and any release by FDA of that report or information)
> *does not necessarily reflect a conclusion by the applicant or FDA
> that the report or information constitutes an admission that the
> drug caused or contributed to an adverse effect.*

21 C.F.R. § 314.80(k) (emphasis added).  The FDA division responsible for collecting and

monitoring AERs reiterates this caution:

> For any given [AER], there is no certainty that the suspected drug
> caused the ADE [adverse drug experience].  This is because
> physicians and consumers are encouraged to report all suspected
> ADEs, not just those that are already known to be caused by the
> drug.  The adverse event may have been related to an underlying
> disease for which the drug was given, to other concomitant drugs,
> or may have occurred by chance at the same time the suspect drug
> was administered.

---

[3] *See* Center for Drug Evaluation and Research, Food and Drug Administration, *CDER 2002 Report to the Nation: Improving Public Health Through Human Drugs* ("2002 CDER Report") (May 12, 2003), *available at* http://www.fda.gov/cder/reports/rtn/2002/rtn2002.htm.

790327v.1

Office of Epidemiology and Biostatistics, Food and Drug Administration, *Annual Adverse Drug Experience Report: 1996* (Oct. 30, 1997), *available at* http://www.fda.gov/cder/dpe/annrep96 at 1 (emphasis added).  The FDA does not use AERs to calculate drug risk because it views them as "quite subjective and imprecise."  *See* FDA, *The Clinical Impact of Adverse Event Reporting* 4 (Oct. 1996), *available at* http://www.fda.gov/medwatch/articles/medcont/ ref.htm.  In fact, "it is well known that placebos and even no treatment can be associated with adverse events."  *Id.*

The FDA also cautions against drawing any inference of causation from a count of the number of AERs:

> Accumulated [AERs] *may not be used to calculate incidences or estimates of drug risk.*  Numbers from these data should be carefully interpreted as reporting rates and not occurrence or incidence rates.

*See* Annual Adverse Drug Experience Report: 1996, *supra*, at 2 (emphasis added).

## B.   AERs Are Unreliable As Evidence and Irrelevant.

AERs and other case reports, and any evidence discussing or based on them, should be excluded under Federal Rules of Evidence 401 and 402.  Such reports are irrelevant because they cannot be used to establish that Vioxx® caused Mr. Irvin's sudden cardiac death, that it was defective, or that Merck was on notice of Vioxx's alleged risks.[4]

---

[4] Merck does not intend to suggest by this motion that AERs serve no legitimate purpose.  For example, the FDA uses such reports in connection with its ongoing oversight of FDA-approved products that are on the market.  *See* Food and Drug Administration, *Voluntary Reporting by Health Professionals, available at* http://www.fda.gov/medwatch/report/hcp.htm.  But the use of such reports within the FDA regulatory framework does not mean that they are sufficiently reliable or complete to meet the standards of admissibility in a judicial proceeding.  As courts have observed, the FDA reporting standards are "much lower than is required in a court of law."  *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1370 (N.D. Ga. 2001), *aff'd. sub nom. Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002).  Indeed, the FDA's repeated cautions against relying on these reports to establish matters such as causation illustrate this point.

790327v.1

## 1.   AERs Are Inadmissible To Establish Causation.

The Fifth Circuit and numerous courts throughout the country have concluded that AERs are scientifically unreliable and inadmissible and that opinion testimony based on such reports also is inadmissible. *See, e.g., Black v. Food Lion, Inc.,* 171 F.3d 308, 313 (5th Cir. 1999) (approving conclusion that case reports do not establish causal relationship); *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1250 (11th Cir. 2005) ("Uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation."); *Caraker v. Sandoz Pharms. Corp.,* 172 F. Supp. 2d 1046, 1050 (S.D. Ill. 2001) (holding experts could not rely on case reports because the reports "make little attempt to isolate or exclude possible alternative causes, lack adequate controls, and lack any real analysis"); *Hall v. Baxter Healthcare Corp.,* 947 F. Supp. 1387, 1411 (D. Or. 1996) ("case reports [such as AERs] and case studies are universally regarded as an insufficient basis for a conclusion regarding causation because case reports lack controls."); *Casey v. Ohio Med. Prods.,* 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) (AERs irrelevant as they "simply describe[] reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation"); *accord, Soldo v. Sandoz Pharms. Corp.,* 244 F. Supp. 2d 434, 537, 542 (W.D. Pa. 2003).[5]   In sum, as one district court

