

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

**MOTION OF MERCK & CO., INC. TO EXCLUDE EVIDENCE OF OR
ARGUMENT REGARDING (1) STATEMENTS MADE IN CONNECTION
WITH POLITICAL PROCEEDINGS AND DEBATE REGARDING VIOXX®,
AND (2) EVIDENCE OF VERDICTS FROM OTHER LITIGATION,
<u>CLAIMS AND ACTIONS, OR GOVERNMENT PROCEEDINGS</u>**

(MOTION IN LIMINE NO. 15)

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, 403, 404(b), 801, 802, and 803, hereby moves to exclude evidence of or argument regarding (1) statements made in connection with political proceedings and debate regarding Vioxx, and (2) evidence of verdicts from other litigation, claims and

790358v.1

actions, or government proceedings. The facts and law supporting this motion are more fully set forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

Respectfully submitted,

*[signature: Dorothy H. Wimberly]*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion to Exclude Evidence of or Argument Regarding (1) Statements Made in Connection with Political Proceedings and Debate Regarding Vioxx and (2) Evidence of Other Verdicts From Other Claims and Actions, or Government Proceedings has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*Dorothy H. Wimberly* (signature)

790358v.1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE EVIDENCE OF OR ARGUMENT REGARDING (1) STATEMENTS MADE IN CONNECTION WITH POLITICAL PROCEEDINGS AND DEBATE REGARDING VIOXX®, AND (2) EVIDENCE OF VERDICTS FROM OTHER LITIGATION, CLAIMS AND ACTIONS, OR GOVERNMENT PROCEEDINGS**

(MOTION IN LIMINE NO. 15)

This motion addresses two categories of hearsay evidence that are irrelevant to plaintiff's claims: (1) statements by members of Congress and witnesses in political proceedings and debates, and (2) verdicts from other litigation, claims and actions, or investigations by federal or

state enforcement agencies involving Vioxx.[1]  If admitted, such evidence will unfairly prejudice Merck, lead to juror confusion, and unnecessarily prolong trial.

Statements made in connection with Congressional hearings are inadmissible hearsay because they lack the trustworthiness required for admission under any exception to the hearsay rule.  Similarly, verdicts from other lawsuits, and unproven allegations in other actions or government enforcement proceedings are not probative of any issue in this case.  Moreover, evidence that Vioxx has been the subject of Congressional inquiry, other lawsuits, or government enforcement actions will unfairly prejudice jurors against Merck.  Given the absence of probative value to the issues of the case and the attendant prejudice, such evidence should be excluded.[2]

I.      **THE COURT SHOULD EXCLUDE EVIDENCE OF STATEMENTS MADE IN THE COURSE OF POLITICAL PROCEEDINGS AND DEBATE OVER VIOXX.**

In November 2004 – just months after Merck voluntarily withdrew Vioxx from the market – Congress held hearings to assess whether the FDA had properly discharged its duty to ensure that drugs approved for sale to the public were sufficiently safe.  Vioxx was among the drugs discussed at these hearings.  Politicians have since drafted legislation, and promised to draft additional legislation in the future, to address various drug safety concerns.  (*See* S. 930,

---

[1] By this motion, Merck does not seek to exclude evidence of proceedings before the FDA. Limitations on the admissibility of such evidence are addressed in other motions.

[2] Unless the Court excludes this evidence at the outset, plaintiff may attempt to introduce such evidence through the testimony of her experts.  For example, Richard M. Kapit, M.D., reviewed Congressional hearings regarding Vioxx and the FDA's regulation of drugs and safety.  (*See, e.g.,* Expert Report of Richard M. Kapit, M.D. ("Kapit Report") at ¶¶ 39, 122-125 & Ex. C, attached as Ex. 43 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions in Limine ("Wittmann Decl."); Sept. 30, 2005 Deposition of Richard M. Kapit, M.D. ("Kapit Dep.") at 87:20-88:03, 108:22-110:02, attached as Ex. 20 to Wittmann Decl.)  In his deposition, Dr. Kapit also referred to Congressman Waxman's statements and an article the Congressman wrote in the *New England Journal of Medicine*.  (*See* Kapit Report at ¶¶ 122-124; Kapit Dep. at 188:06-25, 204:03-25, 236:10-19; 240:01-241:01.)  The opinions of a Congressman – whether in writing or before the television cameras – are clearly made for political purposes and are properly excluded from this lawsuit.

