U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED

NOV - 1 2005

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>        PRODUCTS LIABILITY LITIGATION | ) )<br>) MDL NO. 1657<br>) |
| This document relates to: | ) SECTION L<br>) |
| VICK KARGODORIAN, | )<br>) |
|             Plaintiff, | ) JUDGE FALLON<br>) MAGISTRATE JUDGE KNOWLES |
| vs. | )<br>) |
| MERCK & COMPANY, INC., McKESSON<br>CORPORATION and DOES ONE through<br>TWENTY, inclusive, and TSOLAG<br>KARGODORIAN and VRAM KARGODORIAN,<br>nominal defendants, | )<br>)<br>)<br>)<br>) |
|             Defendants. | )<br>) |
| Civil Action No. C05-00937 | )<br>) |

**PLAINTIFF VICK KARGODORIAN'S MOTION TO
REMAND CASE TO CALIFORNIA SUPERIOR
COURT
[28 U.S.C. §1441(a)(b)]**

This motion is made pursuant to 28 U.S.C. 1447(c) on the ground that the Court lacks

subject matter jurisdiction for this action because there is not complete diversity between Plaintiff

and all defendants.  Plaintiff is a resident of California and Defendant McKesson is a California

distributor with its principal place of business in San Francisco, California.  As a distributor of

1



Vioxx in California, Defendant McKesson Corporation was properly joined.  Because Defendants'

removal was improper, the Court should remand the action to the appropriate court.

DATED:  October 21, 2005.          HERSH & HERSH
                                   A Professional Corporation


                                   By _____
                                   NANCY HERSH, ESQ., State Bar No. 49091
                                   MARK E. BURTON, JR., ESQ., State Bar No. 178400
                                   RACHEL ABRAMS, ESQ., State Bar No. 209316
                                   HERSH & HERSH
                                   A Professional Corporation
                                   601 Van Ness Avenue, Suite 2080
                                   San Francisco, CA  94102-6396
                                   (415) 441-5544

                                   Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2005, I served a copy of the foregoing paper by U.S. Mail, postage prepaid, on:

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue, Suite 100
New Orleans, LA  70113
(504) 581-4892
fax:  (504) 561-6024
Plaintiff's Liaison Counsel

Phillip Wittmann, Esq.
Stone, Pigman, Walther, Wittman, LLC
546 Carondelet Street
New Orleans, LA  70130
(504) 581-3200
fax:  (504) 581-3351

_____
MARK E. BURTON, II

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>      PRODUCTS LIABILITY LITIGATION | ) <br> ) <br> ) MDL NO. 1657 <br> ) <br> ) SECTION L |
| This document relates to: | ) |
| VICK KARGODORIAN, | ) <br> ) |
| Plaintiff, | ) JUDGE FALLON <br> ) MAGISTRATE JUDGE KNOWLES |
| vs. | ) <br> ) |
| MERCK & COMPANY, INC., McKESSON<br>CORPORATION and DOES ONE through<br>TWENTY, inclusive, and TSOLAG<br>KARGODORIAN and VRAM<br>KARGODORIAN, nominal defendants, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |
| Civil Action No. C05-00937 | ) <br> ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF
VICK KARGODORIAN'S MOTION TO REMAND
CASE TO CALIFORNIA SUPERIOR COURT
[28 U.S.C. §1441(a)(b)]**

## **TABLE OF CONTENTS**

                                                                                    Page

I.      INTRODUCTION ............................................................................................2

II.     STATEMENT OF FACTS...............................................................................2

III.    ARGUMENT ..................................................................................................2

        A.      REMOVAL IS IMPROPER BECAUSE OF LACK OF COMPLETE
                DIVERSITY ........................................................................................2

        B.      DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN
                TO ESTABLISH FRAUDULENT JOINDER ................................................3

        C.      REMOVAL IS IMPROPER BECAUSE DEFENDANT MCKESSON IS
                SUBJECT TO STRICT LIABILITY UNDER CALIFORNIA LAW............4

