UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | VIOXX | : MDL NO. 1657 |
| | PRODUCTS LIABILITY LITIGATION | : SECTION: L |
| | | : |
| | | : JUDGE FALLON |
| | | : MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO ALL CASES | | : |
| | | : |

NOTICE OF TAKING VIDEOTAPED
DEPOSITION DUCES TECUM OF DANNY VINCENT EBARB

TO:   ALL KNOWN COUNSEL OF RECORD

Pursuant to the Federal Rules of Civil Procedure, Rule 30, Plaintiffs in the above styled and numbered causes will depose the following individuals(s):

**Danny Vincent Ebarb, November 21, 2005 at 9:00 a.m.**
who lives at 933 Monrovia Street
Shreveport, Louisiana 71106

This deposition will be taken at The Law Office of Jack M. Bailey, Jr., LLC, 2790 Fairfield Avenue, Shreveport, Louisiana 71104. The deposition will be reported by a certified court reporter, and shall be recorded stenographically and on both audiotape and videotape. This deposition will continue from day to day until completed. Plaintiff intends to use documents produced by Merck including but not limited to documents or information produced in electronic format.

Statement of Deposition Procedures - The deposition shall be taken pursuant to Pre-Trial Order No. 9. The terms of such order are incorporated into this Notice. The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28.

You are further required to bring with you any and all documents listed on the attached

**Exhibit "A"**.

RESPECTFULLY SUBMITTED, this the 2nd day of November, 2005.

Respectfully submitted:

_____
**RUSS M. HERMAN, T.A. (La. Bar No. 6819)**
LEONARD A. DAVIS, La. Bar No. 14190
STEPHEN J. HERMAN, La. Bar No. 23129
HERMAN, HERMAN, KATZ AND COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax:    (504) 561-6024
**LIAISON COUNSEL FOR PLAINTIFFS STEERING COMMITTEE**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |

| | |
|---|---|
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

### PLAINTIFFS' STEERING COMMITTEE

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on defendants liaison counsel, Phillip A. Wittmann by hand delivery or electronically and upon all counsel of record electronically or by electronically being uploaded to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 8 this 2nd day of November, 2005.

_____
LEONARD A. DAVIS

# EXHIBIT "A"
## DOCUMENTS TO BE PRODUCED AT DEPOSITION SUBJECT TO SUBPOENA

1. If any requested documents are unavailable, because it was lost or destroyed by Danny V. Ebarb, Merck and/or their agents, or for any other reason, Danny V. Ebarb shall, after fully identifying document, state:

(a) When and where it was destroyed, or why it is otherwise unavailable;

(b) The name and address of each person who destroyed it;

(c) The name and address of each person who directed, approved, or knew of its destruction; and,

(d) The name and address of each person who has knowledge of such document.

2. If there is a claim of privilege with respect to any document requested, Danny V. Ebarb and Merck shall:

(a) Identify in its Answer each document for which a privilege is claimed;

(b) A description of the document;

(c) The date of the document;

(d) The names of the addressees and addressors;

(e) The identify and address of every person to whom a copy was given or communicated;

(f) The general subject matter of the document;

(g) A statement of the facts constituting the basis of any claim of privilege; and

(h) The specific basis on which the privilege is claimed.

3. If you cannot produce documents for any other reason, respond to the extent possible, stating you reasons for your inability to respond in full.

4. These Requests shall be deemed continuing, to the full extent required or permitted under the Federal Rules of Civil Procedure, so as to require supplementary production when Danny V. Ebarb obtains, access, custody, possession or control of any document not previously produced, which is responsive to any of these Requests.

5. The headings used herein are for guidance and clarity only, and should not be deemed to restrict the scope of any request.

6.  Unless otherwise set forth the relevant time is from the beginning of time until the present.

## DEFINITIONS

1.  Danny V. Ebarb, "You" an d"Your" refers to Danny Vincent Ebarb. Danny V. Ebarb.

2.  The term, "Vioxx" means a non-steroidal anti-inflammatory drugs (NSAIDs) (whether in the form of rofecoxib), is described chemically as - 4- (methylsulfonyl) phenyl1]-3-phenyl-2 (5H)- furanone, and exhibits anti-inflammatory, analgesic, and antipyretic properties.

