UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY
OF COLIN M. BLOOR, M.D. AND JOSEPH L. BURTON, M.D.**

As detailed in Merck's opening brief, the deposition testimony of plaintiff's two retained pathologists – Drs. Burton and Bloor – makes crystal clear that they have no specialized knowledge about Vioxx, did not independently review the Vioxx literature, and did not otherwise perform any studies or analysis that would support a scientifically reliable conclusion that use of Vioxx 25 mg for less than 30 days caused Mr. Irvin's sudden cardiac death. Those admissions alone should end the *Daubert* inquiry. As pathologists, Drs. Burton and Bloor may

be qualified to opine – and indeed, no one disputes – that an occlusive thrombus in Mr. Irvin's left anterior descending coronary artery led to his sudden cardiac death. But plaintiff has not remotely carried her burden to show that Drs. Burton and Bloor have either the expertise or a scientifically reliable basis to give the further opinion that Mr. Irvin's very short term use of Vioxx 25 mg *caused*, or indeed *could* have caused, the fatal thrombus. If anything, plaintiff's brief shows just the opposite.

## I.   PLAINTIFF HAS FAILED TO ESTABLISH THE ADMISSIBILITY OF THE PURPORTED GENERAL CAUSATION OPINIONS OF DRS. BURTON AND BLOOR.

Merck does not question that as a general matter, a pathologist may testify that a drug could or could not have caused a death based on the presence or the absence of reliable scientific literature establishing that the drug is capable of causing death at the dose and duration in question. But that truism cannot support admissibility of the purported general causation testimony of Drs. Burton or Bloor, for two reasons.

First, despite plaintiff's contrary protestations, the deposition testimony or Drs. Burton and Bloor makes plain that they have not done the work required to formulate such an opinion. Further, the testimony makes clear that they lack the expertise to formulate such an opinion. As detailed in Merck's opening brief, Dr. Burton could not cite a single clinical trial or epidemiological study finding that use of Vioxx for less than 30 days was associated with increased cardiovascular risk, and he admitted that the weight of the clinical trial and epidemiological evidence negated any such association. (Merck's Motion to Exclude Testimony of Colin M. Bloor, M.D. and Joseph L. Burton, M.D. ("Mot.") at 6-9.) He also admitted that he was not personally qualified to analyze the clinical trial or epidemiological evidence to decide whether Vioxx was associated with increased cardiovascular risk, and that he would have to rely on other experts to address that question. (Mot. at 4-6.) Dr. Bloor, who did not even offer an

opinion on that question in his expert report, admitted that he had not personally reviewed the Vioxx literature and formed an opinion on general causation. Instead, he merely reviewed and relied on the report of Dr. Lucchesi. (Mot. at 13-14.)

These admissions disqualify Drs. Burton and Bloor from offering general causation opinions at trial. Experts cannot offer opinions on matters they lack the expertise to assess or have not studied. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). Plaintiff understandably wants to introduce general causation opinions from expert pathologists purporting to contradict the autopsy report in this case – which attributes Mr. Irvin's sudden death to "ventricular fibrillation due to arteriosclerotic coronary heart disease." (Plaintiff's Response to Defendant's Motion to Exclude Proposed Testimony of Colin M. Bloor, M.D. and Joseph L. Burton, M.D. ("Opp'n") at Ex. F.) But Drs. Burton and Bloor are not entitled to give such opinions merely because they are pathologists. *See Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (neonatologist had sufficient expertise to testify about standard of care, but that did not qualify him to testify on causation). Allowing Drs. Burton and Bloor to deliver general causation opinions that in fact derive solely from the opinions of others (such as Dr. Lucchesi) would falsely cloak those opinions with the imprimatur of expert pathology, misleading the jury and unfairly prejudicing Merck in direct violation of *Daubert*.[1]

---

[1] Implicitly recognizing the inadequacy of the foundation for the opinions of Drs. Burton and Bloor, plaintiff takes pot shots at the opinion of Merck's expert pathologist, Dr. Wheeler. But the contrast could not be clearer. Unlike Drs. Burton and Bloor, Dr. Wheeler has reviewed the pertinent Vioxx literature – including the published studies on which plaintiffs primarily rely (APPROVe and VIGOR) and the FDA's recent comprehensive analysis of all available cardiovascular data on COX-2 inhibitors and traditional NSAIDs. (Reply Memorandum in Support of Motion of Merck to Exclude Evidence of Plaintiff's Experts Regarding Causation ("Causation Testimony Reply") at 11-12, filed concurrently herewith.) Consistent with both the conclusion of the FDA and the admission of Dr. Burton that the available scientific data do not support an increased risk from short term use, Dr. Wheeler opines on the basis of his review that use of Vioxx 25 mg for less than 30 days could not have caused Mr. Irvin's death.

