

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This document relates to | * | JUDGE FALLON |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF RICHARD M. KAPIT, M.D.**

Plaintiff proffers Richard M. Kapit, M.D. as an expert on: (1) Merck's interactions with the FDA and the correctness of the FDA's decisions with respect to Vioxx®; (2) Merck's ethical obligations; and (3) Merck's state of mind and motives regarding the alleged risks of Vioxx. Dr. Kapit's testimony about Merck's interactions with the FDA and the FDA's resulting labeling decisions is preempted, and his testimony about Merck's ethics, intent or motive is improper subjective testimony. Plaintiff tries to avoid exclusion of this improper testimony by

790720v.1

mischaracterizing it and relying on inapposite case law. Plaintiff's efforts, however, cannot disguise the true nature of Dr. Kapit's testimony, which is improper opinion testimony that should be excluded.

I.   **DR. KAPIT'S TESTIMONY CONCERNING MERCK'S INTERACTIONS WITH THE FDA AND THE FDA'S RESULTING DECISIONS WITH RESPECT TO VIOXX LABELING IS PREEMPTED BY FEDERAL LAW.**

In the face of clear Supreme Court precedent holding that claims of fraud on the FDA are preempted, *see Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350, 353 (2001), plaintiff asserts that there is no cause of action for fraud on the FDA in her case. The Supreme Court's holding, however, reaches beyond the narrow definitions of a cause of action and applies to any claim of fraud on the FDA. To do otherwise would improperly allow plaintiffs to "bootstrap" allegations that a drug company failed to report information to the FDA into their defective warning claims, contrary to the holding of *Buckman*. *See Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36 (D.C. Cir. 2003) ("plaintiffs cannot bootstrap their arguments regarding defendant's alleged failure to report and to investigate adverse incidents to the FDA into a defective warning case."). Other federal courts have also rejected such a narrow interpretation of *Buckman*. *See, e.g., Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965-66 (6th Cir. 2004) ("This case, however, presents a somewhat different legal regime from the one invalidated in *Buckman*. . . . This difference, however, is immaterial in light of *Buckman*. As the district court properly found, '*Buckman* teaches that state tort remedies requiring proof of fraud committed against the FDA are foreclosed since federal law preempts such claims.'") (citation omitted); *Cupek v. Medtronic, Inc.*, 405 F.3d 421, 424 (6th Cir. 2005) (finding claim of negligence per se was a "disguised fraud on the FDA claim"), *cert. denied sub nom. Knisley v. Medtronic, Inc.*, No. 05-22, __ U.S. __, 2005 WL 2493895 (Oct. 11, 2005).

Dr. Kapit's testimony and report make claims of fraud on the FDA. For example, Dr. Kapit alleges that Merck did not submit data when requested by the FDA and eventually submitted incomplete data and that Merck did not cooperate with the FDA, delaying the regulatory process. (Expert Report of Richard M. Kapit, M.D. ("Kapit Report") at ¶¶ 103-111, attached as Ex. 36 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions to Exclude Testimony ("Wittmann 10/21/05 Decl."), filed October 21, 2005.) Dr. Kapit also left open the possibility that he might opine about additional instances of fraud on the FDA by Merck. (Deposition of Richard M. Kapit, M.D. ("Kapit Dep.") at 184:7-19, 186:16-22, attached as Ex. 7 to the Declaration of Phillip A. Wittmann in Support of Merck's Reply Briefs ("Wittmann Decl.").) *Buckman* prevents plaintiff from shoring up her case with allegations of fraud on the FDA, and any testimony from Dr. Kapit supporting such allegations is therefore preempted. The authority plaintiff cites does not hold otherwise.[1] The court in *Globetti v. Sandoz Pharmaceutical Corp.*, stated that the "plaintiff may not offer evidence simply to show misrepresentations to or concealment from the FDA." No. CV98-TMP-2649-S, 2001 WL 419160, at *3 (Mar. 5, 2001 N.D. Ala.). The court distinguished such impermissible fraud-based evidence from evidence that might be admissible if it were relevant to the defendant's knowledge regarding the adequacy of the warning or to claims of fraud against the plaintiff and her physician (as opposed to the FDA). *See id.* Dr. Kapit's bald assertions of misconduct by Merck

---

[1] One case plaintiff cites, *Eve v. Sandoz Pharmaceutical Corp.*, pertains only to whether plaintiff's state law causes of action were preempted by *Buckman*. *See* No. IP98-1429-C-4/5, 2002 WL 181972, at *2-3 (Jan. 28, 2002 S.D. Ind.). Merck has not asserted that any of plaintiff's entire causes of action are precluded as fraud on the FDA claims under *Buckman*. Rather, Merck seeks here to preclude Dr. Kapit's testimony alleging fraud on the FDA. The court in *Eve* did not decide whether any evidence or testimony was precluded by *Buckman*. *See id.*

in dealing with the FDA cannot be fairly characterized as anything other than allegations of fraud on the FDA.[2]

