UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF WINSTON GANDY, JR., M.D.**

Plaintiff's Opposition to Merck's Motion to Exclude Testimony of Winston Gandy, Jr., M.D. ("Opp'n") sidesteps the key problem with Dr. Gandy's testimony – his opinions are based upon unreliable scientific evidence and are predicated upon speculation, guess-work and unproven assumptions.  Moreover, he *concedes* that he cannot tell whether Vioxx® caused Mr. Irvin's death, or whether Mr. Irvin's death – like that of thousands of similarly situated Americans each year who have never taken Vioxx – resulted from his existing coronary artery

790719v.1

disease, obesity, and sedentary lifestyle. In her opposition, plaintiff never explains *why* – in spite of all its shortcoming – the testimony of Dr. Gandy should be admitted. Consequently, Dr. Gandy's opinions that (1) Vioxx 25 mg increases the risk of blood clots in short-term use, and (2) Vioxx contributed to Mr. Irvin's sudden cardiac death do not satisfy Federal Rule of Evidence 702 and should be stricken.

I.   **DR. GANDY IS NOT QUALIFIED TO RENDER OPINIONS ON GENERAL CAUSATION.**

Plaintiff's opposition offers little to dispute that Dr. Gandy's "opinions" are simply speculation and rely on unproven assumptions and a selected, unrepresentative subset of scientific literature that does not even support his assertions.

   A.   **Dr. Gandy's Professional Training And Experience Do Not Qualify Him To Opine On General Cause.**

Dr. Gandy is a cardiologist. But that does not qualify him to testify on causation. *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (trial judge could have concluded that neonatologist had sufficient expertise to testify about the standard of care to be accorded a baby suffering from asphyxia, but that did not qualify him to testify on causation; he had no background in studying the causes of cerebral palsy, and his ability to testify on whether asphyxia caused a newborn's cerebral palsy hinged upon "the validity of his opinion" on causation and "the depth of his knowledge of a complicated, specialized medical subject matter.").

It is undisputed that Dr. Gandy has never done any research on NSAIDS, nor on COX-2 inhibitors specifically, published articles on sudden cardiac death, or been primarily responsible for analyzing critical data. (*See* Deposition of Winston Gandy, Jr., M.D., ("Gandy Dep.") at 19:2-22, 20:3-9, attached as Ex. 6 to Declaration of Phillip A. Wittmann in Support of Merck's Reply Briefs ("Wittmann Decl."). It is also undisputed that Dr. Gandy never read the

2

Physician's Desk Reference Entry for Vioxx, or the label on the package itself. (*See* Gandy Dep. at 57:8-58:8.) Plaintiff effectively concedes Dr. Gandy's lack of relevant professional training and experience by responding to Merck's criticisms with: "Dr. Gandy need not possess all 'background' information and data regarding Vioxx, nor must he be required to conduct research on non-steroidal anti-inflammatory medications, nor must he be required to have published on sudden cardiac death . . . ." (Opp'n at 5.) Notwithstanding plaintiff's insistence that she is entitled to proffer experts without sufficient qualifications, part of this Court's "gatekeeper" role under *Daubert* is to make certain that those lacking in sufficient qualifications and experience are not permitted to opine on scientific issues. As noted in Merck's Motion, Dr. Gandy has done virtually nothing to make up for his lack of experience: he spent only 10-15 hours reviewing materials (all of them provided by plaintiff's counsel) before completing his report, and read only a few articles. (*See* Merck's Mot. to Exclude Testimony of Winston Gandy, Jr., M.D. ("Mot.") at 5.)

