FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -9  PM 4: 51

LORETTA G. WHYTE
       CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC.
("MERCK") TO EXCLUDE TESTIMONY OF THOMAS BALDWIN, M.D.**

In opposing Merck's motion to exclude Dr. Baldwin's testimony, plaintiff makes the bizarre claim that "[t]he Defendant in the present case concedes that Dr. Baldwin, as a clinical and practicing cardiologist, is imminently [*sic*] qualified to testify regarding Richard ("Dicky") Irvin's specific cause of death." (Pl.'s Opp'n to Merck's Mot. to Exclude Testimony of Thomas Baldwin, M.D. ("Opp'n") at 3.) Nothing could be further from the truth. Indeed, the crux of Merck's motion to exclude Dr. Baldwin's testimony is that he is *not* qualified to testify either on

___ Fee_____
___ Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No_____
790716v.1

general causation (*i.e.*, whether taking Vioxx® at the 25 mg. dosage for less than 30 days could cause thrombotic sudden death), or specific causation (*i.e.*, whether, in this case, Vioxx was a substantial cause of Mr. Irvin's death). Because Dr. Baldwin "does not have the kind of specialized knowledge required to testify regarding causation," *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999), and because the reasoning and methods underlying his opinions lack validity, his testimony must be excluded. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

As discussed below, Dr. Baldwin's testimony – particularly his testimony on specific causation – is exactly the kind of *ipse dixit* that *Daubert* intended to exclude. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005). In the final analysis, he bases his testimony on the logical fallacy of *post hoc ergo propter hoc* ("after this, because of this"), assuming that because Mr. Irvin died after ingesting Vioxx, Vioxx must have caused his death. "[S]imply because a person takes drugs and then suffers injury does not show causation." *Metabolife*, 401 F.3d at 1243.

## I. DR. BALDWIN IS NOT QUALIFIED TO RENDER OPINIONS ON GENERAL CAUSATION.

Dr. Baldwin is a cardiologist. But even if, as plaintiff contends, he is "imminently qualified" in that field, that does *not* qualify him to testify on causation. *Tanner v. Westbrook*, 174 F.3d at 548 (trial judge could have concluded that neonatologist had sufficient expertise to testify about the standard of care to be accorded a baby suffering from asphyxia, but that did not qualify him to testify on causation; he had no background in studying the causes of cerebral palsy, and his ability to testify on whether asphyxia caused a newborn's cerebral palsy hinged upon "the validity of his opinion" on causation and "the depth of his knowledge of a

complicated, specialized medical subject matter"). *See also, Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 277-78 (5th Cir. 1998).

The invalidity of plaintiff's general causation theory is addressed in detail in Merck's Memorandum, and Reply Memorandum, in Support of its Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation, and will not be repeated here. Even if the Court permits plaintiff to present some version of that theory at trial, however, it should not come in through the testimony of Dr. Baldwin, because he is not qualified to present it.

Here, it is undisputed that Dr. Baldwin has never done *any* research on NSAID's generally, or on Cox-2 inhibitors specifically. (Deposition of Thomas Baldwin, M.D. ("Baldwin Dep.") at 16:23-17:3, attached as Ex. 2 to Declaration of Phillip Wittmann in Support of Merck's Reply Briefs ("Wittmann Decl.")). It also is undisputed that, with the exception of work done in connection one article co-authored in 1993, for the past 17 years he has had no responsibility for analyzing data from clinical research studies. (*Id.* at 14:3-6, 15:17-16:6). Nor does he have any relevant clinical experience; he concedes that he has never treated a patient who he believes suffered a thrombotic event as a result of taking Vioxx. (*Id.* at 27:4-25).

In an effort to bolster Dr. Baldwin's clinical *bona fides*, plaintiff cites the doctor's deposition testimony that he thinks he has seen patients who "have developed congestive heart failure and/or had an exacerbation of hypertension and renal insufficiency" due to Vioxx and Celebrex. But this argument is simply a red herring. Dr. Baldwin concedes that Mr. Irwin did not suffer either from congestive heart failure (Baldwin Dep. at 137:5-7) or hypertension (*Id.* at 136:16-137:4). The testimony, therefore, is wholly irrelevant. (*See* Merck's Motion in Limine No. 7 to Exclude Irrelevant Medical Conditions, filed Nov. 4, 2005.) The fact that Dr. Baldwin never in his career has diagnosed a thrombotic event caused by a COX-2 inhibitor (Baldwin Dep.

at 27:4-25) is not saved by suggesting that he has diagnosed completely unrelated adverse events.

