FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -9 PM 4:53

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to** | * | |
| **Case No. 05-4046*** | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| **EVELYN IRVIN PLUNKETT** | * | |
| as Personal Representative of the Estate of | * | |
| **RICHARD IRVIN, JR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**REPLY IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF WAYNE A. RAY, PH.D.**

**I.       INTRODUCTION.**

Plaintiff fails to dispute much of Merck's motion to exclude the testimony of Wayne A. Ray, Ph.D. Plaintiff cursorily argues that Professor Ray should be allowed to opine on general causation, but even that argument – the sole argument in Opposition to Merck's motion – lacks substance. Professor Ray's "four lines of evidence," on which he relies in proffering a short-term duration use opinion do not constitute reliable scientific evidence. Nothing in plaintiff's Opposition credibly disputes that point.

Fee_____
Process_____
Dktd_____
CtRmDep_____ 790213v.1
Doc. No_____

## II. PLAINTIFF CONCEDES THAT MUCH OF PROFESSOR RAY'S OPINION TESTIMONY IS NOT ADMISSIBLE.

In her Opposition, plaintiff does not dispute that Professor Ray cannot testify about a number of issues addressed by Merck in its opening brief, including the following:

(1) whether Vioxx® accelerates atherosclerosis (*see* Motion of Merck to Exclude Testimony of Wayne A. Ray ("Mot.") at 8-9);

(2) whether there were "safer alternatives" than Vioxx for reducing gastrointestinal (GI) risks associated with naproxen and other NSAIDs (*see* Mot. at 9-11);

(3) specific causation (*see* Mot. at 11);

(4) any alleged failings of the FDA or the adequacy of Merck's interactions with and submissions to the FDA (*see* Mot. at 12-14);

(5) Merck's alleged failure to meet certain subjective normative standards (*see* Mot. at 14-17); and

(6) Merck's state of mind, motive, or perceived "bias" (*see* Mot. at 17-20).

Accordingly, the Court should exclude any and all testimony by Professor Ray on the foregoing issues.

## III. PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE THAT PROFESSOR RAY CAN PROPERLY OPINE ON GENERAL CAUSATION.

Though plaintiff argues that Professor Ray should be allowed to opine on general causation, she does not articulate any valid basis for her position. Professor Ray identified four "lines of evidence" in his report that he claims demonstrate an increased risk of cardiovascular events from using Vioxx for less than 18 months. (Expert Report of Wayne A. Ray, Ph.D. ("Ray Report") at 26, attached as Ex. 39 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions to Exclude Evidence ("Wittmann 10/21/05 Decl."), filed October 21, 2005.) Not one supports plaintiff's general causation theory that Vioxx use *at a dosage of 25 mg for less than 30 days* can cause thrombotic cardiovascular events. (Mot. at 3-9.) Moreover, Merck's

moving papers refuted each "line" as a basis for his proffered opinion in this case (*id.*), and plaintiff's Opposition fails to challenge even *one* of Merck's arguments in any meaningful way.

### A. Plaintiff Fails to Identify Any Reliable Scientific Evidence Supporting Professor Ray's Assumed Theory of Biological Plausibility.

Professor Ray assumes that short-term use of 25 mg Vioxx is capable of causing an increase in thrombotic cardiovascular events based on the FitzGerald hypothesis. (*See* Ray Report at 26 and Mot. at 4.) But, as noted in Merck's motion, that hypothesis is insufficient to support Professor Ray's biological plausibility assumption because it does not amount to reliable scientific evidence. (Mot. at 4-5.) Instead of addressing Merck's argument, plaintiff's Opposition simply repeats the unsupported conclusion:

> Increased risk following short term duration of Vioxx is biologically plausible. Studies confirm that there is a significant decrease in $PGI_2$ within fourteen (14) days of ingestion of Vioxx.

