

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| ALL MEDICAL MONITORING | ) | MAGISTRATE JUDGE KNOWLES |
| CLASS ACTION COMPLAINTS | ) | |
| PENDING OR SUBJECT TO | ) | |
| TRANSFER TO MDL 1657 | ) | |
| | ) | |
| | ) | |

## MERCK & CO., INC.'S MOTION TO DISMISS
## PLAINTIFFS' MEDICAL MONITORING MASTER CLASS ACTION COMPLAINT

Defendant Merck & Co., Inc. ("Merck"), by and through its counsel, hereby moves this

Court for dismissal of Plaintiffs' Medical Monitoring Master Class Action Complaint pursuant to

Fed. R. Civ. P. 12(b)(6).

As set forth more fully in the Memorandum In Support Of Merck's Motion To Dismiss

Plaintiffs' Medical Monitoring Master Class Action Complaint, filed herewith, the named

plaintiffs assert claims for negligence/medical monitoring even though they do not allege that

they have suffered any present injury from taking VIOXX.  The named plaintiffs' claims are

governed by the laws of 29 states and the District of Columbia, the majority of which do not

recognize – or have explicitly rejected – medical monitoring claims, particularly where, as here,

plaintiffs do not allege any injury.  Moreover, even as to those states that do recognize a cause of

action for medical monitoring in certain circumstances, plaintiffs fail to meet the requirements

for stating a medical monitoring claim under the laws of those states.

- 1 -

786611-1

WHEREFORE, Merck respectfully requests that its motion be granted and that Plaintiffs'

Medical Monitoring Master Class Action Complaint be dismissed with prejudice.

Respectfully submitted,


Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
One United Plaza
4041 Essen Lane, Suite 501
Baton Rouge, LA  70809
Phone: 225-490-8900
Fax:    225-490-8960

Defendants' Liaison Counsel

Counsel for Merck & Co., Inc.

- 2 -

786611-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: **VIOXX** ) | **MDL NO. 1657** |
| ) | |
| **PRODUCTS LIABILITY LITIGATION** ) | **SECTION: L** |
| ) | |
| ) | **JUDGE FALLON** |
| **THIS DOCUMENT RELATES TO:** ) | |
| ) | |
| **ALL MEDICAL MONITORING** ) | |
| **CLASS ACTION COMPLAINTS** ) | **MAGISTRATE JUDGE KNOWLES** |
| **PENDING OR SUBJECT TO** ) | |
| **TRANSFER TO MDL 1657** ) | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF MERCK'S MOTION TO DISMISS PLAINTIFFS'
MEDICAL MONITORING MASTER CLASS ACTION COMPLAINT**

0

786635_1

**TABLE OF CONTENTS**
(continued)

Page

BACKGROUND .................................................................................................... 1

ARGUMENT ........................................................................................................ 4

I.   PLAINTIFFS' CLAIMS ARE GOVERNED BY THE LAWS OF THE STATES
     WHERE THEY WERE PRESCRIBED, PURCHASED AND INGESTED
     VIOXX .......................................................................................................... 4

II.  PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER THE APPLICABLE
     STATES' LAWS. ........................................................................................... 12

     A.   Named Plaintiff Wayne Young's Claim Must Be Dismissed Because
          Arizona Has Only Recognized Medical Monitoring In The Narrow
          Context Of Toxic Torts. ........................................................................ 15

     B.   Named Plaintiff Stoney Walton's Claim Must Be Dismissed Under
          Arkansas Law Because Arkansas Courts Do Not Recognize A Claim For
          Medical Monitoring ............................................................................. 17

     C.   Named Plaintiff Jan Lagomarsino Cannot State A Claim For Medical
          Monitoring Because Colorado Has Not Recognized This Form Of Relief. ........ 19

     D.   Named Plaintiff Ethel Gray's Claim Must Be Dismissed Because
          Connecticut Bars Claims For Medical Monitoring Absent Allegation Of A
          Present Injury ..................................................................................... 20

     E.   Named Plaintiff James Houston's Claim Fails Under District of Columbia
          Law Because The District Has Never Recognized Medical Monitoring
          Claims ............................................................................................... 22

     F.   Named Plaintiff Robert Lane's Claim Must Be Dismissed Because He
          Does Not Adequately Plead The Elements For Medical Monitoring Under
          Florida Law ....................................................................................... 23

     G.   Named Plaintiff Calvin Kinghorn's Claim Must Be Dismissed Because
          The Idaho Supreme Court Has Foreclosed The Possibility Of Negligence-
          Based Claims Absent Present Physical Injury ............................................ 24

     H.   Named Plaintiff Anita Ivory's Medical Monitoring Claim Fails Because
          Illinois Requires Tort Plaintiffs To Assert A Present Injury ........................ 26

     I.   Named Plaintiff Sherrill Herke's Claim Should Be Dismissed Because
          Iowa Has Never Recognized Tort Claims For Medical Monitoring .................. 27

     J.   Named Plaintiff Vicky Hunter's Claim Must Be Dismissed Because
          Kansas Has Never Recognized Tort Claims Absent A Present Injury ............... 28

     K.   Named Plaintiff Carol Lally's Claim Must Be Dismissed Because Maine
          Has Rejected "No Injury" Tort Claims .................................................... 30

     L.   Named Plaintiff Lisa Gray's Claim Must Be Dismissed Because Maryland
          Courts Have Not Recognized Medical Monitoring Claims ............................. 31

786612-1

**TABLE OF CONTENTS**
(continued)

Page

M.     Named Plaintiff Frank Saia's Claim Must Be Dismissed Because Massachusetts Requires Plaintiffs Suing For Negligence To Assert A Present Injury .......................................................................................... 32

N.     Named Plaintiff Theresa Ducham's Claim Must Be Dismissed Because Michigan Has Rejected Medical Monitoring Claims ........................................... 34

O.     Named Plaintiff Dora Prince Cannot State A Claim Because Mississippi Law Rejects Claims Based On Future Injury ....................................................... 36

P.     Named Plaintiff Jurhee Bench's Claim Fails Because Missouri Law Would Not Recognize Medical Monitoring Claims Absent An Allegation Of Present Injury ............................................................................................... 37

Q.     Named Plaintiff Kevin Allen Cannot State A Claim For Medical Monitoring Under Montana Law ........................................................................ 39

R.     Named Plaintiff David Scott's Claim Fails Because New Jersey Law Bars Medical Monitoring Claims Involving Products Like Prescription Drugs .......... 40

S.     Named Plaintiff Richard Gaddie's Claim Must Be Dismissed Because North Carolina Has Never Recognized Medical Monitoring Claims .................... 42

T.     Named Plaintiff Jason Ross's Claim Fails Because Ohio Courts Have, At Most, Recognized Medical Monitoring In The Context Of Toxic Torts ............. 43

U.     Named Plaintiffs Mary and Berad Brunch Cannot State A Medical Monitoring Claim Because Oklahoma Has Never Recognized Such Claims ..................................................................................................................... 44

V.     Named Plaintiff Gwendolyn Carr's Claim Must Be Dismissed Because Pennsylvania Has Only Recognized Medical Monitoring For Toxic Tort Cases ....................................................................................................................... 46

W.     Named Plaintiff Shirley Asan's Claim Must Be Dismissed Because Rhode Island Does Not Recognize Medical Monitoring Claims ....................................... 47

X.     Named Plaintiff Barbara Cathey's Claim Must Be Dismissed Because Tennessee Law Requires Medical Monitoring Plaintiffs To Allege A Personal Injury ....................................................................................................... 48

Y.     Named Plaintiff Linda Powell Cannot State A Claim For Medical Monitoring Under Texas Law ............................................................................... 50

Z.     Named Plaintiff Sara Cheeseman's Claim Fails Because Vermont Has Never Recognized No Injury Or Medical Monitoring Claims. ............................ 51

AA.     Named Plaintiff Ken Yohe's Claim Must Be Dismissed Because Washington Law Bars Medical Monitoring Claims Absent An Allegation Of Present Injury .............................................................................................. 52

**TABLE OF CONTENTS**
(continued)

Page

BB.   Named Plaintiff Terry Kelly's Claim Must Be Dismissed For Failure To Properly Plead The Elements For Medical Monitoring Under West Virginia Law ...................................................................................... 54

CC.   Named Plaintiff James Petrasek Cannot State A Claim Because Wisconsin Law Bars Tort Claims Absent An Allegation Of Present Injury .......................... 55

DD.   Named Plaintiff Jim Pope Cannot State A Claim For Medical Monitoring Under Wyoming Law ....................................................................................... 56

III.   ALLEGATIONS RELEVANT TO THE UNREPRESENTED CLASSES SHOULD BE STRICKEN ........................................................................................... 57

CONCLUSION ........................................................................................... 59

786612-1

# TABLE OF AUTHORITIES

**Pages(s)**

## CASES

*Alegria v. Payonk,*
    No. 12858, 1980 Ida. LEXIS 529 (Idaho 1980) ................................................. 24

*Anchor Packing Co. v. Grimshaw,*
    692 A.2d 5 (Md. Ct. Spec. App. 1994) ............................................................... 31

*Anderson v. Bauer,*
    681 P.2d 1316 (Wyo. 1984) ......................................................................... 56, 57

*Anderson v. Piedmont Aviation, Inc.,*
    68 F. Supp. 2d 682 (M.D.N.C. 1999) ................................................................ 10

*Anglado v. Leaf River Forest Prods.,*
    716 So. 2d 543 (Miss. 1998) ............................................................................ 37

*Audio Odyssey, Ltd. v. United States,*
    373 F.3d 870 (8th Cir. 2004) ........................................................................... 28

*Ayers v. Township of Jackson,*
    525 A.2d 287 (N.J. 1987) ........................................................................... 16, 46

*Badillo v. Am. Brands, Inc.,*
    16 P.3d 435 (Nev. 2001) ............................................................................ 12, 13

*Beanal v. Freeport-McMoran, Inc.,*
    197 F.3d 161 (5th Cir. 1999) .................................................................. 23, 24, 55

*BellSouth Telcomms. Inc. v. W.R. Grace & Co.,*
    77 F.3d 603 (2d Cir. 1996) ......................................................................... 21, 22

