**K.**   **Named Plaintiff Carol Lally's Claim Must Be Dismissed Because Maine Has Rejected "No Injury" Tort Claims.**

Plaintiff Lally's claim for medical monitoring must be dismissed because Maine has never recognized a "medical monitoring" cause of action and because, under the state's negligence law, "[t]here is generally no cause of action in tort until a plaintiff has suffered an identifiable, compensable injury." *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 542-43 (Me. 1986).

In *Bernier*, the plaintiffs brought suit in federal court over asbestos exposure, and the federal court certified three questions to the Maine Supreme Court. In answering those questions, the court determined that the plaintiffs' claims were valid because their causes of action did not accrue at the time of inhalation, but at the time the plaintiffs developed cancer. The court logically drew this conclusion because "[t]here is generally no cause of action in tort until a plaintiff has suffered an identifiable, compensable injury." *Id.* at 542. Thus, "[t]he actionable harm is the manifestation of disease in the body, not the exposure of the potentially hazardous substance or some more abstract invasion of a person's legally protected interests." *Id.* at 542-43. This case is not an outlier; the Maine Supreme Court has affirmed this rule time and again. *See McLaughlin v. Superintending Sch. Comm.*, 832 A.2d 782, 788-89 (Me. 2003) (recognizing that, under Maine law, "[a] tort claim accrues when the plaintiff sustains harm to a protected interest") (internal citation and quotation marks omitted); *Williams v. Ford Motor Co.*, 342 A.2d 712, 715 (Me. 1975) (collecting cases for the "Maine rule" that "[i]t is undoubtedly very true, that no man has a right of action against a wrongdoer, unless he is personally injured"). In short, under Maine law, plaintiff has no "judicially recognizable claim . . . until there has been a manifestation of physical injury to a person, sufficient to cause him actual loss, damage or suffering from a defective, unreasonably dangerous product." *Bernier*, 516 A.2d at 543. For this

reason, plaintiff Lally's claim must be dismissed.

**L.      Named Plaintiff Lisa Gray's Claim Must Be Dismissed Because Maryland Courts Have Not Recognized Medical Monitoring Claims.**

Plaintiff Gray's claim for medical monitoring must be dismissed, because Maryland courts have never recognized the "novel tort theory" of "medical monitoring." *See Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 251 (Md. 2000). Instead, under Maryland law, "the medical monitoring claim may perhaps more accurately be deemed a remedy rather than a distinct cause of action." *Id.* at 253. As such, any plaintiff seeking to recover for medical monitoring must plead all the elements of an existing tort – including present injury.

Under Maryland law, a negligence claim like plaintiff's requires an allegation of present injury. *See Anchor Packing Co. v. Grimshaw*, 692 A.2d 5, 19 (Md. Ct. Spec. App. 1994), *vacated on other grounds sub nom.*, *Porter Hayden Co. v. Bullinger*, 713 A.2d 962 (Md. 1998). In *Grimshaw*, the court held that a claim for asbestos exposure arises only when there is a manifest injury because "[i]n Maryland, the injury element of a negligence claim is satisfied when a wrongful act is coupled with some harm. . . . To set forth a viable claim for negligence, a plaintiff must allege, *inter alia*, 'damages.'" *Id.* (internal citations and quotations omitted). Maryland courts have been crystal clear that even in the face of a theoretical legal "wrong," a negligence claim cannot stand in the absence of some "legally cognizable injury." *Id.* at 16. *See Owens-Ill. v. Armstrong*, 591 A.2d 544, 560-61 (Md. Ct. Spec. App. 1991), *aff'd in part and rev'd in part on other grounds*, 604 A.2d 47 (Md. 1992). In *Armstrong*, for example, the court held that even though the plaintiffs developed lung tissue thickening due to asbestos exposure, that condition was benign; thus, until the plaintiffs developed a harmful condition, they had no "legally compensable injury." 591 A.2d at 561. *See also Edmonds v. Cytology Servs.*, 681 A.2d 546, 560 (Md. Ct. Spec. App. 1996) (holding that injury occurs only when, "as a proximate result

of the wrongful act, the patient sustains damages.  Once damages are sustained, the health care provider's wrong is actionable, or 'legally cognizable' . . .").

Plaintiff Gray seeks to recover medical monitoring relief under a negligence theory even though she does not allege a "legally cognizable injury."  Accordingly, her claim must be dismissed under Maryland law.

> **M.**    **Named Plaintiff Frank Saia's Claim Must Be Dismissed Because Massachusetts Requires Plaintiffs Suing For Negligence To Assert A Present Injury.**

Plaintiff Saia's claim for medical monitoring must be dismissed, because Massachusetts has never recognized a cause of action for medical monitoring and clearly requires the existence of actual harm to pursue any type of negligence claim.

For instance, in *Kempinski v. Massachusetts Turnpike Authority*, No. 99-12773, 2000 Mass. Super. LEXIS 66 (Mass. Super. Ct. Jan. 6, 2000), plaintiffs sought to recover in, *inter alia*, strict liability and negligence, alleging that the defendants had contaminated plaintiffs' ground water supply.  *Id.* at *10-11.  The court observed that, in order to recover, "plaintiffs must demonstrate injury or harm" resulting from the defendants' conduct.  Because plaintiffs were unable to present any evidence of actual harm or injury resulting from the alleged contamination, "plaintiffs [had] not suffered any compensable injury to their person or property" and defendants were, therefore, entitled to judgment.  *Id.* at *11.

Similarly, in *Gleason v. Town of Bolton*, No. 99-1194, 2002 Mass. Super. LEXIS 208 (Mass. Super. Ct. May 21, 2002), plaintiff alleged the defendant municipality was responsible for groundwater contamination that caused the plaintiff's restaurant to fail.  Even conceding the defendant was aware of the presence of contaminants in the groundwater during the time the plaintiff operated the restaurant, the court nonetheless concluded that absent any "physical harm" resulting from the contaminated groundwater, defendant was entitled to judgment.  *Id.* at *8.

32

The same result occurred in *Cannon v. Sears, Roebuck & Co.*, 374 N.E.2d 582, 584 (Mass. 1978). There, the plaintiff sued over an injury he sustained due a faulty ladder sold by the defendant. The Supreme Judicial Court held that the plaintiff's claim accrued when the ladder broke and injured him, not when he purchased the ladder because "[a] negligence action may not be maintained unless one has suffered injury or damage." *Id.* Proof of a negligent act alone is insufficient to impose liability, the court held; rather, "[a] cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between these two elements." *Id. See also Urman v. S. Boston Sav. Bank*, 674 N.E.2d 1078, 1082-83 (Mass. 1997) (rejecting claims of negligent infliction of emotional distress based solely on a fear of future injury).

In sum, there is no indication from the Massachusetts courts that they would recognize a claim for medical monitoring if presented with the issue. Moreover, in light of Massachusetts' strict requirement of demonstrable injury in tort-based actions, it is even more doubtful that they would do so absent an allegation of present injury. Accordingly, Mr. Saia's claim for medical monitoring should be dismissed.

