# APPENDIX A
## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **ARIZONA** | **Restatement approach** <br> *See Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1076, 1079 (Ariz. Ct. App. 1999) (applying Restatement and noting that "Arizona courts traditionally have accorded great weight in the conflicts analysis to the domicile of the tort victim in a personal injury case" and concluding that Arizona law should apply because, *inter alia*, plaintiffs "live in Arizona") |
| **ARKANSAS** | **Lex loci delicti approach** <br> *See Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674 (8th Cir. 2004) (under Arkansas choice of law rules, court considers *lex loci delicti* rule within framework of the five Leflar factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law); *id.* at 674 (applying Texas law because, *inter alia*, plaintiff was a resident of Texas); *Gomez v. ITT Educ. Servs. Inc.*, 71 S.W.3d 542, 544, 547 (Ark. 2002) (applying Texas law in a wrongful death action where the death occurred in Texas and the parties were Texas residents and noting the Court would "reach the same conclusion" under both the *lex loci delicti* rule and the Leflar approach) |
| **COLORADO** | **Restatement approach** <br> *See Hawks v. Agri Sales, Inc.*, 60 P.3d 714, 715 (Colo. Ct. App. 2001) (applying "most significant relationship" approach of the Restatement to resolve choice of law issue in tort action and concluding that Colorado law governed where "the injury occurred in Colorado") |
| **CONNECTICUT** | **Restatement approach** <br> *See O'Connor v. O'Connor*, 519 A.2d 13, 21 (Conn. 1986) (adopting "the Restatement as the governing principles for those [tort] cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result."); *Campofiore v. Wyeth*, No. X06CV044006359S, 2004 Conn. Super. LEXIS 3641, at *17-18 (Conn. Super. Ct. Dec. 7, 2004) (applying Connecticut law to plaintiff's claim because despite the fact that defendant is headquartered in New Jersey, Connecticut has more significant relationship to the suit given that Connecticut is where plaintiff resides, purchased the medication, and allegedly was injured) |

786623_1

# APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| DISTRICT OF COLUMBIA | **Governmental interest approach with reference to Restatement factors**<br><br>*See Lakie v. Smith-Kline Beecham*, 965 F. Supp. 49, 58-59 (D.D.C. 1997) (noting the District of Columbia's adherence to the governmental interest analysis and concluding Virginia law applied to plaintiff's product liability claim where plaintiff was "a resident of Virginia, and during 1985 through 1990 she purchased and used [defendant's product] in Virginia" and where the "only connection between this action and the District of Columbia is that defendant conducts business in the District, as it does in many other states"); *id.* at 59 ("Although the District has abandoned a strict 'place of the injury' test, under its 'governmental interest' analysis a state's interest in the application of its law is strongest when both the place of the injury and the domicile of the plaintiff are within its territory."") |
|---|---|
| FLORIDA | **Restatement approach**<br><br>*See Garcia v. Pub. Health Trust*, 841 F.2d 1062, 1065 (11th Cir. 1988) (applying the Restatement approach and concluding Florida law applied because the injury occurred there); *Fla. Steel Corp. v. Whiting Corp.*, 677 F. Supp. 1140, 1141 (M.D. Fla. 1988) ("A survey of the Florida cases applying the 'most significant relationship' test suggests that the law of the state in which the injury occurred will almost always govern the issue in dispute."") |
| IDAHO | **Restatement approach**<br><br>*See Grover v. Isom*, 53 P.3d 821, 823-24 (Idaho 2002) (Idaho applies the "most significant relation test" as set forth in the Restatement in determining the applicable law in a tort case); *id.* at 824 (affirming trial court decision to apply the law of Oregon in a medical malpractice case because, *inter alia*, the injury occurred in Oregon) |
| ILLINOIS | **Restatement approach**<br><br>*See Esser v. McIntyre*, 169 Ill. 2d 292, 301 (Ill. 1996) (applying Restatement test for conflicts of law issues in tort cases and concluding that Illinois had the most significant relationship to the action "especially considering Illinois' interest in providing tort remedies to its injured citizens"); *Abdishi v. Philip Morris*, No. 98 C 1310, 2001 U.S. Dist. LEXIS 15371, at *23 (N.D. Ill. Sept. 25, 2001) (applying law of state where plaintiff resides because "[r]egardless of where the cigarettes were manufactured, however, the relationship between Abdishi and Philip Morris logically is centered where Abdishi purchased and consumed the product") |

