

LEXISNEXIS' FILE & SERVE
6710052
E-SERVICE
Sep 15 2005
4:16PM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX ) | MDL NO. 1657 |
| ) | |
| PRODUCTS LIABILITY LITIGATION ) | SECTION: L |
| ) | |
| ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ) | |
| ALL PURCHASE CLAIMS CLASS ) | JURY TRIAL DEMANDED |
| ACTION COMPLAINTS PENDING OR ) | |
| SUBJECT TO TRANSFER TO ) | PURCHASE CLAIMS MASTER |
| MDL 1657 ) | CLASS |
| ) | |

## MEMORANDUM IN SUPPORT OF MERCK'S MOTION TO DISMISS PLAINTIFFS' PURCHASE CLAIMS MASTER CLASS ACTION COMPLAINT



RECEIVED
NOV – 7 2005
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

786618_1

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

I.    PLAINTIFFS' CLAIMS ARE GOVERNED BY THE LAWS OF THE STATES
      WHERE THEY PURCHASED VIOXX ....................................................................... 4

      A.    Under The Choice-Of-Law Rules Of Any Of The States At Issue,
            Plaintiffs' Claims Are Governed By The Laws Of Their States Of
            Residence And Principal Places Of Business ........................................................ 6

            1.    States Adopting The "Most Significant Relationship" Test Would
                  Choose The Law Of Each Named Plaintiff's State Of Residence Or
                  Principal Place of Business ............................................................................ 6

            2.    States Adopting The "Governmental Interests" Test Would Also
                  Choose The Law Of Each Plaintiff's State Of Residence Or
                  Principal Place Of Business ......................................................................... 10

            3.    States Adopting The *Lex Loci* Test Would Choose The Law Of
                  Each Plaintiff's State Of Residence Or Principal Place Of Business ...... 13

            4.    States Adopting The UCC Choice-Of-Law Test Would Choose
                  The Law Of Each Plaintiff's State Of Residence Or Principal Place
                  Of Business As Well ..................................................................................... 15

      B.    Application Of New Jersey Law To A Nationwide Class Would Violate
            Constitutional Limitations ................................................................................. 16

II.   AS A MATTER OF LAW, THE PLAINTIFFS' CLAIMS MAY NOT PROCEED
      BECAUSE NO COGNIZABLE INJURY IS ALLEGED .......................................... 18

      A.    "No Injury" Pharmaceutical Claims Have Repeatedly Been Rejected In
            This Circuit And Elsewhere .............................................................................. 19

      B.    Strong Policy Considerations Support Dismissing "No Injury" Claims ............. 23

III.  PLAINTIFFS' CLAIMS FOR VIOLATION OF STATE CONSUMER
      PROTECTION STATUTES MUST BE DISMISSED (FIRST AND SECOND
      CLAIMS FOR RELIEF) ............................................................................................ 24

      A.    All Of The Consumer Protection Act Claims By VIOXX Users Fail ................ 26

            1.    Plaintiff Edward Wright Cannot State A Claim Under The Arizona
                  Consumer Fraud Act ..................................................................................... 26

            2.    Plaintiff Clara Fontanilles Fails To State A Claim Under Florida
                  Law ................................................................................................................ 29

            3.    The Claims Of Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin
                  Williams, and Sharon Murphy All Fail Under Illinois Law .................... 31

786619_1

**TABLE OF CONTENTS**
(continued)

Page

4. The Indiana Plaintiffs Michelle Biondillo and Stephen Keisker Fail To State A Cause Of Action Under The Indiana Deceptive Consumer Sales Act ................................................................ 35

5. Plaintiff Christie Anderson Fails To State A Claim Under The Kentucky Consumer Protection Act ........................................ 36

6. Plaintiffs Frank Saia and Emily Feinberg Fail To State A Claim Under Massachusetts Law ........................................ 38

7. Plaintiff Christine Seitz's Michigan Consumer Protection Act Claim Is Barred Under Michigan Law ........................................ 39

8. Plaintiff Sara Cheeseman Cannot State A Claim For Consumer Fraud ................................................................................ 41

9. Plaintiff Brenda Aguero Does Not State A Claim Under Washington Law ................................................................ 43

10. If New Jersey Law Governed Plaintiffs' Claims, None Of Them Would State A Cause Of Action ................................................ 44

B. The Third-Party Payor Plaintiffs' Consumer Protection Act Claims Fail ........... 47

1. Cavalier Homes, Inc. Cannot State A Claim Under The Alabama Deceptive Trade Practices Act ........................................ 48

2. AFSCME Fails To State A Claim Under District Of Columbia Law ..... 50

3. The Illinois Third-Party Payor Entities Fail to State A Claim Under Illinois Law ........................................ 51

4. United Senior Action Cannot State A Claim Under Indiana's Consumer Protection Act ........................................ 52

5. The Third-Party Payor Claims Fail Under The Massachusetts Consumer Protection Statute ........................................ 53

6. Michigan Third-Party Payors Cannot State A Claim Under Michigan Law ........................................ 53

7. The New York Third-Party Payors Cannot State A Claim Under The New York Deceptive Acts And Practices Act ........................................ 53

8. The UFCW Local 1776 Cannot State A Claim Under The Pennsylvania Unfair Trade Practices And Consumer Protection Law ................................................................ 55

9. The Third-Party Payor Claims Would All Fail Under New Jersey Law ................................................................ 57

IV. PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED WARRANTIES MUST BE DISMISSED (FOURTH CLAIM FOR RELIEF) ........................................ 59

-ii-

**TABLE OF CONTENTS**
(continued)

Page

A.   Plaintiffs Cannot State A Claim For Breach Of The Warranty of Fitness For A Particular Purpose ........................................................................ 60

B.   Plaintiffs Cannot State A Claim For Breach Of The Implied Warranty of Merchantability ............................................................................... 61

    1.   Plaintiffs Fail to Allege That They Did Not Receive The Benefit Of Their Bargain ........................................................................ 61

    2.   The Implied Warranty Claims Must Be Dismissed As To Nearly All Plaintiffs For The Additional Reason That They Fail to Allege Timely Notice Of Breach As Required By U.C.C. § 2-607 .................... 62

    3.   Many Of The Implied Warranty Of Merchantability Claims Are Barred Because The Plaintiffs Lack Vertical Privity With Merck .......... 64

        a.   Alabama (Plaintiff Cavalier Homes, Inc.) .................................. 64

        b.   Arizona (Plaintiff Edward Wright) ............................................. 65

        c.   Florida (Plaintiff Clara Fontanilles) ............................................ 65

        d.   Illinois (Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin Williams, Sharon Murphy, Midwest Operating Engineers, and Painters District Council No. 30 Health and Welfare Fund) ........................................................................... 65

        e.   New York (Plaintiffs New York State Wide Senior Action Council, Suffolk County, And Teamsters Local 237 Welfare Fund) ................................................................. 65

    4.   The Warranty Claims Of Third-Party Payors Must Also Be Dismissed Because Third-Party Payors Are Not "Purchasers" Within The Meaning Of The UCC .......................................... 66

    5.   State-Specific Warranty Law Bars the Claims of Plaintiffs from Certain States ........................................................................ 66

        a.   Plaintiff UCFW Cannot State A Claim Against Merck Under Pennsylvania Warranty Law ............................................. 66

        b.   Michigan Plaintiffs Cannot State A Warranty Claim Against Merck Under Michigan Law ......................................... 67

    6.   Even If New Jersey Law Applied to Plaintiffs' Warranty Claims, Those Claims Would Still Fail .............................................. 67

V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED .............. 69

VI.   CLAIMS OF ASSOCIATION PLAINTIFFS MUST BE DISMISSED FOR LACK OF STANDING ........................................................................ 71

**TABLE OF CONTENTS**
(continued)

Page

VII.   ALLEGATIONS RELEVANT TO THE UNREPRESENTED CLASSES
       SHOULD BE STRICKEN...............................................................................73

CONCLUSION.................................................................................................75

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adam A. Weschler & Son, Inc. v. Klank,*
561 A.2d 1003 (D.C. 1989) ............................................................. 50, 51

*Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,*
788 F. Supp. 1203 (S.D. Fla. 1992) ................................................ 65

*Albertson v. Wyeth Inc.,*
63 Pa. D. & C.4th 514 (Pa. Ct. Com. Pl. 2003) ......................... 67, 69

*Am. Bumper & Mfg. Co. v. Transtechnology Corp.,*
652 N.W.2d 252 (Mich. Ct. App. 2002) ....................................... 62

*Am. Dredging Co. v. Plaza Petroleum, Inc.,*
799 F. Supp. 1335 (E.D.N.Y. 1992) .............................................. 65

*Am. Universal Ins. Group v. Gen. Motors Corp.,*
578 So. 2d 451 (Fla. Dist. Ct. App. 1991) .................................... 65

*Ambassador Steel Co. v. Ewald Steel Co.,*
190 N.W.2d 275 (Mich. Ct. App. 1971) ....................................... 60

*Angus v. Shiley, Inc.,*
989 F.2d 142 (3d Cir. 1993) ........................................................... 22

*Animal Legal Def. Fund, Inc. v. Provimi Veal Corp.,*
626 F. Supp. 278 (D. Mass. 1986) ............................................. 38, 39

*Anthony v. Country Life Mfg., L.L.C.,*
No. 02 C 1601, 2002 WL 31269621 (N.D. Ill. Oct. 9, 2002) ......... 62

*Arc Networks, Inc. v. Gold Phone Card Co.,*
756 A.2d 636 (N.J. Super. Ct. Law Div. 2000) ......................... 57, 58

*Arnold v. Microsoft Corp.,*
No. 00-CI-00123, 2001 WL 193765 (Ky. Cir. Ct. July 21, 2000) ......... 37

*Aspinall v. Philip Morris Cos.,*
813 N.E.2d 476 (Mass. 2004) ........................................................ 18

*Atl. Pipe Corp. v. R. J. Longo Constr. Co.,*
652 N.E.2d 279 (Mass. App. Ct. 1993) ......................................... 63

*Avery v. State Farm Mut. Auto. Ins. Co.,*
Docket No. 91494, 2005 Ill. LEXIS 959 (Ill. Aug. 18, 2005) ......... 12, 32, 33

*Baca v. New Prime, Inc.,*
810 N.E.2d 711 (Ind. 2004) ........................................................... 14

*Bano v. Union Carbide Corp.,*
361 F.3d 696 (2d Cir. 2004) ........................................................... 72

*Barbarin v. Gen. Motors Corp.,*
No. 84-0888, 1993 WL 765821 (D.D.C. Sept. 22, 1993) ............... 19

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
343 F.3d 719 (5th Cir. 2003) ......................................................... 25

786619_1

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Billions v. White & Stafford Furniture Co.,*
  528 So. 2d 878 (Ala. Civ. App. 1988) ............................................................... 48

*Blommer Chocolate Co. v. Bongards Creameries, Inc.,*
  635 F. Supp. 911 (N.D. Ill. 1985) ...................................................................... 63

*BMW of N. Am., Inc. v. Gore*
  517 U.S. 559 (1996) ........................................................................................... 17

*Bober v. Glaxo Wellcome, PLC,*
  246 F.3d 934 (7th Cir. 2001) ............................................................................. 35

*Bongat v. Fairview Nursing Care Ctr., Inc.,*
  341 F. Supp. 2d 181 (E.D.N.Y. 2004) ............................................................... 70

*Briehl v. Gen. Motors. Corp.,*
  172 F.3d 623 (8th Cir. 1999) ...................................................................... *passim*

*Butler v. Audio/Video Affiliates, Inc.,*
  611 So. 2d 330 (Ala. 1992) ................................................................................ 49

*Butterworth v. Quick & Reilly, Inc.,*
  998 F. Supp. 1404 (M.D. Fla. 1998) .................................................................. 31

*Canario v. Gunn,*
  300 A.D.2d 332 (N.Y. App. Div. 2002) ............................................................ 54

*Cannon v. Cherry Hill Toyota, Inc.,*
  161 F. Supp. 2d 362 (D.N.J. 2001) .................................................................... 44

*Carlson v. Gen. Motors Corp.,*
  883 F.2d 287 (4th Cir. 1989) ............................................................................. 61

*Carroll v. Cellco P'ship,*
  713 A.2d 509 (N.J. Super. Ct. App. Div. 1998) ................................................ 12

*Carter v. Gugliuzzi,*
  716 A.2d 17 (Vt. 1998) ...................................................................................... 41

*Cartiglia v. Johnson & Johnson Co.,*
  No. MID-L-2754-01, 2002 WL 1009473 (N.J. Super. Ct. Law Div. Apr. 24,
  2002) .................................................................................................................. 12

*Catlett v. Wyeth, Inc.,*
  5:04-CV-154-2 (WDO), 2004 U.S. Dist. LEXIS 26498 (M.D. Ga. Sept. 14,
  2004) .................................................................................................................. 28

*Cayuga Press of Ithaca, Inc. v. Lithografiks, Inc.,*
  211 A.D.2d 908 (N.Y. App. Div. 1995) ............................................................ 63

*Channel Cos. v. Britton,*
  400 A.2d 1221 (N.J. Super. Ct. App. Div. 1979) .............................................. 57

*Chin v. Chrysler Corp.,*
  182 F.R.D. 448 (D.N.J. 1998) ...................................................................... 19, 68

*Christopher v. Cutter Labs.,*
  53 F.3d 1184 (11th Cir. 1995) ........................................................................... 30

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*City Check Cashing, Inc. v. Nat'l State Bank,*
582 A.2d 809 (N.J. Super. Ct. App. Div. 1990)................................................................. 57, 58

