Second, they fail to allege any reliance whatsoever and therefore do not state a claim under the DCSA. Ind. Code § 24-5-0.5-4(a) (setting forth reliance requirement). Nowhere do these plaintiffs allege that they relied on any alleged misstatements by Merck – *i.e.*, that they purchased VIOXX because of Merck's representations. The absence of such an allegation is not surprising since it is obviously physicians – rather than the patients themselves – who decide which drug to prescribe to a patient.

Third, plaintiffs do not allege a viable theory of causation because, under Indiana's learned intermediary doctrine, plaintiffs must allege that Merck failed to warn the prescribing physicians of the VIOXX that they allegedly purchased. The learned intermediary doctrine, as adopted by Indiana, requires that a pharmaceutical manufacturer provide warnings regarding a drug's risks and side effects only to physicians, not to consumers. The physicians then act as "learned intermediaries," passing on the warnings as they deem appropriate. *Ortho Pharm. Corp. v. Chapman*, 388 N.E.2d 541, 549 (Ind. Ct. App. 1979). Plaintiffs, however, do not even identify the prescribing physicians, much less allege that those physicians read or heard the allegedly deceptive statements, were not independently aware of the information plaintiffs allege was concealed, were influenced in their prescribing decisions, or most importantly, that they would not have prescribed VIOXX in the absence of Merck's allegedly deceptive statements. In short, plaintiffs have failed to allege the requisite causal link under Indiana law. For this reason too, their claims fail.

### 5. Plaintiff Christie Anderson Fails To State A Claim Under The Kentucky Consumer Protection Act.

Named plaintiff Anderson fails to state a claim under the Kentucky Consumer Protection Act (the "KCPA"). The KCPA provides a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and

36

thereby suffers *any ascertainable loss* of money or property, real or personal, *as a result of* the use or employment by another person of a method, act or practice declared unlawful." Ky. Rev. Stat. Ann. § 367.220(1) (emphasis added); *Schlenk v. Ford Motor Credit Co.*, 308 F.3d 619, 622 (6th Cir. 2002) (affirming dismissal of KCPA complaint).

First, a plaintiff suing under the KCPA is not entitled to seek relief on behalf of a class. *See Arnold v. Microsoft Corp.*, No. 00-CI-00123, 2001 WL 193765, at *6 (Ky. Cir. Ct. July 21, 2000) ("The Court also does not believe that KRS 367.170 was meant to be a vehicle for Class Action suits and declines to open such a sweepingly vague statute for use as a blunt instrument in a Class Action suit."); *In re PPA Prods. Liab. Litig.*, MDL No. 1407, 2003 U.S. Dist. LEXIS 22530, at *10 n.1 (W.D. Wash. Nov. 5, 2003) (questioning whether class actions are available under KCPA).

Second, as discussed above, plaintiff has not alleged that VIOXX did not work as prescribed to relieve pain or that she suffered any harm or side effects from ingesting VIOXX. Simply put, alleged defects that never manifested themselves to the individual taking the VIOXX do not constitute any ascertainable loss. *See Nicholson v. Clark*, 802 S.W.2d 934, 939 (Ky. Ct. App. 1990) (upholding dismissal of KCPA claim because plaintiffs could not show that they sustained an ascertainable loss).

Third, plaintiff Anderson fails to adequately plead causation as required under Ky. Rev. Stat. Ann. § 367.220(1) because of Kentucky's application of the learned intermediary doctrine. *See generally Larkin v. Pfizer, Inc.*, 153 S.W.3d 758 (Ky. 2004). Kentucky recognizes the learned intermediary doctrine because "the prescribing physician is in a superior position to impart the warning and can provide an independent medical decision as to whether use of the drug is appropriate for treatment of a particular patient." *Id.* at 763. Yet, the Complaint contains

786618_1

no allegations whatsoever about the prescribing physician, whether he or she was aware of the alleged risks and whether he or she would have prescribed VIOXX in the absence of Merck's allegedly deceptive statements. For this additional reason, named plaintiff Anderson's claim fails.

> **6.   Plaintiffs Frank Saia and Emily Feinberg Fail To State A Claim Under Massachusetts Law.**

Named plaintiffs Saia and Feinberg fail to state a claim for relief under the Massachusetts Consumer Protection Act (the "Massachusetts Act") because that statute bars claims involving transactions that have been approved or permitted by governmental entities: "Nothing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." *See* Mass. Gen. Laws ch. 93A, § 3. Because the FDA approved VIOXX and permitted its sale, and it was, at all relevant times, an FDA-approved drug as plaintiffs admit (Purchaser Master Compl. ¶ 48), the plain language of the Massachusetts Act mandates dismissal of plaintiffs' claims.

Notably, the regulated-transaction exception to the Massachusetts Act has been held to bar claims that implicate the FDA's "complicated and comprehensive federal statutory and regulatory scheme." *Animal Legal Def. Fund, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 283 (D. Mass. 1986). In *Animal Legal Defense Fund*, the court dismissed plaintiff's allegations that a veal producer did not "tell consumers of its veal how the calves it buys are raised" and had, therefore, engaged in deceptive practices. *Id.* at 279. The court concluded that plaintiffs failed to state a cognizable claim because practices that comply with FDA regulations do not "violate the Massachusetts consumer protection statute." *Id.* at 284. Moreover, as in the case at bar,

786618_1

nowhere in its pleadings did the plaintiff in *Animal Legal Defense Fund* allege that defendants "fail[ed] to comply with the federal statutory and regulatory scheme." *Id.*

Even if this provision were not a complete bar to the Massachusetts plaintiffs' claims, they would still fail to state a cause of action because they do not allege that they provided Merck with written notice thirty days before filing a claim as required by the Act. *See* Mass. Gen. Laws ch. 93A, §§ 9(3), 11. *See, e.g., McMahon v. Digital Equip. Corp.*, 944 F. Supp. 70, 77 (D. Mass. 1996) (dismissing the plaintiff's chapter 93A claim for failure to allege that she sent the demand letter); *Spring v. Geriatric Auth. of Holyoake*, 475 N.E.2d 727, 736 (Mass. 1985) (demand letter is "jurisdictional prerequisite to suit under [chapter 93]"). For this additional independent reason, the Massachusetts plaintiffs' claims must be dismissed.

> **7.     Plaintiff Christine Seitz's Michigan Consumer Protection Act Claim Is Barred Under Michigan Law.**

Named plaintiff Seitz fails to state a viable claim under the Michigan Consumer Protection Act (the "MCPA") because: (1) Michigan law bars all product liability actions involving FDA-approved drugs; (2) the MCPA expressly prohibits relitigation of regulatory decisions; (3) she has not alleged a cognizable injury; and (4) she has not met the MCPA's causation requirement.

First, plaintiff's claim must be dismissed because Michigan has expressly barred product liability claims asserting that drugs approved by the FDA are unsafe. *See* Mich. Comp. Laws § 600.2946(5). Section 600.2946(5) states, in relevant part:

> In a product liability action against a manufacturer or seller, a product that is a drug is not defective or unreasonably dangerous, and the manufacturer or seller is *not liable*, if the drug was *approved for safety and efficacy* by the United States food and drug administration, *and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.*

786618_1

*Id.* (emphasis added).  As noted above, and as plaintiffs acknowledge, VIOXX was at all relevant times an FDA-approved drug.  (Purchaser Master Compl. ¶ 48.)

The Michigan Supreme Court and other federal courts have recognized that the MCLA provides an "absolute defense" to claims asserted against drug manufacturers concerning the safety and efficacy of FDA-approved drugs.  *See, e.g., Taylor v. Smithkline Beecham Corp.*, 658 N.W.2d 127, 131 (Mich. 2003) ("[U]nless the fraud exception in subsection a or the bribery exception contained in subsection b applies . . . a manufacturer or seller of a drug that has been approved by the FDA has an ***absolute defense.***") (emphasis added); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965-66 (6th Cir. 2004) (dismissing claims relating to diet drugs).  On this ground alone, Ms. Seitz's claim must be dismissed.

Second, plaintiff's MCPA claim is also barred because that statute expressly prohibits relitigation of regulatory decisions.  *See* Mich. Comp. Laws § 445.904(1)(a) (transactions or conduct "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" are exempt from the MCPA).  The Michigan Supreme Court has held that this provision bars plaintiffs from asserting "consumer fraud" claims that are in effect attempts to relitigate regulatory decisions made by state or federal agencies with control over a particular subject matter.  *See, e.g., Smith v. Globe Life, Ins. Co.*, 597 N.W.2d 28, 36-39 (Mich. 1999) (MCPA exempts the sale of credit life insurance because state laws administered by the Insurance Commissioner authorized such sales); *Forton v. Laszar*, 622 N.W.2d 61 (Mich. 2001) (Corrigan, C.J., concurring) (MCPA bars claims relating to regulated industries such as the sale of residential homes); *Kraft v. Detroit Entm't, LLC*, 683 N.W.2d 200, 204-05 (Mich Ct. App. 2004) (barring consumer fraud claims involving slot machines because the activities at issue were governed and authorized by the Michigan Gaming

40

786618_1

Control Board). Because VIOXX was at all time approved and regulated by the FDA for sale within the United States, plaintiff's claim is barred. (*See* Purchaser Master Compl. ¶¶ 83-86.)

