UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

Motion in Limine No. 1

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING THE NUMBER OF HEART ATTACKS IN UNITED STATES OF AMERICA

COMES NOW, Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., deceased, by and through her undersigned counsel, and files this Motion in Limine, to exclude evidence regarding the number of heart attacks occurring in the United States of America.

Merck intends to introduce evidence that the number of heart attacks occurring in the United States did not increase while Vioxx was sold in the United States. That is, Merck will offer some form of proof comparing the number of heart attacks occurring in the United States prior to 1999 to the number of heart attacks occurring in the United States between 1999 and 2004 (the time period Vioxx was sold in the United States). Such information should be excluded for the following reasons: 1) the information is irrelevant; 2) the information is inadmissible hearsay, and 3) the prejudicial effect outweighs any potentially probative value.

A.   **The information is irrelevant.**

Statistical evidence suggesting that the number of heart attacks in the United States did not increase between 1999 and 2004 while Vioxx was sold in the United States should be excluded because it is irrelevant.[1] The defendant will offer unreliable statistics, reported from random sources, compiled into a comparative survey in an effort to prove an immaterial fact – the number of heart attacks occurring the in the United States. Besides being inadmissible, the introduction of such information will needlessly waste time and only confuses jurors. The offered evidence is irrelevant because the pre-1999 facts, circumstances, and conditions are neither similar to the instant facts nor the time period while Vioxx was sold in the United States (1999 - 2004).

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401   The Defendant's comparative is not indicative of Vioxx causing Mr. Dicky Irvin's heart attack nor a rise in the number of heart attacks across the nation. Essentially, Merck is attempting to prove the absence of evidence – an absence in the increased number of heart attacks between 1999 and 2004. In order for the evidence of the absence of other similar events to be relevant for any purpose, the defendant must show that during the period involved the conditions were substantially similar to those prevailing at the time of Mr. Irvin's death. Courts have routinely excluded such evidence because of the failure to establish that conditions at the time in question were substantially the same as at the time a plaintiff was injured. See generally, 10 A.L.R. 5th 371; See also, Chesapeake & O.R. Co.

---

[1] The key question underlying liability is: Did Vioxx cause Mr. Irvin's heart attack? The jury must examine the facts of the instant case to determine whether Vioxx caused the Plaintiff's heart attack.

v. Newman, 243 F.2d 804 (6th Cir. 1957) (The court excluded testimony regarding the absence of evidence relating to claims arising in the previous 32 years that the witness was employed by the defendant. The court said that such evidence can only relate to permanent, not temporary and changeable, conditions ....).

The issue is not whether the condition of Vioxx changed but rather the pre-1999 conditions versus the conditions while Vioxx was on the market. Besides being too speculative and remote to predict with any accuracy the conditions and medical/pharmaceutical environment were vastly different and have been ever changing. Merck cannot prove that the conditions involved in the pre-1999 data are substantially similar to the conditions while Vioxx was on the market. The reason being, the variables are uncontrolled, different and constantly changing. Medical research, scientist, doctors and others in the health care profession are constantly seeking innovative and new ways to prohibit, prevent and treat heat attacks. Reducing the number of heart attacks in the United States has been a major priority of the medical community for years. As a result of the efforts of those in the scientific, medical and health care community, each year heart attacks are prevented and treated. Between 1999 and 2004, while Vioxx was on the market, science and medicine no doubt improved and contributed to the successful prevention of heart attacks. Moreover, new drugs like statins, which decrease the likelihood of heart attacks, were introduced to the market. All of these factors working together over time create an ever changing environment and vastly different conditions in the cardiovascular field.

Thus, while many heart attacks were prevented for various and changing reasons, others were caused by various and changing reasons. Any evidence suggesting that the number of heart attacks did not increase while Vioxx was sold in the United States could only be admissible if the

variables were controlled. Only if the science, medicine, research and public awareness remained constant and no new pharmaceutical drugs were introduced to the market after Vioxx was approved for use could the information the defendant seeks to introduce even be potentially admissible.

In addition to the ever-changing and uncontrolled variables, the demographics involved in the comparative are dissimilar. Vioxx, although widely prescribed, was not widely used by an adequately equal, randomized, cross section of America. Instead, Vioxx was used by a disproportionately large number of older people suffering from Osteoarthritis (OA) and Rheumatoid Arthritis (RA). Traditionally, older members of the population report a higher incidence rate of heart attacks. That is to say, Vioxx was used by a disproportionately large demographic of people that already reported a higher incidence rate of heart attacks. Thus, the comparison is incongruent. Juxtaposing the entire number of heart attacks reported throughout the United States prior to 1999 with the number of heart attacks occurring after a pharmaceutical drug has been introduced and consumed by a smaller subsection of that population, under different conditions, in an ever-changing environment is too dissimilar to be probative. Such information is unreliable, speculative and confusing. Therefore, the information should be excluded.

### B. The information is unreliable.

Essentially the defendant is attempting to admit a comparative survey of the American population pre-1999 and post-1999. In order to admit such evidence the defendant must prove such data compilations: a) were subjected to generally accepted survey principals, were subjected to generally accepted principals of research, c) the results of such surveys and data compilations

are utilized in a statistically correct manner (the sampling technique must be validated), and d) the information is trustworthy.[2] Merely compiling unreliable statistics, reported from random sources into a comparative survey, besides being immaterial to the issues involved in the instance case, is defective and untrustworthy. Any offer of proof in the form of surveys, studies and/or data compilations should be subject to strict scrutiny because of the dangers involved in confusing, and/or misleading the jury with information that is unreliable, incomplete or imprecise as to what it purports to represent.

The defendant must prove the information being offered is trustworthy which requires a sufficient showing that a) the "universe" was properly defined, b) a representative sample of that universe was selected, c) sound sampling techniques and procedures were followed d) competent individuals were used to gather the data, d) those individuals gathering the data had no knowledge of litigation or the purpose for which the survey was conducted, e) the data gathered was accurately reported, f) the data was analyzed in accordance with accepted statistical principles, and g) objectivity of the entire process was assured. CJS Evidence § 222. Furthermore, and particularly important for purposes of this motion, the usefulness of such statistical evidence depends to a large extent on the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference drawn. Clearly, Defendant cannot account for all of the variables involved for each heart attack occurring throughout the United States before and after Vioxx was sold in the United States. Even if all of the variables could be identified, the defendant cannot account for all of the changes occurring constantly in the environment. This lack of accountability will inevitability lead to inaccuracies

---

[2]Trustworthy means not merely that it be honestly conducted, but that it be designed to yield an accurate assessment of the relevant opinion, belief, or attitude under investigation.

or variations in data or in formulae used to test such data; which in turn results in different, contradictory, or even misleading conclusions by experts. Id. This court must therefore exclude any immaterial evidence; particularly when the proffered evidence lacks sufficient indicia of reliability and significantly increases the likelihood of confusing and/or misleading the jurors.

### C. The prejudicial effect outweighs any potentially probative value

Assuming that the defendant constructs a viable argument that the information offered is relevant, the information should be excluded because any potentially probative value is substantially outweighed by all of the Rule 403 concerns. (i.e. the danger of unfair prejudice, confusion of the issues, misleading the jury, etc.) The district court must make the admissibility determination on an individual basis, considering the evidence's probative value and the danger of unfair prejudice. See Barfield v. Orange County, 911 F.2d 644, 650 (11th Cir.1990), cert. denied, 500 U.S. 954, 111 S. Ct. 2263, 114 L.Ed.2d 715 (1991). The court has wide discretion in excluding evidence which is relevant but which may tend to confuse issues or inflame jury. U. S. v. Ravich, C.A.2 (N.Y.) 1970, 421 F.2d 1196, certiorari denied 91 S.Ct. 69, 400 U.S. 834, 27 L.Ed.2d 66. The number of heart attacks arbitrarily reported to various entities and amassed into random groups of data is immaterial to the claims raised by the Plaintiff. The real issue is: Did Vioxx cause Mr. Irvin's heart attack? Unreliable statistics, from random sources, compiled into a comparative survey do not help prove or disprove any material fact in issue. On the contrary, introduction of such information will needlessly waste time and only confuses jurors.

The following evidence is not only irrelevant to these proceedings, but its probative value is greatly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time. Therefore, such evidence and testimony

should be precluded. Fed. R. Evid. 403.

Wherefore, for the foregoing reasons, Plaintiff urges the Court to grant Plaintiff's Motion to exclude evidence regarding the number of heart attacks occurring in the United States of America during the time that Vioxx was being marketed.

Respectfully submitted,

By: _P. Leigh O'Dell_
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

**PLAINTIFFS' LIAISONCOUNSEL**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)

**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

8

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 4th day of November, 2005.