UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

Motion in Limine No. 5

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
AND/OR ARGUMENT THAT THE FDA HAS CONCLUDED THERE IS A "CLASS
EFFECT" FOR ALL NON-STEROIDAL ANTI-INFLAMMATORY DRUGS
("NSAIDS")

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., deceased, by and through her undersigned counsel, hereby moves the Court for an ordering excluding all evidence and/or argument that the Food and Drug Administration (FDA) has concluded there is a "class effect" for all non-steroidal anti-inflammatory drugs (NSAIDs).

Plaintiff believes that Merck & Co., Inc. ("Merck") may attempt to introduce evidence and/or argument that the FDA has concluded that the class of medications known as non-steroidal anti-inflammatory drugs ("NSAIDs")—of which, COX-2 inhibitors such as Vioxx are a subset—all carry an increased risk of cardiovascular injury. To support its claim, certain representatives of Merck have referenced a memorandum published on the FDA website on April 6, 2005. This memorandum does not state that the FDA has concluded there is a class

effect of increased cardiovascular risk for all NSAIDs.

Instead, it contains equivocal and conditional opinions and recommendations, offered during a time period when the FDA was (and continues to be) under intense public and government scrutiny, and has been criticized for failing to be diligent in its evaluations of drug safety and the adequacy of labeling and promotional materials. Further, the memorandum explicitly acknowledges that the FDA lacks data to draw conclusions regarding the cardiovascular risks of NSAIDs and that in the interest of public safety, it chose to err on the side of caution when offering the recommendations in the memorandum. As a result, the "conclusions" in the memorandum lack the scientific certainty and reliability which might otherwise be presumed by the jury to attach to information coming from an entity such as the FDA.

Although the testimony or argument at issue is relevant, if permitted at trial it would be highly prejudicial and confusing. The FDA has not scientifically "concluded" anything about a "class affect" associated with NSAIDs. Merck, however, would seek to take the FDA's precautionary statements and use them to bolster the opinions of its own representatives and experts to transform this controversy from a trial about Merck's conduct with respect to Vioxx, into a trial about all NSAIDs. For these reasons – the lack of relevancy, the substantial danger of unfair prejudice, the likelihood of confusing the jury, and the lack of scientific reliability related to the "conclusions" in the FDA's memorandum, the Honorable Judge Higbee in the *Humeston v. Merck & Co.* case has ruled that evidence and/or testimony related to the FDA's memorandum is inadmissible. *See* Transcript of Humeston v. Merck & Co., October 31, 2005. This Court should do the same.

## ARGUMENT

Plaintiff believes that defendant will offer at trial, testimony and argument that the FDA has concluded that there is a class effect of increased risk for adverse cardiovascular events for all NSAIDs.

### I. THE FDA MEMORANDUM DOES NOT CONCLUDE THAT THERE IS A DEMONSTRATED CLASS EFFECT FOR ALL NSAIDS

On April 6, 2005, the U.S. Food and Drug Administration ("FDA") published, on its website, a memorandum entitled, "Analysis and recommendations for Agency action regarding nonsteroidal anti-inflammatory drugs and cardiovascular risk." See FDA Memorandum of April 6, 2005 (Ex. B). The documents contain select discussion and opinions derived from a review of "available clinical trial data," and "published and unpublished" observational studies. *Id.* at 1, 7.

The memorandum concludes that there is an "increased risk of serious adverse CV events compared to placebo" for the selective COX-2 inhibitors Vioxx, Celebrex, and Bextra (Valdecoxib)—a subset of the broader class on non-selective NSAIDs. See *id.* at 1. With respect to a "class effect of NSAIDs," the FDA memorandum states that:

> **Long-term placebo-controlled clinical trial data are not available to adequately assess the potential for the non-selective NSAIDs to increase the risk of serious adverse events...** Pending the availability of additional long-term controlled clinical trial data, the available data are best interpreted as being consistent with a class effect of an increased risk of serious adverse CV events for COX-2 selective and non-selective NSAIDs.

*Id.* at 2.

This equivocal and qualified observation cannot reasonably be interpreted as meaning that the "FDA has concluded that there is a class effect of increased cardiovascular risks for all

NSAIDs." Indeed, in the section of the memorandum entitled, "Analysis and Conclusions," the reviewers retreat from their earlier summary opinion:

> **The absence of long-term controlled clinical trial data for the non-selective NSAIDs significantly limits our ability to assess whether these drugs may also increase the risk of serious adverse CV events...** The adverse CV risk for the COX-2 selective drugs became apparent only from large, long-term controlled clinical trials and large retrospective cohort studies. Similar clinical trials are needed to assess the potential risks of the non-selective NSAIDs.

*Id.* at 11 (emphasis added).

Oddly, the reviewers then offer a <u>qualified</u> statement "that it is reasonable to conclude that there is a 'class effect' for increased CV risk for all NSAIDs *pending the availability of data from long-term controlled clinical trials that more clearly delineate the true relationships.*" *Id.* (emphasis added). This qualification appears to be founded in the authors' acknowledgment that "[f]or the vast majority of non-selective NSAIDs we do not have <u>any data</u> that allow comparisons with COX-2 selective agents for CV risk." *Id.* at 10 (emphasis added). Moreover, with respect to the authors' hypothesis of a class effect, it was noted that "Naproxen may be an exception." *Id.*

The FDA memorandum demonstrates that as far as the FDA is concerned, more data is needed before reaching an unqualified conclusion that there is a "class effect" of increased risk of adverse cardiovascular events. Indeed, the authors observe significant differences in cardiovascular events among several NSAIDs, including Celebrex, Vioxx, and Naproxen. See *id.* at 4-5, 10. In short, as far as the authors are concerned, the jury is still out. Further, there is evidence that the agency felt pressured to provide guidance on the COX-2 controversy, even in the absence of long-term clinical trials addressing the cardiovascular risks of non-selective NSAIDs. As the reviewers noted:

> The inability to reliably estimate the absolute magnitude of the increased risk of serious adverse CV events for individual COX-2 agents, combined with **the inability to reliably draw conclusions about the risk of COX-2 agents compared to one another or to other NSAIDs**, highlights the conundrum the Agency faces in making decision on appropriate regulatory actions. **There is an urgent health need to make appropriate regulatory decisions because the adverse events at issue are serious and a very large number of patients use selective and non-selective NSAIDs** . . . Although the currently available data are not definitive, **the Agency cannot await more definitive data,** which may take years to accumulate from studies that have not even begun, before taking action.

*Id.* at 10 (emphasis added).

Irrespective of the merits of the FDA's opinions,[1] it is apparent that the FDA was under enormous pressure to weigh in on the COX-2 controversy. Indeed, at the time the FDA memorandum was published on its website, the FDA's oversight of the development and marketing of Vioxx was being widely criticized by the medical community and in the media, and was the subject of both committee hearings in both the House of Representatives and the United States Senate. Thus, as demonstrated above, any allegation that the FDA has definitely concluded that there is a class effect of increased cardiovascular risks for <u>all</u> NSAIDs is false. Further, the circumstances under which the FDA rendered such opinions are suspect.

---

[1] Plaintiff notes that the FDA analysis does not seem to account for several published studies that "ranked" the relative risk for serious adverse cardiovascular events among COX-2 inhibitors and non-selective NSAIDs. *See, e.g., id.*, Exh. C (Ray, Wayne, "Non-steroidal anti-inflammatory drugs and risk of serious coronary heart disease: an observational cohort study," *The Lancet,* January 12, 2002); Exh. D (Juni, Peter, "Risk of cardiovascular events and rofecoxib: cumulative meta-analysis," *The Lancet,* November 5, 2004. In addition, a more recent study was published after the FDA Memorandum was issued. This study concluded that, contrary to the conclusions reached in the FDA Memorandum, each COX-2 inhibitor has a unique cardiovascular profile. This study also ranked COX-2 inhibitors and NSAIDs based upon their cardiovascular risk profiles, with NSAIDs having a more favorable profile than COX-2 inhibitors. *See id.*, Exh. E (Jones, S. C., "Relative Thromboembolic Risks Associated with COX-2 Inhibitors," *The Annals of Pharmacology*, July/August 2005).

## II. ANY EVIDENCE OR ARGUMENT THAT THE FDA HAS CONCLUDED THAT THERE IS A CLASS EFFECT OF INCREASED CARDIOVASCULAR RISK FOR ALL NSAIDS IS UNRELIABLE AND HIGHLY PREJUDICIAL

All evidence, including expert opinion, is subject to the requirements of Rules 401, 402 and 403 which address relevancy and reliability. *Ramirez v. State*, 810 So. 2d 836, 842 (Fla. 2001). Rule 403 provides, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. "[I]f the introduction of the evidence tends in actual operation to produce a confusion in the minds of the jurors in excess of the legitimate probative effect of such evidence – if it tends to obscure rather than illuminate the true issue before the jury – then such evidence should be excluded." Perper v. Edell, 44 So. 2d 78, 80 (Fla. 1950).

As the probative value of proffered evidence becomes more marginal, the danger of unfair prejudice will more frequently compel the exclusion of the same under Rule 403. *See U.S. v. Huffine*, 2003 WL 122313 at *4 (5th CTA Jan. 13, 2003). The evidence and discussion at issue falls squarely within Rule 403's gambit. In light of the fact that the evidence or argument at issue is extremely attenuated from the real controversies in this case, the probative value of such evidence would be substantially outweighed by the risks against which the Rule warns.

Any suggestion that the FDA has concluded that all NSAIDs—as a class—increase the risk of severe cardiovascular events is misleading and confusing to the jury. As noted above, the FDA has not reached any such conclusion. The "conclusions" reflected in the memorandum are, by the author's own acknowledgement, based on incomplete data and

precautionary speculation. The FDA is widely perceived by the public to be an authority on such issues and, thus, the danger of unfair prejudice is magnified. Allowing such evidence or argument will distract the jury from the critical questions in this case—did Merck fail to adequately warn consumers and patients about known cardiovascular risks associated with Vioxx? Is Vioxx defective? If such testimony or argument is permitted, there is a substantial danger that the jury will attach disproportionate significance to evidence with dubious reliability or marginal relevance and give less focus to the evidence and scientific testimony presented on the relevant issues by the parties.

Further, the prejudice to Plaintiff is heightened by the fact that the authors of the FDA memorandum will not be testifying at trial. Plaintiff has not had the opportunity to verify or ascertain the basis of the authors' conclusions. Moreover, Plaintiff will not have opportunity to cross-examine the authors of the FDA memorandum concerning their opinions. If Defendant is permitted to introduce evidence or argument that the FDA has concluded that there is a class effect for all NSAIDs at trial, Merck, in essence, will have the unfair advantage of bolstering the opinions of its representatives and experts while being shielded from cross-examination. Such an outcome is particularly troubling when one further considers the equivocal and confusing nature of the document, and the suspect circumstances under which it was published by the FDA.

For the foregoing reasons, Plaintiff respectfully requests that this Court grant her motion to exclude any evidence or argument that the FDA has concluded that there is a "class effect" of increased cardiovascular risks for all NSAIDs.

Respectfully submitted,

By: _/s/ P. Leigh O'Dell_
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

## PLAINTIFFS' LIAISONCOUNSEL

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## PLAINTIFF'S STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this **4th** day of November, 2005.

_____