UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

Motion in Limine No. 6

PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ANY
TESTIMONY OR DISCUSSION BY DEFENDANT THAT IT COULD NOT
HAVE AMENDED THE VIOXX LABEL OR ISSUED STRENGTHENED WARNINGS
WITHOUT PRIOR FDA APPROVAL

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., deceased, by and through her undersigned counsel, respectfully requests entry of an order prohibiting Merck & Co., Inc. ("Merck") from arguing that, prior to the drug's withdrawal from market on September 30, 2005, it could not have amended the Vioxx label without prior approval of the United States Food and Drug Administration ("FDA"). As demonstrated below, not only would such testimony or discussion be false, but it should be precluded under Rules 402 and 403 because its probative value is outweighed by the risk of undue prejudice, confusion of issues, misleading the jury, undue delay, and waste of time. Fed. R. Evid. 402 and 403.

## ARGUMENT

Plaintiff anticipates that Merck will offer testimony and argue at trial, that it could not

have amended the Vioxx label to include warnings of cardiovascular risk or reports of cardiovascular and other adverse events, without prior approval of the FDA. Such claims are false and misleading. Though subject to FDA oversight, Merck was responsible for ensuring that adequate warnings appeared on the label of Vioxx.

## I. CLAIMS THAT MERCK COULD NOT HAVE AMENDED THE VIOXX LABEL WITHOUT FDA APPROVAL WOULD BE FALSE

Any suggestion that only the FDA could have changed the label for Vioxx is false and raises a misleading and confusing question as to whether Merck or the FDA was ultimately responsible for the failure to warn patients and physicians of the drug's true risks. The Food, Drug and Cosmetic Act (the "Act") *expressly* requires a drug manufacturer to immediately inform the public of newly discovered dangers rather than waiting for the FDA to act. See *McEwen v. Ortho Pharm. Corp.*, 528 P.2d 522, 534-535 (1974); see also 44 Fed. Reg. 37,447 (1979). It is the legal obligation of a manufacturer to promptly take steps to strengthen its warnings to consumers of newly discovered dangers and risks of an approved product. Any argument to the contrary should be precluded. *Id.*

The intention of the Act is "to protect consumers from dangerous products." *United States v. Sullivan*, 332 U.S. 689, 696 (1948); see *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000). Consistent with its purpose, the FDA and its regulations explicitly permit a manufacturer to unilaterally strengthen a warning label at any time without regulatory approval, 21 C.F.R. § 314.70(c)(6)(iii)(A), to allow drug manufacturers to quickly strengthen warnings when evidence of side effects, risks, or dangers are discovered. *See* 30 Fed. Reg. 993 (Jan. 30, 1965). 21 C.F.R. § 201.57 states: "labeling shall be revised to include a warning *as soon as there is reasonable evidence of an association of a serious hazard with a drug; a*

*causal relationship need not have been proved.* (emphasis added). Also, 21 C.F.R. § 314.70(c) is explicit that labeling changes to "add or strengthen a contraindication, warning, precaution, or adverse reaction" do not require FDA's prior approval.

In fact, when promulgating these regulations the FDA Commissioner invited companies to strengthen their warnings.

> [D]rug labeling does not always contain the most current information and opinion available to physicians about a drug because advances in medical knowledge and practice inevitably precede formal submission of proposed new labeling by the manufacturer and approval by FDA. . . . **[L]abeling regulations do not prohibit a manufacturer . . . from warning health care professionals wherever possibly harmful adverse effects associated with the use of a drug are discovered. The addition to labeling and advertising of additional warnings . . . is not prohibited by these regulations. . . . [P]racticing physicians will welcome such information so they can make their best informed medical judgments in the care of their patients.**

44 Fed. Reg. 37434 (June 26, 1979) (emphasis added).

Consequently, Merck was permitted to strengthen its instructions and warnings for its Vioxx labels *at any time* without advance approval by the FDA. See 44 Fed. Reg. 37,447 (June 26, 1979); see also 30 Fed. Reg. 993 (Jan. 30, 1965) (allowing a drug manufacturer to strengthen its warnings "in the interest of drug safety" at any time without FDA pre-approval to enable adoption of new warnings as soon as possible). (emphasis added)  Any argument or testimony that Merck was required to get prior approval from the FDA before amending its label to include warnings or information concerning serious cardiovascular adverse events is simply false.

Further, although Merck may argue that § 314.70 provides only temporary authority to strengthen a label, the FDA has discretion to keep a manufacturer's strengthened warning.  21

C.F.R. § 314.70. Assuming *arguendo* that Merck had strengthened its Vioxx warning to include the risks and dangers alleged by plaintiffs, the FDA could have taken one of three possible courses of action. First, the FDA could have approved the warning in which case the label change would remain in effect. Second, the FDA could have taken no action and, again, the label change would remain in effect. See 56 Fed. Reg. 59,290 (Nov. 25, 1991). Third, the FDA could have disapproved of the strengthened warning and instructed the company to suspend distribution of the new label. 21 C.F.R. § 314.70(c)(7). Where the FDA disapproves of a strengthened label enacted by the manufacturer, however, that manufacturer is not exposed to retroactive penalties. *Id.* Indeed, federal regulations underscore the fact that Merck had the ability to change its Vioxx warning, *sua sponte*, without fear of penalties by the FDA. Accordingly, the Court should enter an order precluding Merck from arguing or offering testimony that it could not have strengthened the Vioxx warning without prior FDA approval.

## II.   MOST COURTS HAVE RECOGNIZED THAT DRUG MANUFACTURERS CAN AMEND THEIR LABELS WITHOUT VIOLATING FEDERAL LAW

Federal and state courts have concluded that current FDA regulations do not impose any restrictions on a manufacturer or a prescription pharmaceutical product to issue prompt notice of newly-discovered risks and dangers.

In *Witczak v. Pfizer, Inc.,* the district court found that FDA regulations explicitly permit pharmaceutical companies to unilaterally strengthen its warning label at any time without regulatory pre-approval. *Witczak v. Pfizer, Inc.* 377 F.Supp.2d 726 (D. Minn. 2005) (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)). The *Witzak* court noted that the "particular regulation was promulgated precisely to allow drug-makers to quickly strengthen label warnings when

evidence of new side effects are discovered". Witcjak, 377 F.Supp.2d at 726 *(citing* 30 Fed.Reg. 993 (Jan. 30, 1965)). FDA regulation "permits the addition to the drug's labeling or advertising of information about a hazard without advance approval" by the FDA. *Id.*

### A.   Florida Law Clearly Imposes Duty to Warn

Under Florida law, as set out in the seminal Florida case, *Johns-Manville Sales Corp. v. Janssens,* 463 So. 2d 242 (Fla. 1st DCA 1984), *petition for review denied,* 467 So. 2d 999 (Fla.1984), the "duty to warn attaches, not when scientific certainty is established, but whenever a reasonable man would want to be informed of the risk in order to decide whether to expose himself to it." *Id.* at 251. In that action, it was found that defendant was aware of respectable medical authority to the effect that exposure to asbestos posed serious health hazards, yet failed to warn potential users accordingly. *Id.* Florida law is entirely consistent with FDA regulations which require the manufacturer to immediately strengthen or add warnings associated with the product when information about risks is discovered.

### B.   Fifth Circuit Courts Have Consistently Held That Manufacturers May Revise Warnings Without Prior FDA Approval

Judge Steger of the United States District Court for the Eastern District of Texas recently provided an in-depth analysis of the FDCA's applicability to state law claims against pharmaceutical companies, and the issue of preemption. See *Cartwright v. Pfizer, Inc.*, 369 F.Supp.2d 876 (E.D. Tex. 2005). In the *Cartwright* case, the defendant claimed that plaintiff's state law claims were preempted, because under the FDCA, the manufacturer was required to obtain FDA approval before revising the product labeling. Id. The District Court specifically rejected this argument: "Since 1965, the FDA's regulations permit a manufacturer "[t]o add or strengthen a contraindication, warning, precaution, or adverse reaction," without prior approval by

the FDA." Id. (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)). "Thus, FDA's position regarding stronger warnings by drug manufacturers, as expressed through *its own regulations,* is that a manufacturer could, and should, provide stronger warnings as soon as such a warning is warranted." Id. The *Cartwright* court further pointed out that under the regulations a manufacturer should issue a warning whenever there is "reasonable evidence of an association of a serious hazard with a drug; *a causal relationship need not have been proved.*" Id.(citing 21 C.F.R. § 201.57(e) (emphasis added)).[1] The *Cartwright* court concluded "it is clear to this Court that manufacturers must act quickly to warn regarding possibly deadly side effect associated with a drug because the FDA only sets forth minimum standards for labeling and safety of drugs." Id.

Most recently, in *Madden v. Wyeth*, 2005 WL 2278081 (N.D. Tex. Sept 14, 2005), the defendant claimed its warning label was adequate in support of a summary judgment motion. The District Court rejected "defendant's argument that its warning label is adequate because it was approved by the FDA. Federal regulations do not prohibit a manufacturer from "add[ing to] or strengthen[ing] a contraindication, warning, precaution, or adverse reaction." Id. (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)).

This Court addressed a similar issue in *Ohler v. Purdue Pharma, L.P.*, 2002 WL 88945 (E.D.La. 2002), in the context of a motion to remand, where removal was partially based on preemption grounds. In rejecting the defendants' arguments, this Court noted that the "applicable regulation states that changes in labeling that 'add or strengthen a contraindication, warning, precaution, or adverse reaction" fall within the category of adjustments that "may be made before FDA approval.'" Id. (citing 21 C.F.R. § 314.70; *Motus v. Pfizer* 127 F.Supp.2d 1085 (C.D. Cal.

---

[1] As the *Cartwright* court noted, this same regulation requires that "black box" warnings be used for drugs which have problems "that may lead to death or serious injury," Id.

2000) (observing that the FDA Commissioner's own comments support the view that labeling requirements do not prohibit a manufacturer from warning health care professionals whenever possibly harmful adverse effects associated with the use of the drug are discovered and that supplementing the labeling with additional warnings is not prohibited by federal regulations)).

In light of this Court's express recognition, and other courts within this district recognizing the undisputed fact that nothing within the FDA regulations would prevent a manufacturer from adding or strengthening warnings in its label without prior FDA approval, this Court should preclude Merck, its lawyers, or its witnesses from arguing, making reference, or otherwise stating or implying that it could not have given additional warnings regarding cardiovascular risks, or that it could not have amended its product labeling to reflect these additional warnings, without FDA approval.

### C. Additional Courts Further Recognize the Undisputed Fact That A Manufacturer May Provide Additional or New Warnings for its Product Without Prior FDA Approval

The *Cartwright* court cited many cases from multiple jurisdictions which have recognized that FDA regulations explicitly permit the manufacturer, just like Merck, from immediately issuing new warnings about its drug, without prior FDA approval. *See Cartwright*, 369 F.Supp.2d at 884.

In *Caraker v. Sandoz Pharmaceuticals Corp.*, 172 F.Supp.2d 1018 (S.D. Ill. 2001), the district court found that the manufacturer was explicitly authorized by the FDA's regulations to add or strengthen its warnings without prior FDA approval. *Id.* at 1033-34. The *Caraker* court cited to the FDA commissioner's statement that "labeling regulations do not prohibit a manufacturer, packer, relabeler, or distributor from warning health care professionals whenever possibly harmful adverse effects associated with the use of the drug are discovered." Id. at 1034

(citing 44 Fed.Reg. 37,434, 37,447 (1979)); see also *Jamison v. Purdue Pharma Company*, 251 F.Supp.2d 1315 (S.D. Miss. 2003) (rejecting defendant's arguments is supporting federal preemption, citing 21 C.F.R. 314.70 and listing situations where company may amend labeling without prior approval, including "adding or strengthening "(i) a contraindication, warning, precaution, or adverse reaction").

Courts have generally found that "FDA regulations as to design and warning standards are minimum standards which do not preempt state law defective design and failure to warn claims" and FDA approval does not shield a manufacturer from liability. *Eve v. Sandoz Pharmaceutical Corporation*, 2002 WL 181972 (S.D. Ind. 2002)); Motus *v. Pfizer, Inc.*, 127 F.Supp.2d 1085, 1092 & 1096 (C.D. Ca.2000) (citing as example, *Hill v. G.D. Searle Labs.*, 884 F.2d 1064, 1068 (8th Cir.1989)); see *Brochu v. Ortho Pharm. Corp.*, 642 F.2d 652 (1st Cir.1981); *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359 (4th Cir.1975); *Mazur v. Merck & Co.*, 742 F. Supp. 239, 247 (E.D. Pa.1990); *Kociemba v. Searle & Co.*, 680 F.Supp. 1293, 1299 (D.Minn. 1988); *Graham v. Wyeth Labs.*, 666 F. Supp. 1483 (D. Kan.1987) (internal parentheses omitted).

The overwhelming majority of courts, both state and federal, as well as this Court, have concluded and recognized that a manufacturer not only may, but should make labeling revisions to add or strengthen warnings related to a pharmaceutical drug, without prior FDA approval, consistent with FDA regulations. Here, as in the cases cited above, the statutes and regulations set forth that Merck could have strengthened the cautions and/or warnings contained in the Vioox label as it had actual or constructive knowledge of the dangers related to ingestion of the drug. In sum, the Court should enter an order precluding Merck from arguing or offering testimony that it could not amend its labels for Vioxx to include strengthened warnings or cautions concerning cardiovascular risks without prior FDA

approval. Such testimony or discussion would be contrary to well-settled federal regulations and would likely confuse and prejudice the jury by suggesting that the inadequacies of the Vioxx label were the responsibility of the FDA, rather than the manufacturer.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order prohibiting defendant from arguing or offering testimony that it could not have amended the Vioxx label to include warnings of cardiovascular risk without prior FDA approval.

Respectfully submitted,

By: *[signature]*
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)

**PLAINTIFF'S STEERING COMMITTEE**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this __4th__ day of November, 2005.

_____