UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM OF MERCK & CO. INC. ("MERCK")
IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE
OPINION TESTIMONY OF DR. JANET ARROWSMITH-LOWE**

Plaintiff's Motion to Exclude Opinion Testimony of Dr. Janet Arrowsmith-Lowe ("Mot.") attacks Merck's regulatory expert Dr. Arrowsmith-Lowe on subjects for which she has not been offered as an expert, and ignores the relevant subjects on which she is qualified to offer reliable and helpful expert opinion. For the reasons stated below, the motion should be denied.

## I. DR. ARROWSMITH-LOWE IS QUALIFIED TO TESTIFY AS AN EXPERT CONCERNING RELEVANT SUBJECTS ON WHICH HER TESTIMONY IS BOTH RELIABLE AND HELPFUL TO THE JURY.

Although plaintiff seeks to exclude Dr. Arrowsmith-Lowe's opinion testimony in its entirety, plaintiff's motion has very little to do with the opinions Dr. Arrowsmith-Lowe will offer at trial. As Dr. Arrowsmith-Lowe explains in her report:

> I have been asked to give an opinion regarding Merck & Co., Inc.'s ("Merck") interactions with the United States Food and Drug Administration ("FDA") with respect to Vioxx® and Merck's disclosure of cardiovascular and other data about Vioxx to FDA and to the medical community. As set forth more fully below, it is my opinion that Merck acted as a reasonably prudent pharmaceutical company in interacting with FDA with respect to Vioxx and in its disclosures to FDA and to the medical community of cardiovascular and other data about Vioxx.

(Expert Report of Janet Arrowsmith-Lowe, M.D., F.A.C.P. ("Arrowsmith-Lowe Report") at 1, attached as Ex. 15 to Declaration of Phillip A. Wittmann in Support of Merck's Opposition Briefs, filed November 2, 2005.)

There is no question – and plaintiff raises none – concerning either the relevance of Dr. Arrowsmith-Lowe's areas of expertise at trial or the fact that expert testimony in those areas will assist the jury in making its decisions. Dr. Arrowsmith-Lowe will help the jury to understand the regulatory context for Merck's actions regarding Vioxx and the significance of FDA action or inaction. Each one of Dr. Arrowsmith-Lowe's opinions, as set forth in her report, is both relevant and helpful:

*First*, Dr. Arrowsmith-Lowe will examine Merck's preclinical and clinical (including post-approval) testing of Vioxx®. She will compare that testing against FDA guidelines and standard practices. She will also explain that the FDA could have required Merck to conduct further tests before approving Vioxx, and the significance of FDA's decision not to impose any such requirements on Merck. (Arrowsmith-Lowe Report at 3-5.)

***Second***, Dr. Arrowsmith-Lowe will examine Merck's disclosure of the potential safety risks associated with Vioxx.  She will explain to the jury how and why Merck complied with the governing federal regulations in submitting the data it submitted,[1] and she will counter any of plaintiff's charges that Merck withheld information from the FDA.[2]  She will also examine the original package insert and explain to the jury why it was adequate, and as part of that explanation will inform the jury that "over-warning" of a drug's theoretical – but unproven – risks is contrary to FDA policy.  (Arrowsmith-Lowe Report at 5-6.)

***Third***, Dr. Arrowsmith-Lowe will explain why Merck's response to the VIGOR study was reasonable.  She will explain that Merck moved quickly to disclose the VIGOR results to the FDA and thereafter cooperated with FDA to incorporate those results into the package insert.  She will also explain that, because VIGOR involved an unapproved indication and patient population, a dose (50mg) that was not approved for chronic use, and a non-placebo comparator (naproxen), Merck could not have changed the package insert without prior approval from the FDA.  She will testify that Merck acted reasonably in submitting proposed label changes to FDA and in seeking expedited approval of those changes.  In addition, she will testify that the FDA, in response to VIGOR, properly studied the matter carefully, including convening an Advisory

---

[1] Even plaintiff's expert Richard Kapit agrees that whether or not Merck complied with the applicable federal regulations is relevant.  (*See* Deposition of Richard M. Kapit, M.D. ("Kapit Dep.") at 183:25-186:8, attached as Ex. 7 to Declaration of Phillip A. Wittmann in Support of Merck's Reply Briefs ("Wittmann Decl.").)  That is not to say, however, that he should be permitted to testify about his own freestanding views of ethics, which he concedes are grounded in the federal regulations themselves.  (*Id.* at 187:5-188:25.)

[2] Merck has moved to exclude evidence that it allegedly "defrauded the FDA."  (*See* Merck's Motion to Exclude Evidence or Argument Preempted by Federal Regulations, filed Oct. 4, 2005.)  If the Court grants that motion, then it will not be necessary for Dr. Arrowsmith-Lowe to testify that Merck did not in fact defraud the FDA.  However, every other aspect of Dr. Arrowsmith-Lowe's opinion testimony will still be necessary.  If the Court denies Merck's motion concerning fraud on the FDA, then Merck will of course defend itself against those claims, and Dr. Arrowsmith-Lowe's testimony will be critical in mounting that defense.

Committee. She will explain the significance of the FDA's approval, in April 2002, of a package insert that did *not* contain a "warning" concerning CV-risks, but only a "precaution" for patients "with a medical history of ischemic heart disease." Finally, she will explain the other ways in which Merck alerted the medical community, including the investigators participating in all Vioxx clinical trials, to VIGOR's results. (Arrowsmith-Lowe Report at 6-8.)

*Fourth*, Dr. Arrowsmith-Lowe will counter plaintiff's claims concerning the September 2001 Warning Letter Merck received from the Division of Drug Marketing, Advertising, and Communications ("DDMAC"). She will explain the significance of a warning letter from DDMAC, the division of FDA that regulates marketing activities. She will also offer an opinion that Merck responded reasonably to the Warning Letter, and explain to the jury the significance of the FDA thereafter closing the matter without taking disciplinary action. (Arrowsmith-Lowe Report at 9-10.)

*Fifth*, Dr. Arrowsmith-Lowe will testify that Merck acted reasonably in response to the interim APPROVe data. She will explain that, although that data would not have required Merck to withdraw Vioxx (given Vioxx's benefits compared to a small increase in risk beginning after 18 months of continuous use), Merck acted reasonably in voluntarily withdrawing the drug. She will also explain how the FDA's review of APPROVe, as well as other studies, shows that, among other things, there appears to be no increased risk of heart attacks from short-term ingestion of Vioxx. In particular, she will explain the significance of the April 6, 2005 FDA Decision Memorandum to the jury. (Arrowsmith-Lowe Report at 10-11.)

In sum, Dr. Arrowsmith-Lowe's testimony is directly relevant to the claims plaintiff makes in this case. Moreover, she is both well qualified and adequately supported to explain

4

790715v.1

persuasively *why* Merck's conduct was reasonable in light of the pertinent regulatory framework. She can further opine on the significance of the FDA's decisions and actions.

Indeed, given plaintiff's concessions concerning the relevance and helpfulness of Dr. Arrowsmith-Lowe's testimony, the only questions are: (1) whether she is qualified to offer her opinions; and (2) whether her testimony is based on sufficient facts or data, is the product of reliable principles and methods, and has been properly applied to the facts of the case. *See* FED. R. EVID. 702. Dr. Arrowsmith-Lowe's testimony satisfies those requirements.

Dr. Arrowsmith-Lowe is well qualified to offer her testimony and has been accepted by other courts as an FDA expert. (*See* Arrowsmith-Lowe Report, Ex. B (listing over thirty cases in which Dr. Arrowsmith-Lowe has testified as an expert at trial or by deposition since August 1, 2001.) She is a medical doctor who is Board certified in Internal Medicine and who worked at the FDA for over a decade. (Arrowsmith-Lowe Report at 2.) During her time at the FDA, she was both a medical review officer and the Acting Director of the Office of Surveillance and Biometrics, Center for Devices and Radiologic Health. (*Id.*) She has authored or co-authored over a dozen articles, including in peer-reviewed journals, and has frequently testified as an expert in various courts.[3] (*Id.*, Ex. A at 4, Ex. B at 1-3.) In light of her medical and other training, her publications, and her experience at the FDA, Dr. Arrowsmith-Lowe has expertise concerning: (1) the regulations governing the approval, labeling, advertising and marketing of pharmaceutical products; (2) the processes by which the FDA determines the efficacy and safety

---

[3] Nor is the fact that Dr. Arrowsmith-Lowe engages in paid litigation consulting work a reason to bar her testimony. In fact, some of plaintiff's experts receive a much greater percentage of their income from such consulting work. (*E.g.*, Kapit Dep. at 26:21-27-21 ("Q: . . . Is it fair to say that, for the last two years, putting aside your retirement income, that litigation consulting comprises 100 percent of your earned income? A: I believe that's correct.").)

of new drugs; and (3) the issues the FDA considers in the development of product labeling – exactly the areas on which she will offer opinions at trial. (*Id.*)

Plaintiff argues that, despite her background and experience, Dr. Arrowsmith-Lowe's qualifications are "thin at best" (Mot. at 3), but supports that assertion only by noting that Dr. Arrowsmith-Lowe: (1) has not been with the FDA since 1996; and (2) was never in charge of a New Drug Application while she worked at the FDA (*id.* at 9). Neither assertion is persuasive.

First, although Dr. Arrowsmith-Lowe left the FDA in 1996, she keeps "abreast of FDA issues," as her current consulting work requires. (Arrowsmith-Lowe Report at 2; Deposition of Janet Arrowsmith-Lowe, M.D., F.A.C.P. ("Arrowsmith-Lowe Dep.") at 47:21-48:23, 173:18-24, attached as Ex. 1 to Wittmann Decl.) Plaintiff completely failed during the deposition to reveal any lack of understanding on Dr. Arrowsmith-Lowe's part concerning the current regulations or FDA practices. (Arrowsmith-Lowe Dep. at 173:21-174:17.) It is as unfair as it is improper for plaintiff simply to assert that, because Dr. Arrowsmith-Lowe last worked at the FDA in 1996, she *must* know nothing about what the FDA regulations and processes were in 2000 and 2001, when the relevant conduct occurred. In any event, the *only* regulation plaintiff argues has changed since 1996 is an unremarkable provision requiring the FDA to "refund fees to drug companies for any aspect of their fee going toward drug approvals not matched by the FDA." (Mot. at 10.) Plaintiff makes no attempt to explain the significance of that change. Nor does plaintiff make any effort to explain how that change undermines Dr. Arrowsmith-Lowe's opinions. It does not.

Second, although plaintiff is correct that Dr. Arrowsmith-Lowe was never in "charge" of a New Drug Application, she participated in reviewing both NDAs and supplemental NDAs (Arrowsmith-Lowe Dep. at 11:25-12:7, 14:11-15), and is familiar with those processes and the

rules governing them (Arrowsmith-Lowe Report at 2). She was also the medical officer in charge of dozens of INDs (Arrowsmith-Lowe Dep. at 12:18-13:17), another topic on which she will offer opinions about Vioxx at trial. In short, the solitary fact that Dr. Arrowsmith-Lowe was never in "charge" of an NDA does not render her unfit to testify concerning subjects about which she spent more than a decade at the FDA developing an expertise.

## II.   PLAINTIFF'S SPECIFIC CHALLENGES TO THE BASES OF DR. ARROWSMITH-LOWE'S OPINIONS ARE FACTUALLY INACCURATE AND LEGALLY IRRELEVANT.

Not only is Dr. Arrowsmith-Lowe adequately qualified to offer her opinions to the jury, her testimony meets the other requirements of Rule 702 as well. In particular, her testimony is based upon sufficient facts or data, is the product of reliable principles and methods, and has been applied reliably to the facts of the case. *See* FED. R. EVID. 702. In preparing to testify, Dr. Arrowsmith-Lowe has reviewed, among other things, Merck's submissions to the FDA, including its IND, NDA, and sNDAs; protocols and data from clinical studies; minutes from the FDA Advisory Committee Meetings; and the FDA's April 6, 2005 Decision Memorandum. (Arrowsmith-Lowe Report at 3.)

Plaintiff's only two answers are that Dr. Arrowsmith-Lowe (1) conducted no analysis on the "data or results from any of the studies she cites" (Mot. at 3-5); and (2) failed to respond to plaintiff's liking to questions concerning statistics and epidemiology during her deposition (*id.* at 5-8). Plaintiff's arguments are red herrings: even if they were correct factually (which they are not), they would be irrelevant to the question whether Dr. Arrowsmith-Lowe should be permitted to testify. Accordingly, the Court should deny plaintiff's motion.

Plaintiff's first attack is that Dr. Arrowsmith-Lowe "conducted no analyses of the data or results from any studies she cites," and instead relies on her "faith in the quality of Merck's scientists and the FDA's review of their work." (Mot. at 3.) But plaintiff grossly distorts the

7

record. Far from testifying that she conducted "no analysis of the data" – a proposition for which plaintiff cites no record material – Dr. Arrowsmith-Lowe specifically testified that she did "review the data" (Arrowsmith-Lowe Dep. at 160:23-161:5) as well as conduct an "analysis" of what Merck submitted to the FDA (*id.* at 158:22-159:12). Similarly, although plaintiff's counsel attempted to elicit deposition testimony that Dr. Arrowsmith-Lowe relied "primarily on the fact that the FDA reviewed the submissions and approved the drug," she responded: "No, that isn't correct." (*Id.* at 159:15-160:6.) Nor did Dr. Arrowsmith-Lowe ever suggest that she was relying primarily on the "quality of Merck's scientists" in rendering her opinion. (Mot. at 3.) To the contrary, she explained that she independently reviewed the procedures Merck established in establishing its safety studies – which included procedures calling for adjudications and assessments from experts *outside* Merck – and formed an opinion about the adequacy of Merck's safety studies based on that independent review. (Arrowsmith-Lowe Dep. at 160:8-161:5.) In sum, having failed to establish at the deposition that Dr. Arrowsmith-Lowe neither reviewed the data nor formed an independent judgment about the adequacy of Merck's study procedures, plaintiff simply ignores Dr. Arrowsmith-Lowe's answers and repeats those same failed arguments to the Court. (*See also* Arrowsmith-Lowe Dep. at 161:22-163:12.)

In any event, Merck is offering Dr. Arrowsmith-Lowe as a regulatory expert, not an expert in epidemiology or biostatistics. Dr. Arrowsmith-Lowe is not required to crunch the numbers from every study Merck ever conducted to reach reliable conclusions about the adequacy of those studies from a regulatory standpoint. To the contrary, expert testimony is admissible so long as the "facts or data" on which the testimony is based are of a type reasonably relied upon by experts in the particular field. FED. R. EVID. 703; *Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484, 1495 (5th Cir. 1985). In reaching her opinions, it was

8

reasonable for Dr. Arrowsmith-Lowe, as a regulatory expert, to rely on what Merck submitted to the FDA, as well as what the FDA *did* (and did not do) in response to those submissions. Dr. Arrowsmith-Lowe is an expert on: (1) the FDA's rigorous requirements and review processes; (2) the customary practices of pharmaceutical companies in submitting data in connection with INDs, NDAs, ans sNDAs; and (3) the actions the FDA can (and does) take if it perceives those submissions to be inadequate. Her opinions are based on information reasonably relied on by experts in her field, and her opinions would be admissible even if they were not buttressed by her own independent review of the materials in this case.

Equally misplaced is plaintiff's assertion that Dr. Arrowsmith-Lowe was unable to testify about the "power" of various studies "to detect cardiovascular adverse events." (Mot. at 3.) Plaintiff argues that, during her deposition, Dr. Arrowsmith-Lowe was unaware of whether Merck's safety studies were adequately "powered" to detect a "doubling of the risk for myocardial infarctions." (Mot. at 6.) But again, Dr. Arrowsmith-Lowe is not being called to testify as a statistician concerning the "power" of Merck's safety studies. Rather, she is being called as a regulatory expert to explain the nature of the FDA's review of Merck's testing of Vioxx. Her purported inability to testify about the "power" of those studies is irrelevant to the substance of her testimony.

Even if the "power" of Merck's safety studies were somehow a necessary precondition for the admission of her testimony, Dr. Arrowsmith-Lowe did "review[] the research reports," which "include the power calculations." (Arrowsmith-Lowe Dep. at 151:23-152:8.) She has "no reason to disagree with the research report and its outline of the power calculation knowing that particularly for pivotal trials those power calculations *have been reviewed by the statistical group at FDA*. I have no reason to – you know, I would not second-guess the power

9

calculations." (*Id.* (emphasis added).) Again, it is reasonable for a regulatory expert to rely on her knowledge of the FDA's review processes and to infer that the FDA properly performed basic statistical analysis in reviewing data submitted by a company it regulates. Plaintiff's numerous efforts to explain how "fundamental" the statistics are only cement the point.

Plaintiff's final argument is that Dr. Arrowsmith-Lowe was unable to explain during her deposition "how many people would have to be in a study to detect a doubling in the incidence rate from one in a thousand to two in a thousand." (Mot. at 6.) Dr. Arrowsmith-Lowe is not being called as an expert in statistics or epidemiology. More remarkable than the fact that plaintiff devotes three full pages to this completely irrelevant argument is the fact that plaintiff accuses Dr. Arrowsmith-Lowe of "deception" concerning her answers on the subject during her deposition. (*Id.* at 7; *see also id.* at 6 (accusing Dr. Arrowsmith-Lowe of "attempting to deflect the question with a smoke and mirrors fabulation that she made up on the fly").) A fair review of the deposition transcript reveals that, far from attempting to deceive anyone, Dr. Arrowsmith-Lowe did her best to answer convoluted hypothetical questions conjured by plaintiff's counsel having nothing to do with her opinions in this case. (Arrowsmith-Lowe Dep. at 112:23-14:20.) Indeed, the transcript reveals that Dr. Arrowsmith-Lowe is fully conversant in the subjects inartfully raised by plaintiff's counsel. (*Id.* at 106:7-108:20, 112:23-114:20.) Plaintiff may not capitalize on counsel's inability to ask a cogent question about epidemiology in order to inject unsubstantiated accusations of "deception" into the debate over Dr. Arrowsmith-Lowe's qualifications. That is hardly a justification for the accusations, or for plaintiff's motion to exclude opinions having nothing to do with statistics.

### III. **CONCLUSION.**

For the foregoing reasons, the Court should deny plaintiff's Motion to Exclude Opinion Testimony of Dr. Janet Arrowsmith-Lowe.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

790715v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing Memorandum in Opposition to Plaintiff's Motion to Exclude Opinion testimony of Dr. Janet Arrowsmith-Lowe has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of November, 2005.

_Dorothy H. Wimberly_