UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2005 NOV 10  P 1: 44

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CLAIM FOR PUNITIVE DAMAGES AND IN OPPOSITION TO BIFURCATION OF TRIAL**

I.  **INTRODUCTION**

During a recent pretrial conference, the Court sought the positions of the parties on the availability of punitive damages to Plaintiff and the bifurcation of the trial. Plaintiff Evelyn Irvin Plunkett respectfully submits this memorandum of law in support of her claim for punitive damages and in opposition to bifurcation of the punitive damage claim from her case-in-chief.

First, the recent punitive damage award should not limit in any way Plaintiff's claim for punitive damages. Second, bifurcation in this individual personal injury trial severely prejudices the Plaintiff. In a unified presentation of evidence, Plaintiff intends to expose Merck's behavior of distorting its scientific findings from internal research and fighting FDA's efforts to amplify Vioxx's warnings in the interests of continuing to profit from the marketing of Vioxx. Merck's behavior is a classic example of putting profits over people.

II.  **FACTUAL BACKGROUND**

On May 15, 2001, Decedent Richard "Dicky" Irvin, Jr. died when he suffered an acute myocardial infarction. At the time of his death, Dicky Irvin was taking Vioxx to manage back

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No_____

pain. He had no history of cardiovascular disease, high blood pressure or high cholesterol. Plaintiff Evelyn Irvin Plunkett and two of their children, Richard Irvin, II and Ashley Irvin, bring the following claims as a result of his death: strict liability claims of defective design and failure to warn, negligence, breach of express and implied warranties and fraud – all governed by Florida law.

Under Florida law, Plaintiff may recover punitive damages for each of these claims.

### III.  LEGAL ARGUMENT

#### A.  Punitive Damages Are Available To Plaintiff

The $229 million dollar punitive damage award that was returned by the jury in *Ernst v. Merck & Co., Inc.*, No. 19961-BH02 (D. Ct., Brazoria County, 23rd Jud. District, Texas), should have no affect on the whether the Plaintiff in the *Irvin* case may recover punitive damages.

Florida Statute § 768.73 provides that:

> (2)(a) Except as provided in paragraph (b), punitive damages may not be awarded against a defendant in a civil action **if that defendant establishes**, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages. For purposes of a civil action, the term "the same act or single course of conduct" includes acts resulting in the same manufacturing defects, acts resulting in the same defects in design, or failure to warn of the same hazards, with respect to similar units of a product.
>
> (b) In subsequent civil actions involving the same act or single course of conduct for which punitive damages have already been awarded, **if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior**, the court may permit a jury to consider an award of subsequent punitive damages. In permitting a jury to consider awarding subsequent punitive damages, the court shall make specific findings of fact in the record to support its conclusion. In addition, the court may consider whether the defendant's act or course of conduct has ceased. Any subsequent punitive damage awards must be reduced by the amount of any earlier punitive damage awards rendered in state or federal court.

Fla. St. § 768.73 (a) & (b) (2005) (emphasis added).

The Florida statute is not applicable for two reasons. First, as the Court is well aware, the only verdict to date against Defendant Merck & Co. in relation to the prescription drug, Vioxx, was rendered by the jury in *Ernst v. Merck & Co.* The Circuit for Brazoria County, Texas has not yet entered a judgment in that case. Defendant Merck & Co. has publicly stated its intention to appeal the judgment when finalized. No monies have been paid.

Punitive damages are awarded to serve the public interest by punishing and deterring defendants for intentional, harmful conduct. *Liggett Group, Inc. v. Engle*, 853 So. 2d 434, 468 (Fla. 3rd DCA 2003); see *Gordon v. State*, 585 So. 2d 1033, 1035-1036 (Fla. 3rd DCA 1991), *aff'd* 608 So. 2d 800 (Fla. 1992), *cert. denied*, 507 U.S. 1005 (1993); see also *Chrylser Corp. v. Wolmer*, 488 So. 2d 823 (Fla. 1986). Where an award of punitive damages has not been made final or been paid, the defendant has not yet been punished. See *Johnson v. Celotex Corp.*, 899 F.2d 1281 (2nd Circ. 1990) (declining to set aside a punitive damage award where there was no evidence that previous punitive damage awards had actually been paid), *cert. denied*, 498 U.S. 920 (1990).

Defendant Merck also bears the burden of proof on this issue. The statute states in subsection (a) that punitive damages will be disallowed only if the **"if that defendant establishes."** The *Ernst* Court has not entered a final judgment. Merck has paid no monies in relation to the verdict. Furthermore, Merck continues to deny the wrongfulness of its conduct based on the facts as found by the jury. Merck cannot establish that it has been punished.

Florida's statute contemplates situations where a defendant has paid out substantial amounts to satisfy numerous punitive damage awards. Situations have arisen in relation to

asbestos litigation and tobacco litigation where defendants have paid out multiple awards relating to the same conduct. Section 768.73(a) is not applicable to this circumstance.

Secondly, and in the alternative, the amount of punitive damage awarded thus far is insufficient to punish Merck's behavior in relation to Vioxx. Merck & Co. has engaged in unconscionable conduct -- manufacturing Vioxx and marketing it to over 20 million Americans and 80 million individuals worldwide -- all the while knowing that the drug exposed individuals to more that 4-5 times the risk of an adverse cardiovascular event. Evidence will show at trial that Merck engaged in intentional efforts to hide the risks associated with the ingestion of Vioxx. Merck delayed and was dilatory in its dealings with the FDA, refusing to add a warning to the Vioxx package insert. Merck refused to add a black box warning of CV risks – all the while knowing that its failure to warn was furthering endangering the lives of millions, including Mr. Dicky Irvin.

It is expected that the $229 million punitive damage award returned by the jury will be reduced substantially to less than $5 million by operation of the laws of the State of Texas, limiting award of punitive damages. Even if the $229 million dollar punitive damage award was not reduced at all, however, $229 million in punitive damages would still be insufficient to punish Merck's behavior. From May 1999 until September 2004 when Vioxx was being marketed, Merck received approximately $9 Billion in revenue from Vioxx alone. In 2001, the year of Mr. Irvin's death, Merck earned approximately $2.5 Billion in revenue on Vioxx. Though a large amount of money, $229 million is paltry in comparison to the amount of gross revenue earned by Merck on Vioxx – a defective drug and one that they sold to millions without adequately warning unsuspecting individuals of the dangers associated with ingesting the drug – and is certainly an insufficient amount of punitive damages to punish Merck & Co.

Florida's § 768.73(a) should in no way limit Plaintiff's opportunity to recover punitive damages.

### B. The Punitive Damage Portion of Plaintiff's Case Should Not Be Bifurcated From Plaintiff's Case-In-Chief

The *Irvin* trial is the first of potentially many federal trials involving former Vioxx users alleging personal injuries resulting from their ingestion of the drug. This Court is already witness to the transfer of approximately 1270 cases as the MDL transferee forum. Given the Defendant's tolling agreements with potential plaintiffs contemplating future litigation, this venue has the potential to become the single jurisdiction with highest number of triable Vioxx cases.

As noted above, Merck lost its first jury trial in *Ernst v. Merck & Co., Inc.*, No. 19961-BH02 (D. Ct., Brazoria County, 23rd Jud. District, Texas). Merck won the second trial in *Humeston v. Merck & Co., Inc.*, (Atlantic County Super. Ct. NJ). The stakes involved in this first federal trial, therefore, are understandably high.

Against these facts, bifurcation of the trial would introduce artificial and arbitrary barriers to Plaintiff's proofs, particularly as they relate to punitive damages. There is no justification for bifurcating punitive damages from the jury's consideration of compensatory damages. Trial of this matter will necessary devolve upon the same evidence for purposes of presenting Plaintiff's liability claims for compensatory as well as for punitive damages. Thus, there is no benefit in the artificial truncation of the presentation of Plaintiff's claims for either compensatory or punitive damages. As discussed below, this reasoning is amply supported by the legal standard applicable to bifurcation and sound logic.

This coordinated presentation of evidence necessarily addresses liability in the context of negligence and strict liability. To eliminate punitive damages from the case through bifurcation, arbitrarily severs the unifying characteristics of the proofs Plaintiff intends to present to the jury. Further, because the proofs addressing liability and both compensatory and punitive damages are harmonic and essentially overlapping, the underlying purpose for granting bifurcation, *i.e.*, administrative convenience, avoidance of delay and judicial economy, will not be served. Finally, because this is the first federal Vioxx case to be tried, it ill-behooves the Court to circumscribe the first trial if one ulterior purpose is to fairly assess the merits of plaintiffs' claims and further the maturing of the tort.

The determination of whether to grant a request for bifurcation is a decision that rests within the sound discretion of the Court. See *Conkling v. Turner*, 18 F.3d 1285, 1294 (5th Cir. 1994); Fed. R. Civ. P. 42(b). The Court's discretion is informed by the admonition in *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978), "that separation of issues is not the usual course that should be followed, and should be done only if the issues are so distinct and separable from the others that a trial of it alone may be had without injustice." See also *In re Propulsid Products Liability Litigation,* 2003 WL 22023398, *3 (E.D. La. 2003) (Fallon, J.) (finding that bifurcation should not be routine).

In the *Propulsid* litigation, this Court described the four criteria applicable to a Rule 42 determination. The four benchmarks are: "(1) whether the issues are separate issues; (2) whether the issues could be tried separately without prejudice; (3) whether a separate trial would be conducive to judicial economy; and (4) whether severance interferes with a party's rights to a jury trial under the Seventh Amendment." *Id.* The first and last issues may be considered simultaneously. *Id.* As discussed below, in light of the cautionary use of the Rule,

none of these criteria can be satisfied in the context of the Irvin's individual personal injury trial.

### 1. Punitive Damages Are Inseparable from Plaintiff's Common Law Claims

Plaintiff is pursuing causes of action for negligence and strict liability, among others. Under these substantive theories of Florida law, Plaintiff is entitled to recover both compensatory and punitive damages. See *White Construction Co., Inc. v. DuPont*, 455 So. 2d 1026, 1028-29 (Fla. 1984); *Baione v. Owens-Illinois, Inc.*, 599 So. 2d 1377, 1378 (Fla. App. 2d Div. 1992). Both compensatory and punitive damages are remedies that can be claimed adjunct to either cause of action. There is no separate cause of action for punitive damages under Florida law. *Id.* Although seemingly obvious, it bears mentioning that from a jurisprudential perspective punitive damages are inseparable from plaintiff's claims.[1]

From a factual perspective, the same is also true. Plaintiff submits that the same evidence that will be introduced to expose the Defendants' culpable conduct applies to both

---

[1] Defendants may claim that *W.R. Grace & Co. v. Waters*, 638 So. 2d 502 (Fla. 2004), requires that punitive damages be bifurcated from plaintiffs' causes of action in this federal proceeding. In that asbestos case, the Florida Supreme Court made the procedural determination that from June 2, 1994 onward in cases where punitive damages are sought and the defendant timely requests bifurcation of punitive damages from the remaining issues at trial, that bifurcation should be permitted. *Id.* at 506 ("[W]e announce a change in the procedure by which punitive damages in Florida may be sought."). The Court went to great lengths to limit the effect of its new bifurcation procedure on the introduction of evidence related to the substantive issue of a defendant's liability for punitive damages by expressly condoning the introduction of such evidence in the initial phase of trial. *Id.* The court determined that in the event liability was found for punitive damages only the determination of damages would be required at a later stage. *Id.* Thus, any argument by Merck that the procedural ruling of *W.R. Grace* therefore controls this Court's discretionary ruling as to how to conduct the trial of this action would be seriously misplaced. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 473 (1965) ("Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules.").

the recovery of compensatory <u>and</u> punitive damages. See *In re Diet Drugs Product Liability Litigation,* 369 F.3d 293, 312 (3rd Cir.), *cert. denied,* 125 S. Ct. 439 (2004). Evidence of Defendant's early knowledge of the prothrombotic effects of Vioxx revealed its ability to substantially elevate the warnings regarding cardiovascular events and the company's suppression of the same information support requests for both types of damages. The information is inherently intertwined and inseparable from the other.

Under these circumstances not even the first element of the test for bifurcation can be met.

    **2.    Given the Inherent Relation Between Defendant's Conduct and Both Compensatory and Punitive Damages, the Issues Could Not Be Tried Separately Without Severely Prejudicing Plaintiff**

Plaintiff submits that bifurcation of her claims between compensatory and punitive damages would severely prejudice the logical flow of the evidence intended to be used and would unnecessary require duplicative proofs before potentially different jury panels that could easily result in inconsistent findings if the determination of entitlement to punitive damages was divorced from plaintiff's initial claims for liability. Such a result is contrary to the reasoning of *Alabama v. Blue Bird Body Co., supra.*

Bifurcation would also have other deleterious consequences. Plaintiff would be prejudiced by instilling a sterile atmosphere into her factual presentation. Eliminating any ability to present evidence addressing the degree of Defendant's misconduct, callous behavior and motivations for financial gain during the initial trial would easily obscure the magnitude of the case itself and the significance of the jury's decision.

The Supreme Court of Florida recognized this principle. Where bifurcation is sought in Florida state court, the issue at hand is not the separation of compensatory and punitive

damages. In the initial phase of the case, the jury hears evidence on liability for both compensatory and punitive damages. The only issue considered in a bifurcated, second phase of the trial is the amount of punitive damages to be awarded. See *Dessanti v. Contreras*, 695 So. 2d 845, 846-8475 (DCA 4th Dist. 1997) (citing *Grace*, 638 So. 2d at 506), *rev. denied,* 703 So.2d 475 (Fla. 1997).

Lastly, bifurcation would further lengthen the anticipated time it would take to conduct the trial. The two earlier trials that were conducted without bifurcation were already lengthy for a personal injury case. The *Ernst* case lasted approximately 6 weeks, and the *Humeston* case lasted approximately 8 weeks. It would be impossible to split the consideration of compensatory and punitive damages with the two-week trial setting mandated by the Court. To separate in the Irvin's case the consideration of compensatory and punitive damages could possibly lead to a two month long trial. Such a lengthy trial would clearly inure to the Defendant's benefit while stifling any possibility of conducting sufficient quantities of Vioxx trials to prove efficient for this MDL.

### C.  Bifurcation Would Not Serve the Purposes of Convenience, Avoiding Delay or the Ends of Justice

Finally, Plaintiff submits that bifurcation would ill-serve the purpose of Rule 42 or address the interests of this Court as the MDL transferee forum.

In *Snyder v. Bethelemy*, No. 92-3465, 1995 WL 581784 (E.D. La. October 2, 1995), this Court refused to bifurcate the punitive damage issue in that civil rights case, where the Court perceived that any division would not have any appreciable effect on shortening the trial of plaintiff's claim. Like the plaintiff in that case, here Plaintiff here contends that the issues concerning punitive damages and liability are so inextricably intertwined as to make bifurcation unwarranted, unmanageable and inefficient. As previously demonstrated, the prior

Vioxx trials are already taking approximately 6-8 weeks, addressing both compensatory and punitive damages in Texas and just liability in New Jersey. There does not appear to be any justification for severing punitive damages under these circumstances, as there will not be any significant amount of time saved.

Similarly, in *Shults v. Champion Internal Corp.*, 821 F. Supp. 517 (E.D. Tenn. 1992), the court refused to bifurcate punitive damages from the liability portion of the claim where the relevant evidence to be introduced addressed both issues equally. The court stated:

> The plaintiffs point out that one of the key issues in regard to their negligence claim is the reasonableness of the defendant's use of the river. This issue will, of necessity, involve proof that technology has existed for a long time which would greatly reduce the pollution of the river but that Champion has declined to adopt it for economic reasons.
>
> The Court is satisfied that Champion's economic ability to reduce its pollution of the river is crucial to the plaintiffs' case in chief. Therefore, there is no good reason to separate the punitive damages issue into two parts. This motion is DENIED.

*Id.* at 520. The Court's reasoning is analogous to the Court's decision here. Merck's knowledge about the dangers posed by Vioxx and Merck's refusal to warn of the drug's dangers are the equivalent of Champion's refusal to adopt pollution control techniques. The same application of discretion applied in *Shults* warrants the refusal to bifurcate in this similar situation.

Lastly, Plaintiff recognizes the importance of the fact that this Court is sitting as the MDL transferee forum. This aspect weighed upon the Court's determination to permit bifurcation in *Propulsid*. *Propulsid*, 2003 WL 22023398 at *6. The Court's ruling, however, was based on the fact that there was an open question of law in relation to an underlying substantive claim that needed to be resolved by the state supreme court. The Court bifurcated

the claims finding where two completely separate legal theories were involved with different elements of proof, and a *res nova* question of statutory interpretation presented itself, bifurcation served the ends of justice.

The facts of *Propulsid* are not analogous to those presented by Mrs. Irvin's case. In this instance, there is no novel question of law that needs to be resolved prior to the claim being presented to a jury in the MDL Court. Instead, bifurcation will lengthen the time to try the case, impute a level of sterility into the matter and complicate what already could be a difficult trial by forcing plaintiffs to litigate the claim twice simply to obtain what other courts have permitted in a unitary fashion

Plaintiff submits that under these circumstances bifurcation does not lend itself to advancing the interests of convenience, avoiding delay or the ends of justice.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits that Plaintiff may recover punitive damages in this case. Second, Plaintiff requests that the Court reject the request to bifurcate the trial between compensatory and punitive damages. Plaintiff submits that a unitary trial best serves the purposes contemplated for the initial trial in the MDL forum.

Respectfully submitted,

By: _____
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160

**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telefonee)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
Fred S. Longer
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 9th day of November, 2005.

_____