

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF JOHN W. FARQUHAR, M.D.**

I.  PLAINTIFF CANNOT CARRY HER BURDEN OF DEMONSTRATING THAT DR. FARQUHAR'S PROPOSED TESTIMONY IS SCIENTIFICALLY RELIABLE BY ATTACKING MERCK'S INTERPRETATION OF STUDIES AND CITING DR. FARQUHAR'S REPORT.

Merck asserts in its motion that Dr. Farquhar should not be permitted to testify about general causation because his opinions do not meet the test of scientific reliability required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993). Plaintiff's response consists of a barrage of unfounded accusations that Merck should have

790724v.1

designed its clinical trials differently and that Merck misinterpreted and misapplied the data from clinical trials of Vioxx® that it did conduct, coupled with a lengthy rehash of plaintiff's arguments on causation and selected citations to and paraphrases of Dr. Farquhar's report. What the opposition does *not* supply is any supportable reason why the testimony of Dr. Farquhar should be admitted.

Plaintiff's assertions that Merck misinterprets data from its own clinical trials are baseless. But even if plaintiff's charges were valid, no alleged failure on the part of Merck to analyze data a certain way or to provide data to others can furnish a sound basis for Dr. Farquhar to testify. In devoting the major part of the opposition to an attack on *Merck's* contentions, plaintiff seems to assume that Merck has the burden of disproving causation. Of course, the opposite is true: it is plaintiff who must prove that Vioxx can cause and did cause Mr. Irvin's sudden cardiac death. Attacking Merck's analysis on the ground that it does not establish the absence of causation does not show that the expert testimony that plaintiff would offer has a scientifically reliable basis. By the same token, plaintiff can derive no support for the admission of Dr. Farquhar's testimony by in essence accusing Merck of not having conducted the studies necessary to assess risk from short-term use, an insinuation that runs throughout both plaintiff's opposition and Dr. Farquhar's report. *Cf. In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 615 (E.D. La. 2000) (excluding proffered expert testimony under *Daubert*, this court noted that "[a] trial court must function in the present assessing evidence that presently exists. At best, the experts . . . presently have untested hypotheses."); *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 602 (S.D. Tex. 2001) ("Dr. Polukoff may have pointed out an important void in the scientific literature, but the lack of proof of a drug's safety does not prove it is dangerous.").

Moreover, much of plaintiff's argument is circular: the opposition repeatedly cites Dr.

Farquhar's report for the purpose of demonstrating the scientific reliability of Dr. Farquhar's anticipated testimony. But in assessing whether an expert's testimony is relevant and reliable, the trial court need not "tak[e] the expert's word for it." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (quoting FED. R. EVID. 702 advisory committee's note (2000)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d at 616 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

At bottom, plaintiff's litany of complaints about how Merck analyzed and interpreted the clinical trials data cannot compensate for the glaring absence of any scientifically reliable basis upon which Dr. Farquhar could opine that use of Vioxx for less than one month can cause a sudden cardiac death. To prevail on her claims, plaintiff must establish to a reasonable degree of medical certainty that taking Vioxx in the 25 mg dosage for less than one month caused Mr. Irvin's sudden cardiac death. *See, e. g., Donohue v. State of Florida*, 801 So. 2d 124, 126 (Fla. 2001) (confirming that "reasonable medical certainty" standard applies). The pastiche of conjecture, speculation, unproven hypotheses, and assumptions[1] that plaintiff points to in her opposition is insufficient to do. *See, e. g., Gooding v. Univ. Hosp. Bldg, Inc.*, 445 So.2d 1015, 1018 (Fla. 1984). Thus, the smokescreen that plaintiff has attempted to raise cannot obscure the absence of any reason why Dr. Farquhar's anticipated testimony meets the standards of Rule 702 and *Daubert*.

---

[1] For example, as discussed in Merck's opening memorandum, finding no data to support his opinion, Dr. Farquhar simply *assumed* that there was an elevated risk of an adverse cardiovascular event (*i.e.*, heart attack, sudden cardiac death, or unstable angina) from taking Vioxx for a period of two months or less. (*See* Memorandum In Support Of Merck's Motion To Exclude Testimony Of John W. Farquhar, M.D. ("Mot.") at 3-4.)

3

II.  **PLAINTIFF HAS NOT DEMONSTRATED THAT DR. FARQUHAR CAN PROVIDE ANY SCIENTIFICALLY RELIABLE AND RELEVANT TESTIMONY THAT IS BASED ON THE APPROVE TRIAL.**

The major part of plaintiff's opposition is given over to a multi-pronged assault on the manner in which Merck analyzed and reported data from the APPROVe trial. Merck denies its analysis of the APPROVe data was inaccurate, improperly done, or incomplete. But what is most pertinent to this motion is that plaintiff's challenges to Merck's analysis do not establish the admissibility of the opinions that Dr. Farquhar would offer.

A.  **An "Assumption" That The Relative Risk Of An Adverse Cardiovascular Event Is The Same Throughout The Exposure Period Is Not Reliable Scientific Evidence.**

Implicitly admitting that the APPROVe data show no increased risk of a thrombotic event within the first few months of use, plaintiff attempts to enumerate four reasons why those data should be ignored. (*See* Plaintiff's Memorandum In Opposition To Motion To Exclude Testimony Of John W. Farquhar, M.D. ("Opp'n") at 4-14.) None of these reasons supplies a scientifically reliable basis for Dr. Farquhar's opinions, which rest on his contrary-to-fact "assumption" that a relative risk of 1.92 applies throughout the period of exposure.

*First*, plaintiff derives no help from speculation about the import of statements allegedly made by a Merck consultant and by unnamed outside reviewers for the *New England Journal of Medicine* ("*NEJM*"). Plaintiff mischaracterizes the statement by the consultant, Konstam, who in any event did not suggest deleting the conclusion that there was no evidence of any increased risk within the first eighteen months of use. (*See* Reply Memorandum In Support Of Merck & Co., Inc's Motion To Exclude Evidence Of Plaintiff's Experts Regarding Causation at 13 n.5.) And the comments from two outside reviewers have no significance here. The Kaplan-Meier plot in the published report on APPROVe, which showed no separation between the Vioxx and the placebo lines for the first eighteen months of use, is an accurate representation of the data for

4

that period. Whether in the reviewer's subjective opinion, Merck's interpretation of the data was "overpromotion" does not change the accuracy of the data as represented.

Moreover, for the purpose of deciding if Dr. Farquhar's opinions meet the requirements of Rule 702 and *Daubert*, it makes no difference whether or not APPROVe was sufficiently powered to determine if there was an increased risk within the first thirty days of use. (*See* Opp'n at 4-6.) Plaintiff cannot overcome the absence of scientifically reliable data to support her causation case simply by asserting that it is Merck's fault that the data are not available.[2]

**Second**, plaintiff's lengthy and exceedingly involved criticism of the Kaplan-Meier graph of cardiovascular event data from APPROVe (*see* Opp'n at 6-12) is also irrelevant. Plaintiff must prove causation; Merck is not required to disprove causation. Even if any of this criticism were valid (and it is not), plaintiff is still faced with the absence of any data from APPROVe supporting the position that Vioxx at the 25 mg dose can cause a thrombotic event after less than one month of use.

In addition, the assertion that a Kaplan-Meier plot for the combined data from the APPROVe, ViP and VICTOR studies would show "early and continuous separation" (Opp'n at 9) is simply bald speculation on the part of Dr. Farquhar. He admits that he does not have the data from ViP and VICTOR that would be needed for such an analysis. Thus, there is no support whatsoever – in law or fact – for plaintiff's suggestion that in the absence of a Kaplan-Meier graph of the combined data from APPROVe, ViP, and VICTOR, plaintiff is somehow entitled to

---

[2] In the opposition to Merck's motion to exclude the testimony of Dr. Baldwin, another of plaintiff's experts, plaintiff's counsel candidly acknowledges the uncertainty over whether there is any increased risk of an adverse thrombotic event in the first month of use, stating: "Dr. Baldwin also noted that one of the primary reasons that *a 30-day nexus was not clear* was because most of the studies were not 'powered' or designed to identify the issue of whether there was an increased risk of cardiovascular events in the first 30 days of usage. Instead, the studies . . . were focused more on long-term use . . . ." (emphasis added). (*See* Plaintiff's Response To Defendant's Motion To Exclude Proposed Testimony of Thomas Baldwin, M.D. at 17.)

an "adverse inference" that such an analysis would show the Vioxx incidence curve above placebo throughout the study.[3] Once again, plaintiff, through Dr. Farquhar, would simply ignore that data that exist and substitute an assumption that has no basis in fact.

*Third*, plaintiff's assertion that the placebo line on the Kaplan-Meier graph of the APPROVe cardiovascular data is an outlier (Opp'n at 12-13) runs contrary to the known fact that the risk of adverse cardiovascular events does not rise in a linear fashion with age. AHA, Heart Disease and Stroke Statistics – 2005 Update, *available at* http://www.americanheart.org/downloadable/heart/105390918119HDSStats2005Update.pdf, at 14 (cited in Declaration of J. Michael Gaziano, M.D., M.P.H. in Support of Merck's Motions to Exclude Evidence, filed Oct. 21, 2005, at ¶ 24). More importantly, this observation, even if it were true, does not help plaintiff at all. If the placebo incidence curve was in fact an outlier and should instead have been essentially linear, that would only serve to show that the elevated risk observed in APPROVe was *overstated*. Certainly, this argument by plaintiff cannot supply any support for the admission of Dr. Farquhar's opinions.

*Fourth*, speculation about why the editors of the *NEJM* may have made certain editorial decisions regarding the publication of the APPROVe study (Opp'n. at 13-14) is simply another instance of the fallacy upon which this opposition rests – that the reliability of Dr. Farquhar's opinions can be established merely by attacking Merck's analysis and reporting of the clinical trial results.

---

[3] In fact, the final results of the ViP trial showed no statistically significant difference in the number of thrombotic cardiovascular events, heart attacks, and sudden deaths that occurred in the Vioxx group and in the placebo group. (*See* Merck's Mot. to Exclude Testimony of Plaintiff's Experts Regarding Causation ("Causation Testimony Brief"), filed Oct. 21, 2005, at App. at 4.)

B.  **Dr. Farquhar's Analysis Of Time To Event Rates For "High Risk" Groups In The APPROVe Study Does Not Supply A Reliable Basis For His Opinion In This Case.**

Dr. Farquhar's *post-hoc* analysis of APPROVe data for two "high-risk" subgroups does not bolster the reliability of his opinion on causation. Dr. Farquhar acknowledged that he would not be able to place Mr. Irvin in either high risk group as there was no evidence that he was either diabetic or had had a history of ischemic heart disease. (Farquhar Dep. at 256:11-257:25.) And, even for those two patient populations, Dr. Farquhar did not find any increased risk of adverse cardiovascular events within the first month of use. (*Id.* at 194:15-196:7.) It is for this reason that he is driven to fall back on the unreliable "assumption" of a constant relative risk throughout the period of treatment in APPROVe.

C.  **Whether Or Not Merck Provided An Analysis Of A Composite Endpoint Combining Thrombotic Events and Incidents Of Congestive Heart Failure Is Completely Irrelevant.**

Plaintiff's confused accusation that Merck failed to provide an analysis of a composite endpoint that included both thrombotic events and congestive heart failure (Opp'n at 18-19) has nothing to do with any issue in this case, let alone with the question of whether Dr. Farquhar's opinions are admissible. There is no evidence that Mr. Irvin suffered from congestive heart failure; plaintiff's experts admit as much.[4] (*See* Deposition of Thomas Baldwin, M.D. ("Baldwin Dep.") at 137:5-7, attached as Ex. 2 to the Declaration of Phillip Wittmann in Support of Merck's Reply Briefs ("Wittmann Decl."); Deposition of Colin M. Bloor, M.D. ("Bloor Dep.") at 75:3-8, attached as Ex. 3 to Wittmann Decl.; Deposition of Joseph L. Burton, M.D. ("Burton Dep.") at 211:12-14, attached as Ex. 4 to Wittmann Decl.; Deposition of Winston Gandy, M.D. ("Gandy Dep.") at 185:17-19, attached as Ex. 6 to Wittmann Decl.; October 26, 2005 Deposition

---

[4] For this reason, Merck has filed a motion in limine concerning evidence offered to show that Vioxx allegedly causes congestive heart failure and other irrelevant medical conditions.

of Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. ("Lucchesi 10/26/05 Dep.") at 389:21-25, attached as Ex. 9 to Wittmann Decl.) Even more to the point, the assertion that Merck refused to make such an analysis available to an outside reviewer for the *NEJM* has no bearing whatsoever on the issue raised by Merck's motion. Once again, plaintiff cannot establish that Dr. Farquhar's testimony is proper simply by attacking Merck.

### D. Investigator-Reported Data, When Adjudicated Data From The Same Clinical Trial Are Available, Are Not A Reliable Or Relevant Basis For Dr. Farquhar's Opinion.

Plaintiff asserts that investigator-reported events should be considered, even when adjudicated events are available. In a motion in limine filed last week, Merck explained the reasons why it is inappropriate to rely on such raw data when adjudicated data from the same studies are available. (*See* Memorandum In Support Of Motion Of Merck & Co., Inc. ("Merck") To Exclude Scientifically Unreliable And Irrelevant Medical and Scientific Evidence (Motion In Limine No. 6) at 8-15.) In her opposition here, plaintiff asserts that investigator-reported data should be considered because such data encompass a broader range of medical adverse events. (Opp'n at 19-20.) However, it is undisputed that Mr. Irvin died of a thrombotic cardiovascular event – sudden cardiac death – and therefore a broader set of raw data about other possible cardiovascular events is irrelevant.[5] Also irrelevant to the issue at hand – the admissibility of Dr. Farquhar's opinions – is plaintiff's continuing speculation about and attack on the *NEJM*'s publication of the APPROVe study. (*See* Opp'n at 21-24.)

---

[5] Plaintiff struggles to suggest that the Fitzgerald hypothesis shows that a wider set of events data is relevant. (*See* Opp'n at 23.) On the contrary, there is no evidence to show that the broader set of data from investigator reports Dr. Farquhar relies on involved cardiovascular events of any description, let alone thrombotic events.

III. **PLAINTIFF'S ATTACK ON MERCK'S INTERPRETATION OF DATA FROM OTHER VIOXX CLINICAL TRIALS LIKEWISE DOES NOTHING TO ESTABLISH THE SCIENTIFIC RELIABILITY OF DR. FARQUHAR'S PROPOSED TESTIMONY.**

Contrary to plaintiff's assertions (*see* Opp'n at 24-28), the results of the VIGOR, ADVANTAGE, and rheumatoid arthritis trials do not afford a scientifically reliable basis for an opinion on causation that is relevant in this case. In brief:

- Plaintiff's assertion that the results of the VIGOR trial, which involved only the 50 mg dose of Vioxx, have any bearing at all in this case, let alone on the admissibility of Dr. Farquhar's opinions, not only offends notions of common sense but flies in the face of the well established principle that the dose-response relationship is critical to determining causation. *See, e.g., McClain*, 401 F.3d at 1242-43.
- The ADVANTAGE study (Opp'n at 30-31.) does not provide any reliable support for an opinion by Dr. Farquhar on short-term use. This study did not evaluate the health effects of Vioxx in the first 30 days of use. It compared Vioxx against naproxen, not placebo. Most importantly, as plaintiff's own expert admits, the study revealed no statistically significant disparity in thrombotic cardiovascular events, even against naproxen. (Baldwin Dep. at 97:16-98:12, 100:13-21).
- Plaintiff's attack on the naproxen hypothesis simply continues the fallacy that demonstrating that Merck misinterpreted data *ipso facto* establishes that there is a reliable basis for Dr. Farquhar's opinions.

IV. **DR. FARQUHAR HAS NO SCIENTIFICALLY RELIABLE EXPLANATION OF THE MECHANISM BY WHICH THE SHORT-TERM USE OF VIOXX ALLEGEDLY CAUSES ADVERSE THROMBOTIC CARDIOVASCULAR EVENTS.**

Plaintiff identifies two mechanisms that Dr. Farquhar would apparently offer to explain how Vioxx allegedly can cause thrombotic cardiovascular events – the theory of a

9

prostacyclin/thromboxane imbalance ("the Fitzgerald hypothesis") and hypertension. (*See* Opp'n at 28-32.) Neither theory of mechanism is scientifically reliable.

Merck discussed the Fitzgerald hypothesis extensively in its Memorandum In Support Of Motion To Exclude Evidence Of Plaintiff's Experts Regarding Causation at pages 40-44. As that discussion indicates, an unproven hypothesis such as the Fitzgerald hypothesis does not meet the test of scientific reliability required by *Daubert*.

Any opinion from Dr. Farquhar that hypertension is the mechanism by which the short-term use of Vioxx causes thrombotic events would also lack scientific reliability and would be irrelevant. Plaintiff's experts agree that Mr. Irvin did not suffer from hypertension. (*See* Memorandum Of Merck & Co., Inc. ("Merck") In Support Of Motion To Exclude Irrelevant Medical Conditions (Motion In Limine No. 7) at page 3.) And Dr. Farquhar has identified no evidence in his report or his deposition that any hypertension associated with the use of Vioxx can lead to an adverse thrombotic cardiovascular event within a period of one month or less.[6]

V.  **THE OTHER STUDIES AND COMMENTS THAT PLAINTIFF IDENTIFIES DO NOT PROVIDE RELIABLE CONFIRMATION OF AN OPINION THAT SHORT-TERM USE OF VIOXX CAUSES SUDDEN CARDIAC DEATH.**

Plaintiff alludes to a miscellany of comments and studies that allegedly "support" Dr. Farquhar's opinions and establish their admissibility. (*See* Opp'n at 32-34.) In fact, none of these five "samples" affords any scientifically reliable confirmation of an opinion that taking

---

[6] Citing minutes of an FDA advisory committee meeting rather than any official statement of the FDA itself, plaintiff erroneously asserts that the FDA concluded that the evidence of cardiovascular risk is "stronger" for Vioxx than for other NSAIDs or COX-2 inhibitors. (Opp'n at 31.) In fact, the FDA concluded, in a comprehensive analysis of the available data on the risks posed by NSAIDs in general, including COX-2 inhibitors such as Vioxx and Celebrex, that "[t]he available data do not permit a rank ordering of these drugs with regard to CV risk." (April 6, 2005 Memorandum at 2, attached as Ex. 50 to the Declaration Of Phillip Wittmann in Support of Merck's Motions to Exclude Evidence, filed Oct. 21, 2005.)

Vioxx for a period of less than two months can cause a cardiovascular thrombotic event of the type that Mr. Irvin suffered:

- First, plaintiff has not shown, and cannot show, that comments made by David Graham, an FDA employee, at an FDA Advisory Committee meeting in February of this year (*see* Opp'n at 32) are a reliable basis for Dr. Farquhar's opinion. (*See* Memorandum In Support Of Motion Of Merck & Co., Inc. ("Merck") to Exclude Evidence of and Reference to Estimates of Dr. Graham, filed November 4, 2005, at 3-6.)  For example, Dr. Graham's actual study found *no* statistically significant increased risk of fatal or non-fatal heart attacks associated with use of Vioxx at the 25 mg dose in comparison to use of Celebrex, current use of traditional NSAIDs, or remote use of NSAIDs. (*Id.* at 3).

- Second, the Nussmeier study, which involved Bextra (valdecoxib) and Dynastat (parecoxib), looked at a specific and unique group of patients into which Mr. Irvin would not fit as there is no evidence that he ever had coronary bypass surgery.  It did not find a statistically significant difference in the rate of adverse cardiovascular events experienced by patients taking one of those drugs over the rate of such events in the placebo group.  (*See* Causation Testimony Brief, App. at 21-22.)

- Third, there are multiple reasons why the anomalous results of the Solomon study do not support the opinion Dr. Farquhar seeks to give in this case, as discussed in the Appendix to Merck's Causation Testimony Brief at 11-12.

- Fourth, the Ingenix study does not help plaintiff establish the reliability of Dr. Farquhar's opinions.  Plaintiff cites only to a secondary endpoint – cases identified through insurance claims – as opposed to the primary endpoint – cases confirmed through the review of medical records to involve cardiovascular events.  The confirmed data showed no significant risk for the first thirty days of use of Vioxx (or for any other duration of use).[7]

- Fifth, the Aetna study of health care databases that plaintiff's opposition alludes to does not bolster the reliability of Dr. Farquhar's opinions.  The study has apparently

---

[7] Plaintiff incorrectly asserts that "Merck altered a draft to delete adverse data" from the report on the Ingenix study. (*See* Opp'n at 33.)  In fact, the February 2004 version of that report that Merck cited contains the very data that plaintiff claims Merck "altered."

11

790724v.1

neither been peer-reviewed nor published, and there is almost no information provided about it. For example, there is no indication of the dose of Vioxx that patients hospitalized for myocardial infarction were taking, and no indication that in determining the controls there was any matching of cardiovascular risk factors other than age and sex.

## VI. DR. FARQUHAR MAY NOT GIVE TESTIMONY ON ETHICS, PASS JUDGMENT ON THE PROPRIETY OF MERCK'S CONDUCT, OR TESTIFY ABOUT WHAT MERCK KNEW AT ANY GIVEN POINT IN TIME IN THE GUISE OF GIVING SCIENTIFIC OPINIONS.

Plaintiff's opposition brief states unequivocally that Dr. Farquhar will not offer any opinions regarding "ethics." (Opp'n at 35.) Plaintiff and her attorneys should be taken at their word on this. Moreover, if he is permitted to testify about scientific issues, Dr. Farquhar must be precluded from stating or insinuating in the course of doing so that Merck hid or misrepresented data or otherwise acted improperly from his subjective viewpoint. Merck points this out because Dr. Farquhar's report is rife with assertions that Merck "should" have acted differently than it did in various contexts.

Dr. Farquhar must also be precluded from stating or suggesting while ostensibly giving his opinions on causation that Merck knew a given alleged fact about Vioxx. (*See* Mot. at 17-20.) Once again, Merck must point this out because Dr. Farquhar's report repeatedly purports to address Merck's knowledge – a matter upon which Dr. Farquhar is not qualified to testify and as to which the jury does not need his assistance.[8]

---

[8] Contrary to plaintiff's assertion, it is not "hypocritical" for Merck to point out that Dr. Farquhar's consultation with plaintiff's attorneys casts the reliability of his testimony into doubt. (*See* Opp'n. at 34.) It is not the fact that Dr. Farquhar consulted with claimants' attorneys *per se* that is relevant; it is the fact that he opined on which cases were likely to succeed and which cases the attorneys should drop (in other words, that he made causation determinations) *before* he had completed his review of the data from clinical trials involving Vioxx – an approach that is inconsistent with the scientific method as he himself describes it. (*See* Mot. at 9.)

## VII. CONCLUSION.

Plaintiff has failed to demonstrate that Dr. Farquhar's proposed opinions have a reliable scientific basis or are relevant to the medical causation opinion presented in this case. For the reasons stated in the memorandum submitted in support of Merck's motion and in this reply memorandum, the Court should exclude Dr. Farquhar's testimony in full.

Respectfully submitted,

/s/ Dorothy H. Wimberly

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

790724v.1

        John H. Beisner
        Charles C. Lifland
        Richard B. Goetz
        O'MELVENY & MYERS LLP
        400 South Hope Street
        Los Angeles, CA 90071
        Phone: (213) 430-6000
        Fax:    (213) 430-6407

        Attorneys for Merck & Co., Inc.

790724v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude Testimony of John Q. Farquhar, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of November, 2005.

_Dorothy H. Wimberly_

790724v.1