UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

---

**Memorandum in Opposition to Defendant's Motion to Exclude FDA Warning Letters
and Other Statements Made by FDA Employees Regarding Vioxx**

*(Plaintiff's Opposition to Motion in Limine No. 4)*

---

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard
Irvin, Jr., deceased, by and through her undersigned counsel, hereby opposes Defendant Merck
& Co., Inc.'s ("Merck") *Motion in Limine* No. 4 seeking a ruling to prohibit Plaintiff from
introducing communications from the U.S. Food and Drug Administration ("FDA") regarding
Merck's marketing and promotional practices relating to its sale of Vioxx, on the grounds that
such evidence is highly relevant, and is properly admissible for multiple purposes including:
for issues of adequacy of warning; rebutting claims of good character; rebutting claims of
efficacy or safety of Vioxx based on the FDA's "approval" or blessing; for impeachment
purposes; for showing Defendant's motive, intent, and/or state of mind; and for showing a
pattern and practice of misconduct for purposes of punitive damages.

## I. STATEMENT OF RELEVANT FACTS

Merck focuses most of its energy on arguing for the exclusion of the September 17,
2001, warning letter issued by Dr. Thomas W. Abrams, R.Ph., MBA, then acting Director of
the Division of Drug Marketing, Advertising and Communications for the FDA to Merck
President and CEO, Raymond V. Gilmartin, in which Dr. Abrams admonished Merck to cease

and remediate promotional activities dating back to June of 2000 that the FDA found misleading in regards to Merck's blockbuster drug Vioxx. In the September 17, 2001 warning letter, the FDA advised Merck of its finding that Merck had engaged in misrepresentation regarding the risks associated with Vioxx during six (6) audio conferences (led by its national speaker, Dr. Peter Holt), one (1) press release ("Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx"), and in three (3) oral presentations made by Merck sales representatives (one at the Annual Meeting of the Maryland Pharmacists Association and two at the Annual Meeting of the American Society of Health-Systems Pharmacists).

In Plaintiff's Complaint and through motion practice, Plaintiff has properly plead and alleged that Merck designed and initiated a marketing campaign that would impact physicians and consumers both directly and indirectly. Merck's marketing campaign, which included the hiring of its national speaker, Dr. Peter Holt, was designed to create a "buzz" among the public and medical community by which Vioxx's alleged benefits were promoted while simultaneously minimizing concerns and negative data relevant to its cardiovascular risks sufficient to establish, increase and maintain a multi-billion dollar market share at the expense of, and irrespective of, human safety and life.

Dr. Abrams' September 17, 2001 warning letter and the other FDA communications generically referenced in Merck's *Motion in Limine* No. 4 are directly relevant to establish Merck's efforts to foist a dangerous drug onto the market at the expense of patient safety, including the safety of Mr. Irvin, by failing to properly and adequately warn of the risks associated with Vioxx, a drug which, but for Merck's failure to warn, would never have been prescribed by Plaintiff's physician Dr. Schirmer nor ingested by deceased, Mr. Irvin. Moreover, such evidence goes directly to issues relating to the adequacy of Merck's warning and is further relevant and admissible: to rebut claims of good character and/or drug efficacy or safety; for impeachment purposes; for showing defendant's motive, intent, and/or state of

mind; and for showing a pattern and practice of misconduct for purposes of punitive damages.

## II.  STANDARD OF LAW

### A.  Relevance (Federal Rules of Evidence 401 & 402)

Relevant evidence is broadly defined as "evidence having any tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. McGinnis*, 2005 WL 2464632 *12 (La. App. 5 Cir. 2005) (quoting LSA-C.E. art. 401); see also Fed.R.Evid.401 (same). Generally, courts have supported a trial court's broad discretion in determining relevancy of evidence. *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 340 (5th Cir. 1980). However, the Fifth Circuit has noted that: "[w]hen evidence is challenged solely on the ground that it is irrelevant, it is inadmissible only if it fails to meet the definition of Rule 401--it must be without probative value as to *any* fact of consequence to the determination of the action. If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402. *See Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D.La.1993) (quoting *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 267 (5th Cir.1980) (emphasis in original).

A movant in limine has the burden of establishing that the evidence sought to be excluded on relevancy grounds is *not* relevant to *any* issue in the case.  See *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D.La.1993)

### B.  Prejudice (Federal Rules of Evidence 403)

The touchstone for excluding evidence under Rule 403 is not prejudice, but *unfair* prejudice, which must substantially outweigh the probative value of the evidence. See *Soll v.*

*Provident Life & Acc. Ins. Co.*, 2002 WL 1461891 at 6 (E.D.La. July 5, 2002)  Direct proof of

a claim does not create the *unfair* prejudice that Rule 403 intended to avoid.  See *Soll v.*

*Provident Life & Acc. Ins. Co.* at 6.  Moreover, Rule 403 is not a tool designed to permit the

trial court to "even out" the weight of the evidence, rather, the skill and acumen of

professional trial lawyers who are keenly aware of the points of contest should be brought to

bear.  *Id.*

     As observed by the Fifth Circuit Court of Appeals in *United States v. Pace,* 10 F.3d

1106 (5th Cir.1993), *cert. denied,* 511 U.S. 1149, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994):

> The exclusion of evidence under Rule 403 should occur only sparingly:
> Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially*
> outweighing probative value, which permits exclusion of relevant matter under Rule 403.
> Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the
> occasion, the application of Rule 403 must be cautious and sparing. Its major function is
> limited to excluding matter of scant or cumulative probative force, dragged in by the heels
> for the sake of its prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of
> relevance. It is not designed to permit the court to 'even out' the weight of the evidence, to
> mitigate a crime, or to make a contest where there is little or none.
> *Id.* at 1115-16 (quoting *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,*

444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979)).

## III.  RELEVANCE OF FDA WARNING LETTERS ADDRESSING MERCK'S MARKETING SCHEME FOR VIOXX

     In this litigation, Plaintiff asserts that Merck failed to adequately warn (and in so doing,

affirmatively misled) consumers, physicians and other members of the medical community,

including Plaintiff, regarding the safety and efficacy of Vioxx.  This goal was accomplished

chiefly in two ways.  First, Merck spent millions of dollars on direct-to-consumer advertising

to generate a "buzz" about Vioxx and to insure that patients would request Vioxx prescriptions

from their physicians.  Second, Merck promoted the drug directly to physicians fought on four

fronts: 1.) Merck sought out highly respected physicians—who had influence in the medical community and with the FDA—to advocate the drug as part of its medical education program; 2.) Merck sought to use the financial gain and prestige associated with its medical programs, to influence individual physicians' opinions and prescribing habits with respect to the drug; 3.) Merck disseminated misleading sales and promotional materials—including its product labeling and product information circulars—directly to individual physicians; and 4.) Merck disseminated misleading safety and efficacy information through "press releases" and other communications to the medical community. The September 17, 2001 FDA warning letter along with other FDA communications directly support Plaintiff's claims that Merck failed to provide adequate warnings and refutes Merck's arguments or defenses that it acted appropriately under the facts of the case.

However, Merck attempts to assert several arguments in support of its contention that evidence regarding Dr. Abram's warning letter and other FDA communications regarding Merck's marketing or promotional activities are somehow irrelevant. Merck has not satisfied its burden of establishing that evidence of the FDA communications regarding Merck's acts and omissions are "without probative value as to *any* fact of consequence to the determination of the action". See *Chrysler Credit Corp. v. Whitney Nat'l Bank,* 824 F.Supp. 587, 599 (E.D.La.1993)

Merck argues that such evidence is not relevant because Plaintiff's physician, Dr. Schirmer, testified that he did not recall ever reading and relying on any Merck promotional activities.

Tellingly, Dr. Schirmer testified during his deposition that he was unaware of the cardiovascular risks associated with Vioxx and that he would not have prescribed the product

had he known of the true cardiovascular risks associated with Merck's drug.  (Dep. of Schirmer @29, 70, 80-81).  Had Merck advised Dr. Schirmer fully and adequately as required under the law, Mr. Irvin would not have died from the ingestion of Vioxx.  In other words, Dr. Schirmer relied on Merck's omission in its failing to provide necessary information to him and removed the possibility that he could act as a learned intermediary.

Moreover, Merck's quoted testimony is extremely limited in scope in itself in that much of Merck's promotional activities, including its audio conferences, press releases and sales force communications were not promotional in appearance but rather cloaked in a veil of medical, scientific and educational legitimacy.  In fact, through the employment of physicians like Dr. Holt, whose conduct and improprieties are detailed in Dr. Abrams warning letter, Merck attempted to portray information provided directly and indirectly to physicians, including Dr. Schirmer as objectively informative.

Additionally, Dr. Schirmer relied upon information readily available to all medical providers through Merck "press releases" and other communications to the public and/or medical community by which Merck created a presumption in the medical community that Vioxx was accepted as an efficacious pharmacologic tool for pain management and related therapies.

Regarding Merck's marketing practices which are wholly unrelated to its sale of Vioxx, Plaintiff would state that, to the extent Merck argues at trial any of the following, Plaintiff should be allowed to present evidence to the jury in the form of FDA communications or otherwise, which would be rebut the same: that Merck's marketing and promotion of its products are fair, thorough and/or adequate; that Merck or any of its employees or agents are credible given a pattern of proper conduct in marketing or promoting its products; that Merck

always provided adequate warnings to physicians and/or should Merck offer testimony or evidence on direct by which Merck raises the issue of either Merck's marketing or promotion practices beyond the scope of its sale of Vioxx or the conduct of Merck and/or its agents.

Impeachment:  In recent depositions of corporate witnesses, Merck claimed that warning letters from the FDA were "extremely rare".  Evidence of the FDA warning letters is relevant and admissible as impeachment evidence specifically to rebut these allegations.

Adequacy of Warnings: Alternatively, even if the FDA letters are not admissible for the truth of the matter asserted, i.e., that defendant was in fact engaged in "a continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure of risk information", these letters are relevant to issues of whether defendant was on notice that its warnings were made inadequate through over promotion.  See, e.g., *Spinden v. Johnson & Johnson*, 177 N.J. Super. 605, 609 (App. Div.) *cert. denied.* 87 N.J. 376 (1981). The content of the very documents Merck attempts to exclude from the jury in this case related directly to Merck's conduct and are relevant to the issue of whether Merck failed to warn Plaintiff as to the risks associate with Vioxx.

State of Mind: The FDA letters are also relevant to show defendant's state of mind with regard to the warnings. For example, despite repeated warnings, defendant continued to minimize risk information in its labels.

Motive and Intent:  Evidence of corporate misconduct with regard to mislabeling other drugs is also relevant to show motive and intent (to increase sales) pursuant to Federal Rules of Evidence 404(b).

Punitive Damages: Additionally, as stated, communications from the FDA reflecting Merck's unwillingness to abide by the legal rules and regulations which proscribe its behavior

which bear on the issue of whether Merck acted in a fraudulent or grossly negligent manner in marketing and promoting the drug despite its knowledge of the drug's risks; and whether Merck's conduct was reckless enough to warrant punitive damages, are admissible for such purpose.

Rebuttal Evidence: As to the relevance of FDA communications which relate to Merck's conduct regarding Vioxx, including the September 17, 2001 warning letter, it is expected that Merck will attempt to infuse into the instant case at trial testimony, argument and/or a defense that Merck is not liable to Plaintiff because Vioxx was "FDA approved" or otherwise had the proverbial FDA blessing.  Moreover, it is expected that Merck will attempt to suggest that it acted appropriately at various points throughout the Vioxx era including from the investigation and new drug application phase through withdrawal from the marketplace, including both that it abided by the terms of the Federal Food, Drug, and Cosmetic Act and applicable regulations and that never minimizing potential risks associate with Vioxx nor misrepresented the Vioxx safety profile.

## IV. THE SPECIFIC DOCUMENTS MERCK SEEKS TO EXCLUDE ARE NOT UNDULY PREJUDICIAL

As stated in relevant part by the Fifth Circuit Court of Appeals in *United States v. Pace*, "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.  "...Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Pace*, 10 F.3d 1106 (5th Cir.1993), *cert. denied*, 511 U.S. 1149 (1994).

8

The probative value of the letters or statements made by the FDA are high and, to the extent

Merck argues that the jurors will not understand the context of the warning letters and mistake

them for official and final findings is misplaced and underestimates the good judgment of

jurors.

In a survey of cases throughout the country, the notion that too much time will be spent

on the introduction and surrounding testimony relating to an FDA statement or warning letter

or that juror will mistake them for formal opinions is simply not found therein.  On the

contrary, such evidence is readily admissible.  See *Kennedy v. Baxter Healthcare Corp.*, 348

F.3d 1073, 1074-75 (8th Cir. 2003) (in products liability action against manufacturer of latex

gloves, admission of document about FDA employee statements to glove manufacturers was

admissible and informal FDA pronouncements were probative of whether manufacturer acted

reasonably in designing, labeling, and selling its gloves); *Carlin v. Superior Court*, 13 Cal.4th

1104, 1114 (Ca. 1996)( FDA action or inaction, though not dispositive, may be admissible to

show whether a risk was known or reasonably scientifically knowable); *Inter Medical Supplies*

*Ltd. v. EBI Medical Systems, Inc.*, 975 F.Supp. 681, 687 (D.N.J.1997) (plaintiffs introduced an

FDA warning letter that defendant received was admissible, through testimony did not

ultimately establish seriousness of reported violations or the potential harm to patients); *U.S. v.*

*Barile*, 286 F.3d 749, 755 (4th Cir 2002)(prior statements made by FDA which indicated that it

was acceptable to provide information resulting from component testing for a FDA pre-market

submission were inconsistent with witness' trial testimony were admissible for the purpose of

impeaching witness).

In addition to the relevance and lack of prejudicial effect occasioned by the

introduction of the FDA warning letter(s) or statements of FDA personnel, it is expected that

Merck will attempt to argue and/or assert an "FDA-type" defense by which it may assert that it is not liable to the Plaintiff for strict liability product design because Vioxx was "FDA approved" or for strict liability failure to warn where it may argue that it acted appropriately and did not know of an unreasonable increased risk for injury associated with Vioxx.  In this context, FDA communications refuting such assertions is equally admissible.  Plaintiff would be prejudiced significantly if he is precluded from introducing evidence which would contradict such testimony or argument by Merck.

## V.  THE SPECIFIC DOCUMENTS MERCK SEEKS TO EXCLUDE ARE NOT INADMISSIBLE HEARSAY

Merck argues that the FDA's warning letters are inadmissible as hearsay. Such documents are clearly admissible under Fed.R.Evid. 803(8)(B) which provides in relevant part that "public records, reports and findings" are not excluded as hearsay if they set forth: "matters observed pursuant to duty imposed by law as to which matters there was a duty to report."  Recently, in *Figueroa v. Boston Scientific Corp.*, 2003 WL 21488012, at 3 (S.D.N.Y. 2003), the court was presented with the issue of whether a report or statement by the FDA which set forth health risks presented by the use of a medical device was admissible under the public records exception to hearsay rule.  The *Figueroa* court held against the manufacturer defendant, concluding that the FDA report or statement was admissible where the same were created pursuant to duty imposed by law. Figueroa 2003 WL 21488012 at 3.

With respect to Merck's argument that the FDA warning letters or communications are not trustworthy, the several cases cited by Merck are inapposite wherein Plaintiff does not argue that the FDA communications are admissible under Fed.R.Evid. 803(8)(C), but rather

the same are admissible under Fed.R.Evid. 803(8)(B).  The case cited by Merck of *Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993), relates to the courts analysis as to whether an FDA report was trustworthy as a "factual finding" under Fed.R.Evid. 803(8)(C).  Merck has failed to meet its burden of showing that the subject documents (or type of documents) are untrustworthy. *See United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (documents that fall under public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence'" ).

## VI. CONCLUSION

As demonstrated above, these FDA communications are relevant not only as general contextual evidence but for the jury's consideration of what Merck knew or should have known regarding cardiovascular risks, how it reacted to that knowledge, whether if warned properly of risks, and whether it conduct is a basis for liability, including punitive damages. Additionally, the evidence goes to Merck's state of mind, its corporate indifference to patient safety, its predisposition to seek profits even at the risk of patient health, and the necessity for punitive damages.  The probative value of the evidence is clear and is not substantially outweighed by its prejudicial effect. Furthermore, the documents are not inadmissible hearsay. For these reasons, Defendant's motion is due to be denied.

Respectfully submitted,

By: *C. Leigh O'Dell*

**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

**PLAINTIFFS' LIAISONCOUNSEL**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this **11th** day of November, 2005.