FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF

2005 NOV 14  AM 8: 4

___ G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

### Plaintiff's Memorandum in Opposition to
### Defendant's Motion in Limine to Exclude Evidence or Argument Preempted by Federal Regulations

*(Plaintiff's Opposition to Defendant's Motion in Limine No. 5)*

Plaintiff respectfully submits this memorandum of law in opposition to Defendant's motion to preclude Plaintiff from arguing that Vioxx should have had a black-box warning and that Merck misled the FDA. Defendant's motion lacks both legal and factual support, and should be denied in its entirety.

Plaintiff has alleged that Merck's labeling and product information for Vioxx was inadequate. Therefore, Plaintiff should be permitted to argue that Defendant should have added a black-box warning to the label. Contrary to Defendant's selective reading of the Code of Federal Regulations, Merck could have strengthened the warnings accompanying Vioxx, had it simply chosen to place the health of its customers ahead of Merck's profits. Merck's argument has no merit, and Plaintiff's contention that Defendant should have included a black-box warning should be allowed.

Plaintiff should also be permitted to show that Defendant misled and concealed information from the FDA. Merck's argument that Plaintiff's contentions are somehow

___ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

precluded by FDA regulations is based solely on a misrepresentation of prevailing case law

concerning federal preemption, and is patently wrong.  Plaintiff's arguments are not

preempted, and such evidence should not be excluded.

I.     **PLAINTIFF MAY PROPERLY ARGUE THAT THE VIOXX LABEL
       SHOULD HAVE CARRIED A BLACK-BOX WARNING**

Defendant argues that the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*

("FDCA") preempts Plaintiff's claim that—prior to withdrawal—Merck should have amended

the Vioxx label to include a black-box warning.  This contention is completely devoid of any

legal or factual support *See* 21 C.F.R. §201.57.  As has been well documented, from the time

Merck first began to market Vioxx in May 1999, until its subsequent withdrawal on

September 30, 2004, Defendant had received numerous warnings—from without and within

Merck—that the drug carried cardiovascular risks.  Rather than strengthen its warning label

for Vioxx and/or submit a supplemental new drug application, Merck continued selling the

drug with a label and product information that did not reflect the true risk of heart attack and

stroke associated with Vioxx.

Plaintiff is entitled to argue that Defendant should have, and could have, strengthened

the Vioxx warning label.  While it is true that the Food and Drug Administration ("FDA")

approves the warnings that appear on prescription drug labels, *see* 21 C.F.R. § 201.57(e), the

agency expressly permits manufacturers to "add or strengthen a contraindication, warning,

precaution, or adverse reaction," to reflect new risk information.  21 C.F.R. §

314.70(c)(6)(iii)(A); *see also Feldman v. Lederle Labs.*, 125 N.J. 117, 153 (1991) ("The

regulations in question have long since been changed expressly to allow pharmaceutical

companies to implement necessary changes in labeling while a supplemental new-drug

application is pending."); *Witczak v. Pfizer, Inc.*, 2005 WL 1705840 (D. Minn. July 20, 2005)

("This particular regulation was promulgated precisely to allow drug-makers to quickly strengthen label warnings when evidence of new side effects are discovered."); *Zikis v. Pfizer, Inc.*, No. 04 CV 8104, 2005 WL 1126909, at *2 (N.D. Ill. May 9, 2005) (finding that because the FDA allows for label changes under 21 C.F.R. § 314.70(c)(6)(iii)(A), "nothing prevented [defendant] from seeking to amend language in the labels to include the known side effects."); *Cartwright v. Pfizer, Inc.*, 369 F. Supp. 2d 876, 883 (E.D. Tex. 2005) ("FDA's position regarding stronger warnings by drug manufacturers, as expressed through *its own regulations*, is that a manufacturer could, and should, provide stronger warnings as soon as such a warning is warranted.") (emphasis in original); *Kurer v. Parke, Davis & Co.*, 679 N.W.2d 867, 873 (Wis. App. 2004) ("Thus, even after approval, a drug manufacturer can add warnings without prior FDA approval.").

Despite express, unambiguous language in the FDA regulations that permitted Merck to strengthen the Vioxx warning label, Defendant claims that it did not have the power to add a black-box warning because such a warning is "special." Defendant's argument is incorrect and was properly rejected in *Humeston v. Merck & Co.*

Nothing in the FDA regulations excludes black-box warnings from the specific provision that allows manufacturers to strengthen drug warnings. Indeed, under Merck's interpretation, a drug manufacturer is permitted to strengthen warnings to warn of minor side effects, but must wait for FDA approval to warn of problems that may lead to death or serious injury. Such a result would be in direct opposition to "Congress' primary goal in enacting the FDCA, which is 'to protect consumers from dangerous products.'" *Cartwright*, 369 F. Supp. 2d at 882 (citing *United States v. Sullivan*, 332 U.S. 689, 696, 68 S.Ct. 331, 335, 92 L.Ed. 297 (1948)). Merck could have added a black-box warning to the Vioxx label, and Plaintiff must

be allowed to raise this issue at trial.  The Fifth Circuit has already addressed the issue of

when a defendant manufacturer's duty to warn arises.  In *Hurley v. Lederle Laboratories Div.*

*of American Cyanamid Co.*, 863 F.2d 1173 (5th Cir.1988), the court reversed the district

court's grant of summary judgment to Defendant vaccine manufacturer. There, parents of an

infant who suffered an adverse reaction to a vaccine alleged that the prescribing physician

received an inadequate warning about its dangers. The court denied Defendant manufacturer

summary judgment because it concluded that a factual issue remained "as to whether the

manufacturer provided the FDA all the necessary and available information on which to base

the warning." *Id.* at 1179.

The only case law cited by Defendant that holds that a drug manufacturer cannot

change a warning label without FDA approval was decided under non-binding Eighth Circuit

law. *See Ehlis v. Shire Richwood, Inc.*, 233 F. Supp. 2d 1189 (D.N.D. 2002).  *Ehlis* dismissed

a plaintiff's failure to warn claim concerning the drug Adderall, "hang[ing] its hat" on the

theory that the warnings were in fact adequate, but also finding Plaintiff's claims were

preempted. *See id.* at 1195.  The court in *Ehlis* did note that there are exceptions in which a

manufacturer could change a warning label without prior FDA approval, but failed to discuss

why those exceptions did not apply in that case.  The District of North Dakota decision in

*Ehlis*, however, cannot outweigh the overwhelming number of cases that hold a manufacturer

should strengthen drug warnings when new safety information arises. *See Feldman, supra,*

125 N.J. 117; *Witczak, supra,* 2005 WL 1705840; *Zikis, supra,* 2005 WL 1126909;

*Cartwright, supra,* 369 F. Supp. 2d 876; *Kurer, supra,* 679 N.W.2d 867.

Merck could have added a black-box warning at any time that the drug was being

marketed, and its ultimate decision not to add that warning is relevant, admissible evidence.

Accordingly, Defendant's motion *in limine* should be denied.

## II.   PLAINTIFF MAY PROPERLY INTRODUCE EVIDENCE THAT SHOWS THAT DEFENDANT MISLED THE FDA

Plaintiff alleges that Merck did not meet its duty to warn of the risks of taking VIOXX. As part of the proof of their state law claims, Plaintiff intend to introduce evidence demonstrating that both before and after approval of VIOXX, Merck failed to disclose material safety information to the FDA. Defendant argues that plaintiffs cannot introduce this information because the introduction of such evidence is preempted by the Supreme Court's decision in *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). Defendant grossly overstates the limited holding of *Buckman*, which has no effect on Plaintiff's claims, or the manner of proving those claims. Here, Plaintiff does not intend to introduce evidence related to what Merck did and/or did not disclose to the FDA to prove "fraud on the FDA." Rather, the evidence of Merck's failure to provide information to the FDA is directly relevant to the Defendant's negligent conduct and to rebut any suggestion from Merck that it was operating with the "blessing" or approval of the FDA.

### A.   Plaintiff's Claims Are Not Preempted By Federal Law

It is important to note, when engaging in a preemption analysis pursuant to the Supreme Court's decision in *Buckman*, that the instant case is a pharmaceutical case, not a medical devices case. Historically, preemption defenses have met with more success in medical device cases because the Medical Device Amendments of 1976 ("MDA") to the federal FDCA contains a specific preemption provision, which provides that:

> [N]o State or political subdivision of a State may establish or
> continue in effect with respect to a device intended for human
> use any requirement (1) which is different from, or in addition
> to, any requirement applicable under [the MDA] to the device,

> and (2) which relates to the safety or effectiveness of the device
> or to any other matter included in a requirement applicable to
> the device under [the Act].

21 U.S.C. §360k(a).  Tellingly, the portion of the FDCA which governs pharmaceutical drugs does not have a similar preemption provision.  Notwithstanding this express preemption provision to the MDA, the Supreme Court, in *Medtronic v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240 (1996), held that the MDA did not preempt Plaintiff's common law design, manufacturing, and labeling claims.

Thereafter, the Supreme Court, in *Buckman*, also interpreting the Medical Device Amendments to the FDCA, held that a claim sounding in fraud-on-the-FDA conflicts with, and is therefore impliedly preempted by, the FDCA *as amended by the MDA*.  The claims in *Buckman* were focused on §510(k) process but were grounded in state law.

In *Buckman*, the plaintiffs, spinal injury patients, urged that Defendant, a private "facilitator" of FDA applications (not the manufacturer), had defrauded the FDA by participating in the submission to FDA of a false "intended use" for a medical device, orthopedic bone screws.  The defendant knew the major market for the bone screws would be for use in spinal fusion procedures.  The FDA, however, denied the application for spinal fusion use.  Thereafter, Defendant sought and obtained FDA approval for use in the extremities.  Plaintiffs claimed that the defendant's statement of "intended use" for extremities was fraudulent because Defendant actually intended to promote the bone screws "off-label" for spinal fusion use.  The plaintiffs alleged that if Defendant had not misrepresented the intended use of these screws, then the FDA would not have approved them, and Plaintiffs would not have been injured.  The *Buckman* Court opined that claims of fraud on the FDA

6

based upon violations of the agency's reporting requirements would conflict with the MDA

because it would "deter off-label use despite the fact that the FDCA expressly disclaims any

intent to directly regulate the practice of medicine, and even though off-label use is generally

accepted." *Id.* at 350-351.  Off-label use of a medical device is not the issue in this

pharmaceutical case.

The *Buckman* Court explicitly distinguished its holding from cases which recognized

the continued existence of the "traditional state tort law principles of the duty of care owed by

the producer of plutonium fuel pins to an employee working in its plant" in *Silkwood v. Kerr-*

*McGee*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), and the "common law

negligence action" such as that against the manufacturer of an allegedly defective pacemaker

lead addressed in *Medtronic v. Lohr, supra.  Buckman*, 531 U.S. at 351-52.  The *Buckman*

Court recognized that *Medtronic* "can be read to allow certain state-law causes of actions that

parallel federal safety requirements," as long as the claims were not solely based upon

violation of FDCA requirements.  *Id.* at 352-353.

Post-*Buckman*, courts considering preemption claims in pharmaceutical cases have

agreed that traditional state law causes of action are *not* preempted.  In fact, in *Globetti v.*

*Sandoz Pharms. Corp.*, No. CV98-TMP-2649-S, 2001 WL 419160, at *1 (N.D. Ala. Mar. 5,

2001), a post-*Buckman* pharmaceutical case that is factually similar to the instant case, the

United States District Court for the Northern District of Alabama ruled that *Buckman* does not

preclude common law claims concerning the drug Parlodel:

> *Buckman* must be read against the backdrop of *Medtronic, Inc.*
> *v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700
> (1996) and *Silkwood v. Kerr-McGee Corporation*, 464 U.S. 238,
> 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984).  While it is true that
> *Buckman* is based on implied or conflict preemption and *Lohr* is

> grounded on express preemption, *Silkwood* also is an implied
> preemption case.  In *Buckman* the Supreme Court distinguished
> (rather than overruled) *Silkwood* on the very basis. . . that
> *Silkwood* involved state-law claims beyond simply a "fraud-on-
> the-agency" theory.  Read together, these cases make clear that
> the only theory preempted is that resting exclusively on the fact
> that the federal agency was itself the victim of the fraud.
> Although *Buckman* precludes a plaintiff from seeking damages
> because the defendant lied to the FDA, it is something
> completely different to contend that plaintiff is precluded from
> seeking damages for injuries due to lies to her.  Notwithstanding
> that information may have been misrepresented to or concealed
> from the FDA, once defendant undertook to misrepresent those
> facts to plaintiff, or to conceal from plaintiff facts it was bound
> to disclose, the plaintiff's claim no longer rests simply on the
> assertion that the agency was defrauded but on the additional
> fact that she was defrauded.

*Id.* at *2 (N.D. Ala. 2001); *accord, Brasher v. Sandoz Pharms. Corp.,* 160 F. Supp. 2d 1291

(N.D. Ala. 2001).

Similarly, in *Caraker v. Sandoz Pharms. Corp.*, 172 F.Supp. 2d 1018 (S.D. Ill. 2001),

another factually similar post-*Buckman* pharmaceutical case, the Southern District of Illinois,

after an in-depth analysis, found that Plaintiffs' common law claims were not preempted by

*Buckman* because:

> In this [pharmaceutical] case, there is no "clear evidence" of
> intent to preempt by means of a conflict.  First, Congress
> expressly preempted other areas in Title 21, but it chose not to
> with respect to prescription drugs.  Second, as stated, it is not
> clear whether FDA approval meant a drug manufacturer was
> meeting minimum standards of safety or conclusive standards on
> safety.  Third, the FDA's specific position on implied
> preemption of products liability cases like these is not clear.
> Fourth, [a pharmaceutical defendant] may unilaterally
> strengthen a warning without prior FDA approval and the FDA
> has cited without criticism cases that have found such a duty.
> Fifth, it rather difficult to believe that Congress or the FDA
> would, without comment, remove all means of judicial redress
> for those injured. . . .All these things point to one conclusion:
> [the pharmaceutical defendant] has failed to show by clear

> evidence that Congress or the FDA intended on displacing
> almost the entire state products liability scheme with respect to
> prescription drugs by means of a conflict.  Without this clear
> evidence of preemptive intent, this Court is wary to immunize
> the entire pharmaceutical drug industry which Congress itself
> believed needed to be better watched.  Therefore, this Court
> applies the presumption and finds that the [plaintiffs'] products
> claims based on failure to warn theories are not impliedly
> preempt.

*Caraker* at 1038 (citations omitted).  *See also, Eve v. Sandoz Pharms. Corp.*, 2002 WL

181972 (S.D. Ind. 2002).

In other post-*Buckman* pharmaceutical cases, courts have rejected Defendant's

arguments that *Buckman* preempts Plaintiff's state law claims.  In *Dawson v. Ciba-Geigy

Corp.*, 145 F.Supp. 2d 565 (D.N.J. 2001), the District of New Jersey rejected the

pharmaceutical defendant's attempts "to recharacterize Plaintiffs' [state law]

misrepresentation claims as 'fraud on the FDA' claims" in reliance on *Buckman*:

> Plaintiffs' Complaint here does not allege a claim of "fraud on
> the FDA," but rather alleges that Defendants deceived the
> public, including Plaintiffs.  The Supreme Court in *Buckman*
> expressly distinguished "fraud on the FDA" claims from other
> state tort claims for fraudulent labeling, such as those that the
> Court had previously addressed in *Medtronic v. Lohr*, 518 U.S.
> 470 (1996). . . In *Buckman,* the Supreme Court distinguished
> *Medtronic* by stating "although Medtronic can be read to allow
> certain state-law causes of actions that parallel federal safety
> requirements, it does not and cannot stand for the proposition
> that any violation of the FDCA will support a state law claim."
> *Buckman* thus clarified that traditional state tort law claims
> (even those which parallel FDCA requirements) are not
> necessarily preempted by the FDCA and are not necessarily the
> same as "fraud on the FDA" type claims.

*Id.* at 573 (citations omitted); *see also Witczak*, 2005 WL 1705840 ("Defendant's preemption

argument ultimately fails because Congress has not expressed a specific intent to preempt state

consumer-protection laws in the area of prescription-drug labeling."); *Cartwright*, 369 F. Supp. 2d at 883 ("Consistently, courts have held that state law failure to warn cases are not preempted by the FDCA or its associated regulations."); *Bryant v. Hoffman-La Roche, Inc.*, 585 S.E.2d 723, 725 (Ga. App. 2003) ("[Plaintiff] does not assert a fraud claim or a violation of federal law; rather he asserts that [defendant] violated duties arising under state statutory and common law. And we do not construe *Buckman* as holding such claims are preempted."); *Kittleson v. Sandoz-Pharm. Corp.*, Civil No. 98-2277, at 7 (D. Minn. Sept. 19, 2001) ("Unlike the claim in *Buckman*, Plaintiff's claims are based on separate duties under traditional state law and not merely full and fair disclosure to the FDA. . . .Accordingly, this Court concludes that *Buckman* does not preempt Plaintiff's state court claims not grounded entirely on the duty of disclosure to the FDA, but are rather premised on separate duties under state law. . . .").

Plaintiff has not alleged a cause of action for fraud-on-the-FDA. Plaintiff has alleged violations of various state law statutes and common law duties, which are expressly not preempted by *Buckman*. The overwhelming majority of post-*Buckman* cases have concluded that the FDCA does not preempt state law failure to warn claims. Plaintiff's claims are not preempted, and Plaintiff may properly introduce evidence that supports her claims.

The cases cited by Merck for their proposition that evidence of Defendant's improper dealings with the FDA are preempted do not support their argument. The court in *Bouchard v. American Home Prods. Corp.*, 213 F. Supp. 2d 802 (N.D. Ohio 2002) acknowledged that in a situation such as that in the instant case, plaintiffs may introduce evidence that a drug manufacturer withheld information from the FDA. *See id.* at 812 ("If, as Bouchard has stated, her claims are based on direct fraud against her and her healthcare provider, rather than the FDA, then her claims are not preempted, and evidence concerning what information was and

10

was not provided to the FDA might still be relevant."). Defendant also cites *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342 (Minn. Ct. App. 2001), even though *Flynn* involved a plaintiff alleging only a cause of action for fraud-on-the-FDA, and not for state law violations. In denying a preemption motion by a pharmaceutical defendant that relied heavily on *Flynn*, the District of Minnesota in *Kittleson v. Sandoz Pharms. Corp.* noted that "as in *Buckman*, the *Flynn* Court concluded that plaintiff's claims were preempted because they were solely based on violations of federal enactments and not traditional state tort law. . . Accordingly the present case is distinguishable from *Flynn* and *Buckman* because plaintiffs' claims are based upon separate duties arising under traditional state tort law and not solely full and fair disclosure to the FDA." *Id.* at 7, n. 4. Plaintiff's claims are based on exclusively Merck's violations of state tort law, and neither the claims nor the evidence necessary to prove those claims are preempted.

Similarly, Defendant cannot rely on *Webster v. Pacesetter, Inc.*, 259 S. Supp. 2d 27 (D.C. Cir. 2003) or *Cupek v. Medtronic, Inc.*, 405 F.3d 421 (6th Cir. 2005) to support their position. *Webster* was a medical device case, and the claims involved were preempted for the reasons set forth in *Buckman*. Evidence to prove those claims were therefore preempted for the same reasons. The plaintiff in *Cupek* alleged a claim for negligence *per se* in defendant's failure to comply with federal regulations—again, a fraud-on-the-FDA claim—and also cannot be compared to the instant case premised on state law causes of action. Plaintiff's claims are not preempted by federal law, and neither is the evidence to prove those claims.

**B.     Plaintiff may introduce evidence of Def's Subsequent
        <u>Conduct Before the FDA</u>**

Defendant attempts to assert that Plaintiff's introduction of correspondence relating to

11

their misconduct subsequent to the Plaintiff's death is irrelevant and unduly prejudicial. However, just as information withheld from the FDA prior to Plaintiff's death is relevant, so too is evidence of subsequent misconduct. Plaintiff alleges that Merck did not meet its duty to warn of the risks of taking Vioxx and failed to disclose to the FDA material adequate safety information. Merck's wrongful conduct did not stop on May 15, 2001, the day Plaintiff died. For that reason, evidence relevant to Defendant's subsequent wrongful conduct should be permitted. As the Fifth Circuit has held, "[I]t is . . . settled law that prior or subsequent incidents may be introduced to establish that the defendant possessed the requisite knowledge or intent, or that there is a consistent pattern, scheme of operation, or similarity of method. *U.S. v. Alston*, 460 F.2d 48 , 55 (5th Cir. 1972). Thus, "testimony regarding prior *and subsequent events* [is] relevant" to Defendant's ongoing misconduct is relevant and admissible. *Id.* Furthermore, any potential prejudice to the Defendant can be cured by a limiting instruction of the evidence in question. *Id.* at fn. 3. For these reasons, such evidence is relevant and admissible.

### C.   Plaintiff May Introduce Evidence of What the FDA Would Have Done Had Defendant Disclosed Relevant Safety Information

Defendant next claims that Plaintiff should not be allowed to show that Merck failed to provide material safety information to the FDA because that evidence would force the jury to second-guess the FDA-approval process. *See* Def. Mem. at 9-10. However, Plaintiff should be allowed to introduce evidence of what the FDA would have done, had vital information not been withheld. Such an argument does not force a jury to evaluate the adequacy of the FDA-approval process; rather, it assumes that the FDA will make the proper determination of a drug's safety, so long as the agency is given all relevant materials and information. Plaintiff's

evidence that Merck did not disclose significant safety data places all of the blame on

Defendant, not the FDA.  Defendant points only to inapposite cases in support of its tenuous

arguments.  For example, *Horn v. Thoratec Corp.*, 376 F.3d 163 (3d Cir. 2004) involved heart

pumps, and therefore implicated the Medical Devices Amendments to the FDCA.  As such,

Plaintiff's claims were expressly preempted by the terms of the MDA.  Notably, a portion of

the *Horn* Court's opinion that explained why the Horn plaintiffs could not introduce evidence

concerning defendant's compliance with FDA regulations was omitted from Defendant's

brief:  "[The] FDA determines the scope of a device, including the components it comprises,

and the appropriate regulatory pathway for the device. . . .[The] FDA subsequently determines

whether the device meets the PMA approval standard."  *Horn*, 376 F.3d at 178 (quoting an

FDA *amicus* brief) (ellipses in original).  Clearly, the increased FDA involvement in the

development and approval of medical devices makes those actions unsuitable for claims that

information was withheld from the FDA.  In the instant pharmaceutical case, however, such

evidence is allowed, both under the common law and as authorized by the PLA.

Defendant also cites *Dusek v. Pfizer, Inc.*, 2004 WL 2191804 (S.D. Tex. Feb. 20,

2004), in support of its argument that evidence that Merck concealed safety data would lead to

improper doubting of FDA procedures.  In *Dusek*, plaintiffs alleged that defendant's drug

Zoloft caused the decedent to commit suicide.  *See id.* at *1.  Unlike the instant case, where

the FDA had expressed serious concern about the safety risks of Vioxx, in *Dusek*, the FDA

consistently rejected plaintiffs' contentions that Zoloft caused suicides, even after the

decedent's death.  The Court noted that the case-specific facts differentiated *Dusek* from most

pharmaceutical cases:

> While the Court is aware that the majority of district courts facing this issue have
> declined to find preemption, the facts before this Court are unique.  Unlike the record

before other district courts, the FDA has made known its position on the preemption
issue through an *amicus* brief . . . and has given the causation issue detailed analysis
several times.  Where the FDA asserts its view that it would consider any warning
attesting to a causal link between Zoloft and suicide to be false and misleading,
Plaintiffs' failure to warn claim, which is based on the omission of precisely the
causation warning rejected by the FDA, conflicts with federal law.  *Thus, this Court's
holding is a narrow one.*

*Id.* at *10 (emphasis added).

Evidence showing that Defendant withheld information from the FDA is

relevant, admissible, and not preempted by federal law.  As such, Plaintiff should be permitted

to introduce evidence of Merck's misconduct.

## CONCLUSION

For the foregoing reasons, Defendant's motion to exclude evidence that Merck

misled the FDA and statements of FDA employees should be denied in its entirety.

Respectfully submitted,

By:_____

**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750
**PLAINTIFFS' LIAISONCOUNSEL**

Christopher A. Seeger, Esquire
 SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

15

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this **11th** day of November, 2005.

_____