UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

**Memorandum in Opposition to Defendant's Motion to Exclude Evidence or Argument Regarding Alleged Unethical Conduct Associated With Clinical Trials**

*(Plaintiff's Opposition to Motion in Limine No. 10)*

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., deceased, by and through her undersigned counsel, hereby opposes Defendant's Motion in Limine to Exclude Evidence or Argument Concerning Alleged Unethical Conduct Associated with Clinical Trials on the grounds that such evidence is highly relevant, and is properly admissible.

Defendants seek a blanket preclusion of any evidence regarding Defendant's misconduct with regard to unethical conduct related to clinical trials of Vioxx. While not specifically identifying the actual unethical conduct in any particular clinical trial it seeks to exclude, Merck proposes three general categories of unethical conduct that should be excluded from evidence: (1) evidence that Merck failed to warn clinical trial participants of alleged risks, (2) endangered trial participants' by failing to stop certain trials, and (3) conducted clinical trials for marketing purposes only. Contrary to Merck's conclusory statement that such evidence is plainly

inadmissible, it is clear that not only is such evidence admissible, it is highly relevant to Plaintiff's case.

Evidence of this unethical conduct in clinical trials is not sought to be introduced solely for purposes of demonstrating that study participants were put at unnecessary risks, but also to prove that Merck sought to maximize sales and profits at the expense of consumer safety. Specifically, evidence of unethical conduct in clinical trials involving the failure to warn participants of risks and evidence of failure to stop trials when risks became known is relevant to show that Merck's decisions regarding drug safety were made not by adherence to general ethical principles, but instead made by determinations based on marketing outcomes. Further, the evidence that Merck actually performed studies which were done solely for marketing purposes, so that physicians could be convinced the drug had been rigorously studied, is highly relevant to intent and knowledge. This evidence further demonstrates Merck's pattern of unreasonable and unethical conduct – evidence of which is directly relevant to Plaintiff's claim for punitive damages.

Merck attempts to argue that such evidence is irrelevant because neither Mr. Irvin nor his prescribing physician, Dr. Schirmer, participated in clinical trials. This argument fails to recognize that Merck marketed this drug to physicians and the public as the most studied drug in history. Merck relied on the clinical trials to create a "buzz" regarding Vioxx, that was matched with a marketing plan to influence prominent physicians and thought leaders regarding the safety and efficacy of the drug. These clinical trials formed the basis for this Vioxx "buzz" and thought leader influence. Evidence of Merck's conduct, is relevant to Merck's Knowledge about Vioxx's dangerous propensities as well as its failure to warn.

## ARGUMENT

### I.  STANDARD OF LAW

#### A. Relevance (Federal Rules of Evidence 401 & 402)

Relevant evidence is broadly defined as "evidence having any tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. McGinnis*, 2005 WL 2464632 *12 (La. App. 5 Cir. 2005) (quoting LSA-C.E. art. 401); *see also* Fed.R.Evid.401 (same). Generally, courts have supported a trial court's broad discretion in determining relevancy of evidence. *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 340 (5th Cir. 1980). However, the Fifth Circuit has noted that: "[w]hen evidence is challenged solely on the ground that it is irrelevant, it is inadmissible only if it fails to meet the definition of Rule 401--it must be without probative value as to *any* fact of consequence to the determination of the action. If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402. See *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D.La.1993) (quoting *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 267 (5th Cir.1980) (emphasis in original).

A movant in limine has the burden of establishing that the evidence sought to be excluded on relevancy grounds is *not* relevant to *any* issue in the case. See *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D.La.1993)

#### B. Prejudice (Federal Rules of Evidence 403)

The touchstone for excluding evidence under Rule 403 is not prejudice, but *unfair* prejudice, which must substantially outweigh the probative value of the evidence. *See Soll v. Provident Life & Acc. Ins. Co.*, 2002 WL 1461891 at 6 (E.D.La. July 5, 2002) Direct proof of

a claim does not create the *unfair* prejudice that Rule 403 intended to avoid. See *Soll v. Provident Life & Acc. Ins. Co.* at 6.

As observed by the Fifth Circuit Court of Appeals in *United States v. Pace,* 10 F.3d 1106 (5th Cir.1993), *cert. denied,* 511 U.S. 1149, 128 L.Ed.2d 899 (1994):

> The exclusion of evidence under Rule 403 should occur only sparingly: Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of relevance. It is not designed to permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.
>
> *Id.* at 1115-16 (quoting *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979)).

### III. EVIDENCE OF DEFENDANT'S MISCONDUCT IN RELATION TO CLINICAL TRIALS INVOLVING VIOXX IS RELEVANT

Defendant contends that its wrongful acts and unethical conduct in clinical trials are not relevant to any disputed issue in this case. As discussed, *supra*, determinations of relevance in a vacuum are nearly impossible. Plaintiff does not agree that Defendant's practice and propensity of minimizing risks in the conducting of clinical trials had no bearing on the facts which led to Mr. Irvin's death. In fact, had Merck fulfilled its ethical duties in conducting these clinical trials, it is likely that the number of participants would have been much smaller, many studies would not have been completed because of safety reasons, the drug would not have been approved and many lives would have been saved including Mr. Irvin's.

With respect to Defendant's Motion which seeks to exclude evidence of Dr. Benedict Lucchesi's opinions with respect to Merck's failure to stop clinical trials in light of adverse

risk information, those topics have been fully covered by the *Daubert* responses with respect to Dr. Lucchesi. However, it should be noted, that while Merck attempts to argue that the admissibility of such evidence is governed by Rule 702, the truth is that such evidence is probative, not to whether Merck acted unethically (whether or not such issue would be proper expert opinion), but probative as to probative as to Merck's actions to prevent risk information related to Vioxx from being known publicly, or by the FDA.

Another major issue upon which evidence of Defendant's other misconduct has bearing is punitive damages. Focusing on Merck's failure to disclose risks to clinical trial participants, failing to stop clinical trials for safety reasons, and performing studies purely for marketing purposes, this evidence is clearly relevant and admissible with regard to adequacy of warning, to punitive damages, to character, and to notice, intent, motive, and state of mind.

Merck claims that such evidence is false. If this true, Merck will have ample opportunity to address these matters at trial. But Merck's blanket denials are not a basis for denying Plaintiff the opportunity to present such evidence.

Merck has not satisfied its burden of establishing that evidence Merck's unethical conduct with respect to Vioxx clinical trials is "without probative value as to *any* fact of consequence to the determination of the action". See *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D. La.1993).

### A.     The Cases Cited by Defendant Are Inapposite

The cases cited by Defendant do not support Defendant's contention that unspecified evidence of corporate malfeasance has no relevance to any claim or defense in this case. Far from bolstering Defendant's motion, these cases actually support Plaintiff's argument that

motions to exclude are fact sensitive and should not be granted without knowing in advance what the evidence is, and how it was intended to be used.

### B. Evidence of Defendant's Misconduct Is Relevant and Admissible Evidence for Purposes of Impeachment, and to Show Motive, Notice, Intent, and State of Mind.

In recent depositions of corporate witnesses, as well as in the recent trials Merck has claimed that it is an ethical company which always puts patient safety first. Evidence of the unethical clinical trials conduct is relevant and admissible as rebuttal and impeachment evidence specifically to rebut these allegations. The unethical conduct evidence is also relevant to show defendant's state of mind with regard to downplaying risks such that the marketing opportunities for Vioxx could be fully realized.

### C. Evidence Regarding Defendant's Unethical Clinical Trials Conduct Is Relevant and Admissible to FDA Issues

It is anticipated that Merck may also assert that compliance with FDA regulations with respect to clinical trials proves that Merck was not negligent. Plaintiff is entitled, therefore, to rebut these assertions with evidence of Merck's unethical conduct. Merck will likely attempt to rely on the FDA's approval, to demonstrate that the clinical trials were proper, and that Vioxx was safe and effective. It is expected that Merck will attempt to infuse into the instant case at trial testimony, argument and/or a defense that Merck is not liable to Plaintiff because Vioxx was FDA approved. Evidence of Merck's conduct is relevant to counter these assertions.

### D. Evidence of Defendant's Misconduct Is Relevant and Admissible with Respect to Plaintiffs' Punitive Damages Claims.

Plaintiff in this litigation seeks recovery of punitive damages as the result of the Defendant's conduct. Defendant's knowledge and conduct is highly relevant to Plaintiff's punitive damage claim.

Under Florida law, Florida Statutes section 768.72, section (2) "A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:... (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage;  (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Clearly, under Florida law, evidence of Merck's conduct with respect to clinical trials, and how those decisions demonstrate that Merck showed a "conscious disregard: for patient safety" are relevant and admissible in regard to punitive damages.

In order to support punitive damages claims, the United States Supreme Court requires evidence showing that the defendant engaged in a pattern and practice of misconduct and evidence proving the potential harm or actual harm caused to others as the result of that conduct.  The Supreme Court, in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, (1993), not only approved the admission of extensive evidence and argument regarding the potential harm to others that might have occurred as a result of the defendant's misconduct, it quoted extensively from the arguments of counsel to that effect. Id. at 461-462

Additionally, more recently, the Supreme Court confirmed that evidence of the effect of defendant's misconduct on others is *required* as part of the reprehensibility analysis in determining whether the amount of punitive damages awarded is constitutional:

> [T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. *We have instructed courts to determine the reprehensibility of a defendant by considering whether*: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; *the conduct involved repeated actions or was an isolated incident*; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Gore*, 517 U.S., at 576-577, 116 S.Ct. 1589.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1521 (2003) (emphasis added). In *Gore*, the Supreme Court also noted that "evidence that a defendant has *repeatedly engaged in prohibited conduct* while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." 517 U.S. at 577 (1996).

Thus, under *TXO*, *Gore* and *Campbell*, a highly relevant consideration for punitive damages purposes is evidence that Defendant was engaged in a "continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure of risk information" as evidenced by the unethical conduct by Merck with respect to Vioxx clinical trials.

### E. Evidence of Defendant's Unethical Conduct Is Admissible to Show Conformity with Merck's Character

Fed R.Evid. 406(a) provides that "Evidence of the routine practice of an organization, whether corroborated or not, and regardless of the presences of eyewitnesses, is relevant to

prove that the conduct of the…organization on a particular occasion was in conformity with the habit or routine practice." This standard is more liberal than almost any standard imposed by any state court regarding "habit" evidence. The evidence of Merck's unethical conduct in clinical trials regarding failure to disclose risks to participants is relevant to show that when Merck failed to warn Mr. Irvin or his prescribing physician about the risks of Vioxx, it was acting in conformity with its routine practice.

Rule 405 of the Federal Rules of Evidence provides that "in all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." Specifically, Rule 404(b) states that where evidence of other wrongs or acts may not be admissible to prove the character, it may be admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…" Therefore, evidence of Merck's unethical conduct with respect to clinical trials, in an effort to minimize risks and create marketing opportunities for Vioxx, is relevant and admissible to rebut any argument by Defendant that it was acting in a reasonable manner with regard to Vioxx, and is relevant to show the motive and proof of a plan with respect to minimizing the risks associated with Vioxx.

### F. Evidence of Defendant's Unethical Conduct Is Not Overly Prejudicial

As stated in relevant part by the Fifth Circuit Court of Appeals in *United States v. Pace*, "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403. ... Its major function is limited to excluding matter of scant or cumulative probative

force, dragged in by the heels for the sake of its prejudicial effect. *United States v. Pace*, 10 F.3d 1106 (5th Cir.1993), *cert. denied*, 511 U.S. 1149 (1994).

The probative value of Merck's failure to disclose risks in its clinical trials, to not act upon receipt of adverse information in those clinical trials, and to undertake clinical trials solely for marketing purposes is highly relevant but not unfairly prejudicial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety, and reserve rulings on specific evidence for trial, when the evidence and context in which it is advanced, is clarified.

Respectfully submitted,

By: /s/ Andy D. Birchfield
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750
**PLAINTIFFS' LIAISONCOUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH,BENJAMIN,DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)
**PLAINTIFF'S STEERING COMMITTEE**

Christopher A. Seeger, Esquire
 SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this **11th** day of November, 2005.

_____