UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

**Plaintiff's Memorandum in Opposition to Defendant's Motion in Limine to Exclude Evidence or Argument Regarding Alleged Misconduct Unrelated to Vioxx**

*(Plaintiff's Opposition to Defendant's Motion in Limine No. 16)*

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., by and through her attorneys, hereby opposes Defendant's Motion in Limine to Exclude Evidence or Argument Regarding Alleged Misconduct Unrelated to Vioxx on the grounds that such evidence is in fact related to Vioxx, and that it may be properly admissible for purposes including: rebutting claims of good character; for impeachment purposes; for issues of adequacy of warning; for showing that defendant was on notice regarding the defect in the warning; for showing defendant's motive, intent, and/or state of mind; and for showing a pattern and practice of misconduct for purposes of punitive damages. Moreover, defendant's motion is improper because it fails to specify exactly what evidence it seeks to exclude, thereby inappropriately requesting that the Court rule on evidence that has yet to be presented. Since the only evidence defendant specifically describes are "FDA letters," as an example, Plaintiffs' brief focuses on

1

some FDA warning letters to Merck concerning its marketing of other Merck drugs.

## STATEMENT OF FACTS

Defendant's seek a blanket preclusion of any evidence regarding defendant's misconduct with regard to drugs other than Vioxx without delineating what that misconduct might be other than misconduct regarding Merck's "manufacture or marketing" of other products and evidence in the form of "letters from the FDA regarding other Merck products." (Def. Mot. at 2.)

In its Motion in Limine #16, Defendant seeks to exclude Plaintiff's exhibits 1.0976-1.0995 and 1.1011 as irrelevant in this case. However, these exhibits consist of FDA Warning Letters which clearly illustrate Defendant's consistent pattern and practice of minimizing risk data in comparison with therapeutic claims and excluding data from promotional materials altogether. See Ex. P.1.0976-P.1.0995 (Ex. A).

These warning letters are not singular instances relevant only to the individual drug at issue in each, but rather are illustrative of an endemic business model which strives to maximize sales and profits at the expense of consumer safety. Indeed, in a June 16, 1998, warning letter from the FDA to Merck, the agency chronicles defendant's "corporate policy toward minimizing the presentation of such disclosures" and Merck's repeated failure "to present information relating to contraindications, warnings, and other risk information with a prominence and readability reasonably comparable to the presentation of information relating to the effectiveness of the drug." Significantly, the FDA warned that it was "seriously concerned that the dissemination of the above listed promotional materials demonstrate *a continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure of risk information.*" *Id.* at 4 (emphasis added). In juxtaposition,

2

during a recent deposition of former-Merck CEO, Raymond Gilmartin, Merck claimed that FDA warning letters for its products were "highly unusual." At 961 (Ex. B) Both Plaintiffs and Defendant have Mr. Gilmartin listed on their trial witness lists.

## ARGUMENT

I.  **IN LIMINE STANDARD**

Relevant evidence is broadly defined as "evidence having any tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. McGinnis*, 2005 WL 2464632 *12 (La. App. 5 Cir. 2005) (quoting LSA-C.E. art. 401); *see also* Fed.R.Evid.401 (same). Generally, courts have supported a trial court's broad discretion in determining relevancy of evidence. *Ramos v. Liberty Mut. Ins. Co.,* 615 F.2d 334, 340 (5th Cir. 1980). However, reviewing courts have noted that, while a trial court is "justified in exercising a most liberal discretion in disposing of a matter ... the case is rare indeed where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof." *Passaic Valley Sewerage Commissioners v. Geo. M. Brewster and Son, Inc.,* 161 A.2d 503, 509 (N.J. 1960) (citations omitted). Thus pre-trial motions seeking to exclude evidence should be granted with caution. *U.S. v. Lachman,* 48 F.3d 586, 590 (1st Cir. 1995). In no case should motions *in limine* work to substitute the judgment of the court, rather than the jury, as the ultimate fact-finder. Indeed, where motions *in limine* force the trial judge to become the determiner of expert qualifications, to make determinations on credibility, or to analyze the evidence, the motions should be denied. *Kaminsky v. Condell Memorial Hosp.,* 1993 WL 528093 at *3 (N.D. Ill. 1993)

3

(denying motion *in limine* where it asked the court to effectively "substitute its judgment as a matter of law on an issue that appears to be within the jury's province").

**II.    DEFENDANT'S MOTION SHOULD FAIL BECAUSE IT IS PREMATURE AND OVERLY BROAD**

As a threshold matter, *in limine* motions are not appropriate if they require the court to engage in an analysis of credibility or of evidence yet to be presented; in such cases, the motions should ordinarily be denied until a sufficient predicate is established. *See U.S. v. Posner*, 594 F.Supp. 923, 927-28 (S.D. Fla. 1984); *Violette v. Armonk Assocs., L.P.*, 849 F.Supp. 923, 930-31 (S.D.N.Y.1994); *United States v. Feola*, 651 F.Supp. 1068, 1129 (S.D.N.Y.1987); *see also Arnett v. Aspin*, 846 F.Supp. 1234 (E.D.Pa.1994) (denying as premature motion *in limine* to exclude evidence).

The purpose of such a standard is clear: requiring a trial court to rule on an evidentiary exclusion, without a showing of what that evidence actually is, requires ruling in a vacuum. Here, defendant has failed to identify any particular item of evidence or even a general type of evidence regarding any alleged misconduct unrelated to Vioxx that they seek to preclude, other than "FDA letters" or "[f]acts about Merck's manufacture or marketing of products other than Vioxx." Def. Brief at 2. Defendant's attempt to obtain a blanket exclusion fails to take into consideration the fact that some evidence related to Merck's business practices, as used for Vioxx and for its other drugs, may clearly be appropriate and relevant depending upon the context. Defendant provides absolutely no factual support for their blanket claim that all such evidence can -- or should -- be precluded.

Clearly, since there are varying grounds upon which the documents at issue might be determined to be admissible, no blanket order can properly issue and the determination of

4

whether particular documents or statements are admissible must be made at the time such evidence is actually presented and in response to an appropriate and timely objection from defendant.

### III. EVIDENCE OF DEFENDANT'S MISCONDUCT IN RELATION TO DRUGS OTHER THAN VIOXX IS RELEVANT

Defendant contends that its wrongful acts related to its other products are not relevant to any disputed issue in this case. As discussed, *supra*, determinations of relevance in a vacuum are nearly impossible. The only examples given are that "letters from the FDA regarding other Merck products" are neither relevant to the scientific question of causation nor the prescribing decision of Plaintiff's doctor. Plaintiff does not agree that Defendant's practice and propensity of minimizing risks in advertising materials while emphasizing false claims of efficacy had no bearing on Plaintiff's doctor's prescribing practice. See *MacMorris v. Wyeth, Inc.*, 2005 WL 1528626 at *2-3 (M.D.Fla. 2005) (direct to consumer marketing may eviscerate the learned intermediary doctrine).

Moreover, causation is not the only disputed issue in this case. Also in controversy is the adequacy of Merck's warnings for Vioxx. Another major issue upon which evidence of defendant's other misconduct has bearing is punitive damages. Focusing on defendant's FDA warning letters for other drugs (since "FDA letters" are the only items specifically mentioned in defendant's brief), this evidence is clearly relevant and admissible with regard to adequacy of warning, punitive damages, evidence of notice, intent, motive, state of mind, for impeachment and as character evidence to prove actions in conformance and to rebut allegations of good conduct. Evidence regarding other pharmaceutical companies, while similarly not enumerated, can be relevant to issues of standard of care and feasibility. When the evidence is relevant and important to one of these issues, it is generally conceded that the

5

prejudicial effect may be outweighed by the probative value. *Love v. U.S.*, 386 F.2d 260, 266 C.A.N.D. 1967 (8th Cir. 1967), *cert. denied*, 390 U.S. 985 (1968); *see also U.S. v. Sheffield*, 992 F.2d 1164 (11th Cir. 1993); *Buatte v. U.S.*, 350 F.2d 389 (9th Cir. 1965); *U.S. v. Spatuzza*, 331 F.2d 214 (7th Cir. 1964).

### A.   The Cases Cited by Defendant Are Inapposite

The cases cited by defendant do not support defendant's contention that unspecified evidence of other corporate malfeasance has no relevance to any claim or defense in this case. Far from bolstering defendant's motion, these cases actually support plaintiff's argument that motions to exclude are exquisitely fact sensitive and should not be granted without knowing in advance what the evidence is, and how it was intended to be used.

For example, the Bendectin cases cited by Defendant are from different jurisdictions (the Northern District of Illinois, and the Supreme Court of Idaho) and are distinguishable, both factually and legally from the case at bar. *See, Hagen v. Richardson-Merrell*, 697 F.Supp. 334, 340 (N.D.Ill. 1988); *Cosgrove v. Merrell Dow Pharm., Inc.*, 788 P.2d 1293, 1296 (Idaho 1989). *In re Richardson-Merrell Inc., "Benedictin" Prods. Liab. Litig.*, 624 F. Supp. 1212, 1249 (S.D. Ohio 1985). These cases involve the exclusion of expert testimony that defendant Merrell's involvement with the drugs Thalidomide and MER-29 showed a habit of fraud, falsification of data and malice in support of plaintiffs' common law fraud and punitive damages claims. First, it is notable that this Court is not bound these rulings. Second, although the exact evidence regarding the other Merrell drugs is not enumerated, it can be distinguished by the fact that in the instant case, the FDA clearly stated that defendant exhibited "a continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure risk information".

Therefore, the evidence here is direct, not inferential. Furthermore, it is notable that in the Benedectin cases the courts were evaluating the relevance of the evidence to plaintiff's common law fraud claims. As discussed in depth infra, the FDA letters in the instant case are evidence of a pattern or practice of misconduct going to punitive damages and are relevant for purposes of impeachment and to show motive, notice, intent and state of mind.

### B. Evidence of Defendant's Misconduct Is Relevant and Admissible Evidence for Purposes of Impeachment, and to Show Motive, Notice, Intent, and State of Mind.

In recent depositions of corporate witnesses, Merck claimed that warning letters from the FDA were "extremely rare". Evidence of the FDA warning letters is relevant and admissible as impeachment evidence specifically to rebut these allegations. Alternatively, even if the FDA letters are not admissible for the truth of the matter asserted, i.e., that defendant was in fact engaged in "a continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure of risk information," these letters are relevant to issues of whether defendant was on notice that its warnings were made inadequate through over promotion. *See, e.g., U.S. v. Spatuzza,* 331 F.2d 214 (7th Cir. 1964). The FDA letters are also relevant to show defendant's state of mind with regard to the warnings. For example, despite repeated warnings, defendant continued to minimize risk information in its labels. Evidence of corporate misconduct with regard to mislabeling other drugs is also relevant to show motive and intent (to increase sales) at the expense of patient safety.

### C. Evidence Regarding Defendant's Misconduct Is Relevant and Admissible to FDA Issues

It is anticipated that Merck may also assert that compliance with FDA regulations is conclusive as to the absence of defect or negligence. One way a plaintiff may overcome this

7

presumption is with a showing of, for example, deliberate concealment or non-disclosure of after-acquired knowledge of harmful effects. *Vercher v. Ford Motor Co.,* 527 So.2d 995 (3rd Cir. 1988); *Alexis v. GlaxoSmithKline Corp.,* 2002 WL 1022261 (E.D.La.2002). The FDA warning letters are relevant evidence regarding defendant's continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure of risk information, and are therefore relevant to this issue.

D.  **Evidence of Defendant's Misconduct Is Relevant and Admissible with Respect to Plaintiff's Punitive Damages Claim**

Plaintiff seeks in this litigation seek recovery of punitive damages as the result of the Defendant's conduct. Generally, defendant's knowledge and conduct has been held to be an important consideration in a punitive damages claim. *See, e.g., In re Ford Motor Co. Vehicle Paint Litigation,* 1996 WL 426548 (E.D. La.1996). Punitive damages are available in strict product liability cases when a manufacturer is, among other things, aware of or culpably indifferent to an unnecessary risk of injury and refuses to take steps to reduce that danger to an acceptable level. *Holmes v. Bridgestone/Firestone, Inc.,* 891 So.2d 1188 (Fla. 4th DCA 2005). *Grefer v. Alpha Technical,* 901 So.2d 1117, 1144-45 (La. App. 4 Cir. 2005).

"The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them." *White Constr. Co. v. Dupont,* 455 So.2d 1026, 1029 (Fla. 1984). Thus, "punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others."*Owens-Corning Fiberglas Corp. v. Ballard,* 749 So.2d 483 (Fla. 1999).

In order to support punitive damages claims, the United States Supreme Court not only authorizes, but demands evidence showing that defendant engaged in a pattern and practice of

8

misconduct and evidence proving the potential harm or actual harm caused to others as the result of that conduct. The Supreme Court, in TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, (1993), not only approved the admission of extensive evidence and argument regarding the potential harm to others that might have occurred as a result of the defendant's misconduct, it quoted extensively from the arguments of counsel to that effect. Id. at 461-462  Additionally, more recently, the Supreme Court confirmed that evidence of the effect of defendant's misconduct on others is **required** as part of the reprehensibility analysis in determining whether the amount of punitive damages awarded is constitutional:

> "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Gore, supra, at 575, 116 S.Ct. 1589. **We have instructed courts to determine the reprehensibility of a defendant by considering whether**: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; **the conduct involved repeated actions or was an isolated incident**; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. 517 U.S., at 576-577, 116 S.Ct. 1589.

State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S.Ct. 1513, 1521 (2003) (emphasis added). In BMW of North America, Inc. v. Gore, the Supreme Court also noted that "evidence that a defendant has **repeatedly engaged in prohibited conduct** while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." 517 U.S. 559, 577 (1996) (emphasis added).

  Thus, under TXO, Gore and Campbell, a highly relevant consideration for punitive damages purposes is evidence that defendant was engaged in a "continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations

concerning the disclosure of risk information", as evidenced by the FDA warning letters attached. Other evidence, as yet unspecified by Defendant, of Defendant's misconduct with regard to its other drugs may also be relevant.

### E. Evidence of Defendant's Other Misconduct Is Admissible to Show Conformity with Merck's Routine Practices

Federal Rules of Evidence 406(a) provides that evidence of habit or routine practice is admissible to prove that on a specific occasion a person or organization acted in conformity with the habit or routine practice. Plaintiffs have attached some of the evidence supporting a finding by the FDA that defendant has exhibited a "corporate policy toward minimizing the presentation of [risk and safety] disclosures", and "a continuing pattern and practice of widespread corporate behavior to avoid compliance with the regulations concerning the disclosure of risk information." The FDA's statements that Merck's behavior showed a consistent pattern and practice of minimizing or failing to include risk warnings indicate that Merck's conduct with regard to Vioxx was indeed semi-automatic in nature. *See Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services*, 45 F.3d 96 (5th Cir. 1995).

Rule 405 provides that when evidence of character or a trait of character of a person is admissible, it may be proved by evidence of reputation. Fed. R. Evid. 405. Evidence may be admitted regarding a person's reputation at a relevant time in the community or in a group with which he had been habitually associated. The relevant time for reputation has been held to be a time at or prior to the commission of offense at issue. Therefore, evidence tending to show that the FDA, a group with which defendant has been associated in a business context, found defendant to have a corporate reputation for consistently mislabeling their products in

an effort to minimize risk is relevant and admissible to rebut any argument by defendant that it was acting in a reasonable manner with regard to Vioxx. Furthermore, defendant simply cannot contend that any evidence of misconduct regarding other drugs must be wholly excluded from this case, where it is expected to claim to the jury that it is a reputable, conscientious and responsible company. Thus, to the extent that defendant's argue, or their witnesses' testify, that Merck is a company of "good character," plaintiffs must be entitled to rebut that evidence with evidence demonstrating that it is, in fact, not reputable, law-abiding or conscientious.

Furthermore, the evidence of other misconduct, as exemplified in the FDA letter at Exh. AE, is admissible under Rule 404(b), since it is: (1) relevant to the material issues of adequacy of warning and punitive damages; (2) evidence of defendant's pattern and practice of mislabeling other drugs by minimizing the risk information is similar in kind and reasonably close to plaintiff's claims that the Vioxx he ingested did not contain an adequate warning; (3) Evidence that the FDA, the regulatory authority in charge of assessing the adequacy of a drug's warning, found that defendant had a pattern and practice of mislabeling drugs and minimizing the risks is clear and convincing evidence; and (4) the probative value overwhelms any prejudice.

### F.     Evidence of Defendant's Other Misconduct Is Not Overly Prejudicial

Defendant contends that even if the evidence of corporate wrongdoing with regard to its other drugs is relevant and admissible, it should be excluded because it will be overly prejudicial. Def. Mot. at 2.

Relevant evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the risk of undue prejudice. *U.S. v. Adair,* __ F.3d ___, 2005 WL

11

2990586 (5th Cir. 2005). Once evidence has been established as being relevant, the burden is on the party urging exclusion of evidence to convince the court that 403 considerations should control. *State v. Jones,* 891 So.2d 760, 767 (La. App. 4 Cir. 2004). It should be emphasized, however, that exclusion of relevant evidence pursuant to Rule 403 "is an extraordinary measure that should be used sparingly." *Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1004 (5th Cir.1998).

Evidence of defendant's routine business method of minimizing risk information in order to maximize sales; evidence that defendant was on notice that its method of warning its products was defective and inadequate; evidence that despite repeated warnings from the FDA defendant continued to employ this same routine business method because it maximized sales, contains overwhelming probative value regarding the issues of failure to warn, product defect, and punitive damages. The mere possibility that evidence could be prejudicial does not justify its exclusion. In our adversarial system, one would expect the that evidence introduced by the opposing party is adverse. Although the FDA warning letters and other evidence of defendant's pattern and practice of corporate misconduct with regard to labeling its drugs may be prejudicial to defendant, it is not so overly prejudicial that it must be excluded en masse, in the absence of any specific identification.

IV. **EVIDENCE OF ACTIONS BY OTHER CORPORATIONS OR INDIVIDUALS AND OTHER PHARMACEUTICAL PRODUCT RECALLS OR WITHDRAWALS IS RELEVANT AND ADMISSIBLE**

Defendant styles this issue as an attempt to keep plaintiffs from introducing evidence that pharmaceutical companies in general are untrustworthy, or are interested in profits over the safety of the public. Plaintiffs do not intend to attempt to try pharmaceutical companies as a whole or to introduce specific instances of the misdeeds of other pharmaceutical companies

as evidence that defendant, Merck, is culpable.

Defendant's true motive appears to be to exclude plaintiffs from introducing evidence regarding the industry standard of care and feasibility of product recalls, or from rebutting defendant's claims that it is a company of good character, by contrasting defendant's actions with those of other pharmaceutical companies that "did the right thing" with respect to warnings and product recalls when faced with adverse risk information.

Evidence of the actions taken by other pharmaceutical companies with regard to warnings and product recalls is relevant to the issue of the standard of care among pharmaceutical companies. Defendant is expected to allege as a defense that the type of warnings it provided or that its actions with regard to product recall met the standard of care in the industry. Defendant is also expected to contend that the FDA would not have permitted it to strengthen its warnings or to withdraw or recall its product. Evidence that other pharmaceutical companies found it feasible to undertake these under similar circumstances is clearly relevant to rebut defendant's defenses.

It is axiomatic in products liability law that in determining the standard of care, the court will look to knowledge in the industry. *Johnson v. Pool Co. of Texas,* 1994 WL 643113 * 2 (E.D. La. 1994). Evidence of what similar manufacturers do is evidence of whether a particular defendant exercised due care. *See id.* For example, in *Snyder v. Mekejian*, plaintiffs brought suit against a collector of whole blood alleging that it should have adopted more rigorous laboratory testing to screen for the virus that causes AIDS. *Id.* at 582 A.2d 307 (N.J. App 1990). Defendant represented that no such test was feasible and further claimed that the tests advocated by plaintiff were not the custom and practice in the defendant's industry. *See id.* The plaintiff countered arguing that several collectors of whole blood in California had

indeed employed such tests. They further argued that a collector of blood from paid donors had also employed a screening test. *Id.* at 313. According to the Court, the practice of others in defendant's industry was evidence as to whether the defendant's blood bank acted reasonably and whether it was feasible to perform such testing.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court deny Defendant's motion in its entirety.

Respectfully submitted,

By: *[signature]*
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**

| | |
|---|---|
| **Russ M. Herman (Bar No. 6819)**<br>Leonard A. Davis (Bar No. 14190)<br>Stephen J. Herman (Bar No. 23129)<br>*Herman, Herman, Katz & Cotlar, LLP*<br>820 O'Keefe Avenue<br>New Orleans, LA 70113<br>PH: (504) 581-4892<br>FAX: (504) 561-6024<br>**Temporary Office**<br>3411 Richmond Ave., Suite 460<br>Houston, TX 77046<br>PH: (713) 877-1843<br>FAX: (713) 871-9750<br>**PLAINTIFFS' LIAISONCOUNSEL** | Christopher A. Seeger, Esquire<br>SEEGER WEISS<br>One William Street<br>New York, NY 10004<br>(212) 584-0700 (telephone)<br>(212) 584-0799 (telecopier)<br>**Co-Lead Counsel** |

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)
**PLAINTIFF'S STEERING COMMITTEE**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this **11th** day of November, 2005.

_____

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED