FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 14  A 8: 46

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

## OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY OR DISCUSSION BY DEFENDANT THAT IT COULD NOT HAVE AMENDED THE VIOXX® LABEL OR ISSUED STRENGTHENED WARNINGS WITHOUT PRIOR FDA APPROVAL

### (MOTION IN LIMINE NO. 6)

The jury will decide, among other things, whether Merck acted reasonably in submitting

the VIGOR trial results to the FDA and seeking prior approval for its proposed label change.

Testimony from former FDA officials and Merck employees related to the application of FDA

___ Fee_____
___ Process_____
_X_ Dktd_____
_V_ CtRmDep_____
___ Doc. No_____

790942v.1

regulations to Merck's conduct bears directly on this issue. Such testimony is highly probative evidence that does not pose any risk to plaintiff of undue prejudice, confusion of issues, misleading the jury, undue delay, or waste of time. To the contrary, Merck will be prejudiced if it is *not* permitted to support its defense with such testimony.

I.   **WHETHER MERCK NEEDED PRIOR FDA APPROVAL TO CHANGE THE VIOXX LABEL IS PROPERLY DETERMINED BASED ON THE FACTS OF THIS CASE.**

The FDA regulations governing labeling that were in effect in 2000 (when Merck was first unblinded to the VIGOR results) provided that for "[a]ny change in labeling" a pharmaceutical company was required to submit a supplement, and obtain FDA approval . . . before distribution of the product with the labeling change." 63 FR 66375, 66394 (referring to 21 C.F.R. 314.70(b)(3)(i) (in effect in 2000) – Supplements and other changes to an approved application). The regulations further provided, as an exception to the general rule, that a company could make a change without FDA pre-approval "[t]o add or strengthen a contra-indication, warning, precaution, or adverse reaction." 21 C.F.R. § 314.70(c)(6)(iii)(A). This regulation is commonly referred to as the "Changes Being Effected" or "CBE" regulation.

Plaintiff argues that the CBE regulation established a hard-and-fast rule that, no matter what the nature or complexity of the safety information at issue, a pharmaceutical company can, as a matter of law, change its label to add or strengthen a warning or precaution without FDA preapproval, and that the Court should preclude Merck from presenting contrary evidence here. The CBE regulation and cases cited by plaintiff do not bear the weight plaintiff places on them. Interpreting 21 C.F.R. § 314.70(c)(2)(1) to allow a pharmaceutical company to bypass the FDA approval process whenever it wanted to add or strengthen a warning or precaution would be contrary to the FDA's interpretation of the CBE regulation as reflected in its official guidance, the FDA's application of the CBE regulation in practice, and existing case law. In fact, whether

2

a pharmaceutical company may avail itself of the CBE procedure to change its label without first consulting the FDA is a fact-driven determination based on the circumstances of each individual labeling change.

First, the FDA's official guidance document interpreting the CBE regulation is at odds with plaintiff's interpretation. The FDA's official guidance addressing labeling changes for an existing drug, issued in November 1999, divides proposed labeling changes into three categories: "major," "moderate," and "minor." (FDA, *Guidance for Industry; Changes to an Approved NDA or ANDA* ("Guidance") at 24-25, attached as Ex. 32 to Declaration of Phillip A. Wittmann in Support of Merck's Opposition Briefs, filed November 2, 2005 ("Wittmann 11/2/05 Decl.").) "Major" changes to the label include, but are not limited to, changes based on post-marketing study results (including changes associated with new indications and usage) and changes to the clinical pharmacology or clinical studies section of the label. The CBE procedure cannot be used to make major changes, they instead *must* be submitted as a prior approval supplement and FDA approval obtained before the label change is made. (*Id.* at 24; Declaration of J. Paul Waymack, M.D., Sc.D. ("Waymack Decl.") at ¶ 12, filed November 2, 2005.)

The Guidance provides that it is only the more "moderate" changes that may be made using the CBE procedure, including changes to add to the label safety information that does not fall within the scope of a "major" change. (Guidance at 24-25.). *See also* Amicus Curiae Brief for the United States in Support of Defendants/Respondents Smithkline, 2003 WL 23527781, at *10-11, filed in *Dowhal v. SmithKline Beecham Consumer Healthcare*, 100 Cal. App. 4th 8 (Ct. App. 2002) (Unless the proposed changes are minor, "[a]n applicant typically submits substantive labeling changes in a pre-approval supplement. ... [I]n actual practice, only minor product labeling changes, like an editorial change, deletion of an ingredient affecting only the

790942v.1

color of a drug product, or changes in the container or closure system for the drug product are generally made without FDA's prior approval."), *rev'd*, 32 Cal. 4th 910 (2004); *id.*, at *31 ("[A] drug manufacturer's use of the 'changes being effected' supplement is generally limited to circumstances involving noncontroversial labeling changes.").[1]   Thus, the FDA Guidance interpreting the CBE regulation flatly contradicts plaintiff's reading of the CBE regulation that a pharmaceutical company always is free to add or strengthen a warning or precaution using the CBE regulation; instead, whether a prior approval supplement or a CBE is appropriate depends on the type of change at issue.[2]

Second, plaintiff's argument that a pharmaceutical company always is free to use the CBE regulation to bypass FDA pre-approval to add or strengthen a warning or precaution is inconsistent with the FDA's application of the CBE procedure in practice.  For example, Merck's own prior experience with the FDA on a separate Vioxx labeling issue demonstrates that a pharmaceutical company is *not* always permitted to use the CBE regulation to strengthen its label without prior FDA approval.  On October 6, 1999, five months before the VIGOR data was unblinded to Merck, Merck submitted to the FDA a CBE labeling change that would have strengthened the Precautions section of the Vioxx label to include information from its post-marketing experience with the concurrent administration of Vioxx and Warfarin, a blood-thinning drug.  (Declaration of Lisa D. Rarick, M.D. ("Rarick Decl.") at ¶ 9, filed November 2, 2005; *see* Oct. 6, 1999 NDA 21-042: Vioxx (rofecoxib tablets), Special Supplement – Changes Being Effected, from Eric A. Floyd, PhD., Merck Research Laboratories, to the Food and Drug

---

[1] Minor changes – those that are trivial and in no way affect drug safety – can be made to the label without FDA pre-approval and reported on an annual basis. (Guidance at 25; Waymack Decl. at ¶ 10.)

[2] The current FDA regulations governing labeling actually adopt the categories of "major," "moderate," and "minor" changes in the text of the labeling regulations themselves.  *See* 21 C.F.R. § 314.70.

Association, attached as Ex. 30 to Wittmann 11/2/05 Decl.)  On October 28, 1999, the FDA

rejected Merck's CBE submission stating: "Changes of the kind that you have proposed *are not*

*the kind of changes permitted by regulation to be put into effect prior to approval of a*

*supplement*." (*See* Oct. 28, 1999 Letter from Anthony Zeccola, Food and Drug Administration,

to Eric A. Floyd, Ph.D., Merck Research Laboratories (emphasis added), attached as Ex. 31 to

Wittmann 11/2/05 Decl.)  Thus, the FDA's statement about Merck's proposed Warfarin CBE

confirms what is reflected in the case law, in the FDA's interpretation of its own regulation in its

official guidance, and in its application of the CBE regulation in practice – the regulation is not

appropriate for any and all safety labeling changes, but instead, only for those that are minor and

non-controversial.  (Rarick Decl. at ¶¶ 9, 11.)

Merck plans to submit testimony from a former FDA medical officer, with many years of

experience at the FDA in applying FDA's labeling regulations, that the CBE regulation is not

appropriate for all labeling changes that would add safety information to a label and, indeed,

could not have been used on the facts of this case to incorporate the VIGOR results into the

Vioxx label.  This testimony will support Merck's defense that the CBE procedure is not

appropriate in all circumstances where labeling is changed to incorporate new safety

information.  (*See* Expert Report of Janet Arrowsmith-Lowe, M.D. ("Arrowsmith-Lowe Report")

at 8, attached as Ex. 15 to Wittmann 11/2/05 Decl. ("There are narrow circumstances in which a

manufacturer is permitted to change its labeling without FDA's prior approval but those

circumstances were not present here.  The VIGOR trial presented a highly complex data set,

involving thousands of patients, from multiple clinical sites in a patient population for which

Vioxx did not yet have an approved indication and with a dose that had not yet been approved

for chronic use."); *see also* Waymack Decl. at ¶ 14 ("In contrast to changes based upon

spontaneous adverse event reports – that is changes based upon limited data – changes based upon data from clinical trials require more in depth analyses: both by the sponsor and the FDA. . . . As a result of the complexity of such data, for changes to the labeling based upon results – results other than isolated adverse events – from clinical trials, the FDA's accepted position on the proper method of changes being made to capture such data is to submit proposed changes to the FDA as major changes."); (Rarick Decl. at ¶¶ 5-8 (plaintiff's "contention is based on a fundamental misunderstanding of FDA policy, procedure, and practice.").)

Finally, the FDA regulations are clear – and plaintiff does not dispute – that even if a pharmaceutical company is permitted to make a labeling change without prior FDA approval using the CBE regulation, it simultaneously must submit the change to the FDA. *See* 21 C.F.R. § 314.70(c) (stating supplement must be filed even for changes implemented under (c)(6)(iii)); *see also* 21 C.F.R. § 314.70(7). The FDA then has the ability to reject the CBE, and require that the pharmaceutical company submit the labeling change as a prior approval supplement, just as it did with Merck's Warfarin CBE. (*See* Rarick Decl. ¶ 8 ("During my 15 years at FDA, I never saw a company successfully submit new clinical trial data unilaterally through the CBE process. Indeed, the few times when companies attempted to make such changes unilaterally, the FDA rejected the new labels and required the submission of a prior approval supplement.").) Plaintiff advances no argument – because there is none – that testimony or other evidence that the FDA would have rejected any attempt to include the VIGOR results in the Vioxx label through a CBE somehow is inconsistent with FDA law or regulation. To the contrary, the law is clear that the FDA at all times remains the ultimate arbiter of the contents of the label.

6

II.  **MERCK'S TESTIMONY IS HIGHLY RELEVANT TO THE JURY'S DETERMINATION OF WHETHER MERCK ACTED APPROPRIATELY IN CONNECTION WITH THE PROPOSED LABEL MODIFICATION.**

The court decisions cited by plaintiff, which analyze either whether entire claims are preempted or whether, in the specific facts of that case, a party could have changed the label without FDA approval, do not purport to address what testimony or evidence should be admissible at trial. Generally, the FDA's labeling decisions and the pharmaceutical company's disclosures to the FDA cannot be second-guessed by a plaintiff or the jury. *Buckman Co. v. Pls' Legal Comm.*, 531 U.S. 341, 350, 353 (2001) (claims of fraud on the FDA preempted by FDCA). To the extent plaintiff is going to be permitted to question the FDA's labeling decisions for Vioxx, Merck must be allowed to present evidence on the reasonableness of its actions.

Specifically, Merck will present testimony that the FDA regulates virtually every aspect of the research, development, marketing, and promotion of prescription drugs in the United States and that most changes to a drug's label require prior approval from FDA. (Arrowsmith-Lowe Report at 3.) This testimony is relevant to the complex factual issues the jury will need to analyze – for example, the jury will need to determine whether adding a description of the VIGOR trial to the Vioxx package insert was a "major" change requiring the FDA's advance approval or a "moderate" change that could be made without first consulting the FDA.

Merck's testimony, presented through former FDA officials, will be that the proposed changes based on the VIGOR trial fall squarely within the category of major changes requiring FDA prior approval. (Arrowsmith-Lowe Report at 8-9; *see also* Waymack Decl. at ¶ 18.) As described by Dr. Arrowsmith-Lowe, "the VIGOR trial presented a highly complex data set, involving thousands of patients, from multiple clinical sites in a patient population for which VIOXX® did not yet have an approved indication and with a dose that had not yet been approved for chronic use." It would not have been appropriate for Merck to craft a label

7

conveying this complex data without the FDA's input.  (Arrowsmith-Lowe Report at 8.)  The jury can then assess: (1) whether it believes that the proposed labeling change was a major change; (2) the importance of multiple variables that Merck and the FDA needed to consider when analyzing any proposed label change; and (3) whether it believed Merck acted reasonably and appropriately in the circumstances presented.

In addition, Merck will present testimony that for the cardiovascular results of the VIGOR trial to be meaningful to physicians – *i.e.,* useful for making informed prescribing decisions – they required an explanation in the label.  It was, for example, necessary to describe the design of the VIGOR study, including the fact that VIGOR was a GI Outcomes trial that was primarily designed to compare the effects of Vioxx and naproxen on the gastrointestinal system. It was likewise important to explain that VIGOR compared twice the dose of Vioxx approved for chronic use with a common therapeutic dose of naproxen and that the study was conducted in a rheumatoid arthritis population.  *Id.*  Without including this information in the label, the cardiovascular findings would have been meaningless and, arguably, misleading to physicians. Brief for the United States as *Amicus Curiae* Supporting Defendant-Appellee and Cross-Appellant, 2002 WL 32303084, at *18-19, (filed in *Motus v. Pfizer*, 358 F.3d 659 (9th Cir. 2004) (Nos. 02-55372, 02-55498)) ("The manufacturer's inclusion of a false or misleading warning misbrands the product *per se*.").  Inclusion of this important contextual information in the package insert required prior FDA approval, providing an independent reason why use of the CBE procedure would have been inappropriate here.  *Id.* at 18; (*see* Arrowsmith-Lowe Report at 8-9; Waymack Decl. at ¶¶ 14-18.)[3]

---

[3] Plaintiff also argues that the VIGOR test findings should have been included as a "warning." (*See* Plaintiff's Motion in Limine to Preclude any Testimony or Discussion by Defendant That it Could Not Have Amended the Vioxx Label or Issued Strengthened Warnings Without Prior

Part of Merck's defense will be that FDA approval was required because the VIGOR data was not easily discernable. (*See* Arrowsmith-Lowe Report at 8.) The FDA required time to analyze the data to ensure that its significance was portrayed correctly in the label. Merck promptly submitted the VIGOR results to FDA in March 2000, within two weeks of learning the results itself. The FDA did not request that Merck submit a CBE or take other regulatory action to disseminate the VIGOR results. Indeed, in May 2000, an FDA official stated that Vioxx was labeled appropriately, indicating that there was no need to change the label on an expedited basis. After Merck submitted a proposed revised label in June 2000, FDA, in fact, rejected Merck's request for a more rapid, priority review of the proposed revised label. (*Id.* at 9.) In February 2001, the FDA convened an Advisory Committee of outside experts to assist it in evaluating the data from the VIGOR trial and a trial involving another drug in Vioxx's class, Celebrex. (Rarick Decl. at ¶ 7), and thereafter requested emerging data from ongoing Vioxx trials. The resulting label, approved in April 2002, reflected extensive revisions to several different sections of the label.

Merck is entitled to present evidence to support its defense that, although the FDA regulations do provide a procedure for making changes to a drug label in certain circumstances without prior FDA approval, that procedure was not appropriate here. (Arrowsmith-Lowe

---

FDA Approval ("Mot.") at 7-8.) A warning is required for "serious adverse reactions and potential safety hazards" with a drug. 21 C.F.R. § 201.57(e). The FDA, however, placed the new cardiovascular data in the "precautions" section of the Vioxx label when it approved the new package insert, and described their "significance" as "unknown." Merck is entitled to present testimony that the VIGOR trial did not provide evidence sufficient to mandate a warning. It involved two arms with active ingredient treatments, both arms consisted of patients in a population for which Vioxx was not approved for use, and the Vioxx arm was receiving twice the normal therapeutic dose. It was widely accepted that the circumstances of the trial made it impossible to determine whether the disparity in myocardial infarction rates resulted from a cardiovascular risk of one product or a cardioprotective benefit of the other. The findings therefore did not satisfy the legal standard for a "warning", and testimony related to this issue is relevant.

9

Report at 8; *see also* Waymack Decl. at ¶ 18.)  *See Feldman v. Lederle Labs.*, 625 A.2d 1066, 1070 (N.J. 1993) (*Feldman I*) (Although FDA regulations did not prevent the defendant from placing a warning on the drug label while awaiting FDA approval, defendant's "attempt to comply with existing FDA regulations still bears on the reasonableness of its conduct.  The fact issue for the jury was whether a reasonable drug manufacturer with the same knowledge [the drug manufacturer] had [at the time] would have placed a . . . warning on [the drug's] packaging in addition to corresponding with the FDA."); *see also McNeil Pharm. v. Hawkins*, 686 A.2d 567, 582-83 (D.C. Ct. App. 1996) (explaining importance of expert testimony for interpretation and application of the regulations in a drug labeling case).

## III.  PLAINTIFF'S CASE LAW DOES NOT SUPPORT HER INTERPRETATION OF THE CBE REGULATION.

The cases plaintiff cites do not establish a sweeping rule that safety information always may be added to a label without the permission of the FDA.  To the contrary, a number of courts, on the facts of their specific cases, have held that pharmaceutical companies could not unilaterally change their labels.  For example, in *Ehlis v. Shire Richwood, Inc.,* the court concluded that "[t]he FDA dictates the contents of the label" and that "defendants were prohibited from changing [the drug label] without prior approval from the FDA, except in limited circumstances for a limited period of time."  233 F. Supp. 2d 1189, 1198 (D.N.D. 2002), *aff'd*, 367 F.3d 1013 (8th Cir. 2004); *see also Brooks v. Howmedica, Inc.*, 273 F. 3d 785, 796 (8th Cir. 2001) (considering analogous provision governing label changes for medical devices and concluding that the drug company "may not unilaterally make such changes [to add new safety information to its labeling] under federal law").  Similarly, the court in *Kanter v. Warner-Lambert Co.* recognized that "changes in the labeling generally require a supplementary application and approval by the FDA" and "Warner-Lambert also was not free to devise any

10

label of its choosing." 99 Cal. App. 4th 780, 794, 796 (2002); *See also Reiter v. Zimmer Inc.*, 897 F. Supp. 154, 157 (S.D.N.Y. 1995) (finding the manufacturer "could make no change in the design, manufacture or label affecting the safety of [the medical device] without the prior review and approval of the FDA"); *Dusek v. Pfizer, Inc.*, No. Civ.A. H-02-3559, 2004 WL 2191804, at *9 (S.D. Tex. Feb. 20, 2004) (concluding that the label could not unilaterally have been changed to include a warning of a causal relationship between the drug and an adverse event).

More importantly, the cases cited by plaintiff do not govern the *admissibility* of the proposed testimony based in this case. Most were cases addressing whether the plaintiffs' claims should be preempted or otherwise decided as a matter of law. *See Witczak v. Pfizer, Inc.* 377 F. Supp. 2d 726 (D. Minn. 2005) (deciding preemption issue); *Cartwright v. Pfizer, Inc.*, 369 F. Supp. 2d 876 (E.D. Tex. 2005) (same); *Madden v. Wyeth*, No. 3-03-CV-0167-BD, 2005 WL 2278081 (N.D. Tex. Sept. 14, 2005) (denying defendant's motion for summary judgment). In none of the cases was the court asked to consider whether the drug company could defend its actions to a jury by offering testimony as to why it believed its conduct conformed to FDA regulations or was otherwise reasonable. Nor did any of the cases involve a situation where, like here, the proposed change would require an extensive explanation to make it accurate. *See id.*; *Ohler v. Purdue Pharma, L.P.*, No. CIV. A 01-3061, 2002 WL 88945 (E.D. La. Jan. 22, 2002).

Two companion cases from the New Jersey Supreme Court illustrate why this procedural difference is important. In *Feldman v. Lederle Labs.*, 125 N.J. 134 (1991) (*Feldman II*) the court held that plaintiff's strict liability claims against a drug manufacturer were not preempted by FDA regulations. On a subsequent appeal, the New Jersey Supreme Court held that although the FDA regulations did not prevent the defendant in that case from placing a warning on the drug label while awaiting FDA approval, as a matter of law, defendant's "attempt to comply with

11

existing FDA regulations still bears on the reasonableness of its conduct." *See Feldman v. Lederle Labs.*, 132 N.J. 339, 347-48 (1993) ("*Feldman III*"). "The fact issue for the jury was whether a reasonable drug manufacturer with the same knowledge [the drug manufacturer] had [at the time] would have placed a [] warning on [the drug's] packaging in addition to corresponding with the FDA." *Id.* The court found error in the instruction that did not leave room for the jurors to find that defendant's decision not to warn above and beyond its compliance with FDA regulations was reasonable. *Id.* at 347.

Here, the jury will decide whether Merck acted reasonably in submitting the VIGOR trial results to the FDA and seeking prior approval for its proposed label change. To reach its decision, the jury is entitled to understand all of the regulations governing Merck's conduct, and Merck is entitled to explain to the jury why, under this regulatory scheme, it took the actions it did to ensure that the Vioxx label was changed in a timely and accurate manner. To that end, Merck is entitled to offer testimony from experts and fact witnesses that will assist the jury in assessing Merck's conduct in light of the complex FDA regulations. *See McNeil Pharm.*, 686 A.2d at 582-83 (explaining importance of expert testimony for interpretation and application of the regulations in a drug labeling case). The cases cited by plaintiff do not suggest otherwise.

## IV.   THE RELEVANCE OF MERCK'S TESTIMONY RELATED TO LABELING REGULATIONS IS NOT OUTWEIGHED BY ANY POSSIBLE CONFUSION OR PREJUDICE TO PLAINTIFF.

Plaintiff argues that Merck's testimony about why it sought the FDA's preapproval of its label change is misleading and would confuse and prejudice the jury by suggesting that the changes to the Vioxx label were not Merck's responsibility, but the FDA's. (Mot. at p. 1, 9 (citing FED. R. EVID. 402, 403).) It is undeniable that Merck is constrained to operate within federal regulations that govern its conduct. Merck simply seeks to defend its actions by explaining the limits placed upon it and why it acted reasonably within those limits. Testimony

12

or argument relating to the application of FDA regulations to Merck's situation is clearly relevant and probative of whether Merck acted reasonably when it sought FDA approval of its label instead of making such a change unilaterally.  FED. R. EVID. 401 (relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").  Because testimony regarding the regulations governing label changes is relevant to Merck's defense, the only prejudice that would result is if Merck is deprived of its opportunity to present that aspect of its defense.

## III.    CONCLUSION.

For all of the foregoing reasons, Merck respectfully requests that the Court deny Plaintiff's Motion In Limine To Preclude Any Testimony Or Discussion By Defendant That It Could Not Have Amended The Vioxx Label Or Issued Strengthened Warnings Without Prior FDA Approval.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

790942v.1

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:     (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:     (213) 430-6407

Attorneys for Merck & Co., Inc.

790942v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Opposition to Plaintiff's Motion *in Limine* to Preclude Any Testimony or Discussion by Defendant That it Could Not Have Amended the Vioxx Label or Issued Strengthened Warnings Without Prior FDA Approval (Motion *in Limine* No. 6) has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 11th day of November, 2005.

15