UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES: | | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

**MOTION TO COMPEL ANSWERS TO
MASTER SET OF INTERROGATORIES AND RESPONSES TO
MASTER SET OF REQUEST FOR PRODUCTION OF DOCUMENTS
(CONCERNING ARCOXIA)**

NOW INTO COURT come Plaintiffs' Liaison Counsel and the Plaintiffs' Steering Committee who move this court for an Order compelling production of documents propounded upon Merck & Co., Inc. on or about June 7, 2005 concerning Merck's product known as ARCOXIA. As is more fully set forth in the attached memorandum, Merck should be ordered to provide plaintiffs with answers and responses as requested.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:   (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800 |

W:\25000-29999\27115\000\PLD\Motion to Compel re Arcoxia FINAL 2005-8-25.doc

| | |
|---|---|
| PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 26th day of August, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
|     PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | JUDGE FALLON |
| This Document Relates to all Cases | ) | MAG. JUDGE KNOWLES |

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO
MASTER SET OF INTERROGATORIES AND RESPONSES TO
MASTER SET OF REQUEST FOR PRODUCTION OF DOCUMENTS
(CONCERNING ARCOXIA)

I.   INTRODUCTION

Plaintiffs move this Court for an order compelling Defendant Merck to produce requested documents and interrogatories relating to ARCOXIA. As set forth more fully below, ARCOXIA is another COX-2 inhibitor studied by Merck while VIOXX was on the market. Merck examined ARCOXIA's effect on the cardiovascular system. Merck itself has repeatedly acknowledged the relevance of ARCOXIA safety information to the VIOXX inquiry by: 1) comparing safety data for VIOXX and ARCOXIA throughout their development and sale; and 2) arguing that the cardiovascular risk associated with VIOXX is a class-wide effect of all COX-2 drugs, including ARCOXIA. Moreover, Merck's allegation in its affirmative defenses that VIOXX is unavoidably unsafe opens the door to Plaintiffs' inquiry about the relative safety of the other similar drugs Merck has designed and marketed. Because Merck's knowledge about ARCOXIA's cardiovascular safety informed Merck about VIOXX's risks, all ARCOXIA-related safety information is discoverable pursuant to Federal Rule of Civil Procedure 26 and should be produced.

## II.     FACTUAL BACKGROUND

ARCOXIA is a pain medication which, like VIOXX, is a COX-2 inhibitor. Merck first filed its Investigational New Drug application for ARCOXIA in 1997, two years prior to the commercial release of VIOXX in the United States. Exhibit "A", Jonca Bull, "Regulatory History," at 4, Presentation to the United States Food and Drug Administration (FDA), available at www.fda.gov/ohrms/dockets/ac/05/slides/2005-4090S1_01_FDA-Bull.ppt. During that time period, internal discussions of the cardiovascular (CV) toxicity of both of Merck's COX-2 inhibitors intensified, culminating in the latter half of 1998 with the establishment of Merck's CV Adjudication Standard Operating Procedure ("CV SOP"). Exhibit "B", "Etoricoxib: FDA ACM Background Document," at 61, available at www.fda.gov/ohrms/dockets/ac/05/briefing/2005-4090B2_01_Merck-Etoricoxib.pdf. In addition to setting up a protocol for comparison of the VIOXX and ARCOXIA safety data, Merck set up several internal mechanisms for dealing with the two drugs together, including the COXIB Task Force. See, e.g., Exhibit "C" (MRK-AEF0000655 – 657). The CV SOP and establishment of this mechanism demonstrated Merck's recognition of the need for a uniform approach to CV event analysis for VIOXX and ARCOXIA.

In the years that followed, Merck worked to bring ARCOXIA to the US market, but ongoing concerns about the general CV safety of COX-2 inhibitors and Merck's strong desire to promote VIOXX, another COX-2, blocked its path. In October 2001, at approximately the same time the meta-analysis of the VIOXX CV data was published in the medical journal Circulation. See Konstam, M.A., et al, Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib, Circulation, 2001; 104:r15-r23, Exhibit "D" (MRK-ABA0001310). Merck filed the ARCOXIA New Drug Application (NDA) with the FDA. Six months later, on March 15, 2002,

Merck withdrew the application when the FDA indicated it needed additional CV data. Exhibit "E", Matthew Herper, *Bad News: Merck Withdraws Arcoxia Application*, Forbes.com, March 15, 2002, available at www.forbes.com/2002/03/15/0315mrk.html. At the time, Merck indicated it would refile the NDA in June 2002. However, after further discussions with the FDA, Merck again delayed the filing until December 30, 2003. Exhibit "F", Diane Hess, *Merck Affirms Guidance, Will Refile Arcoxia Application*, TheStreet.com, June 12, 2002, available at www.thestreet.com/_tscs/tech/marketmovers/10026618.html. The FDA, however, did not take action on the application until after VIOXX was withdrawn from the market in September 2004. In October 2004, the FDA issued a letter to Merck indicating that, once again, additional CV data was required before ARCOXIA could be approved.[1] Exhibit "G", "Merck Receives 'Approvable' Letter from FDA on New Drug Application for ARCOXIA," available at www.merck.com/newsroom/press_releases/research_and_development/2004_1029.html.

In light of this factual background, Plaintiffs in this proceeding propounded the following discovery request:[2]

> **INTERROGATORY NO. 48:**
>
> Please identify every clinical (Human) study initiated by Merck involving ARCOXIA. Include in your answer:
> (a) Protocol Number and Study Name;
> (b) All Clinical investigators;
> (c) Whether the study was completed and, if not, why not;
> (d) The location (by bates number) of the final study report;
> (e) Whether the study was submitted for publication and, if so, whether it was accepted for publication;

---

[1] ARCOXIA is currently approved for sale in 60 countries, including, among others, the United Kingdom, Mexico, and Peru, but not in the United States or Canada.

[2] Copies of the Master Interrogatories and Production were previously provided to the Court at the Discovery Conference on August 24, 2005 and are incorporated herein. Should additional copies be needed, PLC will provide them.

(f) All amendments to the study protocol and the reasons why the protocol was amended;

(g) The location (by bates number) of all informed consent forms;

(h) The citation to the study if it was published; and

(i) The date that the data from each study was "locked" and the date that the data was unblinded.

\* \* \*

**REQUEST FOR PRODUCTION NO. 60:**

60. All documents concerning the chemical or pharmacological properties, risks, adverse effects or side effects, clinical experience, pre-clinical testing and clinical testing of any NSAID or drugs with similar indications to any Relevant Product, including:

\* \* \*

(c) the drug marketed and sold outside the United States under the brand name Arcoxia; and

\* \* \*

Despite producing some ARCOXIA-related documents in other jurisdictions, Merck has flatly refused to produce **any** ARCOXIA information in this MDL.

## II.   ARGUMENT

### A.   Rule 26 Entitles Plaintiffs to Discovery of Information Pertaining to ARCOXIA.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Id. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

In products liability actions, information about similar products or devices is generally discoverable. See, e.g., Snowden v. Connaught Laboratories, Inc., 136 F.R.D. 694, 699 (D. Kan. 1991) (ordering vaccine manufacturer to produce research the company had done regarding other, safer vaccines to determine whether production of a safer product was feasible.); Dollar v. Long Mfg., N. C., Inc., 561 F.2d 613, 617 (5th Cir. 1977) (allowing discovery relating to safety of "other similar models" of backhoes and finding such information was relevant to knowledge of defect and causation of the subject product); Baine v. General Motors Corp., 141 F.R.D. 328, 330 (D. Ala. 1991) (allowing discovery of information pertaining to all restraint systems using a pendulum-induced locking mechanism, despite defendant's contention that the other systems products were substantially different from the product at issue); see also Culligan v. Yamaha Motor Corp., 110 F.R.D. 122, 124-126 (S.D.N.Y. 1986) (holding discoverable information about pre- and post-manufacturing testing, research, and development of ATV models similar to the model at issue; observing "discovery of similar, if not identical, models is routinely permitted in product liability cases.").

Although under Rule 26, information need not be admissible to be discoverable, the Fifth Circuit has found that evidence of an alternative design of a product is not only discoverable, but admissible and probative to prove design defect in a products liability case. See Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1078 (5th Cir. 1986) (reversing and remanding for a new trial where the court excluded evidence of alternative designs; "the harm to appellant's case lay in what the excluded evidence would have shown about the extent of the appellees' knowledge of the magnitude of the danger and the magnitude of the difference in safety when the

two designs were compared."); see also Mitchell v. Fruehauf Corp., 568 F.2d 1139 (5th Cir. 1978) (finding that accidents involving trailer trucks containing hanging meat were admissible to prove the inherently dangerous characteristics of a similar, but not identical, meat trailer.). Where, as here, the information Plaintiffs seek concerns a product that is either a safer version of the product at issue or shows Defendant had knowledge of a similar or worse safety risk, the comparator information is discoverable.

**B.  Merck's Own Actions, Statements, and Allegations Demonstrate that ARCOXIA-Related Material is Relevant to the Claims and Defenses Asserted and Should be Produced.**

**1.  Merck's Own Documents Demonstrate that It Deemed ARCOXIA Information Relevant to the VIOXX Safety Analysis.**

Merck's own documents support the discoverability of ARCOXIA-related information. Merck's production reveals that Merck internally and scientifically evaluated VIOXX and ARCOXIA safety information together. This was done prior to litigation. This, of course, demonstrates that Merck itself believed there was a sufficient nexus between its two COX-2 inhibitor drugs to warrant comparison. These documents include, *inter alia*, summary comparisons of VIOXX and ARCOXIA to naproxen and non-naproxen NSAIDs (i.e., Ibuprofen) to evaluate cardiovascular thrombotic events, see Exhibit "H" (MRK-AFL0110440); the inclusion of both ARCOXIA and VIOXX in Merck's "COX-2 Acute Thrombotic/Embolic Vascular Events Surveillance and Adjudication SOP," Exhibit "I" (MRK-ABS0295168 – 220), and the "Statistical Data Analysis Plan: Meta-Analysis of Cardiovascular Event Rates in COXIB projects (rofecoxib & etoricoxib) (Study all)." See Exhibit "J" (MRK-AFL0004983-5004). Merck's documents repeatedly mention VIOXX and ARCOXIA together when discussing potential cardiovascular effects, and in one case expressly state that "there is no biologic reason to anticipate that differences in selectivity among the COX-2 selective inhibitors would result in

differences in cardiovascular safety." See Exhibit "K" (MRK-AFL0001410). Merck routinely compared VIOXX and ARCOXIA when evaluating potential cardiovascular effects both before and after the launch of VIOXX.[3] Despite these explicit acknowledgments of the nexus between the drugs, Merck has refused to produce any information about ARCOXIA.

2. **ARCOXIA-Related Information Is Directly Relevant To Claims In Plaintiffs' Complaints.**

In these MDL cases, Plaintiffs have alleged that Merck designed, manufactured, marketed, and sold a defective and/or unreasonably dangerous product, failed to warn adequately about its safety risks, and concealed material information from the public. See, e.g., Master Class Action (Personal Injury and Wrongful Death) Complaint at ¶¶ 3, 77-84, 89, 96-108. During the time VIOXX was developed and marketed, Merck was also developing and testing ARCOXIA. ARCOXIA, a COX-2 inhibitor, is in the same class of drugs as VIOXX. As part of that process, Merck aggregated and studied data relating to the safety of ARCOXIA, including information about its potential for creating an increased risk of adverse CV events. Plaintiffs' allegations of wrongdoing by Merck place at issue what Merck knew about the safety of all drugs in the COX-2 inhibitor class. Put simply, if the available safety data indicated to Merck that VIOXX was more dangerous than ARCOXIA, then that data and Merck's knowledge of it would make Plaintiffs' allegations more likely to be true. Similarly, a study which showed a cardiovascular risk with Merck's other COX-2 drug might provide additional support for Plaintiffs' contention that the VIGOR trial results are explained by the cardiotoxicity of VIOXX as opposed to any alleged cardioprotective property of Naproxin. Of course, the latter was Merck's excuse for keeping VIOXX on the market and unlabeled for cardiovascular risks.

---

[3] Plaintiffs have only cited a few of the dozens of documents produced to date which appear to compare the effects of ARCOXIA and VIOXX on cardiovascular and cerebrovascular health. Numerous other documents are available for review should the Court so require.

Accordingly, Plaintiffs' allegations alone make discoverable the ARCOXIA-related information sought by Plaintiffs.

### 3.  Merck's Specific Defenses Make Safety Information Related To ARCOXIA Relevant And Discoverable.

In addition to being relevant to Plaintiffs' claims, ARCOXIA-related information is also relevant to the defenses raised by Merck. One of Merck's primary defense is that "Plaintiff's claims are barred in whole or in part because VIOXX is a prescription medication which is 'unavoidably unsafe' within the meaning of comment k to Section 402A of the Restatement (Second) of Torts." See Exhibit "L", Answer of Defendant Merck & Co., Inc., *Diana Ward v. Merck & Co., Inc.*, No.05-1172, Eleventh Affirmative Defense, at page 12. Comment k states that:

> *k. Unavoidably unsafe products.* <u>There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use</u>. These are especially common in the field of drugs. . . . It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, . . . but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, <u>again with the qualification that they are properly prepared and marketed, and proper warning is given</u>, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts, sec. 402A, comment k.

The ARCOXIA data is an essential element of plaintiffs' ability to rebut the "comment k" defense. First, Plaintiffs can use the ARCOXIA information to refute the assertion that the product was incapable of being made safe "in the present state of human knowledge." In other words, part of the "present state of human knowledge" of the dangers of VIOXX includes the knowledge of dangers associated with other COX-2 inhibitors, including ARCOXIA. Plaintiffs

should not be required to rely solely on Merck's litigation-related pronouncements in that regard, and should be permitted to discover the primary data known to Merck.

Second, to be relieved of liability for the marketing and sale of an "unavoidably unsafe product" under this section, the seller must have given "proper warning." See Restatement (Second) of Torts, sec. 402A, comment. Again, determining what information was available to Merck at relevant times is directly implicated by Merck's assertion of this defense. What Merck knew relating to ARCOXIA, independently and as it related to VIOXX, bears on the questions of what Merck knew, when they knew it, and whether they properly disclosed it. Merck denies that VIOXX is unavoidably unsafe. Plaintiffs disagree and believe that discovery of the ARCOXIA information may refute Merck's allegations on that point.

### 4. Merck's Assertions Regarding the Purported Class Effects of COX-2 Have Established the Discoverability of ARCOXIA-Related Material.

Merck removed VIOXX from the market in September, 2004. When it did so, it implied that all COX-2 inhibitors shared the same risk of cardiovascular injury. To the extent that Merck did so, Merck further establishes the relevance of ARCOXIA to this litigation.

Merck has suggested on multiple occasions, in multiple forums, that other members of the COX-2 inhibitor class of drugs share a heightened propensity to cause adverse cardiovascular events. Merck therefore reasons that there are no particular risks associated with VIOXX and that, as a result, VIOXX is a reasonably safe product. Most recently, Merck made this point before the FDA's Joint Meeting of the Arthritis Advisory Committee and the Drug Safety and Risk Management Advisory Committee on February 16-18, 2005. In that meeting, Merck's Senior Director of Clinical Research, Dr. Sean Curtis, stated, "these recent data showing a difference in cardiovascular safety in long-term studies versus placebo do, in fact, suggest a class effect." See Exhibit "M" at pgs.169-170 (emphasis added).

On April 6, 2005, the FDA published, on its website, a memorandum entitled, "Analysis and recommendations for Agency action regarding nonsteroidal anti-inflammatory drugs and cardiovascular risk" ("FDA memorandum"). See Exhibit "N". The documents contain select discussion and opinions derived from a review of "available clinical trial data," and "published and unpublished" observational studies. See Exhibit "N" at pages 1, 7. The memorandum concludes that there is an "increased risk of serious adverse CV events compared to placebo" for the selective COX-2 inhibitors VIOXX, Celebrex, and Bextra (Valdecoxib)—a subset of the broader class of non-selective NSAIDs. See Exhibit "N" at 1. With respect to a "class effect of NSAIDs," the FDA memorandum states that:

> *Long-term placebo-controlled clinical trial data are not available to adequately assess the potential for the non-selective NSAIDS to increase the risk of serious adverse events...* <u>Pending</u> the availability of additional long-term controlled clinical trial data, the available data are best interpreted as being consistent with a class effect of an increased risk of serious adverse CV events for COX-2 selective and non-selective NSAIDs.

Exhibit "N" at 2.[4] This collective discussion of VIOXX with other COX-2 drugs and comparison of CV adverse event data supports the conclusion that what Merck knew about

---

[4] This equivocal and qualified observation cannot reasonably be interpreted as meaning that the "FDA has concluded that there is a class effect of increased cardiovascular risks for all NSAIDs." Indeed, in the section of the memorandum entitled, *Analysis and Conclusions*, the reviewers qualify from their earlier summary opinion:

> *The* absence *of long-term controlled clinical trial data for the non-selective NSAIDs significantly limits our ability to assess whether these drugs may also increase the risk of serious adverse CV events...* The adverse CV risk for the COX-2 selective drugs became apparent only from large, long-term controlled clinical trials and large retrospective cohort studies. Similar clinical trials are needed to assess the potential risks of the non-selective NSAIDs.

Exhibit "N" at 11 (emphasis added).

ARCOXIA's CV safety is relevant to the VIOXX inquiry.

The FDA memorandum demonstrates that as far as the FDA is concerned, more data is needed before reaching an unqualified conclusion that there is a "class effect" of increased risk of adverse cardiovascular events. Some of that data is contained in Merck's ARCOXIA files. The importance of the ARCOXIA data was recently highlighted by Merck's own lawyers during its opening statement in the recent VIOXX trial in Brazoria County, Texas, styled *Ernst v. Merck & Company, Inc.* In that case, Merck's lawyers specifically cited the "class effect" discussion from the FDA's memorandum as support for their argument that VIOXX did not pose an increased cardiovascular risk. In that case, the Merck lawyer told the jury that:

> Second, the FDA determined that there is no evidence that VIOXX presented an increased cardiovascular risk over traditional pain relievers. And here are the FDA's own words two months ago: "These findings and the absence of any long-term placebo or active controlled trials for most of the nonselective NSAIDs" – let me stop there for one second..
>
> * * *
>
> The FDA is saying here: "There's an absence of data on the older medicines, but the findings we have on the new medicines make it difficult to conclude that the COX-2 selective drugs, *as a class*" – and they're referring to Celebrex, VIOXX – "have greater CV risk than nonselective NSAIDs." This is referring to the COX-1, COX-2 issue.
>
> * * *
>
> The state of knowledge today is that the FDA, after looking at all of this data, has basically concluded that the heart risks associated with VIOXX are, in fact, very similar to those potentially seen with Advil. Were still learning (sic). Information's being accumulated, but this is the most recent conclusions of the FDA.

See Exhibit. "O" at page 76 (italics added). In other words, Merck argued that the FDA's memorandum supports their legal contention that VIOXX poses no unique cardiovascular risk. It is anticipated that Merck will argue and assert that VIOXX was "unavoidably unsafe" given the state of knowledge concerning COX-2 inhibitors at the time. ARCOXIA is one of the ways

that a plaintiff can refute that contention. In light of Merck's reliance on this defense, information regarding Merck's frequent comparator to VIOXX and member of the COX-2 inhibitor class, ARCOXIA, is discoverable. Merck should not be permitted to make those arguments without giving plaintiffs the ability to learn what Merck knew about the underlying data.

## CONCLUSION

Plaintiffs' claim that Merck designed, manufactured, and marketed a defective and unreasonably dangerous COX-2 Inhibitor, and concealed material information regarding the dangers of the drug. Merck's own materials reveal that Merck believed that the ARCOXIA safety data and information were sufficiently related to the VIOXX analysis to analyze the drugs side-by-side. Moreover, in this Court, Merck has asserted as an affirmative defense that VIOXX was "unavoidably unsafe," and, in other forums, has suggested that the increased rate of cardiovascular events is the result of a class effect common to all COX-2 inhibitors. In view of the claims and defenses asserted, Merck cannot meet its burden for resisting this reasonable and justified discovery request. Accordingly, the requested ARCOXIA-related information clearly meets the threshold set forth in Rule 26(B), and Plaintiffs should be allowed to dicover what Merck knows about ARCOXIA and discover relevant information to assess Merck's various claims and defenses.

For these reasons, Plaintiffs respectfully request that this Court grant its Motion to Compel Production of ARCOXIA-Related Material.

Respectfully submitted,

_/s/ Russ Herman_
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH:  (318) 487-9874<br>FAX:  (318) 561-2591<br><br>Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH:  (215) 772-1000<br>FAX:  (215) 772-1371<br><br>Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH:  (215) 592-1500<br>FAX:  (215) 592-4663 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>FAX:  (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH:  (850) 435-7000<br>FAX:  (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292<br><br><br>Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |

| Carlene Rhodes Lewis, Atty. | Christopher Vincent Tisi, Esq. |
| --- | --- |
| 2200 Texaco Heritage Plaza | 2000 L Street, NW |
| 1111 Bagby | Suite 400 |
| Houston, TX  77002 | Washington, DC  20036-4914 |
| PH:  (713) 650-0022 | PH:  (202) 783-6400 |
| FAX:  (713-650-1669 | FAX:  (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleadings has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 26th day of August, 2005.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

### NOTICE OF HEARING

Please take notice that, upon the pleadings, the depositions, and other matters of record, the undersigned will move the Court before the Honorable Judge Eldon E. Fallon, United States District Court for the Eastern District of Louisiana, Room C456, United States Courthouse, 500 Poydras Street, New Orleans, Louisiana, 70130, pursuant to Orders of the Court, at 3:00 o'clock p.m., at the weekly discovery status conference on the 1st day of September, 2005, or as soon thereafter as counsel can be heard, for an order on the PLC's/PSC's Motion to Compel Answers to Master Set of Interrogatories and Responses to Master Set of Request for Production of Documents (Concerning ARCOXIA), and for such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

_____
Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Plaintiffs' Liaison Counsel**

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED