

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 05-4046 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT<br>as Personal Representative of the Estate of<br>RICHARD IRVIN, JR., | * | |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

## DECLARATION OF DOROTHY H. WIMBERLY IN SUPPORT OF OMNIBUS REPLY MEMORANDUM IN SUPPORT OF MERCK'S MOTIONS *IN LIMINE*

I, DOROTHY H. WIMBERLY, by way of declaration, say:

1.  I am an attorney in the law firm of Stone Pigman Walther Wittman L.L.C., attorneys for the defendant Merck & Co., Inc. ("Merck") in the above-captioned matter. I make this declaration in support of Omnibus Reply Memorandum in Support of Merck's Motions *in Limine*, filed concurrently herewith. I have personal knowledge to state that the following

791181v.1

exhibit, which is attached to this declaration, is a true and correct copy of the document it purports to be.

2. Attached hereto as Exhibit A is a true and correct copy of an excerpt from the hearing transcript in *Humeston v. Merck & Co.,* No. 619 (N.J. Super. Ct. Law Div. filed August 19, 2003).

Respectfully submitted,

Dorothy H. Wimberly
Attorney for Merck & Co., Inc.

791181v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Declaration of Dorothy H. Wimberly in Support of Omnibus Reply Memorandum in Support of Merck's Motions *in Limine* has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 16th day of November, 2005.

_Dorothy H. Wimberly_

791181v.1

1

```
                    SUPERIOR COURT OF NEW JERSEY
                    ATLANTIC COUNTY/CIVIL DIVISION
                    DOCKET NO. ATL-L-2272-03MT
-------------------------------x
FREDERICK HUMESTON, et al.,

          PLAINTIFFS,

          VS.               STENOGRAPHIC TRANSCRIPT
                            OF:
MERCK & CO., INC.,
                                 - MOTIONS -
          DEFENDANT.
-------------------------------x

          PLACE:  ATLANTIC COUNTY CIVIL COURTHOUSE
                  1201 BACHARACH BOULEVARD
                  ATLANTIC CITY, NJ 08401

          DATE:   AUGUST 30, 2005


B E F O R E:

    THE HONORABLE CAROL E. HIGBEE, J.S.C.

TRANSCRIPT ORDERED BY:

    DAVID BUCHANAN, ESQ. AND DIANE SULLIVAN, ESQ.

A P P E A R A N C E S:


    DAVID BUCHANAN, ESQUIRE
    SEEGER, WEISS
       ATTORNEYS FOR THE PLAINTIFFS

    DIANE SULLIVAN, ESQUIRE
    DECHERT, LLP
    STEPHEN D. RABER, ESQUIRE
    WILLIAMS & CONNOLLY, LLP
    CHRISTY D. JONES, ESQUIRE
    BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
    ATTORNEYS FOR THE DEFENDANT
            *      *      *      *      *      *
                  REGINA A. TELL, CSR-CRR-RPR
                  OFFICIAL COURT REPORTER
                  1201 BACHARACH BOULEVARD
                  ATLANTIC CITY, NJ  08401
```



EXHIBIT A

Colloquy

1   black box. Why doesn't that come in? Does that not
2   come in?
3           MS. JONES: Your Honor, I'm arguing the
4   question of law that's very specific in this case.
5           THE COURT: All right. Well, it is a very
6   specific point of law that black boxes have to be
7   approved by the FDA, and that's a fact, and if you want
8   the jury instructed on that reg we may do that at some
9   point in the charge, and counsel may not represent to
10  the jury that black box warnings do not have to be
11  approved by the FDA. It is a limited -- it is a pretty
12  limited ruling, but it is what you're asking for. I
13  agree with you. It doesn't mean they can't argue about
14  black box warnings or that Merck couldn't have asked
15  for black box warnings or Merck couldn't have told the
16  FDA that they thought they needed a black box warning.
17  And as they have argued before this whole issue of they
18  can, in fact, request or even do a warning without FDA
19  approval, that issue we still have to go back to --
20  that issue I haven't quite decided yet.
21          MR. BUCHANAN: Thank you, Your Honor.
22          THE COURT: But it is absolutely true that
23  the plaintiffs may not tell the jury that you can do a
24  black box warning without FDA approval.
25          MS. JONES: Thank you, Your Honor. I'm going

                                                              104
                            Colloquy

1    to go on to something else, but I want to -- there's
2    one statement that you made caused me some concern.
3             THE COURT:  Maybe I misspoke.
4             MS. JONES:  No, no, I'm not suggesting you
5    misspoke, but our earlier argument may have been
6    misinterpreted.
7             Earlier this morning there was an argument in
8    terms of whether or not the argument could be made that
9    we could not automatically go in and change a label.
10   Any change of a label.  Absolutely any of them
11   ultimately requires FDA approval.
12            THE COURT:  There's no question ultimately it
13   is a question of the other -- was the what is it CVA.
14            MR. BUCHANAN:  CBE.
15            MS. JONES:  I wanted to clarify, Your Honor.
16            THE COURT:  Basically that regulation says
17   you can change -- you can add a warning or change a
18   warning.
19            MS. JONES:  With the consent of the FDA.
20            MR. BUCHANAN:  Tacit consent.  You send it
21   in, and you do it.
22            THE COURT:  Doesn't it require consent in
23   advance, does it?  I thought it was pending going into
24   effect.
25            MR. RABER:  Your Honor, back to that other

                                                              105
                            Colloquy

1    motion.
2            THE COURT:  We can go back to it because I
3    haven't ruled on it yet.  I'm still tossing it around
4    in my mind.
5            MR. RABER:  It is one of the classic
6    questions where if you have federal regulations that
7    are complex, courts everywhere, you know the Chevron
8    case in the U.S. Supreme Court, the New Jersey courts
9    everywhere say if the agency that's charged with
10   implementing and enforcing those regulations tells you
11   how they interpret it and how they apply it that the
12   courts give deference to that, and I'm not saying
13   anybody has to follow that.  I'm just saying we should
14   be able to put that evidence in, and the jury can
15   reject it, and they can argue that our expert is wrong.
16   They can cross-examine the expert.  They can pull out
17   the regulations and read the words in the regulation.
18   They can do whatever they want, but it is really not an
19   admissibility question.
20           It is a question of expert testimony about
21   what is the regulatory context, what is the FDA's
22   practice and so on and how can you evaluate conduct.
23   You have to know what the rules of the game are in
24   order to evaluate whether somebody lived up to them or
25   fell short.  There's nothing to measure that conduct

                                                            106
                            Colloquy

1    against.  As I said, to a layperson --
2              THE COURT:  I don't have any question that
3    what the agency says may be relevant, and that's -- but
4    what the former employee who you have hired to testify
5    says is not the same as what the agency says.
6              MR. RABER:  That's a case with all experts,
7    Your Honor, and the jury hears it, and they decide who
8    they want to believe and whether that's persuasive,
9    and --
10             THE COURT:  I'm not sure that applies to
11   interpretation of a regulation.
12             MR. RABER:  It is always the case -- in case
13   after case in these situations where you have an issue
14   like this experts are allowed to testify, and usually
15   there's an expert on both sides, and here we -- they
16   don't have an expert on this issue.
17             THE COURT:  How can you have experts on
18   regulations?
19             MR. BUCHANAN:  You are the gatekeeper of the
20   law.
21             MR. RABER:  The question is how do you have
22   experts on regulations?
23             THE COURT:  I don't know that you do.
24             MR. RABER:  Well, this is a slightly
25   different situation.