FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 18  AM 10: 38

LORETTA G. WHYTE
          CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM OF DEFENDANT MERCK & CO., INC. IN
OPPOSITION TO PLAINTIFF'S CLAIM FOR PUNITIVE
DAMAGES AND IN SUPPORT OF BIFURCATION OF TRIAL**

**I.    INTRODUCTION.**

At a recent status conference, this Court requested the parties' views on (1) whether punitive damages were available to plaintiff in this proceeding and (2) whether the trial in this case should be bifurcated into compensatory damages and punitive damages phases. In light of that request and in light of plaintiff's recent submission of a Memorandum in Support of a Claim for Punitive Damages and in Opposition to Bifurcation of Trial ("Pl. Mem."), Defendant Merck

791433v.1

& Co., Inc. ("Merck") respectfully submits the following memorandum in opposition to plaintiff's claim for punitive damages and in support of bifurcating this trial.

## II.     FLORIDA LAW BARS PUNITIVE DAMAGES IN THIS CASE.

As plaintiff recognizes, Florida law generally bars the award of punitive damages where, as here, punitive damages have previously been awarded against the defendant, in any state or federal court, in a product liability case involving the same product. Fla. Stat. § 768.73(2)(a); *see* Notice and accompanying Declaration of Peter Choate (attaching 8/19/05 jury verdict awarding punitive damages against Merck in *Ernst v. Merck & Co., Inc.*). In such circumstances, the Court may permit a jury to consider an award of subsequent punitive damages **only** if the Court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish the defendant's behavior. *Id.* § 768.73(2)(b); *see* Pl. Mem. 2-3 (quoting statute).

Plaintiff contends that this bar on subsequent punitive damages does not apply because (1) the *Ernst* award has not been paid and is still subject to reduction or elimination in post-trial proceedings or on appeal, and (2) the amount of the award is or will be insufficient to punish Merck's alleged misconduct. Pl. Mem. 3-5. Plaintiff is wrong on both counts.

As to plaintiff's first argument, the statute nowhere requires that the defendant have "paid" the prior punitive award before the bar takes effect. On the contrary, under the plain language of the statute, the defendant need only establish that "punitive damages have previously been **awarded** ...." Fla. Stat. § 768.73(2)(a) (emphasis added). Merck has met this burden by providing a copy of the *Ernst* jury verdict, which awarded punitive damages of $229 million. *See* Notice and accompanying Choate Decl., Ex. A at 9-10. The statute requires nothing more. In both lay and legal parlance, a jury verdict is an "award." *Black's Law Dictionary* 147 (8th ed. 2004) (employing as example "the jury awarded punitive damages").

Of course, if the Florida Legislature had wanted to defer application of the statutory bar until a prior award had been "paid," it could easily have said so. But imposing such a requirement would have defeated the statutory objective of protecting defendants from excessive overlapping punishments, in multiple courts, for the same alleged misconduct. It is well known that appeals of punitive damage awards often take years to complete. If defendants had to await the completion of post-trial and appellate proceedings before invoking the protection of the statutory bar, the intended protection would be illusory, as nothing would prevent multiple excessive awards from accumulating in the interim.

Conversely, there is no reason to assume that the Legislature saw possible post-trial or appellate reversal of prior awards as a *sub silentio* reason for suspending the application of the statute. Florida law makes crystal clear that an individual plaintiff has no personal entitlement to punitive damages. As the Florida Supreme Court has stated:

> [Plaintiff] has no cognizable, protectable right to the recovery of punitive damages at all. Unlike the right to compensatory damages, the allowance of punitive damages is based entirely upon considerations of public policy. Accordingly, it is clear that the very existence of an inchoate claim for punitive damages is subject to the plenary authority of the ultimate policy-maker under our system, the legislature. In the exercise of that discretion, it may place conditions upon such a recovery or even abolish it altogether.

*Gordon v. State*, 608 So.2d 800, 801 (Fla. 1992) (internal quotation omitted).

If the *Ernst* punitive damage award is ultimately reversed, a future Florida plaintiff may then have the ability, under the Florida statute, to pursue a claim for punitive damages against Merck under Florida law. But that does not mean that plaintiff here, in the interim, may pursue such a claim in violation of Florida's statutory bar against multiple awards. The Florida Legislature, which has "plenary authority" over punitive damage claims, has determined not to

permit subsequent punitive damages claims in these circumstances. Its determination applies to this case and should be enforced.[1]

Plaintiff's second argument – that the *Ernst* award is or will be insufficient to punish Merck's alleged misconduct – is equally meritless. As an initial matter, plaintiff wrongly asserts that Merck has the burden to prove otherwise. Under the plain language of the statute, the defendant need only "establish[] ... that punitive damages previously have been awarded against that defendant ... [in a product liability case involving the same product]" Fla. Stat. § 768.73(2)(a). As already noted, Merck has done so by reference to the *Ernst* award.

The statute goes on, in the next subsection, to provide that the Court may still permit a jury to consider an award of subsequent punitive damages "if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior." *Id.* § 768.73(2)(b). But the statute nowhere states or suggests that the defendant has the burden of demonstrating the *sufficiency* of prior punishment. On the contrary, the statute expressly requires a showing of *insufficiency*, and the burden of making that showing logically and necessarily falls to plaintiff, on whom Florida law expressly places the burden to prove the elements of punitive damages by "clear and convincing evidence." Fl. Stat. § 768.72(2).

Plaintiff has not remotely made the required showing. Although the statute requires "clear and convincing evidence" of insufficiency, plaintiff's memorandum does not attach or cite *any* evidence. The mere assertion that the *Ernst* award is insufficient punishment does not carry

---

[1] This legislative determination answers cases like *Johnson v. Celotex*, 899 F.2d 1281, 1288 (2d Cir. 1990), cited at Pl. Mem. 3, which observed early in the modern era of punitive damages jurisprudence that the problem of multiple overlapping punitive damage awards may require a legislative solution. The Florida statute, enacted in 1995, provides just such a solution, and it bars plaintiff's claim here.

plaintiff's burden. Nor could plaintiff plausibly make such a showing. Plaintiff's argument that an award of $229 million would be insufficient (Pl. Mem. 4) barely warrants a response. An award on that scale would be almost without precedent and nearly $100 million larger than the punitive damages struck down as unconstitutionally excessive in *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003).

Implicitly acknowledging this, plaintiff argues, and Merck does not dispute, that the *Ernst* award will likely be reduced substantially. Pl. Mem. 4. As stated in Merck's Notice, Merck contends that Texas law requires reduction of the *Ernst* punitive damages award to no more than $1.65 million, and Merck intends to appeal the award in its entirety. *See* Notice at 1. But this does not mean that a smaller award would be insufficient to punish. On the contrary, when considered in the context of the enormous burden of defending this mass litigation, almost any award would be sufficient.

The Florida statute expressly instructs the Court to consider, in assessing whether a prior punitive damage award is insufficient, "whether the defendant's act or course of conduct has ceased." Fla. Stat. § 768.73(2)(b). In this case, Merck voluntarily withdrew Vioxx from the market after receiving the results of the APPROVe study. Thus, there is no need for punitive damages to punish or deter any alleged ongoing misconduct. In addition, as the Court knows, the withdrawal has prompted the filing of thousands of lawsuits against which Merck must now defend (like the recent *Humeston* trial in which Merck prevailed). Punitive damages make little sense in this context, and certainly plaintiff has cited nothing that demonstrates, by clear and convincing evidence, that a reduced *Ernst* award would be insufficient to vindicate any public purposes of such an award. Accordingly, Fla. Stat. § 768.73(2)(a) bars plaintiff's punitive damages claim and the Court should dismiss it.

III. **IF PLAINTIFF IS PERMITTED TO SEEK PUNITIVE DAMAGES, THEN THIS PROCEEDING SHOULD BE BIFURCATED INTO COMPENSATORY DAMAGES AND PUNITIVE DAMAGES PHASES.**

In the event this Court determines that plaintiff may seek punitive damages in this case, it should bifurcate the trial into separate phases for compensatory and punitive damages. The first phase should be restricted to underlying liability, causation and compensatory damages, and second phase – if needed – would consider both punitive damages liability and amount. Federal Rule of Civil Procedure 42(b) empowers the Court, in its discretion, to order bifurcation "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *See Scheufler v. Gen. Host Corp.*, 895 F. Supp. 1411, 1414 (D. Kan. 1995) (courts should consider "whether the interests of efficiency and convenience favor bifurcation, whether the issues are clearly separable, and whether bifurcation is fair to both parties"). All of these criteria support bifurcation here.

Without question, bifurcating the compensatory and punitive phases will promote efficiency. As plaintiff acknowledges (Pl. Mem. 9), prior Vioxx trials have proven to be extremely time consuming. *Ernst* lasted approximately six weeks and *Humeston* approximately eight weeks. Bifurcation affords the jury the opportunity to focus exclusively the evidence relating to the underlying liability and causation questions without the clutter of additional disputed conduct evidence potentially relevant only to a punitive damages claim, making possible a much more streamlined presentation. If the first phase ends in a defense verdict, the second phase will not be needed at all. *See Scheufler*, 895 F. Supp. at 1414 ("The determination of liability for punitive damages involves other issues . . . The jury would not need to consider these issues if no actual damages are awarded, which would save trial time and the expense of putting on the additional evidence.").

Further, and contrary to plaintiff's suggestion (Pl. Mem. 7), there is no legal bar to bifurcating compensatory and punitive damages on the same claims. Courts do it all the time. *E.g., Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3rd Cir. 1984); *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 65722, at *1 (E.D. Tex. Feb. 11, 1997); *Scheufler*, 895 F. Supp. at 1414. In this case, the issues central to Plaintiff's compensatory damages claim – *e.g.*, Mr. Irvin's medical condition and history and the scientific question of whether his short-term use of Vioxx could have caused his sudden cardiac death – are entirely distinct from the broader corporate conduct issues on which plaintiff purports to predicate her punitive damages claim.

Likewise, as detailed in Merck's Motion in Limine No. 1, the marketing evidence plaintiff apparently hopes to introduce in support of punitive damages has no relevance to her compensatory damages claims in light of the testimony of plaintiff's prescribing physician – his son-in-law Dr. Schirmer – that he did not see or rely on Merck marketing. The compensatory and punitive damages issues in this case are thus clearly separable, and any factual overlap between the two phases is both minimal and well within permissible limits. *See In re Propulsid Prods. Liab. Litig.*, MDL No. 1355, 2003 WL 22023398, at *4 (E.D. La. 2003) (absent the possibility of inconsistent determinations, bifurcation is permissible even if some factual issues are common to both proceedings).

Bifurcation is also clearly fair to both parties and necessary to avoid unfair prejudice to Merck. Plaintiff complains that bifurcation will "instill[] a sterile atmosphere into her factual presentation" (Pl. Mem. 8, 11), but her papers make clear – indeed, transparently clear – that her real objective in opposing bifurcation is to preserve the opportunity to emphasize her supposed punitive damages evidence in order to distract the jury from the difficult medical causation

7

issues. *See, e.g.*, Pl. Mem. at 1 ("In a unified presentation of evidence, Plaintiff intends to expose Merck's behavior of distorting its scientific findings from internal research and fighting FDA's efforts to amplify Vioxx's warnings in the interests of continuing to profit from the marketing of Vioxx. Merck's behavior is a classic example of putting profits over people.").

It is no secret that the plaintiffs in this litigation favor such an approach. Just last week, the *Ernst* plaintiff's attorney Mark Lanier was reported to have told a room full of other Vioxx plaintiff's attorneys in a "continuing legal education" program that the key to his success in *Ernst* was his strategy to get the jury outraged over alleged marketing malfeasance **before** addressing the more difficult science issues. Plaintiff in this case obviously hopes to do the same, arguing that "[e]liminating any ability to present evidence addressing the degree of Defendant's misconduct, callous behavior and motivations for financial gain during the initial trial would easily obscure the magnitude of the case itself and the significance of the jury's decision." Pl. Mem. 8. In other words, plaintiff wants the case to be about everything **but** what actually caused Mr. Irvin's death.

This is exactly the kind prejudice that bifurcation is intended to eliminate. *See, e.g.*, *Emerick*, 750 F.2d at 22 (affirming trial court's decision to bifurcate because "allowing the question of punitive damages and its corresponding inquiry into conduct to be litigated at the liability stage of the trial would confuse the jury and unfairly prejudice Suzuki"); *U.S. v. Matusoff*, 204 F.R.D. 396, 401 (S.D. Ohio 2001) ("In addition, resolving liability and damages in separate trials, in the manner as ordered by the Court, will avoid the possibility of prejudice that could result from the introduction of evidence (such as the financial condition of the Defendants) which, although relevant on the issue of punitive damages, is irrelevant on liability."); *Carter-Herman v. City of Philadelphia*, No. Civ. A. 95-4030, 1996 WL 745227, at *6 (E.D. Pa. Dec. 23,

1996) ("The scales of prejudice tipped in favor of bifurcating the punitive damage phase of this case. A charge on punitive damages during the primary trial could have prejudiced the City severely, tempting the jury to award excessive compensatory damages against a defendant with deep pockets."); *Scheufler*, 895 F. Supp. at 1414 ("Bifurcation would also prevent possible prejudice to the defendant. As noted above, some evidence which is irrelevant to the determination of actual damages is highly relevant to the issue of punitive damages. Presentation of such evidence only after a determination of actual damages would eliminate any possibility that the jury could consider the evidence for an improper purpose.").

Failure to bifurcate would also undermine this Court's underlying case management objectives. With the Court's guidance, the parties have been working towards a series of initial trials that the parties hope will help provide fair evaluations of the various categories of claims (short term use, long term use, stroke, etc.) included in the MDL. If plaintiffs are permitted to make Merck's alleged "bad" conduct the dominant issue in every trial, the ability to obtain meaningful determinations of the underlying scientific basis for the various claim categories will be lost. As the Court knows from the recent *Daubert* hearings, fair determination of the underlying causation issues in this case will require careful evaluation of the complex scientific evidence regarding short term use. Trials should be structured to maximize the jury's ability to focus on such scientific issues, not to distract the jury from those issues. In this case, is vital that the jury have the opportunity and the capacity to analyze the scientific evidence necessary to determine whether Vioxx could have harmed Mr. Irvin. Bifurcation will help ensure that the jury can do so.

Finally, bifurcation will not prejudice plaintiff in any meaningful respect. Plaintiff argues that bifurcation will (1) disrupt "the logical flow of the evidence" in her case-in-chief, (2) require

her to make "duplicative proofs" on punitive damages, (3) force her to present her case in a "sterile atmosphere," and (4) prolong the trial. Pl. Mem. 8-9. For all the reasons previously described, however, none of these objections has any merit.

As already noted, the evidence relevant to plaintiff's compensatory damage claims does not materially overlap the evidence relevant to her punitive damage claims. Indeed, as noted in Merck's Reply Memorandum in support of its motions in limine, much if not all of the marketing and other conduct evidence that plaintiff hopes to introduce on compensatory damages is irrelevant even on the issue punitive damages. Under *State Farm*, punitive damages evidence must have a "nexus" to the conduct that harmed the plaintiff. 438 U.S. at 422-23. In this case there is no nexus between any of the alleged punitive damages evidence and Mr. Irvin or his prescribing physician.

As also discussed above, plaintiff's "sterile atmosphere" complaint is just another way of saying that plaintiff hopes to distract the jury from the core scientific issues. Plaintiff has no right to litigate those issues in an emotionally-charged atmosphere and cannot assert that she is prejudiced by absence of such an environment. Finally, plaintiff suggests no serious basis for the contention that bifurcation will lengthen the trial. On the contrary, bifurcation will substantially enhance the likelihood that the parties will be able to present the issues succinctly and cleanly and complete the trial in the two weeks the Court has allotted.

In short, bifurcation will promote judicial efficiency in this case, promote the broader case management objectives of the MDL, protect Merck against the possibility of substantial prejudice, and impose no prejudice on plaintiff. There is every reason to bifurcate the compensatory and punitive damages in this case and no reason not to do so. Accordingly, the Court should order that plaintiff's punitive damages claim, if allowed to proceed at all, be tried in

a second phase separately from plaintiff's claims for underlying liability, causation, and compensatory damages.

## IV. CONCLUSION.

For the reasons discussed, Merck respectfully requests that this Court dismiss plaintiff's punitive damages claim or, if it finds dismissal not warranted, order the claim bifurcated.

Respectfully submitted,

*/s/ Phil Wittmann*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

791433v.1

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum of Defendant Merck & Co., Inc. in Opposition to Plaintiff's Claim for Punitive Damages and in Support of Bifurcation of Trial has been served on Liaison Counsel Russ Herman by e-mail and by Federal Express, upon Andy Birchfield by e-mail and by Federal Express, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 17th day of November, 2005.

*Phil Wittmann*
_____

791433v.1