IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JAMES B. SMITH, Individually and As Administrator of the ESTATE OF MARILYN E. SMITH, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> MERCK & CO., INC., <br><br> Defendant. | Case No. 4:05-cv-158 <br><br> AMENDED COMPLAINT AND JURY DEMAND |

COMES NOW, Plaintiff, James B. Smith, individually and as Administrator of the Estate of Marilyn E. Smith, deceased, by and through the undersigned attorneys at law, and for his cause of action against Defendant, Merck & Co., Inc., states as follows:

1. James B. Smith, (hereinafter referred to as "Smith") is and was at all times material hereto an adult, and the spouse of Marilyn E. Smith (hereinafter after referred to as "Marilyn").

2. Smith is a resident of Des Moines, Polk County, Iowa, and is the duly appointed, qualified, and acting Administrator of the Estate of Marilyn Smith, deceased.

3. At all times material hereto, Marilyn was an adult and resident of Des Moines, Polk County, Iowa and the spouse of James E. Smith.

4. Defendant Merck & Co., Inc. (hereinafter referred to as "Merck"), is a New Jersey corporation with its principal place of business located in Whitehouse Station, New Jersey.

5. At all times material hereto, Merck was registered to do and was doing business in Polk County, Iowa, and within the Southern District of Iowa.

6. This action is properly before this Court because there exists complete diversity of citizenship between Plaintiff and Merck. Further, the amount in controversy claimed by Plaintiff exceeds $75,000.00. As a result of the same, this Court has jurisdiction pursuant to 28 U.S.C. Section 1332 (a).

7. Merck is in the business of researching, designing, formulating compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and advertising for sale, the drug Vioxx.

8. Vioxx is the trade name for the generic drug rofecoxib. Vioxx was and is utilized, prescribed and sold for pain management and relief of pain. Vioxx has been widely advertised and marketed by Merck as a safe and effective pain relief medication.

9. Merck made filings with the United States Food and Drug Administration in the United States regarding its development of Vioxx.

10. Vioxx has been linked to several life threatening medical disorders including but not limited to edema, changes in blood pressure, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications, and death.

11. Evidence linking Vioxx to significant edema, serious cardiovascular events and death has been noted and reported in a large study that was sponsored by Merck in 2000. These known material risks were not disclosed to or shared with the Plaintiff by Merck.

12. From March 2000 through September 2004, Merck continued to represent that it was not that Vioxx caused cardiovascular problems, but that naproxen protected against those problems for the next four and one-half years.

13. Merck engaged in a massive advertising and sampling program, reportedly employing an additional 700 salesperson to "detail" Vioxx to physicians. The effect of such action was a more than $2 billion profit for Merck in 2000, and a 23 percent market share for Vioxx.

14. In November of 2000, *The New England Journal of Medicine* published the *VIGOR* study (VIGOR = Vioxx Gastrointestinal Outcomes Research).

15. In February 2001, an FDA advisory panel recommended the FDA require a label warning of the possible link to cardiovascular problems.

16. Among other studies, on October 5, 2002 a study done at Vanderbilt University, published in The Lancet, noted that patients taking 50 mg. of Vioxx for more than five days demonstrated a 70% greater likelihood of developing coronary artery disease.

17. Over the next several years, continual complaints were made to the FDA surrounding the link between Vioxx and cardiovascular events.

18. On August 25, 2004 Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that concludes that Vioxx users were more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

19. On August 26, 2004 and thereafter, Merck continued to minimize any risks.

20. In 2003-2004, Merck began a three year, 2600 patient randomized trial to see whether Vioxx could claim that it protects against the recurrence of colon polyps, which can become cancerous. After 18 months of treatment, researchers had observed a higher heart attack and stroke risk in patients on Vioxx, when Vioxx was compared to a placebo and not another

NSAID. The FDA reported that 3.5% of the subjects on Vioxx had suffered a heart attack or stroke, compared with 1.9% on placebo.

21. On September 30, 2004, Merck withdrew Vioxx from the United States and more than 80 other countries in which it was marketed.

22. Prior to November 9, 2001, Marilyn Smith was prescribed Vioxx by her physician.

23. Marilyn remained on Vioxx until approximately July 5, 2004.

24. On July 5, 2004, Marilyn suffered a stroke and was hospitalized for four days. On or about July 9, 2004, Marilyn died from the effects of such stroke.

## COUNT I – STRICT LIABILITY
## (FAILURE TO WARN AND DESIGN DEFECT)

25. Plaintiff hereby incorporates all preceding paragraphs as if set forth fully herein.

26. Vioxx was defective at the time of its design, manufacture, testing, production, inspection, endorsement, prescription, sale and distribution, which defects included lack of warnings or consumer information at the time it was placed into the stream of commerce.

27. Said lack of warning failed to warn of the dangerous propensities of said product, which risks were known or reasonably scientifically knowable to Merck.

28. Merck knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

29. At all times material hereto, the aforesaid product was defective and the Merck knew that the product was to be used by the user without inspection for defects therein. Moreover, Marilyn neither knew nor had reason to know at the time of the use of the Vioxx, of the existence of the aforementioned defects.

30. As a result of the defective condition of the aforesaid product, Marilyn suffered injuries and damages.

31. As a direct and proximate result of the defective condition of the aforesaid product, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

    a) Pre-death physical and mental pain and suffering;

    b) Hospital and medical expenses;

    c) Burial expenses;

    d) Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

32. As a direct and proximate result of the defective condition of the aforesaid product, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection, comfort and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc., for any and all amounts which the Estate of Marilyn Smith is entitled to, as a result of the death of Marilyn Smith, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT II - MISREPRESENTATION & FALSE REASSURANCE BY MERCK

33. Plaintiff incorporates by reference herein all preceding paragraphs as if fully set forth herein.

34. Merck, from the time the aforementioned product was first manufactured, marketed and distributed, and at all times material hereto, willfully and intentionally reassured Marilyn Smith's treating physicians and the entire health care community, of the safety of Vioxx.

5

35. Merck, from the time the aforementioned product was first manufactured, marketed and distributed, and at all times material hereto, made misrepresentations of safety and omitted and/or concealed material facts from, Marilyn Smith's treating physicians and the entire health care community.

36. Merck cannot hide behind the learned intermediary doctrine because Merck falsely reassured treating physicians of the safety of its product and did so in order to ensure increased sales of Vioxx.

37. The Plaintiff was not aware of the falsity of the foregoing representations, nor was she aware that material facts concerning the safety of Vioxx had been concealed or omitted.

38. Merck intentionally reassured physicians and the health care community and suppressed the true facts concerning Vioxx with the intent to defraud the Plaintiff in that Merck knew that the Plaintiff's physicians would not prescribe Vioxx and that the Plaintiff would not have used the product, if they were aware of the true facts concerning the dangers of the product.

39. As a result of the aforementioned misrepresentations and false reassurances by Merck, the Plaintiff suffered injuries and damages.

40. As a direct and proximate result of the misrepresentations and false reassurances of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

    a) Pre-death physical and mental pain and suffering;

    b) Hospital and medical expenses;

    c) Burial expenses;

    d) Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

41. As a direct and proximate result of the aforementioned misrepresentations and false reassurances by Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc. for any and all amounts which the Estate of Marilyn Smith is entitled to, including punitive damages in an amount sufficient to deter Merck from such wrongful conduct in the future, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT III – NEGLIGENCE

42. Plaintiff incorporates by reference herein all preceding paragraphs as if fully set forth herein.

43. At all times herein mentioned, Merck had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell, consult and adequately warn of the risks and dangers of Vioxx.

44. At all times herein mentioned, negligently and carelessly manufactured, designed, formulated, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, consulted or failed to consult, prepared for use and sold the aforementioned product and failed to adequately test and warn of the risks and dangers of the aforementioned product.

45. As a result of said negligence and carelessness of Merck, Marilyn suffered injuries and damages.

46. As a direct and proximate result of the negligence of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

    a) Pre-death physical and mental pain and suffering;

    b) Hospital and medical expenses;

    c) Burial expenses;

    d) Incurred loss to the net value of Marilyn Smith's Estate, which the Decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

47. As a direct and proximate result of the negligence of Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against Merck for any and all amounts which the Estate of Marilyn Smith is entitled to, as a result of the death of Marilyn Smith, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT IV – NEGLIGENCE PER SE

48. Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

49. At all times material hereto, Merck had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembling, inspection, research, distribution, marketing, labeling, packaging, preparation for use, distributing, consulting, sale and warning of the risks and the dangers of Vioxx.

50. At all times herein mentioned, Merck violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 301, et seq., related amendments and codes and federal

regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, the law of the State of Iowa, and other applicable laws, statutes and regulations.

51. Smith, as a purchaser and consumer of Vioxx, is within the class of persons the statutes and regulations described above were designed to protect, and the Plaintiff's injuries are the type of harm these statutes are designed to prevent.

52. Merck failed to meet the standard of care set by the following statutes and regulations, which were intended for the benefit of individuals such as Smith, making Merck negligent per se in the following:

    a) The labeling lacked adequate information on the use of Vioxx, even though Merck was aware of the widespread use of Vioxx, in violation of 21 C.F.R. Section 201.56(a)(d);

    b) The labeling lacked adequate information on the approximate kind, degree and duration of expected improvement, alone or in combination in violation of 21 C.F.R. Section 201.57(c)(3)(i);

    c) The labeling does not state that there was a lack of evidence to support the common belief of the safety and efficacy of Vioxx in violation of 21 C.F.R. Section 201.57(c)(3)(i) and (iv) and (c)(2);

    d) The labeling failed to add warnings for serious cardiovascular events and death as soon as there was reasonable evidence of their association with the drug in violation of 21 C.F.R. Section 201.57(e);

    e) There was inadequate information for patients for the safe and effective use of Vioxx, in violation of 21 C.F.R. Section 201.57(f)(2);

    f) There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Vioxx, in violation of 21 C.F.R. Section 201.57(f)(1) and

    g) The labeling was misleading, in violation of 21 C.F.R. Section 201.56(b).

53. As a result of Merck's failure to comply with the above laws, the Plaintiff suffered injuries and damages.

54. As a direct and proximate result of the negligence of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

    a)     Pre-death physical and mental pain and suffering;

    b)     Hospital and medical expenses;

    c)     Burial expenses;

    d)     Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

55. As a direct and proximate result of the negligence of Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc., for any and all amounts which the Estate of Marilyn Smith is entitled to, as a result of the death of Marilyn Smith, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT V – BREACH OF IMPLIED WARRANTY

56. Plaintiff incorporate by reference herein all preceding paragraphs as if fully set forth herein.

57. Prior to the time used Vioxx, Merck impliedly warranted to Smith and others that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

58. Plaintiff were and are unskilled in the research, design, and manufacture of Vioxx and reasonably relied entirely on the skill, judgment, and implied warranty of Merck in using the aforementioned product.

10

59. The aforementioned product was neither safe for its intended use nor of merchantable quality, as warranted by Merck, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

60. As a result of the aforementioned breach of implied warranties by Merck, Plaintiff suffered injuries and damages.

61. As a direct and proximate result of the breach of implied warranties of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

    a) Pre-death physical and mental pain and suffering;

    b) Hospital and medical expenses;

    c) Burial expenses;

    d) Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

62. As a direct and proximate result of the breach of implied warranties of Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc., for any and all amounts which the Estate of Marilyn Smith is entitled to, as a result of the death of Marilyn Smith, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT VI –BREACH OF EXPRESS WARRANTY

63. Plaintiff incorporate by reference herein, all preceding paragraphs as though fully set forth herein.

64. At all times relevant hereto, Merck expressly warranted to the Plaintiff, by and through statements made by Merck or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

65. In utilizing the aforementioned product, Smith relied on the skill, judgment, representations and foregoing express warranty of Merck. Said warranties and representations were false in that the aforementioned products were not safe, and were unfit for the uses for which they were intended.

66. As a result of the aforementioned breach of express warranties by Merck, Plaintiff suffered injuries and damages.

67. As a direct and proximate result of the breach of express warranties of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

    a) Pre-death physical and mental pain and suffering;

    b) Hospital and medical expenses;

    c) Burial expenses;

    d) Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

68. As a direct and proximate result of the breach of implied warranties of Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc., for any and all amounts which the Estate of Marilyn Smith is entitled to, as a result of the

death of Marilyn Smith, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT VII – FRAUD/DECEIT BY CONCEALMENT

69. Plaintiff incorporate by reference herein all preceding paragraphs as if fully set forth herein.

70. Merck, from the time the aforementioned product was first manufactured, marketed and distributed, and at all times material hereto, willfully deceived the Plaintiff by concealing from them, the Plaintiff's physician, and the general public, the true facts concerning Vioxx, which Merck, as manufacturer, maker and distributor of the product had a duty to disclose.

71. Merck committed fraud and deceit by failing to disclose, among other things, the following:

    a) That Merck sponsored a large study which concluded that patients taking Vioxx had four times the risk of heart attacks as the general public and that the risk appeared to increase over time;

    b) That Merck had received letters from the Department of Health and Human Services as early as December of 1999 stating that it (the Department) had determined that the promotional pieces utilized by Merck were false and misleading because they contained misrepresentations of Vioxx' safety profile, unsubstantiated comparative claims and were lacking in fair balance;

    c) Merck conducted a sales and marketing campaign to promote the sale of Vioxx and willfully deceived the Plaintiff, Plaintiff's physician, and the general public as to the health risks and consequence of the use of Vioxx; and

    d) That Merck was aware of the foregoing risks and that Vioxx was not safe, fit and effective for human consumption, that the use of Vioxx was hazardous to health and that Vioxx had a propensity to cause serious injuries to users, including but not limited to the injuries suffered by Marilyn Smith, the Plaintiff.

72. Merck intentionally concealed and suppressed the true facts concerning Vioxx with the intent to defraud the Plaintiff in that Merck knew that the Plaintiff's physician would not prescribe Vioxx and that the Plaintiff would not have used the product, if she were aware of the true facts concerning the dangers of the product.

73. As a result of the aforementioned fraudulent and deceitful conduct by Merck, the Plaintiff suffered injuries and damages.

74. As a direct and proximate result of the fraudulent conduct of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

  a) Pre-death physical and mental pain and suffering;

  b) Hospital and medical expenses;

  c) Burial expenses;

  d) Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

75. As a direct and proximate result of the breach of implied warranties of Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc. for any and all amounts which the Estate of Marilyn Smith is entitled to, including punitive damages in an amount sufficient to deter Merck from such wrongful conduct in the future, together with interest thereon at the maximum legal rate plus costs of this action.

## COUNT VIII – NEGLIGENT MISREPRESENTATION

76. Plaintiff incorporate by reference herein, all preceding paragraphs as though fully set forth herein.

77. Merck, from the time the aforementioned product was first manufactured, marketed and distributed, and up to the present, made false misrepresentations to Plaintiff, Plaintiff's physicians, and the general public, including but not limited to the misrepresentation that Vioxx was safe, fit and effective for human consumption.

78. At all times herein mentioned, Merck conducted a sales and marketing campaign to promote the sale of the aforementioned Vioxx and deceived the Plaintiff, Plaintiff's physicians, and the general public as to the health risks and consequences of the use of Vioxx.

79. Merck made the foregoing representations without any reasonable grounds for believing them to be true. These representations were made directly by Merck, its sales representatives and other authorized agents of Merck, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance in the prescription, purchase and use of Vioxx.

80. The foregoing representations by Merck were in fact false, in that the Vioxx was not safe, fit and effective for human consumption, the use of Vioxx is hazardous to health and Vioxx has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by the Plaintiff, Marilyn Smith.

81. The foregoing representations by Merck were made with the intention of inducing reliance in the prescription, purchase and use of Vioxx.

82. In reliance on the misrepresentations by Merck, Smith was induced to purchase and use Vioxx. If Smith had known the true facts and the facts concealed by Merck, Smith would not have used the Vioxx.

83. The reliance of the Plaintiff upon Merck's misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities who are in a position to know the true facts.

84. As a result of the foregoing negligent misrepresentations by Merck, Plaintiff suffered injuries and damages.

85. As a direct and proximate result of the negligent misrepresentations of Merck, Smith as Administrator of the Estate of Marilyn Smith, seeks the following damages:

   a) Pre-death physical and mental pain and suffering;

   b) Hospital and medical expenses;

   c) Burial expenses;

   d) Incurred loss to the net value of Marilyn Smith's Estate, which the decedent could reasonably be expected to have accumulated as a result of her own efforts if she had lived out the terms of her natural life.

86. As a direct and proximate result of the negligent misrepresentations of Merck, Smith, Individually, has suffered in the past and will suffer in the future, the loss of society, companionship, love, affection and consortium of his wife, Marilyn.

WHEREFORE, the Plaintiff, the Estate of Marilyn Smith, by and through its Administrator, James Smith, does hereby request judgment against the Defendant, Merck & Co., Inc., for any and all amounts which the Estate of Marilyn Smith is entitled to, as a result of the death of Marilyn Smith, together with interest thereon at the maximum legal rate plus costs of this action.

## JURY DEMAND

Plaintiff hereby requests a jury trial in the above-entitled matter.

MOYER & BERGMAN, P.L.C.

By: *Kimberly K. Hardeman*
LARRY D. HELVEY            LI0008653
KIMBERLY K. HARDEMAN       LI0015070
2720 First Avenue N.E.
P. O. Box 1943
Cedar Rapids, IA 52406-1943
Ph: (319) 366-7331
Fax: (319) 366-3668

ATTORNEYS FOR PLAINTIFF

F:\WP\KKH\VIOXX-BEXTRA\Smith, James\Amended Complaint.doc

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies, under penalty of perjury, that on the date indicated below, a true copy of the foregoing instrument was served upon all parties in interest to the above entitled cause by enclosing the same in an envelope addressed to each party at their respective address as disclosed on the service list appended hereto by:

☒ U.S. Mail   ☐ Fax   ☐ Hand Delivery
☐ Overnight Courier   ☐ Certified Mail   ☐ Other

I certify under penalty of perjury that the foregoing is true and correct. Executed on this 11 day of NOV, 2005 in Cedar Rapids, Linn County, Iowa.