IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION | ) MDL NO. 1657<br>)<br>) SECTION: L |
| THIS DOCUMENT RELATES TO<br>CLASS ACTIONS | )<br>) JUDGE FALLON<br>) MAG. JUDGE KNOWLES |

<u>**MERCK & CO., INC.'S OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S
MOTION FOR A SUGGESTION OF REMAND IN CONNECTION WITH CLASS
CERTIFICATION PROCEEDINGS**</u>

Defendant Merck & Co., Inc. ("Merck"), by and through its counsel, respectfully submits

this opposition to plaintiffs' motion for a suggestion of remand of the class action master

complaints to transferor district courts for the purpose of considering proposed single-state class

certifications if the Court denies nationwide class certification.

Despite the early stage of this MDL proceeding, plaintiffs' motion asks the Court to

request that the MDL Panel temporarily remand all of their proposed statewide class actions to

the transferor courts prior to deciding class certification.  Then, plaintiffs propose that the Court

seek permission from the Chief Justice of the United States to "sit" (metaphorically, that is) in all

those transferor courts by designation, while actually remaining at all times in the Eastern

District of Louisiana and ruling on class certification issues from that forum, just as if the cases

had ***not*** been remanded.[1]  Once class certification is resolved, plaintiffs then propose that the

cases be sent back to the MDL for re-coordination in this MDL proceeding, which they never

really left.  What is the purpose of this mind-boggling Rube Goldberg proposal for litigating the

class issues in this proceeding?  Plaintiffs readily admit that they would like to avoid having

---

[1]     It is unclear whether plaintiffs intend to brief class certification separately to this Court for each of the
twelve circuit courts of appeals and/or whether they expect the Court to issue twelve separate rulings.

Fifth Circuit law apply to all their class actions.  Instead, they would like numerous federal appellate courts around the country to duplicate each others' work and separately rule on any Rule 23(f) appeals of class certification orders or denials, apparently in the belief that some of those appellate courts will apply looser interpretations of Rule 23's certification requirements than the Fifth Circuit.  Plaintiffs' motion should be denied.

## ARGUMENT

Plaintiffs' motion for a suggestion of remand has one admitted purpose:  to evade the well-established law that appeals from coordinated pretrial rulings in MDL proceedings are appropriately heard by the Court of Appeals with jurisdiction over the transferee court. However, that law exists for the very same reason MDL proceedings were created in the first place:  to promote efficiency and consistency of results.  Because plaintiffs' proposal would directly contravene these two MDL objectives, their motion should be denied.

## I.   PLAINTIFFS' PROPOSAL IS DIRECTLY CONTRARY TO ESTABLISHED MDL PROCEDURES.

There is no question that the "pretrial" proceedings for which MDLs were created include class certification.  In fact, the MDL Panel has frequently listed class certification as a common issue that makes Section 1407 transfer appropriate.  *See, e.g., In re Hydrogen Peroxide Antitrust Litig.,* 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (ordering Section 1407 transfer of class actions in part because of the need to prevent inconsistent pretrial rulings on class certification); *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 344 F. Supp. 2d  755, 757 (J.P.M.L. 2004) (same); *In re Immunex Corp. Avg. Wholesale Price Litig.,* 201 F. Supp. 2d 1378, 1380 (J.P.M.L. 2002) (same); *In re Bridgestone/Firestone, Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.,* Docket No. 1373, 2000 U.S. Dist. LEXIS 15926, at *6 (J.P.M.L. Oct. 24, 2000) (same).  *See also In re Multidistrict Private Civil Treble Damage Litig. Involving*

*Plumbing Fixtures,* 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("*In re Plumbing Fixture Cases*")
("[i]t is the clear intent of Section 1407 to invest the transferee court with the exclusive powers,
after transfer, to make the pretrial determinations of the class action questions.").

  Plaintiffs' cases are not to the contrary.  For example, while plaintiffs cite *In re Plumbing
Fixtures* for the proposition that the trial court should decide class certification (Pls.' Mem. at 5),
that case merely confirms that the MDL court should decide class certification.  (*See id.* at 6.)  In
that case, the City of New York brought a class action on behalf of itself and "all City, town and
school district governmental units in the State of New York exceeding a certain population, and
asserted claims that overlapped with other cases transferred to an MDL proceeding.  *In re
Plumbing Fixtures*, 298 F. Supp. at 486.  When faced with transfer to the MDL court, the City
requested that the Panel transfer the case for purposes of all pretrial issues except for class
determination, which it requested be heard by the transferor court.  *Id.* at 487-88.  The Panel
rejected the proposal, explaining:

> It is in the field of class action determinations in related multidistrict civil actions
> that the potential for conflicting, disorderly, chaotic judicial action is the greatest.
> . . . It is certain, however, that if these conflicting requests are determined under
> Section 1407 in a transferee court, the information and means for fair, speedy and
> economical coordinated determinations will exist.

*Id.* at 492.  Moreover, Congress recently reaffirmed the Panel's holding in *Plumbing Fixtures*
when it enacted the Class Action Fairness Act in part to ensure that more class actions could be
coordinated in MDL proceedings.  *See* S. Rep. 109-14, at 23 ("when overlapping cases are
pending in different federal courts, they can be consolidated under one single judge to promote
judicial efficiency and ensure consistent treatment of the legal issues involved").

  Not surprisingly, plaintiffs are unable to cite any cases in which the MDL Panel
remanded a case ***before*** class certification; Merck is likewise unaware of any.  To the contrary,
the MDL Panel has recognized that all pretrial proceedings in class actions are best conducted in

the MDL proceeding.  For example, in *In re Great Southern Life Insurance Co. Sales Practices Litigation,* 217 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002), the Panel denied a suggestion of remand from the transferee judge where certain plaintiffs opted out of a class settlement arrived at during MDL proceedings and wished to remand their cases to the transferor courts.  The Panel concluded that remand was premature where, as here, "very few pretrial proceedings have been conducted."  *Id.*

The *Great Southern* decision is consistent with the general recognition by the MDL Panel and transferee courts that remand is inappropriate when continued coordination will "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."  *In re Nat'l Century Fin. Enters., Inc., Fin. Inv. Litig.,* Case No. 2:03-md-1565, 2004 U.S. Dist. LEXIS 10605, at *7 (S.D. Ohio Mar. 25, 2004) (*citing In re Heritage Bonds Litig.,* 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002)).  *See also In re Gypsum Wallboard,* 340 F. Supp. 990, 992 (J.P.M.L. 1972) (noting that "the most efficacious course to follow is to allow [the MDL judge] to rule on the summary judgment motion").  Plaintiffs' proposal appears calculated to increase the likelihood of inconsistent pretrial rulings and will waste judicial resources rather than conserve them.  Thus, even if the Court were to "suggest" remand to the MDL Panel, the Panel would almost certainly deny the suggestion.

For the same reasons, plaintiffs' stated objective – to create inconsistent appellate results on any Rule 23(f) appeals – merely highlights why their approach should be rejected.  (*See, e.g.,* Pls.' Mem. at 3 ("[i]f granted, this relief will enable all F.R.C.P. 23(f) appeals to be reviewed by the Circuit Court of Appeals of the transferor jurisdiction"); *id at* 6 ("[the] proposal for an interim remand to the transferor court to decide the class certification motion, followed by a return to the MDL court for further coordinated proceedings, will allow the class certification

court and the trial court to be in the same jurisdiction").)  The law is clear that decisions made by

MDL courts should be resolved by the appellate court with jurisdiction over the single court

selected by the MDL Panel to handle pretrial proceedings, because such an approach furthers the

efficiency and consistency of those proceedings.  Indeed, rather than cite case law supporting

their proposal (insofar as none exists), plaintiffs rely on a long line of cases confirming that

MDL decisions should be decided under the transferee court's laws and reviewed by the

transferee court's court of appeals.

In *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171 (D.C. Cir. 1987) (cited

in Pls.' Mem. at 3), for example, the court was asked to decide whether the United States

Supreme Court's decision in *Van Dusen v. Barrack,* 376 U.S. 612 (1964), holding that in

§1404(a) transfers of venue in diversity actions the transferee court is to apply the law of the

state that would have applied in the transferor court, extends to multidistrict litigation transfers

under § 1407.  829 F.2d at 1173-74.  The court correctly reasoned that MDL transfer is different

from changes of venue because the purpose of the MDL statute is to conserve judicial resources

and avoid conflicting rulings.  Because the application of federal law demands consistency, the

D.C. Circuit held that the law of the ***transferee*** forum should apply to ensure uniform treatment

of like motions in all transferred cases.  *Id.* at 1175.  The court explained:

> Applying divergent interpretations of the governing federal law to plaintiffs,
> depending solely upon where they initially filed suit, would surely reduce the
> efficiencies achievable through consolidated preparatory proceedings.  Indeed,
> because there is ultimately a single proper interpretation of federal law, the
> attempt to ascertain and apply diverse circuit interpretations simultaneously is
> inherently self-contradictory. . . .  [I]t is logically inconsistent to require one judge
> to apply simultaneously different and conflicting interpretations of what is
> supposed to be a unitary federal law.

*Id.* at 1175-76.  Other cases cited by plaintiffs similarly support Merck's view that the purpose of

MDL coordination is best served by applying the governing law of the transferee court.  *See In re*

*Food Lion, Inc. Fair Labor Standards Act "Effective Scheduling" Litig,* 73 F.3d 528, 532-33 (4th Cir. 1996) ("the overriding purpose of the multidistrict procedure dictates that these claims be decided in the same appellate forum"); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 220 F.R.D. 195, 200-201 (S.D.N.Y. 2003) ("motions for class certification are 'particularly suited for decision by the transferee court because it is important there not be a conflict between or among the transferor courts as to how related actions are to be treated'") (quoting Fed. Prac. § 3866 at 619).

Judge Ginsburg's opinion in *Korean Airlines Disaster* has been adopted by the majority of courts around the country considering similar issues, including the MDL Panel and the Eastern District of Louisiana.  In *FMC Corp. v. Glouster Engineering Co.,* 830 F.2d 770 (7th Cir. 1987), for example, the court considered what circuit's law applies when an MDL court certifies an interlocutory appeal under 28 U.S.C. § 1292(b), the court of appeals for the circuit where the case was originally filed, or the circuit over the transferee court.  The court concluded that "a rule which gives the transferee circuit exclusive appellate jurisdiction over all orders issued by the transferee district court is simple to administer and free from uncertainty." *Id.* at 772.  In *In re Ford Motor Co. Bronco II Prods. Liab. Litig.,* MDL-991 Section "G", 1996 U.S. Dist. LEXIS 6769, at *2-3 (E.D. La. May 16, 1996), the court similarly applied the reasoning of *In re Korean Air Lines* in analyzing which law applies in determining the burden of proof regarding a motion to remand.  The court concluded that the law of the Fifth Circuit applied because of the need for consistent application of unitary federal law in multidistrict litigation. *Id.* at *3-4.  *See also In re Taxable Mun. Bond Sec. Litig.,* 796 F. Supp. 954, 962-63 (E.D. La. 1992) (same); *In re Starlink Corn Prod. Liab. Litig.,* 211 F. Supp. 2d 1060, 1064 (N.D. Ill. 2002) ("[a]pplying the law of the transferor circuit could yield a situation where we would find federal

- 6 -

jurisdiction exists over claims from some parts of the country, but not from others.  This is an untenable result.").[2]

Finally, plaintiffs' effort to derive support for their novel proposal from the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.* (2005) ("CAFA"), similarly fails.  Plaintiffs essentially argue that the Court should grant their motion because CAFA encourages innovation, and their proposal would "help restore some balance" to what they perceive as "mounting restrictions on a plaintiff's ability to serve as the master of its complaint."  (Pls.' Mem. at 7.)  However, as noted *supra*, one key purpose of CAFA was to promote the very types of efficiencies that plaintiffs now seek to undermine.  *See* S. Rep. 109-14, at 76 ("when numerous duplicative class actions are brought in federal court, the federal multi district litigation (MDL) mechanism allows all the cases to be coordinated for pretrial proceedings in one federal court").  Indeed, plaintiffs' argument that "permitting [the MDL Court to follow its law] . . . would defeat the significant and valuable interest of respecting the plaintiffs' choice of forum," is nothing more than a policy argument against MDL proceedings to begin with, precisely the reverse result of what CAFA sought to achieve.  (*See* Pls.' Mem. at 7-8.).  If plaintiffs think MDL proceedings are a bad idea, the proper forum to lobby for change is before Congress, not before this Court.

In short, plaintiffs are asking this Court to ask that the MDL Panel reverse thirty years of established law on the proper conduct of MDL proceedings and allow them to brief and perhaps appeal class certification decisions to each of the nation's twelve circuit courts of appeals in the hopes that some will endorse a looser interpretation of Rule 23 than that adopted by the Fifth

---

[2]      Plaintiffs' suggestion that the ruling in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), supports their motion (*see, e.g.,* Pls.' Mem. at 5-6), is also groundless.  The issue here is the scope of the transferee court's authority to decide the *pretrial issue* of class certification by applying the law governing the transferee court.  Plaintiffs have no basis for suggesting that the Supreme Court's ruling in *Lexecon,* interpreting section 1407 to bar self-transfer for trial, somehow changed the well-established rules for pretrial proceedings, and no court has so held in the seven years since that ruling.

Circuit.  The only reason for this proposal is plaintiffs' apparent recognition that the Fifth Circuit has rejected class proposals similar to theirs.  Because the fear of an unfavorable result is no basis for upending MDL procedure, plaintiffs' motion should be denied.

## II.    PLAINTIFFS' PROPOSAL TO DELAY DECISIONS ON THEIR STATEWIDE CLASS CERTIFICATION MOTIONS SHOULD BE REJECTED.

Plaintiffs also propose that the Court simply defer ruling on their motions for certification of statewide classes (and even on this motion).  This is similar to the proposal plaintiffs made in their motion to stay the personal injury class action.  (*See generally* Pls.' Mem. In Support Of Mot. To Stay Class Briefing (Sept. 28, 2005).)  As Merck explained in its opposition to that motion, plaintiffs' proposal for further delay is contrary to Rule 23(c)(1)(A), which contemplates that class certification will take place at an "early practicable time," and the class certification scheduling order agreed to by the parties.  (*See id.* at 2.)  *See also* Fed. R. Civ. P. 23 (c)(1)(A) advisory committee notes ("active management may be necessary to ensure that the certification decision is not unjustifiably delayed"); *Denney v. Jenkins & Gilchrist*, No. 03 Civ. 5460(SAS), 2005 WL 388562, at *24 (S.D.N.Y. Feb. 18, 2005) ("Rule 23 directs courts to make a decision as to certification 'at an early practicable time.'  As the U.S. Court of Appeals for the Second Circuit has observed, '[t]he reason for this rule is plain: ***fundamental fairness*** requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages.'") (quoting *Siskind v. Sperry Ret. Program*, 47 F.3d 498, 503 (2d Cir. 1995)) (emphasis added); *McCarthy v. Kleindienst*, 741 F.2d 1406, 1411-12 (D.C. Cir. 1984) ("Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages. . . . That, at bottom, is a matter of simple justice.").

Several months ago, the parties jointly submitted a proposed class certification schedule to the Court.  On agreeing to that schedule, entered by the Court in PTO-16, plaintiffs never indicated that they would be back before the Court a few months later with a multitude of proposals to ignore that schedule and defer consideration of their class certification motions. The parties have now agreed to a deadline of January 23, 2005 for the plaintiffs to name class representatives for those states in which they attempted to assert medical monitoring, economic loss and personal injury claims without named plaintiffs.  That is already a delay of 5 ½ months after the time when plaintiffs were supposed to submit the operative master complaint in this proceeding.   The Court should reject any further efforts to delay the day of reckoning on plaintiffs' class proposals.

## CONCLUSION

Plaintiffs' request for remand of their class actions to transferor courts (sort of) is contrary to the very purpose of MDL proceedings.  Their request that the Court simply defer any rulings on their proposed statewide class actions is contrary to Rule 23 and PTO-16. For all of the foregoing reasons, plaintiffs' motion should be denied.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Merck & Co., Inc.'s Opposition to Plaintiffs' Steering Committee's Motion for a Suggestion of Remand in Connection with Class Certification Proceedings has been served on Liaison Counsel Russ Herman by e-mail and by Federal Express, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 23rd day of November, 2005.