U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED  11-28-05

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc.* | | CASE NO. 02:05CV4046 |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION FOR LEAVE TO USE DEPOSITION TESTIMONY
### OF ERIC TOPOL, M.D., DURING TRIAL

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., by and through her attorneys, urges the Court to grant her Motion for Leave to Use the Deposition of Eric Topol, M.D., during the trial of this case. Merck cannot claim that it is surprised or prejudiced by Plaintiff's designation of Dr. Topol's testimony for use in this case. Plaintiff listed Dr. Topol on her witness list, filed October 24, 2005. Plaintiff designated Dr. Topol's deposition testimony in its entirety on November 1, 2005. Both of these notices were in compliance with the Court's pretrial order. Further, Plaintiff on November 3, 2005, filed the motion for leave for which this memorandum provides further support. Moreover, the Court itself was aware of the need for this deposition for the *Irvin* trial and ordered it to occur at the last MDL status conference on October 27, 2005. See October 27, 2005 Status Conf. Transcript at 16-17 (Ex. 1).

Nor can Merck legitimately complain that any opinions that were rendered by Dr. Topol during the course of his November 22, 2005 deposition are inadmissible. Defendant Merck & Co. has had notice of Dr. Topol's opinions regarding the dangerous nature of Vioxx

Fee
Process
X Dktd
CtRmDep
Doc.No.

since April 2001 when Dr. Topol was consulting with Merck. Dr. Topol is not a retained expert and his appearance was secured only after this court intervened and ordered it to occur. Moreover, Plaintiff has given notice of her intent to use Dr. Topol's testimony if available throughout the pretrial process. For these reasons and those outlined below, Plaintiff urges the Court to grant her Motion.

## STATEMENT OF FACTS

After its formation in April of 2005 by order of this Court, the Plaintiff's Steering Committee (PSC) sought to organize itself and identify discovery that it could uniquely perform in federal court in furtherance of these consolidated cases. One of the areas that the PSC quickly identified was discovery from important third parties, like the FDA and Merck consultants, that could not be performed efficiently through state court venues.

One of the first third parties that the PSC identified as having importance to the central issues in this litigation was Eric J. Topol, M.D. of the Cleveland Clinic. The Cleveland Clinic has been the number one cardiology center in the world for the last eleven years. See Dr. Eric Topol dep. at 12 (Ex. 2). Dr. Eric Topol is Chairman of the Department of Cardiovascular Medicine at Cleveland Clinic, as well as Provost of the Cleveland Clinic Learner School of Medicine and Chief Academic Officer of Cleveland Clinic. Dr. Topol is one of the premier cardiologists in the world. See Dr. Eric J. Topol dep. at 9-11.

Dr. Topol was one of Merck's preeminent cardiology consultants who recognized early on that Vioxx was capable of causing cardiovascular injury and death in patients who took it. As a result of this recognition, Dr. Topol valiantly attempted to work with Merck to perform appropriate studies and to warn doctors and patients of the risk. Unfortunately, Dr. Topol's efforts were met with resistance from Merck and Merck sought to discredit him and his

colleagues at the Cleveland Clinic. Between 2001 and 2005, Dr. Topol and his colleagues at the Cleveland Clinic wrote no less that nine (9) articles and editorials in the peer-reviewed literature on the topic. These include, among others, the following:

- "Risk of Cardiovascular Events Associated with Selective COX-3 Inhibition," Journal of the American Medical Association (2001).

- "Cox-2 Inhibitors and Cardiovascular Risk: We Defend Our Data and Suggest Caution," Cleveland Clinic Journal of Medicine (2001).

- "A Coxib a Day Does Not Keep the Doctor Away," The Lancet (2004).

- "Perspective: Failing the Public Health – Rofecoxib, Merck and the FDA," New England Journal of Medicine (2004).

- "The Sad Story of Vioxx and What We Should Learn from It," Cleveland Clinic Journal of Medicine (2004).

- "Cardiovascular Events Associated with Non-steroidal Anti-Inflammatory Drugs: A Meta-Analysis of Randomized Placebo-Controlled Trials," Archives of Internal Medicine (2005).

- "Arthritis Medicines and Cardiovascular Events – 'House of Coxibs,'" Journal of American Medical Association (2005).

See Dr. Eric J. Topol's CV (Ex. 3).

Although Dr. Topol's actions are central to the story of this case, he has not voluntarily agreed to cooperate with this litigation. Dr. Topol is not a retained expert on behalf of the Plaintiff. As set forth below, the PSC has been diligent in seeking Dr. Topol's documents and deposition which was finally achieved through this Court's intervention.

On July 8, 2005, the PSC served the Cleveland Clinic Foundation (CCF) and Dr. Topol with a subpoena duces tecum and a notice of records deposition. (Ex. 4). According to the subpoena, the records were to be produced on or before August 5, 2005. Shortly thereafter on July 22, 2005, Christopher Tisi, the PSC representative dealing with these issues, received a telephone call from the attorney representing the CCF who asked for an extension of time to

review and produce documents. See Letter from Pamela Wilson to Christopher Tisi, July 22, 2005 (Ex. 5). CCF counsel sought a mid-September production date for Dr. Topol's documents. While the PSC agreed to meet with CCF counsel on a modified production schedule, Mr. Tisi did not agree to the mid- September production proposed by CCF knowing this Court's desire to advance this case on an expedited timetable. See Letter from Christopher V. Tisi to Pamela Wilson, July 25, 2005 (Ex. 6).

On July 29, 2005, Mr. Tisi had a conference with Victoria Vance, CCF counsel, concerning the document production schedule. In that conversation, CCF counsel indicated that the earliest date that documents could be produced was August 30, 2005. Mr. Tisi agreed to that schedule. See Letter from Victoria Vance to Christopher Tisi, July 30, 2005 (Ex. 7). In that conversation, a substantive deposition of Dr. Topol was discussed. However, Mr. Tisi indicated that he could not set the deposition until the PSC had the opportunity to review Dr. Topol's documents. This was followed by another letter confirming that, among other things, CCF would send Dr. Topol's documents directly to the DSC at their request. See Letter from Victoria Vance to Christopher Tisi, August 26, 2005 (Ex. 8).

On August 30, 2005, CCF Counsel wrote a letter to this Court, PSC Counsel and DSC Counsel attaching responses and Dr. Topol's responses letters indicating that Dr. Topol's documents were being produced simultaneously to both PSC and DSC. See Letter from V. Vance to Judge Eldon Fallon August 30, 2005 (Ex. 9).

Anticipating the possible need for a Dr. Topol's deposition after the documents were reviewed, Mr. Tisi wrote CCF Counsel requesting deposition dates. See Letter from C. Tisi to V. Vance, August 29, 2005 (Ex. 10). On September 2, CCF counsel offered October 4 and 14 but stated that she could not "hold" these dates. See Letter from V. Vance to C. Tisi,

September 2, 2005 (Ex. 11). On September 27, Mr. Tisi contacted Ms. Vance to arrange the deposition and learned that the October dates were no longer available. He confirmed this requested new dates in a letter that same day:

> "I apologize for not getting back to you regarding the deposition dates that you have offered with respect to Drs. Nissen and Topol. As I am sure you can understand, the various weather related issues have caused some disruption in our schedule. *In any event, it would be greatly appreciated if you would check with these doctors and see whether they have alternative dates coming up in the next month.* I think that we will need at least one day for each of these witnesses."

See Letter from C. Tisi to V. Vance, September 27, 2005 (Ex. 12).

On October 5, 2005, CCF counsel wrote Mr. Tisi indicating that she could not provide a full day for the deposition of dr. Topol until "well into the month of December or, better yet, after the New year." See Letter from V. Vance to C. Tisi, October 5, 2005. (Ex. 13). During the first two (2) weeks in October, Mr. Tisi repeatedly sought to contact CCF counsel concerning the scheduling of Dr. Topol's deposition in the month of October or early November. As set forth below, Mr. Tisi wrote CCF counsel on October 14 and emphasized that:

> As you are undoubtedly aware, there is an MDL trial beginning on November 28 and we will need to get these depositions taken before then. We simply cannot wait until December or for the New Year for these depositions as set forth in your October 5 letter.

See E-mail from C. Tisi, October 14, 2005 (Ex. 14). In her e-mail of October 21, CCF counsel indicated that she could not comply with the PSC request and offered the date of December 12 for the deposition of Dr. Topol. Id. Mr. Tisi indicated in his follow-up e-mail that the PSC

would raise the issue of the timing of this deposition at the Status Conference of October 27, 2005. Id.

As promised, the issue was indeed raised at the October 27 Status conference. In that regard, the Court ordered that the deposition proceed in a manner that would allow its use in the Irvin case:

> JUDGE FALLON: Discovery directed to third parties. Any issues there?
>
> MR. HERMAN: I received a letter.
>
> JUDGE FALLON: Discovery directed to third parties?
>
> MR. HERMAN: **Yes. *Mr. Tisi received a letter from Victoria L. Vance of the Cleveland Clinic Foundation, in which the Cleveland Clinic Foundation attempts to delay October depositions to December, well past the beginning of the Irvin case*.** We have been unable to resolve that, Your Honor, and we would like to issue subpoenas from the MDL, and if the Cleveland Clinic Foundation persists, its general counsel persists in not making the deponents available for deposition, we would like the subpoenas enforced by the MDL Court.
>
> JUDGE FALLON: *Let me comment on that. I want the parties who notice depositions, particularly noticing doctors' depositions, to first contact the doctors or their representatives, and see whether or not it can be done at a time convenient with their schedule, as well as with your schedule. I am aware they are busy. I am aware they have matters on their agenda, but having done that, if that is not workable, then you should subpoena the doctors at a date and time that is convenient with you. Subpoena them and bring the subpoenas to my attention. I expect the doctors, or anyone, for that matter, but in this case, the doctors, to be present at the time that is required by the subpoena. If they are not there, I will convene a meeting to show why they should not be held in contempt of Court. I will do it either here in Houston. I will do it in New Orleans, or I will do it at their particular place of residence, wherever that might be. The MDL Court sits throughout the country, and I will do that. If they violate a subpoena, they will have to explain it to me and not to counsel. When a subpoena is issued, it is issued with the full power of the United States*

> ***Court and the United States Government, and I expect them to be present at the deposition. I'll also send a copy of this comment to the attorney, Ms. Victoria Vance, at the Cleveland Clinic Foundation, 1950 Richmond Road, Cleveland, Ohio, 44124.***

See October 27, 2005 Status Conf. Transcript at 16-17 (Ex. 1) (emphasis added).

On October 28, 2005, the Court's comments were forwarded to CCF counsel. See E-mail from C. Tisi to V. Vance, October 28, 2005 (Ex. 15). Shortly thereafter, CCF counsel offered one day—November 22, 2005-- when this deposition could be taken.

On October 31, 2005, in compliance with the Court's pretrial order, Plaintiff listed Dr. Eric Topol on her witness list. On October 31, Plaintiff designated all of Dr. Topol's deposition testimony to play at trial. On November 3, 2005, Plaintiff filed the motion with the Court for leave to use Dr. Topol's deposition at trial.

The deposition was duly noted by the PSC on November 7, 2005 and served on LexisNexis. See Letter of November 8, 2005 from C. Tisi to V. Vance. (Ex. 16). The deposition went forward on November 22 as noted.

At Dr. Topol's deposition, Plaintiff's counsel sought to obtain fact testimony from Dr. Topol, including his contacts with Merck concerning Vioxx and the publications that he has written about the state of scientific and medical knowledge at the time of events that are key to this litigation. Dr. Topol further testified that certain of Merck's scientific theories are unscientific and not supported by the studies that he has personally performed. These include the so-called "Naproxen Hypothesis" and the so-called "18-month hypothesis that this Court is aware of.

The PSC was given only four (4) hours to examine this pivotal witness and Merck was given three. In apparent recognition of the importance of the testimony, Merck's counsel did

its best to disrupt it. Although the PSC questioner, Thomas Kline, offered to grant Merck's counsel a continuing objection to avoid disruption and to complete the deposition, Merck's counsel refused, objecting almost three-hundred (300) times. Many of the objections were made while the witness was testifying. In Merck's examination, it professed a clear understanding of the scope, breadth and basis for Dr. Topol's actions and conduct.

## ARGUMENT

### I.   Dr. Topol's Factual Testimony Reflects His Personal Role In the Unfolding Events Related to Vioxx

Dr. Topol testimony in large part is composed of his account of his personal role researching the dangerous nature of Vioxx and conveying to the medical community and to the general public the dangerous propensities of the drug. While Dr. Topol may be the preeminent expert in the field of cardiovascular medicine, this fact testimony reveals only his personal role in the unfolding events related to Vioxx. As such, there is no valid objection to this testimony. Dr. Topol was listed on Plaintiff's witness list; his deposition was designated by Plaintiff; and Defendant had ample opportunity to participate in the deposition and cross examine Dr. Topol.

Though an expert in cardiology, Dr. Topol should be able to testify to events he personally observed and participated in and opinions that he formed and communicated to the Defendant. The First Circuit addressed an analogous issue in <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d 103, 113 (1st Cir.2003) ("<u>Gomez II</u>") in which the court held that a person with specialized training does not testify as an expert by giving first-hand participant testimony, even though it appears to be expert testimony. In <u>Gomez II</u>, the Court grappled with the admissibility of the testimony of a lawyer who had been consulted by the defendant seeking legal advice about the appropriate means for hiring new employees under Puerto Rico's Law

52 (establishing a fund to promote employment) after plaintiff's Law 52 municipal employment positions were terminated by the defendant. The <u>Gomez</u> plaintiffs claimed political and partisan discrimination under the First Amendment and Law 52. The District Court precluded the lawyer's testimony because the defendants had failed to submit a written report detailing his legal interpretation of and intended testimony regarding in Law 52. <u>Gomez Candelaria v. Rivera Rodriquez</u>, 218 F.Supp.2d 79, 87 (D.P.R. 2003) ("<u>Gomez I</u>") In <u>Gomez II</u>, the First Circuit reversed holding that the mere fact that an individual testified that he gave legal advice did not transform that testimony into a legal opinion which would subject the individual to being denominated as an expert under Federal Rule of Civil Procedure 26(a)(2)(A). <u>Gomez II</u>, 344 F.3d at 112. As in <u>Gomez II</u>, Dr. Topol's testimony as to what prompted and motivated his research and his explanations of the events which took place subsequent to its publication is not transformed into expert testimony simply because of his status in the medical community. Like any other witness permitted to testify in any other trial, Dr. Topol should be permitted to provide testimony regarding his personal knowledge of the events at issue.

## II.     Dr. Topol's Expert Opinion Testimony Should Be Admitted

### A. Plaintiff's Timely Disclosed Intent to Use Dr. Topol's Testimony at Trial

Based on his medical expertise, Dr. Topol does offer opinions that are based on his specialized knowledge as a cardiologist. Plaintiff acknowledges that these opinions are governed by Rule 702. Fed. R. Evid. 702.

Federal Rule of Civil Procedure 26(a)(2)(C) requires that all witnesses who will provide expert testimony to be disclosed.[1] See Musser v. Gentiva Health Servs., 356 F.3d 751, 756-57 (7th Cir. 2004). In regard to experts that are to be used at trial, including those not retained by a party, Rule 26(a)(2)(C) requires that a party: 1) provide the name of the witness; 2) designate the witness's testimony if it is expected to be presented at trial; and 3) identify documents and exhibits expected to be offered. Plaintiff, in substance, has met each of the requirements of Rule 26(a)(2)(C).

Plaintiff identified Dr. Topol by listing him on her witness list. This identification was sufficient to put Merck on notice that Dr. Topol if called as a live witness at trial or if he testified by deposition would offer at least some expert opinions. Dr. Topol was a former consultant of Merck's and has been in communication with Merck directly and indirectly for over 5 years. As noted earlier, Dr. Topol is a leading authority on cardiology and is the eighth most cited medical researcher in the world. See Dr. Eric J. Topol dep. at 18. Dr. Topol has been a vocal critic of Merck privately in discussions with Merck and publicly through leading medical journals and major newspapers. Dr. Topol's name on Plaintiff's witness list was a clear indication that, if possible, she intended to offer Dr. Topol's expert opinions at trial. The listing of Dr. Topol on Plaintiff's witness list was sufficient identification.

Secondly, Plaintiff designated Dr. Topol's entire deposition within the Court's deadline for deposition designations. Merck was aware of Plaintiff's intent to use Dr. Topol's deposition on October 31st when designations were filed with the Court. Plaintiff's intent was confirmed by her filing a motion for leave to use Dr. Topol's deposition on November 3rd.

---

[1] Plaintiff was not obligated to produce an expert report because Dr. Topol is a neutral third party. Federal Rule of Civil Procedure 26(a)(2)(B) only requires a party to disclose expert reports for an expert witness who is retained or specially employed to provide expert testimony in the case. See Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 882-883 (5th Cir.).

Moreover, Mr. Russ Herman's remarks to the Court during the October 27th status conference made Plaintiff's intent to use Dr. Topol's deposition abundantly clear to Defendant.

Third, Rule 26(2)(C) requires that a party provide documents that are expected to be offered. Defendant Merck has all documents related to Dr. Topol's testimony. Dr. Topol is neither an employee of any party to the litigation nor has he been retained by Plaintiff to provide expert testimony in this case. Plaintiff exercises no control over Dr. Topol. To the contrary, Dr. Topol is an independent and neutral third party. Dr. Eric J. Topol dep. at 76, 562). Dr. Topol through CCF produced documents to Plaintiff and Defendant at the same time. See Letter from V. Vance to Judge Eldon Fallon August 30, 2005 (Ex. 9).

Plaintiff adequately disclosed her intent to offer Dr. Topol's expert testimony.

**B.     Any Deficit in Plaintiff's Disclosure Did Not Prejudice Defendant**

This court has broad discretion to admit Dr. Topol's testimony. See Davis v. Duplantis, 448 F.2d 918 (5th Cir. 1971). If the Court finds any deficiencies in Plaintiff's notice of her intent to offer Dr. Topol's testimony at trial, the Court should consider the following factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in denying the testimony; and (4) the availability of a continuance to cure such prejudice. Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir. 1990).

Although Plaintiff maintains that Defendant was given sufficient notice that Dr. Topol's testimony would be used at trial, any deficiencies with respect to notice can be attributed first to the fact that Dr. Topol has not cooperated in the least with Plaintiff. Dr. Topol refused to speak with members of the PSC prior to his deposition. Dr. Topol, through his counsel from CCF, refused to testify without intervention by the Court. Dr. Topol is in no

way Plaintiff's "expert" in the sense that Plaintiff has any control whatsoever over Dr. Topol. Under those circumstances, as it appeared more likely that Dr. Topol's deposition might take place before her trial, Plaintiff put Merck on notice.

Secondly, the importance of Dr. Topol's testimony cannot be underestimated. Dr. Topol in February 2001 became interested in the cardiovascular risks associated with Vioxx and other Cox-2 inhibiting drugs. Since that time, independent of this litigation and for purposes of alerting the medical community and public of possible dangers associated with Vioxx, Dr. Topol conducted independent scientific research and published over nine articles. Dr. Topol's testimony offers critical evidence on the questions of whether Vioxx is unreasonably dangerous and when Merck should have been aware of this fact.

Third, Defendant had sufficient notice of the likelihood that Dr. Topol's testimony would be presented at trial and had ample opportunity to depose and cross examine Dr. Topol. Defendant has been on notice that Dr. Topol could potentially be an expert in this litigation since 2001 when he personally met and communicated with Merck's most senior scientists (including Dr. Alise Reicin) concerning the unscientific manner in which Merck had analyzed the growing body of data, including VIGOR, which implicated Vioxx in cardiovascular disease. Following those meetings, Merck became aware of Dr. Topol's work when he published his own analysis of the Vioxx clinical trial data in his seminal article on Vioxx in the Journal of the American Medical Association. See "Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors," Journal of American Medical Association 954-959 (Aug. 2001) (Ex. 17). Merck was well aware of his views when they discussed them repeatedly with him throughout the time Vioxx was on the market and through his published writings. Since Vioxx was withdrawn, he has amplified his views in editorials for the New

York Times and the New England Journal of Medicine. See "Failing the Public Health—Merck, Rofecoxib, and the FDA" New England Journal of Medicine (Oct. 2004) (Ex. 18). Defendant has had access to Dr. Topol's opinions in the public medical literature for years, and since Dr. Topol was not retained by Plaintiff in the litigation, Defendant could have subpoenaed his files and deposed him at their leisure. Defendant cannot cry "foul" or "surprise" or "prejudice" with respect to Dr. Topol as they were or should have been – and in fact were – prepared for everything he had to say in his deposition. In addition to notice that Dr. Topol's testimony would be used at trial, Defendants had the opportunity to subpoena Dr. Topol's records in advance of the deposition, and also to depose and cross examine him. See Bradley v. United States., 866 F.2d 120, 125 (5th Cir. 1989) (finding that witnesses who were deposed prior to trial were not "surprise" witnesses). Defendant had equal time to prepare to for Dr. Topol's deposition. Defendant was afforded ample time to cross examine Dr. Topol on any issue for which they now claim prejudice and unfair surprise. Defendant may not like the substance of Dr. Topol's testimony, but from a procedural standpoint, Merck is not in any way prejudiced by the admission of Dr. Topol's testimony.

Fourth, because Defendant received ample notice, a continuance should not be considered.

Defendant had more than sufficient notice that Dr. Topol's testimony would be used at trial. Therefore, this Court should permit the jury to hear his testimony.

### III. Excluding Dr. Topol's Expert Testimony In The Irvin Trial But Permitting Its Use In Later Trials Will Result in Substantial Prejudice To The Plaintiff

Dr. Topol's testimony will clearly be available for use in future trials. Precluding Dr. Topol's testimony from this trial because of timing will result in unfair prejudice to Plaintiff Evelyn Irvin Plunkett.

First, Plaintiff Evelyn Irvin Plunkett has volunteered her case to be the first case tried in this MDL, and she should not be prejudiced for her willingness to step forward. Through no fault of Plaintiff, Dr. Topol's deposition date was not finalized until November 7, 2005. In fact, Dr. Topol was originally only available on December 6, 2005. This Court's encouragement on the record for counsel for CCF to make Dr. Topol available prior to the *Irvin* trial is undoubtedly the only reason the deposition took place in advance of the trial.

Secondly, for early test cases in the MDL, it is understood that discovery is ongoing. For that reason, to this day documents are being produced and depositions are being taken that can be used in the trial of this case. The trial of this case does not occur in a vacuum but in the midst of the overall development of the litigation and during the maturing of MDL plaintiffs' claims. For that reason, the fact that the deposition took place close in time to the trial is not surprising and is not prejudicial to Merck. Moreover, the possibility that a deposition as important as Dr. Topol's might have been taken after the commencement of this trial highlights the prejudice that already exists to those plaintiffs who have volunteered their cases to be among the first tried. Fortunately, Dr. Topol's deposition was taken in advance of the *Irvin* trial and its designations are available for use. A refusal to permit Plaintiff's to make use of the deposition because it only recently became available but to permit it to be used in subsequent cases will result in unfair prejudice to Plaintiff's case.

The potential prejudice, if any, which would result to Defendant pales in comparison to the prejudice Plaintiff would suffer if her case is tried without the benefit of Dr. Topol's testimony.

Therefore, the Court should exercise its discretion to permit Plaintiff to present Dr. Topol's deposition testimony at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court permit Plaintiff to introduce Dr. Topol's deposition testimony during the trial of this case.

Respectfully submitted,

By: /s/ Jere L. Beasley

**Jere L. Beasley**
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024

**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

**Christopher A. Seeger, Esquire**
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telefonee)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this **28th** day of November, 2005.

_____

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED