UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -6 PM 1: 20

LORETTA G. WHYTE
CLERK

IN RE: VIOXX                                         :      MDL NO. 1657
   PRODUCTS LIABILITY LITIGATION    :
                                     :      SECTION:  L
                                     :
                                     :      JUDGE FALLON
                                     :      MAG. JUDGE KNOWLES

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

THIS DOCUMENT RELATES TO
*Plunkett v. Merck & Co., Inc.*, 05-4046

## ORDER & REASONS

Before the Court is the Plaintiff's Motion to Reconsider a Ruling in Regard to the

Testimony of Dr. Thomas Baldwin.  For the following reasons, the motion is DENIED.

**I. BACKGROUND**

On November 18, 2005, the Court entered its rulings on all the *Daubert* motions in this

case.  Among the motions was the Defendant's motion to exclude the entire testimony of Dr.

Thomas Baldwin.  In its rulings, the Court focused on the methodology that Dr. Baldwin used in

formulating his opinions and found that Dr. Baldwin was qualified to testify as an expert

regarding Mr. Irvin's cardiac condition at the time of his death.  Specifically, the Court found

that the methodology used by Dr. Baldwin was proper.  Absent from the Court's order was any

specific ruling as to whether Dr. Baldwin was qualified to render an opinion on whether Vioxx

was the specific cause of Mr. Irvin's death.

On December 1, 2005, at the trial of this matter, Plaintiff's counsel sought to elicit

testimony from Dr. Baldwin not only dealing with Mr. Irvin's general cardiac condition, but also

to the effect that Vioxx was the specific cause of Mr. Irvin's death.  The Defendant objected to

this testimony arguing that Dr. Baldwin was not qualified to render an opinion as to the specific

\_\_\_ Fee_____
\_\_\_ Process_____
_X_ Dktd_____
\_\_\_ CtRmDep_____
\_\_\_ Doc. No\_\_\_\_\_

effect of Vioxx on Mr. Irvin's death.  The Court sustained the Defendant's objection finding that Dr. Baldwin was not qualified to render an opinion in this regard.

## II.    PRESENT MOTION

On December 2, 2005, the Plaintiff filed the present motion urging the Court to reconsider its ruling.  The Plaintiff argues that Dr. Baldwin's review of the relevant literature combined with his knowledge of the cardiovascular system renders him qualified to testify that Vioxx caused Mr. Irvin's death.

The Plaintiffs' Steering Committee ("PSC") filed a Memorandum in Support of Plaintiff's Motion to Reconsider the Court's Ruling Limiting the Testimony of Dr. Thomas Baldwin.  In its supporting memorandum, the PSC asserts that Dr. Baldwin's knowledge is sufficient to qualify him as an expert.  In addition, the PSC contends that the Court's ruling sets an "unfortunate precedent in this MDL."

## III.   LAW AND ANALYSIS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. This rule establishes standards regarding the qualifications of the proposed expert as well as the methodology used to arrive at the expert's opinion.  With regard to the expert's qualifications, Rule 702 provides that a prospective expert must be qualified by knowledge, skill, experience, training, or education before being allowed to testify as an expert witness.  In this case, Dr. Baldwin is not qualified by either knowledge, skill, training, education, or experience to render an opinion as to whether Vioxx caused Mr. Irvin's death.  In reaching this conclusion, the Court predominantly relies on Dr. Baldwin's own trial and deposition testimony.

First, with regard to experience, Dr. Baldwin testified as follows:

Q.     Now, sir, am I correct that while Vioxx was on the market, you never personally prescribed the medicine?

A.     Not that I recall.

Q.     And that would be true for the other Cox-2 inhibitor drugs that were on the market, Bextra and Celebrex; is that correct?

A.     To my recollection, that is correct.

Q.     And you have never done any research in Cox-2 drugs, correct?

A.     That's correct.

Q.     And, sir, I believe you said at your deposition that you do not ever recall diagnosing one of your own patients as having a cardiovascular thrombotic event from Vioxx; is that correct?

A.     That's correct.  At the time of my deposition, I was not aware of any of my patients that had an event while on Vioxx.  I have subsequently become aware of one case.

. . .

Q.     Thank you for that clarification.  When you come into this courtroom today, you personally have not diagnosed one of your patients as having a Vioxx-related clot, correct?

A.     That's correct.

Q.     Now is that true for Celebrex as well?

A.     That's correct.

Q.     So your qualifications on diagnosing cardiac events from Cox-2 inhibitor drugs, you have never done it before outside of this litigation, correct?

A.     That's correct.[1]

This testimony reveals that Dr. Baldwin has basically little to no experience with Vioxx or,

---

[1] Transcript of Record at 492-94, *Plunkett v. Irvin* (No. 05-4046).

for that matter, any other Cox-2 inhibitor.  He testified that he never prescribed Vioxx or any other Cox-2 inhibitor.  He never conducted any research on Cox-2 inhibitors.  He has never diagnosed Vioxx as the cause of a cardiac event.

Second, with regard to skill, training, and experience, Dr. Baldwin testified as follows:

Q.	Now, sir, you don't consider yourself a clinical researcher, correct?

A.	Correct.

Q.	And I believe you have not done any basic science research yourself since college?

A.	With the proviso that during the course of medical school, there may have been some involvement in basic science research, but . . .

Q.	Sure.  When you're in medical school, you may have had an opportunity to go down to the lab and maybe conduct a few experiments, but you wouldn't consider yourself a scientific researcher, would you?

A.	That's correct.

. . .

Q.	And you have never been responsible for analyzing data from a clinical trial, correct?

A.	Well, responsible for is kind of the operative phrase.  I analyze studies in the literature and apply that information to my patients on a regular basis.

Q.	Sure.  You may actually see an article in a journal and there is clinical results presented, and then you read that as a practicing physician and draw your own conclusions from it, correct?

4

A.    That's correct.

Q.    But in terms of having primary responsibility as an investigator on a trial, you've never done that and analyzed the data from the trial, correct?

A.    Correct.

Q.    And you've never done any research in any nonsteroidal anti-inflammatory drug, correct?

A.    Correct.

Q.    And you've don't consider yourself an epidemiologist, do you, sir?

A.    No, I do not.

. . .

Q.    And, sir, you've never done clinical research on the causes of sudden cardiac death, have you?

A.    During the course of medical school, I may have been involved with a research project and/or during fellowship but not one that I was responsible for evaluating the data.

Q.    And when did you graduate medical school?

A.    1983.

Q.    So, in the last 22 years, would it be fair to say you've never been involved in clinical research into the causes of sudden cardiac death?

A.    My cardiology fellowship training ended in 1988, so it would have been since '88.

Q.    So I amend my question by saying: In the last 17 years, you've never done

any clinical research in the causes of sudden cardiac death?

A.      That's correct.[2]

This testimony reveals that Dr. Baldwin lacks the skill, training, and education to testify as expert regarding the role Vioxx played in Mr. Irvin's death.  As a cardiologist, Dr. Baldwin certainly has the skill, training, and education to testify that Mr. Irvin died of a myocardial infarction.  In addition, he has the skill, training, and education to testify regarding the nature of the fatal clot or thrombus, its location, and explain its role in causing Mr. Irvin's death.  As a cardiologist with no other skill, training, education, or experience with Vioxx or any Cox-2 inhibitor, however, Dr. Baldwin is not qualified to testify regarding the specific role that Vioxx played in producing the clot.

Both the Plaintiff and PSC contend that Dr. Baldwin's knowledge is sufficient to qualify him to testify as an expert regarding the proclivity of Vioxx to produce clot formations.  An examination of Dr. Baldwin's deposition testimony leads to the opposite conclusion.  In his deposition, Dr. Baldwin displayed a fundamental lack of understanding of the relevant scientific literature. Throughout his deposition, Dr. Baldwin was unable to explain  or recount the results and implications of the numerous tests and studies conducted with Vioxx and other Cox-2 inhibitors. Simply put, his reliance on the relevant scientific literature was completely underminded by his inability to firmly understand this literature.  Accordingly, whatever knowledge Dr. Baldwin professes to have of Vioxx and its pro-thrombotic effects, it is insufficient to qualify him as an expert on the effect of that drug or any of the Cox-2 inhibitors.  In fact, Dr. Baldwin had this to say about his qualifications on that subject:

Q.      And you're really not an expert to Cox-2 drugs, are you, sir?

_____

[2] *Id*. at 494-96.

6

A.      Not an expert, per se, no.[3]

If Dr. Baldwin is not willing to consider himself an expert on the effect of Cox-2 inhibitors, it would seem quite peculiar for this Court to qualify him as one.

In short, neither Dr. Baldwin's knowledge, skill, experience, training, or education, even when considered in their totality, qualify him to testify as to the specific role that Vioxx played in Mr. Irvin's death.  Dr. Baldwin simply lacks the necessary qualifications to reach his proffered opinion on that subject.

To the extent that the PSC asserts that this ruling will set an "unfortunate precedent in this MDL," the PSC is simply mistaken.  The only precedent this ruling sets is that this Court is committed to following the dictates of Rule 702 and, as such, will require prospective experts to be qualified to render their respective opinions.

Moreover, the Court recognizes that not every cardiologist will be unable to testify as an expert witness with regard to the specific effect of Vioxx.  The Court's order is limited to Dr. Baldwin, a cardiologist who has little to no experience prescribing Vioxx, diagnosing Vioxx as the cause of a cardiac event, conducting clinical research related to Vioxx, and who failed to demonstrate a clear understanding of the relevant scientific literature.

IV.     **CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion to Reconsider its Ruling in Regard to the Testimony of Dr. Thomas Baldwin is DENIED.

---

[3] *Id*. at 494.

Houston, Texas, this __3rd__ day of __December__, 2005.

UNITED STATES DISTRICT JUDGE