U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    *12-8-05*

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO**
   *Plunkett v. Merck & Co., Inc.*, 05-4046

## JURY CHARGE

Members of the Jury:

You have now heard all the evidence in this case as well as the final argument.

It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in this case.

In any jury trial, there are, in effect, two judges. I am one of the judges; the other is you the jury. It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You, as jurors, are the judges of the facts. But in determining what actually happened in this case—that is, in reaching your decision as to the facts—it is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole.

Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
Doc.No._____

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely upon the testimony and other evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and corporations or public entities stand equal before the law and are to be dealt with as equals in the court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that they are particularly concerned that you recall. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case. What the lawyers say is not binding upon you.

Also, during the course of trial, I have occasionally made comments to the lawyers, or

-2-

asked a question of a witness, or admonished a witness concerning the manner in which he should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the facts in this case. In arriving at your own findings as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

The law of the United States permits the judge to comment on evidence presented during a case. I do not believe that I have made any comments on the evidence in this case. If you could possibly construe any remarks which I have made during the course of this trial, however, as a comment on the evidence, then I instruct you that any such comment on my part is only an expression of my opinion as to the facts, and you, the jury, may disregard such comment or comments entirely since you, as jurors, are the sole judges of the facts in this case.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You may consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating a fact to be proved. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

The burden of proof is on the plaintiff in a civil action, such as this one, to prove every essential element of her claim by a "preponderance of the evidence." A preponderance of the

-3-

evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" means to prove that the claim is more likely so than not so. In determining whether any fact has been proved by a "preponderance of the evidence" in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the proof should fail to establish any essential element of the Plaintiff's claim by a preponderance of the evidence, you, the jury, should find for the Defendant as to that claim.

As I have stated, the Plaintiff need prove her case only by a preponderance of the evidence. She need not produce every possible witness, and she need not prove her case beyond a reasonable doubt, as is necessary in a criminal prosecution. But speculation or mere possibility and even unsupported probability is not sufficient to support a judgment in her favor.

In deciding this case, you are expected to use your good sense. Give the evidence and the testimony of the witnesses a reasonable and fair interpretation in the light of your knowledge of the natural tendencies of human beings.

In weighing the testimony and in determining the credibility of any witness, you may consider the conduct of the witness, his or her bearing on the witness stand, his or her personal feelings as demonstrated by his or her testimony and his or her actions, any interest he or she may have in the outcome of the case, any prejudice or bias he or she may have shown, and any partiality he or she may have demonstrated.

If a witness is shown to have testified falsely concerning any material matter, you have a

right to distrust such witness' testimony on other matters and you may distrust all of the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field may be called as an expert witness and is permitted to state his opinion on those technical matters. Such witnesses have testified in this case. You are not, however, required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert

witness has economic, philosophical, or any other interest in the outcome of the case.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers were read or presented by video to you. This deposition testimony is entitled to the same consideration, is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

During the course of trial, you will have heard objections to evidence. Sometimes these have been argued out of the hearing of the jury.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against or show any prejudice against a lawyer or his client because of the making of an objection.

Upon allowing testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, you, the jury, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or

speculate as to what the witness would have said if permitted to answer the question.

During the course of trial, I have occasionally asked a question of a witness in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the facts to which my question or questions may have related. Remember at all times, you, as jurors, are the sole judges of the facts.

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

This lawsuit arises out of Dickie Irvin's use of Vioxx. Merck manufactured Vioxx. The Plaintiff, Evelyn Irvin Plunkett, contends that Mr. Irvin suffered a sudden cardiac death caused by his ingestion of Vioxx.

In your deliberations, you are to consider several distinct claims. First, the Plaintiff alleges that Merck should be held liable for the death of Dickie Irvin because it placed Vioxx on the market with inadequate warnings, making it unreasonably dangerous to consumers. Second, the Plaintiff alleges that Merck should be held liable for the death of Dickie Irvin because it placed Vioxx on the market with a defective design, making it unreasonably dangerous to consumers. Lastly, the Plaintiff alleges that Merck was negligent in designing, manufacturing, marketing, advertising, distributing, and selling Vioxx and that this negligence was a legal cause of Dickie Irvin's death.

Merck contends that Vioxx does not cause a cardiovascular event such as sudden cardiac death, particularly when taken at the dose and for the duration that Mr. Irvin took the medicine. Merck also contends that Mr. Irvin's sudden cardiac death was caused by his own independent health risk factors and not Vioxx.

Further, Merck contends that its warning and instructions to Dr. Christopher Schirmer, the doctor who prescribed Vioxx for Dickie Irvin, were adequate and complied with the rules of the FDA. Merck also asserts that it acted reasonably and that it had disclosed to the FDA all relevant obtainable and reliable information available at the time Dr. Schirmer prescribed Vioxx to Mr. Irvin.

Moreover, even assuming Mr. Irvin's sudden cardiac death could have been caused by Vioxx, Merck asserts as a defense Mr. Irvin's own negligence and Dr. Schirmer's negligence in prescribing the drug without examining Mr. Irvin or taking his medical history. In addition, Merck contends that neither Dr. Schirmer nor Mr. Irvin relied on any statements Merck made.

Although all of the Plaintiff's claims have been tried together, each is separate from the others, and each party is entitled to have you separately consider each claim. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would have if each claim had been tried before you separately. Let me now discuss the law applicable to each of the Plaintiff's claims.

## FAILURE TO WARN

I will now discuss with you the law governing the Plaintiff's claim for failure to warn. In order to decide this claim, you must determine whether Vioxx was defective by reason of an inadequate warning and, if so, whether the absence of an adequate warning was a legal cause of

the injury sustained by Mr. Irvin.

A product is defective due to inadequate warning if the manufacturer fails to give a reasonably prudent physician adequate warning of a particular risk that was known or knowable to the manufacturer in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

If a product has hidden dangers which come from the very nature of the product itself, the manufacturer has a duty to take reasonable precautions to provide an adequate warning that would place prescribing physicians on guard against the harmful consequences that might result from use of the product.  To provide an adequate warning, the manufacturer must disclose the potential harmful consequences of the product so that a reasonably prudent doctor can act in line with the potential danger.

The duty to warn includes the duty to warn with a degree of intensity that would cause a reasonable prescribing physician to exercise the caution commensurate with the potential danger. In determining the scope of a manufacturer's duty to warn of dangers associated with the use of its product, the manufacturer is held to the knowledge and skill of an expert in its field.  The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so, and it bears the duty to reasonably test its products to uncover scientifically discoverable dangers before the products are sold.

For purposes of this claim, an "adequate warning" is one that is sufficiently clear to inform a reasonably prudent physician of the foreseeable risks posed by the use or misuse of a product. Because a prescription drug manufacturer's duty to warn of the potential risks of its products is directed to the reasonably prudent physician and not the consumer, you may not consider whether

Merck failed to warn Mr. Irvin directly in reaching your decision on this claim.

In order to prove her failure to warn claim, the Plaintiff must not only show that Merck's warnings regarding Vioxx were inadequate, but also that such inadequacy affected the decision of his prescribing physician, Dr. Schirmer, to prescribe Vioxx. In other words, the Plaintiff must show that Dr. Schirmer would not have prescribed Vioxx to Mr. Irvin if Merck's warning had been different. Essentially, to establish Merck's liability for failure to warn, the Plaintiff must prove the following three elements:

1. Merck knew or should have known that Vioxx was or was likely to be unreasonably dangerous;

2. Merck failed to exercise reasonable care in warning Dr. Schirmer of Vioxx's dangerous condition; and

3. Merck's failure to warn was a "legal cause" of the Plaintiff's injury.

A defect in a product is a "legal cause" of an injury if it directly and in natural and continuous sequence produces or contributes substantially to producing such injury, so that it can reasonably be said that, but for the defect, the injury would not have occurred. In order to be regarded as a legal cause of the injury, the defect need not be the only cause. A defect may be a legal cause of an injury even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time the defect has its effect and if the defect contributes substantially to producing the alleged injury. Furthermore, a defendant may still be held liable when the defendant's fault operates upon a concealed physical condition, such as a latent disease, to produce consequences which the defendant could not reasonably anticipate.

If the greater weight of the evidence does not support the claim of the Plaintiff, your verdict should be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then you shall consider the following defenses raised by Merck. First, you must determine if Mr. Irvin was himself negligent and, if so, whether such negligence was a contributing legal cause of the his injury. Second, you must determine if Dr. Schirmer was negligent and, if so, whether such negligence was a contributing cause of the Mr. Irvin's injury.

## DEFECTIVE DESIGN

I will now discuss with you the law governing the Plaintiff's claim of defective design. In order to decide this claim, you must determine whether Vioxx was defective when it left the possession of Merck by reason of a defective design and, if so, whether the defect was a legal cause of Mr. Irvin's injury. Essentially, to establish Merck's liability for defective design, the Plaintiff must prove the following two elements:

1. Vioxx was a defective product due to a defective design; and

2. Vioxx's defective design was a "legal cause" of the Plaintiff's injury.

A product is defective by design if the product is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition. For purposes of this claim, a product is "unreasonably dangerous" if the risk of danger in the design outweighs the benefits. In determining whether the risk of danger outweighed the benefits, you should consider the feasibility of an alternative safer design given the scientific and technical knowledge that existed at the time of manufacture, not at the time of loss or injury.

-11-

A defect in a product is a legal cause of an injury if it directly and in natural and continuous sequence produces or contributes substantially to producing such injury, so that it can reasonably be said that, but for the defect, the injury would not have occurred. In order to be regarded as a legal cause of the injury, the defect need not be the only cause. A defect may be a legal cause of an injury even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time the defect has its effect and if the defect contributes substantially to producing the alleged injury. Furthermore, a defendant may still be held liable when the defendant's fault operates upon a concealed physical condition, such as a latent disease, to produce consequences which the defendant could not reasonably anticipate.

If the greater weight of the evidence does not support the claim of the Plaintiff, your verdict should be for Merck. If the greater weight of the evidence does support the claim of the Plaintiff, then you shall consider the following defenses raised by Merck. First, you must determine if Mr. Irvin was himself negligent and, if so, whether such negligence was a contributing legal cause of the his injury. Second, you must determine if Dr. Schirmer was negligent and, if so, whether such negligence was a contributing cause of the Mr. Irvin's injury.

**GOVERNMENT RULES DEFENSE**

In connection with the Plaintiff's failure to warn and defective design claims, and only these two claims, I will instruct you on what is known as the government rules defense. Under the government rules defense, there is a rebuttable presumption that a product is not defective or unreasonably dangerous and the manufacturer is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that

allegedly caused the harm complied with the required statutes and regulations relevant to and designed to prevent that type of harm that allegedly occurred.

A "rebuttable presumption" is a presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption.

Before a prescription drug can be sold to patients, the drug must be approved as "safe" and "effective" by the FDA.  The FDA may not approve a drug unless it finds that the manufacturer has conducted adequate tests by all ~~methods~~ *Standards* reasonably available showing that the drug is safe for use under the conditions prescribed in its approved labeling.  The FDA must determine that the drug will be "safe" and "effective" under the conditions prescribed, recommended, or suggested in the proposed labeling.  The FDA usually makes this determination based on test results and studies appropriately conducted by the manufacturer of the proposed drug and timely and accurately reported to the FDA.  Furthermore, the FDA must also find that the drug is safe and effective under its approved labeling each time it approves a new use for a drug.

A pharmaceutical company marketing an FDA-approved drug must promote the drug in a manner consistent with the approved label for that drug.

Merck contends that at the time Mr. Irvin took Vioxx, Vioxx complied with FDA regulations and was approved by the FDA.  Accordingly, Merck asserts that you must presume that Vioxx was not defective or unreasonably dangerous when Mr. Irvin used it.  If you find that Merck did comply with the applicable FDA regulations, it is the Plaintiff's burden to rebut this

-13-

presumption by presenting credible evidence sufficient to show that Vioxx was defective or unreasonably dangerous. If you find that the Plaintiff has failed to counter this presumption with evidence sufficient to show that Vioxx was in fact defective or unreasonably dangerous, then you must also find that Merck is not liable for the failure to warn or the defective design claims. On the other hand, if you find that the Plaintiff has overcome this presumption, then you may find Merck liable for the failure to warn or the defective design claims.

## NEGLIGENCE

I will now discuss with you the law governing the Plaintiff's negligence claim. In her negligence claim, the Plaintiff asserts that Merck was negligent in designing or marketing Vioxx and that such negligence was a legal cause of Mr. Irvin's death. In addition, the Plaintiff claims that Merck was negligent in failing to warn Dr. Schirmer of a dangerous condition in Vioxx and that such negligence was a legal cause of Mr. Irvin's death.

Negligence is the failure to use reasonable care. In this case, reasonable care is that degree of care which a reasonably prudent pharmaceutical company would use under like circumstances. Negligence may consist either in doing something that a reasonably prudent pharmaceutical company would not do under like circumstances or in failing to do something that a reasonably prudent pharmaceutical company would do under like circumstances.

Negligence is a legal cause of an injury if it directly and in natural and continuous sequence produces or contributes substantially to producing such injury, so that it can reasonably be said that, but for such negligence, the injury would not have occurred. In order to be regarded as a legal cause of an injury, negligence need not be the only cause. Negligence may be a legal cause of an injury even though it operates in combination with the act of another, some natural

cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing the alleged injury. Negligence may also be a legal cause of an injury even though it operates in combination with the act of another, some natural cause, or some other cause occurring after the negligence occurs if the resulting injury was a reasonably foreseeable consequence of the negligence and the negligence contributed substantially to producing it. Furthermore, a defendant may still be held liable when the defendant's negligence operates upon a concealed physical condition, such as a latent disease, to produce consequences which the defendant could not reasonably anticipate.

In order for loss, injury, or damage to be a reasonably foreseeable consequence of negligence or a product defect, it is not necessary that the exact nature and extent of the injuries or harm or the precise manner in which the injuries or harm occur be foreseen; rather, in order for liability to arise, the likelihood that some injury or harm will result based on negligence is enough.

If the greater weight of the evidence does not support the claim of the Plaintiff, then your verdict must be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then you shall consider the following defenses raised by Merck. First, you must determine if Mr. Irvin was himself negligent and, if so, whether such negligence was a contributing legal cause of the his injury. Second, you must determine if Dr. Schirmer was negligent and, if so, whether such negligence was a contributing cause of the Mr. Irvin's injury.

## VOLUNTARY WITHDRAWAL OF VIOXX

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004. You may not consider that fact as evidence that Vioxx was defective or defectively designed or that was Merck was negligent or acted culpably. You may also not

consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause a sudden cardiac death. You may, however, consider this withdrawal for other purposes, such as proving ownership, control, or feasibility of precautionary measures.

## DAMAGES

Now let me speak with you about damages. "Damages" is the term in dollars and cents which expresses the injuries sustained by the Plaintiff. If the Plaintiff has proven one or more of her claims against Merck by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I give you instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Plaintiff suffered damages as a result of Merck's fault. I am instructing you on damages only so that you will have guidance in the event that you decide Merck is liable and the Plaintiff is entitled to recover money from Merck.

The Plaintiff claims that she has suffered injuries as a result of Mr. Irvin's death. If the Plaintiff proves by a preponderance of the evidence that her injuries or damages were caused by Merck's failure to fulfill its legal obligations, you must determine the amount of damages to which the Plaintiff is entitled.

You must determine an amount of damages that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make a Plaintiff whole—that is, to compensate the Plaintiff for the damages she suffered.

You may award compensatory damages only for the injuries or damages that the Plaintiff proves were caused by Merck's fault. The damages you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. That is to say, you should not be affected by sympathy, compassion, prejudice, or bias. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that a plaintiff prove the amount of loss with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts. In this case, the Plaintiff has claimed monetary damages from the death of Mr. Irvin. These damages cannot be assessed by any fixed rule, but you are the sole judges as to the measure of damages in this case. You may consider the following factors to determine the amount of damages to award as may be shown by a preponderance of the evidence:

1. The loss of net accumulations by Mr. Irvin's estate. "Net accumulations" is the part of the decedent's net income from salary after taxes, including fringe benefits, which Mr. Irvin, after paying his personal expenses and monies for the support of his survivors, would have left as part of his estate if he had lived his normal life expectancy.

2. Medical and/or funeral expenses due to Mr. Irvin's fatal injury which have become a charge against the decedent's estate and were paid by or on behalf of the decedent by one other

than a survivor.

3. The loss of Mr. Irvin's support and services that the Plaintiff, Evelyn Irvin Plunkett, the decedent's son, Richard Irvin, III, and the decedent's daughter, Ashley Irvin, have sustained and will sustain in the future because of Mr. Irvin's death. In evaluating loss of support and services, you may consider the survivors' relationships to Mr. Irvin, the amount of Mr. Irvin's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the particular survivor. In computing the duration of future losses, the joint life expectancies of the survivors and the decedent and the period of minority, in the case of Richard Irvin, III, and Ashley Irvin, may be considered. "Support" includes contributions in kind as well as sums of money. "Services" means tasks regularly performed by Mr. Irvin that will be a necessary expense to the Plaintiff because of his death. "Joint life expectancy" is that period of time when both Mr. Irvin and a survivor would have remained alive.

4. The Plaintiff's loss of Mr. Irvin's companionship and protection, and her mental pain and suffering as a result of Mr. Irvin's injury and death.

5. The loss by Richard Irvin, III and Ashley Irvin of parental companionship, instruction, and guidance, and their mental pain and suffering as a result of Mr. Irvin's injury and death.

Should you find for the Plaintiff and against Merck in this case, you must fix the amount of your verdict. Therefore, you must determine if Merck is liable to the Plaintiff. After this, you must fix the total amount of your verdict for the Plaintiff, if any, in accordance with the other instructions of this Court. You will provide this information by filling in the appropriate blanks in the verdict form which I have given you. In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Mr. Irvin or because of the negligence, if any, of Dr. Schirmer. The Court, in entering judgment, will take into account your allocation, if any, of responsibility among all persons and entities whom you find contributed to Mr. Irvin's injuries.

Some of these damages, such as loss of companionship and mental pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you

-18-

are not determining value, but you should award an amount that will fairly compensate the Plaintiff and Richard Irvin, III, and Ashley Irvin for their injuries, no more and no less. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence.

If you find that the Plaintiff is entitled to an award of damages for loss of future earnings, you must remember that an amount to cover a future loss is more valuable to the Plaintiff if she received that amount today than if she received the same amount in the future. Therefore, if you decide to award the Plaintiff an amount for lost future earnings, you must discount or reduce that amount to its present value. In simple terms, this is a reduction by the amount of money, or interest, which this smaller sum of money will earn if it were invested over the period of time in which Mr. Irvin would have been earning these wages.

In determining how long Mr. Irvin would have lived, had he lived out his normal life, you may consider his life expectancy at the time of his death. The mortality tables received in evidence may be considered in determining how long he may have been expected to live. Such tables are not binding on you, but may be considered together with other evidence in this case bearing on his health, age, and physical condition, before his death, in determining the probable length of his life.

A defendant is not entitled to have the damages for which it is liable reduced by proving that the Plaintiff has received or will receive compensation for the loss from another source wholly separate from the Defendant. In other words, you should not reduce the amount which you award the Plaintiff because of any payments which may have been made by insurance or medicare. Therefore, should you find that Merck is liable to the Plaintiff for damages, you should

-19-

disregard any evidence of payments made by another source and consider the total amount of the damages.

Suggestions as to the amount of damages that should be awarded are mere arguments of counsel. You may consider them and use them only as guidelines to whatever extent they may aid you in arriving at a reasonable and just award in view of the evidence. Nonetheless, you are in no way bound by, nor should you use, any rigid mathematical formula. The determination of damages is solely your function and must be based on competent evidence.

Once again, the mere fact that I have given you instructions on the law of damages does not in any way suggest that I believe that any damages are due in this case. That is for you to decide.

## CONCLUDING INSTRUCTIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## VERDICT FORM

I have prepared a special verdict form for your convenience and to aid you in reaching a

-20-

unanimous decision.  You will take the form with you to the jury room.  The verdict must represent the considered judgment of each juror.

You will note that the form contains several interrogatories or questions.  The answer to each question must be the unanimous answer of the jury.  In the space provided below each question, you will find directions which instruct you either to answer the next question, to answer some other question, or to stop and return to the courtroom with your verdict.  You must carefully follow these directions as you complete the form.

[READ THE VERDICT FORM]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  First, select your foreperson and then conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given about your conduct during the trial.  After you have reached your unanimous verdict, your foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, any numerical division on any question.

If you want to communicate with me at any time, please give a signed written message or question to the Marshall, who will bring it to me.  I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case

unless the Court orders otherwise.  You may now retire to the jury room to conduct your

deliberations.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 1657** |
| **IN RE: VIOXX** | : |  |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION: L** |
|  | : |  |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO**
   *Plunkett v. Merck & Co., Inc.*, 05-4046

### JURY INTERROGATORIES

Please answer the following questions:

1.   Do you find by a preponderance of the evidence that Merck & Co, Inc. failed to warn or inadequately warned Dr. Christopher Schirmer, the treating physician, of a known or knowable risk associated with Vioxx?

   YES _____        NO _____

(If you answered "yes" to Question #1, please proceed to Question #2.  If you answered "no" to Question #1, please proceed to Question #3.)

2.   Do you find that Merck & Co., Inc.'s failure to warn or inadequate warning was a legal cause of Dickie Irvin, Jr.'s death?

   YES _____        NO _____

(Please proceed to Question #3).

3.      Do you find by a preponderance of the evidence that Vioxx, which was manufactured by
        Merck & Co., Inc., was a defective product or was unreasonably dangerous based on a
        defective design?


        YES _____                    NO _____

(If you answered "yes" to Question #3, please proceed Question #4.  If you answered "no" to
Question #3, please proceed to Question #5.)


4.      Do you find that Vioxx's defective design was a legal cause of Dickie Irvin, Jr.'s death?


        YES _____                    NO _____

(Please proceed to Question #5).


5.      Do you find by a preponderance of the evidence that Merck & Co., Inc. was negligent in
        designing Vioxx, marketing Vioxx, or failing to warn Dr. Christopher Schirmer of a
        dangerous condition in Vioxx?


        YES _____                    NO _____

(If you answered "yes" to Question #5, please proceed to Question #6.  If you answered "no" to
Question #5 and answered "yes" to either or both Questions #2 and #4, please proceed to
Question #7.  If you answered "no" to Question #5 and either answered "no" to Questions #2 and
#4 or did not answer Questions #2 and #4, please skip all remaining questions, date and sign the
form, and inform the Marshal that a verdict has been reached.)


6.      Do you find that Merck & Co., Inc.'s negligence was a legal cause of Dickie Irvin, Jr.'s
        death?


        YES _____                    NO _____

(If you answered "yes" to Question #6, please proceed to Question #7.  If you answered "no" to

Question #6 and answered "yes" to either or both Questions #2 and #4, please proceed to Question #7. If you answered "no" to Question #6 and either answered "no" to Questions #2 and #4 or did not answer Questions #2 and #4, please skip all remaining questions, date and sign the form, and inform the Marshal that a verdict has been reached.)

7.     What percentage of fault, if any, do you attribute to Merck & Co., Inc., Mr. Richard Irvin, Jr., and/or Dr. Christopher Schirmer?

Merck & Co., Inc.                                   _____ %

Dickie Irvin, Jr.                                   _____ %

Dr. Christopher Schirmer                            _____ %

(If and only if you have found Merck & Co., Inc. liable, please proceed to Question #8. If you have not found Merck & Co., Inc. liable, please skip all remaining questions, date and sign the form, and inform the Marshal that a verdict has been reached.)

8.     What amount, if any, do you find will fairly and adequately compensate Evelyn Irvin Plunkett for the loss of net accumulations to Mr. Irvin's estate? (As the Court stated in its jury charge, do not make any reductions in the amount of damages because of the negligence, if any, of Mr. Irvin or Dr. Schirmer. The Court, in entering judgment, will take your allocation into account if applicable.)

$ _____

(Please proceed to Question #9).

9.     What amount, if any, do you find will fairly and adequately compensate Evelyn Irvin Plunkett for medical and funeral expenses? (As the Court stated in its jury charge, do not make any reductions in the amount of damages because of the negligence, if any, of Mr. Irvin or Dr. Schirmer. The Court, in entering judgment, will take your allocation into account if applicable.)

$ _____

-3-

(Please proceed to Question #10).

10.  What amount, if any, do you find will fairly and adequately compensate Evelyn Irvin
     Plunkett, Richard Irvin, III, and Ashley Irvin for their loss of support and services?  (As
     the Court stated in its jury charge, do not make any reductions in the amount of damages
     because of the negligence, if any, of Mr. Irvin or Dr. Schirmer.  The Court, in entering
     judgment, will take your allocation into account if applicable.)

     Evelyn Irvin Plunkett                            $ _____

     Richard Irvin, III                               $ _____

     Ashley Irvin                                     $ _____

(Please proceed to Question #11.)

11.  What amount, if any, do you find will fairly and adequately compensate Evelyn Irvin
     Plunkett for her loss of companionship and protection and her mental pain and suffering?
     (As the Court stated in its jury charge, do not make any reductions in the amount of
     damages because of the negligence, if any, of Mr. Irvin or Dr. Schirmer.  The Court, in
     entering judgment, will take your allocation into account if applicable.)

     $ _____

(Please proceed to Question #12.)

12.  What amount, if any, do you find will fairly and adequately compensate Richard Irvin, III,
     and Ashley Irvin for their loss of parental companionship, instruction, and guidance, and
     their mental pain and suffering?  (As the Court stated in its jury charge, do not make any
     reductions in the amount of damages because of the negligence, if any, of Mr. Irvin or Dr.
     Schirmer.  The Court, in entering judgment, will take your allocation into account if
     applicable.)

Richard Irvin, III                                      $ _____

Ashley Irvin                                            $ _____

(Please date and sign the verdict form, inform the Marshall that a verdict has been reached, and return to the courtroom.)

Houston, Texas, this _____ day of _____, 2005.


_____
JURY FOREPERSON