FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC 21 PH 2: 26

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | * | MDL Docket No. 1657 |
| | * | |
| **VIOXX PRODUCTS LIABILITY** | * | SECTION L |
| **LITIGATION** | * | |
| | * | |
| | * | JUDGE FALLON |
| This document relates to *Rita B. Barker, et* | * | |
| *al. v. Merck & Co., Inc., et al.*, no. 2:05-6535 | * | MAG. JUDGE KNOWLES |
| * * * * * * * * * * * * * * * * * * | * | |
| | * | |

### MERCK'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Comes now Merck & Co., Inc. ("Merck"), and hereby submits its opposition to plaintiffs'

Motion to Remand. In support of its opposition, Merck states as follows:

#### Background

This is a case involving the prescription drug Vioxx®. In this case, plaintiffs allege that,

as a result of taking Vioxx, they or their decedent suffered a variety of serious injuries, including

strokes, heart attacks, blood clots, other heart and cardiovascular problems, and death. (Petition

¶¶ 3-55.) Plaintiffs allege a variety of claims against Merck arising out of their contention that

"Vioxx is defectively designed, dangerous to human health, and lacked proper warnings as to the

dangers associated with its use." (*Id.* at ¶ 56.)

In a transparent attempt to defeat Merck's removal rights, plaintiffs also assert a variety

of claims against two of Merck's professional representative employees – Amy Sepko and

Sherry Alberts – alleging that they were involved in the "selling, marketing, and distributing of

Vioxx." (*Id.* at ¶¶ 59-60.) However, as a matter of law, these employee defendants are

2255998

1

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No_____

fraudulently joined, and their citizenship should thus be ignored for purposes of determining diversity.

## Argument

I.   **The Court Has Diversity Jurisdiction Over Plaintiffs' Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.**

The plaintiffs' motion to remand should be denied because the Court has diversity jurisdiction over plaintiffs' claims. Plaintiffs do not dispute in their motion that the amount-in-controversy requirement is satisfied. Plaintiffs also do not dispute that there is complete diversity between themselves and defendant Merck. Thus, the only question facing the Court is whether the non-diverse employee defendants were fraudulently joined. As set forth below, plaintiffs have no intention of seeking relief from these defendants; nor could they if they so desired. Accordingly, these defendants should be ignored for purposes of determining jurisdiction, and plaintiffs' motion should be denied.

In the Eighth Circuit, "[j]oinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1984). "The doctrine of fraudulent joinder is designed to prevent plaintiffs from naming parties of the same citizenship merely to avoid removal of an action to federal court." *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 2d 885, 889 (W.D. Ark. 1999).

> The only issue is whether the plaintiff has a legitimate claim against the non-diverse or in-state defendant – whether, in other words, the plaintiff has no real or direct interest in the controversy *vis-à-vis* the non-diverse or in-state defendant because it cannot state a legally sufficient and factually arguable claim for relief against it.

*In re Rezulin Prods. Liab. Litig.* ("*Rezulin I*"), 133 F. Supp. 2d 272, 279 (S.D.N.Y. 2001)

(footnote omitted).

Plaintiffs' motion to remand misstates the standard for determining whether a party has been fraudulently joined to defeat diversity. Plaintiffs repeatedly state throughout their brief that in order to show that the non-diverse defendants are fraudulently joined, Merck must show that there is "*no possibility*" that Plaintiffs have stated a claim against them under the applicable state law. *See* Memorandum in Support of Plaintiffs' Motion to Remand ("Pltfs. Mem."), at 3-5. However, under Eighth Circuit law, "[j]oinder is fraudulent and removal is proper where there exists no ***reasonable*** basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002) (emphasis added). *See also Filla v. Norfolk S. Rwy. Co.*, 336 F.3d 806, 809-11 (8th Cir. 2003) ("paramount consideration" in fraudulent joinder determinations is "the reasonableness of the basis underlying the claim").

As set forth below, this standard is clearly met here; there is no reasonable basis supporting any of the plaintiffs' claims against the employee defendants and they are therefore fraudulently joined.

A.      The Employee Defendants Are Fraudulently Joined Because Plaintiffs Make Absolutely No Individualized Factual Allegations To Support Their Claims Against Them.

First, the professional representatives were fraudulently joined because plaintiffs fail to allege any actual facts to support the claims against them. To the contrary, plaintiffs simply allege general facts regarding the "defendants" that clearly relate to Merck and not the individual defendants. In similar circumstances, courts have readily found that non-diverse defendants were fraudulently joined. *See, e.g., In re Diet Drug Prods. Liab. Lit.*, 220 F. Supp.2d 414, 424 (E.D. Pa. 2002) (pharmaceutical representatives fraudulently joined where "there is no indication . . . that any of the plaintiffs, or any of the plaintiffs' doctors, received any drugs from the sales

representative defendants"); *Rezulin I*, 133 F. Supp. 2d at 281-83 (denying remand where pharmaceutical representatives had no contact or communication with either plaintiffs or physicians and thus plaintiffs' claims lacked any "reasonable basis in fact"); *Wiggins v. Am. Home Prods. Corp.*, 2001 WL 34013629 at *3 n. 4 (N.D. Ala. Oct. 2, 2001) (finding resident defendant fraudulently joined because "plaintiffs ma[de] no specific allegation[s] against [the in-state defendant] at all in any of the eight counts of the complaint"), *aff'd*, 37 Fed. Appx. 980 (11th Cir. 2002); *Lyons v. Am. Tobacco Co.*, 1997 WL 809677at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

Plaintiffs assert various claims against both Merck and the employee defendants. However, plaintiffs do not allege in their Petition or assert in their brief that the employee defendants ever said or did anything that connects them to plaintiffs; nor is there any reasonable basis to infer that the employee defendants personally did anything from which individual liability could flow. Instead, plaintiffs make only broad conclusory assertions about all the defendants and lump the employee defendants together with Merck. (*See, e.g.*, Petition, Counts IV-IX.) Because such collective allegations are not sufficient to state a factual basis for any claim against the employee defendants, this alone is reason to deny plaintiffs' motion to remand. *See, e.g., Tillman v. RJ Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined where "plaintiff failed to tie these defendants to the underlying allegations of the complaint").

B.    The Employee Defendants Were Fraudulently Joined Because Plaintiffs Do Not
       Allege Any Actual Link Between The Employees And Their Ingestion Of Vioxx.

Second and relatedly, all the claims against the employee defendants are barred because

plaintiffs do not allege that these representatives visited their doctors or have any other link to

the plaintiffs' alleged ingestion of Vioxx.  As such, plaintiffs cannot state claims for fraud or

negligence.  *See Hartsfield v. Barkley*, 856 S.W.2d 342, 345-46 (Mo. App. 1993) (fraud); *Like v.

Glaze*, 126 S.W.3d 783, 785 (Mo. App. 2004) (negligence).  *See, e.g., In re Diet Drugs Prods.

Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (pharmaceutical representatives

fraudulently joined where "there is no indication . . . that any of the plaintiffs, or any of the

plaintiffs' doctors, received any drugs from the sales representative defendants"); *Rezulin I*, 133

F. Supp. 2d at 281-83 (denying remand where pharmaceutical representatives had no contact or

communication with either plaintiffs or physicians and thus plaintiffs' claims lack any

"reasonable basis in fact").

For instance, in *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 523 (S.D. Miss. 2000), the

plaintiffs brought suit against a pharmaceutical manufacturer and five sales representative

defendants for injuries they allegedly sustained from taking the drug Rezulin.  The plaintiffs'

claims against the sales representatives were based on negligence, fraudulent or negligent

misrepresentation, and breach of warranty.  *Id.* at 524.  Although the plaintiffs alleged that the

sales representatives breached a duty to warn them about the risks of Rezulin, the Court held that

the non-diverse defendants were fraudulently joined, and stated:

> While Plaintiffs claim that the sales representatives owed them a duty to warn,
> there is no evidence, nor do Plaintiffs argue in their motion, that any of the named
> Plaintiffs, or their physicians, ever received any Rezulin from the named sales
> representatives.  Plaintiffs have failed to establish any connection between
> themselves and the named sales representatives.

*Id.* In addressing the plaintiffs' misrepresentation claims, the *Johnson* court stated:

> Suffice it to say that Plaintiffs have no proof, and in fact do not argue in their motion to remand, that any of the named representatives made any representations directly to any of the Plaintiffs. Thus, none of the Plaintiffs was the "hearer" of any of the sales representatives' alleged misrepresentations. *Id.* Nor is there proof that any representations were made to any of the Plaintiffs' physicians. Again Plaintiffs have failed to establish any connection between themselves and the named sales representatives.

*Id.* at 525. Concluding that the plaintiffs' failure to establish a factual connection between themselves and any of the named sales representatives "dooms their claim," *id.*, the Court held that the plaintiffs had no cause of action against the named sales representatives and the case was therefore properly removed.

This is precisely the case here. Plaintiffs assert various claims against both Merck and the employee defendants. However, plaintiffs do not allege in their petition or assert in their brief that the employee defendants ever said or did *anything* that connects them to *these particular plaintiffs.*

Plaintiffs argue that they have "specifically alleged that the sales reps distributed Vioxx® samples and misinformation to plaintiffs and their doctors." *See* Pltfs. Mem. at 8. Notably, they fail to cite to any specific allegation or paragraph of their petition and for good reason – no such allegation exists. While there are generalized allegations about *all defendants*, and Merck encouraging certain alleged conduct (Pet. ¶ 63), nowhere in plaintiffs' petition do they assert that Ms. Sepko or Ms. Alberts distributed samples or provided "misinformation" to *these particular plaintiffs* or *their specific doctors.* For this reason too, the claims against them must fail and the individual defendants are fraudulently joined.

C.    The Employee Defendants Are Also Fraudulently Joined Because
       There Is No Reasonable Basis That Plaintiffs Can Prevail On Any Of
       The Claims Against Them.

The employee defendants are also fraudulently joined because plaintiffs have no

reasonable possibility of prevailing on any of the causes of actions alleged against them. Below,

we discuss why all the claims against the employee defendants must fail.

1.    **Plaintiffs Cannot Prevail Against The Employee Defendants
       For Deceptive Trade Practices, Negligence, Misrepresentation, and
       Fraudulent Omission.**

Plaintiffs have no reasonable factual or legal basis for recovery against the employee

defendants on their claims for several reasons.

First, the plaintiffs have not identified any specific representations, either in their Petition

or in their motion to remand, made by the employee defendants on which they relied. Failure to

plead such representations with particularity is fatal to a common law and statutory fraud claim.

*See In re General Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. 1525, 1536

(E.D. Mo. 1997) (dismissing consumer fraud claims because "pleading requirements of Rule

9(b) apply to claims based on state consumer fraud statutes" and "plaintiffs have failed to plead

these claims with the specificity required by Fed.R.Civ.P. 9(b)"); *Tuttle v. Lorillard Tobacco

Co.*, 118 F. Supp. 2d 954, 963-64 (D. Minn. 2000) (court "strongly disagreed" with plaintiff's

argument that a statutory fraud claim was not subject to the heightened pleading standard of Rule

9(b), finding that Rule 9(b) applies where, as here, the "gravaman of the complaint is fraud");

*Summer Chase Second Addition Subdiv. Homeowners Ass'n v. Taylor-Morley, Inc.*, 146 S.W.3d

411, 419 (Mo. App. 2004) (to state a claim for negligent misrepresentation, the plaintiff must

plead facts that show reliance on the defendant's information); *Mullen v. G.M.A.C.*, 919 S.W.2d

7, 8 (Mo. App. 1996) ("The circumstances of each element [of fraud] must be stated with particularity" and the "[f]ailure to plead any element renders the petition subject to dismissal").

Not surprisingly, such pleading defects are fatal to a motion to remand such as plaintiffs'. *Burns v. Wyeth, Inc.*, Case No. 04-CV-87-HRW, 2004 U.S. Dist. LEXIS 26651, at *11 (E.D. Ky. Nov. 12, 2004) (finding fraudulent joinder with respect to pharmaceutical representative where "Plaintiffs do not plead with any particularity or specificity when or where the alleged misrepresentations occurred, or for that matter, what was allegedly misrepresented"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001) (fraudulent joinder found because "allegations of management-level corporate wrongdoing, . . . ascribe[d] to salespeople through the use of the catch-all attribution to 'defendants' . . . do not meet the Rule 9(b) requirements."); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b) and supported finding of fraudulent joinder).

Second, plaintiffs' statutory claim under the Missouri Merchandising Practices Act also fails. Plaintiffs have not alleged in their Petition that these employee defendants actively participated in the alleged deceptive conduct. *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. App. 1988) (defendant's must have engaged in deceptive conduct for there to be a violation of the Missouri Merchandising Practices Act). Instead, as discussed above, plaintiffs merely lump the employee defendants with Merck and the fictional defendants. Additionally, plaintiffs do not claim anywhere in their Petition that these employee defendants sold Vioxx to these particular plaintiffs or that theses employee defendants ever solicited these

particular plaintiffs in any way.  Thus, plaintiffs have not satisfied the requirements of subsection 4 or 5 of § 407.010.

### 2.  Plaintiffs' Negligence Claims Also Fail As A Matter Of Law.

Plaintiffs acknowledge that unless there is a "duty" owed to the Plaintiffs, the employee defendants cannot be liable.  (Pltfs. Mem. at 9-10).  However, plaintiffs cite cases and articulate standards that are completely unrelated to the allegations in the Petition.  The standard is not whether some court, somewhere found a duty existed under some other set of facts.  The issue is whether *this* petition and *these* alleged facts (what little is alleged) give rise to such a duty. Without regard to what they have alleged, plaintiffs now argue that the employee defendants owe a duty because they "gratuitously" took actions which created a duty "even though there was no duty to act originally."  (Pltfs. Mem. at 10).  Plaintiffs then argue that "since the sales reps took on the duty of warning of some of the risks of Vioxx®, they also took on the duty of warning of all of the risks . . ." (*Id.*).  Again,  plaintiffs cite to *no allegation* in the Petition to support such a position – because there isn't one –  nor could they so allege.  The employee defendants simply did not "gratuitously" take on duties to warn the plaintiffs, particularly plaintiffs with whom they never interacted.  Plaintiffs theory is simply not supportable and it is not rational.  Nor does it comply with Missouri law.  In Missouri, it is the physician, not a sales representative, who has responsibility to warn plaintiffs concerning prescription medicine.  *See Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. App. 1999); *Kirsch v. Picker In'l, Inc.*, 753 F.2d 670 (8th Cir. 1985) (applying Missouri law)) (recognizing that Missouri follows the learned intermediary doctrine).

With regard to their negligence claim, plaintiffs argue that Missouri courts "might" impose liability on the employee defendants for these causes of action, because an agent may be held liable in Missouri "whenever, under the circumstances, he owes a duty of care in regard to such matters to such third persons and he is liable whenever he is culpable of such negligence as would create a liability to another person if no relationship of master and servant or principal and agent existed between him and someone else." *Gen. Elec. Capital Corp. v. Rauch*, 970 S.W.2d 348, 356 (Mo. App. 1998). But this principle is inapplicable in this case: the employee defendants do not owe plaintiffs a duty of care, in that they do not have a duty to, as plaintiffs' allege, warn plaintiffs, do additional "testing," "advise the FDA," or change the packaging labels. (Petition ¶ 149.)

Plaintiffs also cite to several unpublished opinions to support their position that Missouri courts may impose liability on the employee defendants. These cases do nothing to support plaintiffs' position, and in fact, further support Merck's position. For example, in *Marshall v. Wyeth*, while the court initially found that the pharmaceutical defendants were not fraudulently joined, the court *never adopted that decision*, and eventually determined:

> This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against a representative unless there is evidence that he or she personally and actively sold or promoted the alleged product to applicable plaintiffs or their physicians after he or she had knowledge that the product was dangerous or defective or after he or she had knowledge that warnings had not been otherwise appropriately given.

*Marshall v. Wyeth*, CV 04-PT-179-S (N.D. Ala. June 30, 2004) (attached hereto as Ex. A). In *Ingwerson v. Wyeth-Ayerst Labs.*, the district court did not hold that there was a reasonable basis to support claims such as those asserted by plaintiffs here under Missouri law. Rather, the court found that the pharmaceutical representative defendants were not fraudulently joined because the

pharmaceutical manufacturer did "not dispute that Plaintiffs may [have] asserted a cognizable cause of action under Missouri law against" the pharmaceutical representatives. *Ingwerson*, No. 02-0982-CV-W-ODS (W.D. Mo. Jan. 22, 2003). Finally, the two cases from the Middle District of Florida (*Parent* and *Hroncich*) are inapposite because they both rely on a case from the Florida state court which specifically held that Florida law recognizes a cause of action in fraud against pharmaceutical sales representatives. There is no such case in Missouri.

Therefore, there exists no reasonable basis in fact or law supporting any of these claims against the employee defendants, and the employee defendants are fraudulently joined.

    D.    Plaintiffs Cannot Prevail Against The Employee Defendants For Concert Of
          Action Or Conspiracy.

Finally, there is no reasonable possibility that plaintiffs could prevail against the employee defendants on their concert of action and conspiracy claims. "The concert of action theory imposes liability 'upon all those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt its acts done for their benefit.'" *Zafft v. Eli Lilly & Co., Inc.*, 676 S.W.2d 241, 245 (Mo. banc 1984) (citation omitted). A "civil conspiracy" is defined in Missouri as "an agreement between two or more persons to do an unlawful act or a lawful act in an unlawful manner." *Tindall v. Holder*, 892 S.W.2d 314, 321 (Mo. App. 1994). "In order to establish a cause of action for civil conspiracy, the plaintiff must plead sufficient facts to support the following elements: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful acts; and 5) damages." *Schott v. Beussink*, 950 S.W.2d 621, 627 (Mo. App. 1997).

Plaintiffs' concert of action and conspiracy claims are unfounded in either fact or law. First, plaintiffs' failure to state any underlying claim against the employee defendants, as discussed above, means that there can be no claim for conspiracy or concert of action. *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 864 (Mo. App. 2000) ("[i]f the underlying tort claims failed to state causes of action . . . then a claim of conspiracy based on those tort claims will not stand").

Second, the universal law is that employees cannot conspire with their employer. *See Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 94 (Mo. App. 2003) ("Two entities that are not legally distinct cannot conspire with one another"); *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 176 (Mo. App. 1996) ("the general rule holds that a corporation cannot conspire with its own employees."); *cf. Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978) ("unilateral activity by a single firm" cannot constitute concert of action); *H.J. Hodes & Co. v. Triangle Brass & Specialties Co.*, 1979 WL 1804 (W.D. Mo. Oct. 11, 1979) (same). Plaintiffs attempt to shoehorn their petition into a rarely used exception to this general rule by alleging that the employee defendants had an independent interest because they have something to gain for themselves, *i.e.*, bonuses and incentives from the increased sale of Vioxx. (Petition ¶¶ 195-196.) However, these allegations do not overcome the general prohibition because, "without an organization legally distinct from the principal defendant, it would be impossible for an employee to have an interest that was truly independent" of the employer's, and hence, no claim for civil conspiracy exists. *Mika*, 112 S.W.3d at 95; *Metts v. Clark Oil & Refining Corp.*, 618 S.W.2d 698, 702 (Mo. App. 1981) (same).

Selling Vioxx did not go beyond the employee defendants' agency relationship with Merck – it was entirely within the scope of the agency relationship.  An employee attempting to increase sales for an employer and, in turn, receiving bonuses and increases from the employer, which is essentially what the employee defendants are being accused of, is simply not acting independently of the employer.  *See Trau-Med. of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703-04 (Tenn. 2002) ("there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment."); *Faison v. Wyeth, Inc.*, 353 F. Supp. 2d 1273 (S.D. Ga. 2004) (finding that sales representatives could not conspire with pharmaceutical company to conceal and fraudulently misrepresent material information regarding the prescription drugs Pondimin and Redux).

Accordingly, there exists no reasonable basis in fact or law supporting any of these claims against the employee defendants, and the employee defendants are fraudulently joined.

## Conclusion

Plaintiffs here have engaged in manipulative pleading tactics by naming defendants against whom they have no reasonable chance of prevailing.  For all of the foregoing reasons, plaintiffs' motion to remand should be denied.

Respectfully submitted,

Phillip A. Wittman, 13625
Anthony M. DiLeo, 4942
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130

Phone:  504-581-3200
Fax:  504-581-3361

Defendants' Liaison Counsel

Dan H. Ball
Robert T. Ebert, Jr.
Stephen G. Strauss
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Phone:  314-259-2000
Fax:  314-259-2020

Counsel for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Opposition to Plaintiffs' Motion to Remand has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 21st day of December, 2005.

Dorothy H. Wimberly

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEVENARI MARSHALL;
DIANE POLITO; MAXINE
SMITHEY

        Plaintiffs,

v.                                   CV 04-PT-179-S

WYETH PHARMACEUTICAL;
BEN LAVENDER; WILLIAM
OWEN

        Defendants.

**MEMORANDUM OPINION**

Plaintiffs argue that the court has a "duty to examine its own jurisdiction prior to undertaking any formal action." The court assumes that ruling on a motion to remand constitutes a "formal action." Further, examining its jurisdiction is exactly what this court has been doing. The Eleventh Circuit has also held that this court has an "unflagging" duty to retain jurisdiction where it has it. That presumably means that the court should not simply count other district court rulings.

This case represents the usual tension between what has been called this court's "unflagging" duty to exercise its jurisdiction when present[1] and the admonishments against accepting diversity jurisdiction when there are "possible" claims against non-diverse defendants. The difficulty of resolving such tension is exacerbated by the effort of each side to stretch every

---

[1] *See Moorer v. Demopolis Waterworks and Sewer Bd.*, 2004 WL 1300156 (11th Cir. 2004)(*quoting Colorado River Water Conservation Dist. v. U.S.*, 965 S. Ct. 1236 (1976)).

possible nuance from every possible case. One would think that the difference might be whether a party will remain on death row or be freed to return to the idyllic confines of a country home.

A further feature of this dilemma is the fact that the issue is supposed to be decided based upon objective standards but is usually influenced by the deciding courts' subjective leanings. It is tempting to quickly dispose of a case on a non-appealable basis.

Surely, as always, this court must look for some solution which does not lend itself to either arbitrariness or capriciousness. The court assumes that in this context, "possible" means more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role. Surely, in the absence of total hostility toward diversity jurisdiction, the mere naming of purely adjunct parties is <u>not</u> sufficient in and of itself to defeat jurisdiction. With these thoughts and the admonitions of controlling courts in mind, this court will attempt to resolve the issues here.

This case is not as cut and dried as either side would suggest. In this court's opinion the real issue is whether the named non-diverse defendants knowingly (that is, with knowledge of the alleged defects), personally marketed the drug(s) to a plaintiff consumer or to a plaintiff consumer's physician. While the *Wall* case is not totally apt, it likely stands for the proposition that there can be no proximate cause if the said defendants merely market the products to pharmacists, because a pharmacist has no choice but to fill the prescriptions of the physician.

A crucial factor in this case is when the non-diverse defendants knew that the products were defective and whether, thereafter, they personally and affirmatively marketed the defective drugs to a plaintiff or the plaintiff's physician. It stands to reason that a court to which a large number of these cases have been transferred should be in a better position to make uniform

2

decisions with regard to this issue. Thus, this court's part delay.

Everyone knows that plaintiffs add marginal defendants to avoid removal from state courts. Everyone knows that the removing defendants feel just as strongly about wanting federal jurisdiction. These competing motives do not lend themselves to straightforward arguments. This court abhors game playing on either side. The time has come, however, for the court to make a decision, right or wrong.

The Eleventh Circuit has indicated that district courts must "inquire" into removal jurisdiction. *Univ. of South Ala. v. American Tobacco*, 168 F.3d 405, 410 (11th Cir. 1999). This court assumes that does not mean that the court should make a rush to judgment without the facts. How can a court possibly know whether an allegation in a complaint has been fraudulently made without some knowledge of the facts? If an allegation is made that defendant A ran a red light in Anniston, Alabama on May 1, 2004, and the evidence overwhelmingly shows that A was in New York for the whole day of May 1, 2004, would the district court have to accept the allegation in the complaint and simply say that the dispute is for the state court to determine? *See Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997).

The parties have not cited any directly applicable Alabama or controlling federal court cases. This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against a representative unless there is evidence that he or she personally and actively sold or promoted the alleged product to applicable plaintiffs or their physicians after he or she had knowledge that the product was dangerous or defective or after he or she had knowledge that warnings had not been otherwise appropriately given. Here, there is no such allegation and certainly no substantial evidence to rebut evidence to

3

the contrary.

This court is at least partially persuaded by the *Rezulin* and *Baycol* cases. Those courts perhaps go further than this court would go in that they may exclude claims against even knowledgeable sales representatives. While those are likely correctly holdings with regard to AEMLD claims, they may not be appropriate for failure to warn, intentional misrepresentation or suppression claims. Here, however, there is no substantial evidence to rebut the allegations to the contrary.

The court will allow the plaintiffs ninety (90) days for discovery on these issues:

(1) When and how did a named diverse defendant learn that a pertinent drug was defective and should not be marketed?

(2) When and how did that named diverse defendant thereafter personally market or promote the defective drug to a named plaintiff or the physician of a named plaintiff?

(3) Any other information pertinent to establishing that named a non-diverse defendant personally marketed or promoted  the defective products to a plaintiff or the plaintiff's physician after having knowledge of a defect.

At the conclusion of said discovery, the plaintiffs will notify the court and the court will thereafter issue order(s) calling for a consideration of said evidence upon which this court will rule.[2]

The court notes that said discovery will avail the plaintiffs in their pursuit of the non-diverse defendants in state court if the cases(s) are remanded. Further, the plaintiffs may advise the MDL that this court will take the motion to remand under advisement after said discovery.

_____

[2]The discovery need not take the full ninety (90) days.

4

This the _30TH_ day of _June_____, 2004.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

5