

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN -6  A 8: 35

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX ) | MDL NO. 1657 |
| ) | |
| PRODUCTS LIABILITY LITIGATION ) | SECTION: L |
| ) | |
| ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ALL MEDICAL MONITORING ) | |
| CLASS ACTION COMPLAINTS ) | MAGISTRATE JUDGE KNOWLES |
| PENDING OR SUBJECT TO ) | |
| TRANSFER TO MDL 1657 ) | |
| ) | |
| ) | |
| ) | |

## REPLY MEMORANDUM IN SUPPORT OF MERCK'S MOTION TO DISMISS PLAINTIFFS' PURCHASE CLAIMS MASTER CLASS ACTION COMPLAINT

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No. _____

# TABLE OF CONTENTS

I.    APPLICATION OF NEW JERSEY LAW TO THE CLAIMS OF PLAINTIFFS THROUGHOUT THE COUNTRY WOULD BE CONTRARY TO WELL ESTABLISHED LAW AND SOUND POLICY ............................................................. 2

    A.    Plaintiffs' Claims Cannot Be Evaluated Absent A Determination Of Which State's Law Governs Each Named Plaintiff's Claims. ............................. 2

    B.    A Proper Choice-Of-Law Analysis Does Not Permit Unitary Application Of New Jersey Substantive Law To All Plaintiffs. ................................................. 3

        1.    Each Named Plaintiff's Claim Is Governed By The Choice-Of-Law Rules That Would Have Applied In The Transferor Court. .............. 4

        2.    A Proper Analysis Of New Jersey's Choice-Of-Law Rules Would Require The Court To Apply The Substantive Laws Of Each Named Plaintiff's Home State. .................. 5

II.    PLAINTIFFS CANNOT EVADE THE NEARLY UNIVERSAL PRINCIPLE THAT ABSENT INJURY, THEY HAVE NO CLAIMS AGAINST MERCK. .............. 11

III.    PLAINTIFFS' CONSUMER FRAUD CLAIMS SHOULD BE DISMISSED. .............. 14

    A.    Plaintiffs' Consumer Fraud Claims Fail To Meet The Heightened Pleading Requirements Of Rule 9(b). ................................................................. 14

    B.    The Consumer Plaintiffs' Consumer Fraud Claims Fail For Numerous Additional Reasons. .......................................................................... 16

        1.    Plaintiff Edward Wright Cannot State A Claim Under The Arizona Consumer Fraud Act. ................................................................. 17

        2.    Plaintiff Clara Fontanilles Fails To State A Claim Under Florida Law. .......................................................................................... 20

        3.    The Claims Of Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin Williams, and Sharon Murphy All Fail Under Illinois Law. ................... 22

        4.    The Indiana Plaintiffs, Michelle Biondillo and Stephen Keisker, Fail To State A Cause Of Action Under The Indiana Deceptive Consumer Sales Act. ................................................................. 26

        5.    Plaintiff Christie Anderson Fails To State A Claim Under The Kentucky Consumer Protection Act. ....................................................... 28

        6.    Plaintiffs Frank Saia and Emily Feinberg Fail To State A Claim Under Massachusetts Law. ........................................................ 30

i

7.   Plaintiff Christine Seitz's Michigan Consumer Protection Act Claim Is Barred Under Michigan Law...................................................... 33

8.   Plaintiff Sara Cheeseman Does Not State A Claim For Consumer Fraud Under Vermont Law.................................................................. 35

9.   Plaintiff Brenda Aguero Does Not State A Claim Under Washington Law. ................................................................................. 37

10.  If New Jersey Law Governed Plaintiffs' Claims, None Of Them Would State A Cause Of Action.............................................................. 40

C.   The Third-Party Payor Plaintiffs' Consumer Protection Act Claims Fail. .......... 45

1.   Cavalier Homes, Inc., Cannot State A Claim Under The Alabama Deceptive Trade Practices Act.................................................................. 45

2.   AFSCME Fails To State A Claim Under District Of Columbia Law. ..................................................................................... 50

3.   The Illinois Third-Party Payor Entities Fail To State A Claim Under Illinois Law. .................................................................... 51

4.   United Senior Action Cannot State A Claim Under Indiana's Consumer Protection Act.......................................................................... 51

5.   The Third-Party Payor Claims Fail Under The Massachusetts Consumer Protection Statute........................................................................ 52

6.   Michigan Third-Party Payors Cannot State A Claim Under Michigan's Consumer Protection Law. .................................................... 52

7.   The New York Third-Party Payors Cannot State A Claim Under the New York Deceptive Acts And Practices Act. ................................... 52

8.   UFCW Local 1776 Cannot State A Claim Under The Pennsylvania Unfair Trade Practices And Consumer Protection Law. ........................ 53

9.   The Third-Party Payor Claims Would All Fail Under New Jersey Law. ..................................................................................... 56

IV.  PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY.................................................................. 58

A.   Plaintiffs Fail To Allege That They Did Not Receive The Benefit Of Their Bargain.......................................................................................... 59

B.      The Implied Warranty Claims Must Be Dismissed As To Nearly All
        Plaintiffs For The Additional Reason That They Fail to Allege Timely
        Notice Of Breach As Required By U.C.C. § 2-607. ............................................ 60

C.      The Implied Warranty Of Merchantability Claims Are Barred Under Five
        States' Laws Because The Plaintiffs Lack Vertical Privity With Merck............. 62

        1.      Alabama (Plaintiff Cavalier Homes, Inc.). ............................................. 63

        2.      Arizona (Plaintiff Edward Wright). ......................................................... 63

        3.      Florida (Plaintiff Clara Fontanilles)........................................................ 64

        4.      Illinois (Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin
                Williams, Sharon Murphy, Midwest Operating Engineers, and
                Painters District Council No. 30 Health and Welfare Fund). .................. 65

        5.      New York (Plaintiffs New York State Wide Senior Action
                Council, Suffolk County, and Teamsters Local 237 Welfare Fund). ....... 67

D.      The Warranty Claims Of Third-Party Payors Must Also Be Dismissed
        Because Third-Party Payors Are Not "Purchasers" Within The Meaning
        Of The UCC. ...................................................................................................... 68

E.      State-Specific Warranty Law Bars The Claims Of Plaintiffs from Certain
        States. ................................................................................................................ 69

        1.      Plaintiff UCFW Cannot State A Claim Against Merck Under
                Pennsylvania Warranty Law. ................................................................... 69

        2.      Michigan Plaintiffs Cannot State A Claim Against Merck Under
                Michigan Law. ........................................................................................ 71

F.      Even If New Jersey Law Applied to Plaintiffs' Warranty Claims, Those
        Claims Would Still Fail. .................................................................................... 72

V.      PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT............... 74

VI.     THE ASSOCIATION PLAINTIFFS HAVE NO STANDING TO PURSUE
        THEIR CLAIMS................................................................................................... 75

CONCLUSION.................................................................................................................. 78

## TABLE OF AUTHORITIES

### CASES

*Adam A. Weschler & Son, Inc. v. Klank,*
    561 A.2d 1003 (D.C. 1989) ................................................................ 50

*Alaface v. Nat'l Inv.,*
    892 P.2d 1375 (Ariz. Ct. App. 1994) ................................................ 18

*Albertson v. Wyeth, Inc.,*
    63 Pa. D. & C. 4th 514 (Pa. Ct. Com. Pl. 2003) .............................. 70

*Alcorn v. BP Prods. N. Am. Inc.,*
    No. Civ. 04-120 (PAM/RLE), 2004 WL 1745761 (D. Minn. Aug. 2, 2004) ...................... 62

*Alloway v. Gen. Marine Inds., L.P.,*
    695 A.2d 264 (N.J. 1997) .................................................................. 72

*Am. Universal Ins. Group v. Gen. Motors Corp.,*
    578 So. 2d 451 (Fla. Dist. Ct. App. 1991) ........................................ 65

*Animal Legal Defense Fund Inc. v. Provimi Veal Corp.*
    626 F. Supp. 278 (D. Mass. 1986) .................................................... 31

*Anthony v. Country Life Mfg., LLC,*
    70 Fed. Appx. 379 (7th Cir. 2003) ............................................ 60, 61

*Arc Networks, Inc. v. Gold Phone Card Co.,*
    756 A.2d 636 (N.J. Super. Ct. Law Div. 2000) ................................ 56

*Arizona ex rel. Corbin v. Tolleson,*
    773 P.2d 490 (Ariz. Ct. App. 1989) .................................................. 17

*Arnold v. Microsoft Corp.,*
    No. 00-CI-00123, 2001 WL 193765 (Ky. Cir. Ct. July 21, 2000) ............ 30

*Aspinall v. Philip Morris Cos.,*
    813 N.E.2d 476 (Mass. 2004) ...................................................... 9, 13

*Atteberry v. Mem'l-Hermann Healthcare Sys.,*
    405 F.3d 344 (5th Cir. 2005) ............................................................ 68

*Bano v. Union Carbide Corp.,*
    361 F.3d 696 (2d Cir. 2004) ........................................................ 76, 77

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
    343 F.3d 719 (5th Cir. 2003) ........................................................ 14, 15

*Billions v. White & Stafford Furniture Co.,*
    528 So. 2d 878 (Ala. Civ. App. 1988) ......................................... 47, 48

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996) ............................................................................ 8

*Bober v. Glaxo Wellcome PLC,*
    246 F.3d 934 (7th Cir. 2001) ............................................................ 25

*Boyes v. Greenwich Boat Works, Inc.,*
    27 F. Supp. 2d 543 (D.N.J. 1998) .................................................... 73

*Briehl v. Gen. Motors Corp.,*
    172 F.3d 623 (8th Cir. 1999) ........................................................ 47, 59

*Cablevision of Boston, Inc. v. Public Imp. Comm'n,*
  38 F. Supp. 2d 46 (D. Mass. 1999) ............................................................... 31

*Cannon v. Cherry Hill Toyota, Inc.,*
  161 F. Supp. 2d 362 (D.N.J. 2001) ............................................................... 40

*Carter v. Gugliuzzi,*
  716 A.2d 17 (Vt. 1998) .............................................................................. 35

*Caterpillar, Inc. v. Usinor Industeel,*
  No. 04 C 2474, 2005 WL 736550 (N.D. Ill. Mar. 30, 2005) ............................... 66

*Catlett v. Wyeth, Inc.,*
  379 F. Supp. 2d 1374 (M.D. Ga. 2004) ......................................................... 19

*Chase v. Gen. Motors Corp.,*
  856 F.2d 17 (4th Cir. 1988) ........................................................................ 61

*Cipollone v. Liggett Group, Inc.,*
  683 F. Supp. 1487 (D.N.J. 1988) ................................................................. 73

*City Check Cashing, Inc. v. Nat'l State Bank,*
  582 A.2d 809 (N.J. Super. Ct. App. Div. 1990) ............................................... 56

*Connick v. Suzuki Motor Co.,*
  675 N.E.2d 584 (Ill. 1996) ............................................................. 23, 60, 61, 62

*Cooper's Mobile Homes, Inc. v. Simmons,*
  617 P.2d 415 (Wash. 1980) ........................................................................ 38

*Cunningham v. PFL Life Ins. Co.,*
  No. C 98-67 MJM, 1999 WL 33656879 (N.D. Iowa Aug. 25, 1999) ...................... 3

*Davis v. Suran,*
  No. 98 C 656, 1998 WL 378420 (N.D. Ill. July 1, 1998) ................................... 3

*Debbs v. Chrysler Corp.,*
  810 A.2d 137, 156-57 (Pa. Super. Ct. 2002) ............................................. 54, 55

*Desiano v. Warner-Lambert Co.,*
  326 F.3d 339 (2d Cir. 2003) ............................................................. 40, 50, 58

*Drayton v. Pilgrim's Pride Corp.,*
  No. Civ.A. 03-2334, 2004 WL 765123 (E.D. Pa. Mar. 31, 2004) ........................ 55

*Dunlap v. Jimmy GMC of Tucson, Inc.,*
  666 P.2d 83 (Ariz. Ct. App. 1983) ............................................................... 18

*Duronio v. Merck & Co., Inc.,*
  Case No. 04-434718-CP, slip op. (Mich. Cir. Ct. Wayne County Nov. 22,
  2005) ................................................................................................... 33

*Dyer v. Best Pharmacal,*
  577 P.2d 1084 (Ariz. Ct. App. 1978) ............................................................ 18

*EBSCO Indus., Inc. v. LMN Enters. Inc.,*
  89 F. Supp. 2d 1248 (N.D. Ala. 2000) ..................................................... 46, 47

*Ehlis v. Shire Richwood, Inc.,*
  367 F.3d 1013 (8th Cir. 2004) .................................................................... 36

*Ergonomic Lighting Sys. v. Commercial Petroleum Equip./USALCO,*
  Civ. Action No. SA-02-CA-0031RF (NN), 2003 U.S. Dist. LEXIS 19118
  (W.D. Tex. Oct. 21, 2003) ......................................................................... 15

*Felix v. Hoffman-La Roche, Inc.*,
   540 So. 2d 102 (Fla. 1989)..................................................................... 21

*Fenwick v. Kay Am. Jeep, Inc.*,
   371 A.2d 13 (N.J. 1977)........................................................................ 42

*Finch v. Ford Motor Co.*,
   327 F. Supp. 2d 942 (N.D. Ill. 2004) .................................................... 66

*Fink v. Ricoh Corp.*,
   839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ...................................... 6

*Ford Motor Co. v. Rice*,
   726 So. 2d 626 (Ala. 1998) ............................................................. 47, 48

*Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*,
   408 N.E.2d 403 (Ill. App. Ct. 1980) ................................................ 65, 66

*Fredericks v. Rosenblatt*,
   667 N.E.2d 287 (Mass. App. Ct. 1996) ................................................ 32

*Fu v. Fu*,
   733 A.2d 113 (N.J. 1999)........................................................................ 6

*Furst v. Einstein Moomjy, Inc.*,
   860 A.2d 435 (N.J. 2004).................................................................. 41, 42

*Gaston v. Hunter*,
   588 P.2d 326 (Ariz. Ct. App. 1978).................................................... 18

*GE Capital Corp. v. Posey*,
   415 F.3d 391 (5th Cir. 2005) ............................................................... 15

*Goldman v. Town of Plainfield*,
   762 A.2d 854, 857 (Vt. 2000).............................................................. 36

*Hahn v. Richter*,
   673 A.2d 888 (Pa. 1996)...................................................................... 70

*Hearn v. R.J. Reynolds Tobacco Co.*,
   279 F. Supp. 2d 1096 (D. Ariz. 2003) ................................................. 17

*Heastie v. Cmty. Bank of Greater Peoria*,
   690 F. Supp. 716 (N.D. Ill. 1988) .................................................. 25, 26

*Heindel v. Pfizer Inc.*,
   381 F. Supp. 2d 364 (D.N.J. 2004) ............................................... passim

*Henderson v. Merck & Co., Inc.*,
   No. 04-CV-05987-LDD, 2005 WL 2600220 (E.D. Pa. Oct 11, 2005)............................ 33, 71

*Henry v. Dow Chem. Co.*,
   701 N.W.2d 684 (Mich. 2005)............................................................. 34

*Herbstman v. Eastman Kodak Co.*,
   342 A.2d 181 (N.J. 1975)...................................................................... 72

*Hobbs v. Gen. Motors Corp.*,
   134 F. Supp. 2d 1277 (M.D. Ala. 2001) .............................................. 60

*Hole v. Gen. Motors Corp.*,
   83 A.D.2d 715 (N.Y. App. Div. 1981) ................................................. 67

*Hundred E. Credit Corp. v. Eric Schuster,*
    515 A.2d 246 (N.J. Super. Ct. App. Div. 1986)..................................................... 56

*Hunt v. Wash. State Apple Advertising Comm'n,*
    432 U.S. 333 (1977)................................................................................. 75, 77

*In re Air Bag Prods. Liab. Litig.,*
    7 F. Supp. 2d 792 (E.D. La. 1998) ................................................................ 59

*In re Baycol Prods. Liab. Litig.,*
    218 F.R.D. 197 (D. Minn. 2003)................................................................... 74

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.,*
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) .................................................. 3, 7, 11

*In re Cardizem CD Antitrust Litig.,*
    105 F. Supp. 2d 618 (E.D. Mich. 2000)......................................................... 74

*In re Consol. Parlodel Litig.,*
    22 F. Supp. 2d 320 (D.N.J. 1998) ................................................................... 6

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
    174 F.R.D. 332 (D.N.J. 1997)......................................................................... 6

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,*
    966 F. Supp. 1525 (E.D. Mo. 1997).......................................................... 14, 16

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    295 F. Supp. 2d 30 (D.D.C. 2003) ................................................................ 74

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.,*
    170 F.R.D. 417 (E.D. La. 1997)...................................................................... 4

*In re Norplant Contraceptive Prods.  Liab. Litig.,*
    165 F.3d 374 (5th Cir. 1999) ........................................................................ 19

*In re Pennsylvania Baycol Third-Party Payor Litig.,*
    No. 1874, 2005 Phila. Ct. Com. Pl. LEXIS 129 (Phila. Ct. Com. Pl.) ........... 70, 71

*In re Phenylopropanolamine Prods. Liab. Litig.,*
    MDL No. 1407, 2003 U.S. Dist. LEXIS 22530 (W.D. Wash. Nov. 5, 2003) ...................... 30

*In re Propulsid Prods. Liab. Litig.,*
    208 F.R.D. 133 (E.D. La. 2002)...................................................................... 4

*In re Rezulin Prods. Liab. Litig.,*
    210 F.R.D. 61 (S.D.N.Y. 2002) ............................................................... passim

*In re Rhone-Poulenc Rorer Inc.,*
    51 F.3d 1293 (7th Cir. 1995) .......................................................................... 2

*In re Sheppard,*
    299 B.R. 753 (Bankr. E.D. Pa. 2003) ............................................................ 54

*In re St. Jude Med., Inc.,*
    425 F.3d 1116 (8th Cir. 2005) ........................................................................ 5

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ........................................................................ 47

*In re Tamoxifen Citrate Antitrust Litig.,*
    277 F. Supp. 2d 121 (E.D.N.Y. 2003) ....................................................... 74, 75

*In re Vitamins Antitrust Litig.,*
    MDL No. 1285, 2001 U.S. Dist. LEXIS 25072 (D.D.C. Mar. 13, 2001) ............................. 46

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) ................................................................................................. 50, 58

*Indep. Commc'ns Network, Inc. v. MCI Telecommc'ns Corp.,*
    657 F. Supp. 785 (D.D.C. 1987) ................................................................................................. 50

*International Union of Operating Engineers Local 68 Welfare Fund v. Merck &*
    *Co., Inc.,*
    No. ATL-L-3015-04, slip op. (N.J. Super. Ct. Law Div. July 8, 2004) ........................ passim

*Int'l Union of Operating Eng'rs Local 148 v. Ill. Dep't of Employee Sec.,*
    828 N.E.2d 1104 (Ill. 2005) ....................................................................................................... 76

*Island Mortgages v. 3M,*
    860 A.2d 1013 (N.J. Super. Ct. Law Div. 2004) ...................................................................... 42

*Kartell M.D. v. Blue Shield of Mass., Inc.,*
    749 F.2d 922 (1st Cir. 1984) ...................................................................................................... 47

*Kaye v. Dirs. Guild of Am., Inc.,*
    No. 2:99CV07883, 1999 WL 1261468 (C.D. Cal. Dec. 10, 1999) ............................................ 69

*Kelly v. Sears Roebuck & Co.,*
    720 N.E.2d 683 (Ill. App. Ct. 1999) ........................................................................................ 22

*Kidd v. Kilpatrick Chevrolet, Inc.,*
    613 So. 2d 336 (Ala. 1993) ........................................................................................................ 63

*King v. O'Rielly Motor Co.,*
    494 P.2d 718 ( Ariz. Ct. App. 1972) ......................................................................................... 64

*Kirk v. Michael Reese Hosp. & Med. Ctr.,*
    513 N.E.2d 387 (Ill. 1987) ......................................................................................................... 24

*Kramer v. Piper Aircraft Corp.,*
    520 So. 2d 37 (Fla. 1988) .......................................................................................................... 65

*Larkin v. Pfiizer, Inc.,*
    153 S.W.3d 758 (Ky. 2004) .................................................................................................. 29, 30

*In re Latex Gloves Prods. Liab. Litig.,*
    134 F. Supp. 2d 415 (E.D. Pa. 2001) ........................................................................................ 60

*Laufer v. United States Life Ins. Co.,*
    No. BER-L-9082-04, 2005 WL 1869211 (N.J. Super. Ct. Law Div. Aug. 8,
    2005) .............................................................................................................................................. 6

*Lawson v. Affirmative Equities Co., L.P.,*
    341 F. Supp. 2d 51 (D. Mass. 2004) ........................................................................................ 15

*Leon v. Rite Aid Corp.,*
    774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) ....................................................................... 43

*Lewis v. Bayer AG,*
    No. 002343, 2004 WL 1146692 (Pa. Ct. Com. Pl. Nov. 18, 2004) ..................................... 8, 54

*Lozada v. Dale Baker Oldsmobile, Inc.,*
    136 F. Supp. 2d 719 (W.D. Mich. 2001) ................................................................................. 34

*Luke v. Am. Home Prods. Corp.,*
    No. 1998-C-01977, 1998 WL 1781624 (Pa. Ct. Com. Pl. Nov. 18, 1998) ..................... 55, 70

*Macias v. HBC of Fla.,*
   694 So. 2d 88 (Fla. Dist. Ct. App. 1997) ........................................................... 20

*Makripodis v. Merrell-Dow Pharm.,*
   44 Pa. D. & C. 3d 9 (Pa. Ct. Com. Pl. 1986) ..................................................... 70

*Manheim v. Ford Motor Co.,*
   201 So. 2d 440 (Fla. 1967)................................................................................... 65

*Margulies v. Chase Manhattan Mortgage Corp.,*
   2005 WL 2923580 (N.J. Super. Ct. App. Div. Nov. 7, 2005) ........................... 5, 9

*Martin v. Hacker,*
   628 N.E.2d 1308 (N.Y. 1993)............................................................................. 53

*Mayer v. Sto Indus.,*
   98 P.3d 116 (Wash. Ct. App. 2004).................................................................. 38, 39

*McMahon v. Digital Equip. Corp.,*
   944 F. Supp. 70 (D. Mass. 1996) ........................................................................ 32

*Microsoft Corp. v. Manning,*
   914 S.W.2d 602 (Tex. App. 1995)....................................................................... 37

*Mowery v. Crittenton Hosp.,*
   400 N.W.2d 633 (Mich. Ct. App. 1986).............................................................. 34

*Murray v. Synthes (U.S.A.), Inc.,*
   No. Civ.A. 95-7796, 1999 WL 672937 (E.D. Pa. Aug. 23, 1999)....................... 70

*N.Y. Life Ins. Co. v. Head,*
   234 U.S. 149 (1914)............................................................................................... 8

*Nataros v. Fine Arts Gallery of Scottsdale, Inc.,*
   612 P.2d 500 (Ariz. Ct. App. 1980).................................................................. 17, 18

*Nicholson v. Clark,*
   802 S.W.2d 934 (Ky. Ct. App. 1990) ................................................................. 29

*Niemiera v. Schneider,*
   555 A.2d 1112 (N.J. 1989)................................................................................... 43

*Ocean Ritz of Daytona Condo. v. GGV Assocs.,*
   710 So. 2d 702 (Fla. Dist. Ct. App. 1998) ......................................................... 64

*Ortho Pharm. Corp. v. Chapman,*
   388 N.E.2d 541 (Ind. Ct. App. 1979).................................................................. 27

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
   647 N.E.2d 741 (N.Y. 1995)................................................................................ 52

*Panda Capital Corp. v. Kopo Int'l, Inc.,*
   242 A.D.2d 690 (N.Y. App. Div. 1997) ........................................................... 60, 61

*Paquette v. Deere & Co.,*
   719 A.2d 410 (Vt. 1998)...................................................................................... 36

*Parkinson v. Guidant Corp.,*
   315 F. Supp. 2d 741 (W.D. Pa. 2004).............................................................. 69, 70

*Patel v. Holiday Hospitality Franchising, Inc.,*
   172 F. Supp. 2d 821 (N.D. Tex. 2001) ............................................................. 14, 15

*Peabody v. P.J.'s Auto Village, Inc.,*
  569 A.2d 460 (Vt. 1989) ................................................................. 9, 13, 36

*Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.,*
  85 F. Supp. 2d 519 (W.D. Pa. 2000) ................................................. 54

*Peery v. Hansen,*
  585 P.2d 574 (Ariz. Ct. App. 1978) ............................................... 17, 18

*Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc., No. 05-075-SLR, slip*
  op. at 5 (D. Del. Nov. 8, 2005) ........................................................ 31

*Perez v. Wyeth Labs.,*
  734 A.2d 1245 (N.J. 1999) ............................................................ 43, 44

*Perona v. Volkswagen of Am., Inc.,*
  684 N.E.2d 859 (Ill. App. Ct. 1997) ................................................. 61

*Perry v. Gulf Stream Coach, Inc.,*
  814 N.E.2d 634 (Ind. Ct. App. 2004) ............................................... 27

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ....................................................................... 5, 9

*Phoenix v. W. Publishing Co.,*
  712 P.2d 944 (Ariz. Ct. App. 1985) ............................................... 63, 64

*Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc.,*
  No. MID-L-857-02, slip op. (N.J. Super. Ct. Law Div. Feb. 14, 2003) ............... 57

*Pope v. Indep. Order of Foresters,*
  Civil Action No. 3:01CV0626-S, 2002 WL 1733606 (W.D. Ky. July 23,
  2002) ......................................................................................... 30

*Pritchard v. Liggett & Myers Tobacco Co.,*
  295 F.2d 292 (3d Cir. 1961)............................................................ 73

*Randy Knitwear, Inc. v. Am. Cyanamid Co.,*
  181 N.E.2d 399 (N.Y. 1962)............................................................ 67

*Ratliff v. Merck SC Co., Inc.,*
  359 F. Supp. 2d 571 (E.D. Ky. 2005) ............................................... 30

*Richards v. Powercraft Homes, Inc.,*
  678 P.2d 427 (Ariz. 1984).............................................................. 63

*Rini v. United Van Lines,*
  903 F. Supp. 224 (D. Mass. 1995) ................................................... 32

*Rivera v. Wyeth-Ayerst Labs.,*
  283 F.3d 315 (5th Cir. 2002) .......................................................... 13

*Rivers v. Am. Home Prods. Corp.,*
  No. 342-160538-95 (Order dated Apr. 9, 1998) ................................ 19

*Rothe v. Maloney Cadillac, Inc.,*
  518 N.E.2d 1208 (Ill. 1988)............................................................ 66

*Sanders v. Lincoln Service Corp.,*
  No. 91 C 4542, 1993 U.S. Dist. LEXIS 4454  (N.D. Ill. April 5, 1993) ............... 26

*Serv. Employees Int'l. Union Health & Welfare Fund v. Abbott Labs.,*
  No. C 04-4203 CW, 2005 WL 528323, at *2-3 (N.D. Cal. Mar. 2, 2005) ........... 50

*Shannon v. Boise Cascade Corp.*,
805 N.E.2d 213 (Ill. 2004) ................................................................................ 24

*Sherman v. First Am. Title Ins. Co.*,
38 P.3d 1229 (Ariz. Ct. App. 2002) .................................................................. 63

*Sherwin-Williams Co. v. Spitzer*,
Civil No. 1:04-CV-185 (DNH/RFT), 2005 U.S. Dist. LEXIS 18700 (N.D.N.Y.
Aug. 24, 2005) ...................................................................................................... 76

*Smith v. Prime Cable of Chi.*,
658 N.E.2d 1325 (Ill. App. Ct. 1995) ........................................................ 22, 23

*Soule v. Norton*,
299 A.D.2d 827 (N.Y. App. Div. 2002) ........................................................... 67

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ............................................................................................. 9

*Stone v. Smith Kline & French Labs.*,
447 So. 2d 1301 (Ala. 1984) ............................................................................. 49

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........................................................................................... 14

*Swindell v. Crowson*,
712 So. 2d 1162 (Fla. Dist. Ct. App. 1998) .................................................... 20

*Szajna v. Gen. Motors Corp.*,
503 N.E.2d 760 (Ill. 1986) ................................................................................ 66

*T.W.M. v. Am. Med. Sys. Inc.*,
886 F. Supp. 842 (N.D. Fla. 1995) ................................................................... 64

*Terhune v. A. H. Robins Co.*,
577 P.2d 975 (Wash. 1978) ............................................................................... 39

*Thiedemann v. Mercedes-Benz USA, LLC*,
872 A.2d 783 (N.J. 2005) ................................................................................... 41

*Tracker Marine v. Ogle*,
108 S.W.3d 349 (Tex. App. 2003) ...................................................................... 7

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
517 U.S. 544 (1996) ..................................................................................... 75, 76

*Veazey v. Doremus*,
510 A.2d 1187 (N.J. 1986) ................................................................................... 6

*Verb v. Motorola, Inc.*,
672 N.E.2d 1287 (Ill. App. Ct. 1996) ........................................................ 22, 23

*Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.*,
901 So. 2d 84 (Ala. 2004) ........................................................................... 62, 63

*Weinberg v. Sun Co.*,
777 A.2d 442 (Pa. 2001) .................................................................................... 54

*Wellcraft Marine v. Zarzour*,
577 So. 2d 414 (Ala. 1990) ............................................................................... 63

*Williams v. Purdue Pharma Co.*,
297 F. Supp. 2d 171 (D.D.C. 2003) ................................................................. 12

*Zwiercan v. Gen. Motors Corp.,*
   58 Pa. D. & C. 4th 251 (Pa. Ct. Com. Pl. 2002) ...................................................... 55

## STATUTES

73 Pa. Stat. § 201-1 ............................................................................................................ 53

73 Pa. Stat. § 201-9.2 ......................................................................................................... 56

815 Ill. Comp. Stat. § 505/10b ......................................................................................... 25

815 Ill. Comp. Stat. § 505/10a ......................................................................................... 22

Ala. Code § 7-2-103 ........................................................................................................... 63

Ala. Code § 7-2-318 ........................................................................................................... 63

Ala. Code § 8-19-10 ...................................................................................................... 45, 47

Ala. Code § 8-19-3 ............................................................................................................. 46

Ariz. Rev. Stat. § 44-1522 ................................................................................................. 16

D.C. Code § 28-3901 .......................................................................................................... 49

Del. Code Ann. tit. 6, § 2513 ............................................................................................ 31

Fla. Stat. § 501.204 ............................................................................................................ 20

Fla. Stat. § 672.318 ...................................................................................................... 64, 65

Ind. Code § 24-5-0.5-2 ...................................................................................................... 51

Ind. Code § 24-5-0.5-4 .................................................................................................. 26, 27

Ky. Rev. Stat. Ann. § 367.220 .......................................................................................... 28

Mass Gen. Laws ch. 93A, § 3 ........................................................................................... 31

Mass. Gen. Laws ch. 93A, § 9 .......................................................................................... 32

Mich. Comp. Laws Ann. § 445.911 .................................................................................. 34

Mich. Comp. Laws Ann. § 600.2945 ........................................................................... 33, 34

Mich. Comp. Laws Ann. § 600.2946 ........................................................................... 33, 70

N.J. Stat. Ann. § 12A-2-607 ............................................................................................. 73

N.J. Stat. Ann. § 2A:58C-4 ............................................................................................... 43

N.Y. Gen. Bus. Law § 349 ................................................................................................. 52

U.C.C. § 2-106 .................................................................................................................... 68

U.C.C. § 2-401 .................................................................................................................... 68

U.C.C. § 2-607 ........................................................................................................ 59, 60, 61

Vt. Stat. Ann. tit. 9, § 2461 ............................................................................................... 35

## OTHER

16 Am. Jur. 2d Conflict of Laws § 9 (1998 & Supp. 2003) ............................................... 8

151 Cong. Rec. S1166 (daily ed. Feb. 9, 2005) ............................................................... 10

151 Cong. Rec. S1184 (daily ed. Feb. 9, 2005) ............................................................... 10

Restatement (Second) of Torts § 402A ....................................................................... 36, 69

THE CLASS ACTION FAIRNESS ACT of 2005,
S. Rep. No. 109-14, at 24 .................................................................................................. 10

White & Summers, *Handbook of the Law Under the Uniform Commercial Code*,
§ 9-6 (1972) ........................................................................................................... 72

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX ) | MDL NO. 1657 |
| ) | |
| PRODUCTS LIABILITY LITIGATION ) | SECTION: L |
| ) | |
| ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ) | |
| ALL PURCHASE CLAIMS CLASS ) | JURY TRIAL DEMANDED |
| ACTION COMPLAINTS PENDING OR ) | |
| SUBJECT TO TRANSFER TO ) | |
| MDL 1657 ) | |
| ) | |
| ) | |

## REPLY MEMORANDUM IN SUPPORT OF MERCK'S MOTION TO DISMISS PLAINTIFFS' PURCHASE CLAIMS MASTER CLASS ACTION COMPLAINT

Plaintiffs' Response In Opposition To Merck & Co., Inc.'s Motion To Dismiss Plaintiffs' Purchase Claims Master Class Action Complaint (Pls.' Resp.) tries to oversimplify the necessary inquiry into the validity of plaintiffs' claims by arguing that all should be analyzed under New Jersey law. As set forth below, however, a proper choice-of-law inquiry yields precisely the opposite result. The sufficiency of each plaintiff's consumer fraud, warranty and unjust enrichment claims must be tested under the law of that plaintiff's home state, and plaintiffs' claims fail under this panoply of laws for numerous, independent reasons. Moreover, even if the Court did apply New Jersey law universally to plaintiffs' claims – an approach that would be contrary to a long line of precedent and would raise constitutional concerns – the result would, in

any event, be the same, because plaintiffs' claims fail under New Jersey law too.  For all of these reasons, plaintiffs' claims should be dismissed.

## ARGUMENT

### I.   APPLICATION OF NEW JERSEY LAW TO THE CLAIMS OF PLAINTIFFS THROUGHOUT THE COUNTRY WOULD BE CONTRARY TO WELL ESTABLISHED LAW AND SOUND POLICY.

As Merck set forth in its opening brief, the threshold question in analyzing a motion to dismiss is deciding which states' laws govern the named plaintiffs' claims.  Plaintiffs seek to avoid such a choice-of-law analysis by arguing that it is premature.  Then they argue that even if the Court conducted such an analysis, both New Jersey choice-of-law rules and New Jersey substantive law govern the claims of the proposed nationwide class – and the sufficiency of all their claims should thus be determined under New Jersey law.   These arguments are wrong; indeed, they are disingenuous.

### A.   Plaintiffs' Claims Cannot Be Evaluated Absent A Determination Of Which State's Law Governs Each Named Plaintiff's Claims.

Plaintiffs' first contention – that Merck is attempting to "accelerate" the choice-of-law decision by addressing it at the motion to dismiss stage of the litigation (Pls.' Resp. at 8) – should be rejected out of hand.  To decide Merck's motion to dismiss, the Court must first determine which state's law governs each named plaintiff's claim.  Otherwise, Rule 12(b)(6) would become a meaningless exercise, with courts measuring plaintiffs' claims against some hypothetical "Esperanto" law, rather than against the properly governing standard of each individual state.  *See In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995).

The only support plaintiffs muster for their prematurity argument are some class certification decisions in which the courts analyzed state law conflicts and choice of law in the course of a class certification decision.  (*See* Pls.' Resp. at 8-9.)  However, none of these

decisions suggests that class certification is the *first* milestone at which such an analysis may be conducted. In fact, courts regularly undertake choice-of-law analyses in class action cases where necessary to resolve a motion to dismiss. *See, e.g., In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001), *class cert. rev'd*, 288 F.3d 1012 (7th Cir. 2002) (on motion to dismiss Master Complaint, "we must first determine the appropriate law to apply to each of Plaintiffs' claims") (Pls.' Resp. at 9 n.4); *Cunningham v. PFL Life Ins. Co.*, No. C 98-67 MJM, 1999 WL 33656879, at *5 (N.D. Iowa Aug. 25, 1999) (in decision denying class certification, noting court's previous choice-of-law analysis in ruling on motion to dismiss); *Davis v. Suran*, No. 98 C 656, 1998 WL 378420, at *2 (N.D. Ill. July 1, 1998) (on motion to dismiss, addressing "threshold legal issue" of which state law applied to purported class action). Accordingly, plaintiffs' suggestion that the Court must defer any choice-of-law analysis would make it impossible for the Court to resolve Merck's motion to dismiss and should be rejected.

**B.    A Proper Choice-Of-Law Analysis Does Not Permit Unitary Application Of New Jersey Substantive Law To All Plaintiffs.**

Plaintiffs' second argument – that the Court should simply apply New Jersey's choice-of-law rule to all plaintiffs and that the New Jersey rule requires application of New Jersey substantive law to all the claims in this litigation – is similarly contrary to an overwhelming body of well established law.[1] Not only is the law clear that an MDL court should apply the choice-of-law rules of each transferor forum, but even if New Jersey's choice-of-law rules did apply to

---

[1]    In making this argument, plaintiffs do not address any of the relevant states' choice-of-law approaches with the exception of New Jersey, and do not address any of plaintiffs' claims other than consumer fraud. Thus, assuming the Court recognizes the misguided nature of plaintiffs' "New Jersey or bust" approach to choice of law, Merck's remaining arguments – as to the named plaintiffs who filed suit outside of New Jersey and as to the implied warranty and unjust enrichment claims – stand unrebutted, and plaintiffs have effectively conceded that their claims must be evaluated under the laws of their home states.

3

all the named plaintiffs' claims, a proper ***choice-of-law*** analysis under New Jersey law would require the Court to apply the ***substantive*** law of each named plaintiff's home state.

**1.    Each Named Plaintiff's Claim Is Governed By The Choice-Of-Law Rules That Would Have Applied In The Transferor Court.**

Plaintiffs argue that New Jersey choice-of-law principles govern the entire Master Complaint, regardless of where each constituent action was initially filed.  They start from the correct premise, acknowledging that the Court must apply the choice-of-law rules that would have governed in the transferor courts – *i.e.*, the states in which the named plaintiffs initially filed their lawsuits.  (Pls.' Resp. at 10.)  But then they veer wildly off-course, inexplicably suggesting that because ***one*** of the named plaintiffs' complaints (that of Christie Anderson) was first filed in the District of New Jersey, that complaint "could be utilized as the operative complaint for purposes of the class certification motion" and "the choice of law provision of the State of New Jersey could properly be applied to the claims asserted therein." (*Id.*)

Plaintiffs offer no explanation why just one of the 27 named plaintiffs' complaints should provide the choice-of-law rules for all of the other cases initially filed elsewhere. Unsurprisingly, they also cite no authority for this novel approach.[2]  As Merck explained in its opening brief, each plaintiff's claims are governed by the choice-of-law rules of the transferor jurisdiction, and a separate choice-of-law analysis must be conducted for each named plaintiff in accordance with those different approaches.  *See, e.g.*, *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 422 (E.D. La. 1997) (rejecting plaintiffs' attempt to apply

---

[2]      This Court's *Propulsid* decision does not support plaintiffs' proposed approach.  In *Propulsid*, the only named plaintiff whose claims were at issue filed her action in Indiana; accordingly, this Court applied Indiana choice-of-law rules.  *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141-42 (E.D. La. 2002).  Neither that case nor any other stands for the proposition that when many complaints have been consolidated into a master complaint, plaintiffs may import the choice-of-law principles applicable to a single complaint to all of the named plaintiffs' claims.

choice-of-law rules of the state of defendant's principal place of business; "when a case is transferred, it is well-known that the transferee court . . . must apply the choice of law rule of the transferor court"). Accordingly, a proper choice-of-law analysis must be conducted for each named plaintiff under the principles that would have governed each action in its transferor court. *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (to determine the law applicable to state-law claims asserted by members of a putative nationwide class, "an individualized choice-of-law analysis must be applied to each plaintiff's claim" (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822-23 (1985)).

> **2.     A Proper Analysis Of New Jersey's Choice-Of-Law Rules Would Require The Court To Apply The Substantive Laws Of Each Named Plaintiff's Home State.**

Plaintiffs are not only wrong in arguing that the Court should apply New Jersey's choice-of-law rules across the board; they are also wrong in arguing that application of those rules would require the Court to apply New Jersey substantive law to all plaintiffs' claims.

The entirety of plaintiffs' argument for application of New Jersey law is based on Judge Higbee's decision in *International Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co., Inc.* ("*Engineers*"), No. ATL-L-3015-03 slip op. (N.J. Super. Ct. Law Div. July 29, 2005) (attached as Ex. 1 to Merck's opening memorandum ("Merck Mem."), currently on appeal to the Appellate Division,[3] in which the trial court concluded that the New Jersey Consumer Fraud Act ("NJCFA") could be applied to a nationwide class of third-party payors.

However, the *Engineers* decision is contrary to the overwhelming weight of authority both in New Jersey and elsewhere (including an appellate decision in New Jersey that was

---

[3]     As plaintiffs themselves concede, the Appellate Division recently granted Merck's motion for interlocutory review of the *Engineers* decision.

decided after *Engineers*) that the NJCFA **cannot** be used to facilitate nationwide class certification by applying it to consumer fraud claims arising from transactions in other states.  In *Margulies v. Chase Manhattan Mortgage Corp.*, 2005 WL 2923580 (N.J. Super. Ct. App. Div. Nov. 7, 2005), the court refused to apply New Jersey law in a case where the plaintiff resided in Maryland and the transaction occurred there, even though the defendant was headquartered in New Jersey.  *Id.* at *8.  States enact consumer fraud laws, the court reasoned, to "protect the rights of consumers within [those] state[s].  Thus, application of Maryland law, which would advance the primary purpose of that law to protect its residents, would be in furtherance of Maryland's policy and would not frustrate the policy underlying New Jersey's law."  *Id.*  In so holding, the court rejected the notion that New Jersey has the greater interest if the allegedly wrongful conduct emanated from the defendant's headquarters in the state.  *Id.*  Other courts have done the same.  *See also Laufer v. United States Life Ins. Co.*, No. BER-L-9082-04, 2005 WL 1869211, at *9 (N.J. Super. Ct. Law Div. Aug. 8, 2005); *Fink v. Ricoh Corp.*, 839 A2d 942, 988 (N.J. Super. Ct. Law Div. 2003); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 326-27 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002) ("*Rezulin I*").  As one court colorfully put the point very recently, "New Jersey has not elected to be the litigation capital for all consumer disputes with New Jersey-located companies throughout the United States."  *Laufer*, 2005 WL 1869211, at *7.

New Jersey applies the "governmental-interest" choice-of-law test, which "seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation."  *Fu v. Fu*, 733 A.2d 113, 1138 (N.J. 1999); *accord Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986).  The New Jersey court's governmental interest analysis went astray in

*Engineers* because the Court assumed that New Jersey had the strongest consumer fraud laws and that consequently, no other state could have a stronger interest in enforcing its laws than New Jersey's. In the court's words: "If plaintiffs from other states are better protected by New Jersey state law from [a] New Jersey defendant's fraudulent conduct, why would plaintiff's home state want to deprive them of that protection?" *Engineers*, slip. op. at 64.

As other courts have recognized in rejecting approaches like that taken by the *Engineers* court, however, states with less stringent statutes do not have weaker interests with respect to such statutes; rather, what they have are ***different*** interests, which are entitled to ***at least equal*** respect. This principle is widely recognized. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002). As one court put it: "It is hard to see how the interests of each state could be met any better than by allowing each to apply its own laws." *Tracker Marine v. Ogle*, 108 S.W.3d 349, 358 (Tex. App. 2003) (footnotes omitted).

It is for this precise reason that other courts have specifically rejected efforts to apply New Jersey's consumer protection law to drug sales in other states by New Jersey pharmaceutical companies. *See, e.g., In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 2005 U.S. Dist. LEXIS 21571, at *37 (S.D.N.Y. Sept. 29, 2005); *Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 378 (D.N.J. 2004); *Rezulin I*, 210 F.R.D. 61, 70-71. As the court in *Rezulin I* explained in rejecting an effort – similar to the one here – to apply the NJCFA to a nationwide class of drug-purchase claims:

> Competing against New Jersey's interest is that of every other state in ensuring that its own citizens are compensated for their injuries, that the standards it[] sets for product sales within its borders are complied with and that the rules it establishes to govern physician and pharmacist conduct are upheld. These interests simply are not outweighed by New Jersey's interest in regulating the conduct of its pharmaceutical companies.

210 F.R.D. at 70-71.

7

Plaintiffs' proposed choice-of-law approach also raises constitutional concerns because the "constitutional limitations on choice of law" – embodied in the Due Process, Commerce, and Full Faith and Credit Clauses of the federal Constitution – restrict New Jersey's legitimate interest in regulating the conduct of New Jersey companies beyond New Jersey's borders. *Phillips Petroleum*, 472 U.S. at 816. As Merck explained in its opening brief, "[i]t is a firmly established principle of American jurisprudence that the law, statutory or otherwise . . . of one state has no extraterritorial effect in another state." 16 Am. Jur. 2d Conflict of Laws § 9 (1998 & Supp. 2003); *accord State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572-73 (1996); *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914). Endorsement of the approach urged by plaintiffs would "afford[] [New Jersey] law an extraterritorial scope neither contemplated by the [New Jersey] Legislature in enacting our choice of law rules nor contemplated by our founding fathers in creating our Federal form of national government." *Lewis v. Bayer AG*, No. 002343, 2004 WL 1146692, at *13 (Pa. Ct. Com. Pl. Nov. 18, 2004).

Contrary to plaintiffs' suggestion (Pls.' Resp. at 13), Merck has not argued that as a matter of constitutional law, the law of the place of the injury must always be chosen. However, neither is it true that the mere fact of Merck's residence in New Jersey gives the state a broad license to regulate its conduct in all other states, even where the application of "strong" New Jersey law to such conduct would directly undermine another state's policy efforts "to encourage business and other commercial transactions to take place within that particular state's borders." *Engineers*, slip op. at 32-33. New Jersey cannot override another state's conflicting policy choice as to how conduct within that state's borders should be regulated – even conduct by a company headquartered in New Jersey – because it is a "basic principle of federalism" that "each

State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm*, 538 U.S. at 422.[4]

In *Shutts*, the Supreme Court recognized this principle as a "constitutional limitation[] on choice of law," 472 U.S. at 816, which precluded a Kansas court from applying Kansas law to class members' claims against a Kansas defendant, where the conduct at issue occurred primarily outside the state. *Id.* at 819. The fact that the defendant "own[ed] property and conduct[ed] substantial business in the State" meant that "Kansas certainly ha[d] an interest in regulating [the defendant's] conduct *in Kansas*," the court acknowledged, *id.* (emphasis added), but it did *not* suffice to give the Kansas court authority to apply Kansas law to the defendant's out-of-state conduct, at least insofar as Kansas law reflected different policy choices from the state laws that would otherwise govern the conduct. *Id.* at 821-22. So it is here: the mere fact that Merck is located in New Jersey does not give New Jersey a legitimate interest in overriding the policy choices of all the states where Merck chooses to sell its products.

Plaintiffs argue that "[i]t cannot be said that either the class members or Merck would be unfairly surprised by the application of . . . New Jersey law." (Pls.' Resp. at 14.) In reality, however, it is ludicrous to suggest that a consumer in Illinois or Washington or Michigan reasonably expects that any claim arising out of his or her purchase of a prescription drug will result in application of the law of New Jersey. *See Margulies*, 2005 WL 2923580, at *8 ("Parties entering into a transaction in Maryland affecting Maryland real estate would naturally expect

---

[4]     For all the reasons explained in the text, New Jersey cannot impose its will on other states even if it is true that New Jersey has the strongest consumer fraud statute. It bears emphasis, however, that even this basic premise of the *Engineers* court's ruling is demonstrably incorrect. For example, whereas New Jersey requires all private plaintiffs to establish a causal link between a misrepresentation and their claimed harm, Massachusetts, Vermont and the District of Columbia allow private plaintiffs to recover statutory damages even in the absence of causation and injury. *See Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004); *Peabody v. P.J.'s Auto Village, Inc.*, 569 A.2d 460, 463 (Vt. 1989); D.C. Code § 28-3905(k)(1). These policy differences have direct consequences for the due process rights of class members from these states: even though they would not be required to prove causation to receive statutory damages under their own states' laws, if forced to proceed under New Jersey law they would be required to prove causation to receive any recovery at all.

Maryland law to apply.  This is particularly so where one party is a Maryland resident and the other is licensed to transact that kind of business in Maryland (although incorporated and headquartered in a different state.")  Plaintiffs' unsupported suggestion to the contrary is off-base.

Finally, plaintiffs' argument that passage of the Class Action Fairness Act ("CAFA") somehow requires application of a single state's law to a nationwide class is entirely without merit.  To the contrary, one of the reasons Congress enacted CAFA was to put an end to the practice whereby state courts (such as the *Engineers* court) impose their laws on citizens all over the country.  *See* THE CLASS ACTION FAIRNESS ACT OF 2005, S. Rep. No. 109-14, at 24 ("The effect of class action abuses in state courts is being exacerbated by the trend toward 'nationwide' class actions, which invite one state court to dictate to 49 others what their laws should be on a particular issue, thereby undermining basic federalism principles.").  And Congress specifically rejected an amendment to CAFA that would have required courts to engage in the same error proposed by plaintiffs.  *See* 151 CONG. REC. S1166, S1184 (daily ed. Feb. 9, 2005) (rejecting on a 38-61 vote Senate Amendment 4 "to clarify the application of State law in certain class actions" presented by Sens. Feinstein and Bingaman).

*          *          *

In short, plaintiffs' choice-of-law analysis ignores most of the states whose choice-of-law rules the Court is required to address and most of their causes of action.  Moreover, the only choice-of-law analysis they do undertake – for the New Jersey plaintiffs' consumer fraud claims – relies exclusively on a wrongly decided trial court decision.  As set forth in Merck's opening brief, every state's choice-of-law rules point this Court back to the substantive law of the

plaintiffs' states of residence.   Accordingly, the Court should analyze the sufficiency of plaintiffs' claims under the laws of their home states.

## II.   PLAINTIFFS CANNOT EVADE THE NEARLY UNIVERSAL PRINCIPLE THAT ABSENT INJURY, THEY HAVE NO CLAIMS AGAINST MERCK.

In arguing that they have asserted cognizable injuries under various states' consumer fraud, warranty and unjust enrichment laws, plaintiffs do not deny that "[n]o injury, no tort, is an ingredient of every state's law." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002).   Rather, plaintiffs contend that dismissal is unwarranted because their claims are based on supposed "economic injuries." (Pls.' Resp. at 27.)   Like the plaintiffs whose claims have been repeatedly dismissed in similar cases, plaintiffs in this case hope that, because "the instant case is not a product liability case" (*id.*), pleading a hypothetical economic injury will suffice.   It does not.

Courts in this Circuit and many others have consistently rejected no-injury claims.   They have specifically done so with respect to allegedly defective drugs, and as plaintiffs point out, the doctrine is applied in a variety of other contexts as well. (Pls.' Resp. at 30-31.)   Whatever the context, these courts have held that plaintiffs who receive the expected benefits of the products they purchase without adverse side-effects do not assert an injury merely because they might have been injured (but were not), or because other parties were injured.   Any "economic injury" is imagined, particularly where plaintiffs do not plead that the product did not perform as expected.   Nowhere in 324 paragraphs of the master complaint do plaintiffs contend that Vioxx did not relieve pain while reducing the risk of gastrointestinal side-effects or that they suffered any specific physical injury *to themselves* that resulted from taking Vioxx.   Hence, they allege no injury.

Plaintiffs argue that the no-injury doctrine is inapposite because "the instant case is not a product liability case." (Pls.' Resp. at 27.)  Such protestations, however, are the hallmark of no-injury claims.  *See, e.g., Bridgestone/Firestone*, 288 F.3d at 1016-17 ("'Ah, but this is not a products-liability case!'  So plaintiffs respond to the conspicuous lack of support from state decisions. . . .  If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation."); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) (recognizing that "this is *not* a product liability suit" and holding that "[w]ithout alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs").  Carefully chosen labels simply do not alter the requirement that plaintiffs plead a *cognizable* injury.[5]

Plaintiffs argue vehemently that they have suffered an injury in the form of the difference between the price of Vioxx and the price of other NSAIDs, and not the difference between the price they paid for Vioxx and what they should have paid.  (Pls.' Resp. at 33.)  Their complaint indicates otherwise, however, repeatedly alleging that Merck's conduct permitted it to sell Vioxx at an "inflated price" (Purchase Claims Master Class Action Compl. ("Purchase Claims Compl.") ¶¶ 12, 34-36), that they "paid more than they would have or should have" (*id.* ¶ 176), or that they "would not have authorized the purchase of, or payment for Vioxx, on the terms that they did" (*id.* ¶ 207), had they known the alleged risks.  (*See also* Pls.' Resp. at 28-29 (defendant's conduct caused plaintiffs "to overpay" for Vioxx).)   Plaintiffs' attempts to rewrite their complaint aside,

---

[5]     Plaintiffs attempt to avoid case law prohibiting "fraud on the market" cases by arguing that their claim is different because they allege that "there was another product [they] could and would have bought." (Pl. Resp. at 34.)  But courts have rejected "fraud on the market" theories of recovery on this very basis.  *See, e.g., Williams*, 297 F. Supp. 2d at 176 (rejecting theory of fraud on the market *and* claim that plaintiffs could have purchased generics because plaintiffs did "not allege that OxyContin failed to provide them effective pain relief or that they suffered any adverse consequences from their use of OxyContin").

they are asserting a distinction without a difference.  Whether plaintiffs allege that they paid too much for Vioxx or that they would not have purchased Vioxx at all has no bearing on whether they have alleged injury.  The fact remains that plaintiffs' claim, however they choose to phrase it, is precisely the kind that has been rejected repeatedly in the cases relied upon by Merck in its motion to dismiss.

Plaintiffs' attempt to distinguish well established Fifth Circuit law that plaintiffs – like these – cannot even establish injury for the purposes of *standing* is similarly unavailing.  *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (rejecting claims of plaintiffs who used a drug and suffered no personal physical injury but who argued their alleged "loss of cash is an 'economic injury'").  Plaintiffs try to distinguish *Rivera* based on trivial factual differences; according to their brief, "Plaintiffs here [unlike those in *Rivera*] have defined the economic injury they allege – overpayment in the amount of the difference between the price paid for Vioxx and the price of comparable, cheaper NSAIDs."  (Pls.' Resp. at 33.)  But this injury is the same as that alleged in *Rivera*.  As the Fifth Circuit noted, the thrust of the *Rivera* plaintiffs' claim was that Duract was not the drug they thought it would be, precisely because of the real injuries it allegedly caused to other parties.  283 F.3d at 320 ("The plaintiffs' most plausible argument . . . is their claim they were denied 'the benefit of the bargain' due to them under general, contract law type principles.").  The Fifth Circuit held that plaintiffs' necessary causal theory that additional drug warnings would ultimately have led consumers to purchase different drugs was "too speculative to establish Article III standing." *Id.* at 321.  *Rivera*'s logic binds this Court to reject plaintiffs' economic-loss theory of injury, and for this reason alone, the Court should dismiss their claims.[6]

---

[6]     As Merck noted in its opening brief, the only claims that arguably can survive with no demonstration of actual injury are the consumer protection act claims of plaintiffs from Massachusetts, Vermont and the District of

### III.   **PLAINTIFFS' CONSUMER FRAUD CLAIMS SHOULD BE DISMISSED.**

#### A.   **Plaintiffs' Consumer Fraud Claims Fail To Meet The Heightened Pleading Requirements Of Rule 9(b).**

As Merck explained in its opening brief, plaintiffs' consumer fraud claims fail to satisfy the heightened pleading requirements of Rule 9(b) because they do not adequately allege "the who, what, when, where, and how" of the alleged fraud.   (Merck Mem. at 25 (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).)   Plaintiffs seek to evade Rule 9(b) by arguing that it does not apply to statutory fraud claims and that even if it did, they satisfy its requirements. (Pls.' Resp. at 20-21.)   Plaintiffs' arguments are unavailing for multiple reasons.

First, it is well-established that consumer fraud claims of the type asserted here are subject to the heightened pleading requirements of Rule 9(b).   *See, e.g., In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) ("The pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes."); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the [Texas Deceptive Trade Practice Act] are subject to the requirements of Rule 9(b).").   The cases plaintiffs cite do not hold to the contrary.   For example, while plaintiffs claim that *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) stands for the proposition that consumer fraud claims are subject to the "simplified" pleading standards of Rule 8(a) (Pls.' Resp. at 17), the holding in *Swierkiewicz* cannot reasonably be read to support plaintiffs' broad assertion.   In fact, *Swierkiewicz* merely affirms the proposition that particularized pleading is required "in all averments of fraud or mistake," while refusing to extend the rule to other

---

Columbia.   *See Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004); *Peabody v. P.J.'s Auto Village, Inc.*, 569 A.2d 460, 463 (Vt. 1989); D.C. Code § 28-3905(k)(1).   Those claims, however, must be dismissed on numerous other grounds.

contexts such as employment discrimination actions.  534 U.S. at 513.  Plaintiffs' claims under the New Jersey Consumer *Fraud* Act, and other similar state laws, are grounded in allegations of fraud, and therefore are subject to the Rule 9(b) pleading requirement applicable to "all averments of fraud."

Plaintiffs' reliance on *GE Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) (Pls.' Resp. at 18), is similarly misplaced.  Plaintiffs seek to persuade this Court that *Posey* stands for the broad proposition that "even if state statutes prohibiting 'unfair and deceptive acts' were to sound in fraud, only claims for 'actual fraud' need satisfy Rule 9(b)'s pleading requirement." (Pls.' Resp. at 19.)  Once again, however, plaintiffs read much more into *Posey* than the case itself holds, since *Posey*, like *Swierkiewicz*, did not involve allegations of fraud – statutory or otherwise.  To the contrary, plaintiff in *Posey* asserted only a negligent misrepresentation claim, which does not sound in fraud.  415 F.3d at 394 (5th Cir. 2005) ("The district court properly dispensed with the rule 9(b) argument, concluding that GECC had not alleged any fraud claims and thus was not subject to the heightened pleading requirements of rule 9(b).").[7]

Second, plaintiffs half-heartedly contend that their claims meet the requirement of Rule 9(b) as pled, asserting that Merck has ignored the "detailed factual allegations of the Master Complaint which are incorporated by reference."  (Pls.' Resp. at 20.)  This argument too fails. Under Rule 9(b), at a minimum, each named plaintiff must allege with specificity "the who, what, when, where, and how" of the *fraud* that he or she allegedly experienced.  *Benchmark*

---

[7]        Plaintiffs' reliance on *Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51 (D. Mass. 2004) (Pls.' Resp. at 18) is unavailing as well.  *Lawson* involved an agreement of guaranty for a letter of credit intended to finance the renovation of a hotel.  *Id.* at 54.  Like plaintiffs, that court misread *Swierkiewicz*.  Moreover, district courts in the Fifth Circuit have concluded that, in cases such as this where fraud allegations are actually at issue, Rule 9(b)'s heightened pleading standards must be met.  *See, e.g., Patel v. Holiday Hospitality Franchising*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("plaintiffs' DTPA allegations are insufficient under Rule 9(b)'s heightened pleading requirements"); *Ergonomic Lighting Sys. v. Commercial Petroleum Equip./USALCO*, Civ. Action No. SA-02-CA-0031RF (NN), 2003 U.S. Dist. LEXIS 19118, at *17 (W.D. Tex. Oct. 21, 2003) ("The case law clearly mandates that a plaintiff seeking to impose liability under the DTPA must plead the DTPA claim with the same specificity required under Federal Rule of Civil Procedure 9(b).").

*Elecs.*, 343 F.3d at 724.   Nowhere in the Master Complaint do plaintiffs plead with any specificity the allegations of fraud as to each named plaintiff, or as to each state-specific consumer fraud statute – and the general allegations contained in the Master Complaint simply do not suffice.   *See In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) ("Each state's [consumer fraud] statute is unique and plaintiffs are required to plead the essential elements of each one.").[8]

In sum, plaintiffs are unable to refute Merck's arguments that their consumer fraud claims fail to meet the heightened pleading requirements of Rule 9(b) and, therefore, all their consumer fraud claims must be dismissed on this ground alone.

**B.      The Consumer Plaintiffs' Consumer Fraud Claims Fail For Numerous Additional Reasons.**

The consumer plaintiffs mount numerous arguments in an effort to sustain their consumer fraud claims, all of which are unavailing.   Among these arguments, plaintiffs claim that:  (1) they assert cognizable injuries; (2) their causation claims are not barred by the learned intermediary doctrine; and (3) various state-specific statutory requirements do not apply to their claims.   As discussed below, all these arguments fail.

---

[8]      Plaintiffs' reliance on Judge Higbee's ruling in *International Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co., Inc.*, No. ATL-L-3015-04, slip op. (N.J. Super. Ct. Law Div. July 8, 2004) denying a motion to dismiss (Pls.' Resp. at 21) is also unpersuasive.  In that case, Judge Higbee specifically noted that the New Jersey state pleading standard requires that in allegations of misrepresentation and fraud, particulars "shall be stated insofar as practicable." *Int'l Union of Operating Eng'rs.*, slip op. at 3 (citing N.J. Rule 4:5-8(a)).  In concluding that the complaint alleged fraud with specific particularity, Judge Higbee indicated that "[t]he Federal Rules and the New Jersey Rules on pleading of fraud are similar but the State Rule addresses practicality." *Id.* at 4.  Accordingly, Judge Higbee concluded that it is not "'practicable' in a case such as this to allege each and every specific statement" upon which allegations of fraud are based. *Id.*  Since Fed. R. Civ. P. 9 contains no analogous "practicality" requirement with respect to pleading fraud with particularity, any reliance on *International Union of Operating Engineers* is misplaced.

### 1.   Plaintiff Edward Wright Cannot State A Claim Under The Arizona Consumer Fraud Act.

Plaintiffs argue that named plaintiff Wright states a claim under the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1522(A), because: (1) he alleges "actual damages" under Arizona law; (2) ACFA does not require plaintiff to plead reliance; and (3) the learned intermediary does not apply to his claims. (Pls.' Resp. at 35, 38, 46.) None of these arguments can salvage Mr. Wright's claims.

First, plaintiff Wright does not allege actual damages under Arizona law because he does not allege that he suffered harm as a result of using Vioxx. As Merck explained in its opening brief, it is clear that "before a private party may exert a claim under the statute, he must have been damaged by the prohibited practice." *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978). Plaintiffs' allegations that they "paid a high price for Vioxx instead of paying a low price for a traditional NSAID" are not only inconsistent with the allegations of their complaint (*see* Section II, *supra*) but also insufficient to state a claim under Arizona law. (Pls.' Resp. at 37-38.) Plaintiff Wright does not claim that Vioxx was defective in any way; nor does he allege that the drug failed to reduce his pain or caused him physical injury. As a result, Mr. Wright has not pled actual damages as required by Arizona law.

Second, plaintiffs' argument that ACFA does not require a plaintiff to plead reliance is incorrect. Under Arizona law, a private plaintiff suing under the Act must establish reliance as part of his claim. *See Peery*, 585 P.2d at 577 ("A prerequisite to such damages is reliance on the unlawful acts."); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1114 (D. Ariz. 2003) (dismissing fraud claims where plaintiffs failed to allege reliance with particularity under Fed. R. Civ. P. 9(b)). Plaintiffs' cases are not to the contrary. For example, in *Arizona ex rel. Corbin v. Tolleson*, 773 P.2d 490 (Ariz. Ct. App. 1989) (Pls.' Resp. at 39), the court merely held

that the state attorney general need not demonstrate reliance in order to bring an enforcement action under the statute. *Id.* at 503. The case does not support the proposition that private citizens, such as Mr. Wright, need not meet the ACFA's reliance requirement. Similarly, *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500 (Ariz. Ct. App. 1980) (Pls.' Resp. at 39) does not stand for the proposition that the ACFA does not require reliance. Rather, the ACFA does not require that reliance be justified "as the term reliance is used in fraud actions."[9] *Id.* at 504 (citing *Peery*, 585 P.2d 574). As *Peery* makes clear, the distinction is simply that while common law fraud requires justifiable reliance, the ACFA does not require that the reliance be justified. 585 P.2d at 578. But neither case relieves a plaintiff of the burden of demonstrating reliance on defendant's allegedly deceptive act. Because Mr. Wright does not identify a specific alleged misrepresentation upon which he relied in purchasing Vioxx, his claim must be dismissed.

Third, plaintiffs incorrectly argue that the learned intermediary doctrine does not apply to claims brought under ACFA because the doctrine applies only to product liability and failure to warn cases. (Pls.' Resp. at 46.) As stated in Merck's opening brief, the learned intermediary doctrine is well recognized in Arizona and provides that a drug manufacturer's duty to warn runs to the physician – not the consumer. *See Gaston v. Hunter*, 588 P.2d 326, 340 (Ariz. Ct. App. 1978) ("In the case of prescription drugs . . . the manufacturer's duty to warn is ordinarily satisfied if a proper warning is given to the prescribing physician."); *Dyer v. Best Pharmacal*,

---

[9]     Plaintiffs' other cases do not support their arguments either. *Alaface v. Nat'l Inv.*, 892 P.2d 1375 (Ariz. Ct. App. 1994) (Pls.' Resp. at 39) merely opined in dicta as to the reliance requirement in consumer fraud cases. There, the issue before the court involved the application of the statute of limitations in the context of strict liability claims. *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83 (Ariz. Ct. App. 1983) (Pls.' Resp. at 39) involved plaintiffs who purchased and kept a particular car based on defendant's representations of the car's unique features, which later turned out to be false. *Id.* at 87. In reversing the lower court's dismissal of plaintiff's consumer fraud claims for failure to state a claim, the court merely held that the plaintiff adequately alleged consequent and proximate injury but did not discuss reliance.

577 P.2d 1084, 1088 (Ariz. Ct. App. 1978) (holding that there is "no duty to warn the patient" rather than the prescribing physician). These cases do not suggest in any way that Arizona would limit application of the doctrine to negligence cases, and doing so would be contrary to its purpose. After all, if application of the learned intermediary doctrine depended on how a case were pled, plaintiffs would be able to circumvent the doctrine simply by framing their allegations as statutory fraud claims. Such a variable duty to warn would serve no purpose other than confusion.

For this reason, courts that have specifically addressed the issue have held that the learned intermediary doctrine operates to defeat a consumer fraud claim where, as here, plaintiffs allege a failure to warn – but do not allege that the defendant failed to warn their particular doctors proximately causing them injury. For instance, in *In re Norplant Contraceptive Prods. Liab. Litig.*, 165 F.3d 374, 378 (5th Cir. 1999) (citing *Rivers v. Am. Home Prods. Corp.*, No. 342-160538-95 (Order dated Apr. 9, 1998)), the Fifth Circuit, applying Texas law, determined that the learned intermediary doctrine barred claims under the Texas Deceptive Trade Practices Act. As that court put it, the learned intermediary doctrine "establishes the degree to which a prescription drug manufacturer is liable for an end user's reliance on the effects of a prescription drug." *In re Norplant*, 165 F.3d at 378. *See also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001) (dismissing plaintiffs' claim because they did not allege that defendant sales representatives "failed to warn the particular physicians who prescribed the drug for them, let alone that this alleged failure was the proximate cause of their injuries."); *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) ("It is clear that Georgia courts would find the 'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of