*Communications* does not support plaintiffs' contention that third-party payors are "consumers" within the meaning of the Act.[16]

### 3. The Illinois Third-Party Payor Entities Fail To State A Claim Under Illinois Law.

The Illinois third-party payors' consumer fraud claims must be dismissed for all the same reasons as the Illinois consumers' claims. (*See* Section III.B.3, *supra*.)

### 4. United Senior Action Cannot State A Claim Under Indiana's Consumer Protection Act.

United Senior Action of Indiana, Inc. ("United Senior Action") cannot state a claim for consumer fraud for all the same reasons as the Indiana consumers. (*See* Section III.B.4, *supra*.) Additionally, United Senior Action cannot state a claim under the Indiana Deceptive Consumer Sales Act ("DCSA"), because it has not engaged in a "consumer transaction" under the meaning of the statute.

A plaintiff may only bring a claim under the DCSA if he or she has engaged in a "consumer transaction." *See* Ind. Code § 24-5-0.5-2(a)(1). The statute defines a consumer transaction as "a sale, lease . . . or other disposition of an item . . . to a person *for purposes that are primarily personal, familial, charitable, or household,* or a solicitation to supply any of these things." *Id.* As Merck stated in its opening brief, plaintiffs do not adequately allege that United Senior Action engaged in a consumer transaction with Merck, because they have made no claim that United Senior Action reimbursed its members for Vioxx purchases. (Purchase Claims Compl. ¶ 36.) Plaintiffs do not even attempt to contradict Merck's argument; nor do they cite a

---

[16]    The other cases cited by plaintiffs do not directly address the definition of "consumer" under the Act. Rather, these cases analyze third-party payor standing issues in unrelated contexts. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (holding that third-party payors were purchasers for the limited purpose of antitrust litigation); *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 345, 350 (2nd Cir. 2003) (considering the definition of "consumer" within the meaning of New Jersey's Consumer Fraud Act); *Serv. Employees Int'l. Union Health & Welfare Fund v. Abbott Labs.*, No. C 04-4203 CW, 2005 WL 528323, at *2-3 (N.D. Cal. Mar. 2, 2005) (holding that insurance companies were *not* consumers for purposes of antitrust litigation, and that they only satisfied the Sherman Act's standing requirement under the broader "market participant" test).

single case in support of their argument.  Because plaintiffs have not alleged that United Senior Action engaged in any conduct that falls within the purview of Indiana's consumer fraud statute, its consumer fraud claim fails for this reason as well.

### 5.    The  Third-Party  Payor  Claims  Fail  Under  The Massachusetts Consumer Protection Statute.

The Massachusetts third-party payors' consumer fraud claims must be dismissed for all the reasons discussed in Section III.A.6, above.[17]

### 6.    Michigan Third-Party Payors Cannot State A Claim Under Michigan's Consumer Protection Law.

The Michigan third-party payors' consumer fraud claims must be dismissed for all the reasons discussed in Section III.A.7, *supra*.

### 7.    The New York Third-Party Payors Cannot State A Claim Under the New York Deceptive Acts And Practices Act.

Plaintiffs contend that the third-party payors' claims are valid under the New York Deceptive Acts and Practices Act (the "NYDAPA") because: (1) the third-party payors allege a cognizable injury under New York law; and (2) the learned intermediary doctrine does not apply to the third-party payors' claims. Both of plaintiffs' arguments fail.

First, the third-party payors do not claim a valid injury under New York law because they fail to allege that they were actually harmed by a defect in Vioxx.  As explained in Merck's opening brief, the statutory language and relevant case law establish that a plaintiff must plead actual injury to sustain a claim under the NYDAPA.  *See* N.Y. Gen. Bus. Law § 349 *et seq.*; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (plaintiff "must show that the defendant engaged in a material deceptive act or

---

[17]    Health Care For All, a Massachusetts plaintiff, does not allege that it paid for Vioxx but that its members did so.  Accordingly, it appears that it is not asserting this claim in its own right, but is attempting to interpose a claim on behalf of its members.  As explained in Section VI, *infra*, Health Care For All has no standing to do so.

practice that caused actual" harm).  Plaintiffs' allegations that they "paid a high price for Vioxx instead of paying a low price for a traditional NSAIDs because Merck aggressively marketed and misrepresented Vioxx to be safer and more efficacious than traditional NSAIDs" are simply not sufficient to claim an actual injury.  (Pls.' Resp. at 37-38.)  Like the other plaintiffs, the New York third-party payors do not claim that Vioxx was defective in any way or that it failed to reduce their pain as intended.

Second, contrary to plaintiffs' contention, the learned intermediary doctrine applies to claims brought under the NYDAPA.  As set forth in Merck's opening brief, New York case law establishes that the learned intermediary doctrine applies in cases where a plaintiff alleges that a drug company provided inadequate information about the safety and efficacy of their product. *See Martin v. Hacker*, 628 N.E.2d 1308, 1311 (N.Y. 1993).  Plaintiffs' attempt to distinguish *Martin* on the basis that the case addressed a "failure to warn" claim instead of an action under the NYDAPA (Pls.' Resp. at 46 n.39), is unpersuasive.  In *Martin*, as in the present case, the inquiry before the court focused on the alleged inadequacy of communications by a drug manufacturer regarding a prescription drug.  In resolving the issue, the court specifically noted that communications regarding the safety and efficacy of prescription drugs "are intended for the physician, whose duty it is to balance the risks against the benefits of various drugs . . . and to prescribe them and supervise their effects."  *Martin*, 628 N.E.2d at 1311.  Nowhere does the court limit application of this principle solely to failure to warn cases, and as noted above, such an approach would undermine the very purpose of the doctrine.  *See* Section III.B.1, *supra*.

### 8.    UFCW Local 1776 Cannot State A Claim Under The Pennsylvania Unfair Trade Practices And Consumer Protection Law.

Plaintiffs argue that Pennsylvania named plaintiff UFCW Local 1776 and Participating Employees Health and Welfare Fund ("UFCW Fund") states a claim under the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.* (the "UTPCPL") because: (1) Pennsylvania authority indicates that reliance is presumed under the UTPCPL; and (2) causation should also be presumed.  Plaintiffs distort the law and are wrong on both counts.

First, although they concede that the UTPCPL requires a showing of reliance, plaintiffs misrepresent the law in arguing that it may be presumed in omission cases under Pennsylvania law.  In fact, the Pennsylvania Supreme Court has explicitly stated that "a plaintiff must establish [reliance]" under the UTPCPL, *Weinberg v. Sun Co.*, 777 A.2d 442, 445 (Pa. 2001), and have only been willing to presume reliance when a fiduciary relationship is present, *Debbs v. Chrysler Corp.*, 810 A.2d 137, 156-57 (Pa. Super. Ct. 2002) – a relationship plaintiff does not and could not allege.[18]  Indeed, Pennsylvania courts have repeatedly cited the requirement of proving individual reliance as a basis for denying class certification, confirming that reliance cannot merely be presumed.  *See Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (individualized questions of causation and reliance defeat class certification of UTPCPL claim); *Debbs*, 810 A.2d  at 157 ("Where no fiduciary relationship has been demonstrated between the class and [defendant] to excuse proof of individualized reliance, the individual questions involving reliance and causation would remain a significant barrier to class certification."); *Lewis v. Bayer AG*, 66 Pa. D. & C.4th 470 (Ct. Com. Pl. 2004) ("Because reliance is an integral element of any UTPCPL claim, it is an inappropriate vehicle upon which to predicate a class action.").

---

[18]     Plaintiffs cite a Bankruptcy Court case, *In re Sheppard*, 299 B.R. 753 (Bankr. E.D. Pa. 2003), as unsettling the Pennsylvania Supreme Court's decision in *Weinberg*.  (Pls.' Resp. at 42 n.36.)  The court in *Sheppard* did no such thing and, in fact, held that the plaintiff there had not established reliance or causation.  299 B.R. at 767-69.  Furthermore, in *dicta*, the Bankruptcy Court merely questioned whether the Pennsylvania Supreme Court would hold the same way if it considered the legislative history to the  UTPCPL's 1996 Amendment as opposed to the legislative history of the 1976 Amendment.  *Id.* at 766.  The Bankruptcy Court concluded that it did not have to answer this question because the plaintiff failed to establish causation.  *Id.* at 768.  Accordingly, its decision in no way undermines *Weinberg* or any of the other cases affirming the reliance requirement.

To the extent plaintiffs' cases suggest otherwise, they are simply out of step with more recent Pennsylvania authority.  For example, in *Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.*, 85 F. Supp. 2d 519 (W.D. Pa. 2000), the court relied on a Tennessee case and two decades-old Pennsylvania cases for its assumption that reliance may be presumed in a common law fraud case under certain factual circumstances.  The court plainly did not review more recent Pennsylvania UTPCPL authority flatly rejecting that approach.  Likewise, *Drayton v. Pilgrim's Pride Corp.*, 2004 U.S. Dist. LEXIS 6691 (E.D. Pa. 2004), is unpersuasive because the court relied exclusively on *Zwiercan*, a trial court decision that is in direct conflict with more recent state court appellate decisions.

In addition, to the extent plaintiffs are arguing that a presumption of reliance would permit a presumption of causation (Pls.' Resp. at 43), that argument likewise has no basis in Pennsylvania law.  *See Debbs*, 810 A.2d  at 157 ("Where no fiduciary relationship has been demonstrated between the class and [defendant] to excuse proof of individualized reliance, the individual questions involving reliance and causation would remain a significant barrier to class certification.").  Moreover, as demonstrated in Merck's opening brief, plaintiffs have not adequately pled causation under the UTPCPL due to the application of the learned intermediary doctrine.  *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 384 (D.N.J. 2004) (interpreting Pennsylvania law and holding that plaintiffs' consumer fraud claims were barred due to, *inter alia*, the learned intermediary doctrine).  In *Heindel*, the court explicitly held that the learned intermediary doctrine "breaks the chain" of causation in consumer protection claims involving prescription drugs "since the patient cannot obtain prescription drugs without the physician no matter what they believe about them." *Id.*  Moreover, plaintiffs essentially concede that the learned intermediary doctrine applies to consumer protection claims under Pennsylvania law.

(Pls.' Resp. at 47 n.39 (citing *Luke v. Am. Home Prods. Corp.*, No. 1998-C-01977, 1998 WL 1781624, at *8 (Pa. Ct. Com. Pl. Nov. 18, 1998).)  As a result, UFCW's claims must fail absent an allegation that Merck failed to adequately warn the particular physicians who prescribed the Vioxx at issue in this case and that these doctors would not have prescribed the drug if Merck had done so.

Finally, plaintiffs do not address the UTPCPL's requirement that a claimant demonstrate an ascertainable loss.  As set forth in Merck's opening brief, the plain language of the statute states that claimants must demonstrate an "ascertainable loss of money or property."  *See* 73 Pa. Stat. § 201-9.2(a).  UFCW has not alleged that it suffered any such loss and its claim must therefore be dismissed for this reason as well.

> **9.     The Third-Party Payor Claims Would All Fail Under New Jersey Law.**

In addition to their arguments in Section III.B.10, *supra*, which addresses consumer claims under the NJCFA, plaintiffs also argue that the third-party payor claims state a cause of action under New Jersey law because the NJCFA uses the word "person" not "consumer."  (Pls.' Resp. at 23.)  Again, plaintiffs have misread the applicable law.

As noted in Merck's opening brief, a plaintiff suing under the NJCFA must be a "consumer" (as that term has been interpreted by the courts) in order to maintain suit.  *See City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990); *Arc Networks, Inc. v. Gold Phone Card Co.*, 756 A.2d 636, 638 (N.J. Super. Ct. Law Div. 2000). To be a "consumer" under the NJCFA, a plaintiff must be "one who uses (economic) goods, and so diminishes or destroys their utilities."  *City Check Cashing*, 582 A.2d at 811 (quoting *Hundred E. Credit Corp. v. Eric Schuster*, 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986)).

In support of their proposition that the third-party payors state a claim under the NJCFA, plaintiffs rely on Judge Higbee's ruling in *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, No. ATL-L-3015MT-03, slip op. (N.J. Super. Ct. Law Div. July 8, 2004) (Pls.' Resp. at 23). Other courts, however, have sharply disagreed with Judge Higbee. For example, in *Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc.*, No. MID-L-857-02, slip op. (N.J. Super. Ct. Law Div. Feb. 14, 2003) (attached as Ex. 3), a different trial court dismissed an attempt by third-party payors to bring an NJCFA claim against Merck under identical circumstances. In language equally applicable here, that court noted that "[s]omeone who buys for the use of another does not qualify as a 'consumer.' As a result, Plaintiffs are not 'consumer[s]' within the meaning of the [NJCFA] and cannot raise a claim pursuant to the Act." *Id*. at 14. Like the plaintiffs in *Plumbers*, the third-party payors here are not consumers within the meaning of the NJCFA.

Plaintiffs' attempt to discredit the ruling in *Plumbers* by arguing that it would deny standing to "mothers buying clothing for their children" is groundless hyperbole. (Pls.' Resp. at 24.) Of course, the holding in *Plumbers* would do no such thing. Rather, *Plumbers* stands for the reasonable proposition that to be a consumer under the NJCFA, the purchaser must "use" the item purchased. *Plumbers*, slip op. at 14. Thus, a mother who purchases clothing for her child "diminishes or destroys the[] utility[y]," *id.*, of the product in a manner obviously distinguishable from that of a third-party payor, an entity that merely pays some or all of the purchase price of the drug with out ever taking possession of the item purchased.

The *Plumbers* decision is not alone in reaching this holding. Just recently, a New York federal court reached the same conclusion in another MDL proceeding involving a prescription drug:

> The New Jersey courts have construed the [NJCFA] to permit only a "consumer" to sue. Although the courts are not in uniform agreement, a frequently used definition of "consumer" . . . is "one who uses (economic) goods, and so diminishes or destroys their utilities." Under this definition, LBC [a third-party payor] was not a consumer.

*In re Rezulin*, 392 F. Supp. 2d 597, 616-17 (S.D.N.Y. 2005) (footnotes omitted). The *Rezulin* court specifically declined to follow *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund*, finding that decision to be "inconsistent with the state appellate authorities allowing only a consumer to sue." *Id.* at 616 n.109.

Lastly, plaintiffs' reliance on *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004), and *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003) (Pls.' Resp. at 24), is misplaced because neither case addresses the question at issue here. In *In re Warfarin*, the court merely approved a settlement class in the unrelated context of antitrust litigation without analyzing the specific question of whether or not third-party payors are "purchasers" within the meaning of the NJCFA. *See* 391 F.3d at 531. And in *Desiano*, the question at issue was whether or not third-party payors of an allegedly defective diabetes medication had sufficiently alleged a direct – as opposed to a derivative – injury so as to defeat a motion to dismiss. 326 F.3d at 348-49. Neither *In re Warfarin* nor *Desiano* reaches the inquiry here: whether or not third-party payors are "purchasers" within the meaning of the NJCFA.

## IV. PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY.

Plaintiffs are also unable to respond to Merck's argument that they fail to state a claim for breach of the implied warranty of merchantability. As set forth in Merck's opening brief, plaintiffs fail to allege that they did not receive the benefit of their bargain, a requirement in all relevant states, or to allege timely notice, a requirement under most of the relevant states' laws. In addition, plaintiffs have no vertical privity with Merck as required by five states' laws, and the

third-party payors cannot state a claim for breach of warranty because they are not purchasers.

### A.    Plaintiffs Fail To Allege That They Did Not Receive The Benefit Of Their Bargain.

As set forth in Merck's opening brief, plaintiffs cannot sustain their breach of warranty claims because they have failed to allege that they did not receive the benefit of their bargain.  In their Response, plaintiffs assert that they have alleged a viable warranty claim because "Vioxx did not perform as warranted, and this is amply alleged."  (Pls.' Resp. at 63.)  In fact, however the portions of the complaint that plaintiffs rely on to make this argument do not say that the Vioxx taken by the named plaintiffs here did not perform as warranted.  Rather, plaintiffs allege that "Vioxx was not of merchantable quality and was not fit for its intended use, *because* it causes increased risk of serious cardiovascular and cerebrovascular adverse events, including heart attacks, strokes and other serious and harmful adverse health effects."  (Compl. ¶ 272 (emphasis added).)  Of course, this general allegation of an increased risk of injury does not allege that the actual plaintiffs before the Court suffered such adverse events; to the contrary, all indications are that these plaintiffs took Vioxx, received the pain relief they were seeking and suffered no adverse effects from the drug whatsoever.  Under such circumstances, they cannot sustain their warranty claims.  *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (dismissing implied warranty claim because no cause of action lies where the product performs satisfactorily and the alleged defect never manifested itself); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 803 (E.D. La. 1998) (plaintiffs' failure to allege that the product functioned improperly under normal use barred recovery under theory of implied warranty of merchantability).  *See also* Section II, *supra.*

**B.    The Implied Warranty Claims Must Be Dismissed As To Nearly All Plaintiffs For The Additional Reason That They Fail to Allege Timely Notice Of Breach As Required By U.C.C. § 2-607.**

Plaintiffs' effort to rebut Merck's second argument – that their claims fail under the laws of most states because they did not provide Merck with timely notice of breach – also fails.[19] (Pls.' Resp. at 64.)  Plaintiffs argue that they satisfied the U.C.C. § 2-607 notice requirement by filing their lawsuit and, in any event, that the § 2-607 requirement should be abrogated here because Merck allegedly had actual knowledge of the plaintiffs' concerns.  In making this argument, however, plaintiffs rely on *Anthony v. Country Life Mfg., LLC*, 70 Fed. Appx. 379 (7th Cir. 2003) (Pls.' Resp. at 64), a case that on examination supports Merck's position – not plaintiffs'.  In *Anthony*, the Seventh Circuit affirmed dismissal of the plaintiff's claim but acknowledged in dictum two possible exceptions to the U.C.C. § 2-607 notice requirement:  (1) when the seller has actual knowledge of the defect of the particular product, and (2) when the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of U.C.C. warranty.  70 Fed. Appx. at 384 (quoting *Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 589 (Ill. 1996).  As in *Anthony*, neither exception to the notice requirement applies in the instant case.

First, plaintiffs are wrong to assert that they effectively satisfied the U.C.C. notice requirement by filing their lawsuit.  Courts are loath to relax the § 2-607 notice requirement in cases of purely economic (rather than personal) injury.  *See, e.g., Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) ("at least in the context of economic harm rather than personal injury, the filing of a lawsuit is not considered to be sufficient notice"); *Connick*, 675 N.E.2d at 590 ("Only a consumer plaintiff who suffers a personal injury may satisfy the

---

[19]    This argument applies to claims of plaintiffs from Alabama, Arizona, the District of Columbia, Florida, Illinois, Indiana, Massachusetts, Michigan,  New York, Pennsylvania, Vermont, and Washington.

section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller."). Indeed, the only cases cited by plaintiffs that pertain to the laws of relevant states are easily distinguishable. For example, *In re Latex Gloves Prods. Liab. Litig.*, 134 F. Supp. 2d 415 (E.D. Pa. 2001) (Pls.' Resp. at 65), is a personal injury case with no bearing on plaintiffs' economic injury claims. Similarly, in *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690 (N.Y. App. Div. 1997) (Pls.' Resp. at 65), the court merely held that a plaintiff satisfied the § 2-607 notice requirement by repeatedly making its particularized objections to defendant's "pattern of deficient performance known" *in addition to* filing a lawsuit. *Id.* at 692. The other cases cited by plaintiffs to support their position involve the laws of the few states that have allowed cases to proceed without notice. (Pls.' Resp. at 65.) Merck does not contest claims arising under the laws of these states. Thus, these cases are irrelevant.

Plaintiffs' argument that filing a lawsuit *"should"* amount to notice in the MDL context essentially asks the Court to rewrite the warranty laws of the relevant states. (*Id.* (emphasis added).) As the Illinois Supreme Court put it in a case interpreting Pennsylvania and Illinois law, "it is essential that the seller be notified that *this particular transaction* is troublesome." *See Connick*, 675 N.E.2d at 590 (emphasis added) (quotations omitted). This Court should not take it upon itself to change established law in the relevant jurisdictions.

Finally, plaintiffs' assertion that Merck's withdrawal of Vioxx from the market (Pls.' Resp. at 64) somehow constituted actual knowledge of a defect, rendering notice unnecessary, is similarly flawed. As numerous courts have recognized, "the taking of precautions against the future [such as issuance of recall letters] is not be construed as an admission of responsibility for the past." *Chase v. Gen. Motors Corp.*, 856 F.2d 17, 21 (4th Cir. 1988); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill. App. Ct. 1997) (holding that recall notices sent out by

manufacturer did not establish that the manufacturer had actual knowledge of a particular model's alleged safety risks, as would excuse buyers from giving direct notice under U.C.C. § 2-607 of alleged breach of warranty).  On this point, as on others, plaintiffs' own cited authority supports Merck's position.  *See Anthony v. Country Life Mfg., L.L.C.*, No. 02 C 1601, 2002 WL 31269621, at *4 (N.D. Ill. Oct. 9, 2002), *aff'd* 70 Fed. Appx. 379 (7th Cir. 2003) (Pls.' Resp. at 64) ("It is not sufficient that the seller be aware of problems with a product line – section 2-607 is satisfied 'only where the manufacturer is somehow apprised of the trouble with the ***particular product purchased by a particular buyer.***'" (quoting *Connick*, 675 N.E.2d at 590) (emphasis in original)).[20]

For this reason alone, the breach of warranty claims of the named plaintiffs from Alabama, Arizona, the District of Columbia, Florida, Illinois, Indiana, Massachusetts, Michigan, New York, Pennsylvania, Vermont, and Washington should be denied.

C.     **The Implied Warranty Of Merchantability Claims Are Barred Under Five States' Laws Because The Plaintiffs Lack Vertical Privity With Merck.**

Plaintiffs are also unable to rebut Merck's argument that their warranty claims are barred as to plaintiffs from five states (Alabama, Arizona, Florida, Illinois and New York) because those plaintiffs lack vertical privity with Merck.  As discussed below, none of these states has adopted plaintiffs' proposed theory that Merck's advertising suffices to establish the "privity relationship" required to state a claim for breach of implied warranty under these states' laws. (Pls.' Resp. at 65-66.)  Thus, the plaintiffs' warranty claims must be dismissed for this additional reason.

---

[20]     *Alcorn v. BP Products N. Am, Inc.*, No. Civ. 04-120 (PAM/RLE), 2004 WL 1745761 (D. Minn. Aug. 2, 2004), is also easily distinguishable.  (Pls.' Resp. at 64.)  In the limited discussion in *Alcorn* of § 2-607, the court emphasized its finding that the plaintiffs in that case *did explicitly allege in their Complaint* that they in fact gave notice.  2004 WL 1745761, at *2.  Plaintiffs in the instant case never alleged in their Complaint that they fulfilled the notice requirement by any means.

### 1.     Alabama (Plaintiff Cavalier Homes, Inc.)

With regard to the privity requirement in Alabama, plaintiffs cite to *Vesta Fire Insurance Corp. v. Milam & Co. Construction, Inc.*, 901 So. 2d 84 (Ala. 2004), for the proposition that "[r]etail purchasers may . . . bring implied warranty claims against manufacturers under Alabama law." (Pls.' Resp. at 66.)  In fact, however, *Vesta*'s holding – that third-party beneficiaries may have a cause of action under provisions of the contract that benefited them – is in the insurance, not the sales, context.  901 So. 2d at 103.

In fact, although Alabama has abolished privity requirements in actions involving personal injuries, *see* Ala. Code § 7-2-318 ("Third Party Beneficiaries of Warranties Express or Implied") (extending a "seller['s] warranty" either express or implied to any natural person reasonably expected to use the product and "injured in person"), it has not done so for non-injury cases such as this.  *See Wellcraft Marine v. Zarzour,* 577 So. 2d 414, 419 (Ala. 1990); *see also Kidd v. Kilpatrick Chevrolet, Inc.*, 613 So. 2d 336 (Ala. 1993) (noting that § 7-2-318 speaks "in terms of 'seller,' which is defined in § 7-2-103(1)(d), as 'a person who sells or contracts to sell goods'" and therefore rejecting plaintiff's third-party beneficiary argument on his breach of implied warranty claim because the defendant it did not "sell" the vehicle to the plaintiff).  Because plaintiffs do not allege that Merck sold them their Vioxx directly, their warranty claims simply cannot be sustained under Alabama law.

### 2.     Arizona (Plaintiff Edward Wright)

Plaintiffs' argument that plaintiff Wright is not required to allege privity under Arizona law fares no better.  Once again, plaintiffs' third-party beneficiary arguments are not drawn from the sales context.  *See Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229 (Ariz. Ct. App. 2002) (Pls.' Resp. at 66) (involving a real estate contract); *Richards v. Powercraft Homes, Inc.*, 678 P.2d 427 (Ariz. 1984) (Pls.' Resp. at 66) (dealing narrowly with the warranty of habitability).

Indeed, the one case plaintiffs cite involving sales, *Phoenix v. W. Publishing Co.*, 712 P.2d 944 (Ariz. Ct. App. 1985) (Pls.' Resp. at 66-67), is not a warranty case and does not address privity. Rather, *Phoenix* merely held that an out-of-state corporation could not be subject to Phoenix city taxes solely because the corporation kept sales representatives in that city.  *Id.* at 947.[21] Moreover, plaintiffs err in arguing that, if Arizona law does require privity in this case, Merck's advertising created vertical privity with consumers.  (Pls' Resp. at 65.)  To the contrary, the Arizona Court of Appeals, in *King v. O'Rielly Motor Co.*, 494 P.2d 718 (Ariz. Ct. App. 1972), specifically held that advertising does not create privity.  *Id.* at 723.  Plaintiffs are unable to cite even one contradictory Arizona case to support their argument.  As a result, plaintiffs' implied warranty claims fail under Arizona law.

### 3.      Florida (Plaintiff Clara Fontanilles)

Plaintiffs' attempt to evade the privity requirement under Florida law is also unavailing because Florida holds that privity of contract between plaintiff and defendant is an essential element of the breach of implied warranty cause of action.  *See T.W.M. v. Am. Med. Sys. Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) ("Because the complaint does not allege privity of contract, it fails to state a cause of action for breach of express or implied warranties.").  Plaintiffs' cited cases are not to the contrary.  For example, in *Ocean Ritz of Daytona Condominium v. GGV Associates, Ltd.*, 710 So. 2d 702 (Fla. Dist. Ct. App. 1998) (Pls.' Resp. at 67) the issue before the court was whether a third party beneficiary could bring a *negligence* claim against the defendant, not an implied warranty action.  In dicta, the court relied on Fla. Stat. § 672.318 in stating that implied warranty runs to third-party beneficiaries.  However, that statute specifically limits the definition of third-party beneficiaries to "any natural person who is

---

[21]      In any event, the court's holding rested on specific findings that "[n]one of West's sales are channeled through a wholesaler or distributor.  All orders are filled from West's inventory in St. Paul and shipment of publications are made directly to the subscribers."  *W. Publ'g*, 712 P.2d at 944.

in the family or household of his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Fla. Stat. § 672.318.  Plaintiffs have not alleged, and there is no reason to believe, that plaintiff Fontanilles is the family, guest, employee, servant or agent of the direct purchaser of Vioxx.   Therefore, she does not fall within the definition of "third-party beneficiary" established by the Florida legislature, and cannot escape the privity requirement.   Plaintiffs' reliance on *Manheim v. Ford Motor Co.*, 201 So. 2d 440 (Fla. 1967), for the proposition that "[a]s far back as 1967, the Florida Supreme Court recognized the dissonance between a privity requirement and the effects of direct to consumer advertising" is misplaced for the same reason. (Pls.' Resp. at 67.)   *Manheim* does not permit plaintiff to avoid the privity requirement by claiming "third-party beneficiary" status.   Moreover, in the last thirty years, Florida law has consistently required privity in breach of implied warranty cases.   *See, e.g., Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (clarifying that breach of implied warranty actions in contract indeed require privity of contract); *Am. Universal Ins. Group v. Gen. Motors Corp.*, 578 So. 2d 451, 454-55 (Fla. Dist. Ct. App. 1991).   Without privity, plaintiff Fontanilles' breach of implied warranty claims against Merck fail.

### 4. Illinois (Plaintiffs Marilyn Benoit, Coleen Lowery, Melvin Williams, Sharon Murphy, Midwest Operating Engineers, and Painters District Council No. 30 Health and Welfare Fund)

As set forth in Merck's opening brief, plaintiffs' claims must be dismissed for lack of privity under Illinois law as well.   In *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill. App. Ct. 1980), the one Illinois case on which plaintiffs rely (Pls.' Resp. at 67), the court acknowledged that in Illinois, "generally privity only extends to the

parties to the sale and implied warranties are not applicable between the buyer and remote manufacturer." *Frank's Maintenance & Eng'g*, 408 N.E.2d at 412. The *Frank's* court found privity under the facts of that case but only because "the manufacturer knew the *identity*, purpose and requirements of the dealer's customer" and delivered the custom-made goods directly to the plaintiff. *Id.* at 412 (emphasis added). Unlike the manufacturer in *Frank's Maintenance & Engineering*, Merck did not know the particular buyers of Vioxx and did not deliver custom-made products directly to the plaintiffs, nor did plaintiffs so allege.

As one court recently noted, "it is far from certain that Illinois permits *any* exception to the vertical privity requirement for breach of implied warranty." *Caterpillar, Inc. v. Usinor Industeel*, No. 04 C 2474, 2005 WL 736550, at *16 (N.D. Ill. Mar. 30, 2005) (emphasis in original) (holding that plaintiff equipment manufacturer's claim for breach of implied warranty against steel manufacturer failed for lack of privity (citing *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760 (Ill. 1986) (making no mention of any exceptions, expressly rejecting the abolition of vertical privity requirement for breach of implied warranty in cases of economic loss) and *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1208, (Ill. 1988) (explaining and reiterating *Szajna's* holding))).

Finally, Illinois has addressed and rejected plaintiffs' theory that Merck "achieved direct privity with each and every consumer who watches television or who reads the newspaper or magazines." (Pls.' Resp. at 65.) In *Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942 (N.D. Ill. 2004), the court granted the defendant automobile manufacturer's motion for summary judgment because plaintiffs had failed to establish the requisite privity of contract under Illinois law. *Id.* at 946. The *Finch* court reached this decision even though plaintiffs had argued that "Ford's 'mass advertising' created the required privity" of contract. *Id.* In so holding, the court noted that the

plaintiffs did not cite "any legal authority suggesting that Illinois law would allow" advertising efforts to create the necessary privity. *Id.* The same is true here, and for this reason too, the Illinois plaintiffs' warranty claims fail.

> **5.     New York (Plaintiffs New York State Wide Senior Action Council, Suffolk County, And Teamsters Local 237 Welfare Fund)**

Lastly, plaintiffs' breach of implied warranty claims fail under New York law for lack of privity. While plaintiffs point to *Randy Knitwear, Inc. v. American Cyanamid Co.*, 181 N.E.2d 399, 402 (N.Y. 1962) to support their assertion that "the commercial world requires exceptions to the strict requirements of privity" (Pls.' Resp. at 67-68), they fail to point out that *Randy Knitwear* involved only ***express*** warranties and offers no support for plaintiffs' implied warranty cause of action. In fact, New York courts continue to require privity for breach of implied warranty claims like plaintiffs' here, in which the plaintiffs do not allege physical injury. *See Hole v. Gen. Motors Corp.*, 83 A.D.2d 715, 716 (N.Y. App. Div. 1981) (affirming dismissal of breach of implied warranty action where no privity existed between buyer and seller, because "[w]hile the citadel of privity has been shaken (*Randy Knitwear v. American Cyanamid Co.*, 181 N.E.2d 399), it has not been altogether razed, and plaintiff's reliance upon *Randy Knitwear* . . . on the issue of implied warranty is misplaced for that case dealt solely with express warranties"); *see also Soule v. Norton*, 299 A.D.2d 827, 830 (N.Y. App. Div. 2002) (patients of laser eye surgeon failed to state a claim against surgical laser manufacturer for breach of warranties of merchantability and fitness for particular purpose, where patients did not allege their privity with manufacturer). The New York plaintiffs' claims thus fail for this reason as well.

**D.     The Warranty Claims Of Third-Party Payors Must Also Be Dismissed Because Third-Party Payors Are Not "Purchasers" Within The Meaning Of The UCC.**

In response to Merck's next argument – that the third-party payors cannot sustain warranty claims because they are not "purchasers" under the U.C.C. – plaintiffs argue that: (1) they had the capacity to buy Vioxx; and (2) third-party payors "universally" stand in the shoes of the consumers they represent. (Pl. Resp. at 68.)  However, neither of these arguments makes them purchasers under the relevant law.

First, although plaintiffs contend that the mere capacity to purchase Vioxx confers "purchaser" status on third-party payors (Pl. Resp. at 68), the U.C.C. makes clear that an actual purchase must occur.  *See* U.C.C. § 2-106(1) (stating that a purchase requires "the passing of title from the seller to the buyer for a price"); *id.* § 2-401(2) (title only "passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.")  Just recently, the MDL court presiding over the Rezulin product liability cases rejected third-party payor warranty claims on just this basis, finding that third-party payor insurance companies did not qualify as "purchasers" because they gained no rights in the drugs, did not take title to or possess them, and never had any right to obtain or use them in any way. *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 332-33 (S.D.N.Y. 2005).

Second, plaintiffs' sweeping assertion that "universally, all [third-party payors] stand in the shoes of the patients and consumers they represent" (Pl. Resp. at 68), is unsupported by even a single citation to case law, and is logically flawed.  If it is universally true that third-party payors stand in the shoes of the patients and consumers they represent, then there would be no circumstance under which third-party payors would be unable to assert suit for the injuries suffered by the consumers.  The subrogation rules, however, set out specific criteria that must be

satisfied in order for one person to stand in the shoes of another,[22] especially in the insurer/insured context.  If the subrogation requirements are not satisfied, then the insurer cannot step into the shoes of the insured.  Thus, plaintiffs' "universal truth" assertion would render the entire subrogation doctrine moot.  Yet plaintiffs themselves acknowledge the subrogation doctrine's continued relevance when they seek to apply it, albeit erroneously, to this case.[23]

For this reason too, the third-party payors' warranty claims should be dismissed.

### E. State-Specific Warranty Law Bars The Claims Of Plaintiffs from Certain States.

#### 1. Plaintiff UCFW Cannot State A Claim Against Merck Under Pennsylvania Warranty Law.

In response to Merck's argument that Pennsylvania law bars breach of warranty claims against drug manufacturers in prescription drug cases, plaintiffs mistakenly rely on Restatement (Second) of Torts § 402A for the proposition that "the bar only applies where the product is properly marketed and the manufacturer has disclosed the risk to the consumer." (Pls.' Resp. at 69.)  Plaintiffs' argument fails for multiple reasons.

First, section 402A is inapplicable in the present case.  Section 402A's application is limited to cases in which "liability for *physical harm* [] caused to the *ultimate user or consumer*" is at issue.  Restatement (Second) of Torts § 402A(1) (emphasis added).  Here, plaintiffs claim they are suing only for economic damages (Pl. Resp. at 25, 52) and, as discussed in Section IV.D, *supra*, the third-party payors do not qualify as Vioxx consumers.  Moreover, plaintiffs fail to cite a single case in support of their novel proposition that, under Section 402A,

---

[22]     *Atteberry v. Mem'l-Hermann Healthcare Sys.*, 405 F.3d 344, 348 (5th Cir. 2005).

[23]     Plaintiffs may not circumvent the U.C.C.'s "purchaser" requirement by invoking the rule of subrogation. Plaintiffs failed to allege either a conventional or equitable subrogation claim in their complaint, and cannot raise it now in response to a motion to dismiss.  *Kaye v. Dirs. Guild of Am., Inc.*, No. 2:99CV07883, 1999 WL 1261468, at *3 (C.D. Cal. Dec. 10, 1999) ("court cannot consider materials outside the complaint when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)").

Pennsylvania's bar on breach of implied warranties in cases against drug manufacturers involving prescription drugs only applies where the product is properly marketed and the product's risks have been disclosed to the consumer.  Quite the contrary, in *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741 (W.D. Pa. 2004) (Pls.' Resp. at 69), a medical device – not prescription drug – case, the court reasoned that "Pennsylvania courts have held that the nature of prescription drugs precludes claims for breaches of implied warranty for similar reasons as comment K to § 402A precludes a finding that such drugs are 'unreasonably dangerous.'"  *Id.* at 752-53.   The *Parkinson* court concluded that "[a]s breach of implied warranty claims for prescription drugs are precluded under Pennsylvania law, breach of implied warranty claims for prescription medical devices also are precluded for identical reasons."  *Id.* at 753.

Third, plaintiffs' argument is predicated on inapposite case law.   The holding in *Makripodis v. Merrell-Dow Pharm.*, 44 Pa. D. & C. 3d 9 (Pa. Ct. Com. Pl. 1986) only addressed a ***pharmacy's*** liability for inadequate drug warnings.  *Id.* at 12.   The case discussed potential drug manufacturer liability only in the abstract, and did so in dicta.  *Id* at 13.  Since *Makripodis*, Pennsylvania state and federal courts have unequivocally barred warranty claims against the manufacturers and makers of prescription drugs and medical devices.  *Luke v. Am. Home Prods. Corp.*, No. 1998-C-01977, 1998 WL 1781624, at *6  (Pa. Ct. Com. Pl. Nov. 18, 1998) (holding that "there is no cause of action for a breach of implied warranty in prescription drug cases involving drug manufacturers"); *Albertson v. Wyeth, Inc.*, 63 Pa. D. & C. 4th 514, 536 n.6 (Pa. Ct. Com. Pl. 2003) ("prescription drugs are not covered by a warranty of fitness for ordinary purpose."); *Murray v. Synthes (U.S.A.), Inc.*, No. Civ.A. 95-7796, 1999 WL 672937, at *9 (E.D. Pa. Aug. 23, 1999).  *See also Hahn v. Richter*, 673 A.2d 888, 891 (Pa. 1996) (holding that "where the adequacy of warnings associated with prescription drugs is at issue, the failure of the

manufacturer to exercise reasonable care to warn of dangers, *i.e.*, the manufacturer's negligence, is the only recognized basis of liability").

Finally, *In re Pennsylvania Baycol Third-Party Payor Litigation*, no. 1874, 2005 Phila. Ct. Com. Pl. LEXIS 129 (Phila. Ct. Com. Pl. Apr. 4, 2005) (Pls.' Resp. at 69), does not support plaintiffs' contention that the third-party payors can bring a claim for breach of the implied warranty. In *Baycol*, the court considered the sole issue of class certification and specifically "refrain[ed] from ruling on plaintiff's ultimate right to achieve any recovery." *Id.* at *9-10. Addressing the commonality requirement, the court noted that the defendant had not even asserted that there was a conflict with respect to warranty law, and then merely acknowledged that every state has some version of the product warranty doctrine. *Id.* at *15. This, however, was the full extent to which the court analyzed the implied warranty of merchantability. It was not asked to decide, and did not decide, whether a third-party payor could successfully raise a warranty of merchantability claim against a drug manufacturer in a prescription drug case.

Plaintiff UCFW's implied warranty claim should thus be dismissed for the additional reason that Pennsylvania law does not permit such a claim in prescription drug cases involving drug manufacturers.

### 2.    Michigan Plaintiffs Cannot State A Warranty Claim Against Merck Under Michigan Law.

As discussed in Section III.B.7, *supra*, Mich. Comp. Laws Ann. § 600.2946(5) immunizes Merck from any liability in Michigan for its sale of Vioxx, an FDA-approved drug, regardless of how the cause of action is worded. Because plaintiffs' warranty claims against Merck are based on their allegations that Merck did not adequately warn of the dangers of Vioxx, they are completely barred under Michigan law. *See, e.g., Henderson v. Merck & Co., Inc.*, No. 04-CV-05987-LDD, 2005 WL 2600220, at *9 (E.D. Pa. Oct 11, 2005) (concluding,

under Mich. Comp. Laws Ann. § 600.2946(5), plaintiff's claims for, *inter alia*, breach of warranty based on allegations that the prescription drug Bextra caused severe injuries "fail as a matter of law under Michigan law").

F. **Even If New Jersey Law Applied to Plaintiffs' Warranty Claims, Those Claims Would Still Fail.**

Plaintiffs' argument that the Court should simply apply New Jersey law to all the named plaintiffs' claims does not salvage their claims.

First, plaintiffs' argument that they can state a claim under warranty for economic losses misses the point. New Jersey law – like that of other states – is clear that they cannot state a claim if they received the benefit of their bargain. *Herbstman v. Eastman Kodak Co.*, 342 A.2d 181, 185 (N.J. 1975) (noting that the "injury and damages" alleged by plaintiff must be "caused proximately and in fact by the defective nature of the goods") (quoting White & Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 9-6 (1972)); *Alloway v. Gen. Marine Inds., L.P.*, 695 A.2d 264, 267 (N.J. 1997). While plaintiffs quote *Alloway* for the proposition that "[b]y providing for express and implied warranties, that statute [the UCC] amply protects all buyers . . . from economic loss arising out of the purchase of a defective product" (Pls.' Resp. at 25 (first alteration in original)), plaintiffs ignore the simple fact that distinguishes the present case from *Alloway*: in *Alloway*, the product at issue, a thirty-three foot power boat, "sank as a result of a ***defective seam*** in the swimming platform." 695 A.2d at 264 (emphasis added). Here, as noted above, plaintiffs do not allege that Vioxx caused them any physical harm, failed to reduce their pain, or functioned in any manner inconsistent with that intended by the manufacturer. (Pls.' Resp. at 27.) Accordingly, plaintiffs cannot state a claim for breach of warranty under New Jersey law.

Second, plaintiffs may not avoid the notice requirement in the New Jersey statute merely by alleging that Merck "knew" Vioxx was defective – were that the case, plaintiffs could always neglect their statutory duty simply by alleging that the defendant knew of an alleged defect.  In other words, the exception would swallow the rule.  Plaintiffs' only cited case does not support a different result.  *See Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543 (D.N.J. 1998). (Pls.' Resp. at 26.)  *Boyes* does not stand for the proposition that "Merck does not need to rely on plaintiffs for notice of a problem" with respect to Vioxx or that a showing of prejudice is necessary to require notice of a breach.  (*Id.*)  More precisely, the plaintiffs in *Boyes* opposed the defendants' motion for summary judgment for failure to provide notice of breach on grounds "that they did complain to [defendant] upon receipt of the boat and satisfied the reasonable time requirement by making the other defendants aware of the breach."  27 F. Supp. 2d at 551.  Since plaintiffs alleged that they did provide notice, and that they provided it within a reasonable time, the court merely denied defendants' motion for summary judgment because plaintiffs raised "disputed facts which bear on" the issue of notice.  *Id.*

Moreover, the cases on which the *Boyes* court relied simply do not support the proposition that prejudice is a prerequisite to invoking N.J. Stat. Ann. § 12A-2-607's notice requirement.  Rather, those cases state that prejudice is but one factor that courts can consider in determining whether notice was given within a reasonable time.  *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 298 (3d Cir. 1961) ("***One of the factors*** to be considered is, did the delay in giving notice or its form prejudice the seller?" (emphasis added)); *Cipollone v. Liggett Group, Inc.*, 683 F. Supp. 1487, 1498 n.14 (D.N.J. 1988) ("[W]hether defendant was prejudiced by the lack of notice is also a ***relevant*** consideration." (emphasis added)).

Accordingly, even if it were appropriate for the Court to apply New Jersey law to all the named plaintiffs' claims, their implied warranty claims would, in any event, fail.

## V.   PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs argument in support of their unjust enrichment claim relies entirely on two irrelevant cases to advance the proposition that, because they paid higher prices for Vioxx than others have paid for different drugs, Merck has been unjustly enriched.  The problem with this argument is that plaintiffs focus only on Merck's alleged "enrichment," while neglecting the equally important "unjust" component of their claim.

Plaintiffs cannot make out a claim of unjust enrichment for the same reason that their other claims fail – because they received what they bargained for.  As another MDL court faced with the same types of claims put it:  a valid unjust enrichment claim must be "based on the premise that Baycol did not provide any benefit" to the plaintiffs.  *In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 213 (D. Minn. 2003).  Because the plaintiffs could not "demonstrate that they were either injured by Baycol, or that Baycol did not provide them any health benefits," *id.* at 214, they could not state a claim for unjust enrichment.

In an effort to overcome this unassailable logic, plaintiffs point to two antitrust cases to support their theory that alleging defendant misconduct alone is sufficient to survive a motion to dismiss.  Specifically, they highlight the "millions of dollars in overcharges" in *In re Lorazepam & Clorazepate Antitrust Litigation*, 295 F. Supp. 2d 30, 51 (D.D.C. 2003) and the "overpayments and increased profits" in *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) in an attempt to analogize to plaintiffs' claims here.  What they take for granted is the fact that the enrichment was *unjust* in these cases.  In both cases, plaintiffs adequately alleged that defendants fixed prices contrary to various antitrust laws forbidding such behavior.  *See id.* at 632; *In re Lorazepam*, 295 F. Supp. 2d at 33.  Plaintiffs in this case do not allege that Merck

has been *unjustly* enriched as to *them*.  Plaintiffs can make no such claim because they received the pain-relieving medication they thought they were buying.

Another antitrust case conspicuously not cited by plaintiffs demonstrates this point.  In *In re Tamoxifen Citrate Antitrust Litigation*, 277 F. Supp. 2d 121 (E.D.N.Y. 2003), a drug price-fixing case, the court rejected a claim for unjust enrichment argument, emphasizing that restitution for unjust enrichment "requires that Defendants have 'unjustly' or 'wrongfully' received a benefit."  *Id.* at 139 (citations omitted).  According to the Court, "there was nothing impermissible about Zeneca charging monopolistic prices or licensing tamoxifen to Barr" and thus there was no unjust enrichment.  *Id.*  The same is true here.

Finally, plaintiffs' unjust enrichment claims fail under the laws of Arizona, Florida, Illinois, Massachusetts, New Jersey, New York, Pennsylvania and Washington because those states require *as an element of* an unjust enrichment claim that plaintiffs expressly aver that there is no adequate legal remedy.  In response to this argument, plaintiffs argue that they may plead in the alternative.  However, that argument missing the point because plaintiffs have not expressly pled under their unjust enrichment claim that no adequate legal remedy exists.  Thus, most of the named plaintiffs' warranty claims must be dismissed for this reason as well.

## VI.    THE ASSOCIATION PLAINTIFFS HAVE NO STANDING TO PURSUE THEIR CLAIMS.

Plaintiffs also wrongly argue that association plaintiffs that have never purchased Vioxx nonetheless have standing to sue on behalf of their members.  While plaintiffs concede the holding of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), that associations only have standing to pursue claims in a representative capacity on behalf of their members when "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *id.* at 343, they argue that this limitation is all but

meaningless if it is not of a constitutional dimension and that it is satisfied in any event. Plaintiffs are wrong on both counts.

First, while the Supreme Court has held that the last *Hunt* requirement is not a constitutional requirement, and therefore may be overridden by Congress, it did not render that requirement meaningless. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 556 (1996) ("To see *Hunt*'s third prong as resting on less than constitutional necessity is not, of course, to rob it of its value."). To the contrary, and in direct contrast to plaintiffs' assertion, lower courts have continued to dismiss damages actions brought by associations seeking to represent the interests of their constituents. *Compare Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.") *with* Pls.' Resp. at 76 ("no court has pronounced a per se rule against associational standing to pursue damage claims on behalf of its members"). *See also Sherwin-Williams Co. v. Spitzer*, Civil No. 1:04-CV-185 (DNH/RFT), 2005 U.S. Dist. LEXIS 18700, at *24 (N.D.N.Y. Aug. 24, 2005) ("when an association is pursuing monetary damages on behalf of its members, it is axiomatic that it does not have standing").

Second, it is plain that the claims asserted and relief sought in this case would require the participation of the putative class members. Apparently unable to find a helpful federal case, plaintiffs cite a few state cases finding standing when the relief sought is "certain, easily ascertainable, and within the knowledge of the defendant," *International Union of Operating Engineers Local 148, AFL-CIO v. Illinois Department of Employee Security.*, 828 N.E.2d 1104, 1115 (Ill. 2005), and therefore would not, in theory, require the participation of class members. (Pls.' Resp. at 76.) To state the rather obvious, state court decisions regarding standing are not

persuasive authority on the requirements for federal standing, and plaintiffs are unable to cite a single federal decision permitting an association to maintain a claim for damages on behalf of its members.

In any event, although plaintiffs' theory of damages has proved hard to pin down (*see* Section II, *supra*), no matter how framed, the calculation would require information from each plaintiff regarding the amount of Vioxx purchased and the price paid for that Vioxx – information that is ***not*** certain, easily ascertainable, or within defendants' knowledge. Moreover, this analysis focuses only on the relief sought, without considering the fact that plaintiffs' claims will require individual participation to determine liability in the first place. *See Hunt*, 432 U.S. at 343 (associations only have standing when "***neither the claim asserted nor the relief requested*** requires the participation of individual members in the lawsuit" (emphasis added). Even if plaintiffs could state a cause of action, the question of whether they have proved an injury is a question that would have to be answered on an individual basis. *See Bano*, 361 F.3d at 714 ("the fact and extent of the injury . . . would require individualized proof"). Likewise, questions of causation and reliance cannot be resolved absent evidence from each member of the association plaintiffs. Accordingly, even if damages actions were permitted in limited circumstances, those circumstances are not present here. Accordingly, the claims of the association plaintiffs must be dismissed for lack of standing.[24]

---

[24]     As set forth in Merck's opening brief, this argument applies to New York StateWide Senior Action Council, United Senior Action of Indiana, Inc., and Health Care for All. In addition, AFSCME asserts that it "and its members" paid for VIOXX. To the extent AFSCME seeks to redress any injuries of its members, rather than its own injury (if any), it lacks standing as well.

## CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Merck's motion to dismiss the purchaser master complaint should be granted.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Fax:  (504) 581-3361

Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Memorandum in Support of Merck's Motion to Dismiss Plaintiffs' Purchase Claims Master Class Action Complaint has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8, on this 8th day of December, 2005.

*Defendant*

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GERALD DURONIO, Individually and as
Class Representative, on behalf of all others similarly situated
      Plaintiff,

vs.                             Case No.  04-434718-CP

MERCK & Co., INC., a foreign Corporation,
ANDREA BENJAMIN, individually, RUBIN BENJAMIN,
Individually, ANGEL KLEIN, individually, KATHY
LINDSEY, individually, STEVE MOGRIDGE, in-
vidually FAWAZ NAJA, individually, and JOHN and JANE DOE,
Currently unknown multiple pharmaceutical representatives of Merck
Individually and jointly and severally,
      Defendants

_____/

At a Session of the Court

NOV 22 2005

Held on the _____ day of November , 2005   HON. WENDY M. BAXTER

PRESENT: THE HONORABLE _____

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

Defendant moved for summary disposition of Plaintiff's Second Amended

Complaint pursuant to MCR 2.116 (C) (8) based on the pleading alone that pled a class

action for fraudulent misrepresentation and omission claiming out-of-pocket economic

losses, violation of the Michigan Consumer Protection Act during the market, promotion

and labeling of Vioxx, which touted the drug as safe and superior in providing paid relief

when defendant knew of the significant risk of cardiovascular side effects yet minimized



EXHIBIT
*1*

1

and concealed them and avoided the concerns of prescribing physicians  through tactical sales pitches.  Defendant labeled plaintiffs claims as sounded in products liability and consequently barred by MCLA §600.2945 (h) and  §600.2946 (5) (a.)  Alternately, defendant posits that plaintiff's claims are barred by the economic loss doctrine, plaintiff has not suffered any personal injury, federal regulatory preemption  Food and Drug Administration [FDA]) or not pled with specificity and particularity as required for fraud under MCR 2.112.

The parties submitted briefs in support and opposition as well as  a reply brief and supplemental response and this Court heard oral arguments. The court being fully advised in the premises;

IT IS HEREBY ORDERED that the Motion for Summary Disposition is GRANTED based on MCR2.116 (C) (8) for the reason that economic  damages arising from fraud and/or the MCPA are legal or equitable theories of liability defined as a product liability action under MCLA § 600.2945(h) and as such defendants are immune from liability under MCLA § 600.2946 (5) given that plaintiff did not plead the constitution exception i.e., that the FDA had already determined  fraud under the federal regulations.

IT IS FURTHER ORDERED  that this resolves the last pending claim and closes the case

HON. WENDY M. BAXTER

_____

CIRCUIT COURT JUDGE

2

HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
101 HUDSON STREET, SUITE 3601
JERSEY CITY, NEW JERSEY 07302-3918
Telephone: (201) 536-9220
Telecopy: (201) 536-0799
Attorneys for Defendant Merck & Co., Inc.

**FILED**

*JAN 3 0 2004*

*CAROL E. HIGBEE, J.S.C.*

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL 572 HEALTH AND WELFARE FUND, BILLY G BORCHERT, DONALD B ORR, MACK E PILKINTON, JOSEPH N MINNIEHAM, MARTIN E GILMORE, JR. and BILL PROCTER, as trustees of the joint union employer trust fund, individually and on behalf of all other similarly situated, | SUPERIOR COURT OF NEW JERSEY ATLANTIC COUNTY: LAW DIVISION

DOCKET NO. ATL-L-1705-03-MT

CIVIL ACTION

VIOXX® LITIGATION |

Plaintiffs,

v.

MERCK & CO., INC.

Defendant.

**CONSENT ORDER DISMISSING
PLAINTIFFS' COMPLAINT
WITHOUT PREJUDICE**

WHEREAS, the defendant Merck & Co., Inc. ("Merck") has filed a motion to dismiss Plaintiffs' putative class action Complaint for failure to plead fraud with particularity; and

WHEREAS, the Court heard argument on Merck's motion on December 12, 2003 and Ordered Plaintiffs to attempt to replead their Complaint to meet the specificity pleading requirements; and

WHEREAS, a similar putative class action Complaint has been filed with this Court entitled International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc., Docket No. ALT –L- 3015-MT (the "Engineers" matter); and

EXHIBIT

Blumberg No. 5119

2

WHEREAS, the definition of the class alleged in the Engineers matter includes the Plaintiff in the present matter; and

WHEREAS, Merck believes that the present matter and the Engineers matter are without merit and no class should be certified and intends to vigorously defend both of these cases; and

WHEREAS the parties have agreed that judicial economy and the resources of the parties are better served by litigating the Engineers matter only;

IT IS HEREBY AGREED AND ORDERED that the present matter is hereby dismissed without prejudice to Plaintiffs' right, if any, to participate as class members in the Engineers matter in the event that matter (or any other action which includes Plaintiffs in its definition and involves the same or similar cause of action) is certified as a class action; and

IT IS HEREBY FURTHER AGREED AND ORDERED that if and only if the Engineers matter is not certified as a class, the Plaintiffs in the present matter may seek to re-file their Complaint subject to the following conditions:  Plaintiffs will re-file (1) only in New Jersey; (2) on behalf of themselves only and not as a class action, and (3) only after a motion for class certification in Engineers is denied and any and all appeals are resolved; and

IT IS HEREBY FURTHER AGREED AND ORDERED that nothing in this Consent Order shall impair Merck's rights and defenses including, but not limited to, its right to assert a statute of limitations defense.

IT IS FURTHER HEREBY AGREED AND ORDERED that any statute of limitations defense Merck may have had as of the date of the filing of Plaintiffs' original Complaint is preserved.  However, the running of the statute of limitations, if it has not already expired, is

tolled until an order denying a motion for class certification in the Engineers matter is entered

or, if an appeal of such an Order is filed, (1) the date of the filing of a final opinion affirming

the denial of class certification or, (2) in the case of an affirmance without an opinion pursuant

to R. 2:11-3(e), the filing of a final order affirming denial of class certification.

SO ORDERED:

Honorable Carol E. Higbee, J.S.C.

Jan. ~~February~~ 30 , 2004

AGREED AND CONSENTED TO:

SEEGER WEISS LLP

By: _____

CHRISTOPHER A. SEEGER
550 Broad Street, Suite 920
Newark, NJ 07102-4573
Telephone: (973) 639-9100
Attorneys for Plaintiffs

HUGHES HUBBARD & REED LLP

By: WILFRED P. CORONATO
101 Hudson Street, Suite 3601
Jersey City, New Jersey 07302-3918
Telephone: (201) 536-9220
Telecopy: (201) 536-0799
Attorneys for Defendant Merck & Co., Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


PENNSYLVANIA EMPLOYEE BENEFIT )
TRUST FUND, on behalf of      )
itself and all others         )
similarly situated, JOSEPH    )
MACKEN, and COMMISSIONER LINDA )
A. WATTERS,                   )
                              )
        Plaintiffs,           )
                              )
    v.                        )   Civ. No. 05-075-SLR
                              )       (Lead Case)
ZENECA, INC. and ASTRAZENECA  )
PHARMACEUTICALS, L.P.,        )
                              )
        Defendants.           )


**O R D E R**

At Wilmington this 8th day of November, 2005, consistent

with the memorandum opinion issued this same date;

IT IS ORDERED that defendants' motion to dismiss (D.I. 32)

is granted.



_____
United States District Judge


EXHIBIT

3

Blumberg No. 5119