

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 22 P 3: 14

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF WAYNE A. RAY, PH.D.

This Court has already recognized that Wayne A. Ray, Ph.D. is neither a medical doctor nor an expert in FDA regulatory matters and that he cannot testify to matters requiring expertise in either field. (*See* Nov. 18, 2005 Order and Reasons at 32-33.) Nevertheless, Professor Ray – a statistician who holds degrees in biostatistics and computer science – continues to offer opinions that require knowledge of medicine and pharmacology and fall far beyond his area of expertise. In his updated expert report, for example, Professor Ray expands on opinions about

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

796946v.1

the pharmacological viability of the FitzGerald hypothesis and his assessment of the overall medical risks and benefits of Vioxx®. He lacks qualifications and reliable scientific evidence for his opinions on both counts. Merck incorporates by reference its motion to exclude Professor Ray's testimony (*see* Mot. to Exclude Test. of Wayne Ray, Ph.D., filed October 21, 1005, Record Docket No. 1117 ("Mot. to Exclude Ray")), and hereby supplements that motion to address Professor Ray's attempts to expand on these areas of inadmissible testimony.

I.   **PROFESSOR RAY CANNOT TESTIFY ABOUT THE VIABILITY OF THE FITZGERALD HYPOTHESIS.**

Professor Ray's updated report suggests that he may attempt to opine on details about the mechanism by which Vioxx purportedly causes a prothrombotic state and increases the risk of heart attack – details that require scientific knowledge far beyond the bounds of his own expertise. Specifically, Professor Ray appears poised to opine that it is not only plausible that COX-2 inhibitors reduce prostacyclin in the human body (as posited by the FitzGerald hypothesis) but also that COX-2 inhibitors actually reduce prostacyclin in human vasculature. He claims that "Merck has argued that coxibs don't necessarily affect arterial prostacyclin, given that [FitzGerald's studies showed only that patients treated with Vioxx contained lower levels of a metabolite of prostacyclin in the urine]. However, recent studies confirm that the effect of [Vioxx] is on arterial prostacyclin." (Expert Report of Wayne A. Ray, Ph.D., dated Jan. 11, 2006 and filed Jan. 13, 2006 ("Ray Rpt.") at 31, attached to Declaration of Phillip A. Wittmann in Support of Merck's *Daubert* Motions ("Wittmann Decl.") at Ex. 3.) Professor Ray lacks the qualifications or scientifically reliable evidence necessary to proffer an opinion on this subject.

Professor Ray is not a pharmacologist and does not consider himself an expert in pharmacokinetics. (Rough Transcript of Jan. 19, 2006 Deposition of Wayne Ray taken in *Plunkett v. Merck* ("Rough Ray *Plunkett* Dep.") at 121:4-14, 192:14-193:10, attached to the

796946v.1

Wittmann Decl. at Ex. 1.) He expressly concedes that he lacks knowledge of pharmacology beyond that necessary to evaluate whether a mechanism is plausible. (*Id.* at 121:7-14, 192:14-193:10.) Therefore, he has no qualifications to opine about whether Vioxx actually suppresses prostacyclin in the human vasculature or any details about that subject. His testimony also demonstrates that he plainly lacks the knowledge, let alone expertise, needed to proffer such opinions. Professor Ray admitted, for example, that he does not know how much prostacyclin must be suppressed before one could observe a clinical effect. (*Id.* at 115:23-116:11.) Professor Ray also admits that he does not know anything about the period of time Vioxx purportedly impacts prostacyclin, noting that the issue relates to the pharmacokinetics of the drug and is not a question he has examined. (*Id.* at 114:20-24, 123:2-23.)

Moreover, there is no reliable scientific evidence supporting the theory that Vioxx suppresses prostacyclin in the vasculature. Professor Ray cites two articles for the proposition that "recent studies confirm the effect of [Vioxx] is on arterial prostacyclin." (Ray Rpt. at 31.) But neither is adequate. The first is a study performed on genetically altered mice.[1] Notably, the mice were *not* exposed to Vioxx or any other COX-2 inhibitor. The study showed only that total elimination of prostacyclin activity caused by genetic elimination of prostacyclin receptors impacted mouse vasculature. Putting aside that the study analyzed mice and not humans, it did not show anything about whether Vioxx (or other COX-2 inhibitors) actually suppresses prostacyclin in the vasculature. Similarly, it did not show anything about whether mere reductions in prostacyclin (as opposed to its elimination) would have any clinical significance.[2]

---

[1] *See* Ray Rpt. at 31, citing Rudic, RD, et al., *COX-2 Derived prostacyclin modulates vascular remodeling*, Circ Res 2005; 96:1240-1247.

[2] In any event, because Professor Ray is not a medical doctor, he is not qualified to opine on clinical significance.

Moreover, though ignored by Professor Ray, pharmacological studies in which the subjects (both animal and human) were actually exposed to Vioxx suggest that Vioxx does *not* reduce prostacyclin in the vasculature. For example, in a rabbit study completed in early 1999 and later published in the peer-reviewed literature, Merck Frosst researchers observed that COX-1, not COX-2, appeared responsible for prostacyclin synthesis in the coronary arteries.[3] Vioxx, which inhibits only COX-2, did not reduce arterial prostacyclin. *Id.* In a canine study, Merck Frosst researchers found that prostacyclin synthase, another enzyme involved in producing prostacyclin, was locally associated with COX-1 rather than COX-2 in the blood vessels, again suggesting that COX-1 rather than COX-2 is responsible for prostacyclin production in the blood vessels.[4] And in an arm laceration study conducted on human volunteers, outside researchers observed that Vioxx did not reduce the level of prostacyclin in the blood at the site of the injury.[5] These researchers similarly concluded that COX-1, not COX-2, appears to be the source of prostacyclin in the blood vessels. *Id.*

The second article cited by Professor Ray similarly does not support his claim that COX-2 inhibitors suppress prostacyclin in the vasculature. Specifically, Professor Ray points to a review article by Dr. Patrono noting the hypothesis that "vascular [prostacyclin] is derived

---

[3] Wong E, et al., *Effects of COX-2 Inhibitors on Aortic Prostacyclin Production in Cholesterol-Fed Rabbits*, ATHEROSCLEROSIS 2001 Aug; 157(2):393-402.

[4] Singer II, et al., *COX-1 Is the Major Isoform of Cyclooxygenase Co-Localized with Prostacyclin Synthase in Normal Dog Aortic Endothelium*, INFLAMM RES 2003; 52:588, IS/18 (abstract). This study also found that prostacyclin synthase *was* locally associated with COX-2 in lung cells, suggesting that Vioxx-induced reduction of urinary prostacyclin metabolites may reflect reduced prostacyclin production in the lungs. *Id.*

[5] Tuleja E, et al., *Effects of Cyclooxegenases Inhibitors on Vasoactive Prostanoids and Thrombin Generation at the Site of Microvascular Injury in Healthy Men*, ARTERIOSCLER THROMB VASC BIOL. 2003 Jun 1; 23(6):1111-15.

predominantly from COX-2."[6] Dr. Patrono, however, cites only to FitzGerald's studies analyzing the reduction of prostacyclin metabolites in the urine. These studies do not establish that COX-2 inhibition reduces prostacyclin in the vasculature. On the contrary, they acknowledge that the question is unanswered.[7] Dr. Patrono's citation of these urine studies in a review article adds nothing new to the analysis and certainly does not support the theory that vascular prostacyclin is derived predominantly from COX-2. Professor Ray's purported reliance on these articles for a proposition they do not support simply underscores his lack of expertise in pharmacology. He has no basis to offer any opinions to the jury about the pharmacological viability of the FitzGerald hypothesis.

## II. PROFESSOR RAY CANNOT TESTIFY ABOUT MEDICAL JUDGMENTS, INCLUDING WHETHER RISKS OF VIOXX OUTWEIGH BENEFITS OR WHETHER THERE ARE "SAFER ALTERNATIVES" FOR PATIENTS.

In his January 2006 report, Professor Ray opines that overall "naproxen is a safer drug than [Vioxx]." (Ray Rpt. at 18-19.) And despite the Court's specific ruling that Professor Ray "may not opine on [what doctors should prescribe to patients]" (Nov. 18, 2005 Order and Reasons at 32), Professor Ray continues to offer his opinion that "given the findings of the VIGOR study, a much less risky strategy for patients would be to use naproxen with a drug such as a PPI [proton pump inhibitor]." (Ray Rpt. at 18.) Professor Ray lacks the qualifications or reliable scientific evidence necessary to opine about (1) whether the purported risks of Vioxx outweigh the benefits, and (2) whether there are "safer alternatives" than Vioxx for patients.

As the Court noted in its November 18, 2005 *Daubert* Order, Professor Ray "is not a

---

[6] Patrono C, et al., *Low-dose aspirin for the prevention of atherothrombosis*, N. Engl. J. Med. 2005; 353:2373-2383.

[7] *See, e.g.,* Catella-Lawson F, et al., *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics and Vasoactive Ekosanoids*, J. PHARMACOL. EXP. THE. 1999 May; 289(2):735-41.

medical doctor" and "is not qualified to testify as to the risk-benefit analysis performed by medical doctors." (Nov. 18, 2005 Order and Reasons at 32). Moreover, the Court found that Professor Ray "may not testify to his disapproval of [regulatory] actions taken by the FDA" because "he does not have experience in this field." (*Id.* at 33.) Professor Ray lacks the requisite expertise to assess the overall benefits and risks of Vioxx from either a medical or regulatory perspective. He similarly lacks the qualifications to opine on whether, after VIGOR, there were safer alternatives than Vioxx for patients at risk of GI complications from NSAID use. Because he has no medical training, Professor Ray cannot supplant the medical judgment of thousands of physicians who, aware of the VIGOR results, continued to prescribe Vioxx.

In addition, there is no reliable scientific evidence to support either opinion. First, the stated basis for Dr. Ray's risk-benefit opinion is not a relevant comparison. Professor Ray predicates his risk-benefit opinion solely on his observation that in VIGOR, the difference in serious adverse cardiovascular events favoring naproxen slightly exceeded the difference in serious adverse gastrointestinal events favoring Vioxx. (Dec. 2, 2005 *Plunkett* Tr. at 848:11-25[8]; Ray Rpt. at 17-18.) VIGOR, however, compared a common therapeutic dose of naproxen (1000 mg per day) with *double* the maximum recommended chronic dose of Vioxx (50 mg per day). The maximum recommended chronic dose of Vioxx – and the dose used by Mr. Irvin – was 25

---

[8] Specifically, Dr. Ray testified as follows:

> Q: Do you have an opinion whether the risks of Vioxx in causing heart attacks and death outweighs the GI benefits?
>
> . . .
>
> [A.] The findings of the VIGOR study clearly show that it was. There were 9.4 extra cases of serious cardiovascular disease per thousand patients, and 7.8 serious ulcer complications prevented. So it's more serious heart disease caused than ulcers prevented. And that's pretty clear-cut.

(Dec. 2, 2005 *Plunkett* Tr. at 848:16-25, attached to the Wittmann Decl. at Ex. 5.)

6

796946v.1

mg per day. As the FDA has noted, "[t]he higher dose of rofecoxib was used in the VIGOR trial to provide a 'worst case' estimate of the risk of serious GI bleeding for rofecoxib in comparison to naproxen." (Apr. 6, 2005 FDA Decision Memo ("FDA Memo") at 9 n.5, attached to the Wittmann Decl. at Ex. 6.)

A comparison based on a clinical trial designed to produce a "worst case" estimate of adverse gastrointestinal effects on Vioxx using a non-recommended dose does not and cannot constitute reliable scientific evidence that the risks of Vioxx outweighed its benefits. Such a comparison says nothing about the comparative risks and benefits of Vioxx when used, as Mr. Irvin used it, at the recommended dose of 25 mg. Tellingly, when Dr. Ray reviewed the VIGOR data in 2000, he urged caution on the 50 mg dose but raised no questions about the safety of the 25 mg dose. (Dec. 2, 2005 *Plunkett* Tr. at 800:4-14.) His own observational study, published in 2002, found no increased risk from 25 mg (*id.* at 779:11-15, 779:25-780:12), a conclusion consistent with all the placebo-controlled clinical trial data available up to that time, including the interim cardiovascular results of Merck's two large Alzheimer's studies. (*E.g.*, Dec. 1, 2005 *Plunkett* Tr. at 673:24-675:10.) Professor Ray thus has no reliable basis for opining that the risks of Vioxx at 25 mg per day (the dose used by Mr. Irvin) outweighed its benefits.

Second, there is no reliable scientific evidence to support Professor Ray's opinion that use of a PPI with naproxen, or any NSAID, would reduce GI risk and amount to a "safer alternative" than Vioxx. Professor Ray conceded in a July 13, 2005 deposition that he could not point to a single study that supports his theory.

> Q: Doctor, are there any studies that you're aware of that demonstrate that use of a PPI with naproxen, or any NSAIDs for that matter, would reduce the risk of lower gastrointestinal bleeding, lower tract gastrointestinal bleeding?
>
> A: I'm not aware of any such studies.

(*See* Mot. to Exclude Ray at 11, citing *Humeston* Dep. at 155:4-10.) At his most recent

7

deposition on January 19, 2006, Professor Ray further acknowledged that there are no studies that compare the safety of the combined use of PPIs and NSAIDs with the safety of Vioxx (or any other COX-2 inhibitor). And he conceded that PPIs themselves have "serious side effects," including "substantial morbidity and mortality."

> Q: Is it a true statement that you're not aware of any studies that have been conducted comparing the relative . . . gastrointestinal safety of coxibs versus NSAIDs plus PPIs?
>
> A: Not adequately powered ones.
>
> . . .
>
> Q: Fair to say that we don't know whether or not yet from a gastrointestinal perspective [that PPIs] are as safe or not as using coxibs when used in conjunction with NSAIDs?
>
> A: We don't have a direct comparison of the two; that's correct.
>
> Q: . . . Have you done a study of the side effects of PPIs?
>
> A: No.
>
> Q: They – there are serious side effects of PPIs, true?
>
> A: Absolutely.
>
> Q: That include some things that have substantial morbidity and mortality, fair?
>
> A: Yeah. We have to distinguish between the proven ones and the suspected ones.

(Rough Ray *Plunkett* Dep. at 185:5-186:9.) Thus Professor Ray admits that he has no basis to opine that traditional NSAIDs combined with PPIs provide a safer alternative.

The FDA likewise has confirmed that there is no support for Professor Ray's theory that use of PPIs with NSAIDs provides a safer alternative than Vioxx. The FDA explicitly found that the overall benefit of "other strategies for reducing the risk of GI bleeding following chronic NSAID use (*e.g.*, concomitant use of a non-selective NSAID and a proton pump inhibitor)" remain uncertain. (FDA Memo at 2.) The FDA also found that, from a cardiovascular

standpoint, traditional NSAIDs are not necessarily safer than COX-2 inhibitors (*id.* at 1-2, 10-11), and that Vioxx was the only approved COX-2 selective drug shown to reduce the risk of serious GI bleeding compared to chronic use of a non-selective NSAID (*id.* at 2). Moreover, the FDA noted that this "[i]mproved GI tolerability . . . is an important issue from an individual patient and public health perspective and is, at least in part, a valid rationale for maintaining a range of options in the NSAID class from which physicians and patients may choose." (*Id.* at 11-12.) The suggestion that the combination of a non-selective NSAID and a proton pump inhibitor would be clinically superior to Vioxx is pure speculation and Professor Ray has no basis for offering such an opinion.

### III.  CONCLUSION.

For all the forgoing reasons and the reasons discussed in Merck's initial moving papers, Merck respectfully requests that the Court grant its motion to exclude Professor Ray's testimony in its entirety.

Respectfully submitted,

*[signature]*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

796946v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Supplemental Brief in Support of Motion of Merck & Co., Inc. to Exclude Testimony of Wayne A. Ray, Ph.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 23rd day of January, 2006.

_Dorothy H. Wimberly_

796946v.1