UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 05-4046 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT as Personal Representative of the Estate of RICHARD IRVIN, JR., | * | |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF THOMAS BALDWIN, M.D.**

For the first trial of this action, plaintiff designated Thomas Baldwin, M.D., a cardiologist, as an expert witness who would opine that taking Vioxx® was a contributing cause of Mr. Irvin's death. The Court twice ruled unequivocally – and correctly – that Dr. Baldwin was not qualified to give such an opinion and that such testimony was inadmissible under Federal Rule of Evidence 702. Plaintiff has again designated Dr. Baldwin as an expert on the same topic. His testimony should again be excluded on the same basis. There has been no material change in Dr. Baldwin's knowledge and experience that would now qualify him to give the opinions that the Court previously excluded, and he admits he has only spent 10 hours on the

797283v.1

case since he last testified. Instead, both his updated expert report and his deposition taken this month confirm that he remains unqualified to do so. Accordingly, Merck renews and incorporates herein by reference its prior motion to exclude his testimony (*see* Merck & Co., Inc.'s Motion To Exclude Testimony of Thomas Baldwin, M.D., filed October 21, 2005, Record Docket Number 1121), and, in this memorandum, supplements that motion to show why Dr. Baldwin's anticipated opinions remain inadmissible.

## I. THE COURT RULED TWICE IN THE PREVIOUS TRIAL THAT DR. BALDWIN WAS NOT QUALIFIED TO TESTIFY THAT TAKING VIOXX CAUSED MR. IRVIN'S DEATH.

Plaintiff called Dr. Baldwin to testify in the first trial on December 1, 2005. (*See* Dec. 1, 2005 Transcript at 487-533, attached to Declaration of Dorothy H. Wimberly in Support of Merck's Supplemental Brief in Support of Merck's Motion for Order Excluding Testimony of Thomas Baldwin, M.D. ("Wimberly Decl.") at Ex. 3.) In response to Merck's objection, the Court ruled from the bench that Dr. Baldwin would not be permitted to testify "as to the part, if any, that Vioxx or COX-2 inhibitors played in Mr. Irvin's death." (*Id.* at 507:6-8.) The Court concluded that he was not qualified "by virtue of experience [or] training" to testify on that subject. (*Id.* at 507:8-10.)

> The Court reiterated this ruling in response to plaintiff's motion for reconsideration:
>
> [N]either Dr. Baldwin's knowledge, skill, experience, training, or education, even when considered in their totality, qualify him to testify as to the specific role that Vioxx played in Mr. Irvin's death. Dr. Baldwin simply lacks the necessary qualifications to reach his proffered opinion on the subject.

(Dec. 3, 2005 Order & Reasons at 7.)

In determining that Dr. Baldwin was not qualified, the Court considered a host of factors that emerged from his deposition and trial testimony. (*Id.* at 2.) These included the fact that Dr. Baldwin had little to no experience with either Vioxx or any other COX-2 inhibitor.

2

797283v.1

Specifically, he had never conducted research regarding any such drugs nor prescribed any to his patients. He had also never diagnosed a Vioxx-related cardiovascular adverse event in one of his patients. (*Id.* at 4.) Further, the Court noted that he frequently displayed a fundamental misunderstanding of the "relevant scientific literature." (*Id.* at 6.) Indeed, Dr. Baldwin himself acknowledged that he was not an expert on COX-2 inhibitors. (*Id.* at 7.) For these reasons and more, the Court's conclusion that he was not qualified to address the effect of Vioxx in his testimony was certainly correct.

## II. NOTHING HAS CHANGED SINCE DECEMBER 2005 TO INDICATE THAT DR. BALDWIN IS NOW QUALIFIED TO OPINE THAT SHORT-TERM USE OF VIOXX CAUSED MR. IRVIN'S DEATH.

Dr. Baldwin recently submitted an updated report (Expert Report of Thomas Baldwin, dated January 13, 2006 ("Baldwin Rpt."), attached to the Wimberly Decl. at Ex. 2), and he was briefly deposed again on January 23, 2006. He lists certain additional materials he states he reviewed or "had available" in preparing his updated report (Baldwin Rpt. at 3), and the opinions stated in the report are given with additional detail not provided in his earlier report. Nonetheless, Dr. Baldwin acknowledges that in the retrial he would give essentially the same opinions that he summarized in his original report or gave while he was on the stand in December. (Rough Transcript of 1/23/06 Deposition of Thomas Baldwin ("Rough Baldwin Dep.") at 13:5 - 15:13, attached to the Wimberly Decl. at Ex. 1.) In other words, he still intends to opine that Mr. Irvin's ingestion of Vioxx for a period of less than one month "caused or substantially contributed to cause the development of an acute thrombosis which resulted in coronary occlusion, subsequent cardiac ischemia, a clinically evolving acute myocardial infarction, and the sudden death of Mr. Irvin." (Baldwin Rpt. at 16.)

However, his new report and recent deposition make perfectly clear that he remains unqualified to give that opinion. The same factors that led the Court to exclude his testimony in

the first instance are still present – an outcome that is hardly surprising since it has been only a few weeks since he testified. For example:

- He has still never diagnosed a patient as having had an adverse thrombotic event caused by Vioxx or any other COX-2 inhibitor, apart from the opinion he developed specifically with respect to Mr. Irvin's death. (Rough Baldwin Dep. at 15:14-16:9)

- Apart from the literature review done for this case, he has still never conducted any research with respect to any NSAIDs, nor ever published anything on COX-2 inhibitors or NSAIDs generally. (*Id.* at 2:16- 3:5.)

- He has never consulted with the FDA. (*Id.* at 3:21-23.)

- Since graduating from medical school, he has done no basic research in basic pharmacology. (*Id.* at 3:24-4:9.)

In short, nothing material is any different, and there is no basis for the Court to change its prior ruling.

Nor can the additional materials that Dr. Baldwin reviewed or "had available" when his updated report was prepared cure his lack of qualification to testify. His updated report lists 25 additional articles (most of which were identified and provided by plaintiff's counsel), two additional depositions (Curfman and Topol), and an additional expert report that his original report did not identify as materials that he read or that were available to him. (Baldwin Rpt. at 8-10.) Yet Dr. Baldwin's best estimate of the amount of time he has spent on this matter since he was on the stand in December, including preparation of the new report, is 10 hours. (Rough Baldwin Dep. at 10:10–24.) Plainly, he cannot have gained sufficient knowledge from that amount of work to overcome the deficiencies in his qualifications that the Court identified in its two December rulings. *Cf. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (objective of trial court's "gatekeeping" responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

Further, Dr. Baldwin continues to exhibit the same "fundamental lack of understanding of the relevant scientific literature" that the Court referred to in its December 3 order reiterating that his testimony would be excluded. (Dec. 3, 2005 Order & Reasons at 6.) Just as in his first deposition, in his January 2006 deposition he repeatedly could not explain or recount the results of studies and trials that he purported to have reviewed in connection with updating his report. For example, he could not address the Alzheimer's studies with any degree of specificity and relied exclusively on comments about the studies contained in Professor Ray's report, even though he purported to dismiss the predictive value of one of those studies. In turn, he could provide virtually no specifics about how Professor Ray's analysis, upon which he purports to rely, was itself conducted. (Rough Baldwin Dep. at 36:22–44: 19.)[1] And he could recall little about a major article appearing in October 2003 summarizing the results of all of the clinical trials of Vioxx that had been conducted as of the date of the article's publication. (*Id.* at 26:5-36:3.)[2]

Finally, although the Court couched its prior rulings primarily in terms prohibiting Dr. Baldwin from testifying on the subject of specific causation, it follows from Dr. Baldwin's well-documented lack of expertise in the area of the cardiotoxic effects of Vioxx that any testimony he might offer on general causation is inadmissible under Rule 702 as well. As the Court noted when Dr. Baldwin testified in December,

---

[1] Dr. Baldwin was equally at sea when attempting to explain his understanding of the nature, value, and proper analysis of data from the VICTOR and ViP trials. After some initial confusion, he acknowledged that he knew about data from those trials only from relying on Professor Ray's report, which purports to analyze them. His testimony made clear that he offers no independently derived analysis or understanding of the data. (Rough Baldwin Dep. at 80:20-87:19.) In fact, he ultimately admitted that he does not even know if the analysis of data from those trials that Professor Ray performed is correct. (*Id.* at 88:9-14.)

[2] Weir, M., et al., *Selective COX-2 inhibition and cardiovascular effects: A review of the rofecoxib development program*, AMERICAN HEART JOURNAL 2003 Oct.; 146:591-604.

> This individual is a cardiologist, but he knows nothing about Vioxx. He knows nothing about COX-2 inhibitors other than what he's read. He has no personal experience with it, no training in it. He's not an epidemiologist. He's not a research scientist. He doesn't consider himself an expert in Vioxx. He doesn't consider himself an expert in COX-2 inhibitors.

(Dec. 1, 2005 Transcript at 510:19-25.)

### III.  **CONCLUSION.**

Even though he is not a pharmacologist, Dr. Baldwin's updated report contains the self-serving assertion that he considers "the cardiotoxic effects of [Vioxx]" to be within his area of expertise. (Baldwin Rpt. at 2.) But it is the Court's function to determine whether he is qualified as an expert under Rule 702, of course, and the Court has already ruled twice that, given his training, knowledge, and experience, Dr. Baldwin is not qualified under the rule. Indeed, Dr. Baldwin himself is compelled to acknowledge that he is "not an expert *per se* in Vioxx." (*Id.*) His updated report and recent deposition make it clear that his self-proclaimed "expertise" does not meet the requirements of Rule 702 governing the admissibility of expert testimony. And they demonstrate that the Court was correct in its prior rulings that Dr. Baldwin is not qualified to address the effects of Vioxx. For the reasons set forth in this memorandum and in Merck's prior memoranda in support of its renewed motion, the Court should exclude Dr. Baldwin's testimony.

Respectfully submitted,

*Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:    504-581-3361
Defendants' Liaison Counsel

6

797283v.1

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax:    (202) 434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: (213) 430-6000
Fax:    (213) 430-6407

Attorneys for Merck & Co., Inc.

797283v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing Supplemental Brief in Support of Motion of Merck & Co., Inc. For Order Excluding Testimony of Thomas Baldwin has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 25th day of January, 2006.

*Dorothy A. Wimberly*

797283v.1