**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**



| | |
|---|---|
| In Re: VIOXX | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| This document relates to All Personal Injury Class Action Complaints Pending or Subject to Transfer to MDL 1657 | JUDGE FALLON |
| | MAG. JUDGE KNOWLES |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE
IN OPPOSITION TO MOTLEY RICE, LLP'S
MOTION FOR CLARIFICATION OF PRETRIAL ORDER NO. 19**

**I.      INTRODUCTION**

Over five months ago, on August 4, 2005, following briefing and a hearing on the matter, PTO No. 19 was entered by this Court after deliberate and careful consideration of the ramifications of any MDL assessment on state and federal coordination. The language selected for both the Order and the Agreements accompanying the Order were chosen for their precision, clarity and effect.

Now into Court comes Motley Rice, LLP seeking to challenge and disrupt the certitude of the Court's Order under the guise of correcting mistakes arising from oversight or omission. However, Motley Rice's motion is premised upon its concern regarding speculative future disputes, not the actual language of the Order. There is no concrete example of a disputed assessment to sustain movant's argument which, without context, is premature and warrants no further examination of the propriety of the Order. Even if the Court was inclined to consider the hypothetical assessment dispute raised by Motley Rice, LLP, there is no need for clarification as the plain language of the Order and Agreements soundly address those situations in which the Limited

Waiver Option applies.

Accordingly, the motion should be denied.

## II.   FACTUAL BACKGROUND

PTO No. 19 provides a means to compensate and reimburse attorneys for services rendered and expenses incurred for MDL administration and common benefit. The method employed to compensate certain counsel is through the MDL assessment on cases that are subject to the jurisdiction of the Court.[1]

The Order affords several options to litigants regarding how they can coordinate with the MDL viz. the assessment. Through PTO No. 19, counsel with federal cases, state cases or both, can obtain and use MDL work-product consistent with the limitations imposed by the Order. In particular, PTO No. 19 provided three (3) methods by which counsel could coordinate with the PSC: a Full Participation Option or FPO (allowing attorneys with both state and/or federal cases to coordinate with the MDL on an assessed basis of 3% for all cases if they signed on within 90 days of entry of the Order); a Traditional Assessment Option or TAO (sequestering 6% of plaintiffs recoveries in federal cases and 4% of plaintiffs' recoveries for cases pending in state court for those plaintiffs that consent to coordination of all of their cases); and a Limited Waiver Option or LWO (available for those attorneys not taking advantage of the FPO or TAO, this 6% assessment attaches only to the federal cases of those counsel with federal and state cases that received the MDL work-product after agreeing not to use the work-product in their non-participating state cases).

---

[1] Ordinarily, without voluntary coordination state court litigants are not subject to the court's authority. *See In re Showa Denko K.K. L-Tryptophan Products Liability Litigation II*, 953 F.2d 162 (4th Cir. 1992). Thus, state litigants would not be assessed unless their counsel voluntarily agreed to participate through the Full Participation Agreement or the Traditional Assessment Option.

2


Motley Rice, LLP is one of many law firms that are prosecuting Vioxx litigation. Motley Rice, LLP, along with a cadre of other firms, have chosen to litigate their clients' cases primarily in state forums. Spokespersons for this coalition have chosen to avoid the MDL, "to avoid fees imposed on multidistrict litigation participants." Martinez, *Vioxx Plaintiffs Want to Fight on New Front*, Wall St. J., Oct. 24, 2005, at B1 (attached as Exhibit 2 to Motley Rice LLP's motion). The coalition's effort to avoid the MDL assessment has led these counsel to restrict their case filings primarily to New Jersey state court where litigation is ongoing. That same impetus to avoid the MDL assessment drives the instant motion as Motley Rice has a few federal cases within the MDL that are subject to the "lone MDL assessment" of PTO No. 19 on federal cases. Having signed an LWO, Motley Rice, LLP, now wants assurances that its use of MDL work-product limited to its federal cases will not expose the remainder of its inventory of cases to the MDL assessment, as the Order already clearly provides.[2]

Motley Rice, LLP is cognizant that discovery is occurring on several tracks in New Jersey, the MDL and other jurisdictions. The discovery taking place in the MDL is progressing strongly. Based on the work-product of MDL counsel, revelations about Merck, based on already existing document productions, have and continue to come to light. For example, critical depositions of

---

[2]Many counsel, including all members of the PSC and other counsel litigating in this MDL and state courts, have signed onto the Full Participation Option, subjecting their state and federal cases to an assessment. The PSC members, as well as certain other counsel, have arduously worked on the path of creating a work-product for both state and federal cases, solely state cases and/or solely federal cases. Motley Rice, LLP's proposed relief performs a disservice upon those who have labored to create this common benefit. That proposed relief is both inequitable and unfair and would create an unwarranted special privileged class. Those similarly situated who have been principal litigators in both New Jersey and this MDL to a greater extent than Motley Rice, LLP, such as Kline & Spector and Seeger Weiss, have fully supported the requirements and obligations of PTO 19.

outspoken critics of Merck's conduct as it relates to Vioxx have taken place as the result of MDL spearheaded efforts. In addition, previously undisclosed data, including improperly asserted privileged documents have been produced to the Court for *in camera* inspection.[3] Such depositions, that reflect the appreciation of the information residing in the numerous documents produced in Vioxx litigation, as well as expert reports, are some of the key contributions the PSC brings to the MDL work-product. This work-product is a valuable asset and many counsel around the country have recognized the intrinsic worth of this work-product by agreeing to the terms of PTO No. 19. *See generally Hickman v. Taylor*, 329 U.S. 495, 510 (1947)(work product consists of the assembly of information, sifting what the lawyer considers to be the relevant from the irrelevant facts, preparation of legal theories and planning of strategy).

Apparently, Motley Rice, LLP wants to broadly use the MDL work-product. However, as it has agreed to the LWO, it is entitled to receive the MDL work product based upon its representation that it will not employ this material in its state court cases. The LWO expressly states:

> WHEREAS, the Requesting Attorney has affirmatively stated that he or she will not use the PSC work product in their state cases.
> NOW, THEREFORE, in consideration of the covenants contained herein and intending to be legally bound, the parties agree as follows:
> 1. Subject to proper payment for the actual costs of providing the materials, the PSC will provide the Requesting Attorneys with PSC work product materials and any supplements thereto on a prompt and timely basis.
> 2. The Requesting Attorneys expressly agree that the materials supplied by the PSC to the Requesting Attorneys under the terms of this Agreement will be used solely for purposes of prosecuting federal cases which are or have been subject to consolidated or coordinated pretrial proceedings in MDL 1657.

---

[3]The PSC expects that the results of this *in camera* inspection will soon result in Merck losing the confidential status of a wealth of previously undisclosed documents in the MDL.

> 3.      The Requesting Attorneys further agree and expressly represent that they will **NOT** use the materials supplied by the PSC hereunder for purposes of prosecuting any litigation pending in State Court without the express written consent of the liaison counsel for the PSC.
>
> 4.      Further, the Requesting Attorneys expressly agree and represent that with respect to the materials provided to them by the PSC pursuant to this Agreement they will not provide such materials, copies of such materials, duplicates of such materials, summaries of such materials, and the like to any other attorney, person, firm or entity whatsoever.

Motley Rice, LLP would like to rewrite the agreement to avoid the restrictions of the order. However, the order is clear: if Motley Rice, LLP uses work-product derived by, created by or produced by the PSC, in its state court cases then it is subject to the assessment.

Motley Rice, LLP therefore contends that PTO No. 19 is mistaken. However, there is no "inadvertent omission" of language in the Order requiring that any documents at issue must be "exclusively supplied" by the MDL. Motley Rice LLP Brf. at 3. Motley Rice LLP contends that unless the PSC material is "exclusively supplied" by the PSC, it should not be subject to an assessment. Lacking that certainty it contends that there is the potential that it or its co-counsel could be accused of using MDL work-product simply by using documents otherwise available to non-participating state court litigants. Motley Rice, LLP recognizes that borrowing PSC's work-product materials could expose it to the MDL assessment. Thus, without this "exclusively supplied" language, Motley Rice suggests that a clerical error occurred requiring correction. The PSC disagrees.

### III. ARGUMENT

    A.    **Since PTO No. 19 Has No Errors, The Order Should Not Be Subject To Review Under Rule 60.**

Fed.R.Civ.P. 60 permits relief of judgments or orders by permitting "clerical mistakes" "arising from oversight or omission" to be corrected at any time. Here, PTO No. 19 contains no mistake, clerical or otherwise. As such, there is nothing at the moment to correct.

At a fundamental level Motley Rice, LLP concedes the propriety of PTO No. 19. Motley Rice, LLP does not contend that it was error on the court's part to recognize that federal courts possess the inherent power to appoint counsel to coordinate and manage complex multiparty litigation and to require that such counsel be paid for discharging these duties out of the proceeds of the litigation generally. *See, e.g.*, *In re Propulsid Products Liability Litigation*, MDL No. 1355, PTO No. 16 (E.D.La. Dec. 26, 2001)(set aside of 6% for federal cases and 4% for coordinating state cases); *In re Rezulin Products Liability Litigation*, MDL No. 1348, PTO No. 67 (S.D.N.Y. March 20, 2002)(set aside of 6% for federal cases and 4% for coordinating state cases); *In re Diet Drugs Products Liability Litigation*, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999) (PTO No. 467) (court set aside 9% of any recovery for cases in MDL to create fund for PMC members to be compensated); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014, 1996 WL 900349 (PTO 402) (E.D. Pa. June 17, 1996) (parties ordered to sequester 12% of recoveries for fees and 5% of recoveries for costs in order to create fund from which Court-appointed Plaintiffs' Legal Committee could seek reimbursement for the work performed on behalf of all plaintiffs); *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 982 F.2d 603, 606-07 (1st Cir. 1992); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1011-17 (5th Cir. 1977); *In*

re *MGM Grand Hotel Fire Litigation*, 660 F. Supp. at 522, 524-26.[4] Nor does the firm deny that in mass tort cases involving consolidated MDL proceedings, counsel who have been appointed by the Court to manage the litigation for the benefit of all plaintiffs should receive reimbursement for the costs expended in that effort and compensation for their services from all of the plaintiffs on a ratable basis. *In re Diet Drugs Products Liability Litigation, supra*; *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014; *In re Nineteen Appeals*, 982 F.2d at 606-07; *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1019-21. Instead, Motley Rice, LLP only disputes a speculative interpretation of the Order that to date has never been interpreted in the fashion suggested by the movant.

PTO No. 19 states precisely what it was intended to address – a means to provide compensation to the PSC for, among numerous actions, the creation of a tangible common benefit -- the PSC's work-product material. Simply because Motley Rice, LLP now has concerns about the potential effect of the agreement it entered into does not render the Order mistaken. Nor does Motley Rice, LLP's dispute over the interpretation of the Court's Order make the Order ambiguous. The plain text of the Order and the LWO provide a straightforward direction to counsel interested in using MDL work-product, *i.e.*, "the materials supplied by the PSC to the Requesting Attorneys

---

[4]The historical underpinnings of this reasoning are articulated within the "common fund" doctrine. The common fund doctrine is a principle of equity designed to prevent unjust enrichment by providing that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939); *Trustees v. Greenough*, 105 U.S. 527, 534-536 (1881); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

under the terms of this Agreement will be used solely for purposes of prosecuting federal cases." *See* LWO.[5] Quite simply, there is no error to correct.

In addition to the lack of mistake in the Order, Motley Rice's motion is defective as there has not yet been any assessment of any of its cases, federal or state. Without any concrete demonstration that PTO No. 19 is being improperly applied, there is simply no controversy for this Court to adjudicate. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Any contest regarding entitlement or non-entitlement to the assessment must await resolution of the actual final determination regarding the assessment. *See In re Diet Drugs Products Liability Litigation*, 401 F.3d 143, 159 (3d Cir. 2005). *See also Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976)(as a general rule, an order determining liability is not appealable until judgment has been entered on the amount).

At the moment, Motley Rice, LLP is simply venturing that a hypothetical situation could arise in which it might be subject to an assessment on its state court cases. Such a speculative scenario does not call for this Court to intercede, much less correct itself.[6] Unless and until a justiciable injury befalls Motley Rice, LLP, the instant motion should not be heard. At the present time, and under the present circumstances, there is no case or controversy worthy of consideration.

---

[5]This Limited Waiver Option is imposed by law on the PSC, *see Showa Denko, supra*, who have a fiduciary obligation and have been charged by this Court to create a work-product that they must make available to federal litigants. In *Showa Denko*, counsel attempted to impose a state assessment absent voluntary agreement by state litigants and were precluded from so doing. Therefore, because there is a mandate for the MDL work-product to be distributed to federal litigants, the work-product agreement provides that it cannot be utilized by the same counsel in state cases without first agreeing to the LWO. This prevents free riders. *See, e.g., Diet Drugs, supra*.

[6]The fact that the PSC drafted the agreements at issue insures that they would recognize a "clerical error" if indeed there was one.

## IV. CONCLUSION

Motley Rice, LLP may not avoid the plain import of PTO No. 19 by manufacturing an artificial ambiguity. The Order is clear and precise. It needs no correction as it is not mistaken. Accordingly, the instant motion for clarification should be denied.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

Date: January 27, 2006                By: _____
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Temporary Office:

Place St. Charles
201 St. Charles Avenue
Suite 4310
New Orleans, Louisiana 70170

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire **(on brief)**
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Matthew C. Gaughan, Esquire
Daniel C. Levin, Esquire
Michael Weinkowitz, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

Dianne M. Nast, Esquire
Jennifer S. Snyder, Esquire
RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA  17601
(717) 892-3000 (telephone)
(717) 892-1200 (telecopier)
**Vice Chairperson of the Class Action, Law and Briefing Committee**

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing pleading has been served upon Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, on the below listed individuals by e-mail and/or facsimile, and upon all parties by electronically uploading the same to Lexis/Nexis File and Serve Advanced, in accordance with Pre-Trial Order No. 8, on this the 27th day of January, 2006:

1. Carmen S. Scott, Esq.
   Motley Rice LLC
   28 Bridgeside Blvd.
   P.O. Box 1792
   Mt. Pleasant, SC 29466
   cscott@motleyrice.com

2. Perry Weitz, Esq.
   Weitz & Luxenberg
   180 Maiden Lane
   New York, NY 10038
   pweitz@weitzlux.com