

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

## MERCK & CO., INC.'S ("MERCK'S") OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS FOR DR. GREGORY CURFMAN

In its proposed deposition designations, Plaintiff has designated portions of Dr. Gregory Curfman's November 21, 2005 deposition to play during *Plunkett II*. While Plaintiff's designations are objectionable on numerous grounds, Merck wants to highlight an overarching issue for the Court to consider when ruling on Merck's objections to Plaintiff's designations: if Plaintiff is permitted to play designations beyond the scope of Plaintiff's 30(b)(6) notice, Merck (in order to expose Dr. Curfman's bias) will need to counter-designate testimony concerning Dr.

Curfman's decision to accelerate the release of the New England Journal of Medicine ("NEJM") editorial so that it would appear just as the jury began deliberations in *Plunkett I*. This, of course, would put the fact of the first trial (and by inference the first jury's failure to reach a verdict) before the jury in the retrial.

If, on the other hand, the Court limits Dr. Curfman's testimony to the scope of the 30(b)(6) notice and sustains Merck's objections to the opinion testimony that went well beyond the notice, Dr. Curfman's credibility and bias will not be an issue. In that event, Merck will not need to counter-designate testimony concerning Dr. Curfman's efforts to time the release of the editorial so as to influence the outcome of *Plunkett I*.

**Background**

Dr. Curfman was deposed in his capacity as a 30(b)(6) witness on behalf of the NEJM on November 21, 2005. Plaintiff limited the scope of the deposition to two main topics – the VIGOR manuscript and the APPROVe manuscript. (*See* 30(b)(6) Deposition Notice Schedule A, attached as Ex. 9 to the Declaration of Phillip A. Wittmann in support of Merck's Objections to Plaintiff's Deposition Designations ("Objections Wittmann Decl.").) Specifically, the scope of the deposition was limited to certain *factual* issues related to VIGOR or APPROVe. *See id.* Counsel for the NEJM confirmed the limited scope of the deposition. (*See* Nov. 16, 2005 Shaw Letter to PSC Counsel, at 1 ("As for the topics of examination listed in Schedule A, please be advised that the designee of the NEJM *will only provide factual information concerning the listed topics*.") (emphasis added), attached as Ex. 10 to the Objections Wittmann Decl.).) NEJM counsel was specific in his directive – "any attempt to ask the designee any opinion [or to] answer any hypothetical question about the significance of any information specified in the topics" was off-limits. (*See also id.* at 2 ("As stated above, the designee will not testify to the

2

significance of any of the information in those topics [listed in 2(b)]"); Jan. 17, 2006 Shaw Letter to the Court at 2 (reiterating the "ground rules" counsel laid out for the deposition of the representative from the NEJM), attached as Ex. 11 to the Objections Wittmann Decl.).)

Yet Dr. Curfman's testimony far exceeded the designated scope of the 30(b)(6) deposition. In the deposition, and over frequent objections from Merck, Dr. Curfman offered *opinion* testimony about a wide variety of topics unrelated to the specific designated areas of appropriate factual inquiry. For example, throughout the deposition, Dr. Curfman offered opinions on the naproxen hypothesis, the statistical significance of data, the accuracy of conclusions in the VIGOR manuscript, what information practicing doctors would have wanted access to in making decisions, and the significance to readers of presenting data in certain formats to NEJM readers. (*See, e.g.*, Nov. 21, 2005 Deposition of Gregory Curfman, M.D. ("11/21/05 Curfman Dep.") at 70:17-72:3, 90:16-91:2, 93:6-95:13, 111:23-112:12, 143:24-144:20, attached as Ex. 5 to the Objections Wittmann Decl.).) Dr. Curfman also offered opinions about the NEJM editorial process in general, and in particular, accorded weight to the various unidentified peer reviewers' comments. *See id.* at 248:6-250:18.

Subsequent to this deposition, the NEJM released an "Expression of Concern" concerning the VIGOR manuscript on the afternoon of December 8, 2005 – the same afternoon that the jury began its deliberations in *Plunkett I*. Because of the significance of the timing and circumstances surrounding the release of the editorial, Merck sought to take Dr. Curfman's deposition. The Court granted Merck's request. *See* Jan. 17, 2006 Court Order. Both Merck and counsel for Plaintiffs deposed Dr. Curfman on January 24, 2006, where Dr. Curfman testified to, among other topics, the timing and circumstances surrounding the release of the NEJM's Expression of Concern.

During the January 24 deposition, Dr. Curfman flatly denied that the timing of the editorial was in any way related to what was happening in *Plunkett I*. (*See* January 24, 2005 Deposition of Gregory Curfman, M.D. ("1/24/05 Curfman Dep.") at 83:21-84:6, attached as Ex. 6 to the Objections Wittmann Decl.) This testimony proved false. Dr. Curfman was confronted with internal NEJM emails showing that the editorial was originally scheduled for the December 29 publication of the NEJM, but that Dr. Curfman and his colleagues decided to move it up to December 7 or 8 to correspond to the anticipated playing of Dr. Curfman's deposition at trial. *Id.* at 87:6-91:7, 93:17-96:2. When the NEJM somehow got word that Dr. Curfman's deposition would not be played (despite its assertions to this Court that it was not in contact with Plaintiffs' lawyers), Dr. Curfman and his colleagues decided to publish the editorial early anyway. *Id.* at 97:21-98:18. The original plan was to receive a response from the VIGOR authors on December 22 and publish an editorial on December 29. *Id.* at 133:23-136:11. By rushing to release the editorial during trial, the NEJM published it before even hearing from the authors. Indeed, Dr. Curfman and his colleagues notified the lead author at 12:00 noon that the NEJM would post the editorial at 3:00pm that day. *Id.* at 144:13-144.20.

As soon as the editorial was posted on the NEJM's website, Dr. Curfman and the NEJM implemented a previously-formulated campaign to maximize the editorial's effect by issuing a press release (Press Release, Journal *Statement on the Expression of Concern*, NEW ENG. J. MED., attached as Ex. 12 to the Objection Wittmann Declaration) and having Dr. Curfman give a series of interviews to the New York Times, the Wall Street Journal, National Public Radio, the Boston Globe, and Bloomberg, among others (*See eg.* Stephen Smith, *Editor Says He Should've Challenged Vioxx Study: New England Journal Case Adds to Concerns Over Drug-Firm Studies*, BOSTON GLOBE, Dec. 10, 2005, *available at*

http://www.boston.com/business/healthcare/articles/2005/12/10/editor_says_he_shouldve_challenged_vioxx_study/, attached as Ex. 12 to the Objections Wittmann Decl.; *see eg.* Alex Berenson, *Medical Journal Criticizes Merck Over Vioxx Data*, N.Y. TIMES, Dec. 9, 2005, *available at* http://www.nytimes.com/2005/12/09/business/09vioxx.html?ex=1291784400&en=5c4a802040095f00&ei=5088&partner=rssnyt&emc=rss, Objections Wittmann Decl.; *see eg.* Snigdha Prakash, *Judge to Set New Trial Date After Vioxx Mistrial*, NPR, Jan. 9, 2006, http://www.npr.org/templates/story/story.php?storyId=5049505, Objections Wittmann Decl.; *see eg.* Angela Zimm and David Voreacos, *Merck Study on Vioxx Understated Risk, Journal Says*, Bloomberg News, Dec. 9, 2005, attached as Ex. 13 to the Objections Wittmann Decl.; *see eg.* Heather Won Tesoriero, Robert Tomsho and Ron Winslow, *Vioxx Plaintiffs Seek Mistrial After Allegation on Merck Study*, WALL ST. J., Dec. 10, 2005, attached as Ex. 13 to the attached Objections Wittmann Decl.; *see eg.* Ron Winslow, Sylvia Pagan Westphal, and Heather Won Tesoriero, *Medical Journal Says Merck Study Omitted Key Data --- Allegation Could Damage Company in Vioxx Trials; Third Case Goes to Trial*, WALL ST. J., Dec. 9, 2005, attached as Ex. 13 to the Objections Wittmann Decl.) As the Court knows, the NEJM's effort to generate widespread coverage of the editorial succeeded. While the jury began deliberating, the news media were blanketed with coverage of the editorial -- coverage that was predictably (and, from the NEJM's standpoint, intentionally) critical of Merck.

**Limiting Dr. Curfman's Deposition Testimony**

Should Dr. Curfman be allowed to testify to the wide variety of topics and opinions given in his deposition testimony, the fact that there was a December trial in this case will become an important issue in the retrial. Internal documents and Dr. Curfman's testimony relating to NEJM's efforts both to follow *Plunkett I* (they got daily updates from their public relations firm)

and to coordinate the release of the editorial with the trial are highly relevant to Dr. Curfman's credibility and bias.

The issue of Dr. Curfman's bias and his effort to influence the jury in *Plunkett I* can be avoided if Dr. Curfman's deposition testimony is limited to *factual* testimony specifically designated in the original 30(b)(6) deposition notice. Specifically, Dr. Curfman's testimony should be confined to (i) what information the NEJM received for the VIGOR manuscript and when it received that information (ii) correspondence and communication with the authors of the VIGOR or APPROVe manuscripts, (iii) rules and guidelines for authors in submitting manuscripts for review and (iv) the number of reprints of the VIGOR manuscript distributed by the Massachusetts Medical Society (parent organization of the NEJM) in each year from 2000 to the present. *See* 30(b)(6) Deposition Notice Schedule A.

Through its attached objections to Plaintiff's proposed deposition designations, Merck has identified portions of Dr. Curfman's transcript that fall outside of the scope of the scope of the designated deposition topics (Ex. 13).

\* \* \*

Accordingly, Merck requests this court to confine Dr. Curfman's deposition testimony at trial to the scope of the 30(b)(6) deposition notice. This will both conform to the scope of the 30(b)(6) notice and avoid the necessity of mentioning *Plunkett I* during the retrial.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

6

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:     202-434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing Memorandum in Support of Merck & Co., Inc. Concerning Certain of its Objections to Plaintiff's Deposition Designations for Dr. Gregory Curfman has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon Plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

*[signature]*

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED