

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT as Personal Representative of the Estate of RICHARD IRVIN, JR., | * | |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * *

**MOTION OF DEFENDANT MERCK & CO., INC. ("MERCK")
TO EXCLUDE FDA WARNING LETTERS AND INADMISSIBLE HEARSAY
STATEMENTS MADE BY FDA EMPLOYEES REGARDING VIOXX®**

**(MOTION *IN LIMINE* NO. 4)**

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, 403, 801, 802, and 803, hereby moves to exclude FDA warning letters and inadmissible hearsay made by FDA employees regarding Vioxx®. The facts

and law supporting this motion are more fully set forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude FDA Warning Letters and Inadmissible Hearsay Statements Made By FDA Employees regarding Vioxx® has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

*[signature: Dorothy H. Wimberly]*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE FDA WARNING LETTERS AND INADMISSIBLE HEARSAY
STATEMENTS MADE BY FDA EMPLOYEES REGARDING VIOXX®**

**(MOTION *IN LIMINE* NO. 4)**

In the first trial of this action, the Court reserved ruling on this motion. The Court later admitted two warning letters at trial over Merck's objection: a September 2001 Warning Letter, labeled PX 1.0006, and a December 1999 FDA letter to Merck concerning Vioxx promotional pieces, labeled PX 1.0154. Now that the Court has heard all of the evidence, it can and should exclude any such letters – as well as any other preliminary or informal communications from

FDA employees about Merck's marketing practices – from the *Plunkett* retrial. They are not probative of any issues of consequence in this case, especially since the uncontroverted evidence shows that Dr. Schirmer's decision to prescribe Vioxx to Mr. Irvin did not result from any Merck marketing activities. Moreover, FDA communications pertaining to Merck's marketing practices are inadmissible hearsay to which no hearsay exception applies. Finally, any probative value these communications might have is outweighed by the prejudicial impact, likelihood of jury confusion, and delay that their introduction would engender.

I.  **FDA WARNING LETTERS, INCLUDING THE SEPTEMBER 2001 LETTER, ARE IRRELEVANT.**

Letters from FDA employees criticizing Merck's marketing of Vioxx are clearly irrelevant, since Dr. Schirmer does not "recall ever reading and relying on any Merck promotional activities."[1] (September 6, 2005 Deposition of Christopher Schirmer ("Schirmer 9/6/05 Dep.") at 93:4-6, attached as Ex. 33 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions *in Limine* ("*Plunkett I* Wittmann Decl.").) Plaintiff's Exhibit No. 1.0006, a September 17, 2001 "Warning Letter" from FDA employee Thomas W. Abrams, is a case in point.[2]

As part of the FDA's regulatory procedures, its employees issue "untitled letters" and "Warning Letters" to companies in order to afford them an opportunity to correct perceived violations before the FDA decides whether to file an official enforcement action. *See* FDA Regulatory Procedures Manual, Chapter 10, Prior Notice, Section 10-1-3.[3] The FDA makes

---

[1] Because they are not probative of any fact of consequence in this case, letters criticizing Merck's marketing of other drugs (for example, plaintiff's exhibits 1.0976-1.0995) must also be excluded.

[2] *See also* Pl's Ex. 1.0154, a December 16, 1999 letter from FDA employee Spencer Salis, Pharm. D., referencing FDA Warning Letters regarding Vioxx promotional pieces.

[3] *Available* at http://www.fda.gov/ora/compliance_ref/ rpm/pdf/ch10.pdf.

1

clear that "[a] Warning Letter is informal and advisory" and does not constitute final agency action. *See id.*, Chapter 4, Advisory Actions, Section 4-1-1.[4] *See also Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 934 n.9 (C.D. Cal. 1996) ("FDA regulatory Warning Letters do not constitute final agency action" and therefore do not reflect a final conclusion of wrongdoing); *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 599 (5th Cir. 1995) (noting that FDA Warning Letters are "informal communications").

In the September 17, 2001 Warning Letter, admitted in *Plunkett I*, Abrams, who was the Director of the FDA's Division of Drug Marketing, Advertising, and Communication ("DDMAC"), addressed what he called "promotional audio conferences given on behalf of Merck by Peter Holt, M.D., a [Merck] press release, and oral representations made by Merck sales representatives to promote Vioxx." Abrams asserted that these marketing activities "minimize[d] the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study," that Dr. Holt minimized the risk of using Vioxx with another drug, Coumadin, and that Dr. Holt improperly promoted Vioxx for then unapproved uses such as rheumatoid arthritis, cancer, Alzheimer's disease, and gout. Abrams also asserted the legal conclusion that the enumerated marketing activities violated the Federal Food, Drug, and Cosmetic Act and asked Merck to respond.

This letter is irrelevant for multiple reasons:

- Mr. Irvin died months before the letter was sent. Abram's views on the VIGOR study and the other opinions that he expressed in the letter were unknown to Merck before Dr. Schirmer prescribed Vioxx to Mr. Irvin, and therefore are not relevant to Merck's duty to warn Dr. Schirmer.

- Dr. Schirmer did not attend Dr. Holt's audioconferences. Therefore, whatever Dr. Holt said did not influence Schirmer's decision to prescribe Vioxx to Mr. Irvin. (Schirmer 9/6/05 Dep. at 92:16-25.)

---

[4] *Available* at http://www.fda.gov/ora/compliance_ref/rpm/pdf/ch4.pdf.

2

- Dr. Schirmer could not have been influenced by the press release discussed in the letter as the press release was issued one month after Dr. Schirmer wrote the Vioxx prescription for Mr. Irvin.

- Not only was Dr. Schirmer not influenced by these precise promotional materials, he was not even aware of their subject matter – the VIGOR results – at the time he prescribed Vioxx to Mr. Irvin. (Schirmer 9/6/05 Dep. at 93:7-25.)

- Dr. Schirmer prescribed Vioxx to relieve Mr. Irvin's back pain, *not* to treat rheumatoid arthritis, cancer, Alzheimer's disease or gout (afflictions that Mr. Irvin did *not* suffer). Thus, assuming Dr. Holt made claims regarding these other conditions, and assuming contrary to fact that Dr. Schirmer heard them, Dr. Holt's claims could not have affected the decision to prescribe Vioxx.

- Dr. Holt's alleged statements about the risk of taking Vioxx with Coumadin are irrelevant because Mr. Irvin did not take Coumadin.

- The alleged oral representations by Merck sales representatives addressed in the letter also took place after Mr. Irvin died and therefore could not have caused Dr. Schirmer to prescribe Vioxx to Mr. Irvin.

- Dr. Schirmer does not recall that he was ever detailed by a Merck sales representative about Vioxx, so there was no opportunity for him to have been misled.

- Finally, the FDA employee's opinions and legal conclusions about the promotional materials discussed in the letter are irrelevant because the materials themselves are irrelevant.

In *Plunkett I*, the Court reasoned that the September 2001 Warning Letter was relevant to the case because it addressed "plaintiff's position . . . that Vioxx was rushed to market, that there was an interest in getting it out there quickly and that there was a lot of discussion and, according to them, pressure put on the FDA and others to get this done." (Dec. 5, 2005 Tr. at 1449:14-18, attached as Ex. 1 to the Declaration of Phillip A. Wittmann in support of Merck's *Plunkett II* Motions *in Limine* ("*Plunkett II* Wittmann Decl.") But, as explained in Merck's Motion to Exclude Evidence of Motive, the purported "motives" of Merck or its employees concerning new drugs in development, sales, actual or projected profitability, or competition from other medications is irrelevant and inadmissible in an action based on either negligence or strict liability. *See, e.g., Kunz v. Utah Power & Light Co.*, 913 F. 2d 599, 605 (9th Cir. 1990) (since

3

"neither motive nor intent are material in a negligence action . . . the district court could have concluded that evidence tending to prove a business motive for Utah Power's conduct was excludable as irrelevant." (internal citation omitted)); *Gray v. Hoffman-La Roche,* 82 Fed. Appx. 639, 651 (10th Cir. 2003) (defendant company's "alleged motive for failing to issue a stronger warning is immaterial to any element of [plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case") (unpublished opinion) (footnote omitted); *La Plante v. Am. Honda Motor Co.,* 27 F.3d 731, 740 (1st Cir. 1994) (holding that evidence of manufacturer's profits were inadmissible at retrial because likely prejudice outweighed any probative value and trial judge "did not alert the jury to the impropriety of punishing Honda for an unsavory motive"). Any FDA Warning Letters offered by plaintiff to show "an interest in getting Vioxx out there quickly" are thus irrelevant. (*See* Dec. 5, 2005 Tr. at 1449:14-18.) Neither Merck's marketing of drugs other than Vioxx nor FDA criticism of Merck's marketing practices has any bearing on plaintiff's claims that Vioxx allegedly caused Mr. Irvin's death or that Merck allegedly did not adequately warn Dr. Schirmer of Vioxx's known dangers. Therefore, all Warning Letters – including those on Merck's marketing of other drugs (for example, plaintiff's exhibits 1.0976-1.0995) and its marketing of Vioxx (for example, plaintiff's exhibit 1.0006) –must be excluded.

## II.   FDA WARNING LETTERS ARE INADMISSIBLE HEARSAY.

The Warning Letters are also hearsay. FED. R. EVID. 802. Plaintiff may argue that the letters fall under the public records exception of Rule 803(8) or the business records exception of Rule 803(6), but neither exception applies.

### A.   The Public Records Exception Does Not Apply.

The Court ruled in *Plunkett I* that the September 2001 Warning Letter fit the public records exception to the hearsay rule. (*See* Dec. 5, 2005 Tr. at 1449:2-4.) Merck respectfully

4

submits that this ruling was in error, and reasserts the following reasons why such letters do not meet any of the requirements for admissibility as "public records." *See* FED. R. EVID. 803(8).[5]

First, the letters do not qualify under subpart (A) as "activities of the office or agency." This exception encompasses regularly conducted or recorded activities of the agency itself; it "does not include evaluations, tentative conclusions or opinions," such as those expressed in the September 17, 2001 Warning Letter. *See* Clifford S. Fishman, 5 *Jones on Evidence* § 34:11 at 195 (2003); *Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) (to apply subdivision (A) to interim evaluative opinions of agency staff "would swallow whole Rule 803(8)(C) and its limitations"). The FDA letters on plaintiff's exhibit list provided a preliminary evaluation by FDA staff of Merck's marketing (or manufacturing) practices, and asked for a response from Merck.[6] *See* Graham C. Lilly, *An Introduction to the Law of Evidence*, § 7.19, at 312 (3d ed. 1996) (exception applicable to records of "the internal function of a particular agency" and not "observations of . . . conditions external to the office") (internal quotation marks omitted).

---

[5] Under Rule 803(8), "public records, reports and findings" are not excluded by the hearsay rule if they set forth:

> (A) the activities of the office or agency, or
>
> (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal case matters observed by police officers and other law enforcement personnel, or
>
> (C) in civil actions and proceedings against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

[6] As explained in *Professionals and Patients for Customized Care v. Shalala*, 847 F. Supp. at 1365, "Warning letters issued by the FDA are deemed to be informal communications that do not constitute final agency action. Warning letters merely establish a dialogue between the FDA and the [recipient] and do not necessarily lead to further sanctions."

5

Second, the letters do not qualify under subpart (B) as "matters observed pursuant to duty imposed by law as to which there was a duty to report." The "observed pursuant to duty" requirement requires first-hand knowledge of the information that is related. *See United States v. Chu Kong Yin*, 935 F.2d 990, 998-1000 (9th Cir. 1991) (as there was no evidence that the person who prepared the documents had first-hand knowledge, subsection (B) was not satisfied). The September 17, 2001 Warning Letter shows on its face that the authors did not have personal knowledge of the assertions they made. Moreover, the FDA has stated that it has no duty to issue Warning Letters or other such communications, and therefore such letters are not written in the course of carrying out a "duty to report." *See* Procedures Manual, *supra*, Chapter 4, Advisory Actions, Section 4-1-1 ("FDA is under no legal obligation to warn individuals or firms that they or their products are in violation of the law before taking enforcement action").

Third, the Warning Letters and other such communications are not "factual findings" that qualify as an exception under subpart (C). Communications from FDA staff precede any official enforcement action and contain allegations not based on any formal or adjudicated finding of regulatory violations. Thus, they constitute opinions rather than factual findings. *See, Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) ("Our conclusion [to exclude staff memos relating to automobile safety standards because they were not the "factual findings" of NHTSA] is in accord with other circuits that have held that interim agency reports or preliminary memoranda do not satisfy Rule 803(8)(C)'s requirements") (citations omitted); *see also City of New York v. Pullman, Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (holding that an interim recommendation by a transit authority staff member to the transit authority administrator was not a factual finding of an agency within the meaning of Rule 803(8)(C) because "the broad language did not embody the findings of an agency, but the tentative results of an incomplete

staff investigation"); *United States v. Gray*, 852 F.2d 136, 139 (4th Cir. 1988) (holding inadmissible "a tentative internal report not purporting to contain agency factual findings"). Warning Letters, such as the September 17, 2001 letter, are not the result of any hearing, and they are more in the nature of an accusation than a factual finding reached after an adversarial process. *See New Jersey Turnpike Authority v. PPE Indus., Inc.*, 197 F.3d 96, 100 (3d Cir. 1999) (New Jersey Department of Environmental Protection's "directive" to several chemical companies that "the Department believes them to be responsible" for hazardous concentrations of chemicals is more an accusation than a "finding"); Clifford S. Fishman, 5 *Jones on Evidence* § 34:22 at 211-212 (2003) ("allegations contained in an accusation or pleading should not qualify as 'factual findings'").

Finally, FDA "untitled letters," Warning Letters, and similar communications lack the trustworthiness required to fall within the exception because they do not represent the official or final position of the agency. *See Toole v. McClintock*, 999 F.2d 1430, 1434-35 (11th Cir. 1993) (holding trial court abused its discretion in admitting FDA report regarding safety of breast implants because "Rule 803 makes no exception for tentative or interim reports subject to revision and review"). Indeed, the FDA discounts such letters as a basis upon which it could be sued. *See* Procedures Manual, Chapter 4, Advisory Actions, Section 4-1-1 ("FDA does not consider Warning Letters to be final Agency action on which it can be sued."). The letters are instead informal and preliminary opinions of FDA staff, written without the benefit of a hearing or other adjudication, and should not be admitted for the truth of the matters asserted therein.

**B.     The Business Records Exception Also Does Not Apply.**

Because of their inherent lack of trustworthiness, Warning Letters are not "business records" under Rule 803(6). Rule 803(6) excepts from the hearsay rule written records, "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the

7

course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . ., unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." FED. R. EVID. 803(6). These letters plainly do not qualify. They are prepared as a precursor to a potential enforcement action and thus are akin to reports prepared in anticipation of litigation, which do not qualify as exceptions to the hearsay rule. *Cf. Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943) (rejecting admission of an accident report because, although it was arguably made in the regular course of business, its purpose was to protect the company in litigation, and thus it lacked trustworthiness, which is "the basis of the [business records] rule").

### III. OTHER UNOFFICIAL STATEMENTS BY FDA EMPLOYEES ARE INADMISSIBLE HEARSAY STATEMENTS THAT DO NOT QUALIFY FOR EXCEPTION FROM THE HEARSAY RULE.

Like FDA Warning Letters, statements of personal opinion by FDA employees, whether or not made in the scope of their employment, are not official statements of the FDA and thus are also inadmissible hearsay.

Unofficial statements made by FDA employees are not "public records." Examples of such hearsay statements are internal e-mails exchanged between FDA staff members and statements made by FDA employees to the media discussing their personal ideas and opinions regarding Merck or Vioxx. Another example is Dr. David Graham's statements to Congress regarding his personal opinion regarding the safety of Vioxx. These are not the ideas and opinions of the FDA. Instead, they are merely hearsay statements from lower-level employees who lack the authority to represent the official position of the FDA.[7] These unofficial statements

---

[7] *Cf.* 21 C.F.R. § 10.85(k) ("A statement or advice given by an FDA employee orally, or given in writing but not under [provisions for formal advisory opinions] is an informal communication that represents the best judgment of that employee at that time but does not constitute an
(*footnote continued on next page*)

8

by FDA staff members or advisory committee participants do not qualify under the public records hearsay exception because they are not made pursuant to a duty to report, they are not factual findings of the agency, and they lack the trustworthiness required to be excepted from the hearsay rule. *See Smith,* 137 F.3d at 862 ("The memoranda do not reflect 'factual findings' of the [agency]. Rather, they embody the positions and opinions of individual staff members. . . .").

Additionally, informal or unofficial statements by FDA staff members are "not the kind of trustworthy report described in Rule 803." *See Toole*, 999 F.2d at 1434. They are often made by lower-level employees who, like Dr. Graham, do not have authority to represent the official position of the agency. The method of recording these statements may be *ad hoc* and not subject to review. Certain statements may only be recorded by others *outside* the FDA, such as media reporters, whose motivations in capturing the statement may be quite different from those of the FDA. These statements are also more likely the personal opinions of these employees, not made with the benefit of careful consideration and balancing of all the implications of the statement. Unofficial statements by FDA employees also fail to meet the requirements of the business records exception to the hearsay rule, and should be excluded.

IV.  **INTRODUCTION OF WARNING LETTERS AND OTHER UNOFFICIAL STATEMENTS BY FDA EMPLOYEES WOULD CAUSE UNFAIR PREJUDICE TO MERCK, JURY CONFUSION, AND UNDUE DELAY.**

The introduction of Warning Letters and any other unofficial statement by an FDA employee must also be precluded because any minimal probative value of this evidence is substantially outweighed by the unfair prejudice to Merck, confusion of the issues, and undue delay that would result from their admission. *See* FED. R. EVID. 403.

---

advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed.").

Introduction of informal FDA letters may inaccurately suggest to the jury that the FDA found Merck acted improperly, when in fact the letters are not the final and official position of the FDA. The jury may not understand the important difference between the position of an employee of the FDA and a final and official determination of the FDA. A jury may attach undue significance to the contents of a preliminary letter simply because it comes from a government agency. Courts have upheld the exclusion of such letters as unduly prejudicial. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 673 (5th Cir. 1999) (upholding the exclusion of reports from the Mississippi Department of Environmental Quality in part because that agency's "evidence of likely violations of environmental regulations would have been unduly prejudicial due to its apparent official nature"); *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 769 (5th Cir. 1980) (upholding the exclusion of evidence on Rule 403 grounds because "[t]he [patent] examiner's report was a non-final agency action which included the examiner's opinion on the ultimate issue of validity."); *see also Pullman*, 662 F.2d at 915 (holding that a preliminary finding of an agency can mislead jurors because it may carry "an aura of special reliability and trustworthiness . . . not . . . commensurate with its actual reliability") (internal quotation marks and citations omitted); *Toole*, 999 F.2d at 1435 ("Admitting the [preliminary FDA] report, which contained highly and unfairly prejudicial assertions about the risks of cancer and autoimmune disease, was an abuse of discretion."). In this case as well, Merck will be unduly prejudiced if plaintiff is permitted to offer any such evidence or argument.

Admission of these letters and other unofficial statements that appear to be associated with the FDA would also inevitably result in undue delay and needless presentation of cumulative evidence. Merck would be entitled to present evidence to rebut the allegations in the letters. By way of example, Merck wrote a detailed response to the September 17, 2001

Warning Letter, and the FDA ultimately accepted Merck's response and took no action. Rebutting the allegations in that one warning letter would consume significant trial time, even though the letter itself is irrelevant.

Merck would also have to introduce evidence that establishes the proper context for any unofficial statements by FDA employees, and explain why they are not the official FDA position and not binding upon the FDA or Merck. This would require evidence of the structure, policies and procedures of the FDA and its regulatory process. Merck would also be entitled to present evidence and argument to impeach the FDA employee-witnesses or committee participant, something difficult to do if these hearsay statements are admitted and there is no witness to cross examine as to their motives and reasoning in making the statements.

In such circumstances, courts have upheld the exclusion of evidence relating to collateral issues to avoid mini-trials within a trial. *See Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding trial court's exclusion of evidence in part because "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources"); *Pullman*, 662 F.2d at 915 (admission of preliminary findings is not warranted because it can serve to "protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation"). Accordingly, unofficial statements made by FDA employees should be excluded.

11

## V.     CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court exclude Warning Letters and other preliminary or informal statements from FDA employees.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude FDA Warning Letters and Inadmissible Hearsay Statements Made by FDA Employees Regarding Vioxx has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

*Dorothy H. Wimberly*