UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * *

**MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE (1) EVIDENCE OF INTERIM OR "BLINDED" DATA FROM TRIALS OF VIOXX® AND (2) EVIDENCE THAT SPECIFIC STUDIES OF VIOXX WERE CONSIDERED BUT NOT UNDERTAKEN OR THAT COMPLETED STUDIES WERE INADEQUATE**

(MOTION *IN LIMINE* NO. 9)

Defendant Merck & Co., Inc., through undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, and 403, hereby moves to exclude (1) evidence of interim or "blinded" data from trials of Vioxx and (2) evidence that specific studies of Vioxx were considered but not undertaken or that completed studies were inadequate. The facts and law

supporting this motion are more fully set forth in the accompanying memorandum, declarations, and exhibits, which are incorporated as if fully set forth herein.

                                                          Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude (1) Evidence of Interim or "Blinded" Data from Trials of Vioxx and (2) Evidence that Specific Studies of Vioxx Were Considered but not Undertaken or that Completed Studies Were Inadequate has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

*[signature]*

797853v.1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE (1) EVIDENCE OF INTERIM OR "BLINDED" DATA FROM TRIALS OF VIOXX® AND (2) EVIDENCE THAT SPECIFIC STUDIES OF VIOXX WERE CONSIDERED BUT NOT UNDERTAKEN OR THAT COMPLETED STUDIES WERE INADEQUATE**

(MOTION *IN LIMINE* NO. 9)

Plaintiff claims Merck did not adequately warn of the risks of Vioxx® known at the time that Dr. Schirmer prescribed Vioxx to Mr. Irvin. To show Merck's alleged knowledge of undisclosed risks, plaintiff may attempt to offer evidence of: (1) interim or "blinded" data from

the VIGOR and APPROVe clinical trials;[1] or (2) studies considered, but never undertaken, by Merck.[2] This evidence should not be admitted, as it is not relevant and has the substantial likelihood of causing unfair prejudice.

By its nature, "blinded" (*i.e.*, undisclosed) data cannot demonstrate Merck's knowledge of a particular risk. In fact, evidence of blinded data demonstrates the opposite: it shows what Merck did not know. As such, it is not probative of any fact that plaintiff must prove and should be excluded for lack of relevance. *See* FED. R. EVID. 401-402. All such evidence should also be excluded because its admission would cause unfair prejudice to Merck, jury confusion, and undue delay. Allowing the introduction of blinded data would create the risk that the jury would impute knowledge to Merck at a particular time with no proper evidentiary foundation for doing so. *See* FED. R. EVID. 403.

Similarly, evidence regarding studies that Merck never performed lacks probative value and should be excluded as irrelevant. All such evidence should also be excluded because its admission would cause unfair prejudice to Merck, jury confusion, and undue delay. Permitting evidence of studies or trials that were never performed would require the jury to speculate about what the outcome of the hypothetical study might have been, and could lead to a determination based on conjecture and surmise, not fact.

I. **ANY ALLEGED RISKS NOT KNOWN BY MERCK – BUT PURPORTEDLY SHOWN BY "BLINDED" DATA OR CONTEMPLATED STUDIES – ARE NOT RELEVANT.**

Merck's knowledge of alleged risks of Vioxx and the adequacy of its warnings of those risks must be assessed as of the time that Dr. Schirmer prescribed Vioxx to Mr. Irvin, not on the

---

[1] *See, e.g.,* Pl.'s Exs. 1.0390, 1.0392, 1.0393, 1.0394, 1.0395, 1.0485, 1.0486, 1.1026, 1.1118, 1.1119, 1.1120, 1.1122.
[2] *See, e.g.,* Pl.'s Exs. 1.0102, 1.0211, 1.0251, 1.0268, 1.0373, 1.0424, 1.0438, 1.0440, 1.0523, 1.0527, 1.1015, 1.1020.

basis of hindsight. *See., e.g., Light v. Weldarc Co.*, 569 So. 2d 1302, 1303 (Fla. Dist. Ct. App. 1990) ("The duty to warn is limited to defects or dangers which are known or reasonably foreseeable by the supplier and are unknown or unforeseen by the user."); *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980) ("Liability for a failure to warn . . . arises from foreseeability . . . in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed. The degree of care necessary . . . is measured by reference to the circumstances of danger and risk known to such person at the time.") (citation omitted); *Basko v. Sterling Drug Inc.*, 416 F.2d 417, 426 (2d Cir. 1969) (no duty to warn of a risk unknown at the time a drug was prescribed); *Chambers v. G. D. Searle & Co.,*, 441 F. Supp. 377, 381 (D. Md. 1975), *aff'd*, 567 F.2d 269 (4th Cir. 1977) (only information available at the time a drug was prescribed and used can be considered in determining whether a warning was adequate). Accordingly, evidence of alleged risks not known by Merck until after May 15, 2001 – the date of Mr. Irvin's death – cannot be relevant to plaintiff's claims.

To be admissible, evidence must tend to prove or disprove some issue of consequence at trial. FED. R. EVID. 401-02; *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) ("The essential prerequisite of admissibility is relevance. To be relevant, evidence must have some tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (citations and internal quotation marks omitted). Implicit in the definition of relevance "are two distinct requirements: (1) the evidence must tend to prove the matter sought to be proved; and (2) the matter sought to be proved must be one that is of consequence to the determination of the action." *United States v. Waldrip*, 981 F.2d 799, 806 (5th Cir. 1993).

Evidence of blinded data from the VIGOR and APPROVe trials and evidence of studies

3

contemplated but never performed do not meet these criteria. Such evidence does not prove or disprove any issue relating to Merck's knowledge of alleged risks of Vioxx.

### A. "Blinded" Data From The APPROVe Trial Were Not Known By Merck And, Therefore, Cannot Be Relevant.

The VIGOR and APPROVe clinical trials were "triple-blinded." In such a trial, neither the drug manufacturer, nor the physicians and scientists conducting the study, nor the participating patients know which participants are receiving the drug under study and which are receiving the control while the trial is underway. Only the data safety monitoring board ("DSMB")[3] for the trial has access to unblinded data during the course of the trial. The DSMB for a blinded study is made up of outside physicians and scientists who are charged with monitoring the safety of the trial participants on an ongoing basis.[4] (Declaration of Ned Stephen Braunstein, M.D. ("Braunstein Decl.") at ¶ 84, filed October 21, 2005.)

Merck began enrolling patients in the VIGOR trial in early 1999, and the first trial results were "unblinded" (*i.e.*, disclosed) to Merck on March 9, 2000. (Braunstein Decl. at ¶ 56.) APPROVe commenced in 2000, and the DSMB overseeing that trial provided preliminary results to Merck for the first time on September 23, 2004, at which time it recommended that

---

[3] In the case of the APPROVe trial, the external board that monitored participant safety was called an "ESMB" ("External Safety and Monitoring Board"). In this motion, the safety monitoring boards for both VIGOR and APPROVe are referred to as "DSMB."

[4] Although one Merck employee was a member of the VIGOR DSMB, she did not have the ability to vote and did not disclose any data from the trial to Merck before March 9, 2000, when the data were first unblinded to Merck. (Oct. 22, 2002 Deposition of Deborah Shapiro ("Shapiro 10/22/02 Dep.") at 86:9-14; 93:8-11, *Jones v. Merck*, No. A167270 (Jefferson County, Texas filed May 24, 2002), attached as Ex. 38 to the Declaration of Phillip A. Wittmann in Support of Merck's Motions *in Limine*, filed November 4, 2005 ("*Plunkett I* Wittmann Decl.").) Similarly, despite the presence of certain Merck personnel at meetings of the APPROVe DSMB, there is no evidence that Merck itself knew of the results before the DSMB disclosed the data to Merck on September 23, 2004. (March 2, 2005 Deposition of Alise Reicin ("Reicin Dep.") at 185:18-189:5, 191:21-192:23, 197:20-198:10, *Ernst v. Merck*, No. 19961 *BH02 (Dist. Ct. of Brazoria County Tex filed May 24, 2002), attached as Ex. 30 to *Plunkett I* Wittmann Decl.)

Merck stop the study. (Declaration of J. Michael Gaziano, M.D., M.P.H. ("Gaziano Decl.") at ¶ 68, filed October 21, 2005.)

The *DSMB's* knowledge of blinded data while VIGOR and APPROVe were ongoing is irrelevant to *Merck's* knowledge before March 9, 2000, in the case of VIGOR, and before September 23, 2004, in the case of APPROVe. Plaintiff cannot show that Merck was aware of study findings at an earlier time unless she first introduces evidence sufficient to support findings that blinded data from the VIGOR trial were disclosed to Merck before March 9, 2000 and that data from the APPROVe trial were provided to Merck before September 23, 2004. These are classic "preliminary questions." *See* FED. R. EVID. 104(a) (providing that preliminary questions concerning the admissibility of evidence are to be determined by the court).[5] If not proven, none of the evidence relating to the blinded data is relevant.

Here, there is *no* evidence that the VIGOR or APPROVe DSMBs supplied Merck with any data from either trial before March 9, 2000 or September 23, 2004, respectively. Accordingly, any evidence reflecting unblinded data from these studies is irrelevant and inadmissible.[6]

---

[5] Because of the risk of unfair prejudice to Merck that would result if the jury were to see evidence of blinded data in the absence of a determination that Merck actually had knowledge of such data, the Court should determine the admissibility of the evidence outside of the presence of the jury. See FED. R. EVID. 104(c) (Hearings on preliminary matters shall be conducted out of the presence of the jury when the interests of justice require it.); *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (5th Cir. 1981) ("Under Fed. R. Evid. 104, a district court is authorized to conduct the balancing test required by Rule 403 outside the presence of the jury, in deciding the preliminary question of the admissibility of evidence.").

[6] This discussion of blinded data applies equally to data from other trials, to the extent that plaintiff attempts to impute knowledge of trial data at any point before she can establish that the results were unblinded.

Assuming *arguendo* that plaintiff could show a basis for attributing knowledge of APPROVe data to Merck before the results were unblinded, any such data allegedly known after May 15, 2001 – the date of Mr. Irvin's death – would still be irrelevant to the issue of what Merck knew or should have known. Whether Merck warned adequately of any known risks must be assessed as of the time that Dr. Schirmer prescribed Vioxx to Mr. Irvin, not after the fact with hindsight.

### B. Studies of Vioxx Contemplated But Not Undertaken Do Not Demonstrate Merck's Knowledge of Particular Alleged Risks.

Evidence relating to studies that were never performed also is not probative of what Merck knew or should have known at the time Dr. Schirmer prescribed Vioxx to Mr. Irvin. The outcome of any such study is completely a matter of conjecture. The same is true of any evidence offered to show that a completed study of Vioxx should have been designed differently.

After the VIGOR results were released, for example, Merck considered a long-term trial that would assess the cardiovascular effects of Vioxx by comparing it to a placebo. (Braunstein Decl. at ¶ 82-83.) The difficulties in designing a feasible and ethical trial ultimately led Merck to abandon that approach.[7] Plaintiff has no basis for impugning Merck's motivation in electing not to proceed. Not only did Merck have valid reasons for not proceeding, but Merck also developed an alternative approach to study the cardiovascular effects of Vioxx: it implemented a protocol to obtain and analyze cardiovascular event data from three large-scale cancer trials involving Vioxx (APPROVe, VICTOR, and ViP) that were already underway or due to start sooner than any newly designed trial could start. Proceeding in this fashion would allow Merck to obtain the needed data more quickly than if it had designed and implemented a dedicated

---

[7] The contemplated trial raised ethical concerns because in a population that requires pain medicine, patients in the placebo arm would receive no pain relief. And in a healthy population that required no medication, patients would receive no benefit from Vioxx. (Braunstein Decl. at ¶ 82.)

cardiovascular outcomes trial. This approach also addressed and obviated the ethical concerns that a placebo-controlled cardiovascular trial presented. (Braunstein Decl. at ¶ 82-83.)

No one can say what the study results would have shown had Merck conducted its contemplated cardiovascular outcomes trial. Similarly, no one can say what the results would have been if a trial that Merck did conduct, such as VIGOR, had been designed differently. Because the results cannot be known, evidence of those hypothetical studies cannot give rise to more than a surmise or suspicion. Such evidence does not make it more or less likely that Merck failed adequately to warn Mr. Irvin's prescribing physician about any risks associated with Vioxx and thus should be excluded as irrelevant.

## II.   ADMISSION OF "BLINDED" DATA OR STUDIES CONTEMPLATED BUT NOT PERFORMED WOULD CAUSE UNFAIR PREJUDICE, JURY CONFUSION, AND UNDUE DELAY.

Excluding evidence of both blinded data and studies not performed also is warranted under Federal Rule of Evidence 403. Evidence that impliedly invites the jury to determine liability on some basis other than the facts and the law must be excluded. *Haines v. Tex. Workers Comp. Comm'n*, No. 04-50309, 2005 U.S. App. LEXIS 5, at *2-3 (5th Cir. Jan. 3, 2005) ("[T]rial courts have the discretion to exclude [pieces of evidence] if their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *United States v. Zabaneh*, 837 F.2d 1249, 1265 n. 23 (5th Cir. 1988) ("Unfair prejudice within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Evidence also is subject to exclusion under Rule 403 in order to avoid undue delay and juror confusion. *See Conagra, Inc. v. Weber Marine, Inc.*, No. Civ. 97-1019, 1999 U.S. Dist.

7

LEXIS 14221, at *4 (E.D. La. Sept. 9, 1999) (upholding trial court's exclusion of evidence on Rule 403 grounds in part because its admission "would have little probative effect and would cause undue delay of the trial"); *Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding trial court's exclusion of evidence in part because "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources"); *In re Norplant Contraceptives Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80527, at *1 (E.D. Tex. Feb. 19, 1997) (excluding evidence because of the likelihood of jury confusion and the undue delay that would result from admitting marginally significant evidence).

<u>Blinded data.</u>   Here, even the most conscientious jury would have difficulty distinguishing between the knowledge of the DSMBs for the VIGOR and APPROVe trials, on the one hand, and the knowledge of Merck, on the other. There is a substantial risk that the jury would leap to the unsupported conclusion Merck automatically "knew" everything that is in the DSMB discussions and charge Merck with knowledge that it did not in fact have. Admitting such evidence absent the necessary foundational fact of unblinding, moreover, would entail the expenditure of considerable trial time. Merck, for example, would be required to introduce evidence to explain the significance of the triple-blinded aspect of its trials and adduce evidence to establish that data in fact were not disclosed to Merck before "unblinding."

<u>Studies not performed.</u>   Admitting evidence of studies that Merck considered but did not conduct also would be unfairly prejudicial to Merck because it would raise the danger that the jury would premise a verdict on mere speculation and conjecture. Admission of contemplated or hypothetical studies, for example, would cause the jury to speculate about what their outcomes might have been and to speculate further about the hypothetical impact of hypothetical outcomes on Merck's knowledge and actions. Merck would then need to introduce detailed evidence to

explain the scientific, regulatory, and business reasons behind Merck's decision-making processes as to the studies it undertook and why. Unless Merck were afforded the opportunity to put its decision making-process into proper context, evidence of studies that were not undertaken would unfairly prejudice Merck.

The net result would be a substantial increase in the length of trial and a substantial likelihood of juror confusion. For these reasons, the Court should exclude all evidence of blinded data and studies contemplated but never performed.

### III. CONCLUSION.

For the reasons discussed above, the Court should exclude all evidence or argument regarding blinded data and studies contemplated but never performed.

Respectfully submitted,

*[signature]*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

9

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

797854v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck & Co., Inc. to Exclude (1) Evidence of Interim or "Blinded" Data from Trials of Vioxx and (2) Evidence that Specific Studies of Vioxx Were Considered But Not Undertaken or that Completed Studies Were Inadequate has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

*/s/ Dorothy H. Wimberly*

797854v.1