

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 30  PM 4: 50

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MERCK & CO., INC.'S ("MERCK'S") MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF MICHAEL ALAN GRAHAM, M.D.

### (MOTION *IN LIMINE* NO. 20)

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, hereby moves to exclude the testimony of Michael Alan Graham, M.D. The facts and law supporting this motion are more fully set forth in the accompanying memorandum, declaration, and exhibits, which are incorporated as if fully set forth herein.

Fee_____
Process_____
DKM_____
CtRmDep_____
Doc. No_____

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone: 312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: 202-434-5000
Fax:     202-434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Merck & Co., Inc. to Exclude the Testimony of Michael Alan Graham, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046* | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| EVELYN IRVIN PLUNKETT | * | |
| as Personal Representative of the Estate of | * | |
| RICHARD IRVIN, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MERCK & CO., INC.'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF MICHAEL ALAN GRAHAM, M.D.

### (MOTION *IN LIMINE* NO. 20)

Plaintiff has designated a new pathologist, Dr. Michael Graham, to testify in the retrial of this case.  But Dr. Graham is not a new expert brought in because of unavailability of the old ones.  Instead, he produced a final expert report to plaintiff's counsel prior to the deadline for expert reports in the first trial.  Plaintiff did not disclose Dr. Graham as an expert in *Plunkett I* and now refuses to produce the final report he prepared in *Plunkett I*.  According to Dr. Graham,

he advised plaintiff's counsel before the first trial that Mr. Irvin died as a result of a rupture of his coronary plaque. Plaintiff not only failed to disclose that opinion previously, she presented a different theory of Mr. Irvin's death through Dr. Bloor at the first trial. Further, Dr. Graham's deposition reveals that he almost certainly conducted a fundamentally different analysis for *Plunkett II* than he did for *Plunkett I.* By not disclosing (and potentially destroying) Dr. Graham's expert report in *Plunkett I*, plaintiff has unfairly deprived Merck of an opportunity to impeach Dr. Graham in *Plunkett II*.

Plaintiff's non-disclosure of Dr. Graham before *Plunkett I*, her refusal to provide his original expert report in advance of *Plunkett II*, and her intention to present totally inconsistent pathology testimony in *Plunkett II*, all mandate that Dr. Graham be excluded from testifying at trial.

## I.   PLAINTIFF'S FAILURE TO DISCLOSE DR. GRAHAM'S FINAL REPORT FROM *PLUNKETT I* PRECLUDES HIM FROM TESTIFYING.

Courts have broad discretion to fashion evidentiary relief when a party fails to make required pretrial disclosures. *See, e.g., Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) (holding trial court properly excluded expert witnesses as a discovery sanction) (citing Fed. R. Civ. Pro. 37(c)(1)); *Van Baelen v. Sabine Trans. Co.*, 2001 U.S. Dist. LEXIS 5944, at *4 (E.D. La. 2001) ("A district court has discretion to exclude expert testimony and evidence, or to impose other appropriate sanctions, if a party violates its obligation to produce expert reports within the appropriate deadlines." (citing Fed. R. Civ. Pro. 37(c)(1))).

Dr. Graham testified in his deposition last week that he was first retained to be a testifying expert last fall, prior to the first trial. (January 25, 2006 Deposition of Michael Alan Graham, M.D. ("Graham Dep.") at 6:12-7:1, attached as Ex. 3 to the Declaration of Phillip A. Wittmann in support of Merck's *Plunkett II* Motions *in Limine* ("*Plunkett II* Wittmann Decl.").)

Dr. Graham further testified that he reviewed Mr. Irvin's medical records and examined the tissue samples from the autopsy. (*Id.* at 9:1-14.) Dr. Graham prepared a litigation expert report that contained his final opinions and provided his expert report to plaintiff's counsel before *Plunkett I.* (*Id.* at 9:21-10:23.) According to Dr. Graham, he concluded in his *Plunkett I* report that Mr. Irvin died as a result of a rupture of his coronary plaque. (*Id.* at 16:12-16.) Dr. Graham further testified that he did not personally retain any copies of his original report. (*Id.* at 9:25-10:6.) He has no notes, phone records or other materials related to his *Plunkett I* report. (*Id.* at 7:2-4; 19:1-6.)

Plaintiff did not produce a copy of Dr. Graham's report before *Plunkett I.* In fact, Merck was not aware until last Wednesday that Dr. Graham in fact had been retained to be an expert for *Plunkett I.* Merck has requested that plaintiff provide a copy of Dr. Graham's expert report he prepared for *Plunkett I.* Plaintiff has refused.

The circumstances surrounding Dr. Graham's analysis before *Plunkett I* and his analysis before *Plunkett II* suggest that there are material differences between Dr. Graham's two expert reports. As described in Merck's *Daubert* motion filed last Friday, Dr. Graham's case-specific causation opinion for *Plunkett II* rests entirely upon mathematical probabilities supposedly derived from Vioxx's "relative risk." That is, Dr. Graham asserts now that Vioxx contributed to Mr. Irvin's death because the relative risk supposedly is greater than 2. Dr. Graham's new analysis depends in substantial part upon Wayne Ray's expert report. In fact, most, if not all, of the relative risk data in Dr. Graham's new report were lifted directly from Dr. Ray's report. (*Id.* at 185:25-188:12) (Dr. Graham "plugged" numbers from Dr. Ray's report into his own and did not do an "independent analysis of the data").) But Dr. Graham did not review Dr. Ray's report until December 2005, three months after he first prepared his opinions about Mr. Irvin. (*Id.* at

3

70:17-23.) Dr. Graham worked on his *Plunkett I* report for "a couple hours," certainly not enough to conduct an independent analysis of relative risk, whereas in *Plunkett II* he has spent "quite a while" reviewing Dr. Ray's report. (*Id.* at 15:4-7; 20:2-5; 49:10-14.) By definition, Dr. Graham's original report prepared for *Plunkett I* rests upon different reasoning than his new report for *Plunkett II*.[1]

Plaintiff cannot justify her failure to disclose Dr. Graham's *Plunkett I* report by calling it a draft. Dr. Graham did not consider the report a draft; he sent it to plaintiff's counsel and did not mention receiving comments or edits, and only when his schedule could not accommodate a deposition did he conclude he would not be testifying in *Plunkett I*. (*Id.* at 10:15-23; 9:25-10:6.) This procedure was repeated in *Plunkett II*: after Dr. Graham sent his report to plaintiff's counsel, he did not edit it further. (*Id.* at 33:16-34:1.)

Likewise, plaintiff cannot justify her non-disclosure by saying Dr. Graham was a consulting expert in *Plunkett I*. Even assuming he was formerly a consulting expert, which he did not understand himself to be, a consulting expert's materials must be disclosed when he becomes a testifying expert. (*Id.* at 8:20-25); s*ee, e.g., W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 U.S. Dist. LEXIS 1911, at *26-33 (D. Kan. 2002) (when consulting expert was designated to testify, all materials furnished to the expert to be used in forming opinions – whether or not ultimately relied upon by the expert – and all materials prepared by the expert became discoverable).

---

[1] Dr. Burton's and Dr. Bloor's expert reports from *Plunkett I* further support the likelihood that Dr. Graham's original expert report differs from his new expert report supposed. Neither of plaintiff's designated pathologists from *Plunkett I* included a statistical analysis in his *Plunkett I* report. There is no reason to expect that Dr. Graham was the exception the first time around. Indeed, plaintiff's counsel wrote the first draft of Dr. Graham's *Plunkett II* report and sent it to him. (Graham Dep. at 32:22-33:1.)

Less than two weeks before the retrial, Merck learned for the first time that plaintiff's "new" pathology expert in fact had prepared a litigation opinion for the first trial and neither the expert nor plaintiff's lawyer are willing to disclose it. Merck has suffered prejudice at both trials from the non-disclosure. In *Plunkett I*, plaintiff's pathologist, Dr. Bloor, testified that Mr. Irvin did not have a plaque rupture, which is inconsistent with Dr. Graham's conclusion. Had Dr. Graham's report been disclosed, Merck could have further discredited Dr. Bloor's interpretation of the pathology slides. In *Plunkett II*, Merck will be prejudiced by the missed opportunity to impeach Dr. Graham's credibility with his prior, materially different report. Accordingly, exclusion is warranted in this case.

## II.   PLAINTIFF SHOULD BE ESTOPPED FROM OFFERING DR. GRAHAM'S PLAQUE RUPTURE OPINION.

Plaintiff's representations to the Court today about the cause of Mr. Irvin's death are entirely inconsistent with her representations to the Court in *Plunkett I*. Here, she plans to present expert testimony that the plaque in Mr. Irvin's coronary artery ruptured. In *Plunkett I*, plaintiff contended there was no evidence of plaque rupture. She defeated Merck's *Daubert* motion to exclude Dr. Bloor and moved to exclude Merck's pathologist, Dr. Wheeler, on this basis. Plaintiff should be estopped from first trying to exclude an expert opinion that Mr. Irvin suffered a plaque rupture under *Daubert*, then presenting expert testimony that there was no plaque rupture, and then later in the same case offering a contrary expert opinion that Mr. Irvin had a plaque rupture.

The doctrine of judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000)). The purpose of this equitable doctrine is to protect

5

judicial integrity by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993) (quoted in *New Hampshire*, 532 U.S. at 750).   Courts consider multiple factors in deciding whether to apply judicial estoppel, including (1) whether the positions are "clearly inconsistent;" (2) whether there was judicial acceptance of the first position; and (3) whether the party would gain "an unfair advantage" from asserting an inconsistent position. *New Hampshire*, 532 U.S. at 750-51; *Hall v. G.E. Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 396-400 (5th Cir. 2003).

Plaintiff's theory of causation in *Plunkett II* is "clearly inconsistent" with the story she presented to the Court and jury in *Plunkett I*.   In his *Plunkett II* report, Dr. Graham concludes that Mr. Irvin's plaque ruptured, causing a clot to form.   (Expert Report of Michael Alan Graham, M.D. ("Graham Report") at ¶ 3, attached as Ex. 4 to the *Plunkett II* Wittmann Decl.; Graham Dep. at 13:8-12.)   Once a clot began to form, Vioxx caused the clot to become fatal rather than heal.   (Graham Report at ¶ 3; Graham Dep. at 164:13-165:1.)   At trial, plaintiff's pathologist, Dr. Bloor, opined that the thrombogenic effect of Vioxx, not plaque rupture, caused Mr. Irvin's clot.   (*See* Nov. 30, 2005 Tr. Transcript at 331:4-12, attached as Ex. 1 to *Plunkett II* Wittmann Decl.)   He also agreed that if Mr. Irvin's plaque had ruptured, Vioxx would not have been responsible for his death.   (*Id.* at 345:9-23.)

In *Plunkett I*, Merck moved under *Daubert* to exclude Dr. Bloor's opinion.   *See* Mem. in Support of Mot. To Exclude Bloor and Burton at 15-17.   In her response to Merck's motion, plaintiff explained that there is a difference between "plaque" rupture and rupture of the "cap" covering the plaque, which would cause clotting.   *See* Pl. Resp. at 20-23.   Plaintiff contended that all experts save Dr. Wheeler, whose testimony she deemed "unreliable," agreed that there

6

was no rupture of the fibrous cap covering the plaque. *Id.* at 24 ("Dr. Wheeler cannot point to any feature of the clot which would indicate that it was induced by the plaque.").

At this Court's November 2005 *Daubert* hearing, plaintiff argued that Dr. Wheeler's opinions about a plaque rupture causing Mr. Irvin's fatal clot are so unreliable as to be inadmissible at trial. The Court will recall plaintiff's elaborate presentation at the hearing of animated demonstratives purportedly showing how the pathology slides demonstrate "the cap protecting the prothrombotic material from within the plaque is intact." (Nov. 14, 2005 Tr. Transcript of *Daubert* Hrg. at 109:4-11, attached as Ex. 2 to the *Plunkett II* Wittmann Decl.) Plaintiff further argued that Dr. Wheeler's opinion that Mr. Irvin's thrombus could not have formed absent a plaque rupture was only a function of Dr. Wheeler's lack of expertise and faulty methodology. (*Id.* at 99:4-101:11.)

We now know that argument was a lawyer-concocted, unjustified attack on Dr. Wheeler. As Dr. Graham testified last week, "I mean, I don't think there's any argument for me at least that this is not -- that this is not plaque rupture." (Graham Dep. at 120:19-21.) Dr. Graham further stated with regard to the mechanism that caused Mr. Irvin's death:

> Q. The actual mechanism of a subclinical preexisting plaque that ruptures and that clots fatally when the blood is exposed to a thrombogenic plaque, right?
>
> A. The mechanism into what I think is his already vulnerable thrombogenic state would be the same, the plaque rupture part, yeah.

(*Id.* at 156:3 - 9.)

Whereas plaintiff argued in *Plunkett I* that Dr. Wheeler should be precluded because "the cap protecting the prothrombotic material from within the plaque is intact," her own expert now agrees that Mr. Irvin formed a clot because a rupture caused "the blood [to be] exposed to a thrombogenic plaque."

7

Although plaintiff did not succeed in her disingenuous attack on Dr. Wheeler at the
*Daubert* stage, she did successfully defeat the *Daubert* challenge Merck filed against Dr. Bloor
on the basis of arguments diametrically opposed to those she now offers from Dr. Graham.
Specifically, Merck challenged the adequacy of Dr. Bloor's opinions (offered at his deposition
but not in his report) that Vioxx caused Mr. Irvin's death. In defeating that motion, plaintiff
argued that Dr. Bloor should be allowed to testify "that the plaque, itself, did not cause Mr.
Irvin's fatal thrombosis." Pl. Resp. at 21. In so doing, plaintiff offered Dr. Bloor's testimony
that "there is no open communication between the plaque core and the lumina of the vessel." *Id.*
at 19. Dr. Graham, however, testified:

> Also, as I looked at some of the thrombotic material that looks like it was actually
> – is actually in the lumen, it looks to me like there may be some plaque
> components in there. Not very much. But it looks to me like there may be some.
> The only way they can get in there is if you had some disruption of a plaque.
> (Graham Dep. at 124:21-125:2.)

Judicial estoppel should operate to prevent plaintiff from first arguing to save Dr. Bloor
from a *Daubert* challenge that the absence of plaque rupture demonstrates that Vioxx caused Mr.
Irvin's death, and then calling Dr. Graham at the retrial to testify that Mr. Irvin had a plaque
rupture, which began a clotting cascade in Mr. Irvin that Vioxx rendered fatal. These causation
theories are "clearly inconsistent." *New Hampshire*, 532 U.S. at 750.

The second and third factors in the judicial estoppel analysis weigh in favor of precluding
Dr. Graham's testimony as well. With regard to judicial acceptance of plaintiff's position,
plaintiff succeeded in convincing the Court that Dr. Bloor should be allowed to testify that Mr.
Irvin's plaque did not rupture. In addition, Merck will be disadvantaged by plaintiff's change in
position. Based on plaintiff's representations to the Court and to Merck, Merck has spent many
months preparing to defend itself against one theory of causation, only to be confronted with a

8

polar opposite theory of causation two weeks before the retrial of the case. This prejudice is compounded by the fact that plaintiff will not produce Dr. Graham's *Plunkett I* report, written before plaintiff decided to change her theory. Accordingly, the Court should preclude plaintiff from presenting the inconsistent testimony of Dr. Graham at the retrial.

## III.   CONCLUSION.

For the foregoing reasons, the Court should exclude Michael Alan Graham, M.D. from testifying in the retrial of this case.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: 202-434-5000
Fax:     202-434-5029

And

John H. Beisner
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Merck & Co., Inc.'s Motion in Limine to Exclude Testimony of Michael Alan Graham, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of January, 2006.

Dorothy H. Wimbes

10