

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

## PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF MICHAEL ALAN GRAHAM, M.D. (DEFENDANT'S MOTION *IN LIMINE* No. 20)

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., by and through her attorneys, hereby opposes Merck's Motion *in Limine* to Exclude Testimony of Michael Alan Graham, M.D., filed January 30, 2006. In support of its motion, Merck first argues that the expert report of Dr. Michael Graham was not disclosed. Second, Merck argues that Dr. Graham takes a position inconsistent with the position taken by Plaintiff in the first trial and, therefore, should be excluded on the basis of judicial estoppel. Each position lacks support in law or fact, and Merck's motion to exclude the expert testimony of Dr. Graham should be denied.

## INTRODUCTION

Dr. Michael Graham was not a designated expert witness for the Plaintiff in *Irvin I*. Dr. Graham's expert report for *Irvin II* was timely and appropriately disclosed in accordance with the Court's scheduling order. To make a claim of non-disclosure, Merck accuses Plaintiff's counsel of withholding an alleged final report of Dr. Graham prior to the trial of

_____ Fee_____
_____ Process_____
__X__ Dktd_____
_____ CtRmDep_____
_____ Doc. No _____

*Irvin I*, a report which Merck, without any foundation, suggests to the Court included a different opinion than the one Dr. Graham intends to offer at the trial of *Irvin II*. Second, Merck contends that the proffered testimony of Dr. Graham is inconsistent with the position taken by the Plaintiff in *Irvin I*. To support this claim, Merck attempts to recast the Plaintiff's position regarding plaque rupture into one that is not based on the testimony or expert reports submitted in *Irvin I*. That is, Merck claims that Plaintiff's position in *Irvin I* was that Mr. Irvin did not experience a plaque rupture prior to his death. Simply put, that was not and is not Plaintiff's position. The actual testimony reveals this point very clearly. The fact that defense counsel, as a trial tactic, repeatedly misstated the Plaintiff's position as such does not alter reality.

As set forth in more detail below, both the argument of nondisclosure and the argument of judicial estoppel are based upon the false and erroneous contentions of Merck.

## ARGUMENT

### I.     Plaintiff Timely Tendered Dr. Michael Graham and His Report in Accordance with the Trial Court's Pretrial Order

Despite Merck's attempt to claim otherwise, the fact that Dr. Graham's identity and final report was timely disclosed in this matter cannot reasonably be contested.[1] However, in an effort to fashion a claim of non-disclosure, Merck wrongly, and without foundation, asserts that Dr. Michael Graham previously prepared another "final report," which Merck contends has not been disclosed. To bolster its claim, Merck misrepresents Dr. Graham's deposition testimony. In its motion, Merck states as follows: "Dr. Graham testified in his deposition last

---

[1] Pursuant to the trial court's Scheduling Order in *Irvin II*, the parties were required to submit final expert reports on or before January 13, 2006. Dr. Graham's final report, in which he set forth his opinions in this cause, was submitted to Merck on January 13, 2006.

week that he was first retained to be a **testifying expert** last fall, prior to the first trial." Dep. of Michael Alan Graham, M.D. at 6-7 (January 25, 2006) (emphasis added.)   Merck's improper twist of Dr. Graham's testimony is borne out by the testimony itself.  Below is the portion of the testimony cited by Merck purporting to show that Dr. Graham was retained to be testifying expert:

> Q.    When were you first contacted by any lawyer connected with the Vioxx cases?
>
> A.    Oh, man, it's been several months ago.  I think it was before the first trial.  They asked me if I would review some material.  Then I didn't hear from them for quite a while.  Then they called me again.  But I don't remember exactly when it was.
>
> Q.    When you say the first trial, you mean the first go-round with – on the Plunkett case?
>
> A.    Yes.
>
> Q.    Okay.  And that would have been sometime in August or September of last year that you were first contacted?
>
> A.    Yeah, I don't remember.  It was quite a while ago.

As revealed by the <u>actual</u> testimony, Dr. Graham did **<u>not</u>** testify that he was "first retained to be a testifying expert … prior to the first trial."  Instead, he testified that he was "contacted" by Plaintiff's counsel prior to the first trial.  In addition, Dr. Graham expounded upon what he understood his role to be prior to *Irvin I*, in a subsequent portion of his deposition testimony where he testified that he did not know whether he had been retained as a consulting expert or a testifying expert.  The portion of Dr. Graham's testimony, which Merck conveniently left out of its brief, is as follows:

> Q.    Did your – did you understand you were being considered to be an expert witness on behalf of the Plaintiffs as opposed to just consulting with them?

> A.     I didn't know one way or the other.  I always take the approach that I'm
>        willing to testify.

*Id.* at 8.

Despite Merck's claim, Dr. Graham did not know if he was being considered as a testifying expert or a consulting expert.  Whether Dr. Graham was willing to serve as a testifying expert, and even whether Plaintiff's counsel contemplated using Dr. Graham as a testifying expert, is immaterial.  Dr. Graham was not designated to testify as an expert witness in the first trial, so Plaintiff had no duty to disclose him as a testifying expert.  See *Hoover v. U.S. Dept. of Interior*, 611 F.2d 1132 (5th Cir. 1980) (applicability of expert discovery rules is triggered by whether witness is "expected to testify," not whether he "may testify"); *U.S. v. 215.7 Acres of Land*, 719 F. Supp. 273 (D. Del. 1998) (party's contemplation of calling expert to testify did not open the door to discovery of reports); *Ross v. Burlington No. R. Co.*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991) (party's designation of expert witness as one expected to testify but subsequent change of that designation removed right of opposing party to depose witness).

Further, on page 3 of Merck's motion *in limine*, it states:  "Dr. Graham prepared a litigation expert report that contained his final opinions and provided his expert report to plaintiff's counsel before *Plunkett I*.  (*Id.* at 9:21-10:23.)"  Dr. Graham did not testify that he had prepared a final expert report setting forth his final opinions, as opposed to a draft report.  Merck misrepresents Dr. Graham's testimony.  Following is Dr. Graham's actual testimony:

> Q.     Did you make any notes or report about what you saw in the tissue
>        sample slides that you reviewed?
>
> A.     I think we may have made a report.  I think I may have back then.

Q.    I have not been provided a copy of that report.  Do you know where it might exist?

A.    No.  I'm not sure I even kept a copy.  I was – as I recall, the time frame was – and with my schedule we couldn't get a deposition in under the limit, and I at that point considered myself I was probably out of it.  So I don't think I kept a copy.

Q.    And when you say you may have made a report, and when you use the word report, are you describing, you now, your typical expert witness report?

A.    No.  It wasn't on my letterhead like I usually do.  It was more like this type of thing.

Q.    When you say this type of thing –

A.    From this – for the present trial.

Q.    Okay.  And so you prepared originally back sometime last fall a litigation expert report with a case caption on it describing your opinions?

A.    I don't know if it was a case caption, but it was more or – you know, of a kind of a one, two, three type, which is not my usual style.

Q.    And you provided that report to plaintiff's counsel?

A.    Yes.

As indicated in the actual testimony, Dr. Graham did not testify that he prepared a **final** report.  Instead, he testified that may have prepared a report which would have clearly been a "draft" report because, as he indicated, it was not what he would typically have produced.

The parties agreed prior to the first trial that draft expert reports would not be disclosed to the opposing party.  Plaintiff has not sought draft reports from any of Merck's experts.  This motion is a blatant attempt to undermine and circumvent the parties' agreement.

Apparently, Merck contends that it is entitled to a draft report prepared by a potential expert in this case. To support this claim, it cites an unpublished opinion, *Western Resources, Inc. v. Union Pac. R.R. Co.*, 2002 U.S. Dist. LEXIS 1911, *26-33 (D. Kan. 2002). In *Western Resources*, the trial court held that the defendant was entitled to prior reports of an expert witness who was identified as a testifying expert, where that individual for several years prior had served as a consultant to the plaintiff. Provided the reasoning and conclusions of the United States District Court in Kansas could possibly be applied to the Vioxx MDL litigation, the case would still have no applicability to the case presently before the Court. What Merck has conveniently failed to disclose to the Court is that the parties had an agreement to produce <u>only</u> final expert reports and not to produce draft reports passed between the expert witnesses and the respective counsel. A final report would only have been prepared had Plaintiff's counsel elected to identify Dr. Graham as a testifying expert in *Irvin I*, which she did not.

*Federal Rule of Civil Procedure* 26(a)(2) provides that the parties must disclose the identity and report of an expert witness employed to testify at trial. The identity and the reports of expert witnesses who have been retained but who are not expected to be called as a witness at trial must only be disclosed upon a showing of "exceptional circumstances" by the party who is seeking the disclosures. Merck has not contended that "exceptional circumstances" exist in this case and, indeed, no such exceptional circumstances exist. The opinions expressed by Dr. Graham are not inconsistent with the testimony and opinions of others expressed in this cause, despite the claims of Merck to the contrary.

As the United States Court of Appeals for the Fifth Circuit wrote in *Hoover v. U.S. Dept. of Interior*, 611 F.2d 1132, 1141-42 (5th Cir. 1980), disclosure of Rule 26 information is required "[f]or an expert expected to testify."  The Court noted that "[t]he primary purpose of this required disclosure is to permit the opposing party to prepare an effective cross-examination." (Emphasis added.)  As noted, "[t]he Rule is clear that the test for whether a particular expert should be treated under Rule 26(b)(4)(A) or Rule 26(b)(4)(B) is determined by whether the expert is 'expected to testify' and not by whether he 'may testify.'" *Id.* at 1142, n. 12 (quoting 8 C. Wright and A. Miller, *Federal Practice and Procedure: Civil*, § 2030) (emphasis added). Since Dr. Graham was not asked to testify at the first trial, Merck was not deprived of the opportunity to cross-examine him.

Plaintiff timely disclosed Dr. Graham as a testifying expert in *Irvin II.* Consistent with the party's agreement and the Court's Scheduling Order, the Plaintiff produced Dr. Graham's final report, and Merck has had ample opportunity to explore the substance of those opinions in deposition and will likewise be afforded the opportunity to conduct a cross-examination of the witness at trial.

Even had Dr. Graham been designated as a "testifying expert" for *Irvin I*, Merck would still not have been entitled to discover his draft report, consistent with the agreement of the parties.  In *Ross v. Burlington No. R. Co.*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991), that court wrote:

> "Fed.R.Civ.P. 26(b)(4)(B) allows a party to discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial *only* upon a showing of exceptional circumstances under which it would be

impracticable for the part seeking discovery to obtain facts or opinions on the same subject by other means.

"The witness sought to be deposed by defendant cannot be considered anything other than a non-testifying expert who has been retained in anticipation of litigation. From the very beginning, the witness was retained for purposes of litigation. Although plaintiff may have originally designated the witness as a testifying expert, plaintiff has the prerogative of changing his mind. Since plaintiff changed his mind before any expert testimony was given in this case, the witness never actually acted as a testifying expert witness. The court cannot find, then, that the shift in designation affects the witness's current status as a non-testifying expert witness and denies him the protection afforded such a witness. See *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (special showing needed to obtain testimony of witness once denoted a probable testifying witness, now a consulting witness); *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 13-14 (N.D. Ill. 1972) (expert originally designated as testifying witness on issue cannot be deposed on issue once plaintiff decides that expert will not testify on that issue).

At the time Dr. Graham was "contacted" by Plaintiff's counsel, a final decision had not been made about whether he would be called to testify at the trial of this cause. Since a final decision had not been made, he could not be considered a "testifying expert" under Rule 26 and, as such, Merck is not entitled to any reports prepared by him at the time, final or not. See *U.S. v. 215.7 Acres of Land*, 719 F. Supp. 273, 278-79 (D. Del. 1989) (state government's retention of firm to do land appraisals, where decision had not been made at that time to use experts to testify in land dispute, did not create a situation which would entitle plaintiffs to discover appraisal reports by non-testifying expert).

Merck's efforts here are an end-run on the agreement between the parties to not exchange draft reports of expert witnesses, and as such should be rejected by the Court.

## II.    Dr. Graham's proffered testimony is not inconsistent with testimony and evidence offered by Plaintiff in *Irvin I.*

Merck next argues that the Plaintiff should be judicially estopped from presenting the testimony of Dr. Graham because it contends that Dr. Graham's testimony, i.e., that there may have been a plaque rupture associated Dicky Irvin's death, is inconsistent with the position that Plaintiff took at the trial of *Irvin I*, as expressed through another pathologist, Dr. Colin Bloor.   Despite the Merck's misinterpretation of Plaintiff's case in *Irvin I*, the opinions espoused by Dr. Graham are consistent with those of Dr. Bloor, as more specifically set forth below.  This can be seen clearly from Dr. Graham's deposition testimony:

Q.    Are you aware, sir, that the – that the plaintiffs retained other pathologists to testify in the first trial?

A.    Yes.

Q.    Do you know of a Dr. Burton?

A.    Yeah.  I know who he is, yeah.

Q.    Do you know he is a pathologist in Georgia?

A.    Oh yeah.  I read his deposition.

Q.    And you know that Dr. Burton opined that Mr. Irvin had a plaque rupture?

A.    I don't specifically recall, but if he did, then we agree.

Q.    It wouldn't surprise you if he did.  Right?

A.    It wouldn't surprise me.

Q.    Then you know there was another fellow, Dr. Bloor, whom the plaintiffs retained, right?

A.    Yes.

Q.    And Dr. Bloor testified that there was no plaque rupture?

9

A.    I mean, I think he said there wasn't a plaque rupture in the slides.  I don't recall whether he said that there wasn't one at all, but he said that he couldn't see one in the slides, and I agree with him.  I couldn't either.

Graham dep. at 12-13.

As set forth by the United States Court of Appeals for the Fifth Circuit in *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 136 (5th Cir. 2005), a party is judicially estopped from asserting a legal position that is inconsistent with a position taken previously in the same or similar proceeding.  The court noted: "Before a party can be judicially estopped, however, 'it must be shown that the "the position of the party to be estopped is clearly inconsistent with its previous one; and ... that party must have convinced the court to accept the previous position."' *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir. 2000)).  Again, the opinions of Dr. Graham are not "clearly inconsistent" with those of Dr. Bloor or those presented at the first trial by Plaintiff.

In fact, Dr. Bloor is consistent in acknowledging the possibility of a plaque rupture, although he did not see evidence of plaque rupture at the site of the non-attached thrombus:

Q.    Did we have a plaque rupture at the site of Dicky Irvin's focally severe plaque?

A.    At the site where the plaque is said to induce 60 percent occlusion, I did not see a rupture at that site.  It had a thin fibrous cap which was intact throughout the entire section.

Trial Tr. at 311.

Q:    Doctor, is there medical literature that establishes if you have nonattachment of a blood clot, then that clot is not related to a plaque rupture?

A.    I'm not sure that you would find the reports in the medical literature that way because you can have nonattached clots, you know, in which, you know, rupture of a plaque is not present; and

you can have nonattached clots in which rupture of a plaque may be present, but it would be present at a site other than where the nonattached clot is.

Trial Tr. at 313-314.

> Q.   And as part of your analysis, you said, I think -- did you say that there was no plaque rupture?

> A.   In the slides that I have looked at, there is no plaque rupture. Definitely in the location where the acute thrombus is.

Trial Tr. at 330.

> Q.   And the opinion that you're giving today is that, since there was no plaque rupture, the something else that caused the plaque [sic] must have been Vioxx. Right?

> A.   Well, since there is no plaque rupture at the site where this nonattached thrombus is located, I considered what other factors may be. And knowing that the patient was on Vioxx and on the assumption, the basis for which I've stated before, that it's a prothrombotic agent, that this is why I've considered it to be a substantial contributory factor to the cause of death.

Trial Tr. at 331: 4-12.

> Q.   Now, when you sat down and wrote your report that was going to be filed in this case, did you include in your official report the same observation that you made in your notes: that all of these changes that you looked at were consistent with plaque rupture?

> A.   I did not use them because it is not diagnostic of plaque rupture.

> Q.   It's consistent with plaque rupture, right?

> A.   Yes, it's possible.

Trial Tr. at 341.

Some cases have also recognized a "prejudice" element of the judicial estoppel analysis. See, e.g., *Century Prods. Co. v. Cosco, Inc.*, 2003 WL 251947, at *10 (N.D. Tex. 2003) (recognizing an additional factor for the court's consideration, namely, "whether the

party asserting an inconsistent position will obtain an unfair advantage or impose unfair prejudice on the opposing party if not estopped," and recognizing that the court may consider "additional factors applicable to the specific factual context of the case").  Merck cannot reasonably contend that it is unfairly prejudiced by Dr. Graham's espoused opinions.  The opinion relative to plaque rupture was espoused by another pathologist tendered by the Plaintiff, Dr. Burton, whose deposition Merck took prior to the trial of *Irvin I*.  While Dr. Burton was not called to testify at the first trial, counsel for Defendant did cross-examine Dr. Bloor on how his opinions squared with those of Dr. Burton and other experts testifying in the case:

> Q:     . . . As you mentioned several times, in the slides that you looked at, you didn't see signs of actual plaque rupture.  That's your testimony, right?
>
> A:     Yes, it is.
>
> Q:     And you're aware of the fact, though, that every other pathologist who has looked at these slides, whether they were hired by the Plaintiff's lawyers of whether they are looking at it on behalf of Merck, that every single other pathologist who looked at these slides disagrees with you, right?
>
> A:     I guess so.
>
> Q:     You're aware that Dr. Wheeler – you mentioned him before.  He's the chairman of the pathology department at the Baylor College of Medicine, right?
>
> A:     Yes.
>
> Q:     And he's looked at them and he's concluded that there was plaque rupture, right?
>
> A:     I'm aware that that's his conclusion.
>
> Q:     And then there is a Dr. Burton who was actually hired by the Plaintiff's lawyers, correct?

A:    Yes.

Q:    And Dr. Burton is a pathologist, right?

A:    I believe he's a medical examiner in Atlanta.

Q:    And he actually had a consulting pathologist work with him named Dr. Frist, right?

A:    I've heard of Dr. Frist, yes.

Q:    And both Dr. First and Dr. Burton were hired by the Plaintiffs. They also concluded that there is plaque rupture: isn't that right?

A:    That's my understanding.

**Q:    If all these other pathologists are right and you're wrong that there is a plaque rupture, then you've also agreed that it's the plaque rupture that causes the clot, which caused death, and it was not Vioxx. Right?**

**A:    That is not my opinion.**

Trial Tr. at 375 – 376 (emphasis added).

Accordingly, the Court should not exclude testimony of Dr. Graham on the grounds of judicial estoppel.

## CONCLUSION

The proffered testimony of Dr. Michael Alan Graham, Plaintiff's expert pathologist, is not inconsistent with the legal position previously offered in this case. Furthermore, Dr. Graham's final report has been produced to Merck, pursuant to the Court's Scheduling Order. There is no basis to exclude Dr. Graham's testimony at the trial of *Irvin II*, and, therefore, Merck's motion *in limine* is due to be denied.

13

Respectfully submitted,


By:   /s/Andy D. Birchfield, Jr.
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**


Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS,
MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

### PLAINTIFFS' LIAISONCOUNSEL

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

### PLAINTIFF'S STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this the **1st** day of February, 2006.

__/s/ Andy D. Birchfield, Jr.__ _____