

F4L
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB -2 AM 9: 29

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Evelyn Irvin Plunkett v. Merck & Co, Inc. | * | CASE NO. 02:05CV4046 |

## MEMORANDUM IN OPPOSITION TO MOTION OF MERCK & CO. INC. TO EXCLUDE TESTIMONY OF DR. ERIC TOPOL, M.D.
### (Motion *in Limine* No. 19)

Plaintiff Evelyn Irvin Plunkett hereby opposes Merck's Motion to exclude the testimony of Eric J. Topol, M.D., filed January 30, 2006. In support of its motion, Merck argues that Dr. Topol was designated by Plaintiff "[in violation of] her discovery obligations" and that his testimony contains "irrelevant, speculative and inflammatory personal opinions unrelated to any issue in this case." Def.'s Mot. in Limine at 1-2.

This, of course, is not the first time that the Court has considered Merck's wholesale objection to the entirety of Dr. Topol's testimony. As the Court well knows, the Court has already considered and overruled Merck's identical objections not once—but twice—in *Irvin I*. See Trial Transcript at p. 7, line 5 through p. 13, line 6 (November 29, 2005) (Ex. A); Rulings on Topol Deposition (Ex. B). In accordance with this Court's prior rulings, Plaintiff has designated for the re-trial of this case <u>only</u> those portions of Dr. Topol's testimony that were ruled admissible by the court as set forth in *Exhibit B* and which were actually played for the jury in *Irvin I*.

____ Fee_____
____ Process_____
X  Dktd_____
√  CtRmDep_____
____ Doc. No _____

1

In its revived motion, Merck posits no new issue of law or fact which would warrant the Court to reconsider the rulings it has already made twice in *Irvin I*. Accordingly, Motion *in Limine* No 19 should be denied.

## STATEMENT OF FACTS

Dr. Eric Topol is Chairman of the Department of Cardiovascular Medicine at Cleveland Clinic. Dr. Topol is one of the premier cardiologists in the world. See Dr. Eric J. Topol dep. at 9-11. (Ex. B). The Cleveland Clinic has been the number one cardiology center in the world for the last eleven years. See Dr. Eric Topol dep. at 12. Dr. Topol remains one of Merck's preeminent cardiology consultants. A Merck consultant, he recognized early on that Vioxx was capable of causing cardiovascular injury and death in patients who took it.

As a result of this recognition, Dr. Topol valiantly attempted to work with Merck to perform appropriate studies and to warn doctors and patients of the risk. Unfortunately, Dr. Topol's efforts were met with resistance from Merck and Merck sought to discredit him and his colleagues at the Cleveland Clinic. Between 2001 and 2005, Dr. Topol and his colleagues at the Cleveland Clinic wrote no less that nine (9) articles and editorials in the peer-reviewed literature on the topic. These include, among others, the following:

- "Risk of Cardiovascular Events Associated with Selective COX-3 Inhibition," Journal of the American Medical Association (2001).

- "Cox-2 Inhibitors and Cardiovascular Risk:  We Defend Our Data and Suggest Caution," Cleveland Clinic Journal of Medicine (2001).

- "A Coxib a Day Does Not Keep the Doctor Away," The Lancet (2004).

- "Perspective:  Failing the Public Health – Rofecoxib, Merck and the FDA," New England Journal of Medicine (2004).

- "The Sad Story of Vioxx and What We Should Learn from It," Cleveland Clinic Journal of Medicine (2004).

- "Cardiovascular Events Associated with Non-steroidal Anti-Inflammatory Drugs: A Meta-Analysis of Randomized Placebo-Controlled Trials," Archives of Internal Medicine (2005).

- "Arthritis Medicines and Cardiovascular Events – 'House of Coxibs,'" Journal of American Medical Association (2005).

See Dr. Eric J. Topol's CV (Ex. C).

As a Merck consultant throughout the time Vioxx was on the market and as a leading cardiologist with the Cleveland Clinic, Dr. Topol's actions are central to the story of this case. However, Dr. Topol did not voluntarily agree to cooperate with this litigation. Dr. Topol is not a retained expert on behalf of the Plaintiff. As set forth in Plaintiff's Motion to Use the Testimony of Eric J. Topol, M.D. During Trial, filed before *Irvin I*, [1] the PSC was diligent in seeking Dr. Topol's documents and deposition which was finally achieved on November 22, 2005 only through this Court's intervention.[2]

---

[1]   This motion was filed on Nov. 28, 2005 (Record Docket No 1758).

[2]   This issue was raised during the October, 2005 status Conference:

> MR. HERMAN: Yes. *Mr. Tisi received a letter from Victoria L. Vance of the Cleveland Clinic Foundation, in which the Cleveland Clinic Foundation attempts to delay October depositions to December, well past the beginning of the Irvin case.* We have been unable to resolve that, Your Honor, and we would like to issue subpoenas from the MDL, and if the Cleveland Clinic Foundation persists, its general counsel persists in not making the deponents available for deposition, we would like the subpoenas enforced by the MDL Court.

> JUDGE FALLON: *Let me comment on that. I want the parties who notice depositions, particularly noticing doctors' depositions, to first contact the doctors or their representatives, and see whether or not it can be done at a time convenient with their schedule, as well as with your schedule. I am aware they are busy. I am aware they have matters on their agenda, but having done that, if that is not workable, then you should subpoena the doctors at a date and time that is convenient with you. Subpoena them and bring the subpoenas to my attention. I expect the doctors, or anyone, for that matter, but in this case, the doctors, to be present at the time that is required by the subpoena. If they are not there, I will convene a meeting to show why they should not be held in contempt of Court. I will do it either here in Houston. I will do it in New Orleans, or I will do it at their particular place of residence, wherever that might be. The MDL Court sits throughout the country, and I will do that. If they violate a subpoena, they will have to explain it to me and not to counsel. When a subpoena is issued,*

3

At Dr. Topol's deposition, Plaintiff's counsel sought to obtain fact testimony from Dr. Topol, including his contacts with Merck concerning Vioxx and the publications that he has written about the state of scientific and medical knowledge at the time of events that are key to this litigation. Dr. Topol further testified that certain of Merck's scientific theories are unscientific and not supported by the studies that he has personally performed. These include the so-called "Naproxen Hypothesis" and the so-called "18-month hypothesis" that this Court is aware of.

Subsequently, this plaintiff sought to admit the Topol testimony in *Irvin I*. Merck opposed this motion arguing that the testimony should be precluded because plaintiffs did not file an expert report as set forth in Rule 26 of the Federal Rules of Civil Procedure and because the testimony was irrelevant, unreliable and outside the scope of his expertise. After reading the motions and after oral argument, the Court permitted Dr. Topol to testify without a Rule 26 report. See Nov. 31, 2005 Trial Transcript at 7-3 (Ex. A). At the Court's direction plaintiff submitted its designations for Dr. Topol and Merck filed its objections. In these objections, Merck raised the identical issues that it raises here, including its contention that the testimony as a whole or in part was irrelevant, unreliable and outside the scope of Dr. Topol's expertise. See Ex. B. Upon review, the court sustained some of Merck's objections and overruled others. Id.

Plaintiff in *Irvin II* has submitted exactly the designations that the Court previously found admissible in *Irvin 1*.

---

it is issued with the full power of the United States Court and the United States Government, and I expect them to be present at the deposition. I'll also send a copy of this comment to the attorney, Ms. Victoria Vance, at the Cleveland Clinic Foundation, 1950 Richmond Road, Cleveland, Ohio, 44124.

See October 27, 2005 Status Conf. Transcript at 16-17 (Ex. D) (emphasis added).

4

**ARGUMENT**

**I     TO THE LIMITED EXTENT THAT DR. TOPOL GIVES OPINION TESTIMONY, IT IS PERMITTED BY RULE 26 SINCE HE IS NOT RETAINED BY PLAINTIFF AND HIS TESTIMONY WAS WELL KNOWN TO MERCK**

In its motion, Merck pleads that "in failing to designate Dr. Topol as an expert,

plaintiff has violated her Rule 26 discovery duties." Merck Mot. at 8.  Citing rule 26(A),

Merck suggests that plaintiff had a responsibility to produce a report even though Dr. Topol

was not retained by plaintiff and even though he was, in fact, a reluctant witness. *Id.*

As a preliminary matter, Merck incorrectly characterizes Dr. Topol's testimony as

"expert" testimony.  However, the bulk of testimony given by Dr. Topol was sought because

he was a Merck consultant and was percipient fact witness to key events in this case.  Dr.

Topol testimony in large part is composed of his account of his personal role researching the

dangerous nature of Vioxx—a danger that he conveyed to Merck and, when he failed to get

Merck's attention, to the medical community.  While Dr. Topol may indeed be the preeminent

expert in the field of cardiovascular medicine, this fact testimony reveals primarily his

personal role in the unfolding events related to Vioxx.

To the extent that Dr. Topol's testimony can be characterized as "expert testimony" a

report need not have been provided.  As Merck well knows—and as this Court has already

ruled—Rule 26 (A) does not control a witness like Dr. Topol who was <u>not</u> retained for

litigation and who, in fact, was hostile to being deposed at all.  On November 31, 2005, and in

connection with Merck's original motion to strike Dr. Topol, the Court ruled that:

> First with regard to 26(A)(2)(B), I don't  see this as being
> applicable.  [Dr. Topol] wasn't employed [as a retained
> expert].  The party was not employed by the plaintiff.
> Clearly (2)(B) says "except as otherwise stipulated or
> directed by the Court, this disclosure shall, with respect to

a witness who is retained or specifically employed to provide expert testimony in the case or whose duties of an employee of a party regularly involve giving expert testimony , be accompanied by a written report." So I don't feel that (2)(B) is applicable because they weren't employed by the plaintiffs. In fact, the plaintiffs had to come to Court to even get a deposition taken. With regard to also a report, there is no report. The party did not give a report, so I don't feel that 26(A)(2)(B) is applicable.

Nov. 31, 2005 Tr. at 10.

Nor can Merck seriously contend that it was "surprised" or "prejudiced" by Dr. Topol's testimony. Dr. Topol made his views very clear to Merck, both orally and in his numerous articles in peer-reviewed Journals. This was, of course, key to the Court's initial finding that the lack of an expert report was not prejudicial to Merck:

> *But with regard to this particular expert, it seems to me that this witness, the disclosure, he was a cardiac consultant for Merck. Merck had to be aware of his opinions since April of 2001. This is no shrinking violet. This person has written article after article commenting on, if not criticizing, the various trials....* Numerous letters of correspondence indicate to me that Dr. Topol was known to the defendants and the documentation that he was going to testify to was received and the defendants had an opportunity.
> *I don't see the defendant being surprised by this. I don't see the defendants being surprised by what he was going to say. They had to know what he was going to say because he had said it in print.* In Primrose Operating Company v. National American, 382 F.3d 546 (5th Cir. 2004), the Fifth Circuit found that the trial court did not abuse its discretion in allowing an expert witness to testify, despite the fact that he didn't give a report, because it was harmless since the opposing party knew what the expert was going to say and knew who the expert was. *I dare say that Merck knew this expert probably before the plaintiffs knew the expert in this particular litigation.*

Id. at 10-11 (emphasis supplied); see also Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 882-883 (5th Cir.).

6

The Court's findings were made on a well formed record and after careful briefing by the parties where Merck made exactly the same argument it makes again here. There is no reason to believe that the Court erred or exceeded its discretion. Therefore, the Court should permit Dr. Topol to testify.

## II.    PLAINTIFF IN THIS CASE ACCEPTS THE RULINGS OF THE COURT ON ADMISSIBILITY FOR THE PUPOSES OF THIS TRIAL

In permitting Dr. Topol to testify, the Court made it clear that:

> I'm going to allow him to testify, but I don't see him testifying by way of simply the entire deposition. I think the relevance of his testimony is what Merck knew, when Merck know it, what they did, and what they didn't do.

*Id.*

Noting that "this case involves the death of a person who was taking Vioxx in April of 2001," the Court instructed the Plaintiff in *Irvin I* to designate relevant portions of testimony relevant to the facts of this very case and instructed Merck to object.

As instructed by the Court, the parties submitted its arguments on designation and counter-designations. See Ex. B. In those designations, Merck objected to testimony on the very grounds it asserts here, i.e., that the information is irrelevant, prejudicial, calls for personal opinions, calls for state of mind and is outside of Dr. Topol's qualifications. Id. The court reviewed these objections and rules that these objections were "sustained" or "overruled."

While the Plaintiff continues to believe that much of the testimony that the Court struck in *Irvin I* was indeed admissible, she is willing to accept the Court's ruling as equally applicable to *Irvin II*.[3]

Not being satisfied with the courts rulings, however, Merck has made another motion taking a run at Dr. Topol's testimony that the court allowed and making the exact omnibus objections it made in *Irvin I*.  It does so without ever delineating exactly what testimony it seeks to exclude.  Rather, Merck either argues that the testimony "should be excluded in its entirety" (Merck Mot. at 2) or by way of "example" (Merck Mot. at 6.).

Plaintiff contends that the Court should not revisit the Topol designations again in the context of this case.  She is willing to stand by this Court's rulings in *Irvin I* and has signaled her intent to do so by designating only those portions of Dr. Topol's testimony that the Court found admissible.  She stands by her objections to specific testimony challenged by Merck as set forth in *Exhibit B* which is incorporated herein.[4]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court permit Plaintiff to introduce the same portions of Dr. Topol's deposition testimony during the trial of this case that she introduced in Irvin I.

---

[3] Plaintiff specifically reserves the arguments and objections made in her submission of Dr. Topol's testimony as set forth in Exhibit B.  The Plaintiff's Steering Committee also reserves the right to argue for admissibility in other cases as those may present different facts than the Irvin case.

[4]  Should the Court wish to revisit defendant's objections to Plaintiff's designation of Dr. Topol's testimony, Plaintiff requests that the Court review and reconsider Plaintiff's designations that were struck at Merck's request.

Respectfully submitted,


By:   /s/Andy D. Birchfield, Jr.
**Andy D. Birchfield, Jr.**
Paul J. Sizemore
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Co-Lead Counsel**


Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS,
MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

**PLAINTIFFS' LIAISONCOUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this the **1st** day of February, 2006.


    /s/ Andy D. Birchfield, Jr.

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED