U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Filed   2-13-06

LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| | * | |
| **This document relates to** | * | **MAGISTRATE JUDGE KNOWLES** |
| | * | |
| **Evelyn Irvin Plunkett v. Merck & Co, Inc.** | * | **CASE NO. 02:05CV4046** |

---

### NOTICE OF FILING PLAINTIFF'S REQUESTED JURY CHARGES

---

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Richard Irvin, Jr., by and through her attorneys, gives notice of filing the attached requested jury charges numbered 1 through 25 and requests that this Court charge the jury accordingly. Plaintiff asks that this Court consider each proposed instruction separately and that this Court issue a separate ruling for each instruction.

Plaintiff further requests the right to withdraw any proposed instruction or submit such additional, supplemental, or alternative instructions as necessitated by Defendant's proposed jury instructions, any rulings made by the Court on questions of law following the submission of these or of Defendant's proposed jury instructions, or the additional presentation of evidence at trial.

Respectfully submitted,

By: _P. Leigh O'Dell_ _____

**Andy D. Birchfield, Jr.**
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER &
PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

**Counsel for Plaintiff**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892

FAX: (504) 561-6024
**Temporary Office**
3411 Richmond Ave., Suite 460
Houston, TX 77046
PH: (713) 877-1843
FAX: (713) 871-9750

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel for the MDL
Plaintiffs' Steering Committee**

## PLAINTIFFS' LIAISON COUNSEL

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## PLAINTIFF'S STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this the **13th** day of February, 2006.

B. Leigh O'Dell

<u>PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 1</u>

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

In any jury trial, there are, in effect, two judges. I am one of the judges; the other is you the jury. It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You, as jurors, are the judges of the facts. But in determining what actually happened in this case - that is, in reaching your decision as to the facts - it is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely upon the testimony and other evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and corporations or public entities stand equal before the law and are to be dealt with as equals in the court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that they are particularly concerned that you recall. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in

this case.  What the lawyers say is not binding upon you.

Also, during the course of trial, I have occasionally made comments to the lawyers, or asked a question of a witness, or admonished a witness concerning the manner in which he should respond to the questions of counsel.  Do not assume from anything I may have said that I have any opinion concerning any of the facts in this case.  In arriving at your own findings as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

The burden of proof is on the plaintiff in a civil action, such as this one, to prove every essential element of her claim by a "preponderance of the evidence."  Thus, you must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

As I have stated, the Plaintiff need prove her case only by a preponderance of the evidence.  She need not produce every possible witness, and she need not prove her case beyond a reasonable doubt, as is necessary in a criminal prosecution.  But speculation or mere possibility and even unsupported probability is not sufficient to support a judgment in her favor.

In deciding this case, you are expected to use your good sense.  Give the evidence and the testimony of the witnesses a reasonable and fair interpretation in light of your knowledge of the natural tendencies of human beings.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.  If a witness is shown to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony on other matters and you may distrust all of the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Certain testimony was presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers were shown to you during this trial. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

During the course of the trial, you will have heard objections to the evidence. Sometimes these have been argued out of the hearing of the jury.

It is the duty of the attorney on each side of the case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against or show any prejudice against a lawyer or his client because of the making of an objection.

Upon allowing testimony or other evidence to be introduced over the objection of any attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.  As stated before, you, the jury, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer the question.

During the course of trial, I have occasionally asked a question of a witness in order to bring out facts not then fully covered in the testimony.  Do not assume that I hold any opinion on the facts to which my question or questions may have related.  Remember at all times, you, as jurors, are the sole judges of the facts.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Pattern Jury Instructions: United States Circuit Court of Appeals, Fifth Judicial Circuit § 3.1 (as modified)

PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 2

This lawsuit arises out of Richard Irvin, Jr.'s use of Vioxx.  Merck manufactured the drug Vioxx.  The Plaintiff, Evelyn Irvin Plunkett, contends that Mr. Irvin suffered a sudden cardiac death caused by his taking Vioxx.

In your deliberations, you are to consider three distinct claims.  First, the Plaintiff alleges that Merck should be held liable for the death of Richard Irvin, Jr. because Merck was negligent in designing, manufacturing, marketing, advertising, distributing and selling Vioxx and that this negligence was a legal cause of Richard Irvin, Jr.'s death.  Second, Plaintiff alleges that, regardless of whether Defendant Merck was negligent, Merck should be held strictly liable for Richard Irvin, Jr.'s death because Merck placed Vioxx on the market with inadequate warnings, making it unreasonably dangerous to consumers.  Last, the Plaintiff alleges that, regardless of whether Defendant Merck was negligent, Merck should be held strictly liable for Richard Irvin, Jr.'s death because it placed Vioxx on the market with a defective design, making it unreasonably dangerous to consumers.

Although all of the Plaintiff's claims have been tried together, each is separate from the others, and each party is entitled to have you separately consider each claim.  Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would have if each claim had been tried before you separately.  Let me now discuss the law applicable to each of the Plaintiff's claims.

Florida Standard Jury Instructions in Civil Cases 2.4 (as modified).

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 3

I will now discuss with you the law governing the Plaintiff's negligence claim. Plaintiff asserts that Merck was negligent in designing or marketing Vioxx and that such negligence was the legal cause of Richard Irvin, Jr.'s death. In addition, Plaintiff claims that Merck was negligent in failing to warn Mr. Irvin and Dr. Schirmer of a dangerous condition in Vioxx and that such negligence was a legal cause of Mr. Irvin's death. Under the law, a drug manufacturer has a duty to warn the user of dangers inherent in the use of the product. A prescription drug manufacture must give the prescribing doctor an adequate warning of these dangers. If the physician was not adequately warned, the patient cannot receive adequate warning of the danger. Accordingly, the issues for your determination on the negligence claims of the Plaintiff against Merck are:

a) Whether Merck was negligent in designing or marketing its product, Vioxx and if so, whether such negligence was a legal cause of injury or damages sustained by Plaintiffs; or

b) Whether Merck negligently failed to warn the Plaintiff of a dangerous condition of which Merck knew or should have known by the use of reasonable care, and if so, whether such negligence was a legal cause of injury to the Plaintiff.


Florida Standard Jury Instruction 3.5; Zanzuri v. G.D. Searle, 748 F. Supp. 1511, 1517-18 (S.D. Fla. 1990).

_____ GRANTED    _____ DENIED    _____ MODIFIED

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 4

Negligence is the failure to use reasonable care.  Reasonable care is that degree of care which a reasonably prudent pharmaceutical company would use under like circumstances. Negligence may consist either in doing something that a reasonably prudent pharmaceutical company would not do under like circumstances, or in failing to do something a reasonably prudent pharmaceutical company would do under like circumstances.

Florida Standard Jury Instruction 4.1 (as modified)

_____ GRANTED   _____ DENIED   _____ MODIFIED

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 5

(a)  Negligence is a legal cause of loss, injury or damage if it directly, and in natural and continuous sequence, produces or contributes substantially to producing such loss, injury or damage so that it can reasonably be said that, but for the negligence, the loss, injury or damage would not have occurred.

(b)  In order to be regarded as a legal cause of loss, injury or damage, negligence need not be the only cause.  Negligence may be a legal cause of loss, injury or damage even though it operates in combination with the act of another, some natural cause or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such loss, injury or damage.

(c)  Negligence may also be a legal cause of loss, injury or damage even though it operates in combination with the act of another, some natural cause or some other cause occurring after the negligence occurs if such other cause was itself reasonably foreseeable and the negligence contributes substantially to producing such loss, injury or damage, or the resulting loss injury or damage was a reasonably foreseeable consequence of the negligence and the negligence contributes substantially to producing it.

(d)  Furthermore, a defendant may still be liable when the defendant's negligence operates upon a concealed physical condition, such as a latent disease.

Florida Standard Jury Instruction 5.1 (as modified).

_____ GRANTED  _____ DENIED  _____ MODIFIED

PLAINTIFF'S' REQUESTED JURY INSTRUCTION NO. 6

      If the greater weight of the evidence does not support the negligence claims of the Plaintiff against Merck, then your verdict on the negligence claims should be for the Defendant.

Florida Standard Jury Instruction 3.7

_____ GRANTED   _____ DENIED   _____ MODIFIED

## PLAINTIFF'S' REQUESTED JURY INSTRUCTION NO. 7

If, however, the greater weight of the evidence does support Plaintiff's claims for negligence against Merck, then you shall consider the defense raised by the Defendant.  First, you must determine if Mr. Irvin was himself negligent and, if so, whether such negligence was a contributing legal cause of his injury.  If the greater weight of the evidence does not support the defense of the Defendant and the greater weight of the evidence does support one or more of the claims of the Plaintiff, then your verdict should be for Plaintiff in the total amount of their damages.

However, if the greater weight of the evidence proves either that the Defendant was negligent, and the evidence proves also that the Plaintiff or other parties were negligent, then you should determine what percentage of the total fault of all responsible parties is chargeable to each.

Florida Standard Jury Instruction 3.8.

_____ GRANTED    _____ DENIED    _____ MODIFIED

PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 8

The issues for your determination on the strict liability failure to warn and strict liability defective design claims of Plaintiff against Defendant Merck are:

a)      Whether the Vioxx sold by Merck was defective when it left the possession of the Defendant and, if so, whether such defect was a legal cause of injury or damage sustained by Plaintiff; and

b)      Whether Defendant adequately warned of the risks of Vioxx.

A product is defective if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.  A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer, or the risk of damages in the design outweighs the benefits.

A product is defective if the manufacturer does not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

If the greater weight of the evidence does not support the strict liability claim of the Plaintiff against the Defendant, your verdict should be for the Defendant, on those claims.

Florida Standard Jury Instruction 3.7; Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1172 (Fla. 4th DCA)

_____ GRANTED      _____ DENIED      _____ MODIFIED

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 9

Manufacturers are held to a higher standard than that imposed by the law of negligence. When a manufacturer places on the market a potentially dangerous product, they undertake a special responsibility toward the consuming public who may be injured by it. Manufacturers are required to warn of those risks which are discoverable in light of the generally recognized and prevailing best knowledge available.

As previously stated in these instructions, the nature and extent of the warnings or other actions required of the company in the light of the hazards and risks associated with its product must be commensurate with the dangers and risks involved.

West v. Caterpillar Tractor Co., 336 So.2d 80, 86 (Fla.1976)
Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1172 (Fla. 4th DCA).

<u>PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 10</u>

A product is defectively designed when the foreseeable risks of harm posed by the product could have been reduced or avoided by using a reasonable alternative design.  In other words, if you find that the risk of harm posed by Vioxx could have been reduced or avoided if Defendant Merck had used a reasonable alternative ingredient then its product was defective in design.

<u>Scheman-Gonzalez v. Saber Manufacturing Co.</u>, 816 So.2d 1133, 1139 (Fla. 4th DCA) (citing Restatement (Third) of Torts: Products Liability (1998)).

_____ GRANTED   _____ DENIED   _____ MODIFIED

<u>PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 11</u>

A product is defectively designed when the foreseeable risks of harm posed by the product could have been reduced or avoided by providing reasonable instructions or warnings. In other words, if you find that the risk of harm posed by Vioxx could have been reduced or avoided if Defendant Merck had provided a reasonable warning about the risk of harm, then its product was defective in design.

<u>Scheman-Gonzalez v. Saber Manufacturing Co.</u>, 816 So. 2d 1133, 1139 (Fla. 4th DCA) (citing Restatement (Third) of Torts: Products Liability (1998)).

_____ GRANTED   _____ DENIED   _____ MODIFIED

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 12

In order to warn adequately, the product label has to make the product's potential harmful consequences obvious.  The warning should be intense enough to convince a reasonable person, for his or her own safety, to use caution equal to the potential danger.  The warning should also contain wording directed to the significant dangers that the user will face if he or she does not follow the warning.

If you find that Merck failed to warn with sufficient urgency and intensity given the potential dangers of Vioxx, you must presume that had an adequate warning been given to Dr. Schirmer or Mr. Irvin that the warning would have been read and followed and that an adequate warning would have prevented the injury from occurring.

Scheman-Gonzalez v. Saber Manufacturing Co., 816 So.2d 1133, 1139 (Fla. 4th DCA 2002). citing Am. Cyanamid Co. v. Roy, 466 So.2d 1079, 1082 (Fla. 4th DCA 1984); Brito v. County of Palm Beach, 753 So.2d 109, 112 (Fla. 4th DCA 1998).

Sta-Rite Industries, Inc. v. Levey, 909 So.2d 901, 905-06 (Fla. 5th DCA 2005).

_____ GRANTED   _____ DENIED   _____ MODIFIED

PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 13

On the claim of strict products liability, it is unnecessary for the Plaintiff to show that the manufacturer has been negligent in any way.  In fact, the manufacturer can be found liable even if it was utterly non-negligent.


Moorman v. American Safety Equip., 594 So.2d 795, 800 (Fla. 4th DCA 1992); *see* Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998).

_____ GRANTED   _____ DENIED   _____ MODIFIED

PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 14

  If the plaintiff proves that Merck did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution, the product shall be deemed defective by reason of the warning or instructions, even if the warning on the product was, at the time of manufacture, in compliance with administrative regulatory safety standards relating to warnings or instructions.

  In other words, you are instructed that even if you find that defendant Merck met all government regulations and requirements, which are minimum standards, such compliance is not a defense if it did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

Florida Standard Jury Instruction 3.7; *see* Ferayorni v. Hyundai Motor Co., 711 So.2d 1167, 1172 (Fla. 4th DCA 1998); *see also* Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 658 (1st Cir.1981); Mazur v. Merck & Co., Inc., 742 F. Supp. 239, 247 (E.D.Pa.1990); Caraker v. Sandoz Pharmaceuticals Corp., 172 F.Supp.2d 1018, 1033, n. 11 (S.D.Ill.2001)

\_\_\_\_\_ GRANTED  \_\_\_\_\_ DENIED  \_\_\_\_\_ MODIFIED

<u>PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 15</u>

(a)  Similarly, a defect in a product is a legal cause of injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to the Plaintiff's injuries, so it can be reasonably said that, but for the defect, the injury or damage would not have occurred.

(b)  In order to be regarded as a legal cause of injury or damage, the defect need not be the only cause.  A defect may be a legal cause of injury or damage even though it operates in combination with the act of another or some other cause if such other cause occurs at the same time the defect has its effect and if the defect contributes substantially to producing such injury or damage.

<u>Florida Standard Jury Instruction</u> 5.2

_____ GRANTED    _____ DENIED    _____ MODIFIED

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 16

You have heard testimony concerning the "relative risk" of a heart attack occurring in a person who is taking Vioxx.  I instruct you that a relative risk greater than 2.0 would permit an inference that an individual person's injury, in this case Mr. Richard Irvin, Jr.'s death, was more likely than not caused by Vioxx, the implicated drug.  In other words, a relative risk greater than 2.0 supports the inference that the drug was a probable cause of the injury alleged.

Reference Manual on Scientific Evidence 385 (West) (note cased cited therein); *see also Landrigan v. Celotex Corp., 605 A.2d 1079, 1087 (N.J. 1992).*

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 17

In connection with the Plaintiff's failure to warn and defective design claims, and only these two claims, I will instruct you on what is known as the government rules doctrine. Under the government rules defense, there are two potential rebuttable presumptions, which may or may not apply to your deliberations.

A "rebuttable presumption" is a presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of a presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption.

Under the government rules doctrine, there is a rebuttable presumption that the product is not defective or unreasonably dangerous and the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused harm:

(a)     Complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;

(b)     The codes, statutes, rules, regulations or standards are designed to prevent the type of harm that allegedly occurred; and

(c)     Compliance with the codes, statutes, rules, regulations or standards is required as a condition for selling or distributing the product.

Merck contends that at the time Mr. Irvin took Vioxx, it had complied with FDA regulations and was approved by the FDA. Accordingly, Merck asserts that you must presume that Vioxx was not defective or unreasonably dangerous when Mr. Irvin used it. If you find that Merck did comply with the applicable FDA regulations, it is the Plaintiff's burden to rebut this presumption by presenting credible evidence sufficient to show that Vioxx was defective or unreasonably dangerous. If you find that Plaintiff has failed to counter this presumption with evidence sufficient to show that Vioxx was in fact defective or unreasonably dangerous, then you must also find that Merck is not liable in regards to the failure to warn or the defective design claims. On the other hand, if you find that the Plaintiff has shown that Vioxx was defective or unreasonably dangerous, then you may find Merck liable in regards to the failure to warn or the defective design claims.

Moreover, under the government rules doctrine, there is also a rebuttable presumption that the product is defective or unreasonably dangerous and the manufacturer or seller is liable if the manufacturer or seller did not comply with the federal or state codes, statutes, rules, regulations, or standards which:

(a)     Were relevant to the event causing the death or injury;
(b)     Are designed to prevent the type of harm that allegedly occurred; and
(c)     Require compliance as a condition for selling or distributing the product.

The Plaintiff contends that in seeking FDA approval of Vioxx, in marketing Vioxx, and issuing warnings regarding Vioxx, Merck did not comply with applicable FDA regulations. Specifically, Plaintiff contends that Merck failed to comply with § 201.57(e) of the Code of Federal Regulations which requires a drug company to change the label of a drug to warn of known dangers.  Accordingly, the Plaintiff asserts that you must presume that Vioxx was defective or unreasonably dangerous when Mr. Irvin used it.  If you find that Merck did not comply with the applicable FDA regulations, it is Merck's burden to rebut this presumption by presenting credible evidence sufficient to show that Vioxx was not defective or unreasonably dangerous.  If you find that Merck has failed to counter this presumption with evidence to show that Vioxx was in fact not defective or unreasonably dangerous, then you must find that Merck is liable in regards to the failure to warn and the defective design claims if Plaintiff proves that Vioxx was the legal cause of the injury.  On the other hand, if you find that Merck has overcome this presumption, then you may find that Merck is not liable for the failure to warn or the defective design claims.

Fla. Stat. § 768.1256 (2005); Fla. Stat. § 90.302 (2005).

PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 18

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004. Merck contends that the withdrawal was voluntary. The Plaintiff contends that the withdrawal was not voluntary.

If you find that the withdrawal of Vioxx from the market was voluntary, you may not consider the withdrawal as evidence that Vioxx was defective. You also may not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause sudden cardiac death. You may, however, consider this withdrawal for other purposes, such as proving ownership, control or feasibility of precautionary measures.

On the other hand, if you find that the withdrawal was not voluntary, you may consider the withdrawal as evidence that Vioxx was defective or defectively designed or that Merck was negligent or acted culpably. You may also consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx, or as evidence that Vioxx can cause sudden cardiac death.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 19

If you find for Merck on all of Plaintiff's claims, you will not consider the matter of damages.  But, if Plaintiff proves by a preponderance of the evidence that her injuries or damages were caused by Merck's failure to fulfill its legal obligations, you must determine the amount of damages to which the Plaintiff is entitled.

You must determine an amount of damages that is fair compensation for al of the Plaintiff's damages.  There damages are called compensatory damages.  The purpose of compensatory damages is to make the Plaintiff whole - that is, to compensate the Plaintiff for the damages she suffered.  Compensatory damages are not limited to expenses that the Plaintiff may have incurred because of her injury.  If your verdict is for the Plaintiff, she is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that she has suffered because of Merck's conduct.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by Merck's allegedly wrongful conduct.  The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less.  Damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant.  You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that the Plaintiff prove the amount of her loss with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 20

In this case, the Plaintiff has claimed monetary damages from the death of Mr. Irvin.  You may consider the following factors to determine the amount of damages to award as may be shown by a preponderance of the evidence:

(1)     The loss of net accumulations by Mr. Irvin's estate.  "Net accumulations" is part of the decedent's net income from salary after taxes, including fringe benefits, which Mr. Irvin, after paying his personal expenses and monies for the support of his survivors, would have left as part of his estate if he had lived his normal life expectancy.

(2)     Medical and/or funeral expenses due to Mr. Irvin's fatal injury which have become a charge against the decedent's estate and were paid by or on behalf of the decedent by one other than a survivor.

(3)     The loss of Mr. Irvin's support and services that the Plaintiff, Evelyn Irvin Plunkett, the decedent's son, Richard Irvin, III, and the decedent's daughter, Ashley Irvin, have sustained and will sustain in the future because of Mr. Irvin's death.  In evaluating loss of support and services, you may consider the survivor's relationships to Mr. Irvin, the amount of Mr. Irvin's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the particular survivor.  In computing the duration of future losses, the joint life expectancies of the survivors and the decedent and the period of minority, in the case of Richard Irvin, III, and Ashley Irvin, may be considered.  "Support" includes contributions in kind as well as sums of money.  "Services" means tasks regularly performed by Mr. Irvin that will be a necessary expense to the Plaintiff because of his death.  "Joint life expectancy" is that period of time when both Mr. Irvin and a survivor would have remained alive.

(4)     The Plaintiff's loss of Mr. Irvin's companionship and protection, and her mental pain and suffering as a result of Mr. Irvin's injury and death.

(5)     The loss by Richard Irvin, III and Ashley Irvin of parental companionship, instruction, and guidance, and their mental pain and suffering as a result of Mr. Irvin's injury and death.

_____ GRANTED   _____ DENIED   _____ MODIFIED

<u>PLAINTIFF'S REQUESTED INSTRUCTION NO. 21</u>

Should you find for the Plaintiff and against Merck in this case, you must fix the amount of your verdict. Therefore, you must determine if Merck is liable to the Plaintiff. After this, you must fix the total amount of your verdict for the Plaintiff, if any, in accordance with the other instructions of this Court. You will provide this information by filling in the appropriate blanks in the verdict form which I have given you. In determining the total amount of damages, if you find that Mr. Irvin was also negligent, you should not make any reduction in the total amount of damages. The Court, in entering judgment, will take into account your allocation, if any, of responsibility among all persons and entities whom you find contributed to Mr. Irvin's injuries.

Some of these damages, such as loss of companionship and mental pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the Plaintiff, Richard Irvin, III, and Ashley Irvin for their injuries, no more and no less. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 22

In determining how long Mr. Irvin would have lived, had he lived out his normal life, you may consider his life expectancy at the time of his death. The mortality tables received in evidence may be considered in determining how long he may have been expected to live. Such tables are not binding on you, but may be considered together with other evidence in this case bearing on his health, age, and physical condition, before his death, in determining the probable length of his life.

PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 23

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of the Plaintiff.  The Court will enter a judgment based on your verdict and, if you find that the Plaintiff was negligent in any degree, the Court in entering judgment will reduce the total amount of damages by the percentage of negligence which you find is chargeable to the Plaintiff or third parties.

Florida Standard Jury Instruction 6.1(c)

_____ GRANTED    _____ DENIED    _____ MODIFIED

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 25

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges - judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.