U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED 2-14-06
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-4046 | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| **EVELYN IRVIN,** | * | |
| as Personal Representative of the Estate of | * | |
| **RICHARD IRVIN, JR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S AFFIRMATIVE
## DEPOSITION DESIGNATIONS FOR GREGORY CURFMAN

Fee_____
Process_____
X_ Dktd_____
CtRmDep._____
Doc. No._____

## CURFMAN_2_DEFENSE_DIRECT

| Scene | Designation | Source | Tx Duration |
|-------|-------------|--------|-------------|

**1**   **18:21 - 19:4**   Curfman 01/24/2006   00:00:23

18: 21   Q.  Dr. Curfman, are you
18: 22   currently actively practicing medicine?
18: 23   A.  A very small fraction of my
18: 24   time is in medical practice in teaching,
19: 1    but my main responsibility is I'm the
19: 2    executive editor of the New England
19: 3    Journal of Medicine, which is a full-time
19: 4    job.

---

**2**   **19:5 - 19:7**   Curfman 01/24/2006   00:00:06

19: 5    Q.  And how long have you worked
19: 6    full time for the New England Journal of
19: 7    Medicine in that capacity?

---

**3**   **19:10 - 20:7**   Curfman 01/24/2006   00:00:50

19: 10        THE WITNESS:  I've been an
19: 11        editor at the New England Journal
19: 12        of Medicine for over 20 years.
19: 13        And for the first 15 years, I held
19: 14        the position of deputy editor, and
19: 15        for the last 5 years, I guess 6
19: 16        now, I've been the executive
19: 17        editor of the journal.
19: 18   BY MR. BECK:
19: 19   Q.  Am I correct then, sir, that
19: 20   for the last 20 years, you've had a
19: 21   full-time job as a medical journalist in
19: 22   one capacity or another, rather than as a
19: 23   practicing doctor?
19: 24   A.  Well, that's not quite
20: 1    right.  During that period of time, I did
20: 2    maintain some practice responsibilities
20: 3    and some teaching responsibilities,
20: 4    teaching medical students and residents.
20: 5    At the present -- I've tended to dial
20: 6    that down over the years, and at the
20: 7    present time I'm essentially full time.

---

**4**   **20:8 - 21:7**   Curfman 01/24/2006   00:01:11

20: 8    Q.  I'd like to take a few
20: 9    minutes and just establish with you, sir,
20: 10   a basic chronology of some of the key
20: 11   events that we'll be talking about.

**CURFMAN_2_DEFENSE_DIRECT**

20: 12       You recall that the VIGOR
20: 13    manuscript was submitted to the New
20: 14    England Journal of Medicine in May of
20: 15    2000; is that right?
20: 16    A.  Well, it was submitted -- it
20: 17    was received into our system on May 23rd
20: 18    of 2000.  For the record, I think it's
20: 19    important that we note that the letter of
20: 20    transmission from the corresponding
20: 21    author was dated May 18th.
20: 22    Q.  Do you remember that the
20: 23    authors asked for expedited treatment of
20: 24    the VIGOR manuscript?
21: 1    A.  Yes, I do.
21: 2    Q.  Do you remember that the New
21: 3    England Journal of Medicine determined
21: 4    not to grant the expedited treatment?
21: 5    A.  Yes.  The editor who made
21: 6    that decision decided that it was not
21: 7    indicated in that case, yes.

| 5 | **21:20 -21:24** | Curfman 01/24/2006 | 00:00:24 |
|---|---|---|---|

21: 20    Q.  Again, because we'll be
21: 21    referring to it during the deposition, do
21: 22    you recognize Exhibit 1 as a copy of the
21: 23    VIGOR manuscript as it eventually was
21: 24    published in November of 2000?

| 6 | **22:21 -22:21** | Curfman 01/24/2006 | 00:00:01 |
|---|---|---|---|

22: 21    A.  Okay.

| 7 | **23:23 -24:6** | Curfman 01/24/2006 | 00:00:26 |
|---|---|---|---|

23: 23    Q.  Continuing with the
23: 24    chronology, do you recall that in
24: 1    February 2001 the FDA convened an
24: 2    Advisory Committee?
24: 3    A.  Yes.  I did not have that
24: 4    information in February, but I did learn
24: 5    about that at a later time, later in
24: 6    2001, yes.

| 8 | **24:14 -24:19** | Curfman 01/24/2006 | 00:00:22 |
|---|---|---|---|

24: 14    Q.  And did you learn that the
24: 15    FDA had information that they had posted
24: 16    on their website concerning VIGOR?
24: 17    A.  Yes.  I learned about that
24: 18    from a colleague, again, it was perhaps
24: 19    late August or September of 2001, and

**CURFMAN_2_DEFENSE_DIRECT**

| 9 | **26:23-27:3** | Curfman 01/24/2006 | 00:00:14 |

26: 23   Q.  Eventually, did you read a
26: 24   memorandum that was part of the FDA's
27: 1    file on this that was posted on line
27: 2    called the Targum memorandum?
27: 3    A.  That's right.

| 10 | **27:14-27:14** | Curfman 01/24/2006 | 00:00:03 |

27: 14   Q.  Is Exhibit 2, does that

| 11 | **27:15-27:24** | Curfman 01/24/2006 | 00:00:52 |

27: 15   appear to you to be a copy of the Targum
27: 16   memorandum?
27: 17   A.  (Witness reviewing
27: 18   document.)
27: 19        Yes, it does.
27: 20   Q.  When did you first read the
27: 21   Targum memorandum?
27: 22   A.  I first became aware of the
27: 23   data on the FDA website in late August or
27: 24   perhaps September of 2001.

| 12 | **28:23-29:20** | Curfman 01/24/2006 | 00:00:55 |

28: 23   Q.  Continuing in the
28: 24   chronology, in 2004, did you learn that
29: 1    Merck had voluntarily withdrawn Vioxx
29: 2    from the marketplace?
29: 3    A.  That's correct.
29: 4    Q.  And when in 2004 did you
29: 5    learn that?
29: 6    A.  I believe that the date was
29: 7    September 30th, 2004, plus or minus a day
29: 8    or two.
29: 9    Q.  Did you learn around that
29: 10   time or soon after the withdrawal that
29: 11   the FDA was convening another Advisory
29: 12   Committee?
29: 13   A.  Right.
29: 14   Q.  And you understood that this
29: 15   Advisory Committee would be looking at
29: 16   all COX-2 inhibitors; is that right?
29: 17   A.  Right.
29: 18   Q.  As well as other NSAIDs.
29: 19   Did you understand that?
29: 20   A.  Yes.

| 13 | **32:23-33:3** | Curfman 01/24/2006 | 00:00:20 |

32: 23   Q.  Did there come a time when

|       |         |                                             |
|-------|---------|---------------------------------------------|
|       | 32: 24  | people in the medical community began       |
|       | 33: 1   | criticizing the New England Journal of      |
|       | 33: 2   | Medicine for the way that it handled the    |
|       | 33: 3   | VIGOR publication?                          |

| 14 | **33:10 -35:1** | Curfman 01/24/2006              00:02:34 |
|----|-----------------|------------------------------------------|

|       |         |                                             |
|-------|---------|---------------------------------------------|
|       | 33: 10  | I can't recall exactly criticism.  I do     |
|       | 33: 11  | recall discussions.  There wasn't a lot     |
|       | 33: 12  | of discussion, but I'm not sure that I      |
|       | 33: 13  | would have recognized it as criticism.      |
|       | 33: 14  | Q.  By the middle of 2005, was              |
|       | 33: 15  | the senior editorial group at the New       |
|       | 33: 16  | England Journal of Medicine meeting on a    |
|       | 33: 17  | regular basis with a public relations       |
|       | 33: 18  | firm?                                       |
|       | 33: 19  | A.  Excuse me?  Could you repeat            |
|       | 33: 20  | that?                                       |
|       | 33: 21  | Q.  Sure.                                   |
|       | 33: 22  | By the middle of 2005, was                  |
|       | 33: 23  | the New England Journal of Medicine         |
|       | 33: 24  | editorial folks, you and the other senior   |
|       | 34: 1   | editors, were you meeting on a regular      |
|       | 34: 2   | basis with a public relations firm?         |
|       | 34: 3   | A.  I personally did attend some            |
|       | 34: 4   | meetings with a public relations firm,      |
|       | 34: 5   | yes.                                        |
|       | 34: 6   | Q.  Was one of the subjects that            |
|       | 34: 7   | you discussed in late 2005 continuing       |
|       | 34: 8   | into early 2006, one of the subjects that   |
|       | 34: 9   | you discussed with the public relations     |
|       | 34: 10  | firm was how to deal with criticism of      |
|       | 34: 11  | the New England Journal of Medicine for     |
|       | 34: 12  | the way it handled the VIGOR publication?   |
|       | 34: 13  | A.  Well, I don't recall that as            |
|       | 34: 14  | being the focus of discussion myself.  I    |
|       | 34: 15  | think the topic of COX-2 inhibitors, that   |
|       | 34: 16  | topic probably did come up, but I don't     |
|       | 34: 17  | recall that we were talking about -- I      |
|       | 34: 18  | don't think so.                             |
|       | 34: 19  | Q.  So, you don't remember that             |
|       | 34: 20  | in November and December, in fact, you      |
|       | 34: 21  | were communicating almost on a daily        |
|       | 34: 22  | basis with this PR firm on subjects         |
|       | 34: 23  | including the criticisms of the New         |
|       | 34: 24  | England Journal of Medicine concerning      |
|       | 35: 1   | how they handled the VIGOR publication?     |

**CURFMAN_2_DEFENSE_DIRECT**

| 15 | **35:11-35:18** | Curfman 01/24/2006 | 00:00:25 |
|---|---|---|---|

35: 11   Q.   Do you -- are you saying
35: 12   that as you sit here today that you don't
35: 13   know that the New England Journal of
35: 14   Medicine in November and December was
35: 15   communicating with this PR firm on almost
35: 16   a daily basis about criticisms of the New
35: 17   England Journal of Medicine on how it
35: 18   handled the VIGOR publication?

| 16 | **36:19-36:23** | Curfman 01/24/2006 | 00:00:15 |
|---|---|---|---|

36: 19         THE WITNESS:  Well, all I
36: 20    can do is tell you that I was not
36: 21    talking with people at a PR firm
36: 22    about, what did you say, how to
36: 23    handle the VIGOR article or --

| 17 | **37:22-38:6** | Curfman 01/24/2006 | 00:00:27 |
|---|---|---|---|

37: 22   Q.   My question to you, sir, is,
37: 23   is it your testimony today that you don't
37: 24   know that back in November and December,
38: 1    the New England Journal of Medicine was
38: 2    communicating on a regular basis with a
38: 3    PR firm about how to handle criticism of
38: 4    the manner in which the New England
38: 5    Journal of Medicine handled the VIGOR
38: 6    publication?

| 18 | **38:12-39:5** | Curfman 01/24/2006 | 00:01:17 |
|---|---|---|---|

38: 12   A.   Okay.  To the best of my
38: 13   recollection, to the best of my memory,
38: 14   there was a member of the, what you call
38: 15   the PR firm, Morrissey & Company, that
38: 16   would provide us with e-mail updates
38: 17   about articles in the media that would be
38: 18   of interest to the New England Journal of
38: 19   Medicine, to the editors, other staff
38: 20   members at the journal.  And I would be
38: 21   copied on these e-mails.  I have to say
38: 22   that I didn't open all of them, but I did
38: 23   open some.  They would contain sometimes
38: 24   copies of articles in the media that
39: 1    relate to journal activities, and some of
39: 2    those, I'm sure, related to rofecoxib,
39: 3    other COX-2 inhibitors, and this general
39: 4    topic which was being written about in
39: 5    the media at that time.  So, that's the

**CURFMAN_2_DEFENSE_DIRECT**

| 19 | **42:17-42:22** | Curfman 01/24/2006            00:00:34 |
|---|---|---|
| | | 42: 17   Q.   And then moving on with our |
| | | 42: 18   chronology, did you and your colleagues, |
| | | 42: 19   Dr. Morrissey and Dr. Drazen, prepare and |
| | | 42: 20   post on your website a document called an |
| | | 42: 21   "Expression of Concern"? |
| | | 42: 22   A.   That's correct. |

| 20 | **43:15-43:16** | Curfman 01/24/2006            00:00:05 |
|---|---|---|
| | | 43: 15   Q.   I will hand you what we've |
| | | 43: 16   marked as Exhibit 3. |

| 21 | **43:17-43:20** | Curfman 01/24/2006            00:00:06 |
|---|---|---|
| | | 43: 17         Is that a copy of the |
| | | 43: 18   Expression of Concern? |
| | | 43: 19   A.   (Witness reviewing |
| | | 43: 20   document.) |

| 22 | **43:21-44:1** | Curfman 01/24/2006            00:00:17 |
|---|---|---|
| | | 43: 21         Yes, it is. |
| | | 43: 22   Q.   What date did you release |
| | | 43: 23   this and post it on your website? |
| | | 43: 24   A.   I believe it was December |
| | | 44: 1     8th or 9th, somewhere in that area. |

| 23 | **44:9-44:14** | Curfman 01/24/2006            00:00:25 |
|---|---|---|
| | | 44: 9     Q.   And do you remember that on |
| | | 44: 10   December 8th, Thursday, the day that you |
| | | 44: 11   decided to release this Expression of |
| | | 44: 12   Concern, that that was the day of closing |
| | | 44: 13   argument and submission to the jury of |
| | | 44: 14   the case ?                                            (Edited) |

| 24 | **44:15-44:17** | Curfman 01/24/2006            00:00:07 |
|---|---|---|
| | | 44: 15   A.   Well, I certainly know that |
| | | 44: 16   a case was going on.  I'm not familiar |
| | | 44: 17   with the term,                                       (Edited) |

| 25 | **44:17-45:3** | Curfman 01/24/2006            00:00:26 |
|---|---|---|
| | | 44: 17   but I know                                            (Edited) |
| | | 44: 18   that a case is going on.  But I honestly |
| | | 44: 19   didn't know exactly what was going on in |
| | | 44: 20   the case on that particular day. |
| | | 44: 21   Q.   Did you know that there was |
| | | 44: 22   a case being tried in Federal Court in |
| | | 44: 23   Houston in early December? |
| | | 44: 24   A.   Yes. |
| | | 45: 1     Q.   And, in fact, you got daily |
| | | 45: 2     updates on that trial, didn't you, from |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |
|---|---|---|---|
|  |  | 45: 3     your PR team and the others? |  |
| 26 | **45:6-45:9** | Curfman 01/24/2006 | 00:00:05 |
|  |  | 45: 6          THE WITNESS:  I don't -- I |  |
|  |  | 45: 7          don't know if they were daily |  |
|  |  | 45: 8          updates.  I think that there were |  |
|  |  | 45: 9          updates from time to time. |  |
| 27 | **45:11-45:15** | Curfman 01/24/2006 | 00:00:07 |
|  |  | 45: 11  Q.  And -- |  |
|  |  | 45: 12  A.  Newspaper articles. |  |
|  |  | 45: 13  Q.  And when you released the |  |
|  |  | 45: 14     Expression of Concern -- |  |
|  |  | 45: 15  A.  Uh-huh. |  |
| 28 | **45:21-46:11** | Curfman 01/24/2006 | 00:00:47 |
|  |  | 45: 21  Q.   Whether it was its purpose |  |
|  |  | 45: 22     or not, would you agree that the |  |
|  |  | 45: 23     Expression of Concern was critical of the |  |
|  |  | 45: 24     authors of the VIGOR study? |  |
|  |  | 46: 1     A.   The Expression of Concern |  |
|  |  | 46: 2          was focused on an article that was |  |
|  |  | 46: 3          published in the New England Journal of |  |
|  |  | 46: 4          Medicine, a document, scientific document |  |
|  |  | 46: 5          that we had obtained evidence that made |  |
|  |  | 46: 6          us concerned about the procedures that |  |
|  |  | 46: 7          led to the publication of that document. |  |
|  |  | 46: 8          And our Expression of Concern was focused |  |
|  |  | 46: 9          on the scientific document in order to |  |
|  |  | 46: 10        correct the scientific record.  It was |  |
|  |  | 46: 11        not focused on individuals. |  |
| 29 | **46:12-46:18** | Curfman 01/24/2006 | 00:00:12 |
|  |  | 46: 12  Q.  Well, do you remember that |  |
|  |  | 46: 13     you went out and gave a bunch of |  |
|  |  | 46: 14     interviews after the Expression of |  |
|  |  | 46: 15     Concern was published where you were |  |
|  |  | 46: 16     critical of the authors of the VIGOR |  |
|  |  | 46: 17     study? |  |
|  |  | 46: 18  A.  I did not -- |  |
| 30 | **46:21-47:6** | Curfman 01/24/2006 | 00:00:11 |
|  |  | 46: 21          THE WITNESS:  I did not go |  |
|  |  | 46: 22          out and give a bunch of |  |
|  |  | 46: 23          interviews. |  |
|  |  | 46: 24     BY MR. BECK: |  |
|  |  | 47: 1     Q.  You didn't? |  |
|  |  | 47: 2     A.  No, I did not. |  |
|  |  | 47: 3     Q.  How many did you give? |  |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |
|---|---|---|
| | 47: 4 | A.  The way the -- |
| | 47: 5 | Q.  Can you just answer how many |
| | 47: 6 | you gave? |

---

| 31 | **47:11 -48:1** | Curfman 01/24/2006          00:00:47 |
|---|---|---|
| | 47: 11 | THE WITNESS:  The way the -- |
| | 47: 12 | we were surprised that there were |
| | 47: 13 | so many press calls.  We did not |
| | 47: 14 | issue a press release about the |
| | 47: 15 | Expression of Concern.  We posted |
| | 47: 16 | it on our website, and after it |
| | 47: 17 | was posted, we began to receive |
| | 47: 18 | calls from the media.  I was |
| | 47: 19 | surprised that they were |
| | 47: 20 | interested in this.  For us -- |
| | 47: 21 | this was standard editorial |
| | 47: 22 | procedure for us.  We have issued |
| | 47: 23 | a total of three Expressions of |
| | 47: 24 | Concern since 2002, and we were |
| | 48: 1 | following standard procedures. |

---

| 32 | **48:24 -49:2** | Curfman 01/24/2006          00:00:06 |
|---|---|---|
| | 48: 24 | and my question was, how many interviews |
| | 49: 1 | did you give?  Can you answer that |
| | 49: 2 | question? |

---

| 33 | **49:7 -49:11** | Curfman 01/24/2006          00:00:11 |
|---|---|---|
| | 49: 7 | THE WITNESS:  I can't |
| | 49: 8 | really.  Probably more than four |
| | 49: 9 | and less than ten.  I don't know. |
| | 49: 10 | I didn't count the number of |
| | 49: 11 | telephone calls that came in. |

---

| 34 | **49:13 -49:23** | Curfman 01/24/2006          00:00:19 |
|---|---|---|
| | 49: 13 | Q.  When you said under oath a |
| | 49: 14 | minute ago that you did not issue a press |
| | 49: 15 | release, in fact, the New England Journal |
| | 49: 16 | of Medicine sent out an e-mail alert to |
| | 49: 17 | the media -- |
| | 49: 18 | A.  Right. |
| | 49: 19 | Q.  -- informing the media that |
| | 49: 20 | this Expression of Concern that you say |
| | 49: 21 | was routine was going to be posted later |
| | 49: 22 | that day? |
| | 49: 23 | A.  Yes. |

---

| 35 | **50:10 -50:14** | Curfman 01/24/2006          00:00:08 |
|---|---|---|
| | 50: 10 | Q.  And are you claiming that |
| | 50: 11 | the New England Journal of Medicine |

CURFMAN_2_DEFENSE_DIRECT

|  |  |  |  |
|---|---|---|---|
|  |  | 50: 12 | treated this Expression of Concern as a |
|  |  | 50: 13 | routine matter, nothing out of the |
|  |  | 50: 14 | ordinary? |
| 36 | **50:23-50:24** | Curfman 01/24/2006          00:00:01 |  |
|  |  | 50: 23 | THE WITNESS:  I didn't say |
|  |  | 50: 24 | that. |
| 37 | **51:6-51:10** | Curfman 01/24/2006          00:00:09 |  |
|  |  | 51: 6 | Q.  Are you claiming that the |
|  |  | 51: 7 | New England Journal of Medicine treated |
|  |  | 51: 8 | this Expression of Concern as a routine |
|  |  | 51: 9 | matter that was nothing out of the |
|  |  | 51: 10 | ordinary? |
| 38 | **51:13-51:17** | Curfman 01/24/2006          00:00:10 |  |
|  |  | 51: 13 | THE WITNESS:  This is part |
|  |  | 51: 14 | of the responsibility of editors. |
|  |  | 51: 15 | It's part of our job that when, |
|  |  | 51: 16 | after an article has been |
|  |  | 51: 17 | published in a journal, and it's |
| 39 | **51:17-51:19** | Curfman 01/24/2006          00:00:04 | (Edited) |
|  |  | 51: 17 | And it's |
|  |  | 51: 18 | not just our journal, it's any |
|  |  | 51: 19 | medical journal, if an article is |
| 40 | **51:20-52:9** | Curfman 01/24/2006          00:00:42 |  |
|  |  | 51: 20 | published in a journal and at a |
|  |  | 51: 21 | later time new evidence comes to |
|  |  | 51: 22 | light that causes the editors to |
|  |  | 51: 23 | be concerned about some aspect of |
|  |  | 51: 24 | that article, the process by which |
|  |  | 52: 1 | it was published, the data, the |
|  |  | 52: 2 | content, issuing an Expression of |
|  |  | 52: 3 | Concern is part of the standard |
|  |  | 52: 4 | operating procedure.  It's set |
|  |  | 52: 5 | down in the uniform requirements |
|  |  | 52: 6 | of the International Committee of |
|  |  | 52: 7 | Medical Journal Editors of which |
|  |  | 52: 8 | the New England Journal is one of |
|  |  | 52: 9 | the founding members. |
| 41 | **53:8-53:8** | Curfman 01/24/2006          00:00:03 |  |
|  |  | 53: 8 | Q.  What's Exhibit 4? |
| 42 | **54:17-55:1** | Curfman 01/24/2006          00:00:22 |  |
|  |  | 54: 17 | To the best of my |
|  |  | 54: 18 | recollection, when the Expression |
|  |  | 54: 19 | of Concern was posted on the |

**CURFMAN_2_DEFENSE_DIRECT**

| | | | |
|---|---|---|---|
| | 54: 20 | website, I believe that this may | |
| | 54: 21 | have been a statement that was | |
| | 54: 22 | placed below it or next to it, | |
| | 54: 23 | below it, I guess, to provide | |
| | 54: 24 | additional explanation for why it | |
| | 55: 1 | was being released. | |

| 43 | **55:3 -55:13** | Curfman 01/24/2006 | 00:00:22 |
|---|---|---|---|
| | 55: 3 | Q.  So, this was a statement | |
| | 55: 4 | issued by the New England Journal of | |
| | 55: 5 | Medicine on December 8th, the same day as | |
| | 55: 6 | the Expression of Concern, and it | |
| | 55: 7 | accompanied the Expression of Concern on | |
| | 55: 8 | the New England Journal of Medicine's | |
| | 55: 9 | website?  Isn't that true? | |
| | 55: 10 | A.  Well, if you tell me -- to | |
| | 55: 11 | the best of my recollection -- it doesn't | |
| | 55: 12 | say that here, but that's the best of my | |
| | 55: 13 | recollection.  If you tell me that's | |

| 44 | **58:1 -58:24** | Curfman 01/24/2006 | 00:00:43 |
|---|---|---|---|
| | 58: 1 | Q.  Now, you say that you did | |
| | 58: 2 | not write this statement, Exhibit 4, that | |
| | 58: 3 | was posted on the website.  Did Dr. | |
| | 58: 4 | Morrissey write it?  He was one of the | |
| | 58: 5 | co-authors with you of the Expression of | |
| | 58: 6 | Concern, right? | |
| | 58: 7 | A.  Yes, he was. | |
| | 58: 8 | Q.  Did Dr. Morrissey write this | |
| | 58: 9 | statement that was posted on your | |
| | 58: 10 | website? | |
| | 58: 11 | A.  I don't know who wrote this | |
| | 58: 12 | statement, to be honest with you. | |
| | 58: 13 | Q.  Well, don't you know, in | |
| | 58: 14 | fact, that it was written by your PR guy? | |
| | 58: 15 | . | (Edited) |
| | 58: 16 | . | (Edited) |
| | 58: 17 | THE WITNESS:  No, I don't | |
| | 58: 18 | know who wrote the statement. | |
| | 58: 19 | BY MR. BECK: | |
| | 58: 20 | Q.  Did you have a chance to | |
| | 58: 21 | spend some time reviewing this statement | |
| | 58: 22 | before it was posted on behalf of the New | |
| | 58: 23 | England Journal of Medicine on your | |
| | 58: 24 | website? | |

| 45 | **58:17 -59:9** | Curfman 01/24/2006 | 00:00:35 |
|---|---|---|---|

**CURFMAN_2_DEFENSE_DIRECT**

| | | | |
|---|---|---|---|
| | 58: 17 | THE WITNESS:  No, I don't | |
| | 58: 18 | know who wrote the statement. | |
| | 58: 19 | BY MR. BECK: | |
| | 58: 20 | Q.  Did you have a chance to | |
| | 58: 21 | spend some time reviewing this statement | |
| | 58: 22 | before it was posted on behalf of the New | |
| | 58: 23 | England Journal of Medicine on your | |
| | 58: 24 | website? | |
| | 59: 1 | A.  I believe I saw it briefly, | |
| | 59: 2 | but I did not spend a lot of time with | |
| | 59: 3 | it, no. | |
| | 59: 4 | Q.  Do you remember that you | |
| | 59: 5 | weren't even shown this statement that | |
| | 59: 6 | was posted on your website until the day | |
| | 59: 7 | it was posted? | |
| | 59: 8 | A.  I think that's certainly | |
| | 59: 9 | possible, yes. | |

| 46 | **59:23-60:4** | Curfman 01/24/2006 | 00:00:12 |
|---|---|---|---|
| | 59: 23 | Q.  Ed, do you remember Ed? | |
| | 59: 24 | A.  Ed? | |
| | 60: 1 | Q.  The PR guy named Ed?  Do you | |
| | 60: 2 | remember a PR guy named Ed that you | |
| | 60: 3 | talked with almost every day during this | |
| | 60: 4 | period? | |

| 47 | **60:15-60:20** | Curfman 01/24/2006 | 00:00:07 |
|---|---|---|---|
| | 60: 15 | THE WITNESS:  You mean Ed | |
| | 60: 16 | Cafasso?  Is that who you mean, Ed | |
| | 60: 17 | Cafasso? | |
| | 60: 18 | BY MR. BECK: | |
| | 60: 19 | Q.  Yes.  The PR guy, Ed. | |
| | 60: 20 | A.  Yes. | |

| 48 | **61:20-62:2** | Curfman 01/24/2006 | 00:00:21 |
|---|---|---|---|
| | 61: 20 | Q.  During early December, were | |
| | 61: 21 | the senior editors of the New England | |
| | 61: 22 | Journal of Medicine following the trial | |
| | 61: 23 | down there in Houston so closely that | |
| | 61: 24 | they were actually reading or being | |
| | 62: 1 | informed of the contents of the testimony | |
| | 62: 2 | that was coming in during that trial? | |

| 49 | **62:5-62:7** | Curfman 01/24/2006 | 00:00:06 |
|---|---|---|---|
| | 62: 5 | THE WITNESS:  I can really | |
| | 62: 6 | only speak for myself, and the | |
| | 62: 7 | answer is unequivocally no. | |

| 50 | **62:15-62:16** | Curfman 01/24/2006 | 00:00:04 |
|---|---|---|---|

**CURFMAN_2_DEFENSE_DIRECT**

|   |   |
|---|---|
| 62: 15 | Q.  I'm handing you what we've |
| 62: 16 | marked as Exhibit 5. |

---

| 51 | **62:19-64:10** | Curfman 01/24/2006 | 00:01:29 |

| 62: 19 | Q.  Do you see here, sir, that |
| 62: 20 | this is an e-mail, internal e-mail from |
| 62: 21 | or among the senior editors of the New |
| 62: 22 | England Journal of Medicine? |
| 62: 23 | A.  Yes. |
| 62: 24 | Q.  And it's from Dr. Drazen; |
| 63: 1 | right? |
| 63: 2 | A.  Well, there are two e-mails |
| 63: 3 | here.  Are you talking -- |
| 63: 4 | Q.  The one on the top. |
| 63: 5 | A.  The one on the top.  Yes. |
| 63: 6 | From Dr. Drazen, yes. |
| 63: 7 | Q.  He's the editor-in-chief of |
| 63: 8 | the New England Journal of Medicine, |
| 63: 9 | right? |
| 63: 10 | A.  Yes, he is. |
| 63: 11 | Q.  It's dated Saturday, |
| 63: 12 | December 3rd; correct? |
| 63: 13 | A.  Right. |
| 63: 14 | Q.  And it's to you, right? |
| 63: 15 | A.  Uh-huh. |
| 63: 16 | Q.  And to Dr. Morrissey, |
| 63: 17 | correct? |
| 63: 18 | A.  Right. |
| 63: 19 | Q.  And you would be the three |
| 63: 20 | top editors of the New England Journal of |
| 63: 21 | Medicine, right? |
| 63: 22 | A.  We're three of the top |
| 63: 23 | editors, yes. |
| 63: 24 | Q.  And do you see here where |
| 64: 1 | the editor-in-chief of the New England |
| 64: 2 | Journal of Medicine is reporting to you |
| 64: 3 | concerning the contents of the deposition |
| 64: 4 | testimony of Dr. Reicin? |
| 64: 5 | A.  Uh-huh. |
| 64: 6 | Q.  Why was the editor-in-chief |
| 64: 7 | of the New England Journal of Medicine |
| 64: 8 | giving you updates concerning the |
| 64: 9 | contents of Dr. Reicin's testimony down |
| 64: 10 | there in the Houston trial? |

---

| 52 | **65:9-65:10** | Curfman 01/24/2006 | 00:00:01 |

| 65: 9 | Q.  And I will read it into the |

---

|    |              | 65: 10   record.                          |          |
|----|--------------|-------------------------------------------|----------|
| 53 | 65:13 -65:20 | Curfman 01/24/2006           00:00:22     |          |

65: 13   Q.  "Steve and Greg, in her
65: 14   depositional testimony Reicin says that
65: 15   there were also GI events that were not
65: 16   recorded but came in late.  We should
65: 17   make this clear in the note of concern
65: 18   and ask them to provide full reporting of
65: 19   all data they had on or before October
65: 20   13, 2000."

| 54 | 65:21 -65:21 | Curfman 01/24/2006           00:00:01     |          |

65: 21   A.  Okay.

| 55 | 68:14 -69:8 | Curfman 01/24/2006           00:00:59     |          |

68: 14   Q.  When you released the
68: 15   editorial on December 8th, I think you
68: 16   indicated before you didn't know, you
68: 17   say, precisely what was going on in the
68: 18   trial down in Houston.  Is that right?
68: 19   A.  Right.
68: 20   Q.  You knew that the trial was
68: 21   still going on down in Houston?
68: 22   A.  Yes.
68: 23   Q.  You also knew, obviously,
68: 24   that Vioxx was not being prescribed and
69: 1   sold on December 8th, 2005; right?
69: 2   A.  Yes.  That's right.  We
69: 3   generally -- we have referred to it as
69: 4   rofecoxib, but, yes, that's right.
69: 5   Q.  And so on December 8th, when
69: 6   you released this Expression of Concern,
69: 7   there was no public health emergency --
69: 8   A.  No.

| 56 | 70:4 -70:16 | Curfman 01/24/2006           00:00:48     |          |

70: 4   A.  There was no public health
70: 5   emergency to deal with.  We did it
70: 6   because that article continued to exist
70: 7   in our journal archive, and as editors of
70: 8   the journal, we are responsible for the
70: 9   integrity of that archive.  And our
70: 10   Expression of Concern was focused very
70: 11   narrowly on trying to set -- trying to
70: 12   inform the medical community that we
70: 13   believe now that there were some problems
70: 14   with that article and how it came out.

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |
|---|---|---|
| | 70: 15 | And it was our responsibility to inform |
| | 70: 16 | the medical community about that. |

| 57 | **71:11 - 72:17** | Curfman 01/24/2006          00:01:17 |
|---|---|---|
| | 71: 11 | Q.  You've got what we've marked |
| | 71: 12 | as Defendant's Exhibit 6 in front of you, |
| | 71: 13 | right? |
| | 71: 14 | A.  Right.  Uh-huh. |
| | 71: 15 | Q.  And do you see that the |
| | 71: 16 | first page of Defendant's Exhibit 6 is an |
| | 71: 17 | e-mail string of e-mails from December |
| | 71: 18 | 8th? |
| | 71: 19 | A.  Right. |
| | 71: 20 | Q.  And the first one is from |
| | 71: 21 | Karen Pedersen -- |
| | 71: 22 | A.  Pedersen, yes. |
| | 71: 23 | Q.  Pederson to you? |
| | 71: 24 | A.  Right. |
| | 72: 1 | Q.  With a copy to Dr. |
| | 72: 2 | Morrissey? |
| | 72: 3 | A.  That's right. |
| | 72: 4 | Q.  And it says she's forwarding |
| | 72: 5 | something called talking points; right? |
| | 72: 6 | A.  Yes.  That's what I referred |
| | 72: 7 | to earlier. |
| | 72: 8 | Q.  And Karen Pedersen, is she |
| | 72: 9 | an internal PR person for the New England |
| | 72: 10 | Journal of Medicine? |
| | 72: 11 | A.  She's the manager of media |
| | 72: 12 | relations.  We don't call her a PR |
| | 72: 13 | person, but she is our interface with the |
| | 72: 14 | media. |
| | 72: 15 | Q.  And she's forwarding on |
| | 72: 16 | talking points that were sent to her by |
| | 72: 17 | Ed Cafasso; right? |

| 58 | **72:20 - 72:22** | Curfman 01/24/2006          00:00:03 |
|---|---|---|
| | 72: 20 | THE WITNESS:  I don't see |
| | 72: 21 | the talking points.  Are they |
| | 72: 22 | here? |

| 59 | **73:2 - 73:20** | Curfman 01/24/2006          00:00:32 |
|---|---|---|
| | 73: 2 | Q.  But do you see right |
| | 73: 3 | underneath the first e-mail -- |
| | 73: 4 | A.  Yeah. |
| | 73: 5 | Q.  -- that we looked at, which |
| | 73: 6 | would have been the most recent e-mail, |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |  |
|---|---|---|---|---|
|  | 73: 7 | there's an e-mail -- she's forwarding the |  |  |
|  | 73: 8 | thing that she got right below from Ed |  |  |
|  | 73: 9 | Cafasso to her -- |  |  |
|  | 73: 10 | A.  Right. |  |  |
|  | 73: 11 | Q.   -- "Subject:  Talking |  |  |
|  | 73: 12 | points," "Importance:  High"? |  |  |
|  | 73: 13 | A.  Uh-huh.  Yep. |  |  |
|  | 73: 14 | Q.  And Ed Cafasso, he's the |  |  |
|  | 73: 15 | outside PR guy; right? |  |  |
|  | 73: 16 | A.  Yes. |  |  |
|  | 73: 17 | Q.   So, he's attaching the |  |  |
|  | 73: 18 | talking points and the Q&A, he says; |  |  |
|  | 73: 19 | correct? |  |  |
|  | 73: 20 | A.  Right. |  |  |

| 60 | **74:3 -74:14** | Curfman 01/24/2006            00:00:20 |  |  |
|---|---|---|---|---|
|  | 74: 3 | Q.  Are you on the page that has |  |  |
|  | 74: 4 | at the top the title "Expression of |  |  |
|  | 74: 5 | Concern: Key Points and Q&A." |  |  |
|  | 74: 6 | A.  Right. |  |  |
|  | 74: 7 | Q.  Are these the kind of |  |  |
|  | 74: 8 | talking points that you referred to |  |  |
|  | 74: 9 | earlier in your testimony that people |  |  |
|  | 74: 10 | would give you to use? |  |  |
|  | 74: 11 | A.  Sometimes they would, yes. |  |  |
|  | 74: 12 | Q.  And they did this time; |  |  |
|  | 74: 13 | right? |  |  |
|  | 74: 14 | A.  They did. |  | (Edited) |

| 61 | **74:17 -75:9** | Curfman 01/24/2006            00:00:42 |  |  |
|---|---|---|---|---|
|  | 74: 17 | Q.  Well, let's take a look down |  |  |
|  | 74: 18 | at the one that says "Why Did we Release |  |  |
|  | 74: 19 | this Today?" |  |  |
|  | 74: 20 | A.  Uh-huh. |  |  |
|  | 74: 21 | Q.  And the talking point says, |  |  |
|  | 74: 22 | "We felt it was important to release this |  |  |
|  | 74: 23 | information as soon as we understood how |  |  |
|  | 74: 24 | it impacted the conclusions of the paper |  |  |
|  | 75: 1 | we had published.  We felt we should |  |  |
|  | 75: 2 | announce this once we had completed our |  |  |
|  | 75: 3 | investigation of the data, which included |  |  |
|  | 75: 4 | a statistical analysis, and had raised |  |  |
|  | 75: 5 | our concerns with the authors." |  |  |
|  | 75: 6 | Did you follow that talking |  |  |
|  | 75: 7 | point when members of the media asked you |  |  |
|  | 75: 8 | why you released the Expression of |  |  |
|  | 75: 9 | Concern when the jury was out in Houston? |  |  |

| 62 | **75:15 -75:15** | Curfman 01/24/2006 | 0 |
| | | 75: 15 | THE WITNESS: I don't -- |

| 63 | **76:1 -76:11** | Curfman 01/24/2006 | 00:00:33 |

76: 1   Q.  Is it still your testimony
76: 2     that you didn't know on December 8th when
76: 3     you released the Expression of Concern
76: 4     that the jury was out in Houston?
76: 5   A.  I don't know how I could
76: 6     have known that.  I mean, you know, it's
76: 7     not something that I would have known.
76: 8   Q.  Did you use this talking
76: 9     point when you answered questions from
76: 10    the media about why you released that
76: 11    Expression of Concern on that date?

| 64 | **76:16 -76:21** | Curfman 01/24/2006 | 00:00:14 |

76: 16  Q.  Well, you were asked about
76: 17    why in the media, weren't you?
76: 18  A.  I don't recall, but what I
76: 19    can say is that I didn't use this talking
76: 20    point because I didn't need to use this
76: 21    talking point.                                      (Edited)

| 65 | **77:1 -77:17** | Curfman 01/24/2006 | 00:00:48 |

77: 1           THE WITNESS:  The truth of
77: 2     the matter is that we released the
77: 3     Expression of Concern when we had
77: 4     all of the data assembled, when we
77: 5     had deliberated, we had the facts
77: 6     in hand.  We very carefully
77: 7     deliberated.  The editors had come
77: 8     together, reviewed all the
77: 9     information that we had, including
77: 10    information that we obtained on
77: 11    November 21st, 2005.  We made our
77: 12    best judgment as editors of the
77: 13    New England Journal of Medicine
77: 14    with many years of experience
77: 15    collectively, and we sat down and
77: 16    wrote the document, the Expression
77: 17    of Concern.                                         (Edited)

| 66 | **78:1 -78:6** | Curfman 01/24/2006 | 00:00:15 |

78: 1        And when we                                    (Edited)
78: 2     finally reached what we considered
78: 3     to be a final version after going
78: 4     through many versions of the

**CURFMAN_2_DEFENSE_DIRECT**

| | | | | | |
|---|---|---|---|---|---|
| | | 78: 5 | Expression of Concern we released | | |
| | | 78: 6 | it. | | (Edited) |
| 67 | **80:17 -80:19** | Curfman 01/24/2006 | | 00:00:06 | |
| | | 80: 17 | Q.  We've been looking at the | | |
| | | 80: 18 | December 8 talking points.  Let me show | | |
| | | 80: 19 | you Exhibit 7. | | |
| 68 | **81:7 -81:10** | Curfman 01/24/2006 | | 00:00:07 | |
| | | 81: 7 | BY MR. BECK: | | |
| | | 81: 8 | Q.  Do you see that this | | |
| | | 81: 9 | document is the December 5th version of | | |
| | | 81: 10 | the talking points? | | |
| 69 | **82:15 -83:7** | Curfman 01/24/2006 | | 00:00:38 | |
| | | 82: 15 | Q.  I apologize.  I've got the | | |
| | | 82: 16 | date wrong.  So, now we're talking about | | |
| | | 82: 17 | after it's been released and out there in | | |
| | | 82: 18 | the public for a while; right? | | |
| | | 82: 19 | A.  Right.  Uh-huh. | | |
| | | 82: 20 | Q.  And so this was a later | | |
| | | 82: 21 | version of the talking points.  And down | | |
| | | 82: 22 | at the bottom it says "Why Did We Release | | |
| | | 82: 23 | This When We Did?"  Could you read for me | | |
| | | 82: 24 | the first sentence -- | | |
| | | 83: 1 | A.  Sure. | | |
| | | 83: 2 | Q.  -- of the talking points? | | |
| | | 83: 3 | A.  Sure.  "We made this | | |
| | | 83: 4 | information public as soon as we could, | | |
| | | 83: 5 | without regard to the trial." | | |
| | | 83: 6 | Q.  Now, that statement in the | | |
| | | 83: 7 | talking points was false, wasn't it? | | |
| 70 | **83:11 -83:15** | Curfman 01/24/2006 | | 00:00:14 | |
| | | 83: 11 | Q.  In fact, when you were | | |
| | | 83: 12 | planning the release of the Expression of | | |
| | | 83: 13 | Concern, you were planning it to coincide | | |
| | | 83: 14 | with specific events of the trial down in | | |
| | | 83: 15 | Houston.  Isn't that true? | | |
| 71 | **83:22 -84:2** | Curfman 01/24/2006 | | 00:00:12 | |
| | | 83: 22 | You were planning to release | | |
| | | 83: 23 | the Expression of Concern based on | | |
| | | 83: 24 | specific events that you had been told | | |
| | | 84: 1 | would take place down in the trial in | | |
| | | 84: 2 | Houston, isn't that true, sir? | | |
| 72 | **84:6 -84:6** | Curfman 01/24/2006 | | 00:00:01 | |
| | | 84: 6 | THE WITNESS:  No. | | |

**CURFMAN_2_DEFENSE_DIRECT**

| | | | |
|---|---|---|---|
| 73 | **84:14 -84:14** | Curfman 01/24/2006 | 00:00:03 |
| | | 84: 14   Q.   What is Exhibit 8? | |

| | | | |
|---|---|---|---|
| 74 | **84:18 -84:22** | Curfman 01/24/2006 | 00:00:21 |
| | | 84: 18          THE WITNESS:  Right.  This | |
| | | 84: 19       is some e-mail from December 8th | |
| | | 84: 20       among the various editors of the | |
| | | 84: 21       Journal about the Expression of | |
| | | 84: 22       Concern. | |

| | | | |
|---|---|---|---|
| 75 | **84:24 -85:18** | Curfman 01/24/2006 | 00:01:02 |
| | | 84: 24   Q.   And on the bottom, which | |
| | | 85: 1       would be the earliest of the three | |
| | | 85: 2       e-mails printed on this page; is that | |
| | | 85: 3       correct? | |
| | | 85: 4    A.   Yes.  December 7th, right. | |
| | | 85: 5    Q.   And it's December 7th, 6:00 | |
| | | 85: 6       p.m. from Tad Campion.  Who is Tad | |
| | | 85: 7       Campion? | |
| | | 85: 8    A.   He's the senior deputy | |
| | | 85: 9       editor at the journal. | |
| | | 85: 10   Q.   Then it says to -- and it | |
| | | 85: 11     has Lisa Scott, Karen Pedersen, Sandra | |
| | | 85: 12     Jacobs, Andrea Graham and Julie Mooza. | |
| | | 85: 13     Are they all employees of the New England | |
| | | 85: 14     Journal of Medicine? | |
| | | 85: 15   A.   This is the web team, yes. | |
| | | 85: 16   Q.   And then cc, that means | |
| | | 85: 17     copies; right? | |
| | | 85: 18   A.   That's right. | |

| | | | |
|---|---|---|---|
| 76 | **87:6 -88:2** | Curfman 01/24/2006 | 00:00:44 |
| | | 87: 6    Q.   And then you're copied on | |
| | | 87: 7       this December 7th 6:00 p.m. e-mail; | |
| | | 87: 8       right? | |
| | | 87: 9    A.   Yes. | |
| | | 87: 10   Q.   Dr. Drazen, the | |
| | | 87: 11     editor-in-chief is also copied; correct? | |
| | | 87: 12   A.   Correct. | |
| | | 87: 13   Q.   Then the subject, what does | |
| | | 87: 14     the subject line read? | |
| | | 87: 15   A.   "Probable Early Release | |
| | | 87: 16     Tomorrow P.M.," is that what you're | |
| | | 87: 17     referring to? | |
| | | 87: 18   Q.   Yes.  Underneath where it | |
| | | 87: 19     says "Probable Early Release Tomorrow | |
| | | 87: 20     P.M.," there's a line that says | |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |
|---|---|---|---|
| | | 87: 21 | "Importance," and what did Mr. Campion |
| | | 87: 22 | say was the importance of this e-mail? |
| | | 87: 23 | A.  It says "High." |
| | | 87: 24 | Q.   Then the e-mail says, |
| | | 88: 1 | "Steve."  Who would that be?  Is that |
| | | 88: 2 | Steve Morrissey? |

| 77 | 88:4-88:5 | Curfman 01/24/2006 | 00:00:03 |
|---|---|---|---|
| | | 88: 4 | THE WITNESS:  That would |
| | | 88: 5 | probably be Dr. Morrissey, yes. |

| 78 | 88:7-89:3 | Curfman 01/24/2006 | 00:00:51 |
|---|---|---|---|
| | | 88: 7 | Q.   "Steve wants us to know |
| | | 88: 8 | that we need to get ready to post as an |
| | | 88: 9 | early release the Expression of Concern |
| | | 88: 10 | that is scheduled for the editorial pages |
| | | 88: 11 | of the December 29th issue." |
| | | 88: 12 | Let me ask you first, as of |
| | | 88: 13 | December 7 at 6 p.m., in fact, the |
| | | 88: 14 | Expression of Concern had been scheduled |
| | | 88: 15 | to be printed on December 29th with the |
| | | 88: 16 | regular edition of the journal, right? |
| | | 88: 17 | A.   Yes. |
| | | 88: 18 | Q.   And then it says, "The |
| | | 88: 19 | reason," that's the reason for this early |
| | | 88: 20 | release; right? |
| | | 88: 21 | A.   Right. |
| | | 88: 22 | Q.   "The reason is that |
| | | 88: 23 | tomorrow's testimony in the Vioxx trial |
| | | 88: 24 | may involve part of a deposition that |
| | | 89: 1 | Greg gave about the NEJM and the VIGOR |
| | | 89: 2 | trial."  "Greg" is you; right? |
| | | 89: 3 | A.   That's right. |

| 79 | 89:4-89:16 | Curfman 01/24/2006 | 00:00:31 |
|---|---|---|---|
| | | 89: 4 | Q.   And then it says, "If so, |
| | | 89: 5 | there will be press attention, and we |
| | | 89: 6 | want the press to know about the official |
| | | 89: 7 | NEJM statement.  That is being laid out |
| | | 89: 8 | and needs to be ready to go" on the |
| | | 89: 9 | website "as an early release."  Right? |
| | | 89: 10 | A.   Correct. |
| | | 89: 11 | Q.   "Steve or Greg or I will |
| | | 89: 12 | let you know when it's time to go. |
| | | 89: 13 | Things in a trial can always get pushed |
| | | 89: 14 | back a day or two, so we cannot yet be |
| | | 89: 15 | positive."  Right? |

|       |              | 89: 16   A.  Uh-huh.                           |          |
|-------|--------------|------------------------------------------------|----------|

| 80 | 89:20 -90:15 | Curfman 01/24/2006 | 00:00:56 |
|----|--------------|--------------------|----------|

89: 20   Q.  And that's what you were
89: 21    told on December 7, 6:00 p.m.; correct?
89: 22   A.  Right.
89: 23   Q.   Then earlier you said that
89: 24    you were surprised at the press reaction
90: 1    to the --
90: 2   A.  Yes.
90: 3   Q.  -- Expression of Concern?
90: 4   A.  Yes, I was.
90: 5   Q.  Do you see the last line, it
90: 6    says, "It will be essential to notify the
90: 7    press and make it prominent on the press
90: 8    site"?  Do you see that?
90: 9   A.  Yes, I do.
90: 10   Q.  Now, how is it that you and
90: 11    your colleagues at the New England
90: 12    Journal of Medicine knew that the
90: 13    plaintiffs' lawyers were hoping to play
90: 14    your deposition on the next day, December
90: 15    8, as is reflected in this e-mail?

| 81 | 90:19 -90:22 | Curfman 01/24/2006 | 00:00:07 |
|----|--------------|--------------------|----------|

90: 19        THE WITNESS:  I don't -- you
90: 20     know, Dr. Campion didn't tell me
90: 21     where he got the information, so,
90: 22     I can't answer that.

| 82 | 90:24 -92:5 | Curfman 01/24/2006 | 00:01:32 |
|----|-------------|--------------------|----------|

90: 24   Q.  Well, do you know who it was
91: 1    from the New England Journal of Medicine
91: 2    who was gathering information about what
91: 3    was expected to be done down there in the
91: 4    Houston trial and when it was expected to
91: 5    happen?
91: 6   A.  I don't know who was
91: 7    collecting that, no.
91: 8   Q.   Do you know whether somebody
91: 9    at the New England Journal of Medicine
91: 10    was in communication with the plaintiffs'
91: 11    lawyers to find out what they were
91: 12    planning to do each day?
91: 13   A.  I certainly am not aware of
91: 14    that, no.
91: 15   Q.  Well, did you ever ask Tad

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| 91: 16 | Campion how he came to know that the | |
| 91: 17 | plaintiffs' lawyers were hoping to play | |
| 91: 18 | your deposition on December 8th? | |
| 91: 19 | A.  I didn't ask him, no.  I | |
| 91: 20 | received the e-mail, and that was really | |
| 91: 21 | the extent of the communication. | |
| 91: 22 | Q.   Did you ever tell any of the | |
| 91: 23 | newspaper or broadcast media folks that | |
| 91: 24 | you gave interviews to that, in fact, the | |
| 92: 1 | reason that you released the Expression | |
| 92: 2 | of Concern on December 8th instead of | |
| 92: 3 | waiting until December 9th was because of | |
| 92: 4 | what you expected was going to happen | |
| 92: 5 | down in the Vioxx trial? | |

---

**83**    **92:8 -92:11**    Curfman 01/24/2006              00:00:05

92: 8          THE WITNESS:  I don't recall
92: 9          getting that question or giving
92: 10          that kind of answer.  I don't
92: 11          recall.

---

**84**    **92:13 -92:21**    Curfman 01/24/2006              00:00:18

92: 13   Q.   Did you ever tell anybody
92: 14    that the reason that you released the
92: 15    Expression of Concern in the middle of
92: 16    the trial in Houston was because you'd
92: 17    been told that they were planning on
92: 18    playing your testimony, and you wanted to
92: 19    coordinate the release of the Expression
92: 20    of Concern with the playing of your
92: 21    testimony in Houston?

---

**85**    **93:13 -93:14**    Curfman 01/24/2006              00:00:01

93: 13          THE WITNESS:  Could you
93: 14          repeat the question?

---

**86**    **93:16 -94:1**    Curfman 01/24/2006              00:00:20

93: 16   Q.   Sure.
93: 17          Did you ever tell anybody
93: 18    that the reason you released the
93: 19    Expression of Concern in the middle of
93: 20    the trial in Houston was because you'd
93: 21    been told that they were planning on
93: 22    playing your testimony, and you wanted to
93: 23    coordinate the release of the Expression
93: 24    of Concern with the playing of your
94: 1    testimony down in Houston?

---

**87**    **94:5 -95:4**    Curfman 01/24/2006              00:00:57

---

94: 5          THE WITNESS:  Well, I
94: 6     can't -- I can't imagine that I
94: 7     would have said that because Dr.
94: 8     Campion articulates very precisely
94: 9     in his e-mail what the issue was
94: 10    with respect to my testimony.  And
94: 11    the issue with respect to my
94: 12    testimony was that my testimony
94: 13    consisted, as it does today, with
94: 14    a series of questions and answers.
94: 15    And I did the best that I could in
94: 16    that deposition of November 21st
94: 17    to answer the questions.  But it
94: 18    was not a written, an official
94: 19    written statement of the journal.
94: 20    It was testimony, it was oral
94: 21    testimony.
94: 22       We believed that in order to
94: 23    make sure that the Expression of
94: 24    Concern was clearly understood by
95: 1     those who would be interested in
95: 2     the public, that we needed to have
95: 3     our official statement out before
95: 4     the deposition was played.

---

88     96:4 -96:8     Curfman 01/24/2006          00:00:12
96: 4    Q.  Well, do you now admit that
96: 5    the timing of the release of the
96: 6    Expression of Concern was, in fact,
96: 7    dictated by what was happening down in
96: 8    the Houston trial?

---

89     96:11 -96:19     Curfman 01/24/2006          00:00:19
96: 11       THE WITNESS:  Well, that's
96: 12    not what -- as I just said, as far
96: 13    as the trial is concerned, I was
96: 14    not following the trial closely.
96: 15    The issue was my personal
96: 16    testimony and when that would be
96: 17    played and how that might be
96: 18    interpreted or misinterpreted by
96: 19    members of the media.

---

90     96:24 -97:8     Curfman 01/24/2006          00:00:18
96: 24       THE WITNESS:  So, yeah, it's
97: 1     not a matter of admitting to
97: 2     anything.  It's what I have just

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |
|---|---|---|---|
| | 97: 3 | said and said a moment ago. I | |
| | 97: 4 | think the explanation is quite | |
| | 97: 5 | clear and coherent, and that's my | |
| | 97: 6 | answer to your question. I can't | |
| | 97: 7 | really say any more about it than | |
| | 97: 8 | that. | |

| 91 | **97:10 - 97:14** | Curfman 01/24/2006 | 00:00:10 |
|---|---|---|---|
| | 97: 10 | Q. Well, do you remember | |
| | 97: 11 | earlier this morning saying that the | |
| | 97: 12 | Expression of Concern, the timing of its | |
| | 97: 13 | release had nothing to do with what was | |
| | 97: 14 | going on in the trial in Houston? | |

| 92 | **97:16 - 98:1** | Curfman 01/24/2006 | 00:00:20 |
|---|---|---|---|
| | 97: 16 | THE WITNESS: Well, what I | |
| | 97: 17 | recall is that you asked, you | |
| | 97: 18 | know, did it have something to do | |
| | 97: 19 | with the trial. And it did have | |
| | 97: 20 | something to do with my testimony. | |
| | 97: 21 | But it turned out that my | |
| | 97: 22 | testimony was not part of the | |
| | 97: 23 | trial at all anyway. It never was | |
| | 97: 24 | played, and, therefore, was not | |
| | 98: 1 | part of the trial. | |

| 93 | **98:3 - 98:18** | Curfman 01/24/2006 | 00:00:37 |
|---|---|---|---|
| | 98: 3 | Q. But you released the | |
| | 98: 4 | Expression of Concern early anyway -- | |
| | 98: 5 | A. Yes, we did. | |
| | 98: 6 | Q. -- even though there was no | |
| | 98: 7 | need to in order to have the record | |
| | 98: 8 | straight concerning your deposition; | |
| | 98: 9 | right? | |
| | 98: 10 | A. Yes. But we were prepared, | |
| | 98: 11 | and as I explained to you, according to | |
| | 98: 12 | the uniform requirements, and that's an | |
| | 98: 13 | important word, "requirements," of the | |
| | 98: 14 | International Committee of Medical | |
| | 98: 15 | Journal Editors, this is what was | |
| | 98: 16 | expected of us as editors. We had the | |
| | 98: 17 | information put together, and we released | |
| | 98: 18 | it. | |

| 94 | **100:8 - 100:15** | Curfman 01/24/2006 | 00:00:28 |
|---|---|---|---|
| | 100: 8 | Q. Looking still at Exhibit 8, | |
| | 100: 9 | we were looking at the bottom of the | |
| | 100: 10 | three e-mails, which would have been the | |

|  |  |  |  |
|---|---|---|---|

100: 11   earliest.  If you look up to the middle
100: 12   one, you see that that's from Dr. Drazen
100: 13   at 6:57 a.m. on December 8th to several
100: 14   people, including you?
100: 15   A.  Right.

---

95   **100:20 - 101:5**   Curfman 01/24/2006              00:00:21

100: 20   Q.  And Dr. Drazen says "All," I
100: 21   guess that means to everybody whose name
100: 22   appears on the e-mail; right?
100: 23   A.  Right.
100: 24   Q.  And he says, "I think it
101: 1    would make sense for me to contact" and
101: 2    then there's a name I can't pronounce.
101: 3    Can you pronounce that name?
101: 4    A.  Yes.  Her name is Snigdha
101: 5    Prakash.

---

96   **101:14 - 101:20**   Curfman 01/24/2006              00:00:17

101: 14   Q.  Who is Snigdha Prakash, and
101: 15   how did you learn how to pronounce that
101: 16   name so well?
101: 17   A.  Snigdha Prakash is a
101: 18   reporter for National Public Radio.
101: 19   Q.  She follows the Vioxx
101: 20   litigation?

---

97   **101:22 - 101:24**   Curfman 01/24/2006              00:00:04

101: 22        THE WITNESS:  I think she
101: 23   follows a lot of things.  She
101: 24   probably follows that too, yes.

---

98   **102:2 - 102:4**   Curfman 01/24/2006              00:00:05

102: 2    Q.  Well, as you know, it's not
102: 3    just probably.  You know that she follows
102: 4    it quite closely, don't you?

---

99   **102:9 - 102:11**   Curfman 01/24/2006              00:00:04

102: 9         THE WITNESS:  She's done
102: 10   stories on NPR about the
102: 11   litigation, yes.

---

100   **102:13 - 102:16**   Curfman 01/24/2006              00:00:06

102: 13   Q.  And she's quoted people from
102: 14   the New England Journal of Medicine about
102: 15   the litigation, hasn't she?
102: 16   A.  I believe she has.

---

101   **102:24 - 103:13**   Curfman 01/24/2006              00:00:26

102: 24   Q.  In any event, here is the

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 103: 1 | editor-in-chief asking whether it makes |
| | 103: 2 | sense in connection with the probable |
| | 103: 3 | early release of the Expression of |
| | 103: 4 | Concern to contact this reporter from |
| | 103: 5 | National Public Radio; right? |
| | 103: 6 | A.  Uh-huh. |
| | 103: 7 | Q.  And then if we look up to |
| | 103: 8 | the next e-mail, you see that that's from |
| | 103: 9 | you? |
| | 103: 10 | A.  That's right. |
| | 103: 11 | Q.  To Dr. Drazen and others; |
| | 103: 12 | right? |
| | 103: 13 | A.  Correct. |

| 102 | **103:15-104:1** | Curfman 01/24/2006        00:00:23 |
|---|---|---|
| | 103: 15 | Read what you said in your |
| | 103: 16 | e-mail back to Dr. Drazen about |
| | 103: 17 | contacting the NPR reporter in connection |
| | 103: 18 | with the early release of the Expression |
| | 103: 19 | of Concern. |
| | 103: 20 | A.  "I have some concerns about |
| | 103: 21 | giving her an exclusive.  Langreth has |
| | 103: 22 | been following the situation closely.  I |
| | 103: 23 | think that maybe both of them could be |
| | 103: 24 | called at the time the media e-mail is |
| | 104: 1 | sent out." |

| 103 | **104:10-104:16** | Curfman 01/24/2006        00:00:20 |
|---|---|---|
| | 104: 10 | Q.  Did the New England Journal |
| | 104: 11 | of Medicine send out a media e-mail |
| | 104: 12 | alerting members of the media to the |
| | 104: 13 | Expression of Concern? |
| | 104: 14 | A.  That's routine for any |
| | 104: 15 | kind of early web release, to inform |
| | 104: 16 | people that it's there, yes. |

| 104 | **108:2-108:23** | Curfman 01/24/2006        00:00:48 |
|---|---|---|
| | 108: 2 | Q.  Certainly it's not part of |
| | 108: 3 | the regular procedure with Expressions of |
| | 108: 4 | Concern to call up individual members of |
| | 108: 5 | the media and give them exclusive |
| | 108: 6 | interviews, is it? |
| | 108: 7 | A.  Well, we've only done three |
| | 108: 8 | Expressions of Concern since 2002, so, we |
| | 108: 9 | don't have a big track record with these. |
| | 108: 10 | Q.  Your e-mail referred to |
| | 108: 11 | Langreth.  Who's Langreth? |

**CURFMAN_2_DEFENSE_DIRECT**

108: 12   A.   Robert Langreth is a
108: 13    reporter with Forbes magazine.
108: 14   Q.   Is he also someone who
108: 15    followed the Vioxx litigation closely?
108: 16   A.   Well, I learned that he did.
108: 17    Yes.
108: 18   Q.   In fact, that's what you
108: 19    meant when you said that "Langreth has
108: 20    been following the situation closely."
108: 21    Isn't that right?
108: 22   A.   That's right.  I learned
108: 23    that he was.

---

| 105 | **110:9 -110:14** | Curfman 01/24/2006 | 00:00:21 |
|---|---|---|---|

110: 9    Q.   How about Ms. Prakash, did
110: 10    you give her an interview?
110: 11   A.   I believe so.  You can
110: 12    probably show me -- I think I did.  I
110: 13    think so.  Yes, I think I did.  I think
110: 14    that may have been on the second day.

---

| 106 | **111:8 -111:24** | Curfman 01/24/2006 | 00:00:51 |
|---|---|---|---|

111: 8    Q.   Did you personally tell Dr.
111: 9    Bombardier that you were going to have an
111: 10    early release of the Expression of
111: 11    Concern rather than wait until December
111: 12    29th?
111: 13   A.   I don't recall personally
111: 14    talking with her about that.  The
111: 15    conversations that we had, I think, were
111: 16    earlier and went over the fact that we
111: 17    would be releasing this and that we would
111: 18    be sending a series of questions to her
111: 19    that she could respond to at a later time
111: 20    at her leisure.
111: 21   Q.   Don't you remember that you
111: 22    told her when you first talked with her
111: 23    that you were scheduling the Expression
111: 24    of Concern for December 29th?

---

| 107 | **112:1 -112:10** | Curfman 01/24/2006 | 00:00:26 |
|---|---|---|---|

112: 1    A.   Well, my colleague, Dr.
112: 2    Morrissey, does all the scheduling for
112: 3    the Journal, and so perhaps he said
112: 4    something, but I don't recall saying
112: 5    anything myself.
112: 6    Q.   Do you recall when it was

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 112: 7 | that the New England Journal of Medicine |
| | 112: 8 | notified Dr. Bombardier -- and what's the |
| | 112: 9 | correct pronunciation of her name? |
| | 112: 10 | A.   That would be Bombardier. |

| | | |
|---|---|---|
| 108 | **112:13-113:11** | Curfman 01/24/2006          00:01:05 |
| | 112: 13 | Q.   Do you recall when it was |
| | 112: 14 | that the New England Journal of Medicine |
| | 112: 15 | notified Dr. Bombardier that the |
| | 112: 16 | Expression of Concern was going to be |
| | 112: 17 | subject to this early release on December |
| | 112: 18 | 8, 2005? |
| | 112: 19 | A.   I don't recall. |
| | 112: 20 | Q.   Do you recall whether they |
| | 112: 21 | gave her more than three hours' notice, |
| | 112: 22 | "they" being the New England Journal of |
| | 112: 23 | Medicine, that this thing was going to be |
| | 112: 24 | released early? |
| | 113: 1 | A.   I don't know. |
| | 113: 2 | Q.   Do you remember that when |
| | 113: 3 | Merck learned of your plans for an early |
| | 113: 4 | release on December 8 that Merck asked |
| | 113: 5 | you to consider some information to |
| | 113: 6 | perhaps include in the Expression of |
| | 113: 7 | Concern? |
| | 113: 8 | A.   If you have a document that |
| | 113: 9 | you can show me, that might jog my |
| | 113: 10 | memory, but I am a little foggy about |
| | 113: 11 | that. |

| | | |
|---|---|---|
| 109 | **114:4-114:5** | Curfman 01/24/2006          00:00:03 |
| | 114: 4 | MR. BECK:   I'm now handing |
| | 114: 5 | you what I've marked as Exhibit 9. |

| | | |
|---|---|---|
| 110 | **114:14-114:16** | Curfman 01/24/2006          00:00:03 |
| | 114: 14 | Q.   This is another e-mail |
| | 114: 15 | string; correct? |
| | 114: 16 | A.   Right. |

| | | |
|---|---|---|
| 111 | **114:22-114:24** | Curfman 01/24/2006          00:00:07 |
| | 114: 22 | Q.   And there's an e-mail to you |
| | 114: 23 | and Dr. Morrissey; right? |
| | 114: 24 | A.   Right. |

| | | |
|---|---|---|
| 112 | **115:1-115:4** | Curfman 01/24/2006          00:00:11 |
| | 115: 1 | Q.   And he is basically |
| | 115: 2 | attaching an e-mail that he got from a |
| | 115: 3 | lawyer for Merck, right? |
| | 115: 4 | A.   Mr. Fitzpatrick. |

| 113 | 115:8 -115:21 | Curfman 01/24/2006 | 00:00:30 |

115: 8   Q.  And then there are some --
115: 9   he says, "Paul," that's Mr. Shaw, "Please
115: 10   see the points below concerning the
115: 11   proposed editorial," and then there's
115: 12   three points made.  And without going
115: 13   through each one in detail, do you now
115: 14   remember --
115: 15   A.  Yes, I now remember.  Thank
115: 16   you.
115: 17   Q.    -- that, in fact, Merck
115: 18   did ask you to consider some points
115: 19   before you released -- made the early
115: 20   release of the Expression of Concern?
115: 21   A.  Yes.

| 114 | 116:12 -116:18 | Curfman 01/24/2006 | 00:00:11 |

116: 12   Q.  You say that you've
116: 13   considered these points?
116: 14   A.  Well, I read the points,
116: 15   yes.
116: 16   Q.  Do you see that you received
116: 17   this e-mail from Mr. Shaw at 2:59 p.m.?
116: 18   A.  Uh-huh.

| 115 | 117:13 -117:14 | Curfman 01/24/2006 | 00:00:04 |

117: 13   Q.  I'm handing you what we've
117: 14   marked as Exhibit 10.

| 116 | 117:17 -118:6 | Curfman 01/24/2006 | 00:00:30 |

117: 17   Q.  This is an e-mail -- let me
117: 18   state that your name is not on this one.
117: 19   A.  Right.
117: 20   Q.  -- from Karen Pedersen.
117: 21   That's the in-house, I think you had
117: 22   something other than PR person, right?
117: 23   A.  Media relations.
117: 24   Q.  Media relations?
118: 1   A.  Media relations specialist.
118: 2   Q.  So, the media relations
118: 3   specialist is sending it to the outside
118: 4   PR person's, "Subject: For talking
118: 5   points."  Do you see that?
118: 6   A.  Right.

| 117 | 119:16 -120:6 | Curfman 01/24/2006 | 00:00:40 |

119: 16   Q.  Then at the bottom, it says,
119: 17   "Also, Paul Shaw called and said the

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |
|---|---|---|---|
|  | 119: 18 | Merck attorney (Fitzpatrick) who |  |
|  | 119: 19 | cross-examined Greg e-mailed him saying |  |
|  | 119: 20 | he knows we're releasing a statement at 3 |  |
|  | 119: 21 | and he wants to send some information for |  |
|  | 119: 22 | us to consider including in the |  |
|  | 119: 23 | statement, which we're not going to do, |  |
|  | 119: 24 | regardless of what it says, of course." |  |
|  | 120: 1 | Did you talk with Karen |  |
|  | 120: 2 | Pedersen about this subject and about |  |
|  | 120: 3 | whether you would refuse to consider the |  |
|  | 120: 4 | information regardless of what it said? |  |
|  | 120: 5 | A.  I don't recall talking with |  |
|  | 120: 6 | Karen Pedersen about this | (Edited) |

| 118 | **121:6 - 122:8** | Curfman 01/24/2006          00:01:24 |
|---|---|---|
|  | 121: 6 | Q.   You mentioned before the |
|  | 121: 7 | standards for -- that you say you |
|  | 121: 8 | followed, and I think you said they were |
|  | 121: 9 | the standards of some organization? |
|  | 121: 10 | A.   The International Committee |
|  | 121: 11 | of Medical Journal Editors.  We sometimes |
|  | 121: 12 | call it the ICMJE. |
|  | 121: 13 | Q.   They have standards that |
|  | 121: 14 | you're supposed to follow in connection |
|  | 121: 15 | with things like Expressions of Concern? |
|  | 121: 16 | A.   Well, the uniform |
|  | 121: 17 | requirements is a fairly lengthy |
|  | 121: 18 | document, the uniform requirements for |
|  | 121: 19 | the preparation of manuscripts, and it's |
|  | 121: 20 | a document that deals with guidelines |
|  | 121: 21 | about a whole range of issues relating to |
|  | 121: 22 | medical publication.  So, I believe -- |
|  | 121: 23 | it's probably about a 25 or 30-page |
|  | 121: 24 | document.  It's contained on the website. |
|  | 122: 1 | And among other things, it does deal with |
|  | 122: 2 | retractions and Expressions of Concern. |
|  | 122: 3 | That is one part of a much larger |
|  | 122: 4 | document. |
|  | 122: 5 | Q.   So, the answer is yes, they |
|  | 122: 6 | do have standards on Expressions of |
|  | 122: 7 | Concern? |
|  | 122: 8 | A.   Yes, that's right. |

| 119 | **122:20 - 122:20** | Curfman 01/24/2006          00:00:02 |
|---|---|---|
|  | 122: 20 | Q.  I'm handing you Exhibit 11. |

| 120 | **122:21 - 122:21** | Curfman 01/24/2006          00:00:02 |
|---|---|---|

122: 21   Is this 11?  Yes.

| 121 | 123:2-123:9 | Curfman 01/24/2006          00:00:16 |
|---|---|---|

123: 2    Q.   If you'll turn, and the
123: 3    pages aren't numbered --
123: 4    A.   No, they're not.
123: 5    Q.   I'm looking for the page
123: 6    that has on its third line Roman Numeral
123: 7    III.B, "Corrections, Retractions and
123: 8    'Expressions of Concern'."
123: 9    A.   Right.

| 122 | 122:22-123:1 | Curfman 01/24/2006          00:00:11 |
|---|---|---|

122: 22          Do you recognize this as a
122: 23   printout of the ICMJE standards that you
122: 24   were referring to?
123: 1    A.   Right.

| 123 | 124:1-125:7 | Curfman 01/24/2006          00:01:44 |
|---|---|---|

124: 1    Q.   Then it talks about
124: 2    "Nevertheless, two types of difficulty
124: 3    may arise."  And the first has to do with
124: 4    errors that "may be noted in published
124: 5    articles."  Correct?
124: 6    A.   Correct.
124: 7    Q.   And the second has -- it
124: 8    says, "The second type of difficulty is
124: 9    scientific fraud."  And in your judgment,
124: 10   when you were dealing with the Expression
124: 11   of Concern, which of these two were you
124: 12   dealing with?
124: 13   A.   Well, we were dealing with a
124: 14   situation that involved incomplete
124: 15   reporting of crucial data.  And in trying
124: 16   to decide about what kind of editorial
124: 17   intervention to undertake, should this
124: 18   paper be retracted, should there be a
124: 19   correction or should there be an
124: 20   Expression of Concern, we had lengthy
124: 21   discussions about the distinction between
124: 22   these three possible types of
124: 23   interventions.  And we -- it was our
124: 24   editorial judgment that this best fit
125: 1    with an Expression of Concern.
125: 2    Q.   And the Expression of
125: 3    Concern procedure is at least discussed
125: 4    in connection with the second of those

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | | 125: 5   two events that's mentioned in this -- in |
| | | 125: 6   these standards; right? |
| | | 125: 7   A.  Right. |

| 124 | **123:16 -123:24** | Curfman 01/24/2006          00:00:20 |
|---|---|---|
| | | 123: 16   Q.  And I just want to take a |
| | | 123: 17   few minutes walking you through some of |
| | | 123: 18   these. |
| | | 123: 19          The first sentence says, |
| | | 123: 20   "Editors must assume initially that |
| | | 123: 21   authors are reporting work based on |
| | | 123: 22   honest observations."  You agree that |
| | | 123: 23   that's appropriate; right? |
| | | 123: 24   A.   Yes, indeed. |

| 125 | **125:15 -125:24** | Curfman 01/24/2006          00:00:22 |
|---|---|---|
| | | 125: 15          Continuing on then with that |
| | | 125: 16   paragraph, it says, "If substantial |
| | | 125: 17   doubts arise about the honesty or |
| | | 125: 18   integrity of work, either submitted or |
| | | 125: 19   published, it is the editor's |
| | | 125: 20   responsibility to ensure that the |
| | | 125: 21   question is appropriately pursued, |
| | | 125: 22   usually by the authors' sponsoring |
| | | 125: 23   institution."  Right? |
| | | 125: 24   A.  Yes. |

| 126 | **126:11 -127:1** | Curfman 01/24/2006          00:00:38 |
|---|---|---|
| | | 126: 11   Q.   So, this procedure says then |
| | | 126: 12   it's the editors, that would be the New |
| | | 126: 13   England Journal's editors' -- |
| | | 126: 14   A.   Right. |
| | | 126: 15   Q.   -- "responsibility to ensure |
| | | 126: 16   that the question is appropriately |
| | | 126: 17   pursued, usually by the authors' |
| | | 126: 18   sponsoring institution."  So, in the case |
| | | 126: 19   of Dr. Bombardier, for example, who would |
| | | 126: 20   the sponsoring institution be? |
| | | 126: 21   A.   Her university in Toronto. |
| | | 126: 22   Q.   But you did not follow the |
| | | 126: 23   procedure of referring this matter to her |
| | | 126: 24   university to pursue in the first |
| | | 127: 1   instance, did you? |

| 127 | **127:17 -127:19** | Curfman 01/24/2006          00:00:05 |
|---|---|---|
| | | 127: 17          THE WITNESS:  We have been |
| | | 127: 18          in touch with her superiors at the |
| | | 127: 19          University of Toronto, yes. |