**CURFMAN_2_DEFENSE_DIRECT**

| 128 | 127:21-128:21 | Curfman 01/24/2006 | 00:01:18 |
| | | 127: 21 | Q.   Then it says, "It is not |
| | | 127: 22 | ordinarily the task of editors to conduct |
| | | 127: 23 | a full investigation or to make a |
| | | 127: 24 | determination; that responsibility lies |
| | | 128: 1 | with the institution where the work was |
| | | 128: 2 | done or with the funding agency."  Here |
| | | 128: 3 | you made your own determination; right? |
| | | 128: 4 | A.   Well, there are two things |
| | | 128: 5 | that happened simultaneously.  The |
| | | 128: 6 | sponsoring institution, by virtue of the |
| | | 128: 7 | fact that one of their faculty members |
| | | 128: 8 | may have been involved in some sort of |
| | | 128: 9 | misconduct or some sort of issue with |
| | | 128: 10 | relation to research that's done there, |
| | | 128: 11 | has an obligation to undertake an |
| | | 128: 12 | investigation of the situation with |
| | | 128: 13 | respect to the research performed at |
| | | 128: 14 | their institution.  With respect to the |
| | | 128: 15 | Journal, in parallel with that, the |
| | | 128: 16 | Journal editors are going to be making |
| | | 128: 17 | judgments about what needs to be done |
| | | 128: 18 | with respect to the best interest of |
| | | 128: 19 | their Journal and the scientific record. |
| | | 128: 20 | And those two processes go on in |
| | | 128: 21 | parallel. |

| 129 | 129:16-129:21 | Curfman 01/24/2006 | 00:00:18 |
| | | 129: 16 | Q.   Before you published your |
| | | 129: 17 | conclusions in your Expression of Concern |
| | | 129: 18 | on December 8th, did you give the |
| | | 129: 19 | university a chance to conduct its own |
| | | 129: 20 | investigation? |
| | | 129: 21 | A.   No. |

| 130 | 131:10-131:14 | Curfman 01/24/2006 | 00:00:10 |
| | | 131: 10 | Q.   Before you published your |
| | | 131: 11 | conclusions in the Expression of Concern, |
| | | 131: 12 | did you give any of the authors an |
| | | 131: 13 | opportunity to respond to what you were |
| | | 131: 14 | proposing to publish? |

| 131 | 131:19-132:1 | Curfman 01/24/2006 | 00:00:14 |
| | | 131: 19 | THE WITNESS:  Yes, we did. |
| | | 131: 20 | But their response follows the |
| | | 131: 21 | publication of the Expression of |
| | | 131: 22 | Concern.  But we did discuss with |

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 131: 23 | them before we published it that |
| | 131: 24 | they would have an opportunity to |
| | 132: 1 | respond.  Yes. |
| 132 | **132:3-132:18** | Curfman 01/24/2006          00:00:42 |
| | 132: 3 | Q.  Actually, what you told them |
| | 132: 4 | before when you first contacted them was |
| | 132: 5 | that they would have an opportunity to |
| | 132: 6 | comment before you published the |
| | 132: 7 | Expression of Concern, isn't that true? |
| | 132: 8 | A.  I don't -- I can't imagine |
| | 132: 9 | that's true because that's not the |
| | 132: 10 | protocol for an Expression of Concern. |
| | 132: 11 | Q.   Didn't you tell Dr. |
| | 132: 12 | Bombardier that you -- didn't you send |
| | 132: 13 | her a copy of the draft Expression of |
| | 132: 14 | Concern ask her for her comments to be |
| | 132: 15 | received in a couple of weeks so that |
| | 132: 16 | they could accompany any publication of |
| | 132: 17 | the Expression of Concern? |
| | 132: 18 | A.  No. |
| 133 | **133:2-133:15** | Curfman 01/24/2006          00:00:40 |
| | 133: 2 | Did the New England Journal |
| | 133: 3 | of Medicine, when it first communicated |
| | 133: 4 | with Dr. Bombardier about this, tell her |
| | 133: 5 | that you had a draft Expression of |
| | 133: 6 | Concern that you were planning on |
| | 133: 7 | publishing it on December 29, that you |
| | 133: 8 | asked for her comments in response in |
| | 133: 9 | advance of December 29th so that they |
| | 133: 10 | could be considered in connection with |
| | 133: 11 | the publication of the Expression of |
| | 133: 12 | Concern? |
| | 133: 13 | A.  No.  Because the response |
| | 133: 14 | from the authors is intended to follow |
| | 133: 15 | the Expression of Concern. |
| 134 | **133:23-133:23** | Curfman 01/24/2006          00:00:02 |
| | 133: 23 | Q.  What is Exhibit 12? |
| 135 | **134:3-134:19** | Curfman 01/24/2006          00:01:09 |
| | 134: 3 | This is -- on the bottom of |
| | 134: 4 | Page 1 and the top of Page 2 is an |
| | 134: 5 | e-mailed letter that I and Dr. |
| | 134: 6 | Morrissey and Dr. Drazen sent to |
| | 134: 7 | Dr. Bombardier on December 5th |
| | 134: 8 | informing her about the Expression |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |
|---|---|
| 134: 9 | of Concern, and I believe we |
| 134: 10 | attached to this a series of |
| 134: 11 | questions that we wanted her to |
| 134: 12 | address in her response. |
| 134: 13 | And then above that, a |
| 134: 14 | couple of days later is a response |
| 134: 15 | saying that she and Dr. Loren |
| 134: 16 | Laine, who was her co -- |
| 134: 17 | corresponding author on the VIGOR |
| 134: 18 | trial, wanted to have a conference |
| 134: 19 | call. And we then set that up. |

| 136 | **134:21-135:16** | Curfman 01/24/2006 | 00:00:53 |
|---|---|---|---|

|  |  |
|---|---|
| 134: 21 | Q. Focusing on the e-mail from |
| 134: 22 | you and your colleagues to Dr. |
| 134: 23 | Bombardier -- |
| 134: 24 | A. Yes. |
| 135: 1 | Q. -- the first sentence says |
| 135: 2 | you're writing concerning the VIGOR |
| 135: 3 | study; correct? And then the second |
| 135: 4 | sentence says, "Recently we obtained new |
| 135: 5 | information that has led us to be |
| 135: 6 | concerned about the accuracy of certain |
| 135: 7 | data and conclusions in your article. |
| 135: 8 | The specific points at issue are" |
| 135: 9 | addressed "in the attached Expression of |
| 135: 10 | Concern, which we plan to publish in an |
| 135: 11 | upcoming issue of the Journal." |
| 135: 12 | As of December 5th, 2005, |
| 135: 13 | the plan was to publish this in the |
| 135: 14 | December 29th edition of the Journal; |
| 135: 15 | correct? |
| 135: 16 | A. Yes. |

| 137 | **135:23-136:5** | Curfman 01/24/2006 | 00:00:16 |
|---|---|---|---|

|  |  |
|---|---|
| 135: 23 | So, you planned on |
| 135: 24 | publishing it, I'm sorry, on December |
| 136: 1 | 29th, and you told that to Dr. Bombardier |
| 136: 2 | in this conference call you had with her; |
| 136: 3 | right? |
| 136: 4 | A. I don't recall. We may |
| 136: 5 | have. I don't recall. |

| 138 | **136:6-136:14** | Curfman 01/24/2006 | 00:00:19 |
|---|---|---|---|

|  |  |
|---|---|
| 136: 6 | Q. And then in the next |
| 136: 7 | sentence, you ask her to submit a |
| 136: 8 | correction for publication in the |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |
|---|---|---|---|
| | | 136: 9 | Journal, and you ask her to do that by |
| | | 136: 10 | December 22nd; right? |
| | | 136: 11 | A.  That's right. |
| | | 136: 12 | Q.  So, a few weeks after this |
| | | 136: 13 | e-mail; right? |
| | | 136: 14 | A.  Correct. |
| 139 | **136:15-136:23** | Curfman 01/24/2006 | 00:00:19 |
| | | 136: 15 | Q.  And the reason for that is |
| | | 136: 16 | because you planned and you told her that |
| | | 136: 17 | you would print what she wrote or |
| | | 136: 18 | consider it for publication along with |
| | | 136: 19 | the Expression of Concern on December |
| | | 136: 20 | 29th? |
| | | 136: 21 | A.  No.  That's incorrect. |
| | | 136: 22 | Q.  You don't remember telling |
| | | 136: 23 | her that in your conference call? |
| 140 | **137:2-137:5** | Curfman 01/24/2006 | 00:00:05 |
| | | 137: 2 | THE WITNESS:  We did not |
| | | 137: 3 | tell her that in the conference |
| | | 137: 4 | call.  That was not part of the |
| | | 137: 5 | plan. |
| 141 | **143:6-143:6** | Curfman 01/24/2006 | 00:00:04 |
| | | 143: 6 | Q.  Do you recognize Exhibit 15? |
| 142 | **143:11-143:21** | Curfman 01/24/2006 | 00:00:26 |
| | | 143: 11 | THE WITNESS:  Yes, I do. |
| | | 143: 12 | BY MR. BECK: |
| | | 143: 13 | Q.  Is this a message from you |
| | | 143: 14 | and Dr. Morrissey to Dr. Bombardier |
| | | 143: 15 | informing her of the early release of the |
| | | 143: 16 | Expression of Concern? |
| | | 143: 17 | A.  It's an e-mail from me and |
| | | 143: 18 | Dr. Morrissey to Dr. Bombardier regarding |
| | | 143: 19 | the release, yes. |
| | | 143: 20 | Q.  What's the date and time of |
| | | 143: 21 | your e-mail to Dr. Bombardier? |
| 143 | **144:8-144:16** | Curfman 01/24/2006 | 00:00:23 |
| | | 144: 8 | A.  December 8 at 11:59 a.m. |
| | | 144: 9 | Q.  When do you tell her that |
| | | 144: 10 | the Expression of Concern is going to be |
| | | 144: 11 | released? |
| | | 144: 12 | A.  At 3:00. |
| | | 144: 13 | Q.  So, you gave her three hours |
| | | 144: 14 | and one minute notice? |
| | | 144: 15 | A.  Of the exact release time, |

|  |  | 144: 16 | yes. |

| 144 | 144:21 -145:18 | Curfman 01/24/2006 | 00:01:02 |

144: 21   Q.   Did Dr. Bombardier respond
144: 22   that it was impossible for her to respond
144: 23   in advance of your early release of the
144: 24   Expression of Concern?
145: 1   A.   She, in fact, told us that
145: 2   she asked for an extension beyond the
145: 3   December 22nd deadline that we had given
145: 4   her.  She asked for an extension, and we
145: 5   granted that extension.  We gave her the
145: 6   time that she asked for.
145: 7   Q.   I'm talking about in the
145: 8   time period before you told her about
145: 9   the --
145: 10   A.   Well, I don't know --
145: 11   Q.   -- early release of the
145: 12   Expression of Concern.
145: 13   A.   I'm talking about the
145: 14   December 22nd time when she communicated
145: 15   back with us and said that she couldn't
145: 16   have her response prepared within that
145: 17   time frame and asked for a several week
145: 18   extension, which we granted.

| 145 | 146:4 -146:12 | Curfman 01/24/2006 | 00:00:23 |

146: 4   Q.   I guess in between 11:59
146: 5   a.m. when you first told her you were
146: 6   going to do it and 3:00 when you did it,
146: 7   did she tell you that that didn't give
146: 8   her time to respond?
146: 9   A.   Well, I don't recall.  I
146: 10   don't think I spoke with her.  I don't
146: 11   recall anything about that.  But --
146: 12   Q.   Please look at Exhibit 16.

| 146 | 147:7 -147:24 | Curfman 01/24/2006 | 00:00:41 |

147: 7   Q.   This is an e-mail from Dr.
147: 8   Bombardier to Mr. Morrissey.
147: 9   A.   Dr. Morrissey.
147: 10   Q.   Dr. Morrissey, excuse me.
147: 11           It says, "Dr. Morrissey,
147: 12   Thank you for sending this in advance,
147: 13   given the nature of your expression of
147: 14   concern, we want the opportunity to
147: 15   respond but as you can well imagine it

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | | 147: 16   will not be possible to respond by the |
| | | 147: 17   deadline of 3:00 p.m. this afternoon." |
| | | 147: 18       Did Dr. Morrissey |
| | | 147: 19   communicate to you this message from Dr. |
| | | 147: 20   Bombardier? |
| | | 147: 21   A.  Yes, he did. |
| | | 147: 22   Q.  But you went ahead with the |
| | | 147: 23   publication anyway at 3 p.m., didn't you? |
| | | 147: 24   A.  Yes, we did. |
| 147 | **148:14-148:19** | Curfman 01/24/2006          00:00:09 |
| | | 148: 14   Q.  Well, you personally went |
| | | 148: 15   ahead with it, didn't you?  I mean, you |
| | | 148: 16   personally were involved with the |
| | | 148: 17   decision to go ahead with it, even though |
| | | 148: 18   the author had not had an opportunity to |
| | | 148: 19   respond; right? |
| 148 | **148:22-149:10** | Curfman 01/24/2006          00:00:27 |
| | | 148: 22       THE WITNESS:  The author's |
| | | 148: 23   response to an Expression of |
| | | 148: 24   Concern is always intended to |
| | | 149: 1   follow the original Expression of |
| | | 149: 2   Concern.  The Expression of |
| | | 149: 3   Concern is not a matter of |
| | | 149: 4   negotiation between the editors |
| | | 149: 5   and the authors.  It is a |
| | | 149: 6   statement from the editors about |
| | | 149: 7   concerns about the article, and |
| | | 149: 8   the author has the opportunity to |
| | | 149: 9   respond at a followup time, a |
| | | 149: 10   later time. |
| 149 | **150:20-150:24** | Curfman 01/24/2006          00:00:26 |
| | | 150: 20   Q.  Later on, were you involved |
| | | 150: 21   in sending Dr. Bombardier a seven-point |
| | | 150: 22   letter telling her what points the New |
| | | 150: 23   England Journal of Medicine wanted her to |
| | | 150: 24   make when she responded? |
| 150 | **151:1-151:16** | Curfman 01/24/2006          00:00:59 |
| | | 151: 1   A.  Yes.  She had -- my |
| | | 151: 2   recollection is that she had asked for |
| | | 151: 3   additional clarification from us about |
| | | 151: 4   what specifically we wanted her to |
| | | 151: 5   respond to.  Up until that time, we had |
| | | 151: 6   only given her a copy of the Expression |
| | | 151: 7   of Concern itself.  And she wanted more |

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 151: 8 | guidance from us about our points of |
| | 151: 9 | concern.  And in response to that |
| | 151: 10 | request, I believe Dr. Morrissey and I |
| | 151: 11 | were the authors of that seven-point |
| | 151: 12 | document that you mentioned.  And we |
| | 151: 13 | tried to bring out in that document some |
| | 151: 14 | additional explanation of our reasons for |
| | 151: 15 | concern about the article so that that |
| | 151: 16 | could focus her response more directly. |

| 151 | 151:24-152:1 | Curfman 01/24/2006          00:00:07 |
|---|---|---|
| | 151: 24 | Q.  Please look at Exhibit 17. |
| | 152: 1 | Do you recognize that? |

| 152 | 152:4-152:16 | Curfman 01/24/2006          00:00:38 |
|---|---|---|
| | 152: 4 | Well, this, I think, begins |
| | 152: 5 | with an e-mail from Dr. Bombardier to me |
| | 152: 6 | and Dr. Morrissey along the lines of what |
| | 152: 7 | I just said, requesting some |
| | 152: 8 | additional -- I mean, we can read this. |
| | 152: 9 | Q.  We could, but what you had |
| | 152: 10 | said was she asked you for guidance about |
| | 152: 11 | how she should respond.  In fact, if you |
| | 152: 12 | read this, what she asks you for is a |
| | 152: 13 | copy of the information that you referred |
| | 152: 14 | to in your Expression of Concern so that |
| | 152: 15 | she could write her own response.  Isn't |
| | 152: 16 | that true? |

| 153 | 153:2-154:17 | Curfman 01/24/2006          00:01:16 |
|---|---|---|
| | 153: 2 | THE WITNESS:  Okay.  Well, |
| | 153: 3 | what she says is that "You |
| | 153: 4 | requested a submission from the |
| | 153: 5 | authors of that study that |
| | 153: 6 | addresses the additional data and |
| | 153: 7 | the issues set forth in the |
| | 153: 8 | Expression of Concern that you |
| | 153: 9 | published this week, and I agreed |
| | 153: 10 | to your request as lead author of |
| | 153: 11 | that study. |
| | 153: 12 | "We have already started on |
| | 153: 13 | that task, and I seek your |
| | 153: 14 | assistance for the project.  In |
| | 153: 15 | order for us to fully and properly |
| | 153: 16 | evaluate the data and the issues, |
| | 153: 17 | we will need to have copies of all |
| | 153: 18 | the materials that the New England |

**CURFMAN_2_DEFENSE_DIRECT**

|        |                  |                                              |
|--------|------------------|----------------------------------------------|
|        | 153: 19          | Journal of Medicine has that you             |
|        | 153: 20          | referred to in your telephone call           |
|        | 153: 21          | as well as those to which the                |
|        | 153: 22          | Expression of Concern referred.              |
|        | 153: 23          | While you suggested earlier that             |
|        | 153: 24          | we obtain these materials from               |
|        | 154: 1           | Merck, in light of the questions             |
|        | 154: 2           | that you have raised about                   |
|        | 154: 3           | confidence in the provenance of              |
|        | 154: 4           | data and information, we believe             |
|        | 154: 5           | that it is essential for us to               |
|        | 154: 6           | obtain such materials directly               |
|        | 154: 7           | from the New England Journal of              |
|        | 154: 8           | Medicine in order to ensure that             |
|        | 154: 9           | the material we are reviewing is             |
|        | 154: 10          | in fact the same data that is                |
|        | 154: 11          | referred to in your Expression of            |
|        | 154: 12          | Concern."                                    |
|        | 154: 13          | BY MR. BECK:                                 |
|        | 154: 14          | Q.  You agree, sir, that all she             |
|        | 154: 15          | asked you for here was a copy of the data    |
|        | 154: 16          | and the materials that you referenced in     |
|        | 154: 17          | your Expression of Concern?                  |

| 154 | **154:22 - 154:22** | Curfman 01/24/2006          00:00:01 |
|-----|---------------------|--------------------------------------|
|     |                     | 154: 22   A.  Yes.                   |

| 155 | **156:2 - 157:15** | Curfman 01/24/2006          00:01:52 |
|-----|--------------------|--------------------------------------|
|     |                    | 156: 2    Q.  So, point number 7 of your |
|     |                    | 156: 3    seven-point letter to her basically said |
|     |                    | 156: 4    get these from the Merck lawyer; right? |
|     |                    | 156: 5    A.  Yes.  And I think that it's |
|     |                    | 156: 6    fairly explicit. |
|     |                    | 156: 7    Q.  Yes, I agree. |
|     |                    | 156: 8        But now what you also did is |
|     |                    | 156: 9    you and Dr. Morrissey attempted to |
|     |                    | 156: 10   dictate to Dr. Bombardier the content of |
|     |                    | 156: 11   her response? |
|     |                    | 156: 12   A.  We did not attempt to |
|     |                    | 156: 13   dictate.  We attempted to articulate or |
|     |                    | 156: 14   provide additional explanation of points |
|     |                    | 156: 15   of our concern.  We are the editors.  We |
|     |                    | 156: 16   had concerns.  It's not a matter of |
|     |                    | 156: 17   dictating.  It's a matter of expressing |
|     |                    | 156: 18   what the concerns were so that she could |
|     |                    | 156: 19   respond to those concerns.  That's what |
|     |                    | 156: 20   an Expression of Concern is.  That's why |

**CURFMAN_2_DEFENSE_DIRECT**

156: 21    it's called an Expression of Concern.

156: 22    It's an expression of our concern that

156: 23    then we ask her to address.  We thought

156: 24    this would be helpful to her in framing a

157: 1    response.

157: 2    Q.  Didn't you tell her "We will

157: 3    explain herein what we expect this

157: 4    correction to include"?

157: 5    A.  Uh-huh.

157: 6    Q.  The very first point you

157: 7    say, "You should acknowledge."  Then you

157: 8    go on to tell her what she's supposed to

157: 9    acknowledge in her response, right?  Is

157: 10    that right?

157: 11    A.  That's the way the sentence

157: 12    reads, yes.

157: 13    Q.  And then basically you tell

157: 14    her that she's supposed to say she's

157: 15    sorry, don't you?

---

| 156 | **157:18 -158:20** | Curfman 01/24/2006 | 00:01:01 |
|---|---|---|---|

157: 18    BY MR. BECK:

157: 19    Q.  Point number 6.  You're

157: 20    telling the author of this study that,

157: 21    number 6, "These omissions and

157: 22    inaccuracies are regrettable, and this

157: 23    should be acknowledged in your

157: 24    statement."  You're telling her to

158: 1    apologize for her article, aren't you?

158: 2    A.  We asked her for a response,

158: 3    and --

158: 4    Q.  And you told her what you

158: 5    wanted --

158: 6    A.  She --

158: 7    Q.  -- it to include?

158: 8    A.  She can respond in any way

158: 9    that she wishes.  We were laying out our

158: 10    concerns.  And one of our concerns was

158: 11    that there were omissions and

158: 12    inaccuracies that were regrettable.  And

158: 13    we had evidence to back it up.  And she

158: 14    can respond to that statement in any way

158: 15    that she wants.

158: 16    Q.  And she did, in fact,

158: 17    respond to that statement, did she not?

158: 18    A.  She did, yes.

|     |                |                                                                              |
| --- | -------------- | ---------------------------------------------------------------------------- |
|     |                | 158: 19   Q.   And she told you that you<br>158: 20     were wrong, right? |
| 157 | **159:2-159:3** | Curfman 01/24/2006                00:00:01<br>159: 2           THE WITNESS:  I don't<br>159: 3        recall. |
| 158 | **159:5-159:16** | Curfman 01/24/2006                00:00:13<br>159: 5    Q.   You don't recall --<br>159: 6    A.   No, I don't.<br>159: 7    Q.   -- what she said in her<br>159: 8     response?<br>159: 9    A.   No.<br>159: 10   Q.   Have you looked at her<br>159: 11    response?<br>159: 12   A.   Only very cursorily at this<br>159: 13    point.  We just received the response,<br>159: 14    and, in fact --<br>159: 15   Q.   Well, you received it more<br>159: 16    than a week ago, didn't you? |
| 159 | **159:19-159:24** | Curfman 01/24/2006                00:00:15<br>159: 19          THE WITNESS:  We didn't<br>159: 20       receive one response, and part of<br>159: 21       the complexity now of the issue is<br>159: 22       that we received two separate<br>159: 23       responses from two different<br>159: 24       groups of authors, and -- |
| 160 | **160:18-160:19** | Curfman 01/24/2006                00:00:04<br>160: 18   Q.   My question is, you received<br>160: 19    it more than a week ago, didn't you? |
| 161 | **161:10-161:12** | Curfman 01/24/2006                00:00:04<br>161: 10   A.   We received two responses,<br>161: 11    and I don't remember the exact dates of<br>161: 12    receipt. |
| 162 | **161:23-161:23** | Curfman 01/24/2006                00:00:01<br>161: 23   Q.   What is Exhibit 18? |
| 163 | **162:7-162:9** | Curfman 01/24/2006                00:00:10<br>162: 7    Q.   Is this some transmittal<br>162: 8       e-mail and then the response from Dr.<br>162: 9       Bombardier? |
| 164 | **162:12-162:20** | Curfman 01/24/2006                00:00:22<br>162: 12          Yes, it is.<br>162: 13   Q.   Dr. Bombardier responded on<br>162: 14    behalf of herself and the other nine |

**CURFMAN_2_DEFENSE_DIRECT**

|  |  |  |  |
|---|---|---|---|
|  | 162: 15 | authors who were not Merck employees; |  |
|  | 162: 16 | right? |  |
|  | 162: 17 | A.  Yes. |  |
|  | 162: 18 | Q.  And in this response, these |  |
|  | 162: 19 | ten non-Merck authors told you that you |  |
|  | 162: 20 | were wrong; right? |  |

| 165 | **162:24-163:5** | Curfman 01/24/2006 | 00:00:16 |
|---|---|---|---|
|  | 162: 24 | A.  No.  I don't read it that |  |
|  | 163: 1 | way.  But, again, I want to make it clear |  |
|  | 163: 2 | that I have not had an opportunity to go |  |
|  | 163: 3 | through this, and I'm not prepared to |  |
|  | 163: 4 | discuss this document.  I wasn't -- we |  |
|  | 163: 5 | have read these documents.I | (Edited) |

| 166 | **163:20-164:9** | Curfman 01/24/2006 | 00:00:34 |
|---|---|---|---|
|  | 163: 20 | Q.  Now, are you telling me -- |  |
|  | 163: 21 | you've certainly known that your |  |
|  | 163: 22 | deposition was going to be taken in |  |
|  | 163: 23 | connection with the Expression of |  |
|  | 163: 24 | Concern.  You've known that for certainly |  |
|  | 164: 1 | over a week, right? |  |
|  | 164: 2 | A.  Right. |  |
|  | 164: 3 | Q.  And you've had the answer |  |
|  | 164: 4 | from the ten non-Merck authors -- |  |
|  | 164: 5 | A.  Right. |  |
|  | 164: 6 | Q.  -- to your Expression of |  |
|  | 164: 7 | Concern, and you say you haven't read it |  |
|  | 164: 8 | carefully enough to be prepared to |  |
|  | 164: 9 | discuss it? |  |

| 167 | **165:2-165:5** | Curfman 01/24/2006 | 00:00:08 |
|---|---|---|---|
|  | 165: 2 | A.  My answer to your question |  |
|  | 165: 3 | -- yes.  My answer to your question is, I |  |
|  | 165: 4 | have not had time to adequately digest |  |
|  | 165: 5 | this. | (Edited) |

| 168 | **166:16-166:24** | Curfman 01/24/2006 | 00:00:21 |
|---|---|---|---|
|  | 166: 16 | Q.  Do you recognize Exhibit 21 |  |
|  | 166: 17 | to be a response on behalf of Drs. Reicin |  |
|  | 166: 18 | and Shapiro who are both affiliated with |  |
|  | 166: 19 | Merck? |  |
|  | 166: 20 | A.  Right.  It's being |  |
|  | 166: 21 | communicated by a medical communications |  |
|  | 166: 22 | person. |  |
|  | 166: 23 | Q.  Right. |  |
|  | 166: 24 | A.  Right. |  |

| 169 | **170:2-170:17** | Curfman 01/24/2006 | 00:00:40 |
|---|---|---|---|

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| 170: 2 | Q. | And you had not only Dr. |
| 170: 3 | | Bombardier's response on behalf of the |
| 170: 4 | | ten non-Merck authors for over a week |
| 170: 5 | | before today, you also had Dr. Reicin's |
| 170: 6 | | response on behalf of herself and Dr. |
| 170: 7 | | Shapiro, the Merck authors, for over a |
| 170: 8 | | week before today, right? |
| 170: 9 | A. | If you say so.  I'll take |
| 170: 10 | | your word for it.  Sure. |
| 170: 11 | Q. | And here you are, you know |
| 170: 12 | | this is the only chance that I get to ask |
| 170: 13 | | you questions about the Expression of |
| 170: 14 | | Concern, and you didn't take the time to |
| 170: 15 | | read either one of these to comment on |
| 170: 16 | | their substance? |
| 170: 17 | A. | These -- |

| 170 | **171:14-171:23** | Curfman 01/24/2006 | 00:00:31 |
|---|---|---|---|

| | | |
|---|---|---|
| 171: 14 | Q. | My question is simply that |
| 171: 15 | | knowing that your deposition was going to |
| 171: 16 | | be taken today and that the main subject |
| 171: 17 | | was your Expression of Concern, and |
| 171: 18 | | having the responses filed by both the |
| 171: 19 | | non-Merck lawyer -- the non-Merck authors |
| 171: 20 | | and the Merck authors for over a week, |
| 171: 21 | | it's your testimony that you didn't take |
| 171: 22 | | the time to read them so that you could |
| 171: 23 | | talk about the substance of them? |

| 171 | **172:2-172:16** | Curfman 01/24/2006 | 00:00:41 |
|---|---|---|---|

| | | |
|---|---|---|
| 172: 2 | | THE WITNESS:  Our response |
| 172: 3 | | to these documents will require |
| 172: 4 | | very careful deliberation. |
| 172: 5 | | Editors of journals don't do |
| 172: 6 | | things on a knee jerk.  We can't |
| 172: 7 | | afford to do that.  I did not set |
| 172: 8 | | the date for this deposition, and, |
| 172: 9 | | in fact, we received these when we |
| 172: 10 | | received them.  And we will need |
| 172: 11 | | time to very carefully digest the |
| 172: 12 | | situation, and then we'll have an |
| 172: 13 | | official response to it.  I'm not |
| 172: 14 | | prepared to do that now.  We do |
| 172: 15 | | things carefully in our office. |
| 172: 16 | | That's how we do things.                        (Edited) |

| 172 | **172:22-173:9** | Curfman 01/24/2006 | 00:00:26 |
|---|---|---|---|

**CURFMAN_2_DEFENSE_DIRECT**

172: 22   Q.   Have you looked at these two
172: 23   responses enough to know whether they're
172: 24   in basic agreement or whether there's any
173: 1   points of disagreement?
173: 2   A.   No.  I can't really comment
173: 3   about that.
173: 4   Q.   So, it's not just that you
173: 5   haven't had, you know, conferences with
173: 6   your colleagues to talk it all through,
173: 7   you just haven't read them carefully in
173: 8   advance of your deposition.  Is that your
173: 9   testimony?

| 173 | 173:12-174:1 | Curfman 01/24/2006 | 00:00:32 |
| --- | --- | --- | --- |

173: 12           THE WITNESS:  I'm saying
173: 13   that we -- documents of this kind
173: 14   will demand careful deliberation
173: 15   among the editors at the New
173: 16   England Journal of Medicine, and
173: 17   we have not gone through that
173: 18   process yet.  And anything that I
173: 19   might say today might not be fully
173: 20   accurate because we've not gone
173: 21   through this process of
173: 22   deliberating together and
173: 23   interpreting these two documents.
173: 24   And that's all I can say about
174: 1   this.

| 174 | 174:3-174:7 | Curfman 01/24/2006 | 00:00:19 |
| --- | --- | --- | --- |

174: 3   Q.   Well, getting back to your
174: 4   Expression of Concern, you indicated it
174: 5   got a lot of media attention, and you and
174: 6   your outside PR people followed the media
174: 7   attention pretty closely, didn't you?

| 175 | 174:12-174:13 | Curfman 01/24/2006 | 00:00:02 |
| --- | --- | --- | --- |

174: 12           THE WITNESS:  No.  I
174: 13   certainly didn't.                                    (Edited)

| 176 | 175:1-175:6 | Curfman 01/24/2006 | 00:00:18 |
| --- | --- | --- | --- |

175: 1   Q.   Did the people at the New
175: 2   England Journal of Medicine monitor at
175: 3   least the major newspapers to see how
175: 4   they were reporting on the Expression of
175: 5   Concern and whether there were any errors
175: 6   that should be corrected?

| 177 | 175:9-175:22 | Curfman 01/24/2006 | 00:00:29 |
| --- | --- | --- | --- |

|   |   |   |   |
|---|---|---|---|
|   |   | 175: 9 | THE WITNESS:  Our media |
|   |   | 175: 10 | relations specialist always |
|   |   | 175: 11 | monitors the news.  That's what |
|   |   | 175: 12 | her job is.  She does that every |
|   |   | 175: 13 | day about everything that we |
|   |   | 175: 14 | publish to see what the media is |
|   |   | 175: 15 | writing about it.  That's what her |
|   |   | 175: 16 | job is.  And part of it is to make |
|   |   | 175: 17 | sure that they're reporting |
|   |   | 175: 18 | accurately on articles that we |
|   |   | 175: 19 | publish, not just the Expression |
|   |   | 175: 20 | of Concern.  This happens every |
|   |   | 175: 21 | day for every article.  We get |
|   |   | 175: 22 | news updates every day. |
| 178 | 176:16-177:1 | Curfman 01/24/2006 | 00:00:38 |
|   |   | 176: 16 | Q.  Dr. Curfman, you were quoted |
|   |   | 176: 17 | in the Forbes article as saying you were |
|   |   | 176: 18 | somewhere between surprised and stunned |
|   |   | 176: 19 | that some cardiovascular data that was in |
|   |   | 176: 20 | a presubmission draft, a draft that was |
|   |   | 176: 21 | prepared before it was submitted to the |
|   |   | 176: 22 | New England Journal of Medicine, had been |
|   |   | 176: 23 | deleted before the draft was submitted. |
|   |   | 176: 24 | Do you remember that and were you |
|   |   | 177: 1 | accurately quoted? |
| 179 | 177:10-179:3 | Curfman 01/24/2006 | 00:02:15 |
|   |   | 177: 10 | THE WITNESS:  Well, I can |
|   |   | 177: 11 | tell you what I was somewhere |
|   |   | 177: 12 | between surprised and stunned |
|   |   | 177: 13 | about, and that was the document |
|   |   | 177: 14 | that was presented to me for the |
|   |   | 177: 15 | first time on November 21st, 2005, |
|   |   | 177: 16 | Exhibit 18, among the exhibits on |
|   |   | 177: 17 | that day, which was an internal |
|   |   | 177: 18 | memorandum dated July 5th, 2000, |
|   |   | 177: 19 | which contained an extensive body |
|   |   | 177: 20 | of data on the cardiovascular |
|   |   | 177: 21 | adverse events in VIGOR that I had |
|   |   | 177: 22 | never seen before.  And that put |
|   |   | 177: 23 | me somewhere between surprised and |
|   |   | 177: 24 | stunned. |
|   |   | 178: 1 | BY MR. BECK: |
|   |   | 178: 2 | Q.  So, this was that there was |
|   |   | 178: 3 | cardiovascular data that Merck had in its |
|   |   | 178: 4 | possession in July that you had not seen |

178: 5    in connection with the editorial process

178: 6    involving VIGOR; is that right?

178: 7    A.  Yes.  There were two of the

178: 8    VIGOR authors.  One of the authors was

178: 9    the author of the memo.  The other VIGOR

178: 10   author was --

178: 11   Q.  Well, why don't you give

178: 12   their names.  Go ahead.

178: 13   A.  Well, the author of the memo

178: 14   was Dr. Deborah Shapiro, and one of the

178: 15   several recipients of the memo was Dr.

178: 16   Alise Reicin, both of whom were authors

178: 17   of the VIGOR article, who clearly had

178: 18   this extensive body of information on a

178: 19   variety of cardiovascular adverse events

178: 20   involving four different vascular systems

178: 21   in the body that I had never seen before

178: 22   during the editorial process, and yet we

178: 23   knew from the date on the memo that those

178: 24   data were available to those two authors

179: 1    early in the summer, 4 months and 19 days

179: 2    before we published the VIGOR article,

179: 3    and that was the cause of the surprise.

| 180 | **179:22-180:4** | Curfman 01/24/2006 | 00:00:29 |
|---|---|---|---|

179: 22           My question is, from your

179: 23   review of the materials, are you aware

179: 24   that all of the data that was collected

180: 1    in the July 2000 memorandum and including

180: 2    the tables and the statistical analyses,

180: 3    that all of that was communicated to the

180: 4    FDA in the fall of 2000?

| 181 | **180:8-180:10** | Curfman 01/24/2006 | 00:00:03 |
|---|---|---|---|

180: 8            THE WITNESS: Yes.  I'm

180: 9    aware that it was communicated to

180: 10   the FDA.                                    (Edited)

| 182 | **183:2-183:18** | Curfman 01/24/2006 | 00:00:43 |
|---|---|---|---|

183: 2    Q.  How about in the materials

183: 3    communicating the information to the FDA,

183: 4    was there a mention there of a

183: 5    prespecified cutoff date?

183: 6    A.  I don't recall.  It's a big

183: 7    document, and I'd have to go back through

183: 8    it.

183: 9    Q.  How about in the FDA

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 183: 10 | materials prepared by people within the |
| | 183: 11 | FDA, is there an indication in the FDA |
| | 183: 12 | materials that this additional |
| | 183: 13 | information that was transmitted to them |
| | 183: 14 | in October had come in after a |
| | 183: 15 | prespecified cutoff date that was used in |
| | 183: 16 | the VIGOR study? |
| | 183: 17 | A.  Well, I don't know.  I don't |
| | 183: 18 | know about that.                                         (Edited) |

| | | | |
|---|---|---|---|
| 183 | **185:5 -185:12** | Curfman 01/24/2006 | 00:00:25 |
| | 185: 5 | Q.  Did you ever look at the | |
| | 185: 6 | Targum memo that we talked about earlier, | |
| | 185: 7 | that internal FDA memo that analyzes | |
| | 185: 8 | data?  Did you ever look at the Targum | |
| | 185: 9 | memo to see whether it explains that that | |
| | 185: 10 | information that was provided in the fall | |
| | 185: 11 | of 2000 had come in after a prespecified | |
| | 185: 12 | cutoff date for the VIGOR study? | |

| | | | |
|---|---|---|---|
| 184 | **185:17 -185:19** | Curfman 01/24/2006 | 00:00:02 |
| | 185: 17 | Q.  Did you ever look at the | |
| | 185: 18 | Targum memo to see that? | |
| | 185: 19 | A.  Yes, I did. | |

| | | | |
|---|---|---|---|
| 185 | **187:17 -188:12** | Curfman 01/24/2006 | 00:00:59 |
| | 187: 17 | Q.  Well, one of the things that | |
| | 187: 18 | your Expression of Concern talks about | |
| | 187: 19 | are three additional MIs -- or can I just | |
| | 187: 20 | call them heart attacks for short? | |
| | 187: 21 | A.  Sure. | |
| | 187: 22 | Q.  Okay. | |
| | 187: 23 |         -- three additional heart | |
| | 187: 24 | attacks that were reported to the FDA and | |
| | 188: 1 | by the FDA but were not included in the | |
| | 188: 2 | VIGOR publication.  That was one of the | |
| | 188: 3 | subjects of your Expression of Concern, | |
| | 188: 4 | correct? | |
| | 188: 5 | A.  Correct. | |
| | 188: 6 | Q.  Okay. | |
| | 188: 7 |         So, just focusing on these | |
| | 188: 8 | three additional heart attacks, do you | |
| | 188: 9 | now know that the three additional heart | |
| | 188: 10 | attacks were adjudicated and reported | |
| | 188: 11 | after a prespecified cutoff date used in | |
| | 188: 12 | the VIGOR study? | |

| | | | |
|---|---|---|---|
| 186 | **188:16 -191:7** | Curfman 01/24/2006 | 00:02:40 |

**CURFMAN_2_DEFENSE_DIRECT**

188: 16        THE WITNESS:  We don't

188: 17    accept a separate cutoff point for

188: 18    the cardiovascular events that was

188: 19    weeks earlier than the cutoff

188: 20    point for the GI events.  It's not

188: 21    only unorthodox, but unacceptable

188: 22    to set an earlier cutoff point for

188: 23    one set of endpoints and a later

188: 24    cutoff point for a separate set of

189: 1    endpoints.

189: 2        What that means is, that

189: 3    you're not counting the two sets

189: 4    of endpoints equally.  They're out

189: 5    of phase by several weeks' time,

189: 6    and that is, as I said, not only

189: 7    unorthodox in clinical trials, but

189: 8    unacceptable in clinical trials.

189: 9        The authors didn't tell us

189: 10    that they had done this, and we

189: 11    were unaware of it.  There's no

189: 12    statement about that in the VIGOR

189: 13    article.

189: 14        The only statement about the

189: 15    analysis of the cardiovascular

189: 16    events in the VIGOR article is

189: 17    that there was no prespecified

189: 18    analysis plan for cardiovascular

189: 19    events in VIGOR.  That's the last

189: 20    sentence in the methods section of

189: 21    the VIGOR article published in the

189: 22    New England Journal.

189: 23        But that's the only

189: 24    information that we had, the

190: 1    editors, about any kind of cutoff

190: 2    point.  So, this was unorthodox.

190: 3    If we had known about it, we would

190: 4    not have accepted that different

190: 5    cutoff time.

190: 6        I've consulted with people

190: 7    who are experts in clinical

190: 8    trials, and no one has ever heard

190: 9    about this kind of arrangement in

190: 10    a clinical trial.

190: 11   BY MR. BECK:

190: 12   Q.   My question, sir, is, are

190: 13   you now aware that the study employed a

190: 14   prespecified cutoff date for
190: 15   cardiovascular events and that these
190: 16   three MIs came in after that date?
190: 17   A.  No.  Prespecified means in a
190: 18   clinical trial that that item is
190: 19   specified before the trial begins in the
190: 20   written protocol for the trial, before
190: 21   the trial begins.  "Pre" means before the
190: 22   trial begins.
190: 23           This was in no way
190: 24   prespecified.  That's a misuse of the
191: 1   term "prespecified," and if the authors
191: 2   had told us about this, we would not have
191: 3   accepted it.  We would have required that
191: 4   all of the events that occurred within
191: 5   the same time frame as the GI events be
191: 6   included, and those included those three
191: 7   MIs.

| 187 | **192:10 - 193:12** | Curfman 01/24/2006 | 00:01:21 |

192: 10   Q.  Let me turn to another
192: 11   subject that is addressed in your
192: 12   Expression of Concern, and that is
192: 13   information that was in a draft before
192: 14   the draft was submitted to the New
192: 15   England Journal of Medicine, but then was
192: 16   taken out in the draft that was submitted
192: 17   to the New England Journal of Medicine.
192: 18           Do you understand what topic
192: 19   I'm talking about?
192: 20   A.  Right.
192: 21   Q.  Now, this is not the three
192: 22   MIs, right?
192: 23   A.  No.  This has nothing to do
192: 24   with the three MIs.
193: 1   Q.  Okay.
193: 2           And this has to do with a
193: 3   table that at least the shell or the form
193: 4   of the table was in an electronic version
193: 5   of the manuscript that you could see that
193: 6   it had been in the draft before it had
193: 7   been submitted to the New England Journal
193: 8   of Medicine, but that had been taken out
193: 9   before the submission was actually made;
193: 10   is that right?
193: 11   A.  Well, that's part of the

|  |  | 193: 12 | story. |
|---|---|---|---|

| 188 | **194:3-194:7** | Curfman 01/24/2006 | 00:00:12 |
|---|---|---|---|
|  |  | 194: 3 | Am I correct that the New |
|  |  | 194: 4 | England Journal of Medicine requested the |
|  |  | 194: 5 | authors of the VIGOR manuscript to |
|  |  | 194: 6 | provide an electronic version to the New |
|  |  | 194: 7 | England Journal? |

| 189 | **194:10-194:20** | Curfman 01/24/2006 | 00:00:17 |
|---|---|---|---|
|  |  | 194: 10 | THE WITNESS:  I don't know |
|  |  | 194: 11 | whether we requested it or not. |
|  |  | 194: 12 | They did send it.  I'd have to -- |
|  |  | 194: 13 | you know, you can show me a |
|  |  | 194: 14 | document with a sentence in there, |
|  |  | 194: 15 | but they provided the disk. |
|  |  | 194: 16 | BY MR. BECK: |
|  |  | 194: 17 | Q.  Okay. |
|  |  | 194: 18 | And they provided the disk |
|  |  | 194: 19 | in August of 2000, right? |
|  |  | 194: 20 | A.  Yes. |

| 190 | **194:23-195:4** | Curfman 01/24/2006 | 00:00:17 |
|---|---|---|---|
|  |  | 194: 23 | Q.  And when they provided you |
|  |  | 194: 24 | with this disk, the electronic version, |
|  |  | 195: 1 | they gave it to you with a feature called |
|  |  | 195: 2 | track changes that was turned on when |
|  |  | 195: 3 | they gave it to you, right? |
|  |  | 195: 4 | A.  Yes. |

| 191 | **195:6-195:18** | Curfman 01/24/2006 | 00:00:37 |
|---|---|---|---|
|  |  | 195: 6 | And this disk, little |
|  |  | 195: 7 | computer disk, had three versions of the |
|  |  | 195: 8 | VIGOR manuscript on it; is that right? |
|  |  | 195: 9 | A.  That's correct. |
|  |  | 195: 10 | Q.  So that you could compare, |
|  |  | 195: 11 | if you wanted to, you know, how the |
|  |  | 195: 12 | versions evolved over time? |
|  |  | 195: 13 | A.  Yes, you could. |
|  |  | 195: 14 | Q.  And even within a single |
|  |  | 195: 15 | version with the track changes feature |
|  |  | 195: 16 | turned on, or it's sometimes called a red |
|  |  | 195: 17 | lining feature, are you familiar with |
|  |  | 195: 18 | that term? |

| 192 | **195:19-195:23** | Curfman 01/24/2006 | 00:00:13 |
|---|---|---|---|
|  |  | 195: 19 | A.  Sure. |
|  |  | 195: 20 | Q.  And you can see, because the |
|  |  | 195: 21 | computer keeps track of any language or |

| | | |
|---|---|---|
| | 195: 22 | tables or data that was taken out during |
| | 195: 23 | the drafting process; correct? |
| 193 | **196:22 - 197:3** | Curfman 01/24/2006          00:00:18 |
| | | 196: 22          With the track changes |
| | | 196: 23   feature turned on, within a single |
| | | 196: 24   version of the manuscript you can see, |
| | | 197: 1   because the computer keeps track of what |
| | | 197: 2   language or data is added and what |
| | | 197: 3   language or data is taken out, right? |
| 194 | **197:6 - 197:6** | Curfman 01/24/2006          00:00:01 |
| | | 197: 6          THE WITNESS:  Right. |
| 195 | **201:18 - 201:24** | Curfman 01/24/2006          00:00:18 |
| | | 201: 18   Q.  And my question is, when you |
| | | 201: 19   wrote that Expression of Concern focusing |
| | | 201: 20   on the fact that the table was taken out, |
| | | 201: 21   did you take into account the fact that |
| | | 201: 22   the authors showed you that when they |
| | | 201: 23   gave you the electronic version with the |
| | | 201: 24   track changes feature turned on? |
| 196 | **202:3 - 202:4** | Curfman 01/24/2006          00:00:02 |
| | | 202: 3          THE WITNESS:  Yes.  We took |
| | | 202: 4          that into consideration.          (Edited) |
| 197 | **202:4 - 202:19** | Curfman 01/24/2006          00:00:32 |
| | | 202: 4          The          (Edited) |
| | | 202: 5          table was not the only data that |
| | | 202: 6          were removed from the manuscript. |
| | | 202: 7   BY MR. BECK: |
| | | 202: 8   Q.  Okay. |
| | | 202: 9          I'm just focusing on the |
| | | 202: 10   table now. |
| | | 202: 11   A.  Yes.  But the entire data |
| | | 202: 12   set on the numbers of myocardial |
| | | 202: 13   infarctions, or heart attacks, the |
| | | 202: 14   entire -- every number, every number |
| | | 202: 15   relating to a heart attack, the numbers |
| | | 202: 16   of patients who had heart attacks were |
| | | 202: 17   systematically removed from the text and |
| | | 202: 18   the table, and we can show you this if |
| | | 202: 19   you'd like. |
| 198 | **204:9 - 205:4** | Curfman 01/24/2006          00:01:04 |
| | | 204: 9   Q.  Now, even though the authors |
| | | 204: 10   gave you the electronic version with the |
| | | 204: 11   track changes turned on back in August of |

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| 204: 12 | 2000, am I correct from your Expression | |
| 204: 13 | of Concern that it looked like you never | |
| 204: 14 | looked at the electronic version until | |
| 204: 15 | sometime in the fall of 2004; is that | |
| 204: 16 | right? | |
| 204: 17 | A.   That's right. | |
| 204: 18 | Q.   Now, did you ever tell, | |
| 204: 19 | "you" being Dr. Curfman, covering you, | |
| 204: 20 | personally, first, back during the | |
| 204: 21 | editorial process in 2000, when the | |
| 204: 22 | authors gave you the electronic version | |
| 204: 23 | with the track changes turned on, did you | |
| 204: 24 | communicate in any way to them that you | |
| 205: 1 | and your colleagues were not going to | |
| 205: 2 | look at the electronic version, "you," | |
| 205: 3 | personally, now? | |
| 205: 4 | A.   Yeah, no. | |

| 199 | 205:15-206:4 | Curfman 01/24/2006           00:00:43 |
|---|---|---|
| | 205: 15 | Q.   In terms of tables in |
| | 205: 16 | articles published in the New England |
| | 205: 17 | Journal of Medicine, is there some kind |
| | 205: 18 | of guideline or limit on the number of |
| | 205: 19 | tables that are supposed to be included? |
| | 205: 20 | A.   There's a guideline. |
| | 205: 21 | There's not a limit. |
| | 205: 22 | Q.   What does the guideline say |
| | 205: 23 | as to the number of tables? |
| | 205: 24 | A.   We generally go for five or |
| | 206: 1 | six tables in the print version.  We can |
| | 206: 2 | publish additional information on our |
| | 206: 3 | website, or sometimes we will publish |
| | 206: 4 | additional tables in print as well. |

| 200 | 206:9-206:17 | Curfman 01/24/2006           00:00:16 |
|---|---|---|
| | 206: 9 | Q.   You say there's a guideline |
| | 206: 10 | of five or six.  You know that that's not |
| | 206: 11 | true, don't you?  You know the guideline |
| | 206: 12 | is five, right? |
| | 206: 13 | A.   Well, the guideline in that |
| | 206: 14 | information of authors at that time |
| | 206: 15 | probably said five. |
| | 206: 16 | Q.   Well, you know it said five, |
| | 206: 17 | don't you? |

| 201 | 207:3-207:10 | Curfman 01/24/2006           00:00:12 |
|---|---|---|
| | 207: 3 | THE WITNESS:  The letter |

**CURFMAN_2_DEFENSE_DIRECT**

|     |     |     |     |
| --- | --- | --- | --- |
|     |     | 207: 4 | that I send out to the authors at |
|     |     | 207: 5 | the moment says five or six. |
|     |     | 207: 6 | BY MR. BECK: |
|     |     | 207: 7 | Q.  How about back in 2000 when |
|     |     | 207: 8 | VIGOR was written, what was the guideline |
|     |     | 207: 9 | then? |
|     |     | 207: 10 | A.  It was probably five then. |

| 202 | **209:2 - 209:3** | Curfman 01/24/2006 | 00:00:04 |
| --- | --- | --- | --- |
|     |     | 209: 2 | Q.  The next exhibit is Exhibit |
|     |     | 209: 3 | Number 19. |

| 203 | **211:19 - 212:6** | Curfman 01/24/2006 | 00:00:26 |
| --- | --- | --- | --- |
|     |     | 211: 19 | And do you see here in the |
|     |     | 211: 20 | very middle of the page that the VIGOR |
|     |     | 211: 21 | authors -- up at the top it says, |
|     |     | 211: 22 | "Suggestion for Transmittal to Authors." |
|     |     | 211: 23 | Right?  Right? |
|     |     | 211: 24 | A.  Yes. |
|     |     | 212: 1 | Q.  Assuming that the suggestion |
|     |     | 212: 2 | was followed, right there in the middle |
|     |     | 212: 3 | of the page, it says, "The total number |
|     |     | 212: 4 | of figures plus tables should not total |
|     |     | 212: 5 | more than five." Do you see that? |
|     |     | 212: 6 | A.  Yes. |

| 204 | **214:1 - 214:3** | Curfman 01/24/2006 | 00:00:09 |
| --- | --- | --- | --- |
|     |     | 214: 1 | So, look through Exhibit 1 |
|     |     | 214: 2 | and tell the jury how many tables there |
|     |     | 214: 3 | were in the VIGOR article. |

| 205 | **214:6 - 214:8** | Curfman 01/24/2006 | 00:00:05 |
| --- | --- | --- | --- |
|     |     | 214: 6 | There were five tables and |
|     |     | 214: 7 | one figure for a total of six pieces of |
|     |     | 214: 8 | documentation. |

| 206 | **217:5 - 218:11** | Curfman 01/24/2006 | 00:01:11 |
| --- | --- | --- | --- |
|     |     | 217: 5 | Q.  Look at Exhibit 20.  Is |
|     |     | 217: 6 | Exhibit 20 some comments by a reviewer, |
|     |     | 217: 7 | or is this a direct communication from an |
|     |     | 217: 8 | editor of the New England Journal of |
|     |     | 217: 9 | Medicine to the lead author of the VIGOR |
|     |     | 217: 10 | publication? |
|     |     | 217: 11 | A.  It is a letter from |
|     |     | 217: 12 | associate editor Marshall Kaplan to the |
|     |     | 217: 13 | corresponding author of the VIGOR |
|     |     | 217: 14 | article, correct. |
|     |     | 217: 15 | Q.  And Marshall Kaplan, in |
|     |     | 217: 16 | terms of this time frame in June of |

217: 17    2000 --
217: 18    A.  Right.
217: 19    Q.  -- in terms of
217: 20    communications with Dr. Bombardier,
217: 21    Marshall Kaplan was really the voice of
217: 22    the New England Journal of Medicine,
217: 23    right?
217: 24    A.  He was the associate editor,
218: 1     yes.
218: 2     Q.  But he was the one who was
218: 3     in charge of communicating the views and
218: 4     instructions --
218: 5     A.  In this particular letter.
218: 6     Q.  -- of the New England
218: 7     Journal of Medicine to the author, Dr.
218: 8     Bombardier --
218: 9     A.  He wrote this letter, yes.
218: 10    Q.  -- Dr. Bombardier; right?
218: 11    A.  Yes.                                    (Edited)

| 207 | 219:18-219:24 | Curfman 01/24/2006 | 00:00:12 |
|-----|---------------|--------------------|----------|

219: 18    Q.  And why don't you read the
219: 19    rest of that sentence that talks about
219: 20    how it should be no longer than 3,000
219: 21    words.  What does it say right after
219: 22    that?
219: 23    A.  "With a total of no more
219: 24    than five figures and tables."              (Edited)

| 208 | 221:10-221:15 | Curfman 01/24/2006 | 00:00:30 |
|-----|---------------|--------------------|----------|

221: 10    Q.  Doctor, on the subject of
221: 11    the significance of the deletion of Table
221: 12    5, did Dr. Drazen tell you that he
221: 13    thought that that whole subject did not
221: 14    even have enough significance to be
221: 15    mentioned in the Expression of Concern?

| 209 | 221:18-221:19 | Curfman 01/24/2006 | 00:00:02 |
|-----|---------------|--------------------|----------|

221: 18        THE WITNESS:  Not to my
221: 19        knowledge.

| 210 | 222:3-223:6 | Curfman 01/24/2006 | 00:01:21 |
|-----|-------------|--------------------|----------|

222: 3     Q.  I've handed you Exhibit 22.
222: 4     Do you see that this is an e-mail from
222: 5     Dr. Drazen, the editor-in-chief, to you
222: 6     and Dr. Morrissey, "Subject: Expression
222: 7     of Concern"?
222: 8     A.  I do, yes.

**CURFMAN_2_DEFENSE_DIRECT**

222: 9    Q.   And it's dated December 4th.
222: 10    Was that pretty early in the drafting of
222: 11    the Expression of Concern?
222: 12    A.   That was still pretty early,
222: 13    yes.
222: 14    Q.   Okay.
222: 15           And do you see here on the
222: 16    e-mail he's attached a document.  And
222: 17    when explaining his attachment, he says,
222: 18    "I attach another edited version of the
222: 19    expression.  The biggest change is the
222: 20    deletion of the stuff about Table 5.  I
222: 21    think it attributes more to this table
222: 22    than it deserves and the numbers speak
222: 23    for themselves.  This piece is cleaner
222: 24    without it."
223: 1           So, does that refresh your
223: 2    recollection that the editor-in-chief of
223: 3    the New England Journal told you that he
223: 4    didn't think that the stuff about Table 5
223: 5    was even significant enough to be
223: 6    included in the Expression of Concern?

| 211 | **223:9-223:17** | Curfman 01/24/2006 | 00:00:18 |
|-----|------|------|------|

223: 9           THE WITNESS:  He changed his
223: 10    mind.
223: 11    BY MR. BECK:
223: 12    Q.   Well, my question is, does
223: 13    this refresh your recollection that, in
223: 14    fact, he told you, at least on December
223: 15    4th, that this whole table 5 stuff was
223: 16    not even a big enough deal to be included
223: 17    in the Expression of Concern?

| 212 | **223:20-223:21** | Curfman 01/24/2006 | 00:00:02 |
|-----|------|------|------|

223: 20    BY MR. BECK:
223: 21    Q.   Did he?

| 213 | **223:24-225:4** | Curfman 01/24/2006 | 00:00:53 |
|-----|------|------|------|

223: 24    Q.   Go ahead, I'm sorry.  Does
224: 1    this document --
224: 2           You said you didn't remember
224: 3    him saying --
224: 4    A.   Correct.
224: 5    Q.   -- telling you that he
224: 6    thought that the stuff about Table 5
224: 7    should not be included.

**CURFMAN_2_DEFENSE_DIRECT**

224: 8    A.   Right.
224: 9    Q.   And then you just testified
224: 10   that he changed his mind.  So, my
224: 11   question right now is simply, does this
224: 12   document refresh your recollection that
224: 13   at least as of December 4th, the
224: 14   editor-in-chief of the New England
224: 15   Journal of Medicine was telling you that
224: 16   he didn't think this stuff about Table 5
224: 17   should even be included in New England
224: 18   Journal -- in the Expression of Concern?
224: 19   A.   Yes.  That's what he said.
224: 20   I, frankly, don't exactly remember this
224: 21   e-mail because he changed his mind, and
224: 22   we did include the material on Table 5.
224: 23   That's not the most important
224: 24   information --
225: 1    Q.   Why don't you stop right
225: 2    there.
225: 3    A.   -- in there.  Okay.
225: 4                    - - -

214   **225:17 -226:21**   Curfman 01/24/2006              00:01:20
225: 17   BY MR. BECK:
225: 18   Q.   And I will show you Exhibit
225: 19   23, which is the attachment to the e-mail
225: 20   that we just looked at.
225: 21   A.   Yes.
225: 22   Q.   And this is kind of a
225: 23   printed out version of that track changes
225: 24   feature that we talked about, isn't it?
226: 1    This is a draft of the Expression of
226: 2    Concern, and you can see on the right
226: 3    things that have been deleted and things
226: 4    that have been added?
226: 5    A.   Right.  Yep.
226: 6    Q.   Okay.
226: 7             And do you see over here on
226: 8    this attachment to the editor-in-chief's
226: 9    e-mail to you that that last square over
226: 10   there that shows what was deleted, at
226: 11   least as of December 4, he wanted to take
226: 12   out the entire paragraph having to do
226: 13   with Table 5, right?
226: 14   A.   Yes, at that time.  And then
226: 15   he changed his mind.  That was an early

|   |   |   |   |
|---|---|---|---|

226: 16    version.  And we went through many
226: 17    versions of this document and a lot of
226: 18    editing was done.  The final version, of
226: 19    course, did include that material.
226: 20    Q.   Somebody convinced him to
226: 21    put it back in; is that right?

| 215 | 226:24 -227:8 | Curfman 01/24/2006 | 00:00:19 |
|---|---|---|---|

226: 24          THE WITNESS:  No.  That's
227: 1          not right.  No.
227: 2    BY MR. BECK:
227: 3    Q.   Earlier, I think, just like
227: 4    10 or 15 minutes ago, you indicated that
227: 5    you couldn't remember if the July 5th,
227: 6    2000 memo referenced a prespecified
227: 7    cutoff date; is that right?
227: 8    A.   Correct.

| 217 | 227:18 -228:1 | Curfman 01/24/2006 | 00:00:22 |
|---|---|---|---|

227: 18    Q.   Exhibit 24 is the July 5th,
227: 19    2000 memo that you were talking about,
227: 20    correct?
227: 21    A.   That's correct.
227: 22    Q.   And my only question, sir,
227: 23    is do you see that the very first phrase
227: 24    in the memo says, "After the February 10,
228: 1    2000 cutoff"?

| 218 | 228:2 -228:23 | Curfman 01/24/2006 | 00:00:41 |
|---|---|---|---|

228: 2    A.   Yes.  It doesn't say
228: 3    prespecified.  Very important
228: 4    distinction.
228: 5    Q.   Well, were you --
228: 6    A.   Every trial has a cutoff.
228: 7    Q.   Is that what you were
228: 8    thinking about --
228: 9    A.   No, not at all.
228: 10    Q.   -- when you said you didn't
228: 11    remember it?
228: 12    A.   No.  You said
228: 13    "prespecified."  That word does not
228: 14    appear.
228: 15    Q.   Did you know in July of
228: 16    2005, now, so, you know, we're talking
228: 17    about --
228: 18    A.   Real time now, huh?
228: 19    Q.   I'm sorry.

|  |  |  |
|---|---|---|
|  | 228: 20 | A.  Are you talking real time, |
|  | 228: 21 | 2005 did I know? |
|  | 228: 22 | Q.  What are you talking about |
|  | 228: 23 | in real time? |

| 219 | **229:6 -229:21** | Curfman 01/24/2006          00:00:37 |
|---|---|---|
|  | 229: 6 | THE WITNESS:  Okay.  I just |
|  | 229: 7 | didn't hear the date. |
|  | 229: 8 | BY MR. BECK: |
|  | 229: 9 | Q.  Okay. |
|  | 229: 10 | The date is July 2005. |
|  | 229: 11 | A.  Okay. |
|  | 229: 12 | Q.  So, whatever that is, four, |
|  | 229: 13 | five months before your deposition was |
|  | 229: 14 | taken, and however many months before |
|  | 229: 15 | your Expression of Concern was written in |
|  | 229: 16 | December -- |
|  | 229: 17 | A.  Right. |
|  | 229: 18 | Q.  -- 2005.  Did you know back |
|  | 229: 19 | in July of 2005 that the VIGOR authors |
|  | 229: 20 | had used a prespecified cutoff date for |
|  | 229: 21 | cardiovascular events? |

| 220 | **229:24 -230:9** | Curfman 01/24/2006          00:00:11 |
|---|---|---|
|  | 229: 24 | THE WITNESS:  I don't think |
|  | 230: 1 | so.  I don't think that fits the |
|  | 230: 2 | timeline because -- |
|  | 230: 3 | BY MR. BECK: |
|  | 230: 4 | Q.  When do you think you |
|  | 230: 5 | learned that? |
|  | 230: 6 | A.  Well, it was never mentioned |
|  | 230: 7 | in the article. |
|  | 230: 8 | Q.  My question was, when do you |
|  | 230: 9 | think you learned that? |

| 221 | **230:18 -231:3** | Curfman 01/24/2006          00:00:19 |
|---|---|---|
|  | 230: 18 | THE WITNESS:  Right.  I'm |
|  | 230: 19 | doing my best here.  I can't say |
|  | 230: 20 | that I'm really sure.  When you |
|  | 230: 21 | said July -- do you have a |
|  | 230: 22 | document? |
|  | 230: 23 | BY MR. BECK: |
|  | 230: 24 | Q.  Yes, I do. |
|  | 231: 1 | A.  Okay. |
|  | 231: 2 | Well, why don't we just go |
|  | 231: 3 | to the document because -- |

| 222 | **231:12 -233:17** | Curfman 01/24/2006          00:02:08 |
|---|---|---|

231: 12   Q.   The document is Exhibit 25.

231: 13   A.   Okay.

231: 14   Q.   And this is a series of

231: 15    e-mails between the NPR reporter we

231: 16    talked about before, Ms. Prakash?

231: 17   A.   Prakash.

231: 18   Q.   Prakash.

231: 19   A.   Right, uh-huh.

231: 20   Q.   And the editor-in-chief, Dr.

231: 21    Drazen.  Do you see that?

231: 22   A.   Yes, I do.

231: 23   Q.   And if you'd turn to the

231: 24    second page here, at the bottom there's

232: 1    an e-mail from Ms. Prakash dated July 11,

232: 2    2005 to Mr. Drazen.  Do you see that?

232: 3    A.   Dr. Drazen.

232: 4    Q.   Dr. Drazen.  I'm sorry.

232: 5    A.   Right.

232: 6    Q.   Do you see that?

232: 7    A.   Yes.

232: 8    Q.   And she thanks him for some

232: 9    earlier reply and she says, "On the data

232: 10    issue:  You make the point that it's the

232: 11    responsibilities of the authors to inform

232: 12    the journal's editors if the data is

232: 13    updated.  Merck says New England Journal

232: 14    of Medicine wasn't told about the

232: 15    additional deaths and heart attacks

232: 16    because they came in after the

232: 17    'prespecified cutoff date for analysis.'

232: 18    Does that explanation satisfy you?  Do

232: 19    you believe they acted appropriately?"

232: 20            And then if you'll turn to

232: 21    the first page, please.

232: 22   A.   Yes.

232: 23   Q.   On the bottom, this is an

232: 24    e-mail from Dr. Drazen to Ms. Prakash

233: 1    responding.  Do you see that?

233: 2    A.   Yes.

233: 3    Q.   And do you see where in the

233: 4    first sentence, it says, "Clinical trials

233: 5    do have precise starting and stopping

233: 6    dates, and the data reported to us

233: 7    adhered to those dates - although we did

233: 8    not know this at the time the paper was

233: 9    published."

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 233: 10 | Now, my question, sir, is, |
| | 233: 11 | were you aware of the information that we |
| | 233: 12 | just went over, the communications |
| | 233: 13 | between Ms. Prakash and Dr. Drazen back |
| | 233: 14 | in July of 2005? |
| | 233: 15 | A.  Well, my name is not on any |
| | 233: 16 | of these -- |
| | 233: 17 | Q.  Right.                                        (Edited) |

| 223 | **236:14-236:15** | Curfman 01/24/2006          00:00:08 |
|---|---|---|
| | 236: 14 | Q.  Let me hand you the next |
| | 236: 15 | document, Exhibit 26.                          (Edited) |

| 224 | **236:15-236:19** | Curfman 01/24/2006          00:00:14 |
|---|---|---|
| | 236: 15 | Now, again, this                              (Edited) |
| | 236: 16 | is a series of e-mails, and you see that |
| | 236: 17 | you're on these first two at least on |
| | 236: 18 | Page 1. |
| | 236: 19 | A.  Right. |

| 225 | **237:4-237:11** | Curfman 01/24/2006          00:00:31 |
|---|---|---|
| | 237: 4 | So, let's go to Page 3 of |
| | 237: 5 | this exhibit, and this is an e-mail that |
| | 237: 6 | you got a copy of from Caryn Sandrew on |
| | 237: 7 | behalf of Dr. Drazen.  Do you see that? |
| | 237: 8 | A.  Yes, I do. |
| | 237: 9 | Q.  And it's, again, to Ms. |
| | 237: 10 | Prakash of NPR; right? |
| | 237: 11 | A.  Right. |

| 226 | **237:23-239:3** | Curfman 01/24/2006          00:01:15 |
|---|---|---|
| | 237: 23 | Q.  Towards the bottom, did the |
| | 237: 24 | editor-in-chief tell Ms. Prakash, "As I |
| | 238: 1 | pointed out in our previous discussion |
| | 238: 2 | and e-mail, the VIGOR article was a |
| | 238: 3 | seminal article that provided the first |
| | 238: 4 | report of potentially dangerous |
| | 238: 5 | cardiovascular side effects of Vioxx.  We |
| | 238: 6 | stand behind the message of that article, |
| | 238: 7 | which for the first time brought the |
| | 238: 8 | attention of the medical community to |
| | 238: 9 | this serious problem"? |
| | 238: 10 | Now, did you know that in |
| | 238: 11 | July, the editor-in-chief was saying that |
| | 238: 12 | the New England Journal of Medicine |
| | 238: 13 | stands behind the VIGOR article? |
| | 238: 14 | A.  At the time that this |
| | 238: 15 | exchange took place, Dr. Drazen was not |

238: 16   aware of this information in the July 5
238: 17   memo, which he learned about it on
238: 18   November 21st, 2005.  And that changes
238: 19   everything.
238: 20         This exchange of e-mail is
238: 21   completely out of date and null and void
238: 22   based on the information that he obtained
238: 23   on this -- in this memo on November 21st
238: 24   of 2005, several months later.
239: 1   Q.  The --
239: 2   A.  This is the crucial document
239: 3   here.

---

| 227 | **239:15-239:21** | Curfman 01/24/2006          00:00:16 |
|-----|-------------------|--------------------------------------|

239: 15   Q.  Let's go down to the very
239: 16   bottom where he says, "It is generally
239: 17   inappropriate to mine a data set for
239: 18   endpoints that were not pre- specified in
239: 19   the research protocol."
239: 20   A.  Yes.  The problem is that in
239: 21   a safety study, that does not apply.

---

| 228 | **240:14-240:21** | Curfman 01/24/2006          00:00:17 |
|-----|-------------------|--------------------------------------|

240: 14   Q.  My focus is, he's making a
240: 15   general observation about whether it is
240: 16   appropriate or not to mine a data set for
240: 17   endpoints that were not prespecified in
240: 18   the research protocol.
240: 19   A.  Except for safety endpoints.
240: 20   Q.  But he doesn't say that,
240: 21   does he?

---

| 229 | **241:10-242:13** | Curfman 01/24/2006          00:01:10 |
|-----|-------------------|--------------------------------------|

241: 10   Q.  Does he go on to say to the
241: 11   NPR author, "Such a fishing expedition
241: 12   can lead to misleading conclusions, both
241: 13   positive and negative"?
241: 14   A.  They could, but he had never
241: 15   seen this document.  And this is a
241: 16   critical document that no editor or
241: 17   physician would ever overlook, the
241: 18   importance of this document.  These are
241: 19   critical safety endpoints, safety
241: 20   endpoints.  And safety endpoints are
241: 21   often not prespecified in a protocol.
241: 22   Q.  But, in fact, when he made
241: 23   that observation about how that's

**CURFMAN_2_DEFENSE_DIRECT**

| | | |
|---|---|---|
| | 241: 24 | inappropriate and it's a fishing |
| | 242: 1 | expedition, he was talking about the |
| | 242: 2 | safety endpoints of the VIGOR article, |
| | 242: 3 | was he not, sir? |
| | 242: 4 | A.   He was not -- he was not |
| | 242: 5 | privy to this document. |
| | 242: 6 | Q.   Was he talking about the |
| | 242: 7 | safety endpoints of the VIGOR article |
| | 242: 8 | when he said that "It is generally |
| | 242: 9 | inappropriate to mine a data set for |
| | 242: 10 | endpoints that were not pre-specified to |
| | 242: 11 | the research protocol.  Such a fishing |
| | 242: 12 | expedition can lead to misleading |
| | 242: 13 | conclusions, both positive and negative"? |

| 230 | **242:17 -242:23** | Curfman 01/24/2006   00:00:12 |
|---|---|---|
| | 242: 17 | A.   It's not clear from this. |
| | 242: 18 | It's a new paragraph. |
| | 242: 19 | Q.   The entire subject of the |
| | 242: 20 | NPR article was the safety endpoints -- |
| | 242: 21 | A.   The words don't say that. |
| | 242: 22 | MR. BECK:  No more |
| | 242: 23 | questions. |

| | | |
|---|---|---|
| | Play Time for this Script:   **01:45:29** | |

## CURFMAN_2_REDIRECT

| Scene | Designation | Source | Tx Duration |
|---|---|---|---|
| 1 | **325:6 -325:7** | Curfman 01/24/2006 | 00:00:01 |
| | 325: 6 | MR. BECK:  I'm going to ask | |
| | 325: 7 | one question | (Edited) |
| 2 | **325:19 -326:17** | Curfman 01/24/2006 | 00:01:12 |
| | 325: 19 | Q.   My question, whether you | |
| | 325: 20 | choose to answer it or not, sir, is, you | |
| | 325: 21 | testified about various matters that you | |
| | 325: 22 | said you could not understand concerning | |
| | 325: 23 | the prespecified cutoff date and the | |
| | 325: 24 | rationale for it.  Did you make any | |
| | 326: 1 | effort to look at what the authors said | |
| | 326: 2 | and their response to the Expression of | |
| | 326: 3 | Concern to understand their reasoning for | |
| | 326: 4 | using the prespecified cutoff date? | |
| | 326: 5 | A.   Well, we will be looking | |
| | 326: 6 | very carefully at their responses to that | |
| | 326: 7 | question to see if we learn any new | |
| | 326: 8 | information.  So far, as of today, we | |

**CURFMAN_2_REDIRECT**

326: 9 haven't learned any new information.  But
326: 10 we will be looking very, very carefully
326: 11 at that crucial point to see what their
326: 12 response is.
326: 13 Q.  So, in terms of your
326: 14 testimony about what you cannot
326: 15 understand, you haven't tried to take
326: 16 into account yet the responses of the
326: 17 authors; is that right?

| 3 | 326:22-327:1 | Curfman 01/24/2006 | 00:00:03 |
|---|---|---|---|

326: 22  THE WITNESS:  You said one
326: 23 question.
326: 24 BY MR. BECK:
327: 1 Q.  Well, is that right, sir?

| 4 | 327:4-327:6 | Curfman 01/24/2006 | 00:00:02 |
|---|---|---|---|

327: 4 BY MR. BECK:
327: 5 Q.  Do you refuse to answer that
327: 6 question?

Play Time for this Script: **00:01:18**

**Total time for all Scripts in this report:** **01:46:47**