

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX PRODUCTS
LIABILITY LITIGATION

MDL No.: 1657

SECTION: L

This document relates to:

Civil Action No. 2:06-cv-401

JAMES OLIG,
                    Plaintiff,
vs.

JUDGE FALLON
MAG. JUDGE KNOWLES

MERCK & CO., INC,
                    Defendant.          /

## PLAINTIFF'S MOTION FOR REMAND
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiff, **JAMES OLIG**, pursuant to 28 U.S.C. §1447(c), moves for an Order

remanding this case to the Circuit Court of the Sixth Judicial Circuit, in and for Pasco

County, Florida, and in support would show:

1.      Plaintiff, at all times material, was a resident of the State of Florida. The

complaint names nine Defendants: **MERCK & CO., INC; CHRIS METROPOLUS**

("METROPOLUS"); **JEROME PITTMAN** ("PITTMAN");   **JUNE V. MARCOTTE**

("MARCOTTE"); **VICTOR SOPINA** ("SOPINA"); **JEFF BASTI** ("BASTI"); **AMY**

**MOORE** ("MOORE"); **VICKIE ST. JOHN**  ("ST. JOHN"), and **RICHARD TATMAN**

("TATMAN").   Upon information and belief, Defendants **MOORE, PITTMAN, SOPINA,**

**BASTI** and **TATMAN** are all current or former Florida residents and sales representatives

employed by **MERCK** to provide information relative to Vioxx to Florida physicians and

others, including Plaintiff and his prescribing physician.

2.     On December 7, 2005, **MERCK** filed a Notice of Removal in the Sixth Judicial Circuit Court, and this action was transferred to the MDL on January 25, 2006. **MERCK** asserts in its Notice that there is diversity between properly joined parties. In addition, although **MERCK** does not directly concede that **MOORE, PITTMAN, SOPINA, BASTI** and **TATMAN** are non-diverse Defendants, it asserts this Court has diversity jurisdiction because the joinder of the Defendants is fraudulent and their citizenship should be ignored.

3.     Contrary to **MERCK**'s assertions, this Court does not have diversity jurisdiction over this case under 28 U.S.C § 1332, since there are numerous Defendants who are Florida residents.  In addition, Defendants **PITTMAN, SOPINA, BASTI** and **TATMAN** are not fraudulently joined and are proper Defendants to this action, as Plaintiff has a colorable claim against each of them for fraud and misrepresentation.

WHEREFORE, Plaintiff requests that this Court issue an Order immediately remanding this action back to the Circuit Court of the Sixth Judicial Circuit, in and for Pasco County, as **MERCK** has failed to prove that Defendants **PITTMAN, SOPINA, BASTI** and **TATMAN** were fraudulently joined in this action. Therefore, this Court lacks subject matter jurisdiction over them, and remand is appropriate.

## MEMORANDUM OF LAW

Defendant **MERCK** makes an unsupported allegation that diversity of citizenship exists and that Plaintiff has engaged in fraudulent joinder in order to defeat diversity in this case.  Defendant **MERCK** has further alleged that there is no reasonable possibility that Plaintiff can establish any cause of action against all named Defendants (Notice of Removal,

2

¶ 18), an assertion that is unsupported by Florida case law.   To defeat all allegations of fraudulent joinder, Plaintiff need only prove a possibility of recovery.   Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998); Ware v. G.D. Searle, et al., No. 05-0659 (M.D. Ala., October 25, 2005).  In Ware, the Plaintiff countered Pfizer's contention that there was no reasonable basis for establishing a cause of action against defendant sales representative. The Court ruled in Ware's favor with regard to limiting its inquiry to whether the plaintiff has a possibility of stating a valid cause of action against the defendant sales representative under state law.  **MERCK**'s removal pleadings completely ignore relevant Florida case law supporting such a cause of action, and are factually and legally unsound.  Once again, this Court should remand this case to Pasco County Circuit Court, as **MERCK**'s removal was improper.

### I.      Defendant MERCK Fails to Prove Complete Diversity of Citizenship Exists Between Properly Joined Parties.

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity (i.e., that every plaintiff must be diverse from every defendant).  Palmer v Hospital Authority of Randolph County, 22 F.3d 1559, 1564 (11th Cir. 1994).  If, as here, removal is founded solely on diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a), a defendant must prove two things—that the parties are completely diverse and that the amount in controversy exceeds $75,000.  DeAguilar v. Boeing Co., 47 F.3d 1404, 1410-11 (5th Cir. 1995).

Plaintiff is a resident of Pasco County, Florida.  **MERCK** is a New Jersey corporation that is authorized to conduct business in Florida.  At all times material to this case, **MERCK** was engaged in the business of developing, manufacturing, selling and promoting Vioxx  to Florida physicians and others, including Plaintiff and his prescribing physicians. **PITTMAN,**

**SOPINA, BASTI** and **TATMAN** are or were residents of the State of Florida, and were employed by **MERCK** as sales representatives to promote and to encourage physicians to prescribe Vioxx.   It is not disputed that the amount in controversy exceeds $75,000. Diversity is determined as of the date the action is filed.  Freeport-McMoran, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991).   Accordingly, complete diversity of citizenship did not exist when this case was filed and diversity jurisdiction is lacking, as there are Florida residents who are named sales representative defendants.

## II.      Defendant MERCK Has Failed to Meet Its Substantial Burden to Prove Fraudulent Joinder.

To circumvent the fact that the parties were not completely diverse when the case was filed, **MERCK**  resorts to reliance on the fraudulent joinder rule,  asserting that there is "no reasonable basis" for claims against its employees **PITTMAN, SOPINA, BASTI** and **TATMAN** who are believed to be all Florida current or former residents.  This assertion is groundless.

Defendant **MERCK,** as the party seeking removal, has the burden of proving *by clear and convincing evidence* that the joinder of non-diverse Defendants was fraudulent.  Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962)[1].  This heavy burden is placed on the party seeking removal for two reasons.  First, in the absence of fraudulent joinder, the "plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination."  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).  Second, "[t]he strict construction of removal statute also

---

[1]    In Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981) *(en banc),* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

prevents 'exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal." Id.   The Court's inquiry is limited to determining whether Plaintiff has a possibility of stating a valid cause of action against named sales representative defendants under state law. Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538; Crowe, 113 F.3d at 1538. *See also* Univ. of So. Alabama v. The American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999;. Estate of Ayers v. Beaver, 48 F. Supp. 2d 1335, 1341 (M.D. Fla. 1999).

MERCK cites Stern v. Wyeth, Case No. 02-80620-CIV-MARRA (S.D. Fla. Jan 22, 2003) and In re Rezulin Products Liab. Litig. 133 F.Supp. 2d 272 (S.D.N.Y. 2001), stating that a motion to remand was denied where the affidavit of pharmaceutical representative established that the named employee did not have contact with plaintiff or physicians.   In In re Rezulin, the Court noted that the Plaintiff did not respond to sales representative affidavits in any way.   In contrast, Defendants **MOORE, PITTMAN, SOPINA, BASTI** and **TATMAN** have provided no such affidavits alleging that they have had no contact with Plaintiff's prescribing physicians. The notable absence of affidavits from these named Defendants and a carefully worded declaration from a non-defendant are insufficient to overcome the allegations of the Plaintiff's complaint.  Pursuant to Pre-Trial Order No. 21, Plaintiff does not yet have access to **MERCK**'s FACTS database for relevant discovery with regard to this case.  In addition, the affidavits provided by **MARCOTTE, ST. JOHN,** and **METROPOLUS** merely state that they have "never called on" plaintiff's prescribing physicians.  In the case of Kozic v Merck, 8:04-CV 324-T-27TBM, (M.D. Fla. Aug. 2004), Plaintiff's counsel has uncovered other **MERCK** resources used to tie physicians to their

Vioxx sales representatives other than 'recorded' call notes that specifically mention Vioxx.[2]
In <u>Pritchard v. Hancock Fabrics, Inc.</u>, 198 F.Supp.2d 1288, 1290-91 (N.D. Ala. 2002), the
Court held that the Plaintiff's general allegation of negligence against the resident Defendant
was not overcome by resident Defendant's affidavit which, if believed, would seem to
absolve resident Defendant of liability, because as the court stated, "It is at least possible that,
given an opportunity for full discovery, Pritchard might uncover evidence contradicting
Goolsby's version."

　　　　**MERCK** also cites <u>Legg v. Wyeth</u>, 428 F3.d 1317 (N.D. Alabama, October 25, 2005)
in its Notice of Removal.　<u>Legg</u>, a fen-phen case, is distinguishable in that the Plaintiff in
<u>Legg</u> had no direct evidence to rebut the affidavits of the named sales representative
defendants. The court noted with respect to one sales rep defendant that: "..with no evidence
that [sales rep] had anything to do with Redux, there is no reasonable possibility the
plaintiff's can establish a cause of action against him ..under Alabama law."　<u>Id</u>. at 1324.　In
stark contrast, just from the scant amount of call notes thus far provided by **MERCK,** and
from depositions taken of **MERCK** sales representatives with regard to this MDL, it is
evident that sales representatives were trained to and purposefully and intentionally misled
physicians, over-promote the safety of Vioxx and failed to warn of Vioxx's cardiovascular
risks.[3]　The <u>Legg</u> opinion came late in the stages of fen-phen litigation and is not applicable

---

[2] See Exhibit "A". Sales representatives are detailing doctors in colloquia, customer focus groups, national
speaker forums, regional speaker forums, regional speaker round tables, clinical discussion groups, Vioxx
Tuesdays, and FMC lunches.
[3] Exhibit "B"- attached document Bates stamp: MRK-AAR00119773-86: The training document used to
demonstrate to sales representatives how to "dodge" questions from physicians about cardiovascular, heart
attacks and other risks associated with the use of Vioxx; attached document Bates stamp: MRK-AAR0007244-
48: Bulletin to sales representatives directing them *not* to initiate discussion based on *VIGOR* studies, and how
to respond to direct inquiries from physicians as to the cardiovascular risks associated with the use of Vioxx.

here.  During this stage of the MDL, Plaintiff is still conducting discovery and establishing a pattern and practice among **MERCK** sales representatives that substantiate claims of negligence, negligent misrepresentation and fraud.

**III.    Plaintiff has a Valid Cause of Action Against Wyeth's Sales Representatives for Negligence, Negligent Misrepresentation, and Fraud**

        **MERCK** argues that Plaintiff makes no specific factual allegations regarding any actual conduct of the individual "Employee Defendants (Notice of Removal ¶ 23).  As a threshold issue, arguments against remand and in support of removal are inappropriate if based on the viability of the plaintiff's complaint, rather than on whether Florida law generally provides for a cause of action against pharmaceutical sales representatives. Tomlin v. Merck et al., 04-14335-civ-moore (South. Fla., February 18, 2005).  "In deciding whether remand is appropriate, the Court must determine whether plaintiffs have provided sufficient allegations within their complaint to support any of the claims against [sales rep]." Id.   In order for Plaintiffs to prevail on their Motion for Remand, it is only necessary that they state one viable claim under Florida law against a [defendant sales representative].   Estate of Ayers v. Beaver, 48 F. Supp. 2d 1335, 1342 (M.D. Fla. 1999).

        Florida specifically recognizes a cause of action against a pharmaceutical sales representative for misrepresentations made to physicians while marketing a drug.  Albertson v. Richardson-Merrell, Inc., 441 So.2d 1146 (Fla. 4th DCA 1983), *petition for review denied,* 441 So. 2d 850 (Fla. 1984); Little v. Wyeth Ayerst Labs, Inc., No. 99-2244-CIV-T-17F, slip op. at 6 (M.D. Fla. Dec. 9, 1999); Barrow v. Bristol-Myers Squibb, (NO. 96-689-CIV-ORL-19B). (M.D. Fla. Oct 29, 1998).   The recognition of a cause of action against a

pharmaceutical salesperson by Albertson is also consistent with the legal principle, firmly established in Florida, that a corporate employee is personally liable (in addition to his employer) for the torts that he or she commits in the course and scope of employment. Florida Specialty, Inc., v. H 2 Ology, Inc., 742 So. 2d 523, 525 & 527 (Fla. 1st DCA 1999) (stating a cause of action against employee for negligent actions and negligent failure to warn); White-Wilson Medical Center v. Dayta Consultants, Inc., 486 So. 2d 659, 661 (Fla. 1st DCA 1986) (holding that "officers or agents of a corporation may be held liable for their own torts even if such acts are performed within the scope of their employment or as corporate officers or agents. This is so even if no argument is advanced that the corporate form should be disregarded."); Kerry's Brombelia Nursery, Inc. v. Reiling, 561 So.2d 1305, 1306 (Fla. 3d DCA 1990); Orlovsky v. Solid Surf, Inc., 405 So. 2d 1363, 1364 (Fla. 4th DCA 1987).

Under Florida law, a person can be held liable for negligent misrepresentation when he or she supplies false information for the guidance of others without exercising reasonable care in obtaining or communicating that information. Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 336, 339 (Fla. 1997). Also, both an employer and its employee may be held liable for injuries to a Plaintiff due to the employee's negligence and misrepresentations. Greenberg v. Post, 19 So. 2d 714 (Fla. 1944).

Plaintiff has alleged sufficient facts supporting a claim for fraud and negligent misrepresentation against Defendants **PITTMAN, SOPINA, BASTI** and **TATMAN** in accordance with Florida law. In the Complaint, Plaintiff alleges that:

> ¶50: Defendant misrepresented the safety and effectiveness of Vioxx to prescribing physicians, Plaintiff, and the consuming public, and concealed or understated the dangerous side effects associated with ingestion of Vioxx.

¶65:  Defendant's  negligent  misrepresentations  were communicated to Plaintiff's prescribing physician with the intent that they reach the Plaintiff, and that the effect of such representations would be that prescriptions would be written for Vioxx for the consuming public, including Plaintiff.

¶71: Through the Vioxx product inserts, promotional materials, and aggressive marketing, Defendant continued to misrepresent the potential risks and benefits associated with Vioxx both before and after Plaintiff's ingestion of the drug.

¶72: Defendant had a post-sale duty to warn Plaintiff, the consuming public, and prescribing physicians about the potential risks and complications associated with Vioxx in a timely manner.

¶73: Defendant misrepresented the safety and efficacy of Vioxx in their labeling, advertising, product inserts, promotional materials, or other marketing efforts.

¶81: Defendant made these fraudulent or intentional misrepresentations and actively concealed adverse information at a time when the Defendant knew that Vioxx had defects, dangers, and characteristics that were other than what the Defendant had represented to the prescribing doctors or other dispensing entities, the FDA and the consuming public, including the Plaintiff herein. Specifically, the Defendant fraudulently or intentionally misrepresented to and/or actively concealed from Plaintiff, Plaintiff's prescribing physician or other dispensing entities, the FDA and the consuming public the following adverse information regarding the Vioxx ingested by the Plaintiff:

a.     Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that Vioxx carried risks of serious adverse effects;

b.     Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that there were serious risks of thrombotic events associated with Vioxx, and, instead, Defendant aggressively marketed, promoted, advertised directly to consumers, and/or sold Vioxx as if there was no risk; and

c.     Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that prior studies, research, reports and/or testing had been conducted linking Vioxx to serious adverse actions.

Plaintiff alleges that misrepresentations were made by the Sales Representative Defendants **PITTMAN, SOPINA, BASTI** and **TATMAN** to the Plaintiff's prescribing physicians, as well as others, during their detailing visits and on other occasions. Further, Plaintiff has alleged that the misrepresentations made by the sales representative Defendants to Plaintiff's prescribing physicians dealt with the safety and efficacy of Vioxx and the warnings given by the sales representatives regarding Vioxx.        **MERCK** cites Hernandez v Merck & Co., Inc, et al. Case No. 6:05-CV-00211-ORL-31-KRS(M.D. Fla. May 3, 2005) and Merced-Torres v. Merck & Co.,Inc., Case No. 6:05-CV-449-ORL-19DAB, as evidence of similar cases where Plaintiff failed to allege specific misrepresentations made to Plaintiff's prescribing physicians. In contrast, in both Hernandez and Merced-Torres, the named sales representative defendants filed affidavits that they did not call on Plaintiff's physicians, or any other physicians in that geographical area.        In this case, **MOORE, PITTMAN, SOPINA, BASTI** and **TATMAN** have filed no such affidavits. Plaintiff in this case has conducted a diligent search of the national database to match up Plaintiff's prescribing physician and the corresponding MERCK sales representatives.        Plaintiff identified these particular named Defendants only after a thorough review of all documents that are accessible to counsel at this time.

## IV.        Remands Have Been Ordered in Similar Cases

In Irvin v. Merck, Case No. 03-80514 CIV-HURLEY (S.D. Fla. October 9, 2003), the Southern District of Florida faced a remand issue in a case filed against Merck and its sales representative for the wrongful death of a patient who had ingested Vioxx. In Irvin, the Court remanded the action to state court after rejecting Merck's argument that the non-

diverse sales representatives had been fraudulently joined.  In <u>Kozic v. Merck</u>, Case No. 8:04-CV 324-T-27TBM, (M.D. Fla. Aug. 2004)  the Court also granted remand and stated that it "must 'pierce the pleadings' to determine whether, under controlling state law, the plaintiff has a possible or arguable claim against the non-diverse defendant, or whether, on the other hand, it is clear there can be no recovery." *See also* <u>Crowe v. Coleman</u>, 113 F. 3d 1538 (11th Cir. 1997); <u>Bobby Jones Garden Apartments, Inc. v. Suleski</u>, 391 F. 2d 172 (5th Cir. 1968).  In <u>Kozic</u>, Plaintiff successfully argued that the Defendant sales representatives made representations concerning the safety and effectiveness of Vioxx and concealed its dangerous side effects.  A number of pharmaceutical cases have been remanded back to Florida courts where the non-diverse sales representatives were joined as parties and the case was improperly removed by the drug manufacturer, under facts that are indistinguishable from the instant case.  In <u>Little v. Wyeth Laboratories</u>, Case No. 99-2244-CIV-T-17F (Middle Dist. Fla. Dec. 9, 1999), Judge Kovachevich found that the Plaintiff had properly alleged a colorable claim against the diet drug manufacturers' sales representatives under <u>Albertson</u> and that the drug manufacturer had failed to prove fraudulent joinder.  Similar orders granting remand under <u>Albertson</u> were also entered in <u>Wrisley v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2246-CIV-T-26C (M.D. Fla. Dec. 29, 1999); <u>Hildebrand v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2240-CIV-T-26B (M.D. Fla. Dec. 29, 1999); <u>Snell v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2253-CIV-T-26A (M.D. Fla. Dec. 29, 1999); <u>Morris v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2381-CIV-T-26C (M.D. Fla. Dec. 29, 1999); <u>Martin v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2454-CIV-T-26A (M.D. Fla. Dec. 29, 1999); <u>Parent v. Wyeth-Ayerst</u>

Laboratories, Inc., Case No. 2:03-CV-626-FTM-29SPC (M.D. Fla. Dec. 19, 2003); Hroncich

v. Wyeth Ayerst Laboratories, Inc., Case No. 2:03-CV-659-FTM-29SPC (M.D. Fla. Jan. 12,

2004).

**CONCLUSION**

Defendant **MERCK**'s removal is improper.  The only inquiry that is required from

this Court is whether there is *any possibility* that the Plaintiff can establish a claim against the

non-diverse Defendants.  Defendant **MERCK** has failed to provide any evidence that is clear

and convincing to overcome the allegations of the Plaintiff's complaint.  Accordingly,

remand is appropriate as this Court is without diversity jurisdiction.

Dated this _____ day of _____, 2006.

By: _____
          **BRENDA S. FULMER, Esq. (FBN: 999891)**
          **C. TODD ALLEY, Esq. (FBN: 321788)**
          **JAMES D. CLARK, Esq. (FBN: 191311)**
          **DON GREIWE, Esq. (FBN: 218911)**
          **AMY D. PREVATT, Esq. (FBN: 13858)**
          ALLEY, CLARK, GREIWE & FULMER
          701 E. Washington Street
          P.O. Box 3127
          Tampa, FL 33601-3127
          Tele: (813) 222-0977
          Fax: (813) 224-0373
          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY the foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and by e-mail and has been served upon all parties set forth on the attached Service List by electronically uploading the same to LexisNexis File & Serve on this 21st day of _Feb_____, 2006.

By: _____
**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
**AMY D. PREVATT, Esq. (FBN: 13858)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

## SERVICE LIST

**Wilfred P. Coronato, Esq.**
Hughes, Hubbard & Reed, LLP
101 Hudson Street, Suite 3601
Jersey City, NJ 07302-3918
Tele: (201) 946-5700
Fax: (201) 536-0799
*Email: Coronato@hugheshubbard.com*

**Phillip A. Wittmann, Esquire**
Stone, Pigman, Walther, Wittmann, LLC
546 Carondelet St.
New Orleans, LA 71030
Tele: (504) 581-3200
Fax: (504) 581-3361
*Email: pwittmann@stonepigman.com*
Defendant's Liaison Counsel

**Aretha Delight Davis, Esquire**
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Tele: (215) 994-2423
Fax: (215) 994-2222
*Email: Aretha.davis@dechert.com*

**Susan Giamportone, Esq.**
Womble, Carlyle, Sandridge & Rice
2530 Meridian Parkway, Suite 400
Durham, NC  27713
Tele: (919) 316-4243
Fax: (919) 484-2061
*Email: SGiamportone@wcsr.com*

**Barbara Bolton Litten, Esquire**
**Patricia E. Lowry, Esquire**
**John B.T. Murray, Jr., Esquire**
**Dori K. Stibolt, Esquire**
Squire, Sanders & Dempsey
1900 Phillips Point West
777 S. Flagler Drive
West Palm Beach, FL 33401
Tele: (561) 650-7200
Fax: (561) 655-1509
*Email: blitten@ssd.com*
*Email: plowry@ssd.com*
*Email: jbmurray@ssd.com*
*Email: dstibolt@ssd.com*
Local Counsel for Merck

**Russ Herman, Esquire**
Herman, Herman, Katz & Cotlar, LLP
910 Airport Road, Suite 3A
Destin, FL 32541
Tele: (866) 855-5101
Fax: (850) 837-8178
*Email: VIOXX@hhkc.com*
Plaintiff's Liaison Counsel

## <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL CASES:</u>

1.   Barrow v. Bristol Myers Squibb, No. 96-689-cv-ORL-19B
     (M.D. Fla. Oct 29, 1998).................................................................................................7

2.   Bobby Jones Garden Apartments Inc. v. Suleski, 391 F.2d 172 (5th Cir. 1968).........11

3.   Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)..............................4

4.   Crowe v. Coleman, 113 F.3d 1536, 1541 (11th Cir. 1992) .................................4,5,11

5.   DeAguilar v Boeing Co., 47 F.3d 1404, 1410-11 (5th Cir. 1995)................................3

6.   Estate of Ayers v. Beaver, 48 F. Supp. 2d 1335, 1341 (M.D. Fla. 1999).................5,7

7.   Freeport-McMoran, Inc. v. KN Energy, Inc., 498 U.S. 426, 428(1991) .....................4

8.   Hernandez v. Merck & Co. 6:05-CV-00211-ORL-31 (M.D. Fla May 3, 2005).......10

9.   Hildebrand v. Wyeth-Ayerst Laboratories
     99-2240-CIV-T-26B (M.D. Fla. Dec. 29, 1999) ...........................................11

10.  Hroncoch v. Wyeth Ayerst Laboratories, Inc. et al
     2:03-CV-659-FTM-29SPC (M.D. Fla Jan. 12, 2004)....................................11

11.  In re Rezulin Prod. Liab. Litig. 133 F.Supp 2d 272 (S.D.N.Y).............................5

12.  Irvin v Merck, Case No. 03-80514-civ-Hurley (S.D. Fla. Oct 9, 2003)....................10

13.  Kozik v Merck, Case No. 8:04-CV-324-T-27TBM (Aug 2004).......................5,11

14.  Legg v Wyeth, 8:05-cv-01541 JSM-TGW (N.D. Alabama, October 25, 2005)....…...6

15.  Little v Wyeth Ayerst Labs, Inc., No. 99-2244-civ-T-17F, slip op. at 6
     (M.D. Fla. Dec 9, 1999).................................................................................7,11

16.  Martin v. Wyeth-Ayerst Laboratories, Inc. et al.
     99-2454-CIV-T-26A (M.D. Fla. Dec. 29, 1999)...........................................11

17.  Merced-Torres v. Merck & Co., Inc.  6:05-CV-449-ORL-19DAB....................10

18.   Morris v. Wyeth-Ayerst Laboratories, Inc., et.al
      99-2381-CIV-T-26C (M.D. Fla. Dec. 29, 1999)..............................................11

19.   Palmer v. Hospital Authority of Randolph County,
      22 F.3d 1559, 1564( (11th Cir. 1994) ............................................................3

20.   Parent v. Wyeth-Ayerst Laboratories, Inc., et al.
      2:03-CV-626-FTM-29SPC (M.D. Fla. Dec. 19, 2003)....................................11

21.   Parks v. New York Times Co., 308 F.2d 474 (5th Cir. 1962) ......................................4

22.   Pritchard v. Hancock Fabrics, Inc.,
      198 F.Supp.2d 1288, 1290-91 (N.D. Ala. 2002)...........................................6

23.   Snell v. Wyeth Ayerst Laboratories Inc.,
      99-2253-CIV-T-26A (M.D. Fla. Dec. 29, 1999) ............................................11

24.   Stern v Wyeth 02: 80620-CIV-:MARRA (S.D. Fla. Jan 22, 2003)......................5

25.   Tomlin v Merck & Co., Inc., 04:14335-CIV-MOORE (S.D. Fla. Feb. 18, 2005).......7

26.   Triggs v. John Crump Toyota Inc., 154 F.3d 1284, 1287-1288
      (11th Cir. 1998).............................................................................3,5

27.   Univ. of So. Alabama v. The American Tobacco Co.,
      168 F.3d 405, 410 (11th Cir. 1999) ...........................................................5

28.   Ware v G.D. Searle,  05: 0659 (M.D. Ala., Oct. 25, 2005)...............................3

29.   Wrisley v. Wyeth- Ayerst Laboratories Inc.
      99-2246-civ-T-26c (M.D. Fla. Dec 29, 1999) .............................................11


FEDERAL STATUTE:

30.   28 U.S.C. Section 1332...................................................................2,3

31.   28 U.S.C. Section 1441(a) ................................................................4

STATE CASES:

32.   Albertson v. Richardson-Merrell, Inc.,
      441 So. 2d 1146 (Fla. 4th DCA 1983)....................................................7,8,11

33. Florida Specialty, Inc. v. H 2 Ology, Inc., 742 So. 2d 523, 525 & 527 (Fla. 1st DCA 1999)................................................................................................8

34. Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 336, 339 (Fla. 1997)...........8

35. Greenberg v. Post, 19 So. 2d 49 (Fla. 4th DCA 1967) ...............................................8

36. Kerry's Brombelia Nursery, Inc. v. Reiling, 561 So.2d 1305, 1306 (Fla. 3d DCA 1990) ...............................................................8

37. Orlovsky v. Solid Surf, Inc., 405 So.2d 1363, 1364 (Fla. 4th DCA 1987)................8

38. White-Wilson Medical Center v. Dayta Consultants, Inc., 486 So.2d 659, 661 (Fla. 1st DCA 1986) .................................................................8

# EXHIBIT A

# *Vioxx Target List*



| Key For Messages | Key For Resouces | Key For HEL |
|---|---|---|
| 1. Efficacy in Acute pain | 14. Cannon Reprint | 19. Colloquia |
| 2. OA efficacy | 15. Vigor Study (PIR) | 20. Customer focus Group |
| 3. Safety in Elderly | 16. Celebrex vs Vioxx comparison | 21. National Speaker Forum |
| 4. GI Risk and Safety Messages | 17. Laine Reprint | 22. Regional Seaker Forum |
| 5. Call to action - Close | 18. Ruben Data (PIR) | 23. Regional Speaker |
| 6. 25mg more potent greater than 200mg q.d | | Round table |
| 7. 12.5mg is the recommended starting dose for OA | | 24. Clinical Discussion Group |
| 8. 12.5 mg is comparable to 2400 mg ibubrofen | | 25. Vioxx Tuesday's |
| 9. Median time till rescue medication was 9.6 hrs | | 26. FMC lunches |
| 10. Superior pain relief over codeine max dose | | |
| 11. Rate of Hypertension and Edema | | |
| comparable to other NSAIDS | | |
| 12. Narcotic tapering Data | | |
| 13. Comparable dosing 25mg = 400mg celebrex | | |

Top 10 - Rx Share Chg
Bottom 10 - Rx Share Chg

Merck Rating

Customer

Total Market

VIOXX TOTAL

Share (RCQ)

Rx Share Chg

Celebex(RCQ)

Rx Share (RCQ)

Rx Share Chg

Rx Share (RCQ)

TS -- Redacted -- trade secret

MRK-KOZ0012243

# EXHIBIT B



Ball

VIOXX®
(rofecoxib)



DODGE!

P1.0007        MRK-AAR0019773





"I am concerned with the potential edema that occurs with Vioxx."

MRK-AAR0019774



**VIOXX®**

(rofecoxib)



"I am concerned with dose-related
increases in hypertension
with Vioxx."

MRK-AAR0019775





"Can Vioxx be used in patients
using low dose aspirin?"

MRK-AAR0019776



# VIOXX ®

## (rofecoxib)



"I am concerned about the
cardiovascular effects of Vioxx?"

MRK-AAR0019777



**Dodge Ball**

**VIOXX®**

(rofecoxib)



**OBSTACLE 5**

"The competition has been in my
office telling me that the incidence
of heart attacks is greater with
Vioxx than Celebrex."

MRK-AAR0019778



Dodgeball

VIOXX®
(rofecoxib)



OBSTACLE 2

"There is no difference between
Vioxx and Celebrex, why
should I use Vioxx?"

MRK-AAR0019779





"Vioxx cannot be used for longer than five days when treating patients for acute pain?"

MRK-AAR0019780





"I use Celebrex.  I'm concerned about the safety profile with Vioxx?"

MRK-AAR0019781



# VIOXX® (rofecoxib)



"I understand the new COXIB,
Mobic, was just approved."

MRK-AAR0019782





"Searle/Pfizer just presented me with data which showed Celebrex 800 mg daily did not exhibit dose dependent increases in side effects compared to the OA and RA doses, and that Vioxx exhibited dose dependent increases in side effects with the 50 mg dose."

MRK-AAR0019783



# VIOXX ®
## (rofecoxib)



"The new narcotic data looks great,
now I'll use Vioxx for all my acute
pain patients."

MRK-AAR0019784



**Dodge Ball**

**VIOXX**®
(rofecoxib)



"I can't use Vioxx because the HMO's require the patients to be on generic NSAIDS first."

MRK-AAR0019785



# VIOXX®
## (rofecoxib)



# DODGE!

MRK-AAR0019786

No. COX 01-031
May 24, 2001

### Bulletin for VIOXX®:
### Action Required:  REVISED Response to New York Times Article

**TO:**

| | |
|---|---|
| All Field Representations with Responsibility for VIOXX | Action Required |
| All Hospital Representatives | Action Required |
| A & A Specialty Representatives | Action Required |
| A & A HSAs | Action Required |
| Urology Representatives | Action Required |
| Neurology Representatives | Action Required |
| Managed Care NAEs and Customer Managers (all segments) | Background Information |

*DO NOT INITIATE DISCUSSIONS ON THE RESULTS OF THE VIOXX® GI OUTCOMES RESEARCH (VIGOR) STUDY, OR ANY OF THE RECENT ARTICLES IN THE PRESS ON VIOXX.  YOU MAY RESPOND TO CUSTOMER INQUIRIES ONLY AS OUTLINED BELOW.*

**PURPOSE:**

To provide you with important background information, obstacle responses and faxable PIR instructions in the event that you are questioned by customers about the CV effects of VIOXX.

**ACTIONS REQUIRED:**

**Obstacle Response #38: (originally issued in Bulletin COX 00-029)**



"Doctor, there are no head-to-head studies comparing the cardiovascular profile of the two drugs.  As a result, you cannot compare the drugs and conclude that one drug had fewer events than the other.  What you may be referring to is press reports of the incidence rates in two separate studies.  In the VIOXX GI Outcomes Trial (VIGOR), the incidence of MI was 0.5% with VIOXX and 0.1% with naproxen.  In a separate GI outcomes trial of Celebrex, the CLASS study, Searle has reported that the incidence of MI was 0.5% with Celebrex, 0.3% with diclofenac, and 0.5% with ibuprofen.  Again, doctor, I want to emphasize that the results of two different studies can't be compared, and that's particularly true here when you have studies of differing duration and in different patient populations."

MRK-AAR0007244

If the doctor asks you further for the incidence of MI from the OA studies presented in the package insert for VIOXX tell them:

"In the clinical OA trials for VIOXX reported in our package insert, the incidence of MI was less than 0.1% with VIOXX."

Use your CV Card to show the data on studies involving VIOXX and various NSAIDs (ibuprofen, diclofenac, and nabumetone) on overall mortality and CV mortality rates

"Doctor, As you can see, Cardiovascular Mortality as reported in over 6,000 patients was VIOXX .1 vs. NSAIDs .8 vs. Placebo 0."

**Physician Inquiries:**

> *Reminder: In accordance with policy letters 110, 118, and 131, Field Personnel, including Professional Representatives, HSAs, Hospital Tablet Representatives, Specialty Representatives and NAEs may not discuss off-label information about VIOXX with health care professionals (HCP). In accordance with policy letter 104A, Field Personnel may submit PIRs to Medical Services when an HCP has an <u>unsolicited</u> request for information.*

**PURPOSE:**
To provide you with toll free phone numbers for the one Fax PIR available from Medical Services in response to unsolicited requests for information from HCPs regarding VIOXX and Response to media reports about cardiovascular adverse events.

**ACTION REQUIRED:**
In response to <u>unsolicited</u> questions from HCPs, you may request PIRs from Medical Services by using EITHER the interactive voice response (IVR) same day fax service, or by using the usual PIR request methods as stated in policy 104A. PIRs requested via the IVR same day fax service will be provided as a "nonpersonalized" Dear Doctor Letter. Specific steps for using the IVR fax service are outlined below.

**OVERVIEW:**
1. IVR FAX METHOD –
Effective Thursday 5/24-3 pm ET, through close of business Friday, June 29, 2001 (excluding holidays), Medical Services will have one PIR available via fax to respond to the following type of inquiry:

- **<u>Fax</u> = VIOXX and Response to Media Reports about Cardiovascular Adverse Events**

In response to <u>unsolicited</u> questions about the above topics, the PIR — <u>VIOXX and Response to Media Reports about Cardiovascular Adverse Events</u> will be available from Medical Services via the interactive voice response (IVR) same day fax service and provided as a "nonpersonalized" Dear Doctor Letter.

MRK-AAR0007245

**Toll Free Fax PIR Request Telephone Number:**

**You may submit a HCPs request for a faxed PIR(s) by simply calling 1-877-372-7064 .**
- This toll free phone number will be made available from 8:00am – 10:00pm (ET). Since this line is an IVR system, a touch tone phone must be used in order to provide the pertinent information needed as prompted in the system.

Please follow the detailed instructions outlined below for requesting the faxable "nonpersonalized" Dear Doctor Letter.

You should be prepared to provide the following pertinent information as prompted by the system:
- Your Region, District, and Territory identifier
- Requesting Physician's 5 digit ZIP code
- Requesting Physician's full name and professional degree (speak)
- Requesting Physician's full mailing U.S. address (speak)
- Requesting Physician's phone number with area code
- Requesting Physician's FAX number with area code

Select the faxes requested by the physician:
- **FAX  = VIOXX and Response to Media Reports about Cardiovascular Adverse Events**

**IMPORTANT NOTE: PIRs ARE NOT TO BE REPRODUCED IN ANY FORM!**

This one fax will be sent directly to the requesting physician's office as "nonpersonalized" Dear Doctor Letter. This fax should arrive as soon as 15 minutes from the time of the request.  You must leave a copy of the circular for VIOXX with the HCP.  (Note: For pharmacists, nurses, and physician assistants, you may also want to send the 'Dear Doctor' letter.)

You also have the option to follow the usual procedure established for processing a PIR using the methods through Medical Services as stated in Policy 104A.

**Toll Free IVR HELPLINE Telephone Number:**
If you experience difficulty with the IVR system or if there is difficulty receiving the fax, representatives should call the IVR HELPLINE at   1-888-721-7204 (9:00 am to 7:00 pm ET)
- This number will be on the cover sheet of both faxes available to the physician.
- This number is staffed from 9:00 am to 7:00 pm ET.

**2. ADDITIONAL OTHER PIRS FOR VIOXX ARE AVAILABLE FROM MEDICAL SERVICES IN RESPONSE TO UNSOLICITED INQUIRIES FROM HCPS BY USING THE USUAL METHODS TO SUBMIT PIRS AS STATED IN POLICY LETTER 104A.**

The usual PIR request methods are (note: choose only one method for each request):
- INSIGHT and processing using the PIR screen;
- PIR hotline at 800-MERCK66 (8:30 am to 6:30 pm ET as extended hours) in Medical Services. This phone number is NOT to be given to an HCP, but is for Merck Field Personnel use only to verbally submit the questions asked by HCPs.  PIR inquiries may be submitted to Medical Services 24 hours a day, 7 days a week with voice message available after hours (6:30pm to 8:30am ET).
- Faxing your request to Medical Services at 800-MERCK66.

MRK-AAR0007246

If a health care provider requests to speak with a Merck health care professional, the Merck National Service Center should be called at 800-NSCMERCK (business hours of 8:00 am to 7:00 pm ET; For emergency issues, Medical Services after-hours Call Coverage is 24 hours a day/ 7 days a week.)

Remember to always provide a balanced discussion consistent with the health care provider's knowledge of the product and the product prescribing information.
Please continue to provide competitive and promotional feedback to the National Service Center (NSC). The NSC is staffed Monday through Friday, 8:00am to 7:00pm Eastern Time. Please contact the NSC at 1-800-NSC-MERCK or 1-800-672-6372.

> For product and service information, call the Merck National Service Center at 1-800-NSC-Merck (1-800-672-6372).

<u>Do not proactively discuss any of the recent press stories</u>.  Respond to questions by requesting a PIR and in accordance with the obstacle-handling guide.

This information is provided for your background information *only* and is not to be used in discussions with physicians. The following press release was issued in response to an article in Tuesday's New York Times on the cardiovascular effects of VIOXX.

<u>Background Information</u>:

Tuesday May 22, 1:21 pm Eastern Time

Press Release

SOURCE: Merck & Co., Inc.

Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx(R)

UPPER GWYNEDD, Pa., May 22 /PRNewswire/ -- In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of Vioxx® (rofecoxib), its medicine that selectively inhibits COX-2. Vioxx was approved by the Food and Drug Administration in May 1999 for the management of osteoarthritis and the relief of acute pain in adults based on efficacy and safety studies involving nearly 4,000 patients. More than 33 million prescriptions have been written for Vioxx in the United States since its introduction.

The results of the Vioxx Gastrointestinal Research study were first released in March 2000. Since that time, the data have been widely reported, published in The New England Journal of Medicine and discussed extensively by an FDA Advisory Committee.

MRK-AAR0007247

In VIGOR, Vioxx 50 mg, a dose two-times the highest chronic dose approved for osteoarthritis, significantly reduced the risk of serious GI side effects by half compared to a commonly used dose of naproxen (1,000 mg) in rheumatoid arthritis patients. The Advisory Committee recommended that these results be included in the labeling for Vioxx. Vioxx is not indicated for rheumatoid arthritis.

Although the VIGOR study was a GI outcomes study and was not designed to show differences in cardiovascular effects, significantly fewer heart attacks were observed in patients taking naproxen (0.1 percent) compared to the group taking Vioxx 50 mg (0.5 percent) in this study. There was no difference in cardiovascular mortality between the groups treated with Vioxx or naproxen. Patients taking aspirin did not participate in VIGOR.

In extensive discussions, the Advisory Committee explored this finding, other studies of Vioxx and possible explanations for this result in VIGOR. In the completed osteoarthritis trials and on-going clinical trials with Vioxx 12.5 mg, 25 mg and 50 mg in 30,000 patients, there was no difference in the incidence of cardiovascular events, such as heart attacks, among patients taking Vioxx, other NSAIDs and placebo.

At the Advisory Committee meeting, Merck scientists said the VIGOR finding is consistent with naproxen's ability to block platelet aggregation by inhibiting COX-1 like aspirin, which is used to prevent second cardiac events in patients with a history of heart attack, stroke or other cardiac events. This is the first time this effect of naproxen on cardiovascular events has been observed in a clinical study. Other potential explanations were advanced by the FDA reviewer and were discussed with the Advisory Committee. The Committee recommended that the data on cardiovascular events in VIGOR be included in the labeling for Vioxx.

In addition, the Committee agreed that the prescribing information for both Vioxx and Celebrex® (celecoxib) should reflect the fact that neither of these selective NSAIDs confer cardioprotective benefits and are not a substitute for low-dose aspirin. The Committee also recommended that other studies be conducted to further explore the safety of concomitant use of selective NSAIDs and low-dose aspirin.

In a separate GI outcomes study in osteoarthritis and rheumatoid arthritis patients, celecoxib, another agent that selectively inhibits COX-2, was compared to the NSAIDs diclofenac and ibuprofen. Pharmacia, maker of celecoxib, has indicated that there were no differences among celecoxib, ibuprofen and diclofenac on these cardiovascular events. In Pharmacia's background package submitted to the FDA for the Advisory Committee meeting, the incidence of patients taking celecoxib who experienced a heart attack was cited as 0.5 percent, 0.3 percent among diclofenac patients, and 0.5 percent among patients taking ibuprofen.

---

**Focus:**
Remain focused on your efficacy messages for VIOXX. Remember that the primary attribute for physicians and patients is pain relief.

For product and service information, call the Merck National Service Center at 1-800-NSC MERCK (1-800-672-6372).

MRK-AAR0007248

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX PRODUCTS
LIABILITY LITIGATION

This document relates to:

JAMES OLIG,

             Plaintiff,

vs.

MERCK & CO., INC,

             Defendant.    /

MDL No.: 1657
SECTION: L

Civil Action No. 2:06-cv-401

JUDGE FALLON
MAG. JUDGE KNOWLES

### NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiff's Motion for Remand and Plaintiff's Motion

for Extension of Time in Which to Effectuate Service of Process on Defendants will be heard

before the Honorable Eldon E. Fallon, United States District Court, Eastern District of

Louisiana, 500 Poydras Street, New Orleans, LA 70130, on **Wednesday, the 15th day of**

**March, 2006, at 9:00 AM,** or as soon thereafter as counsel may be heard.

Dated this 21st day of February, 2006.

By: _____

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
**AMY D. PREVATT, Esq. (FBN: 13858)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY the foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and by e-mail and has been served upon all parties set forth on the attached Service List by electronically uploading the same to LexisNexis File & Serve on this 21st day of February, 2006.

By: _____

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
**AMY D. PREVATT, Esq. (FBN: 13858)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

## SERVICE LIST

**Wilfred P. Coronato, Esq.**
Hughes, Hubbard & Reed, LLP
101 Hudson Street, Suite 3601
Jersey City, NJ 07302-3918
Tele: (201) 946-5700
Fax: (201) 536-0799
*Email: Coronato@hugheshubbard.com*

**Phillip A. Wittmann, Esquire**
Stone, Pigman, Walther, Wittmann, LLC
546 Carondelet St.
New Orleans, LA 71030
Tele: (504) 581-3200
Fax: (504) 581-3361
*Email: pwittmann@stonepigman.com*
Defendant's Liaison Counsel

**Aretha Delight Davis, Esquire**
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Tele: (215) 994-2423
Fax: (215) 994-2222
*Email: Aretha.davis@dechert.com*

**Susan Giamportone, Esq.**
Womble, Carlyle, Sandridge & Rice
2530 Meridian Parkway, Suite 400
Durham, NC 27713
Tele: (919) 316-4243
Fax: (919) 484-2061
*Email: SGiamportone@wcsr.com*

**Barbara Bolton Litten, Esquire**
**Patricia E. Lowry, Esquire**
**John B.T. Murray, Jr., Esquire**
**Dori K. Stibolt, Esquire**
Squire, Sanders & Dempsey
1900 Phillips Point West
777 S. Flagler Drive
West Palm Beach, FL 33401
Tele: (561) 650-7200
Fax: (561) 655-1509
*Email: blitten@ssd.com*
*Email: plowry@ssd.com*
*Email: jbmurray@ssd.com*
*Email: dstibolt@ssd.com*
Local Counsel for Merck

**Russ Herman, Esquire**
Herman, Herman, Katz & Cotlar, LLP
910 Airport Road, Suite 3A
Destin, FL 32541
Tele: (866) 855-5101
Fax: (850) 837-8178
*Email: VIOXX@hhkc.com*
Plaintiff's Liaison Counsel