UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR -2  AM 10: 12

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | § § § § | MDL No. 1657 |
| This document relates to: OPAL WALLACE, *Individually and on behalf of the estate of* MATILDA HAYTER, JEWEL JORDAN, WOODROW HAYTER, JR. And J.D. HAYTER v. MERCK & CO., INC. (Civil Action No. 2:05-cv-01138) | § § § § § § § § § | Section: L

Judge: The Honorable Eldon E. Fallon |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Opal Wallace, individually and on behalf of the estate of Matilda Hayter, Jewel Jordan, J.D. Hayter and Woodrow Hayter, Jr., Plaintiffs in the above-entitled and numbered cause, and files this Plaintiffs' First Amended Complaint against Merck & Co., Inc.; and for causes of action would show the Court the following:

**1.00   PARTIES:**

   1.01   Plaintiff Opal Wallace is an individual residing in Tyler, Smith County, Texas,

   1.02   Plaintiff Jewel Jordan is an individual residing in Tyler, Smith County, Texas,

   1.03   Plaintiff Woodrow Hayter, Jr. is an individual residing in Tyler, Smith County, Texas,

   1.04   Plaintiff J.D Hayter is an individual residing in Swartz Creek, Genesse County, Michigan,

   1.05   Defendant Merck & Co., Inc. (hereinafter "Merck") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. Merck may be served by serving its registered agent for service, CT Corporation Systems at 350 North St. Paul Street, Dallas, Texas 75201. At all times relevant to these causes of action, Merck had

PLAINTIFF'S FIRST AMENDED COMPLAINT                                                                Page 1 of 11

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

continuing and systematic contacts with the State of Texas by delivering its products into the stream of commerce with the expectation that they would reach and be used in the State of Texas. Merck had minimum contacts with the State of Texas and was doing business in the state by, among other things, designing, manufacturing, promoting, and/or distributing pharmaceuticals, such as that which is involved in this litigation, in the State of Texas. The causes of action set out herein arise from such contacts.

## 2.00   JURISDICTION AND VENUE:

2.01   The amount in controversy, exclusive of interesting costs, exceeds the minimum jurisdictional limits of this Court.

2.02   Jurisdiction is proper in this Court as there is diversity of citizenship between the parties as provided by 28 U.S.C § 1332(a).

2.03   Venue is proper in the Eastern District pursuant to 28 U.S C. § 1391 as the Defendant had an agency or representatives in the Eastern District, and their contacts with the jurisdiction are so pervasive through the sale and distribution of pharmaceuticals; and further, through its participation and profits from the sale of pharmaceuticals in this jurisdiction, that it could reasonably anticipate being held into Court in the Eastern District of Texas.

## 3.00   STATEMENT OF FACTS:

3.01   In 1992, Merck or its predecessor began researching a "block-buster drug" in other words, a drug with tremendous profit potential, which scientists quoted to be a "super aspirin". This "super aspirin" was a class of drug known as a Cox-II selective inhibitor.

3.02   In that same year, however, other U.S. pharmaceutical companies also had versions of "Cox-II selective inhibitors" in development and therefore, in order to avoid potential threat to the tremendous profit potential that Merck saw from this "super aspirin", Merck stepped up its

efforts to develop, patent and market its version of the selective inhibitor of Cox-II.

3.03    In order to be the first to market this drug, Merck took certain critical shortcuts in its clinical trial tests, including but not limited to, removing patients who suffered side effects from its study in order to keep an expressed pattern from developing in its clinical trials.

3.04    Merck's Cox-II selective inhibitor was later named Vioxx®, chemical name rofecoxib, and was approved in the U.S. in October of 1999 after only seven years of development.

3.05    Merck's first worry in the mid to late 1990's, was that its drug would show greater heart risk than cheaper pain killers.

3.06    Indeed, outside studies have shown that Vioxx® greatly increases the risk of heart attacks, stroke and blood clots, and that complete heart failure can occur within 18 months of the first dose.

3.07    Merck, however, concealed critical information regarding serious flaws in its studies until September 30, 2004, when Merck voluntarily recalled Vioxx® and removed it from the market.

3.08    Plaintiff Matilda Hayter first began taking Vioxx® in 2002. On July 29 of 2003, she died of a heart attack caused by the consumption of Vioxx®.

## 4.00    STATUTE OF LIMITATIONS TOLLED AS A RESULT OF MERCK'S FRAUDULENT CONCEALMENT:

4.01    Plaintiffs' did not discover the harmful effects and increased risk caused by the consumption of Vioxx® until September 30, 2004, the day Merck recalled the product.

4.02    Although Merck knew of the dangerous and harmful risk of stroke and heart attack caused by the consumption of Vioxx®, even before the drug was approved in 1999, Merck nevertheless concealed these dangers from Plaintiffs'.

4.03    Merck had a fixed purpose in concealing the dangerous and harmful effects of Vioxx® in that Merck was earning billions of dollars a year in the sale and distribution of this

unreasonably dangerous drug.

4.04    Plaintiffs' reasonably relied upon Merck's representation that, the drug was safe and effective and on Merck's science regarding this known danger.

## 5.00   STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS:

5.01    Plaintiffs' repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.02    The Defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling advertising, warning, and otherwise distributing Vioxx® in interstate commerce, which they sold and distributed throughout the world, including the State of Texas, and to Plaintiffs'.

5.03    Plaintiffs' was using Vioxx® in a manner for which it was intended or in a reasonably foreseeable manner.

5.04    Vioxx® was expected to and did reach Plaintiffs' without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

5.05    Plaintiffs' was not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx®.

5.06    Vioxx® caused increased risks of heart attack and stroke upon consumption, and therefore constituted a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and the Defendants' misrepresentations and inadequate facts disclosed to Plaintiffs'.

5.07    As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                  Page 4 of 11

otherwise distributing Vioxx® in interstate commerce, Plaintiffs' is at an increased risk of developing heart attacks and stroke and Plaintiffs' has suffered compensatory and punitive damages in an amount to be proven at trial.

### NEGLIGENCE:

5.08   Plaintiffs' repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

5.09   It was the duty of the Defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing of Vioxx®.

5.10   Defendants are responsible for one or more of the following negligent acts and/or omissions:

   a.   Failing to adequately and properly test and inspect Vioxx® so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

   b.   Failing to utilize and/or implement a reasonably safe design in the manufacture of Vioxx®;

   c.   Failing to manufacture Vioxx® in a reasonably safe condition for which it was intended;

   d.   Failing to adequately and properly warn Plaintiffs' of the risks of complications from Vioxx® when used in a manner for which it was intended;

   e.   Failing to adequately and properly warn Plaintiffs' of the risks of disease from Vioxx® when used in a manner for which it was intended;

   f    Failing to adequately and properly label Vioxx® so as to warn Plaintiffs' of

    risks of complications;

 g. Failing to adequately and properly label Vioxx® so as to warn Plaintiffs' of the risks of heart attack and stroke;

 h. Manufacturing, selling, distributing, and/or prescribing Vioxx®, a drug which constituted a hazard to health;

 i. Manufacturing, selling, distributing, and/or prescribing Vioxx®, a drug which caused adverse side effects; and

 j. Other negligent acts and/or omissions.

5.11 As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilinzing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx®, Plaintiffs' is at an increased risk of developing heart attacks and stroke and Plaintiffs' has suffered compensatory and punitive damages in an amount to be proven at trial.

## BREACH OF EXPRESS WARRANTY:

5.12 Plaintiffs' repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.13 Defendants expressly warranted to Plaintiffs', by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx® was safe, effective, fit and proper for its intended use.

5.14 In using Vioxx®, Plaintiffs' relied on the skill, judgment, representations and foregoing express warranties of the Defendants. These warranties and representations were false in that Vioxx® was not safe and was unfit for the uses for which it was intended.

5.15    As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs' has or is at an increased risk of developing heart attack and/or stroke and Plaintiffs' has suffered compensatory and punitive damages in an amount to be proven at trial.

5.16    Defendants breached the express warranty of merchantability and the express warranty that its product would be fit for a particular purpose, as set forth in Tex Bus. & Comm. Code § 2.314 and § 2.315. These warranties were breached by Defendants' failure to adequately design, manufacture and market its product and/or warn of dangers Defendants knew or should have known about associated with a defective product. The above described acts and/or omissions were singularly and/or cumulatively approximate and/or producing cause of the occurrence in question and the resulting injuries and damages sustained by the Plaintiffs'.

## BREACH OF IMPLIED WARRANTY:

5.17    Plaintiffs' repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.18    Prior to the time that Vioxx® was used by Plaintiffs', Defendants impliedly warranted to Plaintiffs' that Vioxx® was of merchantable quality and safe and fit for the use for which it was intended.

5.19    Plaintiffs' was and is unskilled in the research, design and manufacture of Vioxx® and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using Vioxx®.

5.20    Vioxx® was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

5.21    As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs'

has or is at an increased risk of developing heart attack and stroke and Plaintiffs' has suffered compensatory and punitive damages in an amount to be proven at trial.

5.22    Defendants breached the implied warranty of merchantability and the implied warranty that its product would be fit for a particular purpose, as set forth in Tex Bus & Comm Code §2.314 and §2.3 15. These warranties were breached by Defendants' failure to adequately design, manufacture and market its product and/or warn of dangers Defendants knew or should have known about associated with a defective product. The above described acts and/or omissions were singularly and/or cumulatively approximate and/or producing cause of the occurrence in question and the resulting injuries and damages sustained by the Plaintiffs'.

## GROSS NEGLIGENCE:

5.23    The negligent acts and/or omissions of the Defendants as set forth above constitute an entire want of care so as to indicate that the acts and/or omissions in question were the result of conscious indifference to the rights, safety and welfare of others, including Plaintiffs', or that they constitute malice, as that term is defined by law, so as to give rise to an award of exemplary damages. The negligent acts and/or omissions of the Defendants, when viewed objectively from the standpoint of the Defendants at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to other's; and of which the Defendants had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

6.00    **DAMAGES**

6.01    As a proximate cause of the above described acts and/or omissions on the part of Defendants, by and through their vice principals, agents, employees and/or representatives, Plaintiffs' has sustained damages and harm Plaintiffs' seeks all damages to which they are entitled at

law for personal, emotional, economic, and physical injuries sustained in the past as well as those damages they will continue to sustain in the future as a result of the occurrence in question.

6.02   Plaintiffs' has suffered personal injuries and is entitled to damages as a result of the conduct of the Defendants including, but not limited to:

a..   medical, hospital, and pharmaceutical expenses, past and future;

b.   loss of earning capacity, past and future;

c.   physical pain and suffering, past and future;

d.   mental anguish, past and future;

e.   disfigurement, past and future; and

f.   physical impairment, past and future.

6.03   Plaintiffs' seeks all damages to which they are entitled at law and/or equity for the physical, emotional and/or economic damages which they have sustained since the incident, and the losses, which in reasonable probability, they will sustain in the future Plaintiffs' also seeks punitive damages in an amount to be determined by the jury.

## 7.00   PRAYER:

Plaintiffs' respectfully prays that the Defendants be cited to appear and answer herein, and that upon final hearing hereof, Plaintiffs' receives a judgment from Defendant for:

7.01   damages as plead, including but not limited to compensatory, actual, consequential, direct and/or punitive damages;

7 02   costs of court, attorneys' fees and expenses necessary for the preparation of this case to trial;

7.03   pre-judgment interest at the highest lawful rate and to the maximum extent allowed by law;

7.04 interest on the judgment at the highest legal rate from the date the judgment is entered; and

7.05 all further relief, at law and/or equity to which the Plaintiffs' may show themselves justly entitled.

Respectfully submitted,

*(signed)* D. Allen Hossley w/permission *(signed)* Jack Stotth
State Bar No. 00792591                      State Bar No. 24034695
Jeffery T. Embry
State Bar No. 24002052
Hossley ✯ Embry, L.L.P.
313 East Charnwood St.
Tyler, TX 75701
Telephone No. 903-526-1772
Fax No. 903-526-1773
www.hossleyembry.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Plaintiffs' First Amended Complaint* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 25th day of January, 2006.

*(signed)* Jeffrey T. Embry w/permission *(signed)* Jack Stotth
                                        State Bar No. 24034695