FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

# UNITED STATES DISTRICT COURT 2006 MAR 10 AM 11: 13

## EASTERN DISTRICT OF LOUISIANA LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-6134 | * | |
| | * | MAGISTRATE KNOWLES |
| **VIRGINIA A. HENDERSHOT and** | * | |
| **MICHAEL S. HENDERSHOT, spouse** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| **JOHN DOE ONE, JOHN DOE TWO,** | * | |
| **JAMES H. HEAPHY, M.D., VIRGINIA** | * | |
| **MORRIS, ARNP, and CAPITAL FAMILY** | * | |
| **PHYSICIANS, P.S.C.** | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION OF DEFENDANT MERCK & CO., INC. TO VACATE REMAND ORDER

Pursuant to Rule 60(b), Federal Rules of Civil Procedure, defendant Merck & Co.,

Inc. ("Merck") respectfully moves this Court to vacate the remand order entered by the transferor

court on December 22, 2005.  Merck respectfully suggests the transferor court, the Eastern

District of Kentucky, was divested of jurisdiction in this matter as of November 25, 2005, the

date the conditional transfer order issued in this matter by the Judicial Panel on Multidistrict

Fee _____
Process _____
X Dktd _____
V CtRmDep _____
Doc. No. _____

Litigation became final.   Therefore, the remand order entered by the transferor court on December 22, 2005, is void and should be vacated.

In support of its motion, Merck relies on its memorandum, filed this same date.

Date:   March 10, 2006

Respectfully submitted,

*Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

3

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion of Defendant Merck & Co., Inc. to Vacate Remand Order has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 10th day of March, 2006.

*Dorothy H. Wimberly*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-6134 | * | |
| | * | MAGISTRATE KNOWLES |
| VIRGINIA A. HENDERSHOT and | * | |
| MICHAEL S. HENDERSHOT, spouse | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| JOHN DOE ONE, JOHN DOE TWO, | * | |
| JAMES H. HEAPHY, M.D., VIRGINIA | * | |
| MORRIS, ARNP, and CAPITAL FAMILY | * | |
| PHYSICIANS, P.S.C. | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF DEFENDANT MERCK & CO., INC.
## IN SUPPORT OF MOTION TO VACATE REMAND ORDER

### INTRODUCTION

Pursuant to Rule 60(b), Federal Rules of Civil Procedure, defendant Merck & Co.,

Inc. ("Merck") respectfully moves this Court to vacate the remand order entered by the transferor

court on December 22, 2005.  Merck respectfully suggests that the transferor court, the Eastern

District of Kentucky, was divested of jurisdiction over *Hendershot, et al. v. Merck & Co., Inc., et*

*al.* as of November 25, 2005, the date on which the conditional transfer order issued by the

Judicial Panel on Multidistrict Litigation ("the MDL Panel") became final.   Therefore, the

remand order entered by the transferor court on December 22, 2005 is void and should be

vacated.

### PROCEDURAL BACKGROUND

Plaintiffs filed suit on or about September 29, 2005 in the Franklin Circuit Court,

State of Kentucky.   On October 19, 2005, Merck removed *Hendershot* to the Eastern District of

Kentucky, based on diversity jurisdiction under 28 U.S.C. § 1332 (Attached hereto as Exh. A is

the removal notice).   That same day, Merck filed an Answer and a motion to stay the litigation

pending transfer to the MDL proceedings established in this Court (Attached hereto as Exh. B is

the motion to stay).   On October 21, 2005, the Clerk of the United States District Court for the

Eastern District of Kentucky notified the clerk of the MDL Panel of this action, enclosing a

certified copy of the Complaint and an attested copy of the docket (Attached hereto as Exh. C is

the notification).   Pursuant to JPML Rule 7.5(e), Merck also filed a written notice with the MDL

Panel notifying it of the "tag along" status of this action pursuant to JPML Rule 7.5(e) (Attached

hereto as Exh. D is the notice).   On November 7, 2005, the MDL filed conditional transfer order

30 ("CTO 30"), transferring this and certain other actions to this Court.   *See* Rec. doc. 1711.

Because plaintiff did not oppose transfer within 15 days, the order became final and divested the

transferor court of jurisdiction when it was filed in this Court on November 25, 2005.   *See* Rec.

doc. 1711; JPML Rule 7.4(a), (e).

Meanwhile, plaintiffs had filed a motion in the transferor court seeking to remand

this matter to the state court (Attached hereto as Exh. E is the motion).   On December 22, 2005,

almost one month after the transfer had already become final, the transferor court entered an

order remanding the action to the state court (Attached hereto as Exh. F is the remand order). .

On February 10, 2006, Merck filed a Motion to Vacate Remand Order and a supporting memorandum in the transferor court, asking that court to vacate its December 22nd remand order on the grounds that it had no jurisdiction to rule on plaintiffs' remand motion because transfer to this Court had become effective on November 25th (Attached hereto as Exh. G is the motion). On March 2, 2006, the transferor court denied the motion, finding that it had no jurisdiction to revisit it (Attached hereto as Exh. H is the court's order). The transferor court's denial was expressly "**WITHOUT PREJUDICE** to Merck's ability to seek relief in the MDL court." Exh. H at pp. 3-4.[1]

**ARGUMENT**

I.     **THE TRANSFEROR COURT LACKED JURISDICTION TO RULE ON THE MOTION TO REMAND.**

The transfer of this action from the transferor court to this Court was effective on November 25, 2005, when the transfer order was filed in this Court. *See* JPML Rule 1.5 ("A transfer...shall be effective when the transfer...order is filed in the office of the clerk of the district court of the transferee district."); Rule 1.5 commentary ("Transfer of jurisdiction occurs when the Panel's order of transfer is filed in the transferee court."). Once transfer becomes effective, the jurisdiction of the transferor court ceases, and the transferee court is vested with exclusive jurisdiction. *See, e.g., In re Plumbing Fixture Cases,* 298 F. Supp. 484 (JPML 1968); *see also In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.,* 664 F.2d 114, 118 (6th Cir.

---

[1]     The transferor court suggested that "if the MDL court determines it has jurisdiction over this matter, surely it will be able to find that it can stay the state-court litigation 'in aid of its jurisdiction' pursuant to 28 U.S.C. § 2283." See Exh. H at p. 3. Such a step may not be necessary, however. If the Court vacates the remand order, Merck would first notify the state court of this Court's order vacating the remand and request that the case be closed accordingly.

1982).  Thus, once the conditional transfer order in this case became final on November 25, 2005, jurisdiction over all pretrial proceedings vested exclusively in this Court, and the transferor court had no jurisdiction to rule on the motion to remand.[2]

## II.    THE REMAND ORDER IS NULL AND VOID AND MUST BE VACATED.

Fed. R. Civ. P. 60(b) provides in pertinent part that "[o]n motion and upon such terms as are just, the court may relieve a party...from a final judgment, order, or proceeding for the following reasons: ...(4) the judgment is void."  "Notwithstanding the use of the word 'may,' which indicates that the Court reserves discretion, '[a] void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside.'"  *Medical Distribution, Inc. v. Quest Healthcare, Inc., et al.,* 2002 U.S. Dist. LEXIS 1692, *3 (D.C. Ky. 2002) (attached as Exh. J), quoting *Jordan v. Gilligan,* 500 F.2d 701, 704 (6th Cir. 1974), *cert. denied,* 421 U.S. 991 (1975).  *See also* CHARLES ALAN WRIGHT ET AL., 11 FEDERAL PRACTICE AND PROCEDURE § 2862 (2nd ed. 1995).

Because the Eastern District of Kentucky lacked jurisdiction to rule on the remand motion, its order granting remand is void.  *See In re Prudential Insurance Company Of America*

---

[2]    Plaintiffs' counsel in this action also filed an identical complaint on behalf of another plaintiff in Kentucky state court, and Merck removed the action to the Eastern District of Kentucky.  *See Roger Allen, et al. v. Merck et al.,* no. 05-422 on the docket of that court.  *Allen,* like *Hendershot,* was subject to CTO 30.  Rec. Doc. 1711.  As in *Hendershot,* the Panel did not receive papers in opposition to the transfer of Allen within the 15-day window, and the CTO became final as to *Allen* on November 25, 2005.  *Id.*  On November 14, 2005, the *Allen* plaintiffs filed a motion to remand, but the federal district judge declined to rule on the motion to remand, recognizing that the Court had no jurisdiction after November 25, 2005.  *See Order* filed January 13, 2006, in *Brady et al. v. Merck et al.* 05-423); *Smith v. Merck et al.* 05-433); *Clarence Parido et al. v. Merck et al.* (05-434), and *Patricia Swanagin et al. v. Merck et al.* (05-449), p. 2, at n. 1 (Attached as Exh. I).  The *Allen* case is now before this Court.  *See* Rec. doc. 1711.

*Sales Practices Litig.*, 177 F.R.D. 216 (D.N.J. 1997) ("Judge Campos's Remand Order, filed August 19, 1997, is a nullity . . . because Judge Campos no longer had jurisdiction over the Ortegas' case as of August 18, 1997, the filing date of the MDL Panel's order to the transferee district."); *In re: G.A.D., Inc. v. Loyer*, 340 F.3d 331, 335-336 (6th Cir. 2003) (if the rendering court lacked subject matter jurisdiction, the underlying judgment is void); *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 516 (6th Cir. 2001) (for purposes of Rule 60(b)(4), a judgment is void if a court entered an order outside its legal powers). Thus, the transferor court's remand order must be vacated. *Medical Distribution v. Quest*, 2002 U.S. Dist. LEXIS 1692; *Jordan v. Gilligan*, 500 F.2d at 704; Fed. R. Civ. P. 60(b).

### CONCLUSION

For the foregoing reasons, Merck respectfully requests that this Court grant its motion to vacate the December 22, 2005 order granting plaintiffs' motion to remand.

Date:   March 10, 2006

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion to Vacate Remand Order has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 10th day of March, 2006.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

Eastern District of Kentucky
**FILED**

OCT 1 9 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

VIRGINIA A. HENDERSHOT, and
MICHAEL S. HENDERSHOT, spouse

**PLAINTIFFS**

v.

Civil Action No. 05 -70 KKC

MERCK & CO., INC.,
JOHN DOE ONE, JOHN DOE TWO,
JAMES H. HEAPHY, M.D., VIRGINIA MORRIS, ARNP,
and CAPITAL FAMILY PHYSICIANS, P.S.C.

**DEFENDANTS**

## NOTICE OF REMOVAL OF DEFENDANT MERCK & CO., INC.

Defendant Merck & Co., Inc. ("Merck"), by its undersigned counsel, hereby removes the above-captioned action from the Franklin Circuit Court, Franklin County, Kentucky, to the United States District Court for the Eastern District of Kentucky, Frankfort Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and respectfully files this Notice of Removal and states:

1.      On or about September 29, 2005, plaintiffs Virginia A. Hendershot and Michael S. Hendershot commenced this action against Merck, two fictitious "John Doe" defendants, James H. Heaphy, M.D. ("Dr. Heaphy"), Virginia Morris, ARNP ("ARNP Morris") and Capital Family Physicians, P.S.C. ("Capital Family Physicians") by filing a Complaint in the Franklin Circuit Court, bearing the Civil Action No. 05-CI-1360.

2.      This action involves allegations regarding the prescription drug VIOXX®, manufactured and marketed by Merck until the voluntary worldwide withdrawal of the medication from the market on September 30, 2004. The Judicial Panel on Multidistrict Litigation ("MDL Panel") has established an MDL proceeding in the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings of VIOXX®

1



EXHIBIT

A

product liability cases. *See In re VIOXX Prods. Liab. Litig.*, 360 F.Supp. 2d 1352 (J.P.M.L. 2005). Merck intends to seek the transfer of this action to that proceeding, captioned *In re VIOXX Products Liability Litigation*, MDL No. 1657, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

3.    As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(a).

## I.    <u>MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.</u>

4.    Merck was served with a copy of the plaintiff's Complaint on September 30, 2005. This Notice of Removal is being filed within 30 days of the first date on which Merck received a copy of the Complaint through service or otherwise. Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

5.    The Franklin Circuit Court is located within the Eastern District of Kentucky, Frankfort Division, and therefore venue is proper in this Court pursuant to 28 U.S.C. § 115(a)(2) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

6.    Merck need not obtain the consent of the fictitious "John Doe" defendants because their citizenship must be disregarded for purposes of determining removal and diversity jurisdiction. *See* 28 U.S.C. § 1441(a)("For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded"); *Alexander v. Elec. Data Syst. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994)(citizenship of "Jane Doe" defendant is "disregarded for purposes of diversity jurisdiction"); *See generally Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.

2

1993)("application of this requirement [of consent] to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists").

7.      Merck need not obtain the consent of defendants Dr. Heaphy, Virginia, ARNP Morris and Capital Family Physicians because, as set out more fully below, they have been fraudulently joined in this action in an attempt to defeat removal. *See Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 617 n. 4 (E.D. Mich. 1999) (citing *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995)); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983).

8.      No further proceedings have been had in the state court action.

9.      No previous application has been made for the relief requested herein.

10.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Merck, which papers include the summonses and complaint, is attached as Exhibit A.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiffs, and a copy is being filed with the Clerk of the Franklin Circuit Court.

II.     **REMOVAL IS PROPER IN THIS CASE.**

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and in which the amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.

A.      **Complete Diversity Of Citizenship.**

12.     There is complete diversity as between plaintiffs and Merck.

13.     The plaintiffs are residents, and upon information and belief, citizens, of the Commonwealth of Kentucky. (Compl. ¶ 1).

3

14.     Merck is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey, and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

15.     The citizenship of the fictitious "John Doe" defendants must be disregarded for purposes of removal.  *See* 28 U.S.C. § 1441(a); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994).

16.     Plaintiffs allege that defendant Dr. Heaphy is a resident of Kentucky. (Compl. ¶ 4).  Assuming Dr. Heaphy is a citizen of Kentucky, his presence does not defeat diversity jurisdiction because he was fraudulently joined to this action.  *See, e.g., Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) ("A fraudulent joinder of a non-diverse defendant will not defeat removal of a case to federal court.").

17.     Plaintiffs allege that defendant ARNP Morris is a resident of Kentucky. (Compl. ¶ 5).  Assuming ARNP Morris is a citizen of Kentucky, her presence does not defeat diversity jurisdiction because she was fraudulently joined to this action.  *See, e.g., Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) ("A fraudulent joinder of a non-diverse defendant will not defeat removal of a case to federal court.").

18.     Plaintiffs allege that defendant Capital Family Physicians is a Kentucky corporation with its principal place of business in Kentucky (Compl. ¶ 6).  According to the Kentucky Secretary of State, Capital Family Physicians is a Kentucky professional services corporation.  *See* Kentucky Secretary of State records attached as Exhibit B.  Assuming that Capital Family Physicians is a citizen of Kentucky for purposes of determining diversity, 28 U.S.C. §  1332(c)(1), its presence in this lawsuit does not defeat diversity jurisdiction because it

4

was fraudulently joined to this action. *See e.g., Coyne,* 183 F.3d at 493 ("A fraudulent joinder of a non-diverse defendant will not defeat removal of a case to federal court.").

19.     Pursuant to the fraudulent joinder doctrine, a court should disregard the citizenship of in-state defendants where, as here, the plaintiffs cannot establish a cause of action against non-diverse defendants under state law. *See, e.g., Salisbury v. Purdue Pharma L.P. et al.,* 166 F.Supp.2d 546, 548 (E.D. Ky. 2001); *Cofer v. Horsehead Research & Dev. Co.,* 805 F. Supp. 541, 544 (E.D. Tenn. 1991).   Importantly, the removing party is not required to show there is absolutely no basis for recovery.   Rather, the inquiry is based on a reasonableness standard. *Alexander,* 13 F.3d at 949.   In order to meet this burden, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne,* 183 F.3d   at   493; *see also Salisbury,* 166 F.Supp. 2d at 549;   *Hardy v. Ajax Magnathermic Corp.,* 122 F.Supp.2d 757, 759-60 (W.D. Ky. 2000); and   *Alexander,* 13 F. 3d at 949.

20.     Here, there is no reasonable basis to predict that the plaintiffs will prevail on their claim of   negligence against the physician and nurse practitioner who allegedly prescribed VIOXX® to the plaintiff, Virginia A. Hendershot and against the employer of those health care providers.  According to the plaintiffs, Dr. Heaphy and ARNP Morris were negligent in prescribing VIOXX® for plaintiff Virginia A. Hendershot, and defendant Capital Family Physicians is liable for the alleged negligence of Dr. Heaphy and ARNP Morris, allegedly its employees or agents.  (Compl. ¶¶ 166, 168, 176, 178).  The plaintiffs also claim that the health care providers failed to consider the risks of taking VIOXX® and failed to inform plaintiff Virginia A. Hendershot of adverse events associated with taking VIOXX®.  (Compl.  ¶¶ 166, 176).

5

21.     As a threshold matter, Virginia A. Hendershot's  health care providers' alleged decision to prescribe VIOXX® could only have been negligent or violated a "duty of care" if they knew or should have known of the alleged hazards from VIOXX®. *See, e.g., Grubbs v. Barbourville Family Health Ctr., P.S.C.*, Ky., 120 S.W.3d 682, 687 (2003); *Mullins v. Commonwealth Life Ins. Co.*, Ky., 839 S.W.2d 245, 247 (1992). However, plaintiffs' factual allegations in the Complaint defeat any such conclusion.  The essence of plaintiffs'  litany of allegations is that Merck concealed and misrepresented information about the purported dangers of VIOXX® from the healthcare industry and patients.  For example, plaintiff allege that Merck failed to conduct adequate studies to establish the safety of VIOXX® and "never disclosed on its warning labels that such testing had not been performed, thereby fraudulently inducing physicians and patients alike to use Vioxx under the false assumption that it had been sufficiently tested" (Compl. ¶¶ 66, 65); that Merck  "misrepresented material facts regarding the safety and efficacy of Vioxx and failed to inform and did conceal these material facts from Virginia A. Hendershot, physicians and the general public" (Compl. ¶ 98); that Merck's alleged "continuous and ongoing course of action constituting fraud and misrepresentation on Virginia A. Hendershot, physicians, and the general public started as early as 1999" (Compl. ¶ 100); and that Merck "misrepresented the efficacy and safety of Vioxx ® to Plaintiffs through its advertising, promotion and sales efforts, as directed to Plaintiffs, the local community, prescribing physicians, and the FDA" (Compl. ¶ 128).

22.     Faced with nearly identical allegations, a federal court in Mississippi found that a doctor had been fraudulently joined in  a VIOXX® case. *See Omobude v. Merck & Co.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (attached hereto as Exhibit C) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the

charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx").

23.     Other courts faced with pharmaceutical cases have also denied remand in similar circumstances, finding that plaintiffs cannot simultaneously allege concealment by the manufacturer and negligence by the healthcare professionals who prescribed or distributed the drug at issue. *See, e.g., Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit D) (finding doctors fraudulently joined and denying remand where plaintiffs had alleged misrepresentation against a drug manufacturer that "negate[d] any possible liability of the physicians"); *In re Rezulin Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 28, MDL No. 1348, Case No. 02-Civ. 3583 (S.D.N.Y. Jan. 6, 2003) (Exhibit E) (finding fraudulent joinder where failure to warn claims against a physician were premised on knowledge allegedly withheld); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843, 2002 U.S. Dist. LEXIS 24436, *2 (S.D.N.Y. Dec. 18, 2002) (Exhibit F) (non-diverse physician defendant fraudulently joined where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"); *In re Diet Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (same); *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:000 CV 102 LN, slip op. at 2 (S.D Miss. Sept. 25, 2000) (Exhibit G) (insufficient individual factual allegations where allegation of in-state defendant's knowledge were contradicted by general allegations that the pharmaceutical manufacturer concealed or misrepresented information).

24.     The Complaint, on its face, demonstrates that the plaintiffs' claims against the health care providers relates to their alleged negligence in prescribing VIOXX®. To the

extent, however, that the plaintiffs contend that any of their claims are independent and unrelated to their claims against Merck, those claims could not properly be joined in the same suit because they do not both involve common questions or law or fact and do not assert joint, several, or alternative liability arising from the same transaction, occurrence, or series of transactions or occurrences. *See In re Rezulin Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 9173 at *2-3, MDL 1348, 00 Civ. 2843 (S.D.N.Y. June 2, 2003) (attached as Exhibit H) and Fed. R.Civ. P. 20. Claims that are misjoined must be ignored for purposes of determining removal jurisdiction. *See Rezulin*, 2003 U.S. Dist. LEXIS 9173 at *2-3.

### B.       The Amount In Controversy Requirement Is Satisfied.

25.       Plaintiffs' allegations clearly meet the amount-in-controversy threshold. The plaintiffs allege that Virginia A. Hendershot suffered recurrent chest pain syndrome resulting in a heart attack, and that her use of VIOXX® was a substantial factor in causing those events. (Compl. ¶ 1). Virginia A. Hendershot alleges that she has sustained and will sustain pain and suffering, including physical, emotional, and mental pain, as well as the loss of enjoyment of life; has and will incur medical expenses, including hospitalizations, nursing care, and other treatments; and has and will suffer loss of earnings and permanent impairment of her power to labor and earn money (Compl. ¶¶ 181-83), as a result of taking  VIOXX®.  In addition, the plaintiffs seek unlimited compensatory damages, attorneys' fees and costs, pre- and post-judgment interest, punitive damages, and such other relief as is "just and proper."  (Compl. ¶¶ 181 – 189; prayer for relief at A, B, C, E.)

26.       Where liability is demonstrated, Kentucky juries in product liability cases routinely render verdicts in excess of $75,000 exclusive of interest and costs. *See, e.g., Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir. [Ky.] 1998).  Further, where liability is

shown, Kentucky appellate courts have consistently upheld verdicts in excess of $75,000 in such cases. *See id.*; *Sufix, U.S.A., Inc. v. Cook*, 128 S.W.3d 838 (Ky. App. 2004).

27.    Moreover, federal courts around the country have ruled that the amount-in-controversy threshold was met in similar actions alleging personal injuries caused by VIOXX®. *See, e.g., Morgan v. Merck & Co., Inc.*, No. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co., Inc.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co., Inc.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co., Inc.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186, slip op. at 2 (D. Haw. June 5, 2002). (Slip opinions attached collectively, as Exhibit I.) These courts were all presented with complaints seeking actual damages for injuries caused by VIOXX®, and all found, either explicitly or implicitly, that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

28.    If any question arises as to the propriety of the removal of this action, Merck respectfully requests the opportunity to brief any disputed issues and to present oral argument in support of its position that this case is properly removable.

WHEREFORE, defendant Merck respectfully removes this action from the Franklin Circuit Court of Kentucky, bearing Civil Action No. 05-CI-1360, to this Court pursuant to 28 U.S.C. §1441.

Dated this 19ᵗʰ day of October, 2005.

Respectfully submitted,

**FROST BROWN TODD LLC**

By: _____

Susan J. Pope
John A. Combs
250 West Main Street, Suite 2700
Lexington, Kentucky 40507-1749
(859) 231-0000 Telephone
(859) 231-0011 Facsimile

-and-

Winston E. Miller
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
(502) 589-5400 Telephone
(502) 581-1087 Facsimile

*Counsel for Defendant Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed, first-class mail, postage pre-paid, to the following on this the __19th__ day of October, 2005.

Gregory J. Bubalo
D. Brian Rattliff
Bubalo & Hiestand, PLC
401 South Fourth St., Suite 800
Louisville, Kentucky 40202


Ann B. Oldfather
Oldfather & Morris
1330 South Third Street
Louisville, Kentucky 40208

Tyler Thompson
Dolt, Thompson, Shepherd & Kinney
455 South Fourth St., Suite 310
Louisville, Kentucky 40202

*Counsel for the Plaintiffs*

Melanie Marrs
Lynn, Fulkerson, Nichols & Kinkel
267 West Short Street
Lexington, Kentucky 40507

_____
*Counsel for Defendant Merck & Co., Inc.*

Lexlibrary 0106603.0528727 277229v.1

11

Eastern District of Kentucky
**FILED**

OCT 1 9 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

VIRGINIA A. HENDERSHOT, and
MICHAEL S. HENDERSHOT, spouse

**PLAINTIFFS**

v.                                                          Civil Action No. 05-10-KKe

MERCK & CO., INC.,
JOHN DOE ONE, JOHN DOE TWO,
JAMES H. HEAPHY, M.D., VIRGINIA MORRIS, ARNP,
and CAPITAL FAMILY PHYSICIANS, P.S.C.                       **DEFENDANTS**

**MERCK'S MOTION TO STAY PROCEEDINGS
PENDING TRANSFER DECISION BY THE JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

Defendant Merck & Co., Inc. ("Merck") respectfully requests this Court to stay

proceedings in this action pending a decision by the Judicial Panel on Multidistrict Litigation for

transfer of this case and numerous other cases with overlapping factual and legal issues to a

single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407.

In support of its motion, Merck relies on its memorandum, filed this same date.

An Order granting the relief requested is tendered herewith.

Respectfully submitted,

**FROST BROWN TODD LLC**

By: _____
Susan J. Pope
John A. Combs
250 West Main Street, Suite 2700
Lexington, Kentucky 40507-1749
(859) 231-0000 Telephone
(859) 231-0011 Facsimile

**EXHIBIT**

B

-and-

Winston E. Miller
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
(502) 589-5400 Telephone
(502) 581-1087 Facsimile

*Counsel for Defendant Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed, first-class mail, postage pre-paid, to the following on this the 19th day of October, 2005.

Gregory J. Bubalo
D. Brian Rattliff
Bubalo & Hiestand, PLC
401 South Fourth St., Suite 800
Louisville, Kentucky 40202

Ann B. Oldfather
Oldfather & Morris
1330 South Third Street
Louisville, Kentucky 40208

Tyler Thompson
Dolt, Thompson, Shepherd & Kinney
455 South Fourth St., Suite 310
Louisville, Kentucky 40202

*Counsel for the Plaintiff*

Melanie Marrs
Lynn, Fulkerson, Nichols & Kinkel
267 West Short Street
Lexington, Kentucky 40507

_____
*Counsel for Defendant Merck & Co., Inc.*

# United States District Court
### Eastern District of Kentucky
## Office of the Clerk

Leslie G. Whitmer
Clerk of Court

Mark F. Armstrong
Chief Deputy Clerk



313 Watts Federal Bldg
330 West Broadway
Frankfort, KY
40601-1993

502-223-5225

October 21, 2005

Mr. Michael J. Beck
MDL Panel
Room G-255, North Lobby
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE
Washington, DC 20002-8004

RE: MDL Litigation - MDL 1657 Vioxx Cases
      USDC, EDKY - Frankfort 05-cv-70

Dear Mr. Beck:

Enclosed herewith, please find a certified copy of the Complaint and an attested copy of
the docket in the above-referenced matter, wherein plaintiff is alleging injury from use
Vioxx. If you need additional information, please advise.

Sincerely,

LESLIE G. WHITMER

By_____
      Deputy Clerk

Enclosures
cc: S. Vroljik



EXHIBIT

C

# Hughes Hubbard & Reed LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726

October 25, 2005

VIA FEDERAL EXPRESS

Michael J. Beck, Esq.
Catherine Maida
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E. Room G-255, North Lobby
Washington, D.C. 20002-8004

Re:     In re: VIOXX® Products Liability Litigation, MDL
        Docket No. 1657

Dear Sir and Madam:

Pursuant to J.P.M.L. Rule 7.5(e), Merck hereby notifies the Panel of potential "tag-along actions." This letter is Merck's seventy-fourth notification of potential "tag-along actions" and includes cases that have recently been filed in or removed to federal court. Courtesy copies of the complaints and docket sheets for these cases are enclosed.

1. *May v. Merck & Co., Inc. et al.*, C.A. No. 3:05-cv-00998 (M.D. Ala.)
2. *First Insurance Company of Hawaii, Ltd., v. Merck & Co., Inc. et al.*, C.A. No. 05-CV-668 (D. Haw.)
3. *Allen et al., v. Merck & Co., Inc. et al.*, C.A. No. 5:05-cv-00422 (E.D. Ky.)
4. *Blankenship v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00324 (E.D. Ky.)
5. *Brady et al., v. Merck & Co., Inc. et al.*, C.A. No. 5:05-cv-00423 (E.D. Ky.)
6. *Butcher v. Merck & Co., Inc. et al.*, C.A. No. 6:05-cv-00570 (E.D. Ky.)
7. *Cordle et al., v. Merck & Co., Inc. et al.*, C.A. No. 0:05-cv-00191 (E.D. Ky.)
8. *Engle v. Merck & Co., Inc. et al.*, C.A. No. 6:05-cv-00565 (E.D. Ky.)
9. *Estep et al., v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00325 (E.D. Ky.)
10. *Gill v. Merck & Co., Inc.*, C.A. No. 5:05-cv-00424 (E.D. Ky.)
11. *Gillman et al., v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00327 (E.D. Ky.)
12. *Gulley v. Merck & Co., Inc.*, C.A. No. 0:05-cv-00189 (E.D. Ky.)
13. *Happy v. Merck & Co., Inc.*, C.A. No. 5:05-cv-00431 (E.D. Ky.)
14. *Harney v. Merck & Co., Inc.*, C.A. No. 5:05-cv-00439 (E.D. Ky.)
15. *Hendershot v. Merck & Co., Inc. et al.*, C.A. No. 3:05-cv-00070 (E.D. Ky.)
16. *Howell et al., v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00330 (E.D. Ky.)



EXHIBIT

D

47. Avenue Georges Mandel     1775 I Street, N.W.     350 South Grand Avenue     201 South Biscayne Boulevard     Akasaka Tokyu Building 6F     101 Hudson Street
75116 Paris, France     Washington, D.C.     Los Angeles, California     Miami, Florida     1-14-3 Nagata-cho, Chiyoda-ku     Jersey City, New Jersey
(33) (1) 44.05.80.00     10006-2401     90071-3442     33131-4332     Tokyo 100-0014 Japan     07302-3918
                        202-721-4600     213-613-2800     305-358-1666     (81) (3) 3539-2771     201-536-9220

# Hughes Hubbard & Reed LLP

17.  *Hubbard v. Merck & Co., Inc.*, C.A. No. 5:05-cv-00430 (E.D. Ky.)
18.  *Johnson v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00328 (E.D. Ky.)
19.  *Jones et al., v. Merck & Co., Inc. et al.*, C.A. No. 5:05-cv-00425 (E.D. Ky.)
20.  *Jones v. Merck & Co., Inc.*, C.A. No. 5:05-cv-00438 (E.D. Ky.)
21.  *Kimbler et al., v. Merck & Co., Inc.*, C.A. No. 7:05-cv-00334 (E.D. Ky.)
22.  *Lowe v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00323 (E.D. Ky.)
23.  *Moore v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00329 (E.D. Ky.)
24.  *Nolan v. Merck & Co., Inc.*, C.A. No. 6:05-cv-00560 (E.D. Ky.)
25.  *Risner v. Merck & Co., Inc.*, C.A. No. 6:05-cv-00564 (E.D. Ky.)
26.  *Smith v. Merck & Co., Inc. et al.*, C.A. No. 7:05-cv-00326 (E.D. Ky.)
27.  *Suttles v. Merck & Co., Inc.*, C.A. No. 0:05-cv-00188 (E.D. Ky.)
28.  *Hill v. Merck & Co., Inc.*, C.A. No. 3:05-cv-01607 (W.D. La.)
29.  *Miller v. Merck & Co., Inc.*, C.A. No. 0:05-cv-02446 (D. Minn.)
30.  *Pacha v. Merck & Co., Inc.*, C.A. No. 0:05-cv-02441 (D. Minn.)
31.  *Watson et al., v. Lecorps, M.D. et al.*, C.A. No. 1:05-cv-00191 (E.D. Mo.)
32.  *Amend v. Merck & Co., Inc.*, C.A. No. 4:05-cv-01004 (W.D. Mo.)
33.  *Bosch v. Merck & Co., Inc.*, C.A. No. 4:05-cv-01002 (W.D. Mo.)
34.  *Smith et al., v. Merck & Co., Inc.*, C.A. No. 4:05-cv-01003 (W.D. Mo.)
35.  *Payne et al., v. Lewis et al.*, C.A. No. 3:05-cv-00829 (M.D. Tenn.)
36.  *Reed et al., v. Merck & Co., Inc.*, C.A. No. 3:05-cv-00828 (M.D. Tenn.)

There are six new cases filed in the transferee court.

1.  *Casey v. Merck & Co., Inc.*, C.A. No. 2:05-cv-04079 (E.D. La.)
2.  *Dansereau et al., v. Merck & Co., Inc.*, C.A. No. 2:05-cv-04411 (E.D. La.)
3.  *Green v. Merck & Co., Inc.*, C.A. No. 2:05-cv-04103 (E.D. La.)
4.  *Houston v. Merck & Co., Inc.*, C.A. No. 2:05-cv-04100 (E.D. La.)
5.  *Lueck v. Merck & Co., Inc.*, C.A. No. 2:05-cv-04409 (E.D. La.)
6.  *Raroa et al., v. Merck & Co., Inc.*, C.A. No. 2:05-cv-04184 (E.D. La.)

Respectfully submitted,

*Cecily C. Williams*

Cecily C. Williams

CCW/eaa

Enclosures

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### AT LEXINGTON

| | | |
|---|---|---|
| Virginia A. Hendershot, et al. | : | 3:05-CV-070 (JMH) |
| | : | |
| William Kelly, et al. | : | 5:05-CV-437 (JMH) |
| | : | |
| Noah Taylor, et al. | : | 5:05-CV-454 (JMH) |
| | : | |
| **Plaintiffs,** | : | **ELECTRONICALLY FILED** |
| v. | : | |
| | : | **MOTION TO REMAND** |
| | : | |
| MERCK & CO., INC., et al. | : | |
| | : | |
| **Defendants.** | : | |

Plaintiffs, by counsel, hereby move this Honorable Court to remand this action to State Court pursuant to 28 U.S.C. § 1447(c). A memorandum in support of this Motion is attached hereto, along with a Tendered Order.

Respectfully submitted,

_s/ Ann B. Oldfather_
Ann B. Oldfather
OLDFATHER & MORRIS
1330 S. Third Street
Louisville, Kentucky 40208
Telephone: 502/637-7200
Facsimile: 502/637-3999

and

Tyler Thompson
310 Starks Building
Louisville, Kentucky 40202
Telephone: 502/587-6554
***Co-Counsel for Plaintiffs***

**EXHIBIT**

E

Blumberg No. 5119

1

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Susan J. Pope, Esq.
FROST BROWN TODD, LLC
250 W. Main St., Suite 2700
Lexington, KY 40507-1749
*Counsel for Defendant Merck & Co., Inc.*

I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

Carol Dan Browning
Stites & Harbison PLC
400 W. Market Street Suite 1800
Louisville, KY 40202

David B. Gazak
James E. Smith
Daniel G. Brown
Darby & Gazak
10400 Linn Station Rd., Suite 226
Louisville, Kentucky 40223

Melanie S. Marrs
David A. Trevey
Lynn, Fulkerson, Nichols & Kinkel
267 W. Short Street
Lexington, Kentucky 40507

Todd Martin, ARNP
1401 Harrodsburg Road
C315
Lexington, Kentucky 40504

Donald R. Douglas, M.D.
1401 Harrodsburg Road
C315
Lexington, Kentucky 40504

s/ Ann B. Oldfather

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

| | | |
|---|---|---|
| Virginia A. Hendershot, et al. | : | 3:05-CV-070 (JMH) |
| | : | |
| William Kelly, et al. | : | 5:05-CV-437 (JMH) |
| | : | |
| Noah Taylor, et al. | : | 5:05-CV-454 (JMH) |
| | : | |
| Plaintiffs, | : | ELECTRONICALLY FILED |
| v. | : | |
| | : | MEMORANDUM IN SUPPORT OF |
| | : | MOTION TO REMAND |
| MERCK & CO., INC., et al. | : | |
| | : | |
| Defendants. | : | |

## Introduction

These are personal injury, medical malpractice and product liability cases involving the drugs Vioxx®, manufactured and sold by Merck & Co., Inc. (hereafter "Merck") and Celebrex® and Bextra® manufactured and sold by Pfizer Inc. (hereafter "Pfizer"). Vioxx®, Celebrex® and Bextra® are selective COX-2 inhibitors used for the relief of pain and inflammation and are hereafter collectively referred to as the "COX-2 Drugs". Studies have demonstrated that the COX-2 Drugs cause adverse cardiovascular events, including heart attacks, strokes and other thrombotic injuries. Plaintiffs seek damages against the drug manufacturers, Merck and Pfizer. Plaintiffs also seek damages against the healthcare providers (hereafter the "Healthcare Provider") who prescribed or otherwise provided the COX-2 Drugs to the Plaintiffs.

In each case, the defendant Healthcare Provider is a citizen of Kentucky, as are Plaintiffs. Merck and Pfizer nevertheless allege that there is diversity of citizenship asserting that the joinder of the Healthcare Provider is "fraudulent," a contention requiring that Merck and Pfizer establish that there is no arguably reasonable basis for imposing liability against the Healthcare Provider under Kentucky law.  Merck and Pfizer cannot succeed because the allegations of the

Complaints assert a viable claim against the Healthcare Provider, because Merck itself has asserted in other proceedings that the prescribing Healthcare Providers are at fault and because Merck and Pfizer undoubtedly will not concede here that they will never assert any potential liability against the Healthcare Provider. [1]

Plaintiffs have alleged a medical negligence claim against the Healthcare Provider that would survive a motion to dismiss in any state court of Kentucky. Based on the Complaints alone, the Healthcare Provider is potentially liable to Plaintiffs under Kentucky state law. Since there is no diversity of citizenship, these actions must be remanded.

This precise issue has been addressed by Judge Charles Simpson in *Singleton v. Warner-Lambert Company, et al.*, Civil Action No. 3:04CV-254-S, when Judge Simpson held that a medical negligence claim against a Kentucky doctor *against whom there was no expert testimony at that point after years of litigation* (the expert witness having recanted his disclosed, critical testimony) was non-removable because, at the time of filing, "there [was] arguably a reasonable basis for predicting that state law might impose liability on the facts involved." *Id.* at 6 (citations omitted). A copy of the opinion in *Singleton* is attached hereto as Exhibit A.

In other forums, Merck has asserted that defendant physicians are responsible for any injuries resulting from the prescription of Vioxx®. For example, Merck has said that "any wide awake physician" should have known of the dangers of Vioxx®.[2] Merck and Pfizer also have claimed both in these and other actions that prescribing healthcare providers were "learned intermediaries" who were given adequate information and warnings and therefore were responsible for making the risk/benefit decision on behalf of their patients. If Merck and Pfizer

---

[1] Plaintiffs also are attempting to identify the sales representatives named as John Does in the Complaint, and anticipate amending the Complaint to name those representatives. Depending on their residence, the addition of the sales representatives may provide an additional basis for remand.

[2] Congressional testimony of Dennis Erb, Merck Vice President in charge of Regulatory Issues, May 5, 2005.

are right in those contentions, then the prescribing Healthcare Providers have potential liability to persons like the Plaintiffs injured as a result of taking the COX-2 Drugs. Similarly, Merck identified prescribing physicians as "potential defendants" to the presiding Judge in the Vioxx Multi-District Litigation (the "MDL").[3] More recently, in the *Humeston* trial, Merck's lawyers told jurors that any physician who didn't know about the VIGOR study that demonstrated cardiovascular risks in Vioxx users *"had to be living under a rock."*

This Memorandum is submitted in support of the Motion of Plaintiffs to remand to state court. Each action was filed by Plaintiffs in State Court. As in other cases, and despite the fact that diversity jurisdiction clearly is lacking on the face of the Complaints, Merck and Pfizer removed to federal court. The intent clearly is to have these actions transferred to either the Vioxx MDL now pending in the U.S. District Court for the Eastern District of Louisiana or the Bextra and Celebrex MDL now pending in the U.S. District Court for the Northern District of California. Even if transferred, the actions ultimately will come back here for trial. Merck has stated publicly that it will defend each and every case on individual causation.[4] The cases therefore *will* be tried; the only question is whether it will be in this Court or the state court where they were originally filed.

It is axiomatic that federal diversity jurisdiction requires complete diversity. On the face of the Complaints, diversity is clearly lacking. For the reasons set forth below, the fraudulent joinder argument lacks merit and these actions should be remanded to state court.

---

[3] IN RE: VIOXX PRODUCTS LIABILITY LITIGATION, MDL No. 1657, Order of June 6, 2005 regarding Ex parte contact with treating physicians.

[4] Merck General Counsel, Kenneth Frazier, has stated that heart attacks and strokes are common in the general population and every plaintiff must prove that the drug, not something else, caused the alleged injury or death. He also has claimed that Merck will vigorously defend against the lawsuits, seeking to try the lawsuits on a case-by-case basis because each patient taking the drug has a different set of circumstances and medical conditions.

## ARGUMENT

I.     **Remand Issues Should be Resolved *Before* MDL Transfer**

A federal court must always insure that it has subject matter jurisdiction. Where such jurisdiction is lacking, the court must remand the action to state court. It is incumbent upon this Court to determine the threshold issue of jurisdiction *before* transfer of this case to the MDL proceedings. The federal removal statutes expressly provide, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall be** remanded." 28 U.S.C. 1447(c) (emphasis added).

The United States Supreme Court has repeatedly held that a district court should take no action unless it has jurisdiction over the dispute. "Without jurisdiction, the court cannot proceed at all in any case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) (citation omitted). This rule includes the issuance of orders. *See, Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over the subject matter and the parties."). As the court wrote in *Farkas v. Bridgestone/Firestone, Inc.*, 113 F.Supp.2d 1107 (W.D. Ky. 2000):

> Not too long ago, Justice Scalia spoke for the majority in *Steel Company v. Citizens for a Better Environment* that jurisdiction is a "first and fundamental question" that a court is "bound to ask and answer for itself." Although our case is dissimilar in several respects, one cannot overlook the Supreme Court's strong endorsement of deciding jurisdictional issues. Therefore, the jurisdictional issue must be resolved before deciding whether to stay or transfer the case to the MDL panel.

*Id.* at 1115 n. 8 (W.D. Ky. 2000) (citations omitted).

Moreover, district courts, like this one, retain *exclusive* jurisdiction to decide remand and any other pretrial issues *despite the pendency of an action before the MDL panel. See, Rules of*

4

the *Judicial Panel on Multidistrict Litigation Rule 1.5*, 181 F.R.D. 1, 3 (1998) ("conditional transfer order…does not in any way limit the pretrial jurisdiction of that [district] court.") (Emphasis added).  No conditional transfer order is currently pending in the majority of these cases.  Even if one were, this Court still retains exclusive jurisdiction to decide pretrial matters, such as this motion to remand.  Moreover, as noted in Plaintiffs Response to the Motion to Stay, in some of these cases, there is no appropriate MDL to which the present action could be transferred.  Judicial efficiency and economy are better served by this Court considering the Motion to Remand before the Joint Panel on Multidistrict Litigation considers or orders transfer since the claimed diversity will be determined exclusively by reference to Kentucky law.  In fact, several district courts have granted motions to remand in other Vioxx® cases prior to transfer to the MDL. *See Remand Orders*, attached hereto as Exhibit B.

As set forth below, remand in these cases is unquestionably supported by case law, including case law from other cases.  Hence, there is no risk of inconsistent decisions among the federal courts.  *See, e.g., In re Rezulin Prods. Liab. Litig. (MDL No. 1348),* No. 00-2843, 2002 WL 548750 (S.D.N.Y. April 12, 2002); *Ritchie v. Warner-Lambert Company,* No. 01-1001, 2001 WL 527501 (E.D.La. May 1, 2001).  Indeed, the issue presented here -- whether or not the Plaintiff has a *possibility* of recovery against the treating Healthcare Provider -- is not a close one, and thus there is no reason to delay remand to state court. *Ritchie,* 2001 WL 527501, at *2 n. 7.

## II.   Removal Was Procedurally Defective Because Defendants Failed to Promptly Give Notice to Adverse Parties

28 U.S.C. § 1446 (d) requires that a removing defendant "Promptly after the filing of such notice of removal … give written notice thereof to all adverse parties …." The Complaints in these actions named resident Healthcare Providers thereby precluding the exercise of diversity jurisdiction. Defendants nevertheless removed, asserting that the resident Healthcare Providers

5

had been "fraudulently joined" and could be ignored in determining whether this Court had jurisdiction. Despite acknowledging the presence of the adverse Healthcare Providers, Merck failed to promptly give written notice of removal to those Healthcare Providers as evidenced by the Certificates of Service on the various removal petitions. To this date, Merck has failed to provide the written notice required by § 1446 (d).

The Courts are split on what constitutes "prompt" notice of removal. *See, e.g., Colletti v. Ovaltine Food Products*, 274 F.Supp. 719, 723 (D.P.R. 1967) (5 day delay justifies remand); *Barrett v. Southern Railway Co.*, 68 F.R.D. 413, 422 (D.S.C. 1975) (rejecting *Coletti* and finding a 7 day delay in notice acceptable). In *Alpena Power Co. v. Utility Workers Union of America*, 674 F.Supp. 1286, 1287-88 (E.D. Mich. 1987) the court adopted a bright line rule using Fed. R. Civ. P. 6(a)'s distinction for time periods of less than 11 days, and holding that notice must be given within 10 days, excluding intervening weekends and holidays. *See also, Sullivan v. Leaf River Forest Products, Inc.*, 791 F.Supp. 627, 629 (S.D. Miss. 1991) (applying *Alpena* to find 6 day delay acceptable); 14C Wright, et al., *Federal Practice and Procedure* § 3736, at 378 (3d ed. 1998) ("remand may be ordered when there is an undue delay in giving notice to the adverse parties....").

With one exception (*Thornsberry, et al. v. Merck & Co., Inc.*, No. 7:05-CV-351 (JMH)), the last of these actions was removed by no later than October 26. Excluding weekends and court holidays, at least 12 days (and in some cases, significantly more) have elapsed since the filing of the notice of removal, and the Healthcare Providers still have not received the required written notice of removal. Because such notice was not promptly provided as required by 28 U.S.C. § 1446 (d), these actions should be remanded.

## III.   Diversity Clearly is Lacking and These Actions Should be Remanded to State Court

### A.   Merck and Pfizer Bear the Burden of Establishing Federal Diversity Jurisdiction

A party invoking the removal jurisdiction of the federal courts bears a heavy burden. *Salisbury v. Purdue-Pharma, L.P.*, 166 F. Supp. 546, 549 (E.D. Ky. 2001). The statutes governing the removal of actions are jurisdictional and therefore are strictly construed in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 209-09, 91 S.Ct. 868 (1941). Merck and Pfizer must convincingly demonstrate that federal jurisdiction exists and that removal in these cases was proper. *Winburn v. Liberty Mutual Insurance Company*, 933 F. Supp. 664, 666 (E.D. Ky. 1996). To determine whether jurisdiction is present for removal, the court considers the claims asserted in the state court action as they existed at the time of removal. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d. 1272, 1277 (6th Cir. 1991). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Egan v. Premier Scales & Systems, d/b/a Southern Indiana Scale Company, Inc.*, 237 F.Supp. 774, 778, fn. 6 (W.D. Ky. 2002). "Where there is any doubt concerning jurisdiction of the federal court on removal, the cases should be remanded." *Egan* at 778, fn. 6. These case holdings are summed up by the Sixth Circuit:

> To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a **colorable basis** for predicting that a plaintiff **may recover** against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling ... state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (emphasis added, citations omitted). Merck and Pfizer have failed to satisfy the burden of establishing federal diversity jurisdiction and these actions should be remanded.

## B.     The Non-Diverse Healthcare Provider Is Not Fraudulently Joined

7

Merck and Pfizer ask the Court to apply the fraudulent joinder doctrine, arguing that the Healthcare Provider was named as a party defendant solely for the purpose of defeating diversity jurisdiction.   For purposes of diversity jurisdiction, each Plaintiff is a citizen of Kentucky. Merck and Pfizer are not citizens of Kentucky, but the Healthcare Provider is.  Thus, the only question before the Court is whether the admittedly non-diverse Healthcare Provider was fraudulently joined.

This Court must give "full effect to section 1446(b) and [apply] the plain meaning of the [statutory] words chosen by Congress." *United States v. Turkette,* 452 U.S. 576. 593, 101 S.Ct. 2524, 2533-34, 69 L.Ed.2d 246 (1981).  Supreme Court case law on fraudulent joinder and section 1446(b)'s jurisdictional limitations is well-settled.  In *Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 58 L. Ed. 544, 34 S. Ct. 278 (1914), the Court held that where removal is based on diversity jurisdiction, a federal court can find jurisdiction by disregarding a non-diverse defendant *only* where the complaint *on its face* does not state a valid cause of action against that party or, if the complaint is facially adequate, where joinder of that defendant "is merely a fraudulent device to prevent a removal."  *Id.* at 153.  According to *Cockrell,* joinder is not fraudulent "unless it [is] without any reasonable basis."  *Id.*  The joinder must be without right and made in bad faith. *Id.* at 152.

Consistent with Supreme Court precedent, the Sixth Circuit applies a "reasonable basis" test in evaluating fraudulent joinder claims.  *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.,* 176 F.3d 904 (6th Cir. 1999); *Alexander v. Electronic Data Systems,* 13 F.3d 940, 949 (6th Cir. 1994). That test focuses on whether there is **arguably** a reasonable basis for predicting that state law **might** impose liability based on the facts of the case.  *Id.*  A federal court, in determining whether removal is proper, must evaluate the facts in the light most favorable to the plaintiff, and resolve any ambiguities in controlling state law in favor of remand. *Id.* The question is not

whether the plaintiff will in fact prevail on the merits, but rather whether plaintiff could *potentially* recover under state law. *Id.; Winburn v. Liberty Mutual Insurance Company,* 933 F. Supp. 664, 666 (E.D. Ky. 1996). Once the court determines that Plaintiff arguably has alleged a valid state law cause of action against the non-diverse defendant, then the joinder of that non-diverse defendant is proper, and jurisdiction is lacking.

In order to prove fraudulent joinder, Merck and Pfizer "must demonstrate either 'outright fraud in the plaintiff's recitation of jurisdictional facts,' or that 'there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.'" *Jerome-Duncan, supra.* The question, then, is simply whether Plaintiffs have alleged a cognizable claim under Kentucky law against the Healthcare Provider for medical malpractice. Whether a case states a cognizable cause of action against a defendant is determined by reference to the allegations made in the Plaintiffs' original pleadings. In the cases at bar, Plaintiffs claim that the Healthcare Provider was negligent and committed medical malpractice in prescribing or otherwise providing the COX-2 Drugs. There can be no doubt that these specific allegations are more than sufficient under Kentucky law.

In order to recover against the Healthcare Provider, Plaintiffs must establish the following essential elements: (1) a legally cognizable duty requiring the Healthcare Provider to conform to a certain standard of care or conduct; (2) the applicable standard of care and a breach of that standard; (3) injury; and (4) a reasonably close causal connection between the breach of the standard and the injury suffered by the plaintiff. *Grubbs ex rel. Grubbs v. Barbourville Family Health Center, P.S.C., Ky., 120 S.W.3d 682, 687 (2003), citing Mullins v. Commonwealth Life Ins. Co., Ky., 839 S.W.2d 245 (1992).* In Kentucky, if the Healthcare Provider's service falls below the expected level of care and skill and this negligence proximately caused injury or death, then all elements of a malpractice action have been met.

9

*Grubbs* at 688, *citing Reams v. Stutler,* Ky., 642 S.W.2d 586 (1982). Furthermore, under Kentucky law, a Healthcare Provider assumes the duty to warn the patient of dangers associated with a proposed treatment or procedure, including the use of a prescribed drug. *Coulter v. Thomas,* 33 S.W.3d 522, 525 (Ky. 2003); *see also Larkin v. Pfizer,* Ky., 153 S.W.3d 758 (2004) (stating that a manufacturer has a duty to adequately warn a doctor, and that a doctor acts as a learned intermediary between the manufacturer and the patient). *Cf. Reyes v. Wyeth Labs.,* 498 F.2d 1264, 1276 (5th Cir.1974). Failure to disclose such risks or hazards, judged "according to the exigencies of the case and proportionate to the dangers to be apprehended and guarded against," constitutes negligence. *Id. See also, Johnson v. Vaughn,* 370 S.W.2d 591, 596 (Ky. Ct. App. 1963). Healthcare Providers have a responsibility to apprise themselves of the risks associated with drugs they prescribe and to consider and weigh those risks against the possible benefit of treatment with the drug. *Larkin v. Pfizer, supra.*

Each Plaintiff alleges that the Healthcare Providers prescribed or otherwise provided the COX-2 Drugs and as a result of taking those drugs, Plaintiff was damaged. Plaintiffs also allege that the Healthcare Provider knew or should have known that the COX-2 Drugs posed real and substantial risks of adverse cardiovascular events, but failed to fully and adequately consider those risks or disclose them to Plaintiffs before prescribing the COX-2 Drugs. Plaintiffs further allege that in prescribing the COX-2 Drugs, the Healthcare Provider was negligent and deviated from the standard of care in several particulars, including: failing to be aware of or consider the real and substantial risks of adverse cardiovascular events posed by the COX-2 Drugs; failing to determine whether treatment with the COX-2 Drugs was appropriate or indicated; failing to obtain informed consent, including the failure to advise of adverse events associated with the COX-2 Drugs; and failing to provide adequate and complete instructions for safe use of the drugs.

These allegations clearly state a viable cause of action under Kentucky law. In *Singleton v. Warner-Lambert Company*, Civil Action No. 3:04CV-254-S, Judge Simpson held, on similar pleadings, that plaintiff had sufficiently stated a reasonable basis of liability against the non-diverse physician defendant, and that the case was not removable. *Id.* at 6. Similarly, this Court cannot conclude there is no possibility that Plaintiffs will succeed in the claim against the Healthcare Provider. As a result, diversity is lacking, and these actions must be remanded.

Defendants may argue that the Healthcare Provider cannot be liable for a failure to warn because the Complaints allege that Merck and Pfizer concealed the risks of the COX-2 Drugs and represented to Healthcare Providers that the COX-2 Drugs were safe and effective. That argument must fail. First, there is no requirement that a plaintiff's allegations be consistent, and the Rules of Civil Procedure clearly contemplate pleading in the alternative. Fed. R. Civ. P. 8; *see also, Lauderdale v. Merck & Company, Inc.* (a copy of which is included in Exhibit B). In addition, Plaintiffs have alleged that information was available to the Healthcare Provider suggesting that the COX-2 Drugs posed cardiovascular risks, ***notwithstanding*** the actions of Merck and Pfizer in concealing or misrepresenting information regarding those risks.

Finally, the assertion that the Healthcare Provider was fraudulently joined borders on the frivolous given the legal and public positions taken by Merck and Pfizer. Merck has claimed, in other cases, that physicians were fully informed regarding the risks of the COX-2 Drugs and both Merck and Pfizer have asserted ***in the present actions***, that the Healthcare Provider was a learned intermediary as a bar to plaintiffs' claims. Merck's CEO, Raymond Gilmarten, has testified before Congress that Merck fully disclosed the risks associated with Vioxx® to physicians, asserting:

> Second, over the past six years, since the time Merck submitted a New Drug Application for Vioxx® to the FDA, we have promptly disclosed the results of numerous Merck-sponsored studies to the FDA, physicians, the scientific community and the media and

participated in a balanced, scientific discussion of its risks and benefits.

(Testimony of Raymond Gilmarten before the Senate Finance Committee, November 18, 2004).

Dennis Erb, Merck's Vice President in charge of regulatory issues, told a Congressional panel in May 2005 that Merck never withheld data from the medical community and that Merck's sales presentations to doctors were "accurate and balanced." He further testified that any "wide-awake physician" would have been aware of the cardiovascular risks associated with Vioxx®. More recently, in the *Humeston* trial, Merck's lawyers told jurors that any physician who didn't know about the VIGOR study that demonstrated cardiovascular risks in Vioxx users *"had to be living under a rock."*

Even more telling is the refusal of Merck and Pfizer to enter into a stipulation offered by the undersigned counsel. Exemplar versions of the actual letter and stipulation are attached hereto as Exhibit C. The stipulation would dismiss claims against the Healthcare Provider if Merck and Pfizer agreed not to rely on the learned intermediary doctrine or otherwise seek to defend by placing blame on the Healthcare Provider or seeking apportionment. Plaintiffs have heard no response to that proposal. If unwilling to stipulate that the healthcare provider bears no blame, how can Merck and Pfizer contend with a straight face that the Healthcare Provider was fraudulently joined?

Simply put, Merck and Pfizer want to have it both ways:  If anyone made a mistake here, it wasn't Merck or Pfizer but rather a so-called "learned intermediary," the Healthcare Provider; but as far as federal diversity jurisdiction is concerned, any claim against the Healthcare Provider is labeled "fraudulent."

The Complaint clearly states a claim against the Healthcare Provider. As such, the Healthcare Provider is a proper defendant in these actions and was not fraudulently joined.

12

**CONCLUSION**

The Complaints, taking all the allegations set forth therein as true, clearly sets forth a viable claim under Kentucky law against the defendant Healthcare Provider. Accordingly, the citizenship of the Healthcare Provider cannot be ignored for the purposes of determining subject matter jurisdiction. Diversity therefore is lacking and these cases should be remanded to State Court for all further proceedings.

Respectfully submitted,


  s/ Ann B. Oldfather
Ann B. Oldfather
OLDFATHER & MORRIS
1330 S. Third Street
Louisville, Kentucky  40208
Telephone:  502/637-7200
Facsimile:  502/637-3999


and

Tyler Thompson
310 Starks Building
Louisville, Kentucky  40202
Telephone:  502/587-6554
*Co-Counsel for Plaintiffs*


**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Susan J. Pope, Esq.
FROST BROWN TODD, LLC
250 W. Main St., Suite 2700
Lexington, KY  40507-1749
*Counsel for Defendant Merck & Co., Inc.*

I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

Carol Dan Browning
Stites & Harbison PLC
400 W. Market Street Suite 1800
Louisville, KY  40202

David B. Gazak
James E. Smith
Daniel G. Brown
Darby & Gazak
10400 Linn Station Rd., Suite 226
Louisville, Kentucky  40223

Melanie S. Marrs
David A. Trevey
Lynn, Fulkerson, Nichols & Kinkel
267 W. Short Street
Lexington, Kentucky  40507

Todd Martin, ARNP
1401 Harrodsburg Road
C315
Lexington, Kentucky  40504

Donald R. Douglas, M.D.
1401 Harrodsburg Road
C315
Lexington, Kentucky  40504

s/ Ann B. Oldfather

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

|  |  |  |
|---|---|---|
| VIRGINIA A. HENDERSHOT, ET AL., | ) | Civil Action No. 3:05-70-JMH |
| RICHARD D. SOUTHWORTH, | ) | Civil Action No. 3:05-73-JMH |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | **ORDER** |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| MERCK & CO., INC., ET AL. | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

** ** ** ** **

These matters are before the Court on the above-named
Plaintiffs' motions to remand their cases to state court. These
cases arise out of harm to Plaintiffs allegedly caused by Vioxx,
and each complaint alleges product liability claims against Merck
and negligence claims against the physicians who prescribed Vioxx
to Plaintiffs.[1] All responses and replies having been filed, these
matters are now ripe for review.

## I. BACKGROUND

A.   *Procedural Background*

Plaintiffs filed these actions in various state courts, and
Defendant Merck removed them, claiming that the Court has subject

---

[1]     Some of these cases also include claims against the
physicians' employers, but as these claims are entirely derivative
of the claims against the physicians, they need not be considered
separately.   In addition, Plaintiffs make claims against drug
representatives named as John Does.   These fictitious defendants
will be disregarded for purposes of this motion.

EXHIBIT

F

matter jurisdiction based on diversity.  *See* 28 U.S.C. § 1441(a);
28 U.S.C. § 1332(a).  Plaintiffs are citizens of Kentucky, Merck is
a citizen of New Jersey under 28 U.S.C. § 1332(b), and the amount
in controversy exceeds the jurisdictional minimum.  The physicians
named in each of the state-court complaints are citizens of
Kentucky, and thus according to Plaintiffs the presence of these
non-diverse defendants destroys diversity.  Merck contends that the
physicians were fraudulently joined solely for the purposes of
avoiding federal jurisdiction.

B.   *The Complaints Against Merck*

     Plaintiffs make a number of allegations in their complaints,
most of which are directed at Merck.[2]  Plaintiffs allege that Merck
actively concealed the cardiovascular risks of Vioxx from both the
medical community and the public at large, and they include a
"Vioxx Timeline" that describes the relevant studies, articles, and
FDA actions regarding Vioxx.  According to the complaints, even
before Vioxx was approved, there were both human and animal studies
indicating that COX-2 inhibitors increase cardiovascular risks.  In
March of 2000, Merck revealed the initial results of the Vioxx
Gastrointestinal Outcomes Research (the "VIGOR" study), which
showed that Vioxx had twice the rate of serious cardiovascular

_____

     [2]   The complaints are nearly identical, with only the names
and some of the dates changed.

events as a comparator drug, Naproxen.[3]

In January of 2001, an FDA advisory panel recommended that Merck change the labeling on Vioxx to reflect the cardiovascular risk, a step that Merck took in April of 2002. In the interim, the Journal of the American Medical Association had published a study again showing an increase in cardiovascular risk as compared to Naproxen, and a number of healthcare providers asked Merck to conduct tests on the cardiovascular risks associated with Vioxx. Eventually, in September of 2004, Merck pulled Vioxx from the market.

Plaintiffs assert that throughout this process Merck both concealed and actively misrepresented the true dangers of Vioxx. The claims asserted against Merck include negligence, strict liability, failure to warn, false advertising, and breach of various warranties.

C.   *The Claims Against the Physicians*

The claims against the physicians are negligence claims. Plaintiffs incorporate their history of the emerging knowledge of the dangers of Vioxx and claim that the physicians knew or should have known of the cardiovascular risks, failed to adequately

---

[3]   The complaint does not reveal to whom or in what medium these initial results were revealed. Plaintiffs also allege that when the final results of the VIGOR study appeared in the New England Journal of Medicine, Merck failed to disclose the cardiovascular risk. Although the circumstances of the initial release of data are unclear, at this stage all ambiguities must be resolved in favor of Plaintiffs, as further discussed below.

consider those risks, and failed to obtain informed consent. Other than the facts that the named physicians treated Plaintiffs and prescribed Vioxx to them, the only allegations supporting the claims against the physicians are the history of the public knowledge of the dangers of Vioxx. Plaintiffs argue that this is sufficient to state a claim that the physicians knew or should have known of the dangers of Vioxx.

## II. ANALYSIS

### A.   *Fraudulent Joinder*

A case can only be removed if it could have been originally brought in federal court, and as there is no federal question, jurisdiction is only proper if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332. "[A] party seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation marks omitted).

The only issue is whether the non-diverse physicians were fraudulently joined.[4]  The burden is on Merck to show fraudulent

---

[4]     Plaintiffs also argue that removal was defective because Merck failed to obtain the consent of all defendants to removal. While the statutes authorizing removal do not explicitly state that removal can be effected only with the consent of all defendants, the case law is clear that all named defendants must either join in the notice of removal or file notices demonstrating consent to removal. *See, e.g.*, *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533-34 (6th Cir. 1999).  However, a removing defendant need not obtain the consent of parties who are

joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493.

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff *may* recover against non-diverse defendants, th[e] Court *must remand* the action to state court." *Id.* (emphasis added); *see also Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) ("[T]he inquiry is whether [plaintiff] had at least a colorable cause of action."). Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiffs. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiffs will prevail at trial on their claims against the physicians. The question is not even whether the Court believes that the physicians were in fact joined to defeat diversity. *See Jerome-Duncan*, 176 F.3d at 907 (holding that a plaintiff's motive in joining a non-

---

fraudulently joined. *See Constant v. Wyeth*, 352 F. Supp. 2d 847, 849 (M.D. Tenn. 2003). Accordingly, whether removal was defective based on a lack of consent is entirely dependent on whether the non-diverse physicians were fraudulently joined, and it need not be addressed separately.

diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of Plaintiffs, Merck has shown that there is no colorable basis for predicting that Plaintiffs could prevail in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Rule 12(b)(6). *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992); *Hartley v. CSX Transp, Inc.*, 187 F.3d 422 (4th Cir. 1999)). As the Third Circuit has noted, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff*, 977 F.2d at 852. "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendants, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47; *see also Batoff*, 977 F.2d at 852 (holding that a party is not fraudulently joined if the claims against them are not "wholly insubstantial and frivolous").

6

Merck makes two principal arguments in support of fraudulent joinder.  First, Merck argues that Plaintiffs' claims against the physicians are wholly conclusory.  Second, Merck argues that Plaintiffs' claims against the physicians are inconsistent with their allegations against Merck.  As the fraudulent joinder inquiry depends on whether Plaintiffs have stated a colorable claim against the non-diverse defendants in state court, *see Coyne*, 183 F.3d at 493, the Court must assess Plaintiffs' complaints in light of Kentucky law, and to this the Court now turns.[5]

B.   *Conclusory Pleadings*

It is no doubt true, as Merck points out, that the complaints are long on allegations of wrongdoing by Merck and short on allegations against the physicians.  From this fact Merck would have the Court draw the conclusion that the complaints are so deficient and conclusory that the physicians must be fraudulently joined.  Therefore, the Court must determine whether the complaints state sufficient facts to sustain a claim against the doctors under Kentucky law.

"The elements of a medical malpractice claim are generally:

---

[5]      There are pending motions to stay in these cases, and Merck has argued that the issue of fraudulent joinder should be determined after transfer to MDL.  However, as the determination of whether the physicians have been fraudulently joined depends on whether Plaintiffs have stated a claim under state law, *see Coyne*, 183 F.3d at 493, the MDL court would have to make fifty separate determinations.  Although courts have gone both ways on this issue, this Court believes that it is in the interest of efficiency to rule on the motion to remand before transfer.

(1) duty; (2) breach of duty; (3) causation; and (4) injury."
*Gordon v. Kemper*, 2005 WL 678535 at *2 (Ky. App. Mar. 25, 2005);
*see also Wheeler v. Baptist Healthcare Sys.*, Inc., 14 Fed. App. 559
(6th Cir. 2001). A physician has a duty to use the same degree of
care and skill as would be expected of a reasonably competent
physician in similar circumstances. *See Mitchell v. Hadl*, 816
S.W.2d 183, 185 (Ky. 1991). Kentucky recognizes a physician's
failure to obtain informed consent as an actionable form of
negligence. *See Hawkins v. Rosenbloom*, 17 S.W.2d 113, 118-19 (Ky.
App. 1999).

Plaintiffs' complaints allege that the cardiovascular risks
associated with COX-2 inhibitors had been shown in both human and
animal studies before Vioxx's approval, and that public information
about the cardiovascular risks of Vioxx came out, notwithstanding
Merck's attempts to conceal the risks, from March of 2000 through
the time Vioxx was pulled from the market in September of 2004.
According to Plaintiffs, this means that at least at some point
during this period, the physicians knew or should have known of the
risks of Vioxx and should have disclosed the risks to Plaintiffs.
Plaintiffs allege that the physicians prescribed Vioxx and that
this was a proximate cause of the harm.

Kentucky's Civil Rules, like the Federal Rules of Civil
Procedure, require only that a plaintiff state a claim with
sufficient specificity so that defendants receive fair notice of

the claims against them.  As the Kentucky Court of Appeals explained, "[u]nder the theory of 'notice' pleading adopted by the Civil Rules a complaint will not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim.  *It is immaterial whether the complaint states 'conclusions' or 'facts' as long as fair notice is given.*"  *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960) (emphasis added and internal citations omitted); *see also Morris v. Cabinet for Families & Children*, 69 S.W.3d 73, 74 (Ky. 2002) ("The principal objective of a pleading is to give fair notice to the opposing party.").  "[T]he Rules of Civil Procedure with respect to stating a cause of action should be liberally construed and . . . much leniency should be shown in construing whether a complaint . . . states a cause of action."  *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) .

Vague and conclusory though Plaintiffs' allegations may be, Plaintiffs have met the standard required for pleading negligence. Plaintiffs have alleged a breach of the physicians' duty by failing to know, failing to consider, and failing to inform the patient of the risks of Vioxx as a reasonable physician would have. Plaintiffs have alleged that they were injured and that this injury was caused in part by the physicians' failure to meet their duty.

There are sufficient facts alleged such that the physicians

9

would have fair notice of the claims and be able to frame an answer. A physician could answer by stating that he or she was unaware of the dangers and that a reasonable physician would not have encountered the information described in the complaint until after harm had already befallen their patients. The physician might even be right, but what a reasonable physician would have known is surely a matter for the jury and not a matter for the Court on a motion to remand. As the complaints give the physicians fair notice of the claims against them, they will not be held insufficient merely because their allegations are phrased largely as conclusions rather than as facts. *See Pierson Trapp Co.*, 340 S.W.2d at 460.

Moreover, even if the Court believed that the complaints against the physicians were too conclusory to state a claim, there is a remedy short of finding fraudulent joinder. As Judge Caldwell recently recognized in a well-reasoned opinion rejecting allegations of fraudulent joinder, if a complaint is too vague a defendant's remedy is to seek a more definite statement. *See Asher v. Minn. Mining & Mfg. Co.*, No-04-CV-522, 2005 WL 1593941, at *3 (E.D. Ky. June 30, 2005). In *Asher*, a defendant argued that the complaint lacked specificity in its claims against the non-diverse defendants and therefore that those defendants were fraudulently joined. Judge Caldwell rejected that argument, holding that "[t]he Defendants' proper recourse under Kentucky state law . . . would be

10

to request a more definite statement under CR 12.05.  The Complaint would not be dismissed because of the alleged deficiencies."[6]  *Id.; see also Little*, 227 F. Supp. 2d at 843 (remanding suit against drug manufacturer and non-diverse pharmacies even though "[t]he pleadings are general in their nature; the specifics few").

The Court cannot find that the allegations are so bereft of factual underpinnings that the physicians are fraudulently joined. Reading the complaints in the light most favorable to Plaintiffs, the allegations include facts that go to duty, breach, harm, and causation, and the Court believes that the defendant-physicians have received fair notice of the claims against them.  If the physicians feel that the complaints are too conclusory, their remedy is to move for a more definite statement.[7]

---

[6]    In a similar fashion, the District Court for the Southern District of Ohio noted, in response to a claim that parties had been fraudulently joined, that a federal court should not deny remand based on factual deficiencies in the pleadings when the Plaintiffs would have the opportunity to amend their complaints in state court.  *See Little*, 227 F. Supp. 2d at 847; Ky. R. Civ. P. 15.01 (following Fed. R. Civ. P. 15(a) and directing that leave to amend "be freely given when justice so requires").

[7]    Merck has noted that this Court has found fraudulent joinder in somewhat similar cases in the past.  *See Sires v. Eli Lilly & Co.*, No. 5:05-CV-117, 2005 WL 1239636 (E.D. Ky. May 24, 2005); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546 (E.D. Ky. 2001).  The complaints in those cases, however, were even more deficient than the complaints in this case.  In *Sires*, the complaint failed even to allege that the defendant-physician had prescribed the drug at issue in the action, and in *Salisbury* the complaint did not include an allegation that the defendant pharmacies had sold the drug to the plaintiffs.  The complaints in this case at least allege that the physicians prescribed Vioxx.

11

C.   *Inconsistent Pleadings*

Merck also argues that the claims against the physicians are inconsistent with the main thrust of the complaints, which is that Merck engaged in a program of concealing the risks of Vioxx from not only the public but from the medical community as well. According to Merck, if it is true that they concealed this information from the physicians, then it is impossible that Plaintiffs will be able to show that the physicians knew or should have known of the risks.

This argument fails for two reasons. First, giving Plaintiffs the benefit of all doubts, it is not clear that the allegations against Merck are necessarily inconsistent with the allegations against the physicians.  It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that a reasonable physician would still have known of the risks from the information that had come out.  Plaintiffs allege that certain information about the risks of Vioxx was publicly known at various times notwithstanding Merck's concealment, and that even aside from specific information about Vioxx, the cardiovascular risks associated with COX-2 inhibitors were known before the approval of Vioxx.

Second, the Kentucky Civil Rules, like the Federal Rules, allow alternative or inconsistent pleadings: "A party may . . . state as many separate claims . . . as he has regardless

12

of consistency." Ky. R. Civ. P. 8.05(2). Several courts have rejected the argument that it is a fatal flaw for a plaintiff to argue that a drug company withheld information from the medical community and at the same time that a physician should have known of the risks of a particular drug. *See, e.g.*, *Collins v. Bacon*, No. 1:05-CV-211, 2005 WL 2429844 at *3 (E.D. Tenn. Sept. 30, 2005); *Lauderdale v. Merck & Co.*, No. 1:01-CV-418, 2002 WL 449423 at *2-3 (N.D. Miss. Feb. 4, 2002). Although other courts have ruled the other way on this issue, this Court does not find that the partial inconsistency in Plaintiffs' complaints means that Plaintiffs do not have a colorable claim against the physicians in state court.

### III. CONCLUSION

Although the complaints in these cases are not models of clarity, and the bulk of the allegations relate to the conduct of Merck, the Court cannot find that they are so deficient as to warrant a finding of fraudulent joinder. The burden on a defendant seeking to prove fraudulent joinder is high, and Merck has not met that burden. Plaintiffs state a claim against the non-diverse physicians that may be colorable in state court, and that is all that they must do for their motion to remand to be granted.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That in **3:05-cv-70**, Plaintiffs' motion to remand [Record No. 8] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this

13

action be **REMANDED** to Franklin Circuit Court.

(2) That in **3:05-cv-73**, Plaintiffs' motion to remand [Record No. 10] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this action be **REMANDED** to Trimble Circuit Court.

This the 22nd day of December, 2005.



**Signed By:**

**_Joseph M. Hood_** ᴄ͜ᴍᴋ

**United States District Judge**

14

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## FRANKFORT DIVISION

**electronically filed**

| | |
|---|---|
| **VIRGINIA A. HENDERSHOT, and**<br>**MICHAEL S. HENDERSHOT, spouse** | **PLAINTIFFS** |
| **v.** | **Civil Action No. 3:05-cv-00070** |
| **MERCK & CO., INC.,**<br>**JOHN DOE ONE, JOHN DOE TWO,**<br>**JAMES H. HEAPHY, M.D., VIRGINIA MORRIS, ARNP,**<br>**and CAPITAL FAMILY PHYSICIANS, P.S.C.** | **DEFENDANTS** |

## MOTION OF DEFENDANT MERCK & CO., INC., TO VACATE REMAND ORDER

Pursuant to Rule 60(b), Federal Rules of Civil Procedure, defendant Merck & Co., Inc. ("Merck") respectfully moves this Court to vacate its remand order entered December 22, 2005, and to transfer the case file to *In re Vioxx Prods. Liab. Litig.* No. 1657. Merck respectfully states that this Court was divested of jurisdiction in this action as of November 25, 2005, the date the conditional transfer order issued in this case by the Judicial Panel on Multidistrict Litigation (JPML or "Panel") became final. Therefore, the remand order entered December 22, 2005, is void and should be vacated.

In support of its motion, Merck relies on its memorandum, filed this same date.

An Order granting the relief requested is tendered herewith.

Date: February 10, 2006.

EXHIBIT
G

Blumberg No. 5119

Respectfully submitted,

**FROST BROWN TODD LLC**

By:  /s/ Susan J. Pope

Susan J. Pope
Stephen M. Gracey
250 West Main Street, Suite 2700
Lexington, Kentucky 40507-1749
(859) 231-0000 Telephone
(859) 231-0011 Facsimile

-and-

Winston E. Miller
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
(502) 589-5400 Telephone
(502) 581-1087 Facsimile

*Counsel for Defendant Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of February, 2006, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Ann B. Oldfather        abo@omky.com
Tyler S. Thompson     tthompson@kytrial.com

I further certify that on this same date I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

Melanie S. Marrs
David A. Trevey
Lynn, Fulkerson, Nichols, & Kinkel, PLLC
267 West Short Street
Lexington, Kentucky 40507

*Counsel for James H. Heaphy, M.D.;*
*Virginia Morris, ARNP; and*
*Capital Family Physicians, P.S.C.*

  /s/   Susan J. Pope
*Counsel for Defendant Merck & Co., Inc.*

LEXLibrary 0106603.0538473 288898v.1

3

jurisdiction to rule on Merck's motion, but the Court must consider its jurisdiction *sua sponte*.

Congress has directed that remand orders be final and unreviewable except in very limited circumstances, none of which are relevant here: "An order remanding a case to the State court from which it was removed is not reviewable on appeal *or otherwise* . . . ."[2] 28 U.S.C. § 1447(d) (emphasis added). Courts have uniformly held that the *or otherwise* language in the statute precludes review of § 1447(c) jurisdictional remands under Rules 59 and 60.[3] *See, e.g., In re Lowe*, 102 F.3d 731, 734 (4th Cir. 1996)("Indisputably, 'otherwise' in § 1447(d) includes reconsideration by the district court."); *In re La Providencia Dev.*

---

[2]    The main exceptions are certain civil rights actions and cases in which a remand was not based on 28 U.S.C. § 1447(c). *See, e.g. Thermtron Prods. v. Hermansdorfer*, 423 U.S. 336 (1976); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). The remand in this action, however, based as it was on a lack of subject matter jurisdiction, falls squarely within § 1447(c) and therefore is not reviewable under the *Thermtron* exception.

[3]    There are cases allowing district court review following non-jurisdictional *Thermtron*-type remands, *see, e.g. In re Shell Oil Co.*, 631 F.2d 1156 (5th Cir. 1156), and cases allowing review when the dismissal of federal claims led a district court to remand state-law claims under § 1441(c), since reinstatement of the federal claims would eliminate the need for remand. *See, e.g., J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir. 1990). The Sixth Circuit also recently noted that because a magistrate judge lacked the authority to remand a case under 28 U.S.C. § 636, a remand order issued by a magistrate judge was reviewable by the district court under Rule 72. *See Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509 (6th Cir. 2001). However, these exceptions to § 1447(d) do not apply in this case, and this Court is reluctant to create a new exception.

*Corp.*, 406 F.2d 251, 253 (1st Cir. 1969)("Both [district and appellate review] are foreclosed; nothing could be more inclusive than the phrase 'on appeal or otherwise.' The district court has one shot, right or wrong.").

Accordingly, the Court finds under the plain language of the statute that it lacks authority to review its remand order, and the motion therefore must be denied.[4] Someone will have to rule on the matter, however, as the case cannot proceed simultaneously in two separate courts, and Merck is free to pursue the remedy it seeks elsewhere.  This Court does not question the validity of the November 25 transfer to the Eastern District of Louisiana, and if the MDL court determines that it has jurisdiction over this matter, surely it will be able to find that it can stay the state-court litigation "in aid of its jurisdiction" pursuant to 28 U.S.C. § 2283.  Although there may be little practical difference between a ruling here and a ruling there, the issuance of a stay from the MDL court would not raise a direct conflict with the statutory limitation on review of remand orders.

Accordingly, **IT IS ORDERED** that Merck's motion to vacate the remand order [Record No. 18] be, and the same hereby is, **DENIED WITHOUT PREJUDICE** to Merck's ability to seek relief in the MDL

---

[4]     While Merck correctly cites *In re G.A.D., Inc.*, 340 F.3d 331 (6th Cir. 2003), for the proposition that ordinarily a court has no choice but to vacate a void order, no statute barred review in *In re G.A.D.*, and Merck has cited nothing that convinces the Court that it can ignore § 1447(d).

court.

     This the 2nd day of March, 2006.



**Signed By:**

**_Joseph M. Hood_** ⟋mʀ

**United States District Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

JAN 1 3 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-423-KSF
CIVIL ACTION NO. 05-433-KSF
CIVIL ACTION NO. 05-434-KSF
CIVIL ACTION NO. 05-449-KSF

TRESA BRADY, *et al.,*
LARRY SMITH,
CLARENCE PARIDO, *et al.,*
and PATRICIA A. SWANAGIN, *et al.*                                    PLAINTIFFS

V.                                    **ORDER**

MERCK & CO., INC., *et al.*                                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on each plaintiff's respective motion to remand filed in

his or her individual case [DE #7 in each case]. The motions and responses filed in the separate

cases are substantively identical and, therefore, the Court will consider them together for

purposes of issuing a ruling.

These cases arise out of injuries the plaintiffs allege they sustained as a result of taking

the drug VIOXX®, which was manufactured and marketed by the defendant Merck & Co., Inc.,

marketed by certain "John Doe" defendants (unnamed pharmaceutical sales representatives), and

prescribed by the defendant physicians. The plaintiffs originally filed their complaints in state

court and the defendants promptly removed them to this Court on the basis of diversity

jurisdiction, asserting that the non-diverse defendants had been fraudulently joined to defeat

jurisdiction in this Court.

**EXHIBIT**

*I*

In early 2005, the Judicial Panel on Multidistrict Litigation ("JPML") transferred 138 civil actions alleging VIOXX®-related injuries to the United States District Court for the Eastern District of Louisiana (hereinafter the "MDL Court") for further pretrial proceedings pursuant to 28 U.S.C. § 1407. A Conditional Transfer Order ("CTO") was issued in each of the cases presently being considered, signaling that the actions apparently involve questions of fact which are common to the actions previously transferred to the MDL Court, and ordering that the actions be transferred to the MDL Court *if no objection was made within 15 days*. The plaintiffs in the present cases have all filed notices of opposition to the CTO's and a hearing is pending on those objections. Meanwhile, this Court is free to rule on the pending motions to remand until such time as the CTO's may become final. See, e.g., JPML Rule 1.5 ("The pendency of a . . . [CTO] . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").[1]

---

[1]   An identical motion to remand was filed in another case before the undersigned, Roger Allen, *et al.* v. Merck & Co., Inc., *et al.*, Civil Action No. 05-422-KSF. A CTO was also filed with respect to the Allen case, but the plaintiffs did *not* oppose the CTO within the 15-day period set forth in JPML Rule 7.4(a). Thus, the transfer of the Allen case from this Court to the MDL Court was effective on November 25, 2005, when the transfer order was filed in the MDL Court. JPML Rule 1.5 ("A transfer . . . shall be effective when the transfer . . . order is filed in the office of the clerk of the district court of the transferee district.").
The MDL Panel and a majority of other courts considering the issue have consistently held that once transfer becomes effective, the jurisdiction of the transferor court ceases and the transferee court is vested with exclusive jurisdiction. See, e.g., In re Plumbing Fixture Cases, 298 F. Supp. 484 (J.P.M.L. 1968); see also In re Upjohn Co. Antibiotic Cleocin Products Liability Litig., 664 F.2d 114, 118 (6th Cir. 1982) (with respect to discovery matters). In the Court's estimation, these and other cases counsel that once the CTO in this case became final, jurisdiction over all pretrial proceedings was vested exclusively in the MDL Court and this Court has no jurisdiction to rule on the motion to remand in the Allen case. It is now up to the plaintiff's in Allen to bring the pendency of that motion to the MDL Court's attention.

There are currently a number of VIOXX® cases pending before this Court, the majority of which are before the Honorable Chief Judge Joseph M. Hood.  Chief Judge Hood has carefully and thoroughly considered motions to remand in a number of these cases, which motions are substantively identical to the motions before the undersigned.  The undersigned has carefully considered the opinions issued by Chief Judge Hood in those cases and is in agreement with the statements, opinions, and conclusions therein in all respects.  Accordingly, rather than waste judicial resources generating an essentially identical opinion, the Court will rely on and hereby adopts the well-reasoned and thorough opinion of Chief Judge Hood entered on December 22, 2005, in the following actions:  Anthony P. Datillo, et al. v. Merck & Co., Inc., et al., Civil Action No. 05-571-JMH (London Division) [DE #19]; Londis Meek, et al. v. Merck & Co., Inc., et al., Civil Action No. 05-572-JMH (London Division) [DE #22]; Gary W. Hall, et al. v. Merck & Co., Inc., et al., Civil Action No. 05-584-JMH (London Division) [DE #19]; Kathleen Harp v. Merck & Co., Inc., et al., Civil Action No. 05-585-JMH (London Division) [DE #19]; and Jerma Madon, et al. v. Merck & Co., Inc., et al., Civil Action No. 05-592-JMH (London Division) [DE #20].  As such, the Court will grant the motions to remand and remand the actions to the appropriate state court.

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

    (1)    the opinion of Chief Judge Joseph M. Hood entered in the cases cited above is ADOPTED as and for the opinion of the Court in the present cases;

    (2)    the plaintiffs' motion to remand [DE #7] in Civil Action No. 5:05-423-KSF is GRANTED; that all other pending motions are DENIED as MOOT; and that this action is REMANDED to the Madison County, Kentucky, Circuit Court;

-3-

(3)     the plaintiffs' motion to remand [DE #7] in Civil Action No. 5:05-
        433-KSF is GRANTED; that all other pending motions are
        DENIED as MOOT; and that this action is REMANDED to the
        Fayette County, Kentucky, Circuit Court;

(4)     the plaintiffs' motion to remand [DE #7] in Civil Action No. 5:05-
        434-KSF is GRANTED; that all other pending motions are
        DENIED as MOOT; and that this action is REMANDED to the
        Fayette County, Kentucky, Circuit Court; and

(5)     the plaintiffs' motion to remand [DE #7] in Civil Action No. 5:05-
        449-KSF is GRANTED; that all other pending motions are
        DENIED as MOOT; and that this action is REMANDED to the
        Fayette County, Kentucky, Circuit Court.

This ___13th___ day of January, 2006.

                                    _____KSF_____
                                    KARL S. FORESTER, SENIOR JUDGE

-4-

LEXSEE

**MEDICAL DISTRIBUTION, INC., PLAINTIFF v. QUEST HEALTHCARE, INC., and MICHAEL CARLOW, DEFENDANTS**

CIVIL ACTION NO. 3:00CV-154-H

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, LOUISVILLE DIVISION

*2002 U.S. Dist. LEXIS 1692*

**February 1, 2002, Decided**

**DISPOSITION:** [*1] Defendant Quest Healthcare, Inc.'s motion for vacatur DENIED. Defendant Michael Carlow's motion for vacatur SUSTAINED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The court entered a default judgment against defendant healthcare corporation and individual on breach of contract and fraud claims of plaintiff distribution corporation. Subsequently, the distribution corporation successfully executed on the original judgment through proceedings in Florida. The healthcare corporation and the individual moved to vacate those judgments as void for lack of personal jurisdiction.

**OVERVIEW:** The court held that it could exercise personal jurisdiction over the healthcare corporation and the individual, and that its judgments and orders as to them were valid and enforceable. The healthcare corporation contended that the relationship between the parties was too attenuated to indicate purposeful availment by the healthcare corporation. However, the facts, essentially uncontroverted, indicated that the healthcare corporation reached out to the distribution corporation and created a continuing relationship and obligations with a Kentucky corporation, and thus purposefully availed itself of the privilege of acting in Kentucky. Also, the court held that exercising its jurisdiction was not unduly onerous on the healthcare corporation. The distribution corporation failed to allege facts sufficient to suggest that the healthcare corporation was an alter ego of the individual. Thus, the individual did not have minimum contacts with Kentucky.

**OUTCOME:** The healthcare corporation's motion for vacatur based on the absence of personal jurisdiction was

denied. The individual's motion for vacatur based on the absence of personal jurisdiction was sustained.

**LexisNexis(R) Headnotes**

*Civil Procedure > Early Pretrial Judgments > Default > Relief From Default*

[HN1] *Fed. R. Civ. P. 60(b)(4)* provides that a court may relieve a party from a final judgment, order, or proceeding if the judgment is void. Notwithstanding the use of the word may, which indicates that the court reserves discretion, a void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside.

*Civil Procedure > Early Pretrial Judgments > Default > Relief From Default*

[HN2] While *Fed. R. Civ. P. 60(b)* requires motions under *Fed. R. Civ. P. 60(b)(1)*, (2), and (3) to be made not more than one year after the judgment challenged, motions under *Fed. R. Civ. P. 60(b)(4)* are excepted, and thus may be brought at any time. This is true even in situations where the defendants have failed to answer, and thus, made no challenge to personal jurisdiction prior to default judgment being entered against them.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN3] Courts have generally held that defects in personal jurisdiction are not waived by default when a party fails to appear or to respond.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*



EXHIBIT

J

2002 U.S. Dist. LEXIS 1692, *

[HN4] *Fed. R. Civ. P. 12(h)(1)(B)* provides that a challenge to personal jurisdiction is waived if it is neither made by motion nor included in a responsive pleading or an amendment thereof.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN5] General appearance by a defendant does not constitute a waiver of the defense of lack of jurisdiction over the person.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] In determining whether personal jurisdiction exists over a nonresident defendant in a diversity case, a district court applies the law of the state in which it sits subject to due process limitations. That law is Kan. Stat. Ann. § 454.210(2)(a), which, in pertinent part, provides that a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's transacting any business in the Commonwealth.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN7] The Kentucky long-arm statute's limits are coextensive with the boundaries of the due process clause. Well-settled United States Supreme Court jurisprudence requires that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN8] There is a three-part test to determine whether minimum contacts are present: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN9] The requirement of purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Indeed, the defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. Determination of purposeful availment requires no mechanical test, but rather a highly realistic evaluation of the parties prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN10] In the context of ascertaining personal jurisdiction under the Kentucky long-arm statute, there is a distinction between nonresident buyers and nonresident sellers. On the one hand the non-resident seller is actively promoting the sales of its products in the forum state and invoking the benefits and protections of its laws while the non-resident purchaser occupies a passive role and usually enjoys no particular privilege or protection in purchasing products from a resident seller.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN11] Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN12] Where a court has found that purposeful availment and a consequent cause of action exist, an inference arises that this third factor of reasonableness is also present. A court must consider several factors in this context, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN13] In the context of a choice of law analysis, Kentucky has a legitimate interest in seeing that its citizens receive compensation for their injuries, especially when the brunt of the injury may be felt in Kentucky, that is, upon a Kentucky corporation.

2002 U.S. Dist. LEXIS 1692, *

*Contracts Law > Defenses > Fraud & Misrepresentation*

[HN14] Fraudulent inducement of contract occurs where one party to a contract knows that the other relies on him to disclose all facts material to execution thereof, and the duty rests on him not to conceal anything material to the bargain. The circumstances and the allegations raise difficult issues about the extent to which an individual subjects himself to personal jurisdiction by acting through a corporation.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN15] A court may exercise personal jurisdiction over a corporate agent who was actively and personally involved in conduct in the forum state giving rise to the claim.

**COUNSEL:** For MEDICAL DISTRIBUTION, INC., plaintiff: Thomas W. Frentz, Dennis D. Murrell, James R. Robinson, Middleton & Reutlinger, Louisville, KY.

For QUEST HEALTHCARE, INC., defendant: John K. Bush, Elizabeth S. Gray, Greenebaum Doll & McDonald, Louisville, KY.

**JUDGES:** JOHN G. HEYBURN II, CHIEF JUDGE, U.S. DISTRICT COURT.

**OPINIONBY:** JOHN G. HEYBURN

**OPINION:**

### MEMORANDUM OPINION

This case comes before the Court in an unusual posture. In September 2000, the Court entered a default judgment in the amount of $ 98,630 against Defendants Quest Healthcare, Inc. ("Quest"), and Michael Carlow ("Carlow") on the breach of contract and fraud claims of Plaintiff Medical Distribution, Inc. ("MDI"). In July 2001, the Court held Carlow in contempt of court for failing to appear at a deposition scheduled as part of post-judgment discovery. Subsequently, Plaintiff has successfully executed on the original judgment through proceedings in Florida. Defendants now move the Court to vacate [*2] those judgments as void for lack of personal jurisdiction pursuant to *Fed.R.Civ.P. 60(b)(4)*. The motion raises difficult questions about the scope of this Court's personal jurisdiction.

#### I.

Defendant Quest is a Florida corporation with its principal place of business in Florida. Defendant Carlow, also a Florida citizen and resident, is the registered agent

for and a principal of Quest. Between September 1998 and April 1999, Quest ordered certain blood-related medical products from Plaintiff, a Kentucky corporation engaged in the sale and shipment of blood-related medical products, by calling a toll-free number which Plaintiff operated in Kentucky. During this seven-month span, Quest placed thirty-two orders with MDI, worth approximately $ 1.32 million in sum. MDI fulfilled the orders by shipping the purchased products from one of its three warehouses, two of which are in Kentucky, to Quest in Florida. MDI claims that it delivered to Quest certain items -- totaling $ 98,630.00 in value -- for which Quest has never paid. Additionally, MDI alleges that, before it contracted with Quest, it previously had transacted business with another corporation operated by and on behalf of Carlow, [*3] that this corporation was delinquent in payment, and that MDI would never have engaged in business with Quest absent security for payment had it known that Carlow was a principal in Quest. MDI claims that Quest and Carlow defrauded MDI by concealing this fact.

MDI filed suit in this Court against Quest and Carlow in March 2000, and served Carlow with process. Neither Quest nor Carlow answered MDI's complaint, and the Court consequently entered a default order and judgment. Defendants now challenge these orders.

#### II.

[HN1] *Fed.R.Civ.P. 60(b)(4)* provides that a court "may relieve a party . . . from a final judgment, order, or proceeding [if] the judgment is void." Notwithstanding the use of the word "may," which indicates that the Court reserves discretion, "[a] void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside." *Jordon v. Gilligan, 500 F.2d 701, 704 (6th Cir. 1974)* (citation omitted); *see also* Wright and Miller, *Federal Practice and Procedure*, Civil 2d § 2862 (1995).

[HN2] While Rule 60(b) requires motions under subsections (1), (2), and (3) to be made not more than one [*4] year after the judgment challenged, motions under subsection (4) are excepted, and thus may be brought at any time. *See* Wright and Miller, *supra; see also United States v. Studak, 1994 U.S. Dist. LEXIS 12959, *4-*5 (E.D. Mich. 1994)* (permitting motion for vacatur nearly six decades after judgment entered). This is true even "in situations where the defendants have failed to answer and thus made no challenge to personal jurisdiction prior to default judgment being entered against them." *Rockwell Int'l Corp. v. KND Corp., 83 F.R.D. 556, 559 (N.D. Tex. 1979); see also Reynolds v. International Amateur Athletic Fed'n, 23 F.3d 1110, 1120 (6th Cir. 1994)* ("[HN3] courts have generally held that defects in personal jurisdiction . . . are not waived by

2002 U.S. Dist. LEXIS 1692, *

default when a party fails to appear or to respond.") (quotation, citation omitted).

Plaintiff says that Carlow's failure to challenge the Court's jurisdiction at his deposition on September 24, 2001, constitutes a waiver of his right and that of Quest to pose such a challenge. However, [HN4] *Fed.R.Civ.P. 12(h)(1)(B)* says otherwise. It provides that a challenge to personal jurisdiction is waived [*5] "if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof . . ." Certainly, Defendants raised this issue in their motion, dated November 15, 2001, to set aside the Court's prior judgments.

Citing *Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994 (1st Cir. 1983)*, Plaintiff next argues that Carlow's appearance at deposition was the functional equivalent of a responsive pleading. Having reviewed *Marical Ucin,* in which the defendant's counsel attended thirteen depositions and waited four years before invoking his client's due process right of personal jurisdiction, the Court is not persuaded that Carlow waived this right, on his own behalf or on behalf of Quest. Carlow attended one deposition and Defendants timely moved thereafter for vacatur. Indeed, *Marical Ucin* notes explicitly that [HN5] "general appearance by a defendant does not constitute a waiver of the defense of lack of jurisdiction over the person." *Id. at 997* (citation omitted). Only because, in that case, the defendant's tactics were "dilatory and inconsistent with its assertion of lack of in personam jurisdiction" did the First Circuit [*6] make an exception to this rule. *Id.*

These Defendants had notice of the lawsuit and intentionally declined to answer. This was a great risk and it has some consequences. n1 However, under federal law each Defendant may challenge the Court's jurisdiction over their persons even after entry of default judgment and execution on that judgment.

n1 By neglecting to contest Plaintiff's allegations in court and opting instead to challenge the Court's jurisdiction after final judgment, Defendants have conceded the verity of the complaint's substantive allegations. *Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)* ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . ."); *In re Evans, 1999 Bankr. LEXIS 1921, *3* (Bankr. E.D. Ky. 1999) ("failure to respond operates . . . as an admission of the well-pleaded factual allegations contained in the complaint.") (citing *Nishimatsu*).

III.

The Court considers first [*7]  whether it had personal jurisdiction over Quest. The parties differ over who bears the burden of showing personal jurisdiction or lack thereof in the context of a Rule 60(b)(4) motion. So do the courts. n2 In any event, both parties have thoroughly briefed the issue of jurisdiction and the Court is able to adjudicate this case without deciding this question.

n2 See, e.g., *Rockwell Int'l Corp., supra, at 559, n.1* (placing burden on Rule 60(b)(4) movant "would reverse the normal placement when a party challenges the existence of in personam jurisdiction through a Rule 12 motion to dismiss. . . . It is the plaintiff who must shoulder the task of showing facts that permit an affirmative jurisdictional finding, a burden that may not be shifted.") (citation omitted); compare with *Rohm & Haas Co. v. Aries, 103 F.R.D. 541, 544 (S.D.N.Y. 1984)* ("Should the burden of proof be lodged with the plaintiff, severe prejudice can result when evidence needed to prove jurisdiction is no longer available due to the passage of time. Accordingly, it is not unfair to place the burden on a defendant who has chosen to contest jurisdiction after judgment under Rule 60(b) rather than at the time of trial pursuant to Rule 12. This, of course, presumes that defendant was on notice at the time of the original proceedings.") *See generally* Theresa L. Kruk, *Who Has Burden of Proof in Proceeding Under Rule 60(b)(4) of Federal Rules of Civil Procedure to Have Default Judgment Set Aside on Ground that it is Void for Lack of Jurisdiction, 102 A.L.R. Fed. 811 (1991).*

[*8]

[HN6] "In determining whether personal jurisdiction exists over a nonresident defendant in a diversity case, a district court applies the law of the state in which it sits subject to due process limitations." *Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980).* That law is *K.R.S. § 454.210(2)(a),* which, in pertinent part, provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . transacting any business in this Commonwealth."

[HN7] The Kentucky "long-arm" statute's limits are "coextensive with the boundaries of the due process clause." *Davis H. Elliot Co. v. Caribbean Utilities Co., 513 F.2d 1176, 1180-81 (6th Cir. 1975).* Well-settled Supreme Court jurisprudence requires that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must]

2002 U.S. Dist. LEXIS 1692, *

have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)* [*9]  (quotation, citation omitted). The Sixth Circuit has employed [HN8] a three-part test to determine whether such minimum contacts are present:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)* (footnote omitted). [HN9] The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* (quotations, citations omitted). Indeed, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id. at 474.* [*10]  Determination of purposeful availment requires no mechanical test, but rather a "highly realistic" evaluation of the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . ." *Id. at 478-79.*

[HN10] In the context of ascertaining personal jurisdiction under the Kentucky long-arm statute, the Court of Appeals of Kentucky has noted a distinction between nonresident buyers and nonresident sellers:

> On the one hand the non-resident seller is actively promoting the sales of its products in the forum state and invoking the benefits and protections of its laws while the non-resident purchaser occupies a passive role and usually enjoys no particular privilege or protection in purchasing products from a resident seller.

*First National Bank of Louisville v. Shore Tire Co., 651 S.W.2d 472, 473 (Ky. Ct. App. 1982)* (citations omitted). In *Shore Tire*, the Court of Appeals noted its holding in *Tube Turns Div. of Chemetron Corp. v. Patterson Co., 562 S.W.2d 99 (Ky. Ct. App. 1978),* that jurisdiction over a nonresident buyer was inappropriate [*11]  where, on the basis of negotiations by mail and telephone, the buyer had placed a single, not particularly large order for goods which the resident seller had not specially manufactured.

However, in *Shore Tire* the Court found that personal jurisdiction existed over a nonresident buyer who had engaged with a resident seller in a continuing business relationship which "involved a number of transactions over an extended period of time." *651 S.W.2d at 473.* Our case resembles *Shore Tire* more than it resembles *Tube Turns*, because Quest placed multiple orders over a period of time for a cumulatively substantial amount of money.

Quest avers that *Shore Tire* is inapposite because Quest ordered from the American Red Cross, not MDI, and that consequently the relationship between the parties is too attenuated to indicate purposeful availment by Quest. As evidence of this, however, Quest offers only a general affidavit by Carlow based upon the supposed knowledge of third parties. This self-serving hearsay affidavit does not change the objective facts of an ongoing relationship between MDI and Quest. MDI operated the toll-free telephone line which Quest called on numerous [*12]  occasions to place orders. MDI sent sales invoices to Quest. While each invoice features the trademark of the American Red Cross, the maker and addressor is clearly MDI. The top of the invoice shows the MDI trademark, the Kentucky business address of MDI, and the admonition to make checks payable to MDI. Quest received numerous product shipments from Kentucky. The Court finds it inconceivable that Quest, throughout the duration of its seven-month relationship with MDI, was unaware that it was engaged in an ongoing business relationship with a Kentucky corporation.

In *Burger King, supra,* the Supreme Court emphasized that [HN11] "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *471 U.S. at 462* (quotation, citation omitted). The facts, essentially uncontroverted, indicate that Quest reached out to MDI and created a continuing relationship and obligations with a Kentucky corporation, and thus purposefully availed itself of the privilege of acting in Kentucky.

The Court must now decide whether [*13] its exercise of jurisdiction is reasonable. The Sixth Circuit Court of Appeals has noted that [HN12] where a court has found that purposeful availment and a consequent cause of action exist, meeting the first two prongs of the test in *Mohasco, supra,* "an inference arises that this third factor [of reasonableness] is also present. A court must consider several factors in this context, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996) (quotation, citations omitted).

At this juncture, the burden on Quest to submit to jurisdiction is not unduly onerous. Because Quest has admitted by default to MDI's allegations, there are no issues of fact to be litigated and thus no trial is necessary. Clearly, MDI has a substantial interest in obtaining relief, and just as clearly, [HN13] "Kentucky has a legitimate interest in seeing that its citizens receive compensation for their injuries, especially when . . . the brunt of the injury may be felt in [*14] Kentucky, that is, upon a Kentucky corporation." *Auto Channel, Inc. v. Speedvision Network, L.L.C.,* 995 F. Supp. 761, 766 (W.D. Ky. 1997). In fact, Kentucky has at least as much an interest in the resolution of the controversy as Florida has, and probably more.

Accordingly, the Court finds that it may exercise personal jurisdiction over Quest, and its judgments and orders as to Quest are valid and enforceable.

IV.

The Court now considers whether it properly exercised jurisdiction over Carlow. MDI alleges that Carlow misrepresented his affiliation with Quest, and that MDI relied on this misrepresentation to its detriment. The misrepresentation here is one of omission: neither Quest nor Carlow informed MDI of their connection with one another. By this omission, Defendants induced MDI to enter the business relationship with Quest. [HN14] Fraudulent inducement of contract occurs "where one party to a contract knows that the other relies on him to disclose all facts material to execution thereof, [and] the duty rests on him not to conceal anything material to the bargain . . ." *Faulkner Drilling Co. v. Gross,* 943 S.W.2d 634, 638 (Ky. Ct. App. 1997). [*15] The circumstances and the allegations raise difficult issues about the extent to which an individual subjects himself to personal jurisdiction by acting through a corporation.

Carlow argues that the fiduciary shield doctrine bars the Court from exercising personal jurisdiction based upon his acts as a corporate agent or fiduciary. The Sixth Circuit Court of Appeals has rejected the fiduciary shield doctrine, saying that [HN15] a court may exercise personal jurisdiction over a corporate agent who was actively and personally involved in conduct in the forum state giving rise to the claim. *Balance Dynamics Corp. v. Schmitt Industries, Inc.,* 204 F.3d 683, 697-98 (6th Cir. 2000). Carlow, however, has made no contacts with Kentucky, individually or acting in his corporate capacity. He made no direct representations in any capacity to MDI either in Kentucky or Florida. Indeed, MDI has not alleged that it relied upon any assurances or materially incomplete representations by Carlow in transacting business with Quest. Quest, not Carlow, reached out to Kentucky to make the alleged misrepresentations. Apparently, Quest employees other than Carlow made these minimum contacts with [*16] Kentucky. Consequently, Carlow's individual contacts with Kentucky fall far short of those necessary for it to sustain long-arm jurisdiction over him.

In such circumstances, one can find sufficient contacts by Carlow only by attributing Quest's corporate actions to Carlow. The Court can make such an attribution only if Quest is Carlow's alter ego. The Sixth Circuit has not specifically approved such an approach. However, at least one district court in this Circuit has endorsed the use of the alter ego theory to exercise personal jurisdiction. *See Warren v. Dynamics Health Equipment Mfg. Co.,* 483 F. Supp. 788, 792-93 (M.D. Tenn. 1980). This Court believes that such an approach makes common sense, and concludes that it may exercise personal jurisdiction over an individual premised on his corporate contacts with the forum state where the complaint alleges facts sufficient to prove that the corporation was a mere sham or where it served as an alter ego for the individual's benefit. *See also Weller v. Cromwell Oil Co.,* 504 F.2d 927, 931 (6th Cir. 1974).

In this case, however, MDI has not alleged facts suggesting Quest was an alter ego of Carlow. [*17] Rather, the complaint merely alleged that Carlow was a principal in Quest, an allegation which offers no grounds for piercing the corporate veil. Allegations that Carlow formed a legitimate Florida corporation for a fraudulent purpose constitute neither conduct sufficient to support any alter ego finding nor conduct in Kentucky sufficient to support personal jurisdiction over Carlow individually. Without allegations of alter ego, Carlow's mere knowledge of or direction of Quest's actions in Kentucky is not enough to support personal jurisdiction over him in this forum.

Because Defendant Carlow does not have minimum contacts with Kentucky, and the Court cannot impute Quest's minimum contacts to Carlow, it would be unreasonable for this Court to exercise personal jurisdiction over him.

The Court will enter an Order consistent with this Memorandum Opinion.

JOHN G. HEYBURN II

CHIEF JUDGE, U.S. DISTRICT COURT

**ORDER**

Defendants have moved the Court to vacate its default judgment of September 21, 2000, and its order of July 6, 2001, as void for lack of personal jurisdiction. For the reasons set forth in the accompanying Memorandum Opinion, and being otherwise sufficiently advised, [*18]

IT IS HEREBY ORDERED that the Court has personal jurisdiction over Defendant Quest Healthcare, Inc., and its motion for vacatur based on the absence of personal jurisdiction is DENIED.

IT IS FURTHER ORDERED that the Court does not have personal jurisdiction over Defendant Michael Carlow, and his motion for vacatur based on the absence of personal jurisdiction is SUSTAINED. Therefore, the prior judgment and the contempt order as to Carlow are vacated.

This 1st day of February, 2002.

JOHN G. HEYBURN II

CHIEF JUDGE, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### FRANKFORT DIVISION

**Electronically Filed**

**VIRGINIA A. HENDERSHOT, and**
**MICHAEL S. HENDERSHOT, spouse**                    **PLAINTIFFS**

**v.**                                  **Civil Action No. 3:05-cv-00070**

**MERCK & CO., INC.,**
**JOHN DOE ONE, JOHN DOE TWO,**
**JAMES H. HEAPHY, M.D., VIRGINIA MORRIS, ARNP,**
**and CAPITAL FAMILY PHYSICIANS, P.S.C.**            **DEFENDANTS**

## ORDER

This matter is before the Court on motion of defendant Merck & Co., Inc., to vacate the remand order entered December 22, 2005, and to transfer the case file to *In re Vioxx Prods. Liab. Litig.* No. 1657.

This Court, having reviewed the papers filed in connection with this motion, and being otherwise sufficiently advised,

**HEREBY GRANTS THE MOTION.**

The remand order entered December 22, 2005, is hereby vacated.  The case file shall be transferred to *In re Vioxx Prods. Liab. Litig.* No. 1657.

Entered this _____ day of _____, 2006.

_____
JOSEPH M. HOOD, CHIEF JUDGE

Tendered by:

/s/ Susan J. Pope
_____
Susan J. Pope
FROST BROWN TODD LLC
250 West Main Street,  Suite 2700
Lexington, Kentucky 40507-1749

LEXLibrary 0106603.0537031 288914v.1