IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX ) | MDL Docket No. 1657 |
| Products Liability Litigation ) | |
| ) | SECTION L |
| ) | |
| This Document Relates to: ) | JUDGE FALLON |
| ) | |
| Margaret Hadley, et al., ) | MAGISTRATE JUDGE KNOWLES |
| Plaintiffs, ) | |
| v. ) | |
| Merck & Co., Inc., et al., ) | |
| Defendants. ) | |
| CASE NO.: 05-4775 ) | |

**PLAINTIFFS' RENEWED MOTION TO REMAND, PURSUANT TO 28 U.S.C. §1447(c), AND INCORPORATED MEMORANDUM IN SUPPORT OF SAME**

COME NOW Plaintiffs, Margaret Hadley, Harold Perine, and Willie Mae Smith, and file their Renewed Motion to Remand, pursuant to 28 U.S.C. § 1447(c), and Incorporated Memorandum in Support of Same. Plaintiffs move this Court to remand the above-styled cause back to the Circuit Court of Mobile County, Alabama. As grounds for this motion, Plaintiffs show unto the Court the following:

Procedural Background

1. On July 1, 2005, Plaintiffs filed a Complaint naming as Defendants, Merck & Company, Inc., Paul Fellers, M.D., Charles Sherman, M.D., Adolf Isom, M.D. and William Hicks, III, M.D.

2. On August 11, 2005, Defendant, Merck & Company, Inc., filed a Notice of Removal to the United States District Court for the Southern District of Alabama, Southern Division.

3.  On August 22, 2005, Plaintiffs filed a Motion to Remand in the United States District Court for the Southern District of Alabama, Southern Division.

4.  The following day, the Federal District Court of Alabama ordered that Plaintiffs' Motion to Remand be stayed pending the MDL's panel's determination on whether this action was to be transferred to the Eastern District of Louisiana.

5.  On November 21, 2005, a Conditional Transfer Order was entered from the MDL's panel transferring this action to the Eastern District of Louisiana.

## The Complaint

1. On July 8, 2005, in the Circuit Court of Mobile County, Alabama, plaintiffs commenced this civil action by filing a complaint. The named-party defendants were Merck & Co., Inc.; Paul Fellers, M.D.; Charles Sherman, M.D.; Adolf Isom, M.D.; and William Hicks, III, M.D.

2. In the complaint, Dr. Fellers and Dr. Sherman are both described as "a treating physician [who] prescribed the brand-name prescription drug, Vioxx to" Margaret Hadley. Complaint ¶¶ 5-6.

3. In the complaint, Dr. Isom is described as "a treating physician [who] prescribed the brand-name prescription drug, Vioxx (rofecoxib) to" Harold Perine. Complaint ¶ 7.

4. In the complaint, Dr. Hicks is described as "a treating physician [who] prescribed the brand-name prescription drug Vioxx (rofecoxib) to" Willie Mae Smith. Complaint ¶ 8.

5. In the complaint, the plaintiffs stated that they all resided in Alabama. Complaint ¶¶ 1-3. It was further stated that all four doctors were licensed in the State of Alabama and did business in Mobile County, Alabama. Complaint ¶¶ 5-8.

6. Count VIII of the Complaint is entitled "Medical Malpractice" and asserts a medical-negligence claim against Drs. Fellers, Sherman, Isom, and Hicks. Complaint ¶¶ 57-61. Specifically, it is alleged these physicians "negligently, wantonly and/or wrongfully prescribed and/or provided samples of the brand-name prescription drug Vioxx to the plaintiffs with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx" and that, "[i]f Merck informed [the physicians] of [the cardiovascular risks associated with Vioxx ingestion, these physicians] negligently failed to inform plaintiffs of those risks." Complaint ¶ 61.

### Notice of Removal

7. On August 11, 2005, Merck filed a Notice of Removal.

8. Merck asserted a single source of federal subject-matter jurisdiction, namely diversity-of-citizenship jurisdiction. Notice of Removal ¶¶ 3-4.

9. Merck noted that, in the complaint, the citizenship of Dr. Fellers, Sherman, Isom, and Hicks is not alleged. Notice of Removal at 3 n.1. In its notice, Merck does not allege or show that any of these four physicians is not a resident of Alabama, as suggested by the plaintiffs' allegations that each physician is licensed to practice medicine in Alabama and practices medicine in Mobile County, Alabama, and that the plaintiffs were treated by these physicians in Mobile County, Alabama.

3

10.     Merck contended that, as to the issues of removal jurisdiction and subject-matter jurisdiction, Drs. Fellers, Sherman, Isom, and Hicks can be ignored because each physician was fraudulently joined as a party-defendant. Notice of Removal ¶¶ 9-19.

## General Legal Principles

11.     Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994).

12.     Removal statutes must be strictly construed because Congressional intent in enacting removal legislation was to restrict removal jurisdiction. Shamrock Oil & Gas Corp. v. Streets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 2d 1214 (1921); Lane v. Champion Internat'l Corp., 827 F. Supp. 701, 705 (S.D. Ala. 1993).

13.     Because federal removal jurisdiction is very limited, the remanding of a removed case is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." Klempner v. Northwestern Mut. Ins. Co., 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001)(citations omitted).

14.     The removing party bears the burden of demonstrating the existence of federal removal jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921); Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972

4

(11th Cir. 2002). The removing party has the burden of proving any asserted fraudulent joinder. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing evidence. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

15. In determining whether a colorable claim is asserted against a non-diverse defendant, the court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." Pacheo de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a court must] find that joinder was proper and remand [the] case to state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

## Physicians Are Not Fraudulently Joined

16. Merck proffered no evidence that, like the three plaintiffs, Drs. Fellers, Sherman, Isom, and Hicks are not Alabama residents.

17. In its notice, Merck wrote: "Specifically, in light of the factual allegations in the Complaint, 'there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse) defendants.['] Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)." Notice of Removal ¶ 10. Yet, Merck fails to demonstrate that, under Alabama substantive law, there is no possibility that these plaintiffs can recover monetary damages from Dr. Fellers, Sherman, Isom, and Hicks if the factual allegations in the complaint are proven.

5

18. Merck's arguments are predicated on its assertion that any "conclusionary allegations of the physician's knowledge are contradicted by specific allegations that the manufacturer defendant concealed information from the general public, including health care providers." Notice of Removal ¶ 12. Specifically, Merck argued that "Plaintiff's [sic] allegations regarding the knowledge of the physician defendants are wholly inconsistent with their theory that Merck misrepresented the dangers associated with Vioxx." Notice of Removal at 7.

19. Plaintiffs would first remind this Court that, in Count VIII, the medical-negligence count, they alleged (a) that the four physicians wrongfully prescribed and/or provided Vioxx "with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx" and (b) that, if Merck had adequately informed them of the known "cardiovascular risks associated with Vioxx ingestion," then the four physicians "failed to inform [the] plaintiffs of those risks." Complaint ¶ 61.

20. Clearly, the latter allegation presupposes that Merck fulfilled its obligation under the learned-intermediary doctrine to adequately inform treating physicians of the risks associated with Vioxx. By this latter allegation, the plaintiffs seek to hold the physicians legally accountable under a lack-of-informed-consent theory. Under Alabama substantive law, a physician must inform a patient of the significant perils associated with a course of treatment. Otwell v. Bryant, 497 So. 2d 111, 117-18 (Ala. 1986). The present plaintiffs allege that cardiovascular risks are significant perils associated with Vioxx that they should have been informed of in order that they could make an informed decision as to whether to accept their physician's recommendation to take Vioxx. In its notice, Merck never sought to demonstrate that an Alabama state court would grant a

Rule 12(b)(6)-based dismissal as to this lack-of-informed-consent theory asserted against Dr. Fellers, Sherman, Isom, and Hicks.

21. As to the first allegation in the medical-negligence count, Merck suggests that the present plaintiffs cannot alternatively argue (a) that Merck concealed material information from the treating physicians or (b) that the treating physicians knew sufficient information about Vioxx to appreciate that Vioxx should not have been prescribed to the present plaintiffs. While citing several opinions, Merck misrepresented critical information regarding some of the cited opinions and totally ignored numerous opinions that seriously undermine its suggestion.

22. In <u>In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation</u>, 220 F. Supp. 2d 414 (E.D. Pa. 2002), an opinion cited by Merck, in a single lawsuit, there were fifty named plaintiffs, and three physicians, Drs. Ditta, Yount, and Hersh, were named as defendants. Forty-eight of the plaintiffs were never treated by or had any contact with these three physicians. No plaintiff was treated by Dr. Hersh. Plaintiff Crystal Gatlin alleged that she had been treated by Dr. Ditta, and Plaintiff Verna Brown alleged that she had been treated by Dr. Yount. The trial court found that Dr. Hersh had been fraudulently joined as to all plaintiffs, that Dr. Ditta had been fraudulently joined except as to Gatlin, and that Dr. Yount had been fraudulently joined except as to Brown. 220 F. Supp. 2d at 422. Then, the trial court granted a remand as to Gatlin and Brown. Because Gatlin and Brown had been prescribed the subject diet drugs by a named defendant physician, as to them, there was no demonstration of fraudulent joinder. See also <u>Greene v. Wyeth</u>, 344 F. Supp. 2d 674 (D. Nev. 2004), wherein the court severed out the two plaintiffs who were treated by the physician named as a party-

7

defendant and remanded their claims back to state court. In <u>Diet Drugs</u> and <u>Greene</u>, the courts found that plaintiffs could simultaneously prosecute claims against manufacturer-defendants and treating physicians in scenarios such as the present matter.

23. Merck relies heavily on <u>In re Rezulin Prods. Liab. Litig.</u>, 133 F. Supp. 2d 272 (S.D.N.Y. 2001), and <u>In re Baycol Prods. Litig.</u>, 2003 WL 21223842 (D. Minn. May 27, 2003)(often referred to as "Spier"). In <u>Crone v. Pfizer, Inc.</u>, 2004 WL 1946386 (N.D. Cal. Sep. 1, 2004), the court specifically addressed Pfizer's fraudulent-joinder argument predicated on those two opinions:

> The Pfizer Defendants suggest that Plaintiffs' Complaint is internally inconsistent because it alleges that the Pfizer Defendants failed to warn prescribing physicians of the risks but also alleges that the physician failed to warn his patient of the risks. The Pfizer Defendants argue that by alleging the former, Plaintiffs refute the viability of the latter ....
>
> In both <u>Baycol</u> and <u>Rezulin</u>, the plaintiffs brought suit against pharmaceutical manufacturers and their prescribing physicians for injuries they sustained that they alleged were caused by the ingestion of a prescribed medication. The physicians in each case was a non-diverse defendant. In each case, the manufacturing defendants removed the action to federal court arguing that because the physician was fraudulently joined, the federal court had diversity jurisdiction. In each case, the district court agreed and denied the plaintiff's motion for remand, finding that the plaintiff had failed to establish a viable claim against the physician. Both courts found that the plaintiffs' claims that the pharmaceutical manufacturers had concealed material facts about the safety of the drugs from prescribing physicians refutes any allegation that the prescribing physicians knew or should have known about the risks.
>
> The Court is not persuaded to find that same result in the case at bar. In both <u>Baycol</u> and <u>Rezulin</u>, the district courts held that internally inconsistent pleadings in pharmaceutical products liability cases where the manufacturer and the prescribing physician are named

defendants support a finding of fraudulent joinder. However, in nearly identical circumstances, another court came to the opposite conclusion. In Ritchie v. Warner-Lambert Co., 2001 U.S. Dist. LEXIS 6783, at * 4-5 (E.D. La. 2001)[also found at 2001 WL 527501], the district court rejected the drug manufacturing defendants' argument that a physician cannot be liable for failure to warn where the complaint specifically alleges that the manufacturers represented to the physician that the drug was safe because "when a plaintiff sues multiple defendants, the allegations against the multiple defendants are often inconsistent." See also Barragon v. Warner-Lambert Co., 216 F. Supp. 2d 627 (W.D. Tex. 2002).

The difference between Ritchie and Barragon on the one hand, and Baycol and Rezulin on the other, seems to lie in the viability of the claim alleged against the non-diverse physician, not in the consistency or inconsistency of the pleadings across multiple defendants. For example, in Baycol, the court found that the plaintiff's complaint did not include any factual assertions to support the conclusory allegations that the physician knew or should have known of the risks. Similarly, in Rezulin, the court found that the plaintiffs "do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of [the drug]." Id. at 295. "That Mr. Oblena is even a physician is impossible to determine from the face of the complaint .... In fact, it is impossible to determine anything about Oblena, because he is not mentioned in the complaint, other than in the introduction. He is simply included in all of the allegations against 'defendants' in general." Id. at 294-95. In Ritchie, however, the court found that the plaintiff's claim that the physician failed to follow the drug's package insert instructions and warnings, failed to monitor and evaluate the patient for adverse effects of the drug, and failure to warn the patient of the risks were sufficient to establish a viable cause of action against the non-diverse defendant. The district court remanded the action to state court finding that the non-diverse physician had not been fraudulently joined and that removal was improper.

The Court finds that here, the cause of action that the Plaintiffs allege against [Dr.] Jennings most closely resembles the one alleged against the prescribing physician in Ritchie. Unlike the Baycol and Rezulin plaintiffs,

9

> Plaintiffs in the case at bar have asserted in their Complaint facts that support the allegation that Dr. Jennings knew or should have known that Neurontin was risky. As described above, Plaintiffs claim that Dr. Jennings owed the decedent specific duties to investigate any risks associated with ingesting Neurontin, to warn the decedent of any risks, to follow the instructions on the package insert, and to prescribe proper dosages and offer safer alternatives, and that Dr. Jennings breached those duties. ... The cause of action against the prescribing physician in the Baycol case was far more general and conclusory than the one at issue in this case. Plaintiffs here have also done far more than the plaintiff in Rezulin, who apparently did nothing more than name the prescribing physician as a defendant. The Court finds that as in Ritchie, Plaintiffs have alleged a viable cause of action for medical negligence against the prescribing physician.

2004 WL 1946386 at * 3-5.

24. With regard to the medical-negligence cause of action asserted against Drs. Fellers, Sherman, Isom, and Hicks, the present complaint is far more akin to the complaints in Crone, Ritchie, and Barragan than the complaints in Baycol and Rezulin. Drs. Fellers, Sherman, Isom, and Hicks are specifically identified as treating physicans who prescribed Vioxx to one of the plaintiffs. Moreover, a separate count is devoted to the treating physicians and the medical-negligence cause of action. Merck does not even suggest that an Alabama state court judge would grant a Rule 12(b)(6)-based dismissal of Count VIII.

25. No procedural rule bars the present plaintiffs from contending that, despite the alleged misconduct of Merck, the treating physicians possessed sufficient information to appreciate that prescribing Vioxx was contraindicated for Margaret Hadley, Harold Perine, and Willie Mae Smith. In the opinions discussed herein, other courts found no such procedural rule and held that a patient may simultaneously prosecute products-

liability claims against a drug company and a medical-negligence claim against the prescribing physician. In those instances where a court determined that the treating physician had been fraudulently joined, the complaint itself provided significant indications that the plaintiff was not serious about prosecuting any claim against the treating physician, for example, mentioning the treating physician only once in the complaint or not asserting a distinct medical-negligence claim. In the present matter, Merck pointed out no such significant indications but, instead, argued only that it is inconsistent to allege that Merck "deceived" the treating physicians and that the treating physicians knew, actually or constructively, of the risks or dangers associated with Vioxx. Merck's sole argument is inadequate to meet its heavy burden of demonstrating that Drs. Fellers, Sherman, Isom, and Hicks were fraudulently joined. A remand is appropriate and should be granted.

## Concluding Remarks

26. Removal jurisdiction is very restrictive. Therefore, remand is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. With regard to fraudulent joinder, a very heavy burden is imposed on the removing party to prove by clear and convincing evidence that a state court could not possibly find that the complaint states a cause of action against a named non-diverse defendant. There is a bias in favor of remand.

27. In the present matter, Drs. Fellers and Sherman treated Margaret Hadley and prescribed her Vioxx; Dr. Isom treated Harold Perine and prescribed him Vioxx; and Dr. Hicks treated Willie Mae Smith and prescribed her Vioxx. In Count VIII, the plaintiffs

asserted viable medical-negligence claims against Drs. Fellers, Sherman, Isom, and Hicks. Under Alabama substantive law, colorable claims have been asserted against these four physicians, whom Merck do not dispute are Alabama residents, like the plaintiffs. Other courts, applying the same basic principles that this Court must apply, have granted motions to remand in similar situations. The governing legal principles mandate a remand.

28. Margaret Hadley, Harold Perine, and Willie Mae Smith reserve the right to submit a memorandum brief in further support of their motion to remand.

WHEREFORE, PREMISES CONSIDERED, for the reasons stated herein, Margaret Hadley, Harold Perine, and Willie Mae Smith, move that this Court enter an order remanding the above-styled action back to the Circuit Court of Mobile County, Alabama.

Respectfully submitted,

Tom Dutton, Esq. (ASB-2059-U50T)
PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
Suite 1100, Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205)322-8880
(205)328-2711 (fax)
Email: phdkh-efiling@pittmanhooks.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing original Plaintiffs' Renewed Motion to Remand and Incorporated Memorandum in Support of Same has been served upon the Clerk of Court of the Eastern District of Louisiana, via Federal Express, and a copy has been served upon Liasion Counsel, Russ Herman, Esq. and Phillip Wittmann, Esq., via U.S. Mail, postage pre-paid and e-mail and upon all counsel by electronically uploading same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this the 9th day of March, 2006.

                                                  Tom Dutton, Esq. (ASB-2059-U50T)
                                                  Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | ) | MDL Docket No. 1657 |
| Products Liability Litigation | ) | |
| | ) | SECTION L |
| | ) | |
| This Document Relates to: | ) | JUDGE FALLON |
| | ) | |
| Margaret Hadley, et al., | ) | MAGISTRATE JUDGE KNOWLES |
| Plaintiffs, | ) | |
| v. | ) | |
| Merck & Co., Inc., et al., | ) | |
| Defendants. | ) | |
| CASE NO.: 05-4775 | ) | |

### NOTICE OF HEARING

Please take notice that the Plaintiffs, Margaret Hadley, Harold Perine and Willie Mae Smith's, Renewed Motion to Remand, pursuant to 28 U.S.C. §1447(c), and Incorporated Memorandum in Support of Same will be brought on for hearing on the 29th day of March, 2006, at 9:00 o'clock.

Respectfully submitted,

Tom Dutton, Esq. (ASB-2059-U50T)
PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
Suite 1100, Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205)322-8880
(205)328-2711 (fax)
Email: phdkh-efiling@pittmanhooks.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing original Notice of Hearing has been served upon the Clerk of Court, via U.S. Mail, postage prepaid, and a copy has been served on Liasion Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail and upon all counsel by electronically uploading same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this the 9th day of March, 2006.

                                                     Tom Dutton, Esq.
                                                     Attorney for Plaintiffs