

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 13  AM 5: 46

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | *  MDL No. 1657 |
| Products Liability Litigation | * |
| | *  SECTION L |
| This Document Relates to: | * |
| LOUISIANA HEALTH SERVICE | *  JUDGE ELDON E. FALLON |
| INDEMNITY COMPANY d/b/a | * |
| BLUE CROSS/BLUESHIELD OF | *  MAGISTRATE JUDGE |
| LOUISIANA on behalf of itself | *  DANIEL E. KNOWLES, III |
| and others similarly situated | * |
| Representative Plaintiff | * |
| | * |
| versus | * |
| | * |
| MERCK & CO., INC. | * |
| Defendant | * |
| | * |
| Case No. 05-0713 | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MERCK & CO., INC.'S PARTIAL MOTION
## TO DISMISS FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

Defendant Merck & Co., Inc. ("Merck") respectfully moves to partially dismiss Plaintiff

Louisiana Health Service Indemnity Company d/b/a Blue Cross/Blueshield of Louisiana's First

Supplemental and Amended Complaint ("Amended Complaint").  As set forth below, Plaintiff

has failed to state claims under Counts II and IV – VIII of the Amended Complaint.[1]

Accordingly, Merck respectfully requests that the Court dismiss those claims.

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
___ Doc. No._____

---

[1]    Merck is not moving at this time to dismiss Plaintiff's claims for subrogation (Count I) or strict liability and
failure to warn (Count III).  Accordingly, Merck has also timely filed an answer to Counts I and III.

The plaintiff in this case, Blue Cross/BlueShield of Louisiana ("BCBS"), is a third-party payor health insurance company. BCBS alleges that "Merck's deceptive and misleading marketing campaign concealed, omitted, and suppressed material and important information" regarding the "serious health risks associated with Vioxx use." (Am. Compl. ¶¶ 134, 135.) Specifically, BCBS alleges that "Vioxx significantly increases the incidence of. . . myocardial infarctions (heart attacks), ischemic strokes, hypertension, and deep vein thrombosis." (Am. Compl. ¶ 12.) BCBS further alleges that "Merck engaged in a successful, illegal fraud on consumers, third party payors and the general public" (*id.* at ¶ 139), and that "[p]laintiff would not have paid substantial sums for its plan members/insureds' Vioxx prescriptions or still more substantial sums for the medical expenses incurred due to those plan members/insureds' Vioxx-related injuries" had it known of the drug's alleged risks. (*Id.* at ¶ 141.)

Based on these allegations, BCBS purports to assert claims for (i) subrogation, (ii) redhibition, (iii) strict liability and failure to warn, (iv) breach of express warranty, (v) breach of implied warranty, (vi) violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), (vii) unjust enrichment, and (viii) "other state law theories of recovery." (*See* Am. Compl., generally.) Plaintiff primarily seeks two forms of relief: (1) "the return of the purchase price paid by Plaintiff for Vioxx prescriptions" (*id.*, Prayer for Relief, at 52), and (2) "all sums paid by Plaintiff for medical services for the treatment of persons injured by Vioxx." (*See id.*)

Under Federal Rule of Civil Procedure 12(b)(6), this Court should grant Merck's motion to dismiss if "'the pleadings on their face reveal beyond doubt that the plaintiff[ ] can prove no set of facts that would entitle [him] to relief,' or if 'an affirmative defense or other bar to relief appears on the face of the complaint.'" *Borskey v. Medtronics, Inc.*, No.94-3402, 1998 WL 122602, at *3 (E.D. La. March 18, 1998) (Fallon, J.) (quoting *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir.1991)).

That is precisely the case here.  As set forth below, even assuming the truth of Plaintiff's allegations regarding the alleged risks of Vioxx and Merck's conduct, Counts II, IV, V, VI, VII, and VIII nonetheless fail for several reasons.

First, Counts V-VIII fail as a matter of law because these claims are:  (a) preempted by the Louisiana Products Liability Act ("LPLA") to the extent BCBS seeks to recover its expenditures relating to allegedly injured beneficiaries; and (b) barred by the doctrine of "no injury, no tort" to the extent BCBS seeks to recover its Vioxx payments on behalf of beneficiaries who do *not* allege Vioxx-related injuries.[2]

Second, Plaintiff's redhibition (Count II) and warranty (Counts IV and V) claims must be dismissed because Plaintiff, as a third-party payor, is not a "buyer" of Vioxx.

Third, Plaintiff's express warranty claim (Count IV) fails under the LPLA because Plaintiff does not identify any express warranty made by Merck.

Fourth, Plaintiff's claim for violations of LUTPA (Count VI) must be dismissed because Plaintiff is neither a consumer nor a business competitor of Merck's within the meaning of LUTPA, has failed to allege causation pursuant to the learned intermediary doctrine, and has failed to plead the other elements of its LUTPA claim with the requisite particularity as well.

And finally, Plaintiff's cause of action for unjust enrichment (Count VII) fails to state a claim because Plaintiff has not pled that it has no other adequate remedy at law.

The reasons in support of this motion are more fully described in the accompanying memorandum in support, which is incorporated herein by reference.

---

[2]     Count VIII, for "other state law theories of recovery" fails for the additional, obvious reason that a plaintiff cannot pursue claims without identifying them.  *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("a complaint, which contains a 'bare bones' allegation that a wrong occurred does not provide adequate notice") (*quoting Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)); *see also Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (complaint "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'") (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).

For all the foregoing reasons, Merck & Co., Inc. respectfully requests that the Court grant its motion and dismiss claims Counts II and IV-VIII of the Amended Complaint.

Respectfully submitted,

Richard C. Stanley, 8487
Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY FLANAGAN & REUTER, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504)-523-1580
Facsimile: (504)-524-0069

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN,
L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504)-581-3200
Facsimile: (504)-581-3361

-and-

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck & Co., Inc.'s Partial Motion to Dismiss First Supplemental and Amended Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Order No. 8 on this 13 day of March, 2006.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL No. 1657 |
| Products Liability Litigation | * | |
| | * | SECTION L |
| This Document Relates to: | * | |
| LOUISIANA HEALTH SERVICE | * | JUDGE ELDON E. FALLON |
| INDEMNITY COMPANY d/b/a | * | |
| BLUE CROSS/BLUESHIELD OF | * | MAGISTRATE JUDGE |
| LOUISIANA on behalf of itself | * | DANIEL E. KNOWLES, III |
| and others similarly situated | * | |
| Representative Plaintiff | * | |
| | * | |
| versus | * | |
| | * | |
| MERCK & CO., INC. | * | |
| Defendant | * | |
| | * | |
| Case No. 05-0713 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MERCK & CO., INC.'S PARTIAL MOTION TO DISMISS FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

Defendant Merck & Co., Inc. ("Merck") respectfully submits this Memorandum in Support of its Partial Motion to Dismiss First Supplemental and Amended Complaint. As set forth below, Plaintiff Louisiana Health Service Indemnity Company d/b/a Blue Cross/Blueshield of Louisiana has failed to state claims under Counts II and IV-VIII of the Amended Complaint.[1] Accordingly, Merck respectfully requests that the Court dismiss those claims.

---

[1] Merck is not moving at this time to dismiss Plaintiff's claims for subrogation (Count I) or strict liability and failure to warn (Count III). Accordingly, Merck has also timely filed an answer to Counts I and III.

## BACKGROUND

The plaintiff in this case, Blue Cross Blue Shield of Louisiana ("BCBS"), is a third-party payor health insurance company. BCBS alleges that "Merck's deceptive and misleading marketing campaign concealed, omitted, and suppressed material and important information" regarding the "serious health risks associated with Vioxx use." (Am. Compl. ¶¶ 134-35.) Specifically, BCBS alleges that "Vioxx significantly increases the incidence of . . . myocardial infarctions (heart attacks), ischemic strokes, hypertension, and deep vein thrombosis." (*Id.* ¶ 12.) BCBS further alleges that "Merck engaged in a successful, illegal fraud on consumers, third party payors and the general public" (*id.* ¶ 139), and that "[p]laintiff would not have paid substantial sums for its plan members/insureds' Vioxx prescriptions or still more substantial sums for the medical expenses incurred due to those plan members/insureds' Vioxx-related injuries" had it known of the drug's alleged risks. (*Id.* ¶ 141.)

Based on these allegations, BCBS purports to assert claims for (i) subrogation, (ii) redhibition, (iii) strict liability and failure to warn, (iv) breach of express warranty, (v) breach of implied warranty, (vi) violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), (vii) unjust enrichment, and (viii) "other state law theories of recovery." (*See* Am. Compl., generally.) Plaintiff primarily seeks two forms of relief: (1) "the return of the purchase price paid by Plaintiff for Vioxx prescriptions" (*id.*, Prayer for Relief ¶ 3), and (2) "all sums paid by Plaintiff for medical services for the treatment of persons injured by Vioxx." (*See id.*)

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), this Court should grant Merck's motion to dismiss if "'the pleadings on their face reveal beyond doubt that the plaintiff[ ] can prove no set of facts that would entitle [him] to relief,' or if 'an affirmative defense or other bar to relief appears on the face of the complaint.'" *Borskey v. Medtronics, Inc.*, No.94-3402, No. 95-1733,

2

No. 95-2039, 1998 WL 122602, at *3 (E.D. La. March 18, 1998) (Fallon, J.) (quoting *Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991)).

That is precisely the case here. As set forth below, even assuming the truth of Plaintiff's allegations regarding the alleged risks of Vioxx and Merck's conduct, Counts II, IV, V, VI, VII, and VIII nonetheless fail for several reasons.

First, Counts V-VIII fail as a matter of law because these claims are: (a) preempted by the Louisiana Products Liability Act ("LPLA") to the extent BCBS seeks to recover its expenditures relating to allegedly injured beneficiaries; and (b) barred by the doctrine of "no injury, no tort" to the extent BCBS seeks to recover its Vioxx payments on behalf of beneficiaries who do ***not*** allege Vioxx-related injuries.[2]

Second, Plaintiff's redhibition (Count II) and warranty (Counts IV and V) claims must be dismissed because Plaintiff, as a third-party payor, is not a "buyer" of Vioxx.

Third, Plaintiff's express warranty claim (Count IV) fails under the LPLA because Plaintiff does not identify any express warranty made by Merck.

Fourth, Plaintiff's claim for violations of LUTPA (Count VI) must be dismissed because Plaintiff is neither a consumer nor a business competitor of Merck's within the meaning of LUTPA, has failed to allege causation pursuant to the learned intermediary doctrine, and has failed to plead the other elements of its LUTPA claim with the requisite particularity as well.

And finally, Plaintiff's cause of action for unjust enrichment (Count VII) fails to state a claim because Plaintiff has not pled that it has no other adequate remedy at law.

---

[2]     Count VIII, for "other state law theories of recovery," fails for the additional, obvious reason that a plaintiff cannot pursue claims without identifying them. *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("a complaint, which contains a 'bare bones' allegation that a wrong occurred . . . does not provide adequate notice" (quoting *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990))); *see also Dura Pharms., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (complaint "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

3

## I.   COUNTS V-VIII MUST BE DISMISSED BECAUSE THEY ARE EITHER PREEMPTED BY THE LPLA OR BARRED BY THE DOCTRINE KNOWN AS "NO INJURY, NO TORT."

As a threshold matter, Counts V though VIII (for breach of implied warranty, violations of LUTPA, unjust enrichment, and "other state law theories of recovery") fail because these claims are preempted as to a portion of BCBS's claims by the LPLA and as to the remainder of its claims by the doctrine of "no injury, no tort."

### A.   Plaintiff's Theories Of Relief In Counts V-VIII Are Preempted By The LPLA To The Extent It Seeks To Recover Personal Injury-Based Damages.

The main focus of the BCBS complaint relates to its health-care expenditures on behalf of beneficiaries who allegedly sustained physical injuries that were proximately caused by their use of Vioxx. Such claims, however, must be brought, if at all, under the Louisiana Products Liability Act ("LPLA"), which provides the exclusive theories of recovery for plaintiffs seeking damages for injuries caused by a manufacturer's product. La. Rev. Stat. Ann. § 9:2800.52 (2005). Thus, Plaintiff's implied warranty, unjust enrichment and LUTPA violations must be dismissed.

The LPLA "'establishes the exclusive theories of liability for manufacturers from damage caused by their products.'" *Stroderd v. Yamaha Motor Corp.*, 2005 WL 2037419, at *2 (E.D. La. August 4, 2005) (Fallon, J.) (quoting La. Rev. Stat. Ann. § 9:2800.52 (2005)); *Stanley v. Bayer, A.G.*, No. 05-541, 2005 WL 1846962, at *1 (W.D. La. July 28, 2005). Plaintiffs seeking to recover against a manufacturer for injuries caused by allegedly defective products must rely on one of the following four statutory categories, which are the exclusive theories of recovery against the product manufacturer: (1) defect in construction or composition; (2) defect in design; (3) inadequate warning; or (4) failure to comply with an express warranty. La. Rev. Stat. Ann. § 9:28000.54(B)(1)-(4) (2005). While Plaintiff's claims for failure to warn (Count III) and express warranty (Count IV) can be brought pursuant to the LPLA (*see* Am. Compl. ¶¶ 162, 167), and

4

the redhibition claim is preserved under the Act, *see* La. Rev. Stat. Ann. § 9:2800.52 (2005),[3] the other personal injury-based claims – breach of implied warranty (Count V), violations of LUTPA (Count VI), "other state law theories of recovery" (Count VII), and unjust enrichment (Count VIII) – fall outside the theories of recovery provided for by the LPLA and are therefore preempted.

Louisiana courts applying the LPLA routinely dismiss claims at the initial pleading stage against manufacturers that are inconsistent with the four exclusive theories provided for in the LPLA.  *See, e.g., Stroderd*, 2005 WL 2037419, at *2 (granting motion to dismiss claims for negligent repair and breach of contract as subsumed by the LPLA); *Borskey v. Medtronics, Inc.*, No. 94-3402, No. 95-1733, No. 95-2039, 1998 WL 122602, at *4-5 (E.D. La. March 18, 1998) (Fallon, J.) (granting motion to dismiss claims for fraud, negligence, strict liability, and breach of implied warranty as outside the scope of LPLA); *Stanley*, 2005 WL 1846962, at *1 (granting motion to dismiss claims of strict products liability, common law negligence, breach of implied warranty, misrepresentation, and failure to perform adequate testing as outside the scope of the LPLA); *Maurice v. Eli Lilly & Co.*, No. Civ. A. 04-3105, 2005 WL 3542902, at *4 (E.D. La. Nov. 7, 2005) (granting motion to dismiss claims for negligence, fraud, negligent misrepresentation, intentional misrepresentation, intentional infliction of emotional distress and non-economic damages based on a redhibition claim as outside the scope of the LPLA); *Cheeks*, 2003 WL 1748460, at *1 (Fallon, J.) (granting motion to dismiss "plaintiffs' claims for negligence, fraud, misrepresentation, non-economic damages in a redhibition claim, and punitive damages lack any basis to maintain a viable cause of action" due to LPLA preemption);

---

[3]    To the extent Plaintiff seeks personal injury damages based on a cause of action sounding in redhibition, that claim, too, is preempted by the LPLA. *See Cheeks v. Bayer Corp.*, No. Civ. A. 03-132, 2003 WL 1748460, at *1 (E.D. La. Mar. 28, 2003) (Fallon, J.) (under the LPLA "plaintiffs' claims for redhibition are viable only for economic losses and do not include personal injury damages." (citing *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997))).

*Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1251 (5th Cir. 1997) (affirming dismissal of claims of negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness and civil conspiracy as outside the scope of the LPLA). *See also Automatique New Orleans, Inc. v. U-Select-It, Inc.*, Civ. A. No. 94-3179, 1995 WL 491151, at *4 n.2 (E.D. La. Aug.15, 1995) (concluding plaintiff could not maintain an independent negligence claim because LPLA provided exclusive remedies); *Hopkins v. NCR Corp.*, Civ. A. No. 93-188-B-M2, 1994 WL 757510, at *2-3 (M.D. La. Nov. 17, 1994) (concluding strict liability under article 2317 not cognizable theory against manufacturer under the LPLA); *Avondale Indus. v. Tyco Valves & Controls, Inc.*, No. 01-2923, 2003 U.S. Dist. LEXIS 20329, at *4-5 (E.D. La. Nov. 7, 2003) (Fallon, J.) (holding that claims under the LPLA precluded plaintiff from bringing suit under LUTPA or claims arising in tort).

In *Jefferson,* the Fifth Circuit affirmed the district court's dismissal of certain claims that fell outside the LPLA in a case involving alleged damages caused by exposure to lead-based paint. The court clarified the exclusivity of the claims permitted by the LPLA, adopting the district court's reasoning that "[w]hile the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer." *Jefferson*, 106 F.3d at 1251. Likewise, in *Maurice v. Eli Lilly & Co.*, this Court reiterated the principle in the context of a product liability case involving allegations that defendants had "manufactured, marketed, sold, distributed, warranted, licensed and/or packaged" an allegedly unreasonably dangerous juvenile vaccine and "were deceptive in their marketing and failure to disclose the dangerousness of the product." 2005 WL 3542902, at *2. Because defendant Eli Lilly & Co. was "a

manufacturer under LPLA," *id.* at *4, the court granted a Rule 12(b)(6) motion with respect to all claims that fell outside the scope of the four exclusive theories of recovery under the LPLA. *Id.*

In its complaint, BCBS specifically alleges that it incurred medical expenses resulting from plan members'/insureds' physical injuries attributable to Vioxx use. (*See* Am. Compl. ¶ 145.)  BCBS also alleges that Vioxx was unreasonably dangerous within the meaning of the LPLA. (*See id.* ¶¶ 162, 167, 172.)  Because plaintiff's suit for personal injury-related damages falls within the ambit of the LPLA, all of its claims that are based on legal theories outside the act must fail.

**B.    To The Extent Plaintiff Seeks Refunds For Vioxx Prescriptions Issued To Beneficiaries With No Alleged Injury, Claims V-VIII Are Barred By The "No Injury, No Tort" Doctrine.**

As discussed above, the gravamen of Plaintiff's Amended Complaint is that it paid medical expenses related to alleged Vioxx-related injuries.  But to the extent Plaintiff seeks refunds for its Vioxx payments on behalf of individuals who allege *no* injury from Vioxx, as suggested by the Amended Complaint (*see* Am. Compl., Prayer for Relief ¶ 3), those claims are barred under the principle widely known as "[n]o injury, no tort." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (emphasis added).

As numerous courts have recognized, if a product "never exhibits an alleged defect, *no cause of action lies*" for tort or warranty claims. *Briehl v. GMC*, 172 F.3d 623, 628 (8th Cir. 1999) (emphasis added).  The "no injury, no tort" rule applies to nearly all causes of action Plaintiff wishes to pursue (*i.e.*, strict liability/failure to warn, consumer fraud, breach of warranty, negligence, and unjust enrichment). *See In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804 (E.D. La. 1998) ("[T]he absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved"); *Briehl*, 172 F.3d at 628 (dismissing claims for implied and express warranty,

fraudulent misrepresentation, fraudulent concealment, and violation of state consumer fraud statutes for failure to sufficiently allege a manifest defect); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998) ("[U]nless a product actually manifests the alleged defect, no cause of action for breach of express or implied warranty or fraud is actionable").

The Fifth Circuit has rejected an indistinguishable claim – *i.e.*, a third-party payor's lawsuit for refunds of the price it paid for an allegedly defective drug – on this very ground in *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002). As that court put it, those who are "not among the injured" have no cause of action, and "[m]erely asking for money" is insufficient to create one. *Id.* at 319-20. To the extent BCBS seeks refunds for Vioxx that did not allegedly harm anyone, it fares no better: Plaintiff cannot state a cognizable claim against Merck for its Vioxx payments under nearly all of its legal theories unless something allegedly went wrong with the Vioxx it paid for. Accordingly, since Plaintiff appears to seek refunds for *all* the Vioxx it ever covered, at least a portion of its claims under Counts V-VIII – *i.e.*, its claims related to insureds who did not allegedly suffer injuries from Vioxx – must be dismissed under the "no injury" doctrine.[4]

## II.   PLAINTIFF'S WARRANTY-BASED CLAIMS (COUNTS II, IV AND V) FAIL BECAUSE THIRD-PARTY PAYORS ARE NOT "BUYERS" OF VIOXX.

Plaintiff's three warranty-based causes of action – for redhibition (Count II), breach of express warranty (Count IV), and breach of implied warranty (Count V) (to the extent Count V survives the arguments set forth in section I, *supra*) -- fail as a matter of law because Plaintiff is not a "buyer" within the meaning of the Louisiana redhibition statute.[5] *See* La. Civ. Code Ann.

---

[4]      Merck assumes that Counts I and III only seek recovery with regard to allegedly injured beneficiaries.

[5]      In Louisiana, state law claims for breach of implied warranty are treated as cognizable only in an action for redhibition. *In re Ford Motor Co. Vehicle Paint Litigation*, No. MDL 1063, 1996 WL 426548, at *18 (E.D. La. July 30, 1996) ("Louisiana plaintiffs may only assert implied warranty claims in an action for redhibition."); *id.* (analyzing implied warranty claim as sounding in redhibition); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1995 WL 491155, at *7 (E.D. La. Aug. 15, 1995) ("plaintiffs' Louisiana state law claims for breach of implied warranty are cognizable only in an action for redhibition"); *In re: Ford Motor Co. Ignition Switch*

art. 2520 (2005) ("The existence of [a redhibitory] defect *gives a buyer the right to obtain rescission of the sale*." (emphasis added)); *see also id.* art. 2545 (2005) ("A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is *liable to the buyer* for the return of the price with interest from the time it was paid." (emphasis added).)  As Louisiana courts have recognized, a plaintiff asserting a redhibition claim must prove, *inter alia*, that "the seller sold the thing to him." *See McNeely v. Ford Motor Co.*, 763 So. 2d 659, 669 (La. Ct. App. 1999).[6]

For this reason, another MDL court, applying Louisiana law in a pharmaceutical case, recently concluded that BCBS could not avail itself of the remedies provided by Louisiana's redhibition statute. *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 599 (S.D.N.Y. 2005). Plaintiffs in the Rezulin litigation, one of which was BCBS, alleged that "Warner-Lambert Company . . . misrepresented the safety and efficacy of Rezulin, an oral drug for treating type 2 diabetes that was introduced in March 1997 and withdrawn in March 2000 after the FDA determined that its risk of causing liver injury was unacceptable given the existence of safer alternatives." *Id.* at 599 (footnote omitted).  Similar to BCBS here, the plaintiffs sought damages in the form of "the difference between the amounts they paid for Rezulin and the lesser amounts they would have paid for better alternative drugs."  *Id.*  In rejecting these claims, the court concluded that third-party payors such as BCBS of Louisiana cannot avail themselves of redhibition claims because the "plain terms of the redhibition statute give the cause of action to a

---

*Products Liability Litigation*, Nos. 96-3125(JBS), 96-1814(JBS), 96-3198(JBS), 2001 WL 1266317, at *15 (D.N.J. Sept. 30, 1997) ("a Louisiana plaintiff bringing claims akin to breach of warranty must bring those claims under the Louisiana 'redhibition' statute"); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 611 (S.D.N.Y. 2005) (analyzing warranty and redhibition claims and observing that in Louisiana redhibition "is analogous to breach of warranty"); *PPG Indus., Inc. v. Indus. Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir. 1982) ("[C]ourts in Louisiana have held unequivocally that actions based on a breach of warranty against defects are to be brought in redhibition instead of as a breach of contract.").

[6]        Louisiana defines a sale as "a contract whereby a person transfers ownership of a thing to another for a price in money," La. Civ. Code Ann. art. 2439 (2005), and ownership as "the right that confers on a person direct, immediate, and exclusive authority over a thing." *Id.* art. 477 (2005).

buyer," *id.* at 611, and third-party payors are not "buyers" within the meaning of the statute. The court reasoned that the third-party payors never gained "ownership of the drug within the meaning of the Louisiana Civil Code" and noted that the plaintiffs failed to cite any authority "for the proposition that in Louisiana, one who supplies part of the payment for a good thereby becomes a buyer of it." *Id.* Accordingly, the court concluded that the third-party payors were not buyers within the meaning of the redhibition statute and could not maintain an action for redhibition. *Id. Cf. House v. AGCO Corp.*, No. Civ. A. 05-1676, 2005 WL 3440834, at *2 (W.D. La. Dec. 14, 2005) ("[T]he redhibition articles speak of claims by a *buyer* against a *seller* based on defects in a thing *sold*. Perhaps there is legal authority to assert a redhibition claim in the *lease* context, but neither party has cited such authority." (emphasis in original)).

The same is true here. BCBS is no more a buyer of Vioxx in this instance than it was a buyer of Rezulin. Because BCBS does not allege that it purchased and took possession of Vioxx, it does not have a remedy under the redhibition statute. For this reason alone, Counts II, IV and V should be dismissed.

## III.   PLAINTIFF'S EXPRESS WARRANTY CLAIM (COUNT IV) FAILS UNDER THE LPLA BECAUSE PLAINTIFF DOES NOT IDENTIFY AN EXPRESS WARRANTY.

Plaintiff's Amended Complaint suggests that Plaintiff may have intended to bring its express warranty claim pursuant to the LPLA rather than the redhibition statute. (Am Compl. ¶ 167.) Even so, however, the claim would fail because BCBS has not identified any express warranty made by Merck regarding Vioxx. Under the LPLA, "a finding that a product is unreasonably dangerous because of a nonconformity with an express warranty requires an express warranty by the manufacturer that induced the claimant to use the product." *Ditmar Hosp. v. Hartford Ins. Co.*, No. 99-31409, 2000 WL 1741580, at *4 (5th Cir. Nov. 9, 2000) (citing La. Rev. Stat. Ann. § 9:2800.58). The LPLA defines an express warranty as "a

representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance." La. Rev. Stat. Ann. 9:2800.53(6) (2005). An express warranty is not "a general opinion about or general praise of a product." *Id.*

Plaintiff cannot satisfy this requirement because it has not identified any express warranty made by Merck regarding Vioxx. Nowhere in the Amended Complaint does Plaintiff identify a representation by Merck that comports with the LPLA's definition of express warranty; to the contrary, Plaintiff merely makes vague and generalized allegations regarding Merck's statements and other written materials about Vioxx (*see* Am. Compl. ¶¶ 168-69). *Cf. Dura Pharms., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (concluding that Fed. R. Civ. P. 8(a) requires more specificity in the context of allegations related to fraud and misrepresentation). Because Plaintiff has failed to identify any promise made by Merck regarding the safety and efficacy of Vioxx, its claim for breach of express warranty is barred as a matter of law even if brought under the LPLA. *See, e.g., Tauzier v. Dodge*, No. Civ. A. 97-2444, 1998 WL 227170, at *7 (E.D. La. May 5, 1998) (concluding plaintiff could not maintain a cause of action for breach of express warranty under the LPLA where plaintiff failed to provide any evidence of what express warranty induced her to purchase and use the allegedly defective product).

## IV. COUNT VI FAILS BECAUSE PLAINTIFF DOES NOT STATE A VALID CLAIM UNDER LUTPA.

Under LUTPA, "any person who suffers ascertainable loss of money as the result of the use by another person of an unfair or deceptive acts may bring an action individually but not in a representative capacity to recover actual damages." *Maurice v. Eli Lilly & Co.*, No. Civ. A. 04-3105, 2005 WL 3542902, at *4 (E.D. La. Nov. 7, 2005) (citing La. Rev. Stat. Ann. § 51:1409) (emphasis added). As discussed further below, Plaintiff's LUTPA claim fails because the only

11

"persons" with standing under the Act are "consumers" or "business competitors," and because it has not properly alleged causation – *i.e.*, that it suffered a loss "as a result" of Merck's alleged conduct.[7]

### A.   Plaintiff Has No Standing Under LUTPA Because It Is Neither A Business Competitor Of Merck's Nor A Consumer.

Plaintiff's claim under LUTPA (Count VI) fails because that statute extends only to claims brought by consumers or business competitors. *See Tubos de Acero de Mex., SA v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) ("[T]o have standing under LUTPA, [plaintiff] must demonstrate that it is either a consumer or a business competitor of [Merck]"); *see also Intra-Operative Monitoring Servs., Inc. v. Blue Cross/Blue Shield of Ala.*, No. Civ. A. 03-2829, 2004 WL 42635 (E.D. La. Jan. 5, 2004) ("Courts have narrowly interpreted LUTPA to provide a private right of action only for 'consumers and business competitors.'"); *Dorsey v. N. Life Ins. Co.*, No. Civ. A. 04-0342, 2005 WL 2036738, at *12 (E.D. La. Aug. 15, 2005) (concluding that plaintiff who was neither a consumer nor a business competitor could not maintain an action under LUTPA).

Under LUTPA, a "consumer" is defined as "any person who uses, purchases, or leases goods or services."   La. Rev. Stat. Ann. § 51:1402(1) (2005).  Interpreting LUTPA, the Fifth Circuit has held the Act only applies to persons who intend to use the product "'for personal, family, or household use.'"  *Cent. Healthcare Servs., Inc. v. Eterna Petersburg, Inc.*, No. Civ. A. 04-580, 2004 WL 1823036, at *2 (E.D. La. Aug. 16, 2004) (holding that "business entities" are

---

[7]   Even if Plaintiff's LUTPA claim could otherwise survive Rule 12 scrutiny, it would still fail as a matter of law for the further reason that Plaintiff's claims in the Amended Complaint fall short of the heightened pleading standards required for stating consumer fraud claims under Fed. R. Civ. P. 9(b).  *See In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) ("[t]he pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes.").   At a minimum, in order to satisfy this heightened pleading standard, each named plaintiff must allege with specificity "the who, what, when, where, and how" of the fraud that each allegedly experienced. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quotation omitted).  Plaintiff here fails on all scores – it does not allege who at Merck made the alleged misrepresentations, the specific contents of those misrepresentations, or where and when the misrepresentations were made.

not consumers as defined by the Act) (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 226 (5th Cir. 1991)).  On the other hand, to qualify as a business competitor under LUTPA, courts have held that a plaintiff "must actually or potentially engage in business that competes directly or indirectly" with defendant.  *Tubos de Acero de Mex.*, SA, 292 F.3d at 480.

Once again, the *Rezulin* MDL court's ruling in a similar case is directly on point.  There, the court concluded that BCBS could not recover under LUTPA because it was neither a consumer of Warner Lambert's product nor a competitor for Warner Lambert's business.  392 F. Supp. 2d 597, 615-16.  Specifically, the court observed that because there was simply no evidence that BCBS was a business competitor of Warner Lambert's, the only question was whether or not the health benefit provider was a consumer of Rezulin within the meaning of LUTPA.  The court concluded rightly that BCBS had neither purchased nor leased Rezulin from Warner Lambert for its own personal, family, or household use.  *Id.*  Because the same is true here, Count VI should be dismissed.

**B.    Plaintiff Has Failed To Adequately Plead Causation As Required By LUTPA.**

Plaintiff has also failed to state a claim under LUTPA because it does not properly allege that Vioxx caused its alleged injury, a requisite element of a LUTPA claim.  *See Specialty Diving, Inc. v. Master Builders, Inc.*, No. Civ. A. 02-0311, 2003 WL 22416381, at *3 (E.D. La. Oct. 22, 2003) ("To establish a cause of action under LUTPA, a plaintiff must show . . . that the defendant has engaged in unfair or deceptive trade practices *which caused the plaintiff a loss*.") (emphasis added).  As noted above (*see* n. 7, *supra*), consumer fraud allegations must be stated with specificity, including each required element for stating a claim under the Act.  *See, e.g., In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo.

1997).  Plaintiff's failure to properly allege causation – particularly given this higher pleading standard – further dooms its LUTPA claim.

The learned intermediary doctrine, which is well recognized under Louisiana law, provides that a drug manufacturer's duty to warn runs to the physician – not the consumer. *Cobb v. Syntex Labs.*, Inc., 444 So. 2d 203, 205 (La. Ct. App. 1983) ("The doctor acts as an informed intermediary.  The decision to use the drug in a particular circumstance rests with the doctor and the patient, not with the manufacturer."); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 265 (5th Cir. 2002).  Because the physician acts as a learned intermediary between the company and the patient, "'[t]he obligation to the consumer is fulfilled when  the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient.'"  *Id.* at 267 (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999).

Under the learned intermediary doctrine, a plaintiff is required to allege that Merck's misrepresentations proximately caused the ***physician(s)*** at issue to prescribe Vioxx.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001) (plaintiffs' failure-to-warn claim dismissed under Mississippi law because plaintiffs did not allege that defendant sales representatives "failed to warn the particular physicians who prescribed the drug for them, let alone that this alleged failure was the proximate cause of their injuries.").  This principle applies equally to consumer fraud claims such as plaintiff's.  *See In re Norplant Contraceptive Prods. Liab. Litig.*, 165 F.3d 374, 378 (5th Cir. 1999) (applying learned intermediary doctrine to dismiss deceptive trade practices action); *Catlett v. Wyeth, Inc.*, 5:04-CV-154-2 (WDO), 2004 U.S. Dist. LEXIS 26498, at *21-22 (M.D. Ga. Sept. 14, 2004) ("It is clear that Georgia courts would find the 'learned intermediary rule' encompasses any fraud, fraudulent concealment,

14

misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs.").

Plaintiff makes no such allegations.  Plaintiff does not allege who its insureds' prescribing physicians were, much less that they were ever exposed to, or relied upon, any alleged misrepresentation by Merck in prescribing Vioxx to the patients at issue.  Rather, Plaintiff merely alleges in a general manner that it would not have paid for Vioxx but for Merck's alleged misrepresentations.  Accordingly, Plaintiff has not adequately alleged a legally viable theory of causation, and its LUTPA claims must be dismissed on this ground as well.

## V.     PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT (COUNT VIII) FAILS BECAUSE PLAINTIFF HAS NOT ALLEGED IT HAS NO ADEQUATE REMEDY AT LAW.

Finally, in addition to the grounds discussed above (*see* Section I, *supra*), plaintiff's claim for unjust enrichment should be dismissed for the additional reason that Plaintiff has failed to allege a necessary element of an unjust enrichment claim under Louisiana law:  no adequate remedy at law. *See State ex rel. Dept. of Transp. & Development v. Todd*, 834 So.2d 1114, 1118 (La. App. 3 Cir. 2002) (observing that the absence of another remedy at law is a necessary element of an unjust enrichment claim in Louisiana); *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004) (citing *Minyard v. Curtis Products, Inc.*, 205 So.2d 422, 432 (La. 1967) (listing elements for claim for unjust enrichment in Louisiana, including, *inter alia,* no other remedy at law); La. Civ. Code Ann. art. 2298 (2005) ("The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.").

Far from satisfying this requirement, Plaintiff affirmatively pleads that it does have legal remedies under, *inter alia*, the Louisiana state consumer fraud statute as well as "other state law theories of recovery."  (Am. Compl. ¶ 180-184; *see also, e.g., id.* ¶ 187 ("Plaintiff has alleged

that it enjoys remedies at law").)  Accordingly, Plaintiff has failed to state a claim for unjust enrichment on this ground as well.

## CONCLUSION

For the foregoing reasons, Merck's motion to dismiss Counts II, IV, V, VI, VII and VIII of the Plaintiff's First Supplemental and Amended Complaint should be granted.

Respectfully submitted,

Richard C. Stanley, 8487
Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY FLANAGAN & REUTER, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504)-523-1580
Facsimile: (504)-524-0069

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN,
L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504)-581-3200
Facsimile: (504)-581-3361

 -and-

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Merck & Co., Inc.

16

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Merck & Co., Inc.'s Partial Motion to Dismiss First Supplemental and Amended Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Order No. 8 on this 13th day of March, 2006.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL No. 1657 |
|     Products Liability Litigation | * | |
| | * | SECTION L |
| This Document Relates to: | * | |
|     LOUISIANA HEALTH SERVICE | * | JUDGE ELDON E. FALLON |
|     INDEMNITY COMPANY d/b/a | * | |
|     BLUE CROSS/BLUESHIELD OF | * | MAGISTRATE JUDGE |
|     LOUISIANA on behalf of itself | * | DANIEL E. KNOWLES, III |
|     and others similarly situated | * | |
|         Representative Plaintiff | * | |
| | * | |
| versus | * | |
| | * | |
| MERCK & CO., INC. | * | |
|     Defendant | * | |
| | * | |
| Case No. 05-0713 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that Merck & Co., Inc. bring on for hearing its Partial Motion

to Dismiss First Supplemental and Amended Complaint before the Honorable Judge Eldon E.

Fallon, United States District Court for the Eastern District of Louisiana, Room C456, United

States Courthouse, 500 Poydras Street, New Orleans, Louisiana, 70130, at 10:00 o'clock a.m., at

the monthly status conference to be held in April, 2006, or as soon thereafter as counsel can be

heard.

Respectfully submitted,

_[signature]_

Richard C. Stanley, 8487
Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY FLANAGAN & REUTER, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504)-523-1580
Facsimile: (504)-524-0069

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN,
L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504)-581-3200
Facsimile: (504)-581-3361

 -and-

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Hearing has been served on

Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand

delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File

& Serve Advanced in accordance with Pre-Order No. 8 on this 13th day of March, 2006.

_[signature]_