FILED
U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LA
EASTERN DISTRICT OF LOUISIANA

2006 MAR -9 PM 4:33

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS | ) | MDL DOCKET NO. 1657 |
| LIABILITY LITIGATION | ) | CV: 2:05-md-01657 |
| | ) | SECTION L |
| This Document Relates to: | ) | JUDGE FALLON |
| Juanell Y. McBrayer Wilkes, et al., | ) | |
| Plaintiffs | ) | MAGISTRATE JUDGE |
| | ) | ROBERT R. ARMSTRONG, JR. |
| v. | ) | |
| | ) | |
| Merck & Co., Inc., et al., | ) | |
| Defendants | ) | |
| | ) | |
| Circuit Court of Jefferson | ) | |
| County, Alabama | | |
| CV-005-2532 | | Ref: 06-821 |

### RENEWED MOTION TO DISMISS, PURSUANT TO RULE 54(b), OR, IN THE ALTERNATIVE, MOTION TO REMAND AND INCORPORATED MEMORANDUM IN SUPPORT OF SAME

COME NOW, **GENE L. WATTERSON, M.D., JOSEPH SINGLETON, M.D., NELLIE CASSANDRA COMER, M.D., and WALLACE PURDY, M.D.,** (hereinafter collectively referred to as "these Defendants"), and file this Renewed Motion to Dismiss, Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, or, in the alternative, Motion to Remand. As grounds for this Motion, Drs. Watterson, Singleton, Comer and Purdy show unto the Court the following:

1.     It is the position of all the defendants in this case that these Defendants should be dismissed from this lawsuit pursuant to Federal Rule of Civil Procedure 54(b) since they were fraudulently joined for the sole purpose of preventing the adjudication of this lawsuit in a federal forum. If this Court does not agree that these Defendants were

Fee
Process
Dktd
CtRmDep
Doc. No

fraudulently joined and dismiss them from this lawsuit, then, alternatively, Drs. Watterson, Singleton, Comer, and Purdy move this Court to remand this case to state court, pursuant to 28 U.S.C. § 1332, since complete diversity does not exist.

## I.  PROCEDURAL BACKGROUND

2.      On or about April 29, 2005, the Plaintiffs, Juanell Y. McBrayer Wilkes, as the Administratix of the Estate of David L. McBrayer, deceased, and Eunice M. Dabbs, filed this action in the Circuit Court of Jefferson County, Alabama against Merck & Co., Inc., Pfizer Inc., Pharmacia & Upjohn Company, Pharmacia Corporation, f/k/a 1933 Monsanto, G.D. Searle, LLC., Gene L. Watterson, M.D., Joseph Singleton, M.D., Nellie Cassandra Comer, M.D., and Wallace Purdy, M.D.  (Compl., a copy of which is attached hereto as Exhibit "A").

3.      At all times material hereto, the Plaintiffs were resident citizens of the State of Alabama, which affirmatively appears in the Complaint.  (Exhibit "A", p. 2).

4.      These Defendants are physicians licensed to practice medicine in the State of Alabama.  These Defendants were and are resident citizens of the State of Alabama. These Defendants' principal places of businesses are in the State of Alabama.  At the time of the incidents made the basis of this lawsuit, these Defendants were practicing in the State of Alabama.  This information also affirmatively appears in the Complaint. (Exhibit "A", pp. 4-5).

5.      These Defendants filed appearances in the Circuit Court of Jefferson County, Alabama.

6.      On June 3, 2005, the co-Defendant, Merck & Company, Inc. ("Merck"), removed this action to federal court to the Northern District of Alabama, Southern Division (CV NO. 05-RRA-1214-S).  These Defendants neither joined in nor consented to the removal of this action from the Circuit Court of Jefferson County, Alabama.  As basis for the removal, Merck argued that these co-Defendants, Drs. Watterson, Singleton, Comer and Purdy, were fraudulently joined by the Plaintiffs for purposes of destroying diversity jurisdiction.  Merck, on that same date, also filed a Motion to Stay pending a "likely" transfer of the cause to In re VIOXX Products Liab.  Litig. (MDL-1657), that "MDL proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX." (Merck's Notice of Removal, a copy of which is attached hereto as Exhibit "B").

7.      On June 30, 2005, these Defendants filed a Motion to Dismiss Pursuant to Rule 54(b) adopting Merck's argument that these Defendants were fraudulently joined. (Motion to Dismiss, a copy of which is attached hereto as Exhibit "C".)

8.      Later that same day, the Honorable Robert R. Armstrong, Jr. endorsed an Order granting Merck's Motion to Stay the cause in federal court pending the determination of any transfer of the matter to the MDL proceeding established in the Eastern District of Louisiana.  Judge Armstrong ordered that the Motion to Dismiss be stayed pending the MDL panel's determination as to whether the case was to be transferred to the Eastern District of Louisiana.

9.      On October 18, 2005, the case was conditionally transferred to the MDL.

10.     On November 15, 2005, these Defendants filed a Response to the Conditional Transfer Order and Motion to Dismiss, or in the alternative, Motion to Vacate.  In this Motion, these Defendants argued that they should be dismissed from this lawsuit since they were fraudulently joined.  Alternatively, if the Panel does not agree that these Defendants were fraudulently joined and dismiss them from this lawsuit, then the Conditional Transfer Order should be vacated and allow the Federal Court for the Northern District of Alabama to determine whether there is any viable ground on which to exercise federal jurisdiction.

11.     The Panel did not rule on this Motion.  On February 15, 2006, the Panel issued an Order transferring this case to this Honorable Court.  (A copy of the Panel's Order is attached hereto as Exhibit "D").  These Defendants renew their Motion to Dismiss, or in the alternative, Motion to Remand.

## II.  ARGUMENT

These Defendants move this Honorable Court to dismiss the Complaint against these Defendants heretofore filed in this matter on the following separate and several grounds:

12.     In Merck's Notice of Removal, they argue that Drs. Watterson, Singleton, Comer, and Purdy have been fraudulently joined as defendants in this lawsuit simply to defeat diversity jurisdiction.  (Exhibit "B", pp. 5-11).  According to Merck's Notice of Removal:  "There is complete diversity in this case because the purportedly non-diverse Physician Defendants have been fraudulently joined."  (Exhibit "B", p. 5).  The Notice of Removal goes on to state that "there is no possibility that the plaintiff[s] can prove a

cause of action against the resident (non-diverse)' defendants." (Exhibit "B", p. 5).  The Notice of Removal claims that the defendant physicians are fraudulently joined because the allegations in the plaintiffs' Complaint are "conclusory" and "are contradicted by specific allegations that the manufacturer defendant concealed information from the general public, including healthcare providers." (Exhibit "B", p. 6).

These Defendant physicians agree with, adopt and incorporate by reference herein, Merck's arguments and supporting material contained in its Notice of Removal with respect to the claim that these Defendant physicians were fraudulently joined.

In addition, the MDL, which has overseen a large part of prescription drug litigation, has concluded that this type of joinder against these Defendants can "only be characterized as a sham, at the unfair expense not only of [the prescription drug manufacturer], but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the prescription drug manufacturer], the real target, in a federal forum." Anderson v. Am. Home Prods. Corp., 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002).  Indeed, there are dozens of district court decisions finding that physicians and sales representatives were fraudulently joined as defendants to defeat federal diversity jurisdiction. See e.g., In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001) (Alabama resident physician was fraudulently joined in products liability action against prescription drug manufacturer, where plaintiffs' specific allegations that the manufacturer misrepresented and concealed material facts about the safety and efficacy of its drug refuted the assumption that the physician had knowledge of the drug's harmful effects); Spier v. Bayer Corp. (In re

Baycol Products Litigation), 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (allegation that physician "knew or should have known" of drug's risks was insufficient to defeat a finding of fraudulent joinder, where the "main thrust" of the action was that the drug manufacturer defendants had misrepresented the drug's risks and failed to adequately warn of such risks).   Wherefore, these Defendants respectfully move that this Court enter an Order pursuant to Federal Rules of Civil Procedure 54(b) dismissing these physician Defendants.

13.    Further, the Plaintiffs' Complaint against Drs. Watterson, Singleton, Comer, and Purdy fails to state a claim upon which relief may be granted.  The Plaintiffs' Complaint against Drs. Watterson, Singleton, Comer and Purdy is due to be dismissed for failure to comply with Ala. Code § 6-5-551, it governing the instant claim as it would relate to these Defendants.[1]  Ala. Code § 6-5-551 provides as follows:

> In any action for injury, damages, or wrongful death, whether in contract or tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint a detailed specification and a factual description of each act and omission alleged by the plaintiff to render the health care provider liable to the plaintiff and shall include when feasible and ascertainable the date, time, and place of the acts or acts... *any complaint which fails to include such detailed specification and factual description shall be subject to dismissal for failure to state a claim upon which relief may be granted.* See Ala. Code § 6-5-551 (emphasis added).

---

[1] The Plaintiffs, within their Motion to Remand, have effectively conceded that their claim against these Defendants is governed by the Alabama Medical Liability Act, to which Ala. Code § 6-5-551 is part.  (Plaintiff's Motion to Remand, a copy of which is attached hereto as Exhibit "E").

Here, the Plaintiffs' claims against these Defendants fail to satisfy the strict tenets of Ala. Code § 6-5-551 and are due to be dismissed.  Indeed, the Plaintiffs' claims against these Defendant physicians are conclusory and unsubstantiated, and wholly fail to set forth the date, time, and place of those acts or omissions for which the Plaintiffs seek redress, much less set forth these factors with the required detailed specificity.  Rather, the Plaintiffs' claim, quite simply, states that these Defendants prescribed Vioxx, had notice of alleged unreasonable and dangerous risks, and are thus liable.[2]   Judge Armstrong has already effectively deemed the physician-related allegations at play here insufficient under Ala. Code § 6-5-551.[3]

As such, this Panel should determine that these Defendants have been fraudulently joined for the sole purpose to prevent the adjudication of this lawsuit in a federal forum.

14.     Alternatively, if the Court does not dismiss these Defendants' from this lawsuit, then Drs. Watterson, Singleton, Comer, and Purdy move this Court to remand this case to the Circuit Court of Jefferson County, Alabama, pursuant to 28 U.S.C. § 1332, since complete diversity does not exist.  The removing Defendants' sole basis for federal jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332.[4]  This statute requires

---

[2] A copy of the Complaint is attached hereto as Exhibit "A."

[3] "Because of the contradictory allegations against the physician defendants, *and the failure of the complaint to comply with Alabama law concerning specificty in making allegations against defendants*, it appears to be a good possibility that it will be determined [by the MDL] that the individual defendants were fraudulently joined."  (See June 30, 2005 Order of the Honorable Robert R. Armstrong, Jr., United States Magistrate Judge for the Northern District of Alabama, Southern Division, a copy of which is attached hereto as Exhibit "F").

[4] As previously noted, all defendants in this case contend that this lawsuit was filed against these Defendants by the Plaintiffs simply to defeat diversity jurisdiction.  Therefore, all

complete diversity of citizenship between all defendants and all plaintiffs.  See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (holding that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff."); see also Strawbridge v. Curtiss, 7 U.S. 267 (1806).

In the case at bar, however, the Plaintiffs and these Defendants are resident citizens of the State of Alabama.  As such, the threshold requirement of diversity of citizenship is lacking and this case is due to be remanded to state court, unless this Court agrees that these Defendants were fraudulently joined and grants the pending Motion to Dismiss Pursuant to Rule 54(b).  The absence of any independent basis of diversity jurisdiction precludes this Court from exercising supplemental jurisdiction.  See Palmer v. Hospital Auth. of Randolph County 22 F. 3d 1559, 1565 (11th Cir. 1994) (holding that supplemental jurisdiction is not a source of original jurisdiction as it "relies on the existence of some other basis of jurisdiction.")

In the absence of federal jurisdiction, removal is improper and this Court should remand this case to the Circuit Court of Jefferson County, Alabama, pursuant to 28 U.S.C. § 1332, since complete diversity does not exist..  The statute on Multidistrict Litigation compels no other result.   See generally 28 U.S.C.§ 1407 (Multidistrict Litigation Statute). As recognized by the Sixth Circuit:

> No matter how desirable...it may be to consolidate...all litigation...there is nothing in the applicable [Multidistrict] statute to provide an exception to the rules normally governing removal of cases from state courts.  Such a transfer

---

defendants have argued that these Defendants should be dismissed from this matter based on the theory of fraudulent joinder.

cannot be made unless the district court properly has jurisdiction of the subject matter of the case.

BancOhio Corp. v. Fox, 516 F. 2d 29, 32 (6th Cir. 1975); see Sherwood v. Microsoft Corp., 91 F. Supp.2d. 1196. 1199 (M.D. Tenn. 2000) (granting remand "despite the pendency of multiple similar actions across the country, [because] the Sixth Circuit has warned that a district court's first obligation is to determine whether the Court has subject matter jurisdiction because without such jurisdiction, there is not any action to transfer.")

WHEREFORE, PREMISES CONSIDERED, Drs. Watterson, Singleton, Comer, and Purdy, move that this Court dismiss this cause against them, for those separate and several grounds shown. Alternatively, if the Court does not dismiss these Defendants' from this lawsuit, then Drs. Watterson, Singleton, Comer, and Purdy move this Court to to remand this case to state court, pursuant to 28 U.S.C. § 1332, since complete diversity does not exist.

Randal H. Sellers
Bar Number: ASB-3398-E56R
L. Ben Morris
Bar Number: ASB-1786-A52M
Attorneys for Defendants, Gene L. Watterson, M.D., Joseph Singleton, M.D., Nellie Cassandra Comer, M.D., and Wallace Purdy, M.D.

**OF COUNSEL:**
STARNES & ATCHISON  LLP
Seventh Floor, Brookwood Place
P. O. Box 598512
Birmingham, AL  35259-8512
(205) 868-6000

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have caused a copy of the foregoing pleading to be mailed to counsel for all parties to this action on this the 2nd day of March, 2006.

OF COUNSEL

cc:
Tom Dutton, Esquire
PITTMAN, HOOKS, DUTTON,  KIRBY & HELLUMS
2001 Park Place North
1100 Park Place Tower
Birmingham, AL  35203

John David Owen, Esquire
F. M. Haston, III, Esquire
Anne Marie Seibel, Esquire
F. Wendell Allen, Esquire
BRADLEY, ARANT, ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104

Lawrence B. Clark, Esquire
Gilbert C. Steindorff, IV, Esquire
Wendy Madden, Esquire
ADAMS AND REESE/LANGE SIMPSON LLP
2100 Third Avenue North, Suite 1100
Birmingham, AL  352303

Phillip A. Wittman, Esquire
STONE, PIGMAN,WALTHER, WITTMANN, LLC
546 Carondelet St.
New Orleans, Louisiana 70130-3588

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
201 St. Charles Avenue
Suite 4310
New Orleans, Louisiana 70170

{B0574087}

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

### CIVIL ACTION NO.: _____ CV005    2532

| | |
|---|---|
| JUANELL Y. MCBRAYER WILKES, )<br>As Administratrix of the Estate of David )<br>L. McBrayer, deceased, and EUNICE M. )<br>DABBS, )<br> )<br>    **Plaintiffs,** )<br> )<br> )<br>**v.** )<br> ) | **FILED IN OFFICE**<br><br>**APR 2 9 2005**<br><br>**ANNE-MARIE ADAMS**<br>Clerk |

MERCK & CO., INC., a New Jersey corporation; PFIZER INC., a Delaware corporation; PHARMACIA & UPJOHN COMPANY, a Delaware company; PHARMACIA CORPORATION, f/k/a 1933 MONSANTO, a Delaware corporation; G.D. SEARLE, LLC., a Delaware corporation; GENE L. WATTERSON, M.D., an individual; JOSEPH SINGLETON, M.D., an individual; NELLIE CASSANDRA COMER, M.D., an individual; WALLACE PURDY, M.D., an individual; A, whether singular or plural, that entity which designed, manufactured, marketed, distributed and/or sold to Plaintiffs' the brand-name prescription drugs which contributed to cause the Plaintiffs' injuries and/or death made the basis of this suit; B, whether singular or plural, that entity which developed and/or manufactured the brand-name prescription drugs made the basis of this suit; C, whether singular or plural, that entity which advertised the brand-name prescription drugs made the basis of this suit; D, whether singular or plural, that entity which had any role in the distributive chain of the brand-name prescription drugs made the basis of this suit; E, whether singular or plural, that entity which issued any warranty, express or implied, with respect to the brand-name prescription drugs made the basis of this suit; F, whether singular or plural, that entity whose breach of warranty was a proximate cause of Plaintiffs' injuries and/or death made the basis of this suit; G, whether singular or plural, that entity which in anywise participated in any testing of any of the brand-name prescription drugs made the basis of this suit; H, whether singular or plural, that physician (including intern, resident or fellow) who distributed and/or prescribed to Plaintiffs the brand-name prescription drugs which contributed to cause the Plaintiffs' injuries and/or death made the basis of this suit; I, whether singular or plural, that hospital, clinic, or other healthcare facility which undertook to provide medical services to Plaintiffs utilizing the brand-name prescription drugs made the basis of this suit; J, whether singular or plural, that medical partnership, professional association or professional corporation which undertook to provide medical services to Plaintiffs utilizing the brand-name prescription drugs made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiffs' injuries and/or death; K, whether singular or plural, that entity which selected the brand-name prescription drugs made the basis of this suit for the particular purpose for which it was required or used; L, whether singular or plural, that entity which issued a prescription and/or samples with respect to the brand-name prescription drugs made the basis of this suit; M, whether singular or plural, that entity which provided information referable to the quality, worthiness or fitness of the brand-name prescription drugs made the basis of this suit; N, whether singular or plural, that entity which failed to warn and/or issued inadequate warnings with reference to the dangers associated

'EXHIBIT "A"

with the use of the brand-name prescription drugs made the baiss of this suit; **O**, whether singular or plural, that entity who or which tested, inspected, approved or issued any approval of the brand-name prescription drugs made the basis of this suit; **P**, whether singular or plural that entity which concerning the occasion made the basis of this suit, was the principal of any of the named and/or above-described fictitious party Defendants; **Q**, whether singular or plural, that entity which is the successor-in-interest of the named and/or above-described fictitious party Defendants; **R**, whether singular or plural, that individual and/or entity, other than those described above, the wrongful conduct of which contributed to cause the Plaintiffs' injuries and/or death made the basis of this suit. (Plaintiffs aver that the identity of the fictitious party Defendants are otherwise unknown to Plaintiffs at this time, or, if their names are known to Plaintiffs at this time, their identity as proper party Defendants are not known to Plaintiffs at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

Defendants.

## COMPLAINT

Plaintiffs, JUANELL Y. MCBRAYER WILKES, as Administratrix of the Estate of David L. McBrayer, deceased, and EUNICE M. DABBS, by and through their counsel, allege in their complaint against Defendants as follows:

## STATEMENT OF THE PARTIES

1.  Plaintiff, JUANELL Y. MCBRAYER WILKES, as Administratrix of the Estate of DAVID L. MCBRAYER, deceased, (hereinafter "MCBRAYER") at all times relevant hereto, has resided in Alabama.  Plaintiff's decedent took the brand-name prescription drug Vioxx.

2.  Plaintiff, EUNICE M. DABBS, (hereinafter "DABBS") at all times relevant hereto, has resided in Alabama and took the drugs Vioxx and Celebrex.

3. Upon information and belief, Defendant Merck & Co., Inc., (hereinafter "MERCK"), was and is a pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant MERCK was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib).

4. Upon information and belief, Defendant Pfizer Inc., (hereinafter "PFIZER"), was and is a pharmaceutical company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant PFIZER was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Celebrex.

5. Upon information and belief, Defendant Pharmacia & Upjohn Company, (hereinafter "PHARMACIA"), was and is a pharmaceutical company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant PHARMACIA was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Celebrex (celecoxib).

6. Upon information and belief, Defendant Pharmacia Corporation f/d/b/a 1933 Monsanto, (hereinafter "PHARMACIA CORPORATION"), a subsidiary of Pharmacia, was and is a Delaware corporation with its principal place of business

in Missouri.   Defendant PHARMACIA CORPORATION was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Celebrex (celecoxib).

7.      Upon information and belief, Defendant G.D. Searle, LLC., (hereinafter "G.D. SEARLE"), a subsidiary unit of Monsanto, was and is a Delaware corporation with its principal place of business in Illinois.  Defendant G.D. SEARLE was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Celebrex (celecoxib).

8.      Upon information and belief, Defendant Gene L. Watterson, M.D. (hereinafter "WATTERSON"), is over the age of nineteen years and is a physician licensed in the State of Alabama and does business in Jefferson County, Alabama.  Defendant WATTERSON was a treating physician that prescribed the brand-name prescription drug, Celebrex (celecoxib) to the Plaintiff's decedent, DAVID L. MCBRAYER.

9.      Upon information and belief, Defendant Joseph Singleton, M.D., (hereinafter "SINGLETON"), is over the age of nineteen years and is a physician licensed in the State of Alabama and does business in Jefferson County, Alabama. Defendant SINGLETON was a treating physician that prescribed the brand-name

prescription drugs, Celebrex (celecoxib) and Vioxx (rofecoxib) to the Plaintiff, DABBS.

10.     Upon information and belief, Defendant Nellie Cassandra Comer, M.D., (hereinafter "COMER"), is over the age of nineteen years and is a physician licensed in the State of Alabama and does business in Jefferson County, Alabama. Defendant COMER was a treating physician that prescribed the brand-name prescription drugs, Celebrex (celecoxib) and Vioxx (rofecoxib) to the Plaintiff, DABBS.

11.     Upon information and belief, Defendant Wallace Purdy, M.D., (hereinafter "PURDY"), is over the age of nineteen years and is a physician licensed in the State of Alabama and does business in Jefferson County, Alabama. Defendant PURDY was a treating physician that prescribed the brand-name prescription drug, Vioxx (rofecoxib) to the Plaintiff, DABBS.

## FACTUAL ALLEGATIONS

12.     This action arises from the sales and efficacy of Vioxx and Celebrex.  Vioxx is a selective COX-2 inhibitor marketed by MERCK as an anti-inflammatory analgesic.  Celebrex is also a COX-2 inhibitor marketed by PFIZER for treatment of arthritis and pain.   That Defendants WATTERSON, SINGLETON, COMER and PURDY were treating physicians that prescribed the brand-name prescription drugs to Plaintiffs.

13.     Defendants distributed, prescribed and/or sold Vioxx and Celebrex to consumers such as Plaintiffs.

14.     Despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular-related adverse health effects, Defendants promoted, marketed, distributed and/or prescribed Vioxx and Celebrex as safe and effective for persons such as Plaintiffs.

15.     Defendants concealed the serious cardiovascular risks associated with Vioxx and Celebrex.

16.     If Defendants had not engaged in this conduct, prescribers such as Plaintiffs' treating physicians would not have prescribed Vioxx and Celebrex and patients, such as the Plaintiffs, would have switched from Vioxx and Celebrex to safer products or would have refrained wholly from any use of Vioxx and Celebrex.

17.     Defendants engaged in a common scheme in marketing, distributing, prescribing and/or selling Vioxx and Celebrex under the guise that it was safe and efficacious for persons such as Plaintiffs.

18.     Plaintiffs allege that the suppression of this information constituted a common scheme by Defendants to conceal material information from Plaintiffs.

19.   Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, of the Defendants targeted Plaintiffs to induce Plaintiffs to purchase Vioxx and Celebrex. At the time the Defendants manufactured, marketed, distributed and/or sold Vioxx and Celebrex, Defendants intended that Plaintiffs would rely on the marketing, advertisements and product information propounded by Defendants.

20.   The actions of Defendants, in failing to warn of the clear and present danger posed to others by the use of their drugs Vioxx and Celebrex in suppressing evidence relating to this danger, and in making deliberate and misleading misrepresentations of fact to minimize the danger or to mislead prescribers and patients as to the true risk, constitutes such clear, blatant and outrageous conduct as to warrant the imposition of exemplary damages against Defendants.

## COUNT I: NEGLIGENCE

21.   Plaintiffs restate each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

22.   Defendants, directly or indirectly, negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, or sold Vioxx and Celebrex in the stream of commerce, when the Defendants knew, or in the exercise of ordinary care, should have known that Vioxx and Celebrex posed a

significant risk to Plaintiffs' health and well-being, which risk was not known to Plaintiffs or their prescribers.

23.    At all times material hereto, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, testing, labeling, packaging, distribution, promotion, marketing, advertisement, sampling or sale of Vioxx and Celebrex.

24.    Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiffs in that the Defendants:

a.    Failed to include adequate warnings with the medications that would alert Plaintiffs and other consumers to the potential risks and serious side effects of Vioxx and Celebrex ingestion;

b.    Failed to include adequate information or warnings with the medication that would alert Plaintiffs and the health care community to refrain from use of Vioxx and Celebrex without first prescribing traditional NSAIDs such as naproxen or ibuprofen;

c.    Failed to adequately and properly test Vioxx and Celebrex before and after placing it on the market;

d.    Failed to conduct sufficient testing on Vioxx and Celebrex which, if properly performed, would have shown that Vioxx and Celebrex had serious side effects, including, but not limited to the cardiovascular events;

e.      Failed to adequately warn Plaintiffs and their health care providers that use of Vioxx and Celebrex carried a risk of cardiovascular events, stroke and death; among other serious side effects;

f.      Failed to provide adequate post-marketing warnings or instructions after the Defendants knew or should have known of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx and Celebrex;

g.      Failed to adequately warn Plaintiffs that Vioxx and Celebrex should not be used in conjunction with any risk factors for these adverse effects such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease;

h.      Failed to adequately disclose and warn Plaintiffs that they undertook the risk of adverse events and death as described herein;

i.      Failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx and Celebrex ingestion.

25.   Defendants knew or should have known that Vioxx and Celebrex caused unreasonably dangerous risks and serious side effects, including death, of which Plaintiffs would not be aware. Defendants nevertheless advertised, marketed, sold and distributed the drugs knowing that there were safer methods and products.

26.    As a direct and proximate result of the negligence and breach of Defendants, Plaintiffs sustained serious injuries. Defendants owed a duty to Plaintiffs to use reasonable care in their actions.

## COUNT II: NEGLIGENT FAILURE TO WARN

27.    Plaintiffs restate each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

28.    Vioxx and Celebrex were not accompanied by appropriate warnings of the increased risk of adverse side effects caused by the ingestion of Vioxx and Celebrex.

29.    Defendants negligently failed to warn consumers who took Vioxx and Celebrex that they were dangerous.

30.    Defendants' negligence was the proximate cause of the harm suffered by Plaintiffs.

31.    As a direct and proximate cause of Defendants' negligence:

    a.    Plaintiffs suffered personal injuries;

    b.    Plaintiffs suffered economic loss; and

    c.    Plaintiffs expended, and will in the future be required to expend, fair and

reasonable expenses for necessary health care, attention and services and incurred incidental and related expenses.

## COUNT III: MISREPRESENTATION AND SUPPRESSION

32.   Plaintiffs restate each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

33.   Defendants misrepresented to Plaintiffs and the health care industry the safety and effectiveness of Vioxx and Celebrex and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Vioxx and Celebrex.

34.   Defendants made misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that Vioxx and Celebrex had defects, dangers, and characteristics that were other than what the Defendants had represented to Plaintiffs and the health care industry generally. Specifically, Defendants misrepresented to and/or actively concealed from Plaintiffs, the health care industry and consuming public that:

   a.   Vioxx and Celebrex had statistically significant increases in cardiovascular side effects which could result in serious injury or death;

   b.   There had been insufficient and/or company-spun studies regarding the safety and efficacy of Vioxx and Celebrex before and after its product launch;

  c.  Vioxx and Celebrex were not fully and adequately tested for the cardiovascular side effects at issue herein;

  d.  Other testing and studies showed the risk of or actual serious adverse risks;

  e.  There was a greatly increased risk of such cardiovascular events and death.

35.  The misrepresentations of and/or active concealment alleged were perpetuated directly and/or indirectly by Defendants.

36.  Defendants knew or should have known that these representations were false and made the representations with the intent or purpose that Plaintiffs would rely on them, leading to the use of Vioxx and Celebrex.

37.  At the time of Defendants' fraudulent misrepresentations, Plaintiffs were unaware of the falsity of the statements being made and believed them to be true. Plaintiffs had no knowledge of the information concealed and/or suppressed by Defendants.

38.  Plaintiffs justifiably relied on and/or were induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendants did suppress, conceal or failed to disclose to Plaintiffs' detriment.

39.   Defendants had a post-sale duty to warn Plaintiffs and the public about the potential risks and complications associated with Vioxx and Celebrex in a timely manner.

40.   The misrepresentations and active fraudulent concealment by the Defendants constitutes a continuing tort against Plaintiffs, who ingested Vioxx and Celebrex.

41.   Defendants made the misrepresentations and actively concealed information about the defects and dangers of Vioxx and Celebrex with the intention and specific desire that Plaintiffs' health care professionals and the consuming public would rely on such or the absence of information in selecting Vioxx and Celebrex as treatment.

42.   As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendants, Plaintiffs suffered significant and ongoing injury and damages.

## COUNT IV: BREACH OF WARRANTY

43.   Plaintiffs restate each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

44.   When Defendants placed Vioxx, Celebrex and Bextra into the stream of commerce, Defendants knew of the use for which it was intended and expressly and impliedly warranted to Plaintiffs that use of Vioxx and Celebrex were safe and acceptable means of treatment.

45.   Plaintiffs reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon the express and/or implied warranty that Vioxx and Celebrex were of merchantable quality and fit for use as intended.

46.   Vioxx and Celebrex were not of merchantable quality and was not safe or fit for its intended use because it was and continues to be unreasonably dangerous and unfit for the ordinary purposes for which it is used in that it caused injury to Plaintiffs.  Defendants breached the warranty because Vioxx and Celebrex were unduly dangerous in expected use and did cause undue injury to Plaintiffs.

47.   Defendants breached the implied warranty of merchantability because Vioxx and Celebrex cannot pass without objection in the trade, is unsafe, not merchantable, and unfit for its ordinary use when sold, and is not adequately packaged and labeled.

48.   As a direct and proximate result of Defendants' breach of the warranty of merchantability, Plaintiffs sustained serious and permanent injuries.

54.   Defendants committed actual fraud by making material representations, which were false, knowing that such material representations were false and/or with reckless disregard for the truth or falsity of such material representations, with the intent that Plaintiffs relied on such material representations; Plaintiffs acted in actual and justifiable reliance on such material misrepresentations and were injured as a result.

55.   In addition, and in the alternative if necessary, Defendants knowingly omitted material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiffs relied on Defendants' misrepresentations; Plaintiffs acted in actual and justifiable reliance on Defendants' representations and were injured as a result.

56.   Defendants committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiffs relating to Vioxx and Celebrex at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or public policy.

## COUNT VII: ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (AEMLD)

57.   Plaintiffs restate each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

58.   Defendants are liable to Plaintiffs who are citizens of the State of Alabama ("Alabama Plaintiffs") pursuant to the AEMLD.  Defendants are in the business of manufacturing, distributing, and marketing Vioxx and Celebrex.  Defendants manufactured, distributed, and marketed Vioxx and Celebrex which were in a defective condition, and unreasonably dangerous when applied to their intended use in the usual, foreseeable, and customary manner.  Alabama Plaintiffs, while consuming Vioxx and Celebrex in the usual and customary manner, as such were intended to be used, were injured and damaged as a proximate result of Defendants placing the products on the market.   Vioxx and Celebrex were unreasonably dangerous at the time such were placed on the market by Defendants.  Vioxx and Celebrex, at the time of Alabama Plaintiff's injuries and damages, were in substantially the same condition as when marketed by Defendants.

59.   Defendants negligently or wantonly failed to give reasonable and adequate warning of dangers of Vioxx and Celebrex known to Defendants, or which in the exercise of reasonable care should have been known to the Defendants, and which Alabama Plaintiffs could not obviously discover.

## VIII: MEDICAL MALPRACTICE

60.   Plaintiffs restate each and every preceding allegation of this Complaint and

incorporate each by reference as though set forth in full herein.

61.     Defendant, WATTERSON and one or more of the fictitious party Defendants listed and described hereinabove, through their agents, servants and/or employees, undertook to provide medical services and/or treatment to the Plaintiff's decedent, MCBRAYER. All of these services were provided to the Plaintiff's decedent in Jefferson County, Alabama.

62.     Defendants, SINGLETON, COMER and PURDY one or more of the fictitious party Defendants listed and described hereinabove, through their agents, servants and/or employees, undertook to provide medical services and/or treatment to the Plaintiff, DABBS. All of these services were provided to the Plaintiff in Jefferson County, Alabama.

63.     During said period of time, Defendants, WATTERSON, SINGLETON, COMER and PURDY and one or more of the fictitious party Defendants listed and described hereinabove, negligently, wantonly and/or wrongfully prescribed and/or provided samples of the brand-name prescription drugs Vioxx and Celebrex to the Plaintiffs with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx and Celebrex.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, as well as all costs of this action, to the full extent of the law, including:

(a)   Damages to compensate Plaintiffs for injuries sustained as a result of

Vioxx and Celebrex use, past and future lost income, past and future

medical expenses as proven at trial;

(b)   Physical pain and suffering of Plaintiffs;

(c)   Mental anguish and/or emotional distress;

(d)   Permanent injury; and

(e)   Such other applicable damages as the Court deems appropriate.

Respectfully submitted,

_____
Tom Dutton
Of Counsel for Plaintiffs
Bar Number: ASB-2059-U50T

OF COUNSEL:

PITTMAN HOOKS DUTTON KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile

## JURY DEMAND

Plaintiffs hereby demand a struck jury for the trial in this cause.

_____
Of Counsel for Plaintiffs

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

Merck & Company, Inc.
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama  36109

Pfizer Inc.
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

Pharmacia & Upjohn Company
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

Pharmacia Corporation f/d/b/a 1933 Monsanto
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

G.D. Searle & Company
1209 N. Orange Street
Wilmington, DE 19801-1120

Gene L. Watterson, M.D.
1528 Carraway Blvd.
Birmingham, Alabama 35234-1998

Joseph Singleton, M.D.
3500 Blue Lake Drive, Ste. 499
Birmingham, Alabama 35243-1907

Nellie Cassandra Comer, M.D.
c/o UAB Health Center Inverness
1250 Inverness Corners, Highway 280
Birmingham, Alabama 35242-3794

Wallace Purdy, M.D.
1088 9th Avenue SW
Bessemer, Alabama 35022-4530

ᴐᴐ614 ρ

FILED    **IN THE UNITED STATES DISTRICT COURT**
05 JUN -3 AM 9:12    **FOR THE NORTHERN DISTRICT OF ALABAMA**
                    **SOUTHERN DIVISION**
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **JUANELL Y. MCBRAYER** )<br>**WILKES, as Administratrix of the** )<br>**Estate of David L. McBrayer,** )<br>**Deceased, and EUNICE M. DABBS,** )<br> )<br>　　　**Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**MERCK & CO., INC.; PFIZER** )<br>**INC.; PHARMACIA & UPJOHN** )<br>**COMPANY; PHARMACIA** )<br>**CORPORATION f/k/a 1933** )<br>**MONSANTO; G.D. SEARLE, LLC;** )<br>**GENE L. WATTERSON, M.D.;** )<br>**JOSEPH SINGLETON, M.D.;** )<br>**NELLIE CASSANDRA COMER,** )<br>**M.D.; WALLACE PURDY, M.D.;** )<br>**and A-R,** )<br> )<br>　　　**Defendants.** )<br> ) | **CIVIL ACTION NO.**<br><br>CV-05-RRA-1214-S |

## NOTICE OF REMOVAL

COMES NOW defendant Merck & Co., Inc. ("Merck") and gives notice, with full reservation of all defenses, that this cause is hereby removed from the Circuit Court of Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  As and for its notice of removal, Merck shows unto the Court as follows:

EXHIBIT "B"

1.     This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of cases.  *See* 28 U.S.C. §§ 1441(b), 1446(b).  This action involves allegations regarding the prescription drug VIOXX®.  On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148 VIOXX® products liability cases to the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.  The MDL Panel has also issued 13 conditional transfer orders, conditionally transferring over 670 additional VIOXX® cases to that Multidistrict Litigation, *In re VIOXX Products Liability Litigation,* MDL No. 1657.  Merck will shortly provide the MDL Panel with notice of this action pursuant to the "tag-along" procedure.

2.     On or about April 29, 2005, plaintiffs Juanell Y. McBrayer Wilkes, as Administratrix of the Estate of David L. McBrayer, and Eunice M. Dabbs ("Plaintiffs") commenced this action against Merck; Pfizer Inc. ("Pfizer"); Pharmacia & Upjohn Company ("Pharmacia"); Pharmacia Corporation f/d/b/a 1933 Monsanto ("Pharmacia Corporation"); G.D. Searle, LLC ("G.D. Searle"); Gene L. Watterson, M.D. ("Dr. Watterson"); Joseph Singleton, M.D. ("Dr. Singleton"); Nellie Cassandra Comer, M.D. ("Dr. Comer"); Wallace Purdy, M.D. ("Dr. Purdy"); and various fictitious defendants by filing a Complaint in the Circuit Court of Jefferson County, Alabama, bearing Case Number CV-05-2532 (the "Complaint").  (Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the defendant, which papers include the summonses and complaints, is attached as Exhibit A.)

3.     As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has subject matter

jurisdiction over this action pursuant to 28 U.S.C. § 1332 and Merck has satisfied the procedural requirements for removal.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

## I.      COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN PLAINTIFFS AND THE PROPER DEFENDANTS.

5.      There is complete diversity of citizenship between Plaintiffs and the properly joined defendants.

6.      Upon information and belief, plaintiffs are, and were at all relevant times, citizens and residents of the State of Alabama. *See* Compl., ¶¶ 1-2. Moreover, plaintiff Wilkes brings this action as the administratrix of the estate of her decedent, David L. McBrayer.  Upon information and belief, the decedent also was a resident of Alabama. Compl., ¶ 61.  Therefore, plaintiffs are citizens of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(a); 1332(c)(2).

7.      Defendant Merck is, and was at the time of the institution of this action, a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in the State of New Jersey.  Compl. ¶ 3. Therefore, Merck is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

8.      Defendant Pfizer is, and was at the time of the institution of this action, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.  Compl.

¶ 4.   Therefore, Pfizer is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

9.    Defendant Pharmacia is, and was at the time of the institution of this action, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.  Compl. ¶ 5.  Therefore, Pharmacia is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

10.    Defendant Pharmacia Corporation is, and was at the time of the institution of this action, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Missouri. Compl. ¶ 6.  Therefore, Pharmacia Corporation is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Alabama for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

11.    Defendant G.D. Searle is, and was at the time of the institution of this action, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the State of Illinois. Compl. ¶ 7.  In some circuits, the courts have suggested that the citizenship of a limited liability company is derived from that of its members.  Under this analysis, G.D. Searle, whose sole member is the Pharmacia & Upjohn Company, is, and was at the time the Complaint was filed, a citizen of Delaware and New Jersey, as the Pharmacia & Upjohn Company is incorporated in Delaware and has its principal place of business in New Jersey.  Compl. ¶ 5.  Therefore, G.D. Searle is not now,

and was not at the time of the filing of the Complaint, a citizen of the State of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

12.    The complaint also purports to state claims against unnamed, fictitious defendants identified as defendants A through R.   For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

13.    For the reasons set forth below, the remaining defendants – Dr. Watterson, Dr. Singleton, Dr. Comer, and Dr. Purdy (collectively the "Physician Defendants") – are fraudulently joined.   Therefore, their citizenship must be ignored for the purpose of determining the propriety of removal.[1]   *See, e.g., Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

## II.    THE PHYSICIAN DEFENDANTS HAVE BEEN FRAUDULENTLY JOINED BECAUSE THERE IS NO POSSIBILITY THAT PLAINTIFFS CAN STATE A CAUSE OF ACTION AGAINST THEM.

14.    There is complete diversity in this case because the purportedly non-diverse Physician Defendants have been fraudulently joined.   Specifically, in light of the factual allegations in the Complaint, "there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse)" defendants.   *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

15.    Plaintiffs allege that Dr. Watterson, Dr. Singleton, and Dr. Comer prescribed Celebrex (celecoxib) to decedent McBrayer or plaintiff Dabbs.

---

[1] The Complaint does not allege the citizenship of the Physician Defendants, only that they are licensed and do business in the State of Alabama. *See* Compl. ¶¶ 8-11.

Compl. ¶¶ 8-10.  They allege further that Dr. Singleton, Dr. Comer, and Dr. Purdy prescribed Vioxx (rofecoxib) to plaintiff Dabbs.  Compl. ¶¶ 9-11.  Plaintiffs do not allege that the Physician Defendants manufactured, designed, tested, labeled, warranted, or sold Celebrex and/or Vioxx.  *See generally* Compl.

16.     In a products liability action involving a prescription drug, a resident physician is fraudulently joined when, as here, conclusory allegations of the physician's knowledge are contradicted by specific allegations that the manufacturer defendant concealed information from the general public, including health care providers. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (Alabama resident physician was fraudulently joined in products liability action against drug manufacturer, where plaintiffs' specific allegations that the manufacturer misrepresented and concealed material facts about the safety and efficacy of its drug refuted the assumption that the physician had knowledge of the drug's harmful effects); *Spier v. Bayer Corp. (In re Baycol Products Litigation)*, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (plaintiff's conclusory allegation that resident physician "knew or should have known" of drug's risks was insufficient to defeat a finding of fraudulent joinder, where the "main thrust" of the action was that the manufacturer defendants had misrepresented the drug's risks and failed to adequately warn of such risks).

17.     Put another way, "in light of plaintiff's myriad allegations that the defendants withheld information concerning the risks of [a prescription medication] from physicians . . . an entirely conclusory allegation that the physician failed to warn of risks of [that medication] is insufficient" to provide a basis for recovery against the non-diverse defendant. *In re Rezulin Prods. Liab. Litig.*, No. 00 CIV 2843 (LAK), MDL No. 1348, Pretrial Order No. 122, slip op. at

1 (Jan. 6, 2003) (Exh. B). Numerous other decisions have employed this same analysis to conclude that pharmacies or physicians had been fraudulently joined to defeat federal diversity jurisdiction.[2]

18.   That is precisely the case here. Plaintiffs' Complaint includes "myriad allegations" that Merck, Pfizer, Pharmacia, Pharmacia Corporation, and G.D. Searle (collectively the "Pharmaceutical Company Defendants") misrepresented and concealed the risks associated with Vioxx and Celebrex from both patients and physicians.[3] For example, plaintiffs allege as follows:

(a)   "Defendants concealed the serious cardiovascular risks associated with Vioxx and Celebrex." Compl. ¶ 15.

(b)   "If Defendants had not engaged in this conduct, **prescribers such as Plaintiffs' treating physicians would not have prescribed** Vioxx and Celebrex." *Id.* ¶ 16 (emphasis added).

(c)   Defendants "fail[ed] to warn of the clear and present danger posed to others by the use of their drugs Vioxx and Celebrex" and made "deliberate and misleading misrepresentations of fact to minimize the danger or **to mislead prescribers and patients as to the true risk.**" *Id.* ¶ 20 (emphasis added).

---

[2] *See Smith v. Bayer Corp. (In re: Baycol Prods. Litig.)*, Case No. 02-139, MDL No. 1431, slip op. at 4 (D. Minn. May 24, 2002) (ruling that pharmacy "cannot be held liable for failing to warn of unknown risks") (Exh. C); *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:00CV102LN, at 4-5 (S.D. Miss. Sept. 25, 2000) (denying remand because pharmacy defendants lacked "knowledge or reason to know of any of the dangers associated with the product(s)") (Exh. D); *cf. In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-07 (S.D.N.Y. 2001).

[3] The fact that each count of the Complaint is pleaded generally against all "Defendants" does not defeat fraudulent joinder where it is evident from the context that the claims cannot be referring to the Physician Defendants. *See Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:00CV102LN, at 3 n.2 (S.D. Miss. Sept. 25, 2000) (Exh. D); *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 391-93 (5th Cir. 2000). Here, although Counts I through VI are pleaded against "Defendants" generally, it is clear from the context that they are directed solely to the Pharmaceutical Company Defendants, not to the Physician Defendants.

(d)     Defendants "[f]ailed to adequately warn Plaintiffs and **their health care providers** that use of Vioxx and Celebrex carried a risk of cardiovascular events, stroke and death." *Id.* ¶ 24(e) (emphasis added).

(e)     Defendants "**[f]ailed to adequately and timely inform the health care industry of the risks of serious personal injury and death** from Vioxx and Celebrex ingestion." *Id.* ¶ 24(i) (emphasis added).

(f)     "Defendants made misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that Vioxx and Celebrex had defects, dangers, and characteristics that were other than what the Defendants had represented to Plaintiffs and the health care industry generally." *Id.* ¶ 34.

(g)     "Defendants made the misrepresentations and actively concealed information about the defects and dangers of Vioxx and Celebrex with the intention and **specific desire that Plaintiffs' health care professionals and the consuming public would rely** on such or the absence of information in selecting Vioxx and Celebrex as treatment." *Id.* ¶ 41 (emphasis added).

19.     In stark contrast to the above allegations that the Pharmaceutical Company Defendants misrepresented and concealed the true risks of Vioxx and Celebrex, plaintiffs assert in a wholly conclusory manner that the Physician Defendants "negligently, wantonly, and/or wrongfully" prescribed Vioxx and/or Celebrex "with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx and Celebrex." *Id.* ¶ 63.   These conclusory allegations, juxtaposed with the claims that the Pharmaceutical Company Defendants hid the "risks and dangers" associated with the use of these

medications, demonstrate that the Physician Defendants have been fraudulently joined.

20.     First, the Complaint does not include any factual assertions to support plaintiffs' allegations against the Physician Defendants. *See Spier*, 2003 WL 21223842 at *2 (finding fraudulent joinder where plaintiff did not include "any factual assertions" in her complaint to support her conclusory allegation that physician "knew or should have known" of drug's risks).

21.     Second, plaintiffs' allegation that the Physician Defendants knew or should have known of the dangers associated with Vioxx and Celebrex is incompatible with their repeated assertions that the Pharmaceutical Company Defendants misrepresented the true dangers associated with Vioxx and Celebrex and concealed those dangers from the health care community, including Vioxx and Celebrex prescribers such as the Physician Defendants.   Indeed, plaintiffs specifically allege in paragraph 24(i) of the Complaint that the Pharmaceutical Company Defendants "[f]ailed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx and Celebrex ingestion." *See Omobude v. Merck & Co., Inc.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (attached hereto as Exhibit E) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx"); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where the "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig.*, 2002

WL 31852826, *2 (S.D.N.Y. Dec. 18, 2002) (non-diverse physician defendant fraudulently joined where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"); *In re Diet Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (same).

22.     As the Baycol MDL Court has held, a non-diverse physician defendant is fraudulently joined where, as here, the plaintiff alleged that the Pharmaceutical Company Defendants had misrepresented and suppressed information concerning the safety and efficacy of Baycol, yet also alleged that the physician was negligent in his prescription of Baycol. *Spier*, 2003 WL 21223842, at *2. In that case, the plaintiff's main allegations were that Bayer and GSK misrepresented the alleged risks of Baycol and failed to warn of such alleged risks. Plaintiff also made a conclusory allegation that the non-diverse physician defendant negligently prescribed Baycol. *Id.* The MDL Court agreed that a conclusory allegation that the physician "'knew or should have known'" of the alleged risks was inadequate to "defeat a finding of fraudulent joinder" because "Plaintiff has failed to show that [the doctor] knew or should have known of the serious risks associated with Baycol." *Id.*

23.     The same is true in this case. Plaintiffs repeatedly allege that the Pharmaceutical Company Defendants misrepresented or suppressed facts about Vioxx and Celebrex from the public, including doctors, then also allege, in wholly conclusory terms, that the Physician Defendants were negligent in prescribing Vioxx and/or Celebrex to decedent McBrayer and plaintiff Dabbs. Plaintiffs have not included any "factual assertions" in their complaint to support the conclusory

allegation that the non-diverse physicians were liable for prescribing Vioxx and/or Celebrex.

24.    In light of these allegations, there is "no possibility that the [plaintiffs have] stated a claim against" the non-diverse Physician Defendants, and therefore the Physician Defendants have been fraudulently joined, and their citizenship does not destroy diversity jurisdiction. *Triggs*, 154 F.3d at 1287; *see, e.g.*, *Spier*, 2003 WL 21223842, at *2.

## III.   THE   AMOUNT-IN-CONTROVERSY   REQUIREMENT   IS SATISFIED.

25.    It is apparent from the face of the Complaint that the plaintiffs seek recovery of an amount in excess of $75,000, exclusive of costs and interest. Since the Complaint seeks an unspecified amount of damages, Merck must only show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." *See Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1327 (M.D. Ala. 2003) (*quoting Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)).

26.    In this case plaintiffs allege that they "suffered significant and ongoing injury and damages" as a proximate result of the defendants' conduct and decedent McBrayer's and plaintiff Wilkes' use of Vioxx and/or Celebrex.  Compl. ¶ 42.   Plaintiffs allege that the Pharmaceutical Company Defendants knew or should have known of the dangers of the medication that led to these alleged injuries. *See, e.g., id.* ¶ 59.

27.    Based on these and other allegations, plaintiffs seek unspecified compensatory damages, past and future lost income, past and future medical expenses, pain and suffering, mental anguish and emotional distress, and

permanent injury.  *Id.*, unnumbered Demand for Relief.  In addition, plaintiffs'
Complaint requests unspecified punitive damages, *id.* ¶ 20, and unspecified special
damages, *id.* ¶ 52.

28.    Alabama juries in product liability cases routinely render
verdicts in excess of $75,000 exclusive of interest and costs.  *See* Exhibit F.
Further, appellate courts routinely uphold verdicts in excess of $75,000 in such
cases.  *See, e.g., Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (addressing
on appeal an award of $400,000 in compensatory damages and $5,000,000 in
punitive damages in a medical product liability case); *Benford v. Richards Med.
Co.*, 792 F.2d 1537 (11th Cir. 1986) (discussing an award of $165,000 in
compensatory and $100,000 in punitive damages in a medical product liability
case); Exh. F.

29.    Moreover, in circumstances similar to this case, federal courts
around the country have ruled that actions alleging personal injuries caused by
Vioxx meet the amount-in-controversy threshold.  *See, e.g., Morgan v. Merck &
Co.*, No. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar. 29, 2004); *Benavidez v.
Merck & Co.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 16, 2004); *Stubblefield v.
Merck & Co.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v.
Merck & Co.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v.
Merck & Co.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v.
Merck & Co.*, Civ. No. 02-00186, slip op. at 2 (D. Haw. June 5, 2002) (collectively
attached hereto as Exhibit G).  These courts all were presented with complaints
seeking damages for injuries caused by Vioxx, and all found that the requirements
for federal diversity jurisdiction, including the amount in controversy, were
satisfied.

30.    Thus, the amount in controversy plainly exceeds $75,000, exclusive of interests and costs. *See, e.g., Tapscott*, 77 F.3d at 1359.

## IV.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED.

31.    This Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b).  The first served defendants were served with a copy of the Summons and Complaint on May 4, 2005.  Thus, this Notice of Removal is timely as it is being filed within thirty days of May 4, 2005.  See 28 U.S.C. § 1446(b).

32.    The United States District Court for the Northern District of Alabama, Southern Division embraces the county in which the removed action was pending.  28 U.S.C. §§ 81(a), 1441(a).

33.    The other properly-named defendants consent to this removal. (*See* Exhibit H hereto.)  Merck is not required to obtain the consent of the other defendants because they are fraudulently joined. *See Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1222 n.3 (M.D. Ala. 1999); *Wiggins v. American Home Products Corp.*, 2001 WL 34013629, *3 (N.D. Ala. 2001).

34.    Defendants have sought no similar relief.

35.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Circuit Court of Jefferson County, Alabama.

36.    If any question arises as to the propriety of the removal of this action, the defendants request the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, defendant Merck respectfully removes this action from the Circuit Court of Jefferson County, Alabama, bearing civil action number CV-05-2532, to this Court, pursuant to 28 U.S.C. § 1441.

Dated this ___3rd___ day of June 2005.

                              _John David Owen_____
                              John David Owen (OWE029)
                              One of the Attorneys for
                              Defendant Merck & Co., Inc.

OF COUNSEL
F. M. Haston III (HAS012)
Anne Marie Seibel (SEI009)
F. Wendell Allen (ALL058)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the foregoing on:

Tom Dutton, Esq.
PITTMAN HOOKS DUTTON KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama  35203

Lawrence B. Clark, Esq.
Gilbert C. Steindorff IV, Esq.
Wendy Madden, Esq.
ADAMS AND REESE / LANGE SIMPSON LLP
2100 Third Avenue North, Suite 1100
Birmingham, Alabama  35203

Dr. Gene L. Watterson
52 Medical Park East Drive, Suite 115
Birmingham, Alabama  35235

Dr. Joseph Singleton
4914 Meadow Brook Way
Birmingham, Alabama  35242

Dr. Nellie Cassandra Comer
UAB Health Center/Hwy 280
1250 Inverness Corners
Birmingham, Alabama  35242

Dr. Wallace Purdy
1088 Ninth Avenue SW
Bessemer, Alabama  35022-4530

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this _3rd__ day of June 2005.

_____
*John David Owen*
OF COUNSEL

22614 F

FILED

2005 Jun-30 AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUANELL Y. McBRAYER WILKES, As          )
Administratrix of the Estate of DAVID L.  )
McBRAYER, deceased and EUNICE M.          )
DABBS,                                    )
                                          )
      Plaintiffs,                        )
                                          )
                                          )
vs.                                       )
                                          )           CASE NO. 2:05-cv-1214-RRA
                                          )
GENE L. WATTERSON, M.D.;                  )
JOSEPH SINGLETON, M.D.;                   )
NELLIE CASSANDRA COMER, M.D.;             )
WALLACE PURDY, M.D., et al.,              )
                                          )
      Defendants.                        )

### MOTION TO DISMISS PURSUANT TO RULE 54(b)

COME NOW the defendants, **GENE L. WATTERSON, M.D.; JOSEPH**

**SINGLETON, M.D., NELLIE CASSANDRA COMER, M.D. and WALLACE**

**PURDY, M.D.**, and file this response to the removal of this case to Federal Court by co-

defendant Merck & Company, Inc. ("Merck").

Dr. Watterson, Dr. Singleton, Dr. Comer and Dr. Purdy move this Court to dismiss

plaintiffs' claims against them, thereby dismissing Dr. Gene L. Watterson, Dr. Joseph

Singleton, Dr. Nellie Cassandra Comer and Dr. Wallace Purdy from this lawsuit,

pursuant to Federal Rules of Civil Procedure 54(b).  As grounds for this motion, Dr.

Watterson, Dr. Singleton, Dr. Comer and Dr. Purdy show unto the Court the following:

EXHIBIT "C"

{B0508165}

1.      In Merck's Notice of Removal, they argue that Dr. Gene L. Watterson, Dr. Joseph Singleton, Dr. Nellie Cassandra Comer and Dr. Wallace Purdy have been fraudulently joined as defendants in this lawsuit simply to defeat diversity jurisdiction. (Notice of Removal, pp. 5-11).  According to Merck's Notice of Removal:  "There is complete diversity in this case because the purportedly non-diverse Physician Defendants have been fraudulently joined."  (Notice of Removal, p. 5).  The Notice of Removal goes on to state that "'there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse)' defendants."  (Notice of Removal, p. 5).  The Notice of Removal claims that the defendant physicians are fraudulently joined because the allegations in the plaintiffs' Complaint are "conclusory" and "are contradicted by specific allegations that the manufacturer defendant concealed information from the general public, including healthcare providers."  (Notice of Removal, p. 6).

2.      These defendant physicians agree with, adopt and incorporate by reference herein, Merck's arguments and supporting material contained in its Notice of Removal with respect to the claim that these defendant physicians were fraudulently joined. Wherefore, these defendants respectfully move that this Court enter an Order pursuant to Federal Rules of Civil Procedure 54(b) dismissing these physician defendants.

WHEREFORE, PREMISES CONSIDERED, Dr. Gene L. Watterson, Dr. Joseph Singleton, Dr. Nellie Cassandra Comer and Dr. Wallace Purdy, move that this Court find that these defendant physicians were fraudulently joined and dismiss them as defendants in this case pursuant to Federal Rules of Civil Procedure 54(b).

**s/Randal H. Sellers**
Randal H. Sellers
Attorney for Defendants
ID #:  asb-3398-e56r
STARNES & ATCHISON, LLP
Post Office Box 598512
Birmingham, AL  35259-8512
Telephone:(205) 868-6019
Facsimile: (205)868-6099
E-mail:rhs@starneslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to he following:

Tom Dutton, Esquire
2001 Park Place North
1100 Park Place Tower
Birmingham, AL  35203

John David Owen, Esquire
F. M. Haston, III, Esquire
Anne Marie Seibel, Esquire
F. Wendell Allen, Esquire
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104

Lawrence B. Clark, Esquire
Gilbert C. Steindorff, IV, Esquire
Wendy Madden, Esquire
2100 Third Avenue North, Suite 1100
Birmingham, AL  35203

Respectfully submitted,

**s/Randal H. Sellers**
Randal H. Sellers
Attorney for Defendants
ID #:  asb-3398-e56r
STARNES & ATCHISON, LLP
Post Office Box 598512
Birmingham, AL  35259-8512
Telephone:(205) 868-6019
Facsimile: (205)868-6099
E-mail:rhs@starneslaw.com

{B0508165}                    3

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:           [202] 502-2888

http://www.jpml.uscourts.gov

February 15, 2006

TO INVOLVED COUNSEL

Re: MDL-1657 -- In re Vioxx Marketing, Sales Practices and Products Liability Litigation
Re: MDL-1699 -- In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation

> *Juanell Y. McBrayer Wilkes, et al. v. Merck & Co., Inc., et al.*, N.D. Alabama, C.A. No. 2:05-1214
> *Jackie Collins v. Merck & Co., Inc., et al.*, S.D. Illinois, C.A. No. 3:05-451
> *Gracie Blount v. Merck & Co., Inc., et al.*, S.D. Illinois, C.A. No. 3:05-673

Dear Counsel:

For your information, I am enclosing a copy of an order filed today by the Panel in the above-captioned matter.

Very truly,

Michael J. Beck
Clerk of the Panel

By _____
Deputy Clerk

Enclosure

EXHIBIT "D"

JPML Form 34B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2006

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NOS. 1657 & 1699*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS
     LIABILITY LITIGATION*
*IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND
     PRODUCTS LIABILITY LITIGATION*

*Juanell Y. McBrayer Wilkes, et al. v. Merck & Co., Inc., et al.,* N.D. Alabama, C.A. No. 2:05-1214
*Jackie Collins v. Merck & Co., Inc., et al.,* S.D. Illinois, C.A. No. 3:05-451
*Gracie Blount v. Merck & Co., Inc., et al.,* S.D. Illinois, C.A. No. 3:05-673

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D.
LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR.,
KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

*ORDER OF TRANSFER WITH SIMULTANEOUS
SEPARATION, REMAND AND TRANSFER*

Presently before the Panel are motions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in the two Illinois actions and the health care provider defendants in the Alabama action seeking to vacate the Panel's order conditionally i) transferring these actions involving the prescription medication Vioxx (manufactured by Merck & Co., Inc. (Merck)) to the Eastern District of Louisiana for inclusion in the Section 1407 proceedings occurring there in MDL-1657; ii) simultaneously separating and remanding claims in these actions relating to prescription medications Bextra and Celebrex (manufactured by Pfizer Inc. (Pfizer)) to their respective transferor districts; and iii) transferring the resulting Bextra/Celebrex actions to the Northern District of California for inclusion in MDL-1699 pretrial proceedings. Defendants Pfizer, Pharmacia Corp., G.D. Searle LLC and Merck oppose these motions and urge effectuation of the Panel's order.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with i) actions in MDL-1657 previously transferred to the Eastern District of Louisiana, and ii) actions in MDL-1699 similarly centralized in the Northern District of California. The Panel further finds that transfer for inclusion in the coordinated or consolidated pretrial proceedings in those two districts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Transfer is also appropriate for reasons expressed by the Panel in its

---

* Judge Motz took no part in the decision of this matter.

- 2 -

original orders directing centralization in these two dockets. In MDL-1657, the Panel held that the Eastern District of Louisiana was a proper Section 1407 forum for actions relating to Vioxx. *See In re Vioxx Products Liability Litigation,* 360 F.Supp.2d 1352 (J.P.M.L. 2005). Likewise, the Panel held that the Northern District of California was a proper Section 1407 forum for actions relating to Bextra and/or Celebrex. See *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation,* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Pending motions to remand these actions to state court can, in appropriate parts, be presented to and decided by each of the transferee courts. *See, e.g., In re Ivy,* 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation,* 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Eldon E. Fallon for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1657 -- *In re Vioxx Marketing, Sales Practices and Products Liability Litigation.* The claims relating to Pfizer's Bextra and Celebrex prescription medications are separated and remanded, pursuant to 28 U.S.C. § 1407(a), to their respective transferor courts.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, the resulting actions involving claims relating to Bextra and Celebrex are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings occurring there in MDL-1699 – *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation.*

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

FILED

2005 Jun-16  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JUANELL Y. McBRAYER WILKES,<br>as Administratrix of the Estate of<br>David L. McBrayer, deceased, and<br>EUNICE M. DABBS,<br><br>   Plaintiffs,<br><br>vs.<br><br>MERCK & CO., INC.; et al.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NUMBER<br>)      CV-05-RRA-1214-S<br>)<br>)<br>)<br>) |

## MOTION TO REMAND

Come now Juanell Y. McBrayer Wilkes, as Administratrix of the Estate of David L. McBrayer, deceased, and Eunice M. Dabbs, and, pursuant to 28 U.S.C. § 1447(c), move this Court to remand the above-styled matter back to the Circuit Court of Jefferson County, Alabama.   In support of this motion to remand, plaintiffs state as follows:

### Introductory Matters

1. On April 29, 2005, in the Circuit Court of Jefferson County, Alabama, plaintiffs commenced a civil action by filing a complaint.  The named party-defendants were Merck & Company, Inc.; Pfizer, Inc.; Pharmacia Corporation

EXHIBIT "E"

f/k/a 1933 Monsanto; G.D. Searle, LLL; Gene Watterson, M.D.; Joseph Singleton, M.D.; Nellie Cassandra Comer, M.D.; and Wallace Purdy, M.D.

2. In the complaint, Dr. Watterson is described as "a treating physician [who] prescribed the brand-name prescription drug, Celebrex (celecoxib) to ... David L. McBrayer." Complaint ¶ 8.

3. In the complaint, Drs. Singleton, Comer, and Purdy are identified as Eunice Dabbs's treating physicians. Complaint ¶¶ 9-11. It is alleged that Drs. Singleton and Comer both prescribed "Celebrex (celecoxib) and Vioxx (rofecoxib)" to her. Complaint ¶¶ 9-10. It is alleged that Dr. Purdy prescribed just Vioxx to her. Complaint ¶ 11.

4. In the complaint, it is further alleged (a) that David McBrayer resided in Alabama, (b) that Eunice Dabbs resides in Alabama, and (c) that all four treating physicians practiced in Alabama. Complaint ¶¶ 1-2 & 8-11.

5. Count VIII of the complaint is entitled "Medical Malpractice" and asserts a medical-negligence claim against Drs. Watterson, Singleton, Comer, and Purdy. Complaint ¶¶ 60-63. Specifically, it is alleged that these treating physicians wrongfully "prescribed and/or provided samples of the brand-name prescription drugs Vioxx and Celebrex to [David McBrayer or Eunice Dabbs] with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx and Celebrex." Complaint ¶ 63.

6. On June 3, 2005, Merck filed a Notice of Removal.

7. Also, on June 3, 2005, Pfizer, Inc.; Pharmacia Corporation f/k/a 1933 Monsanto; Pharmacia & Upjohn Company; and G.D. Searle, LLC filed a joint pleading entitled "Joinder in Notice of Removal."

8. In the notice of removal, Merck asserted a single source of federal subject-matter jurisdiction, namely diversity-of-citizenship jurisdiction.  Notice of Removal ¶¶ 3-4.

9. In the notice of removal, while observing that the citizenship of each treating physician is not alleged in the complaint, Merck neither asserted that these treating physicians are not Alabama residents nor proffered any evidence that they are not Alabama residents.  ¶ 13 & n.1.

10.   In the notice of removal, Merck contended that, as to the issue of removal jurisdiction and subject-matter jurisdiction, Drs. Watterson, Singleton, Comer, and Purdy can be ignored because each physician was fraudulently joined as a party-defendant.  Notice of Removal ¶¶ 13-24.


### General Legal Principles as to Removal Jurisdiction

11.   Federal courts are courts of limited jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994).

12. Removal statutes must be strictly construed because Congressional intent in enacting removal legislation was to restrict removal jurisdiction. Shamrock Oil & Gas Corp. v. Streets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 2d 1214 (1921); Lane v. Champion Internat'l Corp., 827 F. Supp. 701, 705 (S.D. Ala. 1993).

13. Because federal removal jurisdiction is very limited, the remanding of a removed case is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." Klempner v. Northwestern Mut. Ins. Co., 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001)(citations omitted).

14. The removing party bears the burden of demonstrating the existence of federal removal jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921); Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002). The removing party has the burden of proving any asserted fraudulent joinder. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing

evidence.  <u>Parks v. New York Times Co.</u>, 308 F.2d 474, 478 (5th Cir. 1962), <u>cert. denied</u>, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

15.   In determining whether a colorable claim is asserted against a non-diverse defendant, the court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." <u>Pacheo de Perez v. AT&T Co.</u>, 139 F.3d 1368, 1380 (11th Cir. 1998).  "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a court must] find that joinder was proper and remand [the] case to state court."  <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997).

<u>Physicians Not Fraudulently Joined</u>

16.   Merck proffered no evidence that, like David McBrayer, at the time of his death, and Eunice Dabbs, presently, Drs. Watterson, Singleton, Comer, and Purdy are not Alabama residents.

17.   In its notice of removal, Merck wrote:  "Specifically, in light of the factual allegations in the Complaint, 'there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse)' defendants.  <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998)."  <u>Notice of Removal</u> ¶ 14.  After pointing out the factual allegations in the complaint regarding

Merck's and the other Pharmaceutical Company Defendants' hiding of the "risks and dangers" associated with Vioxx and Celebrex, Merck contended that the present plaintiffs cannot pursue a medical-negligence claim based on wrongfully prescribing such drugs "with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx and Celebrex." Notice of Removal ¶ 19. According to Merck, the present plaintiffs cannot alternatively argue (a) that Merck concealed material information from the treating physicians, who would have acted differently if properly warned regarding the risks and dangers associated with Vioxx and Celebrex or (b) that treating physicians knew sufficient information about Vioxx and Celebrex to appreciate that neither should have been prescribed to David McBrayer and Eunice Dabbs.

18.   Merck fails to demonstrate that Drs. Watterson, Singleton, Comer, and Purdy are fraudulently joined as party-defendants.  Applying Alabama substantive law, these treating physicians would not be entitled to a Rule 12(b)(6)-based dismissal as party-defendants.  Applying the legal principles announced by the Eleventh Circuit, this Court should not conclude that these treating physicians were fraudulently joined.

19.   While citing several opinions in its notice of removal, Merck misrepresented critical information regarding some of the cited opinions and totally ignored numerous opinions that seriously undermine its contentions.

6

20.     Merck cited the opinion in <u>In re Diet Drugs (Phentermine,</u>
<u>Fenfluramine, Dexfenfluramine) Products Liability Litigation,</u> 220 F. Supp. 2d 414
(E.D. Pa. 2002).   <u>Notice of Removal</u> ¶ 21.   Specifically, Merck directed this
Court's attention to page 424 of that opinion.  On page 424 of that opinion, the trial
court was discussing whether pharmacies and sales representatives were
fraudulently joined, not the possible fraudulent joinder of treating physicians.
Earlier in the opinion, there was a discussion of the fraudulent joinder of treating
physicians.  220 F. Supp. 2d at 422.  In one lawsuit, there were fifty named
plaintiffs, and Dr. Ditta, Yount, and Hersh were named defendants.  Forty-eight of
the plaintiffs were not treated by or had any contact with these physicians.
Plaintiff Crystal Gatlin alleged that she had been treated by Dr. Ditta, and Plaintiff
Verna Brown alleged that she had been treated by Dr. Yount.  The trial court found
that "AHP has clearly met its heavy burden of establishing that Dr. Hersh was
fraudulently joined as to all plaintiffs, Dr. Ditta was fraudulently joined except as
to plaintiff Crystal Gatlin and Dr. Yount was fraudulently joined except as to
plaintiff Verna Brown." 220 F. Supp. 2d at 422.  Therefore, the trial court granted
a remand as to Crystal Gatlin and Verna Brown.  In other words, a treating
physician was not fraudulently joined as to these two plaintiffs.  See also <u>Greene v.</u>
<u>Wyeth,</u> 344 F. Supp. 2d 674 (D. Nev. 2004), wherein the court severed out the two

plaintiffs who were treated by the physician named as party-defendant and remanded their claims back to state court.

21.   Obviously, in Diet Drugs and Greene, the courts found that plaintiffs could simultaneously prosecute claims against manufacturer-defendants and treating physicians in scenarios such as the present matter.   In the present matter, Juanell Wilkes alleged that Dr. Watterson was David McBrayer's treating physician, and Eunice Dabbs alleged that Drs. Singleton, Comer, and Purdy were her treating physicians.   Following the analyses employed in Diet Drugs and Greene, Merck has failed to meet its burden of showing that these treating physicians were fraudulently joined in the present lawsuit.

22.   In Crone v. Pfizer, Inc., 2004 WL 1946386 (N.D. Cal. Sep. 1, 2004), the trial court specifically addressed Pfizer's fraudulent-joinder argument that was predicated on In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), and In re Bacyol Prods. Litig., 2003 WL 21223842 (D. Minn. May 27, 2003)(often referred to as "Spier"), the two opinions most heavily relied upon by Merck in its notice of removal.   The Crone court wrote:

> The Pfizer Defendants suggest that Plaintiffs' Complaint is internally inconsistent because it alleges that the Pfizer Defendants failed to warn prescribing physicians of the risks but also alleges that the physician failed to warn his patient of the risks.   The Pfizer Defendants argue that by alleging the former, Plaintiffs refute the viability of the latter and cites the holdings in In re Baycol Prods. Litig., 2003 WL 21223842 (D. Minn.

8

2003), and In re Rezulin Prods. Liabl. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), both factually similar to the case at bar, to support their argument.

In both Baycol and Rezulin, the plaintiffs brought suit against pharmaceutical manufacturers and their prescribing physicians for injuries they sustained that they alleged were caused by the ingestion of a prescribed medication. The physician in each case was a non-diverse defendant. In each case, the manufacturing defendants removed the action to federal court arguing that because the physician was fraudulently joined, the federal court had diversity jurisdiction. In each case, the district court agreed and denied the plaintiff's motion for remand, finding that the plaintiff had failed to establish a viable claim against the physician. Both courts found that the plaintiffs' claims that the pharmaceutical manufacturers had concealed material facts about the safety of the drugs from prescribing physicians refutes any allegation that the prescribing physicians knew or should have known abut the risks.

The Court is not persuaded to find the same result in the case at bar. In both Baycol and Rezulin, the district courts held that internally inconsistent pleadings in pharmaceutical products liability cases where the manufacturer and the prescribing physician are named defendants support a finding of fraudulent joinder. However, in nearly identical circumstances, another court came to the opposite conclusion. In Ritchie v. Warner-Lambert Co., 2001 U.S. Dist. LEXIS 6783, at * 4-5 (E.D. La. 2001)[also found at 2001 WL 527501], the district court rejected the drug manufacturing defendants' argument that a physician cannot be liable for failure to warn where the complaint specifically alleges that the manufacturers represented to the physician that the drug was safe because "when a plaintiff sues multiple defendants, the allegations against the multiple defendants are often inconsistent." See also Barragon v.

<u>Warner-Lambert Co.</u>, 216 F. Supp. 2d 627 (W.D. Tex. 2002).

The difference between <u>Richie</u> and <u>Barragon</u> on the one hand, and <u>Baycol</u> and <u>Rezulin</u> on the other seems to lie in the viability of the claim alleged against the non-diverse physician, not in the consistency or inconsistency of the pleadings across multiple defendants. For example, in <u>Baycol</u>, the court found that the plaintiff's complaint did not include any factual assertions to support the conclusory allegations that the physician knew or should have known of the risks. Similarly, in <u>Rezulin</u>, the court found that the plaintiffs "do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of [the drug]." <u>Id</u>. at 295. "That Mr. Oblena is even a physician is impossible to determine from the face of the complaint .... In fact, it is impossible to determine anything about Oblena, because he is not mentioned in the complaint, other than in the introduction. He is simply included in all of the allegations against 'defendants' in general." <u>Id</u>. at 294-95. In <u>Ritchie</u>, however, the court found that the plaintiff's claim that the physician failed to follow the drug's package insert instructions and warnings, failed to monitor and evaluate the patient for adverse effects of the drug, and failure to warn the patient of the risks were sufficient to establish a viable cause of action against the non-diverse defendant. The district court remanded the action to state court finding that the non-diverse physician had not been fraudulently joined and that removal was improper.

The Court finds that here, the cause of action that the Plaintiffs allege against [Dr.] Jennings most closely resembles the one alleged against the prescribing physician in <u>Ritchie</u>. Unlike the <u>Baycol</u> and <u>Rezulin</u> plaintiffs, Plaintiffs in the case at bar have asserted in their Complaint facts that support the allegation that Dr. Jennings knew or should have known that Neurontin was risky. As described above, Plaintiffs claim that Dr.

10

Jennings owed the decedent specific duties to investigate any risks associated with ingesting Neurontin, to warn the decedent of any risks, to follow the instructions on the package insert, and to prescribe proper dosages and offer safer alternatives, and that Dr. Jennings breached those duties.   ...   The cause of action against the prescribing physician in the Baycol case was far more general and conclusory than the one at issue in this case. Plaintiffs here have also done far more than the plaintiff in Rezulin, who apparently did nothing more than name the prescribing physician as a defendant.  The Court finds that as in Ritchie, Plaintiffs have alleged a viable cause of action for medical negligence against the prescribing physician.

2004 WL 1946386 at * 3-5.

23.  With regard to the medical-negligence cause of action asserted against Drs. Watterson, Singleton, Comer, and Purdy, the present complaint is far more akin to the complaints in Crone, Ritchie, and Barragan than the complaints in Baycol and Rezulin.  Drs. Watterson, Singleton, Comer, and Purdy are specifically identified as treating physicians who prescribed the subject medication or medications.  Moreover, a separate count is devoted to the treating physicians alone, as opposed to lumping the treating physicians with the product-supplier defendants in asserting various products-liability causes of action.  A medical-negligence claim is asserted against the treating physicians, a cause of action that is inapplicable to the product-supplier defendants.

24.  In summation, no procedural rule estops the present plaintiffs from contending that, despite the alleged misconduct of Merck, the treating physicians

possessed sufficient information to appreciate that prescribing Vioxx and/or Celebrex was contraindicated for David McBayer and/or Eunice Dabbs. In the opinions discussed herein, other courts have found no such procedural rule and held that a patient or the personal representative of a deceased patient may simultaneously prosecute products-liability claims against drug companies and a medical-negligence claim against the prescribing physician. In those instances where a court determined that the treating physician had been fraudulently joined, there were significant indications that the plaintiff was not serious about prosecuting any claim against the treating physicians, for example, mentioning the treating physician only once in the complaint or not asserting a distinct medical-negligence claim. In the present matter, Merck pointed out no such significant indications but, instead, argued only that it was inconsistent to allege that Merck "deceived" the treating physicians and that the treating physicians knew, actually or constructively, of the risks or dangers associated with these two medications. Merck's sole argument is inadequate to meet the heavy burden of demonstrating that Drs. Watterson, Singleton, Comer, and Purdy were fraudulently joined. A remand is appropriate and should be granted.

25.   Juanell Wilkes and Eunice Dabbs reserve the right to submit a memorandum brief in further support of their motion to remand.

WHEREFORE, for the reasons stated herein, Juanell Wilkes and Eunice Dabbs again ask this Court to enter an order remanding this matter back to the Circuit Court of Jefferson County, Alabama.

s/ Tom Dutton
TOM DUTTON (ASB-2059-U50T)

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

COUNSEL FOR DEFENDANT

John David Owen, Esquire
F. M. Haston, III, Esquire
Anne Marie Seibel, Esquire
F. Wendell Allen, Esquire
BRADLEY, ARANT, ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203

Lawrence B. Clark, Esquire
Gilbert C. Steindorff, IV, Esquire
Wendy Madden, Esquire
Adams & Reese/Lange Simpson, LLP
2100 3rd Avenue North, Ste. 1100
Birmingham, Alabama  35203

and I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

**None.**

s/ Tom Dutton
TOM DUTTON (ASB-2059-U50T)

ɔɔɯl4 P

**FILED**

2005 Jun-30 AM 10:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JUANELL Y. McBRAYER WILKES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-RRA-1214-S |
| | ) | |
| MERCK & CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**
(Re Defendants' Motion to Stay, ct. doc. 5; Plaintiff's Motion to Remand, ct. doc. 7 )

The complaint and the parties' submissions concerning the above-stated motions have been studied. The plaintiffs allege that the treating resident physicians knew sufficient information about Vioxx and Celebrex to appreciate that neither should have been prescribed to the plaintiffs. They also contradictorily allege that Merck concealed material information from the physician defendants, who would have acted differently if properly warned regarding the risk and dangers associated with Vioxx and Celebrex. Moreover, the plaintiffs' only allegation against the physicians is the conclusory allegation that they "negligently, wantonly, and/or wrongfully prescribed and/or provided samples of the brand-name prescription drugs Vioxx and Celebrex to the plaintiffs with actual and/or constructive knowledge of the risk and dangers associated with the use of Vioxx and Celebrex." *Complaint ¶ 63.* Under Alabama law,

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint a detailed specification and a factual description of each act and omission alleged by plaintiff to render the health

EXHIBIT "F"

> care provider liable to plaintiff and shall include when feasible and
> ascertainable the date, time, and place of the act or acts. . . . any complaint
> which fails to include such detailed specification and factual description of each
> act and omission shall be subject to dismissal for failure to state a claim upon
> which relief may be granted.

Ala. Code § 6-5-551.  It is noted that numerous cases against Merck have been filed in this
court and have been transferred to the MDL court.

Because of the contradictory allegations against the physician defendants, and the
failure of the complaint to comply with Alabama law concerning specificity in making
allegations against physicians, it appears to be a good possibility that it will be determined
that the individual defendants were fraudulently joined.  If it were <u>clear</u> that these physicians
were not fraudulently joined, and if judges from this district were ruling on the motions to
remand, this motion to stay might be denied and the motion to remand ruled on.  The
opposite being the event, and in order to have consistent rulings, the motion to stay is
**GRANTED**, and all proceedings in this case, including the motion to remand, are **STAYED**
pending action by the MDL court.

DONE this 30th day of June, 2005.

ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS | ) | MDL Docket No. 1657 |
| LIABILITY LITIGATION | ) | CV:2:05-md-01657-EEF-DEK |
| | ) | SECTION L |
| | ) | |
| This Document Relates to: | ) | JUDGE FALLON |
| Juannell Y. McBrayer Wilkes, et al., | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| v. | ) | ROBERT R. ARMSTRONG, JR. |
| Merck & Co., Inc., et al., | ) | |
| Defendant. | ) | |
| CASE NO.: 005-2532 | ) | |

## NOTICE OF HEARING

Please take notice that the defendants, **Gene L. Watterson, M.D., Joseph Singleton,**

**M.D., Nellie Cassandra Comer, M.D., and Wallace Purdy, M.D.'s**, Renewed Motion to

Dismiss, Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and Incorporated

Memorandum in Support of Same will be brought on for hearing on the 29th day of March,

2006, at 9 o'clock.

Respectfully submitted,

s/Randal H. Sellers
    Bar No.: ASB-3398-E56R
s/L. Ben Morris
    Bar No.: ASB-1786-A52M
Attorneys for said Defendants

Randal H. Sellers
STARNES & ATCHISON, LLP
Post Office Box 598512
Birmingham, AL  35259-8512
Telephone:   205-868-6000
Fax:         205-868-6099
E-mail:      rhs@starneslaw.com

L. Ben Morris
STARNES & ATCHISON, LLP
Post Office Box 598512
Birmingham, AL  35259-8512
Telephone:   205-868-6000
Fax:         205-868-6099
E-mail:      lbm@starneslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing NOTICE OF HEARING  has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand-delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8 on this 9th day of March, 2006.

OF COUNSEL

cc:

Tom Dutton, Esquire
PITTMAN, HOOKS, DUTTON,  KIRBY & HELLUMS
2001 Park Place North
1100 Park Place Tower
Birmingham, AL  35203

John David Owen, Esquire
F. M. Haston, III, Esquire
Anne Marie Seibel, Esquire
F. Wendell Allen, Esquire
BRADLEY, ARANT, ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104

Lawrence B. Clark, Esquire
Gilbert C. Steindorff, IV, Esquire
Wendy Madden, Esquire
ADAMS AND REESE/LANGE SIMPSON LLP
2100 Third Avenue North, Suite 1100
Birmingham, AL 352303

Phillip A. Wittman, Esquire
STONE, PIGMAN, WALTHER, WITTMANN, LLC
546 Carondelet St.
New Orleans, Louisiana 70130-3588

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
201 St. Charles Avenue
Suite 4310
New Orleans, Louisiana 70170