UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| | JUDGE FALLON |
| This document relates to All Class Actions | |
| | MAG. JUDGE KNOWLES |

## DEFENDANT MERCK & CO., INC.'S RESPONSE TO PLAINTIFFS' STEERING COMMITTEE'S NOTICE OF SUPPLEMENTAL AUTHORITY

The PSC recently submitted to the Court a decision from New Jersey's intermediate court of appeals to support its position that under New Jersey's choice-of-law rule, the Court should apply substantive New Jersey law to the personal injury and medical monitoring claims[1] of purported class members from all fifty states. In that case, *Rowe v. Hoffman-La Roche Inc.*, a panel of three appellate judges split 2-1 on the question whether to apply New Jersey product liability law to the claims of a plaintiff from Michigan, a state that has essentially barred product liability cases against drug manufacturers. No. A-4522-03T3, 2005 WL 3804689 (N.J. Super. Ct. App. Div. Feb. 28, 2006). Merck respectfully submits this brief response to address that decision and why it should have no bearing on the Court's analysis of the pending class action motions.

---

[1] Plaintiffs assert that New Jersey choice-of-law rules apply to their medical monitoring and personal injury class actions because the purported nationwide class representatives originally filed their actions in New Jersey. Pl. Not. at 1. (In so doing, they apparently now concede that their purchase claims class action is not uniformly subject to New Jersey choice-of-law rules.) But as Merck has previously explained, New Jersey choice-of-law rules do not govern the individual medical monitoring claims of named plaintiffs who originally filed their actions outside of New Jersey, and whose claims are subject to Merck's pending motion to dismiss. The *Rowe* decision, interpreting New Jersey choice-of-law rules, thus has no bearing on the claims of those named plaintiffs.

*First*, the decision plaintiffs have brought to the Court's decision is not the final word on the question of choice-of-law in pharmaceutical product liability cases against New Jersey companies. To the contrary, it is almost certain to be reviewed by the New Jersey supreme court because New Jersey law gives defendants an appeal as of right to the state's highest court where, as in *Rowe*, the intermediate court of appeals is divided 2-1 on review of a final trial court order. *See* N.J. Ct. R. 2:2-1(a). It is Merck's understanding that the defendant intends to exercise that right. Thus, the choice-of-law issue that divided the *Rowe* panel will ultimately be resolved by the New Jersey Supreme Court in that case.[2]

*Second*, Merck believes the *Rowe* case was wrongly decided for the reasons stated by Judge Wefing in her dissent. As the dissent explains, *id.* at *12-13 (Wefing, J., dissenting), the central flaw in the majority opinion's analysis is that its supposed balancing of the two states' interests (Michigan and New Jersey) fails to recognize – and to accord sufficient respect to – Michigan's interest in the enforcement of its product liability statute in *all* actions involving sales of drugs in Michigan to Michigan consumers. The linchpin of the majority opinion's analysis is its "infer[ence]" that the Michigan Legislation intended that the statute would solely govern actions against Michigan drug manufacturers. *Id.* at *7-8. But as the dissent shows, there is no evidence in the text or history of the statute to support that inference.

In the one case the majority cites to support its inference, a federal district court merely noted that "the Michigan legislature has expressly recognized Michigan's interest in regulating drug product manufacturers in enacting a drug product liability immunity statute." *Ammend v. BioPort, Inc.*, 322 F. Supp. 2d 848, 876 (W.D. Mich. 2004). *Ammend* thus simply confirms the obvious – that Michigan intended to accord immunity to drug manufacturers – without any

---

[2] As noted in Merck's prior briefing, another panel within New Jersey's Appellate Division unanimously reached the precise opposite conclusion in the consumer fraud context. *See Margulies v. Chase Manhattan Mortgage Corp.*, 2005 WL 2923580 (N.J. Super. App. Div. Nov. 7, 2005).

indication at all that Michigan intended to accord such immunity *only* to *Michigan* drug manufacturers. Similarly, the fact that "several Michigan business and manufacturing associations" supported the "comprehensive tort reform bill" of which the FDA-immunity provision was only one part (*Rowe*, 2005 WL 3804689, at *8) also does not establish – or even suggest – that the provision was designed to be invoked only by Michigan manufacturers.

To the contrary, as the *Rowe* dissent observes, the legislative history of the Michigan statute "speaks of a wider concern than a parochial desire to protect local pharmaceutical manufacturers." *Rowe*, 2005 WL 3804689, at *12 (Wefing, J., dissenting). The official "Senate Fiscal Agency Analysis" prepared in connection with the bill, for example, expresses concerns about "curtailed innovation" and "higher consumer costs." *Id.* (quoting *Senate Fiscal Agency Analysis*, Sen B. 344, H.B. 4508 (Revised Enrolled Analysis), Jan. 11, 1996). And the Sixth Circuit has specifically held that the Michigan law was motivated by concerns that "unlimited liability for drug manufacturers … could add substantially to the cost and unavailability of many drugs." *Id.* (quoting *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 967 (6th Cir. 2004)). Such concerns about innovation, availability and cost of drugs sold in Michigan would apply as much to drugs sold by non-Michigan manufacturers as they would to drugs sold by local manufacturers.

The dissent correctly concludes that "if the actions of the Michigan Legislature sprang from concern about the effect of litigation on the availability and cost of prescription medications for its citizens" – as all available evidence suggests – then "application of New Jersey law to this matter serves to frustrate the aim of that Legislature." *Id.* at *13. In contrast, the dissent notes, New Jersey has no evident interest "in seeking to assure compensation for a Michigan resident when the Michigan legislature has determined that compensation is not available." *Id.*

Moreover, New Jersey's interest in deterrence would be "unaffected by applying Michigan law to a Michigan claimant who was treated in Michigan." *Id.* The dissent thus rightly finds that the trial court should have applied Michigan law to the claims of the Michigan plaintiff.

***Finally***, even if the *Rowe* decision were correct and even if it were upheld on appeal to the Supreme Court, it does not answer the question this Court faces – whether to apply New Jersey law to plaintiffs from all fifty states in medical monitoring and personal injury class actions against Merck. *Rowe* is a single plaintiff action involving the comparative interests of only New Jersey and Michigan in the application of products liability law to the claims of a Michigan resident. As noted above, Michigan has a unique product liability regime – unlike any other state, Michigan entirely forecloses an injured consumer from bringing a "failure to warn" product liability action against a pharmaceutical manufacturer when the warning at issue was approved by the FDA. *See* M.C.L. § 60.2946(5); *Rowe*, 2005 WL 3804689, at *2 ("Michigan law ... effectively provides absolute immunity to a drug manufacturer in a failure to warn-to-warn case" based upon "an FDA-approved warning"). Even if the majority were correct in interpreting this law as focused on Michigan companies – as opposed to the larger policy issues identified by the dissent – there is absolutely no evidence that 48 other states intended their residents to be governed by New Jersey law when they sue New Jersey companies. If the *Rowe* decision were transferable to this case, it would mean, for example, that Louisiana residents who took Vioxx would be subject to New Jersey's medical monitoring law even though Louisiana has enacted a statute specifying the circumstances in which medical monitoring is available to Louisiana consumers, with no suggestion whatsoever in the statute or legislative history that the law applies only when medical monitoring is sought against a Louisiana company. *See, e.g.*, La. C.C. art 2315.

Put simply: this Court faces the choice-of-law question of whether New Jersey law should be applied to claims arising out of *every other state*, including states that have made their own efforts to balance the competing interests of consumers and manufacturers -- efforts which may and often do differ from New Jersey's. It is one thing to say that New Jersey's careful balance approach should prevail over Michigan's absolute immunity in a case affecting one consumer who would otherwise be denied recovery outright (assuming *arguendo* that the majority's interpretation of the Michigan legislature's intent were accurate); it is another thing altogether to say that New Jersey's careful balance should override every other state's own careful balance, thereby dictating for all consumers in all states what measure of relief will be available against New Jersey pharmaceutical manufacturers.

In short, Merck submits that if *Rowe* is relevant here at all – and if it is even worth considering before the New Jersey Supreme Court decides the case – Judge Wefing's dissent reflects the proper analysis under New Jersey's governmental-interest choice-of-law test, particularly in the context of the nationwide class actions proposed by plaintiffs.

Respectfully submitted,

*/s/ Carmelite M. Bertaut*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN, L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504)-581-3200
Facsimile: (504)-581-3361

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Merck & Co., Inc.

801948v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant Merck & Co., Inc's Response to Plaintiffs' Steering Committee's Notice of Supplemental Authority has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 15th day of March, 2006

*[signature]*

801948v.1