**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 22  PH 12: 18

LORETTA G. WHYTE
CLERK

IN RE: VIOXX PRODUCTS
LIABILITY LITIGATION

MDL No.: 1657

SECTION: L

This document relates to:

Civil Action No. 06-968

RUTH ZIER,

                Plaintiff,

vs.

JUDGE FALLON
MAG. JUDGE KNOWLES

MERCK & CO., INC., CHRIS METROPOLUS,
JEROME PITTMAN, JUNE V. MARCOTTE,
VICTOR SOPINA, JEFF BASTI, AMY MOORE,
VICKI ST. JOHN CRAWFORD, and RICHARD TATMAN,

        Defendants.

_____/

## PLAINTIFF'S MOTION FOR REMAND
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiff, **RUTH ZIER**, pursuant to 28 U.S.C. §1447(c), moves for an Order

remanding this case to the Circuit Court of the Sixth Judicial Circuit, in and for Pasco

County, Florida, and in support would show:

      1.     Plaintiff, at all times material, was a resident of the State of Florida.  The

complaint names fifteen Defendants: **MERCK & CO., INC; CHRIS METROPOLUS**

(**"METROPOLUS"**); **JEROME PITTMAN** ("PITTMAN"); **JUNE V. MARCOTTE**

("MARCOTTE"); **VICTOR SOPINA** ("SOPINA"); **JEFF BASTI** ("BASTI"); **AMY**

**MOORE** ("MOORE"); **VICKI ST. JOHN CRAWFORD** ("CRAWFORD"); and

**RICHARD TATMAN** ("TATMAN").   Upon information and belief, Defendants

_____ Fee_____
_____ Process_____
__X__ Dktd_____
__✓__ CtRmDep_____
_____ Doc. No _____

**METROPOLUS, PITTMAN, MARCOTTE, BASTI, MOORE, CRAWFORD,** and **TATMAN** are all current Florida residents and sales representatives employed by **MERCK** to provide information relative to Vioxx to Florida physicians and others, including Plaintiff and her prescribing physician. **METROPOLUS** is a **MERCK** business manager who supervised sales representatives in Florida and also was involved in promotional activities to prescribing physicians.

2.      On December 30, 2005, **MERCK** filed a Notice of Removal in the Sixth Judicial Circuit Court, and this action was transferred to the MDL on February 22, 2006. This Motion for Remand is timely due the stay on this case pending its transfer to the MDL. **MERCK** asserts in its Notice that there is diversity between properly joined parties. In addition, although **MERCK** does not directly concede that **PITTMAN, MARCOTTE, BASTI, MOORE, CRAWFORD,** and **TATMAN** are non-diverse Defendants, it asserts this Court has diversity jurisdiction because the joinder of the Defendants is fraudulent and their citizenship should be ignored.

3.      Contrary to **MERCK**'s assertions, this Court does not have diversity jurisdiction over this case under 28 U.S.C § 1332, since there are numerous Defendants who are Florida residents.    In addition, Defendants **PITTMAN, MARCOTTE, BASTI, MOORE, CRAWFORD,** and **TATMAN** are not fraudulently joined and are proper Defendants to this action, as Plaintiff has a colorable claim against each of them for fraud and misrepresentation.

WHEREFORE, Plaintiff requests that this Court issue an Order immediately remanding this action back to the Circuit Court of the Sixth Judicial Circuit, in and for Pasco

County, as **MERCK** has failed to prove that Defendants **PITTMAN, MARCOTTE, BASTI, MOORE, CRAWFORD,** and **TATMAN** were fraudulently joined in this action. Therefore, this Court lacks subject matter jurisdiction over them, and remand is appropriate.

**MEMORANDUM OF LAW**

In its Notice of Removal, **MERCK** relies on decisions from Mississippi, Texas and Louisiana (Notice of Removal, ¶13) for instances where diversity jurisdiction was found to exist, completely ignoring substantial precedent under Florida law.    In Florida, three federal judges have remanded cases to state courts in the Vioxx litigation, denying **MERCK**'s similarly unfounded assertions of fraudulent joinder and diversity jurisdiction.    White v Merck & Co., et al., No. 05-243 (M.D. Fla. Feb. 14, 2005); Kozic v Merck & Co., Inc., no. 04-324 (M.D. Fla. Aug. 2004); Tomlin, et al. v. Merck & Co., et al., No. 04-14335 (S.D. Fla. Feb. 18, 2005) Irvin v. Merck, Case No. 03-80514 CIV-HURLEY (S.D. Fla. October 9, 2003 (all of which are attached as Exhibit A).   In each of these recent cases, the courts held for purposes of remand that  the plaintiffs had properly asserted causes of action against the Vioxx sales representatives.

Defendant **MERCK** makes an unsupported allegation that diversity of citizenship exists and that Plaintiff has engaged in fraudulent joinder in order to defeat diversity in this case.  Defendant **MERCK** has further alleged that there is no reasonable possibility that Plaintiff can establish any cause of action against all named Defendants (Notice of Removal, ¶ 18), an assertion that is unsupported by Florida case law.    To defeat all allegations of fraudulent joinder, Plaintiff need only prove a possibility of recovery.  Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998); Ware v. G.D. Searle, et al., No. 05-0659 (M.D.

Ala., October 25, 2005).  In <u>Ware</u>, the Plaintiff countered Pfizer's contention that there was no reasonable basis for establishing a cause of action against defendant sales representative. The Court rejected Pfizer's argument of "fraudulent joinder" and ruled in Ware's favor with regard to limiting its inquiry to whether the plaintiff has a possibility of stating a valid cause of action against the Celebrex sales representative under state law.  **MERCK**'s removal pleadings completely ignore relevant Florida case law supporting such a cause of action, and are factually and legally unsound.  Once again, this Court should remand this case to Pasco County Circuit Court, as **MERCK**'s removal was improper.

**I.**     <u>**Defendant MERCK Fails to Prove Complete Diversity of Citizenship Exists Between Properly Joined Parties.**</u>

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity (i.e., that <u>every</u> plaintiff must be diverse from <u>every</u> defendant).  <u>Palmer v Hospital Authority of Randolph County</u>, 22 F.3d 1559, 1564 (11th Cir. 1994).  If, as here, removal is founded solely on diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a), a defendant must prove two things—that the parties are completely diverse and that the amount in controversy exceeds $75,000.  <u>DeAguilar v. Boeing Co.</u>, 47 F.3d 1404, 1410-11 (5th Cir. 1995).

Plaintiff is a resident of Pasco County, Florida.  **MERCK** is a New Jersey corporation that is authorized to conduct business in Florida.  At all times material to this case, **MERCK** was engaged in the business of developing, manufacturing, selling and promoting Vioxx to Florida physicians and others, including Plaintiff and her prescribing physicians. Defendants **PITTMAN, MARCOTTE, METROPOLUS, BASTI, MOORE, CRAWFORD,** and **TATMAN** are residents of the State of Florida, and were employed by **MERCK** as sales representatives to promote and to encourage physicians to prescribe Vioxx.   It is not

disputed that the amount in controversy exceeds $75,000. Diversity is determined as of the date the action is filed. Freeport-McMoran, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991). Accordingly, complete diversity of citizenship did not exist when this case was filed and diversity jurisdiction is lacking, as there are Florida residents who are named sales representative defendants.

## II.   Defendant MERCK Has Failed to Meet Its Substantial Burden to Prove Fraudulent Joinder.

To circumvent the fact that the parties were not completely diverse when the case was filed, **MERCK** resorts to reliance on the fraudulent joinder rule, asserting that there is "no reasonable basis" for claims against its employees **PITTMAN, MARCOTTE, METROPULUS, BASTI, MOORE, CRAWFORD,** and **TATMAN** who are all Florida residents. This assertion is groundless.

Defendant **MERCK,** as the party seeking removal, has the burden of proving *by clear and convincing evidence* that the joinder of non-diverse Defendants was fraudulent. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962)[1]. This heavy burden is placed on the party seeking removal for two reasons. First, in the absence of fraudulent joinder, the "plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). Second, "[t]he strict construction of removal statute also prevents 'exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal." Id.   The

---

[1]   In Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Court's inquiry is limited to determining whether Plaintiff has a possibility of stating a valid cause of action against named sales representative defendants under state law. Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538; Crowe, 113 F.3d at 1538. *See also* Univ. of So. Alabama v. The American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999;. Estate of Ayers v. Beaver, 48 F. Supp. 2d 1335, 1341 (M.D. Fla. 1999).

**MERCK** cites Stern v. Wyeth, Case No. 02-80620-CIV-MARRA (S.D. Fla. Jan 22, 2003) and In re Rezulin Products Liab. Litig. 133 F.Supp. 2d 272 (S.D.N.Y. 2001), stating that a motion to remand was denied where the affidavit of pharmaceutical representative established that the named employee did not have contact with plaintiff or physicians.   In In re Rezulin, the Court noted that the Plaintiff failed to provide any evidence to counter the affidavits from the sales representatives.   These cases are easily distinguishable since Defendants **PITTMAN, MARCOTTE, SOPINA, BASTI, MOORE, CRAWFORD,** and **TATMAN** have not provided any affidavits alleging that they have had no contact with Plaintiff's prescribing physicians. The notable absence of affidavits from named Defendants **PITTMAN, MARCOTTE, SOPINA, BASTI, MOORE, CRAWFORD,** and **TATMAN** and a carefully worded declaration from a third-party non-defendant are insufficient to overcome the allegations of the Plaintiff's complaint, which must be taken as true. Defendants have not provided any evidence to support the third-parties assertions and Plaintiff has been prevented from seeking discovery to substantiate the validity of the third-party Declaration.    Pursuant to Pre-Trial Order No. 21, Plaintiff does not yet have access to **MERCK**'s FACTS database for relevant discovery with regard to this case. In the case of Kozic v Merck, 8:04-CV 324-T-27TBM, (M.D. Fla. Aug. 2004), Plaintiff's counsel has

uncovered other **MERCK** resources used to tie physicians to their Vioxx sales representatives other than 'recorded' call notes that specifically mention Vioxx[2], such as the custodial files of the sales representatives that are in **MERCK**'s possession.     In <u>Pritchard v. Hancock Fabrics, Inc.</u>, 198 F.Supp.2d 1288, 1290-91 (N.D. Ala. 2002), the Court held that the Plaintiff's general allegation of negligence against the resident Defendant was not overcome by resident Defendant's affidavit which, if believed, would seem to absolve resident Defendant of liability, because as the court stated, "It is at least possible that, given an opportunity for full discovery, Pritchard might uncover evidence contradicting Goolsby's version."

**MERCK** also cites <u>Legg v. Wyeth</u>, 428 F3.d 1317 (N.D. Alabama, October 25, 2005) in its Notice of Removal (¶ 18).  <u>Legg,</u> a fen-phen case, is distinguishable in that the Plaintiff in <u>Legg</u> had no direct evidence to rebut the affidavits of the named sales representative defendants. The court noted with respect to one sales rep defendant that: "..with no evidence that [sales rep] had anything to do with Redux, there is no reasonable possibility the plaintiff's can establish a cause of action against him ..under Alabama law." <u>Id</u>. at 1324.  In stark contrast, just from the scant amount of call notes thus far provided by **MERCK,** and from depositions taken of **MERCK** sales representatives with regard to this MDL, it is evident that sales representatives were trained to and purposefully and intentionally misled physicians, over-promote the safety of Vioxx and failed to warn of Vioxx's cardiovascular risks.    (The <u>Legg</u> opinion came late in the stages of fen-phen litigation and is not applicable

---

[2] See Exhibit "B". Sales representatives are detailing doctors in colloquia, customer focus groups, national speaker forums, regional speaker forums, regional speaker round tables, clinical discussion groups, Vioxx Tuesdays, and FMC lunches.  These contacts with physicians may not necessarily be reflected in sales call notes.

here. During this stage of the MDL, Plaintiff is still conducting discovery and establishing a pattern and practice among **MERCK** sales representatives that substantiate claims of negligence, negligent misrepresentation and fraud).

### III.      Merck's Internal Documents confirm that Sales Representatives Were Trained to Mislead and Conceal Cardiovascular Risks from Physicians.

**MERCK** has alleged that federal jurisdiction exists in this case because its sales representatives were fraudulently joined. Nothing could be further from the truth. The undisputed evidence leads to the inescapable conclusion that **MERCK** knew of cardiovascular risks, at the latest, in 2000, and that **MERCK** trained its sales representatives to intentionally mislead physicians who posed questions concerning cardiovascular side effects.

In March of 2000, less than one year after the FDA approved Vioxx, the results of **MERCK**'s VIGOR trial indicated that Vioxx caused *four times* as many heart attacks as naproxen. The results of the VIGOR trial caught the attention of the FDA and many in the medical community. **MERCK** scrambled in an attempt to address concerns from prescribing physicians which would inevitably follow the results of the VIGOR trial. **MERCK** made a conscious decision to train its sales representatives to mislead, misrepresent, conceal and "dodge" questions from physicians about the cardiovascular risks associated with Vioxx. In the "dodgeball" training, sales representatives were given "obstacles" to overcome.[3] These "obstacles" are nothing more than the anticipated questions regarding safety issues of the prescribing physicians. Physicians rely heavily on sales representatives and their employers

---

[3] Attached are Bates No. MRK-AAR0019773-86, the "Dodgeball" sales training documents as Exhibit "C".

to furnish accurate information regarding the properties and the risks of the drugs they detail. Physicians rely on this information in their treatment of patients.   This document is revealing because confirms **MERCK's** scheme to obfuscate as much as possible the issue of cardiovascular risks associated with Vioxx.  Indeed, the document notes the following:

> "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than with Celebrex."

The training manual also includes "obstacle four" which states as follows:

"I am concerned about the cardiovascular effects of Vioxx."

At the end of these training materials, the **MERCK** sales representative is provided instructions on how to answer each and every question, or "obstacle" contained therein.  The **MERCK** sales representatives are instructed to "DODGE!"

On November 9, 2004, the United States Committee on Government Reform requested that **MERCK** provide the Committee with a range of documents related to its promotion of Vioxx in preparation for the May 5, 2005 hearing. A Memorandum was prepared by Rep. Henry A. Waxman to the Democratic Members of the Government Reform Committee concerning the marketing of Vioxx to physicians, dated May 5, 2005.[4]  This Memorandum and Executive Summary shed further light on the fraud and concealment perpetrated by **MERCK** and its sales representatives.  Nothing was left to the imagination of the sales force marketing this drug.  The Executive Summary stated:

> The documents indicate that Merck instructed these representatives to show physicians a pamphlet indicating that Vioxx might be 8 to 11 times safer than other anti-inflammatory drugs, prohibited the representatives from discussing

---

[4] Over 20,000 pages of MERCK documents were reviewed, evidencing that the company used its sales force to improperly ameliorate safety concerns of prescribing physicians and patients regarding Vioxx. A copy of this Memorandum is attached as Exhibit "D".

contrary studies (including those financed by Merck) that showed increased risks from Vioxx, and launched special marketing programs- named Project XXeleration and Project Offense- to overcome the cardiovascular 'obstacle' to increased sales.[5]

The Waxman Memorandum found that the **MERCK** documents were replete with a common theme: the reassurance of physicians and their patients about the safety of Vioxx by providing highly questionable and misleading information about cardiovascular risks, such as:

a.     After the VIGOR trial, the **MERCK** sales force was issued a "new resource" "to ensure that you are all well prepared to respond to questions about the cardiovascular effects of Vioxx". This was the "Cardiovascular Card".[6]  The data on this card had little or no scientific validity.

b.     On May 1, 2000, **MERCK** provided a bulletin to "all field personnel with responsibility for Vioxx".[7]  This bulletin told the sales force how to respond to a competitor's argument that "Vioxx has an increased incidence of heart attacks compared to Celebrex." (**MERCK**, *Bulletin for Vioxx*).   This involved using the "Cardiovascular Card."

c.     As a result of the February 2001 meeting of the FDA Arthritis Advisory Committee, the Committee voted that doctors should be informed of the data from the VIGOR study.  The next day, **MERCK** sent another bulletin to "all field personnel with

---

[5] Waxman Memorandum to Democratic Members of the Government Reform Committee May 5, 2005, p. 3.
[6] MERCK, *Bulletin for Vioxx: NEW RESOURCE: Cardiovascular Card*, April 28, 2000, Bates No. MRK-AAR003384-8848, is attached as Exhibit "E".
[7] MERCK, *Bulletin for Vioxx: New Obstacle Response*, May 1, 2000, Bates No. MRKH3STMOO1294-295,is attached as Exhibit "F".

responsibility for Vioxx," instructing them to "stay focused on the EFFICACY messages for

VIOXX".[8]  The bulletin stated:

> DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS
> ADVISORY COMMITTEE..OR THE RESULTS OF THE..VIGOR
> STUDY

Sales force staff were given detailed steps to take when physicians asked about these topics,

which involved avoidance of any meaningful conversation with regard to safety issues.

### IV.    Plaintiff has a Valid Cause of Action Against MERCK's Sales Representatives for Negligence, Negligent Misrepresentation, and Fraud

MERCK argues that Plaintiff makes no specific factual allegations regarding

the actual conduct of the individual "Employee Defendants (Notice of Removal ¶ 23).   As a

threshold issue, arguments against remand and in support of removal are inappropriate if

based on the viability of the plaintiff's complaint, rather than on whether Florida law

generally provides for a cause of action against pharmaceutical sales representatives. Tomlin

v. Merck et al., 04-14335-civ-moore (S.D. Feb. 18, 2005).  "In deciding whether remand is

appropriate, the Court must determine whether plaintiffs have provided sufficient allegations

within their complaint to support any of the claims against [sales rep]." Id.   In order for

Plaintiffs to prevail on their Motion for Remand, it is only necessary that they state one

viable claim under Florida law against a [defendant sales representative].  Estate of Ayers v.

Beaver, 48 F. Supp. 2d 1335, 1342 (M.D. Fla. 1999).

Florida specifically recognizes a cause of action against a pharmaceutical sales

representative for misrepresentations made to physicians while marketing a drug.  Albertson

---

[8] MERCK, *Bulletin for Vioxx: FDA Arthritis Advisory Committee Meeting for Vioxx,* February 9, 2001, Bates No. MRK-H3STM001173 is  attached as Exhibit G".

v. Richardson-Merrell, Inc., 441 So.2d 1146 (Fla. 4th DCA 1983), *petition for review denied,* 441 So. 2d 850 (Fla. 1984); Little v. Wyeth Ayerst Labs, Inc., No. 99-2244-CIV-T-17F, slip op. at 6 (M.D. Fla. Dec. 9, 1999); Barrow v. Bristol-Myers Squibb, (NO. 96-689-CIV-ORL-19B). (M.D. Fla. Oct 29, 1998).      The recognition of a cause of action against a pharmaceutical salesperson by Albertson is also consistent with the legal principle, firmly established in Florida, that a corporate employee is personally liable (in addition to his employer) for the torts that he or she commits in the course and scope of employment. Florida Specialty, Inc., v. H 2 Ology, Inc., 742 So. 2d 523, 525 & 527 (Fla. 1st DCA 1999) (stating a cause of action against employee for negligent actions and negligent failure to warn); White-Wilson Medical Center v. Dayta Consultants, Inc., 486 So. 2d 659, 661 (Fla. 1st DCA 1986) (holding that "officers or agents of a corporation may be held liable for their own torts even if such acts are performed within the scope of their employment or as corporate officers or agents. This is so even if no argument is advanced that the corporate form should be disregarded."); Kerry's Brombelia Nursery, Inc. v. Reiling, 561 So.2d 1305, 1306 (Fla. 3d DCA 1990); Orlovsky v. Solid Surf, Inc., 405 So. 2d 1363, 1364 (Fla. 4th DCA 1987).

Under Florida law, a person can be held liable for negligent misrepresentation when he or she supplies false information for the guidance of others without exercising reasonable care in obtaining or communicating that information.  Gilchrist Timber Co. *v.* ITT Rayonier, Inc., 696 So.2d 336, 339 (Fla. 1997).  Also, both an employer and its employee may be held liable for injuries to a Plaintiff due to the employee's negligence and misrepresentations. Greenberg v. Post, 19 So. 2d 714 (Fla. 1944).

## V.   Plaintiff States, with Sufficiency, the Allegations in the Complaint

In its Notice of Removal, **MERCK** cites the recent decisions in Hernandez v Merck

& Co., Inc. et al. Case No. 6:05-CV-00211-ORL-31-KRS(M.D. Fla. May 3, 2005) and

Merced-Torres v. Merck & Co.,Inc., Case No. 6:05-CV-449-ORL-19DAB,(May 18, 2005) as

evidence of similar cases where Plaintiff failed to allege specific misrepresentations made to

Plaintiff's prescribing physicians. (Notice of Removal ¶ 23). In contrast, in both Hernandez

and Merced-Torres, the named sales representative defendants filed affidavits that they did

not call on Plaintiff's physicians.In this case,     **PITTMAN, MARCOTTE, SOPINA,**

**BASTI, MOORE, CRAWFORD,** and **TATMAN** have filed no such affidavits.  Plaintiff in

this case has conducted a diligent search of the national database to match up Plaintiff's

prescribing physician and the corresponding **MERCK** sales representatives.     Plaintiff

identified these particular named Defendants only after a thorough review of the limited

documents that are accessible to counsel at this time.

Plaintiff has alleged sufficient facts supporting a claim for fraud and negligent

misrepresentation against Defendants **PITTMAN, MARCOTTE, SOPINA, BASTI,**

**MOORE, CRAWFORD,** and **TATMAN** in accordance with Florida law.  In the Complaint,

Plaintiff alleges that:

> ¶50: Defendant misrepresented the safety and effectiveness of
> Vioxx to prescribing physicians, Plaintiff, and the consuming
> public, and concealed or understated the dangerous side effects
> associated with ingestion of Vioxx.

> ¶65:  Defendant's   negligent   misrepresentations   were
> communicated to Plaintiff's prescribing physician with the
> intent that they reach the Plaintiff, and that the effect of such
> representations would be that prescriptions would be written
> for Vioxx for the consuming public, including Plaintiff.

¶71: Through the Vioxx product inserts, promotional materials, and aggressive marketing, Defendant continued to misrepresent the potential risks and benefits associated with Vioxx both before and after Plaintiff's ingestion of the drug.

¶72: Defendant had a post-sale duty to warn Plaintiff, the consuming public, and prescribing physicians about the potential risks and complications associated with Vioxx in a timely manner.

¶73: Defendant misrepresented the safety and efficacy of Vioxx in their labeling, advertising, product inserts, promotional materials, or other marketing efforts.

¶81: Defendant made these fraudulent or intentional misrepresentations and actively concealed adverse information at a time when the Defendant knew that Vioxx had defects, dangers, and characteristics that were other than what the Defendant had represented to the prescribing doctors or other dispensing entities, the FDA and the consuming public, including the Plaintiff herein.   Specifically, the Defendant fraudulently or intentionally misrepresented to and/or actively concealed from Plaintiff, Plaintiff's prescribing physician or other dispensing entities, the FDA and the consuming public the following adverse information regarding the Vioxx ingested by the Plaintiff:

a.    Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that  Vioxx carried risks of serious adverse effects;

b.    Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that there were serious risks of thrombotic events associated with Vioxx, and, instead, Defendant aggressively marketed, promoted, advertised directly to consumers, and/or sold Vioxx as if there was no risk; and

c.    Failed to advise Plaintiff, Plaintiff's prescribing physician, and others that prior studies, research, reports and/or testing had been conducted linking Vioxx to serious adverse actions.

Plaintiff alleges that misrepresentations were made by the Sales Representative

Defendants **PITTMAN, MARCOTTE, BASTI, MOORE, CRAWFORD,** and **TATMAN**

to physicians, as well as others, during their detailing visits and on other occasions.  Further, Plaintiff has alleged that the misrepresentations made by the sales representative Defendants to Plaintiff's prescribing physicians dealt with the safety and efficacy of Vioxx and the warnings given by the sales representatives regarding Vioxx.

While **MERCK** is suggesting to this Court it will prevail on the claims asserted against the sales representative Defendants, by doing so, **MERCK** is "embarking on a safari in search of a judgment on the merits", which, according to Crowe and other Eleventh Circuit authority, is not allowed.  As <u>Crowe</u> and its progeny (<u>Hales</u>, included) teach, when deciding a question of fraudulent joinder, the "district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent." <u>Crowe</u>, 113 F. 3d. at 1542.

## VI.    Remands Have Been Ordered in Similar Cases

In cases that are indistinguishable, three federal Florida judges have remanded cases to state courts in the Vioxx litigation.  <u>White v Merck & Co., et al.</u>, No. 05-243 (M.D. Fla. Feb. 14, 2005); <u>Kozic v Merck & Co., Inc.</u>, no. 04-324 (M.D. Fla. Aug. 2004); <u>Tomlin, et al. v. Merck & Co.</u>, et al., No. 04-14335 (S.D. Fla. Feb. 18, 2005); <u>Irvin v. Merck</u>, Case No. 03-80514 CIV-HURLEY (S.D. Fla. October 9, 2003.  In each of these similar recent Vioxx decisions, the courts held for purposes of remand that the plaintiffs had asserted valid causes of action against the sales representatives.

In <u>Irvin v. Merck</u>, Case No. 03-80514 CIV-HURLEY (S.D. Fla. October 9, 2003), the Southern District of Florida faced a remand issue in a case filed against Merck and its sales representative for the wrongful death of a patient who had ingested Vioxx.  In <u>Irvin</u>, the Court remanded the action to state court after rejecting Merck's argument that the non-

diverse sales representatives had been fraudulently joined.  In <u>Kozic v. Merck</u>, Case No. 8:04-CV 324-T-27TBM, (M.D. Fla. Aug. 2004)  the Court also granted remand and stated that it "must 'pierce the pleadings' to determine whether, under controlling state law, the plaintiff has a possible or arguable claim against the non-diverse defendant, or whether, on the other hand, it is clear there can be no recovery." *See also* <u>Crowe v. Coleman</u>, 113 F. 3d 1538 (11th Cir. 1997); <u>Bobby Jones Garden Apartments, Inc. v. Suleski</u>, 391 F. 2d 172 (5th Cir. 1968).  In <u>Kozic</u>, Plaintiff successfully argued that the Defendant sales representatives made representations concerning the safety and effectiveness of Vioxx and concealed its dangerous side effects.

Over the years, a number of pharmaceutical cases have been remanded back to Florida courts where the non-diverse sales representatives were joined as parties and the case was improperly removed by the drug manufacturer, under facts that are indistinguishable from the instant case.  In <u>Little v. Wyeth Laboratories</u>, Case No. 99-2244-CIV-T-17F (Middle Dist. Fla. Dec. 9, 1999), Judge Kovachevich found that the Plaintiff had properly alleged a colorable claim against the diet drug manufacturers' sales representatives under <u>Albertson</u> and that the drug manufacturer had failed to prove fraudulent joinder.  Similar orders granting remand under <u>Albertson</u> were also entered in <u>Wrisley v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2246-CIV-T-26C (M.D. Fla. Dec. 29, 1999); <u>Hildebrand v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2240-CIV-T-26B (M.D. Fla. Dec. 29, 1999); <u>Snell v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2253-CIV-T-26A (M.D. Fla. Dec. 29, 1999); <u>Morris v. Wyeth-Ayerst Laboratories Inc., et al.</u>, Case No. 99-2381-CIV-T-26C (M.D. Fla. Dec. 29, 1999); <u>Martin v. Wyeth-Ayerst Laboratories Inc., et</u>

al., Case No. 99-2454-CIV-T-26A (M.D. Fla. Dec. 29, 1999); Parent v. Wyeth-Ayerst

Laboratories, Inc., Case No. 2:03-CV-626-FTM-29SPC (M.D. Fla. Dec. 19, 2003); Hroncich

v. Wyeth Ayerst Laboratories, Inc., Case No. 2:03-CV-659-FTM-29SPC (M.D. Fla. Jan. 12,

2004).

## CONCLUSION

Defendant **MERCK**'s removal was improper.  The only inquiry that is required from

this Court is whether there is *any possibility* that the Plaintiff can establish a claim against the

non-diverse Defendants.  Defendant **MERCK** has failed to provide any evidence that is clear

and convincing to overcome the allegations of the Plaintiff's complaint. Far from being

fraudulently joined, the sales representatives who are named Defendants in this action are, in

fact, proper parties who engaged in acts of fraud and concealment in order to sell Vioxx.

**PITTMAN, MARCOTTE, BASTI, MOORE, CRAWFORD,** and **TATMAN** were not

duped by **MERCK** and willingly participated in the scheme to defraud prescribing

physicians. Accordingly, remand is appropriate as this Court is without diversity jurisdiction.

Dated this _____ day of March, 2006.

By: _____

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
**AMY D. PREVATT, Esq. (FBN: 13858)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY the foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and by e-mail and has been served upon all parties set forth on the attached Service List by electronically uploading the same to LexisNexis File & Serve on this _____ day of March, 2006.

By: _____

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
**AMY D. PREVATT, Esq. (FBN: 13858)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

## SERVICE LIST

**Wilfred P. Coronato, Esq.**
Hughes, Hubbard & Reed, LLP
101 Hudson Street, Suite 3601
Jersey City, NJ 07302-3918
Tele: (201) 946-5700
Fax: (201) 536-0799
*Email: Coronato@hugheshubbard.com*

**Phillip A. Wittmann, Esquire**
Stone, Pigman, Walther, Wittmann, LLC
546 Carondelet St.
New Orleans, LA 71030
Tele: (504) 581-3200
Fax: (504) 581-3361
*Email: pwittmann@stonepigman.com*
Defendant's Liaison Counsel

**Aretha Delight Davis, Esquire**
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Tele: (215) 994-2423
Fax: (215) 994-2222
*Email: Aretha.davis@dechert.com*

**Susan Giamportone, Esq.**
Womble, Carlyle, Sandridge & Rice
2530 Meridian Parkway, Suite 400
Durham, NC 27713
Tele: (919) 316-4243
Fax: (919) 484-2061
*Email: SGiamportone@wcsr.com*

**Barbara Bolton Litten, Esquire**
**Patricia E. Lowry, Esquire**
**John B.T. Murray, Jr., Esquire**
**Dori K. Stibolt, Esquire**
Squire, Sanders & Dempsey
1900 Phillips Point West
777 S. Flagler Drive
West Palm Beach, FL 33401
Tele: (561) 650-7200
Fax: (561) 655-1509
*Email: blitten@ssd.com*
*Email: plowry@ssd.com*
*Email: jbmurray@ssd.com*
*Email: dstibolt@ssd.com*
Local Counsel for Merck

**Russ Herman, Esquire**
Herman, Herman, Katz & Cotlar, LLP
910 Airport Road, Suite 3A
Destin, FL 32541
Tele: (866) 855-5101
Fax: (850) 837-8178
*Email: VIOXX@hhkc.com*
Plaintiff's Liaison Counsel

## **TABLE OF AUTHORITIES**

<u>FEDERAL CASES:</u>

1.    Barrow v. Bristol Myers Squibb, No. 96-689-cv-ORL-19B
      (M.D. Fla. Oct 29, 1998)..............................................................................................12

2.    Bobby Jones Garden Apartments Inc. v. Suleski, 391 F.2d 172 (5th Cir. 1968).......16

3.    Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)............................5

4.    Crowe v. Coleman, 113 F.3d 1536, 1541 (11th Cir. 1992) ..........................5,6,15,16

5.    DeAguilar v Boeing Co., 47 F.3d 1404, 1410-11 (5th Cir. 1995)...............................4

6.    Estate of Ayers v. Beaver, 48 F. Supp. 2d 1335, 1341 (M.D. Fla. 1999)............6,11

7.    Freeport-McMoran, Inc. v. KN Energy, Inc., 498 U.S. 426, 428(1991) ...................5

8.    Hernandez v. Merck & Co. 6:05-CV-00211-ORL-31 (M.D. Fla May 3, 2005)......13

9.    Hildebrand v Wyeth Laboratories, Inc. et al, Case No. 99-2240-civ-t-26B
      (M.D. Fla. Dec 29, 1999)..........................................................................................16

10.   Hroncich v Wyeth-Ayerst Laboratories, Inc., Case No. 2:03-cv-659-FTM-29SPC
      (M.D. Fla. Jan 12, 2004)...........................................................................................17

11.   In re Rezulin Prod. Liab. Litig. 133 F.Supp 2d 272 (S.D.N.Y)..............................6

10.   Irvin v Merck, Case No. 03-80514-civ-Hurley (S.D. Fla. Oct 9, 2003)..............3,15

11.   Kozik v Merck, Case No. 8:04-CV-324-T-27TBM (Aug 2004)...................3,6,16

12.   Legg v Wyeth, 8:05-cv-01541 JSM-TGW (N.D. Alabama, October 25, 2005)..... ....7

13.   Little v Wyeth Ayerst Labs, Inc., No. 99-2244-civ-T-17F, slip op. at 6
      (M.D. Fla. Dec 9, 1999)........................................................................12,16

14.   Martin v Wyeth Laboratories, Inc. et al., Case No. 99-2454-civ-t-26A
      (M.D. Fla. Dec 29, 1999)..........................................................................................16

15.   Merced-Torres v. Merck & Co., Inc.  6:05-CV-449-ORL-19DAB....................13

16.   Morris v Wyeth Laboratories, Inc., et al., Case No. 99-2381-civ-t-26C
      (M.D. Fla. Dec 29, 1999)..........................................................................................16

17.   Palmer v. Hospital Authority of Randolph County,
      22 F.3d 1559, 1564( (11th Cir. 1994) ...........................................................................4

18.   Parent v Wyeth-Ayerst Laboratories, Inc., Case No. 2:03-cv-626-FTM-29SPC
      (M.D. Fla. Dec 19, 2003)...........................................................................................17

19.   Parks v. New York Times Co., 308 F.2d 474 (5th Cir. 1962) ...................................6

20.   Pritchard v. Hancock Fabrics, Inc.,
      198 F.Supp.2d 1288, 1290-91 (N.D. Ala. 2002).......................................................7

21.   Stern v Wyeth 02: 80620-CIV-:MARRA (S.D. Fla. Jan 22, 2003).........................6

22.   Tomlin v Merck & Co., Inc., 04:14335-CIV-MOORE
      (S.D. Fla. Feb. 18, 2005).................................................................................3,11,15

23.   Triggs v. John Crump Toyota Inc., 154 F.3d 1284, 1287-1288
      (11th Cir. 1998)..........................................................................................................3,6

24.   Univ. of So. Alabama v. The American Tobacco Co.,
      168 F.3d 405, 410 (11th Cir. 1999) ...........................................................................6

25.   Ware v G.D. Searle,  05: 0659 (M.D. Ala., Oct. 25, 2005)...................................3,4

26.   Wrisley v Wyeth-Ayerst Laboratories Inc., et al., Case No. 99-2246-cv-t-26C
      (M.D. Fla. Dec 29, 1999) .........................................................................................16

FEDERAL STATUTE:

27.   28 U.S.C. Section 1332...........................................................................................2,4

28.   28 U.S.C. Section 1441(a) ........................................................................................4

STATE CASES:

29.   Albertson v. Richardson-Merrell, Inc.,
      441 So. 2d 1146 (Fla. 4th DCA 1983) ..............................................................11,12,16

30.   Florida Specialty, Inc. v. H 2 Ology, Inc., 742 So. 2d 523, 525 & 527
      (Fla. 1st DCA 1999).................................................................................................12

31.   Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 336, 339 (Fla. 1997) ...........12

32.   Greenberg v. Post, 19 So. 2d 49 (Fla. 4th DCA 1967) ...............................................12

33.    Kerry's Brombelia Nursery, Inc. v. Reiling,
       561 So.2d 1305, 1306 (Fla. 3d DCA 1990) ................................................................ 12

34.    Orlovsky v. Solid Surf, Inc., 405 So.2d 1363, 1364 (Fla. 4th DCA 1987)................. 12

35.    White-Wilson Medical Center v. Dayta Consultants, Inc.,
       486 So.2d 659, 661 (Fla. 1st DCA 1986) ................................................................ 12

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX PRODUCTS
LIABILITY LITIGATION                              MDL No.: 1657

                                                 SECTION: L

This document relates to:

                                                 Civil Action No. 06-968
RUTH ZIER,

                          Plaintiff,

vs.                                              JUDGE FALLON
                                                MAG. JUDGE KNOWLES
MERCK & CO., INC., CHRIS METROPOLUS,
JEROME PITTMAN, JUNE V. MARCOTTE,
VICTOR SOPINA, JEFF BASTI, AMY MOORE,
VICKI ST. JOHN CRAWFORD, and RICHARD TATMAN,

        Defendants.
_____/

### NOTICE OF HEARING

        PLEASE TAKE NOTICE that Plaintiff's Motion for Remand will be heard before the

Honorable Eldon E. Fallon, United States District Court, Eastern District of Louisiana, 500

Poydras Street, New Orleans, LA 70130, on **Wednesday, the 12th day of April, 2006, at**

**9:00 AM,** or as soon thereafter as counsel may be heard.

### CERTIFICATE OF SERVICE

        I HEREBY CERTIFY the foregoing has been served on Liaison Counsel, Russ

Herman and Phillip Wittmann, by U.S. Mail and by e-mail and has been served upon all

parties set forth on the attached Service List by electronically uploading the same to

LexisNexis File & Serve on this 21st day of March, 2006.

By: _____

**BRENDA S. FULMER, Esq. (FBN: 999891)**
**C. TODD ALLEY, Esq. (FBN: 321788)**
**JAMES D. CLARK, Esq. (FBN: 191311)**
**DON GREIWE, Esq. (FBN: 218911)**
**AMY D. PREVATT, Esq. (FBN: 13858)**
ALLEY, CLARK, GREIWE & FULMER
701 E. Washington Street
P.O. Box 3127
Tampa, FL 33601-3127
Tele: (813) 222-0977
Fax: (813) 224-0373
Attorneys for Plaintiff

## SERVICE LIST

**Wilfred P. Coronato, Esq.**
Hughes, Hubbard & Reed, LLP
101 Hudson Street, Suite 3601
Jersey City, NJ 07302-3918
Tele: (201) 946-5700
Fax: (201) 536-0799
Email: *Coronato@hugheshubbard.com*

**Phillip A. Wittmann, Esquire**
Stone, Pigman, Walther, Wittmann, LLC
546 Carondelet St.
New Orleans, LA 71030
Tele: (504) 581-3200
Fax: (504) 581-3361
Email: *pwittmann@stonepigman.com*
Defendant's Liaison Counsel

**Aretha Delight Davis, Esquire**
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Tele: (215) 994-2423
Fax: (215) 994-2222
Email: *Aretha.davis@dechert.com*

2

**Susan Giamportone, Esq.**
Womble, Carlyle, Sandridge & Rice
2530 Meridian Parkway, Suite 400
Durham, NC 27713
Tele: (919) 316-4243
Fax: (919) 484-2061
*Email: SGiamportone@wcsr.com*

**Barbara Bolton Litten, Esquire**
**Patricia E. Lowry, Esquire**
**John B.T. Murray, Jr., Esquire**
**Dori K. Stibolt, Esquire**
Squire, Sanders & Dempsey
1900 Phillips Point West
777 S. Flagler Drive
West Palm Beach, FL 33401
Tele: (561) 650-7200
Fax: (561) 655-1509
*Email: blitten@ssd.com*
*Email: plowry@ssd.com*
*Email: jbmurray@ssd.com*
*Email: dstibolt@ssd.com*
Local Counsel for Merck

**Russ Herman, Esquire**
Herman, Herman, Katz & Cotlar, LLP
910 Airport Road, Suite 3A
Destin, FL 32541
Tele: (866) 855-5101
Fax: (850) 837-8178
*Email: VIOXX@hhkc.com*
Plaintiff's Liaison Counsel

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED