FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 31 A 11: 03

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to all cases | * | |
| | * | MAGISTRATE |
| | * | JUDGE KNOWLES |

* * * * * * * * * * * * * * * * *

### MERCK & CO., INC.'S RESPONSE TO PSC'S MOTION TO COMPEL FDA TO PRODUCE DOCUMENTS

Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, respectfully submits the following response to the PSC's March 7, 2006 Motion to Compel (the "Motion"), requesting that the Court compel the FDA to produce certain documents protected by the deliberative process privilege.

Merck is submitting this response not to address the substance of the PSC's arguments,[1] which are directed at the FDA, but rather to respond to several allegations plaintiffs make against Merck in the motion. In seeking to compel production from the FDA, the PSC suggests that Merck has: (i) "present[ed] a false picture of what the FDA did and did not do, and what it could and could not do, with respect to Vioxx"; (ii) made "false arguments about the agency and the scope of its power – *i.e.*, its lack of power to force label changes or to compel clinical trials"; and

---

[1] The PSC challenges the FDA's reliance on the deliberative privilege in redacting a number of documents and declining to produce three documents that pertain to discussions and recommendations underlying a number of agency decisions. (*See* Mot., Ex. 60.) As set forth in the FDA's briefing, the deliberative privilege, long recognized in the Fifth Circuit, "shield[s] from disclosure those documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981) (citation and quotations omitted); *see also FDIC v. Schoenberger*, 1990 WL 52863, at *3 (E.D. La. Apr. 24, 1990).

__ Fee_____
__ Process____
X Dktd_____
__ CtRmDep___
__ Doc. No.___

(iii) exerted "undue influence and pressure" on the FDA. (Mot. at 3-4.) The PSC also contends that Merck is engaged in a misleading campaign to "exonerate itself with a fictional shield of 'FDA Approval.'" (*Id.* at 4.) These allegations are not only irrelevant to applicability of the deliberative privilege but also demonstrably false.

***First***, as the FDA notes in its brief (*see* FDA Opp. at 14-17), Merck has not in any way exaggerated the scope of the FDA's power to regulate and approve prescription drug labels in the United States. *See Hurley v. Lederle Labs.*, 863 F.2d 1173, 1179 (5th Cir. 1989) (the FDA "extensively regulates the contents and wording" of a drug's label); *see also American Home Products Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 146 (S.D.N.Y. 1987) (FDA's "control" over drug labeling is "pervasive and complete"). To the contrary, the FDA has established elaborate requirements governing every aspect of the labeling process and has strict control over any changes to the labeling. *See, e.g.*, 21 U.S.C. §§ 352; 355(b)(1)(F); 21 C.F.R. § 314.70. The sum of this extensive oversight is that the FDA must approve a new or revised prescription drug label in order for a drug to be marketed. Thus, contrary to the PSC's suggestion, the FDA made the final decision about the content of the Vioxx labels – not Merck.

***Second***, the FDA also has complete oversight over clinical trials, whether conducted before or after a drug's initial approval. *See* 21 C.F.R. § 312.2. For example, the FDA has promulgated "good clinical practices" (GCP) requirements that delineate the responsibilities of a trial sponsor. 21 C.F.R. § 312.1 *et seq.* Under these regulations, the sponsor must report any adverse experience associated with the drug that is both serious and unexpected. 21 C.F.R. § 312.32. It must also ensure that the trial is conducted in accordance with protocols submitted to the FDA, 21 C.F.R. § 312.30, and file annual reports with the agency, 21 C.F.R. § 312.33. The FDA may inspect a clinical trial site and may inspect records and reports pertaining to the trial,

*see, e.g.*, 21 C.F.R. § 312.58, and impose a hold on the trial for violations of the GCP requirements under 21 C.F.R. § 312.42. The PSC's suggestion that, simply because the FDA cannot "order" a company to conduct a trial, it is powerless to regulate the data that comprises new drug applications and supplements thereto, is thus groundless. (*See* Mot. at 4.)

**Third**, there is nothing misleading about Merck's reference to the fact that the FDA approved Vioxx as "safe and effective" on a number of occasions. (*See* Mot. at 2, 4.) As the Court well knows, before a manufacturer can market a drug, the FDA must approve it as "safe and effective" for its intended uses. 21 U.S.C. § 355; *see also id.* at § 393(b)(2)(B). In this case, the FDA approved Vioxx for the treatment of osteoarthritis pain, primary dysmenorrhea (menstrual pain), and acute pain in 1999, and further approved the drug for the treatment of migraine headaches and juvenile rheumatoid arthritis in 2004. There is thus no need for Merck to "argue" that "the FDA repeatedly found Vioxx safe and effective as labeled" (*see* Mot. at 2), since the agency's approval actions are a matter of fact.

**Finally**, there is no evidence of "undue influence and pressure" from Merck on agency decisions. (*Id.*) Indeed, the PSC's own example of such alleged conduct – the approval of the post-VIGOR label – proves as much. Contrary to the PSC's mischaracterization, the facts show that Merck worked promptly, diligently, and cooperatively with the FDA to incorporate the VIGOR data into the Vioxx label. The record further shows that the FDA approved the final post-VIGOR label after months of investigation and deliberation, having placed the VIGOR data in context with all of the other data available for Vioxx and the other drugs in its class. In the FDA's reasoned judgment, the post-VIGOR label appropriately conveyed all relevant safety information regarding Vioxx, including the VIGOR data. Otherwise, the FDA would not have exercised *its authority* to approve it.

3

In sum, Merck respectfully requests that the Court disregard all of these false allegations about Merck in ruling on the PSC's Motion. The allegations add nothing to the Court's analysis of the privilege claimed by the FDA, misrepresent the facts and belie the PSC's purported "search for the truth." (*See* Mot. at 4.)

                Respectfully submitted,

                */s/ Phil Wittmann*
                Phillip A. Wittmann, 13625
                Dorothy H. Wimberly, 18509
                Carmelite M. Bertaut, 3054
                STONE PIGMAN WALTHER
                WITTMANN L.L.C.
                546 Carondelet Street
                New Orleans, Louisiana 70130
                Phone:  504-581-3200
                Fax:    504-581-3361

                Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion for Judgment as a Matter of Law has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 31st day of March, 2006.

_Phil Wittmann_