FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR -4  PM 3: 39

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX | ) MDL NO. 1657 |
| | ) |
| PRODUCTS LIABILITY LITIGATION | ) SECTION: L |
| | ) |
| | ) JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL | ) |
| CASES | ) |
| | ) MAG. JUDGE KNOWLES |
| | ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY APPLICABILITY OF TOLLING AGREEMENT TO FOREIGN CLAIMANTS

On June 1, 2005, Merck & Co., Inc. ("Merck") and counsel for the Plaintiffs' Steering Committee ("PSC") entered into a Tolling Agreement providing that the statute of limitations on certain Vioxx-related claims would be tolled if the plaintiffs asserting these claims complied with certain conditions.  (*See generally* Tolling Agreement ("Agmt.") (attached as Ex. 1 to Pls.' Mem. in Supp. of Pls.' Mot. to Clarify Applicability of Tolling Agreement to Foreign Claimants ("Pls. Br.")).)  As Merck has consistently explained in correspondence with plaintiffs, this Agreement does not encompass claims brought by claimants who reside outside the United States ("foreign claimants").  Accordingly, while Merck has no objection to this Court's clarifying whether or not the Tolling Agreement applies to foreign claimants, it should – contrary to plaintiffs' request – order that this Agreement does *not* apply to them.

___ Fee_____
___ Process_____
_X_ Dktd _____
___ CtRmDep_____
___ Doc. No_____

## FACTUAL BACKGROUND

On June 1, 2005, lead counsel for Merck and co-lead counsel for the PSC entered into a Tolling Agreement. This Agreement provided that, subject to conditions, certain plaintiffs would be entitled to toll any claims for damages based on injuries allegedly caused by the use of Vioxx.

The language of the Agreement made clear that its purpose was to permit United States residents (other than New Jersey citizens) to toll their claims as an alternative to prosecuting those claims in state or federal courts to which they would otherwise have had recourse: Paragraphs 1 and 1(A) of the Agreement explain that it applies to claims against Merck for "damages allegedly caused by the use of VIOXX" where the alleged injury resulted from a cardiovascular event. (Agmt. ¶ 1 & 1(A).) Paragraph 1(B) provides that "[i]f any Claimant files any lawsuit concerning a tolled claim or claims, the Claimant shall file such lawsuit only in (i) a federal court with proper personal and subject matter jurisdiction and will consent to the transfer of the lawsuit to this MDL proceeding or (ii) directly in the federal district court in the Eastern District of Louisiana." (Agmt. ¶ 1(B).) Finally, the Agreement also provides that "[i]f a Claimant files a lawsuit in state court, or resists transfer to this MDL proceeding of a case filed in federal court, no tolling under this Agreement shall apply." *Id.* Notably, the Agreement says nothing whatsoever about what would happen if a claimant filed a case in a foreign court.

Further aspects of the Agreement are also relevant. Paragraph 1(C) of the Agreement provides that any claimant seeking to have his or her claims tolled "must first provide to Defendant's Liaison Counsel, to the best of the Claimant's knowledge and ability, the information requested on the attached Exhibit A." (Agmt. ¶ 1(C).) Among the information requested in Exhibit A is the claimant's Social Security Number and "State" drivers' license

number.  (*See* Claimant Profile Form at 1-3 (attached hereto as Ex. A).)  The Agreement goes on to require claimants to provide an "authorization for the collection of medical and certain other records in the form set out in Exhibit B."  (Agmt. ¶ 1(C).)  Exhibit B, in turn, is entitled "Authorization for Release of Medical Records Pursuant to 45 C.F.R. § 164.508 (HIPAA)," and contains language that complies with the United States regulations implementing the Health Insurance Portability and Accountability Act.  (*See* Authorization for Release of Medical Records (attached hereto as Ex. B).)  In addition, Paragraph 3 of the Agreement provides that, before having their claims tolled, claimants must provide to Defendant's Liaison Counsel "a notice" including, among other information, the "Claimant's . . . social security number." (Agmt. ¶ 3.)  Finally, Paragraph 6 of the agreement provides that it can be terminated by Merck, on 120 days' notice, at any time.  (Agmt. ¶ 6.)

On September 30, 2005, Merck received approximately 1,142 Tolling Agreement notices from a lawyer in the offices of Kenneth B. Moll & Associates.  (*See* Letter from Andrew D. Mendez to Pamela G. Sotoodeh (Nov. 16, 2005) (attached as Ex. 2 to Pls. Br.).)  After reviewing these notices, Merck found that 183 of them had been submitted on behalf of residents of foreign countries.  *Id.*  On November 16, 2005, Merck notified Mr. Moll's office that the Agreement does not apply to residents of foreign countries.  *Id.*  Mr. Moll's office subsequently indicated its belief that the Agreement did apply to foreign residents.  (*See* Letter from Pamela G. Sotoodeh to Andrew D. Mendez (Nov. 17, 2005) (attached as Ex. 3 to Pls. Br.); Letter from Genevieve M. Bernal to Andrew D. Mendez (Dec. 13, 2005) (attached as Ex. 4 to Pls. Br.).)  On December 30, 2005, in a letter to Mr. Moll's office and to other lawyers, Merck again explained that the Tolling Agreement does not encompass residents of foreign countries, but agreed to toll claims for those foreign claimants who had submitted Tolling Agreement notices from the date the claims were

803771v.1

served on Merck to January 6, 2006, to allow time for Mr. Moll to arrange for the filing of these

foreign individuals' claims in the appropriate foreign tribunal.  (*See* Letter from Andrew D.

Mendez to Pamela G. Sotoodeh, *et al.* (Dec. 30, 2005) (attached as Ex. 6 to Pls. Br.).)  Merck

further noted that "it is Merck's position that it is not proper for [claims by non-U.S. residents] to

be brought in U.S. Courts."  *Id.* at 1.  It also observed that foreign claimants were, through the

letter, "on written notice that the Tolling Agreement does not encompass foreign residents."  *Id.*

Finally, on January 6, 2006, Merck agreed, in a letter to Mr. Moll's office and to other lawyers,

that it would extend the tolling period for those foreign claimants who had submitted tolling

notices for an additional thirty days, again to allow claimants' counsel to preserve these

claimants' claims if they wished to file in a foreign tribunal.  (*See* Letter from Andrew D.

Mendez to Pamela G. Sotoodeh, *et al.* (Jan. 6, 2006) (attached as Ex. 7 to Pls. Br.).)

## ARGUMENT

As Merck explained in its correspondence with the foreign claimants' lawyers, the

Tolling Agreement was never intended to encompass residents of foreign countries.  This is clear

from the language of the Agreement and its attached Exhibits, the purpose of the Agreement, and

inferences from Merck's long-standing positions regarding the appropriate forum for foreign

claims.

## I.   THE TOLLING AGREEMENT, ON ITS FACE, DOES NOT APPLY TO FOREIGN CLAIMANTS.

Initially, the language of the Agreement reflects the fact that the Agreement was not

intended to encompass foreign claimants.  As noted above, Paragraph 3 of the Agreement

specifically makes reference to a claimant's "social security number." (Agmt. ¶ 3.)  Similarly,

Exhibit A to the Agreement, the Claimant Profile Form, asks for a claimant's social security

number, the social security number of any person completing the form in a representative

4

capacity, and the claimant's "Driver's License Number and State Issuing License." (Claimant Profile Form at 1-3.) These questions are plainly addressed to U.S. residents who have social security numbers and driver's licenses issued by American states. It is therefore clear that the Profile Form was *not* drafted with the expectation that it would be filled out by foreign claimants – it does not, for example, ask for a claimant's "social security or other national identification number." In addition, Exhibit B, the authorization form for release of medical records, states that it was drafted "pursuant to 45 C.F.R. § 164.508," the Health Insurance Portability and Accountability Act. (Authorization for Release of Medical Records at 1.) It is thus designed to comply with the requirements set by the *United States* government to protect the privacy of health information. It does not purport to satisfy the requirement of any other country's government, and thus would be potentially insufficient as a basis to secure the release of information about a foreign claimant located outside the United States.

In addition, the purpose of the Agreement – to establish tolling as an *alternative* to filing claims in another court – would be undermined if the Agreement were interpreted to apply to foreign claimants. As set forth above, the Agreement permits tolling only if claimants either file their cases in the MDL court or agree to have their cases transferred there, and further states that any claimant who files in "state court" or "resists transfer" to the MDL will not be entitled to tolling. (Agmt. ¶ 1(B).) If the Agreement had been intended to encompass foreign claimants, this provision would also have stated that any claimant who filed a claim in a foreign court would not be entitled to tolling. Under plaintiffs' interpretation, the Agreement as it stands would permit a foreign resident to file a claim both in his or her home country *and* in the United States, and still receive the benefit of tolling – undermining the Agreement's purpose of permitting tolling as an alternative to filing claims in another court.

803771v.1

Applying the Agreement to foreign claimants would also be inconsistent with Merck's consistent position in this litigation that claims brought by foreign residents do not belong in U.S. courts, but rather should be heard in the courts of the countries where those claimants reside. (*See generally* Mem. in Supp. of Def. Merck & Co., Inc.'s Mot. to Dismiss the Foreign Class Actions or, in the Alternative, Strike the Foreign Class Allegations (Jan. 12, 2006).) It is simply implausible that Merck would have agreed to a tolling agreement that *encourages* foreign claimants to bring their claims in this MDL proceeding, when Merck did not and does not believe their claims belong in this (or any other) U.S. court at all.

## II.   EVEN IF THE AGREEMENT WERE AMBIGUOUS, EXTRINSIC EVIDENCE CONFIRMS IT WAS INTENDED TO APPLY ONLY TO U.S. PLAINTIFFS.

In their brief, plaintiffs claim that because the Tolling Agreement does not specifically state that it excludes foreign citizens, it must apply to foreign citizens. (*See* Pls. Br. at 1-2.) This argument ignores the plain language discussed above, which establishes that the Tolling Agreement does not apply to foreign claimants. However, even if this language did not establish that the Agreement excludes foreign claimants, it certainly renders the Agreement *ambiguous* in this respect.

In light of this ambiguity, the Court may look to extrinsic evidence to determine the parties' intent, including the parties' conduct before and after the agreement and the nature and purposes of the contract. *See, e.g., Wampold v. E. Eric Guirard & Assocs.*, No. 04-31000, __ F.3d __, 2006 WL 477139, at *2, (5th Cir. March 1, 2006). ("[I]f ambiguous, resort to default rules of interpretation and the parties' intent is necessary.") (citing La. Civ. Code Ann. art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.")). Here, the post-agreement correspondence submitted

6

by plaintiffs themselves, together with Merck's long-standing (pre-agreement) position that foreign claimants should not bring claims in the United States, reveal that Merck at no point understood the Tolling Agreement to apply to foreign residents, and that there was certainly no meeting of the minds in this respect. *See, e.g., Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) ("ordinary contract principles require a 'meeting of the minds' between the parties in order for agreements to be valid") (quoting *Louisville & N.R. Co. v. Kentucky,* 161 U.S. 677, 692 (1896) ("[i]t is a fundamental principle in the law of contracts that, to make a valid agreement, there must be a meeting of the minds.")).  Moreover, as discussed above, applying the Agreement to foreign claimants would be inconsistent with the purposes of the Agreement by enabling foreign claimants to toll their claims in addition to, instead of as an alternative to, filing claims in their home courts. *See Wampold*, 2006 WL 477139, at *2.  In light of this extrinsic evidence, this Court should interpret the Agreement as excluding foreign claimants.

Plaintiffs further argue that because foreign claimants relied on the allegedly "clear and unambiguous terms of the Tolling Agreement" in submitting claims for tolling, Merck should be estopped from excluding their claims.  (Pls. Br. at 2.)  This argument too fails.  As discussed above, to the extent the Agreement is "clear and unambiguous," it unambiguously applies only to U.S. plaintiffs.  Moreover, the foreign claimants were on notice at least from November 16, 2005 that Merck did not understand the Tolling Agreement to toll their claims.  Merck has already voluntarily agreed to toll the claims of those foreign claimants who submitted individual tolling forms from the date their claims were served on Merck until January 6, 2006, and then again for an additional thirty days (until February 5, 2006), in order to give these individuals time to file

803771v.1

their claims in the appropriate foreign courts.  There is thus no need for any additional period of tolling.[1]

## CONCLUSION

For the reasons set forth above, this Court should clarify that the Tolling Agreement does not apply to claims asserted by or on behalf of non-U.S. residents.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:     504-581-3361

Defendant's Liaison Counsel

---

[1]     Interpreting the agreement as Mr. Moll seeks is all the more inappropriate because the agreement allows Merck to terminate tolling agreements on 120 days' notice.  In other words, Mr. Moll seeks to force Merck into a position it never intended even though Merck can, in any event, terminate the agreement with notice to plaintiffs.

803771v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant's Opposition to Plaintiffs' Motion to Clarify Applicability of Tolling Agreement to Foreign Claimants has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 4th day of April, 2006.

*Dorothy H. Wimberly*

Exhibit A

| | |
|---|---|
| IN RE: VIOXX® PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1657 |

Claimant: _____
                              (name)

## CLAIMANT PROFILE FORM

Other than in Sections I, those questions using the term "You" should refer to the person who used VIOXX®. Please attach as many sheets of paper as necessary to fully answer these questions.

### I.    CASE INFORMATION

A.  Name of person completing this form: _____

B.  If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1.  Social Security Number: _____

   2.  Maiden or other names used or by which you have been known: _____

   3.  Address: _____

   4.  State which individual or estate you are representing, and in what capacity you are representing the individual or estate? _____

   5.  If you were appointed as a representative by a court, state the:

       Court: _____    Date of Appointment: _____

   6.  What is your relationship to deceased or represented person or person claimed to be injured? _____

   7.  If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died: _____

NY 189839_1



EXHIBIT

A

C. Claim Information

1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX®? Yes_____ No_____ *If "yes,"*

   a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX®? _____
   _____

   b. When do you claim this injury occurred?_____

   c. Who diagnosed the condition? _____

   d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____ No _____ *If "yes,"* when and who diagnosed the condition at that time? _____
   _____

   e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____ No _____ *If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX®; and the date of recovery, if any. _____
   _____

D. Are you claiming mental and/or emotional damages as a consequence of VIOXX®? Yes _____ No _____

   *If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:

   a. Name and address of each person who treated you: _____
   _____

   b. To your understanding, condition for which treated: _____
   _____

   c. When treated: _____

   d. Medications prescribed or recommended by provider: _____

## II.  PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX®

A. Name: _____

B. Maiden or other names used or by which you have been known: _____

C. Social Security Number: _____

D. Address: _____

189839_1

M001-225746

E. Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:

| Address | Dates of Residence |
|---|---|
|  |  |
|  |  |

F. Driver's License Number and State Issuing License: _____

G. Date of Place and Birth: _____

H. Sex: Male _____ Female _____

I. Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
|  |  |  |  |

J. Employment Information.

1. Current employer (if not currently employed, last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
|  |  |  |  |

2. List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

3. Are you making a wage loss claim for either your present or previous employment? Yes _____ No _____

   *If "yes,"* state your annual income at the time of the injury alleged in Section I(C):_____

K. Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____ No _____

   *If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes _____ No _____

189339_1

M001223747

L. Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim?   Yes _____   No _____   *If "yes,"* to the best of your knowledge please state:

   a. Year claim was filed: _____

   b. Nature of disability: _____

   c. Approximate period of disability: _____

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)?   Yes _____   No _____   *If "yes,"* set forth when and the reason. _____

   _____

   _____

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury?   Yes _____   No _____   *If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted. _____

   _____

   _____

M. As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty?   Yes _____   No _____   *If "yes,"* set forth where, when and the felony and/or crime. _____

## III.   FAMILY INFORMATION

A. List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death): _____

   _____

   _____

B. Has your spouse filed a loss of consortium claim in this action?   Yes _____   No _____

189839_1

M001223748

C.  To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?  Yes _____  No _____  Don't Know _____  *If "yes,"* identify each such person below and provide the information requested.

Name: _____

Current Age (or Age at Death): _____

Type of Problem: _____

If Applicable, Cause of Death: _____

D.  If applicable, for each of your children, list his/her name, age and address: _____
_____

E.  If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. _____
_____

## IV.   VIOXX® PRESCRIPTION INFORMATION

A.  Who prescribed VIOXX® for you? _____

B.  On which dates did you begin to take, and stop taking, VIOXX®? _____

C.  Did you take VIOXX® continuously during that period?
Yes _____  No _____  Don't Recall _____

D.  To your understanding, for what condition were you prescribed VIOXX®? _____
_____

E.  Did you renew your prescription for VIOXX®?  Yes _____  No _____  Don't Recall _____

F.  If you received any samples of VIOXX®, state who provided them, what dosage, how much and when they were provided: _____

G.  Which form of VIOXX® did you take (check all that apply)?
_____ 12.5 mg Tablet (round, cream, MRK 74)
_____ 12.5 mg Oral Suspension
_____ 25 mg Tablet (round, yellow, MRK 110)
_____ 25 mg Oral Suspension
_____ 50 mg Tablet (round, orange, MRK 114)

H.  How many times per day did you take VIOXX®? _____

189839_1

M001223749

I.   Did you request that any doctor or clinic provide you with VIOXX® or a prescription for VIOXX®? Yes _____ No _____ Don't Recall _____

J.   What medications, prescription and over-the-counter, did you take simultaneously with VIOXX®? _____

K.   What medications, prescription and over-the-counter, did you take within 6 months prior to staring VIOXX®? _____

L.   Instructions or Warnings:

    1.   Did you receive any written or oral information about VIOXX® before you took it?  Yes _ No _____ Don't Recall _____

    2.   Did you receive any written or oral information about VIOXX® while you took it? Yes _____ No _____ Don't Recall _____

    3.   *If "yes,"*

        a.   When did you receive that information? _____

        b.   From whom did you receive it? _____

        c.   What information did you receive? _____
            _____

## V.  MEDICAL BACKGROUND

A.  Height: _____

B.  Current Weight: _____
    Weight at the time of the injury, illness, or disability described in Section I(C):

    _____

C.  Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*
    ____   Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    ____   Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
        a.  Date on which smoking/tobacco use ceased: _____
        b.  Amount smoked or used: on average _____ per day for _____ years.
    ____   Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
        a.   Amount smoked or used: on average _____ per day for _____ years.
    ____   Smoked different amounts at different times.

D.  Drinking History.  Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes _____ No _____ If *"yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged

189839_1

M001223750

in the complaint:

_____ drinks per week,

_____ drinks per month,

_____ drinks per year, *or*

Other (describe): _____

E.  Illicit Drugs.  Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX®-related injury?"  Yes \_\_\_\_\_   No \_\_\_\_\_   Don't Recall \_\_\_\_\_

  *If "yes"*, identify each substance and state when you first and last used it. _____

  _____

F.  Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

  1.  Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed:  open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:

| Surgery | Condition | When | Treating Physician | Hospital |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

  2.  Treatments/interventions for heart attack, angina (chest pain), or lung ailments:

| Treatment/Intervention | When | Treating Physician | Hospital |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

  3.  To your knowledge, have you had any of the following tests performed:  chest X-ray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
    Yes \_\_\_\_\_   No \_\_\_\_\_   Don't Recall \_\_\_\_\_   *If "yes,"* answer the following:

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

189839_1

M001223751

## VI.   REQUEST FOR DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A. Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form. Yes _____ No _____

B. Decedent's death certificate (if applicable). Yes _____ No _____

C. Report of autopsy of decedent (if applicable). Yes _____ No _____

## VII.   REQUEST FOR PRESERVATION OF DOCUMENTS AND THINGS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please deliver any and all items to your attorney for preservation and inspection.

A. Unused VIOXX®.

Yes ___ No ___

If you answer "yes", set forth in the space provided:

    i.   There is _____ number of _____ mg tablets remaining.

    ii.  There is _____ amount of _____ mg oral suspension remaining.

B. Documents or materials that accompanied any VIOXX® you received, including but not limited to prescriptions, receipts, drug containers, product or package inserts, patient product inserts, packaging, sample boxes, and pharmacy handouts.

Yes ___ No ___

C. Photographs, slides, movies, videotapes, or the like relating to your injuries, limitations or damages.

Yes _____ No _____

D. Personal diaries, calendars, journals, logs, appointment books, date books, or similar materials you kept or continue to keep from January 1, 1995 to the present which relate or refer to your medical care, medical condition, or employment.

Yes ___ No ___

E. Documents that evidence any communication between you and any doctor, employer,

189839_1

M001223752

defendant, federal or state agency, or other person (other than your attorney) regarding the incident that made the basis of this suit or your claims in this lawsuit.

Yes ____ No ____

F.  Written communications, whether in paper or electronic form (including communications as part of internet "chat rooms" or e-mail groups), with others not including your attorney, regarding VIOXX®, your injuries or this case.

Yes ____ No ____

G.  Any and all other documents not specifically requested above that support any claim you believe you have against Merck & Co., Inc. and all damages you claim result therefrom.

Yes ____ No ____


## VIII.  LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.    Your current family and/or primary care physician:

| Name | Address |
|------|---------|
|      |         |

B.  To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

| Name | Address | Approximate Dates |
|------|---------|-------------------|
|      |         |                   |
|      |         |                   |
|      |         |                   |

C.  Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
|      |         |                 |                      |
|      |         |                 |                      |

D.  Each hospital, clinic, or healthcare facility where you have received outpatient

189839_1

MD01223753

treatment (including treatment in an emergency room) during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
|      |         |                 |                      |
|      |         |                 |                      |
|      |         |                 |                      |

E.   Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

| Name | Address | Dates of Treatment |
|------|---------|--------------------|
|      |         |                    |
|      |         |                    |
|      |         |                    |

F.   Each pharmacy that has dispensed medication to you in the last ten (10) years.

| Name | Address |
|------|---------|
|      |         |
|      |         |
|      |         |

G.   If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

| Name | Address |
|------|---------|
|      |         |
|      |         |
|      |         |

H.   If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

| Name | Address |
|------|---------|
|      |         |
|      |         |

MO01223754

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_____          _____          _____

Signature                                     Print Name                                     Date

189839_1

M001223795

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

MDL No. 1657

**AUTHORIZATION FOR RELEASE OF
MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)**

Name:_____

Date of Birth:_____

Social Security Number:_____

     I hereby authorize _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, One Battery Park Plaza, New York, New York 10004-1482, and/or to the law firm of** _____ **and/or their designated agents ("Receiving Parties").** These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

     I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

     This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,



EXHIBIT
B

Exhibit No. 0119

M001223756

medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.).  This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation.  I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage.  I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization.  I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA.  I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place.  Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this ___ day of _____, 200___


_____
[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

AUTHORIZATION #1

M001223757

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 1657

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

**AUTHORIZATION FOR RELEASE OF
PSYCHOLOGICAL/PSYCHIATRIC
RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)**

Name:_____

Date of Birth:_____

Social Security Number:_____

I hereby authorize _____ to release
all existing records regarding the above-named person's psychological or psychiatric care,
treatment, condition, and/or expenses to the law firm of **HUGHES HUBBARD & REED LLP,
One Battery Park Plaza, New York, New York 10004-1482, and/or to the law firm
of** _____
**and/or their designated agents ("Receiving Parties").** These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above. This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or
destroy the protected health information (including all copies made) at the end of the above-
named person's litigation or proceeding.

I understand that this authorization includes information regarding the diagnosis and
treatment of psychiatric and psychological disorders, and that the health information being
used/disclosed may include information relating to the diagnosis and treatment of Human
Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually
transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, psychiatric treatment and counseling records, psychological
treatment and counseling records, narratives, and any correspondence/memoranda and billing

M001223758

information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments, medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this ___ day of _____, 200__

_____
*[PLAINTIFF OR REPRESENTATIVE]*

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf: _____

AUTHORIZATION #2

10444.3 FRE_07 04/05 2:27 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 1657

In re: VIOXX® PRODUCT
LIABILITY LITIGATION

**AUTHORIZATION FOR RELEASE OF
PSYCHOTHERAPY NOTES PURSUANT
TO 45 C.F.R. § 164.508 (HIPAA)**

Name:_____

Date of Birth:_____

Social Security Number:_____

    I hereby authorize _____ to release
all existing psychotherapy notes regarding the above-named person's medical care, treatment,
physical/mental condition, and/or medical expenses to law firm of **HUGHES HUBBARD &
REED LLP, One Battery Park Plaza, New York, New York 10004-1482, and/or to the law
firm of _____
and/or their designated agents ("Receiving Parties").** These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above. This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or
destroy the protected health information (including all copies made) at the end of the above-
named person's litigation or proceeding.

    I understand that this authorization includes all psychotherapy notes maintained
separately from the above-named person's medical record that document or analyze the contents
of conversation during a private counseling session or a group, joint, or family counseling
session by referring to something other than medication prescription and monitoring, counseling
session start and stop times, the modalities and frequencies of treatment furnished, results of
clinical tests, and any summary of the following items: diagnosis, functional status, the treatment
plan, symptoms, prognosis and progress.

    I understand that the health information being disclosed by these psychotherapy notes
may include information relating to the diagnosis and treatment of Human Immunodeficiency
Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and
drug and alcohol disorders.

    This will further authorize you to provide updated medical records, x-rays, reports or
copies thereof to the above attorney until the conclusion of the litigation. I understand that I
have the right to revoke in writing my consent to this disclosure at any time, except to the extent
that the above-named facility or provider already has taken action in reliance upon this

MJ001223760

authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this ___ day of _____, 200__

_____

[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

AUTHORIZATION #3

M001222761

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 1657

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

**AUTHORIZATION FOR RELEASE OF
RECORDS (To be signed by plaintiffs
making a claim for lost wages, earnings or
earning capacity.)**

Name:_____

Date of Birth:_____

Social Security Number:_____

I hereby authorize _____ to release
all existing records and information in its possession regarding the above-named person's
employment, income and education to the law firm of **HUGHES HUBBARD & REED LLP,
One Battery Park Plaza, New York, New York 10004-1482, and/or to the law firm
of** _____
**and/or their designated agents ("Receiving Parties").** These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above. This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes.

I understand that this authorization includes the above-named person's complete
employment personnel file (including attendance reports, performance reports, W-4 forms, W-2
forms, medical reports, workers' compensation claims), and also includes all other records
relating to employment, past and present, all records related to claims for disability, and all
educational records (including those relating to courses taken, degrees obtained, and attendance
records). This listing is not meant to be exclusive.

Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place. Copies of these materials are to be provided at the expense of
Hughes Hubbard & Reed LLP or _____.

Dated this __ day of _____, 200__

_____
*[PLAINTIFF OR REPRESENTATIVE]*

If a representative, please describe your relationship to the plaintiff and your authority to act on
his/her behalf:_____

**AUTHORIZATION #4**

NY 189827_1

M001223782

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Case No. 1657

In re:  VIOXX® PRODUCTS
LIABILITY LITIGATION

**AUTHORIZATION FOR RELEASE OF
RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or
earning capacity.)**

Name:_____

Date of Birth:_____

Social Security Number:_____

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
**HUGHES HUBBARD & REED LLP, One Battery Park Plaza, New York, New York
10004-1482, and/or to the law firm of** _____
**and/or their designated agents ("Receiving Parties").**  These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above.  This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes.

I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records).  This listing is not meant to be exclusive.

Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.  Copies of these materials are to be provided at the expense of
Hughes Hubbard & Reed LLP or _____.

Dated this ___ day of _____, 200___.

_____
*[PLAINTIFF OR REPRESENTATIVE]*

If a representative, please describe your relationship to the plaintiff and your authority to act on
his/her behalf:_____

**AUTHORIZATION #5**

NY 189827_1