U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED  APR - 5 2006
LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Maria E. Quinn, Esq. as Administrator of the Estate of Annette M. Zeman, Deceased**<br>Chagrin Richmond Plaza<br>25550 Chagrin Boulevard, Suite 320<br>Beachwood, Ohio  44122<br><br>　　　　Plaintiff<br><br>v.<br><br>**Merck & Co., Inc.**<br>c/o CT Corporation Systems<br>1300 E. Ninth Street<br>Cleveland, Ohio  44114<br><br>　　　　Defendant<br><br>Civil Action No. 05-2308L | MDL DOCKET 1657<br><br>JUDGE: FALLON<br><br>MAGISTRATE JUDGE KNOWLES<br><br>**AMENDED COMPLAINT FOR WRONGFUL DEATH**<br>ORC §§2125.01, 2125.02, 2305.21<br>*(Jury Demand Endorsed Hereon)* |

## JURISDICTION AND VENUE

1.　　This cause of action is brought by Plaintiff as Administrator of the Estate of Annette M. Zeman, Deceased, who was a citizen of Ohio, against residents of the State of New Jersey. This action is brought pursuant to 28 U.S.C. §1332 and is between parties of diverse citizenship and residence. The amount in controversy exceeds the sum of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, exclusive of interest and costs.

2.　　Defendant Merck & Co., Inc. *(hereinafter "Merck")*, a Whitehouse Station, New Jersey resident, tortuously caused injury to the Plaintiff's Decedent in the State of Ohio through the sale of consumer goods in the State of Ohio.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b). Many of the acts and transactions constituting the alleged violations of law occurred in Lake County, Ohio, within the Northern Judicial District of Ohio, Eastern Division.

4. Plaintiff's Decedent resided in Lake County, Ohio. Plaintiff is the duly appointed Administrator of the Estate of Annette M. Zeman through Case Number 04-048 of the Lake County, Ohio, Court of Common Pleas *(see attached Letters of Authority)* and brings this action on behalf of and for the exclusive benefit of the heirs and next-of-kin of the Decedent pursuant to and under favor of O.R.C. §§2125.01, 2125.02 and 2305.21.

## FACTUAL ALLEGATIONS

5. Annette M. Zeman *(hereinafter "Decedent")* was diagnosed as suffering from arthritis by her treating physician prior to her death. Her treating physician prescribed Vioxx for the purpose of treating Ms. Zeman's arthritic condition. On or about January 1, 2004, Decedent suffered a cerebral incident diagnosed as a left thalamic intracerebral hemorrhage, and commonly referred to as a massive stroke.

6. On January 6, 2004, Annette M. Zeman died secondary to suffering the aforementioned brain hemorrhage.

7. Vioxx was the subject of one of the largest direct-to-consumer marketing campaigns ever undertaken for prescription drugs. For example, in 2000, Defendant spent some $161 million on consumer advertising for Vioxx. Based upon those figures, Vioxx was the single most heavily-advertised prescription drug to consumers.

8. Vioxx was most often prescribed to treat arthritis pain. Arthritis occurs frequently as people grow older and is the most common joint disease, afflicting over 21 million Americans. Defendant's consumer marketing campaigns for these drugs focused on arthritis pain relief. For

example, Merck has used 1976 Olympic figure skating champion Dorothy Hammill in widely-broadcast television commercials claiming that Vioxx relieves her arthritic pain.

9.  Vioxx is a non-steroidal anti-inflammatory drug (NSAID). Scientific research has shown that traditional NSAIDs, which include aspirin, ibuprofen and naproxen (and which Defendant's advertising campaign seeks to replace with Vioxx at a much high cost), have the effect of inhibiting the body's production of enzymes known as the cox-1 and cox-2 enzymes. The cox-2 enzyme is believed to play a role in causing arthritis pain and inflammation, so that using NSAIDs to suppress it's production has the effect of reducing these symptoms.

10.  The Food & Drug Administration *("FDA")* required consumer warnings for Vioxx stating that patients could suffer serious gastrointestinal problems, including potentially fatal internal bleeding, as a result of taking these drugs and has issued Warning Letters to the Defendant concerning their statements regarding the efficacy of Vioxx, statements that Defendant's own clinical trials, among other studies, do not support.

11.  In addition, it appears that targeting the cox-2 enzyme for suppression has other dangerous effects. Most significantly, the cox-2 enzyme is known to play a role in preventing blood coagulation. Therefore, the inhibition of the cox-2 enzyme increases the propensity of the blood to clot, potentially leading to severe cardiovascular problems. A study concluded before going to market by Merck has shown people taking Vioxx suffer a significantly higher risk of cardiovascular events - including hypertension, stroke, and myocardial infarction *(heart attack)*, among others - than those who take traditional NSAIDs. This study was not made public and was not published to the FDA.

12. Vioxx was approved by the FDA on or about May 21, 1999. Vioxx, until it's recall from the world market, was Merck's second largest selling drug. In 2001, 23.7 million prescriptions for Vioxx were filled in the United States, and the drug's sales totaled $2.6 billion.

13. Vioxx was marketed by Merck as a drug that relieves signs and symptoms of arthritis, acute pain and painful menstrual cycles. Merck has reported to it's shareholders that it's launch of Vioxx was Merck's *"biggest, fastest and best launch ever"* for any drug.

14. Vioxx was usually prescribed to treat arthritis. Most people over 60 show signs of the disease on x-ray and approximately 33% demonstrate actual symptoms.

15. Defendant has marketed Vioxx as a highly effective prescription drug that delivers powerful relief of pain and inflamation caused by, among other things, arthritis. The drug has been marketed as being more effective than alternative NSAIDs that have traditionally been used to treat such conditions.

16. Vioxx was significantly more expensive than traditional NSAIDs. The cost of Vioxx was at least $3-$6 per day, while over-the-counter NSAIDs can cost $0.50 or less per day.

17. As demonstrated by Merck's own research, patients who took Vioxx were significantly more likely to suffer heart attacks, strokes, and other cardiovascular illness than patients who take alternative, less expensive medications to treat conditions like arthritis.

18. In December 1999, the FDA issued a Warning Letter to Merck stating that Merck was unlawfully marketing Vioxx by promoting its efficacy and safety without presenting any information concerning the contraindications, warnings, precautions and adverse events associated with taking Vioxx.

19. On August 22, 2001, a study published in Journal of the American Medical Association by researchers from the Cleveland Clinic indicated that Vioxx was linked to an increase in blood clots, heart attacks and strokes.

20. In September 2001, the FDA issued a second Warning Letter stating that Merck was unlawfully misrepresenting the safety of Vioxx because, among other things, it's promotional campaign minimized the *"potentially serious cardiovascular findings"* that were observed in Merck's own study. The FDA also found that Merck had made unsubstantiated superiority claims with respect to Vioxx in comparison to other NSAIDs and has promoted Vioxx for unapproved uses and in an unapproved dosing regiment.

22. In September 2004, the three year APPROVe (Adenomatous Polyp Prevention on Vioxx) trial was stopped because it showed that ingesting Vioxx created an increased risk for serious cardiovascular events, such as heart attack and stroke.

23. Vioxx was withdrawn from the world market on September 20, 2004.

24. Defendant has suppressed material information from their own clinical studies and concealed and/or omitted material information that Vioxx is associated with increased propensity of blood clotting and with significant and dangerous cardiovascular events, both independently and in comparison to traditional NSAIDs.

25. Merck has publicly denied that Vioxx causes heart attacks, strokes and other cardiovascular illness or that Vioxx causes an increased risk that patients will suffer those illnesses. These statements are contradicted by medical research that indicates that cox-2 inhibitors have *"pro-thrombotic properties,"* that is, they have the propensity to cause the blood to clot more easily. Moreover, Merck has admitted that patients who take certain competing NSAIDs are benefitted because, unlike a cox-2 inhibitor such as Vioxx, those alternative drugs inhibit the body's production

of thromboxane. Thromboxane causes platelets in human blood to stick together, leading to blood clots, strokes, heart attacks and other cardiovascular illness.

26. Even if it were true, however, as Merck has stated, that cox-2 inhibitors like Vioxx do not directly cause heart attacks, strokes, and cardiovascular illness, or the increased risk of those illnesses, it is still clear that switching from most alternative and competing NSAIDs to Vioxx for pain relief indirectly causes those illnesses and/or that increased risk because, by Merck's own admission, the patient loses the anti-clotting benefits of the competing NSAIDs. For that reason, Vioxx had been and continued to be falsely marketed, until its recall from the world market as being safer than alternative pain relievers which - unlikeVioxx - actually helped prevent and reduce the likelihood that patients will suffer increased blood clotting propensity, heart attacks, and other cardiovascular illness.

27. Merck has intentionally concealed information from the public that exposes the dangers of Vioxx.

28. Merck entered into a pattern and practice of intimidating any research facility who attempted to discuss Vioxx safety and efficacy.

29. Consumers and their prescribing physicians have been misled by Defendant because they were not being advised that by switching from most alternative, more traditional NSAIDs to Vioxx, they were increasing the likelihood that they will suffer enhanced risk of blood clotting, heart attacks, strokes and other cardiovascular illness. The advertising, packaging, labels, and other information made available to the physicians and public concerning both drugs did not alert patients or their physicians to these serious health dangers and risks.

30. The Decedent took Vioxx as directed by the Defendant and as prescribed by her physician. Decedent's stroke was directly and proximately caused by her ingestion of Vioxx.

31. As a result of her stroke, Annette M. Zeman suffered greatly, both physically and emotionally, including the knowledge of her impending death, and died on January 6, 2004.

## COUNT ONE
### Strict Product Liability/Failure to Warn

32. Plaintiff reavers and realleges each and every allegation as set forth in the *"Jurisdiction and Venue"* and *"Factual Allegations"* sections of this Complaint as if fully rewritten herein and further states:

33. Vioxx, as manufactured and/or supplied by Defendants, was unaccompanied by adequate warnings regarding the fact that it causes increased propensity of the blood to clot, heart attacks, strokes, and other cardiovascular illness, as well as caused the increased risk that patients taking these drugs will suffer those illnesses. There were no warnings to patients or to prescribing physicians that this drug carried with it serious heath dangers and risks.

34. Defendant failed to perform adequate testing prior to manufacturing and marketing Vioxx to patients and their physicians. Adequate testing would have shown that patients who take and/or switch to Vioxx from more traditional, alternative pain relief medications suffer a greater propensity of the blood to clot and are substantially more likely to suffer heart attacks, strokes, and other cardiovascular illness. Adequate testing would have shown that taking and/or switching to Vioxx from alternative, more traditional pain relief medications will cause those cardiovascular problems, including strokes.

35. Vioxx, as manufactured and/or supplied by Defendant, was a defective product due to defendant's inadequate post-marketing warnings and instructions. Moreover, after Defendant knew or should have known that Vioxx posed greater health dangers and risk to patients that more traditional, alternative medications, Defendant failed to take steps to warn and/or cause patients and their prescribing physicians to be advised of such danger and risks. Defendant also failed to take

-7-

steps to warn and/or cause patients to be advised of the serious health dangers and risks to which they were exposed and are continuing to be exposed by switching from most alternative, more traditional pain relievers to Vioxx.

36. As a direct and proximate result of the Defendant's conduct, as aforesaid, Annette M. Zeman suffered great pain and anxiety and irreparable and catastrophic personal injury, culminating in her death.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, punitive damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, together with interest, costs, reasonable attorneys' fees and any other such legal and/or equitable relief deemed just and appropriate for this cause of action.

## COUNT TWO
### Strict Product Liability

37. Plaintiff reavers and realleges each and every allegation as set forth in the *"Jurisdiction and Venue," "Factual Allegations"* and *Count One* of this Complaint as if fully rewritten herein and further states:

38. Vioxx as manufactured and/or supplied by Defendant was defective and/or hazardous in design or formulation in that when those drugs left the hands of the manufacturer and/or suppliers, the foreseeable risks to patients who would take the drugs exceeded the benefits associated with their design or formulation in violation of O.R.C. §2307.75.

39. Alternatively, Vioxx as manufactured and/or supplied by Defendant was defective and/or hazardous in design or formulation in that when the drug left the hands of the manufacturer and/or suppliers, the drug was unreasonably dangerous; more dangerous than an ordinary consumer

-8-

would expect, and more dangerous than other forms of more traditional NSAIDs in violation of O.R.C. §2307.75.

40.   Vioxx as manufactured and/or supplied by Defendant was defective and/or hazardous to patients due to inadequate warnings and instructions. The Defendant knew or should have known that Vioxx would pose significant health dangers and risks to patients, as compared to traditional prescription and non-prescription pain relief medications that patients usually took for the same or similar medical conditions. Defendant also knew or should have known that Vioxx was particularly dangerous for patients who switched to these drugs from more traditional NSAIDs.

41.   As a direct and proximate result of the Defendant's conduct, as aforesaid, Annette M. Zeman suffered great pain and anxiety and irreparable and catastrophic personal injury, culminating in her death.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, punitive damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, together with interest, costs, reasonable attorneys' fees and any other such legal and/or equitable relief deemed just and appropriate for this cause of action.

### COUNT THREE
**Negligence**

42.   Plaintiff reavers and realleges each and every allegation as set forth in the *"Jurisdiction and Venue," "Factual Allegations"* and *Counts One and Two* of this Complaint as if fully rewritten herein and further states:

43.   Defendant had a duty to exercise reasonable care in the development, manufacture, sale and/or distribution of Vioxx into the stream of commerce, including a duty to ensure that the

drug worked safely and effectively for its intended use, which reasonably and foreseeably included a reduction of inflammation, swelling, stiffness and pain without causing patients to suffer heart attacks, strokes, and other cardiovascular illness and without causing patients to have an increased risk of suffering those illnesses, or increasing the propensity for the blood to clot.

44. Defendant failed to exercise reasonable care in the development, manufacture, sale, testing, quality assurance, quality control and/or distribution of Vioxx into interstate commerce in that Defendant knew or should have known that Vioxx causes an increased propensity for the blood to clot, heart attacks, strokes and other cardiovascular illness. Defendant also knew or should have known that Vioxx causes patients who take or switch to these drugs from more traditional NSAIDs to be more likely to suffer a greater propensity of the blood to clot, heart attacks, strokes and other cardiovascular illness.

45. Defendant was negligent in the design, manufacture, testing, advertising, warning, marketing, sale and provision of warnings with respect to Vioxx in that they:

   a. Failed to use reasonable care in designing and manufacturing Vioxx so as to avoid the aforementioned risks to individuals who were prescribed, switched to, and/or took this drug;

   b. Failed to accompany this product with proper warnings regarding all possible adverse drug effects and potential health dangers and risks that could result from patients taking Vioxx and/or switching to Vioxx from more traditional NSAIDs;

   c. Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the effective use and safety of Vioxx;

   d. Failed to provide adequate training and information to physicians and other medical care providers concerning the appropriate use and serious health dangers and risks that would arise from patients' use of Vioxx;

    e.    Failed to warn Plaintiffs in their marketing and distribution of Vioxx, either directly or indirectly through physicians, orally or in writing, that taking and/or switching to Vioxx from more traditional NSAIDs would cause increased propensity for their blood to clot, heart attacks, strokes, and other cardiovascular illness as well as the increased likelihood that patients would suffer those illnesses; and

    f.    Were otherwise careless or negligent.

46.    Despite the fact that Defendant knew or should have known that taking and/or switching to Vioxx from more traditional, alternative pain relief medications posed serious health dangers and risks to patients, Defendant continued to market Vioxx without disclosing those serious health dangers and risks.

47.    Defendant knew or should have known that consumers such as Plaintiff's Decedent would suffer injury as a result of Defendant's failure to exercise ordinary care, including irreparable injury which has been and will continue to be suffered by those unsuspecting patients like Plaintiff's Decedent who took and/or switched to this drug.

48.    As a direct and proximate result of the Defendant's conduct, as aforesaid, Annette M. Zeman suffered great pain and anxiety and irreparable and catastrophic personal injury, culminating in her death.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, punitive damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, together with interest, costs, reasonable attorneys' fees and any other such legal and/or equitable relief deemed just and appropriate for this cause of action.

## COUNT FOUR
### Violation of Ohio Consumer Sales Practices Act

49. Plaintiff reavers and realleges each and every allegation as set forth in the *"Jurisdiction and Venue," "Factual Allegations"* and *Counts One through Three* of this Complaint as if fully rewritten herein and further state:

50. Plaintiff alleges that from approximately September 2001 until December 2003 Plaintiff's Decedent ingested Vioxx, as manufactured, marketed and supplied by Defendant Merck.

51. Defendant Merck supplied Vioxx to the Decedent and accordingly is a supplier in connection with consumer transactions pursuant to Ohio's Consumer Sales Practices Act, Ohio Revised Code §1345.02(B)(2) as a supplier in connection with consumer transactions in the following respect: Defendant Merck knew at the time the transactions were entered into that it deceptively represented that the prescription drug Vioxx was of a particular standard, quality, grade or prescription.

52. Defendant Merck engaged in unconscionable acts and practices pursuant to O.R.C. §1345.03(B)(6) as a supplier in connection with consumer transactions in the following respect: Defendant Merck knew at the time the transaction was entered into that it unconscionably made a misleading statement of opinion upon which the consumer was likely to rely to his or her detriment.

53. Defendant Merck was a supplier of Vioxx to consumers in the State of Ohio in the following way: Defendant's unprecedented and materially misleading and deceptive marketing campaign, as herein described, caused Vioxx to be introduced to consumers like the Decedent both directly and through Ohio physicians and/or pharmacists who all relied upon Defendant's misrepresentations in the dispensing of Vioxx on the mistaken belief that said product was a safe product in the treatment of arthritis pain and/or symptoms.

54. Defendant Merck knew or should have known that the ingestion of the drug Vioxx had caused strokes, among other injuries, and should have taken affirmative steps to warn consumers, such as the Decedent of the potential harm of the drug.

57. As a direct and proximate result of Defendant's conduct, including but not limited to deceptive and unconscionable acts and practices as aforesaid, Annette M. Zeman suffered great pain and anxiety and irreparable and catastrophic personal injury, culminating in her death.

58. Plaintiff further alleges that Defendant Merck knowingly committed acts and practices in violation of the consumer Sales Practices Act and is accordingly responsible for attorneys' fees.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, punitive damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, together with interest, costs, reasonable attorneys' fees and any other such legal and/or equitable relief deemed just and appropriate for this cause of action.

## COUNT FIVE
### Fraud

59. Plaintiff reavers and realleges each and every allegation as set forth in the *"Jurisdiction and Venue," "Factual Allegations"* and *Counts One through Four* of this Complaint as if fully rewritten herein and further states:

60. At all times relevant herein, Defendant Merck knowingly and intentionally made misrepresentations that Defendant Merck knew to be false as here and before alleged.

61. At all times relevant herein, Defendant Merck's representations were material and made with the express purpose of inducing consumers like the Decedent to rely upon such falsities and to therefore ingest Vioxx.

62. At all times relevant herein, the Decedent justifiably and in good faith relied upon the knowing misrepresentations of Defendant Merck and ingested Vioxx to her great detriment and harm.

63. As a direct and proximate result of Defendant's knowing and fraudulent conduct, as aforesaid, Annette M. Zeman suffered great pain and anxiety and irreparable and catastrophic personal injury, culminating in her death.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, punitive damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, together with interest, costs, reasonable attorneys' fees and any other such legal and/or equitable relief deemed just and appropriate for this cause of action.

## COUNT SIX
### Loss of Consortium

64. Plaintiff reavers and realleges each and every allegation as set forth in the *"Jurisdiction and Venue," "Factual Allegations"* and *Counts One through Five* of this Complaint as if fully rewritten herein and further states:

65. Plaintiff is the duly appointed Administrator of the Estate of Annette M. Zeman, Deceased and brings this action for the express benefit of her heirs and next-of-kin, pursuant to and under favor of O.R.C. §§2125.01, 2125.02 and 2305.21.

66. As a direct and proximate result of the Defendant's conduct, including but not limited to negligence, consumer sales practices, fraud, and product failures, as set forth above, the heirs and next of kin of Annette M. Zeman suffered loss of her support, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training and education. Said next of kin have suffered great mental anguish and distress as well as the cost of hospital, funeral and burial expenses.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, punitive damages in excess of Seventy-five Thousand and 0/100 Dollars *($75,000.00)*, together with interest, costs, reasonable attorneys' fees and any other such legal and/or equitable relief deemed just and appropriate for this cause of action.

### JURY DEMAND

Plaintiffs respectfully demand a trial by jury of the within matter.

Respectfully submitted,

**Robert J. DiCello** (0003353)
**Mark A. DiCello** (0063924)
Robert J. DiCello Co., L.P.A.
7556 Mentor Avenue/Mentor, Ohio  44060
phone: 440-953-8888/fax: 440-953-9138
email: rjdicello@dicellolaw.com
email: madicello@dicellolaw.com
*Counsel for Plaintiff*

**John T. Murray** (0008793)
Murray & Murray Co., L.P.A.
111 E. Shoreline Drive/P.O. Box 19
Sandusky, Ohio 44871-0019
phone: 419-624-3000/fax: 419-624-0707
*Co-counsel for Plaintiff*

**Phillip A. Ciano** (0066134)
Ciano & Goldwasser
MK Ferguson Plaza, Suite 460
1500 West Third Street
Cleveland, Ohio 44113
phone: 216-658-9900/fax: 216-658-9920
*Co-counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March _____, 2006 a true copy of the foregoing Plaintiff's Amended Complaint was filed by U S Mail. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the LexisNexis system.

Respectfully submitted,

Robert J. DiCello (#0003353)
Mark A. DiCello (#0063924)
ROBERT J. DICELLO CO., L.P.A.
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: (440) 953-8888
Facsimile: (440) 953-9138

John T. Murray (#0008793)
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio 44870
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

Philip A. Ciano (#0066134)
Andrew S. Goldwasser (#0068397)
CIANO & GOLDWASSER, L.L.P.
MK Ferguson Plaza
1500 West Third Street, Suite 460
Cleveland, Ohio 44113
Telephone: (216) 658-9900
Facsimile: (216) 658-9920

Attorneys for Plaintiffs