**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR -4  PM 3: 22

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| IN RE: VIOXX® | : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | JUDGE FALLON |
| | : | MAGISTRATE JUDGE KNOWLES |
| | | |
| THIS RELATES TO: | : | Plaintiff: Charles Baker |
| | : | Civil Action No: E.D. Pa. 05-649 |
| | : | E.D. La. 05-1564 |

### PLAINTIFFS' MOTION TO AMEND COMPLAINT

Plaintiffs, by and through their undersigned attorneys, respectfully request that the Court enter the Order proposed, granting their Motion to Amend Complaint.

In support hereof, plaintiffs incorporate by reference their Memorandum of Law, which follows.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter the Order proposed, granting their Motion to Amend Complaint.

Respectfully submitted,

By: _____
Leonard V. Fodera
Allison Long

1835 Market Street
Suite 2600
Philadelphia, PA 19103
(215)561-2100

Attorneys for Plaintiffs

Dated: April 3, 2006

____ Fee_____
____ Process_____
_X_ Dktd _____
_V_ CtRmDep_____
____ Doc. No_____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: VIOXX® | : | MDL Docket No. 1657 |
| **PRODUCTS LIABILITY LITIGATION** | : | |
| | : | SECTION L |
| | : | JUDGE FALLON |
| | : | MAGISTRATE JUDGE KNOWLES |

| | | |
|---|---|---|
| **THIS RELATES TO:** | : | **Plaintiff: Charles Baker** |
| | : | **Civil Action No: E.D. Pa. 05-649** |
| | : | **E.D. La. 05-1564** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO AMEND COMPLAINT**

## I.    PROCEDURAL BACKGROUND

This Vioxx product liability matter was instituted by the filing of a Complaint on or about October 14, 2004 in the Eastern District of Pennsylvania. (See Complaint attached hereto as Exhibit "A"). In said Complaint, Plaintiffs have alleged, in part, that claimant Charles Baker ingested Vioxx from 2001 through 2003. On or about May 24, 2005 this instant matter was transferred to the Eastern District of Louisiana.

On or about November 9, 2005 Plaintiffs served their Plaintiff Profile Form (hereinafter referred to as "PPF"). (See PPF attached hereto as Exhibit "B"). Upon further review of Plaintiffs' file moving counsel noticed a typographical error in the Complaint and PPF, as to the dates of ingestion of the Vioxx. The Complaint and PPF allege Vioxx ingestion from 2001 through 2003, when in actuality Mr. Baker's medical records reflect ingestion from 2000 through 2003.

On February 14, 2006, counsel for plaintiffs filed an amended PPF reflecting Vioxx ingestion from 2000 through 2003. (See transmittal letter attached hereto as Exhibit "C"). On said date counsel for plaintiffs telephoned counsel for defendant John Poulos asking whether he would agree to permit plaintiffs to amend their

complaint to correct the allegations regarding the dates of Vioxx ingestion. Attorney Poulos indicated that he did not think the proposed amendment would be a problem but need to discuss the matter with his superiors. Mr. Poulos indicated to moving counsel that he would get back to her with an answer to her request. On or about February 22, 2006 counsel for plaintiff prepared a Stipulation agreeing to the to amendment of plaintiffs' complaint and forwarded it to attorney Poulos. (See proposed Stipulation and transmittal letter attached hereto as Exhibit "D").

On or about March 6, 2006 counsel for plaintiffs placed a call to Mr. Poulos' office to check the status of the proposed Stipulation. Counsel for Plaintiffs was informed that Mr. Poulos was on trial and that the Stipulation should be forwarded to attorney Joshua Schiller for execution. That same day the Stipulation was sent to Mr. Schiller for execution. (See  transmittal letter attached hereto as Exhibit "E").  On or about March 20, 2006 follow up correspondence was sent to Mr. Schiller inquiring of the status of the proposed Stipulation.  (See correspondence attached hereto as Exhibit "F").    To date,  counsel for plaintiffs has yet to receive any response to the proposed Stipulation. As such, Plaintiffs respectfully request this Honorable Court grant permission to amend their Complaint to reflect accurate dates of Plaintiff's Vioxx ingestion.


## II.    FACTUAL BACKGROUND

Charles Baker ingested Vioxx in 2000 through 2003.   On or about November 8, 2000, Charles Baker suffered a myocardial infarction.    In Plaintiffs' Complaint it in inadvertently alleged that plaintiff Charles Baker only ingested Vioxx from 2001 through 2003.

## III.   LEGAL ARGUMENT

### A.   Plaintiffs should be permitted to amend their complaint to correct dates of Vioxx ingestion.

Rule 15 of the F.R.C.P. provides that:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

It is well settled that amendment to pleadings is a matter of judicial discretion. It is also settled that such amendments should be allowed at any stage of the adversary process to secure a decision of the case on its merits, unless surprise or prejudice to the other party would result or the proposed amendment is against a positive rule of law. In Gittens-Altman, A.M.A. v. HCB Contractors, 1992 U.S. Dist. LEXIS 6779, this Honorable Court held that Rule 15(a)'s admonition that leave to amend pleadings is to be "freely given" means just that:

> Rule 15(a) declares that leave to amend "shall be freely given when justice requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

> (citing to Foman v. Davis, 371 U.S. 178, 182 (1962) (citations omitted))

Defendant Merck & Co. will not be prejudiced by such amendment as Defendant has been aware of all alleged legal theories regarding Charles Baker's Vioxx ingestion. The proposed amendment in no way changes Plaintiffs claims against defendant Merck & Co.   As such, Plaintiffs should be permitted to amend their complaint.

**WHEREFORE**, plaintiffs respectfully requests that this Honorable Court permit the amendment of plaintiffs' complaint.

**SILVERMAN & FODERA, P.C.**

Leonard V. Fodera
Allison Long

Attorneys for Plaintiffs

DATED: 4/3/2006

## VERIFICATION

Allison Long, Esquire, hereby states that she is the attorney for the Plaintiffs in this action and verifies that statements made in the foregoing Motion to Amend Plaintiffs' Complaint are true and correct to the best of her knowledge, information, and belief. She understands that the statements therein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Allison Long
Attorney for Plaintiffs

Date: 4/3/2006

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Motion to Amend Plaintiffs' Complaint was served via first class mail, postage pre-paid mail upon the following:

Joshua Schiller, Esquire
Dechert, LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

John Poulos, Esquire
Hughes Hubbard & Reed, LLP
101 Hudson Street
Suite 3601
Jersey City, NJ 07302-3918

on this 3rd day of April, 2006

Allison Long, Esquire
Attorney for Plaintiffs

# EXHIBIT "A"

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

**APPENDIX H**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Charles Baker and Phyllis Baker (h/w)

**DEFENDANTS**

Merck & Co., Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attached counsel list

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☒ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. § 1332

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 2/10/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Charles Baker and Phyllis Baker (h/w)

v.

Merck & Co., Inc.

**Counsel for Plaintiffs**

Leonard V. Fodera, Esquire
Louis T. Silverman, Esquire
Allison Long, Esquire
Silverman & Fodera
1835 Market Street
Suite 2600
Philadelphia, PA 19103
(215) 561-2100 - Office
(215) 561-0190 - Facsimile

and

Arnold Levin, Esquire
Fred S. Longer, Esquire
Michael M. Weinkowitz, Esquire
Daniel C. Levin, Esquire
Levin Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
(215) 592-1500 - Office
(215) 592-4663 - Facsimile

UNITED STATES DISTRICT COURT                                                APPENDIX F

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  436 Pierce Street, Lansdale, PA 19446

Address of Defendant:  One Merck Drive, P.O. Box 100, Whitehouse Station, NJ 08889-100

Place of Accident, Incident or Transaction:  Whitehouse Station, NJ
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))            Yes☐  No☐

Does this case involve multidistrict litigation possibilities?                                   Yes☒  No☐
*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                         Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                         Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                         Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)
A. *Federal Question Cases:*                                    B. *Diversity Jurisdiction Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts    1. ☐ Insurance Contract and Other Contracts
2. ☐ FELA                                                       2. ☐ Airplane Personal Injury
3. ☐ Jones Act-Personal Injury                                  3. ☐ Assault, Defamation
4. ☐ Antitrust                                                  4. ☐ Marine Personal Injury
5. ☐ Patent                                                     5. ☐ Motor Vehicle Personal Injury
6. ☐ Labor-Management Relations                                 6. ☐ Other Personal Injury (Please specify)
7. ☐ Civil Rights                                               7. ☒ Products Liability
8. ☐ Habeas Corpus                                              8. ☐ Products Liability — Asbestos
9. ☐ Securities Act(s) Cases                                    9. ☐ All other Diversity Cases
10. ☐ Social Security Review Cases                                 (Please specify)
11. ☐ All other Federal Question Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*
I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
                        Attorney-at-Law                Attorney I.D.#

NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/10/05  _____    Atty. I.D. No.:  57203
                Leonard V. Fodera, Esquire       Atty. I.D. No.:  73608
                Allison Long, Esquire

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| | : | CIVIL ACTION |
| Charles Baker and Phyllis Baker (h/w) | : | |
| v. | : | |
| Merck & Co., Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.           ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits                ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                       ( )

(e)  Special Management -- Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                          ( )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| | | |
|---|---|---|
| _2/10/05_ | _(signature)_ | Plaintiffs Charles and Phyllis Baker |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 561-2100 | (215) 561-0190 | lfodera@civilrights.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA |
|---|

| Charles Baker and Phyllis Baker (h/w)<br><br>v.<br><br>Merck & Co., Inc. | CIVIL ACTION NO.<br><br><br>TO: (NAME AND ADDRESS OF<br>       DEFENDANT)<br><br>Merck & Co., Inc.<br>One Merck Drive<br>P.O. Box 100<br>Whitehouse Station, NJ 08889-0100 |
|---|---|

### YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

| Leonard V. Fodera, Esquire<br>Louis T. Silverman, Esquire<br>Allison Long, Esquire<br>1835 Market Street – Suite 2600<br>Philadelphia, PA 19103 | Arnold Levin, Esquire<br>Fred S. Longer, Esquire<br>Michael M. Weinkowitz, Esquire<br>Daniel Levin, Esquire<br>510 Walnut Street – Suite 500<br>Philadelphia, PA 19102 |
|---|---|

an answer to the complaint which is herewith served upon you, within        days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Michael E. Kunz, Clerk of Court | Date: |
|---|---|
| (By) Deputy Clerk | |

**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF PENNSYLVANIA
U.S. COURT HOUSE
INDEPENDENCE MALL WEST
601 MARKET STREET
PHILADELPHIA 19106-1797

MICHAEL E. KUNZ
CLERK OF COURT

CLERK'S OFFICE
ROOM 2609
TELEPHONE
(215) 597-7704

## NOTICE OF RIGHT TO CONSENT TO DISPOSITION OF A
## CIVIL CASE BY A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. §636(c), you are hereby notified that pursuant to Local Rule 7(h), the United States magistrate judges of this district, in addition to their other duties, may, upon the consent of all the parties in a civil case, conduct any or all proceedings in a civil case, including a jury or non-jury trial, and order the entry of a final judgment. Appropriate consent forms for this purpose are available from the clerk of court.

Your decision to consent, or not to consent, to the referral of your case to a United States magistrate judge for disposition is entirely voluntary and should be communicated solely to the clerk of the district court. Only if all the parties in the case consent to the reference to a magistrate judge will either the judge or magistrate judge be informed of your decision.

The judge will decide whether or not to refer the case to a magistrate judge for disposition but no action eligible for arbitration will be referred by consent of the parties until the arbitration has been concluded and trial *de novo* demanded pursuant to Local Rule 8, Paragraph 7. The court may, for good cause shown, on its own motion or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge.

When a case is referred to a magistrate judge for all further proceedings, including the entry of final judgment, the final judgment may be appealed directly to the Court of Appeals for the Third Circuit, unless the parties elect to have the case reviewed by the appropriate district judge (in which event any further appeal to the Court of Appeals would only be by petition for leave to appeal). Accordingly, in executing a consent form, you will be asked to specify which appeal procedure you elect.

Nothing herein shall be construed to be a limitation of any party's right to seek review by the Supreme Court of the United States.

MICHAEL E. KUNZ
CLERK OF COURT

Civ. 635(2/92)

**NS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES BAKER and PHYLLIS BAKER(h/w)** : <br> **436 Pierce Street** <br> **Lansdale, PA 19446** <br>          **Plaintiffs,** : <br>    **v.** : <br> : <br> **MERCK & CO., Inc.** : <br> **One Merck Drive** : <br> **P.O. Box 100** : <br> **Whitehouse Station, NJ 08889-100** : <br>           **Defendant** : | **CIVIL ACTION NUMBER** <br><br> *05cv641* <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

### PLAINTIFF'S COMPLAINT

Plaintiffs, for their Complaint, do hereby aver as follows:

### JURISDICTIONAL STATEMENT

1.    This action is brought pursuant to 42 U.S.C. sec. 1332. Plaintiffs hereby aver that the amount in controversy in the above captioned matter exceeds the jurisdictional limits and that said controversy arises between citizens of different states as is required by the aforementioned statute in order to invoke the "Diversity of Citizenship" jurisdiction of this Court. Plaintiffs also hereby invokes the pendant jurisdiction of this Court to hear and decide claims arising under state law.

### PARTIES

2.    Plaintiff, Charles Baker (hereinafter "plaintiff") and plaintiff Phyllis Baker (hereinafter "plaintiff" or "plaintiff-spouse") are an adult individuals and citizens of the Commonwealth of Pennsylvania residing at the address listed in the caption above.

3.     Defendant, Merck & Company, Inc. (hereinafter "Merck" or "defendant") is a
business entity as listed in the caption and is a citizen of the United States, is a
citizen of a state other than Pennsylvania, and maintains a principal places of
business in a state other than Pennsylvania as listed in the caption.

## SUBSTANTIVE ALLEGATIONS

4.     At all times relevant and material hereto, defendant has conducted continuous
and substantial business in the states of New Jersey and Pennsylvania.

5.     At all times relevant and material hereto, the defendant acted and gained
knowledge itself and by and through its various agents, servants, employees,
and/or ostensible agents.

6.     As more particularly pleaded below, plaintiffs maintain that the
pharmaceutical drug, Vioxx, is defective, dangerous to human health, unfit and
unsuitable to be marketed and sold in commerce, and lacked proper warnings
as to the dangers associated with its use.

7.     At all relevant times, defendant Merck was in the business of developing,
researching, selling, distributing, designing, manufacturing, testing, evaluating,
licensing, labeling, and/or marketing, either directly or indirectly through third
parties or related entities, pharmaceutical drugs including Vioxx.

8.     At all relevant times, defendant Merck did in fact develop, research, sell,
distribute, design, manufacture, test, evaluate, license, label, and/or market,
either directly or indirectly through third parties or related entities,
pharmaceutical drugs including Vioxx.

9.     During the time period from approximately 2001 until approximately 2003
plaintiff was prescribed, and took as directed, defendant's drug Vioxx for
treatment arthritis symptoms.

10.   As a direct and proximate result of the liability-producing conduct of defendant
      and the defective and unreasonably dangerous condition of its product Vioxx,
      plaintiff has suffered physical injury and damage, including, but not limited to,
      a heart attack resulting in a severely reduced cardiac ejection fraction which is
      permanent and life-threatening.

11.   As a direct and proximate result of defendant's liability-producing conduct and
      defective product Vioxx, plaintiff has in the past and will in the future
      experience physical injuries, pain and suffering, loss of enjoyment of life, lost
      wages, lost earning capacity, medical expenses, medical monitoring expenses,
      embarrassment and humiliation, fright and apprehension, emotional distress,
      and other damages all of which are believed to be permanent.

12.   Plaintiff incorporates by reference each preceding and succeeding paragraph as
      though set forth fully at length herein.

13.   Vioxx is the brand name of rofecoxib, one of a class of drugs called
      "prostaglandins," which work to reduce inflammation and pain by providing
      analgesic and anti-inflammatory benefits to persons with, among other
      conditions, arthritis and muscle pain.  Prostaglandins are COX
      (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to
      produce prostaglandins.

14.   Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins as
      inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor
      of platelet aggregation.

15.   Defendant Merck submitted an Application to Market a new Drug for Human
      Use ("NDA") for rofecoxib to the United States Food and Drug Administration
      ("FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for
      relief of the signs and symptoms of osteoarthritis, the management of acute

pain, and the treatment of primary dysmenorrhea.  This application was denoted NDA 21-042 by the FDA.

16.    Defendant Merck also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.  This application was denoted NDA 21-052 by the FDA.

17.    On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereinafter the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

18.    At the time the drug was approved by the FDA the labeling for rofecoxib stated, in the section entitled "Special Studies - Upper Endoscopy in Patients with Osteoarthritis," "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily.  However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

19.    The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) Effects - Risk of GI Ulceration, Bleeding, and Perforation."

20.    Defendant Merck submitted sNDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib.  In conjunction with the sNDA, Defendant Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic

Treatment With MK-0966 or Naproxrn in Patients With Rheumatoid Arthritis: U.S, Cohort." The VIGOR study was performed from January 6, 1999 through March 17, 2000.

21.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MD-0966 50 mg daily compared to patients in the group taking naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

22.    In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin Woe Aside, Lessons Emerge From COX-2 Trials, in August 2000 page 19.*

23.    Merck continued to deny the ill health effects associates with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealment. Merck engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

24.    Merck continued to profit from its scheme by withholding information from Plaintiff, the consuming public, and the health care industry. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or

withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

25.  On or about August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al., showing what Merck had concealed that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in Merck's trials, including VIGOR, at 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., et al., *Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors*, J.A.M.A. 286:8, 954-959, Aug. 22/29, 2001.  In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

26.  In the JAMA study, the authors stated that "by decreasing PG12 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PG12, potentially leading to an increase in thrombotic cardiovascular events." *Id.* at 957.  In a follow-up peer reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxanne, leading to increased vascular and thrombotic events." Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002.  This is further supported by studies

completed at the University of Pennsylvania.  Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thromboxanne A2*, Journal of Science, V. 296:539-541, Apr. 19, 2002.

27.   On September 17, 2001, Thomas W, Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

28.   The Warning Letter stated that Defendant Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiosascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx."  The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen).

29.   The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant Merck that supports the FDA's issuance of the Warning Letter, and makes the following **"Conclusions and Requested Actions:"**

> The promotional activities and materials described above minimized the potentially serious Cardiovascular findings that were observed in the VIGOR study, minimized the Vioxx / Coumadin  drug interaction, omit crucial risk information associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses.  On

*December 16, 1999, we also objected to your dissemination
of promotional materials for Vioxx that misrepresented
Vioxx's safety profile, contained unsubstantiated
comparative claims, and lacked fair balance.*

*Due to the seriousness of these violations, and the fact that
your violative promotion of Vioxx has continued despite our
prior written notification regarding similar violations, we
request that you provide a detailed response to the issues
raised in this Warning Letter on or before October 1, 2001.*

*This response should contain an action plan that includes a
comprehensive plan to disseminate corrective messages
about the issues discussed in this letter to the audiences that
received theses misleading messages.  This corrective action
plan should also include:*

*Immediately ceasing all violative promotional activities, and
the dissemination of violative promotional materials for
Vioxx.*

*Issuing a "Dear healthcare provider" letter to correct false or
misleading impressions and information.  This proposed
letter should be submitted to us for review prior to its release.
After agreement is reached on the content and audience, the
letter should be disseminated by direct mail to all healthcare*

> providers who were, or may have been exposed to the
> violative promotion.

> A written statement of your intent to comply with "1" and "2"
> above.

30.  On April 11, 2002, the FDA approved a supplemental application for the use of
     Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the
     previously approved indications for osteoarthritis and pain.  The FDA also
     approved new labeling, a "Dear Doctor" letter, and a new patient package
     insert.  The labeling and the "Dear Doctor" letter contained information
     concerning the results of the VIGOR study.

31.  The revised labeling further states that the administration of Vioxx 50 mg, was
     associated with a higher incidence of gastrointestinal symptoms as follows:

> **Clinical Studies in OA and RA with Vioxx 50 mg (Twice
> the highest dose recommended for chronic use)**
>
> In OA and RA clinical trials which combined VIOXX 12.5 or
> 25 mg as well as VIOXX 50 mg, VIOXX 50 mg OD was
> associated with a higher incidence of gastrointestinal
> symptoms (abdominal pain, epigastric pain, heartburn,
> nausea and vomiting), lower extremity edema, hypertension,
> serious* adverse experiences and discontinuation due to
> clinical adverse experiences compared to the recommended
> chronic doses of 12.5 and 25 mg [See DOSAGE AND
> ADMINISTRATION].

32.  Further, the "Dear Doctor" letter approved in conjunction with the revisions to
     the Vioxx labeling, outlines the changes to the Vioxx labeling.

33.  The revised "Patient Information" sheet does not add any information about the results of the VIGOR study."

34.  The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

35.  Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential gastrointestinal and prothrombotic side effects of Vioxx.

36.  Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that Vioxx may cause serious side effects, Defendant Merck has concealed and/or downplayed the dangers associated with Vioxx, and continues to market the drug in the United Stats and abroad.  In its 2001 Annual Report, for example, Defendant Merck states:

> The Company also notes that a number of the federal and
> state lawsuits, involving individual claims as well as
> purported class actions, have been filed against the
> Company with respect to Vioxx . . . . The lawsuits include
> allegations regarding gastrointestinal bleeding and
> cardiovascular events. The Company believes that these
> lawsuits are completely without merit and will vigorously
> defend them.

37.  Further, in its January 23, 2001 8-K filing with the Securities and Exchange Commission, a copy of which is attached as Exhibit "G" hereto, the Defendant fails to mention the cardiac and cardiothrombotic findings of the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr.
> Gilmartin said.  "Our five key products, **VIOXX**, ZOCOR,
> COZAAR/HYZAAR*, FOSAMAX and SINGULAR, drove
> Merck's performance for the year created a powerful

platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.

"Each of the five medicines offers unique competitive advantages, " Mr. Gilmartin said. **VIOXX**, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, **VIOXX** has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck;s second largest-selling medicine. In the United States, **VIOXX** now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. **VIOXX** achieved $2.2 billion in sales for the full year 2000 with $790 million in the fourth quarter.

A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which **VIOXX** reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that **VIOXX** significantly reduced moderate-to-severe acute pain after dental surgery

*to a greater degree compared to codeine combined with*

*acetaminophen.*

38. Despite the foregoing, Defendant Merck has continued to represent to consumers that Vioxx is safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug. The Defendant has also downplayed any potential gastrointestinal side effects of the drug, promoting it is safer and more efficacious than other medications approved for treatment of similar conditions.

### Count I:
### Negligence

39. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

40. With regard to the averments above, defendant was negligent in knowing same, having reason to know same, should having known same, and/or otherwise being in possession of facts which would have caused a reasonable person or company to inquire and, with due diligence, discover same, but

    a. failed to use reasonable care to design an arthritis drug (Vioxx) that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

    b. failed to use reasonable care in designing and manufacturing an Vioxx so as to make it safe for its intended uses, not defective, and not unreasonably dangerous;

    c. failed to use reasonable care to adequately warn foreseeable users such as plaintiff of the dangers of using Vioxx, including, but not limited to adverse cardiac events;

d.  failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discover such defects and unreasonably dangerous conditions associated with defendant's Vioxx;

e.  failed to comply with and/or to use reasonable care to comply with standards of care including accepted industry standards, FDA recommendations, government regulations, statutes, in the design, manufacture, affixing of warnings, and otherwise production and distribution of defendants' Vioxx;

f.  failed to use reasonable care to timely remove and/or recall from the market, retrofit, and/or otherwise prevent the continued contact of plaintiff and persons like plaintiff with such defects and unreasonably dangerous conditions of Vioxx;

g.  failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Vioxx;

h.  failed to use reasonable care to warn plaintiff of dangers known and/or reasonably suspected to defendant to be associated with Vioxx;

i.  failed to use reasonable care to make Vioxx safe;

j.  failed to timely use reasonable care to discover the dangerous conditions or character of defendant's Vioxx;

41.  As a direct and proximate result of defendants' negligence, plaintiff was harmed as aforesaid.

## Count II:
## Strict Products Liability

42.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

43.   At all relevant times, defendant was the researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of Vioxx, which, at all relevant times, was defective and unreasonably dangerous to consumers.

44.   At all relevant times, defendant's Vioxx was defective in its design and/or formulation in that it was not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.   Vioxx was defective in design and/oror formulation in that it lacked efficacy and/or it posed a greater likelihood of injury than other nonsteroidal anti-inflammatory medicines and similar drugs on the market and was more dangerous than ordinary consumers can reasonably foresee.

45.   At all relevant times, the defective condition of Vioxx rendered it unreasonably dangerous, and Vioxx was in this defective condition at the time it left the hands of the defendant. Vioxx was expected to and did reach consumers, including plaintiff, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

46.   At all relevant times, plaintiff was unaware of the significant hazards and defects in Vioxx.   Vioxx was unreasonably dangerous than would be reasonably contemplated by the ordinary user.   During the period that plaintiff was taking Vioxx, the medication was being utilized in a manner that was intended by Defendant.   At the time plaintiff received and consumed Vioxx, it was represented to be safe and free from latent defects.

47.   At all relevant times, defendant Merck knew or should have known of the danger associated with the use of Vioxx, as well as the defective nature of Vioxx, but has continued to design, manufacture, sell, distribute, market, promote and/or supply Vioxx so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Vioxx.

48.   At all relevant times, defendant's Vioxx was in a defective and unreasonably dangerous condition which would not recognized or contemplated by a reasonable person among the expected users and consumers at the time it left the control of the defendant.

49.   At all relevant times, defendant's Vioxx was defective and unreasonably dangerous when used in reasonably expectable ways of handling and/or consumption.

50.   At all relevant times, the aforesaid Vioxx was expected to reach, and did reach, the ultimate user or consumer without substantial change in the condition in which it was sold and/or distributed by defendant.

51.   At all relevant times, defendant's Vioxx was defective and unreasonably dangerous under section 402(A) Restatement (Second) of Torts 402, the New Jersey Products Liability Act ,and/or the Indiana Product Liability Act.

52.   Defendant Merck is strictly liable to Plaintiff(s) for designing, manufacturing, and placing into the stream of commerce a product which was defective and unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of defendant.

53.   As a direct and proximate result of defendants' defective and unreasonably dangerous products, plaintiff was harmed as aforesaid.

## Count III:
### Failure to Warn

54.   Plaintiff incorporates by reference each preceding and succeeding paragraph as
      though set forth fully at length herein.

55.   At all relevant times, defendant Merck researched, developed, designed, tested,
      manufactured, inspected, labeled, distributed, marketed, promoted, sold, and
      otherwise released into the stream of commerce the pharmaceutical, Vioxx, and
      in the course of same, directly advertised or marketed the product of FDA,
      consumers or persons responsible for consumers, and therefore had a duty to
      warn of the risks associated with the use of Vioxx.

56.   At all relevant times, Vioxx was under the exclusive control of the Defendant as
      aforesaid, and was unaccompanied by appropriate warnings regarding all
      possible adverse side effects and complications associated with the use of
      Vioxx, dangerous drug-drug interactions and food-drug interactions, and the
      comparative severity, duration and the extent of the risk of injury with such
      use.

57.   At all relevant times, defendant Merck has failed to timely and reasonably warn
      of material facts regarding the safety and efficacy of Vioxx so that no medical
      care provider would have prescribed, or no consumer would have used, Vioxx
      had those facts been made known to such providers and consumers.

58.   At all relevant times, defendant Merck has failed to perform or otherwise
      facilitate adequate testing in that such testing would have shown that Vioxx
      posed serious and potentially life-threatening side effects and complications
      with respect to which full and proper warning accurately and fully reflecting
      the symptoms, scope and severity should have been made to medical care
      providers, the FDA and the public, including the Plaintiff.

59. At all relevant times, Vioxx, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendant, was defective due to inadequate post-marketing warning and/or instruction because, after Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of Vioxx, Defendant failed to provide adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiff, and continued to promote Vioxx aggressively.

60. As a direct and proximate result of defendants' defective and unreasonably dangerous product and its failure to warn plaintiff and other's like him of same, plaintiff was harmed as aforesaid.

## Count IV:
### Breach of the Implied Warranty of Merchantability

61. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

62. Defendant's Vioxx was not of merchantable quality and not fit for the ordinary purposes for which such a product is used.

63. As a direct and proximate result of defendant's defective and unreasonably dangerous Vioxx and its breach of the implied warranty of merchantability, plaintiff was harmed as aforesaid.

## Count V:
### Breach of the Implied Warranty of Fitness for a Particular Purpose

64. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

65. Defendant's Vioxx was not fit for its particular purpose of safely treating arthritis pain.

66. Defendant Merck actually and/or constructively knew of the purposes to which its Vioxx was to be used.

67. Plaintiff relied upon defendant to furnish Vioxx in a condition suitable for its particular purpose.

68. As a direct and proximate result of defendant's defective and unreasonably dangerous Vioxx and its breach of implied warranty of fitness for a particular purpose, plaintiff was harmed as aforesaid.

**Count VI:**
**Breach of Express Warranty**

69. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

70. At all relevant times, defendant warranted that its Vioxx was safe and not defective and/or unreasonably dangerous as stated above.

71. At all relevant times, defendant Merck placed Vioxx into the stream of commerce for sale and recommended its use to physicians, the FDA and consumers without adequately warning physicians, the FDA and consumers, including the Plaintiff(s), of the risks associated with the use of Vioxx.

72. At all relevant times, defendant Meck had a duty to exercise reasonable care in the research, development, design, testing, manufacture, inspections, labeling, distribution, marketing, promotion, sale and release of Vioxx, including a duty to:

   a. Ensure that the product did not cause the user unreasonably dangerous side effects;

   b. Warn of dangerous and potentially fatal side effects; and

       c.    Disclose adverse material facts when making representations to physicians, the FDA and the public at large, including Plaintiff.

73.   When plaintiff's; physicians(s) prescribed Vioxx and plaintiff made the decision to use Vioxx, both Plaintiff and their physicians reasonably relied upon the defendant and its agents to disclose known defects, risks, dangers and side effects of Vioxx.

74.   Plaintiff's physicians(s), the FDA and/or Plaintiff had no knowledge of the falsity or incompleteness of the defendant's statements and representations concerning Vioxx when Plaintiff; physician(s) prescribed and/or otherwise provided Vioxx and Plaintiff purchased and used Vioxx as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by the Defendant. Plaintiff justifiably and detrimentally relied on the warranties and representations of Defendant in the purchase and use of Vioxx.

75.   At all relevant times, defendant Merck was under a duty to disclose the defective and unsafe nature of Vioxx to physicians, the FDA, consumers and users, such as Plaintiff. Defendant had sole access to material facts concerning the defects, and Defendant knew that physicians, the FDA and users, such as Plaintiff, could not have reasonably discovered such defects.

76.   By the conduct alleged, Defendant Merck, its agents and employees expressly warranted to Plaintiff and Plaintiff's physicians(s) that the products were merchantable and fit for the purpose intended.

77.   This warranty was breached because Vioxx was not safe and effective as a medication for arthritis and pain, as Defendant had represented, and Plaintiff was injured.

78. As a direct and proximate result of defendant's defective and unreasonably dangerous Vioxx and its breach express warranty, plaintiff was harmed as aforesaid.

## Count VII:
## Misrepresentation

79. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

80. Defendant fraudulently, intentionally, wilfully and wantonly, purposefully, knowingly, recklessly, negligently and/or in fact materially misrepresented both affirmatively and by omission that its Vioxx was of good quality, non-defective, safe for its intended use, merchantable, and fit for its particular purposes.

81. Defendant intended, knew, and/or should have known that plaintiff would be induced, by the aforesaid misrepresentations, to use defendants Vioxx.

82. In using defendant's Vioxx, plaintiff justifiably relied on defendant's representations that its Vioxx was of good quality, non-defective, safe for its intended use, merchantable, and fit for its particular purposes.

82. Defendant's Vioxx was, in fact, defective and unreasonably dangerous, as recited above.

84. As a direct and proximate result of defendant's defective and unreasonably dangerous Vioxx as well as its affirmative misrepresentations and omissions, plaintiff was harmed as aforesaid.

## Count VIII:
## Violation of Unfair Trade Practice/Consumer Protection Laws

85. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

86.    At all relevant times, defendant Merck knew or should have known that the use
       of Vioxx causes serious and life threatening injuries bu failed to warn the
       public, including Plaintiff, of same.

87.    At all relevant times, defendant Merck made untrue, deceptive or misleading
       representations of material facts to and omitted and/or concealed material facts
       from Plaintiff in product packaging, labeling, medical advertising, direct-to-
       consumer advertising, promotional campaigns and materials, among other
       ways, regarding the safety and use of Vioxx.   Moreover, Defendant downplayed
       and/or understated the serious nature of the risks associated with Vioxx in
       other to increase the sales of Vioxx and secure a greater share of the COX-2-
       market.

88.    At all relevant times, defendant's statements and omissions were undertaken
       with the intent that the FDA, physicians, and consumers, including the
       Plaintiff, would rely on the defendant's statements and/or omissions.

89.    At all relevant times, defendant knew of the growing public acceptance of the
       misinformation and misrepresentations regarding the safety and efficacy of
       Vioxx but remained silentbecause Merck's appetite for significant future profits
       far outweighed its concern for the health and safety of the Plaintiff and others
       like him.

90.    Plaintiff's physician(s) prescribed and/or otherwise provided Plaintiff with
       Vioxx, and Plaintiff consumed Vioxx, and suffered ascertainable losses of
       money as a result of the Defendant's use or employment of the methods, acts or
       practices alleged herein.

91.    The aforesaid promotion and release of Vioxx into the stream of commerce
       constitutes an unconscionable commercial practice, deception, false pretense,
       misrepresentations, and/or the knowing concealment, suppression, or omission
       of material facts with the intent that others would rely upon such concealment,

suppression or omission in connections with the sale or advertisement of such merchandise or services by Defendant.

92.  At all relevant times, defendant Merck concealed, omitted, or minimized the side effects of Vioxx or provided misinformation about adverse reactions, risks and potential harms from Vioxx and succeeded in persuading consumers, including plaintiff, to purchase and ingest Vioxx despite the lack of safety and the risk of adverse medical reactions, including cardiovascular events and gastrointestinal effects.

93.  At all relevant times, defendant Merck's practice of promoting and marketing Vioxx created and reinforced a false impression as to the safety of Vioxx, thereby placing consumers, including plaintiff, at risk of serious and potential lethal effects.

94.  At all relevant times, Vioxx lacked appropriate warnings, and the packaging and labels used by defendant were misleading, inaccurate, incomplete and/or untimely.

95.  Defendant Merck violated its post-manufacture duty to warn which arose when Merck knew, or with reasonable care should have know, that Vioxx was injurious and sometimes fatal.

96.  At the time when consumers purchased and ingested Vioxx, defendant Merck intended that others would rely upon the concealment, suppression or omission of the risks of ingesting Vioxx.

97.  Defendant's actions in connection with manufacturing, distributing, and marketing of Vioxx as set forth herein evidence a lack of good faith, honesty in fact and observant of fair dealing so as to constitute unconscionable commercial practices.

98.  Defendant Merck acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

99.  As a proximate result of the acts of consumer fraud set forth above, Plaintiff purchased an unsafe product and incurred monetary expense and the risk to himself and members of his household that they would consume Vioxx and thereby suffer an increased risk of harm as previously set forth herein.

100.  The conduct of the defendant, as set forth above, constitutes unfair, deceptive, unlawful, and/or unconscionable acts and/or practices prohibited under The Commonwealth of Pennsylvania's Consumer Protection Law, 73 Pa. Stat. Ann. § 201-2 et seq..

101.  The conduct of the defendant, as set forth above, constitutes unfair, deceptive, unlawful, and/or unconscionable acts and/or practices prohibited under The State of New Jersey's Consumer Protection Law, N.J.S.A. 56:8-2, et seq..

102.  As a direct and proximate result of defendant's unfair, deceptive, unlawful, and/or unconscionable acts or practices in violation of the aforesaid Consumer Protection Laws of Pennsylvania, New Jersey and/or other states, injuries and damages were sustained by plaintiff.

### Count IX:
### Punitive Damages

103.  Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

104.  Based upon the above, a jury could conclude that the defendant knew of facts that created a high degree of risk of physical harm to the plaintiff and that the defendants deliberately proceeded to act in conscious disregard or indifference to that risk, and therefore that an award of punitive damages is warranted.

### Count X:
### Loss of Consortium

105. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

106. At all times relevant and material hereto plaintiff-spouse, Phyllis Baker, was the lawful wife of plaintiff Charles Baker.

107. As a direct an proximate result of the acts, omissions, negligence, and/or carelessness of the defendant, as set forth herein above, plaintiff-spouse, Phyllis Baker, has been deprived of the love, services, society, advice, companionship, and/or consortium of her husband, Charles Baker, and will continue to be deprived of the same to his great detriment and loss in the future.

WHEREFORE, plaintiff demands the following:

1. judgment in his favor and against defendant;

2. compensatory damages in an amount in excess of the jurisdictional limit, trebled on applicable Counts;

3. compensatory and punitive damages in an amount in excess of the jurisdictional limit, trebled on applicable Counts;

4. all elements of interest, including but not limited to pre- and post-judgment interest;

5. all Bill of Costs elements, including attorney fees and expert witness fees; and

6.      such other and further relief as the Court may deem just and

proper.

7.      a trial by a jury on all issues of the case.

### JURY TRIAL DEMANDED

Dated: _2 | 10 | 05_

LEONARD V. FODERA, ESQUIRE
LOUIS T. SILVERMAN, ESQUIRE
ALLISON LONG, ESQUIRE
Silverman & Fodera
1835 Market Street, Suite 2600
Philadelphia, PA 19103

ARNOLD LEVIN, ESQUIRE
FRED S. LONGER, ESQUIRE
MICHAEL M. WEINKOWITZ, ESQUIRE
DANIEL C. LEVIN, ESQUIRE
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

# EXHIBIT "B"

IN RE: VIOXX® PRODUCTS          **MDL Docket No. 1657**
LIABILITY LITIGATION

THIS RELATES TO:          Plaintiff: <u>Charles Baker</u>
                              (name)

      Civil Action No:

## PLAINTIFF PROFILE FORM

      Other than in Sections I, those questions using the term "You" should refer to the person who used VIOXX®. Please attach as many sheets of paper as necessary to fully answer these questions.

## I. CASE INFORMATION

A.  Name of person completing this form: <u>Charles Baker</u>

B.  If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

    1.  Social Security Number:

    2.  Maiden Or Other Names Used or By Which You Have Been Known:

    3.  Address:

    4.  State which individual or estate you are representing, and in what capacity you are representing the individual or estate?

    5.  If you were appointed as a representative by a court, state the:

        Court: _____    Date of Appointment: _____

    6.  What is your relationship to deceased or represented person or person claimed to be injured?

    7.  If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:

774182v.1

C. Claim Information

1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX®? Yes_X__ No_____ *If "yes,"*

   a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX®?

   <u>Myocardial Infarction</u>

   b. When do you claim this injury occurred?
   <u>While taking VIOXX</u>

   c. Who diagnosed the condition?
   <u>My physician</u>

   d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes_____ No _X__   *If "yes,"* when and who diagnosed the condition at that time?

   e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____ No _____   *If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX®; and the date of recovery, if any.

   <u>Investigation Ongoing</u>

D. Are you claiming mental and/or emotional damages as a consequence of VIOXX®? Yes _X__ No _____

   *If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:

   a. Name and address of each person who treated you: <u>Dr. Michael Seidner, 826 N. Broad St., Lansdale, PA 19446</u>

   b. To your understanding, condition for which treated: <u>See Medical Records</u>

c. When treated:  <u>See Medical Records</u>

d. Medications prescribed or recommended by provider: <u>See Medical Records</u>

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX®

A. Name:    <u>Charles Baker</u>

B. Maiden or other names used or by which you have been known:

774182v.1

C.  Social Security Number: <u>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</u>

D.  Address: <u>436 Pierce St. Lansdale, PA 19446</u>

E.     Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:

| Address | Dates of Residence |
|---|---|
| 436 Pierce St., Lansdale, PA 19446 | 1976 - Present |

F.  Driver's License Number and State Issuing License: <u>11-548-664   Pennsylvania</u>

G.  Date of Place and Birth: <u>4/11/42   Norristown, Pennsylvania</u>

H.  Sex:  Male <u>X</u>  Female<u>___</u>

I.  Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| Norristown High School | 1956 - 1960 | General | High School Diploma |

J.  Employment Information.

1.  Current employer (if not currently employed, last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Fres-co Systems U.S.A. | 3005 State Rd., Telford, PA 18969 | 1990 - Present | Material Handler |

2.  List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Same. | | | |

3.  Are you making a wage loss claim for either your present or previous employment?
    Yes<u>X</u>  No <u>____</u>

    *If "yes,"* state your annual income at the time of the injury alleged in Section I(C): Investigation ongoing, will supplement.

774182v.1

K. Military Service Information:  Have you ever served in the military, including the military reserve or national guard?  Yes __X__  No _____

*If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition?  Yes _____  No __X__

L.  Insurance / Claim Information:

1.  Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim?  Yes _____  No __X__  *If "yes,"* to the best of your knowledge please state:

   a.  Year claim was filed:

   b.  Nature of disability:

   c.  Approximate period of disability:

2.  Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)?  Yes___  No __X__   *If "yes,"* set forth when and the reason.

3.  Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury?  Yes _____  No __X__  *If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted._

M.  As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty?  Yes _____  No __X__ *If "yes,"* set forth where, when and the felony and/or crime.

## III. FAMILY INFORMATION

A.  List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death):

Phyllis Baker; DOB: 10/15/42; Date of Marriage: June 1968

B.  Has your spouse filed a loss of consortium claim in this action?  Yes _____  No _____

No Claim has been filed, but spouse intends to file.

774182v.1

C.  To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke?  Yes ___ No ____   Don't Know __X__  *If "yes,"* identify each such person below and provide the information requested.

Name:
Current Age (or Age at Death):
Type of Problem:
If Applicable, Cause of Death:

D. If applicable, for each of your children, list his/her name, age and address:

 None

E.  If you are claiming the wrongful death of a family member, list any and all heirs of the decedent.

 N/A

## IV. VIOXX® PRESCRIPTION INFORMATION

A.  Who prescribed VIOXX® for you?
 Dr. Michael Seidner and Dr. James Goodyear

B.  On which dates did you begin to take, and stop taking, VIOXX®?
 2001 to 2003

C.  Did you take VIOXX® continuously during that period?
 Yes _X_  No _____   Don't Recall _____

D.  To your understanding, for what condition were you prescribed VIOXX®?

 Pain

E.  Did you renew your prescription for VIOXX®?  Yes _X_  No ____   Don't Recall

F.  If you received any samples of VIOXX®, state who provided them, what dosage, how much and when they were provided:

774182v.1

G.  Which form of VIOXX® did you take (check all that apply)?

   __X__ 12.5 mg Tablet (round, cream, MRK 74)
   _____ 12.5 mg Oral Suspension
   __X__ 25 mg Tablet (round, yellow, MRK 110)
   _____ 25 mg Oral Suspension
   _____ 50 mg Tablet (round, orange, MRK 114)

H.  How many times per day did you take VIOXX®?

   __Varied.__

I.  Did you request that any doctor or clinic provide you with VIOXX® or a prescription for VIOXX®? Yes ____  No _X_  Don't Recall

J.  What medications, prescription and over-the-counter did you take simultaneously with VIOXX®?
   Neurontin, Accuprin, Albuterol, Isosorbide

K.  What medications, prescription and over-the-counter did you take within 6 months prior to starting VIOXX®?

   Advil, Accupril, Relafen

L.  Instructions or Warnings:

   1.  Did you receive any written or oral information about VIOXX® before you took it?  Yes _____  No _X_  Don't Recall ___

   2.  Did you receive any written or oral information about VIOXX® while you took it? Yes _____  No _X_  Don't Recall ____

   3.  *If "yes,"*

       a.  When did you receive that information?

         A. From whom did you receive it?

         B. What information did you receive?

774182v.1

### V. MEDICAL BACKGROUND

A.  Height: ___6'0"___

B.  Current Weight:_215 lbs._
   Weight at the time of the injury, illness, or disability described in Section I(C):

   ___225 lbs.___

C.  Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*
   __X__  Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
   _____  Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
       a. Date on which smoking/tobacco use ceased: _____
       b. Amount smoked or used: on average_____ per day for _____ years.
   _____  Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
       a.  Amount smoked or used: on average _____ per day for _____ years.
   _____  Smoked different amounts at different times.

D.  Drinking History.  Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)?  Yes __X__ No _____  *If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged in the complaint:

   _____ drinks per week,

   _____ drinks per month,

   _____ drinks per year, *or*

   Other (describe): _2 or 3 drinks over the holidays_

E.  Illicit Drugs.  Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX®-related injury?"  Yes _____  No _X_  Don't Recall _____

   *If "yes"*, identify each substance and state when you first and last used it.

774182v.1

F.  Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1.  Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed:  open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:

| Surgery | Condition | When | Treating Physician | Hospital |
|---------|-----------|------|--------------------|----------|
| None    |           |      |                    |          |

2.  Treatments/interventions for heart attack, angina (chest pain), or lung ailments:

| Treatment/Intervention | When | Treating Physician | Hospital |
|------------------------|------|--------------------|----------|
| Cardiac Catheterization | 11/08/00 | William Levy | Abington |

3.  To your knowledge, have you had any of the following tests performed:  chest X-ray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes _____ No _____ Don't Recall _____  *If "yes,"* answer the following:

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|-----------------|------|--------------------|----------|--------|
| MRI | 3/31/05 | Barry Silver | North Penn Orthopaedic Associates | Numbness |
|  | 7/28/03 | Michael Seidner | Colmar Imag. | Numbness |
|  | 8/1/03 | Michael Seidner | Colmar Imag. | Numbness |
|  | 10/17/02 | Peter Wang | N.P. Orth. Ass. | Pain in foot |
|  | 11/1/00 | Barry Silver | N.P. Orth Ass. | Numbness |
|  | 4/16/98 | Barry Silver | N.P. Orth. Ass. | Pain in knee |
| EKG | 12/14/02 | Denzel Pollock | Central Montgomery Med. Ctr. | Chest Pain |
|  | 11/07/00 | Denzel Pollock | North Penn | Chest Pain |

774182v.1

| | | | | |
|---|---|---|---|---|
| Chest X-Ray | 12/14/02 | Dean Otto | Cent. Mont. Med. Ctr. | Chest Pain |
| ECG | 11/08/00 | William Levy | Abington | Chest Pain |
| | 11/07/00 | Denzel Pollock | North Penn | Chest Pain |

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.  Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form. Yes _____ No __X__

B.  Decedent death certificate (if applicable). Yes _____ No __X__

C.  Report of autopsy of decedent (if applicable). Yes _____ No __X__

## VII. REQUEST FOR PRESERVATION OF DOCUMENTS AND THINGS

Please indicate if any of the following documents and things are currently in your possession, custody, or control or in the possession, custody or control of your lawyers by checking "yes" or "no." Where you have indicated "yes," please deliver any and all items to your attorney for preservation and inspection.

A.  Unused VIOXX®.

Yes __X__ No_____

If you answer "yes," set forth in the space provided:

i. There is __66__ number of __25__ mg tablets remaining.

ii. There is _____ number of _____ mg oral suspension remaining.

B.  Documents or materials that accompanied any VIOXX® you received, including but not limited to prescriptions, receipts, drug containers, product or package inserts, patient product inserts, packaging, sample boxes, and pharmacy handouts.

Yes _____ No __X__

C.  Photographs, slides, movies, videotapes, or the like relating to your injuries, limitations or damages.

774182v.1

Yes ___ No __X__

D.  Personal diaries, calendars, journals, logs, appointment books, date books, or similar materials you kept or continue to keep from January 1, 1995 to the present which relate or refer to your medical care, medical condition, or employment.

Yes ___ No __X__

E.  Documents that evidence any communication between you and any doctor, employer, defendant, federal or state agency, or other person (other than your attorney) regarding the incident that made the basis of this suit or your claims in this lawsuit.

Yes ___ No __X__

F.  Written communications, whether in paper or electronic form (including communications are part of internet "chat rooms" or e-mail group), with other not including your attorney, regarding VIOXX®, your injuries or this case.

Yes ___ No __X__

G.  Any and all other documents not specifically requested above that support any claim you believe you have against Merck & Co., Inc. and all damages you claim result therefrom.

Yes ___ No __X__

## VIII.  LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.  Your current family and/or primary care physician:

| Name | Address |
|------|---------|
| Dr. Michael Seidner | 826 N. Broad St., Lansdale, PA 19446 |

B. To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

| Name | Address | Approximate Dates |
|------|---------|-------------------|
| Dr. Michael Seidner | 826 N. Broad St., Lansdale, PA 19446 | 2002 - Present |
| Dr. Denzel Pollock | 808 N. Broad St., Lansdale, PA 19446 | 2000 - Present |

774182v.1

Dr. Gordon Lupin          Main St. and Overbrook          1994 - 2000
                          Rd, Hatfield, PA 19440

C. Each hospital, clinic, or healthcare facility where you have received inpatient
   treatment or been admitted as a patient during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| Abington Hospital | 1200 Old York Rd., Abington, PA | 11/08/00 - 11/09/00 | Heart Attack |

D. Each hospital, clinic, or healthcare facility where you have received outpatient
   treatment (including treatment in an emergency room) during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| North Penn Orthopaedic Associates | 635 N. Broad St., Lansdale, PA 19446 | 3/31/05, 11/1/00, 10/20/00, 6/7/99 | Numbness in Legs |
| | | 10/09/02, 10/17/02, 3/5/97 | Pain in Heel |
| | | 4/22/02, 3/6/02, 2/9/02, 2/8/02, 1/31/02 | Problems with Hip |
| | | 6/15/98, 5/26/98, 5/12/98, 4/27/98. 4/20/98, 4/16/98, 4/10/98, 2/12/98, 1/26/98 | Problems with Knee |
| Central Montgomery Medical Ctr. | 100 Medical Campus Drive Lansdale, PA 19446 | 12/14/02 5/13/02 | Chest Pain Abdominal Pain |
| North Penn Hospital | 100 Medical Campus Drive Lansdale, PA 19446 | 12/28/00 6/02/99 | Abdominal Pain Hernia Surgery |
| North Penn Surgical | 2100 N. Broad St., Lansdale, PA 19446 | 6/11/02 7/10/01 5/15/01 1/02/01 10/26/99 5/25/99 | Groin Pain Hernia Follow-up Groin Pain Hernia Follow-up Hernia Follow-up Abdominal Pain |

774182v.1

| Pulonary and Allergy Associates, P.C. | 601 E. Main St., Suite One, Lansdale, PA 19446 | 12/9/04, 1/27/04, 11/20/03, 11/14/02, 11/12/01, 2/22/01, 10/5/00, 11/18/99, 8/19/99, 11/12/98, 9/24/98, 2/18/98, 1/15/98, 6/26/97, 2/6/97, 12/19/96, 6/27/96, 2/19/96 | Asthma related problems |
|---|---|---|---|

E.    Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

| Name | Address | Dates of Treatment |
|---|---|---|
| Peter Wang, Jr., M.D. | 635 N. Broad St., Lansdale, PA 19446 | 2002 - 2005 |
| Barry Silver, M.D. | 635 N. Broad St., Lansdale, PA 19446 | 1995 - 2002 |
| Dean Otto, M.D. | 100 Medical Campus Drive Lansdale, PA 19446 | 12/14/02; 12/28/00 |
| James Goodyear, M.D. | 2100 N. Broad St., Lansdale, PA 19446 | 1999 - 2002 |
| William Levy, M.D. | 1200 Old York Rd., Abington, PA 19001 | 11/08/00 - 11/09/00 |
| Albert Driver, Jr., M.D. | 601 E. Main St., Suite One Lansdale, PA 19446 | 1995 - 2004 |

F.   Each pharmacy that has dispensed medication to you in the last ten (10) years.

| Name | Address |
|---|---|
| Drug Emporium | 553 S. Broad St., Lansdale, PA 19446 |
| CVS Pharmacy | 233 W Main St, Lansdale, PA 19446 |

G.   If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

| Name | Address |
|---|---|
| N/A | |

774182v.1

H.    If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

**Name**                      **Address**

N/A

774182v.1

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

| _Charles Baker_ | _Charles Baker_ | _9/19/05_ |
| Signature | Print Name | Date |

189839_1

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

MDL No. 1657

AUTHORIZATION FOR RELEASE OF
MEDICAL RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Charles Baker

Date of Birth: 4/11/42

Social Security Number: 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

    I hereby authorize _____ _____ to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **HUGHES HUBBARD & REED LLP, One Battery Park Plaza, New York, New York 10004-1482, and/or to the law firm of Silverman & Fodera, P.C. 1835 Market Street – Suite 2600– Phila.**, PA 19103 **and/or their designated agents ("Receiving Parties").** These records shall be used or disclosed solely in connection with the currently pending VIOXX® litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or proceeding.

    I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

    This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments,

medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 22 day of Sept, 2005

_Charles Baker_

*[PLAINTIFF OR REPRESENTATIVE]*

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf: _____

**AUTHORIZATION #1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 1657

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

AUTHORIZATION FOR RELEASE OF
PSYCHOLOGICAL/PSYCHIATRIC
RECORDS PURSUANT TO
45 C.F.R. § 164.508 (HIPAA)

Name: Charles Baker

Date of Birth: 4/11/42

Social Security Number: 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

I hereby authorize _____ to release
all existing records regarding the above-named person's psychological or psychiatric care,
treatment, condition, and/or expenses to the law firm of **HUGHES HUBBARD & REED LLP,
One Battery Park Plaza, New York, New York 10004-1482, and/or to the law firm
of  Silverman & Fodera, P.C.  1835 Market Street  Suite 2600  Phila.**, PA 19103
**and/or their designated agents ("Receiving Parties").**  These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above.  This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes.  The Receiving Parties shall return or
destroy the protected health information (including all copies made) at the end of the above-
named person's litigation or proceeding.

I understand that this authorization includes information regarding the diagnosis and
treatment of psychiatric and psychological disorders, and that the health information being
used/disclosed may include information relating to the diagnosis and treatment of Human
Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually
transmitted disease and drug and alcohol disorders.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, psychiatric treatment and counseling records, psychological
treatment and counseling records, narratives, and any correspondence/memoranda and billing

100166.1396_v1 6/1/05 3:37 PM

information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments, medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 22nd day of Sept , 200 5

_____
[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf: _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 1657

In re: VIOXX® PRODUCT
LIABILITY LITIGATION

**AUTHORIZATION FOR RELEASE OF
PSYCHOTHERAPY NOTES PURSUANT
TO 45 C.F.R. § 164.508 (HIPAA)**

Name: _Charles Baker_

Date of Birth: _4/11/42_

Social Security Number: _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_

    I hereby authorize _____ to release
all existing psychotherapy notes regarding the above-named person's medical care, treatment,
physical/mental condition, and/or medical expenses to law firm of **HUGHES HUBBARD &
REED LLP, One Battery Park Plaza, New York, New York 10004-1482, and/or to the law
firm of** Silverman & Fodera, P.C.   1835 Market Street – Suite 2600   Phila.,PA 19103
**and/or their designated agents ("Receiving Parties").** These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above. This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes. The Receiving Parties shall return or
destroy the protected health information (including all copies made) at the end of the above-
named person's litigation or proceeding.

    I understand that this authorization includes all psychotherapy notes maintained
separately from the above-named person's medical record that document or analyze the contents
of conversation during a private counseling session or a group, joint, or family counseling
session by referring to something other than medication prescription and monitoring, counseling
session start and stop times, the modalities and frequencies of treatment furnished, results of
clinical tests, and any summary of the following items: diagnosis, functional status, the treatment
plan, symptoms, prognosis and progress.

    I understand that the health information being disclosed by these psychotherapy notes
may include information relating to the diagnosis and treatment of Human Immunodeficiency
Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and
drug and alcohol disorders.

    This will further authorize you to provide updated medical records, x-rays, reports or
copies thereof to the above attorney until the conclusion of the litigation. I understand that I
have the right to revoke in writing my consent to this disclosure at any time, except to the extent
that the above-named facility or provider already has taken action in reliance upon this

110366.1.PRL_07 6/1/05 2:27 PM

authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA. I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation, that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of Hughes Hubbard & Reed LLP or _____.

Dated this 22 day of Sept , 2005

_Charles Baker_

**[PLAINTIFF OR REPRESENTATIVE]**

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

**AUTHORIZATION #3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 1657

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

AUTHORIZATION FOR RELEASE OF
RECORDS (To be signed by plaintiffs
making a claim for lost wages, earnings or
earning capacity.)

Name: Charles Baker

Date of Birth: 4/11/42

Social Security Number: 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

    I hereby authorize _____ to release
all existing records and information in its possession regarding the above-named person's
employment, income and education to the law firm of **HUGHES HUBBARD & REED LLP,
One Battery Park Plaza, New York, New York 10004-1482, and/or to the law firm**
of  Silverman & Fodera, P.C.   1835 Market Street - SUite 2600- Phila., PA 19103
**and/or their designated agents ("Receiving Parties").** These records shall be used or
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above.  This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes.

    I understand that this authorization includes the above-named person's complete
employment personnel file (including attendance reports, performance reports, W-4 forms, W-2
forms, medical reports, workers' compensation claims), and also includes all other records
relating to employment, past and present, all records related to claims for disability, and all
educational records (including those relating to courses taken, degrees obtained, and attendance
records).  This listing is not meant to be exclusive.

    Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place.  Copies of these materials are to be provided at the expense of
Hughes Hubbard & Reed LLP or _____.

Dated this 22 day of Sept , 2005

Charles Baker

**[PLAINTIFF OR REPRESENTATIVE]**

If a representative, please describe your relationship to the plaintiff and your authority to act on
his/her behalf:_____

**AUTHORIZATION #4**

NY 189827_1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Case No. 1657

In re: VIOXX® PRODUCTS
LIABILITY LITIGATION

**AUTHORIZATION FOR RELEASE OF
RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or earnings or
earning capacity.)**

Name: Charles Baker

Date of Birth: 4/1/42

Social Security Number: 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

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
**HUGHES HUBBARD & REED LLP, One Battery Park Plaza, New York, New York
10004-1482, and/or to the law firm of** Silverman & Fodera, P.C.  1835 Market Street – Suite 2600
**and/or their designated agents ("Receiving Parties").** These records shall be used or     Phila., PA 19103
disclosed solely in connection with the currently pending VIOXX® litigation involving the
person named above. This authorization shall cease to be effective as of the date on which the
above-named person's VIOXX® litigation concludes.

I understand that this authorization includes the above-named person's complete
employment personnel file with the exception of W-4 and W-2 forms (including attendance
reports, performance reports, medical reports, workers' compensation claims), and also includes
all other records relating to employment, past and present, all records related to claims for
disability, and all educational records (including those relating to courses taken, degrees
obtained, and attendance records). This listing is not meant to be exclusive.

Any photostatic copy of this document shall have the same authority as the original, and
may be substituted in its place. Copies of these materials are to be provided at the expense of
Hughes Hubbard & Reed LLP or _____.

Dated this 22 day of Sept., 200 5

Charles Baker
**[*PLAINTIFF OR REPRESENTATIVE*]**

If a representative, please describe your relationship to the plaintiff and your authority to act on
his/her behalf: _____

**AUTHORIZATION #5**

# EXHIBIT "C"

LOUIS T. SILVERMAN•
LEONARD V. FODERA
DAVID J. ALEXANDER•

ALLISON LONG•
JOHN R. TROTMAN, JR.•
ANDREW SCHNEIDER

•ALSO MEMBER NJ BAR



**SILVERMAN & FODERA**
A PROFESSIONAL CORPORATION

ATTORNEYS-AT-LAW

1835 MARKET STREET, SUITE 2600
PHILADELPHIA, PENNSYLVANIA 19103-2968

HERBERT MONHEIT
1957-2003

INTERNET ADDRESS:
http://www.civilrights.com

REPLY TO:

February 14, 2006

**VIA CERTIFIED MAIL**
**R.R.R. NO.: 7160 3901 9842 9859 8306**
William P. Coronato, Esquire
Hughes Hubbard & Reed, LLP
101 Hudson Street
Suite 3601
Jersey City, NJ 07302-3918

> Re:   Charles Baker, et al. v. Merck & Co., Inc.
>        E.D.Pa Civil Action No.: 05-00649
>        E.D.La Civil Action No.: 05-1564
>        Our File No.: 19092

Dear Mr. Coronato:

Enclosed herewith please find an Amended Plaintiff's Profile Form with accompanying executed authorizations, relative to the above referenced matter.

Thank you for your attention to this matter.

Very truly yours,

Rita M. Holt
Paralegal

/rmh
Enclosures

cc:   Wilfred P. Coronato, Esquire [Via LexisNexis File & Serve]
      Phillip A. Wittmann, Esquire [Via LexisNexis File & Serve]
      Aretha Delight Davis, Esquire [Via LexisNexis File & Serve]
      Susan Giamportone, Esquire  [Via LexisNexis File & Serve]

# EXHIBIT "D"



LOUIS T. SILVERMAN•
LEONARD V. FODERA
DAVID J. ALEXANDER•

ALLISON LONG•
JOHN R. TROTMAN, JR.•
ANDREW SCHNEIDER

•ALSO MEMBER NJ BAR

**SILVERMAN**
**& FODERA**
A PROFESSIONAL
CORPORATION

ATTORNEYS-AT-LAW

1835 MARKET STREET, SUITE 2600
PHILADELPHIA, PENNSYLVANIA 19103-2968

HERBERT MONHEIT
1957-2003

INTERNET ADDRESS:
http://www.civilrights.com

REPLY TO:

February 22, 2006

John Poulos, Esquire
Hughes Hubbard & Reed, LLP
101 Hudson Street
Suite 3601
Jersey City, NJ 07302-3918

Re:   **Charles Baker, et al. v. Merck & Co., Inc.**
**E.D.Pa Civil Action No.: 05-00649**
**E.D.La Civil Action No.: 05-1564**
**Our File No.: 19092**

Dear Mr. Poulos:

Pursuant to our conversation earlier this month, I have enclosed a Stipulation for your signature which will permit Plaintiff to amend his Complaint to change the dates of ingestion of Vioxx to 2000 through 2003. As previously explained, I noticed the error when recently reviewing Mr. Baker's file.

Kindly execute and return the Stipulation to me in the enclosed self-addressed, stamped envelope so I may file same with the Court. If you will not sign said Stipulation, I ask that you notify me upon receipt of this correspondence. Thank you for your anticipated courtesy and cooperation regarding this matter.

Very truly yours,

Allison Long

AL/rmh
Enclosure

IN RE: VIOXX® PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1657

THIS RELATES TO:

Plaintiff: Charles Baker

Civil Action No:

### STIPULATION TO AMEND PLAINTIFF'S COMPLAINT

It is hereby stipulated and agreed between the undersigned counsel that

Plaintiff's Civil Action Complaint be amended to change the dates of ingestion of

Vioxx from 2001 through 2003 to 2000 through 2003.   This Stipulation may be signed

in original counter parts.

Leonard V. Fodera, Esquire
Allison Long, Esquire
Silverman & Fodera, P.C.
1835 Market Street - Suite 2600
Philadelphia, PA 19103

John Poulos, Esquire
Hughes Hubbard & Reed, LLP
101 Hudson Street
Suite 3601
Jersey City, NJ 07302-3918

J.

# EXHIBIT "E"



LOUIS T. SILVERMAN•
LEONARD V. FODERA
DAVID J. ALEXANDER•

ALLISON LONG•
JOHN R. TROTMAN, JR.•
ANDREW SCHNEIDER

•ALSO MEMBER NJ BAR

**SILVERMAN & FODERA**
A PROFESSIONAL CORPORATION

ATTORNEYS-AT-LAW

1835 MARKET STREET, SUITE 2600
PHILADELPHIA, PENNSYLVANIA 19103-2968

HERBERT MONHEIT
1957-2003

INTERNET ADDRESS:
http://www.civilrights.com

REPLY TO:

March 6, 2006

Joshua Schiller, Esquire
Dechert, LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

> Re:   Charles Baker, et al. v. Merck & Co., Inc.
>        E.D.Pa Civil Action No.: 05-00649
>        E.D.La Civil Action No.: 05-1564
>        Our File No.: 19092

Dear Mr. Schiller:

Pursuant to my voice mail message from this date, I have enclosed a Stipulation for your signature which will permit Plaintiff to amend his Complaint, specifically to change the dates of ingestion of Vioxx from 2001 through 2003 to 2000 through 2003. I noticed the error when recently reviewing Mr. Baker's file. I have previously communicated this error and my desire to amend the Complaint with John Poulos, Esquire. I forwarded a Stipulation to Mr. Poulos last month but have yet to receive it back. I have been informed that he is currently on trial in Atlantic City and his office suggested I forward the Stipulation to you for execution.

Kindly execute and return the Stipulation to me in the enclosed self-addressed, stamped envelope so I may file same with the Court. If you will not sign said Stipulation, I ask that you notify me upon receipt of this correspondence so that I may file the appropriate motion with the Court.

Thank you for your anticipated courtesy and cooperation regarding this matter.

Very truly yours,

Allison Long

AL/rmh
Enclosure

IN RE: VIOXX® PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1657

THIS RELATES TO:

Plaintiff: Charles Baker

Civil Action No:

### STIPULATION TO AMEND PLAINTIFF'S COMPLAINT

It is hereby stipulated and agreed between the undersigned counsel that

Plaintiff's Civil Action Complaint be amended to change the dates of ingestion of

Vioxx from 2001 through 2003 to 2000 through 2003.   This Stipulation may be signed

in original counter parts.

Leonard V. Fodera, Esquire
Allison Long, Esquire
Silverman & Fodera, P.C.
1835 Market Street - Suite 2600
Philadelphia, PA 19103

Joshua Schiller, Esquire
Dechert, LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

J.

# EXHIBIT "F"

LOUIS T. SILVERMAN•
LEONARD V. FODERA
DAVID J. ALEXANDER•

ALLISON LONG•
JOHN R. TROTMAN, JR.•
ANDREW SCHNEIDER

•ALSO MEMBER NJ BAR



**SILVERMAN**
**& FODERA**
A PROFESSIONAL
CORPORATION

ATTORNEYS-AT-LAW

1835 MARKET STREET, SUITE 2600
PHILADELPHIA, PENNSYLVANIA 19103-2968

HERBERT MONHEIT
1957-2003

INTERNET ADDRESS:
http://www.civilrights.com

REPLY TO:

March 20, 2006

Joshua Schiller, Esquire
Dechert, LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

> Re:   **Charles Baker, et al. v. Merck & Co., Inc.**
> **E.D.Pa Civil Action No.: 05-00649**
> **E.D.La Civil Action No.: 05-1564**
> <u>**Our File No.: 19092**</u>

Dear Mr. Schiller:

I have not received a response from your office regarding the Stipulation to Amend Plaintiffs' Complaint forwarded to your attention on March 6, 2006. As mentioned in my previous correspondence the Stipulation was originally sent to John Poulos, Esquire last month. Since he was on trial in Atlantic City and his office suggested I forward the Stipulation to you for execution.

If you will not sign said Stipulation, I ask that you notify me upon receipt of this correspondence so that I may file the appropriate motion with the Court.

Thank you for your anticipated courtesy and cooperation regarding this matter.

Very truly yours,

Allison Long

AL/rmh