**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR -7  P 4: 54

LORETTA G. WHYTE
CLERK

**MDL DOCKET NO. 1657**

In re: VIOXX
**PRODUCTS LIABILITY LITIGATION**

**SECTION L**

The document relates to all cases

**JUDGE FALLON**

**MAGISTRATE JUDGE KNOWLES**

---

**PLAINTIFF STEERING COMMITTEE'S**
**REPY TO THE UNITED STATES'**
**OPPOSITION TO THE PSC'S MOTION TO COMPEL**

The Plaintiff's Steering Committee (PSC) files this brief in reply to the United States'
and the FDA's Opposition to the PSC Motion to Compel the Production of Documents
(hereinafter referred to as "FDA Opp.").

**I.     INTRODUCTION**

As described in its original brief filed in support of the Motion to Compel, the PSC has
not sought to challenge the privilege assertion made by the FDA to the vast majority of
documents either partially or fully withheld by the FDA on the basis of the Deliberative Process
Privilege. Rather, after careful review, the PSC, only sought (at this time) the production of a
small group of 59 documents withheld by the FDA that the PSC believes are not protected from
disclosure. These 59 documents included 56 documents whose contents have been partially
redacted and 3 documents that had been withheld in their entirety on the basis of the Deliberative
Process Privilege.

Upon receipt of the PSC motion, the FDA conducted a second review of the 59
documents it withheld and concluded that many documents were improperly withheld or

1

___ Fee_____
___ Process_____
_X_ Dktd_____
_V_ CtRmDep_____
___ Doc. No_____

redacted. *See*, FDA Opp. at 3.[1] Nevertheless, the FDA continues to maintain that portions of 45 documents are privileged on the basis of the Deliberative Process Privilege. The PSC and the FDA have agreed that the Court should conduct an *in camera* review to determine whether the qualified privilege applies. The PSC contends that the documents are not privileged.

## II.     ARGUMENT - THE FDA SEEKS TO KEEP CERTAIN DOCUMENTS FROM DISCLOSURE EVEN THOUGH THEY ARE CLEARLY NEITHER "PRE-DECISIONAL" NOR "DELIBERATIVE"

The Deliberative Process Privilege does not protect the FDA's communications as broadly as it has asserted.  The privilege, which is unique to government, was intended to assure that agency subordinates will feel free to provide decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism, protects against *premature disclosure* of proposed policies *before* they have been finally formulated or adopted, and protects against confusing issues and misleading the public by dissemination of documents suggesting reasons and rationales for course of action which were not in fact ultimate reasons for agency's action. 5 U.S.C.A. § 552(b)(5)(emphasis added).  To test whether disclosure of a document is likely to adversely affect purposes of privilege, a court must ask whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency, whether the document is recommendatory in nature or is draft of what will become a final document, and whether the document is deliberative in nature.  Even if the document is predecisional at the time it is prepared, it can lose that status *if it is adopted, formally or informally, by the agency.*   5 U.S.C.A. § 552(b)(5)

---

[1]  In its motion, the FDA explains that it has "waived" the privilege to 14 documents it previously withheld and partially "waived" its objections to 25 others. *See,* FDA Opp. at 2.  Even a cursory review of the newly released documents reveal that the documents (or portions thereof) were not properly withheld in the first place on the basis of any privilege.  Since there was no privilege to be "waived," it was proper for the FDA to produce these documents.

(emphasis added).   Finally, communications made *subsequent* to an agency decision are not protected by the privilege. *NLRB v. Sears, Roebuck & Co.*,421 U.S. 132, 152 (1975).

"Premature disclosure" of any of the documents sought by the PSC is not at issue here.   There is no fear of confusing issues or misleading the public at this point in time.   If anything, disclosure of the indicated documents may remedy any misleading of the public by Merck.   Further, in its arguments regarding the respective categories of documents sought for production by the PSC, the FDA asserts that all fall into the category of "pre-decisional." Unfortunately, and as previously underscored, the PSC is being forced to take FDA's assertions at face value, not even knowing the particular "decisions" on which FDA is hanging its hat with respect to each category of documents.   Finally, without the benefit of knowing the content of the documents in dispute, the PSC cannot possibly know whether any of the alleged "predecisional" communications were formally or informally adopted.   It is highly probable, as intimated by the FDA in its briefs, that the documents contain information that ultimately was formally or informally adopted.   The FDA could not assert the privilege for such documents.

In its arguments about the respective categories of documents sought by the PSC, the FDA asserts that they all fall into the category of "pre-decision."   However, as set forth below the documents are neither "pre-decisional" nor "deliberative."

1.    **The VIGOR Study and Labeling Decisions**

**The FDA Has Overstated Its Decision-Making Ability With Regard to Post-Approval Label Changes and Has Contradicted Its Own Sworn Congressional Testimony on the Issue**

The FDA seeks to shield from disclosure documents that recount the labeling history for Vioxx which were *done long after* the actions recounted in the memorandum had occurred. *See, e.g.* PSC Exhibits 3 and 22. Obviously, disclosure of these historical, *post hoc* documents do not effect "candid communications within the government agency." Nor does disclosure of these historical documents "create confusion from premature disclosure of agency decisions before the agency established its final policy," or harm "the integrity of the agency's decision." *See*, FDA Opp. at 3 *citing Alexander v. FBI*, 192 F.R.D. 50. 55 (D.D.C. 2000).

The FDA argues that it has the decisional authority to order a post- approval label change for Vioxx and contends that the labeling documents it has withheld relate to pre-decisional deliberations. The FDA's position is wrong and overstates its decision- making ability.

The FDA hand-picked a representative to testify before Congress concerning deficiencies in its handling of Vioxx.[2] That representative, Sandra Kweeter, M.D was specifically asked *under oath* to explain the FDA's role in the 2-year delay in getting any VIGOR information into the Vioxx label; the placement of the cardiovascular data from VIGOR in the "precaution" but not the "warning" section of the Vioxx label; and the lack of cardiovascular studies conducted by Merck on Vioxx. In defending the FDA, Dr. Kweeter unambiguously testified that the *FDA had absolutely no authority to force a "hostile" label change on a recalcitrant pharmaceutical manufacturer* as Merck was with respect the CV risks of Vioxx. Dr. Kweeter further explained that the FDA could better protect the public heath *if it had that authority.*

---

[2]      *See* pages 2 to 4 of the PSC's opening brief.

4

Ignoring Dr. Kweeter's testimony in its entirety, the FDA argues that it has the implicit power to unilaterally order a label change because FDA has the power to order the withdrawal of a drug under 21 USC § 355 (e)(3)—an act which FDA agrees is a "severe sanction" (and which would embroil the FDA in litigation with the sponsor). *Id.* This argument lacks any support. The FDA has not ordered any drug off the withdrawal of a New Drug Application (NDA) in the past 25 years and has therefore never used that extraordinary authority to compel a hostile label change. Absent the use of the "severe sanction" of ordering a drug withdrawal to indirectly address a recalcitrant manufacturer, the FDA has no authority to force a hostile label change as Dr. Kweeter clearly testified. The importance of this fact cannot be overstated in the context of the current motion. Since the FDA lacked real (and appreciated) decision-making authority to order a hostile label change over Merck's objection, discussions concerning a label change cannot be "pre-decisional."[3]

In apparent recognition of its lack of true decision-making authority to decide to order a label change, the FDA points to the irrelevant fact that it has recently adopted a dubious regulation that purportedly states that, effective June 30, 2006, even the addition or strengthening of a warning must be approved by the FDA. FDA Opp. at 15, n. 14  However, that is not the law now and was not the law for Vioxx.[4]

Under 21 CFR § 314 (c) (6)(iii)(A), which was in effect when Vioxx was on the market, "[t]he agency may design a category of changes for the purpose of providing that, in the case of a change in such category, the holder of an approved application may commence distribution of

---

[3]     Indeed, the record reflects that Merck itself recognized the FDA's impotence to order a hostile label change over Merck's objection. In his internal communications, Ed Scolnick described the FDA's *proposed* warning of cardiovascular as "ugly cubed" which he would not "accept" or sign off on. *See,* Exhibit "1."

[4]     *See* The PSC intends to file an *Omnibus Motion in Limine* addressing among other issues this issue.  The PSC intends to file this motion on or before April 14, 2006.

the drug product involved upon receipt by the agency of a supplement for the change…[and][t]hese changes include, but are not limited to:….(iii) Changes in labeling to accomplish any of the following: a) To add or strengthen a contraindication, warning, precaution or adverse reaction…" The FDA Reference Manual specifically outlined that authority.

In the recent case of *McNellis v. Pfizer, Inc.*, No. 05-1286-JBS, 2005 WL 3752269 (D. N.J. Dec. 29, 2005), the District Court after outlining 21 C.F.R. § 314.70(c)(6) acknowledged a manufacturer's unilateral duty to warn:

> If the manufacturer desires to make changes to the labeling after a drug is approved, it must generally submit a Supplemental NDA to the FDA pursuant to 21 C.F.R. § 314.70(b)(2)(v)(A). Although most labeling changes require a Supplemental NDA, a number of exceptions have been enumerated in 21 C.F.R. § 314.70(c)(6)(iii), which provides in pertinent part:
>
> > (6)   The agency may designate a category of changes for the purpose of providing that, in the case of a change in such category, the holder of an approved application may commence distribution of the drug product involved upon receipt by the agency of a supplement for the change.   These changes include, but are not limited to:
> >
> > *   *   *
> >
> > > (I) Changes in the labeling to accomplish any of the following:
> > >
> > > > (A) To add or strengthen a contraindication, warning, precaution or adverse reaction;
> > > >
> > > > (B) To add or strengthen a statement about drug abuse, dependence, psychological effect, or over dosage;
> > > >
> > > > (C)   To add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product;
> > > >
> > > > (C) To delete false, misleading, or unsupported indications for use or claims for effectiveness; or

> (E)  Any labeling change normally requiring a supplement submission and approval prior to distribution of the drug product that FDA specifically requests be submitted under this provision.

21 C.F.R. § 314.70(c)(6)(iii).  **Thus, it is apparent that prior FDA approval need not be obtained, nor will a product be deemed mislabeled, if the manufacturer voluntarily or even unilaterally strengthens the approved warnings**, precautions or potential adverse reactions upon the label pursuant to 21 C.F.R. § 314.70(c)(6)(iii)(A).

*McNellis*, 2005 WL 3752269 at 4-5 (emphasis added).

Moreover, "Section 201.57 delineates the 'specific requirements on content and format of labeling for human prescription drugs' and subsection (e) specifically governs 'warnings.'" *Motus v. Pfizer, Inc.*, 127 F.Supp.2d 1085, 1095 (C.D. Ca. 2000).   21 C.F.R. § 201.57(e) states: "labeling shall be revised to include a warning *as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.* (emphasis added). Also, 21 C.F.R. § 314.70(c) is explicit that labeling changes to "add or strengthen a contraindication, warning, precaution, or adverse reaction" do not require FDA's prior approval.

In fact, when promulgating these regulations the FDA Commissioner invited companies to strengthen the warnings contained in their drug labels.

> [D]rug labeling does not always contain the most current information and opinion available to physicians about a drug because advances in medical knowledge and practice inevitably precede formal submission of proposed new labeling by the manufacturer and approval by FDA. . . . [L]abeling regulations do not prohibit a manufacturer . . . . from warning health care professionals wherever possibly harmful adverse effects associated with the use of a drug are discovered.  The addition to labeling and advertising of additional warnings . . . is not prohibited by these regulations. . . . [P]racticing physicians will welcome such information so they can make their best informed medical judgments in the care of their patients.

44 Fed. Reg. at 37,434 (emphasis added).

Without question, Merck was permitted to add a warning for cardiovascular risks to the Vioxx label *at any time after VIGOR* without advance approval by the FDA. *Id. See also* 30 Fed. Reg. 993 (Jan. 30, 1965) (encouraging drug manufacturers to strengthen its warnings "in the interest of drug safety" at any time without FDA pre-approval to enable adoption of new warnings as soon as possible). Any argument or testimony that Merck was required to obtain prior approval from the FDA before changing the Vioxx label to include warnings or information concerning serious cardiovascular adverse events is simply incorrect.

Federal regulations dictate that Merck <u>without prior</u> approval by the FDA had a duty to add a warning to the Vioxx label and alert physicians and patients of the increased risk of cardiovascular events when taking Vioxx. In *Witczak v. Pfizer, Inc.*, the District Court found that FDA regulations explicitly permit pharmaceutical companies to <u>unilaterally</u>, without FDA approval, strengthen its warning label at any time without regulatory pre-approval. *Witczak v. Pfizer, Inc.* 377 F.Supp.2d 726 (D. Minn. 2005) (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)). The *Witczak* court noted that the "particular regulation was promulgated precisely to allow drug-makers to quickly strengthen label warnings when evidence of new side effects are discovered". *Witczak*, 377 F.Supp.2d at 726 (citing 30 Fed.Reg. 993 (Jan. 30, 1965)). FDA regulation "permits the addition to the drug's labeling or advertising of information about a hazard without advance approval" by the FDA. *Id.*; see also, *Cartwright v. Pfizer, Inc.*, 369 F.Supp.2d 876 (E.D. Tex. 2005); *Madden v. Wyeth*, 2005 WL 2278081 (N.D. Tex. Sept 14, 2005); *Caraker v. Sandoz Pharmaceuticals Corp.*, 172 F.Supp.2d 1018 (S.D. Ill. 2001); *Ohler v. Purdue Pharma, L.P.*, 2002 WL 88945 (E.D.La. 2002).

In the first *Irvin* trial, the Court ruled that the power to strengthen a warning is a "question of fact." *See, Plunkett v. Merck*, (*Irvin* I) Rulings on Motions in Limine, November 18,

8

2005. (Exhibit "2"). Recently, Judge Higbee in *Cona and McDarby v.Merck* (Sup. Ct. NJ) ruled that Merck could have changed its label as a matter of law.[5]  (Exhibit "3").

In sum, since the FDA lacked the authority to compel Merck to change the Vioxx label, the FDA communications about labeling are by definition not pre-decisional and thus are not protected by the Deliberative Process Privilege.

### 2.     FDA Response to the Vioxx Withdrawl Are Not Protected

The FDA seeks to shield documents relating to its "response to the Vioxx withdrawal." *See*, FDA Opp. at 9-10.  As Merck has repeatedly maintained, the decision to withdraw Vioxx from the U.S. market was a decision of Merck, *not the FDA*. Given that the FDA made no "decision" related to the Vioxx withdrawal, any discussion concerning the withdrawal is not privileged. Moreover, after withdrawal, there are no "decisions" to make.

### 3.  Draft FDA Responses to Merck Questions in Preparation for Meeting Should be Produced

FDA's draft responses to questions expected from Merck during the February 28, 2003 teleconference were created in anticipation to questions from the drug maker. Questions and answers between the agency and the drug maker have no bearing on any decisions made by the FDA and the public, and the plaintiffs in this case, have right to know such information.  Even if

---

[5]      Adhering to these same principles, Judge Higbee in the Cona/McDarby trial involving Vioxx interrupted the testimony of a Merck employee, David Anstice, who had testified that the company could not have added a warning to the label without prior FDA approval, to give a curative instruction.  The court informed the jury that the manufacturer was not limited by FDA regulations to add to the warning label at any point in time.  The curative instruction was reported to be:

> I just wanted to advise you that the law under FDA regulations does not allow a company to change their warnings, to warn consumers and physicians about dangers they find out about after the label is approved," Higbee told the panel. "They're allowed to make those changes through a special procedure, without prior FDA approval."

Brennan, *Judge Interrupts Vioxx Testimony to Instruct Jury on Label Warnings*, The Legal Intelligencer, March 20, 2006, at 3, col. 1 (emphasis added).

PSC Exhibits 8 and 18 are "pre-decisional," the need for the information contained within these documents vastly outweighs FDA's interest in not disclosing them where the decision to withdraw Vioxx was solely that of Merck. Furthermore, the information in the draft responses is about post-marketing labeling changes and should be produced for the reasons above.

### 4.  Evaluation of Issues Related to Protocol 203 Are Not Protected from Disclosure

The FDA seeks to shield documents relating to Protocol 203. *See,* FDA Opp. at 10-11. The FDA implies—*but conspicuously does not state*—that there was, in fact, any "decision" for it to make about Protocol 203. The FDA could not have made a decision with respect to the conduct or analysis of this study. Rather, the FDA was asked to "comment" on (not to make any decision about) the study design and provide perspective on strengths and weaknesses of the study protocol. As there ware no "decisions" to be made. The documents related to Protocol 203 would not appear to be protected.

### 5.  FDA Responses to the Kaiser Study are Discoverable

The FDA seeks to exclude documents relating to its voluntary response to the so-called "Kaiser Study." *See,* FDA Opp. at 11-12. The FDA further seeks to shield from view its responses to a New York Times article concerning the VIGOR study. *Id.* at 8-9. In support of its position the FDA points to no administrative responsibility or formal 'decision-making authority" or governmental mandate that requires it to "respond" to various studies or news articles, including the Kaiser study or the New York Times article. Nor does it point to any "decision" that arose from its response to the Kaiser study or the New York Times' article. These voluntary and discretionary acts cannot be considered true agency decisions.

### 6.   The FDA Should be Ordered to Produce its Responses to Congressional Inquiries About Vioxx

The FDA seeks to exclude FDA responses to the Congressional inquiries about Vioxx. *See,* FDA Opp. at p. 12-13. Obviously, replying to a Congressional inquiry is *not* an agency "decision" about an issue that it is administratively charged with deciding.  Rather, compliance with a Congressional inquiry is a non-discretionary act that requires no "deliberation" or "decision".

### 7. The FDA's Response to the Canadian Health Authority Decision to Modify Labeling of NSAIDS is Not Privileged

The FDA's jurisdiction is the United States, not Canada. The FDA has no obligation or authority to give opinions to the Canadian Health Authority ("CHA") or to respond to decisions made by the CHA.  If the FDA deemed it so important to address Canadian issues then surely the Plaintiffs in this MDL should be able to see whatever the FDA employees were saying. The FDA should not be allowed to boot-strap onto a Canadian decision in order to invoke the qualified privilege.

### 8.  The FDA Review of Merck's Promotional Materials Should be Produced

The Deliberative Process Privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality. *Cf. Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980) (the privilege should be applied "as narrowly as consistent with efficient government operation"); *Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir.1977).  Here, there is indeed a particularized need for thousands of plaintiffs, allegedly injured at the hands of Vioxx, to be availed of documents containing the FDA's review of Merck's promotional materials.  Merck has spent more money marketing and promoting Vioxx in a single year than did Pepsi and Budweiser combined.  These

promotion efforts have reached millions of people, and have resulted in millions of prescriptions. Where such a direct-to-consumer marketing endeavor yielded Merck such large profits, injured Plaintiffs are entitled to know and understand how such promotional materials were generated and evolved.  Because injured Plaintiffs relied upon the information supplied to them directly by Merck, their need for PSC Exhibits 58-60 significantly outweigh the FDA's interest in not disclosing them.

### 9. Post-Approval Labeling Documents Should be Produced

*See* argument *supra.* at II(A).

## III.     CONCLUSION

For the above reasons and for those stated in the PSC's original brief filed in support of its motion, the remaining 45 documents should be released to the PSC.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date:                                          By:

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

12

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis/Nexis File and Serve Advanced, in accordance with Pre-Trial Order No. 8, on this the 7th day of April, 2006.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>This document relates to all cases | MDL DOCKET NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

## EXHIBIT NO. 1 TO
## PSC'S REPLY TO THE UNITED STATES'
## OPPOSITION TO THE PSC'S MOTION TO COMPEL

# FILED UNDER SEAL
# SUBJECT TO CONFIDENTIALITY
# ORDER
# DATED MAY 24, 2005



7479475

Nov 21 2005
11:33AM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX          :    MDL NO. 16^?
    PRODUCTS LIABILITY LITIGATION          :
                     :    SECTION: L
                     :
                     :    JUDGE FALLON
                     :    MAG. JUDGE KNOWLES

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

THIS DOCUMENT RELATES TO
    *Plunkett v. Merck & Co., Inc.*, 05-4046

### ORDER

Before the Court are several motions in limine filed by the Plaintiff. The Court rules as

follows as indicated more fully on the attached.

New Orleans, Louisiana, this __18th__ day of __November__, 2005.

                         UNITED STATES DISTRICT JUDGE

# EXHIBIT "2"

## PLAINTIFF'S MOTIONS IN LIMINE

### GRANTED OR DENIED

**1.    Number of Heart Attacks in the United States**

The Plaintiff has filed a Motion in Limine to exclude evidence that the number of heart attacks occurring in the United States did not increase while Vioxx was sold in the United States.  The Plaintiff seeks to exclude this evidence on three grounds: (1) Rule 401 Relevancy; (2) Hearsay; and (3) Rule 403 Prejudice.

*Granted*
*(1) Irrelevant – 40?*
*(2) Misleading – 403*
*(3) open door to ... matters which could ... consumer ... – 403*

**2.    "Widow-Maker" Reference**

The Plaintiff filed a Motion in Limine to exclude any use of the term "widow-maker" in reference to the left anterior descending artery.  The basis for this motion is Rule 403.

*Granted. Doctor should use med... terms + not ... – 403*

**3.    Various Topics**

a.    Any reference that a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medicines.

*Granted – 401*

b.    Any reference that a verdict for the Plaintiff will adversely affect the ability of any member of the jury to purchase or have available medications in the future, the cost of medicine, or the viability of the pharmaceutical industry.

*Granted – 401*

c.      Any reference that this case or any Vioxx case may have a negative impact on Merck's stock price or any other publicly traded pharmaceutical manufacturer.

*Granted – 401 & 403*

d.      Any reference to Health Canada or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective country.

*Granted – 401 – 403*

e.      Any reference that this case or any Vioxx case may cause an increase in the cost of purchasing or maintaining on the market.

*Granted – 401 — 403*

f.      Any reference that this case or any other Vioxx case may cause an incease in the cost of purchasing medication for the public.

*Granted – 401*

g.      Any reference to the medical condition of the Plaintiff or a member of her family that is unrelated to the injuries at issue in this case.  The Plaintiff was not specific.

*Too vague. Court will reserve ruling.*

h.      Any reference to the Plaintiff's bad conduct. The Plaintiff was not specific.

*Too vague. Court will reserve ruling.*

i.     Any reference to whether the Plaintiff is
covered by some form of insurance for the incident
in question.

*Granted – 401*

j.     Any reference that an award of punitive
damages is unconstitutional,   A illegal, or not
supported by law.

*Granted – 401 – ? ?*

k.     Any reference to "litigation crisis," "lawsuit
crisis," "lawsuit abuse," or any other similar term or
phrase.

*Granted – 401 – 4 . .*

l.     Any reference that the Plaintiff's attorneys
specialize representing plaintiffs in personal injury
or products liability litigation.

*Granted – 401 – 403*

m.     Any comment or personal anecdote from
any witness or lawyer for the Defendant that they or
a family member has used Vioxx.

*Granted – 401*

n.     Any reference that Vioxx was taken off the
market due to "media hype" caused by attorneys or
the media itself.

*Granted – 401*

o.    Any reference that bolsters the unchallenged character or traits of the Defendant's current or former employees, managers, consultants, experts, agents, or fiduciaries preemptively.

*Too Vague, will decide if it comes up. defend*

p.    Any reference to opinions in the medical records of healthcare personnel that are not witnesses in person or deposition at trial.

*Too Vague, Reserve ruling*

q.    Any reference that any members of the public or medical community desire that Vioxx be placed back on the market.

*Granted - 401*

r.    Any reference that state defect or failure to warn laws pressure drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits.

*Too Vague, will deal with this if it comes up*

s.    Any reference that state tort laws undercut the FDA's mission to provide only scientifically valid warnings.

*Too Vague, Will deal with this at trial if it comes up*

t.      Any reference that too many
warnings of serious injury will dilute the
effectiveness of warnings generally.

*Reserve ruling;*

u.      Any reference that state products
liability laws frustrate the FDA's protective
regime.

*Granted — 40*

4.      **Defendant's Reputation and/or
        "Good Acts"**

The Plaintiff has filed a Motion in Limine to
exclude any evidence or testimony as to the
Defendant's good reputation and/or other
good acts.  Specifically, the Plaintiff
references the following: (1) Merck's Patient
Assistance Program whereby uninsured
individuals can obtain prescription
medication at no cost or at a significantly
reduced price; (2) Merck's donation of
millions of dollars in HIV vaccines to Africa
while working with Bill Gates and the
government of Botswana; (3) Merck's
donation of medications to combat "River
Blindness," which is a disease that strikes
rural villages in Africa, to all impacted
villages through the Mectizan program, in
which Merck is partnered with Jimmy Carter
and the Carter Foundation; and (4) the fact
that Merck develops drugs that treat and
cure disease.  The Plaintiff's objections are
based on Rule 401 relevance and Rule 403
prejudicial effect.

*Granted
401*

5.    **FDA's Conclusion that there is a "Class Effect" for all NSAIDs**

The Plaintiff has filed a Motion in Limine to exclude all evidence or testimony that the FDA has concluded that all NSAIDs carry an increased risk of cardiovascular injury. The Plaintiff claims that this information is false and is overly prejudicial.

*Reserve ruling will review it before submitted to jury*

6.    **Amendment of Vioxx Label Without FDA Approval**

The Plaintiff has filed a Motion in Limine to exclude any testimony that the Defendant could not have amended the Vioxx label to include warnings of cardiovascular risk or reports of cardiovascular and other adverse events, without prior approval of the FDA. The Plaintiff asserts that this testimony is false.

*Denied.*

7.    **Merck Employees or Family Members of Merck Employees Took Vioxx**

The Plaintiff has filed a Motion in Limine to Exclude any evidence that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market on September 30, 2004. The Plaintiff claims that this evidence is irrelevant and overly prejudicial.

*Granted — 40:*

8.    **Annual Number of Deaths Attributable to NSAID Gastrointestinal Toxicity Without Appropriate Qualifications and Scientific Support**

The Plaintiff has filed a Motion in Limine to exclude any testimony about the annual number of deaths attributable to NSAID gastrointestinal toxicity without appropriate qualifications and scientific support. The Plaintiff acknowledges that this testimony is relevant to Merck's claim that Vioxx offered gastrointestinal benefits to its patients. The Plaintiff, however, challenges the testimony because it is speculative and offered without support or citation.

*Reserve ruling Q. of proof*

9.    ***Daubert*-Like Challenge**

The Plaintiff has filed a Motion in Limine to preclude any Merck employee ofr former Merck employee from testifying to opinions which they are unqualified to render, which have not been previously disclosed, and which lack appropriate support under *Daubert*.

*Reserve ruling Too Vague*

10.    **Personal Matters**

The Plaintiff has filed a Motion in Limine to exclude evidence or discussion concerning personal matters because it is irrelevant and overly prejudicial. Specifically, the Plaintiff references the following:

a. Any evidence as to whether Mr. Irvin and the Plaintiff were separated at the time of his death. The Plaintiff asserts that they were not separated due to marital difficulties despite what the Flager Hospital records noted.

*Denied May be relevant to loss of consortium Q. of proof*

b. Any evidence that Mr. Irvin improperly took money from his former employer.

*Granted 401-403*

c. Any evidence that Mr. Irvin and the Plaintiff's son, Richard Irvin III, has previously been arrested for driving under the influence.

*Granted 401, 403*



LAW OFFICES
**DECHERT LLP**
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
PRINCETON PIKE CORPORATE CENTER
(MAIL TO)   P.O. BOX 5218, PRINCETON, NEW JERSEY 08543-5218
(DELIVER TO)   997 LENOX DRIVE, BUILDING THREE, SUITE 210
            LAWRENCEVILLE, NEW JERSEY 08648
            (609) 620-3200

ATTORNEYS FOR DEFENDANT MERCK & CO., INC.

**FILED**

MAR 1 0 2006

*Carol E. Higbee, P.J.Cv.*

|  |  |
|---|---|
| THOMAS CONA AND JOYCE CONA,<br><br>    Plaintiffs,<br><br>v.<br><br>MERCK & CO, INC.<br><br>    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ATLANTIC COUNTY<br><br>CASE CODE NO. 619<br><br>DOCKET NO.: ATL-L-3553-05-MT<br><br>CIVIL ACTION<br><br>**ORDER REGARDING MOTION<br>IN LIMINE NO. 14** |

|  |  |
|---|---|
| JOHN MCDARBY,<br><br>    Plaintiff,<br><br>v.<br><br>MERCK & CO, INC.<br><br>    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ATLANTIC COUNTY<br><br>CASE CODE NO. 619<br><br>DOCKET NO.: ATL-L-1296-05-MT<br><br>CIVIL ACTION<br><br>**ORDER REGARDING MOTION<br>IN LIMINE NO. 14** |

  THIS MATTER having come before the Court on motion by Dechert, LLP, counsel for

Defendant, Merck & Co., Inc., ("Merck") to exclude testimony or argument regarding the timing

of label changes incorporating VIGOR, and the Court having considered the papers submitted

and the arguments of counsel, and for good cause shown,

  IT IS ON THIS _10_ day of _March_ , 2006 hereby

# EXHIBIT "3"

ORDERED that Defendant's Motion to Exclude testimony or Argument

Regarding the Timing of Label Changes Incorporating VIGOR is DENIED.

ORDERED that a copy of this Order shall be served on all counsel in this matter upon

receipt.

_____
HON. CAROL E. HIGBEE, P.J.Cv.