FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 10 PM 4: 47

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX | : | MDL Docket No. 1657 |
| | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION L |
| | : | |
| | : | JUDGE FALLON |
| This Document Relates To All Class Actions: | | |
| | : | |
| | : | MAG. JUDGE KNOWLES |
| | : | |

## DEFENDANT MERCK & CO., INC.'S RESPONSE TO PLAINTIFFS' STEERING COMMITTEE'S POST-HEARING SUBMISSION OF NEW AND PERTINENT AUTHORITY ON CHOICE-OF-LAW ISSUE

The PSC recently submitted to the Court a decision from New Jersey's intermediate court of appeals to support its position that under New Jersey's choice-of-law rule, the Court should apply substantive New Jersey law to the personal injury, medical monitoring, and purchaser claims of purported class members from all fifty states.  In *International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, 2006 WL 827285 (N.J. Super. Ct. App. Div. March 31, 2006) ("*Engineers*"), the New Jersey Appellate Division affirmed the trial court's certification of a nationwide class of third-party payors under the New Jersey Consumer Fraud Act ("NJCFA").  As explained below, *Engineers* should have no bearing on this Court's resolution of plaintiffs' pending motion for class certification of personal injury claims or defendants' pending motions to dismiss the medical monitoring and purchaser complaints.

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc. No._____

***First***, as Merck has previously explained, New Jersey choice-of-law rules do not govern the individual medical monitoring and purchaser claims of named plaintiffs who originally filed their actions outside of New Jersey, and whose claims are currently subject to Merck's pending motions to dismiss.  Rather, the claims of those named plaintiffs are governed by the choice-of-law rules that would have applied in the transferor courts of states other than New Jersey, all of which have expressly recognized that the laws of the consumer's home state should govern consumer fraud and product liability suits.  The *Engineers* decision, interpreting New Jersey choice-of-law rules, thus has no bearing on the claims of the vast majority of named plaintiffs.

***Second***, the *Engineers* decision applies by its own terms only to the claims by third-party payors and not to actions brought by individual consumers – either for personal injury, medical monitoring or economic loss – stemming from their decisions to purchase and ingest Vioxx and their physicians' decisions to prescribe it.  The *Engineers* court, in fact, attempted to distinguish contrary authority on this very basis.  In *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004), the court was asked to determine whether Pennsylvania or New Jersey law governed the claims of Pennsylvania named plaintiffs from suing New Jersey pharmaceutical manufacturers for economic loss.  The court held that Pennsylvania law applied, in part because the learned intermediary doctrine (as applied in Pennsylvania and elsewhere) implicates the knowledge and decision-making of each plaintiff's prescribing physician.  381 F. Supp. 2d at 378 ("the most important aspects of the transaction underlying this lawsuit are the decisions of the physician and the relationship between doctor and patient, all of which occurred in Pennsylvania").  The *Engineers* court found the strong policy interests implicated by the Pennsylvania learned intermediary doctrine to be absent in the case before it, which involved "purchases made by third-party payors, who obviously have not ingested the drug." 2006 WL 827285, at *13.  Here,

2

as in *Heindel*, no individual consumer can prove that his or her prescription, purchase and exposure to Vioxx – and hence any resulting injury – was caused by Merck's allegedly fraudulent conduct without showing that this conduct influenced each doctor's prescribing decision. Moreover, the *Engineers* decision addressed only consumer fraud claims -- not plaintiffs' warranty, unjust enrichment, medical monitoring or personal injury causes of action. Accordingly, the *Engineers* court's choice-of-law analysis is, by its own acknowledgement, inapplicable to the vast majority of plaintiffs' claims in these actions.

      *Third*, even if *Engineers* did govern the choice-of-law analysis for all named plaintiffs and proposed class members, the Court should not find it persuasive here because its analysis is flawed and its conclusion is unlikely to stand. Not only has another panel of the Appellate Division reached the precise opposite conclusion of the *Engineers* panel,[1] but the New Jersey Supreme Court is poised to review the choice-of-law ruling in the context of an appeal as of right from the ruling in *Rowe v. Hoffman-La Roche Inc.*, 892 A.2d 695 (N.J. Super. Ct. App. Div. 2006).

      The key error in the *Engineers* decision lies in the court's balancing of New Jersey's interests versus those of other states. Primarily, the court's analysis accords far too much weight to New Jersey's interest in deterring and punishing fraudulent conduct by its corporate domiciliaries, and far too little to other states' interests in protecting their own consumers and deterring bad conduct within their borders in the manner they see fit. This is directly contrary to the guidance provided in the Restatement (Second) of Conflicts of Laws on how such a balancing exercise should be conducted. *See* 2006 WL 827285, at *11 (quoting Restatement (Second) of Conflicts of Laws, § 148, cmt. i) (plaintiff's principal place of business is of

---

[1]     As Merck has previously noted, both decisions are contrary to that of another recent panel in *Margulies v. Chase Manhattan Mortgage Corp.*, 2005 WL 2923580 (N.J. Super. Ct. App. Div. Nov. 7, 2005).

"substantial significance when the loss is pecuniary in nature"); *id.* ("place of business of the plaintiff [is] more important than [] similar contacts on the part of the defendant"); *id.*, cmt. j (when a misrepresentation is made in one state and plaintiff acts in reliance on that misrepresentation in another, as here, the state of plaintiff's principal place of business "will usually be the state of applicable law")).[2]

The assumption of the *Engineers* court that states that have adopted a less pro-consumer standard than New Jersey have lesser interests is also contrary to the Restatement and the weight of authority: "A Rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability." Restatement, § 145, cmt. c. *See also Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 358 (Tex. Ct. App. 2003) ("When states adopt differing attempts to strike a fair balance between the interests of manufacturers and consumers, our job is not to decide which policy overrides the other. . . . It is hard to see how the interests of each state could be met any better than by allowing each to apply its own laws."). The fact that the various state statutes "attack the same evil," 2006 WL 827285, at *12 (quoting *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 548 (D.N.J. 1998)), does not mean that their different determinations regarding *how* to attack that evil either do not represent competing interests or are not entitled to respect.

Notably, courts in this Circuit (like the overwhelming majority of courts around the country) have taken precisely the opposite approach of the *Engineers* court, holding that application of one state's laws to consumers around the country is  contrary to basic federalism

---

[2]       Even if the Court's methodology were not flawed, the Court's acceptance of Judge Higbee's determination that New Jersey has the strongest consumer fraud laws in the country is also highly suspect.  In fact, two of the cases on which the Court relies actually highlight why choosing New Jersey law to govern the nation is misguided;  in both cases, the courts found that *their* state's law was the strongest and therefore best choice. *See Wershba v. Apple Computer*, Inc., 91 Cal. App. 4th 224, 242 (2001) (California consumer protection law found to be "among the strongest in the country"); *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693 (W.D. Wash. 1992) (fraud law).

804836v.1

principles.  For instance, this Court (the Eastern District of Louisiana) rejected application of the law of the defendant's home state to a nationwide class in *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997).  As Judge Sear explained:

> Even assuming Michigan has the most consumer-friendly laws, plaintiffs' cryptic argument that any state whose consumer laws are more rigorous than Michigan's must surrender to the application of Michigan law overlooks the fact that there might be important policy reasons behind a state's adoption of more restrictive consumer-oriented laws, and that application of Michigan law might actually impair these states' policies.  It is simply incorrect to assume that the overriding interest in all consumer-oriented cases is protection of the consumer.

*Id.* at 371.  *See also Spence v. Glock, GES.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000) (refusing to apply law of the home state of the gun manufacturer defendant; the relevant jurisdictions "are likely to be interested in ensuring that their consumers are adequately compensated in cases of economic loss, but many will have different conceptions of what adequate compensation is"); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 422-23 (E.D. La. 1997) (refusing to apply law of manufacturer's home state to nationwide class).

In reaching its decision, the *Engineers* court swept a long line of contrary caselaw aside in a single extended string-cite, noting only that it either did "not find these cases analogous or disagree[d] that their conclusions should be applied to this litigation." 2006 WL 827285, at *15. The logic of those cases, however, is persuasive, and the court's distinctions misconstrue the pertinent holdings.  For instance, the court dismissed the decision in the *Bridgestone/Firestone* case because it interpreted Indiana law, which has retained a *lex loci delicti* approach to choice-of-law.  *Id.* (quoting *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1016 (7th Cir. 2002).  But that court also firmly held that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules." 288 F.3d at 1018.  Likewise, the court distinguished the *Parlodel* decision by noting that testimony and evidence from treating physicians were

significant factors in that case.  2006 WL 827285, at *15 (citing *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998).  But *Parlodel* involved a motion to transfer venue, and the court only noted the importance of plaintiffs' physicians in reference to the location of the witnesses and the convenience of obtaining evidence, not choice-of-law.  With respect to the latter, the court reaffirmed that "the law of each Plaintiff's home state will govern the central issue of negligence in these [pharmaceutical products liability] cases."  *Parlodel*, 22 F. Supp. 2d at 326.  Similarly, *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 101 (2005) is not distinguishable simply because a majority of the conduct relevant to the transaction in that case took place outside of Illinois – the same was true in *Engineers*, as there is no suggestion that class members dealt with Merck in New Jersey.  Indeed, *Avery* specifically rejected the notion that the defendant's principal place of business, as the place from which the fraudulent conduct emanated, is sufficient to apply that state's law.  *Id.* at 189 ("The appellate court's conclusion that a scheme to defraud was 'disseminated' from State Farm's headquarters is insufficient.").

In short, to accept the approach adopted by *Engineers* in this case would eviscerate policy decisions by other states to adopt their own consumer fraud statutes (and carried to the extreme proposed by plaintiffs, other tort laws as well) for their citizens.  It would mean that states like Michigan, which have rejected medical monitoring as contrary to state policy, *Henry v. Dow Chemical Co.*, 701 N.W.2d 684 (Mich. 2005), or states like Illinois, which have exempted regulated conduct from the scope of their consumer fraud statute, 815 Ill. Comp. Stat. § 505/10b(1), would see their policies thwarted unless the corporate defendant happened to be headquartered in those states.  Conversely, consumers in states with more pro-plaintiff laws than New Jersey would be denied the benefits of those laws unless the defendant was also based in the state. *See Peabody v. P.J.'s Auto Village, Inc.*, 569 A.2d 460, 463 (Vt. 1989) (consumer

6

protection statute requires no demonstration of actual injury); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004) (same); D.C. Code § 28-3905(k)(1) (same).  Such an approach is contrary to basic federalism principles and logic.

For all of these reasons, Merck submits that the *Engineers* decision is inapplicable to the vast majority of the claims at issue in this Court, that it is poorly reasoned and that its flawed choice-of-law approach is likely to be reversed by the New Jersey Supreme Court.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN, L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504)-581-3200
Facsimile: (504)-581-3361

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Merck & Co., Inc.

804836v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant Merck & Co., Inc.'s Response to Plaintiffs' Steering Committee's Post-Hearing Submission of New and Pertinent Authority on Choice-of-Law Issue has been served on Liaison Counsel, Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this 10th day of April, 2006

Dorothy H. Wimberly

804836v.1