FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 10  PM 1:42

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| Plunkett v. Merck & Co., Inc., | * | |
| | * | CASE NO. 2:05CV4046 |
| | * | |

## PLAINTIFF'S SUPPLEMENTAL BRIEF
## IN SUPPORT OF MOTION FOR NEW TRIAL

Plaintiff Evelyn Irvin Plunkett, as Personal Representative of the Estate of Mr. Richard Irvin, Jr., hereby files this supplemental brief in support of her motion for new trial. In addition to the reasons outlined in her original motion, Plaintiff urges the Court to order a new trial because Merck & Co.'s expert cardiologist, Dr. Barry Rayburn, lied under oath, intentionally misrepresenting his credentials to the Court and to the jury during the trial of this case. At trial, Dr. Rayburn represented to the Court and to the jury that he "is" board certified, when he in fact is not.

### Statement of the Facts

On October 3, 2005, prior to the *Irvin I* trial, Merck submitted to Plaintiff an expert report from Dr. Rayburn. On page one, Dr. Rayburn indicates that he has "passed boards in internal medicine and cardiovascular disease." *See* Dr. Barry Rayburn's Expert Report, *Irvin I*

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No_____

*v. Merck & Co.*, at 1 (Ex. A). The clear implication of this statement is that Dr. Rayburn was board certified in internal medicine and cardiovascular disease at the time he submitted the report.

Dr. Rayburn's curriculum vitae was attached to the report. (Ex. B) In Dr. Rayburn's curriculum vitae, Dr. Rayburn indicates on page two that he <u>is</u> certified by the American Board of Internal Medicine in Internal Medicine and Cardiovascular Disease. The CV lists Dr. Rayburn's certification date in Internal Medicine as September 12, 1990. *See* Dr. Barry Rayburn's CV, at 2. The CV lists Dr. Rayburn's certification date in Cardiovascular Diseases as February 14, 1994. *Id.* There are no ending dates listed for the certifications. The clear implication of Dr. Rayburn's CV is that he <u>is</u> currently board certified in both internal medicine and cardiovascular disease.

During his deposition prior to *Irvin 1*, Dr. Rayburn testified that his curriculum vitae was correct. *See* Dep. of Dr. Barry Rayburn, Vol. I, at 11-12 (October 12, 2005) (Ex. C).

On January 20, 2006, Merck submitted to Plaintiff an updated expert report from Dr. Rayburn. In the report, Dr. Rayburn again stated on page one, "passed boards in internal medicine and cardiovascular disease." *See* Dr. Barry Rayburn's Expert Report, *Irvin 2 v. Merck & Co.*, at 1 (Ex. D). Likewise, the CV attached to the updated report indicates that Dr. Rayburn is certified by the American Board of Internal Medicine in Internal Medicine and Cardiovascular Disease. *See* Dr. Barry Rayburn's Curriculum Vitae, *Irvin 2 v. Merck & Co.*, at 2. (Ex. E). The CV was revised on January 4, 2006. *Id.*

On February 14, 2006 during the *Irvin 2* trial, Dr. Rayburn, after being sworn by the deputy clerk, gave the following testimony:

> (Whereupon, Barry Kennedy Rayburn, M.D., having been duly sworn, testified as follows.)

THE DEPUTY CLERK: PLEASE STATE YOUR FULL NAME AND CORRECT SPELLING FOR THE RECORD.

The Witness: May name is Barry Kennedy Rayburn R-A-Y-B-U-R-N.

## VOIR DIRE

### BY MR. ISMAIL

Q. Good afternoon, Dr. Rayburn. Sir, you're a medical doctor; is that correct?
A. That's correct.
Q. You're also a professor of medicine at the University of Alabama; is that also correct?
A. That's correct.
Q. Sir, have you been asked to investigate some of the medical and scientific issues as it relates to the drug Vioxx and also as it relates to the death of Mr. Irvin?
A. Yes, I have.
Q. Have you formed opinions with regard to that, to those questions, both as to the drug Vioxx and as to Mr. Irvin?
A. Yes, I have.
Q. Are you prepared to give those opinions to the jury today?
A. Yes, I'll do that.
Q. Doctor, before we get to your opinions, let's review your background. What is your field of specialty?
A. Cardiologist.
Q. **Are you board-certified, sir?**
A. **Yes. I passed boards in internal medicine and cardiovascular disease.**

. . . . .

Q. What kinds of research do you participate in?
A. Going back to my training days, I actually was involved in basic science research in basic science laboratories. As I moved forward, I became more involved in clinical studies. I participated in randomized clinical trials. I participated in epidemiologic studies, a wide variety.
Q. **Doctor, I'm going to hand to you Exhibit 855 and ask if you can identify that as your CV?**
A. **Yes, that's my CV.**

**Mr. Ismail: Your Honor, we offer Dr. Rayburn's CV into evidence at this time.**

**The Court: I'll admit it.**

*See* Transcript of *Irvin 2 v. Merck & Co.*, at 1723-1726 (Feb. 14, 2006) (emphasis added) (Ex. F).

On March 28 & 29, 2006, only **42 days** after his testimony in *Irvin 2*, in the *McDarby/Cona v. Merck & Co.* trial in the Superior Court of New Jersey, Dr. Rayburn again testified as an expert cardiologist for Merck & Co. On cross-examination by Mr. Cona's lawyer, Dr. Rayburn testified as follows:

> **Q.   Are you a board certified cardiologist?**
> **A.   No. My boards are currently being renewed, but that's not my certification.**
> **Q.   Your board certification was lost in cardiology years ago, true?**
> **A.   My board certification expired.**
> Q.   That's what "lost" means. It is not valid anymore, true?
> A.   I think there was an implication that I lost it through something I did and it expired in 10 years.
> Q.   I'm not suggesting that you butchered somebody and lost it because you did something bad. I'm just saying it is gone. It ran out. You knew it was going to run out. It is only good for 10 years and it ran out, didn't it?
> **A.   Yes, and I'm in the process now of renewing it.**
> **Q.   Years later?**
> **A.   Well, two years later.**
> **Q.   And your internal medicine board certification ran out over five years ago, right?**
> **A.   I think that's correct and I'm actually going to renew that, I'm in the process of renewing that, as well.**

*See* Transcript of *Cona/McDarby v. Merck & Co.*, at 3520-3521 (March 29, 2006) (emphasis added) (Ex. G).

In response to questions from Mr. McDarby's attorney, Dr. Rayburn testified as follows:

> Q:   Just on that board certification question, Doctor, you're familiar with the Plaintiff's Exhibit 2205? This is the American Board of Internal Medicine.
>
> . . . .

BY MR. GORDON:

Q. Turn to Page 7 of 10 there.
A. Okay.
Q. Okay. Very quickly, the "American Board of Internal Medicine Requirements and Policies for Maintaining Your Certification," correct?
A. Yes.
**Q. And this is expired five years ago for you, right?**
**A. What are you talking about, my internal medicine?**
**Q. Correct.**
A. Yes.
Q. It says, "Representations of Certification Status. Diplomates of the Board" – that would be a person who passed the boards, right?
A. Yes.
Q. "Must accurately state their certification status at all times." This includes descriptions in curriculum vitae, correct?
A. Correct.
Q. Diplomates with expired time limited certification may not claim board certification and must revise all descriptions of their qualifications accordingly. When a physician misrepresents certification status the board may notify local credentialing bodies, licensing bodies, law enforcement agencies and others." It goes –

. . . .

BY MR. GORDON:

Q. Would you agree that the American Board of Internal Medicine takes this very, very seriously about misrepresenting if your certification has lapsed, correct?
A. It takes it very seriously about being board certified, yes.
Q. If it is expired you may not claim board certification.
   Here is your website in the University of Alabama and your CV said the same thing, it lists you in your curriculum vitae certification, American Board of Cardiovascular Disease, American Board of Internal Medicine. In neither of those are you certified?
A. It accurately reflects the dates I was certified.
Q. But that's not – okay, let me ask this question.
   Remember you testified six weeks ago to a jury in New Orleans?
A. Yes.
Q. You were sworn in as a witness?
A. Yes.
**Q. And about a minute later, seven questions into the exam by a Merck lawyer they said, "Are you board certified, sir"?**
   **You answered, "Yes. I passed boards in internal medicine and cardiovascular disease."**

| | |
|---|---|
| | That wasn't true, was it? |
| A. | Well, actually, I wouldn't put a period after the yes, I made it very clear I passed my boards internal medicine in cardiovascular disease, I did. |
| Q. | But the question is: "Are you board certified, sir"? And you told a jury under oath, yes, and you are not board certified. |
| A. | I absolutely in no way intended to misrepresent the currency of my certification, absolutely not. |
| Q. | But you may not have intended it, but it was wrong, and you told a jury it was wrong. |
| A. | No, sir, I did not intend to represent that I wasn't lapsed or expired at all. |
| Q. | Are you board certified or not? |
| A. | My boards have lapsed. I'm not currently board certified. I have been very clear about that. |
| Q. | So you think that was clear to the jury in New Orleans? |
| A. | Yes, I believe so. |

See Transcript of *Cona/McDarby v. Merck & Co.*, at 3787-3791 (March 29, 2006) (Ex. G).

Dr. Rayburn's admissions that he is not currently board certified are borne out by the American Board of Internal Medicine website. *See* Ex. H. Dr. Rayburn's certification in internal medicine expired in 2000, and his certification in cardiovascular disease expired in 2003. The entire transcript of *Irvin 2* is devoid of any mention that Dr. Rayburn's board certifications have lapsed. There is neither testimony to that effect nor is there any mention by Merck's counsel or any other witness that Dr. Rayburn's board certifications have lapsed.

## ARGUMENT

Rule 60(b)(3) provides that a Court may relieve a party from final judgment because of "a fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3). The Fifth Circuit has summarized Rule 60(b)(3)'s requirements as follows:

> One who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence. The conduct complained of must be such as prevented the losing party from fully and fairly presenting his case or defense.

*Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978) (citations omitted). Grounds for relief from judgment based on Rule 60(b)(3) must be proven by clear and convincing evidence. *Longden v. Sunderman,* 979 F.2d 1103 (5th Cir. 1992). Lastly, the "conduct complained of must be such as to prevent the losing party form fully and fairly presenting its case." *Diaz v. Methodist Hospital,* 46 F.3d 492, 496 (5th Cir. 1995).

Dr. Rayburn intentionally misrepresented material qualifications to the Court and to the jury. Prior to his testimony at trial, Dr. Rayburn in his expert reports and CV clearly communicated that he "is" board certified in internal medicine and cardiovascular disease. This was simply not true. While testifying under oath in *Irvin 2*, Dr. Rayburn clearly stated that he was board certified. In *McDarby/Cona* trial, Dr. Rayburn admits on cross examination that he is **not** board certified:

> Q. But the question is: "Are you board certified, sir"?
>    And you told a jury under oath, yes, and you are not board certified.
> A. I absolutely in no way intended to misrepresent the currency of my certification, absolutely not.
> Q. But you may not have intended it, but it was wrong, and you told a jury it was wrong.
> A. No, sir, I did not intend to represent that I wasn't lapsed or expired at all.
> Q. Are you board certified or not?
> A. My boards have lapsed. I'm not currently board certified. I have been very clear about that.
> Q. So you think that was clear to the jury in New Orleans?
> A. Yes, I believe so.

*See* Transcript of *Cona/McDarby v. Merck & Co.,* at 3791.

Being certified by the American Board of Internal Medicine (ABIM) is important in the field of medicine. Certification is also not a matter of paying dues each year. The process of maintaining one's certification is quite rigorous and includes verification of credentials, completion of a self-evaluation, and completion of a secure examination. *See* American Board

of Internal Medicine Website, "Requirements & Policies for Maintaining Your Certification" (April 6, 2006) (Plaintiff's Exhibit 2205 in the McDarley/Cona trial) (Ex. I). The American Board of Internal Medicine describes certification as follows:

> The ABIM certificate is recognized throughout the world as signifying excellence in the practice of Internal Medicine, its subspecialties and areas of added qualifications. It demonstrates that a doctor has met vigorous standards through intensive study, self-assessment, and evaluation.
>
> Certification is designed to assure the public that a medical specialist has successfully completed an approved educational program and evaluation, including a secure examination designed to assess the knowledge, experience, and skills to the provision of high quality patient care.

See American Board of Internal Medicine Website, "About Certification," (April 6, 2006) (Ex. J). Representing that one is board certified in a medical specialty or subspecialty is not like saying one is a member of a trade association for which membership has lapsed.[1] Being certified speaks volumes to the medical community and to a physician's patients.[2] The importance and seriousness of certification is even more pronounced in Dr. Rayburn's situation because he has held himself out as an expert before this Court – a leading cardiologist in his field.

---

[1] Though it is clear that Dr. Rayburn does not take misrepresenting his board certifications very seriously, the American Board of Internal Medicine takes strong exception to those who hold themselves out as board certified when they are not.

> **Representation of Certification Status**
> Diplomates of the Board must accurately state their certification status at all times. This includes descriptions in curriculum vitae, advertisements, publications, directories, and letterheads. **Diplomates with expired time-limited certification may not claim board certification and must revise all descriptions of their qualifications accordingly. When a physician misrepresents certification status, the Board may notify credentialing bodies, licensing bodies, law enforcement agencies, and others.**

See ABIM Website, "Requirements & Policies," at 7.

[2] Dr. Rayburn's board certification is also misrepresented on the University of Alabama at Birmingham website as of April 6, 2006. See Ex. K.

From his testimony in *McDarby/Cona* trial, it is evident that the fact that Dr. Rayburn's certifications had lapsed was not news to him. He clearly knew this at the time of his testimony in the *McDarby/Cona* and arguably, *Irvin 2*. For a man of Dr. Rayburn's education and experience, his testimony *Irvin 2* regarding his board certifications was not an inadvertent act but an intentional misrepresentation of a material qualification. Had he <u>not</u> known at the time he prepared his expert report, it is questionable whether he would have written, "passed boards in internal medicine and cardiovascular disease" – technically, correct at least in that instance but clearly misleading because it suggests, as does his CV, that Dr. Rayburn "is" board certified when in fact he is not. At best, Dr. Rayburn's report and CV are misleading. His testimony during the *Irvin 2* trial, however, is simply false – an intentional misrepresentation to the Court and jury. In *McDarby/Cona,* Dr. Rayburn suggests that in New Orleans he was "very clear" that his board certifications had lapsed. Such a statement is disingenuous at best, and more likely, an indication of his disrespect for this Court. This testimony is further evidence of Dr. Rayburn's cavalier approach to the truth and to his lack of appreciation for the gravity of an oath. Dr. Rayburn's reports, CV, and sworn testimony taken together are clear and convincing evidence establishing that Dr. Rayburn misrepresented a material qualification to this Court.

Second, Dr. Rayburn's misrepresentation to this Court and the jury prevented Plaintiff from fully and fairly presenting her case. During the trial, one of the most hotly contested issues was whether Plaintiff's and Merck's experts would be allowed by this Court to testify to specific causation. Over Plaintiff's objection, the Court ruled that Plaintiff's cardiologist, Dr. Thomas Baldwin, was not qualified to testify that Vioxx was a contributing cause of Mr. Richard Irvin's death. On the other hand, the Court found that Dr. Rayburn was qualified to

give a specific causation opinion.[3] The Court's determination was based in part on Dr. Rayburn's false testimony.

Dr. Rayburn testified that Vioxx was not a substantial contributing cause of Mr. Irvin's heart attack and death. Dr. Rayburn's testimony was pivotal in the trial of this case. It is hard to overstate the difference truthful testimony from Dr. Rayburn about his credentials would have made in the trial and potentially, the outcome of the case.

If the Court had been properly informed of Dr. Baldwin's credentials, would its decisions to accept him as an expert and to allow him to give a specific causation opinion been different? It is unknown to Plaintiff. What is not in doubt, however, is that if Dr. Rayburn had been truthful about his qualifications, Plaintiff would have had opportunity to cross-examine Dr. Rayburn on his failure to maintain his board certification both in internal medicine and cardiovascular disease, on his ineptness or inactivity allowing them to lapse not for mere months, but years (2 for cardiovascular medicine and 5 for internal medicine), and on the importance of board certification in the medical community.

Plaintiff spent considerable time in her initial motion for new trial asserting that Dr. Baldwin's qualifications were essentially identical to Dr. Rayburn's and that as a result, Dr. Baldwin should have been allowed to testify to specific causation. After all of that effort, it has now become clear that there is a distinction in their qualifications. That distinction is clear and substantial. Unlike Dr. Rayburn, Dr. Baldwin is board certified – board certified in Internal Medicine, Cardiovascular Disease, and Interventional Cardiology. *See* Ex. L. In addition to cross-examining Dr. Rayburn on his lack of certification, Plaintiff was prevented from explaining to the jury that Dr. Baldwin is certified and Dr. Rayburn is not. Not being

---

[3] The Court's finding that Dr. Rayburn was qualified was based on his testimony at trial regarding his qualifications. The Court's ruling is drawn into question because of Dr. Rayburn's false testimony.

allowed to do that is no small point. The outcome of the trial in many respects turned on the testimony of Dr. Baldwin and Dr. Rayburn. Plaintiff was severely prejudiced by not being allowed to draw this serious distinction in qualifications to the jury's attention.

In *Diaz v. Methodist Hospital*, 46 F.3d 492, 496 (5th Cir. 1995), the Fifth Circuit Court of Appeals stated, "If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial would be a proper response." *Diaz*, 46 F.3d at 497. Though the *Diaz* Court ultimately found that the perjury in that situation did not prevent plaintiff from fully and fairly presenting her case, the rule stands and should control here.

Dr. Rayburn's misleading testimony on the crucial point of medical qualification impugned the integrity of the trial process, intentionally manipulated and compromised the jury's deliberations, and knowingly interfered with the Court's gatekeeping authority under *Daubert* and the Federal Rules of Evidence, with the ironic and unacceptable result that Plaintiff's causation testimony was hamstrung by forthrightness, and Merck's expert's duplicity was rewarded. A lesson needs to be taught and learned regarding respect for the trial process and candor toward the tribunal, and a new trial teaches it best.

Plaintiff has presented clear and convincing evidence that Merck's expert's false testimony prevented her from fully and fairly presenting her claims to the jury. Plaintiff urges the Court to grant her motion and order a new trial in this case.

Respectfully submitted,

By: _____

**Andy D. Birchfield, Jr.**
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER &
PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER&WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

**Counsel for Plaintiff**

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**PLAINTIFFS' LIAISON COUNSEL**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE&SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this the 7th day of April, 2006.

_____

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED