IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re:** | § | MDL Docket No. 1657 |
| | § | |
| **VIOXX PRODUCTS LIABILITY** | § | SECTION L |
| **LITIGATION** | § | |
| | § | |
| | § | |
| JIMMY SULLIVAN; LAVERNE WOOSLEY; | § | |
| and DIANNE RAY, | § | JUDGE FALLON |
| | § | MAG. JUDGE KNOWLES |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | CASE NO.  05-4453 |
| MERCK & CO INC., d/b/a MERCK, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE FALLON:**

COME NOW Plaintiffs JIMMY SULLIVAN; LAVERNE WOOSLEY; and DIANNE RAY; complaining of Defendant MERCK & CO., INC., d/b/a MERCK ("MERCK"), and would respectfully show the Court as follows:

### I.

### INTRODUCTION

1.01    Plaintiffs were consumers of Vioxx and have been injured as a result. Plaintiffs now bring suit in the Multi District Litigation Docket No. 1657 ("MDL 1657"),  Eastern District of Louisiana in New Orleans, Louisiana.

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 1

## II.

### JURISDICTION AND VENUE

2.01    This Court has jurisdiction over the non-resident Defendant because Defendant has done business in the State of Louisiana, has marketed and sold its drugs in the state of Louisiana, and has continuing contacts with the state of Louisiana.

2.02    Venue of this case is proper in various districts, as defined by each Plaintiff's paragraphs below, because Defendant markets and sells drugs in each respective district.  At the conclusion of MDL 1657, venue would be properly remanded to the respective districts as defined below.

2.03    Each Plaintiff's individual damages are in excess of the minimum jurisdictional limits of the Court.

## III.

### PARTIES

3.01    Plaintiff Jimmy Sullivan is a 49-year-old resident of Whitwell, Marion County, Tennessee.

3.02    Plaintiff Laverne Woosley is a 69-year-old resident of Henderson, Henderson County, Kentucky.

3.03    Plaintiff Dianne Ray is a 65-year-old resident of Kevil, McCracken County, Kentucky.

3.04    Defendant Merck at all times relevant herein, was and is an American pharmaceutical company incorporated under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. Merck was and is in the

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 2

business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib). Merck has been served with process in accordance with Pretrial Order No. 15.

**IV.**

**FACTS**

**A.     MERCK**

4.01     At all times relevant hereto, Defendant Merck itself, or by use of others, did research, develop, manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, promote, advertise, warn and otherwise distribute in interstate commerce, the above-described pharmaceutical product, Vioxx.

4.02     Vioxx is a COX-2 inhibitor, which belongs to a class of drugs called "nonsteroidal anti-inflammatory drugs" or "NSAIDs" that are commonly prescribed to alleviate certain osteoarthritis symptoms. Many studies, even dating before the release of Vioxx to the market, show that the use of COX-2 inhibitors is associated with an increased risk of clot-related events such as heart attacks and strokes.

4.03     Merck has been aware of these facts since the developmental stage of Vioxx.

4.04     Defendant was under a duty to disclose to the Food and Drug Administration (the "FDA") all relevant information regarding Vioxx, including (1) all adverse drug experiences, (2) all disabilities attributed to drug use, (3) all life-threatening adverse drug experiences, (4) all unexpected adverse drug experiences, and (5) the increased number of clot-related cardiovascular events.

4.05     Defendant was under a duty to report all such instances, regardless of whether or not Defendant considered these experiences to be drug related. Despite its knowledge, Defendant Merck

hid this information from the FDA, and sought and received approval from the FDA to market Vioxx in the United States in various forms and dosages.

4.06    Yet despite its actual knowledge, Defendant Merck released Vioxx to the U.S. market, in large part, if not wholly, due to Vioxx's projected growth potential and the blockbuster profit analysis conducted by Merck's marketing analysts.

4.07    Post-marketing research in the possession of Merck has long shown a disturbing trend of users experiencing clot-related events such as heart attacks and strokes. Nevertheless, Defendant Merck intentionally failed to raise these concerns with the FDA because of the profit potential of Vioxx as projected by its marketing analysts.

4.08    Merck's failure to warn the FDA of potential clot-related side effects and the existing ineffective notice of side effects thereby allowed the warnings to remain woefully inadequate.

4.09    The high rate of adverse event reports associated with the ingestion of Vioxx in conjunction with Merck's controlled studies in which patients experienced the same side effects put Merck on actual notice that a significant portion of the adverse effects experienced were causally related to Vioxx use, particularly with regard to clot-related events.

4.10    Importantly, both the controlled studies (prior to Vioxx's release) and the adverse event reports (subsequent to Vioxx's release) revealed that a substantial number of patients taking Vioxx experienced significantly increased risk of clot-related events. In addition, both the controlled studies and the adverse event reports showed that higher dosages of Vioxx led to even higher and more dangerous levels of adverse events, particularly heart attacks and strokes, in a greater number of consumers.

4.11    Since the first release of Vioxx, Defendant Merck continued to receive notice of adverse events associated with Vioxx. Yet despite this information, Merck made the decision to continue to harvest substantial revenue from this "blockbuster" drug.

4.12    Within the last few years, Merck sent "Dear Doctor" letters which belatedly called attention to some of the dangers associated with Vioxx use. Nonetheless, Merck continued to misrepresent and conceal the dangers associated with Vioxx. To date, the FDA has received reports of large numbers of deaths and disabilities caused by clot-related heart attacks and strokes associated with Vioxx ingestion. It is estimated that there are many more times that number in unreported heart attacks and strokes.

4.13    At all times during the pertinent time period, Merck marketed Vioxx to doctors and to the general public as "safe and highly effective." While the advertisements' statements of efficacy were large and prominent, the statements of risk and the danger were embedded in lengthy fine print, and were therefore misleading in its presentation.

4.14    In the face of mounting evidence from post-marketing experience, and data from clinical trials, Merck knew or should have known that a significant portion of the adverse effects experienced by Vioxx consumers were causally related to Vioxx use, particularly with regard to cardiovascular events.

4.15    Since 1999, scientists have linked COX-2 inhibitors to the suppression of prostacyclin, a substance that dilates blood vessels and reduces blood clotting. They may also inhibit endothelial cell function – the cells that make up the inside of the wall of the blood vessels, and which produce vasodilators as well as other anticoagulants. These chemicals keep the blood vessels wide open and free of tiny blood clots. COX-2 inhibitors, by blocking pain and inflammation, also

inhibit the back-up defensive mechanisms that the human body has built in to insure that blood clots are kept under control. Merck failed to warn of any increased risk of cardiovascular incidents.

4.16    Despite its knowledge of the dangerous propensities of Vioxx, Defendant Merck continuously and deliberately concealed from and misrepresented to the United States, and indeed, the worldwide consuming public, the real facts concerning safety and efficacy of Vioxx.

4.17    Had Plaintiffs and their physicians known of the full extent of the risks and dangers associated with Vioxx, Plaintiffs would not have purchased or ingested Vioxx.

**B.    PLAINTIFFS**

4.18    Jimmy Sullivan began using Vioxx in 2002 for treatment of osteoarthritis and discontinued that use in February of 2004 when he was diagnosed with blood clots in his leg. A hospitalization in February of 2004 resulted in significant care and treatment, and that care and treatment has continued since that time.

4.19    Laverne Woosley began taking Vioxx in late 1999 for treatment of arthritis and discontinued Vioxx in June 2001 after significant heart-related problems. In 2000, Mr. Woosley was hospitalized for significant heart-related surgery, including multiple stents, and thereafter has suffered further complications as a result of consuming Vioxx.

4.20    Diane Ray began taking Vioxx in approximately 1999 and discontinued that therapy in 2002 after she was hospitalized for chest pain. Heart catheterization surgery was performed, along with significant other treatment, which continues to this day.

## V.

## STRICT PRODUCT LIABILITY AGAINST MERCK

5.01    Plaintiffs repeat and reallege all preceding paragraphs above with the same force and effect as though fully set forth herein.

5.02    Defendant Merck engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Vioxx in interstate commerce, which it sold and distributed in all 50 states to Plaintiffs.

5.03    Plaintiffs used Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

5.04    Vioxx was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned and otherwise distributed.

5.05    The Vioxx manufactured and/or supplied by Defendant Merck was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

5.06    Alternatively, the VIOXX manufactured and/or supplied by Defendant MERCK was defective in design or formulation, in that, when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous –  more dangerous than an ordinary consumer would expect. Plaintiffs and their physicians relied upon the misinformation by MERCK in the treatment and administration of VIOXX.

5.07    Plaintiffs and their physicians were not aware of, and reasonably could not have discovered, the dangerous nature of VIOXX.

5.08    The VIOXX manufactured and/or supplied by Defendant MERCK was defective due to inadequate warning and/or inadequate clinical trials, long-term testing and study, and inadequate reporting regarding the results of same.

5.09    VIOXX causes increased risk of fatal cardiovascular events and other life-threatening maladies upon personal consumption, and therefore constitutes a product unreasonably dangerous for normal use due to defective design, defective manufacture and defective marketing. Defendant's misrepresentations and inadequate information did not apprise Plaintiffs or their physicians of the risks of taking VIOXX.

5.10    As a direct and proximate result of Defendant MERCK's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing VIOXX in interstate commerce, Plaintiffs have experienced symptoms of the adverse effects of the drug.

5.11    Defendant MERCK, therefore, is strictly liable to Plaintiffs, and Plaintiffs seek all damages as a producing result.

5.12    The VIOXX manufactured and/or supplied by Defendant MERCK was also defective due to inadequate post-marketing warnings or instructions because, after Defendant MERCK knew or should have known of the risk of injury from VIOXX, MERCK failed to provide adequate warnings to the medical community and specifically to physicians who prescribed the medications to their patients, and to the ultimate users or consumers of the product. Despite this information and

knowledge, MERCK failed to report these problems to the medical or general community and continued to promote the product as safe and effective.

5.13    The VIOXX manufactured and/or supplied by Defendant was not accompanied by proper warnings to physicians and the medical community, nor to the general public, regarding all possible adverse side effects associated with the use of VIOXX and the comparative severity and duration of such adverse effects. The warnings and information given to the medical community and to the public did not accurately reflect the symptoms, scope or severity of the potential side effects.

5.14    Defendant MERCK failed to perform adequate testing which would have shown that VIOXX possessed serious potential side effects. Full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made to the prescribing physicians and to the consuming public.

5.15    The VIOXX manufactured and/or supplied by Defendant MERCK was defective due to inadequate pre- and post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of injury and death from VIOXX, Defendant MERCK failed to provide adequate warnings to physicians and the medical community who prescribed the drug, and to its patients who were the ultimate consumers of the product. Yet despite its inadequate post-marketing warnings and instructions to physicians and the medical community, Defendant continued to aggressively promote the product, thereby making Defendant MERCK strictly liable for failure to warn.

5.16    As the direct and legal result of the defective condition of VIOXX as manufactured, marketed and/or supplied by Defendant MERCK, and as a result of the negligence, carelessness and other wrongful acts of Defendant MERCK described herein:

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 9

a.   Plaintiffs were injured in health, strength, and activity and suffered injuries to body and mind;

b.   Plaintiffs have all suffered economic loss in the form of lost wages and lost earning capacity, substantial medical expenses past, present and future, and loss of household services;

c.   Plaintiffs required reasonable and necessary health care, attention and services, and did incur, and continue to incur, medical, health, rehabilitation, incidental and related expenses;

d.   Plaintiffs have suffered past and future pain and suffering and mental anguish, medical bills, lost wages and earnings, disfigurement and scarring, wrongful death and survival, lost chance, and loss of inheritance, along with other tangible and intangible damages allowed by law.

## VI.

## NEGLIGENCE AGAINST MERCK

6.01   Plaintiffs repeat and reallege all preceding paragraphs above with the same force and effect as though fully set forth herein.

6.02   Defendant MERCK had a duty to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning and otherwise in the distribution of VIOXX, including a duty to assure that the product did not cause users to suffer from unreasonably dangerous side effects. Defendant MERCK failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control and/or distribution of VIOXX into interstate commerce in that Defendant knew or should have known that

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 10

the product VIOXX created a high risk of unreasonably dangerous side effects, some of which can be and were fatal.

6.03    Defendant MERCK was negligent in the design, manufacture, testing advertising, advertising, warning, marketing and sale of VIOXX, and is guilty of one or more of the following careless and negligent acts and/or omissions in that it:

a.    Failed to adequately and properly test and inspect VIOXX so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

b.    Failed to utilize and/or implement a reasonably safe design in the manufacture of VIOXX.

c.    Failed to manufacture VIOXX in a reasonably safe condition for which it was intended;

d.    Failed to adequately and properly warn the Plaintiffs and their physicians about VIOXX and the risk of complications when used in a manner it was intended;

e.    Failed to adequately and properly warn the Plaintiffs and their physicians about VIOXX and the risk of diseases when used in a manner for which it was intended;

f.    Failed to adequately and properly label VIOXX so as to warn the Plaintiffs and their physicians of the risks of complications;

g.    Manufactured VIOXX which constituted a hazard to health;

h.    Manufactured VIOXX which caused adverse side effects;

I.    Failed to use due care in designing and manufacturing VIOXX so as to avoid the aforementioned risks to individuals when VIOXX was prescribed;

j.       Failed to accompany its product with proper warnings regarding all possible adverse side effects associated with the use of VIOXX, exclusively or in combination use, and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the risks of VIOXX use regarding all possible adverse side effects;

k.      Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of VIOXX and failed to properly report the results of its clinical trials and studies;

l.       Failed to provide adequate information to medical care providers for appropriate use of VIOXX;

m.     Failed to warn, either directly or indirectly, either orally or in writing, about the need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side-effects, and the possibility of becoming disabled as a result of the drug use;

n.      Failed to timely apprise and inform the FDA of the new information concerning adverse effects;

o.      Continued to promote the safety of VIOXX despite growing knowledge of adverse events strongly associated with the use of the drug;

p.      Delayed warnings and failed to provide adequate warning about adverse symptoms, in exclusive use or in combination use with other drugs, thereby depriving medical providers of the ability to assess risks, advise and monitor patients and properly, monitor, diagnose and treat adverse reactions in patients such as the Plaintiffs; and/or

q.      Were otherwise careless and negligent.

6.04    Despite the fact that Defendant knew or should have known that VIOXX caused unreasonably dangerous side effects which many users would not be able to remedy by any means, Defendant continued to market VIOXX use to consumers when there were safer alternative methods of treatment of osteoarthritis.

6.05    Defendant knew or should have known that it was foreseeable that consumers such as the Plaintiffs would suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

6.06    As a direct and proximate result of one or more of the foregoing negligent acts by Defendant, Plaintiffs sustained severe and permanent injuries and illnesses and resulting damages.

6.07    As a result of the negligence, carelessness, and other wrongful acts of Defendant MERCK described herein:

a.      Plaintiffs were injured in health, strength, and activity and suffered injuries to body and mind, and thereafter died;

b.      Plaintiffs have all suffered economic loss in the form of lost wages and lost earning capacity, substantial medical expenses past, present and future, and loss of household services;

c.      Plaintiffs required reasonable and necessary health care, attention, and services; and Plaintiffs did incurred medical, health, rehabilitation, incidental, and related expenses;

d.      Plaintiffs have suffered past and future pain and suffering and mental anguish, medical bills, lost wages and earnings, disfigurement and scarring, wrongful death

and survival, lost chance, and loss of inheritance, along with other tangible and intangible damages allowed by law.

6.08    Defendant MERCK, therefore, is liable to Plaintiffs. Additionally, Defendant MERCK's acts and omissions, when viewed objectively from the standpoint of Defendant at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. As such, Defendant's acts constitute more than mere negligence, and are grossly negligent.

## VII.

## FRAUDULENT MISREPRESENTATION AND CONCEALMENT AGAINST MERCK

7.01    Plaintiffs repeat and reallege all preceding paragraphs above with the same force and effect as though fully set forth herein.

7.02    Defendant MERCK made false statements, intentionally committed fraud and conspired to hide the truth regarding the safety, efficacy, and expected and known complications and other material information regarding VIOXX.

7.03    Defendant MERCK knowingly and purposely made false and fraudulent representations, directly or indirectly, to Plaintiffs, including, but not limited to, that VIOXX was fit for its intended purpose, the VIOXX had been adequately and reliably tested when it had not, that it was safe and that it was appropriate for use by human beings.

7.04    Defendant MERCK intentionally and/or recklessly hid this information or misrepresented this information to federal regulatory agencies and the public at large.

7.05    Defendant MERCK knew or was reckless in not knowing of the falsity of these representations.

7.06    This information was material to Plaintiffs' physicians in prescribing VIOXX, and to the Plaintiffs' decisions to use VIOXX, and Plaintiffs and their physicians reasonably relied upon the representations of Defendant MERCK.

7.07    The misrepresentations and failure to timely disclose material facts about VIOXX were made by Defendant MERCK with the intent to deceive Plaintiffs, their physicians and the FDA, with the intent to induce them to use VIOXX and with the intent that it be relied on by Plaintiffs and their physicians.

7.08    At the time these misrepresentations and omissions of material fact were made by Defendant MERCK, and at the time Plaintiffs used VIOXX, Plaintiffs and their physicians were ignorant of the falsity of Defendant MERCK's misrepresentations and relied on the representations that VIOXX was safe as warranted by Defendant MERCK.

7.09    At all times material thereto, Plaintiffs and their physicians did not know and could not have known with the exercise of reasonable care that Plaintiffs were exposing themselves to serious illnesses because Defendant MERCK fraudulently misrepresented and concealed material information about its product, VIOXX.

7.10    In reliance on Defendant' MERCK's misrepresentations and omissions, Plaintiffs were induced to use, and did use, VIOXX. Had Plaintiffs known of the actual risks, they would not have taken VIOXX. Plaintiffs' reliance on Defendant MERCK's representations was justified because Defendant MERCK was in a special "fiduciary" relationship with Plaintiffs.

7.11    As a direct and proximate result of one or more of the foregoing acts of fraudulent misrepresentation and concealment of Defendant MERCK, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

7.12    The aforesaid conduct of Defendant MERCK demonstrates willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, Plaintiffs' rights.  Consequently, punitive damages should be awarded in addition to the injuries delineated above.

7.13    Additionally, Defendant MERCK's fraudulent misrepresentations and concealment, when viewed objectively from the standpoint of Defendant at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

## VIII.

## NEGLIGENT MISREPRESENTATION AND CONCEALMENT AGAINST MERCK

8.01    Plaintiffs repeat and reallege all preceding paragraphs above with the same force and effect as though fully set forth herein.

8.02    Defendant MERCK, in continuing to manufacture, create, design, test, label, sterilize, package, supply, market, sell, advertise, warn and otherwise distribute VIOXX in interstate commerce products for use by Plaintiffs while failing to warn them of the dangers of using VIOXX after Defendant learned, or should have learned, of these dangers, negligently misrepresented that VIOXX was fit for use, merchantable, and reasonably safe for its intended purpose.

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 16

8.03    Defendant MERCK made numerous misrepresentations and omissions of material fact. Defendant MERCK failed to disclose and/or falsified information given to the public, the prescribing physicians and the FDA that VIOXX could cause severe medical problems to the Plaintiffs and other users of VIOXX.

8.04    When Defendant MERCK made these misrepresentations and omissions of material fact, it knew or should have known that its representations were false, that its omissions of material fact were misleading, and that its misrepresentations were made with no reasonable grounds for believing them to be true.

8.05    Plaintiffs, at the time these misrepresentations and omissions of material fact were made by Defendant MERCK and at the time Plaintiffs used VIOXX, were ignorant of the falsity of Defendant's representations and believed that VIOXX was safe as warranted by Defendant.

8.06    As a direct and proximate result of one or more of the foregoing acts of negligent misrepresentation and concealment of Defendant MERCK, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

8.07    Additionally, Defendant MERCK's negligent misrepresentations and concealment, when viewed objectively from the standpoint of Defendant at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

## IX.

## MISREPRESENTATIONS

9.01    Plaintiffs repeat and reallege all preceding paragraphs above with the same force and effect as though fully set forth herein.

9.02    For purposes of the Deceptive Trade Practices Act, the Plaintiffs are each a "consumer" as defined by TEX. BUS. & COMM. CODE, § 17.45, subsection (4). Defendant MERCK is engaged in the business of selling "goods" as defined by TEX. BUS. & COMM. CODE, § 17.45.

9.03    Plaintiff s are entitled to recovery against MERCK for violations of the Deceptive Trade Practices Act, and where such acts are the producing cause of economic damages or damages for mental anguish.

9.04    "Producing cause" under the Deceptive Trade Practices Act does not encompass the element of foreseeability, unlike proximate cause; therefore, a consumer need only prove the amount of actual damages factually caused by the deceptive trade practice. Defendant MERCK, and by and through its agents, engaged in actions, courses of action and practices, and such actions are the producing cause of Plaintiffs' damages as delineated herein.

## A.    SPECIFIC VIOLATIONS OF THE DTPA

9.05    Each of the facts stated within this Complaint reveal violations of the following DTPA provisions. Specifically, § 17.46 of the Deceptive Trade Practices Act forbids any false, misleading or deceptive acts or practices in the conduct of any trade or commerce under §§ 17.47, 17.58, 17.60 and 17.61 of the Deceptive Trade Practices Act. The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

a.     Causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

b.     Causing confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

c.     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have;

d.     Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; and/or

e.     Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

9.06    In these particulars, MERCK violated § 17.46 of the Deceptive Trade Practices Act.

9.07    Specifically, MERCK violated the Deceptive Trade Practices Act, § 17.46, by passing off its goods as providing a benefit when no such benefit was conferred. To the extent any benefit was conferred, MERCK passed of its goods as providing a benefit which outweighed the risks associated with VIOXX use.

9.08    MERCK violated the Deceptive Trade Practices Act, § 17.46, by causing confusion and misunderstanding as to the source, sponsorship, approval or certification of its services by passing off itself as safe and beneficial and rightfully approved by the Food and Drug Administration (FDA). In fact, MERCK deceived the FDA by failing to provide material information about VIOXX and by providing false and misleading information about VIOXX.

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 19

9.09    MERCK violated the Deceptive Trade Practices Act, § 17.46, by causing confusion and misunderstanding as to its affiliation, connection or association with, or certification by another.

9.10    MERCK violated the Deceptive Trade Practices Act, § 17.46, by representing that its drug had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which it did not have.

9.11    MERCK violated the Deceptive Trade Practices Act, § 17.46, by representing that its drug is of a particular standard, quality or grade, when it is of another.

9.12    MERCK violated the Deceptive Trade Practices Act, § 17.46, by failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.  At the time of purchasing the drug, MERCK misled the Plaintiffs to believe that this drug would provide health benefits to Plaintiffs.

9.13    Each of the aforementioned acts by MERCK constitutes violations of the Deceptive Trade Practices Act, § 17.46, thereby subjecting MERCK to civil liability and penalties as delineated herein.

**B.    INTENTIONAL MISREPRESENTATION AND CONCEALMENT**

9.14    At all times referenced herein, Defendant MERCK violated the Deceptive Trade Practices Act in that its acts were committed knowingly, having had actual awareness at the time of the act and/or practice complained of, of the falsity, deception and unfairness of the act and/or practice giving rise to Plaintiffs' claims.

9.15    Such acts were intentionally committed in that Defendant MERCK was actually aware of the falsity, deception and unfairness of the act and/or practice, and the condition, defect and failure constituting a breach of warranty giving rise to Plaintiffs' claims, coupled with the specific intent that each Plaintiff, a consumer, act in a detrimental reliance on the falsity and/or deception and/or in detrimental ignorance of the unfairness. Defendant MERCK's intentions may be inferred from the objective manifestations that indicate that it acted intentionally, and from facts showing that Defendant MERCK acted with flagrant disregard of prudent and fair business practices to the extent that the Defendant should be treated as having acted intentionally under TEX. BUS. & COM. CODE, § 17.45.

9.16    As a producing cause of one or more of the foregoing acts of fraudulent misrepresentation and concealment of Defendant MERCK, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

## C.    NEGLIGENT AND GROSSLY NEGLIGENCE MISREPRESENTATION AND CONCEALMENT

9.17    Such acts were committed with negligence and gross negligence in that Defendant MERCK knew or should have know of the falsity, deception and unfairness of the condition, defect and failure constituting a breach of warranty giving rise to Plaintiffs' claims, coupled with the specific intent that each Plaintiff, a consumer, act in a detrimental reliance on the falsity and/or deception and/or in detrimental ignorance of the unfairness. Defendant MERCK's intentions may be inferred from the objective manifestations that indicate that it was negligent or grossly negligent and from facts showing that Defendant MERCK acted with flagrant disregard of prudent and fair business practices under TEX. BUS. & COM. CODE, § 17.45.

PLAINTIFFS' FIRST AMENDED COMPLAINT- PAGE 21

9.18     At the time Defendant MERCK made these representations and omissions of material fact, it knew or should have known that its representations were false, that its omissions of material fact were misleading, and that its misrepresentations were made with no reasonable ground for believing them to be true.

9.19     At all times referenced herein, Defendant MERCK violated the Deceptive Trade Practices Act in that its acts were committed negligently or were grossly negligent, having had actual awareness or, at a minimum, constructive notice of the act and/or practice complained of, and the falsity, deception and unfairness of the act and/or practice giving rise to Plaintiffs' claims.

9.20     Such acts were negligently or grossly negligently committed in that Defendant MERCK knew or should have known of the falsity, deception and unfairness of the act and/or practice, and the condition, defect and failure constituting a breach of warranty giving rise to Plaintiffs' claims.

9.21     As a direct and producing cause of one or more of the foregoing acts of negligent and grossly negligent misrepresentation and concealment of Defendant MERCK, and as defined by the Deceptive Trade Practices Act, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

## X.

## BREACHES OF EXPRESS AND IMPLIED WARRANTY, WARRANTY OF MERCHANTABILITY, AND IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

10.01     Plaintiffs purchased and used VIOXX, relying upon Defendant's guarantees of express and implied warranties that VIOXX would provide a benefit to Plaintiffs and that VIOXX was safe

for human consumption.  MERCK also warranted that VIOXX was merchantable, and fit for its intended purpose.

10.02   Defendant MERCK breached its express and implied warranties and breaches of warranties of merchantability and fitness for a particular purpose in that said products were not of merchantable quality, fit and safe for human use and otherwise not injurious to Plaintiffs' health and well-being.

10.03   As a direct and proximate result of one or more of the foregoing acts of breach of express and implied warranties and breaches of warranties of merchantability and fitness for a purpose, and under the DTPA, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

10.04   Defendant MERCK had reason to know the particular purpose for which said products were required and that Plaintiffs were relying on Defendant's skill and judgment to furnish suitable products.

10.05   Defendant MERCK breached its implied warranty of fitness for a particular purpose in that VIOXX was dangerous and a hazard to health.

10.06   Defendant MERCK knew that its consumers, and specifically the Plaintiffs, intended to use the product for a particular purpose and that Plaintiffs were relying on Defendant's expertise as defined by TEX. BUS. & COM. CODE, § 2.315.

10.07   As a direct and proximate result of one or more of the foregoing acts of breach of warranty of merchantability and of fitness for a particular purpose pursuant to the DTPA by Defendant MERCK, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

10.08   Defendant MERCK breached its implied warranty of merchantability in that VIOXX was not fit for the ordinary purpose for which VIOXX was used, was not adequately labeled and was dangerous and a hazard to health.

10.09   As a direct and proximate result of one or more of the foregoing acts of breach of warranty of merchantability made by Defendant MERCK, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

10.10   Further, the aforementioned violations of the Deceptive Trade Practices Act entitle Plaintiffs to "reasonable and necessary attorneys' fees" under TEX. BUS. & COM. CODE ANN., § 17.50(d); therefore, each Plaintiff, a consumer, is entitled to said fees and costs, along with treble damages.

## XI.

## COMMON LAW FRAUD AGAINST MERCK

11.01   Plaintiffs repeat and reallege all preceding paragraphs above with the same force and effect as though fully set forth herein.

11.02   The elements of common law fraud are:  (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.

11.03   In this case, Defendant MERCK made material misrepresentations and omitted material facts regarding VIOXX's safety and efficaciousness (as specifically set forth above). At the time the misrepresentations and omissions were made, Defendant MERCK knew that its

representations were false or made them without any knowledge of the truth and as a positive assertion. Defendant MERCK made the representations with the intention that they be acted upon by Plaintiffs, and Plaintiffs did act in reliance upon those representations.

11.04   As a direct and proximate result of one or more of the foregoing acts of common law fraud by Defendant MERCK, Plaintiffs sustained severe and permanent injuries and illnesses as delineated above.

## XII.

## **DAMAGES**

12.01   The conduct of Defendant identified above was a proximate and producing cause of substantial and permanent injuries and damages to the Plaintiffs. As a result of this conduct, Plaintiffs suffered severe and permanent physical, mental and emotional injuries. Plaintiffs seek all damages to which they are entitled, both at law and in equity. Plaintiffs seek recovery for past and future medical expenses, lost wages and earnings, disfigurement and scarring, and physical pain and mental anguish, wrongful death and survival, lost chance, loss of inheritance and all other damages allowed by law. Plaintiffs also seek attorneys' fees and expenses incurred in litigating this cause of action, along with exemplary and punitive damages.

**FOR THESE REASONS,** Plaintiffs request that the Defendant be cited to answer and appear, and that upon final trial Plaintiffs have judgment against the Defendant for Plaintiffs' damages as set forth above, for attorneys' fees and expenses, for exemplary damages, for pre- and post-judgment interest at the maximum rate allowed by law, for costs of Court, and for such other and further relief to which the Plaintiffs may be justly entitled.

Respectfully submitted,

_____

**WILLIAM B. CURTIS**
State Bar No. 00783918
**LAW OFFICES OF MILLER AND CURTIS, L.L.P.**
5489 Blair Road, Fifth Floor
Dallas, Texas  75231
214/ 987-0005 Telephone
214/ 987-2545 Facsimile