RETURN

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

2006 APR 21  PM 3: 34

LORETTA G. WHYTE
CLERK

IN RE:        VIOXX
              PRODUCTS LIABILITY LITIGATION        MDL NO.: 1657

SECTION L

THIS DOCUMENT RELATES TO:        Docket No. 1657
2:05-CV-01982-EEF-DEK
(Northern District of Alabama (Middle) 05-572-CLS)
Lead Case: 2:05-md-01657-EEF-DEK

PAMELA MITCHELL, et al., v. MERCK & CO., INC., et al.

Judge Eldon E. Fallon, Presiding
Mag. Judge Knowles

### PLURIES SUMMONS

This service by  certified mail    of this Pluries Summons is initiated upon the written request of Plaintiff's attorney pursuant to the Federal Rules of Civil Procedure.

KSM Enterprises, Inc.
C/O Kelly Pittman, President
1861 Main Street W
Rainsville, Alabama  35986-6842

### NOTICE TO DEFENDANT

The Complaint which is attached to this Pluries Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written answer either admitting or denying each allegation in the complaint to: **Jeffrey C. Kirby,** attorney for the plaintiffs whose address is **PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.**, 2001 Park Place North, 1100 Park Place Tower, Birmingham, Alabama 35203. **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.** You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED:_____NOV 1 6 2005_____

LORETTA G. WHYTE

CIRCUIT CLERK

by Deputy Clerk

_____ Fee_____
_____ Process_____
_X_ Dktd _____
_____ CtRmDep_____
_____ Doc. No._____

## IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA

PAMELA MITCHELL, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE
ESTATE OF VINCENT SCOTT MITCHELL, DECEASED

|  |  |  |
|---|---|---|
| **PLAINTIFF** | § | |
| | § | **CIVIL ACTION NUMBER** |
| **VS** | § | CV-2005- 216 - WHR |
| | § | |

MERCK & COMPANY, INC., also known by various other names; KSM ENTERPRISES,
also known as KSM ENTERPRISES, INC., also known by various other names; DR.
PASCUAL HERRERA, also known as DR. PAT HERRERA, also known by various other
names; Fictitious Defendants 4-12, being the person or persons, firm or firms, or corporation
or corporations responsible in any way for the wrongs perpetrated as against the Plaintiff
and/or for injuries, damages and losses suffered by the Plaintiff as set forth in the Complaint
and as may be Amended hereafter, whose true names are otherwise unknown at this time but
upon ascertaining the true names of the aforementioned fictitious party defendants, they will
be substituted for the aforementioned fictitious party defendants, by Amendment.

**DEFENDANTS.**                     §

## COMPLAINT

Plaintiffs, PAMELA MITCHELL, as Administratrix of the Estate of VINCENT S.
MITCHELL, deceased, by and through their undersigned counsel, alleges in their complaint against
the Defendant as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Vincent S. Mitchell, deceased, at all times relevant hereto, resided in Ohatchee, Alabama,
and took the drug Vioxx. As used herein, "Plaintiff" shall refer to Vincent S. Mitchell, deceased,
unless specifically noted otherwise.

1 .      At all times relevant herein, Defendant Merck & Co., Inc. (Merck), was and is an American
pharmaceutical company incorporated under the laws of the State of New Jersey with its principal
place of business at One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. Defendant
was and is in the business of profiting from the design, manufacture, marketing, distribution and/or
sales of the brand-name prescription drug Vioxx (rofecoxib). That Dr. Herrera is one of the
decedent's treating medical doctors that prescribed the Vioxx medicine to the decedent. That other
doctors of decedent may have also prescribed Vioxx to the decedent.

## FACTUAL ALLEGATIONS

3.      This action arises from the sales and efficacy of Vioxx, a pain-relief drug containing
refecoxib. Vioxx is a selective COX-2 inhibitor marketed by Defendant as an anti-inflammatory
analgesic.

**FILED**

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

KSM Enterprises Inc
C/o Liberty Steel
PO Box 158
Fyffe, AL 35971

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   Holly Swords

B. Date of Delivery   3-10-06

C. Signature   X Holly Swords   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

REC'D MAR 1 3 2006

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☑ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

2. Article Number (Copy from service label)

7005 1820 0007 2209 0713

PS Form 3811, July 1999       Domestic Return Receipt       102595-00-M-0952

4.    Defendant, Merck & Co., Inc. (Amerck @ obtained FDA approval on Vioxx in approximately May of 1999 and began its distribution and sale throughout the United States in approximately May of 1999.  Vioxx is a brand name used by Merck to market and distribute rofecoxib.

5.    Defendant Merck distributed and sold Vioxx to consumers such as Plaintiffs.  Vioxx was approved for marketing based on information in the New Drug Application, which was on a fast-track, 6-month approval process to FDA.

6.    Despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular-related adverse health effects, Defendant promoted and marketed Vioxx as safe and effective for persons such as Plaintiffs.

7.    Defendant concealed the serious cardiovascular risks associated with Vioxx because a successful launch of VIOXX was viewed as critical for Merck and safety concerns over hypertension, thrombosis, edema and/or cardiovascular events would are drastically impacted Merck's positioning in the market as compared to its competition drug, Celebrex (celecoxib), which had been placed into the market by Merck competitors Pharmacia and Pfizer some 3 months prior to the launch of Vioxx.

8.    Merck knowingly chose to market this product, despite its knowledge at product launch and in post-marketing data thereafter that use of Vioxx carried significant risk factors.  These adverse effects were realized in adverse event reports, in clinical trials where such events were adjudicated by primary investigators with Merck's assistance, and in one or more studies shortly after market launch which showed statistically significant increases in adverse cardiovascular events among Vioxx users.

9.    In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction.  Merck did nothing to publish these studies, which were again reported and denied by Merck as to the hypertension problems in the official publication of the American Pharmaceutical Association, Pharmacy Today, Spin War Aside, Lessons Emerge From COX-2 Trials, in August 2000, page 3.

10.    Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping the profits obtained through the non-disclosure.  Merck engaged in an aggressive and expansive advertising and sampling program and gain3ed continued increases in market share, which enhanced Merck's financial stability to the detriment of its consumers. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was a more than $2 billion profit in 2000 alone to Merck and approximately 23 percent share of the market.

*FILED*

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

11.     The profits to Merck were realized as it continued to withhold relevant data from Plaintiffs and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the NEW ENGLAND JOURNAL OF MEDICINE and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

12.     On or about August 29, 2001, the JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukherjee, et al., showing what Merck had concealed -- that the relative risk of developing a Aconfirmed adjudicated thrombotic cardiovascular event@(defined in the article as Amyocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks among Vioxx users in Merck's trials at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. See Mukherjee, D., et al., *Risk of Cardiovascular Events Associated With Selective Cox-2Inhibitors*, JAMA. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users. *Id.*

13.     In the JAMA study the authors set forth the theory that Aby decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events.@ Id. At 957. In a follow-up peer-reviewed study reported in the JOURNAL OF THE AMERICAN COLLEGE OF CARDIOLOGY on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor Atips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events.@ Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This biological plausibility is further supported by studies completed at the University of Pennsylvania, Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2*, JOURNAL OF SCIENCE, V. 296:539-541, Apr. 19, 2002.

14.     In responsive Merck-authored and sponsored reviews, Merck set forth the theory that naproxen had a cardioprotective effect and therefore accounted for the cardiovascular risks among its Vioxx users. However, this theory was debunked in approximately January of 2002, by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study published in The Lancet, concluding that based upon information previously available there is an absence of a protective effect of naproxen or other non-aspirin non-steroidal anti-inflammatory drugs on risk of coronary heart disease. Ray, W., et al., *Non-Steroidal Anti-*

FILED
FEB 1 1 2005
BILLY YATES
CLERK, CIRCUIT COURT

*inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study*, THE LANCET, 359:118-123, Jan. 12, 2002.

15. In mid-September, 2001, Merck received a *third* Warning Letter from FDA stating in part that Defendant's promotional activities and materials are Afalse, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations. The FDA stated that Defendant's promotional campaign Aminimizes the potentially serious cardiovascular findings@ from a Vioxx study and Amisrepresents the safety profile for Vioxx. As to Merck's May 22, 2001 press release, the FDA wrote Ayour claim in the press release that Vioxx has a >favorable safety profile is simply incomprehensible, given the rate of MI[myocardial infarction] and serious cardiovascular events compared to naproxen. The implication that Vioxx's cardiovascular profile is superior to other NSAIDs is misleading; in fact, serious cardiovascular events were twice as frequent in the VIOXX treatment group ... as in the naproxen treatment group...."

16. In approximately April of 2002, Merck was required to place cardiovascular warnings on its Vioxx labeling based on the results of the VIGOR study. In addition, Merck was required to place new label warnings relaying that Vioxx 50 mg per day is not recommended for chronic use. These warnings were based on information that had been in Merck's possession by approximately January of 2000 at the latest and, as such, Merck did not meet its obligation to provide adequate Adirection or warnings as to the use of Vioxx within the meaning of Section 402 of the Restatement (Second) of Torts or otherwise. Neither did Merck fulfill its alleged obligation to warn the prescribing health care provider of these risks.

17. On September 30, 2004, Vioxx was withdrawn from the market worldwide when the data safety monitoring board overseeing a long-term study of Vioxx recommended that the study be halted because of an increase risk of serious cardiovascular events, including heart attacks and strokes, among patients taking Vioxx.

18. At all times relevant to this litigation, Defendant Merck had a significant market share based upon claims of Vioxx's efficacy, a very aggressive marketing program which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program.

19. As a result of such marketing, Vioxx gained a significant market share in competition with Celebrex that Merck would not have gained if Merck had not suppressed information about Vioxx and/or made false representations of Vioxx's superiority and efficacy.

FILED

FEB 11 2005

BILLY YATES
CLERK, CIRCUIT COURT

20.  If Defendant had not engaged in this conduct, prescribers such as Plaintiffs' prescriber would not have prescribed Vioxx and patients, such as the Plaintiffs, would have switched from Vioxx to safer products or would have refrained wholly from any use of Vioxx.

21.  From approximately 1999 through present, Defendant continued to engage in a common scheme in marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as Plaintiffs.

22.  Plaintiffs allege that the suppression of this information constituted a common scheme by Defendant to conceal material information from Plaintiffs.

23.  Plaintiffs allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, of the Defendant targeted Plaintiffs to induce Plaintiffs to purchase Vioxx. At the time the Defendant distributed, manufactured and marketed Vioxx, Defendant intended that Plaintiffs would rely on the marketing, advertisements and product information propounded by Defendant.

24.  The actions of Defendant, in failing to warn of the clear and present danger posed to others by the use of its drug Vioxx, in suppressing evidence relating to this danger, and in making deliberate and misleading misrepresentations of fact to minimize the danger or to mislead prescribers and patients as to the true risk, constitutes such clear, blatant and outrageous conduct as to warrant the imposition of exemplary damages against Defendant.

## COUNT I: NEGLIGENCE

25.  Plaintiffs restate each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

26.  Defendant, directly or indirectly, negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, or sold Vioxx (rofecoxib) in the stream of commerce, when the Defendant knew, or in the exercise of ordinary care, should have known that Vioxx posed a significant risk to Plaintiffs' health and well-being, which risk was not known to Plaintiffs or their prescriber.

27.  At all times material hereto, Defendant had a duty to Plaintiffs to exercise reasonable care in the design, testing, labeling, packaging, distribution, promotion, marketing, advertisement, sampling or sale of Vioxx (rofecoxib).

28.  Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward Plaintiffs in that the Defendant:

a.    Failed to include adequate warnings with the medications that would alert Plaintiffs and other consumers to the potential risks and serious side effects of

Vioxx ingestion;

b.     Failed to include adequate information or warnings with the medication that would alert Plaintiffs and the health care community to refrain from use of Vioxx without first prescribing traditional NSAIDs such as naproxen or ibuprofen;

c.     Failed to adequately and properly test Vioxx before and after placing it on the market;

d.     Failed to conduct sufficient testing on Vioxx which, if properly performed, would have shown that Vioxx had serious side effects, including, but not limited to the cardiovascular events described above;

e.     Failed to adequately warn Plaintiffs and their health care providers that use of Vioxx carried a risk of cardiovascular events, stroke and death; among other serious side effects;

f.     Failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx;

g.     Failed to adequately warn Plaintiffs that Vioxx should not be used in conjunction with any risk factors for these adverse effects such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease;

h.     Failed to adequately disclose and warn Plaintiffs that they undertook the risk of adverse events and death as described herein;

i.     Failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion as described herein.

29.     Defendant knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects, including death, of which Plaintiffs would not be aware. Defendant Merck nevertheless advertised, marketed, sold and distributed the drug knowing that there were safer methods and products.

30.     As a direct and proximate result of the negligence and breach of Defendant, Plaintiffs sustained serious injury. Defendant owed a duty to Plaintiffs to use reasonable care in its actions.

## COUNT II: NEGLIGENT FAILURE TO WARN

31.     Plaintiffs restate each and every preceding allegation of this Complaint and

*FILED*

*FEB 1 1 2005*

*BILLY YATES*
*CLERK, CIRCUIT COURT*

incorporates each by reference as though set forth in full herein.

32. Vioxx was not accompanied by appropriate warnings of the increased risk of adverse side effects caused by the ingestion of Vioxx.

33. Defendant negligently failed to warn consumers who took Vioxx that it was dangerous.

34. Defendant's negligence was the proximate cause of the harm suffered by Plaintiffs.

35. As a direct and proximate cause of Defendant's negligence:

    a. Plaintiffs suffered personal injuries which ended in death;
    b. Plaintiffs suffered economic loss; and
    c. Plaintiffs expended, and will in the future be required to expend, fair and reasonable expenses for necessary health care, attention and services and incurred incidental and related expenses.

## COUNT III: MISREPRESENTATION AND SUPPRESSION

36. Plaintiffs restate each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

37. Defendant misrepresented to Plaintiffs and the health care industry the safety and effectiveness of Vioxx and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Vioxx.

38. Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Vioxx had defects, dangers, and characteristics that were other than what the Defendant had represented to Plaintiffs and the health care industry generally. Specifically, Defendant misrepresented to and/or actively concealed from Plaintiffs, the health care industry and consuming public that:

    a. Vioxx had statistically significant increases in cardiovascular side effects, including, without limitation, thrombosis, myocardial infarction and sudden onset death, identified herein which could result in serious injury or death;

    b. There had been insufficient and/or company-spun studies regarding the safety and efficacy of Vioxx before and after its product launch;

    c. Vioxx was not fully and adequately tested for the cardiovascular side effects at issue herein;

FILED
FEB 11 2005
BILLY YATES
CLERK, CIRCUIT COURT

d. Other testing and studies showed the risk of or actual serious adverse risks;

e. There was a greatly increased risk of such cardiovascular events and death; there was a confirmed mechanism by which these thrombotic or cardiovascular events occurred as reported in the scientific literature.

39. The misrepresentations of and/or active concealment alleged were perpetuated directly and/or indirectly by Defendant.

40. Defendant knew or should have known that these representations were false and made the representations with the intent or purpose that Plaintiffs would rely on them, leading to the use of Vioxx.

41. At the time of Defendant's fraudulent misrepresentations, Plaintiffs were unaware of the falsity of the statements being made and believed them to be true. Plaintiffs had no knowledge of the information concealed and/or suppressed by Defendant.

42. Plaintiffs justifiably relied on and/or were induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendant did suppress, conceal or failed to disclose to Plaintiff's detriment.

43. Defendant had a post-sale duty to warn Plaintiffs and the public about the potential risks and complications associated with Vioxx in a timely manner.

44. The misrepresentations and active fraudulent concealment by the Defendant constitutes a continuing tort against Plaintiffs, who ingested Vioxx.

45. Defendant made the misrepresentations and actively concealed information about the defects and dangers of Vioxx with the intention and specific desire that Plaintiffs' health care professionals and the consuming public would rely on such or the absence of information in selecting Vioxx as treatment.

46. As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendant, Plaintiffs suffered significant and ongoing injury and damages.

## COUNT IV: BREACH OF WARRANTY

47. Plaintiffs restate each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

48. When Defendant placed Vioxx into the stream of commerce, Defendant knew of the use for which it was intended and expressly and impliedly warranted to Plaintiffs that use of Vioxx was a safe and acceptable means of treatment.

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

49. Plaintiffs reasonably relied upon the expertise, skill, judgment and knowledge of the Defendant and upon the express and/or implied warranty that Vioxx was of merchantable quality and fit for use as intended.

50. Vioxx was not of merchantable quality and was not safe or fit for its intended use because it was and continues to be unreasonably dangerous and unfit for the ordinary purposes for which it is used in that it caused injury to Plaintiffs. Merck breached the warranty because Vioxx was unduly dangerous in expected use and did cause undue injury to Plaintiffs.

51. Defendant breached the implied warranty of merchantability because Vioxx cannot pass without objection in the trade, is unsafe, not merchantable, and unfit for its ordinary use when sold, and is not adequately packaged and labeled.

52. As a direct and proximate result of Defendant's breach of the warranty of merchantability, Plaintiffs sustained serious and permanent injuries.

## COUNT V: BREACH OF EXPRESS WARRANTY

53. Plaintiffs restate each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

54. Defendant expressly warranted to the market, including the Plaintiffs, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts, and other written materials to the health care community, that Vioxx was safe, effective, fit and proper for its intended use.

55. In using Vioxx, Plaintiffs relied on the skill, judgment, representations, and foregoing express warranties of Defendant. These warranties and representations provided to be false because the product was not safe and was unfit for the uses for which it was intended.

56. As a direct and proximate result of Defendant's breaches of warranties, Plaintiffs was injured and suffered special and compensatory damages to be proven at trial.

## COUNT VI: FRAUD

57. Plaintiffs restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

58. Defendant committed actual fraud by making material representations which were false, knowing that such material representations were false and/or with reckless disregard for the truth or falsity of such material representations, with the intent that Plaintiffs rely on such material representations; Plaintiffs acted in

FEB 17 2005

BILLY YATES
CLERK, CIRCUIT COURT

actual and justifiable reliance on such material misrepresentations and was injured as a result.

59.     In addition, and in the alternative if necessary, Defendant knowingly omitted material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiffs rely on Defendant's misrepresentations; Plaintiffs acted in actual and justifiable reliance on Defendant's representations and was injured as a result.

60.     Defendant committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiffs relating to the Vioxx at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or public policy.

## COUNT VII:  ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (AEMLD)

61.     Defendant is liable to Plaintiffs who are citizens of the State of Alabama ("Alabama Plaintiffs") pursuant to the AEMLD.  Defendant is in the business of manufacturing, distributing, and marketing Vioxx.  Defendant manufactured, distributed, and marketed Vioxx which was in a defective condition, and unreasonably dangerous when applied to their intended use in the usual, foreseeable, and customary manner.  Alabama Plaintiffs, while consuming Vioxx in the usual and customary manner, as such were intended  use in the usual, foreseeable, and customary manner. Alabama Plaintiffs, while consuming Vioxx in the usual and customary manner, as such were intended to be used, were injured and damaged as a proximate result of Defendant placing the products on the market.  Vioxx was unreasonably dangerous at the time such were placed on the market by Defendant.  Vioxx, at the time of Alabama Plaintiffs' injuries and damages, whey were in substantially the same condition as when marketed by Defendant.

62.     Regarding Vioxx, Defendant negligently or wantonly failed to give reasonable and adequate warning of dangers known to Defendant, or which in the exercise of reasonable care should have been known to the Defendant, and which Alabama Plaintiffs could not obviously discover.

## COUNT VIII: FAILURE TO WARN/WRONGFUL DEATH

63.     On or about February 12, 2003 and for some time before, Dr. Pat Herrera, M.D. and one or more of the fictitious party defendants undertook to provide and did provide medical services to Vincent Scott Mitchell.  All of these services were provided to the Plaintiff in Etowah County, Alabama.

64.     Dr. Pat Herrera, M.D. and all of the doctors negligently or wantonly prescribed Vioxx to Vincent Scott Mitchell and as a result, Mr. Mitchell died.

65.     Defendants, negligently or wantonly failed to give reasonable and adequate warning of dangers known to Defendants, or which in the exercise of reasonable care should have been known to the Defendants, and which Alabama Plaintiffs could not obviously discover.

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendant for damages, as well as all costs of this action, to the full extent of the law, including:

(A) Damages to compensate Plaintiffs for injuries sustained as a result of Vioxx use,  past medical expenses as proven at trial;

(B) Physical pain and suffering of Plaintiffs;

(C) Mental anguish and/or emotional distress;

(D) Death; and

(E) Such other applicable damages as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demands that all issues of fact in this case be tried to a properly impaneled jury.

Jeffrey C. Kirby (KIR002)
Attorney for the Plaintiffs

OF COUNSEL:
PITTMAN, HOOKS, DUTTON,
KIRBY & HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Phone: (205) 322-8880

Daniel B. King (KIN009)
Attorney for Plaintiffs

OF COUNSEL:
KING & KING, P.C.
The King Building
757 Chestnut Street
Gadsden, Alabama 35901
Phone: (256) 547 - 2431

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a struck jury for the trial of this case.

_____

OF COUNSEL


## REQUEST FOR SERVICE

Pursuant to ARCP 4.1 and 4.2, Plaintiffs request service of the foregoing "Summons and Complaint" by certified mail.

_____

OF COUNSEL


## PLAINTIFF'S ADDRESS:

2013 Greenhills Road
Ohatchee, Alabama  36271


## DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:

Merck & Company, Inc.
C/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama  36109


# FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

## COUNT IX

## {WORKMEN'S COMPENSATION CLAIM}

1.  Plaintiff claims of the defendant, KSM Enterprises Inc. a corporation, (hereinafter referred to as defendant/employer) benefits due under the Workmen's Compensation Laws of Alabama, due and owing from the following facts:

2.  That on or about February 12, 2003, the relationship of employer and employee master and servant existed between the plaintiff and defendant/employer, which is a corporation doing business in Alabama.

3.  That defendant/employer and plaintiff were subject to the Workmen's Compensation Laws of Alabama. While the plaintiff was employed and engaged in the business of the defendant/employer and while acting within the line and scope of his business duties for the defendant/employer, plaintiff suffered a heart attack and died, which arose out of and in the course of his employment.

4.  That on or about February 12, 2003, the plaintiff, while acting as an agent, servant or employee of the defendant/employer, was caused to suffer a wrongful death while employed and engaged in the business of the Defendant/employer. That at the time of the wrongful death of Vincent Scott Mitchell he had as dependents, his wife Pamela Mitchell and two children , Jonathan M. Mitchell, a minor boy age 12, Brandon S. Mitchell a minor boy age 17. Pamela Mitchell brings this action on behalf of her husband's Estate and her self and all the other dependents and heirs of the Estate of decedent Vincent Scott Mitchell. That Plaintiff and said children are Vincent Scott Mitchell's sole surviving dependents and heirs.

5.  That a controversy has arisen as to the benefits to be paid to the plaintiff under the Workmen's Compensation Laws of Alabama. The Defendant/employer is not paying plaintiff any workmen's compensation benefits as is required by the law of Alabama and/or providing any medical benefits as required by the law of Alabama.

6.  That defendant/employer had full, prompt and immediate notice of said wrongful death suffered by the plaintiff, but had not paid the full amount of benefits due and owing the plaintiff under the law of Alabama.

7.  Plaintiff has incurred certain hospital and medical expenses and is entitled to benefits for all said medical services and injuries under the Workmen's Compensation Laws of Alabama. Plaintiff is entitled to have the defendant/employer pay for all unpaid hospital bills, drug bills, doctor bills, incurred by the Plaintiff in the treatment of his injuries, including the wrongful death of the Plaintiff.

8.  The average weekly wage earned by the plaintiff at the time of his wrongful death and for a long period of time thereto, was not less that the minimum weekly compensation provided for under the Workmen's Compensation Laws of Alabama.

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

9. Plaintiff desires to hire the law firm of King and King Attorneys, P.C. of Gadsden, Alabama, to represent Plaintiff in this cause and request this Honorable Court to enter such an Order in accordance with the Law of Alabama.

WHEREFORE, Plaintiff prays that this Honorable Court will take jurisdiction of this Workmen's Compensation claim and will make same a preferred claim and cause service to be had upon defendant in accordance with the Law and will allow this case to he heard as soon as possible as a preference in accordance with the law and will award plaintiff all monies and benefits due under said Workmen's Compensation Laws of Alabama, including medical insurance for the rest of his life as relates to permanent injury sustained in said accident. Plaintiff prays for such other and further relief to which he may be entitled to under the Law of Alabama.

_Pamela Mitchell_

Pamela Mitchell, Individually and as
Administratrix of the Estate of Vincent Scott
Mitchell, deceased.

STATE OF ALABAMA            )
COUNTY OF ETOWAH            )

Sworn to and subscribed before me on this the _11_ day of _February_, 2005.

_Bennie Cline_

Notary Public
Place Seal Here

My Commission Expires: _8-13-06_

## ORDER OF THE COURT

Having read and understood the foregoing Complaint, it is ORDERED, ADJUDGED AND DECREED, that Daniel B. King of King & King Attorneys, P.C. of Gadsden, Alabama, is hereby appointed as attorney for plaintiff in this cause and in accordance with the law.

Done and ORDERED, this the _1_ day of _Feb_ 2005.

_____
CIRCUIT JUDGE

**FILED**

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

# IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA

**PAMELA MITCHELL, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE
ESTATE OF VINCENT SCOTT MITCHELL, DECEASED**

| | | |
|---|---|---|
| **PLAINTIFF** | § | |
| | § | **CIVIL ACTION NUMBER** |
| **VS** | § | **CV-2005-_____** |
| | § | |

**MERCK & COMPANY, INC., also known by various other names; KSM ENTERPRISES, also known as KSM ENTERPRISES, INC., also known by various other names; DR. PASCUAL HERRERA, also known as DR. PAT HERRERA, also known by various other names; Fictitious Defendants 4-12, being the person or persons, firm or firms, or corporation or corporations responsible in any way for the wrongs perpetrated as against the Plaintiff and/or for injuries, damages and losses suffered by the Plaintiff as set forth in the Complaint and as may be Amended hereafter, whose true names are otherwise unknown at this time but upon ascertaining the true names of the aforementioned fictitious party defendants, they will be substituted for the aforementioned fictitious party defendants, by Amendment.**

**DEFENDANTS.** §

## PLAINTIFF'S FIRST INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS

COMES NOW, the plaintiff, by and through counsel, and files this First Set of Interrogatories and Plaintiff's First Request for Production of documents to Defendant(s) to be answered within 45 days, the following interrogatories and request for production of documents:

1. State your full correct legal name, address, age and business.

2. Was plaintiff an employee of yours or covered by your insurance carrier under the workmen's compensation laws of Alabama at the time of his wrongful death?   (a) How many weeks of temporary/total workmen's compensation benefits and what amount per week have you paid the plaintiff since the date of the accident? Attach a copy of your records hereto. (b) Have you paid all medical bills of the plaintiff and are you willing to pay the rest owed if said bills are owed now? (c) Have you paid for plaintiff's transportation to and from the place where medical treatment is afforded the plaintiff? Are you willing to pay same?  If your answer is in the negative to either of the preceding questions, explain fully?

3. Was the plaintiff injured at your place of business and if so, give the time, date and place of same.  If your answer is in the negative, give the time, date and place of the plaintiff's injury. (a)  When the plaintiff was injured, did you have him covered with workmen's compensation insurance as is required under the law of Alabama? (b)  If you answer to (a) is in the affirmative, give the name and address of the workmen's compensation insurer.

4. Did you have notice of the plaintiff's injuries and if so, explain fully how you received

FILED

FEB 1 1 2005
BILLY YATES
CLERK, CIRCUIT COURT

this information and the date of same?   (a) Were you and plaintiff and/or your insurance carrier, on the date of plaintiff's injury, bound by the workmen's compensation laws of Alabama?

5. How many employees did you average working at your place of business on the date plaintiff was injured and for one year prior thereto, attach all of your records relating thereto or a photostat thereof, without requiring a more formal request?

6. What was plaintiff's duties as an employee of yours on the date that plaintiff was injured?

7. On the date of plaintiff's injury, as previously mentioned, state how many other employees were engaged in similar jobs or duties as that of the plaintiff for you and give the name and address and the amount of money each were making per week on an average of a 52 week basis prior to the date of plaintiff's injury.

8. At the time of plaintiff's injury how much money was plaintiff and all other employees, doing similar work for you, making with you per week on an average of a 52 week basis? (a) Set forth the gross amount paid plaintiff each week by you and on a 52 week period prior to his injury. Attach a copy of your records hereto.   (b) Attach a copy of the payroll records of plaintiff for a 52 week period or more, prior to the date of the plaintiff's wrongful death.

9. How long was plaintiff temporarily or totally disabled after the accident, to your knowledge?

10. Give the name and address of each examining doctor, that you know of, that plaintiff has seen.   (a) Please attach all the medical records, reports or other medical documentation that you, your agents, servants or employees have that in any way relate to the plaintiff.

11. Do you deny liability of the plaintiff or owing plaintiff any workmen's compensation benefits?   (a)  If you deny that you have any liability or owe the plaintiff any workmen's compensation benefits, set forth each and every fact that you know of and you expect to substantiate by evidence upon trial herein, giving the name, address and phone number of each witness and expert witness who will so testify, a summary of the facts, and opinions that they are expected to testify to at the trial of this cause and a list of the grounds supporting each and every opinion that list of the grounds supporting each and every opinion that they are expected to testify to at the trial of this cause.

12. Did you receive notice of plaintiff's injury and if so, answer the following: (a) the first date and how you became aware that plaintiff had been injured. (b)  the date and address of the person that received this information for you. (c)  whether you furnished the plaintiff with any documentation to be filled out by the plaintiff after you received notice of the injury and if so please attach a copy of all such written statements, tape recorded statements, given to you, your agents or employees by the plaintiff. (d) Whether you notified the Department of Industrial Relations of such injuries. (e)  If so, please attach a copy of same to your answers to the interrogatory. (f)  Please attach a copy of the notice or notices of said injury or injuries that you gave to said Department of Industrial Relations of Alabama, that in any way relates to the plaintiff.

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

13.  Did you make an investigation of the circumstances surrounding the accident or the nature and extent of the plaintiff's injuries, and if so, state: (a) the first date that you made such investigation; (b) the name, address and job title of each person who participated in the investigation. (c) Whether you requested plaintiff's authorization to obtain medical information concerning plaintiff's injuries. (d) Please produce all documents, witness statements, tape recordings, etc. that were acquired during the investigation of the plaintiff's workmen's compensation claim that were acquired before the filing of this lawsuit.

14.  Did you obtain a report from any physician or other medical practitioner concerning plaintiff's condition or the nature of his/her injury? If so, state; (a) the name and address of each physician or other medical practitioner from whom you have obtained a report. (b) the date of each report. (c) the contents of each report and who signed same.  Attach a copy of all these records to your answers.  (d)  Please attach a copy of all said doctor and/or medical provider reports and records.

15.  Did plaintiff refuse to comply with any request made by you that plaintiff be medically examined? If so, state: (a) the date that each such request was made and who made such request giving the name and address of each party responsible.  (b) the name and address of the physician by whom you requested plaintiff to be examined.  (c)  please attach a copy of each such report.

16.  Please attach the entire personnel file and all other documents that in any way relate to the plaintiff from the plaintiff's job application or other documents that plaintiff submitted to get his job with defendant and other documentation up to the present date that you, your agents, employees have in your presence or control.

17.  Please produce all documents that reveal all fringe benefits provided to the plaintiff during the period of time he worked for the defendant prior to the incident which has been made the basis of this cause of action.

18.  Please produce the first report of injury and all other reports given by defendant employer to the State of Alabama concerning plaintiff on the job injury and subsequent condition; (a) please produce the 52 week payroll record of plaintiff's gross wages prior to his February 12, 2003, wrongful death.

19.  Please produce all the medical records of the company doctors that plaintiff was sent to relating to the wrongful death of plaintiff on February 12, 2003.

Daniel B. King
Attorney for Plaintiff

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

Daniel B. King                    (KIN 009)
Attorney for Plaintiff

**OF COUNSEL:**
KING & KING, ATTORNEYS, P.C.
757 Chestnut Street
Gadsden, Alabama 35901
Phone: (205) 547-2431
Fax: (205) 546-5675

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

## IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA

**PAMELA MITCHELL, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF VINCENT SCOTT MITCHELL, DECEASED**

|  |  |  |
|---|---|---|
| **PLAINTIFF** | § | |
| | § | |
| | § | **CIVIL ACTION NUMBER** |
| **VS** | § | **CV-2005-_____** |

**MERCK & COMPANY, INC., also known by various other names; KSM ENTERPRISES, also known as KSM ENTERPRISES, INC., also known by various other names; DR. PASCUAL HERRERA, also known as DR. PAT HERRERA, also known by various other names; Fictitious Defendants 4-12, being the person or persons, firm or firms, or corporation or corporations responsible in any way for the wrongs perpetrated as against the Plaintiff and/or for injuries, damages and losses suffered by the Plaintiff as set forth in the Complaint and as may be Amended hereafter, whose true names are otherwise unknown at this time but upon ascertaining the true names of the aforementioned fictitious party defendants, they will be substituted for the aforementioned fictitious party defendants, by Amendment.**

**DEFENDANTS.**               §

## NOTICE OF DEPOSITION

TO:   Dr. Pat Herrera, M.D.
      Leesburg Medical Clinic
      215 Industrial Blvd.
      Leesburg, Alabama  35983

      Elite Reporting Agency
      P.O. Box 1126
      Gadsden, Alabama

   **PLEASE TAKE NOTICE,** that at the time, date and place indicated below, the plaintiff will take the testimony by deposition upon oral examination of that party named. This oral examination will be conducted pursuant to Rules 26-37, inclusive, of the Alabama Rules of Civil Procedure for the purpose of discovery or for use as evidence in this action or both purposes and shall be taken before a Notary Public, or before some other officer authorized by law to administer oaths under the laws of the State of Alabama.  This said examination will continue from time to time until completed.  You are invited to attend and cross-examine.

FILED

FEB 1 1 2005

BILLY YATES
CLERK, CIRCUIT COURT

DATE:           Tuesday, May 3 , 2005

TIME:           1:00 P.M.

DEPONENT:       Dr. Pat Herrera

PLACE:          King & King Attorneys, P.C., 757 Chestnut Street, Gadsden,
                Alabama 35901

BEFORE:         Elite Reporting Agency, Court Reporters


                                    _____
                                    Daniel B. King

OF COUNSEL:
KING & KING ATTORNEYS, P.C.
757 Chestnut Street
Gadsden, Alabama 35901
Phone: (256) 547-2431
Fax: (256) 546-5675


                SERVED WITH SUMMONS AND COMPLAINT


FILED
FEB 1 1 2005
BILLY YATES
CLERK, CIRCUIT COURT