U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   4-24-06
LORETTA G. WHYTE
    CLERK

*Copy in Chambers*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re:  VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL<br>CASES | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MDL NO. 1657**<br><br>**SECTION: L**<br><br>**JUDGE FALLON**<br>**MAG. JUDGE KNOWLES** |

### MERCK & CO., INC.'S EMERGENCY MOTION FOR STAY PENDING APPEAL OF THE COURT'S PRIVILEGE RULINGS

Defendant Merck & Co., Inc. ("Merck") respectfully moves this Court for entry of an emergency stay of its privileged document rulings pending the outcome of Merck's appeal and alternative petition for writ of mandamus to the U.S. Court of Appeals for the Fifth Circuit.

As set forth below, Merck respectfully believes that the Court erred in ruling that the vast majority of the documents Merck withheld or redacted on the basis of privilege should be released to opposing counsel.  Absent a stay, however, Merck's appeal of this Court's rulings on Merck's privilege claims will be a mere academic exercise; Merck will suffer irreparable injury and the appeal issues will essentially become moot at the moment the Court releases the documents to opposing counsel.  At the same time, plaintiffs will not suffer any harm from a stay because Merck intends to seek expedited appellate review, and the next MDL trial is not slated to

Fee _____
Process _____
X  Dktd _____
___ CtRmDep _____
___ Doc. No. _____

- 1 -

807172v.1

take place until July 24, 2006.  Accordingly, this is precisely the type of situation in which a limited stay pending expedited appellate review of the Court's orders is appropriate.[1]

## ARGUMENT

The district court has discretion to grant a stay pending appeal upon consideration of the following factors: "(1) [w]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) [w]hether the applicant will be irreparably injured absent a stay; (3) [w]hether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) [w]here the public interest lies." *GMC v. Pamela Equities Corp.*, Civ. A. No. 96-4194, 1997 U.S. Dist. LEXIS 821, at *2 (E.D. La. Jan. 29, 1997) (citing *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)); *see also United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 609 F.2d 736, 737 (5th Cir.1979)).  No single factor is dispositive; rather, a court is supposed to 'balance[] the factors to determine if the equities weigh heavily in favor of either granting or denying the motion." *Odeco Oil & Gas Co. v. Bonnette*, Civ. A. No. 92-23, 1995 U.S. Dist. LEXIS 1229, at *4 (E.D. La. Jan. 15, 1995) (citing *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983).  Here, all four factors militate strongly in favor of a stay.

**A.      Merck Is Likely To Succeed On The Merits Of Its Appeal.**

Merck respectfully believes that there is a strong chance it will succeed on the merits of its appeal (in whole or in part) because:  (a) the Court's process for reviewing Merck's privilege designations denied Merck the opportunity to explain its designations *in camera* or challenge

---

[1]      At the very least, should this Court deny Merck's motion for stay pending appeal of the Court's privilege determinations, Merck asks that the Court grant a temporary stay of production so that Merck may appeal the Court's denial of stay under Federal Rule of Appellate Procedure 8(a)(2).

807172v.1

initial determinations and thus resulted in erroneous rulings; and (b) Merck's privilege log did, in fact, satisfy well established requirements for privilege log adequacy.

*First*, Merck believes that the Court's refusal to allow further briefing or participation by Merck in the review process through *in camera* review or a reconsideration process was erroneous and resulted in erroneous rulings. For example, there are more than 200 documents for which the Court reached inconsistent privilege determinations – *i.e.,* the Court agreed with Merck's privilege designations with regard to at least one copy of the document but inconsistently determined that other, exact duplicates of the very same document were not privileged. *See* Examples Of Inconsistent District Court Privilege Rulings (attached as Ex. 1). Thus, the Court has ordered the release of hundreds of documents that it did in fact determine to be privileged. These errors would have been avoided if the Court had allowed Merck to participate in the document review process so that it could bring the duplicates to the Court's attention, or established a protocol for Merck to challenge initial privilege determinations by the Court or a special master.

Merck believes that another indication that the review process was erroneous is the fact that the Court designated as non-privileged two documents – a Confidential Memorandum of Invention ("CMI") and an email between two Merck employees – that have been the subject of extensive briefing in the New Jersey State Court coordinated proceeding and which that court ultimately determined were privileged. The difference between the protocol undertaken in New Jersey and this Court's isolated review of just the document and the privilege log, with no other context as to how the document was generated, edited, used, or maintained (as well as the results of the two very different approaches), is emblematic of why Merck believes the Court's review process was unfair.

807172v.1

One of the documents, entitled "Confidential Memorandum of Invention" (Bates numbers MRK-AEG0020364-70 and MRK-AEE0000552-58), was a memorandum sent by Dr. Kathleen Metters, Vice President and Site Head for Merck Frosst Canada & Company, a Canadian affiliate of Merck, and her colleagues, to Merck's Patent Department, describing an invention. As explained in the New Jersey briefing, memoranda like this one are standard forms developed by Merck's Patent Department and used by Merck scientists to provide information concerning an invention to lawyers in Merck's patent department. Upon receipt, patent lawyers review the memoranda to assess patentability of the invention, and initiate the patent process where appropriate. *See* Mem. of Law in Supp. of Def.'s Mot. for a Protective Order Prohibiting Use or Disclosure of Inadvertently Produced Privileged Docs. and Compelling Pls. to Return All Copies of the Docs. at 2-3, *In re Vioxx® Litig.*, Case No. 619 (N.J. Super. Ct. Law Div. April 26, 2005) (attached as Ex. 2). While plaintiffs in the New Jersey case argued that the document was not created for the purpose of obtaining legal advice, *see* Pls.' Mem. of Law in Opp'n to Def.'s Mot. for a Protective Order Prohibiting Use or Disclosure of "Inadvertantly Produced Privileged Docs." and Compelling Pls. to Return All Copies of the Docs. at 8-9, *In re Vioxx® Litig.*, Case No. 619 (N.J. Super. Ct. Law Div. May 2, 2005) (attached as Ex. 3), Judge Higbee ultimately ruled, based on the information provided by Merck in its briefing, that the company had carried its burden of demonstrating the privileged nature of the document. *See In re Vioxx® Litig.*, Case No. 619, slip op. (N.J. Super. Ct. Law Div. July 13, 2005) (attached as Ex. 4). Had the Court sought input from Merck about the circumstances surrounding the creation of this document, it would likely have come to the same conclusion. *See, e.g., In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (communications between non-lawyer corporate employees where they relay legal advice from one part of the client/entity to another).

- 4 -

The other document was an email between two non-lawyer Merck employees, Dr. Deborah Shapiro, a biostatistician and Dr. Edward M. Scolnick, the head of Merck Research Labs, discussing a newspaper article about Vioxx and the "unblinding" of certain research results, which reflected legal advice from an attorney regarding the handling of such results. (MDL Bates numbers MRK-AAB0069330-MRK-AAB0069334 /NJ Bates number MRK-NJ0130083). In the New Jersey litigation the parties offered the court detailed briefing regarding the applicability of the attorney-client privilege to a redacted section of the document. By this means, Merck had the opportunity to go beyond the necessarily summary description in the privilege log. Mem. of Law in Opp'n to Pls.' Mot. to Strike Def.'s Privilege Redaction of MRK-NJ0130083 at 7, *In re Vioxx® Litig.*, Case No. 619 (N.J. Super. Ct. Law Div. May 2, 2005) (attached as Ex. 5). Having carefully studied both parties' positions on the privileged nature of this document, Judge Higbee found the redacted portion "protected by privilege and immunity from disclosure." *See In re Vioxx® Litig.*, Case No. 619, slip op. at 1 (N.J. Super. Ct. Law Div. May 19, 2005) (attached as Ex. 6). Merck respectfully believes that this Court, given the full context, would almost certainly have reached the same decision. *See, e.g., In re Grand Jury 90-1*, 758 F. Supp. at 1413. Not having benefited from communications with the parties regarding the document, however, the Court placed this clearly privileged document in the group of documents slated for release to plaintiffs-respondents.[2]

*Second*, Merck believes it is likely to succeed on the merits of its appeal because its privilege log satisfied applicable legal standards. Under the Federal Rules of Civil Procedure, a claim for protection against disclosure based on privilege or work product must be made

---

[2]    Attached as Ex. 7 is a table listing approximately 50 other examples of documents, including some that Merck identified in its motion for reconsideration, that Merck believes the Court improperly designated as not privileged.

807172v.1

"expressly" and describe the nature of the allegedly protected information sufficiently to enable opposing parties to assess the merits of the claim. *See* Fed. R. Civ. P. 26(b)(5); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.43 (2004). As the Fifth Circuit has recognized, compliance with Rule 26(b)(5) is usually accomplished in complex litigation like this by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter. *In re Santa Fe Int'l Corp.*, 272 F.3d 705 (5th Cir. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.431 (1995)); *see also In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. (1992) (corporation's privilege log was adequate where it identified: (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) the date the document was generated, prepared, and (e) the subject matter of the document).

Like the log at issue in *In re Grand Jury*, Merck's privilege log lists: the Bates number of each document or range of documents; the date of the communication, the names of the author(s) and/or correspondent(s); the names of the recipient(s) and/or addressee(s); a description of each document, including the subject matter upon which legal advice was sought or given; whether the document was withheld or redacted; the nature of the privilege asserted; and the attachments related to that document.

At oral argument on Merck's motion for reconsideration, the Court identified two supposed problems with Merck's log. First, the Court stated that it was not clear who was a lawyer and who was not. In the court's words, the "only [lawyer] that was obvious to [the court] was Joanne Lahner [one of Merck's in-house counsel]." (Hearing Tr. at 21:6-8, April 19, 2006.) In addition, the Court claimed that its review was made exceedingly difficult because it was

807172v.1

forced to make its own list of lawyers and Merck 'didn't help [the court] with that." (*Id.* at 21:6.) However, Merck had provided the Court on November 18, 2005 (along with the privilege log itself) a list "that identifies lawyers, paralegals and administrative assistants to lawyers whose names appear in the privilege log." (*See* Letter from P. Wittmann to J. Fallon (Nov. 18, 2005) (attached as Ex. 8).) Merck also demarcated all lawyers and legal personnel on the privilege log itself with an asterisk.

The Court also claimed that there were inadequate descriptions of each document's subject matter on the log. According to the Court, "it would be helpful if [Merck's] privilege log would say, Document 1006 is a letter from an attorney to a client regarding a patent. . . But just to say, An e-mail, I don't know who is the lawyer. I don't know whether there is a lawyer in that e-mail." (*See* Hearing Tr. at 22:23-25 to 23:1-4, April 19, 2006.) Merck's privilege log, however, did satisfy this requirement. For example:

- **Bates number MRK-AAC0110107**, one of the documents slated for release, is identified on Merck's privilege log as an e-mail authored by Raynard Yuro (asterisked as a lawyer on the log *and* noted as a lawyer in the list provided to the Court) and sent to several Merck executives "reflecting legal advice and opinions regarding coxib patent coverage issues." (Privilege Log Entry for Bates number MRK-AAC0110107.)

- **Bates number MRK-ABY0143117-MRK-ABY0143119**, also slated for release, is identified in the log as an e-mail authored by Merck attorney David Cromley and sent to Merck executive Douglas Watson "reflecting legal advice and opinions regarding research grant agreement and disclosure agreement with the University of Pennsylvania." (Priv. Log Entry for Bates number MRK-ABY0143117-MRK-ABY0143119.)

- **Bates number MRK-ACI0015574** is identified as having been written by a Merck attorney – in this case Suzanne Gregory. The document is described as an "e-mail reflecting legal advice and opinions regarding promotional and regulatory issues involving a draft complaint to the FDA re: competitor's practices," and was sent to several Merck executives, including Kathryn Roberts. (Priv. Log Entry for Bates number MRK-ACI0015574-MRK-ACI0015574.)

Finally, the Fifth Circuit has held that, where a balance of the other equities weighs heavily in favor of granting the stay, the movant is not required to show a "probability" of success on the merits, but merely "present a substantial case on the merits when a serious legal question is involved." *Helms v. Cody*, CIV. A. NO. 85-5533, 1994 U.S. Dist. LEXIS 11222, at *5 (E.D. La. Aug. 9, 1994) (citing *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)); *see also Baylor Univ. Med. Ctr.*, 711 F.2d at 39. As discussed *infra*, a balance of the equities weighs heavily in favor of staying production pending Merck's appeal. Thus, a stay would be appropriate even if the Court disagrees with Merck's arguments regarding the merits of its appeal.

### B.   Absent A Stay Merck Will Suffer Irreparable Injury.

It is hard to imagine a more compelling example of irreparable harm than the imminent release of documents that a litigant believes are privileged; after all, once the documents are released, the harm to the privilege proponent cannot be undone. *See, e.g., United States v. Diageo, Inc.*, Civil No. 02-MC-11 (DSD/SRN), 2003 U.S. Dist. LEXIS 8662, at *3 (D. Minn. April 29, 2003) (granting motion to stay district court's order requiring production of certain documents pending appeal on grounds that, *inter alia*, release of privileged documents would result in irreparable harm); *Walter E. Lynch & Co. v. Fuisz*, 862 A.2d 929, 933 (D.C. 2004) (granting stay pending appeal of lower court order issuing subpoena *duces tecum* because defendant "face[d] irreparable harm since the confidentiality protected by the privilege cannot be restored once disclosed"); *United States v. Jones*, No. 2:99-MC-71-11, 1999 WL 1057210, at *2 (D.S.C. Oct. 5, 1999) (holding that, "if the requested stay is denied," then "[t]he important interests that the attorney/client privilege protects will be destroyed and such harm ... will be irreparable"). As one court observed in similar circumstances, absent the issuance of a stay pending review, "the cat" will already be "out of the bag," and Merck will suffer irreparable

- 8 -

807172v.1

harm even if the Fifth Circuit thereafter reverses the trial court's rulings. *Terrell v. Schweitzer-Mauduit Int'l, Inc.*, 799 A.2d 667, 671 (N.J. Super. App. Div. 2002).

For example, in *United States v. Diageo, Inc.*, Civ. No. 02-MC-11 (DSD/SRN), 2003 U.S. Dist. LEXIS 8662, at *2 (D. Minn. April 29, 2003), the court concluded a stay was appropriate pending appeal of its order instructing the defendant to produce certain documents to the government. The court granted the motion for stay, reasoning that if the defendant were required to produce the document at issue, but was subsequently successful on appeal, the defendant "would be irreparably harmed" because the privileged nature of the document could not be recovered. *Id.* at *3. Similarly, in *Walter E. Lynch & Co. v. Fuisz*, 862 A.2d 929 (D.C. 2004), appellant moved for a stay pending appeal of the lower court's order granting a motion to compel certain documents the party contended were protected by the attorney-client privilege. The court granted the motion, reasoning that the defendant "faces irreparable harm since the confidentiality protected by the privilege cannot be restored once disclosed." *Id.* at 933.

The same is true here. Absent a stay, this Court will release to opposing counsel thousands of pages of documents that Merck believes are legitimately privileged, including documents that state courts presiding over Vioxx litigation have found to be legitimately privileged. The release of these documents will have a reverberating effect on the entire Vioxx litigation, since counsel in all state court cases nationwide presumably will gain access to all the documents at issue as well – and this very large and unwieldy cat could never be put back in the bag.

### C.     The PSC Will Not Be Substantially Harmed By Issuance Of A Stay.

The third factor also weighs in favor of a stay because the PSC will not be substantially harmed by the issuance of a stay pending appellate review of the Court's privilege decisions. Although a stay pending appeal will result in some delay in production of the documents at issue, that does

807172v.1

not constitute a substantial injury for purposes of analyzing whether Merck is entitled to a stay. *See, e.g., United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003); *C.B.S. Employees Fed. Credit Union v. Donaldson Lufkin & Jenrette Sec. Corp.*, 716 F. Supp. 307, 310 (W.D. Tenn. 1989) ("Though the Court notes that delay in trial will inherently impose some disadvantage on plaintiff, the Court does not find this disadvantage equivalent to 'substantial injury' . . . .").

In *Philip Morris*, the defendant sought an emergency stay pending expedited appeal of a district court discovery order requiring the defendant to produce to the government an allegedly privileged document. 314 F.3d at 614. The government opposed the stay, arguing, *inter alia*, that "a stay would delay the trial schedule set by the district court and harm the government's ability to conduct discovery in this case." *Id.* at 622. The D.C. Circuit disagreed and granted the stay, reasoning that "mere assertion of delay does not constitute substantial harm." *Id.* Furthermore, the court observed that some delay would accompany almost any interlocutory appeal, and any delay would be minimized by expedited hearing of the appeal. *Id.*

The same is true here. The next MDL trial, *Barnett v. Merck*, is not slated to begin until July 24, 2006. Moreover, Merck is also seeking, as did the defendants in *Philip Morris*, an expedited hearing of its appeal. Accordingly, any harm to plaintiffs from a stay would be minimal and would not outweigh the irreparable harm to Merck of releasing the documents prior to appellate review.

### D.     The Public Interest In Protecting Privileged Communications In This Case Requires Imposition Of A Stay.

Finally, the public interest in safeguarding the attorney-client privilege requires imposition of a stay in this case. The attorney-client privilege, one of the oldest recognized privileges protecting confidential communications, is vital to the administration of justice. The privilege encourages

807172v.1

"full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). *See also Hunt v. Blackburn*, 128 U.S. 464, 470 (1888), *cited in Swidler*, 524 U.S. at 403 ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.").

For this reason, courts have concluded that the public interest weighs in favor of issuance of a stay pending resolution of an appeal where the attorney-client privilege is at issue. *See Jones*, 1999 WL 1057210, at *3. In *Jones*, an intervenor sought appellate review and a stay of a district court order denying his request to have his attorney present during questioning of the defendant. In granting the motion to stay its own order, the district court observed that: "An order which does not protect the attorney/client privilege weighs against the public's interests." *Id.* The same consideration applies with equal force here. Despite this Court's obvious disagreement with Merck's assertion of the attorney-client privilege as to many documents, protection of the sanctity of the attorney-client privilege is an important public interest that would be compromised if the Court released Merck's documents without providing an opportunity for appeal. For this additional reason, a stay of the Court's privilege rulings is appropriate.

807172v.1

## CONCLUSION

For the foregoing reasons, Defendant Merck & Co., Inc. respectfully requests that the Court grant its Motion for Stay pending disposition of its appeal and alternative petition for writ of mandamus to the Fifth Circuit.

Respectfully submitted,

\

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE        PIGMAN        WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

807172v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion to Stay has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 24th day of April, 2006.

_____

807172v.1