FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 25  PM 12: 50

LORETTA G. WHYTE
CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX MARKETING, SALES | § | MDL NO. 1657 |
| PRACTICES AND PRODUCTS LIABILITY | § | |
| LITIGATION | § | SECTION L |
| | § | |
| | § | JUDGE ELDON E. FALLON |
| | § | |
| | § | MAGISTRATE JUDGE |
| | § | DANIEL E. KNOWELES, III |

**THIS DOCUMENT RELATES TO:**

| | | |
|---|---|---|
| ROBERT J. BENOIT, JR., INDIVIDUALLY, | § | |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF JOEL MICHELE | § | |
| SCHUMACHER-BENOIT; AND ROBERT | § | |
| BENOIT, JR., AS NEXT FRIEND OF | § | |
| ABIGAIL RAE SCHUMACHER-BENOIT, | § | |
| A MINOR | § | |
|      **Plaintiffs** | § | |
| | § | |
| VS. | § | Civil Action No.    05-6040 |
| | § |           SECT. L MAG. 3 |
| MERCK & CO., INC. | § | |
|      **Defendant** | § | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

COMES NOW, ROBERT J. BENOIT, JR., INDIVIDUALLY AND AS

REPRESENTATIVE OF THE ESTATE OF JOEL MICHELE SCHUMACHER-BENOIT, and

ROBERT J. BENOIT, JR. AS NEXT FRIEND OF ABIGAIL RAE SCHUMACHER-BENOIT,

A MINOR, hereinafter referred to as Plaintiffs, and complains of the following multiple causes

of action against Defendant, MERCK & CO., INC., and for causes of action would show the

Court and Jury as follows:

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

## I.    **PARTIES**

2.      ROBERT J. BENOIT, JR. is an individual who is a citizen of the state of Louisiana and is the Representative of the Estate of JOEL MICHELE SCHUMACHER-BENOIT. JOEL MICHELE SCHUMACHER-BENOIT was a citizen of the state of Louisiana at the time of her death. ABIGAIL RAE SCHUMACHER-BENOIT, A MINOR is an individual who is a citizen of the state of Louisiana.

3.      Defendant, MERCK & CO., INC., is a New Jersey corporation, with its principal place of business in New Jersey. Plaintiffs intend to sue that group or association doing business as Merck, who manufactured, promoted, sold and distributed the drug Vioxx to pharmacies and physicians worldwide and in the United States, and specifically in Texas. Plaintiffs intend to sue the private corporation, individual unincorporated association and/or partnerships doing business under the name of "Merck", which manufactured, sold and was responsible for the marketing of Vioxx in the United States. Plaintiffs reserve the right, if needed, to add or amend any formal names to properly reflect the correct party. MERCK & CO., INC. has been served with process and has entered an appearance herein.

## II.    **JURISDICTION**

4.      This court has jurisdiction over this lawsuit under 28 USC § 1332 (a) (1) because the plaintiffs and the defendant are citizens of different states and the amount in controversy exceeds $75,000.00 excluding interest and costs.

## III.   **FACTS**

5.      Plaintiffs maintain that the pharmaceutical drug Vioxx is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked the proper warnings as to the dangers associated with its ingestion.

6.      At all times relevant and material hereto, Merck acted and gained knowledge itself and by and through its various agents, servants, employees, and/or ostensible agents.

7.      Decedent was prescribed and ingested the drug Vioxx as directed by a physician in 2004.

8.      Decedent suffered physical injury, death and damages arising from the prescription of Vioxx, including, but not limited to, heart attack, stroke, pulmonary embolism, and/or some other cardiovascular event or condition.

9.      Plaintiffs would also show that nothing the Decedent did contributed in any way to Decedent's injuries and damages.

10.     Decedent was using Vioxx in the manner for which it was intended and/or in a reasonably foreseeable manner.  Decedent was not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx.

11.     Plaintiffs would show that all injuries and damages were proximately caused by the Defendant's conduct more fully described below.

## IV.   **THEORIES OF RECOVERY**

### A.     **Count I: Strict Products Liability**

12.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

13.     Merck created, manufactured, designed, tested, labeled, packaged, marketed, sold, advertised, distributed, supplied and/or placed into the stream of commerce the dangerous drug Vioxx described herein, which Merck distributed throughout the world, including Texas.  Under the theory of Strict Products Liability, the Plaintiffs would show that the drug Vioxx was defectively designed, marketed, and manufactured and was unsafe for its intended purposes at the time the drug left the control of Merck and was sold.

14.     Decedent was using Vioxx in the manner for which it was intended and/or in a reasonably foreseeable manner.  Decedent was not aware of and reasonably could not have discovered the dangerous nature of Vioxx.

15.     The drug Vioxx was unaccompanied by proper warnings regarding the injuries associated with the use of it and the comparative severity and duration of such injuries.  The warnings given did not accurately reflect the symptoms, scope, frequency, or severity of such injuries.  Additionally, or in the alternative, Merck failed to perform adequate testing in that adequate testing would have shown that Vioxx possessed undisclosed risks of potentially serious injuries.  Full and proper warnings accurately and fully reflecting the symptoms, scope, frequency, and severity of the harm should have been made with respect to the use of this drug.

16.     Merck knew, or should have known, that Vioxx was a dangerously defective drug that posed unacceptable risks of serious injury, which risks were unknown and unknowable by the Decedent.

17.     Vioxx was defective due to inadequate warnings or instructions because, after Merck knew or should have known of the risk of serious injury from Vioxx use, it failed to provide adequate warnings to Decedent and/or Decedent 's physicians, and Merck continued to aggressively promote the dangerously defective product.  Merck failed to provide adequate warnings to Decedent and/or Decedent 's physicians, and Merck continued to aggressively

promote the dangerously defective product.   Merck failed to give warnings (1) that could reasonably be expected to catch the attention of a reasonably prudent person, in the circumstances that the product was used; (2) that were comprehensible to the average user; and (3) that conveyed a fair indication of the nature and extent of the danger.   The failure to give these warnings rendered Vioxx dangerous to an extent beyond that which would be contemplated by the ordinary users of the product with ordinary knowledge common to the community.

18.     The drug Vioxx was defective in design or formulation in this, when it left the hands of the manufacturer and/or distributor, the foreseeable risks far exceeded the benefits associated with the design or formulation.   Alternatively, the drug Vioxx was defective in design or formulation, in that, when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect, and it was more dangerous than other drugs of the same class as Vioxx.

19.     Merck is liable under the theory of Strict Product Liability as set forth in Section 402A of the Restatement of Torts 2d and under Texas Strict Product Liability Law.   Merck was at all times material hereto engaged in the business of designing, manufacturing, distributing, marketing, promoting, and placing into the stream of commerce the drug.   Merck is in the business of selling Vioxx with the expectation that such product would reach the user without substantial change in the condition in which it was sold.   The drug Vioxx reached the ultimate users without substantial change in the condition in which it was sold.

### B.     Count II: Negligence

20.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

21.     Merck was negligent in designing, manufacturing, marketing, promoting,

5

distributing and placing into the stream of commerce, a product that they knew or should have known was not safe. Merck was also negligent in the post-market safety surveillance of such drugs, and negligently failed to detect and warn about the increased frequency of adverse events associated with such drug. Merck negligently failed to adequately warn Decedent and/or Decedent 's physicians about the adverse events associated with Vioxx. Further, Merck failed to warn the Decedent and/or Decedent 's physicians or the public that Vioxx was not safe. Merck assumed a duty to warn the Decedent directly, because Merck voluntarily contacted entities other than the Decedent 's physicians when marketing and aggressively promoting this drug. Further, Merck failed to first determine that the product was safe for all applicable foreseeable uses.

### C.    Count III: Misrepresentation and Fraud

22.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

23.    Merck, through advertising, labeling, and other communications, made misrepresentations to physicians and the public, including the Decedent and/or Decedent's physicians, about the safety and efficacy of Vioxx for controlling pain caused by inflammation. Physicians and their patients, including the Decedent and Decedent's physicians, justifiably relied on Merck's misrepresentations and were harmed as a result. Plaintiffs are entitled to recover damages since such damages were produced by Merck's misrepresentations. See Restatement (Second) of Torts §402B.

24.    Further, Merck, through advertising, labeling, promotion, and other communications intentionally made misrepresentations to physicians and the public, including the Decedent and/or Decedent's physicians, about the safety and efficacy of Vioxx for controlling

6

pain. From its inception until its withdrawal, the labeling for Vioxx and other representations of Merck were inaccurate and misleading.

25.     Plaintiffs would also show that Merck knew, or should have known, that Vioxx was not as effective as competing anti-inflammatory pain medications, but Merck chose to disregard, downplay, and conceal that information.  This conduct constitutes an intentional and/or negligent misrepresentation and concealment.

26.     Physicians and their patients, including the Decedent and/or Decedent's physicians, relied on Merck's fraudulent misrepresentations, and Decedent was harmed as a result.  Further, because Merck's conduct was willful, reckless, intentional and maliciously fraudulent, Plaintiffs are entitled to an award of exemplary damages in order to punish such conduct and to deter such conduct in the future.

**D.     Count IV: Civil Conspiracy**

27.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

28.     Merck committed civil conspiracy in that fiduciaries of Merck knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon Physicians, pharmacists and insurance companies for the purpose of these entities continued to use the drug Vioxx, to switch patients from other and more effective anti-inflammatory drugs to Vioxx, and to convince their patients and others of the safety and effectiveness of Vioxx.

### E. Count V: Breach of Implied Warranty of Merchantability

29.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

30.     Defendant's Vioxx was not of merchantable quality and not fit for the ordinary purposes for which such a product is used.

31.     At the time Merck marketed, sold and distributed Vioxx for use by Decedent, Merck impliedly warranted the product to be fit for a particular purpose and for the ordinary purpose for which such product was to be used, i.e., the treatment of arthritis pain and acute pain. Merck had reason to know of the particular purpose for which Vioxx was required.  Decedent and/or Decedent's physicians reasonably relied upon the skill and judgment of Defendant to select or furnish a suitable product that was of merchantable quality and safe for its intended use.

32.     As a direct and proximate result of Defendant's defective and unreasonably dangerous product Vioxx and the breach of these implied warranty of merchantability, Decedent was injured.

### F. Count VI: Breach of the Implied Warranty of Fitness for a Particular Purpose

33.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

34.     Defendant's Vioxx was not fit for its particular purpose of safely treating arthritis pain or acute pain.

35.     Defendant Merck actually and/or constructively knew of the purposes to which its Vioxx was to be used.

36.    Decedent relied upon Defendant to furnish Vioxx in a condition suitable for its particular purpose.

37.    As a direct and proximate result of Defendant's defective and unreasonably dangerous product Vioxx and its breach of implied warranty of fitness for a particular purpose, Plaintiffs were harmed as alleged herein.

**G.    Count VII: Breach of Express Warranty**

38.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, allege as follows:

39.    Merck expressly warranted to Decedent and/or Decedent's physicians that Vioxx was safe and effective when Merck knew the product had never been proven as safe and effective, when Merck knew that substantial questions existed with respect to the safety and efficacy of this product, and when, in fact, the product was not safe or effective for all foreseeable uses.

**H.    Count VIII: Gross Negligence/Malice**

40.    Plaintiffs also allege that the acts or omissions of Merck, whether taken singularly or in combination with others, constitute gross negligence/malice that proximately caused the injuries to Decedent.  Merck's conduct was more than momentary thoughtlessness or mere inadvertence, but it amounted to such an entire want of care so as to constitute gross negligence, malice, under that term as defined in Tex.Civ.Prac. & Rem.Code, Sec. 41.001, et seq., and a "knowing" injury under the Texas Civil Practice and Remedies Code and Texas Penal Code (sec. 22.04) to individuals, including to the Plaintiffs herein.  Thus, Plaintiffs seek exemplary damages in an amount that would punish Merck for its unconscionable conduct and which would deter

other similarly situated drug manufacturers, distributors, and promoters from engaging in such misconduct in the future.

<h2 style="text-align:center">V.    <u>AGENCY</u></h2>

41.    Whenever in this petition it is alleged that Merck did any act or thing, it is meant that it performed or participated in such act or thing, or that such act was performed by the officers, agents, employees or representatives (including, but not limited to "detail men" and salespersons) of Merck.  In each instance, the officers, agents, employees or representatives of Merck were then authorized to and did in fact act and/or make representations on behalf of Merck, or otherwise acted under the guidance and direction of Merck and Merck ratified all such acts.

<h2 style="text-align:center">VI.    <u>ALLEGATIONS AND CAUSES OF ACTION IN THE ALTERNATIVE</u></h2>

42.    All factual allegations and/or causes alleged by Plaintiffs herein are made in the alternative.

<h2 style="text-align:center">VII.    <u>CAUSATION</u></h2>

43.    Each of the aforementioned acts, omissions, negligence, gross negligence, malice, and/or knowing injury to the elderly, breaches of warranty, and/or defective products of Merck was a proximate and/or a producing cause of the injuries to Decedent.

<h2 style="text-align:center">VIII. <u>DAMAGES</u></h2>

44.    As a result of the incident made the basis of this lawsuit, described in the preceding paragraphs, and the negligence of Defendant, Decedent sustained significant injuries and damages.

45.    Due to the gravity of the injuries stated above, Decedent had to seek reasonable and necessary medical care and attention, and this caused Plaintiffs to incur reasonable and

necessary medical expenses for the treatment of Decedent's injuries.

46.     Further, Decedent suffered mental anguish with physical manifestations as a result of this incident.

47.     Further, Decedent suffered physical impairment as a result of this incident.

48.     Further, Decedent suffered lost wages and a loss of earning capacity in the past.

49.     Damages in this case are above the minimum jurisdictional limits of this Court.

50.     Plaintiffs seek reasonable attorney's fees, to the extent allowed, and costs.

51.     Plaintiffs also seek exemplary and/or punitive damages from Defendant Merck, as allowed by law, to set an example and to prevent wrongful conduct in the future.

52.     Plaintiffs seek both prejudgment and post-judgment interest as allowed by law, for all costs of court, actual damages, compensatory damages, exemplary damages, punitive damages and all other relief, both in law and in equity, to which Plaintiff may be entitled.

## IX.     **JURY DEMAND**

53.     Plaintiffs respectfully demand a trial by jury.


FOR THESE REASONS, Plaintiffs requests that the Defendant be cited to appear and answer herein, and that upon final trial, Plaintiffs have:

   a.   judgment in Plaintiffs' favor and against the Defendant, Merck;

   b.   all damages as fully described in the petition above, including, but not limited to, physical pain and mental anguish, physical disfigurement, physical impairment, loss of earning capacity, lost wages, and the cost of reasonable medical care;

   c.   exemplary and punitive damages in an amount in excess of the jurisdictional limit;

   d.   reasonable attorney's fees, to the extent allowed by law, and expenses;

11

e.   all elements of interest, including, but not limited to, pre-judgment and post-judgment interest in the maximum amount as allowed by law;

f.   costs of court; and

g.   such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**THE O'QUINN LAW FIRM**


**JOHN R. LEACH, III** (SBN 12084500)
**ABEL MANJI** (SBN 00784520)
440 Louisiana, Suite 2300
Houston, Texas  77002
Telephone:  713-223-1000
FAX:  713-223-4870

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiff's First Amended Original Petition has been served on Liaison Counsel, Russ Herman  and Phillip Wittmann, by U.S. Mail and by electronically uploading the same to LexisNexis file & serve Advanced in accordance with the Federal Rules of Civil Procedure on this the 24th day of April, 2006.


JOHN R. LEACH, III (SBN 12084500)