## UNITED STATES DISTRICT COURT

## DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX,: | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| | JUDGE FALLON |
| This Document Relates To All Class Actions | MAG. JUDGE KNOWLES |

## MEMORANDUM IN SUPPORT OF THIRD PARTY DAVID GRAHAM'S EMERGENCY MOTION TO QUASH SUBPOENA

**MAY IT PLEASE THE COURT:**

Third party David J. Graham, M.D., respectfully submits this Memorandum in support of his motion to quash the subpoena issued by Defendant Merck & Co., Inc. in this matter upon third party Microsoft Corporation.  The Merck subpoena requests, inter alia, nearly seven years worth of e-mail from Dr. Graham's private internet service provider, Microsoft.  In particular, it seeks not only all of Dr. Graham's e-mail communications to or from anyone, on all topics without limitation but also the communications to and from his entire family, including his wife and six(6) children who use this family address.   This overbroad request strays, both temporally and topically, far beyond the boundaries of Dr. Graham's testimony in this matter, as set by this Court.  Moreover, it strays far beyond the original subpoena Merck issued to Dr. Graham on April 4, 2006 (Attached as Exhibit A).  This unduly burdensome request violates Dr. Graham's and his family's privacy, and the provisions and policies of federal statutes designed to protect it.  It would subject both Microsoft Corp. and Dr. Graham and his counsel to

-1-

tremendous and unnecessary time and expense. Most fatally, the subpoena to Microsoft is not calculated to result in the discovery of any admissible evidence in this matter.

## I.      INTRODUCTION AND PROCEDURAL BACKGROUND

On March 13, 2006, this Court issued its ORDER & REASONS denying the United States' motion to quash Dr. Graham's deposition, and granting the Plaintiffs' Steering Committee's cross-motion to compel Dr. Graham's deposition in this matter. This Court's thorough analysis and reasoning on these cross-motions is published as In re: Vioxx Products Liability Litigation, 2006 U.S. Dist. LEXIS 10477 (E.D. La. 2006). This Court's decision carefully defines and limits the scope of the deposition that Dr. Graham has been ordered to give in this litigation. This Court has expressly ordered the deposition to proceed "expeditiously," and directed "that the scope of the deposition shall be limited to matters relevant to this litigation and to which Dr. Graham has previously addressed." 2006 U.S. Dist. LEXIS 10477, *43.

In short, this Court allowed the parties to this litigation to depose Dr. Graham so that the public and non-FDA statements and Congressional testimony he has already given could be subjected to cross-examination, and thus recorded in a form that "would be admissible at trial." Id. at *40. As this Court emphasized, "this ruling is not a blank check written to the PSC, Merck, or any other litigant." Id. at *37.

In the wake of this Court's ruling, Dr. Graham's deposition has been scheduled herein, to take place on May 9, 2006. On April 3, 2006 Defendant Merck served a subpoena on Dr. Graham, attached hereto as Exhibit A, requesting ten categories of documents, set forth below:

> 1.      All documents in your possession relating to or referencing Vioxx.
>
> 2.      All documents in your possession relating to or referencing the Kaiser study.

3.     All drafts of the Kaiser study, including draft manuscripts, tables and figures.

4.     All documents in your possession relating to communication with Dr. Eric Topol concerning Vioxx or Merck.

5.     All documents in your possession relating to communication with persons employed by The Lancet, including but not limited to Dr. Richard Horton, concerning the Kaiser study.

6.     All documents in your possession relating to communication with David Campen, Rita Hui, Michele Spence, Craig Cheetham, Gerald Levy, Stanford Shoor and Wayne A. Ray concerning the Kaiser study.

7.     All documents in your possession relating to communication with any attorney who represents a person in a lawsuit against Merck related to Vioxx.

8.     All documents in your possession relating to communication with any member of the press relating to Vioxx or Merck.

9.     All documents in your possession relating to or referencing your testimony before the Finance Committee of the U.S. Senate on November 18, 2004.

10.     All documents in your possession relating to communication with any person employed by the United States Senate or United States House of Representatives relating to Merck, Vioxx, or your testimony before the Finance Committee of the U.S. Senate on November. 18,2004.

On April 24, 2006, in response to the subpoena, Dr. Graham filed a declaration which explained that he did not have any documents responsive to any of the subpoena's requests. As Dr. Graham explained, "Prior to February 8, 2006, I had a small number of e-mail messages, likely fewer than 10, that may have been responsive to Requests 1, 2, 3, 5, 6 and/or 9 of the Subpoena on the hard drive of my home computer. However . . . those e-mail messages have been lost." (Graham Decl. ¶ 5.) As Dr. Graham's declaration further explained, his home computer had stopped functioning on February 2, 2006. It was brought to a computer store to be repaired. The repair technician determined that the computer was infected with multiple viruses,

-3-

and that its hard drive needed to be erased. This was done, and no files were able to be saved or recovered. The computer repairs were completed on February 9, 2006, nearly two months before Merck issued its subpoena.

In response to the information that "a small number of e-mail messages, likely fewer than ten, that may have been responsive" to the subpoena had been unavoidably lost well before the subpoena was issued (and, for that matter, before Dr. Graham had become subject to deposition in this litigation), Merck retaliated, issuing a subpoena to the Microsoft Corporation, Dr. Graham's internet service provider ("ISP"), that sought to obtain all of Dr. Graham's account information, and his e-mail messages from May 20, 1999 to the present: a nearly seven-year period. Merck's subpoena to Microsoft (attached hereto as Exhibit B) is breathtaking in scope. It requests:

> 1.      All documents providing account information, including subscriber and billing information, for the account/address hvlabrook1@msn.com from May 20, 1999 to present.

> 2.      All documents (preferably produced on compact discs) in electronic format), including all e-mails, all e-mail attachments, and all header information, that were sent to, sent from, or stored at the account/address hylabrookl@msn.com from May 20,1.999 to present.

> 3.      All messages, communications, or other documents in your possession that were sent or received by the account/address hylabrookl@msn.com from May 20, 1999 to present using any instant messaging service provided by Microsoft and/or MSN, including but not limited to messages, communications, or other documents sent or received with MSN Messenger and/or MSN Web Messenger.

> 4.      All logs, records, or other documents relating to visits to or postings on any chat room, group, message board or other online forum hosted at any MSN or Microsoft website by a user of the account/address hylabrookl@msn.com from May 20, 1999 to present.

## II.   LAW AND ARGUMENT

This Court ordered Dr. Graham to make himself available for deposition, including cross-examination, on his public statements and opinions, providing that "the scope of the deposition shall be limited to matters relevant to this litigation and to which Dr. Graham has previously addressed."   Merck's subpoena to Microsoft goes far beyond the limits of discovery set by this Court as to Dr. Graham's testimony in this matter.  Indeed, it goes far beyond that which Merck initially thought proper when it served its original April 3 subpoena on Dr. Graham.  Specifically, it subjects Dr. Graham and his family's privacy to invasion by Merck, in a move clearly calculated to intimidate Dr. Graham who is not a party to the litigation, only an involuntary (subpoenaed) witness.

Further, compliance with these requests could subject Microsoft Corporation to civil liability and statutory damages resulting from breach of the Stored Wire and Electronic Communications and Transactional Records Act, 18 U.S.C. §§ 2701; 2702; 2707.  Production of the many thousands of records encompassed by the subpoena would subject Dr. Graham and his counsel to the burden of time-consuming review to find the handful (if any) of communications, within these many thousands, which are actually responsive, relevant, and non-privileged.[1] Furthermore, Dr. Graham would incur tremendous legal fees trying to defend against this gross

---

[1] At the very least, the undersigned assumed that the e-mails would not be produced directly by Microsoft to Merck, but would be made available to Dr. Graham and his counsel, to review for relevance and privilege.  Unlike Merck, a party to this litigation, Dr. Graham was under no obligation to retain his e-mail records for any period of time; indeed, it is Dr. Graham's long-established practice to delete e-mails as soon as he reads them. Merck's subpoena, by contrast, goes back nearly seven years.  Merck's subpoena, if allowed to stand, would set a disturbing precedent under which third parties (and, in the case of companies such as Microsoft, third parties once removed) could turn over the entireties of their electronic records, relevant or not; or to have these turned over by their internet providers.  Third parties would no longer have the choice and freedom to determine how, and for how long, they kept their electronic records in the normal course of business.

invasion of his privacy. Merck's subpoena to Microsoft violates the letter, the spirit, and the policy considerations, of this Court's order, and should be quashed as overbroad, irrelevant, cost-ineffective, intrusive, and harassing.

A.   **Dr. Graham Has Standing Under Rule 45 To Quash Merck's Subpoena To Microsoft**

Rule 45(c)(3)(A) requires, on timely motion, the court by which a subpoena was issued to quash or modify the subpoena if it, inter alia, "(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). In its search for the 5 or 10 e-mails that may have been responsive to Merck's original subpoena, Merck's subpoena of nearly seven years' worth of all Dr. Graham and his family's personal and, for the most part unrelated, internet correspondence and ISP account information (including billing records) requires a quash on all counts.

Dr. Graham and his family, as Microsoft's ISP customers, have a personal right with respect to his email and account records, stored by Microsoft, which are the subjects of Merck's subpoena. This personal right gives Dr. Graham standing to move to quash the subpoena. Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588 (D. Kan. 2003); Smith v. Midland Brake, Inc., 162 F.R.D. 683 (D. Kan. 1995). This standing is well established in analogous circumstances, such as the standing of subscribers to quash subpoenas seeking production of telephone company records. Broadcourt Capital Corp. v. Flagler Securities, Inc., 149 F.R.D. 626 (D. Colo. 1993). The federal courts have also recently recognized such standing, and granted motions to quash, brought by persons whose e-mail records were sought by subpoenas directed to ISPs. Quinby v. WestLBag, 2006 U.S. Dist. LEXIS 1178 (S.D.N.Y.

2006).[2]

**B.    The Subpoena Is Overbroad and Requests Irrelevant Information**

Merck's subpoena is an attempted end-run around the bright-line boundaries this Court set with respect to Dr. Graham's testimony herein. This testimony is limited to the public statements and non-FDA statements Dr. Graham has already made: there are no new statements or subject areas for Merck to discover, by any means, including subpoenas issued to third parties-once-removed, like Microsoft. This Court directed Dr. Graham to testify at deposition in this litigation so that these statements could be articulated in a format that was subject to cross-examination, and hence admissible as evidence at trials. In re: Vioxx, supra, 2006 U.S. Dist. LEXIS 10477 at *39-40. Hence, by definition, none of the requests contained in Merck's subpoena to Microsoft can result in admissible evidence. The subpoena thus flunks the threshold test for discovery under the Federal Rules: it does not appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Merck need not scrutinize seven years' worth of all of Dr. Graham's e-mail communications (not to mention his bills and account information) in order to ascertain any information pertinent to the scope or content of Dr. Graham's testimony herein. Merck already has complete access, in the public forum, as to Dr. Graham's opinions, statements to the media, and Congressional testimony. As this Court stated, "None of the documents provided by the FDA could express Dr. Graham's opinion with the clarity and tone as he personally can in his deposition." 2006 U.S. Dist. LEXIS 10477, *40.

**C.    The Subpoena Is Unduly Burdensome**

Rule 26 provides for the disclosure of documents in the deponent's possession,

---

[2] To the extent Dr. Graham's standing to quash under Rule 45 may be challenged, he moves hereby for a functionally equivalent protective order under Fed. R. Civ. P. 26(a). See Washington v. Thurgood Marshall Academy, 230 F.R.D. 18, 22 (D. D.C. 2005).

custody, or control.  The mere handful of e-mails that might have been responsive to Merck's

subpoena to Dr. Graham were, at the time of that subpoena's issuance, no longer in

Dr. Graham's possession, custody, or control:  they had been unavoidably destroyed when

Dr. Graham's personal computer was repaired in February, 2006.  So long as his e-mails were

not intentionally destroyed to avoid disclosing them in the litigation  — and they were not —

Dr. Graham was free to delete any emails he did not want to keep; indeed, he would have been

free to discard or sell his personal computer.

      Microsoft Corporation is Dr. Graham's internet service provider ("ISP"), not his

document storage agent.  If this Court were to accept the policy premise behind Merck's

subpoena to Microsoft, it would in effect be declaring that ISPs are document and business

records storage agents-at-large, and that they are obligated, on a generalized basis, to produce

vast arrays of data as perpetual third parties in all civil litigation.  The document retention

policies of individuals and businesses would no longer be effective; instead, all documents would

be preserved indefinitely, and available for wholesale production, regardless of relevance,

proportionality, or expense.  Most corporations that find themselves named as defendants in

complex civil litigation are seeking to persuade the courts to limit the obligation to produce e-

mails and other electronic discovery; not to expand such discovery to the point of infinity.

      Indeed, even were Merck's subpoena unobjectionable on any other grounds, it

would be subject to quash as violative of the Federal Rules' doctrine and policy of

proportionality in discovery.  See, e.g., Fed. R. Civ. P. 1; 16(c)(4), (6), (12), (16).  Thus, the

subpoena could be quashed as a Rule 26(b)(2) limitation on discovery whose burden or expense

outweighs its likely benefit; or which is "unreasonably cumulative or duplicative, or is obtainable

from some other source that is more convenient, less burdensome, or less expensive."  Fed. R.

Civ. P. 26(b)(2)(i).  Here, of course, any few passages that might ultimately be extracted, like a

needle from the vast haystack of seven years worth of e-mails (without limitation on subject

matter of sender or recipient) Merck asks Microsoft to disgorge, are, to the extent discoverable at

all in this matter, already reflected in statements on the public record.  Subpoenas that seek only

irrelevant documents are apt to be summarily quashed under Fed. R. Civ. P. 45.  Optistreams,

Inc. v. Gahan, 2006 U.S. Dist. LEXIS 21680, *34 (E.D. Cal. 2006).

      Soon-to-be-enacted amendments to Rule 26(b)(2), which specifically deal with

inaccessible electronic data, also militates against allowing Merck to demand that MSN produce

all of Dr. Graham's e-mails for the last seven years.[3]  While Rule 26(b)(2) deals with a

producing "party's" obligations, this court should look to the new Rule for guidance in this

situation.

      The amendment to Rule 26(b)(2)(B) limits parties' preservation and production

obligations of electronically stored information.  Under the amendment, "A party need not

provide discovery of electronically stored information that the party identifies as not reasonably

accessible because of undue cost or burden."   Discovery of "inaccessible" electronic

information can be had only upon a showing of "good cause" with a consideration of the factors

articulated in Rule 26(b)(2)( C).  One commentator has noted the "by creating the distinction

between 'not reasonably accessible' and "accessible' electronic information, burdensome

production that cannot be justified by the needs of the case should be reduced."[4]

---

[3]    On April 12, 2006, the Supreme Court of the United States approved new rules
and amendments proposed by the Judicial Conference.  The new rules and
amendments have been transmitted to Congress and will take effect on December
1, 2006, unless Congress enacts legislation to reject, modify, or defer the
amendments. http://www.uscourts.gov/rules/

[4]    ALFRED W. CORTESE, Jr., "Federal 'E-Discovery' Rules Proposal Requires
(footnote continued on following page)

The Committee Notes to new Rule 26(b) states that "The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case." The Notes state that appropriate considerations may include:

(1) the specificity of the discovery request;
(2) the quantity of information available from other and more easily accessed sources;
(3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources;
(4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources;
(5) predictions as to the importance and usefulness of the further information;
(6) the importance of the issues at stake in the litigation; and
(7) the parties' resources.

As mentioned, the burdens of time and expense to which production under this subpoena would subject Dr. Graham far outweigh the benefit that any tangentially relevant document produced under the subpoena might confer.  The Notes also state that "The requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information."   Merck's fishing expedition can not meet its burden under this standard.

**D.   Microsoft's Production Of Dr. Graham's E-Mails And Account Information Is Unlawful Under 18 U.S.C. §§ 2701, Et Seq.**

In 1986, Congress enacted the Stored Wire And Electronic Communications And Transactional Records Act, 18 U.S.C. §§ 2701, et seq., to protect stored electronic communications from intentional or inadvertent disclosure.  The Act has been refined and

---

(footnote continued)

Scrutiny and Comment" MEALEY'S LITIGATION REPORT: DISCOVERY, January 2005.

amended over the years, and protects Internet and e-mail users from disclosure of their private

communications by internet service providers ("ISPs"). The Act's § 2702(a)(1) prohibits ISPs

from knowingly divulging the contents of communications in electronic storage to any person or

entity, without the lawful consent of a party to the communication. None of the Act's specified

exceptions applies here.[5] The punishment for a violation of § 2701(a) is "a fine under this title or

---

[5] **§ 2702.  Voluntary disclosure of customer communications or records**
    **(a) Prohibitions.**—Except as provided in subsection (b)—
        (1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and
        (2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service—
            (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service;
            (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing; and
        (3) a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.
    **(b) Exceptions for disclosure of communications.**—  A provider described in subsection (a) may divulge the contents of a communication—
        (1) to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient;
        (2) as otherwise authorized in section 2517, 2511(2)(a), or 2703 of this title;
        (3) with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service;
        (4) to a person employed or authorized or whose facilities are used to forward such communication to its destination;
        (5) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service;
        (6) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 227 of the Victims of Child Abuse Act of 1990 (42 U.S.C. 13032);
        (7) to a law enforcement agency—
            (A) if the contents—

(footnote continued on following page)

imprisonment for not more than 1 year or both, in the case of a first offense . . ." 18 U.S.C.

§ 2701(b)(2).[6] 18 U.S.C. § 2707(a) provides a private right of action to those aggrieved by such

---

(footnote continued)

> (i) were inadvertently obtained by the service provider; and
> (ii) appear to pertain to the commission of a crime; or
> [(B) Repealed. Pub.L. 108-21, Title V, § 508(b)(1)(A), Apr. 30, 2003, 117 Stat. 684]
> [(C) Repealed. Pub.L. 107-296, Title II, § 225(d)(1)(C), Nov. 25, 2002, 116 Stat. 2157]
>
> (8) to a Federal, State, or local governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency.
>
> **(c) Exceptions for disclosure of customer records.**—A provider described in subsection (a) may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by subsection (a)(1) or (a)(2))—
>
> > (1) as otherwise authorized in section 2703;
> > (2) with the lawful consent of the customer or subscriber;
> > (3) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service;
> > (4) to a governmental entity, if the provider reasonably believes that an emergency involving immediate danger of death or serious physical injury to any person justifies disclosure of the information;
> > (5) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 227 of the Victims of Child Abuse Act of 1990 (42 U.S.C. 13032); or
> > (6) to any person other than a governmental entity.

[6] **§ 2701. Unlawful access to stored communications**

> **(b) Punishment.**—The punishment for an offense under subsection (a) of this section is—
>
> > (1) if the offense is committed for purposes of commercial advantage, malicious destruction or damage, or private commercial gain, or in furtherance of any criminal or tortious act in violation of the Constitution; or laws of the United States or any state—
> > > (A) a fine under this title or imprisonment for not more than 5 years, or both, in the case of a first offense under this subparagraph; and
> > > (B) a fine under this title or imprisonment for not more than 10 years, or both, for any subsequent offense under this subparagraph; and
> > (2) in any other case—
> > > (A) a fine under this title or imprisonment for not more than 1 year or both, in the case of a first offense under this paragraph; and
> > > (B) a fine under this title or imprisonment for not more than 5 years, or both, in the case of an offense under this subparagraph that occurs after a conviction of another offense under this section.

ISP disclosures.  The defense to civil liability is, under 18 U.S.C. § 2707(e), a "good faith reliance" on a court warrant or order, grand jury subpoena, legislative authorization, or statutory authorization, or certain other law enforcement investigative requests.  These statutory prohibitions on, and penalties for, ISP disclosure of stored e-mail communications demonstrate a public policy in favor of the expectation and implementation of ongoing privacy regarding those records, and require far more than a civil subpoena to require or justify such wholesale and indiscriminate production as Merck's subpoena requests.

E.     **Other Courts Have Ruled That Overbroad Requests For Production Of Irrelevant E-Mails Violate Rule 45 And Should Be Quashed**

The January 11, 2006 decision by the Southern District of New York in a case involving a similarly overbroad e-mail subpoena is particularly instructive here.  In Quinby v. WestLBag, 2006 U.S. Dist. LEXIS 1178, the plaintiff, a former employee embroiled in a gender discrimination suit with her former employer, moved to quash two subpoenas served by defendant on her ISPs, Time-Warner Cable of New York City, and Roadrunner Corp.  The improper subpoena in Quinby sought:

> all e-mails sent to or received by plaintiff's personal e-mail account during the period from October 2002 throughout July 2004, other than e-mails between plaintiff and her current and former counsel.

2006 U.S. Dist. LEXIS 1178 at *1.

In Quinby, the defendant claimed the subpoenas were appropriate, because discovery had shown that plaintiff had not otherwise produced all of the e-mails that she should have.  As the court remarked, "the premise underlying defendant's argument appears to be that plaintiff's failure to produce these e-mails demonstrates that plaintiff cannot be trusted to review her own e-mails properly, and that all of plaintiff's non-privileged e-mails should, therefore, be produced, without regard to whether they relate to her claims." Id. at *2.  The Quinby court

found that defendant's ISP subpoenas were "clearly overbroad and are quashed for that reason," id. at *3, because "defendant's subpoenas seek all of plaintiff's personal e-mails over an almost two-year period without any limitation concerning subject matter."

Merck's ISP subpoena goes much farther than the subpoenas quashed in Quinby: it seeks nearly seven years' worth of all of Dr. Graham's personal e-mails, likewise "without any limitation concerning subject matter."

As the Quinby decision observes,

> Assuming plaintiff's personal e-mail accounts are similar to those of most individual's, these subpoenas would yield a vast amount of irrelevant material, including 'spam' e-mails, Internet purchase orders and confirmations, personal correspondence, confirmations of medical appointments and the whole raft of communications that are now routinely made over the Internet.  Although the vast majority, if not all, of this material is, no doubt, innocuous, that is not the touchstone for discovery; in order to be discoverable, the material sought must be 'not privileged' and 'relevant to the claim or defense of any party.' *Fed. R. Civ. P. 26(b)(1).* Defendant's subpoenas entirely ignore the requirement that a discovery request be limited to relevant material.

Here, too, Merck's subpoena bears a similar fatal flaw:  it seeks a "whole raft of communications that are now routinely made over the Internet," over an even longer span of time (more than three times the time period condemned as too broad in Quinby) and would yield a vast array of irrelevant, privileged and private material.

In response to the Quinby defendant's argument that such broad production was necessary because plaintiff had not otherwise completely complied with its requests for production of irrelevant e-mails, the court analyzed the requests and responses, and found plaintiff's responses to be appropriate.  Dr. Graham's responses to the subpoena are similarly appropriate here, and, it bears repeating, Dr. Graham is not a party to these proceedings, as was the plaintiff in Quinby.

Dr. Graham simply has no responsive, relevant, e-mail messages in his possession, custody, or control. They were unavoidably destroyed, as his declaration establishes. They will not be available to any other party or third party, and will not be used in this litigation or elsewhere. They simply do not exist in any reasonably retrievable form. Thus, no one will be surprised or prejudiced, and no one will be strategically or tactically advantaged or disadvantaged, by any exclusive knowledge, possession, or utilization of such few e-mails as might, at one time, have existed in Dr. Graham's records. As in Quinby, Merck's subpoena here should be quashed in its entirety.

Other recent decisions have similarly upheld the principal that subpoenas that request largely irrelevant material, and infringe on the privacy rights of non-parties, must be quashed or strictly limited. As held in Washington v. Thurgood Marshall Academy, 230 F.R.D. 18 (D. D.C. 2005), subpoenas, such as Merck's, that have "no limiting principal whatsoever" must be quashed with respect to such irrelevant, "anything else" material. 230 F.R.D. at 22-25.

## CONCLUSION

Like the plaintiff in Quinby, Dr. Graham's past seven years of Internet correspondence (long hence deleted from his own personal computer and records) involve many thousands of communications—messages to and from family and friends, correspondence regarding his many interests and concerns outside the FDA, Merck, or Vioxx, and the inevitable mass of junk-e-mail. Anyone who has spent what seems like endless hours, each day, deleting unwanted, unimportant, or simply routine e-mail from his or her computer, will sympathize with the task that Dr. Graham and his counsel would face, were Microsoft ordered to produce even one year of all of Dr. Graham's e-mail correspondence: because such correspondence would be required, in the first instance, due to the obvious privilege and privacy concerns, be produced not to Merck, but to Dr. Graham himself. Dr. Graham has complied with Merck's subpoenas

directed to him: he has searched his personal records to determine if any responsive communications exist. As his declaration attests, they do not. If a very few did exist, they were irretrievably destroyed before subpoenas in this case ever issued. Merck's subpoena efforts to recall those messages from oblivion are overbroad, disproportional, and improper. Its subpoena should be quashed.

                    Respectfully Submitted,


                    _____
                    Joanne Royce,   DC Bar #  379-728
                    Government Accountability Project
                    1612 K Street, NW, Suite 1100
                    Washington, D.C.  20006
                    (202) 408-0034 ext 131
                    FAX: (202) 408-9855

                    Counsel for Third Party David Graham