

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY -3  AM 9:51

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to all cases | * | |
| | * | MAGISTRATE |
| | * | JUDGE KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MERCK & CO., INC.'S OPPOSITION TO DAVID GRAHAM'S EMERGENCY MOTION TO QUASH SUBPOENA ISSUED TO MICROSOFT CORPORATION

Dr. Graham's motion essentially accuses Merck of seeking to "intimidate" him by requesting copies of relevant emails that he deleted or that were erased from the hard drive on his home computer when it malfunctioned.  (Mot. at 5.)  In making this argument, Dr. Graham utterly ignores Merck's offer that Graham's counsel – not Merck or Microsoft – review and produce the documents as appropriate to protect his privacy and limit the production to relevant emails.  Contrary to Graham's suggestions, Merck has absolutely no interest in Dr. Graham's e-mails to and from his wife and children.  Nor does it have any interest in infringing on his or his family's privacy interests, or as the PSC's joinder suggests, delaying Dr. Graham's deposition.[1]  Rather, Merck merely seeks communications that will be potentially relevant to Dr. Graham's

---

[1]     The PSC's arguments merit little discussion.  As the lack of supporting authority in its brief suggests, the PSC has no cognizable interest in the dispute between Merck and Dr. Graham, and thus has no legitimate basis for arguing that Merck's subpoena imposes "undue burdens and hardships" on Dr. Graham and Microsoft.



____ Fee_____
____ Process_____
_X_ Dktd  808877v.1
____ CtRmDep_____
____ Doc. No_____

upcoming deposition, which has potentially far-reaching implications in the many thousands of

Vioxx-related cases that have been filed to date.  Given Graham's own admission that he did

send and receive emails that are relevant to the substance of his anticipated deposition testimony

(and which he apparently deleted despite their potential relevance to this litigation),[2] that request

is neither unreasonable nor overreaching and certainly was not intended to "intimidate" Dr.

Graham in any way.

## BACKGROUND

Exactly one week ago, following Dr. Graham's refusal to turn over documents responsive

to an April 3, 2006 subpoena issued by Merck on the ground that his "e-mail messages have been

lost,"[3] Merck requested that Dr. Graham consent to the release of potentially critical e-mails

from Microsoft Corporation ("Microsoft"), Dr. Graham's internet service provider.[4]  In making

this request, Merck explicitly offered to have any materials produced by Microsoft immediately

turned over to the FDA or to Dr. Graham's personal attorney so that they could ensure that

Merck only receives relevant emails.[5]  Dr. Graham ignored Merck's attempts to negotiate a

mutually agreeable solution.  Instead, he chose to file the motion to quash that is now before the

Court -- setting in motion a process that is likely to take much longer than it would have taken

Dr. Graham's counsel simply to review Dr. Graham's e-mails, perhaps using electronic searches,

and produce the relevant documents.

---

[2]      Graham's hard drive was erased in February 2006, several months after the PSC's request for Graham's
deposition.

[3]      April 24, 2006 Declaration of David Graham, M.D. ("Graham Decl.") at ¶ 5.

[4]      April 26, 2006 e-mail of Ben Barnett ("Barnett E-mail"), attached at Ex. 1.

[5]      *Id.*

Any documents relevant to Graham's testimony are critical to a meaningful cross-examination at his deposition; Merck cannot explore Dr. Graham's opinions in a vacuum. For these reasons, as explained further below, the Court should deny Dr. Graham's motion.

## ARGUMENT

Despite Dr. Graham's assertions to the contrary, the e-mails at issue are vital to Merck's ability to conduct a thorough cross-examination at Dr. Graham's upcoming deposition and are neither overbroad nor unduly burdensome.

As the April 3, 2006 subpoena issued by Merck to Dr. Graham makes clear, Merck is only interested in obtaining those e-mail messages that concern Merck, Vioxx, and other individuals and issues relevant to this action. Allowing Dr. Graham's counsel the opportunity to screen which messages are made available to Merck will ensure that only relevant e-mails will ultimately be produced. Moreover, Dr. Graham's argument that Merck has "complete access, in the public forum, as to Dr. Graham's opinions, statements to the media, and Congressional testimony" misses the point. (Mot. at 7.) Merck's purpose in deposing Dr. Graham is not simply to review and rehash his numerous public statements about Merck and Vioxx, but rather to explore the veracity of those statements and Dr. Graham's underlying motives in making them. In order to depose Dr. Graham in any meaningful way, it is imperative that Merck have access to any and all relevant e-mail communications in which he candidly expressed his thoughts about Merck and Vioxx.

## I.   MERCK IS SEEKING ONLY INFORMATION THAT IS RELEVANT AND REASONABLY RELATED TO THIS LITIGATION.

Plaintiff's argument that the requests are somehow overbroad because they involve a substantial period of time and seek documents sent and received from a home computer misses

3

the point:  all Merck seeks are emails relevant to the substance of Dr. Graham's testimony.  Far

from being overbroad, the request is as narrowly tailored as possible under the circumstances.

*First*, Merck's request is limited in scope to the time period relevant to this litigation.

*See Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004).  In *Theofel*, the court opined

that a subpoena limited to "some relevant time period" would be reasonably tailored to avoid

undue burden or expense.  *Id.*  Here, Merck requests documents dating from May 20, 1999, the

date that Vioxx was approved for sale in the United States by the FDA.  Given the nature of

plaintiffs' allegations about Merck's knowledge of the health risks associated with Vioxx, no

other date provides a logical nexus for purposes of relevancy.[6]

*Second*, Dr. Graham's decision to use his personal computer for work-related or FDA-

related business (and to delete his email messages) was his own – and Merck should not be

forced to forgo access to relevant documents as a result.  As documents produced by Dr. Topol

indicate, Dr. Graham deliberately provided his personal e-mail address for purposes of

communicating FDA-related and Vioxx-related business.  (*See* October 27, 2004 e-mail of David

Graham, M.D., attached at Ex. 2.)  There is, therefore, no reason to allow Dr. Graham to avoid

relevant discovery requests merely on the ground that responsive documents were created and

sent on his home computer.  Such a result would permit a party to conduct official business on

his or her personal computer and resist discovery on grounds that such discovery is overbroad.

Put simply, Dr. Graham has "opened the door" to discovery of the database that contains his

personal e-mails by co-mingling personal and work-related or FDA-related business on his home

computer.  Thus, the onus is squarely upon him to determine which e-mails, among those

collected on his personal computer, are responsive to Merck's requests and which are not.

---

[6]       Indeed, the PSC's own class action master complaints filed in the MDL define the relevant class period as
commencing on May 20, 1999.  (*See, e.g.*, Master Class Action Complaint (Medical Monitoring) at ¶¶ 5, 6.)

*Third*, Merck's request is no less valid because it requires Dr. Graham's internet service provider to produce e-mails from Dr. Graham's electronic account. Instead, the subpoena merely places Dr. Graham in the same position as if the relevant e-mails on his personal computer had not been "unavoidably lost." (Mot. at 4.) In this respect, Merck's subpoena to Microsoft is purposely geared to make the production less burdensome for Microsoft – the party with the most peripheral relationship to this litigation.

*Finally,* the only case cited by Dr. Graham for the proposition that Merck's subpoena is overbroad shows precisely the opposite. (Mot. at 13, *citing Quinby v. WestLB AG*, 04 Civ. 7406 (WHP) (HBP), 2006 U.S. Dist. LEXIS 1178 (S.D.N.Y. Jan. 11, 2006).) In *Quinby,* defendant sought copies of non-privileged e-mails sent to or received by plaintiff's personal e-mail account during a specified time period. *Id.* at *2. As the court specifically pointed out, the premise underlying the defendant's subpoena was that "plaintiff cannot be trusted to review her own e-mails properly, and that all of plaintiff's non-privileged e-mails should, therefore, be produced, without regard to whether they relate to her claims." *Id.* at *2-3. Here, in contrast, Merck specifically requested that Dr. Graham review the e-mails produced by Microsoft for relevancy prior to submission to Merck. Thus, Merck does not argue, as did the defendant in *Quinby*, that "broad discovery is appropriate here because plaintiff has improperly withheld e-mails." *Id.* at *4. Indeed, Dr. Graham has already admitted that he recalls a certain number of e-mails – among those deleted from his home computer – that are responsive to Merck's subpoena.[7] (Mot.

---

[7]       It is unquestioned that Dr. Graham's e-mails contain responsive information. Dr. Graham exchanged multiple e-mails on his personal e-mail account with Dr. Eric Topol in which they corresponded on a wide range of matters, including Dr. Graham's Senate testimony about Vioxx and Dr. Topol's discussion of Vioxx on 60 Minutes. (See E-mails of David Graham, attached hereto as Ex. 2.) And Dr. Graham himself has admitted that similar e-mails were destroyed when he either intentionally deleted them or when he had his hard drive erased. (*See* Mot. at 3-4, 5 n.1.)

5

at 3.) Thus, to the extent it is relevant, *Quinby* merely confirms the appropriateness of the discovery at issue here.

## II.   THE SUBPOENA IS NOT "UNDULY BURDENSOME" ON DR. GRAHAM OR MICROSOFT.

Dr. Graham also argues that the subpoena should be quashed because the documents sought are "unreasonably cumulative or duplicative" and "obtainable from some other source that is more convenient, less burdensome, or less expensive." (Mot. at 8, *citing* FED. R. CIV. P. 26(b)(2)(i).) This argument too is unavailing.[8] Any burden on Dr. Graham is minimal and outweighed by the importance of the requested documents to this litigation and the fact that there are no alterative sources for obtaining the information.  Moreover, Dr. Graham cannot show -- and has not shown -- that the subpoena would unduly burden third party Microsoft.

*First*, Dr. Graham has not shown that reviewing the e-mails produced by Microsoft would unduly burden him, and given the ease with which email files can be searched electronically, he would be hard-pressed to make such a showing.  *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant.") (internal quotations omitted).  Indeed, there is no reason to believe that his review of the materials will be any more burdensome than complying with Merck's April 3, 2006 subpoena would have been had the emails not been deleted from the hard drive of his home computer.[9]

---

[8]   Further, Dr. Graham's reliance on soon-to-be enacted amendments to Rule 26(b)(2) in support of this argument is misguided.  The amendments are not yet in force, and they only address a producing party's obligations. In the present case, Dr. Graham is neither a party nor is he personally being asked to produce documents.  Dr. Graham is also wrong on the merits of the argument.  The amended rule provides that a party need not produce electronic information that is not reasonably accessible.  Here, however, Dr. Graham can easily access the emails without any costs or difficulty through his internet service provider, Microsoft.

[9]   At this juncture it is unclear how many e-mails, if any, Microsoft will have in its possession.  It is entirely possible that Microsoft will only be able to retrieve a handful of the requested documents.  Thus, Dr. Graham's

**Second,** the potential importance of the documents sought and the fact that they are unavailable from any source other than Microsoft outweigh any burden on Dr. Graham. *See Zubulake v. UBS Warburg LLC*, 2003 U.S. Dist. LEXIS 7939, at *43 (S.D.N.Y. 2003). As previously discussed, the information Merck seeks is critically important. And Merck's only recourse is to obtain the e-mails from Microsoft, because Dr. Graham swears he has irreversibly erased his hard drive. Courts are more likely to enforce a subpoena against a third party when the information is unavailable from other sources. *See Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (upholding the trial court's decision to quash a subpoena requiring an expert to testify at trial because, inter alia, the information the expert would have imparted to the jury was available from other sources); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) (stating that whether the information is available from other sources is one of the primary factors to consider when enforcing a subpoena seeking confidential information from a reporter); *Doe v. 2TheMart.Com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001) (quashing a subpoena seeking user information from an ISP in part because the information was available from other sources). This Court should do the same here.

**Third,** because Dr. Graham has no standing to assert Microsoft's response to the subpoena, his arguments on Microsoft's behalf carry no weight. *See, e.g., Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties").[10] Dr. Graham argues that producing the requested e-mails would subject Microsoft to liability under the Stored Wire And

---

assertion that he would be burdened by reviewing "seven years worth of emails" (Mot. at 9) is speculative at worst and, at best, premature.

[10]    The only exception to this rule – which is inapplicable here – is in cases where: (i) the litigant has suffered an injury in fact that gives her a concrete interest in outcome of the case; (ii) the litigant has a close relationship to the third party; and (iii) there exists some hindrance to the third party's ability to protect her own interests. *Powers*, 499 U.S. at 410.

808877v.1

Electronic Communications And Transactional Records Act ("ECPA"), 18 U.S.C. §§ 2701 *et. seq.* But he ignores that Microsoft would be acting in good-faith compliance with a valid court order, which is an exception to the ECPA's prohibitions. 18 U.S.C. § 2707(b)(3).[11] He also ignores that his consent to the release of the documents, pursuant to Merck's offer, would exempt Microsoft from liability. 18 U.S.C. § 2707(e)(1).

## CONCLUSION

As the Court noted in its March 13, 2006 Order compelling Graham's deposition, "litigation is a fact-finding device designed as a search for the truth."[12] Merck's request for Dr. Graham's emails is part of that search. Merck has been frustrated in this effort, despite having made every attempt to craft a workable solution for the parties involved. For the foregoing reasons, Merck respectfully requests that the Court deny Dr. Graham's motion to quash the subpoena issued by Merck to Microsoft.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

---

[11]   Federal case law and the Advisory Committee Notes of Decision to Rule 45 of the Federal Rules of Civil Procedure indicate that a federal subpoena constitutes a court order. *See* Fed. R. Civ. P. 45, advisory committee note ("[a]lthough the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to sanctions"); *see also Palmer v. Ellsworth*, 1993 WL 498010, at *5 (9th Cir. 1993).

[12]   *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2006 U.S. Dist. LEXIS 10477, at * 41 (E.D. La. Mar. 13, 2006).

8

808877v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Merck & Co., Inc.'s Opposition to David Graham's Emergency Motion to Quash Subpoena Issued to Microsoft Corporation been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 3d day of May, 2006.

Dorothy H. Wimberg

808877v.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION: L |
| | * | |
| This document relates to: ALL CASES | * | JUDGE FALLON |
| | * | MAG. JUDGE KNOWLES |
| | * | |

*********************************************************************************

## DECLARATION OF DAVID J. GRAHAM, M.D.

I, David J. Graham, M.D., hereby declare as follows:

1. I am a Medical Officer and Associate Director for Science and Medicine in the Office of Drug Safety at the Center for Drug Evaluation and Research of the United States Food and Drug Administration (FDA), located at White Oak CDER Office Building 22, 10903 New Hampshire Avenue, Silver Spring, MD 20993.

2. The purpose of this declaration is to explain my response to the subpoena served on me by Merck & Co., Inc., (Merck) on April 3, 2006 (the Subpoena, Attachment A), in the above-captioned litigation. I am not a party to this case, nor is FDA.

3. The Subpoena contains ten document requests, all of which except Request 3 seek documents "in [my] possession." On April 17, 2006, counsel for Merck Benjamin R. Barnett

sent an e-mail message to FDA attorney Michael Levy, in which Merck agreed that Request 3 should have also included the phrase "in [my] possession." The Subpoena defines "in [my] possession" as "stored on [my] personal computer or other electronic storage device, contained within [my] personal email account, stored at [my] residence, or other otherwise under [my] control, not including items stored on [my] FDA computer, in [my] FDA email account, or in [my] FDA office."

4. I do not have any documents responsive to any of the Subpoena, as modified on April 17, 2006.

5. Prior to February 8, 2006, I had a small number of e-mail messages, likely fewer than 10, that may have been responsive to Requests 1, 2, 3, 5, 6 and/or 9 of the Subpoena on the hard drive of my home computer. However, as explained in the next paragraph, those e-mail messages have been lost.

6. On or about February 2, 2006, my home computer stopped functioning. On February 8, 2006, my wife brought the computer to The Computer Place, Inc., in Gaithersburg, Maryland. A repair technician told her that the computer was infected with multiple viruses and that the computer's hard drive needed to be erased because of the virus infections. Technicians at The Computer Place erased the hard drive, reloaded Windows XP, and installed Norton Antivirus software. They were not able to save or recover any files because the hard drive could not be accessed. On February 9, 2006, I picked up the computer from The Computer Place. The total charge for the repairs was $109.45, including a labor charge of $79. Our service invoice number was SI-219490. I am attaching the receipt with my credit card number redacted as Attachment B.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on   April 24   , 2006.


David J. Graham, M.D.
Associate Director for Science and Medicine
Office of Drug Safety
Center for Drug Evaluation and Research
U.S. Food and Drug Administration

Attachment "A"

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF ___District of Columbia___

In re VIOXX LIABILITY LITIGATION

V.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:   MDL 1657
EASTERN DISTRICT
OF LOUISIANA
JUDGE ELDON FALLON

TO:  David Graham, M.D.
24212 Hawkins Landing
Gaithersburg, MD  20882

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| (202)<br>725 Twelfth Street, N.W., Washington, D.C.20005 434-5000 | 4/17/06 @9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 4/3/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(202)
M. Elaine Horn, 725 Twelfth Street, N.W., Washington, D.C.20005 434-5000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A TO MERCK'S SUBPOENA TO
## DR. DAVID GRAHAM

## DEFINITIONS

1.    The pronouns "you," "your," "yours," and "yourself" refer to the subpoenaed party named herein and any of his agents, representatives, and/or persons purporting to act on his behalf.

2.    The term "FDA" shall mean the U.S. Food and Drug Administration, its divisions and sub-divisions.

3.    The term "communication" shall mean all occasions on which one person conveyed information to another either by means of a document or verbally, including by means of a telephone or other mechanical or electronic device.

4.    The term "document" shall mean all written or graphic matter, however produced, reproduced, or stored of every kind and description in the actual or constructive possession, custody or control of you or your counsel, including without limitation all accounts, advertisements, agreements, announcements, appointment books, articles, bills, books, bulletins, calendars, charts, computer files, computer printouts, contracts, credit card records, diaries, drawings, e-mails, films, graphs, journals, ledgers, letters, magnetic disks, magnetic strips, magnetic tape, medical records, memoranda, microfilm, minutes, monitor strips, notes, papers, periodicals, photographs, pictures, prescriptions, press releases, punched cards, reports, schedules, sound tapes or recordings, statements, studies, tables, telegrams, time sheets or logs, vouchers, x-rays, and other data compilations, recordings, records, or writings of any kind.

5.    "Merck" shall mean any of the subsidiaries, divisions, departments, affiliates, predecessors, successors or offices of the defendant and by whatever name known, and all present and former officers, directors, employees, trustees, principals, agents, and representatives of Merck & Co., Inc., as well as any person acting or purporting to act on its behalf.

6.    The term "in your possession" shall mean stored on your personal computer or other electronic storage device, contained within your personal email account, stored at your residence, or otherwise under your control, not including items stored on your FDA computer, in your FDA email account or in your FDA office.

7.    The term "the Kaiser study" shall mean the study of the risk of acute myocardial infarction and sudden death in patients treated with selective Cox-2 inhibitors and non-selective NSAIDs, using data from the Kaiser Permanente database in California, the results of which were published in the Lancet (Graham et al., "Risk of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs: nested case-control study" The Lancet 2005).  The term "Kaiser study" also includes abstracts and/or poster presentations of the study.

1

## DOCUMENTS REQUESTED

1.     All documents in your possession relating to or referencing Vioxx.

2.     All documents in your possession relating to or referencing the Kaiser study.

3.     All drafts of the Kaiser study, including draft manuscripts, tables and figures.

4.     All documents in your possession relating to communication with Dr. Eric Topol concerning Vioxx or Merck.

5.     All documents in your possession relating to communication with persons employed by The Lancet, including but not limited to Dr. Richard Horton, concerning the Kaiser study.

6.     All documents in your possession relating to communication with David Campen, Rita Hui, Michele Spence, Craig Cheetham, Gerald Levy, Stanford Shoor and Wayne A. Ray concerning the Kaiser study.

7.     All documents in your possession relating to communication with any attorney who represents a person in a lawsuit against Merck related to Vioxx.

8.     All documents in your possession relating to communication with any member of the press relating to Vioxx or Merck.

9.     All documents in your possession relating to or referencing your testimony before the Finance Committee of the U.S. Senate on November 18, 2004.

10.    All documents in your possession relating to communication with any person employed by the United States Senate or United States House of Representatives relating to Merck, Vioxx, or your testimony before the Finance Committee of the U.S. Senate on November 18, 2004.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused to be served the above and foregoing

Merck & Co., Inc.'s Subpoena of David Graham, M.D. on Liaison Counsel, Russ

Herman by United States Mail and by e-mail and upon all parties by electronically

uploading the same to LexisNexis File & Serve Advanced in accordance with

PreTrial Order No. 8, on this 3rd day of April 2006.

# Attachment "B"

**The Computer Place, Inc.**
50 Bureau Drive, #A-6
Gaithersburg, Maryland 20878
Sales : (301) 330-6016
Fax : (301) 926-3415

**The Computer Place, VA, Inc.**
11266 James Swart Circle
Fairfax, Virginia 22030
Sales : (703) 246-9188
Fax : (703) 246-9106

www.tcponline.com



| Invoice | Date |
|---------|------|
| SI-219490 | Feb 09, 2006 |

| Customer | Contact | Ship To |
|----------|---------|---------|
| GRAHAM, DAVID J | | |
| DAVID J GRAHAM | | |
| UNITED STATES | | |

| Account | Terms | Due Date | Account Rep. | Schedule Date |
|---------|-------|----------|--------------|---------------|
| 42697 | DUE UPON RECEIPT | Feb 09, 2006 | Shanna Ko | |

| Sales Order | PO # | Reference | Ship VIA | Date Printed |
|-------------|------|-----------|----------|--------------|
| SO-POS SALE | | | CUSTOMER PICK | 02/09/2006 |

| L | Item | Description | Order | Ship | Price | Disc | M | Amount |
|---|------|-------------|-------|------|-------|------|---|--------|
| 1 | TCP LABOR | TCP LABOR CHARGE FOR ALL INSTATION | 1 | 1 | 79.00 | | EA | 79.00 |
| 2 | | REPAIRING, PER HOUR. | | | | | | |
| 3 | NOR ANTIV06/D | NORTON ANTIVIRUS 2006 OEM | 1 | 1 | 29.00 | | EA | 29.00 |
| 4 | | SERVICE FORM: 23230 | | | | | | |
| 5 | | TECHNICIAN: DAVIE | | | | | | |

```
THE COMPUTER PLACE INC
50 BUREAU DR
GAITHERSBURG, MD. 28878

TERMINAL I.D.:        H824NGY
MERCHANT #:      385480000055071

VISA

SALE
BATCH: 801025    INV:     000045
DATE: FEB 09, 06  TIME:  18:37
         AUTH:        063610
```

TOTAL      $109.45

DAVID J GRAHAM

X

I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)

CUSTOMER COPY

Customer Signature   X

**Tax Details**
MD              1.45

**Payment Details**
02/09/2006      109.45

| | |
|---|---|
| Extend | 79.00 |
| Taxable | 29.00 |
| Tax | 1.45 |
| Total | 109.45 |
| Tr Disc | 0.00 |
| Paid | 109.45 |
| Balance | 0.00 |

Thank You

Please see reverse side for details on Warranty & Return Policy

**Wimberly, Dorothy H.**

| | |
|---|---|
| **From:** | jmiller@omm.com |
| **Sent:** | Monday, May 01, 2006 7:00 PM |
| **To:** | Vergara, Catalina J. |
| **Subject:** | Fw: Graham |
| **Attachments:** | Graham consent letter for Microsoft subpoena.DOC |

-----Original Message-----
From: Horn, Elaine <EHorn@wc.com>
To: Miller, Jessica
Sent: Mon May 01 19:12:33 2006
Subject: FW: Graham

<<Graham consent letter for Microsoft subpoena.DOC>>

From: Barnett, Ben [mailto:Ben.Barnett@dechert.com]
Sent: Monday, May 01, 2006 5:38 PM
To: tarek.ismail@bartlit-beck.com; shayna.cook@bartlit-beck.com; Horn, Elaine
Subject: FW: Graham

Elaine just sent a note asking whether this was sent to the FDA.  Here is what I sent last Wednesday.

From:  Barnett, Ben
Sent:  Wednesday, April 26, 2006 5:01 PM
To:    'Levy, Michael'
Subject:    Graham

Dear Mike:

We are in receipt of Dr. Graham's declaration stating that he does not have any documents in his personal possession responsive to our April 3, 2006 subpoena because the hard drive of his home computer was erased while being repaired.  In light of the potential importance of the erased documents to Dr. Graham's deposition and the Vioxx litigation, Merck's counsel intends to pursue these documents through other channels.

To that end, we request that Dr. Graham give his written consent to Microsoft Corporation authorizing it to produce e-mails and other documents from the account/address hylabrook1@msn.com pursuant to a subpoena that we will serve on Microsoft today.  Attached to this email is a proposed letter for Dr. Graham's signature granting such consent.  If Dr. Graham consents to the production of his e-mails and other documents by Microsoft pursuant to our subpoena, we will agree to immediately transmit any documents or materials produced by Microsoft directly to you or Dr. Graham's personal attorney for your review, provided that you return to us within three days of your receipt of these documents any and all documents that are responsive to our initial subpoena served on Dr. Graham on April 3, 2006.

Please notify as soon as possible if Dr. Graham agrees to this request.  Also, please be advised that we intend to raise this issue at our conference with Judge Fallon tomorrow morning.

Thanks very much.



EXHIBIT
1

5/3/2006

Ben

<<Graham consent letter for Microsoft subpoena.DOC>>

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

-------------------------------------------------------------------------
NOTICE:

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply or by telephone (call us collect at (202) 434-5000) and immediately delete this message and all its attachments.

=========================================================================

Custodian of Records
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052

       Re:    Subpoena in *In re VIOXX Liability Litigation*,
                Federal MDL 1657 (Eastern District of Louisiana)

To the Custodian of Records for Microsoft Corporation:

I, David Graham, M.D., of Gaithersburg, Maryland, hereby consent to Microsoft's production of the documents relating to my MSN account/address hylabrook1@msn.com, as requested by Merck & Co., Inc., in the subpoena served by Merck on Microsoft in the above-captioned litigation.

I acknowledge that the documents requested by Merck include e-mails sent to, sent from, or stored at the account/address hylabrook1@msn.com, communications and materials sent to or sent from the account/address hylabrook1@msn.com using Microsoft's instant messaging services, and other records, logs and documents relating to the account/address hylabrook1@msn.com. I certify that I am the account holder of the account/address hylabrook1@msn.com and/or the originator, addressee, or intended recipient of the e-mails and other communications requested by the subpoena referenced herein. Accordingly, I hereby consent to the production by Microsoft Corporation of any and all documents pursuant to the subpoena served on Microsoft in the above-captioned litigation.

                     Signed:_____
                            David Graham, M.D.

                     Address:

                     Date:_____

# EXHIBIT 2

# FILED UNDER SEAL