IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY 10  PM 1:09

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| JIMMIE COLLINS, INDIVIDUALLY, AND JIMMIE COLLINS, AS PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE OF DECEDENT LAURA ENDICOTT,<br><br>Plaintiff,<br><br>v.<br><br>MERCK & COMPANY, INC., NORTHPORT HEALTH SERVICES OF MISSOURI, L.L.C., D/B/A WEBB CITY HEALTH AND REHABILITATION CENTER, JOHN BURCHFIELD, KEITH BENTON, DEBBIE ELMORE, NHS MANAGEMENT, L.L.C., UNIDENTIFIED ADMINISTRATOR OF WEBB CITY HEALTH & REHABILITATION CENTER, UNIDENTIFIED DIRECTOR OF NURSING OF WEBB CITY HEALTH & REHABILITATION CENTER, RAJENDRAKUMAR I. PATEL, M.D., MEDCO HEALTH SOLUTIONS, INC., MEDCO HEALTH, L.L.C., AND MEDCO HEALTH SOLUTIONS OF LAS VEGAS, INC.,<br><br>Defendants. | MDL 1657- Vioxx<br><br>Section L<br><br>Cause No: 2:06cv798 |

**DEFENDANTS NORTHPORT HEALTH SERVICES OF MISSOURI, LLC, JOHN BURCHFIELD, KEITH BENTON, DEBBIE ELMORE, NHS MANAGEMENT, LLC, UNIDENTIFIED ADMINISTRATOR OF WEBB CITY HEALTH & REHABILITATION CENTER, UNIDENTIFIED DIRECTOR OF NURSING OF WEBB CITY HEALTH & REHABILITATION CENTER'S MOTION AND MEMORANDUM OF LAW TO ENFORCE ARBITRATION AGREEMENT**

COME NOW Defendants Northport Health Services of Missouri, L.L.C., John Burchfield, Debbie Elmore, NHS Management L.L.C., Unidentified Administrator of Webb City

::ODMA\PCDOCS\SPVGDOCS\177061\1   1

Fee____
Process____
X Dktd____
__ CtRmDep____
__ Doc. No.____

Health & Rehabilitation Center, Unidentified Director of Nursing of Webb City Health & Rehabilitation Center, Sandberg, Phoenix & von Gontard, P.C., and pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. §1 *et seq.* and in particular 9 U.S.C. §3 request this Court to enforce the executed arbitration agreement and in support state the following.

## I. STATEMENT OF FACTS

Plaintiff Jimmie Collins brought suit in his personal capacity and as personal representative of Laura Endicott's estate, his mother. See Plaintiff's Petition. He alleges personal injury and wrongful death stemming from a Vioxx prescription. Id. Plaintiffs named these Defendants based on their involvement, or perceived involvement, with a nursing home facility, Webb City Health and Rehabilitation Center where Endicott ("the resident") resided. Id.

The resident was admitted to Webb City Health and Rehabilitative Center on August 2, 2004 by her son, Jimmie Collins. See Admission Agreement attached herein as Exhibit 1. Collins executed an admission agreement to admit his mother to the facility which among other things stated the facility would provide nursing services, dietary services, social services, and laundry service in exchange for payment of such services. Exhibit 1, generally.

Specifically, the Admission Agreement contains an arbitration agreement (hereinafter referred to as "the Agreement"). The Agreement contains (1) an explanatory section, Section 8, entitled "Dispute Resolution Program, Arbitration Agreement and WAIVER OF JURY TRIAL;" (2) a recapitulation of arbitration at the conclusion of the agreement; and (3) a signatory attachment entitled "Consent to Arbitration and Waiver of Jury Trial" which Collins executed. Please see Exhibit 1, pages 10-13 and 27-28. The explanation states "read carefully" and notes "[a]rbitration is a complete substitute for a trial by a judge or a jury." Exhibit 1, p.10. In bold, underscored, eye-catching language the explanatory section informs the reader,

> **"THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION."**

Id. The Agreement explains: (1) JAMS rules shall apply; (2) where to obtain a copy of the JAMS rules; (3) how to commence the arbitration process; (4) the location of the arbitration (in or near the facility unless otherwise agreed to by the parties); (5) the applicable discovery rules; and (6) restates that each party is permitted an attorney. Exhibit 1, p. 10-11. The agreement also sets forth that the Federal Arbitration Act shall apply. Id. at 12.

At the conclusion of the Admission Agreement, there is yet another clear explanation to the reader about the arbitration agreement. It reads, "ARBITRATION is a complete substitute for traditional litigation; and that you and your Responsible Party waive your right to file a lawsuit in regard to a Dispute and to have any Dispute heard in a court by a judge or jury." Id. at 17. Verifying understanding, the Agreement continues, "[y]ou and your Responsible Party further acknowledge that you have had an opportunity to question a representative of the Facility concerning the terms of this Admission Agreement and the contents of the Handbook and that any questions you had have been answered to your satisfaction." Id.

Thereafter, attachments follow the Admission Agreement, which reiterate the various agreement sections and permit the signatories to execute the provisions. In particular, Attachment D, page 27 is a title page plainly named,

> **"CONSENT OF RELATED PARTIES TO
> DISPUTE RESOLUTION PROGRAM, ARBITRATION
> AGREEMENT, AND WAIVER OF JURY TRIAL"**

Page 28 reads, **"CONSENT TO ARBITRATION"** in bold capital letters and again informs the reader "read carefully." The signatory page continues,

> **"BY EXECUTING THIS ARBITRATION AGREEMENT, THE PARTIES ACKNOWLEDGE THEIR UNDERSTANDING AND AGREEMENT THAT ALL DISPUTES WILL BE RESOLVED BY BINDING ARBITRATION, THAT ARBITRATION IS A COMPLETE SUBSTITUTE FOR TRADITIONAL LITIGATION, AND THAT THEY ARE GIVING UP AND WAIVING THEIR RIGHTS TO HAVE THEIR DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY.**
>
> By my signature and/or acceptance of the services of the Facility, I hereby consent to the Dispute Resolution Program, Arbitration Agreement, and Waiver of Jury Trial (the "Program"), set forth in Section 8 of the Admission Agreement for Laura Endicott (name of Resident) to which this consent is attached. I further represent and warrant that I have read and understand the Program; that I have been advised that it will affect my legal rights and the legal rights of the Resident; and that I have been given an opportunity to seek advice legal from counsel concerning the Program."

Id. Collins executed the arbitration agreement immediately below this language on August 2, 2004. Id. Signing as the "Responsible Party," plaintiff represented to the facility that he made decisions for or otherwise acted on behalf of his mother. Id. at p.1, See definition of "Responsible Party."

By executing this agreement both parties gave up their right to have any such dispute decided in a court of law before a jury, and instead accepted arbitration as the proper adjudication. Accordingly, the arbitration agreement should be enforced, and Plaintiff's claims with respect to these defendants should be dismissed and referred to arbitration.

## II. PROCEDURAL POSTURE

This case was filed in the Circuit Court of Jasper County, Missouri on August 25, 2005. Thereafter Defendant Merck & Co., Inc. removed this matter to the United States District Court for the Western District of Missouri. This matter was transferred to this Court on February 14, 2006 to proceed with the Multidistrict Litigation Docket No. 1657.

## II. ARGUMENT

In federal multidistrict proceedings, the transferee court applies the substantive law of the transferor courts. *See, e.g., In re San Juan Dupont Plaza Hotel Fire Litigation*, 745 F.Supp. 79, 81 (D.P.R. 1990) (quoting *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)) and Manual for Complex Litigation, Second § 31.122 n. 25 (1985). Therefore, Missouri law applies here.

"If a court determines by ordinary rules of contract interpretation that a valid agreement to arbitrate exists and that the dispute falls within the scope of that agreement, <u>then arbitration must be compelled</u>." <u>Swain v. Auto Services</u>, 128 S.W.3d 103, 106 (Mo. App. E.D. 2003) (emphasis added), citing <u>Dunn Industrial Group, Inc. v. City of Sugar Creek</u>, 112 S.W.3d 421, 427-28 (Mo. banc 2003). "<u>The public policy favoring arbitration is so strong that once an agreement is proven, the arbitration clause will be construed in favor of arbitration</u> unless the clause positively cannot be interpreted to cover the asserted dispute." <u>McCarney v. Nearing, Staats, Prelogar and Jones</u>, 866 S.W.2d 881, 887 (Mo. App. W.D. 1993) (emphasis added) (application for rehearing to Supreme Court denied 1994), citing <u>Village of Cairo v. Bodine Contracting Co.</u>, 685 S.W.2d 253, 259 (Mo. App. 1985). The arbitration agreement in this case is enforceable, because it is unmistakable, fair, clear and not unconscionable.

**A. The arbitration clause must be enforced because it is unmistakable and fair.**

It has "long been settled in Missouri that absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs." <u>Binkley v. Palmer</u>, 10 S.W.3d 166, 171 (Mo. App. E.D. 1999) and <u>Gibson v. Adams</u>, 946 S.W.2d 796, 803 (Mo. App.E.D. 1997). A person is bound by the terms of a contract he signs, and he will not be heard to say he was ignorant of its contents and is therefore

not bound by its provisions. Heartland Health Systems v. Chamberlain, 871 S.W.2d 8, 10 (Mo. App.W.D. 1993). "By accepting the benefits of a contract, a party cannot escape those provisions of the agreement that prove non-beneficial to him." Dorsch v. Family Medicine, Inc., 159 S.W.2d 424 (Mo. App. W.D. 2005) (Motion for Rehearing to Supreme Court Denied 2005).

In this case, Plaintiff is bound by the arbitration agreement which he executed.

### 1. The arbitration clause must be enforced because it is clear, unambiguous and unmistakable.

In Malan Realty v. Harris, 953 S.W.2d 624 (Mo. banc 1997) the court held a provision waiving a jury trial was enforceable. The court said the provision was unambiguous in part because the print size of the waiver provision was the same size as that found throughout the contract, the party opposing its enforcement signed immediately below the provision in question, and the provision used clear, unambiguous, and unmistakable language. Id. at 627. This case is analogous to Malan. First, the print size is consistent throughout the agreement. Second, Collins signed immediately below the arbitration agreement language. Finally, the Admission Agreement clearly stated that all disputes are to be resolved by arbitration rather than traditional litigation, and the signatories waived their right to resolving a dispute in a court of law before a judge or jury. For these reasons, the Court must enforce the executed arbitration agreement.

### 2. The arbitration provision is enforceable because it is not an unconscionable contract of adhesion.

In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a "take this or nothing" basis, the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. Swain, 128 S.W.3d at 107. However, form contracts are not "inherently sinister and automatically unenforceable." Id. Because the bulk of contracts signed in this country are

form contracts – "a natural concomitant of our mass production-mass consumer society" – any rule automatically invalidating adhesion contracts would be "completely unworkable." Id. Rather, our courts seek to enforce the reasonable expectations of the parties. Id. Because standardized contracts address the mass of users, the test for "reasonable expectations" is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent. Id.

An agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair. Id. In order for a court to invalidate a contract for unconscionability, the contract must be one "such as no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other." Id.; Smith v. Kriska, 113 S.W.3d 293 (Mo. App. E.D. 2003); Liberty Financial Management v. Beneficial Data, 670 S.W.2d 40, 49 (Mo. App. 1984).

In Smith v. Kriska, the court held that an employment contract was NOT a contract of adhesion, even though the agreement was a prerequisite to employment. 113 S.W.3d 293 (Mo. App. E.D. 2003). The contract was not one of adhesion because the employee still had the option of foregoing the employment if he did not like the terms of the contract. The court said "because defendant had the option of seeking employment elsewhere, the relative [bargaining power] of the Board does not make the Agreement an adhesion contract or unconscionable." Id. at 298.

Similarly, in Whelan Sec. Co., Inc. v. Allen, the court rejected the employee's claim that a contract was adhesive because it had not been freely negotiated, even though the employee testified his employer told him he would be fired if he did not sign the contract. 26 S.W.3d 592 (Mo. App. E.D. 2000). The court said that "the fact that an employment contract is a prerequisite

to employment does not force the employee to accept and execute it; the employee has the option of foregoing the employment if the terms of the agreement are not satisfactory." Id. at 596.

Plaintiff cannot claim that this contract was unconscionable or produce evidence of unfairness. Although the contract was a pre-printed form, Collins was not forced to sign it. Following precedent, a pre-printed form alone is insufficient to invalidate a properly executed arbitration agreement. Therefore, this Court must enforce the arbitration agreement.

### B. The Arbitration Agreement is Enforeable under the Federal Arbitration Act.

The Agreement reads in pertinent part,

> "The parties acknowledge that Facility regularly engages in transactions involving interstate commerce and that the services provided by Facility to you involve such interstate commerce. The parties expressly agree that this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C § 1 et seq."

"The FAA evinces a liberal policy favoring arbitration agreements so that disputes might be resolved without resort to the courts." Dunn Industrial Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421 (Mo. banc 2003), citing Greenwood v. Sherfield, 895 S.W.2d 169, 173 (Mo. App. 1995). "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland Corp. v. Keating, 465 U.S. 1, 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

The FAA, 9 U.S.C. § 2 states,

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Emphasis added. The FAA's 9 U.S.C. §2 "involving commerce" language should be interpreted "as broadly as the words 'affecting commerce' . . . a full exercise of constitutional power." Allied-Bruce Terminix Co., Inc. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), emphasis added. "We conclude that the word 'involving,' like 'affecting' signals an intent to exercise Congress' commerce power to the full." Id., emphasis added.

In Allied-Bruce, the Supreme Court reversed and remanded the case back to the trial court which had originally determined the FAA was inapplicable because the interstate connection was "too slight." Id. at 269. The high court determined a contract for pest control services nonetheless involved commerce even though interstate commerce was not contemplated at execution. Id. at 278. See also Triach Industries, Inc. v. Paul A. Crabtree d/b/a Crabtree Painting Inc., 2004 W.L. 941218 (Mo. App. W.D. 2004) (court applied FAA where interstate activity may only be slight or "less than substantial").

### 1. Numerous Courts Enforce Analogous Agreements.

Numerous courts are enforcing analogous arbitration agreements under the FAA which involve nursing homes and allegations of personal injury or wrongful death. The Supreme Court of Alabama in Briarcliff Nursing Home, Inc. v. Turcotte, 894 So.2d 661 (Ala. 2004) enforced an FAA arbitration agreement in two consolidated wrongful death claims where the nursing home facility (1) was headquartered out-of-state; (2) had several out-of-state residents; (3) received regular shipments from out-of-state; (4) purchased prescriptions from an out-of-state pharmacy; and (5) both respective decedents were Medicare patients. Id. at 668. See also McGuffey Health and Rehabilitation Center v. Gibson, 864 So.2d 1061, 1062 (Ala. 2003) (nursing home's equipment and supplies for everyday operations, such as wheelchairs, hospital beds, and cleaning

supplies which were manufactured out-of-state helped establish the involving commerce standard).

The Alabama Supreme Court also enforced an FAA arbitration agreement in a nursing home case after determining the defendant satisfied the involving commerce standard. Owens v. Coosa Valley Health Care, Inc., 890 So.2d 983 (Ala. 2004). There the court wrote, "[i]f there were any doubt as to whether providing nursing home services to [the plaintiff] involved interstate commerce, that doubt would be put to rest by the fact that the transaction is unquestionably economic in nature, and therefore the question whether the transaction involves interstate commerce can be analyzed by examining the aggregate effect of such transactions nationwide." Id. at 988, emphasis added, citing Service Corp. Int'l v. Fulmer, 883 So.2d 621 (Ala. 2003).

The Mississippi Supreme Court also recently upheld an FAA arbitration agreement in a nursing home wrongful death suit. Vicksburg Partners, LP et al. v. Stephens, 2005 WL 2298855 (Miss. 2005). There, in its determination that interstate commerce exists with nursing home admissions agreements so as to come under the purview of the FAA, the court wrote, in pertinent part,

> "[s]ingular agreements between care facilities and care patients, when taken in the aggregate, affect interstate commerce. As stated in [Citizens Bank v.] Alafabco, 'only the general practice need bear on interstate commerce in a substantial way....' Thus, since the arbitration clause is part of a contract (a nursing home admissions agreement) evidencing interstate commerce, the Federal Arbitration Act is applicable..."

Id. at 5.

Similarly the Texas Supreme Court held in In re Nexion Health at Humble, Inc., 2005 WL 1252271 (Tex. 2005) that the FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach," and determined Medicare funds crossing state lines constitutes interstate commerce. See also Sandford v. Castleton Health Care Center, L.L.C., 813 N.E.2d 411 (Ind. Ct. App. 2004)(court enforced FAA arbitration agreement); Gainesville Health Care Center, Inc. v. Weston, 857 So.2d 278 (Fla. Dist. Ct. App. 2003) (arbitration agreement enforced where court noted agreement is applicable under FAA or state arbitration act); Mariner Healthcare, Inc. v. Green, 2005 WL 1683554 (N.D. Miss. 2005); and Mariner Healthcare, Inc. v. King, 2005 WL1384632 (N. D. Miss. 2005).[1]

Plaintiff will likely cite to *Finney v. National Healthcare Corp.*, a slip opinion (Mo. App. S.D. 2006) for the proposition that the arbitration agreement cannot be enforced. However, in *Finney*, the arbitration agreement was executed by the resident's grand-daughter. The resident passed away, and pursuant to the Missouri Wrongful Death statute's classes of beneficiaries, §537.080 Rev. Mo. Stat., the resident's daughter was the beneficiary with the right to pursue the wrongful death claim--not the grand-daughter who executed the arbitration agreement. *Finney* was determined solely on the point that the plaintiff was not a signatory to agreement. Here, plaintiff Jimmie Collins signed the arbitration agreement, and therefore must be held to his agreement.

### 2. Because the Facts Here Illustrate Collins Executed an Enforceable FAA Arbitration Agreement, the Court Must Compel Arbitration.

First, Plaintiffs assert in their Petition For Damages that Defendant NHS Management, L.L.C. is an Alabama corporation registered to do business in the State of Missouri. See

---

[1] See also Drexel Home, Inc., 182 N.L.R.B. 1045, 1046 (1970) and Glen Manor Home for the Jewish Aged v. N.L.R.B., 474 F.2d 1145, 1149 (6th Cir. 1973) (two National Labor Relations Board decisions holding that nursing home operations affect interstate commerce).

Plaintiffs' Petition for Damages paragraphs 9.[2] Briarcliff Nursing Home, Inc. v. Turcotte, 894 So.2d 661 (Ala. 2004).

Second, Defendant NHS Management, L.L.C. directs the Court's attention to the website: www.northporthealth.com which illustrates the company operates 40 facilities in Alabama, Arkansas, Florida and Missouri. Please see attached Internet pages attached as Exhibit 2. McGuffey Health and Rehabilitation Center v. Gibson, 864 So.2d 1061, 1062 (Ala. 2003).

As well, because decedent's care and treatment involved Medicare and Medicaid funds, interstate commerce existed. Collins completed admission documents for both programs. Exhibit 1, p. 8. As well, the Business File contains copies of the billing sent to Medicare as processed by Mutual of Omaha, and the resident's Medicaid card. Attached heretofore respectively as Exhibits 3 and 4. Owens v. Coosa Valley Health Care, Inc., 890 So.2d 983 (Ala. 2004).

Additionally, admission documents completed herein illustrate the facility was to bill the resident's private insurance company, United American, of Dallas, Texas for medical expenses incurred. See Exhibit 5.

Finally, expense statements illustrate Collins received billing by mail. See Exhibit 6. *Duggan v. Zip Services*, 920 S.W.2d 200 (Mo. App. E.D.).

In summation, these basic facts illustrate the underlying transaction at issue, nursing services, satisfy the minimal interstate commerce threshold. Briarcliff Nursing Home, Inc. v. Turcotte, 894 So.2d 661 (Ala. 2004).

---

[2] Defendants denied this allegation to the extent this paragraph is prefaced by the language "At the time of the negligent acts complained of herein."

### III. Conclusion

Pursuant to the above arguments, Defendants request this Court enforce the arbitration provision executed by Plaintiff on August 2, 2004, to dismiss this cause of action, and refer this matter to binding arbitration.

SANDBERG, PHOENIX & von GONTARD, P.C.

By: _____
Stephen M. Strum, #37133
Stacey George Sifton #52682
One City Centre, 15th Floor
St. Louis, MO 63101-1880
314-231-3332
314-241-7604 (Fax)
E-mail:  sstrum@spvg.com
         ssifton@spvg.com

Attorneys for Defendants Northport Health Services of Missouri, L.L.C., Northport Health Services, Inc., John Burchfield, Debbie Elmore, NHS Management L.L.C., Unidentified Administrator of Webb City Health & Rehabilitation Center, and Unidentified Director of Nursing of Webb City Health & Rehabilitation Center

### Certificate of Service

The undersigned certifies that a copy of the foregoing was sent by United States mail, postage pre-paid, this 27th day of April_____, 2006, to the following counsel of record:

Christopher A. Wright
Edward J. Hershewe
The Hershewe Law Firm, P.C.
431 Virginia Avenue
Joplin, MO 64801

James P. Frickleton
Bartimus, Frickleton, Robertson
 & Obetz, P.C.
11150 Overbrook Drive
Leawood, KS 66211

Kirk J. Goza
Goza & Honnold
1100 Main Street
2630 City Center Square
Kansas City, MO 64105

    I hereby certify that the above and foregoing Notice of Deposition has been served on Liaison Counsel Phillip Wittman, and Andrew Goldman by U.S. Mail and/or e-mail and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 27th day of April, 2006.

