## ADMISSION AGREEMENT

This Admission Agreement ("Agreement") states the terms and conditions agreed by you, _____*Laura Endicott*_____ , your Responsible Party, and Northport Health Services of Missouri, L.L.C. d/b/a Webb City Health and Rehabilitation Center as the licensed operator of the Facility. In this Agreement "you" and "your" refers to the person who wishes to become a resident at the Facility. Your Responsible Party is your legal guardian, if one has been appointed, or your Attorney-in-Fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care, and maintenance. The obligations of your Responsible Party are described more fully in this Agreement, which you and your Responsible Party should read carefully before signing this Agreement.

This Admission Agreement is a legally binding contract. Do not sign this Admission Agreement until you have read it and understand its terms and have read the Resident Handbook in its entirety and understand the policies and rules contained within it. By signing this Admission Agreement you are certifying that you have read this Agreement in its entirety and that you understand and agree to the terms of this Admission Agreement. In the event you are discharged or transferred from the Facility and are later readmitted, you will be bound by the terms of this Admission Agreement and Resident Handbook, as each has been amended.

1.   Resident Handbook

You and your Responsible Party acknowledge that you have received a copy of the most recent edition of the Facility's Resident Handbook (including the Appendices, all of which are referred to in this Agreement as the "Handbook") dated _____, and that you have read the Handbook in its entirety. The Facility has adopted the Handbook to reflect its current policies, rules, and procedures for residents of the Facility and their respective family members and guests. The Facility reserves the right to modify the Handbook from time to time as it deems necessary or advisable with or without notice. You and your Responsible Party agree to abide by all of the policies and rules contained in the Handbook, as they may be modified from time to time by the Facility.

2.   Responsible Party

The person signing this Agreement as your Responsible Party has the following relationship(s) to the Resident (please check all that apply):

Spouse _____    Relative *JC* Legal Guardian _____    Attorney-in-Fact _____
Friend or Interested Person _____ Other (state relationship) _____

A copy of any documentation substantiating this relationship must be provided to the Facility. The Responsible Party represents to the Facility that he or she manages, uses, directs or controls funds or assets which may be used to pay for Resident's Facility charges and/or that he or she tends to make decisions for or otherwise act on behalf of Resident.

948033.02                                                1



3.     Services and Supplies

(a.)     Nursing Services

The Facility will provide nursing services and supplies that generally are described in Section II of the Handbook. Nursing staff (licensed nurses and nurse aides) work in the Facility seven days a week, 24-hours a day. The Facility's nursing staff are assigned to provide reasonable and customary nursing home nursing services and personal care. Resident and Responsible Party recognize and agree, however, that the nursing services offered by the Facility do not include one-on-one monitoring and care. The Facility will notify you or your Responsible Party if your condition has changed and the Facility is no longer able to meet your needs with our routine services. In such a case, the Facility will discuss appropriate alternatives with you.

(b.) Physician Services

The parties agree that you are and must at all times be under the medical care of your personal attending physician and that Facility will render its reasonable and customary nursing home services to you under the general and specific instructions of said physician. By executing this Agreement you and your Responsible Party certify that your attending physician has approved your admission to the Facility and you and your Responsible Party further consent to the Facility providing such services directed by the attending physician as are reasonably and customarily provided by the Facility. Should a physician prescribe services beyond those reasonably and customarily provided by Facility, Facility may discharge Resident.

Although you have the right to select an attending physician, if you at anytime do not timely select an attending physician or, for any reason, you are unable to select an attending physician, depending on such physician availability, Facility may select a physician for you without any liability to Facility accruing for said selection.

The parties agree that the Facility may require your use of an alternate licensed physician if the Facility is notified of the following:

- Your attending physician does not practice in the Facility.
- Your attending physician refuses to provide care to you in accordance will all applicable federal and state laws and regulations, including but not limited to, scheduled visits to the Facility.
- Your attending physician loses his or her license to practice or is banned from participation in the Medicare or Medicaid Program.

948033.02                                    2

- Any emergency and/or urgent situation requiring an immediate response to your medical needs.
- Your attending physician continues to request services beyond those reasonably and customarily provided by Facility.
- Or your medical needs are not being met for other similar reasons not specifically listed above.

Except in cases of medical emergency, the Facility will provide you with notice prior to requiring the use of an alternate physician.

Physicians operating within the Facility are independent contractors, not employees of the Facility, and the Facility shall not be liable for any acts or omissions of any physician who renders care or fails or declines to render care to you at the Facility. You are responsible for the payment of all charges of any person who renders care to you at the Facility.

(c.)   Medicines and Medical Supplies

You and your Responsible Party acknowledge that you have been informed that the Facility uses Seniorcare Pharmacy, Inc. ("Seniorcare") and/or NGM as the standard provider(s) of medical supplies to all residents of the Facility, and understand that Seniorcare and NGM are under common ownership with the Facility. The Facility has strict policies with respect to the packaging, labeling, and records associated with medical supplies utilized by residents, which policies are important to ensure the quality and integrity of care delivered to residents of the Facility. The Facility's providers of medical supplies, including Seniorcare and/or NGM, are required to comply with these policies. You and your Responsible Party agree that the Facility's providers of medical supplies may supply those medical supplies as may be prescribed by your attending physician unless you select another provider who agrees in writing to comply with this Facility's policies and demonstrates its ability to comply with these policies to the reasonable satisfaction of the Facility.

(d.)   Dietary Services

The Facility maintains a food service program monitored by a registered dietician. The Facility shall provide you regular meals, and will use reasonable efforts to provide you with therapeutic diets and snacks prescribed by your attending physician. While unable to prepare a different menu for each resident, Facility will use its reasonable best efforts to recognize individual preferences.

(e.)   Social Services

The Facility shall make available a Social Services Director to the entire resident population at the Facility. The Social Services Director will use reasonable efforts within time limitations to identify the social and emotional needs of each resident and to intervene where feasible. Services may be arranged to attempt to meet your needs, either through staff at the Facility or by referral to appropriate prudent agencies or professionals.

(f.)     Laundry Services

All personal items must be marked with the your name in indelible ink or with sewn in nametags. The parties agree hereto that Facility will not be responsible for your damaged, lost or misplaced clothing. Further, you and your Responsible Party understand that Facility's laundry utilizes high heat, strong chemicals, etc., in its laundry that most likely will reduce clothing life.

(g.)     Service Limitations

The Facility provides general nursing facility services with an individual focus towards your achieving certain desired outcomes. Varying factors, including your physical, mental, and psychosocial condition or your lack of cooperation, may prevent your achieving a desired outcome. In addition, there are many risks associated with every day living. Although your care includes certain services designed to address the general risks of daily living and to help you achieve certain outcomes, the Facility cannot guarantee that you will reach a certain outcome or that the risks of daily living will be eliminated.

Further, the parties hereto understand that the Facility does not provide one-on-one monitoring of its residents. If you or your Responsible Party desires one-on-one monitoring services, the Facility's Social Services Department can assist you or your Responsible Party with procuring, at an additional charge, these services from a third party, in addition to those provided by Facility.

In the following, please indicate whether or not you wish to purchase one-on-one monitoring of Resident (Note: There will be an additional charge made for this service):

_____(initials) Yes, I want to purchase _QJC_(initials) No, I do not want to purchase. I accept facility's routine, reasonable and customary service.

(h.)     Refusal of Services

Facility shall make good faith efforts to provide you such services as are routinely provided at the Facility, including those prescribed by your attending physician. However, Facility shall not be responsible for outcomes associated with your refusal to comply with such services. Should you refuse food, fluids, treatments, therapies, medications, grooming, therapeutic bathing, etc., and/or refuse to comply with physician's orders (i.e., you are a diabetic with orders not to consume sugar, but you eat candy of your own will, etc.), Facility shall in no way be responsible for the outcomes associated with such behavior. The Facility shall not be expected by you and your Responsible Party to intimidate or threaten you into doing what the Facility and/or attending physician believe is best for you. You and your Responsible Party are strongly encouraged to participate in the planning of your care both with the attending physician and Facility.

4.      Incidents beyond the control of Facility

948033.02                                                      4

Resident and Representative agree that Facility will not be liable for and agree to hold Facility harmless from any circumstances that are beyond the control of Facility including, but not limited to, acts of God, acts of terrorism, strikes and changes in economic conditions that affect the nursing home's operation. Additionally, Resident and Responsible Party agree that Facility will not be liable for and agree to hold Facility harmless from any changes in services or service limits due to changes in payment levels received by the Facility from Resident and/or third party payors, including, but not limited to, Medicare and Medicaid.

5.      **Pharmacy**

The Facility will begin purchasing all drugs from the following effective on _____, **20** ___.

_Bruner's_

Each resident of the Facility has the option to select a pharmacy of his or her choice for the purchase of any drugs which are not included in the regular per-day charges of the Facility. The only qualification to this right is that, in order to protect your health, we require that any pharmacy you select must provide drugs and services which meet the standards of the distribution system of the Facility, including uniform labeling, packaging, storing, processing, and administration of drugs.

Please make your choice as indicated below by placing an 'X' in the appropriate box and by signing below:

A.      Option 1. Under this option, you elect to let the facility select the pharmacy for purchase of all your drugs. If you elect this choice, the pharmacy as of _____, **20** ___ will be _____. If you ever want to change your selection, please let us know. If the Facility would change pharmacies in the future, we would give you advance notice and would also give you the opportunity to select a different pharmacy of your choice.

B.      Option 2. Under this option, you select the pharmacy listed below to provide all drugs which are not included in your regular per-day charges:

_Bruner's Pharmacy_
(Name of Pharmacy)

_____
(Address)

_____
(City, State, Zip)

_____
(Telephone)

Initialed: Resident _____   Responsible Party _NJC_

6.      <u>Payment</u>

You are responsible for payment of all charges for items and services provided to you by the Facility unless these charges are paid for by a third-party reimbursement program such as Medicare or Medicaid. You are responsible for payment of all charges for medicines and medical supplies provided to you that are not otherwise paid for by third-party reimbursement programs such as Medicare or Medicaid. You are responsible for payment

of all charges of any physician who renders care to you while you are a resident of the Facility, and any other charges by third parties providing items or services to you at your request.

You and your Responsible Party acknowledge receiving information from the Facility on how to apply for and use Medicare and Medicaid benefits, and you each release the Facility and each of its owners, agents, servants, and employees from any liability or responsibility in connection with your potential claim for coverage or reimbursement and for any failure to obtain such coverage or reimbursement. If you elect to apply for Medicaid benefits, you and your Responsible Party give the Facility permission to seek and receive information on the status of your Medicaid eligibility application from the appropriate state agency.

You and your Responsible Party hereby authorize the Facility and all other providers of items and services to file in your name and on your behalf claims for any and all third-party payments (including but not limited to Medicare, Medicaid and/or private medical insurance benefits) for items and services provided to you by the Facility or by such third-party providers, including the Facility's provider(s), and the right to receive the same.

THE FACILITY DOES NOT MAKE ANY WARRANTY OR REPRESENTATION OF ANY KIND THAT YOUR CARE WILL BE PAID FOR BY MEDICARE, MEDICAID, ANY THIRD-PARTY INSURANCE OR OTHER REIMBURSEMENT SOURCE.

948033.02

Where Facility's charges for your services are eligible to be paid partially or in full by privately owned insurance, you and your Responsible Party shall remain responsible for making payments in full pursuant to this Agreement regardless of such insurance coverage, and shall be responsible for paying all charges not paid by any insurance policy, including any coinsurance or deductible amounts required by any insurance policy. While the Facility, as a courtesy, will file claims with most privately owned insurance companies, the Facility may, at its option, require you to pay the Facility's charges in advance while awaiting payment from the insurance company.

You and your Responsible Party agree that you will be responsible for payment of all charges for items and services provided to you by the Facility pursuant to this Agreement, including both covered and Non-Covered services (as defined in Section IV of the Handbook and as described in Appendix B to the Handbook). If your Responsible Party has legal access to income or resources of yours which are available to pay for care and services you receive at the Facility, then your Responsible Party agrees to provide payment to the Facility from such income or resources. The Responsible Party agrees to replace misappropriated Resident funds in the event such misappropriation were to occur. By executing this Agreement, the Responsible Party agrees to ensure first priority distribution to the Facility on your behalf, from your assets, to pay for services rendered to you by Facility. The parties agree that Responsible Party shall be required to produce financial documentation to substantiate your ability to pay for charges that will be due for services rendered to you. If Facility does not timely receive payment in full, Facility may require production by Responsible Party of evidence that your assets were utilized only to prudently pay for your related expenses and that such spending gave first priority to the Facility's payments. Further, it is understood that should Facility reasonably suspect that an inappropriate handling of your funds has occurred or is occurring, Facility may report same to appropriate authorities without liability to you and/or your Responsible Party.

You and your Responsible Party understand that a third-party guarantee of payment for Non-covered services (as defined in Section IV of the Handbook and as described in Appendix B to the Handbook) is not required as a condition of admission. You and your Responsible Party also understand that you are not required to request or receive Non-covered services as a condition of admission. You and your Responsible Party understand that if you do not request that the Facility make Non-covered services available to you, Non-covered services will not be made available to you and your Responsible Party will not be personally liable for any charges for Non-covered items or services by signing this Agreement.

Notwithstanding anything herein to the contrary, you and your Responsible Party understand that if you do request that the Facility make Non-covered services available to you, both you and your Responsible Party agree that each of you (both you and your Responsible Party) shall be personally liable for any charges for Non-covered items or services requested by you or your Responsible Party.

Complete All Appropriate Sections Below

A.    Medicare.  If you have a reasonable potential of being eligible for Medicare coverage, you and your Responsible Party acknowledge that you have received a list of those items and services offered by the Facility that are paid for under the Medicare program, as well as those Non-covered items and services which are not covered by Medicare, and the charges for those Non-covered items and services (these lists are contained in Appendix B of the Handbook).  The current daily co-insurance amount under the Medicare (Part A) program is $_____ per day. All Medicare services shall be provided by the Facility at the rates from time to time allowed by Medicare.

    Initialed:  Resident _____          Responsible Party X  JC          Not Applicable _____

B.    Medicaid.  If you have a reasonable potential of being eligible for Medicaid benefits, you and your Responsible Party acknowledge that you have received a list of those items and services paid for by Medicaid under the Missouri State Medicaid Plan, as well as a list of Non-covered items and services and the amount of the charges for those Non-covered items and services (these lists are contained in Appendix B of the Handbook). Responsible Party and Resident agree to promptly comply with all requirements relative to the application for and receipt of benefits under the Medicaid program.  All Medicaid services shall be provided by the Facility at the rates from time to time allowed by Medicaid.

    Initialed:  Resident _____          Responsible Party X  JC          Not Applicable _____

C.    Private Pay.  If the cost of your stay at the Facility will not be covered by Medicaid or Medicare (a "Private Pay" resident) you and your Responsible Party acknowledge that you have received a list of those items and services which are included in the Facility's Daily Rate, as well as a list of those Non-covered items and services which are not included in the Facility's Daily Rate, and the amount of the charges for those Non-covered items and services (these lists are contained in Appendix B of the Handbook).  The Daily Rate in effect at the present time is _____ per day.

    Initialed:  Resident _____          Responsible Party  JC          Not Applicable _____

    You and your Responsible Party understand and agree that the Facility  may revise the Daily Rate and charges for Non-covered goods and services or any of them upon thirty (30) days advance written notice.

7.    Your Resident Rights

You and your Responsible Party acknowledge that the Facility has informed you, both orally and in writing in a language you can each understand, of your rights and of all policies and rules governing your conduct and responsibilities during your stay in the Facility.

A.    Medical Records

You and your Responsible Party consent to the release or receipt of your medical and financial records as described in the "Medical Records" section of the Handbook.

B.    Personal Property

The Facility strongly discourages residents from keeping valuable jewelry, papers, large sums of money or other personal items considered to be valuable in the Facility.  If you choose to keep some of your valuable personal possessions at the Facility, the Facility encourages you to take ordinary precautions to identify and safeguard your property.  The Facility will also take ordinary precautions to protect your property in the Facility, but you and your Responsible Party agree that the Facility will not have any responsibility or liability for the loss or theft of your personal property for any reason other than a loss or theft caused by the Facility's failure to take ordinary precautions.

C.    Personal Fund Account Authorization

You and your Responsible Party request and authorize the Facility to hold safeguard, manage and account for your personal funds in the manner described in the "Personal Funds" in Appendix A to this Appendix.  You and your Responsible Party specifically authorize the Facility to withdraw funds from your personal account to pay for any and all charges owed by you to the Facility, including charges for Non-covered items and services requested by you or your Responsible Party.  All charges will be paid directly to the Facility out of your personal account at the time the charges first become due.

D.    Mail

Your mail will be directed and handled by the Facility as requested below:

- ☒ All mail given directly to you.
- _____ All mail read to you.
- _____ All of you mail given to person indicated below.
- _____ Personal mail given to you.
- _____ Personal mail read to you if requested.
- _____ Business mail to person indicated below.

Name: _____

Mailing Address: _____
_____

Relationship: _____

You or your Responsible Party may modify these instructions by delivery of written notice to the Facility.

8.   Dispute Resolution Program, Arbitration Agreement, and WAIVER OF JURY TRIAL.
(Read Carefully)

     A.   The Program.

     This Agreement creates a dispute resolution program (the "Program") which shall govern the resolution of any and all claims or disputes that would constitute a cause of action in a court of law that Facility may have now or in the future against you or any of your representatives, or that you or any of your representatives may have now or in the future against Facility, any parent or subsidiary of Facility, any company affiliated with Facility, or any of Facility's officers, directors, managers, employees, or agents acting in such capacity (hereinafter referred to as "Disputes") or that any other person may have arising out of the residency.  The Disputes whose resolution is governed by the Program shall include, but not be limited to, claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance.  Notwithstanding the foregoing, the Program shall not govern (i) any grievance brought either formally or informally under the Facility's grievance policy or with an appropriate state or federal agency (ii) an appeal to the appropriate state or federal entity regarding an involuntary transfer or discharge (iii) any complaint with an appropriate state or federal agency concerning the Facility's compliance with applicable regulations governing care, facility services, or residents' rights (iv) any complaint with an appropriate state or federal agency concerning resident abuse, neglect, misappropriation of resident property or non-compliance with advance directive requirements or (v) any claim or dispute involving solely a monetary claim in an amount less than $25,000, and any such claim or dispute shall not be deemed a Dispute hereunder.

     B.   Arbitration.

     All Disputes covered under the Program between you and the Facility shall be resolved by binding arbitration.  Arbitration is a procedure in which the parties submit a Dispute to one or more mutually selected, impartial persons for a final and binding decision.  The parties expressly agree to settle all Disputes by binding arbitration rather than by a judge, jury, or administrative agency.

     Arbitration is a complete substitute for a trial by a judge or a jury.  The parties hereby specifically waive their rights to a jury trial.  Only Disputes that would constitute a legally cognizable cause of action in a court of law may be arbitrated.

       **THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION.**

     Subject to the terms and provisions of this Agreement, any arbitration conducted pursuant to this Agreement shall be conducted by JAMS, an independent and impartial entity regularly engaged in providing arbitration services selected by the company, in accordance with the JAMS Comprehensive Arbitration Rules and Procedures (the "Rules").  In the event of any material, adverse inconsistency between the terms of this Agreement and the Rules, the arbitrator shall apply the terms of this Agreement.  The parties acknowledge that this provision alters the Rules.  A copy of the Rules can be obtained from the Facility or from JAMS' website, http://www.jamsadr.com.  The Rules are hereby incorporated by reference into this Agreement verbatim, except to the extent they are modified by this Agreement.

C.    Arbitration Procedure.

The arbitration process starts when either party files a demand for arbitration with JAMS. A demand for arbitration must be filed within the applicable limitations period provided by law for the Dispute. A form to begin the arbitration process, as well as the location of the nearest office of JAMS, can be obtained from the Facility or from the JAMS website. The party demanding arbitration must notify the other party of its demand for arbitration by sending a copy of its written demand for arbitration to the other party.

A demand for arbitration must be sent by certified mail together with a $50 check or money order made payable to JAMS as a filing fee. The $50 sent with the demand for arbitration will be used to pay part of the administrative fee charged by JAMS. Any administrative fee in excess of $50, as well as any compensation owed to the arbitrator(s), shall be paid by the Facility, unless the party demanding the arbitration objects and wishes to share equally in such costs.

The arbitration shall take place in or near the city in which the Facility is located, unless the parties mutually agree on another location. The arbitrator(s) shall be selected in accordance with the procedures set out in the Rules.

The arbitrator(s) shall be impartial and independent and shall apply the substantive law (and the law of remedies, if applicable) of the state in which the Facility is located, or federal law, or both, as may be applicable to the Dispute. The arbitrator(s) shall have the power to award all relief that a court would be able to award under the circumstances. The arbitrator(s) must apply statutory and case law to the facts of the Dispute and must apply the burden of proof required by applicable federal, state or local law. The arbitrator(s) also shall have the exclusive authority to decide whether an enforceable agreement to arbitrate exists between the parties. The arbitration shall be final and binding upon the parties.

Each party shall have the right to engage in discovery consistent with the Alabama Rules of Civil Procedure, subject to any restrictions contained in applicable statutes, rules, and regulations, including, but not limited to, the Alabama Medical Liability Act, Alabama Code § 6-5-540 et seq. and Alabama Code § 22-21-8 et seq. The admissibility of evidence at the arbitration hearing shall be determined in accordance with the Alabama Rules of Evidence, subject to any restrictions contained in applicable statutes, rules, and regulations, including, but not limited to, the Alabama Medical Liability Act, Alabama Code § 6-5-540 et seq. and Alabama Code § 22-21-8 et seq.

Each party may be represented by an attorney. Each party is responsible for paying its own costs and attorney's fees associated with arbitration. If a party prevails on a statutory claim which provides for the prevailing party to receive payment for its attorney's fees, or if there is a written agreement between the parties providing for the prevailing party to receive payment for its attorney's fees, the arbitrator(s) may award reasonable fees to the prevailing party in accordance with the standards established under such statute or agreement.

D.    Effect of a Party's Refusal to Arbitrate Dispute.

In the event that any party to this Agreement refuses to go forward with arbitration, the party compelling arbitration reserves the right to proceed with arbitration, the appointment of an arbitrator, and arbitration proceeding to resolve the Dispute despite the refusal to participate or absence of the opposing party. Submission of any Dispute under this Agreement to arbitration may only be avoided by a valid court order, indicating that the Dispute is beyond the scope of this Arbitration Agreement, or contains an illegal aspect precluding the resolution of the Dispute by arbitration.

Any party to this Agreement who refuses to go forward with arbitration hereby acknowledges that the arbitrator will go forward with the arbitration proceeding and render a binding decision without the participation of the party opposing arbitration or despite its absence at the arbitration proceeding.

E.      Optional Arbitration Appeal Procedure.

At any time before the arbitrator's award, if any, becomes final pursuant to JAMS Comprehensive Arbitration Rules and Procedures (the "Rules"), the parties may agree to the JAMS Optional Arbitration Appeal Procedure (the "Appeal Procedures"). All parties must agree in writing for such procedure to be effective. Once a party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it unless it withdraws from the Arbitration in accordance with the Rules.

In the event a party wishes to appeal, the appeal shall be governed by the Appeal Procedures. Provided the parties have previously agreed that the Appeal Procedures will apply to the Dispute, the party appealing the Dispute must serve, in writing, a letter or other writing specifying the elements of the award that are being appealed and a brief statement of the basis for the appeal.

**In the event a party wishes to appeal, all costs relating to the appeal, including all administrative appeal costs, as well as any compensation owed to JAMS or the appeal panel member(s) shall be paid by the party appealing the award.** If both parties choose to appeal the arbitrator's award, the appeal costs shall be borne equally by the parties appealing the award.

A copy of the Appeal Procedures can be obtained from the facility or from the JAMS website, http://www.jamsadr.com. The Appeal Procedures are hereby incorporated by reference into this Agreement verbatim except to the extent that they are modified by this Agreement.

F.      Binding Nature of Arbitration and Judicial Review.

Subject only to the Arbitration Appeal Procedure, the decision of the arbitrator(s) shall be final and binding on the Facility and you. Both parties acknowledge that arbitration is a complete substitute for traditional litigation and hereby waive their respective rights to file a private lawsuit and have that suit heard in court by a judge or a jury. Should the parties agree to the Optional Appeal Procedure contained in Section 8(E) above, the decision of the Appeal Panel shall be final and binding upon the Facility and you.

Either party may bring an action in any proper court to require arbitration under this Agreement and to enforce an arbitration award. A party opposing enforcement of an award may not do so in an enforcement proceeding but must bring a separate action in any court of competent jurisdiction to set aside the award where the scope of review will be that established by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

G.      General.

The parties acknowledge that Facility regularly engages in transactions involving interstate commerce and that the services provided by Facility to you involve such interstate commerce. The parties expressly agree that this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

948033.02                               12

This Program shall survive the termination of this Agreement and shall apply to all Disputes whether they arise or are asserted before, during, or after the termination of this Agreement. This Program can only be revoked or modified by a writing or writings signed by all parties specifically stating an intent to revoke or modify this Program.

The invalidity of a portion or provision of this Program shall not affect the validity of any other portion or provision. If any portion or provision of this Program is found to be invalid or unenforceable in any respect, the remainder of the Program will remain in full force and effect.

This Agreement constitutes the entire agreement of the parties with respect to the Program, as a complete and final integration thereof. All understandings and agreements heretofore had between the parties are merged into this Agreement, which alone fully and completely expresses their understandings. In entering this Agreement, neither party hereto has relied upon a representation or warranty made by either party which is not contained in this Agreement or expressly referred to herein.

9.   Transfer/Discharge

You agree, at Facility's request, to transfer within the Facility, from time to time, to rooms that, in Facility's opinion, best accommodate your ability and/or your need for services (i.e., high or low intensity unit) and/or to reasonably accommodate the needs of another of residents of the Facility or an individual seeking needed admission into the Facility. You further recognize and agree that the Facility is configured with certain areas being high intensity designated, certain areas low intensity designated, certain areas that are eligible for Medicare program participation, certain areas eligible for skilled care (SNF) services, certain areas eligible for intermediate (ICF) services, etc., and further that the Facility will attempt to meet your reasonable nursing home service needs but also while attempting to meet the reasonable nursing home service needs of others, including the community at large which the Facility is licensed to and expected to reasonably accommodate.

The following circumstances may result in your discharge from the Facility:

* Your transfer or discharge is necessary to meet your welfare needs and your welfare needs cannot be met in the Facility.
* Your health has improved sufficiently so that you no longer need the services provided by the Facility.
* Your residency in the Facility endangers the safety of other individuals in the Facility.
* Your residency in the Facility endangers the health of other individuals in the Facility.
* Your failure, after reasonable and appropriate notice, to pay for your stay at the Facility.
* Your discharge is required by governmental rules and regulations.
* The Facility ceases operations.
* The destruction or partial destruction of the Facility's building.
* Your election to vacate Facility premises (requests discharge).

In the event you choose to leave the Facility permanently, or a person with legal authority to act on your behalf removes you from the Facility, you and your Responsible Party agree to give the Facility written notice of your planned departure at least ten days prior to the date of your departure, unless you are a Medicare or Medicaid recipient. You and your Responsible Party agree that in the event you fail to give the required ten (10) days notice, and you are *not* a Medicare or Medicaid recipient, you will pay to the Facility an amount equal to the prevailing Daily Rate for each day within the ten-day period prior to your departure that the Facility had no written notice of your planned departure.

The Facility will use reasonable efforts to safeguard your personal property remaining at the Facility after discharge, but the Facility will not be liable for any damage to or loss of any of your personal property that is left at the Facility after your discharge. The Facility may dispose of personal property left by you if such property is not claimed by you within thirty (30) days after your discharge.

In the event of your death, you and your Responsible Party authorize the Facility to release your body to ___Simpson___ funeral home located in _____.

## 10. Bed Signs

You and your Responsible Party ~~do~~ or do not _____ authorize the Facility, its employees, designees, and assigns to place above your bed in the Facility sign noting the proper care and maintenance for you. You and your Responsible Party understand that if you change your mind regarding the placement of any particular sign or wish to revoke this authorization, upon oral or written notice the Facility will promptly remove any such signs to which you object, or all signs if this authorization is revoked.

Initialed: Resident_____   Responsible Party_____

## 11. Photographs

The Facility may photograph or videotape you and may use such photographs or videotapes as described in the Handbook.

**The Facility is committed to preserving and protecting the rights of residents of the Facility. These rights may be infringed upon by the improper use of videotaping, audiotaping, or photography. The use of any video, audio, or photographic devices must be coordinated with the Facility's administration.**

## 12. Activities and Trips

The Facility will have no responsibility or liability of any kind whatsoever for any injuries which you might suffer as a result of your participation in or transportation to any program of therapeutic or recreational activities outside of the Facility.

13. Visitors, Companions, Sitters and Private Duty Nurses

All companions, sitters and private duty nurses engaged by you or your Responsible Party, as well as your visitors are subject to the rules and regulations perpetually in effect in the Facility. You shall pay all expenses (including meals) of such individuals. You agree to indemnify and hold the Facility harmless from all losses, damages, costs, claims, liabilities and expenses, including attorney fees and court costs arising from the services, actions, inactions, etc., of any sitters, companions, and private duty nurses engaged by you or your Responsible Party and for same relative to any of your visitors.

All companions, sitters, and private duty nurses may be required to provide proof of freedom from communicable diseases and proof of any licenses or certifications as may apply. The Facility shall not be expected by you to review, approve or otherwise opine to the qualifications and/or abilities, etc., of any of your service providers or visitors, etc.

14.    Notices

Any notice, demand or communication which is required, permitted or desired to be given under this Agreement or otherwise shall be in writing and shall be deemed sufficiently given when personally delivered or mailed to the addresses set forth in the signature page for you, your Responsible Party and the Facility. In addition to you and your Responsible Party, you hereby authorize the Facility to provide information with respect to your condition to any of the authorized individuals set forth in the signature pages or in a written notice to the Facility from you or your Responsible Party.

15.    Miscellaneous

A.    Costs of Collection

In the event that you or your responsible party default in any payment obligation that you have hereunder, the Facility shall be entitled to reimbursement from you and your Responsible Party for all reasonable costs of collection, including, without limitation, attorneys' fees, expenses, and costs, provided that if the claim for payment is a dispute subject to the Dispute Resolution Program, Arbitration Agreement, and Waiver of Jury Trial (the "Program") set forth in Paragraph 8 hereof, the terms of Paragraph 8 shall govern the responsibility for payment of the costs of the proceeding under the Program.

B.    Amendment

This Agreement may be amended by the Facility at any time and from time to time upon not less than thirty (30) days written notice to you and your Responsible Party to revise the Handbook as permitted in Section 1, to revise the pharmacy selection procedures in Sections 3 and 5, to revise the charges for private services and Non-covered services as permitted in Section 6, and to make changes required, recommended or suggested to comply with federal, state and local laws, regulations, rules, orders or guidelines. Other amendments to this Agreement may be amended by the written agreement between you (or your Responsible Party) and the Facility.

C.    Entire Agreement

This Agreement, together with the Handbook and all appendices and amendments hereto are the entirety of the agreement between the Facility and you and your Responsible Party. All oral statements or prior written material not specifically incorporated in this Agreement or in the Handbook shall be superseded in their entirety and have no force and effect upon the execution hereof.

948033.02                                             15

D.      Incorporation of Appendices

The Appendices attached hereto are specifically incorporated into this Agreement, and are a part of this Agreement.

E.      Non-Assignability

You and your Responsible Party acknowledge that your right to reside at the Facility is personal and is not assignable. You may not assign your rights under this Agreement to any other person or entity. Your obligations to the Facility under this Agreement will automatically transfer to your estate and will be binding upon the heirs, representatives and successors of your estate. The Facility may assign its rights under this Agreement without the consent of you or your Responsible Party, including an assignment by reason of merger or change of ownership.

F.      Binding Obligation

You and your Responsible Party agree that the terms, conditions, restrictions, and obligations of this Agreement bind you and your respective heirs, successors and self-designated representatives acting on your behalf, including but not limited to, family members, and any privacy or advocacy group.

G.      Waiver of Breach

The waiver by any party to this Agreement of a breach of the Agreement or the violation of any provision of the Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the Agreement or provision thereof.

H.      Severability

In the event any provision of this Agreement is held to be unenforceable for any reason, such unenforceability shall not affect the remainder of this Agreement, which shall remain in full force and effect and be enforceable in accordance with its terms.

I.      Governing Law

This Agreement shall be interpreted, construed and enforced pursuant to and in accordance with the laws of the State of Missouri. _____Jasper_____ County, Missouri shall be the sole and exclusive venue for any Dispute, special proceeding, or any other proceeding between the parties that may arise out of, in connection with, or by reason of this Agreement.

By your execution of this Agreement and/or acceptance of service at the Facility, you and Responsible Party acknowledge, understand and agree that this Agreement includes a dispute resolution program for all claims and disputes between you and the Facility (except for monetary claims involving less than $25,000) covered by the Program (as previously defined herein); that all such claims and disputes will be resolved by binding ARBITRATION; that ARBITRATION is a complete substitute for traditional litigation; and that you and your Responsible Party waive your right to file a lawsuit in regard to a Dispute and to have any Dispute heard in a court by a judge or jury.

You and your Responsible Party further acknowledge that you have had an opportunity to question a representative of the Facility concerning the terms of this Admission Agreement and the contents of the Handbook and that any questions you had have been answered to your satisfaction.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this _____ day of _____, 20 ____.

Copy all notices to (other than
Responsible Party):

(name) _____

_____

(address) _____

RESIDENT

(name) _Laura_ _Endicott_
(signature) _____
(address- street address required) ___

_____

RESPONSIBLE PARTY

(name) _Jim_ _Collins_
(signature) _Jim_ _Call_
(address–street address required) ___

_____

phone(H)_____ (W) _____
(E-mail) _____

FACILITY

_____
By: _____
    Its: _____

(address) _____

        Resident and Responsible Party hereby authorize the Facility to provide information with respect to Resident's condition to the individuals listed below, if any:

_____ **Resident**          _____ **Responsible Party**

Authorized Individuals:

_____          _____

(typed name)                         (typed name)

_____          _____

(address)                            (address)

_____          _____

948033.02                              18

STATE OF MISSOURI

COUNTY OF _Jasper_____

     I, the undersigned authority, a Notary Public in and for said County, in said State, certify that _____, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said Admission Agreement ___he executed the same voluntarily on the day the same bears date.

     GIVEN under my hand and official seal this ___ day of _____, 20___.


                                      _____
                                      Notary Public
                                      My Commission Expires: _____


                                            (NOTARY SEAL)


STATE OF MISSOURI

COUNTY OF _____

     I, the undersigned authority, a Notary Public in and for said County, in said State, certify that _____, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said Admission Agreement ___he executed the same voluntarily on the day the same bears date.

     GIVEN under my hand and official seal this ____ day of _____, 20___.


                                        _____
                                        Notary Public
                                      My Commission Expires: _____


                                            [NOTARY SEAL]

948033.02                           19

STATE OF MISSOURI
COUNTY OF _____

       I, the undersigned authority, a Notary Public in and for said County, in said State, certify that
_____, whose name as _____,
d/b/a/ _____a corporation, is signed to the foregoing Admission
Agreement and who is known to me, acknowledged before me on this day, that, being informed of the contents
of said Admission Agreement ____he, as such officer and with full authority, has executed the same voluntarily
for and as the act of said corporation.

       GIVEN under my hand and official seal this ____ day of _____, 20_____ .


                 _____
                 Notary Public
                     My Commission Expires:_____

                    [notary seal]

# APPENDIX A

## Patient Account Fund Authorization

NORTHPORT HEALTH SERVICES
PATIENT FUND AUTHORIZATION

I, _____, for myself or as the Responsible Party for
_____ do hereby give the Facility and its designees authorization to handle the
above-named Resident's personal funds. I understand that all monies handled by this Facility will be retained in a
designated bank account. I further understand that small amounts of cash will be retained in the business office
and the above-named Resident may obtain up to fifty dollars (one hundred dollars for Medicare residents) from the
business office in cash within a reasonable period of time, when requested, the same day. Requests exceeding this
amount will be honored within three banking days. I understand that any amount obtained from the business office
will be debited from the above-named Resident's designated bank account.

   I further understand that funds contained in the Resident's designated bank account may be withdrawn
from the account by the Facility and its designees to pay any Non-covered charges incurred by the Resident at this
Facility.

   I further understand that the Facility and its designees will assume no responsibility for the above-named
Resident's personal funds unless they are retained by the Facility.


_____
RESIDENT


_____
RESPONSIBLE PARTY


_____
DATE


948033.02                                    22

**APPENDIX B**

Billing Authorization Form for Therapy

## AUTHORIZATION FOR TREATMENT, ASSIGNMENT OF BENEFITS, PAYMENT RESPONSIBILITY AND RELEASE OF INFORMATION

Patient's Name: _Laura Endicott_

Authorization for Treatment:  The undersigned authorize Restore Therapy Services, Ltd. and/or any of their contractors (collectively referred to as "Provider"), to render to patient physical therapy, occupational therapy, speech therapy, audiology, psychological services or other related services (collectively referred to as "Therapy Services") that provider and/or Patient's physician determine to be necessary or advisable.  The undersigned agree to cooperate with all reasonable requests of Provider in connection with Provider's rendition of Therapy Services.

Assignment of Benefits:  The undersigned hereby assign and transfer to Provider the right to any and all third-party payments (including Medicare, Medicaid and/or private medical insurance benefits) to which the undersigned may be or become entitled to for Therapy Services rendered by Provider.  The undersigned hereby authorizes Provider to apply and file for all such benefit payments in the name of and on behalf of Patient and direct that such payments be made directly to Provider.  Any insurance benefit payments received by the undersigned for services rendered by Provider shall be paid to Provider.

Payment Responsibility:  The Patient shall be financially responsible for any portion of Provider's invoice that is not paid, except for payments denied by Medicare or for covered services provided to Medicaid recipients.  The undersigned agrees to execute any and all documents and perform any acts that Provider may reasonably request to ensure that all third-party benefits for Therapy Services are paid to Provider.

Release of Information:  The undersigned hereby certify that all information provided to Provider by the undersigned is true and accurate in all respects.  The undersigned hereby authorize Provider to disclose any information, medical and nonmedical, furnished Provider or obtained by Provider in connection with Patient's diagnosis and/or treatment, to any physician, governmental agency (including the U.S. Department of Health and Human Services or any of its intermediaries or carriers), insurance company or health care provider requesting such information.  The undersigned agree to allow Provider access to Patient's medical records and agree to all Provider to make copies of such records.  The undersigned consent to Provider's discussing patient's medical condition with Patient's family members for medical or claims management purposes.

Executed this __2__ day of __August__, 20_04_.

Patient _____

Patient's Representative (specify relationship) _____

Reason Patient Is Unable To Sign _____

Witness:_____

948033.02                                   24

**APPENDIX C**

Advance Directive Acknowledgment Form

## ADVANCE DIRECTIVE ACKNOWLEDGMENT

NAME:_____                SOCIAL SECURITY NO.:_____

IDENTIFICATION NO.:_____           DATE OF BIRTH:_____

The Facility is required by law to have a resident or legal representative to execute an Advance Directive Acknowledgment. The Facility does not take a position regarding a resident or his legal representative executing an advance directive.

### PLEASE READ THE FOLLOWING FIVE STATEMENTS
**Resident and Responsible Party:  Place your initials after each statement.**

1.  I have been given Advance Directive written materials to include A Brief Summary: Missouri Law Regarding a Patient's Right to Make Health Care Treatment Decisions, Durable Power of Attorney for Health Care, and Health Care Directive, published by the Missouri Bar Association, and a copy of the Policies and Procedures of the Facility on Advance Directives.
    _____ (Resident Initials)        _____ (Responsible Party initials)
2.  Resident and Responsible Party have been informed of rights to formulate Advance Directives.
    _____ (Resident Initials)        _____ (Responsible Party initials)
3.  Resident and Responsible Party understand that they are not required to have an Advance Directive in order to receive medical treatment at this health care facility:
    _____ (Resident Initials)        _____ (Responsible Party initials)
4.  Resident and Responsible Party understand that the terms of any Advance Directive that has been executed will be followed by the health care facility and caregivers to the extent permitted by law.
    _____ (Resident Initials)        _____ (Responsible Party initials)
5.  It has been explained to me in language I can understand about the Facility Do Not Resuscitate policy, the Facility Withdraw/Withhold policy and the Facility Ethics Committee policy, and the Facility Policy on Advance Directives.
    _____ (Resident Initials)        _____ (Responsible Party initials)

### PLEASE CHECK ONE OF THE FOLLOWING STATEMENTS
_____ **Advance Directive in existence**
_____ **Advance Directive not in existence**

Dated:_____

_____          _____
Resident                                              Witness

_____          _____
Responsible Party                               Witness

NOTE:  if a resident is unable to sign, please state reason why:

_____

**APPENDIX D**

**CONSENT OF RELATED PARTIES TO
DISPUTE RESOLUTION PROGRAM, ARBITRATION
AGREEMENT, AND WAIVER OF JURY TRIAL**

948033.02

## CONSENT TO ARBITRATION AND WAIVER OF JURY TRIAL
(Read Carefully)

**BY EXECUTING THIS ARBITRATION AGREEMENT, THE PARTIES ACKNOWLEDGE THEIR UNDERSTANDING AND AGREEMENT THAT ALL DISPUTES WILL BE RESOVED BY BINDING ARBITRATION, THAT ARBITRATION IS A COMPLETE SUBSTITUTE FOR TRADITIONAL LITIGATION, AND THAT THEY ARE GIVING UP AND WAIVING THEIR RIGHTS TO HAVE THEIR DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY.**

By my signature and/or acceptance of the services of the Facility, I hereby consent to the Dispute Resolution Program, Arbitration Agreement, and Waiver of Jury Trial (the "Program"), set forth in Section 8 of the Admission Agreement for _Laura Endicott_ (name of Resident) to which this consent is attached. I further represent and warrant that I have read and understand the Program; that I have been advised that it will affect my legal rights and the legal rights of the Resident; and that I have been given an opportunity to seek advice legal from counsel concerning the Program.

Dated this _2_ day of _August_, 20_04_.

Resident

_[signature]_

Responsible Party

Other Related Parties:

APPENDIX E

**Notice of Hospital Transfer
And Bedhold Authorization**

## NOTICE OF HOSPITAL TRANSFER
## AND BED HOLD AUTHORIZATION

I, _____, hereby certify that I have read and understand the facility's bed hold policy, as set forth below:

You or your Responsible Party may request the Facility to hold a bed open for you while you are absent from the Facility for temporary, medically necessary stays in a hospital or other facility. Except as provided below, however, the facility will have no obligation to hold open a bed unless the Facility agrees to do so in writing.

*Medicaid or Medicare Resident:* If your care is being reimbursed by Medicare or Medicaid and you are transferred to an acute care hospital, the Facility will offer you or your responsible Party the opportunity to hold a bed at the prevailing Daily Rate.

Neither Medicare nor Medicaid will pay for bed-holding. In order to effect a bed hold, you or your responsible party must notify the Facility within twenty-four (24) hours of your transfer or discharge of your desire to exercise your right to a bed hold. If you elect not to hold a bed, then you will be offered the next availbable semi-private bed at such time as you once again require the services of the Facility, assuming you are still eligible for Medicare or Medicaid at that time.

*Private Pay Resident:* If you are a Private Pay resident you may also request a bed hold from the Facility. You must pay the prevailing Daily Rate for the entire period of the bed hold. If you have private insurance, such private insurance may or mayh not cover the cost of a bed hold.

If you request a bed hold, then upon return we will make every effort to place you in the same room you occupied prior to your departure from the Facility, assuming you require the same level of care upon your return. The Facility can only guarantee a bed in the Facility, however, and may not be able to hold a particular room.

In addition, this shall serve as notice of your transfer to _(Hospital Name)_____ on _____(Date of Transfer)_____ Your transfer to the hospital has become necessary in order to meet your needs for medical care. This notice is made in accordance with CFR 483.12.

I hereby request that the Facility hold a bed for me. I understand that I will be responsible for payment of the prevailing Daily Rate of $_____/day for each day that the Facility holds a bed for me and until such time as the Facility receives written notice from me that I am releasing the bed.


_____
Resident/Responsible Party

_____
Date


_____
Witness

_____
Date


I hereby request that the Facility not hold a bed for me.


_____
Resident/Responsible Party

_____
Date


_____
Witness

_____
Date


948033.02                                    30



Welcome to **NHS** & Affiliates

About NHS

NHS Quality Commitment

Our Facilities

Contact Information

Employment Opportunities

Health Care Related Sites



**HIPAA Privacy Notice**

*Our Family Caring For Yours*

We welcome your comments and suggestions! Contact Us.
Copyright 2006
NHS Management, L.L.C.
931 Fairfax Park
Tuscaloosa, AL  35406
(800) 489-1046

EXHIBIT

2

tabbies

Case 2:05-md-01657-EEF-DEK   Document 4636-1   Filed 05/10/06   Page 32 of 40



| Home | About NHS | Quality Commitment | Our Facilities | Contact Information | Career Opportunities | Healthcar Sites |

NHS currently operates 40 facilities in four states.
Click on a state below to view our facilities in that state:

## Alabama

## Arkansas

## Florida

## Missouri

## *Our Family Caring For Yours*

We welcome your comments and suggestions! Contact Us.
Copyright 2006
NHS Management, L.L.C.
931 Fairfax Park
Tuscaloosa, AL 35406
(800) 489-1046

Case 2:05-md-01657-EEF-DEK   Document 4636-1   Filed 05/10/06   Page 33 of 40

Page 1 of 1



| Home | About NHS | Quality Commitment | Our Facilities | Contact Information | Career Opportunities | Healthcare Sites |



## Our Family Caring For Yours

We welcome your comments and suggestions! Contact Us.
Copyright 2006
NHS Management, L.L.C.
931 Fairfax Park
Tuscaloosa, AL  35406
(800) 489-1046

9/21/04
11/26/04

| MUTUAL OF OMAHA MEDICARE | | MUTUAL OF OMAHA PLAZA | OMAHA | NE  68175 | TEL# 4023512860 VER# 3030M |
|---|---|---|---|---|---|

265307        NORTHPORT HEALTH SERVICES                PART A            PAID DATE: 09/17/2004        REMIT#:  142    PAGE:      1

| PATIENT NAME | PATIENT CNTRL NUMBER | RC | REM | DRG# | DRG OUT AMT | COINSURANCE | PAT REFUND | CONTRACT ADJ |
|---|---|---|---|---|---|---|---|---|
| HIC NUMBER | ICN NUMBER | RC | REM | OUTCD CAPCD | | COVD CHGS | ESRD NET ADJ | PER DIEM RTE |
| FROM DT    THRU DT | NACHG  HICHG  TOB | RC | REM | PROF COMP | MSP PAYMT | NCOVD CHGS | INTEREST | PROC CD AMT |
| CLM STATUS | COST  COVDY  NCOVDY | RC | REM | DRG AMT | DEDUCTIBLES | DENIED CHGS | | NET REIMB |

| | S | | A2 | MA02 | .00 | 1642.50 | .00 | 195.02- |
|---|---|---|---|---|---|---|---|---|
| | | 02 | 72 | | | 1743.58 | .00 | .00 |
| 08/01/2004 08/15/2004 | 213 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 1 | 15    15 | | 2 | .00 | .00 | .00 | | 296.10 |

| CHDICOTT | L M 004040 | | A2 | MA02 | .00 | 3285.00 | .00 | 1890.79- |
|---|---|---|---|---|---|---|---|---|
| | 20424801293202 | 02 | 72 | | | 9084.96 | .00 | .00 |
| 08/02/2004 08/31/2004 | 212 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 1 | 30    30 | | 2 | .00 | .00 | .00 | | 7690.66 |

| | | | A2 | MA02 | .00 | 2956.50 | .00 | 1342.68- |
|---|---|---|---|---|---|---|---|---|
| | | 02 | 72 | | | 9868.57 | .00 | .00 |
| 08/01/2004 08/31/2004 | 213 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 1 | 31    31 | | 2 | .00 | .00 | .00 | | 8254.75 |

| | L | | A2 | MA02 | .00 | 2299.50 | .00 | 2850.94- |
|---|---|---|---|---|---|---|---|---|
| | | 02 | 72 | | | 3617.27 | .00 | .00 |
| 08/01/2004 08/21/2004 | 213 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 19 | 21    21 | | 2 | .00 | .00 | .00 | | 4168.71 |

| | R | | A2 | MA02 | .00 | 3394.50 | .00 | 3552.80- |
|---|---|---|---|---|---|---|---|---|
| | | 02 | 72 | | | 5919.67 | .00 | .00 |
| 08/01/2004 08/31/2004 | 213 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 19 | 31    31 | | 2 | .00 | .00 | .00 | | 6077.97 |

| | T | | A2 | MA02 | .00 | 1752.00 | .00 | 2557.99- |
|---|---|---|---|---|---|---|---|---|
| | | 02 | 72 | | | 8990.46 | .00 | .00 |
| 08/01/2004 08/31/2004 | 213 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 1 | 31    31 | | 2 | .00 | .00 | .00 | | 9796.45 |

| | L | | A2 | MA02 | .00 | 1752.00 | .00 | 2569.79- |
|---|---|---|---|---|---|---|---|---|
| | | 02 | 72 | | | 5447.57 | .00 | .00 |
| 08/01/2004 08/31/2004 | 213 | | B3 | .00 | .00 | .00 | .00 | .00 |
| 19 | 31    31 | | 2 | .00 | .00 | .00 | | 6265.36 |

SUBTOTAL FISCAL YEAR - 2004

| | | | | | .00 | 17082.00 | .00 | 14959.92- |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 44672.08 | .00 | .00 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | 190    190 | | | .00 | .00 | .00 | | 42550.00 |

| MUTUAL OF OMAHA MEDICARE | | MUTUAL OF OMAHA PLAZA | OMAHA | NE  68175 | TEL# 4023512860 VER# 3030M |
|---|---|---|---|---|---|

265307        NORTHPORT HEALTH SERVICES                PART A            PAID DATE: 09/17/2004        REMIT#:  142    PAGE:      2

| PATIENT NAME | PATIENT CNTRL NUMBER | RC | REM | DRG# | DRG OUT AMT | COINSURANCE | PAT REFUND | CONTRACT ADJ |
|---|---|---|---|---|---|---|---|---|
| HIC NUMBER | ICN NUMBER | RC | REM | OUTCD CAPCD | | COVD CHGS | ESRD NET ADJ | PER DIEM RTE |
| FROM DT    THRU DT | NACHG  HICHG  TOB | RC | REM | PROF COMP | MSP PAYMT | NCOVD CHGS | INTEREST | PROC CD AMT |
| CLM STATUS | COST  COVDY  NCOVDY | RC | REM | DRG AMT | DEDUCTIBLES | DENIED CHGS | | NET REIMB |

SUBTOTAL PART A

| | | | | | .00 | 17082.00 | .00 | 14959.92- |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 44672.08 | .00 | .00 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | 190    190 | | | .00 | .00 | .00 | | 42550.00 |

EXHIBIT

3

| | | | | | | | | | | | 4 TYPE OF BILL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WEBB CITY HEALTH & REHAB | | | | | | | 004040 | | | | 212 |
| 2077 WEST CARL JUNCTION | | | | | | | | | | | |
| WEBB CITY, MO 64870-0000 | | 5 FED.TAX NO. | 6 STATEMENT COVERS PERIOD FROM THROUGH | | 7 COV D. | 8 N-C D. | 9 C-I D. | 10 L-R D. | 11 | | |
| | | 72-1399597 | 080204 | 083104 | 30 | | 30 | | | | |

| 12 PATIENT NAME | | | 13 PATIENT ADDRESS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ENDICOTT, LAURA | | | 332 S. BALL ST  WEBB CITY, MO 64870-0000 | | | | | | | |

| 14 BIRTHDATE | 15 SEX | 16 MS | 17 ADMISSION DATE | HR | 18 TYPE | 19 SRC | 20 D HR | 21 22 STAT | 23 MEDICAL RECORD NO. | | CONDITION CODES | | | | | | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03101939 | F | W | 080204 | 08 | 3 | 3 | | 30 | 004040 | | | | | | | | |

| 29 | | OCCURRENCE | | OCCURRENCE | 33 OCCURRENCE | 34 OCCURRENCE | 35 | OCCURRENCE SPAN | | 36 OCCURRENCE SPAN | | 37 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CODE | DATE | CODE | DATE | CODE DATE | CODE DATE | CODE | FROM | THROUGH | CODE FROM THROUGH | | A |
| | | | | | | 70 | 070104 | 080204 | | | | B |
| | | | | | | | | | | | | C |

| 38 | 39 VALUE CODES | | 40 VALUE CODES | | 41 VALUE CODES | |
|---|---|---|---|---|---|---|
| | CODE | AMOUNT | CODE | AMOUNT | CODE | AMOUNT |
| a | 09 | 3285 00 | | | | |
| b | | | | | | |
| c | | | | | | |
| d | | | | | | |

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
|---|---|---|---|---|---|---|---|
| 0022 | RUG-III | RUB07 | 081304 | 16 | 00 | | |
| 0022 | RUG-III | RVC11 | 080904 | 14 | 00 | | |
| 0120 | SEMI-PRIVATE ROOM | 102.00 | 083104 | 30 | 3060 00 | | |
| 0250 | PHARMACY | | 083004 | 1 | 515 60 | | |
| 0300 | LABORATORY | | 083004 | 14 | 81 41 | | |
| 0420 | PHYSICAL THERAPY | | 082604 | 72 | 2103 67 | | |
| 0430 | OCCUPATIONAL THERAPY | | 082704 | 67 | 1992 44 | | |
| 0440 | SPEECH THERAPY | | 080304 | 21 | 1331 84 | | |
| | | | | | | | |
| 0001 | TOTAL | | | | 9084 96 | | |

| 50 PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
|---|---|---|---|---|---|---|
| MEDICARE | 265307 | Y | Y | | 7690 66 | |
| UNITED AMERICAN INSURANCE CO | | | Y | | | |

| 57 | *DUE FROM PATIENT ▷* |
|---|---|

| 58 INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| ENDICOTT        LAURA | 18 | | | |
| ENDICOTT        LAURA | 18 | | | |

| 63 TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION |
|---|---|---|---|
| | | | |

| 67 PRIN. DIAG. CD. | 68 CODE | 69 CODE | 70 CODE | OTHER DIAG. CODES | | | 74 CODE | 75 | 76 ADM. DIAG. CD. | 77 E-CODE | 78 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 436 | 7843 | 3449 | 4019 | 3659 | | | | | 436 | | |

| 79 P.C. | 80 PRINCIPAL PROCEDURE CODE DATE | 81A OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE | 76 ATTENDING PHYS. ID  MDR9351 |
|---|---|---|---|---|
| | OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE | B18503  PATEL, R OTHER PHYS. ID |

| 84 REMARKS | J. OTHER PHYS. ID |
|---|---|
| | |
| | 85 PROVIDER REPRESENTATIVE        86 DATE |
| | X |

UB-92 HCFA-1450

ADD ON REAL IM SYSTEMS Form 15 Aug 1997

MUTUAL OF OMAHA MEDICARE          MUTUAL OF OMAHA PLAZA          OMAHA          NE  68175          TEL# 4023512860 VER# 3030M

265307          NORTHPORT HEALTH SERVICES                    PART A          PAID DATE: 10/22/2004          REMIT#:  147     PAGE:          1

| PATIENT NAME HIC NUMBER FROM DT   THRU DT CLM STATUS | PATIENT CNTRL NUMBER ICN NUMBER NACHG  HICHG  TOB COST  COVDY  NCOVDY | RC RC RC RC | REM REM REM REM | DRG# OUTCD CAPCD PROF COMP DRG AMT | DRG OUT AMT MSP PAYMT DEDUCTIBLES | COINSURANCE COVD CHGS NCOVD CHGS DENIED CHGS | PAT REFUND ESRD NET ADJ INTEREST | CONTRACT ADJ PER DIEM RTE PROC CD AMT NET REIMB |
|---|---|---|---|---|---|---|---|---|
| Co ▓▓▓▓ 09/08/2004 09/30/2004 19 | ▓▓▓▓ QC  N  212 23    23 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 328.50 5582.78 .00 .00 | .00 .00 .00 | 1884.63- .00 .00 7138.91 |
| Pl ▓▓▓▓  K 09/09/2004 09/30/2004 19 | ▓▓▓▓ QC  N  212 22    22 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 219.00 7532.52 .00 .00 | .00 .00 .00 | 30.12- .00 .00 7343.64 |
| ▓▓▓▓  D 09/23/2004 09/30/2004 1 | ▓▓▓▓ QC  N  212 8     8 | 02 | A2 B3 | MA02 .00 .00 | .00 .00 .00 | .00 3190.47 .00 .00 | .00 .00 .00 | 222.47 .00 .00 2968.00 |
| Co ▓▓▓▓  L 09/08/2004 09/30/2004 1 | ▓▓▓▓ QC  N  212 23    23 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 876.00 5628.34 .00 .00 | .00 .00 .00 | 1473.48- .00 .00 6217.82 |
| Pl ENDICOTT  L M 004040 09/01/2004 09/30/2004 1 | 20428101057702 QC  N  213 30    30 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 3285.00 8122.16 .00 .00 | .00 .00 .00 | 3641.14- .00 .00 8478.30 |
| Co ▓▓▓▓  H 09/01/2004 09/30/2004 19 | ▓▓▓▓ QC  N  213 30    30 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 3285.00 6348.59 .00 .00 | .00 .00 .00 | 2891.81- .00 .00 5955.30 |
| Pl ▓▓▓▓ 09/01/2004 09/30/2004 1 | ▓▓▓▓ QC  N  213 30    30 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 3285.00 6766.19 .00 .00 | .00 .00 .00 | 4997.11- .00 .00 8478.30 |
| Co ▓▓▓▓  R 09/01/2004 09/19/2004 19 | ▓▓▓▓ QC  N  213 19    19 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 2080.50 2643.14 .00 .00 | .00 .00 .00 | 2818.34- .00 .00 3380.98 |

MUTUAL OF OMAHA MEDICARE          MUTUAL OF OMAHA PLAZA          OMAHA          NE  68175          TEL# 4023512860 VER# 3030M

265307          NORTHPORT HEALTH SERVICES                    PART A          PAID DATE: 10/22/2004          REMIT#:  147     PAGE:          2

| PATIENT NAME HIC NUMBER FROM DT   THRU DT CLM STATUS | PATIENT CNTRL NUMBER ICN NUMBER NACHG  HICHG  TOB COST  COVDY  NCOVDY | RC RC RC RC | REM REM REM REM | DRG# OUTCD CAPCD PROF COMP DRG AMT | DRG OUT AMT MSP PAYMT DEDUCTIBLES | COINSURANCE COVD CHGS NCOVD CHGS DENIED CHGS | PAT REFUND ESRD NET ADJ INTEREST | CONTRACT ADJ PER DIEM RTE PROC CD AMT NET REIMB |
|---|---|---|---|---|---|---|---|---|
| Pl ▓▓▓▓  T 09/01/2004 09/24/2004 1 | ▓▓▓▓ QC  N  213 24    24 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 2628.00 3538.74 .00 .00 | .00 .00 .00 | 5632.32- .00 .00 6543.06 |
| Co ▓▓▓▓  L 09/01/2004 09/30/2004 19 | ▓▓▓▓ QC  N  213 30    30 | 02 | A2 72 B3 2 | MA02 .00 .00 | .00 .00 .00 | 3285.00 4167.98 .00 .00 | .00 .00 .00 | 58.08- .00 .00 941.06 |
| ▓▓▓▓  W 09/24/2004 09/30/2004 1 | ▓▓▓▓ QC  N  212 7     7 | 02 | A2 B3 | MA02 .00 .00 | .00 .00 .00 | .00 2726.76 .00 .00 | .00 .00 .00 | 654.20 .00 .00 2072.56 |
| SUBTOTAL FISCAL YEAR - 2004 |  |  |  |  |  |  |  |  |
|  | 246   246 |  |  | .00 .00 | .00 .00 .00 | 19272.00 56239.67 .00 .00 | .00 .00 .00 | 22550.26- .00 .00 59517.93 |
| SUBTOTAL PART A |  |  |  |  |  |  |  |  |
|  | 246   246 |  |  | .00 .00 | .00 .00 .00 | 19272.00 56239.67 .00 .00 | .00 .00 .00 | 22550.26- .00 .00 59517.93 |

```
EBB CITY HEALTH & REHAB          2              3 PATIENT CONTROL NO.        4 TYPE
077 WEST CARL JUNCTION                              004040                  OF BILL
EBB CITY, MO 64870-0000                                                     213
                         5 FED.TAX NO.    6 STATEMENT COVERS PERIOD  7 COV D. 8 N-C D. 9 C-I D. 10 L-R D. 11
                         72-1399597      090104  093004    30       30
PATIENT NAME                            13 PATIENT ADDRESS
NDICOTT  LAURA                          332 S BALL ST  WEBB CITY  MO 64870-0000
BIRTHDATE      15 SEX 16 MS   ADMISSION  21 D HR 22 STAT 23 MEDICAL RECORD NO.        CONDITION CODES          31
3101939  F   W  080204  08  3  3   30  004040
OCCURRENCE DATE                                         OCCURRENCE SPAN  FROM  THROUGH  37
                                           70  070104  080204            A
                                                                         B
                                                                         C
                                        VALUE CODES CODE  AMOUNT              VALUE CODES CODE AMOUNT
                                      a 09  3285 00
                                      b
                                      c
                                      d
REV. CD. 43 DESCRIPTION          44 HCPCS / RATES 45 SERV. DATE 46 SERV. UNITS 47 TOTAL CHARGES 48 NON-COVERED CHARGES 49
022  RUG-III                     RUB02         082704      30        00
120  SEMI-PRIVATE ROOM           102.00        093004      30   3060 00
250  PHARMACY                                  092804       1    711 33
300  LABORATORY                                092704      15     54 00
120  PHYSICAL THERAPY                          092404      55   1573 12
130  OCCUPATIONAL THERAPY                      092404      59   1698 27
140  SPEECH THERAPY                            093004      17   1025 44




01  TOTAL                                                       8122 16
PAYER                            51 PROVIDER NO.  52 REL 53 ASG 54 PRIOR PAYMENTS  55 EST. AMOUNT DUE  56
                                                   INFO  BEN
DICARE                           265307          Y    Y
TED AMERICAN INSURANCE CO                        Y    Y            8478 30
                    DUE FROM PATIENT >
NSURED'S NAME                  59 P.REL 60 CERT. - SSN - HIC. - ID NO.  61 GROUP NAME  62 INSURANCE GROUP NO.
DICOTT   LAURA                  18
DICOTT   LAURA                  18
REATMENT AUTHORIZATION CODES   64 ESC 65 EMPLOYER NAME            66 EMPLOYER LOCATION

RIN. DIAG. CD.      OTHER DIAG CODES                      76 ADM. DIAG. CD. 77 E-CODE  78
6.  7843  3449  4019  3659                                   436
c. 80  PRINCIPAL PROCEDURE  OTHER PROCEDURE  OTHER PROCEDURE
       CODE  DATE                                  MDR9351
       OTHER PROCEDURE  OTHER PROCEDURE  OTHER PROCEDURE  B18503  PATEL  R
EMARKS

                                                85 PROVIDER REPRESENTATIVE        86 DATE
                                                X
```

BB CITY HEALTH & REHAB
77 WEST CARL JUNCTION
BB CITY, MO 64870-0000

| | | 4 TYPE OF BILL |
|---|---|---|
| | 004040 | 213 |

5 FED.TAX NO. 72-1399597

| | 6 COV D. | 7 COV D. | 8 N-C D. | 9 C I D. | 10 L-R D. | 11 |
|---|---|---|---|---|---|---|
| 100104 101904 | 19 | | 19 | | | |

PATIENT NAME: DICOTT   LAURA

13 PATIENT ADDRESS: 332 S BALL ST   WEBB CITY, MO 64870-0000

| BIRTHDATE | 15 SEX | 16 MS | | | | | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. | | | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101939 | F | W | 080204 | 08 | 3 | 3 | 30 | 004040 | | | | |

| OCCURRENCE | | | | | OCCURRENCE SPAN | | | 37 |
|---|---|---|---|---|---|---|---|---|
| 101904 | | | | 70 | 070104 | 080204 | A B C | |

| | VALUE CODES | | |
|---|---|---|---|
| a | 09 | 2080 | 50 |
| b | | | |
| c | | | |
| d | | | |

| REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
|---|---|---|---|---|---|---|---|
| 22 | RUG-III | RUB02 | 082704 | 19 | | | |
| 20 | ROOM & BOARD SEMI-PRIVA | 102.00 | 101904 | 19 | 1938.00 | | |
| 50 | PHARMACY | | 100404 | 1 | 565.24 | | |
| 00 | LABORATORY | | 101104 | 14 | 90.60 | | |
| 20 | PHYSICAL THERAPY | | 101504 | 18 | 489.34 | | |
| 30 | OCCUPATIONAL THERAPY | | 101504 | 16 | 435.19 | | |
| 40 | SPEECH LANGUAGE PATHOLOG | | 101904 | 11 | 663.52 | | |
| 01 | TOTAL | | | | 4181.89 | | |

| PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
|---|---|---|---|---|---|---|
| DICARE | 265307 | Y | Y | | 5614.31 | |
| ITED AMERICAN INSURANCE CO | | Y | Y | | | |

**DUE FROM PATIENT >**

| INSURED'S NAME | 59 P.REL | 60 CERT.-SSN-HIC.-ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| DICOTT   LAURA | 18 | | | |
| DICOTT   LAURA | 18 | | | |

TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION

| PRIN. DIAG. CD. | | | | | 76 ADM. DIAG. CD. | 77 E-CODE | 78 |
|---|---|---|---|---|---|---|---|
| 6 | 7843 | 3449 | 4019 | 3659 | 436 | | |

| 80 PRINCIPAL PROCEDURE CODE / DATE | | OTHER PROCEDURE | | 82 ATTENDING PHYS ID MDR9351 |
|---|---|---|---|---|
| | | | | B18503   PATEL, R |

REMARKS

86 PROVIDER REPRESENTATIVE: X          89 DATE

### *ADMISSION INFORMATION*

DATE OF ADMISSION  8-2-04

NAME:  Laura Endicott

PRESENT ADDRESS:  332 S. Ball St     Webb City Mo

DATE OF BIRTH: 3-10-39     AGE:  65
BIRTHPLACE: West Plains

SEX/RACE/CITIZENSHIP/RELIGION/MARITAL STATUS: F/C/Y/C/W
ROOM#    111-2

PHYSICIAN: Patel
DENTIST/THERAPIST:
LAUNDRY:    (  FACILITY  )   /   FAMILY

PHARMACY: Bruner's

RESPONSIBLE PARTY NAME: Jim Collins   PHONE: 673-5724
RELATIONSHIP:  Son          ADDRESS: 514 N. Tennessee  Carterville Mo
                                                                    64835

ALTERNATE FAMILY CONTACT NAME:  ———      PHONE:
RELATIONSHIP:              ADDRESS:

MEDICARE#                    MEDICAID#

SOCIAL SECURITY#

INSURANCE: United American      POLICY #
ADDRESS: P O Box 810      Dallas Tx  75221
PHONE#

ADMITTED FROM:  Freeman's

DATES OF HOSP. STAY: 7-1-04      THRU 8-2-04
SKILLED DAYS USED      21          THRU
OCCUPATION: housewife
FATHER/MOTHER NAMES: Cooper
MILITARY SERVICE: ———
MORTUARY: ~~two~~ Simpson   ADDRESS:          PHONE:
DX'S:

ALLERGIES:  NKA

**EXHIBIT**

5

# STATEMENT

Webb City Nursing & Rehab Cntr
2077 W. Carl Junction Rd
Webb City, MO  64870





| AMOUNT PAID |
|---|
| DATE PAID |

JIM COLLINS
514 N TENNESSEE AVE          9
CARTERVILLE MO  64835-1019

| NAME   LAURA ENDICOTT | NUMBER   004040 | ROOM NUMBER   1112 |
|---|---|---|

Resident/Responsible Party

## AMOUNT DUE    $ 1,487.94

| DATE | DESCRIPTION | BALANCE | PAYMENTS | CURRENT CHARGES | ADVANCE BILL | TRANSACTION SUMMARY |
|---|---|---|---|---|---|---|
| 03/01/05 | PRIOR MONTHS BILLING | 1,959.94 | | | | 1,959.94 |
| 03/11/05 | RCT#  138 PAYMEN | | 1,530.97- | | | 1,530.97- |
| 03/31/05 | AVAILABLE INCOME | | | 1,030.97 | | 1,030.97 |
| 03/14/05 | BEAUTY AND BARBE   1 | | | 14.00 | | 14.00 |
| 03/21/05 | BEAUTY AND BARBE   1 | | | 7.00 | | 7.00 |
| 03/28/05 | BEAUTY AND BARBE   1 | | | 7.00 | | 7.00 |
| 03/31/05 | REVERSE PRIOR MONTH ADVANCE BILL | | | | 1,030.97- | 1,030.97- |
| 03/31/05 | ADVANCE BILL | | | | 1,030.97 | 1,030.97 |

# DUE BY 10th CURRENT MONTH

## AMOUNT DUE    $ 1,487.94

EXHIBIT

6