FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY 17  PM 2: 20

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| This document relates to | * | JUDGE FALLON |
| Case No. 05-2524* | * | |
| | * | |
| **ANTHONY WAYNE DEDRICK** | * | MAGISTRATE JUDGE KNOWLES |
| as Individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF MERCK & CO., INC. ("MERCK")
## ADDRESSING APPLICABLE TENNESSEE LAW

Merck submits the following brief addressing Tennessee law applicable to issues raised

by plaintiff's claims.

810978v.1

# TABLE OF CONTENTS

**Page**

I.   ELEMENTS OF PROOF FOR CAUSES OF ACTION ASSERTED ............................... 1

    **A.**   The Tennessee Product Liability Act In General.................................................... 1

    **B.**   Strict Liability ......................................................................................................... 1

        1.   Design Defect............................................................................................. 1

        2.   Failure to Warn ......................................................................................... 4

        3.   Inadequate Testing ................................................................................... 8

    **C.**   Negligence ............................................................................................................... 8

    **D.**   Breach of Warranty............................................................................................... 10

        1.   Breach Of Express Warranty ................................................................. 10

        2.   Breach Of Implied Warranty ................................................................. 11

    **E.**   Fraud ...................................................................................................................... 12

        1.   Common Law Fraud ................................................................................ 12

        2.   Negligent Misrepresentation ................................................................. 13

II.   CAUSATION ....................................................................................................................... 13

III.  PUNITIVE DAMAGES ..................................................................................................... 15

    **A.**   Elements of Proof ................................................................................................ 15

    **B.**   Bifurcation ............................................................................................................ 15

    **C.**   Admissible Evidence ........................................................................................... 16

810978v.1

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Arch v. Trims v. W.W. Grainger, Inc.,*
  No. 97-5171, 1998 U.S. App. LEXIS 10613
  (6th Cir. May 20, 1998) ........................................................................................................ 9

*Barnes v. Kerr Corp.,*
  418 F.3d 583 (6th Cir. 2005) ......................................................................................... 5, 8, 9

*Bishop v. Smith & Nephew Richards, Inc.,*
  No. 02A01-9405-CV-00108, 1995 WL 99222
  (Tenn. Ct. App. Mar. 10, 1995) .......................................................................................... 2

*Bradley v. Danek Med., Inc.,*
  No. 96-3121 Consolidated under Ross, No. 95-2542,
  1999 U.S. Dist. LEXIS 6449 (W.D. Tenn. Mar. 26, 1999) ....................................... 12, 13

*Brown v. Raymond Corp.,*
  318 F. Supp. 2d 591 (W.D. Tenn. 2004)............................................................................. 2

*Coffey v. Dowley Mfg.,*
  187 F. Supp. 2d 958 (D. Tenn. 2002) .............................................................................. 11

*Commercial Truck & Trailer Sales, Inc. v. McCampbell,*
  580 S.W.2d 765 (Tenn. 1979)........................................................................................... 10

*Curtis v. Universal Match Corp.,*
  778 F. Supp. 1421 (E.D. Tenn. 1991).................................................................................. 2

*Dobbs v. Guenther,*
  846 S.W.2d 270 (Tenn. Ct. App. 1992) ........................................................................... 12

*Downs v. Perstorp Components,*
  No. 3:96-cv-597, 2000 U.S. Dist. LEXIS 20281
  (E.D. Tenn. Mar. 15, 2000)................................................................................................ 14

*Dunkin v. Syntex Laboratories, Inc.,*
  443 F. Supp. 121 (D. Tenn. 1977) .............................................................................. 11, 12

*Evridge v. American Honda Motor Corp.,*
  685 S.W.2d 632 (Tenn. 1985)............................................................................................. 6

*Fulton v. Pfizer Hosp. Prods. Group,*
  872 S.W.2d 908 (Tenn. Ct. App. 1993)............................................................................... 2

*Goins v. Clorox Co.,*
  926 F.2d 559 (6th Cir. 1991) .............................................................................................. 7

*Harden v. Danek Med., Inc.,*
  985 S.W.2d 449 (Tenn. Ct. App. 1998).............................................................................. 7

*Harwell v. American Medical Systems, Inc.,*
  803 F. Supp. 1287 (M.D. Tenn. 1992)....................................................................... *passim*

*Hodges v. S. C. Toof & Co.,*
  833 S.W.2d 896 (Tenn. 1992)..................................................................................... 15, 16

*Hughes v. Lumbermens Mut. Cas. Co.,*
  2 S.W.3d 218 (Tenn. Ct. App. 1999) ................................................................................ 15

*Hurt v. Coyne Cylinder Co.,*
  956 F.2d 1319 (6th Cir. 1992) ............................................................................................ 5

810978v.1

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Irion v. Sun Lighting, Inc.*,
No. M2002-766-COA-R3-CV, 2004 Tenn. App. LEXIS 210
(Tenn. Ct. App. Apr. 7, 2004)..................................................................................... 2

*Isbell v. Medtronic Inc.*,
97 F. Supp. 2d 849 (W.D. Tenn. 1998)....................................................................... 5

*Jastrebski v. Smith & Nephew Richards,Inc.*,
No. 02A01-9803-CV-00068, 1999 Tenn. App. LEXIS 169
(Tenn. Ct. App. Mar. 18, 1999) ................................................................................ 14

*Kincer v. Danek Med., Inc.*,
No. 96-3240 Consolidated under Ross, No. 95-2542,
1999 U.S. Dist. LEXIS 6446 (W.D. Tenn. Apr. 19, 1999)................................... 1, 8, 9

*King v. Danek Med., Inc.*,
37 S.W.3d 429 (Tenn. Ct. App. 2000) ............................................................... 2, 3, 7, 14

*Kirkpatrick v. Danek Med., Inc.*,
No. 96-3232 Consolidated under Ross, No. 95-2542,
1999 U.S. Dist. LEXIS 6445 (W.D. Tenn. Mar. 26, 1999) ..................................... 13

*Laws v. Johnson*,
799 S.W.2d 249 (Tenn. Ct. App. 1990)....................................................................... 7

*Martin v. Michelin N. Am., Inc.*,
92 F. Supp. 2d 745 (D. Tenn. 2000) ............................................................................ 1

*Memphis Bank & Trust Co. v. Walter Servs.*,
No. 6, 1986 Tenn. App. LEXIS 3156
(Tenn. Ct. App. Jul. 24, 1986) .................................................................................... 8

*Pittman v. Upjohn Co.*,
890 S.W.2d 425 (Tenn. 1994)............................................................................. 4, 6, 7, 8

*Ray by Holman v. BIC Corp.*,
925 S.W.2d 527 (Tenn. 1996)....................................................................................... 3

*Richardson v. GlaxoSmithKline*,
412 F. Supp. 2d 863 (W.D. Tenn. 2006)............................................................. 13, 14, 15

*Ritter v. Custom Chemicides*,
912 S.W.2d 128 (Tenn. 1995)...................................................................................... 13

*Sanford v. Celotex Corp.*,
598 F. Supp. 529 (M.D. Tenn. 1984)........................................................................... 15

*Shoemake v. Omniquip Int'l*,
152 S.W.3d 567 (Tenn. Ct. App. 2003) ........................................................................ 8

*Trimble v. Irwin*,
441 S.W.2d 818 (Tenn. 1968)....................................................................................... 6

*Whitehead v. Dycho Co.*,
775 S.W.2d 593 (Tenn. 1989)....................................................................................... 9

*Zobrist v. Sofamor*,
S.N.C., No. 96-3238 Consolidated under Ross, No. 95-2542,
1999 U.S. Dist. LEXIS 6489 (W.D. Tenn. Apr. 19, 1999)........................................... 8

810978v.1

## TABLE OF AUTHORITIES
(continued)

Page

**Statutes**

TENN. CODE ANN. § 29-28-102 .......................................................................... 1, 2, 12, 13

TENN. CODE ANN. § 29-28-104 .............................................................................. 4, 7, 9, 10

TENN. CODE ANN. § 29-28-105 .................................................................................... *passim*

TENN. CODE ANN. § 47-2-313 ............................................................................................ 10

TENN. CODE ANN. § 47-2-314 ............................................................................................ 11

TENN. CODE ANN. § 47-2-315 ............................................................................................ 12

TENN. CODE ANN. § 47-2-318 ............................................................................................ 10

Uniform Commercial Code Comment Tenn. Code Ann. § 47-2-714............................................. 10

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 402A ........................................................................... 4

Wade, *On The Nature of Strict Tort Liability for Products,*
   44 MISS. L.J. 825 (1973) .......................................................................................... 3

-iii-

## I.    ELEMENTS OF PROOF FOR CAUSES OF ACTION ASSERTED

### A.    The Tennessee Product Liability Act In General

Pursuant to the Tennessee Product Liability Act of 1978 (the "TPLA"), products liability actions include "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." TENN. CODE ANN. § 29-28-102 (2005).  Also included are "all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever." *Id.*

### B.    Strict Liability

#### 1.    Design Defect

To prevail on a design defect claim, a plaintiff must establish that the manufacturer designed and sold a product that was either in a "defective condition" or "unreasonably dangerous"[1] at the time it left the manufacturer's control; and that the particular defect or dangerous condition proximately caused the plaintiff's injury.  *See Martin v. Michelin N. Am., Inc.*, 92 F. Supp. 2d 745, 752 (D. Tenn. 2000); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435

---

[1] The terms "defective condition" and "unreasonably dangerous" have the same meaning in each of the different contexts in which products liability claims can be framed in Tennessee, including design defect, failure to warn, negligence, and breach of warranty. *Harwell v. American Medical Systems, Inc.*, 803 F. Supp. 1287, 1296 (M.D. Tenn. 1992) ("[I]t makes no difference whether the complaint is couched in terms of negligence, strict liability or breach of warranty; it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective and unreasonably dangerous at the time the product left the control of the manufacturer"); *Kincer v. Danek Med., Inc.*, No. 96-3240 Consolidated under Ross, 95-2542, 1999 U.S. Dist. LEXIS 6446, at *21 (W.D. Tenn. Apr. 19, 1999) (stating that "regardless of the theory, the plaintiff must show that something is wrong with a product that makes it defective or unreasonably dangerous").

810978v.1

(Tenn. Ct. App. 2000); TENN. CODE ANN. § 29-28-105.

A product is in a defective condition if it is unsafe for normal or reasonably anticipated use. TENN. CODE ANN. § 29-28-102; *Irion v. Sun Lighting, Inc.*, No. M2002-766-COA-R3-CV, 2004 Tenn. App. LEXIS 210, at *15 (Tenn. Ct. App. Apr. 7, 2004). A product design, however, need not be "perfect, accident proof, or incapable of causing injury to be considered non-defective." *Id. at* *15-16; *Brown v. Raymond Corp.*, 318 F. Supp. 2d 591, 599 (W.D. Tenn. 2004) ("The existence of a better, safer or different design that would have averted the injury is not dispositive under Tennessee law."); *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1430 (E.D. Tenn. 1991) (holding that "where it is simply shown that there is a better, safer, or different design which would have averted the injury, this does not establish that there has been a departure from the required standard of care"); *Fulton v. Pfizer Hosp. Prods. Group*, 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993) (stating that a "manufacturer is not an insurer of a product that is accident proof, or incapable of causing injury"); *Bishop v. Smith & Nephew Richards, Inc.*, No. 02A01-9405-CV-00108, 1995 WL 99222, at *9 (Tenn. Ct. App. Mar. 10, 1995) (finding that a manufacturer is "not required to design a perfect or accident-proof product").

A product is unreasonably dangerous if it is either "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," or "because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." TENN. CODE ANN. § 29-28-102. The "prudent manufacturer" test embodied in the second prong of the statute, which test is applicable when "an ordinary consumer would have no reasonable basis for expectations," is the appropriate test to apply in a prescription drug case. *Cf. King v. Danek*

2

*Med.*, 37 S.W.3d 429, 445 (Tenn. Ct. App. 2000)  (consumer expectation test did not apply in a case involving medical devices "because an ordinary purchaser would not have the medical knowledge or a basis of expectations about the safety of the [product]").[2]  Under this approach, liability is imposed when a reasonably prudent manufacturer with knowledge of a product's dangerousness would not have placed the product in the stream of commerce.  *Ray by Holman v. BIC Corp.*, 925 S.W.2d 527, 532 (Tenn. 1996).   The test requires a risk-utility balancing of factors, including:

> (1) The usefulness and desirability of the product - its utility to the user and to the public as a whole
> (2) The safety aspects of the product - the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Ray*, 925 S.W.2d at 533 (citing Wade, *On The Nature of Strict Tort Liability for Products*, 44 Miss. L.J. 825, 837-38 (1973)); *King*, 37 S.W.3d at 436.  Because the test is not suited for the ordinary consumer's understanding of the product, "expert testimony about the prudence of the decision to market would be essential."  *King*, 37 S.W.3d at 436.

     When determining whether a product is in a defective condition or unreasonably safe,  it

---

[2] By contrast, the "consumer expectation" test is appropriate in actions involving products, such as household items, that provide users with "everyday experience" sufficient to render a conclusion about  the product's safety. *King*, 37 S.W.3d at 435.

810978v.1

is also necessary to "consider the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury." TENN. CODE ANN. § 29-28-105. Additionally, "consideration is given to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." *Id.*

### a.   Unavoidably Unsafe Products

Tennessee has adopted "comment k" to section 402A of the Restatement (Second) of Torts. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994). Thus, when a product is "unavoidably unsafe" the manufacturer can avoid strict liability by adequately warning of the product's inherent risks. *Id.*; *Harwell*, 803 F. Supp. at 1300 (concluding that comment k applied in a case involving a prosthesis and that the plaintiff had failed to establish that the prosthesis was improperly designed or manufactured). Prescription drugs are considered "unavoidably unsafe" for the purpose of application of comment k. *Pittman*, 890 S.W.2d at 428.

### b.   Compliance with Statutes and Regulations

If the product's design complied with federal or state statute or administrative regulations that existed at the time it was manufactured, there is a rebuttable presumption that the product is not in an unreasonably dangerous condition with respect to those standards. TENN. CODE ANN. § 29-28-104.

## 2.   Failure to Warn

To prevail on a failure to warn claim, a plaintiff must establish that the manufacturer sold a product and did not adequately warn "those who foreseeably could be injured by the use of their products," of the risks associated with the product. *Pittman*, 890 S.W.2d at 428. A plaintiff must establish that the manufacturer failed to warn of risks associated with the drug that it knew or should have known to exist. *Harwell*, 803 F. Supp. at 1299 (drug manufacturers are required

4

to give warnings to the medical profession that disclose "all risks inherent in the use of the drug which the manufacturer knew or should have known to exist"); *Isbell v. Medtronic Inc.*, 97 F. Supp. 2d 849, 862 (W.D. Tenn. 1998) ("A warning is adequate when, under all the circumstances, it reasonably discloses to the medical profession all risks inherent in the use of the drug which the manufacturer knew or should have known to exist.") (internal quotations omitted). The plaintiff must also establish "that the inadequate labeling proximately caused the claimed injury." *Barnes v. Kerr Corp.*, 418 F.3d 583, 591 (6th Cir. 2005) (applying Tennessee law) (citing *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1329 (6th Cir. 1992)).

An inadequate warning is one that by virtue of its "defective condition" makes the product unreasonably dangerous. *Barnes*, 418 F.3d at 591; TENN. CODE ANN. § 29-28-105. In assessing the adequacy of a warning, "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable." TENN. CODE ANN. § 29-28-105(b). Additionally, "the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products" are also considered. *Id.*

In determining the adequacy of a warning in a specific instance, several factor may be considered:

> (1) the warning must adequately indicate the scope of the danger;
>
> (2) the warning must reasonably communicate the extent or seriousness of the harm that could result from misuse of the drug;
>
> (3) the physical aspects of the warning must be adequate to alert a reasonably prudent person to the danger;
>
> (4) a simple directive warning may be inadequate when it fails to indicate the consequences that might result from failure to follow it; and
>
> (5) the means to convey the warning must be adequate.

5

*Pittman,* 890 S.W.2d at 429.[3]   *See also Evridge v. American Honda Motor Corp.,* 685 S.W.2d 632, 636 (Tenn. 1985) (stating that Tennessee requires a warning to be "one calculated to bring home to a reasonably prudent user of the product the nature and the extent of the danger involved in using the product") (quoting *Trimble v. Irwin,* 441 S.W.2d 818, 822 (Tenn. 1968)).   If a prescription drug warning is deemed adequate under this test, the manufacturer may reasonably assume that it will be read and heeded.   A product bearing such a warning, which is safe for use if the warning is followed, is by definition neither in a defective condition, nor unreasonably dangerous. *Evridge,* 685 S.W.2d at 636.

### a.   Learned Intermediary Doctrine

The learned intermediary doctrine provides that manufacturers of unavoidably unsafe products, such as prescription drugs, have a duty to give warnings, but "may reasonably rely on intermediaries to transmit their warnings and instructions." *Pittman,* 890 S.W.2d at 432. "Physicians are such intermediaries because of the pivotal role they play in the unique system used to distribute prescription drugs." *Id.* A prescription drug manufacturer that provides physicians with an adequate warning and appropriate precautions for a drug it distributed has "the right to assume that the prescribing physicians would provide adequate warnings and instructions" to their patients because the warnings and instructions it gave to the "physicians were sufficient to discharge its duty." *Id.* at 431. Thus, "it is well-established that

---

[3] In *Pittman,* the plaintiff sustained brain damage from severe hyperglycemia experienced after ingesting Micronase, a drug prescribed to his grandmother. Plaintiff alleged that the defendant-manufacturer failed to provide adequate warnings about the prescription drug's dangers. *Pittman,* 890 S.W.2d at 428. The package insert that accompanied the drug expressly warned of the risk of hypoglycemia, a primary side effect, but did not mention secondary effects such as "coma, seizures, and other neurological impairments." *Id.* The Tennessee Supreme Court affirmed the lower court's grant of summary judgment in favor of the manufacturer, holding that it had "fully and fairly disclosed the drug's potential for harmful side effects and appropriate precautions" and, thus, it "had the right to assume that the prescribing physicians would provide adequate warnings and instructions." *Id.* at 431.

6

the manufacturer's duty to warn of dangers involved in use of a prescription drug is satisfied by adequately warning the prescribing physician." *Laws v. Johnson*, 799 S.W.2d 249, 253 (Tenn. Ct. App. 1990); *Pittman*, 890 S.W.2d at 432; *Harwell*, 803 F. Supp. at 1299 ("Education of the physician, on the one hand, and communication to the patient, on the other, are distinct processes, and the manufacturer's duty involves only the former."). It follows that when the manufacturer of a prescription drug has provided a physician with adequate warning as to the dangers associated with the drug, a patient who is prescribed the drug and is subsequently injured by it may not prevail on a failure to warn claim against the manufacturer. *King*, 37 S.W.3d at 453; *Harden v. Danek Med., Inc.*, 985 S.W.2d 449, 451 (Tenn. Ct. App. 1998).[4]

The learned intermediary doctrine also precludes imposing liability on a manufacturer in a failure to warn case if the physician relies on his own knowledge and judgment, separate and apart from the manufacturer's warning, to prescribe the product. *King*, 37 S.W.3d at 431 (given their physicians' testimony that they relied on their own knowledge and judgment in deciding to implant pedicle screws in an "off-label" use of such devices, plaintiffs failed to establish that the physicians' decisions were in any way "influenced by any representation which the defendants made or failed to make").

b.     Compliance with Statutes and Regulations

If the warning that accompanies a product complies with federal or state statutes or administrative regulations that existed at the time it was manufactured, there is a rebuttable presumption that the product is not in an unreasonably dangerous condition with respect to those standards. TENN. CODE ANN. § 29-28-104. *See Goins v. Clorox Co.*, 926 F.2d 559, 562 (6th Cir. 1991) (granting summary judgment in wrongful death action to product manufacturers by

---

[4] Tennessee courts have not addressed the impact of direct-to-consumer advertising on the learned intermediary doctrine in a prescription drug product liability case.

7

applying presumption upon showing by manufacturers that warning labels on products complied with applicable federal laws and regulations).

### 3.    Inadequate Testing

Federal courts applying Tennessee law have interpreted inadequate testing claims to "mean that the material risks of the use of the [product] could not have been provided to the physicians." *Kincer*, 1999 U.S. Dist. LEXIS 6446, at *25 n.13; *Zobrist v. Sofamor, S.N.C.*, No. 96-3238 Consolidated under Ross, No. 95-2542, 1999 U.S. Dist. LEXIS 6489, at *26 n. 17 (W.D. Tenn. Apr. 19, 1999).  To prevail on a claim for inadequate testing, the plaintiff must establish that the manufacturer designed and sold a product that was either in a "defective condition" or "unreasonably dangerous" at the time it left the manufacturer's control.  TENN. CODE ANN. § 29-28-105.  In determining whether the product was in a defective condition or unreasonably dangerous, it is necessary to consider the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury.  *Id.*  Additionally, consideration is given to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.  *Id.*

### C.    <u>Negligence</u>

"Drug manufacturers have a duty to exercise ordinary and reasonable care not to expose the public to an unreasonable risk of harm from the use of their products." *Pittman*, 890 S.W. 2d at 427; *see also Barnes*, 418 F.3d at 591; *Shoemake v. Omniquip Int'l*, 152 S.W.3d 567, 574 (Tenn. Ct. App. 2003); *Memphis Bank & Trust Co. v. Walter Servs.*, No. 6, 1986 Tenn. App. LEXIS 3156, at *7-8 (Tenn. Ct. App. Jul. 24, 1986) (manufacturer has duty to warn of "hidden and unknown" dangers of product). To establish a  negligence claim, a plaintiff must show that the manufacturer owed the plaintiff a duty to conform to the standard of due care, that the

8

manufacturer breached that duty, and that the breach was both the actual and proximate cause of the injury alleged. *E.g., Arch v. Trims v. W.W. Grainger, Inc.*, No. 97-5171, 1998 U.S. App. LEXIS 10613, at *13 (6th Cir. May 20, 1998) (applying Tennessee law); *Pittman*, 890 S.W.2d at 427-31. Thus, plaintiff must show either that the manufacturer designed a product that was in a "defective condition" or "unreasonably dangerous" at the time it left the manufacturer's control or that it failed to warn those who might ultimately be exposed to it of such conditions or dangers. *See* TENN. CODE ANN. § 29-28-105; *Whitehead v. Dycho Co.*, 775 S.W.2d 593, 598 (Tenn. 1989) (It is "a manufacturer's duty to warn those who may ultimately be exposed to its product.").

In determining whether the manufacturer has breached the standard of care, "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable." TENN. CODE ANN. § 29-28-105. Further, "[c]onsideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." *Id.*

Proximate cause is established if the plaintiff can show that the product was at least a "substantial factor" in causing the injury. *Kincer*, 1999 U.S. Dist. LEXIS 6446, at *19; *see also Whitehead*, 775 S.W.2d at 600 (holding that plaintiff failed to establish the proximate cause element of her negligent failure to warn claim); *Barnes*, 418 F.3d at 588-89 (holding that in a product liability action based on negligence, plaintiff must show that the defendant "proximately caused" his injuries). As is also true in strict liability claims, if the product's design or label complies with federal or state statutes or administrative regulations that existed at the time it was manufactured, there is a rebuttable presumption that the product is not in an unreasonably dangerous condition with respect to those standards. TENN. CODE ANN. § 29-28-104.

### D.   Breach of Warranty

Claims for breach of warranty are covered under the TPLA and the Tennessee Uniform Commercial Code ("UCC"). *See Harwell*, 803 F. Supp. at 1296. As with other product liability claims, the plaintiff must prove that the product was either in a "defective condition" or was "unreasonably dangerous." Privity of contract is not required for breach of warranty actions. *See* TENN. CODE ANN. § 29-34-104. The UCC limits recovery for breach of warranty – both express and implied – to the buyer of the product and "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods." *See* TENN. CODE ANN. § 47-2-318. However, the Tennessee Supreme Court has held that the statute was "impliedly amended [by TENN. CODE ANN. § 29-34-104] so as to broaden the class of persons who might claim the benefit of a warranty." *Commercial Truck & Trailer Sales, Inc. v. McCampbell*, 580 S.W.2d 765, 773 (Tenn. 1979). As a result, "warranties are made to run with the product, at least in the range of its intended and reasonably anticipated use." *Id.*

### 1.   Breach Of Express Warranty

A manufacturer is liable for breach of express warranty only if plaintiff can prove: (1) the existence of warranty[5]; (2) a breach of that warranty; and (3) that the breach proximately caused plaintiff's injury. *See* Uniform Commercial Code Comment TENN. CODE ANN. § 47-2-714. A seller need not "use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." TENN. CODE ANN. § 47-2-313(2). However, "an affirmation

---

[5] Under the UCC, an express warranty is created by: (1) "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise"; (2) "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description"; or (3) "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." TENN. CODE ANN. § 47-2-313(1).

merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. *Id*; *see Coffey v. Dowley Mfg.*, 187 F. Supp. 2d 958, 969-70 (D. Tenn. 2002) (holding that "the essential ingredients of an express warranty are that there must be an affirmation of fact by the seller . . . rather than a mere expression of the seller's opinion, belief, judgment or estimate, and that there be a reliance on such affirmation by the purchaser . . ."). In *Coffey*, because the plaintiff was unable to establish that he "ever read or specifically relied on [the defendant's ] affirmations," the court concluded that "no reasonable jury could find that there has been a breach of express warranty" and granted summary judgment. *Coffey*, 187 F. Supp. 2d at 973.

## 2. Breach Of Implied Warranty

In Tennessee, a plaintiff may assert a breach of implied warranty claim when a product is not "merchantable." TENN. CODE ANN. § 47-2-314(1). The issue advanced in such an action is "whether the product was fit for the ordinary purpose for which such products are used." *Harwell*, 803 F. Supp. at 1302.[6] Other implied warranties may arise from course of dealing or usage of trade. TENN. CODE ANN. § 47-2-314(3). If the manufacturer of a prescription drug "has warned the medical community of specific risks associated with use of the drug, the warranty of merchantability is not breached where a particular user suffers the adverse side effect warned of." *Dunkin v. Syntex Laboratories, Inc.*, 443 F. Supp. 121, 125-26 (D. Tenn. 1977).

A plaintiff may also bring a claim for breach of implied warranty when, at the time of the

---

[6] To be fit for such a purpose, a product must meet the following standards, where otherwise applicable: "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." TENN. CODE ANN. § 47-2-314(2).

sale of the product, the seller had reason to know of a particular purpose for which the product was required and that the buyer relied on the seller's skill or judgment to select a suitable product, and the product was not suitable for that purpose. *See* TENN. CODE ANN. § 47-2-315. "In such an action, the main issue is "whether the product was fit for the particular purpose for which it was bought." *Harwell*, 803 F. Supp. at 1302. If the manufacturer of a prescription drug designed for a particular purpose "warns the medical profession of possible side effects in some users, the warranty of fitness for a particular purpose is not breached where one of those side effects occurs." *Dunkin*, 443 F. Supp. at 126.

### E.    Fraud

#### 1.    Common Law Fraud

To prevail on a common law fraud claim under Tennessee law, a plaintiff must prove an intentional misrepresentation of a material fact; that the misrepresentation was made "knowingly," "without belief in its truth" or "recklessly" without regard to its truth or falsity; reasonably reliance on the misrepresentation[7]; damage; and that the misrepresentation related to an existing or past fact. *Bradley v. Danek Med., Inc.*, No. 96-3121 Consolidated under Ross, No. 95-2542, 1999 U.S. Dist. LEXIS 6449, at *17-18 (W.D. Tenn. Mar. 26, 1999). Nondisclosure gives rise to a claim for fraud only when the defendant has a duty to disclose and the undisclosed matters are material. *Id.* (citing *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992)). The plaintiff must also satisfy the requirements set forth in the TPLA. *See* TENN. CODE ANN. § 29-28-102. Thus, the plaintiff must establish that the manufacturer designed and sold a product that was either in a "defective condition" or "unreasonably dangerous" at the time it left the

---

[7] Tennessee courts have not directly addressed whose reliance must be shown when a fraud claim involves a prescription drug. In light of the learned intermediary doctrine, Merck submits that it is the prescribing physician's reliance that must be shown.

manufacturer's control.[8] TENN. CODE ANN. § 29-28-105.

### 2.    Negligent Misrepresentation

To establish a claim for negligent misrepresentation, a plaintiff must prove that "the defendant was acting in the course of his business, profession or employment, or in a transaction in which he had a pecuniary interest;  the defendant supplied faulty information meant to guide others in their business transaction; the defendant failed to exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied upon the information." *Ritter v. Custom Chemicides*, 912 S.W.2d 128, 131 (Tenn. 1995) (holding that this rule applies despite lack of contractual privity between the plaintiff and the defendant); *Bradley*, 1999 U.S. Dist. LEXIS 6449, at *21-22 (applying the rule in the product liability context); *Kirkpatrick v. Danek Med., Inc.*, No. 96-3232 Consolidated under Ross, No. 95-2542, 1999 U.S. Dist. LEXIS 6445, at *12 (W.D. Tenn. Mar. 26, 1999) (same).  The plaintiff must also satisfy the requirements set forth in the TPLA.  *Kirkpatrick*, 1999 U.S. Dist. LEXIS 6445, at *14 n.6 (claims for negligent misrepresentation are "covered under the Tennessee Products Liability Act...and [are] considered as part of [plaintiff's] products liability action"); *see* TENN. CODE ANN. § 29-28-102.  Thus, the plaintiff must establish that the manufacturer designed and sold a product that was either in a "defective condition" or "unreasonably dangerous" at the time it left the manufacturer's control.  TENN. CODE ANN. § 29-28-105.

## II.    <u>CAUSATION</u>

To recover under the TPLA, a plaintiff must establish proximate cause.  *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006).  The term proximate cause has the same meaning in the failure to warn context as it does in the design defect context.  *See id.*;

---

[8] The terms "defective condition" and "unreasonably dangerous" have the same meaning in the misrepresentation context as they do in the design defect or failure to warn context.  *See* discussion in n.1 *supra.*

13

*Downs v. Perstorp Components*, No. 3:96-cv-597, 2000 U.S. Dist. LEXIS 20281, at *10 (E.D. Tenn. Mar. 15, 2000).

To demonstrate proximate cause, a plaintiff must show that the product "substantially" or "predomina[nt]ly" caused the alleged injury. *Richardson*, 412 F. Supp. 2d at 871.   It is not enough that injury be associated with the product. *See King*, 37 S.W.3d at 450 (A "statement that the conditions ... observed in [Plaintiff] were 'associated with the use of the pedicle fixation device and failure of such device' ... is insufficient to establish a defect or dangerous condition.").   Rather, proximate cause requires that the injury would not have occurred absent the defect. *Id.*; *see also Downs*, 2000 U.S. Dist. LEXIS 20281, at *10 (finding that plaintiff failed to prove that his "one-time exposure to Rubiflex caused the various illnesses from which he now claims to suffer"). Where "two or more possible causes for an injury are identified, 'the plaintiff must establish with reasonable certainty that his injury resulted from a cause for which the defendant would be liable.'" *Id.*; *see also Richardson*, 412 F. Supp. at 871 (granting summary judgment to manufacturer of Paxil because plaintiff failed to offer a basis for conclude that Paxil, even assuming it was an "independent contributing factor" to plaintiff's injuries, was a "substantial, predominant, or significant factor").

When the adequacy of a warning is at issue, a plaintiff must establish that the faulty warning caused the injury. *King*, 37 S.W.3d at 453; *Jastrebski v. Smith & Nephew Richards, Inc.*, No. 02A01-9803-CV-00068, 1999 Tenn. App. LEXIS 169, at *15 (Tenn. Ct. App. Mar. 18, 1999).   Furthermore, adequate warnings by prescription drug manufacturers given to prescribing physicians interrupt any causal connection between the manufacturer's product and the patient pursuant to the learned intermediary doctrine. *Id.*

Finally, expert testimony is required to establish medical causation in a products liability

810978v.1

case involving prescription drugs. *Richardson*, 412 F. Supp. 2d at 869.

## III.   PUNITIVE DAMAGES

### A.   Elements of Proof

Punitive damages may only be awarded if the plaintiff proves by clear and convincing evidence that the defendant acted "(1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at n.3. Intentional acts are those done with "the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* at 901. A fraudulent act occurs when "(1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." *Id.* A malicious act is one that is "motivated by ill will, hatred, or personal spite." *Id.* A reckless act is one done with conscious disregard of "a substantial and unjustifiable risk of such a nature that [the] disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.*

Punitive damages are not available in actions based solely on strict liability. *Sanford v. Celotex Corp.*, 598 F. Supp. 529, 531 (M.D. Tenn. 1984). This is so because punitive damages are intended to deter a specific wrongdoer from future misconduct and "in Tennessee... strict products liability actions focus on the defendant's product, not its conduct." *Id.*

### B.   Bifurcation

When punitive damages are sought, the court is required to bifurcate the trial upon the defendant's motion. *Hodges*, 833 S.W.2d at 901; *Hughes v. Lumbermens Mut. Cas. Co.*, 2 S.W.3d 218, 227 (Tenn. Ct. App. 1999). During the trial's first phase, the fact finder must

15

determine liability for, and the amount of, compensatory damages, and liability for punitive damages. *Hodges*, 833 S.W.2d at 901. If, during the first phase, the defendant is found liable for punitive damages, the amount of such damages is determined in a separate phase. *Id.*

### C.   Admissible Evidence

Evidence of the defendant's financial affairs, financial condition, or net worth is inadmissible during the first phase of a bifurcated trial. *Id.* During the second phase, the fact finder may consider factors such as the following in determining the amount of punitive damages to award:

> (1) The defendant's financial affairs, financial condition, and net worth;
> (2) The nature and reprehensibility of defendant's wrongdoing, for example,
>> (A) The impact of defendant's conduct on the plaintiff, or
>> (B) The relationship of defendant to plaintiff;
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
>
> (5) The expense plaintiff has borne in the attempt to recover the losses;
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
> (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; ...

*Id.* at 901-02.

810978v.1

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

810978v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum of Merck Addressing Applicable Tennessee Law has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 17th day of May, 2006.

*Dorothy H. Wimberly*

810978v.1