FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY 17  PM 2: 20

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:06-CV-810. | * | |
| | * | |
| CHARLES MASON, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant | * | MAGISTRATE |
| | * | JUDGE KNOWLES |

* * * * * * * * * * * * * * * * *

### MEMORANDUM OF MERCK & CO., INC. ("MERCK") ADDRESSING APPLICABLE UTAH LAW

Merck submits the following brief addressing Utah law applicable to issues raised by the plaintiff's claims.

Fee
Process
X  Dktd
✓  CtRmDep
Doc. No

810964v.1

## TABLE OF CONTENTS

                                                                   **Page**

| | | | |
|---|---|---|---|
| I. | | ELEMENTS OF PROOF FOR CAUSES OF ACTIONS ASSERTED | 1 |
| | A. | Strict Liability Design Defect | 1 |
| | B. | Strict Liability Failure To Warn | 3 |
| | C. | Negligent Design Defect and Negligent Failure to Warn | 4 |
| | D. | Deceptive Trade Practice | 6 |
| | E. | Fraudulent Misrepresentation | 6 |
| | F. | Fraudulent Concealment | 7 |
| II. | | CAUSATION | 7 |
| III. | | PUNITIVE DAMAGES | 8 |
| | A. | Standard For Awarding Punitive Damages | 8 |
| | B. | Bifurcation | 9 |
| | C. | Admissible Evidence | 9 |

## TABLE OF AUTHORITIES

Page

**Cases**

*Armed Forces Ins. Exch. v. Harrison,*
  70 P.3d 35 (Utah 2003) .................................................................................................. 6
*Barson v. E.R. Squibb & Sons, Inc.,*
  682 P.2d 832 (Utah 1984) ....................................................................................... *passim*
*Berry v. Beech Aircraft Corp.,*
  717 P.2d 670 (Utah 1985) .............................................................................................. 3
*Boyette v. L.W. Looney & Son,*
  932 F.Supp. 1344 (D. Utah 1996) .................................................................................. 8
*Brown v. Sears, Roebuck & Co.,*
  328 F.3d 1274 (10th Cir. 2003) .................................................................................. 1, 2
*Burns v. Cannondale Bicycle Co. & The Bicycle Ctr.,*
  876 P.2d 415 (Utah Ct. App. 1994) ............................................................................... 2
*DCR Inc. v. Peak Alarm Co.,*
  663 P.2d 433 (Utah 1983) .............................................................................................. 5
*Devine v. Cook,*
  279 P.2d 1073 (Utah 1955) ............................................................................................ 8
*Diversified Holdings, L.C. v. Turner,*
  63 P.3d 686 (Utah 2002) ................................................................................................ 9
*Ernest W. Hahn, Inc., v. Armco Steel Co.,*
  601 P.2d 152 (Utah 1979) .............................................................................................. 2
*Fitz v. Synthes,*
  990 P.2d 391 (Utah 1999) .............................................................................................. 8
*Grundberg v. Upjohn Co.,*
  813 P.2d 89 (Utah 1991) ..................................................................................... 1, 2, 3, 9
*Holmstrom v. C.R. England, Inc.,*
  8 P.3d 281 (Utah Ct. App. 2000) ................................................................................... 8
*Horton v. Goldminer's Daughter,*
  785 P.2d 1087 (Utah 1989) ............................................................................................ 2
*House v. Armour of America,*
  886 P.2d 542 (Utah Ct. App. 1994) ............................................................................ 3, 4
*Jensen v. IHC Hosps., Inc.,*
  82 P.3d 1076 (Utah 2003) .............................................................................................. 7
*Lang v. Lang (In re Lang),*
  293 Bankr. 501 (Bankr. Fed. App. 2003) ...................................................................... 8
*Maack v. Resource Design & Constr.,*
  875 P.2d 570 (Utah Ct. App. 1994) ............................................................................... 7
*McEwen v. Ortho Pharmaceutical Corp.,*
  528 P.2d 522 (Or. 1974) ................................................................................................ 5
*Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.,*
  889 P.2d 445 (Utah Ct. App. 1994) ............................................................................... 9
*Orr. v. Brigham Young Univ.,*
  960 F. Supp. 1522 (D. Utah 1994) ................................................................................. 8

-ii-

810964v.1

# TABLE OF AUTHORITIES
(continued)

**Page**

*Salt Lake City Corp. v. Kasler Corp.*,
   855 F. Supp. 1560 (D. Utah 1994) .................................................................................... 2
*Schaerrer v. Stewart's Plaza Pharm., Inc.*,
   79 P.3d 922 (Utah 2003) ............................................................................................ 2, 3, 4
*Slisze v. Stanley-Bostitch*,
   979 P.2d 317 (Utah 1999) ....................................................................................... 4, 5, 6, 7
*Thomas v. Hoffman-LaRoche, Inc.*,
   949 F.2d 806 (5th Cir. 1992) ........................................................................................... 4

## Statutes
UTAH CODE ANN. § 13-11-4 ...................................................................................................... 6
UTAH CODE ANN. § 13-11-19 .................................................................................................... 6
UTAH CODE ANN. § 78-15-6 ......................................................................................... 1-3, 6, 7
UTAH CODE ANN. § 78-18-1 ...................................................................................................... 9
UTAH CODE ANN. § 78-18-2 ...................................................................................................... 9

## Other Authorities
RESTATEMENT (SECOND) OF TORTS § 402A ........................................................................ 1, 2
RESTATEMENT (SECOND) OF TORTS § 550 ............................................................................... 7

## Rules
UTAH R. CIV. P. 42(b) ................................................................................................................ 9

## I.     ELEMENTS OF PROOF FOR CAUSES OF ACTIONS ASSERTED

In Utah, products liability causes of action are created by common law. The Utah Products Liability Act, UTAH CODE ANN. § 78-15-6 *et seq.* ("UPLA"), does not create any causes of action, but rather sets limits on common law actions. *See, e.g., Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274 (10th Cir. 2003) (applying Utah law). The UPLA directs that no product can be considered to have a defect unless it had a condition which made the product "unreasonably dangerous to the user." UTAH CODE ANN. § 78-15-6(1). The statute defines "unreasonably dangerous" as dangerous beyond what the reasonable person would expect given the product's "characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed" by the user. UTAH CODE ANN. § 78-15-6(2); *Brown*, 328 F.3d 1274 (the state of mind of the product's actual user, or victim, is irrelevant, and the issue is whether an ordinary person in that position would think the product is less dangerous than it is); *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 835 (Utah 1984) (where product is prescription drug, it is the prescribing physician's expectations that are relevant). If a product is designed and manufactured in conformity with the government standards in existence at the time of design and manufacture, there is a rebuttable presumption the product is free from defect. UTAH CODE ANN. § 78-15-6(3).

### A.     Strict Liability Design Defect

In Utah, claims for strict liability due to design defect are analyzed under Section 402A of the Restatement (Second) of Torts. *See Grundberg v. Upjohn Co.*, 813 P.2d 89, 91-95 (Utah 1991). Under Section 402A, liability may be imposed on a manufacturer who:

> (1) sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property,
>
> (2) if the seller is engaged in the business of selling such a product, and
>
> (3) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A(1); *see also, e.g., Burns v. Cannondale Bicycle Co. &*

1

810964v.1

*The Bicycle Ctr.*, 876 P.2d 415 (Utah Ct. App. 1994) (plaintiff must establish bicycle was defective at time of purchase and defect caused injury); *Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1572 (D. Utah 1994) ("Under Utah law, the elements of breach of an implied warranty and products liability are essentially the same." (citing *Ernest W. Hahn, Inc., v. Armco Steel Co.*, 601 P.2d 152, 159 (Utah 1979))). If these conditions are satisfied and the product causes injury, liability may be imposed regardless of the manufacturer's efforts to exercise reasonable care and regardless of whether there is privity between injured user and the manufacturer. RESTATEMENT (SECOND) OF TORTS § 402A(2)(a)-(b). *See also Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1089 (Utah 1989).

The "touchstone" for a products liability claim is the requirement that the product be "unreasonably dangerous." *Salt Lake City Corp.*, 855 F. Supp. at 1571; UTAH CODE ANN. § 73-15-6(2). As discussed above, the Utah legislature has defined "unreasonably dangerous" as meaning the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent user. UTAH CODE ANN. § 73-15-6(2); RESTATEMENT (SECOND) OF TORTS § 402A, cmt. i. As Utah applies the learned intermediary doctrine, the "consumer's" expected level of danger of a drug is judged from the perspective of the physician who writes the prescription. *See Barson*, 682 P.2d at 835; *Schaerrer v. Stewart's Plaza Pharm., Inc.*, 79 P.3d 922, 928 (Utah 2003).

Utah has adopted "comment k" of the Restatement – when a product is "unavoidably unsafe" the manufacturer can avoid strict liability by adequately warning consumers of the product's inherent risks. *See, e.g., Grundberg*, 813 P.2d at 90; *Schaerrer*, 79 P.3d at 928 ("the unavoidably unsafe products doctrine recognizes that 'there are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use.' Such products cannot subject a seller to strict liability for defects if prepared, distributed, and marketed properly and with appropriate directions and warnings.")

In light of the public interest in the availability of prescription medications, the extensive regulatory system of the FDA, and the avenues of recovery available to plaintiffs by claiming

2

810964v.1

inadequate warning, the Utah courts have extended, consistent with UTAH CODE ANN. § 78-15-6(3),[1] a broad grant of immunity from strict liability claims based on design defects for FDA-approved prescription drugs in Utah. "[A] drug approved by the [FDA], properly prepared, compounded, packaged, and distributed, cannot as a matter of law be 'defective' in the absence of proof of inaccurate, incomplete, misleading, or fraudulent information furnished by the manufacturer in connection with FDA approval." *Grundberg*, 813 P.2d at 90 (acknowledging "that by characterizing all FDA-approved prescription medications as 'unavoidably unsafe,' we are expanding the literal interpretation of [the Restatement's] comment k"); *Schaerrer*, 79 P.3d at 928.

## B.  Strict Liability Failure To Warn

In Utah, even where there is no "design defect," strict liability can also be pursued when a drug manufacturer fails to adequately warn of dangerous side effects the manufacturer "knew or should have known" about. *See Grundberg*, 813 P.2d at 97-98; *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 835-36 (Utah 1984); *House v. Armour of America*, 886 P.2d 542, 547 (Utah Ct. App. 1994) (inadequate warning concerning use of armored vest could render vest "unreasonably dangerous" even without design defect). Whether there are "open and obvious" dangers associated with a product is material in determining the consumer's expectations and whether the product was unreasonably dangerous given the warning actually given. *House*, 886 P.2d at 548.

When it knows or should have known of a risk associated with its product, a prescription drug manufacturer's duty is to warn the *prescribing physician* adequately of that danger.

---

[1] Section 3 of the Utah Products Liability Act, UTAH CODE ANN. §§ 78-15-1 to -6, was held unconstitutional by this court in *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985) as a statute of repose. Because section 78-15-3 was not severable from the other sections of the Act, we ruled that the remainder of the Products Liability Act was invalid. The legislature repealed and amended certain sections in an apparent effort to comply with the court's concerns. Although section 78-15-6 was neither repealed, amended, nor specifically reenacted, there is no indication that the legislature has changed its policy regarding deference to governmental standards." *Grundberg*, 813 P.2d at 97.

3

*Barson*, 682 P.2d at 835; *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 928 (Utah 2003). When it fails in this duty, the manufacturer is directly liable to the patient harmed by use of the drug. *Barson*, 682 P.2d at 835.

In assessing what dangers the drug manufacturer "knew or should have known," the manufacturer is treated as an expert in its field and has a duty to keep abreast of scientific developments concerning the drug and notify the medical profession of any additional side effects discovered from its use. *Barson*, 682 P.2d at 835-36 ("The drug manufacturer is responsible therefore for not only actual knowledge gained from research and adverse reaction reports, but also for constructive knowledge as measured by scientific literature and other available means of communication.").

Even where the plaintiff can establish there was a duty to warn that was breached by the manufacturer, the plaintiff must also show that the failure to give an adequate warning in fact caused the injury; that is, that had an adequate warnings been provided, the injured party would have altered his use of the product to avoid the injury. *See Barson, 682 P.2d at 836-37; House v. Armour of Am., Inc.*, 929 P.2d 340, 346 (Utah 1996). In making this finding, the court must determine whether, under the circumstances, it can be presumed that an adequate warning would have been followed – that is, whether a "heeding presumption" applies. *House*, 929 P.2d at 346-47. The Utah courts have yet to apply a heeding presumption in the context of a prescription drug case – and in fact have recognized that some jurisdictions refuse to do so. *See House*, 929 P.2d at 347 (distinguishing body-armor case from prescription drug cases such as *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 813-14 (5th Cir. 1992) (holding that heeding presumption should apply only to preventable risk warnings where there is choice of using product safely or unsafely, not where choice is between using or not using product)).

### C. Negligent Design Defect and Negligent Failure to Warn

The plain language of the UPLA does not preclude a party from jointly bringing strict liability and negligence claims for product liability. *See Slisze v. Stanley-Bostitch*, 979 P.2d 317,

319-20 (Utah 1999); *Barson*, 682 P.2d at 834. That said, the limitations of the UPLA apply regardless of the cause of action, and negligence claims for design defect or failure to warn in the context of product liability appear to apply many of the same legal standards as strict liability claims, and are largely indistinguishable.

Utah courts define negligence as "a failure to exercise the degree of care which a reasonable person would have exercised under the same circumstances, whether by acting or by failing to act." *See, e.g., DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 434 (Utah 1983). In a products liability case, the plaintiff must prove that there was a duty owed by the defendant to the plaintiff, that the duty was breached, and that the conduct complained of was the cause in fact of the injury. *Barson*, 682 P.2d at 835. The duty of a manufacturer of drugs has been defined as the requirement that it make adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it knows or has reason to know. *Id.* (citing *McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d 522 (Or. 1974)). The manufacturer is directly liable to the patient for the breach of such duty. *Barson*, 682 P.2d at 835.

The Utah courts have explicitly rejected imposing a duty on the manufacturer to refrain from marketing a *non-defective* -- *i.e.*, not unreasonably dangerous – product when a safer model is available. *Slisze*, 979 P.2d at 320. The Utah courts have also explicitly rejected imposing a duty on the manufacturer to inform the consumer of the availability of a safer alternative product that might be available on the market. *Slisze*, 979 P.2d at 320. If, on the other hand, the product actually were found to be defective, "recovery under the strict products liability statute would be sufficient to compensate plaintiff, making a negligence claim superfluous." *Slisze*, 979 P.2d at 321.

A manufacturer does, however, have a duty to warn against a non-defective product's latent hazards that are known to the manufacturer but unknown to the consumer. *Slisze*, 979 P.2d at 321. Yet the statutory standards for determining which hazards are unreasonable applies to both strict liability and negligence claims for failure to warn: the product must be dangerous "to an extent beyond which would be contemplated by the ordinary and prudent buyer,

5

consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer." *Slisze*, 979 P.2d at 320-21 (quoting UTAH CODE ANN. § 78-15-6(2)). If such unreasonable dangers exist with a drug and the manufacturer fails to adequately warn physicians, again there lies a claim for strict liability, and a negligence claim would be superfluous.

### D.  Deceptive Trade Practice

Under UTAH CODE ANN. § 13-11-4, there are twenty-one defined deceptive acts or practices, none of which explicitly applies to cases involving prescription drugs. The only arguably applicable provision is subsection (2)(a), which defines as deceptive any: "indicat[ions] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not." This statute does not appear to have been applied in the context of a prescription drugs case.

A consumer who successfully brings such a claim may recover actual damages or $2,000, whichever is greater, plus court costs; obtain a declaratory judgment; or seek an injunction. The court may award the prevailing party reasonable attorney's fees. UTAH CODE ANN. § 13-11-19.

### E.  Fraudulent Misrepresentation

The elements a plaintiff must show in a fraud case are that a representation was made by the defendant concerning a presently existing material fact – which was false and which the defendant either knew to be false or made recklessly, knowing that there was insufficient knowledge upon which to base such a representation – for the purpose of inducing the other party to act upon it; and that the other party, acting reasonably and in ignorance of its falsity, did in fact rely upon it and was thereby induced to act to that party's injury and damage. *See Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

There appear to be no published Utah opinions addressing fraud in a drug-related product liability case, so the Utah courts have not had occasion to address whether the reliance the

6

plaintiff must establish is the physician's, the plaintiff's, or both. The products liability statute, however, applies regardless of the particular tort, and it lends some guidance. The expectations of the plaintiff described in UTAH CODE ANN. § 78-15-6(2) have been interpreted to be the expectations of the prescribing medical professional, where the product at issue is a prescription drug. *See, e.g., Barson*, 682 P.2d at 835. The reliance the plaintiff must establish in a fraud claim, it follows, is that of the prescribing doctor.

### F. Fraudulent Concealment

A claim for fraudulent concealment requires that the plaintiff establish that the defendant had a legal duty to disclose certain facts, but instead remained silent or otherwise acted to conceal material facts from the plaintiff. *Jensen v. IHC Hosps., Inc.*, 82 P.3d 1076, 1101-02 (Utah 2003) ("Where a physician has knowledge of a fact concerning the patient's physical condition which is material to that patient and he fails to disclose it the confidence relationship between them creates a duty to disclose which may render his silence fraudulent.") Utah courts have relied on the Restatement (Second) of Torts § 550 to define the cause of action:

> One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

*See, e.g., Maack v. Resource Design & Constr.*, 875 P.2d 570, 578 (Utah Ct. App. 1994).

In determining when this duty to disclose applies, as discussed above, a drug manufacturer owes a duty to warn the medical profession of risks associated with its product where the manufacturer knew or should have known of those risks. *Barson*, 682 P.2d at 835; *Slisze*, 979 P.2d at 321.

### II. CAUSATION

Proximate causation in Utah is proved according to the "substantial factor" test, which requires that the defendant's actions be not just a proximate cause of the injury, but a *substantial*

7

*factor* in causing the injury as well. *Devine v. Cook*, 279 P.2d 1073, 1080 (Utah 1955) (jury instruction's description of cause "in any degree" as proximate cause held reversible error).

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

*Holmstrom v. C.R. England, Inc.*, 8 P.3d 281, 292 (Utah Ct. App. 2000) (driver's choice of an "unsafe route," as opposed to unsafe driving on that route, could not be the basis of finding causation).

Medical expert testimony is required to prove proximate cause in a medical injury case. *See Fitz v. Synthes*, 990 P.2d 391, 393 (Utah 1999).

### III.  PUNITIVE DAMAGES

#### A.  Standard For Awarding Punitive Damages

Punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are either: (1) the result of willful and malicious or intentionally fraudulent conduct, or (2) conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others. UTAH CODE ANN. § 78-18-1. *See, e.g., Boyette v. L.W. Looney & Son*, 932 F. Supp. 1344 (D. Utah 1996) (where contractor believed product he was working with was safe, having received no warning to the contrary, his use of product, causing harm to others, though negligent did not amount to a "knowing and reckless indifference to the rights of others"); *Orr. v. Brigham Young Univ.*, 960 F. Supp. 1522 (D. Utah 1994) (knowledge of a dangerous condition and failure to act, absent more, do not support a claim for punitive damages); *Lang v. Lang (In re Lang)*, 293 Bankr. 501 (Bankr. Fed. App. 2003) (debtor's lying about husband's paternity was not specific

8

intent to harm necessary to support nondischargeability of ex-husband's claimed debt for willful or malicious injury, precluding a later award of punitive damages). Duplicative punitive damage awards are not allowed for the same act. *See Diversified Holdings, L.C. v. Turner*, 63 P.3d 686 (Utah 2002).

If a drug receives pre-market approval by the FDA and is recognized as safe and effective, punitive damages are not available for injuries resulting from the drug's use. UTAH CODE ANN. § 78-18-2; *Grundberg*, 813 P.2d 89. This limitation does not apply, however, if it is shown by clear and convincing evidence that the manufacturer knowingly withheld or misrepresented information required to be submitted to the FDA, which information was material and relevant to the claimant's harm. UTAH CODE ANN. § 78-18-2(2).

### B. Bifurcation

A trial court has the discretion to try any claim or issue separately, including the determination of whether punitive damages are warranted. *See Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 462 (Utah Ct. App. 1994) ("Utah Rule of Civil Procedure 42(b) provides that 'the court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim . . . or issue.' Trial courts enjoy considerable discretion in determining whether to bifurcate issues under Rule 42." (internal quotations omitted)).

### C. Admissible Evidence

It is mandatory, however, that the calculation of the amount of punitive damages to be awarded not be performed until after there has been a determination of liability for punitive damages. Evidence relevant solely to the appropriate amount is admissible only at that time. *See* UTAH CODE ANN. § 78-18-1(2) ("Evidence of a party's wealth or financial condition shall be admissible only after a finding of liability for punitive damages has been made.").

Respectfully submitted,

*Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

10

810964v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum of Merck Addressing Applicable Utah law has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 17th day of May, 2006.

_Dorothy H. Wimberly_