FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY 17  PM 2: 19

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF MERCK AND CO., INC. ("MERCK")
## ADDRESSING APPLICABLE KENTUCKY LAW

Merck submits the following brief addressing Kentucky law applicable to issues raised by

plaintiff's claims.

_____ Fee_____
_____ Process_____
__X_ Dktd _____
__✓_ CtRmDep_____
_____ Doc. No_____

810960v.1

## TABLE OF CONTENTS

**Page**

I.      ELEMENTS OF PROOF FOR CAUSES OF ACTIONS ASSERTED ............................ 1

    A.      Kentucky Products Liability Law Generally ........................................................ 1

    B.      Failure to Warn ................................................................................................... 2

        1.      Negligent Failure to Warn .......................................................................... 2

        2.      Strict Liability Failure to Warn ................................................................... 4

        3.      Application of the Learned Intermediary Doctrine .................................... 4

    C.      Design Defect ...................................................................................................... 5

        1.      Strict Liability Design Defect ..................................................................... 6

        2.      Negligent Design Defect ............................................................................ 8

        3.      Presumptions Applicable In Design Defect Cases ..................................... 8

    D.      Common Law Fraud (Failure to Disclose) .......................................................... 9

    E.      Breach of Warranty ........................................................................................... 10

        1.      Breach of Express Warranty .................................................................... 10

        2.      Breach of Implied Warranty ..................................................................... 11

II.     CAUSATION ................................................................................................................ 12

III.    PUNITIVE DAMAGES ................................................................................................ 14

    A.      Standard for Awarding Punitive Damages ......................................................... 14

    B.      Bifurcation ........................................................................................................ 15

    C.      Admissible Evidence ........................................................................................ 15

# TABLE OF AUTHORITIES

Page

## Cases

*Byrd v. Proctor & Gamble Mfg. Co.,*
    629 F. Supp. 602 (E.D. Ky. 1986) ........................................................ 2, 3

*C & S Fuel, Inc. v. Clark Equipment Co.,*
    552 F. Supp. 340 (E.D. Ky. 1982) ........................................................ 2

*C. D. Herme, Inc. v. R. C. Tway Co.,*
    294 S.W.2d 534 (Ky. 1956) ................................................................. 8

*Capital Holding Corp. v. Bailey,*
    873 S.W.2d 187 (Ky. 1994) ................................................................ 13

*Craig & Bishop, Inc. v. Piles,*
    No. 2004-CA-001883-MR, 2005 WL 3078860
    (Ky. App. Nov. 18, 2005) .................................................................. 9, 10

*Dealers Transp. Co., Inc. v. Battery Distrib. Co., Inc.,*
    402 S.W.2d 441 (Ky. 1965) ................................................................ 4

*Edwards v. Hop Sin, Inc.,*
    140 S.W.3d 13 (Ky. Ct. App. 2003) ..................................................... 6

*Eversole v. Louisville Ladder Group,*
    No. 2002-CA-1102-MR, 2003 Ky. App. LEXIS 270
    (Ky. Ct. App. Sept. 5, 2003) .............................................................. 8

*Falcon Coal Co. v. Clark Equip. Co.,*
    802 S.W.2d 947 (Ky. Ct. App. 1990) ................................................. 10, 11

*Ford Motor Company v. Fulkerson,*
    812 S.W.2d 119 (Ky. 1991) ................................................................ 4

*Givens v. Berkley,*
    56 S.W. 158 (Ky. 1900) ..................................................................... 16

*Halderman v. Sanderson Forklifts Co.,*
    818 S.W.2d 270 (Ky. Ct. App. 1991) .................................................. 10

*Holbrook v. Rose,*
    458 S.W.2d 155 (Ky. 1970) ............................................................ 12, 13

*Huffman v. SS. Mary & Elizabeth Hosp.,*
    475 S.W.2d 631 (Ky. 1972) ................................................................ 13

*Hutt v. Gibson Fiber Glass Products, Inc.,*
    914 F.2d 790 (6th Cir. 1990) .............................................................. 2

*King v. Ford Motor Co.,*
    209 F.3d 886 (6th Cir. 2000) ............................................................. 13

*Kroger Co. v. Bowman,*
    411 S.W.2d 339 (Ky. 1967) ................................................................ 6

*Ky. Dep't of Corr. v. McCullough,*
    123 S.W.3d 130 (Ky. 2003) ............................................................... 15

*Larkin v. Pfizer, Inc.,*
    153 S.W.3d 758 (Ky. 2004) ......................................................... *passim*

*McHargue v. Fayette Coal & Feed Company,*
    283 S.W.2d 170 (Ky. 1955) ................................................................ 9

810960v.1

## TABLE OF AUTHORITIES
(continued)

Page

*McMichael v. American Red Cross,*
  532 S.W.2d 7 (Ky. 1975) ................................................................................ 7, 12
*Monsanto Co. v. Reed,*
  950 S.W.2d 811 (Ky. 1997) ................................................................................ 1
*Nichols v. Union Underwear Co., Inc.,*
  602 S.W.2d 429 (Ky. 1980) ................................................................................ 6
*Northeast Health Mgmt., Inc. v. Cotton,*
  56 S.W.3d 440 (Ky. Ct. App. 2001) ................................................................ 14
*Ostendorf v. Clark Equip. Co.,*
  122 S.W.3d 530 (Ky. 2003) ................................................................ 1, 5, 6, 8
*Overstreet v. Norden Laboratories, Inc.,*
  669 F.2d 1286 (6th Cir. 1982) ........................................................................ 11
*Phelps v. Louisville Water Company,*
  103 S.W.3d 46 (Ky. 2003) .............................................................................. 14
*Post v. American Cleaning Equipment Corp.,*
  437 S.W.2d 516 (Ky. 1969) ........................................................................... 2, 3
*Sand Hill Energy, Inc. v. Smith,*
  142 S.W.3d 153 (Ky. 2004) ............................................................................ 16
*Sandoz Pharms. Corp. v. Gunderson,*
  Nos. 2004-CA-1536-MR and 2004-CA-1537-MR,
  2005 Ky. App. LEXIS 222 (Ky. Ct. App. Oct. 21, 2005) ........................ 4, 5, 14, 15
*Smith v. General Motors Corp.,*
  979 S.W.2d 127 (Ky. App. 1998) .................................................................... 11
*Snyder v. McCarley,*
  No. 2002-CA-1282-MR, 2003 Ky. App. LEXIS 228
  (Ky. Ct. App. Aug. 29, 2003) ......................................................................... 15
*Stevens v. Keller Ladders,*
  1 Fed. Appx. 452 (6th Cir. 2001) ................................................................... 12
*Sturm, Ruger & Co., Inc. v. Bloyd,*
  586 S.W.2d 19 (Ky. 1979) ................................................................................ 4
*Sufix, U.S.A., Inc. v. Cook,*
  128 S.W.3d 838 (Ky. Ct. App. 2004) .............................................................. 14
*Tipton v. Michelin Tire Co.,*
  101 F.3d 1145 (6th Cir. 1996) .......................................................................... 2
*Tobin v. Astra Pharm. Prod., Inc.,*
  993 F.2d 528 (6th Cir. 1993) ............................................................................ 7
*Toyota Motor Corp. v. Gregory,*
  136 S.W.3d 35 (Ky. 2004) .......................................................................... 6, 7, 8
*Ulrich v. Kasco Abrasives Co.,*
  532 S.W.2d 197 (Ky. 1976) ........................................................................... 6, 8
*UPS v. Rickert,*
  996 S.W.2d 464 (Ky. 1999) .............................................................................. 9
*Van Deren Hardware Co. v. John H. Preston & Son,*
  5 S.W.2d 1052 (Ky. 1928) .............................................................................. 11

810960v.1

## TABLE OF AUTHORITIES
(continued)

Page

*Watters v. TSR, Inc.*,
  904 F.2d 378 (6th Cir. 1990) ............................................................................ 4
*Wedding v. Duncan*,
  220 S.W.2d 564 (Ky. 1949) ............................................................................. 11
*Williams v. Fulmer*,
  695 S.W.2d 411 (Ky. 1985) ............................................................................. 10
*Wolfgruber v. Upjohn Co.*,
  72 A.D.2d 59 (N.Y. App. Div. 1979) ................................................................ 5
*Worldwide Equipment, Inc. v. Mullins*,
  11 S.W.3d 50 (Ky. Ct. App. 1999) ................................................................... 8

**Statutes**
KY. REV. STAT. § 355.2-314 ....................................................................... 10, 11, 12
KY. REV. STAT. § 355.2-318 ................................................................................. 10
KY. REV. STAT. § 355.2-313(1) ............................................................................ 10
KY. REV. STAT. § 355.2-313(1)(a) ........................................................................ 11
KY. REV. STAT. § 355.2-313(2) ............................................................................ 10
KY. REV. STAT. § 355.2-313(a) ............................................................................ 10
KY. REV. STAT. § 411.186(1) ............................................................................... 15
KY. REV. STAT. § 411.186(2) ......................................................................... 14, 15
KY. REV. STAT. § 411.310(1) ................................................................................. 9
KY. REV. STAT. § 411.310(2) ................................................................................. 8
KY. REV. STAT. § 411.320(3) ................................................................................. 1
KY. REV. STAT. §411.184 .................................................................................... 14
KY. REV. STAT. § 411.300 .................................................................................... 1
KY. REV. STAT. § 411.340 .................................................................................... 6

**Other Authorities**
RESTATEMENT (SECOND) OF TORTS § 402A cmt. k .................................................. 7
RESTATEMENT (THIRD) OF TORTS: Products Liability § 2 cmt. d................................. 7
2-49 Kentucky Instructions to Juries Supp. to Sec. 49.05 ........................................ 14
Ronald W. Eades, KENTUCKY PRODUCTS LIABILITY LAW § 7.3 (2006)...................... 6, 8

810960v.1

## I.   ELEMENTS OF PROOF FOR CAUSES OF ACTIONS ASSERTED

### A.   Kentucky Products Liability Law Generally

Under Kentucky law, as a general matter "[a] party injured by a product can bring suit for that injury under three different theories: (1) breach of warranty under the Uniform Commercial Code, (2) negligence, or (3) strict liability in tort." *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003).[1]

The Kentucky Products Liability Act controls all damage claims arising from the use of products, regardless of the legal theory advanced. *See* KY. REV. STAT. § 411.300 (Kentucky Products Liability Act ("KPLA"), providing in pertinent part that a "product liability action shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product"). As the Kentucky Supreme Court has noted, "if a claim is brought against a seller or a manufacturer of a product which is alleged to have caused injury, then the [K]PLA applies, regardless of whether the action is founded on strict liability in tort, negligence or breach of warranty." *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997).

While the KPLA's specific provisions are discussed in greater detail below, as an initial matter the Act provides that a defendant may not be held liable, even if its product was defective, if "the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff." KY. REV. STAT. § 411.320(3).

---

[1] However, as discussed more fully in section I.E.2, *infra*, a breach of implied warranty claim is not available in an action for injury alleged to have been caused by an "unavoidably unsafe" product, a category that includes prescription drugs.

1

### B.     Failure to Warn

There are "two theories under which a warning can be inadequate in a product case under Kentucky law." *Byrd v. Proctor & Gamble Mfg. Co.*, 629 F. Supp. 602, 605 (E.D. Ky. 1986) (applying Kentucky law). The first theory "arises under principles of negligence . . . . [A] manufacturer or supplier has the duty to warn the consumer of non-obvious dangers inherent in the probable use of the product." *Id.* (citing *Post v. American Cleaning Equipment Corp.*, 437 S.W.2d 516 (Ky. 1969)). On the other hand, the strict liability theory "considers the warning as part of the design." *Id.* "[A] product may be unreasonably dangerous in design, unless accompanied by a warning that it should not be put to a certain use." *C & S Fuel, Inc. v. Clark Equipment Co.*, 552 F. Supp. 340, 347 (E.D. Ky. 1982) (applying Kentucky law).

As a general rule under either theory, "there is no duty to warn the user of a product when the user is aware of the product's danger." *Hutt v. Gibson Fiber Glass Products, Inc.*, 914 F.2d 790, 793 (6th Cir. 1990) (applying Kentucky law).

### 1.     Negligent Failure to Warn

In a products liability cause of action based on negligence, "a manufacturer must 'warn the consumer of non-obvious dangers inherent in the probable use of the product,' even dangers from foreseeable misuse." *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996) (applying Kentucky law and citing *Byrd*, 629 F. Supp. at 605). In a negligence claim, in contrast to a strict liability claim, the manufacturer is not charged with hindsight. *Byrd*, 629 F. Supp at 605 n.5.

Kentucky courts have ruled that a manufacturer is liable for physical harm caused by the use of its product if the manufacturer "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to

810960v.1

exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." *See, e.g., Byrd*, 629 F. Supp at 605. In *Byrd*, the plaintiff brought a failure-to-warn action after losing the majority of her hair following use of a home permanent solution manufactured by the defendant. *Id.* at 603. The appellate court upheld the trial court's determination that the manufacturer was liable for negligent failure to warn because, despite knowing "that failure to follow every step of its product instructions could result in the very type of injury suffered by [the plaintiff], it gave no warning whatever of the existence of such risk." *Id.* at 606.

Once it is established that a duty to warn exists, the manufacturer must "give both adequate directions for use and adequate warning of potential danger." *Byrd*, 629 F. Supp. at 606. The warning must be "fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." *Post*, 437 S.W.2d at 520 . As an example of an inadequate warning, the *Post* court noted:

> [I]t may be doubted that a sign warning, 'Keep off the Grass,' could be deemed sufficient to apprise a reasonable person that the grass was infested with deadly snakes. In some circumstances a reasonable man might well risk the penalty of not keeping off the grass although he would hardly be so daring if he knew the real consequences of his failing to observe the warning sign. Or, a warning to 'Keep in a Cool Place' might not be sufficient if the result of nonobservance was a lethal explosion of the container. . . . [because] a reasonable person might hazard violation of an innocuous warning when he would have acted otherwise if the true danger were made known.

*Id.* It is "insufficient merely to give the consumer adequate directions, where there existed a serious danger of bodily harm from a foreseeable failure to follow the directions." *Byrd*, 629 F. Supp. at 606; *Post*, 437 S.W.2d at 520.

### 2.    Strict Liability Failure to Warn

Kentucky law provides for strict liability when a product is sold "in a defective condition unreasonably dangerous to the user." *Ford Motor Company v. Fulkerson*, 812 S.W.2d 119, 122 (Ky. 1991) (citation and internal quotation marks omitted); *Dealers Transp. Co., Inc. v. Battery Distrib. Co., Inc.*, 402 S.W.2d 441, 446-47 (Ky. 1965). "A product may be 'defective because of inadequate instructions or warnings'," *Sandoz Pharms. Corp. v. Gunderson*, Nos. 2004-CA-1536-MR and 2004-CA-1537-MR, 2005 Ky. App. LEXIS 222, at * 26 (Ky. Ct. App. Oct. 21, 2005); *see also Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990). As a result, a manufacturer has a duty to warn under a theory of strict liability if "it knew, or by the exercise of ordinary care ought to have known, that the equipment was limited in its safety design and that it should foresee a substantial likelihood that a user, exercising ordinary care for his own safety, might be injured by it." *Sturm, Ruger & Co., Inc. v. Bloyd*, 586 S.W.2d 19, 21 (Ky. 1979). Once it is established that a duty to warn exists, the manufacturer must "provide such warning as would be reasonably sufficient to bring the danger to an expectable user's attention and be understood by him." *Id.* For example, in *Bloyd*, the court found that a gun manufacturer was not liable for injuries sustained by plaintiff when the gun accidentally discharged because the manufacturer provided written instructions that "explicitly, clearly and succinctly warned of its dangerous propensity . . . [and] lack of proficient safety mechanism." *Id.* at 22.

### 3.    Application of the Learned Intermediary Doctrine

The Kentucky Supreme Court has explicitly adopted the learned intermediary doctrine in the context of failure-to-warn claims asserted in prescription pharmaceutical products liability actions. *See Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 770 (Ky. 2004). In *Larkin*, the Court recognized the national trend toward recognition of the doctrine, holding that the "obligation of a manufacturer to warn about risks attendant to the use of drugs and medical devices that may be

810960v.1

sold only pursuant to a health-care provider's prescription traditionally has required warnings directed to health-care providers and not to patients." *Id.* at 762; *see also Sandoz Pharms.*, 2005 Ky. App. LEXIS 222, at *27. Among "the rationales for this doctrine . . . is the fact that generally the prescribing physician is in a superior position to impart the warning and can provide an independent medical decision as to whether use of the drug is appropriate for treatment of a particular patient." *Id.* (quoting *Larkin*, 153 S.W.3d at 763).

Under the learned intermediary doctrine, a prescription drug manufacturer is not liable for failure to warn when it has given a warning "sufficient to apprise the general practitioner as well as the 'unusually sophisticated medical man' of the dangerous propensities of the drug." *Larkin*, 153 S.W.3d at 764. The *Larkin* court explained that a warning may be "adequate if posted in the Physician's Desk Reference" or other literature. *Id.* at 764-65. (citing *Wolfgruber v. Upjohn Co.*, 423 N.Y.S.2d 95, 97 (N.Y. App. Div. 1979) ("[w]here the warning given to the prescribing physician by the manufacturer through the Physician's Desk Reference (PDR), package inserts and other literature gives specific detailed information on the risks of the drug, the manufacturer has been held absolved from liability as a matter of law.").

The *Larkin* court expressly refused to adopt an exception to the learned intermediary doctrine when a defendant drug manufacturer markets its product directly to consumers through mass media outlets such as television. *Id.* at 766.

**C.** **Design Defect**

A plaintiff in Kentucky "can bring a defective design claim under either a theory of negligence or strict liability." *Ostendorf*, 122 S.W.3d at 535 . When the claim asserted is against a manufacturer for deficient design of its product, "the distinction between the so-called strict liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned. In either event the standard required is reasonable care."

810960v.1

*Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980); *see also Ostendorf*, 122

S.W.3d at 535 (the "foundation of both theories is that the product is unreasonably dangerous");

*Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976), *superceded on other grounds*

*by* KY. REV. STAT. § 411.340; *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 17 (Ky. Ct. App. 2003)

(noting that, in light of the similarity between negligence and strict liability claims, the

"consensus seems to be that a manufacturer's liability for design and warning defects requires

negligence").

### 1.    Strict Liability Design Defect

Generally, Kentucky allows recovery in strict liability for defective design of a product

only if the plaintiff can show that an ordinarily prudent seller, being fully aware of the risks,

would not have placed the product on the market. *See Nichols v. Union Underwear Co., Inc.*,

602 S.W.2d at 433.[2] It has been recognized, however, that some products are simply not capable

of being made safe, but that their utility is so great as to justify their use regardless of the risk.

*See* Ronald W. Eades, KENTUCKY PRODUCTS LIABILITY LAW § 7.3 (2006). Under Kentucky law,

---

[2] In *Nichols*, the Kentucky Supreme Court held that "the fact finder in a design defect case must decide whether the manufacturer that placed in commerce the product made according to an intended design acted prudently, *i.e.*, was the design a defective condition which was unreasonably dangerous." The court noted that "the facts of the individual case will determine what is relevant" in deciding whether a product is unreasonably dangerous. 602 S.W.2d at 433. However, it went on to state that several factors should be considered when making this determination, including consumer knowledge of the dangers of the product, obviousness of the danger, and presence of a warning. *Id.* In that case, the court overturned the trial court's outcome and instructed that, upon re-trial, the jury should be instructed as follows as to the design defect claim:

> You will find for the plaintiff only if you are satisfied from the evidence that the material of which the T-shirt was made created such a risk of its being accidentally set on fire by a child wearing it that an ordinarily prudent company engaged in the manufacture of clothing, being fully aware of the risk, would not have put it on the market; otherwise, you will find for the defendant.

*Id.* at 433; *see also Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004) (citing *Nichols*); *Kroger Co. v. Bowman*, 411 S.W.2d 339, 342 (Ky. 1967).

these types of products are designated "unavoidably unsafe" and are not subject to liability for design defect as long as a proper warning is given. *See McMichael v. American Red Cross*, 532 S.W.2d 7, 9 (Ky. 1975) (blood used in transfusion is an unavoidably unsafe product); *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 540 (6th Cir. 1993) (recognizing that Kentucky law follows comment k to the Restatement (Second) of Torts § 402A). In *McMichael*, the seminal Kentucky case on this issue, the court upheld a directed verdict for defendant Red Cross on plaintiff's strict liability and implied warranty claims resulting from the receipt of a transfusion of blood contaminated with the hepatitis virus. 532 S.W.2d at 9. The court held that blood products are unavoidably unsafe and that the Red Cross therefore was not subject to strict liability. Subsequently, the Kentucky Supreme Court held that prescription drugs are unavoidably unsafe products. *See Larkin*, 153 S.W.3d at 761. As the Court explained, "the fact that a particular drug might produce unfortunate side effects makes it 'unavoidably unsafe' but not 'unreasonably dangerous' . . . and strict liability will not obtain if proper warning is given, where the situation calls for it." *Id.*

To recover under a defective design theory, a plaintiff is required to prove that a safer alternative design of the product exists but was not used. *Gregory*, 136 S.W.3d at 42. In *Gregory*, plaintiff brought a design defect case in strict liability alleging that the airbag installed in manufacturer's case was defective and caused substantial injuries upon inflation, the Court found that the trial court was correct in instructing the jury that Kentucky law required proof of a feasible alternative design for a design defect verdict. There, the court noted Kentucky as one of several jurisdictions that "apply a risk-utility test for defective design, thereby implicitly requiring proof of a reasonable alternative design without explicitly doing so." *Id.* (citing RESTATEMENT (THIRD) OF TORTS: Products Liability, § 2 cmt. d (1998)).

### 2.     Negligent Design Defect

Kentucky law also allows recovery for products liability injuries based on negligence. *See C. D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534, 536 (Ky. 1956) (plaintiff can recover if he can prove "a duty, a violation thereof, and consequent injury"). Although causes of action in negligence and strict liability appear similar because both focus on the concept of "reasonable foreseeability" (*see* Eades, KENTUCKY PRODUCTS LIABILITY LAW, *supra*, § 5.1), Kentucky courts have explained the difference. Negligence "depends on what a prudent manufacturer . . . by the exercise of ordinary care actually should have discovered and foreseen, whereas strict liability depends on what he would have anticipated had he been (but regardless of whether he actually was or should have been) aware of the condition of and potentialities inhering in the product when he put it on the market." *Ulrich*, 532 S.W.2d at 200 ; *see also Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50 (Ky. Ct. App. 1999).

Put simply, a manufacturer is liable in negligence only if it failed to "use reasonable care to protect against foreseeable dangers." *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003). Therefore, the relevant questions in a negligence claim are: (1) did the defendant "foresee the harm to the plaintiff and [(2)] did the manufacturer act reasonably to prevent that harm." *Id.*

### 3.     Presumptions Applicable In Design Defect Cases

There is a statutory presumption under the KPLA that a defendant is not liable for defective design of a product "if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured." KY. REV. STAT. § 411.310(2); *see Eversole v. Louisville Ladder Group*, No. 2002-CA-1102-MR, 2003 Ky. App. LEXIS 270, at *9 (Ky. Ct. App. Sept. 5, 2003). In *Eversole*, the Kentucky Court of Appeals affirmed the trial

court's entry of directed verdict for the manufacturer of a ladder where the manufacturer submitted uncontroverted expert engineering testimony that "the ladder was designed and tested to comply with safety requirements of the American National Standard A14.5." *Id.* at *8. There, the court noted that "[a]ccepting [plaintiff's] version of the accident as true, he offered no expert testimony to rebut the opinion of Louisville Ladder's product safety engineer [that the ladder conformed to the state of the art]." *Id.* at *9.

In addition, the Act creates a rebuttable presumption that a product is "not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture." KY. REV. STAT. § 411.310(1).

### D.   Common Law Fraud (Failure to Disclose)

To establish common law fraud under Kentucky law, a plaintiff must prove, by clear and convincing evidence: (1) a material misrepresentation; (2) which is false; (3) known to be false or made recklessly; (4) made with inducement to be acted upon; (5) acted in reliance thereon; and (6) causing injury. *See Craig & Bishop, Inc. v. Piles*, No. 2004-CA-001883-MR, 2005 WL 3078860, at *3 (Ky. App. Nov. 18, 2005) (alleging fraud in the form of misstatements by car dealer regarding available financing on vehicle); *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (alleging fraud by employer in hiring practices). To establish a claim for common law consumer fraud, the misrepresentation alleged "must relate to a past or present material fact which is likely to affect the conduct of a reasonable man and be an inducement of the contract." *Craig & Bishop*, 2005 WL 3078860, at *3. "The representation must be short of a warranty but sufficient to deceive and to create in the mind a distinct representation of a fact." *McHargue v. Fayette Coal & Feed Company*, 283 S.W.2d 170, 172 (Ky. 1955).

Although reliance is a required element of a common law fraud claim (*see Craig &*

9

*Bishop*, 2005 WL 3078860, at *3), the Kentucky courts have not addressed whose reliance must be shown to establish a claim for fraud in a pharmaceutical products liability case.  Because the Kentucky Supreme Court has adopted the learned intermediary doctrine in failure to warn cases, Merck submits that the plaintiff must establish that the prescribing physician relied on the alleged misrepresentation.  *See Larkin*, 153 S.W.3d at 770.

### E.   Breach of Warranty

The Kentucky Uniform Commercial Code provides for relief on the basis of both breach of express warranty and breach of implied warranty.  *See* KY. REV. STAT. § 355.2-313(a); KY. REV. STAT. § 355.2-314.  As a general rule, both actions extend only to the buyer and to the buyer's family, household and guests reasonably expected to use the goods.  Ky. Rev. Stat § 355.2-318; *see Halderman v. Sanderson Forklifts Co.*, 818 S.W.2d 270, 274 (Ky. Ct. App. 1991) ("warranty actions may be brought only by purchasers or one in his household"); *Williams v. Fulmer*, 695 S.W.2d 411, 414 (Ky. 1985).  In addition, only contract damages are available in a cause of action for breach of warranty.  *See Falcon Coal Co. v. Clark Equip. Co.*, 802 S.W.2d 947 (Ky. Ct. App. 1990).

### 1.   Breach of Express Warranty

An action for breach of express warranty requires: (1) breach of; (2) an affirmation of fact or promise; (3) made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty; (4) that the goods shall conform to the affirmation or promise.  KY. REV. STAT. § 355.2-313(1).  Under the U.C.C., "it is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." KY. REV. STAT. § 355.2-313(2).  The

10

trier of fact must determine "whether the circumstances necessary to create an express warranty are present in a given case." *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290-91 (6th Cir. 1982) (applying Kentucky law). The test is "whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." *Wedding v. Duncan*, 220 S.W.2d 564, 567 (Ky. 1949); *Overstreet*, 669 F.2d at 1290-91.

The mere existence of a warranty is insufficient to sustain an action for breach of an express warranty. To maintain a cause of action, "[t]he warranty must be 'part of the basis of the bargain' between the parties." *Overstreet*, 669 F.2d at 1291. A warranty is the basis of the bargain "if it has been relied upon as one of the inducements for purchasing the product." *Id.* at 1289-91 (reversing verdict for plaintiff on breach of warranty claim stemming from purchase of defective veterinary drug because the jury instructions did not require "a finding of reliance as an element of recovery under the express warranty"); *see also* KY. REV. STAT. § 355.2-313(1)(a); *Van Deren Hardware Co. v. John H. Preston & Son*, 5 S.W.2d 1052 (Ky. 1928) (holding that plaintiff's breach of warranty claim was "defective . . . in that there is no allegation that [plaintiffs] in purchasing [the product] relied upon the warranty").

### 2.    Breach of Implied Warranty

KY. REV. STAT. § 355.2-314, which addresses breach of implied warranty, provides "a contractual remedy in a case . . . where the product sold proves to be unfit for its ordinary use." *Falcon Coal Co.*, 802 S.W.2d at 949 .[3]  However, the Kentucky Supreme Court has held  that

---

[3] An action for breach of implied warranty under the statute exists where a material defect renders the product unmerchantable. *Smith v. General Motors Corp.*, 979 S.W.2d 127, 132 (Ky. Ct. App. 1998). Under the Kentucky Uniform Commercial Code, a product is merchantable if: "(a) [they] pass without objection in the trade under the contract description; and (b) in the

810960v.1

"unavoidably unsafe" products may not be the basis of a claim for breach of implied warranty. *See McMichael*, 532 S.W.2d at 9 (blood used in transfusion is an unavoidably unsafe product). In *McMichael,* the court upheld a directed verdict for defendant Red Cross on not only on plaintiff's strict liability claim, but also on the implied warranty claims. 532 S.W.2d at 9. The court ruled that implied warranty claims were not available in a product liability actions involving blood products for the same reason that a strict liability claim would not be available:

> [W]e view strict liability under Section 402A and implied-warranty
> liability under the Uniform Commercial Code as being expressions
> of a single basic public policy as to liability for defective products.
> If the policy as to Section 402A is that unavoidable unsafeness of
> the character involved in the blood in the instant case is a basis for
> denying strict liability, it would seem that the same policy should
> prevail with respect to liability under implied warranty.

*Id.* at 11. Because, as explained above, the Kentucky Supreme Court has explicitly recognized that prescription drugs fall into the category of "unavoidably unsafe" products, manufacturers of prescription drugs are not subject to liability for breach of implied warranty. *See Larkin*, 153 S.W.3d at 761.

## II.   CAUSATION

It is well established in Kentucky that "[p]roof of legal causation is required in cases involving liability for products including drugs." *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970). Therefore, to succeed on a products liability claim, a plaintiff must prove that the defendant's conduct was a substantial factor in bringing about plaintiff's harm. *See Stevens v. Keller Ladders*, 1 Fed. Appx. 452, 460 (6th Cir. 2001) (applying Kentucky law). In making this

---

case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." KY. REV. STAT. § 355.2-314.

showing, plaintiffs may use circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm, and in that situation, "the evidence must be sufficient to tilt the balance from possibility to probability." *King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000) (applying Kentucky law and citing *Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. 1972)); *see also Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994) (recognizing that "for negligent conduct to be actionable it must not only create an unreasonable risk of harm but it must be a substantial factor in causing a harmful result"); *Holbrook*, 458 S.W.2d at 159 (Ky. 1970).

In *Holbrook*, the court first addressed the amount of circumstantial evidence necessary to satisfy the plaintiff's burden as to legal causation in a products liability case involving drugs. 458 S.W.2d at 157. There, plaintiffs alleged products liability claims against the manufacturer of an over-the-counter worm medicine ingested by a child who died shortly thereafter. *Id.* at 156. The Court found that plaintiffs were unable to prove causation where the evidence showed that the child took the recommended dosage of the drug, did not exhibit signs of illness until the day after she ingested the drug, and was on other potentially toxic medication at the time of her death. *Id.* at 158-59. Affirming judgment notwithstanding the verdict for the manufacturer, the court held that, "[t]he evidence failed to establish either that it was 'probable' or 'more likely than not' that the ingestion of the manufacturer's product was a legal cause of the harm." *Id.* at 159.

According to the Kentucky Pattern Jury Instruction On Causation, a jury must find that: "[1] the existence of the defective condition caused such a risk of accidental injury to persons using the [product] or exposed to it while it was in use; . . .[2] that an ordinarily prudent manufacturer of similar equipment, being fully aware of such risk, would not have put the [product] on the market in that condition; AND [3] [t]hat such defective condition was a

13

substantial factor in causing the accident."  2-49 Kentucky Instructions to Juries Supp. to Sec.

49.05.

## III.   **PUNITIVE DAMAGES**

### A.   **Standard for Awarding Punitive Damages**

Under KY. REV. STAT. §411.184, which applies "to all cases in which punitive damages

are sought and supersedes any and all existing statutory or judicial law," punitive damages may

not be awarded unless the plaintiff can prove by clear and convincing evidence that the

defendant acted toward the plaintiff with "oppression, fraud or malice."  KY. REV. STAT.

§ 411.184; *see also Sufix, U.S.A., Inc. v. Cook*, 128 S.W.3d 838, 840-841 (Ky. Ct. App. 2004)

(the plaintiff "must prove, in addition to an injury-causing product defect, that something about

the defendant's conduct was outrageous, was at least grossly negligent, and amounted to reckless

indifference"); *Sandoz Pharms.*, 2005 Ky. App. LEXIS 222, at *46  ("punitive damages may be

awarded for gross negligence, which our Supreme Court has defined for this purpose

alternatively as 'wanton or reckless disregard for the lives, safety or property of other [persons]'

or conduct 'so outrageous that malice could be implied [sic] from the facts of the situation.'")

(citing *Phelps v. Louisville Water Company*, 103 S.W.3d 46, 52 (Ky. 2003)); *Northeast Health

Mgmt., Inc. v. Cotton*, 56 S.W.3d 440, 448 (Ky. Ct. App. 2001) ("the key element in deciding

whether punitives are appropriate is malice or conscious wrongdoing").

While there is no statutory cap on punitive damages, courts consider the following factors

in assessing the proper amount of punitive damages:  (1) the likelihood at the relevant time that

serious harm would arise from the defendant's misconduct; (2) the degree of the defendant's

awareness of that likelihood; (3) the profitability of the misconduct to the defendant; (4) the

duration of the misconduct and any concealment of it by the defendant; and (5) any actions by

the defendant to remedy the misconduct once it became known to the defendant. KY. REV. STAT.

14

§ 411.186(2); *see Snyder v.* McCarley, No. 2002-CA-1282-MR, 2003 Ky. App. LEXIS 228, at *5 (Ky. Ct. App. Aug. 29, 2003) (vacating punitive damages award and remanding for new assessment of damages where the jury instructions "did not incorporate any of the factors enumerated in KRS 411.186.").

**B.**   **Bifurcation**

In civil actions, a court must determine the availability of punitive damages concurrently with all other issues presented.  In other words, bifurcation of punitive damages is not permitted. KY. REV. STAT. § 411.186(1); *see also Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 139 (Ky. 2003) (recognizing that "punitive damages are not to be bifurcated from the issues of liability and compensatory damages").

**C.**   **Admissible Evidence**

While Kentucky courts have held that, with respect to a claim for punitive damages, the jury may consider evidence of a defendant's extraterritorial conduct to determine whether and to what degree the defendant's conduct within Kentucky had been reprehensible, the jury "must be instructed not to use out-of-state evidence to award punitive damages for conduct that occurred outside Kentucky." *Sandoz Pharms.*, 2005 Ky. App. LEXIS 222, at *50.  In *Sandoz*, a products liability case relating to an allegedly defective prescription drug, the court explicitly held that where plaintiffs relied heavily on evidence of conduct that did not occur in Kentucky at all (such as the defendant's alleged misrepresentations to an out-of-state physician and the FDA) or that occurred nationwide (such as nationwide advertisements and alleged nationwide sales tactics), defendant "was entitled to an instruction limiting punitive damages to its conduct within Kentucky." *Id.* at *51.

Moreover, the Kentucky Supreme Court has stated that evidence of the defendant's financial condition may not be considered in determining the applicability or amount of punitive

15

damages. *See Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 167 (Ky. 2004). In *Sand Hill*,

the court vacated an award of punitive damages based on insufficient jury instructions and

advised that, upon retrial of the issue of punitive damages alone, financial evidence should not be

considered. *Id.* Specifically, the court pointed to historic state Supreme Court precedent stating

that:

> "[W]e are clearly of the opinion that no evidence as to the financial
> condition of either defendant or plaintiff should be admitted in any
> case in which punitive damages might be recovered" because
> "[t]he tendency of this class of testimony would be to lead the jury
> to consider chiefly the pecuniary condition of the defendant, rather
> than the enormity or wantonness of the act for which punitive
> damages might be allowed."

*Id.* (citing *Givens v. Berkley*, 56 S.W. 158, 159 (Ky. 1900)).


Respectfully submitted,



Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

16

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum Addressing Kentucky Law has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 17th day of May, 2006.

Dorothy H. Wimberly

810960v.1