UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
    PRODUCTS LIABILITY LITIGATION

MDL NO. 1657

SECTION: L

JUDGE FALLON
MAG. JUDGE KNOWLES

**THIS DOCUMENT RELATES TO ALL CASES**

**ORDER & REASONS**

Pending before the Court is the Plaintiffs' Steering Committee's Letter Brief Regarding Ogilvy, DDB, and Millward Third-Party Discovery (Rec. Doc. 3804, Ex. 1).

**I.   BACKGROUND**

Beginning in 1998, Merck & Co., Inc. ("Merck") contracted with both DDB Communications Group, Inc. ("DDB"), a marketing and advertising agency, and Ogilvy Public Relations Worldwide, Inc. ("Ogilvy"), a public relations agency, to provide advertising and public relations services, respectively, for Merck in connection with Vioxx. DDB "was retained by Merck to create advertising and promotional programs for Vioxx" and "was tasked with creating a multi-pronged campaign which included, but was not limited to, newspaper, magazine and broadcast advertisements."[1] Ogilvy "was retained to assist in developing and implementing public relations plans for Vioxx."[2]

---

[1] Buchholz Aff. ¶ 5, March 22, 2006.

[2] Pudloski Aff. ¶ 5, March 22, 2006.

On February 7, 2006, the Plaintiffs' Steering Committee ("PSC") served DDB and Ogilvy with subpoenas requiring DDB and Ogilvy to appear for a deposition on February 27, 2006 and to produce certain categories of documents. On February 16, 2006, counsel for DDB and Ogilvy provided objections to the PSC. Specifically, DDB refused to provide any responsive documents and Ogilvy refused to provide many of the responsive documents until Merck had an opportunity to review the documents for the purpose of determining which documents are protected by the attorney-client privilege. Subsequent to Merck's review and permission, DDB and Ogilvy would produce the documents.

On March 14, 2006, the PSC sent a letter to the Court requesting the Court's assistance. In particular, the PSC contended that Merck should not be permitted to conduct a review of the DDB and Ogilvy documents prior to production because Merck's attorney-client privilege does not extend to DDB and Ogilvy employees.[3] As such, according to the PSC, Merck has no right to review the documents.

On March 22, 2006, Merck filed a response to the PSC's letter brief asserting that it is entitled to review the documents prior to DDB's and Ogilvy's production.

## II.   PRESENT MOTION

The first issue that must be resolved is choice of law. The PSC contends that Rule 501 of

---

[3] Millward Brown, Inc. ("Millward Brown"), a market research company and a subcontractor of Ogilvy, was also the subject of the PSC's subpoena and March 14th letter. Millward Brown, however, has not reached an agreement with the PSC as to the scope of its requested production and, thus, Merck cannot ascertain what review, if any, it will need to undertake. Since Merck was unable to ascertain the scope of the necessary review, none of the pleadings factually addressed the relationship between Millward Brown and Merck. As such, the Court does not have a factual record upon which it can base its ruling. Therefore, the Court will not make any rulings with respect to Millward Brown at this time.

the Federal Rules of Evidence dictates that state privilege law must be applied and, pursuant to Merck's contracts with Ogilvy and DDB, Pennsylvania law is the specific state law to be applied. On the other hand, Merck claims that this matter is governed by federal common law.

Under federal law, the attorney-client privilege extends to privileged communications disclosed to third-party independent contractors where a "significant relationship" exists between a corporate client and the contractor. *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994). There is no specific formula for determining when the privilege should extend to an independent contractor; however, courts generally consider three factors: (1) whether the contractor's involvement with the corporate client is similar to that of an employee, *id.*; *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. CIV.A. 01-3016, 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002); (2) whether the independent contractor performs the types of duties that require legal advice from the corporation's attorneys, *Bieter*, 16 F.3d at 937-38; *FTC v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002); *W. Res., Inc. v. Union Pac. R.R. Co.*, No. CIV.A. 00-2043, 2002 WL 181494, at *4 (D. Kan. Jan. 31, 2002); *In re Cooper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001); and (3) whether the communications between the independent contractor and corporation were intended to be confidential and were treated as such, *GlaxoSmithKline*, 294 F.3d at 148; *Burlington Indus., Inc. v. Rossville Tarn, Inc.*, No. CIV.A. 495-0401, 1997 WL 404319, at *4 (N.D. Ga. June 3, 1997).

Therefore, assuming federal law applied, the Court would have to consider these three factors and determine if Ogilvy's and DDB's relationships with Merck were significant enough to warrant the extension of Merck's attorney-client privilege.

Under Pennsylvania law, a corporation may assert the attorney-client privilege for

communications between its counsel and its employees who have authority to act on its behalf. *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997). No court, however, has ever addressed whether Pennsylvania's attorney-client privilege extends to independent contractors. Nonetheless, Pennsylvania courts routinely apply federal precedent where a specific privilege issue has never been addressed under Pennsylvania law. *Schenck v. Twp. of Ctr.*, 893 A.2d 849, 857-58 (Pa. Commw. Ct. 2006); *Whitehead v. Allstate Ins. Co.*, 3 Pa. D. & C.3d 56, 58 (Pa. Ct. Com. Pl. 1977). Therefore, if federal common law or Pennsylvania law applied, the Court would most likely reach the same substantive result.

Under Pennsylvania law, however, there is a two-step analysis that must be undertaken in resolving privilege disputes, which differs from federal common law. Initially, the party asserting the attorney-client privilege bears the burden of establishing the existence of the attorney-client relationship. *Joyner v. Se. Pa. Transp. Auth.*, 736 A.2d 35, 38 (Pa. Commw. Ct. 1999). Once the existence of the relationship has been established, the party seeking disclosure of information bears the burden of establishing that the privilege has been waived. *Gould v. City of Aliquippa*, 750 A.2d 934, 937 (Pa. Commw. Ct. 2000).

In the present case, it is unclear whether both burdens must be established or if the first burden must be assumed. According to Merck, the first burden must presently be assumed because Merck has not had a chance to review the documents. Without a review, Merck cannot determine <u>who</u> made <u>what</u> communications to <u>whom</u> and, thus, is precluded from meeting its burden. Thus, to the extent that Pennsylvania law applies, Merck argues that the PSC bears the burden of establishing that Merck waived its privilege by sharing its communications with Ogilvy and DDB.

Conversely, the PSC contends that Merck cannot meet its burden of establishing the existence of the attorney-client relationship for three reasons. First, the PSC asserts that Pennsylvania's attorney-client privilege only protects communications between an attorney and his client and, thus, there simply is no privilege that can be established because Ogilvy and DDB are not the clients of Merck's attorneys. Second, the PSC claims that Merck cannot meet its burden because Merck's attorneys did not directly communicate with Ogilvy and DDB. Instead, the PSC argues that intermediaries relayed the messages between Merck's attorneys and Ogilvy and DDB and, thus, the communications cannot be protected by the privilege. Third, the PSC contends that Merck cannot meet its burden because the communications did not concern legal advice.

At present, the Court finds that it would be inefficient and unwise to resolve these issues. Currently, they are too theoretical. There are not enough facts for the Court to make an appropriate ruling. Having never been presented with any of the documents, the Court cannot ascertain who made the communications, to whom the communications were made, and the nature of the communications. Furthermore, Merck's review may result in most, if not all, of the documents being voluntarily produced.

If Merck's review results in the assertion of the privilege as to some of the documents, the Court can then order a privilege log and inspect the documents *in camera*. At that point, the issue of waiver as well as the validity of the privilege can be determined. The Court finds that it would be more efficient to give Merck an opportunity to review the documents, to allow Merck a chance to withhold those documents, if any, that it believes are privileged, and then the Court will conduct its own *in camera* review and determine the issues before it now.

Furthermore, considering that there is the possibility that the Court would have to determine an undecided question of Pennsylvania law, it would be unwise to presently determine the current issues. Depending upon Merck's and the Court's reviews, the Court may not have to reach the unresolved question and, instead, could resolve the issues on other grounds, which would thereby obviate any need for a federal court sitting in Louisiana to decide an unresolved question of Pennsylvania state law.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Merck shall have two weeks to review all the documents at issue, construct a detailed privilege log, and provide the Court with the log and documents for an *in camera* review. At that time, the Court will review the documents and make a determination as to whether the documents are privileged and whether Merck waived its privilege by providing the documents to Ogilvy and DDB.

New Orleans, Louisiana, this __24th__ day of __May__, 2006.

UNITED STATES DISTRICT JUDGE