U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 MAY 22 PM 4:36
FILED
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br>PRODUCTS LIABILITY LITIGATION | MDL Docket NO. 1657<br>SECTION L |
| This document relates to All Actions | JUDGE FALLON<br>MAG. JUDGE KNOWLES |

**PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL BRIEF PURSUANT TO MINUTE ENTRY DATED MAY 12, 2006 RE: PENNSYLVANIA ATTORNEY-CLIENT PRIVILEGE**

## I. INTRODUCTION

The PSC submits this brief pursuant to the May 12, 2006 Minute Entry requesting additional information concerning which party has the burden of proof to establish the applicability of the attorney-client privilege in connection with the pending Ogilvy, DDB, and Millward Brown Third-Party discovery dispute.

## II ARGUMENT

### A. As a Threshold Matter Merck has the Burden to Establish that the Attorney-Client Privilege has been Properly Invoked

Under Pennsylvania law a party asserting the attorney-client privilege must first establish that the privilege has been properly invoked. *See In re Investigating Grand Jury of Philadelphia County*, 593 A.2d 402, 406 (Pa. 1991). Assuming this initial burden has been met by the party claiming the privilege, the party seeking discovery must demonstrate that the disclosure does not violate the privilege. This burden shift to the party seeking discovery typically occurs in cases applying the crime/fraud exception, where there is no dispute that an attorney/client relationship already exists.



___ Fee
___ Process
_X_ Dktd
_✓_ CtRmDep
___ Doc. No

*Id.*; *Nadler v. Warner Co.*, 321 Pa. 139, 184 A. 3, 5 (1936). In cases where the privilege is uncertain, however, that shifting does not occur until the party asserting the privilege first establishes that a privilege applies. *See Joyner v. Southeastern Pennsylvania Transportation Authority*, 736 A.2d 35, 38 (Pa. Commw. Ct. 1999)("[O]nce the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking disclosure to show that the disclosure of the information will not violate the privilege."); *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001)("[t]he party asserting the privilege has the initial burden to prove that it is properly invoked, and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege."); *McElwee v. Leber*, 2002 WL 32085677, 59 Pa.D.&C.4th 462, 467 (Pa.Cm.Pl. 2002)(same).

This understanding regarding the initial burden of proof resting upon the party asserting a privilege is described in Standard Pennsylvania Practice as follows:

> The party who asserts an evidentiary privilege has the burden of proving its existence and applicability by establishing the conditions which give rise to a privilege against disclosure. The burden is on the party who is seeking to withdraw the seal of secrecy to demonstrate that a privilege is inapplicable, that is, once the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking disclosure to show that disclosure of the information will not violate the privilege.

9 Standard Pennsylvania Practice 2d § 54:61 (2006). Thus, it is Merck's burden to show: (1) the existence of a independent third-party contractor/attorney privilege, and (2) the applicability of that privilege by evidence that the correct conditions exist that give rise to the privilege before any burden shifts to the PSC.

The facts of this case do not set forth a basis for shifting the burden and requiring that

plaintiffs demonstrate that disclosure would not violate the attorney-client privilege since Merck has not demonstrated that communications to and from its independent contractors, *i.e.*, the third-party marketing firms of Ogilvy, DDB or Millward Brown, fall within the attorney-client privilege under existing Pennsylvania law or by extension under *In re Beiter Co.*, 16 F.3d 929 (8th Cir. 1994). In determining that a party had failed to meet its initial burden of establishing that the attorney-client privilege had been properly invoked the court in *Joe v. Prison Health Services, Inc.* stated as follows:

> Defendants failed to establish, however, that any of the documents, for which they claim attorney-client privilege, were confidential communications, provided to City attorneys, for the purpose of obtaining legal advice. Accordingly, they failed to meet their burden to establish that the attorney-client privilege has been properly invoked.

*Joe*, 782 A.2d at 32. Thus, to meet the initial burden of establishing that the attorney-client privilege has been properly invoked Merck must first establish that Pennsylvania in fact recognizes the existence of the purported privilege between Ogilvy, DDB and Millward Brown and Merck's attorneys and then, if successful (which it should not be),[1] it must additionally establish: (1) that there were confidential communications, (2) to or from an attorney representing the party, and (3) for the purpose of obtaining legal advice.

**1. Pennsylvania Does Not Recognize the Existence of the Purported Privilege.**

Here, the communications to and from the third-party marketing firms are not within the privilege since these parties did not have an attorney-client relationship with Merck's attorneys. That

[1]The Pennsylvania Supreme Court holds that "evidentiary privileges are not favored. Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Commonwealth v. Stewart*, 547 Pa. 277, 282, 690 A.2d 195, 197 (1997)(citation omitted).

is, the Pennsylvania attorney-client privilege only protects communications between an attorney and his or her client. *See* 42 Pa.C.S.A. § 5928; *see also Joyner*, 736 A.2d at 37-38 (burden does not shift to party seeking disclosure where the party claiming the attorney-client privilege fails to show a reasonable basis for believing an attorney-client relationship existed). Likewise, there is no reasonable basis for Merck to believe that the third-party marketing firms formed any attorney-client relationship with Merck's attorneys.

**2. The Communications Were Not to and From an Attorney Representing the Party.**

Moreover, there is no basis for claiming the attorney-client privilege since the communications were not confidential upon being disclosed to these third-party agencies and since the vast majority of the communications involved business as opposed to legal matters. The court in *Joyner* acknowledged that as a threshold matter communications must be confidential to be within the attorney-client privilege. *Joyner*, 736 A.2d at 37-38; *see Joe*, 782 A.2d at 31 ("[a]pplication of the privilege requires confidential communication made in connection with providing legal services."); *see also* 42 Pa.C.S.A. § 5928 (attorney-client privilege only protects confidential communications). In this case, Merck has not established direct attorney communications with the advertising agencies. At best, only go-betweens appear to have relayed messages. Such communications were not attorney communications, not attorney-client privileged, and not confidential because they were shared with third-party marketing firms. Finally, many if not all of the communications to and from the third-party marketing firms involved business advice as opposed to legal advice and as such are not covered by the attorney-client privilege.[2]

---

[2]*See Commonwealth v. duPont*, 730 A.2d 970, 977 (Pa.Super. 1999)(attorney-client privilege required confidential communications in connection with providing legal services); *see*

### 3. The Communications Were Not for the Purpose of Obtaining Legal Advice.

As best the PSC can surmise, Ogilvy, DDB and Millward Brown were not retained for litigation purposes but primarily for the business purpose of advertising Vioxx. Merck has not suggested, nor proven otherwise. As a consequence, it is evident that the independent contractors were not utilized as extensions of Merck's in-house counsel's legal strategies but as third parties that were engaged to primarily promote the drug.[3] Communications, if there were any with legal counsel,[4] were done through surrogates, *i.e.*, other Merck employees to further the primary business purpose of advertising a commercial product. The secondary purpose, which can only be assumed since the PSC lacks access to the documents, is that some regulatory compliance may be implicated.

For the foregoing reasons Merck has the burden to establish that the attorney-client privilege has been properly invoked, and it has failed to meet that burden.

## B. Assuming Plaintiffs Have a Burden, Evidendence of Waiver Exists

Alternatively, assuming Merck has met both of its threshold burdens and shifted the burden

---

*also Commonwealth v. Boggs*, 695 A.2d 839, 843 (Pa.Super. 1997), *appeal denied* 717 A.2d 1026 (Pa. 1998)(same); *see also McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D.Cal. 1990)(for communications directed toward a business goal to be subject to the attorney-client privilege there must be "a clear evidentiary predicate for concluding that *each* communication in question was made *primarily* for the purpose of generating legal advice.").

[3]*Compare FTC v. GlaxoSmithKline* ("GSK"), 294 F.3d 141 (D.C. Cir. 2002)(the "consultants became integral members of the team assigned to deal with issues that were completely intertwined with GSK's litigation and legal strategies."); *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 215 (S.D.N.Y. 2001)(Public relationship agency hired because the defendant "had no prior experience in dealing with issues related to publicity arising from high profile litigation").

[4]*See* Buchholz Deposition (Rough Draft) March 14, 2006 at 73 ("Q: Would you from time to time inter account while working on this Vioxx account with Merck attorneys? A: No. I never interacted directly.").

to plaintiffs to show that disclosure will not violate the privilege, there are sufficient facts of record establishing that Merck waived the attorney client privilege by sharing confidential communications with third-parties. Under Pennsylvania law, the attorney-client privilege is waived when information is provided to third-parties. *See Joe*, 782 A.2d at 31 ("[o]nce the attorney-client communications have been disclosed to a third party, the privilege is deemed waived".); *see also Goss v. Allstate Ins. Co.*, 2000 WL 33402841, 50 Pa.D.&C.4th 383, 387 (Pa.Com.Pl. 2000), *quoting Bonds v. Bonds*, 689 A.2d 275, 277 (Pa.Super. 1997)("[t]he attorney-client privilege may be waived "when the communication is made in the presence of or communicated to a third party or to the court, when the client relies on the attorney's advice as an affirmative defense, or when the confidential information is placed at issue.").

As was noted above, there is no case law suggesting that Pennsylvania would extend the principles of *Beiter* to third-party marketing firms and Merck has not provided any case that does so. In Pennsylvania, the mere fact that a confidentiality agreement exists is insufficient to serve as a basis for preserving the attorney-client privilege where information has been shared with third-parties. *See Adhesive Specialists Inc. v. Concept Sciences Inc.*, 2002 WL 32068897, 59 Pa.D&C.4th 244, 262 (Pa.Com.Pl. 2002)(finding a waiver of the attorney-client privilege where a memorandum had been turned over to a third-party notwithstanding the existence of a confidentiality agreement since "[u]nder traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else.").

For the foregoing reasons, to the extent plaintiffs have the burden of proof with respect to Merck's attorney-client privilege defense, plaintiffs have set forth sufficient evidence establishing

that Merck waived the protections of the privilege by disclosing information to third-parties.[5]

## III. CONCLUSION

For the reasons set forth above plaintiffs' requests for third-party discovery should be granted.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

Date: May 22, 2006

By:______________________________

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

[5]Alternatively, plaintiffs are prepared to engage in additional discovery if the Court deems it necessary.

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)

(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis/Nexis File and Serve Advanced, in accordance with Pre-Trial Order No. 8, on this the 22d day of May, 2006.