UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br><br>This document relates to<br>Case No. 06-0485<br><br>GERALD D. BARNETT<br><br>     Plaintiff,<br><br>v.<br><br>MERCK & CO., INC.,<br><br>     Defendant. | MDL DOCKET NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES<br><br>**Merck & Co., Inc.'s Memorandum Regarding<br>Its Objections to Plaintiff's Preliminary<br>Deposition Designations** |

TO:   Mark P. Robinson, Jr.
    Robinson, Calcagnie & Robinson
    620 Newport Center Drive, 7th Floor
    Newport Beach, CA 92660

    Andrew Birchfield
    Leigh O'Dell
    Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
    218 Commerce Street
    Montgomery, AL 36104

    and

    Russ Herman
    Herman, Herman, Katz & Cotlar, LLP
    Place St. Charles
    201 St. Charles Avenue, Office 4310
    New Orleans, LA 70170

814696v.1

On May 29, 2006, Defendant Merck & Co., Inc. ("Merck") served its Preliminary Objections and Counter-Designations to Plaintiff's Preliminary Deposition Designations. Plaintiff incorporated those objections into the deposition transcripts submitted to the Court on June 5, 2006. As the transcripts reflect, the Court previously overruled many of Merck's same objections *Plunkett I* and *II*. While Merck believes that all of its objections are valid, Merck understands that the Court may be inclined to stand by its previous rulings. Therefore, although Merck maintains its previous objections to preserve its record for appeal, Merck now submits to the Court a narrower set of objections that either were not made in the *Plunkett* trials or, to the extent they were overruled, warrant particular reconsideration.

In addition, to the extent Merck has objected to the sarcastic or hostile tone of a particular question, Merck is sending the Court a CD with examples of such questions. These inappropriate questions are particularly noticeable in the depositions of Mr. David Anstice, Mr. J. Martin Carroll, and Dr. Ed Scolnick. As the Court noted in *Plunkett II*, an inappropriate tone on the part of the questioner – such as the "tone and the smirking and the laughter" of Mr. Lanier during his examination of Mr. Anstice – "has no place in federal court." (*See* Feb. 3, 2006 *Plunkett II* Tr. at 4:1-17 (ordering plaintiff to read, rather than play, inappropriate portions of Mr. Anstice's deposition into evidence).) The Court should exclude similarly inappropriate portions of the depositions of Mr. Anstice, Mr. Carroll, and Dr. Scolnick here.

**DAVID ANSTICE**

Mr. Anstice is the President of Merck's Human Health division for Canada, Latin America, Japan, Australia and New Zealand. He was formerly the President of Human Health for the Americas.

Plaintiff's counsel has apparently sent the Court a hard drive with the video clips of the Anstice deposition that he hopes to play. Merck has reviewed this video and maintains its "tone" objections for the following: 575:5-7, 575:10-576:4, 576:17-22, 577:24-578:20, 580:7-24, 581:12-17, 581:22-582:11, 582:21-583:2, 583:10-14, 587:16-18, 589:5-9, 590:6-8, 590:16-24, 594:19-595:4 (objection sustained previously), 597:23-598:17, 598:22-23, 599:1-3, 601:19, 602:1-3, 611:16-612:12 (objection sustained previously as to 612:7-12), 619:3-9, 620:25-621:4, 624:18-21, 629:19-630:10, 645:10-15 (objection sustained previously), 646:7-21, 655:13-15, 694:10-17, 702:1-7, 703:3-25, 706:5-708:1, 710:14-711:7, 712:1-13, 715:15-716:2, 719:14-23; 756:14-757:2, 759:4-6, 764:10-17,

In addition, Merck requests that the Court address the following substantive objections to Plaintiff's designations of Mr. Anstice's deposition testimony:

#1 – 605:4-12 – This is a lawyer speech and is unfairly prejudicial. It also mischaracterizes the witness's testimony and is not a good faith effort to summarize the witness's testimony.

#2 – 615:12-19, 616:12-21, 617:12-19, 647:25-648:4, 648:8-13 – Irrelevant and unfairly prejudicial. Plaintiff's counsel makes inflammatory statements regarding money Merck spent on marketing and Merck's marketing reputation.

#3 – 701:15-18 – Plaintiff's counsel misstates the evidence in an effort to confuse the witness. VIGOR was not the first study Merck did relating to Vioxx.

#4 – 760:21-764:11, 764:13-765:2, 766:1-19 – The questions relating to the FDA Warning Letter are irrelevant because there is no nexus to Mr. Barnett's doctors and the issues raised in that letter do not specifically relate the Barnett case.[1]  The questions are also argumentative and asked in a sarcastic tone.

#5 – 1504:18-20 – Lawyer sidebar, lawyer testifying.

**MARY BLAKE**

Ms. Blake worked in the public affairs department for Merck.  Her involvement with Vioxx consisted solely of public affairs activities; for example, preparing press releases and standby statements, and monitoring media coverage (Blake deposition, 11-29-05, p. 33:1-34:17, 35:11-36:20, 231:19-25).

Merck has submitted a total of five objections to Plaintiff's affirmative designations for Ms. Blake, two of which warrant particular attention:

#1 – 60:12-16 – Counsel asks Ms. Blake a misleading and incomplete hypothetical.  The question asks witness to evaluate the proprietary of a "company" that "indicates" a drug has no side effects.  The question assumes facts not in evidence and calls for speculation on the part of Ms. Blake, who repeatedly testified that Merck Research Labs and the legal department, not her or her department, had final authority for Merck promotional materials.  The prejudicial nature of this question substantially outweighs any probative value.

#2 – 67:19-24 – This question is inflammatory and argumentative in nature.  It also assumes facts not in evidence ("If it was a drug company's responsibility, Merck, to tell the

---

[1] This and other testimony identified in this brief that pertains to informal FDA communications should be excluded for the reasons articulated in Merck's Motion for Order Excluding Informal Communications from the FDA Concerning Promotional Materials (Motion in *Limine* No. 2), filed June 9, 2006, which Merck hereby incorporates by reference.

4

public what they knew about Vioxx causing heart attacks, your responsibility was the exact opposite, to convince the public that Vioxx does not cause heart attacks, right?").

## TOM CANNELL

Mr. Cannell was the executive marketing director for Vioxx from mid-February, 2001 through December, 2002. Merck would like to draw the Court's attention to the following objections:

#1 – 27:1-6, 27:13-28:10, 28:24-30:2, 31:9-12 – Plaintiff shows the witness the FDA Warning Letter, and then simply reads portions of the document into the record. The Warning Letter is irrelevant to the Barnett case, and therefore this entire designated section is irrelevant. Additionally, some of the specific portions of the Warning Letter that Plaintiff's counsel reads into the record in these designations relate to events that have no possible relation to the Barnett case. For instance, Plaintiff's designate portions of the transcript relating to Dr. Peter Holt and representations he allegedly made. There is no evidence that Mr. Barnett or any of his treating physicians ever heard of Dr. Holt, much less heard him speak.

## CAROLYN CANNUSCIO

Dr. Carolyn Cannuscio was one of several Merck epidemiologists involved with Vioxx. She was involved in the design and conduct of an epidemiology study subsequently published in May 2004 – while she was out on maternity leave – by Dr. Daniel Solomon and others ("Solomon study"). Due to disagreements between Merck and Dr. Solomon regarding the final manuscript, Dr. Cannuscio's name did not appear as an author in the Solomon study publication. Plaintiff designated testimony relating to this issue (114:16-18, 114:22-24, 115:1-12, 127:1-128:7, 130:18-132:5). This testimony is irrelevant to the Barnett case because there is no evidence that either of Mr. Barnett's doctors read the Solomon study or were influenced by the identity of its

authors. The relevance, if any, of the Solomon study lies in its results, not whose names appeared on the author list.

Merck would also like to draw the Court's attention to the following objections:

#1 – 48:21-50:9, 50:14-51:22 – Counsel for the Plaintiff asks the witness what other, non-Merck employees said and thought about Vioxx. This testimony is filled with hearsay and there is also no foundation.

#2 – 62:7-62:21 – These questions about the total number of Vioxx prescriptions filled at certain points in time call for speculation and are also misleading. The Court sustained Merck's objection to lines 67:11-21 in Plunkett II (there was no ruling on 62:7-10).

#3 – 77:16-19, 77:24-80:5, 80:9-24 – Counsel for the Plaintiff paraphrases what is said in outside studies and press reports, and then asks the witness about the studies and the reports. This includes asking the witness about "the recent projection based on the Graham study of some 27,785 heart attacks and sudden cardiac deaths that would have been avoided if Celebrex had been used instead of Vioxx." These studies and reports are hearsay, are presented in a misleading way, and Plaintiff did not establish any foundation with the witness. In Plunkett II, the Court sustained Merck's objection to 79:1-13, 79:14-80:5, and 80:9-24. Merck believes that was the proper ruling, and asks the Court to extend that ruling to all of the designations related to this topic.

#4 – 83:20-84:3 – This question is irrelevant, unfairly prejudicial, calls for opinion testimony, and does not lay proper foundation. The Court sustained Merck's objection to this designation in Plunkett II.

#5 – 87:9-13, 87:17-21 – This question is misleading, vague and ambiguous because it is not clear whether the question relates to what the witness knew at the time or what the witness knows today. Given that the question is improper, the answer is irrelevant and unfairly prejudicial.

814696v.1

**J. MARTIN CARROLL**

Mr. Carroll is a former Merck employee who was an Executive Vice President of marketing under David Anstice. Plaintiff designates portions of Mr. Carroll's testimony that are irrelevant, cumulative of Mr. Anstice's designated testimony, and are not based on his personal knowledge. The questioner asks Mr. Carroll about multiple documents he has never seen and studies he has never heard of. *See, e.g.,* 103-112 (noted below). The questioning becomes repetitive and sarcastic, and in multiple instances, Plaintiff's counsel transforms his questions into speeches. *See, e.g.,* 426:13-24 (noted below). A large portion of testimony relates to Merck's profits and sales of Vioxx, topics that are improper during the compensatory phase of trial. *Id*. at 191-201.

Merck would also like to draw the Court's attention to the following objections:

#1 – 103:19-108:11; 108:14-112:4, 130:24-132:23 – The witness has no personal knowledge of subject matter that is being discussed.

#2 – 133:3-133:19 – The witness has no personal knowledge of subject matter that is being discussed. Additionally, Plantiff's counsel is sarcastic and uses an argumentative tone.

#3 – 134:7-9, 134:17-135:11 – The witness has no personal knowledge of subject matter that is being discussed.

#4 – 136:11-13 – There is a question without an answer. This question should be removed from the designation.

#5 – 180:3-23, 180:23-181:5, 182:19-183:20, 194:3-195:4 – Plantiff's counsel is sarcastic, uses an argumentative tone and harasses the witness. Part of this section also relates to profits, which are irrelevant and prejudicial during the compensatory phase of the trial.

#6 – 195:8-196:19, 200:7-10, 200:13-201:10 – This section relates to profits and sales. This is irrelevant and prejudicial, especially in the compensatory phase.

#7 – 300:23-301:7, 301:11-12, 301:21-302:5 –This includes a lawyer sidebar and a question without an answer. Plaintiff's counsel is also sarcastic, uses an argumentative tone, and harasses the witness.

#8 – 303:4-303:12, 421:17-23, 426:13-24 – This includes a lawyer sidebar and a question without an answer. Plaintiff's counsel is also sarcastic, uses an argumentative tone, and harasses the witness.

#9 –– 428:17-429:5, 429:9-13, 429:17-430:6– This includes a lawyer sidebar and a question without an answer. Plaintiff's counsel is also sarcastic, uses an argumentative tone, and harasses the witness. The Court sustained this objection in Plunkett II.

#10 – 436:8-17 – Plaintiff's counsel is sarcastic, uses an argumentative tone, and harasses the witness.

**LAURA DEMOPOLOUS**

Ms. Demopoulos formerly was a director of cardiovascular clinical research at Merck.

Merck would like to draw the Court's attention to the following objections:

#1 – 104:3-105:20, 117:14-118:2, 118:5-6 – Plantiff's counsel is sarcastic, uses an argumentative tone and harasses the witness.

**WENDY DIXON**

Dr. Dixon is a former Merck employee who was the Vice President of marketing. Merck would like to draw the Court's attention to the following objections:

#1 – 242:4-7 – The question is argumentative ("the doctor that called the FDA bastards"). It is also unfairly prejudicial.

#2 –251:12-14 – This is a question without an answer and a lawyer sidebar.

#3 – 251:18-20, 251:23-252:3, 252:13-15, 252:18-20 – This line of questioning is argumentative and unfairly prejudicial.  It also calls for speculation relating to Mr. Anstice (the Plaintiff could have asked Mr. Anstice why he sent the document to Ms. Dixon).

#4 – 253:13-15, 253:20-254:2 – This calls for speculation, and the questions lacks foundation.

**JO JERMAN**

Jo Jerman was a regional manager of sales representatives at Merck.  Merck would like to draw the Court's attention to the following objections:

#1 – 284:15-19, 284:24-286:2, 286:14-287:11, 288:16-289:5, 291:16-292:3, 294:2-9, 294:14-23 – Plaintiff's counsel shows Ms. Jerman an email (PX 1.1267) that she had never seen before. She did not send the email, nor was the email sent to her.  Therefore there is no foundation to ask Ms. Jerman about the email.  Additionally, the email contains hearsay relating to statements by non-Merck personnel, as well as a news article.  This testimony also is objectionable because it concerns hearsay statements Plaintiff's counsel attributes to Dr. Topol.

#2 – 343:7-8, 343:24-344:2, 344:4-345:8, 347:13-348:3, 348:9-348:14, 348:15-21, 348:22-349:6 – These questions and answers relate to a page in Ms. Jerman's notebook that relates to a profit plan meeting.  The page includes what appear to be revenue and profit numbers for Vioxx. This information is irrelevant and prejudicial, especially during the compensatory phase of the trial.

**MARILYN KRAHE**

Ms. Krahe was a Merck senior business director for the Los Angeles / Southern California region, and worked with sales representatives in that region.  Merck objects to any use of Ms. Krahe's deposition in the Barnett case.  Mr. Barnett lived in South Carolina during the time he used Vioxx and was treated by South Carolina doctors while he took Vioxx.  Those doctors met with

Merck sales representatives based in South Carolina or elsewhere in the Southeast. There is no evidence that Mr. Barnett's doctors ever met with sales representatives based in the Los Angeles / Southern California region. Ms. Krahe's testimony is irrelevant and would be confusing to the jury.

If the Court decides to allow Ms. Krahe's testimony, Merck would like to draw the Court's attention to the following objections:

#1 – 201:4-5 – Plaintiff's counsel cuts off the witness's answer. If this testimony is played, it should include 201:6-8.

#2 – 225:1-5 – This is an argumentative question. Additionally, there is no answer and therefore the question is irrelevant and is lawyer testimony.

#3 – 315:15-19, 316:16-20, 316:24-317:1, 317:21-318:5, 318:15-16, 318:19-23, 319:2-3 – There is no foundation. The witness did not draft the document, and it was not established that the witness had specific knowledge about the issue being discussed.

#4 – 352:19-353:7, 353:23-354:13, 354:16-23, 355:15-356:3, 356:8-10, 356:15-20, 358:2-4, 358:11-15, 359:13-360:17, 360:24-361:3, 361:6-8 – This testimony and exhibit relate to something a non-Merck person allegedly said. It is hearsay and should be excluded. Additionally, there is no foundation because the witness did not send or receive the email, and stated "I've never seen this document …."

#5 – 361:9-362:17, 363:8-21, 363:24-364:6, 364:9-14, 364:20-365:8, 365:12-16 – There is no foundation. Plaintiff's counsel is asking the witness about an email she has never seen before.

#6 – 382:2-384:13, 385:2-20, 385:23-386:2, 390:8-11, 390:14-391:3, 391:6, 392:13-16, 392:19-393:15, 393:18-24, 393:3-4, 394:17-24, 395:3-6, 404:24-405:11, 405:14-21 – The exhibit used during this section is triple hearsay. It is a document created by a third party, relating to what doctors recalled when interviewed by another third party regarding Merck sales representatives. The

document is also irrelevant because it relates to California sales representatives, which has nothing to do with the Barnett case.  Mr. Barnett lived in South Carolina during the entire time he took Vioxx, and his doctors were also based in South Carolina.

#7 – 473:8-10, 474:15-475:5, 475:9-15, 478:10-19, 480:14-23, 481:19-482:4, 482:11-12, 482:19-483:2, 483:5-18, 484:6-8, 484:11-22, 487:23-488:5, 488:8-489:2, 500:7-13, 500:16-501:1, 501:4-7.  All testimony about the CV Card is irrelevant because there is no evidence that Barnett's doctors ever saw the CV Card.  There is also no foundation to ask Ms. Krahe about the numbers mentioned in the CV Card.

#8 – 517:19-518:15, 518:18-519:7, 519:11-15, 520:9-11, 520:15-24, 529:23-530:2, 530:8-11, 531:9-13, 531:16-19 – There is no foundation to ask Ms. Krahe about documents and studies she has never seen.

**ALAN NIES**

Dr. Nies was a senior vice-president at Merck before leaving Merck in 2002.

Merck has two overarching objections to the Plaintiff's Nies designations.

First, Merck objects to questions asked of Dr. Nies relating to labeling, FDA regulation and oversight and press releases where counsel did not establish a proper foundation.  Dr. Nies did not have responsibility for these areas.  The following lines of questioning are improper:

- 141:8-141-21; 562:4-15; 563:4-565-16 – Counsel fails to establish proper foundation to ask Dr. Nies questions relating to labeling and the FDA.  Mr. Nies had no involvement in labeling and this Q&A is misleading as to Merck's actions and what Merck was permitted to do under FDA regulations.

- 284:4-285:4 – Counsel questions Dr. Nies about a press release, even though Dr. Nies clearly states he is not involved in press releases. Plaintiff's counsel uses this as an opportunity to testify himself.

- 285:19-288:25 – Merck objects to this line of questioning about the Warning Letter on hearsay and lack of foundation grounds. Dr. Nies states that he did not have involvement with FDA regulators, and had no recollection of discussions about the Warning Letter. Counsel uses this as an opportunity to read the warning letter into evidence without soliciting any relevant testimony from Dr. Nies

Second, Plaintiff's counsel was often argumentative and sarcastic. He also mischaracterized the evidence, and spent a large part of the deposition testifying. Below are two examples of this.

- 499:8-505:13 ("So, Dr. Fitzgerald is a buffoon?; "you yourself, I will say, must be a very smart guy because I read your CV, and it goes on for like a hundred pages");

- 521:19-523:19 (*e.g.*, A: That's exactly what Merck did. Q: No, that is not what Merck did, Doctor).

Finally, Merck would also like to draw the Court's attention to the following objections:

#1 – 243:8-11 – Any probative value here is substantially outweighed by unfair prejudice.

#2 –559:24-560:4; 562:13-15; 565:6-7 – In these examples, Plaintiff has designated attorney commentary to which the witness did not provide a response.

## EDWARD SCOLNICK

Dr. Scolnick was the former President of Merck Research Laboratories. Merck would like to draw the Court's attention to the following objections:

814696v.1

#1 – 47:2-48:2 – This question is argumentative and sarcastic.

#2 – 70:13-71:-12 – This question is argumentative and sarcastic.  This objection was sustained in part in the Plunkett I case.

# 2 – 78:7-12 – This question is argumentative and sarcastic.

#3 – 161:20-161:23 – This question is argumentative and sarcastic.  It is also was asked and answered at 120:2-121:6.

#4 – 357:8-17 – This designation is irrelevant, unfairly prejudicial and argumentative.

#5 – 475:12-476:12 – The designation cuts off the full answer.

#6 – 490:6-9, 490:12-17, 490:21-491:2 – These designations are repetitive and cumulative to designations at 485-487.

#7 – 544:3-6, 544:8-9, 546:4-7, 546:10-13 – These designations are prejudicial, and argumentative.

**JAN WEINER**

Jan Weiner worked in the public affairs department for Merck.  Her involvement with Vioxx consisted solely of public affairs activities; for example, preparing press releases and standby statements, and monitoring media coverage (Weiner deposition, 8-10-05, 20:12-15, 43:9-15).

Merck's overarching objection to Plaintiff's designation for Ms. Weiner is based on foundational grounds.  Plaintiff designated a large amount of testimony relating to issues about which Ms. Weiner had no personal knowledge.

For example:

- 180:8-181:25 – Counsel uses Ms. Weiner as a prop to introduce an email that has no connection to her whatsoever. Ms. Weiner's name does not appear on the email, and counsel establishes no foundation connecting Ms. Weiner to the email.

- 428:16- 446:14 – Q&A about a video package featuring Laura Demopoulos: Counsel does not establish Ms. Weiner's knowledge of its contents, yet proceeds to question her about Ms. Demopoulous' statements on the video.  Counsel also asks Ms. Weiner overarching questions about Merck's knowledge 444:14-15: ("Merck knew there was a lot of data to the contrary, true?") yet omits testimony where she said she could not answer the question (*see*, *e.g.*, 443:21).  This line of questioning is also inappropriate because counsel cherry-picks sound-bites from the video, and asks Ms. Weiner overarching questions concerning whether Ms. Demopoulous "on national television" told the "world" about Vioxx and heart attacks.

- 148:21-23 – Question: "Would the reader reading that headline believe that Vioxx had the potential to hurt your heart?")  This question is prejudicial, lacks foundation and calls for speculation on the part of Ms. Weiner to answer what a hypothetical reader of a Merck press release would believe.

Merck would also like to draw the Court's attention to the following objections:

#1 – 296:23-297:4; 297:18-298:5; 299:4-300:8; 302:5-22 – Counsel shows the witness incomplete portions of a video and asks her overarching questions about them.  This line of questioning is highly misleading.

#2 – 298:14-16; 301:12-15; 434:11-15 – These are examples of attorney commentary to which the witness did not provide a response.  Merck asks the Court to strike these questions.

#3 – 45:23-46:2 – The question beginning with "I don't want to get anybody in trouble here" is misleading and prejudicial, as it assumes there was something wrong with Merck's practices, and was asked and answered in response to the previous question.

Dated:  June 13, 2006

Respecfully submitted,

*/s Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew L. Goldman
Hamilton H. Hill
Adam K. Mortara
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60601
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing **Merck's Memorandum Regarding Its Objections to Plaintiff's Preliminary Deposition Designations** has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiffs' counsel Mark Robinson and Leigh O'Dell by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 13th day of June, 2006.

/s/ Dorothy H. Wimberly

814696v.1