UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This document relates to | * | JUDGE FALLON |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| GERALD D. BARNETT, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING OPINION TESTIMONY BY PLAINTIFF'S EXPERTS THAT VIOXX® ACCELERATES ATHEROSCLEROSIS

### (EXPERT CHALLENGE NO. 1)

The plaintiffs' principal causation theory in previous cases has been the "FitzGerald hypothesis." According to this hypothesis, Vioxx suppresses the production of prostacyclin relative to thromboxane and leads to a pro-thrombotic state. Merck contends that the FitzGerald hypothesis is speculative and remains unproven. That said, this Motion is *not* directed to expert testimony regarding the FitzGerald hypothesis. This Motion instead seeks to exclude expert testimony that Vioxx causes cardiovascular events by directly accelerating atherosclerosis – *i.e.*, the build-up of coronary artery plaque.[1] (*See* Deposition of Egil Fosslien, M.D. ("Fosslien

---

[1] Plaintiff also claims that Vioxx (like many other drugs and conditions) can lead to hypertension, and that hypertension generally causes the progression of atherosclerosis. While Merck does not agree with plaintiff, Merck is not addressing that claim in this motion. This motion is directed at any claim that Vioxx accelerates the formation of atherosclerotic plaque or
*(footnote continued next page)*

Dep.") at 109:4-7, 121:20-22, attached hereto as Ex. A; Deposition of Lemuel Moye ("Moye Dep.") at 320:7-321:22, attached hereto as Ex. B; Deposition of Douglas P. Zipes ("Zipes Dep.") at 87:25-88:6, attached hereto as Ex. C.) As causation opinions to that effect have no scientific support, the Court should exclude them.[2]

No study shows or even purports to show that Vioxx accelerates atherosclerosis in humans. Animal and test-tube studies exploring this hypothesis are inconclusive at best, and indeed, several such studies have reported that administering Vioxx actually *slows* the development of atherosclerosis. (*See infra* Part II). Plaintiff's experts, accordingly, can point to no evidence that Vioxx had an atherogenic effect in Mr. Barnett.[3] Merck respectfully requests that the Court issue an order precluding plaintiff's experts from opining that Vioxx directly accelerates atherosclerosis or that it had this effect on Mr. Barnett.

## I. LEGAL STANDARD.

To prevail, plaintiff must present expert medical testimony that it is more likely than not that his use of Vioxx was a substantial factor in causing his alleged heart attack. *See Disher v. Synthes (U.S.A.)*, 371 F. Supp. 2d 764, 773 (D.S.C. 2005) ("[I]n order to survive summary judgment on the causation issue, plaintiff must not only proffer the testimony of a competent medical expert, but the testimony of a competent medical expert who will testify . . . that the

---

that it has been shown that the specific hypertension that Vioxx allegedly causes accelerates atherosclerosis.

[2] The plaintiff in the *Plunkett* trial agreed not to pursue this mechanism for precisely that reason. (See 2/16/2006 *Plunkett v. Merck* Transcript at 2262:11-2263:2, attached hereto as Ex. D.)

[3] Expert testimony that Vioxx accelerates atherosclerosis properly has been excluded in previous Vioxx trials. (*See* 03/14/2006 *Cona-McDarby v. Merck* Transcript at 1182:13-1183:14, attached hereto as Ex. E (holding that the "extremely prejudicial" impact of testimony "that it is possible or biologically plausible that Vioxx can be, in fact, causing atherosclerosis" would outweigh such testimony's probative value).)

2

result in question most probably came from the cause alleged") (citation and internal quotation marks omitted). "A mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Fitzgerald v. Manning*, 679 F.2d 341, 348 (4th Cir. 1982) (internal quotation marks and citations omitted); *see also McCarty v. Kendall Co.*, 120 S.E.2d 860, 863 (S.C. 1961) (ruling that causation was established where a doctor testified that immobilization was a "contributing factor to a large degree" to the plaintiff's development of kidney stones); RESTATEMENT (SECOND) OF TORTS § 431 (1965) ("The actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . . .").

Federal Rule of Evidence 702 governs the admissibility of expert testimony in this Court. As a threshold matter, Rule 702 requires exclusion of testimony beyond a witness's expertise. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (trial court properly excluded property appraisal testimony since witness not a licensed appraiser or real estate broker and lacked training or formal schooling in appraisal methods). Once the proponent of evidence proves that the offered testimony is within the expert's actual expertise, he or she must then establish that the expert testimony to be offered is based on sufficient facts or data and must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Determination of whether proposed expert testimony is reliable is governed by the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and by Rule 702 as amended in the wake of that decision. In *Daubert*, the

Court made clear that the district courts must act as gatekeepers to ensure that expert testimony is both *relevant* and *reliable*. The Court identified the following non-exclusive factors a district court may consider in evaluating an expert's testimony in the course of carrying out its role as gatekeeper: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the theory or technique's degree of acceptance in the scientific community. *Daubert*, 509 U.S. 593-94; *Moore*, 151 F.3d at 275; *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 605-06 (E.D. La. 2003). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the Supreme Court further explained that the objective of *Daubert*'s gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

## II. THERE IS NO DATA SUPPORTING A LINK BETWEEN VIOXX AND AN ACCELERATION OF ATHEROSCLEROSIS.

The Court should preclude plaintiff's experts from testifying that Vioxx can accelerate the progression of atherosclerosis for several reasons.

### A. Plaintiff's Experts Concede The Lack of Scientific Support For Their Atherosclerosis Theory.

Although plaintiff's experts purport to opine that animal studies show that Vioxx accelerates atherosclerosis, they acknowledge – as they must – the limitations to their opinion.

For example, Dr. Epstein, whom plaintiff designated as a non-retained expert, admits that he is aware of studies showing precisely the opposite – *i.e.*, that Vioxx *reduces* the development of atherosclerosis:

4

> Q: Are you aware of other mice studies that did study the effect of MF-tricyclic and Vioxx and other COX-2 inhibitors for a longer period of time than your study and found either that there was no effect on the size of the atherosclerotic plaque or that the COX-2 inhibitor actually reduced the size of the plaque?
>
> A: Yes.

(May 30, 2006 Deposition of Stephen E. Epstein, M.D. ("Epstein Dep.") at 197:12-21, attached hereto as Ex. F.) So does Dr. Zipes. He testified:

> Q: Are you aware of any studies in animals or humans that suggest that Vioxx does not cause atherosclerosis or its progression?
>
> A: Yes.
>
> Q: Like what?
>
> A: One is by Oates. And they suggested that it may be the timing as well as the duration of COX-2 inhibition that might affect the development of atherosclerosis.
>
> Q: Are there other animal or human studies, sir, other than Oates that suggests that Vioxx does not cause atherosclerosis or its progression?
>
> A: Yes, I can't really cite them to you, but yes.

(Zipes Dep. at 99:15-100:2.)

Where an expert can only *speculate* as to the *possible* mechanism by which a drug may be capable of causing injury, the expert's testimony is unreliable and, thus, inadmissible. *Moore*, 151 F.3d at 279 ("In sum, [the expert] could cite no scientific support for his conclusion that exposure to any irritant at unknown levels triggers this asthmatic-type condition. Under the *Daubert* regime, trial courts are encouraged to exclude such speculative testimony as lacking any scientific validity."); *See also Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311-12 (5th Cir. 1991) (holding that expert testimony that failure of coupling was caused by a construction defect or failure to label should be excluded as speculative in part because the expert did not determine which of several possible causes was most probable). Accordingly, the Court should preclude any evidence or argument that Vioxx can accelerate the progression of atherosclerosis.

5

### B. None Of The Articles That Plaintiff's Experts Rely On Establishes That Vioxx Can Accelerate the Progression of Atherosclerosis.

Plaintiff's experts have no scientific basis to opine that Vioxx could accelerate the progression of atherosclerosis, or that it did so in the case of Mr. Barnett. The only actual data regarding adverse plaque-related effects from administering COX-2 inhibitors are drawn from animal studies, most of which did not involve Vioxx. But animal studies *cannot* establish causation in humans. *See, e.g., Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989) (rejecting animal studies given difficulty extrapolating results to humans); *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 197-98 & n.5 (5th Cir. 1996) (rat studies were "inconclusive" and "unreliable" and could not establish that chemical would have same effect in humans); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1480 (D.V.I.) (extrapolation from animal studies to humans to prove causation is "scientifically invalid" because, among other reasons, "different species can react differently to the same agent"), *aff'd*, 46 F.3d 1120 (3d Cir. 1994); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1241 (E.D.N.Y. 1985) (finding animal studies inadmissible in an action alleging health problems arising from exposure to herbicide "because they [the animal studies] involve different biological species"); *Maurer v. Heyer-Schulte Corp.*, No. Civ.-K-92-3485, 2002 WL 31819160, at *3-4 (E.D. La. Dec. 13, 2002) (court "frowns upon the use of animal studies to predict carcinogenicity in humans").

Moreover, these studies did not even show an adverse link between any form of COX-2 inhibition and plaque in the animals used – much less a link between Vioxx specifically and plaque *in humans*. In fact, the one study that specifically involved Vioxx suggests that COX-2 inhibition might actually slow or reduce plaque formation – which has biological plausibility because of the role that COX-2-related inflammation plays in plaque phenomena.

6

For example, Dr. Zipes relies on the VIGOR and APPROVe studies to support his opinion. (Zipes Dep. at 85:17-86:5, 102:2-20.) The studies, however, say nothing about whether Vioxx can accelerate the progression of atherosclerosis. In fact, neither study even purported to examine the extent or progression of atherosclerosis in patients taking Vioxx or the comparator (naproxen in VIGOR and placebo in APPROVe).[4] And Dr. Zipes admits he is aware of no article interpreting VIGOR to say that the difference in CV results is attributable to a Vioxx-caused increase in atherosclerosis. (Zipes Dep. at 102:16-20.) He would have to say the same thing about APPROVe. Plaintiff's experts cannot rely on a study to support a proposition that the study does not even address.

Even assuming that animal studies were sufficient under *Daubert* to establish causation in humans – and they are not – the studies plaintiff's experts rely on do not support their position. The objective flaws in the animal studies plaintiff's experts cite further render the methods of those experts unreliable.

The Egan study Dr. Zipes cites (Zipes Dep. at 85:17-86:12) also does not support plaintiff. Again, the study did not involve humans, nor did it even involve Vioxx. Instead, the authors administered a different COX-2 inhibitor, alone and in combination with a thromboxane receptor antagonist, to genetically altered mice. Animal studies involving drugs other than Vioxx provide an insufficient basis for an opinion that Vioxx can accelerate atherosclerosis in humans.[5] Even in mice, however – and putting aside that the study did not involve Vioxx – the

---

[4] Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial* (hereinafter "Bresalier"), NEW ENG. J. MED. March 17, 2005; 352:1092; Claire Bombardier et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 NEW. ENG. J. MED.1520, Nov. 30, 2000.

[5] *Compare Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989) (holding animal studies have "very limited usefulness" given difficulty extrapolating results to humans) (*footnote continued next page*)

7

authors did not find that COX-2 inhibition accelerated the development of atherosclerosis. On the contrary, they found the *opposite*. As the published article reports, the authors found that administration of a selective COX-2 inhibitor, either alone or in combination with a thromboxane receptor antagonist, *"failed to modify* disease progression" in mice.[6]

The Rudic article also does not support plaintiff. Like the Egan study, the Rudic study also did not involve humans or Vioxx. Instead, it involved mice genetically-engineered to produce lack a prostacyclin receptor[7] and mice that received numesulide, a COX-2 inhibitor that is not related to Vioxx. In one experiment, the researchers transplanted atherosclerotic arteries into the two groups of mice and measured the rate at which the transplanted tissues were rejected in both groups. The results of this experiment have no relevance here because – in addition to the fact that this is a study of mice, not men – Mr. Barnett did not receive numesulide or coronary artery transplants. In a second experiment, the researchers surgically narrowed the arteries in both groups of mice to simulate ischemia and reported that *neither* group experienced

---

and *Merrell Dow Pharmaceutical, Inc. v. Havner*, 953 S.W.2d 706, 729 (Tex. 1997) ("the only way to test whether data from nonhuman studies can be extrapolated to humans would be to conduct human experiments or to use epidemiological data") *with McClain*, 401 F.3d at 1246 (excluding expert's opinion that ephedrine causes vasospasms based on analogy to different drug and noting that "even small differences in chemical structure can sometimes make very large differences in the type of toxic response that is produced" (internal quotation marks and citations omitted) ).

[6] Egan, K., *Cyclooxygenase, Thromboxane, and Atherosclerosis: Plaque Destabilization by Cycooxygenase-2 Inhibition Combined with Thromboxane Receptor Antagonism*, CIRCULATION 2005: 111:334-42.

[7] No evidence suggests that COX-2 inhibition, by Vioxx or any other COX-2 inhibitor, reduces human prostacyclin production to zero. Dr. FitzGerald's study, conducted with Merck researchers and later published, found that Vioxx reduced urinary prostacyclin metabolites by only about 50 percent. (*See* Catella-Lawson, F., et al., *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics and Vasoactive Ekosanoids*, J. PHARMACOL. AND EXP. THERAP. 1999 May; 289(2):735-41.) This alone precludes any scientifically reliable extrapolation from Dr. Rudic's mouse study to hypothetical clinical effects of Vioxx in humans.

8

a "further . . . reduction in luminal diameter."[8] The results of this latter experiment contradict plaintiff's theory that COX-2 inhibition can accelerate atherosclerosis.

Similarly, the Cheng study (2002) Dr. Zipes cites (Zipes Dep. at 85:17-86:12) did not involve the use of any COX-2 inhibitor.[9] That study involved the use of mice genetically-engineered to have no prostacyclin receptor. As such, this study yielded no data on the effect of COX-2 inhibition on plaque phenomena even in mice, much less in humans. In fact, in addition to other potentially material differences between administering COX-2 inhibitors and genetic alteration, no one has shown that any COX-2 inhibitors reduce prostacyclin to zero in any part of the body of mice or man.

Finally, the Antman article cited by Dr. Zipes (Zipes Dep. at 85:23-86:15) also does not support plaintiff's theory. In the article, the author merely reviews literature on COX-2 inhibitors prepared by others and address only in passing the hypothesis that COX-2 inhibition may be associated with the progression of atherosclerosis. Indeed, Antman concedes that plaintiffs' theory "is currently controversial."[10] Nor does the article report any original research supporting plaintiffs' theory. On its face, this article provides no scientific support for an opinion that Vioxx can accelerate the progression of atherosclerosis.

In short, plaintiff's experts have improperly relied exclusively on animal studies, none of which actually support their theory. Existing animal studies actually show that Vioxx actually retards the progression of atherosclerosis. (*See infra* Pt. II.C.) The Court therefore should

---

[8] Rudic et al., *COX-2-Derived Prostacyclin Modulates Vascular Remodeling*, CIRCULATION RESEARCH 2005; 96:1240-1247, at 1244.

[9] Cheng *et al.*, *Role of prostacyclin in the cardiovascular response to thromboxane A2* (hereinafter "Cheng"), SCIENCE 2002 Apr. 19; 296(5567):539-41.

[10] Antman et. al., *Cyclooxygenase Inhibition and Cardiovascular Risk* (Special Report), CIRCULATION 2005, 112:759-770, 760, attached hereto as Ex. F.

9

exclude any testimony by plaintiff's experts that Vioxx can accelerate the progression of atherosclerosis. *See, e.g., Moore*, 151 F.3d at 278 (holding, in part, that experts' reliance on studies that did not support their conclusions was grounds for excluding the expert testimony).

### C. Plaintiff's Experts Ignore Multiple Studies That Undermine Their Theory.

Further demonstrating the lack of support for their theory that Vioxx can accelerate the progression of atherosclerosis, several of plaintiff's experts fail to consider various animal studies that either have rejected the theory or, in some cases, reported that Vioxx in fact *slowed* the development of atherosclerosis.

For example, earlier mouse studies by Olesen (2002) and Pratico (2001) found that administration of a potent experimental COX-2 inhibitor (not Vioxx) did not accelerate atherosclerosis.[11] In an even more recent mouse study published in September 2005 by Burleigh and others (including noted pharmacologist Dr. John Oates),[12] the authors found that "[s]elective inhibition of COX-2" – this time using Vioxx as opposed to some other COX-2 inhibitor – in fact "reduces atherosclerosis in . . . mice."[13] Notably, this finding was not isolated or unexpected, but replicated and expanded on the similar finding of an earlier published mouse study by the same authors.[14] In both studies, the authors hypothesized that these results occurred because the anti-inflammatory properties of Vioxx reduced COX-2-associated inflammation

---

[11] Olesen M, et al., *No effect of Cyclooxygenase Inhibition on Plaque Size in Atherosclerosis-prone Mice*, SCAND. CARDIOVASC. J., 2002 Dec;36(6):362-7; Pratico D, et al., *Acceleration of atherogenesis by COX-1 dependent prostanoid formation in low density lipoprotein receptor knockout mice*, PROC NATL ACAD SCI USA, 2001 Mar. 13;98(6):3358-63, Epub 2001 Mar 6.

[12] Burleigh ME, et al., *Cyclooxygenase-2 Promotes Early Atherosclerotic Lesion Formation in ApoE-deficient and C57BL/6 Mice*, J MOL CELL CARDIOL, 2005 Sep. 39(3):443-52.

[13] *Id.* at 446 (emphasis added).

[14] Burleigh ME, et al., *Cyclooxygenase-2 Promotes Early Atherosclerotic Lesion Formation in LDL Receptor-deficient Mice*, CIRCULATION, 2002 Apr. 16; 105(15):1816-23.

involved in the atherosclerotic process.[15] Finally, several recent studies in humans have suggested that COX-2 inhibition (including COX-2 inhibition from Vioxx) is associated with significantly reduced levels of C-reactive protein – considered a marker for progression of atherosclerosis with possible direct involvement in the atherosclerotic process.[16] Again, these results reinforce the absence of reasonable or meaningful support in the scientific literature for *any* suggestion that Vioxx promotes or accelerates atherosclerosis in humans.

Given this absence of reliable scientific support for the theory that Vioxx can accelerate atherosclerosis, the Court should preclude plaintiff's experts from suggesting such a theory as a possible mechanism for injury in this case.

### D. Plaintiff's Experts Have No Basis Upon Which to Opine that Vioxx Accelerated Mr. Barnett's Atherosclerosis.

Plaintiff's experts have failed to offer *any* general causation testimony supporting plaintiff's contention that Vioxx caused his atherosclerosis. Absent evidence that Vioxx *could have* caused this *type* of injury, plaintiff's experts cannot be permitted to testify that Vioxx *did* cause Mr. Barnett's atherosclerosis.

Finally, there is no evidence regarding how – if at all – the use of Vioxx by plaintiff in this case impacted atherosclerosis. In order to testify to a reasonable degree of medical

---

[15] *See* Ross, R., *Atherosclerosis – An Inflammatory Disease*, NEW ENG. J. MED., Jan.14, 1999; 340:115-26 (describing atherosclerosis as "an inflammatory disease").

[16] Bogaty P, et al., *Impact of Prolonged Cyclooxygenase-2 Inhibition on Inflammatory Markers, and Endothelial Function in Patients With Ischemic Heart Disease and Raised C-reactive Protein: A Randomized Placebo Controlled Study*, CIRCULATION, 2004; 110:934-39; Monakier D, et al., *Rofecoxib, a COX-2 inhibitor, Lowers C-reactive Protein and Interleukin-6 Levels in Patients With Acute Coronary Syndromes* (hereinafter "Monakier"), CHEST, 2004 May;125(5):1610-5; *see also* Ridker P, et al., *Inflammation, Aspirin, and the Risk of Cardiovascular Disease in Apparently Healthy Men*, New Eng. J. Med., April 3, 1997; 336:973-79 (clinical finding of relationship between C-reactive protein and stroke and myocardial infarction).

probability that either plaintiff's use of Vioxx accelerated the development of his atherosclerosis, an expert would need at minimum to consider evidence of when the plaintiff's atherosclerosis began to develop – likely years if not decades before – and how rapidly it developed both before and after he began taking Vioxx. No such evidence exists. Without a baseline, an expert cannot judge the impact of any hypothetical acceleration (if indeed any occurred), and the expert accordingly cannot, by definition, provide a reliable opinion that acceleration of atherosclerosis could have contributed to any injury.

The specific causation testimony plaintiff's experts provide amounts to nothing more than a temporal proximity argument – *i.e.*, Mr. Barnett ingested Vioxx during the period in which there was atherogenesis, ergo Vioxx must be the cause. (*E.g.*, Zipes Dep. at 104:15-108:8.) Courts have rejected this primitive view of causation. *Moore*, 151 F.3d at 278 ("In the absence of an established scientific connection between exposure and illness . . . the temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation.") Mr. Barnett had numerous risk factors that made him highly susceptible to atherosclerosis. Plaintiff's experts cannot – and, indeed, have not – ruled out the possibility that it was these factors, and not Vioxx, that caused Mr. Barnett's alleged injuries. The specific causation testimony of these experts as it relates to atherosclerosis should therefore be excluded.

## III. CONCLUSION.

For the foregoing reasons, Merck respectfully requests that the Court grant this Motion and preclude any testimony from plaintiff's expert witnesses that Vioxx can or did accelerate the progression of atherosclerosis.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Motion For Order Excluding Opinion Testimony By Plaintiff's Experts That Vioxx Accelerates Atherosclerosis has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of June, 2006.

/s/ Dorothy H. Wimberly