UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This document relates to | * | JUDGE FALLON |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| GERALD D. BARNETT, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF LEMUEL A. MOYE, M.D., PH.D.

#### (EXPERT CHALLENGE NO. 8)

Plaintiff proffers Lemuel A. Moye, M.D., Ph.D., to testify on liability and general causation issues, including Merck's conduct in the development and marketing of Vioxx®, Merck's interaction with the FDA, and epidemiological and medical issues related to Vioxx – including clinical studies, the toxicity of Vioxx, appropriate labeling and warnings, and relative and attributable risk. (*See generally*, COX-2 Inhibitor Report of Lemuel A. Moye, M.D., Ph.D. ("Moye Rpt."), attached hereto as Ex. A.) Dr. Moye is a professor of biostatistics and epidemiology. He is experienced in designing and conducting clinical trials. He has also been on FDA Advisory Committees. Merck does not challenge Dr. Moye's qualifications to discuss clinical study design, relative and attributable risk issues, or statistical interpretation of medical datum. However, Dr. Moye's deposition testimony demonstrates that he intends to offer opinions that are beyond his areas of expertise and beyond the areas designated by plaintiff.

Accordingly, Merck requests that Dr. Moye be excluded from offering such opinions, which are discussed in greater detail below.

## I. LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of the Motion of Defendant Merck & Co., Inc. ("Merck") for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, filed concurrently herewith and incorporated herein by reference.

## II. DR. MOYE SHOULD BE PRECLUDED FROM OFFERING OPINIONS ON MARKETING, MERCK'S PUBLICATION OF THE VIGOR STUDY, GENERAL CAUSATION, OR VIOXX AS COMPARED TO OTHER COX-2S.

### A. Dr. Moye Admits He Is Not Qualified To Offer Opinions About Merck's Conduct In The Marketing Of Vioxx.

Dr. Moye admits unequivocally that he is not an expert in marketing. (June 2, 2006 Deposition of Lemuel A. Moye, M.D., Ph.D. ("Moye Dep.") at 103:16-18 ("I'm not an expert in marketing. There's no question of that."), attached hereto as Ex. B.) Dr. Moye's admission alone is sufficient reason for the Court to preclude plaintiff from asking Dr. Moye for testimony about Merck's conduct in the marketing of Vioxx.

Dr. Moye's own denial of expertise is unsurprising given that he has never worked for or been a consultant to the Division of Drug Marketing, Advertising, and Communications ("DDMAC"), the division of the FDA tasked to monitor and approve the means by which a pharmaceutical company markets its prescription medications.[1] (Moye Dep. at 102:3-8.) Nor has he ever worked for or given advice to any pharmaceutical company about product marketing.

---

[1] DDMAC is the division of the FDA that reviews all marketing materials for approved drugs and has the authority to request modification or withdrawal of materials it considers may be "false or misleading" within the meaning of FDA regulations.

2

(*Id.* at 104:5-10.) As Dr. Moye conceded, he does not have any special knowledge, skill, training, or education that qualifies him to offer opinions about pharmaceutical product marketing:

> Q. Is it fair to say that you do not [have] any knowledge, experience, training, skill or education in pharmaceutical product marketing? Is that correct?
>
> [Objection omitted]
>
> A. I don't think I could agree with that.
>
> \* \* \*
>
> A. I'm not an expert in marketing. There's no question of that. I'm not an expert. But I think any physician who has had marketers come in their office and speak with them about products understands good and bad marketing techniques. . . . So, that was the basis for my answer to your question.

(*Id.* at 101:14-104:3.) In fact, the only basis that Dr. Moye could possibly have for offering opinions about Merck's marketing of Vioxx – based on his own standard – is inapplicable because he concedes that he never met with a single Merck sales representative about Vioxx. (*Id.* at 123:12-124:19 ("No, I haven't [ever met with a Vioxx sales representatives]. It was approved well after I was out of practice.").)

It could not be clearer that Dr. Moye is not qualified to offer opinions on Merck's conduct in the marketing of Vioxx. Accordingly, the Court should order that Dr. Moye cannot testify on marketing issues.

### B. Dr. Moye Should Be Precluded From Testifying About Merck's Alleged "Critical Ethical Omission" From The VIGOR Publication.

Plaintiff has listed Gregory Curfman, M.D., as a fact witness in this case to testify about Merck's publication of the VIGOR study. Dr. Moye's added opinion that "[n]either the VIGOR authors nor the sponsors updated the data in the article that appeared in the *New England Journal of Medicine* in November 2000 with the new safety data, a critical ethical omission" (Moye Rpt.

at ¶ 108) should be precluded on the grounds that it is cumulative and constitutes improper opinion testimony based on ethics. FED. R. EVID. 403; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (finding "expert opinion as to the ethical character of [defendants'] actions simply is not relevant to these lawsuits."); *In re Diet Drugs*, 2001 WL 454586, at *8 (E.D. Pa. Feb. 1, 2001) ("ethics are, at best, only marginally relevant. . . [T]he pertinent issues in this litigation are the obligations of a pharmaceutical company in testing, surveying and labeling medications . . . [P]roof that a pharmaceutical company has fulfilled its ethical requirements is not an essential element.").

### C. Dr. Moye Is Not Qualified To Offer Opinions On General Causation And, In Fact, His Opinions Are Entirely Without Scientific Support.

Federal Rule of Evidence 702 limits witnesses from offering opinions unless they are qualified by "knowledge, skill, experience, training, or education" on the subject to which the testimony relates.

#### 1. *Dr. Moye Does Not Have Any Personal Experience That Would Qualify Him To Testify That Vioxx Causes Cardiovascular Events.*

Although Dr. Moye is licensed to practice medicine, he has not been in practice since March 1992. (Moye Dep. at 89:2-23.) Instead, Dr. Moye has chosen to focus his career on teaching statistics and epidemiology. (*Id.*; *see also Curriculum Vitae* of Lemuel A. Moye, M.D., Ph.D. ("Moye CV") at 1, 13-14 (describing classes taught each semester since Spring 1987), attached hereto as Ex. C.) Unsurprisingly, there have been significant scientific and medical advancements in the 13 years since Dr. Moye left the active practice of medicine. During this time, scientists discovered that the COX enzyme had two forms, now called COX-1 and COX-2, with different functions. In the wake of this scientific development, several pharmaceutical companies developed COX-2 inhibitors. The COX-2 inhibitors include Vioxx, Celebrex®, and Bextra®.

Vioxx was introduced to the public in September 1999, seven and a half years after Dr. Moye stopped seeing patients.[2] Dr. Moye has no personal experience with Vioxx, had never prescribed Vioxx, counseled a patient on Vioxx, read the product label for Vioxx while it was on the market, or prescribed any other COX-2 inhibitor. (Moye Dep. at 91:5-20.) In addition, Dr. Moye has never discussed with other physicians their experience with prescribing Vioxx or talked to a single person who has taken Vioxx to learn about that patient's experience. (*Id.* at 91:21-92:4.)

Moreover, Dr. Moye has little experience with patients who suffer the kind of chronic pain that requires daily relief in the form of prescription medication and, therefore, is not qualified to opine about the risk-benefit analysis of Vioxx or any other NSAID. Indeed, Dr. Moye's answer to his patients 13 years ago who did present with "chronic pain" was that they use "five to seven days of a nonsteroidal anti-inflammatory, but primarily [he would prescribe] a combination of rest and exercise and warm water baths." (*Id.* at 94:1-24.)

Despite this, Dr. Moye would offer his opinion that the risks of Vioxx outweigh any potential benefit, *i.e.*, that it "[i]s unsafe at any dose, duration, combination, in any patient regardless of their underlying risk for cardiovascular disease." (*Id.* at 339:21-340:7; 343:21-24; 351:12-15; 360:7-13; Moye Rpt. at ¶ 25.)[3] However, Dr. Moye does not have any experience with COX-2 inhibitors, much less Vioxx, that would qualify him to offer this opinion.[4]

---

[2] Dr. Moye's only experience seeing patients since 1992 was when he provided volunteer emergency care to evacuees from Hurricane Katrina at the Astrodome in September 2005. (Moye Dep. at 89:2-90:12.)

[3] Moreover, he would offer this opinion in the face of his belief that it is the patient who decides if the risks outweigh the benefits (*id.* at 343:14-18) and that this is an issue of individual medical judgment. (*Id.* at 120:15-121:4.)

[4] Dr. Moye also admits that he has not conducted any original laboratory research on COX-2
*(footnote continued next page)*

> 2. *Dr. Moye Does Not Have Any Special Knowledge, Training, Or Education That Would Qualify Him To Testify That Vioxx Causes Cardiovascular Events.*

In addition, Dr. Moye does not have the requisite knowledge, training, or education required by Federal Rule of Evidence 702 that would otherwise qualify him to opine that Vioxx causes cardiovascular events. (*See* Moye Rpt. at ¶¶ 24-26, 34, 57, 77, 159, 180.)

Although plaintiff will likely argue that Dr. Moye is qualified because of his service on the FDA CardioRenal Advisory Committee for four years between 1996 and 1999, it is undisputed that Dr. Moye is not a cardiologist[5] (Moye Dep. at 87:18-88:3), was never trained in cardiology (*id.* 87:18-21), and is not now certified and cannot hold himself out as a cardiologist (*id.* 87:22-88:3). Likewise, Dr. Moye is not a pharmacologist.[6] (*Id.* at 88:22-89:1.)

It is undisputed that Dr. Moye is a biostatistician and that FDA Advisory Committees include biostatisticians. (*Id.* 108:17-19.) Dr. Moye would nevertheless claim to have relevant cardiology experience, but those experiences only occurred because of his expertise in biostatistics and epidemiology.[7] The fact that companies requested Dr. Moye to apply his expertise in biostatistics and epidemiology to cardiovascular clinical trials does not make him an expert qualified to testify about what *causes* cardiovascular events. For example, he testified that he was hired by Proctor & Gamble, Pfizer, and other companies to help design studies looking

---

inhibitors (*id.* at 95:1-4) or been the author of any original epidemiological studies on Vioxx or any other COX-2 inhibitors. (*Id.* at 95:9-96:2.)

[5] Cardiology refers to the heart and its actions and diseases.

[6] Pharmacology refers to the toxicology of drugs, including the properties and reactions of drugs, especially with relation to their therapeutic value.

[7] His statement to the contrary does not make him an expert in cardiology. (Moye Dep. at 108:20-109:4 ("Q: And even though you were on the cardiorenal Advisory Committee, you're not an expert in cardiology or nephrology, right? A: I would disagree with you about that. I certainly am not a cardiologist, but I have extensive training and experience carrying out cardiovascular trials.").)

6

for cardiovascular risk because of his expertise in biostatistics and cardiology. (*Id.* at 132:6-19, 134:13-135:18.) However, his self-serving testimony that these companies considered him an expert in cardiology is belied by the fact that when Pfizer and other companies asked him to give lectures, the lectures had nothing to do with cardiology. (*Id.* at 135:20-137:13 (describing three lectures on behalf of Pfizer to discuss "dependence in subgroup analyses," "hyperdependence in clinical trial analyses," and "professionalism in science"); *id.* at 176:7-177:5 (explaining that his work for Bristol-Myers Squibb involved a lecture to the FDA to explain a new type of statistical analysis); *id.* at 181:10-182:11 (admitting presentation to FDA "was also about the use of a particular statistical technique"); *see also* Moye CV at 15-17 (listing 70 guest lectures mostly on topics such as "Sample Size Considerations in Phase II Clinical Studies," and "Public Health versus Mathematical Modeling").)

Because Dr. Moye does not have any relevant experience and is not an expert in cardiology or pharmacology, the Court should preclude Dr. Moye from testifying to general causation issues and the toxicity of Vioxx.

        3.    *Dr. Moye Admits His Opinion That Vioxx Causes Cardiovascular Events Lacks Scientific Support.*

A review of Dr. Moye's deposition makes it abundantly clear that he is not qualified to offer general causation opinions and that his opinions lack scientific support. For example, Dr. Moye opines that one of the mechanisms by which Vioxx causes cardiovascular events is by upsetting the balance of prostacyclin and thromboxane. However, he knows little about prostactyclin and thromboxane, does not know whether they are prostaglandins, and does not rely on any scientific evidence to support his opinion:

    Q:    Is prostacyclin a prostaglandin?
    A:    (Witness reviewing document.) I'm sorry. I don't see where I mention prostacyclin here.

7

> Q: You don't. ... My question is, is prostacyclin a prostaglandin?
>
> A: It's related to it. I don't know the chemical composition of it. So, I don't know if it meets the chemist's definition of being a prostaglandin or not.
>
> Q: Is that outside your area of expertise?
>
> A: Whether prostacyclin is a prostaglandin, yes.
>
> Q: Do you know whether thromboxane is a prostaglandin?
>
> A: It's regulated by prostaglandin. I don't know if itself it is a prostaglandin.

(Moye Dep. at 331:7-332:9.) Given Dr. Moye's unfamiliarity with these chemicals, it is not surprising that he also has no idea what organs produce these chemicals – even though he alleges these chemicals are the mechanism by which Vioxx can cause cardiovascular events. (*See id.* at 242:15-243:6.)

In addition to having very little knowledge or understanding of the chemicals that Vioxx allegedly upsets (*id.* at 333:13-21; 336:8-15), Dr. Moye also admits that his opinion is not based on *any* studies:

> Q: Dr. Moye, is there any specific study that you're relying on for your opinion that Vioxx causes an imbalance between prostacyclin and thromboxane?
>
> A: No. It was my understanding that the biochemistry of it, but I haven't reviewed the basic biochemical studies, no.
>
> Q: Do you know whether the studies measure prostacyclin directly or whether they measure a metabolite of prostacyclin?
>
> A. I don't know that.
>
> Q. Do you know the difference between PGI2 and PGF1α?
>
> A. No.[8]

(*Id.* at 376:21-377:13.)

For the same reason, and as discussed in greater detail in Merck's Motion for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, Dr.

---

[8] PGI2 is the proper name for prostacyclin and PGF1α is a metabolite of prostacyclin.

8

Moye's opinion that Vioxx causes cardiovascular events by promoting atherosclerosis and causing coronary plaque to break off must also be excluded:

> Q: ... what's your basis for saying that Vioxx destabilizes plaque? Do you have any paper or any scientific evidence of that?
>
> A: I don't have any paper that shows definitively that in intravascular atherosclerosis production that COX-2 inhibitors can accelerate that ... However, I do understand the complexity of the atherosclerotic generation system. I also understand the delicate interplay in the role of thrombus, and I believe it is admissible that COX-2 inhibitors, like Vioxx, ... can make atherogenic caps more friable.
>
> [Objection omitted]
>
> Q: Based on what?
>
> A: Based on my understanding of how these mechanisms work.
>
> \*   \*   \*
>
> Q: ... My question is, is there a study, not what's his understanding.
>
> A: My answer is, no, there's not ...

(*Id.* at 299:7-301:12.)

These opinions should be excluded because they are unreliable and lack any scientific basis. Moreover, Dr. Moye lacks the requisite qualifications to offer such opinions. Accordingly, the Court should preclude Dr. Moye from opining that Vioxx causes cardiovascular events.

### D. Dr. Moye Admits He Is Not Qualified To Offer Opinions About Vioxx As Compared To Other COX-2 Inhibitors.

On April 6, 2005, the FDA issued a comprehensive, formal memorandum ("FDA Memo"). Relevant to this motion is the FDA's conclusion that there is a "class effect" for all NSAIDs (FDA Memo at 2) and there is no basis for rank ordering the various COX-2 inhibitors in terms of cardiovascular risk (*id.* at 1). Dr. Moye acknowledges that before issuing the Memo, the FDA conducted a comprehensive review of existing datum concerning the cardiovascular risk of all NSAIDs, including COX-2 inhibitors such as Vioxx. (*Id.* at 370:2-10.)

9

As discussed above, Dr. Moye is not a pharmacologist. (Moye Dep. at 88:22-89:1.) In addition, when it comes to COX-2 inhibitors other than Vioxx, Dr. Moye admits he has not reviewed the relevant materials and does not have a sufficient basis to disagree with the FDA's conclusion that COX-2 inhibitors, such as Vioxx and Celebrex, cannot be rank ordered, *i.e.* they have a similar effect on the vasculature and cannot be ranked as having a greater risk of causing cardiovascular events:

> Q: Is it your position that you know that Vioxx has a greater cardiovascular risk than these other drugs which you have not done a scientific investigation of, or is it your opinion you've not looked at the question and don't have an opinion one way or the other?
>
> A: I have not looked at the question, so, I can't rank order . . .
>
> Q: With respect to cardiovascular risks?
>
> A: Right.
>
> Q: . . . And that's true with respect to Vioxx and Celebrex also, right?
>
> A: Well, it means the same thing. Rank order with respect to COX-2s -- with respect to [Vioxx] and other COX-2s, because I haven't looked at other COX-2s.
>
> \*   \*   \*
>
> Q: Rank order with respect to Vioxx versus Celebrex, you haven't looked at that question, right?
>
> A: That's right. I have not looked at that point.
>
> Q: So, you can't have an opinion not having looked at that question?
>
> A. Right.

(*Id.* at 370:11-371:21.)

Notwithstanding this admitted lack of scientific support, Dr. Moye would still opine that the conclusions stated in the FDA Memo are wrong "based on [his] understanding of the effects of [Vioxx]" (*id.* at 368:22-369:24) and "that Vioxx is the worst" of all the COX-2 inhibitors (*id.* at 394:11-18). His opinion clearly lacks any foundation. Moreover, the fact that he is not a pharmacologist renders him wholly unqualified to offer opinions comparing Vioxx to other COX-2s. *See Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 702 (W.D.N.C. 2003)

(prohibiting Dr. Moye from testifying to alleged similarities between diet drugs because he is clearly not a pharmacologist).

> A: . . . my understanding of Celebrex is that it has more COX-1, anti-COX-1 activity than Vioxx does. So, to the degree that it has more anti-COX-1 activity is the degree to which it might inhibit thromboxane.
>
> Q: Have you looked at any literature that discusses the effect of Celebrex on thromboxane or not?
>
> A: I have not looked at any particular literature, no.
>
> Q: There's nothing you've seen that tells you one way or the other?
>
> A: I haven't looked to answer the question.

(*Id.* at 207:14-208:6; *see also* Moye Rpt. at ¶ 81.) It would be improper to allow Dr. Moye to disagree with the FDA's conclusion stated in its April 6, 2005 Memo and offer opinions about Vioxx's risks compared to other COX-2 inhibitors when he lacks any basis for offering such opinions.

## III. DR. MOYE IS NOT ALLOWED TO TESTIFY TO MERCK'S INTENT OR MOTIVE.

Under Federal Rule of Evidence 702, a defendant's intent or state of mind are not proper topics for expert testimony. As one court noted in excluding expert testimony in a similar failure-to-warn case:

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546 (rejecting expert testimony "on the intent, motives or states of mind of corporations, regulatory agencies and others" because they "have no basis in any relevant body of knowledge or

expertise").

In the Phen-Fen litigation, Dr. Moye was prevented from offering the same kind of "intent" testimony Merck seeks to exclude from this case:

> Dr. Moye's 'fact' and 'corporate intent' testimony is inadmissible. Indeed, the MDL Court, Judge Bechtle, has already ruled that testimony regarding corporate intent is inadmissible . . . . [T]he jury should hear and /or see first-hand any relevant evidence pertaining to the Defendant's intent. Then the jury, not the witnesses, should consider the facts and make its own determination regarding Defendant's intent.

*Smith*, 278 F. Supp. 2d at 700 (citation omitted). During his deposition, Dr. Moye made clear that, if allowed, he will offer the type of motive and intent testimony that is expressly prohibited by courts that have addressed the issue. (*See, e.g.*, Moye Dep. at 83:20-24 ("I think it became clear to me what they weren't doing, so, I suppose I am going to speak to some degree about the motives."); *id.* at 84:22-85:3 ("Q. Are you offering any opinions that Merck intended to hurt patients or intended to mislead the FDA? . . . A. I think I am."); *id.* at 85:18-24 ("I think I can probably speak most clearly about Merck's intent. And I believe Merck's intent was not to provide a fair, clear assessment of the relationship between Vioxx and cardiovascular events"); *see also* Moye Rpt. at ¶¶ 87, 190.) Jurors are fit to conduct the same analysis Dr. Moye is conducting and reach their own conclusions based on the documents he reviewed. This Court therefore should find, as other courts have done, that such "expert" testimony about Merck's intent and motives would invade the province of the jury and must be precluded.

## IV.  DR. MOYE'S OPINIONS THAT MERCK MISLED THE FDA AND FDA ADVISORY COMMITTEES ARE PREEMPTED BY *BUCKMAN*.

In his deposition, Dr. Moye testified that Merck withheld data from the FDA and the 1999 and 2001 FDA Advisory Committees dealing with Vioxx (Moye Dep. at 52:14-53:22; 266:11-267:17), and thereby "misled the FDA and the FDA Advisory Committee." (Moye Dep.

12

at 56:23-57:6 (agreeing "that Merck misled the FDA and the FDA Advisory Committee meeting [because] they [sic] did not disclose the Watson analysis").)

First, any argument or testimony that "Merck misled the FDA" is preempted by *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). In *Buckman*, the U.S. Supreme Court specifically stated that evidence and testimony that a company did not provide appropriate information to the FDA would be excluded. *Id.* (holding that companies should not have to "fear that their disclosures to the FDA, although deemed appropriate by the [FDA], will later be judged insufficient in state court").

Second, Dr. Moye acknowledges that the Watson analysis was an internal, Merck memorandum. Merck was not obligated to provide its internal memorandum to the FDA. Accordingly, any suggestion that it acted improperly should be excluded.

Third, Dr. Moye's testimony that Merck misled the FDA is improper because he concedes that the data Dr. Watson analyzed was submitted to the FDA:

> Q: The analysis that [Dr. Watson] conducted was based on the incidence of thrombotic cardiovascular serious adverse events among patients in the Vioxx Phase IIb and III osteoarthritis trials and their extensions, right?
>
> A: Yes.
>
> Q: . . . Now, is it your understanding that all of the data from Phase IIb and III osteoarthritis studies that were completed at the time of the approval had been submitted to the FDA for their consideration?
>
> A: I believe that that's true, yes. I think I would expect that to be part of the NDA [New Drug Application].
>
> Q: You would expect an evaluation of all of the Phase II and III OA trials to be part of the NDA?
>
> A: Yes.

(Moye Dep. at 271:4-24; *see also id.* at 281:14-282:5.)

For the foregoing reasons, the Court should preclude Dr. Moye from testifying that Merck misled the FDA by not providing it with this internal memorandum.

## V. CONCLUSION.

Because Dr. Moye is not qualified to offer opinions on all of the topics plaintiff has designated and because some of his opinions are entirely unreliable and therefore inadmissible, Merck respectfully requests that the Court preclude Dr. Moye from testifying on: (i) Merck's conduct in marketing Vioxx; (ii) Merck's alleged unethical conduct and testimony about the VIGOR publication; (iii) General causation; (iv) Vioxx is the worst of all COX-2 inhibitors; (v) Merck's intent or state of mind; and (vi) Merck misled the FDA and/or the FDA Advisory Committees.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck for Order Excluding Testimony of Lemuel A. Moye, M.D., Ph.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of June, 2006.

/s/ *Dorothy H. Wimberly*