UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| GERALD D. BARNETT | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING (1) EVIDENCE OF MOTIVE AND (2) EVIDENCE RELATING TO THE ASSETS AND PROFITABILITY OF MERCK OR TO THE COMPENSATION AND FINANCIAL DECISIONS OF ITS EMPLOYEES**

(MOTION IN *LIMINE* NO. 1)

Merck seeks an order excluding evidence of and argument relating to Merck's motives in marketing Vioxx®, Merck's assets and profitability, and the compensation and financial decisions of its employees. Plaintiff apparently intends to introduce irrelevant and inflammatory evidence of this nature in this case, even though the Court excluded all such evidence in *Plunkett v. Merck*. (*See* Order dated Nov. 20, 2005, Attachment at 3; Order re Merck's Previously Filed Motions in *Limine*, dated Feb. 3, 2006, at 2.)

Merck requests that the Court exclude this evidence under Federal Rules of Evidence 401 through 403 because it is irrelevant, unduly prejudicial, and likely to confuse and inflame the

jury and unduly lengthen the trial.[1] For all of these reasons, this evidence has no place in a trial phase limited solely to liability for compensatory damages.[2] Specifically, the Court should exclude all of the exhibits on plaintiff's preliminary exhibit list that relate to Merck's motives in marketing Vioxx, Merck's assets and profitability, and the compensation and financial decisions of its employees. Some examples of these exhibits are[3]:

- Exhibit 1.0009, "2001 Profit Plan for Vioxx"
- Exhibit 1.0667, "Wall Street Journal article 'Drugs: Merck's Health Hinges on Sales of Arthritis Pill' by R Langreth"
- Exhibit 1.0966, "Profit Plan 2002 - Merck A&A Franchise"
- Exhibit 1.1135, "US Long Range Operating Plan Franchise: Analgesic & Anti-Inflammatory Products: Vioxx, Etoricoxib"

---

[1] Rather than re-brief in full the arguments it has made previously, Merck hereby incorporates by reference its prior motions on this subject. (*See* Motion of Merck to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees (Motion in *Limine* No. 2), filed in *Plunkett v. Merck* on Nov. 4, 2005 and Jan. 30 2006 (Record Docket Nos. 1267 and 3024).)

[2] As in the *Plunkett v. Merck* trials, Merck will request that the Court bifurcate all punitive damages issues and first try only the issues that will determine whether or not Merck is liable for compensatory damages. Only if plaintiff establishes Merck's liability for compensatory damages will a second phase addressing punitive damages be necessary. *See O'Malley v. United States Fid. & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) (approving bifurcation of liability and bad faith punitive damage claims); *State Farm Fire & Cas. v. Woods*, 896 F. Supp. 658, 659-60 (E.D. Tex. 1995) (bifurcating liability and punitive damages issues and noting that evidence of a party's net worth would "severely prejudice" the calculation of actual damages). Merck does not concede that the evidence that this motion addresses would be admissible even if there is a punitive damages phase. Evidence of Merck's national profit plans, for example, has nothing to do with the conduct that plaintiff contends caused his injuries. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-23, 428-29 (2003) (prohibiting exemplary damages awards based on conduct having no relationship to the plaintiff's alleged injury). However, at this point, the Court need not decide what evidence would be admissible in a punitive damages phase.

[3] This motion is based on plaintiff's preliminary exhibit list. Merck has not yet received plaintiff's final exhibit list, which may include additional exhibits that should also be excluded for the same reasons advanced in this motion. In particular, plaintiff does not appear to have listed on their preliminary list exhibits relating to the compensation or financial decisions of individual Merck employees. If plaintiff lists any such exhibits on his final exhibit list or seeks to introduce evidence of individual employee compensation at trial, the Court should exclude such evidence for the same reasons stated in text above.

- Exhibit 1.1568, "2003 Profit Plan for Vioxx"
- Exhibit CM.0006, "Vioxx Consumer Marketing 2000 Profit Plan (powerpoint presentation)"
- Exhibit CM.0008, "2000 Profit Plan Extended Team Meeting for Vioxx"
- Exhibit CM.0072, "2000 Profit Plan"

The Court should also exclude all testimony relating to these documents proffered during the compensatory phase of this trial.

## I. EVIDENCE OF OR ARGUMENT ON MERCK'S PURPORTED "MOTIVES" IS IRRELEVANT AND INADMISSIBLE.

Given what plaintiffs in other Vioxx trials have argued and based on the entries on plaintiff's preliminary exhibit list, it appears that plaintiff will contend that Merck rushed Vioxx to market because it feared competition from Celebrex® and needed a new drug to replace profits from other Merck drugs going "off-patent." Plaintiffs in past Vioxx cases have attempted to show Merck's financial motives by introducing e-mails and other internal Merck documents that are not even colorably relevant for any other purpose. Evidence of these possible "motives" has no logical connection to any fact of consequence in this case; it does not relate to either the cause of Mr. Barnett's injuries or the information upon which his treating physicians relied. *See Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 173 (S.C. Ct. App. 1989) ("Negligence is determined by measuring the defendant's conduct against a standard of care, not by discovering his feelings towards the plaintiff (malice) or his subjective reasons for acting (motive). Failure to exercise due care, not intent, is the critical element in negligence."). *See also La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994) (noting the impropriety of punishing the defendant for "an unsavory motive"); *Kunz v. Utah Power & Light Co.*, 913 F. 2d 599, 605 (9th Cir. 1990) (since "neither motive nor intent are material in a negligence action . . . the district court could have concluded that evidence tending to prove a business motive for Utah Power's

conduct was excludable as irrelevant" (internal citation omitted)). In short, evidence purporting to show Merck's "motives" is irrelevant to any material issue in this case.[4] Therefore, as it did in both *Plunkett v. Merck* trials, the Court should exclude any evidence that purportedly shows that Merck was in a race with Pfizer to market Vioxx, that certain drugs were about to come off-patent, or that involves Merck's "motives" for developing and marketing Vioxx in any other respect. *See* FED. R. EVID. 401.

## II. ADMITTING EVIDENCE OF MERCK'S PURPORTED "MOTIVES" FOR ITS MARKETING ACTIVITIES WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND UNDUE DELAY.

Evidence of Merck's alleged motives also would cause undue prejudice, juror confusion, and undue delay. *See* FED. R. EVID. 403. Merck denies that it acted with any improper "motives" and, as discussed above, an examination of Merck's motives in marketing Vioxx is irrelevant to Merck's liability. But even if evidence of Merck's purported "motives" had any probative value, the primary effect of such evidence would be to distract the jury from what is at issue in this case: whether Vioxx caused Mr. Barnett's injuries, and, if so, whether Merck adequately warned his physicians of the medication's potential risks.

Admitting evidence allegedly showing Merck's internal corporate rationale for its marketing strategy also carries a high risk of confusing the jury. *See United States v. Simkanin*,

---

[4] Even if evidence of a generalized profit "motive" were relevant to Mr. Barnett's negligent misrepresentation and deceit by concealment claims – and it is not – those claims fail as a matter of law, and plaintiff should not be permitted to use such claims as a vehicle to introduce irrelevant and inflammatory evidence. Plaintiff's concealment claims are essentially the same as their failure-to-warn claim, recast in terms of "intentional suppression" of material information. (*See* Compl. at ¶ 48 (Merck deceived "Plaintiffs, Plaintiffs' physicians and the general public as to the health risks and consequences of the use of Vioxx").) *See also Labelle v. Brown & Williamson Tobacco Corp.*, No. 2:98-3235-23, 1999 U.S. Dist. LEXIS 21629, at *12-13 (D.S.C. Mar. 18, 1999) (holding that claims that "cigarette manufacturers engaged in fraud and deceit by failing to disclose information" are "essentially failure-to-warn claims")).

4

814068v.1

420 F.3d 397, 412-13 (5th Cir. 2005) (upholding the exclusion of tax law sources in a tax evasion case due to the likelihood of confusing the jury as to the state of the law), *cert. denied*, 126 S. Ct. 1911 (2006); *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) ("[Evidence] is unfairly prejudicial if it . . . may cause a jury to base its decision on something other than the established propositions in the case." (citation and internal quotation marks omitted)). Moreover, admission of this "motive" evidence would result in undue delay as Merck would be required to admit evidence to explain the context of Merck's marketing strategies and business plans. The need to prevent consumption of valuable time on entirely tangential issues provides an independent reason to exclude evidence of Merck's purported internal motives. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence because, *inter alia*, "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources . . .").

### III. EVIDENCE OR ARGUMENT REGARDING MERCK'S ASSETS, PROFITABILITY, AND EMPLOYEE COMPENSATION IS IRRELEVANT AND INADMISSIBLE.

The Court also should bar plaintiff from making the claim that Merck's former CEO and other employees managed the company to boost profits and enrich themselves at the expense of product safety. Such an assertion is not only completely baseless but also irrelevant to Merck's liability for Mr. Barnett's injuries, because it does not go to the issue of whether Vioxx was the cause of the injury alleged or whether Merck provided legally adequate warnings to his physicians. *See, e.g., In re Norplant Contraceptive Prods. Litig.*, MDL No. 1038, 1997 U.S. Dist. LEXIS 11118, at *1-2 (E.D. Tex. Feb. 19, 1997) (excluding evidence of defendant's gross profit margins as irrelevant); *La Plante*, 27 F.3d at 740 (ruling that defendant's profits were inadmissible).

814068v.1

Nor is any such argument or evidence relevant because it allegedly shows an improper "motive" for the way in which Merck developed, tested, and marketed Vioxx. As discussed above, motive evidence is not relevant in actions based on theories of negligence and strict liability. Financial evidence pertaining to Merck (or to Merck employees) is simply not probative on any of the issues that will determine liability.[5]

## IV. ADMITTING EVIDENCE OF MERCK'S ASSETS, REVENUES, AND PROFITABILITY, OR OF THE COMPENSATION AND FINANCIAL DECISIONS OF ITS EMPLOYEES, WOULD CAUSE UNDUE PREJUDICE, JUROR CONFUSION, AND UNDUE DELAY.

Evidence of Merck's assets, revenues, and projected or actual profitability has nothing to do with whether Vioxx caused Mr. Barnett's alleged injuries or whether Merck adequately warned of Vioxx's risks. Allowing plaintiff to introduce or even comment on that evidence in this initial stage of trial will seriously prejudice Merck. Plaintiff will have every opportunity to present evidence concerning causation and the adequacy of Merck's warnings. Evidence of Merck's wealth simply has no bearing on any issues to be tried. In *State Farm*, the Supreme Court noted that the wealth of the defendant "had little to do with the actual harm sustained by the [plaintiffs]." 538 U.S. at 427. The same is true here. Permitting plaintiff to adduce evidence of this nature risks invoking any latent antipathy, animosity, or resentment that jurors might harbor towards large corporations or their officers.[6] *See id.* at 421-27. Evidence proffered with

---

[5] Merck does not concede that evidence of financial status would be admissible in whole or in part even in a punitive damages phase of trial. Moreover, Merck objects, on constitutional grounds, to admitting evidence of its assets or wealth. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 421-23, 429 (prohibiting exemplary damages awards based on conduct having no relationship to the plaintiff's alleged injury).

[6] There can be no doubt that this is a real risk when the defendant in a jury trial is a large, out-of-state corporation. "Punitive damages pose an acute danger of arbitrary deprivation of property. Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their
(*footnote continued next page*)

6

814068v.1

the intent to inflame a jury's prejudices in this manner is plainly improper, particularly where the effect is to divert the jurors' attention from the outcome-determinative facts and, instead, to unrelated, collateral matters. *See* FED. R. EVID. 403; *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("We agree with the overwhelming majority of courts which have examined this issue and which have disapproved of the use of a defendant's financial condition in determining compensatory damages.").

## V. CONCLUSION.

For the reasons stated above and in Merck's prior briefing on this subject, Merck respectfully requests that the Court exclude evidence and argument relating to the alleged "motives" of Merck or its officers or employees in developing and marketing Vioxx – including any evidence relating to Merck's wealth, profitability, assets, income, or net worth, as well as the compensation, stock holdings, or stock options of its officers or employees.

---

verdicts to express biases against big businesses, particularly those without strong local presences." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994). Public displeasure with prescription drug prices may also trigger a verdict on an improper basis when evidence of revenues or profitability is admitted in an action in which the defendant is a pharmaceutical company.

814068v.1

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

814068v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Motion of Merck for Order Excluding (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Its Employees has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of June, 2006.

_Dorothy H. Wimberly_

814068v.1