**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: VIOXX** | * | **MDL Docket No. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | **JUDGE FALLON** |
| **This document relates to Case No. 06-0485** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| **GERALD D. BARNETT,** | * | |
| Plaintiff, | * | |
| v. | * | |
| **MERCK & CO., INC.,** | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING INFORMAL COMMUNICATIONS FROM THE FDA CONCERNING PROMOTIONAL MATERIALS**

**(MOTION IN *LIMINE* NO. 2)**

By this motion, Merck seeks an order excluding all "Warning Letters" and other informal "Untitled Letters" (collectively "informal FDA letters") from the Food and Drug Administration ("FDA"), regardless of whether they address Vioxx® or some other drug that Merck manufactures.[1] Plaintiff's preliminary exhibit list in this case includes at least one informal FDA

[1] Rather than re-brief in full the arguments it has made previously, Merck hereby incorporates by reference its prior motions on this subject. (*See* Motion of Merck to Exclude FDA Warning Letters and Inadmissible Hearsay Statements Made By FDA Employees Regarding Vioxx (Motion in *Limine* No. 4), filed in *Plunkett v. Merck* on Nov. 4, 2005 and Jan. 30, 2006 (Record Docket Nos. 1269 and 3026).)

letter that relates to Vioxx. (*See* Pl.'s Ex. 1.0006.) The Court should exclude Exhibit 1.0006 and any other Warning Letters or Untitled Letters from the FDA that plaintiff may seek to introduce, whether they address Vioxx or some other Merck-manufactured drug. All such letters are irrelevant, and their admission would confuse the jury, unfairly prejudice Merck, and unduly lengthen the trial. Such letters are also inadmissible hearsay.

## I. FDA WARNING LETTERS AND UNTITLED LETTERS, INCLUDING THOSE RELATED TO VIOXX, ARE IRRELEVANT, AND THEIR ADMISSION WOULD CAUSE UNFAIR PREJUDICE TO MERCK, JURY CONFUSION, AND UNDUE DELAY.

### A. The Informal FDA Letters Are Irrelevant.

FDA Warning Letters and Untitled Letters, including Exhibit 1.0006 and any other letter addressing Vioxx, are inadmissible because they have nothing to do with any issue in this action. *See* FED. R. EVID. 401-402. As the Court may recall, Exhibit 1.0006 is a "Warning Letter" dated September 17, 2001 that addressed what Thomas Abrams, the letter's author, called certain "promotional audio conferences given on behalf of Merck by Peter Holt, M.D., a [Merck] press release, and oral representations made by Merck sales representatives to promote Vioxx." Mr. Abrams asserted that these marketing activities "minimize[d] the potentially serious cardiovascular findings that were observed in the [VIGOR] study." Specifically with respect to the audio conferences described in the letter, Mr. Abrams stated that Dr. Holt minimized the risk of using Vioxx with another drug, Coumadin, and that Dr. Holt improperly promoted Vioxx for then unapproved uses such as rheumatoid arthritis, cancer, Alzheimer's disease, and gout. Finally, Mr. Abrams asserted the legal conclusion that the enumerated marketing activities violated the Federal Food, Drug, and Cosmetic Act.

This letter is irrelevant for multiple reasons. First, there is no evidence that any of the physicians who prescribed Vioxx to Mr. Barnett attended any of the audioconferences that the

letter addresses. (Deposition of Michael McCaffrey, M.D. ("McCaffrey Dep.") at 109:14-22, attached hereto as Ex. A; Deposition of Michael Mikola, M.D. ("Mikola Dep.") at 340:25-341:21, attached hereto as Ex. B.) Nor is there evidence that any of Mr. Barnett's physicians were influenced in making their prescribing decisions by the press releases or oral representations detailed in the letter. To the contrary, Dr. McCaffrey testified that he prescribed Vioxx to Mr. Barnett because he considered it to be an excellent medication, not in reliance on Merck's promotional materials or sales calls. (McCaffrey Dep. at 26:23-27:11, 61:19-64:9, 203:22-204:5.) And Dr. Mikola could recall neither any specifics of what Merck sales representatives said to him about Vioxx nor any discussions about Naproxen. (Mikola Dep. at 55:14-57:9.) As a result, there is no link between the alleged misconduct discussed in Exhibit 1.0006 and the decisions to prescribe Vioxx to Mr. Barnett.

The audioconferences described in the letter are irrelevant for a number of additional reasons. Mr. Barnett was prescribed Vioxx to relieve his osteoarthritis and chronic pain – *not* as a treatment for rheumatoid arthritis, cancer, Alzheimer's disease, or gout, afflictions from which he did not suffer. (*See, e.g.*, Mikola Dep. at 29:5-10.) Thus, assuming Dr. Holt made claims regarding these other conditions, and assuming contrary to fact that any of Mr. Barnett's prescribing physicians heard them, Dr. Holt's claims could not have affected the decision to prescribe Vioxx to Mr. Barnett. And Dr. Holt's alleged statements about the risk of taking Vioxx with Coumadin are irrelevant because there is no evidence that Mr. Barnett took Coumadin.

In short, the opinions and legal conclusions of an FDA employee about the promotional materials discussed in Exhibit 1.0006 – including the audioconferences, press releases, and oral representations – are irrelevant because the materials themselves are irrelevant. There is no

evidence that the promotional activities addressed in Exhibit 1.0006 had any bearing on the decisions of any of Mr. Barnett's physicians to prescribe Vioxx for him. The letter is thus not probative of any fact that must be proven to establish Merck's liability for the specific injury at issue in this case. Moreover, because the alleged misconduct is unrelated to Mr. Barnett's specific claims, admitting the letter would simply be an invitation for the jury to determine liability here on the basis of Merck's generalized "bad character." This would amount to the admission of improper "propensity" evidence in violation of Rule of Evidence 404.

In both trials in *Plunkett v. Merck*, the Court admitted Exhibit 1.0006 on the ground that it was relevant to plaintiff's contention that Merck allegedly rushed Vioxx to market. (*See* Dec. 5, 2005 Tr. in *Plunkett v. Merck* at 1446:9-1450:1, attached hereto as Ex. C.) The "rush to market" theme is a part of plaintiff's effort to show a bad motive on the part of Merck. But the content of Exhibit 1.0006, which addresses specific conduct that took place after the VIGOR results were released, has no logical connection with the contention that Merck rushed Vioxx to market. And even assuming, contrary to fact, that Exhibit 1.0006 is probative of the "rush to market" contention, this is still not a proper basis for admitting the letter. Merck's "motive" is irrelevant in an action based on theories of negligence and strict liability.[2] *See Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 173 (S.C. Ct. App. 1989) ("Negligence is determined by measuring the defendant's conduct against a standard of care, not by discovering his feelings towards the plaintiff (malice) or his subjective reasons for acting (motive). Failure to exercise due care, not intent, is the critical element in negligence."). *See also La Plante v. Am. Honda*

[2] Merck has addressed this lack of relevance more fully in connection with its Motion for Order Excluding (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Its Employees (Motion in *Limine* No. 1), filed concurrently herewith, and hereby incorporates that motion by reference.

*Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994); *Kunz v. Utah Power & Light Co.*, 913 F. 2d 599, 605 (9th Cir. 1990); *Gray v. Hoffman-La Roche*, 82 Fed. Appx. 639, 651 (10th Cir. 2003) (defendant company's "alleged motive for failing to issue a stronger warning is immaterial to any element of [plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case" (footnote omitted)) (unpublished opinion).

**B. Admitting The FDA Letters Would Cause Undue Prejudice to Merck, Juror Confusion, and Undue Delay.**

Admission of Exhibit 1.0006 and other informal FDA letters would seriously prejudice Merck, and that prejudice is far outweighed by the probative value of the evidence. *See* FED. R. EVID. § 403. Introduction of such letters may inaccurately suggest to the jury that the FDA found Merck acted improperly, when in fact the letters do not represent the FDA's final and official position. FDA employees send Warning Letters and Untitled Letters to give companies an opportunity to correct perceived violations *before* the FDA decides whether to file an official enforcement action. (*See* FDA Regulatory Procedures Manual, Chapter 10, Prior Notice, Section 10-1-3, attached hereto as Ex. D.) The FDA makes clear that "[a] Warning Letter is informal and advisory" and does not constitute final agency action. (*Id.* at Chapter 4, Advisory Actions, Section 4-1-1, attached hereto as Ex. E.) *See also Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 599 (5th Cir. 1995) (noting that FDA Warning Letters are "informal communications"); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 934 n.9 (C.D. Cal. 1996) ("FDA regulatory Warning Letters do not constitute final agency action" and therefore do not reflect a final conclusion of wrongdoing.) If, despite the FDA's clear guidance that these letters are informal and advisory, plaintiff's counsel is permitted to introduce such letters and argue that they bear on Merck's liability, the jury may well attach far more importance to them than is warranted by their place in the regulatory scheme. Jurors may

not understand the important difference between the opinions of an FDA employee and a final and official determination by the FDA. They may attach undue significance to the contents of any such letter simply because it comes from a government agency. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 673 (5th Cir. 1999) (upholding exclusion of reports from the Mississippi Department of Environmental Quality in part because that agency's "evidence of likely violations of environmental regulations would have been unduly prejudicial due to its apparent official nature"); *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 769 (5th Cir. 1980) (upholding the exclusion of evidence on Rule 403 grounds because "[t]he [patent] examiner's report was a non-final agency action which included the examiner's opinion on the ultimate issue of validity").

In short, Merck would be unduly prejudiced if plaintiff were permitted to offer any evidence or argument pertaining to informal FDA letters at trial. This is especially true since plaintiff cannot show that the FDA took any action with respect to the matters raised in Exhibit 1.0006. The charges made in the letter remain exactly what the FDA has stated repeatedly – informal, preliminary, and advisory.

For similar reasons, informal FDA letters are likely to be profoundly confusing to the jury, and the admission of such letters would inevitably result in undue delay. To counter plaintiff's arguments based on these letters, Merck would have to present the jury with evidence that establishes their proper context – for example, explaining that the letters do not represent official FDA positions and are not binding on the FDA or Merck. This would require evidence of the structure, policies, and procedures of the FDA and its regulatory process. Merck also would be entitled to present its responses to the informal FDA letters, as well as the FDA's counter-response. For example, Merck wrote a detailed response to Exhibit 1.0006, and the FDA

ultimately accepted Merck's response *and took no action*. (*See* "Response Letter" from D. Anstice to T. Abrams dated October 1, 2001, attached hereto as Ex. F; "Corrective Letter" from T. Casola to T. Abrams dated November 19, 2001, attached hereto as Ex. G; "Considered Closed Letter" from L. Governale to T. Casola dated January 2, 2002, attached hereto as Ex. H.) Merck would be entitled and obligated to introduce similar evidence to demonstrate that its conduct was not wrongful and that, in any event, it should not affect the jury's finding in this case. Preventing such undue delay is specifically contemplated by Rule of Evidence 403 and is an independent reason to exclude this evidence. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding trial court's exclusion of evidence in part because the "mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources").

## II. FDA WARNING LETTERS AND UNTITLED LETTERS ARE INADMISSIBLE HEARSAY.

In ruling that Exhibit 1.0006 could be admitted in the *Plunkett v. Merck* trial, the Court expressed the view that it met the "public records" exception to the hearsay rule. (*See* Dec. 5, 2005 Tr. in *Plunkett v. Merck* at 1446:9-1450:1, attached hereto as Ex. C.) Merck respectfully asserts that informal FDA letters such as Exhibit 1.0006 do not meet that exception or any other exception to the hearsay rule. The informal and advisory nature of such letters and the fact that they do not represent final agency action mean that several requirements of this exception are not met. Specifically:

- The letters do not qualify as "activities of the office or agency." *Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) (to apply subdivision (A) to interim evaluative opinions of agency staff "would swallow whole Rule 803(8)(C) and its limitations").
- The letters do not qualify as "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." *See United States v. Chu Kong Yin*, 935 F.2d 990, 998-1000 (9th Cir. 1991).

- The letters are not "factual findings." *See Isuzu Motor*, 137 F.3d at 862.
- Finally, the letters lack the trustworthiness required to fall within the exception, because they are issued before any formal hearing is held and do not represent the agency's official or final position. *See Matthew v. Ashland Chem., Inc.*, 770 F.2d 1303, 1309-10 (5th Cir. 1985) (stating that trustworthiness is assessed, in part, by considering whether a hearing was held and at what level).[3]

Because informal FDA letters do not qualify under the "public records" exception to the hearsay rule, Merck respectfully submits that the Court's admission of Exhibit 1.0006 in *Plunkett v. Merck* was in error. The letter – and, indeed, all informal FDA letters – are inadmissible hearsay and should be excluded as such.

## III. AT A MINIMUM, THE COURT SHOULD REQUIRE REDACTION OF ANY INFORMAL FDA LETTERS ADMITTED INTO EVIDENCE, IN ORDER TO MASK INFORMATION ABOUT MERCK PRODUCTS AND MEDICAL CONDITIONS THAT ARE NOT INVOLVED IN THIS ACTION.

In the *Plunkett v. Merck* trials, the Court did not admit informal FDA letters that addressed Merck drugs other than Vioxx. By a parity of reasoning, if the Court admits Exhibit 1.0006 or other letters that address Vioxx, the Court should, at a minimum, require redaction of those portions of the letters that discuss other Merck products or medical conditions that are not implicated in this action. For example, Exhibit 1.0006 should be redacted to mask the discussion of the interaction of Vioxx with Coumadin and the charge that Merck promoted Vioxx for unapproved uses, such as relief of rheumatoid arthritis. These matters are irrelevant. Plaintiff cannot possibly articulate any reason why such subjects have any bearing at all on any issue in

[3] For similar reasons, and as explained more fully in support of Merck's prior motions in *limine* on this topic, informal FDA letters are also not admissible as "business records." They are inherently untrustworthy. Because they are prepared as precursors to a potential enforcement action, they are akin to reports prepared in anticipation of litigation. *See Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943) (rejecting admission of an accident report because, although it was arguably made in the regular course of business, its purpose was to protect the company in litigation, and it thus lacked trustworthiness, which is "the basis of the [business records] rule)").

this case.

## IV. CONCLUSION.

For the reasons stated above and in Merck's prior briefing on this subject, Merck respectfully requests that the Court exclude all FDA Warning Letters and Untitled Letters, including Exhibit 1.0006 and all other informal FDA letters that address Vioxx.

Respectfully submitted,

/s/ Dorothy H. Wimberly

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax: 312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion of Merck for Order Excluding Informal Communications From the FDA Concerning Promotional Materials Unrelated to Vioxx has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of June, 2006.

Dorothy H. Wimberly