UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| GERALD D. BARNETT | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION OF
MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING THE FRIES LETTER**

(MOTION IN *LIMINE* NO. 3)

In accordance with the Court's rulings in *Plunkett v. Merck*, Merck seeks an order excluding evidence of or argument pertaining to plaintiff's exhibit 1.0176, a January 9, 2001 letter from Dr. James Fries to Raymond Gilmartin, then Merck's CEO (the "Fries Letter" or "Letter").[1]  The Letter contains hearsay, irrelevant, prejudicial, and untrue charges that Merck

---

[1] Rather than re-brief in full the arguments it has made previously, Merck hereby incorporates by reference its prior motions on this subject. (*See* Motion of Merck to Exclude Evidence or Argument Pertaining to Conduct With No Nexus to Issues Being Tried in This Case (Motion in *Limine* No. 3), filed in *Plunkett v. Merck* on Nov. 4, 2005 and Jan. 30 2006 (Record Docket Nos.
(*footnote continued next page*)

814077v.1

employees "attacked" certain members of the scientific community. In the Letter, Dr. Fries complains about the alleged conduct of certain Merck employees, accusing these employees of "downplaying some unusual" side effects of Vioxx® and "attack[ing] those . . . speakers who expressed . . . critical opinions." He recounts his conversations with the physicians who were allegedly "attacked." Dr. Fries also claims to have spoken with unnamed former Merck employees who, according to him, confirmed these incidents.

The allegations contained in the Fries Letter are inadmissible hearsay with no conceivable relevance or connection to Mr. Barnett or his prescribing physicians. Further, admitting the Letter or any related evidence or testimony would unduly prejudice Merck and lead to juror confusion and undue delay. Accordingly, the Court should exclude the Letter, as it did in *Plunkett v. Merck*.[2]

## I. THE COURT SHOULD EXCLUDE THE FRIES LETTER BECAUSE IT IS INADMISSIBLE HEARSAY.

The Fries Letter is a textbook example of inadmissible hearsay, as it contains Dr. Fries' out-of-court statements that plaintiff would offer for their truth.[3] FED. R. EVID. 801(c). And no exception to the hearsay rule applies. *See* FED. R. EVID. 802. For example, the Letter does not

---

1268 and 3025).)

[2] The Court should also exclude other evidence offered for similar purposes, including internal Merck documents commenting on the Letter (*e.g.*, plaintiff's exhibits 1.0184 and 1.0298) and any documents listed on plaintiff's final exhibit list that also should be excluded on the same grounds advanced in this motion.

[3] Although not controlling, it is instructive that other courts that have considered the Fries Letter in Vioxx-related litigation have agreed that it constitutes hearsay. (*See e.g.*, Sept. 21, 2005 Trial Tr. in *Humeston v. Merck & Co., Inc.*, No. L-2272-03-MT (N.J. Super. Ct. Law Div. filed Aug. 19, 2003) at 1272:12-22 ("it is hearsay"); Feb. 28, 2006 Trial Tr. in *Cona v. Merck & Co., Inc.*, No. ATL-L-1296-05-MT (N.J. Super. Ct. Law Div. filed June 7, 2005) at 20:4-5 ("There is really no question that the Fries letter is hearsay. It is hearsay within hearsay."), attached hereto as Ex. A.)

2

qualify as a record of regularly conducted activity under Federal Rule of Evidence 803(6), because it was not Dr. Fries's regular practice or duty to prepare such a document. *See U.S. v. Robinson*, 700 F.2d 205, 210 (5th Cir. 1983) (finding handwritten notes inadmissible as a business record without a showing that the author regularly compiled them as part of his duties). Indeed, Dr. Fries stated in the Letter itself that his involvement was purely "accidental." Nor does the Fries Letter meet the trustworthiness requirement of Rule 803(6). To the contrary, it merely recounts what other physicians, many of whom are unidentified, related to Dr. Fries. *See Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1187 n.6 (8th Cir. 1981) (under the business record exception, where "there is a lack of evidence of the source of the testimony, it is inherently untrustworthy and must be kept out"). Further, because Dr. Fries merely repeats what other individuals purportedly told him, much of the Letter is also inadmissible hearsay within hearsay. FED. R. EVID. 805; *see also Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (explaining that a summary of complaints "amounts to nothing more than a summary of allegations by others which constitute hearsay"); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (finding hospital records inadmissible because patient's statements in records "must fall within another hearsay exception to be admissible").

Because the Fries Letter is nothing more than a summary of unsubstantiated allegations made by third parties, it and any related testimony or evidence are inadmissible hearsay.[4] The Court should exclude the Letter, as it did in *Plunkett v Merck*.

---

[4] The Court should reject any attempt by plaintiff to avoid the application of the hearsay rule by claiming that the Fries Letter should be admitted for a non-hearsay purpose. Whether the former CEO of Merck was "on notice" of unsubstantiated, untrustworthy allegations of the kind detailed in the Letter has no logical connection with any fact issue in dispute in this case. *See United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) ("The essential prerequisite of admissibility is relevance. . . . Implicit in [the definition of relevance] are two distinct requirements: (1) the
(*footnote continued next page*)

3

## II. EVIDENCE OF ALLEGED "ATTACKS" OR SIMILAR CONDUCT BY MERCK EMPLOYEES, INCLUDING THE FRIES LETTER, SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT AND ITS ADMISSION WOULD CAUSE UNDUE PREJUDICE, JUROR CONFUSION, AND DELAY.

The Court should exclude the Fries Letter and all other evidence ostensibly showing "attacks" or similar conduct by Merck employees for the further reasons that such evidence is irrelevant, FED. R. EVID. 401-402, and its probative value, if any, is substantially outweighed by the undue prejudice to Merck, juror confusion, and waste of judicial resources that would result from its admission, FED. R. EVID. 403.

Even if Merck employees actually engaged in the conduct detailed in the Letter, which Merck denies, there is no evidence that any of the physicians to whom this conduct was allegedly directed had any involvement with Mr. Barnett or any of his physicians. Nor is there any evidence that the alleged conduct had any impact on the availability of information to the medical community at large. For example, there is no evidence that the physicians identified in the Fries Letter changed their positions or findings about Vioxx as a result of their purported interactions with Merck. Thus, the Fries Letter is not probative of any issue of consequence in this case.

---

evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.").

814077v.1

Further, admitting this evidence would unduly prejudice Merck and confuse the jury.[5] Were plaintiff permitted to introduce the Letter, the jury would be diverted from objectively considering the real issues presented in this case, and instead might attribute culpability to Merck on the basis of unsubstantiated allegations of misconduct that lack any nexus to plaintiff's claims. The proper issues for determination by the jury are whether Merck adequately warned Mr. Barnett's prescribing physicians of the risks allegedly associated with Vioxx and, if not, whether the absence of an adequate warning and Mr. Barnett's alleged use of Vioxx proximately caused his injuries. Information about certain academics' perceived anti-Merck or anti-Vioxx biases and their consequent interactions with Merck employees would only obfuscate these issues. *Cf. Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d 883, 888 (5th Cir. 1983) ("The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later.").

Admitting the Fries Letter would also result in undue delay at trial and a waste of judicial resources. Dr. Fries identifies in his Letter eight investigators who allegedly experienced some form of pressure by Merck employees as a result of a "perceived anti-Merck bias." If the Letter or related evidence were put into evidence, Merck would be entitled to call rebuttal witnesses to refute that charge, resulting in a distracting "trial within a trial." That would lead to a series of

---

[5] The potential for undue prejudice to Merck from the admission of the Letter is heightened because Dr. Fries is a physician and medical researcher from a well-known, respected institution. *Cf. Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 673 (5th Cir. 1999) (upholding exclusion of reports from the Mississippi Department of Environmental Quality in part because the evidence of likely violations of environmental regulations that they contained "would have been unduly prejudicial due to its apparent official nature"); *Johnson*, 988 F.2d at 580 (excluding letters from the National Highway Transportation Safety Administration under Federal Rule of Evidence 403 because "the official nature of the inquiries could have misled the jury into believing that 'something' was wrong with Ford cars").

814077v.1

evidentiary presentations and mini-trials on issues that have no relevance to Mr. Barnett's claims – wasting the Court's, the jury's, and the parties' time and resources. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence based in part because "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources").

## III.  CONCLUSION.

For the foregoing reasons as well as the reasons stated in Merck's prior briefing on this subject, Merck respectfully requests that the Court exclude the Fries Letter and any related evidence or testimony about alleged "attacks" by Merck employees on the scientific community.

Respectfully submitted,

*Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax: 312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Attorneys for Merck & Co., Inc.

814077v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion of Merck for Order Excluding the Fries Letter has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of June, 2006.

*Dorothy H. Wimberly*

814077v.1