UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| GERALD D. BARNETT | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING EVIDENCE RELATING TO THE *NEW ENGLAND JOURNAL OF MEDICINE*'S DECEMBER, 2005 "EXPRESSION OF CONCERN"**

(MOTION IN *LIMINE* NO. 4)

Merck moves to exclude from evidence the "Expression of Concern" published by the *New England Journal of Medicine* ("*NEJM*") on December 8, 2005, which the Court excluded in *Plunkett v. Merck*. It and other related opinion pieces are inadmissible for at least three independent reasons.[1] First, the editorial has no probative value on any of Mr. Barnett's claims

---

[1] In *Plunkett v. Merck*, the Court sustained Merck's objection to plaintiff's designation of the portions of Dr. Curfman's testimony in which he attempted to read the "Expression of Concern" into the record. Rather than re-brief in full the arguments it has made previously, Merck hereby incorporates by reference its prior motions on this subject. (*See* Motion of Merck to Exclude Letters to the Editor and Non-Scientific Editorials in Science Journals (Motion in *Limine* No.
(*footnote continued next page*)

814130v.1

against Merck. Second, it constitutes inadmissible hearsay to which no hearsay exception applies. Finally, admitting the editorial would unduly prejudice Merck and lead to juror confusion and a waste of judicial resources.[2]

## I. THE COURT SHOULD AGAIN EXCLUDE THE "EXPRESSION OF CONCERN" BECAUSE IT IS IRRELEVANT TO THE QUESTIONS AT ISSUE IN THIS CASE.

At trial, the jury will hear about the manner in which Merck provided information on Vioxx® to the medical community. It also will learn the relevant facts about the VIGOR trial. To the extent any facts surrounding the publication of VIGOR are relevant, the jury will be provided with this information as well. The "Expression of Concern" – in which three *NEJM* editors suggest without foundation that Merck deliberately withheld and deleted information from drafts of VIGOR submitted to the journal for publication in 2000 – adds nothing to these facts. It is thus not probative of any issue of consequence in this case.

The controversy surrounding the publication of the "Expression of Concern" is already familiar to the Court. On December 8, 2005, shortly after submission of *Plunkett v. Merck* to the jury – and for reasons apparently connected to that trial – the *NEJM* posted an editorial on its

---

13), filed in *Plunkett v. Merck* on Nov. 4, 2005 and Jan. 30 2006 (Record Docket Nos. 1278 and 3035).)

[2] Merck will object separately to those portions of Dr. Curfman's November 2005 deposition in which he makes criticisms of the VIGOR publication that have no connection to this case. To the extent the Court admits his testimony on the alleged shortcomings of VIGOR, Merck will seek to introduce its cross-examination of Dr. Curfman showing that the *NEJM*'s handling of the "Expression of Concern" demonstrates his bias. Dr. Curfman's adversarial stance in the editorial is relevant to show the lack of objectivity in the journal's analysis. FED. R. EVID. 401. Further, to the extent any purported experts testify about, reference, or rely upon inadmissible editorials such as the "Expression of Concern," the Court should permit Merck to cross-examine these experts on the bases for their opinions. Such cross-examination does not make the editorials themselves admissible evidence, since they are not the type of evidence reasonably relied on by an expert and clearly are not the type of materials contemplated by Rule 703 of the Rules of Evidence. *See* FED. R. EVID. 703; *see also Meschino v. N. Am. Drager, Inc.*, 841 F.2d 429, 434 (1st Cir. 1988).

website questioning the "integrity of the data on adverse cardiovascular events" included in the VIGOR study. The editorial, which was signed by *NEJM*'s editor-in-chief, Dr. Jeffrey M. Drazen, executive editor Dr. Gregory D. Curfman, and managing editor Stephen Morrissey, Ph.D., called on the VIGOR authors to submit a correction to the journal, arguing that alleged omissions in drafts provided for publication "made certain calculations and conclusions in the article incorrect." As a recent *Wall Street Journal* article notes, the timing of the release of this editorial – five years after the publication of VIGOR and more than a year after the voluntary withdrawal of Vioxx from the market – is suspect.[3] Moreover, the editorial is riddled with inaccuracies. Contrary to the allegations contained in the piece:

- Merck did not inappropriately withhold cardiovascular data from the VIGOR manuscripts. Rather, the publication was based on cardiovascular data reported as of a pre-specified cut-off date, to ensure timely completion and prevent data manipulation. The data that were reported after this predetermined date were provided to the FDA in a timely manner and were widely disseminated and discussed in the scientific community – making them no secret to the *NEJM* editors or to anyone else.

- Merck did not delete post-cut-off data from the VIGOR manuscript two days before it was submitted to the *NEJM*. Although a table was in fact removed prior to submission, it was empty. The data that would have been added to this table – which were nothing more than pre-cut-off data – were instead summarized in the article's text and included in the final draft of the paper.

- The additional post-cutoff events did not change the conclusions of the VIGOR study. With and without the post-cutoff events, the study showed a statistically significant difference in the rates of myocardial infarctions, based on very small numbers, between Vioxx and naproxen.

More importantly for present purposes, the editorial is not relevant to Mr. Barnett's claims. While plaintiff's counsel will be free at trial to attack the manner in which the VIGOR article was published, the "Expression of Concern" is not in and of itself relevant evidence.

---

[3] *See* D. Armstrong, *Bitter Pill: How the New England Journal Missed the Warning Signs on Vioxx*, WALL ST. J., May 15, 2006, at A1, attached hereto as Ex. A.

Instead, it is nothing more than the *NEJM* editors' commentary on five-year-old facts. The parties should not have to litigate issues such as the whether the editorial is accurate or not, or whether the media was misled by its "ambiguous" language, as the *Wall Street Journal* suggests. These issues have no impact on the questions the jury will be asked to determine, and thus no place in the courtroom. For this reason alone, the "Expression of Concern" should be excluded from evidence.

## II.   THE *NEJM* EDITORIAL IS INADMISSIBLE HEARSAY.

In addition to being irrelevant, the "Expression of Concern" is inadmissible hearsay and should be excluded on that ground as well. Indeed, out-of-court statements made in articles, commentaries, or editorials are classic hearsay. FED. R. EVID. 801(c). Unless they fall within a recognized exception to the hearsay rule, they may not be admitted into evidence at trial to prove the truth of those statements. *See* FED. R. EVID. 801-804.

Here, Mr. Barnett cannot carry his burden of proving that the *NEJM* editorial qualifies under any exception to the hearsay rule. *See* FED. R. EVID. 802; *ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1070 (D. Nev. 1998) (concluding statements in published letters to the editor and newspapers constitute inadmissible hearsay); *Hickok v. G.D. Earle & Co.*, 496 F.2d 444, 446 (10th Cir. 1974) ("[I]t is well established that medical textbooks, treatises, and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule."). Specifically, Mr. Barnett cannot show that the editorial is a "learned treatise," the only colorable hearsay exception that applies. FED. R. EVID. 803(18). Publication in a reputable journal is not sufficient – the content itself must be established as a "reliable authority." *Id.*; *Meschino*, 841 F.2d at 434 ("In these days of quantified research and pressure to publish, an article does not reach the dignity of 'reliable authority' merely because some editor, even a most reputable one, sees fit to circulate it."); *see also Kansas*

4

814130v.1

*City v. Dugan*, 524 S.W.2d 194, 196 (Mo. App. 1975).

The "Expression of Concern" does not qualify as a reliable authority. In fact, editorials are opinion pieces that generally lack the rigor necessary to be called "reliable." *See O'Brien v. Angley*, 407 N.E.2d 490, 494 (Ohio 1980) (editorial published in the *Journal of the American Medical Association* was "not an authoritative exposition of medical theory or principle which might be characterized as a 'learned treatise,' but was primarily an expression of opinion by a physician concerning a controversial subject which posed a risk of litigation for his colleagues in the medical profession"). As explained above, the *NEJM* editorial lacks this very rigor. It is thus inadmissible under the learned treatise exception to the hearsay rule.

### III. THE COURT SHOULD EXCLUDE THE "EXPRESSION OF CONCERN" BECAUSE ITS ADMISSION WOULD CAUSE UNDUE PREJUDICE TO MERCK, JUROR CONFUSION, AND DELAY.

Finally, the Court should exclude the *NEJM* editorial from evidence because its probative value, if any, is substantially outweighed by the undue prejudice to Merck, confusion to the jury, and waste of time that would result from its admission. FED. R. EVID. 403. Materials published in scientific journals frequently have an aura of authority and reliability, especially to laypeople, regardless of the level of their scientific trustworthiness. This heightened level of reliability is misplaced in the case of non-scientific editorials such as the "Expression of Concern," which does not contain facts at all, but rather the subjective impressions and biases of its authors. Here, the jury likely would attach an inordinate weight to the *NEJM* editorial, resulting in undue prejudice to Merck.

Moreover, if the editorial were admitted at trial, Merck would need to mount a defense against the allegations contained therein, engaging in a "trial within a trial" over the truth of the *NEJM* editors' assertions about Merck's conduct. Again as shown by the recent *Wall Street Journal* article on the "Expression of Concern," the resulting back-and-forth would be a

distracting side-show to the real issues in this case. Admitting the editorial, for example, would cause the Court's, the jury's, and the parties' time to be wasted on issues such as: (i) why the editors of the *NEJM* published "ambiguous" statements erroneously "hinting that serious scientific misconduct was involved" in the VIGOR publication – which was not the case – and later refused to correct or clarify misstatements in the press made in reliance on this ambiguous language; (ii) whether the *NEJM* is to blame for lax editorial policies, as members of the medical community have suggested; (iii) how and why the *NEJM* editors "rac[ed] to prepare" their editorial – five years after the publication of VIGOR and more than a year after Merck's withdrawal of Vioxx from the market – to coincide with the jury's deliberations in the first federal Vioxx trial; (iv) why they deliberately hid the fact that publication of the "Expression of Concern" was tied to this trial; and (iv) why they attempted to shift blame to Merck as part of the public relations campaign surrounding the editorial's publication – calling the company a "punching bag" and speculating that the editorial "m[ight] very well be seen as the final straw for Merck on the Vioxx matter."[4]

None of these issues has anything to do with Mr. Barnett's claims. Thus, admission of the "Expression of Concern" would unnecessarily divert the jury's focus from the ultimate issues to be decided in this case. For this reason, the Court should exclude the editorial under Rule 403 of the Rules of Evidence. *See Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding trial court's exclusion of evidence based in part because "the mini-trial which would necessarily follow evidence of each and every 'other act' would amount to needless waste of judicial resources); *Ostler v. Codman Research Group, Inc.*, 241 F.3d 91, 96 (1st Cir. 2001) (evidence properly excluded given potential to delay and mislead jury and to create mini-trials

---

[4] *See* Armstrong, *supra* n.3.

within trial); *White v. United States*, 148 F.3d 787, 792 (7th Cir. 1998) (evidence properly excluded under Rule 403 because, *inter alia*, of the "clear potential to develop into a trial within a trial").

## IV. CONCLUSION.

For the foregoing reasons as well as the reasons articulated in Merck's prior briefing on this subject, Merck respectfully requests that the Court exclude all evidence relating to the *NEJM*'s December, 2005 "Expression of Concern," consistent with its rulings in *Plunkett v. Merck*.

814130v.1

Respectfully submitted,

*Dorothy H. Wimberly* (signature)

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax: 312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Attorneys for Merck & Co., Inc.

814130v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion of Merck & Co., Inc. for Order Excluding Evidence Relating to the *New England Journal of Medicine*'s December, 2005 "Expression Of Concern" has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 9th day of June, 2006.

_Dorothy H. Wimberly_

814130v.1