UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUN 16  AM 9: 58

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Gerald Barnett v. Merck & Co, Inc. | * | CASE NO. 02:06CV00485 |

Motion in Limine No. 1

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING THE
NUMBER OF HEART ATTACKS IN THE UNITED STATES

COMES NOW, Plaintiff Gerald Barnett, by and through his undersigned counsel, and files

this Motion in Limine, to exclude evidence regarding the number of heart attacks occurring in the

United States of America.

Merck intends to introduce evidence that the number of heart attacks occurring in the United

States did not increase while Vioxx was sold in the United States. That is, Merck will offer some

form of proof comparing the number of heart attacks occurring in the United States prior to 1999 to

the number of heart attacks occurring in the United States between 1999 and 2004 (the time period

Vioxx was sold in the United States). Such information should be excluded for the following

reasons: 1) the information is irrelevant; 2) the information is inadmissible hearsay, and 3) the

prejudicial effect outweighs any potentially probative value.

___ Fee_____
___ Process_____
_X_/Dktd _____
___/ CtRmDep_____
___ Doc. No_____

1

**A.      The information is irrelevant.**

Statistical evidence suggesting that the number of heart attacks in the United States did

not increase between 1999 and 2004 while Vioxx was sold in the United States should be

excluded because it is irrelevant.[1]   The Defendant will offer unreliable statistics, reported from

random sources, compiled into a comparative survey in an effort to prove an immaterial fact --

the number of heart attacks occurring the in the United States.  Besides being inadmissible, the

introduction of such information will needlessly waste time and only confuse jurors.  The offered

evidence is irrelevant because the pre-1999 facts, circumstances, and conditions are neither

similar to the instant facts nor the time period while Vioxx was sold in the United States (1999 -

2004).

"Relevant evidence means evidence having any tendency to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence." Fed. R. Evid. 401   The Defendant's comparative is not

indicative of Vioxx causing Mr. Barnett's heart attack nor a rise in the number of heart attacks

across the nation.  Essentially, Merck is attempting to prove the absence of evidence -- an absence

in the increased number of heart attacks between 1999 and 2004.  In order for the evidence of the

absence of other similar events to be relevant for any purpose, the Defendant must show that

during the period involved the conditions were substantially similar to those prevailing at the

time of Mr. Barnett's heart attack.  Courts have routinely excluded such evidence because of the

failure to establish that conditions at the time in question were substantially the same as at the

time a plaintiff was injured.  See generally, 10 A.L.R. 5th 371; See also, Chesapeake & O.R. Co.

---

[1]The key question underlying liability is: Did Vioxx cause Mr. Barnett's heart attack?  The jury must examine the facts of the instant case to determine whether Vioxx caused the Plaintiff's heart attack.

v. Newman, 243 F.2d 804 (6th Cir. 1957) (The court excluded testimony regarding the absence of evidence relating to claims arising in the previous 32 years that the witness was employed by the Defendant. The court said that such evidence can only relate to permanent, not temporary and changeable, conditions).

The issue is not whether the condition of Vioxx changed but rather the pre-1999 conditions versus the conditions while Vioxx was on the market. Besides being too speculative and remote to predict with any accuracy the conditions and medical/pharmaceutical environment were vastly different and have been ever changing. Merck cannot prove that the conditions involved in the pre-1999 data are substantially similar to the conditions while Vioxx was on the market. The reason being, the variables are uncontrolled, different and constantly changing. Medical research, scientist, doctors and others in the health care profession are constantly seeking innovative and new ways to prohibit, prevent and treat heart attacks. Reducing the number of heart attacks in the United States has been a major priority of the medical community for years. As a result of the efforts of those in the scientific, medical and health care communities, each year heart attacks are prevented and treated. Between 1999 and 2004, while Vioxx was on the market, science and medicine no doubt improved and contributed to the successful prevention of heart attacks. Moreover, new drugs like statins, which decrease the likelihood of heart attacks, were introduced to the market. All of these factors working together over time create an ever-changing environment and vastly different conditions in the cardiovascular field.

Thus, while many heart attacks were prevented for various and changing reasons, others were caused by various and changing reasons. Any evidence suggesting that the number of heart

3

attacks did not increase while Vioxx was sold in the United States could only be admissible if the variables were controlled.  Only if the science, medicine, research and public awareness remained constant and no new pharmaceutical drugs were introduced to the market after Vioxx was approved for use could the information the Defendant seeks to introduce even be potentially admissible.

In addition to the ever-changing and uncontrolled variables, the demographics involved in the comparative are dissimilar.  Vioxx, although widely prescribed, was not widely used by an adequately equal, randomized, cross section of America.  Instead, Vioxx was used by a disproportionately large number of older people suffering from Osteoarthritis (OA) and Rheumatoid Arthritis (RA).  Traditionally, older members of the population report a higher incidence rate of heart attacks.  That is to say, Vioxx was used by a disproportionately large demographic of people that already reported a higher incidence rate of heart attacks.  Thus, the comparison is incongruent.  Juxtaposing the entire number of heart attacks reported throughout the United States prior to 1999 with the number of heart attacks occurring after a pharmaceutical drug has been introduced and consumed by a smaller subsection of that population, under different conditions, in an ever-changing environment is too dissimilar to be probative.  Such information is unreliable, speculative and confusing. Therefore, the information should be excluded.

### B. The information is unreliable.

Essentially the Defendant is attempting to admit a comparative survey of the American population pre-1999 and post-1999.  In order to admit such evidence the Defendant must prove such data compilations: a) were subjected to generally accepted survey principals, b) were

subjected to generally accepted principals of research, c) the results of such surveys and data

compilations are utilized in a statistically correct manner (the sampling technique must be

validated), and d) the information is trustworthy.[2]  Merely compiling unreliable statistics,

reported from random sources into a comparative survey, besides being immaterial to the issues

involved in the instance case, is defective and untrustworthy.  Any offer of proof in the form of

surveys, studies and/or data compilations should be subject to strict scrutiny because of the

dangers involved in confusing, and/or misleading the jury with information that is unreliable,

incomplete or imprecise as to what it purports to represent.

The Defendant must prove the information being offered is trustworthy which requires a

sufficient showing that a) the "universe" was properly defined, b) a representative sample of that

universe was selected, c)  sound sampling techniques and procedures were followed, d)

competent individuals were used to gather the data, e) those individuals gathering the data had no

knowledge of litigation or the purpose for which the survey was conducted, f) the data gathered

was accurately reported, g) the data was analyzed in accordance with accepted statistical

principles, and h) objectivity of the entire process was assured.  CJS Evidence § 222.

Furthermore, and particularly important for purposes of this motion, the usefulness of such

statistical evidence depends to a large extent on the existence of proper supportive facts and the

absence of variables which would undermine the reasonableness of the inference drawn.  Clearly,

Defendant cannot account for all of the variables involved for each heart attack occurring

throughout the United States before and after Vioxx was sold in the United States.  Even if all of

the variables could be identified, Merck cannot account for all of the changes occurring

---

[2]Trustworthy means not merely that it be honestly conducted, but that it be designed to yield an accurate assessment of the relevant opinion, belief, or attitude under investigation.

constantly in the environment.  This lack of accountability will inevitability lead to inaccuracies or variations in data or in formulae used to test such data; which in turn results in different, contradictory, or even misleading conclusions by experts.  Id.  This Court must therefore exclude any immaterial evidence; particularly when the proffered evidence lacks sufficient indicia of reliability and significantly increases the likelihood of confusing and/or misleading the jurors.

**C. The prejudicial effect outweighs any potentially probative value**

Assuming that the Defendant constructs a viable argument that the information offered is relevant, the information should be excluded because any potentially probative value is substantially outweighed by all of the Rule 403 concerns.  (i.e. the danger of unfair prejudice, confusion of the issues, misleading the jury, etc.)  The district court must make the admissibility determination on an individual basis, considering the evidence's probative value and the danger of unfair prejudice.  See Barfield v. Orange County, 911 F.2d 644, 650 (11th Cir.1990), cert. denied, 500 U.S. 954, 111 S. Ct. 2263, 114 L.Ed.2d 715 (1991).  The Court has wide discretion in excluding evidence which is relevant but which may tend to confuse issues or inflame jury.  U. S. v. Ravich, C.A.2 (N.Y.) 1970, 421 F.2d 1196, certiorari denied 91 S.Ct. 69, 400 U.S. 834, 27 L.Ed.2d 66.  The number of heart attacks arbitrarily reported to various entities and amassed into random groups of data is immaterial to the claims raised by the Plaintiff.  The real issue is: Did Vioxx cause Mr. Barnett's heart attack?  Unreliable statistics, from random sources, compiled into a comparative survey do not help prove or disprove any material fact in issue.  On the contrary, introduction of such information will needlessly waste time and only confuses jurors.

Evidence regarding the number of heart attacks in the U.S. is not only irrelevant to these proceedings, but its probative value is greatly outweighed by the danger of unfair prejudice,

confusion of issues, misleading the jury, or causing undue delay and waste of time. Therefore,

such evidence and testimony should be precluded. Fed. R. Evid. 403.

Wherefore, for the foregoing reasons, Plaintiff urges the Court to grant Plaintiff's Motion to

exclude evidence regarding the number of heart attacks occurring in the United States of America

during the time that Vioxx was being marketed.


Date: June 9, 2006                           Respectfully submitted,


                                   By  Mark P. Robinson, Jr.
                                        Mark P. Robinson, Jr.
                                        Kevin F. Calcagnie
                                        Carlos A. Prietto, III
                                        Ted B. Wacker
                                        Lexi W. Myer
                                        ROBINSON, CALCAGNIE & ROBINSON
                                        620 Newport Center Dr., 7th Floor
                                        Newport Beach, California  92660
                                        Telephone: (949) 720-1288
                                        Facsimile: (949) 720-1292


                                        Andy D. Birchfield, Jr.
                                        P. Leigh O'Dell
                                        BEASLEY, ALLEN, CROW,
                                        METHVIN, PORTIS & MILES, P.C.
                                        P.O. Box 4160
                                        234 Commerce Street
                                        Montgomery, Alabama  36103-4160
                                        Telephone:  (334) 269-2343
                                        Facsimile: (334) 954-7555


                                        Counsel for Plaintiff

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana  70013
Telephone:  (504) 581-4892
Facsimile:  (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York  10004
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana  71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Carlene Rhodes Lewis
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas  77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana  70601
Telephone:  (337) 494-7171
Facsimile:  (337) 494-7218

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania  19102
Telephone:  (215) 772-1000
Facsimile:  (215) 772-1371

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California  92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants'
Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs'
Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically
uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order
No. 8, on this 9th day of June, 2006.

MARK P. ROBINSON, JR.