UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| Gerald Barnett v. Merck & Co, Inc. | * | CASE NO. 02:06CV00485 |

## Motion in Limine No. 5

### PLAINTIFF'S MOTION IN LIMINE RE THE APRIL 6, 2005 FDA MEMORANDUM

Plaintiff Gerald Barnett, by and through his undersigned counsel, hereby respectfully moves the Court for an order excluding the admission into evidence of a Food and Drug Administration (FDA) April 6, 2005 Memorandum and all evidence and/or argument that the FDA has concluded there is a "class effect" for all non-steroidal anti-inflammatory drugs (NSAIDs).

Plaintiff believes that Merck may attempt to introduce evidence and/or argument that the FDA has concluded that the class of medications known as non-steroidal anti-inflammatory drugs ("NSAIDs")—of which, COX-2 inhibitors such as Vioxx are a subset—<u>all</u> carry an increased risk of cardiovascular injury. To support its claims in previous trials, Merck has referenced a memorandum published on the FDA website on April 6, 2005. A copy of the FDA memo is attached hereto as Exhibit "A".

This memorandum does not state that the FDA has concluded there is a class effect of increased cardiovascular risk for all NSAIDs. Instead, it contains preliminary and conditional

1

opinions and recommendations, offered during a time period when the FDA was (and continues to be) under intense public and government scrutiny and was being widely criticized for failing to be diligent in its evaluations of the safety of Vioxx and the accuracy of its label and promotional materials. Further, the memorandum explicitly acknowledges that the FDA lacks data to draw final conclusions regarding the cardiovascular risks of NSAIDs. Rather than wait, however, until more conclusive data is available, the FDA chose to err on the side of caution and offer preliminary opinions that might be beneficial to public safety. As a result, the "conclusions" in the memorandum lack the scientific certainty and reliability which might be presumed by the jury to attach to information coming from the FDA.

The Court has previously admitted this document into evidence and has allowed testimony about the document. Plaintiff urges the Court to reconsider its position. Testimony or argument regarding the April 6th FDA memorandum should be excluded because it is irrelevant. If permitted at this trial, it would also be unfairly prejudicial to Plaintiff and confusing to juries.

The FDA has not scientifically "concluded" anything about a "class affect" associated with NSAIDs. Merck, however, would seek to take the FDA's precautionary statements and use them to bolster the opinions of its own representatives and experts to transform this ongoing litigation from a controversy about Merck's conduct with respect to Vioxx, into a controversy about all NSAIDs. For these reasons – the lack of relevancy, the substantial danger of unfair prejudice, the likelihood of confusion to a jury, and the lack of scientific reliability related to the "conclusions" in the FDA's memorandum, the Honorable Judge Higbee in the *Humeston v. Merck & Co.* case ruled that evidence and/or testimony related to the FDA's memorandum is

2

inadmissible. Judge Higbee followed her previous ruling during the *McDarby/Cona* trial. This Court should do the same.

### 1. The FDA Memorandum Does Not Conclude That There is a Demonstrated Class Effect for All NSAIDS.

On April 6, 2005, the U.S. Food and Drug Administration ("FDA") published, on its website, a memorandum entitled, "Analysis and recommendations for Agency action regarding nonsteroidal anti-inflammatory drugs and cardiovascular risk." *See* Exhibit "A". The document contains select discussion and opinions derived from a review of "available clinical trial data," and "published and unpublished" observational studies. *Id.* at 1, 7.

The memorandum concludes that there is an "increased risk of serious adverse CV events compared to placebo" for the selective COX-2 inhibitors Vioxx, Celebrex, and Bextra— a subset of the broader class on non-selective NSAIDs. *Id.* at 1. With respect to a "class effect of NSAIDs," the FDA memorandum states that:

> Long-term placebo-controlled clinical trial data are not available to adequately assess the potential for the non-selective NSAIDs to increase the risk of serious adverse events. . . Pending the availability of additional long-term controlled clinical trial data, the available data are best interpreted as being consistent with a class effect of an increased risk of serious adverse CV events for COX-2 selective and non-selective NSAIDs.
> *Id.* at 2 (emphasis added).

This equivocal and qualified observation cannot reasonably be interpreted as meaning that the "FDA has concluded that there is a class effect of increased cardiovascular risks for all NSAIDs." In the section of the memorandum entitled, "Analysis and Conclusions," the reviewers retreat from their earlier summary opinion:

> The absence of long-term controlled clinical trial data for the non-selective NSAIDs significantly limits our ability to assess whether these drugs may also increase the risk of serious adverse CV events. . . The adverse CV risk for the COX-2 selective drugs

> became apparent only from large, long-term controlled clinical
> trials and large retrospective cohort studies. Similar clinical trials
> are needed to assess the potential risks of the non-selective
> NSAIDs.
> *Id.* at 11 (emphasis added).

Oddly, the reviewers then offer a <u>qualified</u> statement "that it is reasonable to conclude that there is a 'class effect' for increased CV risk for all NSAIDs *pending the availability of data from long-term controlled clinical trials that more clearly delineate the true relationships.*" *Id.* (emphasis added). This qualification appears to be founded in the authors' acknowledgment that "[f]or the vast majority of non-selective NSAIDs we do not have <u>any data</u> that allow comparisons with COX-2 selective agents for CV risk." *Id.* at 10 (emphasis added). Moreover, with respect to the authors' hypothesis of a class effect, it was noted that "Naproxen may be an exception." *Id.*

The FDA memorandum demonstrates that as far as the FDA is concerned, more data is needed before reaching an unqualified conclusion that there is a "class effect" of increased risk of adverse cardiovascular events. The authors observe significant differences in cardiovascular events among several NSAIDs, including Celebrex, Vioxx, and Naproxen. *Id.* at 4-5, 10. In short, as far as the authors are concerned, they are not concluding that there is a class effect since additional data is needed. Further, there is evidence that the agency felt pressured to provide guidance on the COX-2 controversy, even in the absence of long-term clinical trials addressing the cardiovascular risks of non-selective NSAIDs. As the reviewers noted:

> The inability to reliably estimate the absolute magnitude of the
> increased risk of serious adverse CV events for individual COX-2
> agents, combined with <u>the inability to reliably draw conclusions
> about the risk of COX-2 agents compared to one another or to
> other NSAIDs</u>, highlights the conundrum the Agency faces in
> making decision on appropriate regulatory actions. <u>There is an
> urgent health need to make appropriate regulatory decisions
> because the adverse events at issue are serious and a very large</u>

4

>number of patients use selective and non-selective NSAIDs . . .
>Although the currently available data are not definitive, the Agency cannot await more definitive data, which may take years to accumulate from studies that have not even begun, before taking action.
>
>*Id.* at 10 (emphasis added).

Irrespective of the merits of the FDA's opinions,[1] it is apparent that the FDA was under enormous pressure to weigh in on the COX-2 controversy. Indeed, at the time the FDA memorandum was published on its website, the FDA's oversight of the development and marketing of Vioxx was being widely criticized by the medical community and in the media, and was the subject of both committee hearings in both the United States House of Representatives and Senate. As demonstrated above, any allegation that the FDA has definitely concluded that there is a class effect of increased cardiovascular risks for all NSAIDs is false. Further, the circumstances under which the FDA rendered such opinions are suspect.

2. **Any Evidence of Argument That the FDA Has Concluded That There is a Class Effect of Increased Cardiovascular Risk For All NSAIDS is Unreliable and Highly Prejudicial.**

All evidence, including expert opinion, is subject to the requirements of Rules 401, 402 and 403 which address relevancy and reliability. Rule 403 provides, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

---

[1] Plaintiffs note that the FDA analysis does not seem to account for several published studies that "ranked" the relative risk for serious adverse cardiovascular events among COX-2 inhibitors and non-selective NSAIDs, including Ray, *Non-steroidal Anti-inflammatory Drugs and Risk of Serious Coronary Heart Disease: an Observational Cohort Study*, The Lancet, Vol. 359, Pg.118-123 (2002) and Juni, *Risk of Cardiovascular Events and Rofecoxib: Cumulative Meta-analysis*, The Lancet, Pg. 1-9 (Nov. 5, 2004).

Any suggestion that the FDA has concluded that all NSAIDs—as a class—increase the risk of severe cardiovascular events is not supported by the Memorandum and is misleading and confusing to the jury. As noted above, the FDA has not reached any such conclusion. The "conclusions" reflected in the memorandum are, by the author's own acknowledgment, based on incomplete data and precautionary speculation.

The FDA is widely perceived by the public to be an authority on such issues and, thus, the danger of unfair prejudice is magnified. Allowing such evidence or argument will distract future juries from the central questions regarding Vioxx to each case in this multidistrict litigation — did Merck fail to adequately warn physicians and patients about known cardiovascular risks associated with Vioxx? Is Vioxx defective or unreasonably dangerous?

If the FDA's April 6, 2005 Memorandum is admitted into evidence and testimony regarding its contents is allowed, there is a substantial danger that the jury will attach disproportionate significance to this evidence -- even with its dubious reliability or marginal relevance -- and give less weight to the scientific evidence presented by Plaintiff that has qualified for admission into evidence by passing through *Daubert's* gates.

Further, the prejudice to Plaintiff is heightened by the fact that the authors of the FDA memorandum will likely not be testifying at trial. Plaintiff has not had opportunity to verify or ascertain the basis of the authors' conclusions. Moreover, Plaintiff will likely not have opportunity to cross-examine the authors of the FDA memorandum concerning their opinions prior to the upcoming trials. If Defendant is permitted to introduce evidence or argument that the FDA has concluded that there is a class effect for all NSAIDs at trial, Merck, in essence, will have the unfair advantage of bolstering the opinions of its representatives and experts without Plaintiff having the opportunity to cross-examine the authors of the memorandum.

Such an outcome is particularly troubling when one further considers the equivocal and confusing nature of the document, and the suspect circumstances under which it was published by the FDA.

Without question, the probative value of this memorandum is substantially outweighed by its prejudicial effect. Its admission at this trial would only serve to confuse and mislead the jury and therefore, the memorandum should be excluded under Rule 403.

Plaintiff urges the Court to reverse its position and find that the FDA's April 6, 2005 Memorandum is not admissible in future trials, and exclude all evidence and/or argument that the FDA has concluded that there is a "class effect" of increased cardiovascular risks for all NSAIDs.

Date: June 9, 2006                            Respectfully submitted,

By _____Mark P. Robinson_____
Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

Counsel for Plaintiff

7

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70013
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Carlene Rhodes Lewis
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas 77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana 70601
Telephone: (337) 494-7171
Facsimile: (337) 494-7218

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1371

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 9th day of June, 2006.

MARK P. ROBINSON, JR.