UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 05-0485 | * | |
| GERALD D. BARNETT, | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO
PLAINTIFF'S MOTION IN *LIMINE* TO EXCLUDE EVIDENCE REGARDING
THE NUMBER OF HEART ATTACKS IN THE UNITED STATES**

**(PLAINTIFF'S MOTION IN *LIMINE* NO. 1)**

Plaintiff surmises that Merck will compare the annual number of heart attacks prior to 1999 with the annual number of heart attacks during the 1999 to 2004 period to demonstrate that Vioxx®, which was sold between 1999 and 2004, did not lead to an increase in heart attacks. Because, according to plaintiff, this information is irrelevant and prejudicial to his claims, plaintiff asks the Court to exclude all evidence of the number of heart attacks occurring in the United States each year.

Whether Merck will introduce comparative evidence of the number of heart attacks occurring before, versus during, the period in which Vioxx was sold turns on whether plaintiff is

permitted to rely upon a retrospective observational study conducted by Dr. David Graham[1] (hereinafter the "Graham Study"), which is the subject of Merck's Motion for Order Excluding Testimony of David Graham, M.D. (Motion in *Limine* No. 6) ("Graham Motion"). If the Graham Study is admitted into evidence – and, as explained in the Graham Motion, it should not be – Merck must be able to rebut Dr. Graham's flawed estimates by introducing evidence that Vioxx did not cause 144,000 excess heart attacks. In such a case, a comparison of the number of pre-Vioxx heart attacks with the number of heart attacks occurring while Vioxx was on the market would be highly relevant. Assuming the Graham Study is excluded from evidence, Merck will not offer this type of comparative evidence to demonstrate that Vioxx did not lead to an increase in heart attacks.

Even so, plaintiff offers no basis for excluding all evidence regarding the annual number of heart attacks in the United States. Plaintiff alleges that his ingestion of 25 mg of Vioxx caused his September 2002 myocardial infarction. Merck cannot be precluded from offering general evidence regarding the frequency and occurrence of heart attacks, as evidence of this sort is directly relevant to the issue of whether Vioxx, as opposed to something else, was the most likely cause of Mr. Barnett's alleged injuries.

**I.     IF DR. GRAHAM'S ESTIMATES ARE ADMITTED INTO EVIDENCE, MERCK MUST BE PERMITTED TO INTRODUCE EVIDENCE OF THE NUMBER OF HEART ATTACKS BEFORE AND DURING THE TIME VIOXX WAS SOLD.**

In his study, Dr. Graham hypothesizes, based on a statistical analysis of data from the APPROVe and VIGOR studies and various other sources, that Vioxx caused 144,000 excess

---

[1] *See* David J. Graham, et al., *Risk of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs: nested case-control study*, available at http://image.thelancet.com/extras/05art1005web.pdf (Jan. 25, 2005) at 1.

2

heart attacks in the United States and that approximately 44% of these excess heart attacks were fatal. (Graham Study at 6.) As explained in the Graham Motion, Dr. Graham's flawed estimates should be excluded from evidence because they are irrelevant, unduly prejudicial, and will only confuse and mislead the jury. Indeed, it appears from his Motion that plaintiff would agree that Dr. Graham's estimates are irrelevant and inadmissible. He acknowledges:

> The key question underlying liability is: Did Vioxx cause Mr. Barnett's heart attack? The jury must examine the facts of the instant case [rather than '[s]tatistical evidence suggesting that the number of heart attacks in the United States did not increase between 1999 and 2004'] to determine whether Vioxx caused the Plaintiff's heart attack.

(Pl.'s Motion in *Limine* to Exclude Evidence Regarding the Number of Heart Attacks in the United States ("Mot.") at 2.) By the same token, the excess number of heart attacks or deaths in the general population purportedly attributable to Vioxx usage is irrelevant to the issue of whether Vioxx caused Mr. Barnett's heart attack.

Plaintiff further acknowledges the unreliability of any attempt to categorically attribute heart attacks to Vioxx usage when he states:

> Vioxx was used by a disproportionately large number of older people suffering from Osteoarthritis (OA) and Rheumatoid Arthritis (RA). Traditionally, older members of the population report a higher incidence rate of heart attacks.

(Mot. at 4.) For these same reasons, Dr. Graham's estimates are inherently unreliable.[2]

If the Graham Study and/or Dr. Graham's estimates of the excess heart attacks purportedly caused by Vioxx are admitted into evidence, Merck must be able to respond. In order to rebut Dr. Graham's flawed estimate that Vioxx caused 144,000 excess heart attacks in the United States, Merck would be required to introduce evidence regarding the annual number

---

[2] Merck does not purport to detail in this Opposition all of the reasons that the Graham Study should be excluded. Rather, Merck refers the Court to the Graham Motion, and incorporates that motion herein by reference.

3

of heart attacks experienced before Vioxx was sold, in comparison to the annual number of heart attacks experienced while Vioxx was sold.  This evidence would disprove the proposition that Vioxx was responsible for some 144,000 excess heart attacks.

## II. THERE IS NO BASIS FOR EXCLUDING GENERAL EVIDENCE REGARDING THE FREQUENCY AND OCCURRENCE OF HEART ATTACKS.

All of plaintiff's arguments regarding relevance, reliability, and prejudice are directed to comparative evidence of the number of heart attacks occurring before, versus during, the period in which Vioxx was sold.  (*See generally* Mot.)  Plaintiff offers no argument or explanation as to why Merck should be precluded from introducing general, background information as to the prevalence of heart attacks in the United States.  Nonetheless, he asks the Court to "exclude evidence regarding the number of heart attacks occurring in the United States of America during the time that Vioxx was being marketed." (Mot. at 7; *see also id.* at 1.)  There is no basis for such a sweeping order.

There is undisputed evidence that Mr. Barnett has suffered from heart disease for years prior to his September 2002 myocardial infarction.  It is also relevant and undisputed that heart disease is the leading cause of heart attacks.  Evidence of this fact demonstrates to the jury the seriousness of Mr. Barnett's pre-existing conditions.  It also demonstrates the relevance and importance of whether alternative causes of Mr. Barnett's alleged injuries have been ruled out.

## III. CONCLUSION.

As explained in the Graham Motion, Merck respectfully requests that the Court exclude all evidence of and reference to Dr. Graham's estimates of the excess number of heart attacks and deaths that supposedly are attributable to Vioxx, in addition to any similar such estimates. Assuming the Court grants the Graham Motion, Merck will not offer evidence comparing the number of pre-Vioxx heart attacks with the number of heart attacks occurring while Vioxx was

4

on the market to demonstrate that Vioxx did not lead to an increase in heart attacks. If, however, Dr. Graham's estimates are admitted into evidence, Merck respectfully requests that the Court deny plaintiff's request to exclude this type of comparative evidence, as it will be relevant to demonstrate that Vioxx did not lead to an increase in heart attacks. Regardless of how the Court rules on the Graham Motion, Merck respectfully requests that the Court deny plaintiff's request to exclude all evidence of the number of heart attacks occurring in the United States each year.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and forgoing Opposition to Plaintiff's Motion in *Limine* to Exclude Evidence Regarding the Number of Heart Attacks in the United States (Plaintiff's Motion in *Limine* No. 1) has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiffs' counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of June, 2006.

                                            */s/ Dorothy H. Wimberly*