UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 05-0485 | * | |
| | * | MAGISTRATE JUDGE<br>KNOWLES |
| GERALD D. BARNETT, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION IN *LIMINE* TO PRECLUDE MERCK FROM ARGUING THAT FDA REGULATIONS PROHIBITED THE COMPANY FROM MAKING LABEL CHANGES WITHOUT PRIOR AGENCY APPROVAL**

**(PLAINTIFF'S MOTION IN *LIMINE* NO. 6)**

Plaintiff moves the Court – much as plaintiff did, unsuccessfully, in *Plunkett v. Merck* – to preclude Merck from arguing that it could not have changed the Vioxx label without prior FDA approval.  This issue has already been resolved by the Court.   In *Plunkett*, the Court allowed Merck to present evidence that it was not permitted by FDA regulations to change the Vioxx label to address the VIGOR results without prior FDA approval, and stated that there was "nothing false or legally unsupportable concerning Merck's position." (Nov. 18, 2005 Order re

Daubert Motions at 55.) At trial, regulatory experts testified on both sides of the issue. It was then left to the jury to decide: (i) whether it believed that Merck's post-VIGOR proposed labeling change was a major change; (ii) the importance of multiple variables that Merck and the FDA needed to consider when analyzing any proposed label change; and (iii) whether it believed Merck acted reasonably and appropriately in the circumstances presented.

Here, too, the jury should be permitted to decide, among other things, whether Merck acted reasonably in submitting the VIGOR trial results to the FDA and seeking prior approval for its proposed label change. Testimony from former FDA officials and Merck employees related to the application of FDA regulations to Merck's conduct bears directly on this issue. Such testimony is highly probative evidence that does not pose any risk to plaintiff of undue prejudice, confusion of issues, misleading the jury, undue delay, or waste of time. To the contrary, Merck will be prejudiced if it is *not* permitted to support its defense with such testimony. Accordingly, plaintiff's motion should be denied, as it was in both *Plunkett* trials.[1]

## I.   WHETHER MERCK NEEDED PRIOR FDA APPROVAL TO CHANGE THE VIOXX LABEL IS PROPERLY DETERMINED BASED ON THE FACTS OF THIS CASE.

As was the case in *Plunkett*, Merck should be entitled to argue in this case and in future cases that it acted reasonably in submitting the VIGOR trial results to the FDA and seeking prior approval for its proposed label change. In reaching a decision on this issue, it is necessary to explain all of the regulations governing Merck's conduct and why, under this regulatory scheme,

---

[1] Merck hereby incorporates by reference its prior briefing on this subject. *See* Opposition of Merck & Co., Inc. to Plaintiff's Motion in *Limine* To Preclude Any Testimony or Discussion by Defendant That It Could Not Have Amended the Vioxx® Label or Issued Strengthened Warnings Without Prior FDA Approval (Record Docket No. 1437), filed Nov. 11, 2005 in *Plunkett I* and renewed on Feb. 1, 006 in *Plunkett II*.

it took the actions it did to ensure that the Vioxx label was changed in a timely and accurate manner. To that end, Merck must be permitted to offer testimony from experts and fact witnesses who will assist in assessing Merck's conduct in light of the complex FDA regulations. *See McNeil Pharm. v. Hawkins*, 686 A.2d 567, 582-83 (D.C. Ct. App. 1996) (explaining importance of expert testimony for interpretation and application of the regulations in a drug labeling case). Such testimony is highly probative evidence that does not pose any risk to plaintiffs of undue prejudice, confusion of issues, misleading the jury, undue delay, or waste of time. To the contrary, Merck will be prejudiced if it is not permitted to support its defense with such testimony.

The fact that Judge Higbee gave an erroneous instruction to the jury on this issue in the most recent Vioxx-related case tried in her court does not change – and should not affect – this Court's prior ruling. In *Cona/McDarby*, Judge Higbee's instruction incorrectly suggested to the jury that Merck could have utilized the "changes being effected" procedure to incorporate the data from the VIGOR study into the Vioxx label on its own, without seeking prior FDA approval. This instructional error deprived Merck of the ability to explain why its conduct was reasonable and hobbled Merck's ability to defend its conduct. And, as Dr. Arrowsmith-Lowe's testimony from *Plunkett* reveals, Judge Higbee's reading of the governing regulations is contrary to both the law and the facts. To date, several cases have been tried in state courts, with differing results and with many inconsistent rulings. Thousands more remained to be tried, and none has yet to move through the appellate courts. This Court should not reverse its rulings – particularly on an issue of federal law such as this – every time a state court comes to a contrary conclusion.

3

The basic rule of labeling is that changes can be made only with the prior approval of the FDA. 21 C.F.R. § 314.70(a)(1), (b)(2)(v)(A) (2005). The CBE regulation, 21 C.F.R. § 314.70(c)(6)(iii)(A), on which the PSC relies, is a limited exception to the general rule. In a Federal Register preamble last January, the FDA stated:

> While a sponsor is permitted to add risk information to the FPI [full prescribing information] without first obtaining FDA approval via a CBE supplement, FDA reviews all such submissions and may later deny approval of the supplement, and the labeling remains subject to enforcement action if the added information makes the labeling false or misleading under section 502(a) of the act (21 U.S.C. 352). Thus, in practice, manufacturers typically consult with FDA prior to adding risk information to labeling.

71 Fed. Reg. 3922, 3934 (2d col.) (Jan. 24, 2006).[2] Plainly, the FDA – the regulatory agency with enforcement power over pharmaceutical manufacturers – views favorably the practice of manufacturers "typically" consulting with the Agency. If manufacturers failed to do so, and simply changed or added risk information to their labeling unilaterally, the result would be frequent recalls of previously distributed labeling to correct what the FDA viewed as mistakes, confusion among physicians, decreased reliability of labeling, and decreased physician confidence in labeling. A regulatory system in which potential inaccuracies are initially introduced into labeling and later changed under FDA supervision would be inadequate to protect the public health. Yet, that is the regulatory system that the PSC contends exists.

As explained in the Declaration of Lisa D. Rarick, M.D. ("Rarick Decl.," filed Nov. 14, 2005) and the *Plunkett II* testimony of Dr. Arrowsmith-Lowe, that is not the system that exists.

---

[2] Such a statement by the FDA in a Federal Register preamble constitutes an advisory opinion of the Agency. 21 C.F.R. § 10.85(d)(1) (2005). "An advisory opinion represents the formal position of FDA on a matter . . . ." *Id.* at § 10.85(e). The FDA's formal interpretation of its regulations is entitled to *Chevron* deference. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 186 (3d Cir. 2006).

4

Section 314.70(c)(6)(iii)(A) applies, and is intended to apply, only where no analysis or interpretation of data is needed and, consequently, the wording of a risk disclosure is obvious. (Rarick Decl. at ¶ 6.) An example is the addition of a new, spontaneously reported adverse reaction to the "Adverse Reactions" section of drug labeling; there, no analysis or interpretation of data is needed, and the risk disclosure consists of the insertion into the labeling's "Adverse Reactions" section of a comma and the name of the adverse reaction. In contrast, where analysis and interpretation of complex data are involved, the FDA will not accept a CBE labeling change under section 314.70(c)(6)(iii)(A), but, rather, will insist on a prior approval supplement. (Rarick Decl. at ¶¶ 7-8.)

That the FDA does, in fact, so view and so apply the CBE regulation is shown by Merck's own experience with an attempted CBE labeling change in the fall of 1999 – just a few months before the unblinding of the VIGOR data. On October 6, 1999, Merck submitted a CBE labeling change under section 314.70(c)(6)(iii)(A) in order to add two discrete sentences to the Vioxx labeling: one sentence adding risk information about the interaction between Vioxx and another drug, warfarin, and the other calling attention to a pregnancy registry. On October 28, 1999, in a letter to Merck, the FDA rejected the proposed CBE labeling change and stated: "Changes of the kind you have proposed are not the kind of changes permitted by regulation to be put into effect prior to approval of a supplement." (Rarick Decl. at ¶ 9.) The labeling change Merck proposed in October 1999 was "significantly less substantial than any possible revisions based on the VIGOR data." (*Id.*)

Among the reasons why the FDA wants to be consulted about new disclosures of risk information is that the FDA is responsible not only for overseeing the labeling of individual

products, but also for overseeing the labeling of classes of products (*i.e.*, drugs that are chemically related to one another) and the labeling of products that are therapeutic alternatives (*i.e.*, different products that may be used for the same therapeutic purpose).  In assessing the benefits and risks of a particular product, a physician may take into account the benefits and risks of chemically related products; and in choosing a particular product to treat a particular patient, a physician needs to know not only about the benefits and risks of that product but also how those benefits and risks compare to the benefits and risks of alternative products that might be used to treat that patient.  Thus, adding new risk information to one product may affect not only whether and how physicians use that product, but also whether and how they use other products in the same class and other therapeutic alternatives.  Moreover, in overseeing drug labeling, the FDA receives clinical trial data and adverse event reports from all companies, and therefore is in a better position than any one company to assess the risks and benefits of various therapeutic alternatives and to consider the impact of label revisions for any particular product on the public health generally.  Creating incentives for manufacturers to bypass the FDA in adding risk information to the labeling of their individual products is very likely to upset the relationships that the FDA seeks to maintain among the labeled benefits and risks of the medical products it regulates.  Instead, consultation with the FDA, rather than making unilateral label revisions, is a necessary and publicly beneficial element of the regulatory system – and Merck should be permitted to make this point.

In sum, the PSC seeks a ruling that would prevent the jury from learning the FDA's intent and actual practice with respect to section 314.70(c)(6)(iii)(A), and that would create a powerful incentive for pharmaceutical manufacturers to bypass the FDA – to the great detriment

of patients. Consistent with its prior rulings, this Court should deny the PSC's request and should permit Merck to present evidence that it acted appropriately in submitting its post-VIGOR labeling changes to the FDA for prior approval.

### III. CONCLUSION.

For the reasons stated above and the reasons articulated in Merck's prior briefing on this subject, Merck respectfully requests that the Court deny Plaintiff's Motion in *Limine* to Preclude Merck from Arguing that FDA Regulations Prohibited the Company from Making Label Changes Without Prior Agency Approval.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing Opposition to Plaintiff's Motion in *Limine* to Preclude Merck from Arguing that FDA Regulations Prohibited the Company from Making Label Changes Without Prior Agency Approval (Plaintiff's Motion in *Limine* No. 6) has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiffs' counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of June, 2006.

                /s/ Dorothy H. Wimberly