UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION OF MERCK AND CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF ERIC J. TOPOL, M.D.

### (MOTION IN *LIMINE* NO. 5)

Merck files this memorandum in support of its Motion for Order Excluding Testimony of Eric J. Topol, M.D. (Motion in *Limine* No. 5), filed June 9, 2006. Merck's specific objections to plaintiff's designations of Dr. Topol's testimony are detailed in Merck's concurrently-filed objections. By way of this motion, Merck addresses two particular grounds for excluding Dr. Topol's testimony on: (i) matters that post-date Mr. Barnett's September 2002 injury, and (ii) subjects outside his area of expertise, including FDA labeling and marketing.

### BACKGROUND

Plaintiff in *Plunkett v. Merck* deposed Dr. Topol on November 22, 2005, eight days before the start of trial. On November 28, 2006, just a few days before trial, the Court received

what it acknowledged was the "extensive" transcript of the deposition, as well as "mounds of papers" from the parties arguing for and against the admissibility of the testimony.[1] After reviewing these papers overnight, the Court gave the parties the following set of "ground rules" for the use of his testimony:

> I'm going to allow him to testify, but I don't see him testifying by way of simply the entire deposition. I think the relevance of his testimony is what Merck knew, when Merck kn[e]w it, what they did, and what they didn't do. I'm not interested in what he thinks the state of mind of Merck is. I'm not interested in what he said on 60 Minutes. I'm not interested in what he said in newspaper articles. He wrote an article. I understand that he told Merck about the article. He sent it to them sometimes for review, got responses back from them. He should be able to testify as to what Merck knew and when they knew it.
>
> Let me also say that this case involves the death of a person who was taking Vioxx in April of 2001. I don't see any relevance in this case as to what happened in 2004 unless it's used for impeachment, but what happened after the death is of no significance in this particular case. . . .
>
> I just don't see a large part of that deposition coming into play. It's filled with colloquy. It's filled with conversation between counsel. It's filled with jabs back and forth. That's not really appropriate for presentation into evidence, so the deposition is going to have to be streamlined.

(Nov. 29, 2005 Tr. in *Plunkett v. Merck* at 11:22-12:24.) The Court also ruled that Dr. Topol's testimony would have to meet the requirements for expert testimony in order to be admissible, given that it was based on "specialized knowledge" and thus could not be categorized as lay witness testimony. (*Id.* at 8:22-9:13.)

---

[1] The Court explained:

> ...[T]he deposition was taken. Unfortunately, it was taken in November, six days ago or thereabouts. ...[I]t was a rather extensive deposition. ... I just really received the deposition yesterday, together with large mounds of papers. I received the defendant's opposition at 5:00 yesterday and so you know what I did last night. The deposition is some 600-some-odd pages. The other documentation is another 1,500 pages. The defendant submits about 680 pages attached to their documents. A lot of trees have been sacrificed for this incident. I've had an opportunity to review it. I need to do it a little more extensively with the deposition, but I've reviewed it enough to at least give you the benefit of my view on the use of the deposition.

(Nov. 29, 2005 Tr. in *Plunkett v. Merck* at 7:18-8:21, attached hereto as Ex. A.)

## ARGUMENT

Based on the Court's rulings in *Plunkett v. Merck*, plaintiff's designations of Dr. Topol's testimony in this case should be limited in at least two respects.[2]

***First***, the Court should exclude any designated testimony that is irrelevant to "what Merck knew and when they knew it." Specifically, the Court should exclude any testimony that pertains to events that took place and documents that were created *after* the relevant time period in this case. Mr. Barnett was first prescribed Vioxx® in December 1999, and suffered his alleged injury in September 2002. Although Mr. Barnett continued to take Vioxx until September 2004, there is no evidence that he suffered any ill effects as a consequence. Any testimony concerning events or documents that post-date September 2002 is inadmissible, given that it cannot show "what Merck knew" during the relevant time period. And any testimony about events that took place after September 2004 – after Mr. Barnett stopped taking Vioxx and after Merck voluntarily withdrew the drug from the market – is especially irrelevant. Much of Dr. Topol's testimony concerns emails drafted and opinions expressed after September 2004. All of this testimony should be excluded.

***Second***, the Court should preclude plaintiff from offering any testimony that exceeds the bounds of Dr. Topol's purported "expertise." For example, plaintiff's designations reveal that he intends to offer Dr. Topol's opinion testimony on whether Vioxx was defectively labeled or marketed. By Dr. Topol's own admission, he is not an expert in these areas. His testimony on

---

[2] Merck assumes, for the sake of this motion, that the Court is unlikely to reconsider its prior ruling admitting portions of Dr. Topol's testimony. However, Merck's position remains that Dr. Topol's testimony should be excluded in full, for the reasons articulated in its *Plunkett I* Response to Plaintiff's Motion for Leave to Use Deposition Testimony of Dr. Eric Topol During Trial (Record Docket No. 1757) and its *Plunkett II* Motion to Exclude the Testimony of Dr. Eric J. Topol, M.D. (Motion in *Limine* No. 20) (Record Docket No. 3040). The arguments advanced in those briefs are hereby incorporated by reference as if fully set forth herein.

labeling and marketing should accordingly be excluded.

## I. THE COURT SHOULD EXCLUDE DR. TOPOL'S TESTIMONY ABOUT EVENTS OR DOCUMENTS THAT POST-DATE SEPTEMBER 2002.

A substantial portion Dr. Topol's designated testimony is irrelevant to this case. For example, any testimony concerning events and documents that post-date Mr. Barnett's alleged injury has no nexus to Mr. Barnett's claims and should be excluded. Likewise, any testimony concerning Merck's "suggested edits" to Dr. Topol's *JAMA* article – suggestions that were never even given to Dr. Topol prior to his November 2005 deposition – is irrelevant and unduly prejudicial.

### A. The Court Should Exclude Dr. Topol's Testimony About Events and Documents That Post-Date Mr. Barnett's Alleged Injury.

Plaintiff has designated Dr. Topol's testimony concerning events that took place, and documents that were written, years after Mr. Barnett's alleged injury. As this Court noted in *Plunkett I*, any commentary on events that post-date the operative facts in the case is irrelevant and inadmissible under Rules of Evidence 401 and 402.[3] (*See* Dec. 3, 2005 Tr. in *Plunkett v. Merck* at 992:17-993:1, attached hereto as Ex. B.) Applying this principle, the following designated portions of Dr. Topol's testimony are inadmissible:

- Any testimony concerning Topol Exhibit 2, an email from Dr. Topol to Dr. David Graham dated November 22, 2004. (Deposition of Eric J. Topol, M.D. ("Topol Dep.") at 50:1-51:1, attached hereto as Ex. C.) The designated testimony consists of Dr. Topol reading the email into the record, including his allegations about Merck's "continued outrageous lies" and "scientific misconduct." It is commentary that not only post-dates Mr. Barnett's injury, but also post-dates Merck's voluntary withdrawal of Vioxx from the market. As such, it has no conceivable relevance to this case.

---

[3] In many instances, he documents that Dr. Topol reads into the record are hearsay. Although, where appropriate, an expert may rely on hearsay in forming an opinion, that does not make the contents of the documents admissible. FED. R. EVID. 703; *U.S. v. Dukagjini*, 326 F.3d 45, 51 (2nd Cir. 2003) (inadmissible information relied upon by expert must have probative value that *substantially* outweighs prejudicial effect even to be admitted as basis for expert opinion). For this reason, the documents and Dr. Topol's recitation of their contents should be excluded.

-4-

- Any testimony concerning Topol Exhibit 20, a November 2004 email exchange between Dr. Topol and Dr. Graham. Here, Dr. Topol testifies that he "shared Dr. Graham's sentiments," as expressed in the exchange. (Topol Dep. at 244:14-246:2, 246:5-246:17, 247:4-247:19, 248:1-248:17, 248:20-249:2, 249:7-249:10.) Again, the testimony has no nexus to "what Merck knew" during the relevant time period in this case.

- Any testimony concerning an opinion piece authored by Dr. Topol in December 2004 and entitled "The sad story of Vioxx, and what we should learn from it." (Topol Dep. at 53:23-54:14.) Dr. Topol does not simply read the document into the record, but also uses the piece "as a basis to tell . . . the story." (*Id.* at 56:6-10.) His commentary on the article consists of nothing more than his own irrelevant, post-withdrawal opinions. (*See, e.g., id.* at 56:22-57:18, 57:24-58:12, 58:20-59:18)

- Any testimony concerning Topol Exhibit 22, Dr. Topol's handwritten notes from October 2004. Here, Dr. Topol explains what he meant in the notes by "what/when Merck knew," "Deception/Falsifying/Suppression of Data," and "Marketing and sales." (Topol Dep. at 265:6-266:3, 266:13-266:22, 272:19-273:11, 273:20-274:7.) These *post hoc* observations on what Merck allegedly knew prior to the withdrawal of Vioxx are necessarily informed by events that took place afterwards. They cannot possibly show what Merck actually knew during the relevant time period.

Because all of these documents post-date Mr. Barnett's alleged injury, any testimony addressing them is irrelevant and should be excluded. Moreover, to the extent any of this testimony consists simply of Dr. Topol reading an otherwise inadmissible exhibit into evidence – as is the case with the email correspondence referenced above – this testimony is inadmissible hearsay and should be excluded on that ground as well.

### B. Plaintiff's Designated Testimony Regarding Merck's Suggested Edits To Dr. Topol's JAMA Article Is Irrelevant.

For similar reasons, the Court should exclude Dr. Topol's testimony concerning Merck's internal edits to his *JAMA* article. These are edits that neither Dr. Topol nor *JAMA* ever received, at least not until plaintiff's counsel showed Dr. Topol internal Merck documents – marked up copies of his article that he had never previously seen – at his deposition. (Topol Dep. at 111:16-112:2.) Presented with these documents, Dr. Topol reacted by opining that Merck's conduct was a "departure . . . from sound academic and scientific practice" (*id.* at 110:8-

-5-

111:8) and that it was an "unacceptable" attempt to "warp" or "twist" the truth (*id.* at 111:8-112:2). However, he failed to identify how these edits had any consequence or significance. In fact, he admitted that Merck's edits were neither sent to him for review (let alone incorporated into his article) nor sent to *JAMA*. (*Id.* at 112:4-17.) Given these facts, the testimony is irrelevant and it should be excluded.

Moreover, allowing such irrelevant and inflammatory testimony would be unduly prejudicial to Merck. Indeed, the Court agreed and excluded this type of testimony in *Plunkett I*. (*Plunkett* Dec. 3, 2005 Tr. at 990:22-23, 991:21-23 ("I think that counsel has a point about 403, where some of it may be a little over the pail from the 403 standpoint . . . . I'm going to excise a portion of it under 403.").) It should do the same here.

## II. THE COURT SHOULD EXCLUDE ANY TESTIMONY THAT IS OUTSIDE THE REALM OF DR. TOPOL'S "EXPERTISE."

Much of Dr. Topol's testimony is purported expert opinion, in that it requires scientific, technical, or other specialized knowledge.[4] FED. R. EVID. 702. (*See also* Nov. 29, 2005 Tr. in *Plunkett v. Merck* at 8:22-9:13 (holding that Dr. Topol's testimony does not qualify as lay witness testimony).) For any such testimony to be admissible, plaintiff must establish that Dr. Topol is an expert on the subjects on which he has opined and that "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; *Daubert v. Merell Dow Pharms., Inc.*, 509 U.S. 579, 590, 592-93 (1993) (relevance

---

[4] Although disclosed as a fact witness, there is no evidence that Dr. Topol had lay knowledge of several issues on which he opines. For example, he conducted none of his own studies of Vioxx, yet he offers scientific opinion on these subjects through his personal evaluation of ADVANTAGE, VIGOR, and study 090. (*See generally*, Topol Dep.) Most egregious is his extensive reliance on newspaper articles to form his opinions. (*E.g.*, Topol Dep. 75:7-11, 262:11-263:17.) Dr. Topol's opinions are not based on his personal knowledge of these issues. Rather, and as discussed in text above, much of Dr. Topol's testimony is improper expert opinion – opinion that he is not qualified to give.

depends upon "whether [the expert's] reasoning or methodology . . . properly can be applied to the facts in issue."). Dr. Topol's testimony about the adequacy of the Vioxx labels, "black box" warnings, and Merck's marketing practices fails to meet these standards and must be excluded.

### A.     Dr. Topol Is Not Qualified To Opine On Regulatory Issues.

Plaintiff has designated Dr. Topol's testimony on the adequacy of the Vioxx labeling. This testimony implicates the elaborate regulatory regime that governs pharmaceutical products marketed in the United States. It includes, for example:

- Dr. Topol's testimony that, "In [his] opinion, both the original [Vioxx] label and then the revision in April of 2002 did not show adequate safety concerns about heart attacks, strokes and death that could occur from the medicine . . . ." (Topol Dep. at 166:11-21; *see also id.* at 166:5-166:7, 166:10-166:10.)

- Dr. Topol's opinions concerning "black box" warnings. (Topol Dep. at 197:4-18, 197:22-198:12.) This testimony includes Dr. Topol's assertion that "the extraordinary amount of evidence . . . was really quite excessive in my opinion, and that's why the black box warning was long overdue in August 2004." (*Id.* at 197:13-18.) It also includes his unfounded opinion that a new black box warning "could have easily been imposed as of February 2001, or . . . it could have been back in year 2000." (*Id.* at 197:22-198:3.)

Despite his willingness to make these assertions, Dr. Topol lacks the qualifications and experience necessary to provide expert testimony on regulatory issues. By his own admission, he is not a labeling expert:

> Q: You're not an expert in warnings and labeling under the Food & Drug Administration guidelines, are you, sir?
>
> A: Well, I'm certainly familiar with them. I wouldn't call myself an expert, no.

(Topol Dep. at 542:9-15.)

Both plaintiff and Merck have designated experts in drug labeling in this case – experts with the specific qualifications and experience that Dr. Topol lacks. Dr. Topol's designated opinion testimony on the subject is plainly unreliable and should be excluded under Rule 702.

### B. Dr. Topol Is Similarly Unqualified To Testify About Merck's Marketing of Vioxx.

Plaintiff also proffers Dr. Topol's opinions that Merck's marketing of Vioxx was misleading and constituted overpromtion. Here, too, Dr. Topol lacks the expertise to opine on the subject. This testimony includes the following:

- Dr. Topol's testimony that Merck's marketing of Vioxx was "quite extraordinary, these sorts of sales tactics that were going on by the specially-trained Merck sales reps." (Topol Dep. at 272:19-273:11, 273:20-274:7.)

- Dr. Topol's testimony on a "cardiovascular card" used by Merck sales representatives. Dr. Topol opines that "[i]f you look at the cardiovascular card, it's very clear that the data that are being presented are highly misleading." (Topol Dep. at 274:4-7.)

- Dr. Topol's testimony on Merck's Vioxx advertisements. He states, "I am bothered by the continued outrageous lies of Merck with their fullpage multiple ads that 'they published everything,'" and "I am also upset that the story of their scientific misconduct for the VIGOR paper in the New England Journal of Medicine . . . has not received any attention whatsoever." (Topol Dep. at 50:9-51:1 (internal quotation marks omitted).)

Dr. Topol has no basis for providing this supposed expert testimony. Indeed, he has no qualifications to testify as a marketing expert. The fact that he is a cardiologist and oversees a medical college does not give him the requisite background to opine on what he suggests are Merck's improper marketing practices. (Topol Dep. at 27:4-28:4.) Nor do any of his work experiences or publications reveal any relevant experience in marketing. His testimony on Merck's marketing practices should thus be excluded under Rule 702.

### CONCLUSION

For the reasons stated above, Merck respectfully requests that the Court grant its Motion for Order Excluding Testimony of Eric J. Topol, M.D.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Adam L. Hoeflich
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion for Order Excluding Testimony of Eric J. Topol, M.D. (Motion in *Limine* No. 5) has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of June, 2006.

*/s/ Dorothy H. Wimberly*