**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

**IN RE:  VIOXX PRODUCTS**
**LIABILITY LITIGATION**                                   **Docket No. 1657**

**---------------------------------------------------**

OTIS HENSLEY and GAIL
HENSLEY, his wife,

       Plaintiffs,

vs.                                                    Case No. 2:05-cv-5588-EEK-DEK

MERCK & CO., INC., a New Jersey
corporation,

       Defendants.

                                 /

## AMENDED COMPLAINT

    The Plaintiffs, OTIS HENSLEY and GAIL HENSLEY, sue the Defendant ,

MERCK & CO., INC., and allege:

## GENERAL ALLEGATIONS

    1.  This is an action for damages that exceed the sum of Seventy-Five Thousand

Dollars ($75,000.00), exclusive of interest and costs.

    2.  This action arises out of personal injuries sustained by the Plaintiff, OTIS

HENSLEY, caused by his ingestion of the prescription drug, Vioxx, that was

manufactured, marketed, distributed and sold by the Defendant.

    3.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332 because the

amount in controversy exceeds the sum of $75,000.00 and there exists complete

1

diversity of citizenship between the parties.

4.  At all times material to this cause, Plaintiffs, OTIS HENSLEY and GAIL HENSLEY, were married and lived together as husband and wife in Tennessee and Port Charlotte, Florida.

5.  Venue in this District is proper pursuant to 28 U.S.C. 1391 in that Defendant is registered to do business in Florida and is subject to personal jurisdiction of this District.

6.  At all relevant times, Defendant, MERCK & CO., INC. (hereinafter called "MERCK") was a New Jersey corporation with its principal place of business in Whitehouse Station, New Jersey and was authorized to and did conduct business in the State of Florida and sold and distributed Vioxx in this District of Florida.

7.  At all relevant times, Defendant, MERCK, was in the business of developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx (Rofecoxib) for consumer use by prescription.  Vioxx (Rofecoxib) is a prescription drug designed to treat pain through reduced inflammation.  Vioxx is a Cox-2 selective non-steroidal anti-inflammatory agent (NSAID).  Defendant, MERCK, did develop, manufacture, design, package, label, market, sell and distribute this drug in the State of Florida.

8.  From May, 1999 until September 30, 2004, Vioxx was widely advertised and Defendant encouraged the use of this drug through an aggressive marketing campaign, including detailing through its sales representatives and direct-to-consumer advertising.

9.  At all relevant times, Defendant had control of the design, assembly,

2

packaging, marketing, advertising, manufacturing, labeling, testing, promoting, distribution and/or sale of the drug, Vioxx.

10.  From approximately September, 1999 through April, 2000, the Plaintiff, OTIS HENSLEY, was prescribed and ingested the pain medication Vioxx 25 mg. and suffered a myocardial infarct in Kingsport, Tennessee on or about April 17, 2000.

## Vioxx Background

11.  On or about May 2, 1999 the United States Food & Drug Administration (FDA) approved Vioxx (rofecoxib) for painful menstruation, acute pain in adults and for the relief of pain symptoms associated with osteoarthritis.  Defendant promoted Vioxx as gentler on the digestive tract than more established NSAID's which could cause ulcers and bleeding in the stomach in some patients.

12.  On or before March, 2000, Defendant received the results of a research study that was begun in January, 1999 to test the gastrointestinal effects of Vioxx on humans.  The study was called VIGOR (Vioxx Gastrointestinal Outcomes Research) and involved 8100 rheumatoid arthritis patient treated with either Vioxx or naproxen. The study results showed that the risk of gastrointestinal toxicity with Vioxx was less than with naproxen, but more than four times as many arthritis patients using Vioxx had heart attacks as those who took naproxen.

13.  Notwithstanding those VIGOR results, in April, 2000, Defendant issued a press release entitled: "Merck confirms favorable cardiovascular safety profile of Vioxx". The article stated that the VIGOR trial results were "consistent with" clot-preventing effects of naproxen.

3

14.   On September 17, 2001, the FDA sent a warning letter to the Defendant stating that "You have engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus, misrepresents the safety profile for Vioxx.  Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five-fold increase in myocardial infarctions compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen)."

15.   On August 22, 2001, the results of a study performed by a team of cardiologists at the Cleveland Clinic was published by Eric Topol, MD in *The New England Journal of Medicine* that indicated that Vioxx had a five times greater risk of heart attack than naproxen.

16.   In April, 2002, over two years after Defendant received the results of the VIGOR study, the FDA required Defendant to add information about the cardiovascular risks to Vioxx's label to reflect the VIGOR results.  That new Vioxx label noted the favorable data about fewer upset stomachs first, followed by two tables with the unfavorable increased incidence of heart attacks and strokes.

17.   In October, 2002, Wayne Ray, MD, an epidemiologist at Vanderbilt University, reported results of a study of Medicaid patients in Tennessee who took high doses of Vioxx and had significantly more heart attacks and strokes than similar patients not taking high doses of the drug.

18.   In 2002,  Elucida Research, a small laboratory in Massachusetts, analyzed the mechanism by which Vioxx and other anti-inflammatory drugs interacted with lipids

in the blood and found that Vioxx damaged those lipids in a way that made the them more susceptible to clotting.

19.  In October, 2003, Merck-funded study found that patients taking Vioxx were at a 30% greater risk of heart attack within the first 90 days of ingestion, than those who took Celebrex, a similar drug.

20.  On April 19, 2004, an article was published in *Circulation* by Daniel H. Solomon, MD, of Harvard Medical School, concerning the results of a study to determine the relative risk of heart attack among users of Vioxx, Celebrex and non-steroidal anti-inflammatory drugs (NSAID's).  In that article, Dr. Solomon concluded that Vioxx was associated with a 24% greater risk of heart attack than Celebrex or other NSAID's.

21.  In August, 2004, David J. Graham, MD, MH, an epidemiologist with the FDA, presented data at an international conference in Bordeaux, France, reflecting that Vioxx increased the incidence of heart attack and cardiac death.  He reported that patients taking more than 25 mg of Vioxx daily had a 3.7-fold increase in the risk of serious coronary heart disease and those taking the standard dose had a 1.5-fold increase in risk.

22.  In September, 2004, the APPROVe (Adenomatous Polyp Prevention on Vioxx) study showed that patients have twice the risk of cardiovascular events (including heart attack and stroke, when taking the drug for longer than 18 months. Among patients taking Vioxx for more than 18 months, there were 15 heart attacks or strokes for every 1,000 patients, as compared to 7.5 per 1,000 who were on placebo.

Investigators shut down that study out of fear of the unreasonable risks it was presenting to its subjects.

23.  On September 30, 2004, Defendant announced the withdrawal of Vioxx after an estimated 105 million prescriptions for the drug had been written to over 20 million people, with total 2003 sales of approximately $2.5 billion.

**COUNT I**
**(Strict Liability and Defective Design)**

24.  Plaintiffs reallege and incorporate the general allegations contained in Paragraphs 1 through 23 in Count I of this Complaint.

25.  At all times material hereto, Defendant, MERCK, engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting the drug, Vioxx (rofecoxib), that was defective and unreasonably dangerous to consumers, including Mr. Hensley.

26.  At all times material hereto, the Vioxx was expected to reach, and did reach, prescribing physicians and consumers in the states of Tennessee and Florida, including Mr. Hensley, without substantial change in the condition in which it was sold.

27.  At all relevant times, the Vioxx was defective and unreasonably dangerous at the time it was placed in the stream of commerce in that:

    a)    When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Mr. Hensley to health risks such as a heart attack which exceeded the benefits of the drug;

    b)    When placed in the stream of commerce, the drug was more dangerous than an ordinary consumer would expect and more dangerous than other similar pain medications in that it caused a greater risk of cardiovascular injury that those other medications.

c)    When placed in the stream of commerce, the drug had been insufficiently tested;

d)    The drug was marketed to be used in such a way that was known to the Defendant to cause harmful side effects which outweighed any potential utility.

28.  The Vioxx that was ingested by Mr. Hensley had not been materially altered or modified prior to his ingestion of the drug.

29.  Mr. Hensley was a foreseeable user of the drug and ingested the drug as prescribed for its intended purpose, i.e. pain management, and it was a foreseeable that he would ingest the drug as prescribed and as Defendant would reasonably expect.

30.  Had the Vioxx not been defective, Mr. Hensley would not have sustained the injuries alleged herein.

31.  As a direct and proximate result of the defective condition of the drug, Mr. Hensley ingested Vioxx as prescribed from approximately September, 1999 through April, 2003 and suffered a myocardial infarct on April 17, 2000.

32.  As a further proximate result of the defective condition of the drug, Plaintiff has suffered a permanent impairment, mental and physical pain and anguish, incurred hospital and medical expenses, and loss of quality of life and all of said injuries are continuing.

WHEREFORE, Plaintiff, OTIS HENSLEY, demands judgment against Defendant, MERCK, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT II
### Strict Liability – Failure to Warn

33. Plaintiffs reallege and incorporate the General Allegations contained in Paragraphs 1 through 23 in Count II of this Complaint.

34. The Vioxx that was ingested by Mr. Hensley was defective and unreasonably dangerous when it left the possession of the Defendant in that:

a) The product contained insufficient warnings to alert consumers and their prescribing physicians of severe and life threatening complications and side effects of the drug, including but not limited to arterial thrombus and cardiovascular incidences.

b) Defendant's advertisements and promotion of the drug concerning its benefits was misleading to consumers and their prescribing physicians.

c) Even after Defendant knew or should have known of the significant risks of cardiovascular injury associated with the drug, Defendant failed to adequately warn consumers and their prescribing physicians of those risks and continued to aggressively promote and advertise direct-to-consumer the sale and use of the drug.

35. The Defendant, as manufacturer of the Vioxx, is held to the level of knowledge of an expert in the field of that type of pain relief medication.

36. As an expert in the field, Defendant had a continuing duty to warn Vioxx consumers and prescribing physicians of the dangers associated with the drug.

37. Mr. Hensley's prescribing physician prescribed the drug to be used for its intended purpose, i.e., pain relief.

38. At the time Mr. Hensley's physician prescribed the drug, the physician did not have substantially the same knowledge as the Defendant about the cardiovascular risks of the drug because Defendant failed to provide adequate warnings of those risks to him.

8

39.  As a direct and proximate result of the defective condition of the drug, Mr. Hensley ingested Vioxx as prescribed from approximately September, 1999 through April, 2000 and suffered a myocardial infarction on April 17, 2000.

40.  As a further proximate result of the defective condition of the drug, Plaintiff has suffered a permanent impairment, mental and physical pain and anguish, incurred hospital and medical expenses, and loss of quality of life and all of said injuries are continuing.

WHEREFORE, Plaintiff, OTIS HENSLEY, demands judgment against Defendant, MERCK, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT III
### (Negligence)

41.  Plaintiffs reallege and incorporate the General Allegations contained in Paragraphs 1 through 23 in Count III of this Complaint.

42.  At all times material hereto, Defendant, MERCK, directly or indirectly, created, manufactured, assembled, designed, sterilized, tested, packaged, labeled, marketed, promoted, advertised, sold and/or distributed in the states of Tennessee and Florida, the prescription drug, Vioxx.

43.  At all relevant times, Defendant owed a duty to the public and to Plaintiff, OTIS HENSLEY, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, testing, labeling, assembling, packaging, distribution, promotion and sale of the drug.

44.  Defendant negligently breached that duty to Mr. Hensley in that:

a.)   Defendant designed, manufactured and sold the drug that it knew or should have known created an unreasonably high risk of cardiovascular injury, heart attack, stroke and even death to patients who ingested it.

b)    Defendant failed and/or refused to include adequate warnings about the Vioxx that would alert prescribing physicians to the potential risks and serious side affects of the drug.

c.)   Defendant failed and/or refused to adequately and properly test the drug before placing the drug on the market.

d.)   Defendant failed to conduct sufficient testing on the drug both before and after the drug was placed on the market which, if properly performed, would have shown that the drugs had serious side effects, including, but not limited to, heart attack, stroke and other cardiovascular injury.

e.)   Defendant failed to adequately warn Mr. Hensley or his prescribing physicians that use of the Vioxx caused, or was associated with, an unreasonably high risk of cardiovascular injury and/or a higher risk of such injury than other similar pain relief drugs on the market.

f.)   Defendant failed to provide adequate post-marketing warnings or instructions to Mr. Hensley and his prescribing physician concerning the risk of the Vioxx after the Defendant knew or should have known of the significant risk of cardiovascular injury, including heart attack associated with the use of the drug.

g.)   Defendant failed or refused to adequately label the drug to warn Mr. Hensley and/or his prescribing physician of the significant risk of cardiovascular injury, including heart attack, associated with the use of the drug.

h.)   Defendant failed or refused to warn Mr. Hensley and/or his prescribing physician that the Vioxx had not been tested for risks of thrombus and cardiovascular injury.

i)    Defendant underplayed the significant risk of cardiovascular injury to the public and to Mr. Hensley and/or his prescribing physician in order to make a profit from sales of the Vioxx.

45.  Defendant knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which Mr. Hensley and his prescribing physician would not be aware, but nevertheless advertised, marketed, sold and distributed the drug knowing that there were safer methods and products for pain relief.

46.  As a direct and proximate result of the negligent acts and omissions on the part of the Defendant concerning Vioxx, Mr. Hensley ingested Vioxx as prescribed from September, 1999 through April, 2000 and suffered a myocardial infarct on April 17, 2000.

47.  As a further proximate result of the defective condition of the drug, Plaintiff has suffered a permanent impairment, mental and physical pain and anguish, incurred hospital and medical expenses, and loss of quality of life and all of said injuries are continuing.

WHEREFORE, Plaintiff, OTIS HENSLEY, demands judgment against Defendant, MERCK, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

### COUNT IV
### (Negligent Misrepresentation)

48.  Plaintiffs reallege and incorporate the General Allegations contained in Paragraphs 1 through 23 in Count IV of this Complaint.

49.  At all times material hereto, Defendant, MERCK, directly or indirectly, designed, manufactured, tested, labeled, supplied, packaged, promoted, marketed, advertised, sold and/or distributed in the states of Tennessee and Florida, the prescription drug, Vioxx.

11

50.  At all relevant times, Defendant owed a duty to the public and to Plaintiff, OTIS HENSLEY, to accurately represent the safety and efficacy of the drug.

51.  Defendant negligently breached that duty to Mr. Hensley by misrepresenting the safety and efficacy of the drug and by misrepresenting or omitting material information concerning the significant risk of cardiovascular injury associated with the drug.

52.  Defendant's misrepresentations were communicated to Mr. Hensley's prescribing physician with the intent that they reach the consuming public, including Mr. Hensley, and would cause Vioxx prescriptions to be written for the consuming public, including Mr. Hensley.

53.  Defendant's misrepresentations were also communicated directly to Mr. Hensley through its advertising, labeling, package inserts and warnings on the Vioxx product itself.

54.  Defendant made these misrepresentations concerning the cardiovascular risks of Vioxx and actively concealed that adverse information at a time when Defendant knew, or should have known, that the drug had defects, dangers and characteristics that were other than what the Defendant had represented to prescribing doctors, other dispensing entities, the FDA and the consuming public, including Mr. Hensley.

55.  Plaintiff, Mr. Hensley, and his prescribing physician and/or his dispensing entities justifiably relied upon and were induced by the misrepresentations of the Defendant to Mr. Hensley's detriment.

12

56.  As a direct and proximate result of the negligent misrepresentations of the Defendant concerning Vioxx, Mr. Hensley ingested Vioxx as prescribed from approximately September, 1999 through April, 2000 and suffered a myocardial infarct on April 17, 2000.

57.  As a further proximate result of the defective condition of the drug, Plaintiff has suffered a permanent impairment, mental and physical pain and anguish, incurred hospital and medical expenses, and loss of quality of life and all of said injuries are continuing.

WHEREFORE, Plaintiff, OTIS HENSLEY, demands judgment against Defendant, MERCK, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT V
### (Statutory Negligence)

58.  Plaintiffs reallege and incorporate the General Allegations contained in Paragraphs 1 through 23 in Count V of this Complaint.

59.  At all times material hereto, Defendant, MERCK, was in the business of manufacturing, marketing, distributing and selling Vioxx to consumers within the states of Tennessee and Florida and had an obligation not to violate either Tennessee, Florida or federal law.

60.  At the time Defendant manufactured, marketed, distributed and/or sold Vioxx to OTIS HENSLEY, Defendant had actual knowledge that the drug was defective and created a high risk of unreasonable, dangerous side effects which were debilitating and could foreseeably result in the type of eye injury that Plaintiff suffered.

13

61.  Despite that knowledge, Defendant continued to manufacture, market, advertise, distribute and sell Vioxx to the general public and to Plaintiff and further, failed to warn the general public, the Plaintiff or his physician of the defect in the drug.

62.  Said acts and omissions of Defendant violated the Florida Drug and Cosmetics Act, Sec., 499.0054, *et seq.*, Florida Statutes, which provides in part:

> (1) The dissemination of any false advertisement of any drug, device or cosmetic.  An advertisement is false if it is false or misleading in any way.

> (2) The distribution in commerce of any drug, device or cosmetic, if its labeling or advertising is in violation of ss. 499.001-499.081.

> (3) The manufacturing, repackaging, packaging, selling, delivery, holding, or offering for sale of any drug, device or cosmetic for which the advertising or labeling is false or misleading.

> (5) The receiving in commerce of any drug, device or cosmetic that is falsely advertise or labeled or the delivering or proffering for delivery of any such drug, device or cosmetic.

Section 499.0055, provides:

> In determining whether an advertisement is false or misleading, the department shall review the representations made or suggested by statement, word, design, device, sound or any combination thereof with the advertisement and the extent to which the advertisement fails to reveal material facts with respect to consequences that can result from the use of the drug, device or cosmetic to which the advertisement relates under the conditions of use prescribed in the labeling or advertisement.

63.  Said acts or omissions of Defendant, MERCK, further violated the Federal Food, Drug & Cosmetic Act, 21. U.S.C., Sections 301, *et seq.*, related amendments and

codes, federal regulations promulgated thereunder, and other applicable state and federal laws.

64.  Defendant has a special relationship with prescribing physicians and users of their pharmaceutical products that statutorily require disclosure of material facts about new or newly appreciated heightened risks associated with their drugs.  Those duties include the following:

a)   Monitor the scientific literature and developments touching upon their drugs.

b)   Making timely and adequate warnings to the medical profession.

c)   Describing those situations in which the drug should not be used because the risk of use clearly outweighs any possible benefit. These situations include continued use of the drug in the face of an unacceptably hazardous adverse reaction." 21 C.F.R. § 201.57 (d).

d)   Placing drug labeling that "shall describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur." 21 C.F.R. § 201.57 (e).

e)   Placing drug labeling that "shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved." 21 C.F.R. § 201.57(e).

f)   Placing drug labeling that must "contain information regarding any special care to be exercised by the practitioner for safe and effective use of the drug." 21 C.F.R. § 201.57 (f) (1).

g)   Placing drug labeling that "shall contain information to be given to patients for safe and effective use of the drug," e. g. 21 C. F. R. § 201.57 (f) (2) .

h)   Making sure that its drug labeling is not misleading by reason of failing to reveal facts that are material in light of other representations made or suggested by statements. 21 C.F.R. § 1.21 (a) (1).

15

i)     Making sure that the drug labeling is not misleading by reason of failing to reveal facts material with respect to consequences which may result from the use of the drug under "such conditions of use as are customary or usual." 21 C.F.R. §1.21 (a) (2).

j)     Warning when there is a common belief about the safety and efficacy of a particular indication but there is a lack of evidence regarding the safety of that use, because the absence of safety testing is a material fact, and the failure to reveal such absence of safety testing in the drug's labeling causes the labeling to be misleading. 21 C.F.R. §§ 1.21 and 201.5 7(c) (3) (iv).

65.   Defendant knew, or should have known, that these regulations were in effect and applied to Vioxx. These regulations were intended to protect consumers, including OTIS HENSLEY, and these laws are designed to prevent injuries due to inadequate warning of known or reasonably knowable defects and due to failure to timely disclose all adverse events concerning the product.

66.   Defendant's non-disclosures and misrepresentations concerning Vioxx violated these regulations and laws and such violations were substantial factors in contributing to the injuries of OTIS HENSLEY and to the damages suffered therefrom by the Plaintiff.

67.   As a direct and proximate result of the statutory negligence of the Defendant concerning Vioxx, Mr. Hensley ingested Vioxx as prescribed from approximately September, 1999 through April, 2000 and suffered a myocardial infarction April 17, 2000.

68.   As a further proximate result of the defective condition of the drug, Plaintiff has suffered a permanent impairment, mental and physical pain and anguish, incurred

hospital and medical expenses, and loss of quality of life and all of said injuries are continuing.

WHEREFORE, Plaintiff, OTIS HENSLEY, demands judgment against Defendant, MERCK, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

### COUNT VI
### (Culpable Negligence and Fraud)

69.  Plaintiffs reallege and incorporate the General Allegations contained in Paragraphs 1 through 23 in Count VI of this Complaint.

70.  From September, 1999 through April, 2000, Plaintiff, OTIS HENSLEY, was prescribed Vioxx for relief of pain symptoms.  Mr. Hensley ingested the Vioxx as prescribed.

71.  Prior to September, 1999, Defendant marketed, promoted, advertised, distributed and sold Vioxx within the states of Tennessee and Florida.

72.  At all times material to this cause, Defendant either, directly or indirectly, had actual knowledge that the Vioxx sold to Mr. Hensley was defective in that it caused an unreasonably high risk of life-threatening side effects, including heart attack and other cardiovascular injuries to patients who consumed it as prescribed.

73.  Despite Defendant's actual knowledge of the gravity of injury foreseeably caused by Vioxx, Defendant acted with gross negligence and willful and wanton disregard of the safety of the general public and of Mr. Hensley, in that it knowingly and intentionally continued to manufacture, market, advertise and sell Vioxx so as to maximize its sales and profits at the expense of the health and safety of the public.

17

74. Defendant's culpable negligence includes, but is not limited to:

    a)    Failing or refusing to conduct adequate pre-market and post-market testing of the drug;

    b)    Failing or refusing to test the drug for cardiovascular and thrombotic consequences, which, if properly and timely performed, would have shown that Vioxx caused a significant risk of heart attack.

    c)    Failing or refusing to test the drug for cardiovascular or thrombotic consequences, which, if properly and timely performed, would have shown that Vioxx caused a higher risk heart attack than other similar pain relief drugs that were available on the market.

    d)    Failing or refusing to test the drug for cardiovascular or thrombotic consequences, despite Defendant's pre-market concerns that such testing might have shown significantly higher rates of heart attack in patients who ingested Vioxx than in patients who ingested other similar pain relief drugs that were available on the market.

    e)    Failing or refusing to test the drug for cardiovascular or thrombotic consequences as soon as Defendant received the VIGOR study results in March, 2000 which showed that more than four times as many patients using Vioxx had heart attacks than those who took naproxen for pain.

    f)    Intentionally rejecting the suggestion of pursuing a study focused on possible cardiovascular risks of Vioxx in May, 2000, despite the fact that Defendant was aware of the VIGOR study as early as March, 2000 because "the implied message of that study would not be favorable" to sales of the drug.

    g)    Intentionally denying and/or downplaying and/or misrepresenting the fact that Vioxx had a significantly higher risk of cardiovascular injuries than other similar pain relief drugs on the market, despite the fact that Defendant was aware of the results of the VIGOR study as early as March, 2000.

    h)    Intentionally making false misrepresentations in a press release in April, 2000 entitled "Merck confirms favorable cardiovascular safety profile of Vioxx" which stated that the VIGOR trial results were "consistent with" clot-preventing effects of naproxen, despite the fact that Defendant was aware the VIGOR study showed that

patients who took Vioxx had four times the incidence of heart attacks as patients who took naproxen.

i)   Intentionally failing and refusing to change the Vioxx label to reflect any warning about cardiovascular risks of the drug until April 2002, despite the fact that it was fully aware of the significant risks of heart attacks associated with Vioxx as early as March, 2000.

j)   Engaging in a promotional campaign for Vioxx that minimized the potentially serious cardiovascular findings in the VIGOR study and misrepresented the safety profile for Vioxx; specifically, embarking on a campaign that discounted the fact that patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions as compared to patients on comparable NSAID drugs.

k)   Delaying warnings of and failing to provide adequate warnings about the potential adverse cardiovascular side effects of Vioxx, thereby depriving medical providers of the ability to assess risks, advise and monitor patients and properly monitor, diagnose and treat adverse reactions in patients like and including Plaintiff.

l)   Continuing to aggressively promote Vioxx and vigorously defend the drug's  cardiovascular safety factor as recently as August 26, 2004, just one month before the drug was removed from the market, despite having received FDA warnings and warnings from the outside scientific community that Defendant's testing of the drug was inadequate, that Defendant's representations concerning the safety of the drug were false and/or grossly inaccurate; and that the drug had a four to five-fold greater risk of coronary heart disease than other similar pain relief drugs on the market.

m)   Failing and refusing to remove Vioxx from the market until September 30, 2004, more than four years had actual knowledge that the drug was associated with a four-fold greater risk of cardiovascular injury such as heart attack and stroke than other similar pain relief drugs on the market.

n)   Failing to timely apprise and inform the FDA of the new information concerning adverse events;

75.  All of the above actions taken by the Defendant, MERCK, were intentional

acts specifically directed to keep safety concerns about the drug from decreasing the

sales of Vioxx and destroying Defendant's financial concerns.

76.  If the representations and warnings concerning Vioxx had been accurate and truthful, such representations and warnings would have dissuaded medical providers from recommending Vioxx to OTIS HENSLEY, who would not have ingested the drug had he known of the severe side effects of the drug.

77.  The aforementioned actions of Defendant, MERCK, constituted knowing and intentional misconduct, and/or conduct undertaken with reckless, willful and wanton disregard for the safety of the public and of OTIS HENSLEY, and such conduct was at all times ratified by the Defendant.

78.  Mr. Hensley and/or his prescribing physician relied upon the intentional and fraudulent misrepresentations of the Defendant concerning the safety and efficacy of Vioxx to Mr. Hensley's detriment.

79.  As a direct and proximate result of the culpable acts of the Defendant concerning Vioxx, Mr. Hensley ingested Vioxx as prescribed from approximately September, 1999 through April, 2000 and suffered a myocardial infarct on April 17, 2000.

80.  As a further proximate result of the defective condition of the drug, Plaintiff has suffered a permanent impairment, mental and physical pain and anguish, incurred hospital and medical expenses, and loss of quality of life and all of said injuries are continuing.

20

WHEREFORE, Plaintiff, OTIS HENSLEY, demands judgment against Defendant, MERCK, for compensatory and punitive damages, as well as all costs of this action and a trial by jury of all issues to be tried.

### COUNT VII
### (Consortium Claim)

81.  Plaintiffs reallege and incorporate paragraphs 1 through 80 into Count VII of this Complaint.

82.  At all relevant times, Plaintiff, GAIL HENSLEY, was the wife of OTIS HENSLEY, and, as a result of the injuries sustained by her husband as hereinabove alleged, GAIL HENSLEY has lost the services, support, protection, companionship, affection and consortium of her husband, and will continue to lose said services, companionship, affection and consortium in the future.

83.  In addition, as the Plaintiff's wife, GAIL HENSLEY, has been obligated to pay medical expenses on behalf of her husband.

WHEREFORE, Plaintiff, GAIL HENSLEY, demands judgment for damages, costs and interest against the Defendant, MERCK, a trial by jury and such other relief to which the Plaintiff may be justly entitled.

### CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing Amended Complaint was efiled with the Clerk of the U. S. District Court of the Eastern District of Louisiana and a copy hereof was mailed to Barbara Bolton Litten, Esquire, Steel, Hector & Davis, LLP, 200 So.

Biscayne Blvd., Ste. 4000, Miami, FL 33131-2398 on this 20th day of June, 2006.


        /s/ Joseph H. Saunders _____
        Joseph H. Saunders, Esquire
        SAUNDERS & WALKER, P.A.
        Post Office Box 1637
        Pinellas Park, FL 33780-1637
        (727) 579-4500 FAX: (727) 577-9696
        FBN 341746 SPN 228977
        Attorney for Plaintiff