**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: VIOXX** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| | * | |
| **This document relates to** | * | **MAGISTRATE JUDGE KNOWLES** |
| | * | |
| **Gerald D. Barnett v. Merck & Co, Inc.** | * | **CASE NO. 06-0485** |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE FOR ORDER EXCLUDING EVIDENCE RELATING TO
THE *NEW ENGLAND JOURNAL OF MEDICINE'S* DECEMBER 2005
"EXPRESSION OF CONCERN"**

*(Plaintiff's Opposition to Defendant's Motion in Limine No. 4)*

---

Plaintiff Gerald Barnett hereby opposes Defendant's Motion in Limine to exclude evidence relating to the *New England Journal of Medicine's* December, 2005 "Expression of Concern." Evidence relating to the "Expression of Concern" is relevant and not unfairly prejudicial. Evidence relating to the "Expression of Concern" is admissible under Federal Rule of Evidence 803(18). As such, Merck's motion is due to be denied.

**ARGUMENT**

I.   <u>The "Expression of Concern" Is Relevant</u>

Merck argues that the "Expression of Concern" is not relevant to the questions at issue in this case. Merck's argument is without merit.

1

Plaintiff began taking Vioxx in January 2000, months prior to the VIGOR results becoming public. In March 2000, after receiving the VIGOR results, Merck became aware that the VIGOR trial showed that those patients taking Vioxx experienced 5 times more heart attacks than those taking naproxen. Merck was put on notice (though 090 and other studies should have done this already) that there were serious cardiovascular (CV) safety concerns associated with Vioxx. This evidence reveals Merck's notice and knowledge of the cardiovascular safety dangers associated with Vioxx.

In November 2000, the VIGOR results were published in the *New England Journal of Medicine* with Merck's Dr. Alise Reicin as one of the co-authors of the study. From the "Expression of Concern" and Dr. Gregory Curfman's testimony, it is clear that the number of heart attacks reported in the study were incorrect. The authors understated the number of heart attacks experienced by patients taking Vioxx by 3. "The fact that these three myocardial infarctions were not included made certain calculations and conclusions in the article incorrect." Gregory D. Curfman, et al., "Expression of Concern: Bombardier et al, "Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis, N Engl J Med 2000; 343:1520-8." N Engl J Med 2005; 353:2813-4, at 2813 (Exhibit A.)

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998); *U.S. v. Chavful*, 100 Fed.Appx. 226, 231 (5th Cir. 2004); Fed.R.Evid. 401. "Thus, if probative of _any_ fact that is of consequence to the determination of the action, evidence is relevant within the meaning of the Federal Rules, and is therefore admissible." *Lubbock Feed*

2

*Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 267 (5th Cir. 1980) (internal quotation omitted) (emphasis added). To say that evidence is irrelevant in the sense that it lacks probative value therefore means that it does not justify *any* reasonable inference as to the fact in question. See McCormick on Evidence, § 185 at 544 (3rd dd. 1984) (emphasis added). Conversely, if evidence does support the existence of a specific fact, even obliquely, it is relevant.

The VIGOR article misrepresented vital safety data to physicians and the healthcare community. Evidence relating to the "Expression of Concern" is clearly relevant to Plaintiff's failure to warn and defect claims. For Merck to suggest otherwise is simply disingenuous.

## II.    Evidence of the Expression of Concern Is Admissible Under Rule 803(6)

Federal Rule of Evidence 803(18) states:

> (18) **Learned treatises**. To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

It is without question that *The New England Journal of Medicine* is a reliable authority. It is one of the premier medical periodicals in the world. Numerous experts in this case have testified to that fact. See *Carroll v. Morgan,* 17 F.3d 787, 790 (5th Cir. 1994). It is believed that the Court has taken judicial notice that *The New England Journal of Medicine* is a reliable authority in the medical field. Testimony regarding other articles published in *The New England Journal of Medicine* has been allowed during previous trials.

3

The "Expression of Concern" is a statement made in a periodical of reliable authority. Plaintiff's experts have relied on the "Expression of Concern." The "Expression of Concern" was written by Dr. Gregory Curfman, Dr. Stephen Morrissey, and Dr. Jeffrey Drazen, all editors of *The New England Journal*. The "Expression of Concern" was peer-reviewed. See Dep. of Dr. Gregory Curfman, at 77-78 (Jan. 24, 2006) (Exhibit B). The "Expression of Concern" is authoritative. Therefore, evidence relating to the "Expression of Concern" should be allowed.

In accordance with Rule 803(18), it is understood that the article itself should not be admitted into evidence. Testimony regarding the "Expression of Concern," however, should be allowed. In addition, in conjunction with that testimony, Plaintiff should be allowed to publish the document to the jury.

### III.    Admission of Evidence Relating to the "Expression of Concern" Would Not Cause Undue Prejudice, Confusion, or Waste Time

Merck's alternative argument is that evidence of the "Expression of Concern" should be excluded under Rule 403, should also be rejected. Virtually all evidence is prejudicial or it is not material. The prejudice must be "unfair." *Dollar v. Long Manufacturing, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest (a) decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee on Proposed Federal Rules of Evidence, Rule 403 at 102. Just because the evidence is damaging or prejudicial to Merck's case does not mean that the evidence should be excluded. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

In relevant part, Federal Rule of Evidence 403 directs that relevant evidence is

inadmissible if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. Fed. R. Evid. 403. The careful use of "substantially" demonstrates the emphasis placed on this balancing test. "Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence." *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994). As this Court has noted, "Rule 403 rulings are best made at the time of trial when the Court may balance relevant factors before it." *Minshew v. Brown*, NO. 95-2507, 1996 WL 601436 (E.D. La. 1996) (Fallon, J.).

Evidence relating to the "Expression of Concern" is clearly relevant to Plaintiff's failure to warn and defect claims. Such evidence will not result in confusion to the jury. The situation is quite clear – in order to minimize the CV safety concerns associated with Vioxx, authors of the VIGOR article, including Dr. Alise Reicin, understated the number of heart attacks that took place among patients taking Vioxx during the study. Instead of publishing an article that clearly communicated that during the VIGOR trial, persons taking Vioxx had 5 times more heart attacks than persons taking naproxen, the authors touted an otherwise unproven theory that naproxen is cardioprotective, and misrepresented the number of heart attacks. This is clearly relevant to Plaintiff's failure to warn claim as well as to his defect claim. Furthermore, though the "Expression of Concern," is prejudicial to Merck, it is not unfairly prejudicial. It simply lays out the truth of what happened in relation to VIGOR. Such evidence will not confuse the jury but will give them necessary context and insight as they evaluate Dr. Reicin's credibility and Merck's lack of commitment to scientific integrity.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Merck's motion.

Date:  June 19, 2006

Respectfully submitted,

By _____
Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California  92660
Telephone:  (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama  36103-4160
Telephone:  (334) 269-2343
Facsimile: (334) 954-7555

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Counsel for Plaintiff

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants'

Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs'

Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically

uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order

No. 8, on this 19th day of June, 2006.

MARK P. ROBINSON, JR.
State Bar No. 054426
Attorney for Plaintiff
Robinson, Calcagnie & Robinson

EDITORIALS

# Expression of Concern: Bombardier et al., "Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis," N Engl J Med 2000;343:1520-8.

Gregory D. Curfman, M.D., Stephen Morrissey, Ph.D., and Jeffrey M. Drazen, M.D.

We have recently obtained information regarding inaccuracies in data in the report of the VIGOR (Vioxx Gastrointestinal Outcomes Research) study by Bombardier et al.[1] that raise concern about certain conclusions in the article.

The VIGOR study was designed primarily to compare gastrointestinal events in patients with rheumatoid arthritis randomly assigned to treatment with rofecoxib (Vioxx) or naproxen (Naprosyn), but data on cardiovascular events were also monitored. Three myocardial infarctions, all in the rofecoxib group, were not included in the data submitted to the Journal. The editors first became aware of the additional myocardial infarctions in 2001 when updated data were made public by the Food and Drug Administration.

Until the end of November 2005, we believed that these late events that were not known to the authors in time to be included in the article published in the Journal on November 23, 2000. It now appears, however, from a memorandum dated July 5, 2000, that was obtained by subpoena in the Vioxx litigation and made available to the Journal, that at least two of the authors knew about the three additional myocardial infarctions at least two weeks before the authors submitted the first of two revisions and 4½ months before publication of the article. Given this memorandum, it appears that there was ample time to include the data on these three additional infarctions in the article.

The fact that these three myocardial infarctions were not included made certain calculations and conclusions in the article incorrect. Although only summary percentages, not actual numbers of myocardial infarctions, were included in the Journal article, the following tables display the numerical data without (Table 1) and with (Table 2) the three myocardial infarctions.

Lack of inclusion of the three events resulted in an understatement of the difference in risk of myocardial infarction between the rofecoxib and naproxen groups (presented in the article as a reduction in the risk with naproxen but shown here as an increase in the risk with rofecoxib). It also resulted in the misleading conclusion that there was a difference in the risk of myocardial infarction between the aspirin indicated and aspirin not indicated groups.

In addition, the memorandum of July 5, 2000,

| Study Group | Person-Years of Exposure | No. of Myocardial Infarctions | Relative Risk | 95% CI |
|---|---|---|---|---|
| Total | | | | |
| Rofecoxib | 2315 | 17 | 4.25 | 1.39 to 17.37 |
| Naproxen | 2316 | 4 | | |
| Aspirin indicated | | | | |
| Rofecoxib | | 8 | | 1.75 to |
| Naproxen | 92 | 0 | | |
| Aspirin not indicated | | | | |
| Rofecoxib | 2220 | 9 | 2.25 | 0.63 to 10.02 |
| Naproxen | 2224 | 4 | | |

\* The numbers of person-years of exposure as of February 10, 2000, have been estimated. Relative risks were estimated by Poisson regression; confidence intervals were calculated by the exact method.

| Table 2. Data on Myocardial Infarctions Including the Three Events.[*] | | | | |
|---|---|---|---|---|
| Study Group | Person-Years of Exposure | No. of Myocardial Infarctions | Relative Risk | 95% CI |
| Total | | | | |
| Rofecoxib | 2698 | 20 | 5.00 | 1.68 to 20.13 |
| Naproxen | 2699 | 4 | | |
| Aspirin indicated | | | | |
| Rofecoxib | | 8 | | 1.68 to |
| Naproxen | 102 | 0 | | |
| Aspirin not indicated | | | | |
| Rofecoxib | 2595 | 12 | 3.00 | 0.91 to 12.78 |
| Naproxen | 2597 | 4 | | |

\* Relative risks were estimated by Poisson regression; confidence intervals were calculated by the exact method.

2813



EXHIBIT NO. 3
1-24-06
L. GOLKOW

NEJM 000374

contained other data on cardiovascular adverse events that we believe would have been relevant to the article. We determined from a computer diskette that some of these data were deleted from the VIGOR manuscript two days before it was initially submitted to the Journal on May 18, 2000.

Taken together, these inaccuracies and deletions call into question the integrity of the data on adverse cardiovascular events in this article. We have asked the authors to submit a correction to the Journal.

1. Bombardier C, Laine L, Reicin A, et al. Comparison of upper gastrointestinal toxicity of rofecoxib and naproxen in patients with rheumatoid arthritis. N Engl J Med 2000;343:1520-8.
Copyright © 2005 Massachusetts Medical Society.

NEJM 000375

Confidential - Subject to Protective Order

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX LITIGATION:  MDL DOCKET
                          NO. 1657
----------------------------------------

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - ATLANTIC COUNTY

- - -

IN RE: VIOXX LITIGATION : CASE NO. 619
----------------------------------------
CROSS NOTICED IN VARIOUS OTHER ACTIONS
----------------------------------------

- - -
            CONFIDENTIAL
    SUBJECT TO PROTECTIVE ORDER
           - - -
        January 24, 2006
           - - -

        Videotape deposition of GREGORY D.

CURFMAN, M.D., held in the offices of

Brown Rudnick, Berlack, Israels, LLP, One

Financial Center, Boston, Massachusetts

02111, commencing at 10:20 a.m., on the

above date, before Linda L. Golkow, a

Federally-Approved Registered Diplomate

Reporter and Certified Shorthand

Reporter.

              - - -

        GOLKOW LITIGATION TECHNOLOGIES
              Four Penn Center
        1600 John F. Kennedy Boulevard
                 Suite 1210
        Philadelphia, Pennsylvania 19103
               (215) 988-9191

PLAINTIFF'S
EXHIBIT
bobbie
B

Confidential - Subject to Protective Order

Page 2

```
 1    A P P E A R A N C E S :
 2
          LIEFF, CABRASER, HEIMANN &
 3        BERNSTEIN, LLP
          BY:   DONALD C. ARBITBLIT, ESQUIRE
 4        Embarcadero Center West
          275 Battery Street - Suite 3000
 5        San Francisco, CA  94111-3339
          (415) 956-1000
 6                    and
          LIEFF, CABRASER, HEIMANN &
 7        BERNSTEIN, LLP
          BY: JENNIFER GROSS, ESQUIRE
 8        48th Floor - 780 Third Avenue
          New York, New York 10017-2024
 9        (212) 355-9500
          Counsel for Plaintiffs
10
11
          BEASLEY, ALLEN, CROW, METHVIN,
12        PORTIS & MILES
          BY:   W. ROGER SMITH, ESQUIRE
13        218 Commerce Street
          Montgomery, Alabama 36103-4160
14        (334) 269-2343
          Counsel for Plaintiffs
15
16
          WILENTZ GOLDMAN & SPITZER
17        BY: ERIC H. WEINBERG, ESQUIRE
          90 Woodbridge Center Drive
18        Woodbridge, New Jersey 07095
          (732) 636-8000
19        Counsel for Plaintiffs
20
21        PHILIP F. MULVEY, JR., Ph.D., J.D.
          536 Main Street
22        Falmouth, Massachusette 02540
          (508) 457-0998
23        Counsel for Plaintiffs
24
                    -  -  -
```

Confidential - Subject to Protective Order

1    A P P E A R A N C E S:   (CONTINUED)
2
3         GOFORTH LEWIS SANFORD LLP
          BY:  MARCUS L. STEVENSON, J.D.,
4         L.L.M.
          Suite 2200
5         1111 Bagby
          Houston, Texas 77002
6         (713) 650-0022
          Counsel for Plaintiffs
7         (By Telephone)
8
9         THE BEASLEY FIRM LLC
          BY:  SCOTT D. LEVENSTEN, ESQUIRE
10        1125 Walnut Street
          Philadelphia, Pennsylvania 19107
11        (215) 592-1000
          Counsel for Plaintiffs
12        (By Telephone)
13
14        BROWN RUDNICK BERLACK ISRAELS LLP
          BY:  PAUL W. SHAW, ESQUIRE
15                      and
               SETH N. STRATTON, ESQUIRE
16                      and
               RACHEL A. LIPTON, ESQUIRE
17                      and
               GREGORY T. ARNOLD, ESQUIRE
18        One Financial Center
          Boston, Massachusetts 02111
19        (617) 856-8200
          Counsel for the New England of
20        Medicine, and the Witness, Gregory
          D. Curfman, M.D.
21
22
23
                        -   -   -
24

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

1    A P P E A R A N C E S (CONTINUED)

2

3        BARTLIT BECK HERMAN
         BY:  PHILIP S. BECK, ESQUIRE
4                   and
             CARRIE A. JABLONSKI, ESQUIRE
5        54 West Hubbard Street
         Chicago, Illinois 60610
6        (312) 494-4451
         Counsel for Merck and Co., Inc.

7

8

         O'BRYAN, BROWN & TONER, PLLC
9        BY:  DONALD K. BROWN, JR., ESQUIRE
                      and
10           JOSEPH C. KLAUSING, ESQUIRE
         Suite 1500 Starks Building
11       Louisville, Kentucky 40202
         (502) 585-4700
12       Counsel for various Kentucky
         physicians

13

14

         JOHNSON, SPALDING, DOYLE, WEST &
15       TRENT
         BY:  JOHN E. SPALDING, ESQUIRE
16       Suite 1700 - 910 Travis Street
         Houston, Texas 77002
17       (713) 222-2323
         Counsel for various physicians

18

19

         PHILLIPS PARKER ORBERSON & MOORE,
20       P.L.C.
         BY:  SEAN RAGLAND, ESQUIRE
21       Suite 300 - 716 West Main Street
         Louisville, Kentucky 40202
22       (502) 583-9900
         Counsel for AHS Samaritan Hospital
23       LLC d/b/a Samaritan Hospital
         (By Telephone)

24

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

1  A P P E A R A N C E S:   (CONTINUED)
2
3          STINNETT THIEBAUD & REMINGTON LLP
           BY:  MATTHEW R. FILPI, ESQUIRE
4          Suite 2500
           1445 Ross Avenue
5          Dallas, Texas 75202
           (214) 954-2200
6          Counsel for Texas physicians
           (By Telephone)
7
8
           EVANS & ROWE
9          BY:  NATHAN KETTERLING, ESQUIRE
           Suite 900
10         10101 Reunion Place
           San Antonio, Texas 78216
11         (210) 340-6555
           Counsel for Texas physicians
12         (By Telephone)
13
14         DARBY AND GAZAK, P.S.C.
           BY:  JAMES E. SMITH, ESQUIRE
15         Suite 226
           10400 Linn Station Road
16         Louisville, Kentucky 40223
           (502) 412-5020
17         Counsel for physicians
           (By Telephone)
18
19
           JENKINS PISACANO ROBINSON & BAILEY
20         BY:  TONYA CONNER RAGER, ESQUIRE
           Suite 100, Court Square Building
21         269 West Main Street
           Lexington, Kentucky 40507
22         (859) 225-9625
           Counsel for Physicians
23         (By Telephone)
24                    -  -  -

Golkow Litigation Technologies

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

Page 6

```
 1   A P P E A R A N C E S:  (CONTINUED)
 2
         PORTER, SCHMITT, BANKS & BALDWIN
 3       BY:  MICHAEL J. SCHMITT, ESQUIRE
         327 Main Street
 4       Paintsville, Kentucky 41240
         (606) 789-3747
 5       Counsel for Raghu Sundaram, M.D.
         (By Telephone)
 6
 7
         WHONSETLER & JOHNSON PLLC
 8       BY:  CRAIG L. JOHNSON, ESQUIRE
         Suite E
 9       6011 Brownsboro Park Boulevard
         Louisville, Kentucky 40207
10       (502) 895-2297
         Counsel for Dr. Nadar
11       (By Telephone)
12
13       PAM MAY LAW FIRM P.S.C.
         BY:  ERICH BLACKBURN, ESQUIRE
14       3rd Floor, U.S. Bank Building
         131 Main Street
15       Pikeville, Kentucky 41502
         (606) 432-0400
16       Counsel for Appalachian Regional
         Healthcare, Inc. and Drs.
17       Sanford Weiler and George Bellamy
         (By Telephone)
18
19
         HOLE & ALVAREZ
20       BY:  CHERYL D. HOLE, ESQUIRE
         Suite 370
21       612 W. Nolana
         Mcallen, Texas 78504
22       (956-631-2891
         Counsel for Dr. Posada and Dr.
23       Evans
         (By Telephone)
24
                        -  -  -
```

Golkow Litigation Technologies

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

1   A P P E A R A N C E S: (CONTINUED)
2
3          TRIONA CALDERHEAD & LOCKEMEYER
           BY:   JOEL L. PESCHKE, ESQUIRE
4          200 Techne Center Drive
           Milford, Ohio 45150-2790
5          (513) 576-1060
           Counsel for Dr. Gregory DiLorenzo
6          (By Telephone)
7
8
                        -   -   -
9
    A L S O   P R E S E N T:
10
11         JOSEPH M. APPEL, ESQUIRE
           Massachusetts Medical Society
12         860 Winter Street
           Waltham, Massachusetts 02451-1411
13         (781) 434-7604
14
           STEPHEN MORRISSEY, Ph.D.
15         The New England Journal of
           Medicine
16         10 Shattuck Street
           Boston, Massachusetts 02115
17
18         BARTLIT BECK HERMAN PALENCHAR &
           SCOTT LLP
19         Toni Alford, Legal Assistant
20
21                      -   -   -
22
23
24

Golkow Litigation Technologies

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

1      THE WITNESS:  The truth of

2   the matter is that we released the

3   Expression of Concern when we had

4   all of the data assembled, when we

5   had deliberated, we had the facts

6   in hand.  We very carefully

7   deliberated.  The editors had come

8   together, reviewed all the

9   information that we had, including

10   information that we obtained on

11   November 21st, 2005.  We made our

12   best judgment as editors of the

13   New England Journal of Medicine

14   with many years of experience

15   collectively, and we sat down and

16   wrote the document, the Expression

17   of Concern.  We worked very hard

18   on every word of that document.

19   Every word was a focus.

20      We then had the document

21   peer reviewed by someone who we

22   have a lot of respect for and who

23   is very good with numbers and

24   statistical analysis, who went

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

Page 78

1   over things for us.  And when we
2   finally reached what we considered
3   to be a final version after going
4   through many versions of the
5   Expression of Concern we released
6   it, which is our responsibility as
7   editors under the uniform
8   requirements of the International
9   Committee of Medical Journal
10  Editors.  And that's what we did.
11  We followed the standard protocol
12  that we've followed in the past,
13  and we released the information
14  when we had it ready in order to
15  inform the medical community that
16  we had some concerns about this
17  work and had referred these
18  concerns to the authors of the
19  article for a response.
20       MR. BECK:  Now, again, I got
21  a two-page answer or statement
22  that does not answer my question,
23  which was, were you asked why from
24  the media you released the

Confidential - Subject to Protective Order

1

C E R T I F I C A T E

2

3      I, LINDA L. GOLKOW, a Notary
Public and Certified Shorthand Reporter
4  of the State of New Jersey, do hereby
certify that prior to the commencement of
5  the examination, GREGORY D. CURFMAN, M.D.
was duly sworn by me to testify to the
6  truth, the whole truth and nothing but
the truth.

7

8      I DO FURTHER CERTIFY that the
foregoing is a verbatim transcript of the
9  testimony as taken stenographically by
and before me at the time, place and on
10  the date hereinbefore set forth, to the
best of my ability.

11

12      I DO FURTHER CERTIFY that I am
neither a relative nor employee nor
13  attorney nor counsel of any of the
parties to this action, and that I am
14  neither a relative nor employee of such
attorney or counsel, and that I am not
15  financially interested in the action.

16

17

18

19
_____
      LINDA L. GOLKOW, CSR
20  Notary Number:  1060147
Notary Expiration:  1-2-08
21  CSR Number:  30XI176200
Dated:  January 29, 2006

22

23

24

Golkow Litigation Technologies

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

Confidential - Subject to Protective Order

1          ACKNOWLEDGMENT OF DEPONENT

2

3      I,_____, do
    hereby certify that I have read the
4   foregoing pages, 1 - 331 , and that the
    same is a correct transcription of the
5   answers given by me to the questions
    therein propounded, except for the
6   corrections or changes in form or
    substance, if any, noted in the attached
7   Errata Sheet.

8

9

10

11
    _____
    GREGORY D. CURFMAN, M.D.          DATE
12

13

14

15  Subscribed and sworn
    to before me this
16       day of          , 20   .
17

18

    My commission expires:
19

20

21

22  Notary Public

23

24

1227360a-cb9d-4ab7-be2e-6ca430e14cf7

EDITORIALS

## Expression of Concern: Bombardier et al., "Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis," N Engl J Med 2000;343:1520-8.

Gregory D. Curfman, M.D., Stephen Morrissey, Ph.D., and Jeffrey M. Drazen, M.D.

We have recently obtained information regarding inaccuracies in data in the report of the VIGOR (Vioxx Gastrointestinal Outcomes Research) study by Bombardier et al.[1] that raise concern about certain conclusions in the article.

The VIGOR study was designed primarily to compare gastrointestinal events in patients with rheumatoid arthritis randomly assigned to treatment with rofecoxib (Vioxx) or naproxen (Naprosyn), but data on cardiovascular events were also monitored. Three myocardial infarctions, all in the rofecoxib group, were not included in the data submitted to the *Journal*. The editors first became aware of the additional myocardial infarctions in 2001 when updated data were made public by the Food and Drug Administration.

Until the end of November 2005, we believed that these were late events that were not known to the authors in time to be included in the article published in the *Journal* on November 23, 2000. It now appears, however, from a memorandum dated July 5, 2000, that was obtained by subpoena in the Vioxx litigation and made available to the *Journal*, that at least two of the authors knew about the three additional myocardial infarctions at least two weeks before the authors submitted the first of two revisions and 4½ months before publication of the article. Given this memorandum, it appears that there was ample time to include the data on these three additional infarctions in the article.

The fact that these three myocardial infarctions were not included made certain calculations and conclusions in the article incorrect. Although only summary percentages, not actual numbers of myocardial infarctions, were included in the *Journal* article, the following tables display the numerical data without (Table 1) and with (Table 2) the three myocardial infarctions.

Lack of inclusion of the three events resulted in an understatement of the difference in risk of myocardial infarction between the rofecoxib and naproxen groups (presented in the article as a reduction in the risk with naproxen but shown here as an increase in the risk with rofecoxib). It

also resulted in the misleading conclusion that there was a difference in the risk of myocardial infarction between the aspirin indicated and aspirin not indicated groups.

In addition, the memorandum of July 5, 2000,

| Study Group | Person-Years of Exposure | No. of Myocardial Infarctions | Relative Risk | 95% CI |
|---|---|---|---|---|
| Total | | | | |
| Rofecoxib | 2315 | 17 | 4.25 | 1.39 to 17.37 |
| Naproxen | 2316 | 4 | | |
| Aspirin indicated | | | | |
| Rofecoxib | | 8 | | |
| Naproxen | 92 | 0 | | |
| Aspirin not indicated | | | | |
| Rofecoxib | 2220 | 9 | 2.25 | 0.63 to 10.02 |
| Naproxen | 2224 | 4 | | |

* The numbers of person-years of exposure as of February 10, 2000, have been estimated. Relative risks were estimated by Poisson regression; confidence intervals were calculated by the exact method.

| Study Group | Person-Years of Exposure | No. of Myocardial Infarctions | Relative Risk | 95% CI |
|---|---|---|---|---|
| Total | | | | |
| Rofecoxib | 2598 | 20 | 5.00 | 1.68 to 20.13 |
| Naproxen | 2699 | 4 | | |
| Aspirin indicated | | | | |
| Rofecoxib | | 8 | | 1.66 |
| Naproxen | 102 | 0 | | |
| Aspirin not indicated | | | | |
| Rofecoxib | 2593 | 12 | 3.00 | 0.91 to 12.78 |
| Naproxen | | 4 | | |

* Relative risks were estimated by Poisson regression; confidence intervals were calculated by the exact method.

NEJM 000374



EXHIBIT NO. 3
1-24-06
L. GOLKOW

EDITORIALS

contained other data on cardiovascular adverse events that we believe would have been relevant to the article. We determined from a computer diskette that some of these data were deleted from the VIGOR manuscript two days before it was initially submitted to the Journal on May 18, 2000.

Taken together, these inaccuracies and deletions call into question the integrity of the data

on adverse cardiovascular events in this article. We have asked the authors to submit a correction to the Journal.

1.   Bombardier C, Laine L, Reicin A, et al. Comparison of upper gastrointestinal toxicity of rofecoxib and naproxen in patients with rheumatoid arthritis. N Engl J Med 2000;343:1520-8.
*Copyright © 2005 Massachusetts Medical Society.*

NEJM 000375