| | | | | | | |
|---|---|---|---|---|---|---|
| | | 136: 8 | correction for publication in the | | | |
| | | 136: 9 | Journal, and you ask her to do that by | | | |
| | | 136: 10 | December 22nd; right? | | | |
| | | 136: 11 | A.  That's right. | | | |
| | | 136: 12 | Q.  So, a few weeks after this | | | |
| | | 136: 13 | e-mail; right? | | | |
| | | 136: 14 | A.  Correct. | | | |

| 129 | 137:7 -137:13 | Curfman 01/24/2006 | 00:00:19 | 01:01:31 | 00:39:31 | V3.129 |
|---|---|---|---|---|---|---|
| | | 137: 7 | Q.  You talked before about two | | | |
| | | 137: 8 | earlier or two other Expressions of | | | |
| | | 137: 9 | Concern. | | | |
| | | 137: 10 | A.  Yes. | | | |
| | | 137: 11 | Q.  And let me ask you to take a | | | |
| | | 137: 12 | look at Exhibit 12 -- or am I on 13 now? | | | |
| | | 137: 13 |         Exhibit 13. | | | |

| 130 | 138:5 -139:5 | Curfman 01/24/2006 | 00:01:13 | 01:01:50 | 00:39:12 | V3.130 |
|---|---|---|---|---|---|---|
| | | 138: 5 | Q.  Is that one of the | | | |
| | | 138: 6 | Expressions of Concern that you were | | | |
| | | 138: 7 | talking about? | | | |
| | | 138: 8 | A.  Yes, it is. | | | |
| | | 138: 9 | Q.  Would you agree with me that | | | |
| | | 138: 10 | this one is different in kind from what | | | |
| | | 138: 11 | you published concerning VIGOR? | | | |
| | | 138: 12 | A.  Oh, I think it's very | | | |
| | | 138: 13 | different in kind, yes. | | | |
| | | 138: 14 | Q.  And in this one, you report | | | |
| | | 138: 15 | in a single paragraph that concerns were | | | |
| | | 138: 16 | raised concerning the data published in | | | |
| | | 138: 17 | one of your articles, right? | | | |
| | | 138: 18 | A.  Correct. | | | |
| | | 138: 19 | Q.  And you say, "We have | | | |
| | | 138: 20 | informed the director of Dr. Subdo's" -- | | | |
| | | 138: 21 | A.  Subdo. | | | |
| | | 138: 22 | Q.  -- "Subdo's institution... | | | |
| | | 138: 23 | and await the results of his | | | |
| | | 138: 24 | investigation."  Correct? | | | |
| | | 139: 1 | A.  Correct. | | | |
| | | 139: 2 | Q.  And you do not set forth any | | | |
| | | 139: 3 | conclusions that you reached in advance | | | |
| | | 139: 4 | of hearing from the author's institution; | | | |
| | | 139: 5 | right? | | | |

| 131 | 139:8 -139:11 | Curfman 01/24/2006 | 00:00:05 | 01:03:03 | 00:37:59 | V3.131 |
|---|---|---|---|---|---|---|
| | | 139: 8 |         THE WITNESS:  Oh, there are | | | |
| | | 139: 9 | preliminary conclusions in this | | | |

Curfman G DA 1-24-06 on 5-25-06

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 139:10 | paragraph, yes, that we had | | | | |
| | | 139:11 | reached, yes. | | | | |
| 132 | 139:13-140:10 | Curfman 01/24/2006 | | 00:00:52 | 01:03:08 | 00:37:54 | V3.132 |

139: 13  Q.  Well, the paragraph says,
139: 14  "In the issue of April 26, 2001, we
139: 15  published a study by John Sudbo.  Figure
139: 16  3B and Figure 3C of that article, which
139: 17  purport to represent two different
139: 18  patients and stages of oral" -- what's
139: 19  the next word?
139: 20  A.  -- "epithelial dysplasia."
139: 21  Q.  -- "are in fact different
139: 22  magnifications of the same
139: 23  photomicrogram."
139: 24  A.  That's right.
140: 1  Q.  "Because the results of
140: 2  another study of Dr. Sudbo, published in
140: 3  the issue of April 1, 2004 were derived
140: 4  from the same subjects followed through
140: 5  the same database, we have similar
140: 6  concerns."  Then you say, "We have
140: 7  informed the director...and [we] await
140: 8  the results of his investigation."
140: 9  Right?
140: 10  A.  Uh-huh.

| 133 | 141:6-142:15 | Curfman 01/24/2006 | | 00:01:09 | 01:04:00 | 00:37:02 | V3.133 |
|---|---|---|---|---|---|---|---|

141: 6  Q.  Do you have in front of you
141: 7  the document that I've marked as Exhibit
141: 8  14?
141: 9  A.  Yes.
141: 10  Q.  Was this the other
141: 11  Expression of Concern that you testified
141: 12  about earlier?
141: 13  A.  This is one of the three,
141: 14  yes.
141: 15  Q.  Okay.
141: 16      And we talked about the one
141: 17  concerning VIGOR, we just talked about
141: 18  the one concerning Dr. Sudbo, and this is
141: 19  the third; right?
141: 20  A.  That's right.
141: 21  Q.  This concerns an article by
141: 22  Dr. Schiff; is that right?
141: 23  A.  Schiffl.
141: 24  Q.  Schiffl.  I'm sorry.  What

142: 1    it says is that it has come to your
142: 2    attention that there was an "ongoing
142: 3    investigation into potential scientific
142: 4    misconduct" concerning this article that
142: 5    you published?
142: 6    A.  (Witness nods.)
142: 7    Q.  And you said you will inform
142: 8    your readers of the outcome of the
142: 9    investigation when it's complete.  Right?
142: 10   A.  That's right.
142: 11   Q.  And that investigation that
142: 12   you referred to was the investigation by
142: 13   Dr. Schiffi's sponsoring institution;
142: 14   correct?
142: 15   A.  Correct.

| 134 | 142:16-142:21 | Curfman 01/24/2006 | 00:00:37 | 01:05:09 | 00:35:53 | V3.134 |
|---|---|---|---|---|---|---|

142: 16   Q.  And then later on they told
142: 17   you that they had not found sufficient
142: 18   evidence of misconduct, and you,
142: 19   therefore, retracted the Expression of
142: 20   Concern, right?
142: 21   A.  Right.

| 135 | 143:6-143:6 | Curfman 01/24/2006 | 00:00:20 | 01:05:46 | 00:35:16 | V3.135 |
|---|---|---|---|---|---|---|

143: 6    Q.  Do you recognize Exhibit 15?

| 136 | 143:11-143:21 | Curfman 01/24/2006 | 00:00:26 | 01:06:06 | 00:34:56 | V3.136 |
|---|---|---|---|---|---|---|

143: 11         THE WITNESS: Yes, I do.
143: 12   BY MR. BECK:
143: 13   Q.  Is this a message from you
143: 14   and Dr. Morrissey to Dr. Bombardier
143: 15   informing her of the early release of the
143: 16   Expression of Concern?

T: R-801
R-802
Hearsay

143: 17   A.  It's an e-mail from me and
143: 18   Dr. Morrissey to Dr. Bombardier regarding
143: 19   the release, yes.
143: 20   Q.  What's the date and time of
143: 21   your e-mail to Dr. Bombardier?

| 137 | 144:8-144:16 | Curfman 01/24/2006 | 00:00:23 | 01:06:32 | 00:34:30 | V3.137 |
|---|---|---|---|---|---|---|

144: 8    A.  December 8 at 11:59 a.m.
144: 9    Q.  When do you tell her that
144: 10   the Expression of Concern is going to be
144: 11   released?
144: 12   A.  At 3:00.
144: 13   Q.  So, you gave her three hours
144: 14   and one minute notice?

Curfman G DA 1-24-06 on 5-25-06

144: 15   A.  Of the exact release time,
144: 16   yes.

| 138 | 146:4 -146:12 | Curfman 01/24/2006 | 00:00:21  01:06:55  00:34:07 | V3.138 |

146: 4   Q.  I guess in between 11:59
146: 5   a.m. when you first told her you were
146: 6   going to do it and 3:00 when you did it,
146: 7   did she tell you that that didn't give
146: 8   her time to respond?
146: 9   A.  Well, I don't recall.  I
146: 10   don't think I spoke with her.  I don't
146: 11   recall anything about that.  But --
146: 12   Q.  Please look at Exhibit 16.

π: Hearsay

| 139 | 147:7 -147:24 | Curfman 01/24/2006 | 00:00:39  01:07:16  00:33:46 | V3.139 |

147: 7   Q.  This is an e-mail from Dr.
147: 8   Bombardier to Mr. Morrissey.
147: 9   A.  Dr. Morrissey.
147: 10   Q.  Dr. Morrissey, excuse me.
147: 11       It says, "Dr. Morrissey,
147: 12   Thank you for sending this in advance,
147: 13   given the nature of your expression of
147: 14   concern, we want the opportunity to
147: 15   respond but as you can well imagine it
147: 16   will not be possible to respond by the
147: 17   deadline of 3:00 p.m. this afternoon."
147: 18       Did Dr. Morrissey
147: 19   communicate to you this message from Dr.
147: 20   Bombardier?
147: 21   A.  Yes, he did.
147: 22   Q.  But you went ahead with the
147: 23   publication anyway at 3 p.m., didn't you?
147: 24   A.  Yes, we did.

π: R.801
R.802
Hearsay

π: R.611 -Leading

| 140 | 149:12 -149:16 | Curfman 01/24/2006 | 00:00:13  01:07:55  00:33:07 | V3.140 |

149: 12   Q.  Did you personally decide to
149: 13   go ahead with the publication, even
149: 14   though she had told you, the New England
149: 15   Journal of Medicine, that she wanted an
149: 16   opportunity to respond in advance?

π: Improper Compound Question

| 141 | 149:19 -150:1 | Curfman 01/24/2006 | 00:00:11  01:08:08  00:32:54 | V3.141 |

149: 19       THE WITNESS:  The final
149: 20   decision -- the final decision, as
149: 21   is always the case at the New
149: 22   England Journal about any
149: 23   decisions, comes from the
149: 24   editor-in-chief.  And I'm not the

Curfman G DA 1-24-06 on 5-25-06

| | | | | | | |
|---|---|---|---|---|---|---|
| | 150: 1 | editor-in-chief. | | | | |
| 142 | 150:20 -150:24 | Curfman 01/24/2006 | 00:00:25 | 01:08:19 | 00:32:43 | V3.142 |
| | 150: 20 | Q.  Later on, were you involved | | | | |
| | 150: 21 | in sending Dr. Bombardier a seven-point | | | | |
| | 150: 22 | letter telling her what points the New | | | | |
| | 150: 23 | England Journal of Medicine wanted her to | | | | |
| | 150: 24 | make when she responded? | | | | |
| 143 | 151:1 -151:16 | Curfman 01/24/2006 | 00:00:55 | 01:08:44 | 00:32:18 | V3.143 |
| | 151: 1 | A.  Yes.  She had -- my | | | | |
| | 151: 2 | recollection is that she had asked for | | | | |
| | 151: 3 | additional clarification from us about | | | | |
| | 151: 4 | what specifically we wanted her to | | | | |
| | 151: 5 | respond to.  Up until that time, we had | | | | |
| | 151: 6 | only given her a copy of the Expression | | | | |
| | 151: 7 | of Concern itself.  And she wanted more | | | | |
| | 151: 8 | guidance from us about our points of | | | | |
| | 151: 9 | concern.  And in response to that | | | | |
| | 151: 10 | request, I believe Dr. Morrissey and I | | | | |
| | 151: 11 | were the authors of that seven-point | | | | |
| | 151: 12 | document that you mentioned.  And we | | | | |
| | 151: 13 | tried to bring out in that document some | | | | |
| | 151: 14 | additional explanation of our reasons for | | | | |
| | 151: 15 | concern about the article so that that | | | | |
| | 151: 16 | could focus her response more directly. | | | | |
| 144 | 151:24 -152:1 | Curfman 01/24/2006 | 00:00:06 | 01:09:39 | 00:31:23 | V3.144 |
| | 151: 24 | Q.  Please look at Exhibit 17. | | | | |
| | 152: 1 | Do you recognize that? | | | | |
| 145 | 152:4 -152:16 | Curfman 01/24/2006 | 00:00:35 | 01:09:45 | 00:31:17 | V3.145 |
| | 152: 4 | Well, this, I think, begins | | | | |
| | 152: 5 | with an e-mail from Dr. Bombardier to me | | | | |
| | 152: 6 | and Dr. Morrissey along the lines of what | | | | |
| | 152: 7 | I just said, requesting some | | | | |
| | 152: 8 | additional -- I mean, we can read this. | | | | |
| | 152: 9 | Q.  We could, but what you had | | | | |
| | 152: 10 | said was she asked you for guidance about | | | | |
| | 152: 11 | how she should respond.  In fact, if you | | | | |
| | 152: 12 | read this, what she asks you for is a | | | | |
| | 152: 13 | copy of the information that you referred | | | | |
| | 152: 14 | to in your Expression of Concern so that | | | | |
| | 152: 15 | she could write her own response.  Isn't | | | | |
| | 152: 16 | that true? | | | | |
| 146 | 153:2 -154:17 | Curfman 01/24/2006 | 00:01:15 | 01:10:20 | 00:30:42 | V3.146 |
| | 153: 2 | THE WITNESS: Okay. Well, | | | | |
| | 153: 3 | what she says is that "You | | | | |

Handwritten annotations (right margin):

π: R. 801
R. 802
→ Hearsay

π: Improper Compound Question
Rule 611 - Leading question
→ Improper. Dr. Curfman is an
independent 3rd party not
an adverse/hostile witness.

Curfman G DA 1-24-06 on 5-25-06

153: 4     requested a submission from the
153: 5     authors of that study that
153: 6     addresses the additional data and
153: 7     the issues set forth in the
153: 8     Expression of Concern that you
153: 9     published this week, and I agreed
153: 10    to your request as lead author of
153: 11    that study.
153: 12       "We have already started on
153: 13    that task, and I seek your
153: 14    assistance for the project.  In
153: 15    order for us to fully and properly
153: 16    evaluate the data and the issues,
153: 17    we will need to have copies of all
153: 18    the materials that the New England
153: 19    Journal of Medicine has that you
153: 20    referred to in your telephone call
153: 21    as well as those to which the
153: 22    Expression of Concern referred.
153: 23    While you suggested earlier that
153: 24    we obtain these materials from
154: 1     Merck, in light of the questions
154: 2     that you have raised about
154: 3     confidence in the provenance of
154: 4     data and information, we believe
154: 5     that it is essential for us to
154: 6     obtain such materials directly
154: 7     from the New England Journal of
154: 8     Medicine in order to ensure that
154: 9     the material we are reviewing is
154: 10    in fact the same data that is
154: 11    referred to in your Expression of
154: 12    Concern."
154: 13    BY MR. BECK:
154: 14    Q.  You agree, sir, that all she
154: 15    asked you for here was a copy of the data
154: 16    and the materials that you referenced in
154: 17    your Expression of Concern?

*π: R. 611 - Leading*

| 147 | 154:22 -154:22 | Curfman 01/24/2006 | 00:00:01 | 01:11:35 | 00:29:27 | V3.147 |
|-----|----------------|--------------------|----------|----------|----------|--------|
|     |                | 154: 22   A.  Yes. | | | | |

| 148 | 156:2 -156:4 | Curfman 01/24/2006 | 00:00:09 | 01:11:36 | 00:29:26 | V3.148 |
|-----|--------------|--------------------|----------|----------|----------|--------|
|     |              | 156: 2   Q.  So, point number 7 of your | | | | |
|     |              | 156: 3   seven-point letter to her basically said | | | | |
|     |              | 156: 4   get these from the Merck lawyer; right? | | | | |