205: 22 Q. What does the guideline say
205: 23 as to the number of tables?
205: 24 A. We generally go for five or
206: 1 six tables in the print version. We can
206: 2 publish additional information on our
206: 3 website, or sometimes we will publish
206: 4 additional tables in print as well.

---

190 **206:9 - 206:17** Curfman 01/24/2006 00:00.16 01:29.38 00:11.24 V3.190

206: 9 Q. You say there's a guideline
206: 10 of five or six. You know that that's not
206: 11 true, don't you? You know the guideline
206: 12 is five, right?
206: 13 A. Well, the guideline in that
206: 14 information of authors at that time
206: 15 probably said five.
206: 16 Q. Well, you know it said five,
206: 17 don't you?

→ Rule 611 - Leading question improper. Dr. Curfman is an independent 3rd party not an adverse/hostile witness.

---

191 **207:3 - 207:10** Curfman 01/24/2006 00:00.12 01:29.54 00:11.08 V3.191

207: 3 THE WITNESS: The letter
207: 4 that I send out to the authors at
207: 5 the moment says five or six.
207: 6 BY MR. BECK:
207: 7 Q. How about back in 2000 when
207: 8 VIGOR was written, what was the guideline
207: 9 then?
207: 10 A. It was probably five then.

→ Asked and answered

---

192 **209:2 - 209:3** Curfman 01/24/2006 00:00.25 01:30.06 00:10.56 V3.192

209: 2 Q. The next exhibit is Exhibit
209: 3 Number 19.

---

193 **211:19 - 212:6** Curfman 01/24/2006 00:00.27 01:30.31 00:10.31 V3.193

211: 19 And do you see here in the
211: 20 very middle of the page that the VIGOR
211: 21 authors -- up at the top it says,
211: 22 "Suggestion for Transmittal to Authors."
211: 23 Right? Right?
211: 24 A. Yes.
212: 1 Q. Assuming that the suggestion
212: 2 was followed, right there in the middle
212: 3 of the page, it says, "The total number
212: 4 of figures plus tables should not total
212: 5 more than five." Do you see that?
212: 6 A. Yes.

→ Improper compound question.

---

194 **214:1 - 214:3** Curfman 01/24/2006 00:00.05 01:30.58 00:10.04 V3.194

214: 1 So, look through Exhibit 1

214: 2 and tell the jury how many tables there
214: 3 were in the VIGOR article

---

195 **214:6 - 214:8** Curfman 01/24/2006 00:00:16 01:31:03 00:09:59 V3 195

214: 6 There were five tables and
214: 7 one figure for a total of six pieces of
214: 8 documentation.

---

196 **217:5 - 218:11** Curfman 01/24/2006 00:01:13 01:31:19 00:09:43 V3 196

217: 5 Q. Look at Exhibit 20. Is
217: 6 Exhibit 20 some comments by a reviewer,
217: 7 or is this a direct communication from an
217: 8 editor of the New England Journal of
217: 9 Medicine to the lead author of the VIGOR
217: 10 publication?
217: 11 A. It is a letter from
217: 12 associate editor Marshall Kaplan to the
217: 13 corresponding author of the VIGOR
217: 14 article, correct.

→ Rule 611 - Leading question improper. Dr. Curfman is an independent 3rd party not an adverse/hostile witness. Improper compound question.

217: 15 Q. And Marshall Kaplan, in
217: 16 terms of this time frame in June of
217: 17 2000 --
217: 18 A. Right.
217: 19 Q. -- in terms of
217: 20 communications with Dr. Bombardier,
217: 21 Marshall Kaplan was really the voice of
217: 22 the New England Journal of Medicine,
217: 23 right?
217: 24 A. He was the associate editor,
218: 1 yes.

→ Rule 611 - Leading question improper. Dr. Curfman is an independent 3rd party not an adverse/hostile witness.

218: 2 Q. But he was the one who was
218: 3 in charge of communicating the views and
218: 4 instructions --
218: 5 A. In this particular letter
218: 6 Q. -- of the New England
218: 7 Journal of Medicine to the author, Dr.
218: 8 Bombardier --
218: 9 A. He wrote this letter, yes.
218: 10 Q. -- Dr. Bombardier, right?
218: 11 A. Yes. Uh-huh.

→ Rule 611 - Leading question improper. Dr. Curfman is an independent 3rd party not an adverse/hostile witness.

---

197 **219:18 - 219:24** Curfman 01/24/2006 00:00:12 01:32:32 00:08:30 V3 197

219: 18 Q. And why don't you read the
219: 19 rest of that sentence that talks about
219: 20 how it should be no longer than 3,000
219: 21 words. What does it say right after
219: 22 that?

219: 23 A. "With a total of no more
219: 24 than five figures and tables." And I

---

198 **221:10 -221:15** Curfman 01/24/2006 00.00.44 01 32.44 00:08.18 V3 198

221: 10 Q. Doctor, on the subject of
221: 11 the significance of the deletion of Table
221: 12 5, did Dr. Drazen tell you that he
221: 13 thought that that whole subject did not
221: 14 even have enough significance to be
221: 15 mentioned in the Expression of Concern?

R. 801
R. 802
Hearsay

---

199 **221:18 -221:19** Curfman 01/24/2006 00:00:03 01:33:28 00.07 34 V3 199

221: 18 THE WITNESS: Not to my
221: 19 knowledge

---

200 **222:3 -223:6** Curfman 01/24/2006 00.01:20 01.33.31 00.07.31 V3.200

222: 3 Q. I've handed you Exhibit 22.
222: 4 Do you see that this is an e-mail from
222: 5 Dr. Drazen, the editor-in-chief, to you
222: 6 and Dr. Morrissey, "Subject: Expression
222: 7 of Concern"?
222: 8 A. I do, yes.
222: 9 Q. And it's dated December 4th
222: 10 Was that pretty early in the drafting of
222: 11 the Expression of Concern?
222: 12 A. That was still pretty early,
222: 13 yes.
222: 14 Q. Okay.
222: 15 And do you see here on the
222: 16 e-mail he's attached a document. And
222: 17 when explaining his attachment, he says,
222: 18 "I attach another edited version of the
222: 19 expression. The biggest change is the
222: 20 deletion of the stuff about Table 5. I
222: 21 think it attributes more to this table
222: 22 than it deserves and the numbers speak
222: 23 for themselves. This piece is cleaner
222: 24 without it."
223: 1 So, does that refresh your
223: 2 recollection that the editor-in-chief of
223: 3 the New England Journal told you that he
223: 4 didn't think that the stuff about Table 5
223: 5 was even significant enough to be
223: 6 included in the Expression of Concern?

---

201 **223:9 -223:17** Curfman 01/24/2006 00.00.18 01 34 51 00 06 11 V3 201

223. 9 THE WITNESS. He changed his
223: 10 mind

BY MR. BECK.

Q. Well, my question is, does this refresh your recollection that, in fact, he told you, at least on December 4th, that this whole table 5 stuff was not even a big enough deal to be included in the Expression of Concern?

---

| 202 | **224:19 - 224:22** | Curfman 01/24/2006 | 00:00:12 | 01:35:09 | 00:05:53 | V3.202 |
|---|---|---|---|---|---|---|

A. Yes. That's what he said. I, frankly, don't exactly remember this e-mail because he changed his mind, and we did include the material on Table 5.

---

| 203 | **225:18 - 226:19** | Curfman 01/24/2006 | 00:01:15 | 01:35:21 | 00:05:41 | V3.203 |
|---|---|---|---|---|---|---|

Q. And I will show you Exhibit 23, which is the attachment to the e-mail that we just looked at.

A. Yes.

Q. And this is kind of a printed out version of that track changes feature that we talked about, isn't it? This is a draft of the Expression of Concern, and you can see on the right things that have been deleted and things that have been added?

→ Improper compound question.

A. Right. Yep.

Q. Okay.

And do you see over here on this attachment to the editor-in-chief's e-mail to you that that last square over there that shows what was deleted, at least as of December 4, he wanted to take out the entire paragraph having to do with Table 5, right?

A. Yes, at that time. And then he changed his mind. That was an early version. And we went through many versions of this document and a lot of editing was done. The final version, of course, did include that material.

→ R. 801
R. 802
Hearsay

---

| 204 | **236:14 - 236:19** | Curfman 01/24/2006 | 00:00:41 | 01:36:36 | 00:04:26 | V3.204 |
|---|---|---|---|---|---|---|

Q. Let me hand you the next document, Exhibit 26. Now, again, this is a series of e-mails, and you see that you're on these first two at least on

→ Rule 801, 802