UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAG. JUDGE KNOWLES |
| | * | |
| Gerald Barnett v. Merck & Co, Inc. | * | CASE NO. 02:06cv485 |

## Notice of Filing Deposition Testimony of Mark Karavan

Plaintiff, Gerald Barnett, by and through his attorneys, hereby submits the following deposition testimony of Mark Karavan for the Court's consideration and pre-trial rulings:

1. Plaintiff's Affirmative Designations with Defendant's Objections and Plaintiff's Responses.

2. Defendant's Counter-Designations with Plaintiff's Objections.

Plaintiff reserves the right to supplement this designation. Plaintiff reserves the right to offer any deposition testimony of Mark Karavan designated by Defendant Merck & Co., Inc. Plaintiff reserves the right to withdraw any testimony designated herein.

Plaintiff's response to Merck's general objections to the affirmative deposition designations for Mark Karavan, MD:

The Plaintiff has objected to Merck playing speculative opinion testimony of Drs. Mikola, Bryan, Karavan and McCaffrey (all treating doctors) concerning subject matter of which they do not have personal knowledge or sufficient foundation for their speculative opinions. It would be disingenuous for the Plaintiff to attempt to play speculative opinions

supportive of Plaintiff's opinions on the issues, while seeking to exclude speculative opinions offered by Merck. Therefore, some of the opinions that the Plaintiff has offered herein would only be offered if the Court overruled Plaintiff's speculative objections to the Defense designations.

If the Court does exclude the alleged speculative opinions by these doctors, it may be important that the Court pre-instruct the jury before reading from these four depositions about Daubert requirements before this Court would allow opinions on Vioxx causation. Further, it may also be important that the Court inform the jury that these doctors may or may not have their own personal opinions on the issue of Vioxx causation on Plaintiff's heart attack and injuries. Therefore, the Plaintiffs make their proffers of testimony of these four witnesses with these conditional caveats in mind.

When it comes to Dr. Karavan's opinion of whether he can rule out Vioxx as a possible cause of the Plaintiff's heart attack and injuries, this is an opinion separate and apart from the rest. It is an opinion that goes to one of the ultimate issues in the case, namely his subjective understanding of the risk-benefit profile of Vioxx. This opinion has far greater foundation than an opinion from Dr. Bryan, for example, who saw the Plaintiff for a period of several times over one month in September/October 2002 (almost four years ago) regarding the current condition and future prognosis of Mr. Barnett's heart or coronary vessels where he has not seen the May 2006 imaging exams that both sides' experts have reviewed. Dr. Karavan testified in his deposition, had likewise not seen the May 2006 cardiolite exam, CT/Angiogram and echocardiograms performed by Dr. Zipes.

The sequence of Mr. Barnett's diagnostic exams are relevant to the extent to which these doctors should opine. In May 2006, Dr. Zipes performed the most extensive diagnostic imaging that Mr. Barnett has had since September 2002. In May 2006, Mr. Barnett had a

CT/Angiogram which showed that he had a second infarct after his 9/6/02 heart attack, i.e., one of the bypass vein grafts occluded. He also had an echocardiogram which showed a scar on the bottom of his heart and a cardiolite stress test which showed abnormal myocardial perfusion at rest and post-stress, moderate area of mildly reduced perfusion in the inferior and basal inferolateral segments and subtle basal hypokinesis. Other than scattered EKGs, Mr. Barnett had a cardiolite exam on January 24, 2000, a series of enzymes, angiogram, EKGs and a bypass surgery in September 2002, and a cardiolite exam on July 18, 2003. Between July 2003 and May 2006, Mr. Barnett did not have any cardiolite exams, echocardiograms or CT/Angiograms.

As this Court is well aware, we all have hidden conditions in the coronary vessels and heart that need imaging studies to properly assess. As both Defense and Plaintiff's experts have testified, a periodic EKG may tell only a very small part of the story regarding heart damage and coronary artery disease. Therefore, when the Court makes a determination as to what opinions are speculative, we would ask that the Court understand that the May 2006 imaging studies are the only real evidence of Plaintiff's current condition and future prognosis after the 7/18/03 cardiolite exam.

In addition to objecting on the grounds of improper opinion, Defense objects to the Plaintiff's use of Merck internal documents on relevancy and foundational grounds, claiming that because Dr. Karavan had not seen the documents before, that the use of such documents was improper. However, the mere fact that Dr. Karavan had not seen these documents nor been informed of their content by Merck is relevant to show that Merck did not provide Dr. Karavan with the full CV safety profile of Vioxx. That Dr. Karavan was not given the opportunity to understand the potential heart attack risks of Vioxx goes directly to Plaintiff's failure to warn case. Therefore, use of the documents is proper to show that the information

withheld from Dr. Karavan is precisely the information he should have received from Merck at the time he was prescribing Vioxx to the Plaintiff.

Finally, Merck objects to many questions contained within Plaintiff's designated deposition excerpt as leading. Both Plaintiff and Defense have asked leading questions in order to make the issues clear and to avoid the need for many follow-up questions given the time constraints of these depositions. Both sides were able to accomplish in one question what may take four or five questions to do, and both sides have benefited from the clarity these questions have provided. With treating physicians like Dr. Karavan, the Plaintiff would ask the Court's indulgence on these leading questions for both convenience and for the summary of the issues allowed through the use of these questions. The Plaintiff would also ask the Court to understand that both sides have led these treaters, and would therefore ask that if the Court sustains objections on one side, that objections be sustained on both sides.

DATED: June 23, 2006                    Respectfully submitted,

                                        By: /s/ Mark P. Robinson, Jr.
                                        **Mark P. Robinson, Jr.**
                                        Kevin F. Calcagnie
                                        Carlos A. Prietto, III
                                        Ted B. Wacker
                                        Lexi W. Myer
                                        ROBINSON, CALCAGNIE & ROBINSON
                                        620 Newport Center Drive, 7th Floor
                                        Newport Beach, CA 92660
                                        (949) 720-1288 (telephone)
                                        (949) 720-1292 (telecopier)

                                        **Andy D. Birchfield, Jr.**
                                        P. Leigh O'Dell
                                        BEASLEY, ALLEN, CROW,
                                        METHVIN, PORTIS & MILES, P.C.
                                        P.O. Box 4160
                                        234 Commerce Street
                                        Montgomery, AL 36103-4160
                                        (334) 269-2343 (telephone)

                                        **Counsel for Plaintiff**

**Russ M. Herman**, Esquire
Leonard A. Davis, Esquire
Stephen J. Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Carlene Rhodes Lewis, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337) 494-7171 (telephone)
(337) 494-7218 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann and Merck's Counsel, Andrew L. Goldman by e-mail and/or U.S. Mail and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this the 23rd day of June, 2006.

_____
LEXI W. MYER