Curfman G DA 1-24-06 on 5-25-06

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 61:24 | they were actually reading or being | -continued from previous page | | |
| | | 62:1 | informed of the contents of the testimony | | | |
| | | 62:2 | that was coming in during that trial? | | | |

| 46 | 62:5-62:7 | Curfman 01/24/2006 | 00:00:02 | 00:23:08 | 01:17:54 | V3.46 |
|---|---|---|---|---|---|---|
| | | 62:5 | THE WITNESS: I can really | | | |
| | | 62:6 | only speak for myself, and the | | | |
| | | 62:7 | answer is unequivocally no | | | |

| 47 | 62:15-62:16 | Curfman 01/24/2006 | 00:00:01 | 00:23:10 | 01:17:52 | V3.47 |
|---|---|---|---|---|---|---|
| | | 62:15 | Q   I'm handing you what we've | | | |
| | | 62:16 | marked as Exhibit 5 | | | |

| 48 | 62:19-64:10 | Curfman 01/24/2006 | 00:01:28 | 00:23:11 | 01:17:51 | V3.48 |
|---|---|---|---|---|---|---|
| | | 62:19 | Q   Do you see here, sir, that | | | |
| | | 62:20 | this is an e-mail, internal e-mail from | R. 801 | | |
| | | 62:21 | or among the senior editors of the New | R. 802 | | |
| | | 62:22 | England Journal of Medicine? | Hearsay | | |
| | | 62:23 | A   Yes. | | | |
| | | 62:24 | Q   And it's from Dr. Drazen; | | | |
| | | 63:1 | right? | | | |
| | | 63:2 | A   Well, there are two e-mails | | | |
| | | 63:3 | here   Are you talking -- | | | |
| | | 63:4 | Q   The one on the top | | | |
| | | 63:5 | A   The one on the top   Yes | | | |
| | | 63:6 | From Dr. Drazen, yes. | | | |
| | | 63:7 | Q   He's the editor-in-chief of | | | |
| | | 63:8 | the New England Journal of Medicine, | | | |
| | | 63:9 | right? | | | |
| | | 63:10 | A   Yes, he is | | | |
| | | 63:11 | Q   It's dated Saturday, | | | |
| | | 63:12 | December 3rd, correct? | | | |
| | | 63:13 | A   Right. | | | |
| | | 63:14 | Q   And it's to you, right? | | | |
| | | 63:15 | A   Uh-huh. | | | |
| | | 63:16 | Q   And to Dr. Morrissey, | | | |
| | | 63:17 | correct? | | | |
| | | 63:18 | A   Right | | | |
| | | 63:19 | Q   And you would be the three | | | |
| | | 63:20 | top editors of the New England Journal of | | | |
| | | 63:21 | Medicine, right? | | | |
| | | 63:22 | A   We're three of the top | | | |
| | | 63:23 | editors, yes | | | |
| | | 63:24 | Q   And do you see here where | | | |
| | | 64:1 | the editor-in-chief of the New England | | | |
| | | 64:2 | Journal of Medicine is reporting to you | | | |
| | | 64:3 | concerning the contents of the deposition | | | |

**Curfman G DA 1-24-06 on 5-25-06**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 64: 4 | testimony of Dr. Reicin? | | | | |
| | | 64: 5 | A   Uh-huh. | | | | |
| | | 64: 6 | Q   Why was the editor-in-chief | | | | |
| | | 64: 7 | of the New England Journal of Medicine | | Omits answer | | |
| | | 64: 8 | giving you updates concerning the | | | | |
| | | 64: 9 | contents of Dr. Reicin's testimony down | | | | |
| | | 64: 10 | there in the Houston trial? | | | | |

| 49 | 65:9 -65:10 | Curfman 01/24/2006 | | 00.00.02 | 00.24 39 | 01.16.23 | V3 49 |
|---|---|---|---|---|---|---|---|
| | | 65: 9 | Q.  And I will read it into the | | R. 801 | | |
| | | 65: 10 | record. | | R. 802 | | |

| 50 | 65:13 -65:20 | Curfman 01/24/2006 | | 00.00.22 | 00.24.41 | 01.16.21 | V3 50 |
|---|---|---|---|---|---|---|---|
| | | 65: 13 | Q   "Steve and Greg, in her | | | | |
| | | 65: 14 | depositional testimony Reicin says that | | Not a question | | |
| | | 65: 15 | there were also GI events that were not | | | | |
| | | 65: 16 | recorded but came in late.  We should | | | | |
| | | 65: 17 | make this clear in the note of concern | | | | |
| | | 65: 18 | and ask them to provide full reporting of | | | | |
| | | 65: 19 | all data they had on or before October | | | | |
| | | 65: 20 | 13, 2000." | | | | |

| 51 | 66:20 -67:18 | Curfman 01/24/2006 | | 00.00.53 | 00.25.03 | 01.15.59 | V3.51 |
|---|---|---|---|---|---|---|---|
| | | 66: 20 | Q.  You know there are | | Counsel testifying | | |
| | | 66: 21 | depositions, then there are trials | | Improper mention of previous Irvin I trial | | |
| | | 66: 22 | You're in a deposition now.  The thing | | | | |
| | | 66: 23 | that was going down in Houston with a | | | | |
| | | 66: 24 | jury was a trial | | | | |
| | | 67: 1 | Now, when you read this, did | | | | |
| | | 67: 2 | you understand it to refer to trial | | | | |
| | | 67: 3 | testimony by Dr. Reicin or deposition | | | | |
| | | 67: 4 | testimony or which? | | | | |
| | | 67: 5 | A   Well, I'll have to be very | | | | |
| | | 67: 6 | honest with you   I only vaguely remember | | | | |
| | | 67: 7 | this e-mail message.  I remember that it | | | | |
| | | 67: 8 | was on a Saturday late in the morning   I | | | | |
| | | 67: 9 | was working at my desk in my home | | | | |
| | | 67: 10 | Q   Actually, it says 11 31 p m | | | | |
| | | 67: 11 | A   Oh, p m , I'm sorry | | | | |
| | | 67: 12 | Q   Almost midnight he's telling | | | | |
| | | 67: 13 | you about this testimony, right? | | | | |
| | | 67: 14 | A   I don't think I was awake | | | | |
| | | 67: 15 | then   I try to be in bed earlier than | | | | |
| | | 67: 16 | that  So, I think that I got it perhaps | | | | |
| | | 67: 17 | the next morning, maybe it was actually | | | | |
| | | 67: 18 | Sunday morning, I was working at my desk | | | | |

| 52 | 68:14 -69:8 | Curfman 01/24/2006 | | 00.01.01 | 00.25 56 | 01.15 06 | V3 52 |
|---|---|---|---|---|---|---|---|

Curfman G DA 1-24-06 on 5-25-06

| | | |
|---|---|---|
| 68:14 | Q.   When you released the | |
| 68:15 | editorial on December 8th, I think you | |
| 68:16 | indicated before you didn't know, you | → Improper mention of previous Irvin I trial |
| 68:17 | say, precisely what was going on in the | |
| 68:18 | trial down in Houston.  Is that right? | |
| 68:19 | A.   Right. | |
| 68:20 | Q.   You knew that the trial was | |
| 68:21 | still going on down in Houston? | |
| 68:22 | A.   Yes | |
| 68:23 | Q.   You also knew, obviously, | |
| 68:24 | that Vioxx was not being prescribed and | |
| 69:1 | sold on December 8th, 2005, right? | |
| 69:2 | A.   Yes.  That's right.  We | |
| 69:3 | generally -- we have referred to it as | |
| 69:4 | rofecoxib, but, yes, that's right | |
| 69:5 | Q.   And so on December 8th, when | |
| 69:6 | you released this Expression of Concern, | |
| 69:7 | there was no public health emergency -- | |
| 69:8 | A.   No. | |

| 53 | 71:11 -72:17 | Curfman 01/24/2006 | | 00:01:19   00:26:57   01:14.05 | V3 53 |
|---|---|---|---|---|---|
| | 71:11 | Q.   You've got what we've marked | | | |
| | 71:12 | as Defendant's Exhibit 6 in front of you, | | R. 801 | |
| | 71:13 | right? | | R. 802 | |
| | 71:14 | A.   Right.  Uh-huh. | → Hearsay | |
| | 71:15 | Q.   And do you see that the | | | |
| | 71:16 | first page of Defendant's Exhibit 6 is an | | | |
| | 71:17 | e-mail string of e-mails from December | | | |
| | 71:18 | 8th? | | | |
| | 71:19 | A.   Right. | | | |
| | 71:20 | Q.   And the first one is from | | | |
| | 71:21 | Karen Pedersen -- | | | |
| | 71:22 | A.   Pedersen, yes. | | | |
| | 71:23 | Q.   Pederson to you? | | | |
| | 71:24 | A.   Right. | | | |
| | 72:1 | Q.   With a copy to Dr | | | |
| | 72:2 | Morrissey? | | | |
| | 72:3 | A.   That's right | | | |
| | 72:4 | Q.   And it says she's forwarding | | | |
| | 72:5 | something called talking points; right? | | | |
| | 72:6 | A.   Yes.  That's what I referred | | | |
| | 72:7 | to earlier. | | | |
| | 72:8 | Q.   And Karen Pedersen, is she | | Rule 611 - Leading question | |
| | 72:9 | an internal PR person for the New England | | improper. | |
| | 72:10 | Journal of Medicine? | → | Dr. Curfman is an independent | |
| | 72:11 | A.   She's the manager of media | | 3rd party not an adverse/hostile witness. | |

Curfman G DA 1-24-06 on 5-25-06

| | | |
|---|---|---|
| 72: 12 | relations. We don't call her a PR | → -continued from previous page |
| 72: 13 | person, but she is our interface with the | |
| 72: 14 | media. | |
| 72: 15 | Q.  And she's forwarding on | Omits answer, if any |
| 72: 16 | talking points that were sent to her by | → |
| 72: 17 | Ed Cafasso; right? | |

| 54 | 73:2 -73:20 | Curfman 01/24/2006 | 00:00:50 | 00:28:16 | 01:12.46 | | V3 54 |

| | |
|---|---|
| 73: 2 | Q.  But do you see right |
| 73: 3 | underneath the first e-mail -- |
| 73: 4 | A.  Yeah. |
| 73: 5 | Q.  -- that we looked at, which |
| 73: 6 | would have been the most recent e-mail, |
| 73: 7 | there's an e-mail -- she's forwarding the |
| 73: 8 | thing that she got right below from Ed |
| 73: 9 | Cafasso to her -- |
| 73: 10 | A.  Right. |
| 73: 11 | Q.  -- "Subject:  Talking |
| 73: 12 | points," "Importance:  High"? |
| 73: 13 | A.  Uh-huh.  Yep. |
| 73: 14 | Q.  And Ed Cafasso, he's the |
| 73: 15 | outside PR guy; right? |
| 73: 16 | A.  Yes. |
| 73: 17 | Q.  So, he's attaching the |
| 73: 18 | talking points and the Q&A, he says; |
| 73: 19 | correct? |
| 73: 20 | A.  Right |

R. 801
R. 802

| 55 | 74:3 -74:14 | Curfman 01/24/2006 | 00.00.22 | 00:29.06 | 01:11.56 | | V3 55 |

| | |
|---|---|
| 74: 3 | Q.  Are you on the page that has |
| 74: 4 | at the top the title "Expression of |
| 74: 5 | Concern  Key Points and Q&A " |
| 74: 6 | A.  Right |
| 74: 7 | Q.  Are these the kind of |
| 74: 8 | talking points that you referred to |
| 74: 9 | earlier in your testimony that people |
| 74: 10 | would give you to use? |
| 74: 11 | A.  Sometimes they would, yes |
| 74: 12 | Q.  And they did this time, |
| 74: 13 | right? |
| 74: 14 | A.  They did  I can't say that |

Rule 611 - Leading question improper.
Dr. Curfman is an independent
3rd party not an adverse/hostile
witness.

| 56 | 74:17 -75:9 | Curfman 01/24/2006 | 00.00.41 | 00.29.28 | 01:11.34 | | V3 56 |

| | |
|---|---|
| 74: 17 | Q.  Well, let's take a look down |
| 74: 18 | at the one that says "Why Did we Release |
| 74: 19 | this Today?" |
| 74: 20 | A.  Uh-huh |

Curfman G DA 1-24-06 on 5-25-06

| | | |
|---|---|---|
| 74:21 | Q.  And the talking point says, | R. 801 |
| 74:22 | "We felt it was important to release this | R. 802 |
| 74:23 | information as soon as we understood how | Hearsay |
| 74:24 | it impacted the conclusions of the paper | |
| 75:1 | we had published.  We felt we should | |
| 75:2 | announce this once we had completed our | |
| 75:3 | investigation of the data, which included | |
| 75:4 | a statistical analysis, and had raised | |
| 75:5 | our concerns with the authors." | |
| 75:6 | Did you follow that talking | |
| 75:7 | point when members of the media asked you | |
| 75:8 | why you released the Expression of | |
| 75:9 | Concern when the jury was out in Houston? | |

| 57 | 75:15-75:15 | Curfman 01/24/2006 | 0 | 00:30:09 | 01.10.53 | V3 57 |
|---|---|---|---|---|---|---|
| | 75:15 | THE WITNESS: I don't -- | | | | |

| 58 | 76:1-76:11 | Curfman 01/24/2006 | 00:00:33 | 00:30:09 | 01.10.53 | V3 58 |
|---|---|---|---|---|---|---|

76:1     Q   Is it still your testimony
76:2     that you didn't know on December 8th when
76:3     you released the Expression of Concern
76:4     that the jury was out in Houston?
76:5     A.  I don't know how I could
76:6     have known that.  I mean, you know, it's
76:7     not something that I would have known
76:8     Q   Did you use this talking
76:9     point when you answered questions from
76:10    the media about why you released that
76:11    Expression of Concern on that date?

| 59 | 76:16-76:21 | Curfman 01/24/2006 | 00:00:14 | 00:30:42 | 01.10.20 | V3 59 |
|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| 76:16 | Q.  Well, you were asked about | Rule 611 - Leading question |
| 76:17 | why in the media, weren't you? | improper. |
| 76:18 | A.  I don't recall, but what I | Dr. Curfman is an independent |
| 76:19 | can say is that I didn't use this talking | 3rd party not an adverse/hostile |
| 76:20 | point because I didn't need to use this | witness. |
| 76:21 | talking point  Because the truth -- | |

| 60 | 77:1-77:17 | Curfman 01/24/2006 | 00:00:52 | 00:30:56 | 01.10.06 | V3 60 |
|---|---|---|---|---|---|---|

77:1     THE WITNESS  The truth of
77:2     the matter is that we released the
77:3     Expression of Concern when we had
77:4     all of the data assembled, when we
77:5     had deliberated, we had the facts
77:6     in hand  We very carefully
77:7     deliberated  The editors had come
77:8     together, reviewed all the
77:9     information that we had, including

Curfman G DA 1-24-06 on 5-25-06

|       |              |                                                          |           |          |          |       |
|-------|--------------|----------------------------------------------------------|-----------|----------|----------|-------|
|       |              | 77: 10   information that we obtained on                 |           |          |          |       |
|       |              | 77: 11   November 21st, 2005.  We made our               |           |          |          |       |
|       |              | 77: 12   best judgment as editors of the                 |           |          |          |       |
|       |              | 77: 13   New England Journal of Medicine                 |           |          |          |       |
|       |              | 77: 14   with many years of experience                   |           |          |          |       |
|       |              | 77: 15   collectively, and we sat down and               |           |          |          |       |
|       |              | 77: 16   wrote the document, the Expression              |           |          |          |       |
|       |              | 77: 17   of Concern.  We worked very hard                 |           |          |          |       |

| 61 | 78:1 -78:6 | Curfman 01/24/2006 | 00:00:20 | 00:31:48 | 01:09:14 | V3.61 |

78: 1   over things for us.  And when we
78: 2   finally reached what we considered
78: 3   to be a final version after going
78: 4   through many versions of the
78: 5   Expression of Concern we released
78: 6   it, which is our responsibility as

→ π: Incomplete answer. All of witness's answer should be included.

| 62 | 80:17 -80:19 | Curfman 01/24/2006 | 00:00:07 | 00:32:08 | 01:08:54 | V3.62 |

80: 17   Q.  We've been looking at the
80: 18   December 8 talking points.  Let me show
80: 19   you Exhibit 7.

| 63 | 81:7 -81:10 | Curfman 01/24/2006 | 00:00:17 | 00:32:15 | 01:08:47 | V3.63 |

81: 7   BY MR. BECK:
81: 8   Q.  Do you see that this
81: 9   document is the December 5th version of
81: 10   the talking points?

| 64 | 81:15 -81:16 | Curfman 01/24/2006 | 00:00:07 | 00:32:32 | 01:08:30 | V3.64 |

81: 15   Q.  Down at the bottom it says,
81: 16   "Why Did We Release This When We Did?"

→ π: No answer to question. Include answer.

| 65 | 82:15 -83:7 | Curfman 01/24/2006 | 00:00:39 | 00:32:39 | 01:08:23 | V3.65 |

82: 15   Q.  I apologize.  I've got the
82: 16   date wrong.  So, now we're talking about
82: 17   after it's been released and out there in
82: 18   the public for a while; right?
82: 19   A.  Right.  Uh-huh.
82: 20   Q.  And so this was a later
82: 21   version of the talking points.  And down
82: 22   at the bottom it says "Why Did We Release
82: 23   This When We Did?"  Could you read for me
82: 24   the first sentence --
83: 1   A.  Sure.
83: 2   Q.  -- of the talking points?
83: 3   A.  Sure.  "We made this
83: 4   information public as soon as we could,
83: 5   without regard to the trial."
83: 6   Q.  Now, that statement in the

π:
→ R. 611 - leading question

Curfman G DA 1-24-06 on 5-25-06

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 83:7    talking points was false, wasn't it? | | | | → T: R. 611 - leading question. |
| 66 | 83:11-83:15 | Curfman 01/24/2006          00:00:14  00:33:18  01:07:44 | | | | V3.66 |
| | | 83:11   Q.  In fact, when you were<br>83:12   planning the release of the Expression of<br>83:13   Concern, you were planning it to coincide<br>83:14   with specific events of the trial down in<br>83:15   Houston.  Isn't that true? | | | | |
| 67 | 83:22-84:2 | Curfman 01/24/2006          00:00:12  00:33:32  01:07:30 | | | | V3.67 |
| | | 83:22        You were planning to release<br>83:23   the Expression of Concern based on<br>83:24   specific events that you had been told<br>84:1   would take place down in the trial in<br>84:2   Houston, isn't that true, sir? | | | | → T: compound question |
| 68 | 84:6-84:6 | Curfman 01/24/2006          0  00:33:44  01:07:18 | | | | V3.68 |
| | | 84:6        THE WITNESS:  No. | | | | |
| 69 | 84:14-84:14 | Curfman 01/24/2006          00:00:12  00:33:44  01:07:18 | | | | V3.69 |
| | | 84:14   Q.  What is Exhibit 8? | | | | |
| 70 | 84:18-84:22 | Curfman 01/24/2006          00:00:23  00:33:56  01:07:06 | | | | V3.70 |
| | | 84:18        THE WITNESS:  Right. This<br>84:19   is some e-mail from December 8th<br>84:20   among the various editors of the<br>84:21   Journal about the Expression of<br>84:22   Concern. | | | | → T: R. 801 & 802  Hearsay |
| 71 | 84:24-85:18 | Curfman 01/24/2006          00:01:02  00:34:19  01:06:43 | | | | V3.71 |
| | | 84:24   Q.  And on the bottom, which<br>85:1   would be the earliest of the three<br>85:2   e-mails printed on this page; is that<br>85:3   correct?<br>85:4   A.  Yes.  December 7th, right.<br>85:5   Q.  And it's December 7th, 6:00<br>85:6   p.m. from Tad Campion.  Who is Tad<br>85:7   Campion?<br>85:8   A.  He's the senior deputy<br>85:9   editor at the journal.<br>85:10   Q.  Then it says to — and it<br>85:11   has Lisa Scott, Karen Pedersen, Sandra<br>85:12   Jacobs, Andrea Graham and Julie Mooza.<br>85:13   Are they all employees of the New England<br>85:14   Journal of Medicine?<br>85:15   A.  This is the web team, yes.<br>85:16   Q.  And then cc, that means<br>85:17   copies; right?<br>85:18   A.  That's right. | | | | T:<br>→ R. 611 - all leading questions.<br>Dr. Curfman is an independent<br>3rd party not an adverse witness |