UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION FOR ORDER EXCLUDING CERTAIN OPINION TESTIMONY OF <u>FOSTER CURTIS BRYAN, II, M.D.</u>**

Plaintiff's own cardiac surgeon, Dr. Curtis Bryan, proffers highly relevant testimony that is harmful to plaintiff's case. For example, plaintiff's cardiology experts, Dr. Jeffrey Popma and Dr. Doug Zipes, have both taken the position that plaintiff suffered a "Q wave" myocardial infarction in September 2002. They base their opinions on an EKG test plaintiff took on September 11, 2002, the day after Dr. Bryan operated on him. Back at the time, Dr. Bryan interpreted the September 11 EKG test to show a non-diagnostic Q wave. He also repeatedly

diagnosed plaintiff with a non-Q wave myocardial infarction during his hospitalization in September 2002. Dr. Bryan testified in his deposition that he stands by his previous diagnoses.

Plaintiff argues in this motion that Dr. Bryan should not be permitted to proffer his opinions on plaintiff's past and present medical condition. More specifically, plaintiff argues that the Court should exclude Dr. Bryan's testimony because: (i) Merck did not designate Dr. Bryan as an expert and did not provide an expert report; and (ii) Dr. Bryan's opinions are speculative and fail to satisfy the Rule 702 and *Daubert* standard. The Court should reject this attempt to prevent the jury from hearing relevant, informed testimony. In the words of another court faced with a similar situation, "Plaintiff understandably seeks to silence the doctor. However, the mouth of a factual witness cannot be muzzled merely because the expected testimony will be adverse to either party. Treating physicians are no different." *Ngo v. Standard Tools & Equip., Co.*, 197 F.R.D. 263, 267 (D. Md. 2000).

Merck satisfied its disclosure obligations with respect to this witness. And even if the Court were to conclude otherwise, the admission of Dr. Bryan's testimony will not unfairly prejudice plaintiff. Dr. Bryan's testimony is based on sound and reliable methodology and will assist the jury in understanding the complexities of the nature, cause and extent of plaintiff's coronary artery disease and subsequent heart attack. Plaintiff's motion must be denied.

I. **DR. BRYAN'S TESTIMONY IS ADMISSIBLE IRRESPECTIVE OF THE RULE REGARDING EXPERT DISCLOSURES.**

   A. **Merck Satisfied Its Disclosure Requirements Under Rule 26.**

Plaintiff argues in the introductory section of his Motion that the Court should exclude Dr. Bryan's testimony because Dr. Bryan was "not designated by any party as an expert witness, and the deadline for designating experts and providing expert reports has passed." (Pl.'s Mot. at

1). Significantly, plaintiff only raises this argument in the introduction, and makes no effort to support it with any legal authority.

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony. It provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" (26(a)(2)(A)) and that "this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony* in the case . . . be accompanied by a written report prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B) (emphasis added).

Treating physicians – often called "hybrid witnesses" because they are likely to provide both factual and opinion testimony – are subject only to section (a)(2)(A) (requiring disclosure of the witnesses name), and not to section (a)(2)(B) (requiring an expert report) of Rule 26. *See, e.g., Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997) ("Rule 26(a)(2)(A) is colloquially said to apply to 'hybrid' fact/expert witnesses, the most frequent example being a treating physician in a personal injury case. As to these witnesses, the comprehensive disclosures of the written report set forth in Fed. R. Civ. P. 26(a)(2)(B) are not required."); *Ngo*, 197 F.R.D. at 266; *Mangala v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996); *Sipes v. United States,* 111 F.R.D. 59, 61 (S.D. Cal. 1986) ("The mere fact that a treating physician may possess opinions regarding the care and treatment provided to the plaintiff herein does not *ipso facto* render such a physician as an expert witness."); *see also* FED. R. CIV. P. 26, advisory committee's note, 1993 amendments, subdivision (a) ("The requirement of a written report in paragraph [26(a)](2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case . . . A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."))

1). Significantly, plaintiff only raises this argument in the introduction, and makes no effort to support it with any legal authority.

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony. It provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" (26(a)(2)(A)) and that "this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony* in the case . . . be accompanied by a written report prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B) (emphasis added).

Treating physicians – often called "hybrid witnesses" because they are likely to provide both factual and opinion testimony – are subject only to section (a)(2)(A) (requiring disclosure of the witnesses name), and not to section (a)(2)(B) (requiring an expert report) of Rule 26. *See, e.g., Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997) ("Rule 26(a)(2)(A) is colloquially said to apply to 'hybrid' fact/expert witnesses, the most frequent example being a treating physician in a personal injury case. As to these witnesses, the comprehensive disclosures of the written report set forth in Fed. R. Civ. P. 26(a)(2)(B) are not required."); *Ngo*, 197 F.R.D. at 266; *Mangala v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996); *Sipes v. United States,* 111 F.R.D. 59, 61 (S.D. Cal. 1986) ("The mere fact that a treating physician may possess opinions regarding the care and treatment provided to the plaintiff herein does not *ipso facto* render such a physician as an expert witness."); *see also* FED. R. CIV. P. 26, advisory committee's note, 1993 amendments, subdivision (a) ("The requirement of a written report in paragraph [26(a)](2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case . . . A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."))

Dr. Bryan performed coronary artery bypass surgery on plaintiff. (*See* Pl.'s Mot. at 2.) Thus, Merck's only obligation under Rule 26 was to disclose to plaintiff the identity of Dr. Bryan – which it did on its Witness List.[1] (*See* Merck & Co., Inc.'s Witness List.) Rule 26(a) did not require Merck to submit an expert report under Rule 26(a)(2)(B). This is despite the fact that Dr. Bryan has proffered his *opinion* as to plaintiff's medical condition.

Indeed, courts routinely permit treating physicians to testify not only to factual matters, but also as to their opinions on the causation, nature, and the extent of the alleged injury – when those opinions are within the witness's expertise. *See, e.g., Hall v. Sykes*, 164 F.R.D. 46, 48 (D. Va. 1995) ("Traditionally, treating physicians have been permitted to express their opinions of causation and prognosis derived from the ordinary treatment of the patient."); *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 175 (D. Nev. 1997) ("It is common place [*sic*] for a treating physician during, and as part of, the course of treatment of a patient to consider things such as the cause of the medical condition, the diagnosis, the prognosis and the extent of disability caused by the condition, if any."); *Shapardon v. West Beach Estates*, 172 F.R.D. 415, 416-17 (D. Haw. 1997) ("Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B).")

Thus, the Court should permit Dr. Bryan to offer his opinion as to plaintiff's medical condition so long as it was formed "in the ordinary care" of plaintiff. This includes opinions

---

[1] That Merck did not specifically identify Dr. Bryan as an "expert" on the Witness List does not change the analysis. *Sullivan*, 175 F.R.D. at 500, n.5 ("Rule 26(a)(2)(A) does not require disclosure of anything more than [the witness's] identity.")

regarding plaintiff's medical condition on a date before Dr. Bryan performed surgery. Dr. Bryan routinely assesses a patient's medical history before performing surgery. (June 6, 2006 Deposition of Foster Curtis Bryan II, M.D. ("Bryan Dep.") at 24:8-27:12 (explaining the methodology Dr. Bryan uses to obtain present and past information regarding a patient's medical condition), attached hereto as Ex. A.) Thus, the Court should permit Dr. Bryan to present his opinion on these matters. For example, with respect to the Cardiolite stress test plaintiff took in 2000, Dr. Bryan testified that the information was useful to him in understanding plaintiff's medical condition because he would want "to know what the stress test demonstrated to know which area was active at that time." (*Id.* at 26:4-13.) Such testimony is admissible, as is any other testimony based on opinions Dr. Bryan formed in connection with his treatment of plaintiff that falls within his area of expertise.[2]

> **B.     Even If Merck's Disclosures Are Deemed Inadequate Under Rule 26, Dr. Bryan Should Be Permitted To Proffer The Subject Testimony.**

Even if the Court decides that Merck failed to fulfill its disclosure obligations under Rule 26, the Court should still admit Dr. Bryan's testimony. Exclusion of witness testimony is fully within the court's discretion, even if Rule 26 is violated. *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993). Among the factors a court should consider in deciding whether to exclude evidence due to insufficient disclosure under Rule 26 are: (i) the importance of the

---

[2] Dr. Bryan stands in contrast to Drs. Mikola and McCaffrey, who provided testimony at their depositions that far exceeds their areas of expertise. Both testified about the role of Vioxx in Mr. Barnett's injuries – Dr. McCaffrey, *a neurologist*, going so far as to testify that Vioxx allegedly increases hypertension. Merck will move separately to exclude the impermissible "expert" testimony of these physicians, neither of whom satisfy this Court's requirements for expert testimony as to causation with respect to Vioxx. In fact, none of the four treaters – Drs. Bryan, Karavan, McCaffrey and Mikola – should be permitted to testify about whether they can "rule out" Vioxx as a potential cause of Mr. Barnett's injuries, or about whether Vioxx had any possible effect on Mr. Barnett. None of these four doctors is an expert on Vioxx and therefore none can offer opinions about whether Vioxx played any role in Mr. Barnett's injuries.

excluded testimony; (ii) the reason for the failure to fulfill disclosure requirements; and (iii) the potential prejudice that would arise from allowing the testimony. *Id.* Weighing these factors in this case leads unequivocally to the conclusion that the testimony should be permitted.

First, Dr. Bryan's testimony regarding plaintiff's medical condition at different stages in the development of his coronary artery disease is central to the case. The only way a jury will be able to understand the complexities of coronary artery disease, plaque ruptures, and atherosclerosis is through the testimony of a witness with special knowledge and expertise on such matters. There is no one more qualified to elucidate these concepts to a jury than a cardiovascular surgeon. Dr. Bryan has over a decade of experience dealing with these exact medical matters. (Bryan Dep. at 74:13-15.) And he *personally* observed and evaluated the damage to plaintiff's coronary arteries during the heart surgery he performed. Plaintiff's experts cannot match Dr. Bryan's firsthand experience with plaintiff.

Second, Merck had no intent to deceive plaintiff or gain unfair advantage. Indeed, Merck disclosed Dr. Bryan as a trial witness. Moreover, plaintiff actually met with Dr. Bryan before his deposition to discuss his opinions. (Bryan Dep. at 70:21-71:13.) This Court's previous order prohibited Merck from meeting with Dr. Bryan *ex parte*. (*See* Court's July 21, 2005 Order and Reasons ("July 21 Order").) Therefore, Merck could not have known or discovered Dr. Bryan's opinions prior to his deposition testimony. This factor weighs strongly in favor of allowing the testimony. *See Sullivan*, 175 F.R.D. at 507 (court must determine whether "the failure to provide appropriate disclosures was willful or in bad faith as opposed to inadvertent").

Finally, Dr. Bryan's testimony does not unfairly prejudice plaintiff. Not only did Merck put Dr. Bryan on its Witness List, but plaintiff included Dr. Bryan's name on his own Witness List. (*See* Plaintiff's List of Witnesses for Trial.) Plaintiff also cannot argue that he did not

6

expect Dr. Bryan to proffer at least some opinion testimony regarding plaintiff's medical condition. Treating physicians like Dr. Bryan are "hybrid witnesses" and thus are likely to offer both factual and opinion testimony. *See, e.g., Sullivan,* 175 F.R.D. at 500; *Ngo*, 197 F.R.D. at 266. In fact, this Court recognized as much in its July 21, 2005 Order, when discussing doctor-patient confidentiality: "At first blush, the treating physicians in this case seem more like 'fact' witnesses than expert witnesses. On closer scrutiny, however, it is clear that the physicians are both fact and expert witnesses." (July 21 Order at 6.) Thus, plaintiff was on notice that any treating physician named on the Witness List might offer opinion testimony. Plaintiff may not now express surprise that Dr. Bryan has in fact offered such proper opinion testimony – especially since plaintiff spent hours in the depositions of Drs. Mikola and McCaffrey eliciting *improper* expert testimony, on subjects beyond their expertise.

Further, plaintiff's counsel had a fair opportunity to cross-examine Dr. Bryan at his deposition regarding the testimony he gave in response to questions posed by Merck's lawyer – and in fact did cross-examine Dr. Bryan on these opinions.[3] (*See, e.g.,* Bryan Dep. at 169:2-175:1 (posing questions about Dr. Bryan's methodology in reaching certain conclusions regarding plaintiff's health).) As a result, plaintiff will suffer no prejudice if the Court admits Dr. Bryan's testimony.

For these reasons, the Court should deny plaintiff's motion to exclude Dr. Bryan's opinion testimony as to plaintiff's medical condition.

---

[3] Additionally, plaintiff's statement that Dr. Bryan's deposition was "set as a percipient witness" is wrong. (*See* Mot. at 1) Dr. Bryan's deposition notice, *which plaintiff prepared*, makes no mention of whether Dr. Bryan was to testify as a fact or expert witness. (*See* May 30, 2006 Second Amended Deposition Notice of Taking Deposition of Dr. Curtis Bryan.) And counsel did not enter into any agreements to this effect (nor does plaintiff allege the existence of any such agreement).

## II. DR. BRYAN'S TESTIMONY SATISFIES RULE 702 AND THE *DAUBERT* STANDARD.

### A. Dr. Bryan Is Fully Qualified To Render His Proffered Opinions.

Dr. Bryan is a cardiovascular surgeon. (Bryan Dep. at 4:3-5; 8:7-9.) He is board certified in general surgery and thoracic surgery, and was recently (in 2004) recertified in general surgery. (*Id.* at 7:5-9.) He has been treating patients with heart problems for 13 years. (*Id.* at 74:13-15.) In that time, he has performed "well over" 2000 surgeries (*id.* at 74:16-19), and has seen "at lease a couple of thousand" patients "maybe more" who, like Mr. Barnett, had severe multi-vessel disease (*id.* at 75:10-17). He is a fellow of the American College of Surgeons, American College of Cardiology, American College of Chest Physicians, and the South Eastern Surgical College, and a member of the Society of Thoracic Surgeons and the South Atlantic Cardiovascular Society. (*Id.* at 7:19-8:3.) Dr. Bryan typically performs one to two open heart or thoracic surgeries per day (*id.* at 9:19-10:2), 90% of which are cardiac surgeries (*id.* at 10:19-23). Given this extensive background and training in the field of cardiac surgery, Dr. Bryan possesses the requisite knowledge, skill, experience or training to offer his opinions on plaintiff's heart condition in this case.

### B. Dr. Bryan's Opinions Regarding Plaintiff's Past And Present Medical Condition Are Reliable and Relevant.

Plaintiff argues that Dr. Bryan's testimony regarding plaintiff's past and present medical condition is speculation because plaintiff was not under Dr. Bryan's care during these times. For example, plaintiff argues that Dr. Bryan may not testify as to plaintiff's medical condition in 2000 because Dr. Bryan did not meet plaintiff until 2002. (Mot. at 6-7.) But Dr. Bryan's methodology in arriving at his opinions is consistent with sound medical practice and the standards articulated by Rule 702 and *Daubert*. The testimony is admissible.

Dr. Bryan explained his methodology in assessing a patient's current and past medical conditions as follows: after the patient undergoes a "work-up" by a hospitalist or internal medicine doctor (Bryan Dep. at 24:8-25:3) and Dr. Bryan discusses the patient's circumstances with the referring cardiologist (*id.* at 25:7-15), he: (i) analyzes the cardiac catheterization films; (ii) reviews the patient's medical chart; (iii) examines the patient; and (iv) discusses the situation with the patient (*id.* at 25:16-23). He also reviews the patient's lab work, EKG, and chest x-ray. (*Id.* at 26:14-19.) Dr. Bryan then prepares a "History of Present Illness" report. The information for this report comes "[b]oth from the patient and the chart – what's given before and then I talk to the patient and confirm everything that's been said and actually maybe even ask a few more questions than . . . what was on the chart." (*Id.* at 27:3-12.)

Reviewing charts, performing patient examinations, and talking with patients – this is the methodology medical practitioners use in everyday diagnosis and treatment of patients. Courts have held that such methodology satisfies *Daubert*. See *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995) (holding that treating physicians' conclusions based on history, examination, lab and pathology data met the *Daubert* standard; Court stated that it would "not declare such methodologies invalid and unreliable in light of the medical community's daily use of the same methodologies in diagnosing patients."); *see also Mitchell v. United States,* 141 F.3d 8, 16 (1st Cir. 1998) (expert's reliance on pathologist's report, which allowed him to study nature of incisions made by defendants in course of biopsy, was at least as reliable a basis for his opinion as reports prepared by treating physicians).

In fact, because he performed the actual surgery on plaintiff, Dr. Bryan's opinion as to the nature, cause and extent of plaintiff's injury is arguably *more* reliable than that of any retained expert. Courts have recognized this logic. For example, in *Shaver v. United States*, 319

F. Supp. 2d 649 (M.D.N.C. 2004), a federal tort claim action arising out of an automobile accident, the court concluded that the expert opinion of plaintiff's treating physician was entitled to be given greater weight and credibility than testimony of the defense medical expert on the issue of actual and proximate cause of the injury. In that case, even the defense expert had acknowledged that a person's treating physician would be in the best position to give such an opinion. *Id.* at 662-63.

The same is true of Dr. Bryan's testimony concerning the current state of plaintiff's health. At his deposition, Dr. Bryan was shown the results of a Cardiolite stress test performed on plaintiff in July 2003. Just as any doctor in the field would do, Dr. Bryan analyzed the results of the test and proffered an opinion as to what they indicated about plaintiff's health as of that date. Because medical practitioners routinely make assessments of patient's health based on the interpretation of various test results, the methodology is reliable under *Daubert*. Dr. Bryan also testified about the May 2, 2006 stress test plaintiff took for purposes of this litigation. Just as with the July 2003 Cardiolite test, Dr. Bryan analyzed the results and proffered an opinion.

Dr. Bryan's testimony will help the jury to understand the evidence. The interpretation and understanding of the nature and causes of coronary artery disease clearly lie outside the experience and training of the average person. Dr. Bryan's testimony will shed light on these issues and assist the jury in its fact-finding role. In short, Dr. Bryan's testimony meets the Rule 702 and *Daubert* standard. Plaintiff's motion should be denied.

### III. CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court deny Plaintiff's Motion for Order Excluding Certain Opinion Testimony of Foster Curtis Bryan, II, M.D.

816470v.1

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Opposition to Plaintiff's Motion for Order Excluding Certain Opinion Testimony of Foster Curtis Bryan, II, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 26th day of June, 2006.

                                                  */s/ Dorothy H. Wimberly*

816470v.1