UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** | * | |
| **Case No. 06-0485** | * | |
| | * | **MAGISTRATE JUDGE** |
| **GERALD D. BARNETT,** | * | **KNOWLES** |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF RICHARD M. KAPIT, M.D.

### (EXPERT CHALLENGE NO. 10)

After Richard M. Kapit, M.D., was allowed to testify as an expert in *Plunkett v. Merck*, he prepared a new expert report, which includes opinions on several topics that have nothing to do with his expertise in the FDA approval process or drug labeling. By way of this motion, Merck moves to preclude Dr. Kapit from testifying to:

(1)     New opinions about the intent and state of mind of Merck and the FDA;

(2)     Criticisms that (a) the FDA missed something when it approved the Vioxx® New Drug Application ("NDA"), and (b) the FDA serves industry before the public health; and

(3)     Opinions that merely parrot the conclusions of Drs. Graham, Curfman, Farquhar, and Avorn.

None of these topics are proper subjects for expert testimony.

## I.     THE LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of the Motion of Defendant Merck & Co., Inc. ("Merck") for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, filed June 16, 2006 and incorporated herein by reference.

## II.     DR. KAPIT'S NEW OPINIONS ABOUT THE STATE OF MIND OR INTENT OF MERCK OR THE FDA ARE IMPROPER AREAS FOR EXPERT TESTIMONY AND SHOULD BE PRECLUDED.

In *Plunkett v. Merck*,  Dr. Kapit was permitted to testify "as an expert on the FDA approval process and drug labeling." (Feb. 10, 2006 *Plunkett v. Merck* Transcript ("*Plunkett Tr.*"), at 1097:10-11, attached hereto as Ex. A.) Before the *Plunkett* trial began, however, this Court ordered that Dr. Kapit could not testify to Merck's state of mind. *Plunkett v. Merck & Co., Inc.*, 401 F. Supp. 2d 565, 696 (E.D. La. 2005) ("Lastly, regarding Merck's state of mind, Dr. Kapit may not testify as to what Merck was thinking."). Although not addressed in *Plunkett*, this Court's ruling should extend to: (i) Dr. Kapit's new opinions about the FDA's state of mind; and (ii) Dr. Kapit's characterizations of what Merck and the FDA *intended* by their statements in various communications.

Specifically, Dr. Kapit has offered the following new opinions, which are improper and should be precluded:

• The FDA was frustrated with Merck and had "a lot of feeling that Merck was being less than forthcoming at times." (June 19, 2006 Rough

2

Deposition Transcript of Richard M. Kapit, M.D. ("Kapit 6/19/06 Rough Dep.") at 76:14-77:1 (characterizing communications from the FDA to Merck), attached hereto as Ex. B.)

- Merck did not conduct a study powered to answer whether Vioxx causes cardiovascular events because it was motivated to make more money. (*Id.* at 183:13-187:9 (admitting this conclusion is not beyond the ken of the average jury – "*it's not difficult to draw the conclusion*" that Merck was motivated by money based on its projected loss of revenue (emphasis added)); May 23, 2006 Expert Report of Richard M. Kapit, M.D. ("Kapit 5/23/06 Rpt.") at ¶¶ 106, 108, 166, attached hereto as Ex. C.)

- The VIGOR data was not put in the Vioxx label at an earlier date because Merck "dragged its feet." (Kapit 5/23/06 Rpt. at ¶ 124; Kapit 6/19/06 Rough Dep. at 218:17-222:4 (testifying that he believes Merck "dragged its feet" based on his review of communications between Merck and the FDA about how the VIGOR data should be presented in the Vioxx label).)

- Merck affirmatively made labeling proposals to incorporate VIGOR because it "wanted to preempt FDA action. . . . [Merck] wanted to preempt any other FDA action that might occur." (Kapit 6/19/06 Rough Dep. at 286:24-287:17.)

- "[T]he main point of [Merck's request for expedited review of its proposed label incorporating the VIGOR results] from Merck's point of view was to highlight the gastrointestinal benefit." (*Id.* at 293:20-294:13; *see also id.* at 299:24-300:3 (testifying "Merck "wanted to highlight the GI benefit, which was the real reason" for the expedited review); 310:19-311:5.; *Plunkett* Tr. at 1118:8-12 (testifying that "the reason that what [Merck] submitted was not a . . . changes being effected submission . . . was because they were trying to take out a warning.").)

- "Before FDA sent the October 2001 draft [label incorporating the VIGOR results] to Merck, *it knew that Merck was not going to be happy with that draft*." (Kapit 6/19/06 Rough Dep. at 322:18-323:3 (emphasis added) (admitting "I don't know that for sure, but they probably knew that Merck wasn't going to like it.").)

Dr. Kapit's opinions constitute improper state of mind and intent testimony. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (rejecting expert testimony "on the intent, motives or states of mind of corporations, regulatory agencies and others" because they "have no basis in any relevant body of knowledge or expertise"). Under Federal Rule of Evidence 702, a defendant's intent or state of mind are not proper topics for

3

expert testimony. As one court noted in excluding expert testimony in a similar failure-to-warn case:

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2000 U.S. Dist. LEXIS 9037, at \*28-29 (E.D. Pa. June 20, 2000).

Dr. Kapit seeks to usurp the role of the jurors by offering his opinion on Merck and FDA documents and opining as to what he divines to be the intent behind the documents and the state of mind of the authors. Jurors are fit to conduct such an analysis and reach their own conclusions based on a review of the documents. An expert may not simply tell the jury how to interpret evidence that is within the understanding of lay jurors. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1112 (11th Cir. 2005). Dr. Kapit's characterization of Merck's conduct is not based on "scientific, technical, or other specialized knowledge" nor is this testimony necessary to "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. It is pure advocacy that "does not more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [Merck's] conduct." *See In re Rezulin*, 309 F. Supp. 2d at 551; *id.* at 541 ("Rule 702 ensures that expert witnesses will not testify about lay matters which a jury is capable of understanding and deciding without the expert's help." (citation and internal quotation marks omitted)).

Accordingly, this Court should find, as have other courts, that such "expert" testimony about Merck's and the FDA's intent and motives would invade the province of the jury and must be precluded.

4

### III.   THIS TRIAL IS NOT THE PROPER FORUM FOR DR. KAPIT'S CRITICISMS OF THE FDA.

Congress (not the jury) is the *only* body that can address Dr. Kapit's concerns that: (i) FDA Medical Officers do not conduct a sufficiently rigorous review of New Drug Applications because they are not given sufficient time; and (ii) the FDA serves the interests of pharmaceutical companies first. Dr. Kapit's criticism of the FDA should be excluded for two reasons.

First, Dr. Kapit's criticism of the FDA is irrelevant and should be excluded under Federal Rule of Evidence 403. Merck is the defendant in these cases, not the FDA. Dr. Kapit's criticism of the FDA would divert the jury's attention from a fair evaluation of the pertinent factual and legal issues it must decide in this case. *See* FED. R. EVID. 401-03. Second, any suggestion that the FDA was not sufficiently rigorous in its evaluation and approval of Vioxx would infringe on the carefully-constructed regulatory scheme for drug approval protected by *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Pursuant to *Buckman*, all of this testimony is preempted under federal law, and for good reason. Permitting state-court juries to impose their judgments on the adequacy of the drug approval process under state-law standards "would exert an extraneous pull on the scheme established by Congress" to protect the public. *Id.* at 353.

### A.   Dr. Kapit's Opinion That FDA Reviewers Do Not Have Sufficient Time To Review New Drug Applications Is Inapplicable Or Speculative To The Facts Of This Case, Is Unreliable, And Unduly Prejudicial.

When Dr. Kapit revised his expert report, he added the following new opinions:

- "FDA reviewers will [not] necessarily be able to discern safety problems from raw data submitted by sponsors as part of required NDA [New Drug Application] documents" (Kapit 5/23/06 Rpt. at ¶ 30); and

- The "FDA may occasionally slip up" and "the FDA review process may occasionally miss a problem entirely." (*Id.* at ¶ 31; *see* Kapit 6/19/06 Rough Dep. at 198:22-199:3 ("in fact, the reality is that [the FDA] often

5

falls short."); 203:16-20 (same); 207:9-21 (same).)

Dr. Kapit's opinion that FDA reviewers feel the six-month time period for a priority review is inadequate should be excluded under Federal Rule of Evidence 403. Dr. Kapit explained that he relies on a 2003 survey for his opinion. (Kapit 6/19/06 Rough Dep. at 88:4-6.) At best, the 2003 survey is circumstantial evidence to prove that the FDA overlooked something when it decided to approve Vioxx.[1] However, the unreliable and speculative nature of this opinion is outweighed by the undue prejudice it would cause. Any belief that the FDA did not adequately review the Vioxx NDA would be based on speculation and unfounded inferences, not substantial evidence. Accordingly, Dr. Kapit's testimony that FDA reviewers do not have sufficient time to adequately review NDAs should be excluded.

In his deposition, Dr. Kapit testified that he relies on a 2003 survey for his opinion. (Kapit 6/19/06 Rough Dep. at 88:4-6.) The survey Dr. Kapit relies on was a survey conducted of FDA employees who are reviewers for the Center of Drug and Research Evaluation. (*Id.*) Only 47% of the employees who received the survey responded. (*Id.* at 96:3-12.) Of that 47%, 58% agreed "that the allotted six-month time for a priority review [such as the Vioxx review] is inadequate." (*Id.* at 87:21-88:3.)

The survey's low response rate renders the conclusions inherently unreliable. A survey where less than half the people responded must account for nonresponse bias. (Michael J. Saks,

---

[1] Although Dr. Kapit refuses to say explicitly whether he will be offering an opinion that the "FDA missed a problem when it reviewed the Vioxx NDA," his testimony criticizing the FDA has no relevance unless it pertains to Vioxx. (Kapit 6/19/06 Rough Dep. at 87:11-19 ("Conceivably that could come up, but at the present time, I'm not planning to do that.").) Under Federal Rule of Civil Procedure 26, a party must disclose expected expert witness testimony. Under Federal Rule of Civil Procedure 37(c)(1), a party that does not disclose its expert witness's opinions "shall not, unless such failure is harmless, be permitted to use" such opinions. Accordingly, Dr. Kapit should be precluded from testifying to opinions that might be forthcoming for the first time at trial.

6

et al., ANNOTATED REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 371 (2d ed. Fed. Jud. Ctr. 2005-06) ("Reference Manual") ("nonresponse often is not random").) According to the Reference Manual, "[i]f the response rate drops below 50%, the survey should be regarded with significant caution as a basis for precise quantitative statements about the population from which the sample was drawn." (*Id.* at 371-72.) The survey Dr. Kapit relies on had a response rate of 47%, but he makes no effort to consider whether the large nonresponse rate may have biased the results. (Kapit 6/19/06 Rough Dep. at 88:7-17.) When the response rate is low, it is important to consider the significance of which people are most willing to participate in a survey. When a survey does not include the response of those not interested enough to participate, it is very likely that this represents a fact that skews the representativeness of the results thus making the results unreliable.

More importantly, it is irrelevant what 47% of the FDA employees thought about whether the time allotted for priority reviews was adequate. The only relevant fact is whether the FDA employees who actually reviewed the Vioxx NDA thought they had adequate time to do so. Other than this survey, Dr. Kapit lacks any evidence that the medical officers who reviewed the Vioxx NDA felt the six-month review period was inadequate. (*Id.* at 99:6-16 (admitting the survey "does not assess the scientific merit of the decisions that FDA has made").) He did not talk with the medical officers who reviewed the Vioxx NDA and the FDA has never said it made a mistake by approving Vioxx as safe and effective based on the scientific and medical evidence available in 1999. (*Id.* at 88:14-89:10; 90:5-21.) Moreover, this survey is unreliable because it was conducted four years after the Vioxx NDA was reviewed and approved. There is no indication of whether FDA employee attitudes about the time allotted to conduct priority reviews for NDAs has changed between 1999 (when Vioxx was reviewed) and 2003 (when this survey

7

was conducted).

Accordingly, Dr. Kapit's testimony that FDA reviewers do not have sufficient time to review NDAs should be excluded.

## B. Dr. Kapit's Opinion That FDA Serves Industry Is Based On Nothing More Than Hearsay.

In his deposition, Dr. Kapit testified that he is "aware that in recent years, . . . there are people at the FDA that do view [their job as serving the pharmaceutical industry]." (Kapit 6/19/06 Rough Dep. at 70:4-24.) The apparent basis for his opinion is:

[A] friend I had for many years at the FDA, he was in the division of advertising, and when I knew him back in the Center for Drugs, he would not have thought of what he did as serving the industry; he would have thought of what he did as serving the public. And I heard him say not too long ago that his view of what he does now is serving the industry. So there are some people that view FDA as serving the industry.

(*Id.* at 71:1-14.) Dr. Kapit's opinion admittedly is based on nothing more than an inadmissible and unreliable hearsay statement. In addition, his criticism of whether the FDA "serves industry" is irrelevant to this case and preempted by *Buckman.* Accordingly, Dr. Kapit's criticism that the FDA serves industry before the public health should be excluded.

## IV. DR. KAPIT'S OPINIONS THAT MERELY PARROT PLAINTIFF'S OTHER EXPERTS ARE IMPROPER AND SHOULD BE EXCLUDED.

If permitted, Dr. Kapit plans to parrot the conclusions reached by four of plaintiff's experts (three of whom are designated to testify in this trial): Drs. Graham, Curfman, Farquhar, and Avorn. This Court has previously stated that an expert may not simply repeat or adopt the findings of another expert. *In re Vioxx Prods. Liab. Litig.*, 414 F. Supp. 2d 574, 580-81 (E.D. La. 2006) ("[c]heerleading the testimony of another editor or a medical publication does not constitute expert testimony. The Plaintiff's attorneys can argue for Dr. Curfman and the New England Journal of Medicine just as well as Dr. Fletcher."). Moreover, such testimony must be

8

excluded when the expert make no attempt to assess the validity of the opinions on which he relies. *In re TMI Litig.*, 193 F.3d 613, 715-16 (3d Cir. 1999) (finding blind reliance by expert on other expert opinions demonstrates flawed methodology); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reasons underlying the hearsay report).

Dr. Kapit is not qualified to offer the opinions reached by plaintiff's other experts. To allow Dr. Kapit to parrot those opinions serves no purpose and is nothing more than an attempt to enhance the credibility of plaintiff's other experts.

## A. Dr. Kapit's Use of Dr. Graham's Estimate of Excess Heart Attacks Is Improper.

Dr. Kapit uses Dr. Graham's estimate of excess heart attacks and death allegedly caused by Vioxx to opine that "during [the] years [that passed before the VIGOR data was added to the label], in all likelihood, tens of thousands of patients had heart attacks related to Vioxx." (Kapit 5/23/06 Rpt. at ¶ 122.) Dr. Kapit testified that this number came from Dr. Graham's estimate of excess events:[2]

Q: . . . In paragraph 122 of your expert report, . . . it refers to epidemiological studies. . . . Which studies are you referring to in that paragraph?

A: I think the main one is Graham's study.

Q: Any others?

A: There are others, but that's the one I have mostly in mind. I don't think that was the only one that indicated that.

Q: As you sit here today, though, you can't name any of the others?

[2] This testimony should also be excluded because it is based on an unreliable methodology, as explained at pages 8 through 20 of Merck's Motion for Order Excluding Testimony of Dr. David Graham, M.D., filed June 19, 2006.

816514v.1

A:      Graham is the one that I certainly had most clearly in mind when I wrote
        that sentence.

(Kapit 6/19/06 Rough Dep. at 217:8-218:2.)  Dr. Kapit relies on Graham's estimate for why

Merck should have unilaterally changed the Vioxx label to discuss the cardiovascular findings

from the VIGOR study.  (*Id.* at 301:4-16 (testifying that use of the Changes Being Effected

("CBE") procedure might have been "unorthodox" to incorporate the VIGOR results, "but we're

talking about huge risk.  Graham, et al., talked about a hundred thousand heart attacks.").)

        For two reasons, Dr. Kapit should be precluded from offering opinions based on Dr.

Graham's estimates.  First, Dr. Kapit admits he did no independent analysis or research to

confirm these figures.  (*Id.* at 218:9-16.)  Second, Dr. Kapit uses Dr. Graham's figures to support

his opinion that Merck should have used the CBE procedure to unilaterally change the Vioxx

label in 2001 and 2001.  (*Id.* at 301:4-302:1.)  Dr. Graham's figures, however, were not

published until 2005 – long after Vioxx was taken off the market.  (David J. Graham et al., *Risk

of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-

oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs:  nested case-

control study, available at* http://image.thelancet.com/ extras/05art1005web.pdf (Jan. 25, 2005).)

**B.      Dr. Kapit Should Not Be Allowed To Parrot Dr. Curfman's Testimony That
          Merck's Publication Of The VIGOR Results In The New England Journal
          Of Medicine Was Improperly Done.**

        Dr. Kapit's new expert report contains discussion about Merck's publication of the

VIGOR results in the *New England Journal of Medicine*:  "Merck never informed the journal

about the missing data [and] the journal published an editorial criticizing the omission of the

information in the article."  (Kapit 5/23/06 Rpt. at ¶134; *see also id.* at ¶ 162 ("the information

Merck made available to the medical community through the *New England Journal of Medicine*

was misleading in that it did not accurately communicate the number and rate of myocardial

816514v.1

infarctions in patients taking Vioxx.").) Dr. Kapit did not work for the *New England Journal of Medicine* and admits that his recitation of these facts is based on what Dr. Curfman said:

> Q:   In paragraphs 133 and 134 of your expert report, you added a discussion of Merck's October 13, 2000 submission as well as referring to, in paragraph 134, the controversy with the *New England Journal of Medicine*?
>
> A:   That's right, yes.
>
>      *      *      *
>
> Q:   And are you planning to offer any opinions at trial about this subject?
>
> A:   Well, yes. . . . there's some important information about it that there were three myocardial infarctions that were at issue, *which Dr. Curfman, who is an editor of the New England Journal, said that they should have been apprised of by Merck before publication* . . .

(Kapit 6/19/06 Rough Dep. at 314:4-315:23 (emphasis added).)  In addition, Dr. Kapit testified that he will point out during trial that "two of the authors for the . . . article were from Merck . . . . That Merck's participation in that calls into question the degree to which Merck was willing to be forthcoming completely about the information on myocardial infarctions." (*Id.* at 319:1-15.)

Dr. Kapit is not an expert in this area and there is no reason he should be allowed to simply repeat Dr. Curfman's opinions about Merck's conduct. (*See id.* at 317:13-22 (admitting never having been an editor or served on the editorial board of a medical journal).)

## C.   Dr. Kapit Admits He Is Not Qualified To Perform The Statistical Analysis Conducted By Plaintiff's Other Experts, Dr. Farquhar, Who Is A Statistician Designated In This Case, and Dr. Jule.

In his report, Dr. Kapit explains that data from three Vioxx studies was "made available to the plaintiffs in this litigation, and a statistician and an epidemiologist retained by the plaintiffs . . . have analyzed the Protocol 203 data." (Kapit 5/23/06 Rpt. at ¶ 180.)  Dr. Kapit then goes on to discuss the results of that study. (*Id.* at ¶¶ 181-83; *see also* Kapit 6/19/06 Rough Dep. at

11

341:18-342:15 (testifying "I'm planning to offer the opinions that are stated in [Dr. Farquhar's] report . . . this analysis confirms that the effect begins early.").)

Dr. Kapit, however, is not qualified to discuss Protocol 203 and it would be inappropriate to allow him to parrot the conclusions of Drs. Farquhar and Jule.[3] Dr. Kapit admits that he has not seen any of the underlying data from the three studies that are analyzed in Protocol 203, but has only reviewed the other experts' analysis of that data. (Kapit 6/19/06 Rough Dep. at 347:4-17; 351:6-22 (admitting he is "relying on the expertise and the results of these two men" and that he "can't do statistical tests, or I should not do statistical tests myself").)

## D.    Dr. Kapit Should Not Be Allowed To Parrot Dr. Avorn's Testimony.

In addition, Dr. Kapit should not be allowed to parrot the opinions of Dr. Avorn, which were expressed in an editorial.[4] Dr. Kapit believed that what "[Dr. Avorn] wrote in one comment is particularly noteworthy:

> In the case of [Vioxx] . . . [t]here were already ample signs in preapproval studies of possibly increased cardiovascular risk and even a document (and statistically significant) 5-fold increase in myocardial infarctions rates [sic] in a trial published soon after marketing began. The problem was not that these risks were not detected early enough; it was that they were not acted on appropriately, but the manufacturer or by the FDA, once they were noted.

(Kapit 5/23/06 Rpt. at ¶ 184; *see also* Kapit 6/19/06 Rough Dep. at 357:20-359:3.) Dr. Kapit's repetition of Dr. Avorn's opinions of Merck's conduct is not proper expert testimony and should be prohibited.

---

[3] Plaintiff has designated Dr. Farquhar as an expert witness who will offer testimony in this trial. Merck's objections to Dr. Farquhar's opinions are addressed in greater detail in Merck's Motion for Order Excluding Testimony of John W. Farquhar, M.D., filed June 16, 2006.

[4] Plaintiff has designated Dr. Avorn as an expert witness who will provide testimony in this trial. Merck's objections to Dr. Avorn's opinions are addressed in greater detail in Merck's Motion and Supplemental Motion for Order Excluding Testimony of Jerry Avorn, M.D., filed June 16 and 23, 2006, respectively.

12

816514v.1

## V.   CONCLUSION.

For the reasons stated above, the Court should preclude Dr. Kapit from testifying to:

(1)   The intent and state of mind of Merck and the FDA;

(2)   Criticisms that the FDA serves the pharmaceutical industry first and missed something when it approved the Vioxx NDA; and

(3)   Opinions that merely parrot plaintiff's other experts.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

816514v.1

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

14

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Memorandum in Support of Merck's Motion for Order Excluding Testimony of Richard Kapit, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 26th day of June, 2006.

/s/ Dorothy H. Wimberly

15