|  |  |
|---|---|
| SANDY WESNOWSKI and GORDON WESNOWSKI | SUPERIOR COURT OF NEW JERSEY |
| Plaintiffs, | LAW DIVISION MIDDLESEX COUNTY CIVIL ACTION DOCKET NO. L-9819-01 |
| v. | |
| JOHNSON & JOHNSON, JANSSEN PHARMACUTICA INC. and JANSSEN-ORTHO INC., | |
| Defendants | |

**OPINION GRANTING DEFENDANT'S MOTION TO DISMISS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

Argued:  September 30, 2003

Decided: June 10, 2004

Paul Pennock for plaintiff Sandra Wesnowski (Weitz & Luxenberg, P.C.)

Susan Sharko for defendants Johnson & Johnson and Janssen Pharmaceutica, Inc. (Drinker Biddle & Reath, P.C.)

CORODEMUS, J.S.C.

        Presently before this court is defendants' motion to dismiss plaintiffs' complaint under the doctrine of *forum non conveniens*.  For the reasons set forth herein, the motion is granted.

I. Introduction

Sandra Wesnowski suffers from Gastroesohphageal Reflux Disorder ("GERD"). In November 1999, to treat her condition, Sandra Wesnowski was prescribed Prepulsid[1]. Janssen-Ortho Pharmaceuticals, a wholly owned subsidiary of Johnson & Johnson, marketed Prepulsid in Canada as a therapy to control GERD.

Ms. Wesnowski continued to use Prepulsid until January 21, 2000, when she collapsed on the street and lost consciousness for several minutes. Ms. Wesnowski was admitted to Royal Inland Hospital and remained there for treatment for one week.

During her stay at Royal Inland Hospital, she underwent various tests to ascertain her condition. One of the tests used by the doctors was an electrocardiogram ("EKG"). The EKG showed prolonged QT. QT is a temporal measurement related to the heartbeat. Doctors, after performing additional tests, determined that Ms. Wesnowski required an automatic defibrillator to stabilize her heart rhythm. The doctors selected a Medtronic double chamber ICD and implanted it in Ms. Wesnowski.

When she returned home, a friend informed Ms. Wesnowski of the possible link between her injuries and her use of Prepulsid. Ms. Wesnowski immediately sought counsel to avail her of her rights; she was unable to obtain counsel in Canada, and therefore, sought counsel from the United States. She retained her current counsel, the law firm of Weitz & Luxenberg, P.C.

According to their own opposition papers, Plaintiffs' counsel filed this lawsuit in New Jersey because it is the principal place of business for the defendants and because Canada caps non-pecuniary and punitive damages. Defendants want to dismiss plaintiffs' case under the doctrine of *forum non conveniens*, arguing that plaintiffs have no

---

[1] Prepulsid is the Canadian equivalent of Propulsid.

2

connection with New Jersey and that her selection of New Jersey is patent forum shopping and because New Jersey is an inconvenient forum. Oral argument for this matter was held on September 30, 2003 before this Court.

## II. Contentions of the Parties

### A. Defendants' Argument

Defendants' contention is that plaintiffs' choice of forum is inappropriate. This is based on the inconvenient location, damages claimed, witnesses, and that plaintiff' allegations have no nexus to the State of New Jersey. Notwithstanding the absence of any connection to this litigation, plaintiffs ask this Court to allow the New Jersey State Judiciary and its citizens to be burdened by their claims. Defendants submit that because New Jersey is a demonstrably inappropriate forum and because viable alternative forums exist for the litigation of her claims, the plaintiffs' complaints must be dismissed.

1. Canada is the only proper forum to adjudicate the claims of these Canadian plaintiffs.

Defendants contend that discovery is unreasonably inadequate for litigating in New Jersey. In Kurzke v. Nissan Motor Corp., 164 N.J. 159, 168 (2000), the Court stated that dismissal on *forum non conveniens* grounds should normally await the outcome of at least some discovery efforts. The purpose of deferring forum non conveniens consideration until after some discovery has been conducted is to ensure that the court has a sufficient understanding of the difficulties caused by the plaintiff's selected forum and to have confidence in the soundness of its discretionary decision to decline to exercise jurisdiction. Id.

In accordance with Kurzke defendants contend that they have begun the discovery process, and that they have spent an inordinate amount of time, money and effort in obtaining discovery. Specifically, defendants contend that they have collected more than 700 pages of medical records from Canada and that much more discovery must be conducted. Accordingly, defendants argue that the prospective for completing adequate and timely discovery weighs against litigating this matter in New Jersey.

In addition, defendants assert that this case should be removed back to Canada because neither plaintiffs nor defendants are New Jersey residents. Defendants provide that one of the underlying principals of Kurzke is that of New Jersey courts providing a New Jersey forum for its citizens. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." Kurzke, supra, 164 N.J. at 171. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)). However, the Court provided that "when the plaintiff is foreign...this assumption is much less reasonable." Id. Accordingly, defendants argue that New Jersey is not an appropriate forum as both plaintiffs and defendants are foreign.

2. Private Interest Factors

Defendants contend that the private interest factors that this court must consider in evaluating a *forum non conveniens* application are as follows: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of attendance of willing witnesses; (3) whether a view of the premises is appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. Kurzke, supra, 164 N.J. at 166. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1974).

4

Defendants argue that these factors weigh in favor of granting their *forum non conveniens* motion.  In particular, defendants contend that all of the evidence on causation and damages is located in the hands of third parties in Canada, i.e., physicians, nurses, hospital staff, pharmacies and other healthcare providers.  Defendants assert that these critical witnesses are not subject to the control of either party to produce, and the court's inability "to compel the live testimony of critical witnesses at trial" makes transfer appropriate.  In re Consolidated Parlodel Litigation, 22 F.Supp.2d 320, 321-22 (D.N.J. 1988).  Furthermore, defendants argue that the expense of traveling to Canada to conduct discovery is highly relevant in determining the appropriateness of plaintiffs' choice of forum.  Accordingly, defendants assert that transfer to Canada is appropriate.

3. Public Interest Factors

Defendants provide that the public interest factors that this Court must consider in evaluating a *forum non conveniens* application are as follows: (1) administrative difficulties because of congested courts; (2) imposing jury duty on members of the community with no relation to the litigation; (3) local interest in the subject matter; and (4) local interest in having the controversy decided at home.  Kurzke, supra, 164 N.J. at 165. (quoting, Gulf Oil, 330 U.S. at 508-09).  For the following reasons defendants assert that the public interest factors weigh in favor of dismissal.

Defendants assert that because Prepulsid was not made, regulated, marketed or sold here, there is no sufficient governmental interest to provide a forum for dispute.  See Heavner v. Uniroyal, Inc., 63 N.J. 130, 141 (1973).  Defendants also argue that there is no reason to burden the citizens of Middlesex County with jury duty given that the parties and relevant witnesses are all Canadian.  Given this fact, defendants contend that the

5

affected members of the community who may wish to view the trial are located in Canada. Furthermore, defendants assert that this County's docket is overcrowded with other matters that directly concern the citizens of New Jersey.

Moreover, defendants argue that Canadian substantive law applies to this case because New Jersey's choice of law principals require that where there is a conflict between New Jersey law and the law of plaintiff's domicile, the court will apply the law of the jurisdiction having the most significant interest in the litigation. Gantes v. Kason Corp., 145 N.J. 478, 484 (1996). In Gulf Oil, supra, 303 U.S. at 509, the Court recognized that there is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case.

Finally, defendants argue that plaintiffs will suffer no prejudice by litigating this case in Canada since Canada's courts are competent to handle the matter and any materials plaintiffs need from defendants are available to them through Canada's discovery process.

B. Plaintiffs' Response

Plaintiffs contend that defendants have waived their right to file *forum non conveniens* motions and that they should be prohibited from doing so under the doctrine of judicial estoppel. Furthermore, notwithstanding defendants' waiver, plaintiffs assert that defendants' motion should be dismissed because: (1) defendants fail to meet their burden of demonstrating that discovery has been unreasonably inadequate; (2) plaintiffs choice of forum is appropriate under both the public and private interest factors; and (3) a dismissal of this case will lead to further delays to plaintiffs' case or perhaps even a loss

of opportunity for redress, as plaintiffs contend the statute of limitations in Canada may have run.

    1.  <u>Defendants are barred by the doctrines of waiver and judicial estoppel from raising *forum non conveniens* motions.</u>

Plaintiffs argue that defendants represented to the Court that they would not be challenging plaintiffs' forum selection. According to plaintiffs, Ms. Sharko "explicitly stated that she agreed that she was not going to be contesting forum or making forum motions." Plaintiffs' Brief at 12, September 30, 2003. As a result, plaintiffs argue that defendants are barred by the doctrine of waiver and the doctrine of judicial estoppel.

Plaintiffs argue that even if there had not been the affirmative waiver, such delay in filing this motion warrants its denial. "[A] defendant must assert a motion to dismiss for *forum non conveniens* within a reasonable time after the facts or circumstances which serves as the basis for the motion have developed and become known or reasonably knowable to the defendant." <u>Kurzke</u>, <u>supra</u>, 164 <u>N.J.</u> at 168-69. (citing <u>Lacey v. Cessna Aircraft Co.</u>, 932 <u>F.2d</u> 170, 177 (3rd Cir. 1991) (quoting <u>In re Air Crash Near new Orleans</u>, 821 <u>F.2d</u> 1147, 1165 (5th Cir. 1987), vacated on other grounds sub nom., <u>See World Airways, Inc v. Lopez</u>, 490 <u>U.S.</u> 1032, 109 <u>S. Ct.</u> 1928, 104 <u>L.Ed. 2d</u> 400 (1989)). Accordingly, plaintiffs argue that facts such as names and addresses of treating physicians, pharmacies, hospitals and other witnesses were served on defendants more than two years ago, and consequently, defendants' filing of the present motion to dismiss is made solely for the purpose of delay.

7

2. Defendants' motion to dismiss based on *forum non conveniens* should be denied as premature because discovery is not unreasonably inadequate.

In Kurzke, the New Jersey Supreme Court held "as a general rule, a motion for dismissal due to *forum non conveniens* should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff." 164 N.J. at 168. However, plaintiffs assert that defendants have failed to present any "record" substantiating that they have made a good faith effort at discovery and/or that discovery is unreasonably inadequate. Plaintiffs contend that they have been cooperative in the discovery process and have complied with all of defendants' reasonable requests for discovery and that plaintiff, Sandy Wesnowski, will willingly appear for deposition and trial in New Jersey. As a result, plaintiffs argue that the Court should deny defendants' *forum non conveniens* motion as premature.

3. Defendants' motion should be denied because plaintiffs' choice of forum is not demonstrably inappropriate.

The doctrine of *forum non conveniens* is an equitable principle which is firmly embedded in the law of New Jersey and based on the concept that a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate. See D'Agostino, supra, 115 N.J. at 491. However, determination of the appropriateness of the forum for *forum non conveniens* purposes also requires weighing the facts and circumstances of each case, as well as various public and private interest factors. See Gulf Oil, supra, 330 U.S. 501; Kurzke, supra, 164 N.J. at 165. When weighing these factors, "emphasis continues upon the element of harassment

8

and vexation notwithstanding references also to the element of trial conveniens." D'Agostino, supra, 115 N.J. at 494. Accordingly, plaintiffs assert that given defendants' substantial contacts with New Jersey, plaintiffs' choice of forum does not present the element of "harassment and vexation" and therefore, defendants' motion should be denied.

In particular, plaintiffs claim that Middlesex County, New Jersey is appropriate because it is the site of New Jersey's Mass Tort Court as well as Johnson & Johnson's principal place of business, and defendant Janssen Pharmaceutica Inc., a subsidiary of Johnson & Johnson, is located in Titusville, New Jersey. Plaintiffs also argue that as in D'Agostino, New Jersey is the locus of key tortuous conduct by defendants. Specifically, plaintiffs contend that corporate documents generated from defendants' New Jersey headquarters reveal that defendants acknowledged the health risks of their product yet still marketed the product to physicians, pharmacies and the consuming public. Plaintiffs argue that testimony of corporate decision makers from defendants' New Jersey headquarters will reveal that corporate policy regarding these decisions emanated from the New Jersey headquarters. Furthermore, plaintiffs assert that as a major industrial state, New Jersey has a well-articulated interest in its laws governing products made by its resident companies. Finally, plaintiffs argue that their choice of forum is not inappropriate even though their treating physicians are located outside New Jersey because plaintiffs and their experts will appear in New Jersey for trial, and other witnesses will be available for videotaped depositions or have agreed to appear in person.

4. <u>The public interest factors overwhelmingly favor venue in New Jersey.</u>

Plaintiffs contend that the first public interest factor – administrative difficulties because of congested courts - weighs in their favor because: (1) their home province is too congested; (2) granting the *forum non conveniens* motion will result in substantial delay; and (3) because this Court is better equipped for litigation of this volume and complexity than any court in plaintiffs' home province.

Plaintiffs also argue that New Jersey satisfies the second public interest factor – that courts must consider the imposition of jury duty on members of a community having no relation to the litigation. <u>See</u> <u>D'Agostino</u>, <u>supra</u>, 225 <u>N.J. Super.</u> at 250. Plaintiffs argue that New Jersey has a relation to the litigation because New Jersey has an interest in encouraging its corporate residents to market and place safe products into the stream of commerce. Furthermore, plaintiffs assert that defendants pay millions in tax to New Jersey and employ thousands of New Jersey residents, and as a result, the New Jersey community has a significant relationship to this litigation.

Plaintiffs argue that the final two public interest factors - the local interest in the subject matter such that affected members of the community may wish to view the trial and the local interest in having localized controversies decided at home - also weigh in favor of New Jersey retaining jurisdiction. <u>Id.</u> at 265. Plaintiffs argue that they satisfy these factors because so many pharmaceutical companies maintain a headquarters or facility in New Jersey that New Jersey has an interest in assuring the safety of products developed and manufactured here. Moreover, plaintiffs contend that the thousands of employees and former employees residing in New Jersey will likely have an interest in viewing the trial. Accordingly, plaintiffs assert there are more people in New Jersey with

10

a legitimate interest in participating as jurors and viewing the trial of a prominent New Jersey corporation than would be interested in attending the individual plaintiffs' trial in another jurisdiction.

### 5.   Private Interest Factors Also Favor Venue in New Jersey

Plaintiffs also contend that the private interest factors weigh in their favor.  The private interest factors addressed by plaintiffs are: (1) the relative ease of access to sources of proof; (2) the availability of a compulsory process for attendance of unwilling witnesses and the cost of attendance of willing witnesses; (3) whether a view of the premises is appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  See Id. at 250.

In considering the first two factors, plaintiffs argue that New Jersey is clearly the most appropriate forum for this case because it is where the corporate headquarters of the defendants are located; where key tortuous decisions were made by corporate witnesses; where many corporate witnesses reside; and where voluminous corporate records, such as internal memoranda and other documentary evidence describing these actions are located.

Plaintiffs dismiss defendants' argument based on In re: Consolidated Parlodel Litigation, that the location of the "home" state where Ms. Wesnowski and her treating doctors reside is the more convenient and thus appropriate location.  22 F. Supp. 2d 320 (D.N.J. 1998).  Plaintiffs argue that the decision in Parlodel is based on the federal law, 28 U.S.C. § 1404(a), which is a different standard for transfer than the standard involved in a *forum non conveniens* dismissal.  Plaintiffs provide that a transfer motion under 28 U.S.C. § 1404(a) can be granted based upon the conveniences of witnesses and the interests of justice whereas, the mere balancing of the conveniences when weighing a

*forum non conveniens* motion is insufficient to warrant dismissal.  See BOC Group, Inc. v. Chevron Chem. Co., LLC, 359 N.J. Super. 135, 145 (App. Div. 2003).  Accordingly, plaintiffs assert that defendants' reliance on Parlodel is misplaced.

Finally, plaintiffs argue that the last private interest factor – all other practical problems that make trial of a case easy, expeditious and inexpensive – also mitigates against dismissal of this case.  In particular, plaintiffs argue that the burden of expense will be greater if the case is tried in Canada because the large number of witnesses located here in New Jersey would have to travel to Canada.  In addition, plaintiffs contend that the expense would be greater in Canada because both parties would have to hire local counsel. Plaintiffs also assert that remedies would be severely limited in Canada, assuming the statute of limitations has not run and her home province gives her the opportunity to pursue her claim.

6.  New Jersey law will govern plaintiff's claims.

Plaintiffs argue that New Jersey law will likely govern the claims because New Jersey has rejected the rule for determining choice of law based on the place where the injury occurred—i.e., the lex loci delicti rule.  See Veazey v. Doremus, 103 N.J. 244, 247 (1986).  Instead, New Jersey has adopted the more flexible governmental-interest analysis in choice-of-law determinations.  Id.  Under this analysis, the determinative law is that of the state with the greatest interest in governing the particular issue.  Id. Accordingly, plaintiffs assert, given their arguments above, that New Jersey has the greatest interest in governing this matter and therefore New Jersey law should apply.

C. Defendants' Reply

1. <u>Plaintiffs' choice of New Jersey is Patent Forum-Shopping.</u>

Defendants argue that plaintiffs' choice of law is patent forum-shopping. Defendants provide <u>In re Rezulin Products Liability Litigation</u>, 214 <u>F. Supp. 2d</u> 396 (S.D.N.Y. 2002), where the plaintiff, who resided in Canada, filed a Rezulin claim in New York. After determining that defendants were amendable to suit in Canada and that Canada was a suitable alternative forum, the court reviewed both the public and private interest factors as set forth in <u>Gulf Oil Corp. v. Gilbert</u>, 330 <u>U.S.</u> 501 (1947); <u>Kurzke v. Nissan Motor Corp.</u>, 164 <u>N.J.</u> 159 (2000)). The MDL Court in <u>In re Rezulin</u> determined that the public interest factors favored Canada because Canada had a predominant interest in seeing that its residents were compensated for injury and because the interest of the United States in regulating the conduct of United States drug manufacturers would be served adequately by the mass of Rezulin litigation brought on behalf of United States plaintiffs. <u>Id.</u> at 399. The private interest factors also favored Canada because the witnesses relevant to plaintiff's alleged injuries and treatment were in Canada, and the Canadian physicians were not subject to compulsory process in the United States. <u>Id.</u>

Defendants assert that the facts and procedural settings of the current matter are identical to <u>In re Rezulin</u>. First, as in <u>In re Rezulin</u>, defendants agree to permit the case to go forward in Canada and will produce, at their own expense, any witnesses within their control who are necessary for litigation. <u>Id.</u> at 400. Second, if the litigation is transferred to plaintiffs' home province, there will be no inconvenience to the plaintiffs. <u>Id.</u> And third, defendants contend, because the case is in the MDL, "the practical reality is that all or substantially all of the liability discovery and preparation will be done in the MDL by

the Plaintiff's Executive Committee, not by the plaintiff.  The focus of plaintiff's individual case therefore is likely to be on plaintiff's illness and on causation...not on defendants' actions." Id. at 400-01.  The Rezulin Court also found that plaintiff's effort to justify litigating in the United States by arguing that Canada does not permit punitive damage awards in such cases "underscored the fact that plaintiff's suit [was] the product of forum shopping." Id.

Defendants consent to this case being litigated in Canada and agree to toll the statute of limitations so the original filing date will be deemed to be the same as the New Jersey filing date.

2.  Defendants' *forum non conveniens* motions are not barred by the doctrine of waiver and judicial estoppel.

Defendants respond to plaintiffs' assertion that the *forum non conveniens* motion is barred by the doctrine of waiver and judicial estoppel.  First, defendants argue that defense counsel was on vacation outside the United States on the date plaintiffs claim the agreement was made by telephone (August 7, 2001).  Furthermore, defendants argue that the alleged agreement is not memorialized in any Case Management Order, stipulation between the parties, transcript, or other written agreement.  Defendants argue that the only memorialization on which plaintiffs rely is an email which was never shared with defense counsel and is not part of plaintiffs' submission to the Court.

Defendants suggest that the discrepancy regarding plaintiffs' assertion of waiver is the result of a communication on February 15, 2001, where plaintiffs' liaison counsel represented that his group, which included a number of law firms including Weitz & Luxenberg, would not file Propulsid cases outside of New Jersey if the defense would not

file *forum non conveniens* motions to dismiss the out-of-state cases. Defendants' counsel agreed that absent a change or unusual circumstances, defendants would not seek a change of venue at that time, but plaintiffs would have to appear for depositions in New Jersey and defendants would reserve options as to the motions and choice of law arguments. According to defendants, two months later and thereafter, this same group of plaintiffs' counsel breached the agreement by filing over one hundred cases in Pennsylvania. As a result, defendants claim they were no longer bound by whatever understanding there was, and cannot be deemed to have waived their right to file *forum non conveniens* motions.

Defendants argue that they are not judicially estopped from filing *forum non conveniens* motion because the judicial estoppel doctrine requires judicial acceptance of a party's prior inconsistent position; defendants assert that no such acceptance exists. Defendants argue that the Court has never entered an order or otherwise acknowledged any alleged waiver of the *forum non conveniens* defense in this litigation. In fact, defendants claim the Court has actually acknowledged defendants' right and intention to bring these motions. (See 14, 17 and 19 of Sharko Cert., attached as Exhibit B to the Falletta Cert.). Furthermore, defendants point to Case Management Order 21, entered on May 28, 2003, which specifically grants defendants the right to file *forum non conveniens* motions. As a result, defendants argue that the doctrine of judicial estoppel does not apply and does not restrict their right to pursue *forum non conveniens* motions.

3. Defendants' motion is timely.

Defendants reject plaintiffs' argument that this motion is not timely. Defendants contend that they have made a concerted effort to get the relevant records in this case, as

required by the Supreme Court in Kurkze. Furthermore, defendants assert that they have

complied with this Court's Case Management Orders with regard to filing such motions.

Defendants argue that certain depositions have not been taken yet because plaintiffs'

treating physicians are located in Canada, and the fact that defendants have been trying to

dismiss this case on *forum non conveniens* grounds since September 2002. As a result,

defendants argue that they have more than satisfied the Kurzke Court's preference for the

discovery efforts.

III.    Analysis

The doctrine of *forum non conveniens* allows a defendant to attempt to avoid suit

in an inconvenient forum. To obtain a *forum non conveniens* dismissal, the defendant

must prove two prerequisites: first, that a more convenient forum is available; and

second, that the plaintiff's choice of forum is inconvenient. The *forum non conveniens*

determination is committed to the sound discretion of this court.

A.  Alternative Forum

The doctrine of *forum non conveniens* is an equitable principle that allows the

court to decline jurisdiction when litigation in the forum selected by the plaintiff is

contrary to the convenience of the parties and the interests of justice. Gore v. U.S. Steel

Corp., 15 N.J. 301, 305, cert. denied, 348 U.S. 861(1954); Kurzke v. Nissan Motor Corp.,

164 N.J. 159 (2000). "The first step in a *forum non conveniens* analysis is for the court to

establish the existence of an adequate alternative forum." Bank of Credit and Commerce

Int'l (Overseas) Ltd. v. State Bank of Pakistan, 273 F.3d 241, 246 (2d Cir.2001). As long

as defendants stipulate that they will not contest jurisdiction in Canada and that the forum

permits litigation of the subject matter of this action, Canada is a suitable alternative forum.

Plaintiffs mistakenly assume that, because defendants have a corporate presence in New Jersey, any and all personal injury litigation allegedly arising from use of its products should be filed in New Jersey. Admittedly, our procedural rules afford plaintiffs a very wide choice of forums, e.g., an action may be brought against a defendant in any state with which the defendant has minimum contacts. But when a plaintiff chooses a forum that is seriously inconvenient and another more convenient forum is available, the doctrine of *forum non conveniens* justifies dismissal in anticipation that the plaintiff will recommence her suit in a more convenient forum.

1. Adequate Forum

On the issue of adequate forum the Federal Court held, "a foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum." Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 835 (1993). (quoting In re Air Crash Disaster, 821 F.2d 1147, 1164 (5th Cir. 1987). Furthermore, the Court stated "[a] foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Id. In the present matter plaintiffs have only said that Canada caps non-pecuniary and punitive damages. This is not sufficient to declare Canada an inadequate forum. New Jersey caps punitive damages, and many other states limit pecuniary and non-pecuniary damages.

17

B.  The Public and Private Interest Factors

The Court must now consider the second step in a *forum non conveniens* analysis: weighing the public and private interest factors set forth in Gulf Oil Corp v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), while giving appropriate deference to the plaintiffs' choice of forum.  These factors were summarized in Mandell v. Bell Atl. Nynex Mobile, 315 N.J.Super. 273 (Law Div. 1997).  First, the public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest from having localized controversies decided at home; (3) the interest of having a trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or the application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. Id. at 279-80.

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. Id.

1.  Application of the Public Interest Factors.

In D'Agostino, supra, 115 N.J. 491, the New Jersey Supreme Court noted that, "[T]he focus of these public-interest factors is on the existence of a factual nexus between the issues in the litigation and the forum selected by the plaintiff."  A significant relationship between the issues in the case and the jurisdiction selected by the plaintiff,

18

for example, is the type of factual nexus that would induce a court to retain jurisdiction. See id. at 495.

While this court recognizes that generally a resident plaintiff's choice of forum is entitled to great deference, "a non-resident's choice of forum is entitled to substantially less deference." Mandell, supra, 315 N.J. Super. at 283.

The Mandell court further stated:

> The purpose of the public interest factors is to look beyond the interests of the specific parties to any dispute and to determine on a broader societal level whether the action should be maintained here. In this regard, it is simply not enough that the plaintiff chooses this forum, it is essential that, looking at the public interest considerations, there be a connection with the forum, a reason why it should, in fairness to the citizens of this state, be permitted to remain here. In this regard, the public interest factors require the court to analyze the relative congestion of the court dockets here in New Jersey, as opposed to the place where the dispute arose, the fairness of imposing the significant burdens of jury duty on our citizens where the dispute bears no relationship to this community, the local interest in the dispute which may motivate members of the community to desire information or access to the trial of an action which affects them, and the general local interest to be served by having a local controversy decided "at home." See id. at 283. (citing D'Agostino, supra, 115 N.J. at 495).

In holding that the matter was to be dismissed on *forum non conveniens* grounds, the Mandell court noted that:

> [T]he only relationship of this dispute to this jurisdiction is that the parent corporation of the subsidiaries [that] entered into the contracts... is located here. There is no public reason advanced by plaintiff [that] supports permitting this enormous and complex matter to proceed here.  Our court dockets are crowded with matters of interest to and directly concerning the citizens of our own state. Id. at 283-84.

As the courts in Gulf Oil and Mandell noted, there is reason for holding trial in the community where the alleged harm took place. There is a local interest in having

localized controversies decided at home.  In this case, "Canada has a strong interest in seeing to it that one of her residents is fairly compensated for any injury inflicted upon [her]" while "the United States has little interest in adjudicating this controversy."  In re: Rezulin Products Liability Litigation, 214 F.Supp.2d 396, 399 (2002).  In this case, the public interest factors weigh heavily in favor for dismissal.

    2.   Application of the Private Interest Factors.

The private interest factors focus on the practical problems that make trial of a case easier, more expeditious, and less expensive.  There is little question that witnesses relevant to plaintiffs' claims of injury and their treatment are located in Canada.  And, unlike the employees of defendants, who can be compelled to attend trials by the corporation, the Canadian physicians are not subject to compulsory process in New Jersey.  An analysis of the witnesses, by number, location, and level of control that the court has over them, favors litigation in Canada.

    3.   Plaintiff's Choice of Forum

Judge Kaplan, U.S.D.J., the appointed Multi District Litigation Judge, resolved a similar *forum non conveniens* motion involving a Canadian resident.  Judge Kaplan noted that:

> [I]t is perfectly plain that plaintiff's choice of forum had everything to do with forum shopping and nothing to do with convenience.  He and all the doctors who now treat or recently have treated him are in [Canada], so that aspect of the case obviously will be easier to litigate in Canada than here.  In re: Rezulin, supra, 214 F.Supp.2d at 400.

Similarly, in the current matter, plaintiff and all the doctors who now treat or recently treated her are in Canada.

Moreover, plaintiffs admit that they wish to pursue their claim in New Jersey because their remedies are restricted in their home province. However, as noted previously, a foreign forum is adequate even though the parties may not enjoy the same benefits as they might in an American court. Baumgart, supra, 981 F.2d at 835. Certainly, in this instance plaintiffs are not without remedy. Compensatory damages for pain and suffering and economic loss are recoverable under Canadian law up to approximately C$285,000. See S. Gordon McKee, Why the Development of Mass Torts in Canada is Important to Corporate America, 71 Def. Couns. J. 32, 36 (2004). Furthermore, the Supreme Court of Canada recently upheld a $1 million punitive damage award.[2] Id. (citing Whiten v. Pilot Ins. Co., 209 D.L.R. (4th) 257 (S.C.C. 2002). Thus, plaintiffs are not without remedy. The fact that they may get a better deal in New Jersey is not a legitimate reason to provide them a forum for their claim.

### C.  Waiver and Judicial Estoppel

Defendants have not waived their right to invoke the doctrine of *forum non conveniens*. "Waiver is the voluntary and intentional relinquishment of a known right, operative unilaterally and without regard to reliance by others." Merchants Indem. Corp. v. Eggleston, 68 N.J. Super. 235, 253 (App. Div. 1961) (citing West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152-153, (1958); Mattia v. Northern Insurance Co. of New York, 35 N.J.Super. 503, 511, (App.Div.1955)). Waiver "may take the form of agreement founded on valuable consideration or it may constitute a clear, unequivocal and decisive act showing such purpose as to amount to estoppel in pais." Id. (citing Aron v. Rialto Realty Co., 100, N.J.Eq. 513, 518 (Ch.1927), affirmed

---

[2]    Historically in Canada, punitive damage awards have rarely been made in personal injury cases, and even then they have generally been well below C$100,000. See McKee, supra, 71 Def. Couns. J. at 36.

102 N.J.Eq. 331 (E. & A. 1928)). "Intention to waive need not be stated expressly but may be spelled out from state of facts exhibiting full knowledge of circumstances producing right and continuing indifference to exercise of that right." Id.

In the instant case, there is no "clear", "unequivocal" or "decisive" act whereby defendants can be said to have waived their right to file motions based on *forum non conveniens*. Plaintiffs' liaison counsel's recollection of a conversation, which is disputed, is not sufficient to establish waiver. Thus, the facts simply do not suggest that there ever was an agreement between the parties of the type claimed by plaintiffs. In fact there is evidence to the contrary, Case Management Order 21 specifically gave defendants the right to file such motions.

Furthermore, in accordance with the analysis above, defendants are not judicially estopped from filing *forum non conveniens* motions. As provided in Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606-07 (App. Div. 2000), certif. denied 167 N.J. 88 (2001):

> "The purpose of the judicial estoppel doctrine is to protect "the integrity of the judicial process." A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding. "[T]o be estopped [a party must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained." "The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." **Consequently, "[a]bsent judicial acceptance of the inconsistent position, application of [judicial estoppel] is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected; the perception that either the first or second court was misled is not present."**

22

As noted previously, there has been no judicial acceptance of an inconsistent position; or more specifically, defendants' alleged waiver of their right to file *forum non conveniens* motions.  Instead, Case Management Order 21 provides just the opposite – that the Court has acknowledged defendants right to file such motions.

D.  Recent Appellate Court Decisions

This Court has reviewed three recent New Jersey Appellate Court decisions involving the doctrine of *forum non conveniens*.  These decisions either support this Court's finding that the current matter should be transferred back to Canada for adjudication or can be distinguished from the facts at hand.

In BOC Group, Inc. v. Chevron Chemical Company, LLC, 359 N.J. Super. 135 (App. Div. 2003), plaintiff, a Delaware corporation with its principal place of business in Murray Hill, New Jersey, sued defendant, also a Delaware corporation with its principal place of business in San Francisco, California, for breach of contract.  The alleged harm occurred in Louisiana, however, plaintiff filed suit in New Jersey.

Upon a balancing of the public and private interest factors, the Court in BOC Group determined that New Jersey had a strong interest in the case because plaintiff has its corporate headquarters in New Jersey and employees over 1500 people in this state.  Id. at 145-46.  Similarly, in the current matter, New Jersey has an interest in this litigation since defendants have headquarters in New Jersey and employ large numbers of people here.  However, BOC Group is not determinative on these facts alone.  The Court also provided that a factor for consideration was the location where plaintiff's evidence and witnesses were located.  Specifically, the Court stated that much of plaintiff's evidence was kept either in its New Jersey office or at its National Scheduling Center, in

23

Bethlehem Pennsylvania. See id. at 146. Furthermore, the Court considered the fact that plaintiff's expert witness lived and worked in New Jersey. Id. at 145.

Similarly, in the current matter, the most critical evidence, that of causation, will be from Ms. Wesnowski's treating physicians. These treating physicians are located in Canada, the site of the alleged harm, and New Jersey cannot compel discovery of such individuals. As the Court noted, "a plaintiff's choice of forum will not be disturbed 'except upon a clear showing of real hardship or for some other compelling reason.'" Id. at 146. (citing Civic S. Factors Corp. v. Bonat, 65 N.J. 329, 333 (1974). In this instance, the fact that New Jersey cannot compel discovery of Ms. Wesnowski's treating physicians and other potential witnesses located in Canada is a "compelling reason" to deny plaintiffs' choice of forum.

Next, in Madan-Russo v. Posada, 841 A.2d 489 (App. Div. 2004), the New Jersey Appellate Division overruled a lower court's dismissal on forum non conveniens grounds when it determined that despite the foreign location of the alleged harm, New Jersey was not an improper forum because New Jersey has a "compelling concern" to protect its citizens.

In Madan, the plaintiff, a New Jersey resident, was allegedly assaulted during a massage by a hotel employee while in Mexico. The plaintiff brought an action in New Jersey against the Mexican corporation that owned the hotel alleging negligent supervision of management as well as negligent hiring and training of employees. Despite the fact that all of the documents and employees who may serve as potential witnesses were located in Mexico, the Court ruled that New Jersey was the appropriate forum.

24

The Appellate Court rejected the lower court's reasoning that although "New Jersey has a great interest in protecting its own citizens,... that burden is not as great as Mexico's interest in regulating its hotel, tourist industry and protecting the population in general." Id. at 493-94. The Appellate Court stated, "New Jersey has an obvious, compelling concern for the protection of its citizens and to provide a forum for redress for such wrongful conduct." Id. at 494. Similarly, in the case at hand, Canada has the "compelling concern" for the protection of its citizens, even greater than New Jersey's own interest in regulating its local industry.

Finally, Paradise Enterprises Limited v. Sapir, 356 N.J. Super. 96 (App. Div. 2002) can be distinguished from the current matter. In Paradise Enterprises, plaintiff, a Bahamian corporation, and defendant, a New York resident, entered into an agreement which selected New Jersey as the forum of choice. Plaintiff filed suit in New Jersey, invoking the forum selection clause. Defendant moved to dismiss the action on the basis of the forum non conveniens doctrine, asserting that insufficient New Jersey contacts existed to justify suit in New Jersey. The Law division granted defendant's motion.

In Paradise Enterprises, the focus of the Court was on the doctrine of forum selection which the Court found took precedent over the *forum non conveniens* doctrine. Thus, the Appellate Division overturned the trial court decision and stated "[t]here seems to be no clear rule as to whether forum non conveniens analysis is required in a case where an express forum selection clause exists." Paradise Enterprises, supra, 356 N.J. Super. at 107. However, "settled principles of New Jersey law with respect to forum selection agreements provide adequate protection for private and public interests, so that

where such an agreement exists it is unnecessary to rely on forum non conveniens doctrine. Id. at 108.

The current matter does not involve a forum selection agreement, and therefore, the forum non conveniens doctrine is the appropriate doctrine to look to.

## IV. Conclusion

This Court has evaluated both the private and public interest factors in this matter as well as the specific objections of waiver and judicial estoppel raised by plaintiffs and concludes that it would be inappropriate to allow Ms. Wesnowski, a resident of Canada, to proceed in New Jersey. These cases require substantial work and time to develop and this preparation will be far easier to perform in Canada. Moreover, in this instance all the parties are alive and in Canada and without any extenuating circumstances that would influence the court to maintain jurisdiction. Therefore, given New Jersey's limited interest in this case, it would be manifestly unfair to force New Jersey citizens to bear the heavy burden of hosting a dispute among a resident of another country.

While a plaintiff's choice of forum is rarely disturbed, this is the unusual instance where dismissal is appropriate, as the private and public interest factors weigh in favor of dismissal, and plaintiffs are free to pursue their claims in other jurisdictions including the MDL or Canada. Accordingly, in this case, the "ends of justice" suggest that plaintiffs' forum is inappropriate, and therefore, the court will decline jurisdiction under the doctrine of *forum non conveniens*. See Mowrey v. Duriron Co. Inc., 260 N.J.Super. 402, 409 (App.Div.1992). The balance of the public and private interest factors tilts heavily in favor of the defendants, justifying dismissal.

26

Furthermore, plaintiffs have failed to demonstrate that they would suffer any prejudice if the court dismisses their complaints, particularly if defendants stipulate to service and jurisdiction in the event suit is re-filed in Canada and agree to use the filing date in this court for purposes of any defense based on the statute of limitations in Canada. Under these terms, plaintiffs will not be denied an alternative venue. Finally, plaintiffs have failed to show how defendants waived their right to dismiss under the doctrine of *forum non conveniens*, and therefore, the doctrine of judicial estoppel may not be invoked to bar defendants' motion. Accordingly, defendants' motion to dismiss under the doctrine of *forum non conveniens* should be granted.

Plaintiff's case will be dismissed without prejudice for ninety (90) days, allowing refilling in Canada. Defendant has represented to the Court not to contest refiling as per condition set forth in defendant's contentions. On September 10, 2004 this case will be dismissed with prejudice.