## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to | : | JUDGE FALLON |
| | : | |
| Gerald Barnett v. Merck & Co., Inc. | : | MAG. JUDGE KNOWLES |
| Case No. 02:06CV00485 | : | |
| | : | |

### PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO THE MOTION OF MERCK & CO., INC. FOR ORDER EXCLUDING THE FRIES LETTER

**(Plaintiff's Opposition to Defendant's Motion in Limine No. 3)**

## I. INTRODUCTION

Plaintiff, Gerald Barnett, submits this supplemental memorandum in opposition to Defendant's Motion in Limine for Order Excluding the Fries Letter.  Prior to June 16, 2006, Plaintiff did not have the testimony of Dr. James Fries, to separately authenticate and introduce the January 19, 2001 letter the doctor authored to Mr. Raymond Gilmartin, then-CEO of Merck (the "Fries letter").[1]  Merck had previously sought to exclude the Fries letter on the grounds that it was inadmissible hearsay.  That objection may now be avoided as Dr. Fries, after notice and an opportunity for cross-examination by counsel for Merck, has testified at deposition and established the basis for the admissibility of the Fries letter.[2]

---

[1] A copy of the Fries letter (P1.0176) is attached hereto as Exhibit "A".

[2] A copy of the Deposition of James Fries, M.D. (June 16, 2006), is attached hereto as Exhibit "B."

1

For the reasons set forth below, Merck's motion should not be sustained.

## II. <u>FACTUAL BACKGROUND</u>

Dr. Fries at his recent deposition testified under oath that he is a medical doctor and Professor of Medicine (emeritus) at Stanford University. Fries Depo. at 2. Dr. Fries explained the circumstances leading up to his correspondence with Mr. Gilmartin, beginning with a phone call he received at his home on Saturday, October 28, 2000, from Merck's Vice-President of Medical Affairs, Mr. Louis Sherwood. *Id.* at 8-9; 58-59. Dr. Fries considered the call at his residence from a then unknown pharmaceutical executive, "extraordinary." *Id.* at 58.

Apparently, Mr. Sherwood took issue with publicly critical talks about the potential cardiovascular toxicity of Vioxx being made by a Stanford research assistant on Dr. Fries' staff, Dr. Gurkipal Singh. *Id.* at 9. Mr. Sherwood wanted Dr. Fries to assist him to have Dr. Singh stop making those kinds of statements. *Id.* at 11. In "an attempt to influence and bring additional pressure to bear on Dr. Singh," *id.* at 62-63, Mr. Sherwood informed Dr. Fries that his assistant would "flame out if he didn't change his behavior and that there would be consequences for Stanford." *Id.* at 11. As a bonus, Mr. Sherwood also, "implied that there might be consequences for [Dr. Fries]." *Id.*

So informed, Dr. Fries determined to check out the veracity of Mr. Sherwood's allegations. *Id.* at 13. Dr. Fries was on sabbatical at the time and undertook an extensive 6-week investigation that included, speaking with Dr. Singh, reviewing Dr. Singh's PowerPoint slides, meeting in person with Mr. Sherwood, interviewing other doctors who believed that they too were subject to Merck's intimidation practices, and researching Vioxx's cardiovascular toxicity data. *Id.* at 13-23, 36. Dr. Fries verified all of his research to ensure its accuracy and cataloged

his investigation in what is now referred to as the Fries letter. *Id.* at 35-36; 68-69.  At the

conclusion of this investigative research, Dr. Fries mailed his letter to Mr. Gilmartin to put him

on notice of the results of his findings. *Id.* at 57.   Without characterizing the letter, excerpts are

quoted below:

> Dr. Sherwood complained that Dr. Gurkipal Singh of our group
> had an anti-Merck bias and was giving lectures that were
> irresponsibly anti-Merck and specifically anti-Vioxx.
>
> The much broader issues, which surfaced at the American College
> of Rheumatology meetings, were most disturbing and involve
> suppression of data by Merck and a consistent pattern of
> intimidation of investigators by Merck staff, principally Dr.
> Sherwood but also others on his staff.
>
> A number of physicians have concerns that Vioxx may have some
> serious and under-emphasized drug toxicity problems, particularly
> at the 50 mg dose approved for pain control – these concerns are
> shared by the FDA reviewer.  Vioxx has been reported to have
> more frequent peripheral edema problems, more aggravated
> hypertension, more congestive heart failure, and more heart attacks
> than other NSAIDS, especially Celebrex.  Some 0.4% of Vioxx
> subjects had heart attacks compared with 0.1% in the naproxen arm
> in the Merck-sponsored VIGOR study and this was statistically
> significant.  Some of these data have been described in the Wall
> Street Journal and may have affected stock prices but there has
> been little information presented to date in the medical literature. . .
> . I tried to get the data myself; it is hard to judge these areas
> without the numerical details.  Yet, one could not avoid the
> conclusion that because of the interest in these issues the data
> would have been presented had they been favorable . . . The
> publication of the VIGOR trial recently in the NEJM did not
> contain the data on edema and fluid retention at all, and dismissed
> the heart attack data with weak arguments.
>
> [T]he cover-up is a worse problem than the side effects of fluid
> retention and hypertension and CHF, which could be handled by
> stronger labeling for at risk patients, or by other means.  Else, there
> is a risk of case reports of seriously complicated congestive heart
> failure or other serious adverse reactions, which could threaten the

drug approval.  The heart attack data, of course, need to be confirmed or refuted by further study, as do the data on comparative renal toxicity between Cox-1 sparing agents.

From the discussion above I make three conclusions.  First, some investigators at some times probably do make statements that may seem seriously unbalanced to those vested or instructed in opposite opinions and that close attention to strict impartiality is essential for any person making presentations on any such subject.  Second, Merck has been attempting to systematically downplay some unusual side effect patterns of Vioxx.  I would hesitate to use the term "hiding data" but Merck has certainly not been forthcoming with data and has made access to the data difficult.  Finally, and most importantly, Merck employees have systematically attacked those investigators or speakers who expressed what Merck staff felt were critical opinions in a manner which seriously impinges on academic freedom.

Merck prefers that the jury not know that Merck was placed on notice that high ranking officials within the company were engaged in efforts to intimidate and/or threaten physicians so intemperate as to question the cardiovascular safety of Vioxx.  Dr. Fries' testimony and letter evidence these facts and should be admitted for that purpose.

## III. ARGUMENT

Dr. Fries' letter and his actions surrounding that letter are now of record.  His testimony was elicited at an appropriately noticed deposition.  The Fries letter is no longer the utterance of an out of court declarant, not subject to cross-examination by Merck.  *See* Fed.R.Evid. 804(b)(1); Fed.R.Civ.P. 32(a).  The testimony of Dr. Fries and the letter exhibited at his deposition are now admissible.

To the extent that Merck maintains that Dr. Fries' letter remains heresay, Merck's argument overlooks one salient point: the letter is not being introduced to prove the matters asserted therein.  Rather, the Fries letter memorializes the state of mind of Dr. Fries, who was

attempting to put Merck on notice of his concerns regarding academic freedom and the effects

Merck's intimidation had on the scientific process.  Fries Depo. at 45.  Also, as evidence going

towards Merck's notice of the problems related to Vioxx's cardiovascular risks, the letter is

admissible.  *See U.S. v. Central Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984) (Letter of

protest, which was admitted to prove only that notice of claim had been properly given, was

properly admitted in suit brought against ocean carrier to recover damages for missing cargo

because, "[e]vidence introduced to prove merely that notice was given is not offered to prove the

truth of the matter asserted therein and, therefore, is not hearsay.").  *See also GHR Energy Corp.*

*v. Carboline Co.*, 744 F.Supp. 1405, 1407 (E.D.La. 1990).[3]

For the sake of brevity, Plaintiff incorporates his previous arguments for admission of the

letter.

---

[3]Because the frank discussion of Dr. Fries describes information he received through
conversations with other affected speakers, should the Court find this portion of the Fries letter to
be inadmissible, in the alternative, Plaintiff submits it may be redacted, so that the notice
elements of the letter may still be presented to the jury.

## IV.    CONCLUSION

Merck's motion to exclude the Fries letter is without merit.  It should be denied.

Respectfully submitted,

By _P. Leigh O'Dell_____

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama  36103-4160
Telephone:  (334) 269-2343
Facsimile: (334) 954-7555

Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California  92660
Telephone:  (949) 720-1288
Facsimile: (949) 720-1292

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

**Counsel for Plaintiff**

6

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70013
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Arnold Levin, Esquire **(on Brief)**
Fred S. Longer, Esquire **(on Brief)**
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER
& WARSHAUER, L.L.C.
P.O. Box 960
191 East Second Street
New Roads, LA 70760
(225) 638-6137
(225) 638-8836 (fax)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS,
MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

7

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants'
Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs'
Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically
uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No.
8A, and that the foregoing was electronically filed with the Clerk of the Court of the United
States District Court for the Eastern District of Louisiana by using the CM/ECF system which
will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657
on this _24ᵗʰ_ day of June, 2006.

P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

9