FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUN 23  PM 2: 04

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| *Case No. 2:05-CV-04379* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

## MERCK'S OPPOSITION TO PLAINTIFF'S MOTION TO OPEN AND CLOSE DEPOSITION TESTIMONY OF MR. SMITH'S PRESCRIBING AND TREATING DOCTORS

Defendant Merck & Co., Inc. ("Merck") respectfully submits this opposition to plaintiff's motion to open and close the questioning of plaintiff's prescribing and treating doctors at their depositions.

As set forth below, plaintiff's assertion that the party bearing the burden of proof is entitled to lead all depositions is contrary to the well-established rule that the party noticing a deposition has the right to lead the questioning of the deposition witness. Moreover, as long as plaintiffs are permitted to engage in *ex parte* contacts with a physician witness prior to his or her

Fee_____
Process_____
X Dktd_____
CtRmDep_S16233v.1
Doc. No_____

1

deposition and Merck is denied that same opportunity, Merck should, at the very least, be
allowed to question the physicians first.[1] Any other result would unfairly prejudice Merck by
enabling plaintiffs to influence physicians' views and then open their depositions with questions
designed to lead them to speculative answers – or even worse, rehearsed testimony.

## BACKGROUND

Merck's counsel noticed the depositions of plaintiff's prescribing physician, Dr. Grefer,
and treating physician, Dr. Courtade, on May 26, 2006. At the time Merck scheduled the
depositions, plaintiff's counsel had not indicated that plaintiff intended to depose these witnesses.
(See Letter from Carrie Jablonski to Grant Kaiser ("Jablonski June 7 Letter"), at 1 (June 7, 2006)
(attached as Ex. 1).) Days later, Merck's counsel received a letter from Grant Kaiser, plaintiff's
counsel, indicating that although Merck was the first party to notice the depositions of the
prescribing and treating physicians in that case, Mr. Kaiser intended to lead the questioning at
the depositions of both physician witnesses. (See Letter from Grant Kaiser to Carrie Jablonski
("Kaiser May 31 Letter"), at 1 (May 31, 2006) (attached as Ex. 2).)   In response, Merck
explained that, as the party noticing the depositions, it would ask the first questions of these
physician witnesses and allow plaintiff ample opportunity for subsequent examination. (See
Jablonski June 7 Letter at 1.)

The current dispute over which party should question plaintiff's physicians first is just the
latest in a series of difficulties Merck has experienced in noticing depositions in this case.
Merck's counsel has been diligently coordinating depositions of plaintiff's treating physicians
and prescribers for over a month. In connection with each doctor's deposition, Merck has either:
(a) asked plaintiff's counsel in advance whether the available date would work with his schedule;

---

[1]     For the reasons stated in Merck's letters to the Court dated May 5, 2006 and May 15, 2006, and discussed
further below, any *ex parte* contacts by plaintiffs' counsel with a plaintiff's physicians should be limited to
discussions regarding the plaintiff's medical condition.

2

or (b) noticed the deposition as a placeholder and indicated that Merck would be happy to move

the deposition date if he was unavailable.  Despite these efforts, plaintiff's counsel has attempted

to thwart many of the scheduled and noticed depositions, oftentimes deciding not to respond at

all regarding his availability.  (Attached as Exhibit 3 are several letters and emails Merck has

sent plaintiffs' counsel to which he simply did not respond.)  Now, even though Merck

coordinated the depositions with the doctors' offices long before plaintiff ever suggested he was

interested in taking the depositions, attempted to confer with plaintiff's counsel concerning

workable dates for the depositions, and noticed the depositions on dates the doctors' offices have

indicated they are available for depositions, plaintiff's counsel seeks to co-opt the depositions as

his own.  For the reasons set forth below, the Court should not allow him to do so.

**ARGUMENT**

**A.      Defendants Should Be Allowed To Question First Because They Noticed The Subject Depositions.**

As a threshold matter, plaintiff's motion should be denied because it ignores the well-

established rule that the party who notices a discovery deposition is entitled to lead the

examination of that witness.  *See Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637 (D. Ind.

1991) (explaining that customarily "the party noticing the deposition will commence the

interrogation with direct examination. Afterward, each other attending party may cross-examine.

The party who called the witness will then have an opportunity to conduct redirect examination,

and this may be followed with recross examination by each other attending party."); *see also* Fed.

R. Civ. P. 30(b)(1) ("[a] party *seeking to take* the deposition of any person upon oral

examination shall give reasonable notice in writing to every other party to the action") (emphasis

added).

3

Plaintiff's effort to evade this fundamental rule by arguing that the party with the burden of proof "should be allowed to open and close the testimony of his physicians" (Pl.'s Mot. at 2) is without any basis in the law.  Not surprisingly, the only cases cited by plaintiff in support of this novel argument do not involve depositions.  For example, in *Martin v. Chesebrough –Pond's Inc.*, 614 F.2d 498, 501 (5th Cir. 1980) (per curiam) (Pl.'s Mot. at 2), the court merely stated that the party bearing the burden of proof has the right to "open and close the argument *to the jury*" during opening and closing statements at trial.  *Moreau v. Oppenheim*, 663 F.2d 1300, 1311 (5th Cir. 1981) (Pl.'s Mot. at 2), which also involved the right to open and close the evidence at trial, is similarly irrelevant.

Nor is plaintiff's argument that these witnesses will "likely be unavailable to testify live and the videotaped depositions will be presented to the jury during Plaintiff's case-in-chief" (Pl.'s Mot. at 2) any more persuasive.  Plaintiff can offer his examination of the physician in his case-in-chief at trial, regardless of the order in which the deposition is conducted.  But plaintiff should not be able to rob Merck of its only real opportunity for physician discovery by co-opting the discovery depositions noticed by Merck – and unilaterally converting them into his own trial depositions.  Accordingly, plaintiff's motion should be denied.

**B.** **Going Forward, Merck Should Be Permitted To Question Physicians Because Plaintiffs Have Been Afforded the Right to Engage In *Ex Parte* Contacts With Them.**

Given the importance of physician depositions in these cases, Merck recognizes that going forward, a "first-to-notice, first-to-question" rule would degenerate into a race between the parties to notice such depositions.  To the extent the Court establishes a "default" rule going forward, however, it should be the opposite of that proposed by plaintiffs – *i.e.*, it should be Merck that presumptively questions first as long as plaintiffs are permitted to engage in *ex parte* contacts with physicians.

4

Merck has asked the Court on several occasions to restrict plaintiffs' ability to contact physician witnesses on an *ex parte* basis because of its concern that plaintiffs will improperly influence the physicians' testimony – a concern heightened by the fact that the doctors risk being named as defendants in these suits.[2]  In modifying its original Order on this issue to allow *ex parte* contacts by the plaintiffs, the Court traced the special physician-patient relationship from Hippocrates through Thomas Percival's precepts in the 1800's to the current AMA rule and noted the acceptance of the confidentiality of the relationship throughout the societies of the world from Ayurvedic Medicine in India to Sun Ssu-Miao in China to Asaph, a practitioner of Hebrew medicine in the sixth century.  (*See* Order & Reasons at 6-8, July 21, 2005.)  It was on the basis of this special relationship between doctor and patient that the Court ruled that plaintiffs, but not defendants, could contact physicians *ex parte*.

The *ex parte* contacts in which the plaintiffs have engaged, however, have ranged far beyond the plaintiff's medical condition that gives rise to the special relationship between the doctor and his or her patient.  Instead of limiting their discussions to plaintiffs' medical conditions, plaintiffs' counsel have shared internal company emails and other Merck documents with plaintiffs' physicians for the specific purpose of trying to influence the doctors' views of Merck.  On one occasion, for example, Merck learned that plaintiffs had provided physicians with internal Merck documents, flagged and highlighted to emphasize statements that plaintiffs believe will sway the physicians to provide them with favorable testimony.  (*See* Letter from Phillip Wittmann, Esq. to Hon. Eldon E. Fallon ("Merck's May 5 Letter Brief"), at 1 (May 5, 2006) (attached as Ex. 4).)  Such *ex parte* contacts serve no legitimate purpose and have a very

---

[2]      As the Court stated in its Order & Reasons on June 6, 2005, the "Plaintiff's prescribing physicians are not merely bystanders to this litigation.  Rather, physicians who have prescribed Vioxx to Plaintiffs in this MDL have actualized or potential interests in this lawsuit.  Therefore, they are just as susceptible to being influenced and colluding with Plaintiff's counsel as they are to engaging in improper agreements with Defendants' counsel." (Order & Reasons at 4-5, June 6, 2005.)

5

real potential of intimidating physicians into adopting plaintiffs' views to avoid becoming litigation targets. Accordingly, while Merck understands the Court's position on the physician-patient relationship and thus no longer opposes limited *ex parte* contacts, Merck renews its request that the Court limit such contacts to communications related to a plaintiff's medical history. (*Id.*)

Even if the Court grants the limited relief sought by Merck, however, it would be unfair for plaintiffs to question physicians first. After all, plaintiffs can simply pick up the telephone and call the physicians if they wish to learn their views about the plaintiff's medical condition. Thus, they will likely enter depositions already familiar with a substantial portion of the physicians' testimony. For Merck, in contrast, the depositions will be the only opportunity to learn the physicians' views. Under such circumstances, it is only fair for Merck to question the doctors first.

## CONCLUSION

For the foregoing reasons, Merck requests that the Court enter an order allowing it to question first at the deposition of any plaintiff's physician in this proceeding.

Respectfully submitted,

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Opposition to Plaintiff's Motion to Open and Close Deposition Testimony of Mr. Smith's Prescribing and Treating Doctors has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Grant Kaiser and Drew Ranier by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 23rd day of June, 2006.

816233v.1