# BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
www.bartlit-beck.com

CHICAGO OFFICE
COURTHOUSE PLACE
54 WEST HUBBARD STREET
CHICAGO, IL 60610
TELEPHONE: (312) 494-4400
FACSIMILE: (312) 494-4440

DENVER OFFICE
1899 WYNKOOP STREET
8TH FLOOR
DENVER, CO 80202
TELEPHONE: (303) 592-3100
FACSIMILE: (303) 592-3140

WRITER'S DIRECT DIAL:
(312) 494-4451
carrie.jablonski@bartlit-beck.com

June 7, 2006

**VIA EMAIL**

Grant Kaiser, Esq.
The Kaiser Firm L.L.P.
8441 Gulf Freeway Suite 600
Houston, TX 77017-5001

Re:   *VIOXX MDL 1657: Smith v. Merck*

Dear Grant:

This letter responds to issues you raised in your May 31, 2006 letter and our subsequent communications, including (1) depositions for Drs. Grefer and Courtade, (2) Dr. Heis' deposition, (3) Mr. Smith's deposition and (4) additional Merck FACTS production. In addition, Additionally, I raise one new issue below: payment for physician deposition fees.

I received another letter from you today that raises additional questions. I will get back to you on those issues after I have had a chance to look into them.

**Drs. Grefer and Courtade**

As you know, Merck has been attempting to coordinate the scheduling of depositions for Mr. Smith's treating physicians for some time – an effort that, as you can imagine, is complicated by the doctors' busy schedules. This effort has required that we notice certain treating physicians' depositions to ensure the doctors keep available dates open (hence the May 26 notices for July 6 depositions), hoping that you could accommodate the doctors' schedules. When you indicated that your colleague was unavailable on July 6, we immediately obtained a new date for Dr. Grefer (June 29) and asked if you were available on that date. When it became clear that June 29 would work for Plaintiff's counsel,[1] we amended Dr. Grefer's notice for that date.[2]

Despite these efforts, you have indicated that you have some sort of "right and privilege" to go first. To be clear, Merck intends to ask the first questions of these doctors because, among other reasons, i) we coordinated these depositions before you and your colleagues ever indicated you wanted to take these depositions, and ii) we noticed these depositions before you and your colleagues were able to secure any dates from these doctors.

---

[1] Despite your statement in your most recent letter, I did not receive an email from you indicating that June 29 at 9am was acceptable in response to my several requests.
[2] This morning, Dr. Grefer informed us that he needs to change the location of his deposition. As such, I have attached a second amended notice that contains the new location (but same date).

EXHIBIT
1

June 7, 2006
Page 2

I received a fax yesterday from your co-counsel, the Watts Law Firm, with an attached deposition notice for Dr. Grefer.[3] Given your previous communications directing us to deal with only you on issues pertaining to *Smith*, and given the fact the Watts Law Firm was aware of the exact day/ time I had communicated to you that Dr. Grefer was available for his deposition, I assume that you are in communication with Mr. Watts and his colleagues on these issues. I also assume that you have informed them that Merck had already served a deposition notice (and amended notice) for Dr. Grefer's deposition. From here forward, I will plan on copying someone from his firm on correspondence for this case, although I clearly understand from your previous instruction that you are the "only person authorized to make agreements relating to *Smith*."

Regarding Dr. Courtade's deposition, he has availability on June 22. His schedule is very busy and no other times will work in June. Please confirm this date will work for you. We will plan on issuing an amended notice to lock in this date with Dr. Courtade if I do not hear from you by the end of the day.

**Dr. Heis's deposition**

Dr. Heis has confirmed his availability for July 13 at 1:00pm. Since you have not responded to my email, I am assuming you are available on that date. We have attached a deposition notice that will serve as a placeholder for this date/time, but will seek other dates if our assumption regarding your availability is somehow inaccurate.

As I have previously mentioned, we do plan on noticing the depositions of other physicians as well, and are in the process of securing dates. I will pass the information along as soon as I have more details.

**Mr. Smith's deposition**

We are prepared to go forward with Mr. Smith's deposition on June 15 (subject to collection of Mr. Smith's medical records by that date). Per your request, we can begin the deposition at 9:30am. We have arranged for the deposition to take place at our local counsel's office, located five miles from the Cincinnati airport, in order to maximize convenience for Mr. Smith, and to eliminate the need for either side to have to pay for a hotel conference room for the deposition. Please note that I will arrange for our local counsel to provide administrative support for your team as well should anything arise that day with which you need assistance. I have attached an official notice with the following location for the deposition:

Frost Brown
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202-4182

---

[3] Please also note that this fax from the Watts Law Firm was not properly served on Merck counsel. Service in MDL cases is governed by the Court's Pretrial Order 8a.

June 7, 2006
Page 3

### FACTS production

You should have received an additional production relating to the affiliates for Dr. Grefer yesterday (Monday, June 6).

### Payment for physician deposition fees

Dr. Heis charges an hourly fee to sit for a deposition ($950 for the first hour, $475 for subsequent hours). Since we have noticed Dr. Heis' deposition, we plan on paying that fee. Anticipating that this issue is not limited to Dr. Heis, however, the parties may want to come to an agreement regarding how we want to handle these types of fees. Should you prefer, we can agree to split the fees for all the physician depositions in *Smith*. As an alternative, we can agree to not use any such payments to non-party, non-retained witnesses as evidence at trial. Please let me know your thoughts.

Sincerely,

*Carrie A. Jablonski*

Carrie A. Jablonski

cc:   Bob Van Kirk
      Drew Ranier
      James L. Wright

Enclosures

# THE KAISER FIRM L.L.P.

**GRANT KAISER**
CERTIFIED CIVIL APPELLATE LAW
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

May 31, 2006

Carrie Jablonski                                                             Via Email Only
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60610

Re:   In re: VIOXX MDL 1657
      Smith v. Merck

Dear Ms. Jablonski:

Thank you for your May 30, 2006, letter regarding scheduling two depositions in the above case. In response, July 6, 2006, is not a workable date; my colleague who will take these depositions has a conflict that he cannot reschedule. We accept your offer to schedule these depositions at a mutually convenient time. Please call me so we can discuss.

As I stated in my May 27, 2006, letter, I was under the impression that you would have coordinated with me on the scheduling of depositions in this case, in accordance with the Federal Rules of Civil Procedure and Judge Fallon's pretrial orders. I was already in the process of obtaining dates for these depositions to pass by you for your approval. Given that, we will, in any event, conduct a direct examination in the depositions.

Your letter does not directly respond to Plaintiff doing a direct examination at the beginning of the deposition; instead you refer generally to both of us having sufficient time to ask questions. If my prior letter was unclear, I apologize. In any event, we intend to begin the depositions with a direct examination after which Merck can cross-examine.

To recap, Plaintiff was in the process of securing dates for these depositions for Merck's agreement, Merck unilaterally noticed the depositions without consulting me on the dates, and Plaintiff has the burden of proof. For all these reasons, and others, we intend to conduct our direct examination first, and then you may cross examine.

If you do not agree with this usual and customary protocol, please let me know within the next 24 hours and we will contact Judge Fallon for his view on the matter, although we would prefer not to bother him with a scheduling issue.

With respect to the incomplete production of data Merck has on these doctors and their business associates, please be advised that I personally spoke with Merck's counsel, Mr. Benjamin R. Barnett, of Dechert LLP, on May 18, 2006, just following the status conference. I explained our multiple problems with Merck's production at that time but heard nothing from him since. On May 25, 2006, I sent Mr. Barnett an email asking for information on the fields in the tables but have had no response. I have copied him and Mr. Phillip Wittmann on this letter so that they know we are still expecting a response to the deficiencies, as promised.

I am sure you understand the importance of everyone having all of the data concerning these doctors before their depositions and you would not want to go forward without all information. Therefore, please advise me within the next 48 hours whether Merck intends to produce, in the next five days, all the data we have requested. If I do not hear from you within that time that you intend to produce the data, we will be forced to file a motion with Judge Fallon.

Thank you for your courtesies. I look forward to your reply.

Yours truly,

*Grant Kaiser*

Grant Kaiser

dg

c   All by email:
    Phillip Wittmann
    Benjamin R. Barnett
    Plaintiffs' Liaison Counsel
    Plaintiffs' PSC

**From:** Jablonski, Carrie [mailto:carrie.jablonski@bartlit-beck.com]
**Sent:** Friday, June 16, 2006 5:47 PM
**To:** 'Grant Kaiser'
**Cc:** 'Van Kirk, Robert'; 'James L. ("Larry") Wright'; 'Drew Ranier'
**Subject:** RE: Confirmation

Grant—

I am writing regarding several upcoming depositions.

Regarding Dr. Heis, on June 6 I informed you of his availability on 7/13 and asked you to let me know if this was not a good day for you. You have not objected to this date, and I have inquired several times. I can therefore only assume that 7/13 works and we will plan on proceeding then given that it is a good day for the doctor.

Dr. Sander and Mr. Ravencraft are now available on 7/10 at 4pm and 2pm respectively. We are working with them to make sure they set aside an adequate amount of time that day. I have attached amended notices for these two individuals. They are very busy and it has been difficult to secure time with them. If this date does not work for you, please let me know as soon as possible.

I have also attached a deposition notice for Dr. David Allen. He is available on 7/17 at 9am. Again, if this date does not work for you, please let me know as soon as possible.

Further, and with all due respect, I ask that your side please get its story straight so we can avoid going around in circles in the future with scheduling or otherwise. Below, you write that "as [you] told [me] in writing previously, no agreements made in this case are valid unless made with Drew Ranier or [you]". That is false. Your May 27 letter clearly states: "all required notices and correspondence should be directed to me; you do not have to copy anyone else on our trial team . . . I am the *only* person authorized to make agreements relating to Smith. . . Any supposed agreements made with any other person regarding Smith will be considered invalid and ineffective." You reiterated this position in subsequent communication. Your letter mentions nothing of Mr. Ranier.

Yesterday, as you know, your co-counsel Larry Wright defended the deposition of the plaintiff, Mr. Smith. After the deposition, Larry told me in no uncertain terms that all scheduling for Kentucky depositions needs to be cleared with him as it was his schedule that mattered. I told him I was getting conflicting messages from your

EXHIBIT 3

side. He stated he was the one who would be attending the Courtade deposition, and assured me that June 22 would work so long as he did not have the Quan deposition that day. Merck has since moved the Quan deposition from that day. Larry and I spoke earlier today and he confirmed that in light of the change of the Quan deposition, he was available for Courtade's deposition on June 22. Given that the date works for both sides, and given that this is the only day that works for the doctor until late July, we plan on going forward with the deposition on June 22 at 1:00pm. As you know, we changed dates (from July 6) to specifically accommodate your schedules, and have been working with you on the dates for each and every deposition.

I want to assure you that will gladly continue to work with you to make sure that the dates work for all the necessary parties. If you wish to discuss any of these depositions further, I invite you to call me at anytime.

Thank you and enjoy the weekend,
Carrie

---

**From:** Grant Kaiser [mailto:gkaiser@thekaiserfirm.com]
**Sent:** Friday, June 16, 2006 3:39 PM
**To:** carrie.jablonski@bartlit-beck.com; James L. ("Larry") Wright
**Cc:** Van Kirk, Robert; Drew Ranier
**Subject:** RE: Confirmation

Dear Carrie:

As I told you in writing previously, no agreements made in this case are valid unless made with Drew Ranier or me. So, while Mr. Wright may be available on the date you unilaterally noticed Dr. Courtade's deposition, it does not mean that we have agreed to take it on that date.

Yours truly,

# Grant Kaiser

The Kaiser Firm LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
713.223.0000
713.223.0440 (fax)
gkaiser@thekaiserfirm.com

*"Think of it and it will happen."*

---

**From:** Jablonski, Carrie [mailto:carrie.jablonski@bartlit-beck.com]
**Sent:** Friday, June 16, 2006 1:45 PM
**To:** James L. ("Larry") Wright
**Cc:** Grant Kaiser; 'Van Kirk, Robert'
**Subject:** Confirmation

<<...>>
Larry -

6/22/2006

Per our conversation, you have confirmed your availability for Dr. Courtade's June 22 deposition (given that Hui Quan's deposition will go forward on a different date). I've attached the address for Dr. Courtade's deposition for your convenience (it appears on the attached, previously-served notice).

Thanks,
Carrie

**Carrie A. Jablonski**
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
312-494-4451 (office)
312-494-4440 (fax)
carrie.jablonski@bartlit-beck.com
http://www.bartlit-beck.com

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged. This communication is the property of Bartlit Beck Herman Palenchar & Scott LLP and is intended only for the use of the addressee. If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is

prohibited.
Disclaimer Required by IRS Rules of Practice:
Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under United States Federal tax laws.

6/22/2006

**From:** Jablonski, Carrie [mailto:carrie.jablonski@bartlit-beck.com]
**Sent:** Tuesday, June 13, 2006 3:34 PM
**To:** 'Grant Kaiser'
**Cc:** 'Van Kirk, Robert'
**Subject:** RE: Vioxx Smith; documents productions

Grant--

I sent you emails on June 9 and June 12 regarding document production prior to Mr. Smith's deposition, but have not received a response to either email. Both emails are copied below. I also called your office today but your secretary said you were out.

Mr. Smith's deposition will proceed in a little more than 40 hours. The purpose of this email is to let you know that Merck reserves the right to hold open Mr. Smith's deposition should Plaintiff not produce the requested documents prior to his deposition. We still have yet to receive documents in response to Mr. Smith's notice duces tecum with a return date of June 9.

Carrie

---

**From:** Jablonski, Carrie [mailto:carrie.jablonski@bartlit-beck.com]
**Sent:** Monday, June 12, 2006 10:27 AM
**To:** Grant Kaiser
**Cc:** 'Van Kirk, Robert'
**Subject:** FW: Vioxx Smith: documents productions

Grant-

On Friday, I emailed you about your response to our document request attached to Mr. Smith's deposition notice. This document request had a return due date of June 9. It is now June 12 and we have heard nothing from you. Mr. Smith's deposition is less than 72 hours away.

Please let me know immediately whether you are going to produce these documents today, and if not, when we can expect the production.

If you are not going to produce the documents prior to the deposition, we will need an

6/22/2006

agreement that we can redepose Mr. Smith after your production. Please let me know your position no later than 2pm CDT today so we can take appropriate action.

My email on Friday also addressed your responses to Merck's First set of RFPs and Interrogatories. These document requests have due dates of this Wednesday, June 14. As I previously mentioned, our current plan is to travel that day to Mr. Smith's deposition. I would appreciate your cooperation in getting us these documents either before Wednesday (or on Wednesday morning) due to our travel schedules. Please confirm one way or the other whether you are willing to accommodate this request.

Thank you,
Carrie
>  _____
> From:      Jablonski, Carrie [mailto:carrie.jablonski@bartlit-beck.com]
>
> Sent: Friday, June 09, 2006 4:49 PM
> To:   Grant Kaiser (gkaiser@thekaiserfirm.com)
> Cc:   'Van Kirk, Robert'
> Subject:    Vioxx Smith: documents productions
>
> Grant:
>
> As you know, the deposition notice for Mr. Smith has a due date of
> today for producing documents.
> It is now 4:45pm and we have not yet received anything from you.
> Please let me know when we should expect the production. Given that
> Mr. Smith's deposition is next Thursday, June 15th, you understand
> that we need these documents promptly.
>
> Also, as we will be traveling on the 14th, we need to make advance
> arrangements for delivery of your responses to Merck's first set of RFPs
> and interrogatories (due that day). Please let me know if you can send
> these documents for morning delivery on the 14th (or earlier). You
> should send the documents to the attention of Bob Van Kirk at
>
> Williams & Connolly
> 725 Twelfth Street, N.W.
> Washington, DC  20005
>
> I would appreciate a heads-up of the approximate volume of the
> production so we can plan accordingly.
>
> Thank you,
> Carrie
>
>
> Carrie A. Jablonski
> Bartlit Beck Herman Palenchar & Scott LLP
> 54 West Hubbard Street, Suite 300
> Chicago, IL  60610

6/22/2006

> 312-494-4451 (office)
> 312-494-4440 (fax)
> carrie.jablonski@bartlit-beck.com
> http://www.bartlit-beck.com
>
> The information contained in this communication is confidential and
> should be considered to be attorney work product and/or
> attorney-client privileged. This communication is the property of
> Bartlit Beck Herman Palenchar & Scott LLP and is intended only for the use of the addressee.
> If you are not the intended recipient, please notify the sender,
> delete the message, and note that any distribution or copying of this
> message is prohibited.
> Disclaimer Required by IRS Rules of Practice:
> Any discussion of tax matters contained herein is not intended or
> written to be used, and cannot be used, for the purpose of avoiding
> any penalties that may be imposed under United States Federal tax laws.
>
>
>
>

6/22/2006

## STONE PIGMAN WALTHER WITTMANN L.L.C.

COUNSELLORS AT LAW

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
WWW.STONEPIGMAN.COM

OUR FILE NUMBER

66,000

May 5, 2006

**VIA E-MAIL**

Honorable Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C456
New Orleans, Louisiana 70130

Re:   In re: VIOXX® PRODUCTS LIABILITY LITIGATION,
      MDL Docket No. 1657; Smith v. Merck

Dear Judge Fallon:

I am writing in response to Mr. Robinson's April 28, 2006 letter to the Court regarding plaintiffs' efforts to influence the testimony of prescribing physicians prior to their depositions in Vioxx cases. As Mr. Robinson essentially admits, plaintiffs have provided prescribing physicians with internal Merck documents that are flagged and highlighted to emphasize statements that plaintiffs believe will sway the physicians to provide them with favorable testimony. Given the impropriety of these physician contacts, Merck urges the Court to revisit its ruling on this matter and issue an order: (1) limiting plaintiffs' contacts with physicians to communications related to a plaintiff's medical history; and (2) explicitly barring plaintiffs' counsel from having *ex parte* communications with prescribing physicians regarding internal Merck documents.

At the recent deposition of Dr. Michael Mikola, a prescribing physician in the *Barnett* case, plaintiff's attorney Mark Robinson revealed that he and his firm, Robinson, Calcagnie & Robinson, Inc., contacted the physician shortly before the deposition by phone and by mail. (*See* Letter from Lexi W. Myer to Michael Mikolajczyk, M.D., (January 31, 2006) (attached at Tab A); Letter from Lexi W. Myer to Michael Mikola, M.D., (April 14, 2006) (attached at Tab B).) During these contacts, plaintiff's counsel provided Dr. Mikola with copies of internal Merck memos, letters, and e-mails flagged and highlighted to draw the doctor's attention to those segments of the documents plaintiff's counsel apparently felt were most helpful to Mr. Barnett's case. (*See* Deposition of Michael Mikola, M.D. ("Mikola Dep.") at 137:10-139:11, April 25, 2006 (attached at Tab C).)

EXHIBIT
4
Blumberg No. 5119

809315v.1

2
May 5, 2006

       This recent attempt to influence Dr. Mikola's testimony through improper *ex parte* contacts is precisely the type of contact that Merck feared would occur if plaintiffs were allowed unfettered access to physicians. Indeed, when this issue was first being briefed, exactly one year ago, Merck brought to the Court's attention a seminar presentation by one of Mr. Robinson's partners in which he advised other plaintiffs' lawyers to engage in these types of communications with physicians. (*See* Merck's Submission Regarding Communications With Pls.' Healthcare Providers ("Merck's Submission"), at 9, May 5, 2005 (citing "Preparing the Treating Physicians," presented at VIOXX Harris-Martin Conference ("Harris-Martin Presen."), April 2005.)

       In its order modifying its ruling on *ex parte* contacts, the Court explained that its modification was premised on the concern that "it is often important for a plaintiffs' counsel to interview the plaintiff's treating physician regarding the plaintiff's personal medical history." (Order & Reasons at 5, July 21, 2005.) The Court further stated that its decision to restrict Merck from engaging in similar contacts was based on the Court's desire to "protect the relationship between a doctor and patient," and to avoid "destroying the physician-patient relationship and all of the concerns that arise because of [it]." (*Id.* at 9.)

       Mr. Robinson's use of *ex parte* communications to attempt to influence the testimony of Dr. Mikola goes far beyond any effort to protect the physician-patient relationship. Mr. Robinson's act of sending internal Merck documents, taken out of context and marked to emphasize plaintiffs' theory of the case, was not necessary to obtain information about his client's medical history, the particular prescribing decision at issue in the *Barnett* case, or any other subject related to the physician-patient relationship between Dr. Mikola and Mr. Barnett. Instead, these contacts were clearly designed to fulfill plaintiff's counsel's stated objective: to "be the party who convinces the . . . treating physician to support their case." (Harris-Martin Presen., at 2.)

       In addition, contrary to plaintiffs' counsel's claims, the effect of plaintiffs' improper contacts with prescribing physicians immediately prior to their depositions is in no way comparable to sales presentations made by Merck representatives years before the start of this litigation. (*See* April 27, 2006 Trial Conference Tr. ("Tr.") at 40:12-22 (attached at Tab D).) For example, at no point during Vioxx sales presentations were Merck representatives given the opportunity to tell "the Merck side of the story" regarding the validity of plaintiffs' claims about the drug. (Tr. at 40:15). Put simply: the Merck representatives who interacted with prescribing physicians were not lawyers, and their objective was not to convince physicians to accept Merck's legal arguments regarding the company's liability for plaintiffs' alleged injuries.

       When it decided to allow plaintiffs *ex parte* access to physicians, the Court warned plaintiffs that if "future progress of this litigation indicates any trend toward the improper use of ex parte communications with physicians, the Court will revisit this issue." (Order & Reasons at 10, July 21, 2005.) Merck respectfully believes that the time has come to do precisely that.

3

May 5, 2006

    Although Mr. Robinson suggests that the impropriety of plaintiffs' contacts with prescribing physicians can be mitigated if Merck is permitted to send "documents and studies" to prescribing physicians, (*see* Letter from Mark P. Robinson to Hon. Eldon Fallon at 1 (April 28, 2006)), such a protocol would not solve the problem because plaintiffs' counsel alone would have the opportunity to meet with these doctors and present argument as to why the documents are helpful to their case.[1] By contrast, limiting the scope of plaintiffs' counsel's *ex parte* contacts with plaintiffs' prescribing physicians to the patient's medical history and restricting plaintiffs from confronting physicians with internal Merck documents will sufficiently protect the physician-patient relationship while preventing the type of inappropriate communications that have taken place in the *Barnett* case.

    With kindest regards, I remain

                  Sincerely,

                  Phillip A. Wittmann

PAW/dlm
cc:    Russ M. Herman, Esq. (via e-mail)
        Mark Robinson, Esq. (via e-mail)
        Vioxx Key National (via e-mail)

---

[1] As Merck noted in its prior briefing on this matter, there is a substantial danger of witness intimidation in these suits because plaintiffs have a strong incentive to use the implied threat of medical malpractice litigation to persuade doctors to endorse their theory of the case.