UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | | |

REPLY BRIEF OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF ITS
MOTION FOR ORDER EXCLUDING TESTIMONY OF DAVID GRAHAM, M.D.

(MOTION IN *LIMINE* NO. 6)

Plaintiff opposes Merck's motion to exclude four categories of Dr. David Graham's testimony by arguing that: (i) Merck has opened the door to the testimony by asserting a so-called "FDA defense"; (ii) Dr. Graham's new testimony was generally covered in prior statements, presentations, or publications; and (iii) offering Dr. Graham as a "fact" witness relieves him from standards governing scientific testimony.

817314v.1

Plaintiff's arguments are unavailing. First, an examination of Dr. Graham's testimony plainly demonstrates that he was offering several opinions for the first time in his recent deposition. That violates this Court's mandate. Second, much of Dr. Graham's testimony – whether offered for the first time or not – remains irrelevant and prejudicial. Third, Dr. Graham's attacks on the FDA are preempted, and nothing Merck has done opens the door to such testimony. Finally, plaintiff cannot offer clear opinion testimony that Vioxx caused between 88,000 and 144,000 excess cardiac events with 44% of those events resulting in fatality by asserting that Dr. Graham is offering such testimony as a "fact" witness. That position is patently absurd and, accordingly, the testimony should be excluded pursuant to Federal Rules of Evidence 401 and 403.

I.   **THIS COURT SHOULD ENFORCE ITS MARCH 13, 2006 ORDER AND EXCLUDE DR. GRAHAM'S NEW OPINIONS.**

When this Court granted the PSC's motion to compel Dr. Graham's deposition, it did so with clear instructions: "IT IS FURTHER ORDERED that the scope of the deposition shall be limited to matters . . . Dr. Graham has previously addressed." *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2006 U.S. Dist. LEXIS 10477, at *43 (E.D. La. Mar. 13, 2006). To allow plaintiff to present testimony from Dr. Graham going beyond this limitation would be extremely prejudicial to Merck.

Specifically, Merck identified four opinions that Dr. Graham had never previously addressed and which were being proffered by plaintiff.[1] Plaintiff's opposition attempts to shoehorn those opinions into previously disclosed presentations, publications, and statements. These new opinions, however, are quite different from the prior statements cited by plaintiff.

---

[1] Dr. Graham offered approximately twelve new opinions throughout the course of his deposition, but most of them are not being proffered by plaintiff in this trial.

Merck therefore urges this Court to exclude the following four opinions under Rule 403 and as a violation of its March 13, 2006 Order.

### Opinion # 1: Merck "Dragged Its Feet" In Implementing the Post-VIGOR Label Change.

Plaintiff cites to the following two statements by Dr. Graham as support for its position that he had previously made this claim:

(1) "Where the FDA falls flat on its face is that there is a long period of time in which it does nothing" (Pl.'s Opp'n at 3 (citing Ex. 25)); and

(2) "Within 6 months of Vioxx approval, FDA knew it increased AMI by 5-fold, yet did nothing" (id. (citing Ex. 5)).[2]

Dr. Graham's prior statements criticize the FDA, *not Merck*, indicating that Dr. Graham believed the FDA, *not Merck*, dragged its feet.[3] It is not the same thing. Had Merck known of this newly disclosed opinion, it would have prepared a cross-examination of Dr. Graham on this topic. That cross-examination would have included confrontation with appropriate documents and other evidence that Merck: (i) provided the VIGOR data to the FDA immediately after it was unblinded; (ii) requested that the data be reviewed on an expedited basis; and (iii) drafted two labels that it submitted to the FDA. Instead, Merck relied on this Court's order in preparing for cross-examination on Dr. Graham's *prior* statements.

### Opinion # 2: FDA Medical Officer, Sheri Targum, Recommended that Vioxx Contain a Warning for CV Risk.

Plaintiff's own argument actually supports Merck's position that Dr. Graham should not be able to testify that FDA medical officer, Sheri Targum, recommended that Vioxx contain a

---

[2] This statement actually contradicts Dr. Graham's opinion and statement that "*the only explanation . . . is that there was foot dragging by the company.*" (Merck's Mot. at 3 (quoting Dr. Graham's deposition testimony) (emphasis added).)

[3] Moreover, these statements do not even reference VIGOR or the subsequent label change incorporating the VIGOR results.

warning for CV risk. Dr. Graham essentially admits that he was offering a new opinion, but argues that it was based on a rereview of existing testimony. (Pl.'s Opp'n at 3.)[4] But just because certain testimony may have existed does not mean that any conclusion drawn from it by Dr. Graham was previously disclosed. It was not. And, as with the prior undisclosed opinion, Merck could not be expected to have prepared a cross-examination on an opinion it did not think would be allowed under the Court-mandated restriction.

**Opinion # 3:   Merck Could and Should Have Done a "Really Huge" CV Outcomes Trial After VIGOR.**

The statements plaintiff quotes are Dr. Graham's statements criticizing the FDA generally and the types of trials that the FDA requires. In fact, plaintiff's quoted statements do not reference Merck, Vioxx, cardiovascular events, or VIGOR – and they certainly do not support Dr. Graham's newly disclosed position that, in this particular case, he believes that *Merck* could and should have done a "really huge" CV outcome trial. They are simply broad generalizations addressing the FDA approval process.

**Opinion # 4:   Vioxx Should Have Never Been Approved by the FDA as Safe and Effective.**

Here again, plaintiff cites to Dr. Graham's statements criticizing the FDA generally – "Rather than ensuring with 95 percent certainty that a drug is safe, what FDA says is: We can't be 95 percent certain this drug will kill you, therefore we will assume it doesn't – and they let in on the market. That was the case with Vioxx . . . ." (Pl.'s Opp'n at 4.) Essentially, plaintiff wants to take the prior testimony from Dr. Graham in which he criticizes the FDA's procedures

---

[4] This is consistent with the testimony cited by Merck where Dr. Graham stated, "Could I add one other thing . . . I only saw this recently in rereading the review . . . she wrote basically . . . that Vioxx should have warnings. . . . I was . . . fairly surprised because I hadn't realized that Dr. Targum had actually stated that." (Merck's Mot. at 3.)

4

(with a passing reference to Vioxx) and tie it up in a neat package to convince the jury of something he never actually said – which is his newly expressed opinion that "Vioxx should *never* have been approved by the FDA as safe and effective."

If Merck had been aware of such an opinion, it could have prepared cross-examination of Dr. Graham to undercut that grossly overbroad statement. For example, Dr. Graham cannot seriously contend that Vioxx was not often effective. In addition, drugs with proven serious risks (and corresponding disclosures) are approved by the FDA all the time. Merck, however, did not prepare such a cross-examination because it relied on this Court's deposition limitation on the scope of Dr. Graham's deposition.

\* \* \*

Dr. Graham "has previously addressed" many topics. Acknowledging the limited amount of time that Merck had to question Dr. Graham (slightly less than four hours), it would be intellectually dishonest for plaintiff to argue that Merck had an opportunity to confront and cross-examine Dr. Graham on his new opinions. Instead, Merck relied on this Court's Order to focus on the many opinions Dr. Graham had previously disclosed. Likewise, Dr. Graham should be limited to those previously disclosed opinions.

## II. PLAINTIFF IS NOT ENTITLED TO INTRODUCE IRRELEVANT TESTIMONY, WHICH WILL ONLY CONFUSE THE JURY AND UNDULY PREJUDICE MERCK.

Notably, plaintiff does not even address Merck's argument that it should not have to litigate issues related to another drug, phenylpropanolamine ("PPA"), a substance contained in many FDA-regulated products. PPA is entirely irrelevant to this litigation and Merck would be unduly prejudiced if it had to defend the FDA's alleged inaction on drugs containing PPA. Therefore, Dr. Graham's testimony about PPA should be excluded.

817314v.1

Similarly, plaintiff should not be able to introduce evidence about the Prescription Drug User Fee Act ("PDUFA"). Nothing about PDUFA helps the jury decide the issues here, which are whether plaintiff's use of Vioxx caused his injury and whether Merck failed to disclose any known risk. *See* FED. R. EVID. 401 (to be admissible, there must be some "tendency to make the existence of any fact *that is of consequence*" more or less probable (emphasis added)). Moreover, Dr. Graham is not simply testifying to "a perfunctory regulatory principle" (Pl.'s Opp'n at 6), but is opining that pharmaceutical companies have the FDA in their pockets because of the applications fees PDUFA requires them to pay. This testimony is irrelevant, and plaintiff is disingenuous to say "there is no prejudice that can be worked against Merck."[5] (*Id.* at 6.)

Finally, Dr. Graham's explanation of the complex, statistical concept of confidence level[6] by using an analogy to Russian Roulette is completely inapt and should be excluded because it is demonstrably wrong. (*See* Deposition of David Graham, M.D. ("Graham Dep.") at 119:1-22, attached hereto as Ex. A.) Therefore, it would cause unnecessary confusion and prejudice that could not be cured by presenting additional testimony to explain this complex concept.

**III.    DR. GRAHAM'S ATTACKS ON THE FDA ARE IRRELEVANT AND PREEMPTED BY FEDERAL LAW.**

Notwithstanding plaintiff's argument to the contrary, it is not the role of the jury to determine, for example, whether the FDA only promotes people based on "how well they get along with industry." (*See* Merck's Mot. at 7.) Political issues within the FDA are irrelevant to whether Vioxx caused plaintiff's injury or whether Merck provided adequate warning of the

---

[5] In addition, plaintiff did not address Merck's arguments that Dr. Graham's testimony is improper state of mind testimony – he is opining on how other FDA employees view PDUFA – and based on inadmissible hearsay. (*See* Merck's Mot. at 5-6.)

[6] Merck's motion (and plaintiff's opposition) incorrectly states that Dr. Graham's analogy refers to the confidence interval when it actually refers to the confidence level.

alleged risks of Vioxx. In addition, plaintiff's attempt to have this jury review the FDA's actions and decide whether the FDA acted appropriately is preempted by federal law. Pursuant to *Buckman*, this determination belongs to Congress only, and nothing Merck has done "opens the door" to any argument to the contrary.

Accordingly, Dr. Graham's attacks on the FDA – including his suggestions that the FDA is "broken" and that the agency erred in approving Vioxx as safe and effective – must be excluded. For the Court's reference, Merck has attached a representative sampling of this testimony to this brief as Exhibit B.

### IV. THE COURT SHOULD EXCLUDE ANY EVIDENCE OF, OR REFERENCE TO, DR. GRAHAM'S ESTIMATE OF THE NUMBER OF EXCESS HEART ATTACKS AND DEATHS ALLEGEDLY ATTRIBUTABLE TO VIOXX USE.

Plaintiff's assertion that Dr. Graham's excess event opinion – that Vioxx caused between 88,000 to 140,000 excess cases of heart attacks and sudden cardiac deaths – is not subject to Federal Rule of Evidence 702 and *Daubert* is wrong.[7] Dr. Graham cannot, as plaintiff argues, be offering such testimony as a percipient witness since he clearly did not observe those heart attacks. Rather, Dr. Graham's asserts that he uses an estimate of excess events that was purportedly reached through the use of "scientific, technical, or other specialized knowledge." *See* FED. R. EVID. 701. Consequently, Dr. Graham's testimony must be: (i) based on sufficient facts or data; and (ii) the product of reliable methodology. *See* FED. R. EVID. 702. In addition, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* requires the testimony to be relevant to the facts at issue. 509 U.S. 579, 593-94 (1993).

---

[7] Plaintiff's reference to this Court's February 3, 2006 Order denying Merck's motion to exclude Dr. Topol's testimony is confusing since this Court has stated that Dr. Topol is an expert. (*See* November 29, 2005 *Plunkett v. Merck* Trial Transcript at 8:22-9:13, attached hereto as Ex. C.)

Plaintiff does not seriously challenge the many grounds identified by Merck for excluding Dr. Graham's excess event estimate. Nor could he. As Dr. Graham himself conceded, his conclusion is simply not what the underlying data show.[8] (Graham Dep. at 428:13-19, 432:22-433:1 (admitting that the underlying data show that Vioxx users had *fewer* heart attacks than users of other NSAIDs – in direct contradiction to Dr. Graham purported excess event finding).) Based on this and other scientific flaws in Dr. Graham's excess event calculation, which are discussed in greater detail in Merck's underlying motion, the Court can and should exclude any evidence of or reference to it. In addition, Dr. Graham's estimate is irrelevant to any issue in this case. It has *no* tendency in reason to prove that plaintiff's use of Vioxx caused *his* alleged heart attack.

Testimony that Vioxx caused 88,000 to 140,000 excess cases of heart attack is precisely the kind of irrelevant testimony that tends to evoke an emotional bias against the defendant. *See* FED. R. EVID. 403. In short, Dr. Graham's excess event estimate: (i) is not based on the data and is not the product of reliable methodology; and (ii) is irrelevant, unduly prejudicial, and likely to cause juror confusion. The Court should exclude it.

**V.    CONCLUSION.**

For the reasons stated above and in Merck's underlying motion, the Court should grant Merck's motion for an order excluding the following opinions and testimony proffered by plaintiff in his deposition designations of Dr. Graham:

(1)    Merck dragged its feet in implementing the post-VIGOR label change;

---

[8] Instead, plaintiff merely notes that Dr. Graham's study was published in a peer-reviewed journal. (Pl.'s Opp'n at 8.) Merck agrees that peer review is an important consideration when assessing a study's reliability. But the peer-review process is not a *sine qua non* of admissibility nor does it guarantee that every gratuitous claim inserted in a study has a valid, scientific basis. *See, e.g., Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1316 (11th Cir. 1999).

(2)   FDA Medical Officer Shari Targum recommended that Vioxx contain a warning for CV risk;

(3)   Merck should and could have done a "really huge" CV outcomes trial after VIGOR;

(4)   Vioxx should have never been approved by the FDA as safe and effective;

(5)   The FDA knew PPA was associated with hemorrhagic stroke since 1984, but didn't remove PPA from the market until 2000 or 2001;

(6)   Congress' enactment of PDUFA caused the FDA to favor the pharmaceutical industry over patient safety;

(7)   The 95% confidence level required by the FDA to determine reliability of study results can be analogized to a game of Russian Roulette where a gun with 95 bullets is unsafe, but a gun with 94 bullets is safe;

(8)   Criticisms of the FDA; and

(9)   Vioxx caused between 88,000 to 144,000 excess heart attacks and approximately 44% of those events resulted in fatality.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

817314v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

817314v.1

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing Reply in Support of Merck's Motion for Order Excluding Testimony of David Graham, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of June, 2006.

              */s/ Dorothy H. Wimberly*