Exhibit A - Graham Deposition Testimony Excerpts

- Graham Reply

[1:] - [1:24]    5/9/2006    Graham, David - (MDL)

page 1
0001
```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2                        - - -
            IN RE: VIOXX        : MDL DOCKET NO.
 3          LITIGATION          : 1657
 4          ---------------------------------------
            SUPERIOR COURT OF THE STATE OF CALIFORNIA
 5                 COUNTY OF LOS ANGELES
                     CENTRAL CIVIL WEST
 6
            VIOXX CASES         : JCCP NO. 4247
 7                              : ASSIGNED TO HON
                                : VICTORIA CHEYNEY
 8                        - - -
                       CONFIDENTIAL
 9              SUBJECT TO PROTECTIVE ORDER
                          - - -
10                     May 9, 2006
                          - - -
11              Videotape deposition of DAVID J.
12          GRAHAM, M.D., M.P.H, held at The
13          Renaissance Mayflower Hotel, 1127
14          Connecticut Avenue, N.W., Washington,
15          D.C. 20036, commencing at 9:23 a.m., on
16          the above date, before Linda L. Golkow, a
17          Federally-Approved Registered Diplomate
18          Reporter and Certified Shorthand
19          Reporter.
                          - - -
20
21              GOLKOW LITIGATION TECHNOLOGIES
                        Four Penn Center
22            1600 John F. Kennedy Boulevard
                        Suite 1210
23            Philadelphia, Pennsylvania 19103
                        877.DEPS.USA
24
```

[119:1] - [119:22]    5/9/2006    Graham, David - (MDL)

page 119
```
 1          A.   Right.   I was trying to get
 2   the Senators to understand the statistics
 3   of the matter, and I gave the analogy of
 4   a gun with 100 chambers. And I said,
 5   let's play Russian roulette. Now, we're
 6   going to put 95 bullets in the gun, so we
 7   are 95 percent certain that this drug
 8   causes whatever adverse reaction we're
 9   talking about. Let's just say this drug
10   causes liver failure. This drug causes
11   heart attacks. We're 95 percent certain.
12       Q.   That's the current test?
13       A.   Right.  So, we put 95
14   bullets in, and we play Russian roulette.
15   And at that point, the FDA says, we
16   believe you, the gun is loaded, the drug
17   isn't safe. Let's take five bullets out
18   of the chamber. Now we have 90 bullets
19   in the chamber. So there's only 90
20   percent chance that when I pull the
21   trigger, a bullet is going to come out of
22   the gun. FDA says the gun is not loaded.
```



Exhibit A - Graham Deposition Testimony Excerpts

- Graham Reply
[428:13] - [428:19]     5/9/2006     Graham, David - (MDL)

```
page 428
13        Q.    And, again, the real life
14   heart attack rate in both VIGOR and
15   APPROVe was lower than what you say is
16   the normal background rate for people who
17   are not taking any medicine at all,
18   right?
19        A.    That's correct.  But
```

[432:22] - [433:1]      5/9/2006     Graham, David - (MDL)

```
page 432
22        Q.    But even with all of that,
23   VIGOR and APPROVe both had lower rates
24   than your background rates, correct?
page 433
1         A.    Yes.
```

[566:1] - [566:23]      5/9/2006     Graham, David - (MDL)

```
page 566
1              C E R T I F I C A T E
2
3              I, LINDA L. GOLKOW, a Notary
     Public and Certified Shorthand Reporter
4    of the State of New Jersey, do hereby
     certify that prior to the commencement of
5    the examination, DAVID J. GRAHAM, M.D.,
     MPH was duly sworn by me to testify to
6    the truth, the whole truth and nothing
     but the truth.
7
8              I DO FURTHER CERTIFY that the
     foregoing is a verbatim transcript of the
9    testimony as taken stenographically by
     and before me at the time, place and on
10   the date hereinbefore set forth, to the
     best of my ability.
11
12             I DO FURTHER CERTIFY that I am
     neither a relative nor employee nor
13   attorney nor counsel of any of the
     parties to this action, and that I am
14   neither a relative nor employee of such
     attorney or counsel, and that I am not
15   financially interested in the action.
16
17
18
19        _____
          LINDA L. GOLKOW, CSR
20        Notary Number:  1060147
          Notary Expiration: 1-2-08
21        CSR Number:  30XI176200
          Dated:  May 16, 2006
22
23
```

Exhibit B - Representative Sampling of Graham Deposition Testimony

- Graham Reply Ex. B

[1:] - [1:24]     5/9/2006     Graham, David - (MDL)

```
page 1
   0001
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2                      - - -
        IN RE:  VIOXX         :  MDL DOCKET NO.
 3      LITIGATION            :  1657
 4      ---------------------------------------
        SUPERIOR COURT OF THE STATE OF CALIFORNIA
 5              COUNTY OF LOS ANGELES
                  CENTRAL CIVIL WEST
 6
        VIOXX CASES           :  JCCP NO. 4247
 7                            :  ASSIGNED TO HON
                              :  VICTORIA CHEYNEY
 8                      - - -
                       CONFIDENTIAL
 9            SUBJECT TO PROTECTIVE ORDER
                        - - -
10                   May 9, 2006
                        - - -
11              Videotape deposition of DAVID J.
12      GRAHAM, M.D., M.P.H, held at The
13      Renaissance Mayflower Hotel, 1127
14      Connecticut Avenue, N.W., Washington,
15      D.C. 20036, commencing at 9:23 a.m., on
16      the above date, before Linda L. Golkow, a
17      Federally-Approved Registered Diplomate
18      Reporter and Certified Shorthand
19      Reporter.
                        - - -
20
21              GOLKOW LITIGATION TECHNOLOGIES
                     Four Penn Center
22            1600 John F. Kennedy Boulevard
                       Suite 1210
23            Philadelphia, Pennsylvania 19103
                     877.DEPS.USA
24
```

[64:5] - [64:16]     5/9/2006     Graham, David - (MDL)

```
page 64
 5      Q.   Should it ever have been on
 6  the market in the first place?
 7      A.   It is my professional
 8  opinion, based on the evidence that I've
 9  looked at, that Vioxx should not have
10  been approved at the time that it was
11  approved, that there were substantial
12  areas of concern relating to
13  cardiovascular safety that should have
14  been explored more fully and more
15  thoroughly prior to consideration of an
16  approval.
```

[74:16] - [75:8]     5/9/2006     Graham, David - (MDL)

```
page 74
16      Q.   Is it -- in any way, shape
17  or form is it the size of, the shape of
18  or funded like the Office of New Drugs?
19      A.   No, in terms of funding for
20  the individual staff.  It has funding for
21  sort of obligatory FDA operations such as
22  its adverse event reporting system.  And
23  so if you were to look at budgetary
```



Exhibit B - Representative Sampling of Graham Deposition Testimony

- Graham Reply Ex. B

```
24  allocations for our office, you'll see
page 75
1   large chunks of money going to these
2   various operations, but they are FDA
3   operations that FDA is obligated to
4   maintain.  They happen to be housed in
5   the Office of Drug Safety.  The actual
6   budget for the Office of Drug Safety for,
7   say, travel and training, its operating
8   budget, is small.
```

[84:20] - [85:19]    5/9/2006    Graham, David - (MDL)

```
page 84
20       Q.   You have said publicly in
21  statements that there is an institutional
22  bias in the FDA which prevents the FDA
23  from protecting Americans against unsafe
24  drugs.  Do you recall saying that?
page 85
1        A.   Yes, I do.
2        Q.   Is that a correct statement?
3        A.   Yes.
4        Q.   Tell the members of the jury
5   what the basis is for that statement.
6        A.   Well, all you have to do
7   sort of to see it crystal clear is to
8   look at the drugs that have come off the
9   market.  These are drugs where FDA
10  approved them, and by approving them said
11  the drugs were safe and effective, and
12  then at some later date they come off the
13  market because, a-ha, they're not safe or
14  they are not as safe as we thought they
15  were.  If we examine how long it takes
16  from when the signal of the problem
17  emerges to when the drug comes off the
18  market, you will see that that is
19  measured in years, sometimes in decades.
```

[222:12] - [223:24]    5/9/2006    Graham, David - (MDL)

```
page 222
12       Q.   In your view, did the
13  benefits clearly exceed the risk or
14  exceed them at all?
15            MR. BECK:  Object to form.
16            THE WITNESS:  No.  The
17       benefits did not exceed the risks.
18  BY MR. KLINE:
19       Q.   In fact, was it the
20  opposite?
21            MR. BECK:  Object to form.
22            THE WITNESS:  This drug was
23       risky.  And the benefits that one
24       gained at a population level for
page 223
1        the risks just weren't worth it.
2        The juice wasn't worth the
3        squeeze, and in my view, as I said
4        before, I think that Vioxx was
5        approved prematurely, and clearly
6        if more work had been done,
7        certainly the high dose shouldn't
8        have been approved.  And if it had
9        been approved, it should have been
10       withdrawn with the VIGOR study.
11       And at that point, intensive study
12       at the lower doses should have
13       been enacted with a very large
14       clinical trial done in a very
```

Exhibit B - Representative Sampling of Graham Deposition Testimony

• Graham Reply Ex. B

```
15   short space of time to nail down
16   the question.  And I'm not talking
17   about an APPROVe-like study that
18   takes four or five years to do and
19   has only five or six heart attacks
20   in six months.  I'm talking about
21   a really huge study that gives you
22   the opportunity, the power, to
23   answer the question definitively.
24   And that was not done.
```

[566:1] - [566:22]     5/9/2006     Graham, David - (MDL)

```
page 566
1              CERTIFICATE
2
3         I, LINDA L. GOLKOW, a Notary
    Public and Certified Shorthand Reporter
4   of the State of New Jersey, do hereby
    certify that prior to the commencement of
5   the examination, DAVID J. GRAHAM, M.D.,
    MPH was duly sworn by me to testify to
6   the truth, the whole truth and nothing
    but the truth.
7
8         I DO FURTHER CERTIFY that the
    foregoing is a verbatim transcript of the
9   testimony as taken stenographically by
    and before me at the time, place and on
10  the date hereinbefore set forth, to the
    best of my ability.
11
12        I DO FURTHER CERTIFY that I am
    neither a relative nor employee nor
13  attorney nor counsel of any of the
    parties to this action, and that I am
14  neither a relative nor employee of such
    attorney or counsel, and that I am not
15  financially interested in the action.
16
17
18
19  _____
    LINDA L. GOLKOW, CSR
20  Notary Number:  1060147
    Notary Expiration:  1-2-08
21  CSR Number:  30XI176200
    Dated:  May 16, 2006
22
```

Exhibit C - Plunkett Trial Transcript Excerpts

• Graham Reply

[1:] - [1:25]        11/29/2005   Irvin Plunkett Trial

```
page 1
     0001
 1                     UNITED STATES DISTRICT COURT
 2                     EASTERN DISTRICT OF LOUISIANA
 3
 4
 5
           IN RE: VIOXX PRODUCTS            *
 6         LIABILITY LITIGATION             *  MDL DOCKET NO. 1657
                                            *
 7                                          *
           THIS DOCUMENT RELATES TO         *  HOUSTON, TEXAS
 8         CASE NO. 05-4046:                *
                                            *
 9         EVELYN IRVIN PLUNKETT, ET AL     *  NOVEMBER 29, 2005
                                            *
10         VERSUS                           *
                                            *  8:30 A.M.
11         MERCK & CO., INC.                *
           * * * * * * * * * * * * * * * *
12
13
                               VOLUME I
14                        JURY TRIAL BEFORE THE
                         HONORABLE ELDON E. FALLON
15                      UNITED STATES DISTRICT JUDGE
16
17         APPEARANCES:
18
           FOR THE PLAINTIFF:       BEASLEY ALLEN CROW METHVIN
19                                    PORTIS & MILES
                                    BY: JERE LOCKE BEASLEY, ESQ.
20                                      ANDY D. BIRCHFELD, JR., ESQ.
                                        J. PAUL SIZEMORE, ESQ.
21                                  234 COMMERCE STREET
                                    POST OFFICE BOX 4160
22                                  MONTGOMERY, ALABAMA 36103
23
           FOR THE PLAINTIFF:       ROBINSON, CALCAGNIE & ROBINSON
24                                  BY: MARK P. ROBINSON, JR., ESQ.
                                    620 NEWPORT CENTER DRIVE
25                                  NEWPORT BEACH, CALIFORNIA 92660
```

[8:22] - [9:13]       11/29/2005   Irvin Plunkett Trial

```
page 8
22                     THE PLAINTIFF TAKES THE POSITION THAT THE DOCTOR
23         WILL TESTIFY MORE AS A FACT WITNESS AND NOT AS AN EXPERT
24         WITNESS.  OF COURSE, WE ARE AWARE OF 701, WHICH INDICATES THAT
25         IF A WITNESS IS NOT TESTIFYING AS AN EXPERT, THE WITNESS'
page 9
 1         TESTIMONY IN THE FORM OF OPINIONS OR INFERENCES IS LIMITED TO
 2         THOSE OPINIONS OR INFERENCES WHICH ARE; (A) RATIONALLY BASED ON
 3         THE PERCEPTION OF THE WITNESS; AND, (B) HELPFUL TO A CLEAR
 4         UNDERSTANDING OF THE WITNESS' TESTIMONY OR THE DETERMINATION OF
 5         A FACT IN ISSUE.  THAT WAS THE LAW UNTIL 2000.  THE DRAFTERS
 6         FELT, TO SOME EXTENT, THAT 701 WAS BEING ABUSED AND THAT IT WAS
 7         NOT THE INTENT OF THE DRAFTERS OF THE RULES TO ALLOW EXPERTS TO
 8         TESTIFY IN THE FORM OF 701 FACT EXPERTS, SO "(C)" WAS ADDED.
 9         "(C)" IS NOT BASED ON SCIENTIFIC, TECHNICAL, OR OTHER
10         SPECIALIZED KNOWLEDGE WITHIN THE SCOPE OF 702.  CLEARLY, THIS
11         INFORMATION IS WITHIN SOME SPECIALIZED KNOWLEDGE, SO 702 TO
12         SOME EXTENT IS THE APPLICABLE EVIDENTIARY ARTICLE WHICH APPLIES
13         TO THIS PARTICULAR CASE.
```



EXHIBIT C