UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING  TESTIMONY OF LESLIE CLELAND, M.D.**

**(EXPERT CHALLENGE NO. 5)**

Plaintiff concedes that his expert Dr. Leslie Cleland has "no expertise in the labeling and marketing of prescription drugs in the United States and will not be asked to testify on these matters."  (Pl.'s Opp'n at 2.)  Accordingly, the Court should grant Merck's motion for an order excluding any testimony from Dr. Cleland about the labeling or marketing of Vioxx®.

Because of his lack of expertise in labeling and marketing, Dr. Cleland is left without a basis for his conclusions.  Plaintiff maintains that Dr. Cleland should be allowed to provide his

817472v.1

"opinions regarding the warning associated with Vioxx." (Pl.'s Opp'n at 5.)  At his deposition, Dr. Cleland confirmed that his conclusion is that "prescribers should have been made aware of the data in VIGOR so that . . . their patients could make a reasonable choice." (Deposition of Leslie Cleland, M.D. at 235:23-236:4, attached hereto as Ex. A.)  Unable to discuss labeling or marketing, supposedly Dr. Cleland will convey this opinion by testifying "on the manner in which the Vioxx associated cardiovascular risk was portrayed in the peer-reviewed *scientific literature*." (Pl.'s Opp'n at 2 (emphasis in original).)  Yet, plaintiff's own summary of Dr. Cleland's opinion on the warnings associated with Vioxx confirms otherwise:

> The prudent action for medical practitioners who wish to prescribe rofecoxib is to simply inform the patient that in the VIGOR study, rofecoxib use was associated with an increased incidence of myocardial infarction which was more than three times greater than that with use of naproxen, another anti-inflammatory drug. *This approach does not require a resolution of the contested meaning of results in the various medical journal publications on rofecoxib.*

(Pl.'s Opp'n at 5 (emphasis added).)  Dr. Cleland opines that resolving the meaning of the VIGOR studies in medical journals is not even necessary, so long as medical practitioners are adequately informed of the data from the VIGOR study.

It remains unknown what more Dr. Cleland believes Merck should have done to convey this information.  Dr. Cleland admits that Merck provided the VIGOR data to the FDA. (Pl.'s Opp'n at 4.)  Within the same month, *Merck issued a press release disclosing the findings* and communicated the data to investigators and ethics committees.[1]  Merck presented the VIGOR data at medical conferences throughout the rest of the year and participated in the publication of the data in medical journals.[2]  Because VIGOR compared Vioxx directly against naproxen without

---

[1]  *See* Rofecoxib FDA Advisory Committee Background Information VERSION 5.1 PENDING APPROVAL 21-Jan-2005, at 78 (*available at* http://www.fda.gov/ohrms/dockets/ac/05/briefing/ 2005-4090B1_02_MERCK-Vioxx.pdf).

[2]  *See, e.g.,* Bombardier C, et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib* (*footnote continued next page*)

a placebo arm, the study's results could not in themselves explain whether the disparity in cardiovascular adverse event rates reflected an increased risk associated with Vioxx, a decreased risk associated with naproxen, a chance finding, or some combination of those alternatives. Merck's continued efforts to analyze all available data to assess these explanations were publicly disseminated, including in the peer-reviewed journal *Circulation* in 2001.[3] In April 2002, the FDA approved Vioxx as safe and revised the precaution section of the label to include the VIGOR data to read that the "significance of the [VIGOR and Alzheimer's cardiovascular data] is unknown." (*See* Vioxx Label No. 9183810, attached to Merck's Mot. as Ex. E.)

In Mr. Barnett's particular case, the facts do not even present the informational problem Dr. Cleland concludes existed. As discussed in Merck's moving papers, one of Mr. Barnett's own prescribing doctors, Dr. Mikola, testified that when he was prescribing Vioxx to Mr. Barnett, he was familiar with the information in the Vioxx package insert, including the VIGOR study description and results contained in that package insert, but that he chose to prescribe Vioxx after balancing the risks. (*See* Deposition of Michael Mikola, M.D. at 322:21-333:15, attached hereto as Ex. D.) As plaintiff admits, Dr. Cleland does not intend to criticize the contents of the Vioxx package insert, and he is not even qualified to do so. (Pl.'s Opp'n at 2, 5.)

In short, there is simply no reasonable basis for Dr. Cleland's opinions on the warnings associated with Vioxx, and they should be excluded in their entirety. *See, e.g., Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (excluding expert testimony on inadequate

---

*and Naproxen in Patients with Rheumatoid Arthritis*, N. ENGL. J. MED. 2000; 343(21):1520-28, attached hereto as Ex. B.
[3] Konstam MA et al., *Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib*, CIRCULATION 2001 Nov;104:2280-88, attached hereto as Ex. C.

warnings because the expert had provided no basis for his belief that such warnings would be effective).

## CONCLUSION

Plaintiff concedes that Dr. Cleland lacks the necessary qualifications to testify about the labeling or marketing of Vioxx, so the Court should grant Merck's motion to exclude his testimony on these issues. Moreover, Dr. Cleland's proposed testimony concerning the "warning associated with Vioxx" is not only confusing, given his concession on labeling and marketing, but is also unsupported by any reliable evidence. Accordingly, Merck respectfully requests that the Court exclude any testimony by Dr. Cleland on the "warning associated with Vioxx."

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

4

817472v.1

        Douglas Marvin
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, N.W.
        Washington, D.C.  20005
        Phone:  202-434-5000
        Fax:     202-434-5029

        And

        Brian Currey
        Catalina J. Vergara
        O'MELVENY & MYERS LLP
        400 South Hope Street
        Los Angeles, CA 90071
        Phone:  213-430-6000
        Fax:     213-430-6407

        Attorneys for Merck & Co., Inc.

817472v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply in Support of Motion of Merck for Order Excluding Testimony of Leslie Cleland, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 3rd day of July, 2006.

*/s/ Dorothy H. Wimberly*

817472v.1