UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING TESTIMONY OF JOHN W. FARQUHAR, M.D.**

**(EXPERT CHALLENGE NO. 6)**

As Merck demonstrated in its opening memorandum, Dr. Farquhar is prepared to offer scientifically unreliable testimony.  Plaintiff's opposition is given over in large part to an explanation of why a different expert – Professor Jewell – should be permitted to testify, and to an explanation of additional work that Professor Jewell has done.  Merck has separately addressed the issue of Professor Jewell in its June 26, 2006 Motion to Exclude Plaintiff's "Rebuttal" Expert, Professor Nicholas Jewell, and its concurrently-filed Opposition to Plaintiff's

1

817482v.1

Motion for Leave to Designate Additional Expert Witness. Plaintiff fails to address the other flaws in Professor Farquhar's methodology.

## I. POST-HOC SUBGROUP ANALYSES CANNOT SUPPLY ADMISSIBLE EVIDENCE OF CAUSATION.

Plaintiff's attempt to characterize Professor Jewell's analyses of "high risk" patients as "confirmatory" and not post-hoc subgroup analyses is unconvincing. (*See* Pl.'s Opp'n at 12-15.) Plaintiff asserts that the hypothesis – that patients with a high baseline risk for a cardiovascular event experienced a higher rate of such events when taking Vioxx® than patients with a lower baseline risk – was generated by Merck itself in connection with reporting the VIGOR results. But this was not a prespecified hypothesis in APPROVe, the source of the data that Professor Jewell actually analyzed, and plaintiff cannot use this rationale to avoid the post-hoc nature of that analysis. (APPROVe Clinical Study Report at 41-44, attached hereto as Ex. A.)

Instead, what the approach Professor Jewell and Dr. Farquhar have followed actually reveals is that they first came to a conclusion and then looked selectively for support for that conclusion. Proceeding in this fashion "invert[s] the scientific method" and "undermines the reliability" of the analysis performed. *In re Diet Drugs Prods. Liab. Litig.*, MDL Docket No. 1203, 2001 U.S. Dist. LEXIS 1174, at *42 (E.D. Pa. Feb. 1, 2001); *see also Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method."); *Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 786 (S.D. Tex. 2000) ("From that conclusion [plaintiffs' experts] have 'worked backward' to find medical and scientific support. Such a practice cannot withstand *Daubert* scrutiny and is not due any credence in a court of law."). Dr. Farquhar's and Professor Jewell's reliance on subgroup analyses of APPROVe data strongly suggests that they have worked backwards from the conclusion they had already reached – the "hypothesis" described

above – an approach that is inconsistent with the scientific method and unreliable as a matter of methodology under *Daubert*.

Dr. Farquhar even went so far as to re-classify two patients with diabetes as having baseline hypertension in order to inflate the results of this improper analysis. Dr. Farquhar relied on plaintiff's lawyers in re-analyzing adverse event reports. (*See* June 8, 2006 Deposition of John W. Farquhar, M.D. at 123:20-133:6, attached hereto as Ex. B.) This is post-hoc data manipulation.

Moreover, plaintiff does not even dispute that that Professor Jewell's analysis of the data relating to the "high risk" group is a subgroup analysis subject to the dangers of distortion and overstatement that Merck addressed in its opening memorandum. (*See* Merck's Mot. at 8-9.) In short, plaintiff's effort to adopt a different term for the analysis that Professor Jewell performed cannot change the fact that this type of analysis, whatever its utility in other contexts, cannot supply scientifically reliable evidence of causation.

**II.   THE COURT SHOULD EXCLUDE DR. FARQUHAR'S INFLAMMATORY AND UNSUPPORTED ASSERTION THAT VIOXX CAUSES MORE SEVERE HYPERTENSION THAN ANY OTHER DRUG IN ITS CLASS.**

In its opening memorandum, Merck showed that Dr. Farquhar's "guess" that Vioxx causes more severe hypertension than any other drug in its class was just that, a guess, and should be excluded as being speculative, scientifically unreliable, and unfairly prejudicial. Dr. Farquhar admitted that he is aware of no studies comparing the hypertensive effect of Vioxx to numerous prescription NSAIDs. (*See* Merck's Mot. at 6-7.) Plaintiff has not refuted this, and cannot do so. Instead, he merely asserts that Vioxx has been shown to have a more severe hypertensive effect than certain other prescription NSAIDs – not as compared with all other

817482v.1

NSAIDs or even as compared with all other prescription NSAIDs.[1]  (*See* Pl.'s Opp'n at 11.) The Court should preclude Dr. Farquhar from making the unsupported and inflammatory assertion that Vioxx is worse in this respect than all other drugs in its class.

### III. DR. FARQUHAR MAY NOT PROPERLY TESTIFY ABOUT MERCK'S ALLEGED "OMISSIONS" OF DATA FROM PUBLISHED ARTICLES ABOUT MERCK-SPONSORED STUDIES.

Plaintiff asserts that Dr. Farquhar should be permitted to tell the jury about instances when Merck allegedly "omitted" important data from published articles about Merck-sponsored studies. (*See* Pl.'s Opp'n at 16-18.)  This, according to plaintiff, is not "state of mind" evidence, but instead is necessary to bolster the reliability of expert testimony and to assess credibility. (*Id.* at 17.)

Plaintiff's argument cannot withstand even minimal scrutiny.  To permit Dr. Farquhar to provide such testimony would be improper for multiple reasons, which can be seen by examining the four specific instances of alleged "omissions" that plaintiff lists.

- First, Dr. Farquhar would apparently: (i) relate to the jury deposition testimony of Gregory Curfman alleging that Merck failed to disclose to the editors of the *New England Journal of Medicine* ("*NEJM*") the existence of Protocol 203; and (ii) tell the jury that he "agrees" with Dr. Curfman that Merck should have disclosed this. (*See* Pl.'s Opp'n at 17; May 22, 2006 Supplemental Expert Report of John W. Farquhar, M.D. at ¶¶ 9-10, attached hereto as Ex. C.)  Such testimony is not admissible as either percipient or expert testimony.  Dr. Farquhar has no personal knowledge of this, and telling the jury that he agrees with Dr. Curfman's testimony would obviously not assist the jury as required by Rule 702.  In addition, this alleged omission is irrelevant to the reliability or lack of reliability of the scientific testimony of Dr. Farquhar or any other expert witness.

- Second, plaintiff suggests that Dr. Farquhar should be able to tell the jury that Merck failed to provide to the *NEJM* editors investigator-reported data from APPROVe that allegedly showed a statistically significant increased risk of a cardiovascular event in the first 18 months of use of Vioxx.  (Pl.'s Opp'n at 17;

---

[1] That no one, as plaintiff contends, has conducted "head-to-head" studies of Vioxx as compared to at least eleven other prescription NSAIDS simply confirms the lack of a reliable basis for Dr. Farquhar's sweeping assertion about Vioxx. (*See* Pl.'s Opp'n at 11.)

September 26, 2005 Initial Expert Report of John W. Farquhar, M.D. ("9/26/05 Farquhar Rpt.") at ¶¶ 85-97, attached hereto as Ex. D.)  Again, Dr. Farquhar has no foundation in personal knowledge to make that assertion, nor is Merck's alleged failure to provide this information presented as the basis of any opinion that Dr. Farquhar is prepared to give.  It would not be proper for Dr. Farquhar to provide such testimony under either Rule 702 or 703.[2]  *See, e.g., In re Rezulin Prods, Liab. Litig.,* 309 F. Supp. 2d 531, 554 (S.D.N.Y 2004) (Purported "expert" testimony on data suppression "pertains to lay matters which a jury is capable of understanding and deciding without the expert's help.") (citation and internal quotation marks omitted).  Moreover, data allegedly showing an increased risk in the first 18 months of use are not relevant in this long-term use case.

- Third, plaintiff suggests that Dr. Dr. Farquhar should be able to tell the jury that Merck did not comply with the *NEJM* peer reviewers' request for a composite Kaplan-Meier plot that included CHF (congestive heart failure) endpoints.  (Pl.'s Opp'n at 17; 9/26/05 Farquhar Rpt. at ¶ 104.)  This proposed testimony is subject to the same defect in foundation as plaintiff's other examples.  Nor would evidence of that alleged omission be relevant in this or any other heart attack case.

- Finally, plaintiff would have Dr. Farquhar tell the jury about the contents of internal Merck documents.  (Pl.'s Opp'n at 17.)  Again, this is not a proper subject of expert testimony and not testimony that would assist the jury.  *See., e.g., In re Rezulin,* 309 F.Supp. 2d at 554.

As these examples show, it would completely subvert the proper role of an expert witness in a jury trial if Dr. Farquhar were permitted to provide this and any other testimony about alleged "omissions" from the literature.  All such testimony on his part should be excluded

### IV. THE COURT SHOULD NOT PERMIT DR. FARQUHAR TO PRESENT STATISTICAL ANALYSES PERFORMED BY PROFESSOR KRONMAL.

At his June 8, 2006 deposition, Dr. Farquhar made it perfectly clear that he relies solely on Professor Kronmal's work for his opinions that are based on the Merck clinical trials

---

[2] "Investigator-reported events" are essentially raw data.  They are medical events that field investigators involved in a clinical trial observe in trial subjects and report. (October 10, 2005 Deposition of John W. Farquhar, M.D. at 138:23-139:7, attached hereto as Ex E.)  "Adjudicated" data or events are those that have been reviewed by experts in the appropriate field to determine that they were in fact cardiovascular events, for example – a "good process," according to Dr. Farquhar, "that should always be done."  (*Id.* at 139:8-21.)  Investigator-reported data have no probative value when adjudicated data exist.  As Dr. Farquhar concedes, adjudication results in "better" data than investigator-reported events.  (*Id.* at 139:23-140:10.)

5

involving patients with Alzheimer's disease and that he did not do any independent review of the literature. (*See* Merck's Mot. at 5-6.) For this reason, Merck contends that Dr. Farquhar may not simply serve as a conduit to pass on Professor Kronmal's conclusions that are purportedly based on data from those trials.

In his opposition, plaintiff asserts that it is an "incorrect premise" that Dr. Farquhar did not do independent work relating to the Alzheimer's studies and directs the Court to portions of Dr. Farquhar's Initial Report. (Pl.'s Opp'n at 15-16.) But the Initial Report does not show that Dr. Farquhar independently reached his conclusions; instead, if anything, it shows just the opposite. In paragraph 133 of the Initial Report, for example, Dr. Farquhar expressly cites Professor Kronmal's report as the source for the statistics on alleged increased risk that he gives. Most of the other paragraphs that address the Alzheimer's studies have no source attribution, and those that do, such as paragraphs 135-136, are not inconsistent with Dr. Farquhar's unequivocal acknowledgement that he relies exclusively on Professor Kronmal's analysis of the Alzheimer's disease studies. There is simply no reason that the Court should not take Dr. Farquhar at his word on that score.

If Professor Kronmal does not testify at trial, the Court should not permit Dr. Farquhar to relay the opinions of an out-of-court expert that were reached solely for the purpose of litigation, thereby effectively rendering those opinions immune to cross-examination. If Professor Kronmal does testify and is permitted to give his conclusions derived from the Alzheimer's patient studies, Dr. Farquhar's testimony would be cumulative and should be excluded on that basis.[3] *See* FED. R. EVID. 403; *United States v. Sanchez,* 325 F.3d 600, 604 (5th Cir. 2003) (court

---

[3] As the Court knows, it is still unsettled whether Dr. Kronmal will testify at trial, since his preservation deposition had not yet been scheduled.

may exclude duplicative evidence); *Leefe v. Air Logistics, Inc.,* 876 F.2d 409, 410-11 (5th Cir. 1989) (same).

### V. THE COURT SHOULD NOT PERMIT DR. FARQUHAR TO GIVE TESTIMONY ON SPECIFIC CAUSATION THAT IS DUPLICATIVE OF THAT OF DR. ZIPES.

Plaintiff does not deny that Dr. Farquhar is prepared to give the same opinion in substance as Dr. Zipes – *i.e.,* that taking Vioxx caused Mr. Barnett's heart attack. Instead, plaintiff contends that the anticipated testimony of Dr. Farquhar and Dr. Zipes is not cumulative but instead is "complementary" because these two witnesses have different medical subspecialties. (Pl.'s Opp'n at 18.)

That the subspecialties of Dr. Farquhar and Dr. Zipes may be different does not cure the problem of cumulative testimony. In *Leefe v. Air Logistics, Inc.,* 876 F.2d at 410-11, the Fifth Circuit upheld the trial court's exclusion of duplicative medical testimony by comparing the substance of the testimony of the two physicians. The Court concluded that exclusion of the second physician's anticipated testimony was proper, even though the substance of that testimony would have differed in certain particulars from that of the first physician. The second physician, for example, was prepared to provide a specific disability rating for plaintiff, whereas the first physician had provided only general testimony about plaintiff's disability. *Id.* at 411; see *also United States v. Sanchez,* 325 F.3d at 604.

The Court should also reject plaintiff's illogical argument that the testimony of both Dr. Farquhar and Dr. Zipes is somehow appropriate because Merck has challenged their testimony for different reasons. (*See* Pl.'s Opp'n at 18.) As Merck noted in its opening memorandum, the Fifth Circuit has declared its interest in discouraging litigants from "parading experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert." *Leefe*, 876 F.2d at 411. If Dr. Zipes gives an opinion on specific causation,

7

the Court should exclude duplicative testimony on this topic from Dr. Farquhar.

## VI.   MERCK DID NOT "INVITE" PROFESSOR JEWELL'S TESTIMONY.

Merck's motion addresses Dr. Farquhar's anticipated testimony. Yet plaintiff concludes his opposition with a long section detailing his contention that *Professor Jewell* should be permitted to testify. (*See* Pl.'s Opp'n at 19-22.) Nowhere in his opposition does plaintiff offer any reason why it would be proper for Dr. Farquhar to relate the conclusions of Professor Jewell. The Court should preclude him from doing so. Further, the Court should prohibit plaintiff from calling Professor Jewell at trial, because: (i) plaintiff's attempted designation of Professor Jewell as a testifying expert is untimely; (ii) plaintiff denied Merck discovery on the basis of the contention that Professor Jewell was a non-testifying expert; (iii) the testimony of Professor Jewell that plaintiff would offer is not rebuttal testimony; and (iv) the testimony would be cumulative. Merck has addressed these reasons in detail in its Memorandum in Support of Its Motion to Exclude Plaintiff's "Rebuttal" Expert, Professor Nicholas Jewell, filed June 26, 2006, and its Opposition to Plaintiff's Motion for Leave to Designate Additional Expert Witness and Amend Witness List, filed concurrently herewith. Rather than repeat those arguments here, Merck incorporates those briefs by reference.

## VII.   CONCLUSION.

For the reasons stated above and in Merck's opening memorandum, the Court should exclude the testimony of Dr. Farquhar that Merck has addressed in connection with this motion.

Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc

817482v.1

## **CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck for Order Excluding Testimony of John W. Farquhar, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 3rd day of July, 2006.

                                                        */s/ Dorothy H. Wimberly*

817482v.1