UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING TESTIMONY OF CORNELIA PECHMANN, PH.D.**

**(EXPERT CHALLENGE NO. 4)**

The Court should exclude Professor Pechmann's testimony in its entirety. Plaintiff designated Professor Pechmann to testify on scientific conclusions with respect to the cardiovascular effect of Vioxx®. But Professor Pechmann is not qualified to give that testimony. Plaintiff concedes as much, stating that Professor Pechmann will not give "expert medical opinions," but insists that Professor Pechmann nevertheless should be permitted to interpret the then-available scientific data and internal Merck documents in order to opine on what Merck executives knew, and what they must have been thinking, when they developed their

marketing strategy.  That sort of speculation on Merck's knowledge, intent, and state of mind must be precluded.

*Daubert* also requires this Court to preclude Professor Pechmann from opining that Merck's marketing influenced Mr. Barnett and his treating physicians – contrary to their own testimony.  Other courts have rejected Professor Pechmann's reasoning, which amounts to "some physicians were influenced so Mr. Barnett's doctors also must have been influenced."  This reasoning should likewise be excluded here.

Finally, Professor Pechmann lacks the credentials necessary to opine on Merck's compliance or lack of compliance with FDA regulations.

I.  **THE COURT SHOULD PRECLUDE PROFESSOR PECHMANN FROM OFFERING OPINIONS ON GENERAL CAUSATION AND MERCK'S INTENT, KNOWLEDGE, OR STATE OF MIND.**

Professor Pechmann's report and depositions are riddled with opinions regarding her view of the link between Vioxx and cardiovascular risks and her interpretation of VIGOR and other studies.  She testified at deposition that she is prepared to offer an opinion regarding scientific studies of Vioxx.  (*See, e.g.,* May 26, 2006 Deposition of Cornelia Pechmann, Ph.D. at 163:21-164:1 ("Q: You are not going to come into court and attempt to interpret the medical journal articles written [about] Vioxx; are you, ma'am?  A: Well, I have the VIGOR in my – in the New England Journal materials in my Appendix.  So if it came up, I would speak about them"), attached hereto as Ex. A.)  Merck objected to that testimony because Professor Pechmann is not qualified to render opinions on causation.

Plaintiff appears to concede the point, stating that Professor Pechmann – despite her report and earlier testimony – will not offer "an expert medical opinion as to relationship [*sic*] between Vioxx and cardiovascular events." (Pl.'s Opp'n at 13.)  But plaintiff then backtracks, asserting that "in order to understand what prompted the integrated marketing campaign and the

goals and objectives of that campaign, the internal documents and the knowledge of the executives at Merck regarding the [cardiovascular] risks must be understood and incorporated into the opinion" that Professor Pechmann will offer at trial. (*Id.*) Such testimony necessarily would require Professor Pechmann both to interpret the scientific evidence then available to Merck and to speculate on Merck's state of mind, motives and intent. The Court should preclude it.

Excluding Professor Pechmann from testifying regarding scientific evidence or Merck's state of mind, motives and intent is in keeping with rulings from other courts that have addressed the proper scope of Professor Pechmann's testimony. In the California Vioxx litigation, Judge Chaney – applying a standard far less stringent than *Daubert* – ruled that Professor Pechmann could not testify on causation or Merck's motive, intent, or state of mind. Instead, Judge Chaney limited Professor Pechmann to "neutral" testimony concerning general or hypothetical marketing concepts. (June 26, 2006 Hearing Tr. at 595:27-596:15, attached hereto as Ex. B.) This Court should similarly preclude Professor Pechmann from offering testimony regarding scientific interpretations or speculation as to Merck's state of mind, motives and intent.

**II.   PROFESSOR PECHMANN'S OPINIONS REGARDING DIRECT-TO-CONSUMER ADVERTISING AND INDIVIDUAL RELIANCE ON MARKETING SHOULD BE EXCLUDED AS IRRELEVANT.**

Plaintiff seeks to have Professor Pechmann testify that, despite Mr. Barnett's and his physicians' testimony to the contrary, they were misled by Merck's marketing. Through this testimony plaintiff seeks to establish the reliance element that both his negligent misrepresentation and deceit-by-concealment claims require. *See, e.g., Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 504 (S.C. Ct. App. 2003) (negligent misrepresentation); *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003) (deceit by concealment). The Court should exclude this testimony for two reasons. First, Professor Pechmann's method is

3

unreliable: she relied on survey data about how Merck's marketing affected other doctors and consumers and infers that Mr. Barnett and his doctors were influenced in the same way – even though they testified otherwise and even though she concedes that marketing affects individuals differently. Second, her testimony about direct-to-consumer advertising and its effect on Mr. Barnett is irrelevant under South Carolina's learned intermediary doctrine.

### A. Professor Pechmann's Opinions Are Unreliable.

Plaintiff argues that – again, despite their testimony to the contrary – both plaintiff's treating physicians and Mr. Barnett relied on Merck's marketing and that this can be established through Professor Pechmann's opinions. Plaintiff argues that "[i]t is doubtful that any doctor would ever admit that he or she was influenced by sophisticated and slick marketing devices rather than his or her own independent medical judgment." (Pl.'s Opp'n at 17.) Therefore, plaintiff asks this Court to allow Professor Pechmann to testify that, because Merck's marketing influenced some other physicians, it must also have influenced Mr. Barnett's physicians.

Professor Pechmann's method is flawed. Just as knowing the final result on an election cannot establish how any particular voter cast his ballot (absent an unanimous vote), so too it is impossible to gauge how an individual doctor or consumer was influenced by a marketing campaign based on survey data. Courts that have confronted claims that responses to marketing are sufficiently uniform to allow reliance to be established in this way have rejected that reasoning. *See e.g. Jones v. Danek Med., Inc.*, No. Civ. A 4:96-3323-12, 1999 WL 1133272, at *8 (D.S.C. Oct. 12, 1999) (granting summary judgment to claims based in fraud and negligent misrepresentation in part because physician testified he did not rely on marketing information in deciding to use product in question); *Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945(JBW), 2005 WL 2401647, at *4 (E.D.N.Y. Sep. 29, 2005) (rejecting part of an expert opinion because

its basis was "inconsistent with common sense and the evidence generally: all consumers do not react in the same way").

And, although plaintiff points to a long string of cases where marketing experts have been allowed to testify, none of these cases involved the use of a marketing expert to establish claims of misrepresentation in a single plaintiff case. Rather, the cases on which plaintiff relies for support involved claims of trademark infringement, *Betterbox Communications Ltd. v. BB Techs., Inc.*, 300 F.3d 325 (3d Cir. 2002); *Edna Realty, Inc. v. Themlsonline.com*, No. Civ. 04-437 JRTFLN, 2006 WL 737064 (D. Minn. 2006); racial discrimination violating the Fair Housing Act, *Tyus v. Urban Search Mgmt.*, 102 F.3d 256 (7th Cir. 1996); civil conspiracy, *Nestle Food Co. v. Abbott Labs.*, 105 F.3d 665 (9th Cir. 1997); deceptive marketing and false advertising, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, (9th Cir. 1997); *Novartis Corp. v. FTC*, 223 F.3d 783 (D.C. Cir. 2000); and tobacco litigation involving a class action, *Schwab v. Philip Morris USA, Inc.*, No. Civ. 04-1945 (JBW), 2005 WL 2401647 (E.D.N.Y. Sept. 29, 2005), and insurance carriers (*Blue Cross & Blue Shield of N.J. v. Philip Morris, Inc.*, No. 98CV 3287, 2000 WL 1738338 (E.D.N.Y. Nov. 1, 2000).

**B.     Professor Pechmann's Opinions Regarding Direct-To-Consumer Marketing Are Irrelevant.**

Professor Pechmann also intends to opine that Merck's direct-to-consumer marketing was misleading. This opinion, however, is irrelevant. Under South Carolina's learned intermediary rule, Merck's duty to warn ran to Mr. Barnett's physicians, not to Mr. Barnett. *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992) (applying South Carolina law). Both Dr. McCaffrey and Dr. Mikola have testified that they did not rely on Merck's direct-to-consumer marketing in making their prescription decisions. (Deposition of Michael McCaffrey, M.D. at 207:6-208:3, attached hereto as Ex. C; Deposition of Michael Mikola, M.D. at 343:5-8, attached

5

hereto as Ex. D.) And, as pointed out in Merck's opening brief, Mr. Barnett said the decision to start taking Vioxx was his doctor's, not his. Therefore the contents of the direct-to-consumer advertising are irrelevant.

### III. PROFESSOR PECHMANN IS UNQUALIFIED TO OFFER OPINIONS REGARDING THE FDA AND ITS REGULATIONS.

As discussed in Merck's opening brief, Professor Pechmann is unqualified to offer any opinions regarding the FDA or its regulations. Plaintiff's counterargument is that "much marketing" is governed by regulations. (Pl.'s Opp'n at 18.) That is not enough to allow Professor Pechmann to offer opinions related to the complex regulatory scheme that governs the testing, approval, and marketing of prescription pharmaceuticals in the United States.

### IV. CONCLUSION.

For the reasons stated above and in Merck's underlying motion, Merck respectfully requests that the Court exclude Professor Pechmann's testimony in its entirety.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

817492v.1

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Merck's Motion for Order Excluding Testimony of Cornelia Pechmann, Ph.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 3rd day of July, 2006.

　　　　　　　　　　　　　　　　　　　　　/s/ Dorothy H. Wimberly