UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING TESTIMONY OF DOUGLAS P. ZIPES, M.D.**

**(EXPERT CHALLENGE NO. 7)**

Plaintiff's opposition wrongly asserts that "Merck seeks to eliminate the testimony of one of the most renowned and respected cardiologists in the country." (Pl.'s Opp'n at 1.) In reality, what Merck seeks to exclude is certain opinions and testimony of Dr. Zipes which are not relevant to the issues here, are not scientifically reliable, or are unduly prejudicial. Plaintiff's opposition fails to address the issues raised in Merck's motion.

817573v.1

## I. THE COURT SHOULD EXCLUDE DR. ZIPES'S GENERAL CAUSE OPINIONS.

Merck maintains, as expressed in its initial motion, that Dr. Zipes's theory of causation lacks a foundation in reliable science and therefore must be excluded under Federal Rule of Evidence 702 and *Daubert*.

Plaintiff also argues that "Merck expends considerable effort attacking Dr. Zipes's reliance on the Bresalier study." (Pl.'s Opp'n at 8.) This statement mischaracterizes Merck's Motion. Merck seeks to exclude one specific opinion of Dr. Zipes which was drawn from two statistical analyses in the Bresalier ("APPROVe") study, but Merck does not claim that Dr. Zipes cannot rely on the APPROVe study at all. The opinion that Merck seeks to exclude is Dr. Zipes's statement that "[t]he effect of Vioxx in [Mr. Barnett] would be expected to impart far greater effect than just doubling his risk." (*See* May 22, 2006 Report of Douglas Zipes, M.D. ("05/22/06 Zipes Rpt.") at 31, attached hereto as Ex. A.) Dr. Zipes claims that this "far greater effect" resulted because Mr. Barnett experienced blood pressure "spikes" while on Vioxx and because he had preexisting coronary artery disease. (*Id.*)

To support this opinion, Dr. Zipes relied on two relative risk calculations derived from two small *post hoc* subgroup analyses of the APPROVe data: (i) patients with known atherosclerotic disease had a relative risk of 9.59 for thrombotic events; and (ii) patients who experienced blood pressure "spikes" had a relative risk of 3.82 for myocardial infarction. These two analyses of small numbers of APPROVe participants are the only evidence on which Dr. Zipes relies for his opinion that Vioxx more than doubled Mr. Barnett's risk of myocardial infarction. As Merck explained at length in its motion, a *post hoc* subgroup analysis, particularly one undertaken with only a few patients,[1] does not, by itself, provide sufficient evidence to

---

[1] The subgroups in question were very small. Only 116 patients in the Vioxx arm had a history
(*footnote continued next page*)

support a causation opinion. Indeed, Dr. Zipes himself criticizes subgroup analyses as "throwing a rock at a group of targets and hitting one of them, then claiming that was the one he was aiming for. One is uncertain whether the thrower is just lucky or can actually hit the same target a second time." (05/22/06 Zipes Rpt. at 26.) Dr. Zipes cannot have it both ways, however, adopting *post hoc* subgroup analysis when it suits him particularly where the subgroups at issue are so small as to make meaningful conclusions impossible. Therefore, Merck seeks to preclude Dr. Zipes from opining that Vioxx may have had an effect on Mr. Barnett that somehow exceeded the effect it may have had on other users.

## II. THE COURT SHOULD EXCLUDE ANY TESTIMONY BY DR. ZIPES REGARDING WHAT MERCK OR ITS EMPLOYEES KNEW OR SHOULD HAVE KNOWN AND FDA COMPLIANCE.

To the extent that plaintiff agrees to abide by his assertion that "none of [Dr. Zipes's] opinions [will] include any assessment of Merck's state of mind or its compliance with FDA regulations," he should have no objection to this Court entering an Order formalizing that understanding. (Pl.'s Opp'n at 10.) Indeed, such an order is necessary because, despite plaintiff's concession, some of the statements that Dr. Zipes has made in his deposition and report delve directly into these subjects, and it would be beneficial to the parties (and Dr. Zipes himself), to have a clear understanding of the boundaries.

For example, despite plaintiff's assertion that Dr. Zipes will only recount facts, in his report and deposition, Dr. Zipes did draw inferences and give opinions regarding both what Merck or its employees knew and Merck's compliance with the FDA. Merck explained this in full in its Motion, and here will only refer to one example. Dr. Zipes at page 23 of his report

---

of symptomatic atherosclerotic cardiovascular disease (APPROVe Clinical Study Report at 40) and only 393 patients experienced the blood pressure "spikes" (APPROVe Clinical Study Report at 44). (*See* Excerpts from APPROVe Clinical Study Report, attached hereto as Ex. B.)

3

clearly purports to know what Dr. Scolnick was thinking in March 2000.  He observes that Scolnick "apparently had little skepticism regarding the results of VIGOR . . ." and "[n]or did he harbor doubts about the mechanism." (05/22/06 Zipes Rpt. at 23.)  These observations go beyond mere factual observation and rather constitute an opinion of what Dr. Scolnick was thinking – a subject on which Dr. Zipes is not qualified to opine.

Moreover, even were he qualified to opine in these areas, Dr. Zipes's testimony on these subjects would nevertheless still be inadmissible because it would not assist the trier of fact. *Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 584 (5th Cir. 2003) ("The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.").  The jury does not need Dr. Zipes's assistance to understand that certain documents do or do not indicate that Merck had knowledge of certain facts at certain times.  To the extent that Dr. Zipes intends to merely report facts gleaned from the selection of Merck documents he has reviewed, his testimony is unnecessary and inadmissible.  Merck therefore requests that the Court exclude any potential testimony from Dr. Zipes regarding Merck's state of mind or compliance with FDA regulations.

### III. THE COURT SHOULD EXCLUDE ANY TESTIMONY BY DR. ZIPES REGARDING HIS LITIGATION-DRIVEN MEETINGS AND CONVERSATIONS WITH OTHER DOCTORS TO DISCUSS VIOXX.

Plaintiff acknowledges that Dr. Zipes offered new testimony at his deposition about Mr. Barnett's risk of having another heart attack but claims that his testimony was "wholly consistent with and not a departure from his reports." (Pl.'s Opp'n at 13.)  As Plaintiff concedes, Dr. Zipes did not previously disclose *any* calculations or opinions relating to the risk that Mr. Barnett will suffer another heart attack in the future.  Further, whether or not Dr. Zipes's new opinion and analysis is consistent with opinions he did properly disclose in his report does not satisfy the

notice requirements under Rule 26. Merck has been prejudiced by Dr. Zipes's new opinion because Merck's experts were unable to consider and respond to this opinion in their expert reports and Merck's counsel did not have an adequate opportunity to prepare for a deposition of Dr. Zipes on this issue. Thus, Dr. Zipes should be precluded from offering his new opinion at trial.

### IV. CONCLUSION.

For the reasons stated above and in Merck's underlying motion, Merck respectfully requests that this Court grant its motion to exclude the testimony of Dr. Zipes.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

817573v.1

817573v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck for Order Excluding Testimony of Douglas P. Zipes, M.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 3rd day of July, 2006.

                                  */s/ Dorothy H. Wimberly*

817573v.1