UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 06-0485 | * | |
| GERALD D. BARNETT, | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF LEMUEL A. MOYE, M.D., PH.D.**

**(EXPERT CHALLENGE NO. 8)**

Plaintiff attempts to use Dr. Moye's expertise in biostatistics and epidemiology to support Dr. Moye's purported expert testimony in unrelated areas. As discussed in Merck's motion, the Court should not allow Dr. Moye to proffer testimony about: (i) marketing or labeling; (ii) ethical standards he believes Merck violated in connection with the publication of the VIGOR study; (iii) general causation issues; (iv) the comparison of Vioxx to other COX-2 inhibitors; (v) Merck's intent, motive, and state of mind; or (vi) his opinion that Merck misled the FDA.

817585v.1

I.  **IT IS NOT BEYOND THE KEN OF THE JURY TO DETERMINE WHETHER THE VIOXX LABEL WAS MISLEADING.**

Plaintiff admits that "Dr. Moye is not an expert in pharmaceutical marketing" and that Dr. Moye "does not hold himself out as an expert in marketing." (Pl.'s Opp'n at 6.)  Plaintiff now claims, however, that Dr. Moye's lack of marketing experience does not preclude Dr. Moye from opining "that the Vioxx label was misleading and insufficient to warn doctors of the cardiovascular risks associated with the drug." (*Id.* at 6.)  This is the very question that the jury will be asked to answer, and it is not a proper area for expert testimony.[1]  Experts are not allowed to offer testimony where the jurors are capable of making their own determination: "expert testimony is not only unnecessary but may properly be excluded in trial judge's discretion if all primary facts can be accurately and intelligibly described to jury, and if they, as men of common understanding, are as capable of comprehending primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation."  *Salem v. U.S. Lines Co.,* 370 U.S. 31, 35 (1962).  Accordingly, Dr. Moye should be precluded from testifying as to the sufficiency of the Vioxx label.

II.  **DR. MOYE'S EXPERIENCE DOES NOT QUALIFY HIM TO TESTIFY THAT MERCK'S PUBLICATION OF THE VIGOR DATA WAS DONE IN AN UNETHICAL MANNER.**

Plaintiff does not dispute Merck's position that any testimony about the VIGOR publication would be cumulative of Dr. Curfman's testimony on this issue.  Instead, plaintiff

---

[1] Not surprisingly, Dr. Moye has been precluded from testifying to labeling of pharmaceutical products in at least two other trials. (*See* January 30, 2006 Transcript for *Tilmon v. Wyeth*, Cause No. 3-39220, Anderson County, Texas, 3d Judicial District, at 169:18-20 (precluding Dr. Moye's testimony "with regard to the warnings or the efficacy of warnings or the lack thereof"), attached hereto as Ex. A.;  June 16, 2006 Deposition of Lemuel A. Moye, M.D., Ph.D. at 755:1-7**,** attached hereto as Ex. B.)

argues that Dr. Moye's experience with peer-reviewed journals and his 120 published articles transform his moral opinion into relevant or acceptable expert testimony.

Plaintiff is wrong. Dr. Moye stated that "[e]ven if one accepts that the occurrence of the three additional heart attacks did not occur before the pre-specified data cut-off date . . . [i]t would have been easy for the investigators to add a statement in this manuscript, acknowledging the three additional cardiovascular events . . . ." (May 22, 2006 Report of Lemuel A. Moye, M.D., Ph.D. ("Moye Rpt.") at ¶ 108, attached hereto as Ex. C.) This is nothing more than his subjective opinion that Merck should have done more than what was legally required – and such moral opinions as to what Dr. Moye believed Merck should have done are inadmissible. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (finding "expert opinion as to the ethical character of [defendants'] actions simply is not relevant to these lawsuits."); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *8 (E.D. Pa. Feb. 1, 2001) (finding irrelevant whether "pharmaceutical company has fulfilled its ethical requirements").

### III. DR. MOYE IS NOT QUALIFIED TO OPINE ON GENERAL CAUSATION.

Plaintiff argues that Dr. Moye is as qualified as experts in *Plunkett v. Merck* who were allowed to testify on general causation issues. As explained below, Dr. Moye's qualifications fall well short of the previously proffered experts.

#### A. Dr. Moye Does Not Have Comparable Qualifications Or Experience To Experts Allowed To Testify In A Prior Vioxx Trial.

Plaintiff's attempt to equate Dr. Moye's qualifications to other experts that were allowed to testify in *Plunkett* is unpersuasive. For example, Professor Ray, who was one of the *Plunkett*

experts, teaches pharmacoepidemiology.[2]  *Plunkett v. Merck & Co., Inc.*, 410 F. Supp. 2d 565, 586 (E.D. La. 2005).  "[H]e has conducted several studies of the gastrointestinal and cardiovascular safety of NSAIDs and COX-2 inhibitors."  *Id.*  "Moreover, professor Ray points to the *raw data* of these studies as support for his conclusion."  *Id.* (emphasis added).  Dr. Moye has no equivalent experience. (June 2, 2006 Deposition of Lemuel A. Moye ("Moye Dep.") at 88:22-89:1, attached hereto as Ex. D); *see also Plunkett*, 401 F. Supp. 2d at 585-87.)  Nor does Dr. Moye rely on raw data for his conclusions.  In fact, sometimes all he can offer for support is "[his] understanding of how these mechanisms work." (Moye Dep. at 299:7-301:14.)  For these reasons, the Court should reject plaintiff's claim that "[t]he same reasons for which the Court qualified Dr. Ray are met here and in fact, are exceeded by Dr. Moye." (Pl.'s Opp'n at 12.)

Plaintiff's comparisons of Dr. Moye to Dr. Rayburn and Dr. Silver are also inapt.  Dr. Rayburn is a cardiologist.  Dr. Moye has no such background.  Dr. Silver is a rheumatologist and the Director of the Chronic Pain Rehabilitation Program at Cedars-Sinai Medical Center in Los Angeles, California.  *Plunkett*, 401 F. Supp. 2d at 582.  He was involved in over 20 clinical trials pertaining to COX-2 inhibitors, "authored a number of publications and given over 200 lectures on the subject of NSAIDs and COX-2 inhibitors over the course of his career" and, because of this experience, was allowed to testify "regarding chronic pain and the risk/benefit calculations of COX-2 inhibitors."  *Id.*  He was also allowed to testify to causation because he is a board certified internist "with years of experience in treating his patients' cardiac conditions."  *Id.*  Dr.

---

[2] Pharmacoepidemiology is a "bridge science spanning both pharmacology and epidemiology. Pharmacology is the study of the effect of drugs . . . .  Part of the task of clinical pharmacology is to provide a risk benefit assessment for the effect of drugs in patients." http://www.pharmacoepi.org/aboutpe.cfm (last accessed July 1, 2006) ("Pharmacoepidemiology then can also be defined as the application of epidemiological methods to pharmacological issues.").

4

Moye has no personal clinical experience with Vioxx or any COX-2 inhibitor. He has not been involved with any clinical trials involving COX-2 inhibitors. (Moye Dep. at 95:1-4; 95:9-96:2.) He has never lectured on NSAIDs, COX-2 inhibitors, or pain management.

Because Dr. Moye is not analogous to any of the experts allowed to testify in *Plunkett*, plaintiff's argument cannot support the admissibility of Dr. Moye's testimony on general causation issues.

    **B.**    **Dr. Moye's Risk-Benefit Analysis Is Neither Reliable Nor Coming From A Person Qualified To Offer Such Testimony.**

Merck has moved to exclude Dr. Moye's opinion that Vioxx is "unsafe . . . in any patient regardless of their underlying risk for cardiovascular disease." Dr. Moye is wholly unqualified to offer such an opinion even if, as plaintiff asserts, he "participated in discussions assessing the safety and effectiveness of the medication at issue, with an emphasis on whether the balancing of the health advantages and disadvantages warranted its use." (Pl.'s Opp'n at 10.)

First, Dr. Moye's flawed methodology and analysis renders his opinion unreliable. Dr. Moye asserts that the pain relief from Vioxx was no better than other NSAIDs and Vioxx "was associated with increased gastrointestinal adverse effects when compared to placebo." (Moye Rpt. at ¶¶ 29-30.) As this Court knows, Vioxx was a medication for people who needed prescription strength pain relief. Therefore, Dr. Moye's comparison of Vioxx to a placebo is inappropriate. Dr. Moye then asserts that "in the VIGOR trial, the authors reported that gastrointestinal *mortality* was 'similar' for the rofecoxib and comparator NSAID, naproxen." (*Id.* at ¶ 30 (emphasis added).) It is not disputed that the VIGOR trial demonstrated a reduced incidence of gastrointestinal events in Vioxx users compared to those taking naproxen. Yet Dr. Moye ignores this fact entirely and relies only on the fact that when Vioxx users did have

5

gastrointestinal events, the likelihood of fatality did not change because the user had taken Vioxx as opposed to naproxen.

Second, a risk-benefit analysis requires knowledge about both Vioxx and alternative therapies. Dr. Moye testified that he did not review the medical literature for other NSAIDs, including other COX-2 inhibitors. (Moye Dep. at 78:20-79:14; 80:2:16; 81:22-82:1.) He also testified that he has never discussed Vioxx with other physicians who prescribed it or talked to a single person who had taken Vioxx to learn about that person's experience. (*Id.* at 91:21-92:4.)[3] Accordingly, he has no personal basis to offer a risk-benefit analysis for Vioxx.[4]

### C. Dr. Moye Is Not Qualified To Testify To The Mechanism By Which Vioxx Allegedly Causes Cardiovascular Events.

As discussed above, Dr. Moye is not a pharmacologist or cardiologist and has no special expertise that would qualify him to explain to the jury how Vioxx causes cardiovascular events. Plaintiff's claim that Dr. Moye "has consulted for and been hired by pharmaceutical companies in this area" is false. (Pl.'s Opp'n at 11.) As Merck pointed out in its motion, Dr. Moye was hired because of his expertise in statistics, not cardiology or pharmacology. (*See* Merck's Mot. at 7.) Consequently, Dr. Moye's testimony should be limited to issues of study design, relative and attributable risk, and statistical interpretation of the data from studies he reviewed.[5]

---

[3] Similarly, Dr. Moye's participation on the CardioRenal Advisory Committee is irrelevant. (Pl.'s Opp'n at 10.) Dr. Moye stated that these committees are comprised of experts in a variety of fields who come together to provide their collective opinion to the FDA. (*See* Moye Rpt. at ¶ 17.)

[4] Dr. Moye's participation in discussions about the risks and benefits of other drugs does not qualify him to offer opinions on the risks and benefits of Vioxx.

[5] This scope would be consistent with the fact that Dr. Moye, as a biostatistician and epidemiologist, has "some 19 years of experience in clinical trials that have dealt with cardiovascular events." (Pl.'s Opp'n at 11.)

Plaintiff argues that "Dr. Moye's opinion that Vioxx causes cardiovascular events has abundant scientific support," citing to this Court's ruling about Professor Ray. (Pl.'s Opp'n at 12.) There are, however, at least three substantial differences between Dr. Moye's testimony and that of Professor Ray. First, Professor Ray could point to several studies for his opinions – Dr. Moye often cannot point to a single study for any of his assertions. (*See, e.g.*, Moye Dep. at 376:21-377:5 ("Q: Dr.. Moye, is there any specific study that you're relying on for your opinion that Vioxx causes an imbalance between prostacyclin and thromboxane? A: No. It was my understanding that the biochemistry of it, but I haven't reviewed the basic biochemical studies, no.")[6]; *see also id.* at 299:7-301:14.) Second, Dr. Moye is not a pharmacologist and is therefore unable to discuss with any knowledge the toxicology of drugs. Third, Dr. Moye does not, as did Ray, "point[] to the raw data . . . as support for his conclusions." *Plunkett*, 401 F. Supp. 2d at 48.

For these reasons, it is irrelevant that Dr. Moye's opinion has scientific support. His opinions that Vioxx causes cardiovascular events in four different ways should be excluded.

### D.      Dr. Moye Is Not Qualified To Opine That Vioxx Is "The Worst" Of The COX-2 Inhibitors.

Plaintiff's opposition attempts to obfuscate Merck's argument by lumping COX-2 inhibitors with all NSAIDs. For example, plaintiff's opposition states that Dr. Moye "review[ed] the scientifically relevant literature on Vioxx and other NSAIDs." (Pl.'s Opp'n at 14 (citing Moye Dep. at 35:2-20).) First, plaintiff's citation does not provide support for this assertion. Second, even if Dr. Moye reviewed the literature on other NSAIDs, which he did not, it is irrelevant. (Moye Dep. at 80:2-16; 81:22-82:1 (testifying that he only reviewed the literature on

---

[6] For those areas in which Dr. Moye did review the literature, that does not credential him to explain the mechanisms by which Vioxx allegedly cause cardiovascular events. (*See* Merck's Mot. at 7-9.)

non-selective NSAIDs that discussed whether naproxen has a cardioprotective effect).) The specific testimony that Merck seeks to exclude is Dr. Moye's opinion that Vioxx is "the worst" of the COX-2 inhibitors. (Moye Dep. at 394:11-18.) The issue, therefore, is whether Dr. Moye is knowledgeable about Celebrex® and Bextra®, the other COX-2 inhibitors. He is not. (Moye Dep. at 207:14-208:6; 368:22-369:24; 370:11-371:21.)[7]

Dr. Moye has only a limited amount of knowledge of the chemical composition of the COX-2 inhibitors and has not reviewed any of the literature. It is unclear how Dr. Moye "relied upon his own training, knowledge, and experience in the areas of biostatistics and epidemiology" to conclude that Vioxx is the worst of the COX-2 inhibitors. (Pl.'s Opp'n at 14.) Similarly, plaintiff's references to Dr. Moye's other achievements unrelated to Vioxx does not add to Dr. Moye's ability to testify about other COX-2 inhibitors, since none qualifies Dr. Moye to discuss the difference between the COX-2 inhibitors. Dr. Moye has not reviewed the relevant literature and is not a pharmacologist. It is for these reasons that he is not qualified to offer opinions about Vioxx compared to the other COX-2 inhibitors.[8]

Finally, as discussed *supra*, plaintiff cannot rely on this Court's prior ruling allowing Dr. Silver to testify about the differences between the COX-2 inhibitors. Dr. Silver was involved in over 20 clinical trials pertaining to COX-2 inhibitors and "has authored a number of publications and given over 200 lectures on the subject of NSAIDs and COX-2 inhibitors over the course of his career." *Plunkett*, 401 F. Supp. 2d at 582. Dr. Moye has no comparable experience.

---

[7] Similarly, it is irrelevant that Dr. Moye can discuss the COX system. (*Id.* (citing Moye Rpt. at ¶¶ 70-82).)

[8] Plaintiff's assertion that this is not Dr. Moye's opinion is wrong and not supported by the citations to Dr. Moye's deposition. (*See* Pl.'s Opp'n at 15 (citing Moye Dep. at 368:22-369:9; 371:22-372:2; 372:17-373:3; 394:4-18).)

## IV. DR. MOYE IS NOT QUALIFIED TO OFFER OPINIONS ABOUT WHAT MERCK KNEW.

Although plaintiff claims that he "does not intend to solicit testimony from Dr. Moye regarding the motive and intent behind Merck's actions of inactions," Dr. Moye testified otherwise in his deposition. (*See* Merck's Mot. at 12-13 (quoting Dr. Moye).) For the reasons stated in Merck's motion, the Court should order that Dr. Moye may not offer testimony on intent, motive, or state of mind. (*Id.*)

In his opposition, plaintiff now claims that Dr. Moye should be allowed to offer testimony about what Merck knew and when, citing to this Court's November 18, 2005 Order. (Pl.'s. Opp'n at 17 (citing *Plunkett*, 401 F. Supp. 2d at 578, 595).) Plaintiff's citation does not support his argument. In *Plunkett*, Drs. Kapit and Arrowsmith-Lowe, based on their FDA experience, were to "focus on the significance of certain documents and how these documents fit into the FDA's regulatory scheme." *Plunkett*, 401 F. Supp. 2d at 595. Plaintiff offers no support for the claim that Dr. Moye has similar "extensive knowledge and expertise of FDA procedures, regulations, and regulatory guidelines." (Pl.'s Opp'n at 17.) It is for the jury to decide what Merck knew and when. The Court should prohibit plaintiff from using experts to simply argue the case to the jury.

## V. DR. MOYE'S OPINION THAT MERCK MISLED THE FDA IS CONFUSING, PREJUDICIAL, AND PREEMPTED BY FEDERAL LAW.

This Court should preclude Dr. Moye's testimony that Merck misled the FDA by not providing it with the Watson analysis. Dr. Watson conducted an analysis of Merck's ongoing clinical studies (for which the data was blinded) to determine whether Merck should be concerned that Vioxx use was associated with a higher incidence of adverse cardiovascular events than that found in the background population. (Moye Dep. at 269:10-15 (acknowledging that Merck wanted "to get some sense of the adverse events associated with Vioxx versus what a

reasonable background rate would be"); *see also id.* at 274:17-275:1.)  To do this, Dr. Watson took cardiovascular data from the ongoing Vioxx studies (the "Vioxx group") and compared it to the cardiovascular data it had from the placebo groups of studies Merck had conducted for two of its other drugs, Fosamax and Proscar.  (*Id.* at 269:10-270:17.)  The Vioxx studies were ongoing and the data, therefore, was blinded – that is, Merck did not know which patients in the "Vioxx group" were taking Vioxx, which were taking a placebo, and which were taking some other comparator drug.  Instead, the analysis combined all of the blinded data from the ongoing Vioxx studies.  (*Id.* at 276:20-277:12; 278:8-279:19 (acknowledging that Dr. Watson was "talking about the result for all patients who are in the Vioxx clinical trial program, regardless of whether they were receiving Vioxx, placebo or a comparator").)  Therefore, the data Merck had for adverse cardiovascular events from the "Vioxx group" included patients taking Vioxx, as well as those taking a placebo or some other comparator drug.  (*Id.* at 276:20-277:12.)

Dr. Watson's analysis was conducted to determine, on an interim basis, whether the Vioxx studies were producing a worrisome number of cardiovascular events.  They were not.  Dr. Moye's opinion that Merck should have provided this interim data rests on the assumption that the analysis had value once the data was unblinded, which is inaccurate.  Moreover, plaintiff seeks to offer this testimony to allege that Merck was dishonest with the FDA and somehow committed a fraud on the FDA.  As discussed in Merck's motion, evidence or argument that constitutes an implied claim of fraud on the FDA is preempted by *Buckman*.  For these reasons, this Court should preclude this testimony on the ground that it would cause juror confusion, is unduly prejudicial, and is preempted.

## VI.   CONCLUSION.

For the reasons above and in Merck's motion, this Court should preclude Dr. Moye from testifying to: (i) Merck's conduct in marketing and labeling Vioxx;  (ii) Merck's alleged

817585v.1

unethical conduct as to the VIGOR publication; (iii) risk-benefit analysis of Vioxx; (iv) general causation mechanisms; (v) Vioxx is the worst of all COX-2 inhibitors; (vi) Merck's intent, state of mind, motive, or what Merck knew and when; and (vii) Merck misled the FDA and/or the FDA Advisory Committees by not providing it with the Watson analysis.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

817585v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck for Order Excluding Testimony of Lemuel A. Moye, M.D., Ph.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 3rd day of July, 2006.

*/s/ Dorothy H. Wimberly*

817585v.1