UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |
| Gerald Barnett v. Merck & Co., Inc. | * | CASE NO. 02:06CV00485 |

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   JUN 28 2006
LORETTA G. WHYTE
CLERK

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
IN LIMINE TO EXCLUDE TESTIMONY OF DAVID GRAHAM, M.D.**

---

**(Plaintiff's Opposition to Defendant's Motion in Limine No. 6)**

## I.  INTRODUCTION

Plaintiff, Gerald Barnett, submits this response in opposition to Defendant's Motion in

Limine for Order Excluding the testimony of Dr. David Graham.  Merck has taken upon itself

the right to assert an "FDA defense," emphasizing the fact that Vioxx was approved by FDA as

being safe and effective and that the label too was FDA approved to placate and assure juries.

However, now that the Plaintiff has obtained the testimony of David Graham, M.D., FDA's

Associate Director for Science and Medicine, Office of Drug Safety, Center for Drug Evaluation

and Research, U.S. Department of Health and Human Services, whose testimony undermines the

FDA defense, Merck is quick to challenge its admissibility.  In Merck's view, FDA regulatory

processes relating to Vioxx (e.g., approval and labeling) are relevant, but the criticisms by an

FDA safety officer addressing the foundation of those regulatory processes must be prohibited as

1

____ Fee_____
____ Process_____
_X__ Dktd_____
____ CtRmDep_____
____ Doc. No_____

being irrelevant. Merck's arguments can not be reconciled. If FDA processes are relevant, then the flaws in those processes are equally relevant. As an FDA employee, Dr. Graham speaks to both subjects with first-hand knowledge and proficiency from 20 years of experience.

Merck's arguments that Dr. Graham's testimony is inadmissible are specious. Merck articulates two distinct grounds for excluding Dr. Graham's testimony. First, Merck contends that certain deposition testimony exceeded this Court's ruling granting the PSC's motion to compel the deposition of Dr. Graham but limiting its scope to "matters relevant to this litigation and to which Dr. Graham has previously addressed." *In re Vioxx Products Liability Litigation*, 235 F.R.D. 334, 347 (E.D.La. March 15, 2006). All of the Plaintiff's designated testimony of Dr. Graham is relevant and all of it has been previously addressed. Second, Merck argues that Dr. Graham's testimony before Congress and in his peer-reviewed and published analysis in *The Lancet*, to the effect that Vioxx is responsible for 88,000 to 140,000 excess deaths, is too prejudicial and unreliable to be admissible. Because Dr. Graham is a fact witness, Merck's challenges to Dr. Graham's public statements as being unreliable are inappropriate.

Try as it may, Merck can not avoid the fact that Dr. Graham has testified before Congress and published his findings about the increased cardiovascular risks posed by Vioxx in the medical literature. Like Dr. Eric Topal, whose public findings regarding the risks posed by Vioxx have been found relevant and admissible, Dr. Graham's testimony merits equal treatment.

## II.   ARGUMENT

### A.   Dr. Graham's Testimony Complies with this Court's Order Requiring Relevance and Being Previously Addressed

#### 1) Dr. Graham Was Interrogated on Previously Addressed Subjects

Merck's arguments that Dr. Graham broached subjects never "previously addressed" is ironic since much Merck's cross-examination was intended to elicit exactly such testimony. Not

2

so for the direct examinations of Dr. Graham, whose questioning and testimony were faithful to this Court's directive.

Merck specifies four points of testimony that it suggests are new subjects. As quickly catalogued, none are new:

1)  **"Merck Dragged Its Feet in Implementing the Post-Vigor Label Change."**
    See NewsTarget.com (Aug. 30, 2005)("The structural problems that exist within the FDA, where the people who approve the drugs are also the ones who oversee the post marketing regulation of the drug, remain unchanged. The people who approve the drug when they see that there is a safety problem with it are very reluctant to do anything about it because it will reflect badly on them. They continue to let the damage occur. America, is just as at risk now, as it was in November, as it was two years ago, and as it was five years ago. . . . Where the FDA falls flat on its face is that there is a long period of time in which it does nothing.")[Exb. 25];[1] Graham Depo. Exb. 5 ("Within 6 months of Vioxx approval, FDA knew it increased AMI by 5-fold, yet did nothing."); Senate Testimony Nov. 18, 2004 ("About 18 months after the VIGOR results were published, FDA made a labeling change about heart attack risk. But it did not place this in the "Warnings" section of the labeling. Also, it did not ban the high-dose formulation and its use. I believe that such a ban should have been implemented.")[Exb. 2].

2)  **"FDA Medical Officer, Sheri Targum, Recommended that Vioxx Contain a Warning for CV Risks."** Dr. Graham testified that in the course of preparing for his deposition, he re-read Dr. Targum's report which stated that there should be warnings. ("It's available on the FDA website", Graham Depo. at 423).

3)  **"Merck Could and Should Have Done a "Really Huge" CV Outcomes Trial After VIGOR."** ("There's no incentive to do things right. The clinical trials that are done are too small, and as a result it's very unusual to find a serious safety problem in these clinical trials. Safety flaws are discovered after the drug gets on the market.")[Exb. 25]; ("Those studies would have to be much larger and take much longer than current trials. And that means industry wouldn't be able to get these blockbusters to market quickly.")[Exb 18.].

---

[1]Plaintiff adopts by reference the exhibits to The Plaintiffs' Steering Committee's Opposition to the United States Government's Motion to Quash and Cross-Motion to Compel the Deposition of David Graham, M.D. Any reference to such exhibits is referred to as "[Exb.___]." For convenience, copies of these exhibits are attached hereto.

4) **"Vioxx Should Have Never Been Approved by the FDA as Safe and Effective."** ("FDA doesn't take safety as seriously as it should . . . Rather than ensuring with 95 percent certainty that a drug is safe, what FDA says is: We can't be 95 percent certain this drug will kill you, therefore we will assume it doesn't – and they let in on the market.  That was the case with Vioxx . . . Because [FDA] wasn't concerned about Vioxx, and we saw what that got us.")[Exb 18 at 5]; Senate Testimony Nov. 18, 2004 ("Vioxx is a terrible tragedy and a profound regulatory failure.  I would argue that the FDA, as currently configured, is incapable of protecting America against another Vioxx.  We are virtually defenseless.")[Exb. 2].

Each of the four contested subject areas were "previously addressed" by Dr. Graham.

Merck is wrong to say otherwise.

>       2)      **Dr. Graham's Testimony is Patently Relevant and Not Unduly Prejudicial to Merck**

Merck makes several arguments that it is unduly prejudiced by certain testimony of Dr. Graham that it considers irrelevant or more prejudicial than probative.  These Fed.R.Evid. 401-403 arguments are of little merit.  Dr. Graham uses powerful analogies to explain himself.   That does not automatically prejudice Merck.

Merck is clearly troubled by Dr. Graham's use of an example of an instance other than Vioxx, where FDA "dragged its feet" and was slow to regulate in the case of PPA.  Merck also focused on Dr. Graham's comparison of a loaded gun to a 95% confidence interval.  As to the latter, Merck can not complain that this testimony was not "previously addressed," as Dr. Graham used this same example to instruct members of the Senate Finance Committee:

> When it comes to safety, the Office of New Drugs paradigm of 95 percent certainty prevails.  Under this paradigm, a drug is safe until you can show that with 95 percent or greater certainty it is not safe.
>
> That is an incredibly high, almost insurmountable barrier to overcome.  It's the equivalent of "beyond a shadow of a doubt."
>
> And here's an added kicker.  In order to demonstrate a safety problem with 95 percent certainty, extremely large studies would

be needed. And guess what? Those studies usually aren't done or they can't be done.

If the weatherman says there is an 80 percent chance of rain, most people would bring an umbrella. Using CDER's standard, you wouldn't bring an umbrella until the weatherman said there was a 95 percent or greater chance.

And I have a second analogy. Imagine that you have a pistol with a barrel having 100 chambers. Now, randomly place 95 bullets into those chambers. The gun represents a drug, and the bullets represent the probability, the certainty of a serious drug safety problem.

Using CDER's standard, only when you have 95 bullets or more in the gun would CDER conclude that the gun is loaded, that is, that there are drug safety problems with that drug.

Now, remove five bullets from the chamber. Now, we now have 90 bullets. Because there is only a 90 percent chance that when I pull the trigger a bullet will fire, CDER would conclude that the gun is not loaded, that is, the drug is safe.

A more rational and patient-protective standard is required when dealing with safety.

Senate Testimony Nov. 18, 2004 [Exb. 2].

While evidence in this Court is formal and controlled by the Federal Rules of Evidence, it need not be stifled, sterile, nor steered by Merck's sensitivities. Dr. Graham is attempting to explain a complex, statistical concept in terms helpful to a lay person. The Russian Roulette analogy is apt. Simply because it is evocative, that does not render it inadmissible.

Merck's last remaining relevance argument addresses Dr. Graham's historical perspective on the Prescription Drug User Fee Act. This discussion likewise has been previously addressed by Dr. Graham on several occasions and reflects his understanding of the influences effecting FDA review of new drugs. As an FDA official with first-hand knowledge, Dr. Graham's testimony will be particularly helpful to explain the accelerated approval tract under which

Merck sought to obtain agency approval of Vioxx. In this light, Dr. Graham's testimony is especially relevant and there is no prejudice that can be worked against Merck on such a perfunctory regulatory principle.

### 3)   Merck's Buckman Preemption Argument is Bogus

Merck seeks to exclude several aspects of Dr. Graham's testimony relating to the flawed functioning of FDA, including its bias towards approving drugs and away from safety. Merck contends that the Supremacy clause doctrine of preemption as articulated by the Supreme Court in *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), bears on this point. That authority is inapposite to the evidentiary issue addressing the admissibility of Dr. Graham's testimony relating to the FDA regulatory process.

Merck seeks to leverage the *Buckman* decision into an overarching preclusive ruling that any evidence relating to the flaws in the FDA regulatory processes are inadmissible under a preemption doctrine analysis. Although *Buckman* precludes a plaintiff from seeking damages based upon a distinct cause of action associated with a defendant lying to the FDA, it is something completely different to contend that Plaintiff is precluded from presenting evidence that directly relates to the defendant's warnings. Regardless of whether information may have been concealed from the FDA, inasmuch as Merck undertook to misrepresent the facts *to plaintiff or his physicians*, or to conceal *from plaintiff or his physicians* facts it was bound to disclose, the Plaintiff's claim rests in part on the assertion that Merck's warnings were insufficient. It does not matter if the duty to warn or accurately disclose information arose from state law or FDA regulation as long as the victim of that violated duty is not the FDA, but the plaintiff. *See Caraker v. Sandoz Pharm. Corp.*, 172 F.Supp.2d 1018, 1033 (S.D.Ill. 2001); *Globetti v. Sandoz Pharm. Corp.*, 2001 WL 419160 (N.D.Ala. 2001); *Eve v. Sandoz Pharm.*

*Corp.*, 2002 WL 181972 (S.D.Ind. 2002).   See also *Bouchard v. Amer. Home Products Corp.*,

213 F. Supp. 2d 820, 811-812 (N.D. Ohio 2002), where the court specifically stated evidence of

defendants' communications with the FDA may be relevant in a state tort claim:

> If, as Bouchard has stated, her claims are based on direct fraud
> against her and her healthcare provider, rather than the FDA, then
> her claims are not preempted [under <u>Buckman</u>], and evidence
> <u>concerning what information was and was not provided to the FDA</u>
> <u>might still be relevant.</u>

Consistent with this authority, this Court previously rejected Merck's *Buckman*

arguments in the Irvin case.  Earlier, this Court held:

> Additionally, Merck argues that Professor Ray may not testify as
> to his disapproval of the actions taken by the FDA. Professor Ray
> is not an expert in FDA regulatory matters.   He does not have
> experience in this field.   As such, Rule 702 bars him from
> testifying as to matters beyond his range of knowledge.   The Court
> points out, however, that *Buckman Co. v. Plaintiffs' Legal*
> *Committee*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001),
> would not bar a qualified expert from testifying as to their opinion
> on whether the FDA correctly balanced the benefits and risks of a
> drug from a regulatory standpoint.   In *Buckman*, the Supreme
> Court found that state law fraud-on-the-FDA claims were
> preempted by federal law.   This holding is completely
> inapplicable to the issue at hand.

*In re Vioxx Products Liability Litigation*, 401 F.Supp.2d 565, 587 (E.D.La. Nov. 18, 2005).

Merck's preemption argument was without merit in *Irvin* and remains so today.  It should

be rejected.

**B.** **Merck's Attempt to Apply Fed.R.Evid. 702 Concepts to a Percipient Fact Witness Is Inappropriate and Invalid**

Merck makes the novel argument that a fact witness may be subject to the strictures of *Daubert* and Fed.R.Evid. 702. There is no justification for this argument in the case of Dr. Graham. Merck's primary concern is that Dr. Graham has authored a peer-reviewed article published in The Lancet, that conservatively estimates the number of excess heart attacks and sudden cardiac deaths caused by Vioxx ingestion to be between 88,000 and 139,000 persons. *See* Graham, *Risk of Acute Myocardial Infarction and Sudden Cardiac Death in Patients Treated with Cyclo-oxygenase 2 Selective and No-selective non-steroidal anti-inflammatory drugs: Nested Case-control Study*, The Lancet. 2005 Feb 5-11;365(9458):475-81. Merck challenges these excess event estimates as irrelevant asserting that it has no bearing on whether Vioxx caused Mr. Barnett's specific heart attack. Merck overlooks the fact that Dr. Graham has not been tendered as an expert for specific causation. His testimony addresses general causation principles. Merck also finds this estimate to be unreliable and challenges the doctors' methods for reaching these results. The fact remains, however, that these results were published and Dr. Graham is on record, including his statement before the United States Senate, that he stands behind his study's results.

While Merck has every right to challenge these facts through vigorous cross-examination, it has no right to avoid them on the grounds that they are "unreliable." The facts are the facts. Dr. Graham is not testifying in this litigation as a retained expert witness. He is a percipient fact witness. As such, it is for a jury to determine whether the facts that he will testify should be accepted or not. *See In re Vioxx Products Liability Litigation (Plunkett)*, MDL No. 1657, Civ.No. 05-4046, Order (E.D.La. Feb. 3, 2006)(Motion in Limine to exclude the testimony of Eric J. Topol, M.D. "Denied, 401 not excluded by 403. No prejudice re: report.").

8

Merck is acutely aware of these facts.  They are published, on the internet and in the Senate record.  Dr. Graham has been cross-examined over their bases at his deposition.  There are no surprises here.  Merck should simply be required to confront these facts as it would any witness at trial.

## III.   CONCLUSION

This Court granted the PSC the right to obtain Dr. Graham's testimony for a reason: the FDA's safety officer's findings about Vioxx were relevant to this product liability litigation.  His findings and testimony are established facts.  However, facts are stubborn things.  Merck's effort to seek their exclusion provides no benefit to the truth-seeking and instructive purposes for which the upcoming trial is intended.  Rather, the disinfectant of "sunshine," coupled with cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, is the appropriate means by which such evidence should be challenged.[2]

Merck is on record wanting to try every case.  It should have to face the facts.  This motion should be denied.

---

[2] *Accord Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987).

Date:  June 27, 2006                    Respectfully submitted,

                                        By  _Mark P. Robinson, Jr._
                                            Mark P. Robinson, Jr.
                                            Kevin F. Calcagnie
                                            Carlos A. Prietto, III
                                            Ted B. Wacker
                                            Lexi W. Myer
                                            ROBINSON, CALCAGNIE & ROBINSON
                                            620 Newport Center Dr., 7th Floor
                                            Newport Beach, California  92660
                                            Telephone:  (949) 720-1288
                                            Facsimile: (949) 720-1292

                                            Andy D. Birchfield, Jr.
                                            P. Leigh O'Dell
                                            BEASLEY, ALLEN, CROW,
                                            METHVIN, PORTIS & MILES, P.C.
                                            P.O. Box 4160
                                            234 Commerce Street
                                            Montgomery, Alabama  36103-4160
                                            Telephone:  (334) 269-2343
                                            Facsimile: (334) 954-7555

                                            Donald C. Arbitblit
                                            LIEFF, CABRASER, HEIMANN and
                                            BERNSTEIN, LLP
                                            275 Battery Street, 30th Floor
                                            San Francisco, California   94111
                                            Telephone:  (415) 956-1000
                                            Facsimile:  (415) 956-1008

                                            Counsel for Plaintiff

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70013
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
**Co-Lead Counsel**

## PLAINTIFFS' LIAISON COUNSEL

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Shelly Sanford
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas 77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana 70601
Telephone: (337) 494-7171
Facsimile: (337) 494-7218

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1371

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

11

Gerald E. Meunier
Gainesburgh Benjamin David Meunier &
Warshauer
2800 Energy Centre
1100 Polydras Street
New Orleans, LA 70163-2800
Telephone:  (504) 522-2304
Facsimile:  (504) 528-9973

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 27th day of June, 2006.

MARK P. ROBINSON, JR.
State Bar No. 054426
Attorney for Plaintiff
Robinson, Calcagnie & Robinson