## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: VIOXX** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to:** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| **Gerald Barnett v. Merck & Co.,** | * | |
| **Inc.,** | * | **CASE NO. 02:06CV485** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

### PRETRIAL ORDER

The following constitutes the Proposed Pretrial Order to be entered in the above-styled case.

**Trial Date:**                    July 24, 2006

**Pretrial Conference Date:**      July 6, 2006

**Trial Attorneys:**

     For the Plaintiff:

     Mark P. Robinson, Jr.
     **Robinson, Calcagnie & Robinson**
     620 Newport Center Dr., 7th Fl
     Newport Beach, CA 92660
     (949) 720-1288

     Andy Birchfield
     **Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.**
     234 Commerce Street
     Montgomery, Alabama 36104
     (334) 269-2343

     Donald C. Arbitblit
     **Lieff Cabraser Heimann & Bernstein, LLP**
     Embarcadero Center West
     275 Battery Street, Suite 3000
     San Francisco, CA 94111-3339
     Tel. (415) 956-1000

For the Defendant:

Philip S. Beck
Andrew L. Goldman
**Bartlit Beck Herman Palenchar & Scott, LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

## 1.    **Parties:**

Plaintiff Gerald Barnett contends he suffered from a heart attack on September 6, 2002, accelerated plaque build-up and heart-related events between 2000 and 2006 that Vioxx substantially contributed to the causation thereof.

Defendant Merck & Co., Inc. is the manufacturer of Vioxx®, a prescription medication first approved by the United States Food and Drug Administration in 1999 and withdrawn from the market in 2004.

## 2.    **Jurisdiction:**

    A.    The jurisdiction of this Court is based diversity of citizenship under 28 U.S.C. § 1332.

    B.    It is stipulated that this claim exceeds $75,000.

    C.    Jurisdiction is uncontested by the parties.

## 3.    **Procedural History and Posture/Pending Motions:**

    Plaintiff entered into a tolling agreement with Merck & Co., Inc. on August 30, 2005.  Plaintiff then filed his case in the United States District Court for the Eastern District of Louisiana as part of *In re Vioxx Product Liability Litigation,* MDL No. 1657.

    Plaintiff filed a Complaint in the Eastern District of Louisiana on January 31, 2006.  Plaintiff asked for a trial by jury on all issues.

    Merck & Co. answered the Complaint on March 21, 2006.

A.   <u>Plaintiff's Motions</u>

(1)   Pending before the Court are the following *Daubert* motions.

   a.  Plaintiff's Motion for an Order Excluding Argument or Opinion Testimony that the APPROVe Study and Protocol 203 Cannot Be Generalized to Other Populations, and to Exclude Opinions Concerning "Individual Confidence Intervals"
   b.  Plaintiff's Motion to Exclude Certain Opinion Testimony of Foster Curtis Bryan, II, M.D.
   c.  Plaintiff's Motion re Sequencing the Publication of Deposition Designations
   d.  Plaintiff's Motion to Exclude Testimony of Nicholas Flavahan, Ph.D.
   e.  Plaintiff's Motion to Exclude Testimony of Thomas L. DeBauche, M.D., F.A.C.C.
   f.  Plaintiff's Motion to Exclude Testimony of Paul Roach, M.D., F.A.C.C.

(2)   The Court has already ruled on various Motions in Limine, which are not listed here.  Pending before the Court are the following Motions in Limine seeking to prevent Defendant from offering testimony, evidence, or argument relating to the following.:

   a.  Plaintiff's Motion in Limine to Preclude Defendant Merck from Offering any Testimony or Argument re the Preamble to 71-FR-3922-01 and Any Statement by the FDA Regarding Preemption
   b.  Plaintiff's Motion in Limine to Preclude Defendant Merck from Referring to the Geographic Area in or around South Carolina as the "Stroke Belt"
   c.  Plaintiff's Motion in Limine to Preclude Certain Subjects from Evidence at Trial
   d.  Plaintiff's Motion in Limine to Preclude Certain Opinions of Dr. McCaffrey
   e.  Any reference to the medical condition of the Plaintiff or the Plaintiff's family that is unrelated to the injuries at issue in this case.
   f.  Any reference to the Plaintiff's non-criminal bad conduct.
   g.  Any comment or personal anecdote from any witness or lawyer for the Defendant that they have or a family member has used Vioxx
   h.  Any reference that preemptively bolsters the unchallenged character or traits of the Defendant's current or former employees, managers, consultants, experts, agents or fiduciaries

    i. Any reference that state tort laws undercut the FDA's mission to provide only scientifically valid warnings

    j. Any reference that too many warnings of serious injury will dilute the effectiveness of warnings generally

    k. FDA's Conclusion that there is a "Class Effect" for all NSAIDs

    l. Merck Employees or Family Members of Merck Employees Took Vioxx

    m. Annual Number of Deaths Attributable to NSAID Gastrointestinal Toxicity Without Appropriate Qualifications and Scientific Support

    n. *Daubert*-Like Challenge

(3) Special Issues to be determined at Pre-trial Conference:

    a. The use of a Voiceover Dub substitution for the Mark Lanier version of the David Anstice deposition; and/or calling David Anstice live

    b. The propriety of the use of leading questions and Merck internal documents in the deposition designations of Drs. Mikola, McCaffrey, Epstein, Karavan, Bryan, Rivas and Beneduce.

    c. Evidence of Punitive Damages during Phase I of the trial

    d. Objection to Merck's use of Dear Doctor letters received in a supplemental MPF last week, when such letters have no proof that they were sent to Drs. Mikola and McCaffrey as they do not contained an addressee or address information.

    e. Use of recent publications at trial.

B. <u>Defendant's Motions:</u>

(1) Merck has filed the following *Daubert* motions:

    A. Motion for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx® Accelerates Atherosclerosis (Expert Challenge No. 1)

    B. Motion for Order Excluding Testimony of Jerry Avorn, M.D. (Expert Challenge No. 2)

    C. Motion for Order Excluding Testimony of Richard Kronmal, Ph.D. (Expert Challenge No. 3)

    D. Motion for Order Excluding Testimony of Cornelia Pechmann, M.D. (Expert Challenge No. 4)

    E. Motion for Order Excluding Testimony of Leslie Cleland, M.D. (Expert Challenge No. 5)

    F. Motion for Order Excluding Testimony of John W. Farquhar, M.D. (Expert Challenge No. 6)

      G. Motion to Exclude Testimony of Doug Zipes, M.D. (Expert Challenge No. 7)

      H. Motion for Order Excluding Testimony of Lemuel Moye, M.D. (Expert Challenge No. 8)

      I. Motion for Order Excluding Testimony of Egil Fosslien, M.D. (Expert Challenge No. 9)

      J. Motion for Order Excluding Testimony of Richard M. Kapit, M.D. (Expert Challenge No. 10)

(2)    Merck has filed the following motions in *limine*:

      A. Motion for Order Excluding (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees (Motion in *Limine* No. 1)

      B. Motion for Order Excluding Informal Communications from the FDA Concerning Promotional Materials (Motion in *Limine* No. 2)

      C. Motion for Order Excluding the Fries Letter (Motion in *Limine* No. 3)

      D. Motion for Order Excluding Evidence Relating to the *New England Journal of Medicine*'s December, 2005 "Expression of Concern" (Motion in *Limine* No. 4)

      E. Motion for Order Excluding Testimony of Eric J. Topol, M.D. (Motion in *Limine* No. 5)

      F. Motion for Order Excluding Testimony of David Graham, M.D. (Motion in *Limine* No. 6)

(3)    Special Issues to be Determined at Pre-Trial Conference:

## 4. Plaintiff's Claims:

Due to a 1978 car accident, Mr. Gerald Barnett began experiencing back and neck pain. In December 1999, Mr. Barnett was prescribed the painkiller Vioxx (rofecoxib), which is manufactured and marketed by Defendant Merck & Co. Mr. Barnett used Vioxx as prescribed and in a reasonably foreseeable manner for approximately 55 months. As a direct and proximate result of his ingestion of Vioxx, Mr. Barnett contends he suffered from cardiovascular system changes including sticky blood, blood pressure spikes, and accelerated atherosclerosis, which ultimately resulted in a myocardial infarction on September 6, 2002, requiring a 5-way bypass on September 10, 2002, and a second infarct and multiple alleged future injuries. Mr. Barnett would not have taken Vioxx, nor would Dr. Mikola kept Mr. Barnett on Vioxx, had Merck properly disclosed the cardiovascular risks associated with taking the drug.

Plaintiff contends the following:

- Merck negligently failed to adequately study and test Vioxx for potential cardiovascular risks
- Merck failed to adequately warn the Plaintiff and the Plaintiff's doctors concerning the potential serious cardiovascular risks of Vioxx
- Merck concealed from doctors and the Plaintiff known or knowable information regarding the potential cardiovascular risks concerning Vioxx
- Merck breached its implied <u>and/or</u> express promises to consumers that Vioxx was reasonably safe for long-term daily use

Based on evidence of these and other facts, Plaintiff asserts one claim arising in strict liability – failure to warn. Plaintiff also asserts claims of negligence, negligent misrepresentation, breach of implied and express warranty and deceit by concealment. Plaintiff seeks the following damages:

1) General damages in an amount according to proof
2) Special damages in an amount within the jurisdiction of the Court and according to proof
3) Past and future medical expenses
4) Punitive Damages
5) Restitution or disgorgement of profits and other equitable relief
6) Injunctive Relief
7) Attorney's fees
8) Cost of the suit herein
9) For prejudgment interest as provided by law; and
10) For such other and further relief as the Court may deem proper

## 5. Defendant's Claims:

Merck contends that there is no evidence that the use of Vioxx at the 25 mg dose causes an increased risk of thrombotic cardiovascular events such as myocardial infarctions. Merck also contends that there is no evidence that Mr. Barnett's purported use of Vioxx at a 25 mg dose actually caused his myocardial infarction, but that Mr. Barnett's alleged injuries were caused instead by his independent health risk factors.

Further, Merck contends that its warnings and instructions to Mr. Barnett's prescribing physicians were adequate and complied with the rules of the FDA. Merck also asserts that it acted reasonably and that it disclosed to the FDA all relevant Vioxx safety data and risk information in a timely and responsible manner. Regardless, there is no evidence that any allegedly inadequate warnings impacted the decisions of Mr. Barnett's physicians to prescribe Vioxx to Mr. Barnett. Plaintiff cannot show that additional or different information would have changed their prescribing decisions. Nor can plaintiff show that Mr. Barnett or his physicians detrimentally relied on any Vioxx-related statements Merck made.

**6.**     **Uncontested Material Facts:**

By Plaintiff:

a.     Mr. Gerald Barnett suffered from a heart attack on September 6, 2002.

b.     Vioxx, the pain reliever ingested by Mr. Barnett, was designed, manufactured, and marketed by Merck & Co.

c.     The Vioxx pills ingested by Mr. Barnett were in the substantially same condition as when drug left the control of Merck & Co.

By Defendant:

a.     Vioxx is prescription pain medication regulated by the United States Food and Drug Administration ("FDA").

b.     In May 1999, the FDA first approved Vioxx for marketing and distribution within the United States.

c.     Mr. Barnett is a 62-year old man with osteoarthritis in his back and neck.

d.     Mr. Barnett received a prescription for Vioxx at the 25 mg dose from Dr. McCaffrey on December 30, 1999.

e.     On January 19, 2000, Mr. Barnett was hospitalized for chest pain. His doctors ruled out a myocardial infarction.

f.     Following Mr. Barnett's January 2000 hospitalization, his doctors performed a cardiolite stress test, which showed mild lateral ischemia with a normal ejection fraction of 56%, with exercise tolerance of 17.5 METS for 15 minutes on a Bruce protocol.

g.     Mr. Barnett was again hospitalized for chest pain on September 6, 2002, and was diagnosed with a myocardial infarction.

h.     On September 9, 2002, Mr. Barnett underwent cardiac catheterization, which showed severe coronary artery disease including 50% occlusion of the distal left main, 70-80% occlusion of the mid-LAD, 80% occlusion of the proximal ramus intermedius, 70-80% occlusion of the proximal left circumflex, and 100% occlusion of the posterior descending artery. Mr. Barnett's ejection fraction was 50%.

i.     On September 10, 2002, Mr. Barnett underwent 5-vessel cardiac bypass surgery. He was discharged on September 14, 2002.

j.    Mr. Barnett continued to take Vioxx, on his doctor's advice, until September 2004.

k.    On September 30, 2004, Merck announced that it had decided to withdraw Vioxx from the market. This decision followed the release of interim data from a clinical trial, APPROVe, which was commissioned and financed by Merck.

7.    **Contested Issues of Fact:**

By Plaintiff:

a.    Vioxx is in a special class of COX-2 pain relievers, which have differences from NSAIDs.

b.    Mr. Barnett had previously seen ads for both Celebrex and Vioxx, and was influenced by said ads when Dr. McCaffrey recommended he go on Vioxx.

c.    Merck failed to do adequate and reasonable testing, studying and evaluation of Vioxx for potential CV risks, including the build-up of plaque rupture and thrombotic events; Merck failed to follow the testing recommended by its advisors regarding atherosclerotic and CV risks.

d.    Vioxx significantly increased the risk of serious side effects such as heart attacks and cerebrovascular adverse events such as ischemic strokes, and other serious injuries.

e.    Defendant concealed significant parts of its knowledge of Vioxx's increased cardiovascular risks from the Plaintiff, other consumers, and the medical community.

f.    Merck successfully downplayed and, in certain instances, concealed the fact that Vioxx significantly increased the risk of adverse thrombotic events, including cardiovascular and cerebrovascular injuries such as myocardial infarctions (heart attacks) and strokes, until the drug was recalled in late September 2004, and continues to do so since the recall.

g.    Merck failed to warn the medical community and patients of the true nature of the serious cardiovascular and cerebrovascular adverse events occasioned by the use of Vioxx.

h.    Merck overpromoted its Vioxx label and aggressively marketed Vioxx by falsely misleading potential users and prescribing physicians such as the Plaintiff about the product and by failing to warn and protect the consumers from serious dangers associated with the use of the drug.

i.  Merck misrepresented, understated and otherwise downplayed the serious health hazards and risks associated with Vioxx.

j.  Defendant failed to conduct adequate and sufficient pre-marketing and post-marketing testing, studying or surveying of Vioxx.

k.  Merck knowingly downplayed and, in certain instances, withheld from publication, the severity of cardiovascular and cerebrovascular risks associated with Vioxx.  For example, Merck downplayed this information in connection with the *New England Journal of Medicine's* November 2000 report regarding the VIGOR study, authored by Merck sponsored authors.

l.  In the VIGOR study, Merck ignored the causal relationship between Vioxx and the VIGOR study significantly increased rate of cardiovascular events.  Instead, Merck widely and continuously disseminated the post hoc rationalization that the VIGOR study showed that Naproxen reduced cardiovascular risk (i.e., it exerted a "cardioprotective effect"), not that Vioxx posed a serious cardiovascular hazard.

m.  The FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") reviewed the Vioxx promotional activities and materials and warned Merck that its marketing of Vioxx was:  false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations.

n.  According to the FDA's September 17, 2001 Warning Letter issued to Mr. Raymond Gilmartin, CEO of Merck & Co.:

> 1.)  Merck, its agents, employees and representatives minimized the rate of myocardial infarctions.
> 2.)  Merck knew it was misleading to assert:  "that Vioxx does not increase the risk of [heart attacks] and that the VIGOR finding is consistent with Naproxen's ability to block platelet aggregation like aspirin.  That is a possible explanation, but you fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation, that VIOXX may have pro-thrombotic properties."
> 3.)  Merck knew that the promotional statement was false because the reason for the difference between the MI outcomes for the Vioxx users versus the Naproxen users had not yet been determined;

4.) DDMAC reprimanded Merck for misrepresenting claims regarding the efficacy of Vioxx as compared to its competitor Celebrex;

5.) Merck failed to point out that the more affordable and safer alternative was Naproxen.

o.    From its inception until Vioxx was pulled from the market, Merck systematically attempted to intimidate physicians or other "thought leaders" in the medical community who sought to raise concerns regarding the cardiovascular safety of Vioxx.

p.    Merck undertook another clinical study called ("APPROVe") -- a trial of Vioxx, 25 mg/day.

q.    At its first meeting in or about January 2002, the External Safety Monitoring Board ("ESMB") for the APPROVe trial voiced concerns regarding "trends noted in serious adverse clinical events and in thromboembolic events."

r.    On or about September 17, 2004, the ESMB recommended that participating patients in APPROVe be instructed to discontinue the study treatment.

s.    Merck claims that the APPROVe study did not show a difference between the incidences of cardiovascular injuries until after 18 months of exposure to Vioxx. However, Merck concealed from the public its internal analysis showing that, in fact, there was a higher incidence of such injuries in the Vioxx group in both the 0 to 18 months and 19-36 months exposure periods, when all events reported by the clinical trial investigators are considered. Merck included this data in a January 2005 draft of the APPROVe study, but excluded it from the published version a month later. Thus, contrary to the statements Merck has repeatedly made to the public and the FDA, the APPROVe data actually show that Vioxx is dangerous in both short-term and long-term users.  Due to follow-up data from the APPROVe study, the New England Journal of Medicine has recently recanted the 18 month theory.

t.    APPROVe reinforces the conclusion that the VIGOR results were due to Vioxx cardiovascular toxicity rather than supposed protection by Naproxen.

u.    APPROVe showed a statistically significant relative risk of 2.80 for the cardiovascular events category including fatal and non-fatal MI, sudden death due to cardiac causes, and unstable angina.  APPROVe also showed a 3.82 relative risk for Vioxx over placebo for persons with blood pressure

spikes while on Vioxx (such as Plaintiff Barnett).  There was a similar relative risk for the increased risk group on Vioxx over placebo as well.

v.       In addition to MI, Merck was aware that Vioxx could cause accelerated atherosclerosis.  Merck failed to warn doctors or consumers of this fact.

w.      As a result of Defendant's actions, Mr. Barnett suffered from increased spikes in blood pressure and accelerated atherosclerosis, ultimately leading to a myocardial infarction on September 6, 2002 requiring a 5-way bypass on September 10, 2002, and subsequent cardiovascular damage including an infarct, plaque build-up, and will suffer serious future harm. Plaintiff accordingly seeks compensatory and punitive damages.

By Defendant:

a.       It is a member of the class of drugs known as non-steroidal anti-inflammatory drugs ("NSAIDs"), which are used to treat pain and inflammation.

b.       Mr. Barnett relied on his physician's advice in deciding to take Vioxx.

c.       There is no scientifically reliable evidence that the use of Vioxx at the 25 mg dose is associated with an acceleration of atherosclerosis (i.e., build-up of coronary artery plaque).

d.       Nor is there any scientifically reliable evidence that the use of Vioxx at the 25 mg dose causes or leads to a "pro-thrombotic" state.

e.       Further, there is no evidence that Mr. Barnett's purported use of Vioxx at a 25 mg dose actually caused his myocardial infarction or any of his alleged injuries.

f.       Until the APPROVe data were released, the weight of the available scientific evidence indicated that Vioxx did not pose an increased risk of thrombotic cardiovascular events as compared with patients taking a placebo.

g.       The FDA never withdrew its approval of Vioxx.  At all times relevant to this action, Vioxx was approved by the FDA as safe and effective for marketing and distribution within the United States.

## 8.    **Contested Issues of Law:**

By Plaintiff:

a.      The appropriateness of bifurcating the trial.  Plaintiff asserts that the trial of this case should not be bifurcated.  In the event that the trial is bifurcated by the Court, Plaintiff urges the Court to allow evidence of conscious disregard in the first Phase I of the trial.

b.      The strict liability of Merck & Co. for failing to warn the medical community and consumers of the increased dangers associated with the ingestion of Vioxx.

c.      The negligence of Merck & Co., for the failure to exercise ordinary care in the design and manufacture of Vioxx when they knew or should have known that Plaintiff could forseeably suffer injury as a result.

d.      The breach of express and implied warranty by Merck that Vioxx was safe and fit for its intended use.

e.      That Merck intentionally concealed or suppressed the truth about the dangers of Vioxx with the intent to defraud Plaintiff.

f.      The negligent misrepresentation by Merck & Co. that induced Plaintiff to purchase and use Vioxx without knowledge of the true facts of the dangers of Vioxx.

g.      The cause of Mr. Gerald Barnett's heart attack, acceleration of plaque build-up, significant infarct and injuries.

h.      The compensatory damages suffered by the Plaintiff.

i.      The punitive damages warranted by Merck's wantonness, willfulness or reckless indifference to the rights of safety and well-being of people who were prescribed Vioxx during the time it was on the market without any warning of the cardiovascular dangers associated with the drug.


By Defendant:

a.      The lack of scientifically reliable evidence to show general and/or specific causation.

b.      Plaintiff's failure to show that Vioxx was defectively marketed or that additional or different warnings would have changed the decisions of Mr. Barnett's physicians to prescribe Vioxx at the 25 mg dose to Mr. Barnett.

c.      Plaintiff's failure to prove that Vioxx had a design defect or that there was a safer alternative design.

d.      Preemption, by federal law, of plaintiff's failure to warn and design defect claims.

e.      Whether plaintiff has presented sufficient evidence to overcome the presumption that Vioxx was not defective or unreasonably dangerous.

f.      Whether plaintiff is entitled to compensatory and/or punitive damages.

g.      The appropriateness of bifurcating the trial, separating the question of entitlement to and amount of punitive damages from the question of compensatory damages.   Merck contends that such bifurcation is warranted and may be ordered within the Court's discretion.

9.    **Exhibits:**

By Plaintiff:

The items listed on Plaintiff's Exhibit List (Attachment "A") may be offered, introduced, and /or filed into the record at the trial of this matter.  In addition, the Plaintiff may offer additional exhibits, including Merck documents and deposition designations from Merck employees that are not part of attachment including designations to lay an evidentiary foundation for the "admissible" exhibits that are not referenced in the deposition excerpts in No. 10 below.

By Defendant:

The items listed on Defendant's Exhibit List (Attachment "B") may be offered, introduced, and/or filed into the record at the trial of this matter.

10.   **Editing Trial Depositions/Filing Objections:**

Plaintiff plans to present the deposition testimony via video of the following witnesses:  Mr. David Anstice; Ms. Susan Baumgartner; Ms. Michele Beneduce; Ms. Mary Elizabeth Blake; Dr. Thomas Bold; Dr. Curtis Bryan; Mr. Thomas Cannell; Mr. Marty Caroll; Dr. Carolyn Cannuscio; Dr. Gregory Curfman; Dr. Laura Demopolous, Ms. Wendy Dixon; Mr. James Dunn; Dr. Stephen Epstein; Dr. David Graham; Ms. Jo Jerman; Dr. Mark Karavan; Ms. Marilyn Krahe; Dr. Michael McCaffrey; Ms. Charlotte McKines; Dr. Michael Mikola; Dr. Alan Nies; Ms. Carol Ann Rivas; Dr. Edward Scolnick; Dr. Eric Topol; and Ms. Jan Weiner. Plaintiff reserves the right to present deposition testimony from any of the other Merck employees.  The deposition designations not already ruled on containing the parties' objections and counters will be presented to the Court as soon as possible.

Defendant plans to present deposition testimony via video of the following witnesses:

a.    David Anstice

b.    Corinne Barnett

c.    Susan Baumgartner

d.    Curtis Bryan, M.D.

e.    Gregory Curfman, M.D.

f.    Stephen Epstein, M.D.

g.     Raymond Gilmartin

h.     Mark Karavan, M.D.

i.     Michael McCaffrey, M.D.

j.     Michael Mikola, M.D.

k.     Malachi Mixon

l.     Alan Nies, M.D.

m.     Edward Scolnick, M.D.

**11.**    **Listing of Charts, Graphs, Models, Animations, Timelines, etc. for Use in Opening Statements, Accompanying Expert Testimony and for Final Argument:**

Plaintiff has not made a final decision regarding the demonstratives to be used during opening and closing statements.

Defendant has not made a final decision regarding the demonstratives to be used during opening and closing statements.

**12.**   **Witnesses:**

Plaintiff may call the following witnesses either in person or by video deposition.  All witnesses are listed on his Witness List, filed May 22, 2006, in accordance with the Court's Scheduling Order.

1.   David Anstice
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Merck President for Human Health.  Anticipated testimony is reflected in witness' MDL deposition.

2.   Jerry Avorn, M.D.
    Division of Pharmacoepidemiology and Pharmacoeconomics
    Brigham and Women's Hospital
    1620 Tremont Street, Suite 3030
    Boston, MA  02120
    *Testimony*:  Plaintiff's epidemiology expert.

3.   Susan Baumgartner
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Former Marketing Manager at Merck.  Anticipated testimony is reflected in witness' MDL deposition.

4.   Corinne Barnett
    606 12th Ave. South
    North Myrtle Beach, SC  29582
    *Testimony*:  Wife of Plaintiff

5.   Gerald Barnett
    606 12th Ave. South
    North Myrtle Beach, SC  29582
    *Testimony*:  Plaintiff

6.   John Barnett
    49 Shadow Moss Lane
    North Myrtle Beach,  SC  29582
    *Testimony*:  Brother of Plaintiff

7.   Mary Blake
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889

*Testimony*:  manager of Public Affairs at Merck.  Anticipated testimony is reflected in witness' MDL deposition.

8.  Ned Braunstein
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Director of Merck Research Laboratories Regulatory Affairs.
    Anticipated testimony will be reflected in witness' MDL deposition.

9.  Curtis Bryan, M.D.
    933 Medical Circle
    Myrtle Beach, SC  29572
    *Testimony*:  Plaintiff's cardiac surgeon.

10. Tom Cannell
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Former Executive Director of Vioxx Promotion and Sales for Merck, current Vice President of the Western Regional Business Group. Anticipated testimony is reflected in witness' MDL deposition.

11. Carolyn Cannuscio
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Former epidemiologist for Merck.  Anticipated testimony is reflected in witness' MDL deposition.

12. J. Martin Carroll
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*: Former Executive Vice President, Primary Care Sales & Managed Care at Merck.  Anticipated testimony is reflected in witness' MDL deposition.

13. Leslie Cleland, M.D.
    Rheumatology Unit
    Royal Adelaide Hospital
    Adelaide, Australia 5000
    *Testimony*:  Plaintiff's Rheumatology expert

14. Gregory Curfman, M.D.

10 Shattuck Street
Boston, MA 02115 – 6094
*Testimony*:  Executive editor for the <u>New England Journal of Medicine</u>.
Anticipated testimony is reflected in witness' MDL deposition.

15. Laura Demopolous
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Former Senior Director of Cardiovascular Clinical Research at
    Merck. Anticipated testimony is reflected in witness' MDL deposition.

16. Wendy Dixon
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Former Senior Vice President of Marketing for the US Human
    Health Division of Merck.  Anticipated testimony is reflected in witness'
    MDL deposition.

17. James Dunn
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Former Senior Pharmaceutical Representative for Merck.
    Anticipated testimony is reflected in witness' MDL deposition.

18. Stephen Epstein, M.D.
    c/o William Schultz
    Zuckerman Spaeder LLP
    1800 M Street, NW
    10th Floor
    Washington, DC  20036-5802
    *Testimony*:  Studies and general knowledge regarding Vioxx, Cox-2
    inhibitors, and atherosclerosis progression.  Anticipated testimony will be
    reflected in witness' MDL deposition.

19. John Farquhar, M.D.
    Stanford University School of Medicine
    Hoover Pavilion, Room 229, 211 Quarry Road
    Stanford, California, 94305-5705
    *Testimony*:  Plaintiff's cardiology/epidemiology expert.

20. Egil Fosslien, M.D.
    502 Fairview Avenue
    Glen Ellyn, IL  60137

*Testimony*:  Plaintiff's pathophysiology expert

21. Barry Gertz
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Executive Vice President of Clinical Research at Merck
    Research Laboratories.  Anticipated testimony is reflected in witness'
    MDL deposition.

22. Raymond Gilmartin
    c/o  Bartlit, Beck, Herman, Palenchar & Scott LLP
    Courthouse Place
    54 West Hubbard Street
    Chicago, IL  60610
    *Testimony*:  Former Chief Executive Officer of Merck & Co., Inc.
    Anticipated testimony is reflected in witness' MDL deposition.

23. Dr. David Graham
    10903 New Hampshire Avenue
    Building 22, Room 4314
    Silver Spring, MD  20993
    *Testimony*:  Medical Officer and Associate Director for Science and
    Medicine in the Office of Drug Safety for the Food & Drug
    Administration.  Anticipated testimony is reflected in witness' MDL
    deposition.

24. Jo Jerman
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Pharmaceutical Representative for Merck.  Anticipated
    testimony is reflected in witness' MDL deposition.

25. Richard Kapit, M.D.
    P.O. Box 1
    Garrett Park, MD  20896
    *Testimony*:  Plaintiff's FDA expert

26. Mark Karavan, M.D.
    945 82nd Parkway, Suite 3
    Myrtle Beach, SC 29572
    *Testimony*:  Plaintiff's cardiologist

27. Marilyn Krahe
    Merck & Co., Inc.

One Merck Drive
Whitehouse Station, NJ 08889
*Testimony*: Executive Business Director at Merck. Anticipated testimony
is reflected in witness' MDL deposition.

28. Richard Kronmal
University of Washington School of Public Health
CHS/MESA Coord. Center
Century Square
1501 4th AVE
Seattle, WA 98101
*Testimony*: Plaintiff's biostatistics expert

29. Michael McCaffrey, M.D.
8171 Rourk Street
Myrtle Beach, SC 29572
*Testimony*: Plaintiff's prescribing physician

30. Charlotte McKines
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889
*Testimony*: Executive Director of Integrated Marketing Communications for
Merck. Anticipated testimony is reflected in witness' MDL deposition.

31. Michael Mikola, M.D.
East Cooper Internal Medicine
929 Bowman Rd, Suite A
Mt. Pleasant, SC 29464
*Testimony*: Plaintiff's prescribing physician

32. Briggs Morrison
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889
*Testimony*: Vice President of Clinical Research at Merck Research
laboratories. Anticipated testimony is reflected in witness' MDL
deposition.

33. Lemuel Moye III, M.D.
University of Texas, School of Public Health
Division of Biostatistics
1200 Herman Pressler
Houston, TX 77030
*Testimony*: Plaintiff's biostatistics/warnings/testing/FDA expert

34. Thomas Musliner
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ  08889
*Testimony*:  Executive Director of Clinical Research at Merck.
Anticipated testimony regarding Vioxx.

35. Alan Nies
c/o  Bartlit, Beck, Herman, Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL  60610
*Testimony*:  Former Senior Vice President of Clinical Research at Merck
Research Laboratories.  Anticipated testimony is reflected in witness'
MDL deposition.

36. Connie Pechmann
1604 Harkness St.
Manhattan Beach, CA  90266
*Testimony*:  Plaintiff's marketing expert

37. Jeffrey Popma, M.D.
Director of Interventional Cardiology
Brigham & Women's Hospital
45 Francis Street
Boston, MA 02115
*Testimony*:  Plaintiff's cardiology expert.

38. Alise Reicin
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ  08889
*Testimony*: Vice President of Clinical Research at Merck Research
Laboratories. Anticipated testimony is reflected in witness' MDL
deposition.

39. Ian Rodger, M.D.
53 Ranch Rd.
Brantford, Ontario, Canada N3T5M1
*Testimony*:  Former employee at Merck.  Anticipated testimony regarding
Vioxx.

40. Edward Rowland
10135 Olde Towne Wynd SE
Leland, NC  28451
*Testimony*:  Friend and former colleague of Plaintiff.

41. Nancy Santanello
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Executive Director of Epidemiology of Merck.  Anticipated
    testimony is reflected in witness' MDL deposition.

42. Edward Scolnick
    c/o  Bartlit, Beck, Herman, Palenchar & Scott LLP
    Courthouse Place
    54 West Hubbard Street
    Chicago, IL  60610
    *Testimony*:  Former President of Merck Research Laboratories.
    Anticipated testimony is reflected in witness' MDL deposition.

43. Beth Seidenberg
    c/o  Bartlit, Beck, Herman, Palenchar & Scott LLP
    Courthouse Place
    54 West Hubbard Street
    Chicago, IL  60610
    *Testimony*:  Former Vice President of Clinical Research in Pulmonary
    Immunology.  Anticipated testimony is reflected in witness' MDL
    deposition.

44. Deborah Shapiro
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Biostatistician in the Clinical Biostatistics and Research Decisions
    Sciences Department at Merck.  Anticipated testimony is reflected in
    witness' MDL deposition.

45. Adam Schecter
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Vice President and General Manager of Merck/ Schering-Plough
    Pharmaceutical.  Anticipated testimony is reflected in witness' MDL
    deposition.

46. Lou Sherwood
    c/o  Bartlit, Beck, Herman, Palenchar & Scott LLP
    Courthouse Place
    54 West Hubbard Street
    Chicago, IL  60610

*Testimony*:  Former Senior Vice President of Medical Affairs at Merck. Anticipated testimony is reflected in witness' MDL deposition.

47. Robert Silverman
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Senior Director for Regulatory Affairs at Merck Research Laboratories.  Anticipated testimony is reflected in witness' MDL deposition.

48. Thomas Simon
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Vice President of Clinical Sciences Operations Group at Merck.  Anticipated testimony regarding Vioxx.

49. Eric Topol, M.D.
    c/o  Mintz, Levin Cohn Ferris Glovsky and Poppeo P.C.
    One Financial Center
    Boston, MA 02111
    *Testimony*:  Cardiologist.  Anticipated testimony is reflected in witness' MDL deposition.

50. Douglas Watson
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Director of Epidemiology of Merck.  Anticipated testimony is reflected in witness' MDL deposition.

51. Jan Weiner
    Merck & Co., Inc.
    One Merck Drive
    Whitehouse Station, NJ  08889
    *Testimony*:  Executive Director of Public Affairs at Merck.  Anticipated testimony is reflected in witness' MDL deposition.

52. Ellen Westrick
    c/o  Bartlit, Beck, Herman, Palenchar & Scott LLP
    Courthouse Place
    54 West Hubbard Street
    Chicago, IL  60610
    *Testimony*:  Former Merck employee in the Office of Medical-Legal. Anticipated testimony is reflected in witness' MDL deposition.

53. Douglas Zipes, M.D.
    10614 Winterwood
    Carmel, Indiana 46032
    *Testimony*:  Plaintiff's cardiology expert.

54. Any custodian of records or representative of any party, agency,
    department, business, insurer and/or medical provider necessary to
    authenticate any document, record, business entry or payment.

55. Any witness named as the Merck Corporate Witness, FRCP 30(b)(6)
    Witness, or Witness responding to Request for Admissions sent to Merck,
    if not already listed above.

56. Any witness or rebuttal expert necessary for purposes of rebuttal.

57. Any witness that is discovered subsequent to the filing of this list.


Defendant may call the following witnesses, either live or by deposition.  All of these
witnesses were included on Defendant's Witness List.  This list does not include
those witnesses for whom Defendant would seek to counter-designate deposition
testimony if Plaintiff seeks to introduce deposition testimony from the same witness.
Additional depositions may be taken before trial and Defendant reserves the right to
supplement this list to include some or all of those additional depositions.  Merck
anticipates eliciting fact testimony from Merck employees and/or advisors, as well as
opinion testimony related to their duties (which do not regularly involve giving expert
testimony).

a.      David Anstice

b.      Janet Arrowsmith-Lowe, M.D.

c.      Gerald Barnett

d.      Corinne Barnett

e.      Susan Baumgartner

f.      Curtis Bryan, M.D.

g.      Gregory Curfman, M.D.

h.      Thomas DeBauche, M.D.

i.      Stephen Epstein, M.D.

j.      Nicholas Flavahan, M.D.

k. Barry Gertz, M.D.

l. Raymond Gilmartin

m. Mark Karavan, M.D.

n. KyungMann Kim, Ph.D.

o. Michael McCaffrey, M.D.

p. Malachi Mixon

q. Michael Mikola, M.D.

r. Briggs Morrison, M.D.

s. Alan Nies, M.D.

t. Alise Reicin, M.D.

u. Paul Roach, M.D.

v. Nancy Santanello, M.D.

w. Edward Scolnick, M.D.

13. **For Jury Trials:**

This is a jury trial.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing Counsel not later than five (5) working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

14. **The issue of liability for compensatory damages (will or will not) be tried separately from the issue of liability for punitive damages.**

15. **Other matters that may expedite case disposition.**

16. **Trial shall commence on July 24, 2006 at 8:30 a.m. and is expected to last until August 11, 2006.**

17. **Pre-trial Order.**

This pretrial order has been formulated after conference at which counsel for the respective parties have talked by phone.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**18.**    <u>**Settlement.**</u>

The possibility of settlement of this case was not considered.

**19.**    <u>**Counsel Affirmations:**</u>

Counsel for Plaintiff are aware exhibits are to published to the jury by way of projection screen or video monitor unless consent is otherwise obtained from the Court upon showing of the impracticality or undue prejudice.

_Mark P. Robinson_

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
Attorney for Plaintiff

Andy D. Birchfield
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Attorney for Plaintiff

Donald C. Arbitblit
LIEFF CABRASER HEIMANN &
BERNSTEIN
Attorney for Plainiff

_Andrew Goldman_

Philip S. Beck
Andrew L. Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
Attorneys for Defendant


This _____ day of _____, 2006.


_____
UNITED STATES DISTRICT JUDGE