UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to | * | MAGISTRATE JUDGE KNOWLES |
| Gerald Barnett v. Merck & Co, Inc. | * | CASE NO. 02:06CV00485 |

## Motion in Limine No. 12

### PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT MERCK FROM REFERRING TO THE ANY GEOGRAPHIC AREA IN OR AROUND SOUTH CAROLINA AS THE "STROKE BELT"

Plaintiff Gerald Barnett, by and through his undersigned counsel, hereby moves to exclude any evidence, testimony or argument by Merck to the effect that the State of South Carolina or any area in or around that geographic region is known or referred to as the "Stroke Belt."

I.     INRODUCTION

The Plaintiff anticipates that Defendant Merck will attempt to introduce, through the testimony of its own experts, or through cross-examination of Plaintiff's experts, the fact that in the geographical area around South Carolina there is an area known as the 'stroke belt' where there is a very high stroke death rate. Any such reference should be excluded as it would have no probative value, and would only mislead the jury, result in undue prejudice, confusion of issues, undue delay and waste of trial time.

1

## II. THE SUBJECT EVIDENCE HAS NO PROBATIVE VALUE, AND NO TENDENCY TO MAKE THE EXISTENCE OF ANY FACT THAT IS OF CONSEQUENCE TO THIS ACTION MORE OR LESS PROBABLE.

Under the Federal Rules of Evidence, only relevant evidence is admissible. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401. The Plaintiff anticipates that Merck will attempt to introduce the term 'stroke belt' into this case, as counsel for Merck has questioned physicians in deposition regarding this term. In questioning Dr. Bryan counsel for Merck made a reference to South Carolina as 'the stroke belt.':

```
                                    78
   10   Q.  Did you -- let's actually go back for a
   11  minute. Is the State of South Carolina in an area
   12  called the stroke belt?
   13   A.  Yes.
   14   Q.  What does that mean?
   15   A.  Per capita, there's a very high stroke
   16  rate. And actually, South/North Carolina is that
   17  big stroke belt that's known.
   18   Q.  Does South Carolina have the highest
   19  stroke death rate in the country?
   20   A.  I believe it does.
   21   Q.  Has that been true for over five decades,
   22  sir?
   23   A.  I don't recall if it's for five decades,
   24  since I just moved here seven years ago. But I -- I
   25  believe it's been for quite a while. I don't know

                                    79
   1   if it's that long or not..
```

(Bryan Depo, 78:10-79:1)

A similar query was made of Dr. Karavan:

```
   15      Q.  Does South Carolina have a particular
   16  problem when it comes to strokes or this particular
```

2

```
17  area of the country, is it known as the stroke
18  belt?
19      A.  People have called it the stroke belt
20  before, yes, sir.
21      Q.  What does that mean?
22      A.  Well, I think basically that in the --
23  in South Carolina, in the deep south, there is a
24  higher incidence of both stroke and heart attack
25  and probably again related to lifestyle choices.
0114
1       Q.  Do you know whether South Carolina has
2   had the highest stroke rate in the country for the
3   last five decades?
4       A.  I don't know the answer to that
5   question.
```

(Karavan Depo, 113:15-14:5)

The term "stroke belt", and the incidence of stroke in the geographic area of South Carolina, have no relevance to any issue in this action. Mr. Barnett did not suffer from a stroke, and Dr. Karavan does not think that stroke had anything to do with Mr. Barnett's heart disease.

```
19      Q.  Given the extent of Mr. Barnett's
20  plaque build-up in his arteries, am I right that if
21  he didn't receive the bypass, it is very possible
22  he would have gone on to have perhaps a fatal
23  stroke or a fatal heart attack?
24      A.  I don't think stroke had anything to do
25  with his heart disease so I -- I don't see the
0193
1   connection with stroke.  He had pretty severe
2   diffuse coronary artery disease and odds are he was
3   going to have another heart attack.  I can't
4   predict when that was going to happen.
```

(192:19-25).

### III. THE SUBJECT EVIDENCE CARRIES A SUBSTANTIAL RISK OF UNDUE PREJUDICE, CONFUSION OF ISSUES, AND MISLEADING THE JURY, AND WILL RESULT IN UNDUE DELAY AND WASTE OF TIME.

The Federal Rules of Evidence provide that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. A motion in limine is the appropriate vehicle for excluding confusing and misleading evidence. *U.S. v. Paul*, 175 F.3d 906, 909 (11th Cir. 1999) (granting government's motion in limine to exclude testimony because it would be confusing); *Federal Practice and Procedure: Evidence* § 5037 (1977). The district court must make the admissibility determination on an individual basis, considering the evidence's probative value and the danger of unfair prejudice. See *Barfield v. Orange County*, 911 F.2d 644, 650 (11th Cir. 1990), cert. denied, 500 U.S. 954 (1991). As the probative value of proffered evidence becomes more marginal, the danger of unfair prejudice will more frequently compel the exclusion of the same under Rule 403. See *U.S. v. Huffine*, No. CR.A. 02-93, 2003 WL 122313 at *4 (E.D. La. Jan. 13, 2003).

Use of the term 'stroke belt' or reference to the area of the Plaintiff's residence as such has no probative value, yet it would unfairly prejudice the Plaintiff by implying to jurors that Mr. Barnett was predestined to have a heart attack by virtue of his residence- a proposition which has no basis in fact. This would only confuse the jury on what is essentially a non-issue, and would cause delay and unnecessary consumption of time.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order precluding Merck from offering any evidence, testimony or argument to the effect that the State of South Carolina or any area in or around that geographic region is known or referred to as the "Stroke Belt."

Date: June 28, 2006

Respectfully submitted,

By _____
Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Counsel for Plaintiff

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana  70013
Telephone:  (504) 581-4892
Facsimile:  (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York  10004
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana  71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Shelly Sanford
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas  77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana  70601
Telephone:  (337) 494-7171
Facsimile:  (337) 494-7218

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania  19102
Telephone:  (215) 772-1000
Facsimile:  (215) 772-1371

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California  92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

Gerald E. Meunier
Gainesburgh Benjamin David Meunier &
Warshauer
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 28th day of June, 2006.

KEVIN F. CALCAGNIE
California State Bar No. 108994
Attorney for Plaintiff
Robinson, Calcagnie & Robinson