UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to: | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| | * | |
| Gerald D. Barnett v. Merck & Co, Inc. | * | CASE NO. 06-0485 |

## PLAINTIFF'S OPPOSITION TO DEFENDANT MERCK & CO., INC.'S MOTION TO EXCLUDE THE TESTIMONY OF RICHARD M. KAPIT, M.D.

### (OPPOSITION TO EXPERT CHALLENGE NO. 10)

This Court has already found Richard M. Kapit, M.D., qualified to offer expert testimony regarding "FDA regulations and Merck's responses." *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 595 (E.D. La. 2005) (relating to *Plunkett v. Merck & Co., Inc.*, No. 05-4046). Since that ruling, Dr. Kapit has prepared a new expert report. (*See* Expert Report Richard M. Kapit, M.D. (hereinafter "Kapit Report") (Ex. A).) Now Merck ("Defendant") has moved this Court to exclude several opinions expressed in Dr. Kapit's new report and in his most recent deposition testimony (Dep. Richard M. Kapit, M.D. (hereinafter "Kapit Dep.") (Ex. B)).

In particular, Defendant attacks what it characterizes as: (1) new opinions regarding the "intent and state of mind of Merck and the [United States Food and Drug Administration ('FDA')]"; (2) criticisms of the FDA approval process and its preference for industry profitability; and (3) opinions that "parrot" the conclusions of other experts. (Def.'s Mem. Supp. Mot. Order Excluding Test. of Richard M. Kapit, M.D. (hereinafter "Def.'s Mem.") 1-2.)

1



Defendant, however, presents a skewed interpretation of Dr. Kapit's testimony, often misapplies the Federal Rules of Evidence; and attempts to reassert arguments this Court has already rejected. Plaintiff responds to each of Defendant's contentions in turn.

I.      **Dr. Kapit Is Qualified to Testify Regarding Merck's Interactions with the FDA.**

Defendant argues that Dr. Kapit has expressed new opinions regarding the state of mind of Merck and the FDA. (Def.'s Mem. 2-4.) Plaintiff agrees that experts generally cannot offer testimony regarding the state of mind of a corporate party or a federal regulatory agency. *See In re Vioxx*, 401 F. Supp. 2d at 595 ("Dr. Kapit may not testify as to what Merck was thinking."). Defendant, however, attempts to portray several of Dr. Kapit's statements as opinions on Merck's or the FDA's state of mind, when in fact he is interpreting available information by applying his specialized knowledge of federal regulatory oversight of the pharmaceutical industry. *See Id.* ("[Dr. Kapit's] testimony should focus on the significance of certain documents and how these documents fit into the FDA's regulatory scheme.").

   A.   **Significance of FDA Correspondence.**

The first opinion Defendant challenges relates to the FDA's "frustration" at Merck's lack of candor. (Def.'s Mem. 2-3.) Dr. Kapit will not at trial describe the FDA's "feelings" regarding Merck, but the opinion in question was offered in the context of describing a letter to Merck from the FDA. (Kapit Dep. 76:10-14.) Federal Rule of Evidence 702 does not prohibit Dr. Kapit from testifying about the letter as it relates to normal FDA procedures, such as whether the FDA routinely sends such letters to pharmaceutical companies. Consistent with this Court's prior ruling, Dr. Kapit should be allowed to testify regarding the significance of the letter in the context of the FDA's regulatory scheme. *See In re Vioxx*, F. Supp. 2d at 595.

### B. Financial Impact of Label Change Possibilities.

The next opinion Defendant seeks to exclude involves Merck's financial motivations relating to Vioxx. (Def.'s Mem. 3.) Dr. Kapit will not testify at trial regarding Merck's intentions involving the marketing of Vioxx. A jury is well-equipped to make a determination that Merck put profitability ahead of public health. But a jury is not necessarily capable of interpreting the evidence regarding the financial impact on Merck of a Vioxx label change. Dr. Kapit's specialized knowledge can assist the jury in understanding certain internal Merck documents relating to Merck's financial stake in changing the Vioxx label (Kapit Dep. 186:1-6). *See* Fed. R. Evid. 702. Perhaps the best indication of the need for expert testimony on this issue is the fact that Merck's own expert, Dr. Janet Arrowsmith-Lowe, was at a loss to interpret Merck's internal projections when presented with one of the same documents at her deposition. (Dep. Janet Arrowsmith-Lowe, M.D. 314:19-317:11 (Ex. C).)

### C. Label Change Delay.

The third opinion Defendant challenges involves Merck's delay in including the VIGOR data in the Vioxx label. (Def.'s Mem. 3.) Specifically, Defendant objects to the description that "Merck dragged its collective feet." (*See* Kapit Report ¶ 124.) Dr. Kapit, however, is certainly qualified to testify regarding the unusual—and almost unprecedented—length of time it took for the VIGOR data to make its way into the Vioxx label. Dr. Kapit's evaluation of Merck's interaction with the FDA derives from years of experience. And Dr. Kapit's assessment accurately reflects the substantial delay arising from Merck's two-years of negotiations with the FDA. Dr. Kapit's conclusion does not necessarily suggest a motivation for Merck's responses, but does indicate that Merck was responsible for the constant postponement for including the data. Indeed, Dr. Kapit's opinion comports with the assessment of Dr. David Graham, a senior drug safety expert with the FDA. (*See* Dep. David J. Graham, M.D. 104:2-12 (Ex. D).)

3

**D.  Merck's Desire to Preempt Regulatory Action.**

The next opinion Defendant contests relates to Merck's desire to preempt regulatory action by the FDA. (Def.'s Mem. 3.) Plaintiff stipulates that Dr. Kapit will not testify regarding Merck's desires, and the particular quotation in question from Dr. Kapit's deposition will not be offered at trial.

**E.  Interpretation of Content of Proposed Label Changes.**

The fifth opinion Defendant seeks to exclude regards Merck's reasons for pursuing expedited review by the FDA. (Def.'s Mem. 3.) Dr. Kapit will not testify regarding Merck's intentions in choosing any particular course of action. Dr. Kapit, however, is qualified to interpret FDA and Merck documents relating to the content of the proposed label change. Therefore, while Dr. Kapit will not venture opinions regarding Merck's state of mind, his judgments regarding the primary effect of the label change, evident in both FDA and Merck documents, is well within the scope of Rule 702.

**F.  FDA "Feelings" About October 2001 Label Proposal.**

The last opinion Defendant challenges based on "intent and motivation" grounds relates to the FDA's knowledge that Merck would not "like" the October 2001 draft Vioxx label. (Def.'s Mem. 3.) This opinion will not be offered at trial.

**II.  Dr. Kapit Is Qualified to Testify Regarding the Efficiency of the FDA's Regulatory Scheme.**

Defendant contends that Dr. Kapit's "criticisms of the FDA" are both (1) "irrelevant" under Federal Rule of Evidence 403 and (2) preempted by *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). Defendant, however, misreads both the Federal Rules of Evidence and court precedent in this case.

### A. Dr. Kapit's Opinions Regarding the FDA's Workload Are Relevant and Reasonably Rely on Survey Data from a Government Agency.

Defendant frames its argument as a challenge to the "relevance" of Dr. Kapit's testimony under Federal Rule of Evidence 403.[1] Rule 403, however, assumes that the evidence in question is relevant. Charles Alan Wright & Kenneth W. Graham, Jr., 22 Federal Practice and Procedure: Evidence § 5211-24 (1978 & Supp. 2005). Instead, Rule 403 provides that a court may exercise its discretion to exclude *relevant* evidence if the probative value of that evidence is substantially outweighed by other factors, such as unfair prejudice. Defendant fails to show, or even suggest, what prejudice Dr. Kapit's testimony would work against it, and how that prejudice is unfair.[2] Defendant consistently argues, however, that Dr. Kapit's testimony is "irrelevant" and relies on arguments about "unreliable" evidence—standards derived from other provisions of the Federal Rules of Evidence.

Federal Rules of Evidence 401 and 402 govern the admissibility of evidence on relevance grounds. Rule 402 provides that "[a]ll relevant evidence is admissible," unless otherwise provided by law. And Rule 401 defines relevance as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Defendant argues that Dr. Kapit's opinion regarding the efficiency of the FDA regulatory process is irrelevant. (Def.'s Mem. 5, 7.) Defendant contends

---

[1] The rule states:

> *Although relevant*, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

[2] Defendant refers to unfair prejudice only once, stating that "the unreliable and speculative nature of this opinion is outweighed by the undue prejudice it would cause [sic]." (Def.'s Mem. 6.)

5

that the "only relevant fact is whether the FDA employees who actually reviewed the Vioxx NDA thought that they had adequate time to do so." (Def.'s Mem. 7.) But Dr. Kapit's expert opinion regarding the efficiency of the FDA regulatory scheme is directly relevant to the matter at hand.

Dr. Kapit is qualified by training and experience to offer an expert opinion on the FDA's regulatory scheme. The FDA's drug approval process is not flawless—for any drug. The inefficiencies in the system and the agency's reliance on the forthrightness of pharmaceutical manufacturers speak directly to the standard of care due to the medical community and the general public on behalf of drug makers. And the sufficiency of the FDA review process, including the time available to conduct an expedited review, is directly relevant to assessing the interactions of the corporate and agency players in this case.

Finally, Defendant argues that the survey Dr. Kapit relies on is itself unreliable. (Def.'s Mem. 6-7.) Federal Rule of Evidence 703[3] provides that an expert may rely on otherwise inadmissible evidence, so long as the evidence is of the type reasonably relied upon by experts in the field. In this particular case, Dr. Kapit relied on a report issued by the Office of the Inspector General of the Department of Health and Human Services, which found that 58 percent of FDA reviewers felt that six-months was inadequate time for a priority review. (Kapit Report ¶ 31.) How could it possibly be unreasonable for Dr. Kapit to rely on an official, published study from

---

[3] The rule states in relevant part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703 (emphasis added).

the Inspector General? Defendant suggests that this survey is unreliable since the response rate was just under 50 percent, and the survey was conducted several years after the Vioxx review. (Def.'s Mem. 7.) Defendant, however, never argues that Dr. Kapit's reliance on the Inspector General's report is unreasonable. Indeed, it is certainly reasonable for an expert offering opinions regarding a regulatory agency to rely on a report published by a government official responsible for assessing the performance of an office under that official's purview. Under Rule 703, Dr. Kapit reasonably relies on the survey, making Dr. Kapit's testimony admissible. Defendant may choose to attack the survey's reliability at trial.

Federal courts have held, consistent with Rule 703, that the reliability of underlying evidence goes to the weight of the testimony; admissibility is determined by the reasonableness of the reliance of the testifying expert. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Therefore, experts may rely on evidence that would itself be otherwise inadmissible, even on reliability grounds. *Black v. M & W Gear Co.*, 269 F.3d 1220, 1229 (10th Cir. 2001) (citing Charles Alan Wright & Victor James Gold, 29 Federal Practice and Procedure: Evidence § 6273 (1997)). "[T]he rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance." *Id.* (quoting *Kinser v. Gehl Co.*, 184 F.3d 1259, 1274-75 (10th Cir. 1999), *overruled on other grounds, Weisgram v. Marley Co.*, 528 U.S. 440, 446 n. 2 (2000)).

### B. Dr. Kapit's Testimony Is Not Preempted by Federal Law.

Defendant contends that federal law preempts "any suggestion that the FDA was not sufficiently rigorous in its evaluation and approval of Vioxx." (Def. Mem. 5 (emphasis added) (citing *Buckman*, 531 U.S. 341 (2001)).) This Court has previously rejected Defendant's

7

attempts to preclude Dr. Kapit's testimony on preemption grounds. *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d at 585-87, 594-95 ("[*Buckman*] is not applicable to this case or issue at all."). Nonetheless, Defendant attempts to resurrect its *Buckman* preemption argument, suggesting that *only* Congress can discuss inefficiencies in the FDA's regulatory scheme. (Def.'s Mem. 5.) Defendant, however, continually misinterprets the holding in *Buckman*.

The *Buckman* Court found only that federal regulation of the medical device approval process impliedly preempted state-law "fraud-on-the-FDA" claims. *Buckman*, 531 U.S. at 355. The Court reasoned that states have not traditionally occupied the field of "policing fraud against federal agencies." *Id.* at 347. Instead, FDA regulations empower the agency to detect, deter, and punish false statements to the federal government. *Id.* at 349. Therefore, state-law fraud-on-the-FDA claims conflict with the FDA's prerogative to oversee its own regulatory process. *Id.* at 349-50. But that does not mean FDA regulations preempt state tort law claims that arise from injuries to persons other than the federal agency.

In reaching its holding in *Buckman*, the Court distinguished *Silkwood v. Kerr-McGee Corporation*, 464 U.S. 238 (1984) (refusing to find implied preemption of a state-law tort under the nuclear regulatory scheme), on the grounds that the case did not involve a fraud-on-the-agency claim, but was based on "traditional state tort law principles of the duty of care." *Buckman*, 531 U.S. at 352. In addition, the Court distinguished *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) (holding that the Medical Device Amendments do not preempt parallel state requirements), on the grounds that the "claims arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements." *Buckman*, 531 U.S. at 352. Therefore, read in light of the holdings of *Silkwood* and *Medtronic*, *Buckman* applies only to state-law fraud claims arising from a duty that runs to the *agency* itself. Conversely, *Buckman* does not apply to state-law torts, such as the failure to

warn, arising from duties that run to, *inter alia*, the medical community, the treating physician, and the patient.[4] In the present case, Dr. Kapit's opinions regarding the adequacy of Defendant's submissions to the FDA and the extent of the anticipated FDA review go directly to "duties that run to consumers, such as the duty not to: (1) market a defectively and unreasonably dangerous product; (2) misrepresent or suppress the facts needed by the medical community and consumers to assess the safety of the product; and (3) adequately warn of known risks associated with the product. These are all duties that exist irrespective of the FDCA requirements." *Kittleson v. Sandoz Pharm. Corp.*, No. 98-2277 JMR/FLN (D. Minn. Sept. 20, 2001) (Ex. E).

### C. Dr. Kapit Will Not Testify that the FDA Serves Industry.

Defendant suggests that Dr. Kapit's testimony regarding the views of FDA employees toward the agency and the pharmaceutical industry is inadmissible hearsay. (Def.'s Mem. 8.) Plaintiff stipulates that Dr. Kapit will not offer opinions regarding the FDA's prioritization of industry interests in relation to public health. (*See* Kapit Dep. 70:3-71:14.) Plaintiff, however, does not concede that *Buckman*, discussed *supra*, is applicable to this case.

---

[4] Lower federal courts have consistently interpreted *Buckman* in a similar manner. *E.g., In re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.*, No. MDL 01-1396 JRT/FLN, 2004 WL 45503, at *3 (D. Minn. Jan. 5, 2004) ("It is difficult to accept such an expansive reading of *Buckman*, and such a reading would be difficult, if not impossible, to reconcile with the decision announced in [*Medtronic*]."); *Eve v. Sandoz Pharm. Corp.*, No. IP 98-1429-C-Y/S, 2002 WL 181972, at *3 (S.D. Ind. Jan. 28, 2002) ("Reading *Buckman* against the backdrop of [*Silkwood* and *Medtronic*] emphasizes that state-based tort claims remain viable."); *Caraker v. Sandoz Pharm Corp.*, 172 F. Supp. 2d 1018, 1040 (S.D. Ill. 2001) ("*Buckman's* specific holding, narrowly read, is not controlling."); *Globetti v. Sandoz Pharm. Corp.*, No. CV98-TMP-2649-S, 2001 WL 419160, at *1 (N.D. Ala. Mar. 5, 2001) (Read together, [*Buckman, Silkwood*, and *Medtronic*] make clear that the only theory preempted is that resting exclusively on the fact that the federal agency was itself the victim of the fraud."); *Kittleson v. Sandoz Pharm. Corp.*, No. 98-2277 JMR/FLN (D. Minn. Sept. 20, 2001) ("When examined against the backdrop of [*Silkwood* and *Medtronic*], it is clear that the only theory preempted by *Buckman* is that premised exclusively on the allegation that the FDA was itself the victim of the fraud.").

9

### III. Dr. Kapit Reasonably Relies on Other Experts in Reaching His Conclusions.

Defendant argues that Dr. Kapit intends to "parrot" the conclusions of four other experts, namely, Drs. Graham, Curfman, Farquhar, and Avorn. (Def.'s Mem. 8.) Of these four only two (Drs. Farquhar and Avorn) are experts retained by Plaintiff. Federal Rule of Evidence 703 outlines the circumstances under which an expert may rely on "facts or data." The Advisory Committee Notes to the 1972 Proposed Rules provide that "facts or data" may consist of (1) the expert's firsthand observations of facts or data; (2) evidence presented at trial; and (3) presentation of information or data to the expert outside of the courtroom and other than by the expert's own perception. The third category includes the opinions of other experts. *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 102 n. 10 (3d Cir. 1982) ("Under Rule 703, an expert's testimony may be formulated by the use of facts, data and conclusions of other experts."). Indeed, specialization in the modern sciences requires such reliance.

> Now it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of [Federal Rule of Evidence] 703 that there is no general requirement that the other expert testify as well. The Committee Notes to the 1972 Proposed Rule 703 give the example of a physician who, though not an expert in radiology, relies for a diagnosis on an x-ray.

*Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002).

Defendant cites two authorities for the proposition that courts must exclude expert testimony "when the expert make [sic] no attempt to assess the validity of the opinions on which he relies." (Def.'s Mem. 9.) The Third Circuit in *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999), affirmed a district court's exclusion of an expert whose testimony was based on *nothing other* than the testimony of other experts. In that case, the expert in question offered a provisional opinion regarding risk assessment, stating clearly that another expert was needed to

establish a crucial link in the chain of causation. *Id.* at 715. The risk assessment method proposed by the expert required examination of the strengths and weaknesses of the available evidence. *Id.* Therefore, the court's decision stands only for the proposition that an expert cannot allow others to do her work for her.[5] The case does not provide any guidance regarding those circumstances where it is appropriate, due to scientific specialization, for one expert to rely on another.

Defendant also cites *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993). The Tenth Circuit in that case precluded the testimony of a financial expert from relying on a financial assessment prepared by another individual. *TK-7 Corp.*, 993 F.2d at 732-33. The court concluded that the expert did not have any expertise on the issue in question, and, therefore, he could not rely on the work of another, especially where there was no evidence that other experts in the field would rely on a similar report. *Id.* This case does not, however, apply to an expert who testifies within his expertise, and *reasonably* relies on other experts when necessary.

### A.     Dr. Kapit Will Not Offer an Estimate of Excess Heart Attacks.

Defendant suggests that Dr. Kapit merely echoes the testimony of Dr. Graham regarding the estimate of excess heart attacks. (Def.'s Mem. 9.) Plaintiff stipulates that Dr. Kapit will not testify regarding the rate of excess heart attacks. (*See* Kapit Report ¶ 122.) Plaintiff, however, does not concede that Dr. Kapit improperly relied on the testimony or publications of Dr. Graham or any other expert in forming the conclusions offered in his expert report.

---

[5] The court decided the case based on Federal Rule of Evidence 702, not 703. *See In re TMI*, 193 F.3d at 714. Therefore, it is obvious that the question before the court involved the testifying expert's reliability and not the reliability of the underlying experts.

11

**B.     Dr. Kapit May Reasonably Rely on Dr. Curfman's Account of Data Withheld from the New England Journal of Medicine.**

Defendant argues that Dr. Kapit should not be allowed to "simply repeat" Dr. Curfman's opinions regarding Merck's conduct in withholding data from the New England Journal of Medicine. (Def.'s Mem. 10.) Dr. Kapit, however, does not purport to offer an expert opinion on the editorial practices of the New England Journal of Medicine. Instead, Dr. Kapit refers to the published account of the incident as further proof that Merck was aware of the dangers of Vioxx, and that Merck failed to provide that information to the medical community or the FDA. (Kapit Report ¶¶ 134 & 162.) Dr. Kapit's reliance on Dr. Curfman's published account (*not* Dr. Curfman's deposition) is reasonable under Rule 703, discussed *supra*. Indeed, Dr. Kapit may rely on Dr. Curfman's expert conclusion as one example in assessing whether Merck breached its duty of care to the medical community and the public generally.

**C.     Dr. Kapit Will Not Provide an Analysis of Protocol 203 Data.**

Defendant contends that Dr. Kapit is not qualified to offer opinions regarding Protocol 203 data, derived from the analysis of Drs. Farquhar and Jewell. (Def.'s Mem. 11-12.) Plaintiff stipulates that Dr. Kapit will not present an analysis of the Protocol 203 data. (*See* Kapit Report ¶ 180.) Plaintiff, however, does not concede that Dr. Kapit improperly relied on the testimony of Drs. Farquhar and Jewell or any other expert in forming the conclusions offered in his expert report.

**D.     Dr. Kapit May Reasonably Rely on Published Medical Literature.**

Finally, Defendant argues that Dr. Kapit may not "parrot" Dr. Avorn's published opinions. (Def.'s Mem. 12.) Dr. Kapit does not, however, simply echo Dr. Avorn's conclusions. Instead, Dr. Kapit, in reaching his own conclusions, cites the medical literature as corroboration. (*See* Kapit Report ¶ 184.) As a scholar, Dr. Kapit may reasonably discuss the published

12

comments of other experts in the field. Indeed, one should expect Dr. Kapit to consider the published opinions of other experts in reaching a sound conclusion. His reliance is perfectly reasonable under Federal Rule of Evidence 703, discussed *supra*.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to exclude expert testimony of Richard M. Kapit, M.D.

Date: June 30, 2006

Respectfully submitted,

By _____
Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Counsel for Plaintiff

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70013
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Shelly Sanford
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas 77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana 70601
Telephone: (337) 494-7171
Facsimile: (337) 494-7218

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1371

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

Gerald E. Meunier
Gainesburgh Benjamin David Meunier &
Warshauer
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 30th day of June, 2006.

_____
KEVIN F. CALCAGNIE
State Bar No. 108994
Attorney for Plaintiff
Robinson, Calcagnie & Robinson