UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to: | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| | * | |
| Gerald D. Barnett v. Merck & Co, Inc. | * | CASE NO. 06-0485 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE ARGUMENT OR OPINION TESTIMONY THAT THE
APPROVe STUDY AND PROTOCOL 203 CANNOT BE GENERALIZED TO OTHER
POPULATIONS, AND TO EXCLUDE OPINIONS CONCERNING "INDIVIDUAL
CONFIDENCE INTERVALS"**

I.   DEFENDANT'S OPPOSITION MEMORANDUM FAILS TO SHOW THAT A RELIABLE METHODOLOGY WAS EMPLOYED TO SUPPORT THE OPINION THAT RESULTS OF APPROVe STUDY AND PROTOCOL 203 CANNOT BE GENERALIZED

The Defense Memorandum recites a string of irrelevancies in its attempt to defend opinion testimony that data showing excess cardiovascular (CV) risk of Vioxx in APPROVe is not generalizable to other populations. Thus, defendant presents broad generalizations about differences in study populations, but fails to present any evidence to support a difference in CV risk between a patient with colon polyps and a patient with osteoarthritis, such as Gerald Barnett. In fact, defense expert Kim testified as follows at his deposition on June 12, 2006:

> Q. Can you name one single difference between the condition of an adenomatous polyp patient and the condition of an arthritis patient that would make the polyp patient more susceptible to having a heart attack on Vioxx?
>
> A. I guess not.

1

(Kim Deposition, Exhibit H, 90:22-91:2.)

The absence of any evidence to support differential risk is fatal to the reliability of defendant's experts' methodology. In the In re Propulsid Products Liability Litigation, 261 F. Supp. 2d 603 (E.D. La. 2003), this Court listed the Daubert non-exclusive factors to consider in determining reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the general acceptance of the methodology in the scientific community." Id. at 605-06. The defense theory of non-generalizability fails each test. The theory has not been tested. When it was subjected to peer review, it was rejected. The potential rate of error is infinite. The methodology is not accepted to any degree in the scientific community. On the contrary, the unanimous decision of the FDA Advisory Committee stated that Vioxx significantly increased the risk of serious cardiovascular events, without any limitation as to the population at risk. As Merck's own Science Memorandum has pointed out, that committee reviewed all of the relevant data before its decisions were made, including the data cited in the Defense Memorandum. Thus, there is no basis to admit the purely speculative assertion that the risk cannot be generalized to other populations.

The Defense Memorandum also attempts to shift the burden of proving admissibility onto Plaintiff, when in fact "the person seeking to admit the expert testimony bears the burden of proving reliability by a preponderance of the evidence." In re Propulsid Products Liability Litigation, supra, 261 F. Supp. at 605-06.

The Defense Memorandum incorrectly asserts that only a single peer reviewer criticized its claim that the APPROVe results could not be generalized. This assertion misconstrues the nature of the peer review process. As stated by Dr. Curfman at his deposition on November 21, 2005, (attached hereto as Exhibit G) the letter from the New England Journal of Medicine dated

February 9, 2005 and attachments of reviewer comments constituted "a set of directives which the authors could attempt to comply with if they sought to have the manuscript published." (Exhibit G, 130:4-14). Thus, the directive to move "unwarranted speculation" about the lack of generalizability of the data constituted the position of the Journal as a whole, and not the position of a single reviewer. Furthermore, the authors complied with the directive to remove the unwarranted speculation, thereby demonstrating that the defense theory failed the Daubert test of peer review and publication.

It is also important that Merck removed Vioxx from the market because of the results of APPROVe, even though the drug was not approved for use in the treatment of polyps. Instead, the drug was in use by millions of arthritics. Thus, Merck itself interpreted the APPROVe study as indicative of risk to the actual users of the drug, not merely the 1,287 patients with polyps in the APPROVe study. Defendant has not cited a single peer reviewed source, nor any source other than its own experts, who agree with the assertion that the risk of Vioxx demonstrated in APPROVe cannot be generalized to other populations.

Defendant's discussion of Alzheimer's trials provides no support for their position. No source other than a defense expert has ever stated that the Alzheimer's trials were powered to detect differences in CV risk, and FDA reviewers found to the contrary. All of the Alzheimer's data was before the FDA Advisory Committee when the unanimous vote was taken which determined that Vioxx significantly increases the risk of CV events, without limitation to any particular population.

Defendant fails to provide any credible explanation as to why the Protocol 203 data cannot be generalized as intended in the data analysis plan for the protocol. Premature termination of the study occurred because the toxicity had already been demonstrated, and excess

3

toxicity was found in the overall Protocol 203 analysis as well as the APPROVe data alone. Furthermore, the Alzheimer's trials were completed long before the DAP for Protocol 203 was written on January 9, 2004, and Merck had made the same arguments about the Alzheimer's trials for years. They were rejected by the FDA Advisory Committee, and the analogous argument as to a special susceptibility of polyp patients was rejected by the peer reviewers.

Finally, there is no merit to Defendant's attempt to link the actions of the peer reviewers in APPROVe and VIGOR (Defense Memorandum at 6, fn. 3). In APPROVe, the reviewing journal had an opportunity to consider the defendant's proposed text for publication, and soundly rejected it. In VIGOR, the concern was just the opposite, that is, that defendant's employees and consultants withheld critical information that deprived the journal of an opportunity to perform its reviewing function.

In summary, there is no basis for the defense experts' opinions as to the supposed lack of generalizability of the findings of increased cardiovascular toxicity in the APPROVe and Protocol 203 studies.

## II. DEFENDANT FAILS TO SHOW ANY RELIABLE METHODOLOGY SUPPORTING OPINIONS AS TO A SUPPOSED "INDIVIDUAL CONFIDENCE INTERVAL" IN THE CONTEXT OF MYOCARDIAL INFARCTION

At his deposition on June 12, 2006, defense expert Kim admitted that he had never seen the term "individual confidence interval" applied to a binary outcome such as myocardial infarction (MI). Instead, Dr. Kim testified:

> Q. Is it your understanding that the phrase "individual confidence interval" is applicable to continuous outcome variables rather than binary outcome variables?
>
> A. That's correct.

(Kim Deposition, Exhibit H, 135:22-136:1)

4

Dr. Kim further acknowledged that the only example he found using the phrase "individual confidence interval" involved the head circumference of newborns, which was a continuous outcome variable. (Id. at 132:23-133:16.) Thus, the individual confidence interval concept has no bearing and no relevance to this case, which involves the binary outcome of MI. This defect is not cured by Dr. Kim's three-sentence declaration of June 22, 2006, which admits that myocardial infarction is a binary outcome variable, then goes on to say that "the relative risk of a particular event, such as myocardial infarction, is a continuous variable." (Defense Exhibit C). Notably, Dr. Kim does not say that the relative risk of myocardial infarction is a continuous "outcome" variable, as to which an individual confidence interval could apply. Nor does the Defense Memorandum cite any text that has ever used the term "individual confidence interval" with regard to myocardial infarction, nor any other binary outcome variable. Indeed, the Reference Manual on Scientific Evidence, cited by the defendant (Defense Memorandum at 7) never uses that term. Instead, the Reference Manual uses the term "attributable risk," which represents "the amount of disease among exposed individuals that can be attributed to the exposure." (Id. at 351.) This is the appropriate term, which is used by Plaintiff's experts.

Merck argues as that it is entitled to explain to the jury why Plaintiff's individual risk for cardiovascular injury is different than the population-based risk seen in APPROVe, but this argument is simply irrelevant to the concept of an "individual confidence interval," which has never been used by any court, nor by any text or journal, to describe the risk to a member of an exposed population who suffered a disease outcome.

5

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion should be granted. The defense experts have used an unreliable methodology to claim that the APPROVe study cannot be generalized, and this notion has no support other than the *ipse dixit* of the experts themselves. Similarly, the "individual confidence interval" is a dreamed-up idea to try to escape from the traditional concepts of relative risk and attributable risk which apply to inferences of causation for individual members of an exposed population, under pertinent legal and scientific authorities.

Date: July 3, 2006

Respectfully submitted,

By: *[signature: For Don C. Arbitblit by Mark Robinson]*

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Counsel for Plaintiff

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70013
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
**Co-Lead Counsel**

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Shelly Sanford
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas 77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana 70601
Telephone: (337) 494-7171
Facsimile: (337) 494-7218

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1371

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

Gerald E. Meunier
Gainesburgh Benjamin David Meunier &
Warshauer
2800 Energy Centre
1100 Polydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 3rd day of July, 2006.

_____
MARK P. ROBINSON, JR.
State Bar No. 054426
Attorney for Plaintiff
Robinson, Calcagnie & Robinson