UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to: | * | MAGISTRATE JUDGE KNOWLES |
| Gerald D. Barnett v. Merck & Co, Inc. | * | CASE NO. 06-0485 |

**PLAINTIFF'S OPPOSITION TO MERCK'S MOTION TO EXCLUDE
THE TESTIMONY OF LESLIE CLELAND, M.D.**

**(DEFENDANT'S EXPERT CHALLENGE NO. 5)**

Plaintiff, by and through his attorneys, files this brief in opposition to Merck's Motion to Exclude the Opinion Testimony of Leslie Cleland, M.D. As outlined below, Dr. Cleland is qualified to proffer each of the opinions challenged in Merck's motion, and his testimony is both reliable and relevant.

Defendant Merck, in its Memorandum in Support of Motion for an Order Excluding Testimony of Dr. Cleland argues that Dr. Cleland "proposes to testify that Merck failed to provide adequate information to prescribing physicians concerning the safety of Vioxx" and then goes onto to move to "exclude any testimony from Dr. Cleland about the adequacy of the safety information in the Vioxx® label, marketing materials, or related public disclosures, based on Dr. Cleland's lack of expertise on the subject matter." Taking a quotation completely out of context from Dr. Cleland's deposition, Merck avers that Dr. Cleland "has a complete lack of expertise in

1



the labeling and marketing of prescription drugs in the United States and admits he has not even read the United States label for Vioxx."

A 'word search' of Dr. Cleland's Rule 26 report in this matter reveals that Dr. Cleland has no intention whatsoever to testify on any matter regarding the Vioxx label, for the word "label" does not appear in his report. Nor, for that matter do the words "marketing materials." Dr. Cleland claims no expertise in the labeling and marketing of prescription drugs in the United States and will not be asked to testify on these matters.

In this regard Merck misses the point that Dr. Cleland had deliberately chosen to avoid commentary on the US product label/package insert and instead chose to focus on the manner in which the Vioxx associated cardiovascular risk was portrayed in the peer-reviewed *scientific literature*. Dr. Cleland specifically limited his opinions in this regard to the scientific literature since scientific publications, especially those in high impact journals that are ostensibly peer-reviewed (such as the *New England Journal of Medicine* and *Circulation*), have far more impact on medical opinion than product labels, which generally are considered over inclusive and not necessarily a reliable guide to the problems one may expect.

The *Daubert* court, in discussing 'publication' of a theory or technique in a peer-reviewed journal" described the "submission to scrutiny of scientific community" as a component of "good science," in part because it increases likelihood that substantive flaws in methodology will be detected. Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993) 509 U.S. 579, 593, 113 S. Ct. 2786, 2797, citing Fed. Rules Evid. Rules 104(a), 702, 28 U.S.C.A.

Dr. Cleland has submitted to the peer review and scientific scrutiny inherent in publication of his opinions in this regard. In 2004, *prior to being retained as an expert in the Vioxx litigation*, Dr. Cleland, and his research partner, Dr. Michael James published **'Applying a**

research ethics committee approach to a medical practice controversy: the case of the selective COX-2 inhibitor rofecoxib' in the Journal of Medical Ethics.

(James MJ, Cleland LG. **Applying a research ethics committee approach to a medical practice controversy: the case of the selective COX-2 inhibitor rofecoxib.** *J Med Ethics.* 2004 Apr;30(2):182-4). Although deposed by Merck on May 31, 2006 for over 7 hours, Merck's attorneys chose NOT to question Dr. Cleland on the bases for his opinions as published. Not a single question regarding this publication was posed to Dr. Cleland.

Dr. Cleland will, if allowed, testify as to what was published in the peer-reviewed literature. Risk management is global in nature and not confined to the borders of the United States. As two authors from Merck wrote: "Globalization has resulted in the need to communicate with multiple regulatory bodies simultaneously...."[1] When Merck wanted to make its claim regarding the gastrointestinal toxicity associated with non-steroidal anti-inflammatory drugs and, therefore, the benefits associated with Vioxx, they published **Gastrointestinal Toxicity Associated with Nonsteroidal Anti-Inflammatory Drugs - Epidemiologic and Economic Issues**[2]. The 'global' nature of the usage of NSAIDS was recognized as Merck wrote:

> In 2000, approximately 69 million NSAID prescriptions were dispensed at a cost greater than $4.8 billion. Usage in the *Netherlands* in 1987 was 11 defined daily doses (estimated average daily dose for the primary indication of the drug) per 1000 persons/d, and usage in *Australia* in 1994 was 35 defined daily doses per 1000 persons/d. NSAIDs are used primarily to treat arthritis and related musculoskeletal problems. In *Australia*, 36% of the NSAID users had osteoarthritis and 4% had rheumatoid arthritis in a pharmacoepidemiologic survey in the United Kingdom, 48.3% of patients prescribed NSAIDs had some form of arthritis, with osteoarthritis specified in 22.7% of cases and rheumatoid arthritis in 4.7%. (Emphasis added)

---

[1] Bush JK, Dai WS, Dieck WS, Hostelley LS, Hassall T. The art and science of risk management - a US research-based industry perspective. Drug Safety. 2005; 28(1):1-18.

[2] Strauss WL, Ofman JJ. Gastrointestinal toxicity associated with nonsteroidal anti-inflammatory drugs. Epidemiologic and economic issues. *Gastroenterol Clin North Am* - 01-DEC-2001; 30(4): 895-920.

3

Dr. Cleland is, however, qualified to opine on the "consideration of a research ethics committee approach" to the "significant increase in myocardial infarction with rofecoxib use compared with a traditional anti-inflammatory drug." [3] he is not only a member of a 'research ethic committee' but has (1) developed this opinion prior to being retained for the Vioxx litigation and (2) subjected his opinions to peer-review. His opinion, along with his co-author, Dr. Michael James, is straightforward:

> "...namely, it would simply inform research participants of the trial results with rofecoxib. The certainty of this research ethics committee approach raises the issue of whether it should be applied in normal medical practice outside of the research environment. A consideration of the legal tests for disclosure of information suggests that therapeutic medical practice should mirror that within the research environment, in this case."[4]

Merck claims, in its Motion to Exclude, that "It is not clear whether Dr. Cleland is even aware of what information was actually provided, whether in labels or marketing, to prescribing doctors or the public." However, if Merck had bother to read the materials upon which Dr. Cleland was relying and basing his expert opinions, as put forth in his Rule 26 report, they would have known that he wrote, and subjected to peer-review...

> "Merck funded a clinical trial in a large group of rheumatoid arthritis patients with the aim of examining the gastric safety of rofecoxib. This was the VIGOR study and initial publication of results indicated an unequivocal advantage of rofecoxib over a traditional NSAID (naproxen) for serious adverse gastric events. However, this publication mentioned also a greater incidence of myocardial infarction in the rofecoxib group. This result was framed in terms of a protective effect of naproxen rather than an adverse effect of rofecoxib. **Although not published by Merck, availability of the complete VIGOR data set became available on the US Food and Drug Administration (FDA) website along with the US FDA review. This review revealed the significant increases in serious thrombotic cardiovascular events in the rofecoxib group versus the naproxen group. The effect appeared at 3 months and became especially marked by 8 months of treatment on trial.**" (Emphasis added)

---

[3] James MJ, Cleland LG. Applying a research ethics committee approach to a medical practice controversy: the case of the selective COX-2 inhibitor rofecoxib *J Med Ethics* 2004;30:182-184.

[4] Id.

Dr. Cleland's opinions regarding the warning associated with Vioxx is straightforward, peer-reviewed, and published in 2004:

> The prudent action for medical practitioners who wish to prescribe rofecoxib is to simply inform the patient that in the VIGOR study, rofecoxib use was associated with an increased incidence of myocardial infarction which was more than three times greater than that with use of naproxen, another anti-inflammatory drug. This approach does not require a resolution of the contested meaning of results in the various medical journal publications on rofecoxib.

He intends to proffer no testimony regarding the adequacy of the US label nor marketing.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion be denied in its entirety.

Date: June 26, 2006

Respectfully submitted,

By _/s/ Mark P. Robinson, Jr._
Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California   94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Counsel for Plaintiff

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN HERMAN KATZ
& COTLER, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70013
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591

Elizabeth Cabraser
LIEFF, CABRESER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Thomas Kline
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1371

Arnold Levin, Esq.
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3875
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Christopher A. Seeger
SEEGER WEISS
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
**Co-Lead Counsel**

Shelly Sanford
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas 77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

Drew Ranier, Esq.
RANIER, GAYLE & ELLIOT, LLC
1419 Ryan Street
Lake Charles, Louisiana 70601
Telephone: (337) 494-7171
Facsimile: (337) 494-7218

Mark P. Robinson, Jr.
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Fl
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Christopher V. Tisi Esq.
ASHCRAFT & GEREL
2000 L Street, NW, Suite 400
Washington, DC 20036-4914
Telephone: (202) 783-6400
Facsimile: (307) 733-0028

Gerald E. Meunier
Gainesburgh Benjamin David Meunier &
Warshauer
2800 Energy Centre
1100 Polydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Wittmann, Merck's Counsel, Andrew L. Goldman, and Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8, on this 26th day of June, 2006.

*Mark P. Robinson, Jr.*
MARK P. ROBINSON, JR.
State Bar No. 054426
Attorney for Plaintiff
Robinson, Calcagnie & Robinson