UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR
ORDER EXCLUDING TESTIMONY OF RICHARD M. KAPIT, M.D.**

**(EXPERT CHALLENGE NO. 10)**

This Court previously ruled that Dr. Kapit is qualified to testify about the FDA drug approval process and labeling and how certain documents fit into the FDA's regulatory scheme. Since that ruling, Dr. Kapit issued a new expert report with opinions on several additional subjects that go beyond this Court's prior ruling. Merck's motion challenged Dr. Kapit's expertise and the general propriety of expert testimony on these topics. Plaintiff does not contest

many of the inappropriate topic areas Merck challenged in its motion. As to those topics, Merck's motion should be granted.

On the remaining disputed issues, plaintiff makes no attempt to explain what skills, training, or education Dr. Kapit has obtained that would justify his new opinions on: (i) Merck's or the FDA's state of mind, intent, or motive; (ii) whether the medical officers who reviewed the Vioxx application overlooked information; (iii) Merck's publication of the VIGOR data in the New England Journal of Medicine; or (iv) whether Merck knew there were risks associated with Vioxx prior to its approval for marketing in 1999. Moreover, these opinions are inadmissible because they are irrelevant, duplicative of other testimony, preempted, and unduly prejudicial. Accordingly, the Court should grant Merck's motion in its entirety.

**I.  DR. KAPIT'S OPINIONS ABOUT MERCK'S AND THE FDA'S STATE OF MIND, INTENT, AND MOTIVE DO NOT QUALIFY AS TESTIMONY ABOUT HOW CERTAIN DOCUMENTS "FIT INTO THE FDA'S REGULATORY SCHEME."**

Plaintiff's opposition states that "Dr. Kapit will not testify" that: (i) Merck affirmatively proposed to the FDA a label change for Vioxx because it was motivated to "preempt FDA action"; (ii) Merck's motive for requesting expedited review was to get the gastrointestinal benefit in the Vioxx label; and (iii) "[the FDA] knew Merck was not going to be happy" with its proposed label change. (Pl.'s Opp'n at 4, Parts I(D), (E), (F).) This Court should therefore grant Merck's request for an order prohibiting Dr. Kapit from offering these three opinions.

Still at issue, however, is whether Dr. Kapit should be allowed to offer the following three additional opinions: (i) the FDA was frustrated with Merck; (ii) Merck was motivated by money; and (iii) Merck "dragged its feet" in adding the VIGOR cardiovascular data to the Vioxx label. (Merck's Mot. at 2-3.) While this Court previously found that Dr. Kapit could "help the

jury understand the applicable FDA regulations and Merck's responses," it also limited Dr. Kapit's testimony:

> Lastly, regarding Merck's state of mind, Dr. Kapit may not testify as to what Merck was thinking. Instead, his testimony should focus on the significance of certain documents and how these documents fit into the FDA's regulatory scheme.

*In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 595 (E.D. La. 2005). This Court should reject plaintiff's improper attempt to recast Dr. Kapit's new opinions about state of mind, intent, and motive as complying with this Court's prior order. They do not.

First, Dr. Kapit's belief that *the FDA was frustrated with Merck* goes beyond plaintiff's assertion that Dr. Kapit is only "testifying about [a] letter as it relates to normal FDA procedures, such as whether the FDA routinely sends such letters to pharmaceutical companies." (Pl.'s Opp'n at 2.) Second, this Court did not find that Dr. Kapit had "specialized knowledge [that] can assist the jury in understanding [Merck's projected loss of revenue]" and, contrary to plaintiff's assertion, *Dr. Kapit is not qualified to opine that Merck was motivated by money* based on his review of an internal Merck financial projection that "over a period of several years, Merck would lose four, $5 billion in sales." (Pl.'s Opp'n at 3; *see* June 19, 2006 Deposition of Richard Kapit ("Kapit Dep.") at 196:14-198:17 (testifying that in his years at the FDA he never before reviewed the financial forecasts or profit plans of any pharmaceutical company), attached hereto as Ex. A.) Third, Dr. Kapit's opinion that *Merck "dragged its feet"* cannot be justified by a recharacterization as testimony "regarding the unusual—and almost unprecedented—length of time it took for the VIGOR data to makes its way into the Vioxx label." (Pl.'s Opp'n at 3.)

Plaintiff does not refute Merck's argument that these opinions are simply "Dr. Kapit's characterization of Merck's conduct" and will not "assist the trier of fact to understand the evidence or to determine a fact in issue." (Merck's Mot. at 4 (citing FED. R. EVID. 702).)

3

Instead, plaintiff attempts to admit Dr. Kapit's new opinions under the guise that they were allowed by this Court's prior ruling in *Plunkett v. Merck*. They were not allowed in *Plunkett* and should not be allowed in this trial.

## II. PLAINTIFF CONCEDES THAT DR. KAPIT IS NOT ALLOWED TO OPINE THAT THE FDA SERVES THE PHARMACEUTICAL INDUSTRY FIRST.

The only basis for Dr. Kapit's opinion that the FDA serves the pharmaceutical industry first comes from something a friend of his told him who worked at the FDA. Plaintiff does not contest that Dr. Kapit's opinion is inadmissible because it is not based on facts or data that an expert would reasonably rely on.[1] (*See* Merck's Mot. at 8; Pl.'s Opp'n at 9.) Consequently, this Court should grant Merck's request for an order precluding this opinion.

## III. DR. KAPIT'S OPINION BASED ON A 2003 SURVEY WHERE ONLY 47% OF THE FDA EMPLOYEES RESPONDED IS IRRELEVANT, UNRELIABLE, AND UNDULY PREJUDICIAL.

Dr. Kapit's opinion that FDA reviewers feel six months is insufficient to review a priority New Drug Application (such as Vioxx) should be excluded because it is irrelevant, unreliable, and unduly prejudicial.

In 1999, Vioxx was approved for marketing. In 2003, the Office of Inspector General conducted a survey of the FDA reviewers who were working at the Center for Drug Evaluation and Research. As discussed in Merck's motion, less than half (47%) of the FDA reviewers responded to the survey. (Merck's Mot. at 6.) Out of the 47% who responded, 58% agreed that the allotted six-month time for a priority review is inadequate. (*Id.*) This 2003 survey is the sole basis for Dr. Kapit's opinion that FDA reviewers feel six months is insufficient to review a priority New Drug Application (such as Vioxx). (Kapit Dep. at 95:10-12.)

---

[1] Plaintiff "does not concede that *Buckman*" (the other basis for which Merck urged this Court to exclude the opinion) is applicable. (Pl.'s Opp'n at 9.)

4

Plaintiff argues that this survey is relevant to "the agency's reliance on the forthrightness of pharmaceutical manufacturers" and "the standard of due care to the medical community and the general public on behalf of drug makers." (Pl.'s Opp'n at 6.) Plaintiff, however, is not attempting to offer the survey into evidence,[2] but instead plans to have Dr. Kapit testify that:

(1) "FDA reviewers will [not] necessarily be able to discern safety problems from raw data"; and

(2) the "FDA may occasionally slip up" or "miss a problem entirely."

(Merck's Mot. at 5-6 (quoting Dr. Kapit's expert report and deposition testimony).) Whether the FDA "slipped up" is irrelevant to the issues the jury must decide. It is Merck, not the FDA, that is on trial, and it is only Vioxx, not any other drug, that is at issue.[3] In short, plaintiff wants the jury to second-guess the structure and decisions of the FDA. Such testimony conflicts with the federal regulatory scheme Congress has established to regulate drug safety. In discharging that task, the FDA strikes "a somewhat delicate balance of statutory objectives." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). As the Supreme Court has held, "we think this sort of litigation would exert an extraneous pull of the scheme established by Congress, and it is therefore pre-empted by that scheme." *Id.* at 353.

In addition, Dr. Kapit has no basis to attack the FDA's review of all the available information in making its decisions about Vioxx. Dr. Kapit was not involved in the FDA's decision to approve Vioxx, nor is his opinion based on the information available to the FDA or

---

[2] Plaintiff apparently does not intend even to have Dr. Kapit discuss the survey since it is not listed as an exhibit.

[3] Contrary to plaintiff's assertion, Merck does not concede that Dr. Kapit's testimony is relevant. (*See* Merck's Mot. at 5 (citing FED. R. EVID. 401-03); *id.* at 7 (stating "it is irrelevant what 47% of the FDA employees thought about whether the time allotted for priority reviews was adequate.").)

Merck during the relevant time period. Federal Rule of Evidence 702 and *Daubert* require that an expert reach his opinions through use of a reliable methodology. In contrast, plaintiff asks this Court to accept Dr. Kapit's testimony, which offers nothing more than an opinion that, in hindsight, disagrees with the FDA. Plaintiff's unsupported rhetorical question of "How could it possibly be unreasonable for Dr. Kapit to rely on an official, published study [*sic*] from the Inspector General?" does not meet plaintiff's burden to prove that other experts would rely on this survey. Dr. Kapit did not talk to any FDA employees (much less the medical officers who actually reviewed the Vioxx application) and relies solely on a survey where less than half the employees responded. The low response rate to the survey, in conjunction with the fact that this survey was conducted four years after Vioxx was approved for marketing, makes it improbable that this survey is something an expert would reasonably rely on in forming opinions.[4] *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F. Supp. 2d 251, 261 n.4 (D.R.I. 2005) (finding expert's analysis of survey with a 34% response rate was unreliable under Federal Rule of Evidence 702). This survey and Dr. Kapit's testimony are irrelevant to whether the risks alleged by plaintiff were known or reasonably knowable to Merck.

Finally, Dr. Kapit's opinions should be excluded because they would cause undue prejudice to Merck. Allowing plaintiff to present evidence or argument that the FDA does not have sufficient resources to adequately review new drug applications is tangential, at best, to

---

[4] Plaintiff's citations to *Viterbo* and *Black* for the proposition that the reliability of underlying evidence goes to weight not admissibility are inapposite here where there is no proof, and it is not reasonable, that any expert would rely on a 2003 survey to offer opinions about the adequacy of work done in 1999. In fact, the Federal Judicial Center's Reference Manual on Scientific Evidence explicitly states that where "the response rate [of a survey] drops below 50%, the survey should be regarded with significant caution . . . ." (*See* Merck's Mot. at 7.)

whether Vioxx actually caused plaintiff's injury and whether Merck adequately warned of the alleged danger caused by Vioxx.

## IV. DR. KAPIT'S OPINIONS THAT MERELY PARROT PLAINTIFF'S OTHER EXPERTS ARE IMPROPER AND SHOULD BE EXCLUDED.

Plaintiff does not dispute Merck's motion to preclude Dr. Kapit from offering opinions based on: (i) Dr. Graham's estimate of excess heart attacks and deaths allegedly caused by Vioxx; and (ii) the analysis of the Protocol 203 data performed by two of plaintiff's other experts, Drs. Farquhar and Jewell. (Pl.'s Opp'n at 11-12.) As a result, the Court should grant Merck's motion to preclude Dr. Kapit from offering such opinions.

Still in dispute is whether Dr. Kapit may offer opinions about: (i) Merck's publication of the VIGOR data in the *New England Journal of Medicine* ("*NEJM*"); and (ii) Dr. Avorn's editorial discussing whether Vioxx was known to cause cardiovascular risks prior to its approval. Because Dr. Kapit's testimony and opinions about Merck's publication of the VIGOR data is duplicative of Dr. Curfman's testimony, there is no reason to allow his testimony on this issue. Moreover, Dr. Kapit does not have any special expertise as to what should have been included in the VIGOR publication. He has not worked at the *NEJM* or served on the editorial board of any medical journal. (Kapit Dep. at 327:7-16.) He also admits that his opinions are based solely on the fact that "Dr. Curfman, who is an editor of the *New England Journal*, said that [the *NEJM*] should have been apprised of [the additional adverse events] by Merck before publication." (*Id.* at 323:22-325:17.) Dr. Kapit's testimony about Merck's publication of the VIGOR data should be precluded.

Dr. Kapit's opinion that Merck knew Vioxx caused cardiovascular events long before its withdrawal is merely a reiteration of Dr. Avorn's editorial. (*See* Merck's Mot. at 12.) It should therefore be excluded for the same reasons discussed in Merck's Motion for Order Excluding

7

Testimony of Jerry Avorn, M.D. Furthermore, even if the Court does not exclude Dr. Avorn's testimony, Dr. Kapit offers nothing additional on this topic, and he should not be allowed to simply parrot another expert's testimony.

**V.     CONCLUSION.**

Because plaintiff does not contest the following improper areas raised by Merck's motion, this Court should preclude Dr. Kapit from testifying that:

(1)   Merck affirmatively proposed label changes incorporating VIGOR data to "preempt FDA action";

(2)   Merck requested expedited review of the VIGOR data solely because it wanted the gastrointestinal data in the Vioxx label;

(3)   The FDA knew Merck would not be happy with its proposed label changes;

(4)   The FDA serves the pharmaceutical industry first;

(5)   Vioxx caused tens of thousands of excess heart attacks and deaths; and

(6)   Protocol 203 data demonstrates Vioxx causes cardiovascular events.

In addition, and based on the reasons stated above and in Merck's motion, this Court should preclude Dr. Kapit from offering any additional testimony on:

(1)   The intent and state of mind of Merck and the FDA;

(2)   Criticisms that the FDA missed something when it approved the Vioxx NDA; and

(3)   Opinions that merely parrot plaintiff's other experts.

Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Merck's Motion for Order Excluding Testimony of Richard Kapit, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 13th day of July, 2006.

*/s/ Dorothy H. Wimberly*