UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHN MARTIN,

        Plaintiff,

    v.

MERCK & COMPANY, INC.; and
McKESSON CORPORATION,

        Defendants.
_____/

NO. CIV. S-05-750 LKK/PAN

O R D E R

    On April 1, 2005, plaintiff John Martin ("plaintiff") filed an action against defendants Merck & Co., Inc. ("Merck") and McKesson Corporation ("McKesson") alleging injuries from his use of the prescription drug Vioxx. Plaintiff brings numerous state causes of action including a strict liability claim based on a failure to warn and claims for breach of both express and implied warranties.

    On April 15, 2005, Merck removed the action to this court based on diversity jurisdiction. Plaintiff now moves to

1

EXHIBIT "A"

1 remand, asserting that removal was improper and that this court
2 lacks jurisdiction. Defendant Merck, on the other hand, moves to
3 stay pending a decision by the judicial panel on multidistrict
4 litigation ("MDL Panel") regarding whether to transfer this action.
5 I decide the motions based on the papers and pleadings filed herein
6 and after oral argument.

## I.

## BACKGROUND

Plaintiff is a California resident. Defendant Merck, the manufacturer of Vioxx, is incorporated and has its principal place of business in New Jersey. Defendant McKesson is a promoter and distributor of Vioxx, is incorporated in Delaware, and has its principal place of business in California.

On February 16, 2005, pursuant to 28 U.S.C. § 1407, the MDL Panel issued a transfer order establishing MDL proceeding No. 1657, In re Vioxx Products Liability Litigation. That order centralized 148 cases that the MDL panel found had overlapping questions of fact. The Panel also held that nearly 300 potentially-related actions then pending in multiple federal districts will be treated as potential tag-along actions. Merck's moving papers indicate that the company "intends to provide notice to (the MDL Panel) of the pendency of this 'tag-along.'"

////
////
////

## II.

## ANALYSIS

Merck contends that "the policies of justice and efficiency" compel this court to address its motion to stay before addressing plaintiff's motion to remand. Plaintiff, on the other hand, insists that the proper procedure requires the court to first address the jurisdictional issue. I address these contentions below.

### A. STANDARD FOR COMPETING MOTIONS TO STAY AND TO REMAND

While judicial economy will normally favor deciding a remand motion prior to a stay pending transfer, Quincy Cmty Servs Dist. v. Atlantic Richfield, No. CIV. S-03-2582 at *7 (E.D. Cal. 2004)(Karlton, J.), existing legal authority does not provide concrete guidance on how a district court should address these competing motions. This court has, however, previously addressed this question and has adopted a three step methodology set forth in Meyers v. Bayer AG, 143 F.Supp.2d 1044 (E.D. Wis. 2001). Id. That test provides that:

> [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in any other cases that have been or may be transferred to the MDL proceeding.
> Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

Quincy Cmty Servs Dist., No. CIV S-03-2582 (quoting Meyers, 143 F.Supp.2d at 1049).

**B.  PRELIMINARY ASSESSMENT OF THE JURISDICTIONAL ISSUE**

I first make a preliminary assessment of the jurisdictional issue. A preliminary review of plaintiff's motion to remand suggests that removal of this action from state court was improper because the presence of defendant McKesson defeats complete diversity of citizenship. 28 U.S.C. § 1332(a). Furthermore, as I explain below, Merck's position that McKesson was fraudulently joined appears to be without merit. Accordingly, the Court will complete its assessment of the motion to remand.

**C.  MOTION TO REMAND**

**1.  Fraudulent Joinder Standard**

Civil actions not involving a federal question are removable to a federal district court only if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Section 1332 requires that there be complete diversity; that is, each plaintiff's citizenship must be diverse as to each defendant's citizenship. Id. A defendant may remove a civil action that alleges claims against a non-diverse defendant when the plaintiff has no basis for suing that defendant, or in other words, when that defendant has been fraudulently joined. McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987).

"[F]raudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant,

4

and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting McCabe, 811 F.2d at 1339) (citations omitted)). Where a non-diverse defendant has been "fraudulently joined" to an otherwise completely diverse case, that defendant is disregarded for diversity jurisdiction purposes. See, e.g., Calero v. Unisys Corp., 271 F.Supp.2d 1172, 1176 (N.D. Cal. 2003).

On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-404 (9th Cir. 1996); Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). Thus, the defendant carries a high burden of establishing that the non-diverse party was fraudulently joined. See Gaus, 980 F.2d at 564. 28 U.S.C. § 1447(c) provides that a case removed from state court should be remanded if it appears that the case was removed improvidently or without jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal. Gaus, 980 F.2d at 566.

In determining whether a non-diverse defendant has been improperly joined, courts may look beyond the pleadings and examine the factual record. McCabe, 811 F.2d at 1339.

2. **Analysis**

Merck asserts that diversity jurisdiction exists in this action because the only non-diverse defendant named in the

5

complaint, McKesson, was fraudulently joined. It first asserts that plaintiff has not asserted a viable claim against McKesson. Second, it argues that, even if a claim could stand against McKesson, plaintiff's complaint fails to plead sufficient facts against McKesson and any general allegations do not support a properly pleaded claim.

### a. Viable Cause of Action

I first address Merck's contention that plaintiff has failed to state a viable claim against McKesson as a distributor. Merck asserts that plaintiff's claims against McKesson are based on a failure to warn about the purported risks of Vioxx. According to Merck, however, this claim necessarily fails because California law does not impose such a duty to warn on distributors.

While it is well-known that manufacturers of prescription drugs in California can be held strictly liable for a failure to warn, Carlin v. Superior Court, 13 Cal.4th 1104, 1110 (1996), the court must determine whether distributors of such drugs can be similarly liable. The answer is readily at hand. The general rule is that strict liability for failure to provide adequate warnings runs to distributors as well as manufacturers. Arderson v. Owens-Corning Fiberglas Corp., 53 Cal.3d 987, 994 (1991). Such liability may also extend to retailers. Soule v. Gen. Motors Corp., 8 Cal.4th 548, 560 (1994).

Merck argues that the general rule does not apply to distributors when the product at issue is a pharmaceutical

6

product. To support its position, Merck directs the court to California law providing that pharmacists are not subject to liability based on a failure to warn theory. See, e.g. Murphy v. E.R. Squibb & Sons, Inc., 13 Cal.4th 1104, 1117 (1996). While the state courts have carved out an exception for pharmacists, however, they have not addressed whether prescription drug distributors are similarly exempt from strict liability for failure to warn.

It is undisputed that McKesson is not a pharmacist. Still, Merck insists that the rationale for exempting pharmacists from strict liability applies equally to distributors. It does not cite to any authority to support its position, however, and instead argues that such an outcome is good public policy. This argument necessarily fails. First, California's public policy justification for exempting pharmacists from strict liability is that pharmacists provide services. Murphy, 40 Cal.3d at 679 ("a key factor" in exempting pharmacies from liability is "that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor . . . . He is providing a service to the doctor."). McKesson, unlike pharmacists, does not provide the public with an analogous service. More importantly however, by relying primarily on public policy arguments, Merck effectively concedes that such a cause of action is not presently precluded under California law. Therefore, Merck fails to meet its heavy burden to show to "a

near certainty" that McKesson's joinder was fraudulent. <u>Lewis v. Time, Inc.</u>, 83 F.R.D. 455, 466 (E.D. Cal. 1979), <u>aff'd</u>, 710 F.2d 549 (9th Cir. 1983).

Merck also argues that Martin's claim against McKesson cannot stand because pharmaceutical drug distributors are exempt from liability under the learned intermediary doctrine. McKesson points out that physicians are "learned intermediaries" whose advice consumers follow when deciding what medications to take. According to Merck, this means that the duty to warn runs from the manufacturer to the physician, and from the physician to the ultimate consumer. I cannot agree.

First, the learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder. <u>See</u> <u>Ritchey v. Upjohn Drug Co.</u>, 139 F.3d 1313, 1318-19 (9th Cir. 1998). However, even if the court considered the defense, it would not necessarily bar recovery. California law exempts from liability those in the chain of prescription drug distribution when adequate warning has been given to physicians about the potential dangers of the medication. <u>Carlin</u>, 13 Cal.4th at 1118. Where, as plaintiff alleges here, the dangers of the drug were scientifically knowable to the manufacturer, but the doctor was not warned, liability may still extend to the manufacturer. <u>Id.</u>

As a last ditch effort, Merck argues that attaching liability to McKesson for failure to warn is problematic

8

because, by providing additional warnings on Vioxx containers, the distributor would violate federal law prohibiting alteration of Federal Drug Administration ("FDA") approved labels. The California Supreme Court has rejected this argument and explained that strict liability for failure to warn is not necessarily inconsistent with FDA policy. Carlin, 13 Cal.4th at 1113 ("as numerous courts have concluded, Congress evinced no intention of preempting state tort liability for injuries from prescription drugs."). Accordingly, Merck cannot show that plaintiff's cause of action against a prescription drug distributors is precluded under state law.

Again, the established general rule in California is that drug distributors may be strictly liable under a failure to warn theory. Anderson, 53 Cal.3d at 994. Because California courts have not specifically addressed the issue, at the very least, it is an unsettled question of law. Therefore, Merck cannot meet its heavy burden so as to defeat plaintiff's motion to remand. See Gaus, 980 F.2d at 566.

   b. **Properly Pleaded Complaint**

Alternatively, Merck argues that plaintiff's motion to remand should be denied because his general allegations against the defendants cannot substitute properly pleaded claims against McKesson specifically. In other words, Merck objects to the propriety of the claims against McKesson on the grounds that the complaint lumps McKesson with Merck together, making it difficult for McKesson to determine the allegations upon which

9

plaintiff seeks to hold it liable. According to Merck, plaintiff's failure to distinguish the specific factual allegations against McKesson amounts to an "admission" of fraudulent joinder. Below, I examine whether plaintiff has alleged sufficient facts to support his cause of action against McKesson.

A strict liability cause of action requires a plaintiff to prove injury. Carlin, 12 Cal.4th at 1110. Plaintiff avers in his complaint that:

> [He] took the prescription medication Vioxx and Vioxx was the legal and proximate cause of his coronary disease/ bypass. The coronary disease/bypass has led to the aforementioned damages. Vioxx is . . . is distributed by McKesson Corporation.

Compl. at 4. While plaintiff has clearly alleged an injury, Merck insists that, by failing to allege that McKesson distributed the Vioxx that Martin actually ingested, he does not allege facts to establish causation.

Martin presents pharmacy records to show that he filled his prescription for Vioxx at a Safeway store during the time in which McKesson was that store's "primary supplier of branded, generic and repackaged pharmaceutical products" in all 733 Safeway locations in the United States. Cain Decl. at ¶ 7, Ex. 4. Merck objects that the Court cannot consider Martin's purported evidence of causation because it is not contained in Martin's complaint. It is well-known, however, that in determining whether a non-diverse defendant has been improperly

10

joined, courts may look beyond the pleadings and examine the factual record. McCabe, 811 F.2d at 1339. Accordingly, plaintiffs allegations, if true, are sufficient to establish causation.[1]

Because plaintiff has properly alleged a viable state law cause of action against McKesson, the court cannot find fraudulent joinder.[2]

### D. AUXILIARY CONSIDERATION OF THE MOTION TO STAY

As noted, the court is not obligated to consider Merck's motion to stay. However, since it insists that it will be heavily prejudiced if the court ignores its motion, the court briefly addresses this contention below.

---

[1] Merck cites a recent Eastern District of California Vioxx decision, Aronis v. Merck & Co., No. CIV S-05-0486 (E.D. Cal., May 3, 2005; Shubb, J.), which concluded that defendant McKesson was fraudulently joined. In Aronis, the court found the complaint to be deficient, noting that "plaintiff [did] not allege that McKesson contributed in any way to her injuries, only that McKesson is a distributor." Id. (emphasis in the original). That case is distinguishable from the instant matter, in that Martin's allegations do establish a sufficient causal link between the medication distributed by McKesson and ingested by Martin, since plaintiff presents evidence showing that McKesson was the primary distributor of prescription medications at the pharmacy where Martin obtained the Vioxx.

[2] The Meyers test indicates that the court should consider the motion to stay "only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred (to a MDL venue)." Meyers, 143 F.Supp.2d at 1049. This is not the case here. Although Merck argues that the jurisdictional issue is both factually and legally complex, it does not state why this is so. Consideration of plaintiff's motion to remand actually suggests that the jurisdictional issue is simple and that this case belongs in state court. While Merck argues that the MDL judge will review jurisdictional questions, it offers no evidence that such questions will be similar or identical to the one before the court here.

11

The power to stay proceedings is within the court's discretion and is incidental to the "power inherent in every court to manage the schedule of cases on its docket to ensure fair and efficient adjudication." Quincy Cmty. Servs. Dist., No. CIV. S-03-2582, *6 (quoting Landis v. North America Co., 299 U.S. 248, 254-55 (1936)).

In considering a motion to stay pending a possible MDL Panel transfer order, the district court considers three factors: (1) "potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed and (3) the judicial resources that would be saved by avoiding duplicative litigation if cases are in fact consolidated." Id. at *6.

As plaintiff points out, defendant cannot be prejudiced by the remand of this action because a coordinated Vioxx proceeding is pending in the Los Angeles Superior Court, where this matter will ultimately be resolved. Therefore, because Merck is already involved in and must defend such matters in California, its contentions regarding prejudice are unfounded.

**E. ATTORNEY'S FEES**

Martin requests an award of attorney's fees incurred in bringing its remand motion. 28 U.S.C. § 1447(c) provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. Costs may be awarded for an improper removal even absent a finding of bad faith. Moore v.

Permanente Med. Group. Inc., 981 F.2d 443, 446 (9th Cir. 1992). The award of fees is within the jurisdiction of the district court. Id.

An award of attorney's fees and costs is not warranted in the instant matter. Although ultimately unconvincing, Merck's contentions are not frivolous, and there is nothing showing that removal was motivated by bad faith. Moreover, defendant's removal does not appear to have resulted in unreasonable delay or prejudice.

## III.

## CONCLUSION

1. Plaintiff's motion to remand is GRANTED.
2. Defendant Merck's motion to stay is DENIED as moot.
3. Plaintiff's motion for attorney's fees is DENIED.

IT IS SO ORDERED.

DATED: August 15, 2005.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT