UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-485 | * | |
| | * | MAGISTRATE |
| GERALD D. BARNETT, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC, | * | |
| | * | |
| Defendant | * | |
| * * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO
PLAINTIFF'S REQUEST TO CONSOLIDATE PHASE ONE OF TRIAL**

Merck respectfully submits this opposition to plaintiff's request to consolidate the first phase of trial. In *Plunkett,* the Court carefully considered the issue and exercised its sound discretion to bifurcate the trial into compensatory and punitive damage phases, holding that the "balance of the equities weighs in favor of bifurcation." *In re Vioxx Prods. Liab. Litig. (Plunkett)*, MDL No. 1657, November 23, 2005 Order & Reasons ("*Plunkett* Order & Reasons") at 3. Citing South Carolina law, plaintiff argues that the Court should change course in this case and consolidate the first phase of trial to decide Merck's liability for both compensatory damages and punitive damages simultaneously. (Pl.'s Mem. at 1.) Plaintiff's request is without merit because: (i) as this Court already acknowledged in *Plunkett*, federal, not state, law controls the

1

issue of bifurcation; (ii) bifurcation is warranted under Federal Rule 42 to promote efficiency and avoid prejudice in this case; and (iii) plaintiff's allegation of a fraud-based claim does not differentiate this case from *Plunkett* or make consolidation appropriate here.  For these reasons, the Court should deny plaintiff's motion.

I.  **FEDERAL, NOT STATE, LAW GOVERNS THIS COURT'S DECISION TO BIFURCATE TRIALS INTO COMPENSATORY DAMAGE AND PUNITIVE DAMAGE PHASES.**

Plaintiff bases his argument that the Court should consolidate the compensatory and punitive phases of the *Barnett* trial on inapplicable South Carolina law.  As this Court has already acknowledged, Rule 42(b) of the Federal Rules of Civil Procedure, not state law, governs the bifurcation of trials.  (*See Plunkett* Order & Reasons at 3.)  In *Plunkett*, this Court rejected a similar request by plaintiff to consolidate the first phase of trial to include both compensatory and punitive liability under Florida law, holding that "the mode of trial is a procedural matter and . . . the Court is bound to apply federal procedural law." *Id*. (citing *Rosales v. Honda Motor Co.*, 726 F.2d 259, 262 (5th Cir. 1984) (holding that federal district courts should apply federal procedural law, not state substantive law, in establishing whether trials should be bifurcated as to liability and damages in federal court)).   Other courts have overwhelmingly agreed.  *See Am. Computech, Inc. v. Nat'l Med. Care, Inc.*,  959 F.2d 239 (9th Cir. 1992) ("Fed. R. Civ. P. 42(b) is procedural in nature and is applicable to the federal proceeding involving pendent state claims."); *Moss v. Associated Transport, Inc.*, 344 F.2d 23, 25 (6th Cir.1965) (applying Rule 42(b) instead of Tennessee law requiring that liability and damages be tried in a single proceeding).

Because Federal Rule 42, not state law, controls a district court's decision to bifurcate, the South Carolina case law cited in plaintiff's motion is irrelevant.  As a result, this Court should stand by its decision in *Plunkett* to bifurcate Vioxx trials into compensatory damages and punitive damages phases.

## II. THIS COURT SHOULD, IN ITS DISCRETION UNDER RULE 42, BIFURCATE THE UPCOMING TRIAL TO AVOID PREJUDICE AND PROMOTE EFFICIENCY.

Bifurcation of the compensatory damages and punitive damages phases of the upcoming trial is clearly warranted under federal law. Under Federal Rule 42, the Court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy" may bifurcate a trial to resolve issues of compensatory and punitive liability separately. FED. R. CIV. P. 42(b); *see also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 474-75 (5th Cir. 1986) (affirming district court's bifurcation of compensatory and punitive damages); *In re Simon II Litig.*, No. 00-CV-5332, 2002 U.S. Dist. LEXIS 25632, at *330-331 (E.D.N.Y. Oct. 22, 2002) (bifurcating liability for compensatory and punitive damages under Rule 42(b)). As this Court recognized in *Plunkett*, "the decision to bifurcate rests within the sound discretion of the trial court." (*Plunkett* Order & Reasons at 3.) In this case, the trial should be bifurcated into compensatory damages and punitive damages phases because bifurcation will promote the efficient resolution of the case and will avoid prejudice to Merck.

Bifurcation in this case will help to ensure that that the *Barnett* trial will proceed in an efficient fashion and will permit the jury to base its decision on relevant evidence. The adjudication of plaintiff's claim for compensatory damages will require the jury to evaluate significant scientific and medical evidence to determine whether Vioxx caused Mr. Barnett's heart attack. The complicated inquiry required to make a determination concerning medical causation will undoubtedly require the jury's full attention, as will sorting through evidence related to compensatory damages. If the jury is at the same time inundated with unrelated evidence relating to Merck's liability for punitive damages, confusion is inevitable. Bifurcation also creates the potential for conserving substantial judicial and party resources. If Merck prevails at the first phase of trial, there will be no need for this Court or the parties to devote time

3

and effort to the issue of punitive damages.

Most important, bifurcation will help to ensure that the verdict eventually reached in this case is fair. In the absence of bifurcation, there is a real possibility that the jury will improperly consider evidence related solely to punitive damages when deciding whether Merck caused Mr. Barnett's injury, tainting the validity of the judgment on liability and compensatory damages. In order to ensure that the jury does not rule in favor of plaintiff on the basis of improper evidence, the Court should bifurcate Merck's liability for compensatory damages from Merck's liability for punitive damages. As this Court acknowledged in *Plunkett*, "[a]ny other method of bifurcation would be highly prejudicial and unfair." (*Plunkett* Order & Reasons at 4.)

### III. PLAINTIFF'S FRAUD CLAIM DOES NOT MAKE JOINT TRIAL OF COMPENSATORY AND PUNITIVE LIABILITY MORE APPROPRIATE IN THIS CASE THAN IN *PLUNKETT*.

Plaintiff's request for a joint trial of compensatory and punitive liability hinges upon the unpersuasive argument that, unlike *Plunkett*, the current case involves causes of action based in fraud. (Pl.'s Mem. at 1 ("[u]nlike the Irvin trials, Plaintiff here has asserted a cause of action for deceit by concealment.").) Contrary to plaintiff's claim, the plaintiff in *Plunkett did* initially allege fraud-based claims, including claims for fraudulent misrepresentation and fraudulent concealment. (*See Plunkett* Compl. at ¶¶ 76, 97.) Those claims were still in the case at the time the Court ruled on bifurcation. Thus, there is no reason for the Court to reach a different result in this case. Mrs. Irvin dropped her fraud-based claims at the close of her case in *Plunkett*, in response to Merck's motion for judgment as a matter of law. Plaintiff's fraud-based claims here are similarly without merit.

Mr. Barnett's claim for deceit by concealment requires him to prove that Merck made material misrepresentations on which his prescribing physician relied. *See Regions Bank v. Schmauch*, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003); *see also Pitts v. Jackson Nat'l Life Ins.*

4

*Co.*, 574 S.E.2d 502, 510 (S.C. Ct. App. 2002) ("Non-disclosure becomes fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction."). In a products liability case where a doctor makes the ultimate decision to prescribe a product, courts have acknowledged that the treating physician's, rather than the party's, reliance must be shown. *See Jones v. Danek Med., Inc.*, No. Civ.A. 4:96-3323-12, 1999 WL 1133272, at *8 (D.S.C. Oct. 12, 1999) (bone screw case applying South Carolina law).

Based on the discovery in this case, it is unlikely that Mr. Barnett will be able to make the requisite showing to sustain a claim for deceit by concealment. Specifically, he cannot prove that either of his prescribing physicians, Dr. Mikola and Dr. McCaffrey, relied on Merck's representations about Vioxx, because both physicians testified at deposition that they *did not* rely on promotional representations pertaining to the drug. For example, both physicians explicitly stated that they did not rely on advertising for Vioxx when making their prescribing decisions. (*See* Deposition of Michael McCaffrey ("McCaffrey Dep.") at 207:6-208:3 ("Q: Do you rely on commercials on television about drugs in deciding what medicine to prescribe to your patients? A: No, sir."), attached hereto as Ex. A; Deposition of Michael Mikola ("Mikola Dep.") at 343:5-8 ("Q: Did the advertisements such as Dorothy Hamill skating about Vioxx play any role in your decision to prescribe Vioxx to Mr. Barnett? A: No, sir."), attached hereto as Ex. B.) Mr. Barnett's physicians have also testified that they did not rely on representations made by Merck sales representatives. For example, Dr. Mikola explained that he relies upon his own research to make conclusions about a drug, not the representations made by pharmaceutical sales representatives. (*See* Mikola Dep. at 180:6-23 ("[Sales representatives] have a lot of glossies and detail pieces which contain factual information, but it generally doesn't contain all the

5

information available. So I would generally ask that they particularly not detail me but present me with the original articles from – that I could read it and draw my own conclusions.").) Similarly, Dr. McCaffrey testified that he did not even have time to talk to Merck representatives about the risks or benefits of Vioxx. (*See* McCaffrey Dep. at 99:8-12 ("Q: Is it fair to say that given how busy you are, you don't have time to sit down with sales representatives and talk about the benefits and risks associated with medicine? A: Correct.").)

## IV. CONCLUSION.

For the reasons set forth above, Merck respectfully requests that this Court follow its decision in *Plunkett*, deny plaintiff's request to consolidate, and bifurcate the upcoming trial into compensatory damages and punitive damages phases.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition to Plaintiff's Memorandum in Support of Request to Consolidate Phase One of Trial has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of July, 2006.

/s/ Dorothy H. Wimberly