IN THE CIRCUIT COURT OF
THE CITY OF ST. LOUIS
STATE OF MISSOURI

SHIRLEY ADAMS,                )
                             )
and                          )
                             )
RANDY BECK,                  )
                             )
and                          )
                             )
LINDA BESTERFELT,            )
                             )
and                          )
                             )
GLEN BOND,                   )
                             )
                             )
                             )
WINIFRED BOWERS,             )      Case No.: 052-9621
                             )
and                          )      JURY TRIAL DEMANDED
                             )
                             )
SHEENA BROWN,                )
                             )
and                          )
                             )
ANTHONY BYRAM,               )
                             )
and                          )
                             )
ELIZABETH COBLE,             )
                             )
                             )
                             )
ANDREA COLLIER,              )
                             )
                             )
GERALD COOPER,               )
                             )
                             )
                             )
ALAN FISHER,                 )



|  | ) |
| **and** | ) |
|  | ) |
| **MARY FLAMM,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **JUDITH FULLER,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **VIRGINIA GENNARO, Individually** | ) |
| **and as Personal Representative of the** | ) |
| **Estate of ANTHONY GENNARO,** | ) |
| **Deceased,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **DOROTHY GOSTON,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **ROBERT HENDERSON,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **DENNIS HINER,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **MACK HOLT,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **MERCEDES HUGHES,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **SHARON HYCNE,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **DONALD WILBURN,** | ) |
|  | ) |
| **and** | ) |
|  | ) |

**ROBERT WILLIAMSON,**                )
                                      )
**and**                               )
                                      )
**CHARLENE PICKER,**                  )
                                      )
**and**                               )
                                      )
**NHA DOAN,**                         )
                                      )
**and**                               )
                                      )
**ELIZABETH SMOLESKI,**               )
                                      )
**and**                               )
                                      )
**WYATT BUCHANAN,**                   )
                                      )
**and**                               )
                                      )
**DONALD DICKINSON,**                 )
                                      )
**and**                               )
                                      )
**CORINNE VENTURA,**                  )
                                      )
**and**                               )
                                      )
**IRENE BELKER,**                     )
                                      )
**and**                               )
                                      )
**PAULETTE BROOKINS,**                )
                                      )
**and**                               )
                                      )
**GLORIA CHEERS,**                    )
                                      )
**and**                               )
                                      )
**THOMAS ERWIN,**                     )
                                      )
**and**                               )
                                      )
**JEANETTE TILLMAN,**                 )
                                      )

and                                )
                                   )
**LEMOYNE TURNER,**                 )
                                   )
and                                )
                                   )
**JANINE LIFRITZ,**                 )
                                   )
and                                )
                                   )
**MICHAEL LENOIR,**                 )
                                   )
and                                )
                                   )
**CHESTER LACY,**                   )
                                   )
and                                )
                                   )
**WILLIAM LAUT,**                   )
                                   )
and                                )
                                   )
**JOAN VARDIMAN,**                  )
                                   )
and                                )
                                   )
**JERRY THORNHILL,**                )
                                   )
and                                )
                                   )
**LUCY PARRAN,**                    )
                                   )
and                                )
                                   )
**MADELINE KELLER,**                )
                                   )
and                                )
                                   )
**MARK DALTON,**                    )
                                   )
and                                )
                                   )
**CHARITY CUMMINGS,**               )
                                   )
and                                )
                                   )

**BOBBIE DAVIS,**                    )
                                     )
**and**                              )
                                     )
**NANCY EATON,**                     )
                                     )
**and**                              )
                                     )
**STEPHEN GRAMMER,**                 )
                                     )
**and**                              )
                                     )
**MARY HORRELL,**                    )
                                     )
**and**                              )
                                     )
**JAMES JENKINS,**                   )
                                     )
**and**                              )
                                     )
**RICHARD JUST,**                    )
                                     )
**and**                              )
                                     )
**GLENDA RIDDLE,**                   )
                                     )
**and**                              )
                                     )
**THOMAS SHELOR,**                   )
                                     )
**and**                              )
                                     )
**JAMES SMITH,**                     )
                                     )
**and**                              )
                                     )
**CHARMAINE SPIRO,**                 )
                                     )
**and**                              )
                                     )
**RITA STEWART,**                    )
                                     )
**and**                              )
                                     )
**CELESTINE SWINNEY,**               )
                                     )

| | |
|---|---|
| **and** | ) |
| | ) |
| **TED WINKOWSKI,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **RICHIE BEATRICE,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **WILLIAM KAVANAUGH,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **LETHA BROOKS,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **MAE STEWART,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MERCK & CO. INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## FIRST AMENDED PETITION

COME NOW the Plaintiffs, by and through their undersigned attorney, and for their Petition against Defendant Merck & Co., Inc., ("Merck"), G. D. Searle, LLC, ("Searle"), a subsidiary of Pharmacia Corporation ("Pharmacia"), a foreign corporation, Monsanto Company ("Monsanto"), and Pfizer, Inc., ("Pfizer"), allege as follows:

1.      This action is brought by Plaintiffs seeking damages for personal injuries and economic damages suffered as a result of the following defective and dangerous pharmaceutical products; Vioxx, which was manufactured, marketed, distributed and/or sold by Merck & Co. Inc., Celebrex (Celecoxib), which was manufactured, marketed, distributed and/or sold by G. D.

Searle LLC, Pharmacia Corporation, Monsanto Company and Pfizer Inc., and, Bextra (Valdecoxib), which was manufactured, marketed, distributed and/or sold by Pfizer Inc.

## PARTIES

2.     Plaintiff SHIRLEY ADAMS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

3.     Plaintiff RANDY BECK, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

4.     Plaintiff LINDA BESTERFELDT, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

5.     Plaintiff GLEN BOND, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused

or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

6.      Plaintiff WINIFRED BOWERS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

7.      Plaintiff SHEENA BROWN, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

8.      Plaintiff ANTHONY BYRAM, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

9.      Plaintiff ELIZABETH COBLE, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

10.     Plaintiff ANDREA COLLIER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

11.     Plaintiff GERALD COOPER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

12.     Plaintiff ALAN FISHER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are

defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

13.     Plaintiff MARY FLAMM, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

14.     Plaintiff JUDITH FULLER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

15.     Plaintiff, VIRGINIA GENNARO, is a citizen of the State of Missouri and is the spouse of the Decedent, ANTHONY GENNARO.   Plaintiff's decedent, ANTHONY GENNARO, was a resident of the State of Missouri at the time of his death, and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri.  At the time of his death he was sixty-two (62) years old. His death was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff, for Plaintiff's decedent maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

This is an action for the wrongful death of ANTHONY GENNARO and is being brought pursuant to RSMo §537.080.

16.     Plaintiff DOROTHY GOSTON, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

17.     Plaintiff ROBERT HENDERSON, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

18.     Plaintiff DENNIS HINER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

19.     Plaintiff MACK HOLT, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As

11

more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

20.     Plaintiff MERCEDES HUGHES, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

21.     Plaintiff SHARON HYCNE, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

22.     Plaintiff DONALD WILBURN, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

23.     Plaintiff ROBERT WILLIAMSON, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event

was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

24.     Plaintiff CHARLENE PICKER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

25.     Plaintiff NHA DOAN, is a resident of the State of New Jersey and was sold Vioxx, Celebrex and/or Bextra in the State of New Jersey. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

26.     Plaintiff ELIZABETH SMOLESKI, is a resident of the State of New Jersey and was sold Vioxx, Celebrex and/or Bextra in the State of New Jersey. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

27.     Plaintiff WYATT BUCHANAN, is a resident of the State of New York and was sold Vioxx, Celebrex and/or Bextra in the State of New York. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

28.     Plaintiff DONALD DICKINSON, is a resident of the State of New York and was sold Vioxx, Celebrex and/or Bextra in the State of New York. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

29.     Plaintiff CORINNE VENTURA is a resident of the State of New York and was sold Vioxx, Celebrex and/or Bextra in the State of New York. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

30.     Plaintiff IRENE BELKER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are

defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

31.     Plaintiff PAULINE BROOKINS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

32.     Plaintiff GLORIA CHEERS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

33.     Plaintiff THOMAS ERWIN, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

34.     Plaintiff JEANNETTE TILLMAN, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex

and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

35.     Plaintiff LEMOYNE TURNER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

36.     Plaintiff JANINE LIFRITZ, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

37.     Plaintiff MICHAEL LENOIR, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

38.     Plaintiff CHESTER LACY, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was

caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

39.     Plaintiff WILLIAM LAUT, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

40.     Plaintiff JOAN VARDIMAN, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

41.     Plaintiff JERRY THORNHILL, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

42.     Plaintiff LARRY PARRAN, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

43.     Plaintiff MADELINE KELLER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

44.     Plaintiff MARK DALTON, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

45.     Plaintiff CHARITY CUMMINGS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex

and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

46.     Plaintiff BOBBIE DAVIS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

47.     Plaintiff NANCY EATON, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

48.     Plaintiff STEPHEN GRAMMER, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

49.     Plaintiff MARY HORRELL, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.

As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

50.     Plaintiff JAMES JENKINS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

51.     Plaintiff RICHARD JUST, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

52.     Plaintiff GLENDA RIDDLE, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

53.     Plaintiff THOMAS SHELOR, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was

caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

54.    Plaintiff JAMES SMITH, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

55.    Plaintiff CHARMAINE SPIRO, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

56.    Plaintiff RITA STEWART, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

57.    Plaintiff CELESTINE SWINNEY, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

58.    Plaintiff TED WINKOWSKI, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

59.    Plaintiff RICHIE BEATRICE, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

60.    Plaintiff WILLIAM KAVANAUGH, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. His thrombotic cardiovascular event was caused or significantly contributed to be caused by his usage of Vioxx, Celebrex and/or Bextra.  As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex

and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

61.     Plaintiff LETHA BROOKS, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

62.     Plaintiff MAE STEWART, is a resident of the State of Missouri and was sold Vioxx, Celebrex and/or Bextra in the State of Missouri. Her thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx, Celebrex and/or Bextra. As more particularly pleaded below, Plaintiff maintains that Vioxx, Celebrex and/or Bextra are defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

63.     The Plaintiffs set forth in the immediately preceding paragraphs are hereafter collectively referred to as "Plaintiffs".  Plaintiffs, as used herein, also include decedents of the personal representatives set forth in the preceding paragraphs.

64.     Plaintiffs join in this action because there are questions of law and fact common to the claims of each, and because the claims asserted herein arise out of the same transactions and occurrences, or series of transactions and occurrences. Such common questions include but are not limited to:

      a.     Whether the risks of taking Vioxx outweighs the benefit;

      b.     Whether Vioxx was and is toxic and unsafe;

c.      Whether persons who took Vioxx developed serious injuries, including but not limited to strokes, heart attacks, and other cardiothrombotic cardiovascular events;

d.      Whether in marketing and selling Vioxx, Merck negligently, recklessly or intentionally failed to disclose the dangers and risks to the health of persons ingesting said drugs;

e.      Whether Merck failed to warn adequately of the adverse effects of Vioxx;

f.      Whether Merck falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety and potential side effects of Vioxx;

g.      Whether Merck designed and manufactured a drug that was dangerously defective because the use of Vioxx leads to serious adverse health effects;

h.      Whether Merck knew or should have known that the use of Vioxx leads to serious adverse health effects;

i.      Whether Merck adequately tested Vioxx prior to distribution and sales in the marketplace;

j.      Whether Merck continued to manufacture, market, distribute, and sell Vioxx notwithstanding its knowledge of the dangerous nature of  Vioxx;

k.      Whether the warnings and information Merck provided with Vioxx was adequate in warning of the potential hazards resulting from their use, and whether said warnings, even if facially accurate, were diluted or negated by the misrepresentations and concealment of material facts by Merck;

l.      Whether Merck knowingly omitted, suppressed or concealed material facts about unsafe and defective nature of Vioxx from government regulators, the medical community and/or the public at large;

m.      Whether Merck is liable for punitive damages;

n.      Whether the risks of taking Celebrex outweighs the benefit;

o.      Whether Celebrex was and is toxic and unsafe;

p.      Whether persons who took Celebrex developed serious injuries, including but not limited to stokes, heart attacks, and other cardiothrombotic cardiovascular events;

q.     Whether in marketing and selling Celebrex, Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly or intentionally failed to disclose the dangers and risks to the health of persons ingesting said drugs;

r.     Whether Searle, Pharmacia, Monsanto and Pfizer failed to warn adequately of the adverse effects of Celebrex;

s.     Whether Searle, Pharmacia, Monsanto and Pfizer falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety and potential side effects of Celebrex;

t.     Whether Searle, Pharmacia, Monsanto and Pfizer designed and manufactured a drug that was dangerously defective because the use of Celebrex leads to serious adverse health effects;

u.     Whether Searle, Pharmacia, Monsanto and Pfizer knew or should have known that the use of Celebrex leads to serious adverse health effects;

v.     Whether Searle, Pharmacia, Monsanto and Pfizer adequately tested Celebrex prior to distribution and sales in the marketplace;

w.     Whether Searle, Pharmacia, Monsanto and Pfizer continued to manufacture, market, distribute, and sell Celebrex notwithstanding its knowledge of the dangerous nature of Celebrex;

x.     Whether the warnings and information Searle, Pharmacia, Monsanto and Pfizer provided with Celebrex were adequate in warning of the potential hazards resulting from their use, and whether said warnings, even if facially accurate, were diluted or negated by the misrepresentations and concealment of material facts by Searle, Pharmacia, Monsanto and Pfizer;

y.     Whether Searle, Pharmacia, Monsanto and Pfizer knowingly omitted, suppressed or concealed material facts about unsafe and defective nature of Celebrex from government regulators, the medical community and/or the public at large;

z.     Whether Searle, Pharmacia, Monsanto and Pfizer are liable for punitive damages;

aa.    Whether the risks of taking Bextra outweighs the benefit;

bb.    Whether Bextra was and is toxic and unsafe;

cc.    Whether persons who took Bextra developed serious injuries, including but not limited to stokes, heart attacks, and other cardiothrombotic cardiovascular events;

dd.     Whether in marketing and selling Bextra, Pfizer negligently, recklessly or intentionally failed to disclose the dangers and risks to the health of persons ingesting said drugs;

ee.     Whether Pfizer failed to warn adequately of the adverse effects of Bextra;

ff.     Whether Pfizer falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety and potential side effects of Bextra;

gg.     Whether Pfizer designed and manufactured a drug that was dangerously defective because the use of Bextra leads to serious adverse health effects;

hh.     Whether Pfizer knew or should have known that the use of Bextra leads to serious adverse health effects;

ii.     Whether Pfizer adequately tested Bextra prior to distribution and sales in the marketplace;

jj.     Whether Pfizer continued to manufacture, market, distribute, and sell Bextra notwithstanding its knowledge of the dangerous nature of Bextra;

kk.     Whether the warnings and information Pfizer provided with Bextra was adequate in warning of the potential hazards resulting from their use, and whether said warnings, even if facially accurate, were diluted or negated by the misrepresentations and concealment of material facts by Pfizer;

ll.     Whether Pfizer knowingly omitted, suppressed or concealed material facts about unsafe and defective nature of Bextra from government regulators, the medical community and/or the public at large;

mm.     Whether Pfizer is liable for punitive damages.

65.     Joinder of Plaintiffs will minimize or eliminate expensive and duplicative discovery, and will allow these claims based upon common transactions and occurrences to be tried as one case rather than sixty (60), thereby promoting judicial efficiency and economy. Joinder also will limit the risk of inconsistent adjudications among plaintiffs similarly situated and asserting claims against the same defendants and arising out of the same transactions and occurrences.

66.     The Defendant, Merck & Co. Inc., ("Merck"), is a foreign corporation, which is in good standing with the State of Missouri, having its principal place of business at One Merck Drive, White House Station, New Jersey 08889.  At all times relevant hereto, Defendant Merck was and continues to be engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug, Vioxx, in Missouri and throughout the United States.

67.     Merck is a Delaware Corporation licensed and registered to do business in Missouri and can be served through its registered agent: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105.

68.     Celebrex (Celecoxib) is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. The Celebrex Defendants did manufacture, design, package, market and distribute this drug.  The Celebrex Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. The Celebrex Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. The Celebrex Defendants did this to increase sales and profits.

69.     At all times relevant hereto, The Celebrex Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product.  The Celebrex Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and

27

intentional disregard to the Plaintiffs' individual rights, and hence punitive damages are appropriate.

70.     Defendant G.D. Searle LLC. (hereinafter "Searle") is a subsidiary of Pharmacia, Corporation. As such, Searle, pursuant to RSMo § 351.596, can be served at the Office of the Secretary of State, State Capital, Room 208, Jefferson City, Missouri 65101. At all times relevant hereto, Searle as a subsidiary of Pharmacia, Corporation, and Pharmacia Corporation (hereinafter "Pharmacia"), were in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).

71.     Defendant Pharmacia is a Delaware Corporation licensed and registered to do business in Missouri and can be served through its registered agent: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105.

72.     Defendant Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia, and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Monsanto is licensed and registered to do business in Missouri, and may be served through its agent: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105.

73.     Defendant Pfizer Inc (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Pfizer is licensed and registered to do business in Missouri and may be served through its agent: CT Corporation System, 120 South Central Avenue, Clayton, MO 63105 Hereinafter, these four defendants will collectively be referred to as "Celebrex Defendants."

74.     Pfizer Inc (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Pfizer is licensed and registered to do business in Missouri and may be served through its agent: CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

75.     Bextra (Valdecoxib) is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Pfizer did manufacture, design, package, market and distribute this drug. Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Pfizer aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Pfizer did this to increase sales and profits.

76.     At all times relevant hereto, Pfizer actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Pfizer conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiffs' individual rights, and hence punitive damages are appropriate.

## JURISDICTION AND VENUE

77.     As a direct and proximate result of the acts and omissions of Merck, Searle, Pharmacia, Monsanto, and Pfizer, Plaintiffs have sustained permanent and devastating injuries.

These injuries have caused, and will continue in the future to cause, extensive pain and suffering, emotional distress, loss in Plaintiffs' ability to enjoy life, lost wages and future lost wages, and the expenditure, past and future, of substantial sums of money for medical, hospital, and related care, all to the Plaintiffs general damage in a sum in excess of twenty-five thousand dollars, ($25,000.00).

78.     This Court has jurisdiction pursuant to and consistent with RSMo §407.025 and §506.500.   There is no complete diversity of citizenship sufficient for federal jurisdiction. Plaintiffs bring this complaint solely under state law and not under federal law, and specifically not under the United States Constitution, nor any of its amendments,  nor any other federal statute, law, rule or regulation.  Plaintiffs believe and allege that a cause of action exists under state law for the conduct complained of herein.

79.     This Court has jurisdiction pursuant to and consistent with RSMo §407.025, §506.500, and the Constitutional requirements of Due Process in that Merck, Searle, Pharmacia, Monsanto, and Pfizer, acting through its agents, apparent agents, and/or independent contractors, committed one or more of the following:

     a.  Transacted business in the State of Missouri, RSMo § 506.500.1(1);

     b.  Made or performed a contract or promise substantially connected with and/or within the State of Missouri, RSMo § 506.500.1(2);

     c.  Committed, and conspired to commit, tortious acts within the State of Missouri, RSMo § 506.500.1(3); and/or

     d.  Owned, used, or possessed real estate situated in the State of Missouri, RSMo § 506.500.1(4).

79.     Requiring Merck, Searle, Pharmacia, Monsanto, and Pfizer to litigate these claims in Missouri does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

80.     Venue is proper pursuant to RSMo § 508.040, as Merck, Searle, Pharmacia, Monsanto, and Pfizer have offices and/or agents for the transaction of their usual and customary business in the City of St. Louis.

81.     Venue is proper pursuant to RSMo § 508.040, as the causes of action complained of herein accrued in the City of St. Louis.

82.     Venue is proper pursuant to RSMo § 407.025, as the sixty (60) transactions complained of took place in the City of St. Louis.

## FRAUDULENT CONCEALMENT

83.     Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of the facts as alleged herein by Merck, Searle, Pharmacia, Monsanto, and Pfizer.  Plaintiffs and their physicians have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs could not reasonably have discovered the dangerous nature of, and unreasonable adverse side effects associated with, Vioxx prior to September 30, 2004.

84.     Merck, Searle, Pharmacia, Monsanto, and Pfizer are and were under a continuing duty to disclose the true character, quality, and nature of Vioxx to the Plaintiffs and their physicians.  Because of its concealment of the true character, quality and nature of these drugs, Merck, Searle, Pharmacia, Monsanto, and Pfizer is estopped from relying on any statute of limitations defense.

## FACTUAL BACKGROUND - VIOXX

85.     Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain.

Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

86.     Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

87.     Defendant Merck submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA"), on November 23, 1998, for tablets, at doses of 12.5mg and 25mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal. This application was denoted NDA 21-042 by the FDA.

88.     Defendant Merck also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the FDA on November 23, 1998, for oral suspension, at doses of 12.5mg/mL and 25mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal. This application was denoted NDA 21-052 by the FDA.

89.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereafter the "NDA"), for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal.

90.     At the time the drug was approved by the FDA the labeling for rofecoxib stated, in the section entitled "Special Studies – Upper Endoscopy in Patients with Osteoarthritis," "Treatment with Vioxx 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen

32

2400mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

91.     The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) Effects – Risk of GI Ulceration, Bleeding, and Perforation."

92.     Defendant Merck submitted NDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the NDA, Defendant Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999, through March 17, 2000.

93.     The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50mg daily compared to patients in the group taking naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

94.     In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and thrombotic cardiovascular events.  Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials*, in August 2000, page 3.

95.     Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealments.  Merck engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

96.     Merck continued to profit from its scheme by withholding information from the Plaintiffs, the consuming public, and the healthcare industry.  For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

97.     On, or about, August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al. showing that Merck had concealed that the relative risk of developing a confirmed adjudicated thrombotic cardiovascular event (defined in the article as myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic thrombotic cardiovascular events, and transient ischemic attacks) among Vioxx users in Merck's trials, including VIGOR, at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients.  *See* Mukhisjee, D., et al., *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, J.A.M.A. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction

34

rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

98.     In the JAMA study, the authors stated that by decreasing PGI2 production, Vioxx may tip the natural balance between prothrombotic cardiovascular events thromboxane A2 and antithrombotic cardiovascular events PGI2, potentially leading to an increase in thrombotic cardiovascular events. In a follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the COX-2 inhibitor tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic cardiovascular events.  Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2*, Journal of Science, V. 296:539-541, Apr. 19, 2002.

99.     On September 17, 2001, Thomas W. Abrams, R.Ph., MDA Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

100.    The Warning Letter stated that Defendant Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx."  The letter stated:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in

myocardial infarctions (MI's) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naproxen (naproxen).

101.   The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant Merck that supports the FDA's issuance of the Warning Letter, and makes the following "**Conclusions and Requested Actions:**"

> The promotional activities and materials described above minimize the potentially serious Cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx / Coumadin drug interaction, omit crucial risk information associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance.
>
> Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.
>
> This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:
>
> a.   Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.
>
> b.   Issuing a "Dear Healthcare provider" letter to correct false or misleading impressions and information.  This proposed letter should be submitted to us for review prior to its release.   After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.
>
> c.   A written statement of your intent to comply with "1" and "2" above.

102.   On April 11, 2002, the FDA approved a supplemental application for the  use of Vioxx for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new

patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

103.   The revised labeling further states that the administration of Vioxx 50mg was associated with a higher incidence of gastrointestinal symptoms.

104.   Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the Vioxx labeling, outlines the changes to the Vioxx labeling.

105.   The revised "Patient Information" sheet does not add any information about the results of the VIGOR study.

106.   The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

107.   Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential gastrointestinal side effects of Vioxx.

108.   Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that Vioxx may cause serious gastrointestinal side effects, Defendant Merck has concealed and/or suppressed the dangers associated with Vioxx, and continues to market the drug in the United States and abroad.  In its 2001 Annual Report, for example, Defendant Merck states:

> The Company also noted that a number of federal and state lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx….The lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events.  The Company believes that these lawsuits are completely without merit and will vigorously defend them.

109.   Further, in its January 23, 2001, 8-K filing with the Securities and Exchange Commission, Merck fails to mention the cardiac and cardiothrombotic cardiovascular events findings of the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said.  "Our five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX AND

SINGULAIR, drove Merck's performance for the year and created a powerful platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.

"Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. VIOXX, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, VIOXX has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck's second largest-selling medicine. In the United States, VIOXX now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. VIOXX achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.

A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which VIOXX reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that VIOXX significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

110.    Despite the foregoing, Defendant Merck has continued to represent to consumers that Vioxx is safe, and that any cardiovascular and/or cardiothrombotic cardiovascular events side effects are not associated with the drug. Merck has also downplayed any potential gastrointestinal side effects of the drug, promoting it as safer as and more efficacious than other medications approved for treatment of similar conditions.

111.    Pursuant to prescriptions received from their treating physicians, the Plaintiffs regularly purchased and ingested Vioxx for various periods of time. The Plaintiffs now suffer from heart attacks, thrombotic cardiovascular events, TIAs, coronary artery disease, atherosclerosis, blood clots, and/or other diseases caused by the use of Vioxx.

112.    Vioxx is primarily prescribed to reduce pain from inflammation. However, the Defendant failed to conduct sufficient research in manufacturing and marketing Vioxx to

determine the severity of the drug's potential side effects.  Defendant also withheld adverse reports, or gave incorrect information about such reports; they had received about side effects such as heart attacks and thrombotic cardiovascular events.  As a result of Defendant's failure and the undisclosed defects of Vioxx, the Plaintiffs have sustained heart attacks, thrombotic cardiovascular events, TIAs, and/or other ill-effects.   Plaintiffs were not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx.

113.    Defendant Merck & Company, Inc., is a New Jersey corporation with its principal place of business located in New Jersey.  Merck is engaged in the business of producing, marketing and distributing pharmaceutical products for sale to the general public and is the manufacturer of Rofecoxib, distributed under the brand name Vioxx.  Merck conducts business in the State of Missouri, and at all times relevant hereto, it developed and sold the pharmaceutical drug Vioxx in the State of Missouri.

114.    Plaintiffs did not know of the potential connection between the use of Vioxx and their injuries until after the FDA issued its recommendation, on September 30, 2004, that Vioxx be removed from the market.

## CAUSES OF ACTION

## COUNT I

## STRICT PRODUCTS LIABILITY/ DEFECTIVE DESIGN - VIOXX

115.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

116.    Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would be used by Plaintiffs and others.

117.   At the time Vioxx was manufactured and sold to Plaintiffs by Merck, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, thrombotic cardiovascular events, and other illnesses which exceeded the benefits of the products, and for which other safer products were available. This defective condition made the product unreasonably dangerous when put to a reasonably anticipated use as treatment for pain relief, which was the use for which Vioxx was advertised.

118.   Alternatively, when the Vioxx products were manufactured and sold to Plaintiffs by Defendant, the products were defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

119.   Plaintiffs used Vioxx in a manner reasonably anticipated.

120.   The Vioxx sold to the Plaintiffs reached the Plaintiffs without substantial change. Plaintiffs were unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular event requiring hospitalization. The Plaintiffs ingested the Vioxx without making any changes or alterations to the drug.

121.   As a direct and proximate result of the defective and dangerous design of the Vioxx, Plaintiffs have been damaged.

122.   Defendant's conduct was done with conscious disregard for the safety of users of Vioxx, including Plaintiffs.

WHEREFORE, the Plaintiffs prays judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT II

## STRICT PRODUCTS LIABILITY/FAILURE TO WARN - VIOXX

123.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

124.    The Vioxx manufactured, supplied, and sold by Merck was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Vioxx, and the comparative severity and duration of the adverse effects.  The warnings given by Merck did not accurately reflect the symptoms, type, scope, or severity of the side effects.

125.    The Vioxx manufactured, supplied, and sold by Merck was an unreasonably dangerous defective product which posed unacceptable risks to human health when put to a reasonably anticipated use by Plaintiffs that was without knowledge of its dangerous characteristics.

126.    Merck failed to perform adequate testing and study Vioxx prior to marketing it or properly analyze and warn based upon its VIGOR study.  Such adequate testing, study or analysis of the VIGOR would have shown that Vioxx possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Vioxx.

127.    Merck also failed to act properly on adverse event reports it received about Vioxx, and failed to properly study Vioxx's pre-market as well as post market and analyze and follow up on it VIGOR study as well as other studies.

128.    Merck also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

129.    Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx because after Merck knew or should have know of the risk of injury from Vioxx use, Merck failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

130.    Plaintiffs used Vioxx in a manner reasonably anticipated.

131.    As a direct and proximate result of Defendant's selling Vioxx without adequate warnings, as well as the other conduct mentioned in this Count, Plaintiffs have been damaged.

132.    Merck's conduct was done with conscious disregard for safety.

WHEREFORE, the Plaintiffs prays judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT III

## NEGLIGENT DESIGN- VIOXX

133.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

134.    Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would be used by Plaintiffs and others.

135.    At the time the Vioxx was manufactured and sold to Plaintiffs by Merck, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, blood clots, and other illnesses which exceeded the benefits of the product, and for which other safer products were available.

136.    Alternatively, when the Vioxx product was manufactured and sold to the Plaintiffs by Defendant, the product was defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

137.    The Vioxx sold to Plaintiffs reached the Plaintiffs without substantial change. Plaintiffs were unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular event. Plaintiffs ingested the Vioxx without making any changes or alterations.

138.    In designing and manufacturing Vioxx, Merck failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

139.    As a direct and proximate result of the negligent design of the Vioxx, Plaintiffs have been damaged.

140.    Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including Plaintiffs.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred;  for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT IV

## NEGLIGENT FAILURE TO WARN - VIOXX

141.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

142.    Merck owed Plaintiffs a duty to warn of any dangerous defects or side effects; a duty to assure its product did not cause users unreasonable and dangerous risks, reactions, side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Vioxx's substantial dangers.

143.    Merck breached its duty of reasonable care to Plaintiffs in that Merck failed to:

a.  Conduct sufficient testing which, if properly performed, would have shown that Vioxx had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

b.  Include adequate warnings with the Vioxx products that would alert users to the potential risks and serious side effects the drugs; and/or

c.  Warn the Plaintiffs that use of Vioxx carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

d.  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx; and/or

e.  Provide Plaintiffs with other appropriate warnings.

144.    Merck should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. Merck nevertheless advertised, marketed and promoted its product knowing there were safer methods and products for pain control.

145.    As a direct and proximate result of Merck's negligence and breaches of its duty of reasonable care, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court;  for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT V

## VIOLATION OF THE MISSOURI FAIR

## MERCHANDISING PRACTICES ACT - VIOXX

146.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

147.    Merck, through its agents, servants and employees, employed deception, fraud false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the sale or advertisement of Vioxx, in violation of Missouri Fair Merchandising Practices Act, RSMo §407.020 and §407.025.

148.    Merck's offer for sale of a consumer product, Vioxx, in trade or commerce, constitutes a representation that the product, Vioxx, is reasonably safe for its intended purpose.

149.    Merck's offer for sale of Vioxx to Missouri consumers constitutes a representation that Vioxx is/was reasonably safe for its intended use.

150.    Merck has engaged in deceptive acts or practices, in violation of the Missouri Fair Merchandising Practices Act, including, but not limited to, the following:  (1) knowingly, intentionally, and/or recklessly omitting, concealing, and/or suppressing its own data from investigations and clinical trials, other analyses, studies, tests, understandings, and conclusions about the true efficacy of Vioxx; (2) knowingly, intentionally, and/or recklessly omitting, concealing, and/or suppressing its own data from investigations and clinical trials, other analyses, studies, tests, understandings, and conclusions about the safety of Vioxx; (3) knowingly, intentionally, and/or recklessly omitting, suppressing, and/or concealing the unreasonably dangerous nature of Vioxx; and (4)  knowingly, intentionally, and/or recklessly

omitting, concealing, and/or suppressing that use of Vioxx poses a significant increased risk of heart attack, sudden cardiac death, thrombotic cardiovascular events, blood clots, and/or other cardiac problems and/or complications.

151.    Merck, has violated the Missouri Fair Merchandising Practices Act, by consciously omitting, concealing, and/or suppressing, or otherwise failing to communicate and notify the Plaintiffs, purchasers and/or consumers of Vioxx, and the medical community at large, of the negative efficacy and/or safety information that it possessed.

152.    The negative efficacy and/or safety information associated with Vioxx treatment, known by Merck, was a material fact in that the Plaintiffs would not have purchased Vioxx and would not have suffered injury from using Vioxx, if Merck, had not omitted, suppressed, and/or concealed, or otherwise failed to disclose the negative efficacy and safety information associated with Vioxx.

153.    Merck, intended that the Plaintiffs rely upon these suppressions, concealment, and/or omissions as to the efficacy, description, quality, safety, and/or characteristics of Vioxx. Merck's deceptive acts and/or practices were specifically designed and intended to induce the Plaintiffs to buy Vioxx and the deception occurred during a course of conduct involving trade or commerce.

154.    As a direct and proximate result of the above violations of the Missouri Fair Merchandising Practices Act, the Plaintiffs were actually deceived and such deception caused the Plaintiffs to suffer personal physical injury and actual damages from expending consideration and value, *i.e.* money, for the purchase of an ineffective, unsafe, and/or unreasonably dangerous drug, Vioxx.

155.    Plaintiffs   purchased Vioxx, manufactured, marketed, promoted, and sold by Merck, and suffered personal physical injury and an ascertainable loss of money, as a result of Merck's use or employment of methods, acts or practices declared unlawful by the Missouri Fair Merchandising Practices Act, and bring this action to recover money damages in the amount necessary to make them whole.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VI

## BREACH OF IMPLIED WARRANTY - VIOXX

156.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

157.    When Defendant placed the Vioxx into the stream of commerce, Defendant knew of the use for which the supplement was intended and impliedly warranted to consumers including Plaintiffs that the use of Vioxx was a safe and acceptable means of relieving pain and impliedly warranted that the product was of merchantable quality and safe for its intended use.

158.    Plaintiffs relied upon Defendant and its judgment when they purchased and utilized Vioxx.

159.    The Vioxx was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and incapable of satisfying the ordinary purpose for which it was intended, and because it caused serious injury to Plaintiffs.

160.     As a direct and proximate result of the dangerous and defective condition of the Vioxx, Plaintiffs suffered a thrombotic cardiovascular event, and they incurred economic damages in the form of medical expense.

161.     Plaintiffs are entitled to recover from Defendant for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VII

## BREACH OF EXPRESS WARRANTY - VIOXX

162.     Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

163.     At all relevant times, Defendant expressly warranted to Plaintiffs  by statements made by Defendant or their authorized agents, orally or in written publications, package labels, and/or inserts, that the Vioxx was safe, effective, fit, and proper for its intended use. The express warranties include, but were not limited to:

164.     Vioxx is used in adults for:

a.   relief of the pain and inflammation (swelling and soreness) of osteoarthritis (arthritis from wear and tear on your bones and your joints);

b.   relief of the pain and inflammation of rheumatoid arthritis in adults (arthritis caused by a condition where your immune system attacks your joints);

    c.   management of short-term pain;

    d.   treatment of menstrual pain (pain during women's monthly periods); and,

    e.   treatment of migraine headache attacks with or without aura.

165.    In utilizing Vioxx, Plaintiffs relied upon the skill, judgment, representations, and express warranties of the Defendant.

166.    The express warranties and representations made by Defendant were false in that Vioxx was not safe and was not fit for the use for which it was intended.

167.    As a direct and proximate result of the dangerous and defective condition of Vioxx, Plaintiffs suffered a thrombotic cardiovascular event, and they incurred economic damages in the form of medical expense.

168.    Plaintiffs are entitled to recover from Defendant for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VIII

## NEGLIGENT MISREPRESENTATION - VIOXX

169.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

170.    At all relevant times, Defendant knew, or should have known, that there were dangerous side effects resulting from the ingestion of Vioxx.

171.    Defendant knew or reasonably should have known that consumers such as Plaintiffs would not have known about the increased risk of a thrombotic cardiovascular event associated with the ingestion of Vioxx.

172.    Defendant armed with the knowledge stated in the preceding two paragraphs, preceded with the design, production, manufacture, promotion, advertising, and sale of Vioxx without adequate warning of the side effects and dangerous risks to the consuming public including Plaintiffs.

173.    Defendant negligently represented to Plaintiffs the safety and effectiveness of Vioxx and concealed material information, including adverse information regarding the safety and effectiveness of Vioxx. The misrepresentations and/or material omissions made by or perpetuated by Defendant are as follows, Merck failed to:

   a.  Conduct sufficient testing which, if properly performed, would have shown that Vioxx had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

   b.  Include adequate warnings with the Vioxx products that would alert users to the potential risks and serious side effects the drugs; and/or

   c.  Warn the Plaintiffs  that use of Vioxx carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

   d.  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx; and/or

   e.  Provide Plaintiffs with other appropriate warnings.

174.    Defendant made the misrepresentations and omissions with the intent for Plaintiffs the consuming public to rely upon such information of the absence of such information in selection Vioxx as a treatment for pain relief.

175.    Plaintiffs justifiably relied on and/or were induced by the misrepresentations and/or active concealment by Defendant and they relied upon the absence of safety information which Defendants suppressed, concealed, or failed to disclose all Plaintiffs' detriment.

176.    As a direct and proximate result of the dangerous and defective condition of Vioxx Plaintiffs suffered a thrombotic cardiovascular event, and they incurred economic damages in the form of medical expense.

177.    Plaintiffs are entitled to recover from Defendant for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and occurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court;  for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT IX

## COMMON LAW FRAUD - VIOXX

178.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

179.    Merck, having undertaken the preparation, design, research, development, testing, manufacturing, inspection, labeling, marketing, promotion, and selling of Vioxx, owed a duty to

provide complete and accurate information regarding said drugs to Plaintiffs, their physicians, and anyone else they knew or should have known would ingest, prescribe or recommend the ingestion of said drugs.

180.    Merck misrepresented material facts regarding the safety and efficacy of Vioxx and failed to inform and did conceal these material facts from Plaintiffs, their physicians and the general public.

181.    Merck fraudulently, intentionally and/or with gross negligence and recklessness misrepresented to Plaintiffs, their physicians and the general public that Vioxx was safe and effective, that the benefits of taking said drug outweighed any risks, and/or fraudulently, intentionally and/or in a grossly negligent and reckless manner misrepresented and concealed safety and effectiveness information regarding said drug, including but not limited to the propensity of said drug, to cause serious harm.

182.    The continuous and ongoing course of action constituting fraud and misrepresentation on Plaintiffs, their physicians and the general public started as early as November 23, 1998, when Merck submitted an application to market Vioxx for human use, if not earlier, and continued through repeated acts and non-disclosure every year since then, throughout the United States and elsewhere.

183.    Vioxx was in fact unsafe and the use of it posed a risk of injury and death, which outweighed the purported benefits of their use, such that injury was in fact caused to Plaintiffs and others.

184.    Merck made misrepresentations and actively concealed adverse information at a time when Merck knew, or should have known, that Vioxx had defects, dangers, and

characteristics that were other than what Merck had represented to the prescribing doctors or other dispensing entities, the FDA, and the consuming public, including Plaintiffs.

185.     Specific misrepresentations and/or active concealment by Merck include, but are not limited to, the following:

> a.  Failure to disclose that there had been insufficient studies regarding the safety and efficacy of Vioxx in treating the symptoms of osteoarthritis;
>
> b.  Marketing, promoting and/or selling Vioxx as if it was fully and adequately tested, when it was not;
>
> c.  Misrepresenting the safety and efficacy of Vioxx in its labeling, advertising, product inserts, promotional materials, or other marketing and/or safety surveillance efforts;
>
> d.  Misrepresenting the existence and adequacy of testing of Vioxx both pre- and post-marketing; and,
>
> e.  Concealing or failing to disclose the severity and frequency of adverse health effects caused by Vioxx.

186.     The misrepresentation and/or active concealment alleged above were perpetuated directly and/or indirectly by Merck, and those acting on their behalf.

187.     The fraudulent misrepresentations of Merck took the form of, among other things, express and implied statements, publicly disseminated misinformation, misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about Vioxx, failure to disclose important safety and injury information regarding said drugs, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead regarding the safety of said drug, all while having a duty to disclose such information to Plaintiffs and others.

188.     Merck knew or should have known that these representations were false and material at the time they were made or omitted or concealed, and made the representations with the intent or purpose that Plaintiffs and their physicians would rely on them, leading to the use of Vioxx by Plaintiffs.

189.    At the time of Merck's fraudulent misrepresentations, Plaintiffs and their physicians were unaware of the falsity of the statements being made and believed them to be true.  Plaintiffs and their physicians had no knowledge of the information concealed and/or suppressed by Merck.

190.    Plaintiffs and their physicians justifiably and reasonably relied on and/or were induced by the misrepresentations and/or active concealment of Merck, and reasonably relied on the absence of safety information, which Merck did suppress, conceal or fail to disclose to the detriment of the Plaintiffs

191.    The misrepresentations and/or active concealment by Merck constitute a continuing tort.

192.    Merck made the misrepresentations and or actively concealed information with the intention and specific desire that Plaintiffs, their physicians and the general public would rely on such misrepresentations or on the absence of information concealed by Merck in selecting Vioxx as a treatment for osteoarthritis symptoms.

193.    One or more of Merck's representatives aided and abetted Merck in the misrepresentations and concealment set forth in this and other Counts.

194.    As a direct and legal result of the matters set forth in this Count, Plaintiffs sustained serious and permanent injuries, disability, mental and physical anguish both past and present, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money in the future.

195.    Said injuries and losses are continuing in nature.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court;  for costs herein incurred; for such other

and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XIV

## PUNITIVE DAMAGES - VIOXX

196.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

197.    Plaintiffs are entitled to punitive damages because Merck's failure to warn was reckless and without regard for the public's safety and welfare.  Merck misled both the medical community and the public at large, including Plaintiffs, by making false representations about safety of Vioxx.  Merck downplayed, understated and disregarded their knowledge of the serious and permanent side effects associated with the use of Vioxx, despite available information demonstrating that Vioxx was likely to cause serious and sometimes fatal side effects to users.

198.    Merck was or should have been in possession of evidence demonstrating that Vioxx caused serious side effects.  Nevertheless, it continued to market Vioxx by providing false and misleading information with regard to the safety and efficacy of the drug.

199.    The actions of Merck, as described herein, was performed willfully, wantonly, intentionally, outrageously, maliciously and with reckless and conscious disregard for the health, welfare, safety and rights of Plaintiffs and the general public.

200.    As a result of the conduct of Merck, Plaintiffs suffered the injuries and damages complained of herein.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Merck in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and

further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## BACKGROUND-CELEBREX

201.    Celebrex is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. The Celebrex Defendants did manufacture, design, package, market and distribute this drug. The Celebrex Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. The Celebrex Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. The Celebrex Defendants did this to increase sales and profits.

202.    At all times relevant hereto, the Celebrex Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. The Celebrex Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiffs' individual rights, and hence punitive damages are appropriate.

203.    This Complaint seeks redress for damages sustained by Plaintiffs, resulting from Plaintiffs' use of Celebrex (Celecoxib), manufactured and sold by The Celebrex Defendants.

204.    The damages sought herein are the direct and proximate result of The Celebrex Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing,

assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Celebrex (Celecoxib).

205.    At all times relevant hereto, the Celebrex Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Celebrex (Celecoxib) throughout the United States.

206.    Had the Celebrex Defendants properly disclosed the risks associated with using Celebrex (Celecoxib), Plaintiffs would not have taken it for treatment of pain associated with injury.

207.    Plaintiffs did not know of the potential connection between the use of Celebrex (Celecoxib) and their injuries until after the FDA issued its recommendation, on April 7, 2005, that Celebrex (Celecoxib) be required to include a black box warning.

## COUNT XV

## STRICT PRODUCTS LIABILITY/ DEFECTIVE DESIGN – CELEBREX

208.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

209.    The Celebrex Defendants designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Celebrex (Celecoxib) which it knew would be used by plaintiffs and others.

210.    At the time Celebrex (Celecoxib) was manufactured and sold to Plaintiffs by the Celebrex Defendants, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, thrombotic cardiovascular events, and other illnesses which exceeded the benefits of the products, and for which other safer products were available. This defective

condition made the product unreasonably dangerous when put to a reasonably anticipated use as treatment for pain relief, which was the use for which Celebrex (Celecoxib) was advertised.

211.    Alternatively, when the Celebrex (Celecoxib) products were manufactured and sold to Plaintiffs by the Celebrex Defendants, the products were defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

212.    Plaintiffs used Celebrex (Celecoxib) in a manner reasonably anticipated.

213.    The Celebrex (Celecoxib) sold to the Plaintiffs reached the Plaintiffs without substantial change. Plaintiffs were unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular events requiring hospitalization. The Plaintiffs ingested the Celebrex (Celecoxib) without making any changes or alterations.

214.    As a direct and proximate result of the defective and dangerous design of the Celebrex (Celecoxib), Plaintiffs have been damaged.

215.    The Celebrex Defendants' conduct was done with conscious disregard for the safety of users of Celebrex (Celecoxib), including Plaintiffs.

216.    WHEREFORE, the Plaintiffs pray judgment in their favor and against Searle, Pharmacia, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XVI

## STRICT PRODUCTS LIABILITY/FAILURE TO WARN -CELEBREX

217.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

218.    The Celebrex (Celecoxib) manufactured, supplied, and sold by the Celebrex Defendants was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Celebrex (Celecoxib), and the comparative severity and duration of the adverse effects. The warnings given by the Celebrex Defendants did not accurately reflect the symptoms, type, scope, or severity of the side effects.

219.    The Celebrex (Celecoxib) manufactured, supplied, and sold by the Celebrex Defendants was an unreasonably dangerous defective product which posed unacceptable risks to human health when put to a reasonably anticipated use by the Plaintiffs that was without knowledge of its dangerous characteristics.

220.    The Celebrex Defendants failed to perform adequate testing and study Celebrex (Celecoxib) prior to marketing it or properly analyze and warn based. Such adequate testing, study or analysis would have shown that Celebrex (Celecoxib) possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Celebrex (Celecoxib).

221.    The Celebrex Defendants also failed to act properly on adverse event reports it received about Celebrex (Celecoxib), and failed to properly study Celebrex (Celecoxib)'s pre-market as well as post market.

222.    The Celebrex Defendants also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

223.    The Celebrex Defendants failed to give adequate post-marketing warnings or instructions for the use of Celebrex (Celecoxib) because after the Celebrex Defendants knew or

should have know of the risk of injury from Celebrex (Celecoxib) use, the Celebrex Defendants failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

224.    Plaintiffs used Celebrex (Celecoxib) in a manner reasonably anticipated.

225.    As a direct and proximate result of the Celebrex Defendants selling Celebrex (Celecoxib) without adequate warnings, as well as the other conduct mentioned in this Count, Plaintiffs have been damaged.

226.    The Celebrex Defendants' conduct was done with conscious disregard for safety.

WHEREFORE, the Plaintiffs pray judgment in their favor and against the Celebrex Defendants in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XVII

## NEGLIGENT DESIGN -CELEBREX

227.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

228.    The Celebrex Defendants designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Celebrex (Celecoxib) which it knew would be used by Plaintiffs and others.

229.    At the time the Celebrex (Celecoxib) was manufactured and sold to Plaintiffs by the Celebrex Defendants, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, blood clots, and other illnesses which exceeded the benefits of the product, and for which other safer products were available.

230.     Alternatively, when the Celebrex (Celecoxib) product was manufactured and sold to the Plaintiffs by the Celebrex Defendants, the product was defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

231.     The Celebrex (Celecoxib) sold to Plaintiffs reached the Plaintiffs without substantial change. Plaintiffs were unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular events. Plaintiffs ingested the Celebrex (Celecoxib) without making any changes or alterations.

232.     In designing and manufacturing Celebrex (Celecoxib), The Celebrex Defendants failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

233.     As a direct and proximate result of the negligent design of the Celebrex (Celecoxib), Plaintiffs have been damaged.

234.     The Celebrex Defendants' conduct was done with conscious disregard for the safety of users of Celebrex (Celecoxib), including Plaintiffs.

235.     WHEREFORE, the Plaintiffs pray judgment in their favor and against Pharmacia, Searle, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XVIII

## NEGLIGENT FAILURE TO WARN -CELEBREX

236.     Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

237.    The Celebrex Defendants owed Plaintiffs a duty to warn of any dangerous defects or side effects; a duty to assure its product did not cause users unreasonable and dangerous risks, reactions, side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Celebrex (Celecoxib) substantial dangers.

238.    The Celebrex Defendants breached its duty of reasonable care to Plaintiffs in that the Celebrex Defendants failed to:

      a.  Conduct sufficient testing which, if properly performed, would have shown that Celebrex (Celecoxib) had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

      b.  Include adequate warnings with the Celebrex (Celecoxib) products that would alert users to the potential risks and serious side effects the drugs; and/or

      c.  Warn the Plaintiffs that use of Celebrex (Celecoxib) carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

      d.  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Celebrex (Celecoxib); and/or

      e.  Provide Plaintiffs with other appropriate warnings.

239.    The Celebrex Defendants should have known that Celebrex (Celecoxib) caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. The Celebrex Defendants nevertheless advertised, marketed and promoted its product knowing there were safer methods and products for pain control.

240.    As a direct and proximate result of the Celebrex Defendants negligence and breaches of its duty of reasonable care, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Searle, Pharmacia, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs

herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XIX

## FRAUDULENT CONCEALMENT - CELEBREX

241.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

242.    The Celebrex Defendants had actual knowledge of the cardiothrombotic cardiovascular events effects of Celebrex (Celecoxib). Despite having knowledge of the cardiothrombotic cardiovascular events effects of Celebrex (Celecoxib), the Celebrex Defendants actively concealed and omitted to disclose those effects when marketing Celebrex (Celecoxib) to doctors, health care providers, and to the general public through direct advertisements.

243.    At the time these omissions were made, the Celebrex Defendants had knowledge of the substantial and significant cardiothrombotic cardiovascular events effects of Celebrex (Celecoxib).

244.    The Celebrex Defendants omitted to inform Plaintiffs of the true cardiothrombotic cardiovascular events and other adverse health effects of Celebrex (Celecoxib).  The Celebrex Defendants further downplayed the results of various studies showing the cardiothrombotic cardiovascular events effects; it withheld adverse reports or gave incorrect information about the reports it received about the side effects of Celebrex (Celecoxib) such as heart attacks and thrombotic cardiovascular events. It further instructed and had a training manual for their sales force to dodge and mislead doctors when they asked questions about the cardiothrombotic cardiovascular events effects of Celebrex (Celecoxib).

245.    The Celebrex Defendants failure to disclose material facts constituted fraudulent concealment. The Celebrex Defendants sanctioned approved and/or participated in the failure to disclose.

246.    The Celebrex Defendants had a duty to speak because it had superior knowledge regarding the adverse health effects of Celebrex (Celecoxib) as set forth herein.

247.    The information not disclosed by the Celebrex Defendants was unavailable to Plaintiffs and/or their treating health care professionals. The Celebrex Defendants knew the information was unavailable yet approved and participated in instructing its agents, servants and employees to not disclose the information in order to promote the sales of Celebrex (Celecoxib) over other Cox 2 inhibitors as well as any non-steroidal anti-inflammatory such as Ibuprofen, Naproxen, and combined Cox 1 and Cox 2 inhibitors such as Mobic.

248.    Plaintiffs were diligent in attempting to seek the information by consulting with their physicians.

249.    The information not disclosed by the Celebrex Defendants was not within the reasonable reach of Plaintiffs and/or their treating physicians in the exercise of reasonable care.

250.    The non-disclosed information was material, The Celebrex Defendants knew it was not disclosing complete information and intended that Plaintiffs and/or their treating physicians act upon the non-disclosed information in the manner reasonable contemplated.

251.    Plaintiffs and/or their treating physician were ignorant as to the undisclosed information and had a right to rely on full disclosure.

252.    If Plaintiffs and/or their treating physicians had known the complete information, they would not have prescribed and/or Plaintiffs would not have taken Celebrex (Celecoxib) as evidenced by the Celebrex Defendants being required to include a black label warning.

253.    The Celebrex Defendants' non-disclosure of information was outrageous due to their evil motive and reckless indifference to the rights of Plaintiffs, justifying and award of punitive damages.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Searle, Pharmacia, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for punitive damages; for attorneys fees and  for such other and further relief as this Court deems just and proper.

## COUNT XX

## COMMON LAW FRAUD -CELEBREX

254.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

255.    The Celebrex Defendants, at all relevant times, made false representations and omissions to Plaintiffs and other members of the public, including but not limited to, that Celebrex (Celecoxib) was safe, had been adequately tested to determine safety, and did not present life-threatening dangers.

256.    These representations and omissions, as set forth in the above paragraphs, were false.  The true facts were that Celebrex (Celecoxib) was not safe, had not been adequately tested, and had dangerous and life-threatening side effects. When the Celebrex Defendants made the representations, it knew them to be false, and said representations were made by the Celebrex Defendants with the intent to deceive Plaintiffs and/or their prescribing physicians and with the intent to induce Plaintiffs to use the Celebrex (Celecoxib) manufactured by the Celebrex Defendants.

257.    Plaintiffs and/or their physicians reasonably relying upon false representations and omissions, Plaintiffs' physicians prescribed Celebrex (Celecoxib); Plaintiffs used Celebrex (Celecoxib).  Plaintiffs would not have done so if they had known the true facts.  In using Celebrex (Celecoxib), Plaintiffs exercised ordinary care.

258.    As a direct and proximate result of the aforesaid fraudulent conduct, the Celebrex Defendants caused Plaintiffs to suffer the damages and injuries herein alleged.

259.    The Celebrex Defendants' conduct was outrageous due to its evil motive or reckless indifference to the rights of Plaintiffs, justifying an award of punitive damages.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pharmacia, Searle, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for punitive damages; for attorneys fees and  for such other and further relief as this Court deems just and proper.

## COUNT XXI

## BREACH OF IMPLIED WARRANTY - CELEBREX

260.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

261.    When the Celebrex Defendants placed the Celebrex (Celecoxib) into the stream of commerce, the Celebrex Defendants knew of the use for which the supplement was intended and impliedly warranted to consumers, including Plaintiffs, that the use of Celebrex (Celecoxib) was a safe and acceptable means of relieving pain and impliedly warranted that the product was of merchantable quality and safe for its intended use.

262.    Plaintiffs relied upon the Celebrex Defendants and its judgment when they purchased and utilized Celebrex (Celecoxib).

263.     The Celebrex (Celecoxib) was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and incapable of satisfying the ordinary purpose for which it was intended, and because it caused serious injury to Plaintiffs.

264.     As a direct and proximate result of the dangerous and defective condition of the Celebrex (Celecoxib) Plaintiffs suffered complete thrombotic cardiovascular events, and they incurred economic damages in the form of medical expense.

265.     Plaintiffs are entitled to recover from the Celebrex Defendants for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, and loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pharmacia, Searle, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXII

## BREACH OF EXPRESS WARRANTY-CELEBREX

266.     Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

267.     At all relevant times, the Celebrex Defendants expressly warranted to Plaintiffs by statements made by the Celebrex Defendants or their authorized agents, orally or in written publications, package labels, and/or inserts, that the Celebrex (Celecoxib) was safe, effective, fit, and proper for its intended use. The express warranties include, but were not limited to:

268.     Celebrex (Celecoxib) is used in adults for:

a.   relief of the signs and symptoms of osteoarthritis;

b.   relief of the signs and symptoms of rheumatoid arthritis in adults;

c.   management of short-term pain;

d.   for the management of acute pain in adults;

e.   for the treatment of primary dysmenorrheal; and,

f.   to reduce the number of adenomatous colorectal polyps in familial adenomatous polyposis (FAP), as an adjunct to usual care.

269.   In utilizing Celebrex (Celecoxib), Plaintiffs relied upon the skill, judgment, representations, and express warranties of the Celebrex Defendants.

270.   The express warranties and representations made by the Celebrex Defendants were false in that Celebrex (Celecoxib) was not safe and was not fit for the use for which it was intended.

271.   As a direct and proximate result of the dangerous and defective condition of Celebrex (Celecoxib), Plaintiffs suffered complete thrombotic cardiovascular events, and they incurred economic damages in the form of medical expense.

272.   Plaintiffs are entitled to recover from the Celebrex Defendants for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, and loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pharmacia, Searle, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXIII

## NEGLIGENT MISREPRESENTATION - CELEBREX

273.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

274.    At all relevant times, the Celebrex Defendants knew, or should have known, that there were dangerous side effects resulting from the ingestion of Celebrex (Celecoxib).

275.    The Celebrex Defendants knew or reasonably should have known that consumers such as Plaintiffs would not have known about the increased risk of thrombotic cardiovascular events associated with the ingestion of Celebrex (Celecoxib).

276.    The Celebrex Defendants armed with the knowledge stated in the preceding two paragraphs, preceded with the design, production, manufacture, promotion, advertising, and sale of Celebrex (Celecoxib) without adequate warning of the side effects and dangerous risks to the consuming public including Plaintiffs.

277.    The Celebrex Defendants negligently represented to Plaintiffs the safety and effectiveness of Celebrex (Celecoxib) and concealed material information, including adverse information regarding the safety and effectiveness of Celebrex (Celecoxib). The misrepresentations and/or material omissions made by or perpetuated by the Celebrex Defendants are as follows, the Celebrex Defendants failed to:

  a.  Conduct sufficient testing which, if properly performed, would have shown that Celebrex (Celecoxib) had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

  b.  Include adequate warnings with the Celebrex (Celecoxib) products that would alert users to the potential risks and serious side effects the drugs; and/or

  c.  Warn the Plaintiffs that use of Celebrex (Celecoxib) carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

d.   Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Celebrex (Celecoxib); and/or

e.   Provide Plaintiffs with other appropriate warnings.

278.   The Celebrex Defendants made the misrepresentations and omissions with the intent for Plaintiffs the consuming public to rely upon such information of the absence of such information in selection Celebrex (Celecoxib) as a treatment for pain relief.

279.   Plaintiffs justifiably relied on and/or were induced by the misrepresentations and/or active concealment by the Celebrex Defendants and they relied upon the absence of safety information which the Celebrex Defendants suppressed, concealed, or failed to disclose all Plaintiffs' detriment.

280.   As a direct and proximate result of the dangerous and defective condition of Celebrex (Celecoxib) Plaintiffs suffered complete thrombotic cardiovascular events, and they incurred economic damages in the form of medical expense.

281.   Plaintiffs are entitled to recover from The Celebrex Defendants for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, and loss of the capacity to enjoy life, lost past and future income and occurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Searle, Pharmacia, Monsanto and Pfizer in a sum in excess of the jurisdictional requirement of this court;  for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## **BACKGROUND-BEXTRA**

282.   Bextra (Valdecoxib) is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Pfizer did manufacture, design, package,

market and distribute this drug. Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Pfizer aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Pfizer did this to increase sales and profits.

283.     At all times relevant hereto, Pfizer actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Pfizer's conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiffs' individual rights, and hence punitive damages are appropriate.

284.     This Complaint seeks redress for damages sustained by Plaintiffs, resulting from Plaintiffs' use of Bextra (Valdecoxib), manufactured and sold by Pfizer.

285.     Plaintiffs' thrombotic cardiovascular events and/or Stevens Johnson Syndrome were caused or significantly contributed to be caused by use of Bextra (Valdecoxib).

286.     The damages sought herein are the direct and proximate result of Pfizer's wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valdecoxib).

287.     At all times relevant hereto, Pfizer was engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing,

marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valdecoxib) throughout the United States.

288.    Had Pfizer properly disclosed the risks associated with using Bextra (Valdecoxib), Plaintiffs would not have taken it for treatment of pain associated with injury.

289.    Plaintiffs did not know of the potential connection between the use of Bextra (Valdecoxib) and his injury until after the FDA issued its recommendation, on April 7, 2005, Pfizer be required to withdraw Bextra (Valdecoxib) from the market.

## COUNT XXIV

## STRICT PRODUCTS LIABILITY/ DEFECTIVE DESIGN -BEXTRA

290.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

291.    Pfizer designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Bextra (Valdecoxib) which it knew would be used by Plaintiffs and others.

292.    At the time Bextra (Valdecoxib)  was manufactured and sold to Plaintiffs by Pfizer, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, thrombotic cardiovascular events, and other illnesses which exceeded the benefits of the products, and for which other safer products were available. This defective condition made the product unreasonably dangerous when put to a reasonably anticipated use as treatment for pain relief, which was the use for which Bextra (Valdecoxib) was advertised.

293.    Alternatively, when the Bextra (Valdecoxib) products were manufactured and sold to Plaintiffs by Pfizer, the products were defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

294.    Plaintiffs used Bextra (Valdecoxib) in a manner reasonably anticipated.

295.    The Bextra (Valdecoxib) sold to the Plaintiffs reached the Plaintiffs without substantial change. Plaintiffs were unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular events requiring hospitalization. The Plaintiffs ingested the Bextra (Valdecoxib) without making any changes or alterations.

296.    As a direct and proximate result of the defective and dangerous design of the Bextra (Valdecoxib), Plaintiffs have been damaged.

297.    Pfizer's conduct was done with conscious disregard for the safety of users of Bextra (Valdecoxib), including Plaintiffs.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXV

## STRICT PRODUCTS LIABILITY/FAILURE TO WARN -BEXTRA

298.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

299.    The Bextra (Valdecoxib) manufactured, supplied, and sold by Pfizer was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Bextra (Valdecoxib), and the comparative severity and duration of the adverse effects. The warnings given by Pfizer did not accurately reflect the symptoms, type, scope, or severity of the side effects.

300.    The Bextra (Valdecoxib) manufactured, supplied, and sold by Pfizer was an unreasonably dangerous defective product which posed unacceptable risks to human health when put to a reasonably anticipated use by the Plaintiffs that was without knowledge of its dangerous characteristics.

301.    Pfizer failed to perform adequate testing and study Bextra (Valdecoxib) prior to marketing it or properly analyze and warn based. Such adequate testing, study or analysis would have shown that Bextra (Valdecoxib) possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Bextra (Valdecoxib).

302.    Pfizer also failed to act properly on adverse event reports it received about Bextra (Valdecoxib), and failed to properly study Bextra (Valdecoxib)'s pre-market as well as post market.

303.    Pfizer also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

304.    Pfizer failed to give adequate post-marketing warnings or instructions for the use of Bextra (Valdecoxib) because after Pfizer knew or should have know of the risk of injury from Bextra (Valdecoxib) use, Pfizer failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

305.    Plaintiffs used Bextra (Valdecoxib) in a manner reasonably anticipated.

306.    As a direct and proximate result of Pfizer selling Bextra (Valdecoxib) without adequate warnings, as well as the other conduct mentioned in this Count, Plaintiffs have been damaged.

307.    Pfizer's conduct was done with conscious disregard for safety.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXVI

## NEGLIGENT DESIGN -BEXTRA

308.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

309.    Pfizer designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Bextra (Valdecoxib) which it knew would be used by Plaintiffs and others.

310.    At the time the Bextra (Valdecoxib) was manufactured and sold to Plaintiffs by Pfizer, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, blood clots, and other illnesses which exceeded the benefits of the product, and for which other safer products were available.

311.    Alternatively, when the Bextra (Valdecoxib) product was manufactured and sold to the Plaintiffs by Pfizer, the product was defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

312.    The Bextra (Valdecoxib) sold to Plaintiffs reached the Plaintiffs without substantial change. Plaintiffs were unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular events. Plaintiffs ingested the Bextra (Valdecoxib) without making any changes or alterations.

313.    In designing and manufacturing Bextra (Valdecoxib), Pfizer failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

314.    As a direct and proximate result of the negligent design of the Bextra (Valdecoxib), Plaintiffs have been damaged.

315.    Pfizer conduct was done with conscious disregard for the safety of users of Bextra (Valdecoxib), including Plaintiffs.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXVII

## NEGLIGENT FAILURE TO WARN -BEXTRA

316.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

317.    Pfizer owed Plaintiffs a duty to warn of any dangerous defects or side effects; a duty to assure its product did not cause users unreasonable and dangerous risks, reactions, side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Bextra (Valdecoxib) substantial dangers.

318.    Pfizer breached its duty of reasonable care to Plaintiffs in that Pfizer failed to:

a.   Conduct sufficient testing which, if properly performed, would have shown that Bextra (Valdecoxib) had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

b. Include adequate warnings with the Bextra (Valdecoxib) products that would alert users to the potential risks and serious side effects the drugs; and/or

c. Warn the Plaintiffs that use of Bextra (Valdecoxib) carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects; and/or

d. Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Bextra (Valdecoxib); and/or

e. Provide Plaintiffs with other appropriate warnings.

319.     Pfizer should have known that Bextra (Valdecoxib) caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. Pfizer nevertheless advertised, marketed and promoted its product knowing there were safer methods and products for pain control.

320.     As a direct and proximate result of Pfizer's negligence and breach of its duty of reasonable care, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXVIII

## FRAUDULENT CONCEALMENT -BEXTRA

321.     Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

322.     Pfizer had actual knowledge of the cardiothrombotic cardiovascular events effects of Bextra (Valdecoxib). Despite having knowledge of the cardiothrombotic cardiovascular events effects of Bextra (Valdecoxib), Pfizer actively concealed and omitted to disclose those

effects when marketing Bextra (Valdecoxib) to doctors, health care providers, and to the general public through direct advertisements.

323.    At the time these omissions were made, Pfizer had knowledge of the substantial and significant cardiothrombotic cardiovascular events effects of Bextra (Valdecoxib).

324.    Pfizer omitted to inform Plaintiffs of the true cardiothrombotic cardiovascular events and other adverse health effects of Bextra (Valdecoxib).  Pfizer further downplayed the results of various studies showing the cardiothrombotic cardiovascular events effects; it withheld adverse reports or gave incorrect information about the reports it received about the side effects of Bextra (Valdecoxib) such as heart attacks and thrombotic cardiovascular events. It further instructed and had a training manual for their sales force to dodge and mislead doctors when they asked questions about the cardiothrombotic cardiovascular events effects of Bextra (Valdecoxib).

325.    Pfizer's failure to disclose material facts constituted fraudulent concealment. Pfizer sanctioned approved and/or participated in the failure to disclose.

326.    Pfizer had a duty to speak because it had superior knowledge regarding the adverse health effects of Bextra (Valdecoxib) as set forth herein.

327.    The information not disclosed by Pfizer was unavailable to Plaintiffs and/or their treating health care professionals. Pfizer knew the information was unavailable yet approved and participated in instructing its agents, servants and employees to not disclose the information in order to promote the sales of Bextra (Valdecoxib) over other Cox 2 inhibitors as well as any non-steroidal anti-inflammatory such as Ibuprofen, Naproxen, and combined Cox 1 and Cox 2 inhibitors such as Mobic.

328.    Plaintiffs were diligent in attempting to seek the information by consulting with their physicians.

329.     The information not disclosed by Pfizer was not within the reasonable reach of Plaintiffs and/or their treating physicians in the exercise of reasonable care.

330.     The non-disclosed information was material, Pfizer knew it was not disclosing complete information and intended that Plaintiffs and/or their treating physicians act upon the non-disclosed information in the manner reasonable contemplated.

331.     Plaintiffs and/or their treating physician were ignorant as to the undisclosed information and had a right to rely on full disclosure.

332.     If Plaintiffs and/or their treating physicians had known the complete information, they would not have prescribed and/or Plaintiffs would not have taken Bextra (Valdecoxib) as evidenced by Pfizer being required to include a black label warning.

333.     Pfizer's non-disclosure of information was outrageous due to their evil motive and reckless indifference to the rights of Plaintiffs, justifying and award of punitive damages.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for punitive damages; for attorneys fees and  for such other and further relief as this Court deems just and proper.

## COUNT XXIX

## COMMON LAW FRAUD -BEXTRA

334.     Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

335.     Pfizer, at all relevant times, made false representations and omissions to Plaintiffs and other members of the public, including but not limited to, that Bextra (Valdecoxib) was safe, had been adequately tested to determine safety, and did not present life-threatening dangers.

336.     These representations and omissions, as set forth in the above paragraphs, were false.  The true facts were that Bextra (Valdecoxib) was not safe, had not been adequately tested, and had dangerous and life-threatening side effects. When Pfizer made the representations, it knew them to be false, and said representations were made by Pfizer with the intent to deceive Plaintiffs and/or their prescribing physicians and with the intent to induce Plaintiffs to use the Bextra (Valdecoxib) manufactured by Pfizer.

337.     Plaintiffs and/or their physicians reasonably relying upon false representations and omissions, Plaintiffs' physicians prescribed Bextra (Valdecoxib); Plaintiffs used Bextra (Valdecoxib).  Plaintiffs would not have done so if they had known the true facts.  In using Bextra (Valdecoxib), Plaintiffs exercised ordinary care.

338.     As a direct and proximate result of the aforesaid fraudulent conduct, Pfizer caused Plaintiffs to suffer the damages and injuries herein alleged.

339.     Pfizer's conduct was outrageous due to its evil motive or reckless indifference to the rights of Plaintiffs, justifying an award of punitive damages.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for punitive damages; for attorneys fees and  for such other and further relief as this Court deems just and proper.

## COUNT XXV

## BREACH OF IMPLIED WARRANTY-BEXTRA

340.     Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

341.     When Pfizer placed the Bextra (Valdecoxib) into the stream of commerce, Pfizer knew of the use for which the supplement was intended and impliedly warranted to consumers including Plaintiffs that the use of Bextra (Valdecoxib) was a safe and acceptable means of relieving pain and impliedly warranted that the product was of merchantable quality and safe for its intended use.

342.     Plaintiffs relied upon Pfizer and its judgment when his purchased and utilized Bextra (Valdecoxib).

343.     The Bextra (Valdecoxib) was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and incapable of satisfying the ordinary purpose for which it was intended, and because it caused serious injury to Plaintiffs.

344.     As a direct and proximate result of the dangerous and defective condition of the Bextra (Valdecoxib) Plaintiffs suffered complete thrombotic cardiovascular events, and they incurred economic damages in the form of medical expense.

345.     Plaintiffs are entitled to recover from Pfizer for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXX

## BREACH OF EXPRESS WARRANTY-BEXTRA

346.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

347.    At all relevant times, Pfizer expressly warranted to Plaintiffs by statements made by Pfizer or their authorized agents, orally or in written publications, package labels, and/or inserts, that the Bextra (Valdecoxib) was safe, effective, fit, and proper for its intended use. The express warranties include, but were not limited to:

348.    Bextra (Valdecoxib) is used in adults for:

    a.  for relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, and

    b.  for the treatment of primary dysmenorrhea.

349.    In utilizing Bextra (Valdecoxib), Plaintiffs relied upon the skill, judgment, representations, and express warranties of Pfizer.

350.    The express warranties and representations made by Pfizer were false in that Bextra (Valdecoxib) was not safe and was not fit for the use for which it was intended.

351.    As a direct and proximate result of the dangerous and defective condition of Bextra (Valdecoxib), Plaintiffs suffered complete thrombotic cardiovascular events, and they incurred economic damages in the form of medical expense.

352.    Plaintiffs are entitled to recover from Pfizer for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; for such other and

further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXXI

## NEGLIGENT MISREPRESENTATION – BEXTRA

353.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

354.    At all relevant times, Pfizer knew, or should have known, that there were dangerous side effects resulting from the ingestion of Bextra (Valdecoxib).

355.    Pfizer knew or reasonably should have known that consumers such as Plaintiffs would not have known about the increased risk of thrombotic cardiovascular events associated with the ingestion of Bextra (Valdecoxib).

356.    Pfizer armed with the knowledge stated in the preceding two paragraphs, preceded with the design, production, manufacture, promotion, advertising, and sale of Bextra (Valdecoxib) without adequate warning of the side effects and dangerous risks to the consuming public including Plaintiffs.

357.    Pfizer negligently represented Plaintiffs the safety and effectiveness of Bextra (Valdecoxib) and concealed material information, including adverse information regarding the safety and effectiveness of Bextra (Valdecoxib). The misrepresentations and/or material omissions made by or perpetuated by Pfizer are as follows, Pfizer failed to:

> a.  Conduct sufficient testing which, if properly performed, would have shown that Bextra (Valdecoxib) had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or
>
> b.  Include adequate warnings with the Bextra (Valdecoxib) products that would alert users to the potential risks and serious side effects the drugs; and/or

    c.   Warn the Plaintiffs that use of Bextra (Valdecoxib) carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

    d.   Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Bextra (Valdecoxib); and/or

    e.   Provide Plaintiffs with other appropriate warnings.

358.   Pfizer made the misrepresentations and omissions with the intent for Plaintiffs the consuming public to rely upon such information of the absence of such information in selection Bextra (Valdecoxib) as a treatment for pain relief.

359.   Plaintiffs justifiably relied on and/or were induced by the misrepresentations and/or active concealment by Pfizer and they relied upon the absence of safety information which Pfizer suppressed, concealed, or failed to disclose all Plaintiffs' detriment.

360.   As a direct and proximate result of the dangerous and defective condition of Bextra (Valdecoxib) Plaintiffs suffered complete thrombotic cardiovascular events, and they incurred economic damages in the form of medical expense.

361.   Plaintiffs are entitled to recover from Pfizer for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and occurred expense.

WHEREFORE, the Plaintiffs pray judgment in their favor and against Pfizer in a sum in excess of the jurisdictional requirement of this court;  for costs herein incurred;  for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants,

Merck, Searle, Pharmacia, Monsanto and Pfizer, and award relief as follows:

A. Compensatory damages in an amount supported by the evidence at trial;

B. An award of attorney's fees, pre-judgment and post-judgment interest, and costs of suit, as provided by law;

C. Punitive damages, in an amount to be determined at trial;

D. Trial by jurors on all issues so triable; and,

E. Such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

BROWN & CROUPPEN, P.C

SETH SHARROCK WEBB, #51236
JOHN J. DRISCOLL, # 54729
720 Olive Street
Suite 1800
St. Louis, Missouri  63101
314-421-0216
314-421-0359 facsimile

**ATTORNEYS FOR PLAINTIFFS**