**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: VIOXX** | * | **MDL Docket No. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | **JUDGE FALLON** |
| **This document relates to Case No. 06-0485** | * | |
| **GERALD D. BARNETT,** | * | **MAGISTRATE JUDGE KNOWLES** |
| Plaintiff, | * | |
| v. | * | |
| **MERCK & CO., INC.,** | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * * * * * * * | * | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF JERRY AVORN, M.D.**

**(EXPERT CHALLENGE NO. 2)**

In opposition to Merck's motion to preclude Dr. Jerry Avorn from testifying on matters outside his area of expertise and about which he has no personal knowledge, plaintiff spends pages and pages detailing Dr. Avorn's expertise in pharmacoepidemiology – which has absolutely no import for purposes of Merck's motion. Merck agrees that Dr. Avorn is qualified to testify about the alleged cardiovascular risks associated with Vioxx and other COX-2 inhibitors. It thus does not matter that Dr. Avorn is a "widely published" professor of pharmacoepidemiology, "one of the world's leading authorities" in his field, or "exceptionally well-qualified to testify regarding the risks of [NSAIDs]." (Pl.'s Opp'n at 2-3; Pl.'s Suppl.

Opp'n at 7; *see also* Pl.'s Opp'n at 4-18 ("The Qualifications of Jerome Avorn, M.D.").) These qualifications are not relevant to the opinions targeted in Merck's motion.

Dr. Avorn's expertise in pharmacoepidemiology notwithstanding, he is not qualified to provide subjective commentary – under the guise of "expert" testimony – on the subjects identified in Merck's motion: (i) the Vioxx "story"; (ii) what Merck knew or should have known about the risks allegedly associated with Vioxx; (iii) Merck's alleged suppression of information about Vioxx; and (iv) regulatory issues, including Merck's negotiations with the FDA over Vioxx labeling. Plaintiff offers two arguments in response. First, plaintiff asserts that much of Dr. Avorn's testimony is "fact" testimony to which the *Daubert* requirements do not apply.[1] Not so. A close look at the designated portions of his testimony reveals that much of it is purported expert testimony – on Merck's marketing, conduct, and state of knowledge – based on internal documents about which Dr. Avorn had no personal knowledge prior to this litigation. That Dr. Avorn had interactions with Merck while Vioxx was on the market does not transform all of his opinions about the underlying facts of this case into admissible "fact" testimony.

Second, plaintiff attempts to expand the definition of "pharmacoepidemiology" to cover all of Dr. Avorn's proffered testimony, including his opinions on issues such "the fair and accurate communication of risks and benefits to medical providers and to consumers." (Pl.'s Suppl. Opp'n at 5.) But, by plaintiff's own admission – and, indeed, according to Dr. Avorn himself – pharmacoepidemiology is the study of the "beneficial and adverse effects of drugs." (Pl.'s Supp. Opp'n at 5-6.) It has nothing to do with the communication of those effects. It thus

---

[1] According to plaintiff, "Dr. Avorn's 'fact' testimony starts at page 108 of his trial preservation deposition . . . and continues through page 256. . . . The only portion of Dr. Avorn's testimony that implicates *Daubert* is his expert testimony, which begins at page 256 of his trial deposition." (Pl.'s Suppl. Opp'n at 2.) As explained above, this is a simplistic and inaccurate characterization of Dr. Avorn's trial preservation testimony.

does not follow that, simply because Dr. Avorn is a qualified pharmacoepidemiologist, he is also qualified to testify about "the accuracy (or inaccuracy) of Merck's *description* of the risks and benefits of Vioxx." (*Id.* at 9 (emphasis in original).)

Accordingly, the Court should exclude Dr. Avorn's opinions about the matters addressed in Merck's underlying motion. These are issues that are far afield of Dr. Avorn's purported area of expertise and not the proper subject of expert testimony in any case. The Court should also exclude Dr. Avorn's opinions on Protocol 078 and 091 – as explained in Merck's supplemental brief in support of its motion – since that testimony is based on nothing more than the opinions of two of plaintiff's other experts, Professor Richard Kronmal and Dr. Wayne Ray.

## I. THE COURT SHOULD EXCLUDE DR. AVORN'S OPINIONS ON ISSUES THAT HAVE NO CONNECTION TO HIS AREA OF EXPERTISE, PHARMACOEPIDEMIOLOGY.

For a number of reasons, the Court should preclude Dr. Avorn from providing opinions on what Dr. Avorn's expert report calls "the methods by which Merck evaluated and managed [the issue of the alleged risks associated with Vioxx] throughout the development and marketing of Vioxx." (Avorn Rpt. at 2.) Dr. Avorn is not qualified to opine on this subject. And the testimony goes to Merck's state of mind and intent, which plaintiff concedes is an improper subject for expert testimony. (*See* Pl.'s Suppl. Opp'n at 14.) Moreover, the testimony is based on Dr. Avorn's review and interpretation of internal Merck documents and the reasonableness of Merck's conduct – which is the proper subject of lawyer's argument, not expert testimony, and must be left to the jury's determination.

Indeed, Courts routinely preclude experts from proffering testimony of the kind that is at issue in this motion. In fact, of the four subjects at issue here – (i) the Vioxx "story"; (ii) what Merck knew or should have known about the risks allegedly associated with Vioxx; (iii) Merck's alleged suppression of information about Vioxx; and (iv) regulatory issues – Dr. Avorn's

testimony on *each of the last three* has been excluded by other federal courts.[2] *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 549-50 (S.D.N.Y. 2004) (excluding Dr. Avorn's testimony on the accuracy of a pharmaceutical company's disclosures to the FDA and finding Dr. Avorn "not qualified to render opinions describing or interpreting FDA regulations, or commenting on [the defendant's] adherence to those regulations"); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *29-30, 36 (E.D. Pa. June 20, 2000) (excluding Dr. Avorn's opinions on the "corporate intent" of the defendant and finding Dr. Avorn not qualified "to speak as experts in the field of the requirements of the federal regulations regarding labeling and warnings for FDA approved drugs"). And the first subject is so often excluded as to be beyond controversy. *E.g.*, *In re Rezulin*, 309 F. Supp. 2d at 551 (excluding expert's "historical commentary of what happened").

For these reasons, the Court should exclude Dr. Avorn's testimony on matters about which he has neither expertise nor personal knowledge.

### A. Dr. Avorn's Recounting Of The Vioxx "Story" Is Improper Expert Testimony That Must Be Excluded.

Plaintiff attempts to recast Dr. Avorn's "spin" on the facts of this case as "Dr. Avorn's factual knowledge with respect to the scientific testing and marketing of Vioxx." (Pl.'s Opp'n at 2; *see also* Pl.'s Suppl. Opp'n at 2.) But the truth remains that a great deal of Dr. Avorn's testimony is nothing more than his own subjective "narrative of the case." *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551. This is a narrative that, as the *In re Rezulin* court noted, "does no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular

[2] In light of these *Daubert* rulings excluding Dr. Avorn's testimony on the very same subjects at issue here, it is curious that plaintiff insists that Merck's motion is "not a proper *Daubert* challenge at all." (Pl.'s Opp'n at 10.)

interpretation of [Merck's] conduct." *Id.* (citation omitted) (excluding expert's "historical commentary of what happened"). Moreover, as Dr. Avorn admitted at his discovery deposition, he has no personal knowledge of the facts that make up the Vioxx "story":

> Q: Am I right, sir, that you don't have any personal knowledge of the facts described in [internal Merck documents]; you're just relying on those documents, true?
>
> A: Correct.

(*See, e.g.*, June 16, 2006 Deposition of Jerry Avorn, M.D. ("6/16/06 Avorn Dep.") at 453:12-23, attached hereto as Ex. A.) Nor did Dr. Avorn have any personal knowledge about these internal Merck documents before they were provided to him by plaintiff's counsel. (*See, e.g.*, June 30, 2006 Deposition of Jerry Avorn, M.D. ("6/30/06 Avorn Dep.") at 449:2-11, attached hereto as Ex. B.)[3] Further, as explained in Merck's underlying motion, it is for plaintiff's counsel to introduce the relevant facts into evidence, and for the jury to put these facts into context. *In re Rezulin*, 309 F. Supp. 2d at 551. Neither role is appropriately ceded to a retained expert such as Dr. Avorn.

The Court should accordingly exclude Dr. Avorn's commentary on the foundational facts of this case. It is inapposite that Dr. Avorn conducted research on the effects of Vioxx. (Pl.'s Opp'n at 21.) The bulk of Dr. Avorn's "expert" opinions on the facts surrounding the development, testing, approval, and marketing of Vioxx – which take up pages *two to twenty-one*

---

[3] On the issue of Dr. Avorn's reliance on these many documents, plaintiff mischaracterizes the ruling of the *In re Diet Drugs* court – indicating that the court "reject[ed] the manufacturer's so-called '*Daubert* challenge' on the use of documents," when in fact the MDL Court reserved ruling, noting that "[w]hether a particular document can be introduced through a witness as a basis for his expert opinion will, of course, be left to the trial judge in the transferor court." *In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at *27.

of Dr. Avorn's expert report – have nothing to do with his own study. These opinions are improper. The include Dr. Avorn's designated testimony about, among other things:

- *Merck's negotiations with the FDA over the post-VIGOR label.* (*See, e.g.*, June 29, 2006 Deposition of Jerry Avorn, M.D. ("6/29/06 Avorn Dep.") at 173:2-178:18, attached hereto as Ex. C.) Dr. Avorn admitted he has no personal knowledge about these negotiations, and that his testimony is based only on internal Merck documents shown to him by plaintiff's counsel. In spite of his lack of personal knowledge, he testified about "what [these documents] say" – clearly not the proper subject of expert testimony.[4]

- *Merck's "investigation of the potential of Vioxx to cause heart attacks and their management of that issue."* (*See, e.g.*, 6/29/06 Avorn Dep. at 302:9-303:15, 303:21-304:7, 304:13-309:17, 376:18-378:12.) Again, Dr. Avorn's testimony on this subject is based on internal documents, from both Merck and the FDA. The stated purpose of his testimony is to ascertain "what was known" about the risks allegedly associated with Vioxx at various points in time. This is simply Dr. Avorn's commentary on documents about which he has no personal knowledge. Moreover, "what was known" is a matter the jury is perfectly capable of inferring for itself.

- *The FDA's understanding of the risks allegedly associated with Vioxx.* (*See, e.g.*, 6/29/06 Avorn Dep. at 353:11-356:24, 358:4-359:9.) Here, Dr. Avorn simply read portions of the Targum memo into the record. To the extent any of this information is relevant, plaintiff may offer the document itself into evidence. Expert testimony on the subject is both unnecessary and inappropriate.

Each of these subjects is beyond both Dr. Avorn's expertise and his personal knowledge. To permit testimony about these matters would only confuse and prolong the presentation of evidence at trial. FED. R. EVID. 403. Therefore, Dr. Avorn's testimony on the Vioxx "story" – which is nothing more than his improper "historical commentary of what happened," *In re Rezulin*, 309 F. Supp. 2d at 551 – must be excluded.

[4] Dr. Avorn further testified that he is "indignant" and "upset" about what's communicated in these documents – and that they "distort" the medical evidence. (6/29/06 Avorn Dep. at 176:24-178:2.) This is lawyer argument, pure and simple. To allow Dr. Avorn to so testify would be highly prejudicial to Merck and improper.

**B. The Court Should Exclude Dr. Avorn's Opinions On What Merck Knew Or Should Have Known About The Risks Allegedly Associated With Vioxx.**

As this Court has noted and as plaintiff now concedes, Merck's state of mind or intent is not a proper subject for expert testimony. *See Plunkett v. Merck & Co., Inc. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 595 (E.D. La. 2005) ("Lastly, regarding Merck's state of mind, Dr. Kapit may not testify as to what Merck was thinking."); *see also In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at *29-30 (ruling that Dr. Avorn lacked the requisite qualifications to opine on the "corporate intent" of the defendant and that such testimony was unreliable in any case). Further, as Dr. Avorn himself admits, he is not an expert on the "state of mind" of a pharmaceutical company and has no idea "what people believed or didn't believe." (June 15, 2006 Deposition of Jerry Avorn, M.D. ("6/15/06 Avorn Dep.") at 56:22-57:1; 279:6-15, attached hereto as Ex. D.) Nor is his testimony on what Merck should have known or done based on any reliable methodology – given that he admits that there are "no standards" by which once can measure the intent of a pharmaceutical company and no "statistical test for reasonable behavior."[5] (*Id.* at 59:13-60:12; 191:7-15 ("Q: What statistics have you applied to demonstrate that Merck's conduct concerning Vioxx was unreasonable? A: Well, it's not like there's a statistical test for reasonable behavior.").)

In light of these admissions, plaintiff again tries to move the ball – arguing that the testimony in question is not about "corporate intent" at all, but rather about "what was known or knowable at particular points in time and what a reasonable and prudent response to that

[5] Plaintiff's citation to the *Smith* case in support of Dr. Avorn's methodology is a red herring. (*See* Pl.'s Suppl. Opp'n at 18 (citing *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 701 (W.D.N.C. 2003).) The issue is not whether Dr. Avorn has reviewed the relevant documents in forming his opinions – which he may have done – but rather whether he has applied objective and identifiable standards in evaluating Merck's conduct – which, by his own admission, he has not.

knowledge would be." (Pl.'s Opp'n at 22-23.) But for Dr. Avorn to testify about what a "reasonable and prudent company" should have known (*see* Pl.'s Opp'n at 18) – especially when he admits there are no applicable standards – improperly invades the province of the jury. It is for the finder of fact to decide what is "reasonable," in light of the facts and arguments presented by counsel and the instructions given by the Court. Indeed, Dr. Avorn concedes that much of his testimony about what Merck "knew or should have known" is within the understanding of laypeople, and thus improper "expert" opinion testimony under Rule 702. (6/15/06 Avorn Dep. at 192:17-193:17 (admitting that, in assessing whether Merck's conduct was reasonable, there are issues "which any person with common sense can interpret" and "a juror could handle on their own").) For these reasons, Dr. Avorn's testimony on this subject should be excluded – as it was by the *In re Diet Drugs* court. *See In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at *29-30. It is not "fact" testimony, and plaintiff suggests. Rather, is based on what Dr. Avorn calls "smoking guns" – internal documents about which he has no personal knowledge – and, for the reasons stated above, does not qualify as expert testimony. (*See, e.g.*, 6/29/06 Avorn Dep. at 313:21-314:7, 315:2-318:8, 329:18-24, 331:19-332:16.)

**C. Testimony About Merck's Alleged Suppression Of Information Is Inadmissible.**

Nor does Dr. Avorn's testimony about the ways in which Merck communicated the risks allegedly associated with Vioxx qualify as "fact" testimony. Dr. Avorn opines that "Merck's conduct over the research program and analysis of its data and communication of those data to physicians, to patients, even to FDA, was inadequate in that it failed to truthfully represent what was known to Merck at the time about the risks of its drug in relation to the cardiovascular symptoms." (6/29/06 Avorn Dep. at 112:4-113:10.) Although he calls himself an "expert in the factors that go into physicians prescribing practices" (*id.* at 382:10-12), the fact is that Dr. Avorn

has no specific knowledge of what any of the individual physicians involved in this litigation knew about Vioxx, or what factors went into their decisions to prescribe the drug. (6/15/06 Avorn Dep. at 164:20-165:4 ("I can't get into the head of a given doctor that I've never met").) He also has not done any research on the subject. (6/16/06 Avorn Dep. at 758:13-759:7.) And he admitted that he does not know anything about any of the specific plaintiffs in the upcoming trials or what factors influenced their decisions to take Vioxx. (6/30/06 Avorn Dep. at 826:15-834:4.) In short, Dr. Avorn has no foundation for his opinions about whether "the information revealed about Vioxx'[s] risks and benefits to the medical community was scientifically incomplete and inaccurate." (Pl.'s Opp'n at 25.) Whether the information was "incomplete and inaccurate" in the abstract, his testimony is unmoored from the facts of this case and thus of minimal probative value. FED. R. EVID. 401. The Court should thus preclude Dr. Avorn from testifying about the general "means" by which a company conveys its message (6/29/06 Avorn Dep. at 382:24-384:10) as well as the specific ways in which Merck communicated with the public (*id.* at 423:1-424:15.) In particular, the Court should exclude all testimony about Merck's detailing of physicians and its sales representatives' training – matters about which Dr. Avorn has neither personal knowledge nor expertise. (*See, e.g.*, *id.* at 424:17-425:2, 425:21-427:9.)

Further, to the extent this testimony has any impact on the issues to be decided in this case, it "constitutes lay matter that the fact-finder can understand without the assistance of experts" and should be excluded on that ground. *See In re Rezulin*, 309 F. Supp. 2d at 549-50. Plaintiff will presumably present evidence at trial regarding the adequacy and accuracy of Merck's disclosure of Vioxx-related safety information. And the jury will be asked to determine whether Merck acted reasonably, in light of all of the information available at the time. As noted above, Dr. Avorn has conceded that, in assessing whether Merck's conduct was reasonable, there

are issues "which any person with common sense can interpret" and "a juror could handle on their own." (6/15/06 Avorn Dep." at 192:17-193:17.) This is precisely one of those issues. The jury is capable of deciding, based on the admissible evidence, whether Merck's disclosures were adequate. Expert testimony on the subject is unnecessary and should be excluded.

### D. Dr. Avorn Is Not Qualified To Opine On Merck's Negotiations With The FDA Over Vioxx Labeling And Promotion.

Finally, Dr. Avorn is not qualified to testify about regulatory issues. He has never been employed by the FDA and has never prepared or approved a pharmaceutical product's labeling. (6/15/06 Avorn Dep. at 326:23-327:2; 6/16/06 Avorn Dep. at 678:5-10.) Nor does he have any personal knowledge about Merck's labeling decisions concerning Vioxx. (*E.g.,* 6/16/06 Avorn Dep. at 696:8-18.) Other courts have precluded him from interpreting or explaining FDA regulations. *See In re Rezulin*, 309 F. Supp. 2d at 549 (finding Dr. Avorn "not qualified to render opinions describing or interpreting FDA regulations, or commenting on [the defendant's] adherence to those regulations"); *In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at *36 (finding that, although Dr. Avorn is "fully qualified" in his specialty, "that does not qualify [him] to speak as experts in the field of the requirements of the federal regulations regarding labeling and warnings for FDA approved drugs"). That he now considers himself an expert on the topic (Pl.'s Opp'n at 28-29) does not make him one.

In an attempt to shoehorn Dr. Avorn's regulatory testimony into an admissible form, plaintiff describes it as: "Dr. Avorn's opinions that the information provided by Merck to the FDA about Vioxx, and the format in which it was provided, were inadequate and misleading, and that Merck possessed important information regarding cardiovascular risk that it did not reveal in a complete and timely manner to the FDA, nor to prescribing physicians of Vioxx, nor to the consuming public at large." (Pl.'s Opp'n at 26.) If this is the case, the testimony should be

excluded for the same reasons Dr. Avorn's testimony about Merck's alleged suppression of data has no place at trial. As the *In re Rezulin* court explained, in excluding Dr. Avorn's testimony:

> To the extent that the challenged testimony relates, as plaintiffs contend, to the factual accuracy of [defendant's] clinical data submissions to the FDA, it constitutes lay matter that the fact-finder can understand without the assistance of experts, regardless of [how] much experience these witnesses have with clinical trials. Dr. Avorn's testimony illustrates the point. His view that [defendant] failed to disclose information to the FDA boils down to a contention that [defendant] "buried" certain lab results in an Appendix to the Rezulin NDA. This opinion does not implicate Dr. Avorn's expertise in pharmacoepidemiology. It is a simple inference drawn from his review of two documents – the primary Rezulin NDA and its Appendix – which, if admissible, plaintiffs' counsel may present directly to the fact-finder while arguing his or her view as to their significance. Expert testimony interpreting [defendant's] conduct in disclosing information to the FDA therefore will not assist the fact-finder in these cases.

*In re Rezulin*, 309 F. Supp. 2d at 549-50 (footnote omitted). So, too, in this case. This Court should thus prohibit Dr. Avorn from providing testimony interpreting FDA regulations, commenting on Merck's compliance with those regulations, or describing the facts surrounding Merck's interactions with the FDA.

## II THE COURT SHOULD PRECLUDE DR. AVORN FROM RELATING THE CONCLUSIONS OF DR. RAY AND PROFESSOR KRONMAL ABOUT THE ELEVATED RISK OF CARDIOVASCULAR EVENTS ASSOCIATED WITH VIOXX ALLEGEDLY SHOWN IN THE CLINICAL TRIALS INVOLVING PATIENTS WITH ALZHEIMER'S DISEASE.

For the reasons articulated in Merck's supplemental brief in support of its motion to exclude Dr. Avorn's testimony, the Court should exclude Dr. Avorn's testimony about Professor Kronmal's and Dr. Ray's analysis of the Alzheimer's data. Plaintiff makes no real argument in response – all but conceding the point – except to baldly assert that Dr. Avorn did more than just rely on these experts' analyses for his opinion. (Pl.'s Opp'n at 24 n.7 (citing Avorn Rpt. at 15-16.) But Dr. Avorn made it clear at his discovery deposition that he relies solely on Professor Kronmal's and Dr. Ray's reports for his opinion on this topic. (6/15/06 Avorn Dep. at 31:8-21;

6/16/06 Avorn Dep. at 454:10-455:4.) Plaintiff's assertions to the contrary do not prove otherwise.

## III. CONCLUSION.

For the reasons stated above and in Merck's underlying motion and supplemental brief, Merck respectfully requests that the Court exclude Dr. Avorn's testimony on: (i) the Vioxx "story"; (ii) what Merck knew or should have known about the risks allegedly associated with Vioxx; (iii) Merck's alleged suppression of information about Vioxx; (iv) regulatory issues, including Merck's negotiations with the FDA over Vioxx labeling; and (v) Professor Kronmal's and Dr. Ray's analysis of the Alzheimer's data.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax: 312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Phone: 202-434-5000
Fax: 202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck & Co., Inc. For Order Excluding Testimony of Jerry Avorn, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 17th day of July, 2006.

*/s/ Dorothy H. Wimberly*

Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANNL.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel