UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-04379 | * | |
| | * | MAGISTRATE JUDGE |
| ROBERT G. SMITH, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### OPPOSITION OF MERCK & CO., INC. ("MERCK") TO SCIENTIFIC EVIDENCE, INC.'S OBJECTIONS AND MOTION FOR PROTECTION FROM DISCOVERY SUBPOENA TO NON-PARTY SCIENTIFIC EVIDENCE

On June 22, 2006, Merck served Scientific Evidence, Inc. ("Scientific Evidence") with a subpoena requesting documents relating to communications between Scientific Evidence and one of plaintiff's experts, Lemuel A. Moye, M.D. The subpoena requested that the documents be produced within ten days, and no later than 10:00 a.m. on July 5, 2006. On July 5th, Scientific Evidence moved to quash Merck's subpoena, arguing: (i) the production deadline failed to take into account the Fourth of July holiday and thus was unreasonable; (ii) the subpoena seeks privileged documents; and (iii) the subpoena is overly burdensome.

In its motion, Scientific Evidence attempts to paint itself as nothing more than "one of the plaintiffs' consulting experts." (Scientific Evidence's Mot. at 1.) Scientific Evidence, however,

failed to support its motion with any *evidence*. It does not even provide a description in its brief of its relationship with Dr. Moye. The truth appears to be that Scientific Evidence is not a "consulting expert" separate and apart from plaintiff's "testifying expert" Dr. Moye. Scientific Evidence is essentially Dr. Moye's employer – having found Dr. Moye for plaintiff, retained Dr. Moye to provide expert testimony in this and other Vioxx-related litigation, and gathered and prepared the materials reviewed by Dr. Moye. Dr. Moye sends his bills to Scientific Evidence. It is in the company's capacity as Dr. Moye's employer that Merck seeks documents relevant to the communications between Scientific Evidence and Dr. Moye, in order to prepare its defense.

Dr. Moye has been less than clear in his prior testimony about the extent of his prior work for plaintiffs in other pharmaceutical cases, and the compensation he received for that work. (*E.g.*, June 2, 2006 Deposition of Lemuel A. Moye ("Moye Dep.") at 387:6-391:14, attached hereto as Ex. A.) The documents requested by Merck in the subpoena issued to Scientific Evidence are critical if Merck – and, ultimately, the trier of fact – is to have a full understanding of Dr. Moye's past experiences and potential biases.

The Court should deny Scientific Evidence's motion to quash for the following reasons:

- *Scientific Evidence has not met its burden of proof.* As the moving party, Scientific Evidence has the burden of proof to demonstrate that compliance with the subpoena would be "unreasonable and oppressive" or invade privilege. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). But its motion is unsupported by any evidence.

- *The timing issue is moot.* Scientific Evidence now has had a substantial period of time to gather and produce documents responding to the subpoena. The Court should order production by July 24th.

- *The claim of privilege is baseless.* Scientific Evidence bases its claim of privilege on the mistaken premise that "communications between an attorney and his retained (testifying) expert are not discoverable." (Scientific Evidence's Mot. at 4.) From this erroneous premise, Scientific Evidence concludes that "communications between qualifying non-attorney non-testifying consultants and the party's retained testifying experts are not discoverable." (*Id.* at 5.) But "the 1993 amendments to Rule 26 of the

Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents in preparing his report" and are not privileged. *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001). *See also S. Scrap Material Co. v. Fleming*, No. 01-2554 Section "M"(3), 2003 U.S. Dist. LEXIS 10815, at *73 and n.55 (E.D. La. June 18, 2003) ("the plain language of Rule 26(a)(2)(B) and the accompanying Advisory Committee Note mandates the disclosure of any material, factual or otherwise, that is shared with a testifying expert, even if such material would otherwise be protected by the work product privilege"). Moreover, Scientific Evidence lacks standing to assert privilege because, if any exists (and it does not), it would belong to plaintiff and his counsel, not Scientific Evidence. *See United States v. Grass*, Nos. 1:CR-02-146-01 through 1:CR-02-146-04, 2003 U.S. Dist. LEXIS 5196, at *10 (M.D. Pa. Feb. 11, 2003) ("[I]t is the attorney and client who hold the privilege, not the attorney's agent who may have generated work product at the attorney's behest.").

- *The subpoena is not overbroad.* Scientific Evidence's final objection is that the subpoena is overbroad because it asks not only for communications relating to Dr. Moye's work on the Vioxx litigation, but also for communications relating to Dr. Moye's work with Scientific Evidence as an expert on other pharmaceutical litigation. Scientific Evidence incorrectly contends that these communications are irrelevant and are unlikely to lead to the discovery of admissible evidence. Courts routinely permit such discovery, however, because an expert's opinions in other cases, the existence of a special relationship between an expert and counsel (or in this case, an expert witness firm), and prior involvement in similar cases are all relevant to issues of bias and qualifications. *See, e.g., Butler v. Rigsby*, No. 96-2453 Section "R"(5), 1998 U.S. Dist. LEXIS 4618, at *7-8 (E.D. La. Apr. 7, 1998) ("Evidence of a special relationship between an expert witness and legal counsel is relevant to demonstrate the possible bias of the expert witness, and discovery that is reasonably calculated to lead to such evidence should be permitted.").

## I.   SCIENTIFIC EVIDENCE'S ARGUMENT THAT THERE WAS "NO REASONABLE TIME FOR COMPLIANCE" IS MOOT.

Scientific Evidence first argues that Merck's subpoena did not allow a reasonable time for compliance because the Fourth of July holiday shortened the number of business days

available to prepare a response. It also argues, without evidentiary support,[1] that the holiday created "staffing issues," making timely production difficult. (*See* Scientific Evidence's Mot. at 3.) Scientific Evidence does not say it asked Merck for any additional time to respond before filing its motion. In any event, the holiday weekend has passed. Scientific Evidence's claim that the subpoena did not provide a reasonable time for compliance is thus moot. Merck requests that the Court order production of the subpoenaed documents no later than July 24, 2006 – ample time in which to gather and produce the requested material.

## II.     THE DOCUMENTS MERCK SEEKS ARE NOT PROTECTED BY PRIVILEGE.

Dr. Moye is a "consultant" or contractor who works for Scientific Evidence.[2] (Moye Dep. at 13:14-16.) Scientific Evidence put Dr. Moye in contact with plaintiff's counsel. (*Id.* at 13:11-16.) Dr. Moye contracted with Scientific Evidence to provide expert testimony in this matter (*id.* at 26:20-27:8) and sends his bills to Scientific Evidence (*id.* at 33:11-15). Scientific Evidence provided Dr. Moye with many of the scientific materials he reviewed in forming his

---

[1] The party moving to quash a subpoena has the burden of proof to demonstrate that compliance "would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The subpoena's reasonableness is determined "according to the facts of the case" and the document request, including such factors as the breadth of the document request, the documents' relevance, the particularity of the request, the burden imposed, and, in the case of third-party subpoenas, the expense and inconvenience to the non-party. *Id.* "Generally, modification of a subpoena is preferable to quashing it outright." *Id.* Because Scientific Evidence has not supported its motion with a declaration or other admissible evidence, it cannot sustain its burden of proof on such issues as the burden of responding to the subpoena or other fact-based arguments.

[2] As Scientific Evidence's website states:

> Scientific Evidence has an extensive network of physicians and PhD level scientists to serve as your case preparation consultants and trial experts. We provide law firms with nationally recognized medical expert witnesses for trial testimony that demands the highest degree of scientific and medical expertise.

(Scientific Evidence, "Experts," http://www.scientific-evidence.com/experts.htm (last visited July 12, 2006).)

4

opinions (*id.* at 42:19-43:22, 47:4-11, 58:14-59:6), and also helped determine what correspondence Dr. Moye should review in forming his opinions (*id.* at 60:1-24). In addition, Scientific Evidence prepared the bibliographical list of references relied upon by Dr. Moye and a document summarizing Dr. Moye's testimony. (*Id.* at 76:18-77:4, 224:20-225:12.)

As noted above, Scientific Evidence bases its privilege claim on an illegitimate premise: that "communications between an attorney and his retained (testifying) expert are not discoverable." (Scientific Evidence's Mot. at 4.) From this false premise, Scientific Evidence reasons that it "follows, then . . . that communications between qualifying non-attorney testifying consultants and the party's retained testifying experts are not discoverable." (*Id.* at 5.)

As the Federal Circuit explained in *In re Pioneer*, however, communications between an attorney (or anyone else) and a retained expert *are* discoverable:

> Although there is some contrary authority at the district court level, the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that *documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report.*

238 F.3d at 1375 (citations omitted) (emphasis added). The Court went on to hold:

> Rule 26(a)(2) requires that the testifying expert's report "contain a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness in forming the opinions . . . ." The accompanying Advisory Committee Note explicitly states that "the report is to disclose the data and other information considered by the expert. . . ." *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.*
>
> The revised rule proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. *Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.*

5

*Id.* (citations omitted) (emphasis added). Thus, any disclosure to a testifying expert constitutes a waiver. *Id.* at 1375-76.

The Fifth Circuit has not addressed the issue, but in this district, Magistrate Judge Knowles concluded that "the plain language of Rule 26(a)(B) and the accompanying Advisory Committee Note mandates disclosure of any material, factual or otherwise, that is shared with a testifying expert, even if such material would otherwise be protected by the work product privilege." *S. Scrap Material Co.*, 2003 U.S. Dist. LEXIS 10815, at *73 and n.55.[3]

Moreover, even assuming Scientific Evidence could be characterized as a "consulting expert," its communications with Dr. Moye would not be protected by the consulting expert privilege described in Rule 26(b)(4)(B) of the Rules of Civil Procedure. It is well settled that discovery related to a non-testifying expert can be had "where the non-testifying expert provides information relied upon by the testifying expert." *Elco Indus., Inc. v. Hogg*, No. 86 C 6947, 1988 WL 20055, at *3 (N.D. Ill. Feb. 29, 1988) (citing *Eliasen v. Hamilton*, 111 F.R.D. 396, 400 (D. Ill. 1986)); *see also Herman v. Marine Midland Bank*, 207 F.R.D. 26, 30-32 (W.D.N.Y. 2002) (holding that Rule 25(b)(4)(B) permitted deposition of non-testifying expert upon whose assistance and findings the testifying expert "ascribed dispositive reliance"); *Long-Term Capital Holdings, LP v. United States*, No. 01-CV-1290, 2003 WL 21269586, at *4 (D. Conn. May 6, 2003) (allowing deposition of non-testifying experts where "the [testifying] experts have relied on the bases and methods of analysis used by [the non-testifying experts] to reach their expert

---

[3] Plaintiff cites *Kennedy v. Baptist Mem'l Hosp.-Booneville, Inc.*, 179 F.R.D. 520, 522 (N.D. Miss. 1998), for the contrary proposition, but even in that case discovery was allowed. A more recent Mississippi case, *TV-3, Inc. v. Royal Ins. Co. of Am.*, 194 F.R.D. 585, 588 (S.D. Miss. 2000), discussed the split of authority on this issue, considered *Kennedy*, and then adopted the "bright line" rule set forth in *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 635 (N.D. Ind. 1996) (everything provided to a testifying expert is discoverable). Magistrate Judge Knowles also relied on *Karn* in *S. Scrap Material Co.*

opinions"). The relevant case law also makes clear that, because Rule 26(b)(4)(B) is intended to discourage a party from "'free riding' and seeking to 'build its own case'" with an adverse party's work-product, the purpose of the rule is not defeated where a party instead seeks discovery of an adverse party's non-testifying expert in order to attack the expert's findings and "tear down" the adversary's case. *Long-Term Capital Holdings*, 2003 WL 21269586, at *4 n.12. Such is the case here. Merck seeks the subpoenaed documents so that it can prepare a meaningful cross-examination of Dr. Moye. The consulting expert privilege has no application in this situation and cannot support Scientific Evidence's motion.

Finally, as also noted above, Scientific Evidence lacks standing to raise the privilege issue. Any privilege would belong to plaintiff and his counsel, not Scientific Evidence. *United States v. Grass*, 2003 U.S. Dist. LEXIS 5196, at *10.

### III. THE SUBPOENA IS NOT OVERBROAD.

Finally, Scientific Evidence urges the Court to quash Merck's subpoena on overbreadth grounds, arguing that the subpoena is unduly burdensome because it seeks documents not directly "relevant to the issues in the Vioxx MDL litigation." (Scientific Evidence's Mot. at 6.) This argument is unavailing.

Evidence that is unrelated to the substance of an expert's opinion in the case at hand, such as opinions offered in previous cases, can still be relevant to show bias on the part of the expert. *Hudspeth v. Comm'r*, 914 F.2d 1207, 1214-15 (9th Cir. 1990) (refusal to consider expert's valuation data from prior case was abuse of discretion as data, when compared opinion offered in case at hand, was relevant to bias of expert). For example, "[e]vidence of special relationship between an expert witness and legal counsel is relevant to demonstrate the possible bias of the expert witness, and discovery that is reasonably calculated to lead to such evidence should be permitted." *Butler*, 1998 U.S. Dist. LEXIS 4618, at *7-8 (citing *Trower v. Jones*, 520

7

N.E.2d 297, 301-02 (Ill. 1988) (allowing counsel to inquire on cross-examination about frequency with which witness testified for plaintiffs)). "Similarly, an expert witness' experiences in prior lawsuits [are] relevant to demonstrate possible biases." *Butler*, at *8 (citing *First State Bank v. Deere & Co.*, Civ. A. No. 86-2308-S, 1991 WL 46375, at *7 (D. Kan. Mar. 15, 1991) (allowing inquiry into past experiences as expert witness was proper subject matter for questioning at deposition)); *Bottorff v. Bethlehem Steel Corp.*, 130 F.R.D. 97, 98 (N.D. Ind. 1990) (holding that witness' prior experience as consulting expert was relevant to both his qualifications and potential bias); *Bockweg v. Anderson*, 117 F.R.D. 563, 565-66 (M.D.N.C. 1987) (allowing expert witnesses to be questioned concerning their involvement, past or present, in other malpractice actions). This is precisely the kind of information requested by Merck of Scientific Evidence here.

### III.   CONCLUSION.

For the foregoing reasons, Merck respectfully requests that the Court deny Scientific Evidence's motion to quash.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:   504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman

8

BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone: 312-494-4400
Fax:     312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone: 202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition to Scientific Evidence's Objections and Motion for Protection from Discovery Subpoena to Non-Party Scientific Evidence has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of July, 2006.

_Dorothy H. Wimberly_

Exhibit A - Moye Deposition Excerpts

- Scientific Evidence Oppo

| | | |
|---|---|---|
| [1:] - [1:24] | 6/2/2006 | Moye, Lemuel A. |

```
page 1
   0001
 1           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA
 2
          IN RE: VIOXX        : MDL DOCKET NO.
 3        LITIGATION PRODUCTS :  1657
          LIABILITY LITIGATION : SECTION L
 4                             :
          This document relates: JUDGE FALLON
 5        To                   :
          GERALD BARNETT AND   : MAGISTRATE JUDGE
 6        CORRINE BARNETT      : KNOWLES
                 V.            :
 7        MERCK & CO., INC.    :
                               :
 8        Civil Action No.     :
          2:06cv485            :
 9                     - - -
10                  June 2, 2006
11                     - - -
12           Oral deposition of LEMUEL A. MOYE,
13    M.D., Ph.D., held in the offices of
14    Abraham, Watkins, Nichols, Sorrels,
15    Matthew & Friend, 800 Commerce, Houston,
16    Texas, commencing at 9:30 a.m., on the
17    above date, before Linda L. Golkow, a
18    Federally-Approved Registered Diplomate
19    Reporter and Certified Shorthand
20    Reporter.
                       - - -
21          GOLKOW LITIGATION TECHNOLOGIES
                   Four Penn Center
22          1600 John F. Kennedy Boulevard
                     Suite 1210
23          Philadelphia, Pennsylvania 19103
                     877.DEPS.USA
24
```

| | | |
|---|---|---|
| [13:11] - [13:13] | 6/2/2006 | Moye, Lemuel A. |

```
page 13
11        Q.   Who was the first person to
12   contact you to ask you to be an expert
13   witness on behalf of the plaintiffs?
```

| | | |
|---|---|---|
| [13:14] - [13:16] | 6/2/2006 | Moye, Lemuel A. |

```
page 13
14        A.   I think it was through
15   Scientific Evidence.  I'm a consultant
16   for that company.
```

| | | |
|---|---|---|
| [26:20] - [27:8] | 6/2/2006 | Moye, Lemuel A. |

```
page 26
20        Q.   When you agreed to serve as
21   an expert, did you agree to serve as an
22   expert for certain attorneys, or did you
23   agree to serve as an expert for anybody
24   who wanted to hire you?
page 27
 1        A.   Let me back up for one
 2   second.  Let me amend my answer.
 3             I believe I signed an
 4   agreement with Scientific Evidence in the
 5   fall of '05 to serve as an expert.  I
```

Exhibit A - Moye Deposition Excerpts

- Scientific Evidence Oppo

```
                           6   don't have the date specifically in mind,
                           7   but I think it was a few months earlier
                           8   than I earlier testified today.
```

[33:11] - [33:15]          6/2/2006      Moye, Lemuel A.

```
page 33
11      Q.   Your billing is not done
12   through Scientific Evidence?
13      A.   It is. I send my bill to
14   Scientific Evidence. I don't know what
15   they do after that.
```

[42:19] - [43:22]          6/2/2006      Moye, Lemuel A.

```
page 42
19      Q.   When you first became
20   involved in the litigation, how did you
21   approach your review? What I'm trying to
22   understand is, were you sent certain
23   materials by the plaintiffs, did you ask
24   the plaintiffs to send you certain
page 43
1    materials, did you start with a medical
2    literature search? How did the process
3    start?
4       A.   Well, I began by not asking
5    anybody for information, but just
6    gathering information as best I could.
7    There's a voluminous amount of published
8    material that I have access to. Of
9    course, the third FDA Advisory Committee
10   on Vioxx met in late winter/early spring
11   of 2005, and I reviewed that transcript
12   when it became available, as well as the
13   other transcripts which were already
14   actually available on the FDA site. So,
15   much of my early review involved material
16   that I was able to get on my own.
17            Just to finish up here.
18   There were manuscripts that were sent to
19   me through Scientific Evidence that --
20   again, by "manuscripts," information that
21   was published in the peer-reviewed
22   literature that supplemented my review.
```

[47:4] - [47:11]           6/2/2006      Moye, Lemuel A.

```
page 47
4       Q.   Okay.
5            Now, did you review the
6    investigational new drug application?
7       A.   Yes, sir, I did.
8       Q.   How did you get access to
9    that?
10      A.   Scientific Evidence sent
11   that to me.
```

[58:14] - [59:6]           6/2/2006      Moye, Lemuel A.

```
page 58
14      Q.   Did you look at a file that
15   contained -- well, let me back up.
16            You just alluded to the
17   documents that Merck provided to the
18   Advisory Committee members. There're
19   referred to as briefing documents?
20      A.   Yes, sir.
21      Q.   Right?
22            Did you look at those on
```

Exhibit A - Moye Deposition Excerpts

- **Scientific Evidence Oppo**

```
23  line?
24       A.    I don't think I looked at
page 59
1   those on line, no.
2        Q.    Those are --
3        A.    I'm sorry.
4        Q.    Were they provided by
5   Scientific Evidence?
6        A.    Yes.
```

[60:1] - [60:24]      6/2/2006     Moye, Lemuel A.

```
page 60
1        Q.    Let me withdraw the
2   question.
3              If you reviewed some letters
4   but not all the letters, there had to be
5   some selection process in deciding what
6   you saw?
7        A.    Yes.
8        Q.    Fair?
9              Were you involved in that
10  selection process, was that a decision
11  made by Scientific Evidence, or was that
12  a decision made by the lawyers with whom
13  you were working?
14       A.    No.  I would say it was a
15  joint decision.  At this point in my
16  review, you're talking now about April or
17  May of this year, and I would meet with
18  attorneys, some of whom I mentioned
19  earlier, and we would talk about what
20  information would be most useful, and I
21  would ask for material, as well as have
22  material supplied unvolunteered --
23  supplied, volunteered by others, not by
24  me.
```

[76:18] - [77:4]      6/2/2006     Moye, Lemuel A.

```
page 76
18       Q.    Who prepared Exhibit 2?
19       A.    Scientific Evidence did.
20       Q.    Okay.
21             When was it prepared?
22       A.    I don't know.  I think
23  recently, but I don't when.
24       Q.    Was it prepared in
page 77
1   anticipation of filing your report?
2        A.    Well, I think they knew they
3   had to have that when I filed my report,
4   but that's all I know.
```

[224:20] - [225:12]   6/2/2006     Moye, Lemuel A.

```
page 224
20       Q.    Okay.
21             I've also marked as Exhibit
22  4 a document that was produced to us and
23  represented to be a summary of your
24  testimony.
page 225
1        A.    Okay.
2        Q.    Is this a document that you
3   prepared?
4        A.    It is not.
5        Q.    Do you know who prepared it?
6        A.    I think Scientific Evidence
7   prepared this.
```

Exhibit A - Moye Deposition Excerpts

- **Scientific Evidence Oppo**

```
 8      Q.   Okay.
 9           Does Scientific Evidence
10  track your testimony?
11      A.   I think they do.  Actually,
12  yes, they do.
```

[387:6] - [391:14]          6/2/2006    Moye, Lemuel A.

```
page 387
 6      Q.   You testified, I believe, in
 7  February of 2005 that you had made about
 8  $1.35 million in your work in fen-phen;
 9  is that right?
10      A.   Yes.
11      Q.   How much have you made since
12  February of 2005 additional?
13      A.   In fen-phen?
14      Q.   Yes.
15      A.   I don't know.  2005.  I
16  don't know.
17      Q.   In the last year?
18      A.   I don't know.
19      Q.   Have you testified in cases
20  in the last year?
21      A.   Yeah.
22      Q.   Okay.
23           What's your best estimate of
24  how much you've made in the fen-phen
page 388
 1  litigation overall?
 2      A.   I don't know.  A little more
 3  than $1 million.
 4      Q.   Well, if you made 1.35 --
 5      A.   To me, that's a little more.
 6      Q.   What?
 7      A.   To me, that's a little more.
 8      Q.   I'm saying if you had 1.35
 9  in February of 2005 --
10      A.   But see, even that was an
11  estimate.  My overall estimate is
12  somewhere between 1 and $1.5 million.
13  That would be probably the best I can do.
14      Q.   Okay.
15           What other litigation have
16  you testified in as an expert over the
17  last three years?
18      A.   The last three years?
19      Q.   Yes.
20      A.   This is '06.
21      Q.   Let me withdraw the question
22  and see if I can expedite it.
23      A.   Okay.
24      Q.   You testified against
page 389
 1  Pfizer, right, in the Rezulin litigation?
 2      A.   Yes.  I just wasn't sure
 3  that was in the last three years or not.
 4      Q.   Okay.
 5           Was Pfizer the defendant
 6  then or was somebody else the defendant?
 7      A.   No.  I think Pfizer was the
 8  defendant then.  My last Rezulin trial
 9  may have been in the spring of 2004 in
10  California.  I don't remember.
11      Q.   Do you see it on there
12  anywhere?
13           (Handing over document.)
14      A.   Thanks.
15           (Witness reviewing
16  document.)
17           I don't think so, no.
```

Exhibit A - Moye Deposition Excerpts

• Scientific Evidence Oppo

```
18      Q.   It's not on there?
19      A.   I don't think so.
20      Q.   But it should be on there?
21      A.   Yes.
22      Q.   Okay.
23           Do you know how many cases
24   you testified in against Pfizer?
page 390
1       A.   For Pfizer?
2       Q.   Yes.
3       A.   I believe there were four.
4       Q.   Four?
5       A.   Four trials against Pfizer.
6       Q.   Okay.
7            And where were those?
8       A.   One was in Houston, one was
9    in Corpus, a third was in McAllen, and a
10   fourth was in Los Angeles.
11      Q.   And your testimony was on
12   behalf of plaintiffs for all of those
13   cases?
14      A.   Yes, sir.
15      Q.   All right.
16           Other than your testimony
17   against Pfizer and American Home Products
18   for Wyeth, have you been involved in any
19   other product cases?
20      A.   Yes, but to very limited
21   degrees. I gave a deposition I think in
22   Lotronex. That's all I remember. I
23   investigated getting into some other
24   ones, but never did.
page 391
1       Q.   Are you still involved in
2    diet drug cases today?
3       A.   I don't think so anymore,
4    but with fen-phen, one never knows. So,
5    I would say I think I'm done with that.
6       Q.   You don't have any active
7    things on your calendar at this point?
8       A.   That's right. That's right.
9       Q.   Do you know how much money
10   you made, best estimate of how much money
11   you made in the Pfizer/Rezulin
12   litigation?
13      A.   No. I don't have an
14   estimate today.
```

[396:1] - [396:24]      6/2/2006    Moye, Lemuel A.

```
page 396
1              C E R T I F I C A T E
2
3         I, LINDA L. GOLKOW, a Notary
    Public and Certified Shorthand Reporter
4   of the State of New Jersey, do hereby
    certify that prior to the commencement of
5   the examination, LEMUEL A. MOYE, M.D. was
    duly sworn by me to testify to the truth,
6   the whole truth and nothing but the
    truth.
7
8         I DO FURTHER CERTIFY that the
    foregoing is a verbatim transcript of the
9   testimony as taken stenographically by
    and before me at the time, place and on
10  the date hereinbefore set forth, to the
    best of my ability.
11
12        I DO FURTHER CERTIFY that I am
    neither a relative nor employee nor
```

Exhibit A - Moye Deposition Excerpts

• Scientific Evidence Oppo

```
13  attorney nor counsel of any of the
    parties to this action, and that I am
14  neither a relative nor employee of such
    attorney or counsel, and that I am not
15  financially interested in the action.
16
17
18
19    _____
      LINDA L. GOLKOW, CSR
20    Notary Number:  1060147
      Notary Expiration:  1-2-08
21    CSR Number:  30XI176200
      Dated:  June 9, 2006
22
23
24
```