UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to** | * | |
| **Case No. 06-0485** | * | |
| | * | MAGISTRATE JUDGE |
| **GERALD D. BARNETT**, | * | KNOWLES |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MOTION AND INCORPORATED MEMORANDUM OF MERCK & CO., INC.
("MERCK") FOR ORDER EXCLUDING THE "ADDENDUM"
<u>TO THE EXPERT REPORT OF DOUGLAS P. ZIPES, M.D.</u>**

On July 19, Merck's counsel took the supplementary deposition of Dr. Douglas P. Zipes, which was called to allow Dr. Zipes to testify about Plaintiff Gerald D. Barnett's recent cardiac catheterization and the events leading up to it.  Instead of focusing on this recent episode, however, Dr. Zipes and plaintiff's counsel used this deposition: (i) to offer untimely testimony that should have been provided months ago; and (ii) to serve Merck with an "Addendum" to Dr.

820772v.1

Zipes's expert report half-way through the deposition. Merck seeks an order precluding Dr. Zipes's Addendum Report and related testimony on the following grounds:

- ***The report is untimely.*** This Court's scheduling order required plaintiff to designate expert witnesses and to serve expert reports by May 22. Even if the Addendum Report seeks to comment on Mr. Barnett's post-May 22 cardiac incident, the report itself should have been served on Merck *before* Dr. Zipes's July 19 deposition, as required by Federal Rule of Civil Procedure 26(b)(4)(A). Instead, Merck's counsel received the Addendum Report half-way through the deposition, making it impossible to question Dr. Zipes about it in a meaningful manner.

- ***The bulk of the report has nothing to do with Mr. Barnett's recent event.*** Rather than addressing Mr. Barnett's recent cardiac catheterization, Dr. Zipes's Addendum Report comments on topics that are completely unrelated to this event. For example, in paragraph 6(i) of the report, Dr. Zipes provides an opinion on whether and when Mr. Barnett had a second MI between 2002 and 2004 – even though this testimony is unrelated to Mr. Barnett's recent health issues. This is an impermissible attempt to sneak in late-in-the-day opinions, and is especially improper given that trial is scheduled to start in a week, on July 31.

- ***Dr. Zipes often merely recounts what other doctors told him.*** The Addendum Report starts by recounting a conversation between Drs. Zipes and Karavan, and reports that Dr. Karavan has now allegedly revised his opinion about how much occlusion was in Mr. Barnett's left-main artery as of the time of his heart attack in September 2002. This is pure hearsay. It is prejudicial and inappropriate, especially given that: (i) Dr. Karavan never said anything about his changed reading of the occlusion at his July 18 deposition; and therefore (ii) Merck no longer has an opportunity to depose Dr. Karavan on the subject. In fact, plaintiff's counsel never even asked about this issue when he took Dr. Karavan's deposition two days earlier. Plaintiff may not use Dr. Zipes's Addendum Report to get in Dr. Karavan's alleged new opinion, while depriving Merck of the opportunity to cross-examine him about it. Similarly, any statements in the report that merely recount what a non-testifying physician, Dr. Harvey Feigenbaum (who is Dr. Zipes's neighbor), allegedly said are also inappropriate hearsay and should be excluded.

Only portions of paragraphs 3 and 5 of Dr. Zipes's Addendum Report contain his opinions on Mr. Barnett's recent cardiac event. The rest of his report should be stricken.

820772v.1

### I. PLAINTIFF DID NOT TIMELY PROVIDE DR. ZIPES'S ADDENDUM REPORT.

The Court's scheduling order required plaintiff to designate his testifying experts and provide their reports by May 22, 2006. Dr. Zipes provided a timely report, and was deposed by Merck on June 9, 2006. He provided a supplemental report on May 30, 2006 and yet another "risk" analysis on June 9. In the spirit of cooperation, Merck did not object to the untimely nature of Dr. Zipes's opinions contained in the May 30 supplemental report or June 9 risk analysis. Merck does, however, object to the third untimely report by Dr. Zipes that he served on Merck's counsel *during* his recent deposition on July 19, 2006.

On July 10, 2006, Mr. Barnett underwent a cardiac catheterization. Merck took a supplementary deposition of Dr. Zipes about this recent event. On July 19, half-way through this deposition, plaintiff's counsel served Merck with the Addendum Report that is the subject of this motion.[1] Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, this untimely report must be stricken.

Rule 26 requires a party to file a report for each expert witness it intends to use at trial. *See* FED. R. CIV. P. 26(a)(2). If a party does not timely file such a report – either original or supplemental – the Court should exclude the expert from testifying at trial on the matters the party was required to disclose. *See* FED. R. CIV. P. 37(c)(1). To avoid sanctions under Rule 37(c)(1), the party who failed to comply with Rule 26 bears the burden of showing that its actions were substantially justified or harmless. *Journet v. Vehicle VIN No. 1GRAA06283T500670*, No. H-04-4730, 2006 WL 1663708, at *10 (S.D. Tex. June 15, 2006)

---

[1] Merck's counsel noted Merck's objection, but nonetheless made an effort to question Dr. Zipes on the opinions expressed in his Addendum Report – without having had adequate time to review its substance. (*See* July 19, 2006 Deposition of Douglas Zipes, M.D. ("Zipes Dep.") at 356:9-357:5, attached hereto as Ex. A.)

(excluding late expert testimony). Courts may consider the following in deciding whether to excuse the party's lateness: (i) the explanation, if any, for the party's failure to comply with the discovery order; (ii) the prejudice to the opposing party of allowing the witness to testify; (iii) the possibility of curing such prejudice by granting a continuance; and (iv) the importance of the witness' testimony. *See id.* at *9, *citing United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *see also Texas Instruments, Inc. v. Hyundai Electronics Industries, Co. Ltd.*, 50 F. Supp. 2d 619, 622 (E.D. Tex. 1999) (upholding trial court's exclusion of a late-filed supplemental report and related testimony where at least a mostly-finished report could have been provided on a timely basis). Here, plaintiff cannot show his late service of Dr. Zipes's Addendum Report was substantially justified or harmless.

### A. Plaintiff Cannot Satisfy His Burden to Explain Why Dr. Zipes's Addendum Report Was Not Produced Earlier Than July 19, 2006.

There is no explanation for why Dr. Zipes's Addendum Report was not provided to Merck before his July 19 deposition. Any parts of the report that speak to Mr. Barnett's recent catheterization certainly couldn't have been provided before this event, but still could have been provided any time after July 10 and before the deposition.[2] On untimeliness grounds alone, the Court should strike Dr. Zipes's Addendum Report.

Rule 26(b)(4)(A)'s requirement that an expert report be provided *before* his deposition is especially important here, on the eve of trial, where there is no possibility of an additional deposition or continuance. The July 19 deposition was Merck's only opportunity to question Dr. Zipes about his opinions on Mr. Barnett's recent cardiac event. By not providing the Addendum Report to counsel beforehand, plaintiff robbed Merck of an opportunity to properly prepare for

---

[2] It was *plaintiff's* counsel who scheduled the deposition on July 19 (*see* Zipes Dep. at 299:18-20), and thus had an obligation to provide the Addendum Report beforehand.

4

this deposition, and thus for trial. *See, e.g., Peña-Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005) (upholding exclusion of an expert, in part because "failure to provide an expert report . . . undermines opposing counsel's ability to prepare for trial").

> **B.  The Addendum Report Is Unduly Prejudicial Because It Is Mostly Unrelated To Mr. Barnett's Recent Incident And Thus Thoroughly Improper.**

The bulk of Dr. Zipes's Addendum Report has nothing whatsoever to do with Mr. Barnett's recent cardiac event. Rather, as Dr. Zipes himself testified, he has merely thought more about what he already knew. (Zipes Dep. at 329:2-7.) Dr. Zipes should not be allowed to augment his opinions on these subjects less than two weeks before trial. Nor should plaintiff be permitted to use Mr. Barnett's recent health issues to introduce new opinions that were not part of Dr. Zipes's original report, supplemental report from May 30, 2006, or risk analysis dated June 9, 2006.

In particular, the following portions of Dr. Zipes's Addendum Report improperly address issues other than Mr. Barnett's recent cardiac event:

- *Paragraph 1*: In this section of the report, Dr. Zipes recounts a recent conversation he had with Dr. Karavan about the latter's interpretation of Mr. Barnett's *2002* catheterization results.[3]

- *Paragraph 3*: Here, Dr. Zipes opines, in part, about "two periods of plaque build-up: . . . 1/2000 through 9/2002 [and] 9/2002 through 9/2004." These periods of alleged acceleration of Mr. Barnett's atherosclerosis have been addressed in Dr. Zipes's prior report and testimony, and require no supplementation here.

- *Paragraph 4*: This is a purely new opinion about Table 13 from the APPROVe trial, unrelated to Mr. Barnett's recent catheterization. When Dr. Zipes was asked about this opinion on July 19, he testified that the table was highlighted for him by plaintiff's counsel and given to him the morning of the deposition. He could not remember whether he had ever reviewed it beforehand. (*See* Zipes Dep. at 450:13-451:7.) For plaintiff's counsel to take advantage of Mr. Barnett's recent

---

[3] This opinion is improper for the additional reasons articulated in Part II below.

5

- cardiac event to fill in any perceived gaps in Dr. Zipes's prior testimony and opinions is highly improper.

- *Paragraph 5*: In this paragraph, Dr. Zipes addresses "how minimal Mr. Barnett's risk of heart attack was as of January 24, 2000." These opinions are, at best, only tangentially related to the tests performed on Mr. Barnett in the last month.

- *Paragraph 6*: Although this paragraph is ostensibly about "points of interest concerning the most recent angiogram," the vast majority of its subparts are new opinions that have nothing to do with Mr. Barnett's recent cardiac event. For example, Dr. Zipes discussed the Cardiolite stress test from January 2000 and a brand new analysis about "transient ischemic dilation." (Addendum Report at ¶ 6(a), (b), attached hereto as Ex. B.)

II.  **DR. ZIPES'S ADDENDUM REPORT MAY NOT BE USED BY PLAINTIFF TO OFFER THE TESTIMONY OF OTHER DOCTORS WHO MERCK CANNOT CROSS-EXAMINE.**

Portions of Dr. Zipes's expert report should be stricken for the additional reason that they simply rehash what other doctors have told Dr. Zipes. This is hearsay testimony to which no hearsay exception applies. It is highly improper, especially given that Merck will not have an opportunity to depose the alleged declarants before trial.

Opinions based on the hearsay statements of others must be excluded from an expert's testimony unless the proffering party can show that these are "facts or data [that] are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Petty v. Venable, Baetjer, Howard & Civiletti, LLP*, No. Civ.A.3:02-CV-1449-D, 2004 WL 1629774, at *8 (N.D. Tex. July 20, 2004) (excluding conclusory expert testimony where plaintiffs were unable to demonstrate that the relied-on hearsay statements are of a type reasonably relied on by experts in the field; stating that "Rule 703. . . is not an open door to all inadmissible evidence disguised as expert opinion."). Even where such reasonable reliance can be shown, the underlying hearsay statements themselves may still be barred. *See e.g., South Central Petroleum, Inc. v. Long Bros. Oil Co.*, 974 F.2d 1015, 1019 (8th Cir. 1992) (upholding

district court ruling that limited the admission of hearsay evidence to the expert's opinion and did not admit the information on which the expert based his opinion).

In paragraphs 1 and 2 of his Addendum Report, Dr. Zipes merely recounts his conversations with: (i) another one of plaintiff's experts, Dr. Karavan (Addendum Report at ¶ 1); and (ii) Dr. Feigenbaum, a non-testifying, non-retained expert whose only connection to this action is that he is Dr. Zipes's neighbor (*id.* at ¶ 2). Plaintiff does nothing to show Dr. Zipes relied on their testimony or analysis to form *his own* opinion, or that such reliance was reasonable and customary. In addition, given the fact that Merck will have no opportunity to further depose Dr. Karavan or depose Dr. Feigenbaum at all before trial, Merck has no way of knowing whether these doctors ever made the statements contained in Dr. Zipes's Addendum Report, or to confirm their truthfulness.

Dr. Karavan was deposed only one day before plaintiff turned over this Addendum Report, where Dr. Zipes writes that "Dr. Karavan . . . said in retrospect, he felt that there was less than a 50% occlusion in the left main artery on the 9/9/02 catheterization, which was what he had stated originally." (Addendum Report at ¶ 1.) And yet, Dr. Karavan did not testify at his deposition about this change in his opinion. Nor did plaintiff's counsel ask him his views about the condition of Mr. Barnett's left main artery as of September 2002. Having received Dr. Zipes's Addendum Report after Dr. Karavan's deposition, Merck cannot depose Dr. Karavan about this alleged statement, which is pure hearsay. Nor has plaintiff made any attempt to show that the statement may be used by experts in the field to form their own opinions, or that Dr. Zipes did so here.

Similarly, any statements about what Dr. Feigenbaum said about Mr. Barnett's July 2006 angiogram should also be barred as hearsay. (*See* Addendum Report at ¶2.) Dr. Feigenbaum is

not a designated expert in this litigation. Rather, he is Dr. Zipes's neighbor, whom Dr. Zipes considers to be an "expert." Merck was not provided with Dr. Feigenbaum resume, let alone given an opportunity to depose him about his opinion. Dr. Zipes should not be allowed to rely on Dr. Feigenbaum – especially here, where Dr. Zipes himself testified that he feels that he is not an expert "to the extent that [Dr.] Feigenbaum is." According to Dr. Zipes's testimony, he simply relied on Dr. Feigenbaum's reading of Mr. Barnett's test results:

> Q: Sorry. Why did you show the catheterization to your neighbor Harvey Feigenbaum?
>
> A: He's a world expert in echo, as well as a catheterizer, though he hasn't done that for five years or so. Was head of the catheterization laboratory at my institution for many, many, years. He lives across the street.
>
> I looked at the CD. I made my own decisions, conclusions. I saw what I saw and I thought, well, why don't I ask Harvey if he agrees with me?
>
> . . .
>
> Q: Do you hold yourself out in the medical community as an expert in echo cardiograms and the interpretation of cardiac catheterizations?
>
> A: I hold myself out as an expert in the ability to read them. I don't hold myself out as an expert to the extent that Feigenbaum is or, probably, Dr. Karavan, in interventional cardiology.
>
> . . .
>
> A: . . . I might also add that one of the reasons I did show the films to Dr. Feigenbaum to see if he agreed with my interpretation is because he is an expert. And as you pointed out, ***I haven't, personally, done the catheterizations for many, many, years, and consequently, went to an expert to verify my conclusions***.

(Zipes Dep. at 308:21-309:17, 311:10-18, 335:10-17 (emphasis added).)

Finally, the Court should preclude Dr. Zipes from testifying about the exhibits cited by Dr. Zipes in this second paragraph of his Addendum Report. (*See* Addendum Report at ¶ 2, citing Exhibit 1 (Exhibit 41 from Karavan deposition) and 1a (excerpts of Dr. Karavan's deposition testimony).) These exhibits were only provided to Dr. Zipes by plaintiff's counsel on

the morning of his July 19 deposition.  Dr. Zipes admitted that he primarily – and improperly – relied on his counsel's interpretation of the documents:

> Q: It sounds to me like you are just accepting Mr. Robinson's representation of what Dr. Karavan said in his deposition yesterday as true and you're relying on whatever he just told you about Dr. Karavan's deposition without actually seeing it yourself; is that right?
>
> A: I have not seen his deposition.
>
> Q: What's the answer to my question?
>
> A: The answer is yes.
>
> . . .
>
> A: . . . And my understanding is that you used this [Exhibit 1] to, in front of Dr. Karavan, and you have the differences of the interpretation of the vessels written down.
>
> Q: And do you know whether we got into anything in the third column?  I don't want you to look at the testimony.
>
> MR. ROBINSON:  He can't look at the testimony I gave him?
>
> Q: Do you know as you sit here today whether you had a chance to get into the third column?
>
> A: Yes.  And my interpretation, ***but again this is told to me by counsel***, is that you assume that subtotal occlusion represented a lesser occlusion than the 80 percent, when in actual fact, there was significant progression in multiple areas.
>
> Q: That's what Mr. Robinson told you?  [Objection omitted.]  Did Mr. Robinson tell you anything else about how this document was used with Dr. Karavan's deposition?
>
> A: Basically, that was it.
>
> Q: Basically, all you know about this document that's called Comparison of Cardiac Catheterization Findings is what Mr. Robinson or others who work for him told you about how it was used in Dr. Karavan's deposition, right?
>
> A: That is correct.  Obviously, ***appended here are excerpts from Dr. Karavan's deposition which I've not had an opportunity to read and it's not fair for me to comment further***.

9

(Zipes Dep. at 300:15-301:2, 442:9-443:21 (emphasis added).)

Since Dr. Zipes had not personally reviewed either Exhibit 1 or Exhibit 1a to his Addendum Report at the time of his July 19 deposition, he should not be allowed to testify about them at trial. And even if, by the time of trial, Dr. Zipes does review these exhibits for himself, that will be too late for Merck to depose Dr. Zipes on the documents. Therefore, any testimony about these materials should be precluded.

### III.   CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court strike Dr. Zipes's untimely Addendum Report and preclude any testimony about the conclusions expressed therein. In the alternative, Merck requests that the Court strike the sections of the Addendum Report that either relate to subjects other than Mr. Barnett's recent cardiac catheterization or merely parrot the opinions of other doctors.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

820772v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

820772v.1

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Motion and Incorporated Memorandum for Order Excluding the "Addendum" to the Expert Report of Douglas P. Zipes, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 24th day of July, 2006.

                                                                       */s/ Dorothy H. Wimberly*