# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE |
| GERALD D. BARNETT, | * | KNOWLES |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## JURY INSTRUCTIONS PROPOSED BY MERCK & CO., INC. ("MERCK")

Merck hereby submits the following proposed jury instructions, numbered 1 through 24.

Dated:  July 24, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

Attorneys for Merck & Co., Inc.

INSTRUCTION NO. 1

**General Instruction**

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or that I make in these instructions as indicating that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.]  [You have heard the closing arguments of the attorneys.]  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.

In reaching your verdict, you are not to be swayed from the performance of your duty by prejudice, sympathy, or any other sentiment for or against any party.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  Your verdict must be based on the evidence that has been received and the law on which I am about to instruct you.

Your answers and your verdict must be unanimous.

You must answer all questions – except those questions on plaintiff's "deceit by concealment" claims, which I will address in a moment – from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You must decide plaintiff's "deceit by concealment" claim based on the clear and convincing evidence standard.  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another.  You may

1

820837v.1

consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.)]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

[Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are

2

not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

<u>Authority</u>:  *Pattern Jury Instructions: Fifth Circuit, Civil Cases*, §§ 2.13, 2.14, 3.1 (as modified); Anderson, *South Carolina Requests to Charge - Civil*, §§ 1-3, 1-4, 1-6, 1-8 (as modified).

820837v.1

INSTRUCTION NO. 2

**<u>Attorney Objections</u>**
(to be given when an objection is first made)

Attorneys are officers of the court.  Attorneys have the absolute right and duty to bring matters to the attention of the court by way of objection.  Do not inferentially, or otherwise, become upset or disturbed by counsel by virtue of an objection.  Our trial procedure includes the objection process as a means of control of evidence, *i.e.*, letting in proper evidence and keeping out improper evidence.  Counsel, by objecting, are simply performing their role in the trial of the case.

Once the court makes a ruling on an objection, the jury is bound by that ruling.  If the objection is sustained, the question is improper.  If the objection is overruled, the question is proper.  In that regard, the jury must not, under any circumstances, derive any inference from any ruling made by the court on objections as to any opinion the court may have on the case.  The judge does not have an opinion on the evidence and is not entitled to an opinion under the law.  The judge is performing his role in the trial of the case.  As to any questions to which an objection was sustained, you must not speculate as to what the answer might have been or as to the reason for the objection.

<u>Authority:</u>  Anderson, *South Carolina Requests to Charge - Civil*, §1-10.

4

820837v.1

INSTRUCTION NO. 3

**Deposition Testimony**
(to be given the first time deposition testimony is shown)

Certain testimony will now be presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.   Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.   A court reporter was present and recorded the testimony.  The questions and answers will be shown to you today.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility as if the witness had been present and had testified from the witness stand in court.

Authority:  *Pattern Jury Instructions: Fifth Circuit, Civil Cases*, § 2.23 (as modified).

820837v.1

INSTRUCTION NO. 4

## Products Liability – Introductory Charge

This is a products liability case arising out of Mr. Barnett's use of Vioxx.  Merck manufactured Vioxx, a prescription medication approved by the United States Food and Drug Administration, also known as the FDA.  Mr. Barnett contends that he suffered injuries as a result of his use of Vioxx.  He also claims that Vioxx contributed to the development the build-up of plaque in his coronary arteries.

A products liability case may be brought under several theories, including negligence, strict liability, and warranty.  In a products liability action, regardless of the theory on which the plaintiff seeks recovery, he must establish three elements: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant.  Under any of these products liability theories, a plaintiff must also prove the product defect was the proximate cause of the injury sustained.  Proximate cause requires proof of both causation in fact and legal cause.  I will explain to you what proximate cause means in a moment.

Mr. Barnett's claim in this case is based upon four alternative or concurrent theories: (1) strict liability; (2) negligence; (3) breach of warranty; and (4) misrepresentation.  Specifically, plaintiff alleges, first, that Merck should be held strictly liable for his injuries because it placed Vioxx on the market with inadequate warnings, making it unreasonably dangerous to consumers.  Second, plaintiff alleges that Merck was negligent in designing and marketing Vioxx.  Third, plaintiff claims that Merck breached express and implied warranties it made in connection with its sale of Vioxx to Mr. Barnett.  Finally, plaintiff alleges that Merck fraudulently and negligently misrepresented the safety and effectiveness of Vioxx to Mr. Barnett and his prescribing doctors.

Merck contends that Vioxx did not cause Mr. Barnett's injuries.  Rather, they were caused by pre-existing coronary artery disease and his own independent risk factors.  Further, Merck contends that its warnings and instructions to Mr. Barnett's prescribing doctors were adequate and complied with the rules of the FDA.  Merck also asserts that it acted reasonably and that it had disclosed to the FDA all relevant Vioxx safety data and risk information as known or knowable based on the reasonably obtainable and reliable information available at the time Mr. Barnett's doctors prescribed Vioxx to him.  Finally, Merck contends that neither Mr. Barnett's doctors nor Mr. Barnett relied on any statements Merck made.

6

In your deliberations, you should note that the mere fact that Mr. Barnett may have been injured, standing alone, does not permit you, the jury, to draw any inference that such injuries were caused by Merck's negligence, fault, or breach of warranty.  You should also note that, although all of plaintiff's claims have been tried together, each is separate from the others, and each party is entitled to have you separately consider each claim.  Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately.

_Authority_: _South Carolina Requests to Charge - Civil_, §§ 32-1, 32-2, 32-3 (as modified).

INSTRUCTION NO. 5

**<u>Products Liability – Proximate Cause</u>**

As I just mentioned, under any of Mr. Barnett's products liability claims – whether strict liability, negligence, or breach of warranty – he must establish that Vioxx's alleged defect was the proximate cause of his alleged injuries.

I will now define for you proximate cause. Proximate cause means the efficient cause or direct cause. The law defines proximate cause of an injury to be something that produces a natural chain of events which, in the end, brings about the injury. In other words, proximate cause is the cause without which the injury would not have occurred.

Proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's actions. Legal cause is proved by establishing foreseeability.

The touchstone of proximate cause in South Carolina is foreseeability. That is, foreseeability of some injury from a defendant's conduct is a prerequisite to the conduct being a proximate cause of the injury for which recovery is sought. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of conduct. Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the complained of act.

The law requires only reasonable foresight. When the injury complained of is not reasonably foreseeable in the exercise of due care, there is no liability. It is not necessary for a plaintiff to demonstrate the defendant should have foreseen the particular event which occurred, but merely that the defendant should have foreseen his actions would probably cause injury to someone. Conduct is the proximate cause of an injury if that injury is within the scope of the foreseeable risks of the conduct.

While it is not necessary that the defendant must have contemplated or could have anticipated the particular injury that occurred, liability cannot rest on mere possibilities. Causation based upon a possibility rather than a probability is not sufficient for a plaintiff to recover in a products liability case. If the injury would have happened as a natural and probable consequence even in the absence of defendant's actions, then plaintiff has failed to demonstrate proximate cause. Further, where the cause of plaintiff's injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, plaintiff has failed to carry the burden of establishing that his injuries were the proximate result of the defendant's conduct.

Proximate cause does not mean the sole cause. A defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged injury. However, a plaintiff must show that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough, and when

8

the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

If you find that Mr. Barnett has failed to prove that Merck's actions were a proximate cause of his alleged injuries, you must bring in a verdict for Merck.

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, §§ 32-13, 32-15 (as modified); *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 498-99 (D.S.C. 2001) (applying South Carolina law) ("[A] plaintiff . . . must show that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.  A mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."); *Hurd v. Williamsburg County*, 611 S.E.2d 488, 492 (S.C. 2005) (proximate cause requires proof of both causation in fact and legal cause, and "[c]ausation in fact is proved by establishing the plaintiff's injury would not have occurred 'but for' the defendant's negligence"); *accord Rife v. Hitachi Const. Machinery Co., Ltd.*, 609 S.E.2d 565, 569 (S.C. App. Ct. 2005).

INSTRUCTION NO. 6

**<u>Medical Causation</u>**

In this lawsuit, it is disputed whether or not taking Vioxx at the 25 mg dose caused Mr. Barnett's heart attack or any other injuries alleged by him.  Plaintiff has the burden of proving medical causation by the greater weight of the evidence.   As I have already explained to you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the credible evidence in the case.

In order to meet this burden to show medical causation, plaintiff must first prove that the use of Vioxx at the 25 mg dose for a period of four years is capable of causing the injuries he allegedly sustained.  Plaintiff must next proffer the testimony of a competent medical expert to prove, to a reasonable degree of medical certainty, that Vioxx in fact caused his injuries.

If you find that plaintiff has failed to present sufficient evidence to show that Vioxx both *could have caused* and *did cause* his alleged injuries, then you must also find that Merck is not liable to plaintiff for these injuries.

<u>Authority</u>:  *Disher v. Synthes (U.S.A.)*, 371 F. Supp. 2d 764, 773 (D.S.C. 2005) ("[I]n order to survive summary judgment on the causation issue, plaintiff must not only proffer the testimony of a competent medical expert, but the testimony of a competent medical expert who will testify . . . that the result in question most probably came from the cause alleged" (citation and internal quotation marks omitted)); *Jinks v. Richland County*, 355 S.C. 341, 348-49 (S.C. 2003).

INSTRUCTION NO. 7

## Strict Liability – Introductory Charge

I will now turn to the law governing plaintiff's strict liability claim for failure to warn.  Mr. Barnett claims that Vioxx was sold by Merck in a defective condition unreasonably dangerous to people who were expected to use the product, including himself.  In order to prove this strict liability claim, plaintiff has the burden of showing, by the preponderance or greater weight of the evidence, that: (1) Merck sold Vioxx in a defective condition unreasonably dangerous to the user; (2) Mr. Barnett suffered personal injuries; and (3) Vioxx was the proximate cause of these alleged injuries.

Generally speaking, the doctrine of "strict liability" is a rule under which liability is imposed, without regard to the exercise of reasonable care, on one who sells a product in a defective condition unreasonably dangerous to the user or consumer, for physical harm caused to the ultimate user or consumer, if the seller is engaged in the business of selling such product, and the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Under strict liability, recovery by a plaintiff may be had even though a seller has exercised all possible care in the preparation and sale of his product.  The exercise of due care in the manufacture of a product will not relieve the manufacturer of liability.  Rather, a plaintiff need only prove the product was defective and unreasonably dangerous when it was placed in the stream of commerce.  Thus, the focus is upon the product itself, not the conduct of the manufacturer.

But not every defect in a product subjects a seller to strict liability.  The defect must cause the product to be unreasonably dangerous.  Because a seller is not an insurer of the absolute safety of its products, the product need not be accident-proof.  It is enough that it is reasonably safe or, to state it differently, that it is not in a defective condition and unreasonably dangerous to the user.  Strict liability is imposed for only those products that are defective and unreasonably dangerous.

In applying the rule of strict liability, two tests have evolved to determine whether a product is in a defective condition unreasonably dangerous for its intended use.  The first test is whether the product is unreasonably dangerous to the ordinary consumer or user given the conditions and circumstances that foreseeably attend the use of the product.  Under the second test, a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product.  The state of the art and industry standards are relevant to show both the reasonableness of the design and that the product is dangerous beyond the expectations of the ordinary consumer.

While any product can be made safer, the fact that it is not does not automatically mean the product is unreasonably dangerous.  Strict liability is not equivalent either to absolute liability or to insurance of the safety of the product's user.  Likewise, the mere fact that a product carries some risks does not demonstrate the manufacturer's negligence.  Nor does it establish that the

11

product was defective.  Rather, in the final analysis, we have another of the law's balancing acts and numerous factors must be considered, including:

> (1) the usefulness and desirability of the product;
> (2) the cost involved for added safety;
> (3) the likelihood and potential seriousness of injury; and
> (4) the obviousness of danger.

You must balance these factors to determine whether Vioxx was "unreasonably dangerous."

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, §§ 32-41, 32-42 (as modified); *Allen v. Long Mfg. N.C., Inc.*, 505 S.E.2d 354, 356 (S.C. Ct. App. 1998); *Schall v. Sturm, Ruger Co.*, 300 S.E.2d 735, 736 (S.C. 1983) ("Strict liability in tort for sellers of products in a defective condition unreasonably dangerous to users . . . became the law of South Carolina by the enactment of 1974 Act No. 1184 [the Deceptive Products Act, S.C. CODE ANN. §§ 15-73-10 – 15-73-30].").

820837v.1

INSTRUCTION NO. 8

## Strict Liability – Failure to Warn

Mr. Barnett's strict liability claim is based on Merck's alleged failure to warn about the cardiovascular risks allegedly associated with Vioxx.

A product, although faultlessly made, may be deemed "defective" when there is a failure to provide warnings or instructions that are adequate to safeguard against mishaps or injuries. When a manufacturer has reason to anticipate danger from a use of its product, it has a duty to warn consumers and a duty to insure that its warnings are adequate. The manufacturer's duty is to exercise reasonable care. It is treated as an expert in its particular field and is under a continuing duty to keep abreast of the current state of knowledge with respect to its product as gained through research, reports and other available methods.

A manufacturer of a product is liable for failing to warn if:

> (1) the manufacturer knows or has reason to know the product is, or is likely to be, dangerous for its intended use;
> (2) the manufacturer has no reason to believe that the user will realize the potential danger; and
> (3) the manufacturer fails to exercise reasonable care to inform the user of the product's dangerous condition or of facts which make it likely to be dangerous.

On the other hand, a manufacturer may prevent a product from being unreasonably dangerous if it places an adequate warning on the product regarding its use. A product is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use. That is, a product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous. South Carolina law does not require that a manufacturer refine a product which is made safe for use by an adequate warning so that the product does not need a warning to be safe.

When an adequate warning is given, the manufacturer may assume that it will be heeded by the product user. If the user ignores the warning, the manufacturer is not liable for any injuries caused by the use of the product. Further, if the user is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery under South Carolina law.

Many products – such as prescription drugs – cannot be made completely safe for use. If such products are useful and desirable, and they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective. Just because a product can be made more safe, that factor alone does not render the product "unreasonably dangerous."

13

If you find the warnings Merck gave regarding the alleged cardiovascular risks associated with Vioxx are adequate, you may infer that Vioxx was not in a defective condition nor was it unreasonably dangerous at the time Mr. Barnett used Vioxx.

If the greater weight of the evidence does not support Mr. Barnett's strict liability claim, your verdict on this cause of action must be for Merck.

Authority:   Anderson, *South Carolina Requests to Charge - Civil*, §§ 32-5, 32-7, 32-45, 32-46 (as modified).

14

INSTRUCTION NO. 9

**<u>Strict Liability – Learned Intermediary Doctrine</u>**

Under South Carolina law, a manufacturer has no duty to warn of potential risks or dangers inherent in a product if the product is distributed to what we call a "learned intermediary," such as a physician, who is in a position to understand and assess the risks involved, to inform the ultimate user of the risks, and to, thereby, warn the ultimate user of any alleged inherent dangers involved in the product.

It is not the specific knowledge of the intermediary that is relevant. Rather, the question is whether the manufacturer acted reasonably in assuming that the intermediary would recognize the danger and take precautions to protect the ultimate user of the product.

Thus, if you find that Merck adequately warned Mr. Barnett's prescribing physicians, you must find for Merck on his strict liability failure to warn claim.

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, § 32-8 (as modified); *Odom v. G. D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992) ("It is plain that [plaintiff's] claim is governed by the 'learned intermediary' doctrine."); *see also Madison v. American Home Prods. Corp.*, 595 S.E.2d 493, 496 (S.C. 2004) (acknowledging the learned intermediary doctrine in *dictum*); *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1230-32 (4th Cir. 1984) ("Although the South Carolina Supreme Court has not addressed the issue, we conclude it would adopt the rule, generally accepted and supported by sound policy, restricting the manufacturer's duty to warn to the prescribing physician."); *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 331-32 (S.C. Ct. App. 1995) (recognizing the "sophisticated user" defense in a non-pharmaceutical context).

820837v.1

INSTRUCTION NO. 10

**Negligence**

I will now turn to the law governing plaintiff's negligence claim.  To prove a defective condition due to negligence, Mr. Barnett bears the additional burden of demonstrating that Merck failed to exercise due care in some respect.  The focus is on Merck's conduct, and liability is determined according to fault.  The mere fact that use of Vioxx carries some risk does not demonstrate Merck's negligence or tend to establish the product was defective.

In order to decide this claim, you must determine whether Merck was negligent in designing or marketing Vioxx and, if so, whether such negligence was the proximate cause of Mr. Barnett's alleged injuries.

There are three essential elements of Mr. Barnett's negligence cause of action.  He has the burden to prove all of these elements by the preponderance of the evidence:

> (1) He must show that Merck designed or marketed Vioxx in a negligent manner;
> (2) He must show that he suffered injury to his person; and
> (3) He must prove Merck's negligence was the proximate cause of his injuries.

The word "negligence" is an integral part of this matter.  Negligence is defined as the absence of due care, the want of due care or ordinary care.  The word "carelessness" conveys the same idea as negligence.   In this case, it is measured according to the due care a pharmaceutical manufacturer of ordinary prudence would exercise in the same circumstances.

Usually, the degree of care required depends upon, and must be commensurate with, the risk of harm flowing from normal use of the product, or is proportionate to the seriousness of the consequences reasonably to be anticipated.  While an extraordinary duty of care is not required of a manufacturer, the duty on the part of the manufacturer to exercise due care must be commensurate with the risk of danger involved.

In determining whether the legal standard of care has been satisfied, a manufacturer is held to the skill of an expert in its business and to an expert's knowledge of the materials and processes in its industry.  Manufacturers have a duty to possess expert knowledge in the field of their products and to exercise reasonable care in placing these products on the market, which duty must be met by inspection and testing.  A manufacturer owes a duty to conduct adequate tests and inspections of its products such as will reveal latent defects or defects that are not visible or apparent upon a reasonable inspection of the product.  The failure to exercise reasonable care in fulfilling any of these duties constitutes negligence.

The duty of care that binds a manufacturer is a duty of due, ordinary, and reasonable care to see that the product is free from any potentially dangerous defect; that is, to see that there is no unreasonable risk of personal injury to persons using the products for purposes that the manufacturer may reasonably expect they will be employed.  This duty includes a duty to use

ordinary care to test, analyze, and inspect the manufacturer's products, and to keep abreast of scientific knowledge, advances, and research in the product field.  This does not mean that a manufacturer has a duty to makes its product accident-proof or is an insurer of its safety or utility.  Rather, the manufacturer is under a duty only to manufacture its product in such manner that it will be reasonably fit for the purpose or purposes for which it is intended to be used.

Mr. Barnett must prove that, in designing and marketing Vioxx, Merck failed to exercise due care.  In so doing, he must present evidence of a feasible design alternative.  Feasibility depends on a risk utility analysis, taking into account the factors I mentioned before: (1) the usefulness and desirability of the product; (2) the cost involved for added safety; (3) the likelihood and potential seriousness of injury; and (4) the obviousness of danger.

In order to recover on this claim, it is incumbent upon Mr. Barnett to prove that Merck was negligent in one or more of the particulars as alleged in his complaint.  It is not required that he prove them all, but it is absolutely essential that he prove at least one.  If the greater weight of the evidence does not support Mr. Barnett's negligence claim, your verdict on this cause of action must be for Merck.

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, §§ 32-4; 32-14; 32-20 (as modified); *Allen v. Long Mfg. N.C., Inc.*, 505 S.E.2d 354, 356 (S.C. Ct. App. 1998); *Livingston v. Noland Corp.*, 362 S.E.2d 16, 18 (S.C. 1987) (manufacturer of a product liable for negligent failure to warn if: (i) it knows or has reason to know the product is or is likely to be dangerous for its intended use; (ii)  is has no reason to believe the user will realize the potential danger; and, (iii) it fails to exercise reasonable care to inform of its dangerous condition); *Bragg*, 462 S.E.2d at 330; *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 495-96 (D.S.C. 2001) (applying South Carolina law) ("whether the requirement that evidence of a safer alternative design is characterized as an element of Plaintiff's products liability case or a factor to be weighed in the risk-utility analysis, it is clear the South Carolina law requires that Plaintiff provide such evidence in order to survive summary judgment"); *see also Anderson v. Green Bull, Inc.*, 471 S.E.2d 708, 711 (S.C. Ct. App. 1996) ("while it is true that almost any product can be made safer, the pertinent inquiry is whether the product as supplied is unreasonably dangerous"); *Claytor v. General Motors Corp.*, 286 S.E.2d 129, 132 (S.C. 1982); *accord,  Disher v. Synthes (U.S.A.)*, 371 F. Supp. 2d 764, 771-72 (D.S.C. 2005) (applying South Carolina law) (noting that "conceptual design theories" do not suffice).

17

INSTRUCTION NO. 11

**<u>Breach of Warranty – Introductory Charge</u>**

Let me now discuss the law governing plaintiff's claims for breach of warranty.  Mr. Barnett's complaint alleges Merck breached certain express and implied warranties made in connection with the sale of Vioxx to Mr. Barnett.

A warranty is a statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, although collateral to the express object of the sale, having reference to the character, quality, fitness, or title of the goods, and by which the seller promises or undertakes to insure that certain facts are or shall be as he then represents them.

A warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the contract of sale, upon which it is intended that the buyer shall rely in making the purchase.  A warranty is implied when the law derives it by implication or inference from the nature of the transaction or the relative situation or circumstances of the parties.

To recover under his breach of warranty claims, Mr. Barnett must prove four essential elements:

> (1) the existence of an express or implied warranty;
> (2) a breach of the express or implied warranty;
> (3) a causal connection between Merck's breach and plaintiff's injuries; and
> (4) the extent of loss proximately caused by the Merck's breach.

If you find that there was an implied warranty or an express warranty, or both, then you should go to the second element and determine whether the warranty was  breached.  If you conclude that the warranty was breached, then you should  determine whether Mr. Barnett was injured as a proximate result of the breach of warranty.  Liability is imposed for an injury proximately caused by a breach of warranty.

If the greater weight of the evidence does not support Mr. Barnett's breach of warranty claims, your verdict on these causes of action should be for Merck.  I will now explain each of these claims to you.

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, §§ 32-31, 32-32 (as modified).

18

INSTRUCTION NO. 12

**<u>Breach of Warranty – Express Warranty</u>**

As to express warranty, plaintiff claims that: (1) in selling Vioxx, Merck made express warranties regarding Vioxx; and (2) these warranties were breached to plaintiff's detriment.

Any affirmation of fact or promise, whether oral or written, made by the seller to the buyer, whether directly or indirectly, which relates to the product and becomes part of the basis of the bargain between the seller and the buyer concerning the product creates an express warranty that the product conforms to the affirmation or promise.  Moreover, any description of the product that is made part of the basis of the bargain between the seller and the buyer creates an express warranty that the product shall conform to the description.

It is not necessary to the creation of an express warranty that the seller, or its agents/employees, use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the product or a statement purporting to be merely the seller's opinion or commendation of the product does not create a warranty.

When goods do not conform to a promise or an affirmation of fact made by a seller, or the goods do not conform to a description, sample, or model, which is made part of the basis of the bargain, then a seller has breached an express warranty.

Before liability on a theory of express warranty can be imposed on Merck, plaintiff must establish the following elements:

> (1) an affirmation of fact or a promise relating to Vioxx by Merck;
> (2) the natural tendency of the affirmation or promise was to induce Mr. Barnett to purchase Vioxx;
> (3) such affirmation of fact or promise became a part of the basis of the bargain;
> (4) Mr. Barnett purchased Vioxx in reliance thereon;
> (5) Merck breached the express warranty; and
> (6) the breach proximately caused injury to Mr. Barnett.

In other words, if you should find that Merck made an affirmation of fact or promise relating to Vioxx or a description of Vioxx, as distinguished from an affirmation merely of the value of the product or a statement purporting to be merely Merck's opinion of the product, and this affirmation of fact or promise or description became at least part of the bargain between Merck and Mr. Barnett, you will have found an express warranty existed.  In the event you should further find that Vioxx was not as promised or described, then Merck breached its express warranty and Mr. Barnett would be entitled to recover on this claim if the breach proximately caused injury to him.  If, on the other hand, the greater weight of the evidence does not support Mr. Barnett's express warranty claim, your verdict on this cause of action should be for Merck.

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, § 32-33 (as modified).

19

INSTRUCTION NO. 13

**<u>Breach of Warranty – Implied Warranty of Merchantability</u>**

As to implied warranty, plaintiff claims that Merck breached the implied warranty that Vioxx was merchantable.

The law implies that in every sale of a product by a merchant with respect to products of that kind the seller warrants to the buyer that the product shall be merchantable or fit for the ordinary purposes for which such products are used. If the product is not fit for such purposes because its use for those purposes is or is likely to be detrimental because of a defect, then the seller has breached its warranty of merchantability and is liable to the buyer or any other person who may be expected to use or be affected by the product and who is damaged as a direct and proximate result of that breach. To be merchantable, a product must be at least such as would pass without objection in the trade under the contract description.

An implied warranty of merchantability is breached when the product is defective to a normal buyer making ordinary use of the product.

Here, if you find that Vioxx was not merchantable, then Merck has breached an implied warranty. If, on the other hand, the greater weight of the evidence does not support Mr. Barnett's implied warranty claim, your verdict on this cause of action should be for Merck

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, § 32-34 (as modified).

20

820837v.1

INSTRUCTION NO. 14

**"Deceit by Concealment"**

Let me now discuss the law governing plaintiff's final claims, "deceit by concealment" and negligent misrepresentation.

To recover under a cause of action for "deceit by concealment," a fraud-based claim, Mr. Barnett must prove the following nine elements:

> (1) a representation by Merck;
> (2) the falsity of the representation;
> (3) the materiality of the representation;
> (4) Merck's knowledge of its falsity or a reckless disregard for its truth or falsity;
> (5) Merck's intent that the representation be acted upon by plaintiff;
> (6) Plaintiff's ignorance of its falsity;
> (7) Plaintiff's reliance and his prescribing physicians reliance on its truth;
> (8) Their right to rely thereon; and
> (9) Plaintiff's consequent and proximate injury.

Unlike Mr. Barnett's other claims, each and every one of these elements must be proven by clear, cogent, and convincing evidence rather than by a preponderance of the evidence.

As I have already explained to you, clear and convincing evidence is an elevated standard of proof, which lies between the lesser standard of "preponderance of the evidence," used in most civil cases, and the higher standard of "beyond a reasonable doubt," which is required in criminal cases. Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief as to the allegations sought to be established.

When the law places upon a party a burden of proof by clear and convincing evidence, the law means that the evidence is not ambiguous, doubtful, equivocal, or contradictory. Clear and convincing evidence requires that the evidence must be found to be credible, the facts to which the witnesses testify must be distinctly remembered, the testimony must be precise and explicit, and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

Failure to prove any element of fraud by this standard is fatal to recovery. Fraud is never presumed in the law.

To establish actionable fraud, there must first be a false representation. The representation must be a statement or a set of actions which concerns an existing or pre-existing fact. The false representation must be one of fact as distinguished from the mere expression of an opinion. The false representation must be predicated upon misstatements of fact rather than upon an expression of opinion, an expression of intention, or an expression of confidence that a bargain

21

will be satisfactory. The distinction between a matter of fact and a matter of opinion is generally characterized by what is susceptible of exact knowledge when the statement is made. Statements of opinion, predictions of future events, mere puffing, sales talk, and broken promises normally do not amount to fraud.

The representation must be false. A fraudulent act is characterized by dishonesty in fact, unfair dealing, or unlawful appropriation of another's property by design. Bad faith is the test of fraud. Nondisclosure, or silence, becomes fraudulent when it is the duty of the party having knowledge of the facts to uncover them to the other. The truth or falsity of a representation must be determined as of the time it was made or acted on and not at some later date.

A fraudulent or intentional misrepresentation may be made either by an affirmative statement that is itself false, or by concealing or not disclosing certain facts that render the facts that are disclosed misleading. Generally, the failure to disclose is not necessarily a misrepresentation. Yet, at times, nondisclosure may serve as the "representation" underlying fraud. This can occur in four ways:

> (1) If the defendant chooses to speak, he must disclose enough of what he knows to prevent his words from being misleading. In situations where the defendant has made an incomplete or ambiguous statement or half truth that he knew was misleading, he is then under a duty to clarify and to disclose the whole truth.
> (2) If the defendant subsequently acquires new information that makes his original statement misleading, he is under a duty to disclose the after-acquired facts.
> (3) If there is a confidential or fiduciary relationship, the disclosure requirements may be greater. A duty to disclose may arise when one party has information the other party has a right to know because of a fiduciary or other relation of trust or confidence between them. If the plaintiff and the defendant are in some special fiduciary relationship to each other, there is a duty of full disclosure.
> (4) The defendant may be held to a higher standard if he has a special knowledge not available to the plaintiff and such knowledge would probably affect the plaintiff's decision. A duty to disclose can arise when one party to a transaction has superior knowledge of certain information and that information is not readily available to the other party and the first party knows the second party is acting on the basis of the mistaken knowledge.

It is not essential that a misrepresentation be directly made in order to find fraud. If a false impression is made by words or acts in order to mislead and has such effect, it may be sufficient. Fraudulent representations may also be by arts or artifices which are calculated to deceive. Concealment, when a duty to disclose is imposed on the defendant, may form the basis of a charge of fraud, as in the case of active misrepresentations.

Nondisclosure becomes fraudulent only when it is the duty of the party having knowledge of the facts to uncover them to the other party to the transaction. Thus, nondisclosure is fraudulent when there is a duty to speak. The duty to disclose may be reduced to three distinct classes:

22

> (1) where it arises from a pre-existing definite fiduciary relation between the parties;
> (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied;
> (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

Where material facts are accessible to the seller only and he knows that they are not within the reach of the diligent attention, observation and judgment of the purchaser, the seller is bound to disclose such facts and make them known to the purchaser.  When in such a situation the seller fails to disclose these facts to the buyer, the seller's nondisclosure of these facts is equivalent to fraudulent concealment.

The representation must also be material.  If an objective, reasonable person using the misrepresentation would have viewed the representation as sufficiently important and significant that it would have played a role in the decision to enter into a contractual relationship, the representation may be deemed material.  The matter is material if:

> (1) a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or
> (2) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

The knowledge of falsity extends to statements made in reckless disregard of the truth.  Reckless disregard exists where one makes a statement and knows he lacks the knowledge necessary to be confident that the statement is true.

A defendant may be held liable for misrepresentations made to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the fraudulent misrepresentation.

To recover for fraud in a pharmaceutical case, the plaintiff and his prescribing physicians must have relied on the alleged misrepresentation.  If they knew the misrepresentation was false, there is no cause of action because there could not have been any reliance on the truth of the statement.  A victim of fraud has a right to rely on a misrepresentation so long as his reliance is not reckless or grossly negligent.  The legitimacy of the reliance on the misrepresentation is an issue to be decided by you, the jury.  There is no cause of action for a fraudulent statement unless the plaintiff is injured.

The right to rely on the representation is a necessary element that must be proved in a fraud action.  The right to rely must be determined in light of the plaintiff's duty to use reasonable

23

prudence and diligence under the circumstances in ascertaining the truth with respect to the representations made to him.

The principle of the right of reliance upon representations is closely bound up with a duty on the part of the plaintiff to use some measure of protection and precaution to safeguard his own interest. With respect to the right to rely upon representations, every person must use reasonable diligence for his own protection. In other words, a plaintiff must exercise reasonable prudence for his own protection even if the defendant made representations that were false and fraudulent. The plaintiff cannot rely on the misstatement of fact if the truth is easily within his reach.

There is no right to rely, as required to establish fraud, where there is no confidential or fiduciary relationship and there is an arm's length transaction between mature, educated people. This is especially true in circumstances where one should have utilized precaution and protection to safeguard one's interests.

If you find that the plaintiff and his prescribing physicians relied upon Merck's statements, you must determine:

>    (1) whether reliance upon the representation was justifiable or excusable;
>    (2) what constitutes reasonable prudence and diligence with respect to such reliance; and
>    (3) what conduct constitutes a reckless or conscious failure to exercise such prudence.

In making these determinations, you may take into consideration:

>    (1) the form and materiality of the representation;
>    (2) the respective intelligence, experience, age, mental and physical conditions of the parties; and
>    (3) the relation and respective knowledge and means of knowledge of the parties.

If you find from the testimony that Merck committed fraud, but then you also find plaintiff failed to exercise ordinary diligence or due care in protecting himself, plaintiff may not recover. Every person must use reasonable prudence and diligence for his own protection.

If the greater weight of the evidence does not support Mr. Barnett's "deceit by concealment" claim, your verdict on this cause of action should be for Merck.

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, §§ 18-1, 18-2, 18-3, 18-4, 18-5, 18-8, 1-3 (as modified); *Pitts v. Jackson Nat. Life Ins. Co.*, 574 S.E.2d 502, 510 (S.C. Ct. App. 2002); *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003).

INSTRUCTION NO. 15

**Negligent Misrepresentation**

Let me now discuss the law governing plaintiff's negligent misrepresentation claim.  To recover on this claim, Mr. Barnett must prove:

(1) Merck made a false representation to plaintiff;

(2) Merck had a pecuniary interest in making the statement;

(3) Merck owed a duty of care to see that he communicated truthful information to the plaintiff;

(4) Merck breached that duty by failing to exercise due care;

(5) Plaintiff justifiably relied on the representation; and

(6) Plaintiff suffered a pecuniary loss as a direct and proximate result of his reliance on Merck's representation. "Pecuniary interest" is defined as a "direct interest related to money in an action or case."

There must be a false representation of material fact.  The representation must relate to a present or pre-existing fact and be false when made.  The representation cannot ordinarily be based on unfulfilled promises or statements as to future events.   A mere statement of opinion, commendation of goods or services, or expression of confidence that a bargain will be satisfactory does not give rise to liability.   There is no liability for casual statements, representations as to matters of law, or matters which the plaintiff could determine for himself in the exercise of due diligence.

Evidence that the statement at issue was made in the course of the defendant's business, profession, or employment is sufficient to show the element of pecuniary interest, even though the defendant does not actually receive consideration for it.

A duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions.  It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care.   The duty of care in negligent misrepresentation arises when the defendant possesses expertise or special knowledge that would ordinarily make it reasonable for the plaintiff to rely on the defendant, and the defendant has a pecuniary interest in the transaction.  In negligent misrepresentation, the duty is not one requiring the defendant to take every possible care, much less to be right.  It is simply the duty to exercise the care a reasonable person would under the circumstances.

For purposes of proving negligent misrepresentation, evidence that the statement was made in the course of the defendant's business, profession, or employment is sufficient to show the defendant's pecuniary interest in making the statement, even though the defendant received no consideration for it. A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction.

25

The duty of care is not a duty to take every possible care, nor is it a duty to be right. It is the duty to exercise the care a reasonable person would exercise under the circumstances. The plaintiff must demonstrate the defendant breached the duty by failing to exercise due care.

In addition, the plaintiff must present evidence of reliance that is justifiable. The plaintiff must not only rely upon the negligently made misrepresentation, but that reliance must be justifiable under the circumstances. Accordingly, the plaintiff must establish that his reliance on the misrepresentation was reasonable. There can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter. A determination of justifiable reliance involves the evaluation of the totality of the circumstances, including the positions and relations of the parties.

Recovery in negligent misrepresentation cases is based upon negligent conduct and predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation. The plaintiff must show a pecuniary loss and that the breach of duty was the proximate cause of the injury.

If the greater weight of the evidence does not support Mr. Barnett's negligent misrepresentation claim, your verdict on this cause of action should be for Merck.

Authority:   Anderson, *South Carolina Requests to Charge - Civil*, §§ 30-1, 30-2, 30-3 (as modified); *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 504 (S.C. Ct. App. 2003).

820837v.1

INSTRUCTION NO. 16

**Merck's Voluntary Withdrawal of Vioxx**

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004.  For purposes of plaintiff's products liability claims, you may not consider that fact as evidence that Vioxx was defective or defectively designed or that Merck was negligent or acted culpably.  You also may not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause injuries such as those alleged by Mr. Barnett.

Authority:  5-9 *Modern Federal Jury Instructions-Civil*, P 2.10 (as modified); FED. R. EVID. 105; *Chase v. Gen. Motors Corp.*, 856 F.2d 17, 21 (4th Cir. 1988); *In re Propulsid Prods. Liability Litig.*, No. MDL 1355, 2003 WL 1090235, at *2-3 (E.D. La. Mar. 11, 2003); *Villari v. Terminex Int'l, Inc.*, 692 F. Supp. 568, 575-76 (E.D. Pa. 1988); *Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 624 (D.N.J. 1982).

820837v.1

INSTRUCTION NO. 17

**<u>Consider Damages Only if Necessary</u>**


If Mr. Barnett has proven one or more of his claims against Merck, you must determine the damages to which he is entitled.  You should not interpret the fact that I give you instructions about plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.  It is your task first to decide whether Merck is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that Merck is liable and that plaintiff is entitled to recover money from Merck.


<u>Authority</u>:  *Pattern Jury Instructions: Fifth Circuit, Civil Cases*, § 15.1 (as modified).

820837v.1

INSTRUCTION NO. 18

**Damages**

If your verdict is for Merck, you will not consider the matter of damages.  But if you find for plaintiff on any of his claims, you should determine and write on the verdict form, in dollars, the total amount of loss which the preponderance of the evidence shows he sustained as a result of the incident complained of, including any such damage as plaintiff is reasonably certain to incur in the future.

Damages must be proved with a reasonable degree of certainty. The evidence presented by the plaintiff must enable you, the jury, to determine what amount is fair, just and reasonable.  The plaintiff bears the burden of proving by the preponderance of the evidence that he is entitled to compensatory damages.

You may award compensatory damages only for injuries that plaintiff proves were actually caused by Merck's allegedly wrongful conduct.  The damages that you award must be fair compensation for all of plaintiff's damages, no more and no less.  Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant.  You should not award compensatory damages for speculative injuries, but only for those injuries which plaintiff has actually suffered or that plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  The existence, causation, or amount of damages cannot be left to conjecture, guesswork or speculation.  On the other hand, the law does not require that plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  The evidence presented by the plaintiff must enable you, the jury, to determine what amount is fair, just and reasonable.  Damages must be susceptible of ascertainment with a reasonable degree of certainty.

The basic measure of compensatory damages is the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury. Compensatory damages include compensation for all injuries which are naturally the proximate result of the alleged wrongful conduct of the defendant.

If you find for plaintiff on his strict liability claim alone, note that the measure of damages under such a claim is limited to actual damages in satisfaction of, or in recompense for, loss or injury sustained.

If you find for plaintiff on his negligence claim, it is proper for you to consider and award past, present, and future damages for:

> (1) loss of income;

820837v.1

(2) loss or impairment of earning capacity;
(3) out-of-pocket expenses;
(4) medical expenses;
(5) any future damages resulting from permanent injuries;
(6) loss of family services;
(7) deprivation of normal life expectancy;
(8) alteration of lifestyle;
(9) mental anguish;
(10) mental distress;
(11) apprehension;
(12) anxiety;
(13) emotional injury;
(14) depression;
(15) pain and suffering; and
(16) loss of enjoyment of life.

If you find for plaintiff on his warranty claims, you may award incidental and consequential damages only.  Recovery may be had for personal injuries in an action on a breach of warranty, where such injuries are the natural and probable result of the breach, and are not too remote, provided they were within the contemplation of the parties.

If you find for plaintiff on his fraud-based claims, you may award damages for the actual pecuniary loss sustained by plaintiff.  As a general rule, one injured by the commission of fraud is entitled to recover such damages as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded.  The recovery is restricted to such damages as were the natural and proximate consequences of the fraud, and such as can be clearly defined and ascertained, including those which were actually or presumptively within the contemplation of the parties when the fraud was committed.  You should not speculate as to the actual damages, but rather should award an amount that can be clearly defined and ascertained by the evidence.

Mr. Barnett bears the burden of proving the measure of his damages by the preponderance of the evidence.

Authority:  5-5 *Modern Federal Jury Instructions-Civil*, P 15.2-15.7 (as modified); Anderson, *South Carolina Requests to Charge - Civil*, §§ 13-3, 13-10, 18-10, 32-39, 32-40, 32-48 (as modified).

820837v.1

INSTRUCTION NO. 19

**Elements of Damages – Loss of Earning Capacity**

The loss or impairment of earning capacity caused by personal injury is a proper element of compensation.

"Earning capacity" refers to the capability of a person to sell his labor or services in any market reasonably accessible to him, taking into consideration his general physical functional impairments resulting from acts and conduct of the defendant.   Earning capacity does not necessarily mean the actual earnings that one who suffers an injury was making at the time the injuries were sustained, but refers to that which, by virtue of the training, experience, and business acumen possessed, an individual is capable of earning.

"Loss of earning capacity" refers to damage to one's ability to earn wages in the future.  In determining the amount of compensation due to the plaintiff for loss or impairment of earning capacity, you shall consider:

> (1) loss of future earning power, which requires a consideration of all matters that relate to the issue of any impairment;
> (2) the effect which the impairment will have on the plaintiff's capacity to work;
> (3) the extent to which the disability will impair the plaintiff's earning capacity;
> (4) the present value of all losses due to plaintiff's impaired earning power and such physical pain and suffering as reasonably certain will, of necessity, result in the future from the injuries to the plaintiff;
> (5) evidence of what the plaintiff had previously earned when employed in the past is a factor upon which to base any loss or impairment of earning capacity; it is not required that plaintiff be employed at the time of injury in order to recover.

In determining the amount to be awarded for impaired earning capacity, you should consider the health of the injured party and his mental and physical ability to maintain himself and his family before the injury, as compared with his condition in these respects afterward.  The extent of the impairment of earning capacity is to be arrived at by comparing what the injured party was capable of earning at or before the time of the injury with what he was capable of earning after it occurred.

If the plaintiff's injury and impaired or lost earning capacity are permanent, recovery for the lost or impaired earning capacity should be granted for the plaintiff's life expectancy.  In awarding damages for loss or impairment to earning capacity, the law provides that a person who is injured may recover for the loss or diminution of his earning capacity during his entire expectancy of life and is entitled to such amount as will compensate him for his loss.  Therefore, if you determine the plaintiff is entitled to damages for impairment or loss of earning capacity, then you shall calculate such damages using the South Carolina life expectancy table as a guide.

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, § 13-4 (as modified).

820837v.1

INSTRUCTION NO. 20

## Elements of Damages – Medical Bills

In personal injury actions, the general rule is that the plaintiff may recover for the necessary and reasonable expenses caused by the injury, such as amounts necessarily incurred for medicine, medical services, hospital expense and care, and nursing.  A person who suffers personal injuries because of the negligence of another is entitled to recover the reasonable value of medical care and expenses incurred for the treatment of the injuries to the time of trial, as well as the cost of those reasonably certain to be incurred in the future.  Accordingly, a plaintiff may recover amounts incurred for past and future medical care, including hospital, physician, and nursing care costs; medicine; and other out-of-pocket and anticipated expenses, such as vocational, physical and other rehabilitation efforts.  Recovery for medical expenses is controlled by what the services rendered were reasonably worth and not by what was actually paid or contracted to be paid.

If you determine from the evidence and under the law as I have instructed you that the plaintiff is entitled to recover damages, including medical, hospital, or other health care costs, then the plaintiff can only recover such sums as you determine from the evidence to be both reasonable and necessary.  While the amount actually charged and incurred may be considered by you, you are not bound by that amount. You must find only such sum as is reasonable and necessary.

To recover for future medical expenses, the plaintiff must prove such expenses are reasonably certain to result in the future from the injury giving rise to the lawsuit.

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, § 13-5 (as modified).

32

INSTRUCTION NO. 21

**Elements of Damages – Mental Anguish**

An injured party may recover for mental anguish brought about by bodily injury and suffering. Where a party's negligence is directly responsible for physical injury to another, the injured party may recover both for actual physical injury sustained and for concomitant mental and emotional suffering which flow as a natural consequence of the wrongful act.

When connected with a physical injury, the term "mental anguish" includes both the resultant mental sensation of pain and also the accompanying feelings of distress, fright, and anxiety. That is, mental anguish covers not only the pain associated with the injury but also the mental reaction to that pain and to the possible consequences of the injury.  "Mental anguish" is more than mere disappointment, anger, worry, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and humiliation. "Mental anguish" can be composed of fright, nervousness, grief, anxiety, worry, mortification, humiliation, embarrassment, terror, or ordeal.

If you find the injured party is entitled to recover damages, you may consider as an element of those damages such mental anguish as you find, to a reasonable certainty, will occur in the future as a result of the injuries.  In assessing mental anguish, you may take into account anxiety or worry about the possible future occurrence or condition resulting from the injuries that the plaintiff received, if you are satisfied to a reasonable certainty that the plaintiff will suffer such anxiety and worry.  You may award damages for mental anguish where the evidence shows, for example, that the plaintiff suffered shock, fright, emotional upset, and/or humiliation as the result of the defendant's negligence.

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, § 13-7 (as modified).

33

INSTRUCTION NO. 22

**<u>Elements of Damages – Pain and Suffering</u>**

Pain and suffering is a material element of damages on which a recovery may be based.  The plaintiff is entitled to compensation for his pain and suffering directly resulting from the wrongful acts of the defendant.

An award for pain and suffering compensates the injured person for the physical discomfort and the emotional response to the sensation of pain caused by the injury itself.  In making an estimate of damages to be awarded for pain and suffering, you may consider:

> (1) the nature and extent of the injuries and the suffering occasioned by them and its duration or prospective duration;
> (2) the age, health, habits, and condition of the injured party before the injury as compared with his condition afterwards;
> (3) the plaintiff's use of sedatives and other drugs to relieve pain and their effect; and
> (4) any aggravation of pre-existing disorders by the incident in question.

Pain and suffering have no market price.  They are not capable of exact measurement, and there is no fixed rule or standard whereby damages for them can be measured.

The amount of damages to be awarded for pain and suffering must be left to the judgment of you, the jury.  Additionally, you may include such damage for pain and suffering as it is reasonably certain will of necessity result in the future from the injury.  Future pain and suffering on the part of the plaintiff in consequence of the injury constitute a proper element of the damages which may be allowed, provided there is the requisite certainty that such pain and suffering will result.

<u>Authority</u>:  Anderson, *South Carolina Requests to Charge - Civil*, § 13-8 (as modified).

34

INSTRUCTION NO. 23

**Elements of Damages – Loss of Enjoyment of Life**

Loss of the capacity to enjoy life, resulting from a personal injury, is a proper element of damages.  If you find evidence of "loss of enjoyment of life," you may award damages for this loss.

Damages for "loss of enjoyment of life" compensate for the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations.  "Loss of enjoyment of life" damages compensate the plaintiff not only for the subjective knowledge that one can no longer enjoy all of life's pursuits, but also for the objective loss of the ability to engage in these activities.

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, § 13-9 (as modified).

INSTRUCTION NO. 24

**Elements of Damages – Future Damages**

A plaintiff cannot recover conjectural or speculative damages.  However, if you find the plaintiff is entitled to a verdict for actual damages, your verdict should include an amount to cover any damages that the evidence shows will be reasonably certain to occur in the future.  Future damages need not be proved to a mathematical certainty and often must be approximated.  These future damages must be the result of the defendant's negligence.  Any future damages that you award must be reduced to their present-day value.

Authority:  Anderson, *South Carolina Requests to Charge - Civil*, § 13-11 (as modified).

820837v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Jury Instructions Proposed By Defendant Merck & Co., Inc. have been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 24th day of July, 2006.

_/s/ Dorothy H. Wimberly_____

820837v.1