# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| This document relates to | * | MAG. JUDGE KNOWLES |
| | * | |
| Gerald Barnett v. Merck & Co, Inc. | * | CASE NO. 02:06cv485 |

### PLAINTIFF'S OPPOSITION TO MOTION AND INCORPORATED MEMORANDUM OF DEFENDANT MERCK & CO., INC. FOR ORDER EXCLUDING THE ADDENDUM TO THE EXPERT REPORT OF DOUGLAS P. ZIPES, M.D.

Plaintiff respectfully submits this opposition to Defendant's request for order excluding the addendum report and "related testimony" of expert Douglas Zipes, M.D.

By way of background, in June, 2006, counsel for Plaintiff Gerald Barnett sent a copy of the medical records and studies performed in connection with Dr. Zipes' medical/legal evaluation to Dr. Mark Karavan out of concern for his health and at the recommendation of Plaintiff's experts. Thereafter, Dr. Karavan examined Plaintiff on June 26, 2006. A few days later when Mr. Barnett reported having chest pain with exercise, Dr. Karavan scheduled him for an out-patient cardiac catheterization on July 10, 2006. On July 8, 2006, Mr. Barnett presented to the emergency room with chest pain when his pain did not subside with nitroglycerine. He was admitted to hospital.

On July 10, 2006, Mr. Barnett underwent a cardiac catheterization performed by Dr. Karavan. Based upon the findings of the procedure, including the occluded bypass graft to the Ramus Intermedius coronary artery, Dr. Karavan performed a balloon angioplasty and placed

an intra-coronary stent to his Ramus Intermedius artery.  Mr. Barnett recovered in CCU and was discharged home in stable condition and without further chest pain on July 11, 2006. Plaintiff's counsel notified Defense counsel of Mr. Barnett's hospitalization as well as the procedures he underwent.

At the request of Defense counsel, Plaintiff agreed to produce Douglas Zipes, M.D. for further deposition regarding Mr. Barnett's current status, recent hospitalization, cardiac procedures and the events leading up to the same.  On July 19, 2006, Defense counsel took the supplementary deposition of Dr. Zipes.

In an attempt to fully disclose Dr. Zipes' opinions based upon Mr. Barnett's recent hospitalization and current status, Dr. Zipes' prepared a short 3-page addendum to his expert report which was presented to Defense counsel at the deposition. The vast majority of the report was a recitation of previously disclosed opinions of Dr. Zipes--as the opinions now relate to the recent cardiac events.  Counsel was afforded full opportunity to read the report and question Dr. Zipes regarding his opinions as stated in the addendum.  Additionally, counsel for plaintiff permitted Defense counsel to question well beyond the anticipated time limit.

Defendant now brings the instant motion in an attempt to preclude Dr. Zipes opinions at trial claiming that his report is untimely, having little content pertaining to recent events and a mere recount of other experts' opinions.  Defendant's request is without merit because: 1) the report pertains to his current medical status and hospitalization which occurred well after the May 22, 2006 cut off date for expert report; 2) Plaintiff is under a duty to provide a supplemental report because the recent cardiac events render the initial expert report incomplete relating to his issues material in this case;  3) the entirety of the report pertains to Dr. Zipes opinions relating to Plaintiff's recent cardiac events and the foundation for these

2

opinions, or a recitation of previously stated opinions and; 4) an expert may rely on hearsay statements in formulating their opinions, which are therefore, not prejudicial to Defendant.

### I. PLAINTIFF IS UNDER A DUTY TO SUPPLEMENT HIS EXPERT REPORT PURSUANT TO FRCP RULE 26(e)(1) BECAUSE RECENT CARDIAC EVENTS RENDER THE INITIAL REPORT INCOMPLETE IN SOME MATERIAL RESPECT

Defendant bases its argument that Dr. Zipes' supplemental report should be stricken because it was served after the Court ordered cut off date of May 22, 2006. However, FRCP Rule 26(e) requires parties to supplement their experts' reports if they learn the report or testimony is incomplete or incorrect in some material respect. *See FRCP* Rule 26 (e)(1).

Plaintiff's recent hospitalization for chest pain, angioplasty and stent placement render Dr. Zipes' former expert opinions partially incomplete regarding, but not limited to, plaque acceleration, extent and severity of Mr. Barnett's coronary artery disease and his prognosis. Therefore, Plaintiff has a duty to provide a supplemental report because Mr. Barnett's recent cardiac events render Dr. Zipes initial reports incomplete.

Here, Plaintiff has attempted to fully disclose expert opinion so that Defendant can prepare to trial. Where a party fails to supplement expert testimony, the court may order appropriate sanctions, including exclusion of opinion--but surely not visa versa. *See FRCP Rule 37(c); see also Tenbarge v. Ames Taping Tool Systems, Inc.* (8th Cir. 1999) 190 F.3d 862.)

### II. PLAINTIFF'S SUPPLEMENTAL REPORT RELATES TO MR. BARNETT'S RECENT CARDIAC EVENTS AND PROCEDURES AND THE FOUNDATION FOR THOSE OPINIONS OR IS A RECITATION OF PREVIOUSLY STATED OPINIONS

Dr. Zipes' supplemental report provides an overview and foundation for his opinions based upon Mr. Barnett's recent cardiac events. Defendant concedes that paragraphs 3 and 5 "contain [Dr. Zipes] opinions on Mr. Barnett's recent cardiac event." (Def's Mem at 2.)

3

However, Defendant then contends that paragraphs 1, 3, 4, 5 and 6 "improperly address issues other than Mr. Barnett's recent cardiac event. (Def's Mem at 5-6.)  Based upon Defendant's admission as to paragraphs 3 and 5, the remaining argument will pertain only to paragraphs 1, 4 and 6.

At issue in this case is the extent of Plaintiff's injuries stemming from his 2002 heart attack as well as progression of his coronary artery disease.  Paragraph 1 discloses a discussion Dr. Zipes had with Dr. Karavan concerning the angiogram results.  Defendant's examined Dr. Karavan concerning this conversation during his deposition on July 17, 2006 (*See* Karavan Discovery Dep Volume II at 266-267, attached hereto as Exhibit "A.")  Therefore, Defendant is not prejudiced by this disclosure.

Paragraph 4 discussed a table from the APPROVe Trial Cardiovascular Safety Report which provides the foundation for his opinion of further plaque acceleration.  It is therefore admissible evidence and should not be stricken.

Finally, paragraph 6, subsections (a)-(i) is a recitation of Dr. Zipes opinions, which are stated in his initial reports or the subject of his June 9, 2006 deposition--as the opinions now relate to the recent cardiac events. In essence, the crux of Dr. Zipes opinion, from a case specific perspective, is simply restated in the supplemental report to provide context to his new opinions.  Because Dr. Zipes opinions in this paragraph have been the subject of past testimony, it cannot be stricken. Defendant cannot use this supplemental report to unfairly strip Plaintiff of all his previously stated case-specific opinions.

In paragraph 6, subsection (a), Dr. Zipes re-states the results of January 24, 2000 Cardiolite study.  The results of this study set forth the extent Mr. Barnett's coronary artery disease as it existed at the outset of his Vioxx use.  Accordingly, his opinions in this regard are highly relevant and accordingly, have been the subject of much previous testimony.

In paragraph 6, subsection (a), Dr. Zipes provided his opinions relating to this Cardiolite study in his initial expert report at pages 6-7, attached hereto as Exhibit "B" Additionally, during his deposition on June 9, he testified that based upon the results of the Cardiolite study, Mr. Barnett has only mild atherosclerosis, attached hereto as Exhibit "C", Zipes Dep at 106:11-24.

In paragraph 6, subsection (b), Dr. Zipes is re-referencing his previously stated opinion that the 2000 Cardiolite study does not reveal severe multivessel disease based upon the lack of transient ischemic dilation (TID). Dr. Zipes opines in this regard in his May 22 expert report at pages 6-7 where he stated that "… the patient would more likely than not manifest other changes such as chest pain during the test, reduced exercise time, *ventricular dilation*, wall motion abnormalities, or other ECG changes….: attached hereto as Exhibit "B", *emphasis* added. Additionally, during his deposition on June 9, he testified that "…balanced reduction is not applicable to Mr. Barnett… for balanced ischemia that individual is going to have *ventricular dilation*, or other ECG changes….", attached hereto as Exhibit "D", Zipes Dep at 166:3-167:6, *emphasis* added.

In paragraph 6, subsection (c), Dr. Zipes is restating his opinions as to the results of echocardiogram done at his institution on May 2, 2006. Again, this is nothing new:  In his initial report at page 11, he stated that the echocardiogram showed "…[h]ypokinetic mid lateral, and basal lateral segments of the left ventricle; severe hypokinesis-basal posterior and basal inferior segments of the left ventricle", attached hereto as Exhibit "B".   Similarly, during his deposition on June 9, he testified as to the wall motion abnormalities, "…hypokinesia in the mid-lateral and basal left ventricle, severe hypokinesia in the basal posterior and basal anterior walls of the ventricle.", attached hereto as Exhibit "E", Zipes Dep at 105:13-106:5.

Paragraph 6, subsection (d), concerns the issue of prognosis and Mr. Barnett's damages. In Dr. Zipes initial report at pages 43-45, he stated that based upon Plaintiff's heart attack [and resulting damage to his heart], he has undesirable prognostic implications, including "sudden death…and shortening of his life expectancy", attached hereto as Exhibit "B."

In paragraph 6, subsection (e), Dr. Zipes is again reiterating that the extent of Mr. Barnett's damages, including increasing coronary artery disease and stenosis will lead to damage to his heart, heart failure and untimely death, supra.

In paragraph 6, subsection (f), Dr. Zipes states that based upon the recent cardiac events--progression of his coronary artery disease and obstruction of coronary blood flow, Mr. Barnett will suffer further damages, including reduction to his ejection fraction. As above, he has previously stated this point in his May 22 report and deposition as supra.

Paragraph 6, subsection (g), Dr. Zipes is re-referencing the results of Plaintiff's performance on the May 2, 2006 treadmill stress test as a means to prognosticate his damages. In his May 22 report at page 11-12, he notes that the reduction in exercise capacity as it impacts Mr. Barnett's prognosis, attached hereto as Exhibit "B." Additionally, Dr. Zipes previously testified to this point when he stated that the nine-and-one-half minutes was subpar to the previous 14-15 minutes in previous stress tests, attached hereto as Exhibit "F", Zipes Dep at 205:7-25.

In paragraph 6, subsection (h), Dr. Zipes previously testified to Plaintiff's life expectancy as it relates to graft occlusion rates in both his May 22 report at page 44 and in his June 9 deposition.

Finally, in paragraph 6, subsection (i), Dr. Zipes again recites nothing new: that Mr. Barnett could have had a second heart attack. In his June 9 deposition, he testified that Mr.

6

Barnett may have had a second heart attack. In this paragraph of the instant motion, Dr. Zipes relates the recent events of graft closure to the time when he likely suffered a second heart attack.  Essentially, because the graft to the coronary is 100% blocked, that supports his previous opinion that Mr. Barnett suffered a second heart attack.

In a final attempt to limit Plaintiff's fully disclosed evidence, Defendant claims that Dr. Zipes should be precluded from testifying about exhibits that were attached to Dr. Karavan's recent deposition, and upon which he relied in giving his further opinions in his July 19 deposition.  True, the reports were given to Dr. Zipes on the morning of his deposition, but Dr. Karavan's deposition was just the previous day, attached hereto as Exhibit "G" , Zipes Dep at 300-301, 442-443.

### III.     DR.  ZIPES REPORT DOES NOT RECITE INADMISSIBLE HEARSAY

Defendant claims that Dr. Zipes report should be "stricken for the additional reason that they simply rehash what other doctors' have told Dr. Zipes" based upon paragraphs 1 and 2 (Def's Mot at 6.)  Defendant's claim this portion of the report is inadmissible hearsay.

As above, paragraph 1 discloses a telephone conversation Dr. Zipes had with Dr. Karavan concerning the July 10 cardiac catheterization results.  Defendant contends this is a conversation between *plaintiff's experts* (Def's Mot at 7, *emphasis* added.) However, Defendant's examined Dr. Karavan concerning this conversation during his deposition on July 17, 2006  (*See* Karavan Discovery Dep Volume II at 266-267, attached hereto as Exhibit "A") Therefore, Defendant's contention that it is prejudiced is without merit.

Further, Dr. Karavan's statements contained in the report are admissible because experts may base their opinion on statements of other experts during consultation with such experts. *See Lewis v. Rego Co.*(3rd Cir. 1985) 757 F.2d 66.   Here, Defendant claims that Dr. Karavan is Plaintiff's expert.  (Def's Mot at 7.)

7

Paragraph 2 discloses Dr. Zipes opinions regarding his review of the July 2006 cardiac catheterization that he reviewed with Dr. Feigenbaum, a colleague and cardiologist whom also practices at Krannert Institute.  This paragraph does not merely recite the opinions of Dr. Feignebaum but rather, those of Dr. Zipes resulting from their co-review of the 2006 study.  Dr. Zipes indicated in his recent deposition that he did not rely on the opinions of Dr. Feingenbaum in formulating his opinions (*See* Zipes Dep at 309:14-17, attached hereto as Exhibit "H".)

## IV.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's request to strike Dr. Zipes supplemental report and related testimony.

Date:  July  28, 2006                              Respectfully submitted,


By /s/ MARK P. ROBINSON, JR.
    Mark P. Robinson, Jr.
    Kevin F. Calcagnie
    Carlos A. Prietto, III
    Ted B. Wacker
    Lexi W. Myer
    ROBINSON, CALCAGNIE & ROBINSON
    620 Newport Center Dr., 7th Floor
    Newport Beach, California  92660
    Telephone:  (949) 720-1288
    Facsimile: (949) 720-1292

    Andy D. Birchfield, Jr.
    P. Leigh O'Dell
    BEASLEY, ALLEN, CROW,
    METHVIN, PORTIS & MILES, P.C.
    P.O. Box 4160
    234 Commerce Street
    Montgomery, Alabama  36103-4160
    Telephone:  (334) 269-2343
    Facsimile: (334) 954-7555

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California   94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Counsel for Plaintiff

| | |
|---|---|
| **Russ M. Herman**, Esquire<br>Leonard A. Davis, Esquire<br>Stephen J. Herman, Esquire<br>HERMAN, HERMAN, KATZ & COTLAR<br>820 O'Keefe Avenue<br>New Orleans, LA 70113<br>PH: (504) 581-4892<br>**PLAINTIFFS' LIAISON COUNSEL** | **Christopher A. Seeger**, Esquire<br>SEEGER WEISS<br>One William Street<br>New York, NY 10004<br>(212) 584-0700 (telephone)<br>(212) 584-0799 (telecopier)<br>**Co-Lead Counsel** |
| Richard J. Arsenault, Esquire<br>NEBLETT, BEARD & ARSENAULT<br>2220 Bonaventure Court, P.O. Box 1190<br>Alexandria, LA 71301-1190<br>(318) 487-9874 (telephone)<br>(318) 561-2591 (telecopier) | Elizabeth J. Cabraser, Esquire<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111<br>(415) 956-1000 (telephone)<br>(415) 956-1008 (telecopier) |
| Thomas R. Kline, Esquire<br>KLINE & SPECTER, P.C.<br>1525 Locust Street, 19th Floor<br>Philadelphia, PA 19102<br>(215) 772-1000 (telephone)<br>(215) 772-1371 (telecopier) | Arnold Levin, Esquire<br>LEVIN, FISHBEIN, SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>(215) 592-1500 (telephone)<br>(215) 592-4663 (telecopier) |
| Shelly Sanford, Esquire<br>GOFORTH, LEWIS, SANFORD LLP<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>(713) 650-0022 (telephone)<br>(713) 650-1669 (telecopier) | Drew Ranier, Esquire<br>RANIER, GAYLE & ELLIOT, L.L.C.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>(337) 494-7171 (telephone)<br>(337) 494-7218 (telecopier) |
| Mark Robinson, Esquire<br>ROBINSON, CALCAGNIE & ROBINSON<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>(949) 720-1288 (telephone)<br>(949) 720-1292 (telecopier) | Christopher V. Tisi, Esquire<br>ASHCRAFT & GEREL<br>2000 L Street, N.W., Suite 400<br>Washington, DC 20036-4914<br>(202) 783-6400 (telephone)<br>(307) 733-0028 (telecopier) |
| Gerald E. Meunier<br>Gainesburgh Benjamin David Meunier & Warshauer<br>2800 Energy Centre<br>1100 Polydras Street<br>New Orleans, LA 70163-2800<br>(504) 522-2304 (telephone)<br>(504) 528-9973 (telecopier) | **PLAINTIFF'S STEERING COMMITTEE** |

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman and Phillip Wittmann [with courtesy copy to Merck's trial counsel, Andrew L. Goldman] by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of July, 2006.

/s/ MARK P. ROBINSON, JR.
MARK P. ROBINSON, JR.
California State Bar No.  054426
Attorney for Plaintiff
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: 949-720-1288
Telecopier: 949-720-1292
mrobinson@rcrlaw.net