IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Vioxx **PRODUCTS LIABILITY LITIGATION** | § § § § | MDL DOCKET NO. 1657 Section L |
| THIS DOCUMENT RELATES TO: ROBERT G. SMITH        v. MERCK & CO., INC. No. 2:05-CV-04379 | § § § § § § | Judge Fallon Mag. Judge Knowles |

## SCIENTIFIC EVIDENCE INC.'S FIRST SUPPLEMENT TO ITS OBJECTIONS AND MOTION FOR PROTECTION FROM DISCOVERY SUBPOENA AND REPLY TO MERCK'S OPPOSITION

Merck's subpoena issued in *Robert Smith v. Merck and Co., Inc.*, Civil Action No. 2:05cv04379, seeks documents that can generally be divided into four categories: (1) documents relating to any communications between Scientific Evidence and Dr. Moyé in the Vioxx litigation ("Vioxx Documents"); (2) documents relating to charges billed by Dr. Moyé in the Vioxx litigation ("Vioxx Invoices"); (3) documents relating to any communications between Scientific Evidence and Dr. Moyé in *all* litigation ("All Litigation Documents"); and (4) documents relating to charges billed by Dr. Moyé in *all* litigation ("All Litigation Invoices"). Scientific Evidence summarizes its response to these document requests as follows:

- Vioxx Documents — Documents were previously produced by Dr. Moyé during his June 2, 2006 and June 16, 2006 deposition. Merck's subpoena is duplicative.

- Vioxx Invoices — Documents were previously produced by Dr. Moyé during his June 2, 2006 and June 16, 2006 deposition. Merck's subpoena is duplicative.

- All Litigation Documents — These documents are no longer in Scientific Evidence's possession or cannot be reasonably identified because Scientific Evidence does not track documents sent to experts. At any rate, Merck's subpoena is overly broad, burdensome, and seeks documents that are not relevant to the issues in this litigation and

|   |   |
|---|---|
|   | are obtainable from sources that are more convenient, less burdensome and less expensive. |
| • All Litigation Invoices | These documents are in Scientific Evidence's possession; however, the information sought is obtainable from another source and Merck's need for this information is outweighed by the burden imposed on Scientific Evidence. |

For the reasons discussed in its Motion for Protection, Scientific Evidence maintains that it is entitled to protection from Merck's improper, overly broad and unduly burdensome subpoena. In response to Merck's assertion that Scientific Evidence has failed to meet its burden and has not offered in evidence to support its motion (Merck Opposition, 2), Scientific Evidence offers the Declaration of Scientific Evidence's Vice President, April K. Thomson ("Thomson Declaration") (Exhibit A), Dr. Moyé's deposition notice in *Gerald Barnett v. Merck and Co., Inc.*, Civil Action No. 2:06cv485 (Exhibit B), and excerpts from Dr. Moyé's deposition (Exhibit C). This evidence establishes that Merck already possesses a number of the requested documents, rendering Merck's subpoena unnecessarily duplicative. Scientific Evidence further maintains that Merck's request for All Litigation Documents and Invoices is overly broad, burdensome, and constitutes a mere fishing expedition. Furthermore, such documents and information are obtainable from other sources more convenient, less burdensome and less expensive.

### A.  Vioxx Documents and Invoices

The Court has broad discretion in limiting discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

FED.R.CIV.P. 26(b)(2). Further, parties subject to subpoenas are entitled to protections where the subpoena creates an undue burden. FED.R.CIV.P. 45(c)(3)(A)(iv).

Prior to his deposition, Merck requested the following documents from Dr. Moyé: (1) all materials reviewed prior to or since Dr. Moyé was retained as an expert in this litigation that relate to Vioxx; (2) all materials on which Dr. Moyé relies as support for his opinions in the Vioxx litigations; (3) all work product (other than draft reports) that Dr. Moyé has prepared in the Vioxx litigation (4) all statements reflecting time Dr. Moyé has spent on Vioxx-related work, including invoices/bills he has submitted for payment, and all notes or other memorandum Dr. Moyé has prepared in the Vioxx litigation; and (5) all communications Dr. Moyé has had with any plaintiffs' counsel in the Vioxx litigation. (Moyé Deposition Notice, "Attachment A").

Dr. Moyé appeared for deposition on June 2, 2006 and June 16, 2006 and fully complied with Merck's request for documents by providing fourteen (14) disks containing documents and information responsive to Merck's document request. (Moyé, 16:2-24; 45:16-47:4; 71:21-72:8). Scientific Evidence helped coordinate production of this data with Dr. Moyé in an effort to comply with Merck's request. (Thomson Declaration, ¶ 5). In connection with his services as an expert in the Vioxx litigation, Scientific Evidence provided Dr. Moyé with peer-reviewed articles and Merck's New Drug Application, all of which were included on the fourteen (14) disks provided by Dr. Moyé. (Moyé, 43:17-22; 47:5-11). Dr. Moyé also provided Merck with his Vioxx billing records from February 2005 (the beginning of his involvement in Vioxx) to May 2006. (Moyé, 17:1-9; 34:11-35:20). Merck had ample opportunity and, if fact, did cross-examine Dr. Moyé on the content of the invoices. (Moyé, 212:7-224:11). To the extent Scientific Evidence has received any additional invoices from Dr. Moyé related to the Vioxx litigation, Scientific Evidence is agreeable to producing those invoices. (Thomson Declaration, ¶ 6).

3

Scientific Evidence does not possess any documents relating to any communications between Scientific Evidence and Dr. Moyé and charges billed Dr. Moyé in the Vioxx litigation beyond what Dr. Moyé has already provided to Merck (with the possible exception of a June 2006 invoice). (Thomson Declaration, ¶¶ 2-10). Merck has neither voiced dissatisfaction with the voluminous documents produced by Dr. Moyé, nor requested additional documents from Dr. Moyé or the Vioxx plaintiffs. To require Scientific Evidence to produce the same Vioxx related documents and invoices would be unnecessarily duplicative, burdensome and expensive. *See* FED.R.CIV.P. 26(b)(2); *Gulotta v. GE Capital Modular Space*, 2005 U.S. Dist. LEXIS 11988 *5-6 (E.D.La. 2005) (courts have recognized that the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery; therefore, discovery methods shall be limited by the court if it determines that the discovery sought is unreasonably cumulative or duplicative) (internal quotes and citations omitted); *Stanley v. Trinchard*, 2004 U.S. Dist. LEXIS 14749 (E.D.La. 2004) (discovery was duplicative and the information sought could be obtained from another source that is more convenient, less burdensome and less expensive); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 2002 U.S. Dist. LEXIS 15927 *12-13 (E.D.La. 2002) (subpoena sought documents that were cumulative, duplicative and without basis); *Batture Fleet, Inc. v. Browner*, 2000 U.S. Dist. LEXIS 8470 *4 (E.D.La. 2000) (subpoenas were unreasonable considering the nonparties were not parties to the litigation and the material sought was available from the actual parties). For these reasons, Scientific Evidence should not be required to produce the same documents that Merck already has in its possession.

**B.     All Litigation Documents and Invoices**

As demonstrated by the Thomson Declaration, the majority of Scientific Evidence's communications with Dr. Moyé are verbal. To the extent Scientific Evidence communicates with Dr. Moyé in writing and electronically, such communications pertain to trial and deposition scheduling, reminders to send his invoices, and other administrative matters. However, Scientific Evidence does not retain such communications. Moreover, Scientific Evidence does not track the scientific studies provided to Dr. Moyé at his request. (Thomson Declaration, ¶¶ 9-10). Consequently, Scientific Evidence simply does not posses or cannot identify the All Litigation Documents sought by Merck. Even if Scientific Evidence could reconstruct the documents provided to Dr. Moyé in past litigation, such a task would be incredibly burdensome.

A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D.Tex. 1998)). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Id.* (quoting *Linder v. Department of Defense*, 328 U.S. App. D.C. 154, 133 F.3d 17, 24 (D.C. Cir. 1984)). To determine whether a subpoena presents an undue burden, the court considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Id.* (citing *Williams*, 178 F.R.D. at 109). If the person from whom documents are sought is a non-party, the court may consider the expense and inconvenience to the non-party. *Id.* (citations omitted).

5

Foremost, the Scientific Evidence subpoena is not limited to a particular time period and fails to describe the requested documents with any particularity ("*any and all* documents relating to *any* communications between Scientific Evidence, Inc. and Dr. Lemual A. Moye, M.D., Ph.D. related to testifying in *all* litigation) (emphasis added). As such, the subpoena is overly broad on it face.

Merck contends that the subpoena is not overly broad because Merck is entitled to discover Dr. Moyé's potential biases. (Merck Opposition, 7). In support of its argument, Merck cites a number of cases where courts allowed parties to explore experts' opinions in other litigation and the frequency of testimony for a particular side (plaintiff verses defendant) through cross-examination and discovery propounded on parties in the litigation.[1] (Merck Opposition, 7-8). Scientific Evidence agrees that parties are entitled to discover the potential biases of an opposing party's experts; however, Merck has had ample opportunity through party discovery and its cross-examination of Dr. Moyé to explore his potential biases. FED.R.CIV.P. 26(b)(2).

Furthermore, Merck's "need" of the requested documents is wholly absent. Merck claims that it needs the All Litigation Documents from Scientific Evidence because "Dr. Moyé has been less than clear in his prior testimony about the extent of his prior work for plaintiffs in other pharmaceutical cases, and the compensation he received for that work." (Merck Opposition, 2).[2] This statement is simply false. Dr. Moyé has been completely forthcoming

---

[1] *Trower v. Jones*, 520 N.E.2d 297, 300 (Ill. 1988) (*cross-examination at trial* into expert's income derived from testifying as an expert); *Bottorff v. Bethlehem Steel Corp.*, 130 F.R.D. 97, 98 (D. Ind. 1990) (*interrogatories to plaintiff* seeking information concerning expert's prior trial experience and compensation); *Bockweg v. Anderson*, 117 F.R.D. 563 (D.N.C. 1987) (*cross-examination during oral deposition* into matters related to experts' prior testimony in malpractice actions).

[2] Merck's also asserts that Scientific Evidence is essentially Dr. Moyé's employer is incorrect. (Merck's Opposition, 2). Dr. Moyé testified that he is a consultant for Scientific Evidence. (Moyé, 13:11-16). He further testified as follows: ". . . the only support Scientific Evidence provides to me is logistical support. So, they collect information for me. And they will collect information on CDs, for example, and prepare the CDs that we have today. But to answer your question, April Thompson [sic] has been my chief

about his prior work in other pharmaceutical cases, including fen-phen, Rezulin and Lotronex. (Moyé, 388:15-391:8). Dr. Moyé has actually produced his prior testimony in the Rezulin litigation. (Moyé, 391:9-14; 416:9-417:21). Merck already possesses his testimony from the fen-phen litigation.[3] Dr. Moyé testified that as of February 2005, he had earned $1.35 million in fen-phen litigation. (Moyé, 387:6-10). He estimated that his *total* earnings related to the fen-phen litigation ranged between $1 million and $1.5 million. (Moyé, 387:23-388:13). Although he could not remember the exact amount of his earnings in the Rezulin litigation at the time of his deposition, his compensation was discussed during his deposition and trial testimony in the Rezulin litigation and transcripts of that testimony have been provided to Merck. (Moyé, 391:9-14; 416:9-417:21). Consequently, Dr. Moyé has been fully responsive to Merck's document requests and Merck's questions on cross-examination. Consequently, Merck cannot demonstrate a "need" for the documents it seeks from Scientific Evidence. *Wiwa*, 392 F.3d at 818. Scientific Evidence, on the other hand, has provided ample evidence of the absence of Merck's need of these documents.

Furthermore, even if the Court accepts Merck's assertion that Dr. Moyé has been unclear about his prior work for plaintiffs and the compensation he received for that work, to the extent Merck left any stone unturned in preparing for Dr. Moyé's deposition in *Barnett*, Merck has been provided with a full list of Dr. Moyé's previous testimony in other litigation.[4] Accordingly, Merck has other means by which it can gain "a full understanding of Dr. Moye's past

---

contact person at Scientific Evidence, and her role for me has been administrative." (Moyé, 23:20-24:7). Regardless of Dr. Moyé relationship with Scientific Evidence, there is no justification for requiring Scientific Evidence to produce billing invoices where those invoices have already been produced by Dr. Moyé.

[3] During Dr. Moyé's June 2, 2006 deposition, Merck's counsel posed the following question: "You testified, I believe, in February of 2005 that you had made about $1.35 million in your work in fen-phen; is that right?" (Moyé, 387:6-10).

[4] Dr. Moyé's May 22, 2006 report provides a comprehensive list of his prior testimony. (Moyé Report, Appendix E).

7

experiences and potential biases" without requiring Scientific Evidence to conduct the burdensome, time consuming, and expensive task of gathering this information. (Thomson Affidavit, ¶¶ 11-15). Merck's argument that Scientific Evidence's records are "critical" to Merck is simply disingenuous.

Further, Merck seeks documents that are neither relevant, not likely to lead to the discovery of admissible evidence.[5] Although the standard of relevance in the context of discovery is admittedly broader than in the context of admissibility, "this often intoned legal tenant should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992). The party seeking discovery of information which is not clearly relevant to the issues of the case before the court must make some threshold showing of relevance. *Id.* Merck should not be allowed to probe through Scientific Evidence's files related to Dr. Moyé's consultation and testimony in non-Vioxx related litigation, particularly where those documents have no relation to Dr. Moyé's role as a testifying expert in the Vioxx litigation. *See e.g., Colindres v. Quietflex Mfg.*, 228 F.R.D. 567, 571 (S.D.Tex. 2005) (although ambiguity as to the role played by the expert in reviewing or generating documents are resolved in favor of the party seeking discovery, documents that have no relation to the expert's role as a testifying expert need not be produced) (citing *B.C.F. Oil Refining Inc. v. Consolidated Edison*

---

[5] Merck contends that the relationship between Dr. Moyé's and Scientific Evidence is relevant to the issues of bias and qualifications. In support of this argument, Merck cites *Butler v. Rigsby*, 1998 U.S. Dist. LEXIS 4618 *8-9 (E.D.La. 1998), where the court held that evidence of a special relationship between medical groups and the attorneys from whom the groups received substantial income was relevant to demonstrate the possible bias of the groups. The court affirmed the magistrate's order requiring the medical groups to produce a list of patients referred by the attorneys and allowed the defendant to question the medical groups' representatives about the percentage of litigation-related income. *Butler*, 1998 U.S. Dist. LEXIS at *3-4. In the present situation, Dr. Moyé has already disclosed the litigation in which he became involved through Scientific Evidence. (Moyé, 753:5-754:4). He has already provided his Vioxx related invoices and testified about the compensation he received in fen-phen. Merck has access to information regarding his compensation in other pharmaceutical litigation. Merck has failed to make a threshold showing of relevance with respect to any other documents exchanged between Dr. Moyé and Scientific Evidence.

*Co. of New York, Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) and *JB v. Asarco, Inc.*, 225 F.R.D. 258, 261 (N.D.Ok. 2004)). In short, Merck's subpoena constitutes nothing more than a fishing expedition from which Scientific Evidence is entitled to protection. *See Scott v. Rent-Way*, 2005 U.S. Dist. LEXIS 11913 (N.D.Tex. 2005) (court was not inclined to allow defendant to rummage through the file from the plaintiff's current employer in hopes of finding information to impeach his credibility); *Reynolds v. York*, 2004 U.S. Dist. LEXIS 12313, 2004 WL 1490040 *1 (N.D.Tex. 2004) (holding that third-party subpoena served on former employer seeking personnel file and other documents that might impeach plaintiff's credibility "amounts to nothing more than a fishing expedition").

Lastly, the burden imposed on Scientific Evidence outweighs Merck's "need" for the requested documents. As detailed in the Thomson Declaration, Scientific Evidence does not organize the invoices it receives according to the person or entity submitting the invoice. Rather, the invoices are sorted based on the type of litigation. (Thomson Declaration, ¶ 12). In order to comply with Merck's subpoena, Scientific Evidence will be required to manually look through each and every invoice for each and every type of litigation for which Dr. Moyé has provided services. Scientific Evidence will then have to cross-check all invoices to pull duplicates, because expert charges in multiple litigations are often submitted in one invoice. After all searches have been run and cross-referenced, Scientific Evidence will have to redact any confidential and personal information relating to the particular person or entity referenced in each and every invoice. (Thomson Declaration, ¶ 13). Scientific Evidence estimates that it will require an indeterminable number of days to accomplish this task, which will create an unnecessary financial burden on Scientific Evidence. (Thomson Declaration, ¶ 14).

For these reasons, Scientific Evidence requests that the Court sustain its objections and grant its motion for protection from Merck's improper, overly broad and burdensome subpoena.

Respectfully submitted,

By: _____
Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

ON BEHALF OF SCIENTIFIC EVIDENCE, INC.

OF COUNSEL:

Ken Bailey
Texas Bar No.: 01543500
Bailey Perrin & Bailey, LLP
440 Louisiana, Suite 2100
Houston, Texas 77002
(713) 425-7249
(713) 425-7101 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, and Plaintiff's counsel, Grant Kaiser, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8(B) on July 21, 2006.

Grant Kaiser
The Kaiser Firm
8441 Gulf Freeway, Suite 600
Houston, Texas 77017

Carrie Jablonski
Bartlit, Beck, Herman, Palechar & Scott
Courthouse Place
54 West Hubbard Street
Chicago, IL 60610

Robert Van Kirk
Williams & Connolly
725 Twelfth Street Northwest
Washington, DC 20005

Holly M. Wheeler