## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: VIOXX** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| | * | |
| **This document relates to** | * | **MAG. JUDGE KNOWLES** |
| | * | |
| **Gerald Barnett v. Merck & Co, Inc.** | * | **CASE NO. 02:06cv485** |

---

### JURY INSTRUCTIONS PROPOSED BY PLAINTIFF GERALD BARNETT

---

Plaintiff Gerald Barnett submits the following proposed jury instructions, numbered 1 through 35.

Date:  August 2, 2006                    Respectfully submitted,

By /s/ MARK P. ROBINSON, JR.
Mark P. Robinson, Jr.
Kevin F. Calcagnie
Carlos A. Prietto, III
Ted B. Wacker
Lexi W. Myer
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Dr., 7th Floor
Newport Beach, California  92660
Telephone:  (949) 720-1288
Facsimile: (949) 720-1292

Andy D. Birchfield, Jr.
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street

1

Montgomery, Alabama  36103-4160
Telephone:  (334) 269-2343
Facsimile: (334) 954-7555

Donald C. Arbitblit
LIEFF, CABRASER, HEIMANN and
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California   94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Counsel for Plaintiff

INSTRUCTION NO. 1

**<u>General Instruction</u>**

Members of the Jury:

You have now heard all the evidence in this case as well as the final argument.

It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in this case.

In any jury trial, there are, in effect, two judges. I am one of the judges; the other is you the jury. It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You, as jurors, are the judges of the facts. But in determining what actually happened in this case— that is, in reaching your decision as to the facts—it is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely upon the testimony and other evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and corporations or public entities stand equal before the law and are to be dealt with as equals in the court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that they are particularly concerned that you recall. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case. What the lawyers say is not binding upon you.

1

Also, during the course of trial, I have occasionally made comments to the lawyers, or asked a question of a witness, or admonished a witness concerning the manner in which he should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the facts in this case. In arriving at your own findings as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

The law of the United States permits the judge to comment on evidence presented during a case. I do not believe that I have made any comments on the evidence in this case. If you could possibly construe any remarks which I have made during the course of this trial, however, as a comment on the evidence, then I instruct you that any such comment on my part is only an expression of my opinion as to the facts, and you, the jury, may disregard such comment or comments entirely since you, as jurors, are the sole judges of the facts in this case.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You may consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating a fact to be proved. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

The burden of proof is on the plaintiff in a civil action, such as this one, to prove every essential element of his claim by a "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" means to prove that the claim is more likely so than not so. In determining whether any fact has been proved by a "preponderance of the evidence" in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the proof should fail to establish any essential element of the Plaintiff's claim by a preponderance of the evidence, you, the jury, should find for the Defendant as to that claim.

As I have stated, the Plaintiff need prove his case only by a preponderance of the evidence. He need not produce every possible witness, and he need not prove his case beyond a reasonable doubt, as is necessary in a criminal prosecution. But speculation or mere possibility and even unsupported probability is not sufficient to support a judgment in his favor.

In deciding this case, you are expected to use your good sense. Give the evidence and the testimony of the witnesses a reasonable and fair interpretation in the light of your knowledge of the natural tendencies of human beings.

In weighing the testimony and in determining the credibility of any witness, you may consider the conduct of the witness, his or her bearing on the witness stand, his or her personal feelings as demonstrated by his or her testimony and his or her actions, any interest he or she may have in the outcome of the case, any prejudice or bias he or she may have shown, and any partiality he or she may have demonstrated.

If a witness is shown to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony on other matters and you may distrust all of the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field may be called as an expert witness and is permitted to state his opinion on those technical matters. Such witnesses have testified in this case. You are not, however, required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has economic, philosophical, or any other interest in the outcome of the case.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers were read or presented by video to you. This deposition testimony is entitled to the same consideration, is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

3

During the course of trial, you will have heard objections to evidence. Sometimes these have been argued out of the hearing of the jury.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against or show any prejudice against a lawyer or his client because of the making of an objection.

Upon allowing testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, you, the jury, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer the question.

During the course of trial, I have occasionally asked a question of a witness in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the facts to which my question or questions may have related. Remember at all times, you, as jurors, are the sole judges of the facts.

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

This lawsuit arises out of Plaintiff Gerald Barnett's use of Vioxx. Merck manufactured Vioxx. The Plaintiff contends that he suffered a heart attack caused by his ingestion of Vioxx.

In your deliberations, you are to consider several distinct claims. First, the Plaintiff alleges that Merck should be held liable for his heart attack because Merck was negligent in designing, manufacturing, marketing, advertising, distributing, and selling Vioxx and that this negligence was a legal cause of his heart attack. In addition, the Plaintiff claims that Merck was negligent in failing to warn Dr. Michael McCaffrey and Dr. Michael Mikola, the physicians who prescribed him Vioxx, of a dangerous condition in Vioxx and that such negligence was a legal cause of Mr. Barnett's heart attack.

Second, the Plaintiff alleges that, regardless of whether Merck was negligent, Merck should be held strictly liable because Merck placed Vioxx on the market with inadequate warnings, making it unreasonably dangerous to consumers.

Third, the Plaintiff alleges that, regardless of whether Merck was negligent, Merck should be held liable because it breached express and implied warranties in connection with the sale of Vioxx, and

4

that the breach of those warranties was a legal cause of his heart attack.

Fourth, the Plaintiff alleges that Merck should be held liable because Merck intentionally and fraudulently concealed and suppressed material facts concerning Vioxx, and that the nondisclosure of those facts was a legal cause of his heart attack.

Finally, the Plaintiff alleges that Merck should be held liable because Merck made false representations regarding Vioxx, and that Merck's negligence in making such representations was a legal cause of his heart attack.

Merck contends that Vioxx does not cause a cardiovascular event such as heart attack, particularly when taken at the dose and for the duration that Gerald Barnett took the medicine. Merck also contends that Gerald Barnett's heart attack was caused by his own independent health risk factors and not Vioxx.

Further, Merck contends that its warning and instructions to Gerald, the doctors who prescribed Vioxx for Gerald Barnett, were adequate and complied with the rules of the FDA. Merck also asserts that it acted reasonably and that it had disclosed to the FDA all relevant obtainable and reliable information available at the time Dr. McCaffrey and Dr. Mikola prescribed Vioxx to Gerald Barnett

Moreover, even assuming Gerald Barnett's heart attack could have been caused by Vioxx, Merck contends that neither Dr. McCaffrey and Dr. Mikola nor Gerald Barnett relied on any statements Merck made.

Although all of the Plaintiff's claims have been tried together, each is separate from the others, and each party is entitled to have you separately consider each claim. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would have if each claim had been tried before you separately. Let me now discuss the law applicable to each of the Plaintiff's claims.

Authority:  Jury Charge, Plunkett v. Merck, 05-4046, pp. 1-8. (as modified)

5

INSTRUCTION  NO. 2

## Case Brought Under Multiple Theories – Introductory Charge

The plaintiff's claim in this case is based upon three alternative or concurrent theories: (1) Negligence; (2) Strict Liability; (3) Deceit by Concealment.  The plaintiff is not required to prove all three of these theories in order to recover. Proof of his claim under any one of these theories would enable you to find that he is entitled to a verdict in his favor.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-2 (2002)(as modified)

6

INSTRUCTION  NO. 3

## Products Liability – Negligence Cause of Action

I will now discuss with you the law governing the Plaintiff's negligence claim. In his negligence claim, the Plaintiff asserts that Merck was negligent in manufacturing, designing, distributing, marketing and labeling Vioxx, and in failing to adequately test and warn of the risks and dangers of Vioxx, and that such negligence was a legal cause of Gerald Barnett's heart attack.

In a products liability case, the plaintiff is required to prove:

    (1)  he was injured by the product;

    (2)  the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and

    (3)  that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant.

To prove a defective condition due to negligence, the plaintiff bears the additional burden of demonstrating the defendant seller or manufacturer failed to exercise due care in some respect. The focus is on the conduct of the seller or manufacturer, and liability is determined according to fault. The mere fact a product malfunctions does not demonstrate the defendant's negligence nor tend to establish the product was defective.

The first cause of action in this case is based on negligence. There are three essential elements of the plaintiff's negligence cause of action. They are denied by the defendant's answer. The plaintiff has the burden of proof throughout this process. He must prove all of these elements by the preponderance of the evidence.

    (1)  The plaintiff must show that the defendant designed or manufactured or marketed the product in a negligent or careless or reckless, willful, or wanton manner;

    (2)  The plaintiff must show that he suffered injury to his person;

    (3)  The plaintiff must prove the defendant's negligence or carelessness or recklessness, willfulness, or wantonness, in one or more of those specifications alleged in the complaint, was the proximate cause of the plaintiff's injuries.

The word "negligence" is an integral part of this matter. Negligence is defined as the absence of due care, the want of due care or ordinary care. The word carelessness conveys the same idea as negligence. It is the failure by omission or commission to exercise such due care as a person of ordinary reason and prudence would exercise in the same circumstances. In determining whether a particular act is negligent, the test you apply is what would a person of ordinary reason and prudence do under those circumstances. When I use the word person here, obviously, that also encompasses the word "corporation."

Recklessness is an extension of the concept of negligence. The words recklessness, willfulness and wantonness are synonymous. The terms are used to describe a conscious failure to exercise reasonable or due care. Recklessness implies the doing of a negligent act knowingly. When one acts

negligently and he realizes that he is acting negligently, the law says he is reckless, willful, and/or wanton.

It is incumbent upon the plaintiff to prove the defendant was negligent or reckless, willful and wanton in one or more of the particulars as alleged in the complaint. It is not required that the plaintiff prove them all, but it is absolutely essential that the plaintiff prove at least one. Otherwise, on this particular cause of action, your verdict would be for the defendant.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-14 (2002)(as modified)

INSTRUCTION NO. 4

## Products Liability – Standard of Care - Manufacturer

Where an action is brought against a manufacturer on the basis of negligence, the plaintiff must show the manufacturer has not adhered to the standard of care required by the law of negligence. In the case of a manufacturer, it is generally held that the standard applicable is one of reasonable care in the manufacturing process or, as sometimes expressed, due care or ordinary care. A manufacturer who fails to exercise such care in the manufacture of a product which, unless carefully made, he should recognize as involving an unreasonable risk of causing harm, is subject to liability for such harm.

Usually, the degree of care depends upon, and must be commensurate with, the risk of harm flowing from normal use of the product, or is proportionate to the seriousness of the consequences reasonably to be anticipated. While an extraordinary duty of care is not required of a manufacturer, the duty on the part of the manufacturer to exercise due care must be commensurate with the risk of danger involved.

In determining whether the legal standard of care has been satisfied, a manufacturer is held to the skill of an expert in its business and to an expert's knowledge of the materials and processes in its industry. Manufacturers have a duty to possess expert knowledge in the field of their products and to exercise reasonable care in placing the product in the market, which duty must be met by inspection and testing. A manufacturer owes a duty to conduct adequate tests and inspections of its product such as will reveal latent defects or defects that are not visible or apparent upon a reasonable inspection of the product. The failure to exercise reasonable care in fulfilling any of these duties constitutes negligence and, if accompanied by the requisite knowledge, may constitute recklessness.

The duty of care that binds a manufacturer is a duty of due, ordinary, and reasonable care to see that the product is free from any potentially dangerous defect; that is, to see that there is no unreasonable risk of personal injury or property damage to persons using the products for purposes that the manufacturer may reasonably expect they will be employed. This duty includes a duty to use ordinary care to test, analyze, and inspect the manufacturer's products, and to keep abreast of scientific knowledge, advances, and research in the product field.

This does not mean that a manufacturer has a duty to make its product accident-proof or is an insurer of its safety or utility. Rather, the manufacturer is under a duty only to manufacture its product in such manner that it will be reasonably fit for the purpose or purposes for which it is intended to be used. The plaintiff must prove that in manufacturing the product, the defendant failed to exercise due care. The defendant is liable neither as an insurer nor as a guarantor, but rather only for failing to act as a reasonable person would have acted.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-20 (2002)

9

INSTRUCTION NO. 5

**<u>Negligence – Failure to Warn</u>**

A manufacturer of a product is liable for failing to warn if it knows or has reason to know the product is or is likely to be dangerous for its intended use; it has no reason to believe the user will realize the potential danger; and, it fails to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous.

<u>Authority</u>: *Livingston v. Noland Corp.*, 293 S.C. 521, 525, 362 S.E.2d 16 (S.C. 1987), citing *Gardner v. Q.H.S., Inc.*, 448 F.2d 238 (4th Cir.1971).

INSTRUCTION NO. 6

**<u>Compliance With FDA Regulations</u>**

FDA certification and regulation of a product, or a manufacturer's compliance with FDA or other governmental regulations, does not automatically relieve the manufacturer of either liability or its duty to warn. The FDA's drug labeling decisions impose only "minimum" standards.  Compliance with an FDA regulation may establish that the manufacturer met the appropriate minimum standards of due care, but compliance does not necessarily absolve the manufacturer of all liability, nor does it establish that the warnings at issue were adequate. Even if you find that defendant Merck met all government regulations and requirements, which are minimum standards, such compliance is not a defense if a reasonable and prudent manufacturer would have taken added precautions.

<u>Authority</u>: *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359, 1362 (4th Cir.1975); *Caraker v. Sandoz Pharmaceuticals Corp.*, 172 F.Supp.2d 1018, 1033-1034 (S.D.Ill. 2001); *Laisure-Radke v. Par Pharmaceutical, Inc.*, 426 F.Supp.2d 1163, 1172 ( W.D.Wash. 2006); *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1442-1443 (10th Cir.1987); *Peters v. Astrazeneca, LP*, 417 F.Supp.2d 1051, 1056 (W.D.Wis. 2006); *Hegna v. E.I. du Pont de Nemours and Co.*, 806 F.Supp. 822, 830 (D.Minn. 1992);  *Hill v. Searle Lab.*, 884 F.2d 1064, 1068 (8th Cir.1989); Restatement (Second) of Torts § 288(c) (1965).

INSTRUCTION NO. 7

## Changes To Drug Warnings and Labels

Manufacturers must act quickly to warn regarding possibly deadly side effects associated with a drug because the FDA only sets forth minimum standards for labeling and safety of drugs.   The FDA's regulations permit a manufacturer to add or strengthen a contraindication, warning, precaution, or adverse reaction without prior approval by the FDA. A manufacturer could, and should, provide stronger warnings as soon as such a warning is warranted. Further, the regulations require a manufacturer to issue a warning whenever there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.

Even if drug manufacturer adequately warned prescribing physicians at the time of approval, drug manufacturers can always strengthen existing warnings or petition for a strengthening of the warnings, in a timely way, when new risk information surfaces. The regulations contemplate that information may arise before and after application approval that, in the mind of the manufacturer, calls into question the current safety of the drug with respect to any or all indications and calls for a strengthened warning. Even after approval, additional or more forceful warnings may, in the drug manufacturer's judgment, be added to labeling without prior FDA approval and on the drug manufacturers own initiative.

A manufacturer of a prescription drug must exercise reasonable care, commensurate with the risk, to warn physicians effectively of the drug's inherent dangers, and when a manufacturer does not change a warning it knows is widely disregarded, the warning may be insufficient.

Authority: *Cartwright v. Pfizer, Inc.*, 369 F.Supp.2d 876, 882-883 E.D.Tex. 2005); 21 C.F.R. § 314.70(c)(6)(iii); *Caraker v. Sandoz Pharmaceuticals Corp.*, 172 F.Supp.2d 1018, 1033-1034 (S.D.Ill. 2001); *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359, 1362 (4th Cir.1975).

INSTRUCTION NO. 8

## Strict Liability – Learned Intermediary Doctrine

Under South Carolina law, a manufacturer has no duty to warn of potential risks or dangers inherent in a product if the product is distributed to what we call a 'learned intermediary,' such as a physician, who might be in a position to understand and assess the risks involved, and to inform the ultimate user of the risks, and to, thereby, warn the ultimate user of any alleged inherent dangers involved in the product.

It is not the specific knowledge of the intermediary that is relevant. Rather, the question is whether the supplier acted reasonably in assuming that the intermediary would recognize the danger and take precautions to protect its employees.

However, a physician who is unaware of the risks or dangers inherent in a product is not a learned intermediary. The learned intermediary rule does not shield a drug manufacturer from liability for inadequate warnings to the physician. Although the duty of the prescription drug manufacturer is to warn the doctor, rather than the patient, the manufacturer is directly liable to the patient for a breach of such duty.

Although the manufacturer or supplier of a prescription drug has a duty to adequately warn the medical profession of its dangerous properties or of facts which make it likely to be dangerous, an adequate warning to the profession may be eroded or even nullified by overpromotion of the drug through a vigorous sales program which may have the effect of persuading the prescribing doctor to disregard the warnings given.

The overpromotion by a drug manufacturer may cause the prescribing physician not to rely on the warnings and package inserts associated with a particular drug product. Even though all warnings required by Federal authorities may have been given, such warnings would be insufficient to exonerate the manufacturer from all liability if overpromotion through a vigorous sales campaign should induce the medical profession in general, and the prescribing physician, to fail adequately to heed the warnings given.

Watering down the substance of a warning so as to give false assurance to the medical profession that a drug or biological can be safely administered, thereby minimizing the danger which exists in the use of a product, may also render a warning inadequate.

Authority: Anderson, S.C. Requests to Charge - Civil, § § 32-8 (2002)(as modified); *Salmon v. Parke Davis & Co*., 520 F.2d 1359, 1363 (4th Cir.1975); *Hill v. Searle Laboratories, a Div. of Searle Pharmaceuticals, Inc.,* 884 F.2d 1064, 1071 (8th Cir.1989);*Tinnerholm v. Parke, Davis & Co*., 285 F.Supp. 432, 451 (S.D.N.Y.1968); *Stevens v. Parke, Davis & Company*, 9 Cal.3d 51, 65, 107 Cal.Rptr. 45, 53, 507 P.2d 653, 661 (1973); *Stanger v. Smith & Nephew, Inc.*, 401 F.Supp.2d 974, 984 (E.D.Mo. 2005) ;*Pittman v. Upjohn Co*., 890 S.W.2d 425, 429 (Tenn.1994); *McEwen v. Ortho Pharm. Corp*., 270 Or. 375, 528 P.2d 522, 529 (1974)); *Nobles v. Astrazeneca Pharmaceuticals*, 48 Conn.Supp. 134, 832 A.2d 1241, 1242-1243 (Conn.Super. 2003); *Whitley v. Cubberly*, 24 N.C.App. 204, 210 S.E.2d 289 (1974).

INSTRUCTION NO.  9

**<u>Strict Liability – Proof of Warning Causation</u>**

To satisfy the burden of establishing that a failure to warn or an inadequate warning was a proximate cause of injury, a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded.

<u>Authority</u>: *Thomas v. Hoffman-LaRoche, Inc*., 949 F.2d 806, 812 (5th Cir.1992); *Hermes v. Pfizer, Inc*., 848 F.2d 66, 69-70 (5th Cir.1988)

INSTRUCTION NO. 10

## **Products Liability – Design Defect – Negligence**

In an action based on negligence, the plaintiff must prove the product, as designed, was in a defective condition unreasonably dangerous to the user when it left the control of the defendant and the defect caused his injuries. In addition, liability for negligence requires proof that the manufacturer breached its duty to exercise reasonable care to adopt a safe design. This burden may be met by showing that the manufacturer was aware of the danger and failed to take reasonable steps to correct it.

A manufacturer of a product made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the product or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-19 (2002)

INSTRUCTION NO. 11

**<u>Proximate Cause</u>**

If you find that the plaintiff has proved that, in fact, the defendant was negligent, then your next inquiry would be whether the plaintiff has proved that such negligence so established was the proximate cause of the injury and damages. In a products liability case, the plaintiff must prove the product defect was the proximate cause of the injury sustained. Recovery in any products liability action requires that the injury incurred must have been actually caused by the defective condition of the product. A manufacturer or seller is liable in negligence for injuries proximately caused by a defective condition which could have been prevented by the defendant by the use of reasonable care.

I now define for you proximate cause. Proximate cause means the efficient cause, the direct cause, the cause without which the injury and damage would not have occurred. If you find the plaintiff has proved the defendant was negligent, but has failed to prove that such negligence was a proximate cause of the injury and damage, the plaintiff will have failed to make out his case and you would be required to bring in a verdict for the defendant. However, if the plaintiff has proved these two propositions, that is, that the defendant was negligent and that such negligence was the proximate cause of his injury and damages, then you would go to the third step, which is damages.

Negligence is not actionable unless it is a proximate cause of the loss or damage complained of. It may be deemed a proximate cause only when, without such negligence, the loss or damage would not have occurred or could have been avoided.

Proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. Legal cause is proved by establishing foreseeability.

The touchstone of proximate cause in South Carolina is foreseeability. That is, foreseeability of some injury from a negligent act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of act. The defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence.

For an act to be a proximate cause of the injury, the injury must be a foreseeable consequence of the act. Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the complained of act.

The law requires only reasonable foresight. When the injury complained of is not reasonably foreseeable in the exercise of due care, there is no liability. It is not necessary for a plaintiff to demonstrate the defendant should have foreseen the particular event which occurred but merely that the defendant should have foreseen his negligence would probably cause injury to someone. Negligent conduct is the proximate cause of injury if that injury is within the scope of the foreseeable risks of the negligence.

While it is not necessary that the defendant must have contemplated or could have anticipated the

16

particular event that occurred, liability cannot rest on mere possibilities. The defendant cannot be charged with that which is unpredictable or that which could not be expected to happen. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence. In determining whether a consequence is one that is natural and probable, the defendant's conduct must be viewed in the light of the attendant circumstances.

Proximate cause does not mean the sole cause. The defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury.

The law defines proximate cause of an injury to be something that produces a natural chain of events which, in the end, brings about the injury. In other words, proximate cause is the direct cause, without which the injury would not have occurred.

Causation based upon a possibility rather than a probability is not sufficient for a plaintiff to recover in a products liability case. If the accident would have happened as a natural and probable consequence, even in the absence of the alleged breach, then the plaintiff has failed to demonstrate proximate cause. Further, where the cause of the plaintiff's injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has failed to carry the burden of establishing that his injuries were the proximate result of the defendant's negligence.

If you should find that the plaintiff has established the defendant's negligence or recklessness, willfulness, and wantonness was a proximate cause of the injury or damage complained of and that such defendant has failed to establish an adequate defense, then you should return a verdict for the plaintiff on his negligence theory. If, on the other hand, you should find the plaintiff has failed to establish (1) the defendant was negligent or reckless, willful and wanton; or (2) that this negligence or recklessness, willfulness, and wantonness was a proximate cause of the injury complained of; or (3) if you find that this defendant has established an adequate defense to the negligence claim, then you must find for the defendant as to this theory of liability.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-15 (2002)

17

INSTRUCTION NO. 12


**Products Liability – Concurring Cause**

In determining the question of proximate cause, you must distinguish between an intervening cause and a concurring cause. An intervening cause succeeds or follows that which, for convenience, is called the primary cause; though, as we have seen, it is only the remote cause. Concurring causes operate contemporaneously to produce the injury, so that it would not have happened in the absence of either.

If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded, liability for it attaches. However, the mere fact that one of several concurring causes may not have been reasonably anticipated, is not enough to shield from liability he who sets in motion the other for it is well settled that the negligence complained of need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause, that is, one that was so efficient in causation that, but for it, the injury would not have occurred.

In other words, the law recognizes that there may be several proximate causes to an event and anyone who is guilty of an act which contributes as a proximate cause and without which the injury complained of would not have occurred is responsible under the doctrine of proximate cause.

There may be more than one proximate cause of an injury, and more than one person may be held responsible for the plaintiff's injuries. The acts and omissions of two or more persons may operate concurrently as efficient causes of an injury. In such case, each of the contributing acts or omissions is regarded in law as a proximate cause for which each of the participants may be held responsible.

Two or more separate and distinct acts of negligence operating concurrently may both constitute proximate causes of an injury. Causes are concurrent if they act contemporaneously to produce a given result. In other words, the individual acts of negligence must combine to cause the injury.

Where two or more causes combine to produce injury, a person is not relieved from liability for negligence because he is responsible for only one of the causes. It is sufficient that his negligence is an efficient cause without which the injury would not have resulted to as great an extent. Consequently, if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the harm does not relieve him of liability. In such cases, both wrongdoers are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the injury, both are liable.

In other words, where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against either or all of the responsible persons, although one of them was more responsible and the duty owed by them to the injured person was not the same.

18

If an injury occurs through the concurrent negligence of two persons, and it would not have happened in the absence of the negligence of either person, the negligence of both is the proximate cause of the injury, although they may have acted independently of one another, and both are answerable.

In order to hold a defendant liable, it is not necessary to prove that his negligence was the sole proximate cause of the injury. The plaintiff is required only to prove that negligence on the part of the defendant was at least one of the proximate, concurring causes of his injury.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-16 (2002)

19

INSTRUCTION NO. 13

**<u>Products Liability – Strict Liability Cause of Action</u>**

I will now discuss with you the law governing the Plaintiff's strict liability claim for failure to warn. In order to decide this claim, you must determine whether Vioxx was defective by reason of an inadequate warning and, if so, whether the absence of an adequate warning was a legal cause of the injury sustained by Gerald Barnett.

      In a products liability case, the plaintiff is required to prove:
(1) he was injured by the product;
(2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and
(3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant.

The plaintiff alleges a strict liability cause of action. The plaintiff claims the defendant violated section 15-73-10 of the Defective Products Act.

      South Carolina Code section 15-73-10 states:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if
     (a) The seller is engaged in the business of selling such a product, and
     (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in subsection (1) shall apply although
     (a) The seller has exercised all possible care in the preparation and sale of his product, and
     (b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

The plaintiff claims that the product was sold by the defendant in a defective condition unreasonably dangerous to the person who is expected to use or be affected by the use of the product.

Generally speaking, the doctrine of "strict liability" is a rule under which liability is imposed, without regard to the exercise of reasonable care, on one who sells a product in a defective condition unreasonably dangerous to the user or consumer, for physical harm caused to the ultimate user or consumer, or to his property, if the seller is engaged in the business of selling such product, and the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Under strict liability, recovery by a plaintiff may be had even though a seller has exercised all possible care in the preparation and sale of his product. The exercise of due care in the manufacture of a product will not relieve the manufacturer of liability. Rather, a plaintiff need only prove the

20

product was defective and unreasonably dangerous when it was placed in the stream of commerce. Thus, the focus is upon the product itself, not the conduct of the manufacturer.

The law of South Carolina is that one who sells any product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm caused to the user if the seller or manufacturer is engaged in the business of producing or selling such a product, and it is expected to and does reach the user without substantial change in the condition in which it is sold. The rule that I have just explained to you shall apply even though the seller or manufacturer has exercised all possible care in the preparation and sale of its product and the user has not bought the product from or entered into any contractual relationship with the seller or manufacturer.

Not every defect subjects a seller to strict liability. The defect must cause the product to be unreasonably dangerous. Whether the defect causes the product to be "unreasonably dangerous" is measured by the "ordinary consumer" for whom the product is designed. To be unreasonably dangerous, the article sold must be dangerous to an extent beyond that which would be expected or contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

Now, what I have just instructed you applies only where the product is, at the time it leaves the seller's or manufacturer's hands, in a condition not contemplated by the ultimate user or consumer and which would be unreasonably dangerous to the user when the product is used in a foreseeable manner, which includes an intended use of the product. A product is not in a defective condition when it is safe for normal handling, and by normal it is meant what the ordinary seller or manufacturer would reasonably expect to incur with reference to use.

This would include the environment which is normal to the use of the product, and the anticipation of the reasonably foreseeable risk of the use of the product in such an environment. A seller or manufacturer is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is used, unless such mishandling or other causes were reasonably foreseeable and to be reasonably expected.

Under strict liability, the seller or manufacturer is not held as an insurer against all losses caused by the product but rather is to be held responsible only for damages attributable to some failure of the product to perform with reasonable safety in its normal environment. A product is not defective merely because an accident occurred when someone was using it. A product need not be accident-proof. A seller is not an insurer of the absolute safety of its product. It is enough that it is reasonably safe or, to state it differently, if it is not in a defective condition and unreasonably dangerous to the user.

There are three essential elements of the plaintiff's strict liability claim. They are all denied by the defendant. Because the plaintiff has made these charges as the foundation of his claimed right to damages, the burden of proof is upon the plaintiff to establish all three elements by the preponderance or greater weight of the evidence:
    (1)  the defendant sold or manufactured the product in a defective condition unreasonably dangerous to the user;
    (2) the plaintiff suffered personal injuries;
    (3) the defective product, in one or more of the particulars alleged in the complaint, was the

proximate cause of the plaintiff's injuries.

Strict liability is imposed for only those products that are defective and unreasonably dangerous.

Authority: Anderson, S.C. Requests to Charge - Civil, § 32-41 (2002)(as modified)

INSTRUCTION NO. 14

**Products Liability – Strict Liability – Test For Defectiveness**

In applying the rule of strict liability, two tests have evolved to determine whether a product is in a defective condition unreasonably dangerous for its intended use. The first test is whether the product is unreasonably dangerous to the ordinary consumer or user given the conditions and circumstances that foreseeably attend the use of the product. Under the second test, a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product. The state of the art and industry standards are relevant to show both the reasonableness of the design and that the product is dangerous beyond the expectations of the ordinary consumer.

While any product can be made safer, the fact that it is not does not automatically mean the product is unreasonably dangerous. Strict liability is not equivalent either to absolute liability or to insurance of the safety of the product's user. Likewise, the mere fact that a product malfunctions does not demonstrate the manufacturer's negligence nor does it establish that the product was defective. Rather, in the final analysis, we have another of the law's balancing acts and numerous factors must be considered, including:

    (1) the usefulness and desirability of the product;
    (2) the cost involved for added safety;
    (3) the likelihood and potential seriousness of injury; and
    (4) the obviousness of danger.

In South Carolina, the utility of the risk inherent in the design of the product is balanced with the magnitude of the risk to determine the reasonableness of the manufacturer's action in designing the product. This "balancing act" is also relevant to the determination that the product, as designed, is unreasonably dangerous in its failure to conform to the ordinary user's expectations. In the overall balance of risk and utility of the product, evidence of industry custom is relevant to the ordinary user's expectations.

Neither long continued lapses of time nor changes in ownership will be sufficient, in themselves, to defeat recovery when there is clear evidence of an original defect in the product sold. This rule of liability applies even though the seller has exercised all possible care in the preparation and sale of the product.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 32-42 (2002)

INSTRUCTION NO. 15

**<u>Products Liability – Strict Liability – Adequate Warning</u>**

A product, although faultlessly made, may nevertheless be deemed defective and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning given.

A seller or manufacturer may prevent a product from being unreasonably dangerous if the seller or manufacturer places an adequate warning on the product regarding its use. A product is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use. That is, a product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous. Therefore, the seller or manufacturer is not liable for any injuries caused by the use of the product if the user ignores the warning. When an adequate warning is given, the seller or manufacturer may assume that it will be heeded by the product user.

If you find the warning is adequate, you may infer that the product is not in a defective condition nor is it unreasonably dangerous.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 32-45 (2002)(as modified)

INSTRUCTION NO. 16

## **Fraud - Defined**

I will now discuss with you the law governing the Plaintiff's deceit by concealment claim.

Fraud has been defined as an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. Fraud is a false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury.

Actual fraud consists of deceit, artifice, trick, design, some direct and active operation of the mind. It includes cases of the intentional and successful employment of any cunning, deception or artifice used to circumvent or cheat another. It is something said, done, or omitted by a person with the design of perpetrating what he knows to be a cheat or deception.

Fraud occurs where one person or party intentionally deceives another by word or conduct for the purpose of inducing that other party to part with some property or surrender some legal right and the party thereby accomplishes his purpose. It involves the elements of dishonesty and deceit. Fraud involves deceitful practices in depriving or endeavoring to deprive another of his known rights by means of some artful device or plan contrary to the plain rules of common honesty.

Fraud, in its general sense, comprises anything calculated to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed and resulting in damage to another.

Authority: Anderson, S.C. Requests to Charge - Civil, § 18-1 (2002)(as modified)

INSTRUCTION NO. 17

**Fraud - Elements**

To establish fraud, sometimes referred to as a cause of action for fraud and deceit, the plaintiff must prove the following nine elements:

(1) a representation;
(2) the falsity of the representation;
(3) the materiality of the representation;
(4) the speaker's knowledge of its falsity or a reckless disregard for its truth or falsity;
(5) the speaker's intent that the representation be acted upon by the person hearing the representation;
(6) the hearer's ignorance of its falsity;
(7) the hearer's reliance on its truth;
(8) the hearer's right to rely thereon; and
(9) the hearer's consequent and proximate injury.

Each and every one of these elements must be proven by clear, cogent, and convincing evidence. The failure to prove any element of fraud is fatal to recovery. Fraud is never presumed in the law.

Were the representations made which the plaintiff claims? The defendant says it was not. If you find that no statements or representations were made to the plaintiff, you need not consider the case further. There would be no basis for fraud.

To establish actionable fraud, there must first be a false representation. The representation must be a statement or a set of actions which concerns an existing or pre-existing fact. The false representation must be one of fact as distinguished from the mere expression of an opinion. The false representation must be predicated upon misstatements of fact rather than upon an expression of opinion, an expression of intention, or an expression of confidence that a bargain will be satisfactory. The distinction between a matter of fact and a matter of opinion is generally characterized by what is susceptible of exact knowledge when the statement is made. Statements of opinion, predictions of future events, mere puffing, sales talk, and broken promises normally do not amount to fraud. As a general rule, fraud cannot be predicated on a statement that constitutes an expression of an intention. An exception to the general rule is recognized for unfulfilled promises which were made by a party who never intended to fulfill the promise and only made it to induce the performance of another party.

An actionable representation cannot consist of a mere broken promise, even if a party acts in reliance on the promise. An action in fraud, however, can be based on an unfulfilled promise to perform in the future made with a present undisclosed intention not to perform, which is made for the purpose of inducing one to sign a paper or do some other act.

The representation must be false. A fraudulent act is characterized by dishonesty in fact, unfair dealing, or unlawful appropriation of another's property by design. Bad faith is the test of fraud.

26

Nondisclosure, or silence, becomes fraudulent when it is the duty of the party having knowledge of the facts to uncover them to the other. The truth or falsity of a representation must be determined as of the time it was made or acted on and not at some later date.

The representation must be material. If an objective, reasonable person using the misrepresentation would have viewed the representation as sufficiently important and significant that it would have played a role in the decision to enter into a contractual relationship, the representation may be deemed material. The matter is material if:

> (1) a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or
> (2) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

The knowledge of falsity extends to statements made in reckless disregard of the truth. Reckless disregard exists where one makes a statement and knows he lacks the knowledge necessary to be confident that the statement is true.

A defendant may be held liable for misrepresentations made to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the fraudulent misrepresentation.

To recover for fraud, the plaintiff must have relied on the misrepresentation. If the plaintiff knew the misrepresentation was false, there is no cause of action because there could not have been any reliance on the truth of the statement. A victim of fraud has a right to rely on a misrepresentation so long as his reliance is not reckless or grossly negligent. The legitimacy of the plaintiff's reliance on the misrepresentation is an issue to be decided by you, the jury.

There is no cause of action for a fraudulent statement unless the plaintiff is injured.

Authority: Anderson, S.C. Requests to Charge - Civil, § 18-2 (2002)(as modified)

INSTRUCTION NO. 18

**Fraud - Nondisclosure as Representation**

A fraudulent or intentional misrepresentation may be made either by an affirmative statement that is itself false, or by concealing or not disclosing certain facts that render the facts that are disclosed misleading. Generally, the failure to disclose is not necessarily a misrepresentation. Yet, at times, nondisclosure may serve as the "representation" underlying fraud. This can occur in four ways:

(1) If the defendant chooses to speak, he must disclose enough of what he knows to prevent his words from being misleading. In situations where the defendant has made an incomplete or ambiguous statement or half truth that he knew was misleading, he is then under a duty to clarify and to disclose the whole truth.

(2) If the defendant subsequently acquires new information that makes his original statement misleading, he is under a duty to disclose the after-acquired facts.

(3) If there is a confidential or fiduciary relationship, the disclosure requirements may be greater. A duty to disclose may arise when one party has information the other party has a right to know because of a fiduciary or other relation of trust or confidence between them. If the plaintiff and the defendant are in some special fiduciary relationship to each other, there is a duty of full disclosure.

(4) The defendant may be held to a higher standard if he has a special knowledge not available to the plaintiff and such knowledge would probably affect the plaintiff's decision. A duty to disclose can arise when one party to a transaction has superior knowledge of certain information and that information is not readily available to the other party and the first party knows the second party is acting on the basis of the mistaken knowledge.

A misrepresentation in words is not required. A misrepresentation need not be express. It may be implied or inferred from circumstances that are, in fact, equivalent to a positive representation.

It is not essential that a misrepresentation be directly made in order to find fraud. If a false impression is made by words or acts in order to mislead and has such effect, it may be sufficient. Fraudulent representations may also be by arts or artifices which are calculated to deceive. Concealment, when a duty to disclose is imposed on the defendant, may form the basis of a charge of fraud, as in the case of active misrepresentations.

Nondisclosure becomes fraudulent only when it is the duty of the party having knowledge of the facts to uncover them to the other party to the transaction. Thus, nondisclosure is fraudulent when there is a duty to speak. The duty to disclose may be reduced to three distinct classes:

(1) where it arises from a pre-existing definite fiduciary relation between the parties;

(2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied;

(3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard

28

to any particular intention of the parties.

Where either party to a transaction conceals some material fact within his own knowledge, which it is his duty to disclose, he is guilty of actual fraud. Nondisclosure becomes fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction. The concealment of material facts that one is bound to disclose may constitute fraud. Suppression of a material fact which one is duty bound to disclose is equivalent to a false misrepresentation. Fraud may be committed by a suppression of the truth as well as by the suggestion of falsehood.

Where material facts are accessible to the seller only and he knows that they are not within the reach of the diligent attention, observation and judgment of the purchaser, the seller is bound to disclose such facts and make them known to the purchaser. When in such a situation the seller fails to disclose these facts to the buyer, the seller's nondisclosure of these facts is equivalent to fraudulent concealment.

Concealment of material facts or latent defects in property sold which, under the circumstances, one is bound to disclose may constitute fraud.

Authority: Anderson, S.C. Requests to Charge - Civil, § 18-4 (2002)(as modified)

INSTRUCTION NO. 19

**Negligent Misrepresentation – Elements**

I will now discuss with you the law governing the Plaintiff's negligent misrepresentation claim.

To recover in a negligent misrepresentation action, the plaintiff must prove:

> (1) the defendant made a false representation to the plaintiff;
> (2) the defendant had a pecuniary interest in making the statement;
> (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff;
> (4) the defendant breached that duty by failing to exercise due care;
> (5) the plaintiff justifiably relied on the representation; and
> (6) the plaintiff suffered a pecuniary loss as a direct and proximate result of his reliance on the defendant's representation. "Pecuniary interest" is defined as a "direct interest related to money in an action or case."

There must be a false representation of material fact. The representation must relate to a present or pre-existing fact and be false when made. The representation cannot ordinarily be based on unfulfilled promises or statements as to future events. A mere statement of opinion, commendation of goods or services, or expression of confidence that a bargain will be satisfactory does not give rise to liability. There is no liability for casual statements, representations as to matters of law, or matters which the plaintiff could determine for himself in the exercise of due diligence.

Evidence that the statement at issue was made in the course of the defendant's business, profession, or employment is sufficient to show the element of pecuniary interest, even though the defendant does not actually receive consideration for it.

> A duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions. It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care. The duty of care in negligent misrepresentation arises when the defendant possesses expertise or special knowledge that would ordinarily make it reasonable for the plaintiff to rely on the defendant, and the defendant has a pecuniary interest in the transaction. In negligent misrepresentation, the duty is not one requiring the defendant to take every possible care, much less to be right. It is simply the duty to exercise the care a reasonable person would under the circumstances.

The plaintiff must demonstrate the defendant breached the duty by failing to exercise due care.  In addition, the plaintiff must present evidence of reliance that is justifiable. The plaintiff must establish his reliance on the misrepresentation was reasonable. There can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter. A determination of justifiable reliance involves the evaluation of the totality of the circumstances, including the positions and relations of the parties.

Recovery in negligent misrepresentation cases is based upon negligent conduct and predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation. The plaintiff must show a pecuniary loss and that the breach of duty was the proximate cause of the injury.

Authority: Anderson, S.C. Requests to Charge - Civil, § 30-1 (2002)(as modified)

INSTRUCTION NO. 20

**Negligent Misrepresentation – Duty of Care Owed**

If the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on the defendant's judgment or ability to make careful inquiry, then the law places on the defendant a duty of care with respect to representations made to the plaintiff.

For purposes of proving negligent misrepresentation, evidence that the statement was made in the course of the defendant's business, profession, or employment is sufficient to show the defendant's pecuniary interest in making the statement, even though the defendant received no consideration for it. A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction.

The duty of care is not a duty to take every possible care, nor is it a duty to be right. It is the duty to exercise the care a reasonable person would exercise under the circumstances.

Authority: Anderson, S.C. Requests to Charge - Civil, § 30-3 (2002)

32

INSTRUCTION NO. 21

**<u>Voluntary Withdrawal of Vioxx</u>**

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004. You may not consider that fact as evidence that Vioxx was defective or defectively designed or that was Merck was negligent or acted culpably. You may also not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause a heart attack. You may, however, consider this withdrawal for other purposes, such as proving ownership, control, or feasibility of precautionary measures.

<u>Authority</u>:  Jury Charge, Plunkett v. Merck, 05-4046, page 14.

33

INSTRUCTION NO. 22

**<u>Compensatory Damages – Preliminary Instruction</u>**

Now let me speak with you about damages. "Damages" is the term in dollars and cents which expresses the injuries sustained by the Plaintiff. If the Plaintiff has proven one or more of his claims against Merck by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I give you instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Plaintiff suffered damages as a result of Merck's fault. I am instructing you on damages only so that you will have guidance in the event that you decide Merck is liable and the Plaintiff is entitled to recover money from Merck.

The Plaintiff claims that he has suffered injuries as a result of his use of Vioxx. If the Plaintiff proves by a preponderance of the evidence that his injuries or damages were caused by Merck's failure to fulfill its legal obligations, you must determine the amount of damages to which the Plaintiff is entitled.

You must determine an amount of damages that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make a Plaintiff whole—that is, to compensate the Plaintiff for the damages he suffered.

You may award compensatory damages only for the injuries or damages that the Plaintiff proves were caused by Merck's fault. The damages you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. That is to say, you should not be affected by sympathy, compassion, prejudice, or bias. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that a plaintiff prove the amount of loss with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts. In this case, the Plaintiff has claimed monetary damages from his injuries. These damages cannot be assessed by any fixed rule, but you are the sole judges as to the measure of damages in this case.

<u>Authority</u>:  Jury Charge, Plunkett v. Merck, 05-4046, page 14-16.  (as modified)

INSTRUCTION NO. 23

**<u>Products Liability – Strict Liability – Damages</u>**

The Defective Products Act imposes liability upon the seller and manufacturer of a defective product introduced into the stream of commerce when it causes physical harm to the ultimate user or consumer, or to the property of the user or consumer. In other words, a plaintiff can recover all damages that were proximately caused by the defendant's placing an unreasonably dangerous product into the stream of commerce.

The measure of damages for a cause of action in strict liability is limited to actual damages in satisfaction of, or in recompense for, loss or injury sustained. The seller of a defective product is subject to liability for physical harm caused.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 32-48 (2002)

INSTRUCTION NO. 24

**Damages – Elements of Actual Damages**

When one person is injured by the negligent or wrongful conduct of another, or by a defective product, the injured person is entitled to be fully compensated for all injuries directly or proximately resulting from any negligent acts or omissions by the defendant.

In determining the amount of compensation for injuries suffered by the plaintiff as a result of the defendant's negligence, it is proper for you to consider and award past, present, and future damages for:

(1) loss of income;
(2) loss or impairment of earning capacity;
(3) out-of-pocket expenses;
(4) medical expenses, including physicians, hospital, medicines, physical therapy expenses, rehabilitation expenses, and transportation expenses connected with medical treatment;
(5) any future damages resulting from permanent injuries;
(6) disfigurement;
(7) loss of family services;
(8) deprivation of normal life expectancy;
(9) alteration of lifestyle;
(10) psychological trauma;
(11) mental anguish;
(12) mental distress;
(13) apprehension;
(14) anxiety;
(15) emotional injury;
(16) psychological injury;
(17) depression;
(18) sexual dysfunction;
(19) pain and suffering;
(20) loss of enjoyment of life.

The plaintiff bears the burden of proving these elements by the preponderance of the evidence.

Authority: Anderson, S.C. Requests to Charge - Civil, § 13-3 (2002)(as modified)

36

INSTRUCTION NO. 25

**<u>Damages – Elements of Actual Damages – Mental Anguish</u>**

An injured party may recover for mental anguish brought about by bodily injury and suffering. Where a party's negligence is directly responsible for physical injury to another, the injured party may recover both for actual physical injury sustained and for concomitant mental and emotional suffering which flow as a natural consequence of the wrongful act.

When connected with a physical injury, the term "mental anguish" includes both the resultant mental sensation of pain and also the accompanying feelings of distress, fright, and anxiety. That is, mental anguish covers not only the pain associated with the injury but also the mental reaction to that pain and to the possible consequences of the injury. "Mental anguish" is more than mere disappointment, anger, worry, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and humiliation. "Mental anguish" can be composed of fright, nervousness, grief, anxiety, worry, mortification, humiliation, embarrassment, terror, or ordeal.

If you find the injured party is entitled to recover damages, you may consider as an element of those damages such mental anguish as you find, to a reasonable certainty, will occur in the future as a result of the injuries. In assessing mental anguish, you may take into account anxiety or worry about the possible future occurrence or condition resulting from the injuries that the plaintiff received, if you are satisfied to a reasonable certainty that the plaintiff will suffer such anxiety and worry. You may award damages for mental anguish where the evidence shows, for example, that the plaintiff suffered shock, fright, emotional upset, and/or humiliation as the result of the defendant's negligence.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 13-7 (2002)

37

INSTRUCTION NO. 26

**<u>Damages – Elements of Actual Damages – Pain and Suffering</u>**

Pain and suffering is a material element of damages on which a recovery may be based.  The plaintiff is entitled to compensation for his pain and suffering directly resulting from the wrongful acts of the defendant.

An award for pain and suffering compensates the injured person for the physical discomfort and the emotional response to the sensation of pain caused by the injury itself. In making an estimate of damages to be awarded for pain and suffering, you may consider:

    (1)  the nature and extent of the injuries and the suffering occasioned by them and its duration or prospective duration;

    (2)  the age, health, habits, and condition of the injured party before the injury as compared with his condition afterwards;

    (3)  the plaintiff's use of sedatives and other drugs to relieve pain and their effect; and

    (4)  any aggravation of pre-existing disorders by the incident in question.

Pain and suffering have no market price. They are not capable of exact measurement, and there is no fixed rule or standard whereby damages for them can be measured.

The amount of damages to be awarded for pain and suffering must be left to the judgment of you, the jury. Additionally, you may include such damage for pain and suffering as it is reasonably certain will of necessity result in the future from the injury. Future pain and suffering on the part of the plaintiff in consequence of the injury constitute a proper element of the damages which may be allowed, provided there is the requisite certainty that such pain and suffering will result.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 13-8 (2002)

INSTRUCTION NO. 27

**Damages - Elements of Actual Damages – Loss of Enjoyment of Life**

Loss of the capacity to enjoy life, resulting from a personal injury, is a proper element of damages. If you find evidence of "loss of enjoyment of life," you may award damages for this loss.

Damages for "loss of enjoyment of life" compensate for the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations. "Loss of enjoyment of life" damages compensate the plaintiff not only for the subjective knowledge that one can no longer enjoy all of life's pursuits, but also for the objective loss of the ability to engage in these activities.

Authority: Anderson, S.C. Requests to Charge - Civil, § 13-9 (2002)

39

INSTRUCTIONS NO. 28

**<u>Damages – Elements of Actual Damages – Medical Bills</u>**

In personal injury actions, the general rule is that the plaintiff may recover for the necessary and reasonable expenses caused by the injury, such as amounts necessarily incurred for medicine, medical services, hospital expense and care, and nursing. A person who suffers personal injuries because of the negligence of another is entitled to recover the reasonable value of medical care and expenses incurred for the treatment of the injuries to the time of trial, as well as the cost of those reasonably certain to be incurred in the future. Accordingly, a plaintiff may recover amounts incurred for past and future medical care, including hospital, physician, and nursing care costs; medicine; and other out-of-pocket and anticipated expenses, such as vocational, physical and other rehabilitation efforts. Recovery for medical expenses is controlled by what the services rendered were reasonably worth and not by what was actually paid or contracted to be paid.

If you determine from the evidence and under the law as I have instructed you that the plaintiff is entitled to recover damages, including medical, hospital, or other health care costs, then the plaintiff can only recover such sums as you determine from the evidence to be both reasonable and necessary. While the amount actually charged and incurred may be considered by you, you are not bound by that amount. You must find only such sum as is reasonable and necessary.

To recover for future medical expenses, the plaintiff must prove such expenses are reasonably certain to result in the future from the injury giving rise to the lawsuit.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 13-5 (2002)

40

INSTRUCTION NO. 29

**Damages – Future Damages**

A plaintiff cannot recover conjectural or speculative damages. However, if you find the plaintiff is entitled to a verdict for actual damages, your verdict should include an amount to cover any damages that the evidence shows will be reasonably certain to occur in the future. Future damages need not be proved to a mathematical certainty and often must be approximated. These future damages must be the result of the defendant's negligence. Any future damages that you award must be reduced to their present-day value.

Authority: Anderson, S.C. Requests to Charge - Civil, § 13-11 (2002)

INSTRUCTION NO. 30

## **Products Liability – Breach of Warranty – Buyer's**
## **Incidental and Consequential Damages**

<u>South Carolina Code section 36-2-715</u> states:

(1)  Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2)  Consequential damages resulting from the seller's breach include

     (a)  any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

     (b)  injury to person or property proximately resulting from any breach of warranty.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 13-40 (2002)

42

INSTRUCTION NO. 31

**<u>Fraud – Actual Damages</u>**

The measure of actual damages in an action for fraud is the difference between the value the plaintiff would have received if the facts had been as represented and the value he actually received, together with any special or consequential loss which is the natural and proximate result of the fraud. The defrauded plaintiff may recover miscellaneous consequential losses which are the direct and natural consequence of his acting on the faith of the representations.

The measure of damages for fraud is the actual pecuniary loss sustained. Thus, as a general rule, one injured by the commission of fraud is entitled to recover such damages as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded.

The recovery is restricted to such damages as were the natural and proximate consequences of the fraud, and such as can be clearly defined and ascertained, including those which were actually or presumptively within the contemplation of the parties when the fraud was committed. You should not speculate as to the actual damages, but rather award an amount that can be clearly defined and ascertained by the evidence.

The burden is on the plaintiff to prove the measure of his damages.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 18-10 (2002)

43

INSTRUCTION NO. 32

**<u>Compensatory Damages – Fixing Amount And Collateral Source</u>**

Should you find for the Plaintiff and against Merck in this case, you must fix the amount of your verdict. Therefore, you must determine if Merck is liable to the Plaintiff. After this, you must fix the total amount of your verdict for the Plaintiff, if any, in accordance with the other instructions of this Court. You will provide this information by filling in the appropriate blanks in the verdict form which I have given you. In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Gerald Barnett or because of the negligence, if any, of Dr. McCaffrey and Dr. Mikola. The Court, in entering judgment, will take into account your allocation, if any, of responsibility among all persons and entities whom you find contributed to Gerald Barnett's injuries.

Some of these damages, such as pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the Plaintiff for his injuries, no more and no less. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence.

A defendant is not entitled to have the damages for which it is liable reduced by proving that the Plaintiff has received or will receive compensation for the loss from another source wholly separate from the Defendant. In other words, you should not reduce the amount which you award the Plaintiff because of any payments which may have been made by insurance or medicare. Therefore, should you find that Merck is liable to the Plaintiff for damages, you should disregard any evidence of payments made by another source and consider the total amount of the damages.

Suggestions as to the amount of damages that should be awarded are mere arguments of counsel. You may consider them and use them only as guidelines to whatever extent they may aid you in arriving at a reasonable and just award in view of the evidence. Nonetheless, you are in no way bound by, nor should you use, any rigid mathematical formula. The determination of damages is solely your function and must be based on competent evidence.

Once again, the mere fact that I have given you instructions on the law of damages does not in any way suggest that I believe that any damages are due in this case. That is for you to decide.

<u>Authority</u>:  Jury Charge, Plunkett v. Merck, 05-4046, pages 17-18. (as modified)

INSTRUCTION NO. 33

**<u>Fraud – Punitive Damages</u>**

In this case, the plaintiff also asks for punitive damages.

In an action for fraud, punitive damages are warranted where the defendant knows the representation to be false, or where a false representation is recklessly made, as a positive assertion, without knowing or caring whether it is true or false. In the latter instance, liability for punitive damages is dependent upon whether the defendant was conscious or chargeable with consciousness of his wrongdoing.

> The recovery of punitive damages is not limited to cases where the false representations were actually known to be false at the time of the making of the representations. That is to say, knowledge by the defendant that his representations were false is not required for an award of punitive damages. It is only necessary that the defendant was conscious, or chargeable with consciousness, of his wrongdoing.

To award punitive damages, you must find by clear and convincing evidence that the fraud was committed in such a manner or under such circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the plaintiff's rights.

<u>Authority</u>: Anderson, S.C. Requests to Charge - Civil, § 18-11 (2002)

45

INSTRUCTION NO. 34

**Damages – Punitive Damages**

In this case, the plaintiff seeks punitive damages in addition to actual damages. Punitive damages, also known as exemplary damages, are imposed as punishment. They are not intended to compensate. Punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future. Moreover, they serve to vindicate a private right by requiring the wrongdoer to pay money to the injured party.

Punitive damages serve at least three important purposes: punishment of the defendant's reckless, willful, wanton, or malicious conduct; deterrence of similar future conduct by the defendant or others; and compensation for the reckless or willful invasion of the plaintiff's private rights. The paramount purpose for awarding punitive damages is not to compensate the plaintiff, but to punish and set an example for others.

What would justify an award of punitive damages? As you consider the issue of punitive damages, the highest burden of proof known to the civil law is applicable. Section 15-33-135 of the South Carolina Code provides:

In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence.

Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's actions were willful, wanton, malicious, or in reckless disregard of the plaintiff's rights. A conscious failure to exercise due care constitutes willfulness. It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the wrongdoer. Punitive damages will be allowed even when the defendant does not realize he is invading the plaintiff's rights so long as the act is committed in such a manner that a person of ordinary prudence would conclude it was done in reckless disregard of the rights of another.

The plaintiff cannot recover punitive damages based on negligent conduct. Negligence is the doing of some act which a person of ordinary prudence would not have done under similar circumstances or failure to do what a person of ordinary prudence would have done under similar circumstances. Mere negligence will not support a punitive damages award.

To recover punitive damages, the plaintiff must prove by clear and convincing evidence that the defendant's actions were willful, wanton, or reckless. The words recklessness, willfulness and wantonness are synonymous. The terms are used to describe a conscious failure to exercise and observe reasonable or due care.

Recklessness is distinguished from negligence. Negligence is the failure to use due care. Negligence is carelessness. Negligence is failure by omission or commission to exercise due care as a person of ordinary reason and prudence would exercise in the same circumstances.

Recklessness is a higher degree of culpability and responsibility. Recklessness signifies a conscious

46

failure to exercise due care. Recklessness is a conscious indifference to the rights of the plaintiff, or a reckless disregard of the rights of the plaintiff. Recklessness is an awareness of wrongful conduct and a continuation to act regardless of consequences.

The test for determining whether a tort may be deemed reckless, willful or wanton is whether it has been committed in such a manner and under such circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the rights of the injured party.

Before you can award punitive damages, you must first find the plaintiff is entitled to actual or nominal damages. There must be an award of actual or nominal damages for a verdict of punitive damages to be supported. This rule is premised on the fact that liability must be established before a plaintiff can seek punitive damages. Therefore, if you do not award actual or nominal damages, then you cannot award punitive damages.

There is no formula or standard that can be used as a measure for assessing punitive damages. However, factors relevant to your consideration of punitive damages are:

> (1) the character of the defendant's acts;
> (2) the nature and extent of the harm to plaintiff which defendant caused or intended to cause;
> (3) defendant's degree of culpability;
> (4) the punishment that should be imposed;
> (5) duration of the conduct;
> (6) defendant's awareness or concealment;
> (7) the existence of similar past conduct;
> (8) likelihood the award will deter the defendant or others from like conduct;
> (9) whether the award is reasonably related to the harm likely to result from such conduct; and
> (10)    defendant's wealth or ability to pay.

The financial condition of a defendant is a factor you should consider in awarding punitive damages. However, there is no requirement that the defendant be a person of means before you are justified in awarding punitive damages. While the wealth of a defendant is a relevant factor in assessing punitive damages, it is not necessarily controlling. In other words, the financial worth of a defendant is a fact properly to be considered by you in determining the amount to be awarded as punitive damages, but evidence of net worth is not a prerequisite to a punitive damage award.

When under proper allegations a plaintiff proves, by clear and convincing evidence, a willful, wanton, reckless, or malicious violation of his rights, it is not only the right but the duty of the jury to award punitive damages. Accordingly, if you should find that the plaintiff is entitled to recover punitive damages in addition to actual damages, it would be your duty to include such damages in your verdict and award such an amount as you may deem reasonable and proper in light of the facts and circumstances.

Authority: Anderson, S.C. Requests to Charge - Civil, § 13-21 (2002)

INSTRUCTION NO. 35

**<u>Concluding Instructions and Verdict Form</u>**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

I have prepared a special verdict form for your convenience and to aid you in reaching a unanimous decision. You will take the form with you to the jury room. The verdict must represent the considered judgment of each juror.

You will note that the form contains several interrogatories or questions. The answer to each question must be the unanimous answer of the jury. In the space provided below each question, you will find directions which instruct you either to answer the next question, to answer some other question, or to stop and return to the courtroom with your verdict. You must carefully follow these directions as you complete the form.

        [READ THE VERDICT FORM]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. First, select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given about your conduct during the trial. After you have reached your unanimous verdict, your foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, any numerical division on any question.

If you want to communicate with me at any time, please give a signed written message or question to the Marshall, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

<u>Authority</u>:  Jury Charge, Plunkett v. Merck, 05-4046, pages 19-20. (as modified)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Phillip A. Witmann and Merck's Counsel, Andrew L. Goldman by e-mail and/or U.S. Mail, and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using CM/ECF system which will send a Notice of Filing in accord with the procedures established in MDL 1657 on this 2nd day of August, 2006.


   /s/ Mark P. Robinson, Jr.
MARK P. ROBINSON, JR.