UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT MERCK & CO., INC.
("MERCK") TO EXCLUDE COMMUNICATIONS BETWEEN MERCK AND THE FDA
IN 2005 ABOUT THE POTENTIAL REINTRODUCTION OF VIOXX® TO THE
MARKET AND/OR ANY PROPOSED BLACK BOX WARNING**

**(MOTION IN *LIMINE* NO. 1)**

Merck moves to exclude a "Type A Meeting Background Package" that Merck prepared in early 2005 and presented to the FDA as a platform for discussing the potential reintroduction of Vioxx to the United States market.  (Pl.'s Exs. 1.1031, 1.1220.)  Merck also moves to exclude FDA Meeting Minutes dated May 25, 2005 that reflect the discussions between Merck and the FDA about the possibility of reintroducing Vioxx to the market.  (Pl.'s Ex. 1.1219.)[1]  At trial,

---

[1] The Court has not previously ruled on the admission of these exhibits.

1

822913v.1

plaintiff may attempt to argue that the statements in these documents are: (i) admissions by Merck that Vioxx causes cardiovascular events; (ii) evidence that Merck knew or should have known that Vioxx causes cardiovascular events; (iii) evidence that Vioxx should have contained a different warning at the time of plaintiff's injury in February 2003; and/or (iv) evidence that Merck could have unilaterally added a black box warning to the Vioxx label.  The documents at issue prove no such thing.  But, more importantly for present purposes, they are inadmissible on at least three separate grounds.

First, evidence of Merck's subsequent remedial measures do not constitute admissions and, under Rule of Evidence 407, cannot be used to prove negligence, culpable conduct, or that Vioxx should have contained a different warning.  Second, none of this data was available during the time period relevant to plaintiff's case, so it cannot possibly prove Merck's knowledge at the time of plaintiff's injury.  Finally, Merck's proposed black box warning does not prove that Merck could have unilaterally added such a warning to the Vioxx labeling prior to plaintiff's February 2003 injury.  Because only the FDA can decide that a black box warning is appropriate, plaintiff should not be allowed to incorrectly argue to the jury that Merck could have done something prohibited by FDA regulations.  Accordingly, Merck requests that all evidence and argument related to the 2005 discussions between Merck and the FDA concerning the possible reintroduction of Vioxx – including Plaintiff's Exhibits 1.1031, 1.1220, and 1.1219 – be excluded.

I.    FACTUAL BACKGROUND.

In February 2005, the Food and Drug Administration ("FDA") convened a three-day Advisory Committee meeting to discuss COX-2 inhibitors.[2]  At that meeting, the Advisory

---

[2] Celebrex® and Bextra® are the only other COX-2 inhibitors that have been sold in the United States.

Committee concluded that data exists supporting the existence of a "class effect" for COX-2 inhibitors regarding cardiovascular safety. These conclusions were adopted and memorialized in the FDA's April 6, 2005 Memorandum ("FDA Memo," attached hereto as Ex. A). Based on this information, the FDA decided that all COX-2 inhibitors would contain a black-box warning on the label. Specifically, the FDA Memo states, "[w]e recommend that the professional labeling (package insert) for all prescription NSAIDs, including both COX-2 selective and non-selective drugs, be revised to include a boxed warning highlighting the potential increased risk of CV events." (FDA Memo at 13-14.) The Advisory Committee also concluded that Vioxx's risk-benefit profile supported the reintroduction of Vioxx to the United States market. (*Id.* at 18-19.)

In response to the Advisory Committee's finding, Merck prepared and presented a "Type A Meeting Background Package" (the "Background Package") to the FDA on March 15, 2005. (Pl.'s Ex. l.1031, 1.1220.) The Background Package contains several draft labeling proposals, including a proposed black box warning that includes two points Merck anticipates plaintiff will argue are admissions by Merck that are relevant to show that Vioxx causes cardiovascular events:

- *First*, Merck noted the FDA's official position on the "class effect" of COX-2 inhibition and – in order to address this finding – proposed the following labeling language to the FDA: "Use of selective COX-2 inhibitors has been associated with an increased risk of serious cardiovascular thrombotic events." (Pl.'s Ex. 1.1031 at MRK-I8940096282.)
- *Second*, Merck indicated that "[a] black box is proposed to convey the results of the APPROVe study," which were first made available to Merck in September 2004 and thus were not available when the approved warnings at issue in this case were put into effect in April 2002. (Pl.'s Ex. 1.1031 at MRK-I8940096278.)

On May 3, 2005, the FDA and Merck had a face-to-face meeting to discuss the Background Package and the possible reintroduction of Vioxx to the market. At that meeting, a detailed discussion of Merck's Background Package took place. This discussion is reflected in

the FDA Minutes, dated May 25, 2005 ("Meeting Minutes"). (Pl.'s Ex 1.1219.) To date, no decision has been reached regarding the reintroduction of Vioxx to the market.

II. **RULE 407 REQUIRES THIS COURT TO EXCLUDE THE BACKGROUND PACKAGE AND RELATED COMMUNICATIONS BETWEEN MERCK AND THE FDA.**

Pursuant to Rule 407, "evidence of the subsequent measures [taken by a party] is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction" when those measures are taken "after an injury or harm allegedly caused by [the product]." This rule requires the Court to exclude: (i) the Background Package prepared by Merck in 2005, which included draft Vioxx labels; and (ii) the statements Merck made to the FDA, as reflected in the 2005 Meeting Minutes. The purpose of Rule 407 is to "exclude[] evidence of subsequent remedial measures *as proof of an admission of fault*." *See* FED. R. EVID. 407, advisory committee's note (emphasis added). As the advisory committee's notes to the rule explain: "The rule rests on two grounds. (1) The conduct is not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence . . . . (2) The other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Id.*

Applying Rule 407 in a case very similar to this one, this Court has held that a pharmaceutical company's subsequent remedial measures are inadmissible. *In re Propulsid Prods. Liab. Lit.*, 2003 U.S. Dist. LEXIS 3824 at *5 (E.D. La 2003). In *Propulsid*, the defendant drug manufacturer filed a motion in *limine* to exclude all evidence about a drug manufacturer's program to limit the distribution of its drug. As is the case here, the manufacturer's program was implemented because of knowledge the manufacturer obtained *after* plaintiff was injured. *Id*. at

4

*3. This Court held that the evidence of the program was a subsequent remedial measure that is inadmissible. *Id.* at *4. By the same reasoning, the Court should exclude all evidence relating to Merck's Background Package or the Meeting Minutes. The statements referenced in these documents were made after plaintiff's injury and, under Rule 407, cannot be used to prove that Merck was culpable, that Vioxx was defective, or that Merck could have unilaterally added a black box warning to the Vioxx label. *See* FED. R. EVID. 407 (precluding evidence of subsequent measures offered to show "negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction").

### III. THE BACKGROUND PACKAGE AND MERCK'S DISCUSSION OF THE APPROVE DATA ARE INADMISSIBLE TO PROVE MERCK'S KNOWLEDGE IN FEBRUARY 2003, THE DATE OF PLAINTIFF'S INJURY.

Plaintiff's injury occurred in February 2003. If the jury decides that Vioxx caused the injury, it must also decide whether Merck failed to provide an adequate warning, based on the scientific evidence available at that time. *See Sturm, Ruger & Co. v. Bloyd*, 586 S.W.2d 19, 21 (Ky. 1979); *Byrd v. Proctor & Gamble Mfg. Co.*, 629 F. Supp. 602, 605 & n.5 (E.D. Ky. 1986) (applying Kentucky law). Because the evidence at issue in this motion post-dates Mr. Smith's injury, it is also inadmissible on relevance grounds.

As this Court no doubt recalls, the APPROVe data was first unblinded in September 2004. Six days later, Merck withdrew Vioxx from the market, because the interim data from APPROVe indicated that study participants taking Vioxx suffered a statistically significant risk of cardiovascular events when compared to the study participants not taking Vioxx. Merck's analysis of this data, as reflected in the Meeting Minutes and its proposed labeling for Vioxx, is not probative of the alleged state of Merck's knowledge in February 2003. The proposed labeling, in particular, was drafted in response to the FDA's 2005 finding that all COX-2

5

inhibitors are associated with an increased risk of cardiovascular events[3] – information that was not available at the time of plaintiff's February 2003 injury. It would thus be improper to permit plaintiff to use information available and documents created *in 2005* to prove what Merck knew or should have known *in 2003*.

Further, since the data discussed in the Background Package and the Meeting Minutes were not available when plaintiff allegedly took Vioxx and suffered his injury, these documents should also be excluded under Federal Rule of Evidence 403. There is a significant risk that the evidence would confuse the jury about the relevant dates and information at issue in this case. Because introducing such evidence "threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later," it is unduly prejudicial and should be excluded. *Grenada Steel Indus., Inc. v. Alabama Oxygen Co.*, 695 F.2d 883, 888 (5th Cir. 1983).

**IV. EVIDENCE THAT MERCK PROPOSED A BLACK BOX WARNING IN 2005 IS NOT ADMISSIBLE TO PROVE THAT MERCK COULD HAVE UNILATERALLY ADDED A BLACK BOX WARNING TO THE VIOXX LABEL.**

The FDA has exclusive power to require a black box warning on a prescription drug label. Accordingly, Merck's proposed black box warning is inadmissible to prove that Merck could have unilaterally added such a warning to the Vioxx label before February 2003. This is especially true given that the data on which the draft was based were indisputably unavailable until September 2004, approximately eighteen months after plaintiff's injury.

A black box warning is a prominently displayed box the FDA requires for special problems. *See* 21 C.F.R § 201.57(e). Federal regulations prohibited Merck from including a

---

[3] "[I]t should be emphasized that an *association* is not equivalent to *causation*." Reference Manual on Scientific Evidence at 480 (emphasis added). Plaintiff should not be permitted to blur this line by arguing that an association between COX-2 inhibition and an increased risk of cardiovascular events is proof of causation.

black box warning unless specifically required by the FDA – "to ensure the significance of boxed warnings in drug labeling, they are permitted in labeling only when specifically required by the FDA." 44 Fed. Reg. 37,434, 37,448 (June 26, 1979) (comments of the Commissioner of the FDA regarding 21 C.F.R. § 201.57); *see also* 21 C.F.R. § 201.57(e) ("If a boxed warning is required, its location will be specified by the Food and Drug Administration."). Claims or argument that the Vioxx label should have included a black box warning are preempted.

A federal regulation preempts any state-imposed requirement if, among other things, state law mandates or places irresistible pressure on the subject of the regulation to violate federal law. *See AT&T Corp. v. Public Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004). Argument that Merck should have included a black box warning on the Vioxx label, when it was not permitted to add a label without a FDA mandate, would trigger this principle of federal preemption. *See Ehlis v. Shire Richwood, Inc.*, 233 F. Supp. 2d 1189, 1197 (D.N.D. 2002), *aff'd*, 367 F.3d 1013 (8th Cir. 2004) (finding FDCA preempts a state failure-to-warn claim where plaintiffs asserted that the label for Adderall® should have contained a black box warning). Merck should not have to violate express FDA regulation and policy in order to avoid future civil liability. *See* Daniel E. Troy, *FDA Involvement in Product Liability Lawsuits,* UPDATE, Jan/Feb. 2003, at 4 ("Allowing state courts and juries to impose additional requirements in direct conflict with FDA determinations could require drug manufacturers o choose between state and federal compliance. It also could lead to inconsistency in drug firms' communications to physicians and patients about drugs."). As a result, any contention that Merck should have added a black box warning for Vioxx is preempted because such a claim conflicts with federal regulations.

This Court should not allow plaintiff to offer Merck's proposed black box label, which was drafted in 2005 after Vioxx was withdrawn from the market, to prove Merck could have

7

unilaterally added a black box warning at any time, much less years earlier when Mr. Smith's event took place.

## V. CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court exclude all testimony and argument related to the 2005 discussions between Merck and the FDA concerning the possible reintroduction of Vioxx – including Plaintiff's Exhibits 1.1031, 1.1220, and 1.1219.

Dated:  August 7, 2006

Respectfully submitted,

/s Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
Emily Thacher-Renshaw
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

Attorneys for Merck & Co., Inc.

9

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Memorandum in Support of Merck's Motion To Exclude Communications Between Merck and the FDA in 2005 About the Potential Reintroduction of Vioxx® to the Market and/or Any Proposed Black Box Warning has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

                                                    */s/ Dorothy H. Wimberly*