UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH | * | |
| Plaintiff, | * | |
| vs. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE EVIDENCE OF, OR REFERENCE TO, MARKETING AND
PROMOTIONAL MATERIALS UNRELATED TO MR. SMITH OR HIS
<u>PRESCRIBING PHYSICIAN DR. MICHAEL GREFER</u>**

**(MOTION IN *LIMINE* NO. 3)**

Merck asks the Court to exclude documents and testimony regarding marketing efforts that Mr. Smith's prescribing physician never saw and which had no impact on his decision to prescribe Vioxx to Mr. Smith. In *Plunkett I* and *II*, the Court reserved ruling on these issues but recognized that Rule "403 will have to be considered again if material is too voluminous or *unrelated to instant case issues or defenses*." (*See* November 20, 2005 Order re Merck's

822935v.1

Motions in *Limine* at 2 (emphasis added).)[1]  Ultimately, the plaintiff in *Plunkett* was permitted to introduce into evidence many of the materials covered by this motion.  Merck respectfully requests that the Court revisit its prior ruling for two reasons.

First, none of the evidence discussed in this motion is relevant to Mr. Smith's case, given that Mr. Smith's prescribing physician, Dr. Grefer, testified that he had not seen any of Merck's internal company documents prior to his deposition and did not base his prescribing decision on such documents.  Second, any marginal relevance is outweighed by the prejudicial effect and waste of time that would result from the documents' admission.  Merck thus respectfully requests that the Court exclude the following categories of documents identified by plaintiff as potential trial exhibits, as well as any deposition testimony, trial testimony, or argument related to these documents:

- Internal Merck marketing budgets, sales projections, and marketing research, including the marketing efforts reflected therein;

- Internal Merck communications concerning marketing strategies;

- Merck's marketing training materials;

- Notes from meetings between Merck representatives and physicians who were not involved in Mr. Smith's treatment; and

- Any other materials not viewed by Dr. Grefer but offered to prove that Merck fraudulently misrepresented or concealed risks associated with Vioxx.

These documents have one thing in common:  Dr. Grefer did not see or rely on them when he wrote Mr. Smith's Vioxx prescription.  For the reasons stated below and in Merck's prior briefing on irrelevant marketing materials, they should be excluded.

---

[1] Rather than re-brief in full the arguments it has made previously, Merck hereby incorporates by reference its prior motions on this subject. (*See* Motion of Merck To Exclude Marketing Materials Unrelated to Irvin and His Physician (Motion in *Limine* No. 1), filed in *Plunkett v. Merck* on Nov. 4, 2005 and Jan. 30 2006 (Record Docket Nos. 1266 and 3023).)

## I. MERCK'S INTERNAL TRAINING AND MARKETING MATERIALS, WHICH DID NOT IMPACT DR. GREFER'S DECISION TO PRESCRIBE VIOXX TO MR. SMITH, ARE IRRELEVANT AND UNDULY PREJUDICIAL.

Dr. Grefer testified that he did not base his decision to prescribe Vioxx to Mr. Smith on any internal Merck marketing materials. (June 29, 2006 Discovery Deposition of Michael A. Grefer, M.D. ("M. Grefer 6/29/06 Discovery Dep.") at 85:7-12, attached hereto as Ex. A.) Rather, based on his experience and understanding of the science behind the drug, Dr. Grefer believed that Vioxx would provide Mr. Smith with more effective relief for his pain and arthritis than any other medication. (June 29, 2006 Trial Deposition of Michael A. Grefer, M.D. ("M. Grefer 6/29/06 Trial Dep.") at 15:3-6, attached hereto as Ex. B; July 27, 2006 Trial Deposition of Michael A. Grefer, M.D. ("M. Grefer 7/27/06 Trial Dep.") at 134:16-23, attached hereto as Ex. C.)

Nor could Dr. Grefer have relied on internal Merck documents in making his prescribing decisions. Given the very nature of these documents, he never saw them. (M. Grefer 7/27/06 Trial Dep. at 125:3-7; 113:17-114:7.) Yet, these internal documents constitute the bulk of plaintiff's proposed marketing exhibits. Because Dr. Grefer never saw the materials and could not have relied on them in making his decision to prescribe Vioxx to Mr. Smith, they are utterly irrelevant and should be excluded. Moreover, because these documents would divert the jury's focus from the key issues to be decided in this case, they are inadmissible under Rule 403.

### A. Internal Marketing Evidence That Plaintiff Cannot Show Influenced Dr. Grefer's Decision To Prescribe Vioxx Is Not Relevant To Plaintiff's Products Liability Claims.

Kentucky, like most other states, has adopted the "learned intermediary rule," which provides that a prescription drug manufacturer's duty to warn runs to the physician, not the patient. *Larkin v. Pfizer*, 153 S.W.3d 758 (Ky. 2004) (answering in the affirmative a certified question from the Sixth Circuit as to whether the "learned intermediary rule" is applicable under

3

Kentucky law to cases where a prescription drug manufacturer allegedly warned the prescribing physician but not the ultimate consumer of the risks of the drug in question).[2]  The rule reflects an understanding that "the prescribing physician is in a superior position to impart the warning and can provide an independent medical decision as to whether use of the drug is appropriate for treatment of a particular patient." *Id.* at 763.

Federal courts across the country have consistently held that internal marketing and promotional materials never seen or relied upon by a prescribing physician are to be excluded as irrelevant.  *See, e.g., In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 81092, at *1 (E.D. Tex. Feb. 21, 1997) (granting defendants' motion in limine to exclude internal marketing and promotional materials and holding that "[a]bsent evidence that the physicians were exposed to [such materials]," they are not relevant); *see also Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1095, 1123 n.92 (D. Kan. 2002) (observing in failure-to-warn case that court previously granted motion in limine to exclude marketing material not relied on by prescribing physician), *aff'd*, 356 F.3d 1326 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 40 (2004).  Since Dr. Grefer never saw or relied on any of the Merck internal marketing materials at issue in this motion, these materials could not have influenced his decision to prescribe Vioxx to Mr. Smith.[3]  Therefore, they have no probative value and must be excluded.

      **B.**      **For Similar Reasons, Internal Marketing Documents Are Irrelevant To Plaintiff's Fraud Claims.**

A plaintiff must prove detrimental reliance in order for a fraud claim to be successful. *Yeager v. McLellan*, 177 S.W. 3d 807, 809 (Ky. 2005) (outlining the elements of a fraudulent

---

[2] The *Larkin* Court also declined to adopt the "direct-to-consumer advertising" exception to the "learned intermediary" rule.  *Larkin*, 153 S.W. 3d at 766, 770.

[3] Of course, there is no evidence that Mr. Smith saw or relied on any of these internal marketing materials either.  But, as explained above, the reliance of the prescribing physician is what matters in a case such as this one, which is governed by the learned intermediary doctrine.

822935v.1

misrepresentation claim) (citing *United Parcel Service Co. v. Rickert*, 998 S.W. 2d 464, 468 (Ky. 1999)); *Scheck Mech. Corp. v. Borden, Inc.,* 186 F. Supp. 2d 724, 733-34 (W.D. Ky. 2001) (outlining the elements for a fraudulent concealment claim) (citing *Smith v. General Motors Corp.,* 979 S.W. 2d 127, 129 (Ky. Ct. App. 1998)).  Where, as here, detrimental reliance is missing, the claim cannot be sustained.  *See, e.g. United Parcel Service Co.,* 998 S.W. 2d at 473; Restatement (Second) of Torts § 546 (stating that "[t]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, *if his reliance is a substantial factor in determining the course of conduct that results in his loss*." (emphasis in original)).

Again, because plaintiff cannot show that Dr. Grefer relied on internal Merck marketing materials related to Vioxx in deciding to prescribe the drug to Mr. Smith, the documents are inadmissible to prove plaintiff's fraud claims.

    **C.**    **Evidence Or Argument Relating To Merck's Internal Marketing Materials Should Also Be Excluded Under Rule 403.**

In addition to being inadmissible on relevance grounds, Merck's internal promotional and marketing materials should be excluded under Rule 403.  As explained in Merck's prior briefing on this subject, if the Court were to admit these documents, Merck would be forced to defend itself against plaintiff's prejudicial attacks by introducing testimony to put the various marketing and promotional documents into context – explaining industry-wide practices and the purpose of particular categories of documents.  The jury's attention almost certainly would be diverted from the question properly before it: whether Vioxx caused Mr. Smith's heart attack and whether Dr. Grefer was warned of Vioxx's then-known risks.  In short, admission of the documents would result in needless delay and undue prejudice to Merck.  FED. R. EVID. 403.

In fact, courts have specifically recognized that marketing materials – even when they

have some degree of relevance, which these documents do not – carry such an "overwhelming" danger of unfair prejudice that they must be excluded. *La Plante v. Am. Honda Motor Co., Inc.*, 27 F.3d 731, 740 (1st Cir. 1994); *see also Miller*, 196 F. Supp. 2d at 1123 n.92 (recognizing the prejudicial impact of marketing materials not relied on by prescribing physicians). In *La Plante*, plaintiff sought to turn the success of a commercial product against its manufacturer by introducing internal marketing materials and arguing that the manufacturer had been unduly driven by marketing and profit concerns. The court held that the materials were inadmissible because the "risk that the jury would be prejudiced by this reference to the enormous profitability [from sales of the product] was almost inescapable." 27 F.3d at 740. The same reasoning applies here, and counsels in favor of exclusion.

## II. THE COURT SHOULD EXCLUDE ALL IRRELEVANT AND UNDULY PREJUDICIAL INTERNAL MERCK MARKETING MATERIALS FROM EVIDENCE.

For the reasons explained above, the Court should exclude the following categories of documents, and any related testimony or argument:

### A. Internal Marketing Budgets, Sales Projections, And Marketing Research.

Merck's internal marketing budgets, sales projections, and marketing research were for internal use only and were not made available to physicians. They are speculative forecasts of the costs of marketing and promotion and forecasts of ranges of anticipated sales of Vioxx if certain assumptions hold true. (*See, e.g.*, Pl.'s Exs. 1.0009, 1.0127, 1.0150, 1.0166, 1.0316, 1.0317, 1.0319, 1.0331, 1.0365, 1.1135 and 1.1568.) Dr. Grefer testified that he never saw internal documents from any pharmaceutical company. (M. Grefer 7/27/06 Trial Dep. at 125:3-7; 113:17-114:7.) As Dr. Grefer's prescribing decision could not have been influenced by materials that he never saw, these internal documents should be excluded.

### B.     Internal Communications Concerning Marketing Strategies.

There is similarly no evidence that Dr. Grefer was ever exposed to or influenced by Merck's internal communications regarding marketing strategies or decisions. Plaintiff nonetheless is attempting to introduce a selected sampling of these irrelevant internal communications, including the following:

- July 1, 1999 Memorandum from Susan Baumgartner entitled "Physicians to Neutralize" ("Baumgartner Memorandum"), as well as related communications to and from Susan Baumgartner. (Pl.'s Exs. 1.0013, 1.0407, 1.0408, 1.0414, 1.0415, 1.1717, 1.1718, 1.1720, 1.2631; *see also*, February 25, 2005 Deposition of Susan L. Baumgartner ("Baumgartner Dep.") at 28:23-41:3, attached hereto as Ex. D.) The Baumgartner Memorandum is accompanied by a list of physicians who Merck believed might have negative views of Vioxx. Merck hoped to share reliable, accurate data with those physicians, bringing them to a more balanced or "neutral" position about the medication. Dr. Grefer is not on the list and there is no evidence that he was in contact with any doctor who was on the list.

- February 23, 1998 Memorandum from David Anstice. This document, Plaintiff's Exhibit 1.0140, reflects an effort to generate enthusiasm and "rally the troops" at the time of Vioxx's introduction to the market. It is a purely internal Merck communication that was not seen by Dr. Grefer and should be excluded as irrelevant. Any deposition testimony referencing the document is inadmissible for the same reason. (*See, e.g.*, March 16, 2005 Deposition of David W. Anstice, ("Anstice Dep.") at 191:2-14, 193:18-196:19, attached hereto as Ex. E.)

- January 23, 2001 Memorandum From L.M. Sherwood to D.W. Anstice re: Academic Interactions. This memo, Plaintiff's Exhibit 1.0160, addresses Merck's alleged interactions with eight different physicians. Dr. Grefer is not on this list. Thus, the document and any testimony referencing it are irrelevant to the issues presented in this case.[4] (*See, e.g.*, Anstice Dep. at 296:18-300:25.)

- Memorandum From Susan Baumgartner to Lou Sherwood re: Gurkipal Singh. Plaintiff's Exhibit 1.0329 concerns Dr. Singh's relationship with Merck. (*See also* Baumgartner Dep. at 62:5-69:11.) Because Dr. Singh has no involvement in this case, the memo has no probative value. Moreover, there is no evidence that Dr. Grefer saw the memo, or that he or anyone he spoke to about Vioxx was aware of the contents of the memo when he prescribed Vioxx to Mr. Smith.

---

[4] For similar reasons, Plaintiff's Exhibit 1.0418 (Memo from R. Landenberger to J. Glasmire) should be excluded.

7

822935v.1

- Agreement Between Dorothy Hamill Entertainment and Merck. The Dorothy Hamill agreement, Plaintiff's Exhibit 1.0337, has no conceivable relevance to Mr. Smith's claims. Moreover, there is no evidence that the particulars of the agreement had any impact on the content of any Vioxx advertisements. Evidence of how much Ms. Hamill was paid to appear in ads would serve no legitimate purpose, and would only arouse the prejudice of the jury.

C.  **Internal Training Materials.**

Plaintiff also seeks to introduce Merck training materials that are entirely irrelevant. There is no evidence that any of them were ever seen, much less relied upon, by Dr. Grefer.

These irrelevant training documents include, by way of example only:

- "Be The Power" presentation materials. These materials, Plaintiff's Exhibit 1.0060, if viewed at all, were viewed only at internal gatherings of Merck's sales force. And there is no evidence that Dr. Grefer was exposed to or influenced by the materials. Therefore, they could not have had any impact on his prescribing decision.

- "Dodge Ball." This training game, Plaintiff's Exhibit 1.0007, was designed to teach Merck sales representatives how to provide accurate answers to substantive questions likely to be posed in the field by prescribing physicians. Contrary to the inflammatory spin plaintiff is likely to adopt, it did not train Merck representatives to "dodge" physician's questions. But, in any event, there is no evidence Dr. Grefer was ever influenced by "Dodge Ball," either directly or indirectly. It thus has no relevance to this case. The Court should exclude the document and any related testimony. (*See, e.g.*, March 17, 2005 Deposition of David W. Anstice ("Anstice 3/17/05") at 455:12-463:20, attached hereto as Ex. F; May 17, 2005 Deposition of Edward M. Scolnick, M.D. ("Scolnick Dep.") at 636:14-645:3, attached hereto as Ex. G.)

- May 23, 2001 Bulletin for VIOXX: VIOXX Gastrointestinal Outcomes Research Study and CLASS Study for Celebrex. There is no evidence this document, Plaintiff's Exhibit 1.0061, was ever seen by Dr. Grefer.

- The Cardiovascular Card. The so-called "CV card" that plaintiff will allege evidences some sort of misleading sales pitch made by Merck sales representatives is similarly irrelevant because there is no evidence it was ever shown to Dr. Grefer. (*See* Pl.'s Exs. 1.0008 and 1.0062; *see also* Scolnick Dep. at 600:22-635:20.)

- Other Generic Training Materials. Plaintiff's exhibit list also includes sales technique materials, such as "Needs Based Selling," and the "Basic Training Leader's Guide" (Pl.'s Exs. 1.0067 and 1.0066), that are not even related to the sale of Vioxx and are irrelevant to the adequacy of the information provided by Merck to Dr. Grefer.

8

### D.   Other Promotional Materials With No Nexus To This Case.

All promotional materials produced or distributed after the time of Mr. Smith's heart attack, directed to physicians other than Dr. Grefer, or otherwise never seen or relied upon by Dr. Grefer, are irrelevant and should be excluded. Plaintiff has listed a number of documents that fit into this category on his exhibit list, including:

- <u>Records of various internal Merck communications relating to promotional or marketing activities</u>. These materials include notes of telephone calls from consumers or Merck representatives and internal communications about advertising and marketing issues, and other activities that took place after Mr. Smith's heart attack. (*See, e.g.*, Pl.'s Exs. 1.0164, 1.0237, 1.0238, 1.0250 and 1.1532.)

- <u>Draft press releases</u>. Internal drafts of Merck press releases could not have affected Dr. Grefer's prescribing decision. These documents are thus irrelevant. (*See, e.g.*, Pl.'s Exs. 1342, 1422, 1531, 1612, and 1736.)

- <u>Internal documents suggesting responses to questions posed by doctors in the field</u>. These documents, which pose hypothetical questions and answers for the use of company representatives in the field, have no connection to Dr. Grefer or Mr. Smith. (*See, e.g.*, Pl.'s Exs. 1.0063, 1.0064, 1.0065.)

- <u>Documents used to detail or inform physicians other than Dr. Grefer</u>. These include promotional documents and materials that may have been seen by physicians other than Dr. Grefer, but undisputedly not by Dr. Grefer himself. (*See, e.g.*, Pl.'s Exs. 1.0061 and 1.0062.)

- <u>Other marketing materials never seen or relied upon by Dr. Grefer</u>. Plaintiff seeks to introduce marketing materials about which Dr. Grefer has no personal knowledge. (*See, e.g.*, Pl.'s Exs. 1.0125 and 1.0140.) Plaintiff cannot proffer evidence that Dr. Grefer knew about or was indirectly influenced by these documents. Therefore, they have no relevance to this case.

### E.   Notes From Meetings With Irrelevant Physicians.

Finally, plaintiff seeks to introduce notes of meetings between Merck and physicians who never saw, never treated, never prescribed Vioxx to, and never even met Mr. Smith. (*See, e.g.*, Pl.'s Ex. 1.0285.) These "call notes," and other communications with physicians who have no nexus to this case, have no relevance to whether Merck accurately disseminated information to Mr. Smith's own treating physician, Dr. Grefer.

9

**III.  CONCLUSION.**

For the reasons stated above, Merck respectfully requests that the Court exclude all evidence of:

1. Merck's internal marketing budgets, sales projections and marketing research, including the marketing efforts detailed therein;

2. Merck's internal communications concerning marketing strategies or decisions;

3. Merck's internal training materials;

4. Notes of meetings between various Merck sales representatives and physicians with no involvement in this case or with this patient; and

5. All other promotional materials, including evidence of any promotional materials (a) produced or distributed after Mr. Smith was prescribed Vioxx, (b) directed to physicians other than Dr. Grefer, and/or (c) never seen or relied upon by Dr. Grefer.

Dated: August 7, 2006

    Respectfully submitted,

    */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

    Defendants' Liaison Counsel

    Philip S. Beck
    Andrew Goldman
    Carrie A. Jablonski
    BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
    54 West Hubbard Street, Suite 300
    Chicago, Illinois 60610
    Phone: 312-494-4400
    Fax:    312-494-4440

    Richard B. Goetz
    Ashley A. Harrington
    O'MELVENY & MYERS LLP
    400 South Hope Street
    Los Angeles, CA 90071
    Phone: 213-430-6000
    Fax:    213-430-6407

    And

    Douglas R. Marvin
    Robert A. Van Kirk
    Emily Thacher-Renshaw
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Phone: 202-434-5000
    Fax:    202-434-5029

    Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Memorandum in Support of Motion of Merck to Exclude Evidence of, or Reference to, Marketing and Promotional Materials Unrelated to Mr. Smith or His Prescribing Physician Dr. Michael Grefer has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

                                                   */s/ Dorothy H. Wimberly*