UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No.  1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to** | * | |
| **Case No. 2:05-CV-04379** | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| **ROBERT G. SMITH** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF MOTION TO EXCLUDE (1) EVIDENCE OF MOTIVE AND (2) EVIDENCE RELATING TO THE ASSETS AND PROFITABILITY OF MERCK OR TO THE COMPENSATION AND <u>FINANCIAL DECISIONS OF ITS EMPLOYEES</u>**

**(MOTION IN *LIMINE* NO. 5)**

In *Plunkett v. Merck*, the Court granted Merck's motion to exclude evidence of motive and assets, but noted that such evidence might be relevant at a possible punitive damages phase of trial.  (Nov. 20, 2005 Order re Merck's Motions in *Limine* at 2.)  Under Kentucky law, evidence of a defendant's financial condition may not be considered in determining the applicability or amount of punitive damages, or *even raised* in a case where punitive damages *could* be awarded.  *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 167 (Ky. 2004) ("we are clearly of the opinion that *no evidence as to the financial condition* of either defendant or

822942v.1

plaintiff *should be admitted in any case in which punitive damages might be recovered*" (emphasis added)).  For this reason, as well as the reasons articulated in Merck's prior briefing on this subject – which is summarized below – the Court should prohibit plaintiff from offering at trial any evidence about the alleged "motives" of Merck or its employees, the assets or profitability of Merck, or how much Merck's CEO and other employees earned.  Those issues have nothing to do with whether Mr. Smith's short-term use of Vioxx® caused his alleged injuries, or whether Merck provided Mr. Smith's prescribing physicians with adequate warnings about the risks of cardiovascular disease allegedly associated with Vioxx.  And they are especially improper in an action, like this one, where the questions of liability for and amount of compensatory damages have been bifurcated from the questions of liability for and amount of punitive damages.[1]

Merck thus respectfully requests that the Court follow its ruling in *Plunkett*, and exclude any and all evidence of motive or assets from the compensatory phase of trial.[2]

I.  **EVIDENCE OR ARGUMENT CONCERNING MERCK'S PURPORTED "MOTIVES" IS IRRELEVANT.**

This case is about whether Vioxx caused the alleged myocardial infarction of Mr. Smith, and, if so, whether Merck gave adequate warnings to Mr. Smith's prescribing doctors.  If prior Vioxx trials are any guide, plaintiff will attempt to introduce evidence that he contends shows

---

[1] Where, as here, the Court has bifurcated the compensatory and punitive phases of trial, plaintiff must first establish the defendant's liability for compensatory damages before one can determine whether a second, "punitive," phase is necessary.  *See O'Malley v. United States Fid. & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) (approving bifurcation of liability and bad faith punitive damage claims); *State Farm Fire & Cas.y v. Woods*, 896 F. Supp. 658, 659-60 (E.D. Tex. 1995) (bifurcating liability and punitive damages issues and noting that evidence of a party's net worth would "severely prejudice" the calculation of actual damages).

Merck rushed Vioxx to market because of various internal factors, including the existence of new drugs in development, its possible effect on sales and actual or projected profitability, and possible competition from Celebrex®. But evidence of these possible "motives" has no logical connection to any fact of consequence at issue here; they do not relate to either the cause of Mr. Smith's alleged MI or the information on which his prescribing physicians relied. *See, e.g.*, *In re Norplant Prod. Liab. Litig.*, No. MDL 1038, 1997 U.S. Dist. LEXIS 11118, at *1-2 (E.D. Tex. Feb. 19, 1997) (excluding evidence of pharmaceutical company's gross profit margins because "the evidence is not relevant to any failure to warn issue.").

It is well-established that evidence of a generalized profit "motive" is irrelevant and inadmissible in an action – such as this one – based on either negligence, strict liability or breach of warranty. *See, e.g., Kunz v. Utah Power & Light Co.,* 913 F. 2d 599, 605 (9th Cir. 1990) (since "neither motive nor intent are material in a negligence action . . . the district court could have concluded that evidence tending to prove a business motive for Utah Power's conduct was excludable as irrelevant.") (internal citation omitted); *Gray v. Hoffman-La Roche,* 82 Fed. Appx. 639, 651 (10th Cir. 2003) (defendant company's "alleged motive for failing to issue a stronger warning is immaterial to any element of [plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case") (unpublished opinion) (footnote omitted); *La Plante v. Am. Honda Motor Co.,* 27 F.3d 731, 740 (1st Cir. 1994) (holding that evidence of manufacturer's profits were inadmissible at retrial because likely prejudice outweighed any probative value and trial judge "did not alert the jury to the impropriety of punishing Honda for an unsavory motive").

---

[2] Note that, in *Barnett v. Merck*, the Court reserved ruling on this motion, reasoning evidence of motive or assets might "be relevant to explain Merck's actions or inactions." (*See* June 28, 2006 (*footnote continued next page*)

3

822942v.1

Such evidence is also irrelevant to plaintiff's fraudulent misrepresentation and concealment claims. To establish fraudulent misrepresentation under Kentucky law, a plaintiff must prove: (i) a material misrepresentation; (ii) which is false; (iii) known to be false or made recklessly; (iv) made with inducement to be acted upon; (v) acted in reliance thereon; and (vi) causing injury. *See Craig & Bishop, Inc. v. Piles*, No. 2004-CA-001883-MR, 2005 WL 3078860, at *3 (Ky. App. Nov. 18, 2005) (alleging fraud in the form of misstatements by car dealer regarding available financing on vehicle); *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (alleging fraud by employer in hiring practices). Any discussion of Merck's overall corporate goals is irrelevant to establishing any of these elements.

In short, evidence purporting to show Merck's "motives" is irrelevant to any issue to be determined in the compensatory phase of trial in this case.

## II. ADMITTING EVIDENCE OF MERCK'S PURPORTED "MOTIVES" FOR ITS MARKETING ACTIVITIES WOULD CAUSE UNDUE PREJUDICE, JUROR CONFUSION, AND DELAY.

Again, if prior Vioxx trials are any guide, plaintiff will attempt to mischaracterize documents and introduce irrelevant evidence allegedly bearing on motive to portray Merck as a "bad actor" and to suggest that Merck recklessly rushed Vioxx to market. Admitting evidence proffered for the purpose of inflaming the jury's prejudices would be improper, particularly where it would shift the juror's attention away from the facts of the case and toward unrelated, collateral matters. Even if evidence of Merck's purported "motive" had any probative value – and it does not – the primary effect of such evidence would be to distract the jury from the real issue in this case: whether Mr. Smith's use of Vioxx for approximately four months caused his alleged injuries and, if so, whether Merck adequately warned Mr. Smith's prescribing physicians

Order re Motions in *Limine* at 8.)

of the risks associated with the drug.[3]

Admitting evidence allegedly showing Merck's internal corporate rationale for its marketing strategy also carries a high risk of confusing the jury. Such evidence can only distract the jury from the core issues in the case. *See United States v. Simkanin*, 420 F.3d 397, 412-13 (5th Cir. 2005) (upholding the exclusion of tax law sources in a tax evasion case due to the likelihood of confusing the jury as to the state of the law); *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3rd Cir. 1980) ("[Evidence] is unfairly prejudicial if it … may cause a jury to base its decision on something other than the established propositions in the case.").

Moreover, admission of this "motive" evidence would result in undue delay, because Merck would be compelled to contest relevance and admissibility on an act-by-act basis. Courts have excluded tangential evidence under Rule 403 or analogous rules in other jurisdictions where the risk of confusion and waste of time would be considerable. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence because, *inter alia*, "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources . . . ."); *see also, e.g., Bob Maxfield, Inc., v. American Motors Corp.*, 637 F.2d 1033, 1039 (5th Cir. 1981); *Wilson v. Bicycle S., Inc.*, 915 F.2d 1503, 1510 (11th Cir. 1990); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) (the waste of the trier's time is a particularly telling factor in complex and protracted litigation), *aff'd*, 818 F.2d 187 (2d Cir. 1987). If such evidence were admitted, Merck

---

[3] Because the Kentucky Supreme Court has adopted the learned-intermediary doctrine in failure-to-warn cases, plaintiff must establish that the prescribing physicians – not plaintiff – relied on the alleged misrepresentation. *See Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 770 (Ky. 2004). This is especially true in this case, since Mr. Smith testified that he fully relied on his doctor's medical judgment about whether Vioxx was appropriate for him. (*See* June 15, 2006 Deposition of Robert Smith at 134:2-137:2, attached hereto as Ex. A.)

also would be entitled (and obligated) to introduce contrary evidence to demonstrate both that its internal marketing motivations were not wrongful and that, in any case, they should not affect the jury's findings in this case. The result would be a lengthy diversion into a trial of an entirely tangential issue. Such undue delay and needless waste of this Court's time is an independent reason to exclude evidence of Merck's purported internal motives.

### III. EVIDENCE OR ARGUMENT REGARDING ASSETS, PROFITABILITY, AND EMPLOYEE COMPENSATION IS IRRELEVANT AND INADMISSIBLE.

For similar reasons, plaintiff should be prohibited from making the hyperbolic claim that Merck's former CEO and others managed the company for the purpose of their own enrichment and that of shareholders at the expense of the safety of its products. Any such assertion is completely baseless. Moreover, even if the allegation were true – and it is not – it has no probative value with respect to whether Merck is liable for Mr. Smith's alleged injuries. Such alleged "evidence" does not go to the issue of whether Vioxx injured Mr. Smith or whether Merck provided adequate warnings to his prescribing physicians. *See, e.g.*, *In re Norplant*, 1997 U.S. Dist. LEXIS 11118, at *1-2 (excluding evidence of defendant's gross-profit margins as irrelevant).

Nor is any such evidence relevant to show improper "motive" in the manner in which Merck developed, tested, and marketed Vioxx. As discussed above, motive evidence is not relevant in actions based on theories of negligence and strict liability, and it is particularly inappropriate in the first compensatory phase of this bifurcated trial. *See, e.g.*, *Woods*, 896 F. Supp. at 660 (prohibiting the introduction during the first phase trial of "any evidence . . . bearing only on punitive damages.").

Simply put, financial evidence pertaining to Merck employees and to Merck itself has no probative value in connection with any of the issues that will determine liability for

6

compensatory damages. It is thus irrelevant and inadmissible.[4]

### IV. ADMITTING EVIDENCE OF MERCK'S ASSETS, PROFITABILITY, OR THE COMPENSATION OR FINANCIAL DECISIONS OF ITS EMPLOYEES WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND UNDUE DELAY.

Finally, evidence regarding Merck's assets, profitability, and employee compensation – which has nothing to do with whether Vioxx caused Mr. Smith's heart attack or whether Merck adequately warned of the cardiovascular risks allegedly associated with Vioxx – is inadmissible under Rule 403. Allowing plaintiff to introduce or even comment on that evidence in this initial stage of trial would unduly prejudice Merck.

Plaintiff will have every opportunity to present evidence concerning causation and the adequacy of Merck's warnings. But the compensation paid to Merck executives and evidence of Merck's wealth simply has no bearing on these issues – or any other issue of consequence in this case. Permitting plaintiff to adduce evidence of this nature risks invoking any latent antipathy, animosity, or resentment that jurors might harbor towards large corporations or their officers. Evidence proffered with the intent to inflame a jury's prejudices in this manner is plainly improper, particularly where the effect is to divert the jurors' attention from the outcome-determinative facts and, instead, to unrelated, collateral matters. *See* FED. R. EVID. 403.

As noted above, Kentucky law does not allow evidence of a defendant's financial condition to be considered in determining the applicability or amount of punitive damages, or *even to be raised* in a case where punitive damages *could* be awarded. *Sand Hill Energy, Inc.*,

---

[4] Merck does not concede that evidence of financial status would be admissible in whole or part even in a punitive damages phase of trial. Punitive damages are not sought from any of Merck's officers or employees. Moreover, Merck would object to admitting evidence of its assets or wealth on constitutional grounds. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-23, 429 (2003) (prohibiting exemplary damages awards based on conduct having no relationship to the plaintiff's alleged injury).

142 S.W.3d at 167 ("we are clearly of the opinion that *no evidence as to the financial condition of either defendant or plaintiff should be admitted in any case in which punitive damages might be recovered*" because "[t]he tendency of this class of testimony would be to lead the jury to consider chiefly the pecuniary condition of the defendant, rather than the enormity or wantonness of the act for which punitive damages might be allowed." (emphasis added)). The serious risk of unfair prejudice that evidence of assets, income, or wealth poses was also addressed in the Supreme Court's decision in *State Farm,* 538 U.S. at 421-27, where the Supreme Court observed that the wealth of the defendant insurance company "had little to do with the actual harm sustained by the [plaintiffs]." *Id.* at 427. The Supreme Court further cautioned that "[w]ealth provides an open-ended basis for inflating awards when the defendant is wealthy." *Id.* at 427-28 (internal quotation marks and citation omitted).

The risk of undue prejudice is clearly present here. Any statement by plaintiff's counsel or their witnesses on the alleged "wealth," profits, stock holdings, stock options, or income of Merck and its officers would be a blatant appeal to the prejudices of the jury. At a minimum, admitting such evidence creates a significant risk that the jury will improperly speculate that Merck can readily afford a verdict for the plaintiff, regardless of the evidence.

## V.   CONCLUSION.

For the foregoing reasons, Merck respectfully requests that the Court exclude all evidence offered to show the alleged "motive" of Merck or its officers or employees in developing and marketing Vioxx, including any evidence relating to Merck's wealth, profitability, assets, income, or net worth, as well as the compensation, stock holdings, or stock options of its officers and employees.

Dated:  August 7, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
Emily Thacher-Renshaw
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

822942v.1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum in Support of Motion of Merck to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

                                                          */s/ Dorothy H. Wimberly*

822942v.1