**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
    *Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MISCELLANEOUS MOTION TO EXCLUDE OR,**
**IN THE ALTERNATIVE, MOTION IN LIMINE AND/OR**
**REQUEST FOR LIMITING INSTRUCTIONS**

**(Plaintiff's Motion in Limine No. 1)**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Before voir dire examination of the jury panel, and out of hearing of the jury, Plaintiff  R.

Garry Smith, by and through his undersigned counsel, respectfully moves the Court for an order

excluding all evidence, references, testimony and/or argument relating to the topics set forth below

and that are improper, irrelevant and/or unduly prejudicial.  If Defendant injects these matters into

the trial of this cause through a party, an attorney, or a witness, Defendant will cause irreparable

harm to Plaintiff's case and the fairness of the trial, which no jury instruction could cure.  If any of

these matters are brought to the attention of the jury, directly or indirectly, Plaintiff could be

compelled to move for a mistrial.  In an effort to avoid undue prejudice and a possible mistrial,

Plaintiff Smith moves to exclude the following matters.  In the alternative, Plaintiff Smith seeks a

motion in limine requiring that Defendant first approach the bench and ask for a ruling before

1

attempting to introduce or refer to such evidence and/or issues at trial.  In the event this Court does

not exclude and/or limine such matters, then Plaintiff requests that a mandatory limiting instruction

as to its proper use be given upon its admission and each and every time thereafter as such a

reference is made pursuant to FED. R. EVID. 105.

**SPECIFIC GROUNDS FOR MOTIONS TO EXCLUDE OR,**
**IN THE ALTERNATIVE, MOTIONS IN LIMINE**

Defendant should be precluded from any comment or inference, or submitting any evidence,

eliciting any testimony, or documents suggesting or referring to the following or, at minimum,

Defendant should be required first to approach the bench and ask for a ruling before attempting to

introduce such evidence or discuss such matters at trial**:**

**A.      That a verdict for the Plaintiff will adversely impact pharmaceutical companies'**

**incentive/ability to develop new medications.**  Such "evidence," if any, and argument is highly

subjective, constitutes unsupported speculation and is too remote,  is likely to involve matters

outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the

consequences of the its verdict.  For these reasons alone, it should be excluded.  For many of the

same reasons, it is not relevant to any matter in this action.  *See* FED. R. EVID. 402 (only relevant

evidence is admissible).  Finally, no expert has been designated to testify on such matters which

would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there

is no indication that such conclusions and opinions would be scientifically or statistically reliable

under *Daubert*.  *Id.*

Under FED. R. EVID. 403, even "relevant evidence may be excluded if its probative value is

substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the

jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence."   Thus,

2

even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**B**.   **That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide.**  Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote,  is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict.   In addition, the Fifth Circuit has condemned such appeals to "community conscience" or collective self-interest as improper.  *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1239 (5th Cir. 1985).  For these reasons alone, it should be excluded. For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402. Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*.  *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**C.**   **That this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial harship or loss of employment.**

Such "evidence," if any, and  argument is highly subjective, constitutes unsupported speculation and is too remote, is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict.  In addition, the Fifth Circuit has condemned such appeals to "community conscience" or collective self-interest as improper.  *Westbrook,* 754 F.2d at 1239.  For these reasons alone, it should be excluded.  For many of the same reasons,  it is not relevant to any matter in this action. *See* FED. R. EVID. 402.  Finally, no expert has been designated to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*.  *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**D.**      **That this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining insurance.**  Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote,  is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of its verdict.   In addition, the Fifth Circuit has condemned such appeals to "community conscience" or collective self-interest as improper. *Westbrook,* 754 F.2d at 1239. For these reasons alone, it should be excluded.  For many of the same reasons,  it is not relevant to any matter in this action.  *See* FED. R. EVID. 402.  Finally, no expert has been designated to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or

statistically reliable under *Daubert*.  *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**E.**      **That this case or any other Vioxx product liability case may cause an increase in the cost of purchasing medications for the public.**  Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote,  is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict.  In addition, the Fifth Circuit has condemned such appeals to collective self-interest as improper.  *Westbrook,* 754 F.2d at 1239.  For these reasons alone, it should be excluded.  For many of the same reasons, it is not relevant to any matter in this action.  *See* FED. R. EVID. 402.  Finally, no expert has been designated to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*. *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**F.**      **Health Canada's or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries.**  Numerous courts have held that evidence concerning approvals or disapprovals of prescription drugs by foreign regulatory bodies should be excluded because such regulatory bodies use different standards than are used in the United States

and, therefore, such evidence is irrelevant or of such minimal probative value that any such value is greatly outweighed by the likelihood that it will confuse, mislead, or unfairly prejudice the jury. *See* FED. R. EVID. 403; *Deviner v. Electrolux Motor, AB.,* 844 F.2d 769, 771 n.2, 773 (11th Cir. 1988)(affirming lower court's in limine excluding evidence that Swedish law required chain brakes on chain saws because "Swedish standards are not relevant in a U.S. product liability case involving a saw sold in the U.S" and, even if relevant, they are unduly prejudicial); *Tews v. Husqvarna, Inc.,* 390 N.W.2d 363, 366 (Minn. Ct. App. 1986) (affirming trial court's exclusion of evidence because "legal standards in other countries are irrelvant"); *see also Harrison v. Wyeth Labs*., 510 F. Supp. 1. 4-5 (E.D. Pa. 1980, *aff'd,* 676 F.2d 685 (3d Cir. 1982) (drug manufacturer's liability must be judged solely in the country where the alleged injury occurred).  In addition, the introduction of such evidence or argument is likely to needlessly waste time or cause undue delay while each side lines up evidence of one country or another's approval, disapproval or withdrawal.  *See* FED. R. EVID. 403.

No expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702.  Moreover, no reasonable notice of intent to raise an issue concerning the law of a foreign country has been given.  *See* FED. R. CIV. P. 44.1.

**G.**     **The medical conditions of Plaintiff or Plaintiff's family that are unrelated to the injuries at issue in this lawsuit**.  Defendant is likely to attempt to introduce evidence or argument that Mr. Smith's brother David, a four-pack-a-day smoker, had cardiovascular problems, including the need for a stent, different from those suffered by Plaintiff Garry Smith for the purpose of attempting to suggest that Mr. Smith was prone to such problems.  In addition, it may try to suggest or introduce evidence concerning other illnesses suffered by other members of Mr. Smith's extended

family for similar purpose.  For example, Mr. Smith was asked at his deposition about his parents'

death due to emphysema [each was also a 3-4 pack-a-day smoker], his brother Ronnie's medication

for high cholesterol; and his uncle's death from a dissimilar heart attack; and his family medical

history form.  Such matters are irrelevant to any matter at issue in this case unless and until

Defendant can show, among other things, any scientifically reliable relationship between the

illnesses suffered, exclude the difference in lifestyle and risk factors [for example, Mr. Smith is not

a smoker], and show that genetics for particular family members are a medically valid cause of the

illness suffered by Mr. Smith.  No expert has been designated to testify on such matters which would

require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no

indication that such conclusions and opinions would be scientifically or statistically reliable under

*Daubert*.  *Id.*  Thus, such matters have no relevance in this case.  *See* FED. R. EVID. 402.

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule

probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues,

misleading the jury, or causing undue delay and waste of time.  This is particularly true since Mr.

Smith has eight brothers and sisters and several weeks could be consumed with evidence concerning

each one's relative health.

**H.**     **Character attacks on Plaintiff Garry Smith.**  Defendant has apparently hired

private investigators to attempt to "dig up dirt" on Plaintiff Garry Smith.  Under FED. R. EVID.

404(b) and 608, however, character evidence is not admissible to show conformity therewith and

any extrinsic evidence of bad conduct, other than conviction of a crime within the federal rules, is

not admissible. The rule does allow cross-examination on specific instances of past conduct to

impeach but only on the very limited issue of character for truthfulness or untruthfulness where that

matter has been put at issue. Even where criminal conduct is involved, however, to be admissible, it must involve a conviction within the rigid time limits set by FED. R. EVID. 609 and plaintiff must be given written notice of defendant's intention to use any such matter. None has been given. Even then, such evidence is subject to a balancing test and must be excluded if its probative value, if any, is outweighed by its prejudicial effect. In this personal injury case, it undoubtedly would be.

In particular, Plaintiff anticipates the following kinds of personal attacks on Mr. Smith, unrelated to his character for truthfulness:

1)   *Alleged infidelity:*  At his deposition, Mr. Smith was asked in detail about the reasons for his divorce and separation and his relationship with Kim Lester, his current girlfriend. The apparent purpose is to suggest to the jury that his marriage broke up because of alleged infidelity. The undisputed facts are these: Mr. Smith filed this lawsuit after his divorce and he began seeing Ms. Lester after he had separated from his wife. Thus, this personal relationship is irrelevant to his action. The only purpose of such evidence or argument would to prejudice unduly the jury. It should be excluded under Rules 402 and 403.

2)   *Recklessness/direct attempts to embarrass or humiliate Mr. Smith:*  At his deposition, Plaintiff was asked in detail about his use of the drugs Viagra and Levitra. The apparent purpose was to suggest that Mr. Smith is somehow an extreme risk taker because he used these prescription drugs after his heart problems. The underlying purpose is to expose Mr. Smith to ridicule and embarrassment. These drugs were prescribed for Mr. Smith by his physician. Kentucky has adopted a learned intermediary doctrine. *See Larking v. Pfizer, Inc.,* 153 S.W.3d 758, 770 (Ky. 2004). Mr. Smith's decisions on whether he wishes to take the drugs prescribed by his doctor are, therefore, irrelevant. Equally important, even if relevant, the microscopic probative value, if any, of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Smith's role, and misleading the jury. Such evidence should also be excluded and/or subjected to an order in limine because no expert has been designated and none can testify that Mr. Smith's use of these drugs, particularly ***after*** the cardiovascular incident that gave rise to this suit, caused or contributed to Mr. Smith injuries. Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert. Id.*  Thus, such evidence or argument should be excluded.

3)   *Mr. Smith's alcohol use*:  At his deposition, Mr. Smith testified regarding his alcohol use which has varied from quite low to moderate since his divorce.  There is no suggestion in the medical records that Mr. Smith is an alcoholic or that alcohol in any way contributed to his injuries here, particularly his use after the cardiovascular incident that gave rise to this suit.  As such, such evidence is irrelevant.  Equally important, even if relevant, the microscopic probative value, if any, of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Smith's role, and misleading the jury.  Such evidence should also be excluded and/or subjected to an order in limine because no expert has been designated and none can testify that Mr. Smith's use of alcohol, particularly ***after*** the cardiovascular incident that gave rise to this suit, caused or contributed to Mr. Smith injuries.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*.  *Id.*  Thus, such evidence or argument should be excluded.

**I.    That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question.**  Mr. Smith testified at his deposition that he had insurance at the time he received Vioxx.  The collateral source rule is well-established in Kentucky.  As the result, that fact is irrelevant to any issue in this case and any mention or inference, direct or indirect, will be harmful and unduly prejudicial to the Plaintiff.  *See, e.g., Baptist Healthcare Sys. v. Miller,* 2003 Ky. App. LEXIS 121 (May 23, 2003)*, aff'd, Baptist Healthcare Sys. v. Miller,* 2005 Ky. LEXIS 236 (Ky., Aug. 25, 2005); *Burke Enterprises, Inc. v. Mitchell*, Ky., 700 S.W.2d 789, 796 (1985) (stating that "to depart from the collateral source rule would provide the tortfeasor a 'windfall' to the substantial detriment of the injured party"); *Davidson v. Vogler*, Ky., 507 S.W.2d 160, 164 (1974).  Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**J.    That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law.**  Federal and Kentucky state law both permit the award of punitive damages.  In fact, when the Kentucky legislature attempted to impose certain limitations

on punitive awards, that limiting statute was declared unconstitutional. *See Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998). To suggest otherwise is improper and would be unduly prejudicial. *See generally TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 462 (1993).

     **K.**    **The purported "litigation crisis," "lawsuit crisis," "lawsuit abuse," or similar terms or phrases.** Such "evidence," if any, and argument constitutes unsupported speculation, insurance company propaganda and hype, and is likely to involve matters outside the record. It is, therefore, also irrelevant to any matter at issue in this case. *See* FED. R. EVID. 402. No expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702.

     Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time. Such language and argument suggest that this lawsuit is groundless. Had that been the case, this Court would have addressed the problem.

     **L.**    **That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or rountinely employ contingent fee arrangements [except as they relate to any fees in this case].** Such evidence or argument would be irrelevant, unduly prejudicial, and calculated solely to inflame the jury. *See Bufford v. Rowan Companies, Inc.* 994 F.2d 155, 157-58 (5th Cir. 1993). It should be excluded under FED. R. EVID. 402 and 403.

**M.**     **Other Vioxx cases and other cases involving Plaintiff's counsel or other drugs.**

As this court is perhaps best aware, there are thousands of other Vioxx cases pending in the courts and a few Vioxx cases have been tried around the country and in this Court.  The result in those cases are irrelevant in this matter and introduction of such matters before the jury would be so prejudicial as likely to cause a mistrial.  For these reasons, any such reference should be excluded under Rules 402 and 403.

Similarly, Plaintiff's  counsel have participated in a number of well-known cases, including the Texas tobacco litigation, so-called fen-phen litigation and asbestos and silica cases.  None of the cases nor the fact that counsel participated in them is relevant here.  Moreover, even if it were, its probative value, if any, would be outweighed by the potential for undue prejudice.

Finally, Defendants may try to introduce into the case matters pertaining to drug litigation involving fen-phen, Rezulin, breast implants or other prescription drugs or medical devices. The specific medical issues relating to a given patient are difficult and complex. Allowing such evidence would result in time-consuming, collateral minitrials to determine whether the drug at issue caused injury and would be highly prejudicial and likely to confuse or mislead the jury.

**N.**     **That any witness or lawyer for the Defendant, or any of their family members, have used Vioxx.**[1]   Such evidence or argument is irrelevant, hearsay or double hearsay, and undeniably prejudicial.  These emotional stories cannot be verified and will inappropriately sway the sympathies of the jury.  *See U.S. v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979).

**O.**     **That Vioxx was taken off the market due to "media hype" caused by attorneys or the media themselves.**  Such "evidence," if any, and argument is highly subjective, constitutes

---

[1]Plaintiffs have also filed a separate, broader motion to exclude/in limine on this issue.

unsupported speculation, and is likely to involve matters outside the record, including hearsay and double hearsay. For these reasons alone, it should be excluded. For the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402 (only relevant evidence is admissible). Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703.

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**P.** **Bolstering the unchallenged character (e.g. honest) or traits (e.g. generous) of the Defendant's current or former employees, managers, consultants, experts, agents, or fiduciaries preemptively.** Under FED. R. EVID. 608(a)(2), where a witness' character for truthfulness has not been attacked, another witness or counsel may not bolster his or her testimony by testimony or argument that the witness is always truthful or trusted by the government or the final word at the FDA. Plaintiff seeks to avoid such testimonials where there has been no such attack and is likely never to be one.

**Q.** **Unsupported hearsay statements of health care providers.** Defendant should be prevented from eliciting, referencing, or introducing any statements, based upon hearsay discussions with healthcare providers. *See* FED. R. EVID. 802; 805 (double hearsay); *Bradley v. Brotman*, 836 So. 2d 1129, 1135 (Fla. Dist. Ct. App. 4th 2003) (citing, *inter alia*, FED. R. EVID. 403). Where such conversations involve unsupported medical conclusions and opinions, such evidence or argument also violates Rule 702 and 703.

**R.    That any member of the public or medical community desire that Vioxx be placed back on the market.**  Such anecdotes, if any, and argument is highly subjective, may constitute unsupported speculation, and is likely to involve matters outside the record, including hearsay and double hearsay.  For these reasons alone, it should be excluded.  For many of the same reasons, it is not relevant to any matter in this action.  *See* FED. R. EVID. 402 (only relevant evidence is admissible).  Finally, no expert has been designated to testify on such matters which would require expert support and there has been no showing that such conclusion would be statistically and scientifically reliable.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions are scientifically or statistically reliable under *Daubert*. *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**S.    The potential impact on pharmaceutical companies and/or the FDA, if any,  of permitting state failure to warn claims to be asserted or of allowing a plaintiff in such a case to prevail.**  Defendant is likely to argue and have in other cases argued that permitting state failure to warn claims, such as this one, to be asserted has the following effects: 1) causes or pressures drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits; 2) undercuts the FDA's mission to provide only scientifically valid warnings; 3) frustrates the FDA's protective regime; and 4) that too many warnings of serious injuries will dilute the effectiveness of warnings generally.  Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote, is likely to involve matters outside the record, including

hearsay and double hearsay, and is in the nature of telling the jury the consequences of its verdict. In addition, the Fifth Circuit Court of Appeals has condemned such appeals to "community conscience" or collective self-interest as improper. *Westbrook,* 754 F.2d at 1239. For these reasons alone, it should be excluded. For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402. Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703. Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*. *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**T.**      **The fees received and/or charged by Plaintiff's experts for work in lawsuits involving drugs other than Vioxx and refernce to them as "paid litigation experts" or the like.**

Defendant is likely to attempt to show that certain of Plaintiff's experts, in particular Dr. Lemuel Moye, have received substantial sums of money for work in other kinds of cases. While evidence of fees received in this case is arguably relevant to show potential bias, evidence relating to work in other cases involving other drugs has no probative value and is, therefore, irrelevant.

Counsel for Merck has also referred to plaintiff's experts in prior trials as "paid litigation experts" or the like in an apparent attempt to make some distinction between these well-qualified physicians and what he calls "real doctors."

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues,

misleading the jury, or causing undue delay and waste of time.  In particular, a holding otherwise would open the trial to all sorts of collateral evidence, including of the vast amounts of research funding certain defense experts had received from pharmaceutical defendants for work with other drugs.

**U.**     **Plaintiff's alleged knowledge of cardiovascular risks associated with the use of Vioxx**.  At his deposition, Mr. Smith was questioned extensively about his alleged personal knowledge of the cardiovascular risks associated with the use of Vioxx.  It is undisputed that Vioxx was prescribed for and/or provided to Mr. Smith by his physician.  Kentucky has adopted a learned intermediary doctrine.  *See Larking v. Pfizer, Inc.,* 153 S.W.3d 758, 770 (Ky. 2004).  Thus, Mr. Smith's knowledge and understanding, if any, of risks associated with Vioxx and warnings addressed to physicians is irrelevant.  Equally important, even if relevant, the microscopic probative value, if any, of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Smith's role, and misleading the jury.

**V.**     **That Kentucky is part of a so-called "stroke belt."**  Such "evidence," if any, and argument is highly subjective, and is likely to involve matters outside the record, including hearsay and double hearsay.  No expert has been designated to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such opinions  would be scientifically or statistically reliable under *Daubert*.  *Id.*  For many of the same reasons, it is not relevant to any matter in this action.  *See* FED. R. EVID. 402 (only relevant evidence is admissible).  Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**W.    That typographical errors in Dr. Moye's report indicate that it was cut and pasted from another case.**    Counsel for Merck has argued, without foundation or evidence to support this argument, that typographical errors and printing marks on Dr. Moye's report indicate that it was cut and pasted from another case.  Such "evidence," if any, and argument is highly subjective, and wholly unsupported speculation.  Both the fact that there are typographical errors and any conclusions that can allegedly be drawn from them are not relevant to any matter in this action.  *See* FED. R. EVID. 402 (only relevant evidence is admissible).

**X.    That any Plaintiffs' counsel may have advertised for persons injured by the use of Vioxx or in any other manner**.  As this court is perhaps best aware, millions of Vioxx prescriptions were written during the time Vioxx was sold. The fact that some attorneys may utilize their First Amendment right to advertise is  irrelevant in this matter and introduction of such matters before the jury would be so prejudicial as likely to cause a mistrial.  For these reasons, any such reference should be excluded under Rules 402 and 403.

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time, precisely what counsel for Merck intends.

**Y.    That Mr. Smith's injury is his own fault or the fault of his prescribing and/or treating physicians**.  Defendant has designated no expert to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*.  *Id.*

17

**Z.      That FDA approval of Vioxx means that Merck met is standard of care and/or fulfilled its duty to warn as a matter of law.**   In prior trial, counsel for Merck has argued that FDA approval of Vioxx means that Merck met is standard of care and/or fulfilled its duty to warn as a matter of law.  This is not a correct statement of Kentucky law as Kentucky has not adopted the FDA standards as its own. No expert has been designated to make such a statement and, because it would require testimony as to what they law is, such testimony would improperly invade the province of the Court. Moreover, where, as here, the FDA never knew about or considered the information in question, such a conclusion is not even possible.

Merck is entitled to tell the jury that its drug was approved by the FDA: however, it is not entitled to suggest that such approval has legal significance beyond that which it actually has. Otherwise, confusion of the issues and misleading the jury, clearly the intent of such arguments, would result.  For these reasons, any such reference, inference or suggestion should be excluded.

In the event this Court does not exclude and/or limine such matters, then Plaintiff requests that a limiting instruction as to its proper use be given upon its admission and each and every time thereafter as such a reference is made pursuant to FED. R. EVID. 105.

**AA.      Voir dire questions that discuss the wrong legal standard and contain argument.** In prior trials, counsel for Merck has asked the following question "Do you believe that a pharmaceutical company has a duty to warn even if there is no scientific proof that the drug causes side effects?"  Voir dire comments or questions that discuss the wrong legal standard or are argumentative and attempt to convince a juror to commit to certain views or conclusions are improper.  *See Jewell v. Arctic Enters.,* 801 F.2d 11, 12 (!st Cir. 1986); *Soria v. Johnson,* 207 F.3d 232, 243-44 (5th Cir. 2000).  This jury will not be faced with such a question.  It is, therefore,

improper to ask it.

**BB.**     **Addressing opposing counsel directly in the presence of the jury without Court permission.**  Counsel for Merck has repeatedly addressed counsel for plaintiffs directly in prior trials in the presence of the jury.  This is improper attorney conduct and disrespectful to the Court.

**CC.**     **Jury consultants.**  Defendant may refer to the use, identity or presence of jury consultants assisting Plaintiff.  Such reference is improper because it is irrelevant and potentially unduly prejudicial.

**DD.**     **Settlement, Negotiations or the Lack Thereof.**  Mentioning or referencing any settlement demands, offers, negotiations, or the fact that Merck allegedly does not engage in them is irrelevant and improper. *See* FED. R. EVID. 408.

**EE.**     **Stipulations.**  Mentioning or referencing the refusal of either party to enter into a stipulation prior to trial or otherwise seeking any stipulation from counsel in the presence of the jury is impermissible and should be excluded.

**FF.**     **Motions to exclude or in limine.**  The filing of this motion, its contents, and any agreements or proceedings in connection with this motion or reference to any such matter would be irrelevant and unduly prejudicial.

**GG.**     **Notice to defense witnesses.**  That counsel for Defendant be specifically instructed to inform all witnesses called by Defendant not to volunteer, inject, disclose, state or mention to the jury any of the matters enumerated hererin in the paragraphs setting forth specific orders in limine/to exclude requested, unless specifically questioned thereon after a prior ruling by this Court.

**HH.**     **Violations of these orders**.  That the violation of any or all of these instructions and orders would constitute harm to Plaintiff and would deprive Plaintiff of a fair and impartial trial, and

instruct counsel for Plaintiffs that the failure to abide by such order of the Court may constitute contempt and/or necessitate a mistrial.

**II.**    **Product labeling for other drugs Plaintiff took.**    Defendant may attempt to introduce evidence and make reference to the warning labels accompanying other prescription drugs Mr. Smith took.  Such drugs were prescribed for and/or provided to Mr. Smith by his physician.  Kentucky has adopted a learned intermediary doctrine. *See Larking v. Pfizer, Inc.,* 153 S.W.3d 758, 770 (Ky. 2004). Thus, Mr. Smith's knowledge and understanding, if any, of risks associated with other drugs and other warnings addressed to physicians is irrelevant. Equally important, even if relevant, the microscopic probative value, if any, of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Smith's role, and misleading the jury.

Further, each drug is different and a physician makes his or her decision to use a drug based upon a balance of safety, efficacy and need. Thus, the fact that Mr. Smith may use another drug that includes a warning similar to the one Vioxx should have had is not relevant to his doctor's decision to allow him to use *Vioxx*. To allow such evidence to be admitted, evidence which could be highly prejudicial, confusing and misleading, would require that Plaintiff be permitted to show what ameliorative measures Mr. Smith's doctors, and have taken to address the issues raised by such warnings, what circumstances have changed, what the new drug is needed for and all of the factors that went into the balance reached by the doctor on the other drug. Such evidence should be excluded under Rule 402 and 403.

Moreover, such evidence may be admitted, if at all, only with the ordinary scientific indicia of reliability under *Daubert.* Merck has made no attempt to do so and has designated no expert on this subject. Instead, Merck has simply tossed a "red herring," days old, into the jury box for the purpose of confusing, misleading and unduly prejudicing the jury. Such tactics should not be tolerated.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Smith moves to exclude the preceding matters.  In the alternative, Plaintiff Smith seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial. In the event this Court does not exclude and/or limine such matters, then Plaintiff requests that a limiting instruction as to its proper use be given upon its admission and each and every time thereafter as such a reference is made pursuant to FED. R. EVID. 105.

Dated: August 7, 2006

Respectfully submitted,

Drew Ranier                                     /s/ Grant Kaiser
Louisiana Bar No. 8320                          Grant Kaiser
**RANIER, GAYLE & ELLIOT LLC**                  Texas Bar No. 11078900
1419 Ryan Street                                **THE KAISER FIRM LLP**
Lake Charles, Louisiana 70601                   8441 Gulf Freeway, Suite 600
(337) 494-7171; fax (337) 494-7218              Houston, Texas 77017
                                                (713) 223-0000; fax (713) 223-0440

Walter Umphrey                                  Texas Bar No. 20380000

21

**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

Mikal Watts

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**

8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc     By email only:

Robert Van Kirk            rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski            carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440