UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
|---|---|
| | Section L |
| | Judge Eldon E. Fallon |
| | Magistrate Judge Daniel E. Knowles, III |

**THIS DOCUMENT RELATES TO:**
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN LIMINE CONCERNING EVIDENCE OR ARGUMENT THAT MERCK EMPLOYEES, FORMER EMPLOYEES, OR THEIR FAMILY MEMBERS TOOK VIOXX PRIOR TO THE DRUG'S WITHDRAWAL FROM THE MARKET**

**(Plaintiff's Motion in Limine No. 2)**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Before voir dire examination of the jury panel, and out of hearing of the jury, Plaintiff R. Garry Smith, by and through his undersigned counsel, respectfully moves the Court for an order excluding all evidence, references, testimony and/or argument that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market on September 30, 2004, and that are improper, irrelevant and/or unduly prejudicial. If Defendant injects these matters into the trial of this cause through a party, an attorney, or a witness, Defendant will cause irreparable harm to Plaintiff's case and the fairness of the trial, which no jury instruction could cure. If any of these matters are brought to the attention of the jury, directly or indirectly, Plaintiff could be compelled to move for a mistrial.

1

In an effort to avoid undue prejudice and a possible mistrial, Plaintiff Smith seeks to exclude evidence, references, testimony and/or argument that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market on September 30, 2004. Such testimony is not relevant to Plaintiff's claims that Vioxx is defective and that Merck failed to warn physicians and patients of the increased risk of cardiovascular events associated with the use of the drug. Such evidence and argument are, for the most part, completely unsupported and no attempt is made to meet the rigid scientific requirements of *Daubert*. Where family members are involved, such testimony may also constitute hearsay or double hearsay.

Even if relevant, reliable and otherwise admissible, however, the probative value of such evidence, if any, is substantially outweighed by its prejudicial effect. Plaintiff respectfully moves the Court for an order excluding such evidence. In the alternative, Plaintiff Smith seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial.

## I.     **Facts and Procedural Background.**

In the first and second trials of *Evelyn Irvin Plunkett v. Merck & Co.,*[1] the Court allowed Dr. Alise Reicin and Dr. Edward Scolnick to testify that they took Vioxx and believed that the drug was safe and effective to treat their arthritis pain. Though not offered in the *Irvin* trials, other Merck employees and former employees have testified by deposition that they or a family member took Vioxx. Former Merck CEO Raymond Gilmartin; former president of Merck U.S. Human Health, David Anstice; and current president of Merck Research Laboratories, Peter Kim, have all testified

---

[1] The Court originally, and Plaintiff believes correctly, ruled that evidence of employee use of Vioxx was irrelevant and inadmissible pursuant to Rule 401. The Court reversed the decision during *Irvin I*.

that they or a family member took Vioxx prior to the drug's withdrawal from market on September 30, 2004.

Plaintiff expects Merck to offer similar testimony from some or all of these Merck employees or former employees during the *Smith* trial. With this evidence, Merck intends to bolster its assertions that Vioxx is safe and that prior to receiving data from APPROVe, it had no knowledge of the increased cardiovascular risks associated with the use of Vioxx.

## II. The Alleged Use of Vioxx by Merck Employees or Their Family Members is Irrelevant to Plaintiff's Claims.

Anecdotal evidence that Merck employees or their family members took Vioxx is irrelevant to Plaintiff's claims of defective product and failure to warn.[2]

First, such evidence, testimony, or discussion is irrelevant to prove or disprove that Vioxx is unreasonably dangerous. Arguably, those who have testified they took Vioxx had substantial information about the safety profile of the drug. It can be argued that they were well aware of the cardiovascular risks associated with taking Vioxx. Unlike physicians who prescribe the drug to millions of patients, these executives and their family members would have been privy to data drawing into question the safety of Vioxx. These employees and their family members or their physicians would have had opportunity to perform a different risk benefit analysis prior to taking the drug than the rest of the public.

---

[2] All such testimony to date has not been supported by any evidence with the exception of Dr. Reicin. Medical records of Dr. Scolnick, Dr. Anstice, Dr. Kim, or Mrs. Gilmartin establishing that they were in fact prescribed and took Vioxx have not been produced by Merck. Merck witnesses should not be allowed to testify they or their family member took Vioxx without producing medical records sufficient to allow meaningful cross examination.

Plaintiff has not been given medical records on the employees and family members in question (with the exception of the limited medical records of Alise Reicin provided during *Irvin II)*. Plaintiff has not had opportunity to depose their treating physicians. It is unknown what these persons' medical conditions were or what other medications were being taken along with Vioxx. As such, there is no indication that their experience with the drug is in any way analogous to that of Mr. Smith.

It might be that Merck executives, having knowledge of the drugs prothrombotic nature, would have also taken a blood thinning agent to minimize the risk of a thrombotic event. Or the individual had few risk factors for cardiovascular disease that would elevate the risk of an adverse event. Or possibly their arthritic pain was so extreme that the individual made a decision to take Vioxx regardless of the cardiovascular risk. Lastly, they may have simply taken the drug without any consideration or care, having total disregard for their safety or welfare.

This issue has been considered by Judge Carol E. Higbee in New Jersey. In *Humeston, et al v. Merck & Co., Inc.*, the court made the following finding directed at the inadmissibility of such evidence based on the fact that evidence regarding the ingesting of Vioxx by a non-party Merck employee or Merck family member was irrelevant as involving a factual analysis unrelated to the Plaintiff:

> The individual decision made by a person in consultation with their doctor to take a drug is a personal decision which can be made for many reasons. People are willing to take different risks. Some people, depending on their medical condition, may have been willing to gamble on the cardiovascular risks even if they knew of the risk. The exploration at trial of each employee's personal decision would be prejudicial, confusing and time consuming.

*See* Memorandum of Decision on Motion, *Humeston v. Merck & Co.,* No. ATL-L-2272-03-MT, slip op. at 3 (N.J. Super., Atlantic Cty. September 9, 2005).

These individual choices cannot be extrapolated across the entire population of those taking Vioxx and judged as evidence that Vioxx is safe as labeled. Such testimony does not prove that the drug is not unreasonably dangerous. It is irrelevant.

To allow the admission of this testimony would be much like allowing a cigarette company executive to testify that he smoked or that members of his family smoked and that somehow that testimony of those facts proved that cigarettes are not unreasonably dangerous. Clearly, cigarettes are dangerous and cause untold harm. Individual choices to smoke have no bearing on that conclusion. The Court's analysis in this case should be the same as the New Jersey Court.

Second, one of Plaintiff's primary claims is that Merck knew of the cardiovascular dangers associated with the use of Vioxx but failed to warn the physicians and their patients. Testimony regarding Merck executives and their family members using Vioxx is immaterial and irrelevant to this claim. Merck executives and their family members had the benefit of internal safety data available for their use that was not available to the public. Clearly, any decisions they made to take Vioxx are irrelevant to Plaintiff's claim that they and their treating physicians were not adequately warned of the risks associated with the drug. Rather, at best, such evidence is merely confusing. As Judge Higbee found in *Humeston*, "[s]uch evidence does not have any probative value in answering the ultimate issues in the failure to warn aspect of this litigation." *Id.* Defendant should therefore be precluded from introducing such evidence.

### III. Such Evidence or Argument is Inadmissible Under *Daubert* and Rule 802.

The evidence and argument concerning personal use that Merck has introduced in prior trials has been, for the most part, completely unsupported. Merck has made no attempt to meet the rigid scientific requirements of *Daubert* and show that such evidence, if any, is scientifically reliable. No expert has been designated to testify concerning such matters. Instead, such anecdotes are in the nature of adverse event reports, which not ordinarily considered as reliable, introduced without any attempt to lay the proper foundation. For that reason alone, they should be excluded under Rule 702 and 703.

Moreover, where family members are involved, such testimony may also constitute impermissible hearsay or double hearsay under Rules 802 and 805 because it would include reports about what a relative told the witness about his or her experience with Vioxx.

### IV. The Probative Value of Evidence that Merck Employees or Their Family Members Took Vioxx is Substantially Outweighed By Its Prejudicial Effect.

Plaintiff contends that the Court correctly ruled prior to *Irvin I* that testimony and evidence that Merck employees and their family members took Vioxx is not relevant under Rule 401. As suggested above, it also suffers from other admissibility problems under Rule 702, 703, 802 and 805. Plaintiff urges the Court to return to its previous decision and find that the testimony is inadmissible. In the event the Court finds that the evidence is relevant or otherwise admissible, however, the evidence clearly should not be admitted under Rule 403. Though any probative value is highly questionable, it is clearly substantially outweighed by the danger of unfair prejudice, confusion of issues and waste of time.

The probative value of the testimony at issue is minimal and pales in comparison to the prejudicial effect of the testimony. Testimony that a witness' relative took Vioxx could mislead a

jury into believing that Vioxx was safe and effective, since----as Merck will undoubtedly argue—no witness would have allowed his or her relative to take a drug that was known to be dangerous.  This implication, however, is not necessarily the case.  As demonstrated above, Merck employees may have taken and allowed their relatives to take Vioxx knowing its dangerous condition for numerous reasons - it was taken in addition to a blood thinning agent (something a physician without knowledge of the drug's prothrombotic effect would not have known to add to a patient's therapy), the risk in the case of extreme pain was outweighed by the benefit, or the family member was just a risk taker.

In proposing this testimony, Merck essentially attempts to put forward a "trump" card - if we took it, the drug must be safe.  This flies in the face of other scientific evidence.  Allowing such testimony would only confuse the jury and encourage the jury to overlook the scientific evidence that has passed through *Daubert's* gates during the course of the trial.

Moreover, allowing the testimony is counter to the Court's expressed desire to streamline the trial process.  If allowed, Plaintiff will be forced to seek the medical records of those offering such testimony and will have to spend considerable time exposing the underlying health condition and risk-benefit analysis undertaken for each witness.  This will result in a mini-trial in the midst of a trial, a considerable investment of the Court's time, but essential in order that Plaintiff be given opportunity to adequately answer this evidence.

Judge Higbee, after briefing an oral argument on the same issues presented herein, correctly ruled:

> The court finds that evidence that Merck employees or their family members took VIOXX is substantially more prejudicial than probative and must be excluded during trial.  Such evidence does not have any probative value in answering the ultimate issues in the

7

> failure to warn aspect of this litigation. Allowing Merck employees to testify that they or their family members took VIOXX would be highly prejudicial to plaintiffs' claims and would not demonstrate with any reliability that VIOXX was more or less safer than was being represented by Merck to the public.

*Id..,* slip op. at 3.

Judge Higbee has continued to follow this ruling in the *McDarby/Cona* trial. Plaintiff submits this reasoning is persuasive and should be adopted.

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order excluding any evidence or discussion that Merck employees, former employees or their family members used Vioxx.

Dated:  August 7, 2006

                                               Respectfully submitted,

| | |
|---|---|
| Drew Ranier | /s/ Grant Kaiser |
| Louisiana Bar No. 8320 | Grant Kaiser |
| **RANIER, GAYLE & ELLIOT LLC** | Texas Bar No. 11078900 |
| 1419 Ryan Street | **THE KAISER FIRM LLP** |
| Lake Charles, Louisiana 70601 | 8441 Gulf Freeway, Suite 600 |
| (337) 494-7171; fax (337) 494-7218 | Houston, Texas 77017 |
| | (713) 223-0000; fax (713) 223-0440 |
| | |
| Walter Umphrey | Mikal Watts |
| Texas Bar No. 20380000 | Texas Bar No. 20981820 |
| **PROVOST UMPHREY LAW FIRM LLP** | **THE WATTS LAW FIRM LLP** |
| 490 Park Street | Tower II Building, 14th Floor |
| Beaumont, Texas 77701 | 555 North Carancahua Street |
| (409) 835-6000; fax (409) 838-8888 | Corpus Christi, Texas 78478 |
| | (361) 887-0500; fax (361) 887-0055 |

| | |
|---|---|
| James L. "Larry" Wright<br>Texas Bar No. 22038500<br>**THE WATTS LAW FIRM LLP**<br>111 Congress Avenue, Suite 1010<br>Austin, Texas 78701<br>(512) 479-0500; fax (512) 473-0328 | John Eddie Williams, Jr.<br>Texas Bar No. 21600300<br>Jim Doyle<br>Texas Bar No.6094450<br>**WILLIAMS BAILEY LAW FIRM LLP**<br>8441 Gulf Freeway, Suite 600<br>Houston, Texas 77017<br>(713) 230-2200; fax (713) 643-6226 |

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

/s/ Grant Kaiser  
Grant Kaiser  
**THE KAISER FIRM LLP**  
8441 Gulf Freeway, Suite 600  
Houston, Texas 77017  
(713) 230-0000; fax (713) 230-0440  
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk            rvankirk@wc.com  
**Williams & Connolly LLP**  
725 Twelfth Street Northwest  
Washington, D.C.  20005  
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski        carrie.jablonski@bartlit-beck.com  
**Bartlit, Beck, Herman, Palenchar & Scott LLP**  
54 West Hubbard Street, Suite 300  
Chicago, Illinois 60610  
(312) 494-4400; fax (312) 494-4440