UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| | Section L |
| | Judge Eldon E. Fallon |
| | Magistrate Judge Daniel E. Knowles, III |

**THIS DOCUMENT RELATES TO:**
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

_____

**PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN LIMINE RE: THE APRIL 6, 2005 FDA MEMORANDUM**

(Plaintiff's Motion in Limine No. 7)

**TO THE HONORABLE JUDGE OF SAID COURT:**

Before voir dire examination of jury panel, and out of hearing of the jury, Plaintiff Robert G. Smith, by and through his undersigned counsel, respectfully moves the Court to issue an order excluding the admission into evidence of a Food and Drug Administration (FDA) Memorandum dated April 6, 2005 and all evidence and/or argument that the FDA has concluded there is a "Class effect" for all non-steroidal anti-inflammatory drugs (NSAIDS). If Defendant injects these matters into the trial of this cause through a party, an attorney, or a witness, Defendant will cause irreparable harm to Plaintiff's case and the fairness of the trial, which no jury instruction could cure. If any of these matters are brought to the attention of the jury, directly or indirectly, Plaintiff could be compelled to move for a mistrial. In an effort to avoid undue prejudice and a possible mistrial, Plaintiff Smith moves to exclude such matters. In the alternative, Plaintiff Smith seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to

1

introduce or refer to such evidence and/or issues at trial.

Plaintiff believes that Merck may attempt to introduce evidence and/or argument that the FDA has concluded that the class of medications known as the non-steroidal anti-inflammatory drugs ("NSAIDs") – of which, COX-2 inhibitors such as Vioxx are a subset – <u>all</u> carry an increased risk of cardiovascular injury. To support its claims in previous trials, Merck has referenced a memorandum published on the FDA website on April 6, 2005. (Attached as Exhibit A).

This memorandum does not state that the FDA has concluded there is a class effect of increased cardiovascular risk for all NSAIDs. Instead, it contains preliminary and conditional opinions and recommendations, offered during a time period when the FDA was (and continues to be) under intense public and government scrutiny and was being widely criticized for failing to be diligent in its evaluations of the safety of Vioxx and the accuracy of its label and promotional materials. Further, the memorandum explicitly acknowledges that the FDA lacks data to draw final conclusions regarding the cardiovascular risks of NSAIDs. Rather than wait, however, until more conclusive data is available, the FDA chose to err on the side of caution and offer preliminary opinions that might be beneficial to public safety. As a result, the "conclusions" in the memorandum lack the scientific certainty and reliability which might be presumed by the jury to attach to information coming from the FDA.

The Court has previously admitted this document into evidence and has allowed testimony about the document. Plaintiff urges the Court to reconsider its position. Testimony or argument regarding the April 6th FDA memorandum should be excluded because it is irrelevant and untrustworthy. If permitted at this trial, it would also be unfairly prejudicial to Plaintiff and confusing to juries.

The FDA has not scientifically "concluded" anything about a "class affect" associated with NSAIDs. Merck, however, would seek to take the FDA's precautionary statements and use them to bolster the opinions of its own representatives and experts to transform this ongoing litigation from a controversy about Merck's conduct with respect to Vioxx, into a controversy about all NSAIDs. For these reasons – the lack of relevancy, the substantial danger of unfair prejudice, the likelihood of confusion to a jury, and the lack of scientific reliability related to the *"conclusions"* in the FDA's memorandum, the Honorable Judge Higbee in the *Humeston v. Merck & Co.* case ruled that evidence and/or testimony related to the FDA's memorandum is inadmissable. Judge Higbee followed her previous ruling during the *McDarby/Cona* trial. This Court should do the same.

## I. The FDA Memorandum Does Not Conclude That There is a Demonstrated Class Effect for All NSAIDS.

On April 6, 2005, the U.S. Food and Drug Administration ("FDA") published on its web site, a memorandum entitled, "Analysis and recommendations for Agency action regarding nonsteroidal anti-inflammatory drugs and cardiovascular risk." *See* Ex. A. The document contains select discussion and opinions derived from a review of "Available clinical trial data," and "published and unpublished" observational studies. *Id.* at 1,7.

The memorandum concludes that there is an "increased risk of serious adverse CV events compared to placebo" for the selective COX-2 inhibitors Vioxx, Celebrex, and Bextra – a subset of the broader class on non-selective NSAIDs. *Id.* at 1. With respect to a "class effect of NSAIDs," the FDA memorandum states that:

> Long-term placebo-controlled clinical trial data are not available to adequately assess the potential for the non-selective NSAIDs to increase the risk of serious adverse events....... <u>Pending the availability of additional long-term controlled clinical trial data, the available data are best interpreted as being consistent with a class</u>

3

> <u>effect of an increased risk of serious adverse CV events for COX-2 selective and non-selective NSAIDs.</u>

*Id.* at 2 (emphasis added).

This equivocal and qualified observation cannot reasonably be interpreted as meaning that the "FDA has concluded that there is a class effect of increased cardiovascular risks for <u>all</u> NSAIDs." In the section of the memorandum entitled, "Analysis and Conclusions," the reviewers retreat from their earlier summary opinion:

> <u>The absence of long-term controlled clinical trial data for the non-selective NSAIDs significantly limits our ability to assess whether these drugs may also increase the risk of serious adverse CV events...</u> The adverse CV risk for the COX-2 selective drugs became apparent only from large, long-term controlled clinical trials and large retrospective cohort studies. Similar clinical trials are needed to assess the potential risks of the non-selective NSAIDs.

*Id.* at 11 (emphasis added).

Oddly, the reviewers then offer a <u>qualified</u> statement "that it is reasonable to conclude that there is a 'class effect' for increased CV risk for all NSAIDs *pending the availability of data from long-term controlled clinical trials that more clearly delineate the true relationships." Id.* (Emphasis added). This qualification appears to be founded in the authors' acknowledgment that "[f]or the vast majority of non-selective NSAIDs we do not have <u>any data</u> that allow comparisons with COX-2 selective agents for CV risk. *Id.* at 10 (emphasis added) Moreover, with respect to the authors' hypothesis of a class effect, it was noted that "Naproxen may be an exception." *Id.*

The FDA memorandum demonstrates that as far as the FDA is concerned, more data is needed before reaching an unqualified conclusion that there is a "class effect" of increased risk of adverse cardiovascular events. The authors observe significant differences in cardiovascular events among several NSAIDs, including Celebrex, Vioxx and Naproxen. *Id.* at 4-5, 10. In short, as far

as the authors are concerned, they are not concluding that there is a class effect since additional data is needed. Further, there is evidence that the agency felt pressured to provide guidance on the COX-2 controversy, even in the absence of long-term clinical trials addressing the cardiovascular risks of non-selective NSAIDs. The reviewers noted:

> The inability to reliably estimate the absolute magnitude of the increased risk of serious adverse CV events for individual COX-2 agents, combined with <u>the inability to reliably draw conclusions about the risk of COX-2 agents compared to one another or to other NSAIDs</u>, highlights the conundrum the Agency faces in making decision on appropriate regulatory actions. <u>There is an urgent health need to make appropriate regulatory decisions because the adverse events at issue are serious and a very large number of patients use selective and non-selective NSAIDs.......</u> Although the currently available data are not definitive, <u>the Agency cannot await more definitive data</u>, which may take years to accumulate from studies that have not even begun, before taking action.

*Id.* at 10 (emphasis added).

Irrespective of the merits of the FDA's opinions,[1] it is apparent that the FDA was under enormous pressure to weigh in on the COX-2 controversy. Indeed, at the time the FDA memorandum was published on its web site, the FDA's oversight of the development and marketing of Vioxx was being widely criticized by the medical community and in the media and was the subject of both committee hearings in both the United States House of Representatives and Senate. As demonstrated above, any allegation that the FDA has definitely concluded that there is a class effect of increased cardiovascular risks for all NSAIDs is false. Further, the circumstances under which the FDA rendered such opinions are suspect.

---

[1] Plaintiffs note that the FDA analysis does not seem to account for several published studies that "ranked" the relative risk for serious adverse cardiovascular events among COX-2 inhibitors and non-selective NSAIDs, including Ray, *Non-steroidal Anti-inflammatory Drugs and risk of Serious Coronary Heart Disease: an Observational Cohort Study,* The Lancet, Vol. 359, Pg. 118-123 (2002) and Juni, *Risk of Cardiovascular Events and Rofecoxib: Cumulative Meta-analysis,* The Lancet, Pg. 1-9 (Nov. 5, 2004).

**II.     Any Evidence of Argument That the FDA has Concluded That There is a Class Effect of Increased Cardiovascular Risk For All NSAIDs is Unreliable and Highly Prejudicial.**

All evidence, including expert opinion, is subject to the requirements of Rules 401, 402 and 403 which address relevancy and reliability. Rule 403 provides, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice confusion of issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED R. EVID. 403.

In addition, Rule 803(8)(c) provides that public records are excepted from the rule excluding hearsay "unless the sources of information or other circumstances indicate lack of trustworthiness." FED. R. EVID. 803(8)(c). The determination of whether a document is trustworthy requires the court to consider the reliability of the document. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1307-1308 (5th Cir. 1991). While the focus is on whether the document is reliable, the Court should not ignore the document's conclusions. "If reasonable jurors could not accept the report's conclusions, then there is no reason to admit the report." Id. at n.5. In this case, as discussed above, the class effect statement is premised on a logical fallacy. A conclusion premised on such flawed logic is, by definition, unreliable. "An invalid conclusion cannot be reliable." *Christopherson v. Allied-Signal Corp.*, 939 F.2d 1106, 1111 n.9 (5th Cir. 1991)(citation omitted).

Any suggestion that the FDA has concluded that all NSAIDs as a class – increase the risk of severe cardiovascular events is not supported by the Memorandum and is misleading and confusing to the jury. As noted above, the FDA has not reached any such conclusion. The "conclusions" reflected in the memorandum are, by the author's own acknowledgment, based on incomplete data and precautionary speculation.

The FDA is widely perceived by the public to be an authority on such issues and, thus, the

6

danger of unfair prejudice is magnified. Allowing such evidence or argument will distract future juries from the central questions regarding Vioxx to each case in this multi-district litigation: did Merck fail to adequately warn physicians and patients about known cardiovascular risks associated with Vioxx? Is Vioxx defective or unreasonably dangerous?

If the FDA's April 6, 2005 Memorandum is admitted into evidence and testimony regarding its contents is allowed, there is a substantial danger that the jury will attach disproportionate significance to this evidence - - even with its dubious reliability or marginal relevance - - and give less weight to the scientific evidence presented by Plaintiff that has qualified for admission into evidence by passing through *Daubert's* gates.

Further, the prejudice to Plaintiff is heightened by the fact that the authors of the FDA memorandum will likely not be testifying at trial. Plaintiff has not had opportunity to verify or ascertain the basis of the authors' conclusions. Moreover, Plaintiff will likely not have opportunity to cross-examine the authors of the FDA memorandum concerning their opinions prior to the upcoming trials. If Defendant is permitted to introduce evidence or argument that the FDA has concluded that there is a class effect for all NSAIDs at trial, Merck, in essence, will have the unfair advantage of bolstering the opinions of its representatives and experts without Plaintiff having the opportunity to cross-examine the authors of the memorandum. Such an outcome is particularly troubling when one further considers the equivocal and confusing nature of the document, and the suspect circumstances under which it was published by the FDA.

Without question, the probative value of this memorandum is substantially outweighed by its prejudicial effect. Its admission at this trial would only serve to confuse and mislead the jury and therefore, the memorandum should be excluded under Rule 403. In addition, it should be excluded

has untrustworthy under Rule 803(8)(c).

Accordingly, Plaintiff urges the Court to exclude the FDA's April 6, 2005 Memorandum as well as all evidence and/or argument that the FDA has concluded that there is a "class effect" of increased cardiovascular risks for all NSAIDs.  In the alternative, Plaintiff Smith seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial.

Dated:  August 7, 2006

Respectfully submitted,

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017

(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com


cc      By email only:

   Robert Van Kirk            rvankirk@wc.com
   **Williams & Connolly LLP**
   725 Twelfth Street Northwest
   Washington, D.C.  20005
   (202) 434-5000; fax (202) 434-5029

   Carrie A. Jablonski        carrie.jablonski@bartlit-beck.com
   **Bartlit, Beck, Herman, Palenchar & Scott LLP**
   54 West Hubbard Street, Suite 300
   Chicago, Illinois 60610
   (312) 494-4400; fax (312) 494-4440