UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBBIE TALLAS AND DANIELLE TALLAS,<br>husband and wife,<br><br>        Plaintiffs<br><br>v.<br><br>PBT BUSINESS TRUST, d/b/a<br>THE PITTSBURG PENGUINS, INC.,<br>THE SCRANTON/WILKES-BARRE<br>PENGUINS, DAVID J. KOLESSAR, M.D.,<br>MERCK AND COMPANY, PETER S. KIM,<br>Ph.D, LOUIS M. SHERWOOD, M.D.,<br>DAVID W. ANSTICE, and<br>EDWARD M. SCOLNICK, M.D. | NO. 06 CV 00388 |

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs, Robbie Tallas and Danielle Tallas, through counsel, move this Court for an order remanding this action to the Court of Common Pleas for the County of Philadelphia, and in support thereof, aver as follows:

1.    Plaintiffs, Robbie Tallas and Danielle Tallas, initiated this action by filing two Complaints against Defendants in the Court of Common Pleas for the County of Philadelphia on December 22, 2006 at Nos. 2846 and 2851, December Term, 2005.   A true and correct copy of Plaintiffs' Short Form Complaint is attached hereto as Exhibit "A."[4]

---

[4] Plaintiffs filed two Complaints out of an abundance of caution.  One of the Complaints was a Short Form Complaint ("Short Form") utilized in the Philadelphia Court of Common Pleas' Vioxx mass tort program, incorporating a Long Form Complaint (the "Long Form") filed at In re Vioxx Litigation, Philadelphia Court of Common Pleas, April Term, 2005, No. 0736.  Plaintiffs' other Complaint, raising identical allegations against Defendants, was a standard form, full length complaint.  Plaintiffs filed both to avoid any claims on the parts of non-Merck defendants, who are

1



2.      On January 27, 2006, Defendant, Merck & Company ("Merck") filed a

Notice of Removal, removing Plaintiffs' actions to this Court.  A true and correct

copy of Merck's Notice of Removal is attached hereto as Exhibit "B."

3.      Merck contends its removal of Plaintiffs' actions from the Philadelphia

Court of Common Pleas is proper because:

      a.      There exists complete diversity of citizenship between Plaintiffs,
            Merck and Defendant, Edward M. Scolnick, M.D.; and

      b.      The amount in controversy exceeds $75,000.00.

See Exhibit B," at ¶¶ 11-18.

4.      Defendants, David J. Kolessar, M.D., PBT Business Trust, d/b/a The

Pittsburgh Penguins, Inc. (the "Pittsburgh Penguins"), The Wilkes-Barre/Scranton

Penguins (the "Wilkes-Barre/Scranton Penguins") Peter S. Kim, Ph.D, Louis M.

Sherwood, M.D. and David W. Anstice are citizens of Pennsylvania.

5.      28 U.S.C §1441(b) provides:

(b) Any civil action of which the district courts have original
jurisdiction founded on a claim or right arising under the Constitution,
treaties or laws of the United States shall be removable without
regard to the citizenship or residence of the parties. Any other such
action shall be removable only if none of the parties in interest properly
joined and served as defendants is a citizen of the State in which such
 action is brought.

28 U.S.C. § 1441(b).

---

not included in the Long Form incorporated into the Short Form, of procedural defects in the claims
raised against them in the Short Form.  Prior to Merck's removal, Plaintiffs intended to consolidate
the two Complaints within the Philadelphia Court of Common Pleas' Vioxx mass tort program, which
provides streamlined discovery regarding all Vioxx claims in Philadelphia County, and, Plaintiffs
believe, the most efficient forum for resolution of their claims.

6.     Under 28 U.S.C. § 1441(b), actions in which the parties are citizens of different states "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Mallulieu v. Executive Risk Indemnity, 254 F.Supp.2d 521, 526 (2003).

7.     To avoid the operation of 28 U.S.C. § 1441(b), Merck contends that Defendants, Dr. Kolessar, the Pittsburgh Penguins, The Wilkes-Barre/Scranton Penguins, Messrs. Kim and Anstice and Dr. Sherwood were all fraudulently joined. See Exhibit "B," at ¶¶ 19-23.

8.     To determine that each of the Defendants listed in Paragraph 7 above was fraudulently joined - which is required for removal - and without such finding this action is required to be remanded - Merck must show that there does not exist "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851-852 (3d Cir. 1992).

9.     In determining whether a state court would find that the Complaint states cause of action against any one of the allegedly fraudulently joined defendants, the district court "must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id., at 851-52; See also City of Philadelphia v. Hotels.com, 2005 WL 2573146 (E.D.Pa.) (remanding action on grounds that mere "possibility" of state court finding against allegedly fraudulently joined defendant warranted remand to state court).

10.    Merck has not and cannot show that there does not exist even a

3

possibility that a state court would find that the Complaint states a cause of action against Dr. Kolessar, Dr. Sherwood, the Pittsburgh Penguins, the Wilkes-Barre/Scranton Penguins and Messrs. Kim and Anstice.

11.   Where removal is sought in a case involving numerous defendants, there must unanimous consent to removal on the part of the defendants. See 28 U.S.C. § 1446(a); City of Philadelphia v. Hotels.com, 2005 WL 2573146, 2, *citing* Barkley v. City of Philadelphia., 169 F.Supp.2d 346, 347 (E.D.Pa. 2001); See also Green v. Target Stores, Inc., 305 F.Supp.2d 448, 449 (E.D.Pa. 2004).

12.   Merck has not obtained Defendants' unanimous consent to removal.

13.   For these reasons, this action should be remanded to the Court of Common Pleas for the County of Philadelphia.

GOLOMB & HONIK

RJD80888

BY:_____

RICHARD M. GOLOMB, ESQUIRE
RYAN J. DURKIN, ESQUIRE
GOLOMB & HONIK
Identification Nos. 42845, 80888
121 South Broad Street, 9th Floor
Philadelphia, PA 19107
(215) 985-9177
Attorney for Plaintiffs

Date: February 7, 2006

4

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBBIE TALLAS AND DANIELLE TALLAS,<br>husband and wife, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| PBT BUSINESS TRUST, d/b/a | : | |
| THE PITTSBURGH PENGUINS, INC., | : | NO. 06 CV 00388 |
| THE SCRANTON/WILKES-BARRE | : | |
| PENGUINS, DAVID J. KOLESSAR, M.D., | : | |
| MERCK AND COMPANY, PETER S. KIM, | : | |
| Ph.D, LOUIS M. SHERWOOD, M.D., | : | |
| DAVID W. ANSTICE, and | : | |
| EDWARD M. SCOLNICK, M.D. | : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF PLAINTIFFS' MOTION TO REMAND

Plaintiffs, Robbie Tallas and Danielle Tallas, through counsel, submit the

following memorandum of law in support of their Motion to Remand.

## I.     INTRODUCTION

This action should be remanded to the Philadelphia Court of Common Pleas

because:

1.     Merck's removal was improper, violating 28 U.S.C. §1441(b);

2.     None of the Defendants are fraudulently joined; and

3.     Merck has failed to procure the necessary unanimous consent to
       removal of Defendants.

1

II.    **FACTS**[1]

This is not a run of the mill Vioxx case, and the facts which render it wholly distinguishable from a standard "defective drug" Vioxx claim are the same facts which, as a matter of law, require it to be remanded.  Plaintiff, Robbie Tallas was a professional hockey goaltender with a bright and exceptionally lucrative career before him playing hockey professionally in the United States, Europe or Russia. Three of the Defendants Merck claims Plaintiffs have no intention or hope of obtaining a judgment against - Dr. David Kolessar, the Pittsburgh Penguins and the Wilkes-Barre/Scranton Penguins - provided Robbie Tallas with Vioxx at times without a prescription, without evaluating him and, in the case of the Pittsburgh Penguins and Wilkes-Barre/Scranton Penguins, without license to do so, in violation of law.  The Pittsburgh Penguins and Wilkes-Barre/Scranton Penguins received the Vioxx they provided to Robbie Tallas from Dr. Kolessar, who unlawfully gave it to them for distribution to players at their whim.  Contrary to Merck's claim, these Defendants are as culpable as Merck, and Plaintiffs absolutely intend to fully prosecute the claims brought against them.

Plaintiffs have brought this case in a Pennsylvania state court against numerous Pennsylvania citizens, each of whom owed unique duties to Plaintiffs, and each of whom breached those unique duties.  This case is not, as Merck has tried to characterize it, a "spoke and wheel" arrangement of claims in which Plaintiffs have sued numerous nominal defendants under theories derivative of

---

[1] In addition to the facts set forth below, Plaintiffs incorporate the facts set forth in their accompanying Motion to Remand.

2

those brought against Merck.  The claims against the Pennsylvania citizens here are simply not derivative of those against Merck.  Nor is it a case where Plaintiffs have brought claims against certain defendants in an effort to forum shop the case into a Pennsylvania state court.[2]

Dr. David Kolessar, the Pittsburgh Penguins and the Wilkes-Barre/Scranton Penguins have been sued because of the exceedingly dangerous manner in which they distributed a prescription painkiller to Plaintiff, Robbie Tallas.  Dr. Kolessar, the Pittsburgh Penguins and the Wilkes-Barre/Scranton Penguins gave Robbie Tallas a prescription drug without evaluating him, without a prescription, and in the case of the Pittsburgh Penguins and Wilkes-Barre/Scranton Penguins, without a license to dispense prescription drugs.  Dr. Kolessar has also been sued because he failed to physically examine Mr. Tallas before giving him Vioxx and failed to adhere to the required standard of care by not warning Mr. Tallas of Vioxx's risks, or prescribing Plaintiff alternative medication, despite the existence of medical literature - with which he should have been familiar prior to the time he provided Vioxx to Plaintiff - showing the existence of such risks.  Plaintiffs have brought claims against Dr. Kolessar and the Pittsburgh Penguins and Wilkes-Barre/Scranton Penguins in a Pennsylvania state court because a jury in Pennsylvania, the state of which those defendants are citizens, and which licenses Dr. Kolessar to dispense prescriptions, should determine whether they should be held liable for their actions.

---

[2] If there is any forum shopping going on, it is Merck's meritless attempt to transfer this case to the Multidistrict Litigation ("MDL") before the United States District Court for the Eastern District of Louisiana.  See Exhibit "B," at ¶ 1.

For those reasons, fleshed out further below, as well as the other legal and factual bases set forth below and in the accompanying motion, this action should be remanded.

## III.    APPLICABLE STANDARDS

### A.    Remand

Generally, a defendant may remove an action filed in state court when the federal court could have original jurisdiction over the matter. See 28 U.S.C. § 1441(b) (1994); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Upon removal, however, the district court should remand the case to the state court if it determines that it lacks subject matter jurisdiction. See 28 U.S.C. § 1441(c); Twp. Of Whitehall v. Allentown Auto Auction, 966 F.Supp. 385, 386 (E.D.Pa. 1997). Upon a motion for remand, the moving party has the burden of establishing that removal was improper and that remand is warranted. See Boyer, 913 F.2d at 111; Orndorff v. Allstate Ins. Co., 896 F.Supp.173, 174 (M.D.Pa. 1995); Corwin Jeep Sales & Svc., Inc. v. American Motor Sales Corp., 670 F.Supp. 591, 595 (E.D.Pa. 1986). Removal jurisdiction is to be strictly construed, with all doubts as to its propriety to be resolved in favor of remand. See Drozdowski v. Signature Flight Support Corp., 2005 WL 273237 (E.D.Pa. Feb. 3, 2005) citing Dempsey v. Federal Express Corp., 2001 WL 136505 (E.D.Pa. 2001).

### B.    28 U.S.C. § 1441(b)

28 USC 1441(b) provides, in pertinent part:

4

(b) Any civil action of which the district courts have original
jurisdiction founded on a claim or right arising under the Constitution,
treaties or laws of the United States shall be removable without
regard to the citizenship or residence of the parties. Any other such
action shall be removable only if none of the parties in interest properly
joined and served as defendants is a citizen of the State in which such
action is brought.

Under 28 USC 1441(b), "an action in which the parties are citizens of

different states "shall be removable only if none of the parties in interest properly

joined and served as defendants is a citizen of the State in which such action is

brought." Mallulieu v. Executive Risk Indemnity, 254 F.Supp.2d 521, 526 (2003).

A defendant may not remove an action to federal court based on diversity if any

defendant "is a citizen of the State in which such action is brought."  Blech v. Ford,

2004 WL 1047649, at p. 2. "Under 28 USC 1441(b), actions for which original

federal jurisdiction is based on diversity of citizenship "shall be removable only if

none of the parties in interest properly joined and served as defendants is a citizen

of the State in which such action is brought." Ramsaur v. Mossman, 2005 WL

418043, at p. 1 ("The present action was removed by Defendants, who are

citizens of Pennsylvania, the State in which the action was brought. Thus, removal

of this matter by the in-state Defendants was improper pursuant to 28 U.S.C. §

1441(b).")

C.    Fraudulent Joinder

The standard required to be met in the Third Circuit for a determination that a

party has been fraudulently joined is set forth in Batoff v. State Farm Ins. Co.,

5

977 F.2d 848 (3d Cir. 1992):

> Joinder is fraudulent where there is no reasonable basis
> in fact or colorable ground supporting the claim against
> the joined defendant, or no real intention in good faith to
> prosecute the action against the defendants or seek a joint
> judgment. But, **if there is even a possibility that a state court
> would find that the complaint states a cause of action against
> any one of the resident defendants, the federal court must find
> that joinder was proper and remand the case to state court.**
> Furthermore ... where there are colorable claims or defenses
> asserted against or by diverse and non-diverse defendants alike,
> the court may not find that the non-diverse parties were
> fraudulently joined based on its view of the merits of those
> claims or defenses.

> In evaluating the alleged fraud, the district court must focus on
> the plaintiff's complaint at the time the petition for removal was
> filed. In so ruling, the district court must assume as true all
> factual allegations of the complaint. **It also must resolve any
> uncertainties as to the current state of controlling substantive
> law in favor of the plaintiff.**

Id., at 851-52; See also City of Philadelphia v. Hotels.com, 2005 WL 2573146

(E.D.Pa.) (remanding action on grounds that mere "possibility" of state court finding

against allegedly fraudulently joined defendant warranted remand to state court).

**D.     Unanimity Rule**

Where removal is sought in a case involving numerous defendants, there

must be unanimous consent to removal on the part of the defendants.  See 28

U.S.C. § 1446(a); City of Philadelphia v. Hotels.com, 2005 WL 2573146, 2, *citing*

Barkley v. City of Philadelphia., 169 F.Supp.2d 346, 347 (E.D.Pa. 2001); See also

Green v. Target Stores, Inc., 305 F.Supp.2d 448, 449 (E.D.Pa. 2004) (noting

unanimity requirement).

6

IV.    **LEGAL ARGUMENT**

    A.    **Merck's removal was improper and violates 28 U.S.C. §1441(b)**

        It is undisputed that Dr. Kolessar, the Pittsburgh Penguins, the Wilkes-Barre Scranton Penguins, Dr. Sherwood, and Messrs. Kim and Anstice are citizens of Pennsylvania.  28 USC 1441(b) allows a defendant to remove an action only "if none of the parties in interest properly joined and served as defendant is a citizen of the State in which such action is brought."  28 USC 1441(b).  Six of the Defendants in this case are Pennsylvania citizens, and this case was brought in Pennsylvania.  As set forth below, Merck has not and cannot show that all of the Pennsylvania citizen Defendants were fraudulently joined.  Merck's removal violates 28 USC 1441(b), and this action should be remanded.

    B.    **Merck cannot show that the Pennsylvania Defendants are fraudulently joined**

        To avoid remand, Merck must show that every one of the Pennsylvania Defendants was fraudulently joined, something it cannot do, as the flawed arguments set forth in its Notice of Removal prove.  Merck's claim that the Pittsburgh Penguins, Wilkes-Barre/Scranton Penguins and Dr. Kolessar are fraudulently joined is without merit.  See Exhibit "B," at ¶¶ 21-23.  The standard required to be met in the Third Circuit for a determination that a defendant is fraudulently joined is exceedingly high, requiring a showing that there is not even a possibility the state court would find that the complaint states a cause of action against such defendants.  In the case of the Pittsburgh Penguins, Wilkes-

Barre/Scranton Penguins and Dr. Kolessar, it is simply impossible for Merck to reach that standard.

Merck incorrectly claims that the Pittsburgh Penguins, Wilkes-Barre/Scranton Penguins and Dr. Kolessar are fraudulently joined because, at law, Plaintiffs cannot prosecute fraud claims against Merck while simultaneously claiming that a healthcare provider such as Dr. Kolessar failed to warn Plaintiff of Vioxx's risks. This argument mischaracterizes Plaintiffs' claims. See Exhibit "B," at ¶¶ 21-23. Plaintiffs are not merely claiming that Dr. Kolessar, the Pittsburgh Penguins and the Wilkes-Barre/Scranton Penguins failed to warn Plaintiff of Vioxx's risks. Plaintiffs have made claims against the Pittsburgh Penguins and Wilkes-Barre/Scranton Penguins for:

> A.   Providing Plaintiff with Vioxx and encouraging Plaintiff to consume it without a prescription and without any customary medical examinations or evaluations;
>
> B.   Providing Vioxx, a controlled pharmaceutical to Plaintiff, despite the fact that they did not have a medical or pharmaceutical license to do so; and
>
> C.   Providing off-season prescriptions of Vioxx to Plaintiff by giving him amounts to last him through the off-season without follow up care and/or evaluation by a physician.

See Exhibit "A," a true and correct copy of Plaintiffs' Complaint, at ¶¶ 106-109.

Plaintiffs have made claims against Dr. Kolessar for:

> d)   Providing Plaintiff directly and through Defendant Penguins Organization with non-prescribed sample packets of Vioxx;
>
> e)   [F]ailing and neglecting to take proper and sufficient precautions to leave Plaintiff at all times in the care of competent, skilled, and qualified nurses, doctors and attendants;

f)     [F]ailing to order the proper medication which Plaintiffs'
       condition required;

                              . . .

h)     [P]roviding Vioxx to individuals without medical licenses or
       medical training for the purpose of distributing the painkiller to
       Plaintiff and other members of the Wilkes-Barre Penguins
       hockey team;

i)     [P]rescribing Vioxx to Plaintiff without evaluating Plaintiff;

j)     [P]rescribing Vioxx to Plaintiff without providing proper and
       necessary follow-up care and evaluation; and

k)     [P]roviding Plaintiff with Vioxx without a prescription.

See Exhibit "A," at ¶ 125.

Plaintiffs are claiming that Defendants gave Plaintiff, Robbie Tallas Vioxx

without a prescription, without evaluation, and, in the case of the Pittsburgh

Penguins and Wilkes-Barre/Scranton Penguins, without license to do so, in violation

of Pennsylvania law.  Plaintiffs also claim that Dr. Kolessar unlawfully provided the

drug to members of the Pittsburgh Penguins and Wilkes-Barre/Scranton Penguins

organizations for the purpose of passing it on to Tallas, without prior evaluation of

Tallas.  These are not mere "failure to warn" claims.  These are distinct claims

which provide a strong basis for a finding of liability on the parts of the Pittsburgh

Penguins, Wilkes-Barre/Scranton Penguins and Dr. Kolessar under Pennsylvania law.

Merck also ignores Plaintiffs' discrete claims against Dr. Kolessar for his

failure to warn of Vioxx's risks despite the existence of medical literature - with

which he should have been familiar prior to the time he provided Vioxx to Tallas -

showing the existence of such risks.  As set forth in Plaintiffs' Complaint, the first

warnings regarding Vioxx's propensity to cause heart attack and stroke were

published as early as 2001. See Exhibit "A," at ¶¶ 66-68. Dr. Kolessar, directly,

as well as indirectly through the Pittsburgh Penguins and Wilkes-Barre/Scranton

Penguins, provided Plaintiff, at times without prescription, and without prior

evaluation, with Vioxx during 2002 and 2003. That Dr. Kolessar, then engaged in

providing medical care to professional hockey players with chronic pain symptoms,

should have known from a review of available medical literature that Vioxx carried

risks is a distinct theory of liability, based on his unique duty to apply contemporary

medical knowledge in his care of Plaintiff, which duty differed from Merck's. See

Pennsylvania Suggested Standard Jury Instruction § 10.03(A) ("Doctors, nurses or

other medical providers must also keep informed of the contemporary developments

in the medical profession, and their specialty, and they must use these current skills

and knowledge."); See also Hodgson v. Bigelow, 335 Pa. 497, 515, 7 A.2d 338,

347 (1939). These claims against Dr. Kolessar are not inconsistent with Plaintiffs'

claims against Merck. At most, claims regarding his failure to warn and/or provide

contemporary medical knowledge may be characterized as alternative theories of

liability to those raised against Merck, allowed under the Federal Rules of Civil

Procedure. F.R.Civ.P. 8(e)

    Merck has not, and cannot, prove that either the Pittsburgh Penguins,

Wilkes-Barre Scranton Penguins or Dr. Kolessar was fraudulently joined.[3] For that

---

[3] Because Merck must show that each Defendant who is a citizen of Pennsylvania is fraudulently joined, and Plaintiffs can defeat removal by merely showing that one of those Defendants is not fraudulently joined, the Court need not address whether the joinders of Messrs. Anstice and Kim, and Dr. Sherwood are fraudulent. To the extent Merck may nevertheless assert that their joinder is fraudulent, it clearly is not. As the Complaint shows, Dr. Sherwood and Messrs.

reason, Merck's removal violates 28 U.S.C. § 1441(b), and this action should be remanded.

**C.   Merck has failed to obtain the unanimous consent of Defendants**

Under 28 U.S.C. § 1446(a), to remove this action, Merck was required to obtain the unanimous consent of all Defendants.  Merck did not do so, instead choosing to assert it was not required to do so because all of the other Defendants in the case were fraudulently joined.  As set forth above, all of the other Defendants were not fraudulently joined.  At a minimum, the Pittsburgh Penguins, Wilkes-Barre/Scranton Penguins and Dr. Kolessar are properly joined and, as such, Merck was required to obtain the consent of all Defendants.  28 U.S.C. § 1332 requires a Notice of Removal to be filed within 30 days of service of the Complaint.  Merck's Notice of Removal was deficient and it is out of time to file another.  This case should be remanded.

---

Anstice and Kim were joined because their positions at Merck provided them with knowledge of the cardiovascular risks caused by Vioxx.  See Exhibit "A," at ¶¶ 13-15, 31-50, 121-128, 134-181. Dr. Sherwood reviewed and supervised clinical trials regarding Vioxx and monitored clinical trials and scientific information regarding Vioxx and competitors of Vioxx and was principally responsible for protecting the safety of consumers.  Dr. Kim was in charge of the scientific development, testing, and development and promulgation of product safety warnings for Vioxx.  Mr. Anstice was President of the Human Health Division of Defendant Merck, and was directly responsible for introducing new drugs to the market, including Vioxx.  See Exhibit "A," at ¶¶ 13-15, 31-50.  The claims brought against them, including fraud, arise not solely from misrepresentations made by each of them individually, as Merck claims, but from misrepresentations and omissions regarding Vioxx's risks made by them.  Debbs v. Chrysler Corp., 810 A.2d 137, 155 (Pa.Super. 2002) (defining fraud as "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture").  There is more than a possibility that a state court would find Plaintiffs' Complaint states a cause of action against Dr. Sherwood and Messrs, Anstice and Kim. Were the district court required to reach the issue, it would find that joinder of those Defendants was proper.

11

## CONCLUSION

For the reasons set forth above, the Motion to Remand should be granted, and this

action remanded to the Philadelphia Court of Common Pleas.

**GOLOMB & HONIK**

RJD80888

BY:_____

**RICHARD M. GOLOMB, ESQUIRE**
**RYAN J. DURKIN, ESQUIRE**
**GOLOMB & HONIK**
Identification Nos.  42845, 80888
121 South Broad Street, 9th Floor
Philadelphia, PA 19107
(215) 985-9177
Attorney for Plaintiffs

**Date:** February 7, 2006

12

## CERTIFICATION OF SERVICE

Ryan J. Durkin, counsel for Plaintiffs, Robbie Tallas and Danielle Tallas,

certifies that on February 7, 2006, true and correct copies of the foregoing

Motion for Remand were served on the following electronically:

Mark A. Berman, Esquire
Gibbons, Del Deo, Dolan, Griffinger
& Vecchione
One Riverfront Plaza
Newark, NJ 07102

Barbara G. Reid, Esquire
Schulte, Roth & Zabel, LLP
919 Third Avenue
New York, NY 10022

Debra A. Weinrich, Esquire
White & Williams
1800 One Liberty Place
Philadelphia, PA 19103

William J. Winning, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Frederick T. Magaziner, Esquire
Joseph K. Hetrick, Esquire
Joshua K. Schiller, Esquire
Dechert, LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

RJD80888

_____
Ryan J. Durkin

Exhibit "A"

**GOLOMB & HONIK**
By:    Richard M. Golomb, Esquire
ID No.  42845
121 South Broad Street, 9th Floor
Philadelphia, PA 19107
(215) 985-9177

**THIS IS A MAJOR JURY MATTER.**

Attorney for Plaintiff

---

ROBBIE TALLAS AND DANIELLE TALLAS,
husband and wife,
1884 Classic Drive, Coral Springs, Florida

          Plaintiffs

v.

MERCK AND COMPANY
One Merck Drive, White House Station,
New Jersey 08889,

PBT BUSINESS TRUST, d/b/a
THE PITTSBURGH PENGUINS, INC.,
Civic Arena, Gate 7, Auditorium Place,
Pittsburgh, Pennsylvania 15219,

THE SCRANTON/WILKES-BARRE
PENGUINS,
415 Arena Hub Plaza, Wilkes Barre,
PA 18702,
*See continuation of Defendants.

:IN THE COURT OF COMMON PLEAS
:OF PHILADELPHIA COUNTY
:
:
:
:  JURY FEE PAID   Term 2005
:        No.
:
:
:                      DECEMBER 2005
:
:                        002846
:
:
:
:  **Vioxx Litigation**
:
:
:
:

ATTEST

DEC 2 2 2005

LAURA PAONE

JURY FEE PAID

---

<u>**AVISO**</u>
<u>**CIVIL ACTION COMPLAINT**</u>

**NOTICE**

          You have been sued in court.  If you wish to defend against the
claims set forth in the following pages, you must take action within twenty (20)
days after this complaint and notice are served, by entering a written appearance
personally or by attorney and filing in writing with the court your defenses or
objections to the claims set forth against you.  You are warned that if you fail to
do so the case may proceed without you and a judgment may be entered against
you by the court complaint or for any other claim or relief requested by the
plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER OR CANNOT
AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH
BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP

          Lawyer Reference Service
          Philadelphia Bar Association
          1101 Market Street, 11th Floor
          Philadelphia, PA 19107
          (215) 238-6300

**AVISO**

          Le han demandado a usted en la corte.  Si usted quiere defenderse
de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias
de plazo al partir de la fecha de la demanda y la notificación.  Hace falta asentar
una comparecencia escrita o en persona o con un abogado y entregar a la corte en
forma escrita sus defensas o sus objeciones a las demandas en contra de su
persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y
puede continuar la demanda en contra suya sin previo aviso o notificacion.
Ademas, la corte puede decidir a favor del demandante y requiere que usted
cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o
sus propiedades y otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO
TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR
TAL SERVICO. VAYA EN PERSONA O LLAME POR TELEFONO A LA
OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA
AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

          Lawyer Reference Service
          Philadelphia Bar Association
          1101 Market Street, 11th Floor
          Philadelphia, PA 19107
          (215) 238-6300

DAVID J. KOLESSAR, M.D.,                          :
1000 East Mountain Road, Wilkes Barre,            :
Pennsylvania, 18711,                              :
                                                  :
PETER S. KIM, Ph.D                                :
119 Henning Drive, North Wales,                   :
Montgomery County, Pennsylvania 19446,            :
                                                  :
LOUIS M. SHERWOOD, M.D.,                           :
1241 Forest Hill Drive, Lower Gwynedd,            :
Pennsylvania,                                     :
                                                  :
DAVID W. ANSTICE                                  :
5280 Militia Hill Road, Plymouth Meeting,         :
Pennsylvania,                                     :
                                                  :
EDWARD M. SCOLNICK, M.D.                           :
1201 Magnolia Drive, Wayland, Middlesex           :
County, MA 01778,                                 :
                                                  :
                          Defendants              :

**GOLOMB & HONIK**
By:    Richard M. Golomb, Esquire
ID No.  42845
121 South Broad Street, 9th Floor
Philadelphia, PA 19107
(215) 985-9177                                    **Attorney for Plaintiffs**

---

### IN THE COURT OF COMMON PLEAS
### PHILADELPHIA COUNTY, PENNSYLVANIA

|                          |   |                    |
|--------------------------|---|--------------------|
| IN RE VIOXX LITIGATION   | : | April Term, 2005   |
|                          | : |                    |
|                          | : | No.  0736          |
|                          | : |                    |

---

### CIVIL ACTION COMPLAINT - SHORT FORM

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re: Vioxx ("Vioxx") Litigation in Philadelphia County Court of Common Pleas, filed at Master Docket Number 0736, April Term, 2005.  Pursuant to an Order by the Honorable Norman Ackerman, Philadelphia County Court of Common Pleas, the following Short Form Complaint is utilized in this Vioxx action.

Plaintiff selects and indicates by checking off the appropriate spaces, those products, parties and claims that are specific to her or his case.  Where certain claims require, pursuant to Pennsylvania law, specific pleading or case specific facts and individual information, plaintiff shall add and include them herein.

1.  Plaintiff, Robbie Tallas, is an individual who resides at 1884 Classic Drive, Coral Springs, in the state of Florida (herein referred to as "plaintiff").

1

Plaintiff's date of birth is March 20, 1973.

1b.  Plaintiff is married to Plaintiff, Danielle Tallas.

2.  Plaintiff ingested Vioxx from the 2001/2002 hockey season until December 31, 2003, which caused him injury.

3.  Plaintiff was prescribed and/or otherwise obtained Vioxx from Dr. David Kolessar, PBT Business Trust, d/b/a The Pittsburgh Penguins, Inc. (the "Pittsburgh Penguins") and the Scranton/Wilkes Barre Penguins (the "Wilkes Barre Penguins") .

4.  Plaintiff suffered a heart attack on or about December 31, 2004.

5.  Plaintiff-spouse, Danielle Tallas (hereinafter referred to as "Spouse") is an individual resident at the above address and claims damages as a result of

_____X_____ Loss of consortium.

_____ Wrongful death

Spouse's date of birth is September 27, 1973.

6.  The following claims asserted in the Master Complaint, and the allegations with regard thereto in the Master Complaint, are herein adopted by reference.

_____X_____ Count One:  Negligence

_____X_____ Count Two: Breach of Implied Warranty

_____X_____ Count Three: Breach of Express Warranty

____X____   Count Four: Fraud & Misrepresentation[1]

____X____   Count Five: Violation of Consumer Protection Laws

____X____   Count Six: Punitive Damages

____X____   Count Nine: Loss of Consortium

7. Plaintiff

8. Plaintiff asserts the following additional theories against these defendants

(See FN 1):

### NEGLIGENCE:

Defendants, David Kolessar, M.D., Scranton/Wilkes Barre Penguins, PBT Business Trust, d/b/a Pittsburgh Penguins, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

### NEGLIGENCE (MEDICAL MALPRACTICE):

Defendant, David Kolessar, M.D.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY:

Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

### BREACH OF EXPRESS WARRANTY:

Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

---

[1] If additional counts, Count Four and/or counts directed to other defendants are alleged, the specific facts supporting these allegations must be pleaded by the plaintiff in a manner complying with the requirements of the Pennsylvania Rules of Civil Procedure, and defendants against whom they are alleged must be specifically identified on a separate sheet of paper attached to the Short Form Complaint.

3

## FRAUD AND MISREPRESENTATION:

Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

## VIOLATION OF CONSUMER PROTECTION LAWS:

Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

## LOSS OF CONSORTIUM:

Defendants, David Kolessar, M.D., Scranton/Wilkes Barre Penguins, PBT Business Trust, d/b/a Pittsburgh Penguins, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

9. Plaintiffs' claims against defendants other than Merck are set forth below and in a separate complaint, being filed simultaneously with this Short Form Complaint. A copy of that complaint is attached hereto as Exhibit "A."

WHEREFORE, Plaintiffs pray for relief as set forth in the Plaintiffs' Master Long Form Complaint in In Re: Vioxx Litigation in Philadelphia County Court of Common Pleas, filed under Master Docket Number 0736.

4

## CLAIMS AGAINST OTHER DEFENDANTS

| | |
|---|---|
| ROBBIE TALLAS and DANIELLE TALLAS, h/w | : |
| | : |
| **Plaintiffs** | : |
| | : |
| | : |
| v. | : |
| | : |
| PBT BUSINESS TRUST d/b/a THE PITTSBURGH PENGUINS, THE WILKES-BARRE/SCRANTON PENGUINS, JOSEPH KOLESSAR, M.D., PETER S. KIM, Ph.D., LOUIS M. SHERWOOD, M.D., DAVID W. ANSTICE, and EDWARD M. SCOLNICK, M.D. | : |
| | : |
| **Defendants** | : |

In accordance with Paragraph C(3) of the Court's June 9, 2005 Case Management Order, Plaintiffs' claims against defendants, David Kolessar, M.D., Scranton/Wilkes Barre Penguins, PBT Business Trust, d/b/a Pittsburgh Penguins, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D. are set forth below:

I. **OTHER DEFENDANTS**

10.    Defendant, PBT Business Trust, d/b/a The Pittsburgh Penguins, Inc. (the "Pittsburgh Penguins") is a National Hockey League franchise organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at Civic Arena, Gate 7, Auditorium Place, Pittsburgh,

5

Pennsylvania 15219.[2]

11.    Defendant, Scranton/Wilkes Barre Penguins (the "Wilkes Barre Penguins") is an American Hockey League franchise organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 415 Arena Hub Plaza, Wilkes Barre, PA 18702.  The Wilkes-Barre Penguins are a minor league farm team for the Pittsburgh Penguins.  Upon information and belief, the Wilkes-Barre Penguins are a subsidiary of and owned or controlled by the Pittsburgh Penguins.[3]

12.    Defendant, David J. Kolessar, M.D., is an orthopedic physician with a principal place of business located at 1000 East Mountain Road, Wilkes Barre, Pennsylvania, 18711.  At all relevant times, Dr. Kolessar was the team physician for the Wilkes-Barre Penguins and/or provided medical services to the team.

13.    Defendant Peter S. Kim, Ph.D. (hereinafter "Dr. Kim") is a citizen of Pennsylvania, residing therein at 119 Henning Drive, North Wales, Montgomery County, Pennsylvania 19446.  Dr. Kim was Executive Vice President of Research and Development of Merck Research Laboratories from 2001 to 2002 and is currently President of Merck Research Laboratories and a member of Defendant Merck's Management Committee.

14.    Defendant, Louis M. Sherwood, M.D., (hereinafter "Dr. Sherwood"), is

_____

[2] Paragraph numbering continues from the preceding Short Form Complaint.

[3] The Wilkes-Barre Penguins and Pittsburgh Penguins may collectively be referred to as the "Penguins Organization."

a citizen of Pennsylvania, residing at 1241 Forest Hill Drive, Lower Gwynedd, Pennsylvania.  Dr. Sherwood is the former Senior Vice President, Medical and Scientific Affairs in the U.S. Human Health Division of Defendant Merck, a position he held for ten years.

15.    Defendant, David W. Anstice (hereinafter "Mr. Anstice") is a citizen of Pennsylvania, residing at 5280 Militia Hill Road, Plymouth Meeting, Pennsylvania. Mr. Anstice is President of Merck's Human Health Division and has been employed with the company since 1974.  From 1997 to 2002, Mr. Anstice was President of the Human Health Division of Defendant Merck.  Mr. Anstice is based at the North Wales, Pennsylvania location of Defendant, Merck and is a member of the Management Committee of Defendant Merck.

16.    Defendant Edward M. Scolnick, M.D. (hereinafter "Dr. Scolnick") is currently a citizen of Massachusetts, residing at 1201 Magnolia Drive, Wayland, Middlesex County, MA 01778.  Prior to August 2003, however, Dr. Scolnick resided at 811 Wickfield Road, Wynnewood, Montgomery County, PA 19096. Dr. Scolnick was the senior most scientist at Merck from the early 1990's to the date of his retirement in 2003.   Dr. Scolnick was President of Merck Research Laboratories and was a member of Merck's Board of Directors.  He was a director, officer and shareholder of Merck.

II.    **FACTS**

A.    **Defendants' Unlawful and Negligent Provision of Vioxx to Plaintiff**

17.    During the 2001/2002 and 2002/2003 hockey seasons, Plaintiff

7

played goalie in the Penguins Organization.

18.    At all relevant times, Defendant Kolessar was the team physician for the Wilkes-Barre Penguins and/or provided medical services to the team's players for compensation, and was Plaintiff's orthopedic physician.

19.    At all relevant times, Defendant Kolessar prescribed Vioxx to Plaintiff and other Penguins players for typical pain symptoms that professional athletes have after games and during a long season.

20.    At all relevant times, Defendant Kolessar provided Vioxx to Plaintiff without a prescription.

21.    Said Vioxx was typically distributed by either Defendant Kolessar or members of the Penguins medical and/or training staff.

22.    At all relevant times, Penguins' training staff distributed Vioxx to Plaintiff and other members of the Wilkes-Barre Penguins hockey team, and they did so despite the fact that they did not have a medical or pharmacist's license, in violation of Pennsylvania law.

23.    At all relevant times, Defendant Penguins Organization allowed and encouraged their employees to distribute Vioxx to Plaintiff and other members of Defendant, Wilkes-Barre Penguins, without prescriptions.

24.    At all relevant times, with knowledge that he was not licensed or qualified to do so, Defendant Penguins Organization allowed and encouraged their team trainer and his staff to distribute Vioxx to Plaintiff and other members of the team.

8

25.   At all relevant times, Defendant Penguins Organization allowed and encouraged their staff to distribute sample packets of Vioxx to Plaintiff and other members of the team without prescriptions.

**B.    The Aggressive Marketing of Vioxx to Defendants the Penguins Organization**

26.   At all times relevant hereto, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, Vioxx in the Commonwealth of Pennsylvania and Philadelphia County.

27.   At all times relevant hereto, Defendant Merck conducted business in the Commonwealth of Pennsylvania and maintains a research laboratory therein at 770 Sumneytown Pike, West Point, Pennsylvania.

28.   At all times relevant hereto, Defendant Merck regularly conducted business in Philadelphia County, Pennsylvania.

29.   At all relevant times, Defendant Merck aggressively marketed Vioxx to Defendant Kolessar by providing him with sample packets of the drug, which were intended to be provided to patients to increase the use and sale of Vioxx.

30.   At all relevant times, Defendant Merck aggressively marketed Vioxx to the Defendant Penguins Organization by providing them sample packets of the drug, which were intended to be provided to team members.

**C.    Defendants' Failure to Properly Design, Sell, Manufacture and Market Vioxx**

9

31.     At all times relevant hereto, Defendant, Dr. Kim was in charge of the scientific development, testing, and development and promulgation of product safety warnings for Vioxx.  At all times pertinent hereto, Dr. Kim was a primary decision maker in regard to Vioxx.  In his positions as Executive Vice President of Research and Development and then as President of Merck Research Laboratories, Dr. Kim was responsible to protect the safety of consumers, including the Plaintiff, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

32.     Dr. Kim knew, or in the reasonable exercise of care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiff herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Dr. Kim failed to provide adequate warnings regarding such risks.

33.     Dr. Kim knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiff, while providing false assurances of safety, which were provided not only to physicians, but directly to consumers.

34.     Dr. Kim failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiff, were subject to an increased risk of harm of, including, but not limited to, myocardial infarction and stroke.  Dr. Kim had undertaken the responsibility of ensuring and promoting drug safety for consumers of Vioxx, including Plaintiff herein.  Plaintiff has been injured as a proximate cause

10

of Dr. Kim's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

35.    While employed by Merck, Dr. Sherwood was responsible for all Medical Services, Academic and Professional Affairs, Clinical Development, and Outcomes Research. Dr. Sherwood also supervised regional Medical Directors across the United States. At Merck, Dr. Sherwood reviewed and supervised clinical trials regarding Vioxx and monitored clinical trials and scientific information regarding Vioxx and competitors of Vioxx. Dr. Sherwood regularly reviewed medical literature pertaining to Vioxx and other COX-2 inhibitors.

36.    In his position as Senior Vice President, Medical and Scientific Affairs in the U.S. Human Health Division of Defendant Merck, Dr. Sherwood was principally responsible to protect the safety of consumers, including Plaintiff herein, by reviewing the clinical trials and the medical literature and then using this information to provide adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

37.    Dr. Sherwood knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiff, to the risk of injuries including, but not limited to, myocardial infarction, yet Dr. Sherwood failed to provide adequate warnings regarding such risks.

38.    Dr. Sherwood knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiff, while providing false assurances of safety which

11

were provided not only to physicians but directly to consumers.

39.     Dr. Sherwood failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiff, were subjected to an increased risk of harm of, including, but not limited to, myocardial infarction.

40.     Plaintiff has been injured as a proximate result of Dr. Sherwood's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

41.     In his position as Senior Vice President, Medical and Scientific Affairs in the U.S. Human Health Division of Defendant Merck, Dr. Sherwood was responsible for ensuring consumer safety, including Plaintiff herein, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction.

42.     Dr. Sherwood knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiff, to the risk of injuries including, but not limited to, myocardial infarction, yet Dr. Sherwood failed to provide adequate warnings regarding such risks.

43.     As a member of the Management Committee, Mr. Anstice assists Merck's Chairman, President and Chief Executive Officer in managing business operations and in formulating growth strategies and corporate policies. Mr. Anstice is and was directly responsible for introducing new drugs to the market, including Vioxx.

44.     Mr. Anstice, at all relevant times hereto, was responsible for

12

Defendant Merck's Human Health business in the United States and elsewhere. From 1997 to 2002, he was responsible for Defendant Merck's prescription drug business and the marketing of Merck's pharmaceutical products in the United States. Mr. Anstice is and was responsible to protect the safety of consumers, including Plaintiff, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction.

45.    Mr. Anstice knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiff, to the risk of injuries including, but not limited to, myocardial infarction, yet Mr. Anstice failed to provide adequate warnings regarding such risks.

46.    Mr. Anstice knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiff, while providing false assurances of safety, which were provided not only to physicians but directly to consumers.

47.    Mr. Anstice failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiff, were subjected to an increased risk of harm of, including but not limited to, myocardial infarction. Mr. Anstice had undertaken the responsibility of ensuring the safety of Vioxx. Plaintiff has been injured as a proximate result of Mr. Anstice's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

48.    Mr. Anstice was responsible to protect the safety of consumers, including Plaintiff, by providing adequate warnings of the risks of Vioxx, including,

13

but not limited to, myocardial infarction.

49.   Mr. Anstice knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiff, to the risk of injuries including, but not limited to, myocardial infarction, yet Mr. Anstice failed to provide adequate warnings regarding such risks.

50.   At all times relevant hereto, and while he was living in Pennsylvania, Dr. Scolnick was in charge of the scientific development and  testing of Vioxx, as well as the development and promulgation of product safety warnings for Vioxx. At all times pertinent hereto, Dr. Scolnick was a primary decision maker in regard to Vioxx.  In his position as President of Merck Research Laboratories during the time that Vioxx progressed from the pre-approval process through the time of post-marketing trials, including VIGOR, Dr. Scolnick was responsible to protect the safety of consumers, including the Plaintiff, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction.

51.   Dr. Scolnick knew, or in the reasonable exercise of care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiff, to the risk of injuries including, but not limited to, myocardial infarction, yet Dr. Scolnick failed to provide adequate warnings regarding such risks.

52.   Dr. Scolnick knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiff, while providing false assurances of safety, which were provided not only to physicians, but directly to consumers.

14

53.   Dr. Scolnick failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiff, were subject to an increased risk of harm of, including, but not limited to, myocardial infarction.  Dr. Scolnick had undertaken the responsibility of ensuring and promoting drug safety for consumers of Vioxx, including Plaintiff.  Plaintiff has been injured as a proximate cause of Dr. Scolnick's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

**D.**   **The History of Vioxx and Its Known Dangerous Effects**

54.   Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

55.   Vioxx is a COX-2 inhibitor.  COX-2 is an enzyme which is produced at points of inflammation and pain.  Inhibiting COX-2 relieves inflammation and pain, however it also causes an imbalance between Prostacyclin (which has the effect of keeping the blood thin and the blood vessels wide) and Thromboxane (which has the effect of constricting blood vessels and causing platelets to aggregate.)  Thromboxane is unopposed when Prostacyclin is inhibited, thus increasing the risk of blood clots.

56.   In pre-marketing clinical trials, prior to the submission of the Application to Market a New Drug for Human Use (hereinafter "NDA"), Defendants

15

realized the potential for Vioxx to favor platelet aggregation and thus increase the risk of cardiovascular events including, but not limited to, myocardial infarction, stroke and transient ischemic attack.

57.     Defendants submitted an NDA for rofecoxib to the United States Food and Drug Administration (hereinafter "FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

58.     Defendants also submitted an NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

59.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

60.     Defendants submitted a Supplemental New Drug Application, NDA-007, with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with this NDA, Merck performed a study entitled the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With

16

Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was conducted from January 6, 1999 through March 17, 2000.

61.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking Naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

62.    The results of the VIGOR Study showed an increased risk of, including, but not limited to, myocardial infarction in patients taking Vioxx as compared to those patients taking Naproxen.  Following VIGOR, the Merck made certain representations regarding the safety of Vioxx.

63.    On September 17, 2001, Thomas W. Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

64.    The Warning Letter stated that Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus, misrepresents the safety profile for Vioxx." The letter further stated:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIS) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (Naproxen).

65.    On April 11, 2002, the FDA approved a supplemental application for

17

the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The revised labeling contained information concerning the results of the VIGOR Study, however, the risk of myocardial infarction was not listed in the warnings section of the label. Instead, this information was buried in the clinical study information, with the provision that the clinical significance of the increased cardiovascular events was unknown.

66.    Both the initial labeling and the revised labeling were ineffective because they did not properly advise physicians and patients of the potential cardiovascular side effects of Vioxx.

67.    Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that Vioxx could cause serious cardiovascular side effects, including, but not limited to, myocardial infarction, Merck concealed and/or downplayed the dangers associated with Vioxx, and continued to market the drug in the United States and abroad.

68.    Merck engaged in a $500 million direct-to-consumer advertising campaign that featured numerous celebrities and touted the perceived benefits of Vioxx without adequately warning consumers of the serious cardiovascular risks.

69.    The 2001 Merck Annual Report stated:

The Company also noted that a number of federal and state lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx. . . . The

18

lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are completely without merit and will vigorously defend them.

70.    In its January 23, 2001 8-K filing with the Securities and Exchange

Commission, there was no mention of the cardiac and cardiothrombotic findings of

the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX and SINGULAIR, drove Merck's performance for the year and created a powerful platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.

> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. VIOXX, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, VIOXX has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck's second largest-selling medicine. In the United States, VIOXX now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. VIOXX achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.

> A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which VIOXX reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that VIOXX significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

71.    In 2001, Dr. Eric J. Topol published a report in the Journal of the

American Medical Association which analyzed data from several clinical trials

19

involving Vioxx and Celebrex.  Dr. Topol found that the danger of heart attacks and strokes was increased in patients taking Vioxx.

72.    In 2002, Dr. Wayne Ray conducted a study of patients taking high doses of Vioxx and found that those patients had significantly more, including, but not limited to, myocardial infarctions and strokes.

73.    In August 2004, Dr. David Graham, an FDA researcher conducted an epidemiological study based on 1.4 million patients in the Kaiser Permanente Health Care System and found a heightened cardiovascular risk among Vioxx users.

74.    Despite the foregoing, the Merck continued to represent to consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug.  Merck downplayed any potential cardiovascular and gastrointestinal side effects of Vioxx, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

75.    On September 30, 2004, Merck announced the voluntary withdrawal of VIOXX after a three-year study of 2,600 patients which showed that those who took Vioxx were more likely to suffer heart attacks and strokes than others who took a placebo.   Although Merck has asserted that these findings were based upon "new data," it is obvious that Merck ignored the pre-existing data showing increased risk of heart attacks and strokes with VIOXX and misrepresented the safety of the drug to physicians and to consumers.

76.    Consumers, including Plaintiff, detrimentally relied on the Merck

20

Defendants' misrepresentations and material omissions, thus subjecting Plaintiff to

the unreasonable risk of myocardial infarction.

    **E.**    **Plaintiff's Use of Vioxx Provided to Him by Defendants, Kolessar and**

           **the Penguins Organization**

77.    Plaintiff, Robbie Tallas, was a 31 year old professional hockey goalie.

78.    Plaintiff had played hockey professionally since 1994.

79.    From 1995 through 2002, Plaintiff played goalie for the following

National Hockey League and American Hockey League teams:

| | |
|---|---|
| 1996-2000 | Boston Bruins/Providence Bruins |
| 2000-2001 | Chicago Blackhawks |
| 2001-2003 | Pittsburgh Penguins/Wilkes-Barre/Scranton Penguins |

80.    At the height of Plaintiff's career, he earned nearly seven hundred

thousand dollars a year.

81.    Beginning in the 2001-2002 hockey season, Defendant Kolessar

prescribed Plaintiff Vioxx for shoulder pain.

82.    Defendants Penguin Organization and Kolessar directed Plaintiff to take

Vioxx every day, and in addition to daily dosage, to take Vioxx after each game.

83.    At the end of the 2001-2002 season, Plaintiff was told by Defendant

Penguins Organization to stock up on all samples of Vioxx given to him, for use

during his summer workouts, when Defendant Kolessar and the Penguins

Organization were not readily accessible to give him Vioxx during the season.

84.    During the 2002-2003 hockey season, Defendant Kolessar,

through Defendant, Penguins Organization, provided Plaintiff with Vioxx for

21

shoulder pain.

85.    During the 2002-2003 season, Defendants Penguins Organization and Kolessar directed Plaintiff to take Vioxx every day, and after each game.

86.    At the end of the 2002-2003 season, Plaintiff was told by Defendant Penguins Organization to stock up on all samples of Vioxx given to him, for use during his summer workouts, when Defendants Kolessar and the Penguins Organization were not readily accessible to give him Vioxx as they were during the season.

87.    In April 2003, Plaintiff received a prescription for Vioxx sufficient to last him through the following 2003/2004 hockey season, during which he was to play hockey in Europe.

88.    In addition to the prescription, Defendants provided Plaintiff with a a substantial number of sample packets of Vioxx.

89.    In July of 2003, Plaintiff signed with the HPK Hammennlinna hockey team of the Elite Finnish League to play goalie for the 2003/2004 season.

90.    During that season, Plaintiff led the leagues in nearly every statistical category for goalies and was considered one of, if not the, premier goalie in the Finnish Elite League.

91.    As a result of his stellar performance in the Finnish Elite League, Plaintiff was in a prime position to negotiate a contract to return to a National Hockey League team in the United States or Canada.

92.    Plaintiff continued to take Vioxx daily, as recommended by all

22

Defendants, including one tablet after each game or before bed every evening, through the Fall and early Winter of 2003 - until December 31, 2003.

93.    During the Fall and early Winter of 2003, Plaintiff experienced chest pain.

94.    Plaintiff sought medical attention for the chest pain he experienced, including cardiac tests, which showed no heart disease or presence of any other cardiac maladies or conditions.

95.    Prior to experiencing chest pain during the Fall of 2003, Plaintiff had been in excellent cardiac health, passing numerous physical examinations required to play hockey through his pre-professional and professional hockey career dating back over a decade.

96.    Plaintiff continued to take Vioxx numerous times daily through the Fall and into the Winter of 2003, continuously through the time period during which he experienced chest pain.

97.    On December 31, 2003, following a hockey game in Finland, Plaintiff collapsed, suffering a major heart attack.

98.    Testing performed on Plaintiff after his heart attack showed no signs of heart disease, high blood pressure or other cardiac maladies.

99.    Testing performed on Plaintiff after his heart attack showed that it was likely caused by a coronary artery spasm - a side effect of Vioxx.  True and correct copies of the translated medical chart of Plaintiff's Finnish physicians are attached as Exhibit "B."

23

100. At the time he suffered the heart attack, Plaintiff was continuously taking one medication - Vioxx - which he had been taking for over two years at the recommendation of these Defendants.

101. As a result of his heart attack and his compromised health following his heart attack, Plaintiff was unable to continue playing for HPK Hämmennlinna.

102. As a result of his heart attack and his compromised health following his heart attack, Plaintiff was unable to pass physical examinations required to play with any professional hockey teams in the United States or Canada.

103. As a result of his heart attack and his compromised health following his heart attack, despite requesting to try out for numerous professional hockey teams in the United States and Canada, Plaintiff was only invited to try out by one - the Fresno Falcons of the American Hockey League.

104. As a result of his heart attack and his compromised health following his heart attack, Plaintiff failed his physical examination with the Falcons and the team physician refused to clear Plaintiff to play hockey for the team.

105. As a result of his heart attack and his compromised health following his heart attack, Plaintiff has been unable to sign with any professional hockey teams in the United States or Canada.

106. As a result of his heart attack and his compromised health following his heart attack, Plaintiff was forced to sign with the Salzburg hockey team of the Austrian Elite League - the only team which would clear him to play - the lowest level of professional hockey Plaintiff has played in his career.

24

107.  Due to personal fears concerning his heart health - particularly fear of suffering another heart attack - during his time with Salzburg, Plaintiff was unable to play at his full ability and, consequently, suffered the worst statistical season of his career.

108.  As a result of his heart attack and his compromised health following his heart attack, as well as his dismal statistical performance during his season with Salzburg, Plaintiff is no longer playing professional hockey.

109.  As a result of his heart attack and his compromised health following his heart attack, Plaintiff will never play professional hockey again - the only profession he knows - resulting in the loss of his career and millions of dollars in earnings.

III.  **CAUSES OF ACTION AGAINST OTHER DEFENDANTS**

**COUNT I - NEGLIGENCE**

**Robbie Tallas v. David Kolessar, M.D., Scranton/Wilkes Barre Penguins and
Pittsburgh Penguins**

110.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

111.  Defendants negligently provided Plaintiff with Vioxx and encouraged Plaintiff to consume it, often times without a prescription and without any customary medical examinations or evaluations.

112.  Defendant Penguins Organization negligently provided Vioxx to Plaintiff, despite the fact that they did not have a medical or pharmaceutical license

25

to do so.

113. Defendants negligently provided to Plaintiff sample packets of Vioxx without a prescription.

114. Defendants negligently provided off-season prescriptions of Vioxx to Plaintiff by giving him amounts to last him through the off-season without follow up care and/or evaluation by a physician.

115. Defendants negligently advised Plaintiff to consume, and told Plaintiff it was safe to consume, Vioxx, despite information to the contrary.

116. All of Defendants' actions were taken wantonly, willfully and intentionally, to benefit them monetarily, while, to his physical detriment, encouraging Plaintiff to take a medication they knew to be potentially dangerous.

117. Despite the fact that Defendants knew, or reasonably should have known, that consumption of Vioxx could cause unreasonable and dangerous side effects, Defendants continued to provide Plaintiff with - and encourage Plaintiff to take, and told Plaintiff it was safe to take - Vioxx, without warning Plaintiff of these side effects, when safer, alternative pharmaceutical agents for the treatment of Plaintiff's pain symptoms were available.

118. Defendants knew, or reasonably should have known, that a person consuming the Vioxx they advocated Plaintiff take, would foreseeably suffer injury.

119. As a direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff suffered a heart attack. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has been prevented from

26

pursuing his normal activities and career, has experienced severe pain and suffering and mental anguish, and has been deprived of his ordinary pursuits and enjoyments of life.

120.  The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, David Kolessar, M.D., Scranton/Wilkes Barre Penguins and Pittsburgh Penguins in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

## COUNT II - NEGLIGENCE

**Robbie Tallas vs. Peter S. Kim, Ph.D., David Anstice,
Louis Sherwood, M.D. and Edward Scolnick, M.D.**

121.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

122.  Despite the numerous studies and clinical trials showing an increased risk of cardiovascular side effects, Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., continued to represent to consumers that Vioxx was safe and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug.  Defendants also downplayed potential cardiovascular side effects of the drug, promoting it as safer

27

and more efficacious than other medications approved for treatment of similar conditions.

123.   Defendants knew, or in the exercise of reasonable care, should have known, that the aforesaid product was of such a nature that if not properly manufactured, labeled, tested, and inspected before sold, the product was likely to cause injury to the product's user.

124.   Defendants were negligent in the design, manufacture, testing, promotion, advertising, warning, labeling, marketing, distributing and sale of Vioxx in that they:

a)   Failed to use due care in the design, testing and manufacturing of Vioxx so as to prevent the aforementioned risks, including, but not limited to, myocardial infarction, to individuals when Vioxx was used as a medication for arthritis and other pain;

b)   Failed to issue proper warnings regarding all possible adverse side effects associated with the use of Vioxx and the comparative severity and duration of such adverse effects, despite the fact the Defendants knew, or should have known that numerous case reports, adverse event reports, and other data that associated Vioxx with, including, but not limited to, myocardial infarction;

c)   Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Vioxx;

d)   Failed to provide adequate training and information to medical care providers for the appropriate use of Vioxx;

e)   Failed to warn Plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Vioxx, either directly, or indirectly, orally, in writing, or other media about the following:

(1)   The adverse side effects associated with the use of Vioxx, including, but not limited to, myocardial infarction;

28

(2)     The possibility of becoming disabled as a result of using Vioxx;

f)     Failed to timely develop and implement a safer, alternative design of Vioxx, which would meet the same need without the known risks associated with Vioxx and which would not have made the product too expensive to maintain its utility.

125.   Despite the fact that Defendants knew, or reasonably should have known, that Vioxx caused unreasonable and dangerous side effects, including, but not limited to, myocardial infarction, which many users would be unable to remedy by any means, Defendants negligently, wantonly, wilfully and intentionally continued to promote and market Vioxx to consumers, including Plaintiff, without warning Plaintiff of these side effects, when safer, alternative pharmaceutical agents for the treatment of arthritis and muscular pain symptoms were available.

126.   Defendants knew, or reasonably should have known, that consumers such as the Plaintiff would foreseeably suffer injury as a result of the Merck's failure to exercise ordinary care as set forth above.

127.   As a direct and proximate result of the acts and omissions of Defendants, Plaintiff suffered a heart attack. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has been prevented from pursuing his normal activities and career, has experienced severe pain and suffering and mental anguish, and has been deprived of his ordinary pursuits and enjoyments of life.

128.   The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety

29

of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

## COUNT III - NEGLIGENCE (MEDICAL MALPRACTICE)

### Robbie Tallas v. David Kolessar, M.D.

129.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

130.   The injuries to Plaintiff - specifically, his heart attack - and damages set forth herein, were caused by and were the direct and proximate result of the acts and omissions of Defendant Kolessar and constituted carelessness, negligence and professional malpractice by Defendant Kolessar, his agents, servants and employees in any or all of the following respects:

a)     in failing to advise Plaintiff of the health risk of continuous consumption of the Vioxx provided to him by Defendant;

b)     in advising Plaintiff to consume Vioxx;

c)     in advising Plaintiff that consumption of Vioxx provided to him by Defendants was safe;

d)     in providing Plaintiff directly and through Defendant Penguins Organization with non-prescribed sample packets of Vioxx;

e)     in failing and neglecting to take proper and sufficient precautions to leave Plaintiff at all times in the care of

30

competent, skilled, and qualified nurses, doctors and attendants;

f)   in failing to order the proper medication which Plaintiffs'
     condition required;

g)   in failing and omitting to take proper precautions and to use
     proper medications and/or alternative medications to avoid the
     injuries sustained by Plaintiff;

h)   in providing Vioxx to individuals without medical licenses or
     medical training for the purpose of distributing the painkiller to
     Plaintiff and other members of the Wilkes-Barre Penguins
     hockey team;

i)   in prescribing Vioxx to Plaintiff without evaluating Plaintiff;

j)   in prescribing Vioxx to Plaintiff without providing proper and
     necessary follow-up care and evaluation; and

k)   in providing Plaintiff with Vioxx without a prescription.

131.  The acts as aforementioned by Defendant Kolessar are deviations in

accepted standards of care and, as such, constitute negligent, careless and

professional malpractice by said Defendant, his agents, servants, and employees,

resulting in severe and permanent injury and damages to Plaintiff as set forth

herein.

132.  As a result of the negligence, carelessness, recklessness and

professional negligence of Defendant Kolessar, Plaintiff has sustained the following

injuries and damages:

a)   a heart attack with permanent heart damage;

b)   loss of the ability to play hockey - his career;

c)   pain, suffering, and mental anguish, both past and future;

31

d)    past and future lost wages;

e)    impairment of Plaintiffs' general health, strength and vitality;

f)    emotional upset and distress; and

g)    loss of the enjoyment of life.

133.  The aforementioned acts and omissions of Defendant Kolessar were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant, David Kolessar, M.D., in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

## COUNT IV - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**Robbie Tallas vs. Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.**

134.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

135.  Defendants manufactured, sold, distributed, marketed, and/or promoted Vioxx that was consumed by Plaintiff.

136.  The Vioxx consumed by the Plaintiff was expected to, and did reach her/him without a substantial change in condition.

137.  Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., in manufacturing, selling, distributing, supplying,

32

marketing and/or promoting Vioxx, impliedly warranted that Vioxx was not unreasonably dangerous, and instead warranted that it was of merchantable quality, reasonably fit and safe for its intended, reasonably foreseeable use as a medication for arthritis and muscular pain.

138. Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., breached these warranties in that Vioxx was not of merchantable quality, was not fit for its intended and reasonably foreseeable use, and was unreasonably dangerous in light of the risk of side effects associated with its use, including, but not limited to, myocardial infarction, and in light of other risks of serious injuries and adverse side effects to foreseeable users.

139. Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., also failed to provide adequate warnings for Vioxx, rendering it unreasonably dangerous and unfit for the intended and/or reasonably foreseeable purposes of use, in breach of this warranty.

140.  Plaintiff justifiably and detrimentally relied upon the warranties and representations of Defendants in the purchase and use of Vioxx.

141.  Vioxx, as purchased and consumed by Plaintiff, was formulated, manufactured, marketed, packaged, labeled by the Defendants with implied warranties of merchantability and of fitness for its intended purpose, without risk of permanent damage to the purchaser's and/or consumer's body and health.  Merck was a seller of, and merchant of Vioxx.

142.  Plaintiff relied upon the Defendants' implied warranties and upon the

33

Defendants' skill and judgment, in purchasing and consuming Vioxx.

143.  Defendants breached these implied warranties to Plaintiff in violation of relevant provisions of the applicable Uniform Commercial Code (a) by manufacturing, marketing, packaging, labeling, and selling products to Plaintiff, with the risk of injuries, including without limitation, strokes and cardiovascular injury, without warning or disclosure thereof by package and label of such risk to Plaintiff or his physicians or pharmacists, and/or without so modifying or excluding such implied warranties; (b) by manufacturing, marketing, packaging, labeling and selling to Plaintiff the product Vioxx, which failed to control Plaintiff' arthritis and pain and/or suppress Plaintiff's pain in a safe manner and without injuries, including myocardial infarction, and (c) by manufacturing, marketing, packaging, labeling, and selling to Plaintiff, Vioxx, which caused Plaintiff serious physical injury and pain and suffering attendant economic loss.

144.  As a proximate result of the Defendants' breach of implied warranties, Plaintiff has incurred and will continue to incur: serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical and hospital expenses and other expenses related to the diagnosis and treatment thereof, for which the Defendants are liable.

145.  As a direct and proximate result of the acts and omissions of the Defendants,  Plaintiff consumed Vioxx and suffered serious and permanent injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has been prevented from pursuing his normal activities and employment,

has experienced severe pain and suffering and mental anguish, and has been deprived of his ordinary pursuits and enjoyments of life.

146.  The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

## COUNT V - BREACH OF EXPRESS WARRANTY

### Robbie Tallas vs. Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.

147.  Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges as follows:

148.  Defendants manufactured, sold, distributed, marketed, and/or promoted Vioxx, which was used by Plaintiff, and this drug was expected to, and did reach Plaintiff without a substantial change in condition.

149.  Defendants, Peter S. Kim, Ph.D., David Anstice, Louise Sherwood, M.D. and Edward Scolnick, M.D., in manufacturing, selling, distributing, supplying, marketing and/or promoting the drug Vioxx, expressly warranted that the drug was safe and effective as a medication for arthritis and muscular pain.

35

150.  Defendants, Peter S. Kim, Ph.D., David Anstice, Louise Sherwood, M.D. and Edward Scolnick, M.D., breached this warranty in that Vioxx was not safe and effective for its intended, reasonably foreseeable use as a medication for arthritis and muscular pain because of the risk of serious cardiovascular side effects associated with its use and in light of other risks of serious injuries to foreseeable users.

151.  Defendants failed to provide adequate warnings for Vioxx, rendering it unreasonably dangerous and unfit for the intended, reasonably foreseeable purposes for which it is used, in breach of warranty.

152.  Plaintiff, justifiably and detrimentally, relied upon the warranties and representations of Defendants in the purchase and use of the product.

153.  As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered serious and permanent injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has been prevented from pursuing his normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of his ordinary pursuits and enjoyments of life.

154.  Defendants, through a direct-to-consumer advertising campaign, affirmation of fact and promises relating to their products to the FDA, prescribing physicians, and the general public, including the Plaintiff, expressly warranted that their product, Vioxx, was effective and safe for its intended use.

155.  These warranties came in the form of: (a) publicly-made written and

36

verbal assurances of safety and efficacy by Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D., including, but not limited to statements of clinical data that purported to report the incidence of adverse events experienced for the product Vioxx, but which in fact grossly understated such incidence; and (b) advertisements the sole purpose of which was to create demand for Vioxx, but which failed to warn of the risks inherent in consumption of the Vioxx or the indications thereof.

156. At the time of the making of these express warranties, Defendants had knowledge or had reason to know or in the exercise of reasonable care would have known of the purpose for which Vioxx was to be used and warranted same to be in all respects safe, effective and proper for such purpose.

157. Defendants, Peter S. Kim, Ph.D., David Anstice, Louise Sherwood, M.D. and Edward Scolnick, M.D., themselves drafted the documents and/or made the statements upon which these express warranty claims are based, in so doing, defined the terms of those warranties.

158. Vioxx did not conform to these express representations in that it was neither safe nor effective as a pain reliever, and it produced serious side effects, including, but not limited to, life threatening injuries such as myocardial infarction.

159. As such, Defendants' pain reliever product, Vioxx, was neither in conformity to the promises, descriptions or affirmations of fact made of this drug by Defendants nor adequately contained, packaged, labeled, or fit for the ordinary purposes for which such product was to be used.

37

160.   Defendants breached express warranties to Plaintiff in violation of the relevant provisions of the applicable Uniform Commercial Code: (a) by manufacturing, marketing, labeling, and selling a pharmaceutical product to Plaintiff in such a way that misstated the risk of injuries, including, without limitation, strokes and myocardial infarction, without warning or disclosing such risk to Plaintiff or his physician or pharmacist, and/or without so modifying or excluding such erroneous express warranties; (b) by manufacturing, marketing, packaging, labeling, and selling to Plaintiff Vioxx, and failing to provide a safe pain reliever that did not cause injuries, including, without limitation, strokes and myocardial infarction; and (c) by manufacturing, marketing, packaging, labeling, and selling to Plaintiff the product Vioxx causing Plaintiff serious physical injury and pain and suffering.

161.   As a proximate result of Defendants' breach of express warranties, Plaintiff has incurred and will continue to incur: serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital, surgical expenses and other expenses related to diagnosis and treatment thereof, for which the Defendants are liable.

162.   The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages,

38

punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

## COUNT VI - FRAUD AND MISREPRESENTATION

### Robbie Tallas vs. Merck & Company, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D.

163.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

164.  Defendants, having undertaken the manufacturing, marketing, dispensing, distribution, and/or promotion of Vioxx, owed a duty to provide accurate and complete information regarding Vioxx.

165.  Defendants' misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Vioxx was safe for human use and did not have unacceptable side effects.

166.  Defendants misrepresented to Plaintiff and to members of the general public their knowledge about the propensities of Vioxx to cause injuries such as those sustained by the Plaintiff.

167.  Defendants concealed, failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Vioxx.

168.  Defendants falsely and deceptively kept relevant information from Vioxx users and minimized concerns regarding the safety of Vioxx to induce Plaintiff and the general public to purchase and use Vioxx.

169.  In justifiable and detrimental reliance on the truth of Defendants'

representations about the safety of Vioxx, Plaintiff purchased the product and used the product in the manner and for the purpose intended as represented and instructed by Defendants.

170.   The representations, misrepresentations, acts and omissions made by Defendants deprived the Plaintiff and his physicians and other foreseeable users of Vioxx of the opportunity of free or knowing choice as to whether or not to expose themselves to the aforementioned dangers of consuming Vioxx.

171.   As a direct and proximate result of Plaintiff's lack of awareness of the dangers of Vioxx, caused by the fraudulent acts and omissions of Defendants, Plaintiff consumed Vioxx and suffered serious and permanent injuries, including but not limited to, myocardial infarction.  As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has been prevented from pursuing his normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of his ordinary pursuits and enjoyments of life.

172.   The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

## COUNT VII - VIOLATION OF CONSUMER PROTECTION LAWS

### Robbie Tallas vs. Peter S. Kim, Ph.D., David Anstice,
### Louis Sherwood, M.D., and Edward Scolnick, M.D.

173.  Plaintiff incorporates by reference all other paragraphs in this Complaint as if fully set forth herein and further alleges as follows.

174.  Plaintiff purchased and used Vioxx primarily for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

175.  Unfair methods of competition and unfair or deceptive acts or practices are defined and declared unlawful by the consumer protection laws.

176.  Defendants' specific unfair or deceptive acts or practices that were proscribed by law, include the following, without limitation:

a.    Representing that goods or services have... characteristics, ingredients, uses, benefits or quantities that they do not have...;

b.    Advertising goods or services with intent not to sell them as advertised; and

c.    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

177.  Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety and efficacy of Vioxx.

178.  Defendants uniformly communicated the purported benefits of Vioxx while failing to disclose the serious and dangerous side effects related to the use of Vioxx and/or the true state of Vioxx's regulatory status, its safety, its efficacy

41

and/or its usefulness.

179.  Defendants' conduct in connection with their sale of Vioxx was also impermissible and illegal in that it created a likelihood of confusion or misunderstanding, because Defendants misleadingly, falsely and/or deceptively misrepresented and/or omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Vioxx.

180.  As a result of these violations of consumer protection laws, Plaintiff has incurred and will continue to incur: serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital and surgical expenses and other expenses related to the diagnosis and treatment thereof, for which Defendants are liable.

181.  The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

### COUNT VIII - LOSS OF CONSORTIUM

**Danielle Tallas v. David Kolessar, M.D., Scranton/Wilkes Barre Penguins,
Pittsburgh Penguins, Peter S. Kim, Ph.D., David Anstice,
Louis Sherwood, M.D., and Edward Scolnick, M.D.**

182.  Plaintiff incorporates by reference all other paragraphs in this

42

Complaint as if fully set forth herein and further alleges as follows.

183.   As a result of the conduct of the Defendants, as set forth above, Danielle Tallas has been deprived of the usual aid, companionship, services, society and consortium of her husband, Robbie Tallas.

184.   The aforementioned acts and omissions of Defendants were taken wantonly, wilfully, intentionally and with reckless disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, in the amount in excess of Fifty Thousand Dollars ($50,000.00), for compensatory damages, punitive damages, interest, counsel fees, costs and delay damages as allowed by law.

GOLOMB & HONIK

BY: _Richard Golomb_____

**RICHARD M. GOLOMB, ESQUIRE**
**Attorney for Plaintiffs**
Identification No. 42845
121 South Broad Street, 9th Floor
Philadelphia, PA 19107
(215) 985-9177
**Attorney for Plaintiff**

Date:

43

## V E R I F I C A T I O N

Robbie Tallas, is the plaintiff in this action and verifies that the statements made in the foregoing Complaint are true and correct to the best of his knowledge, information and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Robbie Tallas

Date: December 19, 2005

## VERIFICATION

Danielle Talias, is the plaintiff in this action and verifies that the statements
made in the foregoing Complaint are true and correct to the best of her knowledge,
information and belief. The undersigned understands that the statements therein
are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to
unsworn falsification to authorities.

*Danielle Talias*

Danielle Talias

Date: December 19, 2005

Exhibit "B"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBBIE and DANIELLE TALLAS,         :

           Plaintiffs,            :

        v.                   :

MERCK & CO., INC., PBT BUSINESS     :    CIVIL ACTION NO.
TRUST d/b/a THE PITTSBURGH PENGUINS,
INC., THE SCRANTON/WILKES-BARRE   :
PENGUINS, DAVID J. KOLESSAR, M.D.,      **Jury Trial Demanded**
PETER S. KIM, Ph.D., LOUIS M.         :
SHERWOOD, M.D., DAVID W. ANSTICE,
and EDWARD M. SCOLNICK, M.D.,      :

            Defendants.       :

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Merck & Co., Inc. ("Merck") hereby

removes this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Court of Common

Pleas, Philadelphia County, to the United States District Court for the Eastern District of

Pennsylvania and respectfully states to this Court the following:

      1.     This action involves allegations regarding the prescription drug Vioxx®.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring

148 Vioxx products liability cases to the United States District Court for the Eastern District of

Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. Merck

intends to seek the transfer of this action to that Multidistrict Litigation, *In re VIOXX Products

Liability Litigation*, MDL No. 1657, and will shortly provide the MDL Panel notice of this action

pursuant to the "tag-along" procedure contained in the MDL Rules.

2.     On or about December 22, 2005, Plaintiffs Robbie and Danielle Tallas ("Plaintiffs") commenced this civil action against Merck, PBT Business Trust, d/b/a The Pittsburgh Penguins, Inc. ("Pittsburgh Penguins"), The Scranton/Wilkes-Barre Penguins ("Scranton Penguins"), David J. Kolessar, M.D., and four of Merck's current and former corporate employees, Peter S. Kim, Ph.D., Louis M. Sherwood, M.D., David W. Anstice, and Edward M. Scolnick, M.D., by filing a Short Form Complaint in the Philadelphia County Court of Common Pleas.

3.     On or about December 30, 2005, Merck was served with a copy of Plaintiffs' Short Form Complaint.  True and correct copies of all papers served on Merck are attached hereto as Exhibit A.

4.     As more fully set out below, this Court has jurisdiction over the state court action pursuant to 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and it is between citizens of different states.

## I.   MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

5.     This Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty days of service on all properly served defendants.  Merck was served with the Short Form Complaint on or about December 30, 2005 and upon information and belief, Merck is the first properly served defendant.[1]

---

[1]     All Vioxx-related personal injury cases filed in the Philadelphia Court of Common Pleas are subject to coordination. *See* Order, dated March 31, 2005 (attached as Exhibit B).  Pursuant to Case Management Order No. 1, all Vioxx cases are deemed to have filed the Master Long Form Complaint. *See* Case Management Order No. 1 (attached as Exhibit C); Master Long Form Complaint (attached as Exhibit D). According to the docket for this case, it is listed a Mass Tort-Vioxx case, *see* Docket, *Tallas, et al. v. Merck*

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 118(a) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

7.      All of the properly joined and served defendants consent to this removal.[2]

8.      No previous application has been made for the relief requested herein.

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs, and a copy is being filed with the Prothonotary's Officer for the Philadelphia County Court of Common Pleas.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

---

& Co., Inc., et al., December Term 2005, No. 002846 (attached as Exhibit E), and, therefore, is deemed to have adopted the Master Long Form Complaint in this case. The Master Long Form Complaint does not raise allegations sufficient to determine whether the amount in controversy exceeds $75,000.

Additionally, Case Management Order No. 1 provides, "An entry of appearance shall constitute a denial of allegations in the Short Form Complaint and an assertion of all affirmative defenses." Case Management Order, No. 1, § II.C.8. *See also* Response to "Plaintiffs' General Master Long-Form Complaint and Jury Demand", *In re Vioxx Litigation*, April Term No. 736 (Phila. C.C.P.) (attached as Exhibit F). Merck has entered an appearance in this case. *See* Entry of Appearance (attached as Exhibit G). Therefore, Merck is deemed to have denied all allegations in Plaintiffs' Short Form Complaint.

[2] 28 U.S.C. § 1441(b) does not bar removal. It is well settled that co-defendants who are fraudulently joined need not join in the removal. *See Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995); *Texas E. Transmission Corp. v. Fidelity & Cas. Co. of N.Y.*, Civ. A. No. 93-15, 1995 WL 596155, *9 (E.D. Pa. Oct. 6, 1995). Upon information and belief, the Pittsburgh Penguins, the Scranton Penguins, Dr. David Kolessar, Peter Kim, and David Anstice have been served. All are fraudulently joined, *see infra* ¶¶ 18-20; therefore, they need not consent to removal. *See* 28 U.S.C. § 1441(b). Upon information and belief, Dr. Sherwood has yet to be served; however, he is also fraudulently joined, *see infra* ¶¶ 18-20, and therefore need not consent to removal.

A.    <u>The Amount In Controversy Requirement Is Satisfied.</u>

11.    It is apparent from the face of the Short Form Complaint that Plaintiffs

seek recovery of an amount in excess of $75,000, exclusive of costs and interest. "[T]he amount

in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable

reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142 (3d Cir.

1993). Plaintiffs' Short Form Complaint alleges that Plaintiff Robbie Tallas suffered a heart

attack as the result of ingesting Vioxx. (Compl. ¶ 4). Plaintiffs further seek punitive damages.

(Compl. ¶ 6). Plaintiffs' claims can reasonably be read as exceeding $75,000 in value.

12.    Moreover, federal courts around the country have ruled that federal

diversity jurisdiction exists in similar actions alleging personal injuries caused by Vioxx. *See,*

*e.g., Morgan v. Merck & Co., Inc.*, No. 3:03cv435WS (S.D. Miss. Mar. 29, 2004); *Benavidez v.*

*Merck & Co., Inc.*, No. L-03-134 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co., Inc.*,

No. 02-C-4203 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co., Inc.*, No. 02-0196 (W.D.

La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186 (D. Haw. June 5, 2002)

(collectively attached as Exhibit H). These courts were all presented with complaints seeking

actual damages for injuries allegedly caused by Vioxx and all found, either explicitly or

implicitly, that the requirements for federal diversity jurisdiction, including the amount in

controversy, were satisfied.

13.    Thus, Plaintiffs' claims satisfy the jurisdictional threshold for diversity

jurisdiction.

**B.**     **There Is Complete Diversity Of Citizenship.**

14.     There is complete diversity as between Plaintiffs, Merck, and Dr. Scolnick.

15.     According to Plaintiffs' Short Form Complaint, Plaintiffs are, and were at the time they commenced the action, residents of the state of Florida.  (Compl. ¶ 1).  Plaintiffs list no alternative state of residence.  Accordingly, upon information and belief, Florida is the state in which Plaintiffs are domiciled and, therefore, the state of which they are citizens. *See* 28 U.S.C. § 1332(a).

16.     Merck is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

17.     Regardless of the propriety of his joinder,[3] the citizenship of Edward M. Scolnick, M.D. may be ignored for the purpose of removal.  Upon information and belief, Edward M. Scolnick, M.D. is a Massachusetts resident and citizen and is completely diverse from plaintiffs for the purposes of diversity jurisdiction.  Dr. Scolnick consents to this removal. <u>See</u> Consent of Edward M. Scolnick, M.D. (attached as Exhibit I).

18.     Additionally, for the reasons set forth below, the Pittsburgh Penguins, the Scranton Penguins, Dr. David Kolessar, Peter S. Kim, Ph.D., Louis M. Sherwood, M.D., and David W. Anstice are fraudulently joined.  Therefore, their citizenship must be ignored for the

---

[3]     Merck contends that Dr. Scolnick, like the other Individual Defendants, is fraudulently joined in this case. However, this question is irrelevant to the present removal.

purpose of determining the propriety of removal. *See, e.g., Spring-Ford Area Sch. Dist. v.*

*Genesis Ins. Co.*, 158 F. Supp. 2d 476, 479 (E.D. Pa. 2001).

> **1)      Individual Defendants Peter S. Kim, Ph.D., Louis M. Sherwood, M.D., and David W. Anstice are fraudulently joined.**

19.      A defendant is fraudulently joined when either a plaintiff does not intend

to pursue a case to judgment against a defendant or there is no "reasonable basis for predicting"

that a state court might impose liability on the resident defendant. *See Batoff v. State Farm Ins.*

*Co.*, 977 F.2d 848 (3d Cir. 1992).  Courts regularly exercise jurisdiction over cases against

pharmaceutical manufacturers in which plaintiffs fraudulently join non-diverse employees,

distributors, or pharmacies, recognizing that the plaintiffs cannot state claims against such

entities and individuals. *See, e.g., In re Diet Drugs Products Liab. Litig.*, 294 F. Supp. 2d 667

(E.D. Pa. 2003) (denying remand in case brought against drug manufacturer and corporate

defendants on the ground that plaintiffs could not state a claim against employees).

20.      In this case, Plaintiffs do not intend to pursue to judgment the claims

against Individual Defendants Peter S. Kim, Ph.D., Louis M. Sherwood, M.D., and David W.

Anstice.  Also, there is no theory of law under which Plaintiffs could proceed against the

Individual Defendants for any injuries allegedly sustained from ingestion of Vioxx because none

of them were "sellers" of Vioxx, none owed any duty to Plaintiffs and none were the direct or

proximate cause of Plaintiffs' alleged injury. *See, e.g., Hahn v. Richter*, 673 A.2d 888 (Pa. 1996)

(holding strict liability not a valid cause of action under Pennsylvania law); *Lennon v. Wyeth-*

*Ayerst Labs., Inc.*, No. 1793 EDA 2000, 2001 WL 755944, *1-2 (Pa. Super. Ct. June 14, 2001)

(barring claims for breach of implied warranty of merchantability in all prescription

pharmaceutical cases); 13 Pa. C.S.A. § 2313; 73 Pa. C.S.A. § 201-2 (requiring that defendant be

a "seller" for breach of express warranty claims); *Balczon v. Machinery Wholesalers Corp.*, 993

F. Supp. 900, 903-04 (W.D. Pa 1998) (defining "seller"); and *Skurnowicz v. Lucci*, 798 A.2d

788, 793 (Pa. Super. Ct. 2002) (requiring an actual representation for a fraudulent

misrepresentation claim).

> **2)     There is no reasonable basis to predict Pennsylvania law will impose
> liability against the Pittsburgh Penguins, the Scranton Penguins and
> Dr. Kolessar.**

21.     In the context of prescription drugs, an in-state healthcare provider[4] is

fraudulently joined where, as here, conclusory allegations of failure to warn by the provider are

contradicted by the specific allegations in the Complaint that the manufacturer-defendant

concealed information from the general public, including healthcare providers. *See, e.g., Rezulin

I*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001)("*Rezulin I*") (in-state physician fraudulently joined

when minimal conclusory allegations that physician failed to warn were contradicted by specific

allegations that the pharmaceutical manufacturer concealed and/or misrepresented information);

*In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002)("*Rezulin

II*") (non-diverse physician defendant fraudulently joined where "main tenor of plaintiffs'

complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from

the public, physicians, and others."), *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:000-CV-102-

LN, slip op. at 2 (S.D. Miss. Sept 25, 2001)(pharmacy fraudulently joined where allegations of

defendant's knowledge were contradicted by specific allegations that the pharmaceutical

manufacturer concealed and/or misrepresented information); *In re Diet Drugs*, 220 F. Supp. 2d

414, 424 (E.D. Pa. 2002) (same).

---

[4]     For the purposes of analyzing fraudulent joinder in this case, there is no distinction between Dr. Kolessar
and the Pittsburgh Penguins or Scranton Penguins.

22.    Like the plaintiffs in *Rezulin I* and *II*, *Louis* and *Diet Drugs*, Plaintiffs here make only minimal and conclusory allegations that the Pittsburgh Penguins, the Scranton Penguins and Dr. Kolessar failed to warn of the health risks associated with Vioxx.  In fact, Plaintiffs merely allege that the Pittsburgh Penguins, the Scranton Penguins and Dr. Kolessar "knew, or reasonably should have known, that consumption of Vioxx could cause unreasonable and dangerous side effects, Defendants continued to provide Plaintiff with – and encourage Plaintiff to take, and told Plaintiff it was safe to take – Vioxx, without warning Plaintiff of these side effects, when safer, alternative pharmaceutical agents for the treatment of Plaintiff's pain symptoms were available." (Compl. ¶ 117).

23.    Any allegation against the Pittsburgh Penguins, the Scranton Penguins and Dr. Kolessar regarding Vioxx is contradicted by the dominant theme and thrust of the Complaint – Merck concealed and/or misrepresented information to prescribing physicians and the general public.  For instance, Plaintiffs allege that Merck "concealed and/or downplayed the dangers associated with Vioxx" (Compl. ¶ 67), that Merck's labeling "did not properly advise physicians and patients of the potential cardiovascular side effects of Vioxx" (Compl. ¶ 66), "Merck continued to represent to consumers that Vioxx was safe" (Compl. ¶ 74), and Merck "ignored the pre-existing data showing increased risk of heart attacks and strokes with Vioxx and misrepresented the safety of the drug to physicians and to consumers" (Compl. ¶ 75).  These allegations all directly contradict any argument by Plaintiffs that Dr. Kolassar, the Pittsburgh Penguins, or the Scranton Penguins were negligent with respect to Mr. Tallas.

Notably, even the Plaintiff's Steering Committee in the Vioxx MDL has recognized that joinder of physicians as defendants is generally improper in cases such as this

where the claims against Merck are "by and large incompatible with a claim that the doctor is at

fault." *See In re VIOXX MDL*, Pls. Mem. in Supp. Of Mot. to Modify Order of June 6, 2005

Regarding Physician Contacts, at 3 (Attached as Exhibit J). A number of courts have agreed.

*See Omobude v. Merck & Co.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3. 2003)

(physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and

misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the

charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about

Vioxx.") (attached as Exhibit K). None of the claims in this case are any different. For this

reason, the Pittsburgh Penguins, the Scranton Penguins and Dr. Kolessar are fraudulently joined,

and their citizenship should be ignored for purposes of determining diversity jurisdiction.[5]

       WHEREFORE, Defendant Merck respectfully removes this action from the

Philadelphia County Court of Common Pleas, bearing the case number December Term 2005,

Civil Action No. 002846, to this Court pursuant to 28 U.S.C. § 1441.

---

[5]   To the extent that Plaintiffs claims against the Pittsburgh Penguins, the Scranton Penguins, and Dr. David
Kolessar are based on something other than prescribing Vioxx, i.e., failure to diagnose, their claims against
Merck do not arise out of the same transaction or occurrence as required by Fed. R. Civ. P. 20(a) and are
fraudulently misjoined. *See In re: Rezulin Prod. Liab. Litig.*, 00 Civ. 2843, Pretrial Order No. 150, 2003
WL 21276425 at *1-2 (LAK) (S.D.N.Y. June 2, 2003) (non-diverse physician fraudulently misjoined with
claims against drug manufacturer where basis of claim against physician was failure to diagnose liver
dysfunction, while basis of claim against manufacturer went "principally to the safety and efficacy of the
drug and ha[d] little if anything to do with the malpractice claim.").

Dated: January 27, 2006

Respectfully submitted,

/s/ *Joshua G. Schiller*

Fred T. Magaziner, Esq.
Joseph K. Hetrick, Esq.
Joshua G. Schiller, Esq.
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
Phone: (215) 994-4000
Fax: (215) 994-2222

**Attorneys for Defendant
Merck & Co., Inc.**

## CERTIFICATE OF SERVICE

I, Michelle H. Kirsch, hereby certify that on January 27, 2006, I caused a true and correct copy of the foregoing Notice of Removal and Rule 7.1 Statement to be served via First Class Mail, postage pre-paid, upon the following:

> Richard M. Golomb
> Golomb & Honik
> 121 South Broad Street, 9th Floor
> Philadelphia, PA 19107
>
> **Attorneys for Plaintiffs**
>
> Jonathan Dryer
> Damian Zillas
> Wilson, Elser, Moskowitz, Edelman & Dicker LLP
> The Curtis Center, Suite 1130E
> Independence Square West
> Philadelphia, PA 19103
>
> **Attorneys for Defendants, PBT Business Trust, d/b/a The Pittsburgh Penguins, Inc. and The Scranton/Wilkes-Barre Penguins**
>
> Debra A. Weinrich
> White & Williams
> 1800 One Liberty Place
> Philadelphia, PA 19103
>
> **Attorney for Defendant, David J. Kolessar, M.D.**
>
> Mark A. Berman
> Gibbons, Del Deo, Dolan, Griffinger & Vecchione
> One Riverfront Plaza
> Newark, NJ 07102-5496
>
> **Attorney for Defendant, Louis M. Sherwood, M.D.**

William J. Winning, Jr.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

**Attorney for Defendant, David Anstice**

Barbara G. Reid
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

**Attorney for Defendant, Edward M. Scolnick, M.D.**

Michelle H. Kirsch

JUL-25-2006 TUE 10:51 AM GOLOMB HONIK          FAX NO. 205/98704169     P. 02
Case 2:05-md-01657-EEF-DEK   Document 6228   Filed 08/08/06   Page 79 of 96

7802

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBBIE TALLAS and DANIELLE TALLAS,

              Plaintiffs,

        v.

MERCK & CO., INC., PBT BUSINESS TRUST,
d/b/a THE PITTSBURGH PENGUINS, INC., THE
SCRANTON/WILKES-BARRE PENGUINS,
DAVID J. KOLESSAR, M.D., PETER S. KIM,
Ph.D., LOUIS M. SHERWOOD, M.D., DAVID W.
ANSTICE, and EDWARD M. SCOLNICK, M.D.;

              Defendants.

CIVIL ACTION NO. 06-00388

## DEFENDANT MERCK & CO., INC.'S OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND

### INTRODUCTION

This Court should stay this case pending its transfer to the MDL; the MDL court can best

resolve the remand/fraudulent joinder issue.  If this Court reaches the merits of Plaintiffs' Motion

to Remand, however, the Court should look behind Plaintiffs' conclusory pleadings to determine

whether Plaintiffs have a legitimate claim against the joined in-state or non-diverse defendants.

Here, they do not.

    Plaintiffs' claims are factually and legally inconsistent.  On the one hand, Plaintiffs have

sued Merck for failing to disclose and/or concealing the alleged cardiovascular risks of Vioxx®.

On the other hand, Plaintiffs claim that Dr. Kolessar, the Pittsburgh Penguins and the

Scranton/Wilkes-Barre Penguins (collectively, the "Penguins Organization") knew of the very

risks Merck allegedly concealed.  Plaintiffs' claims (assuming that a tenable claim even exists)

**EXHIBIT**
**2**

against Dr. Kolessar and the Penguins Organization are fraudulently joined with claims against Merck.

Additionally, in a transparent attempt to prevent Merck from exercising its right to litigate in federal court, Plaintiffs in this case have also named in-state and non-diverse current and former Merck officers, David Anstice and Peter Kim (both Pennsylvania residents), and Louis Sherwood (Florida resident) (collectively, the "Individual Defendants"). [1]

Plaintiffs do not have a legitimate claim that they actually intend to pursue against the Individual Defendants, and their joinder of the Individual Defendants is fraudulent. Because Plaintiffs' joinder of the non-diverse defendants was for the sole and improper purpose of defeating diversity jurisdiction, Plaintiffs' Motion should be denied.

## ARGUMENT

### I.    THIS COURT SHOULD DENY PLAINTIFFS' MOTION TO REMAND WITH LEAVE TO RENEW BEFORE THE MDL COURT.

This case is one of hundreds of cases pending transfer to the MDL. *See In re Vioxx Prods. Liab. Litig.* (MDL-1657). Issues of fraudulent joinder will arise in many cases in the MDL – both with claims similar to those brought by Plaintiffs, as well as other forms of joinder designed solely to defeat federal jurisdiction. Indeed, other judges of this Court have stayed

---

[1]    Mimicking pleadings of other Philadelphia area law firms, Plaintiffs have also joined Edward Scolnick. Scolnick is completely diverse from Plaintiffs and not a Pennsylvania citizen. Although the joinder of Scolnick is equally fraudulent, the Court need not consider him for the purposes of this Motion.

2

many Individual Defendant joinder cases pending transfer to the MDL.[2]  Accordingly, the MDL judge will address in other cases most of the issues in this case, thereby, making a stay all the more appropriate.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"); *Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.*, No. 02-0886, 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("[B]ecause the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings.").

  Most courts have recognized that the best way to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation pending transfer to the MDL, including the consideration of remand motions.  For this reason, courts around the country have stayed Vioxx-related cases like this in which there are pending remand

---

[2]  *See West, et al. v. Merck & Co., Inc., et al.*, Civ No. 05-227 (E.D. Pa. Feb. 15, 2005) (Newcomer, J.); *Mitchell, et al. v. Merck & Co., Inc., et al.*, Civ. No. 05-587 (E.D. Pa. Mar. 2, 2005) (O'Neill, J.); *Cronin et al. v. Merck & Co., Inc., et al.*, Civ No. 05-838 (E.D. Pa. Apr. 1, 2005) (Padova, J.); *Cochran v. Merck & Co., Inc., et al.*, Civ No. 05-1237 (E.D. Pa. Apr. 19, 2005) (Sanchez, J.); *Laney v. Merck & Co., Inc., et al.*, Civ No. 05-1615 (E.D. Pa. Apr. 26, 2005) (Kauffman, J.); *Lawrence-Wicks, et al. v. Merck & Co., Inc., et al.*, Civ No. 05-1610 (E.D. Pa. May 4, 2005) (Tucker, J.); *Slade v. Merck & Co., Inc., et al.*, Civ No. 05-1611 (E.D. Pa. May 6, 2005) (Schiller, J.) (attached collectively as Exhibit A).

motions (approximately 1,700 cases have been stayed pending transfer). In staying a Vioxx case

with a pending remand motion, Judge Newcomer wrote:

> An immediate stay will permit the most efficient possible use of
> the courts and the parties resources, and it will eliminate the danger
> that a decision on [the] remand motion might be inconsistent with
> decisions by other courts on similar questions.

Order, at 2, *West, et al v. Merck & Co., Inc., et. al.*, Civ. No. 05-227 (E.D. Pa. Feb. 15, 2005)

(Newcomer, J.) (attached as part of Exhibit A). Similarly, Judge Tucker denied a remand *sua*

*sponte* without prejudice, holding that "judicial economy and uniformity dictate that the Court

defer ruling on Plaintiffs' Motion to Remand pending a transfer decision by the Judicial Panel on

Multidistrict Litigation." Order, *Pompey v. Merck & Co., Inc., et al.*, Civ. No. 05-2274 (E.D. Pa.

June 1, 2005) (attached as Exhibit B). The United States District Court for the Southern District

of Florida similarly ruled that "judicial economy and uniformity dictate that the Court defer

ruling on Plaintiffs' Motion to Remand in order to . . . allow the MDL judge to resolve the issues

presented by similar remand motions." *Fontanilles v. Merck & Co., Inc.*, No. 04-22799-CIV-

HUCK, slip op. at 1-2 (S.D. Fla. Dec. 14, 2004) (citations omitted) (attached as

Exhibit C); *see also Mitchell, et al. v. Merck & Co., Inc., et al.*, Civ. No. 05-587 (E.D. Pa. Mar.

2, 2005) (O'Neill, J.); *Cronin et al. v. Merck & Co., Inc., et al.*, Civ No. 05-838 (E.D. Pa. Apr. 1,

2005) (Padova, J.); *Cochran v. Merck & Co., Inc., et al.*, Civ No. 05-1237 (E.D. Pa. Apr. 19,

2005) (Sanchez, J.); *Laney v. Merck & Co., Inc., et al.*, Civ No. 05-1615 (E.D. Pa. Apr. 26, 2005)

(Kauffman, J.); *Lawrence-Wicks, et al. v. Merck & Co., Inc., et al.*, Civ No. 05-1610 (E.D. Pa.

May 4, 2005) (Tucker, J.); *Slade v. Merck & Co., Inc., et al.*, Civ No. 05-1611 (E.D. Pa. May 6,

2005) (Schiller, J.) (attached collectively as Exhibit A).

JUL-25-2006 TUE 10:53 AM GOLOMB HONIK          FAX NO. 215/665 0168          P. 06
Case 2:05-md-01657-EEF-DEK     Document 6228     Filed 08/08/06     Page 83 of 96

Case 2:06-cv-00388-EL     Document 17-1     Filed 02/27/2006     Page 5 of 18

In short, because the jurisdictional issues raised by Plaintiffs' motion are common to a number of cases in the MDL, these motions should all be resolved by the MDL judge in a coordinated manner.[3]

## II.     THE MOTION TO REMAND SHOULD BE DENIED BECAUSE THE IN-STATE AND NON-DIVERSE DEFENDANTS HAVE BEEN FRAUDULENTLY JOINED.

If this Court decides Plaintiffs' Motion instead of allowing Judge Fallon the opportunity in the MDL, the Motion should be denied because the in-state and non-diverse defendants are fraudulently joined.[4]

A joinder of a defendant is fraudulent if either: (1) the plaintiff does not truly intend in good faith to prosecute the action or seek a judgment against the defendant, or (2) there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendants. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *Boyer v. Snap-On Tools, Corp*, 913 F.2d 108, 111 (3d Cir. 1990); *In re Diet Drugs Prods. Liab. Lit.*, 294 F. Supp. 2d 667 (E.D. Pa. 2003). While the Court "must resolve all contested issues of substantive fact in favor of plaintiff," this does not mean that the Court "must blindly accept whatever plaintiff or defendant seeking remand may say no matter how incredibly or contrary to the overwhelming weight of the evidence." *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, MDL 1203, Civ. A. No. 03-20128, 2003 WL 21973329 (E.D. Pa. June 12,

---

[3]     Plaintiffs have opposed Merck's Motion to Stay. Merck will soon file a reply.

[4]     Plaintiff does not dispute that the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332 is satisfied.

JUL-25-2006 TUE 10:53 AM GOLOMB-HONIK    FAX NO. 215/985-0169    P. 07
Case 2:05-md-01657-EEF-DEK    Document 6228    Filed 08/08/06    Page 84 of 96

Case 2:06-cv-00388-EL    Document 17-1    Filed 02/27/2006    Page 6 of 18

2003) (*citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921) (internal quotations omitted).

The claims against the Penguins Organization, Dr. Kolessar and the Individual Defendants are the kind of sham claims that have been condemned so often in other pharmaceutical mass torts. *See, e.g., In re Diet Drugs (Phentermine, Fenfluramine, Defenfluramine) Prods. Liab. Litig. (Anderson)*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) (Bartle, J.) (calling claim manipulation a "sham").[5] To quote Judge Bartle, the in-state defendants in this case "are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Merck], the real target, in a federal forum." *In re Diet Drugs*, 220 F. Supp. 2d at 425.

---

[5]    *See also Burns v. Wyeth, Inc.*, 352 F.Supp.2d 773, 775-777 (E.D. Ky. 2004) (joinder of pharmaceutical sales representatives was fraudulent); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, Civ. A. No. 04-23801, 2004 U.S. Dist. LEXIS 22620, at *2-3 (E.D. Pa. Nov. 17, 2004) (finding pharmacy fraudulently joined); *In re Diet Drugs (Phentermine, Fenfluramine, Defenfluramine) Prods. Liab. Litig.*, No. MDL 1203, Civ.A. 03-20611, 2004 WL 2203712, at *1-2 (E.D. Pa. Sept. 28, 2004) (same applying Missouri law); *In re Diet Drugs*, 2004 WL 1824357, at *3-4 (E.D. Pa. Aug. 12, 2004) (applying Florida law); *In re Diet Drugs*, 294 F. Supp.2d 667, 677 (E.D. Pa. 2003) (applying Georgia law); *In re Rezulin Prods. Liab. Litig.*, 133 F.Supp.2d 272, 283-84, 286-88 (S.D.N.Y. 2001) (applying Mississippi and Alabama law); *Johnson v. Parke-Davis*, 114 F. Supp.2d 522, 525 (S.D. Miss. 2000) (applying Mississippi law). *See also In re: Baycol Prods. Litig.*, No. 1431 (MDL/JGL), Civ.A. 03-4954, 2004 WL 1118642 (D. Minn. May 17, 2004) (finding defendant corporation's district sales managers to be fraudulently joined).

### A.    The Penguins Organization and Dr. Kolessar Are Fraudulently Joined.

Plaintiffs' claims against Merck cannot be properly joined with Plaintiffs' claims against

Dr. Kolessar and the Penguins Organization because the two claims are hopelessly inconsistent.[6]

The thrust of Plaintiffs' Complaint is that Merck affirmatively concealed cardiovascular

risks associated with Vioxx, made false representations that Vioxx was safe, failed to warn of the

dangers of Vioxx, and fraudulently suppressed and concealed knowledge about the safety of

Vioxx. *See, e.g.,* Comp. ¶¶ 61-65, 69-71, 117-123, 159-168.  Plaintiffs also allege that Merck

misrepresented facts and withheld information regarding the risks of Vioxx from the healthcare

industry. *Id.*

In the very same Complaint filled with allegations of misrepresentation and concealment

on the part of Merck, Plaintiffs then turn around and assert that Dr. Kolessar and the Pittsburgh

Penguins knew all about the same risks that Merck allegedly hid.  Plaintiffs allege that Dr.

Kolessar and the Penguins Organization "encourage[ed] Plaintiff to take a medication they knew

to be potentially dangerous" and "that [the Penguins Organization and Dr. Kolessar] knew, or

reasonably should have known, that consumption of Vioxx could cause unreasonable and

dangerous side effects, [the Penguins Organization and Dr. Kolessar] continued to provide

Plaintiff with . . . Vioxx, without warning Plaintiff of these side effects . . ." *Id.* at ¶¶ 111-12.

---

[6]    For purposes of analysis, the claims against the Penguins Organization should be treated
as garden variety malpractice claims, even though Plaintiffs try to make them see more
complicated.  In essence, Plaintiffs allege that Dr. Kolessar committed malpractice in
giving Vioxx to Plaintiff, and that the Penguins Organization are liable because Dr.
Kolessar was their employee.

7

Plaintiffs' conclusory allegations against the Penguins Organization and Dr. Kolessar are entirely inconsistent with their claims against Merck.[7]

Faced with a similar situation against a fraudulently joined physician defendant, the Baycol MDL Court explained that where "the main thrust" of the complaint is that the pharmaceutical defendants "misrepresented [a prescription medication's] risks and failed to adequately warn of such risks," mere conclusory allegations that a physician "'knew or should have known'" of those risks will not defeat a finding of fraudulent joinder. *Spier v. Bayer Corp. (In re Baycol Products Litigation)*, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) ("*Baycol*"). There, the court, "[r]eading the Complaint as a whole," found that "the main thrust of this action is that the [pharmaceutical] Defendants misrepresented Baycol's risks and failed to adequately warn of such risks. Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegations that Dr. Stone 'knew or should have known' of Baycol's risks. Her conclusory allegations, however, will not defeat a finding of fraudulent joinder." *Id.* Concluding that allegations that the non-diverse physician negligently prescribed Baycol were inadequate to defeat removal, the court denied plaintiff's motion to remand. *Id.* at *2.

---

[7]    Plaintiffs claims boil down to conclusory allegations that Dr. Kolessar and his employer, the Penguins Organization, knew or should have known the alleged dangers/risks of Vioxx. Plaintiffs assert that Dr. Kolessar and the Penguins Organization provided Plaintiff with "Vioxx without a prescription, without evaluation, and, in the case of the [Penguins Organization], without a license to do so, in violation of Pennsylvania law." *see* Plaintiffs' Memo in Support of Remand, at 9. These allegations, as well as other allegations of "providing . . . Vioxx . . . without any customary medical examination," "providing off-season prescriptions . . . without follow up care," or "prescribing Vioxx to Plaintiff without evaluating Plaintiff," are mere window-dressing of the same claim, premised on the allegation that Vioxx is dangerous and that Dr. Kolessar was of these dangers.

JUL-25-2006 TUE 10:54 AM GOLOMB HONIK          FAX NO. 215 985 4169        P. 10
Case 2:05-md-01657-EEF-DEK   Document 6228-14   Filed 08/09/06   Page 87 of 96

Case 2:06-cv-00388-EL      Document 17-1      Filed 02/27/2006      Page 9 of 18

Many courts around the country have employed this same reasoning in other

pharmaceutical mass torts to conclude that physicians or pharmacies have been fraudulently

joined to defeat diversity jurisdiction. For example, in *In re Rezulin Products Liability*

*Litigation*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) ("*Rezulin*"), the court found that an

Alabama resident physician was fraudulently joined in a products liability action against a drug

manufacturer, where the plaintiffs' specific allegations that the manufacturer misrepresented and

concealed material facts about the safety and efficacy of its drug refuted the assumption that the

physician had knowledge of the drug's harmful effects. *See also Omobude v. Merck & Co.*, No.

3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (Attached as Exhibit D) (physician

fraudulently joined where plaintiff alleged that "Merck withheld and concealed and

misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the

charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about

Vioxx"); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently

joined where the "gravamen of the malpractice case against [physician] is his failure to know

what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig.*,

2002 WL 31852826, *2 (S.D.N.Y. Dec. 18, 2002) (non-diverse physician defendant fraudulently

joined where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the

manufacturers concealed its risks from the public, physicians, and others").

Plaintiffs' conclusory allegations here do not defeat a finding of fraudulent joinder. *See*

*Spier v. Bayer*, 2003 WL 21223842, at *2. Merck's removal was proper and Plaintiffs' Motion

should be denied.

**B.    The Individual Defendants Are All Fraudulently Joined.**

The joinder of the "Individual Defendants" is fraudulent because Plaintiffs have no intent to pursue their claims against them and there is no basis in the law for such claims. Plaintiffs' motion attempts to defend the joinder of the Individual Defendants. This is because Plaintiffs have mimicked the pleadings of certain other Philadelphia area law firms. Merck has contested the propriety of this joinder in many other cases, *see infra* at § I, and Judge Fallon will decide this issue in many similar remand motions for both the Individual Defendants and various physician defendants and other distributors. Therefore, this Court should defer ruling on this Motion to the MDL. If this Court decides to consider this Motion to Remand on the merits, however, the Court should hold that the Individual Defendants are fraudulently joined because Plaintiffs have no intent to pursue their case to judgment and there is no reasonable basis to predict that their claims against the Individual Defendants will succeed.

1.    Plaintiffs Do Not Intend to Prosecute The Action Or Seek
A Judgment Against the Individual Defendants.

The first *Batoff* test is whether the plaintiffs (or the plaintiffs' lawyer) intends in good faith to pursue the claim against the fraudulently joined defendant(s) all the way to judgment. *See Batoff*, 977 F.2d at 851. In this case, it is evident that Plaintiffs and their attorneys have no intention of pursuing the claims against the Individual Defendants to judgment. First, Plaintiffs' Motion to Remand barely addresses these claims. The only argument Plaintiffs can muster is a footnote where they merely repeat their allegations. Plaintiffs' own words – or lack thereof – speak volumes about their intent to pursue these claims. Second, the claims against the Individual Defendants provide no advantage to Plaintiffs and they would have no motivation to pursue them if the case were remanded to the Court of Common Pleas. To obtain a judgment

10

against Merck, Plaintiffs would have to prove: (1) that the package insert for Vioxx contained inadequate warnings about the known risks of the drug; (2) that Plaintiff was prescribed Vioxx to him because the warnings in the package insert were inadequate; and (3) that Plaintiff was injured as a result.

To obtain judgment against the Individual Defendants (assuming *arguendo* that the law allowed a "corporate participation" claim), Plaintiffs would need to prove the same three elements and then, **in addition,** would need to prove that the Individual Defendants were each somehow personally to blame for the inadequacy of the warnings in the Vioxx package insert and that it was their individual conduct that caused Plaintiff's injuries.

If Plaintiffs were able to prove the elements necessary to obtain judgment against Merck, Plaintiffs would have no incentive to prove the additional facts that would allow them (if their theory were legally viable) to also obtain a judgment against the Individual Defendants. A judgment against Merck alone would be as valuable to Plaintiffs as a judgment against Merck and the Individual Defendants. Indeed, the complete uselessness of the claims against the Individual Defendants explains why Plaintiffs spend no time defending these claims in their remand papers.

      2.     There Is No Reasonable Basis In Law And Fact
                Supporting The Claims Against the Individual Defendants

The second *Batoff* test is whether there is a reasonable basis in fact or colorable ground supporting the claim against in-state or non-diverse defendant(s). *See Batoff v. State Farm Ins. Co.*, 977 F.2d at 851. On that test as well, the claims against the Individual Defendants are fraudulent.

11

The essence of the Plaintiffs' lawsuit is that the package insert for Vioxx contained inadequate warnings about the known risks of the drug. While the law may allow liability to be imposed on a *company* that negligently sells a drug without providing adequate warnings in its package insert of the known risks, there is no room in the law for extending liability for a deficient package insert from the company to its *individual officers.*

Courts have consistently refused to impose liability on corporate officers for conduct that allegedly influenced the corporation to behave negligently. *See Shay v. Flight Helicopter Svcs., Inc.*, 822 A.2d 1 (Pa. Super. Ct. 2003) (owner/president of a helicopter services company found not liable for the death of a helicopter owner killed when an engine failed after the company's mechanic improperly installed equipment, although the owner generally, but not specifically, supervised the mechanic); *Kinal v. Holiday Inns, Inc.*, Civ. A. No. 93-59, 1993 WL 17653 (E.D. La. Jan. 21, 1993) (general manager of a hotel held not liable in a slip and fall case for negligence arising out of the manager's administrative duties performed as a general function of employment); *Mozingo v. Correct Manuf. Corp.*, 752 F.2d 168 (5th Cir. 1985) (evidence that the president of a corporation was "concerned" about equipment now the subject of litigation was insufficient to hold the president personally liable especially because the president had little or nothing to do with the production of the equipment); *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958) (corporate president and manager found not liable for injuries arising from the sale of a defective bike).

In the pharmaceutical context, courts have looked at claims against corporate employees with deep skepticism, rejecting motions to remand where plaintiffs sought to hold corporate employees personally liable for the corporation's alleged negligence. *See, e.g., In re Diet Drugs*

*(Phentermine, Fenfluramine, Defenfluramine) Products Liability Litigation*, 220 F. Supp. 2d 414

(E.D. Pa. 2002) (Bartle, J.) (holding sales representatives fraudulently joined where learned

intermediary doctrine applies); *In re Rezulin*, 133 F. Supp. 2d 272, 282, 286-87 (S.D.N.Y. 2001)

(holding pharmaceutical sales representatives fraudulently joined where plaintiff's complaint

contained only cursory allegations regarding sales representative's failure to warn plaintiff and

physicians).

      Plaintiffs' claims against the Individual Defendants are nothing but a new variant of the

effort to avoid federal court by alleging not only that a **corporation** is liable for an injury caused

by its negligence but that **employees** of the corporation should be held personally liable for their

role in the alleged corporate negligence. The Complaint in this case does not allege that any

particular act or statement by the Individual Defendants caused the alleged inadequacies in the

Vioxx package insert, however, much less that it was because of something the Individual

Defendants did or said that caused plaintiff to take Vioxx. Instead, the Complaint simply alleges

general oversight and a general failure to warn on the part of the Individual Defendants. *See,

e.g.*, Compl., ¶¶ 117-123. As other courts have recognized, that is not enough to establish a

claim and evade diversity jurisdiction. Plaintiffs' motion must be denied.[8]

---

[8]    Plaintiffs' other basis for remand – that Merck failed to obtain unanimous consent – is
without merit and warrants no consideration. As explained in the removal papers, it is
well settled that co-defendants who are fraudulently joined need not join in the removal.
*See Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995); *Texas E.
Transmission Corp. v. Fidelity & Cas. Co. of N.Y.*, Civ. A. No. 93-15, 1995 WL 596155,
*9 (E.D. Pa. Oct. 6, 1995). Merck obtained the consent of Dr. Scolnick, the only diverse,
out-of-state party. The consents of the others are irrelevant because they are fraudulently
joined.

### III. THE PENGUINS ORGANIZATION AND DR. KOLESSAR ARE DISPENSABLE AND MAY BE SEVERED FROM THIS CASE.

Finally and alternatively, this case should remain in federal court because the Penguins Organization and Dr. Kolessar can and should be severed from this case pursuant to Federal Rules of Civil Procedure 19 and 21.

Rule 21 provides that "[p]arties may be dropped . . . by order of the court on . . . such terms as are just." Fed. R. Civ. P. 21. Indeed, the Supreme Court has explained that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).

The Meridia MDL Court in *Williams v. Knoll Pharmaceutical Co.*, No. 5:03-cv-8030, slip op. at 5-8 (N.D. Ohio July 11, 2003) (attached as Exhibit E), *motion to reconsider denied* (N.D. Ohio Aug. 18, 2003) (attached as Exhibit F hereto) addressed this very issue and severed the non-diverse defendants. In *Williams*, thirteen plaintiffs sued diverse pharmaceutical company defendants while six of the plaintiffs also sued their six non-diverse Mississippi treating physicians. *See Williams*, slip op. at 1-2 (Exhibit E). Defendants removed the case to federal court on the basis of diversity jurisdiction, alleging that the plaintiffs were egregiously misjoined and that the defendants were fraudulently joined. *See id.* at 5. The MDL Court did not reach those issues and instead denied plaintiffs' motion to remand by exercising its discretion to drop dispensable, non-diverse defendants. *See id.* at 6 ("'it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity'") (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir. 1999)); *see also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) (explaining that court of appeals, like district courts, "can dismiss a dispensable party in order to retain jurisdiction"). The *Williams*

14

court dismissed the six physician defendants because (1) they were not indispensable to the action and (2) plaintiffs were free to proceed against those physicians separately in state court. *See Williams*, slip op. at 7 (Exhibit E).

The situation here warrants similar treatment. In this case, there can be no doubt that even if the Penguins Organization and Dr. Kolessar were necessary parties, they are not indispensable under Rule 19, and therefore may be severed. Moreover, there would be no apparent prejudice to Plaintiffs from such a severance because the proceedings in this case are at the very beginning stages, and Plaintiffs could, if they desired, seek to proceed against the non-diverse parties in state court. *Id.* Dr. Kolessar and Penguins Organization should be severed in accordance with Rule 21, and, therefore, Plaintiffs' motion to remand should be denied.

## CONCLUSION

Plaintiffs are asking the Court to waste judicial resources by considering the very same jurisdictional issues raised by a number of other cases – all of which will soon be headed to one MDL proceeding.  Plaintiffs also engaged in manipulative pleading tactics in an effort to evade federal jurisdiction.  For all of the foregoing reasons, Merck respectfully requests that the Court defer consideration of Plaintiffs' Motion pending MDL transfer.  Alternatively, if the Court decides to rule on the merits of Plaintiffs' Motion to Remand, it should be denied because the in-state defendants are fraudulently joined.

Respectfully submitted,

/s/ *Joshua G. Schiller*

Fred T. Magaziner
Joseph K. Hetrick
Joshua G. Schiller
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Attorneys for Defendant Merck & Co., Inc.

Dated: February 27, 2006

## CERTIFICATE OF SERVICE

I, Michelle H. Kirsch, hereby certify that on February 27, 2006, I caused a true and

correct copy of the foregoing Defendant Merck & Co., Inc.'s Opposition To Plaintiffs' Motion

To Remand to be served electronically through ECF, and via first class mail, postage pre-paid,

upon the following:

Richard M. Golomb
Golomb & Honik
121 South Broad Street, 9th Floor
Philadelphia, PA 19107

**Attorney for Plaintiffs**

Jonathan Dryer
Damian Zillas
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
The Curtis Center, Suite 1130E
Independence Square West
Philadelphia, PA 19103

**Attorneys for Defendants, PBT Business Trust d/b/a
The Pittsburgh Penguins, Inc. and The
Scranton/Wilkes-Barre Penguins**

Debra A. Weinrich
White & Williams
1800 One Liberty Place
Philadelphia, PA 19103

**Attorney for Defendant, David J. Kolessar**

Mark A. Berman
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, New Jersey 07102-5496

**Attorney for Defendant, Louis M. Sherwood, M.D.**

William J. Winning, Jr.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

**Attorney for Defendant, David W. Anstice**

Barbara G. Reid
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

**Attorney for Defendant, Edward M. Scolnick, M.D.**

Michelle H. Kirsch