UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S
MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN *LIMINE*
CONCERNING EVIDENCE OR ARGUMENT THAT MERCK EMPLOYEES,
FORMER EMPLOYEES, OR THEIR FAMILY MEMBERS TOOK VIOXX
PRIOR TO THE DRUG'S WITHDRAWAL FROM THE MARKET**

**(PLAINTIFF'S MOTION IN *LIMINE* NO. 2)**

Contrary to plaintiff's claims, evidence that Merck employees, former employees, or family members of Merck employees took Vioxx® prior to the drug's withdrawal from the market is neither irrelevant nor unfairly prejudicial. It bears directly on plaintiff's failure to warn claim because the very individuals who, plaintiff contends, knew of the cardiovascular risks allegedly associated with Vioxx, either personally took Vioxx or permitted their family members

823867v.1

to take it. The jury may logically conclude that, had these witnesses – and through them Merck itself – believed Vioxx to be as dangerous as plaintiff claims it is, they would not have taken it or allowed their family members to do so. The evidence bears equally on plaintiff's contention that, had Mr. Smith known what these witnesses allegedly knew, he would not have taken Vioxx and his physicians would not have prescribed it to him. And it is "prejudicial" only to the extent that it is powerful evidence, as plaintiff essentially concedes. Merck is entitled to defend itself by presenting this testimony to the jury.

To the extent the Court is not inclined to allow this testimony without restriction, it should still abide by its prior rulings allowing such testimony where the credibility of Merck's witnesses is attacked. As the Court has explained, when plaintiffs "attack [a] person and say that they're a liar," as plaintiff did with Dr. Reicin in *Plunkett v. Merck*, then evidence of personal use has "some relevance to credibility." (Feb. 3, 2006 Tr. in *Plunkett v. Merck* at 9:12-24, attached hereto as Ex. A; *see also id.* at 9:4-9 ("Phil, for example, brought up the issue about the person [Dr. Reicin] taking Vioxx. I can see where at this point that might have some relevance because of the attack on her credibility that's going to be launched with the article . . . . My thinking on that is that I would let her do that now because it does go to the credibility.").) Plaintiff's motion is thus premature at best – given the strong possibility that counsel will question the credibility of Merck's witnesses again at this trial. The Court should deny the motion.

I.  **EVIDENCE THAT MERCK WITNESSES TOOK VIOXX OR ALLOWED THEIR FAMILY MEMBERS TO DO SO IS RELEVANT.**

Plaintiff's first claim is that testimony that Merck witnesses or their family members took Vioxx is irrelevant to Mr. Smith's claims. (Pl.'s Mot. in *Limine* to Preclude Testimony by Merck Employees Regarding Their Personal Use of Vioxx ("Mot.") at 3-5.) That is incorrect. Relevant

evidence is "evidence having any tendency to make the existence of any fact that is of consequence to a determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  Testimony that Merck scientists and executives who were intimately aware of Vioxx's safety profile themselves took Vioxx, or allowed their family members to do so, unquestionably bears on the issue of what those witnesses knew about the risks associated with taking Vioxx.[1]  It therefore satisfies the requirements of Rule 401.  As a matter of basic fairness, Merck must be permitted to offer this evidence in order to defend itself against plaintiff's contention that Merck knew of cardiovascular risks but failed to provide an adequate warning of those risks.

Plaintiff's only counterargument is that testimony from Merck employees that they took Vioxx neither proves or disproves that Vioxx is unreasonably dangerous because these individuals "had substantial information about the safety profile of the drug" and "would have had opportunity to perform a different risk benefit analysis prior to taking the drug then [*sic*] the rest of the public."  (Mot. at 3.)  Plaintiff speculates:

> It might be that Merck executives, having knowledge of the drugs [*sic*] prothrombotic nature, would have also taken a blood thinning agent to minimize the risk of a thrombotic event.  Or the individual had few risk facts for cardiovascular disease that would elevate the risk of an adverse event.  Or possibly their arthritic pain was so extreme that the individual made a decision to

---

[1] The key players involved in developing, testing, and marketing Vioxx are the very witnesses who may testify that they or their family members took Vioxx.  They include Raymond Gilmartin, the former CEO of Merck; Edward Scolnick, the former chief scientist at Merck and head of its research laboratories; Peter Kim, the present head of the Merck research laboratories; David Anstice, the head of marketing and United States sales at Merck; Alise Reicin, a senior Merck scientist and physician extensively involved in the development and testing of Vioxx; Alan Nies, a former senior scientist at Merck who was the head of the Vioxx development program; Louis Sherwood, a physician and Senior Vice-President of Medical and Scientific Affairs at Merck; and Nancy Santanello, the head of epidemiology at Merck.  If it becomes necessary to do so at trial, Merck will make offers of proof concerning the personal use of Vioxx by these individuals.

>take Vioxx regardless of the cardiovascular risk. Lastly, they may have simply taken the drug without any consideration or care, having total disregard for their safety or welfare.

(Mot. at 4.) These arguments are frivolous and should be rejected out of hand. It is entirely disingenuous for plaintiff to suggest that the fact that these witnesses allegedly knew of the cardiovascular risks of Vioxx shows that "Merck" was aware of those risks, while at the same time contending that the fact that those witnesses either personally used or permitted their family members to use Vioxx is irrelevant because their knowledge cannot be imputed to Merck. Plaintiff cannot have it both ways. Unless he is willing to stipulate that he will not accuse these witnesses at trial of having knowledge of Vioxx's cardiovascular risks, plaintiff cannot persuasively argue that evidence of these witnesses' personal or family use of Vioxx is irrelevant to the issue of Merck's knowledge.

And even if plaintiff was willing to stipulate to that effect, this evidence would still be admissible as it is also highly relevant to the issue of warning causation – and specifically to assessment of the credibility of plaintiff's contention that he would not have taken Vioxx but for Merck's failure to warn adequately of cardiovascular risks that it knew about. The jury should not be kept in the dark about the fact that Merck employees who were extremely knowledgeable about Vioxx were taking the drug. If they hear this evidence, the jury might well question the contention that Mr. Smith would have never taken Vioxx had he or his physicians only known what these witnesses allegedly knew.

**II.   EVIDENCE THAT MERCK WITNESSES TOOK VIOXX OR ALLOWED THEIR FAMILY MEMBERS TO DO SO IS NOT SUBJECT TO *DAUBERT***

Plaintiff makes two fallback arguments in addition to the feeble relevance argument.[2] First, plaintiff argues that "Merck has made no attempt to meet the rigid scientific requirements of *Daubert* and show that [evidence that Merck witnesses took Vioxx or allowed family members to do so] is scientifically reliable [,]" and, therefore, such evidence should be excluded under Federal Rules of Evidence 702 and 703. (Mot. at 6.) Plaintiff makes no attempt, however, to explain how such evidence is based on scientific, technical, or other specialized knowledge within the scope of Rule 702. In fact, Merck's current and former witnesses will only provide testimony that falls squarely within the scope of non-expert lay opinion testimony permissible under Federal Rule of Evidence 701. Rule 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences" is appropriate as long as the opinions or inferences are: "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Clearly this standard permits lay testimony by a company's employee or former employee on matters that relate to their *personal* use of Vioxx – or their *personal* decision to allow family members to take Vioxx. Accordingly, plaintiff's argument

---

[2]   Plaintiff also includes one sentence in his motion suggesting that evidence that Merck employees or former employees personally took Vioxx or permitted their family members to take Vioxx is "impermissible hearsay or double hearsay under Rules 802 and 805." (Mot. at 6.) This position – which plaintiff clearly does not consider viable as evidenced by the fact that he devotes one sentence to it – is contradicted by plaintiff's own motion where plaintiff states that he "expects Merck to offer . . . testimony from . . . Merck employees or former employees [about Vioxx use] during the *Smith* trial." (Mot. at 3.) Testimony offered by a witness on the stand at trial about something that witness did is simply not hearsay. FED. R. EVID. 801 ("'Hearsay' is a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted.") (emphasis added).

5

that such evidence fails to meet the rigid scientific requirements of *Daubert* should be rejected outright.

**III.   EVIDENCE THAT MERCK EMPLOYEES AND THEIR FAMILY MEMBERS TOOK VIOXX IS NOT UNFAIRLY PREJUDICIAL AND SHOULD NOT BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403.**

Plaintiff's second fallback position is that this evidence is unfairly prejudicial and thus should be excluded Federal Rule of Evidence 403. As plaintiff's brief put it, this evidence "could mislead a jury into believing that Vioxx was safe and effective, since – as Merck will undoubtedly argue – *no witness would have allowed his or her relative to take a drug that was known to be dangerous*." (Mot. at 6-7 (emphasis added).) Far from demonstrating any unfairly prejudicial aspect of this evidence, this statement simply confirms the common-sense notion that this evidence *is* probative in assessing the witnesses' knowledge. Indeed, to the extent that plaintiff means the jury might fully credit the testimony, and therefore conclude that a particular witness believed that Vioxx was safe and effective, that is precisely why the evidence is relevant, and thus admissible. That is not unfair prejudice; it is just good evidence.[3]

**III.   CONCLUSION.**

For the reasons stated above, Merck respectfully requests that the Court deny Plaintiff's Motion to Exclude Or, In The Alternative, Motion In *Limine* Concerning Evidence Or Argument That Merck Employees, Former Employees, Or Their Family Members Took Vioxx Prior To The Drug's Withdrawal From The Market.

---

[3] Plaintiff notes that Judge Higbee excluded this evidence during the *Humeston v. Merck* trial. With respect, Merck believes that Judge Higbee's ruling was in error.

Dated:  August 14, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of Merck to Plaintiff's Motion to Exclude Or, In The Alternative, Motion In *Limine* Concerning Evidence Or Argument That Merck Employees, Former Employees, Or Their Family Members Took Vioxx Prior To The Drug's Withdrawal From The Market has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

8

823867v.1