UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION IN *LIMINE* TO PRECLUDE MERCK WITNESSES FROM TESTIFYING ABOUT THE ANNUAL NUMBER OF DEATHS ATTRIBUTABLE TO NSAID GASTROINTESTINAL TOXICITY WITHOUT APPROPRIATE <u>QUALIFICATIONS AND SCIENTIFIC SUPPORT</u>**

**(PLAINTIFF'S MOTION IN *LIMINE* NO. 6)**

Plaintiff claims that in other cases Merck has offered "opinion" testimony about the number of gastrointestinal-related ("GI-related") deaths resulting from NSAIDs. He asserts that this "opinion" testimony lacked foundation and was an attempt to inflate the benefits of Vioxx® by overstating the number of GI-related deaths due to NSAIDs. As an example, plaintiff points to a brief excerpt from the testimony of Dr. Briggs Morrison in the *Humeston v. Merck* trial in

New Jersey. In this excerpt, Dr. Morrison referred to estimates (by others) of "on the order of" 10 to 20 thousand GI-related deaths in the United States annually due to NSAIDs. (*See* Pl.'s Mot. in *Limine* to Preclude Merck Witnesses From Testifying About the Annual Number of Deaths Attributable to NSAID Gastrointestinal Toxicity Without Appropriate Qualifications and Scientific Support at 2.)

On its face, the testimony that plaintiff references is not "opinion" testimony about the number of GI-related deaths caused by NSAIDs. Dr. Morrison did not offer any opinion about the number of GI-related deaths caused by NSAIDs. He did not even say that he agreed with the estimates to which he referred. Nor did he purport to endorse the estimates as an expert in any way.

Read in context, it is clear that Dr. Morrison was not opining on the number of GI-related deaths caused by NSAIDs. On the contrary, he was merely explaining, *as a fact witness*, that Merck developed and marketed Vioxx, in part, to address a serious phenomenon widely identified and discussed in the medical community – namely gastrointestinal events, including fatal events, resulting from use of NSAIDs that, unlike Vioxx, suppress the body's production of substances that protect the lining of the stomach. The question he was responding to was: "Why [did] you believe[] . . . in February of 1997 that Vioxx had the potential to be such a great drug?" (Oct. 6, 2005 Tr. in *Humeston v. Merck*, No. 619 (N.J. Super. Ct. Law Div. filed Aug. 19, 2003) ("*Humeston* Tr.") at 3182:3-3183:7, attached hereto as Ex. A.) He was not asked for – and he did not offer – any expert opinion as to the exact number of, or best estimate of, the number of GI-related deaths in the United States due to NSAIDs.

It is a fact – not an opinion – that the estimates Dr. Morrison mentioned actually existed. Moreover, it is a fact – not an opinion – that such estimates were among the reasons that Merck

developed, marketed, and continued to market Vioxx. The exact degree to which these estimates missed or hit the mark is not knowable or important. The etiology of particular adverse gastrointestinal events (such as perforations, ulcers and tears or "PUBs") can be as complicated and uncertain as the etiology of cardiovascular events that plaintiffs try to link to Vioxx. No one can know exactly how many GI-related deaths have been caused by NSAIDs, and Merck has not offered any expert opinions as to what the true number is. In any case, the exact number is not important. What is important is what the plaintiff does not deny, which is that the GI problem that Merck developed Vioxx to address was a serious one involving thousands of deaths in the United States alone. Whether the exact true number in the United States is ten thousand a year or twenty thousand a year – or, for that matter, five thousand a year – is not the relevant point. The relevant point is that by any estimate, and certainly by at least several of the published, peer-reviewed estimates that Merck had before it when it developed Vioxx, the problem of GI-related deaths due to NSAIDs was a real and very significant problem. That point – essentially undisputed – was the entire import of the excerpted testimony from Dr. Morrison.

Such testimony is crucial for the jury to evaluate Merck's conduct fairly – that is, on the basis of a complete factual picture. For example, plaintiff will likely argue that Merck should have stopped marketing Vioxx immediately after the emergence of data suggesting a possible association between Vioxx and adverse cardiovascular events. For the jury to evaluate this argument fairly they would need to know the downside of such a decision. After all, Merck had to weigh that downside in the balance against the evolving universe of data regarding cardiovascular risks. The jury needs to know, as a factual matter, that Merck perceived, based upon the estimates that it had before it, that withdrawal of Vioxx from the market could result in

thousands of deaths due to GI-related events caused by alternative drugs that consumers would turn to in place of Vioxx.

Having placed the benefits of Vioxx at issue in this case, plaintiff cannot keep the jury from hearing evidence concerning the reasons Merck developed, marketed, and continued to market Vioxx. The truth is that Merck developed Vioxx, in part, to provide patients with effective pain relief without the debilitating gastrointestinal effects associated with traditional NSAIDs. Therefore, Merck respectfully requests that the Court deny Plaintiff's Motion in *Limine* to Preclude Merck Witnesses From Testifying About the Annual Number of Deaths Attributable to NSAID Gastrointestinal Toxicity Without Appropriate Qualifications and Scientific Support.

Dated:  August 14, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

823870v.1

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029


Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition of Merck to Plaintiff's Motion *in Limine* to Preclude Merck Witnesses from Testifying about the Annual Number of Deaths Attributable to NSAID Gastrointestinal Toxicity without Appropriate Qualifications and Scientific Support, has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

823870v.1