## James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses

| Merck's Counter Designations | Plaintiff's Objections | Merck's Response |
|---|---|---|
| [89:7] 7/3/2006 James Fries<br><br>* Fries -- Merck's Counter Designations<br><br>page 99<br>7    Q.   Good afternoon, Dr. Fries. | Cummulative. Dr. Fries has already been introduced.<br><br>Overruled | This is the transition from one examiner to the other |
| [99:13] - [100:4] 7/3/2006 James Fries<br><br>* Fries -- Merck's Counter Designations<br><br>page 99<br>13           I want to follow up on<br>14  questions about your reasons for writing<br>15  the letter to Mr. Gilmartin. I think you<br>16  said that you wanted to deal with some<br>17  things in a private way?<br>18      A.   That's right. I started,<br>19  and I tried to indicate in the letter my<br>20  great approval of Merck as a company, and<br>21  I followed it over the years with, you<br>22  know, top five respected companies in the<br>23  United States and so forth. And I<br>24  respected a lot of the things that they<br>page 100<br>1  did, respected their previous chairman<br>2  immensely, who I now know a little bit,<br>3  Roy Vagelos, who did extraordinary things<br>4  for Merck from the scientific side. | | |
| [100:21] - [101:13] 7/3/2006 James Fries<br><br>* Fries -- Merck's Counter Designations<br><br>page 100<br>21      Q.   You received a letter from<br>22  Mr. Gilmartin in response to your letter?<br>23      A.   Yes.<br>24      Q.   What was your reaction to<br>page 101<br>1  receiving that letter?<br>2      A.   Well, I think any of us -- I<br>3  was pleased that rather promptly a<br>4  response had come which had taken the<br>5  letter seriously and which had promised | | |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

```
6  some action. I recognized that it was --
7  that I was going to be running into
8  damage control types of activities, so, I
9  interpreted that and subsequent
10 conversations as having in part some
11 degree of damage control. People wanted
12 me to be happy with the actions that were
13 being taken.
```

[102:20] - [103:10] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

```
page 102
20           Were you satisfied with
21 Merck's response to your concerns?
22      A.   Yes. And I thought about --
23 I mean, they didn't say specifically what
24 they were going to do with Dr. Sherwood,
page 103
1  but they said that something was going to
2  happen.
3       Q.   After you raised your
4  concerns with Mr. Gilmartin at Merck, did
5  you hear reports of any other activities
6  by Merck that you would construe as
7  intimidation or impinging on academic
8  freedom?
9       A.   No. In the narrow sense of
10 that question, I don't think so.
```

[104:6] - [104:24] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

```
page 104
6       Q.   Sir, did you receive the
7  data relating to Vioxx that you had
8  requested?
9       A.   I didn't request data per se
10 for me. I requested the data be made
11 available to others. I wasn't
12 specifically studying --
13      Q.   Were you satisfied that
14 Merck made that data available to others?
15      A.   I believe so, yes.
16      Q.   Is it fair to say then that
17 as of about March of 2001, as far as you
18 were concerned, the matter was closed?
19      A.   My job here was done.
```

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

```
20    Q.  Dr. Fries, I take it that
21 Merck chose not to rebut the points in
22 your letter, but, rather, to address your
23 concerns. Is that a fair assessment?
24    A.  That's true.
```

**[105:6] - [105:11] 7/3/2006 James Fries**

* Fries -- Merck's Counter Designations

```
page 105
6     Q.  You mentioned this morning
7  that Dr. Singh is no longer employed at
8  Stanford; is that correct?
9     A.  Yes.
10    Q.  That's correct?
11    A.  Yes.
```

**[105:15] - [106:9] 7/3/2006 James Fries**

* Fries -- Merck's Counter Designations

```
page 105
15    Q.  Did Dr. Singh ever hold a
16 faculty position at Stanford?
17    A.  No, not in a true faculty
18 position. He was an adjunct clinical
19 professor, which is someone who goes to a
20 clinic as a voluntary person. He was a
21 researcher -- he had a title called
22 senior medical scientist, which used to
23 be called senior research associate.
24    Q.  Dr. Fries, I want to talk to
page 106
1  you a little bit about, you referred to
2  an investigation that you did into things
3  that you had heard in the rumor mill. Do
4  you remember that?
5     A.  Yes.

6     Q.  I take it that you didn't
7  have firsthand knowledge about the
8  matters that you've testified about in
9  your letter. Is that fair to say?
```

| | | |
|---|---|---|
| | *(handwritten: overruled 611(c))* Plaintiff objects to the leading question. R.611© | If Plaintiff agrees that all of the leading questions it asked the treating doctors in this case are also objectionable, Merck will not offer this testimony. If, however, Plaintiff maintains its argument that leading questions are proper to "speed things up", then Plaintiff's objection is improper. |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

[106:12] - [107:7] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

page 106
12       THE WITNESS: I believe
13   that's probably true. That was
14   one reason I tried to be as
15   careful and as balanced as I
16   could, because I was getting
17   dangerously toward what I would
18   even call hearsay if I got too
19   far.
20 BY MR. RABER:
21   Q.   And, of course, you can't be
22 expected to have firsthand knowledge of
23 all these things with the different
24 doctors that you were writing about,
page 107
1 right?
2   A.   That's right.
3   Q.   And is it fair to say that
4 certain doctors and Dr. Singh told you
5 things, and then you relayed that
6 information to Merck?
7   A.   Yes.

[115:10] - [116:5] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

page 115
10   Q.   Okay.
11       Let me go back to your
12 letter. You've told us that you relied
13 on what you were told by doctors and Dr.
14 Singh. Did you talk to any third parties
15 to confirm or verify what you had been

| | | |
|---|---|---|
| | Plaintiff objects to the degree that the topic is not covered in Plaintiff's affirmative designations and that this is not an appropriate counter designation. To the degree it is allowed, Plaintiff requests that 116:6-21 also be included:<br>6   Q.   Did you ever speak with<br>7 anybody at the Hershey Medical Center to<br>8 verify Dr. McMillen's version of the<br>9 events?<br>10   A.   No. But Dr. McMillen who,<br>11 again, I did not know then and I do not<br>12 know now, sent me a whole packet of<br>13 materials which were communications<br>14 between he and Merck, taking him out of | These topics were covered in the Plaintiff's affirmative designations and therefore this is proper counter-designations. Merck objects to Plainitff's additional "counter-to-counter" designation because it contains hearsay and lacks foundation. |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| | | |
|---|---|---|
| 16 told by any of those doctors?<br>17   A.   No.<br>18   Q.   So, for example, if we look<br>19 at Exhibit P 1.0176, which is your<br>20 January 9, 2001 letter, on the third page<br>21 of that letter, towards the top, it says,<br>22 "Dr. McMillen believes that his VCF<br>23 appointment at Hershey was revoked<br>24 because of these accusations." Do you<br>page 116<br>1 see that?<br>2   A.   Yes.<br>3   Q.   Now, is that something that<br>4 Dr. McMillen told you?<br>5   A.   That's right. | 15 some clinical trials, and he was the one<br>16 who said that these letters looked like<br>17 they were a pattern of intimidation to<br>18 me. There were more than one of them,<br>19 and they were citing specific things that<br>20 were cancelled, cancelled two clinical<br>21 trials that he couldn't participate in. | *Sustained. I did not let in what other Drs told witness. I can't/don't let in any specifics of what Dr. S[ingh] said* |
| **[116:22] - [117:2] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 116<br>22   Q.   Sir, the question was, did<br>23 you speak with anybody from the Hershey<br>24 Medical Center to verify what Dr.<br>page 117<br>1 McMillen had told you?<br>2   A.   No. | Plaintiff objects. Because this topic is not covered in Plaintiff's designations, the testimony is not an appropriate counter designation. | This does relate to the topics covered in Plaintiff's affirmative designations. Plaintiff covered issues relating to whether Dr. Fries knew of doctors who may have been intimidated by Merck. Merck's counsel is asking questions about some of the specific issues relating to that topic. |
| **[117:20] - [119:21] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 117<br>20   Q.   Dr. Fries, you have in front<br>21 of you Defense Exhibit Number 952. Does | Plaintiff objects. Because this topic is not covered in Plaintiff's designations, the testimony is not an appropriate counter designation.<br><br>*Sustained* | Same response as above |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

```
22  this appear to be a letter from the
23  Hershey Medical Center dated February
24  1st, 2000?
page 118
1       A.   Yes.
2       Q.   From a --
3       A.   I'm familiar with this
4  letter.
5       Q.   Okay.
6            This letter was among the
7  documents that Dr. McMillen gave to you?
8       A.   Probably.
9       Q.   It was in your file?
10      A.   Yes.
11      Q.   And does this letter
12  describe Dr. McMillen's status with the
13  Hershey Medical Center?
14      A.   Yes. It purports to.
15      Q.   Okay.
16           And it says in the second
17  paragraph, "Dr. McMillen held an
18  appointment as Clinical Assistant
19  Professor of Medicine from" July 1st,
20  1978 to December 31st, 1999, "at the
21  Milton S. Hershey Medical Center of the
22  Pennsylvania State University College of
23  Medicine," correct?
24      A.   Yes.
page 119
1       Q.   All right.
2            At the bottom of the first
3  page, it says, "Dr. McMillen currently
4  has an intensive and ongoing commitment
5  to clinical studies and a very active
6  speaking schedule," true?
7       A.   Yes. That's what it says.
8       Q.   And that speaking schedule
9  you understood was on behalf of Pfizer?
10      A.   I have no knowledge of what
11  components of his speaking schedule are.
12      Q.   Then the letter from the
13  Hershey Medical Center states,
14  "Recognizing his past teaching
15  contributions but acknowledging that he
16  has not been actively involved in
17  teaching our students or housestaff in
18  recent years, his clinical faculty
19  position has not been renewed." Do you
20  see that?
21      A.   Yes.
```

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| [125:17] - [126:18] 7/3/2006 James Fries | | |
|---|---|---|
| * Fries -- Merck's Counter Designations<br><br>page 125<br>17   Q.   Dr. Fries, let's go back to<br>18 your letter. On Page 3 of your letter,<br>19 you state near the top that "Dr. Simon<br>20 believes that one of his two academic<br>21 appointments has been jeopardized." Do<br>22 you see that?<br>23   A.   Yes.<br>24   Q.   Is that something Dr. Simon<br>page 126<br>1 told you?<br>2   A.   Yes.<br>3   Q.   Did you talk with Dr.<br>4 Simon's boss or anybody to verify that?<br>5   A.   No.<br>6   Q.   No?<br>7   A.   And I tried when I wrote<br>8 this to be as careful as I could with<br>9 words. So, it was me, not you, that said<br>10 Dr. Simon believes. He did believe that.<br>11 I know that for sure. But I don't know<br>12 that his belief was correct, and I tried<br>13 to indicate that.<br>14   Q.   Is it possible that his<br>15 belief was incorrect?<br>16   A.   Of course. Just like it was<br>17 possible that Dr. McMillen's belief was<br>18 incorrect. | Plaintiff objects. Because this topic is not covered in Plaintiff's designations, the testimony is not an appropriate counter designation.<br><br>*(handwritten: Sustained. Didn't let in on direct.)* | Same response. This was squarely addressed in Plaintiff's affirmative designations |

| [127:6] - [127:12] 7/3/2006 James Fries | | |
|---|---|---|
| * Fries -- Merck's Counter Designations<br><br>page 127<br>6   Q.   Now, you made reference to<br>7 some intimidation that you heard about<br>8 that related to a Dr. Lipsky and a Dr.<br>9 Whelton?<br>10   A.   Uh-huh.<br>11   Q.   Yes?<br>12   A.   Yes. | | |

[128:4] - [129:3] 7/3/2006 James Fries

## James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses

| Fries -- Merck's Counter Designations | Plaintiff objects to the degree that the topic is not covered in Plaintiff's designations and that this is not an appropriate counter designation. To the degree it is allowed, Plaintiff requests that 129:4-130:11 also be included: | Same response as above. Merck objects to Plaintiff's "counter-to-counter" designation because it contains hearsay, is speculative, and lacks foundation (witness testifying about how other people felt) |
|---|---|---|
| page 128<br>4   Q.   Dr. Fries, we've put in<br>5 front of you a document marked as Defense<br>6 Exhibit 953, which I'll represent to you<br>7 is an article from the Philadelphia<br>8 Inquirer in 2005, specifically June 5th<br>9 of 2005. I'd ask you if you would, turn<br>10 to the second page of this exhibit.<br>11   A.   Yes.<br>12   Q.   In the far right column of<br>13 that page there's a paragraph that<br>14 begins, "He cited Singh, Simon and<br>15 Stillman." Do you see that?<br>16   A.   Oh, yeah.<br>17   Q.   Okay?<br>18   A.   Uh-huh.<br>19   Q.   And this article states,<br>20 "Two of them, former Arthritis Institute<br>21 director Peter Lipsky and Johns Hopkins<br>22 University professor Andrew Whelton, said<br>23 in interviews that they had heard of<br>24 Merck complaints about their work, but<br>page 129<br>1 had never felt threatened nor had gotten<br>2 calls from Sherwood." Do you see that?<br>3   A.   Yes. | 4   Q.   Do you allow that it's<br>5 possible that neither Dr. Lipsky nor Dr.<br>6 Whelton ever felt threatened or<br>7 intimidated by Merck?<br>8   A.   Yes. I think it's possible.<br>9 In explanation, this to me seems sort of<br>10 like hearsay, because you've got<br>11 something here, but I'll give you my<br>12 interpretation of this.<br>13         When I talked with Peter, he<br>14 was the one, he was still at<br>15 Southwestern. He wasn't yet at the NIH<br>16 at his NIH position. And he had a slide<br>17 presentation which Merck had objected to.<br>18 And what they did was to put pressure on<br>19 him internally to review the slides that<br>20 he had shown at that time.<br>21         Peter is not an easily<br>22 intimidated guy, and I'm sure he didn't<br>23 feel particularly intimidated. He did<br>24 feel pissed off, if I could put that in<br>130<br>1 the deposition, because it was using his<br>2 time to go back over something that he<br>3 shouldn't be challenged on.<br>4         And Andy was a little bit --<br>5 Andy Whelton I've known for -- since we<br>6 were fellows together at Hopkins in the<br>7 renal lab in '66, and he's a very good<br>8 guy. And he's in a different area, and<br>9 his complaints were he did -- I did not | Overruled -- goes to credibility |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| | 10 cite him in my letter, for example, as<br>11 having been called by Sherwood. | |
|---|---|---|
| **[131:11] - [133:2] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 131<br>11  Q.  Let's talk about that. If<br>12 you look at the second page in front of<br>13 you there with Dr. Simon, do you see in<br>14 the middle column there?<br>15  A.  Yeah.<br>16  Q.  And it says in quotes, it<br>17 says, "No specific action was taken<br>18 against me. But there was a reputational<br>19 issue,' said Simon." Do you see that?<br>20  A.  Yes.<br>21  Q.  Do you -- now, your letter<br>22 indicated that "Dr. Simon believes that<br>23 one of his two academic appointments has<br>24 been jeopardized."<br>page 132<br>1  A.  Yes.<br>2  Q.  It appears in this that Dr.<br>3 Simon has said no specific action was<br>4 taken against him. Would you agree with<br>5 that?<br>6  A.  Yeah. Threatened and<br>7 taking -- yeah. I see them as<br>8 consistent. Yes.<br>9  Q.  Do you see these as<br>10 consistent?<br>11  A.  Yeah.<br>12  Q.  Okay.<br>13    Look a little further down<br>14 where it says, "His boss at Harvard,<br>15 Steven Weinberger, now a vice president<br>16 at the American College of Physicians in<br>17 Philadelphia, confirmed getting<br>18 Sherwood's call but said it, 'had nothing | Plaintiff objects to the degree that the topic is not covered in Plaintiff's designations and that this is not an appropriate counter designation. To the degree it is allowed, Plaintiff requests that 133:3-15 also be included:<br>3  Q.  Does that seem to be a<br>4 little different version of events than<br>5 what's laid out in your letter to<br>6 doctor -- to Mr. Gilmartin?<br>7  A.  No. I don't believe so. I<br>8 didn't say that people that I hadn't<br>9 talked with had said they were<br>10 threatened. I said they had gotten<br>11 calls. And I said that the chairman of<br>12 my department had gotten calls. I didn't<br>13 say that they had been threatened. The<br>14 target was Simon. The target was really<br>15 not Harvard. | This relates directly to issues Plaintiff designated, so it is a proper counter-designation. Merck objects to Plaintiff's "counter-to-counter" designation because it is speculative and lacks foundation.<br><br>Sustained<br>Didn't allow<br>testimony<br>this in light [?] |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| Fries -- Merck's Counter Designations | Plaintiff's Objections | Defendant's Responses |
|---|---|---|
| 19 to do,' with Simon's promotion. 'Lou<br>20 Sherwood was not at all threatening me,'<br>21 Weinberger said, adding that he had<br>22 skipped over Simon because of unrelated<br>23 questions about his record running the<br>24 school's graduate medical education<br>page 133<br>1 program." Do you see that?<br>2 A. Yes. | | |
| **[133:16] - [134:11] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 133<br>16 Q. Well, would you agree with<br>17 me that it's possible that Dr. Simon's --<br>18 none of Dr. Simon's academic appointments<br>19 was affected or jeopardized in any way by<br>20 anything Merck or Lou Sherwood did?<br>21 Would you allow for that possibility?<br><br>22 A. I put the word "believes" in<br>23 the letter because I thought that I<br>24 couldn't state with certainty.<br>page 134<br><br>1 Q. How did -- you mentioned<br><br>2 earlier there is an Edward Harris?<br>3 A. Yeah.<br><br>4 Q. Was he your boss at<br>5 Stanford?<br><br>6 A. He was chairman of the<br>7 department of medicine before Dr. Swain,<br>8 and then when he left that, he became a<br>9 chair of our division of rheumatology and<br>10 immunology. And he retired two years<br>11 ago. | Plaintiff objects to the degree that the topic is not covered in Plaintiff's designations and that this is not an appropriate counter designation. To the degree it is allowed, Plaintiff requests that 134:12-135:6 also be included:<br><br>12 Q. You have a good relationship<br>13 with Dr. Harris?<br>14 A. Yes.<br>15 Q. And respect him?<br>16 A. Yes.<br>17 Q. Okay.<br>18 I think you mentioned that<br>19 Dr. Sherwood also called Dr. Harris?<br>20 A. Yes.<br>21 Q. How did Dr. Harris react to<br>22 that, if you know?<br>23 A. You know, I don't remember.<br>24 But I know that he shared my general<br>135<br>1 concerns about the academic freedom<br>2 issues. And I did run some drafts<br>3 through him. While we were working the<br>4 more inflammatory lines out of this<br>5 letter, he was assisting us in that<br>6 polishing process. | This relates directly to Plaintiff's affirmative designations, so this is proper counter-designations. Merck objects to Plaintiff's "counter-to-counter" designations because they contain hearsay and are speculative and lack foundation (witness testifying about what another person believed)<br><br>*Sustained* |
| **[135:20] - [137:18] 7/3/2006 James Fries** | | |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| Fries -- Merck's Counter Designations | Plaintiff objects to the incomplete answer designated at 137:13-18. Plaintiff requests that the remainder of the answer from 137:19 to 138:3 be included: | Merck objects to Plaintiff's "counter-to-counter" designation because it is speculation and lacks foundation. The witness is testifying about what another person thought and believed, and why another person acted the way he did.<br><br>Sustained |
|---|---|---|

* Fries -- Merck's Counter Designations

page 135

20   Q.   Dr. Fries, Exhibit 954 is a
21 string of e-mails between Edward Harris,
22 Jr. at Stanford and Lou Sherwood at
23 Merck. Can you see that?
24   A.   Yes. I believe I've seen

page 136

1 this before.
2   Q.   Okay.
3   A.   It seems vaguely familiar.
4   Q.   All right.
5       And if you'll look at the
6 bottom, it appears that Dr. Harris is
7 sending an e-mail to Dr. Sherwood on
8 November the 14th of 2000, true?
9   A.   Yes.
10   Q.   So, that would have been a
11 couple of weeks after the phone call that
12 you received from Dr. Sherwood, right?
13   A.   I guess so, yes.
14   Q.   Okay.
15       And that would have been
16 after you had spoken with Dr. Sherwood at
17 the ACR meeting?
18   A.   I suspect before that. We
19 would have to check the record.
20   Q.   Okay.
21       Let's look. It says, the
22 e-mail says, "Lou, Congratulations on
23 getting that piece of glass in return for
24 Merck's nice contributions to the ACR."
page 137
1 Do you see that?
2   A.   I believe that Dr. Harris
3 may have been president of the ACR that
4 year.

19       And Ted in his position,
20 again, you know, I believe that we've
21 probably all seen letters like this a lot
22 of times, okay, and they come and you've
23 got somebody out there who is a potential
24 donor and you stroke them a little bit

138
1 and so forth so you say friendly things.
2 But I don't think that I had talked with
3 Ted at this time about these issues.

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

```
5    Q.   Okay.
6    A.   And so this would imply,
7  I'd have to check the dates, but this
8  would imply that this was after ACR.
9    Q.   Okay.
10        And do you know what
11 "Merck's nice contributions to the ACR"
12 are that are being referred to there?
13   A.   Well, I've talked about the
14 support that Merck has given in research
15 in a lot of areas, and they've done good,
16 and I have no criticism for the good
17 things that Merck has done, and I try and
18 illustrate those in the letter.
```

[138:10] - [139:8] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

```
page 138
10   Q.   Well, the next sentence
11 says, "I understand that you have some
12 concerns about comments made by Dr.
13 Singh." Do you see that?
14   A.   Uh-huh.
15   Q.   And you understand that
16 refers to conversations between Dr.
17 Sherwood and Dr. Harris about Dr. Singh?
18   A.   Yes.
19   Q.   Okay.
20        And what did Dr. Harris say
21 to Dr. Sherwood in this e-mail, the next
22 sentence there?
23   A.   Essentially what I said to
24 Dr. Sherwood. He says here, "I would
page 139
1  welcome a formal letter" so that we can
2  conduct an inquiry.
3    Q.   It says, "I would welcome a
4  formal letter from you that could
5  generate the appropriate process for
6  inquiry and clarification, and, if
7  necessary action." True?
8    A.   That's right.
```

[140:22] - [141:1] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

page 140

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

```
22    Q.   Do you see anything
23  inappropriate in these communications
24  here between Dr. Sherwood and Dr. Harris?
page 141
1     A.   No.
```

[143:1] - [143:14] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

```
page 143
1     Q.   And then Dr. Harris says,
2  "Lou, if you receive such a missle, send
3  me a copy." Do you see that?
4     A.   Uh-huh.
5     Q.   Can you think of any reason
6  why Dr. Harris would describe a letter
7  from Stanford as a missile?
8     A.   Oh, you'd have to know Ted.
9  That's just the way he talks.
10    Q.   Okay.
11         What?
12    A.   He's a little flowery about
13 things. He puts little things in his
14 sentences. It's quite colorful.
```

[149:6] - [149:14] 7/3/2006 James Fries

| | Plaintiff's Objections | Defendant's Responses |
|---|---|---|
| * Fries -- Merck's Counter Designations<br><br>page 149<br>6    Q.   And you talk about in your<br>7  letter, it was your experience that<br><br>8  certainly your mindset in 2001 was that<br><br>9  the COX-2 inhibitors looked like a<br>10 significant "medical advance" for dealing<br><br>11 with the serious GI problems from<br><br>12 traditional pain relievers? | Plaintiff objects to the degree that the topic is not covered in Plaintiff's designations and that this is not an appropriate counter designation. To the degree it is allowed, Plaintiff requests that 149:15 to 150:3 be included:<br><br>15    Q.   And you believed in January<br>16 of 2001 even that on balance, these drugs<br>17 could be expected to save lives?<br>18    A.   No. That's going too far.<br>19 I think that an issue had been raised,<br>20 and the issue needed to be dealt with.<br>21 It was dealt with in a series of very<br>22 unfortunate ways. It could have been<br>23 dealt with, for example, by getting rid | Merck will withdraw this designation and therefore the Plaintiff's "counter-to-counter" at 149:15-150:3 is also withdrawn. |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| | | |
|---|---|---|
| 13   A.   Yes. I even took credit for<br>14 having created them. | 24   of the 50 milligram dose and putting a<br><br>150<br>1   warning label on it, and then none of us<br><br>2   would be here. But that could have been<br>3   done in the year 2000. | |
| **[150:6] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 150<br>6   Q.   Sir, at the time -- | Not a question. Should be deleted. | This is part of the question |
| **[150:9] - [150:21] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 150<br>9   Q.   -- though, if you look at<br>10 Page 3 of your letter, in the middle of<br>11 the page you say, "These drugs should on<br>12 balance, save a substantial number of<br>13 lives."<br>14   A.   Yeah, that was actually my<br>15 mindset. That's fair.<br>16   Q.   Okay.<br>17         Back in 2001.<br>18   A.   Yes.<br>19   Q.   And some of what you're<br>20 saying today --<br>21   A.   Yeah. | | |
| **[151:23] - [152:13] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 151<br>23   Q.   And I think you mentioned<br>24 that at some point your thinking about<br>page 152<br>1 the meaning of the VIGOR study changed | Plaintiff objects to the extent that Dr. Fries' complete answer is not given. Please add lines 14-16 which contain the remainder of his answer.<br><br>14   Q.   Okay.<br>15   A.   Dr. FitzGerald has access to<br>16 data, you know, at a very early stage. | Merck objects to Plaintiff's "counter-to-counter" designation because it is speculative and lacks foundation -- the witness is testifying about when another person likely receives data. |

*[handwritten annotation: "overruled - add 14-16"]*

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| Designation | Plaintiff's Objections | Defendant's Responses |
|---|---|---|
| 2 when you became aware of some data<br>3 relating to Bextra and other drugs<br>4 through Dr. FitzGerald?<br>5    A.   That's right.<br>6    Q.   So, that would have been at<br>7 a time when there was data relating to<br>8 Bextra available. Is that fair to say?<br>9    A.   Yes. That was after this.<br>10   Q.   A fair amount after this,<br>11 right?<br>12   A.   I think a year to two years,<br>13 yeah. | | |
| **[155:4] - [155:16] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 155<br>4    Q.   Dr. Fries, we've put in<br>5 front of you Defense Exhibit 245. Can<br>6 you identify this?<br>7    A.   Yes. We've spoken to this<br>8 before. This is a letter from Mr.<br>9 Gilmartin to me.<br>10   Q.   Dated January 23rd, 2001?<br>11   A.   Yes.<br><br>12   Q.   And I think this is the<br>13 letter that you've described as a<br>14 "thoughtful" and positive letter?<br>15   A.   Yes, it was a response to my<br>16 letter of January 9th. | Question is leading. R. 611c<br><br>Overruled | The leading objection was waived because Plaintiff did not make the objection at the time and give Merck's counsel a chance to cure any leading. |
| **[156:4] - [156:17] 7/3/2006 James Fries**<br><br>* Fries -- Merck's Counter Designations<br><br>page 156<br>4    Q.   Dr. Fries, I'm putting in<br>5 front of you a document marked as Defense<br>6 Exhibit 264. Can you tell us what that<br>7 is?<br>8    A.   It's a letter to me from<br>9 David Anstice, the copy to Doug Greene.<br>10   Q.   Dated February 16th, 2001?<br>11   A.   February 16th, 2001.<br>12   Q.   And is this the letter that<br>13 came with the data that you received from | | |

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

```
14  Merck?
15     A.  Yes. I don't remember
16  receiving any data. There must have been
17  some. There are attachments noted here.
```

[157:5] - [158:6] 7/3/2006 James Fries

* Fries -- Merck's Counter Designations

```
page 157
5           And by this time, there had
6   been an Advisory Committee concerning
7   Vioxx and Celebrex. Do you recall that
8   in February of 2001?
9       A.  Yeah. As I say,
10  reconstructing these dates and what order
11  they are is really hard for me, but there
12  was one roughly around there. Yeah. So,
13  these data had already in that interval
14  been, I guess, released pretty generally.
15      Q.  And have you been on FDA
16  Advisory Committees before?
17      A.  Yes.
18      Q.  And has it been your
19  experience that data from studies before
20  the Advisory Committee are discussed at
21  those meetings?
22      A.  The data are discussed, yes,
23  at the meeting. I don't recall the exact
24  details. Sometimes it's long, and
page 158
1   sometimes it's short.
2       Q.  Has it been your experience
3   that members of FDA Advisory Committees
4   are respected scientists in the relevant
5   fields?
6       A.  Yes, for the most part.
```

[170:23] - [171:6] 7/3/2006 James Fries

**James Fries, M.D.: Merck's Counter Designations with Plaintiff's Objections and Defendant's Responses**

| | | |
|---|---|---|
| * Fries -- Merck's Counter Designations<br><br>page 170<br>23   Q.   You believe in safety first?<br>24   A.   No. I believe that you have<br>page 171<br>1  a balance with pharmaceutical treatments<br>2  between the good and the harm that they<br>3  do. Things that do a whole lot of good,<br>4  they can do quite a bit of harm. And you<br>5  still would say that on balance, they're<br>6  good drugs. So, it's a balance issue. | No objection provided Plaintiff's designation of 169:19-171:12 is played in its entirety. | Merck stands by its objections to Plaintiff's affirmativ designation of 169:19-170:22. This answer was speculative and Dr. Fries lacks personal knowledge / foundation to testify about this issue. Additionally, the question that led to this answer (169:10-13) was objectionable, and Merck properly objected to it. The question was leading, argumentative, and assumed facts not in evidence. Plaintiff did not previously designate 171:7-12, so it appears that there is a typo here. If Plaintiff intends to designate 171:7-12, Merck objects because Dr. Fries' opinions about the FDA are not appropriate here -- he is not designated as an expert on the FDA, and personal knowledge / foundation of the FDA approval process has not been laid. If the Court grants Merck's objections to Plaintiff's designations on pages 169-171, Merck will withdraw its counter-designation of 170:23-171:6. |