UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING TESTIMONY OF DOUGLAS P. ZIPES, M.D.**

**(EXPERT CHALLENGE NO. 4)**

Plaintiff has proffered Dr. Douglas Zipes, a cardiologist, as an expert on general causation.  Plaintiff has stated he will not call Dr. Zipes live at trial, but instead will call Dr. Zipes by way of his *Barnett* deposition testimony.[1]  As Merck has separately stated in its Motion to Compel the Deposition of Douglas Zipes, M.D. or, in the Alternative, to Exclude Him from

---

[1] (July 19, 2006 G. Kaiser email to Jablonski: "We will not call [Dr. Zipes] live" in *Smith*, attached hereto as Ex. A.)

1

824030v.1

Testifying at Trial and in its wholesale objection to plaintiff's deposition designations of Dr. Zipes,[2] it would be improper to allow plaintiff to use Dr. Zipes' *discovery* deposition from *Barnett* in the *Smith* trial. Should the Court agree, the Court need not rule on the present motion.

Should the Court consider this motion, Merck moves to exclude Dr. Zipes' testimony on the following grounds: 1) Merck has not had an opportunity to depose Dr. Zipes in this case, 2) Dr. Zipes' opinions regarding whether Vioxx® causes atherosclerosis are scientifically unreliable, 3) Dr. Zipes offers opinions on issues that are either completely irrelevant, unduly prejudicial, or unsupported by fact, including: (i) what Merck knew or should have known; (ii) other doctors' supposed agreement with his belief that Vioxx causes heart attacks; and (iii) opinions expressed in the report of another of plaintiff's experts, Richard Kronmal, Ph.D. In *Barnett v. Merck*, the Court granted in part and denied in part Merck's motion to exclude Dr. Zipes. Merck hereby reasserts its objections to the portions of Dr. Zipes' testimony that are either improper or outside the scope of his area of expertise, as explained further below, in order to preserve Merck's record for appeal. In addition, Merck hereby moves to exclude Dr. Zipes' causation opinions, for the reasons articulated in Merck's concurrently-filed Memorandum in Support of the Motion of Merck for Order Excluding Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis.

**I.      HOW THIS COURT RULED IN *BARNETT*.**

In *Barnett*, the Court granted Merck's Daubert motion on Dr. Zipes in part and denied it in part. The Court denied Merck's Motion to exclude Dr. Zipes' testimony that Vioxx accelerates atherosclerosis and his opinions based on improper subgroup analysis because the Court found that these opinions were based on proper methodology. With regard to Dr. Zipes'

---

[2] Merck filed its Motion to Compel the Deposition of Douglas Zipes, M.D. or, in the Alternative, to Exclude Him from Testifying at Trial on July 24, 2006, and is filing its objections to plaintiff's deposition designations of Dr. Zipes concurrently with this motion.

testimony concerning what Merck knew or should have known, the Court held that Dr. Zipes may only testify about what Merck should have known of the risks of Vioxx based upon what was known in the medical and scientific community. The Court reserved ruling on whether Dr. Zipes may testify about conversations he had with other doctors regarding whether Vioxx causes heart attacks. The Court granted Merck's motion to exclude testimony by Dr. Zipes on the subject of Merck's compliance with FDA regulations. The Court denied Merck's motion to exclude Dr. Zipes' testimony regarding his reliance on Dr. Kronmal's report.

## II. THE COURT SHOULD EXCLUDE DR. ZIPES FROM TESTIFYING BECAUSE MERCK DID NOT HAVE THE OPPORTUNITY TO DEPOSE HIM.

Merck has moved to exclude Dr. Zipes from testifying because plaintiff has refused to produce him for deposition in this case. Dr. Zipes provided a report, deposition, and trial testimony in *Barnett*, all of which included opinions on specific causation. Plaintiff's Expert Designation states only that his "[a]nticipated testimony is reflected in his expert reports and MDL depositions." (*See* Plaintiff Robert Garry Smith's Amended Designation of Lay and Expert Witnesses at 9.) To the extent that plaintiff intends to offer any specific cause testimony from Dr. Zipes, Merck requests that the Court exclude such testimony. (*See* Merck's Motion to Compel the Deposition of Douglas Zipes, M.D., or, in the Alternative, to Exclude Him from Testifying at Trial, filed July 24, 2006 (Record Docket No. 5892).)

Plaintiff has indicated that he will not call Dr. Zipes live to testify and instead, plaintiff has provided deposition designations which appear to limit Dr. Zipes to general cause testimony in this case. Merck maintains that any testimony, even that limited to general causation issues, should be excluded because Dr. Zipes' opinions on whether Vioxx causes heart attacks were formed based on his thinking about Barnett and the facts of his case. Dr. Zipes even admitted in his deposition that his report was done with "Mr. Barnett in mind." (Deposition of Douglas P.

3

Zipes ("Zipes Dep.") at 74:21-75:4, attached hereto as Ex. B ("Q: Do you not think that strokes as a thrombotic event would be an important thing to consider in deciding whether Vioxx has an increased cardiovascular risk? A: Without any question. I do consider that it was. Yes, strokes are unquestionably important. As I put this together, it was with Mr. Barnett in my mind, and then, obviously, his myocardial infarction.")) Based on this admission it is clear that the Court should either compel plaintiff to present Dr. Zipes for a deposition related to this case, or exclude his testimony from this trial.

**III.   THE COURT SHOULD EXCLUDE DR. ZIPES' OPINIONS THAT ARE NOT SCIENTIFICALLY RELIABLE AND THOSE THAT ARE IRRELEVANT, UNDULY PREJUDICIAL, OR UNSUPPORTED BY FACT.**

If Dr. Zipes is permitted to testify via deposition, Merck objects to certain opinions he offers which exceed the bounds of his expertise or which are not scientifically reliable. Specifically, this Court should exclude his opinions that Vioxx causes atherosclerosis and that Vioxx confers a higher cardiovascular risk in certain patients than in others because these opinions are not scientifically reliable. Additionally, Dr. Zipes offers "expert" opinion testimony on a number of issues that are either completely irrelevant, unduly prejudicial, or unsupported by fact, including: (i) what Merck knew or should have known; (ii) doctors' purported agreement with his belief that Vioxx causes heart attacks; and (iii) the opinions expressed in the report of another one of plaintiff's experts, Richard Kronmal, Ph.D. All of this testimony must be excluded under Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**A.   LEGAL STANDARD.**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-5 of the Motion of Defendant Merck & Co., Inc. ("Merck") for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, filed concurrently

4

herewith and incorporated herein by reference.

### B. THE COURT SHOULD EXCLUDE DR. ZIPES' GENERAL CAUSE OPINIONS RELATING TO ATHEROSCLEROSIS AND THOSE BASED ON IMPROPER SUBGROUP ANALYSIS.

#### 1. Dr. Zipes' Opinions On Whether Vioxx Causes Or Accelerates Atherosclerosis Are Scientifically Unreliable.

In his expert report and deposition testimony, Dr. Zipes opines that Vioxx causes accelerated plaque build-up. (*See* 22 May 2006 Report of Douglas Zipes, M.D. ("Zipes Rpt.") at 12-13, 36-42, attached hereto as Ex. C; *see also* Zipes Dep. at 89:3-91:12; 104:15-108:8.) This theory of causation lacks a foundation in reliable science, as explained in Merck's concurrently-filed Atherosclerosis Motion. Merck incorporates that motion herein by reference, and for the reasons stated in the motion moves to exclude Dr. Zipes' testimony about Vioxx's alleged ability to cause or accelerate atherosclerosis.

#### 2. Dr. Zipes' Opinions Based On Improper Subgroup Analyses Are Scientifically Unreliable.

Dr. Zipes admits that he is not an expert in biostatistics, yet he has extracted two numbers from the *post hoc* subgroup analysis of the APPROVe data and attempted to apply them to show that Vioxx causes particularly increased cardiovascular risk in (i) persons with prior-atherosclerotic symptoms; and (ii) persons who experienced blood pressure "spikes" while taking Vioxx.[3] (Zipes Dep. at 41:15-21.) Specifically, Dr. Zipes cites the APPROVe study[4] for the proposition that subjects with known atherosclerotic disease had a relative risk of 9.59 for thrombotic events in Vioxx patients versus placebo (Zipes Rpt. at 30), and claims that the

---

[3] Dr. Zipes renders this opinion despite admitting that, prior to having been retained in this case, he had neither diagnosed a person as having had a heart attack caused by Vioxx, nor had he even prescribed Vioxx to his patients. (Zipes Dep. at 44:11-19, 45:16-24.)

[4] Bresalier R., et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, N. ENGL. J. MED 2005 Mar. 17; 352(11):1092-102.

5

APPROVe data also demonstrate a relative risk of 3.82 for myocardial infarction in users who experienced elevations in their blood pressure while on Vioxx. (Zipes Rpt. at 31; Zipes Dep. at 103:5-104:14.) These statistics, however, are based on *post hoc* subgroup analyses from the APPROVe study and, as described below, cannot properly be used for this purpose.

Several recent scientific articles specifically addressing cardiologic clinical trials indicate that subgroup analyses – examinations of partitioned pieces of an entire dataset – are unreliable even in large data sets.[5] There is scientific consensus that such analyses must be conducted and interpreted with great caution. (Parker 2006 at 580; *see* also Sleight at 1 ("Analysis of subgroup results in a clinical trial is surprisingly unreliable, even in a large trial.").) When subgroup analyses are not pre-specified, their results should be regarded as merely hypotheses, requiring confirmation in subsequent studies. (Parker 2006 at 580; *see also* Hernandez at 260 ("subgroup analysis is a secondary, hypothesis-generating exercise to stimulate further research"); Lagakos at 1668 ("Post hoc subgroup analyses undertaken because of an intriguing trend seen in the results or selective reporting of certain subgroup analyses can be especially misleading.").)

Moreover, a *post hoc* analysis cannot prove a causal relationship.[6] Again, it is simply a tool to generate hypotheses for future study. (*See* Elliott H.L., *Post hoc analysis: use and dangers in perspective*, J. OF HYPERTENSION 1996, 14 (suppl 2):S21-S25 at S21 ("Post hoc

---

[5] *See* Hernandez AV, et al., *Subgroup analyses in therapeutic clinical trials: Are most of them misleading?*, AM. HEART J. 2006; 151:257-64; Lagakos SW, *The Challenge of Subgroup Analyses - Reporting without Distorting*, N. ENGL. J. MED. 2006; 354:1667-69; Parker AB, Naylor CD, *Interpretation of subgroup results in clinical trial publications: Insight from a survey of medical specialists in Ontario, Canada*, AM. HEART J. 2006; 151:580-8; Parker AB, Naylor CD, *Subgroups, treatment effects, and baseline risks: some lessons from major cardiovascular trials*, AM. HEART J. 2000; 139:952-61; Sleight P., *Debate: Subgroup analyses in clinical trials - fun to look at, but don't believe them!*, CURR. CONTROL TRIALS CARDIOVASC. MED. 2000;1:25-27.

[6] In fact, "[e]mploying the results of group-based studies of risk to make a causal determination for an individual plaintiff is beyond the limits of epidemiology." *See* Fed. Judicial Ctr., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (2d ed. 2005) at 481.

analysis is of major importance in the generation of hypotheses. However, the hypothesis is created by the analysis and has not been proved by any 'experiment'."").) Here, the *post hoc* analysis of patients who experienced high blood pressure simply creates the hypothesis that such patients are at higher risk of cardiovascular events on Vioxx than the general population – it does nothing to prove it. Similarly, the *post hoc* analysis of persons with symptomatic atherosclerotic cardiovascular disease cannot prove that the risks were higher for these patients. Indeed, if such analyses were sufficient, every spurious finding in every clinical trial would be self-proving.

"The results of a post hoc analysis should be viewed with considerable skepticism and, in advance of confirmation by other appropriately designed prospective studies, should not be regarded as definitive proof." (*Id.* at S21.) Indeed, the APPROVe CSR warns against relying on potentially spurious subgroup analyses, "Caution must be exercised when interpreting these post hoc results." (APPROVe CSR at 27, attached hereto as Ex. D.) For Dr. Zipes to argue that the subgroup analysis in APPROVe proves that patients with prior symptomatic atherosclerotic disease or those who experienced elevated blood pressure are at an increased risk from Vioxx distorts the data in a way that is scientifically improper and creates a significant risk that the jury will be confused and misled. The Court should exclude all such evidence or argument.

### C. DR. ZIPES' IRRELEVANT AND UNDULY PREJUDICIAL OPINIONS MUST BE EXCLUDED.

#### 1. Dr. Zipes' Opinions About What Merck Knew And What Merck Should Have Done Are Beyond Dr. Zipes' Knowledge And Unduly Prejudicial.

Dr. Zipes purports to know what Dr. Scolnick and Merck knew, at various times, about the risks allegedly associated with Vioxx. (Zipes Rpt. at 23.) In addition, Dr. Zipes opines that Merck should have conducted clinical trials designed to study the alleged cardiovascular risks of Vioxx. Testimony on both of these subjects is grounded neither in Dr. Zipes' personal

7

knowledge nor his expertise. Moreover, it is unduly prejudicial and will not assist the jury. Expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).

First, the Court should exclude Dr. Zipes' opinion testimony about Merck's state of mind. At his deposition, Dr. Zipes admitted that he does not know anything about this issue – but in the next breath stated that he may testify on the subject anyway:

> A: You are asking me to interpret what Merck's thinking was and I cannot do that.
>
> Q: You are not going to come to trial and state what is Merck's state of mind or motivation; right?
>
> A: I don't know. It would depend on the questions that I am asked.

(Zipes Dep. at 68:21-69:1.)

Dr. Zipes bases his opinions about Merck's "state of mind" on a selective set of internal Merck documents given to him by plaintiff's counsel. (Zipes Dep. at 76:20-24.) From these documents, he draws inferences about the state of Merck's and Dr. Scolnick's knowledge about the cardiovascular risks allegedly associated with Vioxx. For example, he opines that Merck "was actually aware" of the prostacyclin/thromboxane theory as early as 1997, and that Dr. Scolnick accepted this theory as an explanation for the excess cardiovascular events in VIGOR. (Zipes Rpt. at 23.) Examining and drawing factual inferences from the evidence are roles left properly to the trier of fact. The jury does not need Dr. Zipes' assistance in carrying out that responsibility.

Second, the Court should exclude Dr. Zipes' opinion that, based on what he claims Merck knew in 2000, "Merck should have initiated a trial powered to conclusively test the safety

8

of Vioxx in a population that would be representative of the subjects who were using the drug, i.e., those with multiple risk factors for cardiovascular disease." (Zipes Rpt. at 23.) Evidence relating to studies that were never performed is not probative of any issue of consequence in this case. The outcome of any such study is completely a matter of conjecture. The same is true of any testimony offered to show that the clinical studies that were completed should have been designed differently. All such testimony lacks a reliable foundation, and would result in undue prejudice to Merck, juror confusion, and delay if admitted.

> 2. **Dr. Zipes' Testimony Regarding His Meetings With Other Cardiologists Must Be Excluded As Hearsay And Unduly Prejudicial.**

Dr. Zipes intends to offer testimony that, after he was retained as an expert, he had various meetings with other doctors, all of whom he claims agreed with his opinions. Specifically, Dr. Zipes claims that he met with six other cardiologists and plaintiff's counsel over the course of two days to discuss the alleged cardiovascular risks of Vioxx and that all six of these doctors agreed with him that Vioxx increases the risk of heart attack. (Zipes Dep. at 31:11-36:14.) Merck does not assert that Dr. Zipes may not rely on materials that are ordinarily relied upon by experts in the field of cardiology, but rather Merck objects to any testimony that other doctors or experts agreed with Dr. Zipes' opinions. Any testimony regarding what these other doctors said or thought about Vioxx is hearsay. FED. R. EVID. 802. Merck has not had any opportunity to cross-examine these individuals and there is no independent evidence as to what they thought or if they indeed agreed with Dr. Zipes about the risks of Vioxx. There is no proper purpose for this testimony, and it appears to be an attempt by the plaintiff to bolster Dr. Zipes' testimony. Admitting Dr. Zipes' hearsay testimony that these other doctors all agreed with him would be unduly prejudicial to Merck and therefore must be excluded. FED. R. EVID. 403.

9

### 3. Dr. Zipes' Testimony About Dr. Kronmal's Report Must Be Excluded.

In proffering his "expert" opinions, Dr. Zipes relies on the expert report of another one of plaintiff's retained experts, Dr. Kronmal.[7] (*See* Zipes Dep. at 79:13-80:9; 211:5-213:20; 231:22-232:6.) Whether Dr. Kronmal testifies at trial or not, Dr. Zipes must be precluded from putting Dr. Kronmal's conclusions into evidence. If Dr. Kronmal does not appear at trial, allowing Dr. Zipes to rely on Dr. Kronmal's untested conclusions would be manifestly unfair and prejudicial to Merck. *See Polythane Sys. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993) (holding that testimony relating to a nontestifying expert's report must be excluded because "[t]here was no opportunity to cross-examine [the expert] regarding the methodology he employed, statistical discrepancies in his report, or any other matters which might illuminate shortcomings in his work"). Indeed, because Dr. Zipes has not made any attempt to verify the accuracy of Dr. Kronmal's findings or calculations, his testimony would simply be a regurgitation of Dr. Kronmal's opinions with no opportunity for effective cross-examination. (Zipes Dep. at 79:13-80:9.) If plaintiff seeks to have Dr. Kronmal's conclusions put before the jury it is Dr. Kronmal – not Dr. Zipes – who should testify about the contents of his report, so that Merck has an adequate opportunity to cross-examine him concerning his methods and conclusions.

### IV. CONCLUSION.

For the reasons stated above, Merck respectfully requests that this Court grant Merck's Motion for Order Excluding Testimony of Douglas Zipes, M.D.

---

[7] Merck has fully set out the reasons why Dr. Kronmal's calculations are scientifically unreliable and prejudicial in its Motion for Order Excluding Testimony of Richard Kronmal, Ph.D., and hereby incorporates those arguments by reference.

Dated:  August 14, 2006                                  Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

824030v.1

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Memorandum in Support of Motion of Merck for Order Excluding Testimony of Douglas P. Zipes, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

                                                  */s/ Dorothy H. Wimberly*
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER
                                                  WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, Louisiana  70130
                                                  Phone:  504-581-3200
                                                  Fax:     504-581-3361
                                                  dwimberly@stonepigman.com

                                                  Defendants' Liaison Counsel

824030v.1