# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")**
**FOR ORDER EXCLUDING TESTIMONY OF JERRY AVORN, M.D.**

**(EXPERT CHALLENGE NO. 7)**

Merck moves to exclude the testimony of Jerry Avorn, M.D., a pharmacoepidemiologist

who has been designated as an expert witness in this case.  In *Barnett v. Merck*, where Dr. Avorn

was also designated by plaintiff, the Court denied Merck's motion and permitted Dr. Avorn to

testify.  (*See* July 25, 2005 Tr. in *Barnett v. Merck* at 4:15-19.)  Merck hereby reasserts its

objections to the portions of Dr. Avorn's testimony that are either improper or outside the scope

of his area of expertise, as explained further below, in order to preserve Merck's record for

appeal.   In addition, Merck hereby moves to exclude Dr. Avorn's causation opinions, for the reasons articulated in Merck's concurrently-filed Motion to Exclude Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis.

According to his expert report, Dr. Avorn has been retained "to consider the question of whether rofecoxib (Vioxx®) increases the risk of cardiovascular disease, and to assess the methods by which Merck evaluated and managed this issue throughout the development and marketing of Vioxx." (Expert Report of Jerry Avorn, M.D. ("Avorn Rpt.") at 2, attached hereto as Ex. A.)  Amazingly, only one paragraph in Dr. Avorn's 25-page report addresses the risks associated with Vioxx, a subject upon which expert testimony is appropriate and which is within the realm of Dr. Avorn's expertise in pharmacoepidemiology.  (*See id.* at 19, Section VI.)  The rest of his report is devoted to Dr. Avorn's opinions on "the methods by which Merck evaluated and managed this issue" – including his interpretation of internal Merck documents, his evaluation of Merck's conduct, his speculation about Merck's state of mind, and his judgment that Merck did not act responsibly.  This testimony is neither grounded in "scientific, technical, or other specialized knowledge" nor necessary, from the jury's point of view, "to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  It is nothing more than "spin" – counsel's attempt to put their arguments before the jury under the guise of expert testimony. Under Rules of Evidence 702 and 403 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the testimony must be excluded.[1]

## I.    LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at

---

[1] A number of plaintiff's other experts – including Dr. Farquhar and Dr. Zipes – proffer similar testimony that is also inadmissible under *Daubert* and Rule 702.  Merck has moved to exclude all of this testimony in separate motions, filed concurrently herewith.

824133v.1

pages 3-5 of the Memorandum in Support of the Motion of Merck for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, filed concurrently herewith and incorporated herein by reference.

## II.   THE COURT SHOULD EXCLUDE DR. AVORN'S SPECULATIVE OPINIONS ON NON-SCIENCE ISSUES.

Rule 702 allows expert opinion testimony that will "assist the trier of fact," provided it comes from a witness with "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. It does not permit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). As courts have recognized, "the requirement of 'knowledge' guards against the admission of subjective or speculative opinions." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004); *see also Daubert*, 509 U.S. at 589-90 ("the word 'knowledge' connotes more than subjective belief or unsupported speculation"). Rule 702 also "ensures that expert witnesses will not testify about lay matters which a jury is capable of understanding and deciding without the expert's help." *In re Rezulin*, 309 F. Supp. 2d at 541 (citation and internal quotations omitted).

Contrary to these well-settled principles, Dr. Avorn apparently intends to proffer "expert" testimony that consists of little more than his personal views on: (i) the Vioxx "story"; (ii) what Merck knew or should have known about the risks allegedly associated with Vioxx; (iii) Merck's alleged suppression of information about Vioxx; and (iv) regulatory issues, including Merck's negotiations with the FDA over Vioxx labeling. These opinions are not based on Dr. Avorn's "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. In fact, they are not related in any way to Dr. Avorn's area of expertise, pharmacoepidemiology – which, as noted above, only informs one paragraph in his expert report. Nor would Dr. Avorn's opinions on

3

these non-science issues help the jury determine any issue of consequence in this case.  Mr.

Smith's claims should be resolved on their merits, not based on a retained expert's subjective, *ex*

*post facto* opinions about what Merck could or should have done differently.  Merck thus moves

the Court to exclude Dr. Avorn's improper opinion testimony in full.

> **A.**     **Dr. Avorn's Recounting Of The Vioxx "Story" Is Improper Expert**
> **Testimony That Must Be Excluded.**

The vast majority of Dr. Avorn's expert report is devoted to chronicling the "[a]vailable

evidence prior to FDA approval of Vioxx" and "[a]dditional clinical trial evidence of risk

following FDA approval of Vioxx."  (*See* Avorn Rpt. at 2-21.)  He summarizes this "evidence,"

given to him by plaintiff's counsel, and provides a timeline starting in 1996 and ending with

Merck's voluntary withdrawal of Vioxx from the market in 2004.  This narrative, which is

essentially a collection of excerpts from internal Merck documents, does not qualify as "expert"

testimony.[2]    It is inadmissible on a number of grounds.

First, Dr. Avorn's description of selected events is "merely a narrative of the case which

a juror is equally capable of constructing." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at

551 (citation and internal quotations omitted).  His "spin" on the facts, apparently intended to

bolster plaintiff's case, "does no more than counsel for plaintiff will do in argument, *i.e.*,

propound a particular interpretation of [Merck's] conduct."  *Id.* (citation omitted).  Such

advocacy on the part of a paid expert poses a host of problems, as the *In re Rezulin* court

recognized:

> A practice reminiscent of wager of law has become fashionable among some
> well-financed litigants – the engagement of "expert" witnesses whose intended
> role is more to argue the client's cause from the witness stand than to bring to the

---

[2] The sources of Dr. Avorn's opinions are clear from a cursory review of the "Materials
Considered" section of Dr. Avorn's expert report.  (Avorn Rpt., "Materials Considered," pp. 1-
9.)  This list is comprised almost entirely of internal Merck documents.

> fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit. These "experts" thus are loosely analogous to compurgators, also known as oath helpers, in that they lend their credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue.

309 F. Supp. 2d at 538.

Allowing Dr. Avorn to filter and feed the facts of this case to the jury would be highly improper. This testimony does not require any "scientific, technical, or other specialized knowledge," and it would not assist the trier of fact. Instead, it would simply give Dr. Avorn a platform to act as an advocate for the plaintiff. *See id.* at 546 (excluding expert testimony addressing corporate state of mind because otherwise experts would "improperly . . . assume the role of advocates for the plaintiffs' case"); *see also Tanner v. Westbrook*, 174 F.3d, 542, 548 (5th Cir. 1999); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d at 616; *cf. Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (expert accountant was not "specially equip[ped] to divine what [defendant] truly believed" about reliability of financial reports; any opinions offered in that regard are "at worst, rank speculation" and at best, "credibility choices that are within the province of the jury"). It is for counsel – not witnesses, and certainly not retained experts – to present argument at trial. To allow Dr. Avorn to do so would inevitably confuse the jury and run afoul of Rules of Evidence 702 and 403.

Second, to the extent the underlying facts detailed in Dr. Avorn's report are admissible, his regurgitation of these facts is cumulative and would waste time. *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378, 382 (5th Cir. 1969) ("It is well established that evidence which is merely repetitious and cumulative of testimony already introduced may be excluded by the court.") Foundational material is properly put into evidence only through the testimony of percipient witnesses or through documentary evidence. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (excluding expert's "historical commentary of what happened").

824133v.1

There is no evidence that Dr. Avorn has any personal knowledge of any of the facts he has included in his narrative of the case, other than knowledge acquired from his review of the documents given to him by plaintiff's counsel in anticipation of this litigation.[3]  (*See, e.g.*, June 16, 2006 Deposition of Jerry Avorn, M.D. ("Avorn 6/16/06 Dep.") at 453:12-23 ("Q:  Am I right, sir, that you don't have any personal knowledge of the facts described in [internal Merck documents]; you're just relying on those documents, true?  A:  Correct."), attached hereto as Ex. B.)  An expert such as Dr. Avorn who "lacks personal knowledge may only testify about the underlying facts if he is actually bringing to bear his scientific expertise" – which Dr. Avorn is not doing here, since his narrative does not draw on his background in pharmacoepidemiology. *See In re Rezulin*, 309 F. Supp. 2d at 554 (citation and internal punctuation omitted).

**B.      The Court Should Exclude Dr. Avorn's Opinions About What Merck Knew Or Should Have Known.**

In offering opinions on "the methods by which Merck evaluated and managed [the cardiovascular] issue throughout the development and marketing of Vioxx" (Avorn Rpt. at 2), Dr. Avorn apparently intends to testify about what Merck knew about the alleged cardiovascular risks associated with Vioxx, what Merck did or did not do given this knowledge, and whether Merck's actions were reasonable.  (June 15, 2006 Deposition of Jerry Avorn, M.D. ("Avorn 6/15/06 Dep.") at 180:2-180:14, attached hereto as Ex. C.)  Yet, as Dr. Avorn himself concedes,

---

[3] Courts should be especially cautious in dealing with expert opinions developed solely for the purpose of litigation. *Daubert v. Merrell Dow Pharm., Inc.,*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying. That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture. But in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office."); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001).

824133v.1

he is not an expert on the "state of mind" of a pharmaceutical company and has no idea "what people believed or didn't believe." (*Id.* at 56:22-57:1; 279:6-15.) He also admits that there are "no standards" by which once can measure the intent of a pharmaceutical company and no "statistical test for reasonable behavior." (*Id.* at 59:13-60:12; 191:7-15 ("Q: What statistics have you applied to demonstrate that Merck's conduct concerning Vioxx was unreasonable? A: Well, it's not like there's a statistical test for reasonable behavior.").)

Expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise." *In re Rezulin*, 309 F. Supp. 2d at 546. Yet Dr. Avorn's expert report is brimming with exactly this kind of impermissible testimony. He opines, *inter alia*, that:

- There is "clear evidence that Merck officials had been aware of th[e] risk [allegedly associated with Vioxx] and failed to take reasonable action to address it. (Avorn Rpt. at 2.)

- The knowledge about the dangers of selective COX inhibition "was clearly in place when Merck was developing Vioxx." (*Id.* at 3.)

- "Merck anticipated an increase of cardiovascular events in patients taking Vioxx." (*Id.*)

- "[T]he Merck officials who designed the drug's clinical trial program were aware of the drug's potential for cardiovascular harm." (*Id.* at 4.)

- "Knowing what it knew then, Merck did not respond to the [Watson] analysis as a potential important signal to guide the planning of future clinical trials . . . ." (*Id.* at 5.)

- "[A]s the VIGOR trial was being conducted, the company's scientists were aware that patients enrolled in the Vioxx arm could well have a higher rate of serious arterial embolic events." (*Id.* at 8.)

- "A year after the publication of VIGOR, . . . internal Merck correspondence revealed that senior officials were quite aware of the problem [that Vioxx allegedly caused an increase in cardiac events]." (*Id.* at 16.)

This and other similar testimony is inadmissible and must be excluded under Rule 702.

824133v.1

As one court reasoned, in rejecting testimony from an expert on a pharmaceutical manufacturer's "state of mind":

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000). Dr. Avorn lacks this very knowledge and experience. Accordingly, the Court should exclude his speculative testimony about what Merck knew and when.

The fact that Dr. Avorn even offers this testimony is incredible, given that his opinions on the same subject have been excluded by other courts. In the Phen-fen litigation, the United States District Court for the Eastern District of Pennsylvania ruled that Dr. Avorn lacked the requisite qualifications to opine on the "corporate intent" of the defendant – and that, in any case, such testimony was unreliable and thus inadmissible. *Id.*, at *30. The court further noted that "[t]he question of intent is a classic jury question and not one for experts." *Id.*, at *29. The same is true here. Dr. Avorn's testimony on Merck's state of mind is improper and unnecessary, in that it "describes lay matters which a jury is capable of understanding and deciding without [an] expert's help." *In re Rezulin*, 309 F. Supp. 2d at 546 (citation and internal quotations omitted). Dr. Avorn concedes as much. (Avorn 6/15/06 Dep. at 192:17-193:17 (admitting that, in assessing whether Merck's conduct was reasonable, there are issues "which any person with common sense can interpret" and "a juror could handle on their own").) The Court should exclude all of Dr. Avorn's proffered testimony on Merck's alleged "state of mind."

### C.   Testimony About Merck's Alleged Suppression Of Information Is Inadmissible.

For similar reasons, the Court should preclude Dr. Avorn from testifying about Merck's

8

alleged failure to provide the medical community or the FDA with complete and accurate information on the risks associated with Vioxx. (*E.g.*, Avorn Rpt. at 15 ("Merck did not provide a complete and accurate account of these study outcomes to FDA until after the drug had been taken off the market."); 19-21 (Section VII, "Inaccurate communication of risks to physicians"); 21-24 (Section VIII, "Negotiations with FDA over labeling and promotion").) Dr. Avorn has no specific knowledge of what any of the individual physicians involved in this litigation knew about Vioxx, or what factors went into their decisions to prescribe the drug. (Avorn 6/15/06 Dep. at 164:20-165:4 ("I can't get into the head of a given doctor that I've never met"); Avorn 6/16/06 Dep. at 758:13-759:7.) Nor has he done any research on the subject. (Avorn 6/16/06 Dep. at 758:13-16.) Any testimony from him about what safety information Merck communicated to physicians – and how this information impacted their prescribing decisions – is thus utterly speculative and inadmissible.

> Dr. Avorn's testimony on this subject was excluded from the *In re Rezulin* case:

> To the extent that the challenged testimony relates, as plaintiffs contend, to the factual accuracy of [defendant's] clinical data submissions to the FDA, it constitutes lay matter that the fact-finder can understand without the assistance of experts, regardless of [how] much experience these witnesses have with clinical trials. Dr. Avorn's testimony illustrates the point. His view that [defendant] failed to disclose information to the FDA boils down to a contention that [defendant] "buried" certain lab results in an Appendix to the Rezulin NDA. This opinion does not implicate Dr. Avorn's expertise in pharmacoepidemiology. It is a simple inference drawn from his review of two documents – which, if admissible, plaintiffs' counsel may present directly to the fact-finder while arguing his or her view as to their significance. Expert testimony interpreting [defendant's] conduct in disclosing information to the FDA therefore will not assist the fact-finder in these cases.

309 F. Supp. 2d at 549-50. This Court should likewise preclude Dr. Avorn from testifying about the manner in which Merck communicated information about the risks and benefits of Vioxx to the medical community and to the FDA should be excluded.

### D.  Dr. Avorn Is Not Qualified To Opine On Merck's Negotiations With The FDA Over Vioxx Labeling And Promotion.

Dr. Avorn's purported testimony on regulatory issues – including Merck's "[n]egotiations with FDA over labeling and promotion" (*see* Avorn Rpt. at 21-24) – is also inadmissible.  By Dr. Avorn's own admission, he is not a regulatory expert.  *In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at \*36 ("Dr Avorn admits that he is not an expert in the regulatory field.").  He has never been employed by the FDA and has never prepared or approved a pharmaceutical product's labeling.  (Avorn 6/15/06 Dep. at 326:23-327:2; Avorn 6/16/06 Dep. at 678:5-10.)  He has no personal knowledge about Merck's labeling decisions concerning Vioxx. (Avorn 6/16/06 Dep. at 696:8-18.)  Nor does his training as a pharmacoepidemiologist qualify him to weigh in on:  (i) the process by which Merck and the FDA revised the Vioxx label following VIGOR; (ii) whether the Vioxx label provided adequate information to health professionals; (iii) whether Merck was concerned "about the effect of a possible label change on increasing physician awareness of [Vioxx's] cardiovascular hazards"; (iv) whether risk information provided on a prescription drug label "can heavily influence a drug's sales"; (v) whether, "in the absence of a negotiated agreement with the FDA concerning the contents of its official label," Merck could have "notified physicians or consumers about the emerging data about the risks of Vioxx"; and (vi) whether the post-VIGOR Vioxx label was adequate.  (Avorn Rpt. at 21-24.)  Again, other courts have recognized that Dr. Avorn is not qualified to opine on these issues.  *In re Rezulin*, 309 F. Supp. 2d at 549 (finding Dr. Avorn "not qualified to render opinions describing or interpreting FDA regulations, or commenting on [the defendant's] adherence to those regulations"); *In re Diet Drugs*,  2000 U.S. Dist. LEXIS 9037, at \*36 (finding that, although Dr. Avorn is "fully qualified" in his specialty, "that does not qualify [him] to speak as an expert in the field of the requirements of the federal regulations regarding labeling

and warnings for FDA approved drugs"). This Court should also exclude Dr. Avorn's testimony on regulatory matters.

## III.   THE COURT SHOULD PRECLUDE DR. AVORN PARROTING THE CONCLUSIONS OF DR. RAY AND PROFESSOR KRONMAL.

Finally, Dr. Avorn should not be permitted to offer any opinion that two Merck-conducted randomized clinical trials involving patients with Alzheimer's disease, Protocol 078 and Protocol 091, showed any significant difference in adverse cardiovascular events among patients taking Vioxx versus those on placebo.  Dr. Avorn made it clear in his discovery deposition that he relies solely on reports from Richard Kronmal and Wayne Ray, two other experts who have been retained by plaintiffs, for his opinion on this topic.  (*See, e.g.*, Avorn 6/15/06 Dep. at 31:8-21; Avorn 6/16/06 Dep. at 454:10-455:4.)  These experts, like Dr. Avorn, are retained plaintiff's experts.  Their analysis of the Alzheimer's data has not been published in any peer-reviewed journal.  Moreover, neither Professor Kronmal's nor Dr. Ray's opinions or reports are referenced in the substance of Dr. Avorn's expert report or listed among the materials Dr. Avorn considered in forming his expert opinions.  (*Id*. at 455:5-21.)  In fact, Dr. Avorn does not even recall having read Professor Kronmal's expert report.  (Avorn 6/15/06 Dep. at 24:14-24; 25:23-26:12.)  And he cannot address Dr. Ray's analysis in any detail.  (Avorn 6/16/06 Dep. at 504:21-505:7.)  Given Dr. Avorn's lack of personal knowledge and the fact that he failed to disclose his reliance on Professor Kronmal's and Dr. Ray's opinions in his expert report, any testimony from him based on these other experts' opinions must be excluded.

## IV.   CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court grant its Motion for Order Excluding Testimony of Jerry Avorn, M.D.

11

824133v.1

Dated:  August 14, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
Emily Thacher-Renshaw
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

824133v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Merck for Order Excluding Testimony of Jerry Avorn, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

824133v.1