UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING TESTIMONY OF CORNELIA PECHMANN, Ph.D.**

**(EXPERT CHALLENGE NO. 3)**

I.  **INTRODUCTION.**

Before the *Barnett* trial, the Court imposed significant limitations on the testimony of plaintiff's marketing expert, Professor Cornelia Pechmann, and deferred ruling on a number of challenges to her testimony. The Court ruled that:

- Professor Pechmann, who lacks any medical training, is not qualified to testify regarding the adequacy of warnings to doctors. (7/6/06 Hearing Transcript in

1

824125v.1

> *Barnett v. Merck* at 53:15-18, attached hereto as Ex. A);

- Professor Pechmann is not qualified to testify about what doctors actually knew. (*Id.* at 54:10-14); and

- The Court "basically agree[d]" with Merck that Professor Pechmann should not be able to testify that Merck's marketing of Vioxx was misleading, but deferred ruling on the issue. Instead, the Court flagged the issue for further consideration at the time that Professor Pechmann testified.[1] (*Id.* at 55:12-56:24.)[2]

The Court should adopt these same rulings in this case. In addition to keeping these limitations in place, the Court should also rule:

- Professor Pechmann is not permitted to testify on "what Merck knew or when Merck knew it," as these are issues for the jury. Accordingly, she cannot testify – as she opines in her report – that "Merck's marketing executives knew or should have known that Vioxx posed a potential cardiovascular risk." And because that opinion is the lynchpin for her opinion that Merck's marketing materials were *misleading* because they did not disclose this risk that she claims Merck knew, the Court should preclude her from testifying that Merck's marketing was *misleading*.

- Merck's awareness of a *potential* risk is irrelevant, in any event. Merck had a duty to warn only of *known* risks, not *potential* risks. *Doe v. Miles Labs., Inc.*, 927 F.2d 187, 194-95 (4th Cir. 1991); *Carlin v. Super. Ct.* 13 Cal 4th 1104, 1108-09 (1996). Professor Pechmann should be precluded from testifying on the subject for that additional reason.

- Professor Pechmann should not testify about what doctors *other than* plaintiff's doctors thought or knew. Plaintiff also hopes to use Professor Pechmann to talk about otherwise inadmissible "marketing reports." These are surveys and reports about what certain doctors *other than Mr. Smith's prescribing physician* knew about cardiovascular risks or recalled about the information they received from

---

[1] In *Barnett*, the plaintiff ultimately elected not to call Professor Pechmann to the stand, so the Court had no occasion to rule further.

[2] The Court did rule in *Barnett* that Professor Pechmann was qualified to testify about marketing and that it would be helpful to the jury to hear about how an integrated marketing campaign works. That is similar to a pretrial ruling about Professor Pechmann's testimony in a California Vioxx case, *Grossberg v. Merck*, where Judge Chaney ruled that Professor Pechmann could not testify on causation, or Merck's state of mind, motive, or intent, and limited the testimony to "neutral" testimony on general or hypothetical marketing concepts. (June 26, 2006 *Grossberg v. Merck* Tr. at 595:27-596:15, attached hereto as Ex. B). Unfortunately, as discussed below, Professor Pechmann's testimony in the California case was more like a closing argument about Merck documents than neutral testimony about integrated marketing.

2

> sales representatives. That information is irrelevant and highly prejudicial because Professor Pechmann intends to persuade the jurors that they can ascribe the understandings and experiences of these *other* physicians to plaintiff's doctor, even though he has testified otherwise.

- Professor Pechmann is unqualified to render an opinion on whether Merck's marketing complied with FDA regulation.

- Professor Pechmann should not discuss how much money Merck spent on marketing.

Professor Pechmann's opinions regarding the nature of Merck's marketing is irrelevant and should be excluded. Kentucky has adopted the learned intermediary doctrine and therefore the only relevant issue in terms of marketing is what information was provided to Dr. Grefer (Mr. Smith's prescribing physician). Dr. Grefer is fully capable of testifying about the information provided to him by Merck and the jury will not be assisted by an "expert" attempting to explain this testimony.

Plaintiff apparently intends to use Professor Pechmann – similar to the strategy that was used in her California testimony – primarily as a vehicle to put on a "Merck document show" and to argue his case through an expert witness. Plaintiff's lawyers have given her a selected group of documents – a subset of the ones they intend to offer in evidence – that Professor Pechmann presumably will describe to the jury and from which she will "conclude" that Vioxx® increases cardiovascular risk, that Merck knew it, and that Merck engaged in a misleading marketing campaign designed to conceal Vioxx's supposed risks. In this way, if permitted to testify, Professor Pechmann will act as a reader of plaintiff's attorneys' favorite documents, and will seek to spin those documents to suit plaintiff's purposes. This exercise will not aid the jury.

**II.   LEGAL STANDARD**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-5 of the Memorandum in Support of the Motion of Merck for Order Excluding Opinion

3

Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, filed concurrently herewith and incorporated herein by reference.

### III.    DR. PECHMANN IS NOT QUALIFIED TO OPINE ON CAUSATION.

Professor Pechmann's report demonstrates that she is not qualified to opine on causation. In the body of her report, at paragraph 16, she says:

> Appendix A to my report discusse[s] in greater detail my opinion regarding what Merck's marketing executives knew or should have known about Vioxx's potential cardiovascular risk and my bases for that opinion. To form that opinion, I reviewed thousands of pages of documents provided by the law firm of Robinson, Calcagnie & Robinson on Vioxx's potential cardiovascular risk, some of which are cited in Appendix A.

(Pechmann Report at ¶ 16, attached hereto as Ex. C.) In Appendix A, she opines that "Merck's marketing executives knew or should have known that Vioxx posed a potential cardiovascular risk. I form this opinion based in part on the documents [*i.e*, the documents provided by Plaintiff' counsel] discussed below." (*Id.* at Appendix A, ¶ 1.)

In the first numbered paragraph of Appendix A, Professor Pechmann discusses the VIGOR study from which Professor Pechmann concludes, "Merck knew or should have known that Vioxx posed a potential cardiovascular risk to all patients, and that Vioxx's risk potential was greatest among patients with pre-existing cardiovascular problems." (*Id.*)

As Professor Pechmann notes in her report, at the time the VIGOR results became available, it was unclear whether the difference in the heart attack rate was due to some adverse effect of Vioxx, a cardioprotective effect of naproxen, the play of chance, or some combination. Professor Pechmann concedes that one interpretation of the VIGOR results could be that naproxen was cardioprotective, not that Vioxx was harmful. (May 26, 2006 Deposition of Cornelia Pechmann, Ph.D. ("Pechmann May Dep.") at 261:7-14 ("That was a possible explanation, yes."), attached hereto as Ex. D.) Thus, VIGOR did not establish that Vioxx does

increase cardiovascular risk. To investigate this issue, Merck reviewed existing data (which did not show an increased cardiovascular risk due to Vioxx), and monitored additional trials for signs of increased cardiovascular risk.

### A. To the Extent Professor Pechmann Intends Only to Testify that Merck Knew of a *Potential* Risk, Her Testimony is Irrelevant.

A drug manufacturer has a duty to warn only of *known* risks, not potential risks. *Carlin v. Super. Ct.,* 13 Cal. 4th at 1108-09 (manufacturers are not strictly liable for injuries caused by their failure to give warning of dangers that were unknown to the scientific community at the time they manufactured and distributed the product); *see also Doe v. Miles Labs., Inc.,* 927 F.2d at 191-94 (no liability for failing to warn of danger for which no medical consensus had been reached). To the extent Professor Pechmann's testimony is that Merck failed to disclose a "potential" but unproven risk, it is irrelevant and should be excluded on that basis. For instance, Professor Pechmann has testified that it wasn't known whether Vioxx did or did not cause heart attacks. (Pechmann June 15, 2006 Deposition at 97:7-14, attached hereto as Ex. E.) "The application of the failure-to-warn theory to pharmaceuticals requires determinations whether available evidence established a causal link between an alleged side effect and a prescription drug, whether any warning should have been given, and, if so, whether the warning was adequate." *Carlin*, 13 Cal. 4th at 1116. In addition, Dr. Pechmann's testimony should be excluded under Rule 403 as prejudicial, because to allow the testimony might give the jury the misimpression that failure to disclose an unknown risk creates liability, and as an undue waste of time.

### B. Professor Pechmann Is Not Qualified to Opine that VIGOR Proved an Actual Increased Risk.

Professor Pechmann is not qualified to opine regarding causation. Her training and experience is in marketing. She is not a doctor and has no medical training. (Pechmann May

5

Dep. at 117:23-25.)  She has never published or done any research regarding the medical risks of prescription drugs.  (*Id.* at 118:7-10.)  She has never published any scientific research outside of the field of marketing.  (Curriculum Vitae of Cornelia Pechmann, Ph.D., attached hereto as Ex. F.)  Indeed, she concedes she is not qualified:

> Q:  Would you agree that you are not an expert in the following areas: assessing medical risks associated with prescription drugs?
>
> A:  Yes, I agree I am not an expert.

(Pechmann May Dep. at 120:13-16.)  She is grossly unqualified to testify on causation.

### C. Merck's Knowledge and State of Mind Are Not Proper Topics for Expert Testimony.

As discussed more fully in the concurrently-filed Memorandum in Support of the Motion of Merck for Order Excluding Testimony of Jerry Avorn, M.D., incorporated herein by reference, expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  Professor Pechmann has no special expertise that enables her to determine Merck's state of mind and therefore her opinions concerning Merck's knowledge about the cardiovascular risks of Vioxx (and its intent with respect to marketing Vioxx) must be excluded as improper subjects for expert testimony.

### D. Professor Pechmann's Opinions Regarding Merck's Knowledge Will Not Assist the Trier of Fact.

In reaching her opinion regarding Merck's knowledge, Professor Pechmann performed a limited review of an incomplete set of documents.  Her conclusions based on these documents are nothing more then a presentation of the plaintiff's interpretations.  Professor Pechmann's testimony therefore will not assist the jury and must be excluded.

824125v.1

Professor Pechmann's review of documents was so limited that any conclusions she may have reached will fail to assist the jury. Not only was her review limited almost exclusively to documents selected for her by the plaintiff's attorneys (Pechmann Dep. at 136:22-137:2), but this review also omitted key documents, making any conclusions she has drawn incomplete and distorted. For example, although Professor Pechmann relies heavily on FDA reports in forming her opinion, she has no recollection of having reviewed the materials Merck submitted to the FDA – which are the materials on which the FDA reports were based. (Pechmann Dep. at 129:4-20.) Professor Pechmann argues that a review of these documents is unnecessary for determining what Merck actually knew about potential risks associated with Vioxx. (*Id.*) Yet, without having conducted her own review of the underlying documents, Professor Pechmann cannot possibly claim to know what Merck knew about the possible risks of Vioxx. Instead, she offers nothing more then her personal opinion of how the FDA documents should be interpreted.

Moreover, the documents Professor Pechmann uses in forming her opinion are understandable to the average layperson and thus are within the province of the jury. FED. R. EVID. 702; *see also United States v. Garcia*, 994 F.2d 1499, 1506 (10th Cir. 1993) (excluding expert testimony regarding the phrase "your old man" as it could easily be understood by the jury). The jury is just as capable as Professor Pechmann to view the documents in question. It can decide for itself what Merck knew or should have known about the alleged CV risks associated with Vioxx. Professor Pechmann's conclusions are exactly the type of opinion testimony cautioned against in *In re Rezulin Products Liability Litigation*, where the court warned:

> A practice reminiscent of wager of law has become fashionable among some well-financed litigants – the engagement of "expert" witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving

7

>   the issues of fact presented by the lawsuit. These "experts" thus are loosely analogous to compurgators, also known as oath helpers, in that they lend their credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue.

*In re Rezulin Prods. Liab. Lit.*, 309 F. Supp. 2d at 538.

Plaintiff's counsel will have their opportunity during closing arguments to argue to the jury how they believe the documents should be interpreted. But they should not be allowed to do so under the guise of expert testimony. Professor Pechmann should therefore be excluded from offering her opinion regarding the state of Merck's knowledge.

### IV. PROFESSOR PECHMANN'S OPINIONS REGARDING THE ALLEGEDLY MISLEADING NATURE OF MERCK'S ADVERTISING ARE INADMISSIBLE.

Professor Pechmann's opinions regarding Merck's marketing must be excluded on the additional grounds that they are irrelevant. Plaintiff has brought claims for negligence and gross negligence, common law fraud for failure to disclose and breach of warranties. General testimony regarding the nature of Merck's marketing is irrelevant for all of these claims and therefore the admission of Professor Pechmann's testimony will not assist the trier of fact.

Testimony regarding the general marketing of Vioxx is irrelevant to plaintiff's claims for negligence and gross negligence. These claims are based on Merck's alleged failure to warn of the cardiovascular risks associated with Vioxx. Kentucky, however, has adopted the learned intermediary doctrine. *Larkin v. Pfizer Inc.*, 153 S.W.3d 758, 770 (Ky. 2004). As such, Merck's duty to warn runs not to Mr. Smith, but to his prescribing physician, Dr. Grefer. *Id.* It is therefore irrelevant to these claims what the nature of Merck's advertising was generally. Instead, the proper focus is on what Dr. Grefer knew of the risks associated with Vioxx – a topic that Dr. Grefer is fully capable of testifying to for himself.

Likewise, testimony regarding the nature of Merck's marketing is irrelevant for plaintiff's claims of fraud.  To succeed on his common law fraud claim, plaintiff is required to present proof of detrimental reliance on a material misrepresentation or false statement.  *See, e.g., United Parcel Serv. Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky.1999).  There is no evidence that the plaintiff's physician was actually misled by Merck's marketing.  Professor Pechmann's opinions regarding the nature of the marketing are therefore irrelevant.

Moreover, the jury would not need Professor Pechmann to determine whether Merck's marketing was misleading.  Not once in her report or depositions does Professor Pechmann discuss any theory or "science" of marketing as it relates to Merck's marketing campaign.  This is despite her repeated assertions that the jury needs her expertise.  (*See e.g.* Pechmann May Dep. at 186:16-20; 212:4-12.)  Instead of focusing on the "science" of marketing, Professor Pechmann's opinions consist of collections of quotes taken from various documents, accompanied by Professor Pechmann's interpretation of their meaning.  For example, Professor Pechmann quotes extensively from press releases, promotional pieces and letters sent to doctors. (*See e.g.* Pechmann Report at ¶¶25(b), 26(c), 34(c).)  The jury is capable of examining these documents and determining for itself if the marketing was misleading.

Should Professor Pechmann be allowed to testify regarding general marketing, her opinion would consist primarily of summarizing internal Merck documents.  Professor Pechmann would offer the jury little more then a reader of documents attempting to put the veneer of expertise on plaintiff's interpretation of these documents.  In her testimony at the *Grossberg v. Merck* proceeding in the California Vioxx-related litigation, Professor Pechmann's testimony was limited to discussions of general marketing opinions.  (June 26, 2006 *Grossberg* Tr. at 595:27-296:15).  Her testimony on direct in the *Grossberg* proceedings consisted almost

entirely of reading from selected documents. (*See e.g.* July 7, 2006 *Grossberg* Tr. at 1971:18-1972:4, attached hereto as Ex. G (reading of a letter sent to Merck by the FDA).) The reading of selected passages of the documents for the jury adds nothing to their understanding and therefore should be excluded.

Professor Pechmann's testimony interpreting Merck's internal marketing research to show that Merck intentionally mislead through its marketing must also be excluded. The marketing research that Professor Pechmann seeks to explain to the jury consists of studies of the number of visits made by sales representatives to physicians, sales data, copy testing of promotional materials and perceptions of Vioxx of both physicians and consumers. (Pechmann May Dep. at 295:20-296:17.) Each of these categories of studies is inadmissible hearsay, irrelevant and highly prejudicial; it could not be presented to the jury directly. For instance, Professor Pechmann admits that one set of studies she relies on, those involving surveys regarding physician's recall of information conveyed by sales representatives does not prove what Merck's sales representatives actually said to the doctors being surveyed. At most it shows what the doctors – none of whom were plaintiff's doctor – said that they recalled being told by the sales representatives. (Pechmann June 15, 2006 Dep. at 99:10-16 ("Q: If I understand this testing, it's asking doctors what they recalled. That doesn't necessarily mean, Dr. Pechmann that something was not said; it's simply what the doctor recalled, correct? . . . A; That is true.").) Therefore, not only are these studies double hearsay, but they are completely irrelevant. By offering Professor Pechmann to testify about the contents of these studies, plaintiff is attempting to perform an end run around the rules of evidence. The Court should see through this ploy and exclude Professor Pechmann's testimony.

And the reasoning behind Professor Pechmann's opinions is so illogical that it cannot

assist the trier of fact. For example, Professor Pechmann seeks to opine that because thirty-one doctors expressed a generalized concern about the cardiovascular safety of Vioxx when interviewed in November 2002, that another small group of doctors in a different study must have had the same safety concerns although they were not questioned on the subject. (Pechmann June Dep. at 92:23-94:4.) This type of inference is illogical and should be excluded on the grounds that it cannot assist the jury.

And, to the extent that Merck's internal marketing studies may be admissible, Professor Pechmann's recital of their contents and conclusions to the jury will not assist them in deciding any pertinent facts. Professor Pechmann does not dispute the accuracy or competence of this research and admits in sworn testimony that it is "very good." (Pechmann May Dep. at 116:9-16.) Nor is Professor Pechmann questioning conclusions drawn in this research. In fact, all that Professor Pechmann offers the jury regarding the interpretation of these studies is a parroting of the conclusions – conclusions written in plain English and that can be easily understood. As Professor Pechmann does not offer any additional insight on this research, the jury is just as capable as she is of drawing its own conclusions from these reports.

V. **PROFESSOR PECHMANN MAY NOT TESTIFY THAT PLAINTIFF OR THEIR DOCTORS WERE MISLED BY THE MARKETING.**

It is possible that Professor Pechmann will attempt to offer an opinion regarding what plaintiff's physician knew about Vioxx – but any such opinion would be improper. In prior Vioxx litigation, Professor Pechmann has testified that despite not having read the depositions of the prescribing physicians, (Pechmann June Dep. at 11:25-12:4), she knows what doctors knew about the risks of Vioxx. (Pechmann June Dep. at 58:23-59:1 ("Q: Do you have any knowledge as to what any of those individuals [the prescribing physicians] knew about the risks and benefits of Vioxx at any point in time between 1999 and 2004? A: Yes.") Professor Pechmann believes

11

she can determine the effect of Merck's marketing on specific individuals based on a statistical analysis of how people generally were affected. (Pechmann May Dep. at 104:23-105:4.) In other words, if a study suggests most doctors believed something as a result of Merck's advertising, Professor Pechmann will say plaintiff's doctor must also have believed it. She offers this opinion even after testifying that different people react to the same advertisement differently. (*Id.* at 95:10-13.) She also claims to know of factors that entered into specific prescription decisions that even the prescribing physicians do not know. (*Id.* at 113:8-22.) This type of mind-reading is not the type of reliable expert opinion that is admissible under *Daubert* and therefore must be excluded.

## VI. PROFESSOR PECHMANN'S TESTIMONY ABOUT HOW MUCH MERCK SPENT ON MARKETING OR HOW MUCH MONEY IT MADE SELLING VIOXX ARE IRRELEVANT.

Professor Pechmann's proposed testimony about how much Merck spent on marketing and its revenue are irrelevant and prejudicial. Even if the Court believes that testimony on marketing is helpful to the jury, the same cannot be said about the amount of money spent on marketing. It will only be used by plaintiff's counsel to argue that more should have been spent on testing. No expert is needed to explain the facts of how much Merck spent on anything, including marketing.

## VII. PROFESSOR PECHMANN SHOULD BE PRECLUDED FROM OFFERING EXPERT TESTIMONY REGARDING REGULATORY MATTERS.

Professor Pechmann has testified that she considers herself an expert on FDA regulations on prescription drugs. (Pechmann May Dep. at 86:15-17.) However, she does not have the education or experience required to qualify her as an expert on this topic. She has never written on FDA regulations as they relate to pharmaceutical advertising. (*Id.* at 160:21-24.) She has never presented publicly on FDA regulations as they relate to pharmaceutical advertising. (*Id.* at

161:5-9.) In fact, her only experiences that implicate FDA regulations at all consists of consulting work on tobacco regulations, listening to FDA speakers at professional conferences, and reviewing papers that relate to the FDA. (*Id.* at 88:1-9; 88:23-89:8.) As Professor Pechmann lacks the relevant qualifications to qualify her as an expert on FDA regulations, she should be prevented from offering these opinions at trial.

Moreover, to the extent Professor Pechmann offers legal opinions on what the regulations mean, or how they apply to Merck, the testimony is improper. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("The proffered testimony was largely on purely legal matters and made up solely of legal conclusions, such as conclusions that the city's actions violated the FHAA. The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.").

## VIII. CONCLUSION.

For the reasons stated above, Merck respectfully requests that this Court grant Merck's Motion to Exclude the Testimony of Cornelia Pechmann, Ph.D.

824125v.1

---

Dated:  August 14, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

824125v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum In Support of Motion of Merck for Order Excluding Testimony of Cornelia Pechmann, Ph.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

        */s/ Dorothy H. Wimberly*
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana  70130
        Phone:  504-581-3200
        Fax:     504-581-3361
        dwimberly@stonepigman.com

        Defendants' Liaison Counsel

824125v.1