UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 <br><br> Section L <br><br> Judge Eldon E. Fallon <br><br> Magistrate Judge Daniel E. Knowles, III |

**THIS DOCUMENT RELATES TO:**
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE (1) EVIDENCE OF MOTIVE AND (2) EVIDENCE RELATING TO THE ASSETS AND PROFITABILITY OF MERCK OR TO THE COMPENSATION AND FINANCIAL DECISIONS OF EMPLOYEES**

(Plaintiff's Opposition to Defendant's Motion to Exclude No. 5)

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff R. Garry Smith, by and through his undersigned counsel, asks this Court to deny Defendant Merck & Co., Inc.'s ["Merck"] Motion to Exclude evidence relating to Merck's state of mind in failing to warn regarding the actual cardiovascular effects of Vioxx, including evidence of the massive losses Merck itself calculated and apparently believed it would incur if the drug had a warning concerning its actual cardiovascular effects (hereafter "Motion to Exclude State of Mind Evidence"). In support thereof, Plaintiff would show as follows:

**INTRODUCTION**

Merck apparently wants to have it both ways: to tell the jury from the outset that its reasons for putting Vioxx on the market were pure, noble and for the good of mankind, while suppressing,

1

if it can, devastating evidence that it lied about Vioxx's cardiovascular effects to avoid accurate warnings regarding cardiovascular risks that Merck itself concluded would have cost it half a billion dollars per year in sales. At a minimum, such evidence is essential to show the reasons for Merck's actions or inactions and to insure that the jury is not misled or confused about them. It also directly addresses Merck's credibility. On these bases alone, it should be admitted. Evidence of Merck's state of mind is also crucial to support Mr. Smith's ***common law fraud claim***. Merck's unsupported conclusion that such evidence is irrelevant and inadmissible to prove the intent element of such a claim is absurd. Instead, evidence of financial motive is routinely admitted by Kentucky courts to satisfy this element.

Further, Merck's assertions notwithstanding, proof of financial motive is not the same as proof of net worth generally for punitive damages purposes, nor is proof of specific financial motive relating to a particular incident the same as proof of "generalized 'profit' motive,"[1] that is, proof that an American company has to satisfy is shareholders.

In filing this motion, Merck seeks to dupe this Court into excluding highly probative, but not unduly prejudicial, evidence by confusing and mischaracterizing the actual claims before it, and confusing the actual evidence sought to be introduced with a number of issues that are not implicated here. This Court should not be fooled. When these issues are untangled, it is crystal clear that Merck's motion is frivolous and should be summarily denied.

---

[1] *See* Merck's Motion to Exclude State of Mind Evidence at 3 (citing *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990)).

## DISCUSSION

**I.      Merck Has Filed No Motion *in Limine*; Therefore, if It Loses Its Motion to Exclude, <u>It is Entitled to No Other Protection From the Introduction of Such Evidence</u>.**

Merck has styled this motion as one to exclude alone. At best, it includes a reference to a motion *in limine* in a parenthetical under the title of its motion to exclude. It seeks no order *in limine* in its prayer for relief. As the result, should the Court deny its motion to exclude, Merck is entitled to no other relief from Plaintiff's efforts to introduce such evidence at trial. This Court should be loathe to exclude evidence prematurely, particularly the sweeping rulings Merck seeks here. A premature determination of evidentiary issues in the absence of a developed trial record would unfairly prejudice Plaintiff.[2]

**II.     <u>Evidence of Merck's State of Mind and Intent is Relevant to and Highly Probative of Plaintiff Smith's Common Law Fraud/Failure to Disclose Claim</u>.**

According to Merck's own motion, to establish common law fraud under Kentucky law, a plaintiff must prove that the defendant made a material misrepresentation "with the inducement to be acted upon." Reported cases are even clearer: "Under Kentucky law, a plaintiff alleging common law fraud must prove 1) a material representation; 2) which is false; 3) known to be false or made recklessly; 4) ***made with the intent that it be acted upon***; 5) actual reliance; and 6) injury." *Gooch v. E.I. DuPont de Nemours & Co.,* 40 F. Supp. 2d 857, 860 (W.D. Ky. 1998) (emphasis added). Thus, by its own admission, Merck's mental state is an essential element of one of Plaintiff Smith's claims. Thus, evidence demonstrating Merck's intent to lie about Vioxx and market it without

---

[2]*See In re Diet Drugs*, 369 F.3d 293, 314 (3rd Cir. 2004) (observing that "unduly sterilizing a party's trial presentation can unfairly hamper her ability to shape a compelling and coherent exposition of the facts."); *Old Chief v.United States*, 512 U.S. 172, 187 (1997) (noting that "Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw inferences, whatever they may be, necessary to reach an honest verdict").

adequate cardiovascular warnings are directly relevant to such claims.

### III.     Evidence of Merck's Mental State is Highly Probative of Plaintiff's Other Claims.

According to Merck,[3] to prove his failure to warn claims, Plaintiff Garry Smith must show that Merck knew or had reason to know that Vioxx was likely to be dangerous for the use for which it is supplied. *See, e.g., Byrd v. Proctor & Gamble Mfg.*, 629 F. Supp. 602, 605 (E.D. Ky. 1986). Evidence tending to show what Merck knew about Vioxx and when it knew about it is relevant to and probative of that issue. Plaintiffs should, therefore, be entitled to introduce evidence that Merck ***explicitly evaluated its drug's cardiovascular risks before it warned doctors of that risk***, and calculated the potential impact on its sales of disclosing such a risk.

In a document entitled "Profit Plan 2002 - Merck A & A Franchise" Merck determined that including a cardiovascular risk in Vioxx's label would cost the company $229 million in sales. *See* P1.0966 [Barnett], at 4, attached as Exhibit "A." In fact, Merck went so far in another study to analyze sales impact dependent on how strongly it warned of the risk. Not surprisingly, the stronger the warning, the weaker the sales, with losses as high as half a billion dollars. *See* P1.1135, at 17 (US Long Range Operating Plan Franchise: Analgesic & Anti-Inflammatory Products: Vioxx, Etoricoxib), attached as Exhibit "B." These craven analyses prove not only that Merck was well aware that its drug could cause the very injury Plaintiff suffered, but failed to warn of the risk because of the impact on its bottom line.

Further, such evidence is also probative of Merck's negligence. As the U.S. Court of

---

[3]*See* Memorandum of Merck & Co., Inc., Addressing Applicable Kentucky Law, filed May 17, 2006, at 2.

4

Appeals for the Third Circuit recently observed in *In re Diet Drugs*, a drug warning case, "[e]vidence that intentional or reckless behavior may be highly probative of elements of negligence or defective design cases." *In re Diet Drugs*, 369 F.3d at 312. The court noted that intentional conduct "would be probative of a failure to warn. And intentional or reckless behavior is often relevant to showing conduct below the reasonable standard of care necessary to make out a case of negligence." *Id*.[4] As one major treatise explains:

> ***Intentional conduct and even intentional risk-taking is analyzed under negligence rules*** unless the defendant has a purpose to invade the plaintiff's interests or a certainty that such an invasion will occur. . . . ***The defendant who intentionally takes a risk may or may not be negligent; negligence will depend upon the seriousness of the risk and the reasons for taking it***. . . . .The defendant's knowledge of facts that make a given act risky (as distinct from his attitude) is frequently important on the negligence issue.

Dan B. Dobbs, THE LAW OF TORTS § 116 (2001) (emphasis added). As the Third Circuit noted, "excessive concern with the image and marketing of . . . drugs at the expense of . . . efforts toward determining whether they were safe could be probative as to whether [a drug maker] breached a duty of care towards the plaintiffs" *In re Diet Drugs*, 369 F.3d 293, 314 (3rd Cir. 2004).

---

[4]*See also Landry v. Leonard N. East Ins. Co*., 1998 ME 241, 720 A.2d 907, 910 (Me. 1998); Fowler V. Harper, *et al*., THE LAW OF TORTS § 16.9 n.2 ("An intentional act may be negligent.") (citing *Dartez v. Gadbois*, 541 S.W.2d 502 (Tex. Civ. App. 1976)); *Ghassemieh v. Schafer*, 52 Md. App. 31, 447 A.2d 84, 89-90 (Md. Ct. Spec. App. 1982)("We see no reason why an intentional act that produces unintended consequences cannot be a foundation for a negligence action."); *see also* 57A Am. Jur. 2d Negligence § 30 (2004).

Moreover, Merck claims that Plaintiffs must show a safer alternative design in order to prove their defective design theory.[5] Though Merck's statement of Kentucky law is wrong,[6] if required to make such a showing, Plaintiff should be entitled to show that an adequate and full warning of Vioxx's cardiovascular risks was possible, and the only hindrance to giving it was sales. This is particularly important because Merck will suggest, as it already has here and in past trials, that it was somehow prohibited by law from including adequate information in its warning. Plaintiffs should be permitted to show that Merck itself felt no such legal impediment but focused instead on its lost sales if it did the right thing.

The financial information Merck seeks to exclude is also critical to the jury's assessment of Merck's credibility. Merck will argue that the evidence will reveal a company that acted reasonably and promptly with patient safety first and foremost amongst its concerns at all times. Evidence of the personal financial incentives of Merck employees as they made critical safety and marketing decisions, evidence of the profit incentive for the company as it chose between safety studies, and evidence of the financial pressures Merck faced during the time that it made these critical decisions, is without question admissible. Such evidence bears directly on the credibility of Merck's interpretation of the evidence and the testimony of its witnesses.

Merck would have this Court believe that Plaintiff will attempt to introduce very general financial information or net worth to prove its failure to warn, fraud and negligence claims. To that end, it cites cases in which such generalized evidence has been excluded. As demonstrated above,

---

[5] *See id.* at 7.

[6] *See Toyota Motor Corp. v. Gregory,* 136 S.W.3d 35, 42 (Ky. 2004) (Ky. Supreme Court held that, while it was not error to include such an instruction, proof of safer alternative design would not be required element of design defect claim).

net worth evidence or general information about profitability is not at all what Plaintiff seeks to introduce here, if the case remains bifurcated in violation of Kentucky law.  For all of these reasons, Merck's motion should be denied.

## IV.     Evidence of Merck's State of Mind is Relevant to Punitive Damages.

In its Motion to Exclude, Merck makes much of the fact that this is ostensibly a bifurcated case which would preclude the introduction of Merck's net worth evidence in this case's first "phase."  In its Memorandum on Kentucky law, however, Merck takes an entirely different position and ordains that: "***In civil actions, a court must determine the availability of punitive damages concurrently with all other issues presented.***  In other words, bifurcation of punitive damages is not permitted."  *See* Merck's Memorandum on Kentucky Law at 15 (emphasis added) (citing KY. REV. STAT. ANN. § 411.186(1) (LexisNexis 2006)).  Thus, Merck not only attempts here to exclude evidence it argues elsewhere is admissible in all phases of the case but attempts to lead this Court to error by advocating that it violate Kentucky law.

The following are among the factors a jury may consider in awarding punitive damages in Kentucky: the degree, if any, to which Merck's conduct toward Garry Smith, including through his physician, Dr. Grefer, was ***reprehensible,*** considering the degree to which its conduct evinced an "***indifference to or a reckless disregard of the health and safety of others***."  *See* 2 KY. INSTRUCTIONS TO JURIES § 39.15 (2004 Supp.) (emphasis added); *Williams v. Wilson*, 972 S.W.2d 260, 269 (Ky. 1998).  Thus, evidence that Merck consciously chose not to warn consumers of Vioxx's actual cardiovascular risks to reap millions of dollars in sales is highly probative of such indifference or reckless disregard for the health and safety of others.  To exclude such evidence would be error.

## V.     The Admission of the Evidence at Issue would Not Cause Unfair Prejudice, Confusion, or Waste Time.

Merck's alternative argument that this evidence should be excluded under Rule 403 should also be rejected. Just because the evidence is damaging or prejudicial to Merck does not mean such evidence should be excluded. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). Instead, any prejudice must be "unfair" or undue. *Dollar v. Long Mfg, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest (a) decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee on Proposed Federal Rules of Evidence, Rule 403 at 102.

In relevant part, Federal Rule of Evidence 403 directs that relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. FED. R. EVID. 403. The careful use of "substantially" demonstrates the emphasis placed on this balancing test. "Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence" *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994). Moreover, slight prejudice is insufficient to warrant granting a motion *in limine* or to exclude. *Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983) (quoting, *United States v. Hearod*, 499 F.2d 1003 (5th Cir. 1974)). Moreover, as this Court has noted, "Rule 403 rulings are best made at the time of trial when the Court may balance relevant factors before it." *Minshew v. Brown*, NO. 95-2507, 1996 WL 601436 (E.D. La. 1996) (Fallon, J.); *see Hines v. Consol. R. R. Corp.*, 926 F.2d 262, 274 (3rd Cir. 1991).

Moreover, the evidence Merck seeks to exclude does not involve proof of net worth, the only

thing the court in *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 167 (Ky. 2004), the case upon which Merck mostly relies, addressed.[7] Thus, the evidence does appeal an existing bias against the wealthy or corporations. Contrary to Merck's argument, such evidence will correct false impressions and avoid possible confusion as to what Merck knew about Vioxx and why it did or did not take action.

Likewise, evidence of the financial incentives that Merck executives had to maximize sales at the expense of patient safety is not unfairly prejudicial. Such evidence will give the jury necessary context and insight as they evaluate the credibility of Merck's employees as well as the validity of Plaintiff's claims and Merck's defenses. Lastly, such evidence is not cumulative but helpful in giving the jury a clear picture of the decision making process relating to Vioxx,

---

[7]Merck badly misrepresents the holding in *Sand Hill*. Although Merck repeatedly tries to suggest that this Court may not admit any financial information about the defendant in any case in which punitive damages are sought, the *Sand Hill* Court imposed no such limitation. First, it made no ruling on this issue nor was it asked to do so. Thus, even the Court notes that its comments are mere dicta. Second, the Court was clearly speaking only of proof of ***corporate net worth*** in the quote Merck repeatedly cites, not evidence of the sort described here. Third, the referenced quotation is not an actual quote from 2004 Kentucky Supreme Court in the *Sand Hill* case as Merck implies. Instead, the current Kentucky Supreme Court quotes a predecessor court sitting ***104 years before*** without comment. The full quote follows:

> We would also note that ***should the question arise on remand*** of whether to admit evidence of Ford's financial condition, that in *State Farm*, the United States Supreme Court frowned upon "'the presentation of evidence of a ***defendant's net worth*** [because it] creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.'" Likewise, ***our predecessor court stated*** that "we are clearly of the opinion that no evidence as to the financial condition of either defendant or plaintiff should be admitted in any case in which punitive damages might be recovered" because 'the tendency of this class of testimony would be to lead the jury to consider chiefly the pecuniary condition of the defendant, rather than the enormity or wantonness of the act for which punitive damages might be allowed.'

*Sand Hill,* 142 S.W.3d at 167 (emphasis supplied). Worse, the centenarian case cited in *Sand Hill* for this notion also refers only to proof of net worth. *Id* at n. 28 (citing *Givens v. Berkley*, Ky., 108 Ky. 236, 56 S.W. 158, 159, 21 Ky. L. Rptr. 1653 (1900)).

9

specifically, the market and profit forces and pressures that were impacting Merck's decisions not to inform physicians and patients about the potentially harmful side effects associated with Vioxx.

For all of these reasons, Merck's motion should be denied.

### VI.     Merck's Case Law is Wildly Misdirected.

Apparently, Merck conducted a Westlaw search for every kind of financial evidence that can be excluded and filled its brief with citations to such cases in the hope that the Court would not examine the issues here too carefully and would throw out clearly relevant evidence with the rest. Unfortunately, almost none of the evidence to which Merck refers will be introduced here.

For example, Merck discusses whether it is appropriate to discuss net worth in Phase I of a bifurcated case yet it never indicates that Plaintiff has any intention of introducing any such evidence at any other point. Instead, Plaintiff will introduce Merck's own calculations of what it would lose if it included an accurate warning of Vioxx's. As the two issues have nothing to do with each other; any case authority for the former is inapposite here.

The same result ensues with regard to Merck's suggestion that evidence of ***generalized*** profit motive is inadmissible. As an initial matter, Merck's own case states: "***evidence of Honda's profits from ATV sales was***, as we demonstrate in the ensuing paragraph, ***relevant to plaintiff's negligent failure to warn claim.***" *La Plante v. American Honda Motor Co.*, 27 F.3d 731, 739 (1st Cir. 1994) (emphasis supplied). The court did eventually exclude the evidence under Rule 403 because evidence of such generalized profit motive ***in that case*** did not outweigh the potential prejudice from showing Honda's wealth. That is not the case here. The evidence of profit and loss is very specific here and relates directly to issues in the case.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion to exclude.

Dated:  August 14, 2006

                                      Respectfully submitted,

| | |
|---|---|
| Drew Ranier | /s/ Grant Kaiser |
| Louisiana Bar No. 8320 | Grant Kaiser |
| **RANIER, GAYLE & ELLIOT LLC** | Texas Bar No. 11078900 |
| 1419 Ryan Street | **THE KAISER FIRM LLP** |
| Lake Charles, Louisiana 70601 | 8441 Gulf Freeway, Suite 600 |
| (337) 494-7171; fax (337) 494-7218 | Houston, Texas 77017 |
| | (713) 223-0000; fax (713) 223-0440 |
| Walter Umphrey | Mikal Watts |
| Texas Bar No. 20380000 | Texas Bar No. 20981820 |
| **PROVOST UMPHREY LAW FIRM LLP** | **THE WATTS LAW FIRM LLP** |
| 490 Park Street | Tower II Building, 14th Floor |
| Beaumont, Texas 77701 | 555 North Carancahua Street |
| (409) 835-6000; fax (409) 838-8888 | Corpus Christi, Texas 78478 |
| | (361) 887-0500; fax (361) 887-0055 |
| James L. "Larry" Wright | |
| Texas Bar No. 22038500 | John Eddie Williams, Jr. |
| **THE WATTS LAW FIRM LLP** | Texas Bar No. 21600300 |
| 111 Congress Avenue, Suite 1010 | Jim Doyle |
| Austin, Texas 78701 | Texas Bar No.6094450 |
| (512) 479-0500; fax (512) 473-0328 | **WILLIAMS BAILEY LAW FIRM LLP** |
| | 8441 Gulf Freeway, Suite 600 |
| | Houston, Texas 77017 |
| | (713) 230-2200; fax (713) 643-6226 |

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc     By email only:

Robert Van Kirk          rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski          carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440