# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING OPINION TESTIMONY BY PLAINTIFF'S EXPERTS
THAT VIOXX® ACCELERATES ATHEROSCLEROSIS
OR CAUSES PLAQUE RUPTURE[1]**

**(EXPERT CHALLENGE NO.  10)**

---

[1] One of plaintiff's causation experts, Gary Sander, M.D., has not yet been deposed.  His deposition has been scheduled for September 15, 2006, and, by stipulation, Merck will file any motion challenging Dr. Sander's opinions or qualifications by September 21, 2006.  To the extent Dr. Sander provides testimony pertinent to this motion, Merck will address that testimony in a supplemental brief.

The various plaintiffs' experts have developed different theories about how Vioxx supposedly causes heart attacks.   The plaintiffs' principal causation theory has been the "FitzGerald hypothesis."   According to this hypothesis, Vioxx suppresses the production of prostacyclin relative to thromboxane and leads to a pro-thrombotic state.   As the Court will recall, Merck contends that the FitzGerald hypothesis is speculative and remains unproven.   That said, this Motion is *not* directed to expert testimony regarding the FitzGerald hypothesis.

This Motion instead seeks to exclude expert testimony concerning plaintiffs' latest theory, that Vioxx causes cardiovascular events by directly accelerating atherosclerosis – *i.e.*, the build-up of coronary artery plaque – or by causing coronary artery plaque to rupture.[2]   (*See* Deposition of Douglas P. Zipes ("Zipes 6/9/06 Dep.") at 87:25-88:6, attached hereto as Ex. A; Report of Gary E. Sander, M.D. ("Sander Rpt.") at 4, 5, 10, 11, attached hereto as Ex. B.)   As causation opinions to that effect have no scientific support, the Court should exclude them.[3]

No study shows or even purports to show that Vioxx accelerates atherosclerosis in humans.   Animal and test-tube studies exploring this hypothesis are inconclusive at best, and indeed, several such studies have reported that administering Vioxx actually **slows** the

---

[2] Plaintiff apparently also claims that Vioxx (like many other drugs and conditions) can lead to hypertension, and that hypertension generally causes the progression of atherosclerosis.  Merck is not addressing that claim in this motion given that plaintiff is not claiming a hypertensive effect here.  Instead, this motion is directed at any claim that something in the pharmacologic nature of Vioxx itself directly accelerates the formation of atherosclerotic plaque as well as any claim that it has been shown that the hypertensive effect of Vioxx is sufficient to accelerate atherosclerosis.

[3] The plaintiff in the *Plunkett* trial agreed not to pursue this mechanism for precisely that reason. (See 2/16/2006 *Plunkett v. Merck* Transcript at 2262:11-2263:2, attached hereto as Ex. C.)  In *Barnett*, Merck filed a motion similar to this one, but withdrew it without prejudice to re-raising the argument in trial or on appeal.

development of atherosclerosis.  Plaintiff's experts, accordingly, can point to no evidence that Vioxx had an atherogenic effect in Mr. Smith.[4]

There similarly is no scientific support for the theory that Vioxx can cause plaque ruptures.  Again, as the plaintiffs' own experts admit, no data from human or animal studies support this theory and plaintiff's experts have no evidence that Vioxx in fact caused a plaque rupture in Mr. Smith.

Merck therefore requests that the Court issue an order precluding plaintiff's experts from opining that Vioxx can directly accelerate atherosclerosis or cause plaque rupture, or that it had either effect on Mr. Smith.

## I.    LEGAL STANDARD.

To prevail, plaintiff must present expert medical testimony that it is more likely than not that his use of Vioxx was a substantial factor in causing his heart attack.  *See Disher v. Synthes (U.S.A.)*, 371 F. Supp. 2d 764, 773 (D.S.C. 2005) ("[I]n order to survive summary judgment on the causation issue, plaintiff must not only proffer the testimony of a competent medical expert, but the testimony of a competent medical expert who will testify . . . that the result in question most probably came from the cause alleged") (citation and internal quotation marks omitted). "A mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Fitzgerald v. Manning*, 679 F.2d 341, 348 (4th Cir. 1982) (internal quotation marks and citations omitted); *see also McCarty v. Kendall Co.*, 120

---

[4] Expert testimony that Vioxx accelerates atherosclerosis properly has been excluded in previous Vioxx trials.  (*See* 03/14/2006 *Cona-McDarby v. Merck* Transcript at 1182:13-1183:14, attached hereto as Ex. D (holding that the "extremely prejudicial" impact of testimony "that it is possible or biologically plausible that Vioxx can be, in fact, causing atherosclerosis" would outweigh such testimony's probative value).)

824142v.1

S.E.2d 860, 863 (S.C. 1961) (ruling that causation was established where a doctor testified that immobilization was a "contributing factor to a large degree" to the plaintiff's development of kidney stones); RESTATEMENT (SECOND) OF TORTS § 431 (1965) ("The actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . . .").

Federal Rule of Evidence 702 governs the admissibility of expert testimony in this Court. As a threshold matter, Rule 702 requires exclusion of testimony beyond a witness's expertise. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (trial court properly excluded property appraisal testimony since witness not a licensed appraiser or real estate broker and lacked training or formal schooling in appraisal methods). Once the proponent of evidence proves that the offered testimony is within the expert's actual expertise, he or she must then establish that the expert testimony to be offered is based on sufficient facts or data and must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Determination of whether proposed expert testimony is reliable is governed by the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and by Rule 702 as amended in the wake of that decision. In *Daubert,* the Court made clear that the district courts must act as gatekeepers to ensure that expert testimony is both *relevant* and *reliable*. The Court identified the following non-exclusive factors a district court may consider in evaluating an expert's testimony in the course of carrying out its role as gatekeeper: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a

technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the theory or technique's degree of acceptance in the scientific community. *Daubert*, 509 U.S. 593-94; Moore, 151 F.3d at 275; *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 605-06 (E.D. La. 2003). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the Supreme Court further explained that the objective of *Daubert*'s gate keeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

## II.   THERE IS NO DATA SUPPORTING A LINK BETWEEN VIOXX AND AN ACCELERATION OF ATHEROSCLEROSIS.

The Court should preclude plaintiff's experts from testifying that Vioxx accelerates the progression of atherosclerosis for several reasons.

### A.   Plaintiff's Experts Concede The Uncertainty Of Their Atherosclerosis Theory.

Although plaintiff's experts purport to opine that animal studies show that Vioxx accelerates atherosclerosis, they acknowledge – as they must – the limitations to their opinions. Dr. Epstein, a non-retained expert who testified on behalf of plaintiffs in *Barnett*, repeatedly cautioned against extrapolating the results of studies in mice to humans, warned against using studies involving drugs other than Vioxx to draw conclusions about Vioxx, and readily admitted that he is aware of studies showing precisely the opposite – *i.e.*, that Vioxx *reduces* the development of atherosclerosis. (8/5/06 *Barnett* Tr. at 1224:9-1225:14, 1232:5-21, attached hereto as Ex. E.) Even Dr. Zipes made the same concessions. (8/8/06 *Barnett* Tr. at 1796:14-20, attached hereto as Ex. F.)

Moreover, Dr. Zipes admits that he is aware of studies showing precisely the opposite – *i.e.*, that Vioxx *reduces* the development of atherosclerosis:

5

Q: Are you aware of any studies in animals or humans that suggest that Vioxx does not cause atherosclerosis or its progression?

A: Yes.

Q: Like what?

A: One is by Oates. And they suggested that it may be the timing as well as the duration of COX-2 inhibition that might affect the development of atherosclerosis.

Q: Are there other animal or human studies, sir, other than Oates that suggests that Vioxx does not cause atherosclerosis or its progression?

A: Yes, I can't really cite them to you, but yes.

(Zipes 6/9/06 Dep. at 99:15-100:2.)

Where an expert can only *speculate* as to the *possible* mechanism by which a drug may be capable of causing injury, the expert's testimony is unreliable and, thus, inadmissible. *Moore*, 151 F.3d at 279 ("In sum, [the expert] could cite no scientific support for his conclusion that exposure to any irritant at unknown levels triggers this asthmatic-type condition. Under the *Daubert* regime, trial courts are encouraged to exclude such speculative testimony as lacking any scientific validity."); *See also Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311-12 (5th Cir. 1991) (holding that expert testimony that failure of coupling was caused by a construction defect or failure to label should be excluded as speculative in part because the expert did not determine which of several possible causes was most probable). Accordingly, the Court should preclude any evidence or argument that Vioxx can accelerate the progression of atherosclerosis.

**B.    Plaintiff's Experts Can Point To No Article Establishing That Vioxx Can Accelerate the Progression of Atherosclerosis.**

Plaintiff's experts have no scientific basis to opine that Vioxx could accelerate the progression of atherosclerosis, or that it did so in the case of Mr. Smith. The only actual data regarding adverse plaque-related effects from administering COX-2 inhibitors are drawn from animal studies, most of which did not involve Vioxx. But animal studies *cannot* establish

6

causation in humans. *See, e.g., Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989) (rejecting animal studies given difficulty extrapolating results to humans); *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 197-98 & n.5 (5th Cir. 1996) (rat studies were "inconclusive" and "unreliable" and could not establish that chemical would have same effect in humans); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1480 (D.V.I.) (extrapolation from animal studies to humans to prove causation is "scientifically invalid" because, among other reasons, "different species can react differently to the same agent"), *aff'd*, 46 F.3d 1120 (3d Cir. 1994); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1241 (E.D.N.Y. 1985) (finding animal studies inadmissible in an action alleging health problems arising from exposure to herbicide "because they [the animal studies] involve different biological species"); *Maurer v. Heyer-Schulte Corp.*, No. Civ.-A-92-3485, 2002 WL 31819160, at *3-4 (E.D. La. Dec. 13, 2002) (court "frowns upon the use of animal studies to predict carcinogenicity in humans").

Moreover, these studies did not even show an adverse link between any form of COX-2 inhibition and plaque in the animals used – much less a link between Vioxx specifically and plaque *in humans*. In fact, the one study that specifically involved Vioxx suggests that COX-2 inhibition might actually slow or reduce plaque formation – which has biological plausibility because of the role that COX-2-related inflammation plays in plaque phenomena.

For example, Dr. Zipes relies on the VIGOR and APPROVe studies to support his opinion. (Zipes 6/9/06 Dep. at 85:17-86:5, 102:2-20.) The studies, however, say nothing about whether Vioxx can accelerate the progression of atherosclerosis. In fact, neither study even purported to examine the extent or progression of atherosclerosis in patients taking Vioxx or the comparator (naproxen in VIGOR and placebo in APPROVe).[5] And Dr. Zipes admits he is aware

---

[5] Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma*

824142v.1

of no article interpreting VIGOR to say that the difference in CV results is attributable to a Vioxx-caused increase in atherosclerosis.  (Zipes 6/9/06 Dep. at 102:16-20.)  The same is true of APPROVe.  Plaintiff's experts cannot rely on a study to support a proposition that the study does not even address.

Even assuming that animal studies were sufficient under *Daubert* to establish causation in humans – and they are not – the studies plaintiff's experts rely on do not support their position. The objective flaws in the animal studies plaintiff's experts cite further render the methods of those experts unreliable.

The Egan study Dr. Zipes and Dr. Sander cite (Zipes 6/9/06 Dep. at 85:17-86:12; Sander Rpt. at B[6]) also does not support plaintiff.  Again, the study did not involve humans, nor did it even involve Vioxx.  Instead, the authors administered a different COX-2 inhibitor, alone and in combination with a thromboxane receptor antagonist, to genetically altered mice.  Animal studies involving drugs other than Vioxx provide an insufficient basis for an opinion that Vioxx can accelerate atherosclerosis in humans.[7]  Even in mice, however – and putting aside that the study did not involve Vioxx – the authors did not find that COX-2 inhibition accelerated the development of atherosclerosis.  On the contrary, they found the *opposite*.  As the published

---

*Chemoprevention Trial* (hereinafter "Bresalier"), NEW ENG. J. MED. March 17, 2005; 352:1092; Claire Bombardier et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 NEW. ENG. J. MED.1520, Nov. 30, 2000.

[6] Although Sander does not address the Egan study in his report, he includes it in the list of materials relied upon in forming his opinions.

[7] *Compare Brock*, 874 F.2d at 313 (holding animal studies have "very limited usefulness" given difficulty extrapolating results to humans) *and Merrell Dow Pharmaceutical, Inc. v. Havner*, 953 S.W.2d 706, 729 (Tex. 1997) ("the only way to test whether data from nonhuman studies can be extrapolated to humans would be to conduct human experiments or to use epidemiological data") *with McClain v. Metablife Int'l, Inc.*, 401 F.3d 1233, 1246 (11th Cir. 2005) (excluding expert's opinion that ephedrine causes vasospasms based on analogy to different drug and noting that "even small differences in chemical structure can sometimes make very large differences in the

8

article reports, the authors found that administration of a selective COX-2 inhibitor, either alone or in combination with a thromboxane receptor antagonist, "*failed to modify* disease progression" in mice.[8]

The Rudic article also does not support plaintiff. Like the Egan study, the Rudic study also did not involve humans or Vioxx. Instead, it involved mice genetically-engineered to lack a prostacyclin receptor[9] and mice that received numesulide, a COX-2 inhibitor that is not related to Vioxx. In one experiment, the researchers transplanted atherosclerotic arteries into the two groups of mice and measured the rate at which the transplanted tissues were rejected in both groups. The results of this experiment have no relevance here because – in addition to the fact that this is a study of mice, not men – Mr. Smith did not receive numesulide or coronary artery transplants. In a second experiment, the researchers surgically narrowed the arteries in both groups of mice to simulate ischemia and reported that *neither* group experienced a "further . . . reduction in luminal diameter."[10] The results of this latter experiment contradict plaintiff's theory that COX-2 inhibition can accelerate atherosclerosis.

---

type of toxic response that is produced" (internal quotation marks and citations omitted) ).

[8] Egan, K., *Cyclooxygenase, Thromboxane, and Atherosclerosis: Plaque Destabilization by Cycooxygenase-2 Inhibition Combined with Thromboxane Receptor Antagonism*, CIRCULATION 2005: 111:334-42.

[9] No evidence suggests that COX-2 inhibition, by Vioxx or any other COX-2 inhibitor, reduces human prostacyclin production to zero. Dr. FitzGerald's study, conducted with Merck researchers and later published, found that Vioxx reduced urinary prostacyclin metabolites by only about 50 percent. (*See* Catella-Lawson, F., et al., *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics and Vasoactive Ekosanoids*, J. PHARMACOL. AND EXP. THERAP. 1999 May; 289(2):735-41.) This alone precludes any scientifically reliable extrapolation from Dr. Rudic's mouse study to hypothetical clinical effects of Vioxx in humans.

[10] Rudic et al., *COX-2-Derived Prostacyclin Modulates Vascular Remodeling*, CIRCULATION RESEARCH 2005; 96:1240-1247, at 1244.

9

Similarly, the 2002 Cheng study Dr. Zipes cites (Zipes 6/9/06 Dep. at 85:17-86:12) did not involve the use of any COX-2 inhibitor.[11]  That study involved the use of mice genetically-engineered to have no prostacyclin receptor.  As such, this study yielded no data on the effect of COX-2 inhibition on plaque phenomena even in mice, much less in humans.  In fact, in addition to other potentially material differences between administering COX-2 inhibitors and genetic alteration, no one has shown that any COX-2 inhibitors reduce prostacyclin to zero in any part of the body of mice or man.

Finally, the Antman article cited by Dr. Zipes (Zipes 6/9/06 Dep. at 85:23-86:15), also does not support plaintiff's theory.  In the article, the author merely reviews literature on COX-2 inhibitors prepared by others and address only in passing the hypothesis that COX-2 inhibition may be associated with the progression of atherosclerosis.  Indeed, Antman concedes that plaintiffs' theory "is currently controversial."[12]  Nor does the article report any original research supporting plaintiff's theory.  On its face, this article provides no scientific support for an opinion that Vioxx can accelerate the progression of atherosclerosis.

In short, plaintiff's experts have improperly relied exclusively on animal studies, none of which actually support their theory.  Existing animal studies actually show that Vioxx actually retards the progression of atherosclerosis.  (*See infra* Pt. II.C.)  The Court therefore should exclude any testimony by plaintiff's experts that Vioxx can accelerate the progression of atherosclerosis.  *See*, *e.g.*, *Moore*, 151 F.3d at 278 (holding, in part, that experts' reliance on studies that did not support their conclusions was grounds for excluding the expert testimony).

---

[11]  Cheng *et al.*, *Role of prostacyclin in the cardiovascular response to thromboxane A2* (hereinafter "Cheng"), SCIENCE 2002 Apr. 19; 296(5567):539-41.

[12]  Antman et. al., *Cyclooxygenase Inhibition and Cardiovascular Risk* (Special Report), CIRCULATION 2005, 112:759-770, 760, attached hereto as Ex. F.

**C.**     **Plaintiff's Experts Ignore Multiple Studies That Undermine Their Theory.**

Further demonstrating the lack of support for their theory that Vioxx can accelerate the progression of atherosclerosis, there are various animal studies that either have rejected the theory or, in some cases, reported that Vioxx in fact *slowed* the development of atherosclerosis.

For example, earlier mouse studies by Olesen (2002) and Pratico (2001) found that administration of a potent experimental COX-2 inhibitor (not Vioxx) did not accelerate atherosclerosis.[13]   In an even more recent mouse study published in September 2005 by Burleigh and others (including noted pharmacologist Dr. John Oates),[14] the authors found that "[s]elective inhibition of COX-2" – this time using Vioxx as opposed to some other COX-2 inhibitor – in fact "reduces atherosclerosis in . . . mice."[15]   Notably, this finding was not isolated or unexpected, but replicated and expanded on the similar finding of an earlier published mouse study by the same authors.[16]   In both studies, the authors hypothesized that these results occurred because the anti-inflammatory properties of Vioxx reduced COX-2-associated inflammation involved in the atherosclerotic process.[17]   Finally, several recent studies in humans have suggested that COX-2 inhibition (including COX-2 inhibition from Vioxx) is associated with significantly reduced levels of C-reactive protein – considered a marker for progression of

---

[13] Olesen M, et al., *No effect of Cyclooxygenase Inhibition on Plaque Size in Atherosclerosis-prone Mice*, SCAND. CARDIOVASC. J., 2002 Dec; 36(6):362-7; Pratico D, et al., *Acceleration of atherogenesis by COX-1 dependent prostanoid formation in low density lipoprotein receptor knockout mice*, PROC NATL ACAD SCI USA, 2001 Mar. 13;98(6):3358-63, Epub 2001 Mar 6.

[14] Burleigh ME, et al., *Cyclooxygenase-2 Promotes Early Atherosclerotic Lesion Formation in ApoE-deficient and C57BL/6 Mice*, J MOL CELL CARDIOL, 2005 Sep. 39(3):443-52.

[15] *Id.* at 446 (emphasis added).

[16] Burleigh ME, et al., *Cyclooxygenase-2 Promotes Early Atherosclerotic Lesion Formation in LDL Receptor-deficient Mice*, CIRCULATION, 2002 Apr. 16; 105(15):1816-23.

[17] *See* Ross, R., *Atherosclerosis – An Inflammatory Disease*, NEW ENG. J. MED., Jan.14, 1999; 340:115-26 (describing atherosclerosis as "an inflammatory disease").

atherosclerosis with possible direct involvement in the atherosclerotic process.[18]  Again, these results reinforce the absence of reasonable or meaningful support in the scientific literature for *any* suggestion that Vioxx promotes or accelerates atherosclerosis in humans.

Given this absence of reliable scientific support for the theory that Vioxx can accelerate atherosclerosis, the Court should preclude plaintiff's experts from suggesting such a theory as a possible mechanism for injury in this case.

### D.   Plaintiff's Experts Have No Basis Upon Which to Opine that Vioxx Accelerated Mr. Smith's Atherosclerosis.

Plaintiff's experts have failed to offer *any* general causation testimony supporting plaintiff's contention that Vioxx caused his atherosclerosis.  Absent evidence that Vioxx *could have* caused this *type* of injury, plaintiff's experts cannot be permitted to testify that Vioxx *did* cause Mr. Smtih's atherosclerosis.

Finally, there is no evidence regarding how – if at all – the use of Vioxx by plaintiff in this case impacted atherosclerosis.  In order to testify to a reasonable degree of medical probability that plaintiff's use of Vioxx accelerated the development of his atherosclerosis, an expert would need at minimum to consider evidence of when plaintiff's atherosclerosis began to develop – likely years if not decades before – and how rapidly it developed both before and after he began taking Vioxx.  No such evidence exists.  Without a baseline, an expert cannot judge the impact of any hypothetical acceleration (if indeed any occurred), and the expert accordingly

---

[18] Bogaty P, et al., *Impact of Prolonged Cyclooxygenase-2 Inhibition on* Inflammatory *Markers, and Endothelial Function in Patients With Ischemic Heart Disease and Raised C-reactive Protein:  A Randomized Placebo Controlled Study*, CIRCULATION, 2004; 110:934-39; Monakier D, et al., *Rofecoxib, a COX-2 inhibitor, Lowers C-reactive Protein and Interleukin-6 Levels in Patients With Acute Coronary Syndromes* (hereinafter "Monakier"), CHEST, 2004 May;125(5):1610-5; *see also* Ridker P, et al., *Inflammation, Aspirin, and the Risk of Cardiovascular Disease in Apparently Healthy Men*, New Eng. J. Med., April 3, 1997; 336:973-79 (clinical finding of relationship between C-reactive protein and stroke and myocardial infarction).

cannot, by definition, provide a reliable opinion that acceleration of atherosclerosis could have contributed to any injury.

The specific causation testimony plaintiff's experts provide amounts to nothing more than a temporal proximity argument – *i.e.*, Mr. Smith ingested Vioxx during the period in which there was atherogenesis, ergo Vioxx must be the cause. (*E.g.*, Zipes 6/9/06 Dep. at 104:15-108:8.) Courts have rejected this primitive view of causation. *Moore*, 151 F.3d at 278 ("In the absence of an established scientific connection between exposure and illness . . . the temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation.") Mr. Smith had risk factors that made him susceptible to atherosclerosis. Plaintiff's experts cannot rule out the possibility that it was these factors, and not Vioxx, that caused Mr. Smith's alleged injuries. Indeed, given the short duration Mr. Smith used Vioxx (less than five months), and the fact that atherosclerosis takes years, if not decades to develop, it is far more likely that Mr. Smith's atherosclerosis was a natural result of his diet, high cholesterol, and other preexisting risk factors. Even if plaintiff's experts were able to provide reliable evidence that Vioxx can accelerate atherosclerosis, which they cannot do, they would likewise need to show that Mr. Smith's limited use was sufficient to cause such an effect, and there is likewise no scientific evidence to support such a proposition. The specific causation testimony of these experts as it relates to atherosclerosis should therefore be excluded.

## III.   THERE IS NO SCIENTIFIC SUPPORT FOR AN OPINION THAT VIOXX CAUSES PLAQUE RUPTURES.

Dr. Sander states in his report that the purported imbalance created by Vioxx increases "the likelihood of plaque rupture." (Sander Rpt. at 10; *see also id.* at 11.) As with his atherosclerosis acceleration theory, plaintiff's theory that Vioxx causes plaque ruptures is devoid of scientific support.

There is no study that would support such an opinion. Of the various studies in patients

13

taking Vioxx, *none* purported to examine the extent or progression of atherosclerosis in those patients.  Accordingly, *none* of these studies supports plaintiffs' theory that Vioxx can cause plaque ruptures.

Plaintiffs' experts in other cases have purported to rely on a mouse study by Egan as support for an opinion that Vioxx can cause plaque ruptures (and Dr. Sander apparently relied on this study in forming his opinions).  But that study provides no support either.  As explained above, it involved genetically-modified mice that were not even given Vioxx and that were given a thromboxane receptor antagonist.  This study thus does not establish that Vioxx is capable of causing plaque ruptures in humans.  In fact, in the Egan study, administration of a COX-2 inhibitor alone *did not* lead to plaque destabilization in the mice.  It was only when the COX-2 inhibitor (again, not Vioxx) was given with the thromboxane receptor antagonist (a drug that Mr. Smith did not take) that there were "changes" in the plaque of the genetically modified mice. Even so, changes in the vasculature of genetically-modified mice are not predictive of any changes in the vasculature of humans.[19]

Finally, plaintiff's experts have (and there is) no evidence that Vioxx in fact caused a plaque rupture in this case.  In short, there is no scientific support for an expert opinion that Vioxx can or did cause a plaque rupture.  Accordingly, the Court should exclude any testimony or argument to that effect.

---

[19] Dr. Benedict Lucchesi, plaintiffs' expert in animal research in other Vioxx cases, agrees.  (Oct. 18, 2005 Deposition of Benedict Lucchesi ("Lucchesi 10/18/05 Dep.") at 319:15-18 ("[A]therosclerosis as we see it in animals is not the same as you see it in humans.  They don't form the kinds of plaques that humans form, particularly in the coronary vascular bed."), attached hereto as Ex. G.)  Dr. Luchessi also *admits* that the plaintiffs' plaque rupture theory is speculative and that he is unaware of any studies showing that Vioxx increases the risk of plaque rupture.  (Lucchesi 10/18/05 Dep. at 331:21-332:6.)

824142v.1

## IV.    <u>CONCLUSION.</u>

For the foregoing reasons, Merck respectfully requests that the Court grant this Motion and preclude any testimony from plaintiff's expert witnesses:   (1) that Vioxx can or did accelerate the progression of atherosclerosis; and (2) that Vioxx can or did cause plaque rupture.

Dated:  August 14, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

824142v.1

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

Attorneys for Merck & Co., Inc.

824142v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of the Motion of Merck for Order Excluding Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

17

824142v.1