UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING EXPERT TESTIMONY THAT SHORT-TERM VIOXX USE
<u>INCREASES CARDIOVASCULAR RISK</u>**

**(EXPERT CHALLENGE NO. 11)**

Plaintiff alleges, and his experts purport to testify, that the short-term use of Vioxx® increases the risk of thrombotic cardiovascular ("CV") events, can cause heart attacks, and in fact caused him to have a heart attack. Mr. Smith took Vioxx for less than five months, and was prescribed only ninety 25 mg tablets during that time.[1]  (June 29, 2006 Discovery Deposition of

---

[1] Mr. Smith was also given samples of Vioxx 25 mg and four tablets of Vioxx 50 mg when he
(*footnote continued next page*)

824147v.1

Michael Grefer ("Grefer Dep.") at 44:19-25, 46:6-21, 46:22-47:3, 47:19-23, attached as Ex. A; Deposition of Robert Smith ("Smith Dep.") at 149:11-152:1, attached as Ex. B.) There is no reliable scientific evidence that using Vioxx 25 mg for less than five months increases thrombotic risk, and Mr. Smith's experts should be precluded from testifying either that it does so or that Vioxx caused his heart attack given his limited use.

I.   LEGAL STANDARD.

The legal standard for the admission of causation opinions is set forth at pages 3-5 of Merck's Motion to Exclude Any Expert Testimony That Vioxx Accelerates Atherosclerosis or Causes Plaque Ruptures, filed concurrently with this motion and incorporated herein by reference.

One critical concept in toxicology is exposure. It is widely recognized that the degree of exposure of an agent, whether by dosage or duration, can have a major impact on the effect of the agent on the body.[2] Indeed, "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005); (internal citations omitted) (excluding expert's opinion based in part on failure to provide dose-response evidence, which is "the hallmark of basic toxicology").

It is "not enough for a plaintiff to show that a certain chemical agent sometimes causes

---

was first prescribed Vioxx on October 2, 2002, and he was instructed to take the Vioxx 50 mg over the next four days. (Grefer Dep. at 44:19-25, 46:6-21.) There is no evidence that the ingestion of four tablets of Vioxx 50 mg can increase the risk of having a thrombotic cardiovascular event over four months later, nor is there any evidence that such a dose would alter any risk purportedly associated with taking Vioxx 25 mg for under five months.

[2] *See, e.g.*, Michael J. Saks et al., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE ("Reference Manual on Scientific Evidence") at 559 (2d ed. 2005-2006).

2

the kind of harm that he or she is complaining of." *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996). Instead, plaintiffs in pharmaceutical and toxic tort cases must present *evidence* that they were "exposed to levels of that agent that are known to cause the kind of harm" that they allegedly suffered. *Id.*; *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002) ("[T]he appropriate understanding of generic causation is . . . whether exposure to a substance for which a defendant is responsible, such as radiation at the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition in the general population."); *McNeil-P.C.C., Inc. v. Britol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2nd Cir. 1991) (holding that clinical studies, to be admissible, must compare drug at issue in comparable doses).

In sum, Mr. Smith cannot establish causation simply by showing that exposure to Vioxx at a particular dosage or duration may cause some adverse health effects. Instead, he must offer scientifically reliable evidence that the use of 25 mg Vioxx for less than five months is capable of causing thrombotic CV events – the type of harm Mr. Smith claims to have suffered.

II. **THERE IS NO SCIENTIFIC SUPPORT FOR AN OPINION THAT VIOXX TAKEN FOR LESS THAN FIVE MONTHS AT THE 25 MG DOSE INCREASES CARDIOVASCULAR RISK.**

Plaintiff can provide no reliable data from clinical trials or observational studies establishing that using 25 mg Vioxx for less than five months is capable of causing CV events generally or that it caused his alleged CV event in particular. Accordingly, Mr. Smith's experts lack the scientific basis to opine that Vioxx was a cause, and should be precluded from so testifying.

For causation opinions in pharmaceutical and toxic tort cases, the Fifth Circuit has held that epidemiologic studies are "[u]ndoubtedly . . . the most useful and conclusive type of

evidence" of causation, even if they are not necessarily required in every case. *See, e.g.*, *Allen v. Penn. Eng'g Corp.* 102 F.3d 194, 197 (5th Cir. 1996); *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 311, *modified on reh'g*, 884 F.2d 166 (5th Cir. 1989); *see also Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 664 (M.D. La. 2000) ("Epidemiological studies are necessary to determine the cause and effect relationship between an agent, in this case exposure to benzene, and a disease, CML."); *Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224, 227-28 (N.D. Miss. 1989) ("conclusive epidemiological proof [is] essential to the plaintiff's case in a toxic tort pharmaceutical drug setting").

There are two broad categories of epidemiologic studies: randomized clinical studies and observational epidemiologic studies. Reference Manual on Scientific Evidence at 484. Data from blinded, randomized, placebo-controlled clinical trials is the "gold standard for determining the relationship of an agent to a disease or health outcome." *Id.*

### A. No Clinical Trial Establishes That Taking 25 mg Vioxx For Less Than Five Months Is Capable of Causing CV Events.

As Merck has fully briefed in the past, no clinical studies prior to the FDA's approval of Vioxx support the theory that 25 mg Vioxx, taken for less than five months, can increase the risk of thrombotic CV events. Merck fully incorporates its prior briefing on clinical studies, in particular the following briefs from *Estate of Irvin v. Merck & Co., Inc.*, Case No. 05-4046: Memorandum in Support of Merck's Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation and the "Appendix of Studies" attached thereto, filed October 21, 2005; Reply in Support of Merck's Motion to Exclude Evidence of Plaintiff's Experts Regarding Causation, filed November 9, 2005; and Merck's Opposition to Plaintiff's Motion to Exclude Opinion Testimony That Vioxx Cannot Cause Thrombotic Cardiac Events Unless Ingested 18 Months or Longer, filed November 2, 2005.

In fact, there is no reliable, statistically significant data from *any* clinical trials that using 25 mg Vioxx for less than five months can increase the risk of thrombotic CV event. In particular, the two studies most commonly cited by plaintiffs' experts, VIGOR and APPROVe, fail to support Mr. Smith's claims.

1. The VIGOR Study.

Plaintiff's experts cannot rely on the results of the VIGOR[3] study to show that his use of 25 mg Vioxx for less than five months is associated with an increased CV risk.

First, VIGOR involved patients regularly taking the 50 mg dose, which is twice the dose Mr. Smith claims to have taken for just over four months. Because "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect," *McClain*, 401 F.3d at 1242 (internal citations and quotation marks omitted), the results of VIGOR, which involved the use of high-dose Vioxx, cannot and do not provide a generally accepted scientific basis for concluding that the use of Vioxx at the 25 mg dose was capable of causing Mr. Smith's alleged heart attack.

Second, VIGOR involved an elderly population with rheumatoid arthritis, a condition that put the study's patients at increased risk of CV problems.[4] Here, Mr. Smith did not have rheumatoid arthritis and cannot be described as elderly as he had his heart attack in his early 50's.

Third, VIGOR did not compare Vioxx against a placebo, rather it compared it with

---

[3] Claire Bombardier et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 NEW. ENG. J. MED. 1520 (Nov. 30, 2000). VIGOR, an acronym, stands for "Vioxx GI Outcomes Research" study.

[4] Wolfe, et al., *The Mortality of Rheumatoid Arthritis, Arthritis & Rheumatism* (08/19/93); Myllykangas-Luosujarvi, *et al., Mortality in Rheumatoid Arthritis, Arthritis & Rheumatism* (12/95).

naproxen. Thus, it is impossible to determine based on the results of VIGOR whether the relative increase of adverse cardiovascular events seen in the Vioxx arm of the study was attributable to: (1) a cardiovascular risk associated with high-dose Vioxx; (2) a cardio-protective effect associated with naproxen; or (3) chance, either in whole or in part.[5]

    2.    The APPROVe Study.

Nor can plaintiff's experts rely on the results of the APPROVe study.[6] The study did *not* associate a statistically significant risk of heart attacks or sudden cardiac death with under five months of use of 25 mg Vioxx. Thus, regardless of what opinions APPROVe purportedly supports concerning a longer duration of Vioxx use, its results cannot establish to a reasonable degree of medical and scientific certainty that Mr. Smith's short-term use of Vioxx was capable of causing a thrombotic cardiovascular event. *See, e.g.*, *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991) ("If the . . . duration of exposure to [substance is] the type[] of information upon which experts reasonably rely when forming opinions on the subject, then the district court was justified in excluding Dr. Miller's opinion that is based upon critically incomplete or grossly inaccurate . . . duration data."); *Thompson v. S. Pac. Transp. Co.*, 809 F.2d 1167, 1169 (5th Cir. 1987) (expert's opinion on dioxin as source of plaintiff's illness had "insufficient factual basis" in part because expert had no knowledge of duration of exposure); *Gulf S. Insulation v. U.S. Consumer Prod. Safety Comm'n*, 701 F.2d 1137, 1146 (5th Cir. 1983)

---

[5] *See* Patrono, FitzGerald et al., *Platelet Active Drugs: The Relationships Among Dose, Effectiveness, and Side Effects*, CHEST 2004; 126:234S-264S ("While the cause of the apparent excess risk of MI in [VIGOR] cannot be conclusively established, a combination of some cardioprotective effect of naproxen and the play of chance does seem to offer a plausible explanation for these unexpected findings.") (emphasis added); Reference Manual on Scientific Evidence at 484-5.

[6] Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, 352 NEW. ENG. J. MED. 1092 (Mar. 17, 2005).

(usefulness of epidemiological studies was diminished based on "failure to consider either the length of time the workers were exposed to formaldehyde"); *Edwards v. Safety-Kleen Corp.*, 61 F. Supp. 2d 1354, 1359 (S.D. Fla. 1999) (excluding opinion of expert who was not aware of any studies which define the minimum duration of exposure to benzene necessary to be toxic).

***

As discussed in detail in Merck's incorporated prior briefing, plaintiff cannot identify any randomized clinical studies which provide statistically significant data supporting plaintiff's position that 25 mg Vioxx, taken for less than five months, is capable of causing thrombotic cardiovascular events such as heart attacks. Nevertheless, plaintiffs' experts seek to offer such an opinion based on the fact that some clinical trial patients had heart attacks within the first few months of Vioxx use. But that fact is of no scientific consequence.

People have heart attacks every day in the United States. People had heart attacks before Vioxx was on the market and they have continued to have heart attacks after Merck voluntarily withdrew Vioxx from the market in September 2004. Not surprisingly, people had heart attacks while Vioxx was on the market too. Some people had them while taking Vioxx. And many others had them without ever taking the drug. The fact that a person had a heart attack while taking Vioxx does not prove that Vioxx causes heart attacks any more than the fact that some people have heart attacks while watching television proves that watching television causes heart attacks. Likewise, the fact that some people had heart attacks within the first few months of taking Vioxx proves nothing about whether or at what duration of use Vioxx might increase CV risk. *See, e.g., Moore v Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (expert's reliance on the temporal relationship between the exposure and the onset of symptoms was entitled to little weight in the absence of supporting literature); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (rejecting expert testimony that nicotine patch caused a heart attack

824147v.1

because the attack occurred just three days later as "lack[ing] scientific rigor").

Indeed, the field of epidemiology, with its concepts of statistical significance and confidence intervals, is devoted to separating chance occurrences from true associations and, ultimately, causation.  To allow plaintiffs' experts to rely merely on temporal coincidence, without more, would be to disregard both law and science.  The Court, therefore, should preclude plaintiffs' experts from opining that clinical trial data show an increased CV risk with less than five months of Vioxx use.

  **B.** **No Observational Study Establishes That Taking 25 mg Vioxx For Less Than Five Months Is Capable of Causing CV Events.**

Plaintiff's experts also purport to rely on a handful of observational epidemiological studies, but no such study can meet the two independent, threshold requirements to establish their reliability.  First, the study must be statistically significant, meaning that the confidence interval does not include a value of 1.0 or below.  *See, e.g.*, *Brock*, 874 F.2d at 313, *modified on reh'g*, 884 F.2d 166, 167 (reversing verdict in Bendectin litigation given plaintiff's failure to present statistically significant[] epidemiological proof); *LeBlanc v. Merrell Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996) (granting summary judgment in Bendectin litigation given absence of "statistically significant epidemiological studies"); *Chambers*, 81 F. Supp. 2d at 664-66 (excluding expert's testimony based on absence of "statistically significant epidemiological proof").

Second, an epidemiologic study cannot establish causation unless it also shows that the drug more than doubles the relative risk of injury.  *See, e.g., Deluca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990) ("[A] relative risk of '2' means that, on the average, there is a fifty per cent likelihood that a particular case of the disease was caused by the event under investigation and a fifty per cent likelihood that the disease was caused by chance alone.");

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 718-23 (Tex. 1997) (statistically significant epidemiological studies showing doubling of risk required to prove causation); Reference Manual on Scientific Evidence at 539.

Consistent with these principles, an expert's proffered testimony should not be admissible when it is based on epidemiologic data that does not show more than a doubling of the risk. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1315 n. 16 (11th Cir. 1999) ("The threshold for concluding that an agent more likely than not caused a disease is 2.0 . . . . Moreover, showing *association* is far removed from proving *causation.*); *Chambers*, 81 F. Supp. 2d at 664-65 ("'What is significant in this case is that the substantial body of epidemiological evidence demonstrates that [exposure to benzene] [does] not double the risk of [CML].'") (quoting *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1228 (D. Colo. 1998) (holding that expert testimony under *Daubert* must demonstrate that exposure to breast implants more than doubles risk of injury)).

As fully explained in Merck's previous briefing, incorporated in full, *supra*, no observational studies provide statistically significant evidence that the use of 25 mg Vioxx for less than five months can double the risk of thrombotic CV events. Two observational studies have provided additional conclusions subsequent to Merck's prior briefing, but as discussed below neither study supports Mr. Smith's claims.

1. The 2006 Levesque Study.

As discussed in the incorporated previous briefing, the "Levesque Study"[7] does not show that the use of 25 mg Vioxx for less than six months is associated with a greater than doubling of

---

[7] Levesque, L.E., *The Risk for Myocardial Infarction with Cyclooxygenase-2 Inhibitors: A Population Study of Elderly Adults*, ANN. OF INTERN. MED. 2005; 142:481-489.

824147v.1

the risk of heart attacks or sudden cardiac death.[8]  Instead, the relative risk associated with 25 mg Vioxx when compared to no NSAID use, a risk of 1.21, was only marginally significant with a confidence interval of 1.02-1.43, and is equivalent to what the Eleventh Circuit has recently found insufficient under *Daubert*.  *See Allison*, 184 F.3d at 1315 & n.16.  In addition, the case-patients in the study received approximately six Vioxx prescriptions over one year, which is far in excess of the three prescriptions that Mr. Smith received.[9]

Not surprisingly, when Levesque and colleagues published a follow-up to their 2005 article attempting to study the timing of the onset of cardiovascular events with the use of coxibs,[10] they found that patients who received more than 8 prescriptions for Vioxx did *not* have an excess risk of heart attacks – the relative risk was only 0.96 and it was not statistically significant.[11]  The only risk the authors found through use of subgroup analysis was in patients who filled their first prescription for Vioxx recently – showing a relative risk of 1.67 – with events occurring within a median of 9 days after therapy was started.[12]  Clearly, Plaintiff's heart attack occurred more than 9 days after he started Vioxx therapy.  Not only did the Levesque study fail to demonstrate the doubling of risk required before an expert can rely on an observational study, but the results were statistically insignificant, the subjects were not

---

[8] *Id.* at 483-84.

[9] *Id.* at 483.

[10] The Levesque study was conducted in patients over the age of 65 and its applicability to the Plaintiff, who was age 52 at the time of his event, has not been explained by Plaintiff's experts.

[11] *Id.* at 6, Table 3.

[12] *Id.* 1-2.

824147v.1

analogous in age to Mr. Smith, and the authors themselves identified several issues casting doubt on the reliability of the study's results.[13]

2. The Ingenix Study.

The Ingenix study, as discussed in Merck's prior briefing, cannot be the basis of an opinion that the use of 25 mg Vioxx for less than five months increases CV risk.[14] As previously explained, the study did not distinguish between individuals who took Vioxx at the 25 mg or 50 mg doses when compared against use of ibuprofen/diclofenac, and even this combined-dose comparison was statistically insignificant for heart attacks and sudden cardiac death.

The final report of the study was published in 2006, and it confirms that Ingenix cannot support Mr. Smith's claims.[15] This publication confirms that there is no excess risk of acute coronary syndrome and sudden cardiac death associated with Vioxx versus Ibuprofen/diclofenac

---

[13] The authors also admit the following limitations to their study:

- It is possible that the risk of myocardial infarction returns to baseline sooner than they were able to demonstrate, but they had insufficient numbers for a daily assessment.
- Only cases admitted to hospital could be included in the analyses, and consequently events such as silent myocardial infarction or sudden death could have resulted in incomplete case ascertainment.
- The intermittent use that occasionally accompanies NSAID therapy may have lead to misclassification of exposure.
- They did not have information on smoking status, obesity, physical activity, family history or socioeconomic status.
- Finally, they were unable to account for the use of aspirin and ibuprofen obtained without a prescription. (*Id.* at 7.)

[14] Ingenix Epidemiology Report, *Cardiovascular Risk of COX-2 Inhibitors and Other NSAIDs*, Feb. 16, 2004, attached as Ex. C.

[15] Velentgas P. et al., *Cardiovascular risk of selective cyclooxygenase-2 inhibitors and other non-aspirin non-steroidal anti-inflammatory medications*, PHARMACOEPIDEMIOL DRUG SAF. 2006 Jan 4; (Epub ahead of print) available at www.interscience.wiley.com (DOI: 10.1002/pds.1192).

during treatment of 61-90 days or treatments longer than 90 days.[16]

\*\*\*

In short, no observational studies can be relied upon by an expert to support the theory that taking 25 mg Vioxx for less than five months is capable of causing thrombotic CV events such as heart attacks or that it caused Mr. Smith's heart attack in particular. Simply put, plaintiff cannot identify a *single* statistically significant observational study showing that Vioxx at that dose and duration more than doubles the risk of such events. At best, the purported findings of the existing observational studies are inconsistent and inconclusive even for dosages and durations of Vioxx use that are not at issue in this cases. Moreover, these unreliable observational findings are themselves contradicted by the randomized clinical data which courts have recognized as a far superior source for assessing causation.

### III.   CONCLUSION.

For the foregoing reasons as well as the reasons articulated in Merck's prior briefing on this subject, Merck respectfully requests that the Court exclude any testimony from plaintiff's expert witnesses that the use of 25 mg Vioxx for less than five months is capable of causing thrombotic CV events such as heart attacks or that it caused plaintiff's heart attack.

Dated: August 14, 2006

---

[16] *Id.* at 8, Table 4.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

824147v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion for Order Excluding Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

>
> */s/ Dorothy H. Wimberly*
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

824147v.1