# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MISCELLANEOUS MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN *LIMINE* AND/OR REQUEST FOR LIMITING INSTRUCTIONS

### (PLAINTIFF'S MOTION IN *LIMINE* NO. 1)

Plaintiff asks the Court to exclude evidence or argument on a laundry list of topics. Much of plaintiff's motion is unnecessary and not relevant to this case, as Merck does not intend to offer evidence or make arguments related to many of the enumerated topics.  As to certain other topics, Merck opposes plaintiff's request either conditionally or in full.

824109v.1

## I.     SUMMARY OF MERCK'S POSITIONS.

For the Court's convenience, the following chart summarizes Merck's position on the 35 requests included in plaintiff's motion.  Merck's responses can be categorized as follows: (1) requests that the Court should deny (designated in the chart as "deny"); (2) evidence that Merck does not plan to introduce at trial unless plaintiff introduces such evidence, in which case Merck reserves the right to use such evidence in rebuttal ("qualified exclusion"); and (3) requests for which Merck does not intend to offer evidence or make any argument in the compensatory phase of this trial ("not relevant").

| A | "That a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications." | Not relevant |
|---|---|---|
| B | "That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide." | Not relevant |
| C | "That this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial hardship or loss of employment." | Not relevant |
| D | "That this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining insurance." | Not relevant |
| E | "That this case or any other Vioxx product liability case may cause an increase in the cost of purchasing medications for the public." | Not relevant |
| F | "Health Canada's or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries." | Qualified Exclusion |
| G | "The medical conditions of Plaintiff or Plaintiff's family that are unrelated to the injuries at issue in this lawsuit." | Deny |
| H | "Character attacks on Plaintiff Garry Smith." | Deny |
| I | "That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question." | Qualified Exclusion |
| J | "That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law." | Not relevant |
| K | "The purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases." | Not relevant |
| L | "That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or routinely[sic] employ contingent fee arrangements | Qualified Exclusion |

824109v.1

| | [except as they relate to any fees in this case]." | |
|---|---|---|
| M | "Other Vioxx cases and other cases involving Plaintiff's counsel or other drugs." | Qualified Exclusion |
| N | "That any witness or lawyer for the Defendant, or any of their family members, have used Vioxx." | Deny |
| O | "That Vioxx was taken off the market due to 'media hype' caused by attorneys or the media themselves." | Not relevant |
| P | "Bolstering the unchallenged character (e.g., honest) or traits (e.g., generous) of the Defendant's current or former employees, managers, consultants, experts, agents, or fiduciaries preemptively." | Qualified Exclusion |
| Q | "Unsupported hearsay statements of health care providers." | Qualified Exclusion |
| R | "That any members of the public or medical community desire that Vioxx be placed back on the market." | Deny |
| S | "The potential impact on pharmaceutical companies and/or the FDA, if any, of permitting state failure to warn claims to be asserted or of allowing a plaintiff in such a case to prevail." | Qualified Exclusion; Deny |
| T | "The fees received and/or charged by Plaintiff's experts for work in lawsuits involving drugs other than Vioxx and reference to them as 'paid litigation experts' or the like." | Deny |
| U | "Plaintiff's alleged knowledge of cardiovascular risks associated with the use of Vioxx." | Deny |
| V | "That Kentucky is part of a so-called 'stroke belt.'" | Deny |
| W | "That typographical errors in Dr. Moye's report indicate that it was cut and pasted from another case." | Deny |
| X | "That any Plaintiffs' counsel may have advertised for persons injured by the use of Vioxx or in any other manner." | Deny |
| Y | "That Mr. Smith's injury is his own fault or the fault of his prescribing and/or treating physicians." | Deny |
| Z | "That FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law." | Deny |
| AA | "Voir dire questions that discuss the wrong legal standard and contain argument." | Deny |
| BB | "Addressing opposing counsel directly in the presence of the jury without Court permission." | Deny |
| CC | "Jury consultants." | Deny |
| DD | "Settlement, Negotiations or the Lack Thereof." | Not relevant |
| EE | "Stipulations." | Not relevant |
| FF | "Motions to exclude or in limine." | Not relevant |
| GG | "Notice to defense witnesses." | Deny |
| HH | "Violations of these orders." | Deny |
| II | "Product labeling for other drugs Plaintiff took." | Deny |

824109v.1

II.     **MERCK'S SPECIFIC RESPONSES TO PLAINTIFF'S REQUESTS.**

   A.     **"That a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

   B.     **"That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

   C.     **"That this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial hardship or loss of employment."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

   D.     **"That this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining insurance."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

   E.     **"That this case or any other Vioxx product liability case may cause an increase in the cost of purchasing medications for the public."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial,

824109v.1

Merck reserves the right to address this topic at that time.

**F.      "Health Canada's or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries."**

Merck's Response:   Merck agrees that it would be inappropriate for either party to mention statements, decisions, or requirements of a foreign regulatory agency.   Such evidence bears no relation to Mr. Smith's use of Vioxx®, his doctors' decisions to prescribe Vioxx to him, or any of Merck's alleged conduct in this case.   If, however, plaintiff improperly raises evidence of, for example, how Vioxx is labeled in other countries, then Merck should be entitled to rebut this evidence with proof of other foreign regulatory actions, such as the Health Canada statement.

**G.      "The medical conditions of Plaintiff or Plaintiff's family that are unrelated to the injuries at issue in this lawsuit."**

Merck's Response:   The Court should deny this request.   Whether certain health conditions are "related" or "unrelated" is in dispute.   For example, plaintiff identifies several specific family medical conditions and argues that they are irrelevant to this case.   Family medical history is an important risk factor for predicting cardiovascular events.   The Court cannot determine out of context what conditions present in plaintiff's family history are relevant in this case.

**H.      "Character attacks on Plaintiff Garry Smith."**

Merck's Response:   The Court should deny plaintiff's request, which is predicated on allegations that are patently untrue.   Plaintiff uses this request to make the unsupported allegation that Merck has "hired private investigators to attempt to 'dig up dirt' on plaintiff[.]"   Not only is this comment irrelevant, it is absolutely false.   Plaintiff's motion in *limine* also references criminal conduct, where no criminal conduct has been the subject of any deposition or testimony in this case.   It is thus unclear as to what exactly plaintiff's motion in *limine* "H" relates.

824109v.1

Plaintiff also mentions Mr. Smith's use of certain medications, potential alcohol use, and his divorce. Plaintiff's request should be denied because evidence on these topics, if introduced, would not be used to show bad character, it would go to liability or damages or both. For example, evidence that Mr. Smith went through a separation and divorce may be relevant to show stress on Mr. Smith – a potential risk factor relevant to this case. Also, with respect to Mr. Smith's use of certain other drugs, any potential confounding risk factor is relevant. Such evidence would plainly be relevant to the issue of medical causation and should not be excluded. And to the extent that plaintiff maintains that his marriage failed in part due to his MI, then Merck would be entitled to introduce evidence concerning the reasons for his divorce to address plaintiff's claimed emotional harm.

**I.      "That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question."**

Merck's Response:  Merck is willing to agree to make no comment about plaintiff's liability insurance if plaintiff will agree to refrain from making any comment about Merck's liability insurance.  To the extent plaintiff's request encompasses more than just evidence of insurance, Merck opposes this request.

**J.      "That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

**K.      "The purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

**L.**     **"That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or rountinely[sic] employ contingent fee arrangements [except as they relate to any fees in this case]."**

<u>Merck's Response</u>:  To the extent that this request overlaps with the evidence which is the subject of plaintiff's request X, this motion should be denied.  Evidence regarding Mr. Smith's decision to bring this lawsuit, the timing of that decision, and the circumstances surrounding that decision are relevant to the proceedings and should not be excluded.

Apart from the exceptions outlined above, Merck is willing to agree to make no comment about the subject matter of paragraph L if plaintiff will agree to refrain, to the same extent, from making any comment about Merck's defense counsel.

**M.**     **Other Vioxx cases and other cases involving Plaintiff's counsel or other drugs.**

<u>Merck's Response</u>:  Merck agrees that it would be inappropriate for either party to mention other Vioxx cases and other cases involving Plaintiff's counsel or other drugs.  Such evidence bears no relation to Mr. Smith's use of Vioxx, his doctors' decisions to prescribe Vioxx to him, or any of Merck's alleged conduct in this case.  If, however, plaintiff improperly raises these issues, then Merck should be entitled to rebut this evidence.  An exception would be reference to other testimony of a witness, e.g., for impeachment purposes or to show bias or financial motive.

**N.**     **"That any witness or lawyer for the Defendant, or any of their family members, have used Vioxx."**

<u>Merck's Response</u>:  The Court should deny this request for the reasons and to the extent set forth in its concurrently-filed Opposition to Plaintiff's Motion to Exclude or, in the alternative, Motion in *Limine* Concerning Evidence or Argument that Merck Employees, Former Employees, or their Family Members took Vioxx Prior to the Drug's Withdrawal From the

824109v.1

Market (Opp. to Pl.'s Mot. in *Limine* No. 2).

     **O.**     **"That Vioxx was taken off the market due to 'media hype' caused by attorneys or the media themselves."**

Merck's Response:  Merck does not intend to offer evidence or make any argument on this topic.

     **P.**     **"Bolstering the unchallenged character (e.g., honest) or traits (e.g., generous) of the Defendant's current or former employees, managers, consultants, experts, agents, or fiduciaries preemptively."**

Merck's Response:  Merck's position on this request depends on whether plaintiff is permitted to introduce evidence purportedly showing the "bad character" of Merck.  Evidence of allegedly "bad acts" or generalized "bad character" is irrelevant and/or inadmissible on a number of grounds.  As a general matter, Merck does not intend to offer evidence of its good character or that of its employees "preemptively."  However, Merck does plan to offer general background information about its witnesses, and should plaintiff claim that Merck or its employees committed bad acts or acted dishonestly, Merck would plainly be entitled to rebut such evidence.

     Merck also opposes this request to the extent that plaintiff is seeking an order excluding evidence of the basic nature of Merck's business, for the reasons and to the extent set forth in its concurrently-filed Opposition To Plaintiff's Motion to Exclude or, in the Alternative, Motion in *Limine* Concerning Evidence Or Discussion Concerning Defendant's Alleged Good Reputation And/Or "Good Acts" (Plaintiff's Motion in *Limine* No. 3).

     **Q.**     **"Unsupported hearsay statements of health care providers."**

Merck's Response:  Merck agrees that it would be inappropriate for either party to offer unsupported hearsay statements that are specifically excluded by Federal Rule of Evidence 802, although this cannot be assessed in a vacuum.  To the extent, however, Merck seeks to introduce evidence under Federal Rule of Evidence 803(4), an exception to the hearsay rule, for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical

history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof[,]" or under any other appropriate basis for admitting such evidence, such statements should be permitted by the Court.  FED. R. EVID. 803(4).

> **R.**     **"That any members of the public or medical community desire that Vioxx be placed back on the market."**

Merck's Response:  The Court should deny this request.  Evidence that people today want to take Vioxx even after all of the publicity that the withdrawal of Vioxx from the market has received (and that the litigation has received) is relevant to assessing the credibility of plaintiff's claim.  When assessing plaintiff's claim that he would not have taken Vioxx, the jury should not be kept in the dark about the fact that many people today would take the drug if permitted and that the FDA has conducted discussions or made recommendations that Vioxx be put back on the market.

This evidence is also relevant if the Court allows the jury to consider without a limiting instruction the fact of withdrawal as bearing on such issues as negligence or causation.  In that case, Merck should be entitled to present evidence of public or medical support for the availability of Vioxx to counter such inferences.

> **S.**     **"The potential impact on pharmaceutical companies and/or the FDA, if any, of permitting state failure to warn claims to be asserted or of allowing a plaintiff in such a case to prevail."**

This request actually includes a number of requests that each merit a separate response:

***Subsection (1)***:  "[P]ermitting state failure to warn claims, such as this one, to be asserted . . . causes or pressures drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits[.]"

Merck's Response:  Merck agrees that it would be inappropriate to mention any of the matters described in subsection (1) *unless* the Court allows plaintiff to argue that Merck's

warnings for Vioxx were inadequate because Merck did not add a "black box" warning or make other label changes not approved by the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

***Subsection (2)***:  "[P]ermitting state failure to warn claims, such as this one, to be asserted . . . undercuts the FDA's mission to provide only scientifically valid warnings[.]"

Merck's Response:  Merck agrees that it would be inappropriate to mention any of the matters described in subsection (2) *unless* the Court allows plaintiff to argue that Merck committed fraud on or misled the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

Subsection (3):  "[P]ermitting state failure to warn claims, such as this one, to be asserted . . . frustrates the FDA's protective regime[.]"

Merck's Response:  Merck agrees that that it would be inappropriate to mention any of the matters described in subsection (3) *unless* the Court allows plaintiff to argue that Merck committed fraud on or misled the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

***Subsection (4)***:  "[P]ermitting state failure to warn claims, such as this one, to be asserted has the . . . effect[] that too many warning of serious injuries will dilute the effectiveness of warnings generally."

Merck's Response:  The Court should deny this request.  Evidence of this nature is relevant to the adequacy of the warnings given about Vioxx and to the reasonableness of Merck's conduct.  Merck is prepared to offer expert testimony at trial that the FDA does not want the effectiveness of warnings in general diluted by too many warnings of every alleged risk associated with a drug.

824109v.1

Note that each of plaintiff's requests is contextual and Merck's arguments will depend on what arguments plaintiff advances.

**T.    "The fees received and/or charged by Plaintiff's experts for work in lawsuits involving drugs other than Vioxx and reference to them as 'paid litigation experts' or the like."**

Merck's Response:  The Court should deny this request.  Plaintiff admits "evidence of fees received in this case is arguably relevant to show potential bias[,]" but suggests that similar evidence from other cases has no probative value.  Plaintiff's attempt to differentiate between this case and other pharmaceutical cases falls flat.  All evidence of plaintiff's experts' financial interest in pharmaceutical cases is relevant to the experts' potential bias and interest in the outcome of the matter.  This potential financial interest, is relevant, probative, and within the understanding of the jury.  It should be admitted at trial.  The Court has addressed and allowed this evidence at previous trials.

**U.    "Plaintiff's alleged knowledge of cardiovascular risks associated with the use of Vioxx."**

Merck's Response:  The Court should deny this request.  Merck agrees that Kentucky has adopted the learned intermediary doctrine.  *See Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 770 (Ky. 2004).  However, plaintiff's knowledge of cardiovascular risks associated with the use of Vioxx is probative, among other things, of whether he was aware of any risks when he took the drug, whether he received adequate warnings directly from the manufacturer, and whether his doctor understood the risks and conveyed that knowledge to him.  Plaintiff's understanding of the potential cardiovascular risks goes to the heart of issues surrounding the failure to warn and fraud claims as well as Merck's defense of contributory negligence.

**V.    "That Kentucky is part of a so-called 'stroke belt.'"**

Merck's Response:  The Court should deny this request.  The term "stroke belt" is widely used among scientists and public health professionals who study strokes.  Although different

authorities use different geographic boundaries, they agree that a geographic area in the southeastern United States, including plaintiff's home in Kentucky, has a higher incidence of stroke than the rest of the nation.  For example, the National Institutes of Health's National Heart, Lung, and Blood Institute (NHLBI) examined the 1980 age-adjusted stroke mortality rates by state.  Eleven states had stroke death rates more than 10% higher than the U.S. average.  The NHLBI designated those eleven states – which include Kentucky – as the "stroke belt."  *See* *http://www.nhlbi.nih.gov/health/prof/heart/other/sb_spec.htm*.  Plaintiff does not and cannot deny that stroke and heart attack have very similar causes and risk factors.  Nor can he deny that he lives in this area.  Therefore, the Court should deny plaintiff's request.

**W.**     **"That typographical errors in Dr. Moye's report indicate that it was cut and pasted from another case."**

Merck's Response:   The Court should deny this request.  All evidence about the condition and accuracy of Dr. Moye's report, including what plaintiff characterizes as typographical errors and printing marks, is relevant to the integrity of his report.  Such evidence is also probative of Dr. Moye's trustworthiness and is a proper subject for cross-examination.  The jury, not the Court, should decide the credibility of such evidence and related argument.  The Court addressed this evidence in the *Barnett* trial.

**X.**     **"That any Plaintiffs' counsel may have advertised for persons injured by the use of Vioxx or in any other manner."**

Merck's Response:   The Court should deny this request to the extent it would preclude evidence concerning the reasons this plaintiff elected to file the present lawsuit.  Such evidence is relevant since plaintiff testified that some two years after he suffered his heart attack he instructed his wife to call an 800 number to contact a law firm after seeing a lawyer advertisement on television for anyone who had taken Vioxx and had a heart attack.  (*See* Deposition of Robert Smith at 205:22-206:211:10, attached hereto as Ex. A.).  The timing,

circumstances, and justification for plaintiff's decision to file suit are relevant to, among other things, his claim to have suffered emotional injury warranting an award of damages.

**Y.    "That Mr. Smith's injury is his own fault or the fault of his prescribing and/or treating physicians."**

<u>Merck's Response</u>:  The Court should deny this request.  Plaintiff cannot, by motion in *limine*, preclude Merck from presenting an affirmative defense at trial.  Obviously, any and all acts by plaintiff or his treating physicians that could have contributed to plaintiff's alleged injury are relevant and admissible at trial.  The jury will be asked to apportion liability if it finds Merck liable.

**Z.    "That FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law."**

<u>Merck's Response</u>:  The Court should deny this request.  As plaintiff correctly points out, Merck is entitled to explain to the jury that Vioxx was approved by the FDA.  Whether or not that fact, along with other facts presented by Merck at trial, convince the jury that Merck "met its standard of care and/or fulfilled its duty to warn" is a question that will ultimately be answered by the jury.  An Order limiting the arguments that *might* be made at trial (especially since such arguments might be made in concert with other arguments) is untimely because it requires context.  It would be inappropriate at this early stage to limit, by motion in *limine*, the arguments that Merck might make based on this overbroad request by plaintiff.

**AA.   "Voir dire questions that discuss the wrong legal standard and contain argument."**

<u>Merck's Response</u>:  The Court should deny this request.  Although Merck agrees that voir dire questions may be the proper subject of the Court's review, here plaintiff's request is premature.  Presently there are no voir dire questions before the Court, so the Court cannot properly consider plaintiff's vague request at this time.

824109v.1

**BB.** **"Addressing opposing counsel directly in the presence of the jury without Court permission."**

<u>Merck's Response</u>: The Court should deny this request. Although Merck agrees that trial counsel for both parties should act appropriately – a standard that Merck's counsel has met in the past – here plaintiff's request is premature. This has not been a problem in prior trials. Obviously, whether addressing opposing counsel directly is improper depends on the context. In the event there is an issue at trial, the Court should consider it at that time.

**CC.** **"Jury consultants."**

<u>Merck's Response</u>: The Court should deny this request. Whether or not it is appropriate to reference jury consultants is contextual and cannot be decided in the abstract. As the Court recently recognized in the *Barnett v. Merck* case, a party may cross-examine an expert witness on how he or she has prepared to testify and, in so doing, may inquire about jury consultants with whom the expert has met.

**DD.** **"Settlement, Negotiations or the Lack Thereof."**

<u>Merck's Response</u>: Merck does not intend to offer evidence or make any argument on this topic.

**EE.** **"Stipulations."**

<u>Merck's Response</u>: Merck does not intend to offer evidence or make any argument on this topic.

**FF.** **"Motions to exclude or in limine."**

<u>Merck's Response</u>: Merck does not intend to offer evidence or make any argument on this topic.

**GG.** **"Notice to defense witnesses."**

<u>Merck's Response</u>: The Court should deny this request. Plaintiff's request, which is vague and ambiguous, is not the proper subject for a motion in *limine*.

**HH.    "Violations of these orders."**

Merck's Response:  The Court should deny this request.  Plaintiff's request, which is vague and ambiguous, is not the proper subject for a motion in *limine*.

**II.    "Product labeling for other drugs Plaintiff took."**

Merck's Response:  The Court should deny this request.  Plaintiff must prove that Vioxx caused his alleged injury.  The warning labels accompanying any other drugs taken by plaintiff could provide evidence of confounding factors, and is therefore relevant to plaintiff's claims.

Plaintiff misstates the issue by contending that plaintiff's doctors' decision to prescribe other drugs ends the inquiry under the learned intermediary doctrine.  This is not correct.  The real issue is whether other drugs, in fact, could have contributed to plaintiff's alleged injury.  As the product warning labels for each of the drugs plaintiff was taking would provide important information about whether those drugs posed CV risks, they are highly relevant to the issue of causation and should be admitted at trial.  Depending on context, warning labels on other drugs also could be relevant to contributory negligence and/or used for impeachment.

824109v.1

Dated:  August 14, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

Attorneys for Merck & Co., Inc.

824109v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition of Merck to Plaintiff's Miscellaneous Motion To Exclude Or, In The Alternative, Motion In *Limine* And/Or Request For Limiting Instructions has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

824109v.1