UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 <br><br> Section L <br><br> Judge Eldon E. Fallon <br><br> Magistrate Judge Daniel E. Knowles, III |

**THIS DOCUMENT RELATES TO:**
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DAVID GRAHAM, M.D.**

(Plaintiff's Opposition to Defendant's Motion to Exclude No. 4)

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff R Garry Smith, by and through his undersigned counsel, asks this court to Deny Defendant Merck & Co., Inc.'s ["Merck's] Motion to Exclude Testimony of David Graham, M.D. (hereafter "Merck's Motion to Exclude Graham"). In support thereof, Plaintiff would show as follows:

**INTRODUCTION**

In every Vioxx trial, Merck has asserted that it should not be held liable for failing to warn plaintiffs' doctors because Vioxx's FDA approval for certain uses meant that the drug was safe and effective, and its labeling adequate. Although Plaintiff has moved to exclude such a flagrant misstatement of Kentucky and federal law from the trial of this cause, this Court may count on the fact that, if given the opportunity to do so, Merck will make that same flawed argument again.

The truth is that, like other governmental decisions, including those of the NTSB, Chemical Safety Board and the like, the decisions of the FDA approving or rejecting a drug should be

excluded from this trial at least under Rule 403 because of the high likelihood of juror confusion between the FDA's balancing test of risks and benefits and the standard of care a jury must use in deciding the case. Moreover, the imprimatur implied by saying a drug is FDA approved is, as other agencies have recognized, too unfairly prejudicial to allow such evidence even to be admitted in a civil trial.

Plaintiff may seek to exclude such evidence in this trial, and has already moved to stop Merck's blatant attempts to misrepresent and misuse it. In that regard, Plaintiff Smith has sought and will seek at trial a mandatory limiting instruction each time such approval is mentioned. To the extent it is admitted in the case at all, however, and the jury is permitted to draw inferences therefrom, Plaintiff Smith should be able to introduce evidence that would correct any misimpression Merck fosters and/or give the jury a complete picture of the FDA process where Merck provides only carefully selected snippets. For these reasons, under FED. R. EVID. 106, the first time evidence is admitted regarding FDA approval, Plaintiffs are absolutely entitled to introduce *any* other deposition testimony or documents "which ought in fairness to be considered contemporaneously with it." Dr. David Graham's testimony is exactly the kind of evidence envisioned when Rule 106 was drafted.

Moreover, Dr. Graham's first-hand knowledge of the workings of the FDA are rationally based and would be extremely helpful to the trier of fact. As such, it is also admissible under Rule 701(a) and (b), or, to the extent it might be considered expert testimony, Rule 702.

Merck cannot argue with a straight face that proof of FDA approval shows it met the standard of care, virtually as a matter of law, but that any evidence tending to show that FDA approval is not the gold-standard Merck would lead the jury to believe it is is somehow preempted

and must be excluded.  Much as Merck may like to think so, the FDA does not have the authority to "preempt" evidentiary rulings in civil cases nor preclude all criticism of its workings.  If Merck does not want to hear evidence that FDA approval is ***not*** a finding of safety and efficacy nor a verification that it has met a state's standard of care,  it should not say that it is and inject the matter into the case by harping endlessly about FDA approval.  Such uncharacteristic restraint would be far more appropriate than the "heads: I win; tails: you lose" approach Merck asks the Court to take here.

Merck's arguments that Dr. Graham's other testimony is inadmissible are equally specious. First, Merck once again claims that Dr. Graham's conclusions concerning Vioxx deaths are wrong and, therefore, presumptively unreliable and prejudicial. In overruling this objection several times before, this Court, unlike Merck, has recognized that its job as "gatekeeper" is not to become a super-expert to decide whose assessment of given facts is "correct" and exclude the one that is "wrong."  Instead, its proper role is to determine whether certain testimony is minimally reliable. There can be little question that the testimony sought to be excluded here meets those requirements. Try as it might, Merck cannot escape the undisputed fact that Dr. Graham's conclusions have been published in peer-reviewed medical articles,[1] a key indicator of reliability, presented to Congress, and, more important,  found relevant and admissible in this and other Courts. This is, in part, because *Daubert* was never intended to serve as a vehicle to attack conclusions.  That is the role of cross-examination instead.

---

[1] *See* Graham, *Risk of Acute Myocardial Infarction and Sudden Cardiac Death in Patients Treated with Cyclo-oxygenase 2 Selective and No-selective non-steroidal anti-inflammatory drugs: Nested Case-control Study*, The Lancet.  2005 Feb. 2-11; 365(9458):475-81, attached and incorporated herein as Exhibit "A."

Similarly, no court has excluded Dr. Graham's testimony concerning Vioxx deaths under Rule 403. Instead, all have recognized that evidence concerning the dangers of Vioxx is directly relevant to and highly probative of all of Plaintiff's claims. That it is prejudicial, but not unduly so, to Merck's carefully-crafted but factually-bereft arguments is immaterial under Rule 403.

Finally, in a last-ditch effort to avert damaging testimony, Merck asks the Court to reconsider motions to exclude certain of Dr. Graham's testimony this Court has previously denied. None of these motions has any more merit than it did the first time the Court rejected it. This Court need not waste its time reconsidering Merck's same tired arguments.

For all of these reasons, Merck's motion should be denied.

## DISCUSSION

**I.      Merck Has Filed No Motion in Limine; Therefore, if It Loses its Motion to Exclude, It is Entitled to No Other Protection from the Introduction of Such Evidence**

Merck has styled this motion as one to exclude alone. At best, it includes a reference to a motion in limine in a parenthetical under the title of its motion to exclude. It seeks no order in limine in its prayer for relief. As the result, should the Court deny its motion to exclude, Merck is entitled to no other relief from Plaintiff's efforts to introduce such evidence at trial.

This Court should be loathe to exclude evidence prematurely, particularly the sweeping rulings Merck seeks here. A premature determination of evidentiary issues, in the absence of a developed trial record, could unfairly prejudice Plaintiff.[2]

---

[2] *See In re Diet Drugs*, 369 F.3d 293, 314 (3rd Cir. 2004) ("unduly sterilizing a party's trial presentation can unfairly hamper her ability to shape a compelling and coherent exposition of the facts."); *Old Chief v. United States*, 519 U.S. 172, 187 (1997) ("evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw inferences, whatever they may be, necessary to reach an honest verdict").

## II. Dr. Graham's Testimony Concerning the FDA's Workings is Unquestionably Relevant and Admissible Under Rules 701, 702 and 106, to the Extent Merck Injects FDA Approval Into the Case

Plaintiff will introduce at trial the testimony of David Graham, M.D., the FDA's Associate Director for Science and Medicine, Office of Drug Safety, Center for Drug Evaluation and Research, U.S. Department of Health and Human Services. Although Merck injects FDA approval into every case, Merck is quick to challenge the admissibility of Dr. Graham's testimony, which points out the flaws and limitations of such approval. In Merck's view, FDA regulatory processes approving and labeling Vioxx are highly relevant, but the criticisms by an FDA safety officer addressing the foundation of those regulatory processes are not. Once again, Merck tries to have it both ways: to present unfettered the facts favorable to it but to preclude Plaintiff's ability to respond. If the FDA's processes are relevant at all, then the flaws in those processes are equally relevant. As an FDA employee, Dr. Graham speaks to both subjects with first-hand knowledge and proficiency from 20 years of experience. Under Rule 701(a) and (b), his rationally-based perceptions would be very helpful to the determination of the issue of a fact issue in the case: Merck's duty to warn and Vioxx's safety. As such, they are admissible.

In this regard, if and when Merck introduces documents or deposition testimony touting the FDA's approval of Vioxx in this case, which it has done in every trial this far, Plaintiff Smith should also be entitled to correct contemporaneously any attending misimpression that such approval is conclusive of the issue of the adequacy of Merck's disclosures regarding Vioxx's dangers, or that

5

it means that there could be no dangers because the FDA found the drug "safe." Dr. Graham's testimony correcting such misimpressions would, therefore, be admissible under Rule 106 as well.[3]

### III. Merck's Suggestion that Any Criticism of the FDA is Preempted and Automatically Inadmissible is Ludicrous

In its motion, Merck adopts a reading of *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), only a bureaucrat could love: that any testimony that may be interpreted as criticism of the FDA or its processes is preempted as a matter of law and absolutely inadmissible in a court of law. Perhaps such a reading would have some appeal in an authoritarian regime where the notion of separation of powers and things like the First Amendment are unknown, but it has no application in New Orleans. No court in the land has recognized and the FDA itself has never asserted such sweeping authority.[4] This Court should not be the first.

In truth, the Court's evidentiary ruling on Dr. Graham's testimony here has nothing to do with preemption. Regardless of whether information was concealed from the FDA, the issue that usually implicates preemption analysis, Merck undertook to misrepresent the facts to *plaintiff and/or his physicians*, and to conceal *from plaintiff and or his physicians* facts it was bound to

---

[3]Although the Fifth Circuit has not spoken on the issue, this may be true even if Dr. Graham's testimony is otherwise inadmissible. Following 21 C. Wright & K. Graham, Federal Practice and Procedure, §§ 5072, 5078 (1977 & Supp.1987), several courts have held that Rule 106 can fulfill its function adequately only if otherwise inadmissible evidence can be admitted under the rule. *See, e.g., United States v. Sutton,* 255 U.S. App. D.C. 307, 801 F.2d 1346, 1368-69 (D.C.Cir.1986); *see also United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir.1986) (either otherwise inadmissible evidence becomes admissible or if inadmissible (perhaps because of privilege), then the misleading portion must be excluded as well). This analysis emphasizes the rule's provision that "any other portion" may be admitted, with the only stated limitation being that the other portion "in fairness ought to be admitted." FED. R. EVID. 106.

[4]That is not surprising since such a power grab by an executive agency without Congressional authorization would quickly be declared unconstitutional. It is telling that Merck cites no authority for this ominous description of sweeping FDA authority.

disclose. Under those circumstances, there can be no preemption. *See Caraker v. Sandoz Pharm. Corp.,* 172 F.Supp.2d 1018, 1033 (S.D. Ill. 2001); *Globetti v. Sandoz Pharm. Corp.,* 2001 WL 419160 (N.D. Ala. 2001); *Eve v. Sandoz Pharm. Corp.,* 2002 WL 181972 (S.D. Ind. 2002).

Instead, numerous courts have recognized that evidence of defendants' communications with the FDA may be relevant and thus admissible in a lawsuit involving a state tort claim. For example, in *Bouchard v. Amer. Home Products Corp.,* 213 F.Supp.2d 802, 812 (N.D. Ohio 2002), the court specifically stated:

> If, as Bouchard has stated, her claims are based on direct fraud against her and her healthcare provider, rather than the FDA, then her claims are not preempted [under *Buckman*], and evidence concerning what information was and was not provided to the FDA might still be relevant.

Consistent with this authority, this Court previously rejected Merck's preemption arguments with regard to other witnesses testifying about similar subjects. *See In re Vioxx Products Liability Litigation,* 401 F.Supp.2d 565, 587 (E.D.La. Nov. 18, 2005). This Court should do the same here.

**IV.    Merck's Recycled Attempts to Exclude Dr. Graham's Testimony Concerning Vioxx Deaths Under *Daubert* and Rule 403 Are Misplaced**

Yet again, Merck claims that Dr. Graham's conclusions concerning Vioxx deaths is wrong and, therefore, presumptively unreliable and unfairly prejudicial. In overruling these objection several times before, this Court, unlike Merck, has recognized that its job as "gatekeeper" is not to decide whose assessment of a given set of facts is "correct" and exclude the one that is "wrong." Instead, its proper role is to determine whether certain testimony is minimally reliable. To accomplish that task, the Court, in *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.,* 509 U.S. 579, 592-93 (1993), set forth a number of criteria that a court may consider. Among those are whether

the theory or methodology has been or can be tested and whether it has been subjected to peer review and publication. *Id.* at 594.

There can be little question that the testimony sought to be excluded here meets those minimum requirements. Try as it might, Merck cannot escape the undisputed fact that Dr. Graham's conclusions have been published in peer-reviewed medical articles,[5] repeatedly presented to Congress, and, equally important, found relevant and admissible after having been tested in this and other Courts.

Merck's motion addresses none of *Daubert's* criteria.  Instead, it uses a lot of loaded terms like "manipulated," "manufactured," and "misleading," and focuses on Dr. Graham's conclusions as opposed to his methods. Merck also argues that his conclusions  are "simply wrong" or inconsistent, and why he should have reached different ones.  In *Avery Dennison Corp. v. Four Pillars Enter. Co.,* 45 Fed. Appx. 479; 2002 U.S. App. LEXIS 18370; 60 Fed. R. Evid. Serv. (Callaghan) 353 (6th Cir. Sept.3, 2002), the defendant made similar *Daubert*-based attacks on estimates. The court concluded:

> This is not a valid basis for contesting Conti's testimony. *Greenwell,* 184 F.3d at 497-98 ('[Plaintiffs] challenge the inferences made by the expert and the jury from [expert] evidence. The testimony cannot be excluded on those grounds.'). Conti testified that he relied on his personal knowledge, review of project plans, salary information, and interviews of Avery employees with experience in adhesive development. The estimate was not groundless. FP had and took the opportunity to cross-examine Conti extensively on the weaknesses of his testimony at trial; under *Daubert,* that is the proper way to challenge expert witness testimony that is weak, rather than methodologically unsound or irrelevant. *Daubert,* 509 U.S. at 596.

*Id.* at 485. Thus, while Merck has every right to challenge Dr. Graham's conclusions through vigorous cross-examination, it has no right to save itself the trouble by claiming that they are

---

[5] *See* Graham, *supra* note 1.

8

"unreliable" when there is no basis for such a conclusion. In fact, Dr. Graham has been cross-examined. There are no surprises here. Merck should simply be required to confront these facts as it would any witness at trial.

### A. Dr. Graham's Estimates of Excess Heart Attacks and Sudden Cardiac Deaths Are Admissible to Show Notice, Causation, Merck's Failure to Warn, and Its Disregard for Consumers

Merck seeks to exclude evidence relating to or referencing findings from a retrospective nested case-control study conducted by Dr. David Graham, an FDA scientist, and others (hereafter "Graham Study"). The Graham Study authors found an increased risk of heart attacks and sudden death associated with the use of Vioxx as compared to Celebrex. This study was published in a peer-reviewed, medical journal. *See id.* Using the relative risks from randomized clinical trials and the background rates seen in NSAID risk studies, Dr. Graham suggests that an estimated 88,000 to 140,000 excess cases of serious coronary heart disease occurred over the market life of Vioxx. *See id.* Dr. Graham observes that the United States national estimate of case-fatality rate (fatal acute myocardial infarction plus sudden cardiac death) was 44%, and extrapolates from this that many of the above mentioned excess cases attributable to Vioxx use were fatal. *See id.* at 6.

Merck has asked this Court to exclude all testimony and evidence related to Dr. Graham's study and estimates of excess heart attacks and sudden cardiac death ("Graham's Estimates"). Merck claims that such evidence relies on clinically insignificant data. Such a request is improperly overbroad because Dr. Graham's study, in its entirety, has its own independent basis for admissibility. Additionally, information as early as November 1999 suggested that there was an increased risk of serious cardiovascular events occurring in patients taking Vioxx compared to naproxen. The Graham Estimates bring forward the result of Merck's failure to properly warn

9

against the adverse reactions attributable to the ingestion of Vioxx. The Graham Estimates are derived from sound, well-founded methodology and, as indicated by the Defendants in their motion, supported by several experts in the field that have relied to some extent on his findings. Thus, the Graham Study is sufficiently reliable under the Federal law and is admissible.

Merck suggests that the Graham Estimates are irrelevant because, it contends, the Graham Study did not show a statistically significant association between 25 mg Vioxx and the risk of serious coronary heart disease. This narrow-viewed approach to the important data found in Dr. Graham's Study is a perfect example of the myopic view taken by Merck in analyzing all study data related to Vioxx and cardiovascular risk. The Graham Study data exemplify the total potential impact of Merck's failure to warn. Also, the data is relevant to Merck's duty, level of conscious disregard for the safety of the consumer, and the unreasonableness and reprehensibility of Merck's conduct when presented with such data. Merck had a continuing duty to warn about all adverse events, including death. If the true extent of the risks had been disclosed, doctors would not have continued to prescribe these drugs in such large numbers and Mr. Smith would have had knowledge of his increased risk for myocardial infarction or death. Moreover, if Merck had disclosed its knowledge sooner, the Graham Study would not have been supplied with the data sufficient to generate the damning estimates Merck now seeks to avoid. Finally, listings of death suggest the fact that Merck was inaccurate in its measurement of the rate of MI with Vioxx.

Merck argues that the Graham Estimates are inconsistent with the findings of APPROVe and VIGOR, and, therefore, are irrelevant. This assumption is incorrect. First, Dr. Graham relies on additional data and studies in reaching his conclusion. As stated on page six of his study, his estimates evolved from the total estimated number of Vioxx prescriptions dispensed in the U.S.,

indicated by IMS Health, the relative risks generated in the APPROVe and VIGOR clinical trials, and the background rates seen NSAID risk studies.

Merck has previously argued that the Graham Study found no statistically significant increased risk of heart attacks or deaths associated with Vioxx use at the 25 mg dose. From this, Merck alleges that the Graham Study data is inconsistent and pure chance. Merck's argument is not based in fact or law. Federal courts throughout the country have held that epidemiological evidence involving odds ratios below 2.0 is admissible and consistent with a plaintiff's recovery at trial. The Second Circuit has held that a "qualified expert may view the epidemiological studies and factor out other known risks . . . which might enhance the remaining recognized risks, even though the risk in the study fell short of the 2.0 correlation." *In re Joint E. & S. District Asbestos Litig.*, 964 F.2d 92, 97 (2d Cir. 1992). The court found further that, where plaintiff's experts use epidemiological studies as *one* basis for an expert opinion but do not rely solely on epidemiological evidence, epidemiological evidence of a certain magnitude need not be provided because the expert does not rely on those studies along. *Id.* As stated above, Dr. Graham considers several bases for his estimates and any suggestion by Merck that his estimates are inconsistent with his data should not be determinative for the admissibility of this evidence. The Graham Study is supported by sound methodology and expert support, and admissible under Federal law.

It is well-settled that there are at least ten kinds of evidence that can support a causal connection between a drug and its adverse reactions. These lines of evidence include, but are not limited to, case reports in series, adverse event reports, animal studies, case reports that are published in peer-reviewed medical literature, chemical structure, studies based on pharmacological classes similar to the drug at issue, textbooks, and literature on similar drugs of the same class that

11

have the same mechanisms of action. *See In Re: Phenylpropanolamine (PPA)*, 2003 WL 22417238* 26 (N.J.Super. 2003). For this reason, and all those stated above, Defendant's final argument to exclude the Graham Study data is also unpersuasive.

This evidence is relevant to Plaintiff's claims that Merck had notice of the adverse risks associated with Vioxx and failed to adequately study and test the drug before selling it on the market. If Merck had responded appropriately to earlier findings, and had taken into consideration the material analyzed by Dr. Graham, the vast injuries suffered by many people, including Mr. Smith, could have been avoided. Instead, Merck delayed and postponed studies until the true consequences of the ingestion of this drug could no longer be concealed.

### B. Estimates of Excess Number of Heart Attacks or Death Has Substantial Probative Value Which is Not Substantially Outweighed by Any Potential Prejudice to Merck, Nor Will Such Evidence Confuse or Mislead the Jury

The probative value of the Graham Study data is clearly shown in the previous section. Any prejudicial effect felt by Merck hardly reaches the level of "unfair." Direct proof of a claim does not create the *unfair* prejudice that Rule 403 intended to avoid. The touchstone for excluding evidence under Rule 403 is not prejudice, but *unfair* prejudice, which must substantially outweigh the probative value of the evidence. This Court does not view Rule 403 as a tool designed to permit the trial court to "even out" the weight of the evidence. "Instead, there is a place in the courtroom where the skill and acumen of professional trial lawyers should be brought to bear. Indeed, the motion practice presaging the subject jury trial admits that the trial lawyers in this case are keenly aware of the points of contest, and quite capable of fairly evening out the score at trial on the merits and paring down any inaccuracy or exaggeration, such that it more closely comports with the truth." *Soll v. Provident Life & Acc. Ins. Co.*, 2002 U.S. Dist. LEXIS 12568, 17 (E.D.La. July 5, 2002).

The Fifth Circuit in *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994) observed that the exclusion of evidence under Rule 403 should occur only sparingly. Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403. "Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id.* at 1116. "As to such, Rule 403 is meant to relax the iron rule of relevance. It is not designed to permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none." *Id.* at 1115-16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979)).

Relevant evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the risk of undue prejudice. *United States v. Adair*, 436 F.3d 520, 526 (5th Cir. 2005). Once evidence has been established as being relevant, the burden is on the party urging exclusion of evidence to convince the court that Rule 403 considerations should control. *State v. Jones*, 891 So.2d 760, 767 (La.App. 4 Cir. 2004). It should be emphasized, however, that exclusion of relevant evidence pursuant to Rule 403 "is an extraordinary measure that should be used sparingly." *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998).

Merck essentially argues that, because it views Dr. Graham's testimony on Vioxx's deaths as wrong, it would be unduly prejudicial to admit it. Not surprisingly, no court has excluded Dr. Graham's testimony concerning Vioxx deaths under Rule 403. Instead, all have recognized that

evidence concerning the dangers of Vioxx is directly relevant to and highly probative of whether Merck had a duty to warn, whether it was met, whether Merck was negligent and whether it lied about Vioxx. That it is arguably not probative of specific causation makes little sense or difference. That it is clearly prejudicial, but not unduly so, to Merck's carefully-crafted but factually-bereft arguments is also immaterial under Rule 403.

## V.     Dr. Graham's Analogies, Metaphors and/or Observations are Relevant, Not Unduly Prejudicial to Merck, or Otherwise Inadmissible

Merck asks the Court to reconsider several arguments that it makes concerning testimony it regards as irrelevant or more prejudicial than probative. These FED. R. EVID. 401-403 arguments are frankly silly. Two address Dr. Graham's use of certain analogies and metaphors to explain certain procedures. Not surprisingly, Merck cites no authority for the notion that Rule 403 can be used to exclude a witness' description of the evidence, rather than the evidence itself. While evidence in this Court is formal and controlled by the Federal Rules of Evidence, it need not be stifled, sterile, nor steered by Merck's sensitivities. In one example Merck cites, Dr. Graham is attempting to explain a complex, statistical concept in terms helpful to a lay person. His Russian Roulette analogy is apt. Simply because it is evocative, does not render it inadmissible.

Merck is also troubled by Dr. Graham's use of another example of the FDA's having "dragged its feet" and its being slow to pull that drug off the market as proof of an "institutional bias" at the FDA. In addition, it protests that Dr. Graham's perception that the Prescription Drug User Fee Act caused "the preapproval people [at the FDA] to look for reasons to say yes to a drug" is irrelevant or unduly prejudicial.

Under Rule 701(a), Dr. Graham may testify to his perceptions which must be rationally-based. As one court explained: "Lay opinion may be based on the witness' own perceptions."

14

*United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003). That is all Dr. Graham is testifying about in these instances.[6]

## CONCLUSION

For all of the reasons stated, Merck's motion should be summarily denied.

Dated:  August 14, 2006

Respectfully submitted,

| | |
|---|---|
| Drew Ranier | /s/ Grant Kaiser |
| Louisiana Bar No. 8320 | Grant Kaiser |
| **RANIER, GAYLE & ELLIOT LLC** | Texas Bar No. 11078900 |
| 1419 Ryan Street | **THE KAISER FIRM LLP** |
| Lake Charles, Louisiana 70601 | 8441 Gulf Freeway, Suite 600 |
| (337) 494-7171; fax (337) 494-7218 | Houston, Texas 77017 |
| | (713) 223-0000; fax (713) 223-0440 |
| | |
| Walter Umphrey | Mikal Watts |
| Texas Bar No. 20380000 | Texas Bar No. 20981820 |
| **PROVOST UMPHREY LAW FIRM LLP** | **THE WATTS LAW FIRM LLP** |
| 490 Park Street | Tower II Building, 14th Floor |
| Beaumont, Texas 77701 | 555 North Carancahua Street |
| (409) 835-6000; fax (409) 838-8888 | Corpus Christi, Texas 78478 |
| | (361) 887-0500; fax (361) 887-0055 |
| | |
| James L. "Larry" Wright | John Eddie Williams, Jr. |
| Texas Bar No. 22038500 | Texas Bar No. 21600300 |
| **THE WATTS LAW FIRM LLP** | Jim Doyle |
| 111 Congress Avenue, Suite 1010 | Texas Bar No.6094450 |
| Austin, Texas 78701 | **WILLIAMS BAILEY LAW FIRM LLP** |
| (512) 479-0500; fax (512) 473-0328 | 8441 Gulf Freeway, Suite 600 |
| | Houston, Texas 77017 |
| | (713) 230-2200; fax (713) 643-6226 |

ATTORNEYS FOR PLAINTIFFS

---

[6] Merck's "state of mind" argument is wholly misdirected in that the case it cites has nothing to do with what Dr. Graham saw at the FDA. Moreover, his testimony, based on *his own perceptions,* can hardly constitute hearsay. Finally, as suggested above, the FDA , despite its other shortcomings, has not yet become a fascist hotbed in which all criticism is automatically preempted. Merck's preemption argument is frightening but, gratefully, legally baseless.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk          rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski       carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440