**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
   *Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OR ARGUMENT THAT MERCK (1) SHOULD OR COULD HAVE UNILATERALLY CHANGED THE VIOXX LABEL TO INCLUDE THE VIGOR DATA; OR (2) "DRAGGED ITS FEET "TO PREVENT THE VIGOR DATA FROM BEING ADDED TO THE VIOXX LABEL**

(Plaintiff's Opposition to Defendant's Motion to Exclude No. 2)

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff R. Garry Smith, by and through his undersigned counsel, asks this court to Deny Defendant Merck & Co., Inc.'s ["Merck's] Motion to Exclude relating to evidence that Merck (1) should or could have unilaterally changed the Vioxx label to include the so-called VIGOR data; or (2) "dragged its feet" to prevent the VIGOR data from being added to the Vioxx label.  In support thereof, Plaintiff would show as follows:

## INTRODUCTION

Under the guise of seeking to exclude certain evidence, Merck attempts to eliminate Plaintiff's ability to respond to a "legal" argument Merck has made in every prior Vioxx trial: that *it would have been illegal* for it to have added to the initial Vioxx label the cardiovascular dangers

of which it had become aware.  In fact, Plaintiff has filed in this case a motion to exclude/motion in limine on this very issue, which is incorporated herein for all purposes, to prevent Merck from misstating the law – ***again***.[1]  While in prior trials the focus of Merck's argument has been the so-called VIGOR data, the data the initial label change was specifically made to reflect, Plaintiff's motion is not confined to such data.  Instead, it deals with the underlying legal issue.  Moreover, nothing in Merck's motion here should be read to affect Plaintiff's ability to respond to such a "legal" argument or prevent this Court from granting Plaintiff's motion to prohibit Merck from misrepresenting FDA regulations to a jury.

Placed in its proper context, Merck's motion should be read as addressing only specific evidence that Merck should have added the information confirmed by the VIGOR data to the Vioxx label but delayed including it.  The admissibility and relevance of such evidence has already been discussed in detail in Plaintiff's Memorandum in Opposition to Defendant's Motion to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Employees, filed in this case contemporaneously with this document and incorporated herein for all purposes.  In fact, Merck's motion here is simply another attempt to scuttle such damning evidence.

Like the others, this attempt should not succeed.  First, Merck's motion is based on the flawed assumption that ***any*** mention of the VIGOR results in a label, no matter how inadequate or misleading, somehow ended its "footdragging" or obligation to strengthen its label.  It did not.  Second, even if Merck could somehow convince this Court to compartmentalize Merck's deceit,

---

[1] *See* Plaintiff's Motion to Exclude or, in the Alternative, Motion in Limine Concerning Defendant's Argument That it Was Prohibited by FDA Regulations from Making Label Changes Without Prior Approval, filed Aug. 7, 2006.

such evidence would still be admissible to show Merck's routine practice with regard to Vioxx. That is, at each opportunity to disclose cardiovascular risks, Merck took the path of failing to disclose and/or obfuscation. Either way, Merck's motion should be denied.

## DISCUSSION

I.     **Merck Has Filed No Motion in Limine; Therefore, if It Loses its Motion to Exclude, It is Entitled to No Other Protection from the Introduction of Such Evidence.**

Merck has styled this motion as one to exclude alone. At best, it includes a reference to a motion in limine in a parenthetical under the title of its motion to exclude. It seeks no order in limine in its prayer for relief. As the result, should the Court deny its motion to exclude, Merck is entitled to no other relief from Plaintiff's efforts to introduce such evidence at trial. This Court should be loathe to exclude evidence prematurely, particularly the sweeping rulings Merck seeks here. A premature determination of evidentiary issues, in the absence of a developed trial record, would unfairly prejudice Plaintiff.[2]

II.    **Merck *Never* Adequately Warned of Vioxx's Cardiovascular Effects in *Any* Label; Therefore, Evidence of Merck's Attempts to Withhold and/or Misrepresent Such Information Are Relevant to Plaintiff's Claims**

Merck's motion's underlying assumption is that its calculated attempt to withhold from patients and their doctors Vioxx's dangers somehow ended when ***some*** reference to the so-called VIGOR test results were finally included in the warning label and that anyone who used Vioxx thereafter was adequately warned of such dangers. If Merck succeeds in having this Court adopt

---

[2]*See In re Diet Drugs*, 369 F.3d 293, 314 (3rd Cir. 2004) ("unduly sterilizing a party's trial presentation can unfairly hamper her ability to shape a compelling and coherent exposition of the facts."); *Old Chief v. United States*, 519 U.S. 172, 187 (1997) ("evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw inferences, whatever they may be, necessary to reach an honest verdict").

such an argument without examining it too carefully, Merck apparently hopes to deal a fatal blow to all post-label change cases, including the one filed by Garry Smith.

Merck's assumptions are not well-founded or, at the very least, are fact issues for the jury.[3] As Mr. Smith's doctor attests, Merck's labelling was *still* inadequate even when Mr. Smith used Vioxx because Merck never *fully or accurately* apprised doctors or their patients of the VIGOR results or Vioxx's cardiovascular effects until the day it was pulled off the market.  Thus, even after Merck finally included some mention of Vioxx's cardiovascular effects in its label, Merck so badly misrepresented those effects that practitioners could not accurately assess whether the drug was appropriate for use with their patients.  For example, even after the label change, a practitioner reading the label would have been told that the potential cardiovascular problem was only a concern in patients "with a medical history of ischemic heart disease" when the VIGOR data actually showed *all* patients were at risk.  In short, even after Merck changed its label, it *continued* to "drag its feet" on including *accurate and complete* warnings of Vioxx's cardiovascular risks.  Merck had a duty to accurately and completely warn doctors of Vioxx's risks, which it breached.

Merck's argument regarding the effect of its label change is, therefore, a classic "red herring."

Thus, for the reasons set forth in Plaintiff's Memorandum in Opposition to Defendant's Motion to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Employees, evidence relating to Merck's actions

---

[3]In fact, when Merck has responded to attempts by prior plaintiff to prevent it from making the argument that it was prevented by law from changing its label, Merck's habitual response has been to argue that whether it should have changed its label is a fact issue.

with regard to the so-called VIGOR data vis-a-vis its labeling are relevant to and probative of Plaintiff's claims.

### III.   The Evidence is Relevant to Show Merck's Routine Practice of Withholding or Misrepresenting Information Regarding the Cardiovascular Risks of Vioxx.

The evidence will show that, from the first day it considered marketing Vioxx, Merck's strategy and practice was to ignore, minimize or "spin" the cardiovascular risk to gain and preserve market share and avoid losses related to stronger warnings.   Despite having clear notice of a potentially serious risk from Vioxx as early as 1998 Merck and its marketing department, which conducted many of the studies, 1) designed those studies to obscure a cardiovascular risk, 2) failed to disclose other studies that showed the risk, and 3) refused to do a specific study to analyze the cardiovascular risk until it was effectively force to do the so-called VIGOR study.

Once they got the VIGOR results, Merck consistently downplayed the risk, even in its revised label, concocted the "naproxen" alibi (that the drug against which Vioxx was compared was allegedly *cardioprotective* and this such qualities acccounted for the difference in heart attack risks), misrepresented the results, withheld data (which the New England Journal has criticized them for), again refused to do an additional cardiovascular study, and dragged their feet as long as they could before issuing a new label which did not include a complete and accurate warning about such risks. At every turn then, Merck always tried to withhold, minimize or misrepresent the cardiovascular risk, from rushing the drug to market all the way to product withdrawal.

Plaintiffs believe that such conduct constitutes a continuing tort.   If, however, Merck is permitted to portray each instance of its conduct as discrete and separable,  Plaintiff should,  under FED. R. EVID. 406,  be permitted to show each discrete instance is part of Merck's routine practice in dealing with Vioxx.

5

Rule 406 permits a party to show that a corporation such as Merck engaged in a routine practice and that "[t]he conduct of that organization on a particular occasion was in conformity with the habit or routine practice."  The comments to Rule 406 note that:

> ***Courts admit routine organizational practice fairly liberally, noting that there is significant probative value in the routinized aspects of organizational activity***.  *See, e.g., Rosenburg v. Lincoln Am. Life Ins. Co.*, 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence that an insurance company waived certain standard conditions when issuing a policy was admissible as evidence of routine practice). However, in order to invoke the more liberal admissibility requirements attendant to organizational activity, the proponent must at least show that ***the activity is that of a structured organization***; a loose-knit, ad hoc alliance of individuals does not give rise to the same inference of consistent, routinized activity.  *See, e.g., United States v. Rangel-Arreola, 991 F.2d 1519, 1524 (10th Cir. 1993)* (evidence that it was common practice for truck drivers to accept jobs without checking the fuel tanks was properly excluded; 406 was not applicable because the loose-knit group of freelance truck drivers did not form a cohesive organization with a structure and routinized practice).

(Emphasis added).  On this ground, Plaintiff should be permitted to introduce the evidence Merck seeks to exclude on the ground that it represents Merck's routine practice with regard to Vioxx and is relevant to show that Merck acted in precisely the same manner even after it made its label change to add some mention of the VIGOR study.  Merck's motion to exclude should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to exclude.

Dated:  August 14, 2006

Respectfully submitted,

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk          rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski          carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440