**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
    *Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE,
MOTION IN LIMINE CONCERNING DEFENDANT'S ARGUMENT
THAT IT WAS PROHIBITED BY FDA REGULATIONS FROM MAKING
LABEL CHANGES WITHOUT PRIOR APPROVAL**

**(Plaintiff's Motion in Limine No. 4)**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Before voir dire examination of the jury panel, and out of hearing of the jury, Plaintiff  R.

Garry Smith, by and through his undersigned counsel, respectfully moves the Court for an order

excluding all evidence, references, testimony and/or argument relating to Defendant's Merck & Co.,

Inc.'s ("Merck") argument that it was prohibited by FDA regulations from making label changes

without prior approval and that are improper, irrelevant and/or unduly prejudicial.  If Defendant

injects these matters into the trial of this cause through a party, an attorney, or a witness, Defendant

will cause irreparable harm to Plaintiff's case and the fairness of the trial, which no jury instruction

could cure.  If any of these matters are brought to the attention of the jury, directly or indirectly,

Plaintiff could be compelled to move for a mistrial.  In an effort to avoid undue prejudice and a

possible mistrial, Plaintiff Smith moves to exclude the following matters.  In the alternative, Plaintiff

Smith seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial.

## INTRODUCTION

Plaintiff anticipates that Merck will offer testimony and argue at trial that it could not have changed its Vioxx label to include warnings of the cardiovascular risks or reports of cardiovascular and other adverse events without prior approval of the FDA.  As a result, ***it suggests that Merck was prohibited by law from fulfilling its duty to warn.*** Such testimony and/or argument is both a misstatement of existing law, as the discussion below suggests,  and highly misleading. It should, therefore, be precluded.

In response to similar motions, Merck has urged that it should be allowed to argue such an ***absolute legal*** prohibition under the guise of proving, as a matter of ***scientific fact***, whether it needed to alter its label at all.  They are not the same thing.  By conflating the two arguments, it apparently hopes this Court will allow it to make flagrantly improper arguments and to bolster improperly its untenable position.

This motion and the evidence and arguments it seeks to exclude address only Merck's attempt to excuse its failure to warn and to circumvent to question of whether it was scientifically required to strengthen its warning by arguing that its hands were tied and that it simply could not have done so even if it had wanted to do so. That is a  misstatement of federal law.  Though subject to FDA oversight, Merck was responsible as a matter of substantive law for ensuring that adequate warnings appeared in the Vioxx label at all times.  Whether the warning was adequate or needed to be strengthened is, as Merck suggests, the question for the jury.  Merck should not, however, be permitted to argue or introduce evidence, as it routinely has, that a jury need not even consider the

evidence in the case in answering this question because Merck was powerless to alter its label and would have broken the law if it had done so. Such misstatements of the law and blatant plays for sympathy are impermissible. Plaintiff respectfully requests entry of an order prohibiting Merck from eliciting such testimony or making the argument that Merck could not have changed its warning without breaking the law.

## I.   Federal Regulations Required Merck to Warn of Known Hazards Associated With the Use of Vioxx.

Any suggestions that Merck could not have changed the Vioxx label without prior FDA approval is false and misleading. The Food, Drug and Cosmetic Act (the "Act") expressly required Merck immediately to inform the public of newly discovered dangers rather than waiting for the FDA to act. *See Labeling and Prescription Drug Advertising; Content and Format for Labeling for Human Prescription Drugs,* 44 Fed. Reg. 37434, 37447 (1979); *McEwen v. Ortho Pharm. Corp.,* 528 P.2d, 522, 534-535 (Or. 1974). It is, therefore, Merck's legal obligation promptly to take steps to strengthen its warnings to physicians and consumers of newly discovered dangers and risks of an approved product. 21 C.F.R. §201.57 (c).

The intention of the Act is "to protect consumers from dangerous products." *United States v. Sullivan,* 332 U.S. 689, 696 (1948); *see FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120 (2000). Consistent with its purpose, the FDA and its regulations explicitly permit a manufacturer unilaterally to strengthen a warning label ***at any time*** without regulatory approval, 21 C.F.R. § 314.70(c)(6)(iii)(A), to allow the drug manufacturer immediately to strengthen warnings when evidence of adverse side effects, risks, or dangers are discovered. *See* 30 Fed. Reg. 993 (Jan. 30, 1965).

In the recent case of *McNellis v. Pfizer, Inc.,* No. 05-1286-JBS, 2005 WL 3752269 (D. N.J. Dec. 29, 2005), the district court, after outlining 21 C.F.R.§ 314.70(c)(6), acknowledged a manufacturer's unilateral duty to warn:

> If the manufacturer desires to make changes to the labeling after a drug is approved, it must generally submit a Supplemental NDA to the FDA pursuant to 21 C.F.R. § 314.70(b)(2)(v)(A). Although most labeling changes require a Supplemental NDA, a number of exceptions have been enumerated in 21 C.F.R. § 314.70(c)(6)(iii), which provides in pertinent part:
>
> (6) The agency may designate a category of changes for the purpose of providing that, in the case of a change in such category, the holder of an approved application may commence distribution of the drug product involved upon receipt by the agency of a supplement for the change. These changes include, but are not limited to:
>
> *   *   *
>
> (I) Changes in the labeling to accomplish any of the following:
>
>> (A) To add or strengthen a contraindication, warning, precaution or adverse reaction;
>>
>> (B) To add or strengthen a statement about drug abuse, dependence, psychological effect, or over dosage;
>>
>> (C) To add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product;
>>
>> (D) To delete false, misleading, or unsupported indications for use or claims for effectiveness; or
>>
>> (E) Any labeling change normally requiring a supplement submission and approval prior to distribution of the drug product that FDA specifically requests be submitted under this provision.

21 C.F.R. § 314.70(c)(6)(iii). Thus, it is apparent that prior FDA approval need not be obtained, nor will a product be deemed mislabeled, if the manufacturer voluntarily or even unilaterally strengthens the approved warnings, precautions or potential adverse reactions upon the label pursuant to 21 C.F.R.§ 314.70(c)(6)(iii)(A);  *McNellis,* 2005 WL 3752269 at 4-5.

Moreover, "Section 201.57 delineates the 'specific requirements on content and format of labeling for human prescription drugs' and subsection (e) specifically governs 'warnings.'" *Motus v. Pfizer, Inc.*, 127 F. Supp.2d 1085, 1095 (C.D. Ca 2000) 21 C.F.R. § 201.57 (e) states: "labeling shall be revised to include a warning *as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.* (emphasis added). Also, 21 C.F.R. § 314.70(c) is explicit that labeling changes to "add or strengthen a contraindication, warning, precaution, or adverse reaction" *do not* require FDA's prior approval.

In fact, when promulgating these regulations the FDA Commissioner invited companies to strengthen the warnings contained in their drug labels.

> [D]rug labeling does not always contain the most current information and opinion available to physicians about a drug because advances in medical knowledge and practice inevitably precede formal submission of proposed new labeling by the manufacturer and approval by FDA. . . *[L]abeling regulations do not prohibit a manufacturer . . . from warning health care professionals wherever possibly harmful adverse effects associated with the use of a drug are discovered.  The addition to labeling and advertising of additional warnings . . . is not prohibited by these regulations* . . . .[P]racticing physicians will welcome such information so they can make their best informed medical judgments in the care of their patients.

44 Fed. Reg. at 37,434 (emphasis added).

Without question, Merck was permitted to add a warning for cardiovascular risks to the Vioxx label *at any time after the so-called VIGOR* study was completed without advance approval by the FDA. *Id. See also* 30 Fed. Reg. 993 (Jan. 30, 1965) (encouraging drug manufacturers to strengthen its warnings "in the interest of drug safety" at any time without FDA pre-approval to enable adoption of new warnings as soon as possible). Any argument or testimony that Merck was required to obtain prior approval from the FDA before changing the Vioxx label to include warnings or information concerning serious cardiovascular adverse events is simply false.

## II.   Courts Recognize That Drug Manufacturers Have Duty to Warn of Known Hazards Regardless of Prior FDA Approval.

Federal and state courts have concluded that current FDA regulations do not impose any restrictions on a drug manufacturer's ability to add warnings or precautions regarding newly-discovered risks and dangers but dictate that a warning of known risks be added to a label prior to FDA approval.

In *Witczak v. Pfizer, Inc.*, the district court found that FDA regulations explicitly permit pharmaceutical companies to unilaterally strengthen the warning label at any time without regulatory pre-approval. *Witczak v. Pfizer, Inc.* 377 F.Supp.2d 726 (D. Minn. 2005) (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)). The *Witczak* court noted that the "particular regulation was promulgated precisely to allow drug-makers to quickly strengthen label warnings when evidence of new side effects are discovered." *Witczak,* 377 F.Supp.2d at 726 (citing 30 Fed.Reg. 993 (Jan. 30, 1965)). FDA regulation "permits the addition to the drug's labeling or advertising of information about a hazard without advance approval" by the FDA. *Id.*

Judge Steger of the United States District Court for the Eastern District of Texas recently provided an in-depth analysis of the FDCA's applicability to state law claims against pharmaceutical

companies, and the issue of preemption. *See Cartwright v. Pfizer, Inc.,* 369 F.Supp. 2d 876 (E.D. Tex. 2005). In the *Cartwright* case, the defendant claimed that plaintiff's state law failure to warn claims were preempted because under the Food, Drug and Cosmetic Act, the manufacturer was required to obtain FDA approval before revising the product labeling. *Id.* The District Court specifically rejected this argument:

> Since 1965, the FDA's regulations permit a manufacturer '[T]o add or strengthen a contraindication, warning, precaution, or adverse reaction," without prior approval by the FDA...."
> *(citing* 21 C.F.R. § 314.70(c)(6)(iii)(A) and finding that the Act sets minimum standards that "expressly do not prohibit a manufacturer from 'add[ing to] or strengthen[ing] a contraindication, warning, precaution or adverse reaction."')....
> Thus, FDA's position regarding stronger warnings by drug manufacturers, as expressed through ***its own* regulations**, is that a manufacturer **could, and should**, provide stronger warnings as soon as such a warning is warranted.

*Id.* (emphasis added). The *Cartwright* court further pointed out that, under these regulations, a manufacturer should issue a warning whenever there is "reasonable evidence of an association of a serious hazard with a drug; **a causal relationship need not have been proved***."* *Id.* (*citing* 21 C.F.R.§ 201.57(e)).[1] The *Cartwright* court concluded "it is clear to this Court that ***manufacturers must act quickly to warn regarding possibly deadly side effects associated with a drug because the FDA only sets forth minimum standards for labeling and safety of drugs*.*" Id.* (emphasis added).

In *Madden v. Wyeth*, 2005 WL 2278081 (N.D. Tex. Sept. 14, 2005), the defendant claimed its warning label was adequate in support of a summary judgment motion. The District Court rejected "defendant's arguement that its warning label is adequate because it was approved by the

---

[1]As the *Cartwright* court noted, this same regulation requires that "black box" warnings be added to the label of drugs "that may lead to death or serious injury," *Id.*

FDA.  Federal regulations do not prohibit a manufacturer from "add[ing to] or strengthen[ing] a contraindication, warning, precaution, or adverse reaction."  *Id.*  (*citing* 21 C.F.R. § 314.70(c)(6)(iii)(A)).

In *Caraker v. Sandoz Pharmaceuticals Corp.,* 172 F.Supp.2d 1018 (S.D.Ill 2001), the district court found that the manufacturer was explicitly authorized by the FDA's regulations to add or strengthen its warnings without prior FDA approval.  *Id.* at 1033-34.  The *Caraker* court cited to the FDA commissioner's statement that "labeling regulations do not prohibit a manufacturer, packer, relabeler, or distributor from warning health care professionals whenever possibly harmful adverse effects associated with the use of the drug are discovered."  *Id.* at 1034 (*citing*) 44 Fed. Reg. 37,434 & 37,447 (1979)); *see Jamison v. Purdue Pharma Company,* 251 F.Supp.2d 1315 (S.D. Miss. 2003) (listing situations where company may amend labeling without prior approval, including "adding or strengthening" (I) a contraindication, warning, precaution, or adverse reaction").

Lastly, the court in *Ohler v. Purdue Pharma. L.P.,* 2002 WL 88945 (E.D. La 2002), addressed a similar issue in the context of a motion to remand, where removal was partially based on preemption grounds.  In rejecting the defendants' arguments, this Court noted that the "applicable regulation states that changes in labeling that 'add or strengthen a contraindication, warning, precaution, or adverse reaction" fall within the category of adjustments that "may be made before FDA approval."  *Id.  See also Kurer v. Parke, Davis & Co.,* 272 Wis.2d 390, 679 N.W.2d 867 (Wis.App. 2004).

Adhering to these same principles, Judge Higbee in the Cona/McDarby trial involving Vioxx interrupted the testimony of a Merck employee, David Anstice, who had testified that the company could not have added a warning to the label without prior FDA approval, to give a curative

instruction.  The court informed the jury that the manufacturer was ***not*** limited by FDA regulations

to add to the warning label at any point in time.  The curative instruction was reported to be:

> 'I just wanted to advise you that the law under FDA regulations
> does allow a company to change their warnings, to warn
> consumers and physicians about dangers they find out about after
> the label is approved,' Higbee told the panel.  ***'They're allowed to
> make those changes through a special procedure, without prior
> FDA approval.'***

Brennan, *Judge Interrupts Vioxx Testimony to Instruct Jury on Label Warnings,* The Legal

Intelligencer, March 20, 2006, at 3, col 1http://www.law.com/jsp/article.jsp?id=1142429894927

(emphasis added).

The overwhelming majority of federal and state courts have concluded and recognized that

a manufacturer not only may, but should add or strengthen warnings related to a pharmaceutical

drug, without waiting for FDA approval.  Federal regulations require that Merck should have

strengthened the precautions and/or warnings contained in the Vioxx label as soon as it had actual

or constructive knowledge of the increased risk of cardiovascular risks associated with the ingestion

of the drug.

The Court should enter an order precluding Merck from arguing or offering testimony that

it could not have amended and strengthened the Vioxx label to include warnings or precautions

concerning cardiovascular risks without prior FDA approval.  Such testimony or argument would

be a false statement if existing law.  For these reasons, Smith moves to exclude the following

matters.  In the alternative, Plaintiff Smith seeks a motion in limine requiring that Defendant first

approach the bench and ask for a ruling before attempting to introduce or refer to such evidence

and/or issues at trial.

Dated:  August 7, 2006

Respectfully submitted,

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk            rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski           carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440