## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | MDL DOCKET NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| This document relates to Case No. 2:05-CV-04379 | JUDGE FALLON |
| ROBERT G. SMITH, | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | **MERCK'S OBJECTIONS AND COUNTER-DESIGNATIONS TO PLAINTIFF'S DEPOSTION DESIGNATIONS FOR NON-CASE SPECIFIC WITNESSES** |
| v. | |
| MERCK & CO., INC., | |
| Defendant. | |

TO:      Drew Ranier
         Ranier Gayle & Elliot L.L.C.
         1419 Ryan St.
         P.O. Box 1890
         Lake Charles, LA  70602-1890

         Grant Kaiser
         The Kaiser Firm LLP
         8441 Gulf Freeway
         Houston, TX  77017-5051

Defendant Merck & Co., Inc. ("Merck") hereby submits its Objections and Counter-Designations to Plaintiff's Deposition Designations for Non-Case Specific Witnesses. Merck expressly incorporates by reference and re-adopts the objections and counter-designations

1

submitted in the case of *Barnett v. Merck*, No. 06-0485 for all non-case specific witnesses that now appear on the witness lists submitted in the *Smith* case.[1]

The deposition designations for the twenty-one (21) non-case specific witnesses fall into five categories:

    (1)    entirely new designations for fact witnesses (Braunstein);

    (2)    entirely new designations for plaintiff's expert witnesses (Zipes, Farquhar, Kapit);

    (3)    designations submitted in *Barnett*, but never ruled upon by the Court (Anstice,Baumgartner, Curfman, and Nies);

    (4)    designations previously ruled upon but which warrant a second look and/or now have supplemental bases for ruling (Avorn, Carroll, Demopolous, Dixon, Graham, Jerman and Scolnick); and

    (5)    designations previously ruled upon and objections are being renewed for appellate preservation purposes, but for which Merck is not challenging the prior *Barnett* ruling pursuant to the parties August 1, 2006 Joint Stipulation (Cannuscio, Dunn, Epstein, Gilmartin and Weiner).

With the exception of Category 5, these witnesses are discussed below. As noted below, where appropriate, Merck has highlighted for the Court the most important objections that Merck has at this time to Plaintiff's designated testimony.

By agreement of the parties, annotated transcripts setting forth both parties' designations, objections, counter-designations and counter-objections for all witnesses (case specific, non-case specific, and experts) will be provided to the Court on August 24 and 25, and submitted for ruling.

---

[1]    Specifically, these non-case specific witnesses are: David Anstice, Jerry Avorn, Susan Baumgartner, Carolyn Cannuscio, J. Martin Carroll, Stephen Curfman, Laura Demopoulos, Wendy Dixon, James Dunn, Stephen Epstein, Raymond Gilmartin, David Graham, Jo Jerman, Alan Nies, Edward Scolnick, Eric Topol, and Jan Weiner. Pursuant to the August 1, 2006 Joint Stipulation Regarding Deposition Designations (filed with the Court), the parties have agreed to adopt the affirmative and counter-designations for non-case specific witnesses in *Barnett* and to abide by the *Barnett* rulings on those designations except in certain circumstances where the parties may ask the Court to revisit its rulings.

## I.     NEW FACT WITNESS DESIGNATIONS

### ***Ned Braunstein***

During the relevant time period, Dr. Ned Braunstein was an executive in Merck's regulatory affairs division.  His deposition has commenced only recently, and this is the first time his testimony has been designated.

Merck objects to all of Plaintiff Smith's designations of the testimony of Dr. Ned Braunstein in their entirety on the following grounds:

First, the deposition of Dr. Braunstein has not yet been completed and remains open. Dr. Braunstein's deposition commenced a few weeks ago on July 18 and 19.  This was the first time that Dr. Braunstein (formerly an executive in Merck's regulatory department) had ever been deposed in Vioxx litigation.  At the end of the second day, plaintiffs' counsel for the MDL had not yet concluded his examination of Dr. Braunstein; nor had plaintiffs' counsel from other jurisdictions been offered the opportunity to question.  Furthermore, defense counsel has not had an opportunity to conduct any examination of Dr. Braunstein.  At this point, plaintiffs have requested at least an additional two days of deposition testimony from Dr. Braunstein.  It would be extremely unfair to permit plaintiff to designate testimony from a partial, incomplete deposition.  The witness has not yet had the opportunity to provide full and complete testimony, and thus these partial designations would be misleading and prejudicial.  Moreover, because Merck has not yet had an opportunity to conduct its own examination of Dr. Braunstein, it lacks a full and fair opportunity to provide adequate cross-designations.

Second, Plaintiff has failed to provide tailored designations for the majority of the testimony designated.  On numerous occasions, plaintiffs have designated wholesale dozens of pages (and in some instances over 100 consecutive pages) of testimony without making any attempt to tailor the

designations to the case at hand.  This has resulted in the designation of about three-quarters of two

days of testimony.  Clearly, plaintiff has no intention of playing so many hours of testimony from

one witness.  Defense counsel should not be forced to waste time providing line by line responses to

blanket designations of testimony.

### *Specific Objections to Plaintiff's Ned Braunstein Designations*

*\*\*Plaintiff has designated testimony using the draft deposition transcripts instead of the final
transcripts*

| Plaintiff's Designations | Merck's Objections |
|---|---|
| **Braunstein Vol. I (July 18, 2006)** | |
| 8:1 – 11:10 | 9:24-10:5, 10:10-12 – omit phone interruptions |
| 12:19 – 20:6 | 13:3 – 16:24 – objection: relevance (reasons for taking new position in 2005, depo preparation)<br><br>19:21 – 22 – omit objection of counsel<br><br>Counterdesignate: 11:11-12:14, 17 |
| 21:18 – 25:4 | Objection: relevance (post-2005 Ad Com involvement in Special Projects incl. work w/attorneys) |
| 21:15 – 41:10 | 21:1 – 27:14 – objection: relevance (post-2005 AdCom involvement in Special Projects incl. work w/attorneys)<br><br>27:15-30:11 -- objection: relevance (unable to answer exactly how many people in Reg Affairs work on FDA submissions)<br><br>31:10-11, 32:11-12, 38:14-15, 39:20-21 – omit counsel objections |
| 42:6 – 43:2 | Calls for a legal conclusion; vague.<br>Omit counsel objections at 42:6 – 43:2<br><br>Counterdesignate: 44:11-14, 44:17-45:10 |
| 78:14 – 86:9 | 78:14 – 86:9 – objection: confusing (designation begins mid-question and asks questions about a document not identified in the designations); in addition, 81:16 – 84:11 – |

4

| | |
|---|---|
| | argumentative, repetitive<br><br>Counterdesignate: 86:11-14, 86:16 – 87:2, 89:9-15, 89:18 – 90:7, 90:10-15 |
| 91:13 – 103:6 | 92:21 – 93:3 – omit colloquy among counsel<br><br>98:2-3, 99:3-4, 101:1-2 – omit counsel objections |
| 104:16-106:4 | Objection: relevance (whether he was aware that AdCom might make a recommendation whether to return Vioxx to the market) |
| 115:7 – 133:2 | 115:18:116:6 – objection – relevance (# of Merck worldwide employees)<br><br>116:7 – 133:2 – objection – relevance (time spent preparing for 2005 AdCom, Merck employees & outside consultants involved in prep) |
| 134:5 – 137:1 | Objection – relevance (media training, budget & # of hours spent preparing 2005 AdCom background package) |
| 143:11 – 279:4 | This designations spans over 135 pages of testimony.<br><br>The majority of this exchange is irrelevant, repetitive and argumentative. |
| 280:20 – 312:1 | This designation is really a 30+-page continuation of the 135 page designation above (one-page break). It is also argumentative, repetitive, and lacks relevance. |
| 316:16 – 350:5 | 316:16 – 320:16 – objection – relevance (questions about presentation to foreign advisory committee)<br><br>318:5, 323:16-17, 324:21-22, 325:16-17, 326:12-14, 327:19-20, 328:17-18, 329:20-22, 331:4-5, 331:9-11, 333:21-22, 349:16-17 – omit counsel objections<br><br>319:10-16 – objection – vague, confusing, incomprehensible<br><br>320:1-13 – omit counsel colloquy<br><br>320:21 – 331:16 – objection – relevance |

| | |
|---|---|
| | (questions about what analyses given to 2005 AdCom)<br><br>330:20 – 331:16 – objection – repetitive, argumentative<br><br>336:1 – 337:10 – objection – repetitive, argumentative<br><br>338:11 – 340:22 – objection – repetitive, argumentative<br><br>340:24 – 341:9 – objection – relevance (questions about presentation to foreign regulatory advisory committee)<br><br>341:17 – 350:5 – objection – relevance (questions about what analyses given to 2005 AdCom)<br><br>Counterdesignate:  350:6 – 351:1 |
| 352:22 – 462:23 | This designation spans: over 110 pages. |
| **_Braunstein Vol. II (July 19, 2006)_** | |
| 17:21 – 75:16 | This designation spans over 55 pages<br><br>69:10-11, 70:18-19, 70:24-71:3, 71:12-13, 72:14-15, 73:1-2, 73:14, 74:9-10, 74:13-16, 75:2-3 – omit counsel objections & colloquy |
| 78:24 – 79:13 | Continuation of same questioning from latter part of prior designation – objection – relevance; assumes false facts. |
| 84:16 – 85:22 | Objection – repetitive and argumentative |
| 89:24 – 159:10 | This designation spans 70 pages. |
| 159:17 – 265:18 | This designation spans over 100 pages.<br><br>Counterdesignate: 265:20-266:11, 266:14-16 |
| 274:7 – 365:23 | This designations spans over 110 pages.   1 |

## II.     NEW EXPERT WITNESS DESIGNATIONS

### *Drs. Zipes, Faquhar & Kapit*

Merck submits a blanket objection to Plaintiff's deposition designations for three of his retained experts -- Drs. Zipes, Farquhar, and Kapit.  None of these three witnesses have been presented for a trial preservation deposition; nor have they been deposed on issues relevant to the *Smith* case.  Rather, all three of these witnesses have only given discovery depositions in other cases.  Accordingly, the deposition designations provided by Plaintiff for these witnesses are entirely improper and should not be permitted.

Indeed, Plaintiff's designations for Dr. Zipes are particularly problematic.  Plaintiff's counsel has represented that they will not call Dr. Zipes live in the *Smith* case, but instead will rely entirely on his deposition testimony.  Furthermore, plaintiff's counsel has refused to allow Merck to depose Dr. Zipes in *Smith.*

An examination conducted for purposes of discovery is entirely different from a trial cross-examination.  Plaintiffs in this MDL clearly know the proper mechanism for preserving their expert testimony for trial – as amply demonstrated by the recent trial preservation depositions of Drs. Avorn and Kronmal.  Here, Plaintiff essentially attempts to deprive Merck of the right to cross-examine his retained experts at trial by belatedly converting discovery testimony taken in a different case into trial preservation testimony for this case.  This should not be permitted, and plaintiff's designations should be excluded in their entirety.

If the Court ultimately decides to permit these designations, Merck reserves the right to provide specific objections to these designations and to provide counter designations from any deposition or trial transcript containing testimony from these witnesses.

## III.   PREVIOUSLY DESIGNATED TESTIMONY THAT WAS NOT RULED UPON

### *David Anstice*

Mr. Anstice is the President of Merck's Human Health division for Canada, Latin America, Japan, Australia and New Zealand.  He was formerly the President of Human Health for the Americas.

Although Merck previously submitted objections in *Barnett* to the plaintiffs' designations from Mr. Anstice's testimony, no substantive rulings were made.  Accordingly, Merck renews its prior objections (including objections to "tone"),[2] and specifically directs the Court's attention to the following problematic areas:

(a)   605:4-12 – This is a lawyer speech and is unfairly prejudicial.  It also mischaracterizes the witness's testimony and is not a good faith effort to summarize the witness's testimony.

(b)   615:12-19, 616:12-21, 617:12-19, 647:25-648:4, 648:8-13 – Irrelevant and unfairly prejudicial.  Plaintiff's counsel makes inflammatory statements regarding money Merck spent on marketing and Merck's marketing reputation.

(c)   701:15-18 – Plaintiff's counsel misstates the evidence in an effort to confuse the witness.  VIGOR was not the first study Merck did relating to Vioxx.

(d)   760:21-764:11, 764:13-765:2, 766:1-19 – The questions relating to the FDA Warning Letter are irrelevant because there is no nexus to Mr. Smith's doctors and the issues raised in that

---

[2]      Merck renews its "tone" objections for the following: 575:5-7, 575:10-576:4, 576:17-22, 577:24-578:20, 580:7-24, 581:12-17, 581:22-582:11, 582:21-583:2, 583:10-14, 587:16-18, 589:5-9, 590:6-8, 590:16-24, 594:19-595:4 (objection sustained previously in *Plunkett*), 597:23-598:17, 598:22-23, 599:1-3, 601:19, 602:1-3, 611:16-612:12 (objection sustained previously in *Plunkett* as to 612:7-12), 619:3-9, 620:25-621:4, 624:18-21, 629:19-630:10, 645:10-15 (objection sustained previously in *Plunkett*), 646:7-21, 655:13-15, 694:10-17, 702:1-7, 703:3-25, 706:5-708:1, 710:14-711:7, 712:1-13, 715:15-716:2, 719:14-23; 756:14-757:2, 759:4-6, 764:10-17.

letter do not specifically relate the Smith case.[3]  The questions are also argumentative and asked in a sarcastic tone.

(e)       1504:18-20 – Lawyer sidebar, lawyer testifying.

### *Susan Baumgartner*

Ms. Baumgartner is a Merck employee who worked on the Vioxx marketing team.  Plaintiffs have deposed her on three separate occasions.

Although Merck previously submitted objections in *Barnett* to the Plaintiffs' designations from Ms. Baumgartner's testimony, no substantive rulings were made.  Accordingly, Merck renews its prior specific objections.  There are three categories of Merck's objections to Plaintiff's designations for Ms. Baumgartner that merit special attention:

(a)       There are numerous instances where Plaintiff's counsel focuses on Merck sales and profits, often in a prejudicial manner (see below, for example, 178:8-179:5 – "Is there a dollar sign in there with a billion after it?").  This type of evidence is not relevant, especially during the compensatory phase of the trial.

(b)       The Plaintiff has designated a significant amount of testimony about the Fries letter (e.g., 9-30-05, 234:18-238:8, 238:12-240:21, 240:24-242:16, 243:1-4).  This testimony should be excluded because it has no relevance for the *Smith* case since the events alleged in the Fries letter have nothing to do with either Mr. Smith or his doctors.  The Court sustained Merck's objection to the use of this letter with Ms. Baumgartner in *Plunkett II*.

---

[3]       This and other testimony identified in this brief that pertains to informal FDA communications should be excluded for the reasons articulated in Merck's Motion To Exclude Tesitmony or Argument That Merck (1) Should or could have Unilaterally Changed the Vioxx Label to Include the Vigor Data, or (2) "Dragged its Feet" to Prevent the Vigor Data from Being Added to the Vioxx Label. (Motion in *Limine* No. 2), filed August 7, 2006, which Merck hereby incorporates by reference.

(c)     Throughout the course of Ms. Baumgartner's three days of depositions, there are many examples of argumentative, sarcastic questioning from Plaintiff's counsel (e.g., 9-30-05 – 271:4-18, 271:21-272:2, 273:6-9, 273:12-274:7, 274:11-275:7, 275:10).  This type of questioning should be excluded.

### *Stephen Curfman*

The Court is familiar with Dr. Curfman, the executive editor of the New England Journal of Medicine.  Although Merck previously submitted objections in *Barnett* to the Plaintiffs' designations from Dr. Curfman's testimony, no substantive rulings were made.  Accordingly, Merck renews its prior objections, and specifically directs the Court's attention to the following problematic areas:

(a)     A broad category of objections has to do with numerous leading questions that also call on Dr. Curfman to speculate about what other people (such as the NEJM's readers) think or rely on.

(b)     Based on the prescribing physician's testimony in *Smith* – which differs from *Barnett* testiomony – the Court should exclude Dr. Curfman's testimony about so-called "omitted" VIGOR data that would have the effect of raising the MI incidence from 0.4% to 0.5%.  (See *11/21/06 depo:* 75:24 - 78:17; 80:20 - 81:3; 81:5 - 81:9; 88:20 - 89:6; 89:17 - 91:9; 95:14 - 95:15; 95:18 - 97:11; 97:13 - 97:14; 98:8 - 98:19; 98:23 - 99:23; 100:13 - 101:8; 106:20 - 106:23; 281:1 - 281:3; 281:10 - 283:14; 284:1 - 284:16; 285:4 - 285:9; 285:20 - 285:24; 286:3 - 286:14; 294:10 - 294:13; *1/24/06 depo:* 177:10 - 179:3; 187:17 - 188:12; 188:16 - 191:7; 192:21 - 192:24; 265:2 - 265:18; 265:20 - 270:3; 272:19 - 273:5; 273:12 - 274:16; 276:9 - 276:21; 292:13 - 292:16; 293:6 - 293:24; 318:17 - 319:21; 319:24 - 320:2; 321:1 - 323:16).  Here, the prescribing physician, Dr. Grefer, has testified that this precise information would not have changed *his* mind.  Specifically, Dr. Grefer, testified that he "really [does not] think" that knowing about the 0.4 % versus 0.5% MI rate or the New

England Journal of Medicine controversy would have changed his prescribing decision in October of 2002:

> Q.  The fact that in VIGOR it originally reported a four to one or .4 percent MI rate of Vioxx compared to -- to .1 for naproxen and that, after all the events ran, it changed to .5 versus .1, would that have had any impact on your prescribing decisions back then?
> A.  I don't think so.
> Q.  And as a matter of fact, I think it has to do with three heart attacks, MIs, that came in after the cutoff date that were later reported?
> A.  I believe I've read that somewhere, yes, sir.
> Q.  And that there has been some controversy with the journal over that.  You've probably read about that.
> A.  I have.
> Q.  And would you agree that that likely would not have made any difference in your prescribing decision back in October of 2002?
> MR. WRIGHT:  Object to the form.
> A.  I really don't think it would have.

(June 29, 2006 Grefer Discovery Deposition, 81:9-82:11.)

Therefore, Dr. Curfman's testimony about these MI rates is irrelevant in this case, and the Court should bar his testimony about: (i) post-VIGOR report of 0.5% Vioxx / 0.1% naproxen MI infarction rates and the 0.4%/0.1% VIGOR reports, (ii) three heart attacks after the VIGOR cut-off date, and (iii) New England Journal of Medicine "controversy" surrounding this data.[4]  Dr. Curfman's speculation about what would be important lacks any connection to *this* plaintiff and his prescribing physician, for whom it would not be important, and therefore, in the "absence of any connection to [this plaintiff], evidence lacks relevancy [under Fed.R.Evid. 401] and must be

---

[4]      *See also* Memorandum In Support Of Motion Of Merck & Co., Inc. ("Merck") To Exclude Evidence Relating To The New England Journal Of Medicine's December, 2005 "Expression Of Concern."

excluded" under Fed.R.Evid. 402. *See, e.g., State v. Ranger*, 697 A.2d 505 (N.H. 1997) (excluding evidence as irrelevant where no connection to defendant was proven).

(c)      Dr. Curfman's testimony should also be excluded to the extent that it is cumulative of testimony also offered by Drs. Avorn, Topol, and Graham.

### <u>*Alan Nies*</u>

Dr. Nies was a senior vice-president at Merck before leaving Merck in 2002. Although Merck previously submitted objections in *Barnett* to the plaintiffs' designations from Dr. Nies' testimony, no substantive rulings were made. Accordingly, Merck renews its prior objections, and specifically draws the Court's attention to the following issues:

(a)      Merck objects to questions asked of Dr. Nies relating to labeling, FDA regulation and oversight and press releases where counsel did not establish a proper foundation. Dr. Nies did not have responsibility for these areas. Furthermore, much of this testimony is irrelevant to the extent that it relates to events that pre-date the April 2002 label change and Mr. Smith's Vioxx usage. The following lines of questioning are improper and/or irrelevant:

- 141:8-141-21; 562:4-15; 563:4-565-16 – Counsel fails to establish proper foundation to ask Dr. Nies questions relating to labeling and the FDA. Mr. Nies had no involvement in labeling and this Q&A is misleading as to Merck's actions and what Merck was permitted to do under FDA regulations.

- 284:4-285:4 – Counsel questions Dr. Nies about a press release, even though Dr. Nies clearly states he is not involved in press releases. Plaintiff's counsel uses this as an opportunity to testify himself. Furthermore, this press release substantially pre-dates Mr. Smith's Vioxx usage.

- 285:19-288:25 – Merck objects to this line of questioning about the Warning Letter on hearsay and lack of foundation grounds.  Dr. Nies states that he did not have involvement with FDA regulators, and had no recollection of discussions about the Warning Letter. Counsel uses this as an opportunity to read the warning letter into evidence without soliciting any relevant testimony from Dr. Nies.  Furthermore, these events substantially pre-date Mr. Smith's Vioxx usage and have no relationship to Mr. Smith or his prescribing physician.

(b)     Plaintiff's counsel was often argumentative and sarcastic.  He also mischaracterized the evidence, and spent a large part of the deposition testifying.  Below are two examples of this:

- 499:8-505:13 ("So, Dr. Fitzgerald is a buffoon?; "you yourself, I will say, must be a very smart guy because I read your CV, and it goes on for like a hundred pages");

- 521:19-523:19 (*e.g.*, A: That's exactly what Merck did.  Q: No, that is not what Merck did, Doctor).

(c)     Merck would also like to draw the Court's attention to the following objections:

- 243:8-11 – Any probative value here is substantially outweighed by unfair prejudice.

- 559:24-560:4; 562:13-15; 565:6-7 – In these examples, Plaintiff has designated attorney commentary to which the witness did not provide a response.

## IV.    PREVIOUSLY DESIGNATED TESTIMONY WARRANTING A SECOND LOOK

For the handful of witnesses discussed below, Merck respectfully requests that the Court re-visit certain limited portions of its rulings on this testimony in *Barnett*.  Some of the this testimony should be re-visited and excluded because the factual circumstances of the *Smith* case render that testimony entirely irrelevant.  Furthermore, in a small number of instances, Merck offers supplemental and/or renewed arguments for why certain testimony should be excluded.

### *Jerry Avorn*

Dr. Avorn is one of the plaintiffs' retained experts.  Merck has filed a *Daubert* motion seeking to exclude certain portions of his testimony.  Merck specifically requests that the Court re-visit its rulings on the following portions of testimony:

(a)       As part of its cross-examination of Dr. Avorn during the trial preservation deposition, Merck introduced Exhibit 51 which was an article posted on the website of Dr. Avorn's employing institution.  The Court excluded this exhibit and the related testimony based on plaintiffs' objections.  Merck respectfully requests the Court to reconsider its ruling on this portion of deposition testimony (690:15-691:11; 692:15-692:19; 693:4-693:6; 693:18-694:13; 695:3-696:2; 696:6-696:24; 697:6-697:21).  This exhibit and the related examination present proper cross-examination and impeachment material.  This web article is not being offered for the truth of the matters it contains.  Rather, this evidence tends to undermine Dr. Avorn's pronouncements that it was unreasonable and/or improper for Merck to interpret one of his own articles as supporting the hypothesis that naproxen is cardioprotective.  Here, professionals at Dr. Avorn's own institution interpreted his article in precisely that manner.  Moreover, plaintiffs' contentions regarding the credentials of the authors of the web article and its lack of peer-review should go to the weight given to this evidence, not to its admissibility.

14

(b)     Dr. Avorn's testimony regarding the APPROVe follow-up data should be excluded because Merck did not have fair notice of those opinions (e.g., 290:5-290:11; 290:15-291:21). Those opinions were not part of any report submitted by Dr. Avorn.  Nor were these opinions part of his discovery deposition.  Rather, Merck learned of these opinions for the first time during the "trial" portion of his deposition.  This Court has repeatedly ruled that cannot surprise one another at trial with expert opinion testimony.  The rationale for that ruling applies with equal force to trial testimony presented by deposition.

(c)     Dr. Avorn repeatedly offered his opinion about what a "reasonable and prudent" drug company would have or should have done.  (See, e.g., 110:24-111:10; 112:2-112:5; 112:11-113:15; 136:6-136:11; 136:14-137:12; 137:17-143:17; 247:19-248:7; 248:12-248:18; 248:20-249:10; 301:21-302:7; 302:13-309:13; 311:20-312:8; 313:2-316:8; 339:3-339:11; 340:2-342:23; 868:4-868:22; 869:8-869:16.)  For the reasons stated in Merck's *Daubert* motion directed at Dr. Avorn, he is not qualified to offer such opinions.  Furthermore, such testimony should be excluded because it amounts to no more than pure speculation about Merck's alleged motives and intent.  Such testimony lacks any reasonable foundation and is unduly prejudicial.

(d)     Dr. Avorn offers several opinions regarding promotional and labeling activities that are completely irrelevant to this case.  Specifically, Dr. Avorn's testimony regarding the July 2001 Long Range Plan (marked as deposition exhibit 39), a document which purportedly sets forth an analysis of the economic impact of different label changes, is completely irrelevant to Mr. Smith who was not prescribed Vioxx until October 2002 and whose entire Vioxx usage occurred after the April 2002 Vioxx label was adopted.  (See 403:2-403:13; 404:8-404:11; 404:15-405:2).  Likewise, Dr. Avorn's testimony regarding Deposition Exhibit 40, a May 2001 press release, has no relevance to Mr. Smith since this concerns promotional activities that

occurred nearly 1 ½ years prior to Mr. Smith ever being prescribed Vioxx.  (See 405:13-406:21; 407:3-407:14; 408:2-408:6; 408:9-410:20).

### *J. Martin Carroll*

Mr. Carroll is a former Merck employee who was an Executive Vice President of marketing under David Anstice.  Merck specifically requests that the Court re-visit its rulings on the following portions of testimony:

(a)      Plaintiff's counsel questions witness about the CV card.  This testimony is irrelevant because Mr. Smith's prescription and usage of Vioxx substantially post-dates use of the CV card with physicians.  (96:24 – 98:7, 99:19 – 101:5, 101:8 – 102:1, 102:17 – 103:7, 124:11 – 126:17, 130:3 – 130:12, 132:5 – 132:20, 137:10 – 137:19, 137:22 – 137:24)

(b)      Plaintiff's counsel questions witness about 2001 Long Range Operating plan with profit projections for different labeling scenarios.  This testimony is irrelevant Mr. Smith because his Vioxx usage entirely post-dates the 2002 label change that was actually implemented.  (171:8 – 172:5, 172:8 – 172:9, 174:13 – 174:19, 174:22 – 175:7, 175:9 – 176:5, 176:8 – 176:14, 176:18 – 177:9, 177:12 – 177:19, 179:5 – 179:17, 179:20 – 180:17, 180:23 – 182:16, 182:19 – 183:20, 190:19 – 192:3, 192:13 – 193:2, 193:5 – 193:23, 194:3 – 195:4, 195:8 – 196:19, 197:7 – 198:7, 200:4 – 200:10, 200:13 -- 201:5, 201:9 – 201:10, 201:19 – 201:24)

### *Laura Demopolous*

Dr.. Demopoulos formerly was a director of cardiovascular clinical research at Merck.

Merck previously submitted objections in *Barnett* to the Plaintiffs' designations from this deposition, and the Court issued rulings on those objections.  At the time that those objections were submitted, Dr. Demopoulos's deposition had not yet been completed and Merck reserved the right to

provide counter designations.  Although counter-designations were subsequently submitted while the *Barnett* trial was ongoing, Plaintiffs' counsel objected on timeliness grounds.

For clarity of the record, Merck re-submits those same ***counter-designations*** at this time: 452:3-20; 453:25-454:17; 455:1-19; 460:21-461:9; 464:20-467:2; 467:6-468:4; 468:17-469:4; 474:3-6.  To the extent that portions of these counters were or are deemed inadmissible based on references to personal usage of Vioxx, Merck would like the opportunity to edit those references out.

### *Wendy Dixon*

Dr. Dixon is a former Merck employee who was the Vice President of marketing.  Merck specifically requests that the Court re-visit its rulings on the following portions of testimony:

(a)       Plaintiff's counsel questions Dr. Dixon about 5/22/01 press release (147:2 – 147:5, 147:14 – 148:20, 152:25 – 153:13, 153:17 – 153:20).  This testimony is irrelevant because the press release pre-dates Smith Vioxx prescriptions by almost 1 ½ years.

(b)       Plaintiff's counsel questions Dr. Dixon about October 2001 label negotiations and related email.  This testimony is irrelevant to Smith's post-label change Vioxx use (239:23 – 240:14, 240:18 – 240:21, 242:4 – 242:7, 242:18 – 243:4, 243:13 – 243:17, 243:20 – 244:6, 251:5 – 251:6, 251:9 – 251:10).

(c)       Plaintiff's counsel questions Dr. Dixon about October 2001 label negotiations and related email – irrelevant to Smith's post-label change Vioxx use.  Also, calls for speculation relating to Mr. Anstice (the Plaintiff could have asked Mr. Anstice why he sent the document to Dr. Dixon). (251:18-20, 251:23-252:3, 252:13-15, 252:18-20, 253:13-15, 253:20-254:2)

### *David Graham*

Dr. Graham is a medical officer at the FDA.  He was deposed on May 9, 2006.  Merck specifically requests that the Court re-visit its rulings on the following portions of testimony:

(a)     For clarity of the record, Merck requests the Court re-adopt its recent ruling in *Barnett v. Merck* and sustain Merck's objection to Dr. Graham's testimony analogizing Vioxx to a loaded gun and the FDA's use of standard confidence levels in its risk-benefit analysis to a game of Russian Roulette:

> A:  [L]et's play Russian roulette.  Now, we're going to put 95 bullets in the gun, so we are 95 percent certain that this drug causes whatever adverse reaction we're talking about.  Let's just say this drug causes liver failure.  This drug causes heart attacks.  We're 95 percent certain.
>
> Q:  That's the current test?
>
> A:  Right.  So, we put 95 bullets in, and we play Russian roulette.  And at that point, the FDA says, we believe you, the gun is loaded, the drug isn't safe.  Let's take five bullets out of the chamber.  Now we have 90 bullets in the chamber.  So there's only 90 percent chance that when I pull the trigger, a bullet is going to come out of the gun.  FDA says the gun is not loaded.

(Deposition of David Graham, M.D. at 119:1-23.)

(b)     Dr. Graham's testimony regarding estimates of 88,000-140,000 excess events caused by Vioxx should be excluded from this case on Rule 403 grounds.  (See 152:21-153:10)

(c)     To the extent that Dr. Graham's testimony is cumulative of Drs. Avorn, Topol, and Curfman, it should be excluded.

### *Jo Jerman*

Jo Jerman was a regional manager of sales representatives at Merck.  Merck specifically requests that the Court re-visit its rulings on the following portions of testimony:

(a)     Questioning about 5/10/01 email (PX 1.1526) regarding April 2001 detail piece for use by Vioxx professional representatives (102:19 – 102:20, 104:5 – 106:12, 106:19 – 106:24).  This testimony is irrelevant because it relate to pre-2002 promotional activities, and Mr. Smith was not prescribed Vioxx until October 2002.

(b)     Plaintiff's counsel shows Ms. Jerman an email (PX 1.1267) that she had never seen before (284:15 – 19, 284:24 – 286:2, 286:14 – 287:11, 288:16 – 289:5, 291:16 – 292:3, 294:2 – 9,

294:14 – 23).  She did not send the email, nor was the email sent to her.  Therefore there is no foundation to ask Ms. Jerman about the email.  Additionally, the email contains hearsay relating to statements by non-Merck personnel, as well as a news article.  This testimony also is objectionable because it concerns hearsay statements Plaintiff's counsel attributes to Dr. Topol.

### *Edward Scolnick*

Dr. Scolnick was the former President of Merck Research Laboratories.  Merck specifically requests that the Court re-visit its rulings on the following portions of testimony:

(a)      Testimony regarding labeling negotiations with FDA and related emails.  These documents and testimony are irrelevant because Mr. Smith's Vioxx usage entirely post-dates 2002 label change.  (322:6 – 325:17, 326:7 – 326:10, 326:12 – 326:16, 332:9 – 332:25, 333:11 – 334:12, 334:20 – 334:24, 335:12 – 335:15, 335:18 – 335:25, 336:1 – 336:8, 341:17 – 341:20, 343:1 – 343:6, 343:9 – 343:11, 353:12 – 353:25, 357:7 – 357:17, 362:13 – 362:25, 363:4 – 365:12, 365:18 – 365:22, 373:12 – 373:16, 381:11 – 382:2, 704:17 – 704:18, 704:25 – 705:6).

### *Eric Topol*

The Court is familiar with the history of Dr. Topol's November 22, 2005 deposition and the testimony played *Plunkett I* and *Plunkett II*.  Although the testimony of Dr. Topol ultimately was not played in *Barnett,* Merck previously submitted objections in *Barnett* to the Plaintiffs' designations from Dr. Topol's deposition, and the Court issued rulings on those objections. Merck specifically requests that the Court re-visit its rulings on the following testimony:

(a)    Plaintiff's counsel often showed Dr. Topol internal Merck documents that Dr. Topol had never seen before and therefore lacks personal knowledge under Rule 602.  This testimony was previously ruled admissible because the documents in question related to Dr. Topol's article. (*See, e.g.*, 90:5-90:11, 90:21-24, 90:23-91:14, 91:21-23, 92:10-12, 92:18-24, 93:3-23, 94:2-5;

99:16-100:6; 106:14-107:12, 107:15-108:10, 108:13-14.)  Although these documents discuss Dr. Topol's article, they express ideas that were never actually communicated to Dr. Topol at the time.  Therefore, he has no basis for testifying about these documents.  He can provide no legitimate context for these internal discussions because he had no contemporaneous knowledge regarding those discussions.

(b)   Plaintiff's counsel unfairly prejudicial commentary and questions should be excluded. Specifically, counsel's question "Merck took after you, sir?" and the resulting response should be excluded.  (151:8-151:9; 151:12-152:10).

(c)   Dr. Topol's testimony regarding events surrounding the 2001 NEJM publication is cumulative of Dr. Curfman's testimony.  (See 221:22-222:3; 222:9-223:24; 224:22-225:18).

\* \* \*

Merck reserves the right to supplement or amend its Objections and Counter-Designations to Plaintiff's Deposition Designations based upon any ruling of the Court or any other court decisions that affect the scope of evidence in this trial, including rulings on its motions *in limine* or *Daubert* motions.  Merck reserves the right to also counter designate any testimony designated by plaintiff in the event it is not offered by plaintiff.  Merck also reserves the right to make additional completeness designations upon receipt of any Plaintiff's final designations or counter-designations.  Merck does not waive its right to object to and/or move to exclude any documents or testimony that Plaintiff may offer at trial.  Merck reserves all such rights.

By counter-designating testimony in response to Plaintiff's otherwise objectionable designations, Merck does not intend to waive any of its objections to deposition testimony, exhibits, or other evidence or argument.  If, objections by counsel are inadvertently designated, Merck reserves the right to remove them upon resolution of the objection.

Dated:  August 14, 2006

Respectfully submitted,

By: _____
Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Philip S. Beck
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR &
    SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60610
Phone: 312-494-4400
Fax:    312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

—and—

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

21