UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED  8-16-06
LORETTA G. WHYTE
CLERK

|  |  |
|---|---|
| IN RE: VIOXX | : MDL NO. 1657 |
|  | : |
| PRODUCTS LIABILITY LITIGATION | : SECTION: L |
|  | : |
|  | : JUDGE FALLON |
|  | : MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO
*Barnett v. Merck & Co., Inc.*, 06-485

## JURY CHARGE

Members of the Jury:

You have now heard all the evidence in this case as well as the final argument.

It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in this case.

In any jury trial, there are, in effect, two judges. I am one of the judges; the other is you the jury. It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You, as jurors, are the judges of the facts. But in determining what actually happened in this case—that is, in reaching your decision as to the facts—it is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole.

Fee____
Process____
X Dktd____
CtRmDep____
Doc. No.____

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely upon the testimony and other evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and corporations or public entities stand equal before the law and are to be dealt with as equals in the court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that they are particularly concerned that you recall. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case. What the lawyers say is not binding upon you.

Also, during the course of trial, I have occasionally made comments to the lawyers, or

asked a question of a witness, or admonished a witness concerning the manner in which he should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the facts in this case. In arriving at your own findings as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

The law of the United States permits the judge to comment on evidence presented during a case. I do not believe that I have made any comments on the evidence in this case. If you could possibly construe any remarks which I have made during the course of this trial, however, as a comment on the evidence, then I instruct you that any such comment on my part is only an expression of my opinion as to the facts, and you, the jury, may disregard such comment or comments entirely since you, as jurors, are the sole judges of the facts in this case.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You may consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating a fact to be proved. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

In deciding this case, you are expected to use your good sense. Give the evidence and the testimony of the witnesses a reasonable and fair interpretation in the light of your knowledge of

the natural tendencies of human beings.

In weighing the testimony and in determining the credibility of any witness, you may consider the conduct of the witness, his or her bearing on the witness stand, his or her personal feelings as demonstrated by his or her testimony and his or her actions, any interest he or she may have in the outcome of the case, any prejudice or bias he or she may have shown, and any partiality he or she may have demonstrated.

If a witness is shown to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony on other matters and you may distrust all of the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field may be called as an expert witness and is permitted to state his opinion on those technical matters. Such witnesses have testified in this case. You are not, however, required to accept that opinion. As with any other witness, it is up to

you to decide whether to rely upon it.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has economic, philosophical, or any other interest in the outcome of the case.

Certain testimony has been presented to you through a video deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers were presented by video to you. This deposition testimony is entitled to the same consideration, is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

During the course of trial, you will have heard objections to evidence. Sometimes these have been argued out of the hearing of the jury.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against or show any prejudice against a lawyer or his client because of the

making of an objection.

Upon allowing testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, you, the jury, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer the question.

During the course of trial, I have occasionally asked a question of a witness in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the facts to which my question or questions may have related. Remember at all times, you, as jurors, are the sole judges of the facts.

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

This lawsuit arises out of Gerald Barnett's use of Vioxx. Merck manufactured Vioxx. The Plaintiff, Gerald Barnett, contends that he suffered a heart attack as a result of his use of Vioxx. The Plaintiff seeks compensatory damages proximately caused by his injury. He seeks recovery under any of three separate theories of recovery.

*First,* the Plaintiff alleges that Merck should be held strictly liable for his injuries because Merck placed Vioxx on the market with inadequate warnings, making it unreasonably dangerous to consumers. Second, the Plaintiff alleges that Merck negligently placed Vioxx on the market with inadequate warnings. Lastly, the Plaintiff alleges that Merck deceived his physicians by concealing the safety and effectiveness of Vioxx.

Merck contends that Vioxx did not cause Gerald Barnett's injuries. Merck contends, rather, that Gerald Barnett's injuries were caused by his pre-existing coronary artery disease and his own independent health risk factors, and not Vioxx.

Further, Merck contends that its warning and instructions to Gerald Barnett's prescribing physicians and to the public were adequate and complied with the rules of the Food and Drug Administration. Merck also asserts that it acted reasonably and that it had disclosed to the FDA all relevant obtainable and reliable information available at the time Gerald Barnett's physicians prescribed Vioxx to him. In addition, Merck contends that Gerald Barnett's prescribing physicians did not detrimentally rely on any of Merck's statements or omissions.

Although all of the Plaintiff's theories of recovery have been tried together, each is separate from the others, and each party is entitled to have you separately consider each claim. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would have if each claim had been tried before you separately. The Plaintiff is not required to prove all three of these theories in order to recover. Proof of his claim under any one of these theories would enable you to find that he is entitled to a verdict in his favor. The mere fact that the Plaintiff may have been injured, standing alone, does not permit you, the jury, to draw any inference that such injuries were caused by Merck.

Let me now discuss the law applicable to each of the Plaintiff's theories of recovery.

## STRICT LIABILITY FAILURE TO WARN & NEGLIGENT FAILURE TO WARN

I will now discuss with you the law governing the Plaintiff's first two claims, strict liability failure to warn and negligent failure to warn. The burden of proof is on the plaintiff in a civil action, such as this one, to prove every essential element of these two claims by a "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" means to prove that the claim is more likely so than not so. In determining whether any fact has been proved by a "preponderance of the evidence" in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the proof should fail to establish any essential element of the Plaintiff's claim by a preponderance of the evidence, you, the jury, should find for the Defendant as to that claim. The Plaintiff need not produce every possible witness, and he need not prove his claim beyond a reasonable doubt, as is necessary in a criminal prosecution. But speculation or mere possibility and even unsupported probability is not sufficient to support a judgment in his favor.

### Strict Liability Failure to Warn

I will now discuss with you the law governing the Plaintiff's strict liability claim for failure to warn.

In order to decide this claim, you must determine whether Vioxx was defective and

unreasonably dangerous by reason of an inadequate warning and, if so, whether the use of Vioxx and the absence of an adequate warning was a legal cause of the injuries sustained by Gerald Barnett.

Prescription drugs often cause unwanted side effects despite the fact that they have been carefully designed and properly manufactured. Such products are deemed "unavoidably unsafe" but are not defective or unreasonably dangerous if they include adequate warnings of potential side effects. A product, however, is defective due to inadequate warning if the manufacturer fails to give a reasonably prudent physician adequate warning of a particular risk that was known or knowable to the manufacturer in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. A prescription drug manufacturer's duty to warn of the potential risks of its products is directed only to the reasonably prudent physician and not the consumer. However, the manufacturer is directly liable to the patient for breach of such duty.

If a product has a known or reasonably scientifically or medically knowable risk of harmful consequences which comes from the very nature of the product itself, the manufacturer has a duty to take reasonable precautions to provide an adequate warning that would place prescribing physicians on guard against the harmful consequences that might result from use of the product. To provide an adequate warning, the manufacturer must disclose the known or reasonably scientifically or medically knowable risk so that a reasonably prudent physician can act in line with the potential danger.

Under the law applicable to this case, a manufacturer has no duty to warn of potential risks or dangers inherent in a product if the product is distributed to what the law calls a "learned

intermediary" such as a physician who either knows the risks or is in a position to understand and assess the risks involved and to inform the ultimate user of the risks. However, the learned intermediary rule does not shield a drug manufacturer from liability for inadequate warnings to the physician who is reasonably unaware of the risks.

The duty to warn includes the duty to warn with a degree of intensity that would cause a reasonable prescribing physician to exercise the caution commensurate with the potential danger. In determining the scope of a manufacturer's duty to warn of dangers associated with the use of its product, the manufacturer is held to the knowledge and skill of an expert in its field. The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so.

In order to prove his failure to warn claim, the Plaintiff must not only show that Merck's warnings regarding Vioxx were inadequate, but also that such inadequacy affected the decision of his prescribing physicians to prescribe or not to prescribe Vioxx. In other words, the Plaintiff must show that his doctors would not have prescribed Vioxx to him if Merck had provided an adequate warning. An adequate warning to the profession may be eroded or even nullified by overpromotion of the drug through a vigorous sales program which may have the effect of persuading the prescribing physicians to disregard the warnings given.

A manufacturer may prevent a product from being unreasonably dangerous because of a failure to warn if it places an adequate warning on the product regarding its use. When an adequate warning is given, the manufacturer may assume that it will be heeded by the prescriber or the product user. If the prescriber or user ignores the warning, the manufacturer is not liable for any injuries caused by the use of the product. Further, if the user or his treating physician is aware

of the danger and nevertheless proceeds to make use of the product and the user is injured by it, the user may not recover from the manufacturer any damages caused by its use.

If the greater weight of the evidence does not support the claim of the Plaintiff, your verdict should be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then your verdict should be for the Plaintiff.

**Negligent Failure to Warn**

I will now discuss with you the law governing the Plaintiff's negligent failure to warn claim. In this claim, the Plaintiff alleges that Merck was negligent in failing to warn Gerald Barnett's prescribing physicians of a dangerous condition in Vioxx and that such negligence was a legal cause of his injuries.

To establish Merck's liability for negligent failure to warn, the Plaintiff must prove the following three elements:

> 1. Merck negligently failed to adequately warn the Plaintiff's treating physicians or the medical community of a known or reasonably scientifically or medically knowable risk associated with Vioxx,

> 2. He suffered injuries as a result of Merck's alleged failure to warn, and

> 3. Merck's negligence was the proximate cause of his injuries.

Negligence is the failure to use reasonable care. In this case, reasonable care is that degree of care which a reasonably prudent pharmaceutical company would use under like circumstances. Negligence may consist either in doing something that a reasonably prudent pharmaceutical company would not do under like circumstances or in failing to do something that a reasonably

prudent pharmaceutical company would do under like circumstances.

Usually, the degree of care required depends upon the risk of harm flowing from normal use of the product or is proportionate to the seriousness of the consequences reasonably to be anticipated. While an extraordinary duty of care is not required of a manufacturer, the duty on the part of the manufacturer to exercise due care must be commensurate with the risk of danger involved.

Moreover, in determining whether the legal standard of care has been satisfied, a manufacturer is held to the skill of an expert in its business and to an expert's knowledge of the materials and processes in its industry. A manufacturer owes a duty to conduct adequate tests and inspections of its products such as will reveal latent defects or defects that are not apparent upon a reasonable inspection so that it can give adequate warnings. The failure to exercise reasonable care in fulfilling any of these duties constitutes negligence.

If the greater weight of the evidence does not support the claim of the Plaintiff, then your verdict must be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then your verdict should be for the Plaintiff.

## DECEIT BY CONCEALMENT

*I will now discuss with you the law governing the Plaintiff's third claim, the deceit by concealment claim.* Unlike the Plaintiff's other claims which must only be proven by a preponderance of the evidence, the Plaintiff must prove each element of his deceit by concealment claim by clear and convincing evidence. Clear and convincing evidence is an elevated standard of proof, which lies between the lesser standard of "preponderance of the evidence," and the higher

standard of "beyond a reasonable doubt," which is required in criminal cases. Clear and convincing evidence is that degree of proof which will produce in your mind a firm belief as to the allegations sought to be established.

To establish this claim, the Plaintiff must show that Merck knowingly misrepresented or failed to disclose a material fact to the Plaintiff's treating physicians in a circumstance where it was required to do so, that the Plaintiff's physicians were entitled to and did rely on that misrepresentation or nondisclosure, and that the misrepresentation or nondisclosure was a legal cause of the Plaintiff's claimed injuries. The misrepresentation or nondisclosure must be of fact rather than upon opinion. The distinction between a matter of fact and a matter of opinion is generally characterized by what is susceptible of exact knowledge when the statement or omission is made. Statements or nondisclosures of opinion, predictions of future events, mere puffing, sales talk, and broken promises normally do not amount to deceit by concealment. Bad faith is the test of fraudulent concealment. The truth or falsity of a representation must be determined as of the time it was made or acted on and not at some later date.

Nondisclosure, or silence, becomes fraudulent when it is the duty of the party having knowledge of the facts to uncover them to the other. Where material facts are accessible to the seller only and the seller knows that they are not within the reach of the diligent attention, observation, and judgment of the purchaser's treating physician, the seller is bound to disclose such facts and make them known to the purchaser's treating physician. When in such a situation the seller fails to disclose these facts, the seller's nondisclosure of these facts is equivalent to fraudulent concealment.

The misrepresentation or nondisclosure must also be material. If an objective, reasonable

prescribing physician would have viewed the representation or nondisclosure as sufficiently important and significant that it would have played a role in his decision to prescribe a drug, the representation or nondisclosure may be deemed material. To say it another way, the matter is material if a reasonable prescribing physician would attach importance to its existence or nonexistence in determining whether or not to prescribe a drug.

To recover for deceit by concealment in a pharmaceutical case, the Plaintiff's prescribing physicians must have relied on the alleged misrepresentation or nondisclosure. If they knew the misrepresentation was false or knew the allegedly undisclosed facts, there is no cause of action for fraudulent concealment because there could not have been any reliance. A victim of fraud has a right to rely on the information provided so long as his reliance is not reckless or grossly negligent. The right to rely must be determined in light of the duty of the Plaintiff's prescribing physicians to use reasonable prudence and diligence under the circumstances in ascertaining the truth with respect to the representations or omissions made to him. The legitimacy of the Plaintiff's physicians' reliance on the misrepresentation or omission is an issue to be decided by you, the jury.

## CAUSATION

In order for the Plaintiff to prevail on any of his claims, he must establish that Vioxx was the proximate cause of his alleged injuries. Proximate cause means the efficient cause or direct cause. The law defines proximate cause as something that produces a natural chain of events which, in the end, bring about the injury. In other words, proximate cause is the cause without which the injury would not have occurred.

Proximate cause requires proof of both causation in fact and legal cause. Causation in fact

is proved by establishing that the Plaintiff's injury would not have occurred "but for" the Defendant's actions.

Legal cause is proved by establishing foreseeability. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of conduct. Foreseeability is not determined from hindsight, but rather from the Defendant's perspective at the time of the complained of act. The law requires only reasonable foresight. It is not necessary for the Plaintiff to demonstrate that the Defendant should have foreseen the particular event which occurred, but merely that the Defendant should have foreseen his actions would probably cause injury to someone. The Plaintiff proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the Defendant's actions.

In order to be regarded as the proximate cause of the injury, however, the defect need not be the only cause. A defect may be a legal cause of an injury even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time the defect has its effect and if the defect contributes substantially to producing the alleged injury. Furthermore, a defendant may still be held liable when the defendant's fault operates upon a concealed physical condition, such as a latent disease, to produce consequences which the defendant could not reasonably anticipate.

## **VOLUNTARY WITHDRAWAL OF VIOXX**

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004. You may not consider that fact as evidence that Vioxx was defective or defectively designed or that Merck was negligent or acted culpably. You may also not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx

or as evidence that Vioxx can cause injuries such as those alleged by Gerald Barnett. You may, however, consider this withdrawal for other purposes, such as proving ownership, control, or feasibility of precautionary measures.

## FDA CERTIFICATION

Compliance with an FDA regulation may establish that the manufacturer met the appropriate minimum standards of due care, but compliance does not necessarily absolve the manufacturer of all liability, nor does it establish that the warnings at issue were adequate. Even if you find that the Defendant Merck met all government regulations and requirements, such compliance is not a defense if a reasonable and prudent manufacturer would have taken added precautions.

## DAMAGES

Now let me speak with you about damages. "Damages" is the term in dollars and cents which expresses the injuries sustained by the Plaintiff. If the Plaintiff has proven one or more of his claims against Merck, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I give you instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Plaintiff suffered damages as a result of Merck's fault. I am instructing you on damages only so that you will have guidance in the event that you decide Merck is liable and the Plaintiff is entitled to recover money from Merck.

The Plaintiff claims that he has suffered injuries as a result of his use of Vioxx. He is entitled to recover if he has proved any of the above theories of recovery. If you find that the Plaintiff has proven one or more of his claims, then you must determine the amount of

compensatory damages to which he is entitled. Compensatory damages are not allowed as a punishment against a party. Such damages cannot be based on speculation, for it is only actual damages–what the law calls compensatory damages–that are recoverable. However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of the injury, tangible and intangible. They are an attempt to make the Plaintiff whole, or to restore him to the position he would have been in if the accident had not happened.

You should consider the following elements of damages to the extent you find that the Plaintiff has established such damages by a preponderance of the evidence. Physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of the Plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life, as well as loss of life expectancy, if any; mental anguish and feelings of economic insecurity caused by disability; medical expenses; the reasonable value, not exceeding actual cost to the Plaintiff, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the Plaintiff for his injuries.

Also, in the event you find that the Plaintiff is entitled to receive an award for mental and/or physical disability, or mental and/or physical pain and suffering, past, present, or future, I instruct you that such an award is not subject to income tax; neither the state nor federal

government will tax it. Therefore, you should determine the amount that the Plaintiff is entitled to receive without considering the effect of taxes upon it.

If you make any award for future medical expenses, you should adjust or discount the award to present value by considering what return would be realized on a relatively risk free investment if it were invested over the period of time in which the medical expenses were likely to occur.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

You have heard evidence about Gerald Barnett's life expectancy. Life expectancy, as shown by a statistical table, is merely an estimate of the probable average remaining length of life of all persons in the United States of a given age and sex, and that estimate is based upon a limited record of experience. So, the inference which may reasonably be drawn from life expectancy, as shown by the tables, applies only to one who has the average health and exposure to danger of people of that age and sex.

In determining the reasonably certain life expectancy of the Plaintiff, you should consider in addition to what is shown by the tables, all other facts and circumstances in evidence bearing upon the life expectancy of the Plaintiff, including occupation, habits, past health record and present state of health.

Suggestions as to the amount of damages that should be awarded are mere arguments of counsel. You may consider them and use them only as guidelines to whatever extent they may aid you in arriving at a reasonable and just award in view of the evidence. But you are in no way bound by, nor should you use, any rigid mathematical formula. The determination of damages is

solely your function and must be based on competent evidence.

Again, the mere fact that I have given you instructions on the law of damages does not in any way suggest that I believe that any damages are due in this case. Whether or not the Plaintiff is entitled to recover and whether or not any damages are due is for you to decide.

## CONCLUDING INSTRUCTIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## VERDICT FORM

I have prepared a special verdict form for your convenience and to aid you in reaching a unanimous decision. You will take the form with you to the jury room. The verdict must represent the considered judgment of each juror.

You will note that the form contains several interrogatories or questions. The answer to each question must be the unanimous answer of the jury. In the space provided below each question, you will find directions which instruct you either to answer the next question, to answer some other question, or to stop and return to the courtroom with your verdict. You must carefully

follow these directions as you complete the form.

[READ THE VERDICT FORM]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. First, select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given about your conduct during the trial. After you have reached your unanimous verdict, your foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, any numerical division on any question.

If you want to communicate with me at any time, please give a signed written message or question to the Marshall, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.