UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF ITS MOTION TO
EXCLUDE COMMUNICATIONS BETWEEN MERCK AND THE FDA IN 2005 ABOUT
THE POTENTIAL REINTRODUCTION OF VIOXX® TO THE MARKET AND/OR
<u>ANY PROPOSED BLACK BOX WARNING</u>**

**(MOTION IN *LIMINE* NO. 1)**

Plaintiff's opposition asserts that the "Type A Meeting Background Package," which Merck prepared and submitted to the FDA in 2005 and which included a draft label with a black box warning, does not qualify as a "subsequent remedial measure" because it was not actually adopted as a label and that, in any event, it should be admitted under the "feasibility and impeachment" exceptions. Plaintiff's positions are without merit. First, Federal Rule of

Evidence 407, which excludes subsequent remedial measures, cannot be read so narrowly because to do so would be directly contrary to the purpose of the rule. Second, the 2005 draft label arising out of the APPROVe data that was unblinded in September 2004 is irrelevant to whether plaintiff, whose injury occurred in February 2003, was adequately warned of known risks at the time. Consequently, the draft label does not demonstrate the "feasibility" of a black box warning; nor can it be used for "impeachment."

Similarly, Merck's communications with the FDA in 2005, which were also based on the APPROVe data, are wholly irrelevant to the issue to be decided in this case – whether Merck failed to adequately warn plaintiff of known or reasonably scientifically knowable risks and whether Vioxx caused plaintiff's February 2003 injury.

I.  **THE LABEL MERCK PROPOSED IN 2005, TWO YEARS AFTER PLAINTIFF'S INJURY, IS INADMISSIBLE SUBSEQUENT REMEDIAL MEASURE EVIDENCE.**

Courts uniformly hold that evidence of revised labels drafted after a plaintiff's injury constitute "subsequent remedial measures." *See, e.g., Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 271 & n.10 (5th Cir. 2002) (Rule 407 prohibits admission of the "package insert in the years following [plaintiff's] injury" because it constitutes "evidence of subsequent remedial measures [that] cannot be considered in evaluated whether the 1997 warning was adequate"); *DeLuryea v. Winthrop Labs.*, 697 F.2d 222, 229 (8th Cir. 1983) ("exhibits, documents, articles, package inserts, and Physicians' Desk Reference warnings after June 1974 [the date plaintiff was told to stop taking the drug] were thus inadmissible" under Rule 407); *Werner v. Upjohn Co.*, 628 F.2d 848, 851 (4th Cir. 1980) (reversing jury verdict and ordering a new trial because the district court allowed evidence of defendant's subsequent prescription drug warning); *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355 "L", 2003 U.S. Dist. LEXIS 3824, at *2 (E.D. La. March 11, 2003)

(excluding "warning labels issued for Propulsid after the death of the decedent").[1]

This Court should reject plaintiff's argument that Merck's draft label does not constitute a "subsequent remedial measure" because it was not implemented. (Pl.'s. Opp. at 3.) To accept plaintiff's argument would lead to the absurd result that any manufacturer who considered multiple remedial measures (but did not implement all of them) would then be unable to exclude the unadopted measures as subsequent remedial measures. Such a result would be directly contrary to Rule 407's stated purpose of "encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *See* FED. R. EVID. 407, advisory committee's note. Here, Merck considered bringing Vioxx back on the market with a black box warning as an alternative to continuing to keep it off the market. Thus, this Court should find that Merck's 2005 draft label constitutes a "subsequent remedial measure" under Rule 407.

II.  **NEITHER THE "FEASIBILITY" NOR THE "IMPEACHMENT" EXCEPTION TO RULE 407 IS APPLICABLE IN THIS CASE.**

Without any explanation or legal support, plaintiff asserts that he should be allowed to offer evidence of Merck's draft label because (1) the "documents are admissible to show that an adequate and full warning of Vioxx's cardiovascular risks was feasible"; or (2) the label is "admissible for impeachment purposes." (Pl.'s. Opp. at 3.) Neither exception applies.

   A.  **Plaintiff's Reliance On The "Feasibility" Exception To Rule 407 Should Be Rejected.**

Plaintiff argues that Merck's 2005 draft label is "admissible to show that an adequate and full warning of Vioxx's cardiovascular risks was feasible" prior to plaintiff's injury. (Pl.'s. Opp. at 3.) Plaintiff is wrong.

---

[1] Plaintiff's reference to Kentucky Rule of Evidence 407 is irrelevant. *See Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436, 1448 (W.D. Ky. 1996) (specifically rejecting plaintiffs' request that Kentucky Rule of Evidence 407, and not Federal Rule of Evidence 407, be applied to their product liability action).

3

As detailed in Merck's motion, evidence of a proposed label discussed with the FDA two years after the plaintiff's injury is not admissible to prove that Merck could have unilaterally added a black box warning to the Vioxx label, a conclusion that is a necessary predicate to any "feasibility" claim. In approving the 2002 label, the FDA determined that the significance of the VIGOR data was "unknown." Plaintiff's claimed injury took place in February 2003, well before the APPROVe results were available, and well before the February 2005 Advisory Committee meeting, at a time when the 2002 label was the last word on the FDA's view on the risks of Vioxx. At the time of plaintiff's claimed injury, federal regulations prohibited Merck from including a black box warning unless specifically required by the FDA. (Merck's Mot. at 6-7.)[2] Plaintiff has not and cannot offer any evidence that the FDA required or would have permitted a black box warning for an "unknown" risk. The Court should therefore not allow plaintiff to introduce Merck's proposed black box label, which was drafted in 2005 after Vioxx was withdrawn from the market, to prove that it was "feasible" for Merck to have unilaterally added a black box warning before plaintiff's injury occurred.

### B. Plaintiff's Reliance On The "Impeachment" Exception Should Also Be Rejected.

The Commentary to Rule 407 makes clear that plaintiff's vague reference to "impeachment" is not enough to trigger the admission of these documents:

> If "impeachment" means simple contradiction, then the impeachment exception to Rule 407 would threaten to swallow the Rule itself. Accordingly, most Courts have held that a subsequent remedial measure is not admissible for impeachment if it is offered for simple contradiction of a defense witness' testimony. Essentially, the limited probative value of the evidence for impeachment is substantially outweighed by the risk of prejudice and confusion resulting from the possible misuse of the subsequent remedial measure by the jury. If the defense witness simply testifies that a product is safe, a subsequent remedial measure is contradictory, but not very much so -- there could be many reasons, other than a

---

[2] Any reliance on a state-imposed regulation to argue that Merck should have added a black box warning is preempted. (Merck's Mot. at 7.)

4

> recognition of safety concerns, for the decision to change a product or condition after the accident.
>
> On the other hand, if the defense witnesses testify in superlatives -- e.g., "this is the safest product on the market" -- then the evidence of a subsequent remedial measure provides more than simple contradiction. It shows that the witness puffed and exaggerated while on the stand. As such, the remedial measure provides a more direct and probative form of impeachment, which justifies a limited exception to the Rule 407 exclusionary principle.

FED. R. EVID. 407, cmt. (citations omitted).

As these comments make clear, evidence that Merck proposed a black box warning in 2005 – after the FDA Advisory Committee had recommended that all NSAID's carry such a label on the basis of data unavailable in 2003 – cannot be used to contradict the testimony of a defense witness that Merck could not unilaterally adopt a different label in 2003.

**III.   MERCK'S 2005 COMMUNICATIONS WITH THE FDA ABOUT REINTRODUCING VIOXX ARE IRRELEVANT TO PROVE MERCK'S KNOWLEDGE IN 2003.**

Plaintiff argues that "Merck contends that the probative value of this evidence is outweighed by its prejudicial nature." (Pl.'s Opp. at 3.) In reality, the 2005 communications with the FDA, which were based on the APPROVe data, have no probative value *at all*. As discussed in Merck's motion, it submitted a "Type A Background Package" to the FDA in March 2005 after a three-day FDA Advisory Committee meeting wherein the Committee concluded that there exists a "class effect" for COX-2 inhibitors regarding cardiovascular safety. (The Advisory Committee's conclusion was based on data unavailable at the time of plaintiff's alleged injury in 2003.) Thereafter, Merck met with the FDA to discuss the Background Package and made statements, reflected in the Meeting Minutes, about the Advisory Committee conclusions and the APPROVe data, which was first unblinded in September 2004.

Contrary to plaintiff's position, these statements are not admissible to prove "how much information Merck had [before plaintiff's injury] and the type of warning it should have issued."

5

(Pl.'s Opp. at 4.)  There is no evidence, credible or otherwise, that the APPROVe data was available to Merck before September 2004.  Therefore, to allow plaintiff to use Merck's statements about how the APPROVe data should be conveyed to prove, as plaintiff's say it would, "that Merck had enough information for years to issue the type of strong warning that ultimately it was forced to recognized was appropriate" would be improper and unduly prejudicial under Federal Rules of Evidence 401, 402, and 403.  Consequently, the Meeting Minutes should be excluded.

### IV.  CONCLUSION.

For the reasons above and in Merck's motion, this Court should exclude Plaintiff's Exhibits 1.1031, 1.1220, and 1.1219.

Dated:  August 21, 2006

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

824951v.1

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:    202-434-5029


Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply of Merck in Support of its Motion to Exclude Communications between Merck and the FDA in 2005 about the Potential Reintroduction of Vioxx to the Market and/or Any Proposed Black Box Warning has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

        */s/ Dorothy H. Wimberly*
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana 70130
        Phone: 504-581-3200
        Fax:    504-581-3361
        dwimberly@stonepigman.com

        Defendants' Liaison Counsel

824951v.1