UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to** | * | |
| **Case No. 2:05-CV-04379** | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| **ROBERT G. SMITH**, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OR ARGUMENT THAT MERCK (1) SHOULD OR COULD HAVE UNILATERALLY CHANGED THE VIOXX® LABEL; OR (2) "DRAGGED ITS FEET" TO PREVENT THE VIGOR DATA FROM <u>BEING ADDED TO THE VIOXX LABEL</u>**

**(MOTION IN *LIMINE* NO. 2)**

This case is different from both *Plunkett* and *Barnett* in a key respect – it is undisputed that this is entirely a post-VIGOR label change case.  One valuable reason for selecting different types of cases for trial is to determine whether different factual scenarios change case outcomes. In *Smith*, where plaintiff did not begin taking Vioxx until six months after the label change,

824952v.1

evidence concerning certain of Merck's interactions with the FDA, that was relevant in prior MDL cases, is irrelevant.

In his opposition, plaintiff argues that he should be able to introduce evidence that Merck could have unilaterally changed the Vioxx label for two reasons. First, plaintiff asserts that Merck "never adequately warned" potential consumers of the dangers of Vioxx and thus its past actions are relevant. Second, plaintiff asserts that this evidence shows Merck's routine practice. Both of plaintiff's positions are without merit and amount to trying to use testimony irrelevant to the issues in this case to demonstrate that Merck is "bad" and should be found guilty, regardless of the facts specific to this plaintiff. Such attempts to use "character evidence" are barred by Federal Rule of Evidence 404.

For the reasons stated below and in Merck's underlying motion, the Court should exclude testimony and argument that Merck (i) could have used the CBE procedure; and (ii) "dragged its feet" in changing the Vioxx label to include information about the cardiovascular events that occurred in the VIGOR study.[1]

---

[1] Plaintiff's argument that Merck has not made a motion in *limine*, but only a motion to exclude, should be disregarded. Plaintiff's statement represents a fundamental misunderstanding of the nature of pretrial in *limine* motions. A motion in *limine* is nothing more than a pretrial motion to exclude. *See* BALLENTINE'S LAW DICTIONARY (defining "in *limine*" as "[o]n the threshold; at the outset"); *see also* 75 AM. JUR. 2D TRIAL § 94 ("A motion in *limine* is a preliminary or pretrial procedural device. . . . Broadly defined, it would apply to any motion made prior to the impaneling of the jury. A motion in *limine* seeks a protective order prohibiting the opposing party, counsel and witnesses from offering offending evidence at trial, or even mentioning it at trial, without first having its admissibility determined outside the presence of the jury . . . it is not the office or function of a motion in *limine* to obtain a final ruling upon the ultimate admissibility of evidence; the court's ruling on the motion is interlocutory in nature and subject to change during the course of trial." (internal citations omitted)). Plaintiff's attempt to foreclose further argument on this evidence should the Court deny Merck's motion is plainly wrong.

**I.     IN THIS POST-LABEL CHANGE CASE, MERCK'S ABILITY TO UTILIZE THE "CBE" PROCEDURE TO ADD THE VIGOR DATA IS IRRELEVANT.**

Regardless of whether plaintiff believes the post-VIGOR label is still inadequate, the timing of that label change and any arguments that Merck should have made the change earlier is completely irrelevant to any issue being tried in this case.  Plaintiff began taking Vioxx in October 2002.  Six months earlier, in April 2002, the Vioxx label was modified to add the adverse cardiovascular data from the VIGOR study.  Merck first learned about this data in March 2000 and, in previous Vioxx trials, plaintiffs have argued that between March 2000 and April 2002, Merck "dragged its feet" because it did not want prescribing physicians to know about the cardiovascular data from VIGOR.  In those trials, plaintiffs began taking Vioxx before the VIGOR data was added to the label and argued that if this information had been available earlier, they would not have taken Vioxx.[2]  In this case, plaintiff did not begin taking Vioxx until October 2002.  Consequently, it is irrelevant whether Merck could have added the VIGOR data to the Vioxx label before April 2002.[3]  *See, e.g., Werner v. Upjohn Co.*, 628 F.2d 848, 852 & n.1 (4th Cir. 1980) (noting that because plaintiff first visited the doctor on December 10, 1974, "[t]he adequacy of the warnings issued prior to 1974 was not in issue in this case.").

**II.    MERCK'S COMMUNICATIONS WITH THE FDA BETWEEN MARCH 2000 AND APRIL 2002 ARE NOT EVIDENCE OF MERCK'S "ROUTINE PRACTICE."**

Rule 406, which allows certain evidence of "habit" to be introduced, is an exception to

---

[2] Merck, of course, disputes the validity of this argument since it published the VIGOR data and discussed its significance in several other contexts before the FDA concluded in April 2002 that the Vioxx label should state that the significance of the VIGOR data is "unknown."

[3] Likewise, Merck's alleged motive to delay the label change is irrelevant.  Plaintiff's argument that it is entitled to prove Merck failed to warn of Vioxx's alleged cardiovascular risk because it was motivated by money does not implicate the issue of whether Merck could or should have used the "CBE" procedure to add the VIGOR data before April 2002.

3

Rule 404's prohibition against character evidence.[4] To avoid "thwarting Rule 404's prohibition against the use of character evidence," "[c]ourts have generally proceeded cautiously in permitting the admission of a pattern of conduct as habit, because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character." FED. R. EVID. 406, advisory committee note (citing *Simplex, Inc. v. Diversified Energy Sys.*, 847 F.2d 1290, 1293 (7th Cir. 1988) and *United States v. Mascio*, 774 F.2d 219 (7th Cir. 1985) ("there is no such thing as a habit of committing insurance fraud, because evidence of such 'habits' 'would be identical to the kind of evidence that is the target of the general rule against character evidence'")).

Specifically, the notes to Rule 406 describe a habit as "one's regular response to a repeated specific situation" and then state that "[e]quivalent behavior on the part of a group is designated 'routine practice of an organization' in this rule." FED. R. EVID. 406, advisory committee notes. Thus, "activity that is extremely complicated is unlikely to be considered habit, since such activity would ordinarily be dependent on a significant thought process, as well as a number of contingencies, and all that is inconsistent with the notion of habit as reflexive and semiautomatic." FED. R. EVID. 406, cmt. (citing *U.S. v. Troutman*, 814 F.2d 1428 (10th Cir. 1987) ("evidence of past official conduct was not admissible under Rule 406 because 'extortion or refraining from extortion is not a semi-automatic act and does not constitute habit'")).

Here, plaintiff would attempt to use evidence of Merck's discussions with the FDA about the significance of the VIGOR study's cardiovascular data to argue that it "dragged its feet"

---

[4] Rule 404 prohibits "(a) Evidence of a person's character or a trait of character . . . for the purpose of proving action in conformity therewith on a particular occasion . . . [and] (b) Evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."

4

between March 2000 and April 2002 and that, "even after Merck changed its label [at some unspecified time after the April 2002 label change], it *continued* to 'drag its feet' on including *accurate and complete* warnings of Vioxx's cardiovascular risks.") (*See, e.g.*, Pl.'s Opp. at 4 (emphasis in original).)

Plaintiff's attempt to use Rule 406 for this purpose is improper. First, Merck's communications with the FDA about the VIGOR data are highly fact specific and do not qualify as evidence of Merck's "routine practice." Second, Rule 406 allows a party to offer evidence to prove the opposing party's action in conformity therewith "on a particular occasion." *See* FED. R. EVID. 406. Plaintiff has not pointed to any "particular occasion" for which this evidence is directly relevant. Instead, plaintiff argues that this evidence "will show that, from the first day it considered marketing Vioxx, Merck's strategy and practice was to ignore, minimize or 'spin' the cardiovascular risk" and that "[a]t every turn then, Merck always tried to withhold, minimize or misrepresent the cardiovascular risk." (Pl.'s Opp. at 5.) Plaintiff's statements and argument are nothing more than an attempt to bootstrap evidence that is entirely irrelevant to plaintiff's specific case to show that Merck acted as plaintiff argues it did. Rule 406 does not allow otherwise irrelevant evidence to be admitted in this way.

Merck's communications with the FDA about the VIGOR data, which occurred between March 2000 and April 2002, are anything but a "routine organizational practice." Plaintiff's argument that this evidence is therefore relevant under Rule 406 should be rejected.

### III. CONCLUSION.

For the reasons stated above and in Merck's motion, Merck asks this Court to grant its motion and exclude all testimony and argument that Merck (i) could or should have unilaterally modified the Vioxx label to add the VIGOR results sooner than it did; and (ii) "dragged its feet"

5

in changing the Vioxx label to include information about the cardiovascular events that occurred in the VIGOR study.

Dated:  August 21, 2006                                      Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

Attorneys for Merck & Co., Inc.

824952v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply of Merck in Support of its Motion to Exclude Testimony or Argument that Merck (1) Should or Could Have Unilaterally Changed the Vioxx Label; or (2) "Dragged Its Feet" to Prevent the VIGOR Data from Being Added to the Vioxx Label has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

824952v.1