UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF DAVID GRAHAM, M.D.**

**(MOTION IN *LIMINE* NO. 4)**

In its motion, Merck asked this Court to exclude (i) Dr. Graham's excess event opinion; (ii) Dr. Graham's opinions that the FDA does not care about the public, but serves industry first and foremost; and (iii) other irrelevant and prejudicial testimony.[1]  In his opposition, plaintiff resorts to misrepresenting Merck's position rather than opposing on the merits.  Contrary to

---

[1] Plaintiff's argument that Merck has not made a motion in *limine*, but only a motion to exclude, should be disregarded.  (*See* Merck's Reply in Support of its Motion in *Limine* No. 2 at 2 n.1.)

824944v.1

plaintiff's argument, Merck does not attack Dr. Graham's excess event conclusion, but the methodology by which the conclusion was reached. (Consequently, the conclusion is unreliable and must be excluded.) Put simply, Dr. Graham's decision to use certain non-Vioxx® studies to derive the "background rate" of heart attacks is not scientifically justifiable.

Similarly, plaintiff is incorrect in his assertion that Dr. Graham's opinions criticizing the FDA are admissible under Federal Rule of Evidence 106 or because Merck has opened the door. Testimony that the FDA approved Vioxx does not open the door to criticisms that the FDA does not serve the public. Plaintiff also fails to make any meaningful argument against Merck's request to exclude three irrelevant areas of testimony under Federal Rules of Evidence 401, 402, 403, 602, and 802.

**I.    THE COURT SHOULD EXCLUDE ANY EVIDENCE OF, OR REFERENCE TO, DR. GRAHAM'S ESTIMATE OF THE NUMBER OF EXCESS HEART ATTACKS AND DEATHS ALLEGEDLY ATTRIBUTABLE TO VIOXX USE.**

Plaintiff's argument that Dr. Graham's excess event estimate is admissible fails on several grounds:

***First***, contrary to plaintiff's statements, Merck does not argue "that Dr. Graham's conclusions concerning Vioxx deaths are wrong and, therefore, presumptively unreliable." (Pl.'s Opp. at 3.) Rather, Merck argues that Dr. Graham's methodology that allowed him to reach his opinion that Vioxx caused between 88,000 to 140,000 excess cardiac events in the U.S. population (with 44% leading to a fatal result) is flawed. With a slight of hand, Dr. Graham has manipulated the numbers to make two plus two equal five.

Dr. Graham's excess event opinion is unreliable because he relies on a comparator heart attack rate from non-Vioxx studies. This is key because, as Dr. Graham admits, the comparator rate dictates the numbers. (*See* Deposition of David Graham, M.D. ("Graham Dep.") at 429:24-430:3 (testifying that "at the end of the day, the background rate is what drives what that actual

estimate of numbers is."), attached hereto as Exhibit A.)  As discussed in greater detail in Merck's motion, the actual rate of heart attacks among Vioxx users in the VIGOR and APPROVe studies was *lower* than the rate of heart attacks from the studies that he used to derive his background rate.  (Graham Dep. at 428:13-19, 432:22-433:1 ("Q:  And, again, the real life heart attack rate in both VIGOR and APPROVe was lower than what you say is the normal background rate for people who are not taking any medicine at all, right?  A:  That's correct.").)[2]

In other words, while Dr. Graham purports to find an excess number of heart attacks associated with Vioxx use, the underlying data that he relies on for this proposition show the exact *opposite* – namely, that Vioxx users had *fewer* heart attacks.  It is not improper, as plaintiff argues, for the Court to consider this fact when determining the reliability of Dr. Graham's methodology.  *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1977) ("[C]onclusions and methodology are not entirely distinct from one another.  Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) ("A court may rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is too great an analytical gap between the data and the opinion proffered." (internal quotation marks and citations omitted)).

---

[2] Dr. Graham attempts to defend his methodologically-flawed calculation on the ground that the VIGOR study supposedly excluded patients who were likely to develop coronary artery disease. (Graham Dep. at 425:1-14.)  According to Dr. Graham, the rate of heart attacks reported for Vioxx users in the VIGOR study thus underestimates the "true" rate in the general population. (*Id.*)  But this explanation is unavailing.  Dr. Graham conceded that the VIGOR study involved rheumatoid arthritis patients, who are at a *higher* risk of heart attacks than the general population.  (*Id.* at 430:16-431:11.)

3

Reviewing the methodology and conclusions from the underlying data, this Court should find that Dr. Graham's excess event opinion is unreliable and should exclude it.[3]

***Second***, the fact that Dr. Graham's excess event estimate was published in THE LANCET is entitled to little weight because the estimate is not derived from the Kaiser Permanente data Dr. Graham analyzed, which was the basis of the study.[4] The excess event opinion is completely tangential to Dr. Graham's study, a fact which plaintiff does not even attempt to address. Instead, plaintiff urges this Court to believe that publication is "a key indicator of reliability." (Pl.'s Opp. at 3; *see also id.* at 8, 9, 11.) Plaintiff is wrong. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1316 (11th Cir. 1999) ("[S]crutiny by one's peers does not insure admissibility. Again, it is well established that 'publication . . . is not a sine qua non of admissibility.'") (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 593 (1993)).[5]

***Third***, Dr. Graham's excess event estimate is not "relevant to Merck's duty, level of conscious disregard for the safety of the consumer, [or] the unreasonableness and reprehensibility of Merck's conduct when presented with such data." (Pl.'s Opp. at 10.) Plaintiff's arguments assume that Merck had knowledge of this data, but that is demonstrably false. Dr. Graham's study was not published until February 2005, five months after Vioxx was

---

[3] Based on these facts, it is not surprising that Dr. Graham conceded that his excess event estimate may not reflect a real number. (Graham Dep. at 430:6-15 (testifying that "we put a number in our paper, and what we were more concerned with was the public health impact of Vioxx exposure than we were with what were the particular numbers").)

[4] Merck does not seek to exclude all reference to Dr. Graham's study. Instead, Merck seeks to exclude only the excess event estimate that Dr. Graham inserted in the next to last paragraph of his study. The excess event estimate is entirely unrelated to his study, which analyzed the data from Kaiser Permanente's California database. (Graham Study at 1.) In contrast, Dr. Graham's excess event opinion is derived from calculations of data from four different studies, only two of which were studies of Vioxx.

[5] Interestingly, the peer reviewers of Dr. Graham's study urged him to take the excess event calculation out of his article. (Graham Dep. at 410:1-23.)

withdrawn from the market.  This Court should reject plaintiff's argument that this evidence is admissible to prove notice.

### II. MERCK HAS NOT OPENED THE DOOR TO DR. GRAHAM'S OPINION THAT THE FDA IS NOT INTERESTED IN "WHAT'S BEST FOR THE PUBLIC."

Plaintiff argues that he is entitled to present Dr. Graham's testimony, pursuant to Federal Rule of Evidence 106, every time Merck references the fact that Vioxx was approved by the FDA.  But Rule 106 does not work this way, which is obvious from a plain reading of the rule: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  FED. R. EVID. 106.  Because this "rule of completeness" is inapplicable, the Court should reject plaintiff's attempt to admit Dr. Graham's testimony criticizing the FDA.

Plaintiff also argues that Dr. Graham should be allowed to testify, for example, that "[FDA] management gets selected, by how well they get along with industry," and the "FDA is not functioning in the independent and objective interests of what's best for the public" because it is relevant to Merck's duty to warn and Vioxx's safety.  (Pl.'s Opp. at 5; *see* Merck's Motion in *Limine* No. 4 at 10-11.)  This type of FDA criticism is not justified merely because Merck offers evidence that Vioxx was approved by the FDA as safe and effective during the time it was on the market.  To counter that evidence, plaintiff must offer evidence that Vioxx is not safe and effective.  Plaintiff cannot, however, bootstrap to that evidence that everyone at the FDA was biased and, therefore, the FDA's approval was meaningless.  This type of criticism is preempted by *Buckman*.  Moreover, plaintiff's argument that Dr. Graham, as an FDA employee, has "first-hand knowledge" is wrong.  Dr. Graham was not involved in the FDA's approval or labeling decisions for Vioxx (Graham Dep. at 272:5-19) and, often, his testimony is based on

5

inadmissible hearsay (*see* Merck's Mot. at 10 & n. 16).

Dr. Graham's criticisms are nothing more than speculative accusations that Vioxx is not safe and effective and should be excluded under Federal Rules of Evidence 602, 802 and 403, and the Supreme Court's decision in *Buckman*.

### III. PLAINTIFF IS NOT ENTITLED TO INTRODUCE IRRELEVANT TESTIMONY THAT WILL CONFUSE THE JURY AND UNDULY PREJUDICE MERCK.

Merck requested that this Court exercise its discretion under Rule 403 and exclude the following three types of irrelevant evidence.

First, whether the FDA allegedly "dragged its feet" in pulling phenylpropanolamine ("PPA") from the market is not an issue that Merck should have to litigate. (Pl.'s Opp. at 14.) Such evidence is irrelevant and unduly prejudicial to Merck because this case is not about PPA and Merck did not manufacture PPA. It makes no difference whether this is one of Dr. Graham's "rationally-based" perceptions. It is unduly prejudicial to allow Dr. Graham to testify that PPA was a drug that caused strokes in young women and the FDA should have pulled it off the market sooner.

Second, this Court should exclude Dr. Graham's testimony about the Prescription Drug User Fee Act ("PDUFA"). Dr. Graham's discussion of the PDUFA is meant to convince the jury that Merck *improperly* paid the FDA to get its products approved as safe and effective. (*See* Graham Dep. at 95:22-96:1 (testifying that the PDUFA caused "the preapproval people [to] look for reasons to say yes to a drug.") It is improper to allow this inference because all PDUFA's fees are mandatory for all prescription drug manufacturers. In addition, Dr. Graham's testimony is not based on his "perception." Dr. Graham admits that his opinion about the effect of the PDUFA is based on "remarks that have been passed in internal meetings that I have been present at." (*Id.* at 97:4-17.) This is hearsay and should be excluded under Federal Rule of Evidence

6

802.  Finally, Dr. Graham's opinion cannot be based on his "perception," as plaintiff states, because he does not work in the department of the FDA that approves drugs.  (*See id.* at 272:5-19.)  Accordingly, this testimony should be excluded under Federal Rules of Evidence 401, 402, 403, and 802.

Third, Dr. Graham's explanation of the complex, statistical concept of confidence level by using an analogy to Russian Roulette is completely inapt and should be excluded because it is demonstrably wrong.  (*See id.* at 119:1-22.)   In *Barnett*, the Court decided to exclude this testimony.  It should do so again here.

### IV. CONCLUSION.

For the reasons stated above and in Merck's underlying motion, the Court should grant Merck's motion to exclude Dr. Graham's testimony that:

(1) Vioxx caused between 88,000 to 144,000 excess heart attacks and approximately 44% of those events resulted in fatality;

(2) Criticizes the FDA;

(3) The FDA knew PPA was associated with hemorrhagic stroke since 1984, but did not remove PPA from the market until 2000 or 2001;

(4) Congress' enactment of PDUFA caused the FDA to favor the pharmaceutical industry over patient safety; and

(5) The 95% confidence level required by the FDA to determine reliability of study results can be analogized to a game of Russian Roulette where a gun with 95 bullets is unsafe, but a gun with 94 bullets is safe.

Dated:  August 21, 2006

824944v.1

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

824944v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply of Merck in Support of its Motion to Exclude the Testimony of David Graham, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

824944v.1