UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF ITS MOTION
TO EXCLUDE (1) EVIDENCE OF MOTIVE AND (2) EVIDENCE RELATING
TO THE ASSETS AND PROFITABILITY OF MERCK OR TO THE
<u>COMPENSATION AND FINANCIAL DECISIONS OF ITS EMPLOYEES</u>**

**(MOTION IN *LIMINE* NO. 5)**

Plaintiff's opposition to Merck's Motion in *Limine* No. 5 provides no reason why the Court should not exclude the evidence addressed in the motion from the liability phase of trial, just as it did in *Plunkett v. Merck* and *Barnett v. Merck*. For the reasons discussed below and in Merck's opening brief, the Court should grant Merck's motion in full.[1]

---

[1] Plaintiff's argument that Merck has not made a motion in *limine*, but only a motion to exclude,
(*footnote continued next page*)

824972v.1

I.   **PLAINTIFF HAS NOT DEMONSTRATED THAT EVIDENCE OF MERCK'S FINANCIAL CONDITION IS RELEVANT TO HIS CLAIMS.**

Plaintiff fails to explain in his opposition how documents concerning Merck's financial status have anything to do with his injuries or claims against Merck.[2]  In fact, the only specific evidence cited by plaintiff are financial forecasts that assess the potential impact of a different warning label for Vioxx®.  That label change was made six months *before* Mr. Smith ever took Vioxx, so it is inconceivable how the cited evidence is relevant to this post-label change case.  Plaintiff advances three unconvincing arguments in support of his position.

*First*, plaintiff claims that evidence of Merck's overall corporate goals is relevant to his common law fraud claim because one of the elements he must prove is intent to induce action. (Pl.'s Opp. at 3 (citing *Gooch v. E.I. DuPont de Nemours & Co.*, 40 F. Supp. 2d 857, 860 (W.D. Ky. 1998)).)  Plaintiff ignores the fact that this was also a necessary element of the fraud claims asserted by plaintiffs in *Plunkett* and *Barnett* – and that the Court still excluded evidence of Merck's financial condition from the first phase of trial in those cases.  *See Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985) (under Florida law, fraudulent misrepresentation requires proof of intent to induce action); *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003)  (under South Carolina law, fraud requires proof of intent to induce action).  Plaintiff also fails to explain how evidence about Merck's financial condition proves intent do anything, much less plaintiff's allegations that Merck "intended to lie" in marketing Vioxx.

---

should be disregarded.  (*See* Merck's Reply in Support of its Motion in *Limine* No. 2 at 2 n.1.)
[2] Plaintiff suggests, without support, that evidence of "net worth" is the only type of financial evidence that might be excluded.  But other evidence of financial conditions or alleged financial motive is subject to the same rules of exclusion as evidence of "net worth."  *See* FED. R. EVID. 401, 402, 403; *see also Gray v. Hoffman-La Roche, Inc.*, 82 Fed. Appx. 639, 650-51 (10th Cir. 2003) (upholding trial court's exclusion of profit motive evidence).

The specific "motive" evidence cited by plaintiff does not support his position. For example, plaintiff points to the "Profit Plan 2002 - Merck A & A Franchise," an analysis based on known and anticipated events including "the CV label change expected due to VIGOR and CLASS." Plaintiff also references Merck's "US Long Range Operating Plan Franchise: Analgesic & Anti-Inflammatory Products: Vioxx, Etoricoxib," another market analysis based on scenarios concerning CV labels. These projections, based on hypothetical situations, prove Merck's intent to forecast sales. They do not prove plaintiff's fraud claim.

*Second*, plaintiff argues that Merck's alleged "motives" in marketing and selling Vioxx are relevant to his claims for failure to warn, negligence, and design defect.[3] (Pl.'s Opp. at 4-6.) Specifically, plaintiff claims that Merck's profit plan and long-range operating plan "prove not only that Merck was well aware that its drug could cause the very injury Plaintiff suffered, but failed to warn of the risk because of the impact on its bottom line." (Pl.'s Opp. at 4.) Plaintiff is wrong. These documents, which are forecasts based on known and anticipated circumstances, have no tendency to prove any facts at issue. (They only prove that Vioxx was a profitable product, which is not at issue here.) The mere fact that Vioxx was profitable does not make it any more likely that Merck could or should have added a warning earlier, nor does it show that Vioxx could have or did cause Mr. Smith's heart attack. Mr. Smith did not start taking Vioxx until six months *after* Merck, with authorization from the FDA, changed the Vioxx warning label

---

[3] However, plaintiff's opposition fails to address the cases Merck offered to support the proposition that motive is not relevant to strict liability or negligence claims. Further, plaintiff misrepresents the one case he cites for the proposition that the evidence is admissible, *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 314 (3d Cir. 2004) (cited in Pl.'s Opp. at 4). His opposition makes no mention of the following sentence from that case: "Evidence tending simply to show that Wyeth wanted to successfully market the diet drugs and make a profit selling them *would not be relevant* to show, for example, that Wyeth acted negligently." *In re Diet Drugs*, 369 F.3d at 314 (emphasis added). Similarly, here, evidence that Merck wanted to make a profit in selling Vioxx is irrelevant to plaintiff's claims.

3

824972v.1

in April 2002.  (*See* Robert G. Smith's Plaintiff Profile Form at 00006-00007, attached hereto as Ex. A.)  Accordingly, any failure to warn earlier cannot have proximately caused Mr. Smith's alleged injuries.  Simply put, none of the evidence cited by plaintiff has any tendency to prove any fact at issue in this case.

***Finally***, although not specific to any one of his claims, plaintiff argues that "the personal financial incentives of Merck employees as they made critical safety and marketing decisions, evidence of the profit incentive for the company as it chose between safety studies, and evidence of the financial pressures Merck faced during the time is made these critical decisions" is "critical to the jury's assessment of Merck's credibility."  (Pl.'s Opp. at 6.)  This contention is baseless.  Plaintiff has no desire to use this evidence in context, but rather has hand-picked a few documents in an attempt to inflame the jury.  The jury will know that Merck profited from Vioxx sales and that Merck employees were paid to do their jobs.  Introducing evidence to show how much they were paid or how much profit Vioxx might have made for Merck is unnecessary, prejudicial, and improper.  The jury does not need to know how much money Merck's Chief Executive Officer made in order to evaluate his credibility.

Plaintiff's opposition reveals the true purpose for much of this evidence.  As Merck suspected, plaintiff intends to use evidence of Merck's financial condition in an attempt to depict Merck as a bad actor that was only out for profits.  Plaintiff has failed, however, to overcome Merck's showing that such evidence is irrelevant and inadmissible.

**II.  EVIDENCE OF MERCK'S ALLEGED "MOTIVES" IN MARKETING AND SELLING VIOXX IS NOT RELEVANT TO PUNITIVE DAMAGES, BUT THE COURT NEED NOT MAKE THAT DETERMINATION UNLESS AND UNTIL PUNITIVE DAMAGES BECOME RELEVANT.**

In *Plunkett*, this Court determined that "evidence of motive and evidence relating to the assets and profitability of Merck or to the compensation and financial decisions of its

4

employees" *may* be relevant *if* punitive damages become an issue or "may have . . . some relevance [during] cross-exam if defendant's witnesses introduce good motive in some fashion." (Nov. 20, 2005 Order re Merck's Motions in *Limine* at 2 (emphasis added).)  Otherwise, the Court held that such evidence is irrelevant.  Likewise in *Barnett*, the Court kept plaintiff's evidence of Merck's alleged financial "motives" out of the first phase of trial.  Here, plaintiff ignores the Court's previous finding and puts the cart before the horse.[4]

Where the compensatory and punitive phases of trial are bifurcated, plaintiff must first establish the defendant's liability for compensatory damages before one can determine whether a second, "punitive," phase is necessary.  *See O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) (approving bifurcation of liability and bad faith punitive damage claims); *State Farm Fire & Cas. v. Woods*, 896 F. Supp. 658, 659-60 (E.D. Tex. 1995) (bifurcating liability and punitive damages issues and noting that evidence of a party's net worth would "severely prejudice" the calculation of actual damages).  Further, even if punitive damages become an issue, evidence of Merck's marketing "motives" and nationwide profit and operating plans is irrelevant because such evidence bears no relationship to the conduct that allegedly caused Mr. Smith's injury and is devoid of any nexus with the state in which he sustained his injury.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-23, 428-29 (2003) (prohibiting punitive damages based on conduct having no relationship to the plaintiff's alleged injury).  Thus, evidence of Merck's marketing "motive" and evidence relating to the assets and

---

[4] Plaintiff also misrepresents Merck's position on bifurcation, citing Merck's Memorandum on Kentucky law. (Pl.'s Opp. at 7.)  As the Court is aware, the parties were asked to address a number of issues – among them, bifurcation – in the state-law summaries the Court requested in connection with the *Barnett*, *Smith*, *Mason*, and *Dedrick* cases.  Merck complied with this request, but has consistently taken the position, adopted by this Court, that bifurcation is a matter of federal law.

5

profitability of Merck or to the compensation and financial decisions of its employees is irrelevant whether or not punitive damages ever become an issue.

### III. PLAINTIFF CANNOT REFUTE MERCK'S POSITION THAT EVIDENCE OF MERCK'S ASSETS, PROFITABILITY, OR THE COMPENSATION OR FINANCIAL DECISIONS OF ITS EMPLOYEES WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND UNDUE DELAY.

Plaintiff also offers no more than *ipse dixit* in an attempt to show that the evidence addressed in this motion in *limine* should not be excluded under Rule 403. In its opening motion, Merck made clear that evidence of profits and motive is prejudicial because any minimal relevance it may have is far outweighed by the likelihood of the jury's being misled and induced to make a decision for improper reasons, such as antipathy to large corporations and their officers. (Merck's Mot. at 7-8.) Evidence must be excluded when it would mislead, confuse, and distract the jury. *See U.S. v. Simkanin*, 420 F.3d 397, 412 (5th Cir. 2005) (evidence should be excluded when it would have a "tendency to confuse the jury"), *cert. denied*, 126 S. Ct. 1911 (2006). Here, it would be highly misleading for the jury to consider these documents outside of their proper context. If plaintiff were permitted to present to the jury evidence of Merck's motives and profits, Merck would be required to counter with evidence to explain how these marketing strategies fit in Merck's overall business plan in order to put the evidence in context. This would substantially lengthen the trial and add to juror confusion.

In short, the Court should exclude evidence of Merck's motives, profits, or employee compensation as any minimal relevance such evidence might have is substantially outweighed by the danger of unfair prejudice that its admission entails.

### IV. CONCLUSION.

For the reasons stated above and in its prior briefing on this subject, Merck respectfully requests that the Court exclude all evidence offered to show the alleged "motive" of Merck or its

6

officers or employees in developing and marketing Vioxx – including any evidence relating to Merck's wealth, profitability, assets, income, or net worth, as well as the compensation, stock holdings, or stock options of its officers and employees.

Dated:  August 21, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:       504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:       312-494-4440

Richard B. Goetz
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:       213-430-6407

And

824972v.1

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

824972v.1

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Reply in Support of Merck's Motion to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

    */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

824972v.1