## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
  *Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

### PLAINTIFF'S MEMORANDUM
### IN  OPPOSITION TO DEFENDANT MERCK & CO., INC'S MOTION TO EXCLUDE THE TESTIMONY OF RICHARD M. KAPIT, M.D.

---

*(Defendant's Expert Challenge No. 5)*

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff R. Garry Smith, by and through his undersigned counsel, asks this Court to deny Defendant Merck & Co., Inc.'s ["Merck"] Motion to Exclude the testimony of Richard M. Kapit, M.D. ("Merck's Motion Re Kapit").  In support thereof,  Plaintiff would show as follows:

### <u>INTRODUCTION</u>

This Court has already found Richard M. Kapit, M.D., qualified to offer expert testimony regarding "FDA regulations and Merck's response."  *In re Vioxx Prods. Liab. Litig.,* 401 F. Supp. 2d 565, 595 (E.D. La. 2005) (relating to *Plunkett v. Merck & Co., Inc.*, No. 05-4046).  Since that ruling, Dr. Kapit has prepared a new expert report.[1]  Now Merck has moved this Court to exclude several statements made in Dr. Kapit's new report and his deposition. In addition, it claims that

---

[1] *See* Expert Report of Richard M. Kapit, M.D. (hereinafter "Kapit Report"), attached as Exhibit A.

evidence Dr. Kapit can provide concerning Merck's lack of candor and/or interactions with the FDA prior to the label change purporting to add the VIGOR study results is now somehow irrelevant. As set forth in Plaintiff's other responses,[2] this argument is based on a false premise: that Merck's lies about Vioxx stopped the first time it changed its label. The evidence in this case is clear and overwhelming that it did not.

With regard to Dr. Kapit himself,  Merck attacks what it characterizes as: (1) his unspecified "new" opinions regarding the "intent and state of mind of Merck and the [United States Food and Drug Administration ('FDA')]"; (2) his alleged criticisms that (a) the FDA missed something when it approved the Vioxx New Drug Application ("NDA"), and (b) the FDA serves industry before the public health and (3) opinions that merely 'parrot' the conclusions of Drs. Graham, Jewell and Avorn."   Merck's Motion Re Kapit at 2. Merck, however, presents a highly misleading characterization of Dr. Kapit's testimony,  misapplies the Federal Rules of Evidence, and attempts to deprive Dr. Kapit of his right and obligation to rely upon the work of other experts.  In all respects, Merck simply "parrots" arguments this Court has already properly rejected.  For these reasons, this Court should not reconsider its ruling allowing the testimony of Dr. Kapit and should deny Merck's motion here.

---

[2]Because Merck has filed this same motion under several guises, Plaintiffs adopts and incorporates for all purposes Plaintiff's Memorandum in Opposition to Defendant's Motion to Exclude (A) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Employees, filed Aug. 14, 2006, and Plaintiff's Memorandum in Opposition to Defendant's Motion to Exclude Testimony or Argument That Merck (1) Should or Could Have Unilaterally Changed the Vioxx Label to Include the VIGOR Data; or (2) "Dragged its Feet "To Prevent the VIGOR Data from Being Added to the Vioxx Label. filed Aug.14, 2006. Both are attached.

**DISCUSSION**

I.    **MERCK *NEVER* ADEQUATELY WARNED OF VIOXX'S CARDIOVASCULAR EFFECTS IN *ANY* LABEL; THEREFORE, EVIDENCE OF MERCK'S ATTEMPTS TO WITHHOLD AND/OR MISREPRESENT SUCH INFORMATION ARE RELEVANT TO PLAINTIFF'S CLAIMS.**

The underlying assumptions of Merck's motion are that its calculated attempt to withhold from patients and their doctors the dangers of Vioxx somehow ended when ***some*** reference to the so-called VIGOR test results were finally included in the Vioxx label and that anyone who used Vioxx thereafter was adequately warned of such dangers.   If Merck can succeed in having this Court adopt such an argument in any context without examining it too carefully, Merck apparently hopes to deal a fatal blow to all post-label change cases, including the one filed by Garry Smith.

Merck's assumptions are not well-founded or, at the very least, are fact issues for the jury.[3] As Mr. Smith's doctor attests, Merck's labeling was ***still*** inadequate even when Mr. Smith used Vioxx because Merck never ***fully or accurately*** apprised doctors or their patients of the VIGOR results or Vioxx's cardiovascular effects even the day it was pulled off the market.  Thus, even after Merck finally included some mention of Vioxx's cardiovascular effects in its label, Merck so badly misrepresented those effects that practitioners could not accurately assess whether the drug was appropriate for use with their patients. For example, even after the label change, a practitioner reading the label would have been told that the potential cardiovascular problem was only a concern in patients "with a medical history of ischemic heart disease" when the VIGOR evidence actually was that the risk was present in ***all*** patients. In short, even after Merck changed its label,  Merck

―――――――――――――――――

[3]In fact, when Merck has responded to attempts by prior plaintiff to prevent it from making the argument that it was prevented by law from changing its label, Merck's habitual response has been to argue that whether it should have changed its label was a fact issue.

*continued* to "drag its feet" on including *accurate* warnings of Vioxx's cardiovascular risks, or, for that matter, any "warning" at all, and should have strengthened and more accurately reported these results in its label to reflect such dangers. It did not.

Merck's argument regarding the effect of its label change is, therefore, a classic "red herring."

Thus, for the reasons set forth in Plaintiff's Memorandum in Opposition to Defendant's Motion to Exclude (A) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Employees, evidence relating to Merck's actions with regard to the so-called VIGOR data vis-a-vis its labeling are relevant to and probative of Plaintiff's claims.

**II.    SUCH EVIDENCE IS RELEVANT TO SHOW MERCK'S ROUTINE PRACTICE OF WITHHOLDING OR MISREPRESENTING INFORMATION REGARDING THE CARDIOVASCULAR RISKS OF VIOXX.**

The evidence in this case will show that, from the first day it considered marketing Vioxx, Merck's strategy and practice has been to ignore, minimize or "spin" the cardiovascular risk to gain and preserve market share and avoid losses related to stronger warnings. Despite having clear notice of a potential safety problems with Vioxx, as early as 1998, Merck and its marketing department, which conducted many of the studies, 1) designed those studies in a way that would not show cardiovascular risk, 2) failed to disclose other studies that showed a risk, and 3) refused to do a specific study to analyze the cardiovascular risk until it was effectively force to do the so-called VIGOR study.

Once it got the VIGOR results, Merck consistently downplayed the risk, even in its revised label, concocted the "naproxen" alibi (that the result of a study comparing Vioxx and its significantly

4

higher rate of cardiovascular problems with naproxen was due to naproxen's alleged *cardioprotective* properties), misrepresented the results, withheld data (which the New England Journal has criticized them for), again refused to do an additional cardiovascular study, and dragged their feet as long as they could before issuing a new label which did not include a warning about such risks.  At every turn then, Merck always tried to withhold, minimize or misrepresent the cardiovascular risk, from rushing the drug to market all the way to product withdrawal.

Although Plaintiff believes that such conduct constitutes one long continuing tort, if Merck is somehow permitted to consider each instance of its conduct as a discrete and separable part, what is implied by its motions here,  then, under FED. R. EVID. 406, Plaintiff should also be permitted to show that each such discrete instance is a separate example of Merck's routine practice in dealing with Vioxx. On this ground, Plaintiff should be permitted to introduce the evidence Merck seeks to exclude on the ground that it represents Merck's routine practice with regard to Vioxx and is relevant to show that Merck acted in precisely the same manner even after it made its label change to add some mention of the VIGOR study. Merck's motion to exclude should be denied.

## III.   DR. KAPIT MAY TESTIFY REGARDING MERCK'S INTERACTIONS WITH THE FDA.

Merck argues that Dr. Kapit has expressed new opinions regarding the state of mind of Merck and the FDA.  This argument assumes that Dr. Kapit has *ever* expressed opinions on Merck's or the FDA's state of mind in court. According to this Court, he has not. Thus, in *Plunkett,* this Court permitted Dr. Kapit to "[f]ocus on the significance of certain documents and how these documents fit into the FDA's regulatory scheme." *See In re Vioxx*, 401 F. Supp. 2d at 595. It specifically instructed, however, that "Dr. Kapit may not testify as to what Merck was thinking." *Id.* The Court recognized the important difference between the two types of testimony. Merck would have the

5

Court ignore that difference and exclude Dr. Kapit's testimony *in toto*. Fortunately, this Court has not been fooled.

### A.      Significance of FDA Correspondence.

The first opinion Merck challenges relates to the FDA's alleged "frustration" at Merck's lack of candor.  Dr. Kapit will not at trial describe the FDA's "feelings" regarding Merck, but instead, he will describe the significance and regulatory rationale behind the FDA's letter to Merck. *See* Kapit Dep. at  76, lns. 10-14.  Federal Rule of Evidence 702 permits Dr. Kapit to testify about the letter as it relates to normal FDA procedures, such as whether the FDA routinely sends such letters to pharmaceutical companies and why. *See, e.g., United States v. Garcia,* 447 F.3d 1327, 1335 (11th Cir.  2006) ("we have recognized the 'well-established' 'rule' that 'an experienced narcotics agent' may testify as an expert to help a jury understand 'the significance of certain conduct or methods of operation unique to the drug distribution business"); *United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997);

Consistent with this Court's prior ruling, Dr. Kapit should be allowed to testify regarding the significance of the letter in the context of the FDA's regulatory scheme. *See In re Vioxx*, 401 F.Supp. 2d at 595.

### B.      Financial Impact of Label Change Possibilities.

The next testimony Defendant seeks to exclude involves Merck's financial assessments relating to Vioxx.  Dr. Kapit will not testify at trial regarding Merck's intentions involving the marketing of Vioxx.  A jury is well-equipped to make a determination that Merck put profitability ahead of public health.  But a jury is not necessarily capable of interpreting the evidence regarding the financial impact on Merck of a Vioxx label change.  Dr. Kapit's specialized knowledge can

assist the jury in understanding certain internal Merck documents relating to Merck's financial stake in changing the Vioxx label. *See* Kapit Dep. 186:1-6;  F<small>ED</small>. R. E<small>VID</small>. 702.  Perhaps the best indication of the need for expert testimony on this issue is the fact that Merck's ***own*** expert, Dr. Janet Arrowsmith-Lowe, was at a loss to interpret Merck's internal projections when presented with one of the same documents at her deposition.  *See* Dep. Janet Arrowsmith-Lowe, M.D. 314:19-317:11, attached as Exhibit B.

       C.       **Label Change Delay.**

The third kind of testimony Merck challenges involves Merck's delay in including the VIGOR data in the Vioxx label.  Specifically, Merck objects to the statement that "Merck dragged its collective feet" in changing its Vioxx label. *See* Kapit Report ¶ 124.  Dr. Kapit, however, is certainly qualified to testify in whatever language he chooses regarding the unusual and almost unprecedented length of time it took for the VIGOR data to make its way into the Vioxx label.  Dr. Kapit's evaluation of Merck's interaction with the FDA derives from years of experience.  And Dr. Kapit's assessment accurately reflects the substantial delay arising from Merck's two-years of negotiations with the FDA.  Dr. Kapit's conclusion does not necessarily suggest a motivation for Merck's responses, but does indicate significance and relative uniqueness of Merck's many delays in including such data.  Indeed, Dr. Kapit's opinion comports with the assessment of Dr. David Graham, a senior drug safety expert with the FDA.  *See*  Dep. David J. Graham, M.D. 104:2-12, attached as Exhibit C.

**D.**      **Merck's Desire to Preempt Regulatory Action.**

Merck seeks to excluded testimony concerning its apparent desire to preempt regulatory action by the FDA.  Plaintiff stipulates that Dr. Kapit will not testify regarding Merck's desires, and the particular quotation in question from Dr. Kapit's deposition will not be offered in trial.

**E.**      **Interpretation of Content of Proposed Label Changes.**

Merck also seeks exclude Merck's reasons for pursuing expedited review by the FDA.  Dr. Kapit will not testify regarding Merck's intentions in choosing any particular course of action.  Dr. Kapit, however, is qualified to interpret FDA and Merck documents relating to the content of the proposed label change.  Therefore, while Dr. Kapit will not venture opinions regarding Merck's state of mind, his judgments regarding the primary effect and significance of the label change, evident in both FDA and Merck documents, is well within the scope of Rule 702.

**F.**      **FDA "Feelings" About October 2001 Label Proposal.**

The last opinion Defendant challenges based on "intent and motivation" grounds relates to the FDA's knowledge that Merck would not "like" the October 2001 draft Vioxx label.  (Def.'s Mem. 3.)  This opinion will not be offered at trial.

**IV.    DR. KAPIT MAY PROPERLY TESTIFY REGARDING THE EFFICIENCY OF THE FDA'S REGULATORY SCHEME.**

Merck contends that Dr. Kapit's "criticisms of the FDA" are both (1) "irrelevant" under Federal Rule of Evidence 403 and (2) preempted by *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).  Defendant, however, misreads both the Federal Rules of Evidence and Court precedent in this case.

**A.**  **Dr. Kapit's Testimony Regarding the FDA's Workload is Relevant and Reasonably Rely on Survey Data from a Government Agency.**

Merck frames its argument as a challenge to the "relevance" of Dr. Kapit's testimony under Federal Rule of Evidence 403.[4]  Rule 403, however, *assumes* that the evidence in question is relevant.  *See* Charles Alan Wright & Kenneth W. Graham, Jr., 22 Federal Practice and Procedure: Evidence § 5211-24 (1978 & Supp. 2005).  Thus, Rule 403 provides that a court may exercise its discretion to exclude relevant evidence if the probative value of that evidence is substantially outweighed by other factors, such as unfair prejudice.  Merck fails to show, or even suggest, what prejudice Dr. Kapit's testimony would work against it, and how that prejudice is unfair.  Merck consistently argues, however, that Dr. Kapit's testimony is "irrelevant" and relies on arguments about "unreliable" evidence – standards derived from other provisions of the Federal Rules of Evidence.

Federal Rules of Evidence 401 and 402 govern the admissibility of evidence on relevance grounds.  Rule 402 provides that "[a]ll relevant evidence is admissible," unless otherwise provided by law.  And Rule 401 defines relevance as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence."  Merck argues that Dr. Kapit's opinion regarding the efficiency of the FDA regulatory process is irrelevant. Merck contends that the "only relevant fact is whether the FDA

---

[4]  The rule states:

> ***Although relevant***, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403 (emphasis added).

employees who actually reviewed the Vioxx NDA thought that they had adequate time to do so." (Def.'s Mem. 7.)  But Dr. Kapit's expert opinion regarding the efficiency of the FDA regulatory scheme is directly relevant to the matter at hand.

Dr. Kapit is qualified by training and experience to offer an expert opinion on the FDA's regulatory scheme. The FDA's drug approval process is not flawless for any drug.  The inefficiencies in the system and the agency's reliance on the forthrightness of pharmaceutical manufacturers speak directly to the standard of care due to the medical community and the general public on behalf of drug makers.  And the sufficiency of the FDA review process, including the time available to conduct an expedited review, is directly relevant to assessing the interactions of the corporate and agency players in this case.

This is particularly true since Merck continues to argue that FDA approval is somehow dispositive of the question of its duty to warn. For this reason, Plaintiff has filed a motion in limine directed to such an argument.[5]

Finally, Merck argues that the survey Dr. Kapit relies on is itself unreliable.  Rule 703[6] provides that an expert may rely on otherwise inadmissible evidence, so long as the evidence is of

---

[5]Plaintiff's Motion to Exclude or, in the Alternative, Motion in Limine Concerning Defendant's Argument that It Was Prohibited by FDA Regulations From Making Label Changes Without Prior Approval. That motion and memorandum are attached collectively as Exhibit D and incorporated for all purposes here.

[6] The rule states in relevant part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  *If of a type reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

FED. R. EVID. 703 (emphasis added).

the type reasonably relied upon by experts in the field.  In this particular case, Dr. Kapit relied on a report issued by the Office of the Inspector General of the Department of Health and Human Services, which found that 58 percent of FDA reviewers felt that six-months was inadequate time for a priority review.  *See*  Kapit Report ¶ 31. Merck does not explain how it could possibly be unreasonable for Dr. Kapit to rely on an official, published study from the Inspector General. Instead, Merck suggests that this survey itself  is unreliable since the response rate was just under 50 percent, and the survey was conducted several years after the Vioxx review.  Merck, however, never argues that Dr. Kapit's reliance on the Inspector General's report is unreasonable.  Indeed, it is certainly reasonable for an expert offering opinions regarding a regulatory agency to rely on a report published by a government official responsible for assessing the performance of an office under that official's purview.  Under Rule 703, Dr. Kapit reasonably relies on the survey, making Dr. Kapit's testimony admissible.  Merck may choose to attack the survey's reliability if and when it is introduced at trial.

Federal courts have held, consistent with Rule 703, that the reliability of underlying evidence goes to the weight of the testimony; admissibility is determined by the reasonableness of the reliance of the testifying expert.  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Therefore, experts may rely on evidence that would itself be otherwise inadmissible, even on reliability grounds. *Black v. M & W Gear Co.,* 269 F.3d 1220, 1229 (10th Cir. 2001) (citing Charles Alan Wright & Victor James Gold, 29 Federal Practice and Procedure: Evidence § 6273 (1997)). "[T]he rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what

evidence is sufficiently trustworthy and probative to merit reliance."  *Id.*  (quoting *Kinser v. Gehl Co.,* 184 F.3d 1259, 1274-75 (10th Cir. 1999), *overruled on other grounds, Weisgram v. Marley Co.,* 528 U.S. 440, n. 2 (2000)).

### B.   Dr. Kapit's Testimony Is Not Preempted by Federal Law.

Merck contends that federal law preempts "any suggestion that the FDA was not sufficiently rigorous in its evaluation and approval of Vioxx."  This Court has previously rejected Defendant's attempts to preclude Dr. Kapit's testimony on preemption grounds.  *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d at 585-87, 594-95 ("[*Buckman*] is not applicable to this case or issue at all.").  Nonetheless, Defendant attempts to resurrect its *Buckman* preemption argument, suggesting that *only* Congress can discuss inefficiencies in the FDA's regulatory scheme.

Just as it did in seeking to exclude evidence from Dr. Graham, in this motion, Merck adopts a reading of *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), only a bureaucrat could love: that any testimony that may be interpreted as criticism of the FDA or its processes is preempted as a matter of law and absolutely inadmissible in a court of law.  Perhaps such a reading would have some appeal in an authoritarian regime where the notion of  separation of powers and things like the First Amendment are unknown, but it has no application in New Orleans.  No court in the land has recognized and the FDA itself has never asserted such sweeping authority.[7] This Court should not be the first.

In truth, the Court's evidentiary ruling on Dr. Kapit's testimony here has nothing to do with preemption. Regardless of whether information was concealed from the FDA, the issue that usually

---

[7]That is not surprising since such a power grab by an executive agency without Congressional authorization would quickly be declared unconstitutional. It is telling that Merck cites no authority for this ominous description of sweeping FDA authority.

implicates preemption analysis, Merck undertook to misrepresent the facts to **plaintiff and/or his physicians**, and to conceal **from plaintiff and or his physicians** facts it was bound to disclose. Under those circumstances, there can be no preemption.  *See Caraker v. Sandoz Pharm. Corp.,* 172 F.Supp.2d 1018, 1033 (S.D. Ill. 2001); *Globetti v. Sandoz Pharm. Corp.,* 2001 WL 419160 (N.D. Ala. 2001);  *Eve v. Sandoz Pharm. Corp.,* 2002 WL 181972 (S.D. Ind. 2002).

Instead, numerous courts have recognized that evidence of defendants' communications with the FDA may be relevant and thus admissible in a lawsuit involving a state tort claim. For example, in  *Bouchard v. Amer. Home Products Corp.,* 213 F.Supp.2d 802, 812 (N.D. Ohio 2002), the court specifically stated:

> If, as Bouchard has stated, her claims are based on direct fraud against her and her healthcare provider, rather than the FDA, then her claims are not preempted [under *Buckman*], and evidence concerning what information was and was not provided to the FDA might still be relevant.

Consistent with this authority, this Court previously rejected Merck's preemption arguments with regard to other witnesses testifying about similar subjects. *See In re Vioxx Products Liability Litigation,* 401 F.Supp.2d 565, 587 (E.D.La. Nov. 18, 2005). This Court should do the same here.

### C.    Dr. Kapit Will Not Testify that the FDA Serves Industry.

Merck  suggests that Dr. Kapit's testimony regarding the views of FDA employees toward the agency and the pharmaceutical industry is inadmissible hearsay.  Plaintiff stipulates that Dr. Kapit will not offer opinions regarding the FDA's prioritization of industry interests in relation to public health.  *See* Kapit Dep. 70:3-71:14.  Plaintiff, however, does not concede that *Buckman*, discussed *supra*, is applicable to this case or preempts any testimony in it.

13

## V.   DR. KAPIT MAY REASONABLY RELY ON OTHER EXPERTS' WORK IN REACHING HIS OWN CONCLUSIONS.

Merck argues that Dr. Kapit intends to "parrot" the conclusions of four other experts, namely, Drs. Graham, Curfman, Farquhar, and Avorn.  It does not really elaborate on its avian metaphor. Apparently, Merck's "parroting" objection, not found in any federal rule, applies only if Dr. Kapit simply "cheerleads" other witness' testimony or relies upon it without any consideration of its merit, in other words, his reliance is unreasonable. Merck's attempt to stretch these limited notions to bar Dr. Kapit's testimony entirely as to on what he has relied in forming his own opinions is little more than a thinly-veiled attempt to elevate improperly the standard for admission of his testimony. Merck should not succeed.

Rule 703 makes clear that

> The **facts or data** in the particular case **upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing**. **If of a type reasonably relied upon by experts in the particular field** in forming opinions or inferences upon the subject, **the facts or data need not be admissible** in evidence in order for the opinion or inference to be admitted.

(Emphasis added.)  Thus, whether or not Dr. Graham's data or any of the other evidence on which he relies is admissible independently, so long as he meets Rule 703's requirements, Dr. Kapit's opinion testimony is admissible.  The Advisory Committee Notes to the 1972 Proposed Rules provide that "facts or data" may consist of (1) the expert's firsthand observations of facts or data; (2) evidence presented at trial; and (3) presentation of information or data to the expert outside of the courtroom and other than by the expert's own perception.  The third category includes the opinions of other experts.  *Barris v. Bob's Drag Chutes & Safety Equip., Inc.,* 685 F.2d 94, 102 n. 10 (3d Cir. 1982) ("Under Rule 703, an expert's testimony may be formulated by the use of facts,

data and conclusions of other experts.") Indeed, specialization in the modern sciences requires such

reliance.

> Now it is common in technical fields for an expert to base an opinion
> in part on what a different expert believes on the basis of expert
> knowledge not possessed by the first expert; and it is apparent from
> the wording of [Federal Rule of Evidence] 703 that there is no
> general requirement that the other expert testify as well.    The
> Committee Notes to the 1972 Proposed Rule 703 give the example of
> a physician who, though not an expert in radiology, relies for a
> diagnosis on an x-ray.

*Dura Auto. Sys. of Ind. v. CTS Corp.*. 285 F.3d 609, 613 (7th Cir. 2002).

 Merck  cites two cases for the notion that courts must exclude expert testimony "when the

expert make [sic] ***no attempt*** to assess the validity of the opinions on which he relies." The Third

Circuit in *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999), however, affirmed a district court's

exclusion of an expert whose testimony was based on ***nothing other*** than the testimony of other

experts.  In that case, the expert in question offered a provisional opinion regarding risk assessment,

stating clearly that another expert was needed to establish a crucial link in the chain of causation.

*Id.* at 715.  The risk assessment method proposed by the expert required examination of the strengths

and weaknesses of the available evidence.  *Id.*  Therefore, the court's decision stands only for the

proposition that an expert cannot allow others to do her work for her.[8]   The case does not provide

any guidance regarding those circumstances where it is appropriate, due to scientific specialization,

for one expert to rely on another.

 Merck also cites *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993).

The Tenth Circuit in that case precluded the testimony of a financial expert from relying on a

---

 [8]The court decided the case based on Federal Rule of Evidence 702, not 703.  *See In re TMI*, 193
F.3d at 714.  Therefore, it is obvious that the question before the court involved the testifying expert's
reliability and not the reliability of the underlying experts.

financial assessment prepared by another individual. *TK-7 Corp.,* 993 F.2d at 732-33.  The court concluded that the expert did not have any expertise on the issue in question, and, therefore, he could not rely on the work of another, especially where there was no evidence that other experts in the field would rely on a similar report. *Id.*  This case does not, however, apply to an expert who testifies within his expertise, and *reasonably* relies on other experts when necessary.

### A.    Dr. Kapit Will Not Offer an Estimate of Excess Heart Attacks.

Merck  suggests that Dr. Kapit merely repeats the testimony of Dr. Graham regarding the estimate of excess heart attacks.  Plaintiff stipulates that Dr. Kapit will not testify regarding the rate of excess heart attacks. *See* Kapit Report ¶ 122.  Plaintiff, however, does not concede that Dr. Kapit improperly relied on the testimony or publications of Dr. Graham or any other expert in forming the conclusions offered in his expert report.

### B.    Dr. Kapit May Reasonably Rely on Dr. Curfman's Account of Data Withheld from the New England Journal of Medicine.

Merck argues that Dr. Kapit should not be allowed to "simply repeat" Dr. Curfman's opinions regarding Merck's conduct in withholding data from the New England Journal of Medicine. Dr. Kapit, however, does not purport to offer an expert opinion on the editorial practices of the New England Journal of Medicine.  Instead, Dr. Kapit refers to the published account of the incident as further proof that Merck was aware of the dangers of Vioxx, and that Merck failed to provide that information to the medical community or the FDA. *See* Kapit Report ¶¶ 134 & 162. Dr. Kapit's reliance on Dr. Curfman's published account (*not* Dr. Curfman's deposition) is reasonable under Rule 703 since it is the type of this relied upon by experts.  Indeed, Dr. Kapit may rely on Dr. Curfman's expert conclusion as one example in assessing whether Merck breached its duty of care to the medical community and the public generally.

16

### C.     Dr. Kapit Will Not Provide an Analysis of Protocol 203 Data.

Merck complains that Dr. Kapit is not qualified to offer opinions regarding Protocol 203 data, derived from the analysis of Drs. Farquhar and Jewell.  Plaintiff stipulates that Dr. Kapit will not present an analysis of the Protocol 203 data.  *See* Kapit Report ¶ 180.  Plaintiff, however, does not concede that Dr. Kapit improperly relied on the testimony of Drs. Farquhar and Jewell or any other expert in forming the conclusions offered in his expert report.

### D.     Dr. Kapit May Reasonably Rely on Published Medical Literature.

Finally, Merck argues that Dr. Kapit may not "parrot" Dr. Avorn's published opinions.  Dr. Kapit does not, however, simply repeat Dr. Avorn's conclusions.  Instead, Dr. Kapit, in reaching his own conclusions, cites the medical literature for corroboration and support.  *See* Kapit Report ¶ 184.  Had he not done so, Merck would complain that his opinions were unsupported and inadmissible under *Daubert*.  As a scholar, Dr. Kapit may reasonably discuss the published comments of other experts in the field under Rule 702.  That is what scholar do.  In fact, the Court, in *Daubert*,  placed a high value on such peer–review and testing by the discipline in question.  Indeed, one should expect Dr. Kapit to consider the published opinions of other experts in reaching a sound conclusion.  His reliance is perfectly reasonable and proper under Federal Rule of Evidence 703.

### CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court deny Merck's motion to exclude expert testimony of Richard M. Kapit, M.D.

Dated:  August 21, 2006

Respectfully submitted,

17

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218


Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888


James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440


Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055


John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226


ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk              rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski          carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440