**EXHIBIT 17**

## Arbitblit, Donald C.

| | |
|---|---|
| **From:** | Goldman, Andrew [andrew.goldman@bartlit-beck.com] |
| **Sent:** | Sunday, May 28, 2006 6:11 AM |
| **To:** | Arbitblit, Donald C. |
| **Cc:** | beachlawywer51@hotmail.com; amyer@rcrlaw.net |
| **Subject:** | RE: Jewel |

Don, can you please give us a few possible dates for Jewel's deposition?
Thanks.


Andrew L. Goldman
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 W. Hubbard Street, Ste. 300
Chicago, Illinois 60610
andrew.goldman@bartlit-beck.com
Direct: (312) 494-4464
Fax: (312) 494-4440
Mobile: (773) 251-2064

The information contained in this communication is confidential and should
be considered to be attorney work product and/or attorney-client privileged.
This communication is the property of Bartlit Beck Herman Palenchar & Scott
LLP and is intended only for the use of the addressee. If you are not the
intended recipient, please notify the sender, delete the message, and note
that any distribution or copying of this message is prohibited.  Any
discussion of tax matters contained herein is not intended or written to be
used, and cannot be used, for the purpose of avoiding any penalties that may
be imposed under Federal tax laws.


-----Original Message-----
From: Arbitblit, Donald C. [mailto:DARBITBLIT@lchb.com]
Sent: Monday, May 22, 2006 7:26 PM
To: andrew.goldman@bartlit-beck.com
Cc: beachlawywer51@hotmail.com; amyer@rcrlaw.net
Subject: Jewel



Attached is the report of Nicholas Jewell, Ph.D, referenced as Exhibit A to
the Supp. Report of Dr. Farquhar.
 <<Protocol203report.pdf>>

This email message is for the sole use of the intended recipient(s) and may
contain confidential and privileged information.
If you are not the intended recipient, please contact the sender by reply
email and destroy all copies of the original message.
To reply to our email administrator directly, send an email to
postmaster@lchb.com

1

## Arbitblit, Donald C.

**From:** Goldman, Andrew [andrew.goldman@bartlit-beck.com]
**Sent:** Tuesday, May 30, 2006 9:41 PM
**To:** Arbitblit, Donald C.
**Cc:** beachlawywer51@hotmail.com; amyer@rcrlaw.net
**Subject:** RE: Jewel

Don, I think you are mistaken and will tell you why in the next few days.
Andy


Andrew L. Goldman
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 W. Hubbard Street, Ste. 300
Chicago, Illinois 60610
andrew.goldman@bartlit-beck.com
Direct: (312) 494-4464
Fax: (312) 494-4440
Mobile: (773) 251-2064

-----Original Message-----
From: Arbitblit, Donald C. [mailto:DARBITBLIT@lchb.com]
Sent: Tuesday, May 30, 2006 2:24 PM
To: andrew.goldman@bartlit-beck.com
Cc: beachlawywer51@hotmail.com; amyer@rcrlaw.net
Subject: RE: Jewel


Andy,
Professor Jewell is designated as a nontestifying expert under Rule
26(a)(4)(B). It is our understanding of the Rule and applicable decisions
that he is not subject to discovery in the absence of a "showing of
exceptional circumstances under which it is impracticable for the party
seeking discovery to obtain facts or opinions on the same subject by other
means." Professor Jewell's report is based on data from
3 Merck studies, provided by Merck during discovery in the course of the
litigation. Accordingly, Merck can obtain facts and opinions on the same
subject by the readily available means of having its own experts analyze the
same data. At the same time, Professor Jewell's report was provided as a
document "considered" by Dr. Farquhar in forming the opinions expressed in
his report, and we believe such production constitutes compliance with Rule
26 in regard to both Jewell and Farquhar.
If you believe we have misconstrued the applicable law, please explain.
Thanks, Don Arbitblit

-----Original Message-----
From: Goldman, Andrew [mailto:andrew.goldman@bartlit-beck.com] Sent: Sunday,
May 28, 2006 6:11 AM
To: Arbitblit, Donald C.
Cc: beachlawywer51@hotmail.com; amyer@rcrlaw.net
Subject: RE: Jewel


Don, can you please give us a few possible dates for Jewel's deposition?
Thanks.

1

Andrew L. Goldman Bartlit Beck Herman Palenchar & Scott LLP Courthouse Place 54 W. Hubbard Street, Ste. 300 Chicago, Illinois 60610
andrew.goldman@bartlit-beck.com Direct: (312) 494-4464 Fax: (312) 494-4440
Mobile: (773) 251-2064

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged. This communication is the property of Bartlit Beck Herman Palenchar & Scott LLP and is intended only for the use of the addressee. If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is prohibited. Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws.


-----Original Message-----
From: Arbitblit, Donald C. [mailto:DARBITBLIT@lchb.com] Sent: Monday, May 22, 2006 7:26 PM
To: andrew.goldman@bartlit-beck.com
Cc: beachlawywer51@hotmail.com; amyer@rcrlaw.net
Subject: Jewel



Attached is the report of Nicholas Jewell, Ph.D, referenced as Exhibit A to the Supp. Report of Dr. Farquhar.
 <<Protocol203report.pdf>>
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
To reply to our email administrator directly, send an email to postmaster@lchb.com


This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
To reply to our email administrator directly, send an email to postmaster@lchb.com

2

## Arbitblit, Donald C.

**From:** Goldman, Andrew [andrew.goldman@bartlit-beck.com]
**Sent:** Friday, June 02, 2006 10:33 AM
**To:** Arbitblit, Donald C.
**Cc:** 'Adam Mortara'
**Subject:** Draft Jewell Motion to Compel.doc

Don, here is a draft brief we are about to file to compel discovery and deposition of Dr. Jewell. Please let me know ASAP if you are willing to reconsider your decision not to produce him for deposition.

Andy

<<...>>

6/26/2006

## Arbitblit, Donald C.

**From:** Arbitblit, Donald C.
**Sent:** Friday, June 02, 2006 12:55 PM
**To:** 'andrew.goldman@bartlit-beck.com'
**Cc:** 'beachlawyer51@hotmail.com'; Gross, Jennifer; 'amyer@rcrlaw.net'; 'twacker@rcrlaw.net'
**Subject:** Jewell

Andy,

I have reviewed your draft motion to compel, and this is submitted in response.

First, attached is Professor Jewell's analysis concerning high-risk patients, which Dr. Farquhar referenced in his Supplemental Report and the Barnett Report. We do not claim work product privilege as to materials reviewed and relied upon by Dr. Farquhar in preparation of his reports. We agree that you are entitled to production of documents prepared by Professor Jewell that Dr. Farquhar considered in arriving at the opinions he has expressed in his reports. We agree that the *Intermedics* case you cite is applicable to expert discovery, and that documents considered by an expert in forming his opinions are discoverable, regardless of whether they are relied upon or rejected.

However, it remains our view of the facts and the law that exceptional circumstances do not exist to justify deposition or discovery from Professor Jewell, a nontestifying expert, where all of the data came from Merck, where the methods used to analyze the data are comparable or identical to those Merck itself has used and reported as to particular portions of the same data, and where Merck is capable of obtaining information on the same subject by other means. The *Long Term Capital Holdings* case does not stand for the open-ended proposition that a nontestifying expert who provides a report relied upon by the testifying expert is always subject to deposition and discovery. To the contrary, in that case the court relied on the facts that the assistants spent the majority of the time on the project and chose the data to input from among "hundreds of thousands of pages" of documents that they reviewed. Here, Professor Jewell used the specified data sets that Merck provided, and the statistical tests are identified in the reports. The *Dura* case states mere dicta on the issue of nontestifying experts, while the holding was addressed to the exclusion of untimely reports. We see no general support in the case law for the proposition that nontestifying experts may be deposed to see if they did their jobs "competently," and such a view would contradict Rule 26 by permitting this type of discovery without the requisite showing of exceptional circumstances.

Please let us know whether you wish to discuss this further.

Finally, you had agreed to let us know the location for the Kim depo by June 1, so we could make travel plans. Please let us know today, if at all possible.

Don Arbitblit

# ANALYSIS OF APPROVE DATA: VIOXX/PLACEBO AND HIGH RISK STATUS

The APPROVe data set consists of 2,586 individuals. In five of these the data of withdrawal is the same as the date of randomization to treatment so that these individuals play no role in subsequent data analysis. In the complete data set, 1,299 were randomized to Placebo and 1,287 to Vioxx.

A high-risk category was defined by considering whether an individual had any one (or more) of three binary conditions: being diabetic, classified as aspirin-indicated, and being classified as of high cardiac risk. Of the complete data set, 764 (approximately 30%) were classified as high-risk in this manner. As anticipated, by the randomization, about half of these high-risk individuals were assigned to Vioxx (405), and the remainder (359) to Placebo.

Using the data we then examined the risks (and, most importantly, the comparison of risks) for various adverse outcomes. The latter were considered in three related groups: (i) all events, (ii) cardiac events plus cerebrovascular events (i.e. excluding peripheral venous and artelial thrombosis events, and excluding all pulmonary embolisms), and (iii) cardiac events only (as in group (ii) but now also excluding ischemic cerobrovascular strokes, and transient ischemic attacks). In each case, we considered the Relative Risks associated with exposure to Vioxx for both the high-risk and low-risk groups separately and comparison between these two Relative Risks. The methods involved construction of Kaplan-Meier curves and application of the Cox proportional hazards model. The results are as follows:

    (i)    ALL EVENTS

There were a total of 72 adverse events observed. In the low-risk group, the Relative Risk for an event associated with assignment of Vioxx was 1.15 with a 95% confidence interval of (0.57—2.29). On the other hand, the same Relative Risk in the high-risk group was considerably higher, namely 2.87 with a 95% confidence interval of (1.40—5.86). The latter Relative Risk carries an associated p-value of 0.004.

Qualitatively it is apparent that the deleterious effect of Vioxx is more than 2.5 times worse in the high risk group as compared to the low-risk group. These two Relative Risks can be compared quantitatively by using a test for interaction, to address the question as to whether risk status significantly modifies the effect of Vioxx on the risk for an adverse event. This test yields a p-value of 0.07. The fact that this is not "significant" by conventional or mindless application of a 0.05 significance level has to viewed in the context that interaction tests are well-known to lack power and that type I errors here (incorrect assumption of interaction effects when none are truly present) are considered less serious than when testing for main effects of treatment, for example. For both these reasons, many statisticians recommend a significance level of 0.2 when examining

interactive effects (see Jewell (2004). We thus consider the evidence of an elevated Relative Risk associated with Vioxx in the high-risk group to be quite substantial.

As an aside, we note that designation of high-risk does in fact carry higher risk of an adverse outcome. In the placebo group, the Relative Risk arising from comparing high and low risk individuals is 1.74 with a 95% confidence interval of (0.79—3.84), reflecting a 75% increase in risk associated with having one or more of the high risk indicators. In the Vioxx group, the picture is startlingly different; here, the Relative Risk arising from comparing high and low risk individuals is 4.36 with a 95% confidence interval of (2.38—7.99), significantly different from one with an associated p-value < 0.001. This difference in effects reflects, of course, the same interaction discussed in the previous paragraph.

We now repeat these analyses on two subsets of the events which inevitably have smaller numbers of observed events and therefore less precision in the results.

### (ii) CARDIAC + CEROBROVASCULAR EVENTS

The number of observed cardiac and cerebrovascular events was 62. In the low-risk group, the Relative Risk for an event associated with assignment of Vioxx was 1.43 with a 95% confidence interval of (0.67—3.06). On the other hand, the same Relative Risk in the high-risk group was again substantially higher, namely 3.83 with a 95% confidence interval of (1.67—8.77). The latter Relative Risk carries a p-value of 0.001. A similar p-value of 0.086 was obtained for the test of interaction comparing these two Relative Risks. Again, the evidence is very striking regarding the effect modification following the same remarks regarding conventional levels of significance.

With regard to the impact of being in the high-risk group, for these adverse events, the Relative Risk arising from comparing high and low risk individuals is 1.63 in the placebo group with a 95% confidence interval of (0.64—4.13), reflecting a 63% increase in risk associated with having one or more of the high risk indicators. In the Vioxx group, the picture is again completely different; here, the Relative Risk arising from comparing high and low risk individuals is 4.35 with a 95% confidence interval of (2.32—8.14), significantly different from one with an associated p-value < 0.001. This difference in effects again reflects the interaction effects discussed in the previous paragraph.

### (iii) CARDIAC EVENTS ONLY

The number of observed cardiac events was 42 so that we would anticipate even lower levels of precision in our estimates of the Relative Risk here. In the low-risk group, the Relative Risk for an event associated with assignment of Vioxx was 1.82 with a 95% confidence interval of (0.60—5.57). On the other hand, the same Relative Risk in the high-risk group was yet again higher, namely 2.99 with a 95% confidence interval of (1.28—7.01). The latter Relative Risk carries a p-value of 0.012. However, in this case, the two Relative Risks are more similar and coupled with the loss of precision the test of interaction when comparing these two Relative Risks is 0.49.

The effects of being in the high-risk group are most pronounced when studying cardiac events only: the Relative Risk arising from comparing high and low risk individuals in the placebo group is 3.88 with a 95% confidence interval of (1.23—12.22), reflecting an almost quadrupling of the risk of a cardiac event associated with having one or more of the high risk indicators (and with p-value 0.021). In the Vioxx group, the picture is again qualitatively different in that the risk associated with the high-risk factors is even higher; here, the Relative Risk arising from comparing high and low risk individuals is 6.37 with a 95% confidence interval of (2.84—14.32), significantly different from one with an associated p-value < 0.001. This difference in effects again reflects the interaction effects discussed in the previous paragraph although the difference is not as pronounced due to the fact that the Relative Risk is already so high in the placebo group.

## ADDENDUM TO VIGOR ANALYSIS OF HIGH RISK (ASPIRIN-INDICATED ANALYSIS)

In an earlier analysis, we showed that the Relative Risk for all confirmed thrombotic events events, comparing Vioxx to Naproxen, was 4.90 in the high-risk group (aspirin indicated), based on 18 events among 320 individuals (with a 95% confidence interval given by 1.42–16.93). I believe the summary figures for low-risk group (aspirin not indicated) reveals 30 events in the Vioxx group based on 2592 patient years of follow-up and 16 events in the Naproxen group based on 2596 patient years of follow up. These summary figures yield a Relative Risk associated with Vioxx of 1.88 with a 95% confidence interval of 1.02–3.44, and the p-value for testing whether this Relative Risk is 1.0 is 0.04.

A simple comparison of these two Relative Risks (the RR, 4.90, in the high-risk group is markedly higher than the RR in the low-risk group, 1.88) yields a p-value of 0.17. Most of the uncertainty in this comparison arises from the low numbers of individuals in the high-risk group, but again the p-value is suggestive of a strong interactive effect, given our earlier comments about power, and the similarity of what we found in the APPROVe data.

VIGOR: Analysis of incidence of all confirmed thrombotic events in aspirin indicated group



Cox regression -- Breslow method for ties

```
No. of subjects =    320              Number of obs  =    320
No. of failures =     18
Time at risk    =  73827
                              LR chi2(1)    =    8.49
Log likelihood = -92.397558            Prob > chi2   =  0.0036
```

| _t | Haz. Ratio | Std. Err. | z | P>|z| | [95% Conf. Interval] |
|---|---|---|---|---|---|
| txid | 3.099073 | 2.51 | 0.012 | 1.418004 | 16.92653 |

```
   __  /  __/  /  __/
  __/ / /__/ / /__/    9.0   Copyright 1984-2005
      Statistics/Data Analysis         StataCorp
                             4905 Lakeway Drive
      Special Edition        College Station, Texas 77845 USA
                             800-STATA-PC      http://www.stata.com
                             979-696-4600      stata@stata.com
                             979-696-4601 (fax)
```

30-student Stata for Windows (network) perpetual license:
    Serial number: 81990515369
      Licensed to: School of Public Health
              UC Berkeley

Notes:
    1. (/m# option or -set memory-) 10.00 MB allocated to data
    2. (/v# option or -set maxvar-) 5000 maximum variables
    3. New update available; type -update all-

. edit

. log
(closed)

. edit
(4 vars, 321 obs pasted into editor)

. save "C:\Documents and Settings\nick_jewell\My Documents\VIGOR\VIGORhighriskFeb21.dta"
file C:\Documents and Settings\nick_jewell\My Documents\VIGOR\VIGORhighriskFeb21.dta saved

. edit
- preserve

. gen txid=0

. replace txid=1 if tmt=="A"
(170 real changes made)

. summ eventindicvasc by txid
variable by not found
r(111);

. summ eventindicvasc, by txid
option by not allowed

r(198);

. table eventindicvasc by txid
variable by not found
r(111);

. table eventindicvasc txid

```
eventindi |   txid
cvasc     |  0    1
----------+----------
        0 | 148  155
        1 |   3   15
```

. edit
- preserve

. stset eventday, failure( eventindicvasc)

    failure event: eventindicvasc != 0 & eventindicvasc < .
obs. time interval: (0, eventday]
 exit on or before: failure

---

    321  total obs.
      1  obs. end on or before enter()

---

    320  obs. remaining, representing
     18  failures in single record/single failure data
  73827  total analysis time at risk, at risk from t =    0
            earliest observed entry t =    0
              last observed exit t =   372

. stsgraph
unrecognized command: stsgraph
r(199);

. sts graph

    failure_d: eventindicvasc
 analysis time _t: eventday

. sts graph, by( txid)

```
         failure _d: eventindicvasc
    analysis time _t: eventday

. sts gen surv=survf, by( txid)
survf unknown function
r(198);

. sts gen surv = survf, by( txid)
survf unknown function
r(198);

. sts gen survf = s, by( txid)

. edit
- preserve

. gen cumf=1-survf
(1 missing value generated)

. edit
- preserve

. scatter cumf_t if txid==1

. scatter cumf_t if txid==1, c(L) msymbol(O)

. scatter cumf_t if txid==1, c(L) msymbol(o)

. scatter cumf_t if txid==1, c(L) msymbol(o) ytitle("Cumulative Incidence Proportion")
xtitle ("Days
> of Follow-up")
invalid '"Days of Follow-up'
invalid syntax
r(198);

. scatter cumf_t if txid==1, c(L) msymbol(o) ytitle("Cumulative Incidence Proportion")

. scatter cumf_t if txid==1, c(L) msymbol(o) ytitle("Cumulative Incidence Proportion")
xtitle("Days"
>)

. scatter cumf_t if txid==1, c(L) msymbol(o) ytitle("Cumulative Incidence Proportion")
xtitle("Days
> of Follow-up")
```

```
. scatter cumf_t if txid==1, c(L) msymbol(o) ytitle("Cumulative Incidence Proportion")
xtitle("Days
> of Follow-up") || scatter cumf_t if txid==0, c(L) msymbol(oh) legend(label(1
"Vioxx")) legend(labe
> l(2 "Naproxen"))

. stcox txid

     failure _d: eventindicvasc
   analysis time _t: eventday

Iteration 0:  log likelihood = -96.640258
Iteration 1:  log likelihood = -92.498625
Iteration 2:  log likelihood = -92.398166
Iteration 3:  log likelihood = -92.397558
Iteration 4:  log likelihood = -92.397558
Refining estimates:
Iteration 0:  log likelihood = -92.397558

Cox regression -- Breslow method for ties

No. of subjects =      320              Number of obs  =    320
No. of failures =       18
Time at risk   =    73827
                                  LR chi2(1)    =    8.49
Log likelihood = -92.397558              Prob > chi2  =  0.0036

------------------------------------------------------------------
      _t | Haz. Ratio  Std. Err.    z    P>|z|   [95% Conf. Interval]
---------+--------------------------------------------------------
     txid | 4.899172   3.099073   2.51  0.012    1.418004   16.92653
------------------------------------------------------------------
```

### Arbitblit, Donald C.

| | |
|---|---|
| **From:** | Goldman, Andrew [andrew.goldman@bartlit-beck.com] |
| **Sent:** | Friday, June 02, 2006 2:00 PM |
| **To:** | Arbitblit, Donald C. |
| **Cc:** | beachlawyer51@hotmail.com; Gross, Jennifer; amyer@rcrlaw.net; twacker@rcrlaw.net |
| **Subject:** | RE: Jewell |

Thanks Don. We'll wait until after Farquhar's deposition before deciding whether to file our motion.

Kim's deposition will be at:

Otjen, Van Ert, & Weir S.C.
University Research Park
450 Science Drive
Ste 110
Madison, Wisconsin
(608) 238-9500

The deposition will start at 8:00 a.m. The witness must leave by 5:00 p.m. The dep is also noticed for the upcoming California trials.

Andy


Andrew L. Goldman
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 W. Hubbard Street, Ste. 300
Chicago, Illinois 60610
andrew.goldman@bartlit-beck.com
Direct: (312) 494-4464
Fax: (312) 494-4440
Mobile: (773) 251-2064

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged. This communication is the property of Bartlit Beck Herman Palenchar & Scott LLP and is intended only for the use of the addressee. If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is prohibited. Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws

---

**From:** Arbitblit, Donald C. [mailto:DARBITBLIT@lchb.com]
**Sent:** Friday, June 02, 2006 2:55 PM
**To:** andrew.goldman@bartlit-beck.com
**Cc:** beachlawyer51@hotmail.com; Gross, Jennifer; amyer@rcrlaw.net; twacker@rcrlaw.net
**Subject:** Jewell


6/26/2006

Andy,

I have reviewed your draft motion to compel, and this is submitted in response.

First, attached is Professor Jewell's analysis concerning high-risk patients, which Dr. Farquhar referenced in his Supplemental Report and the Barnett Report. We do not claim work product privilege as to materials reviewed and relied upon by Dr. Farquhar in preparation of his reports. We agree that you are entitled to production of documents prepared by Professor Jewell that Dr. Farquhar considered in arriving at the opinions he has expressed in his reports. We agree that the *Intermedics* case you cite is applicable to expert discovery, and that documents considered by an expert in forming his opinions are discoverable, regardless of whether they are relied upon or rejected.

However, it remains our view of the facts and the law that exceptional circumstances do not exist to justify deposition or discovery from Professor Jewell, a nontestifying expert, where all of the data came from Merck, where the methods used to analyze the data are comparable or identical to those Merck itself has used and reported as to particular portions of the same data, and where Merck is capable of obtaining information on the same subject by other means. The *Long Term Capital Holdings* case does not stand for the open-ended proposition that a nontestifying expert who provides a report relied upon by the testifying expert is always subject to deposition and discovery. To the contrary, in that case the court relied on the facts that the assistants spent the majority of the time on the project and chose the data to input from among "hundreds of thousands of pages" of documents that they reviewed. Here, Professor Jewell used the specified data sets that Merck provided, and the statistical tests are identified in the reports. The *Dura* case states mere dicta on the issue of nontestifying experts, while the holding was addressed to the exclusion of untimely reports. We see no general support in the case law for the proposition that nontestifying experts may be deposed to see if they did their jobs "competently," and such a view would contradict Rule 26 by permitting this type of discovery without the requisite showing of exceptional circumstances.

Please let us know whether you wish to discuss this further.

Finally, you had agreed to let us know the location for the Kim depo by June 1, so we could make travel plans. Please let us know today, if at all possible.

Don Arbitblit

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
To reply to our email administrator directly, send an email to postmaster@lchb.com

6/26/2006