## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

### THIS DOCUMENT RELATES TO:
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

_____

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT MERCK & CO., INC'S MOTION FOR ORDER EXCLUDING OPINION TESTIMONY BY PLAINTIFF'S EXPERTS THAT VIOXX ACCELERATES ATHEROSCLEROSIS OR CAUSES PLAQUE RUPTURE

_____

*(Defendant's Expert Challenge No. 10)*

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff R. Garry Smith, by and through his undersigned counsel, asks this Court to deny Defendant Merck & Co., Inc.'s ["Merck"] Motion to Exclude opinion testimony by Plaintiff's experts that Vioxx accelerates atherosclerosis or causes plaque rupture ("Merck's Motion Re Athersclerosis"). In support thereof, Plaintiff would show as follows:[1]

_____

[1]As this Court is aware, there have been modifications to the response dates for motions to exclude experts, in particular, for Dr. Sander, because certain expert depositions have only recently been taken. Plaintiff reserves the right to supplement this response with such materials in conjunction with those later-filed responses.

**<u>INTRODUCTION</u>**

Merck's motion is based upon a false premise: that Plaintiff asserts some ***new*** theory concerning how Vioxx causes heart attacks.  Thus, Merck explains that its motion is restricted to any contention by Plaintiffs that "something in the pharmacologic nature of Vioxx itself ***directly accelerates*** the formation of atherosclerotic plaque as well as any claim that the hypertensive effect of Vioxx ***is sufficient*** to accelerate atherosclerosis." *See* Merck's Motion Re Atherosclerosis at 2, n.2 (emphasis added). Thus, the argument goes, unless there is scientific evidence that Vioxx "directly" causes atherosclerosis,   or unless one of Vioxx's ***several*** recognized effects – hypertension –  is ***alone*** sufficient to cause or accelerate atherosclerosis, or other of Vioxx's recognized effects,  Merck would exclude ***all*** evidence tending to show that taking Vioxx caused Plaintiff Smith's heart attack. In this fashion, Merck erects the only "straw man" it can have any hope of knocking down.

The problem with Merck's gambit is that ***Plaintiff makes no such contention; therefore, there is no new theory to challenge or for this Court to rule upon.***  To that extent, Merck's motion is wholly misdirected and must be summarily denied.

Plaintiff's claims here are grounded in the very well-established and ***unchallenged***[2] notion that Vioxx can cause or accelerate atherosclerosis through depression of prostaglandin $I_2$ formation which, in turn, has ***multiple*** effects: elevation of  blood pressure, platelet aggregation (clumping) and activation, and rupture of atherosclerotic plaque.  This is the same process of atherogenesis

---

[2]Merck notes that it does ***not*** challenge the so-called "FitzGerald hypothesis" concerning the means by which Vioxx "leads to a pro-thrombotic state," a theory this Court has already accepted as scientifically reliable. *See* Merck's Motion Re Athersclerosis at 2. Incredibly, Merck would apparently have this Court find that the very scientific theory on which ***Merck relied*** in removing Vioxx, a billion dollar drug, from the market nevertheless "is speculative and remains unproven" and that any testimony concerning it should be excluded from a trial on Merck's duty to warn. *Id*. Perhaps Mark Twain was right: denial ain't just a river in Egypt.

***Merck's own Scientific Advisory Panel*** described to Merck in 1998,[3] that Merck adopted and in which it manifested a belief in its truth in removing Vioxx from the market, that Merck has repeatedly admitted in its internal documents, Merck-funded studies, and that this Court has ***already found*** reliable under *Daubert*.[4]

As this Court concluded in its prior Vioxx *Daubert* rulings, the so-called FitzGerald hypothesis[5] is "supported by numerous articles as well as recognized medical journals" and the hypothesis supports the opinion "that Vioxx accelerates atherosclerosis."[6]

Since this Court's ruling in November, 2005, even more compelling scientific evidence to support for this core theory has come to light.  In a recent article in the peer-reviewed Journal of Clinical Investigation, Professor FitzGerald, a key member of Merck's Scientific Advisory Committee and his co-authors definitively concludes that: "In summary, ***a substantial body of evidence has accumulated that 1 mechanism, suppression of Cox-2-dependent PGI2 formation, can both augment the response to thrombotic and hypertensive stimuli and initiate and accelerate atherogenesis.***"[7] Merck simply ignores such evidence as well as important findings in multiple peer-

---

[3]Merck Scientific Advisors Meeting, May 3-6, 1998, attached as Exhibit A.

[4]*In re Vioxx Products Liability Litigation*, 401 F.Supp.2d 565, 586-587 (E.D.La. 2005), attached as Exhibit B.

[5]The "FitzGerald hypothesis" holds that COX-2 inhibitors depress systemic PGI2 without concomittant inhibition of platelet-dervied thromboxane A2 (TxA2). This can result in an augmented response to thrombotic and hypertensive stimuli and the acceleration of atherogenesis. This mechanistic explanation is supported by data from the Adenomatous Polyp Prevention on Vioxx (APPROVe) trial2 and the Adenoma Prevention with Celecoxib (APC) trial. *See* Solomon SD, McMurray JJ, Pfeffer MA, et al, "Adenoma Prevention with Celecoxib (APC) Study Investigators. Cardiovascular risk associated with celecoxib in a clinical trial for colorectal adenoma prevention." N Engl J Med. 2005;352:1071-1080.

[6]*See supra* note 4 *at* 586-587.

[7]*See* Grosser, Fries & FitzGerald, Biological Basis for the cardiovascular consequences of COX-2 inhibition: therapeutic challenges and opportunities, Vol. 116, No. 1, Journal of Clinical Investigation 4, 6 (January 2006) (emphases added), attached as Exhibit C.

reviewed journals and clinical studies.

Merck's motion is, therefore, a misleading and  misdirected rehash of its prior motions, an improper attack on Plaintiff's expert's conclusions, little more than an outline of its cross-examination of those experts.  Worse, Merck attacks as unreliable scientific proof it has publically and privately embraced.  Merck should not be permitted to engage in such duplicity before this or any other court.   Instead, Merck's myriad admissions preclude any *Daubert* review of such statements here.

For all of these reasons,  Merck has provided this Court with no reason to undercut its prior decision approving as reliable testimony concerning Vioxx's  recognized mechanisms of injury and every reason to reject its Merck's motion.  Merck's motion should be denied.

## I.      MERCK'S MOTION IS EITHER WHOLLY MISDIRECTED,  SERIOUSLY MISLEADING,  OR SIMPLY SCHIZOPHRENIC.

As suggested, Merck restricts it motion to any contention by Plaintiffs that "something in the pharmacologic nature of Vioxx itself ***directly accelerates*** the formation of atherosclerotic plaque as well as any claim that the hypertensive effect of Vioxx ***is sufficient*** to accelerate atherosclerosis." *See* Merck's Motion Re Atherosclerosis at 2, n.2 (emphasis added).  Merck expressly states, however,  that "this Motion is ***not*** directed to expert testimony regarding the FitzGerald hypothesis." *Id.* (emphasis in original).  Merck also claims that its motion  is not directed to the notion that Vioxx can lead to hypertension and that hypertension causes the progression of atherosclerosis.  If Merck

could and has, in fact, parsed the issue so thinly, ***Merck's motion is not directed to anything the Plaintiff's experts actually say.***

Instead, Merck's motion either exposes a blatant attempt to mislead the Court about the mechanism of injury here and/or to mischaracterize , for tactical reasons, the testimony of Plaintiff's experts, or it reveals Merck's vain effort to attack that which it expressly states it is not attacking. Either way, its motion should be summarily denied.

Merck does not describe accurately the testimony of the witnesses it challenges. For example, Dr. Sander explains his opinion in how Vioxx causes plaque rupture:

> Thus potent Cox-2 inhibitors such as Vioxx can increase blood pressure and blood coagulability; the increased blood pressure will increase shear stress forces in such blood vessels as the coronary arteries, ***thus increasing the risk of vulnerable plaque rupture***, then increasing the likelihood of platelet activation and aggregation (clumping), leading to activation of blood protein coagulation factors, blood clot formation, arterial obstruction, and finally acute coronary syndromes including stroke myocardial infarction. ***Clinical data now clearly indicate that these mechanisms are operative in increasing the rate of cardiovascular events in humans; recognition of these data has led Merck to withdraw Vioxx from the market.***

Report of Dr. Gary E. Sander, dated July 10, 2006, at 5-6 (emphasis added), attached as Exhibit D.

Dr. Sander then uses this model to attribute Mr. Smith's heart attack to a:

> ...***rupture of a previously non-hemodynamically significant atherosclerotic plaque*** with resultant platelet aggregation and clot formation. This interaction produced coronary artery occlusion and acute myocardial infarction, in fact, a clot was visible in the right coronary artery during angiography. ***In such circumstances the normally protective effect of PGI$_2$ in antagonizing platelet aggregation would be reduced or absent due to VIOXX effect, and [the] both the likelihood of plaque rupture*** and the extent of clot formation leading to coronary occlusion would be greatly enhanced.

*Id.* at 10.

Similarly, Dr. Zipes never discusses the "direct" causation straw man in the deposition excerpts cited. Instead, he states simply:

Q.     Am I right that one opinion that you plan to give is that Vioxx causes heart attacks; right?

A.     Yes.

Q.     Another is tha Vioxx is the only conceivable cause of Mr. Barnett's heart attack by ***accelerating the progression of his atherosclerosis***?

A.      Yes.

Deposition of Douglas Zipes, May 6, 2006, at 88: lns. 1-6, attached to Merck's Motion Re Atherosclerosis as Exhibit A (emphasis added).  Nothing about either witness' testimony is new or different from that which the Court has permitted before nor is it what Merck attacks in its motion despite Merck's attempt to characterize it as such.  Instead, it concerns what Merck's says it is ***not*** attacking.  As the result, Merck's motion does not even apply to such testimony.

Merck similarly and seriously mischaracterizes the Court's one ruling keeping out testimony concerning Vioxx and atherosclerosis.  By literally cutting and pasting a quote from the Court's transcript, it attempts to suggest that the Court refused to admit such evidence on *Daubert* grounds. *See* Merck's Motion Re Atherosclerosis at 3, n.4 (citing the Court's ruling allegedly "holding that the 'extremely prejudicial' impact of testimony 'that it is possible or biologically plausible that Vioxx can be, in fact, causing atherosclerosis' would outweigh such testimony's probative value"). The truth is that the Court excluded such evidence because ***Mr. Cona***, ***the plaintiff in that case did***

*not suffer from atherosclerosis* and the Court thought evidence regarding atherosclerosis would confuse the jury or be prejudicial.[8]  No such concerns come into play here.

For all of these reasons, Merck's motion should be denied and Merck left to talk among itself.

## II.   MERCK HAS ADMITTED THAT VIOXX CAUSES OR ACCELERATES ATHEROSCLEROSIS AND PLAQUE RUPTURE; THEREFORE; MERCK'S ADMISSIONS PRECLUDE ITS *DAUBERT* CHALLENGES.

### A.   Rule 801 Renders Merck's Admissions Free from Rule 702's Requirements.

In the Advisory Committee Note to FED. R. EVID. 801, the Committee states that *"no guarantee of trustworthiness is required in the case of an admission*."  (Emphasis added.)  The Committee explained:

> *The freedom which admissions have enjoyed* from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and *from the restrictive influences of the opinion rule* and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, *calls for generous treatment of this avenue to admissibility*.

*Id.* (emphasis added). Thus, if this Court finds statements to be Merck's admissions, no *Daubert* challenge is permitted.

Under Rule 801(d)(2), an admission can include any of the following: 1) the party's own statement in either an individual or a representative capacity or 2)  *a statement of which the party has manifested an adoption or belief in its truth*, or 3) a statement by a person authorized by the party to make a statement concerning the subject, or 4) *a statement by the party's agent or servant*

---

[8]The Court observed that the testimony itself was "probative on supporting his opinion, it could I think, be admissible for that"  but excluded it because the jury might believe that "there is an atherosclerotic condition that Mr. Cona now has which was either – and counsel for plaintiff has assured me they weren't . . ." *See* Merck's Motion Re Atherosclerosis, Exhibit "5" at p. 1182, lns. 15-16; 24-25; p. 1183, lns.1.

***concerning a matter within the scope of the agency or employment***, made during the existence of the relationship, or 5) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. Thus, statements adopted by Merck or in which it manifested its belief – for example, by withdrawing a very profitable drug from the market – or those made by its Scientific Advisory Committee[9] or those made in articles it funded or in emails by its employees are admissible when offered by Plaintiff, but not Defendant, because they are admissions immune from *Daubert* scrutiny because of their independent indicia of trustworthiness.

> **B.     Merck's Admissions That Vioxx Causes or Accelerates Atherosclerosis and Causes Plaque Rupture.**

> **1.     *Merck's  Board of Scientific Advisors' Statements***

As early as May 3, 1998, Merck's ***own*** Board of Scientific Advisors (including Dr. Garrett Fitzgerald, M.D.) met and discussed "progression of atherosclerosis as a potential hypothesis that would occur due to Vioxx's inhibition of Cox-2." A true and correct copy of this memo is attached as Exhibit A.

At Bates No. MRK-AE10002736-38, the Board states:

"Cardiovascular Pathophysiology:"

The Board addressed the potential for either benefits or adverse consequences of selective inhibition of COX-2 on coronary heart disease. ***The possible effects of COX-2 inhibition on three separate components of the process leading to coronary ischemic events were considered.  These are:***

1.     The development of lipid-rich coronary plaques

2.     ***The destabilization of the cap of these plaques by inflammatory cells, making them "rupture prone," and***

---

[9]Statements made by consultants are admissions.  *See Collins v. Wayne Corp.*, 621 F.2d 777, 782; 6 Fed. R. Evid. Serv. (CBC) 498 (5th Cir. Tex. 1980).

3.      *The thrombotic occlusion of the vessel at the site of plaque rupture with ensuing consequences of ischemia."*

*The Development of Lipid-rich Coronary Plaques*:

The formation of foam cells is central to the process of atherogenesis. The development of foam cells is modulated at numerous steps, known and unknown, including adherence of the monocyte precursor to the vessel wall, its migration into the vessel wall, and the uptake, export, and peroxidation of lipids that occur during the process of differentiation into a lipid-laden foam cell. This process involves an inflammatory cell type that is the prototype for regulation of COX-2. There is a growing body of evidence indicating that inflammatory disease is a risk factor for myocardial infarction, and such inflammatory processes almost certainly are accompanied by the release of cytokines that affect cells in the monocytic series in general, and COX-2 expression in particular. *Accordingly, it is appropriate to ask whether COX-2 expression in monocyte-macrophage-foam cell development regulates the progression of the atherosclerosis that accompanies dyslipidemias, either positively or negatively. If this were the case, then inhibition of COX-2 might be expected to alter the process of plaque formation.*

*Destabilization of the Cap of an Atheromatous Plaque*:

*[A]s the critical cells in this process are inflammatory cells, the possibility exists that the products of COX-2 could regulate thinning of the cap of plaques and render them rupture-prone.*

*Events Following Plaque Rupture*:

After the rupture of a coronary plaque, factors which regulate thrombus formation and which regulate the occurrence of ischemic ventricular fibrillation are critical to the clinical outcome. The initial thrombus at the site of plaque-rupture is platelet-rich and is labile. Accordingly, it is susceptible to any anti-aggregatory influences, as is illustrated by the effectiveness of GPIIb-IIIa antagonist. Prostacyclin is the most potent endogenous inhibitor of platelet aggregation, and studies in animal models indicate that its participation in inhibiting platelet activation is substantial. This is further supported by the thrombotic events occurring in the IP receptor knockout mouse. . . .

One hypothesis would be that the excretion of the prostacyclin metabolite 2.3-dinor-6-keto-PGFa, does not reflect systemic/vascular prostacyclin biosynthesis. *An alternative hypothesis is that prostacyclin biosynthesis in the vasculature is inhibited by Vioxx (without blocking production of thromboxane A, by the platelet). By removing this potent inhibitor of platelet aggregation, the probability that a coronary plaque rupture would lead to myocardial infarction or ischemic ventricular fibrillation is enhanced*. . . .

9

(Emphasis added.)

### 2. *The Bresalier APPROVe Study*

While Merck now claims the FitzGerald hypothesis is "speculative and remains unproven," that was not its position in company-sponsored meetings, FDA filings and published medical literature. In fact, it is undisputed and the Court can take judicial notice that Merck relied upon the APPROVe study in removing Vioxx from the market. Sacrificing billions of dollars in Vioxx sales is a pretty strong manifestation of Rule 801's "belief in its truth."

In the Merck-sponsored 2005 New England Journal of Medicine (NEJM) article publishing the results of the APPROVe study, Merck unequivocally adopted the biologic mechanism of action euphemistically referred to as "the FitzGerald hypothesis" that Vioxx causes or accelerates atherosclerosis and causes plaque rupture.

> Thromboxane A2, a major COX-1-mediated product of arachidonic acid metabolism, causes irreversible platelet aggregation, vasoconstriction, and smooth-muscle proliferation, whereas prostacyclin is an inhibitor of platelet aggregation, a vasodilator, and an inhibitor of smooth-muscle proliferation. COX-2 is the chief source of systemic prostacyclin synthesis, and ***COX-2 inhibitors may increase the cardiovascular risk by*** shifting the functional balance of these vasoactive eicosanoids toward the ***promotion of thrombosis or atherogenesis. COX-2 inhibition combined with thromboxane-receptor antagonism may also lead to the destabilization of atheromatous plaque.***

Bresalier, Robert S., et al. Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial NEJM 2005; 352:1092-1102 at pp. 1098-1099 (footnotes omitted) (emphasis added), attached as Exhibit E. No wonder Merck claims it does not directly challenge that theory here.

### 3.      *APPROVe and 078 Re Coronary Artery Disease Follow-Up*[10]

Because the hazards from drugs like Vioxx are particularly increased in those otherwise predisposed to thrombosis through a single mechanism with multiple effects, Dr. FitzGerald made it clear that the APPROVe study patients needed to be followed to see if the excess in heart attacks or thrombotic events in the Vioxx group over the placebo group persists or will dissipate within a matter of days. FitzGerald NEJM 2004; 351:1709-1711, attached as Exhibit F.

In the only two clinical trials conducted by Merck which followed patients after their discontinuation of Vioxx, the results were a significant increase in cardiovascular deaths and thrombotic events.  Protocol 078 found an increase in mortality in the subjects randomized to Vioxx.  Of 39 deaths, 24 occurred in the Vioxx group.  Of note, however, the sponsor continued to accrue data on a significant number of subjects after discontinuation of the study, i.e., 356 in the Vioxx arm and 307 in placebo.  Over a median follow-up of 29 and 20 weeks respectively, 17 deaths occurred in the Vioxx arm versus only 5 in placebo.  The authors do not offer other statistical analysis, although it is clearly very significant.  Indeed, this is a disturbing signal, consistent with long-term toxic effects.  As reported by Thal, et al. (March 2005) there was a substantial excess of cardiovascular deaths in the Vioxx group versus placebo.  The fact that off-drug cardiovascular mortality during the trials was increased significantly strengthens the interpretation of these events as being causes by persistent damage by Vioxx.

Next, both APPROVe "on drug" data and "off drug" follow-up data show that Vioxx is causing coronary artery disease at an accelerated rate over the placebo group.  In the March 15, 2005

---

[10]*See* Dr. Douglas Zipes' Declaration, at pp. 15-21, attached as Exhibit FF.

APPROVe "on-drug" data (APPROVe Trial Cardiovascular Safety Report MRK-AFV0426355, specifically Table 13 @ MRK-AFV0426390-91, attached hereto as Exhibit G, investigator reported cardiovascular events by class of terms) was reported. Table 13 includes cardiac events that are indicative of developing CAD while on Vioxx for patients in the APPROVe study. These include events like stable angina or pain at rest (*i.e.* angina pectoris, coronary artery disease (CAD), coronary artery occlusion, ischemic heart disease, myocardial ischemia). There were 25 Vioxx CAD events and only 10 placebo CAD events. This shows that coronary artery disease is being accelerated in the Vioxx group over the placebo group.

APPROVe subjects were followed off-drug after the termination of APPROVe and Merck has recently released the data from this study. According to Merck's analysis, there were 31 versus 15 MIs for Vioxx and placebo, respectively, for the on-drug study plus one (1) year of follow-up, a statistically significant difference (p=0.017).

"Off drug" proof of Vioxx initiating and accelerating atherosclerosis is found in the summary of tables and figures produced on May 26, 2006 (See attached Exhibit 17 documents dated 5/26/06, pages 1-137) that represent analyses of follow-up data of the APPROVe study. A review of the "off drug" Vioxx versus placebo CV event Table C14 (page 65 of the report), which is the Summary of Confirmed APTC Endpoint by Time Interval, shows that at zero to six (0-6) months, there were 3 ½ times more Vioxx CV events compared to placebo with a relative risk of 3.74, which is statistically significant. Further, Table B7 shows an overall persistence of thrombotic events off the drug with a persistent RR of 1.64 for Vioxx over placebo. As Dr. Zipes has stated in his declaration (page 17), he finds this persistence consistent with the original APPROVe thrombotic event RR of 1.92. (See Bresalier.) These data offer evidence that Vioxx-induced changes that occur in the

coronary arteries while patients are taking the drug continue to exert clinical effects after the drug has been stopped and is consistent with the opinions as expressed by FitzGerald that continued accumulation of events is consistent with acceleration of atherosclerosis by the drug.  Clearly as Dr. FitzGerald stated, if Vioxx were not causing plaque buildup, the thrombotic events would have dissipated in a few days rather than over a period of six months.

4.      *David Rott, M.D., Jianhui Zhu, MD, PhD, Mary Susan Burnett, PhD, Yi Fu Zhou, MD, Alexandra Zalles-Ganley, BS, Jibike Ogunmakinwa, BS, Stephen Epstein,  MD  (J Am Coll Cardiol 2003; 41:1812-9).[11]*

*Abstract/Conclusions* (excerpts): …Our study demonstrates that selective inhibition of COX-2 in vivo increases viral load.  ***The finding that inhibition of COX-2 increases atherosclerosis development*** in apoE deficient mice suggests, unexpectedly, that this enzyme exerts antiatherosclerosis activity, at least in this model.  (Emphasis added.)

*Discussion* (excerpts):
(1816-1818)
…The result of the study exploring the validity of the second hypothesis we examined was also unexpected.  Lesion analysis showed that ***selective COX-2 inhibition with MF-tricyclic [a Vioxx analog] increases atherosclerotic lesion area*** (Figs. 3 and 4).  It should be noted that lesions in this particular model, in which apoE knockout mice were sacrificed at only 11 weeks of age and after only 3 weeks on the selective COX-2 inhibitor, were very early lesions.  Therefore, our results are probably more relevant to lesion initiation.

…"Selective Cox-2 inhibition and CMV replication": Although initially surprising, upon further reflection the contrast between in vitro and in vivo COX-2 inhibition effects should have been anticipated…

---

[11]Attached as Exhibit H. This work was financed  in part by a grant from Merck Pharmaceuticals, and the Vioxx surrogate Cox-2 inhibitor (Tricyclic) was supplied Merck to Dr. Epstein. Under Rule 801(d)(2), it can be considered Merck's admission.

13

…"Selective Cox-2 inhibition and atherosclerosis":  The second unanticipated finding of our study was that in contrast to our hypothesis, selective COX-2 inhibition actually increased early lipid aortic accumulation in the apoE knockout mice.  This raises a major conundrum:  why should an anti-inflammatory drug accelerate the initiation of atherosclerosis, a disease recognized as having a major inflammatory component?

Recent studies have demonstrated a complex role for COX-2 in inflammation, in that the enzyme appears to possess not only its well-known inflammatory activity, but also anti-inflammatory properties.  This latter activity resides in a previously unrecognized role of COX-2 in the resolution phase of the inflammatory response…

…Consequently, Colville-Nash and Gilroy suggested that COX-2 is pro-inflammatory early in inflammation, but facilitates inflammatory resolution later.

*…Potential deleterious effects of selective COX-2 inhibition on the course of atherosclerosis in humans were suggested by the demonstration in patients with rheumatoid arthritis that rofecoxib, a selective COX-2 inhibitor, was associated with a higher number of acute coronary events that occurred in patients treated with naproxen, a non-selective COX inhibitor.  Moreover, a meta-analysis (with all the limitations inherent in such an analysis) of several published studies employing selective COX-2 inhibitors suggested that such treatment increased the incidence of myocardial infarction…*

*The mechanism responsible for precipitation of acute coronary events derive from plaque instability and plaque rupture.*  Following rupture, the highly thrombogenic plaque core is exposed to blood within the vessel lumen, resulting in platelet aggregation, thrombus formation, and acute vascular occlusion.  *Thus, any deleterious effects of selective COX-2 inhibitors on the course of atherosclerosis could involve three separate processes:  1) a proinflammatory effect that accelerates the initiation and chronic progression of the atherogenesis process, and that may induce plaque instability and rupture; 2) a procoagulant effect (induced by inhibition of COX-2 mediated expression of the highly anti-thrombotic PGI2 without concomitant reduction of COX-1 mediated expression of the highly thrombotic thromboxane A2 that precipitates an acute coronary syndrome; and 3) a pro-proliferative effect that could increase lesion size through accumulation of SMCs.*

Of additional relevance is the finding that indomethacin, a non-selective COX inhibitor, significantly reduced atherosclerosis in mice.  Indomethacin is more potent inhibiting COX-1 compared with COX-2.  Therefore, the data taken in their entirety, suggest that COX-1 is not proatherosclerotic and may even have a protective effect; conversely, inhibitors of COX-1 appear to protect against atherosclerosis, and selective inhibitors of COX-2 may have deleterious effects.

14

…In conclusion, the results of this investigation raise disturbing questions about possible adverse effects deriving from chronic use of selective COX-2 inhibitors on susceptibility to viral infection and on early atherosclerosis lesion development. However, extrapolation of our results obtained in a mouse model to humans taking COX-2 inhibitors may not necessarily be valid…

(Emphasis added.)

###### 5. *Merck Internal Documents re Vioxx, Atherosclerosis and Plaque Rupture*

In addition to the May 3, 1998 Board of Scientific Advisors recommendation to study the possible effects of Vioxx on lipid-rich plaque build-up or atherosclerosis, Plaintiff has chronicled for this Court a series of Merck internal documents that show that as early as October of 1997 Merck admitted its awareness of the potential that a drop in prostacyclin could potentially initiate and accelerate atherosclerosis and cause plaque rupture. In fact, in October of 1997, Garrett FitzGerald proposed that his team would do a study on this very subject.

In addition, the Court can see from the chronicle of Merck emails below that Merck managing scientists were very careful in dealing with patients who had atherosclerosis, and in studying the effects of Vioxx on atherosclerosis. For example, Merck only approved the study done by Rott and Epstein (mentioned above) after the authors sent Merck a prediction that they thought that Vioxx would be atheroprotective rather than athero-accelerating. *See* Exhibit I. Dr. Stephen Epstein was deposed in *Barnett* and testified that his study results showing that Cox-2 accelerated atherosclerosis was a "yellow flag" for Merck to do more studies. (Epstein Deposition, p. 117:15-118:20, attached as Exhibit GG.) Instead, Merck, as the Court can see from the document chronicle below, terminated Dr. Epstein's "grant" which would have allowed him to do more extensive studies. All of these documents are admissions by Merck.

- E-mail from Garret Fitzgerald to Alan Nies dated October 24, 1997, "here are suggestions of things that we would like to do…to investigate the cox2 pgi phenomenon…cross our IP deficient mice with apoE def mice and evaluate the effects of pgi on atherogenesis…we can measure pgi metabolites in mouse urine; see if it is elevated during atherogenesis in apoE defs…and look for cox2 (and pgi synthase) by in situs in the vascular involved vs uninvolved areas during atherogenesis. we have cloned the mouse pgi synthase." (P1.0477, MRK-NJ0051533, atttached as Exhibit J).

- Vioxx MSGP RC mtg. Minutes for Oct. 26, 1999: "Proposal #113 - Role of Cox-2 Inhibitors in patients with unstable angina and non-Q wave myocardial infarction…Comments: This study would occur in very sick patients. The plaque is now generally regarded as a chronic inflammatory state and not an acute event. We should be wary going into this type of population. The opinion of the Committee as a whole was very negative to this type of study…Outcome: Proposal rejected." (MRK-AEH0016360, attached as Exhibit K).

- Vioxx MSGP RC Mtg. Minutes for Oct. 26, 1999: "Proposal 109…Use of a Cox-2 inhibitor to lower morbidity and mortality in patients with unstable angina…Comments: very similar to #113…The same comments pertain…Outcome: SOI rejected" (MRK-AEH0016359, attached as Exhibit L).

- Vioxx MSGP RC Mtg. Minutes for Jan. 19, 2000: "Proposal #148...Modulating inflammation isn't symptomatic atherosclerosis: safety and efficacy of rofecoxib in acute coronary syndrome…Comments: This is an 'at risk' patient population. We have already rejected two recent proposals [#109 and #113] in this area. The consultants' meeting last year expressed a view that it would be undesirable to pursue VIOXX in this patient population…Outcome: Proposal rejected." (MRK-AEH0016403, attached as Exhibit M).

- Vioxx MSGP RC Mtg. Minutes for May. 19, 2000: "Proposal #213 Epstein/USA…Effects of a specific Cox-2 inhibitor on cytomegalovirus replication and atherosclerosis progression in apoE knockout mice…Outcome: Proposal accepted…Supply MF-Tricyclic [not rofecoxib]." (MRK-EAI0002560) [*see supra* Rott study], attached as Exhibit N).

- Vioxx MSGP RC Mtg. Minutes for June 16, 2000: "Proposal #270 FitzGerald/USA…A biochemically selective dose of rofecoxib retards atherogenesis in the DKO mouse…Comments: There was a very extensive debate on this topic. ***Scientifically this is a sound prospective study in an animal model of atherogenesis that has a distinct relevance to the human***

16

*disease.*  The investigator's group is very highly regarded and an international authority in eicosanoid research.  Issues: a) The science merits support.  b) ***There is a commercial/marketing anxiety about a possible downside risk that enhanced mortality may occur in the rofecoxib-treated animals from cardiovascular complications that is mechanism based***.  This may attach to the cardiovascular events from VIGOR..Outcome: the Committee was not prepared to make a decision on supporting the proposed work without input from MRL and its senior Management." [Handwritten marginalia: "pretty good thing to worry about!"] (MRK-ADF0010827) Handwritten marginalia: "8/21/00 Steve/Mark - One of my more significant contributions to the MSG program was to reduce the company's risk with Fitzgerald's p[roposal] by recommending substituting MF-Tricy[clic] for either Vioxx or 663 and in general, ***raising awarene[ss] of the commercial conseque[nces] of this study*** -E.B." (MRK-ADF0010826) Handwritten marginalia: "Based in large part to my input, MRL Senior management was asked to approve this study for MF-T and not Vioxx or 663." (MRK-ADF0010828, attached as Exhibit O).

- Vioxx MSGP RC Mtg. Minutes for June 16, 2000:  "The amount of MF-Tricyclic is dwindling to the extent that we will run out of the compound by the end of this year. MF-Tricyclic has been a pivotal plank in the Vioxx MSGP strategy of supporting investigators with the best alternative compound when it has been deemed inadvisable to supply rofecoxib." (MRK-ADF0010829, attached as Exhibit P).

- Email from Irwin Finestone to Nancy Gold, CC to Jean-Pierre Borsanyi dated 6/20/01: "Could you please The reason why we cannot use VIOXX is that if any unwanted effect or side effect is found in the animal model which is related to the limitation of the animal model, the study design or method, we do not want these results to be extrapolated to VIOXX and its clinical use." provide all relevant information on MF-tricyclic and also why it is preferred over VIOXX for this study." Reply email from Jean-Pierre Borsanyi to Nancy Gold, dated 6/21/01: " (MRK-AEH0016617, attached as Exhibit Q).

- Email from Robert Young to Irwin Firestone, dated 7/3/2001: "There's no real synopsis of data on MF-Tricyclic. Its properties are very similar to Vioxx. The dosing, potency and bioavailabilities and half lives are all very close to those of Vioxx." (MRK-AEH0016616, attached as Exhibit R).

- Email from Ian Rodger to the Coxib MSGP Committee Re: Epstein #213 abstract, dated 7/27/01: "I have received the attached abstract from Steve Epstein regarding his work on cytomegalovirus etc. I cannot say that I like the conclusions - ***COX-2 inhibitors are immunosuppressive and atherogenetic***…NOTE: We supplied him with MF-tricyclic and not rofecoxib for his work. In any reply I would probably insist that he cite MF-tricyclic in

his abstract so that the impression is not given to readers that he has used rofecoxib." (MRK-AFI0118752, attached as Exhibit S).

- Email from Peter Alberti to Susan Baumgartner and Tracy Mills, dated 7/27/01: "Info coming out of Medical School Grants related to CMV atherosclerotic lesions in mice treated with MF-tricyclic. The investigator submitted a follow-up grant which the committee rejected." (MRK-AFI0118752, attached as Exhibit S).

- Email from Stephen Epstein to Ian Rodger, Cc to Peter DiBattiste, dated 10/12/2001: "***Attached is the paper on the effects of selective COX-2 inhibition on susceptibility to CMV infection and to atherogenesis…I'm sorry that we didn't get the results we thought we would -- but it's better to know about this now than to be blind-sided in one or two years by complications that were totally unexpected***." (MRK-ABA0012531-0012548, attached as Exhibit I).

- Email from Jilly Evans to Ian Rodger, dated 10/12/01 RE: Stephen Epstein #213 manuscript: "This is not good news!…I am really concerned about the way he has written the whole section I have copied below from the conclusions. Can we not try to rewrite this and send him our version?" (MRK-AHO0057226, attached as Exhibit T).

- Email to Jilly Evans, Ian Rodger, and Coxib MSGP Committee RE: Epstein #213 manuscript, dated 10/12/2001:(MRK-ACD0005140, attached as Exhibit U).

- Email from Briggs Morrison to Greg Geba, Robert Silverman, and Ian Rodger, Cc to Briggs Morrison, dated 10/12/2001: "I think alise [reisen]should be reviewing every manuscript – whether MSGP or whatever – in the COXIB franchise." (MRK-NJ0335046, attached as Exhibit V).

- Email from Leslie Koch to Greg Wiederrecht and John Obenchain, Cc to Lewis Mandel, dated 12/13/01: "Decisions about the appropriateness of the experiments involving VIOXX and if Merck wants to support go to Dr. Robert Young (MFC) and Dr. Ian Rodgers (Chairman, VIOXX Medical School Grant Committee).  Occasionally they will offer substitute compounds like MF-Tricyclic or DFU if they are interested in the study, but considered about potential bad implications on marketed products." (MRK-ABS0343457, attached as Exhibit W).

- Medical School Grant Program Coxib Review Committee, dated 2/26/2002: "#376, Giaid/Canada, Role of COX-2 in the pathophysiology of atherosclerosis and myocardial ischemia…Comments: This study comes from an investigator who is one of the few to show a beneficial effect of COX-2 inhibition (with DFU) in an animal model of myocardial infarction…Decision: The proposal was accepted for support, in principle." (MRK-ABK0478427, attached as Exhibit X).

- E-mail from Ian Rodger to Jeffrey Melin dated 2/27/02: "Apparently MRL has conducted a very thorough review of CRP as a marker of inflammation etc according to Phil Davies and its really based upon his comments that the Minute is written as it is (both yesterday's and that from the January meeting where we dumped the Tzivoni proposal). The Committee members were unimpressed by the Tzivoni CRP/IL-6 study that was reviewed last month. It was regarded as extremely risky to extend the study as they wished to. Indeed, many thought that Tzivoni was perhaps very fortunate to see the reduction in CRP his CAD patients...the Committee reemphasized its view that CRP is not a relevant clinical readout for a Coxib.  This is based upon MRL's consensus view and the theoretical possibility that NSAIDs/Coxibs may well drive up the levels of CRP via removal of a pool of beneficial eicosanoids.  A further concern of the Committee was the possibility of a significant downside result in that rofecoxib might well prolong the infection in a manner analogous to that reported with ibuprofen (an effect mediated via modulation of neutrophil function)." (MRK-AHO0171272, attached as Exhibit Y).

It should be clear from these documents that Merck knew all about and reluctantly conceded the Fitzgerald hypothesis about Vioxx's atherogenetic effects. Having made such admissions, it should not be heard to question them now. Merck's motion should be denied.

## III.   THE STUDIES UPON WHICH PLAINTIFF'S EXPERTS RELY SUPPORT THEIR OPINIONS AND ARE RELIABLE UNDER *DAUBERT.*

In addition to the study by Dr. Rott that Merck financed, Plaintiff's experts rely upon the following studies in forming their opinions.

19

**A.** **Karine M. Egan, John A. Lawson, Suzanne Fries, Beverley Koller, Daniel Rader, Emer M. Smyth, Garret A. FitzGerald  (Science 10 Dec 2004; Vol. 306, 1954-57).**[12]

*Abstract* (excerpts):  …Deletion of the PGI2 receptor removed the atheroprotective effect of estrogen in ovariectomized female mice.  This suggests that chronic treatment of patients with selective inhibitors of COX-2 could undermine protection from cardiovascular disease in premenopausal females.

*Discussion* (excerpts):
(1954-7)
…The prostaglandin PGI2 exhibits properties of relevance to atheroprotection, inhibiting platelet activation, vascular smooth muscle contraction and proliferation, leukocyte-endothelial cell interactions, cholesteryl ester hydrolase.  PGI2 analogs retard atherogenesis, and atherosclerotic lesions exhibit a decreased capacity to produce PGI2 ex vivo.  Cyclooxygenase 2 (COX_2) expressed in vascular endothelial cells, catalyzes prostaglandin endoperoxide formation from arachidonic acid.  This is subsequently transformed to PGI2 by PGI2 synthesis, a process that occurs in endothelial cells.  Selective COX-2 inhibitors depress PGI2 metabolite excretion.  Inhibition of the COX-2-PGIS pathway may have particular relevance to atheroprotection in females because E2 increases COX-2 expression in vascular tissues and augments PGI2 production in vitro.

…***Selective inhibitors of COX-2 depress PGI2, but not platelet COX-1 derived TxA2, which affords a mechanism whereby they might elevate blood pressure, accelerate atherogenesis, and augment the thrombotic response to plaque rupture. Depression of PGI2 may accelerate atherogenesis by multiple mechanisms, including augmenting platelet and neutrophil interactions with the vasculature.*** PGI2 also exerts an antioxidant effect, which may retard atherogenesis.  IP deletion augments lipid peroxidation, whereas its overexpression in human embryonic kidney cells has the opposite effect.  An antioxidant role for PGI2 which may reflect induction of HO1, is consistent with exacerbation of reperfusion injury by IP deletion…

---

[12]Attached as Exhibit Z. These four peer-reviewed studies support the position that Vioxx causes atherosclerosis and were specifically relied on by expert cardiologist Dr. Douglas Zipes. *See* Zipes Declaration, at  pp. 10-15, attached as Exhibit AA.

…Although extrapolation of results in mice to humans is performed with caution, the experience with rofecoxib has focused attention on the role of atherogenesis in transformation of cardiovascular risk during chronic treatment with selective inhibitors of COX-2. We reveal a substantial contribution of ERa-mediated, COX-2 derived PGI2 to atheroprotection in female LDLR KOs. This finding raises concern about the use of COX-2 inhibitors in juvenile arthritis, a disease that predominantly affects females. It may also have implications for the design and interpretation of trials of hormone-replacement therapy.

B.   **R. Daniel Rudic, Derek Brinster, Yan Cheng, Susanne Fries, Wen-Liang Song, Sandra Austin, Thomas M. Coffman, Garret A. FitzGerald "Cox-2 Derived Prostacyclin Modulates Vascular Remodeling" (Circ Res. 2005; 96:1240-1247).**[13]

_Abstract_ (excerpts):…***Suppression of Cox-2 derived PGI2 or deletion of IP profoundly influences the architectural response of the vasculature to hemodynamic stress.***

_Preface_ (excerpts):
(1239-1)
…***Among the factors which might have contributed to acceleration of cardiovascular risk during that time are elevation of blood pressure and acceleration of atherogenesis, both of which may result from deletion of the receptor for PGI2*** (the IP) in genetically predisposed strains of mice. Indeed, blood pressure was elevated by 3-4 mm Hg as early as 1 month in patients receiving rofecoxib in APPROVe. Aside from initiation and early development of atherogenesis, little is known about how suppression of COX-2 dependent PGI2 might condition the response of the vasculature to sustained stress, such as a rise of blood pressure. In this study we examine the effect of disrupting PGI2 action in mouse models of transplant arteriosclerosis and vascular remodeling which preserve the integrity of the endothelium, either by removing the IP or by administration of nimesulide, a nonproprietary but commercially available COX-2 inhibitor which confers COX-2 selectivity comparable to that of celecoxib. We report that either deletion of the IP or administration of a COX-2 inhibitor induces vascular hyperplasia and remodeling of the vasculature while maintaining luminal geometry. Such perturbation of the relationship between vascular hemodynamics and structure may interact with hypertension and atherogenesis to contribute to an emerging cardiovascular hazard in patients initially at low cardiovascular risk during extended therapy with selective inhibitors of COX-2…

---

[13]Attached as Exhibit BB.

*Discussion* (excerpts):
(1244-1246)

…Cox-2 is a major source of PGI2 biosynthesis in humans. Depression of PGI2 without a concomitant inhibition of TxA2 has been suggested as a mechanism by which selective inhibitors of COX-2 might predispose individuals to cardiovascular hazard. The emergence of this risk in placebo controlled clinical trials involving three COX-2 inhibitors is compatible with such a class-based effect. Deletion of the IP predisposes mice to an exaggerated response to thrombotic stimuli and both modulate blood pressure and accelerate atherogenesis in genetically predisposed animals…

…Here under conditions of flow reduction, suppression of PGI2 by nimesulide or disruption of its activity by IP deletion may have magnified the effects of hemodynamic-induced Tx formation. PGI2 acts as a constraint on oxidant stress, both in occlusion/reperfusion injury and as atherogenesis proceeds in genetically predisposed mice…

…Here, Tx biosynthesis increases with atherogenesis and is further increased by a structurally distinct COX-2 inhibitor. Analogous to the experience with TP deletion, addition of a TP antagonist to the COX-2 inhibitor results in a marked augmentation of Tx biosynthesis and plaque destabilization…

…Vascular remodeling occurs in both hypertension and atherosclerosis and deletion of the IP results in a rise in blood pressure (citing Francois and Coffmann unpublished observations; 2004) and accelerates atherogenesis in genetically prone mice. Here, we show a distinct impact on the remodeling process to hemodynamic stress, again mediated, at least in part, by removal of a biological constraint on TP ligands. ***These consequences of PGI2 suppression, elevation of blood pressure, acceleration of atherogenesis and modulation of the vascular response to hemodynamic stress, may converge to alter vascular architecture and elevate cardiovascular risk*** during extended dosing with selective inhibitors of COX-2.

(Emphasis added.)

22

C.  **Takuya Kobayashi, Yoshio Tahara, Mayumi Matsumoto, Masako Iguchi, Hideto Sano, Toshinori Murayama, Hidenori Arai, Hiroji Oida, Takami Yurugi-Kobayashi, Jun K. Yamashita, Hiroyuki Katagiri, Masataka Majima, Masayuki Yokode, Toru Kita, and Shuh Narumiya, "Roles of Thromboxane A2 and prostacyclin in the development of atherosclerosis in apoE-deficient mice" J. Clin Invest. 114:784-794 (2004).**[14]

*Abstract (*excerpts): …Production of thromboxane (TX) A2 and PGI2 is increased in patients with atherosclerosis…We conclude that TXA2 promotes and PGI2 prevents the initiation and progression of atherogenesis through control of platelet activation and leukocyte-endothelial cell interaction.

*Discussion* (excerpts):
(790—91)
…In contrast to those findings in the previous studies, our study here using genetically engineered mice has demonstrated significant suppression and significant enhancement of atherosclerosis in apoE-/-TP-/- and apoE-/-IP-/- mice, respectively, suggesting strongly proatherogenic and antiatherogenic actions of TXA2 and PGI2, respectively.

…It is noteworthy that atherogenesis was significantly accelerated and reached a plateau early in apoE-/-IP-/- compared with apoE-/- mice. These results indicated that signaling from PGI2 to IP is important in preventing the initiation of atherosclerosis. Impaired PGI2 function, moreover, appeared to affect the progression and nature of atherosclerotic plaques.

…Lesion rupture, when it occurs in vivo, then precipitates thrombosis, which is further accelerated in the absence of IP. ***Disruption of IP is known to increase the risk of thrombosis.*** Thus, PGI2 appears to exert important inhibitory actions on the initiation and progression of atherosclerosis, and the reduction in PGI2 in the presence of normal TxA2 formation is likely to lead an increased risk of atherosclerosis and thrombosis. ***Currently, an important question concerning COX-2 inhibitors is whether the selective reduction in PGI2 increases the risk of atherosclerosis. Our findings support that conclusion***. However, our findings cannot be directly extrapolated to the clinical outcome of patients treated with COX-2 inhibitors. Although the majority of PGI2 under basal conditions is derived from COX-2 catalysis, both COX-1 and COX-2 contribute to the increase in PGI2 in patients with atherosclerosis as well as in apoE-/- mice, and selective inhibition of COX-2 usually results in only partial inhibition of PGI2 production.

---

[14]Attached as Exhibit CC.

…In conclusion, using the IP-deficient and TP-deficient mice, we were able to evaluate separately the contributions of PGI2 and TxA2 to the development of atherosclerosis.  The information presented here will aid in the interpretation of clinical findings and the evaluation of risk in atherosclerotic patients treated with various drugs modulating the arachidonate cascade. Our findings also indicate that administration of PGI mimetics and TP antagonists may be useful in the prevention of atherosclerosis.  This line of genetic approach may also help to identify the contributions of PGs other than PGI2 and TXA2.

D.      **Thal, LJ, et al "A Randomized, Double Blind Study of Rofecoxib in Patients with Mild Cognitive Impairment," _Neuropharmacology_ (2005) 30, 1204-1215)**.

As described above, Merck conducted two clinical trials (Protocol 078 and the long-term APPROVe follow-up study) which followed patients after they stopped taking Vioxx. Specifically, Protocol 078 found that there was an increase in mortality in the trial subjects randomized to Vioxx. Of the 39 persons who died, 24 were in the Vioxx group. Notably, the sponsors continued to collect data after the study was stopped (356 in the Vioxx arm and 307 in the placebo group). In the follow up, 17 deaths occurred in the Vioxx arm versus 5 in the placebo group.

E.      **Dr. Garrett Fitzgerald (2005-2006).**

In January 2006, Dr. FitzGerald, one of the members of Merck's 1998 Scientific Advisory Panel, summarized the results of the Rudic, Egan, Egan and Kobayashi studies: "In summary, _**a substantial body of evidence has accumulated that 1 [one] mechanism, suppression of COX-2 dependent PGI2 formation, can both augment the response to thrombotic and hypertensive stimuli and initiate and accelerate atherogenesis**_."  Tilo Grosser, _see supra_ note 7.

24

The General acceptance of the biologic effects of Cox-2 suppression by coxibs such as Vioxx as contributing to the progression of atherosclerosis is demonstrated in the presentation of Dr. FitzGerald to the FDA Advisory Committee considering the scientific risks and benefits of specific Cox-2 inhibitors in February, 2005.

Let's think of a more chronically unfolding cardiovascular hazard.  These data are taken from Narumiya.  They are looking at the development of atherosclerosis in a genetically prone mouse, and you can see that deletion of the prostacyclin receptor *accelerates atherogenesis* in male ApoeE-deficient mice.  In fact, the impact was most particularly marked at initiation and early development of atherogenesis.  By contrast, deletion of the thromboxane receptor does the complete reverse, and other studies conducted by us and others have shown that inhibition of COX-1 selectively or antagonism of the thromboxane receptor will have the same effect as deleting the thromboxane receptor, as shown here.

So, as far as atherosclerosis is concerned, we see this buffering capacity between COX-1 and COX-2.  Furthermore, we have shown recently that in a different genetically prone mouse model deletion of the prostacyclin receptor and inhibition of COX-2 dependent formation of prostacyclin is important in affording the atheroprotection conferred by estrogen in female mice.  (Emphasis added.)

So, here we see the atheroprotection in terms of reduction of lesion development with estrogen treatment in vasectomized mice being dramatically reduced by deletion of the prostacyclin receptor, which raises a whole new set of questions about the use of these drugs in premenopausal women.

*So, as far as this other manifestation of a cardiovascular hazard is concerned, initiation and acceleration of early atherogenesis occurs in response to deletion of the prostacyclin receptor.*  I haven't gotten into mechanism but it fosters platelet and neutrophil activation and vascular interactions of these cells, and removes the constraint on attendant oxidant stress.

Now, we know that *hypertension, which is also a consequence of inhibition of this pathway, itself accelerates atherogenesis*.  So, one could imagine that the direct and indirect effect could converge to transform cardiovascular risk.  Finally, again COX-1 is playing a modulatory role."

Transcript Volume I, at pp. 93-95, attached here as Exhibit "DD". (Emphasis added.) In addition to these materials, Dr. Zipes also refers to a number of other studies in his declaration in response to a virtually identical motion filed by Merck in the *Barnett* case. *See* Exhibit AA.

Merck's primary attack on Plaintiffs' causation evidence is that Drs. Zipes and Sander, among others, rely on studies done on animals. In making that argument, Merck ignores the clinical trials, peer-reviewed article and admissions, previously mentioned, reviewed and considered by Drs. Zipes and Sander used in formulating their opinions. Worse, it ignores this Court's common sense ruling in *Plunkett v. Merck & Co.* (In re Vioxx Prods. Liab. Litig.), 401 F.Supp.2d 565, 590 (E.D. La. 2005), in which it held, in response to identical objections to animal studies, that the expert in question "based his opinion on a thorough review of the scientific literature. In addition, he drew proper and supported inferences from the studies he reviewed. His opinion is based on reliable, scientific data." Finally, Merck ignores the fact that the Federal Judicial Center's Reference Manual on Scientific Evidence, at 33-34, recognizes that toxicology models based on animal studies may be used to determine adverse effects in humans. The only consideration is whether, in the Court's view, the studies adequately support the expert's opinion on causation. *Id.* This can be accomplished by having the expert explain the basis on which he can extrapolate the expert's results.

Here, for example, Dr. Zipes testifies that he uses the Rott-Epstein article, financed by Merck itself, because the Apo E knockout mice it studied "are considered excellent study animals to predict the effects of COX-2 inhibitors, including Vioxx on atherosclerosis in the coronary vessels." *See* Report of Douglas Zipes at 41. Moreover, Merck can hardly complain that its ***own*** studies are unreliable. Worse, when it tries to attack Dr. Zipes conclusions, Merck uses . . . animal studies. Thus, Defendant cites ***mouse studies*** by Oleson (2002), Pratico (2001), and Burleigh despite their

suggestion that such studies are "inconclusive" and "unreliable."

Further, Merck implies that, if there is any disagreement in the scientific community concerning a given hypothesis – no matter how shaky the opposition – that hypothesis is presumptively unreliable. As an initial matter,  the focus of the *Daubert* inquiry "must be solely on principles and methodology, [and] not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95  Stated differently, any error affects only the weight a jury may choose to Plaintiff's evidence,  but not its admissibility. Thus, evidence cannot be excluded under *Daubert* because Merck now disagrees with its conclusions. Second, while "general acceptance" is a factor that may be used in assessing reliability, unanimity in the scientific community is not.  509 U.S. at 592-594. Thus, the fact that there are studies which may reach contrary results using different markers is irrelevant to a determination of reliability. Nevertheless, despite its own reluctant acceptance of the FitzGerald hypothesis, Merck struggles, in its motion, to manufacture a real debate. It fails

For example, Merck suggests "several recent studies in humans have suggested that COX-2 inhibition (including COX-2 inhibition from Vioxx) is associated with significantly reduced levels of C-reactive protein—considered a marker for progression of atherosclerosis with possible [emphasis added] direct involvement in the atherosclerotic process" (citing studies by Bogaty, et. al, Monakier et al, and Ridker).  The Bogaty study,[15] however dealt with 35 subjects **on low-dose aspirin** who had had greater than two previous acute coronary events.  These subjects all took 160 mg of aspirin daily.  Of note, during the study, it was reported: one patient on rofecoxib had unstable angina one month after randomization, in two others a diuretic was begun  because of peripheral

---

[15]Peter Bogaty, et al. "Impact of Prolonged Cyclooxygenase-2 Inhibition on Inflammatory Markers and Endothelial Function in Patients With Ischemic Heart Disease and Raised C-Reactive Protein—A Randomized Placebo Controlled Study."  Circulation. 2004; 110:934-939.

edema and increased blood pressure, and an ACE inhibitor was begun in three patients because of increased blood pressure.  The authors commented that "this study must be tempered [emphasis added] by the fluctuation of serum values of CRP and IL-6 that was manifest during screening" and they also commented that their findings "cannot be definitive" [938].  Recommendations were made to further "explore whether COX-2 inhibition may be beneficial in patients with ischemic heart disease who are at very high risk of acute coronary events because of their heightened inflammatory profile."  The methodology and findings in this study are speculative at best.

Merck also cites an article by Ridker[16] for the proposition that Cox-2 inhibition is associated with significantly reduced levels of C-reactive protein.  While C-reactive protein may be a marker for underlying systemic inflammation, and can possibly be associated with a risk of myocardial infarction, it must be noted that this was a study where participants were randomly assigned to receive aspirin or a placebo.   The conclusion made in this study was that the data "suggest[s] that inflammatory markers such as C-reactive protein may provide a method of identifying people for whom aspirin is likely to be more or less effective—a hypothesis requiring direct testing in randomized trials [979]."  The relevance to the COX-2 enzyme was not tested or studied here.

In the Monaker study[17], also cited by Defendant, the conclusion was made that in patients recovering from ACS (Acute Coronary Syndrome) when treated with rofecoxib plus aspirin, suppression of inflammatory processes may lead to retardation of coronary atherosclerosis and coronary events.   Here the authors indicated that patients with ACS have high levels of

---

[16]Ridker P, et al, "Inflammation, Aspirin, and the Risk of Cardiovascular Disease in Apparently Healthy Men" NEJM 1997; 336:973-9.

[17]Monaker D. et al "Rofecoxib, a Cox-2 Inhibitor, Lowers C-Reactive Protein and Interleukin-6 Levels in Patients with Acute Coronary Syndromes" CHEST 2004; 125:1610-1615.

inflammatory mediators such as CRP and interleukin (IL)-6.  Their aim was to evaluate whether patients with ACS treated with rofecoxib would have reduced CRP, I:-6 and soluble tumor necrotic factor receptor levels and improved endothelial function.

Thirty-four hospitalized patients were randomized to receive 25 mg of rofecoxib plus 100mg/d aspirin, or placebo plus aspirin, 100 mg/d for a period of 3 months.  Relying on the published reports of VIGOR the authors considered the study "to be safe for our study population." Thirty-four patients participated in the study, and all completed at least one month of treatment. Twenty-three of the patients completed three months of treatment and most of the patients who did not complete the 3-month follow-up were excluded, mainly due to the development of infections and inflammatory conditions that could potentially elevate the inflammatory markers studied.

This study has major limitations as the authors concede questionable methodology.  A small number of patients were studied and there was a high drop out rate at the three-month follow-up. Further, patients were excluded because of various reasons listed as:  rehospitalization because of acute MI (n=3), unstable angina (n=2), and infection or inflammatory conditions requiring anti-inflammatory treatment.   Thus, the results in this study are unreliable, and lack sound methodology.

Finally, Plaintiff would refer the Court to two Merck internal documents chronicled below (attached as Exhibit EE) which state that Merck Research Laboratory's "consensus view" was that "NSAIDs/Coxibs may well drive up the levels of CRP."  In the internal email written by Jeffrey Melin to Ian Rodger (attached as Exhibit EE), Melin states that a "further concern" of the Merck committee in charge of providing grants to researchers is the "possibility of a significant downside result in that rofecoxib might well prolong the infection in a manner to that reported with ibuprofen

. . .."  Clearly, these documents written by Merck employees are further evidence that Defendant's proffered studies regarding the association between Vioxx and reduced levels of CRP lack merit.

## CONCLUSION

This Court has already ruled that the scientific methodology supporting the conclusion that Vioxx accelerates atherogenesis, including its plaque rupture stage,  is reliable and meets the standards under *Daubert*.  Merck's own consultant and scientist, Dr. Garrett FitzGerald, M.D., has repeatedly generated peer reviewed studies publications supporting this conclusion.  Merck has admitted it in a host of ways. There are sound and scientifically reliable studies for correctly concluding that Vioxx causes accelerated atherogenesis, which are based on recognized pathophysiology, animal studies and Merck's own clinical studies and findings.  Merck has even submitted to the FDA, through human clinical trials, the data which show this progression.  Drs. Zipes', Sander's and Plaintiff's other experts' outstanding qualifications are more than sufficient to permit them to qualify to testify regarding the aforementioned issues in this litigation. For these reasons, Plaintiff respectfully requests that this Court deny Merck's motion to exclude opinion testimony that Vioxx causes or accelerates atherosclerosis and/or causes plaque rupture.

Dated:  August 21, 2006

Respectfully submitted,

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

31

cc      By email only:

Robert Van Kirk          rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski          carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440