**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DOUGLAS P. ZIPES, M.D.**

_____

*(Defendant's Expert Challenge No. 4)*

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff R.Garry Smith files this brief in opposition to Merck's Motion to Exclude the Opinion Testimony of Douglas Zipes, M.D.  As outlined below, Dr. Zipes is qualified to proffer each of the opinion challenged in Merck's motion, and his testimony is both reliable and relevant.

## INTRODUCTION

Merck seeks to eliminate the testimony of one of the most renowned and respected cardiologists in the country.  Dr. Zipes' qualifications are impeccable and his expert testimony regarding cardiology issues has previously been accepted by this Court.  (*In re Propulsid Products Liability Litigation*, 261 (E.D. La 2003))  Merck's challenges are completely without merit and should be rejected.

1

Dr. Zipes' testimony establishes that reliable scientific evidence demonstrates that Vioxx causes accelerated atherosclerosis. Plaintiff's opposition to Merck's Expert Challenge No. 10, which is incorporated herein by reference, details the compelling scientific evidence for that conclusion. Merck's challenges to Dr. Zipes' testimony are wholly unfounded and based on Merck's mischaracterization of Dr. Zipes' opinions and the bases for those opinions. For example, Merck's motion accuses Dr. Zipes of expressing opinions on "what Merck knew or should have known" and "Merck's compliance with FDA regulations." *See* Defendant's Memorandum, p. 2. Dr. Zipes expresses no such opinions.

What Dr. Zipes does do is reference Merck's own documents – documents that contain admissions about Vioxx's mechanism of action, admissions that Vioxx causes accelerated atherosclerosis and admissions that Vioxx causes cardiovascular events like heart attack and stroke. The documents relied on by Dr. Zipes also demonstrate that the information Merck had was not communicated to the FDA.

The relevance of these documents is three-fold. First, they constitute legal admissions by the drug manufacturer about the drug itself – which can reasonably be relied on by Plaintiff's expert. Indeed, what better evidence for an expert to rely on than the conclusions by a drug manufacturer's own scientists about what the drug does? Second, the information relied on also establishes a chronology that is necessary to demonstrate that at the time Mr. Smith was prescribed Vioxx, Merck had sufficient scientific evidence to warrant its withdrawal from the market or, at the very least, a black box warning precluding its use by anyone with any indication of cardiovascular disease. Third, the documents demonstrate that, although Merck knew this vital information, it failed to provide it to the FDA in a timely and meaningful way, thus, once again, preventing a timely and

2

meaningful warning to doctors, including Mr. Smith's doctors, about the cardiovascular risks associated with Vioxx.

Merck also attacks Dr. Zipes' opinions on the grounds that he relied on discussions with other peers and relies on the biostatistical calculations of another expert, Richard Kronmal. But neither of those challenges have either merit or impact.

With respect to Dr. Kronmal's calculations, they are valid and admissible, as set forth in Plaintiffs' Opposition to Expert Challenge No. 8, which is incorporated herein by reference. With respect to Dr. Zipes' discussions with his peers, applicable law, as discussed below, permits such a basis for an expert's opinion.

Merck's motion is an exercise in futility. Even if the Merck documents are excluded, even if the FDA references are excluded, and even if the peer discussion is excluded, Dr. Zipes' opinion and the scientific basis for it - does not change. As such, there is no basis for excluding Dr. Zipes' opinion under *Daubert*. Indeed, where "only a small part of the basis" of an expert's opinions are deemed to be unreliable, a district court abuses its discretion in granting a motion to exclude the expert's opinions. *In re Paoli RR Yard PBC Litigation*, 35 F.3d 717 (3rd Cir. 1994).

In sum, Merck's motion has no merit. Dr. Zipes is a highly qualified expert and his analysis of accelerated atherogenesis is based on sound, reliable scientific evidence and methodology.

## I.   LEGAL STANDARDS

As this Court discussed in its prior Vioxx *Daubert* decision:

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known.

*In re Vioxx Products Liability Litigation*, 401 F.Supp.2d 565, 573 (E.D.La. 2005).

Notably, "[t]he focus is not on the result or conclusion, but on the methodology." *Id.*, citing *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275-276 (5th Cir. 1998) (emphasis added). Further, "[t]he proponent need not prove that the expert's testimony is correct, but must prove by a preponderance of the evidence that the methodology used by the expert was proper." *Id.* (emphasis added). Finally, "[t]he validity or correctness of the conclusions is for the fact finder to determine." *Id.* at 574.

Although the court has a "gatekeeping" role to play in the admission of expert evidence, that role is not intended to serve as a substitute for the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [even] shaky but admissible evidence." *See* FED.R.EVID.. 702, Adv. Comm. Notes, 2000 (internal quotes omitted).

The admissibility of expert opinion depends on the following:

Whether the opinion is based on specialized knowledge;

- Whether the opinion would assist the trier of fact;

- Whether the expert is appropriately qualified;

- Whether the opinion is reliable.

*See* FED.R.EVID. 702, 703; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Merck does not contest that Dr. Zipes' opinions meet the first three requirements. In other words, by failing to challenge Dr. Zipes on those elements, Merck concedes that the opinions are based on specialized knowledge, that the opinions would assist the trier of fact and that Dr. Zipes is qualified to render the opinions. Merck's challenge, instead, focuses on the last prong, i.e.,

whether the opinions are reliable.  In that context, there are three issues:

- Whether the testimony is based upon sufficient facts or data;

- Whether the testimony is the product of reliable principles and methods; and

- Whether the witness has applied the principles and methods reliably to the facts of the case.

*Id.*

First, the facts or data relied on by the expert need not themselves be admissible. FED.R.EVID. 703.  Indeed, experts commonly rely on books, articles and published data in their field of expertise and apply their education, training and experience to the interpretation and application of that information in forming their opinions.  FED.R.EVID. 703; *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 436, fn. 5 (5th Cir. 1982).  But an expert may even express opinions ***without published support*** – the lack of support goes to weight, not admissibility.  *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 980-981 (6th Cir. 2004).

Experts' medical opinions may be based on the reports of others FED.R.EVID. 703, Adv. Comm. Notes; *Westfield Ins. Co. v. Harris*, 134 F.3d 608, 612 (4th Cir. 1998), as well as the reports of calculations by others.  *Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 346 (8th Cir. 1996).  And, especially relevant to one of Merck's challenges in this motion, an expert can base an opinion on statements made by other experts during consultation with them.  *Lewis v. Rego Co.*, 757 F.2d 66, 73 (3rd Cir. 1985); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1988); *United States v. Brown*, 299 F.3d 1256-1257 (11th Cir. 2002).

Second, the methodology is reliable if the expert has "good grounds" for the opinion, i.e., the opinion is based on knowledge and experience in the speciality and not on "subjective belief of

unsupported speculation." *Daubert*, at 589.  As explained in *Daubert* and by this Court in *In re Vioxx*, there is definitive "checklist or test" for determining the reliability of the methodology, there are factors to be considered, including:

- Whether the methodology can be and has been tested;

- Whether the methodology has been subjected to peer review;

- Whether there is a known potential rate of error;

- Whether there are standards controlling the technique used; and

- Whether a new technique is generally accepted in the relevant scientific community.

*Daubert*; *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999).

Importantly, when a party tries to discredit studies relied on by an expert, critical considerations include the question of whether the studies are peer-reviewed, developed independent of the litigation and generally accepted by the relevant scientific community.

In this case, Dr. Zipes' opinions are primarily based on the result of published, peer-reviewed studies conducted not only by Merck's own scientists and Scientific Advisory Committee members, but by respected scientists who have nothing to do with this litigation and/or who conducted those studies before this litigation commenced.

## II.   DR.  ZIPES  WILL   NOT APPEAR LIVE BUT THROUGH DEPOSITION TESTIMONY

Merck first complains that "[t]o the extent that plaintiff intends to offer any specific cause testimony from Dr. Zipes, Merck requests that the Court exclude such testimony."  *See* Merck's Memorandum at p. 3.  Merck's fears are ill-founded as evidenced by Ex. A to its motion in which counsel for Plaintiff confirmed that Dr. Zipes would not be called live at trial.  Instead, Plaintiff intends to offer Dr. Zipes deposition testimony.  Consequently, this does not constitute a grounds

for excluding the general causation testimony from Dr. Zipes.

## III.      DR. ZIPES' OPINIONS ARE BASED ON RELIABLE SCIENCE

As set forth in detail in Plaintiff's Opposition to Merck's Expert Challenge No. 10, which is incorporated herein by reference, the reasoning and methodology underlying the experts' opinions that Vioxx accelerates the development of atherosclerosis is based on sound science and is generally accepted in the relevant medical community.  In fact, this Court has already accepted atherogensis as scientifically reliable under *Daubert*.  *In re Vioxx Products Liability Litigation*, 401 F.Supp.2d 565, 586-587 (E.D.La. 2005). This Court in *Barnett* permitted Dr. Zipes to testify that Vioxx accelerates atherosclerosis because the Court found that these opinions were based on proper methodology.  Beyond that issue, Merck's specific challenges to Dr. Zipes' opinions are unjustified, unwarranted and insupportable.  They should be rejected, and Merck's motion denied.

### A.      Dr. Zipes is eminently qualified.

In footnote 3 of its Memorandum, Merck complains that Dr. Zipes "renders this opinion despite admitting that, prior to having been retained in this case, he had neither diagnosed a person as having had a heart attack caused by Vioxx, nor had he even prescribed Vioxx to his patients." Given what we know about Vioxx now, the fact that Dr. Zipes never prescribed it was a blessing to his patients.  And to suggest that because Dr. Zipes has never previously diagnosed a Vioxx-caused heart attack is meaningless in light of Dr. Zipes' extensive research and clinical background, as detailed in his report, his curriculum vitae and his declaration.  (Expert Report, pp. 1-3 and Exhibit A thereto; Declaration, pp. 1-5.)  Indeed, Dr. Zipes' testimony on cardiology issues has previously been accepted by this Court in *Barnett* and *In re Propulsid Products Liability Litigation*, 261 F.Supp.2d 603 (E.D. La 2003).  Based on his education, training and both clinical and research

experience, he is supremely well qualified to express his opinions about Vioxx and its effects.

> **B.      Dr. Zipes' Reliance on Bresalier is Appropriate and Serves as Only a Part of the Universe of Scientific Evidence Supporting the Conclusion That Vioxx Causes Cardiovascular Events.**

Merck expends considerable effort attacking Dr. Zipes' reliance on the Bresalier study, a

peer-reviewed analysis of cardiovascular event data in Merck's own APPROVe study published in

the prestigious New England Journal of Medicine in February, 2005, and asserting that, as a *"post*

*hoc* sub-group analysis," it cannot establish causation.  There are several flaws in Merck's challenge.

- First, the study is a peer-reviewed study based on a human randomized clinical trial - the "gold standard" for scientific reliability.[1]  Because the Bresalier study is precisely that type of scientific evidence, there is no appropriate basis for Merck's challenge to it.

- Second, the Bresalier study does not stand alone.  It is just part of the wealth of reliable scientific evidence that Dr. Zipes relies on for his opinions.  It is the expanse, variety and reliability of the many published studies that renders Dr Zipes' conclusions reliable.  *See*, e.g., *Glaser v. Thompson Medical Co., Inc.*, 32 F.3d 969 (6th Cir. 1994)(expert may rely on a variety of different types of scientific evidence in support of opinion); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228-1229 (9th Cir. 1998)(expert's reliance on a variety of scientific information sufficient to admit opinion despite no scientific study demonstrating a direct connection between the product and the injury); Carol F. Cranor & David A. Eastmond, *Scientific Ignorance and Reliable Patterns of Evidence in Toxic Tort Causation*, 64 Law & Contemp. Probs. 5, 48 (2001)(noting need for courts to recognize a wide variety of reliable scientific evidence that will support inferences about the toxicity of substances).

---

[1]*See*, e.g, Zipes Report, p. 19; *Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997); *In re Rezulin Products Liability Litigation*, 369 F.Supp.2d 398, 406 (S.D.N.Y. 2005); Michael D. Green, et al., *Reference Guide on Epidemiology*, in REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 333, 338-39 (FedJud.Ctr.2d ed. 2000).  Also, in his report, Dr. Zipes provides an extensive explanation of clinical trials, how they are designed, what makes a clinical trial's data most reliable and how they should be interpreted and applied.  (Zipes Report, pp. 19-20).

8

Merck also complains that a *post hoc* analysis such as that contained in Bresalier "cannot prove a causal relationship." But, again, Bresalier does not stand alone and is but one of many published, peer-reviewed studies relies on by Dr. Zipes. And Clinical studies such as those cited by Dr. Zipes are, in fact, sufficient to demonstrate causation. *Haggerty v. Upjohn Co.*, 950 F.Supp. 1230, 1238 (S.D.Fla. 1996); *Hollander v. Sandoz Pharmaceuticals Corp.*, 95 F.Supp.2d 1230, 1238 (W.D.Okla. 2000).

### C.   Dr. Zipes' Reliance on Merck's Own Documents is Appropriate in the Context in Which They Are Used.

Next Merck contends that Dr. Zipes' opinions must be rejected because he purports to opine on what Merck knew and when it knew it. *See* Defendant's Memorandum, pp. 7-9. Similarly, Merck contends that Dr. Zipes improperly opines about Merck's compliance with FDA regulations. *Id.* at p. 7. But as Merck's own Memorandum notes, Dr. Zipes specifically stated that he could not and does not attempt to interpret what Merck was thinking. In fact, ***none*** of his opinions include ***any*** assessment of Merck's state of mind or its compliance with FDA regulations. Zipes Report, pp. 3-4. All that Dr. Zipes opines is that Vioxx accelerates atherogenesis and that Vioxx caused Mr. Barnett's injuries. He does not even attempt to opine that Merck is a bad company or that it did anything wrong.

What Dr. Zipes ***does*** do is rely on Merck's own documentation as ***factual evidence***. Dr. Zipes quotes from Merck's own documents - documents that constitute admissions about the biological effect of Vioxx - and the law provides that he may reasonably rely on those admissions in forming his opinions. FED.R.EVID. 801(d)(2)(A); *Donlin v. Aramark Corp.*, 162 F.R.D. 149, 150 (D. Utah 1995)(party's statement regarding causation is admissible as an admission even though it is in the form of an opinion and a guarantee of trustworthiness is not necessary); *Owens v. Atchinson*

*Topeka & Santa Fe Ry. Co.*, 393 F.2d 77, 79 (5th Cir. 1968).

Similarly, Dr. Zipes' reference to Merck's documents and its communications with the FDA assist in establishing a chronology with respect to Mr. Smith's use of Vioxx.  Essentially, when Mr. Smith started on Vioxx in late 2002, Merck was aware of the danger signals of cardiovascular risk present in the clinical trials.  But Merck failed to inform the FDA, doctors or anyone else about this risk.  Dr. Zipes' testimony merely supports causation, i.e., Merck new, by the time Mr. Smith started on the drug, that Vioxx increased the risk of cardiovascular injury.  There is nothing improper about consideration of these factors in rendering the opinions at issue.

### D. Dr. Zipes May Properly Rely on Information Gathered From His Peers.

At page 9 of its Memorandum, Merck challenges Dr. Zipes' testimony to the extend it relies on his discussions with other cardiologists about Vioxx's cardiovascular risks, including accelerated atherogenesis.  Merck objects to this testimony on the basis that it is hearsay.  But in doing so, Merck ignores the long-standing rule that experts ***can*** rely on hearsay in forming their opinions. FED.R.EVID. 703; *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 436, fn. 5(5th Cir. 1982).  Additionally, experts may even rely on their own consultations with other experts to support their opinions. (*Lewis v. Rego Co.*, 757 F.2d 66, 73 (3rd Cir. 1985); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1988); *United States v. Brown*, 299 F.3d 1256-1257 (11th Cir. 2002)).  That being the case, there is nothing inappropriate about Dr. Zipes' testimony that he consulted with other experts.

### F. Dr. Zipes' Reliance on Dr. Kronmal's Calculations is Proper.

Similarly, Merck's challenge to Dr. Zipes' opinions on the basis that he cannot properly rely on Dr. Kronmal's calculations must also fail.

Merck inappropriately tries to put plaintiffs "between a rock and hard place" on this issue by asserting that if Dr. Kronmal testifies at trial, Dr. Zipes may still rely on Dr. Kronmal's report - just as he could on any other hearsay report, study or published literature.  While those items may be hearsay and inadmissible, that does not preclude an expert's reliance on them; it only means that the information cannot be disclosed in direct examination.  FED.R.EVID. 703; *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 436, fn. 5 (5th Cir. 1982).  Moreover, an expert may rely on calculations prepared by others in forming their opinions.  *Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 346 (8th Cir. 1996).  Thus, even if Dr. Kronmal does not testify at trial about his calculations, Dr. Zipes may still properly rely on them.

And, of course, if Dr. Kronmal does testify at trial, that cannot rationally preclude Dr. Zipes' testimony.  Dr. Kronmal's calculations form part of the foundation for Dr. Zipes' opinion.  The testimony becomes duplicative if- and only if - their evidence overlaps, i.e, they both testify about how the calculations were made or they both testify in precisely the same way and on the same basis that Vioxx accelerates atherosclerosis.  But unless and until that occurs at the time of trial, there is no basis for prematurely precluding the testimony at this point.  FED.R.EVID. 403; FED.R.CIV.P. 16; *Donnelly Corp. v. Gentex Corp.*, 918 F.Supp. 1126 (W.D.Mich. 1996).

<u>**CONCLUSION**</u>

Merck's effort to pick through Dr. Zipes' opinions and surgically remove bits and pieces of it is unavailing.  Dr. Zipes' opinions are based on abundant and reliable scientific evidence, most of which Merck did not even challenge.  Even with respect to the bits and pieces of evidence that it did elect to contest, Merck has no proper basis and the evidence and information is not excludable.  Consequently, Merck's motion should be denied.

Dated:  August 21, 2006

Respectfully submitted,

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc    By email only:

Robert Van Kirk            rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski            carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440