UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 <br><br> Section L <br><br> Judge Eldon E. Fallon <br><br> Magistrate Judge Daniel E. Knowles, III |

THIS DOCUMENT RELATES TO:
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR ORDER EXCLUDING EXPERT TESTIMONY THAT SHORT-TERM VIOXX USE INCREASES CARDIOVASCULAR RISK**

(*Defendant's Expert Challenge No. 11*)

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff R. Garry Smith, by and through his undersigned counsel, asks this Court to deny Defendant Merck & Co., Inc.'s ["Merck"] Motion to Exclude expert testimony that short-term Vioxx use increases cardiovascular risk. In support thereof, Plaintiff would show as follows:

**INTRODUCTION**

Ironically, as Merck lawyers continue to brief and Merck spokespeople continue to issue press releases that "stand behind" the Merck concocted theory that only after extended periods (in this instance periods exceeding five months) of Vioxx usage does one experience an increased cardiovascular risk, scientifically reliable, peer-reviewed publications continue to appear that support the fact that increased cardiovascular risk occurs in the first weeks of Vioxx usage. Merck has known short-term Vioxx usage

increases CV risk since the mid 1990's, and since that time it has have flipped, spun, misrepresented, and withheld the data that evidences this fact. In fact, a New Jersey judge overturned a verdict in Merck's favor last week because it had falsely claimed that there were no adverse effects if one took Vioxx for fewer than 18 months. Nevertheless, Merck, true to its course, asks this Court to withhold from the jury scientifically reliable, relevant, and admissible testimony.

## I. LEGAL STANDARD

The Plaintiff does not dispute the Defendant's contention that exposure is a critical concept in toxicology. Defendant submits that plaintiffs in pharmaceutical cases must present evidence that they were "exposed to levels of that agent that are known to cause the kind of harm" they suffered. Memorandum at 3; citing *Wright v. Williamette Indus., Inc.*, 91 F. 3d 1105, 1107 (8th Cir. 1996); *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002).

A court should allow such testimony from an expert if it is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-593 (1993). For the expert's testimony to be reliable, a court must consider the following factors: (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, and (3) the expert must apply the principles and methods reliably to the facts of the case. FED. R. EVID. 702. The court should allow expert testimony relating to increased CV risk with short-term Vioxx use here because this testimony has been subjected to peer review and publication. *See Daubert*, 509 U.S. at 593. Much of this testimony is based on independent evaluations of Merck's ***own*** published, controlled,

randomized clinical trials such as VIGOR and APPROVe, in addition to other scientifically reliable published epidemiological studies.[1]

A court should allow an expert to offer an opinion at trial if it is relevant. FED. R. EVID. 401, 402, 702; *Westberry v. Gislaved Gummi AB*, 178 f. 3D 257, 260 (4th Cir. 1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-593 (1993).  Relevance requires that there be a valid scientific connection to the pertinent inquiry in the case. *Hose v. Chicago Northwestern Transp. Co.*, 70 F. 3d 968, 972 (8th Cir. 1995).  The Court should allow the testimony of Plaintiff's experts on this short-term usage issue, because the evidence supporting the Plaintiff's experts opinions is sufficient to allow a reasonable juror to conclude more likely to be true than false. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002).  Again, Mr. Smith took Vioxx for four and half months.  The VIGOR[2] study, the APPROVe[3] study, the Levesque study[4], and the Ingenix study[5], in addition to others, establish the "scientific connection" between Mr. Smith's heart attack and his Vioxx use and all support the proposition that short-term Vioxx usage such as the Plaintiff's results in increased cardiovascular risk.

Further, Merck's challenges to testimony relating to short term usage only go to the weight and credibility of the expert's testimony, not to the admissibility.  Merck

---

[1] Plaintiff incorporates its response to Merck's motion to Exclude regarding accelerating of atherosclerosis and plaque rupture, filed concurrently with this response.  In it, Plaintiff demonstrates that such studies, along with myriad other documents constitute admissions, which are immune from *Daubert* scrutiny.

[2] *See* Claire Bombardier et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 NEW. ENG. J. MED. 1520 (Nov. 30, 2000).  VIGOR, an acronym, stands for "Vioxx GI Outcomes Research" study, attached as Exhibit A.

[3] *See* Bresalier RS et al., Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial, 352 NEW. ENG. J. MED. 1092 (Mar. 17, 2005), attached as Exhibit B.

[4] See Levesque, L.E., *The Risk for Myocardial Infarction With Cyclooxygenase-2 Inhibitors: A Population Study of Elderly Adults*, ANN. OF INTERN. MED. 2005; 142:481-489, attached as Exhibit C.

[5] Ingenix Epidemiology Report, Cardiovascular Risk of COX-2 Inhibitors and Other NSAIDs, Feb. 16, 2004, attached as Exhibit D.

challenges only an alleged lack of textual authority for expert opinion, which is an improper challenge.  See *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-1043 (2d Cir. 1995).

Finally, the Fifth Circuit has twice held that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration."  *United States v. 14.38 Acres of Land, Mor or Less, Sit in Leflore County, Miss.*, 80 F. 3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F. 2d 420, 422 (5th Cir. 1987).

Plaintiff can, is entitled to, and should not be prohibited from offering testimony supported by published, peer reviewed, scientifically reliable evidence that his short term usage of a 25 mg dosage of Vioxx substantially contributed to his heart attack.

## II. PUBLISHED, PEER REVIEWED, SCIENTIFIC DATA SUPPORTS EXPERT OPINION THAT SHORT TERM VIOXX USAGE INCREASES CARDIOVASCULAR RISK.

Each and every study addressed by Merck in their memorandum to exclude expert opinion testimony, supports the exact same proposition Merck seeks to exclude; short term 25 mg exposure to Vioxx increases cardiovascular risk.   Accordingly, Mr. Smith's experts have a scientifically reliable basis to opine that Vioxx was a cause of his heart attack.   Merck tries in vain to undermine the legion of studies, including many it either conducted itself or sponsored.

### A. Merck's *Own* Controlled Randomized Clinical Trials Support the Fact Short Term Usage Increases Cardiovascular Risk

The "gold standard" for determining the relationship between a drug and a health outcome is the clinical trial. *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 406 (S.D. NY 2001). In such investigations, subjects are assigned randomly to one of two groups: one exposed, and the other not exposed, to the drug of interest. *Id.*

### *The VIGOR study*

The VIGOR trial was a controlled randomized clinical trial designed to evaluate the effect of rofecoxib versus naproxen on the event rate of gastrointestinal disease; Merck investigators examined over 8,000 patients who were randomly assigned one of these drugs. The conclusion of the adjudication of the VIGOR study was that a significant difference was seen in the comparison of stroke, MI, and cardiac death that was unfavorable for rofecoxib vs. naproxen.[6]

Over two years before Mr. Smith would ever take Vioxx, Merck had a conclusive evaluation highlighting of the increased cardiovascular risks associated with short term use of Vioxx in a VIGOR update from Deborah Shapiro to Drs. Alise Reicin, Eliav Barr, and Dennis Erb on July 5, 2005. (*See* Exhibit E.) Further, Figure 1 of the July 5, 2000 document demonstrates a clear separation in the Kaplan-Meier time to event curves for confirmed thromboembolic cardiovascular serious adverse events in VIGOR demonstrating the increased risk of thromboembolic events on Vioxx when compared to Naproxen occurred early in follow up; *less than two months of follow–up time*.[7]

Not only has Dr. Lemuel Moye reached this conclusion, Dr. Richard Kronmal conducted an independent analysis of the occurrence in the VIGOR trial and also

---

[6] Expert Report of Lemule A. Moye, at 40.
[7] *Id.* at 41.

concluded the time to event curve diverged within two months.[8]  Dr. Jerry Avorn also reached a similar conclusion based on the curve separation and VIGOR data.[9]

In the *Evelyn Irvin Plunkett v. Merck* wrongful death case, decedent Dicky Irvin had taken Vioxx for only 22 days prior to his heart attack[10].  Expert pharmacoepidemiologist Dr. Wayne Ray had reached a conclusion similar to that of Drs. Kronmal, Avorn, and Moye, and this Court allowed and permitted him to testify in open court as follows:

> Q:  Do you have an opinion whether Vioxx causes heart attacks in less than 30 days?
>
> A:  Yes.  The evidence that I have reviewed from the clinical trials and the epidemiologic studies shows that it's – to a reasonable degree of certainty, likely to increase heart attacks and serious coronary artery disease in 1 to 30 days.
>
> Q.  Thank you, doctor.  Doctor, how long did it take for heart attack risks to begin in the VIGOR study?
>
> A.  One of the ways we assess that is by looking at what we call cumulative incidence curves, and those are just the curves that show, for a given point in time, how many patients have developed the disease.  When those curves begin to separate, that's when the risk for one drug is – it's at least statistically – we are able to show statistically greater than that for the other drug.  In VIGOR, that happened within two months.[11]

This Court was correct to allow this testimony then because it was relevant and scientifically reliable.  This evidence is even more relevant and reliable today based on subsequent publications discussed below.  This Court should not retreat from the precedent set forth in *Irvin*.

---

[8] Expert report of Richard A. Kronmal, April 8, 2005 report.
[9] Expert report of Jerry Avorn, March 20, 2006 report.
[10] November 29, 2005 transcript, *Evelyn Irvin Plunkett v. Merck,* page 108.
[11] December 1, 2005 testimony of Dr. Wayne Ray, *Evelyn Irvin Plunkett v. Merck,* page 730-731.

Based on the most powerful randomized clinical trial ever conducted on Vioxx, over 8,000 patients strong, numerous experts have reached an almost identical conclusion; short term use of Vioxx results in an increased cardiovascular risk. Contrary to Merck's position, regardless of whether Vioxx was compared to placebo or naproxen, it was a controlled randomized clinical trial in which one group was exposed to Vioxx and the other group wasn't, thus meeting the "gold standard" for determining a relationship between a drug and its health effect. Next, Merck argues that VIGOR is inapplicable because the dosage in VIGOR is higher than that Mr. Smith took. Finally, Merck attempts to preclude VIGOR, only with respect to the short term usage issue, on the basis that Mr. Smith had a different type of arthritis than those participating in the study. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means for Merck to attack this evidence. *Daubert*, 509 U.S. at 596.

In sum, the strength of the VIGOR study alone provides the reliability and relevance basis for admission of testimony that short term usage results in increased cardiovascular risk. But further, even after being forced to disclose the three additional heart attacks they withheld data on in their original publication, which coincidently further evidences an association of CV risk with Vioxx use, Merck still "stands firmly behind" the propriety of the scientific analysis and presentation of data in the VIGOR publication.[12] Given Merck's blind adherence to its original stance with respect to this study, Mr. Smith is entitled to refute Merck positions through its expert testimony

---

[12] *See* attached Exhibit F, February 22, 2006 Press Release, "Merck Stands Firmly Behind The VIGOR Publication"

opining that Merck should have known just *two months* into the VIGOR study there was a significant increase in cardiovascular risk associated with Vioxx.

### *The APPROVe Study*

This controlled randomized trial meeting the "gold standard" for admissibility had 2,586 subjects with colorectal adenomas to 25 mg of Vioxx versus placebo to test the hypothesis that COX-2 inhibition would prevent recurrence of the adenoma or progression to colon cancer. A Merck statistician prepared a Kaplan-Meier graph for this study showing the Vioxx curve above placebo after only three months.[13] Like the VIGOR study, this Court has already set precedent allowing expert testimony that short term usage of Vioxx increases cardiovascular risk based on the APPROVe study. Defense Counsel Philip Beck objected to Zipes's testimony that the APPROVe findings evidenced increased cardiovascular risk from short term Vioxx usage, but the Court correctly overruled that objection.[14] The testimony this Court allowed in the *Barnett* case where short term usage was not near the paramount issue it is in this case is as follows:

> A.  But the importance of the APPROVe trial was that Merck then did a study of 25 milligrams against a sugar pill. So there can't be any argument that there's any benefit from the naproxen…
>
> Q.  Can we go to the next slide? What does that show?
>
> A.  ….Now, the importance if this is as follows: When the APPROVe study was published, Merck said, with their primary endpoint, that there

---

[13] *See* attached Exhibit G, Expert Report of Dougals P. Zipes, May 22, 2006.

[14] *Gerald Barnett v. Merck*, August 8, 2006 trial transcript, at 1633-1634:
  Mr. Beck: And then, Your Honor, the next one (slide) we object to more strongly…we really think that's cumulative.
  Mr. Robinson: This is the Kaplan-Meier curve for APPROVe. We need that in.
  Mr. Beck: Well, it is in.
  Mr. Robinson: No, no…..
  The Court: Some of these things are – he can refer to it. It's just a question of whether or not he's going to be able to go over the same thing and hammer it more and more and more. And that's going to be – I'm not going to allow that. **But to take out something that he can't even look at or can't even mention doesn't seem to be right either.**

was no difference between Vioxx and the sugar pill until patients had taken the drug for 18 months, and that if you took it for less than 18 months, you had no difference. But the investigator-reported results said, "Uh-uh. That's not true." When we report as the investigator that this patient had a heart attack and so on, those curves separate very early. You can see that the rofecoxib or Vioxx curve gets higher than the placebo sugar pill curve very early.

Q.   Is that months on the bottom there?

A.   Yes, the months are on the bottom. So sometimes, four or six months, there is a separation –

Q.  What does this mean if there is a separation?

A. That means that Vioxx, indeed, is causing increased cardiac events, compared with the placebo pill, and it sure didn't take 18 months for it to happen.[15]

Dr. Zipes is not the only expert to reach this opinion when analyzing the APPROVe data. Drs. Avorn, Moye, and Kronmal have all rendered opinions and authored expert reports stating how Merck distorted the data with its 18 month latency theory and have opined that APPROVe makes transparent the cardiovascular risk associated with short term (3 months) 25 mg Vioxx use.

Like Merck's failing to report heart attacks in VIGOR, Merck engaged in similar unethical conduct to mask the cardiovascular risk associated with Vioxx in APPROVe. In APPROVe, Merck employed an "unusual censoring rule" in which events were excluded if they occurred more than 14 days after the drug was stopped. (*See* Exhibit H). Based on the newly released data, statistical analysis shows no evidence of deviation from the proportional hazard over time. (*See* exhibit H).

Merck's position that APPROVe did not associate an increased cardiovascular risk with under five months use of 25mg Vioxx is simply wrong. This scientifically reliable

---

[15] *Gerald Barnett v. Merck*, August 8, 2006 trial transcript, at 1707-1709:

and relevant evidence is admissible for a host of reasons, not the least of which to simply to debunk the Merck concocted 18 month latency theory, show that Merck engaged in a pattern of fraud, misrepresentation, and is admissible to the jury for awarding punitive damages. The court was correct to overrule objections to this testimony on *Barnett*, and should not change its course now.

### B. Epidemiological Studies Support the Fact Short Term Usage Increases Cardiovascular Risk

Merck erroneously seeks to exclude reliable expert testimony that is based on epidemiological studies because the studies allegedly do not meet conclusively establish reliability requirements. The fact that a cause-effect relationship has not been conclusively established does not render an expert's testimony inadmissible. *Ambrosini v. Labarraque*, 2322 U.S. App. D.C. 19 (D.C. Cir. 1996), cert. dismissed, *Upjohn Co. v. Ambrosini,* 520 U.S. 1205 (1997) (reversing district Court's finding that expert testimony was inadmissible because none of the studies relied upon specifically concluded that Depo-Provera caused the type of birth defects suffered by the Plaintiff). Plaintiffs' experts' opining on increased cardiovascular risks associated with short term use of Vioxx have employed the analogical reasoning based on objective, verifiable evidence and scientific methodology that has been subject to peer review and has been published, and the kind traditionally used by experts in their respective fields; this is precisely what *Daubert* requires. *See, e.g., Hopkins v. Dow Corning.*, 33 F.3d 1116, 1125 (9th Cir. 1994) (finding admissible expert testimony of a rheumatologist based on medical records, his clinical experience, preliminary results of an epidemiological study and medical literature).

*The 2004 Juni Epidemiological Study*

The peer reviewed study published in *Lancet* by Peter Juni and colleagues concluded that there is an increased risk of myocardial infarction in both short and long term duration, which is in contrast to Merck's position on APPROVe. (*See* Exhibit I). The findings indicate that patients are at risk even if rofecoxib is taken only for a few months. (*See* Exhibit I). These findings and related expert opinions are obviously relevant to Mr. Smith who took Vioxx for four and a half months; they are reliable because they have been peer reviewed by the most prestigious medical journal in Europe. These results seriously undermine Merck's reassuring statements that there are not excess risks for 18 months. Further, Juni's study also reported no evidence to support the notion that rofecoxib's cardiovascular toxicity is dose dependant. (*See* exhibit I). This study and related opinions are admissible to question the alleged validity of the 18 month theory, and to refute the Merck's position that VIGOR is inapplicable to Mr. Smith's case because he took the regular 25 mg dosage as opposed to the 50 mg used in VIGOR.

### *The 2004 Solomon Epidemiological Study*

The peer reviewed *Circulation* study showing the results of Solomon and colleagues reported rofecoxib use for 1 to 20 days was associated with an elevated risk of AMI (OR, 1.43; 95% CI, 1.12 TO 1.83; P=0.005). (*See* Exhibit J). A similar elevation was associated with 31 to 90 days of rofecoxib use (OR, 1.46; 95% CI, 1.14 to 1.86; P=0.003). The elevated relative risk in patients taking rofecoxib for 90 days or less was not restricted to those taking greater than 25 mg. (*See* Exhibit J). This peer reviewed scientifically reliable and relevant evidence must not be excluded.

### *The 2004 INGENIX Epidemiological Study*

The INGENIX cardiovascular safety study bought and paid for by Merck also confirms there is increased cardiovascular risk with short term Vioxx use. The study confirmed that crude and adjusted rates of MI/ACS (Acute Coronary Syndrome) were higher during periods of current rofecoxib use than periods of other NSAID use, and found that there was no clear trend with time since the onset of use. (RR for rofecoxib 1.51, 95% CI 1.09-1.68). (*See* Exhibit D). Merck seeks to exclude this on the basis that the study did not distinguish between patients who took Vioxx at the 25 mg dosage and those who took it at the 50 mg. However, the Merck's hired scientists, as opposed to their hired lawyers, concluded that dose analyses also did not indicate trends of increasing risk with a higher daily dose of rofecoxib (RR for rofecoxib 25 mg 1.54, 95% CI 1.15-2.04: RR for rofecoxib 26-50 mg 0.81, 95 % CI 0.41-1.60). (*See* Exhibit D). Merck should not be able to pick and choose which if its own studies are presented to the jury.

### *The 2006 Levesque Epidemiological Study*

As Merck notes, the peer reviewed *CMAJ* published results of the Levesque and colleagues reported the risk of an acute MI was highest after fist Vioxx use with events occurring 9 days after the first prescription. (RR 1.67, 95% CI 1.21-2.30) (*See* Exhibit C). The report further concluded that repeated use of rofecoxib was associated with a delayed risk increase. Compared with no use of NSAIDs in the year preceding the index date, the risk for rofecoxib was highest for those having received only one prescription (RR 1.64, 95% CI 1.20-2.23), only slightly lower and still statistically significant for 2-4 months (RR 1.24, 95% CI 0.95-1.61) and 5-8 prescriptions (RR 1.31, 95% CI 0.97-1.76) and did not return to the baseline statistically insignificant risk until after eight

prescriptions.  (*See* Exhibit C).  Mr. Smith never made it until his eighth prescription and never returned to the baseline risk.  These statistically significant scientifically reliable findings need not be excluded from the province of the jury.

### III.    CONCLUSION

Both the controlled randomized clinical trials, VIGOR which enrolled over 8,000 patients, and APPROVe, which enrolled over 2,500, both financed and conducted by Merck, support the fact that there is an increased risk associated with short term usage of Vioxx.  In addition to these studies, there are a number of peer reviewed and published epidemiological studies which support expert testimony to the same effect.  Merck cannot take this scientifically reliable and relevant evidence and pick and choose what can and cannot go to the jury the same way it did with respect to information conveyed to Mr. Smith and Mr. Smith's treaters.  Further, Plaintiffs ask that this Court adhere to the precedent it has set forth in *Irvin* and *Barnett* in allowing testimony that there is an increased risk associated with short term 25 mg use of Vioxx.  For these reasons as well as the reasons articulated in Plaintiff's prior and simultaneous briefing on this subject, Plaintiff requests Court deny Merck's Motion For Order Excluding Expert Testimony That Short Term Vioxx Use Increases Cardiovascular Risk.

Dated: August 21, 2006                                             Respectfully submitted,

|  |  |
|---|---|
|  | /s/Grant Kaiser |
| James L. "Larry" Wright | Grant Kaiser |
| Texas Bar No. 22038500 | Texas Bar No. 11078900 |
| **THE WATTS LAW FIRM LLP** | **THE KAISER FIRM LLP** |
| 111 Congress Avenue, Suite 1010 | 8441 Gulf Freeway, Suite 600 |
| Austin, Texas 78701 | Houston, Texas 77017 |
| (512) 479-0500; fax (512) 473-0328 | (713)-223-0000; fax (713) 223-0440 |
|  | **ATTORNEY IN CHARGE** |

| | |
|---|---|
| Walter Umphrey<br>Texas Bar No. 20380000<br>**PROVOST UMPHREY LAW FIRM LLP**<br>490 Park Street<br>Beaumont, Texas 77701<br>(409) 835-6000; fax (409) 838-8888 | John Eddie Williams, Jr.<br>Texas Bar No. 21600300<br>Amy M. Carter<br>Texas Bar No. 24004580<br>**WILLIAMS BAILEY LAW FIRM LLP**<br>8441 Gulf Freeway, Suite 600<br>Houston, Texas 77017<br>(713) 230-2200; fax (713) 643-6226 |
| Drew Rainer<br>Louisiana Bar No. 8320<br>**RANIER, GAYLE & ELLIOT LLC**<br>1419 Ryan Street<br>Lake Charles, Louisiana 70601<br>(337) 494-7171; fax (337) 494-7218 | Mikal Watts<br>Texas Bar No. 20981820<br>**THE WATTS LAW FIRM LLP**<br>Tower II Building, 14th Floor<br>555 North Carancahua Street<br>Corpus Christi, Texas 78478<br>(361) 887-0500; fax (361) 887-0055 |

**CERTIFICATE OF SERVICE**

   I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of August, 2006.

               /s/ Grant Kaiser
               Grant Kaiser
               **THE KAISER FIRM LLP**
               8441 Gulf Freeway, Suite 600
               Houston, Texas 77017
               (713) 230-0000; fax (713) 230-0440
               gkaiser@thekaiserfirm.com

cc  By email only:

  Robert Van Kirk   rvankirk@wc.com
  **Williams & Connolly LLP**
  725 Twelfth Street Northwest
  Washington, D.C.  20005
  (202) 434-5000; fax (202) 434-5029

  Carrie A. Jablonski  carrie.jablonski@bartlit-beck.com
  **Bartlit, Beck, Herman, Palenchar & Scott LLP**
  54 West Hubbard Street, Suite 300
  Chicago, Illinois 60610
  (312) 494-4400; fax (312) 494-4440