UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

### OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES AND REQUEST FOR EXPEDITED HEARING

Plaintiff seeks an order compelling Merck to produce, or identify by Bates range, documents responsive to Plaintiff's First Set of Case Specific Discovery Requests for Production ("Requests"), to further respond to Plaintiff's First Set of Interrogatories ("Interrogatories"), and for an expedited hearing on the issue.  Plaintiff's requests should be denied.

In July 2006, plaintiff served Merck with nearly 150 discovery requests, including the subject Requests and Interrogatories, that were in large part *general* requests disguised as "case

825361v.1

specific" requests. Merck explained to plaintiff repeatedly that almost everything sought in those requests had already been produced by Merck in the MDL. In the spirit of cooperation, however, Merck asked plaintiff to identify specific areas with which it had concerns, yet plaintiff refused to do so. Instead, and without properly meeting and conferring per Pretrial Order No. 17, plaintiff filed a Motion to Compel.

On August 11, 2006, Merck served its Responses and Objections to Plaintiff's First Set of Case Specific Requests for Production ("Response") and First Set of Interrogatories.[1] Both prior to and after serving its Response, Merck informed plaintiff that he already had responsive materials. Additionally, Merck's Response directed plaintiff to the specific categories – for example, individual custodial files or departmental productions – in Merck's universal production of documents, as well as certain case-specific productions that contained materials responsive to each of plaintiff's requests. Further, Merck agreed to continue working with plaintiff to resolve issues concerning its Responses. Without further discussion, plaintiff filed the instant motion.

Merck has already produced the non-objectionable documents requested by plaintiff. Moreover, those documents were identified with sufficient description and produced in a searchable format. By now requesting that Merck also provide the specific Bates ranges of documents requested, plaintiff is trying to shift the entire burden onto Merck to avoid the most

---

[1] Plaintiff's request for further responses to his Interrogatories is clearly an add-on to this motion, which concerns the production of documents. In any event, the specific Interrogatories referenced by plaintiff require no further response. With respect to Interrogatories 3-5, plaintiff asks argumentative questions and attempts to shift the burden of proof to Merck concerning the cause of plaintiff's alleged heart attack. Merck properly referred plaintiff to the relevant medical records and the opinions of Merck's experts retained and offered in this case. With respect to Interrogatories 21-22, Merck stated that it will produce certain responsive documents subject to the conditions set forth in the Responses. Plaintiff fails to explain the inadequacy of these responses, and is not entitled to anything further from Merck.

825361v.1

basic obligation of reviewing Merck's Response and preparing his own case. Further, ordering a supplemental response would accomplish nothing more than unfairly imposing on Merck the additional task of re-reviewing documents that have already been collected, reviewed, and produced by Merck in this case. Indeed, a substantive review of Merck's productions is a duty that, at this juncture, properly falls to plaintiff in this case. As discussed below, plaintiff's motion should be denied in its entirety.

I.   **FACTUAL BACKGROUND.**

As this Court is well aware, since the inception of this litigation, all general discovery requests and the responses thereto – including Merck's initial production and ongoing supplementation of the MDL Master Discovery Responses – have been subject to oversight by the Court. In fact, on September 29, 2005, during an in-chambers meeting with both representatives of the Plaintiffs' Steering Committee ("PSC") and Merck's counsel, this Court complimented Merck's efforts in preparing and producing Merck's MDL Master Discovery Responses and the documents accompanying it.[2] Since then, Merck has continued to update the documents and explanations on record to further facilitate discovery in pending Vioxx® matters.

On July 11, 2006, plaintiff served Merck with so-called "case-specific" Requests and Interrogatories and, on July 17, 2006, further requested that Merck serve its responses in an expedited fashion. Plaintiff's purported case-specific requests totaled nearly 150 discovery demands, most of which sought materials duplicative of those accompanying the MDL Master Discovery Responses. Nevertheless, Merck served responses on August 11, 2006.

Unsatisfied with Merck's responses – and in lieu of properly meeting and conferring – plaintiff emailed Merck's counsel on August 13, 2006, and informed Merck that he "assume[d]

---

[2] In the Summer of 2005, the PSC served a set of generic discovery requests relating to all MDL *In re: Vioxx Product Liability Litigation* matters ("MDL Master Discovery Requests"). Merck's MDL Master Discovery Response responded to those requests.

that Merck will not voluntarily produce what [plaintiff] [] requested" and, thus, considered his email to constitute the entire meet-and-confer process unless otherwise informed that Merck was "serious about producing at least some of what [plaintiff] requested." (*See* Email Correspondence between C. Jablonski and G. Kaiser, attached hereto as Ex. A.) In response, Merck's counsel informed plaintiff that most of the documents requested would likely be duplicative of the MDL Master Discovery Responses. In the spirit of cooperation, however, Merck engaged in further discussions with plaintiff in an attempt to narrow the requests and to respond as quickly as possible to plaintiff's numerous demands. (*See id.*) Unwilling to seriously address Merck's efforts to obtain more specific discovery requests, or to expend any effort to review Merck's Response and the MDL Master Discovery Responses (and its accompanying production of documents), plaintiff filed the instant motion.

II.   **MERCK HAS ADEQUATELY RESPONDED TO PLAINTIFF'S CASE-SPECIFIC REQUEST.**

Rule 34(b) of the Federal Rules of Civil Procedure requires that "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." The purpose of this Rule is "to prevent parties from 'deli[b]erately . . . mix[ing] critical documents with others in the hope of obscuring significance.'" *Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.*, No. 85 Civ. 5399-CSH, 1987 U.S. Dist. LEXIS 868, at *4 (S.D.N.Y. Feb. 9, 1987) (internal citations omitted). Merck's Responses are proper and further the purpose of Rule 34.

A.   **Merck Has Already Provided Plaintiff With The Documents Responsive To Plaintiff's Request.**

Plaintiff served Merck with nearly 150 discovery requests. Although plaintiff titled the requests "case-specific," most of the requests have no connection to the *Smith* case at all. With the exception of certain custodial files for professional representatives, which are subject to

negotiation among the parties, plaintiff already possesses all of the non-objectionable documents and data sought in the Requests. Accordingly, plaintiff's request for additional documents is moot.

All documents responsive to plaintiff's Requests were disclosed in either Merck's production of documents accompanying its MDL Master Discovery Responses or in Merck's subsequent productions of case-specific materials in this case, including its productions of data from the Field Activity and Customer Tracking System ("FACTS") database and the Merck Profile Form ("MPF") in this case. As explained to plaintiff on numerous occasions, Merck has *no* new documents responsive to the Requests.[3] Merck cannot reasonably be expected to reproduce to every individual plaintiff a subset of specific documents it has already produced in the MDL. Indeed, those productions were made universally to the PSC to obviate the need for reproduction to plaintiffs' counsel of record or trial counsel in individual cases.

### B. Merck's Document Production Is Sufficient Under Rule 34 And Is Not Properly Subject To Plaintiff's Motion To Compel Under Rule 37.

Plaintiff also asks Merck to identify by Bates range where the documents responsive to each of his requests are located in Merck's prior universal productions to PSC. This request, too, should be denied.

*First*, Merck's MDL Master Discovery Responses contain the very identifying information requested by plaintiff in this case – namely, an individual breakdown of Merck's numerous custodial, departmental, and other productions identified by specific Bates number, which, in turn, correspond to the specific areas of discovery sought in the PSC's requests. Such

---

[3] No additional responsive documents exist except for a set of limited documents from the sales representative custodial files. Counsel have agreed that Merck will produce certain sales representatives for deposition and that further discussions regarding those documents will take place, if necessary, following those depositions.

information is more than sufficient to enable plaintiff to locate the information plaintiff now seeks in his Requests.

*Second*, rather than simply a "dump" of unusable material, the production accompanying Merck's MDL Master Discovery Responses were purposefully crafted in such a way as to facilitate plaintiffs' identification and retrieval of particular documents. The production is fully searchable and the documents contained therein are divided into specific categories that are easily identified by Bates range and provide a sufficient description. Merck has also taken steps to update the MDL Master Discovery Responses as additional non-objectionable responsive documents and data are discovered and produced in the national litigation. Further, since the MDL Master Discovery Responses were first served on September 15, 2005, Merck has produced an "objective coding report" each month that identifies the relevant Bates ranges for all productions to date, including supplemental productions of documents and data made to the PSC since the initial production accompanying the MDL Master Discovery Responses. In short, because plaintiff already has, or has access to, all of the requested materials, providing Bates ranges for the documents requested will accomplish nothing other than imposing an undue and unfair additional burden on Merck.

### C. Plaintiff Cites To Cases That Further Demonstrate The Adequacy Of Merck's Response.

In support of the instant motion, plaintiff relies on several readily distinguishable cases. In each of the cases cited, the defendant produced a hodgepodge of unmanageable, unsearchable, and voluminous documents. Under those circumstances, none of which exist here, the courts found that a supplemental response was warranted. For example, in *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611 (D. Kan. 2005), the issue was whether defendant could avoid providing *any* identifying information about 18,000 documents that it produced in nine

825361v.1

disorganized bankers boxes on the basis that the documents were produced in the form they were kept in the regular course of business. 230 F.R.D. at 618. The Court held that "a party who chooses the *Rule 34(b)* option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner" and added that "merely categorizing the documents . . . without some further explanation, [does not] satisfy the requirement that they be produced as kept in the usual course of business." *Id*.

Similarly, in *In re Urethane Antitrust Litig.*, No. 04-md-1616-JWL-DJW, 2006 U.S. Dist. LEXIS 16848 (D. Kan. Mar. 31, 2006), plaintiff sought information about certain transactional data that was critical to plaintiff's case, and which the plaintiff contended the defendant had failed to provide. 2006 U.S. Dist. LEXIS at *5. Defendant countered that the information could be found "in data and documents already produced in this litigation," without providing any further indication of where the data could be found. *Id*. at *11. Given those circumstances, the court found that defendant's disclosure was inadequate. *Id*. at *12.

By the Court's own recognition of Merck's MDL Master Discovery Responses, this case is unlike those cited by plaintiff. Here, Merck has provided the general terms and categories of information for all documents produced. Clearly Merck has provided sufficient information for plaintiff to identify the documents responsive to each so-called "case-specific" question plaintiff asked; plaintiff simply does not want to make *any* effort to locate that information. Because this is an inadequate basis for requiring Merck to undertake a manifestly pointless additional burden, plaintiff's motion should be denied.

### III. MERCK SHOULD NOT BE BURDENED WITH IDENTIFYING FOR PLAINTIFF EACH AND EVERY DOCUMENT MERCK BELIEVES IS RESPONSIVE TO PLAINTIFF'S SPECIFIC QUESTIONS.

Plaintiff asserts that Merck should bear the burden of locating and identifying for plaintiff documents responsive to plaintiff's Requests. Plaintiff relies on *In re Sulfuric Acid Antitrust*

*Litig.*, 231 F.R.D. 351 (N.D. Ill. 2005), for this claim. Again, plaintiff's reliance on that case is misplaced. *In re Sulfuric Acid* considered whether a defendant could avoid producing identifying information, or *any* explanation of the documents disclosed, on the basis that the documents were produced as they were kept in the regular course of business. 231 F.R.D. at 362. The Court found that, where defendant's file consisted of 350 boxes of responsive documents that had been "'transferred to storage' where they were no longer kept in any particular order, and where they remained until this litigation[,]" it was not unduly burdensome to have the defendants re-review the documents and provide additional information about the response. *Id*. Those facts simply do not apply to the *Smith* case.

Unlike the defendant in *In re Sulfuric Acid*, Merck has aided rather than impeded discovery. First, Merck provided detailed discovery responses in accordance with this Court's pre-trial orders. Second, Merck re-reviewed all of its documents to determine whether any additional case-specific information should be produced. Third, Merck expressed its willingness to work further with plaintiff to identify which documents plaintiff was unable to locate. Compelling Merck to do more than this is unnecessary and would be patently unfair to Merck in this litigation. For this additional reason, plaintiff's motion should be denied.

IV.   CONCLUSION.

Because there are no more non-objectionable responsive documents to produce to plaintiff, because plaintiff has had access to almost every single document responsive to plaintiff's Requests since long before this discovery dispute arose, and because Merck has complied with the Federal Rules of Civil Procedure and this Court's prior orders governing discovery and the production of responsive documents in this litigation, plaintiff's motion should be denied in its entirety.

| | |
|---|---|
| Dated: August 23, 2006 | Respectfully submitted,<br><br>*/s/ Dorothy H. Wimberly*<br>Phillip A. Wittmann, 13625<br>Dorothy H. Wimberly, 18509<br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, Louisiana  70130<br>Phone:  504-581-3200<br>Fax:     504-581-3361<br><br>Defendants' Liaison Counsel<br><br>Philip S. Beck<br>Andrew Goldman<br>Carrie A. Jablonski<br>BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP<br>54 West Hubbard Street, Suite 300<br>Chicago, Illinois  60610<br>Phone: 312-494-4400<br>Fax:    312-494-4440<br><br>Brian Currey<br>Catalina J. Vergara<br>Ashley A. Harrington<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Phone: 213-430-6000<br>Fax:    213-430-6407<br><br>And<br><br>Douglas R. Marvin<br>Robert A. Van Kirk<br>Emily Thacher-Renshaw<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C.  20005<br>Phone: 202-434-5000<br>Fax:    202-434-5029<br><br>Attorneys for Merck & Co., Inc. |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of Merck to Plaintiff's Motion to Compel Discovery Responses and Request for Expedited Hearing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 23rd day of August, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

825361v.1