UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
|---|---|
| | Section L |
| | Judge Eldon E. Fallon |
| | Magistrate Judge Daniel E. Knowles, III |

THIS DOCUMENT RELATES TO:
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF, OR REFERENCE TO, MARKETING AND PROMOTIONAL MATERIAL UNRELATED TO MR. SMITH OF HIS PRESCRIBING PHYSICIAN DR. MICHAEL GREFER**

(Plaintiff's Opposition to Defendant's Motion in Limine No. 3)

Plaintiff R. Gary Smith urges the Court to deny Defendant Merck & Co.'s motion seeking to exclude evidence relating to Merck's marketing and over promotion of Vioxx.

**INTRODUCTION**

Merck designed and initiated a marketing campaign that impacted physicians and consumers both directly and indirectly. Merck spent hundreds of millions of dollars assuring the medical community and the public that Vioxx was safe, while simultaneously minimizing concerns and negative data relevant to its cardiovascular risks. In doing so, Merck created widespread awareness of the drug in the medical community and among the public as well as knowledge of the characteristics in its advertising.

1

At the outset, Plaintiff notes that Merck's scattershot attempt to exclude broad categories of evidence in this case is entirely misplaced and inappropriate. Basically, Merck has requested that the Court improperly exclude large categories of relevant and probative evidence. This is not the purpose of the *in limine* motion. See *United States v. Posner*, 594 F. Supp. 923, 927-28 (S.D. Fla. 1984) (denying motion *in limine* as premature where court could not make a determination as to the admissibility of the evidence prior to knowing whether the witness would testify at trial); *Violette v. Armonk Assoc., L.P.*, 849 F. Supp. 923, 930-31 (S.D.N.Y. 1994) (denying plaintiff's *in limine* motion without prejudice to its renewal on the grounds that the circumstances under which evidence would be introduced were unknown.

The Fifth Circuit has noted: "{w}hen evidence is challenged solely on the ground that is irrelevant, it is inadmissible only if it fails to meet the definition of Rule 401–it must be without probative value as to any fact of consequence to the determination of the action. If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402." *See Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D. La. 1993).

Merck wants this case to be tried in a vacuum; not because the evidence in questions is not relevant, but precisely because it is probative of Merck's multi-million dollar efforts to foist a dangerous drug onto the market at the expense of patient safety, including the safety of Mr. Smith. Granting Merck's motion would run afoul of federal law disfavoring orders *in limine*, while denying Plaintiff' the opportunity to present relevant evidence to his claims under Kentucky law.

### I.   MERCK'S MARKETING SCHEME FOR VIOXX

In addition to other claims, Plaintiff asserts that Merck failed to adequately warn (and in so doing, affirmatively misled) consumers, physicians and other members of the medical

2

community regarding the safety and efficacy fo Vioxx.  This goal was accomplished chiefly in two ways.  First, Merck spent millions of dollars on direct-to-consumer advertising to generate a "buzz" about Vioxx and to insure that patients would request Vioxx prescriptions from their physicians.

Second, Merck promoted the drug directly to physicians.  This campaign was fought on three fronts.  On one front, Merck sought out highly respected physicians–-who had influence in the medical community and with the FDA-–to advocate the drug as part of its medical education program.  On another front, Merck sought to use the financial gain and prestige associated with its medical programs, to influence individual physicians' opinions and prescribing habits with respect to the drug.  Finally, Merck disseminated misleading sales and promotional material—including its product labeling and product information circulars—directly to individual physicians.

Inherent to this scheme is the understanding that physicians do not develop their opinions about the safety and efficacy of drugs in a vacuum.  Although information received directly from manufacturer's labeling, promotional, and educational programs are clearly factors, physicians also rely on a dialogue and an exchange of ideas and experience with other doctors to formulate their opinions about a particular drug.  Merck understood this and relied upon their knowledge to develop their marketing scheme.

In its motion, Merck makes much of the fact that Dr. Grefer remember relying on Merck's promotional material.  Dr. Grefer did rely on other physicians in the medical community for information.  Merck understood this and relied upon this knowledge to develop their marketing scheme.  Just because Dr. Grefer was not a direct recipient of these marketing tactics does not mean he was not affected by other who were.

With respect to sales and promotional materials used by Merck detailers or that were disseminated directly to physicians, Merck's approach to dealing with individual physicians was uniform. The information provided to all physicians—whether national thought leaders or local doctors—and Merck's attempts to influence opinions and prescribing habits of individual physicians, are central to Merck's overall scheme to inform and control the dialogue in the medical community about the cardiovascular safety of Vioxx. Evidence relating to this marketing plan is central to Plaintiff's allegations; particularly his failure to warn claims.

## II. THE SPECIFIC DOCUMENTS MERCK SEEKS TO EXCLUDE ARE RELEVANT

Each of these specific categories of evidentiary items is relevant and probative of Plaintiff's case and should be admitted at trial. Plaintiff treats each category in turn.

### A. Internal Marketing Communications

Merck here again suggests that because Dr. Grefer was never exposed to these communications, they are necessarily irrelevant. Merck suggest that these material are "perfectly innocuous" but that they will be mischaracterized by plaintiff's counsel. The *jury* should decide whether these documents are innocuous or whether they are (as indeed they are) probative of Merck's reckless approach to the promotion of Vioxx despite its knowledge of the drug's dangers. The evidence speaks for itself.

The specific documents at issue include: (1) a memo in which Merck executive Susan Baumgartner identified physicians Merck should "neutralize" with respect to the CV risks of Vioxx as well as "related communications";[3] (2) a memo in which key Vioxx player David

---

[3] Merck's suggestion that "neutralizing" physicians involved Merck's altruistic efforts to "share reliable, accurate data: with them and bring them to a 'more balanced position' is at best disingenuous." (Def. Motion at 7).

Anstice sought to "rally the troops" at Vioxx's market launch (P1.0140; (3) a memo from Louis Sherwood to David Anstice pertaining to Merck's widely-publicized efforts to intimidate academics who dared to publicly suggest the cardiovascular risks of Vioxx; and (4) a detailed memo from Ms. Baumgartner to Louis Sherwood that serves as a virtual dossier on Gurikpal Singh, M.D., a doctor critical of Merck's approach to the cardiovascular problems associated with Vioxx.

As with the marketing materials discussed generally above, these specific documents are relevant first as a backdrop—corporate character and "state of mind" evidence (and Merck's "state of mind" undisputedly is at issue with respect to plaintiff's negligence and fraud-bases claims.) More specifically these are core documents revealing Merck's reaction to any suggestion that Vioxx carried cardiovascular risks. As such, the documents serve a number of relevant purposes. First they suggest the existence of CV ricks (for why would Merck fo the such lengths to thwart discussion of a non-existing concern?). They release Merck's knowledge of those CV risks by virtue of its attempts to thwart all discussion of the subject. And the communications reveals Merck's highest-level corporate policy of callous, reckless, fraudulent, and grossly negligent efforts to cover up the known CV ricks. And to the extent these efforts succeeded, they are relevant to demonstrating why Dr. Schrimer (as well as the medical community at large and general consumer population) knew little or nothing of the CV risks associates with Vioxx. Dr. Schirmer testified in his deposition that he was not aware of cardiovascular risks associates with Vioxx. (Dep. of Christopher Grefer at 71, 75.)

      **B.**    **Internal Training Materials**

This section addresses a few specific materials used to train Merck drug representatives. As with the documents discussed in the preceding section, Merck asks this Court to declare that

the documents have only one possible interpretation—that offered by Merck—and that the documents are irrelevant as interpreted. But it is the function of a jury to interpret the significance of documentary evidence unless Merck can establish that under any possible interpretation the documents are irrelevant or so prejudicial that their relevance is nullified. Merck has not-and can not-make such a showing.

The specific documents Merck seeks to exclude are: (1) a presentation made to Merck's sales near the time of Mr. Smith's ingestion of Vioxx; (2) documents pertaining to the "Dodge Ball" training game (P1.0007); (3) a bulletin forbidding drug reps to pro-actively discuss press coverage regarding the CV risks of Vioxx (P1.0061; and (4) a "generic sales technique" training manual. (P1.0062)

These documents demonstrate the uniformity of Merck's message to the medical community, the emphasis 0laced upon and sophistication of its delivery system, and specific techniques that sales representatives were trained to employ in order to keep "on message." The bulletin, for example, reveals Merck's favored method of "obstacle handling"—a euphemism for avoiding tough questions posed by prescribing physicians while returning to Merck's "core message" of efficacy. This particular bulletin addresses CV safety concerns in the wake of the VIGOE study. Fully aware that the study would raise concerns about CV safety, Merck chose to downplay those concerns and this bulletin spells out exactly how its reps were to handle "obstacles" to sales such as <u>safety</u> issues raised by doctors.

The "Dodge Ball" training technique was a variation on this theme, instructing sales reps in how best to skirt safety issues while emphasizing efficacy. Likewise, the training manual is probative by the very fact that it is, in Merck's words, "generic." Merck demanded absolute obedience to its technique and messages.

6

In short, Merck chose to handle the CV safety concerns about Vioxx in this way. These and other documents addressed in Merck's motion and this response portray a profit-driven company willfully ignorant of obvious safety concerns.

### C. Promotional Materials

This section addresses yet another collection of marketing-related documents that Merck alleges has no connection to this case. As elsewhere in its motion, Merck essentially demands that the Court adopt its myopic view of the documents and them agree with Merck that they could have no bearing on a jury's consideration of what Merck knew or how it reacted to that knowledge.

Specifically, Merck seeks to exclude: (1) three internal marketing communications, and (2) two internal documents "suggesting responses to questions posed by doctors" in the field. The first marketing document, portrays, as for the other marketing materials discussed throughout this response, Merck's corporate focus in the face of known CV ricks attending Vioxx use. The document is a management committee briefing that depicts market "opportunities" based upon Vioxx's efficacy, while treating CV risks as a "threat" to sales, suggesting that Merck must "break {the} link to CV outcomes." In addition to demonstrating Merck's sophistication (suggesting its ability to learn of, and then manipulate the perception of, CV risks), this document, like so many others, proves that at its highest echelons, Merck was actually aware of CV rick, perceived it as more of a threat to profits than to patient safety, and acted accordingly to minimize perceptions of the risk.

Contrary to Merck's charitable characterization of the exercise, it does not "suggest" responses to physicians; it directs sales reps on specifically how they are to answer anticipates

7

questions by physicians, including directly relevant and misleading admonitions such as "VIOXX has no effect on platelet aggregation."

Again, in addition to providing general context for the jury, these materials not only demonstrate Merck's overarching principle of "sales over safety" but they specifically target the central issue in this action: the cardiovascular risks associated with Vioxx ingestion. Merck argues that such materials are irrelevant because "there is no evidence that Dr. Grefer ever saw them, "but that misses entirely the purposes discussed throughout this response. The promotional and marketing materials are relevant.

### III.    All Evidence is Relevant to Plaintiff's Claim for Punitive Damages

Plaintiff, R. Garry Smith, seeks punitive damages in this action. Rather than inform the medical community and those ingesting the drug, Merck taught their sales representatives how to "dodge" questions regarding cardiovascular risks, spent millions in direct-to-consumer advertising, all the while never warning those who might be injured by the drug. The marketing documents at issue in this motion are evidence that Merck intentionally took steps to cover up danger associated with Vioxx in order to continue marketing it.

### V.    Marketing and Promotional Evidence Should Not Be excluded Under Rule 403

Merck's alternative argument, that this marketing evidence should be excluded under Rule 403, should also be rejected. Virtually all evidence is prejudicial or is not material. The prejudicial must be "unfair." *Dollar v. Long Manufacturing, N.C., Inc.,* 561 F.2d 613, 618 (5th Cir. 1977). Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest (a) decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the advisory Committee on Proposed Federal Rules of Evidence, Rule 403 at 102. Just

because the evidence is damaging or prejudicial to Defendant's case does not mean that the evidence should be excluded.  *United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979).

In relevant part, Federal Rule of Evidence 403 directs that relevant evidence is inadmissible if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of issues, misleading of jury, or needless presentation of cumulative evidence.  FED. R. EVID. 403.  The careful use of "substantially" demonstrated the emphasis placed on this balancing test, and "Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence."  *United States v. Ross,* 33 F.3d 1507, 1524 (11th Cir. 1994).  Moreover, slight prejudice is insufficient to warrant granting a motion *in limine*.  *Gross v. Black & Decker (U.S.), Inc.,* 695 F.2d 858, 863 (5th Cir. 1983) (quoting, *United Stated v. Hearod,* 499 F.2d 1003 (5th Cir. 1974)).  Given this weight, it is difficult to make a pre-trial determination on these evidentiary issues without a substantive background.  *See Hines v. Consolidated Railroad Corporation,* 926 F 2d 262, 274 (3d Cir. 1991) ("Excluding evidence under Fed. R. Evid. 403 at the pretrial stage is an extreme measure.").

Plaintiff asserts that evidence of marketing is admissible under Rule 403.  It is premature to determine the importance of much of the evidence Merck seeks to exclude in this motion *in limine*.

## CONCLUSION

Merck targets a handful of "smoking gun" documents with dubious arguments that because neither Mr. smith nor Dr. Grefer ever saw the documents, they could not be relevant for any purpose.  As demonstrated above, these internal communications, marketing and promotional materials are relevant not only as general contextual evidence but for the jury's consideration of what Merck knew or should have known regarding CV risks, how it reacted to

that knowledge, and whether that response is a basis for liability, including punitive damages. The evidence goes to Merck's state of mind, its corporate indifference to patient safety, its predisposition to seek profits even at the risk of patient health, and the necessity for punitive damages. Merck's motion should be denied in its entirety.

Dated: August 14, 2006

                                                                                                   Respectfully submitted,

| | |
|---|---|
| Drew Ranier<br>Louisiana Bar No. 8320<br>**RANIER, GAYLE & ELLIOT LLC**<br>1419 Ryan Street<br>Lake Charles, Louisiana 70601<br>(337) 494-7171; fax (337) 494-7218 | /s/ Grant Kaiser<br>Grant Kaiser<br>Texas Bar No. 11078900<br>**THE KAISER FIRM LLP**<br>8441 Gulf Freeway, Suite 600<br>Houston, Texas 77017<br>(713) 223-0000; fax (713) 223-0440 |
| Walter Umphrey<br>Texas Bar No. 20380000<br>**PROVOST UMPHREY LAW FIRM LLP**<br>490 Park Street<br>Beaumont, Texas 77701<br>(409) 835-6000; fax (409) 838-8888 | Mikal Watts<br>Texas Bar No. 20981820<br>**THE WATTS LAW FIRM LLP**<br>Tower II Building, 14th Floor<br>555 North Carancahua Street<br>Corpus Christi, Texas 78478<br>(361) 887-0500; fax (361) 887-0055 |
| James L. "Larry" Wright<br>Texas Bar No. 22038500<br>**THE WATTS LAW FIRM LLP**<br>111 Congress Avenue, Suite 1010<br>Austin, Texas 78701<br>(512) 479-0500; fax (512) 473-0328 | John Eddie Williams, Jr.<br>Texas Bar No. 21600300<br>Jim Doyle<br>Texas Bar No.6094450<br>**WILLIAMS BAILEY LAW FIRM LLP**<br>8441 Gulf Freeway, Suite 600<br>Houston, Texas 77017<br>(713) 230-2200; fax (713) 643-6226 |

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of August, 2006.

      /s/ Grant Kaiser
      Grant Kaiser
      **THE KAISER FIRM LLP**
      8441 Gulf Freeway, Suite 600
      Houston, Texas 77017
      (713) 230-0000; fax (713) 230-0440
      gkaiser@thekaiserfirm.com

cc    By email only:

      Robert Van Kirk      rvankirk@wc.com
      **Williams & Connolly LLP**
      725 Twelfth Street Northwest
      Washington, D.C. 20005
      (202) 434-5000; fax (202) 434-5029

      Carrie A. Jablonski      carrie.jablonski@bartlit-beck.com
      **Bartlit, Beck, Herman, Palenchar & Scott LLP**
      54 West Hubbard Street, Suite 300
      Chicago, Illinois 60610
      (312) 494-4400; fax (312) 494-4440