## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX PRODUCTS | : | |
|         LIABILITY LITIGATION | : | MDL Docket NO. 1657 |
| | : | |
| | : | SECTION L |
| | : | |
| This Motion Relates to All | : | |
| Individual Cases | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

### PLAINTIFFS' STEERING COMMITTEE'S
### MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL THE PRODUCTION OF
### MERCK PROFILE FORMS ("MPF"),
### SUPPLEMENTAL MPFs AND FOR AN ORDER
### COMPELLING MERCK TO CEASE AND DESIST
### DELAYING THE PRODUCTION OF MPFs
### BASED ON UNWARRANTED GROUNDS

**MAY IT PLEASE THE COURT:**

There is currently an extensive backlog of overdue MPFs; a backlog that grows worse every day and that will be greatly magnified after September 30, 2006. The time to resolve this issue has arrived. A growing and extensive backlog of overdue MPFs will only get worse if Merck is not compelled to immediately produce all overdue MPFs and stop delaying the production of MPFs moving forward based on underwarranted grounds. Moreover, the MPFs that Merck is producing are deficient and are blatantly in violation of Pre-Trial Order ("PTO") 18(C).

Since May, 2006, the parties have met and conferred numerous times, both in person and by phone, to address these issues. The Court, unfortunately, seems to be the only means of resolution. Therefore, the PSC respectfully requests that the Court compel Merck to meet its discovery obligations under PTO18(C) by:

    1)        producing *all* outstanding and overdue MPFs immediately; and,

2)      ceasing and desisting its delay of the production of MPFs in the future.

Merck has consistently, since the implementation of PTO 18 which was entered on August

4, 2005,[1] refused to produce MPFs claiming that PPFs were inadequate in providing "Core

Criteria."[2] The "Core Criteria" condition created by Merck for MPF production is a requirement

to assist Merck in locating information within its computer systems that Merck claims is necessary

in order for Merck to complete an MPF.   The "Core Criteria" was not embodied in any PTO until

recently, when it was added to PTO 18(C), as an accommodation to Merck.[3]  Unfortunately, thus

far the practice of Merck and their strategy is to apply the most unreasonable criteria to evaluate

whether an adequate "Core Criteria" response has been provided.  This has not changed since PTO

18(C) was entered.  Merck uses this strategy to improperly delay the production of MPFs, which in

---

[1] Subsequently modified in PTO 18(A) on August 16, 2005 and again in PTO 18(B) on
September 14, 2005 and PTO 18(C) on June 23, 2006.

[2] According to Merck, the "Core Criteria" needed to process an MPF, includes:

    (1)      Type of injury (cardiovascular cases relating to ischemic stroke,
        myocardial infarction & death);
    (2)      Date (month and year) of Plaintiff's injury;
    (3)      Full name of person who used Vioxx;
    (4)      Maiden or other names of persons who used Vioxx;
    (5)      Full address of person who used Vioxx;
    (6)      Full name and full address of prescriber (including suite number,
        of any); and,
    (7)      Full name and full address of sample provider (including suite
        number, if any).

(Exhibit "1" is a copy of PTO 18(C)).

[3] Merck may quibble that inclusion of "Core Criteria" was not an accommodation by the PSC,
however "Core Criteria" is not the creation of the PSC but rather of Merck's lawyers.  While not
officially embodied in any PTO until 18(c),  Merck coined the phrase "Core Criteria" to describe  the
information it needed to assist it in locating information within its computer systems.  Indeed, "Core
Criteria" was used by Merck long before PTO 18(c) but the inclusion of it in PTO 18(c) was something
that Merck wanted, and the PSC agreed to in order to accommodate Merck, based upon representations
from Merck and in the hope that its inclusion would resolve the problem as set forth in this motion.

turn delays the pre-remand preparation of the cases in this MDL.

## A.    MERCK'S DISCOVERY OBLIGATIONS TO PRODUCE AN MPF PURSUANT TO PTO 18(C)

PTO 18(C)(3) requires "Plaintiffs in individual cardiovascular event[4] cases . . . shall provide complete and verified PPFs, signed and dated Authorizations, and all responsive documents within seventy-five (75) days of their transfer order or date on which they are filed in this proceeding." PTO 18(C)(14) mandates that "Merck will serve upon plaintiffs' counsel of record, as identified in the PPF, a hard-copy of a complete and verified MPF from. . . . in all cardiovascular event cases. . . ." Furthermore, PTO 18(C)(17) orders that Merck shall provide a complete and verified MPF ninety (90) days after its receipt of a complete PPF which contains Core Criteria.  Merck has failed to comply with PTO 18(C), and its predecessors, and has used the "Core Criteria" pre-condition as a tool to delay the production of MPFs.

## B.    BAD-FAITH BEHAVIOR - MERCK'S BLATANT REFUSAL TO LIVE-UP TO ITS DISCOVERY OBLIGATIONS AND ITS PROMISES TO RESOLVE THIS DISPUTE AND CLEAN-UP THE BACKLOG OF OVERDUE MPFs

The PSC has received an avalanche of complaints from Plaintiffs' lawyers around the country about Merck's refusal to produce MPFs based on alleged deficiencies such as those that are the subject of this motion. Merck has refused to produce MPFs claiming that PPFs were inadequate in providing "Core Criteria." As an example, in an individual case involving plaintiff, Bonnie Engle,[5] Merck simply refused to produce an MPF even after plaintiff's counsel advised Merck that

---

[4] PTO 18(C)'s Preamble defines a cardiovascular event as a case "in which plaintiffs claim to have sustained a myocardial infarction, an ischemic stroke, or a death."  Merck has agreed to broaden its interpretation of this definition.

[5] *Engle v. Merck*, 2006-cv-06731.

the claimed deficiency was meritless.[6] In this particular case, Merck has refused to produce an MPF because Wallace Engle, responding to the Plaintiff Profile Form ("PPF") for his severely disabled mother, has allegedly failed to state his mother's injury. The PPF asks "**What is your understanding of the bodily injury you claim resulted from your use of VIOXX?**" Mr. Engle answered that his mother suffered from a Vioxx induced:

       **"Stroke, Multiple ischemic attacks, heart attack, congestive heart failure."**

(Exhibit "2" designated as "Confidential").

       Notwithstanding this clear PPF response, the Engle's attorney, like hundreds of plaintiff's lawyers, received a letter advising that Merck would not produce an MPF because such an answer was "deficient."(Exhibit "3"). The Engle's counsel contacted Merck's attorney, Dechert LLP and explained that the answer was more than adequate. (Exhibit "4"). Unpersuaded Merck still refuses to produce an MPF. This is not a single isolated instance.

       Remarkably, the "deficiency letter" sent by Merck in the *Engle* case was faxed, on June 13, 2006, two weeks *after* the PSC and Merck's counsel met and conferred and *after* Merck agreed that such problems would no longer occur and then again on June 26, 2006, sent yet another letter refusing to produce the MPF.(Exhibits "3" and "5").

       Mrs. Engle's case is but one of a very large number of cases where Merck has unreasonably refused to produce an MPF on such grounds. As set forth in Appendix A, Merck continues to refuse to produce MPFs on specious grounds including:

       •      that Lexis-Nexis service was not accomplished, when it was;

---

[6] The PSC does not deny that some of Merck's complaints about PPF deficiencies were valid. With over 5000 plaintiffs, there are bound to be some inadequate PPFs and the PSC has taken steps to communicate the need to provide adequate responses in the PPF or not to expect a timely MPF. However, the number of truly deficient PPFs is far less than Merck will claims.

- that the injury suffered was not provided, when it was;

- that prescribing or sample providing physicians names and address were not provided, when they were;

- where plaintiffs (including male plaintiffs) have left blank the question relating to maiden or other name; and,

- the date of injury was not provided, when it was.

Repeatedly, the PSC has reached out to Merck in good-faith to resolve the issues, including accommodating Merck by adding "Core Criteria" to PTO 18(C). The parties met numerous times, exchanged numerous documents and letters, and had many phone calls, in an attempt to address the sufficiency of Merck's responses. While some issues were resolved, the disputes set forth in this motion remain and require Court intervention.

Following the May, 2006 status conference, the parties agreed to meet at Dechert in Philadelphia on June 2, 2006 at which time the parties would discuss "example" cases. Merck was to identify PPFs that were inadequate. The PSC was to identify PPFs in which Plaintiffs disagreed with Merck's claimed deficiency.

On June 2, 2006, the parties met, conferred and both sides agreed on a number of measures to resolve a number of issues related to the exchange of PPFs and MPFs. During the meeting, the PSC representative explained to Merck's counsel various problems that were being encountered by plaintiffs' counsel throughout the country in completing PPFs. Merck agreed to review the request it had made in PPFs for "Core Criteria" and re-evaluate the claimed deficiencies. It was understood that additional MPFs would be forthcoming.

The parties again discussed the alleged PPF/Core Criteria deficiencies in the "example case" of *LaChance v. Merck*, 2:05-cv-05384; *Krieg v. Merck*, 2:04-cv-023586 and others. Merck agreed to produce MPFs in each of these cases. Nevertheless, instead doing so, a mere eleven (11) days

later, Merck sent yet another "deficiency letter" advising that an MPF would not be produced in these cases. (Exhibit "6"). Plaintiff's counsel responded to Merck by E-mail but Merck still refused to produce an MPF.

The parties discussed these issues before the status conference on June 28, 2006, following the conference and in numerous calls leading up to the submission of PTO 18(C) to the Court. Repeatedly, Merck assured that additional MPFs would be forthcoming. Merck assured that it would not so strictly impose the "Core Criteria" as it had done in those cases to delay production of MPFs. This motion[7] is necessary because Merck's assurances have not been realized.[8]

Not only did Merck refuse to produce an MPF in *LaChance* and eleven (11) days after it had agreed to do so, but on the same day, June 13, 2006 Mr. Engle's counsel, Ann Oldfather, Esquire also received PPF deficiency notices in a total of twenty-seven (27) other Vioxx cases ("Oldfather cases")(Exhibit "7").[9] This letter in *Engle* was sent notwithstanding Merck's agreement to attempt to provide MPFs even if a "strict Core Criteria" was not present.

---

[7] On August 7, 2006, as a courtesy the PSC sent Merck a draft of this motion. The PSC agreed not to file the motion in order to give Merck the opportunity to cure the issues raised in the Motion. On August 15, 2006, Merck's counsel responded in writing and on August 16, 2006, a conference call was held. Unfortunately, the parties were unable to resolve the issues without Court intervention.

[8] It is now almost three (3) months later, and despite Merck's many promises, the MPFs in the "example" cases described in this motion have not been produced. Merck's failure to produce MPFs, notwithstanding promises, like broadening the definition of "cardiovascular injury," has not only occurred in the "example cases," but it is a wide-spread global problem requiring Court intervention.

[9] Exhibit "7" is a chart setting forth the PPF question, the Plaintiffs' Answer and the PSC's position in the Oldfather cases. Merck claimed that there were 28 of the Oldfather PPFs that were deficient. At best, two of those PPFs were submitted in cases of pulmonary embolism and were not within the definition of the type of case for which a plaintiff was required to file a PPF under PTO 18B, and six had minor problems easily resolved by a follow up inquiry (for example, the PPF did not ask that an address be separately listed for a Nurse Practitioner who dispensed Vioxx, so four of these PPFs identify Nurse Practitioners among the other Vioxx prescribers and then list the office address of the supervising physician rather than the Nurse Practitioner). The remaining twenty Oldfather PPFs (those listed on Exhibit "7") were not deficient at all.

The PPFs in the Oldfather cases, with a few exceptions, are not deficient:  prescribers are identified; prescribers addresses are set forth in the PPF; if there were samples provided, the provider and provider's address are set forth; and the injury suffered and the dates of injury are described (these are the ONLY type of deficiencies noted on the Oldfather cases).

It has become abundantly clear that, despite its promises, Merck fully intends to continue to unjustifiably delay the production of MPFs by using inadequate "Core Criteria" as an excuse.[10] The problems Plaintiffs have encountered have been continuous.[11]

## ARGUMENT

### A.  MERCK IS IN CLEAR VIOLATION OF PTO 18(C), AND ITS PREDECESSORS, FEDERAL RULE (S) OF CIVIL PROCEDURE 33, 34, 37 AND 26

Merck's failure to produce an MPF is tantamount to failing to answer interrogatories under Rule 33, failing to produce documents under Rule 34 and a violation of Rule 26. This motion is

---

[10] In one of the "example" cases selected by the PSC for discussion at the June 2, 2006 meeting, the plaintiff, Normand LaChance, was alleged to have a deficient PPF because he identified his doctor as "Dr. C.D. Collins." Merck claimed that it was well within its right to delay the MPF  because Mr. LaChance had not provided the "full name" of his physician.  Merck pointed to the first-initials "C.D." During the June 2, 2006 meeting, there was a long discussion about whether it was proper for Merck to consider initials, such as "C.D.," as "deficient" such that Merck should delay the production of an MPF. Merck agreed that it would process the PPF in Mr. LaChance's case with the prescriber's name as it was and in other cases where the physician's name began with an initial. Notwithstanding Merck's assurance that Mr. LaChance's MPF would be forthcoming, eleven (11) days after the June 2, 2006 meeting, Merck's counsel sent yet another letter in *LaChance* advising that it was not producing an MPF because Mr. LaChance's PPF did not adequately identify his prescribing physician. The only explanation given by counsel for Merck was that Dechert, a law firm according to its own website, "of more than 900 attorneys in 18 cities around the world," with 121 attorneys in the Mass Tort Department alone "had a lot of MPFs to Process."

[11] The PSC has recently discovered that a large number of the MPFs that Merck has produced are deficient and incomplete in that the documents produced on the CDs provided are in single-page-TIF PDF format, notwithstanding Merck's repeated promises not to do so; despite multiple references throughout the MPF to "Folder A" and "Folder B" on the provided CD, the file structure on the CD contained no such folders; *"Dear Doctor Letters"* that Merck claims are produced, are not and, Merck continues to make "blackout" redactions, despite repeated promises that this would not occur further. Merck has acknowledge these deficiencies. Merck recently has in good-faith promised to cure this problem.

brought pursuant to each of those Rules and all applicable Local Rules.

Under Federal Rule of Civil Procedure 26, Plaintiffs are entitled to discovery regarding any non-privileged matters relevant to the prosecution of their claims against Merck. *Garcel, Inc. v. Hibernia Nat. Bank*, 2002 WL 100605 at *2 (E.D.La.2002); *see also* Fed.R.Civ.P. 26(b)(1).

> A party to an action has the right to have the benefits of discovery procedure *promptly,* not only in order that he may have ample time to prepare his case before scheduled trial, but also in order to bring to light facts which may entitle him to summary judgment or induce settlement prior to trial.

*United States ex rel. Weston & Brooker Co. v. Continental Cas. Co.*, 303 F.2d 91, 92 (4th Cir.1962).

## B.   MERCK'S HAS IMPROPERLY USED "CORE CRITERIA" AS AN EXCUSE TO DELAY THE PRODUCTION HUNDREDS OF MPFS

The PSC attempted to work with Merck so that plaintiffs understood the importance of providing "Core Criteria" in order to receive a timely MPF. Indeed, the PSC consented to Merck's request to add the "Core Criteria" into PTO 18(C) as an accommodation to Merck. However, in practice Merck's strategy has been to apply the most unreasonable criteria to evaluate whether the "Core Criteria" provided is adequate. It uses this strategy to improperly delay the production of MPFs.

Examples that occurred *after* the June 2, 2006 meeting where the PSC was assured by Merck that this dispute would be resolved and after additional assurances were made by Merck's counsel in negotiating PTO 18(C), including promises to broaden the definition of "cardiovascular injury." In each of the examples in Appendix A, Plaintiffs' counsel has in good-faith attempted to communicate with Merck's counsel to explain that the claimed deficiency is without merit, yet Merck has still not produced an MPF.   Appendix A sets forth Plaintiff's and Defendant's position

with respect to MPF issues.[12]

Merck was provided a draft of this motion before it was filed so that it had every opportunity to remedy the problems set forth in this motion. In replying, Merck responded to each of the examples on Appendix A. Merck's responses reflect that Merck has no interest in resolving these issues short of being compelled to do so. Thus, intervention by the Court is necessary.

## V.   CONCLUSION

For the reasons set forth above, the PSC respectfully requests that the Court compel Merck to produce any and all Merck Profile Forms that are currently due or overdue, to cease and desist violating PTO 18(C), Rule 33, 34 and 26 in the future on such unwarranted grounds and to produce supplemental MPFs.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: August 23rd, 2006                    By: _____

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
**PLAINTIFFS' LIAISON COUNSEL**

---

[12] The PPFs that form the basis of the contents within Appendix A are attached as Exhibits 2 and 8 through 17 (Confidential).

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)

(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Michael M. Weinkowitz **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23 day of August, 2006.

**Leonard A. Davis** (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, L.L.P.***
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
ldavis@hhkc.com