UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF RICHARD A. KRONMAL, PH.D.**

**(EXPERT CHALLENGE NO. 8)**

Plaintiff's opposition to Merck's motion to exclude the testimony of Richard A. Kronmal, Ph.D. glosses over the key problems with Professor Kronmal's testimony. First, as a matter of law, plaintiff cannot prove causation merely through statistical association. Thus, because Professor Kronmal bases his causation opinion solely on statistical association, it is inadmissible. Indeed, even Professor Kronmal concedes that statistically significant associations can be the result of chance, and hence more is needed to prove causation. Second, the Court should not permit Professor Kronmal to base opinions on statistically *insignificant* associations. Third, Professor Kronmal should not be permitted to opine on Merck's intent or ethics. Finally, Dr.

Kronmal lacks the expertise required to opine on the adequacy of Merck's label. Consequently, Professor Kronmal's opinions on (i) medical causation, (ii) statistically insignificant associations, (iii) Merck's state of mind regarding the alleged risks of Vioxx® and Merck's ethical and moral obligations, and (iv) the adequacy of Merck's warnings for Vioxx do not satisfy Federal Rule of Evidence 702 and should be precluded.

**I.     PROFESSOR KRONMAL CANNOT OPINE ON GENERAL CAUSATION.**

Professor Kronmal's opinions cannot go beyond the inherent limitations of his methodology. Plaintiff is correct in asserting that "as a biostatistician, Dr. Kronmal employs statistical analyses to determine whether the observed effects of a drug in a clinical trial are 'real effects' or 'due to chance.'" (Pl.'s Opp. at 11.) But that is where his expertise ends. The clinical interpretation of those observed effects and whether they make sense in terms of human biology are beyond the expertise of a biostatistician who has no medical training. He cannot use statistics alone to "prove" causation.[1]

**A.     As A Matter Of Law, Plaintiff Cannot Prove Causation Merely By Statistical Association.**

Plaintiff mistakenly makes the unsupported claim that the "causal relationships drawn from clinical trial data are distinct from the use of epidemiological tools, where typically, only inferences are drawn from observational data concerning large populations of people." (Pl.'s Opp. at 11.) Plaintiff is mistaken in this assertion. As noted in Merck's opening brief, randomized clinical trials are a type of epidemiological study and cannot singularly prove causation. (Merck's Mot. at 4 n.2; Reference Manual on Scientific Evidence at 484, 526.)

---

[1]     Michale J. Saks *et al.*, Federal Judicial Center, ANNOTATED REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (2d ed. 2005-2006) ("REFERENCE MANUAL ON SCIENTIFIC EVIDENCE") at 323.

Professor Kronmal concedes that statistically significant associations can be the result of chance, and hence more is needed to prove causation. (June 7, 2006 Deposition of Richard A. Kronmal at 212:12-21, attached hereto as Ex. A.) Regardless of the type of study performed, the results can only be interpreted in the context of general scientific understanding and after consideration of such factors as biological plausibility, dose-response, temporal association, consistency, and reproducibility, to name a few.[2] Likewise, another of plaintiff's experts, Professor Moye, testified in *Barnett* that the relative risk from either a clinical trial or observation study is just a measure of strength of association[3] and that other factors such as plausibility and consistency are necessary in evaluating the results of clinical trials to establish causation.[4]

---

[2] The Bradford-Hill construct for interpreting scientific results for the purposes of establishing causation is an example of how to systematically apply scientific understanding to statistical data. REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 526-527.

[3]  Q.  In looking at clinical studies or observational studies that you mentioned, do you use what's called "relative risk"?

  A.  Yes. A relative risk is just a measure of strength of association. That's all it is…

(Aug. 3, 2006 *Barnett* Tr. at 801:15-802.2, attached hereto as Ex. B.)

[4]  Q.  Dr. Moye, are epidemiological studies, clinical trials, do those provide evidence to show whether there is an association or causation?

  A.  Those are the kinds of tools that we have to help distinguish association versus causation. Fortunately, most of the tools that we use are really commonsense tools. They are things like, if I believe an exposure caused the disease, then don't I expect to see more disease in the exposed than the unexposed? That's called strength of association. That's important.

  Is the relationship believable? Sometimes we find, in some clinical studies that aren't analyzed with discipline, we find some fantastic things we can't believe. for example, a patient who is exposed to aspirin but born under the Libra and Gemini sign does not receive aspirin protection for heart attack. That was actually shown in this study. Did anybody really believe this?

*(footnote continues on next page)*

As Professor Kronmal acknowledges, even a statistically significant result from a clinical trial may be due to chance. Scientists consider data to be statistically significant if the "p-value" is less than 0.05.[5] REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 324. A p-value of less than 0.05 means that there is roughly a 95% probability that the results of the data are real – *i.e.*, that they are *not* attributable to chance. *Id.* By contrast, however, there is roughly a 5% probability that the results of the data in fact *are* attributable to chance alone.[6] Because statistically significant associations can result from chance alone, it is conceivable that data from a placebo-controlled clinical trial might purport to show a statistically significant increased risk associated with *placebo*. No credible scientist, however, would contend that such a study shows that placebo *causes* adverse events. But that is the only conclusion that could be drawn under Professor Kronmal's theory of causation, which depends on statistical association alone. That conclusion of course makes no sense. As the Texas Supreme Court reasoned in *Havner*, "there is a demonstrable association between summertime and death by drowning, but summertime does not cause drowning." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 724 (Tex. 1997).

Contrary to plaintiff's argument, causal inferences cannot be based on statistical associations alone. Data from controlled, randomized clinical trials do provide the strongest

---

> So there is a sense of plausibility. *There has to be consistency.* Do we see it again and again and again? Its these kinds of tools which are really just commonsense tools, that help us build a case for or against a relationship being causative or associative.

(*Id.* at 800:18-801:14 (emphasis added).)

[5] A "p-value" is defined as the probability of getting data as extreme as, or more extreme than, the actual data, given that the null hypothesis is true. *Id.* at 261.

[6] That is because a statistically significant p-value of 0.0499 could result by chance alone 4.99% of the time.

4

form of evidence of causation, (Pl.'s Opp. at 11-12), but they are not determinative.  The data has to be taken as part of the totality of scientific understanding.[7]

### B. Professor Kronmal Cannot Rely On Statistically Insignificant Data For His Opinions.

The purpose of testing for statistical significance is to help discern what is likely to be related to chance from what is likely to be a real observed difference.  As a biostatistician, Dr. Kronmal employs statistical analyses to determine whether the observed effects of a drug in a clinical trial are "real effects" or "due to chance."  Plaintiff seems to agree that relying on statistically insignificant data is wrong.  He states that Professor Kronmal does not rely on insignificant data and has explicitly stated it is inappropriate to do so:

> Merck also argues that Dr. Kronmal should not be permitted to base causation opinions on statistically insignificant data. He doesn't and as explicitly stated in the testimony cited by Merck, Dr. Kronmal believes it is inappropriate to do so.

(Pl.'s Opp. at 14 n.5.)  That position, however, does not conform with Professor Kronmal's testimony.  In some instances, he does base his opinions on statistically insignificant data:

---

[7] Even Professor Kronmal's statistical analysis is suspect, given his a la carte approach to choosing his endpoints:

- Professor Kronmal states that the VIGOR study showed an *insignificant* risk of congestive heart failure with Vioxx versus naproxen. (Pl.'s Opp. at 4.)  Not to be restrained by good science, he immediately changes his endpoint to something else (serious congestive heart failure) so he gets a significant result. (*Id.*)

- Professor Kronmal claims "Merck's own analyses of its Alzheimer's trials, protocols 078 and 091, demonstrated a statistically significant, nearly three-fold risk of death for patients taking VIOXX as compared to placebo." (*Id.*)  Yet Professor Kronmal never does a death analysis for the VIGOR or the APPROVe trial, perhaps because they do not show a difference between Vioxx and naproxen and placebo respectively.

- For the APPROVe data he selects a new endpoint: myocardial infarction and "hard" coronary heart disease.  (*Id.*)  Not surprisingly, his choice of endpoint leads to a statistically significant result.

5

> In the VIGOR study, patients taking VIOXX were twice as likely to develop congestive heart failure than patients taking naproxen (*the p-value for this finding was just shy of statistical significance*).

(Pl.'s Opp. at 4 (emphasis added).)

Recognizing that Professor Kronmal does indeed rely on statistically insignificant associations, plaintiff attempts to justify it by claiming that Merck also has relied on statistically insignificant data in the past. (Pl.'s Opp. at 14 n.5.) It might be a sufficient response to say "two wrongs do not make a right," but that would overlook the fact that plaintiff mischaracterizes what Merck has done in the past.

The scientific method employs what is called a "null hypothesis." For example, if one wanted to show that aspirin was superior to placebo for cardioprotection, the null hypothesis might be that the two treatments are the same. The study would attempt to *disprove* that null hypothesis by showing the cardiovascular event profiles were significantly different. This would be some evidence of aspirin's superiority. On the other hand, if the results were not significant, the null hypothesis would not be disproved and it would be evidence that the drugs have similar effect.[8] That is how Merck properly has used the lack of a statistically significant result in the past. Merck's use of studies showing no statistically significant increased risk using Vioxx differs in kind from Professor Kronmal's reliance on statistically insignificant data to draw causal conclusions.

### C. Professor Kronmal's Qualification To Testify As An Expert Under New Jersey's Less Rigorous Standard Is Irrelevant Here.

Plaintiff cites to the fact that Professor Kronmal was found qualified as an expert witness in New Jersey state court in *Humeston v. Merck & Co., Inc.* (Pl.'s Opp. at 3.) But New Jersey

---

[8] The result of this single trial, either way, is only evidence but not proof of a cause-effect relationship.

6

state courts do not use a *Daubert* standard for expert witnesses while this court must. *See State v. Harvey*, 151 N.J. 117, 699 A.2d 596 (1997). The Court should restrict Professor Kronmal's opinions to whether a study shows a significant result. He should not be allowed to opine on the interpretation of study results as they relate to the ultimate issue of medical causation. Nor should Professor Kronmal be allowed to rely on statistically insignificant data for any opinion on the alleged side-effects of Vioxx.

## II.  PROFESSOR KRONMAL CANNOT OPINE ON MERCK'S STATE OF MIND OR ETHICAL OR MORAL OBLIGATIONS.

Professor Kronmal has neither the expertise nor a legitimate basis to opine on Merck's state of mind or ethical or moral obligations. Plaintiff does not seriously argue that Professor Kronmal is entitled to opine on these issues; instead claiming that Professor Kronmal "has not offered opinions concerning Merck's intent." (Pl.'s Opp. at 16.) Plaintiff is wrong.

Professor Kronmal's opinion that the results of the Alzheimer's trials would typically result in the termination of the study by the DSMB is inadmissible. This opinion has no probative value and serves no purpose other than to suggest Merck was somehow a bad actor by not having a DSMB or not stopping the trials. Moreover, Professor Kronmal's opinion that "Merck's failure to tell participating patients and the Institutional Review Boards ("IRBs") responsible for them about the increased risk of mortality" was improper is wrong (*see* Pl.'s Opp. at 15-16), but more important it is irrelevant to the issues to be resolved in this case. It also is inadmissible under Federal Rule of Evidence 403.

## III.  PROFESSOR KRONMAL CANNOT OPINE ON THE ADEQUACY OF MERCK'S LABELING FOR VIOXX.

Professor Kronmal admittedly has no expertise in FDA regulations or labeling. (September 22, 2005 *Humeston* Tr. at 1691:20-25, attached hereto as Ex. C.) Plaintiff attempts to circumvent Professor Kronmal's lack of expertise by claiming that he "was asked to consider,

7

from a statistical perspective, whether the VIOXX label accurately reflected the cardiovascular risks reflected in the clinical trial data for the drug." (Pl.'s Opp. at 3.)  Admittedly, it is not entirely clear what constitutes an adequate label from a *statistical perspective*.  What is clear, however, is that Professor Kronmal cannot become an expert in a new field by couching his opinions within a "statistical perspective."  Professor Kronmal is not an expert on pharmaceutical labeling and any opinion he has on the subject is irrelevant.

### IV.    CONCLUSION.

For the reasons stated above and in Merck's underlying motion, Merck respectfully requests that this Court grant Merck's Motion for Order Excluding Testimony of Richard A. Kronmal, Ph.D.

Dated:  August 28, 2006                                  Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Brian Currey
Catalina J. Vergara
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:    202-434-5029


Attorneys for Merck & Co., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Merck's Motion for Order Excluding Testimony of Richard A. Kronmal, Ph.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of August, 2006.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel