UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 2:05-CV-04379 | * | |
| ROBERT G. SMITH, | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF CORNELIA PECHMANN, PH.D.**

**(EXPERT CHALLENGE NO. 3)**

The Court should exclude Professor Pechmann's testimony in its entirety. Plaintiff designated Professor Pechmann to testify on scientific conclusions with respect to the cardiovascular effect of Vioxx®. But Professor Pechmann is not qualified to give that testimony. Plaintiff concedes as much, stating that Professor Pechmann will not give "expert medical opinions," but insists that Professor Pechmann nevertheless should be permitted to interpret the then-available scientific data and internal Merck documents in order to opine on what Merck executives knew, and what they must have been thinking, when they developed their marketing strategy. That sort of speculation on Merck's knowledge, intent, and state of mind

must be precluded.

*Daubert* also requires this Court to preclude Professor Pechmann from opining that Merck's marketing influenced Mr. Smith and his treating physicians – contrary to their own testimony. Other courts have rejected Professor Pechmann's reasoning, which amounts to "some physicians were influenced so Mr. Smith's doctors also must have been influenced." This reasoning should likewise be excluded here. Plaintiff, perhaps in recognition of the impropriety of such testimony, has conceded that testimony regarding the influence that Merck's marketing had on Mr. Smith and his physicians is inadmissible as he has failed to address this issue in his reply.

Also, Professor Pechmann lacks the credentials necessary to opine on Merck's compliance or lack of compliance with FDA regulations. In any event, plaintiff has designated a regulatory expert to testify, making any testimony by Professor Pechmann unnecessary and cumulative.

After all of this improper testimony is excised, nothing remains of Professor Pechmann's testimony that is relevant to the case. For example, her description of Merck's "integrated marketing campaign," or its cost, has no tendency to prove or disprove a relevant fact and should be excluded under Rule 401. In previous Vioxx trials, plaintiff's counsel have tried to inflame the jury by pointing to the amount Merck spent on its marketing campaign and contending that it should have spent an equivalent sum on additional testing. But such comparisons are unfair and prejudicial, not only because Kentucky law does not impose a duty to conduct additional tests, but because they are untethered to any explanation of industry standards and practices. Thus, the Court should exclude the balance of Professor Pechmann's testimony under Rules 401 and 403.

I.  **THE COURT SHOULD PRECLUDE PROFESSOR PECHMANN FROM OFFERING OPINIONS ON GENERAL CAUSATION AND MERCK'S INTENT, KNOWLEDGE, OR STATE OF MIND.**

Professor Pechmann's report and depositions are riddled with opinions regarding her view of the link between Vioxx and cardiovascular risks and her interpretation of VIGOR and other studies.  She testified at deposition that she is prepared to offer an opinion regarding scientific studies of Vioxx.  (*See, e.g.,* May 26, 2006 Deposition of Cornelia Pechmann, Ph.D. at 163:21-164:1 ("Q: You are not going to come into court and attempt to interpret the medical journal articles written [about] Vioxx; are you, ma'am?  A: Well, I have the VIGOR in my – in the New England Journal materials in my Appendix.  So if it came up, I would speak about them"), attached hereto as Ex. A.)  Merck objected to that testimony because Professor Pechmann is not qualified to render opinions on causation.

Plaintiff appears to concede the point, stating that Professor Pechmann – despite her report and earlier testimony – will not offer "an expert medical opinion as to relationship [*sic*] between Vioxx and cardiovascular events."  (Pl.'s Opp. at 13.)  But plaintiff then backtracks, asserting that "in order to understand what prompted the integrated marketing campaign and the goals and objectives of that campaign, the internal documents and the knowledge of the executives at Merck regarding the [cardiovascular] risks must be understood and incorporated into the opinion" that Professor Pechmann will offer at trial.  (*Id.*)  Such testimony necessarily would require Professor Pechmann both to interpret the scientific evidence then available to Merck and to speculate on Merck's state of mind, motives and intent.  The Court should preclude it.

Excluding Professor Pechmann from testifying regarding scientific evidence or Merck's state of mind, motives and intent is in keeping with rulings from other courts that have addressed the proper scope of Professor Pechmann's testimony.  In the California Vioxx litigation, Judge

3

Chaney – applying a standard far less stringent than *Daubert* – ruled that Professor Pechmann could not testify on causation or Merck's motive, intent, or state of mind. Instead, Judge Chaney limited Professor Pechmann to "neutral" testimony concerning general or hypothetical marketing concepts. (June 26, 2006 *Grossberg* Hearing Tr. at 595:27-596:15, attached as Ex. B to Merck's Mot. filed August 14, 2006.) This Court should similarly preclude Professor Pechmann from offering testimony regarding scientific interpretations or speculation as to Merck's state of mind, motives and intent.

## II. PROFESSOR PECHMANN'S OPINIONS REGARDING DIRECT-TO-CONSUMER ADVERTISING AND THE NATURE OF MERCK'S MARKETING SHOULD BE EXCLUDED AS IRRELEVANT.

Professor Pechmann's testimony regarding the nature of Merck's marketing should be excluded as irrelevant. Plaintiff has conceded – as he must – that Professor Pechmann will not be offering testimony regarding the influence that Merck's marketing had on Mr. Smith's physicians. What remains of Professor Pechmann's opinion is therefore that Merck's marketing, based on her understanding of the science of this case, was misleading. This opinion however is irrelevant. In this failure to warn case, the issue is whether *Mr. Smith's* physicians were adequately warned of the CV risks.

### A. **Professor Pechmann's Opinions are Unreliable.**

Plaintiff apparently hopes to offer Professor Pechmann's opinion regarding the nature of Merck's marketing to argue that if other physician's were influenced in a certain way then Mr. Smith's physicians must have been as well. The logic underpinning this argument is flawed. Just as knowing the final result on an election cannot establish how any particular voter cast his ballot (absent an unanimous vote), so too it is impossible to gauge how an individual doctor or consumer was influenced by a marketing campaign based on survey data. Courts that have confronted claims that responses to marketing are sufficiently uniform to allow reliance to be

4

established in this way have rejected that reasoning. *See e.g. Jones v. Danek Med., Inc.*, No. Civ. A 4:96-3323-12, 1999 WL 1133272, at *8 (D.S.C. Oct. 12, 1999) (granting summary judgment to claims based on fraud and negligent misrepresentation in part because physician testified he did not rely on marketing information in deciding to use product in question); *Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945(JBW), 2005 WL 2401647, at *4 (E.D.N.Y. Sept. 29, 2005) (rejecting part of an expert opinion because its basis was "inconsistent with common sense and the evidence generally: all consumers do not react in the same way").

And, although plaintiff points to a long string of cases where marketing experts have been allowed to testify, none of these cases involved the use of a marketing expert to establish claims of misrepresentation in a single plaintiff case. Rather, the cases on which plaintiff relies for support involved claims of trademark infringement, *Betterbox Communications Ltd. v. BB Techs., Inc.*, 300 F.3d 325 (3d Cir. 2002); *Edna Realty, Inc. v. Themlsonline.com*, No. Civ. 04-4371 JRTFLN, 2006 WL 737064 (D. Minn. Mar. 20, 2006); racial discrimination violating the Fair Housing Act, *Tyus v. Urban Search Mgmt.*, 102 F.3d 256 (7th Cir. 1996); civil conspiracy, *Nestle Food Co. v. Abbott Labs.*, 105 F.3d 665 (9th Cir. 1997) (unpublished opinion); deceptive marketing and false advertising, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997); *Novartis Corp. v. FTC*, 223 F.3d 783 (D.C. Cir. 2000); and tobacco litigation involving a class action, *Schwab*, 2005 WL 2401647, and insurance carriers, *Blue Cross & Blue Shield of N.J. v. Philip Morris, Inc.*, No. 98CV 3287, 2000 WL 1738338 (E.D.N.Y. Nov. 1, 2000).

### B. <u>B. Professor Pechmann's Opinions About Direct to Consumer Marketing are Irrelevant.</u>

Professor Pechmann's testimony about direct to consumer marketing is irrelevant because under Kentucky's learned intermediary doctrine, Merck's duty to warn ran to Mr. Smith's physicians, not to Mr. Smith. *Larkin v. Pfizer Inc.*, 153 S.W.3d 758, 770 (Ky. 2004).

### III. PROFESSOR PECHMANN IS UNQUALIFIED TO OFFER OPINIONS REGARDING THE FDA AND ITS REGULATIONS.

As discussed in Merck's opening brief, Professor Pechmann is unqualified to offer any opinions regarding the FDA or its regulations. Plaintiff's counterargument is that "much marketing" is governed by regulations. (Pl.'s Opp. at 17.) That is not enough to allow Professor Pechmann to offer opinions related to the complex regulatory scheme that governs the testing, approval, and marketing of prescription pharmaceuticals in the United States. Additionally, plaintiff has designated another expert to testify on the FDA and its regulations. Allowing Professor Pechmann to testify regarding these topics would be cumulative and would not offer any additional assistance to the jury.

### IV. CONCLUSION.

For the reasons stated above and in Merck's underlying motion, Merck respectfully requests that the Court exclude Professor Pechmann's testimony in its entirety.

Dated: August 28, 2006                                              Respectfully submitted,


/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029


Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck For Order Excluding Testimony of Cornelia Pechmann, Ph.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of August, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel