UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR <u>ORDER EXCLUDING TESTIMONY OF JOHN D. ABRAMSON, M.D.</u>**

**(EXPERT CHALLENGE NO. 1)**

    Dr. Abramson is unqualified to offer expert testimony concerning whether, based on the clinically established risks and benefits of using Vioxx®, Merck adequately provided safety information in the Vioxx label and marketing materials.  Plaintiff has taken the novel approach of responding to Merck's motion by way of a self-serving declaration from Dr. Abramson, which in reality functions as a late-served supplemental expert report and should be excluded as such.

    Plaintiff and Dr. Abramson essentially concede that he has no specific expertise in the labeling or marketing of pharmaceutical products; instead, they emphasize Dr. Abramson's experience as a "prescribing physician" and assert that his testimony will concern what a prescribing physician, in general, or plaintiff's physician Dr. Grefer, in particular, knew about

the risks of using Vioxx and what he would have hypothetically done if different information were provided. (Pl.'s Opp. at 4.) Dr. Grefer's understanding of the cardiovascular risks associated with Vioxx is appropriately the subject of his own testimony, and Dr. Abramson's opinions and predictions concerning other physicians' state of mind are irrelevant speculation. Even plaintiff concedes that a particular treating physician's understanding of a pharmaceutical label is not properly the subject of *expert* testimony. (Pl.'s Opp. at 4, 7.) Furthermore, Dr. Abramson's own understanding of the cardiovascular risks associated with Vioxx should be excluded, as he is not an expert in the appropriate fields and his actual opinions are not supported by reliable scientific evidence.

## I. DR. ABRAMSON'S SELF-SERVING DECLARATION IS AN UNTIMELY EXPERT REPORT AND SHOULD BE STRUCK AS SUCH.

Apparently unhappy with Dr. Abramson's expert report and deposition testimony, plaintiff has introduced a self-serving declaration from Dr. Abramson whereby he directly responds to Merck's motion and proclaims his own expertise. (*See* Pl.'s Opp. Ex. A.) Given that Dr. Abramson has had the opportunity to submit an expert report and was deposed on that report, it is inappropriate for plaintiff to offer this declaration. Plaintiff has never indicated that he was supplementing Dr. Abramson's report for any reason consistent with Rule 26 – *i.e.* that he had learned that the information in Dr. Abramson's report was incorrect or incomplete. Where, as here, an expert's declaration "reads like a legal brief in that" the expert "describes [the opposition's] arguments then responds to them," the declaration should be excluded. *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806-07 (D. Ill. 2005). In the alternative, Dr. Abramson's testimony should be excluded entirely. *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741, 743 (7th Cir. 1998) (affirming district court's sanction of precluding expert witnesses

826034v.1

from testifying at trial where the party never offered a satisfactory explanation for its failure to meet court-ordered deadlines).

Plaintiff may claim that he is entitled under Rule 26 to supplement his experts' reports. "Rule 26 does not, however, bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline, even if the rule's pretrial time limit is satisfied. In short, Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion." *Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (D. Ga. 2001) (emphasis in original); *Beller v. United States*, 221 F.R.D. 696, 701-02 (D.N.M. 2003). ("[Rule 26(e)] does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [original] report."). Plaintiff has offered no justification for what is essentially a late-filed report which, as in *Solaia Tech*, reads like a legal brief in response to Merck's moving papers. Dr. Abramson's declaration and all argument based on it should be excluded.

## II. DR. ABRAMSON'S OPINION ON THE IMPACT OF THE VIOXX LABEL AND MARKETING ON PRACTICING PHYSICIANS IS INADMISSIBLE SPECULATION.

In his opposition, plaintiff confuses two very distinct subjects of testimony: 1) whether a pharmaceutical company met industry standards in its provision of safety information, and 2) a practicing physician's understanding based on reading a pharmaceutical label. As discussed in Merck's opening brief, the creation or modification of a pharmaceutical warning label is not an area for those without specific expertise.[1] Meanwhile, although a prescribing physician's

---

[1] Dr. Abramson has essentially conceded he has no expertise in the highly specialized field of creating and modifying pharmaceutical labels and the related safety requirements. He also fails to evidence any expertise in the implementation of pharmaceutical marketing or in analyzing the impact of this marketing. The Court should, accordingly, grant Merck's motion to exclude any testimony from Dr. Abramson on these subjects.

understanding of a pharmaceutical label can be a relevant subject of testimony, only the understanding of one such physician is actually relevant – the plaintiff's own prescribing physician, Dr. Grefer.  The testimony of anyone else on this subject, unless an expert in mind-reading, is simply irrelevant speculation.

Plaintiff argues that no "heightened level of expertise" is necessary to testify on the adequacy of a pharmaceutical label.  (Pl.'s Opp. at 3.)  To support this argument, plaintiff cites several cases holding that a treating physician need not be an expert to testify as to the adequacy of the warning in a drug label, and in fact is not testifying in an expert capacity when so testifying.  (Pl.'s Opp. at 3.)  Plaintiff ignores one critical distinction – the prescribing physicians addressed by these cases were the *physicians who actually prescribed the drugs at issue to the plaintiffs* in these cases, not outside doctors whose only "expertise" is in previously prescribing drugs themselves.  *See Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 265 (5th Cir.) (Dr. Claiborne, who prescribed Lamisil to plaintiff, "was testifying as to whether the Lamisil package insert made him aware of the risks involved in prescribing Lamisil at the time that he treated Stahl."); *Mauldin v. Upjohn Co.*, 697 F.2d 644, 648 (5th Cir. 1983) (Dr. Walkers, who testified on his understanding of the labels' gastrointestinal safety information, actually prescribed the drugs to plaintiff).[2]  The treating physicians allowed to testify in these cases essentially testified as fact witnesses on their own states of mind, not as retained experts offering opinion testimony. Plaintiff offers no precedent for the position that a non-expert may hypothesize about the plaintiff's treating physician's understanding of a label.

Only Dr. Grefer's understanding of the safety information in the Vioxx label bears any

---

[2] The other doctor in *Mauldin* who was permitted to testify concerning the label's information, Dr. McHardys, testified as an *expert in gastroenterology*, not simply as an experienced treating physician.  *Mauldin*, 697 F.2d at 647-48.

relevance to plaintiff's claims, as only he prescribed Vioxx to Mr. Smith. Plaintiff had the opportunity to depose Dr. Grefer in this case, and allowing Dr. Abramson to speculate as to what Dr. Grefer would "probably" have done under different circumstances is not the proper subject of expert testimony. (*See* Abramson Expert Report at ¶ 12 ("Abramson Rpt.") ("It is my opinion that had Dr. Grefer been provided honest and complete information by Merck about Vioxx that he probably would not have prescribed Vioxx to Garry Smith in October, 2002."), attached as Ex. A to Merck's Mot filed August 14, 2006.)

Moreover, Dr. Abramson's opinions about what can be discerned by a physician reading the Vioxx label are actually a thinly veiled attack on the adequacy of the FDA-approved Vioxx label itself. (Pl.'s Opp. at 3 ("if no one but an FDA employee or Madison-avenue executive can read and interpret Vioxx's label, then it is presumptively inadequate to warn physicians of its risks").) Such argument by plaintiff is preempted by federal law. (*See* Merck's Mot. at 6 fn. 2.)

## III. DR. ABRAMSON IS NOT QUALIFIED TO OPINE ON THE RESULTS OR ADEQUACY OF MERCK'S CLINICAL STUDIES.

In discussing Merck's clinical study data, plaintiff again seeks to blur two of Dr. Abramson's opinions – first, his proposed testimony as to the relative risks and benefits of using Vioxx, based on his interpretation of the results and design of the clinical studies, and second, his testimony as to whether the Vioxx label adequately apprised prescribing physicians of those same risks and benefits. Dr. Abramson is unqualified to testify as to the former, and his opinions on the later are irrelevant speculation.

Dr. Abramson continues to try to establish his *bona fides* with respect to clinical trials, pointing to his two-year fellowship, in 1980-82, and his time obtaining "additional experience in health policy" as a research associate on the faculty of Brandeis University from 1992-93. (Pl.'s Opp. at 7.) His fellowship of 20 years ago provides his only direct experience with an

5

epidemiological study, but event the one such study he can identify had nothing to do with a pharmaceutical product.  (Deposition of John Abramson ("Abramson Dep.") at 91:24-92:22, attached hereto as Ex. A.)  Yet, Dr. Abramson concludes that he is "an expert at the translation of clinical studies, including studies of like design as VIGOR and APPROVe, into clinical practice."  (Pl.'s Opp. at 8.)  He also claims his years as a primary care physician have provided him the "experience in epidemiology, statistics, research, and decades of clinical experience" necessary to opine that Merck misrepresented Vioxx clinical data "in medical journals and marketing material."  (Pl.'s Opp. at 8.)  This, however, does not statistify the requirements of Federal Rule of Evidence 702 and *Daubert*.

In an analogous situation in the *Plunkett* trial, this Court properly ruled that Dr. Baldwin was not qualified to testify about Vioxx's purported role in causing thrombotic cardiovascular events, including Mr. Irvin's.[3]  Dr. Baldwin was an experienced cardiologist who had examined the plaintiff's medical records, the testimony of the witnesses in the case, and claimed to have an expert opinion on Vioxx's role in the plaintiff's heart attack.[4]  Dr. Baldwin could testify about general cardiology topics such as risk factors, plaque blockage, and related issues but, because he did not have specific expertise in COX-2 inhibitors, he was not allowed to opine on Vioxx's purported role in causing cardiovascular events.[5]  That Dr. Baldwin had extensively reviewed the

---

[3] (Dec. 1, 2005 *Plunkett* Tr. at 505:24-508:15, 508:18-509:14, 509:21-515:1, attached hereto as Ex. B.)

[4] (*Id.* at 505:24-508:15.)

[5] (*Id.* at 510:19-511:1 ("This individual is a cardiologist, but he knows nothing about Vioxx.  He knows nothing about Cox-2 inhibitors other than what he's read.  He has no personal experience with it, no training in it.  He's not an epidemiologist.  He's not a research scientist.  He doesn't consider himself an expert in Vioxx.  He doesn't consider himself an expert in Cox-2 inhibitors.  He said that.  His qualifications are lacking, not a methodology.").)

medical literature as a practicing cardiologist and as an expert did not grant him expert status.[6] Similarly, whatever Dr. Abramson's experience in reading labels or published clinical trial results as part of his family medicine practice, he is simply not qualified to testify on the design of Vioxx clinical trials, the nuances of trial results, and what they purportedly reveal about the risks and benefits of Vioxx.  He has never had involvement in any capacity in designing or conducting a clinical trial involving a pharmaceutical product.  (Abramson Dep. at 70:5-71:3.) He is neither a biostatistician nor an epidemiologist, and he has no experience in summarizing and publishing the results of a clinical trial, whether as an author or as an editor.  (*Id*. at 71:4-20.)

Perhaps recognizing Dr. Abramson's lack of clinical trial expertise, plaintiff suggests that his proposed testimony "may not even be in the realm of expert testimony" (Pl.'s Opp. at 7), and puts at issue whether a "mere practicing physician, who actually prescribed Vioxx to patients, can interpret data Merck referenced on its label." (Pl.'s Opp. at 6.)  The only physician whose ability to interpret the Vioxx label is relevant here, however, is Dr. Grefer.  As even Dr. Abramson agrees, patients require an *individualized* risk/benefit analysis before every drug prescription is made. (Abramson Dep. at 159:4-13.)  Dr. Abramson's experience as a practicing physician may put him in a position to critique Dr. Grefer's decisions, but he lacks the expertise to assess whether the information available to Dr. Grefer was accurate and adequate – and as discussed, *supra*, plaintiff is precluded from challenging the adequacy of the FDA-approved label itself.

Dr. Abramson is not qualified to offer his opinions on the results or design of Vioxx clinical studies, opinions on which his conclusions are based.  Additionally, his testimony about

---

[6] (*Id*. at 511:14-512:19, 513:17-514:7.)

a prescribing physician's risk/benefit analysis – whether based on the actual Vioxx label or a hypothetical label – is either irrelevant or purely speculation.[7]

## IV. DR. ABRAMSON'S OPINIONS ARE NOT SUPPORTED BY RELIABLE SCIENTIFIC EVIDENCE.

### A. No Evidence Shows Dr. Grefer Was Not Adequately Informed of Vioxx Safety Information.

Dr. Abramson states that "how doctors process information from different sources has been of importance and interest to me throughout my career as a physician." (Pl.'s Opp. at 9.) Having an opinion, however, is not the same as offering an admissible expert opinion. Before Dr. Abramson may offer any expert testimony, plaintiff must demonstrate that the opinion is based on reliable evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Plaintiff cannot do so.

No matter how many times Dr. Abramson has been "an invited lecturer" to discuss his speculation on "physicians' knowledge regarding Vioxx," he provides *no* evidence that Merck failed to provide available safety information diligently, and certainly provides no evidence that Merck "disseminated misleading and inaccurate information regarding the risks associated with Vioxx." (Abramson Rpt. at ¶ 16.) He cannot refute that Merck provided the VIGOR clinical data to the FDA and the medical community *promptly* after the results were available. (*See* Merck's Mot. at 13.)

Moreover, the evidence shows that Dr. Grefer was as well-informed as possible. He

---

[7] Plaintiff's true goal in offering Dr. Abramson may be revealed in his claim that his "opinions that Merck misrepresented the Vioxx clinical data are based on and have been supported and echoed in Merck's own documents." (Pl.'s Opp. at 8.) Plaintiff must not be allowed to use Dr. Abramson as a conduit to critique all available internal Merck correspondence and comment on Merck's supposed intent or state of mind. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545-46 (S.D.N.Y. 2004) (finding testimony on corporate motive, intent and state of mind inadmissible with "no basis in any relevant body of knowledge or expertise").

8

testified that, because of the label and Merck's marketing, he not only knew about the VIGOR results, but his understanding was the same as the FDA's: "the science wasn't clear about the reason for the difference in myocardial – nonfatal myocardial infarctions between patients on Vioxx and those on naproxen."[8]

### B. Dr. Abramson's Opinions on the Clinical Data are Without Support.

Plaintiff claims that Merck seeks to exclude Dr. Abramson's interpretations of the VIGOR data simply because he disagrees with Merck. (Pl.'s Opp. at 10.) Not so. Merck seeks to exclude Dr. Abramson's conclusions because they do not flow from a well-founded methodology or the available evidence. There is such a gap between Dr. Abramson's opinions and the actual results from the VIGOR trial that they should be excluded as irrelevant. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). (*See also* discussion in Merck's Mot. at 14-15.) This should be expected, given Dr. Abramson's lack of expertise with clinical trials and the litigation-driven generation of his opinions.

Seeking to justify his reliance on the VIGOR data in claiming there was a known, unpublished risk, Dr. Abramson now points out that the press release did not specify that the VIGOR results were based entirely on users of 50 mg of Vioxx. (Pl.'s Opp. at 11.) If anything, by not mentioning that VIGOR was conducted at a *higher* than recommended dosage, Merck was *overstating* any risks purportedly revealed by VIGOR. Also, what Dr. Abramson fails to mention is that while the press release, which many doctors likely did not see, did not mention that VIGOR was conducted at 50 mg, the label approved in 2002 – which Dr. Grefer saw,[9] and

---

[8] (July 27, 2006 Deposition of Michael A. Grefer ("Grefer Dep.") at 98:13-25, 99:16-20, attached to Merck's Mot. filed August 14, 2006 as Ex. D.)

[9] (*Id.*)

9

the 2000 article publishing the VIGOR results certainly did.[10]  Furthermore, Dr. Abramson does not dispute the fact that VIGOR involved patients with rheumatoid arthritis, which is linked to a higher rate of cardiovascular incidents, while Mr. Smith himself does not have rheumatoid arthritis, which further distinguishes him from the VIGOR patient population.[11]

Most troubling of all, Dr. Abramson seeks to dismiss the fact that VIGOR had no placebo arm by claiming this argument is somehow "contradicted" by Merck's former CEO's testimony that "testing Vioxx against a placebo in the VIGOR study would have been unethical in patients requiring anti-inflammatory medication" – based on this statement, he claims that because Mr. Smith required anti-inflammatory medication, the lack of a placebo arm is irrelevant.  (Pl.'s Opp. at 12.)  Dr. Abramson's lack of experience with designing or interpreting clinical trials is made obvious by this claim – without a placebo arm, it is simply impossible to determine whether the VIGOR results were due to a cardiovascular risk associated with *the 50 mg dose* of Vioxx, a cardio-protective effect associated with naproxen, chance, or some combination of these factors.[12]  Regardless of Dr. Abramson's view, the *experts* at the FDA concluded that the significance of the VIGOR cardiovascular data was unknown when the FDA approved the 2002

---

[10] Claire Bombardier et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 NEW. ENG. J. MED. 1520 (Nov. 30, 2000).

[11] Wolfe, et al., *The Mortality of Rheumatoid Arthritis, Arthritis & Rheumatism* (08/19/93); Myllykangas-Luosujarvi, *et al., Mortality in Rheumatoid Arthritis, Arthritis & Rheumatism* (12/95).

[12] *See* Patrono, FitzGerald et al., *Platelet Active Drugs:  The Relationships Among Dose, Effectiveness, and Side Effects*, CHEST 2004; 126:234S-264S ("While the cause of the apparent excess risk of MI in [VIGOR] cannot be conclusively established, a combination of some cardioprotective effect of naproxen and the play of chance does seem to offer a plausible explanation for these unexpected findings.");  REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 484 (only data from blinded, randomized, *placebo-controlled* clinical trials that meets the "gold standard for determining the relationship of an agent to a disease or health outcome").

Vioxx label incorporating the VIGOR results.  (*See* Ex. C attached to Merck's Mot. filed August 14, 2006.)

## V.  CONCLUSION.

For the foregoing reasons and the reasons discussed in the moving papers, Merck respectfully requests that the Court strike Dr. Abramson's declaration and exclude Dr. Abramson's testimony on the subjects of Merck's labeling and marketing of Vioxx, the appropriate interpretation of clinical trials of Vioxx, and predicting plaintiff's prescribing physician's hypothetical behavior.

Dated:  August 28, 2006                              Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Brian Currey
Catalina J. Vergara
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

826034v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply in Support of Motion of Merck for Order Excluding Testimony of John D. Abramson, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of August, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel