Exhibit B - 12/01/05 Plunkett Trial Transcript (Expert Challenge # 1)

• Expert Challenge No. 1 - Abramson

[487:] - [487:25]   12/1/2005   Irvin Plunkett Trial - Baldwin, Nies, Ray

```
page 487
     0487
1                      UNITED STATES DISTRICT COURT
2                      EASTERN DISTRICT OF LOUISIANA
3
4
5
        IN RE: VIOXX PRODUCTS          *
6       LIABILITY LITIGATION           *  MDL DOCKET NO. 1657
                                       *
7                                      *
        THIS DOCUMENT RELATES TO       *  HOUSTON, TEXAS
8       CASE NO. 05-4046:              *
                                       *
9       EVELYN IRVIN PLUNKETT, ET AL   *  DECEMBER 1, 2005
                                       *
10      VERSUS                         *
                                       *  8:30 A.M.
11      MERCK & CO., INC.              *
        * * * * * * * * * * * * * * *
12
13
                              VOLUME III
14                        JURY TRIAL BEFORE THE
                       HONORABLE ELDON E. FALLON
15                    UNITED STATES DISTRICT JUDGE
16
17      APPEARANCES:
18
        FOR THE PLAINTIFF:        BEASLEY ALLEN CROW METHVIN
19                                  PORTIS & MILES
                                  BY:  JERE LOCKE BEASLEY, ESQ.
20                                     ANDY D. BIRCHFELD, JR., ESQ.
                                       J. PAUL SIZEMORE, ESQ.
21                                234 COMMERCE STREET
                                  POST OFFICE BOX 4160
22                                MONTGOMERY, ALABAMA 36103
23
        FOR THE PLAINTIFF:        ROBINSON, CALCAGNIE & ROBINSON
24                                BY:  MARK P. ROBINSON, JR., ESQ.
                                  620 NEWPORT CENTER DRIVE
25                                NEWPORT BEACH, CALIFORNIA 92660
page 488
1       APPEARANCES, (CONTINUED):
```

[505:24] - [508:15]   12/1/2005   Irvin Plunkett Trial - Baldwin, Nies, Ray

```
page 505
23      A.   I HAD AN OPPORTUNITY TO SEE SOME OF THAT INFORMATION.
24      Q.   AND HAVE YOU REVIEWED ANY ADDITIONAL MATERIALS SINCE
25      PREPARING YOUR EXPERT REPORT?
page 506
1       A.   I HAD AN OPPORTUNITY TO LOOK AT DR. TOPAL'S DEPOSITION.
2       Q.   AND DID IT CHANGE YOUR OPINIONS IN ANY WAY?
3              MR. ISMAIL:  OBJECTION.  YOUR HONOR, MAY WE APPROACH?
4              THE COURT:  SURE.
5              MR. ISMAIL:  THIS IS NOT A DISCLOSED BASIS FOR
6       DR. BALDWIN'S OPINION.  HE PROVIDED AN EXPERT REPORT IN WHICH
7       HE LISTED THE MATERIALS HE RELIED UPON.  DR. TOPAL'S DEPOSITION
8       WAS NOT IN IT.  OBVIOUSLY, IT WAS NOT EVEN TAKEN.  THERE WAS NO
9       SUPPLEMENT EXPERT REPORT.  THERE IS NO LETTER TELLING US THIS
10      IS WHAT HE WAS GOING TO BE RELYING ON.
11             MR. BIRCHFIELD:  HE'S NOT RELYING ON IT.  THAT'S THE
12      WHOLE POINT.  I JUST ASKED HIM IF HE REVIEWED ANY ADDITIONAL
13      MATERIALS, AND I WANT TO ASK HIM IF IT CHANGED HIS OPINIONS IN
14      ANY WAY.  HE'S GOING TO SAY NO.  THAT'S IT.
15             MR. ISMAIL:  WHY ARE YOU REFERENCING TOPAL
16      SPECIFICALLY?
```

Exhibit B - 12/01/05 Plunkett Trial Transcript (Expert Challenge # 1)

- Expert Challenge No. 1 - Abramson

```
         17           MR. BIRCHFIELD: I'M ASKING HIM WHAT HE REVIEWED
         18  BECAUSE I WANT THE JURY TO KNOW THAT THIS IS A MATTER THAT HE
         19  HAS REVIEWED AND THAT HE'S LOOKING AT IT, YOU KNOW, TO GET A
         20  CLEAR ANSWER.
         21           THE COURT: ALL RIGHT. OKAY. I'VE HEARD THAT. SO
         22  LET'S NOT GET INTO TOPAL'S DEPOSITION. LET ME TELL YOU THE WAY
         23  I FEEL ABOUT THIS: HE'S A CARDIOLOGIST. HE SEEMS TO BE WELL
         24  QUALIFIED AS A CARDIOLOGIST. I THINK, AS A CARDIOLOGIST, HE
         25  WOULD BE HELPFUL TO THE COURT AND THE JURY IN EXPLAINING
page 507
         1   THINGS, LIKE THE ANATOMY OF THE HEART, LIKE CHOLESTEROL
         2   PLAQUES, THE FORMATION OF CLOTS, HOW THEY FORM, THE TYPE OF
         3   CLOTS THAT ARE FORMED, EVEN THE TYPE OF CLOT THAT MR. IRVIN
         4   HAD, IF HE LOOKED AT THE AUTOPSY REPORT AND CAN DIAGNOSE THAT
         5   PARTICULAR CLOT, THE SIGNIFICANCE OF CLOTS, HOW CLOTS AFFECT
         6   THE FUNCTIONING OF THE HEART, BUT I WON'T LET HIM TESTIFY AS TO
         7   THE PART, IF ANY, THAT VIOXX OR COX-2 INHIBITORS PLAYED IN MR.
         8   IRVIN'S DEATH. I DON'T FEEL THAT HE'S QUALIFIED BY VIRTUE OF
         9   EXPERIENCE, TRAINING, TO TESTIFY AS TO THE SPECIFIC CAUSE OF
         10  MR. IRVIN'S DEATH. A GENERAL CAUSE OF CLOTS, THE GENERAL
         11  FORMATION OF CLOTS, HOW THEY ARE FORMED, WHERE THEY ARE FORMED,
         12  WHAT TYPE OF CLOT MR. IRVIN HAD, WHERE IT WAS -- ALL OF THOSE
         13  THINGS HE HAS KNOWLEDGE AND EXPERIENCE, AND HE CAN TESTIFY TO.
         14  BUT SPECIFICALLY WITH REGARD TO VIOXX OR ANY COX-2
         15  INHIBITORS --
         16           MR. BIRCHFIELD: YOUR HONOR, DR. BALDWIN GIVES US THE
         17  CLEAREST, STRONGEST, SPECIFIC CAUSATION IN THE CASE, AND IT IS
         18  BASED ON HIS PRACTICE AS A PRACTICING CARDIOLOGIST. HE WORKS
         19  EVERY DAY WITH PATIENTS THAT HAVE HEART ATTACKS AND HAVE HEART
         20  ATTACKS AS A RESULT OF CLOTS.
         21            HE ALSO, HE KNOWS THE RISK FACTORS INVOLVED IN
         22  EACH OF THESE CASES AND DETERMINES WHAT ROLE RISK FACTORS PLAY.
         23  HE HAS EXAMINED THE MEDICAL RECORDS, HE'S EXAMINED THE
         24  TESTIMONY OF THE WITNESSES IN THIS CASE, AND HE IS PREPARED.
         25  HE HAS SAID UNDER OATH THAT BUT FOR VIOXX MR. IRVIN WOULD NOT
page 508
         1   HAVE HAD A FATAL HEART ATTACK ON THAT DAY, BUT HE DOES IT
         2   THOUGHT AN UNDIFFERENTIAL DIAGNOSIS, YOUR HONOR.
         3            THE COURT: I UNDERSTAND THAT. I DON'T SEE HIM
         4   QUALIFIED TO TESTIFY AS VIOXX. I THINK HE CAN TESTIFY RISK
         5   FACTORS. I THINK THAT'S WITHIN HIS EXPERTISE. HE CAN TESTIFY
         6   AS TO WHAT RISK FACTORS, IF ANY, IRVIN HAD, WHAT'S THE
         7   SIGNIFICANCE OF THE 60 PERCENT BLOCKAGE. ALL OF THOSE THINGS
         8   ARE WITHIN HIS PREROGATIVE. THIS INDIVIDUAL HAS NEVER
         9   DIAGNOSED ANYBODY WITH A VIOXX PROBLEM. HE DOESN'T KNOW
         10  ANYTHING ABOUT VIOXX. HE SAID THAT HE HAS -- THAT HE'S NOT A
         11  EXPERT IN VARIOUS FIELDS, BOTH IN HIS DEPOSITION AND IN HIS
         12  QUESTIONING. SO THAT'S MY RULING. I UNDERSTAND YOUR POSITION,
         13  BUT THAT'S MY RULING ON IT AND LET'S PROCEED. I'M TELLING YOU
         14  AT THE BENCH SO THAT I DON'T EMBARRASS ANYBODY, INCLUDING THE
         15  DOCTOR, IN FRONT OF THE JURY.
         16           MR. ISMAIL: THANK YOU, JUDGE. THANK YOU VERY MUCH.
```

[508:18] - [509:14]     12/1/2005    Irvin Plunkett Trial - Baldwin, Nies, Ray

```
page 508
         17  I APPRECIATE IT.
         18           MR. BIRCHFIELD: YOUR HONOR, MAY WE APPROACH FOR JUST
         19  A SECOND. I'VE GOT TO HAVE A BREAK IF -- BECAUSE HIS OPINIONS
         20  IN THIS CASE ARE VERY CLEAR WHEN I ASKED HIM, "DOCTOR, DID YOU
         21  FORM ANY OPINIONS IN THIS CASE?" "YES." "WHAT WERE THEY?"
         22  AND HE IS GOING TO SAY THAT VIOXX --
         23           THE COURT: I UNDERSTAND. I'LL TAKE A 10-MINUTE
         24  BREAK AT THIS TIME AND LET YOU GET SQUARED AWAY WITH HIM. YOU
         25  KNOW, I DON'T HAVE ANY PROBLEM WITH HIM TESTIFYING. ALL THE
page 509
         1   STUFF THAT HE'S TESTIFIED SO FAR IS OKAY, INCLUDING, YOU KNOW,
         2   A LITTLE BIT MORE OF THE ANATOMY OF THE CLOTS, RISK FACTOR, THE
         3   SIGNIFICANCE OF RISK FACTORS, ELIMINATING RISK FACTORS, WHAT
         4   RISK FACTORS HE WOULD HAVE HAD, THE SPECIFICS ON THE CLOT IN
         5   MR. IRVIN.
```

Exhibit B - 12/01/05 Plunkett Trial Transcript (Expert Challenge # 1)

• Expert Challenge No. 1 - Abramson

```
                   6            I'M ASSUMING AT THE AUTOPSY, HE OUGHT TO BE ABLE
                   7   TO LOOK AT THE AUTOPSY AND SAY WHERE IS THE CLOT OR WHERE THE
                   8   AUTOPSY PROTOCOL INDICATES THE CLOT IS, EVEN THE TYPE OF CLOT.
                   9   IF HE CAN DO THINGS FROM THERE, AND THE RISK FACTORS HE IS
                  10   AWARE OF FROM THE STANDPOINT OF REVIEWING THE MEDICAL DOCUMENTS
                  11   IN THE CASE.  BUT NOT THE PART THAT VIOXX HAS PLAYED.  I DON'T
                  12   THINK HE'S QUALIFIED TO DO THAT.  AND I THINK THERE ARE OTHER
                  13   PEOPLE WHO ARE QUALIFIED.  I'VE LOOKED AT THEM ALL, AND I TOLD
                  14   YOU-ALL PREVIOUSLY THIS.  OKAY?  WE'LL TAKE A BREAK HERE.
                  15            (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD IN
```

[509:21] - [515:1]      12/1/2005    Irvin Plunkett Trial - Baldwin, Nies, Ray

```
                  page 509
                  20            (WHEREUPON, THE COURT TOOK A BRIEF RECESS.)
                  21            THE COURT:  WE'RE OUT OF THE PRESENCE OF THE JURY.
                  22   COUNSEL IS REURGING THE MOTION TO RECONSIDER THE QUESTION OF
                  23   WHETHER OR NOT THE COURT'S DAUBERT MOTION OR 702 MOTION
                  24   ALLOWING THIS WITNESS TO TESTIFY WITH RESTRICTING HIS TESTIMONY
                  25   IN GENERAL THE ANATOMY OF THE HEART, THE FUNCTIONING OF THE
                  page 510
                   1   HEART, THE PHYSIOLOGY OF THE HEART, FUNCTIONING OF THE CLOTS,
                   2   STRUCTURE OF THE CLOTS AND EVEN THE SIGNIFICANCE OF THE TYPE OF
                   3   CLOT THAT MR. IRVIN HAD.  COUNSEL TAKES THE POSITION THAT HE
                   4   USED PROPER METHODOLOGY AND BRINGS TO THE COURT'S ATTENTION THE
                   5   FACT THAT HE DID REVIEW VARIOUS MATTERS.
                   6            PERHAPS I WASN'T OVERLY CLEAR IN THIS RULING.  I
                   7   DON'T NECESSARILY HAVE A PROBLEM WITH METHODOLOGY WITH THIS
                   8   WITNESS.  THIS WITNESS SEEMS TO ME TO HAVE READ SOME OF THE
                   9   ARTICLES AND HAS READ SOME OF THE MATERIAL THAT IS INTRODUCED
                  10   OR EITHER IN EVIDENCE NOW OR WILL BE IN EVIDENCE.  HE'S
                  11   REVIEWED SOME DEPOSITIONS THAT ARE RELEVANT TO THE MATTER.
                  12            THE PROBLEM THE COURT HAS WITH HIM ON 02 IS
                  13   QUALIFICATIONS, NOT METHODOLOGY.  IF I USE THE PROPER
                  14   METHODOLOGY, IF I LOOK AT ALL OF THE ARTICLES AND READ THE
                  15   ARTICLES AND COME TO THE CONCLUSION, I WILL HAVE USED THE
                  16   PROPER METHODOLOGY TO SATISFY DAUBERT, BUT I'M NOT A 702 EXPERT
                  17   BECAUSE MY QUALIFICATIONS BY VIRTUE OF EXPERIENCE, TRAINING IS
                  18   NOT THERE.
                  19            THIS INDIVIDUAL IS A CARDIOLOGIST, BUT HE KNOWS
                  20   NOTHING ABOUT VIOXX.  HE KNOWS NOTHING ABOUT COX-2 INHIBITORS
                  21   OTHER THAN WHAT HE'S READ.  HE HAS NO PERSONAL EXPERIENCE WITH
                  22   IT, NO TRAINING IN IT.  HE'S NOT AN EPIDEMIOLOGIST.  HE'S NOT A
                  23   RESEARCH SCIENTIST.  HE DOESN'T CONSIDER HIMSELF AN EXPERT IN
                  24   VIOXX.  HE DOESN'T CONSIDER HIMSELF AN EXPERT IN COX-2
                  25   INHIBITORS.  HE SAID THAT.  HIS QUALIFICATIONS ARE LACKING, NOT
                  page 511
                   1   A METHODOLOGY.
                   2            THE FACT THAT HE'S A CARDIOLOGIST DOESN'T MEAN
                   3   THAT HE OUGHT TO BE ABLE TO TESTIFY AS TO THE EXQUISITE
                   4   CAUSATION OF COX-2 INHIBITORS IN VIOXX.  THAT'S THE BASIS OF MY
                   5   RULING, NOT METHODOLOGY.
                   6            MR. BIRCHFIELD:  YOUR HONOR, IN REGARDS TO HIS
                   7   EXPERIENCE WITH VIOXX, I THINK THERE IS A MISPERCEPTION THERE.
                   8   HE WAS ASKED --
                   9            THE COURT:  HE TESTIFIED TO.
                  10            MR. BIRCHFIELD:  HE WAS ASKED IF HE EVER PRESCRIBED
                  11   VIOXX, BUT HE DID NOT, BUT HE TREATED A LARGE NUMBER OF
                  12   PATIENTS THAT WERE ON VIOXX BECAUSE PATIENTS WOULD COME TO HIM
                  13   FOR CARDIAC PROBLEMS.
                  14            HE HAS REVIEWED, IN THE COURSE OF HIS PRACTICE
                  15   AS HE DOES AS A CARDIOLOGIST, WHETHER A PARTICULAR DRUG HAS AN
                  16   IMPACT ON THE CARDIAC CONDITION OF PATIENTS.  HE HAS DONE THAT
                  17   WITH VIOXX.  HE MAKES THOSE RISKS AND BENEFIT ANALYSES.  HE HAS
                  18   DONE THAT IN REGARDS TO VIOXX AND OTHER COX-2 INHIBITORS, AND
                  19   HE CAME TO THE CONCLUSION THAT THEY ARE PROTHROMBOTIC AND DID
                  20   NOT PRESCRIBE IT FOR THAT REASON.  SO HE HAS -- HE HAS
                  21   CONSIDERABLE EXPERIENCE, YOU KNOW, WITH VIOXX.
                  22            THE FACT THAT HE DID NOT PRESCRIBE IT DOES NOT
                  23   EQUATE TO HIM NOT HAVING EXPERIENCE THERE.  HE REVIEWED THE
                  24   LITERATURE NOT ONLY IN PREPARATION FOR THIS CASE, BUT HE ALSO
```

Exhibit B - 12/01/05 Plunkett Trial Transcript (Expert Challenge # 1)

• Expert Challenge No. 1 - Abramson

```
            25      REVIEWED THE MEDICAL LITERATURE THAT PERTAINS TO VIOXX IN THE
         page 512
            1       COURSE OF TREATING HIS PATIENTS.
            2               SO HE DOES HAVE EXTENSIVE EXPERIENCE, YOUR
            3       HONOR, YOU KNOW, WITH VIOXX, AND ON THE CROSS-EXAMINATION, WHEN
            4       HE WAS ASKED ABOUT THAT, THAT WAS A LIMITED VIEW.  IT DOES NOT
            5       FULLY DESCRIBE WHAT HIS EXPERIENCE WAS, AND THAT GOES DIRECTLY
            6       TO HIS QUALIFICATION.
            7               MR. SIZEMORE:  YOUR HONOR, MAY I?  DURING THE DAUBERT
            8       HEARINGS WE MOVED VERY QUICKLY AND I DID PUT UP AND INTRODUCE
            9       SEVERAL DEPOSITION EXCERPTS FROM DR. BALDWIN, AND WE NOT HAVE
           10       GONE OVER THOSE YET.  HE ACTUALLY TESTIFIED THAT HE HAD SEEN
           11       VIOXX AND CELEBREX ADVERSE EVENTS ESPECIALLY IN PATIENTS WHO
           12       HAD DEVELOPED CONGESTIVE HEART FAILURE AND/OR HAD EXACERBATION
           13       OF HYPERTENSION AND RENAL INSUFFICIENCY.
           14               HE SAID THAT HE HAD TREATED PATIENTS FOR THOSE
           15       CONDITIONS.  HE HAD ACTUALLY SAID -- THE QUESTION WAS, "ON HOW
           16       MANY OCCASIONS DID YOU ADVISE PATIENTS TO DISCONTINUE VIOXX DUE
           17       TO A SUGGESTED INCREASED RISK OF MI," THE EXACT ISSUE WE'RE
           18       HERE TODAY ABOUT, JUDGE, AND HE SAID IT WOULD BE GREATER THAN
           19       20 AND LESS THAN A HUNDRED TIMES.
           20               THE COURT:  ALL RIGHT.  LET ME HEAR --
           21               MR. ISMAIL:  YOUR HONOR, THE WITNESS TESTIFIED TODAY
           22       AS HE DID IN HIS DEPOSITION THAT DICKY IRVIN IS THE FIRST MAN
           23       HE'S EVER DIAGNOSED WITH A VIOXX-RELATED THROMBOTIC EVENT.
           24       MR. SIZEMORE IS READING THE WITNESS' COMMENTS THAT IN REGARDS
           25       TO HYPERTENSION AND EDEMA, A CLASS EFFECT WITH ALL NSAIDS,
         page 513
            1       WHICH IS NOT AT ISSUE IN THIS CASE.
            2               AND SO THE FACT THAT ANY DOCTOR HAS SEEN EDEMA
            3       WITH AN NSAID DOES NOT RENDER THEM QUALIFIED TO COME TO THIS
            4       COURTROOM AND SAY THAT DICKY IRVIN DIED OF A BLOOD CLOT IN HIS
            5       HEART.  HE'S NEVER DONE IT BEFORE HE WALKED INTO THIS COURTROOM
            6       FOR THE FIRST TIME.
            7               WITH RESPECT TO HIS QUALIFICATIONS, YOUR HONOR,
            8       THAT HE'S NOT ONLY NOT PRESCRIBED COX-2'S NEVER DIAGNOSED A
            9       THROMBOTIC EVENT FROM A COX-2, AND WE BELIEVE THAT HIS REVIEW
           10       OF THE LITERATURE, I KNOW YOU'VE SEEN COMMENTS THAT HE'S READ
           11       SOME OF THE LITERATURE, HIS OPINION IN THIS CASE IS, IT IS
           12       PROTHROMBOTIC BECAUSE HE'S READ DR. RAY'S REPORT, HE'S READ
           13       DR. LUCCHESI REPORT.  BOTH OF THOSE WITNESSES ARE GOING TO
           14       TESTIFY IN THIS CASE.  YOU DON'T NEED HIM TO PARROT BACK WHAT
           15       THOSE TWO WITNESSES HAVE SAID.  HE'S NOT INDEPENDENTLY
           16       QUALIFIED TO OPINE.
           17               THE COURT:  I DO UNDERSTAND THE ISSUE.  I'VE THOUGHT
           18       ABOUT IT.  I'VE READ THE DEPOSITION, AND THE BEST I CAN DO IS
           19       JUST LOOK IT OVER AND MAKE MY RULING, SO THAT'S MY RULING.
           20       NOW, IT WAS BASED ON THE FACT THAT I'M NOT QUESTIONING THE
           21       METHODOLOGY, BECAUSE HE'S USED SOME PROPER METHODOLOGY.  HE'S
           22       READ THE MATERIAL, HE'S STUDIED THE DOCUMENTS, BUT MY PROBLEM
           23       WITH THIS WITNESS IN THIS PARTICULAR CASE IS THAT HIS
           24       EXPERIENCE LEVEL DOESN'T GIVE HIM EXPERTISE TO SATISFY EVEN THE
           25       FIRST HURDLE.
         page 514
            1               AS I SAID, IF I USE THE PROPER METHODOLOGY, I'LL
            2       PASS DAUBERT, BUT I'VE GOT TO FIRST BE ABLE TO GET PAST THE
            3       EXPERIENCE LEVEL.  AND I AGREE, I HEARD HIM SAY THIS IS THE
            4       FIRST TIME.  I'VE NEVER SEEN ANYBODY WITH -- THEN HE SAID,
            5       WELL, SINCE MY DEPOSITION, I REALIZED THAT I SAW ONE PERSON
            6       THAT I TREATED WITH VIOXX.  I MEAN, I HEARD HIM TESTIFY TO
            7       THAT.  THAT'S WHAT HE SAID ON THE STAND.
            8               MR. MEUNIER:  BUT, YOUR HONOR, UNDER 702 YOU CAN BE
            9       QUALIFIED NOT JUST BY EXPERIENCE BUT BY KNOWLEDGE.
           10               THE COURT:  I'M SATISFIED HE DOESN'T HAVE THE
           11       KNOWLEDGE.  THAT'S MY RULING.
           12               MR. BIRCHFIELD:  TWO POINTS, YOUR HONOR.  ONE, WE
           13       PREPARED OUR CASE BASED ON THE DAUBERT RULINGS AND HIM BEING
           14       ABLE TO GIVE SPECIFIC CAUSATION IN THIS CASE.  AND HE IS -- HE
           15       IS QUALIFIED, YOUR HONOR, HE DOES -- TO MAKE A DIFFERENTIAL
           16       DIAGNOSIS AS TO CARDIAC EVENTS.  HE DOES IT EVERY DAY AS PART
           17       OF HIS PRACTICE.
           18               THE COURT:  I UNDERSTAND.  I TALK TO YOU-ALL AT THE
```

**Exhibit B - 12/01/05 Plunkett Trial Transcript (Expert Challenge # 1)**

- **Expert Challenge No. 1 - Abramson**

```
19      BENCH AS NOT TO EMBARRASS THE DOCTOR.  I'M ALWAYS CONCERNED
20      ABOUT TELLING SOMEBODY IN OPEN COURT WHERE WE'VE GOT PRESS AND
21      EVERYTHING, YOU'RE NOT QUALIFIED TO TESTIFY.  HE'S AN
22      EXPERIENCED DOCTOR.  HE'S A HARD-WORKING DOCTOR.
23               SO I TELL YOU THIS AT THE BENCH SO YOU KNOW MY
24      RULING, AND I RESERVED RULING ON THIS SPECIFIC POINT DURING
25      DAUBERT, AND SO I'M NOW TAKING THAT POSITION.  BUT THANK YOU
page 515
1       VERY MUCH.
2                MR. SIZEMORE:  YOUR HONOR, FOR THE RECORD CAN I JUST
```