# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRETRIAL ORDER

The following constitutes the Proposed Pretrial Order to be entered in the above-styled case.

**Trial Date:**                          September 11, 2006

**Pretrial Conference Date:**            August 31, 2006

**Trial Attorneys:**

> For the Plaintiff:
>
> Mikal Watts
> **WATTS LAW FIRM LLP**
> Tower II Building, 14th Floor
> 555 North Carancahua Street
> Corpus Christi, Texas 78478
> (361) 887-0500; fax (361) 887-0055

John Boundas
Steve Kherkher
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

For the Defendant:

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
**Bartlit Beck Herman Palenchar & Scott, LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

1.   **Parties:**

Plaintiff:  Garry Smith.

Defendant:  Merck & Co., Inc.

2.   **Jurisdiction:**

A.   The jurisdiction of this Court is based on diversity of citizenship under 28 U.S.C. § 1332.

B.   It is stipulated that this claim exceeds $75,000.

C.   Jurisdiction is uncontested by the parties.

3.   **Procedural History and Posture/Pending Motions:**

Garry Smith filed his Complaint on September 29, 2005, in the United States District Court for the Eastern District of Louisiana as part of *In re Vioxx Product Liability Litigation,* MDL No. 1657.  Plaintiff asked for a trial by jury on all issues.

Merck & Co. answered the Complaint on December 5, 2005.

A.   Plaintiff's Motions:

(1)     Plaintiff has filed the following *Daubert* motion:

    A.  Plaintiff's Motion to Exclude Argument or Opinion Testimony that an
Increased Risk of Heart Attack Exists Only After 18 Months of Vioxx Use

(2)     Plaintiff has filed the following motions *in limine*:

    A.  Miscellaneous Motion to Exclude or, in the Alternative, Motion in Limine
and/or Request for Limiting Instruction (Motion in Limine No. 1)

    B.  Motion to Exclude or, in the Alternative, Motion in Limine Concerning
Evidence or Argument that Merck Employees, Former Employees, or
Their Family Members Took Vioxx Prior to the Drug's Withdrawal from
the Market (Motion in Limine No. 2)

    C.  Motion to Exclude or, in the Alternative, Motion in Limine Concerning
Evidence or Discussion Concerning Defendant's Alleged Good
Reputation and/or "Good Acts" (Motion in Limine No. 3)

    D.  Motion to Exclude or, in the Alternative, Motion in Limine Concerning
Defendant's Argument that it was Prohibited by FDA Regulations from
Making Label Changes Without Prior Approval  (Motion in Limine No. 4)

    E.  Motion to Exclude or, in the Alternative, Motion in Limine Concerning
Merck Employees' Offering Undisclosed Expert Opinions (Motion in
Limine No. 5)

    F.  Motion to Exclude or, in the Alternative, Motion in Limine Concerning
Annual Deaths Attributable to NSAID Gastropathy (Motion in Limine No.
6)

    G.  Motion to Exclude or, in the Alternative, Motion in Limine Re: The April
6, 2005 FDA Memorandum (Motion in Limine No. 7)

(3)     Plaintiff has filed the following other motions:

    A.  Motion To Compel Discovery Responses Of Merck & Co., Inc. (filed
August 18, 2006)

    B.  Motion To Deem Answers To Plaintiff's Request For Admissions
Admitted (filed August 23, 2006)

    C.  Plaintiff's Memorandum in Opposition to Defendant's Omnibus Motion to
Exclude Evidence and Testimony on Issues Previously Addressed by the
Court, and Plaintiff's Motion to Strike

B.   Defendant's Motions:

(1)   Merck has filed the following *Daubert* motions:

A.  Motion for Order Excluding Testimony of John D. Abramson, M.D. (Expert Challenge No. 1)

B.  Motion for Order Excluding Testimony of Gary Sander, M.D. (Expert Challenge No. 2)

C.  Motion for Order Excluding Testimony of Cornelia Pechmann, Ph.D. (Expert Challenge No. 3)

D.  Motion for Order Excluding Testimony of Douglas P. Zipes, M.D. (Expert Challenge No. 4)*

E.  Motion to Exclude Testimony of Richard M. Kapit, M.D. (Expert Challenge No. 5)*

F.  Motion for Order Excluding Testimony of John W. Farquhar, M.D. (Expert Challenge No. 6)*

G.  Motion for Order Excluding Testimony of Jerry Avorn, M.D. (Expert Challenge No. 7)

H.  Motion for Order Excluding Certain Testimony of Richard A. Kronmal, Ph.D. (Expert Challenge No. 8)

I.  Motion to Exclude Testimony of Wayne A. Ray, Ph.D. (Expert Challenge No. 9)*

J.  Motion for Order Excluding Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis (Expert Challenge No. 10)

K.  Motion for Order Excluding Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk (Expert Challenge No. 11)

L.  Motion for Order Excluding Testimony of Lemuel A. Moye, M.D., Ph.D. (Expert Challenge No. 12)

* These are moot given plaintiff's decision not to call Drs. Zipes, Kapit, Farquhar and Professor Ray.

(2)   Merck has filed the following motions in *limine*:

A. Motion to Exclude Communications Between Merck and the FDA in 2005 About the Potential Reintroduction of Vioxx® to the Market and/or Any Proposed Black Box Warning (Motion in *Limine* No. 1)

B. Motion to Exclude Testimony or Argument that Merck (1) Should or Could Have Unilaterally Changed the Vioxx Label to Include the VIGOR Data; or (2) "Dragged its Feet" to Prevent the VIGOR Data From Being Added to the Vioxx Label (Motion in *Limine* No. 2)

C. Motion to Exclude Evidence of, or Reference to, Marketing and Promotional Materials Unrelated to Mr. Smith or His Prescribing Physician Dr. Michael Grefer (Motion in *Limine* No. 3)

D. Motion to Exclude Testimony of David Graham, M.D. (Motion in *Limine* No. 4)

E. Motion to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees (Motion in *Limine* No. 5)

F. Omnibus Motion to Exclude Evidence and Testimony on Issues Previously Addressed by the Court. (Motion in *Limine* No. 6)

G. Motion to Exclude Improper Reference to Merck's Defense of Other Vioxx-Related Lawsuits and Questions or Argument Pertaining to Number of Times Merck Witnesses Have Testified (Motion in *Limine* No. 7)

(3)    Merck has filed the following other motions:

A. Motion for a Protective Order Applicable to Plaintiff's First Set of Requests for Admissions (filed August 25, 2006)

B. Motion for an Extension in Time for Responding to Plaintiff's Requests for Admissions (filed August 25, 2006)

## 4.    Plaintiff's Claims:

In 1988, Garry Smith injured his ACL playing softball, experiencing swelling and pain related to this injury.  From 1988-2002, Mr. Smith treated pain associated with his right knee with regular NSAIDs such as prescription drug Diclofenac or over-the-counter drugs such as Aleve and Ibuprofen.  On October 2, 2002, Mr. Smith was given samples of and prescribed Vioxx (rofecoxib), which is manufactured and marketed by Defendant Merck & Co.  Mr. Smith used Vioxx as prescribed and in a reasonable foreseeable manner for approximately four and a half months.  Mr. Smith may have abstained from taking Vioxx on October 30, 2002, when he underwent arthroscopic surgery for his injured knee.  As a direct and proximate result of taking

Vioxx, Mr. Smith contends he suffered a heart attack on February 17, 2003. His heart attack required immediate cardiac catheterization. Mr. Smith contends that he has past and future damages. Mr. Smith contends that Vioxx and Merck's actions in designing and marketing Vioxx were substantial contributing factors in causing Mr. Smith's heart attack and associated damages.

Plaintiff contends the following:

- Merck negligently failed to adequately study and test Vioxx for potential cardiovascular risks

- Merck failed to adequately warn the Plaintiff and the Plaintiff's doctors concerning the potential serious cardiovascular risks of Vioxx

- Merck concealed from doctors and the Plaintiff known or knowable information regarding the potential cardiovascular risks concerning Vioxx

- Merck breached its implied and/or express promises to consumers that Vioxx was reasonable safe for long-term daily use

Based on evidence of these and other facts, Plaintiff asserts claims arising in strict liability – failure to warn and defective design. Plaintiff also asserts claims of negligence, gross negligence, negligent misrepresentation, breach of implied and express warranty and common law fraud-failure to disclose. Plaintiff seeks the following damages:

1) General damages in an amount according to proof

2) Special damages in an amount within the jurisdiction of the Court and according to proof

3) Past and future medical expenses

4) Punitive Damages

5) Restitution or disgorgement of profits and other equitable relief

6) Injunctive Relief

7) Attorney's fees

8) Cost of the suit herein

9) For prejudgment interest as provided by law; and

10) For such other and further relief the Court may deem proper.

5.      **Defendant's Claims:**

Merck contends that there is no evidence that the use of Vioxx at the dose and duration of Mr. Smith's usage causes an increased risk of thrombotic cardiovascular events such as myocardial infarctions.  Merck also contends that there is no evidence that Mr. Smith's purported use of Vioxx actually caused his myocardial infarction, but that Mr. Smith's alleged injuries were caused instead by his independent health risk factors.

Further, Merck contends that its warnings and instructions to Mr. Smith's prescribing physicians were adequate and complied with the rules of the FDA.  Merck also asserts that it acted reasonably and that it disclosed to the FDA all relevant Vioxx safety data and risk information in a timely and responsible manner.  Regardless, there is no evidence that any allegedly inadequate warnings impacted the decisions of Mr. Smith's physicians to prescribe Vioxx to Mr. Smith.  Plaintiff cannot show that additional or different information would have changed their prescribing decisions.  Nor can plaintiff show that Mr. Smith or his physicians detrimentally relied on any Vioxx-related statements Merck made.

6.      **Uncontested Material Facts:**

By Plaintiff:

A.      Mr. Smith took Vioxx.

B.      Mr. Smith suffered a heart attack on February 17, 2003.

C.      Vioxx was designed, manufactured, and marketed by Defendant, Merck & Co., Inc.

D.      The Vioxx taken by Mr. Smith were in substantially same condition as when drug left control of Defendant, Merck & Co., Inc.

E.      Mr. Smith relied on his physician's advice.

By Defendant:

A.      Vioxx is prescription pain medication regulated by the United States Food and Drug Administration ("FDA").  It is a member of the class of drugs known as non-steroidal anti-inflammatory drugs ("NSAIDs"), which are used to treat pain and inflammation.

B.      In May 1999, the FDA first approved Vioxx for marketing and distribution within the United States.

C.      Mr. Smith is a 56-year old man with osteoarthritis in his hands and knee.

D.      Mr. Smith received a prescription for Vioxx at the 25 mg dose from Dr. Grefer on October 2, 2002.

E.   Mr. Smith relied on his physician's advice in deciding to take Vioxx.

F.   On February 17, 2003, Mr. Smith was hospitalized for chest pain and was diagnosed with a myocardial infarction.

G.   During his hospital stay, Mr. Smith underwent cardiac catheterization, which showed a high-grade proximal right coronary artery lesion of 70-80%, a circumflex lesion of 60% followed by a 50 and 40% as well as a proximal 30% LAD lesion.  His LV-gram showed a subtle inferior hypokinesis but his ejection fraction was estimated at 60%. In the same setting, he underwent primary stenting of the right coronary with reduction in stenosis from 80% to 0%.

H.   On September 30, 2004, Merck announced that it had decided to withdraw Vioxx from the market.  This decision followed the release of interim data from a clinical trial, APPROVe, which was commissioned and financed by Merck.

I.   At all times relevant to this action, Vioxx was approved by the FDA for marketing and distribution within the United States.


**7.   Contested Issues of Fact:**

By Plaintiff:

A.   Vioxx is in a special class of COX-2 pain relievers, which have differences from NSAIDs.

B.   Mr. Smith had previously seen ads for Vioxx, which did not alert him to the cardiovascular risks associated with Vioxx usage.

C.   Merck failed to do adequate and reasonable testing, studying and evaluation of Vioxx for potential CV risks, including the build-up of plaque rupture and thrombotic events; Merck failed to follow the testing recommended by its advisors regarding atherosclerotic and CV risks.

D.   Vioxx significantly increased the risk of serious side effects such as heart attacks and cerebrovascular adverse events such as ischemic strokes, and other serious injuries.

E.   Defendant concealed significant parts of its knowledge of Vioxx's increased cardiovascular risks from the Plaintiff, other consumers, and the medical community.

F.   Merck successfully downplayed and, in certain instances, concealed the fact that Vioxx significantly increased the risk of adverse thrombotic events, including cardiovascular and cerebrovascular injuries such as myocardial infarctions (heart attacks) and strokes, until the drug was recalled in late September 2004, and continues to do so since the recall.

G.     Merck failed to warn the medical community and patients of the true nature of the serious cardiovascular and cerebrovascular adverse events caused by using Vioxx.

H.     Merck over-promoted its Vioxx label and aggressively marketed Vioxx by falsely misleading potential users and prescribing physicians such as the Plaintiff's about the product and by failing to warn and protect the consumers from serious dangers associated with the use of the drug.

I.     Merck misrepresented, understated and otherwise downplayed the serious health hazards and risks associated with Vioxx.

J.     Defendant failed to conduct adequate and sufficient pre-marketing and post-marketing testing, studying or surveying of Vioxx.

K.     Merck knowingly downplayed and, in certain instances, withheld from publication, the risk and severity of cardiovascular and cerebrovascular risks associated with Vioxx.  For example, Merck downplayed this information in connection with the New England Journal of Medicine's November 2000 report regarding the VIGOR study, written by Merck sponsored authors.

L.     In the VIGOR study, Merck ignored the causal relationship between Vioxx and the significantly increased rate of cardiovascular events.  Merck widely and continuously disseminated the *post hoc* litigation position that the VIGOR study showed that Naproxen reduced cardiovascular risk, *i.e.*, it was "cardioprotective effect" -- not that Vioxx posed a serious cardiovascular risk.

M.     The FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") reviewed promotional activities and materials and warned Merck that its marketing of Vioxx was: false, lacked fair balance, and was otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations.

N.     According to the FDA's September 17, 2001, Warning Letter issued to Mr. Raymond Gilmartin, CEO of Merck & Co.:

    a.   Merck, its agents, employees and representatives minimized the rate of myocardial infarctions.

    b.   Merck knew it was misleading to assert "that Vioxx does not increase the risk of [heart attacks] and that the VIGOR finding is consistent with Naproxen's ability to block platelet aggregation like aspirin.  That is a possible explanation, but if you fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation, that Vioxx may have pro-thrombotic properties."

    c.   Merck knew that the promotional statement was false because the reason for the difference between the MI outcomes for the Vioxx users versus the Naproxen users had not yet been determined;

    d.   DDMAC reprimanded Merck for misrepresenting claims regarding the efficacy of Vioxx as compared to its competitor Celebrex;

    e.   Merck failed to point out that the more affordable and safer alternative was Naproxen.

O.    From its inception until Vioxx was pulled form the market, Merck systematically attempted to intimidate physicians or other "thought leaders" in the medical community who sought to raise concerns regarding the cardiovascular safety of Vioxx.

P.    Merck undertook another clinical study called ("APPROVe") – a trial of Vioxx, 25 mg/day.

Q.    At its first meeting in or about January 2002, the External Safety Monitoring Board ("ESMB") for the APPROVe trial voiced concerns regarding "trends noted in serious adverse clinical events and in thromboembolic events."

R.    On or about September 17, 2004, the ESMB recommended that participating patients in APPROVe be instructed to discontinue treatment because of "trends noted in serious adverse clinical events and in thromboembolic events."

S.    Merck, using junk science, misrepresents that the APPROVe study did not show a difference between the incidences of cardiovascular injuries until after 18 months of exposure to Vioxx.  However, Merck concealed from the public its internal analysis showing that, in fact, there was a higher incidence of such injuries in the Vioxx group in both the 0 to 18 months and 19-36 months exposure periods, when all events reported by the clinical trial investigators are considered.  Merck included this data in a January 2005 draft of the APPROVe study, but excluded it from the version submitted for publication a month later.  Thus, contrary to the statements Merck has repeatedly made to the public and FDA, the APPROVe data actually show that Vioxx is dangerous in both short-term and long-term users.  Due to follow-up data from the APPROVe study, the New England Journal of Medicine recently debunked and denounced Merck's 18-month litigation concoction.

T.    APPROVe reinforces the conclusion that the increased thromboembolic events of VIGOR were due to Vioxx cardiovascular toxicity rather than supposed cardio-protective nature of Naproxen.

U.    APPROVe showed a statistically significant relative risk of 2.80 for the cardiovascular events category including fatal and non-fatal MI, sudden death due to cardiac causes, and unstable angina.  APPROVe also showed a 3.82 relative risk for

Vioxx over placebo for persons with blood pressure spikes while on Vioxx.  There was a similar relative risk for the increased risk group on Vioxx over placebo as well.

V.       In addition to MI, Merck was aware that Vioxx could accelerate atherosclerosis and make plaque more likely to rupture.  Merck failed to warn doctors or consumers of this fact.

W.      As a result of taking Vioxx, and Defendant's actions, Mr. Smith suffered a heart attack on February 17, 2003.  This heart attack required immediate cardiac catheterization.  As a result of his heart attack, Mr. Smith sustained permanent death of heart muscle and is at greater risk for serious harm in the future.  Plaintiff accordingly seeks compensatory and punitive damages.

By Defendant:

A.       There is no scientifically reliable evidence that the use of Vioxx for approximately four months causes or leads to an increased risk of cardiovascular events, including myocardial infarction.

B.       There is no scientifically reliable evidence that the use of Vioxx actually reduced the level of prostacyclin in Mr. Smith's coronary vasculature.

C.       Further, there is no evidence that Mr. Smith's purported use of Vioxx actually caused his myocardial infarction or any of his alleged injuries.

D.       Until the APPROVe data were released, the weight of the available scientific evidence indicated that Vioxx did not pose an increased risk of thrombotic cardiovascular events as compared with patients taking a placebo.

## 8.       Contested Issues of Law:

By Plaintiff:

A.       The strict liability of Defendant Merck & Co., Inc., for the defective design of Vioxx, distributing Vioxx in a defective condition unreasonably dangerous to the user, and for the defective marketing of Vioxx.

B.       The negligence failure of Merck to warn about the foreseeable risks associated with the use of Vioxx.

C.       The negligence of Merck & Co., for the failure to exercise ordinary care in the design and manufacture of Vioxx when they knew or should have known that Plaintiff could foreseeably suffer injury as a result.

D.   The breach of express and implied warranty by Merck that Vioxx was safe and fit for its intended use.

E.   That Merck intentionally and fraudulently concealed or suppressed the truth about the dangers of Vioxx with the intent to defraud the Plaintiff.

F.   The negligent misrepresentation by Merck & Co., that induced Plaintiff to purchase and use Vioxx without knowledge of the true facts of the dangers of Vioxx and/or the negligent misrepresentation that failed to alert Plaintiff to the true facts of the dangers of Vioxx and therefore did not deter him from purchasing and using Vioxx.

G.   The cause and extent of Mr. Smith's heart attack.

H.   The amount of compensatory damages suffered by the Plaintiff.

I.   The amount of punitive damages warranted by Merck's wantonness, willfulness or reckless disregard for the rights of safety and well-being of people who were prescribed Vioxx during the time it was on the market without any or adequate warning of the cardiovascular dangers associated with the drug.

J.   The appropriateness of bifurcating the trial.  Plaintiff asserts that the trial of this case should not be bifurcated.  In the event that the trial is bifurcated by the Court, Plaintiff urges the Court to admit evidence of conscious disregard and submit appropriate jury interrogatories in Phase I of the trial.

K.   All other defenses asserted by Merck at the trial of this cause.


By Defendant:

A.   The lack of scientifically reliable evidence to show general and/or specific causation.

B.   Plaintiff's failure to show that Vioxx was defectively marketed or that additional or different warnings would have changed the decisions of Mr. Smith's physicians to prescribe Vioxx to Mr. Smith.

C.   Plaintiff's failure to prove that Vioxx had a design defect or that there was a safer alternative design.

D.   Preemption, by federal law, of plaintiff's failure to warn and design defect claims.

E.   Whether plaintiff has presented sufficient evidence to overcome the presumption that Vioxx was not defective or unreasonably dangerous.

F.   Whether plaintiff is entitled to compensatory and/or punitive damages.

G.  The appropriateness of bifurcating the trial, separating the question of entitlement to and amount of punitive damages from the question of compensatory damages.  Merck contends that such bifurcation is warranted and may be ordered within the Court's discretion.

H.  Plaintiff's failure to prove that Merck made any material misrepresentations about the safety or efficacy of Vioxx or that Merck concealed or failed to disclose any material facts regarding Vioxx.

I.  Plaintiff's failure to prove that Merck breached any warranty, express or implied, regarding the safety or efficacy of Vioxx.

**9.     Exhibits:**

By Plaintiff:

The items listed on Plaintiff's Exhibit List (Attachment "A") may be offered, introduced, and/or filed into the record at the trial of this matter.

By Defendant:

The items listed on Defendant's Exhibit List (Attachment "B") may be offered, introduced, and/or filed into the record at the trial of this matter.

**10.     Editing Trial Depositions/Filing Objections:**

For the Court's convenience, the parties will submit a single binder for each witness who may testify by video deposition containing each party's designations and the opposing party's objections.  The witnesses who may testify via video deposition are listed under No. 12 below.

**11.     <u>Listing of Charts, Graphs, Models, etc. for Use in Opening/Closing Statements</u>:**

Plaintiff has not made a final decision regarding the demonstratives to be used during his opening statement and closing argument.

Defendant has not made a final decision regarding the demonstratives to be used during its opening statement and closing argument.

**12.     <u>Witnesses</u>:**

Plaintiff may call the following witnesses either in person or by video deposition.  This list does not include those witnesses for whom Plaintiff would seek to counter-designate deposition testimony if Defendant seeks to introduce deposition testimony from the same

witness.  Additional depositions may be taken before or during trial; Plaintiff reserves the right to supplement this list to include some or all of those additional witnesses and depositions.  Plaintiff reserves the right to call any witness designated by Merck.

A.  John Abramson, M.D.
Clinical Instructor in Ambulatory Care and Prevention
Harvard Medical School
39 Spring Street  An
Ipswich, MA 01938
978-312-1225
Testimony: Family physician.  Anticipated testimony is reflected in witness' expert report and deposition.

B.  David Anstice
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889
Testimony: Merck President for Human Health.  Anticipated testimony is reflected in witness' depositions and former testimony.

C.  Jerry Avorn, M.D.
Professor of Medicine at Harvard Medical School
Chief of the Division of Pharmacoepidemiology and Pharmacoeconomics at Brigham and Women's Hospital.
75 Francis Street, Boston, MA 02115, USA
(617) 732-5500
Testimony: Epidemiologist.   Anticipated testimony is reflected in witness' expert report and MDL deposition.

D.  Susan Baumgartner
Current address unknown.
Testimony: Former Marketing Manager at Merck. Anticipated testimony is reflected in witness' MDL deposition.

E.  Mary Blake
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889

F.  Ned Braunstein
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889

G.  Thomas Cannell
Merck & Co., Inc.

One Merck Drive
Whitehouse Station, NJ 08889

H.    Carolyn Cannuscio
Current address unknown.
Testimony:  Former epidemiologist, Merck & Co., Inc.  Anticipated testimony is
reflected in witness' MDL deposition.

I.    J. Martin Carroll
President and CEO
Boehringer Ingelheim Pharmaceuticals, Inc.
900 Ridgebury Road
P.O. Box 368
Ridgefield, CT 06877
(203) 798-9988
Testimony:  Former Executive Vice President, Primary Care Sales & Managed
Care, Merck & Co., Inc.  Anticipated testimony is reflected in witness' MDL
deposition.

J.    Daniel Courtade, M.D.
900 Medical Village Drive
Edgewood, KY 41017
Testimony: Plaintiff Garry Smith's Cardiologist. Anticipated testimony is
reflected in witness' deposition.

K.    Gregory Curfman, M.D.
10 Shattuclc Street
Boston, MA 021 15-6094
Testimony: Executive editor for the *New England Journal of Medicine*.
Anticipated testimony is reflected in witness' MDL deposition.

L.    Laura Demopoulos, M.D.
University of Pennsylvania
3451 Walnut Street, Philadelphia, PA 19104
215-898-5000
Testimony:  Former Senior Director of Cardiovascular Research at Merck
Laboratories.  Anticipated testimony is reflected in witness' MDL depositions.

M.    Wendy Dixon
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889
Testimony: Former Senior Pharmaceutical representative at Merck.  Anticipated
testimony is reflected in witness' MDL deposition.

N.    Raymond Gilmartin

c/o Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60610
Testimony: Former CEO of Merck & Co., Inc. Anticipated testimony is reflected
in witness' depositions and former testimony.

O.     David Graham, M.D.
       FDA
       5600 Fishers Lane
       Rockville, Maryland 20857
       Testimony: Anticipated testimony is reflected in witness' MDL deposition.

P.     Michael A. Grefer, M.D.
       Commonwealth Orthopaedic Center, P.S.C.
       340 Thomas More Parkway,
       Suite 260
       Crestview Hills, KY 41017
       859-341-6440
       Testimony:  Garry Smith's Vioxx prescribing doctor.  Anticipated testimony is
       reflected in witness' MDL deposition.

Q.     Richard A. Kronmal
       University of Washington at Seattle
       Seattle, WA  98195
       (206) 543-2100
       Testimony: Biostatistician and Professor, Department of Biostatistics.
       Anticipated testimony is reflected in witness' MDL deposition.

R.     Briggs Morrison, M.D.
       Merck & Co., Inc.
       One Merck Drive
       Whitehouse Station, NJ 08889

S.     Lemuel Moyé, III, M.D.
       University of Texas School of Public Heath
       Division of Biostatistics
       1200 Pressler Drive
       Houston, TX 77030
       Testimony:  Biostatistics, epidemiology, warnings, testing and FDA expert.
       Anticipated testimony is reflected in witness' expert report and MDL deposition.

T.     Dr. Alan Nies
       c/o Bartlit Beck Herman Palenchar & Scott LLP
       Courthouse Place
       54 West Hubbard Street

Chicago, IL 60610
Testimony: Former Senior Vice President of Clinical Research at Merck Research
Laboratories.

U.     Connie Pechmann
       University of California, Irvine
       The Paul Merage School of Business
       Irvine, CA  92697-3125
       Testimony:  Marketing expert.  Anticipated testimony is reflected in her expert
       report and MDL deposition.

V.     Alise Reicin
       Merck & Co., Inc.
       One Merck Drive
       Whitehouse Station, NJ 08889

W.     Gary Edward Sander, M.D.
       Gulf Regional Research & Educational Services, LLC
       500 Mariner's Plaza, Suite 509
       Mandeville, LA  70448
       985-951-8583
       Testimony:  Cardiologist.  Anticipated testimony is reflected in his expert report
       and MDL deposition.

X.     Nancy Santanello
       Merck & Co., Inc.
       One Merck Drive
       Whitehouse Station, NJ 08889

Y.     Dr. Edward Scolnick
       Merck & Co., Inc.
       One Merck Drive
       Whitehouse Station, NJ 08889
       Testimony: Former President of Merck Research Laboratories. Anticipated
       testimony is reflected in his MDL deposition.

Z.     Eric Topol, M.D.
       c/o Mintz Levin Cohn Ferris Glovsky and Poppeo, P.C.
       One Financial Center
       Boston, MA 02111
       Testimony: Cardiologist.  Anticipated testimony is reflected in the witness' MDL
       deposition.

AA.    Jan Weiner
       Merck & Co., Inc.
       One Merck Drive

Whitehouse Station, NJ 08889

BB.    Merck Sales Representatives:
        Shunda E. Adams*
        Elizabeth A. Bivins*
        Holly Biss
        Amy Block
        Helene M. Cissell
        Tracie L. Edwards*
        Shanon V. Fleckstein
        Christy R. Gross*
        John C. Hinken*
        M.J. Hunt*
        Jeffrey K. Johnson*
        Kristen Diane Keller
        Timothy M. Powers
        Melisa A. Swencki Shelburn
        Craig A. Simmons*
        Tom C. Schatzman
        Maureen Thompson Walczak*
        Tia Chanta Williams*
        c/o Merck & Co., Inc.
        One Merck Drive
        Whitehouse Station, NJ 08889

        * Merck objects to any attempt by plaintiff to call these witnesses (including Merck Corporate Designee/Witness listed below) because they were not disclosed on plaintiff's multiple witness lists.  Merck also objects to any effort by plaintiff to attempt to compel the appearance of any of the above witnesses, all of whom Merck believes reside outside the subpoena power of this Court.

CC.    Merck Corporate Designee/Witness
        Merck & Co., Inc.
        One Merck Drive
        Whitehouse Station, NJ 08889

**Lay Witnesses:**

Garry Smith
14 East Lakeside Avenue
Lakeside Park, KY  41017
Testimony: Plaintiff.  Anticipated testimony is reflected in witness' deposition.

Defendant may call the following witnesses, either live or by deposition. All of these witnesses were included on Defendant's Witness List. This list does not include those witnesses for whom Defendant would seek to counter-designate deposition testimony if Plaintiff seeks to introduce deposition testimony from the same witness. Additional depositions may be taken before trial and Defendant reserves the right to supplement this list to include some or all of those additional depositions. Merck anticipates eliciting fact testimony from Merck employees and/or advisors, as well as opinion testimony related to their duties (which do not regularly involve giving expert testimony).

A.       David Anstice

B.       Dr. Eliav Barr

C.       Susan Baumgartner

D.       Dr. Barry Gertz

E.       Raymond Gilmartin

F.       Dr. Briggs Morrison

G.       Dr. Alan Nies

H.       Dr. Alice Reicin

I.       Dr. Nancy Santanello

J.       Dr. Edward Scolnick

K.       Dr. Janet Arrowsmith-Lowe

L.       Dr. Jerome Cohen

M.       Dr. Gregory Curfman

N.       Dr. Nicholas Flavahan

O.       Dr. KyungMann Kim

P.       Dr. Ronald Marks

Q.       Malachi Mixon

R.       Dr. Craig M. Pratt

S.       Dr. Paul J. Roach

T.       Dr. Daniel Courtade

U.          Dr. Michael Grefer

V.          Robert G. Smith


**13.      For Jury Trials:**

This is a jury trial.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing Counsel not later than five (5) working days prior to the trial date, unless specific leave to the contrary is granted by the Court.


**14.      The issue of liability for compensatory damages will/will not (at Judge Fallon's order) be tried separately from the issue of liability for punitive damages.**


**15.      Other matters that may expedite case disposition.**

None.

**16.      Trial shall commence on September 11, 2006, at 8:30 a.m. and is expected to last 10-14 days.**


**17.      Pre-trial Order.**

This pretrial order has been formulated after conference at which counsel for the respective parties have talked by phone.   Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.   Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**18.      Settlement.**

The possibility of settlement of this case was not considered.


_____/s/ Grant Kaiser_____
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5001
(713) 223-0000; fax (713) 223-0440
Attorney for Plaintiff

__/s/ Carrie A. Jablonski_____
Philip S. Beck
Andrew L. Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
Attorneys for Defendant


Signed, this _____ day of _____, 2006.


_____
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Pre-Trial Order has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 29th day of August, 2006.


_____/s/ Dorothy H. Wimberly_____