UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF <u>LEMUEL A. MOYE, M.D., PH.D.</u>**

**(EXPERT CHALLENGE NO. 12)**

In *Barnett v. Merck*, this Court was introduced to Lemuel A. Moye, M.D., Ph.D.  Merck did not challenge Dr. Moye's qualifications to discuss clinical study design, relative and attributable risk issues, or statistical interpretation of medical data.  However, there are several topics likely to arise in this trial, such as Dr. Moye's opinion that Vioxx® is the worst of the COX-2 inhibitors and the mechanism(s) by which Vioxx causes cardiovascular events, that should be excluded.  Accordingly, Merck requests an order prohibiting Dr. Moye from offering opinions that (1) are based on an unreliable methodology; (2) he is not qualified to offer because he lacks the relevant "knowledge, skill, experience, training, or education,"; and (3) are

otherwise improper.

I.  **LEGAL STANDARD.**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Motion for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, filed August 14, 2006 and incorporated herein by reference.

II. **DR. MOYE SHOULD BE PRECLUDED FROM OFFERING OPINIONS ON RISK/BENEFIT, MECHANISM, VIOXX AS COMPARED TO OTHER COX-2S, MERCK'S PUBLICATION OF THE VIGOR STUDY, AND THE 1999 LABEL.**

A.  **Under Rule 702, Dr. Moye Is Not Qualified To Offer Opinions On The Risk/Benefit Analysis For Vioxx Or The Alleged Mechanisms By Which Vioxx Allegedly Causes Injury.**

Federal Rule of Evidence 702 limits witnesses from offering opinions unless they are qualified by "knowledge, skill, experience, training, or education" on the subject to which the testimony relates.  The Rule also requires that (1) the testimony be based on "sufficient facts or data," (2) the testimony "is the product of reliable principles and methods," and (3) "the witness has applied the principles and methods reliably to the facts of the case."  FED. R. EVID. 702.

1.  *Dr. Moye Does Not Have Any Personal Experience Or Special Knowledge, Skill, Training, Or Education That Would Qualify Him To Testify That Vioxx At Any Does Is Unsafe.*

Although Dr. Moye is licensed to practice medicine, he has not been in practice since March 1992. (June 2, 2006 Deposition of Lemuel A. Moye, M.D., Ph.D. ("Moye Dep.") at 89:2-23, attached hereto as Ex. A.)  Instead, Dr. Moye has chosen to focus his career on teaching statistics and epidemiology. (*Id.*; *see also Curriculum Vitae* of Lemuel A. Moye, M.D., Ph.D. ("Moye CV") at 1, 13-14 (describing classes taught each semester since Spring 1987), attached hereto as Ex. B.)  As this Court knows, there were significant scientific and medical advancements in the 13 years after Dr. Moye left the active practice of medicine.  During that

2

time, scientists discovered that the COX enzyme had two forms, now called COX-1 and COX-2, with different functions. In the wake of this scientific development, a few pharmaceutical companies, including Merck, developed COX-2 inhibitors. The COX-2 inhibitors include Vioxx, Celebrex®, and Bextra®.

Vioxx was introduced to the public in September 1999, seven and a half years after Dr. Moye stopped seeing patients.[1] Despite the fact that Dr. Moye does not have special "knowledge, skill, experience, training, or education" on Vioxx, he opines that Vioxx "[i]s unsafe at any dose, duration, combination, in any patient regardless of their underlying risk for cardiovascular disease." (*Id.* at 339:21-340:7; 343:21-24; 351:12-15; 360:7-13; COX-2 Inhibitor Report of Dr. Moye ("Moye Rpt.") at ¶ 25, attached hereto as Ex. C.)[2] This testimony should be excluded.

The problem with Dr. Moye offering this opinion is that he has no personal experience with Vioxx, had never prescribed Vioxx, counseled a patient on Vioxx, read the product label for Vioxx while it was on the market, or prescribed any other COX-2 inhibitor. (Moye Dep. at 91:5-20.) In addition, Dr. Moye has never discussed with other physicians their experience with prescribing Vioxx or talked to a single person who has taken Vioxx to learn about that patient's experience. (*Id.* at 91:21-92:4.)

Moreover, Dr. Moye has little experience with patients who suffer the kind of chronic pain that requires daily relief in the form of prescription medication and, therefore, is not

---

[1] Dr. Moye's only experience seeing patients since 1992 was when he provided volunteer emergency care to evacuees from Hurricane Katrina at the Astrodome in September 2005. (Moye Dep. at 89:2-90:12.)

[2] Moreover, he would offer this opinion in the face of his belief that it is the patient who decides if the risks outweigh the benefits (*id.* at 343:14-18) and that this is an issue of individual medical judgment. (*Id.* at 120:15-121:4.)

qualified to opine about the risk-benefit analysis of Vioxx or any other NSAID. Indeed, Dr. Moye's answer to his patients 13 years ago who did present with "chronic pain" was that they use "five to seven days of a nonsteroidal anti-inflammatory, but primarily [he would prescribe] a combination of rest and exercise and warm water baths." (*Id.* at 94:1-24.)

In *Barnett*, this Court recognized, "The fact that [Dr. Moye's] a good biostatistics person involved in design, execution and analysis of clinical trials and he's been doing that for nearly 20 years now doesn't mean that he's an internist or knows a lot about Vioxx." (July 6, 2006 Pre-Trial Hearing Tr. *Barnett v. Merck*, at 61:15-19, attached hereto as Ex. D.) That is precisely Merck's point: Although Dr. Moye earned a medical degree and read some of the literature on Vioxx, he is certainly not educated on the alternative treatments for patients who have chronic pain and does not have the requisite personal experience to tell the jury that the alleged risks of Vioxx outweigh *all* potential benefits.[3] *Compare Plunkett v. Merck & Co.*, 401 F. Supp. 2d 565, 582 (E.D. La. 2005) (finding Dr. Silver qualified to offer a risk-benefit analysis because of his experience as a physician in Internal Medicine and Rheumatology and as the Director of the Chronic Pain Rehabilitation Center at Cedars-Sinai Medical Center in Los Angeles, California).

> **2.    *Dr. Moye Does Not Have Any Special Knowledge, Training, Or Education That Would Qualify Him To Testify To The Alleged Mechanisms By Which Vioxx Allegedly Causes Injury.***

In addition, Dr. Moye does not have the requisite knowledge, training, or education required by Federal Rule of Evidence 702 that would qualify him to opine on the mechanisms by which Vioxx allegedly causes cardiovascular events. (*See* Moye Rpt. at ¶¶ 24-26, 34, 57, 77, 159, 180.)

---

[3] Dr. Moye also admits that he has not conducted any original laboratory research on COX-2 inhibitors (*id.* at 95:1-4) or been the author of any original epidemiological studies on Vioxx or any other COX-2 inhibitors. (*Id.* at 95:9-96:2.)

Although plaintiff will likely argue that Dr. Moye is qualified because of his service on the FDA CardioRenal Advisory Committee for four years between 1996 and 1999, it is undisputed that Dr. Moye is not a cardiologist[4] (Moye Dep. at 87:18-88:3), was never trained in cardiology (*id.* 87:18-21), and is not now certified and cannot hold himself out as a cardiologist (*id.* 87:22-88:3). Likewise, Dr. Moye is not a pharmacologist.[5] (*Id.* at 88:22-89:1.)

Dr. Moye is a biostatistician only and this was the reason he as asked to serve on FDA Advisory Committees. (*See id.* 108:17-19.) Dr. Moye would nevertheless claim to have relevant cardiology experience, but those experiences only occurred because of his expertise in biostatistics and epidemiology.[6] The fact that companies requested Dr. Moye to apply his expertise in biostatistics and epidemiology to cardiovascular clinical trials does not make him an expert qualified to testify about how Vioxx allegedly causes cardiovascular events. For example, he testified that he was hired by Proctor & Gamble, Pfizer, and other companies to help design studies looking for cardiovascular risk because of his expertise in biostatistics and cardiology. (*Id.* at 132:6-19, 134:13-135:18.) However, his self-serving testimony that these companies considered him an expert in cardiology is belied by the fact that when Pfizer and other companies asked him to give lectures, the lectures had nothing to do with cardiology. (*Id.* at 135:20-137:13 (describing three lectures on behalf of Pfizer to discuss "dependence in subgroup analyses," "hyperdependence in clinical trial analyses," and "professionalism in science"); *id.* at

---

[4] Cardiology refers to the heart and its actions and diseases.

[5] Pharmacology refers to the toxicology of drugs, including the properties and reactions of drugs, especially with relation to their therapeutic value.

[6] His statement to the contrary does not make him an expert in cardiology. (Moye Dep. at 108:20-109:4 ("Q: And even though you were on the cardiorenal Advisory Committee, you're not an expert in cardiology or nephrology, right? A: I would disagree with you about that. I certainly am not a cardiologist, but I have extensive training and experience carrying out cardiovascular trials.").)

176:7-177:5 (explaining that his work for Bristol-Myers Squibb involved a lecture to the FDA to explain a new type of statistical analysis); *id.* at 181:10-182:11 (admitting presentation to FDA "was also about the use of a particular statistical technique"); *see also* Moye CV at 15-17 (listing 70 guest lectures mostly on topics such as "Sample Size Considerations in Phase II Clinical Studies," and "Public Health versus Mathematical Modeling").)

Because Dr. Moye does not have any relevant experience and is not an expert in cardiology or pharmacology, the Court should preclude Dr. Moye from testifying to the mechanisms by which Vioxx allegedly causes injury.

### 3. *Dr. Moye's Causation Opinion Is Not Based On A Reliable Methodology.*

A review of Dr. Moye's deposition makes it abundantly clear that his mechanism opinions should be excluded because he simply does not know enough about the relevant science or body functions. For example, Dr. Moye opines that one of the mechanisms by which Vioxx causes cardiovascular events is by upsetting the balance of prostacyclin and thromboxane. However, he knows little about prostactyclin and thromboxane, does not know whether they are prostaglandins, and does not rely on any scientific evidence to support his opinion:

> Q: Is prostacyclin a prostaglandin?
>
> A: (Witness reviewing document.) I'm sorry. I don't see where I mention prostacyclin here.
>
> Q: You don't. . . . My question is, is prostacyclin a prostaglandin?
>
> A: It's related to it. I don't know the chemical composition of it. So, I don't know if it meets the chemist's definition of being a prostaglandin or not.
>
> Q: Is that outside your area of expertise?
>
> A: Whether prostacyclin is a prostaglandin, yes.
>
> Q: Do you know whether thromboxane is a prostaglandin?
>
> A: It's regulated by prostaglandin. I don't know if itself it is a prostaglandin.

(Moye Dep. at 331:7-332:9.)  Given Dr. Moye's unfamiliarity with these chemicals, it is not

6

surprising that he also has no idea what organs produce these chemicals – even though he alleges these chemicals are the mechanism by which Vioxx can cause cardiovascular events. (*See id.* at 242:15-243:6.)

In addition to having very little knowledge or understanding of the chemicals that Vioxx allegedly upsets (*id.* at 333:13-21; 336:8-15), Dr. Moye also admits that his opinion is not based on a review of the Vioxx studies:

> Q:   Dr. Moye, is there any specific study that you're relying on for your opinion that Vioxx causes an imbalance between prostacyclin and thromboxane?
>
> A:   No. It was my understanding that the biochemistry of it, but I haven't reviewed the basic biochemical studies, no.
>
> Q:   Do you know whether the studies measure prostacyclin directly or whether they measure a metabolite of prostacyclin?
>
> A.   I don't know that.
>
> Q.   Do you know the difference between PGI2 and PGF1α?
>
> A.   No.[7]

(*Id*. at 376:21-377:13.)

For the same reason, and as discussed in greater detail in Merck's Motion for Order Excluding Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis, Dr. Moye's opinion that Vioxx causes cardiovascular events by promoting atherosclerosis and causing coronary plaque to break off must also be excluded:

> Q:   . . . what's your basis for saying that Vioxx destabilizes plaque? Do you have any paper or any scientific evidence of that?
>
> A:   I don't have any paper that shows definitively that in intravascular atherosclerosis production that COX-2 inhibitors can accelerate that  . . . However, I do understand the complexity of the atherosclerotic generation system. I also understand the delicate interplay in the role of thrombus, and I believe it is admissible that COX-2 inhibitors, like Vioxx, . . . can

---

[7] PGI2 is the proper name for prostacyclin and PGF1α is a metabolite of prostacyclin.

>   make atherogenic caps more friable.
>
>   [Objection omitted]
>
> Q: Based on what?
>
> A: Based on my understanding of how these mechanisms work.
>
>   \*      \*      \*
>
> Q: . . . My question is, is there a study, not what's his understanding.
>
> A: My answer is, no, there's not . . .

(*Id.* at 299:7-301:12.)

Put simply, the basis for Dr. Moye's opinions is unreliable and Dr. Moye lacks the requisite qualifications to offer such opinions. Accordingly, the Court should preclude Dr. Moye from opining on the mechanisms by which Vioxx allegedly causes cardiovascular events.

### B. Dr. Moye Admits He Is Not Qualified To Offer Opinions About Vioxx As Compared To Other COX-2 Inhibitors.

Dr. Moye is not qualified to offer his opinion that he disagrees with the conclusions set out in the April 6, 2005 FDA Memo that there is a "class effect" for all NSAIDs and there is no basis for rank ordering the various COX-2 inhibitors in terms of cardiovascular risk. (FDA Memo at 1-2.) In contrast to the FDA's comprehensive review of the existing data concerning the cardiovascular risk of *all* NSAIDs, including COX-2 inhibitors such as Vioxx, Dr. Moye admits he has not reviewed the relevant materials and does not have a sufficient basis to disagree with the FDA's conclusion that COX-2 inhibitors, such as Vioxx and Celebrex, cannot be rank ordered, *i.e.* they have a similar effect on the vasculature and cannot be ranked as having a greater risk of causing cardiovascular events:

> Q: Is it your position that you know that Vioxx has a greater cardiovascular risk than these other drugs which you have not done a scientific investigation of, or is it your opinion you've not looked at the question and don't have an opinion one way or the other?
>
> A: I have not looked at the question, so, I can't rank order . . .

8

> Q: With respect to cardiovascular risks?
>
> A: Right.
>
> Q: . . . And that's true with respect to Vioxx and Celebrex also, right?
>
> A: Well, it means the same thing. Rank order with respect to COX-2s -- with respect to [Vioxx] and other COX-2s, because I haven't looked at other COX-2s.
>
> \* \* \*
>
> Q: Rank order with respect to Vioxx versus Celebrex, you haven't looked at that question, right?
>
> A: That's right. I have not looked at that point.
>
> Q: So, you can't have an opinion not having looked at that question?
>
> A. Right.

(*Id.* at 370:2-371:21.) Rule 702 requires Dr. Moye's opinion to be based on "sufficient facts or data." It is clear that Dr. Moye's opinions about rank ordering and that Vioxx is the worst would not meet this requirement:

> A: . . . my understanding of Celebrex is that it has more COX-1, anti-COX-1 activity than Vioxx does. So, to the degree that it has more anti-COX-1 activity is the degree to which it might inhibit thromboxane.
>
> Q: Have you looked at any literature that discusses the effect of Celebrex on thromboxane or not?
>
> A: I have not looked at any particular literature, no.
>
> Q: There's nothing you've seen that tells you one way or the other?
>
> A: I haven't looked to answer the question.

(*Id.* at 207:14-208:6; *see also* Moye Rpt. at ¶ 81.)

In addition, Dr. Moye is not qualified to offer this opinion by virtue of any other special "knowledge, training, skill, education, or experience." As discussed above, Dr. Moye is not a pharmacologist. (Moye Dep. at 88:22-89:1.) This fact was determinative in another case where the court precluded Dr. Moye's opinion comparing different diet drugs. *See, e.g., Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 702 (W.D.N.C. 2003) (prohibiting Dr. Moye from

9

testifying to alleged similarities between diet drugs because he is clearly not a pharmacologist).

Because Dr. Moye is not a pharmacologist with special training or experience to assess whether "Vioxx is the worst" of all the COX-2 inhibitors (*id.* at 394:11-18) and, regardless, this opinion by Dr. Moye is admittedly not based on a review of the data (*id.* at 368:22-369:24), the Court should prohibit him from offering his opinion that the conclusions in the FDA Memo are wrong.

### C. Dr. Moye Should Be Precluded From Testifying About Merck's Alleged "Critical Ethical Omission" From The VIGOR Publication.

Plaintiff has listed Gregory Curfman, M.D., as a fact witness in this case to testify about Merck's publication of the VIGOR study. Dr. Moye's added opinion that "[n]either the VIGOR authors nor the sponsors updated the data in the article that appeared in the *New England Journal of Medicine* in November 2000 with the new safety data, a critical ethical omission" (Moye Rpt. at ¶ 108) should be precluded on the grounds that it is irrelevant, cumulative, and constitutes improper opinion testimony based on ethics. FED. R. EVID. 401, 403; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004).

First, this testimony is irrelevant since Dr. Grefer, Mr. Smith's prescribing physician, testified that it would not have made a difference if he had known that, in VIGOR, patients taking Vioxx had a MI risk of .5 as opposed to a .4. (*See* Merck's Objections to Plaintiff's Deposition Designations, filed August 14, 2006, at 10-12; Merck's Motion to Exclude Evidence Relating to the New England Journal of Medicine's December 2005, "Expression of Concern," filed June 20, 2006 (Record Docket No. 5310).) Second, Dr. Moye's testimony is cumulative and merely parrots the testimony of Dr. Curfman and other plaintiff's witnesses. Last, Dr. Moye's opinion, in this instance, about that Merck should have to highlight the MIs that occurred after the study's prespecified cut-off date is based on nothing more than his own personal ethics.

10

Personal, ethical beliefs are not a proper area for expert opinion testimony. *In re Rezulin Prods. liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (finding "expert opinion as to the ethical character of [defendants'] actions simply is not relevant to these lawsuits."); *In re Diet Drugs*, 2001 WL 454586, at *8 (E.D. Pa. Feb. 1, 2001) ("ethics are, at best, only marginally relevant. . . [T]he pertinent issues in this litigation are the obligations of a pharmaceutical company in testing, surveying and labeling medications . . . [P]roof that a pharmaceutical company has fulfilled its ethical requirements is not an essential element."). Accordingly, Dr. Moye's opinion about Merck's "critical ethical omission" should be excluded.

    **D.**     **Dr. Moye's Opinions About The 1999 Vioxx Label And Whether Merck Should Have Had A Black Box On Its Label Are Irrelevant And Improper.[8]**

As discussed extensively in other briefing, this case is different from all of the other Vioxx trials to date because Mr. Smith only used Vioxx after the 2002 label change adding the VIGOR data. (*See, e.g.,* Merck's Motion in *Limine* No. 2 to Exclude Testimony or Argument that Merck (1) Should or Could Have Unilaterally Changed the Vioxx Label; or (2) "Dragged Its Feet" to Prevent the VIGOR Data from being Added to the Label, filed August 7, 2006.) Thus, there is no relevance to whether the 1999 label adequately warned of Vioxx's alleged risks and Dr. Moye should be precluded from offering his opinion on this issue, as he did in *Barnett*:

    Q.     . . . Can you tell us whether or not Merck adequately conveyed that risk to doctors in the 1999 product label?

    A.     No, they did not.

---

[8] In *Barnett*, Merck argued that Dr. Moye is not qualified to discuss Merck's marketing, in part, because he unequivocally admits that he is not an expert in marketing. (*See* Moye Dep. at 103:16-18.) In that case, plaintiff responded that Dr. Moye would not offer marketing opinions, but should be allowed to offer opinions about Merck's label. To the extent the plaintiff in this case intends to ask Dr. Moye questions about Merck's marketing, Merck incorporates herein by reference its Motion to Exclude Moye filed in *Barnett v. Merck* on June 16, 2006. (Record Docket No. 5289.)

11

(*Barnett v. Merck* Trial Tr. at 835:8-12, attached hereto as Ex. E.)[9]

Likewise, Dr. Moye's testimony implying that Merck should have had a black box warning on its label would be improper in this case:

> Q. Dr. Moye, let me ask you about a black-box warning. We don't see a black box warning on that label, do we?
>
> A. No, we don't.
>
> Q. There wasn't one on the '99 label either; is that correct?
>
> A. That's right.

(*Id.* at 837:11-15.) As discussed above, Dr. Moye's testimony and opinions about the 1999 label are irrelevant in this post-label change case. Regardless, Dr. Moye cannot properly testify that the Vioxx label should have included a black-box warning because this is a decision that is within the *sole* province of the FDA. 44 Fed. Reg. 37,434, 37,448 (June 26, 1979) ("to ensure the significance of boxed warnings in drug labeling, they are permitted in labeling only when specifically required by the FDA.") (comments of the Commissioner of the FDA regarding 21 C.F.R. § 201.57); *see also* 21 C.F.R. § 201.57(e) ("If a boxed warning is required, its location will be specified by the [FDA]" . . . "Special problems, particularly those that may lead to death or serious injury, may be required by the [FDA] to be placed in a prominently displayed box.").

The FDA required no such label for Vioxx. Therefore, any suggestion that the Vioxx label was inadequate for not including a black-box warning directly conflicts with federal law and is preempted. A federal regulation preempts any state-imposed requirement if, among other things, state law mandates or places irresistible pressure on the subject of the regulation to violate federal law. *See AT&T Corp. v. Public Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir.

---

[9] In addition, his opinion that the only problem with the Vioxx label is that the VIGOR data was in the wrong section is in direct contravention to the FDA's decision on where this data should have been placed and is therefore preempted. (*Barnett* Trial Tr. at 863:1-864:4.)

12

2004).  Argument that Merck should have included a black-box warning on the Vioxx label, when it was not permitted to add a label without a FDA mandate, would trigger this principle of federal preemption.  *See Ehlis v. Shire Richwood, Inc.*, 233 F. Supp. 2d 1189, 1197 (D.N.D. 2002) (finding FDCA preempts a state failure-to-warn claim where plaintiffs asserted that the label for Adderall® should have contained a black-box warning).  Merck should not have to violate express FDA regulation and policy in order to avoid future civil liability.  *See also* Daniel E. Troy, *FDA Involvement in Product Liability Lawsuits,* UPDATE, Jan/Feb. 2003, at 4 ("Allowing state courts and juries to impose additional requirements in direct conflict with FDA determinations could require drug first to choose between state and federal compliance.  It also could lead to inconsistency in drug firms' communications to physicians and patients about drugs.").  Accordingly, Dr. Moye should not be allowed to testify or imply, as he did in *Barnett*, that the Vioxx label should have included a black-box warning.

**III.   DR. MOYE IS NOT ALLOWED TO TESTIFY TO MERCK'S INTENT OR MOTIVE.**

Under Federal Rule of Evidence 702, a defendant's intent or state of mind are not proper topics for expert testimony.  As one court noted in excluding expert testimony in a similar failure-to-warn case:

> The witnesses are qualified in particular scientific disciplines.  These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546 (rejecting expert testimony "on the intent, motives or states of mind of corporations, regulatory agencies and others" because they "have no basis in any relevant body of knowledge or

expertise").

In the Phen-Fen litigation, Dr. Moye was prevented from offering the same kind of "intent" testimony Merck seeks to exclude from this case:

> Dr. Moye's 'fact' and 'corporate intent' testimony is inadmissible. Indeed, the MDL Court, Judge Bechtle, has already ruled that testimony regarding corporate intent is inadmissible . . . . [T]he jury should hear and/or see first-hand any relevant evidence pertaining to the Defendant's intent. Then the jury, not the witnesses, should consider the facts and make its own determination regarding Defendant's intent.

*Smith*, 278 F. Supp. 2d at 700 (citation omitted). During his deposition, Dr. Moye made clear that, if allowed, he will offer the type of motive and intent testimony that is expressly prohibited by courts that have addressed the issue. (*See, e.g.,* Moye Dep. at 83:20-24 ("I think it became clear to me what they weren't doing, so, I suppose I am going to speak to some degree about the motives."); *id.* at 84:22-85:3 ("Q. Are you offering any opinions that Merck intended to hurt patients or intended to mislead the FDA? . . . A. I think I am."); *id.* at 85:18-24 ("I think I can probably speak most clearly about Merck's intent. And I believe Merck's intent was not to provide a fair, clear assessment of the relationship between Vioxx and cardiovascular events"); *see also* Moye Rpt. at ¶¶ 87, 190.) Jurors are fit to conduct the same analysis Dr. Moye is conducting and reach their own conclusions based on the documents he reviewed. This Court therefore should find, as other courts have done, that such "expert" testimony about Merck's intent and motives would invade the province of the jury and must be precluded.

**IV. DR. MOYE'S CRITICISMS OF THE FDA AND OPINIONS THAT MERCK MISLED THE FDA AND FDA ADVISORY COMMITTEES ARE IMPROPER AND PREEMPTED BY *BUCKMAN*.**

In *Barnett*, Dr. Moye testified that the FDA's 2006 labeling regulations (which he did not know about), which will incorporate the Precautions section of a drug label into the Warnings section, must have been the product of lobbying from the pharmaceutical industry. (*Barnett*

Trial Tr. at 871:20-872:5 (when asked "Do you know how this document came about?," Dr. Moye responded, "Well, I know that the FDA by design is influenced by the drug manufacturers").)  First, Dr. Moye clearly did not have a reasonable basis for offering this opinion, especially in light of the fact that he had never before seen the regulation.  Thus, he should be precluded from offering this opinion in the upcoming trial.  FED. R. EVID. 602, 702.  Second, such testimony criticizing the FDA's regulatory decisions is preempted by *Buckman*.

Likewise, this Court should exclude Dr. Moye's testimony that Merck withheld data from the FDA and the 1999 and 2001 FDA Advisory Committees dealing with Vioxx (Moye Dep. at 52:14-53:22; 266:11-267:17), and thereby "misled the FDA and the FDA Advisory Committee." (Moye Dep. at 56:23-57:6 (testifying that "Merck misled the FDA and the FDA Advisory Committee meeting [because] they [sic] did not disclose the Watson analysis").)  In *Buckman*, the U.S. Supreme Court specifically stated that evidence and testimony that a company did not provide appropriate information to the FDA would be excluded.  *Id.* (holding that companies should not have to "fear that their disclosures to the FDA, although deemed appropriate by the [FDA], will later be judged insufficient in state court").

For the foregoing reasons, the Court should preclude Dr. Moye from testifying that Merck influence the FDA's decision to get rid of the Precautions section on drug labels and that Merck misled the FDA by not providing it with one of its internal memorandum.

V.     **CONCLUSION.**

Because Dr. Moye offers opinions on a wide range of topics outside his expertise and for which he has no reliable basis, Merck respectfully requests that the Court preclude Dr. Moye from testifying on: (i) the risk-benefit analysis of taking Vioxx and the mechanisms by which Vioxx allegedly causes injury; (ii) Vioxx compared to other NSAIDs or other COX-2 inhibitors; (iii) Merck's alleged "critical ethical omission" in publishing the VIGOR data; (iv) the 1999

Vioxx label and black-box warnings; (v) Merck's intent or state of mind; (vi) pharmaceutical lobbying efforts that caused the FDA to delete the Precautions section from drug labels; and (vii) Merck's alleged failure to provide the FDA with information.

Dated:  August 25, 2006

                                            Respectfully submitted,

                                            */s/ Dorothy H. Wimberly*
                                            Phillip A. Wittmann, 13625
                                            Dorothy H. Wimberly, 18509
                                            STONE PIGMAN WALTHER WITTMANN L.L.C.
                                            546 Carondelet Street
                                            New Orleans, Louisiana  70130
                                            Phone:  504-581-3200
                                            Fax:    504-581-3361

                                            Defendants' Liaison Counsel

                                            Philip S. Beck
                                            Andrew Goldman
                                            Carrie A. Jablonski
                                            BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
                                            54 West Hubbard Street, Suite 300
                                            Chicago, Illinois  60610
                                            Phone: 312-494-4400
                                            Fax:    312-494-4440

                                            Richard B. Goetz
                                            Ashley A. Harrington
                                            O'MELVENY & MYERS LLP
                                            400 South Hope Street
                                            Los Angeles, CA 90071
                                            Phone: 213-430-6000
                                            Fax:    213-430-6407

                                            And

825929v.1

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029


Attorneys for Merck & Co., Inc.

17

825929v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion and Incorporated Memorandum in Support of Merck's Motion to Exclude Testimony of Lemuel A. Moye, M.D., PhD., has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 25th day of August, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel