FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 30  AM 11: 03

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
|  | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO
*Barnett v. Merck & Co., Inc.*, 06-485

## ORDER & REASONS

Following the announcement of the jury verdict in this case, the Defendant made several oral motions. For the following reasons, IT IS ORDERED that there shall be a new trial on the issue of damages. Accordingly, the Defendant's post-trial oral motions are DENIED AS MOOT.

### I.  Background

This is a products liability case involving the prescription drug Vioxx, which was manufactured by Merck & Co., Inc. ("Merck"). The Plaintiff, Mr. Gerald Barnett, is a former FBI agent and a citizen of South Carolina. He was first prescribed Vioxx in 1999 to relieve his chronic neck and back pain. The Plaintiff alleges that Vioxx caused a heart attack he suffered in September of 2002 at the age of fifty-eight. The Plaintiff continued to take Vioxx until 2004, when it was withdrawn from the market.

On January 31, 2006, the Plaintiff brought suit against Merck in this Court and his case became part of MDL No. 1657. With the consent of both the Plaintiff and Merck, this case was

set for trial. The Plaintiff's case was tried to a jury in New Orleans from July 31 until August 17, 2006.

The Plaintiff sought recovery under any of three theories of liability proscribed by South Carolina law: (1) Strict liability failure to warn–the Plaintiff alleged that Merck failed to adequately warn his treating physicians of a known or reasonably scientifically or medically knowable risk associated with Vioxx; (2) Negligent failure to warn–the Plaintiff alleged that Merck was negligent in failing to adequately warn his treating physicians of a known or reasonably scientifically or medically knowable risk associated with Vioxx; (3) Deceit by concealment–the Plaintiff alleged that Merck knowingly misrepresented or failed to disclose a material fact to his treating physicians in a circumstance where it was required to do so, that his treating physicians were entitled to and did rely on that misrepresentation or nondisclosure.

The jury returned a verdict in favor of the Plaintiff on two of his three theories of liability and awarded him $50 million in compensatory damages. Specifically, the jury found that (1) Merck was negligent in failing to adequately warn the Plaintiff's treating physicians of a known or reasonably scientifically or medically knowable risk associated with Vioxx and that such negligence was a legal cause of the Plaintiff's injuries and (2) that Merck knowingly misrepresented or failed to disclose a material fact to the Plaintiff's treating physicians in a circumstance where it was required to do so, that the Plaintiff's treating physicians were entitled to and did rely on that misrepresentation or nondisclosure, and that the misrepresentation or nondisclosure was a legal cause of the Plaintiff's injuries. The jury found for Merck on the Plaintiff's strict liability claim, finding that Merck did not fail to adequately warn the Plaintiff's treating physicians of a known or reasonably scientifically or medically knowable risk associated with Vioxx.

Following the announcement of the verdict, the Defendant orally moved for judgment notwithstanding the verdict, or alternatively, for a new trial. Merck argues that the jury's failure to warn findings are inconsistent. Specifically, Merck argues that the defense verdict on strict liability failure to warn should exonerate it on the negligent failure to warn claim, given that the later claim is identical to the former except for the added element of fault. The Court took this motion under submission.

The Court then informed the jury that having found for the Plaintiff, they would now consider the issue of punitive damages. Counsel presented additional evidence and argument on this issue and the jury retired to deliberate again. Shortly thereafter, the jury returned a verdict in favor of the Plaintiff on the issue of punitive damages, finding by clear and convincing evidence that Merck's conduct was willful, wanton, or in reckless disregard of the Plaintiff's rights, and awarded the Plaintiff an additional $1 million.

Following the announcement of the punitive damages verdict, the Defendant orally moved for judgment as a matter of law, or in the alternative, for a mistrial on the punitive damages issue. Merck argues that Plaintiff's counsel improperly argued during the punitive damages phase of the trial that the jury should award punitive damages because otherwise Merck would continue to defend itself in courtrooms around the country.[1] Merck also argues that Plaintiff's counsel improperly referred to national sales figures during his argument. The Court took this motion under submission as well.

The verdicts were entered into the record, and the judgment has now been entered.

---

[1] Defense counsel objected to this during the Plaintiff's argument. The Court sustained the objection and instructed the jury to disregard these statements by Plaintiff's counsel.

## II. Law & Analysis

When considering a motion for judgment notwithstanding the verdict, the Court must consider all of the evidence in the light most favorable to the non-moving party. *See Boeing v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969). The motion should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that a reasonable jury could not arrive at a contrary verdict. *Id.* It is the province of the jury, and not the Court, to weigh conflicting evidence and determine the credibility of witnesses. *Id.*

The Court takes this opportunity to note that the jury's findings on liability are reasonable in this case. All three of the Plaintiff's claims revolve around the safety risks of Vioxx, what Merck knew about any such risks, when Merck knew this information, and what Merck should have done about it. Considering all of the evidence in the light most favorable to the Plaintiff, the Court concludes that the jury's findings for the Plaintiff on his negligent failure-to-warn and deceit-by-concealment claims were reasonable.

The Defendant argues, however, that the jury's findings on strict liability failure to warn and negligent failure to warn are inconsistent, and therefore that it is entitled to judgment as a matter of law. The Court finds it unnecessary to address this issue. Assuming *arguendo* that these two findings are inconsistent, the inconsistency would, at most, require the Court to enter judgment for Merck on the negligent failure-to-warn claim. However, it is equally plausible that this inconsistency could require the Court to enter judgment for the Plaintiff on the strict liability failure to warn claim. Both results are logically defensible, depending upon which finding is

used to initiate the chain of reasoning.[2] Regardless, the jury's finding for the Plaintiff on the deceit by concealment claim would be unaffected by either potential consequence, and thus he would still be entitled to damages.

The Court "on its own, may order a new trial for any reason that would justify granting one on a party's motion." Fed. R. Civ. P. 59(d). A new trial may be granted "to all or any of the parties and on all or part of the issues." Fed. R. Civ. P. 59(a). Where, as here, the Court finds that the jury's verdict on liability is reasonable, a new trial may be limited to the issue of damages if the Court finds that the jury's award is against the great weight of the evidence. *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). A jury's damage award is against the great weight of the evidence when the award is so excessive that no reasonable juror, unswayed by passion or prejudice, could have awarded that amount. *See Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 769 (5th Cir. 1990).

A federal court sitting in diversity must look to state law standards of excessiveness. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430, 438 (1996) ("*Erie* precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court."). In South Carolina, a damage award is grossly excessive if it appears "to be the result of passion, caprice, prejudice, or some other influence outside the evidence." *O'Neal v. Bowles*, 431 S.E.2d 555, 556 (S.C. 1993). The federal standard in this Circuit is similar; a new trial is warranted "when a jury verdict results from passion or prejudice." *Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 178 (5th Cir. 1992).

---

[2] However, the Court is not convinced that either result is necessary. The jury was instructed to consider each of the Plaintiff's claims individually, as if each one was tried to a separate jury.

The Court finds that the $50 million compensatory damages award is excessive under any conceivable substantive standard of excessiveness. The evidence suggests that the Plaintiff *may* have lost nine or ten years of life expectancy as a result of his use of Vioxx. He also has past medical bills for which he may be compensated, and perhaps future medical bills as well. Furthermore, the Plaintiff is entitled to compensation for his pain and suffering and other intangible losses. However, the Plaintiff is retired, and therefore he cannot recover for lost wages or lost earning capacity. While the Plaintiff may be experiencing a decrease in energy, it appears that he has been able to return to many of his daily activities. Therefore, no reasonable jury could have found that the Plaintiff's losses totaled $50 million.

Under Rule 59, a new trial may be limited to the issue of damages. *See Anderson v. Siemens Corp.*, 335 F.3d 466, 475 (5th Cir. 2003); *Brunnemann*, 975 F.2d at 178. Often, an award of punitive damages is found to be excessive. In such cases, a new trial may be limited to the issue of punitive damages. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir. 2002).

In this case, however, it is the $50 million compensatory damage award which the Court finds grossly excessive. Accordingly, under Rule 59, the Court may order a new trial on the issue of compensatory damages. However, following the United States Court of Appeals for the District of Columbia's decision in *Hutchinson v. Stuckey*, 952 F.2d 1418 (D.C. Cir. 1992), the United States Court of Appeals for the Fifth Circuit has held that "when a new trial is granted on compensatory damages, it must at the same time be granted on the issue of punitive damages." *Poullard v. Turner*, 298 F.3d 421, 424 (5th Cir. 2002). Therefore, although the Court is not troubled by the $1 million punitive damage award in this case, under *Poullard* it is nevertheless compelled to order a new trial on both compensatory and punitive damages to allow the same

jury to consider these issues.

### III. Conclusion

No reasonable jury could have found that the Plaintiff was entitled to $50 million in compensatory damages. Therefore, IT IS ORDERED that there shall be a new trial on the issue of damages. Accordingly, the Defendant's post-trial oral motions are DENIED AS MOOT.

New Orleans, Louisiana, this 30 day of August, 2006.

UNITED STATES DISTRICT JUDGE