UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>   Products Liability Litigation | *<br>*<br>* |
| This Document Relates to: | *  MDL No. 1657<br>* |
| ROBBIE TALLAS AND<br>DANIELLE TALLAS, Plaintiffs, | *  SECTION L<br>*<br>*  JUDGE ELDON E. FALLON |
|    versus | *<br>*  MAGISTRATE JUDGE |
| LEMIEUX GROUP, L.P.,<br>WBS HOCKEY, L.P.,<br>DAVID KOLESATT, M.D.,<br>PETER S. KIM, M.D.,<br>LOUIS M. SHERWOOD, M.D.,<br>EDWARD M. SCOLNICK, M.D.<br>& MERCK & CO., INC., Defendants, | *  KNOWLES<br>*<br>*<br>*<br>*<br>*<br>*<br>* |
| Case No. 06-3152 | *<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF MERCK'S
<u>MOTION FOR RECONSIDERATION</u>**

     Pursuant to Federal Rule of Civil Procedure 60, Merck & Co., Inc. ("Merck") respectfully moves this Court for reconsideration of its August 30, 2006 decision to remand the above-captioned case to the Philadelphia Court of Common Pleas for lack of federal subject matter jurisdiction. As set forth below, plaintiffs' motion was improperly noticed for a hearing and Merck had good reason to assume the hearing would be continued. Moreover, the Court's remand order was in error because there is no reasonable possibility that plaintiffs will prevail on the claims they have asserted against the non-diverse defendants.

**ARGUMENT**

Federal Rule of Civil Procedure 60 provides this Court with the authority and discretion to reconsider its order granting plaintiffs' motion to remand. *See Derouen v. Entergy Corp.*, 2001 WL 839025, at *1 (E.D. La. 2001) (granting unopposed motion to reconsider order granting motion to remand where defendant "had failed to timely file a memorandum in opposition in violation" of local rule); *Cusachs v. Orkin Exterminating Co., Inc.*, 2000 WL 1789971, at *1 (E.D. La. 2000) (treating motion to vacate remand order "as a motion for reconsideration pursuant to Rule 60"). *See also Lejano v. K.S. Bandak*, 2000 WL 33416866, at *5 (E.D. La. 2000) (treating motion for reconsideration of remand order as a motion under Rule 59). As set forth below, the Court's remand order was contrary to procedures established in this litigation to date and also erred on the merits. Accordingly, the Court should grant Merck's motion for reconsideration and vacate its order remanding this case to state court.

**I.    MERCK HAD GOOD REASON TO BELIEVE THAT PLAINTIFFS' REQUEST FOR ORAL ARGUMENT WOULD BE DENIED.**

Since the inception of MDL 1657, literally hundreds of remand motions have been filed and noticed for hearing in this Court. A number of those motions have been accompanied by requests for oral argument.[1] With the exception of one remand motion, decided months ago with prior notice that the Court was going to hear argument on that motion, no other remand motions have been heard. Rather, this Court has repeatedly stated that it intends to deal with remand issues *after* the initial wave of MDL trials is completed. (*See e.g.*, Transcript of June 16, 2006 Status Conf. at pp. 12-13 ("The remand motions are going to be a significant issue for me,

---

[1]    Although plaintiffs' counsel requested oral argument, Merck never received any notice from the Court that it would actually hear oral argument. That departs from the normal practice in this MDL.

meaning I am going to devote time and effort on the remand motions. What I would like to do, as I see it, and as I mentioned, is to proceed with these trials and see whether or not the parties after having an opportunity to look at the results of the federal trials as well as evaluate the results of state court trials can make an effort to determine whether they can look at this matter both state and federal globally and give each side an opportunity to look at it globally. If I can't get that or its not workable or no one is interested in it, ***then I have to deal with remand motions***.") (emphasis added); Transcript of May 18, 2006 Status Conf. at pp. 12-13 ("As I mentioned the last time, the first wave of trials will be finished the latter part of this year . . . At that point I think the judges ought to be able to look at these results and see whether or not any trends can be detected, whether any information can be gleaned from that experience. If so, I will be amenable to meeting with the lawyers and litigants to see whether or not the whole or any part of this litigation can be looked at globally and dealt with in some global fashion to assist the litigants on both sides . . . Now, if that's not going to be successful, then I have to, with dispatch, focus on the remand motions and see where we go with it. That's why I haven't jumped at the remand . . .").) The Court's plan for dealing with motions for remand was reiterated most recently at the August 24, 2006 conference.[2] Based on these statements and consistent with all other remand motions (and numerous other non-remand motions), Merck justifiably believed that this motion, too, would be deferred,[3] and therefore did not file an opposition or appear before the Court on the noticed date.

Had Merck thought that the Court might entertain plaintiffs' motion despite its oft-repeated plan to defer consideration of remand issues, it would have raised with the Court

---

[2]  That transcript is not yet available.

[3]  The Court's prior law clerk had confirmed this policy on numerous occasions.

plaintiff's failure to comply with the requirements of Pre-Trial Order No. 17. Specifically, paragraph IV(B) states:

> Except for unusual circumstances as determined by the Court or when a ruling is required on a shortened basis, substantive motions shall not be brought on for hearing at any time other than a regularly scheduled status conference, to be set from time to time by the Court, or a time that has been specially set by the Court for the hearing of such motions.

Because plaintiff's motion to remand clearly involves substantive issues of law, it should have been set for hearing at the next regularly scheduled status conference. Merck never raised this issue with the Court because it assumed that the hearing would be continued, consistent with the procedure that has been followed for other remand motions. For this reason too, Merck's assumption that the hearing would be continued was justified.

Plaintiffs' unilateral noticing of the motion for hearing on August 30, 2006 also is contrary to the requirements of paragraph IV(D) of Pre-Trial Order No. 17. Paragraph IV(D) provides that briefs in response to motions shall be filed twenty (20) days after service . . . In order to be heard at a regularly scheduled status conference, motions must be fully briefed at least one week prior to the conference. Plaintiffs' motion was filed on August 7, 2006. Under this provision, Merck's opposition would have been due on August 28, 2006 – a date less than 7 days prior to the hearing.[4] Once again, had Merck believed the Court would actually hold oral argument, it would have raised this concern with the Court.

In short, this Court has repeatedly said that remand motions should be addressed in a coordinated manner so that the Court issues consistent rulings on overlapping motions. As a result, Merck understandably assumed that the Court would defer consideration of this motion as

---

[4] It also implicates Local Rule 7.5(e) which requires that oppositions be filed 8 days before the hearing date.

4

826949v.1

n/a
n/a
n/a
n/a

well. After all, the Court's *ad hoc* remand order in this matter is contrary to the Court's planned approach to remand issues because it did not consider the jurisdictional issues in a coordinated manner. For these reasons, Merck respectfully requests that the Court reconsider its decision to remand this case to state court and defer consideration of the remand motion until it considers all similar remand motions in a coordinated manner.

## II. THE COURT'S ORDER REMANDING THIS CASE TO STATE COURT WAS WRONG ON THE MERITS.

Even if the Court were inclined to consider the remand issue as to this case alone – rather than consider remand motions on a coordinated basis – reconsideration would still be appropriate because this case was properly removed to federal court. As set forth below, the only in-state and non-diverse defendants were fraudulently joined because there is no reasonable basis to predict that they will prevail on their claims against Merck.[5]

A defendant is improperly joined if "there is no reasonable basis for predicting that plaintiff might establish liability . . . against the in-state defendants" on the pleaded claims in state court. *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (the "mere assertion of metaphysical doubt as to the material facts i[s] insufficient" to establish reasonable basis for predicting recovery under state law) (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) (internal quotation marks omitted)); *accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312, 328-29 (5th Cir. 2002) (possibility of liability must be reasonable, not merely "theoretical"). Improper joinder is established by, *inter alia*, "inability of the plaintiff to establish a cause of action against the non-diverse party in state

---

[5]   Plaintiff does not dispute that the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332 is satisfied.

court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  In other words, removal is appropriate and the citizenship of a non-diverse defendant may be disregarded where "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id*. at 573.

      Here, there is no reasonable basis to predict that plaintiffs' will prevail on their claims against the non-diverse defendants.  Plaintiffs have named two groups of non-diverse defendants in this suit.  First, they have alleged that Dr. Kolessar, the Pittsburgh Penguins and the Scranton/Wilkes-Barre Penguins (collectively, the "Penguins Organization") knew of the very risks Merck allegedly concealed.  According to plaintiffs, "[d]espite the fact that Defendants knew, or reasonably should have known, that consumption of Vioxx could cause unreasonable and dangerous side-effects, Defendants continues to provide Plaintiff with – and encouraged Plaintiff to take, and told Plaintiff it was safe to take – Vioxx, without warning Plaintiff fo these side effects." (Plaintiffs' Civil Action Complaint – Short Form ("Compl.") at ¶ 117.)   Second, plaintiffs have named several in-state and non-diverse current and former Merck officers, David Anstice and Peter Kim (both Pennsylvania residents), and Louis Sherwood (a Florida resident) (collectively, the "individual defendants").[6]  According to plaintiffs, "[d]espite the numerous studies and clinical trial showing an increased risk of cardiovascular side effects, Defendants [Anstice and Kim] continued to represent to customers that Vioxx was safe and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug." (Compl. at ¶ 122.)

---

[6]     Mimicking pleadings of other Philadelphia area law firms, plaintiffs have also joined  Edward Scolnick.  Scolnick is completely diverse from plaintiffs and not a Pennsylvania citizen.  Although the joinder of Scolnick is equally fraudulent, the Court need not consider him for the purposes of this motion.

As set forth below, the claims against the Penguins Organization, Dr. Kolessar and the other individual defendants are the kind of sham claims that have been condemned so often in other pharmaceutical mass torts.  *See, e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Defenfluramine) Prods. Liab. Litig.*, No. MDL 1203, Civ.A. 03-20611, 2004 WL 2203712, at *1-2 (E.D. Pa. Sept. 28, 2004) (applying Missouri law and holding that non-diverse sales representatives were fraudulently joined in pharmaceutical products liability case where plaintiffs did "not set forth any specific facts to support their conclusory allegations of fraud" against sales reps); *In re Diet Drugs*, 2004 WL 1824357, at *3-4 (E.D. Pa. Aug. 12, 2004) (applying Florida law); *In re Diet Drugs*, 294 F. Supp.2d 667, 677 (E.D. Pa. 2003) (applying Georgia law); *In re Rezulin Prods. Liab. Litig.*, 133 F.Supp.2d 272, 283-84, 286-88 (S.D.N.Y. 2001) (applying Mississippi and Alabama law); *Johnson v. Parke-Davis*, 114 F. Supp.2d 522, 525 (S.D. Miss. 2000) (applying Mississippi law and holding that pharmaceutical sales representatives are fraudulently joined when plaintiffs "have failed to establish any connection between themselves and the named sales representatives" by presenting evidence "that any of the named Plaintiffs, or their physicians, ever received [the drug] from the named sales representatives).  *See also In re: Baycol Prods. Litig.*, No. 1431 (MDL/JGL), Civ.A. 03-4954, 2004 WL 1118642, *3 (D. Minn. May 17, 2004) (finding defendant corporation's district sales managers to be fraudulently joined where the complaint "is completely devoid of any allegations concerning what representations were made, to whom, in what manner such representations were made, when such representations were made, or that Plaintiffs relied on such representations.")  Accordingly, Merck's removal was proper and the case should not have been remanded to state court.

A.      **The Penguins Organization and Dr. Kolessar Are Fraudulently Joined.**

Plaintiffs' claims against Merck cannot be properly joined with plaintiffs' claims against Dr. Kolessar and the Penguins Organization because the two claims are hopelessly inconsistent.[7] The thrust of plaintiffs' Complaint is that Merck affirmatively concealed cardiovascular risks associated with Vioxx, made false representations that Vioxx was safe, failed to warn of the dangers of Vioxx, and fraudulently suppressed and concealed knowledge about the safety of Vioxx. (*See, e.g.,* Compl. at ¶¶ 61-65, 69-71, 117-123, 159-168.) Plaintiffs also allege that Merck misrepresented facts and withheld information regarding the risks of Vioxx from the healthcare industry. (*Id.*)

In the very same Complaint filled with allegations of misrepresentation and concealment on the part of Merck, plaintiffs then turn around and assert that Dr. Kolessar and the Pittsburgh Penguins knew all about the same risks that Merck allegedly hid. Plaintiffs allege that Dr. Kolessar and the Penguins Organization "encourage[ed] Plaintiff to take a medication they knew to be potentially dangerous" and "that [the Penguins Organization and Dr. Kolessar] knew, or reasonably should have known, that consumption of Vioxx could cause unreasonable and dangerous side effects, [the Penguins Organization and Dr. Kolessar] continued to provide Plaintiff with . . . Vioxx, without warning Plaintiff of these side effects . . ." (*Id.* at ¶¶ 111-12.) As other courts have recognized, defendants like the Penguins Organization and Dr. Kolessar are

---

[7]     For purposes of analysis, the claims against the Penguins Organization should be treated as garden variety malpractice claims, even though plaintiffs try to make them seem more complicated. In essence, plaintiffs allege that Dr. Kolessar committed malpractice in giving Vioxx to plaintiff, and that the Penguins Organization are liable because Dr. Kolessar was their employee.

fraudulently joined where, as here, plaintiffs' conclusory allegations against them are entirely inconsistent with their claims against the primary defendant.[8]

Faced with similar facts in a case where plaintiffs had fraudulently joined a non-diverse physician defendant, the Baycol MDL court explained that where "the main thrust" of the complaint is that the pharmaceutical defendants "misrepresented [a prescription medication's] risks and failed to adequately warn of such risks," mere conclusory allegations that a physician "'knew or should have known'" of those risks will not defeat a finding of fraudulent joinder. *Spier v. Bayer Corp*. (*In re Baycol Products Litigation*), 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) ("*Baycol*").  The *Baycol* court, "[r]eading the Complaint as a whole," found that "the main thrust of this action is that the [pharmaceutical] Defendants misrepresented Baycol's risks and failed to adequately warn of such risks.  Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegations that Dr. Stone 'knew or should have known' of Baycol's risks.  Her conclusory allegations, however, will not defeat a finding of fraudulent joinder." *Id.*  Concluding that allegations that the non-diverse physician negligently prescribed Baycol were inadequate to defeat removal, the court denied plaintiff's motion to remand.  *Id.* at *2.

Numerous other courts have found fraudulent joinder under these precise circumstances. For example, in *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 295 (S.D.N.Y.

---

[8]  Plaintiffs' claims boil down to conclusory allegations that Dr. Kolessar and his employer, the Penguins Organization, knew or should have known the alleged dangers/risks of Vioxx. Plaintiffs assert that Dr. Kolessar and the Penguins Organization provided Plaintiff with "Vioxx without a prescription, without evaluation, and, in the case of the [Penguins Organization], without a license to do so, in violation of Pennsylvania law." see Plaintiffs' Memo in Support of Remand, at 9.  These allegations, as well as other allegations of "providing . . . Vioxx . . . without any customary medical examination," "providing off-season prescriptions . . . without follow up care," or "prescribing Vioxx to Plaintiff without evaluating Plaintiff," are mere window-dressing of the same claim, premised on the allegation that Vioxx is dangerous and that Dr. Kolessar was aware of these dangers.

9

2001) ("*Rezulin*"), the court found that an Alabama resident physician was fraudulently joined in a products liability action against a drug manufacturer, where the plaintiffs' specific allegations that the manufacturer misrepresented and concealed material facts about the safety and efficacy of its drug refuted the assumption that the physician had knowledge of the drug's harmful effects. *See also Omobude v. Merck & Co.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (attached as Exhibit 1) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx"); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where the "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, *2 (S.D.N.Y. Dec. 18, 2002) (non-diverse physician defendant fraudulently joined where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others").

The same is true here. Because plaintiffs' conclusory allegations against the Penguins and Dr. Kolessar are inconsistent with the gravamen of their claims against Merck, these defendants were fraudulently joined, and the Court should reconsider its remand decision.[9]

---

[9] Even if the Court were to conclude the Penguins Organization and Dr. Kolessar were not fraudulently joined, the Penguins Organization and Dr. Kolessar can and should be severed from this case pursuant to Federal Rules of Civil Procedure 19 and 21. Rule 21 provides that "[p]arties may be dropped . . . by order of the court on . . . such terms as are just." Fed. R. Civ. P. 21. Indeed, the Supreme Court has explained that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). *See also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) (explaining that court of appeals, like district courts, "can dismiss a dispensable party in order to retain jurisdiction").

### B.     The Individual Defendants Are All Fraudulently Joined.

Under Fifth Circuit law, fraudulent joinder is established if the "evidence demonstrates that as a matter of law, there is no reasonable basis for predicting that the plaintiff might establish liability against a named in-state defendant in state court." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 390 (5th Cir. 2000) (citing *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). Because there is no basis in the law for plaintiffs' claims against the "individual defendants," joinder of these parties is fraudulent and cannot defeat diversity jurisdiction.[10]  *See Heritage Bank v. Redcom Labs., Inc.,* 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent misjoinder of defendant will not operate to defeat diversity jurisdiction).

The essence of the plaintiffs' lawsuit is that the package insert for Vioxx contained inadequate warnings about the known risks of the drug. While the law may allow liability to be imposed on a ***company*** that negligently sells a drug without providing adequate warnings in its package insert of the known risks, there is no room in the law for extending liability for a deficient package insert from the company to its ***individual officers***. Courts have consistently refused to impose liability on corporate officers for conduct that allegedly influenced the corporation to behave negligently. *See Shay v. Flight Helicopter Svcs., Inc.*, 822 A.2d 1 (Pa. Super. Ct. 2003) (owner/president of a helicopter services company found not liable for the death of a helicopter owner killed when an engine failed after the company's mechanic improperly installed equipment, although the owner generally, but not specifically, supervised the mechanic); *Kinal v. Holiday Inns, Inc.*, Civ. A. No. 93-59, 1993 WL 17653 (E.D. La. Jan. 21,

---

[10]     In naming these Individual Defendants, plaintiffs have mimicked the pleadings of certain other Philadelphia area law firms.  Merck has contested the propriety of this joinder in many other cases, providing yet another reason why the jurisdictional issues in this case should be decided in a coordinated manner after the conclusion of a number of MDL trials.  *See, infra*, Section I.

11

1993) (general manager of a hotel held not liable in a slip and fall case for negligence arising out of the manager's administrative duties performed as a general function of employment); *Mozingo v. Correct Manuf. Corp.*, 752 F.2d 168 (5th Cir. 1985) (evidence that the president of a corporation was "concerned" about equipment now the subject of litigation was insufficient to hold the president personally liable especially because the president had little or nothing to do with the production of the equipment); *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958) (corporate president and manager found not liable for injuries arising from the sale of a defective bike).

In the pharmaceutical context, courts have similarly looked at claims against corporate employees with deep skepticism, rejecting motions to remand where plaintiffs sought to hold corporate employees personally liable for the corporation's alleged negligence. *See, e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Defenfluramine) Products Liability Litigation*, 220 F. Supp. 2d 414 (E.D. Pa. 2002) (Bartle, J.) (holding sales representatives fraudulently joined where learned intermediary doctrine applies); *In re Rezulin*, 133 F. Supp. 2d 272, 282, 286-87 (S.D.N.Y. 2001). For example, in *In re Rezulin*, 133 F. Supp. at 286-87, the court refused to remand a product liability case brought against the manufacturer of the diabetes drug Rezulin despite the fact that plaintiff named individual, non-diverse pharmaceutical sales representatives as parties to the action. There, the court acknowledged that where plaintiff's complaint contained only cursory allegations regarding non-diverse sales representative's failure to warn plaintiff and physicians, there was "no reasonable possibility that plaintiffs have alleged legally sufficient claims for relief against the [] sales representatives" and therefore the sales representatives had been fraudulently joined. *Id.* The same is true here.

The Court's reasoning in *Rezulin* applies in spades here. Plaintiffs' complaint in this case does not allege that any particular act or statement by the individual defendants caused the alleged inadequacies in the Vioxx package insert, much less that it was because of something the individual defendants did or said that caused plaintiff to take Vioxx. Instead, the Complaint simply alleges general oversight and a general failure to warn on the part of the individual defendants. *See, e.g.*, Compl., ¶¶ 117-123. As the Fifth Circuit and other courts have recognized, that is not enough to establish a claim and evade diversity jurisdiction. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (finding in-state defendant fraudulently joined where plaintiff refers to the in-state defendant only in passing and directs specific allegations toward the diverse defendants); *Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 844 (N.D. Tex. 2003) (clinical researchers were fraudulently joined in fraud claim "because nowhere do the Plaintiffs plead the particulars regarding the Clinical Researchers' allegedly false representations and omissions").

In short, plaintiffs' claims against the individual defendants are nothing but a new variant of the effort to avoid federal court by alleging not only that a ***corporation*** is liable for an injury caused by its negligence but that ***employees*** of the corporation should be held personally liable for their role in the alleged corporate negligence. Because plaintiffs have presented no valid legal or factual arguments to support their claims against the individual defendants, it is clear that these parties have been fraudulently joined to this action and, therefore, plaintiffs' motion for remand should have been denied.[11]

---

[11] Plaintiffs' other basis for remand – that Merck failed to obtain unanimous consent – is without merit and warrants no consideration. As explained in the removal papers, it is well settled that co-defendants who are fraudulently joined need not join in the removal. *See Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995); *Texas E. Transmission Corp. v. Fidelity & Cas. Co. of N.Y.*, Civ. A. No. 93-15, 1995 WL 596155, *9 (E.D.

***(continued on next page)***

## **CONCLUSION**

For the foregoing reasons, the Court should grant Merck's motion to reconsider and vacate the Court's order remanding this case to state court.

Dated: August 31, 2006                                             Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE      PIGMAN      WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

---

Pa. Oct. 6, 1995).  Merck obtained the consent of Dr. Scolnick, the only diverse, out-of-state party.  The consents of the others are irrelevant because they are fraudulently joined.

826949v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law in Support of Merck's Motion for Reconsideration has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 31st day of August, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

826949v.1