## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** | * | |
| **Case No. 2:05-CV-04379** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| **ROBERT G. SMITH**, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## JURY INSTRUCTIONS PROPOSED BY MERCK & CO., INC. ("MERCK")

Merck hereby submits the following proposed jury instructions for the first phase of the trial, numbered 1 through 19.  Merck reserves the right to add, delete, or revise its proposed instructions depending on the evidence presented and further legal analysis.

1

827236v.1

Dated: September 1, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Brian Currey
Catalina J. Vergara
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

Attorneys for Merck & Co., Inc.

2

INSTRUCTION NO. 1

**General Instruction**

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or that I make in these instructions as indicating that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.]  [You have heard the closing arguments of the attorneys.]  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

In reaching your verdict, you are not to be swayed from the performance of your duty by prejudice, sympathy, or any other sentiment for or against any party.  All corporations and all other persons are equal before the law and must be treated as equals in a court of justice.  Your verdict must be based on the evidence that has been received and the law on which I am about to instruct you.

Your verdict must be unanimous.

You must address each cause of action – except plaintiff's "failure to disclose" fraud claim, which I will address in a moment – from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You must decide plaintiff's "failure to disclose" fraud claim based on the clear and convincing evidence standard.  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose.  You may consider such evidence only for the specific limited purposes for which it was admitted.  (Specific limiting instructions may be repeated as appropriate.)]

827236v.1

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters.  You are not, however, required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

827236v.1

[Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.


Authority:  *Pattern Jury Instructions: Fifth Circuit, Civil Cases*, §§ 2.13, 2.14, 3.1 (as modified); *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359  (Ky. App. 1978) ("The burden is on the party asserting fraud to establish it by clear and convincing evidence.").

827236v.1

INSTRUCTION NO. 2

**<u>Deposition Testimony</u>**
(to be given the first time deposition testimony is shown)

Certain testimony will now be presented to you through a video deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers will be shown to you today.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility as if the witness had been present and had testified from the witness stand in court.

<u>Authority:</u>  *Pattern Jury Instructions: Fifth Circuit, Civil Cases § 2.23* (as modified).

827236v.1

INSTRUCTION NO. 3

**Contentions of the Parties**

This is a products liability case arising out of Mr. Smith's use of Vioxx.  Merck manufactured Vioxx, a prescription medication approved by the United States Food and Drug Administration, also known as the FDA.   Mr. Smith took Vioxx from approximately October 2, 2002, to approximately February 17, 2003.  On February 17, 2003, he suffered a heart attack.  Mr. Smith claims that his heart attack was caused by Vioxx.

In your deliberations, you are to consider five claims.  First, plaintiff alleges that Merck should be held strictly liable for his injuries because it allegedly failed to warn or inadequately warned his treating physician of a risk associated with Vioxx which allegedly caused plaintiff's injuries. Second, plaintiff alleges that Merck was negligent because it either knew or should have known of a risk associated with Vioxx and it failed to take reasonable care in warning Mr. Smith's treating physician of such a risk.  Third, plaintiff alleges that Merck's alleged failure to take due care was gross negligence because it was allegedly done with malice or reckless disregard for others' well-being.  Fourth, plaintiff alleges that Merck is liable for fraud for knowingly failing to disclose known risks supposedly associated with Vioxx to Mr. Smith's doctor.  Finally, plaintiff alleges that Merck is liable for breach of warranty for allegedly failing to warn his treating physician about allegedly known risks associated with Vioxx.

Merck contends that its warning to Mr. Smith's prescribing physician was adequate and complied with the rules of the FDA.  Merck also asserts that it acted as a reasonably prudent pharmaceutical manufacturer would have, and that it disclosed to the FDA and the medical community all relevant Vioxx safety data and risk information that was known or reasonably scientifically knowable at the time Mr. Smith was prescribed and took Vioxx.  Based in part on Mr. Smith's independent risk factors for cardiovascular disease, the fact that Mr. Smith was only prescribed the 25 mg dose of Vioxx, and the fact that Mr. Smith used Vioxx for less than five months, Merck denies that Vioxx caused or contributed to Mr. Smith's alleged injuries.

You should note, in your deliberations, that the mere fact that Mr. Smith may have been injured after or while using Vioxx does not permit you, the jury, to draw any inference that such injuries were caused by Vioxx or by Merck's negligence, fault, or breach of warranty.

Authority:  *Holbrook v. Rose*, 458 S.W.2d 155, 158 (Ky. App. 1970) ("[T]he essence of the test concerning the sufficiency of plaintiff's circumstantial evidence concerning causation is that the proof must be sufficient to tilt the balance from 'possibility' to 'probability.'"); *Moore v Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (expert's reliance on the temporal relationship between the exposure and the onset of symptoms was entitled to little weight in the absence of supporting literature); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (rejecting expert testimony that nicotine patch caused a heart attack because the attack occurred just three days later as "lack[ing] scientific rigor").

INSTRUCTION NO. 4

**Products Liability – Proximate Cause**

In order for Mr. Smith to prevail on any of his claims, he must establish that Vioxx was the legal, or "proximate," cause of his alleged injuries.

I will now define proximate cause for you.  Proximate cause means the efficient cause or direct cause.  The law defines proximate cause of an injury to be something that produces a natural chain of events which, in the end, brings about the injury.  In other words, proximate cause is the cause without which the injury would not have occurred.

Proximate cause requires proof of both causation in fact and legal cause.  Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's actions.  Legal cause is proved by establishing foreseeability.

Proximate cause requires a showing of foreseeability of some injury from the defendant's conduct.  The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of conduct.  Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the complained of act.

While it is not necessary that the defendant must have contemplated or could have anticipated the particular injury that occurred, liability cannot rest on mere possibilities. The product must be a probable cause of the injury and not a mere possible cause.  Where the injuries are alleged to have been caused by a prescription drug, the plaintiff must show that the drug substantially contributed to the injuries.  If the injury would have happened as a natural and probable consequence even in the absence of defendant's actions, then plaintiff has failed to demonstrate proximate cause.

Proximate cause does not mean the sole cause.  A defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged injury.  However, a plaintiff must show that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.  A mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

If you find that Mr. Smith has failed to prove that Merck's actions were a proximate cause of his alleged injuries, you must bring in a verdict for Merck.

Authority: *T & M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006) ("Consideration must also be given to whether the harm to the plaintiff resulting form the defendant's negligence was foreseeable."); *Snawder v. Cohen*, 749 F. Supp. 1473, 1476 (W.D. Ky. 1990) (applying Comment k of the Restatement (Second) of Torts § 402A to Kentucky product liability claims); *Briner v. General Motors Corp.*, 461 S.W.2d 99, 101 (Ky. App. 1970) ("While reasonable inferences are permissible, a jury verdict must be based on something other than speculation, supposition or surmise.").

8

INSTRUCTION NO. 5

**Medical Causation**

In this lawsuit, it is disputed whether or not taking Vioxx at the 25 mg dose for approximately four and one half months caused Mr. Smith's heart attack or any other injuries alleged by him. Plaintiff has the burden of proving medical causation by the greater weight of the evidence.   As I have already explained to you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the credible evidence in the case.

In order to meet this burden to show medical causation, plaintiff must first prove that the use of Vioxx at the 25 mg dose for a period of four and one half months is capable of causing the injuries he allegedly sustained.  Plaintiff must next proffer a competent medical expert to testify, to a reasonable degree of medical probability, that Vioxx more probably than not caused his injuries.   Plaintiff must present sufficient evidence to shift the balance from possibility to probability that it was Vioxx that caused his injuries.

If you find that plaintiff has failed to present sufficient evidence to show that Vioxx *both* could have caused *and* did cause his alleged injuries, then you necessarily find that Merck is not liable to plaintiff for these injuries.

Authority:  *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004) ("Medical causation must be proved to a reasonable medical probability with expert medical testimony . . . ."); *Holbrook*, 458 S.W.2d at 158; *Sandoz Pharms. Corp. v. Gunderson*, Nos. 2004-CA-1536-MR and 2004-CA-1537-MR, 2005 WL 2694816, at *16 (Ky. Ct. App. Oct. 21, 2005) (plaintiff "bore the burden of proving both that Parlodel(R) is capable of causing seizures and that it probably did so in this case.").

827236v.1

INSTRUCTION NO. 6

**Product Liability – Prescription Drugs**

Mr. Smith's claims are all based on Merck's alleged failure to warn of the cardiovascular risks allegedly associated with Vioxx.

Many products cannot be made completely safe for use.  Prescription drugs often cause unwanted side effects despite the fact that they have been carefully designed and properly manufactured.  When such products offer benefits that make them useful and desirable – as do prescription drugs – they are considered "unavoidably unsafe," not "unreasonably dangerous."

Any plaintiff alleging liability based on such a product must establish that the manufacturer failed to adequately warn his or her prescribing physician of the dangers in using the product.  So long as the manufacturer provides adequate warnings and instructions to treating physicians concerning these products, it cannot be held liable for injuries resulting from their use.

When an adequate warning is given, the manufacturer may assume that it will be heeded by the prescribing physician.  If the prescribing physician ignores the warning, the manufacturer is not liable for any injuries caused by the use of the product.  Further, if the prescribing physician is aware of the danger and nevertheless proceeds to prescribe the product and the plaintiff is injured by it, the plaintiff may not recover from the manufacturer any damages caused by its use.

Authority:  *McMichael v. American Red Cross*, 532 S.W.2d 7, 9 (Ky. App. 1975) (some types of products are designated "unavoidably unsafe" and are not subject to liability for design defect as long as a proper warning is given); *Snawder*, 749 F. Supp. at 1476 ("When applying Comment k to Kentucky law, 'the manufacturer's liability is limited to . . . warning defects, where a manufacturer's failure to market a drug or vaccine without adequate warnings of its dangers renders the product defective.'"); Ronald W. Eades, KENTUCKY PRODUCTS LIABILITY LAW § 7.3 (2006)

INSTRUCTION NO. 7

**Learned Intermediary Doctrine**

Under the applicable law, a prescription drug manufacturer is not liable to a consumer when it has given an adequate warning of potential risks or dangers inherent in a product to the "learned intermediary," such as a physician, who is in a position to understand and assess the risks involved.  This rule applies even a defendant drug manufacturer markets its product directly to consumers through mass media outlets such as television.

The question is whether the warning provided would be sufficient to apprise a general practitioner of the dangerous propensities of the drug.  Adequate warnings can be provided in package inserts, labels approved by the FDA, the "Physician's Desk Reference," or included in published articles or other literature.

Providing an adequate warning to the prescribing physician relieves the manufacturer of its duty to warn the patient regardless of how or if the physician warns the patient.

If you find that Merck adequately warned Mr. Smith's prescribing physician, you must find for Merck on all claims.

Also, if you find that Mr. Smith's treating physician had independent knowledge of the alleged risks of Vioxx, you must find for Merck – whether or not you find Merck adequately warned Mr. Smith's treating physician.


Authority:  *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 763-66, 770 (Ky. 2004) ("obligation of a manufacturer to warn about risks attendant to the use of drugs and medical devices that may be sold only pursuant to a health-care provider's prescription traditionally has required warnings directed to health-care providers and not to patients") (citing *Wolfgruber v. Upjohn Co.*, 423 N.Y.S.2d 95, 97 (N.Y. App. Div. 1979)); *Sandoz Pharms.*, 2005 WL 2694816, at * 27 ("Among the rationales for this doctrine . . . is the fact that generally the prescribing physician is in a superior position to impart the warning and can provide an independent medical decision as to whether use of the drug is appropriate for treatment of a particular patient."); *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 468 (5th Cir. 1999) ("If the physician was aware of the possible risks involved in the use of the product but decided to use it anyway, the adequacy of the warning is not a producing cause of the injury")

INSTRUCTION NO. 8

**FDA Approval**

The FDA is the expert federal public health agency charged by Congress with ensuring that drugs are safe and effective and that their labeling adequately informs physicians of risks and benefits of the product and is truthful and not misleading.  The FDA carefully controls the content of labeling for a prescription drug because labeling is the FDA's principal tool for educating healthcare professionals about the risks and benefits of the approved product to help ensure safe and effective use.  If you find that Merck's labels for Vioxx were approved by the FDA, you must presume that Merck's warnings were adequate.

Authority:  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (permitting state-court juries to impose their judgments on the adequacy of the drug approval process under state-law standards "would exert an extraneous pull on the scheme established by Congress" to protect the public); *NVE Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 196 (3d Cir. 2006) (overturning trial court's refusal to give "normal" deference to the "legal and factual determinations the FDA made during rulemaking"); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 538 (E.D. Pa. 2006) (plaintiff's state-law failure to warn claims were preempted because the drug approval "process required that the labeling be the same as that approved for the innovator drug" and "the FDA would have deemed any post-approval enhancements 'false or misleading'"); *Enlow v. St. Jude Med., Inc.*, 171 F. Supp. 2d 684 (W.D. Ky. 2001), amended by 210 F. Supp. 2d 853 (W.D. Ky. 2001) (negligence, strict liability, and breach of warranty claims for failure of mechanical heart valve preempted by federal law as the FDA required its approval of any modifications or additions to the valve's labeling); 71 Fed. Reg. 3922, 3923-35 (Jan. 24, 2006) ("Consistent with its court submissions and existing preemption principles, FDA believes that [claims that a drug sponsor breached an obligation to warn] would be preempted by its regulation of prescription drug labeling . . . ."); 21 C.F.R. § 10.85(d)(1) and (e).

827236v.1

INSTRUCTION NO. 8A
[In the Alternative to Instruction No. 8]

### FDA Approval

The FDA is the expert federal public health agency charged by Congress with ensuring that drugs are safe and effective and that their labeling adequately informs physicians of risks and benefits of the product and is truthful and not misleading.  The FDA carefully controls the content of labeling for a prescription drug because labeling is the FDA's principal tool for educating healthcare professionals about the risks and benefits of the approved product to help ensure safe and effective use.  If you find that Merck's labels for Vioxx were approved by the FDA, you must return a verdict for Merck on all claims.

Authority:  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (permitting state-court juries to impose their judgments on the adequacy of the drug approval process under state-law standards "would exert an extraneous pull on the scheme established by Congress" to protect the public); *NVE Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 196 (3d Cir. 2006) (overturning trial court's refusal to give "normal" deference to the "legal and factual determinations the FDA made during rulemaking"); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 538 (E.D. Pa. 2006) (plaintiff's state-law failure to warn claims were preempted because the drug approval "process required that the labeling be the same as that approved for the innovator drug" and "the FDA would have deemed any post-approval enhancements 'false or misleading'"); *Enlow v. St. Jude Med., Inc.*, 171 F. Supp. 2d 684 (W.D. Ky. 2001), amended by 210 F. Supp. 2d 853 (W.D. Ky. 2001) (negligence, strict liability, and breach of warranty claims for failure of mechanical heart valve preempted by federal law as the FDA required its approval of any modifications or additions to the valve's labeling); 71 Fed. Reg. 3922, 3923-35 (Jan. 24, 2006) ("Consistent with its court submissions and existing preemption principles, FDA believes that [claims that a drug sponsor breached an obligation to warn] would be preempted by its regulation of prescription drug labeling . . . ."); 21 C.F.R. § 10.85(d)(1) and (e).

827236v.1

INSTRUCTION NO. 9

**Plaintiff Must Exercise Ordinary Care**

A manufacturer may not be held liable if the plaintiff failed to exercise ordinary care in his use of, or decision to use, the manufacturer's product, and that failure to exercise care was a substantial cause of the injury to the plaintiff.

Thus, if you find that Mr. Smith or his physician failed to exercise ordinary care in Mr. Smith's use of Vioxx, you must find for Merck.

<u>Authority:</u>  KY. REV. STAT. § 411.320(3).

827236v.1

INSTRUCTION NO. 10

**Strict Liability and Negligent Failure to Warn**

Mr. Smith's claims for strict liability and negligence are based on Merck's alleged failure to warn of the cardiovascular risks allegedly associated with Vioxx.

As I have told you, prescription drugs are the type of product that cannot be made completely safe for use.  With proper warnings prescription drugs are not unreasonably dangerous or defective.

As I have also told you, a manufacturer of a prescription drug only has a duty to warn the "learned intermediaries," or prescribing physicians.

Merck can be found liable for negligence and strict liability if and only if the plaintiff can establish by the preponderance of the evidence that:

(1) Merck failed to adequately warn Mr. Smith's prescribing physician of a known or reasonably scientifically knowable risk created by Vioxx; and
(2) Mr. Smith's prescribing physician did not otherwise know of that risk; and
(3) the failure to warn by Merck was a legal cause of an injury to Mr. Smith.

Because Mr. Smith claims that Vioxx caused his heart attack, he must prove by a preponderance of the evidence that a risk of suffering a heart attack as a result of short term use of Vioxx at the 25 mg dose was known or reasonably scientifically knowable by Merck at the time his doctor prescribed Vioxx to him.


Authority:  *Snawder*, 749 F. Supp. at 1476 ("theories of negligence and strict liability in failure to warn cases have been deemed to be 'functional equivalents.'") (internal quotes and citations omitted); *Larkin*, 153 S.W.3d at 761 ("the fact that a particular drug might produce unfortunate side effects makes it 'unavoidably unsafe' but not 'unreasonably dangerous' . . . and strict liability will not obtain if proper warning is given, where the situation calls for it."); *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 705 (E.D. Ky. 2003) (the crucial question raised by any unavoidably unsafe product is whether the manufacturer provided an adequate warning); Palmore, KENTUCKY INSTRUCTIONS TO JURIES (2005), 49.02, 49.05.

INSTRUCTION NO. 11

**Failure to Warn and Causation – Prerequisite for Other Causes of Action**

As I have informed you, failure to warn and causation are the fundamental elements of plaintiff's failure to warn claims.  Plaintiff's other claims also require that he establish these two essential elements.

If you find in favor of Merck on plaintiff's failure to warn claims, you have necessarily found for Merck on plaintiff's other claims.

Authority:  *Larkin*, 153 S.W.3d at 761 (under Comment k, "the crucial question . . . is whether the manufacturer provided an adequate warning"); *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 858-60 (4th Cir. 1980) (When comment k applies, "[t]he standard for liability under strict liability and negligence is essentially the same: was the warning adequate?"); *Klem v. E.I. DuPont De Nemours & Co.*, 19 F.3d 997, 1003 (5th Cir. 1994) (finding plaintiff's claims brought under negligence and other theories "essentially duplicate plaintiffs' failure to warn claim under [strict liability]").

16

827236v.1

INSTRUCTION NO. 12

## Gross Negligence

The applicable law recognizes a grade of negligence known as "gross negligence," which is when the defendant's failure to take due care exhibits an element of malice, willfulness, or utter disregard of the rights of others.

For Merck to be liable for gross negligence, you must find that the preponderance of the evidence shows that:

(1)  Merck is liable under the strict liability and negligent failure to warn claims; <u>and</u>
(2)  Merck's failure to warn plaintiff's treating physician was intentional <u>or</u> was the result of reckless disregard to plaintiff's well-being.

Gross negligence requires more than failure to exercise the care of a reasonable person. Therefore, evidence of safer and more cost effective alternative designs does *not* establish gross negligence.

Authority:  *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51-52 (Ky. 2003) (to establish gross negligence, "there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful") quoting *Cooper v. Barth*, 464 S.W.2d 233, 234 (Ky. App. 1971); *Cameron v. DaimlerChrysler, Corp.*, No. 5:04-CV-24-JMH, 2005 WL 2674990, at *26 (E.D. Ky. Oct. 20, 2005) (evidence of safer and more cost effective alternative designs does *not* constitute gross negligence); Palmore, KEN. INST. JUR., 14.07.

827236v.1

INSTRUCTION NO. 13

**<u>Fraud – "Failure to Disclose"</u>**

Plaintiff claims that Merck committed fraud by "failure to disclose," based on his allegation that Merck had a duty to disclose certain material facts and failed to do so.

In order to recover on this claim, plaintiff must show that:

(1) Merck knowingly failed to disclose to Mr. Smith's prescribing physician a known risk created by Vioxx; <u>and</u>
(2) Mr. Smith's prescribing physician relied on the non-disclosure and was not otherwise aware of risk created by Vioxx; <u>and</u>
(3) the failure to warn by Merck was a legal cause of an injury to Mr. Smith.

Unlike Mr. Smith's other claims, each and every one of these elements must be proven by clear and convincing evidence rather than by a preponderance of the evidence.

Mr. Smith must prove by clear and convincing evidence that the risk of suffering a heart attack as a result of short term use of Vioxx at the 25 mg dose was known by Merck at the time his doctor prescribed Vioxx to him.

You must determine whether Mr. Smith's prescribing physician, not the plaintiff himself, relied on any alleged nondisclosure.  If plaintiff's doctor was aware of the omitted facts, plaintiff cannot recover because there could not have been any reliance.

If you determine that Merck did not knowingly withhold any material fact from Mr. Smith's prescribing physician, or if you determine that the alleged non-disclosure was not the proximate cause of an injury to Mr. Smith, your verdict on this cause of action must be for Merck.

<u>Authority:</u>  *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W. 3d 636, 641 (Ky. App. 2003) (defining elements of fraud by omission); *Craig & Bishop, Inc. v. Piles*, No. 2004-CA-001883-MR, 2005 WL 3078860, at *3 (Ky. App. Nov. 18, 2005) (the misrepresentation alleged "must relate to a past or present material fact which is likely to affect the conduct of a reasonable man and be an inducement of the contract"); *McHargue v. Fayette Coal & Feed Company*, 283 S.W.2d 170, 172 (Ky. App. 1955) ("The representation must be short of a warranty but sufficient to deceive and to create in the mind a distinct representation of a fact."); *Wahba*, 573 S.W.2d at 359 (fraud claims must be established by clear and convincing evidence).

827236v.1

INSTRUCTION NO. 14

**Breach of Express Warranty**

Plaintiff alleges that public statements by Merck concerning the safety of Vioxx use constituted an express warranty, and that the actual safety of Vioxx use was inconsistent with Merck's statements and thus Merck breached its express warranty.

As I have told you, prescription drugs are the type of product that cannot be made completely safe for use.  With proper warnings prescription drugs are not unreasonably dangerous or defective.

As I have also told you, a manufacturer of a prescription drug only has a duty to warn the "learned intermediaries," or prescribing physicians.

Merck can be found liable for breach of warranty if and only if the plaintiff can establish by the preponderance of the evidence that:

> (1) Merck failed to adequately warn Mr. Smith's prescribing physician of a known or reasonably scientifically knowable risk created by Vioxx; and
> (2) Mr. Smith's prescribing physician did not otherwise know of that risk; and
> (3) the failure to warn by Merck was a legal cause of an injury to Mr. Smith.

Because Mr. Smith claims that Vioxx caused his heart attack, he must prove by a preponderance of the evidence that a risk of suffering a heart attack as a result of short term use of Vioxx at the 25 mg dose was known or reasonably scientifically knowable by Merck at the time his doctor prescribed Vioxx to him.

Plaintiff must also establish that he obtained Vioxx directly from Merck, and not though an intermediary such as a doctor or pharmacy.  Because plaintiff did not purchase Vioxx directly from Merck, I direct you to find for Merck on this claim.


Authority:  *Larkin*, 153 S.W.3d at 761 (granting summary judgment on breach of warranty claims based on application of Comment k and finding that "the crucial question . . . is whether the manufacturer provided an adequate warning"); *Snawder*, 749 F. Supp. at 1481 ("Kentucky still requires privity where liability is predicated, not on ordinary negligence or strict liability, but on warranty."); KY. REV. STAT. § 355.2-318.

INSTRUCTION NO. 14A
[In the Alternative to Instruction No. 14]

**Breach of Express Warranty**

Plaintiff alleges that public statements by Merck concerning the safety of Vioxx use constituted an express warranty, and that the actual safety of Vioxx use was inconsistent with Merck's statements and thus Merck breached its express warranty.

To prove his claim for breach of express warranty, plaintiff must show that:

> (1) Merck made an affirmation of fact or promise related to the safety of Vioxx use that was not consistent with the FDA-approved Vioxx label; and
> (2) plaintiff's prescribing physician relied on the false affirmation or promise in deciding to prescribe Vioxx to plaintiff; and
> (3) Merck's affirmation or promise falsely or inaccurately described the safety of Vioxx use.

If you find that Mr. Smith's physician's decision to prescribe Vioxx was not based on false affirmations or promises made by Merck, there was no express warranty between the parties and you must find for Merck.

To find for plaintiff on this cause of action, you must find that there was a risk of suffering a heart attack as a result of short term use of Vioxx at the 25 mg dose and that Merck's affirmations or promises contradicted that fact.

Plaintiff must also establish that he obtained Vioxx directly from Merck, and not though an intermediary such as a doctor or pharmacy.  Because plaintiff did not purchase Vioxx directly from Merck, I direct you to find for Merck on this claim.

Authority:  Ky. Rev. Stat. §§ 355.2-313(2), 355.2-318; *Snawder*, 749 F. Supp. at 1481 ("Kentucky still requires privity where liability is predicated, not on ordinary negligence or strict liability, but on warranty."); *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290-91 (6th Cir. 1982) (applying Kentucky law) (trier of fact must first determine "whether the circumstances necessary to create an express warranty are present in a given case"); *Van Deren Hardware Co. v. John H. Preston & Son*, 5 S.W.2d 1052 (Ky. App. 1928) (plaintiff's breach of warranty claim was "defective . . . in that there is no allegation that [plaintiffs] in purchasing [the product] relied upon the warranty").

827236v.1

INSTRUCTION NO. 15

**Breach of Implied Warranty**

A claim for breach of implied warranty is a contractual remedy where the product sold is unfit for its purported ordinary use.

Implied warranty claims are not available in product liability actions involving unavoidably unsafe products. The applicable law explicitly recognizes that prescription drugs fall into the category of "unavoidably unsafe" products. Accordingly, manufacturers of prescription drugs are not subject to liability for breach of implied warranty.

Therefore, I direct you to find for Merck on this claim.

Authority: *Falcon Coal Co. v. Clark Equipment Co.*, 802 S.W.2d 947, 949 (Ky. App. 1990) (defining implied warranty); KY. REV. STAT. § 355.2-314 (identifying elements of implied warranty claim); *Larkin*, 153 S.W.3d at 761 (prescription drugs are unavoidably unsafe products); *McMichael*, 532 S.W.2d at 9.

827236v.1

INSTRUCTION NO. 16

**Merck's Voluntary Withdrawal of Vioxx**

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004.  You may not consider that fact as evidence that Vioxx was defective or defectively designed or that Merck was negligent or acted culpably.  You also may not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause injuries such as those alleged by Mr. Smith.  You may, however, consider this withdrawal for other purposes, such as proving ownership, control, or feasibility of precautionary measures.

Authority:  5-9 *Modern Federal Jury Instructions-Civil*, P 2.10 (as modified); FED. R. EVID. 105; *Chase v. Gen. Motors Corp.*, 856 F.2d 17, 21 (4th Cir. 1988); *In re Propulsid Prods. Liability Litig.*, No. MDL 1355, 2003 WL 1090235, at *2-3 (E.D. La. Mar. 11, 2003); *Villari v. Terminex Int'l, Inc.*, 692 F. Supp. 568, 575-76 (E.D. Pa. 1988); *Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 624 (D.N.J. 1982).

827236v.1

INSTRUCTION NO. 17

**Consider Damages Only if Necessary**

If Mr. Smith has proven one or more of his claims against Merck, you must determine the damages to which he is entitled.  You should not interpret the fact that I give you instructions about plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.  It is your task first to decide whether Merck is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that Merck is liable and that plaintiff is entitled to recover money from Merck.


Authority:  *Pattern Jury Instructions: Fifth Circuit, Civil Cases*, § 15.1 (as modified).

23

INSTRUCTION NO. 18

**Damages**

If your verdict is for Merck, you will not consider the matter of damages.  But if you find for plaintiff on any of his claims, you should determine and write on the verdict form, in dollars, the total amount of loss which the preponderance of the evidence shows he sustained as a result of the incident complained of, including any such damage as plaintiff is reasonably certain to incur in the future.

You may award compensatory damages only for injuries that the plaintiff proves were actually caused by Merck's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future. The existence, causation, or amount of damages cannot be left to conjecture, guesswork or speculation.

You must not award compensatory damages more than once for the same injury. For example, if the plaintiff prevails on two claims and establishes a dollar amount for his injuries, you must not award him any additional compensatory damages on each claim. The plaintiff is only entitled to be made whole once, and may not recover more than he has lost. Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of his injuries.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

A. Damages Accrued

 If you find for the plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

827236v.1

B. Calculation of Future Damages

If you find that the plaintiff is reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.

C.  Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that plaintiff will not actually suffer until some future date. If you should find that the plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

    1.  You should reduce any award by the amount of the expenses that the plaintiff would have incurred in making those earnings.

    2.  If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiff can earn on that amount in the future.

D.  Damages for Breach of Warranty

    If you find for plaintiff on his breach of warranty claim, the proper measure of damages is the difference between the value of the goods accepted and the value they would have had if they had been as warranted.

Again, the mere fact that I have given you instructions on the law of damages does not in any way suggest that I believe that any damages are due in this case.  Whether or not the plaintiff is entitled to recover and whether or not any damages are due is for you to decide.

Authority:  5-5 *Modern Federal Jury Instructions-Civil*, P 15.2-15.7; 15.14 (as modified); *Brundige v. Sherwin-Williams Co.*, 551 S.W.2d 268, 270 (Ky. App. 1977) ("damages may not be determined by mere speculation or guess"); *Dept. of Educ. v. Gravitt*, 673 S.W.2d 428, 432 (Ky. App. 1984).

827236v.1

INSTRUCTION NO. 19

**Concluding Instructions**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong.  Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

[Add Instructions Regarding Verdict Form]

827236v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Jury Instructions Proposed By Merck has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 1st day of September, 2006.

<div style="margin-left: 50%;">

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

</div>

827236v.1