UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 2:05-CV-04379 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| ROBERT G. SMITH, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING OPINION TESTIMONY BY PLAINTIFF'S EXPERTS THAT <u>VIOXX® ACCELERATES ATHEROSCLEROSIS OR CAUSES PLAQUE RUPTURE</u>**

**(EXPERT CHALLENGE NO. 10)**

Plaintiff's causation expert – Dr. Sander – has said that he will *not* testify that Vioxx accelerates atherosclerosis, that this hypothesis has not been scientifically proven, and that he has no evidence to support an opinion that Vioxx accelerated Mr. Smith's atherosclerosis. (Deposition of Dr. Gary E. Sander ("Sander Dep.") at 238:18-240:18, attached hereto as Ex. A.) Although plaintiff originally designated another expert, Dr. Zipes, who opined that Vioxx

826122v.1

accelerates atherosclerosis, plaintiff has since withdrawn his designation of Dr. Zipes.[1] Plaintiff's causation theory apparently will be that Mr. Smith's Vioxx use increased his blood pressure, which, in turn, resulted in a plaque rupture. (*See* Expert Report of Gary E. Sander, M.D. ("Sander Rpt.") at 5, 10-11, attached hereto as Ex. B.)[2] Because none of plaintiff's proffered expert witnesses has opined that Vioxx directly accelerates atherosclerosis or causes plaque rupture, Merck's motion to exclude any such testimony should be granted.

Moreover, plaintiff's opposition fails to overcome the central challenge of Merck's motion – that there is no scientifically reliable evidence that Vioxx accelerates atherosclerosis or causes plaque rupture. Plaintiff argues that his theories are supported by Merck's alleged admissions that Vioxx causes atherosclerosis and plaque rupture, as well as by human clinical trials, animal studies, and the purported pathophysiology of Vioxx. Plaintiff is wrong in each instance, and he should be precluded from presenting his unsupported theories to the jury.

**I.   NONE OF PLAINTIFF'S EXPERTS OPINES THAT VIOXX ACCELERATES ATHEROSCLEROSIS OR CAUSES PLAQUE RUPTURE.**

Dr. Sander testifies that "Vioxx can increase blood pressure" and, *by increasing blood pressure*, Vioxx increases the risk of plaque rupture and resulting cardiovascular events. (Sander Rpt. at 5.) He also testifies that Vioxx increased Mr. Smith's blood pressure, that this increase caused Mr. Smith to experience a plaque rupture, and that it ultimately led to his heart attack. (Sander Rpt. at 10-11.) He does not testify that Vioxx directly accelerates atherosclerosis or

---

[1] Plaintiff's opposition is filled with argument about what Dr. Zipes will say or has said (*see* Pl.'s Opp. at 6, 11, 12-13, 20-26), presumably because it was filed before plaintiff withdrew his designation of Dr. Zipes. In any event, the Court should disregard arguments that plaintiff premises on Dr. Zipes' purported opinions, as Dr. Zipes will not testify in this case.

[2] As explained in the Merck's Initial Motion, Dr. Sander's blood pressure opinions are scientifically unreliable and they also are irrelevant to plaintiff's claims against Merck given that: (1) Mr. Smith was hypertensive before he ever took Vioxx; and (2) *Merck explicitly warned*
*(footnote continued next page)*

causes plaque rupture, or that it did so in Mr. Smith.  In fact, Dr. Sander acknowledges the lack of scientific support for an opinion that Vioxx accelerates atherosclerosis, and admits that he has no evidence that Vioxx accelerated Mr. Smith's atherosclerosis; he testified:

> Q: We talked earlier [about the statement in your report that "at least in certain animal models, interruption of PGI-2 accelerates the development of progression of atherosclerosis"] and you agreed that this is not scientifically proven, but is a hypothesis at this time.
>
> . . .
>
> A: I think the actual interactions in the formation of atherosclerosis is still experimental as opposed to COX-2 in humans.  I think there is some evidence that supports it.
>
> I think there are some people who still argue that they are not convinced and I don't intend to go there.
>
> Q: And you don't intend in this case to say that Mr. Smith had a progression of his atherosclerosis or an acceleration of his atherosclerosis due to Vioxx?
>
> A: No.
>
> Q: That is correct?
>
> A: That is correct.  I do not plan to testify that he would have had accelerated atherosclerosis from Vioxx.
>
> . . .
>
> Q: But you are not going to say his atherosclerotic process --
>
> A: In general, I have no evidence to support that.

(Sander Dep. at 238:18-240:18.)[3]

Notwithstanding the clear admissions of his causation expert, plaintiff still asks the Court

---

*that Vioxx could increase blood pressure.*

[3] Indeed, Dr. Sander's lack of scientific certainty on this point is demonstrated by the fact that he acknowledged that the converse may well be true – that it is a sound scientific hypothesis that Vioxx might actually slow the progression of atherosclerosis and help stabilize plaque in animal

*(footnote continued next page)*

to deny Merck's motion and argues that "[t]here are sound and scientifically reliable studies for correctly concluding that Vioxx causes accelerated atherogenesis." (*See* Pl.'s Opp. at 2, 30.) Although plaintiff on the one hand acknowledges, in his opposition, that his experts will not opine that Vioxx directly accelerates atherosclerosis or causes plaque rupture (*see* Pl.'s Opp. at 4-5), he on the other hand says his experts will testify that the purported imbalance Vioxx creates by reducing prostacyclin production is the mechanistic explanation for how Vioxx accelerates atherosclerosis and causes plaque rupture. (Pl.'s Opp. at 2-3.)[4] Because none of plaintiff's experts has offered such an opinion – Dr. Sander's opinions all are premised on Vioxx increasing blood pressure[5] – plaintiff's request must be denied, and Merck's motion granted.

## II. MERCK HAS NOT ACKNOWLEDGED OR ADMITTED THAT VIOXX ACCELERATES ATHEROSCLEROSIS OR CAUSES PLAQUE RUPTURE.

Plaintiff's lead argument is that Vioxx accelerates atherosclerosis and causes plaque rupture because Merck purportedly has admitted as much. Plaintiff quotes the APPROVe study, Protocol 078, an animal study that was financed in part by a Merck grant, and a series of Merck e-mails and committee meeting minutes that plaintiff alleges constitute "admissions by Merck." (Pl.'s Opp. at 7-19.) This argument is baseless and plaintiff mischaracterizes the studies and documents upon which he relies.

---

models. (Sander Dep. at 268:22-269:14.)

[4] Plaintiff argues – incorrectly – that Merck does not challenge this proposition. (*See* Pl.'s Opp. at 2, n. 2.) Merck simply said that its Motion is not directed to the "FitzGerald Hypothesis" – *i.e.*, that Vioxx suppresses the production of prostacyclin relative to thromboxane and leads to a pro-thrombotic state. (Merck's Mot. at 1-2.)

[5] Dr. Sander testifies that the purported imbalance Vioxx creates by reducing prostacyclin production is the mechanistic explanation for how Vioxx increases blood pressure, and that Vioxx-induced increased blood pressure increases CV risk by, among other things, causing plaque rupture. (Sander Rpt. at 5; Sander Dep. at 240:19 - 241:21.)

4

### A. APPROVe Does Not Establish, Or Constitute A Merck Admission, That Vioxx Accelerates Atherosclerosis Or Causes Plaque Rupture.

Plaintiff relies on APPROVe for the proposition that "Merck unequivocally adopted the biologic mechanism of action which Merck euphemistically refers to as 'the FitzGerald hypothesis.'" (Pl.'s Opp. at 10.) The APPROVe publication was not written by Merck, however; it was written by distinguished physicians in the community.[6] To suggest that Merck "adopted" the FitzGerald hypothesis based on a paragraph that appears in the APPROVe article, therefore, is inappropriate. Even the statement that plaintiff quotes in support of his argument that "Merck unequivocally adopted the . . . FitzGerald Hypothesis" cannot, by any stretch, be argued to be unequivocal:

> COX-2 inhibitors *may* increase cardiovascular risk by shifting the functional balance of these vasoactive eicosanoids toward the promotion of thrombosis or atherogenesis. COX-2 inhibition combined with thromboxane-receptor antagonism *may* also lead to the destabilization of atheromatous plaque.

(Pl.'s Opp. at 10 (citing *Bresalier* at 1098-99).)

Moreover, the APPROVe study does not even conclude that Vioxx accelerates atherosclerosis or causes plaque rupture. The APPROVe data show that, in patients with a history of colorectal adenomas (*i.e.*, colon polyps), the continuous use of Vioxx over an average duration of almost two and a half years posed an increased CV risk.[7] That is *all* the data show. By contrast, the data do *not* show an association between Vioxx and accelerated atherosclerosis or plaque rupture. It is insufficient merely to *assume* – as plaintiff does – that the increased risk seen in APPROVe supports his theories. The APPROVe study was designed only to determine if Vioxx was associated with an increased cardiovascular risk. It was *not* designed to ascertain

---

[6] Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial* (2005), 352 NEW. ENG. J. MED. 1092 (hereinafter "Bresalier").

5

the mechanism through which cardiovascular risk might be increased. Because it would be impossible to conclude that Vioxx accelerates atherosclerosis without measuring the degree of atherosclerosis in patients before and after Vioxx use, and because this was not done in APPROVe, it is improper to rely on the study data to opine that Vioxx accelerates atherosclerosis.

In addition, the APPROVe results offer even less support for plaintiff's theory because available clinical trial data suggest that colon polyp patients – *i.e.*, the patient population at issue in APPROVe – may have a unique cardiovascular risk profile when given NSAIDs. For example, it is widely recognized that aspirin can have a cardio-protective effect. *See*, *e.g.*, U.S. Preventive Services Task Force, *Aspirin for the Primary Prevention of Cardiovascular Events: Recommendation and Rationale*, ANN INTERN MED. 2002; 136:157-160, at 157. Yet aspirin appears to *increase* the risk of cardiovascular adverse events in patients with a history of colon polyps. (*See* Expert Report of KyungMann Kim, Ph.D. at 25 ("Further, it is interesting to note that in Baron et al. (2003) in the same patient population as in the APPROVe . . . stud[y], aspirin, instead of showing cardioprotection, showed an increase in adverse thrombotic cardiovascular events in terms of MI, stroke and coronary revascularization."), attached hereto as Ex. C.)

The Vioxx clinical trial data appear to confirm that colon polyp patients may be at an increased risk of cardiovascular adverse events during NSAID therapy vis-à-vis other patient populations. Indeed, whereas APPROVe found an increased risk among colon polyp patients, other clinical trials involving patients who had or were at risk of developing Alzheimer's disease found *no* increased cardiovascular risk. Reines SA et al., *Rofecoxib, No effect on Alzheimer's disease in a 1-year, randomized, blinded, controlled study*, NEUROLOGY 2004; 62:66-71, at 69,

---

[7] Bresalier, 1096 & Figure 2 .

71; Thal et al., *A Randomized, Double Blind, Study of Rofecoxib in Patients with Mild Cognitive Impairment*, NERUOPSYCHOPHARMACOLOGY (2005), 1-12, at 8. Similarly inconsistent findings between colon polyp patients and Alzheimer's patients are seen in the clinical trial data for Celebrex, another COX-2 inhibitor. *Compare* Solomon et al., *Cardiovascular Risk Associated with Celecoxib in a Clinical Trial for Colorectal Adenoma Prevention* (hereinafter the "APC" study), NEW. ENG. J. MED. (2005), 352(11):1071-1080, 1017 (finding increased risk in colon polyp patients), *with* Pfizer Inc., *A Double-Blind, Randomized Placebo-Controlled, Comparative Study of Celecoxib (SC-58635) For The Inhibition of Progression of Alzheimer's Disease* (Protocol IQ5-97-02-001) at 6, *available at* www.clinicalstudyresults.org/documents/company-study_76_0.pdf#search='Double%20Randomized%20Placebo%20Study%20Celecoxib%20Inhibition%20Progression%20Alzheimer%27s%20Disease (hereinafter "ADAPT") (finding no increased risk in Alzheimer's patients).[8] Thus, the increased incidence of cardiac events seen in APPROVe is more likely a function of the study's patient population than it is the result of the atherosclerotic acceleration or plaque rupture plaintiff claims.

### B. The APPROVe Off-Drug Data Do Not Establish, Or Constitute A Merck Admission, That Vioxx Accelerates Atherosclerosis Or Causes Plaque Rupture.

Plaintiff also relies on the APPROVe off-drug data, which showed more CV events in patients who had taken Vioxx (as compared to those who had taken placebo) during the first six months after use was discontinued. (Pl.'s Opp. at 12-13.) Plaintiff argues that these data prove that "Vioxx induced-changes that occur in the coronary arteries while patients are taking the drug

---

[8] The results of ADAPT were reported in a recent article by Caldwell. Caldwell et al., *Risk of cardiovascular events and celecoxib: a systematic review and meta-analysis*, J. R. SOC. MED. 2006; 99:132-140, Table 2 & n.15. A third study involving Celebrex initially found no increased cardiovascular risk in colon polyp patients, but the investigators have since announced that the study indeed shows an increased cardiovascular risk in the same patient population. *See*
(footnote continued next page)

continue to exert clinical effects after the drug has been stopped" and concludes that "if Vioxx were not causing plaque buildup, the thrombotic events would have dissipated in a few days." (*See id.*)  Plaintiff relies on opinions from Dr. Zipes as support for his argument and, again, because Dr. Zipes will not testify in this case, his purported opinions should be disregarded. Moreover, Dr. Zipes' trial testimony in *Barnett* demonstrates the fatal flaws in his theory; he testified:

> Q: Doesn't the APPROVe data, when you look at -- not just six months, when you look at the correct endpoints, doesn't the APPROVe follow-up data prove that Vioxx does not cause plaque buildup?
>
> A: The data that I saw showed a relative risk exceeding 3 for the APTC endpoint in the first six months.
>
> The other endpoints, indeed, were not significant and not consistent with that, and statistical significance past six months was no longer present.
>
> . . .
>
> Q: In any event, the cardiac event data, the category that Mr. Robinson focused on in opening, for every single time period, there was no difference between Vioxx and placebo; right?
>
> A: Correct.
>
> . . .
>
> Q: In other words, you have no explanation whatsoever for the fact that even with APTC endpoints, that your theory is contradicted by the data for months 7 through 12, for months 12 through 18, and for all eight months after 18.  If your theory is right, people should be having more of these APTC endpoints for the rest of their life; right?
>
> A: As they did in 078.
>
> Q: But they sure didn't in the APPROVe follow-up data that you chose to talk about on direct examination; correct?
>
> A: That is correct.

---

http://www.pfizer.com/pfizer/are/investors_releases/2006pr/mn_2006_0403.jsp.

8

(Aug. 10, 2006 *Barnett* Tr. (Zipes Test.) at 1849:5-13, 1865:14-18, 1867:19-1868:3, attached hereto as Ex. D.)

In other words, plaintiff's theory that the APPROVe follow-up data establishes that Vioxx accelerates atherosclerosis and causes plaque rupture is contradicted by the fact that the alleged increased CV risk in the Vioxx group disappeared after six months. Because there is "too great an analytical gap between the data and the opinion proffered," testimony that the APPROVe data support the conclusion that Vioxx accelerates atherosclerosis or causes plaque rupture is irrelevant, unreliable and should not be permitted. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

    **C.  Protocol 078 Does Not Establish, Or Constitute A Merck Admission, That Vioxx Accelerates Atherosclerosis Or Causes Plaque Rupture.**

Plaintiff also attempts to rely on Protocol 078 for the proposition that Merck has admitted that Vioxx accelerates atherosclerosis and causes plaque rupture. (*See* Pl.'s Opp. at 11.) Plaintiff makes a series of assumptions based on the data from Protocol 78, which he claims "strengthens the interpretation of these events as being causes [sic] by persistent damage by Vioxx." (*Id.*) This inference is unfounded. The data that plaintiff cites is "all-cause mortality", which represents *all deaths* that occurred in the study and not just cardiovascular-related deaths. Moreover, like APPROVe, Protocol 078 says nothing about the mechanism through which cardiovascular risk might be increased. And like APPROVe, Protocol 078 did not measure the degree of atherosclerosis in patients before and after Vioxx use and, therefore, cannot support a conclusion that Vioxx accelerates atherosclerosis. Plainly the Protocol 078 mortality is irrelevant to plaintiff's claims that Vioxx accelerates atherosclerosis and causes plaque rupture.

> **D.   The Rott Study Does Not Establish, Or Constitute A Merck Admission, That Vioxx Accelerates Atherosclerosis.**

Plaintiff selectively quotes from the Rott study,[9] and argues that the study constitutes a Merck admission that Vioxx accelerates atherosclerosis, simply because it "was financed in part by a grant from Merck." It does not. First, it absurd to suggest that the conclusions of any study for which the authors received any funding from Merck are binding admissions by Merck. Second, the Rott study, which did not involve Vioxx or humans, does not establish that Vioxx accelerates atherosclerosis. Indeed, the study's authors acknowledged the limitations of animal studies, and conceded that any association between COX-2 inhibitors and accelerated atherosclerosis remains hypothetical:

> Because of the importance of the implications of the conclusions deriving from our investigation, and because of the intrinsic limitations of an animal model outlined above, *the conclusions must be regarded as tentative and hypothesis generating.*

(Rott at MRK-AEG0053082 (emphasis added).) Dr. Epstein, one of the authors of the Rott study, reconfirmed these limitations during his testimony (via deposition) at the *Barnett* trial; he testified:

> Q:   So how long would you estimate three weeks of treatment in a mouse translates into treatment in humans?
>
> A:   I wouldn't -- I wouldn't -- there's no way I could make that estimation.
>
> Q:   Would it be improper to say that just because you see an effect on lesion size with MF-tricyclic after three weeks of treatment that that reflects that even in humans you would expect to see an increase in atherosclerosis in a short period of time if you use a Cox-2 inhibitor?

---

[9] Rott D, Zhu J, Burnett MS, et al., *Effects of MF-tricyclic, a selective cyclooxygenase-2 inhibitor, on atherosclerosis progression and susceptibility to cytomegalovirus replication in apolipoprotein-E knockout mice*, J AM COLL CARDIOL., 2003 May 21;41(10):1818, attached as Ex. H to Pl.'s Opp. (hereinafter "Rott").

> A:   I don't think that the results in this model can be so equivalently transferred to patients. It raises that as a question, but certainly our study doesn't definitively answer that.

(Aug. 5, 2006 *Barnett* Tr. (Dr. Epstein Test.) at 1220:22- 1221:9, attached hereto as Ex. E); *see also id.* at 1185:18-24, 1191:20-1192:1, 1196:12-14.) Dr. Epstein also acknowledged that it would be improper to conclude, from the results of the Rott study, that Vioxx accelerates atherosclerosis or causes plaque rupture. (*Id.* at 1235:24-1236:9.)

### E. None Of The Internal Documents Cited By Plaintiff Is A Merck Admission That Vioxx Accelerates Atherosclerosis Or Causes Plaque Rupture.

Plaintiff quotes extensively from the minutes from a Merck Board of Scientific Advisors meeting in 1998 (prior to Vioxx going on the market). (Pl.'s Opp. at 8-9.) Those meeting minutes do not show that Merck acknowledged that Vioxx accelerates atherosclerosis or causes plaque rupture. Rather, the minutes reflect that the Board considered "potential . . . benefits [and] adverse consequences of selective COX-2 inhibition on coronary heart disease" and note the Board's conclusion that "it is appropriate to ask whether COX-2 expression in monocyte-macrophage-foam cell development regulates the progression of the atherosclerosis that accompanies dyslipidemias, *either positively or negatively*." (Pl.'s Opp., Ex. A at MRK-AE10002736-38 (emphasis added); *see also* Pl.'s Opp. at 8-9.) In other words, far from concluding that Vioxx accelerates atherosclerosis, the Board suggested consideration of whether COX-2s could accelerate *or slow* the progression of atherosclerosis.

Plaintiff also argues that, because Merck scientists were "very careful in dealing with patients who had atherosclerosis," Merck believed Vioxx accelerated atherosclerosis. (*See* Pl.'s Opp. at 15.) But the e-mails and meeting minutes quoted by plaintiff do not support this conclusion. (*See id.* at 15-19.) At best, these documents show only that Merck acknowledged that a study on high risk patients would be improper. They do not show that Merck thought that

11

Vioxx would cause atherosclerosis or plaque rupture but, rather, that Merck was very careful to not expose high risk patients to any unnecessary risks.

Moreover, regardless of what Merck thought, plaintiff has the burden of presenting scientifically reliable evidence of causation. (*See* Merck's Mot. at 3-5.) Plaintiff cannot meet that burden – as he has attempted to do here – by relying on Merck documents that do nothing more that acknowledge the existence of hypotheses.

### III. THERE IS NO SCIENTIFIC SUPPORT FOR AN OPINION THAT VIOXX ACCELERATES ATHEROSCLEROSIS OR CAUSES PLAQUE RUPTURE.

#### A. Animal Studies Do Not Establish That Vioxx Accelerates Atherosclerosis Or Causes Plaque Rupture.

As purported support for his argument that Vioxx causes atherosclerosis, plaintiff points to animal studies relied on by Dr. Zipes in forming his opinions and to a summary of animal studies by Dr. Garrett FitzGerald. (*See* Pl.'s Opp. at 20-26.) Again, because Dr. Zipes will not testify in this case, the studies he relied on in forming his opinions are irrelevant. Moreover, the Fifth Circuit has made clear that animal studies have "very limited usefulness . . . when confronted with questions of toxicity." *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989). As Merck made clear in its motion, these studies are unreliable and therefore cannot support an expert opinion that Vioxx causes atherosclerosis or plaque rupture.[10] Plaintiff has not argued (nor could he argue) otherwise.

---

[10] Plaintiff attempts to bolster the credibility of the animal studies he cites by arguing that Merck also relies on animal studies. (Pl.'s Opp. at 26-27.) But Merck does not rely on animal studies to prove that Vioxx slows the progression of atherosclerosis, but, rather, to show that plaintiff's evidence of Vioxx's effect (if any) on atherosclerosis is inconclusive and unreliable. By pointing to animal studies concluding that Vioxx may have slowed atherosclerosis, Merck demonstrates that it is not generally accepted in the scientific community that Vioxx can or does cause atherosclerosis. Merck is not required to prove that Vioxx cannot cause atherosclerosis or plaque rupture in order to show that plaintiff's evidence is unreliable and therefore should be excluded.

The studies cited by plaintiff (Pl.'s Opp. at 13-15, 20-24) do not support plaintiff's contentions that Vioxx accelerates atherosclerosis and causes plaque rupture. The shortcomings of the Egan and Rudic articles were discussed at length in Merck's motion and need not be repeated here. (*See* Merck's Mot. at 8-9.)

The Kobayashi study[11] suffers from the same fatal defects as the Rudic and Egan studies – relevance. It involved mice genetically engineered to lack prostacyclin receptors and prone to forming atherosclerosis. The results of a mouse study not even using a COX-2 inhibitor simply have no bearing on the question at issue in this case – did Vioxx cause Mr. Smith's alleged injury? It is also worth noting that Kobayashi acknowledged the conflicting and inconclusive results found in the existing medical literature. For example, the article noted that some of the literature indicates that COX-2 inhibitors may actually suppress the development of atherosclerosis. (Kobayashi at 785 (noting that the Burleigh study "detected a small but *significant suppression in the development of atherosclerosis*.") (emphasis added).) It also explained that:

> Experiments examining the effects of COX-2 inhibitors in atherogenesis have yielded conflicting results . . . .[P]harmacological approaches using various drugs *have produced variable and inconclusive results and have failed to provide a cohesive picture* on the contribution of prostaoidds, including PGI2 and TXA2, to atherogenesis.

(*Id.* at 785-86 (emphasis added).)

As Merck made clear in its Motion, these animal studies are irrelevant and insufficient to support an expert opinion that Vioxx causes or accelerates atherosclerosis, or that Vioxx causes plaque rupture, especially in light of the conflicting evidence.

---

[11] Kobayashi, Takuya, et al., *Roles of Thromboxane $A_2$ and prostacyclin in the development of atherosclerosis in apo-E-deficient mice*, J. CLIN. INVEST., 2004: 114:784-94 (hereinafter "Kobayashi").

## B. The FitzGerald Hypothesis Does Not Establish That Vioxx Accelerates Atherosclerosis Or Causes Plaque Rupture.

With no reliable human studies to rely on, plaintiff is forced to base his theory on the "FitzGerald Hypothesis." But even Dr. FitzGerald has discounted plaintiff's theory of how Vioxx accelerates atherosclerosis. Dr. FitzGerald himself has authored an article, which plaintiff relies on, rejecting the FitzGerald imbalance hypothesis advanced by plaintiffs in Vioxx litigation – writing that "the concept of simply tipping a 'balance' between COX-2-derived [prostacyclin] and COX-1-derived platelet thromboxane is misplaced." *See* Grosser, Fries, and FitzGerald, *Biological basis for the cardiovascular consequences of COX-2 inhibition: therapeutic challenges and opportunities*, The Journal of Clinical Investigation, Vol. 116, No. 1, January 2006 ("FitzGerald article"), at 4. In that article, Dr. FitzGerald discusses other "biologically plausible" mechanisms that, he contends, might be influenced by COX-2 inhibition and that might, in turn, play a role in causing adverse cardiac events. Among these is the atherogenic mechanism that plaintiff speculates about – that is, the blood pressure mechanism possibly influenced by COX-2 inhibition's potential effects on vasodilation, and vascular smooth muscle proliferation. Dr. FitzGerald, however, makes it abundantly clear that such "alternative explanations" are purely speculative and conjectural. He writes:

> [O]ne might *speculate* how the disparate effects of [protacyclin] suppression on atherogenesis, blood pressure, and the remodeling response might converge, over time, to result in transformation of cardiovascular risk in patients initially at low risk when exposed to chronic COX-2 inhibition." (FitzGerald article, at 6) (emphasis added).

> "A variety of alternative explanations for the cardiovascular effects of COX-2 inhibitors, *again based largely on conjecture*, in vitro data, and/or drug concentrations unlikely ever to be attained therapeutically have begun to emerge." (*Id.* at 13) (emphasis added).

14

826122v.1

Plaintiff's purported reliance on the FitzGerald hypothesis is misplaced as it does not, by any stretch of the imagination, provide scientifically reliable support for the proposition that Vioxx accelerates atherosclerosis or causes plaque rupture.[12]

## IV.   CONCLUSION.

For all of these reasons and the reasons articulated in Merck's prior briefing on this subject, the Court should preclude any testimony from plaintiff's expert witnesses that Vioxx can or did accelerate the progression of atherosclerosis or cause plaque rupture.

Dated:  August 28, 2006

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

---

[12] Because this Motion is not directed to the FitzGerald hypothesis itself, plaintiff's repeated argument that the Court previously has allowed expert testimony on that subject is irrelevant.  At issue here is whether there is scientifically reliable support for plaintiff's arguments that Vioxx accelerates atherosclerosis and causes plaque rupture, and that the FitzGerald hypothesis explains how it has such effects.  There is no scientifically reliable support.

15

Brian Currey
Catalina J. Vergara
Ashley A. Harrington
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
Robert A. Van Kirk
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029


Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck for Order Excluding Opinion Testimony That Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of August, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

826122v.1