# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX PRODUCT LIABILITY LITIGATION | : | MDL NO. 1657 |
| | : | |
| | : | SECTION L |
| | : | |
| This document relates to: | : | JUDGE FALLON |
| | : | |
| Case No.:  2:05 CV 5753 | : | |
| | : | |
| EDWARD ADCOCK, Individually and As EXECUTOR of the ESTATE OF VIRGINIA ADCOCK, Deceased, et al. | : | **FIRST AMENDED COMPLAINT** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MERCK & COMPANY, INC. | : | |
| | : | |
| Defendants | : | |

## PARTIES AND JURISDICTION

1.     Plaintiffs, pursuant to Federal Civil Rule of Procedure 20(a) allege jointly and severally the following causes of action against Merck & Company, Inc ("Merck").

2.     This action and common claims arise out the design, manufacture, sale, marketing, and distribution of the prescription COX II inhibitor Vioxx ®.

3.     Common issues of law and fact will arise during the course of this action with respect to all Plaintiffs' claims.

4.     Plaintiffs are each residents and citizens of, and suffered the alleged injuries while residing in, the Commonwealth of Kentucky.

5.     Plaintiff Edward Adcock, brings claims individually and as Executor of the Estate of Virginia Adcock, deceased, his former spouse.  Virginia Adcock, deceased,

was born on September 18, 1948. From April, 2001 until December, 2002, Plaintiff Adcock took 25 mg of Vioxx daily as prescribed by her family physician. During that time frame, Plaintiff Adcock's physicians knew her past medical history included the cardiovascular risk factors of smoking, diabetes and cardio vascular disease. In December 2002, Plaintiff Adcock was hospitalized for a myocardial infarction and died several days later after suffering a subsequent massive and fatal myocardial infarction.

6.      Plaintiff Edward Adcock, as Executor of the Estate of Virginia Adcock, deceased, claims compensatory and punitive damages for the injury and harm suffered by Virginia Adcock, decedent, which ultimately resulted Virginia's death. Plaintiff's damages claims include but not are not limited to the conscious pain and suffering endured by decedent prior to his death, as well as his loss of enjoyment of life and loss of earnings.  Moreover, as a direct and proximate result of Virginia's use of Vioxx, the survivors of the deceased, including her spouse and children and other family members, have suffered and continue to suffer pecuniary injuries, mental anguish, emotional distress, loss of support, services, love and affection, society, companionship, consortium, care, and assistance, due to the physical injury and ultimate death of their spouse and father. Plaintiff, Edward Adcock, as Executor of the Estate, has incurred expenses, including but not limited to medical expenses, and funeral and burial expenses on behalf of Virginia Adcock.

7.      Plaintiff Steven Book, born May 20, 1937, was prescribed Vioxx following a right knee replacement in 1999. From 1999 until June, 2002, Plaintiff Book consumed 25 mg of Vioxx a day. During the time of usage, Plaintiff Book's physicians were aware he had a past history including the cardiovascular risk factor hypertension. On May 2,

2002, Plaintiff Book suffered an ischemic stroke resulting in permanent limitations and impairments.  As a direct and proximate result of the stroke, he has incurred medical expenses, lost wages, lost the ability to perform certain activities, loss of enjoyment of life, and lost time. Furthermore, Plaintiff Book has a decreased life expectancy and an increase risk for future cardiovascular attack, additional disability and death.   He has treated medically for these injuries and will continue to treat into the future. Plaintiff Book has and will continue to incur medical expense related to such treatment.  He has suffered and continues to suffer physical and mental limitations and conscious pain and suffering and emotional distress arising from the impairment.

8.      Plaintiff Janice Carpenter brings claims individually and as Executrix of the Estate of her former spouse Charles Carpenter, deceased. Mr. Carpenter was born October 16, 1928.  Following daily and chronic usage of Vioxx, Mr. Carpenter died on June 6, 2003, due an ischemic stroke.  Plaintiff Carpenter, as Executrix of the Estate of Charles Carpenter, deceased, claims compensatory and punitive damages for the injury and harm ultimately resulting in her husband's death, including but not limited to conscious pain and suffering endured by her husband prior to his death, loss of enjoyment of life and loss of earnings. As a direct and proximate result of his use of Vioxx, the survivors of the deceased, including his spouse and children, and other family members, have suffered and continue to suffer pecuniary injuries, including mental anguish, emotional distress, loss of support, services, love and affection, society, companionship, consortium, care, and assistance, due to the physical injury and ultimate death of their husband and father. Plaintiff Carpenter, as Executrix of the

Estate of Charles Carpenter, deceased, has incurred expenses, including but not limited to medical expenses, and funeral and burial expenses.

9.      Plaintiff Timothy Easterling, born July 10, 1961, was prescribed Vioxx by his family care physician. From January, 2001 through March, 2001, Plaintiff Easterling took 25 mg of Vioxx daily. During this time frame, Plaintiff Easterling's medical providers knew his past medical history included the cardiovascular risk factors of smoking and hypertension. On March 28, 2001, Plaintiff Easterling suffered two myocardial infarctions.  As a direct and proximate result of the myocardial infarction, he incurred medical expenses, lost wages, loss of the ability to perform ordinary activities, loss of the enjoyment of life, and loss of time. Furthermore, Plaintiff Easterling has a decreased life expectancy and an increased risk for future cardiovascular attack, additional disability, and death.   He has treated and will continue to treat medically for these injuries, and he has and will continue to incur medical expenses for the reasonable and necessary care. Plaintiff Easterling has suffered permanent injury to his heart muscle and has and will continue to suffer physical and mental limitations, conscious pain and suffering, and emotional distress arising from the impairment.

10.      Plaintiff Ronald Haggard, born October 27, 1939, was prescribed Vioxx by his family physician for gout and osteoarthritis. From October 2001 until September, 2004, he took 25 and 50 mg tablets of Vioxx daily.   In June, 2002, he suffered an ischemic stroke resulting in right sided parasthesis.  As a direct a proximate result of the stroke, Plaintiff Haggard has incurred medical expenses, lost wages, lost the ability to perform certain activities, loss of enjoyment of life, and loss of time. Furthermore, he has a decreased life expectancy and an increase risk for future cardiovascular attacks,

additional disability, and death.   Plaintiff Haggard has treated medically and will continue to treat into the future, and he has and will continue to incur medical expenses for the reasonable and necessary medical care. He has suffered and continues to suffer physical and mental limitations, conscious pain and suffering, and emotional distress arising from the impairment.

11.    Plaintiff Marylou Nutzel, born April 15, 1928, was prescribed Vioxx by her family physician for osteoarthritis.  From February, 2002 until October, 2004 Plaintiff Nutzel took 25 mg of Vioxx daily.  In May, 2003, she suffered a myocardial infarction. As a direct and proximate result of the myocardial infarction, she incurred medical expenses, lost wages, lost the ability to perform ordinary activities, and lost time. Furthermore, she has a decreased life expectancy and an increased risk for future cardiovascular attack, additional disability, mental distress, and death.   Plaintiff Nutzel has treated medically and will continue to treat into the future, and she has and will continue to incur medical expenses related to the reasonable and necessary medical care. She has suffered permanent injury to her heart muscle and continues to suffer physical and mental limitations, conscious pain and suffering, and emotional distress arising from the impairment.

12.    Plaintiff Deborah Randall, born July 19, 1954, took Vioxx daily from November 12, 2002, until November 19, 2003. Prior to taking Vioxx, she treated with Celebrex® without suffering a cardiovascular event or complications. During the time she was prescribed Vioxx, Plaintiff Randall's treating physicians knew her past medical history included the cardiovascular risk factor smoking.   On October 11, 2003, Plaintiff Randall suffered an ischemic stroke resulting from arterial stenois of the renal and

carotid arteries.  As a direct and proximate result of the stroke, she has incurred medical expenses, lost wages, lost the ability to perform certain activities, and lost time. Furthermore, Plaintiff Randal has a decreased life expectancy and an increase risk for future cardiovascular attacks, additional disability, and death.   She has treated medically and will continue to treat into the future, and she has and will continue to incur medical expense related to the reasonable and necessary medical care. Plaintiff Randall has suffered and continues to suffer physical and mental limitations, conscious pain and suffering, and emotional distress arising from the impairment.

13.     Plaintiff Claire Ripberger, suffered a myocardial infarction on August 8, 2004, due to her daily use of Vioxx.  As a direct and proximate result of the myocardial infarction, she incurred medical expenses, lost wages, lost the ability to perform ordinary activities, and lost time. Furthermore, she has a decreased life expectancy and an increased risk for future cardiovascular attack, additional disability, and death. Plaintiff Ripberger has treated medically and will continue to treat into the future, and she has and will continue to incur medical expenses for the reasonable and necessary medical care. She has suffered permanent injury to her heart muscle and continues to suffer physical and mental limitations, conscious pain and suffering, and emotional distress arising from the impairment.

14.     Plaintiff Violet Sterling, born October 3, 1927, took 25 mg Vioxx from June, 2000, until November 2000. During this time frame, Plaintiff Sterling's treating physicians knew her medical history included the cardiovascular risk factor of diabetes. In October, 2000, she suffered a myocardial infarction.  As a direct and proximate result of the myocardial infarction, Plaintiff Sterling incurred medical expenses, lost wages,

lost the ability to perform ordinary activities, and lost time. Furthermore, she has a decreased life expectancy and an increased risk for future cardiovascular attack, additional disability, and death.   Plaintiff Sterling has treated medically and will continue to treat into the future, and she has and will continue to incur medical expenses related to the reasonable and necessary medical care. She has suffered permanent injury to his heart muscle and continues to suffer physical and mental limitations, conscious pain and suffering, and emotional distress arising from the impairment.

15.   Plaintiffs each allege an amount in controversy in excess of Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs.

16.   Defendant Merck tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold and distributed, or otherwise placed in the stream of interstate commerce, Vioxx, which was ingested by Plaintiffs.

17.   Defendant Merck was and is an American pharmaceutical company, incorporated under the laws of the State of New Jersey, whose principal place of business is One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. Defendant Merck does business in Kentucky and at all times relevant herein developed, manufactured, marketed, distributed, advertised and sold Vioxx in interstate commerce and in Kentucky.

18.   This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiffs and Defendant,

and the amount in controversy alleged by each Plaintiff exceeds $75,000.00, exclusive of interest and costs.

19.    Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

20.    The Food and Drug Administration approved Vioxx on May 20, 1999 for the treatment of dysmenorrhea (painful menstrual cramps), management of acute pain in adults, and for relief of the signs and symptoms of osteoarthritis. Subsequent to FDA approval, Vioxx was widely advertised and marketed by Defendant as a safe and effective pain relief medication.

21.    Vioxx is a member of a class of drugs known as "NSAIDs" (non-steroidal anti-inflammatory drug), but more specifically contains cyclooxygenase 2 ("COX-2") inhibitory properties.     Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, of which there are two known types ("COX-1" and "COX-2").  Vioxx is generally different than NSAIDs in that it is solely a COX-2 inhibitor.  The rationale being that if COX-2 is inhibited and COX-1 is unaltered, the patient will experience fewer gastrointestinal complications commonly associated with NSAID, while still experiencing the benefits of decreased pain and inflammation.

22.    The FDA did not approve Vioxx as a superior product to alleviate pain and inflammation as compared with other NSAID's or aspirin. Rather, it is an alternative pain relief product intended to reduce gastrointestinal side effects.

23.    After the FDA approved Vioxx and made the drug available to the public, Merck sponsored the VIGOR study to obtain information regarding clinically meaningful gastrointestinal events and to develop a large controlled database for overall safety assessment.[1]  At the conclusion of the VIGOR study, it was reported that serious cardiovascular events occurred in 101 patients who took Vioxx, compared with 46

---

[1] "VIGOR" stands for Vioxx® Gastrointestinal Outcomes Research".

patients who took naproxen (a type of over-the-counter NSAID found in Aleve). Additionally, myocardial infarctions ("MI") occurred in 20 patients in the Vioxx treatment group as opposed to only four patients in the naproxen treatment group.

24.    In addition to the aforementioned, Vioxx has been linked to several severe and life-threatening medical disorders including, but not limited to, edema, changes in blood pressure, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications and death.  These known material risks were not disclosed to or shared with Plaintiffs by any Defendant.

25.    Defendant's strategy, beginning in the 1990s, has been to aggressively market and sell its product by falsely misleading the medical community and potential users about Vioxx and by failing to reveal to the targeted patient population from serious dangers that Defendant knew or should have known to result from use of Vioxx.

26.    Defendant widely and successfully marketed Vioxx in the United States, by undertaking an advertising blitz extolling the virtues of Vioxx in order to induce widespread use of the product.  The marketing campaign consisted of advertisements, and promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential Vioxx users.

27.    The advertising program, as a whole, sought to create the image, impression and belief by consumers, and physicians, including the Plaintiffs, their Decedents, and their physicians, that the use of Vioxx was safe for human use, including a patient population that was predisposed to cardiovascular events. Merck represented Vioxx caused fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Defendant knew these representations to be false.

28.    Defendant trained its sales staff to purposefully downplay and understate the health hazards and risks associated with Vioxx.  Defendant, through promotional literature, audio conferences, professional meetings, and press releases deceived physicians and potential users of Vioxx by relaying positive information, including

testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects.

29.    In particular, in the materials produced by Defendant, Defendant falsely misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx, and falsely represented that adequate testing had been conducted concerning Vioxx.

30.    Defendant Merck's conduct was such that the FDA wrote the company a "Warning Letter" in September 2001 which demanded Merck correct the false and/or misleading messages contained in the promotional campaign for Vioxx.  Most if not all of the noted misrepresentations were made in reference to the VIGOR study conducted by Merck.[2]  The aforesaid warning letter delineated the following misrepresentations made during six promotional audio conferences presented on behalf of Merck by Peter Holt, M.D.  Defendant misrepresented that:

a.    "When you looked at the MI (myocardial infarction) rate the rate was different for the two groups.  The MI rate for Vioxx was 0.4 percent and if you looked at the Naprosyn arm it was 0.1 percent, so there was a reduction in the MIs in the Naprosyn group."

b.    Defendant knew that this statement was false as the reason for the difference between Vioxx and naproxen has not yet been determined. Defendant publicly asserted that the naproxen is a "wonderful platelet inhibitor" when in fact this has not been proven. An alternative explanation that Defendant carefully excluded from their promotional campaign is that Vioxx may have pro-thrombotic properties, therefore providing an explanation for the increase in adverse cardiac events.

---

[2] The study compared the safety and tolerability of two treatments (Vioxx® vs. naproxen) inpatients with rheumatoid arthritis.

c.      Merck and its agents and/or representatives also falsely claimed that the myocardial infarction rate associated with the use of Vioxx was 0.4%, when in fact it was clearly 0.5%.  When applied to tens of millions of prescriptions, the number of people affected by that 0.1% increase is very significant. Furthermore, Defendant failed to point out that the more affordable alternative, naproxen, has been statistically proven to produce **half** as many myocardial infarctions as Vioxx.[3]

d.      Merck and its agents and/or representatives misrepresented claims regarding the efficacy of Vioxx as compared to its competitor, Celebrex®. When publicly comparing the VIGOR study to a study done on Celebrex® known as "CLASS", Defendant failed to inform consumers that the patient populations in the two studies were extremely different.[4]   For instance, the VIGOR study *excluded* patients who had angina or congestive heart failure with symptoms that occurred at rest or with minimal activity, as well as patients taking aspirin or other antiplatelet agents.  The CLASS study did not exclude these patients, therefore making it more than likely that the CLASS trial included patients with a higher risk for myocardial infarctions prior to their ingestion of Celebrex®. Nevertheless, Defendant used the results from aforementioned studies to misrepresent that Vioxx was the better drug.

e.      Merck and its agents and/or representatives made false statements about the risk of Vioxx therapy in patients who are taking warfarin. At an audio conference on June 16, 2000, defendant stated, "…if

---

[3] Such misrepresentation and omissions were made not only at promotional audio conferences in June 2000, but also at the Annual Meeting of the American Society of Health-Systems Pharmacists (ASHP), in Los Angeles, California, on June 3-June 6, 2001.

[4] "CLASS" stands for Celebrex® Long-Term Arthritis Safety Study.

you look at the thromboembolic events it is very clear that these selective COX-2 inhibitors (of which Vioxx is a member) have the benefit of not having platelet aggregation and bleeding time, and therefore, can be used safely in terms of post-op and with Coumadin[5]."  This statement flies in the face of the product insert (PI) included with each prescription of Vioxx.  Merck's insert states that "...in post-marketing experience, bleeding events have been reported, predominately in the elderly, in association with increases in prothrombin time in patients receiving Vioxx concurrently with warfarin."

    f.    Defendant's promotional audio conferences failed to present serious and significant risks associated with Vioxx therapy.  For example, Defendant failed to state that Vioxx is contraindicated in patients who have experienced asthma, urticaria, or allergic-type reactions after taking aspirin or other NSAIDSs.  Defendant also failed to present the gastrointestinal ("GI") warning about the possibility of serious GI toxicity such as bleeding, ulceration, or perforation in patients taking Vioxx.  Moreover, Defendant failed to present Vioxx's precautions for use in patients who have liver and kidney disease, information about patient populations in which Vioxx's use is not recommended, such as women in late pregnancy, and information about Vioxx's most common adverse events.

31.    As a result of the Defendant's advertising and marketing efforts, and representations concerning the subject products, Vioxx was and continued to be pervasively prescribed throughout the United States, until Merck withdrew it from the market in September of 2004.

---

[5] Coumadin is a specific type of warfarin.

32.     Plaintiffs, and their Decedents, as result of their chronic use of Vioxx, suffered the type of cardiovascular injuries, including myocardial infarction, stroke, and ischemia, that Defendant knew or should have known Vioxx would cause.

33.     If Plaintiffs, and their Decedents, and/or their prescribing physicians in this action had known the risks and dangers associated with Vioxx, Plaintiffs, and their Decedents, would not have taken and/or been prescribed Vioxx ® and consequentially would not have been injured as a result.

### FIRST CAUSE OF ACTION
### STRICT LIABILITY

34.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, Paragraphs 1 through 33 of this Complaint and further allege as follows:

35.     Defendant is the manufacturer and/or supplier of Vioxx.

36.     Vioxx, as manufactured and sold by Defendant, was defective in its manufacture and construction when it left the hands of Defendant in that it posed a serious risk of injury and death and it failed to conform to product specifications.

37.     The Vioxx manufactured and supplied by Defendant was defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of this product exceeded the benefits associated with its design or formulation.

38.     Alternatively, the Vioxx manufactured and supplied by Defendant was defective in design or formulation in that, when it left the hands of the Defendant, it was more dangerous than an ordinary consumer would expect.

39.     The Vioxx manufactured and supplied by Defendant was defective due to inadequate warning or instruction because the Defendant knew or should have known that the product created significant risks of serious bodily harm and death to consumers including Plaintiffs, and their Decedents, and it failed to adequately warn of such risks.

40.     The Vioxx manufactured and supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after the Defendant knew or should have known of the risk of serious bodily harm and death from the use of Vioxx, it failed to provide an adequate warning of the product to consumers including Plaintiffs, their Decedents, and their physicians, knowing the product could cause serious injury and death.

41.     As a direct and proximate result of Plaintiffs' and their Decedents' use of Vioxx as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiffs and their Decedents have suffered the cardiovascular injuries and wrongful deaths described above, and incurred the damages previously alleged.

42.     Defendant's conduct as described above, including but not limited to its failure to adequately test Vioxx, to provide adequate warnings, and its continued marketing of the product when aware of the serious health risks it created, evidences a flagrant disregard of human life so as to render Defendant liable to Plaintiffs and their Decedents for punitive damages.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

43.     Plaintiffs incorporate by reference Paragraphs 1 through 42 as if fully set forth herein at length and further allege as follows:

44.     Defendant had a duty to exercise reasonable care in the manufacture, sale and/or distribution of Vioxx into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

45.     Defendant failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, and/or distribution of Vioxx into interstate commerce in that Defendant knew or should have known that the product caused such significant bodily harm or death.

46.     Defendant also failed to exercise ordinary care in the labeling of Vioxx and failed to issue adequate warnings of the risk of serious bodily injury or death due to the use of Vioxx.

47.     Despite the fact that Defendant knew or should have known that Vioxx posed a serious risk of bodily harm to consumers including Plaintiffs and their Decedents, Defendant continued to market Vioxx to consumers including Plaintiffs, and their Decedents.

48.     Defendant knew or should have known that consumers such as Plaintiffs and their Decedents, would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

49.     As a direct and proximate result of Plaintiffs' and their Decedents' use of Vioxx as manufactured, supplied and marketed by Defendant, Plaintiffs and their decedent have suffered the cardiovascular injuries, wrongful deaths described above and incurred the damages previously alleged.

50.     Defendant's conduct as described above, including but not limited to its failure to adequately test Vioxx, to provide adequate warnings, and its continued marketing of the product when aware of the serious health risks it created, evidences a flagrant disregard of human life so as to render Defendant liable to Plaintiffs and their Decedents for punitive damages.

15

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

51.     Plaintiffs incorporate by reference Paragraphs 1 through 50 as if fully set forth here and further allege as follows:

52.     At all times herein mentioned, Defendant expressly represented and warranted to Plaintiffs and their Decedents, and Plaintiffs' physicians, by and through statements made by Defendant or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.  In reliance upon said warranties, Vioxx was purchased and/or used by Plaintiffs and their Decedents.

53.     The Vioxx manufactured and sold by Defendant did not conform to these express representations because it caused serious injury to consumers including Plaintiffs and their Decedents.

54.     As a direct and proximate result of Plaintiffs' and their Decedents' use of Vioxx as manufactured, supplied and marketed by Defendant, Plaintiffs and their Decedents have suffered the cardiovascular injuries and wrongful deaths described above and incurred damages described above and incurred the damages previously alleged.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**

55.     Plaintiffs incorporate by reference Paragraphs 1 through 54 as if fully set forth here and further allege as follows:

16

56.     At the time Defendant marketed, sold, and distributed Vioxx for use by Plaintiffs and their Decedents, Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

57.     Plaintiffs and their Decedents and/or their physicians reasonably relied upon the skill and judgment of Defendant as to whether Vioxx was of merchantable quality and safe for its intended use and upon Defendant's implied warranty as to such matters.

58.     Contrary to such implied warranty, Vioxx was neither safe for its intended use nor of merchantable quality in that Vioxx had dangerous propensities when put to its intended use and would cause severe injuries to the user.

59.     As a direct and proximate result of Defendant's breach if its implied warranty, Plaintiffs and their Decedents were prescribed and took Vioxx and suffered the cardiovascular injuries, wrongful deaths, and damages described above.

### FIFTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION AND FRAUD

60.     Plaintiffs incorporate by reference Paragraphs 1 through 59 as if fully set forth here and further allege as follows:

61.     Defendant had actual knowledge based upon studies, published reports and clinical experience that Vioxx created a risk of serious bodily injury and death to consumers including Plaintiffs.

62.     Defendant intentionally omitted this information in its product labeling, promotions, advertisements, and marketing, and in order to avoid losses in sales to

consumers, falsely represented the product to be safe for its targeted consumers, including Plaintiffs and their Decedents.

63.     Plaintiffs and their physicians reasonably relied to their detriment upon Defendant's fraudulent statements and omissions in its labeling and remained uninformed and unaware of serious risks posed by the product.  Plaintiffs and their Decedents and/or their physicians reasonably relied upon Defendant's representations that Vioxx was safe for human consumption and upon Defendant's labeling, promotions, advertisings and marketing to fully disclose and describe all known risks of the drug.

64.     As a direct and proximate result of Defendant's fraudulent and/or negligent actions and omissions, Plaintiffs and their Decedents ingested Vioxx and suffered the cardiovascular injuries and wrongful deaths described above and incurred the damages previously alleged.

65.     Defendant's actions and omissions as identified in this Complaint demonstrate a flagrant disregard for human life, and as a direct and proximate result, Plaintiffs and their Decedents have been damaged as described herein and are entitled to punitive damages.

        **WHEREFORE**, Plaintiffs pray for relief as follows:

1.     Compensatory and punitive damages in excess of the jurisdictional amount;

2.     Attorneys' fees, expenses, and costs of this action; and

3.     Such further relief as this Court deems necessary, just, and proper.

Respectfully submitted,

/s Melanie S. Bailey
Janet G. Abaray (OH 0002943)
Melanie S. Bailey (KY 86679)
Burg Simpson Eldredge Hersh & Jardine, P.C.
312 Walnut Street, Suite 2090
Cincinnati, Ohio 45202
(513) 852-5600
(513) 852-5611
jabaray@burgsimpson.com
mbailey@burgsimpson.com


Alissa J. Magenheim
O'Connor, Acciani & Levy
220 Kroger Building
1014 Vine Street
Cincinnati, Ohio 45202
Telephone: 513-241-7111
Fax: 513-241-7197
AJM@OAL-law.com


## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

/s/ Melanie S. Bailey
Melanie S. Bailey (KY 86679)
Janet G. Abaray (OH 0002943)
Burg Simpson Eldredge Hersh & Jardine, P.C.
312 Walnut Street, Suite 2090
Cincinnati, Ohio 45202
(513) 852-5600
(513) 852-5611
mbailey@burgsimpson.com
jabaray@burgsimpson.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Amended Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittman, as well as Defendants' Counsel Susan Pope, Frost Brown Todd, LLC, 250 West Main St., Suite 2700, Lexington, KY 40507-1749, and Winston E. Miller, Frost Brown Todd, LLC, 400 West Market St., 32nd Floor, Louisville, KY 40202, by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 6th day of September, 2006.

/s/ *Melanie S. Bailey*
Melanie S. Bailey