UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | |
| **This Document Relates to:** | * | |
| **2:05-CV-535** | * | |
| | * | MAGISTRATE JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFFS' FIRST SUPPLEMENTAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**NOW COMES**, BILL JOLLEY and CHERYL JOLLEY; JAMES HOLLANDSWORTH; and JAMES FORD and ADONNA FORD, Plaintiffs in the above-entitled and numbered cause, and files this Plaintiffs' First Supplemental Complaint against Merck & Co., Inc.; and for causes of action would show the Court the following:

**1.00   PARTIES**:

   1.01   Plaintiffs Bill Jolley and Cheryl Jolley are individuals residing in Whitehouse, Smith County, Texas.

   1.02   Plaintiff James Hollandsworth is an individual residing in Athens, Henderson County, Texas.

   1.03   Plaintiffs James Ford and Adonna Ford are individuals residing in Athens, Henderson County, Texas.

1.04    Defendant Merck & Co., Inc. (hereinafter "Merck") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. The Defendant has already answered and appeared herein, and the Defendant may be served with this pleading by serving its attorneys of record. At all times relevant to these causes of action, Merck had continuing and systematic contacts with the State of Texas by delivering its products into the stream of commerce with the expectation that they would reach and be used in the State of Texas. Merck had minimum contacts with the State of Texas and was doing business in the state by, among other things, designing, manufacturing, promoting, and/or distributing pharmaceuticals, such as that which is involved in this litigation, in the State of Texas. The causes of action set out herein arise from such contacts.

**2.00    JURISDICTION AND VENUE**:

2.01    The amount in controversy, exclusive of interesting costs, exceeds the minimum jurisdictional limits of this Court.

2.02    Jurisdiction is proper in this Court as there is diversity of citizenship between the parties as provided by 28 U.S.C. § 1332(a).

2.03    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 as the Defendant had an agency or representatives in the Eastern District, and their contacts with the jurisdiction are so pervasive through the sale and distribution of pharmaceuticals; and further, through its participation and profits from the sale of pharmaceuticals in this jurisdiction, that it could reasonably anticipate being haled into Court in the Eastern District of Texas.

**3.00   STATEMENT OF FACTS:**

3.01   In 1992, Merck or its predecessor began researching a "block-buster drug" in other words, a drug with tremendous profit potential, which scientists quoted to be a "super aspirin". This "super aspirin" was a class of drug known as a Cox-II selective inhibitor.

3.02   In that same year, however, other U.S. pharmaceutical companies also had versions of "Cox-II selective inhibitors" in development and therefore, in order to avoid potential threat to the tremendous profit potential that Merck saw from this "super aspirin", Merck stepped up its efforts to develop, patent and market its version of the selective inhibitor of Cox-II.

3.03   In order to be the first to market this drug, Merck took certain critical shortcuts in its clinical trial tests, including but not limited to, removing patients who suffered side effects from its study in order to keep an expressed pattern from developing in its clinical trials.

3.04   Merck's Cox-II selective inhibitor was later named Vioxx®, chemical name rofecoxib, and was approved in the U.S. in October of 1999 after only seven years of development.

3.05   Merck's first worry in the mid to late 1990's, was that its drug would show greater heart risk than cheaper pain killers.

3.06   Indeed, outside studies have shown that Vioxx® greatly increases the risk of heart attacks, stroke and blood clots, and that complete heart failure can occur within 18 months or less of the first dose.

3.07    Merck, however, concealed critical information regarding serious flaws in its studies until September 30, 2004, when Merck voluntarily recalled Vioxx® and removed it from the market.

3.08    Plaintiffs Bill Jolley, James Hollandsworth, and James Ford took Vioxx and have suffered foreseeable health consequences of its use.

3.09    Plaintiff Bill Jolley first began taking Vioxx® no later than in April of 2002. On November 30, 2003, he suffered a heart attack as a result of taking Vioxx®.

3.10    Bill Jolley was married to Cheryl Jolley at all material times herein.

3.11    Plaintiff James Hollandsworth first began taking Vioxx® in June of 2001. On June 3, 2003 he suffered a heart attack as a result of taking Vioxx®.

3.12    Plaintiff James Ford first began taking Vioxx® in October of 2000. On July 8, 2004 he suffered a heart attack and required stent placement as a result of taking Vioxx®.

3.13    James Ford was married to Adonna Ford at all material times herein.

**4.00    STATUTE OF LIMITATIONS TOLLED AS A RESULT OF MERCK'S FRAUDULENT CONCEALMENT:**

4.01    Plaintiffs did not discover the harmful effects and increased risk caused by the consumption of Vioxx® until on or after September 30, 2004, the day Merck recalled the product.

4.02    Although Merck knew of the dangerous and harmful risk of stroke and heart attack caused by the consumption of Vioxx®, even before the drug was approved in 1999, Merck nevertheless concealed these dangers from Plaintiffs.

4.03    Merck had a fixed purpose in concealing the dangerous and harmful effects of Vioxx® in that Merck was earning billions of dollars a year in the sale and distribution of this unreasonably dangerous drug.

4.04    Plaintiffs reasonably relied upon Merck's representation that the drug was safe and effective and on Merck's science regarding this known danger.

## 5.00    STRICT LIABILITY PURSUANT TO §402A OF THE RESTATEMENT (SECOND) OF TORTS:

5.01    Plaintiffs repeat and re-allege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.02    The Defendant was engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling advertising, warning, and otherwise distributing Vioxx® in interstate commerce, which it sold and distributed throughout the world, including the State of Texas, and to Plaintiffs.

5.03    Plaintiffs were using Vioxx® in a manner for which it was intended or in a reasonably foreseeable manner.

5.04    Vioxx® was expected to and did reach Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

5.05    Plaintiffs were not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx® prior to September 30, 2004.

5.06    Vioxx® caused increased risks of heart attacks and stroke upon consumption, and therefore constituted a product unreasonably dangerous for normal use due to its defective

design, defective manufacture, defective marketing, and the Defendant's misrepresentations and inadequate facts disclosed to Plaintiffs.

5.07 As a direct and producing and/or proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx® in interstate commerce, Plaintiffs are at an increased risk of developing heart attacks and stroke and Plaintiffs have suffered compensatory and punitive damages in amounts to be proven at trial.

**NEGLIGENCE:**

5.08 Plaintiffs repeat and re-allege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.09 It was the duty of the Defendant to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx®.

5.10 Defendant is responsible for one or more of the following negligent acts and/or omissions, among others:

    a. Failing to adequately and properly test and inspect Vioxx® so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

    b. Failing to utilize and/or implement a reasonably safe design in the manufacture of Vioxx®;

    c. Failing to manufacture Vioxx® in a reasonably safe condition for which it was intended;

    d.    Failing to adequately and properly warn Plaintiffs of the risks of complications from Vioxx® when used in a manner for which it was intended;

    e.    Failing to adequately and properly warn Plaintiffs of the risks of diseases from Vioxx® when used in a manner for which it was intended;

    f.    Failing to adequately and properly label Vioxx® so as to warn Plaintiffs of risks of complications;

    g.    Failing to adequately and properly label Vioxx® so as to warn Plaintiffs of the risks of heart attack and stroke;

    h.    Manufacturing, selling, distributing, and/or prescribing Vioxx®, a drug which constituted a hazard to health;

    i.    Manufacturing, selling, distributing, and/or prescribing Vioxx®, a drug which caused adverse side effects; and

    j.    Other negligent acts and/or omissions.

5.11    As a direct and proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx®, Plaintiffs are at an increased risk of developing heart attacks and stroke and Plaintiffs have suffered compensatory and punitive damages in amounts to be proven at trial.

**BREACH OF EXPRESS WARRANTY**:

5.12    Plaintiffs repeat and re-allege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.13     Defendant expressly warranted to Plaintiffs, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx® was safe, effective, fit and proper for its intended use.

5.14     In using Vioxx®, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the Defendant.  These warranties and representations were false in that Vioxx® was not safe and was unfit for the uses for which it was intended.

5.15     As a direct and proximate result of Defendant's breaches of warranties, Plaintiffs have or is at an increased risk of developing heart attack and/or stroke and Plaintiffs have suffered compensatory and punitive damages in an amount to be proven at trial.

5.16     Defendant breached the express warranty of merchantability and the express warranty that its product would be fit for a particular purpose, as set forth in Tex. Bus. & Comm. Code § 2.314 and § 2.315.  These warranties were breached by Defendant's failure to adequately design, manufacture and market its product and/or warn of dangers Defendant knew or should have known about associated with a defective product.  The above described acts and/or omissions were singularly and/or cumulatively a proximate and/or producing cause of the events in question and the resulting injuries and damages sustained by the Plaintiffs.

**BREACH OF IMPLIED WARRANTY**:

5.17     Plaintiffs repeat and re-allege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

5.18   Prior to the time that Vioxx® was used by Plaintiffs, Defendant impliedly warranted to Plaintiff that Vioxx® was of merchantable quality and safe and fit for the use for which it was intended.

5.19   Plaintiff s were and is unskilled in the research, design and manufacture of Vioxx® and reasonably relied entirely on the skill, judgment and implied warranty of the Defendant in using Vioxx®.

5.20   Vioxx® was neither safe for its intended use nor of merchantable quality, as warranted by Defendant, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

5.21   As a direct and proximate result of Defendant's breaches of warranties, Plaintiffs have or is at an increased risk of developing heart attack and stroke and Plaintiffs have suffered compensatory and punitive damages in amounts to be proven at trial.

5.22   Defendant breached the implied warranty of merchantability and the implied warranty that its product would be fit for a particular purpose, as set forth in Tex. Bus. & Comm. Code §2.314 and §2.315.  These warranties were breached by Defendant's failure to adequately design, manufacture and market its product and/or warn of dangers Defendant knew or should have known about associated with a defective product.  The above described acts and/or omissions were singularly and/or cumulatively a proximate and/or producing cause of the events in question and the resulting injuries and damages sustained by the Plaintiffs.

**GROSS NEGLIGENCE**:

5.23   The negligent acts and/or omissions of the Defendant (by and through its authorized vice principals) as set forth above constitute an entire want of care so as to indicate

that the acts and/or omissions in question were the result of conscious indifference to the rights, safety and welfare of others, including Plaintiffs, or that they constitute malice, as that term is defined by law, so as to give rise to an award of exemplary damages. The negligent acts and/or omissions of the Defendant, when viewed objectively from the standpoint of the Defendant at the time of the events, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the Defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

**6.00   DAMAGES**

6.01   As a proximate cause of the above described acts and/or omissions on the part of Defendant, by and through its vice principals, agents, employees and/or representatives, Plaintiffs have sustained damages and harm. Plaintiffs seek all damages to which they are entitled at law for personal, emotional, economic, and physical injuries sustained in the past as well as those damages they will continue to sustain in the future as a result of the events in question.

6.02   Plaintiffs have suffered personal injuries and are entitled to damages as a result of the conduct of the Defendant including, but not limited to:

a.   medical, hospital, and pharmaceutical expenses, past and future;

b.   loss of earnings and/or earning capacity, past and future;

c.   physical pain and suffering, past and future;

d.   mental anguish, past and future;

e.   disfigurement, past and future; and

f.   physical impairment, past and future.

6.03	Plaintiff Cheryl Jolley is the wife of Bill Jolley and is entitled to recover legal damages as a result of the conduct of the Defendant, including but not limited to:

a.	loss of consortium, past and future; and

b.	loss of household services, past and future.

6.04	Plaintiff Adonna Ford is the wife of James Ford and is entitled to recover legal damages as a result of the conduct of the Defendant, including but not limited to:

a.	loss of consortium, past and future; and

b.	loss of household services, past and future.

6.05	Plaintiffs seek all damages to which they are entitled at law and/or equity for the physical, emotional and/or economic damages which they have sustained since the respective incidents, and the losses, which in reasonable probability, they will sustain in the future. Plaintiffs also seek punitive damages in amounts to be determined by the jury.

**7.00	PRAYER:**

Plaintiffs respectfully pray that the Defendant be cited to appear and answer herein, and that upon final hearing hereof, Plaintiff receives a judgment from Defendant for:

7.01	damages as plead, including but not limited to compensatory, actual, consequential, direct and/or punitive and/or exemplary damages;

7.02	costs of court, attorneys' fees, and expenses necessary for the preparation of this case to trial;

7.03	pre-judgment interest at the highest lawful rate and to the maximum extent allowed by law;

      7.04    interest on the judgment at the highest legal rate from the date the judgment is entered; and

      7.05    all further relief, at law and/or in equity to which the Plaintiffs may show themselves justly entitled.

      Respectfully submitted,

      **THE LAW OFFICES OF**
      **FRANK L. BRANSON, P.C.**


      /s/ Thomas J. Farmer
      **FRANK L. BRANSON**
      Texas Bar No. 02899000
      **THOMAS J. FARMER**
      Texas Bar No. 06826400
      **MICHAEL G. GUAJARDO**
      Texas Bar No. 00784183
      Highland Park Place
      4514 Cole Avenue, 18th Floor
      Dallas, Texas 75205

      (214) 522-0200
      (214) 521-5485 Fax


      **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Plaintiffs' First Supplemental Complaint has been served on Liaison Counsel, Russ Herman and Philip Wittmann, by U.S. Mail and by e-mail and upon all parties by electronically uploading the same to LexisNexis Fire & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of September, 2006.

      /s/Thomas J. Farmer
**FRANK L. BRANSON**
Texas Bar No. 02899000
**THOMAS J. FARMER**
Texas Bar No. 06826400
**MICHAEL G. GUAJARDO**
Texas Bar No. 00784183
Attorneys For Plaintiffs
**LAW OFFICES OF FRANK L. BRANSON, P.C.**
Highland Park Place
4514 Cole Avenue, 18th Floor
Dallas, Texas  75205
(214) 522-0200
(214) 521-5485 Fax
tjfarmer@flbranson.com