---

[5] *See also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1316 (11th Cir. 1999) (affirming trial court ruling that expert's reliance on case studies constituted "improper methodology"); *Siharath v. Sandoz Pharms. Corp.,* 131 F. Supp. 2d at 1359 (AERs for Parlodel excluded because "case reports in general do not satisfy the requirements of the scientific method sufficient to establish general causation"); *Brumbaugh v. Sandoz Pharms. Corp.,* 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) ("ADE's are compilations of occurrences, and have been rejected as reliable scientific evidence supporting expert opinion so as to meet the requirements set forth in *Daubert*") (citations omitted); *In re Breast Implant Litig.,* 11 F. Supp. 2d 1217, 1228 (D. Colo. 1998) (case reports noting symptoms or signs of a new atypical syndrome allegedly associated with breast implants "cannot be a scientifically reliable basis for an opinion on causation"); *Muzzey v. Kerr-*

5

790327v.1

succinctly observed, case reports are "universally recognized as insufficient and unreliable evidence of causation." *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *15 (E.D. Pa. Feb. 1, 2001) (citations omitted).

The reasoning of these cases applies with full force here. Among other problems, AERs do not provide information sufficient to rule out potential causes of the reported injuries other than ingestion of the medication; they do not explain the mechanism for causation; and they do not have adequate controls. Moreover, many reports of adverse events are prompted by threatened or existing litigation. *See Hagaman v. Merrell Dow Pharms., Inc.*, No. Civ. A 84-2202-5, 1987 WL 342949, at *8 (D. Kan. June 26, 1987). There simply is no way to ensure the accuracy of the information provided in AERs. *Id.*

### 2.    AERs Are Irrelevant to Notice.

Plaintiff also cannot credibly claim that AERs (and related evidence) are relevant to notice. AERs could not have provided such notice because, as explained above, AERs "cannot

---

*McGee Chem. Corp.*, 921 F. Supp 511, 519 (N.D. Ill. 1996) (physicians not allowed to testify in reliance on case studies because such studies are "not reliable bases to form a scientific opinion about causal link" between exposure to a drug and alleged injury); *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1164 (S.D. Fla. 1996) (rejecting expert's testimony premised on anecdotal reports of adverse medical events because "according to the FDA, [such reports provide] no certainty that the suspect drug caused the reaction"), *aff'd*, 158 F.3d 588 (11th Cir. (Fla.) 1988); *Wade-Greaux v. Whitehall Lab.*, 874 F. Supp. 1441, 1481 (D.V.I. 1994) (physicians cannot base opinions that Primatene caused birth defects on Drug Experience Reports that "represent anecdotal information of chance associations [and] do not purport to assess cause and effect and have no epidemiological significance"), *aff'd*, 46 F.3d 1120 (3d Cir. 1994); *DeLuca v. Merrell Dow Pharms., Inc.*, 791 F. Supp. 1042, 1050-51, 1057 (D.N.J. 1992) (granting summary judgment, noting that "the methodology produces inaccurate and unreliable results because [AERs] are unreliable for determining causation"), *aff'd*, 6 F.3d 778 (3d Cir. 1993), *cert. denied*, 510 U.S. 1044 (1994); *Hagaman v. Merrell Dow Pharmaceuticals, Inc.*, No. 84 2202-S, 1987 WL 342949 at *8 (D. Kan. June 26, 1987) (AERs are an "unscientific sample of experiences"); *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997) (excluding drug experience reports as scientifically unreliable); *Reynolds v. Warthan*, 896 S.W.2d 823, 828 (Tex. App. 1995) ("[AERs] did not establish a causal link between [the drug] and the reported symptoms; rather, they created a suspicion without any medical proof.").

6

790327v.1

be used to calculate incidence or estimates of drug risk." AER Caveat at 2. And, because they are not sufficiently reliable to show any causal link between the reported event and Vioxx, AERs could not have provided notice to Merck that such a causal link exists.[6]

In Florida, drug manufacturers have a duty to warn medical professionals—not patients— of potentially dangerous side effects. *See, e.g., Buckner v. Allergan Pharms., Inc.*, 400 So. 2d 820, 822 (Fla. 5th Dist. Ct. App. 1981). For obvious reasons, manufacturers can issue warnings concerning only the side effects of which they know or that are reasonably foreseeable at the time of marketing. *See Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 179 (Tex. 2004); *cf. Perret v. Seaboard Coast Line R. Co.*, 299 So. 2d 590, 593-94 (Fla. 1974) (noting importance of substantial similarity of events before prior incidents can be considered relevant to notice) (citing *Chambers v. Loftin*, 67 So. 2d 220, 222 (Fla. 1953)). There is no legal duty to warn of hypothetical or alleged risks of which a manufacturer has no knowledge or ability to confirm. AERs, by design, can provide only these kinds of hypothetical and alleged risks and thus are not evidence of notice.

Nor do AERs supply sufficient detail to determine with any confidence that the injury reported is similar to that alleged by the plaintiff in a specific case. AERs include information of unconfirmed injuries told in varying detail by and to a variety of sources. They involve patients who have widely divergent symptoms, medical histories, concomitant medications, and treatment histories, both in terms of dosage and duration of use. Many people suffer injuries every day that have absolutely nothing to do with the medication they are taking. This reality confounds the reliability of AERs.

---

[6] AERs dated after May 15, 2001, the date of Richard Irvin's death (Compl. at ¶ 5), are irrelevant for that reason as well.

7

### C.     AERs Are Inadmissible Hearsay.

AERs also are inadmissible because they are classic examples of hearsay—they report out-of-court statements. *See* FED. R. EVID. 801. *See also, e.g., Moss v. Ole Real Estate, Inc.,* 933 F.2d 1300, 1305 (5th Cir. 1991) ("Hearsay is generally inadmissible . . . because oath, personal appearance at trial, and cross-examination are the best mechanisms to ensure truthful and accurate testimony.") (citation omitted).[7]  As the proponent of such evidence, plaintiff bears the burden of proving that the AERs fall within a recognized exception to the hearsay rule. *Cf. United States v. Young Bros., Inc.,* 728 F.2d 682, 693-94 (5th Cir. 1984) (explaining that party must lay foundation for admission of hearsay on the basis of the business records exception). Plaintiff cannot carry this burden because, as discussed below, AERs are not business records or public records—the only colorable exceptions on which plaintiff could possibly rely.  Thus, AERs are inadmissible. *See* FED. R. EVID. 802.

AERs are not "records of regularly conducted activity" under Federal Rule of Evidence 803(6)[8] for a number of reasons.  First, plaintiff cannot show that third parties who supply the

---

[7] *Cf. Johnson v. Ford Motor Co.,* 988 F.2d 573, 579 (5th Cir. 1993) (summary of complaints "amounts to nothing more than a summary of allegations by others which constitute hearsay"); *Weir v. Crown Equip. Corp.,* 217 F.3d 453, 458 (7th Cir., 2000) ("the accident reports were of all kinds and were not created exclusively by [the defendant] but rather collected from a variety of sources.  The reports were not uniform and contained different levels of detail . . . [t]here was an obvious hearsay problem under Fed. R. Evid. 802."); *Saari v. Merck & Co, Inc.,* 961 F. Supp. 387, 398 (N.D.N.Y. 1997) (physician's "report to the FDA was simply a report of what plaintiff told him about what she believed was her reaction to the vaccine").

[8] Rule 803(6) excepts from the hearsay rule "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

8

data in the AERs keep such data as part of a regularly conducted business activity.[9]   Second, the

doctors and patients making these reports have no duty to do so.[10]   *Cf. Rock*, 922 F.2d at 279

(holding that medical records are not admissible under the business records exception to the

hearsay rule because patients are "not acting in the usual course of [their] business" when they

consult with their doctors).   Rather, doctors and patients supply information for AERs on a

completely voluntary basis.   Third, AERs, even if they otherwise qualified as business records,

are not sufficiently trustworthy to be admissible.   AERs typically consist of a physician's

account of an event relayed to him by a patient and, courts have held, lack indicia of reliability.

*See, e.g., DeLuca*, 791 F. Supp. at 1050 ("[E]ven if ADR[Adverse Drug Reaction Report] or

DER[Drug Experience Report] information were accurately reported, ADRs have inherent biases

as they are second-or-third hand reports, are affected by medical or mass media attention, and are

subject to other distortions."); *Cf. Byrd v. Hunt Tool Shipyards, Inc.*, 650 F.2d 44, 46 (5th Cir.

1981) (business records in products liability suit excluded because plaintiff did not submit

evidence of the records' trustworthiness).

Moreover, AERs often contain hearsay within hearsay.   Thus, the patients' statements

that are relayed by reporting physicians must themselves fall within a hearsay exception for the

AER to be admissible.   *See* FED. R. EVID. 805.   Provided all requirements were met, such patient

statements could theoretically be "[s]tatements for purposes of medical diagnosis or treatment"

under Rule 803(4) or possibly statements of "then existing . . . physical condition" under Rule

---

[9] *Cf. Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 279 (5th Cir. 1991) (excluding accident report because "each participant in the making of the record must be acting in his normal course of business before the record becomes admissible under the Rule 803(6) exception").

[10] *Cf. United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (tape-recorded emergency calls not admissible under the business records exception because witnesses who gave the recorded statements were under no business duty to report).

9

803(3). But AERs in nearly all cases are not sufficiently detailed to determine whether a hearsay exception would apply to the patient statements reported. *Cf. Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (hospital records inadmissible because patient's statements in records "must fall within another hearsay exception to be admissible").

Similarly, AERs are not admissible under Federal Rule of Evidence 803(8) as public records or reports. AERs are not writings made by a public office or agency, nor do they reflect an act performed or observed by a public official. *See* FED. R. EVID. 803(8)(A) & (B). Nor do they set forth "factual findings resulting from an investigation." *Id.* (8)(C). *Cf. Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859, 861-62 (5th Cir. 1998) (agency staff memos relating to automobile safety standards did not constitute "factual findings" of the National Highway Transportation Safety Administration Agency); *Toole v. McClintock*, 999 F.2d 1430, 1434-35 (11th Cir. 1993) (holding that admission of preliminary FDA report was an abuse of discretion because it was not final and it contained "unfairly prejudicial assertions about the risks of cancer and autoimmune disease"). As detailed above, the FDA cautions against drawing any inference of causation from AERs and does not officially approve or adopt AERs as agency findings. *See In re Diet Drugs*, No. MDL 1203, 2001 WL 454586, at *15 (E.D. Pa. Feb. 1, 2001) (case reports are "universally recognized as insufficient and unreliable evidence of causation"). Moreover, even if they otherwise met the requirements of Rule 803(8), AERs would still be inadmissible under that provision because they do not possess the requisite reliability to be deemed trustworthy evidence.[11] Finally, AERs are not admissible as public records because, as noted above, they

___

[11] *See Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1310 (5th Cir. 1985) (excluding firefighter's report on the cause of the fire because the author's lack of qualifications and less than thorough investigation made the report untrustworthy); *see also Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (NHTSA and congressional reports lacked "indicia of reliability" necessary to qualify as 803(8)(C) hearsay exception); *FDA Annual*

790327v.1

contain hearsay within hearsay, and plaintiff cannot show that second-hand statements in AERs

fall within an exception provided in Rule 803.

> ### D.   The Admission of AERs Would Cause Unfair Prejudice to Merck, Jury Confusion, and Undue Delay.

Federal Rule of Evidence 403 provides a third independent ground for excluding any

evidence of or testimony based on AERs because of the danger of unfair prejudice and jury

confusion that such evidence poses.  Admitting AERs would run the significant risk that the jury

would draw unfounded and speculative inferences that Vioxx caused the reported injuries and

further draw the unsupported inference that Vioxx caused Mr. Irvin's sudden cardiac death on

the basis of evidence that is far too unreliable.[12]

Moreover, the jury might accord AERs inordinate weight simply because they are

collected and maintained by a federal government agency.  *Cf., e.g., Curtis v. M&S Petroleum,

Inc.*, 174 F.3d 661, 673 (5th Cir. 1999) (upholding the exclusion of reports from the Mississippi

Department of Environmental Quality in part because "[that agency's] evidence of likely

violations of environmental regulations would have been unduly prejudicial due to its apparent

official nature"); *Johnson*, 988 F.2d at 580 (excluding letters from the National Highway

Transportation Safety Administration because "the 'official' nature of the inquiries could have

misled the jury into believing that 'something' was wrong with Ford cars"); *Sprankle v. Bower*

---

*Adverse Drug Experience Report: 1996, supra,* at 1 ("The adverse event may have been related to an underlying disease for which the drug was given, to other concomitant drugs, or may have occurred by chance at the same time the suspect drug was administered.").

[12] *Cf. Finchum v. Ford Motor Co.*, 57 F.3d 526, 530 (7th Cir. 1995) (videotape of car test properly excluded where test had not been performed in circumstances similar to plaintiffs' accident, but was "just similar enough to the ... accident to confuse the jury and leave jurors with the prejudicial suggestion that [plaintiffs] flipped over backwards during the crash"); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1988) ("The jury might infer from evidence of the prior accident alone that ultra-hazardous conditions existed . . . and were the cause of the later accident without those issues ever having been proved") (internal citation and quotation marks omitted).

790327v.1

*Ammonia & Chem. Co.*, 824 F.2d 409, 416, n.10 (5th Cir. 1987) (excluding evidence from the Occupational Safety and Health Administration because "the jury would undoubtedly place great weight upon the fact that OSHA is a government agency which follows government regulations. While the regulations do not have the force of law, a lay venireman could not possibly be expected to make the distinction between regulations and law.") (internal quotation marks omitted); *Fowler*, 92 F.R.D. at 2 ("apparent 'official' nature" of the NHTSA and congressional reports was "likely to cause a jury to give the evidence inordinate weight").

Further, AERs necessarily present medical histories and risk factors different from those of Mr. Irvin, including different histories of disease, physical condition, Vioxx dose, Vioxx usage, concomitant medication, and medical injury. As courts have held, admitting AERs that report, for example, different injuries would "do[] nothing except generally show [the] defendant in a bad light." *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1334 (9th Cir. 1985) (excluding evidence related to side effects other than the ones allegedly suffered by plaintiff); *accord, O'Banion v. Owens-Corning Fiberglas Corp.*, 968 F.2d 1011, 1013 (10th Cir. 1992) (excluding evidence of cancer in a non-cancer asbestos case under Rule 403).

Finally, introducing AERs or testimony based on such evidence would confuse the jury and cause undue delay. *Cf. Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357 (5th Cir. 1995) (affirming district court's exclusion of anecdotal evidence because the admission of such testimony "would open the door to a series of separate 'mini-trials' on each anecdotal incident" and "would further delay the proceedings and confuse the jury"). Any attempt by plaintiff to show similarity between the injuries discussed in AERs and Mr. Irvin's injury would require introducing evidence concerning the medical histories and injuries of the individuals who are the subjects of the reports. Merck would be forced (and entitled) to introduce evidence to show why

12

the injuries discussed in the AERs are irrelevant to the circumstances of Mr. Irvin's sudden cardiac death.  The trial would splinter into a series of almost endless mini-trials concerning the injuries described in the AERs.  As one court observed in excluding AERs under Rule 403, "[i]ntroduction of the reports may confuse the jury because the jury will already have to bear the responsibility of considering the medical histories of the five bellwether Plaintiffs; and introduction of the reports may waste time because the Defendants then would have to have an opportunity to rebut the significance of the adverse reports." *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80527, at *1 (E.D. Tex. Feb. 19, 1997).  The same applies here.

### E.     The Court Should Exclude Any Count of the Number of AERs Relating to Vioxx.

Plaintiff also should not be permitted to introduce tabulations of the numbers of AERs filed or adverse events reported, whether compiled by Merck or the FDA, for all of the reasons discussed above.  Permitting evidence of how many AERs exist or how many adverse events were reported undermines the rationale behind excluding AERs in the first place.  If the reports themselves are unreliable and inadmissible, *a fortiori* evidence that is an aggregate number of such reports is also unreliable and inadmissible.

Such counts would be especially prejudicial since they are accompanied by no individual facts and thus offer no means for determining whether the adverse events included in the numbers are similar at all to Mr. Irvin's injury.  Moreover, the FDA has admonished that the number of AERs or adverse events for a particular medication does not reflect the potential risk of that medication, recognizing that "[a]ccumulated [AERs] may not be used to calculate incidences or estimates of drug risk." *See Annual Adverse Drug Experience Report: 1996, supra*, at 1.

Counts of AERs or adverse events thus should be barred, as they are not accurate indications of the incidence of drug-induced injuries and have no probative value.[13]

## III.   CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court exclude all evidence of and reference to AERs and other case reports as well as any evidence that is predicated on them (including any counts of the number of such reports or any evidence using such counts to compare Vioxx with any other medication).

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

---

[13] Moreover, drug manufacturers should not be penalized for conscientiously compiling and submitting such reports to the FDA.  To admit tallies of the numbers of AERs or adverse events not only would provide manufacturers with a strong disincentive to report adverse events, but would unfairly penalize a manufacturer, such as Merck, that diligently submits the reports.

14

790327v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

15

790327v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude All Evidence of and Reference to AERs and Other Case Reports has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

16

790327v.1