109th Cong. (2005); *Kennedy Working on Bill to Address Drug Safety Concerns*, FDA WEEK (Inside Washington Publishers, Washington D.C.), Apr. 29, 2005.) In addition, various politicians – Congressman Henry Waxman was particularly prominent – made public statements and speeches, wrote articles, and discussed their views about Merck, Vioxx, and the FDA's drug-approval and field-use monitoring practices. While such political debate is helpful to the democratic determination of policy, it has no place in the trial of a lawsuit.

> Congressional hearings may be held for various purposes.
>
> A hearing is a meeting or session of a Senate, House, joint, or special committee of Congress, usually open to the public, to obtain information and opinions on proposed legislation, conduct an investigation, or evaluate/oversee the activities of a government department or the implementation of a Federal law. In addition, hearings may also be purely exploratory in nature, providing testimony and data about topics of current interest.

*See* Congressional Hearings: About, GPO Access, *at* www.gpoaccess.gov/chearings/about.html (last visited Oct. 27, 2005). The evidentiary value of such hearings is doubtful. As one federal court put it:

> [C]ongressional committee hearings are oft time conducted in a circus atmosphere, with gracious plenty of posturing by the politicians for T.V. publicity in large part for the benefit of constituents back home . . . .
> This "circus" is hardly conducive to the development of facts, but more to entertainment of the television audience. The Court does not look to the reports of such activities as productive of any facts which would persuade the Court one way or the other.

*Knight Pub. Co. v. U.S. Dep't. of Justice*, 631 F. Supp. at 1178. Politically motivated statements, opinions of persons interested in obtaining a specific political result, and proceedings without the safeguards of the Rules of Evidence simply have no purpose in a trial. Therefore, even though a Congressional hearing may be an official proceeding, statements made in connection with such proceedings cannot reasonably be considered sufficiently trustworthy to be admitted as an exception to the hearsay rule.

A.     **Political Statements Are Inadmissible Hearsay.**

Out-of-court statements made in connection with Congressional hearings or other political inquiries are hearsay and cannot be offered for the truth of the matter therein. FED. R. EVID. 801(c) (hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Statements made in connection with Congressional hearings must be excluded because no exceptions to the hearsay rule apply. FED. R. EVID. 802.

1.     **Statements made in connection with Congressional hearings and political debate do not fall within the public records exception to the hearsay rule.**

Rule 803(8) provides that "public records and reports" may qualify as an exception to the hearsay rule, so long as statements contained in such records and reports are sufficiently trustworthy.[3] Courts have routinely found that statements made in connection with Congressional investigations do not meet the requirements of Rule 803(8). *See, e.g., Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (excluding report of Congressional investigation because, *inter alia*, it lacked the indicia of reliability required by Rule 803(8)(C) and was based "on evidence which would clearly be inadmissible if independently offered at the trial of this cause…"); *Knight Pub. Co. v. U.S. Dep't. of Justice*, 631 F. Supp. 1175, 1178 (W.D.N.C. 1986) (declining to consider as "facts," to illustrate and support

---

[3] Federal Rules of Evidence, Rule 803(8), provides as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

4

allegations of bad faith in a law enforcement investigation, statements contained in a Congressional report); *Anderson v. City of New York*, 657 F. Supp. 1571, 1579-80 (S.D.N.Y. 1987) (Congressional hearings and subsequent reports "are frequently marred by political expediency and grandstanding"; Congressional report proffered "suffer[ed] from the same apparent motivational flaws."); *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (agreeing with the district court that the report of the Congressional investigation "lacks the trustworthiness necessary to bring Rule 803(8)(C) into play. . . . The subcommittee report did not contain the factual findings necessary to an objective investigation, but consisted of the rather heated conclusions of a politically motivated hearing."); *Richmond Med. Ctr. for Women v. Hicks*, 301 F. Supp. 2d 499, 512 (E.D. Va. 2004) ("The House Report [] represents the political position of the representatives who voted for it.  It is untrustworthy and inadmissible."), *aff'd*, 409 F.3d 619 (4th Cir. 2005); *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 814 (D.D.C. 1987) (refusing to admit a Congressional subcommittee report of its investigation into the actions taken by the Department of Justice because the report was comprised of the subcommittee's subjective comments, criticisms, arguments and evaluations); *Needham v. Coordinated Apparel Group, Inc.*, 811 A.2d 124, 133-34 (Vt. 2002).

Here, the Congressional hearings and related political discussion, debate, and inquiry concerning Vioxx and the FDA's role in evaluating and monitoring prescription drugs are no different.  These hearings were highly publicized and politically charged, with much testimony from self-interested witnesses and statements by politicians who were championing legislative agendas.  The hearings garnered much media attention and were televised on C-Span. (*See, e.g.*, C-Span.org, Network Schedule for February 23, 2005 indicated showing of *Safety of Arthritis Drugs, Day 1, Parts 1-4* from 9:30 a.m. through 7:30 p.m., *available at* http://www.c-

spanstore.org/shop/index.php?main_page=schedule&date=1109134800&type=0 (last visited Oct. 27, 2005).)

A key witness at the first Congressional hearing was Dr. David Graham, a "whistle-blower" who accused his employer, the FDA, of failing to regulate adequately the safety and labeling of Vioxx, among other prescription drugs. (*See FDA, Merck and Vioxx: Putting Patient Safety First?: Hearing Before the U.S. Senate Committee on Finance*, 108th Cong. (Nov. 18, 2004) (statement of David J. Graham, MD, MPH).) This hearing was heavily focused on politicians' and witnesses' agendas regarding the FDA and the regulation of drugs generally, using the voluntary withdrawal of Vioxx to score political points.[4] Of course, none of the procedural protections that apply to a trial were available in the Congressional hearings on Vioxx and the FDA. For example, unauthenticated documents became part of the hearing record, Merck had no opportunity to cross-examine adverse witnesses, and scientific testimony was allowed without regard to *Daubert* standards, among other things.

Moreover, the Congressional hearings were apparently affected by individuals working on behalf of plaintiffs in various Vioxx lawsuits: For example, Dr. David Egilman, who is serving as an expert for the plaintiffs in several Vioxx cases, testified at deposition that he met with members of Congress and their staffs before the February 2005 hearings to discuss Vioxx issues and to provide them with Merck documents identified by plaintiffs' counsel. (*See* June 13, 2005 Deposition of David Egilman taken in *Ernst v. Merck, Co., Inc.*, No. 19961 *BH02 (Dist. Ct. of Brazoria County Tex., 23rd Judicial Dist.) 126:24-127:6, attached as Ex. 12 to Wittmann Decl. (confirming that he sent such information to "[s]everal different

---

[4] Following this and other Congressional hearings, Senators Grassley and Dodd introduced a bill to amend the Federal Food, Drug and Cosmetic Act with respect to drug safety. *See* S. 930, 109th Cong. (2005).

congressmen").)   Accordingly, statements criticizing Merck by Congressmen such as Henry Waxman after these hearings may well have been influenced by biased information coming from only one side of this litigation.  Such statements plainly do not fit the public records exception to the hearsay rule because they do *not* report on the activities of a governmental office or agency, are *not* matters observed pursuant to an official duty, are *not* factual findings, and lack the trustworthiness required to satisfy Rule 803(8).

> 2. **Statements made in connection with Congressional hearings and political debate do not fall within the business records exception to the hearsay rule.**

Rule 803(6) requires the same degree of evidentiary trustworthiness as Rule 803(8).[5] Because political statements fail to satisfy the trustworthiness requirement of the public records exception to the hearsay rule, such statements cannot satisfy the business records exception.

Moreover, reports and records, while frequently created by members of Congress, do not meet the requirements of Rule 803(6) for a business record of a regular business practice. Congressional hearings are called on an ad-hoc, interest-driven basis, and there is no "regular practice of that business activity" to make the record.  FED. R. EVID. 803(6).   Evidence of

---

[5] Federal Rules of Evidence, Rule 803(6), provides as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, *unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness*.  The term business as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

(Emphasis added.)

politically-motivated statements thus remains inadmissible hearsay.

### B. Political Statements Are Irrelevant.

Statements made as part of the political process about the safety and marketing of Vioxx and the FDA's regulatory procedures are irrelevant to plaintiff's claims. *See* FED. R. EVID. 401. No one at the recent Congressional hearings addressed whether Vioxx caused Mr. Irvin's death or whether Merck adequately warned his physician, Dr. Schirmer, of risks alleged to arise from the use of Vioxx. *See id.* (evidence is relevant if conclusion is "more probable or less probable than it would be without the evidence"). Accordingly, statements made in connection with the Congressional hearings are irrelevant to any issue in this case.

### C. Admission Of Political Statements About Vioxx Or The FDA Would Unfairly Prejudice Merck, Confuse The Jury, And Unnecessarily Prolong The Trial.

Statements made by members of Congress in connection with hearings or other inquiries regarding Vioxx, Merck, or the FDA should also be excluded because such statements are likely to prejudice Merck unfairly, confuse or mislead the jury, and prolong the trial unnecessarily. As noted above, any probative value of such statements is minimal. *See* FED. R. EVID. 403.

Congressional hearings do not proceed according to the rules of evidence or procedure that apply in a court of law. *See Anderson*, 657 F. Supp. at 1579; *Fowler*, 92 F.R.D. at 2. In Congressional hearings, statements of purported fact are made by persons who have no personal knowledge, unauthenticated documents are entered into the record, and testimony is not subjected to cross-examination. A jury, however, may not understand the importance of these procedural protections and instead attribute statements made in connection with a Congressional hearing the same reliability as sworn testimony at trial, subject to, among other things, cross-examination. Moreover, infused with the imprimatur of Congress and couched in terms of "findings," the jury could easily attribute undue weight to statements made in connection with a

8

Congressional hearing as objective fact, rather than the potentially politically-motivated opinion of a member of Congress. *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984) (finding that the probative value of a Congressional report "minimal" with regard to whether the alleged defect caused the plaintiff's accident, and that "[t]here was a substantial danger of unfair prejudice because the jury may have been influenced by the official character of the report to afford it greater weight than it was worth); *Pearce*, 653 F. Supp. at 816 ("there is the danger of unfair prejudice to [the] defendant . . . because of the undue weight that a jury is likely to attach to the official reports from Congress and the often inflammatory or exaggerated statements made in testimony before Congress or by a political official); *Fowler*, 92 F.R.D. at 2 (excluding report of Congressional committee because "apparent 'official' nature is likely to cause a jury to give the evidence inordinate weight and for this reason, any probative value of the evidence might have would be far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.").

Moreover, statements made during Congressional hearings and debates contain extraneous criticisms of Merck and the FDA, as well as other collateral and irrelevant matters, such as issues concerning other prescription drugs. The introduction of any such evidence is likely to confuse the issues and mislead the jury. *See Pearce*, 653 F. Supp. at 817.

If the Court were to admit statements made in connection with the Congressional hearings, Merck would need to introduce evidence to rebut such statements. All of this would cause undue delay and needless litigation of collateral issues. In such circumstances, courts have upheld the exclusion of such evidence to avoid a mini-trial within a trial. *See, e.g., Samson v. Apollo Res., Inc.*, 242 F.3d 629, 641-42 (5th Cir. 2001) (upholding trial court's exclusion of collateral issues that would have required additional days of testimony without shedding light on

the central issue in the case); *Kelly v. Boeing Petrol. Servs., Inc.,* 61 F.3d 350, 356-58 (5th Cir. 1995). Accordingly, any statements made in connection with Congressional hearings and other political inquiries must be excluded.[6]

## II. THE COURT SHOULD EXCLUDE EVIDENCE OF VERDICTS IN OTHER LITIGATION, CLAIMS AND ACTIONS, AND GOVERNMENT INVESTIGATIONS PERTAINING TO VIOXX.

Evidence of verdicts from other lawsuits, and other civil claims or lawsuits relating to Vioxx is inadmissible because it is irrelevant, constitutes inadmissible hearsay, is improper character evidence, will unfairly prejudice Merck, and will cause jury confusion and undue delay. Evidence of previous or pending investigations regarding Vioxx by governmental bodies, including, for example, the United States Department of Justice or any state's attorney general is similarly inadmissible.

### A. Evidence Of Verdicts From Other Lawsuits And Other Claims And Actions Filed Against Merck, Or Investigations Involving Merck, Is Irrelevant And Thus Inadmissible.

Evidence of verdicts from other lawsuits or claims and actions filed against Merck involving Vioxx is not probative of any allegations in plaintiff's Complaint. Parties claiming injury in other legal actions differ from Mr. Irvin in numerous ways that bear directly on the circumstances of this action, including age, medical history, alleged injuries, knowledge by the prescribing physician of the patient and the drug,, and dose and duration of using Vioxx and other medications. Accordingly, such evidence is inadmissible. *See* FED. R. EVID. 401-402.

Moreover, the mere fact that another person *claims* to have suffered an injury while taking Vioxx does not, in itself, establish that Vioxx *caused* any alleged injury. *See, e.g.,*

---

[6] Such statements include hearing transcripts, written statements and documents contained in the hearing records, politicians' and witnesses' speeches about the hearings and the subject matters covered in the hearings, articles written by hearing participants about the hearings, press reports about the hearings, and other such materials.

*Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 322 (10th Cir. 1989) (noting that the "fact that one other individual [used the product and developed injuries] similar to that suffered by [plaintiffs] constitutes very little, if any, proof that [the product] caused [plaintiffs' injuries]"); *King v. Emerson Elec. Co.*, 837 F. Supp. 1096, 1099 (D. Kan. 1993) (excluding complaints from prior actions because they were "merely proof that someone had accused defendant of manufacturing a defective or dangerous [product], not that the [product] is in fact defective or dangerous"). Applying these principles here would require plaintiff to prove that Vioxx caused the alleged injuries involved in the other lawsuits and claims before evidence of those lawsuits or claims could even possibly become admissible. Without that foundational showing, alleged incidents in other legal actions are completely irrelevant.

Indeed, even evidence that a jury in a different lawsuit found that Vioxx caused injury to someone does not establish causation here. *Brumley Estate, et al. v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1357 (5th Cir. 1983) ("we do not find it highly probative [of whether an agency existed here] that two juries in other cases concluded that agency status existed.").

Similarly, evidence of government investigations or enforcement proceedings against Merck is irrelevant to the specific issues in this case. Governmental investigations often have a broader scope and focus than the facts at issue in a lawsuit. Governmental bodies are often concerned with simply learning more about the alleged problem or crafting future legislation or policy solutions to benefit a greater public interest.

For example, the Department of Justice ("DOJ") has filed a statement of interest in the consolidated federal action against Merck seeking "to recover amounts expended for medical care provided to certain Plaintiffs in this action." (*See* The United States' Statement of Interest, *In re Vioxx Prods. Liab. Litig.*, MDL Docket No. 1657, filed July 13, 2005.) The DOJ is

11

concerned with those cases in which Medicare funds were used to pay for plaintiffs' Vioxx and the application of federal Medicare law, including 42 U.S.C. § 1395y(b)(2) and 42 C.F.R. § 405.704(b)(13). Those provisions of federal law have nothing to do with the determination of Mr. Irvin's claims. The concerns of the DOJ or any other governmental body (such as the Texas Attorney General) that investigates or files a claim against Merck are simply not "of consequence to the determination" of this particular plaintiff's action. FED. R. EVID. 401.

### B. Evidence Of Verdicts From Other Lawsuits, Claims and Actions, And Government Investigations Or Enforcement Actions Is Inadmissible Hearsay.

Evidence of investigations of Merck, or claims or lawsuits against Merck, should not be admitted into evidence for yet another reason: it is inadmissible hearsay. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (describing plaintiff's summary of lawsuits, claims and complaints against defendant as "nothing more than a summary of allegations by others which constitute hearsay"); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 381 (5th Cir. 1989) (holding that trial court properly excluded evidence of consumer accident reports as "clearly hearsay"). Because other lawsuits and claims do not satisfy any exception to the hearsay rule, the contents of any record of investigation, claim, or complaint against Merck alleging wrongdoing with regard to Vioxx is inadmissible.[7]

Indeed, courts have routinely held similar hearsay evidence inadmissible. *See, e.g., Johnson*, 988 F.2d at 579-81; *Shields*, 864 F.2d at 381; *Wolf v. Proctor & Gamble Co.*, 555 F.

---

[7] Even assuming evidence of other claims could be admitted to establish notice (as opposed to the truth of the matter asserted in the claims), such an argument for admitting evidence of claims and investigations is unavailing here because plaintiff cannot establish that Merck had notice of these claims before Dr. Schirmer prescribed Vioxx to Mr. Irvin. *See Johnson*, 988 F.2d at 579-81 (rejecting notice argument because appellant "made no showing or even attempted to establish that Ford had notice of any of the claims or lawsuits before [the accident]. . . .[T]here is no evidence that Ford was served with any of the complaints or received any of the claims before [the accident]").

Supp. 613, 620 (D.N.J. 1982) (finding evidence of consumer complaints made to defendants inadmissible hearsay not subject to any exceptions); *Tincombe v. Colorado Constr. & Supply Corp.*, 681 P.2d 533, 534 (Colo. Ct. App. 1984) (upholding trial court's exclusion of file of consumer complaints lodged with attorney general's office as inadmissible hearsay not subject to exception because, in part, they lacked the requisite trustworthiness because the comprise unsubstantiated allegations rather than factual findings); *Kourtalis v. City of New York*, 594 N.Y.S.2d 325, 327 (evidence of five civilian complaints was unsubstantiated hearsay and permitting their introduction was reversible error); *Berstein v. Maimes*, 126 Cal. App. 2d 468, 476 (1954) (finding no error in trial court's exclusion of letter from city prosecutor stating that as a result of its investigation the office was prepared to file a criminal complaint against appellants).

### C.     Evidence Of Other Lawsuits Or Investigations Is Impermissible Character Evidence.

Evidence of other claims filed against Merck or investigations into alleged misconduct by Merck relating to Vioxx also violates the rule that evidence of other wrongs is "not admissible to prove the character of a person in order to show that he acted in conformity therewith," FED. R. EVID. 404(b). Evidence of other acts may be admissible only if: (1) it is relevant to a material issue in dispute other than Merck's "character" and similar in kind; and (2) its probative value is not outweighed substantially by its inherent prejudice. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978); *see also Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979) (stating "[t]his general rule of exclusion [is] applicable to both civil and criminal proceedings").[8] As demonstrated herein, other claims and lawsuits are irrelevant, dissimilar, and

---

[8] The same conclusion applies whether evidence of other claims, lawsuits and investigations against Merck were characterized as other wrongs under Rule 404(b) or as "prior accident" evidence. Prior accidents or occurrences can be used only to prove the existence of a dangerous

13

of scant probative value with respect to this case. Thus, such evidence is inadmissible. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 142 (Tex. 2004) ("[P]roduct defects must be proved; they cannot simply be inferred from a large number of complaints. If the rule were otherwise, product claims would become a self-fulfilling prophecy – the more that are made, the more likely all must be true.").

### D. Evidence Of Verdicts From Other Lawsuits, And Other Claims, Actions Or Investigations Will Cause Unfair Prejudice, Jury Confusion, And Undue Delay.

Putting aside the other evidentiary hurdles to introducing evidence of verdicts from other lawsuits and the existence of other claims, lawsuits or investigations relating to Vioxx, the danger of unfair prejudice, juror confusion, and undue delay also dictates that such evidence be excluded. FED. R. EVID. 403; *Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (excluding list of prior lawsuits in product liability case is proper means "to exclude evidence of such faint probative value and high potential for unfair prejudice"). "Other-incidents evidence . . . poses a significant risk of confusing the jury and creating prejudice, while its probative value is relatively low." *Nissan Motor Co.*, 145 S.W.3d at 150 (O'Neill, J., concurring); s*ee also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 328-29 (5th Cir. 2004) (reports on dissimilar injuries properly excluded because they were "unfairly prejudicial, would confuse the issues, and would mislead the jury, among other things"); *Johnson*, 988 F.2d at 581 (probative value of evidence of complaints is substantially outweighed by danger of unfair prejudice); *Brumley Estate*, 704 F.2d at 1357 (undue prejudice resulting from

---

condition if "(1) the proponent of that evidence can show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and circumstances at issue, and (2) Federal Rule of Evidence 403 is otherwise satisfied." *Johnson*, 988 F.2d at 579. Under either rule, the lack of similarity makes the claims inadmissible. Further, bare allegations in a complaint cannot establish an absence of other causes: to determine causation is the whole purpose of a trial.

14

"high possibility that more probative value than would have been warranted would have been given to the prior jury determinations"; "possibility that the present jury would have been misled or confused would have been presented by admission of the two prior jury determinations."); *Harrell, et al. v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1466 (5th Cir. 1992) ("potential for prejudice when a previous jury verdict is offered: the acting jury may give undue value to the previous determination").

The introduction of such evidence will create a distracting sideshow and pose a significant risk that the jury will draw improper and speculative inferences from the mere existence of pending suits, claims or investigations involving Vioxx. Admitting information about other lawsuits also will require the jury to hear evidence about the specific medical information of *other* plaintiffs and to evaluate the scientific literature pertaining to their alleged injuries. *See Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408-09 (5th Cir. 2004) (any possible probative value of earlier lawsuits "was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation"). Admitting such evidence would quickly snowball into a mega-trial, with several trials within a trial, as plaintiff attempts to prove that Vioxx caused other plaintiffs' claimed injuries and Merck responds to such claims. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1988).

### III. CONCLUSION.

For the reasons discussed above, the Court should exclude evidence of any statements made in the course of political proceedings and debate related to Merck, Vioxx or the FDA, as well as any evidence of other lawsuits, claims or government investigations or enforcement actions involving Vioxx.

Respectfully submitted,

*Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

16

790359v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co, Inc. to Exclude Evidence of or Argument Regarding (1) Statements Made In Connection With Political Proceedings and Debate Regarding Vioxx® and (2) Evidence of Other Litigation, Claims, or Government Enforcement Proceedings has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 4th day of November, 2005.

*Dorothy H. Wimberly*