                1.      Strict liability applies to failure to warn against pharmaceutical product
                        dangers. ..................................................................................4

                2.      Distributors are subject to strict liability...............................................6

                3.      Distributors are not exempt from strict liability under the "learned
                        intermediary" doctrine.......................................................................7

## **TABLE OF AUTHORITIES**

Page

Cases

*Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 991 (1991) ............................5

*Barth v. B.F. Goodrich Tire Co.*, 265 Cal. App. 2d 228, 252 (1968)......................................7

*Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3rd Cir. 1992)...........................................3

*Brown v. Superior Court of the City and County of San Francisco*, 44 Cal. 3d 1049, 1057 (1988) ...................................................................................................................... 4 ,6

*Canifax v. Hercules Powder Co.*, 237 Cal. App. 2d 44, 52 (1965). ........................................6

*Carlin v. Superior Court of Sutter County*, 13 Cal. 4th 1104 (1996) ......................................5

*Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 130 (1972) ........................................................6

*Cryolife, Inc. v. Superior Court of Santa Cruz County*, 110 Cal. App. 4th 1145, 1155 (2003).........................................................................................................................7

*Davis v. Prentiss Prop. Ltd.*, 66 F. Supp. 2d 1112, 1113-1114 (9th Cir. 1999) ......................3

*Fogo v. Cutter Laboratories, Inc.*, 68 Cal. App. 3d 744, 754-55 (1977) ................................7

*Filla v. Southern Ry. Co.*, 336 F3d 806, 810 (8th Cir. 2003) ...................................................3

*Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57 (1963),.............................................6

*Hartley v. CTX Transp.*, 187 F.3d 422, 425 (4th Cir. 1998)....................................................3

*Hatch v. Bionx Implants, Inc.*, Case No. 012504 (S.C.Cal. January 2005) ............................9

*Hensel v. Merck & Co.*, Case No. CGC-02-404819 (S.C.Cal. February 22, 2002)................8

*Jimenez v. Superior Court of San Diego County*, 29 Cal. 4th 473, 476 (2002)......................6

*Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-233 (4th Cir. 1993) ................................3

*Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985) ..............................................7, 8

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ...........................................3

*San Diego Hospital Assn. v. Superior Court of San Diego County*, 30 Cal. App. 4th 8, 14-15 (1994).....................................................................................................................7

*Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P. 2d 922 (Utah 2003) ..............................8

*Strawbridge v. Curtiss*, 7 U.S. 267 (1806) ..................................................................................2

*Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63 (1964) ...........................................6

Statutes

14A Charles A. Wright et al., Federal Practice & Procedure § 3723, at 353-54 (1985) ...........3

28 U.S.C. §1332 .............................................................................................................................2

28 U.S.C. §1441(a)(b) ....................................................................................................................2

28 U.S.C. §1441(b) .........................................................................................................................3

## I.   INTRODUCTION

Removal is improper because McKesson Corporation ("McKesson") was properly joined. A civil action filed in a state court cannot be removed to a Federal District Court unless that Court has original subject matter jurisdiction or there is complete diversity. 28 U.S.C. §1441(a)(b). As a distributor in California, McKesson may be held strictly liable for failure to provide a warning regarding a known or reasonably knowable danger from a pharmaceutical product. Contrary to Merck's claim, the doctrine of "learned intermediary"—which exempts physicians and pharmacies from strict liability—does not apply to a pharmaceutical distributor.

## II.   STATEMENT OF FACTS

This is a products liability case brought by Vick Kargodorian. Plaintiff's decedent Varoujan Kargodorian was prescribed Vioxx, also known as rofecoxib. Decedent ingested Vioxx beginning in 2001 until his death on December 16, 2002, for treatment of arthritis and acute pain. Plaintiff's decedent Varoujan Kargodorian ingested this product and sustained serious injuries and death. Defendant McKesson marketed, distributed, and sold to retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as Vioxx.

## III.   ARGUMENT

## A.   REMOVAL IS IMPROPER BECAUSE OF LACK OF COMPLETE DIVERSITY

There is not complete diversity and therefore the Federal District Court has no subject matter jurisdiction over this action. A civil action filed in a state court cannot be removed to a Federal District Court unless that Court has original subject matter jurisdiction or there is complete diversity. 28 U.S.C. §1441(a)(b). A Federal District Court may have original jurisdiction where there is complete diversity of citizenship of the parties. 28 U.S.C. §1332 and *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). If the Federal court lacks subject matter jurisdiction, the action **must**

2

be remanded to state court. 28 U.S.C. §1441(b), (emphasis added). Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent. *Filla v. Southern Ry. Co.*, 336 F3d 806, 810 (8th Circuit 2003). Courts should resolve any doubts about the propriety of removal in favor of retained state court jurisdiction. *Hartley v. CTX Transp.*, 187 F.3d 422, 425 (4th Circuit 1998).

Where, as here, there is not complete diversity of citizenship of the parties, there is no original subject matter jurisdiction, removal by defendants was improper, and the matter must be remanded to state court. Defendants do not dispute that McKesson is a resident of California because it has its principal place of business in San Francisco, California. Remand is required if *any* proper defendant is a resident of the same state as the plaintiff. Because *all* defendants are properly named (indeed, even if there is only a doubt that the nondiverse defendant was in fact fraudulently joined as defendants allege), this action must be remanded to state court.

## B. DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN TO ESTABLISH FRAUDULENT JOINDER

The party alleging fraudulent joinder bears a heavy burden: it must show that the plaintiff cannot establish a claim <u>even after resolving all issues of law and fact in the plaintiff's favor</u>. *Davis v. Prentiss Prop. Ltd.*, 66 F. Supp. 2d 1112, 1113 (9th Cir. 1999); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-233 (4th Cir. 1993.); Emphasis added. See also *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3rd Cir. 1992) (inquiry into validity of complaint is more searching under Rule 12(b)(6) than when party claims fraudulent joinder). "A claim need not succeed to defeat removal; only a <u>possibility of a right to relief</u> need be asserted." *Marshall*, 6 F.3d at 233 (Emphasis added; citing 14A Charles A. Wright et al., Federal Practice & Procedure § 3723, at 353-54 (1985).) The Court must consider the complainant's well-pleaded allegations as true and view the complaint in the light most favorable to the non-moving party. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) and *Davis v. Prentiss Prop. Ltd.*, 66 F. Supp. 2d 1112, 1113-1114 (9th

3

Cir. 1999). Taking all of the allegations in Plaintiffs' Complaint for true, Plaintiff has overwhelmingly demonstrated a "possibility of a right to relief."

## C.   REMOVAL IS IMPROPER BECAUSE DEFENDANT MCKESSON IS SUBJECT TO STRICT LIABILITY UNDER CALIFORNIA LAW.

As a distributor, McKesson may be held strictly liable for failure to provide a warning regarding a known or reasonably knowable danger from a pharmaceutical product. Contrary to Merck's claim, the doctrine of "learned intermediary"—which exempts physicians and pharmacies from strict liability—does not apply to a pharmaceutical distributor.

### 1.   Strict liability applies to failure to warn against pharmaceutical product dangers.

Plaintiff claims failure to warn against Defendant McKesson and its co-defendants. California law recognizes two types of product defects for a claim of strict liability against pharmaceutical products: (1) failure to warn; and (2) manufacturing defects. *Brown v. Superior Court of the City and County of San Francisco*, 44 Cal. 3d 1049, 1057 (1988). Additionally, California is one of the many states that follows Restatement 2d of Torts section 402A (hereinafter "Restatement") and the comments thereto concerning strict liability for the sale of defective products. Comments "k" and "j" to the Restatement specifically address strict liability for failure to warn:

> *k. Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for

4

> sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. **The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given**, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement, Torts 2d, §402A (emphasis added). Comment k itself qualifies the absence of strict liability in tort on the requirement that sellers of drugs provide appropriate warnings.

Comment j to the Restatement further reinforces the qualification that the seller must provide appropriate warnings based on what is known or reasonably knowable about the pharmaceutical product's danger:

> *j. Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, **the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.** Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required.

Restatement, Torts 2d, §402A (emphasis added). California courts "either expressly or by implication, have to date required knowledge, actual or constructive, of potential risk or danger before imposing strict liability for a failure to warn." *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 991 (1991). "Constructive knowledge" means that which is "reasonably scientifically knowable." *Carlin v. Superior Court of Sutter County*, 13 Cal. 4th 1104 (1996). This requirement applies to pharmaceutical products. *Id.* at 1108.

After Vioxx was approved and made available to the public, Merck sponsored the VIGOR study to obtain information regarding clinically meaningful gastrointestinal events and to develop a

large controlled database for overall safety assessment[1].  At the conclusion of the VIGOR study,

the results were reported in March of 2000 showing serious cardiovascular events occurred in 101

patients who took Vioxx, compared to 46 patients who took naproxen (a type of over-the-counter

NSAID).  Additionally, myocardial infarctions ("MI") occurred in 20 patients in the Vioxx

treatment group as opposed to only 4 patients in 20 patients in the naproxen treatment group.  Thus,

the dangers posed by Vioxx were reasonably scientifically knowable by McKesson.

Plaintiff does not make claims for design defect or manufacturing defect.  The sole defect

claimed against the pharmacy is a failure to warn defect, which is consistent with the Restatement

and with *Brown v. Superior Court, supra.*

### 2.        Distributors are subject to strict liability.

Defendant McKesson is subject to strict liability for its role in marketing, distributing, and

selling the pharmaceutical product Vioxx.  It is settled law in California that the doctrine of strict

liability applies to manufacturers, distributors, and retailers alike.  *Jimenez v. Superior Court of San

Diego County,* 29 Cal. 4th 473, 476 (2002); *Cronin v. J.B.E. Olson Corp.,* 8 Cal. 3d 121, 130

(1972); *Canifax v. Hercules Powder Co.,* 237 Cal. App. 2d 44, 52 (1965).  Since the establishment

of strict liability for defective products in *Greenman v. Yuba Power Products, Inc.,* 59 Cal. 2d 57

(1963), the Supreme Court of California has applied strict liability to all parties in the chain of

distribution.  The Court reasoned that:

> Retailers like manufacturers are engaged in the business of distributing goods to the
> public. They are an integral part of the overall producing and marketing enterprise
> that should bear the cost of injuries resulting from defective products. . . . Strict
> liability on the manufacturer and the retailer alike affords maximum protection to the
> injured plaintiff and works no injustice to the defendants, for they can adjust the
> costs of such protection between them in the course of their continuing business
> relationship.

*Vandermark v. Ford Motor Co.,* 61 Cal. 2d 256, 262-63 (1964). The Court

---

[1] "VIGOR" stands for Vioxx Gastrointestinal Outcomes Research.

6

has extended this reasoning to apply to distributors. *Barth v. B.F. Goodrich Tire Co.*, 265 Cal. App. 2d 228, 252 (1968). As a distributor, McKesson may be held strictly liable.

### 3. Distributors are not exempt from strict liability under the "learned intermediary" doctrine.

California has carved out a narrow exception to the rule that all parties in the chain of distribution are strictly liable for product defects. Under the doctrine of "learned intermediary," both physicians and pharmacists are exempted from strict liability. *Fogo v. Cutter Laboratories, Inc.*, 68 Cal. App. 3d 744, 754-55 (1977); *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985); *San Diego Hospital Assn. v. Superior Court of San Diego County*, 30 Cal. App. 4th 8, 14-15 (1994); *Cryolife, Inc. v. Superior Court of Santa Cruz County*, 110 Cal. App. 4th 1145, 1155 (2003). The Supreme Court of California has held that "a pharmacist provides a health service" and "a pharmacy is immune from strict liability." *Murphy*, 40 Cal. 3d at 679, 680. The Court in *Murphy* found that the pharmacist, like the physician, is primarily a service provider. The Court reasoned that the pharmacist "is providing a service to the doctor and acting as an extension of the doctor in the same sense as a technician who takes an X-ray or analyzes a blood sample on a doctor's order." *Id.* at 679.

Although the learned intermediary doctrine has been extended to *pharmacies*, it has *not* been extended to pharmaceutical *distributors*. *Id.* at 680-81. Thus, because Defendant McKesson is not a healthcare provider, it is not exempt from strict liability. Defendant Merck's claims that a pharmaceutical distributor is immune from strict liability under the learned intermediary doctrine are based on three unpublished court orders and two cases, which Merck misconstrues. Merck cites two orders denying plaintiffs' motion for remand against Warner-Lambert Co. Neither of these two court orders makes any reference—either express or implied—to the learned intermediary doctrine. Moreover, the court orders do not specify whether the claims against the pharmaceutical distributors were based on a failure to warn or on another product defect. Furthermore, both cases cited by Merck were issued by Judge Manuel L. Real, a United States District Judge. No

7

California court has ruled in agreement with Merck's argument that the learned intermediary doctrine extends to pharmaceutical distributors, making them exempt from claims of strict liability.

Defendant Merck also cites an unpublished out of state court order analyzing Minnesota law from *In re Baycol Products Litigation*. In *Baycol*, two plaintiffs were fraudulently joined to an action involving hundreds of plaintiffs from various states. This is distinguishable from the present case for two reasons. First, in the present case there is one plaintiff and one plaintiff's decedent. Second, the party alleged to be fraudulently joined is not an unrelated individual with a similar injury but is instead a direct party in the chain of distribution for the drug at the center of this litigation.

Merck also cites two cases which hold that pharmacies and pharmacists are exempt from strict liability under the learned intermediary doctrine. One of those cases, *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d, is discussed above. This case does not even mention pharmaceutical distributors—let alone extend the learned intermediary doctrine to them. The same is true in the second case cited by Merck, *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P. 2d 922 (Utah 2003). Thus, there is no established law exempting pharmaceutical distributors from strict liability. Instead, it is settled law that the doctrine of strict liability *applies* to distributors.

Moreover, eight Vioxx cases containing claims for strict liability-failure to warn were brought against Defendants Merck and McKesson in San Francisco Superior Court as early as February 22, 2002. *See, e.g., Hensel v. Merck & Co.*, Case No. CGC-02-404819 (S.C.Cal. February 22, 2002) (a true and correct copy of the caption is attached hereto as Exhibit "A"). Although McKesson apparently settled each of these cases, all eight still remain pending in California state courts against Merck. Again, it is important to note that no California court has ruled in agreement with Merck's argument that the learned intermediary doctrine extends to pharmaceutical distributors, making them exempt from claims of strict liability. In fact, The Marin Superior Court recently issued a judgment against a medical device manufacturer and distributor for damages caused by the device wherein claims of negligence and strict liability were present in the

8

complaint. *Hatch v. Bionx Implants, Inc.*, Case No. 012504 (S.C.Cal. January 2005) (a true and correct copy is attached hereto as Exhibit "B"). This case was tried by Hersh & Hersh, and the Plaintiff successfully prevailed against a medical device distributor. Under California law there is no distinguishing between medical devices and pharmaceutical products for purposes of the application of the learned intermediary doctrine.

　　　　For the foregoing reasons, Defendant McKesson is subject to strict liability under California law.

DATED:  October 21, 2005　　　　HERSH & HERSH
　　　　　　　　　　　　　　　A Professional Corporation

　　　　　　　　　　　　　　　By_____
　　　　　　　　　　　　　　　NANCY HERSH, ESQ., State Bar No. 49091
　　　　　　　　　　　　　　　MARK E. BURTON, JR., ESQ., State Bar No. 178400
　　　　　　　　　　　　　　　RACHEL ABRAMS, ESQ., State Bar No. 209316
　　　　　　　　　　　　　　　HERSH & HERSH
　　　　　　　　　　　　　　　A Professional Corporation
　　　　　　　　　　　　　　　601 Van Ness Avenue, Suite 2080
　　　　　　　　　　　　　　　San Francisco, CA  94102-6396
　　　　　　　　　　　　　　　(415) 441-5544

　　　　　　　　　　　　　　　Attorneys for Plaintiff

Robert E. Cartwright, Jr., Esq., SBN: 104284
Kent L. Klaudt, Esq., SBN: 183903
Christopher C. Lamerdin, Esq. SBN: 162033
THE CARTWRIGHT LAW FIRM, INC.
222 Front Street, Fifth Floor
San Francisco, CA  94111
(415) 433-0444
Fax: (415) 433-0449

GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, CA  90017
(213) 977-0211
THOMAS V. GIRARDI - SBN: 36603
JAMES G. O'CALLAHAN, SBN: 126975
JENNIFER M. INGRAM, SBN: 1983336

OWEN, PATTERSON, & OWEN
23822 West Valencia Boulevard, Suite 201
Valencia, California 91355
(661) 799-3899
GREGORY J. OWEN , SBN: 102845

Attorneys For Plaintiffs

NO SUMMONS ISSUED

**FILED**
San Francisco County Superior Court
FEB 2 1 2002
GORDON PARK-LI, Clerk
BY:_____
Deputy Clerk

STATUS CONFERENCE SET
PLAN I  JUL 2 6 2002 -9 00 AM

SUPERIOR COURT (UNLIMITED JURISDICTION) OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ALVIN L. HENSEL, Individually and as Successor-in-Interest to, Marlene Hensel, decedent; Does 1 through 10, Plaintiff(s), <br><br> vs. <br><br> MERCK & COMPANY, INC., a corporation; McKESSON HBOC, a corporation: NORTH LAKE MEDICAL PHARMACY, a business entity; DOE PHARMACEUTICAL COMPANIES | CASE NO.  **CGC -02-404819** <br><br> **COMPLAINT FOR DAMAGES** <br> **(Wrongful Death)** <br><br> 1.  Strict Liability <br> 2.  Product Liability <br> 3.  Negligence <br> 4.  Negligence Per Se <br> 5.  Breach of Implied Warranty <br> 6.  Breach of Express Warranty <br> 7.  Deceit by Concealment |

VIOXX FORM COMPLAINT (HENSEL)(WD).doc                    1

COMPLAINT FOR DAMAGES

**EXHIBIT** "A"

| | |
|---|---|
| 11 through 60, inclusive; DOE PHARMACIES 61 through 100, inclusive; and DOES 101 through 200, inclusive. | ) ) ) ) |

8. Negligent Misrepresentation
9. Violation of <u>Business and Professions Code</u> §17200
10. Violation of <u>Business and Professions Code</u> §17500
11. Loss of Consortium
12. Survival Action
13. Punitive Damages

**Defendant(s).**
AND
TRISTAN MICHAEL HENSEL and
TYLER MATTHEW HENSEL
Nominal Defendants

**DEMAND FOR A JURY TRIAL**

---

Come now Plaintiffs ALVIN HENSEL , DOES 1 TROUGH 10, by and through their attorneys The Cartwright Law Firm; Girardi Keese; and Owen Patterson & Owen; and allege as follows:

## INTRODUCTION

This case involves the drug Vioxx which was manufactured, sold, distributed and promoted by defendants to capitalize on the need of the public to have a pain reliever, similar to Ibuprofen, without any of the known Ibuprofen side effects.  Defendants misrepresented that Vioxx was a safe and effective way to relieve osteoarthritis, management of acute pain in adults, and treatment of menstrual pain, when in fact the drug causes serious medical problems such as serious cardiovascular events and death.

## GENERAL ALLEGATIONS

1.  This is an action for wrongful death and damages brought on behalf of the Plaintiffs whose decedents were prescribed and supplied with, received, and who have taken and ingested and consumed Vioxx as researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendant Merck & Company, Inc., Defendant McKesson HBOC, Defendant North Lake Medical Pharmacy, Defendant Doe Pharmaceutical Companies 11 through 60, Defendant Pharmacies 61

VIOXX FORM COMPLAINT (HENSEL)(WD).doc                    2

NANCY HERSH, ESQ. State Bar No. 49091
CHARLES C. KELLY, II, ESQ., State Bar No. 122253
BETHANY CARACUZZO, ESQ., State Bar No. 190687
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue
2080 Opera Plaza
San Francisco, CA  94102-6388
(415) 441-5544

Attorneys for Plaintiff

**FILED**

JAN 18 2005

JOHN P. MONTGOMERY,
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
BY: R. SMITH, DEPUTY

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF MARIN

| | |
|---|---|
| JAMES HATCH, | ) CASE NUMBER  012504 |
| Plaintiff, | ) **AMENDED** |
| | ) **JUDGMENT AFTER JURY TRIAL** |
| vs. | ) |
| BIONX IMPLANTS, INC., et al., | ) |
| Defendants. | ) |

This matter came on for trial on November 2, 2004 in Department E of the above-entitled Court, the Honorable Lynn O. Taylor, Judge Presiding.   Charles C. Kelly, II of Hersh & Hersh, appearing for plaintiff JAMES HATCH and James M. O'Brien appearing for defendants BIONX IMPLANTS, INC. and OSTEOPACIFIC, INC.

A jury of 12 persons was regularly impaneled and sworn to try the action.  Witnesses were sworn and examined, after hearing the evidence, the arguments of counsel and instructions of the Court, the jury retired to consider its

- 1 -

EXHIBIT "B"

HERSH AND HERSH
A Professional Corporation

verdict, and subsequently returned into Court, and being called answered their names and duly rendered their verdict in writing on December 15, 2004 which verdict is as follow:

We, the jury in the above-entitled action, find the following special verdict on the questions submitted to us:

1.   Did the meniscus arrows have potential risks of fracture and migration that were known or knowable through the use of scientific knowledge available at the time of manufacture and sale?

Yes __X__    No _____

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.   Did the potential risks present a substantial danger to users of the meniscus arrows?

Yes __X__    No _____

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

- 2 -

AMENDED JUDGMENT AFTER JURY TRIAL

3.   Would   an   ordinary   prescribing   physician   have recognized the potential risks?

                    Yes _____        No ___X___

If your answer to question 3 is no, then answer question 4.   If you answered yes, stop here, no further questions, and have the presiding juror sign and date this form.

4.   Did defendants fail to sufficiently warn of the potential risks?

                    Yes ___X___        No _____

If your answer to question 4 is yes, then answer question 5.   If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.   Were the meniscus arrows used in a way that was reasonably foreseeable to defendants?

                    Yes ___X___        No _____

If your answer to question 5 is yes, then answer question 6.   If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

AMENDED JUDGMENT AFTER JURY TRIAL

6. Was the lack of sufficient warnings a substantial factor in causing harm to James Hatch?

Yes __X__    No _____

If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

7. Prior to May 23, 2000, did James Hatch know, suspect, or have enough information to cause a reasonable person to suspect that he had been harmed by someone's wrongdoing.

Yes _____    No __X__

If your answer to question 7 is no, then answer question 8. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

8. What are James Hatch's damages?

a. Past economic loss, including lost earnings, medical expenses:

$243,000.00

b. Future economic loss, including lost earnings, lost earning capacity, medical expenses:

$880,000.00

- 4 -

AMENDED JUDGMENT AFTER JURY TRIAL

c.   Past noneconomic loss, including physical pain, mental suffering:

$437,500.00

d.   Future noneconomic loss, including physical pain, mental suffering:

$254,166.00

**TOTAL $1,814,666.00**

9.   Was James Hatch negligent?

Yes _____   No __X__

If you answered yes to question 9, then answer question 10.  If you answered no, stop here, and have the presiding juror sign and date this form.

Signed: ___/s/ THOMAS CONNELLY_____
              Presiding Juror

Dated: December 15, 2004

[When signed/After all verdict forms have been signed], this verdict form must be delivered to the clerk.]

Based on the jury trial in this matter:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

That plaintiff JAMES HATCH has judgment against Defendants BIONX IMPLANTS, INC. and OSTEOPACIFIC, INC. jointly and severally in the amount of $1,814,666.00 plus costs to be determined plus interest at the legal rate against Defendant BIONX IMPLAINTS, INC. from February 3, 2004, the date plaintiff served his offer to compromise on defendant BIONX IMPLAINT,

- 5 -

AMENDED JUDGMENT AFTER JURY TRIAL

INC. pursuant to CCP section 998, a copy of which is attached and incorporated herein as Exhibit A.   As against defendant OSTEOPACIFIC, INC., interest at the legal rate will be calculated from the date of the verdict.

Dated:  **JAN 1 8 2005**

LYNN O. TAYLOR

---

LYNN O. TAYLOR
JUDGE OF THE SUPERIOR COURT

AMENDED JUDGMENT AFTER JURY TRIAL

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2005, I served a copy of the foregoing paper by U.S.

Mail, postage prepaid, on:

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue, Suite 100
New Orleans, LA 70113
(504) 581-4892
fax: (504) 561-6024
Plaintiff's Liaison Counsel

Phillip Wittmann, Esq.
Stone, Pigman, Walther, Wittman, LLC
546 Carondelet Street
New Orleans, LA 70130
(504) 581-3200
fax: (504) 581-3351

_____
MARK E. BURTON, II

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>     PRODUCTS LIABILITY LITIGATION | ) ) ) MDL NO. 1657 |
| This document relates to: | ) SECTION L |
| VICK KARGODORIAN, | ) ) |
|      Plaintiff, | ) JUDGE FALLON |
| vs. | ) MAGISTRATE JUDGE KNOWLES ) |
| MERCK & COMPANY, INC., McKESSON<br>CORPORATION and DOES ONE through<br>TWENTY, inclusive, and TSOLAG<br>KARGODORIAN and VRAM KARGODORIAN,<br>nominal defendants, | ) ) ) ) ) |
|      Defendants. | ) ) |
| Civil Action No. C05-00937 | ) ) |

**PLAINTIFF VICK KARGODORIAN'S AMENDED
NOTICE OF HEARING TO REMAND CASE TO
CALIFORNIA SUPERIOR COURT
[28 U.S.C. §1441(a)(b)]**

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 23, 2005, at the hour of 9:00 a.m.,

or as soon thereafter as the matter can be heard before the Honorable Eldon E. Fallon, Plaintiff

VICK KARGODORIAN, will and hereby does move the Court for an order remanding this case to

1

the Superior Court in and for the City and County of San Francisco, State of California, from which it was removed.

The motion is based on this Notice, the Motion to Remand, all papers filed in relation to Plaintiff's Motion to Remand, filed concurrently herewith, the complete files and records in this action, matters that may be judicially noticed, and any oral or documentary evidence that may be presented at the hearing on this matter.

DATED: October 21, 2005.          HERSH & HERSH
                                  A Professional Corporation


                                  By_____
                                  NANCY HERSH, ESQ., State Bar No. 49091
                                  MARK E. BURTON, JR., ESQ., State Bar No. 178400
                                  RACHEL ABRAMS, ESQ., State Bar No. 209316
                                  HERSH & HERSH
                                  A Professional Corporation
                                  601 Van Ness Avenue, Suite 2080
                                  San Francisco, CA  94102-6396
                                  (415) 441-5544

                                  Attorneys for Plaintiff

2

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2005, I served a copy of the foregoing paper by U.S.

Mail, postage prepaid, on:

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue, Suite 100
New Orleans, LA 70113
(504) 581-4892
fax: (504) 561-6024
Plaintiff's Liaison Counsel

Phillip Wittmann, Esq.
Stone, Pigman, Walther, Wittman, LLC
546 Carondelet Street
New Orleans, LA 70130
(504) 581-3200
fax: (504) 581-3351

_____
MARK E. BURTON, II