3.  As used throughout this Request for Production of Documents, the term "document" or any similar term is used in its broadset possible sense. The term "document" shall include, but not be limited to , any original, reproduction or copy, and non-identical copy (i.e., copy with marginal notes, deletions, etc.) of any kind, and shall include written, printed, typed electronically created or stored, or other graphic matter any type, documentary material, or draft thereof, including but not limited to, any correspondence, memoranda, interoffice or intra-office or intra-office communications, notes, diaries, journals, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, e-mails, photographs, negatives, slides, dictation belts, voice tapes, telegrams, notes of telephone conversations and notes of any oral communications.

4.  FDA means the United States Food & Drug Administration, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

5.  The headings that precede the document requests are informational and are not to be deemed exclusive or limiting . Rather, Danny V. Ebarb shall reply in full to the specific substance of each and every Request.

6.  "Merck" means Merck & Company, Inc. or any of Merck's subsidiaries, affiliates, officers, agents, servants, attorneys, employees, representatives, or others acting on its behalf.

## SCHEDULE OF DOCUMENTS & OTHER ITEMS TO BE PRODUCED

1.  Produce any and all correspondence between you, your sales manager and Merck, between you and any district manager, between you and any manager, and any an all correspondence, e-mails and documents received or sent by you related in any way to Vioxx.

2.  Produce any notes, e-mails, records, or documents, pertaining to calls you made on physicians in the State of Louisiana on behalf of Merck.

3.  Produce any information or documentation pertaining to the Vioxx prescribing habits of Vioxx prescribing physicians in Louisiana and your district or sales area.

4. Produce any information you received from Merck or any other source regarding cardiovascular disease, cardiovascular risks, or cardiovascular disease and Vioxx.

5. Produce any information regarding dinner meetings, conferences, trips, CME/CDE programs, or speaker bureau presentations that you authored, organized, requested, participated, contributed, paid for, directed, attended, arraigned, or received regarding Vioxx or Pain Treatment.

6. Produce an index of all the information kept on your laptop computer or other computer you had or have access to on Vioxx.

7. Produce any employment, confidentiality, compensation, bonus, and/or separation agreements between you and Merck.

8. Produce all medical literature used by you when detailing Vioxx.

9. Produce any medical literature provided to you by the company which was not used by you in detailing Vioxx.

10. Produce any press releases sent to you by Wyeth or Merck concerning Vioxx or any other COX-2 inhibitor.

11. Produce any and all Dear Healthcare Professional, Dear Doctor, or other letters to medical personnel that were received by you regarding Vioxx.

12. Produce any adverse event or complication information you reported to your company regarding Vioxx.

13. Produce any information you received from Merck concerning side effects, warnings, complications, adverse events or precautions for Vioxx.

14. Produce any previous depositions given by you on Vioxx or other Merck products.

15. Produce your personal or custodial file on Vioxx.

16. Produce any and all promotional items and pieces used by you in detailing Vioxx.

17. Produce your personal or personnel file with Merck.

18. Produce your superior, manager and sales managers file on you.

19. Produce any document from the FACTS Database and Reporting System databases pertaining to sales calls made on prescribing physician's.

20. Produce the laptop computer used by you during the time you were detailing Vioxx.

21. Produce an electronic copy of the hard drive of the laptop computer you used when detailing Vioxx.

22. Produce electronic and hard copies of all e-mails received by you from your employer or third parties, including material received by you at company launch meetings, plan of action meetings, sales meetings, district sales meetings, meeting or managers regarding any drugs including but not limited to Vioxx, as well as any and all material related to cardiovascular disease, cardiovascular risks, heart attacks, strokes, pain management, arthritis, epidemiology, pharmacology, efficacy, safety, and appropriate detailing practices.

23. Produce copies of any and all information received by you regarding the use of your laptop computer, and the installed software, used in detailing Vioxx, including training materials.

24. Produce copies of all orders, requests, invoices, records and other documents related to the ordering, distributing, and/or otherwise providing physicians in Louisiana with samples and/or stock bottles of Vioxx.

25. Produce your complete personnel file for your time working for any Merck entities between the years 1998 and 2005.

26. Produce all materials that you received at all plan of action meetings, sales meetings, role play meetings, seminars, district meeting and meetings with your manager or similar meetings on Vioxx.

27. Produce all materials that you received on sales tactics, responding to questions from healthcare provider's; concerning role play, organized practice, with or without marketing materials at all plan of action meetings, similar type meetings, marketing, training, meetings, seminars, and/or sales meetings on Vioxx.

28. Produce all materials given you concerning Vioxx by your district or sales manager.

29. Produce all medical articles given to you concerning Vioxx, Cox(2) inhibitors, Bextra and/or Celebrex, by Merck and it's agents, servants, and employees.

30. Produce all medical articles and all material that you received concerning Vioxx, Cox(2) inhibitors, Bextra and/or Celebrex that were approved by the legal department of Merck.

31. Produce any and all documents and materials of any description that you have received concerning Vioxx, Bextra, Celebrex, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs) that were not approved by the Office of Medical Policy Division of Drug Marketing, Advertising and Communications of the FDA (DDMAC).

32. Produce all documents showing compliance on major statements concerning Vioxx, Bextra, Celebrex, and/or COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs) included all the most important risk information related to the product.

33. Produce all Vioxx "Brief Summary(s) " that you obtained concerning Vioxx, Bextra, Celebrex, and/or COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs).

34. Produce all materials that you were given concerning the risk related sections of Vioxx product labeling and/or comparing and/or contrasting Bextra, Celebrex, Vioxx, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs).

35. Produce all materials that you were given concerning effectiveness information on or comparing and/or contrasting Vioxx with or too Bextra, Celebrex, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs) including the product indications; what it is to be used for; risks, any limitation concerning prescriptions, and when and how the product should be used.

36. Produce all marketing materials, documents, and instructions that you were given to fulfill any plan of action or similar marketing program concerning Vioxx and it's competitors.

37. Produce all visuals you used to detail all healthcare providers on Vioxx.

38. Produce all detail pieces you used to detail all healthcare providers on Vioxx.

39. Produce all promotional materials you used to detail all healthcare providers.

40. Produce any materials that you used whether medical articles, visuals, detail pieces, promotional materials, or any other documents or objects of any description which you used to detail or meet with any healthcare providers that were not given to you by Merck or it's agents, servants or employees.

41. Produce all materials, documents and objects that were shown to healthcare providers but not distributed or left behind concerning Vioxx or it's competitor drugs.

42. Produce all materials, objects, and documents that you received to use when detailing healthcare providers that were marked "educational purposes only not to be distributed" (or similar designation) on Vioxx and/or it's competitor drugs.

43. Produce all documents, objects, visuals, detail pieces, show pieces or promotional materials in which Vioxx was compared or contrasted to other drugs.

44. Produce all visuals, detail pieces, promotional materials, show pieces, documents or leave behind pieces, that you were supplied concerning Vioxx or it's competitor drugs.

45. Produce all visuals that you used that concerned Vioxx, Bextra, Celebrex, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs).

46. Produce all of your "leave behind" materials that you were supplied on Vioxx.

47. Produce a list of all healthcare providers and doctors in your sales territory or district that you called on from 1998 to 2005.

48. Produce a list of all healthcare providers and doctors in your territory that you have called on or detailed concerning Vioxx from May 1999 to date.

49. Produce all "excerpts" from publications, studies, or periodicals that you used as a visual, detail piece, promotional material, leave behind, or that you showed to any healthcare provider concerning Vioxx or it's competitor drugs.

50. Produce all reference articles, medical articles, periodical articles and excerpts that were referenced in any plan of action or similar meeting concerning Vioxx or it's competitor drugs.

51. Produce all e-mails, cover letters, and transmittal documents on all materials, documents and objects that you received concerning Vioxx or it's competitor drugs from May 1999 to date.

52. Produce all of the documents and articles which were received by you that were "approved for distribution" to healthcare providers about Vioxx from May 1999 to September 2004 from Merck.

53. Produce all of the documents and articles which were received or obtained by you that were not approved for distribution to healthcare providers about Vioxx from May 1999 to September 2004.

54. Produce all of the competitor package inserts which you used to show, compare, and/or contrast; including detail; visual; detail pieces; or promotional pieces concerning Vioxx, Bextra, Celebrex, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs) from May 1999 to date.

55. Produce comparison statistics that you were supplied or had access to for detailing Vioxx or for educational purposes from May 1999 to date.

56. Produce any visuals, detail pieces or promotional materials that had insert to insert comparisons (or similar type materials) of Vioxx, Bextra, Celebrex, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs).

57. Produce all "medical request forms", medical services department forms and/or responses or similar documents from all physicians that you detailed from May 1999 to date on Vioxx.

58. Produce all of your "medical request forms" from all physicians with the medical request forms, in order, as numbered subsequently, from May 1999 to date.

59. Produce all responses from Merck, Merck Medical Services Department, and its agents, servants and employees to all "medical requests forms" or similar documents from all healthcare providers and/or physicians from May 1999 to 2004 on Vioxx or request for information from any healthcare provider you called on about Vioxx.

60. Produce all contents of your detail bag from May 1999 to date.

61. Identify and name your contact person at the Medical Affairs Department and/or medical services department of Merck(or similar designation) and the individuals at Merck that answered medical request forms or similar inquiries from physicians from May 1999 to date.

62. Produce of all medical affairs, medical services department forms and/or responses, department packets, reference works, articles, letters and/or documents used to answer "medical request forms" or similar inquiries from physicians that you detailed (all of which are copied to you by Merck) from May 1999 to date.

63. Produce the phone records showing date, time, length of call, and physician talked to of all phone calls to doctors in your district from the Medical Affairs Department and/or medical services department at Merck from May 1999 to date.

64. Identify the scientists, sales person, manager or physician's at Merck that responded either in writing or by telephone call to any "medical request form" or similar inquiry from any healthcare provider that you detailed from May 1999 to date.

65. Produce the telephone and other records, records of the scientists, sales person, managers or physician's at Merck that responded either in writing or by telephone call to any medical requests or similar inquiry from any healthcare provider that you detailed from May 1999 to date that were placed at your request or by request of the physician without using a "medical request form".

66. Produce everything that you showed healthcare providers or physicians concerning Vioxx, Bextra, Celebrex, COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs) from May 1999 to date, but did not leave or give to the physicians.

67. Produce all "peer to peer" materials and records given to healthcare providers by Merck and/or you that you called on from May 1999 to date, for all healthcare providers detailed concerning Vioxx.

68. Produce all documents showing permission and/or approval from the Merck Legal Department to use all materials or objects that you used detailing healthcare providers from May 1999 to date.

69. Produce all Merck instructions, detailing manuals, plan of action materials, seminar materials, sales manuals, marketing manuals, instruction materials, indoctrination materials, orientation materials, role playing and/or any documents, materials or objects of any descriptions that was used, given or presented to you to train you as a detail or sales representative for Merck and/or on Vioxx.

70. Produce any code of conduct or code of ethics supplied you from Merck from the time of your employment to date.

71. Produce all any documents or objects that were used to instruct you on how to present or detail Vioxx.

72. Produce all materials that were used or you were trained with to answer specific criticism or questions, or objections from healthcare providers or physicians concerning with Vioxx from May 1999 to date.

73. Produce records of any honorarium, speaker gratuity or fee, grand rounds, payments, meeting payment, lunch meeting, dinner meeting, concerning any healthcare provider or physician that you participated in or arranged for from May 1999 to date concerning getting a physician to speak, present, speak for, work with residents, make grand rounds, attend dinners, speak at dinners or at meetings concerning Vioxx including costs, payments, and fee documents.

74. Produce all of the materials that were supplied to you or that you obtained from May 1999 to the present concerning sales of Vioxx, by prescription, by healthcare provider, written by each physician and filled by each pharmacy in your district.

75. Produce all of the information, including spreadsheet information, concerning prescriptions "captured by drug information companies" from all the pharmacies in your district on Vioxx.

76. Produce the information and spreadsheets showing the number of Vioxx prescriptions written by each physician in your territory from May 1999 to date.

77. Produce all the spreadsheets either done by Merck or it's agents, servants, employees or you to rank prescribers of Vioxx and it's competitor drugs in the State of Louisiana and/or your district from May 1999 to withdrawal of Vioxx from the market.

78. Produce the records to show which physicians wrote the most prescriptions for Vioxx in your district and among the physicians which you called on from May 1999 to date.

79. Produce any materials that you have had possession of at anytime concerning Vioxx that were not approved by DDMAC.

80. Produce all documents concerning medication guidance for COX-2 inhibitors and/or non-steroidal anti-inflammatory drugs (NSAIDs) that you were given in any form between May 1999 to date.

81. Produce all documents, letters, e-mails, or materials that were received by you from Merck or it's agents, servants and employees concerning warning letters from the FDA about Vioxx.

82. Produce all documents, communications, or e-mails you received from Merck concerning Merck's promotional activities and materials on Vioxx that concluded that they were false, lacking in fair balance and otherwise misleading in violation of the Federal Food Drug and Cosmetic Act.

83. Produce all responses, explanations, and documents that you received from Merck and/or it's agents, servants, and employees concerning such findings by the FDA or such warning letters.

84. Produce all documents, communications or e-mails in which Merck or it's agents, servants, and employees sent to you any information meant to address, explain, or instruct on what to do when calling on healthcare providers concerning the FDA finding that Merck & Company had engaged in a promotional campaign for Vioxx that minimized the potentially adverse cardiovascular findings and risk that were observed in studies.

85. Produce all materials, documents, and e-mails of any description, no matter how obtained by you, concerning how you were to answer questions or inquiries from healthcare providers or physicians concerning the FDA, Vioxx, warning letters, the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, other studies and/or any questions about Vioxx.

86. Produce all materials, documents, and e-mails of any description no matter how obtained by you, concerning how you were to answer questions or inquiries from healthcare providers or physicians concerning the increase in myocardial infarction in patients on Vioxx compared to patients on other non-steroidal anti-inflammatory drugs (NSAIDs) and/or other COX-2 inhibitors.

87. Produce any and all materials, documents, and e-mails in which Merck or it's agents, servants, and employees sent any information meant to address, explain, or instruct on what to do when calling on healthcare providers concerning the possibility that Vioxx had Pro-thrombotic properties and the promotional campaign for Vioxx that minimized the potentially adverse cardiovascular findings that were observed in studies.

88. Produce all materials, documents, e-mails in which Merck or it's agents, servants, and employees sent any information meant to address, explain, or instruct on what to do when calling on healthcare providers concerning the minimizing of Vioxx-coumadin (warfarin) drug interaction.

89. Produce all materials, documents, e-mails in which Merck or it's agents, servants, and employees sent any information meant to address, explain, or instruct on what to do when calling on healthcare providers concerning the omitting of important drug risk information concerning Vioxx in the a promotional campaign for Vioxx that minimized the potentially adverse cardiovascular findings that were observed in studies.

90. Produce all materials, documents, and e-mails in which Merck or it's agents, servants, and employees sent any information meant to address, explain, or instruct on what to do when calling on healthcare providers concerning the unsubstantiated superiority claims against other non-steroidal anti-inflammatory drugs (NSAIDs) in a promotional campaign for Vioxx that minimized the potentially adverse cardiovascular finding that were observed in studies.

91. Produce all materials documents, e-mails in which Merck or it's agents, servants, and employees sent any information meant to address, explain, or instruct on what to do when calling on healthcare providers concerning the promoting of Vioxx.

92. Produce all promotional materials for Vioxx that the FDA objected to as misrepresenting Vioxx's safety profile.

93. Produce all materials that you received or had access to concerning six (6) promotional audio conferences presented on behalf of Merck by Peter Holt, M.D. These audio conferences were held on June 8, 2000, June 13, 2000, June16, 2003 and June 21, 2000 and were moderated by Merck employees.

94. Produce all materials that you received or had access to answer inquiries of whether or not COX-2 inhibitors, including Vioxx, had an overall safety profile that was superior to non-steroidal anti-inflammatory drugs (NSAIDs).

95. Produce all documents and marking materials you received or had access to that suggested that Vioxx was safer or had fewer side effects, than non-steroidal anti-inflammatory drugs (NSAIDs).

96. Produce all documents or communications when or if you were instructed by Merck to bring your promotional activities in line with FDA requests.

97. Produce any marketing literature that was used to correct any false impression concerning Vioxx that healthcare providers had.

98. Produce all documents, letters or other communications that you received that originated with the Division of Drug Marketing, Advertising and Communications (DDMAC) of the FDA concerning Vioxx.

99. Produce all documents that you received concerning changed labeling, labeling changes, information about the increased risk of cardiovascular events with the use of Vioxx, and Merck's response to labeling requests from the FDA on Vioxx.

100. Produce all documents and e-mails or any information that you received at any time that Vioxx reduced production of prostacyclin.

101. Produce all information and documents of any description that you received from any source concerning Vioxx and cerebral vascular accidents, congestive heart failure, deep venous thrombosis, myocardial infarction and/or pulmonary embolism.

102. Produce all materials that you ever received, obtained, or had access to that Vioxx had a favorable cardiovascular safety profile.

103. Produce all materials that you received from Merck on how to respond to physician inquiries concerning Vioxx's cardiovascular safety profile or FDA comments on Vioxx's cardiovascular safety profile.

104. Produce all materials that you received from Merck's promoting Vioxx for any use.

105. Produce all materials that you received promoting Vioxx for "off label uses".

106. Produce all materials that suggested that Vioxx was safe and effective for prevention of cancer, Alzheimer, and gout.

107. Produce all materials which you received from Merck, on how to respond to healthcare providers or physicians concerns about contra-indications of Vioxx for individuals with known cardiac risk factors.

108. Produce all company training documents and material which listed potential questions from physicians about Vioxx, and/or how to respond to any questions about Vioxx from any healthcare provider.

109. Produce your managers name, address, telephone number from 1998 to date.

110. Produce a list of all healthcare provider's your manager called on or saw from 1998 to date in your district.

111. Produce any document used by you to warn the healthcare provider's/physician's you detailed of Vioxx's dangerous side effects or risks.

112. Produce any information you were given or supplied that has any tendency to show that the healthcare provider's/physician's you called on or detailed were given substantially the same knowledge of the risks of Vioxx that Merck had.

113. Produce all materials that have any tendency to show that you gave the physician's you detailed or called on full, complete, accurate information about the risks of Vioxx.

114. Produce any information that tends to prove that Merck complied with the FDA advertising, labeling, and warning requirements when you were detailing healthcare providers or

physician's on Vioxx and that you were able to satisfy Merck's duty to warn healthcare providers and physician's about the potentially harmful side effects and risks of Vioxx.

115. Produce a copy of all consumer or direct consumer advertising materials concerning Vioxx that you were ever in possession of.

116. Produce any materials that you were ever in possession of or have access to that has any tendency to show that you warned all of the healthcare providers and physician's that you detailed or called on of the adverse reactions and/or potential hazard's and/or risk of Vioxx as soon as Merck knew.

117. Produce any materials that you were ever in possession of or had access to that has any tendency to show that you gave the healthcare providers and physicians's that you detailed or called on sufficient and adequate information for the physician's from the information supplied from Merck to weigh the potential benefit against the potential risk and dangers in deciding whether to recommend or prescribe Vioxx to a patient.

118. Produce a copy of all Merck advertisements and promotional advertisements direct to consumers.

119. Produce all Merck warnings to healthcare providers; physicians and/or consumers of the risks or potential side effects of Vioxx.

120. Produce all Merck warnings to healthcare providers, physician's and/or consumers that adequately indicated the risk or danger of prescribing Vioxx.

121. Produce all Merck information and warnings meant to communicate the extent and seriousness of the harm that could result from use of Vioxx.

122. Produce all Merck documents that have a tendency to indicate that you and Merck conveyed the nature of the dangers involved with the prescription and use of Vioxx to healthcare providers.

123. Produce all materials which you were ever in possession of or had access to in which Merck or anyone on it's behalf denied a causal relation between Vioxx and cerebral vascular accidents, congestive heart failure, deep venous thrombosis, myocardial infarction and/or pulmonary embolism.

124. Produce all marketing materials and advertising in which Merck, it's legal department and/or you now realize resulted in the dissemination of any false or misleading advertisement, detailing pieces, promotional pieces, show pieces, documents, or leave behind pieces, concerning Vioxx.

125. From the date of the introduction of Vioxx to the date it was taken off the market, produce a copy of all materials by years 1998, 1999, 2000, 2001, 2002, 2003, 2004, that Merck or you

contends justify the marketing, the use, and/or prescribing of Vioxx not withstanding the risk of Vioxx.

126. From the date of the introduction of Vioxx to the date it was taken off the market, produce all materials by years 1998, 1999, 2000, 2001, 2002, 2003, 2004, that Merck and/or you gave to all the physician's that you detailed or called on showing the medically recognizable risks of prescribing of Vioxx.

127. From the date of the introduction of Vioxx to the date it was taken off the market, produce all materials by years 1998, 1999, 2000, 2001, 2002, 2003, 2004, that Merck and/or you provided healthcare providers and physician's adequate information to decide what risks of Vioxx were relevant to each particular type patient.

128. Produce all information that was given to you by Merck at any time about the side effects, contraindications, risks, warnings, drug interactions, appropriateness for prescription, and/or appropriateness for each type of patient of the drug Vioxx.

129. Copies of any and all final press releases or other corporate, promotional, investor, or public service announcements issued or made by You and/or by Merck relating or in any way pertaining to Vioxx.

130. All Vioxx marketing plans and/or documents relating or pertaining to the Vioxx marketing plan (or plans).

131. Any and all documents that constitute, evidence, refer to, discuss, or reflect any focus group, consumer survey, study, report, poll, or other market research or analysis conducted in connection with the advertising, promotion, packaging, labeling, or marketing of Vioxx.

132. All documents relating to referring to, or otherwise evidencing the brand strategy for Vioxx.

133. All documents that evidence, reflect or relate to any marketing analysis or surveys that compare Vioxx to any other prescription or over-the-counter pharmaceutical product.

134. All documents provided to retailers or distributors concerning or constituting the advertising, promotion, marketing, or sale of Vioxx.

135. All documents provided to health insurers, managed care companies, pharmacy benefits managers; hospitals, pharmacies, physicians or medical providers concerning or constituting the advertising, promotion, marketing, or sale of Vioxx.

136. Any and all documents evidencing, reflecting or relating to any complaints about Vioxx, including complaints regarding the efficacy, safety, risks, or benefits or Vioxx.

137. Identify all healthcare providers identified as "opinion leaders" in you're district.

138.   Produce electronic copies of all documents requested above if available now or in the past in any way in electronic form. Electronic versions should be provided in the same electronic form in which they were originally sent, received, and/or used by you.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF _____

V.

In Re: Vioxx Products Liability Litigation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] MDL No. 1657

Case Pending in the
Eastern District of
Louisiana at New Orleans

TO: Danny Vincent Ebarb
933 Monrovia Street
Shreveport, Louisiana 71106

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Law Office of Jack M. Bailey, Jr., 2790 Fairfield Avenue, Shreveport, Louisiana 71104 | Nov. 21st, 2005, 9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects place, date, and time specified below (list documents or objects):

| | |
|---|---|
| Law Office of Jack M. Bailey, Jr. 2790 Fairfield Avenue Shreveport, Louisiana 71104  *(See Exhibit "A" Attached) | Be prepared to commence your deposition at 9:30 a.m. |
| PLACE | DATE AND TIME |
| | Nov. 21st, 2005, 9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature] Jack M. Bailey* | 10/2/2005 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
| Attorney for plaintiff | |

[1] If action is pending in district other than district of issuance, state district under case number.