Second, and more fundamentally, the underlying scientific literature does not remotely support the claim that use of Vioxx 25 mg for less than 30 days can cause thrombotic sudden death. In contrast to the scientific literature on plaintiff's example of cocaine, which establishes a well recognized link between overdosage and sudden cardiac death, the scientific literature on Vioxx establishes no such link. Plaintiff broadly asserts without foundation that "[i]t is generally accepted within the scientific community that Vioxx is prothrombotic." (Opp'n at 9.) But as discussed at length in Merck's opening and reply briefs on general causation, that is simply not true. As the FDA recently concluded in its comprehensive review of all the scientific data on COX-2 inhibitors and other NSAIDs, for short term use, there does not appear to be any increased cardiovascular risk at all. (Reply Mem. in Support of Merck's Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation ("Causation Testimony Reply") at 11-12.) For long term use, there is evidence in some studies (but not others) supporting an association with increased cardiovascular risk in some patient populations, but the mechanism of any such association is unknown. (*Id.* at 12.)

Merck's opening and reply briefs on general causation address, at length, all of the claimed "scientific evidence" of short term risk cited in plaintiff's brief. Rather than repeating that discussion here, Merck will only note some of the highlights:

- Plaintiff cites the APPROVe study, but the peer-reviewed, published data from that study show no difference in cardiovascular events between Vioxx and placebo for the first 18 months of use. Plaintiff takes pot shots at the APPROVe analysis, but the published findings are consistent with all other trials of Vioxx against placebo, which likewise do not demonstrate increased cardiovascular risk from short term use. (Causation Testimony Reply at 13.)

- Plaintiff also cites the APC trial, a long term Celebrex trial with findings similar to APPROVe, but that trial, if anything, corroborates the APPROVe finding of no risk from short term use. The peer-reviewed, published APC data show no difference in cardiovascular events between drug and placebo before approximately one year.[2] Indeed, in its recent comprehensive review, the FDA emphasized that that "the increased risk of serious adverse CV events in the controlled clinical trials described above [APPROVe and APC] have only become apparent after months to years of treatment." In light of this observation, the FDA concluded that the data support an association with increased CV risk "with reasonably prolonged use," and that short term use "does not appear to confer an increased risk."[3] (Causation Testimony Reply at 12.)

- Plaintiff cites the VIGOR trial, but that trial lacked a placebo comparator, involved double the dose used by Mr. Irvin, and did not demonstrate a difference in risk from usage less than one month. (Causation Testimony Reply at 18-19.)

- Plaintiff also cites a review article and an editorial by Garret FitzGerald, who first advanced the theory that Vioxx might increase the risk of thrombotic events by altering the balance between thromboxane and prostacyclin in the vasculature. These are not studies but opinion pieces. They merely describe

---

[2] Solomon et al., *Cardiovascular Risk Associated With Celecoxib in a Clinical Trial for Colorectal Adenoma Prevention*, NEW ENG. J. MED. 2005 17:352(11):1071-8, figure 1.

[3] April 6, 2005 FDA Memorandum ("FDA Memorandum") at 2, 10, 12, attached as Ex. 50 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions to Exclude Evidence, filed October 21, 2005.

- FitzGerald's hypothesis for what it is – a theory – and do not purport to assert the theory has been proven. As discussed at length in Merck's causation briefs, it has not. (Causation Testimony Reply at 33-36.)

- Finally, plaintiff emphasizes a recent roundtable discussion where it was noted that the FitzGerald theory of a prothrombotic effect is the "most common explanation" for any increased risk of cardiovascular events from use of COX-2 inhibitors. But the substance of the reported discussion is that the data do not support FitzGerald's theory, and most notably that the "[f]ailure of the APPROVe data to show protection from aspirin also suggests that thrombosis is not the consequence of COX-2 inhibition."[4] The FDA made the same point in its comprehensive review, noting that the failure to observe an aspirin-protective effect raised "serious questions about the so-called 'COX-2 [i.e., FitzGerald] hypothesis,' which suggests that COX-2 selectivity contributes to increased CV risk.[5]

In short, it is absurd for plaintiff to suggest that Drs. Burton and Bloor, if they had actually reviewed the available scientific literature,[6] would have found a "generally accepted" scientific consensus, or even reliable scientific evidence, that use of Vioxx 25 mg for less than 30 days can cause sudden cardiac death. Their purported general causation opinions to that effect must be excluded.

---

[4] Bresalier, R., et al., *Editor's Round Table: Cyclooxygenase-2 Inhibitors and Cardiovascular Risk*, AM. J. CARD. 2005 (on-line version) at 8:84-85.
[5] FDA Memorandum at 8.
[6] Plaintiff also suggests that Drs. Burton and Bloor could have relied on unspecified articles in the lay press discussing alleged risks of Vioxx. (Opp'n at 5.) The lay press, however, is not an accepted source of scientifically reliable information.

## II.  PLAINTIFF HAS FAILED TO ESTABLISH THE ADMISSIBILITY OF THE PURPORTED SPECIFIC CAUSATION OPINIONS OF DRS. BURTON AND BLOOR.

The purported specific causation opinions of Drs. Burton and Bloor must also be excluded. First, in the absence of reliable evidence of general causation, plaintiff's experts cannot permissibly opine as to specific causation. Black letter law requires admissible evidence of general causation before a specific causation opinion may be given. *McClain v. Metabolife, Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005).

Second, plaintiff concedes, as did Dr. Burton in his deposition, that the pathological evidence provides no way to tell whether Mr. Irvin actually had reduced prostacyclin in his vasculature, and if so, whether any such reduction had clinical significance. (Opp'n at 13.) Plaintiff complains that such proof would be impossible, but that is exactly the point. Plaintiff admits that pathology – the only field in which Drs. Burton and Bloor are arguably expert – cannot demonstrate that such a mechanism was at work. It follows that any assumption to that effect by Drs. Burton and Bloor would be rank speculation, incapable of supporting a reliable causation opinion.

Third, it is plain that Drs. Burton and Bloor cannot reasonably rule out the many much more plausible causes of Mr. Irvin's sudden cardiac death – an event that occurs in hundreds of thousands of persons every year. (Mot. at 11.) These include, among others, both vasospasm and rupture of atherosclerotic plaque, both of which can lead to formation of an occlusive thrombus. (Causation Testimony Reply at 43, 46.) As Dr. Burton admitted at deposition, no evidence suggests that Vioxx increases the incidence of either of these plausible independent causes of Mr. Irvin's sudden death. (Mot. at 8-10.) Inability to rule out other plausible causes renders any specific causation opinion attributing the death to Vioxx speculative and unreliable. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (excluding testimony of expert

who failed to rule out alternative causes and, instead, "simply pick[ed] out the cause that is most advantageous to [plaintiff's] claims").

It bears repeating that on the issue of plaque rupture, Dr. Burton and Dr. Bloor have offered factually irreconcilable opinions. Dr. Burton testified that Mr. Irvin's plaque ruptured, while Dr. Bloor claims it did not.[7] Recognizing the problem, plaintiff now argues that Dr. Burton also did not find evidence of rupture. But this is unsupportable. Dr. Burton's consulting pathologist, Dr. Frist, reported to him that "one section of the vessel is showing luminal compromise up to 50%. *In this vessel, the atherosclerotic plaque is disrupted.*"[8] Dr. Burton himself testified: "Q. Now Mr. Irvin showed signs of ruptured plaque, correct? A. Yes." (Mot. at 16.) The diametrically opposing testimony on this point by plaintiff's own experts demonstrates beyond dispute that plaintiff cannot rule out a rupture of Mr. Irvin's atherosclerotic plaque as the likely cause of Mr. Irvin's fatal thrombus. Accordingly, the specific causation opinions must be excluded.

Finally, Dr. Bloor should not be allowed to testify as to specific cause because he failed to adequately disclose those opinions in his expert report. In fact, his expert report does not mention Vioxx at all whether as contributing or theoretical cause of Mr. Irvin's death. The fact that Dr. Bloor then hatched a specific causation opinion at his deposition based on material that had not been disclosed previously in his report as information he had relied on, exacerbates plaintiff's non-disclosure rather than curing it.

---

[7] Plaintiff suggests that Merck's expert pathologist, Dr. Wheeler, also did not detect a rupture (or had no basis for detecting one), but this mischaracterizes his testimony and is baseless. (*See* Merck's Opposition to Plaintiff's Motion to Exclude Opinion Testimony of Thomas M. Wheeler, M.D. at 8-9.).

[8] Expert Report of Brian S. Frist, M.D., M.E., attached as Ex. 28 to Decl. of Phillip Wittmann in Support of Merck's Opposition Briefs, filed Nov. 2, 2005.

III. **CONCLUSION.**

For the reasons stated above, Merck respectfully requests that this Court grant Merck's Motion to Exclude Testimony of Colin M. Bloor, M.D., and Joseph L. Burton, M.D.

                    Respectfully submitted,

                    */s/ Dorothy H. Wimberly*

                    Phillip A. Wittmann, 13625
                    Dorothy H. Wimberly, 18509
                    STONE PIGMAN WALTHER
                    WITTMANN L.L.C.
                    546 Carondelet Street
                    New Orleans, Louisiana  70130-3588
                    Phone:  504-581-3200
                    Fax:    504-581-3361

                    Defendants' Liaison Counsel

                    Philip S. Beck
                    Adam L. Hoeflich
                    Tarek Ismail
                    BARTLIT BECK HERMAN PALENCHAR
                    & SCOTT LLP
                    54 West Hubbard Street, Suite 300
                    Chicago, Illinois  60610
                    Phone:  312-494-4400
                    Fax:    312-494-4440

                    Douglas Marvin
                    WILLIAMS & CONNOLLY LLP
                    725 Twelfth Street, N.W.
                    Washington, D.C.  20005
                    Phone: (202) 434-5000
                    Fax:    (202) 434-5029

                    John H. Beisner
                    Charles C. Lifland
                    Richard B. Goetz
                    O'MELVENY & MYERS LLP
                    400 South Hope Street
                    Los Angeles, CA 90071
                    Phone: (213) 430-6000
                    Fax:    (213) 430-6407

                    Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Reply Memorandum in Support of Motion of Merck & Co., Inc. To Exclude Testimony Of Colin M. Bloor, M.D. and Joseph L. Burton, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of November, 2005.

_____
Dorothy H. Wimberly