Plaintiff also fails to explain how Dr. Kapit's testimony second-guessing the FDA's conduct in regulating Vioxx is saved from preemption. (*See, e.g.*, Kapit Dep. at 90:24-91:21). Dr. Kapit's comments about the conduct of the FDA are not relevant to Merck's knowledge or whether Merck committed fraud against plaintiff. Instead, such allegations challenge the FDCA requirements that establish a scheme that empowers the FDA alone to control the details of the approval process. As such, it is preempted, *see Buckman*, 531 U.S. at 350, and the Court should exclude Dr. Kapit's testimony.[3]

## II. DR. KAPIT MAY NOT TESTIFY THAT MERCK HAS FAILED TO MEET HIS SUBJECTIVE NORMATIVE STANDARDS OR SOME ETHICAL OBLIGATION.

Although plaintiff never addresses *Rezulin*, a key case supporting Merck's argument for exclusion, she strains to avoid its clear holding by recasting Dr. Kapit's opinion as "not personal and subjective opinions but rather opinions derived from scientific and specialized knowledge of

---

[2] Even assuming that Dr. Kapit's allegations of fraud on the FDA are somehow really statements relating to Merck's knowledge or fraud on the plaintiff (as opposed to the FDA), the testimony remains improper opinion testimony. As the *In re Rezulin Products Liability Litigation* court explained, purported "expert" testimony on data-suppression, like testimony concerning state-of-mind generally, "pertains to lay matters which a jury is capable of understanding and deciding without the expert's help." 309 F. Supp. 2d 531, 554 (S.D.N.Y. 2004). These "experts" have no "first-hand knowledge of the circumstances underlying [any] charge of data-suppression," *see id.*, and they add nothing to the jury's own consideration of the documentary evidence.

[3] Unable to argue around the preemptive effect of *Buckman*, plaintiff spends several pages discussing testimony that Merck did not seek to exclude – Dr. Kapit's testimony regarding regulations that pertain to label changes. Merck disagrees with Dr. Kapit's characterization of these regulations and intends to proffer its own expert testimony from Dr. Janet Arrowsmith-Lowe that will prove that Merck did not have the ability to change its label without FDA approval. Dr. Arrowsmith-Lowe's testimony will show why application of the regulations to label changes in this case is distinguishable from that found in cases such as *Witczak v. Pfizer*, 377 F. Supp. 2d 726 (D. Minn. 2005) and *Cartwright v. Pfizer*, 369 F. Supp. 2d 876 (E.D. Tex. 2005), cited by plaintiff here.

a former FDA medical officer, who has extensive regulatory experience in interpreting and applying federal regulations and Guidances as they pertain to standards of conduct in the pharmaceutical industry." (Pl.'s Opp'n to Merck's Mot. to Exclude Testimony of Richard M. Kapit, M.D. ("Opp'n") at 12.)

Dr. Kapit, however, repeatedly opines on subjects that go beyond his purported individual specialties, asserting that Merck violated some unwritten standard that an "ethical" pharmaceutical company must follow:

> Q. In paragraph 18, you make reference to medical and ethical obligations that compel pharmaceutical companies to ensure the safety of medications they sell. Do you recall that?
>
> A. Yes.
>
> Q. What standard are you applying for purposes of your opinion there?
>
> A. Well, I mean, I don't know that there's any written standard anywhere. You know, the pharmaceutical companies used to call themselves, and Merck was one of them, used to call themselves the ethical pharmaceutical companies, and they wanted to distinguish themselves I suppose from snake oil salesmen and other people like that, and there's an inherent ethical standard that pertains to any company that puts out drugs that are supposed to improve the health of Americans, and that standard is that they are supposed to do everything to make sure that the drugs they put out promote health and don't detract from health in very serious ways. And so that's an inherent part of being a pharmaceutical company, that you have those responsibilities, and they're responsibilities that are ethical responsibilities to the American public and medical responsibilities to the doctors in particular and the patients in particular. I don't think that I know of any place that these are written down in any words and can be cited as so and so's standard or a particular standard, but I don't think that that means that they aren't real.

(Kapit Dep. at 186:23-188:2.)

This testimony, like Dr. Kapit's opinion as to what a "responsible" company "should have done" (Kapit Report at ¶¶ 76-79), is irrelevant to the issue the jury must decide – whether Merck met its *legal* obligations to plaintiff. Testimony about the former does nothing to advance fact-finding on the latter. *In re Rezulin*, 309 F. Supp. 2d at 542 (excluding expert testimony on

5

790720v.1

subjective ethical standards because it was: "(1) unreliable because purely speculative; (2) unhelpful to the fact-finder because irrelevant in a case where liability is premised on legal, not ethical, standards; and (3) likely to prejudice and confuse fact-finders concerning the pertinent legal standards"); *see also Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) (finding admission of expert testimony was abuse of discretion when particular opinion had no apparent underlying support); *DiBella v. Hopkins*, No. 01 Civ. 11779 (DC), 2002 U.S. Dist. LEXIS 20856, at *12 (S.D.N.Y. Oct. 30, 2002) (holding "business ethics" expert testimony inadmissible in commercial dispute because "dispute here is not over what is ethical . . . [r]ather, the dispute is over what happened"); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, MDL 1535, 2005 WL 1868046, at *18 (N.D. Ohio Aug. 8, 2005) (order) (refusing to allow expert testimony because "critical question for the jury in this case is whether the defendant corporations did what the law *required* them to do, not whether, from a societal perspective, they did what an 'ethical corporation' *should have* done.").

Plaintiff never addresses Merck's arguments that its satisfaction of ethical standards is irrelevant to whether it met its legal obligations to plaintiff, and therefore Dr. Kapit's testiomony in this area will not "assist the trier of fact" as required by Rule 702. Nor does plaintiff address the argument that ethics testimony such as that offered by Dr. Kapit is purely speculative and therefore not "specialized knowledge," which is also required by Rule 702. Subjective, normative testimony does not have the same assurances of relevance and reliability that empirically verifiable specialized knowledge provides. When expert testimony lacks this reliability – when it strays from specialized knowledge and lacks supporting authority – it is properly excluded under Rule 702. *See, e.g., Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999).

### III. DR. KAPIT MAY NOT TESTIFY AS TO MERCK'S STATE OF MIND.

Plaintiff has no response to Merck's argument that it is improper for Dr. Kapit to testify to Merck's state of mind – plaintiff instead argues that Dr. Kapit's testimony does not so opine. Plaintiff asserts that Dr. Kapit's testimony "translate[s] for the jury the significance of certain documents and how these documents fit into the complex regulatory scheme which governs the conduct of pharmaceutical companies." (Opp'n at 13.)

A simple review of Dr. Kapit's report and deposition testimony reveals that plaintiff's characterization is disingenuous:

- It is "clear that [Merck] was worried about the elevated rate in that group of patients." (Kapit Report at ¶ 68.)

- Merck "had reason to worry about the cardiovascular effects of Vioxx for at least a couple of years." (*Id.* at ¶ 50.)

- "Vioxx had lots of competition. If Merck put out that Vioxx might be causing such serious problems as heart attacks, it was possible that it would lose market share or even be widely rejected." (*Id.* at ¶¶ 50, 68, 82-84.)

Courts routinely exclude such opinion testimony concerning state of mind such as motive and intent, and this Court should do the same. *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000) (excluding expert's opinions because "[t]he question of intent is a classic jury question and not one for experts." (citing *Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452, 464 (D.N.J. 1999)); *see also In re Rezulin*, 309 F. Supp. 2d at 546 (rejecting expert testimony "on the intent, motives or states of

mind of corporations, regulatory agencies and others" because they "have no basis in any relevant body of knowledge or expertise").[4]

### III. CONCLUSION.

For the reasons stated above, as well as the reasons set forth in Merck's Motion, Merck respectfully requests that Dr. Kapit be precluded from testifying to: (1) his judgment of Merck's interactions with the FDA and the FDA's decisions with respect to Vioxx; (2) whether Merck failed to meet his subjective normative standards as to what an "ethical" or "responsible" company would do; and (3) Merck's state of mind.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

---

[4] The only case cited by plaintiff, *In re Diet Drugs*, actually supports Merck's motion to exclude Dr. Kapit's testimony. In a footnote, plaintiff asserts that *In re Diet Drugs* specifically noted that its ruling did not completely preclude the introduction of evidence of intent. (Opp'n at 13, n 13.) True, but *In re Diet Drugs* did exclude *expert testimony on intent* because, as noted in Merck's Motion, the jury is able to evaluate the actual underlying evidence and is fully capable of deciding whether the total evidence supports claims about intent or motive. (Merck Motion, at 11 (citations omitted).)

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790720v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Reply in Support of Motion to Exclude the Testimony of Richard M. Kapit, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of November, 2005.

*/s/ Dorothy H. Wimberly*