Moreover, Dr. Gandy's clinical experience does not make up for his lack of training and failure to study the issue. Dr. Gandy concedes he never diagnosed any of his patients as having an adverse event due to Vioxx. (Gandy Dep. at 59:5-7.) For some reason, plaintiff thinks it advances Dr. Gandy's cause to cite deposition testimony in which he claims to have formed an opinion - well after the fact - that one of his patient's acute infarction was caused by Vioxx because the patient suffered from neither hypertension nor diabetes, did not smoke, and had no family history. (Opp'n at 5-6.) But that is exactly the sort of thinking that *Daubert* forbids: assuming that his patient – or anyone – suffered injury *because* of Vioxx simply because he was injured after taking Vioxx is to blunder into the logical fallacy of *post hoc ergo propter hoc* ("after this, because of this"). "It is always illegitimate to suppose that just because B follows A

3

on one occasion, B must be the effect of A." M. Beardsley, THINKING STRAIGHT 91 (4th ed. 1975); *see McClain v. Metabolife, Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) ("simply because a person takes drugs and then suffers an injury does not show causation. . . .The *post hoc ergo propter hoc* fallacy . . . is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship"); *Austin v. Children's Hosp. Med. Ctr.*, No. 95-3880, 1996 U.S. App. LEXIS 22329, at *7 (6th Cir. July 26, 1996) ("Indeed, the only identifiable reason for Dr. Raff's opinion appears to be *post hoc, ergo propter hoc*. This alone is not sufficient to create a material issue of causation."); *Abdishi v. Phillip Morris*, No. 981310, 2001 U.S. Dist. LEXIS 15371, at *38 (N.D. Ill. Sept. 26, 2001) ("Plaintiff's argument – essentially the classic post-hoc ergo propter hoc reasoning – has been rejected by courts dealing with Florida product liability law"); *Cartwright v. Home Depot USA, Inc.*, 936 F. Supp. 900, 906 (N.D. Fla. 1996) ("The logical fallacy *post-hoc ergo propter hoc* has been recognized for generations. The near exclusive reliance by Plaintiff's experts on this fallacy clearly undermines any confidence that their opinions are the result of the scientific method."); *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998).

**B.  Dr. Gandy Has Not Undertaken The Necessary Study To Opine On General Causation.**

By arguing that Dr. Gandy is allowed to rely upon the opinions of pharmacologists and published epidemiological studies (*see* Opp'n at 5), plaintiff skirts the issue – that Dr. Gandy did not thoroughly investigate the question of general causation. As explained in Merck's Motion, Dr. Gandy testified he only read a handful of medical articles and reviewed only two of the Vioxx clinical studies. (*See* Expert Report of Winston Gandy, Jr., M.D., ("Gandy Report") at 4, attached as Ex. 34 to Wittmann Decl.; Gandy Dep. at 52:10-54:25, 78:24-79:13, 143:20-144:19.) Plaintiff's argument that Dr. Gandy is "familiar with the major clinical literature concerning

4

Vioxx," therefore, is contradicted by the evidence. (Opp'n at 7.) Such self-serving assurances are "insufficient." *Moore*, 151 F.3d at 276-78. Federal Rule of Evidence 702, which governs the admission of expert testimony, requires that the proffered testimony be based on "*sufficient* facts or data." FED. R. EVID. 702 (emphasis added). Because Dr. Gandy did not consider the vast majority of scientific information related to his opinion, his testimony must be excluded.

### C. Dr. Gandy's Opinion That Vioxx Causes A Prothrombotic State Is Not Based On Reliable Scientific Evidence.

Plaintiff does not dispute that Dr. Gandy did not review any scientific data. Rather, plaintiff argues that "Daubert does not require Dr. Gandy to reevaluate the raw data from the VIGOR or APPROVe studies." (Opp'n at 5.) *Daubert* does require, however, that an expert's methodology underlying his testimony be scientifically valid, and Dr. Gandy's testimony clearly does not meet this standard. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Moore*, 151 F.3d at 279 (when expert testimony is demonstrated to be speculative and lacking scientific validity, trial courts are "encouraged" to exclude it).

Plaintiff's opposition offers no reliable scientific evidence for Dr. Gandy's espousal of the "Fitzgerald Hypothesis," *i.e.*, that Vioxx causes a prothrombotic state. As explained in Merck's Motion and discussed in detail in Merck's Memorandum Regarding Vioxx Science Issues ("Science Brief") and its brief in support of its Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation ("Causation Testimony Brief"), contrary to plaintiff's protestations, the VIGOR study does not address Dr. Gandy's proposed mechanism – the potential that Vioxx could be prothrombotic as a result of an alleged imbalance between prostacyclin and thromboxane.[1]

---

[1] VIGOR looked at the GI benefits of Vioxx and was not designed to look for the mechanism as to how cardiovascular events come about.

5

790719v.1

Plaintiff cannot get around the fact that Dr. Gandy testified he is not aware of any study actually demonstrating a decrease in prostacyclin production in the vascular system as a result of Vioxx use. (*See* Gandy Dep. at 116:10-24, 140:16-141:16.) This is because, as explained at length in Merck's Causation Testimony Brief, the prostacyclin imbalance theory remains unproven. (*See* Merck's Mot. to Exclude Testimony of Plaintiff's Experts Regarding Causation ("Causation Testimony Brief"), filed Oct. 21, 2005, at 40-44.) In fact, plaintiff's experts cannot point to a single human study demonstrating that Vioxx inhibits vascular production of prostacyclin production, nor even how much inhibition is necessary to cause clinically relevant facts.

Plaintiff also asserts the she is not required to prove the precise mechanism by which Vioxx causes cardiovascular events but instead needs only show that her theory that short-term use of Vioxx causes thrombotic sudden cardiac death is biologically plausible. (Opp'n at 8-9.) But she is wrong. As the Fifth Circuit stated in *Black v. Food Lion, Inc.*,

> In this case, neither Dr. Reyna nor medical science knows the exact process that results in fibromyalgia or the factors that trigger the process. Absent these critical scientific predicates, for which there is no proof in the record, no scientifically reliable conclusion on causation can be drawn.

171 F.3d 308, 314 (5th Cir. 1999); (*see also* Causation Testimony Brief). Plaintiff cites to *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1330 (9th Cir. 1998) for the proposition that "Causation can be proved when we do not know precisely how the damage occurred" yet neglects to cite the rest of the sentence: "*if* there is *sufficiently compelling proof* that the agent must have caused the damage somehow." *Id.* (emphasis added).

Plaintiff also points to an "Editor's Round Table" article, in an effort to show that the Fitzgerald Hypothesis is biologically plausible. (*See* Opp'n at 9-10.) A roundtable discussion, however, is not the type of "sufficiently compelling proof" required by *Daubert*. Moreover, the

"Editor's Round Table" does not even support Dr. Gandy's pro-thrombotic theory. Dr. Williams, whom plaintiff quotes in her opposition, states that, "[t]he failure of aspirin to decrease this risk [alleged CV risk with COX-2] is one of the biggest issues working against the concept that this is just a thrombotic event. If thrombosis were the right explanation, it should be reversible with aspirin." *Editor's Round Table: Cyclooxygenase-2 Inhibitors and Cardiovascular Risk*[2] at 8:90-93; *see also id.* at 8:5-13; 8:39-40; 8:84-86. In reality, "[t]here is so much variation among the studies that the mechanism remains open to discussion." *Id.* at 8:3-5.

To bolster Dr. Gandy's opinion, plaintiff states that "[t]here exist literally hundreds of articles describing the relationship between COX-2 and prostacylcin." (Opp'n at 3.) Yet the fact that COX-2 is an enzyme involved in the production of prostacyclin somewhere in the body is neither at issue or disputed. What is at issue is whether Vioxx suppresses prostacyclin production in the vasculature and if so, whether it is clinically relevant. It is here where plaintiff is left without a single article – or any other evidence – to rely upon.

### D. Dr. Gandy Does Not Have A Reliable Scientific Basis To Opine That His Alleged Thrombotic Mechanisms Of Injury Are Caused By Vioxx.

Plaintiff does not even try to rebut Merck's assertion that there is no data supporting Dr. Gandy's theory that Vioxx increases vasospasm/vasoconstriction, or increases the risk of plaque rupture. Clearly, Dr. Gandy is in no position to testify about any alleged mechanism by which plaintiff alleges Vioxx could have caused Mr. Irvin's death.

---

[2] Available at http://www.sciencedirect.com/science?_ob=ArticleURL&_udi=B6T10-4HCN79F-8&_coverDate=10%2F21%2F2005&_alid=327128823&_rdoc=1&_fmt=&orig=search&_qd=1&_cdi=4876&_sort=d&view=c&_acct=C000006078&_version=1&_urlVersion=0&_userid=75682&md5=f2db80ada9476638519e9154f92a21e3#sec2.1.

7

E.  **Dr. Gandy Has No Evidence That Vioxx, At The Dose And Duration Used By Mr. Irvin, Causes Increased Cardiovascular Risk.**

In her opposition, plaintiff does not proffer any reliable scientific evidence supporting Dr. Gandy's opinion that taking 25 mg of Vioxx for less than 30 days causes an increased risk of cardiovascular events. Plaintiff claims Dr. Gandy's testimony provides the required evidence:

> Q. On what basis do you say sir, that very shortly after going on the drug, you create a prostacyclin and thromboxane imbalance?
>
> A. Well, from a clinical perspective, at that point which the drug becomes effective in terms of pain relief, being that it's a COX-2 inhibitor, by definition, it's doing its job if the patient achieves some degree of pain relief. And the maximum amount of pain relief would be expected at the time the drug was at steady state.

(Gandy Dep. at 132:6-15.)

This is precisely the sort of *ipse dixit Daubert* prohibits. In this response, Dr. Gandy (1) offers no evidence that Vioxx affects prostacyclin in the vasculature, (2) does not indicate the dose-response relationship to the claimed affect, (3) does not offer any evidence indicating how much "imbalance" is needed to trigger a thrombotic event, nor (4) offer any evidence that would support his assumption that the "prothrombotic" impact takes place at the same time as the therapeutic effect. This is because he has no such evidence. Dr. Gandy concedes that neither the VIGOR study nor the APPROVe study, the two clinical studies he reviewed, demonstrate an increased short-term risk. (*See* Gandy Dep. at 148:23-149:8, 153:4-8.) Thus, plaintiff's claim that "Merck's own studies prove the risk of thrombotic myocardial infarction after short-term use" is nonsense. (*See* Opp'n at 4.)

II.  **DR. GANDY IS NOT QUALIFIED TO OPINE ON SPECIFIC CAUSATION.**

In plaintiff's opposition she repeatedly claims that Dr. Gandy is qualified to testify about Mr. Irvin's specific cause of death, yet she fails to provide any scientific support for this assertion. As explained in Merck's Motion, Dr. Gandy cannot rule out the possibility that Mr.

8

790719v.1

Irvin's coronary disease could have caused Mr. Irvin's death in the absence of Vioxx or even testify that, but for Vioxx, Mr. Irvin would have lived. (Mot. at 14.) Dr. Gandy cannot point to a single fact distinguishing Mr. Irvin's unfortunate death from the many similar deaths which frequently occur each year with the possible exception that Mr. Irvin took Vioxx. This dooms his testimony. As stated in *Metabolife*,

> [T]he likelihood that the chemical caused the disease or illness in an individual should be considered in the context of other known causes. This refers to the background risk of a specific disease - the risk that everyone faces of suffering the same malady that a plaintiff claims without having exposure to the same toxin. A reliable methodology should take into account the background risk. The background risk is not the risk posed by the chemical or drug at issue in the case. It is the risk a plaintiff and other members of the general public have of suffering the disease or injury that plaintiff alleges *without* exposure to the drug or chemical in question. The background risks include all those causes of a disease, whether known or unknown, excluding the drug or chemical in question. So, the background risk for heart attack is very high because heart disease is the leading cause of morbidity and mortality in America.

401 F.3d at 1243 (internal quotation marks and citations omitted).

The clear deficiencies in Dr. Gandy's general causation opinions coupled with his inability to rule out non-Vioxx related causes means that he cannot opine that Vioxx caused Mr. Irvin's death under Rule 702 and *Daubert*.

III.  **CONCLUSION.**

For all the forgoing reasons, Merck respectfully requests that the Court grant its motion to exclude Dr. Gandy's testimony in its entirety.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790719v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Reply in Support of Motion of Merck & Co., Inc.'s to Exclude Testimony of Winston Gandy, Jr., M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th of November, 2005.

_Dorothy H. Wimberly_

790719v.1