Nor does Dr. Baldwin's testimony, highlighted by plaintiff, that he advised patients he knew to be taking Vioxx "to consider discontinuing that medication until further data was available" do anything to bolster his credentials or the scientific basis of his conclusions. That Dr. Baldwin may have harbored some suspicions about COX-2 inhibitors does not make up for his lack of scientific rigor. In any event, the advice given by Dr. Baldwin – "to consider discontinuing that medication until further data is available" – reflects an uncertainty and lack of urgency that is wholly inconsistent with his purported opinion, now that he has been retained in this case, that he is medically certain that taking Vioxx for less than 30 days can cause sudden death. Anyone who truly believed that would have issued a far stronger warning to his patients.

Plaintiff does not rebut the charges that Dr. Baldwin was unable to point to any clinical data supporting his view that short-term Vioxx use increases cardiovascular risk (Baldwin Dep. at 63:18-64:2; 105:13-20), that the Juni study does not support his opinion, that he misunderstands and/or misconstrues that study, and appears to rely on studies that don't exist. (*See* Opp'n at 5-7.)

Incredibly, plaintiff instead tries to bolster Dr. Baldwin's opinion by referring to "125 articles in the general lay press" regarding Vioxx, "other scientific authority he does not reference," and "numerous other" unnamed experts who supposedly support his view. Opposition at 5. These references are unavailing, however, because:

- As plaintiff concedes, articles in the lay press do not "establish a scientific basis upon which an expert may render an opinion." (Opp'n at 5); *see Daubert,* 509 U.S. 593-94 ("[t]he fact of publication (lack thereof) in a *peer*

4

*reviewed journal* thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised") (emphasis added). Nor do they establish "general acceptance" within the relevant scientific community. *Daubert*, 509 U.S. at 594. In any event, given the intense media coverage of Merck's recent trial victory, it seems unlikely that plaintiff would continue to advocate that any conclusions should be drawn from press clippings.[1]

- Plaintiff cannot rescue Dr. Baldwin from his failure to support his thesis adequately by referring to scientific authority not considered by him. The question is whether Dr. Baldwin formed his opinion based on good science; he did not. *Metabolife*, 401 F.3d at 1245.

- Nor can plaintiff rescue Dr. Baldwin by pointing to others who share his view. Each building block of Dr. Baldwin's opinion must be constructed with valid science; if any one fails, he cannot testify. *Id.* If Dr. Baldwin is relying on the work of others, that work must be identified and validated.

Plaintiff also asserts that she "is not required to prove the precise mechanism by which Vioxx causes cardiovascular events" but instead needs only show that her theory that short-term use of Vioxx causes thrombotic sudden cardiac death is biologically plausible. (Opp'n at 9-10.) But she is wrong. As the Fifth Circuit stated in *Black v. Food Lion, Inc.*,

> In this case, neither Dr. Reyna nor medical science knows the exact process that results in fibromyalgia or the factors that trigger the process. Absent these critical

---

[1] Similarly, the "Editor's Roundtable" article cited by plaintiff is merely the musings of the participants in a panel discussion. It is not the sort of scientific article referenced in *Daubert*, and does not reveal the scientific basis, if any, of the opinions expressed within it.

5

790716v.1

scientific predicates, for which there is no proof in the record, no scientifically reliable conclusion on causation can be drawn.

171 F.3d 308, 314 (5th Cir. 1999); (*see also* Merck's Reply Memorandum in Support of Merck's Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation, filed concurrently herewith).[2]

## II. DR. BALDWIN ALSO IS NOT QUALIFIED TO RENDER OPINIONS ON SPECIFIC CAUSATION.

Dr. Baldwin also proposes to testify that the mechanism by which Vioxx supposedly caused Mr. Irvin's death was the creation of a prostacyclin-thromboxane imbalance in his vasculature. (*See* Opp'n at 11.) This is the "Fitzgerald hypothesis." As Merck has explained more fully in other pleadings filed in this case, the FitzGerald Hypothesis is not supported by reliable scientific evidence such to allow an expert to suggest that mechanism occurred in any particular patient. (*See, e.g.,* Merck's Memorandum in Support of Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation at 40-44, filed Oct. 21, 2005, and Merck's Reply in support of that same motion, filed concurrently herewith.) Suffice it to say, with respect to this motion, that Dr. Baldwin concedes he has no evidence that Vioxx inhibits prostacyclin in the vasculature (as opposed to other parts of the body) (Baldwin Dep. at 45:16-46:5; 114:8-115:4), and that he has no evidence concerning the degree to which Vioxx supposedly inhibits prostacyclin, nor how much of an inhibition would be needed to cause injury. (*Id.* at 51:14-

---

[2] In an effort to salvage her theory that short-term Vioxx exposure can cause thrombotic sudden death, Plaintiff criticizes the APPROVe duration analysis as an improper post-hoc sub-group analysis, and cites several emails relating to that study. (Opp'n. at 8-9.) Merck has addressed plaintiff's arguments in its Opposition to her Motion to Exclude Opinion Testimony That Vioxx Cannot Cause Adverse Thrombotic Cardiac Events Unless Ingested (18) Months or Longer. Plaintiff also incorrectly asserts that Merck's voluntary withdrawal of Vioxx from the market is evidence that Vioxx is "prothrombotic." But Merck's action is an inadmissible subsequent remedial measure under Rule 407. *Chase v. General Motors Corp.*, 856 F.2d 17, 20-21 (4th Cir. 1988); *In re Propulsid Prods. Liab. Litig.*, 2003 WL 1090235, at *2 (E.D. La.); *Giglio v. Saab-Scania of America, Inc.*, 1992 WL 329557, at *3 (E.D. La.), *aff'd*, 14 F.3d 55 (5th Cir. 1994).

52:14; 54:3-7). Because he does not know what the impact of the drug is, nor how much of that impact is required to trigger a thrombotic event, he has no valid evidence of causation. *Moore*, 151 F.3d at 278; *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *Thompson v. S. Pac. Transp. Co.*, 809 F.2d 1167, 1169 (5th Cir. 1982).[3]

Dr. Baldwin is thus left to argue that Mr. Irvin's death must have been caused by Vioxx because it took place a short time after Irvin started taking Vioxx. (Baldwin Dep. at 132:3-24). But "[i]t is always illegitimate to suppose that just because B follows A on one occasion, B must be the effect of A." M. Beardsley, THINKING STRAIGHT 91 (4th ed. 1975); *see Metabolife*, 401 F.3d at 1243 ("the *post hoc ergo propter hoc*" fallacy . . . is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship"); *Austin v. Children's Hosp. Med. Ctr.*, No. 95-3880, 1996 U.S. App. LEXIS 22329, at *7 (6th Cir. July 26, 1996) ("Indeed, the only identifiable reason for Dr. Raff's opinion appears to be *post hoc, ergo propter hoc*. This alone is not sufficient to create a material issue of causation."); *Abdishi v. Phillip Morris*, No. 981310, U.S. Dist. LEXIS 15371, at *38 (N.D. Ill. Sept. 26, 2001) ("Plaintiff's argument – essentially the classic post-hoc ergo propter hoc reasoning – has been rejected by courts dealing with Florida product liability law"); *Cartwright v. Home Depot USA, Inc.*, 936 F. Supp. 900, 906 (N.D. Fla. 1996) ("The logical fallacy *post-hoc ergo propter hoc* has been recognized for generations. The near exclusive reliance by Plaintiff's experts on this fallacy clearly undermines any confidence that their opinions are the result of the scientific method."); *see also Moore*, 151 F.3d at 278.

---

[3] Plaintiff cites a portion of Baldwin's deposition testimony where he inexplicably concludes that because the therapeutic effects of COX-2 inhibitors can be felt within hours, these drugs must also be "prothrombotic" within hours. Thus, he not only assumes causation without valid evidence, as discussed above, but also assumes – without evidence – that the timing of the
(*footnote continued on next page*)

The plaintiff's statement, near the end of her opposition, that "Dr. Baldwin also noted that one of the primary reasons that a 30-day nexus was not clear was because most of the studies were not 'powered' or designed to identify the issue of whether there was an increased risk of cardiovascular events in the first 30 days of usage," is both a striking admission that the claimed causal nexus is "not clear," and an inadequate excuse for plaintiff's failure to prove that nexus. (Opp'n at 17.) It is plaintiff's burden to prove causation. It is no excuse that the existing studies were not designed to prove plaintiff's theory, and accordingly did not do so. (*See* Merck's Reply Memorandum in Support of its Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation, filed concurrently herewith.) Plaintiff does not avoid *Daubert* merely by providing an explanation why she has no proof of causation.

### III.   CONCLUSION.

For the reasons stated above and in Merck's Memorandum in Support of its Motion to Exclude Testimony of Thomas Baldwin, M.D., the Court should exclude Dr. Baldwin's testimony under Rule 702.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130-3588
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

---

supposed "prothrombotic" effect is the same as the therapeutic effect. That is not science, it is guess work.

790716v.1

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Reply Memorandum In Support of Merck & Co., Inc.'s Motion to Exclude Testimony of Thomas Baldwin, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of November, 2005.

_Dorothy H. Wimberly_