(Opposition to Motion of Merck to Exclude Testimony of Wayne A. Ray, Ph.D. ("Opp'n") at 9-10.) Plaintiff says nothing more on the issue. She makes no attempt to explain why or how the FitzGerald hypothesis constitutes reliable scientific evidence. That is because she cannot do so.[1]

### B. Plaintiff's Argument About the Propriety of Relying on Studies Involving *Other* Drugs Is Without Basis.

Merck pointed out that Professor Ray's reliance on short-term studies of *other* COX-2 inhibitors is inappropriate because those studies similarly do not constitute reliable scientific evidence. In response, plaintiff attempts to distinguish *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), cited by Merck. But she cannot. To the contrary, her limited analysis demonstrates precisely why *Joiner* supports Merck's position. Specifically, plaintiff explains that "[in] *Joiner*,

---

[1] Notably, Dr. FitzGerald did not determine whether Vioxx suppressed $PGI_2$ in the vasculature, nor did he demonstrate any clinical significance of the $PGI_2$ reduction he observed in the urine. (*See* Merck's Memorandum Regarding Vioxx Science Issues ("Science Brief") at 7, filed October 21, 2005.)

3

the court determined that the studies cited by the experts were dissimilar in that the dosage and causation were not identical." (Opp'n at 10.)  Merck does not dispute that point; in fact, it is highlighted by Merck.

In its moving papers, Merck identified dissimilarities, both on causation and duration, in connection with the short-term studies relied on by Professor Ray.  On "causation," for example, Merck explained that not all COX-2 inhibitors are known to be the same.  As Professor Ray acknowledges in his own report, "plausible mechanisms . . . may vary according to the individual coxib." (Ray Report at 10.)  In other words, a study showing an increase in cardiovascular risk with one drug does not show that a different drug – operating in a different way – has the same risk.  Merck also explained that the short-term studies relied upon by Professor Ray involve not only different drugs but also different doses for different durations – precisely the problems plaintiff highlights from *Joiner*.  Moreover, the studies did not show a statistically significant increase in cardiovascular events.  (*See* Appendix of Studies to Memorandum in Support of Motion of Merck to Exclude Evidence of Plaintiff's Experts Regarding Causation ("Causation Testimony Brief, App. of Studies") at 21-22 for a complete analysis of the short-term use Nussmeier studies.)

Plaintiff cursorily responds that the "studies cited by Dr. Ray are not 'so dissimilar to the facts presented in this litigation.'" (*Id.*)  But she says nothing more in support of that claim.  And the evidence demonstrates it is simply not true.  As noted above, and in greater detail in Merck's moving papers, the short-term studies of *other* drugs relied on by Professor Ray are sufficiently dissimilar to render them inapplicable to the facts of this case.

        C.    **Plaintiff Fails to Identify Any Randomized Clinical Trial That Demonstrates an Increased Cardiovascular Risk Associated With Vioxx 25 mg Use For Less Than One Month.**

Professor Ray claims that clinical trials show an increased cardiovascular risk with short-

term use of Vioxx, yet he cannot identify any such trial that applies to the short-term use relevant here: 25mg Vioxx for less than 30 days. Plaintiff superficially asserts in her Opposition that "Dr. Ray relies upon peer-reviewed, scientifically sound clinical trials . . . ." (Opp'n at 10.) Of course, no such trials are identified that show an increased risk associated with Vioxx 25 mg use for less than 30 days. Plaintiff, like Professor Ray, cites none because none exists.

Plaintiff points to the VIGOR trial, arguing that "[t]ime to event curves within VIGOR results indicate a divergence, *within two-months*, for acute MIs." (Opp'n at 10 (emphasis added).) On its face, this argument does not support plaintiff's position. No one disputes that Mr. Irvin used the drug for *less than one month*, not two months. Moreover, VIGOR involved patients taking Vioxx at the *50 mg does* – twice the highest recommended dose and twice the dose purportedly ingested by Mr. Irvin – for a period of nine months. Because "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect," *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) (internal quotation marks and citation omitted), the results of VIGOR cannot and do not provide a generally accepted scientific basis for concluding that the use of Vioxx at the *25 mg dose* was capable of causing Mr. Irvin's sudden death. The VIGOR study also fails to support plaintiff's position because it involved an elderly population with rheumatoid arthritis, a condition that put the study's patients at a significantly increased risk of death from cardiovascular problems and a condition that Mr. Irvin did not have. (*See* Causation Testimony Brief, App. of Studies at 2-3.) Further, it was not a placebo-controlled study. (*Id.* at 3.) It is thus impossible to determine based on the results of VIGOR whether the higher rate of thrombotic cardiovascular events seen in the Vioxx arm of the study reflect (1) a cardiovascular risk associated with high-dose Vioxx; (2) a

cardio-protective effect associated with naproxen; or (3) the effect of chance, either in whole or in part. (*Id.*)

Plaintiff also relies on Professor Kronmal's reanalysis of Merck's clinical data,[2] arguing that it reveals an increased risk within the first month of usage. First, as noted in Merck's moving papers, that is not true. Professor Kronmal's own report admits that he found *no* statistically significant proof that 25mg Vioxx causes thrombotic cardiovascular events during the first month of use. (Mot. at 7-8.) Second, Professor Kronmal's reanalysis is not scientifically reliable. (Mot. at 7.) It was conducted for the purposes of litigation. (*Id.*) It has not been published. (*Id.*) It has not been peer-reviewed by others in the field. (*Id.*) Plaintiff makes no attempt to dispute any of these points.

### D. Plaintiff Fails to Demonstrate That Professor Ray's Opinion is Premised On Any Scientifically Reliable Epidemiologic Studies.

Plaintiff ignores the fact that Professor Ray's own studies published in 2002 and 2005 show "no evidence of a raised risk" of coronary heart disease in patients taking Vioxx "at doses of 25 mg or less" over an average of nearly one year. (*Compare* Mot. at 8 *with* Opp'n at 10-11.) Plaintiff similarly ignores Merck's extensive demonstration that none of the observational studies cited by Professor Ray provides reliable scientific evidence to support his opinion on short term use in this case. (*Compare* Mot. at 8 (citing Causation Testimony Brief, App. of Studies at 11-12, 14, 16-18, 20-21) *with* Opp'n at 10-11.) Plaintiff merely claims that the Solomon and Johnsen studies are "two epidemiologic studies that had sufficient sample size to assess duration of Vioxx use[,]" and that the findings "provide strong evidence that the risk is not limited to durations of 18 months or longer." (Opp'n at 10-11.)

But plaintiff's argument, again, misses its mark. The question at issue in this case is not

---

[2] Plaintiff refers to Professor Kronmal's reanalysis as a "pooled analyses of twenty-three(23) clinical trails for Vioxx." (Opp'n at 10.)

6

whether Vioxx can cause cardiovascular events after something less than 18 months of use; the question is whether Vioxx can cause cardiovascular events *after less than 30 days of use at 25 mg.* Plaintiff's opposition plainly overlooks this fundamental distinction.

Moreover, plaintiff fails to address the many reasons why the studies are unreliable as explained by Merck in its moving papers. The Solomon study, for example, found *no* statistically significant increase risk and *no* doubling of the risk when Vioxx at all doses was compared to non-use of NSAIDs. (*See* Causation Testimony Brief, App. of Studies at 11.) Solomon himself also concedes that there are "important potential limitations" to his study, including "the potential for bias by unmeasured confounders," as well as "residual confounding by factors that were incompletely assessed in this administrative database, such as severity of cardiovascular risk factors." (*Id.* at 12.) Plaintiff makes no attempt to dispute these and other points that render the study unreliable for purposes of supporting Professor Ray's proffered expert testimony.

Merck also noted that the Johnsen study is unreliable for several reasons. It does not distinguish between patients receiving Vioxx at the 25 mg and 50 mg doses. (*Id.* at 20.) It fails to show more than a doubling of the risk for Vioxx, as recognized by Professor Ray's own report. (*Id.*) It contains a number of anomalous findings, including that the purported risk associated with Vioxx decreases with increased duration of usage and that Vioxx is safer for patients at a high risk for cardiovascular disease compared to patients at a lower risk. (*Id.*) It did not control for numerous cardiovascular risk factors, including exercise and diet. (*Id.* at 20-21.) And, finally, Johnsen notes that the increased risk associated with Vioxx may not be attributable to the drug and that further study "appears warranted." (*Id.*) Plaintiff gives no explanation as to why these indicia of unreliability should be ignored, and they should not be ignored. The

epidemiologic studies cited by Professor Ray do not constitute reliable scientific evidence capable of supporting his proffered general causation opinion in this case.

## IV. CONCLUSION.

For all the forgoing reasons and the reasons discussed in Merck's moving papers, Merck respectfully requests that the Court grant its motion to exclude Professor Ray's testimony in its entirety.

Respectfully submitted,

*[signature]*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790713v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Reply in Support of Motion of Merck & Co., Inc. to Exclude Testimony of Wayne A. Ray, Ph.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of November, 2005.

*Dorothy H. Wimberly*