*Bennett v. Mallinckrodt, Inc.,*
    698 S.W.2d 854 (Mo. Ct. App. 1985) ........................................................... 38, 39

*Bernier v. Raymark Indus., Inc.,*
    516 A.2d 534 (Me. 1986) ............................................................................ 30, 31

*Betts v. Manville Pers. Injury Settlement Trust,*
    588 N.E.2d 1193 (Ill. App. Ct. 1992) ................................................................ 26

*Blagrove v. JB Mech.,*
    934 P.2d 1273 (Wyo. 1997) .............................................................................. 57

*Boryla v. Pash,*
    960 P.2d 123 (Colo. 1998) .......................................................................... 19, 20

*Bower v. Westinghouse Elec. Corp.,*
    522 S.E.2d 424 (W. Va. 1999) ......................................................................... 54

*Bowerman v. United Illuminating,*
    No. X04CV 940115436S, 1998 Conn. Super. LEXIS 3575 (Conn. Super. Ct.
    Dec. 15, 1998) ............................................................................................... 21

*Bryant v. Eagan,*
    364 S.E.2d 704 (N.C. Ct. App. 1988) ................................................................ 42

*Burkhart v. Harrod,*
    755 P.2d 759 (Wash. 1988) .............................................................................. 53

*Burleson v. Liggett Group, Inc.,*
    111 F. Supp. 2d 825 (E.D. Tex. 2000) ........................................................ 7, 8, 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Burns v. Jaquays Mining Corp.,*
752 P.2d 28 (Ariz. Ct. App. 1987) .......................................................................... passim

*Burton v. R.J. Reynolds Tobacco Co.,*
884 F. Supp. 1515 (D. Kan. 1995) .......................................................................... 29, 30

*Cannon v. Sears, Roebuck & Co.,*
374 N.E.2d 582 (Mass. 1978) .................................................................................. 33

*Cargill, Inc. v. Offshore Logistics, Inc.,*
615 F.2d 212 (5th Cir. 1980) ................................................................................... 14

*Cavanaugh v. Abbott Labs.,*
496 A.2d 154 (Vt. 1985) .......................................................................................... 52

*City of Chicago v. Beretta U.S.A. Corp.,*
821 N.E.2d 1099 (Ill. 2004) ..................................................................................... 27

*City of Philadelphia v. Beretta U.S.A. Corp.,*
277 F.3d 415 (3d Cir. 2002) ..................................................................................... 14

*City of Tyler v. Likes,*
962 S.W.2d 489 (Tex. 1997) .................................................................................... 50

*Clark v. Int'l Harvester Co.,*
581 P.2d 784 (Idaho 1978) ...................................................................................... 24

*Coker v. DaimlerChrysler Corp.,*
No. COA04-523, 2005 N.C. App. LEXIS 1792 (N.C. Ct. App. Ct. Aug. 16,
2005) ........................................................................................................................ 42

*Congdon v. Taggart Bros., Inc.,*
571 A.2d 656 (Vt. 1989) .......................................................................................... 51

*Cook v. Rockwell Int'l Corp.,*
755 F. Supp. 1468 (D. Colo. 1991) .......................................................................... 20

*Cott v. Peppermint Twist Mgmt. Co.,*
856 P.2d 906 (Kan. 1993) ........................................................................................ 29

*Curley v. AMR Corp.,*
153 F.3d 5 (2d Cir. 1998) ......................................................................................... 9

*Davis v. Casper,*
710 P.2d 827 (Wyo. 1985) ....................................................................................... 56

*Davis v. Moran,*
735 P.2d 1014 (Idaho 1987) ..................................................................................... 25

*Day v. NLO,*
851 F. Supp. 869 (S.D. Ohio 1994) ......................................................................... 43

*Dennis v. ICL, Inc.,*
957 F. Supp. 376 (D. Conn. 1997) ........................................................................... 21

*Dhamer v. Bristol-Myers Squibb Co.,*
183 F.R.D. 520 (N.D. Ill. 1998) ............................................................................... 11

*Dodge v. Cotter Corp.,*
203 F.3d 1190 (10th Cir. 2000) ............................................................................... 19

*Duncan v. Northwest Airlines, Inc.,*
203 F.R.D. 601 (W.D. Wash. 2001) ......................................................................... 52

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Edmonds v. Cytology Servs.*,
681 A.2d 546 (Md. Ct. Spec. App. 1996) ................................................................. 32

*Elam v. Alcolac, Inc.*,
765 S.W.2d 42 (Mo. Ct. App. 1988) .......................................................................... 37

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ....................................................................................................... 14

*Flast v. Cohen*,
392 U.S. 83 (1968) ....................................................................................................... 59

*Fojut v. Stafl*,
569 N.W.2d 737 (Wis. Ct. App. 1997) ..................................................................... 56

*Fox v. Cohen*,
406 N.E.2d 178 (Ill. App. Ct. 1980) ......................................................................... 26

*Friends For All Children, Inc. v. Lockheed Aircraft Corp.*,
746 F.2d 816 (D.C. Cir. 1984) .................................................................................. 22

*Galbraith v. Vangas, Inc.*,
655 P.2d 119 (Idaho Ct. App. 1982) ......................................................................... 24

*Garcia v. Gen. Motors Corp.*,
990 P.2d 1069 (Ariz. Ct. App. 1999) .......................................................................... 6

*Garcia v. Wyeth-Ayerst Labs.*,
385 F.3d 961 (6th Cir. 2004) ..................................................................................... 34

*Garrett v. Overman*,
404 S.E.2d 882 (N.C. Ct. App. 1991) ....................................................................... 42

*Gbye v. Gbye*,
503 S.E.2d 434 (N.C. Ct. App. 1998) ....................................................................... 10

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ..................................................................................................... 58

*Gleason v. Town of Bolton*,
No. 99-1194, 2002 Mass. Super. LEXIS 208 (Mass. Super. Ct. May 21, 2002) .............. 32

*Goodall v. United Illuminating*,
No. X04CV 950115437S, 1998 Conn. Super. LEXIS 3584 (Conn. Super. Ct.
Dec. 15, 1998) ............................................................................................................... 21

*Haliw v. Sterling Heights*,
627 N.W.2d 581 (Mich. 2001) .................................................................................. 35

*Hansen v. A.H. Robins, Inc.*,
335 N.W.2d 576 (Wis. 1983) ..................................................................................... 56

*Hansen v. Mountain Fuel Supply*,
858 P.2d 970 (Utah 1993) .......................................................................................... 47

*Harp v. Ill. Cent. Gulf R.R. Co.*,
370 N.E.2d 826 (Ill. Ct. App. 1977) ......................................................................... 26

*Hawley v. Green*,
788 P.2d 1321 (Idaho 1990) ...................................................................................... 25

*Hennekens v. Hoerl*,
465 N.W.2d 812 (Wis. 1991) ..................................................................................... 55

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Henry v. Dow Chem. Co.,*
No. 125205, 2005 Mich. LEXIS 1131 (Mich. July 13, 2005) ....................................... 34, 35

*Holifield v. Setco Indus., Inc.,*
168 N.W.2d 177 (Wis. 1969) .................................................................................................... 56

*Hudson v. West,*
No. 99-598, 2000 Mont. LEXIS 185 (Mont. July 18, 2000) ................................................. 39

*Humes v. Clinton,*
792 P.2d 1032 (Kan. 1990) ...................................................................................................... 29

*In re Air Crash Disaster,*
644 F.2d 594 (7th Cir. 1981) ...................................................................................................... 8

*In re Baycol Prods. Liab. Litig.,*
218 F.R.D. 197 (D. Minn. 2003) ................................................................................................. 4

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.,*
288 F.3d 1012 (7th Cir. 2002) .............................................................................................. 4, 12

*In re Consol. Parlodel Litig.,*
22 F. Supp. 2d 320 (D.N.J. 1998) ............................................................................................... 9

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
174 F.R.D. 332 (D.N.J. 1997) ................................................................................................ 8, 9

*In re Norplant Contraceptive Prods. Liab. Litig.,*
215 F. Supp. 2d 795 (E.D. Tex. 2002) ....................................................................................... 8

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
MDL No. 1014, 1995 U.S. Dist. LEXIS 22042 (E.D. Pa. Feb. 22, 1995) ............................ 17

*In re Propulsid Prods. Liab. Litig.,*
208 F.R.D. 133 (E.D. La. 2002) ................................................................................................. 4

*In re Rezulin Prods. Liab. Litig.,*
210 F.R.D. 61 (S.D.N.Y. 2002) ....................................................................................... 4, 9, 11

*Jackson v. State,*
956 P.2d 35 (Mont. 1998) ........................................................................................................ 39

*Johnson v. Univ. Hosps. of Cleveland,*
540 N.E.2d 1370 (Ohio 1989) .................................................................................................. 44

*Jones v. Brush Wellman, Inc.,*
Case No. 1:00 CV 0777, 2000 U.S. Dist. LEXIS 21897 (N.D. Ohio Sept. 13,
2000) ....................................................................................................................... 6, 7, 8, 49, 50

*Justice v. Thomas,*
CA04-493, 2005 Ark. App. LEXIS 79 (Ark. Ct. App. Jan. 26, 2005) ................................. 18

*Kelley v. Cowesett Hills Assocs.,*
768 A.2d 425 (R.I. 2001) .......................................................................................................... 48

*Kempinski v. Mass. Tpk. Auth.,*
No. 99-12773, 2000 Mass. Super. LEXIS 66 (Mass. Super. Ct. Jan 6, 2000) ...................... 32

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487 (1941) ..................................................................................................................... 4

*Koker v. Armstrong Cork, Inc.,*
804 P.2d 659 (Wash. Ct. App. 1991) ....................................................................................... 52

### TABLE OF AUTHORITIES
(continued)

Page(s)

*Larry James Oldsmobile-Pontiac-GMC Truck Co. v. Gen. Motors Corp.,*
175 F.R.D. 234 (N.D. Miss. 1997) ................................................................. 58

*Larson v. Johns-Manville Sales Corp.,*
399 N.W.2d 1 (Mich. 1986) ........................................................................... 35

*Laxton v. Orkin Exterminating Co.,*
639 S.W.2d 431 (Tenn. 1982) ........................................................................ 49

*Leaf River Forest Prods. v. Ferguson,*
662 So. 2d 648 (Miss. 1995) .......................................................................... 36

*Lewis v. Bayer AG,*
66 Pa. D. & C.4th 470 (Pa. Ct. Com. 2004) ............................................... 7, 47

*Lewis v. Lead Indus. Ass'n,*
793 N.E.2d 869 (Ill. App. Ct. 2003) .............................................................. 26

*Mason v. Jackson,*
914 S.W.2d 728 (Ark. 1996) .......................................................................... 18

*Mathis v. Bess,*
692 F. Supp. 248 (S.D.N.Y. 1988) ................................................................ 59

*May v. ERA Landmark Real Estate of Bozeman,*
15 P.3d 1179 (Mont. 2000) ........................................................................... 39

*MBA Commercial Constr., Inc. v. Roy J. Hannaford Co., Inc.,*
818 P.2d 469 (Okla. 1991) ............................................................................. 45

*McLaughlin v. Superintending Sch. Comm.,*
832 A.2d 782 (Me. 2003) ............................................................................... 30

*Metro-North Commuter R.R. Co. v. Buckley,*
521 U.S. 424 (1997) ................................................................................. 12, 13

*Mile Hi Concrete, Inc. v. Matz,*
842 P.2d 198 (Colo. 1992) ............................................................................. 19

*Mills v. State Sales, Inc.,*
824 A.2d 461 (R.I. 2003) ............................................................................... 48

*Mooney v. Wood/Chuck Chipper Corp.,*
1:99CV207-T, 2000 U.S. Dist. LEXIS 21293 (W.D.N.C. Jan. 5, 2000) ......... 10

*Morgan v. United Airlines, Inc.,*
750 F. Supp. 1046 (D. Colo. 1990) ................................................................. 6

*Morris v. Am. Motors Corp.,*
459 A.2d 968 (Vt. 1982) ........................................................................... 51, 52

*Morrissey v. Eli Lilly & Co.,*
394 N.E.2d 1369 (Ill. App. Ct. 1979) ....................................................... 26, 27

*Najarian v. National Amusements, Inc.,*
768 A.2d 1253 (R.I. 2001) ............................................................................... 6

*Nelson v. Todd's Ltd.,*
426 N.W.2d 120 (Iowa 1988) ........................................................................ 28

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ......................................................................................... 2

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Okla. Gas & Elec. Co. v. McGraw Edison Co.,*
  834 P.2d 980 (Okla. 1992) ................................................................................................ 45

*Owens-Illinois v. Armstrong,*
  591 A.2d 544 (Md. Ct. Spec. App. 1991) .......................................................................... 31

*Palmer v. Combined Ins. Co. of Am.,*
  No. 02-C-1764, 2003 U.S. Dist. LEXIS 2534 (N.D. Ill. Feb. 24, 2003) ........................... 58

*Parker v. Brush Wellman, Inc.,*
  1:04-CV-0606-RWS, 2005 U.S. Dist. LEXIS 6342 (N.D. Ga. Mar. 25, 2005) ................... 12

*Paul v. Skemp,*
  625 N.W.2d 860 (Wis. 2001) ...................................................................................... 55, 56

*Paz v. Brush Engineered Materials, Inc.,*
  351 F. Supp. 2d 580 (S.D. Miss. 2005) ............................................................................. 36

*Perez v. Metabolife, Int'l, Inc.,*
  218 F.R.D. 262 (S.D. Fla. 2003) ........................................................................................ 14

*Perrotti v. Gonicberg,*
  No. 2004-138, 2005 R.I. LEXIS 141 (R.I. July 7, 2005) ................................................... 48

*Petito v. A.H. Robins Co.,*
  750 So. 2d 103 (Fla. Dist. Ct. App. 2000) ........................................................................ 23

*Philip Morris, Inc. v. Angeletti,*
  752 A.2d 200 (Md. 2000) .......................................................................................... 11, 31

*Porter Hayden Co. v. Bullinger,*
  713 A.2d 962 (Md. 1998) .................................................................................................. 31

*Porter v. Merck & Co.,*
  Case No. 04-CV-586 (Kan. Dist. Ct. Aug. 19, 2005) ........................................................ 29

*Potts v. Celotex Corp.,*
  796 S.W.2d 678 (Tenn. 1990) ........................................................................................... 49

*Prescott v. Leaf River Forest Prods.,*
  740 So. 2d 301 (Miss. 1999) ............................................................................................. 37

*Pustejovsky v. Rapid-Am. Corp.,*
  35 S.W.3d 643 (Tex. 2000) ............................................................................................... 50

*Redland Soccer Club, Inc. v. Dep't of the Army,*
  696 A.2d 137 (Pa. 1996) ............................................................................................. 46, 47

*Richardson v. J.C. Penney Co.,*
  649 P.2d 565 (Okla. Ct. App. 1982) ................................................................................. 45

*Robinson v. Leahy,*
  73 F.R.D. 109 (N.D. Ill. 1977) .......................................................................................... 59

*Ruden v. Jenk,*
  543 N.W.2d 605 (Iowa 1996) ............................................................................................ 28

*Selwyn v. Ward,*
  No. 2002-637, 2005 R.I. LEXIS 139 (R.I. July 7, 2005) ................................................... 47

*Simmons v. Pacor Inc.,*
  674 A.2d 232 (Pa. 1996) ................................................................................................... 47

786612-1

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Simons v. Laramie County Sch. Dist.*,
741 P.2d 1116 (Wyo. 1987) ........................................................................ 57

*Sinclair v. Merck & Co., Inc.*,
No. ATL-L-371-04-MT, 2005 WL 1278364 (N.J. Super. Ct. Law Div. May
16, 2005) ................................................................................................ passim

*Slaymaker v. Archer-Daniels-Midland Co.*,
540 N.W.2d 459 (Iowa Ct. App. 1995) ...................................................... 27

*Sloan v. Owen*,
579 P.2d 812 (Okla. 1977) ......................................................................... 45

*Sosna v. Iowa*,
419 U.S. 393 (1975) ................................................................................... 59

*Springfield Hydroelectric Co. v. Copp*,
779 A.2d 67 (Vt. 2001) .............................................................................. 51

*Sterling v. Velsicol Chem. Corp.*,
855 F.2d 1188 (6th Cir. 1988) ................................................................... 49

*Stoltz v. Burton*,
316 S.E.2d 646 (N.C. Ct. App. 1984) ........................................................ 42

*Sutton v. St. Jude Med. S.C., Inc.*,
No. 04-5211, 2005 U.S. App. LEXIS 18013 (6th Cir. Aug. 23 2005) ....... 49

*Swan v. Stoneman*,
635 F.2d 97 (2d Cir. 1980) ......................................................................... 59

*Taylor v. Smithkline Beecham*,
658 N.W.2d 127 (Mich. 2003) ................................................................... 34

*Temple-Inland Prods. Corp. v. Carter*,
993 S.W.2d 88 (Tex. 1998) ........................................................................ 51

*Theer v. Philip Carey Co.*,
628 A.2d 724 (N.J. 1993) ................................................................ 3, 40, 41

*Thomas v. FAG Bearing Corp.*,
846 F. Supp. 1400 (W.D. Mo. 1994). ........................................................ 37

*Tomlinson v. Love's Country Stores*,
854 P.2d 910 (Okla. 1993) ......................................................................... 45

*Trimble v. Asarco, Inc.*,
232 F.3d 946 (8th Cir. 2000) ..................................................................... 14

*Urman v. S. Boston Sav. Bank*,
674 N.E.2d 1078 (Mass. 1997) .................................................................. 33

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ..................................................................................... 4

*Veazey v. Doremus*,
510 A.2d 1187 (1986) ................................................................................... 8

*Vennes v. Miller*,
954 P.2d 736 (Mont. 1998) ........................................................................ 39

*W. Va. ex rel. Chemtall Inc. v. Madden*,
607 S.E.2d 772 (W. Va. 2004) ............................................................ 10, 11

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Walker v. S. Cent. Bell Tel. Co.,*
  904 F.2d 275 (5th Cir. 1990) ................................................................. 24, 55

*Wallis v. Ford Motor Co.,*
  No. 04-506, 2005 Ark. LEXIS 301 (Ark. May 12, 2005)............................... 18

*Willett v. Baxter Int'l, Inc.,*
  929 F.2d 1094 (5th Cir. 1991) .............................................................. 13, 14

*Williams v. Ford Motor Co.,*
  342 A.2d 712 (Me. 1975)............................................................................ 30

*Wilson v. Brush Wellman, Inc.,*
  817 N.E.2d 59 (Ohio 2004) ........................................................................ 43

*Witherspoon v. Philip Morris, Inc.,*
  964 F. Supp. 455 (D.D.C. 1997)................................................................. 21

*Zehel-Miller v. AstraZenaca Pharms. LP,*
  . 223 F.R.D. 659 (M.D. Fla. 2004)................................................................ 11

### STATUTES & RULES

28 U.S.C. § 1407.......................................................................................... 5

Fed R. Civ. P. 8........................................................................................... 54

Fed R. Civ. P. 23 ..................................................................................... 1, 58

Mich. Comp. Law § 600.2946 ..................................................................... 33

### OTHER AUTHORITIES

1-16 NORTH CAROLINA LAW OF TORTS § 16.90......................................... 42

NEWBERG ON CLASS ACTIONS § 2:9 (4th ed. 2005)................................... 59

PROSSER AND KEETON, TORTS (5th ed)........................................................ 12

RESTATEMENT (SECOND) OF CONFLICT OF LAWS.................................... 5, 6

In their VIOXX® Medical Monitoring Master Class Action Complaint ("MM Master Complaint"), the named plaintiffs assert claims for "medical monitoring based upon defendant's negligence" (Count I), even though they do not allege that they have suffered any injury (physical or economic) from taking VIOXX®. As set forth below, the named plaintiffs' claims are governed by the laws of 29 states and the District of Columbia, the majority of which do not recognize – or have explicitly rejected – medical monitoring claims under these circumstances. And even as to those states that do recognize such a cause of action in certain situations, plaintiffs fail to satisfy the pleading requirements for stating a medical monitoring claim. The Medical Monitoring Master Complaint therefore should be dismissed in its entirety.

## BACKGROUND

The Medical Monitoring Master Complaint is brought by 31 individuals who allege that they took VIOXX, a prescription pain medication manufactured by Merck, prior to its voluntary withdrawal in September 2004. Plaintiffs seek certification of a nationwide medical monitoring class, claiming that Merck was negligent in failing to adequately warn of the drug's side effects and that usage of the drug "carries a significantly increased risk of" heart disease. (MM Master Compl. ¶ 172(c).)  In seeking this relief, plaintiffs do not allege that they have been diagnosed with any present physical injury or condition caused by the ingestion of VIOXX. Rather, plaintiffs allege only that they have a "significantly increased risk of having suffered an unrecognized myocardial infarction." (*Id.* ¶ 144.) Indeed, plaintiffs clearly state that they only seek to represent classes of persons "who have *not* been diagnosed with any injury causally associated with VIOXX." (*Id.* ¶ 6 (emphasis added).)

The named plaintiffs seek to establish a nationwide class under any and all subparts of Fed. R. Civ. P. 23, and they ask the Court to apply New Jersey substantive law to all of their

claims and those of all putative class members. (*Id.* ¶ 150.) Failing that, plaintiffs seek to establish a number of single-state classes, proposing a novel procedure by which the cases would officially be "remanded" to their transferor federal district courts, after which this Court would nonetheless sit "by ad hoc designation" in those various transferor districts to resolve class certification issues. (*Id.* ¶ 7.)[1] While plaintiffs' class proposals are seriously flawed, the question before the Court at this point is more fundamental: whether the named plaintiffs, as a matter of law, have pleaded valid causes of action against the defendant. If they have not, further proceedings on class certification and other issues will be unnecessary. *See, e.g., O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

For purposes of deciding the legal viability of plaintiffs' claims, the Court must first determine what state's laws should apply to each plaintiff's allegations. Plaintiffs ask the Court to simply apply New Jersey law to all the plaintiffs' claims regardless of their state of residence. As discussed below, plaintiffs are wrong in suggesting that application of New Jersey substantive law to each of their claims would be appropriate. However, if they were correct and New Jersey law did apply to all of plaintiffs' claims, application of New Jersey law would mandate dismissal of this action.

Earlier this year, Judge Higbee, who is presiding over VIOXX cases in New Jersey state court, dismissed a similar class action that sought to certify a nationwide medical monitoring class. *See Sinclair v. Merck & Co., Inc.,* No. ATL-L-371-04-MT, 2005 WL 1278364 (N.J.

---

[1]      In proposing this odd procedural approach, plaintiffs appear to be angling for application of class certification law from other judicial circuits and review of any decisions by courts of appeal other than the Fifth Circuit.

Super. Ct. Law Div. May 16, 2005). In rejecting the plaintiffs' claims, the court concluded that under New Jersey law, medical surveillance was inappropriate absent any actual injury to the plaintiffs. According to Judge Higbee, New Jersey "has allowed a cause of action for medical monitoring in only limited types of cases," such as toxic torts. *Id.* at *8. The court differentiated the VIOXX claims from toxic tort cases on several grounds. First, the alleged injuries that VIOXX causes are more "direct, immediate and observable" than "the latency period of cancer causing agents involved in toxic torts." *Id.* at *7. Second, VIOXX plaintiffs do not face some of the hurdles to proving causation that confront most toxic tort plaintiffs, because they were prescribed VIOXX by medical professionals, they know how long they took VIOXX and the dosages of VIOXX that they took, and they are likely to be aware of the alleged risks associated with the medication because of the much publicized withdrawal of VIOXX from the market. *Id.* at *8. Therefore, the court reasoned, "plaintiff would not have the same causation issues and the lack of alternative relief suffered by victims of a toxic tort." *Id. See also Theer v. Philip Carey Co.*, 628 A.2d 724, 733 (N.J. 1993) (medical monitoring not available in asbestos case absent present injury).

Dismissal of the named plaintiffs' claims is also required if they are analyzed – as they should be – against the proper governing laws of each plaintiff's state of residence.[2] The overwhelming majority of states have never recognized medical monitoring, either as a separate cause of action or as a viable tort remedy absent an allegation of present injury. Some of these states have explicitly rejected efforts to establish medical monitoring as an avenue of relief, while others have simply not had occasion to address the question. In the latter states, there is no

---

[2]     As explained below, plaintiffs' claims are analyzed under the laws of Arizona, Arkansas, Colorado, Connecticut, the District of Columbia, Florida, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Montana, New Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

basis for this Court to predict that they would adopt this novel form of relief; to the contrary, adherence to the principle of "[n]o injury, no tort," *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002), is likely to defeat any efforts to create new liability. Moreover, almost all of the states that permit some form of medical monitoring absent a showing of personal injury confine such claims to cases involving toxic torts. In sum, because the named plaintiffs have not adequately stated a claim under any of the governing states' laws, the Medical Monitoring Master Complaint should be dismissed in its entirety.[3]

## ARGUMENT

I.   **PLAINTIFFS' CLAIMS ARE GOVERNED BY THE LAWS OF THE STATES WHERE THEY WERE PRESCRIBED, PURCHASED AND INGESTED VIOXX.**

Federal courts exercising diversity jurisdiction must apply state choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In cases transferred pursuant to 28 U.S.C. § 1407, the transferee court must apply the substantive state law, including the choice-of-law rules, that would have applied in the transferor court. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Accordingly, the law applicable to each named plaintiff's claims must be determined by reference to the choice-of-law rules employed in the state in which that plaintiff originally filed suit.[4] In this case, the named plaintiffs' individual actions were first filed in Arizona, Arkansas, Colorado, Connecticut, the District of Columbia, Florida, Idaho,

---

[3]      This memorandum addresses Count I of the Complaint, which contains plaintiffs' claim for "Medical Monitoring Based Upon Defendant's Negligence." Count II of the Complaint, titled a "Request for Injunctive and Equitable Relief – Emergency Notice," is not a separate cause of action; rather, it merely seeks a form of relief and is thus derivative of plaintiffs' first count for medical monitoring based on alleged negligence. In effect, plaintiffs seek the provision of "emergency notice" as another remedy for Merck's alleged negligence as pled in Count I. Because plaintiffs fail to state a claim for Count I, Count II must be dismissed as well.

[4]      Merck believes that the Court could apply the choice-of-law rules of Louisiana by virtue of the filing of the Master Complaint here. *See, e.g., In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (applying forum choice-of-law principles where master complaint was filed); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70 (S.D.N.Y. 2002). However, in recognition of the fact that this Court has previously rejected a similar argument in *In re Propulsid Products Liability Litigation*, 208 F.R.D. 133 (E.D. La. 2002), Merck will discuss the choice-of-law rules of the states of the various transferor courts.

Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Mississippi, Missouri, Montana, New

Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas,

Vermont, Washington, West Virginia, Wisconsin, and Wyoming.[5]  Therefore, the question of

which state's laws must be applied to each plaintiff's individual claims will be determined under

the choice-of-law regimes adopted in those states.

The states have adopted a wide array of approaches to choice-of-law problems in

negligence cases.  Three main doctrines predominate – (a) the Second Restatement or "most

significant relationship" test, (b) the "governmental interests" test, and (c) the *lex loci delicti* test.

However, some states have adopted modified or hybrid versions of these approaches, and others

have employed different approaches entirely.  (*See* Choice-of-Law Table, attached as Appendix

A, charting choice-of-law doctrines adopted by relevant states for tort claims.)  Despite the

complexity of applying these varying analytical approaches, they all have one thing in common:

none of these states has embraced a rule requiring application of the law of the state in which the

defendant's headquarters is located.  To the contrary, each set of choice-of-law principles points

toward application of the laws of the states in which each named plaintiff resides and was

allegedly injured.

*The Restatement.*  For claims arising in tort (including medical monitoring claims

grounded in negligence), the Restatement directs courts to consider the following factors: (1)

where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the

parties; and (4) where the relationship of the parties is centered.  RESTATEMENT (SECOND) OF

---

[5]     For several of the named plaintiffs, only the docket number for this Court is identified in the Complaint despite the fact that their cases were transferred from other courts.  (*See Gray*, No. 05-294 (D. Conn.); *Houston*, No. 04-2188 (D.D.C.); *Lane*, No. 05-202 (M.D. Fla.); *Ivory*, No. 04-7218 (N.D. Ill.); *Hunter*, No. 04-2518 (D. Kan.); *Saia*, No. 04-12166 (D. Mass.); *Bench*, No. 04-1447 (E.D. Mo.); *Carr*, No. 04cv4900 (E.D. Pa.); *Cathey*, No. 04-125 (M.D. Tenn.); *Cheeseman*, No. 04-261 (D. Vt.); *Yohe*, No. 04-2340 (W.D. Wash.).)  As noted above, the transferee court should apply the substantive state law, including the choice-of-law rules, that would have applied in the transferor court.

CONFLICT OF LAWS § 145 (1971). In addition to the more generalized considerations, the Restatement explicitly provides that in personal injury actions, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971). *See also Morgan v. United Airlines, Inc.*, 750 F. Supp. 1046, 1055 (D. Colo. 1990) (same); *Najarian v. Nat'l Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001) (same); *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1076 (Ariz. Ct. App. 1999) ("Arizona courts traditionally have accorded great weight in the conflicts analysis to the domicile of the tort victim in a personal injury case" unless place of injury is fortuitous). Although plaintiffs do not allege present personal injury, this guidance is nonetheless applicable because their sole complaint is that they are at an increased risk of suffering a personal injury. (MM Master Compl. ¶ 174.)

Informed by these principles, courts applying the Restatement approach would select the laws of the states in which each named plaintiff ingested VIOXX and was allegedly injured. For instance, in *Jones v. Brush Wellman, Inc.*, 2000 U.S. Dist. LEXIS 21897 (N.D. Ohio 2000), the court applied Ohio's hybrid Restatement test and dismissed product liability claims seeking, *inter alia*, medical monitoring against an Ohio defendant. The court concluded that because the alleged exposure occurred in Tennessee and plaintiffs were all residents of Tennessee, Tennessee law would apply. *Id.* at *11-13. "Even assuming defendant's alleged misconduct occurred in Ohio and recognizing Ohio's interest in determining the manufacture and sale of defective products, Ohio's interests in this case are not sufficient to overcome the presumption that [the law of the place of injury] controls." *Id.* at *13.

In a Pennsylvania case, a court applied Pennsylvania's hybrid Restatement approach to claims asserted on behalf of both injured and uninjured drug users. The court concluded that the applicable law in a consumer fraud and unjust enrichment action was "the state law [] in which the class member resides, was prescribed and ingested [the drug] and where the injury occurred." *Lewis v. Bayer AG*, 66 Pa. D. & C.4th 470, 496 (Pa. Ct. Com. Pl. 2004). Noting that Pennsylvania's only contact was that "the company does business in Pennsylvania," the court concluded that "[t]he contacts of the states where the putative class resides are more substantial and have a stronger interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders, which is the conduct which gave rise to the class members' claims." *Id.*

Similarly, in *Burleson v. Liggett Group, Inc.*, 111 F. Supp. 2d 825, 830 (E.D. Tex. 2000), the court applied Texas' Restatement approach to claims of fraud and negligence against a tobacco company. Analyzing the relevant contacts, the court determined that Texas law applied because plaintiffs were residents of Texas who bought and used defendant's products and were injured in Texas. *Id.* at 829. Moreover, "[i]n a products liability action, Texas' strong interest in protecting its citizens from defective products and in regulating the conduct of corporations that have business operations in the state will generally be in favor of applying Texas law." *Id.* The court rejected the argument that the law of defendants' home states should apply:

> While the defendants allegedly made the decision to market cigarettes and conceal their harmful effects in other states, the plaintiffs were Texas residents and injured in Texas by the actions of the defendants. Further the relationship between the parties arose in Texas. A product manufacturer distributing his products in Texas to Texas residents would expect Texas law to apply to the sale and product.

*Id.* at 830.

Likewise in this instance, the named plaintiffs presumably were prescribed and ingested VIOXX in the states in which they reside; their Complaint does not suggest otherwise. Accordingly, the most important and often determinative contact, the place of the injury, is found in their states of residence. In addition, the parties' relationship is centered in the states in which the named plaintiffs were prescribed, purchased and ingested VIOXX. The place of Merck's domicile simply does not outweigh these more significant factors. Accordingly, the laws of each plaintiff's home state would govern his or her claims.

*Governmental interests.* The same result obtains in states employing a "governmental interests" approach to choice-of-law questions, which requires a court to weigh the interests of the relevant states in having their laws applied to a particular dispute. *See, e.g., Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986). As a general matter, every state has a strong interest in providing a remedy for its own residents' injuries. *See In re Air Crash Disaster*, 644 F.2d 594, 612-13 (7th Cir. 1981). For example, in *In re Norplant Contraceptive Products Liability Litigation*, 215 F. Supp. 2d 795 (E.D. Tex. 2002), New Jersey choice-of-law rules dictated that New Jersey law not be applied to non-resident plaintiffs, despite the fact that the defendant drug manufacturer was headquartered here:

> Plaintiffs chose to file in New Jersey and [defendant]'s principal place of business is in New Jersey, but, aside from those two facts, none of the Plaintiffs in this category have any actual connection to New Jersey. New Jersey is neither the place where the conduct causing the injuries occurred nor where the injuries occurred, none of the Plaintiffs reside in New Jersey, and the parties' relationships are not centered in New Jersey. In short, New Jersey has only a slight factual nexus to [this case].

*Id.* at 817.

Likewise, in *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997), the court explained:

> Each plaintiff's home state has an interest in protecting its
> consumers from in-state injuries caused by foreign corporations
> and in delineating the scope of recovery for its citizens under its
> own laws. These interests arise by virtue of each state being the
> place in which plaintiffs reside, or the place in which plaintiffs
> bought and used their allegedly defective [product] or the place
> where plaintiffs' alleged damages occurred.

174 F.R.D. at 348. *See also In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 326 (D.N.J. 1998)

(even though the drug was designed and manufactured in New Jersey, law of each plaintiff's

home state, where prescription drug was marketed and consumed, would apply to the out-of-state

plaintiffs' claims in products liability action).

Similarly, a district court applying New York's governmental interest approach

determined that medical monitoring claims against a New Jersey pharmaceutical company would

be decided under the laws of plaintiffs' home states. *In re Rezulin Prods. Liab. Litig.*, 210

F.R.D. 61 (S.D.N.Y. 2002). The general rule in New York is to apply "the law of the jurisdiction

where the tort occurred . . . because the jurisdiction has the greatest interest in regulating

behavior within its borders." *Id.* at 70 (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir.

1998)). And in New York, "the place where the drug was ingested [is] the location of the tort."

*Id.* Therefore, the court applied the law of each plaintiff's state to their claims, including

medical monitoring, and refused to find that New Jersey law could be applied to the entire class

by virtue of New Jersey's interest as the "manufacturer defendants' home state." *Id.* The other

states maintain interests "in ensuring that [their] own citizens are compensated for their injuries,

that the standards [they] set[] for product sales within [their] borders are complied with and that

the rules [they] establish[] to govern physician and pharmacist conduct are upheld." *Id.* at 70-71.

"These interests simply are not outweighed by New Jersey's interest in regulating the conduct of

its pharmaceutical companies." *Id.* at 71.

The same is true here. The states where plaintiffs were allegedly injured maintain a dominant interest in delineating the liability standards and remedies governing their claims. New Jersey's interest in regulating the conduct of an in-state corporation's out-of-state conduct is not sufficient to overcome these interests. Accordingly, states applying a governmental interest test will choose the laws of the states in which plaintiffs reside.

*Lex Loci Delicti.* Finally, states adopting a *lex loci delicti* approach to choice of law in tort will apply the law of the state in which the asserted injury occurred.[6] In this case, that directive points to the law of the state in which each named plaintiff ingested VIOXX.

In *Mooney v. Wood/Chuck Chipper Corp.*, 1:99CV207-T, 2000 U.S. Dist. LEXIS 21293 (W.D.N.C. Jan. 5, 2000), the court applied the "well settled choice of law rule in North Carolina, *lex loci*," noting that "when the injury giving rise to a negligence or strict liability claim occurs in another state, the law of that state governs resolution of the substantive issues in controversy." *Id.* at *7 (quoting *Gbye v. Gbye*, 503 S.E.2d 434 (N.C. Ct. App. 1998)). Applying this principle, the court found that North Carolina would apply Georgia's substantive products liability law where plaintiff was injured by an allegedly defective product in Georgia. *See also Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 685 (M.D.N.C. 1999) ("North Carolina has long followed the lex loci rule, which applies the substantive law of the state in which the injury occurred.").

Similarly, West Virginia employs the *lex loci delicti* approach to choice of law in tort. In one case, the court reversed certification of a medical monitoring class in part because of an improper choice-of-law analysis. *See W. Va. ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772

---

[6]     As explained in detail below, Merck contends that no named plaintiff suffered any cognizable injury at all. However, for purposes of addressing the *lex loci* doctrine, Merck will treat the state in which each named plaintiff ingested VIOXX as the "place of injury," since that is the law which would govern if plaintiffs had in fact been injured.

(W. Va. 2004).  The trial court had refused to address the choice-of-law problem presented by the class allegations.  The appellate court reversed in part on this basis, finding that because West Virginia is a *lex loci delicti* state, plaintiffs' claims were governed by the laws of the various states of injury, and in the case of a medical monitoring claim, the place of injury is the place of exposure.  *Id.* at 780.  *See also Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230-32 (Md. 2000) (applying lex loci approach to medical monitoring claims, among others).

In this case, there can be no dispute that the place of the alleged injury is the place where each named plaintiff ingested VIOXX, presumably in that plaintiff's state of residence. Accordingly, under this approach, the laws of each named plaintiff's home state governs his or her claims.

* * *

As these cases make clear, regardless of which choice-of-law approach is applied to plaintiffs' claims, the states where plaintiffs reside, and presumably were prescribed, purchased, and ingested VIOXX, governs the substantive law concerning their claims.  *See also Zehel-Miller v. AstraZenaca Pharms., LP*, 223 F.R.D. 659, 663 (M.D. Fla. 2004) (rejecting class certification of medical monitoring claim because the "necessity of applying 'the laws of each of the fifty states to the claims of the putative class'" would be an "insurmountable obstacle to class treatment") (quoting *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 74); *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 532 (N.D. Ill. 1998) (noting that the court would have to "apply the substantive law of the state where the claim of each class member arose and not New Jersey or Illinois law" to plaintiff's medical monitoring claims).  Accordingly, Merck will analyze each named plaintiff's claim under the laws of his or her state of residence.

## II. PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER THE APPLICABLE STATES' LAWS.

Medical monitoring is a "novel" and "drastic" tort because it contravenes the basic principle that a plaintiff cannot state a tort claim absent an allegation of present injury. *Badillo v. Am. Brands, Inc.*, 16 P.3d 435 (Nev. 2001); *Parker v. Brush Wellman, Inc.*, 1:04-CV-0606-RWS, 2005 U.S. Dist. LEXIS 6342 (N.D. Ga. Mar. 25, 2005). As other federal courts have recognized, "[n]o injury, no tort is an ingredient of every state's law." *In re Bridgestone/Firestone Inc.*, 288 F.3d at 1017. *See also Parker*, 2005 U.S. Dist. LEXIS 6342, at *34 n.10 ("providing relief to persons who have suffered no cognizable 'harm' is a *drastic and fundamental departure* from traditional tort doctrine") (emphasis added). Here, plaintiffs request medical monitoring based on Merck's alleged negligence in the formulation and development of VIOXX, even though they do not allege that they have been diagnosed with any injury from taking VIOXX. (*See, e.g.*, MM Master Compl. ¶ 172.) However, the law of negligence in every state clearly requires proof of present injury or damages:

> Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough.

PROSSER AND KEETON, TORTS § 30 at 165 (5th ed.).

The requirement of a present physical injury to person or property serves a number of important ends in our legal system. As the United States Supreme Court recognized in *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1997), allowing plaintiffs without present injuries to pursue medical monitoring claims would siphon away resources from plaintiffs who have been genuinely injured. In *Buckley*, the Supreme Court refused to recognize

a medical monitoring claim under federal law, noting that in the modern world, "tens of millions of individuals *may* have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring," and that allowing such claims would threaten a "flood" of cases "potentially absorbing resources better left available to those more seriously harmed" and "adversely affecting the allocation of scarce medical resources." 521 U.S. at 442 (emphasis added).

The Supreme Court's *Buckley* holding is consistent with a long line of caselaw recognizing that allowing unharmed individuals to seek compensation for the mere *potential* risk of physical or financial injuries that may never materialize would ultimately be harmful to broader consumer interests. The Fifth Circuit discussed that reality in *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094 (5th Cir. 1991). In that case, plaintiffs sought compensation because they were allegedly at risk due to a "potentially fatal" defect in implanted heart valves. *Id.* at 1099. Approximately 19,000 patients had received similar heart valves, but only seventeen individuals' valves had failed. *See id.* at 1096. As Judge John Minor Wisdom explained on behalf of the court, "[t]he damages of the seventeen are presumably incorporated into the price of the product and spread among the nineteen thousand who have purchased the valve." *Id.* at 1100 n.20. But the court concluded that to allow 19,000 individuals, all contending that they are at risk of someday experiencing the malfunction experienced by only a few, to demand relief would be premature and unwise:

> Because [under a regime permitting no injury causes of action] no loss-spreading occurs, the money flows in a circle, from each patient (in the form of a higher price) to the company back to the same patient (in the form of a fear recovery), with a substantial portion of the higher price skimmed off for attorneys' fees. In addition, the higher price will place the product beyond the economic reach of at least some of the patients, forcing them to

> turn to the next best (affordable) alternative.  We see little reason
> to adopt such a system.

*Id.*

As set forth below, the vast majority of states have never recognized medical monitoring as a form of relief at all – let alone allowed medical monitoring claims without a present injury allegation.  Other states have limited its application to very narrow circumstances (*e.g.*, cases involving toxic torts).  In those states that have not squarely decided the issue, it would be inappropriate for this Court to expand the applicable states' laws to recognize plaintiffs' novel cause of action, particularly given the underlying requirement that plaintiffs allege an injury prior to suing in tort.

This Court, sitting in diversity, must analyze whether state law permits the claims plaintiffs assert.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  But "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent."  *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002).  Courts have proceeded with such caution when plaintiffs' requests for medical monitoring relief were not well established under state law.  In *Trimble v. Asarco, Inc.*, 232 F.3d 946 (8th Cir. 2000), the court found "it would be both imprudent and improper" to permit a medical monitoring claim where "recognition of such a cause of action would . . . expand substantive liability under [state] law."  *Id.* at 963.  Another court, in *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003), similarly refused to find that several states recognized medical monitoring in the absence of "authoritative state cases" supporting that result.  *Id.* at 267.  *See also Cargill, Inc. v. Offshore Logistics, Inc.*, 615 F.2d 212, 215 (5th Cir. 1980) (affirming grant of summary judgment against plaintiff because the underlying substantive law of the state did not recognize a cause of action for damages resulting from negligent interference with contractual relations; "It is up to the Supreme Court of

14

Louisiana and not this court to change the substantive law of that state."). The Court should proceed with similar caution in this case.

For these reasons, as set forth in more detail below, the Court should dismiss the claims of all 31 plaintiffs in the Master Complaint.

### A.   Named Plaintiff Wayne Young's Claim Must Be Dismissed Because Arizona Has Only Recognized Medical Monitoring In The Narrow Context Of Toxic Torts.

Plaintiff Young's claim must be dismissed because Arizona law generally requires tort plaintiffs to allege actual injury and has only recognized medical monitoring claims absent a present injury in the narrow context of toxic tort cases. *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33-34 (Ariz. Ct. App. 1987).[7]

The *Burns* case involved residents of a trailer park that was downwind from an asbestos mill. All of the plaintiffs had asbestos fibers in their lungs and damage to their lung tissue, but none were diagnosed with asbestosis. *Id.* at 30. The plaintiffs sought a broad array of damages as well as medical monitoring and the trial court dismissed this claim on summary judgment. An Arizona appeals court affirmed the trial court's holding in part, finding that "subclinical asbestos-related injury" is not "sufficient to constitute the actual loss or damage required to support a cause of action." *Id.* at 29. However, relying on the *Ayers v. Township of Jackson* case from New Jersey, the court reversed the trial court as to plaintiffs' claims for medical surveillance and held that establishment of a fund to pay for medical surveillance would be appropriate. *Id.* at 33-34.

In allowing establishment of a medical monitoring fund, the Arizona court determined, relying on *Ayers*, that "when evidence shows through reliable expert testimony predicated on the

---

[7]      The Arizona Supreme Court has never ruled on the propriety of medical monitoring claims.

significance and extent of exposure . . . the toxicity of [the contaminant], the seriousness of the diseases for which the individuals are at risk, the relative increase in the chance of onset of the disease in those exposed and the value of early diagnosis, . . . surveillance to monitor the effects of exposure to *toxic chemicals* is reasonable and necessary, and its cost is a compensable item of damages." *Id.* at 33 (internal quotations omitted) (emphasis added).  The court found that medical monitoring was justified for toxic torts in light of the difficulties in proving causation "where the disease is manifested years after exposure." *Id.*  Moreover, providing such a remedy in toxic tort cases might deter polluters because it "subjects polluters to significant liability when proof of the causal connection between the tortious conduct and the plaintiffs' exposure to chemicals is likely to be most readily available." *Id.* at 33 (quoting *Ayers v. Twp. of Jackson*, 525 A.2d 287, 312 (N.J. 1987)).

As Judge Higbee in New Jersey recently found in declining to apply the *Ayers* decision to VIOXX cases, none of the circumstances relied on by the *Burns* court are present in a pharmaceutical products liability case, such as this one.  *See Sinclair v. Merck & Co., Inc.*, No. ATL-L-371-04-MT, 2005 WL 1278364 (N.J. Super. Ct. Law Div. May 16, 2005).  First, the injuries allegedly caused by VIOXX are immediate and observable, unlike exposure to latent, cancer-causing carcinogens involved in toxic tort cases.  Second, plaintiffs were prescribed VIOXX by doctors who evaluated their condition before, during, and after taking VIOXX.  Third, plaintiffs face none of the problems in proving causation confronted by toxic tort plaintiffs – they know the chemical composition of VIOXX as well as the exact dosage of VIOXX that they took and duration for which they took it.  In Judge Higbee's words:

> VIOXX® was approved by the Federal Drug Administration and numerous tests have been performed on the drug prior and subsequent to its release in the market.  Millions of documents have been produced in relation to VIOXX® litigation, and many of

these documents contain the information on the science and pharmacological effects of the drug. Additionally, Plaintiffs will have their own doctors who prescribed VIOXX®, to testify as witnesses, to the health of the individual plaintiff before and after taking the drug. The Plaintiffs in this litigation will know exactly how long they took VIOXX® and the dosage. They also know the chemical composition. In a toxic waste site case, the plaintiffs frequently don't know how long they've been exposed to the chemicals, the level of their exposure or even all the chemicals they were exposed to.

*Id.* at *8. Based on these distinctions between toxic tort cases and VIOXX cases, Judge Higbee granted Merck's motion to dismiss. *See also In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1995 U.S. Dist. LEXIS 22042, at *28 (E.D. Pa. Feb. 22, 1995) ("the overwhelming majority of actions where medical monitoring has been found to be an appropriate form of either equitable or legal relief involve exposure to toxic substances"; arguments in support of such relief "cannot be made for medical monitoring relief in products liability cases").

Judge Higbee's reasoning applies equally to plaintiff's claim here, and there is thus every reason to believe that Arizona courts would agree that medical monitoring is inappropriate under these circumstances. Because Arizona law requires tort plaintiffs to allege a present injury and limits medical monitoring absent a present injury to toxic tort cases, named plaintiff Young's claim should be dismissed.

**B.     Named Plaintiff Stoney Walton's Claim Must Be Dismissed Under Arkansas Law Because Arkansas Courts Do Not Recognize A Claim For Medical Monitoring.**

Plaintiff Walton's claim for medical monitoring must be dismissed for several reasons. First and foremost, Arkansas has never recognized medical monitoring as either a separate cause of action or a proper remedy, and there is no good reason to think it would do so. In addition, because Arkansas negligence law requires that a plaintiff suffer an identifiable injury to state an

actionable tort claim, there is even less reason to think Arkansas would permit a medical monitoring claim absent an allegation of present injury.

The Arkansas Supreme Court recently confirmed the necessity of alleging present injury in a common law and statutory fraud case. In *Wallis v. Ford Motor Co.*, No. 04-506, 2005 Ark. LEXIS 301 (Ark. May 12, 2005), plaintiff brought suit on behalf of a putative class of purchasers of an allegedly defective product, despite the fact that he did "not allege any personal injury or property damage caused by the design defect." *Id.* at *2. The court affirmed dismissal of plaintiff's claims, concluding that "actual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself." *Id.* at *24. Absent such damage or injury, plaintiffs have no claim. *Cf. Mason v. Jackson*, 914 S.W.2d 728, 730 (Ark. 1996) ("[t]o establish a prima facie case of negligence, the plaintiff must show that she sustained damages").

The same is true of plaintiff Walton: he has not identified any injury that he suffered, either physical or monetary. Therefore, his tort claim cannot stand, whether the claim asserted is negligence or medical monitoring grounded in negligence. *See also Justice v. Thomas*, CA04-493, 2005 Ark. App. LEXIS 79, at *10-11 (Ark. Ct. App. Jan. 26, 2005) ("it was reasonable for the jury to infer that Justice did not sustain an injury as a result of the accident . . . [and] [i]f the jury could conclude that no injury resulted . . . it would naturally follow that the jury could conclude that Justice was not entitled to damages").

In sum, there is no indication from the Arkansas courts that they would recognize a claim for medical monitoring if presented with the issue. Moreover, in light of Arkansas' strict requirement of demonstrable injury in tort-based actions, it is even more doubtful that they would do so absent an allegation of present injury. Accordingly, Mr. Walton's claim for medical monitoring should be dismissed.

**C.    Named Plaintiff Jan Lagomarsino Cannot State A Claim For Medical Monitoring Because Colorado Has Not Recognized This Form Of Relief.**

Plaintiff Lagomarsino's claim for medical monitoring must be dismissed because Colorado has never recognized this form of non-traditional relief, and it is unlikely that a Colorado court would allow such a claim absent a showing of present injury.

Colorado requires plaintiffs to allege a present injury for causes of action in tort. *See Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 202 n.7 (Colo. 1992) (an element of negligence claim is that the plaintiff "incurred injuries, damages, and losses"). Moreover, under Colorado law, it is unlikely that a plaintiff can recover damages for emotional distress in the absence of "attendant physical injur[ies]." *Boryla v. Pash*, 960 P.2d 123, 127 (Colo. 1998). In *Boryla*, the plaintiff brought a medical malpractice action asserting that her preexisting cancer was misdiagnosed, seeking emotional distress damages related to her fear of cancer. *Id.* at 127. The court permitted the action to proceed, but in so doing, distinguished the case from toxic tort cases.

> Contrary to toxic exposure cases, where the plaintiff has yet to experience the onset of cancer, fear of cancer cases in the medical setting usually involve a negligent misdiagnosis of a patient's existing cancer. In cases where the plaintiff demonstrates that her cancerous condition physically worsened as a result of the delayed diagnosis, the plaintiff has demonstrated a sufficient physical injury to permit the recovery of emotional distress damages. Thus, the usual reservations courts have concerning jury speculation and conjecture in cases involving plaintiffs seeking purely emotional damages are inapplicable in a case such as Boryla's.

*Id.* at 128-29 (citation omitted). It follows from *Boryla* that in cases, like this one, where plaintiffs have not yet experienced any injury, there can be no recovery. *See also Dodge v. Cotter Corp.*, 203 F.3d 1190, 1201-02 (10th Cir. 2000) (refusing to extend *Boryla* to toxic tort context).

Moreover, although a federal court some time ago predicted that Colorado would

recognize a medical monitoring claim for residents near a nuclear weapon plant who claimed exposure to radiation, *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991), no Colorado court has ever granted this form of relief, even in the context of toxic torts. Indeed, the *Cook* court did not base its prediction on anything in Colorado law suggesting an openness to liability in tort in the absence of present injury, but rather on an erroneous perception that "[c]ourts have generally accepted tort claims for medical monitoring." *Id.* As clearly demonstrated by the balance of this brief, the majority of jurisdictions have *not* recognized such claims, and Colorado has demonstrated no predilection for expanding tort liability to novel claims. Furthermore, the court relied exclusively on a handful of toxic tort cases in reaching its conclusion. But as discussed above, the policy considerations for allowing the non-traditional relief of medical monitoring in the toxic tort context – the difficulty of proving causation and the need for deterrence against polluters, *see Burns*, 752 P.2d at 33-34 – are not present in the product liability context, where the exposure to a particular drug is more readily ascertainable. (*See discussion infra* II.A, II.R.) Finally, even though the *Cook* court suggested that Colorado might recognize medical monitoring in the context of toxic tort claims, it acknowledged that there is no basis in Colorado law for a request for general epidemiological studies unrelated to individual treatment because such a request is "akin to future medical expenses." *Cook*, 755 F. Supp. at 1478.

Colorado has not recognized a claim for medical monitoring, and there is no basis to suppose that it would do so under these circumstances. Accordingly, plaintiff Lagomarsino's claim for medical monitoring must be dismissed.

**D.     Named Plaintiff Ethel Gray's Claim Must Be Dismissed Because Connecticut Bars Claims For Medical Monitoring Absent Allegation Of A Present Injury.**

Plaintiff Gray's claim for medical monitoring must be dismissed because Connecticut

law prohibits such relief absent an allegation of present injury.  In *Bowerman v. United Illuminating*, No. X04CV 940115436S, 1998 Conn. Super. LEXIS 3575 (Conn. Super. Ct. Dec. 15, 1998), a case involving asbestos exposure, a Connecticut state court dismissed plaintiffs' medical monitoring claims because "such expenses would only be allowable if these plaintiffs have sustained actionable injuries." *Id.* at *26.  The court noted that medical monitoring is not available as a separate cause of action under Connecticut law. *Id.* ("Counsel for the plaintiffs conceded at oral argument that the claim for medical monitoring expenses does not stand alone.").  Because the plaintiffs' medical monitoring claims were based on negligence (as they are here), the court concluded that they could not proceed absent a present injury. *Id.*

Another Connecticut court reached the same decision in another asbestos case, finding that plaintiffs could only state a cause of action "[i]f and when symptoms of an asbestos-related disease manifested themselves." *See Goodall v. United Illuminating*, No. X04CV 950115437S, 1998 Conn. Super. LEXIS 3584, at *27 (Conn. Super. Ct. Dec. 15, 1998).  In *Goodall*, plaintiffs sought medical surveillance to monitor whether their asbestos exposure caused cancer.  The court followed the same reasoning as the court in *Bowerman* and concluded that Connecticut law prevents plaintiffs who were exposed to asbestos from maintaining an action in negligence absent "manifestation of symptoms of any asbestos-related disease." *Id.* at *1-2.

The *Bowerman* and *Goodall* decisions are consistent with a long line of decisions under Connecticut law recognizing that a plaintiff who seeks to recover for negligence must demonstrate that he or she sustained an ***actual injury*** as a result of the defendant's actions. *BellSouth Telcomms. Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 611 (2d Cir. 1996); *Dennis v. ICL, Inc.*, 957 F. Supp. 376, 379 (D. Conn. 1997).  Because plaintiff Gray does not allege any present injury from VIOXX, her medical monitoring claim must be dismissed.

**E.**   **Named Plaintiff James Houston's Claim Fails Under District of Columbia Law Because The District Has Never Recognized Medical Monitoring Claims.**

Plaintiff Houston's claim for medical monitoring must be dismissed under District of Columbia law, because District of Columbia courts have never recognized a claim for medical monitoring absent an allegation of injury.

In *Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455 (D.D.C. 1997), the court rejected the named plaintiff's effort to obtain medical monitoring for himself and the general public. *Id.* at 467. Like plaintiff Houston in this case, the plaintiff in *Witherspoon* did not allege any personal injury resulting from his smoking. The court concluded that plaintiff could not bring a stand-alone cause of action for medical monitoring. *Id.* The court noted that "[w]hether a cause of action or a part of damages requested, medical monitoring requires that the plaintiff have a present injury and a reasonable fear that the present injury could lead to the future occurrence of disease." *Id.* The court dismissed plaintiff's claim for medical monitoring for failure to state a claim. *Id.* [8]

Absent an allegation of actual injury, the District of Columbia courts have never recognized a cause of action for medical monitoring. Accordingly, plaintiff Houston's claim must be dismissed.

---

[8]   More than a decade before *Witherspoon*, the U.S. Court of Appeals for the D.C. Circuit created a diagnostic fund for Vietnamese orphans who were injured in an airplane accident, predicting that the District of Columbia would recognize such a claim. *Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824-25 (D.C. Cir. 1984). However, *Friends* is distinguishable from the instant case because it involved an allegation of actual injury. The court noted that the case involved a "tort action on behalf of Vietnamese orphans for *injuries suffered* in a tragic aviation accident." *Friends*, 746 F.2d at 818 (emphasis added). While the orphans in *Friends* sought diagnostic examinations as a result of surviving a violent aviation accident, in the instant case, Houston specifically disclaims having suffered any diagnosed injury whatsoever and avers that the mere ingestion of VIOXX and risk of injury warrant the creation of a medical monitoring program. In addition, although the *Friends* court predicted that the District of Columbia would permit medical monitoring claims, the district court in *Witherspoon* reached a contrary decision after thirteen years of intervening law, seriously undermining the *Friends* court's prediction. Accordingly, *Friends* is inapposite to the facts of the instant case.

**F.      Named Plaintiff Robert Lane's Claim Must Be Dismissed Because He Does Not Adequately Plead The Elements For Medical Monitoring Under Florida Law.**

Plaintiff Lane's claim for medical monitoring fails because he does not adequately state such a claim under Florida law. Florida requires plaintiffs to allege and prove the following elements for medical monitoring claims: (1) exposure to greater than normal background levels, (2) of a proven hazardous substances, (3) caused by the defendant's negligence, (4) as a proximate result of the exposure the plaintiff has a significantly increased risk of contracting a serious latent disease, (5) a monitoring procedure exists that makes the early detection of the disease possible, (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure, and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Petito v. A.H. Robins Co.*, 750 So. 2d 103 (Fla. Dist. Ct. App. 2000).

Plaintiff Lane fails to properly allege these requirements. Instead, he makes the following conclusory allegation:

> As a proximate result of Merck's negligence, plaintiff and the members of the Class used VIOXX, alone or in combination with other drugs, and now have a significantly increased risk of having suffered an unrecognized, serious, latent disease for which there are medical screening procedures that make early detection possible and that are different from those normally recommended in the absence of exposure to VIOXX, alone or in combination, and are reasonably necessary according to contemporary medical and scientific principles.

(MM Master Compl. ¶ 174.) These allegations, which are basically pasted from the caselaw, fail to sufficiently plead the elements of plaintiff's claim. Even under the liberal pleading standards of Rule 8, a complaint will be deemed inadequate if it merely mimics the required elements with no factual basis. *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (dismissing complaint for failure to comply with Rule 8 and noting that "a complaint, which

contains a 'bare bones' allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice") (quoting *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)).

Here, the complaint is devoid of any information regarding plaintiff Lane's ingestion of VIOXX, including the duration and dosage of VIOXX that Lane consumed, or any other facts – as opposed to legal conclusions – establishing his entitlement to relief.  Moreover, plaintiff provides no support for the allegation that diagnostic testing is reasonably necessary or that a qualified physician would prescribe such testing only for VIOXX users.  Thus, even though Florida has recognized medical monitoring claims under narrow circumstances, plaintiff's allegations do not track those circumstances.  His claim therefore should be dismissed.

G.   **Named Plaintiff Calvin Kinghorn's Claim Must Be Dismissed Because The Idaho Supreme Court Has Foreclosed The Possibility Of Negligence-Based Claims Absent Present Physical Injury.**

Plaintiff Kinghorn's claim for medical monitoring must be dismissed because Idaho courts have never recognized claims for medical monitoring.  Moreover, the Idaho Supreme Court has foreclosed the possibility of negligence-based claims without some present physical injury, precluding any prospect that it would permit medical monitoring claims in the absence of present physical injury.

Under Idaho law, "[n]egligence is actionable – and a cause of action thus accrues – only when an injury has been sustained." *Galbraith v. Vangas, Inc.*, 655 P.2d 119, 122 (Idaho Ct. App. 1982).  Actual loss or damage is a crucial element of every negligence claim. *Alegria v. Payonk*, No.12858, 1980 Ida. LEXIS 529 (Idaho Sept. 26, 1980).  For example, in *Clark v. Int'l Harvester Co.*, 581 P.2d 784 (Idaho 1978), the Idaho Supreme Court held that economic damages are not recoverable in negligence actions.  In that case, plaintiff sought to recover economic damages resulting from the defendant's negligent manufacture of a tractor.  The court

concluded that his negligence claim failed because he had not suffered any physical injury or damage to his property. *Id.* at 794. The court reasoned that while a manufacturer may be held liable for actual "physical harm" caused by its negligence, Idaho law does not recognize negligence as a cause of action when plaintiff does not allege a present physical injury. *Id.* at 792.

Plaintiff's claim for medical monitoring, like plaintiff's claim for economic loss in *Clark*, is not grounded in a present injury to person or property. Instead, it effectively seeks damages for *future* loss in tort – a tactic that is foreclosed by *Clark* and its progeny. It is also purely speculative. Given Idaho's reluctance in cases like *Clark* to recognize far more tangible negligence based claims absent allegations of present physical injury, it is unlikely that Idaho would recognize a cause of action for medical monitoring absent such an allegation.

Moreover, a long line of Idaho case law establishes that "a cause of action does not accrue at the time of the act complained of unless some damage has occurred." *Hawley v. Green*, 788 P.2d 1321, 1325 (Idaho 1990) (citations omitted). Relatedly, "a cause of action cannot successfully be brought until some damage exists." *Id.* This tenet has been applied uniformly by the Idaho Supreme Court. *See Davis v. Moran*, 735 P.2d 1014, 1020 (Idaho 1987) (finding that the plaintiff's cause of action could have accrued when she experienced cancer or loss of blood flow as a result of radiation exposure, not when she was negligently exposed to radiation during therapy).

Not only has Idaho never recognized medical monitoring claims, but it has also foreclosed negligence actions – like this one – absent an allegation of present physical injury. Accordingly, plaintiff Kinghorn's claim should be dismissed.

**H.    Named Plaintiff Anita Ivory's Medical Monitoring Claim Fails Because Illinois Requires Tort Plaintiffs To Assert A Present Injury.**

Plaintiff Ivory's claim for medical monitoring fails under Illinois law because she has alleged no actual physical injury or symptoms.

Illinois requires that a plaintiff suffer a present, ascertainable injury to state a claim in tort. *See, e.g, Fox v. Cohen*, 406 N.E.2d 178, 183 (Ill. App. Ct. 1980) ("The injury must be actual; the threat of future harm not yet realized is not enough."); *Betts v. Manville Personal Injury Settlement Trust*, 588 N.E.2d 1193, 1204 (Ill. App. Ct. 1992) (upholding directed verdict regarding asbestos claim where plaintiffs in asbestos exposure case did not suffer from asbestosis; "[t]here must be a present injury to warrant recovery under Illinois law"). This principle has been strictly followed in personal injury cases. For instance, in *Morrissey v. Eli Lilly & Co.*, 394 N.E.2d 1369, 1376 (Ill. App. Ct. 1979), the plaintiff asserted a present injury based on the existence of latent disease from exposure to DES in utero, and sought "adequate medical management" of plaintiffs' conditions. *Id.* at 1372. The court found the connection between such exposure and the possibility of developing cancer or other injury "in the future is an insufficient basis upon which to recognize a present injury." *Id.* at 1376. "In Illinois, possible future damages in a personal injury action are not compensable unless reasonably certain to occur." *See also Harp v. Ill. Cent. Gulf R.R. Co.*, 370 N.E.2d 826, 829-30 (Ill. Ct. App. 1977) (recovery impermissible for risk that injured disk might rupture in the future). Likewise here, plaintiff's assertion of possible future harm is insufficient to state a claim for recovery today because she has not alleged that she is "reasonably certain" to suffer a future personal injury.

Although one Illinois appellate court has allowed a medical monitoring case to proceed absent injury, *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869 (Ill. App. Ct. 2003), that decision clearly contradicts precedent of the Illinois Supreme Court, which has never directly ruled on the

validity of medical monitoring claims.  Notably, Illinois courts are generally reluctant to modify

the common law, particularly where, as in this case, the requested alternations are radical.  For

example, in a recent case rejecting plaintiffs' claim that nuisance law should be expanded to hold

defendant gun manufacturers responsible for gun violence, the court concluded:

> Any change of this magnitude in the law affecting a highly
> regulated industry must be the work of the legislature, brought
> about by the political process, not the work of the courts.  In
> response to the suggestion of amici that we are abdicating our
> responsibility to declare the common law, we point to the virtue of
> judicial restraint.

*City of Chi. v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1148 (Ill. 2004).  Moreover, the *Lewis*

court relied on a purportedly "fundamental difference between a claim seeking damages for an

increased risk of future harm and one which seeks compensation for the cost of medical

examinations," believing the latter created an cognizable present injury.  *Lewis*, 793 N.E.2d at

874.  However, this distinction is illusory, as the court failed to recognize that in *Morrissey* as

well, the primary relief sought was "adequate medical management of [each plaintiff's]

condition."  384 N.E.2d at 1372.  As noted above, that relief was rejected as "insufficient."  *Id.* at

1376.  Accordingly, the Illinois Supreme Court is likely to reject the approach taken by the *Lewis*

case, and Ms. Ivory cannot state a claim for medical monitoring based on the mere alleged risk

of cardiovascular injury.

**I.**     **Named Plaintiff Sherrill Herke's Claim Should Be Dismissed Because Iowa
Has Never Recognized Tort Claims For Medical Monitoring.**

Like most other states, Iowa has never recognized tort claims for medical monitoring.

Moreover, Iowa has implicitly rejected the notion that a plaintiff may recover in tort based on

exposure to a harmful substance without demonstrating the existence of a present, physical

injury.  In *Slaymaker v. Archer-Daniels-Midland Co.*, 540 N.W.2d 459 (Iowa Ct. App. 1995), an

asbestos case, two plaintiffs sued their employer and worksite owner under negligence and

intentional tort theories even though they did not have any asbestos-related illnesses. In upholding summary judgment, the court observed that "examinations showed that neither [plaintiff] had suffered any significant damages to their lungs due to asbestos exposure." *Id.* at 460. Having "suffered no present physical injury," the court concluded, plaintiffs' claims were insufficient as a matter of law. *Id.* at 461. *See also Ruden v. Jenk*, 543 N.W.2d 605 (Iowa 1996) (plaintiffs stated no cognizable claim absent an injury from the allegedly negligent conduct).

Moreover, Iowa law forbids awarding damages for tort claims where the only injury suffered is economic loss. *See Nelson v. Todd's Ltd.*, 426 N.W.2d 120 (Iowa 1988); *Audio Odyssey, Ltd. v. United States*, 373 F.3d 870 (8th Cir. 2004) (applying Iowa law). In *Nelson*, plaintiffs sued under a theory of strict liability seeking damages for the loss of meat they had cured using defendant's product, which failed to cure the meat properly. 426 N.W.2d at 121. The court affirmed the decision below that the claim for damages was not actionable because "[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at 123 (quotation and citation omitted).

In sum, there is no indication from the Iowa courts that they would recognize a claim for medical monitoring if presented with the issue -- and every indication that they would reject such claims absent a demonstration of present physical injury. Accordingly, Iowa named plaintiff Herke's claim for medical monitoring should be dismissed.

**J.**    **Named Plaintiff Vicky Hunter's Claim Must Be Dismissed Because Kansas Has Never Recognized Tort Claims Absent A Present Injury.**

Plaintiff Hunter's claim must be dismissed because Kansas has never recognized medical monitoring as a cause of action or form of relief. Rather, under Kansas law, medical monitoring is, at most, an additional form of relief available to a tort plaintiff who alleges a present injury.

Kansas requires plaintiffs pursuing a negligence cause of action to allege a present injury. *Humes v. Clinton*, 792 P.2d 1032 (Kan. 1990) (holding that negligence claims require allegation of present injury and dismissing claim for negligent infliction of emotional distress absent allegation of physical injury); *cf. Porter v. Merck & Co., Inc.*, Case No. 04-CV-586, slip op. at 5 (Kan. Dist. Ct. Aug. 19, 2005) (attached as Ex. 1) (plaintiff who ingested VIOXX but alleged no physical injury had "received a drug that provided relief for her pain" and thus "has no loss"); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1523 (D. Kan. 1995) (smoker could seek medical monitoring relief that was related to current injury). In the *Burton* case, plaintiff alleged that smoking the defendant's products resulted in peripheral vascular disease, forcing the amputation of both of his legs. In rejecting the plaintiff's separate claim for medical monitoring, the court found that he could seek medical surveillance connected to his current injury -- but did not have a separate cause of action for medical monitoring. *Id.*

In reaching this conclusion, the federal court referred to a toxic exposure case involving plaintiffs who were poisoned with lye at a bar, suffering severe burns to their throats and stomachs. *Cott v. Peppermint Twist Mgt. Co.*, 856 P.2d 906 (Kan. 1993). In that case, the Kansas Supreme Court found that fears based on *existing* injuries were not too speculative to allow recovery. *Id.* at 917. In discussing the *Cott* case, the *Burton* court held that allowing recovery for future losses based on a present injury is very different from creating a new tort where no present injury exists whatsoever. *Burton*, 884 F. Supp. at 1523.

Because Kansas law does not recognize medical monitoring claims and at most, only allows medical monitoring as a form of relief where the plaintiff alleges a valid tort (including a claim of present injury), plaintiff Hunter's claims must be dismissed.

29