### N.   Named Plaintiff Theresa Ducham's Claim Must Be Dismissed Because Michigan Has Rejected Medical Monitoring Claims.

Plaintiff Ducham's claim must be dismissed because Michigan bars product liability claims involving FDA-approved drugs and because Michigan's Supreme Court has rejected medical monitoring claims absent an allegation of present injury.

In the first place, Ducham's claim is barred because Michigan expressly prohibits product liability claims asserting that drugs approved by the FDA are unsafe. *See* Mich. Comp. Law § 600.2946(5). Section 600.2946(5) states, in relevant part:

> In a product liability action against a manufacturer or seller, a
> product that is a drug is not defective or unreasonably dangerous,

33

> and the manufacturer or seller is *not liable*, if the drug was *approved for safety and efficacy* by the United States food and drug administration, *and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.*

*Id.* (emphasis added).

The Michigan Supreme Court has recognized that the MCLA provides an "absolute defense" to claims asserted against drug manufacturers concerning the safety and efficacy of FDA-approved drugs. *See, e.g., Taylor v. Smithkline Beecham*, 658 N.W.2d 127, 131 (Mich. 2003) ("[U]nless the fraud exception in subsection a or the bribery exception contained in subsection b applies . . . a manufacturer or seller of a drug that has been approved by the FDA has an *absolute defense* . . . .") (emphasis added); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965-66 (6th Cir. 2004) (dismissing claims relating to diet drugs). Because as plaintiff acknowledges, VIOXX was at all times approved for sale in the United States (MM Master Compl. ¶ 65), Ms. Ducham's claim must be dismissed.

Second, the Michigan Supreme Court has expressly and unequivocally rejected "medical monitoring" claims absent actual injury. In *Henry v. Dow Chem. Co.*, No. 125205, 2005 Mich. LEXIS 1131, at *10 (Mich. July 13, 2005), the Michigan Supreme Court was squarely confronted with the question of whether plaintiffs who were exposed to dioxin emitted by the defendant's plant could recover medical expenses to detect some *future* injury related to dioxin exposure. Like named plaintiff Ducham in this case, plaintiffs in *Henry* sought the creation of medical screening and diagnostic program to supervise and fund medical monitoring. In dismissing the plaintiffs' claim, the court refused to recognize "medical monitoring" as a new cause of action or as a theory of negligence because the plaintiffs could show no actual injury.

34

Absent injury, the court held, such claims would "depart[] drastically from our traditional notions of a valid negligence claim." *Id.* at *30.

The *Henry* court noted that "[r]ecognition of a medical monitoring claim would involve extensive fact-finding and the weighing of numerous and conflicting policy concerns" and concluded that it lacked "sufficient information to assess intelligently and fully the potential consequences of recognizing a medical monitoring claim." *Id.* at *5. The court also reasoned that such a significant change in Michigan law "ought to be made if at all, by the Legislature" because the legislative branch is better suited to undertake the "complex task of balancing the competing societal interests at stake." *Id.* at *5-6, *30. In addition, the court found that absent injury, medical monitoring claims would result in creating "a potentially limitless pool of plaintiffs." *Id.* at *30. Moreover, "[l]itigation of these preinjury claims could drain resources needed to compensate those with manifest physical injuries and a more immediate need for medical care." *Id.* at *31. Finally, the court expressed concern that operating a medical monitoring program would necessarily "impose huge clerical burdens on a court system lacking the resources to effectively administer such a regime." *Id.* at *44.

*Henry* is consistent with prior Michigan law requiring a plaintiff to allege an injury in order to state a negligence claim on which relief can be granted. *See, e.g., Haliw v. Sterling Heights*, 627 N.W.2d 581, 588 (Mich. 2001); *Larson v. Johns-Manville Sales Corp.*, 399 N.W.2d 1, 5 (Mich. 1986) (a cause of action for asbestosis arises only when an injured party knows or should know that he has, in fact, developed asbestosis). As the *Henry* court noted, "it has simply always been the case in our jurisprudence that plaintiffs alleging negligence claims have also shown that their claims arise from present physical injuries." 2005 Mich. LEXIS 1131, at *17.

35

Plaintiff Ducham does not allege an injury and, therefore, plainly does not meet this requirement.

For this additional reason, her claim must be dismissed.

**O.      Named Plaintiff Dora Prince Cannot State A Claim Because Mississippi Law Rejects Claims Based On Future Injury.**

Although the Mississippi Supreme Court has never ruled on the viability of a cause of action for medical monitoring, a federal district court in Mississippi earlier this year concluded that the state's courts would reject a no-injury medical monitoring claim. In *Paz v. Brush Engineered Materials, Inc.*, 351 F. Supp. 2d 580 (S.D. Miss. 2005), workers exposed to beryllium sued their employer for the establishment of a medical monitoring trust fund to pay for diagnostic tests and treatment, in the event that the tests reveal disease resulting from exposure. *Id.* at 582. The court dismissed the complaint for failure to state a claim because plaintiffs did not allege that they suffered a disease or any present injury from the exposure. *Id.*

In dismissing the claims, the court held that "recognizing a medical monitoring claim would conflict with precedent establishing that a plaintiff allegedly exposed to a toxic or hazardous substances does not have a compensable injury until a disease caused by such exposure results." *Id.* at 586. Among the precedents cited by the court was a Mississippi Supreme Court decision that foreclosed nuisance and negligence-based emotional distress claims for future injury. That case, *Leaf River Forest Products v. Ferguson*, 662 So. 2d 648 (Miss. 1995), involved alleged exposure to toxins discharged by a paper mill in a nearby river. The plaintiffs did not allege a present injury but sued instead for alleged fear of cancer as a result of their exposure, prompting the court to note that it had "never allowed or affirmed a claim of emotional distress based on a fear of contracting a disease or illness in the future, however reasonable." *Ferguson*, 662 So. 2d at 658. In rejecting their claims, the Mississippi Supreme Court held: "The Fergusons will be able to pursue a cause of action . . . if any disease caused by

36

alleged exposure to dioxin manifests itself in the future. Their claim based on fear of future disease is at best, premature." *Id.* at 658 (citation omitted). *See also Anglado v. Leaf River Forest Prods.*, 716 So. 2d 543, 546 (Miss. 1998) ("plaintiffs conceded that the decision in *Ferguson* foreclosed recovery for their claims for increased risk of future disease, emotional distress arising from a fear of future disease, and medical monitoring"); *Prescott v. Leaf River Forest Products*, 740 So. 2d 301, 309 (Miss. 1999) (summary judgment of emotional distress claims was proper because appellants could not recover for fear of future disease). In reliance on *Ferguson* and its progeny, the *Paz* court concluded that the Mississippi Supreme Court had effectively deemed medical monitoring inappropriate, even though the court's express ruling involved other claims. Accordingly, there is no basis to believe that Mississippi would change course and recognize such a claim in this case.

Because plaintiff Prince has not alleged any present injury from VIOXX, his claim fails under Mississippi law and must be dismissed.

P. **Named Plaintiff Jurhee Bench's Claim Fails Because Missouri Law Would Not Recognize Medical Monitoring Claims Absent An Allegation Of Present Injury.**

Plaintiff Bench's claim fails because Missouri courts require plaintiffs to allege an actual present injury in order to recover for negligence. *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 229 (Mo. Ct. App. 1988) ("diagnosis of biological injury, disease and dysfunction" required for plaintiffs to prevail under a toxic tort negligence cause of action); *Thomas v. FAG Bearing Corp.*, 846 F. Supp. 1400, 1409 (W.D. Mo. 1994). For this reason, a federal court examining the issue found that Missouri courts would prohibit claims for medical monitoring absent an allegation of present injury:

> Exposure to potentially hazardous substances is certainly a serious event and those injured should be compensated. However, that compensation must be made in accordance with accepted legal

37

> principles. Either because injuries are not presently apparent or
> because plaintiffs were unable to discover evidence of such injures,
> they are unable to recover at this time under Missouri law.

*Thomas,* 846 F. Supp at 1410-11. In *Thomas,* plaintiffs allegedly exposed to groundwater

contamination sued for medical monitoring. The court upheld dismissal of their claims noting

that "[e]ntitlement to the costs of future medical monitoring requires plaintiff to prove actual

present injury and an increased risk of future harm." *Id.* at 1410. Under Missouri law, the court

found, "mere increased risk of cancer alone is not a present injury." *Id.* at 1408, n.4.

      In reaching this conclusion, the *Thomas* court relied on *Bennett v. Mallinckrodt, Inc.,* 698

S.W.2d 854, 866 (Mo. Ct. App. 1985), a case in which the Missouri court of appeals made clear

that Missouri law does not countenance claims for future injury. The *Bennett* case involved

allegations that plaintiffs had been exposed to radioactive emissions because they worked on

property adjacent to a radiopharmaceutical plant. The court found that the plaintiffs' allegations

of actual injury were sufficient to state a claim but rejected their claims for future injury, finding

that claims "based on mere mathematical probabilities significantly undercompensate those who

actually develop [an injury] and are a windfall to those who do not." *Id.* at 866.

      Missouri courts have rejected tort claims such as plaintiff's that are based on

"mathematical probability" as opposed to a present manifested injury. Accordingly, plaintiff

Bench cannot state a claim for negligence or medical monitoring under Missouri law, and her

claim should be dismissed.

**Q.**    **Named Plaintiff Kevin Allen Cannot State A Claim For Medical Monitoring**
        **Under Montana Law.**

      Plaintiff Allen's claim for medical monitoring fails under Montana law, because Montana

courts have explicitly rejected tort claims, like medical monitoring, that are based on speculative

injury.

Montana law provides that to state a cause of action for negligence, a plaintiff must allege that he or she has been injured or suffered actual damage as a result of the allegedly negligent conduct of the defendant. *Vennes v. Miller*, 954 P.2d 736, 737 (Mont. 1998) (to recover on a negligence claim, plaintiff must prove that defendant owed a duty, breached the duty, that the breach caused damage, and "[t]hat [plaintiff] *suffered actual damages*") (emphasis added). *See also Jackson v. State*, 956 P.2d 35, 42 (Mont. 1998) ("It is well-established that a plaintiff in a negligence action must prove the existence of a duty, breach of duty, causation, and damages."); *May v. ERA Landmark Real Estate of Bozeman*, 15 P.3d 1179, 1187 (Mont. 2000) (to state a claim for negligent misrepresentation, "the plaintiff, as a result of its reliance, must sustain damage").

In *Hudson v. West*, No. 99-598, 2000 Mont. LEXIS 185 (Mont. July 18, 2000), for example, plaintiff filed a suit for professional negligence against his attorney, alleging malpractice. The plaintiff in the case had pled guilty to a misdemeanor offense of disorderly conduct and forfeited his bond as a result of negotiations by the attorney with the prosecutor. *Id.* at *3. He later filed his negligence action, claiming that he would have received a better outcome with a jury trial. *Id.* at *6. The court granted the defendant's motion for summary judgment and the Montana Supreme Court affirmed, reasoning that that plaintiff's "alleged injuries . . . amount to nothing more than mere speculation" because he could not demonstrate that he would have received a better outcome had his case gone to trial. *Id.* at *7. The court concluded that and plaintiff's "failure to establish injury [was] fatal" to his claim of professional negligence. *Id.* at *8.

There is no indication from the Montana courts that they would recognize a claim for medical monitoring if presented with the issue. Moreover, in light of Montana's strict

requirement of demonstrable injury in tort-based actions, it is even more doubtful that they would do so absent an allegation of present injury. Accordingly, Mr. Allen's claim for medical monitoring should be dismissed.

R.   **Named Plaintiff David Scott's Claim Fails Because New Jersey Law Bars Medical Monitoring Claims Involving Products Like Prescription Drugs.**

Plaintiff Scott fails to state a claim for medical monitoring because, as Judge Higbee recently found in a similar class action (as discussed above), New Jersey law bars medical monitoring claims outside the narrow context of toxic tort cases. *See Sinclair v. Merck & Co., Inc.*, No. ATL-L-371-04-MT, 2005 WL 1278364 (N.J. Super. Ct. May 16, 2005); *Theer v. Philip Carey Co.*, 628 A.2d 724, 733 (N.J. 1993).

In *Sinclair*, plaintiffs proposed a nationwide no-injury medical monitoring class of plaintiffs who had taken VIOXX. *Sinclair*, 2005 WL 1278364, at *1. As in this case, plaintiffs did not allege a present injury. *Id.* In rejecting the plaintiffs' claims, the court concluded that medical surveillance was inappropriate absent any actual injury to the plaintiffs.

According to the court, New Jersey "has allowed a cause of action for medical monitoring in only limited types of cases." *Id.* at *8. Notably, the court differentiated VIOXX and other pharmaceutical claims from the types of toxic tort cases for which New Jersey has allowed medical monitoring. As the court explained, the alleged injuries that VIOXX causes are more "direct, immediate and observable" than "the latency period of cancer causing agents involved in toxic torts." *Id.* at *7. The court further distinguished plaintiffs' VIOXX claims from medical monitoring in toxic tort cases on the ground that VIOXX plaintiffs do not face hurdles to proving causation that confront most toxic tort plaintiffs. First, plaintiffs were prescribed VIOXX by their own doctors, medical professionals who are responsible for evaluating and monitoring a patient's health before, during and after taking VIOXX. *Id.* at *8.

40

Second, unlike plaintiffs in toxic tort cases who are often exposed to varying levels of toxins and may not have information about how long they were exposed, VIOXX plaintiffs know the chemical composition of VIOXX as well as how long they took VIOXX and the dosages of VIOXX that they took. *Id.* Finally, unlike plaintiffs in toxic tort cases who may be unaware of potential health risks, the court concluded that VIOXX plaintiffs are likely aware of the risks associated with the medication because they were prescribed VIOXX by physicians and because of the much publicized withdrawal of VIOXX from the market. *Id.* Therefore, the court reasoned, "plaintiffs would not have the same causation issues and the lack of alternative relief suffered by victims of a toxic tort." *Id.*

In dismissing *Sinclair*, Judge Higbee relied on *Theer*, a case in which the New Jersey Supreme Court held that plaintiffs must have manifest physical injury to sustain medical monitoring claims product liability cases. *Theer*, 628 A.2d at 733. The plaintiff in *Theer* sued the manufacturers of asbestos products for medical monitoring in spite of the fact that she had "not suffered an asbestos-related injury." *Id.* at 732. In rejecting her claim, the court noted that medical monitoring is a "special compensatory remedy" that "is not easily invoked." *Id.* at 733. Further, the court reasoned that it was too "difficult to determine if there [was] a direct correlation between the asbestos exposure and future medical costs" because plaintiff "ha[d] not suffered from any injury or condition" due to her exposure. *Id.* Thus, the Court concluded that medical monitoring would not be available to a products-liability plaintiff unless she "ha[d] already suffered a manifest injury or condition." *Id.*

Because Mr. Scott seeks to recover without an allegation of "manifest injury," his claim must be dismissed under New Jersey law.

41

**S.**     **Named Plaintiff Richard Gaddie's Claim Must Be Dismissed Because North**
           **Carolina Has Never Recognized Medical Monitoring Claims.**

Plaintiff Gaddie's claim for medical monitoring fails because like most other states,

North Carolina has never recognized medical monitoring claims and because North Carolina

requires a plaintiff to demonstrate a present injury in order to prevail on a negligence claim. 1-

16 NORTH CAROLINA LAW OF TORTS § 16.90 ("To maintain an action for negligence, the

plaintiff must allege and prove damages as an essential element of the cause of action."); *Stoltz v.*

*Burton*, 316 S.E.2d 646, 647 (N.C. Ct. App. 1984) ("A *prima facie* case of negligence requires

proof that . . . the breach was the actual and proximate cause of plaintiff's injury; and *damages*

*resulted from the injury*.") (emphasis added); *Garrett v. Overman*, 404 S.E.2d 882, 884 (N.C.

Ct. App. 1991) (same); *Bryant v. Eagan*, 364 S.E.2d 704, 706 (N.C. Ct. App. 1988) (negligence

claim, if properly before the court, "would be without merit [because] plaintiffs have failed to

demonstrate that any of [defendants'] actions proximately caused any damages whatsoever").

In *Bryant*, plaintiffs sued for fraudulent misrepresentation (and added a claim of

negligence on appeal) when they purchased a condominium unit from defendants, who

mistakenly conveyed a different unit in the same complex. The court affirmed summary

judgment for defendants because plaintiffs could show no injury from the alleged fraud (or

negligence), and instead, merely contended that the property conveyed was "not a [sic] attractive

investment." 364 S.E.2d at 706. The court explained that the "damages alleged are at best

speculative," and that the plaintiffs did not demonstrate an essential element of their negligence

claim – a "suffered injury." *Id.*

Very recently, a North Carolina appeals court confirmed the requirement of an actual

injury in tort cases. In *Coker v. DaimlerChrysler Corp.*, No. COA04-523, 2005 N.C. App.

LEXIS 1792 (N.C. App. Ct. Aug. 16, 2005), plaintiffs sought damages on common law fraud

42

and consumer fraud theories for repair of an alleged safety defect that had not yet caused any economic or personal injury. The court rejected such a claim, characterizing it as a request for "possible *future* expenses not yet incurred." *Id.* at *22 (emphasis in original). This request was "too speculative and illusory" to demonstrate an injury, and required dismissal of the claim. *Id.*

Because North Carolina courts have rejected other tort claims that are based on speculative injury, there is no basis for predicting that they would accept the novel medical monitoring cause of action – and every basis for believing they would not. Plaintiff Gaddie's claim should therefore be dismissed.

**T.   Named Plaintiff Jason Ross's Claim Fails Because Ohio Courts Have, At Most, Recognized Medical Monitoring In The Context Of Toxic Torts.**

Plaintiff Ross's claim for medical monitoring must be dismissed because Ohio has, at most, only recognized medical monitoring as a cause of action in the context of toxic torts. In *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59 (Ohio 2004), the Ohio Supreme Court reversed the certification of a proposed medical monitoring class of plaintiffs exposed to beryllium because individual questions outweighed questions common to the class. *Id.* at 66. The court implicitly seems to have recognized the availability of medical monitoring in the toxic tort context but failed to set forth requirements for asserting such claims under Ohio law. *Id.* at 63-64.

In any event, the *Wilson* decision should not be interpreted to allow medical monitoring here in a products liability action because the court relied on a federal court toxic tort case to reach its result. *See Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994). The *Day* court theorized that plaintiffs alleging sufficient increased risk of injury resulting from their exposure to radioactive and hazardous material might be eligible for medical monitoring. *Id.* at 881. The court commented that in the context of toxic torts, "certain exposures can cause a disease with a

43

protracted latency period, which may not manifest itself for many years." *Id.* at 880. The court noted several policy justifications for its departure from Ohio common law including: (1) the deterrence value in recognizing medical surveillance in toxic tort cases; (2) the availability of a remedy to plaintiffs; (3) the problems of proving causation for toxic tort plaintiffs. *Id.* at 881. However, as discussed above (*supra*, section II.A, II.R), these justifications are not present in the context of VIOXX products liability cases.

Moreover, the Court should be especially hesitant about extending a claim that remains undefined under Ohio law to products liability cases in which no present injury is alleged. Ohio does not permit tort recovery "for damages which are speculative." *Johnson v. Univ. Hosps. of Cleveland*, 540 N.E.2d 1370, 1378 (Ohio 1989). Moreover, as the *Johnson* court recognized, "speculative expenses" that "were not recognized at common law" should not first be recognized by the judiciary. *Id.* To the contrary, "if such expenses are to be recognized, it is the role of the General Assembly to establish guidelines" for such novel types of claims. *Id.* The further plaintiff's claim strays from the traditional present injury requirement, the more *Johnson* counsels in favor of deference to the state legislative branch.

Accordingly, absent a claim of present injury, plaintiff Ross cannot state a claim for medical monitoring and his claim should be dismissed.

**U.    Named Plaintiffs Mary and Bernd Bruch Cannot State A Medical Monitoring Claim Because Oklahoma Has Never Recognized Such Claims.**

The Bruch plaintiffs' claims for medical monitoring are deficient because Oklahoma has never recognized a cause of action for medical monitoring. Moreover, it is unlikely that Oklahoma would recognize a cause of action for medical monitoring because Oklahoma courts do not recognize negligence claims absent allegations of present injury or damage. The relief

sought by the Bruch plaintiffs is simply too speculative under Oklahoma law and therefore must be dismissed.

Oklahoma does not recognize claims for negligence absent an allegation of present injury. *Tomlinson v. Love's Country Stores*, 854 P.2d 910, 915 (Okla. 1993) ("The elements of negligence are (1) the existence of a duty on the part of a defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting from the violation."). This requirement means that to be actionable, a claim for negligence under Oklahoma law requires plaintiffs actually to have suffered damages. In *Sloan v. Owen*, 579 P.2d 812 (Okla. 1977), plaintiffs sued their contractor for damages they alleged resulted from construction work on their home. *Id.* at 813. Although the jury found for plaintiffs, they fixed the amount of recovery for their tort claim at $0. *Id.* The plaintiffs then petitioned for attorney's fees and costs claiming that they were the successful party. *Id.* at 813-14. The court denied the petition, holding that "[s]ince no damages were awarded to plaintiffs . . . it necessarily follows that they did not establish actionable negligence. . . ." *Id.* at 814. *See also MBA Commercial Constr., Inc. v. Roy J. Hannaford Co., Inc.*, 818 P.2d 469, 472 (Okla. 1991) (affirming summary judgment because "the negligence claims alleged . . . did not accrue until [plaintiffs] suffered damages which were certain and not merely speculative"); *Richardson v. J.C. Penney Co.*, 649 P.2d 565, 566 (Okla. Ct. App. 1982) (Oklahoma law "demands some measure of tangible physical manifestation of damage").

Moreover, Oklahoma does not allow plaintiffs to bring negligence-based product liability claims for purely economic damages. In *Oklahoma Gas & Electric Co. v. McGraw Edison Co.*, 834 P.2d 980 (Okla. 1992), the Oklahoma Supreme Court found that a plaintiff could not recover economic damages resulting from a defective transformer. The court reasoned that "no action

lies in manufacturer's products liability for injury only to the product itself resulting in purely economic loss." *Id.* at 982. To recover under a negligence theory, therefore, plaintiffs must allege a claim for personal injury or damage to other property. *Id.* Plaintiffs' medical monitoring claims, like claims for economic loss, do not involve a present injury. In fact, they are even more remote and speculative than tangible economic loss claims.

There is no indication that Oklahoma's courts would recognize a claim for medical monitoring in the absence of current injury if presented with the issue. Indeed, Oklahoma's strict requirement of demonstrable injury in tort-based actions makes such a change in Oklahoma law highly unlikely. Accordingly, the Bruchs' claims should be dismissed.

**V.     Named Plaintiff Gwendolyn Carr's Claim Must Be Dismissed Because Pennsylvania Has Only Recognized Medical Monitoring For Toxic Tort Cases.**

Plaintiff Carr's claim must be dismissed because Pennsylvania has only recognized medical monitoring as a remedy in toxic tort cases. In *Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137 (Pa. 1996), the Pennsylvania Supreme Court determined that the Pennsylvania Hazardous Sites Cleanup Act authorizes the establishment of a medical monitoring trust fund. *Id.* at 142. In that case, plaintiffs sought medical monitoring because they were exposed to hazardous materials after frequently using a soccer field built on a former U.S. Army landfill. *Id.* at 139-41. The Pennsylvania court reasoned that "a medical monitoring trust fund is a more appropriate remedy than lump sum damages in mass exposure toxic tort." *Id.* at 142. Relying on *Ayers v. Township of Jackson*, 525 A.2d 287 (N.J. 1987), the court noted that "the peculiar difficulties facing plaintiffs" in toxic tort cases make such relief necessary. *Redland Soccer*, 696 A.2d at 143. Like the *Ayers* court, the Pennsylvania court found that such relief is particularly warranted in toxic tort cases because it "affords toxic-tort victims, for whom other sorts of recovery may prove difficult, immediate compensation for medical monitoring needed as

a result of exposure." *Id.* at 45 (quoting *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 976-77 (Utah 1993)). Additionally, "it furthers the deterrent function of the tort system by compelling those who expose others to toxic substances to minimize risks and costs of exposure." *Id. See also Simmons v. Pacor Inc.*, 674 A.2d 232 (Pa. 1996) (following *Burns v. Jaquays Mining Corp.*, 752 P.2d 28 (Ariz. Ct. App. 1987), and permitting medical surveillance costs in asbestos case). As discussed above, however (*see* discussion *supra*, Section II.A, II.R), toxic tort cases pose special problems not relevant to products liability cases. Accordingly, *Redland* and *Simmons* do not suggest, much less confirm, that the Pennsylvania Supreme Court would permit the medical monitoring relief sought here.

Although one trial court has allowed a medical monitoring claim to proceed absent injury, *Lewis v. Bayer AG*, 66 Pa. D. & C.4th 470 (Pa. Ct. Com. Pl. 2004), that decision is not supported by Pennsylvania Supreme Court precedent or any of the justifications underlying the Supreme Court's decision in *Redland* permitting medical monitoring for toxic tort plaintiffs.

In the end, there is no basis for plaintiff Carr's claim that Pennsylvania would recognize medical monitoring for uninjured plaintiffs in the context of pharmaceutical products liability cases. Therefore, her claim must be dismissed.

## W. Named Plaintiff Shirley Asan's Claim Must Be Dismissed Because Rhode Island Does Not Recognize Medical Monitoring Claims.

Plaintiff Asan's claim must be dismissed because Rhode Island has never recognized medical monitoring as a cause of action and because negligence claims under Rhode Island law require a present injury. *Selwyn v. Ward*, No. 2002-637, 2005 R.I. LEXIS 139, at *9 (R.I. July 7, 2005) (the elements of negligence require plaintiff to establish a legally cognizable duty, a breach of that duty, proximate causation between the conduct and plaintiff's injury, and "*actual*

*loss or damage*") (emphasis added); *Mills v. State Sales, Inc.*, 824 A.2d 461, 467 (R.I. 2003) (same).

The Rhode Island Supreme Court has recently reiterated that Rhode Island's negligence law does not compensate for speculative injury. In *Perrotti v. Gonicberg*, No. 2004-138, 2005 R.I. LEXIS 141 (R.I. July 7, 2005), a pregnant woman sued after an automobile accident, alleging fear that she and her unborn fetus may have been exposed to health risks from the accident impact. In rejecting her claim, the Rhode Island Supreme Court found that "the mere *possibility of some future harm* occurring as the result of defendant's negligence *is not enough* by itself to support a negligence claim." *Id.* at *15 (emphasis added). Similarly, in *Kelley v. Cowesett Hills Associates*, 768 A.2d 425 (R.I. 2001), the Rhode Supreme Court found that the plaintiff's awareness that she could have been exposed to asbestos in the floor tiles of her apartment together with the possibility of contracting cancer as a result was a risk "too tenuous to be a viable cause of action." *Id.* at 430. Similarly, in this case, the named plaintiff seeks to recover for a tenuous risk that is not cognizable under Rhode Island law. Accordingly, her claim must be dismissed.

X.   **Named Plaintiff Barbara Cathey's Claim Must Be Dismissed Because Tennessee Law Requires Medical Monitoring Plaintiffs To Allege A Personal Injury.**

Plaintiff Cathey's claim fails because Tennessee requires plaintiffs seeking medical monitoring to allege present physical injury. As one federal court put it, "[i]t is clear that under Tennessee law, a *plaintiff must allege a present injury* or loss to maintain an action in tort. No Tennessee cases support a cause of action for medical monitoring in the absence of present injury." *Jones v. Brush Wellman, Inc.*, Case No. 1:00 CV 0777, 2000 U.S. Dist. LEXIS 21897, at *23 (N.D. Ohio Sept. 13, 2000) (applying Tennessee law) (emphasis added).

In *Jones*, plaintiffs alleged that they had been exposed to beryllium and as result risked

contracting chronic beryllium disease. *Id.* at *2. Plaintiffs sought medical monitoring for diseases related to beryllium exposure, arguing that the United States Department of Energy has determined that screening for beryllium sensitivity and CBD is essential for those exposed to beryllium. *Id.* at *3. The court granted the defendant's motion to dismiss, finding that plaintiffs did not allege a present injury as required to state a claim for negligence under Tennessee law. *Id.* at *22-23. In reaching this decision, the court relied on Tennessee law holding that a cause of action in tort does not exist until "a judicial remedy is available to the plaintiff. Before a judicial remedy exists, two elements must coalesce: (1) a breach of some legally recognized duty owed by the defendant to the plaintiff and (2) some legally cognizable damage caused to the plaintiff by the breach of duty." *Id.* at *21 (quoting *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990) (finding that a plaintiff could not bring a claim for mesothelioma until diagnosed with the disease)); *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1204 (6th Cir. 1988) (applying Tennessee law and reversing award of damages for increased risk of cancer caused by exposure to contaminated water supply because plaintiffs failed to prove future disease was "medically reasonably certain to follow from the existing present injury"). In light of the clear Tennessee law requiring present injury, the court was unwilling to create a new expansion of liability under Tennessee law: "in the absence of Tennessee case law or a statute authorizing this relatively new and controversial type of claim, this Court will not create a new cause of action for Tennessee plaintiffs." 2000 U.S. Dist. LEXIS 21897, at *23.[9] Plaintiff Cathey's claim for

---

[9]     The Sixth Circuit recently opined, in *dicta*, that Tennessee would permit a claim for medical monitoring absent present physical injury. *Sutton v. St. Jude Medical S.C., Inc.*, No. 04-5211, 2005 U.S. App. LEXIS 18013, at *23 n.7 (6th Cir. Aug. 23, 2005). However, Merck believes the decision of the district court on this question in *Jones* is far more persuasive. The *Jones* court conducted a searching analysis of Tennessee law regarding the requirement of present injury. In contrast to the *Jones* court's approach, the Sixth Circuit addressed the possibility of creating a novel cause of action in Tennessee in a short footnote, citing only two older Tennessee cases that do not address medical monitoring claims. Notably, the *Jones* court reviewed one of those two cases, the *Laxton* case, and found it inapplicable to claims of medical monitoring. *See Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431 (Tenn. 1982). *Laxton* was a negligent infliction of emotional distress case, asserting different injury and seeking

medical monitoring is thus barred by Tennessee law.

**Y.    Named Plaintiff Linda Powell Cannot State A Claim For Medical Monitoring Under Texas Law.**

Plaintiff Powell's claim for medical monitoring must be dismissed because Texas, too, has never recognized a medical monitoring cause of action and does not recognize any negligence claims in the absence of some injury.  To the contrary, "[i]t has been established for over a century that a person who is placed in peril by the negligence of another, but who escapes without injury, may *not* recover damages simply because he has been placed in a perilous position." *City of Tyler v. Likes*, 962 S.W.2d 489, 500 (Tex. 1997) (finding that the plaintiff could not "recover damages for her fear of injury, since she was not actually injured") (emphasis added).  In fact, even in the context of exposure to toxic substances, the Texas Supreme Court has foreclosed damages for the fear of potentially developing an injury sometime in the future.

In *Temple-Inland Products Corp. v. Carter*, 993 S.W.2d 88, 90-96 (Tex. 1998),  two plaintiffs who had been exposed to asbestos but had not suffered any asbestos-related sought to recover for mental anguish.  The Texas Supreme Court rejected their claims, ruling that mere exposure to asbestos without resulting harm cannot create a claim for "mental anguish damages for their increased risk and reasonable fear of possibly developing asbestos-related diseases that they do not currently have and may never have." *Id.* at 92.  Similarly, in *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643 (Tex. 2000), the Supreme Court cited *Carter* with approval for the proposition that recovery for fear of a future disease is insufficient in the absence of present symptoms, reasoning that "allowing recovery for fear of a disease when the plaintiff has no

---

different relief than did plaintiffs in *Jones*, or in the case at bar. *Jones*, 2000 U.S. Dist. LEXIS 21897, at *16-20.  As the *Jones* court recognized, absent a clear indication that Tennessee is departing from the traditional present injury requirement, the federal courts should not create new causes of action under state law.

symptoms results in systematic under-compensation of those who actually contract the disease, and a windfall for those who do not." *Id.* at 652.

Like the plaintiffs in both *Carter* and *Pustejovsky*, plaintiff Powell seeks to recover in tort absent a claim that he has suffered an actual injury. Regardless of how such a claim is characterized, it is fundamentally an effort to evade the "injury" requirement for negligence claims under Texas law. Accordingly, plaintiff Powell's claim should be dismissed.

### Z.   Named Plaintiff Sara Cheeseman's Claim Fails Because Vermont Has Never Recognized No Injury Or Medical Monitoring Claims.

Plaintiff Cheeseman's claim must also be dismissed because the Vermont state courts have never recognized medical monitoring as a cause of action – and there is no basis to believe they would. Rather, under Vermont law, to state a valid claim for negligence, a plaintiff must have suffered an injury at the time that the case is filed. *See Cavanaugh v. Abbott Labs.*, 496 A.2d 154, 160 (Vt. 1985) ("A cause of action, arising from the introduction of a drug into a fetus or body, shall be deemed to accrue from the date of the discovery of any resulting injury."); *Morris v. Am. Motors Corp.*, 459 A.2d 968, 971 (Vt. 1982) ("to establish negligence the facts must demonstrate that the defendant breached a duty owed to the plaintiff, together with proof that but for the breach of that duty the injury complained of would not have occurred"). In *Cavanaugh*, the Vermont Supreme Court applied a discovery rule to personal injury suits predicated on drug exposure, holding that an action accrues at the time of discovery of the resulting injury. 496 A.2d at 160-61; *see also Congdon v. Taggart Bros., Inc.*, 571 A.2d 656, 657 (Vt. 1989) (discussing the development of the discovery rule); *Springfield Hydroelectric Co. v. Copp*, 779 A.2d 67, 70-71 (Vt. 2001) (economic loss doctrine bars recovery in tort when there is no physical injury). The Vermont Supreme Court in *Morris*, likewise demonstrated the court's

concern for the injury component of a negligence action, explaining that liability is premised on a "but for" link between causation and injury.  459 A.2d at 971.

There is no indication that Vermont courts would recognize a claim for medical monitoring if presented with the issue.  Moreover, in light of Vermont's strict requirement of demonstrable injury in tort-based actions, it is even more doubtful that it would do so absent an allegation of present injury.  Accordingly, Ms. Cheeseman's claim should be dismissed.

**AA.** **Named Plaintiff Ken Yohe's Claim Must Be Dismissed Because Washington Law Bars Medical Monitoring Claims Absent An Allegation Of Present Injury.**

Plaintiff Yohe's claim must be dismissed because under Washington law, a plaintiff cannot state a claim for medical monitoring absent personal injury.  In *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 608-09 (W.D. Wash. 2001), plaintiff sought medical monitoring under Washington law based on her exposure to second-hand smoke on international flights.  A district court rejected her claim, reasoning that because "plaintiffs with a present injury may seek medical monitoring as a remedy to a negligence cause of action under existing Washington law, there is no compelling reason for this Court to create, as urged by plaintiff, a new, separate tort of medical monitoring."  *Id.* at 606.  In support of its opinion, the court cited three key factors: "Washington's hesitation to recognize new torts, its reluctance to allow damages for enhanced risk without an accompanying present injury, and the ambiguity in case law from other states."  *Id.* at 608.

As the *Duncan* court explained, Washington law unequivocally requires that plaintiffs show a present, existing injury before pursuing a negligence-based cause of action – even in "enhanced risk" cases where plaintiffs have been exposed to hazardous materials.  *Id.* at 606 (citing *Koker v. Armstrong Cork, Inc.*, 804 P.2d 659 (Wash. Ct. App. 1991) (reversing damages award in asbestos exposure case because plaintiff had no cognizable injury)).  Put simply, the

court held: "there is no reason to redress possible future harm because the plaintiff may bring another action when actionable injury results." *Id.* (internal quotations and citations omitted).

The *Duncan* court relied in part on the Washington Supreme Court's ruling in *Koker v. Armstrong Cork, Inc.*, 804 P.2d 659, 665 (Wash. 1991). In that case, the court reversed judgment for a plaintiff exposed to asbestos, finding that the plaintiff's fear of cancer was not actionable until he was diagnosed with pleural thickening in his lungs and symptoms of asbestosis. According to the *Koker* court, mere risk of disease was not enough to support a tort claim under Washington law. *Id.* at 669 ("a plaintiff in an asbestos action . . . may not recover damages for an increased risk of contracting cancer *unless he can demonstrate with reasonable probability that he will actually develop the disease*") (emphasis in original).

Duncan's refusal to permit a separate "no injury" medical monitoring claim under Washington law, and its emphasis on the present injury requirement, suggest that Washington courts would not recognize medical monitoring relief in the context of this case. Moreover, Washington courts typically defer to the state legislature with respect to the development of new law. As the Washington Supreme Court has stated, the legislature has "a greater ability to fully explore the spectrum of competing societal interests," while "the judiciary is the least capable of receiving public input and resolving broad public policy questions based on a societal consensus." *Burkhart v. Harrod*, 755 P.2d 759, 759, 761 (Wash. 1988).

Washington's courts have never recognized a cause of action for medical monitoring and have adhered strictly to the "present injury" requirement for tort claims. Accordingly, plaintiff Yohe cannot state a claim for negligence absent a manifested injury and his claim should be dismissed.

**BB.    Named Plaintiff Terry Kelly's Claim Must Be Dismissed For Failure To Properly Plead The Elements For Medical Monitoring Under West Virginia Law.**

Plaintiff Kelly fails to satisfy the elements for pleading a medical monitoring claim under West Virginia law.  West Virginia requires plaintiffs bringing medical monitoring claims to satisfy six requirements:  (1) significant exposure; (2) to a proven hazardous substance; (3) through negligent conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease relative to the general population; (5) the increased risk of the disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.  *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999). The reason the state imposes these requirements is to ensure that uninjured plaintiffs can make a sufficient showing that "such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct." *Id.* at 431.

Plaintiff Kelly fails to properly allege a claim for medical monitoring under West Virginia law.  The Complaint alleges conclusorily that:

> As a proximate result of Merck's negligence, plaintiff and the members of the Class used VIOXX, alone or in combination with other drugs, and now have a significantly increased risk of having suffered an unrecognized, serious, latent disease for which there are medical screening procedures that make early detection possible and that are different from those normally recommended in the absence of exposure to VIOXX, alone or in combination, and are reasonably necessary according to contemporary medical and scientific principles.

(MM Master Compl. ¶ 174.)

These allegations fail to sufficiently plead the elements of plaintiff's claim.  Even under the liberal pleading standards of Fed R. Civ. P. 8, a complaint will be deemed inadequate if it

merely mimics the required elements with no factual basis. *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (dismissing complaint for failure to comply with Rule 8 and noting that "a complaint, which contains a 'bare bones' allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice") (quoting *Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)).

The Master Complaint is devoid of any information regarding plaintiff Kelly's ingestion of VIOXX, including the duration and dosage of VIOXX that Kelly consumed, or any other facts – as opposed to legal conclusions – establishing his entitlement to relief. Moreover, plaintiff provides no support for the allegation that diagnostic testing is reasonably necessary or that a qualified physician would prescribe such testing only for VIOXX users. Thus, even though West Virginia has recognized medical monitoring claims under narrow circumstances, plaintiff's claim should be dismissed.

**CC.   Named Plaintiff James Petrasek Cannot State A Claim Because Wisconsin Law Bars Tort Claims Absent An Allegation Of Present Injury.**

Plaintiff Petrasek's claim for medical monitoring must be dismissed because Wisconsin, like most other states, has never recognized medical monitoring as a cause of action and requires a plaintiff to allege a present injury to sue in tort. *See Hennekens v. Hoerl*, 465 N.W.2d 812, 816 (Wis. 1991) (finding that a tort claim is capable of enforcement only when "actual harm" is present); *Paul v. Skemp*, 625 N.W.2d 860, 870 (Wis. 2001).

In *Paul*, the plaintiff alleged that the defendants negligently failed to diagnose a malformed blood vessel that later resulted in injury. The Supreme Court of Wisconsin ruled that the plaintiff's claim accrued for statute of limitations purposes when she was injured, not when the negligent act occurred. The court stated that, "[a]s our long-time precedent has established, the negligence and its result – an injury – should be considered separately. The negligence must

55

cause an injury before there is an accrual of a claim." *Paul*, 625 N.W.2d at 870.  Similarly, in

*Fojut v. Stafl*, 569 N.W.2d 737 (Wis. Ct. App. 1997) the court held that the plaintiff's negligent

tubal ligation was not an actionable "injurious change" to the plaintiff, but rather the plaintiff's

claim accrued with her later unwanted pregnancy.  *Id.* at 739.  *See also Hansen v. A.H. Robins,*

*Inc.*, 335 N.W.2d 578, 580 (Wis. 1983) ("[a] tort claim is not capable of enforcement until both a

negligent act and an accompanying injury have occurred"); *Holifield v. Setco Indus., Inc.*, 168

N.W.2d 177, 180 (Wis. 1969), *partially disapproved on other grounds*, 335 N.W.2d at 583

(stating that "a cause of action in tort . . . does not accrue until someone has been injured" and

"without the result of injury, no claim for damages based on negligence can be asserted, or at

least successfully asserted.").

     There is no reason to expect that Wisconsin courts would recognize a claim for medical

monitoring if presented with the issue – and every reason to predict that they would reject such a

claim absent an allegation of present injury.  Accordingly, plaintiff Petrasek's claim should be

dismissed.

### DD.   Named Plaintiff Jim Pope Cannot State A Claim For Medical Monitoring Under Wyoming Law.

     Plaintiff Pope's claim for medical monitoring must be dismissed because under

Wyoming law, "a tort is not complete and actionable until all the elements, duty, breach,

proximate cause, and damage, are present." *Davis v. Casper*, 710 P.2d 827, 829 (Wyo. 1985)

("[Appellants] believe that a tort can occur without damage. . . .  Their causes of action accrued

in the spring of 1981 when damage occurred."); *Anderson v. Bauer*, 681 P.2d 1316, 1321 (Wyo.

1984) (holding that the plaintiffs' cause of action accrued and was barred when damage

occurred).

Moreover, Wyoming would not recognize the plaintiffs' bare fear of some future injury as compensable in the absence of some present physical injury. In *Blagrove v. JB Mech.*, 934 P.2d 1273 (Wyo. 1997), plaintiffs brought suit against a plumbing contractor seeking damages for emotional distress under a negligence theory, despite the fact that they had not suffered any physical injury. In upholding summary judgment, the court refused to create an exception to the general rule that "[i]n Wyoming, our decisions have restricted recovery for emotional distress damages without accompanying physical injury." *Id.* at 1275.

Other Wyoming cases highlight the law's focus on actual injury as the triggering event for a tort claim. In *Davis*, the plaintiffs alleged that the defendants had negligently inspected their properties. The Supreme Court of Wyoming held that the plaintiffs' cause of action accrued at the time the houses leaked, not at the time of the negligent inspection. Similarly, in *Anderson*, the plaintiffs alleged that their homebuilders had negligently built their homes. The Supreme Court likewise ruled that the plaintiffs' claims did not accrue until flooding actually occurred on their property. *See also Simons v. Laramie County Sch. Dist.*, 741 P.2d 1116, 1120 (Wyo. 1987) (citing *Davis* and approving of the parties' stipulation that "[i]f a party seeking relief has not yet been damaged, an action is premature").

There is no indication that Wyoming courts would recognize a claim for medical monitoring if presented with the issue. Moreover, in light of Wyoming's strict requirement of demonstrable injury in tort-based actions, it is even more doubtful that they would do so absent an allegation of present injury. Accordingly, plaintiff Pope's claim for medical monitoring should be dismissed.

III.    **ALLEGATIONS RELEVANT TO THE UNREPRESENTED CLASSES SHOULD BE STRICKEN.**

Plaintiffs' allegations with respect to certain proposed statewide classes should be stricken from the Complaint because they fail to assert a fundamental prerequisite for such a class: a named plaintiff.

In their Complaint, plaintiffs seek to represent a nationwide class of individuals "who took VIOXX in any dose" between May 20, 1999 and September 20, 2004. (MM Master Compl. ¶ 5.) Alternatively, if their bid for nationwide class treatment is denied, they assert claims for medical monitoring relief on behalf of purported classes in 45 states plus the District of Columbia. (*See Id.* ¶ 6.) However, plaintiffs have only identified named class representative plaintiffs from 30 jurisdictions, asserting that they intend to identify adequate representatives from the remaining states at a later time. (*Id.* at 3, n.1.) Because there is no plaintiff, and hence no case or controversy as to those proposed statewide classes, the allegations related to them must be stricken.

Where plaintiffs cannot meet the requirements for class action treatment under Fed. R. Civ. P. 23, courts may order such deficient class allegations stricken from the pleading at the earliest stages. *See., e.g., Palmer v. Combined Ins. Co. of Am.*, No. 02-C-1764, 2003 U.S. Dist. LEXIS 2534, at *5 (N.D. Ill. Feb. 24, 2003) ("[I]t is sometimes possible to determine from the pleadings alone that these requirements cannot possibly be met, and in such cases, striking class allegations . . . is appropriate.") (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). This is such a case; without a named plaintiff, plaintiffs obviously cannot satisfy the requirements of Rule 23. *See Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.*, 175 F.R.D. 234, 236 (N.D. Miss. 1997) ("a headless class action may not be litigated").

Plaintiffs' "file now, find a plaintiff later" tactic fails because it ignores the bedrock notion that a lawsuit can only proceed if it presents a live case or controversy.  *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Nor does captioning a suit as a class action circumvent the case-or-controversy requirement.  *See Sosna v. Iowa*, 419 U.S. 393, 402 (1975) (stating in dictum that *"[t]here must . . . be a named plaintiff who has such a case or controversy at the time the complaint is filed"*); *Swan v. Stoneman*, 635 F.2d 97, 102 (2d Cir. 1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy . . . at the time the complaint is filed.").[10]  Rather, courts have recognized that if a class action does not include a plaintiff with a live controversy, the complaint must be dismissed.  *Mathis v. Bess*, 692 F. Supp. 248, 258 (S.D.N.Y. 1988) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified.  Otherwise, the action should be dismissed.") (citation omitted).  *See also* NEWBERG ON CLASS ACTIONS § 2:9 (4th ed. 2005).

That is precisely the case here.  Plaintiffs purport to seek medical monitoring relief on behalf of statewide classes in sixteen states where there is no named plaintiff to assert a cause of action.  Accordingly, their allegations with regard to those states present no live case or controversy and should be stricken.

---

[10]   This "threshold requirement" ensures that the case will be vigorously prosecuted and is distinct from the requirement that the named representative be "adequate" under Rule 23.  *Robinson v. Leahy*, 73 F.R.D. 109, 111 (N.D. Ill. 1977).

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court dismiss the Medical Monitoring Class Action Complaint in its entirety.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
One United Plaza
4041 Essen Lane, Suite 501
Baton Rouge, LA  70809
Phone: 225-490-8900
Fax:   225-490-8960

Defendants' Liaison Counsel

Counsel for Merck & Co., Inc.

60