2

786623_1

# APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| IOWA | **Restatement approach** |
| | *See Drinkall v. Used Car Rentals*, 32 F.3d 329, 331 (8th Cir. 1994) (noting Iowa courts apply the most-significant relationships choice of law approach in tort cases and concluding that Iowa law applied where "the accident occurred in Iowa [and plaintiff] was an Iowa resident") (internal punctuation omitted) |
| KANSAS | **Lex loci delicti approach** |
| | *See Raskin v. Allison*, 57 P.3d 30, 32 (Kan. Ct. App. 2002) (noting that the "Kansas Supreme Court has consistently applied the rule of lex loci delicti in tort cases, even when all parties are Kansas residents" and holding that law of Mexico applied because injuries occurred there) |
| MAINE | **Restatement approach** |
| | *See Buzzell v. C.C. Eastern, Inc.*, 1999 U.S. Dist. LEXIS 5723, at *8, *9 (D. Me. 1999) (noting Maine's adherence to the Restatement approach to choice of law issues in tort actions and applying Maine law to plaintiff's negligence claim where "the injury and much of the conduct alleged to have caused the injury took place" in Maine "despite the fact that Defendant is a Michigan corporation with a principal place of business in Warren, Michigan") |
| MARYLAND | **Lex loci delicti approach** |
| | *See Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230-32 (Md. 2000) (decertifying putative classes because Maryland adheres to the *lex loci delicti* rule in analyzing choice of law problems for tort actions and the place of the injury is where the injury was suffered, not where the wrongful act that led to the injury took place; because individuals' alleged injuries accrued over many years, Maryland "could not qualify as the 'place of wrong,' 'place of injury,' or the place where 'the last act giving rise to the cause of action' occurred") |
| MASSACHUSETTS | **Functional approach with reference to Restatement factors and governmental interests** |
| | *See Kramer v. Acton Toyota*, 18 Mass. L. Rep. 456 (Mass. Super. Ct. 2004) (noting that Massachusetts takes a functional approach to conflict of law questions, considering which state has interests in the action and with implicit guidance from the factors outlined in the Restatement); *Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 585 (Mass. 1983) (applying law of "the place where the last event necessary to make an actor liable for an alleged tort takes place" and because decedent learned of the death of her son while she was in Massachusetts, which caused her injury from severe emotional distress, Massachusetts law applied to the claim even though the conduct that led to her son's death occurred elsewhere) |

3

# APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **MISSISSIPPI** | **Restatement approach**<br>*See Bonti v. Ford Motor Co.*, 898 F. Supp. 391, 395 (S.D. Miss. 1995) (noting Mississippi's adherence to the Restatement's center of gravity/most significant relationship test and applying North Carolina law to plaintiff's tort action where, *inter alia*, plaintiffs "resided in North Carolina for over twenty-five years" and purchased defendant's product in North Carolina) |
| **MISSOURI** | **Restatement approach**<br>*See Alumbaugh v. Union Pac. R.R.*, 322 F.3d 520, 524 (8th Cir. 2003) (Missouri has adopted the Restatement rules for choice of law in tort cases; analyzing which state has the "most significant relationship" to the occurrence, Kansas law applied to plaintiff's claims where the injury to plaintiff occurred in Kansas and the relationship between the parties was centered there) |
| **MONTANA** | **Restatement approach**<br>*See Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1007, 1012 (Mont. 2000) (adopting the Restatement's "most significant relationship" approach to determine the applicable law for tort claims and concluding that application of the law of the state where the injured party resides or where the product was purchased is more appropriate than the law of the state of manufacture) |
| **NEW JERSEY** | **Governmental interest approach**<br>*See Amoroso v. Burdette Tomlin Mem. Hosp.*, 901 F. Supp. 900, 905 (D.N.J. 1995) (applying New Jersey governmental interest approach and determining that "when 'the place where the injury occurred was not fortuitous . . . the place of the injury assumes much greater importance and in some instances may be determinative'") (quoting *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986)) |
| **NORTH CAROLINA** | **Lex loci delicti approach**<br>*See Mooney v. Wood/Chuck Chipper Corp.*, No. 1:99cv207-T, 2000 U.S. Dist. LEXIS 21293, at *7 (W.D.N.C. Jan. 5, 2000) (applying the "well settled choice of law rule in North Carolina, lex loci" and finding that North Carolina would apply Georgia's substantive products liability law where plaintiff was injured by an allegedly defective product in Georgia); *Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 685 (M.D.N.C. 1999) ("North Carolina has long followed the lex loci rule, which applies the substantive law of the state in which the injury occurred.") |

4

786623_1

## APPENDIX A
## STATE-BY-STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **MISSISSIPPI** | **Restatement approach** <br> *See Bonti v. Ford Motor Co.*, 898 F. Supp. 391, 395 (S.D. Miss. 1995) (noting Mississippi's adherence to the Restatement's center of gravity/most significant relationship test and applying North Carolina law to plaintiff's tort action where, *inter alia*, plaintiffs "resided in North Carolina for over twenty-five years" and purchased defendant's product in North Carolina) |
| **MISSOURI** | **Restatement approach** <br> *See Alumbaugh v. Union Pac. R.R.*, 322 F.3d 520, 524 (8th Cir. 2003) (Missouri has adopted the Restatement rules for choice of law in tort cases; analyzing which state has the "most significant relationship" to the occurrence; Kansas law applied to plaintiff's claims where the injury to plaintiff occurred in Kansas and the relationship between the parties was centered there) |
| **MONTANA** | **Restatement approach** <br> *See Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1007, 1012 (Mont. 2000) (adopting the Restatement's "most significant relationship" approach to determine the applicable law for tort claims and concluding that application of the law of the state where the injured party resides or where the product was purchased is more appropriate than the law of the state of manufacture) |
| **NEW JERSEY** | **Governmental interest approach** <br> *See Amoroso v. Burdette Tomlin Mem. Hosp.*, 901 F. Supp. 900, 905 (D.N.J. 1995) (applying New Jersey governmental interest approach and determining that "when 'the place where the injury occurred was not fortuitous . . . the place of the injury assumes much greater importance and in some instances may be determinative'" (quoting *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986)) |
| **NORTH CAROLINA** | **Lex loci delicti approach** <br> *See Mooney v. Wood/Chuck Chipper Corp.*, No. 1:99cv207-T, 2000 U.S. Dist. LEXIS 21293, at *7 (W.D.N.C. Jan. 5, 2000) (applying the "well settled choice of law rule in North Carolina, lex loci" and finding that North Carolina would apply Georgia's substantive products liability law where plaintiff was injured by an allegedly defective product in Georgia); *Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 685 (M.D.N.C. 1999) ("North Carolina has long followed the lex loci rule, which applies the substantive law of the state in which the injury occurred.") |

786623_1

# APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| OHIO | **Hybrid approach combining *lex loci delicti*, governmental interest, and Restatement** *See Jones v. Brush Wellman, Inc.*, No. 1:00 cv 0777, 2000 U.S. Dist. LEXIS 21897, at *11, *15 (N.D. Ohio Sept. 13, 2000) (applying Ohio's choice of law test that presumes the law of the place of the injury controls and considers governmental interests and Restatement factors, and dismissing product liability claim seeking, *inter alia*, medical monitoring against an Ohio defendant where "alleged exposure occurred in Tennessee. Plaintiffs are all residents of Tennessee and are employed in" Tennessee, thus, "Tennessee law will be applied to this case"); *Lawson v. Valve-Trol Co.*, 610 N.E.2d 425, 427 (Ohio Ct. App. 1991) (applying Indiana law to product liability action brought against Ohio manufacturer where plaintiffs were Indiana residents, were injured in Indiana and received Indiana workers' compensation benefits); *Jernigan v. Columbia Elec. Mfg. Co.*, Nos. 63441, 63442, 1992 Ohio App. LEXIS 6412, 1992 WL 388872, at *6 (Ohio Ct. App. Dec. 17, 1992) (applying Tennessee law to product liability action brought against Ohio manufacturer where plaintiffs were Tennessee and Georgia residents, were injured in Tennessee and could receive Tennessee workers' compensation benefits). |
| --- | --- |
| OKLAHOMA | **Restatement approach** *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974) (adopting Restatement test for resolving conflict of law issues in tort cases); *NMP Corp. v. Parametric Tech. Corp.*, 958 F. Supp. 1536, 1544 (N.D. Okla. 1997) (holding that Oklahoma law applied to plaintiff's tort claims because "all significant interactions" that resulted in the conduct complained of by the Oklahoma plaintiff against an out-of-state defendant took place in Oklahoma) |

## APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| State | |
|---|---|
| **PENNSYLVANIA** | **Hybrid Restatement and governmental interest approach**<br>*See Normann v. Johns-Manville Corp.*, 593 A.2d 890, 893 (Pa. Super. Ct. 1991) (Pennsylvania choice of law rules require the court to "combin[e] the methodologies of a 'government interest analysis' and the 'significant relationship' approach of the Restatement (Second) of Conflicts § 145 (1971)" to determine the appropriate law); *In re Diet Drugs Prods. Liab. Litig.*, No. 98-20626, 1999 U.S. Dist. LEXIS 13228, at *42 (E.D. Pa. Aug. 26, 1999) (analyzing which state "has the greater interest in the application of its law" in class action seeking medical monitoring and concluding that the states where the plaintiffs reside govern because those states have "a strong interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders, which is the conduct which gave rise to the class members' claims"); *Lewis v. Bayer AG*, 66 Pa. D. & C. 4th 470, 491, 494 (Phila. Ct. Com. Pl. 2004) (the state in which the consumer purchased and ingested the drug has a priority of interest over the manufacturer's home state because "the states where the putative class resides are more substantial and have a stronger interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders") |
| **RHODE ISLAND** | **Interest weighing approach with reference to Restatement factors**<br>*See Najarian v. Nat'l Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001) (noting that under Rhode Island's "interest-weighing" approach to choice of law issues sounding in tort "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship" and concluding that in an action for personal injury Massachusetts law governed where "[t]he place where the injury and the conduct allegedly causing the injury occurred was Massachusetts"). |
| **TENNESSEE** | **Restatement approach**<br>*See Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 909-10 (M.D. Tenn. 1996) (under Tennessee choice of law principles based on the Restatement factors, the law of plaintiff's home state of Tennessee governed his tort claim alleging that defendant's failure to disclose caused him injury, because although defendant's headquarters were in Massachusetts and its alleged failure to disclose occurred there, Tennessee was where plaintiff's loss was sustained) |

6

## APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| State | |
|---|---|
| TEXAS | **Restatement approach**<br>See *Burleson v. Liggett Group, Inc.*, 111 F. Supp. 2d 825, 830 (E.D. Tex. 2000) (noting Texas' adoption of Restatement approach to choice of law issues in tort cases and concluding Texas has "the most significant relationship" to the litigation where "the plaintiffs were Texas residents and injured in Texas by the actions of the defendants" in products liability tobacco litigation) |
| VERMONT | **Restatement approach**<br>See *McKinnon v. F.H. Morgan & Co., Inc.*, 750 A.2d 1026, 1028, 1029 (Vt. 2000) (adopting the Restatement "most significant relationship" test and determining that the law of the place where the injury occurred was a key factor); *Amiot v. Ames*, 693 A.2d 675, 677 (Vt. 1997) (same). |
| WASHINGTON | **Restatement approach**<br>See *Williams v. State*, 885 P.2d 845, 848-49 (Wash. Ct. App. 1994) (noting Washington's adherence to the Restatement approach to choice of law issues in tort cases and applying Oregon law to plaintiff's claim where plaintiff and decedent were Oregon residents); *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 605 (W.D. Wash. 2001) (applying "most significant relationship" test to choice of law issue for medical monitoring claim brought on behalf of flight attendants exposed to secondhand cigarette smoke and concluding that because each state where plaintiffs reside has an interest in the outcome, the law of each such state will be applied) |
| WEST VIRGINIA | **Lex loci delicti approach**<br>See *W. Va. ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 780 (W. Va. 2004) (noting West Virginia applies the law of the place of the injury and thus, a West Virginia court in a toxic tort case seeking medical monitoring "must apply the substantive laws of Ohio, Illinois, Indiana, Pennsylvania, Tennessee, and Virginia to those class members whose exposure . . . allegedly occurred in those states") |
| WISCONSIN | **Choice-influencing considerations approach**<br>See *Smith v. Meadows Mills, Inc.*, 60 F. Supp. 2d 911, 915 (E.D. Wis. 1999) (noting Wisconsin's adherence to Leflar's five choice-influencing considerations for resolving choice of law issues and applying Wisconsin law to plaintiff's product liability claim because, inter alia, plaintiff was a Wisconsin resident and the accident occurred in Wisconsin) |

## APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| WYOMING | *Lex loci delicti* approach<br><br>*See Jack v. Enterprise Rent-A-Car Co.*, 899 P.2d 891, 895 (Wyo. 1995) (applying Wyoming's lex loci delicti test to tort claim and concluding Wyoming law applied because despite the fact that defendant was a California corporation, the damages were sustained in Wyoming and plaintiffs resided in Wyoming); *Shuarte v. Colo. Interstate Gas Co.*, 130 F. Supp. 2d 1263, 1266 (D. Wyo. 2000) ("Wyoming has a nearly uninterrupted history of using the situs of the injury to determine the proper substantive law in tort actions.") |
| --- | --- |

# APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **ARIZONA** | **Restatement approach**<br>*See Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1076, 1079 (Ariz. Ct. App. 1999) (applying Restatement and noting that "Arizona courts traditionally have accorded great weight in the conflicts analysis to the domicile of the tort victim in a personal injury case" and concluding that Arizona law should apply because, *inter alia*, plaintiffs "live in Arizona") |
| **ARKANSAS** | ***Lex loci delicti* approach**<br>*See Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674 (8th Cir. 2004) (under Arkansas choice of law rules, court considers *lex loci delicti* rule within framework of the five Leflar factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law); *id.* at 674 (applying Texas law because, *inter alia*, plaintiff was a resident of Texas); *Gomez v. ITT Educ. Servs. Inc.*, 71 S.W.3d 542, 544, 547 (Ark. 2002) (applying Texas law in a wrongful death action where the death occurred in Texas and the parties were Texas residents and noting the Court would "reach the same conclusion" under both the *lex loci delicti* rule and the Leflar approach) |
| **COLORADO** | **Restatement approach**<br>*See Hawks v. Agri Sales, Inc.*, 60 P.3d 714, 715 (Colo. Ct. App. 2001) (applying "most significant relationship" approach of the Restatement to resolve choice of law issue in tort action and concluding that Colorado law governed where "the injury occurred in Colorado") |
| **CONNECTICUT** | **Restatement approach**<br>*See O'Connor v. O'Connor*, 519 A.2d 13, 21 (Conn. 1986) (adopting "the Restatement as the governing principles for those [tort] cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result."); *Campofiore v. Wyeth*, No. X06CV040006398, 2004 Conn. Super. LEXIS 3641, at *17-18 (Conn. Super. Ct. Dec. 7, 2004) (applying Connecticut law to plaintiff's claim because despite the fact that defendant is headquartered in New Jersey, Connecticut has more significant relationship to the suit given that Connecticut is where plaintiff resides, purchased the medication, and allegedly was injured) |

786613-1

## APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **DISTRICT OF COLUMBIA** | **Governmental interest approach with reference to Restatement factors**<br>*See Lake v. Smith-Kline Beecham*, 965 F. Supp. 49, 58-59 (D.D.C. 1997) (noting the District of Columbia's adherence to the governmental interest analysis and concluding Virginia law applied to plaintiff's product liability claim where plaintiff was "a resident of Virginia, and during 1985 through 1990 site purchased and used [defendant's product] in Virginia" and where the "only connection between this action and the District of Columbia is that defendant conducts business in the District, as it does in many other states"); *id.* at 59 ("Although the District has abandoned a strict 'place of the injury' test, under its 'governmental interest' analysis a state's interest in the application of its law is strongest when both the place of the injury and the domicile of the plaintiff are within its territory.") |
| **FLORIDA** | **Restatement approach**<br>*See Garcia v. Pub. Health Trust*, 841 F.2d 1062, 1065 (11th Cir. 1988) (applying the Restatement approach and concluding Florida law applied because the injury occurred there); *Fla. Steel Corp. v. Whiting Corp.*, 677 F. Supp. 1140, 1141 (M.D. Fla. 1988) ("A survey of the Florida cases applying the 'most significant relationship' test suggests that the law of the state in which the injury occurred will almost always govern the issue in dispute.") |
| **IDAHO** | **Restatement approach**<br>*See Grover v. Isom*, 53 P.3d 821, 823-24 (Idaho 2002) (Idaho applies the "most significant relation test" as set forth in the Restatement in determining the applicable law in a tort case); *id.* at 824 (affirming trial court decision to apply the law of Oregon in a medical malpractice case because, *inter alia*, the injury occurred in Oregon) |
| **ILLINOIS** | **Restatement approach**<br>*See Esser v. McIntyre*, 169 Ill. 2d 292, 301 (Ill. 1996) (applying Restatement test for conflicts of law issues in tort cases and concluding that Illinois had the most significant relationship to the action "especially considering Illinois' interest in providing tort remedies to its injured citizens"); *Abdishi v. Philip Morris*, No. 98 C 1310, 2001 U.S. Dist. LEXIS 15371, at *23 (N.D. Ill. Sept. 25, 2001) (applying law of state where plaintiff resides because "[r]egardless of where the cigarettes were manufactured, however, the relationship between Abdishi and Philip Morris logically is centered where Abdishi purchased and consumed the product") |

## APPENDIX A
## STATE-BY-STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| State | |
|---|---|
| **IOWA** | **Restatement approach**<br>*See Drinkall v. Used Car Rentals*, 32 F.3d 329, 331 (8th Cir. 1994) (noting that Iowa courts apply the most-significant relationships choice of law approach in tort cases and concluding that Iowa law applied where "the accident occurred in Iowa [and plaintiff] was an Iowa resident") (internal punctuation omitted) |
| **KANSAS** | **Lex loci delicti approach**<br>*See Raskin v. Allison*, 57 P.3d 30, 32 (Kan. Ct. App. 2002) (noting that the "Kansas Supreme Court has consistently applied the rule of lex loci delicti in tort cases, even when all parties are Kansas residents" and holding that law of Mexico applied because injuries occurred there) |
| **MAINE** | **Restatement approach**<br>*See Bazzell v. C. C. Eastern, Inc.*, 1999 U.S. Dist. LEXIS 5723, at *8, *9 (D. Me. 1999) (noting Maine's adherence to the Restatement approach to choice of law issues in tort actions and applying Maine law to plaintiff's negligence claim where "the injury and much of the conduct alleged to have caused the injury took place" in Maine "despite the fact that Defendant is a Michigan corporation with a principal place of business in Warren, Michigan") |
| **MARYLAND** | **Lex loci delicti approach**<br>*See Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230-32 (Md. 2000) (decertifying putative classes because Maryland adheres to the *lex loci delicti* rule in analyzing choice of law problems for tort actions and the place of the injury is where the injury was suffered, not where the wrongful act that led to the injury took place; because individuals' alleged injuries accrued over many years, Maryland "could not qualify as the 'place of wrong,' 'place of injury,' or the place where 'the last act giving rise to the cause of action' occurred") |
| **MASSACHUSETTS** | **Functional approach with reference to Restatement factors and governmental interests**<br>*See Kramer v. Acton Toyota*, 18 Mass. L. Rep. 456 (Mass. Super. Ct. 2004) (noting that Massachusetts takes a functional approach to conflict of law questions, considering which state has interests in the action and with implicit guidance from the factors outlined in the Restatement); *Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 585 (Mass. 1983) (applying law of "the place where the last event necessary to make an actor liable for an alleged tort takes place" and because decedent learned of the death of her son while she was in Massachusetts, which caused her injury from severe emotional distress, Massachusetts law applied to the claim even though the conduct that led to her son's death occurred elsewhere) |

- 3 -

## APPENDIX A

## STATE-BY-STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **MISSISSIPPI** | **Restatement approach**<br><br>*See Bonti v. Ford Motor Co.*, 898 F. Supp. 391, 395 (S.D. Miss. 1995) (noting Mississippi's adherence to the Restatement's center of gravity/most significant relationship test and applying North Carolina law to plaintiff's tort action where, *inter alia*, plaintiffs "resided in North Carolina for over twenty-five years" and purchased defendant's product in North Carolina) |
| **MISSOURI** | **Restatement approach**<br><br>*See Alumbaugh v. Union Pac. R.R.*, 322 F.3d 520, 524 (8th Cir. 2003) (Missouri has adopted the Restatement rules for choice of law in tort cases; analyzing which state has the "most significant relationship" to the occurrence, Kansas law applied to plaintiff's claims where the injury to plaintiff occurred in Kansas and the relationship between the parties was centered there) |
| **MONTANA** | **Restatement approach**<br><br>*See Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1007, 1012 (Mont. 2000) (adopting the Restatement's "most significant relationship" approach to determine the applicable law for tort claims and concluding that application of the law of the state where the injured party resides or where the product was purchased is more appropriate than the law of the state of manufacture) |
| **NEW JERSEY** | **Governmental interest approach**<br><br>*See Amoroso v. Burdette Tomlin Mem. Hosp.*, 901 F. Supp. 900, 905 (D.N.J. 1995) (applying New Jersey governmental interest approach and determining that "when 'the place where the injury occurred was not fortuitous . . . the place of the injury assumes much greater importance and in some instances may be determinative'") (quoting *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986)) |
| **NORTH CAROLINA** | **Lex loci delicti approach**<br><br>*See Mooney v. Wood/Chuck Chipper Corp.*, No. 1:99cv207-T, 2000 U.S. Dist. LEXIS 21293, at *7 (W.D.N.C. Jan. 5, 2000) (applying the "well settled choice of law rule in North Carolina, lex loci" and finding that North Carolina would apply Georgia's substantive products liability law where plaintiff was injured by an allegedly defective product in Georgia); *Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 685 (M.D.N.C. 1999) ("North Carolina has long followed the lex loci rule, which applies the substantive law of the state in which the injury occurred.") |

- 4 -

# APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| OHIO | **Hybrid approach combining *lex loci delicti*, governmental interest, and Restatement** |
|---|---|
| | *See Jones v. Brush Wellman, Inc.*, No. 1:00 cv 0777, 2000 U.S. Dist. LEXIS 21897, at *11, *15 (N.D. Ohio Sept. 13, 2000) (applying Ohio's choice of law test that presumes the law of the place of the injury controls and considers governmental interests and Restatement factors, and dismissing product liability claim seeking, *inter alia*, medical monitoring against an Ohio defendant where "alleged exposure occurred in Tennessee. Plaintiffs are all residents of Tennessee and are employed in" Tennessee, thus, "Tennessee law will be applied to this case"); *Lawson v. Valve-Trol Co.*, 610 N.E.2d 425, 427 (Ohio Ct. App. 1991) (applying Indiana law to product liability action brought against Ohio manufacturer where plaintiffs were Indiana residents, were injured in Indiana and received Indiana workers' compensation benefits); *Jernigan v. Columbia Elec. Mfg. Co.*, Nos. 63441, 63442, 1992 Ohio App. LEXIS 6412, 1992 WL 388872, at *6 (Ohio Ct. App. Dec. 17, 1992) (applying Tennessee law to product liability action brought against Ohio manufacturer where plaintiffs were Tennessee and Georgia residents, were injured in Tennessee and could receive Tennessee workers' compensation benefits). |
| **OKLAHOMA** | **Restatement approach** |
| | *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974) (adopting Restatement test for resolving conflict of law issues in tort cases); *NMP Corp. v. Parametric Tech. Corp.*, 958 F. Supp. 1536, 1544 (N.D. Okla. 1997) (holding that Oklahoma law applied to plaintiff's tort claims because "all significant interactions" that resulted in the conduct complained of by the Oklahoma plaintiff against an out-of-state defendant took place in Oklahoma) |

# APPENDIX A

## STATE-BY-STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| State | |
|---|---|
| **PENNSYLVANIA** | **Hybrid Restatement and governmental interest approach**<br>*See Normann v. Johns-Manville Corp.*, 593 A.2d 890, 893 (Pa. Super. Ct. 1991) (Pennsylvania choice of law rules require the court to "combin[e] the methodologies of a 'government interest analysis' and the 'significant relationship' approach of the Restatement (Second) of Conflicts § 145 (1971)" to determine the appropriate law); *In re Diet Drugs Prods. Liab. Litig.*, No. 98-20626, 1999 U.S. Dist. LEXIS 13228, at *42 (E.D. Pa. Aug. 26, 1999) (analyzing which state "has the greater interest in the application of its law" in class action seeking medical monitoring and concluding that the states where the plaintiffs reside govern because those states have "a strong interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders, which is the conduct which gave rise to the class members' claims"); *Lewis v. Bayer AG*, 66 Pa. D. & C. 4th 470, 494 (Phila. Ct. Com. Pl. 2004) (the state in which the consumer purchased and ingested the drug has a priority of interest over the manufacturer's home state because "the states where the putative class resides are more substantial and have a stronger interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders") |
| **RHODE ISLAND** | **Interest weighing approach with reference to Restatement factors**<br>*See Najarian v. Nat'l Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001) (noting that under Rhode Island's "interest-weighing" approach to choice of law issues sounding in tort "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship" and concluding that in an action for personal injury Massachusetts law governed where "[t]he place where the injury and the conduct allegedly causing the injury occurred was Massachusetts"). |
| **TENNESSEE** | **Restatement approach**<br>*See Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 909-10 (M.D. Tenn. 1996) (under Tennessee choice of law principles based on the Restatement factors, the law of plaintiff's home state of Tennessee governed his tort claim alleging that defendant's failure to disclose caused him injury, because although defendant's headquarters were in Massachusetts and its alleged failure to disclose occurred there, Tennessee was where plaintiff's loss was sustained) |
| **TEXAS** | **Restatement approach**<br>*See Burleson v. Liggett Group, Inc.*, 111 F. Supp. 2d 825, 830 (E.D. Tex. 2000) (noting Texas' adoption of Restatement approach to choice of law issues in tort cases and concluding Texas has "the most significant relationship" to the litigation where "the plaintiffs were Texas residents and injured in Texas by the actions of the defendants" in products liability tobacco litigation) |

## APPENDIX A

## STATE BY STATE CHOICE OF LAW RULES FOR TORT CLAIMS

| | |
|---|---|
| **VERMONT** | **Restatement approach**<br>*See McKinnon v. F.H. Morgan & Co., Inc.*, 750 A.2d 1026, 1028, 1029 (Vt. 2000) (adopting the Restatement "most significant relationship" test and determining that the law of the place where the injury occurred was a key factor); *Amiot v. Ames*, 623 A.2d 675, 677 (Vt. 1997) (same). |
| **WASHINGTON** | **Restatement approach**<br>*See Williams v. State*, 885 P.2d 845, 848-49 (Wash. Ct. App. 1994) (noting Washington's adherence to the Restatement approach to choice of law issues in tort cases and applying Oregon law to plaintiff's claim where plaintiff and decedent were Oregon residents); *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 605 (W.D. Wash. 2001) (applying "most significant relationship" test to choice of law issue for medical monitoring claim brought on behalf of flight attendants exposed to secondhand cigarette smoke and concluding that because each state where plaintiffs reside has an interest in the outcome, the law of each such state will be applied) |
| **WEST VIRGINIA** | **Lex loci delicti approach**<br>*See W. Va. ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 780 (W. Va. 2004) (noting West Virginia applies the law of the place of the injury and thus, a West Virginia court in a toxic tort case seeking medical monitoring "must apply the substantive laws of Ohio, Illinois, Indiana, Pennsylvania, Tennessee, and Virginia to those class members whose exposure . . . allegedly occurred in those states") |
| **WISCONSIN** | **Choice-influencing considerations approach**<br>*See Smith v. Meadows Mills, Inc.*, 60 F. Supp. 2d 911, 915 (E.D. Wis. 1999) (noting Wisconsin's adherence to Leflar's five choice-influencing considerations for resolving choice of law issues and applying Wisconsin law to plaintiff's product liability claim because, *inter alia*, plaintiff was a Wisconsin resident and the accident occurred in Wisconsin) |
| **WYOMING** | **Lex loci delicti approach**<br>*See Jack v. Enterprise Rent-A-Car Co.*, 899 P.2d 891, 895 (Wyo. 1995) (applying Wyoming's *lex loci delicti* test to tort claim and concluding Wyoming law applied because despite the fact that defendant was a California corporation, the damages were sustained in Wyoming and plaintiffs resided in Wyoming); *Stuarie v. Colo. Interstate Gas Co.*, 130 F. Supp. 2d 1263, 1266 (D. Wyo. 2000) ("Wyoming has a nearly uninterrupted history of using the situs of the injury to determine the proper substantive law in tort actions.") |

- 7 -

786613-1

FILED
DOUGLAS COUNTY
DISTRICT COURT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

Carol Porter, on behalf of
herself and all others similarly situated,
Plaintiff,

Merck & Co., Inc,
Defendant.

2005 AUG 19 P 2: 24

Case No. 04 C 886
Div. No. 1

## MEMORANDUM DECISION

This matter comes on before the court on the defendant's motion to dismiss.

### Nature of the Case

Plaintiff is an individual resident of Kansas and defendant is a New Jersey corporation which manufactured the drug Vioxx. Plaintiff purchased and consumed Vioxx. Defendant removed Vioxx from the market in September 2004. Plaintiff filed this suit on her behalf and others similarly situated alleging that defendant was negligent "in the design, manufacture, testing, advertising, marketing, promoting, labeling, warnings given and sale of Vioxx", and that defendant violated the Kansas Consumer Protection Act (**KCPA**) by withholding information from the public concerning alleged cardiovascular risks. Plaintiff has now abandoned her claim of negligence and wishes to proceed solely on the claim of violation of the KCPA.

Plaintiff seeks the refund of the money she spent to purchase Vioxx and asks the court to order the defendant to pay an amount equal to monies inappropriately acquired by defendant as a result of its sale of Vioxx. Plaintiff specifically states that she does not claim to have suffered personal injury as a

result of taking Vioxx and does not allege that Vioxx was ineffective in relieving her pain. Plaintiff also asks the court to impose penalties under the KCPA.

## Standard of Review

In *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 620 P.2d 837 (1980), the court held that in deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to 60-212(b)(6) the court should follow the following rules:

> "When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer." 5 Kan. App. 2d 472, Syl. ¶ 1.

> "Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." 5 Kan. App. 2d 472, Syl. ¶ 2.

> "In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself." 5 Kan. App. 2d 472, Syl. ¶ 3. See also, *Bruggeman v. Schimke*, 239 Kan. 245, 247 (1986), quoting *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472 (1980); and *Blevins v. Board of Douglas County Comm'rs.*, 251 Kan. 374 (1992).

K.S.A. 60-212(c) provides as follows:

2

> After the pleadings are closed but within such time as not to delay the trial any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion.

### Conclusions of Law

Defendant moves to dismiss plaintiff's petition because: (1) plaintiff's petition does not allege a cognizable injury and (2) plaintiff seeks to recover purely economic damages under a tort theory. Plaintiff claims that she is entitled to recover the difference between the price she paid for Vioxx and the amount that it would have sold for had defendant disclosed to the public the cardiovascular risks of taking Vioxx. Defendant contends that plaintiff did not suffer any injury because she did not suffer physical injury from taking Vioxx and she received what she purchased, "a drug that relieved her pain."

As noted above, the plaintiff's sole claim is made pursuant to the KCPA. *Finstad v. Washburn University of Topeka*, 252 Kan. 465, 845 P.2d 685 (1993), provides guidance on the issue present in this case. The *Finstad* case involves a claim made by court reporting students alleging they were damaged by Washburn University. They made a claim pursuant to the KCPA for statements made by Washburn in its 1987-89 catalogues that its court reporting program was accredited or approved by the National Shorthand Reporters Association. The program was not accredited by NSRA until 1990. Plaintiffs claimed that they were aggrieved because they paid tuition for a program that was not accredited,

3

but did not allege that they were induced to enroll in the program by the false claim that it was accredited. The district court granted summary judgment in favor of the defendants and the Supreme Court affirmed that ruling.

The *Finstad* Court noted that the KCPA provides two remedies for violation of the act. First, K.S.A. 50-628 grants the attorney general the right to investigate and enforce the act and K.S.A. 50-632 permits the attorney general or any county or district attorney to bring an action to enforce the act. Second, K.S.A. 50-634 grants to an aggrieved consumer the right to bring an action to obtain a declaratory judgment or injunction and may bring an action to recover damages and civil penalties. This section also permits class actions for declaratory and injunctive relief and damages for violation of certain sections of the act, but not penalties. The *Finstad* Court defines an aggrieved consumer to be one who has "suffered loss or injury." 252 Kan. at 472. The court held that:

> A loss or injury resulting from a violation of the Act is not required in an action filed by the attorney general under K.S.A. 50-632 and K.S.A. 50-636; it is, however, required for one filed by a consumer under K.S.A. 50-634(b). . . . We do not interpret an aggrieved consumer to be one who is neither aware of nor damaged by a violation of the Act. 252 Kan. at 473.

The plaintiff argues that Kansas follows the "benefit of the bargain" rule of damages and contends that since plaintiff did not receive the benefit of her bargain she has suffered loss. If one analyzes the *Finstad* decision in light of the facts present in that case it does not support the plaintiff's contention. The *Finstad* plaintiffs were told that the program in which they enrolled was accredited when in fact it was not. Arguably, the non-accredited program is worth less than an accredited one; however, the Court said that the plaintiffs did not

4

suffer "loss or injury" and were not aggrieved within the meaning of the statute. It seems to the court that the same situation exists in this case. The plaintiff, Ms. Porter, suffered no physical injury and received a drug that provided relief for her pain. Thus, she has no loss.

The attorney general may bring an action against defendant if he believes that the citizens of Kansas have been aggrieved by defendant's actions, even if no loss has been suffered. The KCPA has two different avenues available to remedy actions that violate its provisions. The Supreme Court has held that when there is no loss or injury, it is up to the attorney general to enforce the act. The citizens of Kansas can be protected from the actions of defendant about which plaintiff complains.

Defendants' motion to dismiss is granted.

This memorandum decision constitutes a journal entry and judgment is entered in accordance with the findings hereinabove made. This memorandum is dated and effective this 19th day of August, 2005.

Robert W. Fairchild
District Judge

cc:     Patrick Stueve
        George Verschelden