*Clark v. Experian Info. Solutions, Inc.,*
No. 03 C 7882, 2005 U.S. Dist. LEXIS 8243 (N.D. Ill. April 26, 2005) ................................ 8

*Classic Car Centre, Inc. v. Haire Mach. Corp.,*
580 N.E.2d 722 (Ind. Ct. App. 1991)..................................................................................... 53

*Clay v. Am. Tobacco Co.,*
188 F.R.D. 483 (S.D. Ill. 1999) .............................................................................................. 6

*Cmty. Guardian Bank v. Hamlin,*
898 P.2d 1005 (Ariz. Ct. App. 1995)...................................................................................... 70

*Connick v. Suzuki Motor Co.,*
675 N.E.2d 584 (Ill. 1996)........................................................................................... 33, 62, 63

*Cooper's Mobile Homes, Inc. v. Simmons,*
617 P.2d 415 (Wash. 1980)..................................................................................................... 43

*Curley v. AMR Corp.,*
153 F.3d 5 (2d Cir. 1998)........................................................................................................ 11

*Delahunt v. Cytodyne Techs.,*
241 F. Supp. 2d 827 (S.D. Ohio 2003) .................................................................................. 46

*Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.,*
307 F.3d 1127 (9th Cir. 2002) ................................................................................................ 43

*Doug Connor, Inc. v. Proto-Grind, Inc.,*
761 So. 2d 426 (Fla. Dist. Ct. App. 2000) ............................................................................. 60

*Dragon v. Monahan Ford Corp.,*
538 N.Y.S.2d 142 (N.Y. Civ. Ct. 1989)................................................................................. 66

*Dunlap v. Jimmy GMC of Tucson, Inc.,*
666 P.2d 83 (Ariz. Ct. App. 1983)......................................................................................... 27

*Dunn v. Bd. of Prop. Assessment, Appeals & Review,*
877 A.2d 504 (Pa. Commw. Ct. 2005) ................................................................................... 70

*Dura Pharms., Inc. v. Broudo,*
125 S. Ct. 1627 (2005)............................................................................................................ 34

*Dyer v. Best Pharmacal,*
577 P.2d 1084 (Ariz. Ct. App. 1978).................................................................................. 27, 28

*EBSCO Indus., Inc. v. LMN Enters. Inc.,*
89 F. Supp. 2d 1248 (N.D. Ala. 2000).................................................................................... 49

*Ehlis v. Shire Richwood, Inc.,*
367 F.3d 1013 (8th Cir. 2004) ................................................................................................ 42

*Eisen v. Independence Blue Cross,*
2002 WL 1803721 (Pa. Ct. Com. Pl. July 26, 2002) ............................................................. 56

*Eli Lilly & Co. v. Roussel Corp.,*
23 F. Supp. 2d 460 (D.N.J. 1998) .......................................................................................... 70

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Ex parte Exxon Corp.*,
  725 So. 2d 930 (Ala. 1998) ..................................................................... 48, 49

*Ex parte Household Retail Servs., Inc.*,
  744 So. 2d 871 (Ala. 1999) .......................................................................... 49

*Felix v. Hoffmann-LaRoche, Inc.*,
  540 So. 2d 102 (Fla. 1989) ........................................................................... 30

*Fink v. Ricoh Corp.*,
  839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .............................................. 12, 13

*Flast v. Cohen*,
  392 U.S. 83 (1968) ..................................................................................... 74

*Flory v. Silvercrest Indus. Inc.*,
  633 P.2d 383 (Ariz. 1981) ............................................................................ 65

*Ford Motor Co. v. Rice*,
  726 So. 2d 626 (Ala. 1998) .......................................................................... 48

*Forton v. Laszar*,
  622 N.W.2d 61 (Mich. 2001) ....................................................................... 40

*Frank v. Edward Hines Lumber Co.*,
  761 N.E.2d 1257 (Ill. App. Ct. 2001) ............................................................ 60

*Garcia v. Wyeth-Ayerst Labs.*,
  385 F.3d 961 (6th Cir. 2004) ....................................................................... 40

*Gaston v. Hunter*,
  588 P.2d 326 (Ariz. Ct. App. 1978) ............................................................... 27

*Gen. Motors Acceptance Corp. v. Laesser*,
  718 So. 2d 276 (Fla. Dist. Ct. App. 1998) ...................................................... 29

*Gibbs v. Ernst*,
  647 A.2d 882 (Pa. 1994) ........................................................................... 55, 56

*Glazewski v. Coronet Ins. Co.*,
  483 N.E.2d 1263 (Ill. 1985) ......................................................................... 31

*Go2Net Inc. v. Freeyellow.com, Inc.*,
  109 P.3d 875 (Wash. Ct. App. 2005) ............................................................ 70

*Goshen v. Mut. Life Ins. Co.*,
  774 N.E.2d 1190 (N.Y. 2002) ...................................................................... 12

*Hadar v. Concordia Yacht Builders, Inc.*,
  886 F. Supp. 1082 (S.D.N.Y. 1995) .............................................................. 16

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  719 P.2d 539 (Wash. 1986) .......................................................................... 43

*Harlan Feeders, Inc. v. Grand Labs.*,
  881 F. Supp. 1400 (N.D. Iowa 1995) .............................................................. 9

*Healy v. Beer Inst.*
  491 U.S. 324 (1989) ................................................................................... 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hearn v. R.J. Reynolds Tobacco Co.,*
   279 F. Supp. 2d 1096 (D. Ariz. 2003) ................................................................................ 27

*Heavner v. Uniroyal, Inc.,*
   305 A.2d 412 (N.J. 1973) ................................................................................................... 12

*Heindel v. Pfizer,*
   Civ. A. No. 02-3348 (SRC), 2004 U.S. Dist. LEXIS 12232 (D.N.J. 2004) .................. *passim*

*Henry v. Dow Chem. Co.,*
   No. 125205, 2005 Mich. LEXIS 1131 (Mich. July 13, 2005) ............................................ 41

*Herbstman v. Eastman Kodak Co.,*
   342 A.2d 181 (N.J. 1975) ................................................................................................... 68

*Hobbs v. Gen. Motors Corp.,*
   134 F. Supp. 2d 1277 (M.D. Ala. 2001) ............................................................................ 62

*Holeman v. Neils,*
   803 F. Supp. 237 (D. Ariz. 1992) ...................................................................................... 27

*Hubbard v. Gen. Motors Corp.,*
   No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22,
   1996) ............................................................................................................................. 19, 62

*Hubbard Mfg. Co. v. Greeson,*
   515 N.E.2d 1071 (Ind. 1987) ............................................................................................. 14

*Hundred E. Credit Corp. v. Eric Schuster,*
   515 A.2d 246 (N.J. Super. Ct. App. Div. 1986) ................................................................ 57

*Hunt v. Wash. State Apple Adver. Comm'n,*
   432 U.S. 333 (1977) ........................................................................................................... 72

*Huntington v. Attrill,*
   146 U.S. 657 (1892) ........................................................................................................... 17

*Hutson v. Rexall Sundown, Inc.,*
   837 So. 2d 1090 (Fla. Ct. App. 2003) .................................................................................. 8

*In re Air Bag Prods. Liab. Litig.,*
   7 F. Supp. 2d 792 (E.D. La. 1998) ............................................................................... 20, 61

*In re Air Crash Disaster,*
   644 F.2d 594 (7th Cir. 1981) ............................................................................................. 10

*In re Baycol Prods. Liab. Litig.,*
   218 F.R.D. 197 (D. Minn. 2003) ..................................................................................... 4, 69

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.,*
   288 F.3d 1012 (7th Cir. 2002) .................................................................................... *passim*

*In re Consol. Parlodel Litig.,*
   22 F. Supp. 2d 320 (D.N.J. 1998) ................................................................................. 12, 13

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
   174 F.R.D. 332 (D.N.J. 1997) ..................................................................................... *passim*

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,*
    966 F. Supp. 1525 (E.D. Mo. 1997)................................................................... 25

*In re Managed Care Litig.,*
    185 F. Supp. 2d 1310 (S.D. Fla. 2002) ............................................................. 71

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.,*
    21 F. Supp. 2d 593 (E.D. La. 1998).................................................................... 9

*In re Norplant Contraceptive Prods. Liab. Litig.,*
    165 F.3d 374 (5th Cir. 1999) ............................................................................ 28

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    263 F. Supp. 2d 172 (D. Mass. 2003) ............................................................... 72

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
    MDL No. 1407, 2003 U.S. Dist. LEXIS 22530 (W.D. Wash. Nov. 5, 2003) ...................... 37

*In re Propulsid Prods. Liab. Litig.,*
    208 F.R.D. 133 (E.D. La. 2002)................................................................... 4, 5, 14

*In re Relafen Antitrust Litig.,*
    221 F.R.D. 260 (D. Mass. 2004)......................................................................... 5

*In re Rezulin Prods. Liab. Litig.*
    210 F.R.D. 61 (S.D.N.Y. 2002) ................................................................. *passim*

*In re Rezulin Prods. Liab. Litig.*
    133 F. Supp. 2d 272 (S.D.N.Y. 2001)............................................................... 28

*In re Vitamins Antitrust Litig.,*
    MDL No. 1285, 2001 U.S. Dist. LEXIS 25072 (D.D.C. Mar. 13, 2001)............................. 49

*Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.,*
    No. ATL-L-3015-03 MT (N.J. Super. Ct. Law Div. June 30, 2005) ................................... 12

*Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.,*
    No. ATL-L-3015-03 MT (N.J. Super. Ct. Law Div. July 8, 2004)  ..................................... 58

*Jarman v. United Indus. Corp.,*
    98 F. Supp. 2d 757 (S.D. Miss. 2000)................................................................ 23

*Johnson v. Anderson Ford, Inc.,*
    686 So. 2d 224 (Ala. 1996)............................................................................... 64

*Kahler v. E.F. Hutton Co., Inc.,*
    558 So. 2d 144 (Fla. Dist. Ct. App. 1990) .......................................................... 31

*Kaufman v. I-Stat Corp.,*
    754 A.2d 1188 (N.J. 2000)................................................................................ 47

*Kelly v. Sears Roebuck & Co.,*
    720 N.E.2d 683 (Ill. App. Ct. 1999) .................................................................. 32

*Kirk v. Michael Reese Hosp. & Med. Ctr.,*
    513 N.E.2d 387 (Ill. 1987)................................................................................ 33

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941)........................................................................................ 4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kraft v. Detroit Entm't, LLC,*
  683 N.W.2d 200 (Mich Ct. App. 2004) ................................................................ 40

*Larkin v. Pfizer, Inc.,*
  153 S.W.3d 758 (Ky. 2004) .......................................................................... 37, 42

*Larry James Oldsmobile-Pontiac-GMC Truck Co. v. Gen. Motors Corp.,*
  175 F.R.D. 234 (N.D. Miss. 1997) ................................................................... 73

*Laufer v. The United States Life Ins. Co. in the City of New York,*
  No. BER-L-9082-04, slip op. (N.J. Super. Ct. Law Div. Aug. 8, 2005) ................ 12

*Leavitt v. Monaco Coach Corp.,*
  616 N.W.2d 175 (Mich. Ct. App. 2000) ........................................................... 60

*Lee v. Gen. Motors Corp.,*
  950 F. Supp. 170 (S.D. Miss. 1996) ................................................................. 19

*Lemelledo v. Beneficial Mgmt. Corp. of Am.,*
  696 A.2d 546 (N.J. 1997) ................................................................................ 57

*LensCrafters, Inc. v. Vision World, Inc.,*
  943 F.Supp. 1481 (D. Minn. 1996) .................................................................. 20

*Lewis v. Bayer AG,*
  66 Pa. D. & C.4th 470 (Pa. Ct. Com. Pl. 2004) ........................................... *passim*

*Lithuanian Commerce Corp. v. Sara Lee Hosiery,*
  219 F. Supp. 2d 600 (D.N.J. 2002) .................................................................. 68

*Lozada v. Dale Baker Oldsmobile, Inc.,*
  136 F. Supp. 2d 719 (W.D. Mich. 2001) .......................................................... 41

*Luke v. Am. Home Prods. Corp.,*
  No. 1998-C-01977, 1998 WL 1781624 (Pa. Ct. Com. Pl. Nov. 18, 1998) ............ 67

*Lynx, Inc. v. Ordnance Prods., Inc.,*
  327 A.2d 502 (Md. 1974) ............................................................................... 63

*Lyon v. Caterpillar, Inc.,*
  194 F.R.D. 206 (E.D. Pa. 2000) .................................................................. 5, 10

*Macias v. HBC of Fla.,*
  694 So. 2d 88 (Fla. Dist. Ct. App. 1997) ......................................................... 30

*Maroone Chevrolet, Inc. v. Nordstrom,*
  587 So. 2d 514 (Fla. Dist. Ct. App. 1991) ....................................................... 29

*Martin v. Ford Motor Co.,*
  914 F. Supp. 1449 (S.D. Tex. 1996) ................................................................ 19

*Martin v. Hacker,*
  628 N.E.2d 1308 (N.Y. 1993) ..................................................................... 54, 55

*Massachusetts v. Mylan Labs.,*
  357 F. Supp. 2d 314 (D. Mass. 2005) .............................................................. 70

*Mathis v. Bess,*
  692 F. Supp 248 (S.D.N.Y. 1988) ............................................................... 30, 74

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mazanderan v. Indep. Taxi Owners' Ass'n*,
   700 F. Supp. 588 (D.D.C. 1988) .................................................................................... 51

*McCall v. State Dep't of Natural Res. Div. of Forestry*,
   821 N.E.2d 924 (Ind. Ct. App. 2005) ............................................................................ 60

*McClure Oil Corp. v. Murray Equip., Inc.*,
   515 N.E.2d 546 (Ind. Ct. App. 1987) ............................................................................ 63

*McMahon v. Digital Equip. Corp.*,
   944 F. Supp. 70 (D. Mass. 1996) ................................................................................... 39

*Merrill Lynch Bus. Fin. Servs. v. Performance Mach. Sys. U.S.A.*,
   Case No. 04-60861-CIV-MARTINEZ-KLEIN, 2005 U.S. Dist. LEXIS 7309
   (S.D. Fla. Mar. 4, 2005) ................................................................................................. 29

*Montgomery v. New Piper Aircraft, Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2002) ............................................................................... 7, 17

*Morguson v. 3M Co.*,
   857 So. 2d 796 (Ala. 2003) ............................................................................................ 50

*Moses v. Citicorp Mortgage Inc.*,
   982 F. Supp. 897 (E.D.N.Y. 1997) ................................................................................ 54

*Mowery v. Crittenton Hosp.*,
   400 N.W.2d 633, 636 (Mich. Ct. App. 1986) ............................................................... 41

*Murphy v. Shiley, Inc.*,
   No. 90-35425, 1991 WL 135505 (9th Cir. July 24, 1991) ............................................ 22

*Musselman v. E.R. Squibb & Sons*,
   No. 5:96-cv-72, 1997 U.S. Dist. LEXIS 7708 (W.D. Mich. May 5, 1997) .................. 41

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 1999) .................................................................................. 25

*Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*,
   619 A.2d 262 (N.J. Super. Ct. Law Div. 1992) ............................................................ 70

*Nataros v. Fine Arts Gallery of Scotsdale, Inc.*,
   612 P.2d 500 (Ariz. Ct. App. 1980) .............................................................................. 27

*Nautica Int'l v. Intermarine USA, L.P.*,
   5 F. Supp. 2d 1333 (S.D. Fla. 1998) ............................................................................. 70

*Nesby v. Country Mut. Ins. Co.*,
   805 N.E.2d 241 (Ill. App. Ct. 2004) ............................................................................. 70

*Neveroski v. Blair*,
   358 A.2d 473 (N.J. Super. Ct. App. Div. 1976) ........................................................... 57

*New Jersey Citizen Action v. Schering-Plough Corp.*,
   842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) .............................................. 44, 46, 47

*New York Life Ins. Co. v. Head*,
   234 U.S. 149 (1914) ....................................................................................................... 17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nicholson v. Clark,*
  802 S.W.2d 934 (Ky. Ct. App. 1990) ................................................................. 37

*Niemiera v. Schneider,*
  555 A.2d 1112 (N.J. 1989) ............................................................................... 47

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ........................................................................................ 2

*Oliveira v. Amoco Oil Co.,*
  776 N.E.2d 151 (Ill. 2002) .............................................................................. 34

*Ortho Pharm. Corp. v. Chapman,*
  388 N.E.2d 541 (Ind. Ct. App. 1979) .............................................................. 36

*Osborne v. Subaru of America, Inc.,*
  198 Cal. App. 3d 646 (Ct. App. 1988) ............................................................. 64

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
  647 N.E.2d 741 (N.Y. 1995) ............................................................................ 54

*Palmer v. Combined Ins. Co. of Am.,*
  No. 02-C-1764, 2003 U.S. Dist. LEXIS 2534 (N.D. Ill. Feb. 24, 2003) ............ 73

*Paquette v. Deere & Co.,*
  719 A.2d 410 (Vt. 1998) ................................................................................. 42

*Parrillo v. Giroux Co.,*
  426 A.2d 1313 (R.I. 1981) ............................................................................... 63

*Patel v. Holiday Hospitality Franchising,*
  172 F. Supp. 2d 821 (N.D Tex. 2001) .............................................................. 25

*Peabody v. P.J.'s Auto Village, Inc.,*
  569 A.2d 460 (Vt. 1989) ................................................................................. 18

*Peery v. Hansen,*
  585 P.2d 574 (Ariz. Ct. App. 1978) ............................................................ 26, 27

*Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc.,*
  No. MID-L-857-02, slip op. (N.J. Super. Ct. Law Div. Feb. 14, 2003) .............. 59

*Porter v. Merck & Co., Inc.,*
  No. 04-C-586, slip op. (Kan. Dist. Ct. Aug. 19, 2005) ...................................... 22

*Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.,*
  145 F. Supp. 2d 1348 (S.D. Fla. 2001) ............................................................ 16

*Prime Meats, Inc. v. Yochim,*
  619 A.2d 769 (Pa. Super. Ct. 1993) ............................................................ 55, 56

*Rampey v. Novartis Consumer Health, Inc.,*
  867 So. 2d 1079 (Ala. 2003) ........................................................................... 64

*Reyes v. Wyeth Labs.,*
  498 F.2d 1264 (5th Cir. 1974) ......................................................................... 50

*Rivera v. Wyeth-Ayerst Labs.,*
  283 F.3d 315 (5th Cir. 2002) ...................................................................... 20, 23

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Robinson v. Leahy,*
    73 F.R.D. 109 (N.D. Ill. 1977)..................................................................... 74

*Rosenstein v. CPC Int'l, Inc.,*
    Civ. A. No. 90-4970, 1991 WL 1783 (E.D. Pa. Jan. 8, 1991) ................................ 56

*Rutledge v. Arrow Aluminum Indus., Inc.,*
    733 So. 2d 412 (Ala. Civ. App. 1998) ..................................................................... 60

*Schlenk v. Ford Motor Credit Co.,*
    308 F.3d 619 (6th Cir. 2002) ..................................................................... 37

*Schweitzer v. Consol. Rail Corp.,*
    758 F.2d 936 (3d Cir. 1985) ..................................................................... 23

*Seattle Rendering Works, Inc. v. Darling-Delaware Co.,*
    701 P.2d 502 (Wash. 1985)..................................................................... 43

*Sevin v. Kelshaw,*
    611 A.2d 1232 (Pa. Super. Ct. 1992).................................................................. 55

*Simon v. United States,*
    805 N.E.2d 798 (Ind. 2004) ..................................................................... 14

*Small v. Lorillard Tobacco Co.,*
    679 N.Y.S.2d 593 (N.Y. App. Div. 1998) ........................................................ 54

*Smith v. Globe Life, Ins. Co.,*
    597 N.W.2d 28 (Mich. 1999)..................................................................... 40

*Smith v. Prime Cable of Chi.,*
    658 N.E.2d 1325 (Ill. App. Ct. 1995) ................................................................ 32

*Sosna v. Iowa,*
    419 U.S. 393 (1975)..................................................................... 74

*South Bend Woolen Co. v. Jacob Reed's Sons, Inc.,*
    116 A. 805 (Pa. 1922)..................................................................... 55

*Spence v. Glock, GES.m.b.H.,*
    227 F.3d 308 (5th Cir. 2000) ..................................................................... 9

*Spring v. Geriatric Auth. of Holyoake,*
    475 N.E.2d 727 (Mass. 1985) ..................................................................... 39

*State Farm Mut. Auto.Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ..................................................................... 17

*Stires v. Carnival Corp.,*
    243 F. Supp. 2d 1313 (M.D. Fla. 2002).......................................................... 25

*Stone v. Smith, Kline & French Labs.,*
    447 So. 2d 1301 (Ala. 1984)..................................................................... 49, 50

*Swan v. Stoneman,*
    635 F.2d 97 (2d Cir. 1980)..................................................................... 74

*Swindell v. Crowson,*
    712 So. 2d 1162 (Fla. Dist. Ct. App. 1998) .................................................. 29

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*T.W.M. v. Am. Med. Sys. Inc.,*
  886 F. Supp. 842 (N.D. Fla. 1995)................................................................... 65

*Taurino v. Ellen,*
  579 A.2d 925 (Pa. Super. Ct. 1990).............................................................. 56

*Taylor v. Smithkline Beecham Corp.,*
  658 N.W.2d 127 (Mich. 2003)....................................................................... 40

*Taylor v. Wachtler,*
  825 F. Supp. 95 (E.D. Pa. 1993)................................................................... 55

*Telecomms. Research & Action Ctr. v. Allnet Commc'n Servs., Inc.,*
  806 F.2d 1093 (D.C. Cir. 1986).................................................................... 72

*Terhune v. A. H. Robins Co.,*
  577 P.2d 975 (Wash. 1978)............................................................................ 44

*Tokar v. Crestwood Imports, Inc.,*
  532 N.E.2d 382 (Ill. App. Ct. 1998)............................................................. 65

*Tracker Marine, L.P. v. Ogle,*
  108 S.W.3d 349 (Tex. Ct. App. 2003).......................................................... 11

*Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.,*
  92 F.3d 1110 (11th Cir. 1996) ...................................................................... 15

*Union Ink Co. v. AT&T Corp.,*
  801 A.2d 361 (N.J. Super. Ct. App. Div. 2002)........................................... 45

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,*
  517 U.S. 544 (1996)....................................................................................... 72

*United States Xpress, Inc. v. Great Northern Ins. Co.,*
  2003 U.S. Dist. LEXIS 832 (D. Minn. 2003) ............................................... 19

*Upjohn Co. v. MacMurdo,*
  562 So. 2d 680 (Fla. 1990)............................................................................ 30

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964)......................................................................................... 4

*Veazey v. Doremus,*
  510 A.2d 1187 (N.J. 1986)...................................................................... 10, 12

*Verb v. Motorola, Inc.,*
  672 N.E.2d 1287 (Ill. App. Ct. 1996) .......................................................... 32

*Walsh v. Ford Motor Co.,*
  807 F.2d 1000 (D.C. Cir. 1986) ....................................................... 6, 59, 65

*Warth v. Seldin,*
  422 U.S. 490 (1975)................................................................................. 71, 72

*Weaver v. Chrysler Corp.,*
  172 F.R.D. 96 (S.D.N.Y. 1997) .................................................................... 19

*Web Commc'n Group, Inc. v. Gateway 2000, Inc.,*
  889 F. Supp. 316 (N.D. Ill. 1995).................................................................. 52

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Wellcraft Marine v. Zarzour,*
  577 So. 2d 414 (Ala. 1990) .................................................................. 64

*Willett v. Baxter Int'l, Inc.,*
  929 F.2d 1094 (5th Cir. 1991) .................................................... 21, 23, 24

*Williams v. Purdue Pharm. Co.,*
  297 F. Supp. 2d 171 (D.D.C. 2003) ................................................. 21, 51

*Witherspoon v. Philip Morris, Inc.,*
  964 F. Supp. 455 (D.D.C. 1997) ........................................................... 25

*Yost v. General Motors Corp.,*
  651 F. Supp. 656 (D.N.J. 1986) ..................................................... 19, 68

## STATUTES AND REGULATIONS

13 Pa. Cons. Stat. § 1105 ........................................................................ 16

13 Pa. Cons. Stat. § 2607 ........................................................................ 62

28 U.S.C. § 1407 ...................................................................................... 4

73 Pa. Stat. § 201-1 ............................................................................... 55

73 Pa. Stat. § 201-2 ............................................................................... 55

73 Pa. Stat. § 201-9.2 ............................................................................ 55

810 Ill. Comp. Stat. § 5/1-105 .............................................................. 16

810 Ill. Comp. Stat. § 5/2-607 .............................................................. 62

815 Ill. Comp. Stat. § 505/1 ................................................................. 52

815 Ill. Comp. Stat. § 505/2 ................................................................. 31

815 Ill. Comp. Stat. § 505/10a ........................................................ 31, 33

815 Ill. Comp. Stat. § 505/10b ............................................................. 35

815 Ill. Comp. Stat. § 510/2 ................................................................. 31

815 Ill. Comp. Stat. § 510/3 ................................................................. 31

Ala. Code § 7-2-607 .............................................................................. 62

Ala. Code § 8-19-3 ................................................................................ 49

Ala. Code § 8-19-10 .............................................................................. 48

Ariz. Rev. Stat. § 44-1522 ............................................................... 26, 27

Ariz. Rev. Stat. § 47-1105 .................................................................... 16

Ariz. Rev. Stat. § 47-2607 .................................................................... 62

D.C. Code § 28:2-607 ........................................................................... 62

D.C. Code § 28-3901 ............................................................................ 50

D.C. Code § 28-3905 ............................................................................ 18

Fed. R. Civ. P. 12 ................................................................................... 4

# TABLE OF AUTHORITIES
(continued)

Page(s)

Fed. R. Civ. P. 9 ..................................................... 27
Fed. R. Civ. P. 23 ................................................. 1, 73
Fla. Stat. §.501.204 ............................................... 29
Fla. Stat. § 501.211 ............................................... 30
Fla. Stat. § 671.105 ............................................... 16
Fla. Stat. § 672.607 ............................................... 62
Ind. Code § 24-5-0.5-1 ........................................... 52
Ind. Code § 24-5-0.5-2 ......................................... 52, 53
Ind. Code § 24-5-0.5-4 ......................................... 35, 36
Ind. Code § 26-1-1-105 .......................................... 16
Ind. Code § 26-1-2-607 .......................................... 62
Ky. Rev. Stat. Ann. § 367.220 ................................... 37
Mass. Gen. Laws ch. 93A, § 3 .................................... 38
Mass. Gen. Laws ch. 93A, § 9 .................................... 39
Mass. Gen. Laws ch. 93A, § 11 ................................... 39
Mass. Gen. Laws ch. 106, § 1-105 ............................... 16
Mass. Gen. Laws ch. 106, § 2-607 ............................... 62
Mich. Comp. Laws § 440.1105 .................................... 16
Mich. Comp. Laws § 440.2607 .................................... 62
Mich. Comp. Laws § 445.904 ..................................... 40
Mich. Comp. Laws § 445.911 ..................................... 41
Mich. Comp. Laws § 600.2946 ................................. 39, 67
N.J. Stat. Ann. § 12A:1-105 ..................................... 16
N.J. Stat. Ann. § 12A:2-607 ..................................... 68
N.J. Stat. Ann. § 2A:58C-4 ...................................... 47
N.J. Stat. Ann. § 56:8-1 ......................................... 44
N.J. Stat. Ann. § 56:8-19 ........................................ 45
N.Y. Gen. Bus. Law § 349 ....................................... 54
N.Y. U.C.C. § 1-105 ............................................. 16
N.Y. U.C.C. § 2-607 ............................................. 62
U.C.C. § 2-102 .................................................. 66
U.C.C. § 2-106 .................................................. 66
U.C.C. § 2-401 .................................................. 66

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

U.C.C. § 2-607 .................................................................................................. 62

Vt. Stat. Ann. tit. 9, § 2461 ................................................................................ 41

Vt. Stat. Ann. tit. 9A, § 1-105 ........................................................................... 16

Vt. Stat. Ann. tit. 9A, § 2-607 ........................................................................... 62

Wash. Rev. Code § 19.86.010 ............................................................................ 43

Wash. Rev. Code § 62A.2-607 ........................................................................... 62

**OTHER AUTHORITIES**

1 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE (4th ed.
   1995) .................................................................................... 60, 61, 62, 68

16 AM. JUR. 2D, Conflict of Laws § 9 (1998 & Supp. 2003) ........................... 17

Clark & Smith, THE LAW OF PRODUCT WARRANTIES (1984) ........................... 64

NEWBERG ON CLASS ACTIONS, § 2:9 (4th Ed. 2005) ...................................... 74

RESTATEMENT (SECOND) OF CONFLICT OF LAWS ............................................. 7

RESTATEMENT (SECOND) OF CONFLICT OF LAWS ............................................. 7

RESTATEMENT (SECOND) OF CONFLICT OF LAWS ............................................. 9

## INTRODUCTION

Plaintiffs' Purchase Claims Master Class Action Complaint ("Purchaser Master Compl.") asserts claims for statutory consumer fraud, breach of implied warranty, and unjust enrichment on behalf of 27 named plaintiffs from 12 states and the District of Columbia. Those named plaintiffs (who seek to be the representatives of various proposed classes described below) include (a) individual consumers who bought VIOXX® for themselves, (b) third-party payor entities such as health insurance plans that paid for VIOXX for their members and/or insureds, and (c) interest groups apparently seeking to interpose claims on behalf of their members. None of the named plaintiffs asserts any physical injury to themselves or to those persons to whom they provided VIOXX. Nonetheless, they seek a full refund of the purchase price of VIOXX and/or disgorgement, as well as punitive damages. (*See* Purchaser Master Compl. ¶ 209 (requesting "a refund and reimbursement of all moneys acquired from Plaintiffs and the Class"); ¶ 266 (seeking "disgorgement," "restitution and/or rescission").)

The named plaintiffs seek to establish a nationwide class under any and all subparts of Fed. R. Civ. P. 23, and they ask the Court to apply New Jersey choice-of-law principles (despite the fact that only three named plaintiffs originally filed their actions in New Jersey) and New Jersey substantive law to all their claims. (Purchaser Master Compl. ¶¶ 183-84.) Failing that, plaintiffs seek to establish a number of single-state classes, proposing a novel procedure by which the cases would be officially "remand[ed]" to their transferor federal district courts, after which this Court would nonetheless sit "by *ad hoc* designation" in those various transferor districts to resolve class certification issues.[1] (*Id.* ¶¶ 186-87.)

---

[1]     In proposing this odd procedural approach, which would turn the goals of this MDL proceeding on its head, plaintiffs appear to be angling for application of class certification law from other judicial circuits and review of any decisions by courts of appeal other than the Fifth Circuit.

786618_1

At a later point, Merck will (if necessary) challenge the seriously flawed approaches to class certification that the named plaintiffs propose. But at this juncture, the Court is first obliged to explore a threshold question: have the named plaintiffs, as a matter of law, pleaded valid causes of action against the defendant? If, as Merck argues in this motion, the named plaintiffs have failed this initial hurdle, further proceedings on class certification and other issues will be unnecessary, since a class may not proceed if the named plaintiffs' own claims are subject to dismissal for failure to state a cause of action. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

For purposes of deciding the legal viability of plaintiffs' claims, the Court must first determine which state's laws should apply to each plaintiff's allegations. As Merck explains below, plaintiffs' initial error is in suggesting that (1) New Jersey choice-of-law principles apply to all plaintiffs' claims, and (2) application of New Jersey substantive law to each of their claims would be appropriate under *any* state's choice-of-law regime. To the contrary, the choice-of-law principles of the state of each transferor court must be applied separately to each named plaintiff's claims.[2] And although the ensuing analysis may go down very distinct analytical paths, the result will be the same in each instance – established precedent in every relevant jurisdiction requires that the law of the state in which each named plaintiff purchased or otherwise paid for VIOXX govern his/her/its claims.

---

[2]    As explained below, plaintiffs' claims are analyzed under the laws of Alabama, Arizona, the District of Columbia, Florida, Illinois, Indiana, Kentucky, Massachusetts, Michigan, New York, Pennsylvania, Vermont and Washington. Even though there is no basis to apply New Jersey law to any plaintiff's claims, Merck has also demonstrated the defects in plaintiffs' claims under New Jersey law.

786618_1

Once plaintiffs' allegations are analyzed against the proper governing laws, it quickly becomes apparent that their claims contain fundamental flaws. Although the laws of the relevant states differ in myriad ways, there are multiple core deficiencies that require dismissal of all of the named plaintiffs' claims, as well as additional, state-specific defects that afford additional grounds for rejection of certain named plaintiffs' claims. These deficiencies are not mere technicalities. As is detailed below, each claim is irretrievably flawed, most in several ways:

- The named plaintiffs' claims founder because even though product defect allegations are the heart of the Complaint, the named plaintiffs do not allege that they (or those on whose behalf they purchased VIOXX) personally suffered any injury attributable to the ingestion of VIOXX. Indeed, the only reasonable inference from the Complaint is that plaintiffs received exactly what they thought they were getting – a product that provided pain relief. Since purchasers of an allegedly defective product have no legally cognizable claim if the alleged defect has not caused them injury, plaintiffs' claims fail. (*See* Section II, *infra*.)

- Plaintiffs' consumer fraud claims (Count I & II) fail because no plaintiff pleads the elements of any state consumer protection statute and because some states' laws bar claims against regulated industries. Moreover, in those states that have recognized the learned intermediary doctrine, plaintiffs' consumer fraud claims fail because none of the named plaintiffs alleges that his or her physician (or the physician of the user whose VIOXX it paid for) heard any of the supposed misrepresentations, let alone relied on them. (*See* Section III, *infra*.)

- The implied warranty of merchantability claims asserted by the named plaintiffs (Count III) fare no better. Virtually all are barred because plaintiffs fail to allege "injury" and "notice," and many fail for additional reasons, including the absence of "vertical privity," which is required in many states. (*See* Section IV, *infra*.)

- Plaintiffs' unjust enrichment claims (Count IV) are defective because, due to plaintiffs' lack of injury, any enrichment of Merck cannot be unjust. In addition, plaintiffs have failed to assert (as they must) that they lack an adequate remedy at law. (*See* Section V, *infra*.)

- The interest group plaintiffs' claims must be dismissed because they do not have standing to seek relief on behalf of their members. (*See* Section VI, *infra*.)

3

786618_1

In the end, for a variety of reasons, the named plaintiffs' allegations do not constitute legally cognizable claims in any respect.  Thus, pursuant to Fed. R. Civ. P. 12(b)(6), the entire Master Complaint must be dismissed.[3]

## I.  PLAINTIFFS' CLAIMS ARE GOVERNED BY THE LAWS OF THE STATES WHERE THEY PURCHASED VIOXX.

Without explanation, the named plaintiffs suggest in their complaint that this Court should employ New Jersey choice-of-law principles to determine which state's laws govern each named plaintiff's claims.  (Purchaser Master Compl. ¶ 184.)  There is simply no support for this novel suggestion.

Federal courts exercising diversity jurisdiction must apply state choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  In cases transferred pursuant to 28 U.S.C. § 1407, the transferee court must apply the substantive state law, including the choice-of-law rules, that would have applied in the transferor court.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  Accordingly, there is no basis for applying New Jersey choice-of-law principles to the claims of all named plaintiffs.  Instead, this Court must apply the choice-of-law rules of the states of the various transferor courts.[4]

In any event, the source of the applicable substantive law is the same regardless of which choice-of-law regime is employed, because under any approach, it will be necessary to apply the laws of each plaintiff's state of residence or principal place of business – the states where they presumably purchased or otherwise paid money for VIOXX and were thereby allegedly injured –

---

[3]      Appendix A to this memorandum sets forth in a tabular format the grounds upon which each named plaintiff's claims should be dismissed.

[4]      Merck believes that the Court could appropriately apply the choice-of-law rules of Louisiana by virtue of the filing of the Master Complaint here. *See, e.g., In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (applying forum choice-of-law principles where master complaint was filed); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70 (S.D.N.Y. 2002).  However, in recognition of the fact that this Court has previously rejected a similar argument in *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133 (E.D. La. 2002), Merck will proceed to analyze the choice-of-law rules of the states of the various transferor courts.

4

786618_1

to each plaintiff's claims.[5]  Scores of courts have reached this conclusion in mass litigation, refusing to apply the laws of a single state to claims arising from transactions that occurred around the country.  For example, the Seventh Circuit noted the unanimity among the states on this score, regardless of their choice-of-law approach:  "Neither Indiana *nor any other state* has applied a uniform place-of-the-defendant's-headquarters rule to products-liability cases." *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (emphasis added); *id.* at 1017 ("[R]ecovery for a breach of warranty or consumer fraud . . . is decidedly where the consumer is located, rather than where the seller maintains its headquarters.").  Similarly, in *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004), the court refused to apply the law of the manufacturer's headquarters to end-payors' antitrust, consumer fraud, and unjust enrichment claims.  "Applying Pennsylvania law to these wholly out-of-state transactions would be at best a 'novelty,' and at worst a violation of constitutional limitations." *Id.* at 277-28 (quoting *In re Bridgestone/Firestone*, 288 F.3d at 1016). *See also*, *e.g.*, *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215-17 (E.D. Pa. 2000); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. ("Ignition Switch")*, 174 F.R.D. 332, 348 (D.N.J. 1997).

In this case, the named plaintiffs' individual actions were filed in Arizona, Florida, Illinois, Indiana, Louisiana, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, and Vermont.  Accordingly, the question of which state's laws must be applied to each named plaintiff's individual claims will be determined under the choice-of-law regimes adopted in those respective states.

---

[5]    Plaintiffs' alleged economic injury would presumably have occurred either where they purchased VIOXX for their own use or where they otherwise paid for VIOXX on behalf of an insured member.  Absent any contrary averments, Merck assumes that consumers paid for VIOXX in their state of residence, and that third-party payors paid for VIOXX at their principal place of business.  "More likely than not," the place of the injury is "the state in which each putative class member resides or is domiciled." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 143.

786618_1

**A.** **Under The Choice-Of-Law Rules Of Any Of The States At Issue, Plaintiffs' Claims Are Governed By The Laws Of Their States Of Residence And Principal Places Of Business.** [6]

The fifty states have adopted a dizzying array of approaches to choice-of-law problems. Three main doctrines predominate – (a) the Second Restatement or "most significant relationship" test, (b) the "governmental interests" test, and (c) the *lex loci delicti* (tort) and *lex loci contractus* (contract) tests. However, some states have chosen to apply different tests to different claims, others have adopted modified or hybrid versions of these approaches, and still others have employed different approaches entirely. (*See* Appendix B, table charting choice-of-law doctrines adopted by relevant states.) Despite the complexity of applying these varying analytical approaches, they all have one thing in common: whether the claim arises in tort (consumer fraud) or contract (breach of implied warranty and unjust enrichment), the result is the same. None of these states has embraced a rule requiring application of the law of the state in which the defendant's headquarters is located. To the contrary, each set of choice-of-law principles points toward application of the laws of the states in which each named plaintiff resides or maintains its principal place of business.

     **1.** **States Adopting The "Most Significant Relationship" Test Would Choose The Law Of Each Named Plaintiff's State Of Residence Or Principal Place Of Business.**

The Restatement's "most significant relationship" test clearly points to the state where the plaintiff purchased (or paid for someone else's purchase of) VIOXX.

For claims arising in tort (including consumer fraud claims), the Restatement directs

---

[6]     As a preliminary matter, the various choice-of-law regimes typically require a demonstration of conflicts in the laws of the relevant states. Here, there can be no question that the consumer fraud, implied warranty, and unjust enrichment laws vary among the 14 interested states (13 states from which the named plaintiffs hail, plus New Jersey). *See In re Bridgestone/Firestone*, 288 F.3d at 1018 ("[s]tate consumer-protection laws vary considerably"); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) ("The Uniform Commercial Code is not uniform."); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 500 (S.D. Ill. 1999) ("The laws of unjust enrichment vary from state to state . . . .").

786618_1

courts to consider the following factors: (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). *See also id.* § 148, cmt. j ("[W]hen the plaintiff acted in reliance upon the defendant's representations in a single state, this state will usually be the state of the applicable law . . . if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is the state of the plaintiff's domicile or principal place of business . . . ."). In non-personal injury cases arising from a transaction, the Restatement factors weigh in favor of applying the law of the state in which the plaintiff resides. This is particularly so when that state is (a) the place where plaintiff purchased or paid for the product, (b) the place where plaintiff allegedly suffered any economic injury, and (c) the place where the parties' relationship is centered (as the situs of the transaction). For example, in *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225-26 (S.D. Fla. 2002), plaintiffs sought relief under the Florida consumer protection statute for the diminished value of a purchased airplane. Applying the Restatement under Florida choice-of-law rules, the court noted that "[t]he place of the injury still determines which state's law applies, unless some other state has a more significant relationship to the issue." *Id.* at 225. After analyzing the relevant contacts, the court applied the law of plaintiff's home state, where he purchased and kept the airplane and where "he suffered any diminution in value." *Id.*

Similarly, the court in *Lewis v. Bayer AG*, 66 Pa. D. & C.4th 470 (Pa. Ct. Com. Pl. 2004), applied Pennsylvania's modified Restatement approach to claims asserted on behalf of both injured and uninjured drug users. The court concluded that the applicable law in a consumer fraud and unjust enrichment action was "the state law [] in which the class member resides, was prescribed and ingested [the drug] and where the injury occurred." *Id.* at 496. Noting that

7

Pennsylvania's only contact was that "the company does business in Pennsylvania," the court concluded that "[t]he contacts of the states where the putative class resides are more substantial and have a stronger interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders, which is the conduct which gave rise to the class members' claims." *Id. See also Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. Ct. App. 2003) (in consumer fraud case for misleading labeling and marketing, "the claims of the non-resident consumers would require the application of consumer protection laws from each of the states where the deceptive trade practice occurred and the non-resident claimants suffered injury"); *Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2005 U.S. Dist. LEXIS 8243, at *9-10 (N.D. Ill. April 26, 2005) (plaintiff could not point to a single Illinois case applying another state's laws to fraud and warranty claims of Illinois consumer).

Guided by these principles, it is clear that each named plaintiff's claims are governed by the law of his or her state of residence or its principal place of business. There is no suggestion in the Complaint that the individual consumers were prescribed VIOXX and purchased and ingested it anywhere other than their states of residence, or that the third-party payor plaintiffs received Merck's allegedly fraudulent representations, made the decisions to place VIOXX on their formularies, and subsidized the purchase of VIOXX for their members anywhere other than at their principal place of business. Accordingly, if plaintiffs had been injured at all (and for the reasons discussed below in Section II, their allegations do not support a finding of cognizable injury), such injury would have occurred in their home states. Moreover, plaintiffs' relationship with Merck was centered in these states. Accordingly, the weight of the Restatement factors counsels in favor of applying the law of plaintiffs' home states.

786618_1

For claims sounding in contract, the Restatement also directs that the law of the state with the "most significant relationship" to the transaction and the parties shall govern. RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(1) (1971). In making this determination, consideration is to be given to the following factors: (1) "the place of the contracting"; (2) "the place of negotiation of the contract"; (3) "the place of performance"; (4) "the location of the subject matter of the contract"; and (5) "the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2)(a)-(e). In actions involving a breach of warranty, "[t]he place of delivery, which is the place of performance, should be given the highest priority." *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 598 (E.D. La. 1998). This makes sense since a warranty "might be understood to protect consumers from damages that accrue in the consumers' locale." *Id.* Moreover, the "place of contracting would presumably be the place of purchase; the location of performance and the location of the subject matter of the contract would be the place where the [product] is used; and the place of negotiation would not apply." *Spence v. Glock, GES.m.b.H.*, 227 F.3d 308, 314 n.9 (5th Cir. 2000). *See also Harlan Feeders, Inc. v. Grand Labs.*, 881 F. Supp. 1400, 1412 (N.D. Iowa 1995) (following Restatement under Iowa law and applying law of purchaser's state of residence to warranty claim where product was purchased, delivered and used there and contract was entered there).

These factors all point toward application of the law of the named plaintiffs' states of residence to their contract-based claims. As far as can be gleaned from the Complaint, the products were purchased and delivered in plaintiffs' home states, and that is where any asserted warranty would have arisen. With respect to the third-party payors, the analysis is more complicated since they did not actually purchase VIOXX, and therefore no warranty or other contract was created as to them. (*See* Section IV.B.4, *infra*.) Accordingly, many of the

9

Restatement factors that might be relevant to consumers, including the place of performance and

place of the subject matter of the contract, lose relevance.  Nonetheless, if there were a place of

contracting for these named plaintiffs, it would be the place where they paid for the purchase of

VIOXX.  Accordingly, the weight of the Restatement factors counsels in favor of applying the

law of plaintiffs' home states.

>   **2.    States Adopting The "Governmental Interests" Test Would Also Choose The Law Of Each Plaintiff's State Of Residence Or Principal Place Of Business.**

The same result obtains in states employing a "governmental interests" approach to

choice-of-law questions, which requires a court to weigh the interests of the relevant states in

having their laws applied to a particular dispute.  *See, e.g., Veazey v. Doremus*, 510 A.2d 1187,

1189-90 (N.J. 1986).  As a general matter, every state has a strong interest in providing a remedy

for its own residents' injuries.  *See In re Air Crash Disaster*, 644 F.2d 594, 612-13 (7th Cir.

1981).  This interest is heightened with regard to consumer protection statutes, which are

"designed to either protect *state residents* or protect consumers engaged in transactions *within

the state.*"  *Lyon*, 194 F.R.D. at 215-17 (emphasis added).  *See also Ignition Switch*, 174 F.R.D.

at 348 ("Each plaintiff's home state has an interest in protecting its consumers from in-state

injuries caused by foreign corporations and in delineating the scope of recovery for its citizens

under its own laws.") (addressing warranty and consumer fraud claims, among others).

Differences among state consumer protection statutes must be respected because they

reflect hard choices in balancing numerous competing interests.  As one court explained,

>   [C]onsumer protection statutes represent a balance of competing
>   interests.  The Texas statute, for example, provides remedies both
>   for consumers subjected to deceptive practices and retailers
>   subjected to frivolous consumer complaints.  When states adopt
>   differing attempts to strike a fair balance between the interests of
>   manufacturers and consumers, our job is not to decide which
>   policy overrides the other. . . . It is hard to see how the interests of

786618_1

each state could be met any better than by allowing each to apply
its own laws.

*Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 358 (Tex. Ct. App. 2003). In enacting consumer

protection statutes, states reach different conclusions on how to balance the benefits of

compensation and deterrence with the potential harms of over-deterrence. (*Cf.* Section III, *infra*,

explaining why each plaintiff's claim must be dismissed under the varying state consumer

protection statutes.) These policies have meaningful substantive effects that must be respected in

a governmental interest analysis. *In re Bridgestone/ Firestone*, 288 F.3d at 1018 ("State

consumer-protection laws vary considerably, and courts must respect these differences rather

than apply one state's law to sales in other states with different rules.").

Recognizing the force of states' interests in regulating consumer transactions within their

own borders, including drug transactions, courts have repeatedly applied the law of the

consumer's home state with respect to all the claims at issue here. For instance, in *In re Rezulin

Prods. Liab. Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002), the court applied New York's "interests

analysis" to a products liability action against a pharmaceutical company raising consumer fraud,

breach of warranty, and unjust enrichment claims, among others, on behalf of both injured and

uninjured plaintiffs. When conflicting laws are at issue, the court noted, "the law of the

jurisdiction where the tort occurred will generally apply because the jurisdiction has the greatest

interest in regulating behavior within its borders." *Id.* at 70 (quoting *Curley v. AMR Corp.*, 153

F.3d 5, 11 (2d Cir. 1998)). And in New York, "the place where the drug was ingested [is] the

location of the tort." *Id.* Therefore, the court applied the law of each plaintiff's state and refused

to find that New Jersey law could be applied to the entire class by virtue of New Jersey's interest

as the "manufacturer defendants' home state." *Id.* The other states maintain interests "in

ensuring that [their] own citizens are compensated for their injuries, that the standards [they]

11

786618_1

set[] for product sales within [their] borders are complied with and that the rules [they]

establish[] to govern physician and pharmacist conduct are upheld." *Id.* at 70-71. "These

interests simply are not outweighed by New Jersey's interest in regulating the conduct of its

pharmaceutical companies." *Id.* at 71.

New Jersey applies a similar "governmental interest" choice-of-law test,[7] *Veazey*, 103

N.J. at 247, and has reached similar conclusions. *See Laufer v. United States Life Ins. Co. in the*

*City of New York*, No. BER-L-9082-04, slip op. at 23 (N.J. Super. Ct. Law Div. Aug. 8, 2005)

("resident-victims of consumer fraud are generally best protected by their own local legislatures"

and "New Jersey has a significantly diminished interest in a long-arm protective scheme for out-

of-state victims of consumer fraud") (attached as Ex. 2); *Heavner v. Uniroyal, Inc.*, 305 A.2d

412, 417-18 (N.J. 1973) (corporate domicile not enough to apply New Jersey law); *Fink v. Ricoh*

*Corp.*, 839 A.2d 942, 985-87 (N.J. Super. Ct. Law. Div. 2003) (New Jersey consumer fraud

statute could not be applied to out-of-state sales of a New Jersey corporation's products); *In re*

---

[7]      Merck recognizes that Judge Higbee recently ruled that the New Jersey Consumer Fraud Act could properly be applied extraterritorially to claims of out-of-state plaintiffs. *See Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*, No. ATL-L-3015-03 MT, slip op. (N.J. Super. Ct. Law Div. June 30, 2005) ("*Engineers*") (attached as Ex. 1). However, Merck believes that conclusion to be in error, and has filed a petition for interlocutory appeal of that order with the New Jersey Appellate Division. In her decision, Judge Higbee stated that she could find "no controlling Supreme Court or Appellate Division" authority as to whether the NJCFA can be applied to transactions in other states involving New Jersey defendants. *Id.* Federal court and trial court decisions, however, have frequently refused to apply the NJCFA to out-of-state transactions. *See, e.g., Cartiglia v. Johnson & Johnson Co.*, No. MID-L-2754-01, 2002 WL 1009473, at *13-16 (N.J. Super. Ct. Law Div. Apr. 24, 2002); *Fink v. Ricoh Corp.*, 839 A.2d 942, 987-91 (N.J. Super. Ct. Law Div. 2003); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 326-27 (D.N.J. 1998); *Ignition Switch*, 174 F.R.D. at 348. Indeed, a decision from a trial court in a different county on exactly the same question — whether the NJCFA can be applied to nationwide class claims — issued just two weeks after the decision in *Engineers*, reaching exactly the opposite conclusion. *See Laufer*, slip op. There is even Appellate Division precedent on point, contrary to the trial court's perception. *See Carroll v. Cellco P'ship*, 713 A.2d 509, 512-14 (N.J. Super. Ct. App. Div. 1998) (rejecting certification of nationwide class and remanding for consideration of manageability problems posed by choice of law issues). In light of this countervailing authority, and Merck's pending appeal, Merck believes the Court should not place inordinate weight on the *Engineers* decision.

It is also worth noting that other states have explicitly rejected application of their consumer fraud statutes to extraterritorial transactions. *See Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002) (consumer fraud law was designed to "protect consumers in their transactions that take place in New York State," and not to "police the out-of-state transactions of New York companies"); *Avery v. State Farm Mut. Auto. Ins. Co.*, No. 91494, 2005 Ill. LEXIS 959, at *131 (Ill. Aug. 18, 2005) (Illinois consumer fraud statute does not apply to out-of-state conduct of Illinois companies).

12

*Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 326-27 (D.N.J. 1998). As the court in *Fink* explained, "interests of interstate comity clearly require application of the law of any potential claimant's state of residence because application of any other state's law would frustrate the domiciliary state's legislative policies." 839 A.2d at 983 (internal citations and quotations omitted). Likewise, in *Ignition Switch*, the court explained:

> Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. These interests arise by virtue of each state being the place in which plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective [product] or the place where plaintiffs' alleged damages occurred.

174 F.R.D. at 348.

As these cases and others demonstrate, states applying a governmental interests approach to choice of law will select the laws of named plaintiffs' states of residence or principal place of business[8] – *i.e.*, the states where the consumer product was purchased or paid for – rather than the law of New Jersey.

> 3.  **States Adopting The "*Lex Loci*" Test Would Choose The Law Of Each Plaintiff's State Of Residence Or Principal Place Of Business.**

Similarly, states utilizing a *lex loci delicti* approach to choice of law in tort, or a *lex loci contractus* approach to choice of law in contract, will select the law of the state where plaintiffs purchased VIOXX and claim they were injured.[9] Indiana, for example, continues to employ the

---

[8]    Assuming, *arguendo*, that third-party payors may be treated as "consumers" for purposes of their claims, the states in which they maintain their principal place of business have the greatest interest in delineating the governing standards and remedies, just as they do as to individual consumers. However, as explained below, Merck does not believe third-party payors have standing to proceed as "consumers" under many of the state consumer protection statutes. (*See* Section III.B, *infra*.)

[9]    As explained in detail below, Merck contends that no named plaintiff suffered any cognizable injury at all. However, for purposes of addressing the *lex loci* doctrine, Merck will treat the state in which each named plaintiff purchased and ingested VIOXX as the "place of injury," since that is the law which would govern if plaintiffs had in fact been injured.

786618_1

*lex loci delicti* approach to choice of law, electing not to follow the Restatement (Second) of

Conflict of Laws. *See Baca v. New Prime, Inc.*, 810 N.E.2d 711, 712 (Ind. 2004). Under this

approach, Indiana courts apply the law of the state in which the alleged tort was committed,

"unless the state where the tort occurred 'is an insignificant contact.'" *Simon v. United States*,

805 N.E.2d 798, 804 (Ind. 2004) (quoting *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073

(Ind. 1987)). Applying this rule, the court will choose "the substantive laws of the 'state where

the last event necessary to make an actor liable for the alleged wrong takes place.'" *Id.* at 805

(quoting *Hubbard Mfg. Co.*, 515 N.E.2d at 1073). This presumption is only overcome if "'the

place of the tort "bears little connection" to this legal action.'" *Id.* (quoting *Hubbard Mfg. Co.*,

515 N.E.2d at 1074). It is apparent that under these principles, Indiana would choose the laws of

the states in which each named plaintiff resides or maintains its principal place of business.

Indeed, this Court reached that very conclusion in another pharmaceutical case,

determining that "Indiana would select the law of the states in which the drug was ingested,"

which "[m]ore likely than not . . . would be the law of the state in which each putative class

member resides or is domiciled." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 143. The

presumption in favor of the law of the place of injury could not be overcome: "Considering the

fact that Propulsid is a prescription drug which necessitates the involvement of a physician, the

place of injury is significant." *Id.*

Similarly, in *Bridgestone/Firestone*, which included, *inter alia*, consumer fraud and

warranty claims, the plaintiffs argued that the law of the state of defendant's headquarters may

be applied instead of the law of the state of injury "because that is where the products are

designed and the important decisions about disclosures and sales are made." 288 F.3d at 1015.

The Seventh Circuit rejected that argument, noting that "Indiana is a *lex loci delicti* state: in all

14

786618_1

but exceptional cases it applies the law of the place where harm occurred." *Id.* at 1016. This principle "points to the places of these injuries, not the defendants' corporate headquarters, as the source of law." *Id.* To the contrary, "Indiana has consistently said that sales of products in Indiana must conform to Indiana's consumer-protection laws," *id.* at 1018, and "ha[s] routinely applied Indiana law when injury caused by a defective product occurred in Indiana to Indiana residents," *id.* at 1016.

These principles compel the conclusion that the claims of all plaintiffs governed by *lex loci delicti* choice-of-law rules must proceed under the law of the state of injury – *i.e.*, the place where plaintiffs purchased VIOXX.

The analogous contract principle, *lox loci contractus*, leads to the same result. For instance, Florida applies *lex loci contractus* to contract actions, including implied contract unjust enrichment claims. *See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996). Under that rule, such claims are governed by the law where the contract was made, and "[a] contract is made where the last act necessary to complete the contract is performed." *Id.* In this case, the "implied contract" that might give rise to an unjust enrichment claim would be made when and where the consumer or third-party payor purchased or otherwise paid for VIOXX, presumably in the plaintiff's state of residence or principal place of business. Accordingly, under *lex loci contractus*, the laws of the state where each plaintiff resides and purchased VIOXX governs his or her claims.

>    **4.    States Adopting The UCC Choice-Of-Law Test Would Choose The Law Of Each Plaintiff's State Of Residence Or Principal Place Of Business As Well.**

With the exception of Louisiana, which has not adopted Article 2 of the UCC, all of the relevant jurisdictions have incorporated an express choice-of-law provision in their version of the UCC, directing that state UCC law applies where the transaction at issue "bears an appropriate

15

786618_1

relation" to that state. *See* Ariz. Rev. Stat. § 47-1105(A); Fla. Stat. § 671.105(1); 810 Ill. Comp.

Stat. 5/1-105(1); Ind. Code § 26-1-1-105; Mass. Gen. Laws ch. 106, § 1-105(1); Mich. Comp.

Laws § 440.1105(1); N.J. Stat. Ann. § 12A:1-105(1); N.Y. U.C.C. § 1-105(1); 13 Pa. Cons. Stat.

§ 1105(a); Vt. Stat. Ann. tit. 9A, § 1-105(1). Although not all states follow this directive, or

employ it in conjunction with their common law choice-of-law rules (*see* Appendix B), several

jurisdictions are guided by its terms in resolving choice-of-law questions in warranty cases.

For instance, the relevant Florida provision states, in full: "In the absence of a binding

choice-of-law provision, Florida's version of the UCC directs that it shall apply when the

transaction at issue bears an appropriate relation to the State of Florida." Fla. Stat. § 671.105(1).

The phrase "appropriate relation" has been interpreted to account for the parties' residence,

where any negotiations were conducted, where the goods were purchased, and the physical

location of the goods. *Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d

1348, 1353-54 (S.D. Fla. 2001); *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082,

1093 (S.D.N.Y. 1995). These factors clearly point to plaintiffs' states of residence, as that is also

likely to be the place of purchase and the physical location of the goods. Moreover, "in cases

under the UCC involving the breach of implied warranties which gave rise to personal injury, the

state in which the injury occurred has been found to be a state with an appropriate relation to the

sale." *Premix-Marbletite*, 145 F. Supp. 2d at 1353-54 (quotation and citation omitted).

Although this is not a personal injury case, the same logic applies because the injury, if any,

occurred in plaintiffs' home states. *Id.* Accordingly, states strictly following the UCC choice-

of-law provision will also apply the laws of plaintiffs' states of residence.

**B.    Application Of New Jersey Law To A Nationwide Class Would Violate
       Constitutional Limitations.**

In addition to the state choice-of-law considerations, the Due Process Clause and the

16

786618_1

Commerce Clause of the federal Constitution severely restrict the authority of states to extend the force of their statutes beyond their borders. In *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the U.S. Supreme Court reversed an Alabama court's punitive damage award that was based partly on consumer transactions outside of Alabama, because its punishment for such transactions "infring[ed] on the policy choices of other States," and a state's punishment for violation of its own laws "must be supported by the State's interest in protecting *its own consumers and its own economy*." *Id.* at 572-73 (emphasis added). *Gore* relied on a very basic principle: "Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States." *Huntington v. Attrill*, 146 U.S. 657, 669 (1892); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ("A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and . . . what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction."); *Healy v. Beer Inst.*, 491 U.S. 324, 336-37 (1989) (states may not regulate "commercial activity occurring wholly outside" their borders); *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914). *See also* 16 AM. JUR. 2D, CONFLICT OF LAWS § 9 (1998 & Supp. 2003) ("It is a firmly established principle of American jurisprudence that the law, statutory or otherwise . . . of one state has no extraterritorial effect in another state."). As one court explained in rejecting a proposed nationwide class based on application of the Pennsylvania consumer protection statute to all claims, such an approach would "afford[] Pennsylvania law an extraterritorial scope neither contemplated by the Pennsylvania Legislature in enacting our choice of law rules nor contemplated by our founding fathers in creating our Federal form of national government." *Lewis*, 66 Pa. D. & C.4th at 496-97. *See also Montgomery*, 209 F.R.D. at 228-29 (Commerce Clause and Due Process Clause

786618_1

preclude application of Florida consumer protection statute to transactions that occurred outside of Florida).

Accordingly, application of New Jersey law to the claims of every named plaintiff, and every putative class member throughout the country, would not only violate the properly applicable state choice-of-law rules, but would also run afoul of well-established constitutional principles.

## II.   AS A MATTER OF LAW, THE PLAINTIFFS' CLAIMS MAY NOT PROCEED BECAUSE NO COGNIZABLE INJURY IS ALLEGED.

The claims asserted in the Master Complaint are premised on the core factual allegation that VIOXX is unreasonably dangerous and unsafe for ingestion. (*See, e.g.*, Purchaser Master Compl. ¶ 2.) But *none* of the named consumer plaintiffs alleges any health problems resulting from his or her ingestion of VIOXX, and *none* of the third-party payor plaintiffs has alleged that any of its members suffered any injury from ingestion of VIOXX. Neither is there an allegation that VIOXX did not work to alleviate their pain. Indeed, from all indications in the Complaint, the named plaintiffs (and members/insureds of the third-party payor named plaintiffs) took VIOXX incident-free, and presumably benefited from VIOXX's pain-relieving properties, for the entire duration of their VIOXX usage. This failure to allege any present injury requires the dismissal of virtually all claims of all named plaintiffs.[10]

It does not matter whether the claims sound in consumer fraud, warranty, or unjust enrichment – plaintiffs simply have no claims if they received what they thought they were getting: an effective pain reliever. Nor does it matter that they believe their VIOXX was

---

[10]   The only claims that arguably can survive with no demonstration of actual injury are the consumer protection act claims of plaintiffs from Massachusetts, Vermont and the District of Columbia. *See Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004); *Peabody v. P.J.'s Auto Village, Inc.*, 569 A.2d 460, 463 (Vt. 1989); D.C. Code § 28-3905(k)(1). However, as discussed below, those claims must be dismissed on numerous other grounds.

786618_1

supposedly less valuable because of asserted cardiovascular risks. Rather, as numerous courts around the nation have repeatedly held, people who purchase products that have served their intended purpose have not suffered injuries that our civil justice system is prepared to recognize. *See, e.g.*, *Briehl v. Gen. Motors. Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) ("[c]ourts have been particularly vigilant in requiring allegations of injury or damages in products liability cases").[11] For this reason alone, the entire Master Complaint must be dismissed.

### A.   "No Injury" Pharmaceutical Claims Have Repeatedly Been Rejected In This Circuit And Elsewhere.

"No injury, no tort, is an ingredient of *every* state's law." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (emphasis added). That is true for the states whose laws are implicated here, and it is true for the claims that the named plaintiffs assert here. With respect to cases involving products, this principle means that if a product "never exhibits an alleged defect, *no cause of action lies*." *Briehl*, 172 F.3d at 628 (emphasis added); *see also Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998) ("unless a product actually manifests the alleged defect, no cause of action for breach of express or implied warranty or fraud is actionable").[12] That is because causes of action arise only where there has

---

[11]    In so ruling, the Eighth Circuit interpreted the laws of Florida, Illinois, Mississippi, Missouri, New York, and Texas. *Id.* at 626 n.4.

[12]    *See also Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (rejecting claim that plaintiff had paid more for his vehicle than he would have had he known of his defect: "Where, as here, a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies."); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 174-75 (S.D. Miss. 1996) (rejecting claims that roofs on sport-utility vehicles were defective where plaintiffs experienced no defects in their vehicles); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1454-56 & n.9 (S.D. Tex. 1996) ("the manufacture of such an unsafe vehicle itself, if such has indeed occurred, cannot constitute the cause of injury to Plaintiffs [without damages]"); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 U.S. Dist. LEXIS 6974, at *3 (S.D.N.Y. May 22, 1996) ("[A] Suburban that performs satisfactorily and never exhibits the alleged braking system defect is fit for the purposes intended . . . ."); *Barbarin v. Gen. Motors Corp.*, No. 84-0888, 1993 WL 765821, at *2 (D.D.C. Sept. 22, 1993) ("The court will . . . dismiss the claims of all plaintiffs whose X-cars never experienced the phenomenon of 'premature rear wheel lock-up . . . .'"); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1986) (dismissing complaint for failure to state a claim where plaintiff could only allege that vehicle was likely dangerous); *United States Xpress, Inc. v. Great N. Ins. Co.*, Civ. File No. 01-0195 (PAM/RLE), 2003 U.S. Dist. LEXIS 832, at *7 (D. Minn. Jan. 8, 2003) (product liability claims require plaintiff to prove he was

786618_1

been legal injury. Absent injury, a person has experienced nothing that the law can remedy. This rule applies no matter what causes of action plaintiffs wish to pursue (*i.e.*, claims for consumer fraud, breach of warranty, or unjust enrichment) or what relief plaintiffs seek (*i.e.*, equitable claims and legal claims are equally barred). "[T]he common thread of the[se] cases" is a simple one: "the absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved." *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804 (E.D. La. 1998).

Courts have repeatedly applied these principles in the context of product liability actions against pharmaceutical companies by uninjured users of pharmaceuticals, in cases that are indistinguishable from the case at bar. For example, in *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), the Fifth Circuit analyzed claims nearly identical to those at hand: "[Plaintiff's] claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back." *Id.* at 319. Notably, like the named plaintiffs here, the plaintiffs in *Rivera* did not claim the drug "caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to [the user]. Instead, they assert that their loss of cash is an 'economic injury.'" *Id.* The court concluded that plaintiffs were really complaining about conduct that had harmed others, and that "they were not among the injured." *Id.* at 320. Plaintiffs fared no better by recasting their product liability claims under contract principles. "The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury." *Id.* at 320-21. But "[m]erely asking for money," the court found, is

injured by the defendant's product); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1488 (D. Minn. 1996) (plaintiff must prove actual injury to recover under Minnesota consumer protection statutes).

786618_1

insufficient to establish a cognizable injury. *Id.* at 319. "By plaintiffs' own admission, [she] paid for an effective pain killer, and she received just that – the benefit of her bargain." *Id. See also Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099-1100 (5th Cir. 1991) (expressing "serious concerns about permitting recovery for [] fear [that a heart valve will fail] absent actual failure of the valve").

Similarly, in *Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003), plaintiffs asserted a consumer fraud claim seeking a refund of the purchase price of OxyContin, alleging that they paid too much for a drug that was not as safe and effective as advertised. *Id.* at 175.[13] The court rejected the claim for lack of a cognizable injury, noting that "[a]lthough plaintiffs allege a 'benefit of the bargain' theory of injury . . . they do not allege that OxyContin failed to provide them effective pain relief or that they suffered any adverse consequences from their use of OxyContin." *Id.* at 176. The court agreed with defendants that absent such an allegation, "it must be assumed that OxyContin worked for plaintiffs and that consequently they got what they paid for." *Id.* Citing other "no injury" cases discussed herein, the court concluded that "[w]ithout alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs." *Id.*

Finally, the court in *Heindel v. Pfizer*, Civ. A. No. 02-3348 (SRC), 2004 U.S. Dist. LEXIS 12232 (D.N.J. June 7, 2004), reached the same result with respect to consumer fraud and warranty claims concerning VIOXX and Celebrex. Plaintiffs in that case also asserted that the drugs were deceptively marketed to conceal alleged health risks, and sought a full or partial refund of their purchase price. Relying on *Bridgestone/Firestone*, the court noted that plaintiffs were attempting to move their case from tort to contract by seeking damages for "economic

---

[13]    *Williams* addressed an older version of the District of Columbia Consumer Protection Procedures Act that permitted suits only by a "consumer who suffers any damages" as a result of a prohibited practice. *Id.* at 172-73. The amended statute now provides for private attorney general actions. *Id.* at 174.

786618_1

loss." *Id.* at *41. But as the court explained, "breach of implied warranty claims are not intended to address hypothetical economic loss; they are meant to compensate a buyer who has not gotten the benefit of her bargain because the product in question does not meet generally accepted standards or disappoints consumer expectations." *Id.* at *42. Plaintiffs' claim for a return of the purchase price failed under that standard because it was apparent that the drugs were effective for them and that they "got the effective arthritis remedy that they bargained for." *Id.* at *42-43. *See also Porter v. Merck & Co., Inc.*, No. 04-CV-586, slip op. (Kan. Dist. Ct. Aug. 19, 2005) (dismissing claim under Kansas Consumer Protection Act for refund of VIOXX purchase price; "[P]laintiff . . . suffered no physical injury and received a drug that provided relief for her pain. Thus, she has no loss.") (attached as Ex. 3); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002) ("Plaintiffs' contention that everyone who took Rezulin sustained an ascertainable loss presumes that Rezulin was worthless. But that is not a defensible position. Even plaintiffs' experts acknowledge that Rezulin was enormously beneficial to many patients. Those patients presumably got their money's worth and suffered no economic injury"); *Angus v. Shiley, Inc.*, 989 F.2d 142, 148 (3d Cir. 1993) (applying Pennsylvania law and holding that allowing no-injury actions concerning allegedly defective heart valves "would sanction a large, if not vast, number of lawsuits by consumers who obtained properly functioning valves"); *Murphy v. Shiley, Inc.*, No. 90-35425, 1991 WL 135505, at *1 (9th Cir. July 24, 1991) (construing Washington law and rejecting no-injury heart valve claim; state law does not "allow recovery absent product failure, malfunction, or product caused accident").

These cases presented basic facts and legal theories that are indistinguishable from the case at hand. As in these cases, the economic loss asserted here by plaintiffs is entirely hypothetical. Plaintiffs have not alleged that VIOXX was not an effective pain reliever or that

786618_1

they themselves or their insured members have been injured by their ingestion of VIOXX. Rather, they are asserting that "[Merck] sold [VIOXX]; [plaintiffs] purchased and used [VIOXX]; [Merck] did not list enough warnings on [VIOXX]; and/or [VIOXX] was defective; other patients were injured by [VIOXX]; [plaintiffs] would like [their] money back." *Rivera*, 283 F.3d at 319. Their allegation that VIOXX is worth less than they paid because they **might have** suffered side effects is insufficient to make out a cognizable claim of injury. "[U]nless there is actually a failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way. Mere suspicion of a lost bargain . . . will not support an award of damages." *Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000) (dismissing claims including fraud, unjust enrichment, and breach of warranty).

**B.    Strong Policy Considerations Support Dismissing "No Injury" Claims.**

The consensus among the state and federal courts about the impropriety of "no injury" suits reflects widespread recognition of the undesirable consequences of allowing lawsuits such as plaintiffs' to proceed under any legal theory. Allowing unharmed individuals to seek compensation for the mere **potential** risk of physical or financial injuries that may never materialize would ultimately be harmful to broader consumer interests. The Fifth Circuit discussed that reality in *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094 (5th Cir. 1991). In that case, plaintiffs sought compensation because they were allegedly at risk due to a "potentially fatal" defect in implanted heart valves. *Id.* at 1096. Approximately 19,000 patients had received similar heart valves, but only seventeen individuals' valves had failed. *See id.* As Judge John Minor Wisdom explained on behalf of the court, "[t]he damages of the seventeen are presumably incorporated into the price of the product and spread among the nineteen thousand who have purchased the valve." *Id.* at 1100 n.20. But the court concluded that to allow 19,000 individuals, all contending that they are at risk of someday experiencing the malfunction experienced by only

786618_1

a few, to demand relief would be premature and unwise:

> Because [under a regime permitting no injury causes of action] no loss-spreading occurs, the money flows in a circle, from each patient (in the form of a higher price) to the company back to the same patient (in the form of a fear recovery), with a substantial portion of the higher price skimmed off for attorneys' fees. In addition, the higher price will place the product beyond the economic reach of at least some of the patients, forcing them to turn to the next best (affordable) alternative. We see little reason to adopt such a system.

*Id.* More recently, the Seventh Circuit explained in *Bridgestone/Firestone* that allowing uninjured consumers to assert products liability claims would generate a windfall to many consumers, while burdening manufacturers with much more than the actual cost of the harm generated by a particular defect. 288 F.3d at 1017 & n.1.

As these courts recognized, if "no injury" lawsuits are permitted, *some* consumers may gain in the short run. But in the long run, *all* consumers will lose. Consumers would bear the burden of higher prices to cover the manufacturers' costs of routinely making (or defending against) windfall payments for the mere risk of injury. Meanwhile, consumers who actually experience tangible injuries would receive smaller awards. *See Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 942 (3d Cir. 1985) (stating that unless "manifest injury" is required, "windfalls [will be awarded to] those who never take ill" and those who suffer will receive "insufficient compensation"). The logic of these cases applies here as well. Because no named plaintiff alleges any injury resulting from the ingestion of VIOXX, all of the named plaintiffs' state law-based claims against Merck must be dismissed for failure to allege injury.

### III. PLAINTIFFS' CLAIMS FOR VIOLATION OF STATE CONSUMER PROTECTION STATUTES MUST BE DISMISSED (FIRST AND SECOND CLAIMS FOR RELIEF).

Plaintiffs' First and Second Claims for Relief purport to allege that Merck's marketing of VIOXX has violated multiple states' consumer protection laws. Rather than separately allege the

786618_1

elements of a consumer fraud action under each relevant state's laws, however, plaintiffs merely list the citations to each state's consumer protection law, along with the conclusory statement that Merck violated it. (*See* Purchaser Master Compl. ¶¶ 215-59.) This sort of bare-bones pleading does not even suffice under the standard notice pleading rules and certainly does not meet the heightened pleading standards required for stating consumer fraud claims under Fed. R. Civ. P. 9(b). *See In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) ("The pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes.").[14] Indeed, the *Anti-Lock Brake* court dismissed with prejudice a consolidated class action complaint based on a similar defect. "Each state's statute is unique and plaintiffs are required to plead the essential elements of each one." *Id.* In addition, at a minimum, each named plaintiff must allege with specificity "the who, what, when, where, and how" of the fraud that each allegedly experienced. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Plaintiffs have utterly failed to meet the Rule 9(b) standard, and their claims should be dismissed on this basis alone.

Plaintiffs have good reason for sticking to generalities. Focusing on the actual elements of each state's law exposes the irreparable flaws in their claims:

- *Plaintiffs Do Not Allege An Actual Injury*: Most states' consumer protection acts explicitly require allegations of an actual injury. For the reasons discussed in Section II, above, plaintiffs in these states have failed to allege a cognizable injury.

- *Plaintiffs In States That Recognize The Learned Intermediary Doctrine Have Not Properly Pleaded Causation*: Most states adhere to the learned intermediary doctrine, which holds that a prescription drug manufacturer's duty to warn runs to the prescribing physician, not the patient. Plaintiffs have made no allegations whatsoever concerning the prescribing physicians, and therefore have not properly pleaded that any misstatements by Merck caused them any injury.

---

[14]     *See also, e.g., Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1321-22 (M.D. Fla. 2002); *Patel v. Holiday Hospitality Franchising*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999); *Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455, 463-64 (D.D.C. 1997).

25

786618_1

- ***Plaintiffs' Fraud-On-The-Market Theories Have Been Rejected By Most States***: Some states expressly forbid the discredited "fraud-on-the-market" causation and damage theory that plaintiffs seem to be espousing.

- ***Third-Party Payors Are Not "Consumers"***:  Many states' consumer protection acts do not encompass claims by business third-party payors.

- ***VIOXX Was an FDA-Approved Drug***.  After a rigorous process, the United States Food and Drug Administration (the "FDA") approved VIOXX for sale to the public and was charged with oversight of Merck's marketing and sale of VIOXX.  Some states explicitly disallow consumer protection act claims in such situations – that is, where a government administrative body has oversight over a product's manufacture and marketing.  Those states have made the policy choice that the overseeing governmental body is in a better position than the courts to assess the propriety of the manufacturer's activities.

- ***Failure to Follow Various Procedural Prerequisites***:  Some states have procedural prerequisites for asserting consumer fraud claims that plaintiffs have ignored.

**A.     All Of The Consumer Protection Act Claims By VIOXX Users Fail.**

The VIOXX users' consumer fraud claims fail for the following state-specific reasons:

**1.      Plaintiff Edward Wright Cannot State A Claim Under The Arizona Consumer Fraud Act.**

Named plaintiff Wright fails to state a claim under the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1522(A), for several reasons: (1) he has not suffered damages; (2) he fails to plead reliance; and (3) he has not adequately alleged proximate cause.

First, Mr. Wright has not alleged actual damages as required under ACFA.  *See, e.g.,* *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) ("It is clear that before a private party may exert a claim under the statute, he must have been damaged by the prohibited practice.").  As discussed above, Wright – along with the other named plaintiffs – has alleged nothing more than that he paid for VIOXX (Purchaser Master Compl. ¶ 40), which he would not have done but for Merck's allegedly false representations about its safety and efficacy.  Plaintiff does not allege that he suffered a personal injury as a result of ingesting VIOXX or that VIOXX failed to alleviate his pain.  In short, because he makes no allegations of personal injury to himself or

26

damage to property, he has not adequately pleaded "actual damages." *See, e.g., Nataros v. Fine Arts Gallery of Scotsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980) (under ACFA, "the misled consumer must have suffered some damage as a result of the misrepresentation").

Second, Wright has failed to allege that he relied on any specific statements, an essential element of a consumer fraud claim in Arizona. *See, e.g.*, Ariz. Rev. Stat. § 44-1522(A); *Peery*, 585 P.2d at 577 ("A prerequisite to [asserting] damages is reliance on the unlawful acts."). It is well settled that all elements of a fraud claim must be alleged with particularity, including reliance. *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1114 (D. Ariz. 2003) (dismissing fraud claims where plaintiffs failed to allege reliance with particularity under Fed. R. Civ. P. 9(b)). Here, Mr. Wright does not identify a specific alleged misrepresentation that he heard, encountered, or relied upon in purchasing VIOXX. His claim must therefore be dismissed on this ground as well.

Finally, Mr. Wright fails to allege that the deception proximately caused his injury, another requirement for bringing a claim under ACFA. *See, e.g., Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (proximate injury is a required element under AFCA); *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983) (same). The learned intermediary doctrine, which is well recognized under Arizona law, provides that a drug manufacturer's duty to warn runs to the physician – not the consumer. *Gaston v. Hunter*, 588 P.2d 326, 340 (Ariz. Ct. App. 1978) ("In the case of prescription drugs . . . the manufacturer's duty to warn is ordinarily satisfied if a proper warning is given to the prescribing physician."); *Dyer v. Best Pharmacal*, 577 P.2d 1084, 1088 (Ariz. Ct. App. 1978) (holding that "there is no duty to warn the patient"). As the Arizona Court of Appeals has explained:

> (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice

27

786618_1

> dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient.

577 P.2d at 1088 (citation omitted).  Under the learned intermediary doctrine, plaintiff is required to allege with specificity that Merck's misrepresentations proximately caused *his physician* to prescribed VIOXX.  As other courts have recognized, plaintiffs cannot proceed with failure to warn claims under the laws of states that recognize the learned intermediary doctrine unless they allege that the defendant failed to warn their doctor, proximately causing them injury.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001) (plaintiffs' failure-to-warn claim dismissed under Mississippi law because plaintiffs did not allege that defendant sales representatives "failed to warn the particular physicians who prescribed the drug for them, let alone that this alleged failure was the proximate cause of their injuries."); *Catlett v. Wyeth, Inc.*, 5:04-CV-154-2 (WDO), 2004 U.S. Dist. LEXIS 26498, at *21-22 (M.D. Ga. Sept. 14, 2004) ("It is clear that Georgia courts would find the 'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs."); *In re Norplant Contraceptive Prods. Liab. Litig.*, 165 F.3d 374, 378 (5th Cir. 1999) (applying learned intermediary doctrine in deceptive trade practices action).  Plaintiff makes no such allegations.[15]

---

[15]    To the contrary, the named plaintiff's allegations affirmatively suggest that the prescribing physicians may have been aware of the information he claims should have been disclosed.  (*See, e.g.*, Purchaser Master Compl. ¶¶ 152-155 (allegations that published Kaiser Permanente Study showed an increased chance of heart attacks in patients); *id.* ¶¶ 104-110 (allegations that published VIGOR study showed increase risk for blood-clot-related problems, including heart attacks).)

28

786618_1

Plaintiff does not allege who the prescribing physician was, much less that he or she was ever exposed to, or relied upon, any alleged misrepresentation by Merck in prescribing VIOXX to plaintiff. Accordingly, even if plaintiff had been injured, he has not properly alleged that Merck was the cause of that injury.

2.    **Plaintiff Clara Fontanilles Fails To State A Claim Under Florida Law.**

Named plaintiff Fontanilles cannot state claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA") because: (1) she does not allege actual damages; and (2) plaintiff cannot allege causation under FDUTPA. "To state a cause of action under FDUTPA, a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the seller in the course of trade or commerce." *Merrill Lynch Bus. Fin. Servs. v. Performance Mach. Sys. U.S.A.*, Case No. 04-60861-CIV-MARTINEZ-KLEIN, 2005 U.S. Dist. LEXIS 7309, at *26-27 (S.D. Fla. Mar. 4, 2005). Moreover, a consumer must demonstrate a causal relationship between the allegedly deceptive act and the loss or damage. *See Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. Dist. Ct. App. 1998) (reversing a verdict in favor of the plaintiff in a FDUPTA claim because "to be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer").

First, as in Arizona, a Florida consumer who wishes to state a claim under FDUTPA must allege actual damages. Fla. Stat. § 501.211(2) (authorizing recovery of "actual damages" for consumer who has "suffered a loss"); *see also Maroone Chevrolet, Inc. v. Nordstrom*, 587 So. 2d 514, 518 (Fla. Dist. Ct. App. 1991) (reversing judgment on FDUTPA claim where plaintiff "suffered absolutely no damages as a result of the alleged breach of warranty"); *Briehl*, 172 F.3d at 628-29 (dismissing, *inter alia*, claim under Florida's consumer protection statute for failure to allege actual damages); *Swindell v. Crowson*, 712 So. 2d 1162, 1164 (Fla. Dist. Ct. App. 1998)

786618_1

("Damages cannot be based on speculation, conjecture or guesswork."); *Macias v. HBC of Fla.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997). As discussed above, plaintiff has only alleged that she paid for VIOXX (Purchaser Master Compl. ¶ 28), but has not alleged any damages that she suffered from purchasing the drug. As a result, her FDUTPA claim must be dismissed.

Second, plaintiff also fails to properly allege causation under the learned intermediary doctrine. (*See* discussion, *infra*.) Under Florida law, a prescription drug manufacturer's duty to warn of the dangerous side effects of a drug runs to the physician, not to the patient. *See Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990). "This is so because the prescribing physician, acting as a 'learned intermediary' between the manufacturer and the consumer, weighs the potential benefits against the dangers in deciding whether to recommend the drug to meet the patient's needs." *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *see also Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir. 1995). Thus, under the learned intermediary doctrine, a prescription drug manufacturer's failure to warn of the risks associated with the use of its product cannot be the proximate cause of the plaintiff's injuries if the learned intermediary, *i.e.*, the prescribing physician, had independent knowledge of the risks associated with the use of the product. *Felix*, 540 So. 2d at 105. Once again, the Complaint does not identify the physician prescribing the VIOXX for which Fontanilles allegedly paid, much less identify any Merck statements that the prescribing physician heard or relied upon. For this reason too, her FDUTPA claim fails.

Finally, plaintiff's invocation of a fraud-on-the-market theory to satisfy the causation element must also fail. Plaintiffs make no concrete allegations regarding their alleged damages. They merely allege numerous times that VIOXX cost more than aspirin or other NSAIDs (*see, e.g.*, Purchaser Master Compl. ¶¶ 14, 78), and that Merck's alleged misrepresentations allowed

30

for the sale of VIOXX "at a grossly inflated price." (Purchaser Master Compl. ¶ 12.) Plaintiffs therefore seemingly base their claims on a theoretical effect that Merck's alleged misrepresentations had on the price of VIOXX, *i.e.*, a "fraud on the market" theory. But this theory – borrowed from securities law – is not available in Florida. *See, e.g., Kahler v. E.F. Hutton Co., Inc.*, 558 So. 2d 144, 145 (Fla. Dist. Ct. App. 1990) (fraud on the market theory is unavailable in Florida); *Butterworth v. Quick & Reilly, Inc.*, 998 F. Supp. 1404, 1410 (M.D. Fla. 1998) (same). Rather, plaintiff cannot evade the causation requirement by asserting a "fraud on the market" theory. *Butterworth*, 998 F. Supp. at 1410. Plaintiff has made no such allegation, and her claim should be dismissed for this additional reason.

3.      **The Claims Of Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin Williams, and Sharon Murphy All Fail Under Illinois Law.**

The Illinois plaintiffs' consumer fraud statute claims all fail because:  (1) they do not allege a cognizable injury; (2) they do not adequately allege causation under the learned intermediary doctrine; (3) their fraud-on-the-market causation theory has been rejected by Illinois courts; and (4) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") does not apply to transactions permitted under other regulations.[16]

First, ICFA requires a plaintiff to allege injury before suing. Under ICFA, a plaintiff may bring an action to recover for any ***actual damage*** to the plaintiff that occurred ***as a result of*** that deceptive act. 815 Ill. Comp. Stat. 505/10a(a) (emphasis added). Mere allegations that a defendant acted improperly do not give a plaintiff standing to sue; rather, the plaintiff must

---

[16]      Plaintiffs assert claims under both ICFA, 815 Ill. Comp. Stat. § 505/2, et seq., and the Uniform Deceptive Trade Practices Act ("DTPA"), 815 Ill. Comp. Stat. § 510/2 et seq. However, the latter only permits an action for injunctive relief, and does not permit recovery of damages. 815 Ill. Comp. Stat. § 510/3. Since plaintiffs seek only damages in conjunction with their Illinois consumer protection statute claims (Purchaser Master Compl. ¶¶ 260, 262), it is obvious that their DTPA claim must be dismissed. *See Glazewski v. Coronet Ins. Co.* 483 N.E.2d 1263, 1267 (Ill. 1985) ("[W]e find that the allegations of violation of the Uniform Act above do not support an action for damages."). Accordingly, the balance of the analysis herein addresses only the ICFA claim.

allege that he or she suffered some concrete injury as a result of the alleged conduct. *Kelly v. Sears Roebuck & Co.*, 720 N.E.2d 683, 692 (Ill. App. Ct. 1999) ("Plaintiffs are required to properly allege a present personal injury and/or damages in each count of their complaint."); *Verb v. Motorola, Inc.*, 672 N.E.2d 1287, 1296 (Ill. App. Ct. 1996) ("[P]laintiffs' complaint fails to state a cause of action because plaintiffs' claims are all based upon mere theoretical possibilities of injury and/or damages."); *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1995).

Under Illinois law, a bare allegation of "increased risk" or "diminution in value," unsupported by specific facts, is insufficient to state a claim for damages under ICFA. In *Verb*, a group of cellular phone users brought a putative class action alleging, *inter alia*, that the manufacturer violated the Illinois Consumer Fraud Act by failing to warn them and other purchasers that the phones may be unsafe. 672 N.E.2d at 1289. The named plaintiffs admitted that their phones had not caused them any personal injury. Instead, they argued that they were damaged by:

> [A] reduction in the value of the cellular phones, by lessening their use of the cellular phones, by modifying the cellular phones or the use thereof to limit or mitigate their exposure to the harmful or potentially harmful radio waves, by being subjected to increased risk of exposure to harmful or potentially harmful radio waves, and by suffering increased risk of personal injury, whether manifested or not, or personal injury and the concomitant emotional distress associated with either.

*Id.* at 1289. The trial court dismissed all of the plaintiffs' claims because, among other grounds, their complaint failed to allege a compensable injury. The appellate court affirmed, concluding that, absent an allegation that plaintiffs experienced a "present personal injury," their "claims constitute conjecture and speculation." *Id.* at 1295. *See also Avery*, 2005 Ill. LEXIS 959, at *146, 159 (reversing judgment in favor of plaintiff under the Illinois consumer fraud act because,

32

*inter alia*, plaintiff "did not suffer any damage"). The same reasoning applies to this case.
Plaintiffs simply cannot make out a case that they suffered a loss under ICFA, because they do
not allege any adverse effects or damage from VIOXX.

Second, plaintiffs' ICFA claims against Merck also must be dismissed because, even if
they had properly alleged injury, they fail to satisfy the Act's causation requirement. *See* 815 Ill.
Comp. Stat. 505/10a (requiring proof that the individual's asserted injury occurred "as a result
of" the deceptive act or practice); *see also Avery*, 2005 Ill. LEXIS 959, at *152 (under ICFA, "a
plaintiff must prove that he or she was actually deceived by the misrepresentation in order to
establish the element of proximate cause"); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593
(Ill. 1996). The learned intermediary doctrine, as adopted by Illinois, requires that a
pharmaceutical manufacturer provide warnings regarding a drug's risks and side effects only to
physicians, not to consumers. *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392-
93 (Ill. 1987). Yet the Complaint makes absolutely no allegations concerning the plaintiffs'
prescribing physicians. Plaintiffs do not even identify those physicians, much less allege that
they read or heard the allegedly deceptive statements, were not independently aware of the
information plaintiffs allege was concealed, were influenced in their prescribing decisions, or
most importantly, that they would not have prescribed VIOXX in the absence of Merck's
allegedly deceptive statements. This shortcoming is dispositive because, without such
allegations, plaintiffs as a matter of law cannot demonstrate causation.

Third, plaintiffs' claims also fail to the extent they are relying on a so-called "fraud-on-
the-market" causation theory (discussed above). As noted above, plaintiffs merely allege that
VIOXX cost more than aspirin or other NSAIDs (*see, e.g.*, Purchaser Master Compl. ¶¶ 14, 78),
and that Merck's alleged misrepresentations allowed for the sale of VIOXX "at a grossly inflated

786618_1

price" (Purchaser Master Compl. ¶ 12). Efforts to assert ICFA claims based on such a "fraud on the market" theory have been addressed and soundly rejected by Illinois courts. *See, e.g., Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155-56 (Ill. 2002) (rejecting plaintiff's "market theory" of causation that "all purchasers of Amoco's premium gasolines were injured irrespective of whether they did or did not see or hear the specific advertisements and marketing materials in question" as impermissible under the Consumer Fraud Act); *Dura Pharms., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (Apr. 19, 2005).

In *Oliveira*, the plaintiff alleged that he was "damaged by defendant's advertisements because the ads created an 'artificially inflated' price for the gasoline he purchased." 776 N.E.2d at 155. According to the plaintiff, the defendant's "allegedly deceptive advertising scheme increased demand for defendant's premium gasolines. Because of this increase in demand, defendant 'was able to command an inflated and otherwise unsustainable price for its premium gasolines.' Therefore, 'all purchasers . . . were injured irrespective of whether they did or did not see or hear the specific advertisements.'" *Id.* at 155-56. He thus sought to recover the difference between the "inflated" price he paid for the gasoline and its true value under ICFA. *See id.* The court recognized that the plaintiff's only theory of causation and loss was a "fraud on the market" theory. *See id.* at 156-57. The court rejected that theory, explaining that allowing plaintiffs to rely on such a theory would eliminate the requirement that there be a "proximate causation" connection between the misdeed complained of and the loss suffered. *Id.* at 164. The same is true here: plaintiffs may not evade the causation requirement by asserting a "fraud on the market" theory.

Finally, the Illinois plaintiffs' claims fail because ICFA does not apply to transactions permitted under other regulations. ICFA specifically exempts from its coverage "[a]ctions or

786618_1

transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. § 505/10b(1). Pursuant to this provision, ICFA "will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations." *Bober v. Glaxo Wellcome, PLC*, 246 F.3d 934, 941 (7th Cir. 2001). "[T]he pharmaceutical industry is highly regulated"; therefore, "recognizing the primary of federal law in this field, the Illinois statute itself protects companies from liability if their actions are authorized by federal law." *Id.* at 942. Because the FDA approved VIOXX and permitted its sale, and it was, at all relevant times, an FDA-approved drug (Purchaser Master Compl. ¶ 48), the plain language of ICFA mandates dismissal of plaintiffs' claims on this ground as well.

### 4. The Indiana Plaintiffs Michelle Biondillo and Stephen Keisker Fail To State A Cause Of Action Under The Indiana Deceptive Consumer Sales Act.

Named plaintiffs Biondillo and Keisker (the "Indiana plaintiffs") fail to state a claim for alleged violations of the Indiana Deceptive Consumer Sales Act (the "DCSA"). Under the DCSA, a plaintiff who *relied* on an allegedly deceptive act may bring an action to recover "*damages actually suffered* as a consumer *as a result of* the deceptive act." Ind. Code § 24-5-0.5-4(a) (emphasis added). Here, plaintiffs' claims under the DCSA fail because: (1) they do not allege a cognizable injury; (2) they do not allege reliance; and (3) they do not allege a viable theory of causation.

First, the Indiana plaintiffs fail to allege a cognizable injury – *i.e.*, they did not "actually suffer[]" damages. Plaintiffs have only alleged that they paid for VIOXX (Purchaser Master Compl. ¶ 24) and have not properly alleged any damages that they suffered by doing so.

786618_1