Third, plaintiff Seitz's claim must also be dismissed because, as discussed above, she does not allege that she suffered a cognizable injury as a result of taking VIOXX. Under the MCPA, only a plaintiff who suffers a "*loss as a result of* a violation" may bring suit. Mich. Comp. Law § 445.911(2) (emphasis added). Mere allegations that a defendant acted improperly do not give a plaintiff standing to sue; rather, the plaintiff must allege that he or she suffered some concrete injury as a result of the alleged conduct. *See Lozada v. Dale Baker Oldsmobile, Inc*, 136 F. Supp. 2d 719, 728 (W.D. Mich. 2001) (a plaintiff may not recover under the MCPA absent a showing of actual damages). And, just last month, the Michigan Supreme Court confirmed "the requirement of present injury in the toxic tort context." *Henry v. Dow Chem. Co.*, No. 125205, 2005 Mich. LEXIS 1131, at *12 (Mich. July 13, 2005).

Finally, plaintiff fails to meet the MCPA's causation requirement because Michigan, like other states, has recognized the learned intermediary doctrine. *See Musselman v. E.R. Squibb & Sons*, No. 5:96-cv-72, 1997 U.S. Dist. LEXIS 7708, at *19-21 (W.D. Mich. May 5, 1997) ("this court concludes, as has at least one other federal court, that 'the Michigan Supreme Court would recognize the [learned intermediary] doctrine, were that issue properly before it'"); *Brown v. Drake-Willock Int'l.*, 530 N.W.2d 510 (Mich. Ct. App. 1995); *Mowery v. Crittenton Hosp.*, 400 N.W.2d 633, 636 (Mich. Ct. App. 1986). For this further reason, Ms. Seitz's claim must fail.

### 8.   Plaintiff Sara Cheeseman Cannot State A Claim For Consumer Fraud.

Named plaintiff Cheeseman cannot establish a statutory consumer fraud claim under Vermont law. A consumer may bring a Consumer Fraud Act claim if he or she "contracts for goods or services *in reliance upon* false or fraudulent representations or practices . . . or []

41

sustains damages or injury *as a result of* any false or fraudulent representations or practices."

Vt. Stat. Ann. tit. 9, § 2461(1) (emphasis added). *See also Carter v. Gugliuzzi*, 716 A.2d 17, 23

(Vt. 1998) (noting reliance requirement). Accordingly, a plaintiff must establish reliance or

causation to succeed on such a claim, neither of which is sufficiently alleged here. Plaintiff has

not identified any Merck representation or practice upon which she relied, or which otherwise

caused her to purchase VIOXX. Therefore, she has not adequately pled either element.

    Moreover, plaintiff could not establish either element without alleging that her

physician's prescription of VIOXX to her was either made in reliance on an allegedly deceptive

statement or practice of Merck, or was otherwise cause thereby – allegations notably absent from

the Complaint. Although no Vermont court or statute addresses the learned intermediary

doctrine, Vermont will likely adopt it once presented with the issue. First, Vermont has adopted

the principles from which the learned intermediary doctrine has evolved, found in section 402A

of the Restatement (Second) of Torts, and has relied on several comments from that section. *See*

*Paquette v. Deere & Co.*, 719 A.2d 410, 412 (Vt. 1998). *Cf. Ehlis v. Shire Richwood, Inc.*, 367

F.3d 1013, 1017 (8th Cir. 2004). Furthermore, the vast majority of jurisdictions either have

recognized or adopted the doctrine. *See id.* (noting that "the doctrine either applies or is

recognized . . . in 48 states, the District of Columbia, and Puerto Rico") (citation and internal

quotations omitted); *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 767-68 (Ky. 2004) (courts of at least

34 states have adopted the learned intermediary doctrine; federal courts applying state laws of

ten other jurisdictions have either interpreted those laws as having adopted the rule or predicted

that those jurisdictions would ultimately adopt it). Indeed, no court that has directly addressed

the issue has rejected it, per se. *Larkin*, 153 S.W.3d at 768.

786618_1

Because plaintiff does not identify the prescribing physicians, much less allege that those physicians read or heard the allegedly deceptive statements, were not independently aware of the allegedly-omitted information, or most importantly, that they would not have prescribed VIOXX absent Merck's allegedly deceptive statements, she cannot demonstrate reliance or proximate cause. Accordingly, her claim should be dismissed.

### 9. Plaintiff Brenda Aguero Does Not State A Claim Under Washington Law.

Named plaintiff Aguero cannot state a consumer protection claim under the Washington Consumer Protection Act (the "WCPA"), Wash. Rev. Code § 19.86.010 *et seq.* A plaintiff suing under the WCPA must demonstrate: "(1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered." *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002).

Like the named plaintiffs from other states, Aguero has failed to allege a cognizable injury, as required by the Washington statute. A private action under the WCPA "requires a showing that plaintiff was injured." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 539 (Wash. 1986). *See also Cooper's Mobile Homes, Inc. v. Simmons*, 617 P.2d 415, 420 (Wash. 1980) (affirming trial court's decision to decline to instruct jury on plaintiff's WCPA claim because, *inter alia*, plaintiff failed to show defendant's allegedly deceptive acts "caused her any injury"); *Seattle Rendering Works, Inc. v. Darling-Delaware Co.*, 701 P.2d 502, 506 (Wash. 1985) (reversing trial court's finding of a WCPA violation on grounds that "plaintiffs did not suffer any damages"). For this reason alone, her claim must be dismissed.

Moreover, Ms. Aguero also fails to adequately allege causation as required by the WCPA. *Hangman Ridge Training Stables, Inc.*, 719 P.2d at 539 (under the WCPA plaintiff must

43

demonstrate "a causal link between the alleged acts and the plaintiff's injury"). Washington, like other states, has recognized the learned intermediary doctrine. *Terhune v. A. H. Robins Co.*, 577 P.2d 975, 978 (Wash. 1978). Because Aguero does not allege that Merck failed to provide her physician with information about VIOXX that proximately caused the physician to prescribe her this drug as opposed to another, her claim must be dismissed.

### 10.  If New Jersey Law Governed Plaintiffs' Claims, None Of Them Would State A Cause Of Action.

Although there are no New Jersey named plaintiffs, plaintiffs argue for the universal application of New Jersey law to this action. As set forth in Section I, *infra*, plaintiffs are wrong on this point. However, even if New Jersey law did have such universal application, the named plaintiffs' claims would still fail.

To state a claim under the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003). None of the named plaintiffs' claims pass muster under this statute because: (1) they have not pleaded an ascertainable loss; (2) their fraud-on-the-market theory is barred under New Jersey law; and (3) they fail to adequately allege causation under the learned intermediary doctrine.

First, plaintiffs have not pleaded any "ascertainable loss." A claimant may not recover damages under the NJCFA unless the defendant caused the plaintiff actual harm. *See Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 373 (D.N.J. 2001) ("[S]imply showing a violation of the NJCFA is not enough to entitle a plaintiff to damages under that Act."). Specifically, under the NJCFA, a plaintiff must allege an "ascertainable loss of moneys or property" caused

786618_1

by the defendant's use or employment of an unlawful method, act, or practice.  N.J. Stat. Ann. § 56:8-19.  "An ascertainable loss occurs when a consumer receives less than what was promised."  *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002).

A federal district court in New Jersey considered and rejected claims similar to those plaintiffs make here on this very ground.  In *Heindel v. Pfizer, Inc.*, No. CIV.A. 02-3348(SRC), 2004 U.S. Dist. LEXIS 12232 (D.N.J. June 7, 2004), the plaintiffs brought suit on the basis of various studies that allegedly showed that VIOXX and Celebrex were less safe than the plaintiffs had previously believed.  *See id.* at *2-3.  Like plaintiffs here, the *Heindel* plaintiffs did not allege they suffered any injuries and did not argue that the drugs were ineffective.  Nonetheless, they sought to recover "some or all of the purchase price" on the ground that they "simply paid too much for the drugs."  *Id.* at *13.  The district court rejected the argument, finding that the plaintiffs had not suffered any "ascertainable loss" because they did not allege that they suffered any injuries or that the drugs did not work to relieve their pain.[17]  *Id.* at *13-15; *see also In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 68 (stating that plaintiffs in a prescription drug products liability case who alleged no injury but sought to recover the purchase price could not show an "ascertainable loss" under the NJCFA).  In rejecting these claims, the court recognized that because "tort law fully compensates those who are physically injured," any recoveries by those who do not experience malfunction or injury "means excess compensation."  2004 U.S. Dist. LEXIS 12232, at *42 (internal quotation marks omitted).[18]

---

[17]     The *Heindel* court considered whether the plaintiffs suffered an "ascertainable loss" under the Pennsylvania Unfair Trade Practices and Consumer Protection law.  2004 U.S. Dist. LEXIS 12232, at *41-43.  *Heindel*'s discussion of what constitutes an ascertainable loss under Pennsylvania law is useful in interpreting New Jersey law because both states' consumer fraud statutes require an "ascertainable loss."  *See id.* at *23-24.  Indeed, the *Heindel* court specifically noted that the plaintiffs' claims would be precluded under both Pennsylvania and New Jersey law.  *See id.* at *47 n.7.

[18]     *See also In re Bridgestone/Firestone*, 288 F.3d at 1017 n.1 (illustrating how allowing recovery both for injuries caused by a defective product and for allegedly unsafe products that have not caused any injury would "both overcompensate buyers as a class and induce manufacturers to spend inefficiently ... to reduce the risks of defects");

Second, plaintiffs' "fraud-on-the-market" theory also fails under New Jersey law. Once again, the *Heindel* ruling is directly on point. As in this case, the *Heindel* plaintiffs argue that if more information about the potential side effects of VIOXX had been available, they would have paid less for it. Although such a theory had been recognized in the context of securities law, the *Heindel* court determined that it was "patently absurd" in the context of prescription drugs, which do not have a "perfect market" whereby "adverse information is . . . quickly absorbed by the market, thus causing the price of the stock or commodity at issue to fluctuate." *Id.* at *14. Further, the court concluded that the theory was inapplicable because prescription drug consumers do not have the option of paying less for their drugs; "if the side effects of the drug make it overly risky to ingest, the doctor will either not prescribe it or the patients will decide not to take it." *Id.* "In short, the decision to take a particular drug is a medical one, not one based on a[] comparative analysis of risk versus price." *Id.* In short, the court found that a "price inflation" or "fraud on the market" theory "defies both reality and common sense" and is "out of place in this lawsuit, where it is clear that neither plaintiff suffered any adverse effects." *Id.*

In *New Jersey Citizen Action*, the Appellate Division likewise rejected the "price inflation" or "fraud on the market" theory in the context of prescription drugs. 842 A.2d at 177-78. In that case, plaintiffs who had not suffered any physical injury alleged that a prescription allergy medication was not as effective as the manufacturer claimed. *See id.* at 176. They sought to recover the difference between the "inflated" price they paid for the drug and its true value using the New Jersey Consumer Fraud Act. *See id.* The court recognized that the plaintiffs' only theory of causation and loss was a "price inflation" or "fraud on the market" theory. *See id.* at 177-79. The court rejected that theory, explaining that allowing plaintiffs to

*Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 834 (S.D. Ohio 2003) (allowing a claim of a "class that suffered no physical or psychological injuries as a result of their use of the product at issue" would "eradicate the viability of the tort system by overcompensating buyers and creating inefficient incentives for manufacturers").

46

786618_1

rely on such a theory would "virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered." *Id.* at 178. Adopting such a theory would "fundamentally alter" the NJCFA so that "the relationship between the alleged misstatement and the ascertainable loss suffered would become so attenuated that it would effectively disappear." *Id.*; *see also Kaufman v. I-Stat Corp.*, 754 A.2d 1188, 1192-1201 (N.J. 2000) (rejecting the "fraud on the market" theory to support a common-law fraud claim).

Finally, even if plaintiffs could show an ascertainable loss, their claims also fail to pass muster under the NJCFA because the learned intermediary doctrine requires them to allege with specificity that their physicians would not have prescribed VIOXX but for the alleged fraud. A prescription drug manufacturer's duty to warn runs to the prescribing physician, not the patient. N.J. Stat. Ann. § 2A:58C-4. *See Niemiera v. Schneider*, 555 A.2d 1112, 1117 (N.J. 1989) ("In New Jersey, as elsewhere, we accept the proposition that a pharmaceutical manufacturer generally discharges its duty to warn the ultimate user of prescription drugs by supplying physicians with information about the drug's dangerous propensities."). As discussed *supra*, plaintiffs do not even identify the prescribing physicians, much less allege that those physicians read or heard the allegedly deceptive statements, were not independently aware of the information plaintiffs allege was concealed, were influenced in their prescribing decisions, or most importantly, that they would not have prescribed VIOXX in the absence of Merck's allegedly deceptive statements. For this distinct additional reason, all named plaintiffs' claims would fail if they were governed by the NJCFA.

**B.     The Third-Party Payor Plaintiffs' Consumer Protection Act Claims Fail.**

786618_1

The claims of the third-party payor plaintiffs fail for all of the reasons discussed in Section III.A, *supra*. In addition, the third-party payors' claims fail for the following state-specific reasons:

### 1. Cavalier Homes, Inc. Cannot State A Claim Under The Alabama Deceptive Trade Practices Act.

The claims of the sole Alabama named plaintiff – Cavalier Homes, Inc. ("CHI") – should be dismissed for several reasons. First, Alabama prohibits class actions under the Alabama Deceptive Trade Practices Act ("ADTPA"). *See* Ala. Code § 8-19-10(f) ("[a] consumer or other person bringing an action under this chapter may not bring an action on behalf of a class"); *Ex parte Exxon Corp.*, 725 So. 2d 930, 933-34 (Ala. 1998).[19]

Second, the ADTPA authorizes a private right of action only where the allegedly deceptive trade practice "causes monetary damage." *See* Ala. Code § 8-19-10(a). As discussed above, however, CHI has not alleged any injury and therefore could not have suffered monetary damage. *See, e.g.*, *Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988) (rejecting claim under the ADTPA where plaintiffs suffered no monetary damages as a result of defendant's actions); *Ford Motor Co. v. Rice*, 726 So. 2d 626, 629 (Ala. 1998) (plaintiffs did not successfully allege any "adverse economic consequences" when they claimed that their vehicles' risk of rollover was greater than suggested by Ford's silence).

Third, plaintiff does not state a claim because it is not a consumer under the ADTPA. Under the ADTPA, a "consumer" is defined as "[a]ny natural person who buys goods or services

---

[19]   Plaintiffs suggest that even if the Court refuses to apply New Jersey law to a purported nationwide class (and to every named plaintiff here), it should still apply the New Jersey Consumer Fraud Act to plaintiffs from states, like Alabama, that do not permit class actions under their consumer protection statutes. (Purchaser Master Compl. ¶ 261.) Indeed, they fail even to assert a claim under the ADTPA. Plaintiffs' proposal is utterly meritless. There is no basis for exempting some consumers from a proper choice-of-law determination simply because their home state's law is believed by plaintiffs to be less favorable than New Jersey's. *See Ex parte Exxon*, 725 So. 2d at 933-34 (rejecting attempt by putative class to circumvent ADTPA class action bar; court refused to apply New Jersey Consumer Fraud Act, and dismissed case under ADTPA because class actions are barred under the statute).

786618_1

for personal, family or household use." Ala. Code § 8-19-3(2). In *In re Vitamins Antitrust Litigation*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25072 (D.D.C. Mar. 13, 2001), the Alabama Attorney General brought suit under the ADTPA on behalf of a putative class of "indirect purchasers" of vitamins. *Id.* at *19. The court dismissed the claim, finding that because plaintiffs asserted injury "in their trade or business," they were not consumers for purposes of the ADTPA. *Id.* at *24. Likewise here, CHI is not a "natural person," and did not "buy[] goods or services for personal, family or household use." To the contrary, any asserted injury is to its business interests. *Id.* at *24. Accordingly, it cannot state a claim under the ADTPA. *See also EBSCO Indus., Inc. v. LMN Enters. Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (finding that corporate plaintiff lacked standing under ADTPA because it was not a consumer).

Fourth, CHI cannot proceed under a "fraud on the market" theory of causation under Alabama law. The Alabama Supreme Court has ruled that the plaintiffs have to show actual reliance on allegedly deceptive advertising in order to state a claim under the state consumer fraud statute. Merely alleging that advertisements artificially raised the price for all buyers was not considered sufficient to support the proximate causation element of a private cause of action under the statute. *Ex parte Exxon Corp.*, 725 So. 2d at 933 n.3 (citing *Butler v. Audio/Video Affiliates, Inc.*, 611 So. 2d 330 (Ala. 1992)); *Ex parte Household Retail Servs., Inc.*, 744 So. 2d 871 (Ala. 1999) (refusing to "adopt a 'presumption-of-reliance' or 'fraud-on-the-market' theory (used in some federal securities-fraud cases) in common-law fraud class actions"). CHI's claim must be dismissed on this distinct additional ground.

Lastly, CHI also fails to properly allege causation under the learned intermediary doctrine. Alabama, like other states, holds that a prescription drug manufacturer's duty to warn of the dangerous side effects of a drug runs to the physician, not to the patient. *Stone v. Smith,*

786618_1

*Kline & French Labs.*, 447 So. 2d 1301, 1305 (Ala. 1984) (adopting the reasoning of *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1276 (5th Cir. 1974)). "Pharmaceutical companies . . . in selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer." *Id.* Thus, in Alabama, under the learned intermediary doctrine, a prescription drug manufacturer's failure to warn of the risks associated with the use of its product cannot be the proximate cause of the plaintiff's injuries if the learned intermediary, *i.e.*, the prescribing physician, had independent knowledge of the risks associated with the use of the product. *See also Morguson v. 3M Co.*, 857 So. 2d 796, 801-02 (Ala. 2003) ("[p]ursuant to the learned-intermediary doctrine, [defendant] had no duty to provide warnings to [patient]; rather, [defendant's] duty was to warn the physicians"). However, plaintiffs' Complaint contains no allegations whatsoever about the physicians who prescribed the VIOXX that CHI allegedly paid for, and it does not allege that those physicians would not have prescribed VIOXX in the absence of Merck's allegedly deceptive statements. For this additional reason, CHI's claims must fail.

### 2.   AFSCME Fails To State A Claim Under District Of Columbia Law.

Named plaintiff American Federation of State, County, and Municipal Employees AFL-CIO ("AFSCME"), a labor union, fails to state a claim under the District of Columbia Consumer Protection Procedures Act (the "DCCPPA"), D.C. Code § 28-3901, because its alleged purchases of VIOXX are not "consumer" transactions within the meaning of the statute.

The DCCPPA only reaches the ultimate retail transaction between the final distributor and the individual member of the consuming public. *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989). It is "the nature of the *purchaser* that determines the nature of the transaction." *Id.* (emphasis added). Purchasers that do so as part of their regular course of

786618_1

business are not entitled to the protections afforded by the DCCPPA because those purchases do not constitute consumer transactions. *See id. See also Mazanderan v. Independent Taxi Owners' Ass'n,* 700 F. Supp. 588, 591 (D.D.C. 1988) (taxicab driver not a consumer for purposes of DCCPPA because "his purchases of gasoline and supplies are made in connection with his role as an independent businessman," and "cannot be categorized as being for 'personal, household, or family use'").

As a labor union, it is readily apparent that AFSCME cannot be the ultimate consumer of the VIOXX that it supposedly purchased for its members. (Purchaser Master Compl. ¶ 34.) To the contrary, AFSCME repeatedly characterizes itself in the Complaint as suing in its capacity as a "third-party payor" for prescriptions made to, and used by, the individual consuming members of the union. Taking AFSCME at its word, therefore, AFSCME must necessarily be regularly engaged in the business of purchasing VIOXX. As such, AFSCME's alleged purchases fail to form the basis of a viable claim under the DCCPPA, and its claim must be dismissed.

In addition, AFSCME's claim also fails because its allegation that Merck's conduct led it to pay a "grossly inflated price" (Purchaser Master Compl. ¶ 12) is insufficient to state a claim under the DCCCPA. In *Williams v. Purdue Pharmaceutical Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003), the court analyzed nearly identical allegations regarding another prescription drug. The court rejected plaintiffs' fraud-on-the-market theory, holding that they could not "bring a pure CPPA action for alleged illegal trade practices when their alleged injury is a higher price for [the drug] because of defendants' promotional tactics." *Id.* AFCSME's claim should be dismissed for the same reason here.

    **3.**    **The Illinois Third-Party Payor Entities Fail To State A Claim Under Illinois Law.**

The Illinois third-party payor claims must be dismissed for the reasons discussed in

786618_1

Section III.A.3, above.  In addition, the Illinois third-party payors are not "consumers" under the Illinois Consumer Fraud Act.  As is apparent from its name, the Consumer Fraud Act is fundamentally concerned with protecting consumers.  *Web Commc'n Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 323 (N.D. Ill. 1995).  It therefore defines a consumer as "*any person who purchases or contracts for the purchase of merchandise . . . . for his use or that of a member of his household.*"  815 Ill. Comp. Stat. Ann. 505/1(e) (emphasis added).  Named plaintiffs Midwest Operating Engineers Health and Welfare Fund and Painters District Council No. 30 Health and Welfare Fund are *funds* that allegedly paid for VIOXX for *others*' use.  (*See* Purchaser Master Compl. ¶¶ 31, 38.)  Neither purchased the product for its own use, and both plaintiffs therefore fall outside the statute's ambit.  For this additional reason, plaintiffs fail to state a claim for consumer fraud.

> **4.  United Senior Action Cannot State A Claim Under Indiana's Consumer Protection Act.**

The claim by Indiana named third-party payor plaintiff United Senior Action of Indiana, Inc. ("United Senior Action") must be dismissed for the reasons discussed in Section III.A.4, above.  In addition, United Senior Action is not entitled to the protection of Indiana's Consumer Protection Act, Ind. Code §§ 24-5-0.5-1 *et seq.*, because it has not engaged in a "consumer transaction" within the meaning of the statute.  *See* Ind. Code § 24-5-0.5-2(a)(1).  Section 2(a)(1) defines "consumer transaction" as:

> *a sale*, lease, assignment, award by chance, or other disposition of
> an item of personal property, real property, a service, or an
> intangible, except securities and policies or contracts of insurance
> issued by corporations authorized to transact an insurance business
> under the laws of the state of Indiana, with or without an extension
> of credit, *to a person for purposes that are primarily personal,*
> *familial, charitable, agricultural, or household,* or a solicitation
> to supply any of these things.

786618_1

*Id.* (emphasis added); *see also Classic Car Centre, Inc. v. Haire Mach. Corp.*, 580 N.E.2d 722, 723-24 (Ind. Ct. App. 1991).[20]  United Senior Action does not even allege that it reimbursed its members for purchases of VIOXX, but rather that its "members purchased Vioxx." (Purchaser Master Compl. ¶ 36.)  Accordingly, it did not engage in a sale, lease, assignment, award by chance, or other disposition of an item.[21]  Simply put, United Senior Action undertook no conduct that falls within the terms of the statute.  Its Indiana Consumer Protection Act claim must therefore be dismissed for this reason as well.

### 5. The Third-Party Payor Claims Fail Under The Massachusetts Consumer Protection Statute.

The Massachusetts third-party payors' claims must be dismissed on all of the grounds discussed in Section III.A.6, above.[22]

### 6. Michigan Third-Party Payors Cannot State A Claim Under Michigan Law.

The Michigan third-party payors' claims must be dismissed on all of the grounds discussed in Section III.A.7, above.

### 7. The New York Third-Party Payors Cannot State A Claim Under the New York Deceptive Acts And Practices Act.

The consumer fraud claims of the three New York third-party payor plaintiffs – New York StateWide Senior Action Council,[23] Suffolk County, and Teamsters Local 237 Welfare

---

[20]     *Classic Car Centre* was decided before the statute was amended to replace the term "individual" with "person."  While the statute was broadened to allow a corporate entity to bring an action when acting a consumer, the actionable transactions must still be for the payor's own consumer purposes.

[21]     Because United Senior Action does not allege that it paid for VIOXX but that its members did so, it appears that it is not asserting this claim in its own right, but is attempting to interpose a claim on behalf of its members.  However, as explained in Section VI below, plaintiff has no standing to do so.

[22]     Health Care For All, a Massachusetts plaintiff, does not allege that it paid for VIOXX but that its members did so.  Accordingly, it appears that it is not asserting this claim in its own right, but is attempting to interpose a claim on behalf of its members.  However, as explained in Section VI below, Health Care For All has no standing to do so.

786618_1

Fund – must be dismissed because they have failed to allege that an actual injury occurred or that Merck caused any injury they may have sustained.  To state a claim under the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*, a plaintiff must allege:  (1) actual damages and (2) causation.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (plaintiff "must show that the defendant engaged in a material deceptive act or practice that caused actual" harm); *Canario v. Gunn*, 300 A.D.2d 332, 333 (N.Y. App. Div. 2002) (under General Business Law §§ 349 and 350, plaintiffs must "plead and prove that the deceptive act caused actual injury").

Plaintiffs fail to meet their pleading burden for several reasons.  First, only persons who have been "injured" by a violation of the Act may bring a claim.  N.Y. Gen. Bus. Law § 349(h); *Moses v. Citicorp Mortgage Inc.*, 982 F. Supp. 897, 902-03 (E.D.N.Y. 1997); *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 604 (N.Y. App. Div. 1998); *Briehl*, 172 F.3d at 628-29 (affirming dismissal for failure to allege manifestation of alleged defect in product).  Section II, *supra*, amply demonstrates that these plaintiffs have alleged no cognizable injury and thus cannot state a claim under the Act.

Second, the New York third-party payor plaintiffs also fail to state claims because they have not properly pled causation under New York's application of the learned intermediary doctrine.  *Martin v. Hacker*, 628 N.E.2d 1308, 1311 (N.Y. 1993).  Warnings by prescription drug companies such as Merck are intended for physicians, whose duty it is to weigh the risks and benefits and supervise a drug's effects.  *Id.*  The physician acts as a learned intermediary between the company and the patient.  As such, the drug manufacturer's duty to warn runs to the

---

[23]     Like the other interest group plaintiffs, New York StateWide Senior Action Council does not allege that it paid for VIOXX, but rather that its members did so. Accordingly, it appears that it is not asserting this claim in its own right, but is attempting to interpose a claim on behalf of its members. However, as explained in Section VI below, plaintiff lacks standing to do so.

786618_1

prescribing physician, not the patient. *Id.* As discussed above, however, the Complaint contains no allegations whatsoever about the physicians who prescribed the VIOXX that the New York plaintiffs allegedly paid for and no allegation that the physicians would not have prescribed VIOXX in the absence of Merck's allegedly deceptive statements. Their claims must be dismissed on this ground as well.

**8.     The UFCW Local 1776 Cannot State A Claim Under The Pennsylvania Unfair Trade Practices And Consumer Protection Law.**

Pennsylvania named plaintiff UFCW Local 1776 and Participating Employees Health and Welfare Fund ("UFCW Fund") cannot state a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.* (the "UTPCPL"). Claimants under the UTPCPL must demonstrate some "ascertainable loss of money or property." *See* 73 Pa. Stat. § 201-9.2(a). As demonstrated in Section II above, the UFCW Fund has not suffered any injury, and its claim must therefore be dismissed.

In addition, because the UFCW Fund grounds its claim on fraudulent concealment, it also fails to state a claim because it does not allege a duty to disclose. The UTPCPL requires proof of all the elements of common law fraud, including a duty to disclose. 73 Pa. Stat. § 201-2(4)(xxi); *Prime Meats, Inc. v. Yochim*, 619 A.2d 769, 773-74 (Pa. Super. Ct. 1993). *See also Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992) ("Mere silence in the absence of a duty to speak, however, cannot suffice to prove fraudulent concealment."). Under Pennsylvania law, a duty to disclose arises only from "a fiduciary or similar relationship of trust and confidence between the parties," *Gibbs v. Ernst*, 647 A.2d 882, 893 (Pa. 1994) (internal quotations omitted), or a specific inquiry regarding the material fact at issue, *South Bend Woolen Co. v. Jacob Reed's Sons, Inc.*, 116 A. 805, 805 (Pa. 1922). There is no duty to disclose arising from a mere arm's length sale of goods. *See Gibbs*, 647 A.2d at 893; *Taylor v. Wachtler*, 825 F. Supp. 95, 104

786618_1

(E.D. Pa. 1993) (the buyer and seller of jewelry are not in a fiduciary relationship giving rise to a duty to disclose). Here, plaintiff does not (and cannot) allege that it had a fiduciary relationship with Merck. Plaintiff's UTPCPL claim must be dismissed on this ground as well.

Plaintiff's claim also fails under the UTPCPL because it has failed to allege reliance. *Prime Meats, Inc.*, 619 A.2d at 774. Moreover, to the extent it is asserting a "fraud-on-the-market" theory as a substitute for individual reliance, that effort is off-base, because Pennsylvania has rejected this theory of liability in the context of the UTPCPL. *See Eisen v. Independence Blue Cross*, 2002 WL 1803721, at *13 (Pa. Ct. Com. Pl. July 26, 2002) (fraud on the market is "inapposite" in UTPCPL case); *Rosenstein v. CPC Int'l, Inc.*, Civ. A. No. 90-4970 1991 WL 1783, at *4-5 (E.D. Pa. Jan. 8, 1991) (denying class certification and refusing to extend fraud-on-the-market theory to consumer context; presumptions of reliance "cannot be made with respect to 'non-perfect' markets, such as the consumer market").

Finally, UFCW Fund's claims fail because it has failed to plead causation under Pennsylvania's application of the learned intermediary doctrine. The learned intermediary doctrine, as recognized in Pennsylvania, provides that a drug manufacturer's duty to warn runs to the physician – not the consumer. *Taurino v. Ellen*, 579 A.2d 925, 927 (Pa. Super. Ct. 1990) ("manufacturer of a prescription drug must direct warnings to the prescribing physician, but not to the patient"); *see also Heindel*, 2004 U.S. Dist. LEXIS 12232, at *55-56 (applying Pennsylvania law) (holding that plaintiffs' consumer fraud claims were barred due to, *inter alia*, the learned intermediary doctrine). The UFCW Fund has made no allegation whatsoever about the physicians who prescribed the VIOXX that it allegedly paid for and no allegation that the physicians would not have prescribed VIOXX in the absence of Merck's allegedly deceptive statements. Thus, the UFCW has not properly pleaded causation under Pennsylvania law, and its

786618_1

claims must be dismissed on this ground as well.

> ### 9. The Third-Party Payor Claims Would All Fail Under New Jersey Law.

Finally, even if New Jersey law did apply to the third-party payors' claims, they could not state a claim for numerous reasons set forth in Section III.A.10, above. In addition, their claims would fail because they are not consumers within the meaning of the NJCFA. The NJCFA "is intended to protect consumers 'by eliminating sharp practices and dealings in the marketing of merchandise and real estate.'" *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 550 (N.J. 1997) (quoting *Channel Cos. v. Britton*, 400 A.2d 1221, 1222 (N.J. Super Ct. App. Div. 1979)). The entire thrust of the NJCFA is "pointed to products and services sold to consumers in the popular sense." *Neveroski v. Blair*, 358 A.2d 473, 480 (N.J. Super. Ct. App. Div. 1976). Accordingly, a plaintiff suing under the NJCFA must be a "consumer" (as that term has been interpreted by the courts) in order to maintain suit. *See City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990); *Arc Networks, Inc. v. Gold Phone Card Co.*, 756 A.2d 636, 638 (N.J. Super. Ct. Law Div. 2000).

To be a "consumer" under the NJCFA, a plaintiff must be "one who uses (economic) goods, and so diminishes or destroys their utilities." *City Check Cashing*, 582 A.2d at 811 (quoting *Hundred E. Credit Corp. v. Eric Schuster*, 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986)). In *City Check Cashing*, a check cashing service brought an action against a bank based upon the bank's freezing of an account and alleged breach of an oral agreement. *Id.* at 810. The trial court denied the motion to file a second amended complaint charging violation of the NJCFA, and held that with regard to the transactions at issue City Check was not a "consumer" protected by the NJCFA. *Id.* at 811. The Appellate Division upheld the trial court's ruling because the "plaintiff essentially was buying cash from defendant at wholesale to sell to its

786618_1

check-cashing customers at retail. Plaintiff did not diminish or destroy the utility of the cash and therefore did not consume it." *Id.*

Similarly, in *Arc Networks*, a provider of computer and bulk telephone switching services brought an action against the distributor of prepaid telephone cards for payment. 756 A.2d at 637. The distributor counterclaimed under the NJCFA, arguing that its situation "[was] distinguishable from that of the plaintiff in *City Check Cashing* because it 'consumed' [the provider's] services by supplying [phone] cards to its own employees for their use." *Id.* at 639. The court rejected the distributor's argument, holding that the NJCFA is "intended to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Id.* at 637-38 (citations omitted). The fact that the distributor's employees may have used some small amount of the cards at issue did not make the distributor a "consumer" within the scope of the NJCFA. *Id.* at 639.

In this case, each third-party payor plaintiff is not a "consumer" within the meaning of the NJCFA because it is not "one who uses . . . goods, and so diminishes or destroys their utilities." *City Check Cashing*, 582 A.2d at 811 (citation omitted). The third-party payor plaintiffs, which repeatedly characterize themselves in the Complaint as suing in their capacity as a "third-party payors" for prescriptions made to, and used by, individual consumers, are no closer to a "consumer" than the allegedly aggrieved parties in *City Check Cashing* and *Arc Networks*. Nowhere in the Complaint do the third-party payors allege (nor could they) that they directly "used" or "diminished the value of" VIOXX.

Although Judge Higbee in the *Engineers* case found that third-party payors could bring claims under the NJCFA, *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, No. ATL-L-3015MT-03, slip op. (N.J. Super. Ct. Law Div. July 8, 2004) (attached

786618_1

as Ex. 4), another New Jersey court reached the opposite conclusion in a separate Merck action. In *Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc.*, No. MID-L-857-02, slip op. (N.J. Super. Ct. Law Div. Feb. 14, 2003) (attached as Ex. 5), a different trial court dismissed plaintiff third-party payors' attempt to bring an NJCFA claim against Merck under identical circumstances. In language equally applicable here, that court noted that "[s]omeone who buys for the use of another does not qualify as a 'consumer.' As a result, Plaintiffs are not 'consumer[s]' within the meaning of the [NJCFA] and cannot raise a claim pursuant to the Act." *Id.* at 14. Like the plaintiffs in *Plumbers*, the third-party payors here are not consumers within the meaning of the NJCFA. Accordingly, if New Jersey law applied to all of the third-party payors' claims, they would have to be dismissed on this ground as well.

## IV.   PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED WARRANTIES MUST BE DISMISSED (FOURTH CLAIM FOR RELIEF).

In their Fourth Claim for Relief, plaintiffs contend that Merck "impliedly warranted that Vioxx was of merchantable quality and fit for such use." (Purchaser Master Compl. ¶ 269.) Plaintiffs allege that Merck breached the implied warranties because VIOXX "was not fit for its intended use" insofar as it allegedly "causes increase risk of serious cardiovascular and cerebrovascular adverse events, including heart attacks, strokes and other serious and harmful adverse health effects." (*Id.* ¶ 272.) Plaintiffs then proceed to recite the familiar litany of state statutes governing implied warranties, along with a conclusory statement that Merck violated each statute. (*Id.* ¶¶ 273-323.) Plaintiffs have failed to adequately allege a claim for breach of any implied warranty. Although the Uniform Commercial Code is "not uniform," *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (citation omitted), there are several features common to all of the relevant states statues that mandate dismissal of these claims.

786618_1

**A.      Plaintiffs Cannot State A Claim For Breach Of The Warranty Of Fitness For A Particular Purpose.**

First, plaintiffs seem to be attempting to plead a breach of both (1) the implied warranty of merchantability and (2) the implied warranty of fitness for a particular purpose. However, the warranty of fitness for a particular purpose only applies (as its name suggests) if there is some *particular* use – *other than a product's usual use* – for which the buyer intends to use the product. 1 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 9-10 (4th ed. 1995) (emphasis added). *See also, e.g., Rutledge v. Arrow Aluminum Indus., Inc.,* 733 So. 2d 412, 415 (Ala. Civ. App. 1998) (the implied warranty of fitness arises "where the seller has reason to know of a particular purpose for which a good is required"); *Doug Connor, Inc. v. Proto-Grind, Inc.,* 761 So. 2d 426, 427-28 (Fla. Dist. Ct. App. 2000) (implied warranty of fitness arises where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required"); *Frank v. Edward Hines Lumber Co.,* 761 N.E.2d 1257, 1267 (Ill. App. Ct. 2001) (implied warranty of fitness for a particular purpose is inferred where "the seller has reason to know the buyer needs the goods for a particular purpose and knows the buyer is relying on the seller's skill in selecting the goods"); *Leavitt v. Monaco Coach Corp.,* 616 N.W.2d 175, 179 (Mich. Ct. App. 2000) ("to establish a valid warranty of fitness for a particular purpose, 'the seller must know, at the time of sale, the particular purpose for which the goods are required and also that the buyer is relying on the seller to select or furnish suitable goods.'") (quoting *Ambassador Steel Co. v. Ewald Steel Co.,* 190 N.W.2d 275 (Mich. Ct. App. 1971)); *McCall v. State Dep't of Natural Res. Div. of Forestry,* 821 N.E.2d 924, 927 (Ind. Ct. App. 2005). Indeed, a prerequisite to asserting such a claim is that the seller must have reason to know of that buyer's particular purpose in choosing to purchase the seller's product. *Id.* Plaintiffs have seemingly attempted to plead the requirement that Merck had reason to know of a particular use (*see*

60

786618_1

Purchaser Master Compl. ¶ 269), but have not pleaded any special or particular use for which plaintiffs used VIOXX.  In short, plaintiffs have not alleged that VIOXX was used for anything but its normal, intended use – pain relief.  (See Purchaser Master Compl. ¶ 1 ("Vioxx was widely prescribed to relieve pain and inflammation for osteoarthritis, rheumatoid arthritis in adults and children, and menstrual pain and migraine headaches in adults.").)  For this reason alone, plaintiffs' claims for breach of the warranty of fitness for a particular purpose must be dismissed.

**B.      Plaintiffs Cannot State A Claim For Breach Of The Implied Warranty Of Merchantability.**

To state a claim for breach of the implied warranty of merchantability, plaintiffs must allege: "(1) a merchant sold goods; (2) which were not 'merchantable' at the time of sale; (3) *injury and damages* to the plaintiff or its property; (4) which were caused proximately and in fact by the defective nature of the goods; and (5) notice to the seller of injury."  White & Summers, *supra*, at 510-11 (emphasis added).  Plaintiffs fail to plead these requirements for several reasons.

**1.      Plaintiffs Fail To Allege That They Did Not Receive The Benefit Of Their Bargain.**

First, as discussed in Section II, *supra*, plaintiffs fail to state a claim for breach of implied warranty of merchantability because they have not alleged any manifestation of the alleged defect in VIOXX.  Numerous courts have recognized that a plaintiff cannot allege a breach of warranty based on a speculative injury. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296-98 (4th Cir. 1989) (claim for breach of implied warrant of merchantability dismissed when claim was for diminished resale value, not failure of the product); *Briehl*, 172 F.3d at 628 (dismissing implied warranty claim because no cause of action lies where product performs satisfactorily and the alleged defect never manifested itself); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 803 (E.D. La. 1998) (plaintiffs' failure to allege that the product functioned improperly under

61

normal use barred recovery under theory of implied warranty of merchantability). For this reason alone, the implied warranty claims fail.

    **2.**    **The Implied Warranty Claims Must Be Dismissed As To Nearly All Plaintiffs For The Additional Reason That They Fail to Allege Timely Notice Of Breach As Required By U.C.C. § 2-607.**

The breach of implied warranty of merchantability claims must be dismissed for yet another reason. Just as with an express warranty claim, notice of breach is an essential element of a claim for breach of the implied warranty of merchantability. *See* White & Summers, *supra,* at 511; U.C.C. § 2-607; *Anthony v. Country Life Mfg.*, L.L.C., No. 02 C 1601, 2002 WL 31269621, at *4 (N.D. Ill. Oct. 9, 2002) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1997)) (holding that failure to provide notice acts as bar to implied warranty claims); *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283 (M.D. Ala. 2001) ("Under Alabama law, notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint."). This is so in nearly all of the relevant states. *See* Ala. Code § 7-2-607 ("buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be *barred from any remedy*") (emphasis added); Ariz. Rev. Stat. § 47-2607 (same); D.C. Code § 28:2-607 (same); Fla. Stat. § 672.607 (same); 810 Ill. Comp. Stat. 5/2-607 (same); Ind. Code § 26-1-2-607 (same); Mass. Gen. Laws ch. 106, § 2-607 (same); Mich. Comp. Laws § 440.2607 (same); N.Y. U.C.C. § 2-607 (same); 13 Pa. Cons. Stat. § 2607 (same); Vt. Stat. Ann. tit. 9A, § 2-607 (same); Wash. Rev. Code § 62A.2-607 (same); *see also Hubbard v. Gen. Motors Corp.*, 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *13-14 (S.D.N.Y. May 22, 1996) (New York law) ("Plaintiff's Complaint lacks any allegation that plaintiff notified GM, or the dealer from which he purchased the vehicle, of the claimed defect. Accordingly, the Court grants defendant's motion to dismiss plaintiff's claims for breach of express and implied warranty for failure to allege notice."); *Am. Bumper &*

786618_1

*Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 257 (Mich. Ct. App. 2002) (affirming summary disposition of plaintiff's claim for breach of express and implied warranty because "plaintiff failed to give adequate notice . . . for the alleged breach, thus barring plaintiff from pursuing any remedy"); *Atl. Pipe Corp. v. R. J. Longo Constr. Co.*, 652 N.E.2d 279, 282 (Mass. App. Ct. 1993) (holding plaintiff was "barred from recovery for any alleged breach of [express and implied] warranty" due to lack of timely notice to the defendant of the alleged defect); *Cayuga Press of Ithaca, Inc. v. Lithografiks, Inc.*, 211 A.D.2d 908, 910 (N.Y. App. Div. 1995) (concluding that "plaintiff's failure to timely advise defendants of the alleged nonconformity barred" their claim for breach of warranty).

Moreover, courts have consistently held that the notice requirement is a ***substantive element*** of a breach-of-warranty claim. *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F. Supp. 911, 918 (N.D. Ill. 1985) (Illinois law) ("[N]otice to the seller of a breach of warranty is a substantive requirement of a later breach of warranty action."). Put another way, the notice requirement is a condition precedent that must be satisfied in order for a claim to exist. *See McClure Oil Corp. v. Murray Equip., Inc.*, 515 N.E.2d 546, 554 (Ind. Ct. App. 1987) ("[t]imely notice of a breach of warranty is a substantive condition precedent to recovery" for an asserted breach of warranty). Accordingly, bringing a lawsuit does not satisfy the notice requirement. *See Connick*, 675 N.E.2d at 591 ("section 2-607 notice requirement was not fulfilled by filing a breach of warranty complaint"); *Lynx, Inc. v. Ordnance Prods., Inc.*, 327 A.2d 502, 514 (Md. 1974) ("the institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated [by the UCC]"); *Parrillo v. Giroux Co.*, 426 A.2d 1313, 1317 (R.I. 1981) (claim presented by attorney insufficient under the Rhode Island UCC). Because plaintiffs have not alleged that they provided Merck with timely notice of

786618_1

breach, they cannot state a claim.

### 3. Many Of The Implied Warranty Of Merchantability Claims Are Barred Because The Plaintiffs Lack Vertical Privity With Merck.

Vertical privity refers to the links in the chain of distribution between manufacturer, distributor, and ultimately, consumer. In order to recover on a breach of warranty theory against a manufacturer, some states require a consumer to be in privity – to have a direct contractual nexus – with that manufacturer. Clark & Smith, THE LAW OF PRODUCT WARRANTIES, ¶ 10.01[1], at 10-3 (1984). Privity requirements vary from state to state. Indeed, in *Osborne v. Subaru of America, Inc.*, 198 Cal. App. 3d 646 (Ct. App. 1988), the court found that these state-by-state variations related to privity precluded a class action based upon an implied warranty theory. There is no variation, however, on the effect of the privity requirement if applicable – it acts as a complete bar to an implied warranty claim where a buyer did not purchase the product directly from the defendant. Because Alabama, Arizona, Florida, Illinois, and New York have privity requirements, and because plaintiffs have not alleged that they purchased VIOXX directly from Merck, application of the privity requirement means that plaintiffs' claims in those states must be dismissed for this reason as well.

### a. Alabama (Plaintiff Cavalier Homes, Inc.)

It is well-settled in Alabama that there is no right of action on an implied warranty theory against a manufacture for property damage or for direct economic loss without privity of contract. *Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1087 (Ala. 2003); *Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 227-28 (Ala. 1996); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990).

b.     **Arizona (Plaintiff Edward Wright)**

Vertical privity is required in warranty actions in Arizona involving alleged economic loss. *Flory v. Silvercrest Indus. Inc.*, 633 P.2d 383, 386-88 (Ariz. 1981) (plaintiff unable to recover for damages for economic loss against manufacturer for breach of implied and express warranties in the absence of privity).

c.     **Florida (Plaintiff Clara Fontanilles)**

Privity is required to state a claim for breach of implied warranty of merchantability in Florida. *See Airport Rent-A-Car, Inc. v. Prevost Car, Inc.*, 788 F. Supp. 1203, 1206 (S.D. Fla. 1992) ("[p]rivity of contract between plaintiff and defendant is an essential element of the breach of implied warranty cause of action" in a claim for economic loss); *Am. Universal Ins. Group v. Gen. Motors Corp.*, 578 So. 2d 451, 454-55 (Fla. Dist. Ct. App. 1991); *see also T.W.M. v. Am. Med. Sys. Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) ("to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant.").

d.     **Illinois (Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin Williams, Sharon Murphy, Midwest Operating Engineers, and Painters District Council No. 30 Health and Welfare Fund)**

Under Illinois law, if a purchaser seeks only economic damages, that purchaser can bring a claim for breach of an implied warranty only against the immediate seller of the goods. *See Tokar v. Crestwood Imports, Inc.*, 532 N.E.2d 382, 385 (Ill. App. Ct. 1998) (affirming dismissal of implied warranty claim because there was no vertical privity between automobile purchaser and manufacturer); *see also Walsh*, 588 F. Supp. at 1529.

e.     **New York (Plaintiffs New York StateWide Senior Action Council, Suffolk County, And Teamsters Local 237 Welfare Fund)**

New York requires vertical privity for implied warranty claims such as this seeking economic damages. *See, e.g., Am. Dredging Co. v. Plaza Petroleum, Inc.*, 799 F. Supp. 1335,

786618_1

1341 (E.D.N.Y. 1992), vacated in part on other grounds, 845 F. Supp. 91 (E.D.N.Y. 1993);

*Dragon v. Monahan Ford Corp.*, 538 N.Y.S.2d 142, 143 (N.Y. Civ. Ct. 1989) (dismissing a

consumer's implied warranty claim against an automobile manufacture on the grounds that the

"implied warranties of merchantability and fitness for use . . . do not extend to a remote

purchaser, not in privity with the manufacturer").

### 4. The Warranty Claims Of Third-Party Payors Must Also Be Dismissed Because Third-Party Payors Are Not "Purchasers" Within The Meaning Of The UCC.

The warranty claims of the third-party payors are barred for the further reason that these

claimants are not purchasers of VIOXX, and thus cannot avail themselves of UCC warranty

claims. It is axiomatic that the UCC's provisions apply only to the sale of goods. U.C.C. § 2-

102 ("this Article applies to transactions in goods"). Likewise, a "sale" is defined by the UCC as

"the passing of title from the seller to the buyer for a price." U.C.C. § 2-106. Moreover, "title

passes to the buyer at the time and place at which the seller completes his performance with

reference to the *physical delivery of the goods*." U.C.C. § 2-401(2) (emphasis added). In the

instant case, the third-party payors do not allege that they took possession of VIOXX. Indeed,

the third-party payors assert claims merely seeking reimbursement for payments made by

consumers for VIOXX. Having never taken title to the VIOXX they paid for, the third-party

payors have not engaged in a sale recognized by the UCC and thus do not have a remedy under

the UCC. Put simply, because Merck did not sell VIOXX to the third-party payors, there can be

no warranty running from Merck to these plaintiffs.

### 5. State-Specific Warranty Law Bars The Claims Of Plaintiffs from Certain States.

#### a. Plaintiff UCFW Cannot State A Claim Against Merck Under Pennsylvania Warranty Law.

Pennsylvania named plaintiff UFCW Fund cannot state a claim for breach of implied

66

786618_1

warranty under prevailing Pennsylvania law because courts in Pennsylvania have held that there is no cause of action for breach of implied warranty in cases against drug manufacturers involving prescription drugs. *Luke v. Am. Home Prods. Corp.*, No. 1998-C-01977, 1998 WL 1781624, at *6 (Pa. Ct. Com. Pl. Nov. 18, 1998) ("there is no cause of action for a breach of implied warranty in prescription drug cases involving drug manufacturers"); *Albertson v. Wyeth Inc.*, 63 Pa. D. & C.4th 514, 536 n.6 (Pa. Ct. Com. Pl. 2003) ("prescription drugs are not covered by a warranty of fitness for ordinary purpose"). Pennsylvania courts have concluded that the public utility of a particular prescription drug may outweigh any danger the drug may pose to any one individual; indeed, some drugs "may never be able to be manufactured so that [they are] safe for every user." *Luke*, 1998 WL 1781624, at *6. Thus, the very nature of prescription drugs "preclude[s] the imposition of a warranty of fitness for ordinary purposes" in cases against drug manufacturers for alleged defects in prescription drugs. *Id.* Accordingly, plaintiff UFCW Fund cannot state a claim for breach of implied warranty against Merck.

### b. Michigan Plaintiffs Cannot State A Warranty Claim Against Merck Under Michigan Law.

The three Michigan named plaintiffs fail to state a viable claim for breach of implied warranty for the additional reason that Michigan law bars all product liability actions involving FDA-approved drugs. *See* Mich. Comp. Law § 600.2946(5); section III.A.3, *supra*.

### 6. Even If New Jersey Law Applied to Plaintiffs' Warranty Claims, Those Claims Would Still Fail.

Even if the Court were to erroneously apply New Jersey law to all the claimants in the Master Complaint, plaintiffs' warranty claims would fail. First, as noted above, to the extent plaintiffs assert a claim for breach of the implied warranty of fitness for a particular purpose, they have failed to plead that they purchased VIOXX for any purpose other than its normal, intended use – pain relief -- and, thus, they have failed to state a claim under New Jersey law.

67

786618_1

*See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 614-15 (D.N.J. 2002) (dismissing warranty case: plaintiff "presented no evidence that the Mexican pantyhose were intended for any 'special' use" other than "the ordinary purpose for which pantyhose are used, namely to be worn by women in the course of their daily routines").

Second, to the extent plaintiffs assert claims for breach of the implied warranty of merchantability, those claims should also be dismissed under prevailing New Jersey law. To state a claim for breach of the implied warranty of merchantability in New Jersey, plaintiff must allege "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, and (3) *injury and damages* to the plaintiff or his property (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to seller of injury." *Herbstman v. Eastman Kodak Co.*, 342 A.2d 181, 185 (N.J. 1975) (emphasis added) (quoting White & Summers, *supra*). In the instant case, plaintiffs fail to allege that VIOXX injured them or that VIOXX failed to reduce their pain. In New Jersey, a plaintiff cannot state a claim for breach of warranty based on speculative injury. *See Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986) (dismissing claim for breach of implied warranty in a design defect case where plaintiff had not alleged the product manifested the alleged defect); *see also Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998) ("unless a product actually manifests the alleged defect, no cause of action for breach of express or implied warranty or fraud is actionable").

Moreover, in New Jersey, notice of breach is an essential element of any claim for breach of express or implied warranty. *See* N.J. Stat. § 12A:2-607(3)(a) ("buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be *barred from any remedy*") (emphasis added). Because plaintiffs have failed to allege they provided Merck with timely notice, they cannot state a claim for breach of implied

68

warranty under New Jersey law.  Accordingly, plaintiffs' claims for breach of implied warranty

would be insufficient under New Jersey law as well.

**V.      PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED.**

In addition to their claims for consumer fraud and breach of implied warranty, plaintiffs

seek equitable relief in the form of unjust enrichment.  (Purchaser Master Compl. ¶¶ 263-67.)

That claim fails as well because plaintiffs cannot allege that Merck was unjustly enriched absent

an injury to them from paying for, or ingesting, VIOXX, and because plaintiffs have not alleged

that they have no adequate remedy at law.

First, because they have alleged no injury, plaintiffs cannot demonstrate that any

enrichment is "unjust."  As explained elsewhere, there is no allegation that VIOXX caused any

harm to any plaintiff, or to any persons whose VIOXX was paid for by the third-party payors.

Plaintiffs received exactly what they thought they were purchasing – a pain-relieving drug that

provided pain relief.  Any enrichment of Merck from the sale of this product therefore cannot be

"unjust."  To the contrary, as one court found, "to succeed on . . . the unjust enrichment . . .

claims, Plaintiffs would have to demonstrate that they were either injured by [a prescription

drug], or that [it] did not provide them any health benefits." *In re Baycol Prods. Liab. Litig.*, 218

F.R.D. 197, 213-14 (D. Minn. 2003).  *See also Lewis v. Bayer AG*, 66 Pa. D. & C.4th 470, 504

(Pa. Ct. Com. Pl. 2004) ("If an individual consumed an effective cholesterol-reducing medication

which was "unsafe" because of inadequate warnings or because of increased exposure to serious

injury and as chance and fate provided in fact suffers no injury, no equitable claim for unjust

enrichment can lie."); *Albertson*, 63 Pa. D. & C.4th at 536 (dismissing unjust enrichment claim

because "plaintiffs did receive the product they sought, a hormone replacement therapy.

Plaintiffs merely allege that Prempro was not safe, and that Wyeth knew it was unsafe but

promoted the drug anyway.  These allegations are insufficient to state a claim for unjust

786618_1

enrichment.").

Here, plaintiffs' allegations do not support a claim that an injustice would result if Merck retained whatever unspecified benefits one might speculate they conferred on Merck. Plaintiffs do not allege that VIOXX failed to work effectively as a pain relief medication for them. Nor do they allege that they suffered any adverse side effects as a result of taking VIOXX. There can be no injustice in Merck's retaining any payments plaintiffs indirectly made to it for VIOXX, absent any allegations that plaintiffs received a drug that was ineffective or that caused them some injury. Even if one assumes, arguendo, that plaintiffs had been misled by Merck, they do not plead any facts establishing that they would have paid any less to Merck. This is particularly so for the actual users who were insured and merely paid a fixed co-payment. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

Second, plaintiffs bringing their suits under the laws of Arizona, Florida, Illinois, New Jersey, New York, Massachusetts, Pennsylvania and Washington have failed to allege another necessary element of their unjust enrichment claims.[24] "It is blackletter law that the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an

---

[24]    **Arizona:** *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995) (holding that the absence of a remedy at law is a necessary element of an unjust enrichment claim); **Florida:** *Nautica Int'l v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998) ("The theory of unjust enrichment is equitable in nature and is, therefore, not available when there is an adequate legal remedy.") (internal quotations omitted); **Illinois:** *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law."); **New Jersey:** *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) ("Unjust enrichment is not an independent theory of liability" and "Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law."); **New York:** *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 189 (E.D.N.Y. 2004) (dismissing claim of unjust enrichment under New York law because plaintiff had viable claims at law); **Massachusetts:** *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (a necessary element of an unjust enrichment cause of action is "the absence of a remedy provided by law"); **Pennsylvania:** *Dunn v. Bd. of Prop. Assessment, Appeals & Review*, 877 A.2d 504, 514 n.18 (Pa. Commw. Ct. 2005) (refusing claim for unjust enrichment where there was an adequate legal remedy); **Washington:** *Go2Net Inc. v. Freeyellow.com, Inc.*, 109 P.3d 875, 881 (Wash. Ct. App. 2005) ("Unjust enrichment is a remedy that prevents a party from retaining a benefit conferred on it in a situation where the party conferring the benefit has no adequate remedy at law."). Among the remaining relevant jurisdictions, some appear not to have squarely addressed this question, while others do not require that the plaintiff have no adequate remedy at law.

786618_1

adequate legal remedy." *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) (dismissing claims because lack of adequate remedy not specifically plead) (internal quotations omitted). Because unjust enrichment is an equitable remedy, those states' laws require plaintiffs to plead specifically that they have no remedy at law. Here, plaintiffs failed to plead this element. To the contrary, they affirmatively plead that they do have remedies under state consumer fraud statutes and breach of implied warranty. Accordingly, plaintiffs from these eight states have failed to state a claim for unjust enrichment on this ground as well.

## VI.   CLAIMS OF ASSOCIATION PLAINTIFFS MUST BE DISMISSED FOR LACK OF STANDING.

Several of the named plaintiffs in the Master Complaint appear to assert associational standing rather than individual standing. In other words, they assert no injury to themselves, but seek to pursue claims on behalf of their members.[25] However, under relevant Supreme Court precedent, these plaintiffs have no standing to pursue claims against Merck.

The doctrine of so-called "association standing" was first recognized in *Warth v. Seldin*, 422 U.S. 490, 515 (1975). In that case, the Supreme Court generally discussed the circumstances under which an association could seek redress on behalf of its members, concluding, among other things, that such representation would be appropriate only when individual participation by members would not be necessary. This requirement turns on the relief sought: "[i]f in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly

---

[25]   The following plaintiffs fail to assert that they, as organizations, paid for VIOXX, and presumably seek to assert claims on behalf of their members: New York StateWide Senior Action Council, United Senior Action of Indiana, Inc., and Health Care for All. In addition, AFCSME asserts that it "and its members" paid for VIOXX. To the extent AFSCME seeks to redress any injuries of its members, rather than its own injury (if any), it lacks standing as well.

recognized standing in associations to represent their members, the relief sought has been of this kind." *Id.* at 515.

In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), the Court further clarified *Warth*, and set forth a three-part test for determining associational standing. A plaintiff association may bring suit on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343. These cases "have been understood to preclude associational standing when an organization seeks damages on behalf of its members." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 554 (1996). *See also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."); *Telecomms. Research & Action Ctr. v. Allnet Commc'n Servs., Inc.*, 806 F.2d 1093, 1095 (D.C. Cir. 1986) ("[L]ower federal courts have consistently rejected association assertions of standing to seek monetary . . . relief on behalf of the organization's members.").

Here, there can be no doubt that participation by individual members of the organizations would be required in this lawsuit, and that these association plaintiffs therefore lack standing before this Court.[26] Plaintiffs' prayer for relief includes requests for damages only, and seeks none of the declaratory or injunctive relief that has previously supported associational standing.

---

[26]   Given the early stage of the proceedings, it is not yet known whether these plaintiffs can satisfy the first two prongs of *Hunt*, although the fact that they do not allege that they satisfy these prongs would justify dismissal on these bases as well. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003) (dismissing association plaintiffs in drug pricing case because they failed to allege the existence of "specific members" who would have had standing in their own right). Should their claims survive this motion to dismiss, Merck reserves its right to challenge plaintiffs' standing on other grounds once more information is available.

786618_1

(*See* Purchaser Master Compl., Prayer for Relief, ¶ C (seeking "award of actual, compensatory, punitive and/or exemplary damages in such amount to be determined at trial as provided by applicable law"; *id.* ¶ D (seeking "costs of suit, including reasonable attorneys' fees, and expenses as provided by law").)[27]   Accordingly, these plaintiffs have no standing to seek money damages against Merck on behalf of their members, and their claims should be dismissed.

## VII.   ALLEGATIONS RELEVANT TO THE UNREPRESENTED CLASSES SHOULD BE STRICKEN.

Plaintiffs' allegations with respect to certain proposed statewide classes should be stricken from the Complaint because they fail to assert a fundamental prerequisite for such a class:  a named plaintiff.  Where plaintiffs cannot meet the requirements for class action treatment under Fed. R. Civ. P. 23, courts may order such deficient class allegations stricken from the pleading at the earliest stages. *See., e.g., Palmer v. Combined Ins. Co. of Am.*, No. 02-C-1764, 2003 U.S. Dist. LEXIS 2534, at *5 (N.D. Ill. Feb. 24, 2003).  This is such a case. Without a named plaintiff, plaintiffs obviously cannot satisfy the requirements of Rule 23. *See Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.*, 175 F.R.D. 234, 236 (N.D. Miss. 1997) ("a headless class action may not be litigated").

In their Complaint, plaintiffs seek to represent a nationwide class of end-payors who "purchased and/or paid for" VIOXX between May 20, 1999 and September 20, 2004. (Purchaser Master Compl. ¶ 4.)  Alternatively, if their bid for nationwide class treatment is denied, they assert claims on behalf of purported classes in 45 states plus the District of Columbia.  (*See* Purchaser Master Compl. ¶ 5.)  However, plaintiffs have only identified named

---

[27]   The only reference to injunctive or declaratory relief in the Master Complaint is found in its very first sentence. (*See* Purchaser Master Compl. at 1 (plaintiffs "set forth in this [Complaint] claims for equitable, injunctive, and declaratory relief, and compensatory and punitive damages").)  Plainly, a passing reference in the introduction to 75-page complaint, without more, is insufficient to seek such relief. In addition, although plaintiffs assert an equitable claim for unjust enrichment, that claim for relief seeks the equivalent of money damages, and is not a form of "prospective relief."

786618_1

class representative plaintiffs from thirteen states, asserting instead, in a footnote, that "[s]hould the Court so require or direct, Plaintiffs are prepared to name proposed class representative Plaintiffs for every jurisdiction." (*Id.* ¶ 4, n.2.) Because there is no plaintiff, and hence no case or controversy as to those proposed classes, the allegations related to them must be stricken.

Plaintiffs' "file now, find a plaintiff later" tactic fails because it ignores the bedrock notion that a lawsuit can only proceed if it presents a live case or controversy. *See Flast v. Cohen*, 392 U.S. 83, 94-95 (1968). Nor does captioning a suit as a class action circumvent the case-or-controversy requirement. *See Sosna v. Iowa*, 419 U.S. 393, 402 (1975) (stating in dictum that "[t]here must . . . be a named plaintiff who has such a case or controversy at the time the complaint is filed"); *Swan v. Stoneman*, 635 F.2d 97, 102 (2d Cir. 1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy . . . at the time the complaint is filed.").[28] Rather, courts have recognized that if a class action does not include a plaintiff with a live controversy, the complaint must be dismissed. *Mathis v. Bess*, 692 F. Supp 248, 258 (S.D.N.Y. 1988) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified. Otherwise, the action should be dismissed.") (citation omitted). *See also* NEWBERG ON CLASS ACTIONS § 2:9 (4th ed. 2005).

That is precisely the case here. Plaintiffs assert economic loss claims on behalf of statewide classes in thirteen states where there is no named plaintiff to assert a cause of action. Accordingly, their allegations with regard to those states present no live case or controversy and should be stricken.

---

[28]     This "threshold requirement" ensures that the case will be vigorously prosecuted and is distinct from the requirement that the named representative be "adequate" under Rule 23. *Robinson v. Leahy*, 73 F.R.D. 109, 111 (N.D. Ill. 1977).

74

## **CONCLUSION**

For the foregoing reasons, Merck's motion to dismiss should be granted.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
One United Plaza
4041 Essen Lane, Suite 501
Baton Rouge, LA  70809
Phone: 225-490-8900
Fax:    225-490-8960

Defendants' Liaison Counsel

Counsel for Merck & Co., Inc.

786618_1

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED