# Smith v. Merck & Co., Inc.
## Deposition Designations for Laura Demopoulos

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| 1 | 26:20 - 27:7 | Demopoulos, Laura 2006-02-13 | 00:00:41 | | |
| | 26: 20 | Q: Now, ma'am, then let's look at Vioxx | | | |
| | 26: 21 | as a drug. | | | |
| | 26: 22 | You know what the word | | | |
| | 26: 23 | 'prothrombotic' means, don't you? | | | |
| | 26: 24 | A: Yes. | | | |
| | 26: 25 | Q: Prothrombotic means something might | | | |
| | 27: 1 | cause a clot in the body, right? | | | |
| | 27: 2 | A: Correct. | | | |
| | 27: 3 | Q: And you knew at Merck that one of the | | | |
| | 27: 4 | reasons, at least the VIGOR study showed an increase | | | |
| | 27: 5 | in heart attack risks with Vioxx, you knew one of | | | |
| | 27: 6 | the possible explanations was Vioxx was causing | | | |
| | 27: 7 | clots, right? | | | |
| 2 | 27:10 - 27:25 | Demopoulos, Laura 2006-02-13 | 00:00:37 | | |
| | 27: 10 | THE WITNESS: That was one of several | | | |
| | 27: 11 | possible explanations. | | | |
| | 27: 12 | BY MR. LANIER: | | | |
| | 27: 13 | Q: And it was a possible explanation | | | |
| | 27: 14 | that you knew about consciously in your mind as a | | | |
| | 27: 15 | possibility back when you were the senior director | | | |
| | 27: 16 | of heart research at Merck, right? | | | |
| | 27: 17 | A: I and others within Merck stated that | | | |
| | 27: 18 | as a possibility. | | | |
| | 27: 19 | Q: Right. Because it wasn't just you, | | | |
| | 27: 20 | everybody at Merck knew that one of the | | | |
| | 27: 21 | possibilities for why the VIGOR study showed what it | | | |
| | 27: 22 | showed is your Vioxx was causing the clotting, | | | |
| | 27: 23 | right? | | | |
| | 27: 24 | A: We enumerated that among the | | | |
| | 27: 25 | possibilities. | | | |
| 3 | 28:21 - 29:1 | Demopoulos, Laura 2006-02-13 | 00:00:11 | | |
| | 28: 21 | Q: But you dealt with the public affairs | | | |
| | 28: 22 | people, didn't you? | | | |
| | 28: 23 | A: I did. | | | |
| | 28: 24 | Q: And you put out a video news release, | | | |
| | 28: 25 | or you were a part of it at least, right? | | | |
| | 29: 1 | A: Yes. | | | |
| 4 | 29:20 - 30:11 | Demopoulos, Laura 2006-02-13 | 00:01:05 | | |
| | 29: 20 | Q: When you did your taping, what was | | | |
| | 29: 21 | involved in the taping? | | | |
| | 29: 22 | A: I responded to some questions that | | | |
| | 29: 23 | related to an article which had been published by | | | |
| | 29: 24 | Eric Topol, and the questions and my answers were | | | |
| | 29: 25 | made in response to that article. | | | |
| | 30: 1 | Q: And to put this into a year frame, do | | | |
| | 30: 2 | you remember when that article was? | | | |
| | 30: 3 | A: It was August of 2002, I believe. | | | |
| | 30: 4 | Q: Two years before Merck pulled the | | | |
| | 30: 5 | drug, right? | | | |
| | 30: 6 | A: Yes. | | | |
| | 30: 7 | Q: And in August of 2002, the article | | | |
| | 30: 8 | came out. How soon after that did you do your | | | |
| | 30: 9 | videotaping for the company? | | | |
| | 30: 10 | A: I don't recall exactly, but I suspect | | | |
| | 30: 11 | it was within several weeks. | | | |
| 5 | 31:12 - 31:16 | Demopoulos, Laura 2006-02-13 | 00:00:28 | | |
| | 31: 12 | Q: Do you recall when they came in | | | |
| | 31: 13 | whether or not they would get you to, in essence, | | | |
| | 31: 14 | practice, practice, practice, say the same thing | | | |
| | 31: 15 | over and over and over, get it just right? | | | |
| | 31: 16 | A: My recollection is that we did | | | |

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 31: 17 | several takes, if you'd call it that, if that's the | | | |
| | 31: 18 | right term, of similar questions. | | | |
| 6 | **34:21 - 35:1** | Demopoulos, Laura 2006-02-13 | 00:00:09 | | |
| | 34: 21 | MR. LANIER: Okay. | | | |
| | 34: 22 | Would you please -- we've got this, | | | |
| | 34: 23 | all the outtakes from this, and I want to play some | | | |
| | 34: 24 | of them with you and see if this refreshes your | | | |
| | 34: 25 | memory a little bit about what went on. | | | |
| | 35: 1 | A: Okay. | | | |
| 7 | **87:14 - 88:1** | Demopoulos, Laura 2006-02-13 | 00:00:35 | | |
| | 87: 14 | FEMALE SPEAKER 2: Now, ideally what | | | |
| | 87: 15 | we need from you as kind of a company person out | | | |
| | 87: 16 | there is, you know, Merck stands behind the safety | | | |
| | 87: 17 | profile, or whatever you feel comfortable saying, | | | |
| | 87: 18 | and then give your reasons for why. I think you | | | |
| | 87: 19 | gave different reasons or reasons we didn't even | | | |
| | 87: 20 | have in here, and that is, you know, the product's | | | |
| | 87: 21 | been in millions of people, we've studied it | | | |
| | 87: 22 | routinely, we continue monitoring it, you know, | | | |
| | 87: 23 | we've reported -- we've reported things and look at | | | |
| | 87: 24 | reports coming from physicians. So, whatever makes | | | |
| | 87: 25 | you comfortable in saying that Merck stands behind | | | |
| | 88: 1 | the safety. | | | |
| 8 | **88:23 - 89:11** | Demopoulos, Laura 2006-02-13 | 00:00:47 | | |
| | 88: 23 | 'DR. DEMOPOULOS: Do you think it's | | | |
| | 88: 24 | useful to -- I mean, I think, you know, in fairness | | | |
| | 88: 25 | and in our own standby statement and, you know, the | | | |
| | 89: 1 | PIRs and our own publications, we say that one | | | |
| | 89: 2 | possible explanation for the VIGOR results is the | | | |
| | 89: 3 | prothrombotic effect of Vioxx. We say it ourselves. | | | |
| | 89: 4 | I mean, we've said it in lots of different places. | | | |
| | 89: 5 | And it's in there and they raised that. And there | | | |
| | 89: 6 | isn't a single person in the company who's going to | | | |
| | 89: 7 | say that that's not a possible explanation. So, you | | | |
| | 89: 8 | know, to say that, you know, to make the answer an | | | |
| | 89: 9 | absolute and say we stand behind the safety, it's | | | |
| | 89: 10 | unassailable, is, you know, probably too much of a | | | |
| | 89: 11 | generalization at least. | | | |
| 9 | **104:3 - 105:20** | Demopoulos, Laura 2006-02-13 | 00:02:04 | | |
| | 104: 3 | Q: Ma'am, what you told that person is, | | | |
| | 104: 4 | 'Do you think it's useful' -- I mean, you started | | | |
| | 104: 5 | out asking them if they thought it would be useful, | | | |
| | 104: 6 | right? | | | |
| | 104: 7 | A: I did, yes. | | | |
| | 104: 8 | Q: And then you changed it and you said, | | | |
| | 104: 9 | 'I mean, to think, you know, in fairness' -- that | | | |
| | 104: 10 | was your word, 'in fairness,' wasn't it? | | | |
| | 104: 11 | A: Correct. | | | |
| | 104: 12 | Q: 'And in our own standby statement, | | | |
| | 104: 13 | you know, the PIRs and our own publications, we say | | | |
| | 104: 14 | that one possible explanation for the VIGOR results | | | |
| | 104: 15 | is a prothrombotic effect of Vioxx.' | | | |
| | 104: 16 | You said that, didn't you? | | | |
| | 104: 17 | A: Correct. | | | |
| | 104: 18 | Q: You say, 'We say it ourselves. I | | | |
| | 104: 19 | mean, we've said it in lots of different places. | | | |
| | 104: 20 | And it's in there. And they raised that.' | | | |
| | 104: 21 | You said that, didn't you? | | | |
| | 104: 22 | A: I did. | | | |
| | 104: 23 | Q: You said, 'And there isn't a single | | | |
| | 104: 24 | person in the company who's going to say that that's | | | |
| | 104: 25 | not a possible explanation.' | | | |
| | 105: 1 | That's what you said, right? | | | |
| | 105: 2 | A: Yes. Merck said that many times. | | | |
| | 105: 3 | Q: Now, ma'am, if you'll look at the way | | | |
| | 105: 4 | you've ended this, because it kind of frames her | | | |
| | 105: 5 | first request of does the company stand by, you | | | |
| | 105: 6 | said, 'So, you know, to say that, you know, to make | | | |

2

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 105: 7 | the answer an absolute and say we stand behind the | | | |
| | 105: 8 | safety, it's unassailable, is, you know, probably | | | |
| | 105: 9 | too much of a generalization at least.' | | | |
| | 105: 10 | That's what you said, isn't it? | | | |
| | 105: 11 | A: Yes. | | | |
| | 105: 12 | Q: Because it is too much of a | | | |
| | 105: 13 | generalization to say Merck stood behind the safety | | | |
| | 105: 14 | of Vioxx when it came to heart attacks, right? | | | |
| | 105: 15 | A: No. | | | |
| | 105: 16 | Q: So, when you say that it -- to make | | | |
| | 105: 17 | an answer and say, 'We stand behind the safety is | | | |
| | 105: 18 | probably too much of a generalization,' were you | | | |
| | 105: 19 | telling the truth? | | | |
| | 105: 20 | A: Yes. | | | |
| 10 | 116:24 - 117:21 | Demopoulos, Laura 2006-02-13 | | 00:01:05 | |
| | 116: 24 | Q: All right. | | | |
| | 116: 25 | So, make sure -- I don't understand | | | |
| | 117: 1 | how I'm missing it, so, I just want to make sure | | | |
| | 117: 2 | I've got this right. | | | |
| | 117: 3 | You do agree that every -- that one | | | |
| | 117: 4 | possible explanation for the VIGOR result is a | | | |
| | 117: 5 | prothrombotic effect of Vioxx, right? | | | |
| | 117: 6 | A: Yes. That's a possible explanation. | | | |
| | 117: 7 | Q: And you do agree, quote, there isn't | | | |
| | 117: 8 | a single person in the company who's going to say | | | |
| | 117: 9 | that's not a possible explanation, right? | | | |
| | 117: 10 | A: A possible explanation. | | | |
| | 117: 11 | Q: And you do agree that Merck ought to | | | |
| | 117: 12 | tell customers the truth about its drugs, right? | | | |
| | 117: 13 | A: The truth, yes. | | | |
| | 117: 14 | Q: And you do agree that if Merck thinks | | | |
| | 117: 15 | Vioxx possibly causes heart attacks, that Merck | | | |
| | 117: 16 | ought to at least say we think that's possible, | | | |
| | 117: 17 | true? | | | |
| | 117: 18 | A: No, not necessarily. I think there | | | |
| | 117: 19 | are many instances where it may or may not be | | | |
| | 117: 20 | appropriate or prudent to raise questions that one | | | |
| | 117: 21 | might have. | | | |
| 11 | 452:3 - 452:20 | Demopoulos, Laura 2006-05-25 | | 00:00:38 | |
| | 452: 3 | Q. Good morning, Dr. Demopoulos. My | | Re: 452:3-452:20 | Overruled |
| | 452: 4 | name is David Kiernan. I'm here on behalf of Merck, | | Pltf Obj: Relevance, | |
| | 452: 5 | and I'd like to ask you a couple questions. | | outside scope of | |
| | 452: 6 | I understand that you're a | | plaintiff's designation | |
| | 452: 7 | cardiologist? | | Def Resp: Basic | |
| | 452: 8 | A. Yes. | | background; Needed | |
| | 452: 9 | Q. That's a heart doctor? | | for jury to place | |
| | 452: 10 | A. That is. | | witness in context | |
| | 452: 11 | Q. Okay. | | | |
| | 452: 12 | Can you tell us a little bit about | | | |
| | 452: 13 | your education? Where did you go to college, | | | |
| | 452: 14 | medical school? | | | |
| | 452: 15 | A. I went to college at MIT and | | | |
| | 452: 16 | subsequently went to medical school at New York | | | |
| | 452: 17 | University. I did an internship, residency and year | | | |
| | 452: 18 | as chief resident in internal medicine also at New | | | |
| | 452: 19 | York University, and then I completed a cardiology | | | |
| | 452: 20 | fellowship also at New York University. | | | |
| 12 | 453:25 - 454:17 | Demopoulos, Laura 2006-05-25 | | 00:00:56 | |
| | 453: 25 | Q. Are you Board Certified? | | Re: 453:25-454:17 | Overruled |
| | 454: 1 | A. I am. | | Pltf Obj: Relevance, | |
| | 454: 2 | Q. In what specialties? | | outside scope of | |
| | 454: 3 | A. Internal medicine and cardiology. | | plaintiff's designation | |
| | 454: 4 | Q. What years were you at Merck? | | Def Resp: Basic | |
| | 454: 5 | A. I was at Merck from 1996 until 2003. | | Background; provides | |
| | 454: 6 | Q. Can you tell us generally what your | | context for jury | |
| | 454: 7 | responsibilities were while you were at Merck? | | | |
| | 454: 8 | A. I ran clinical trials for | | | |
| | 454: 9 | cardiovascular products. | | | |
| | 454: 10 | Q. What types of cardiovascular | | | |

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 454: 11 | | products? | | |
| | 454: 12 | A. | Drugs for patients with different | | |
| | 454: 13 | | forms of heart disease, so, drugs to prevent | | |
| | 454: 14 | | clotting for patients who had heart attacks or | | |
| | 454: 15 | | threatened heart attacks, high blood pressure drugs, | | |
| | 454: 16 | | drugs which could help the vasculature of patients | | |
| | 454: 17 | | at risk for heart disease. | | |
| 13 | 455:1 - 455:19 | | Demopoulos, Laura 2006-05-25     00:00:32 | Re: 455:1-455:19 Pltf Obj: Relevance, outside scope of plaintiff's designation Def Resp: Basic Background; places witness in context for jury | overruled |
| | 455: 1 | Q. | And what is your position today? | | |
| | 455: 2 | | Where are you? | | |
| | 455: 3 | A. | I'm at the University of | | |
| | 455: 4 | | Pennsylvania. | | |
| | 455: 5 | Q. | And what do you do at the University | | |
| | 455: 6 | | of Pennsylvania? | | |
| | 455: 7 | A. | I have a general cardiology practice. | | |
| | 455: 8 | Q. | Are you on staff at the University of | | |
| | 455: 9 | | Pennsylvania? | | |
| | 455: 10 | A. | Yes. | | |
| | 455: 11 | Q. | Okay. | | |
| | 455: 12 | | As a cardiologist? | | |
| | 455: 13 | A. | Yes. | | |
| | 455: 14 | Q. | Do you see -- you treat patients | | |
| | 455: 15 | | today? | | |
| | 455: 16 | A. | I do. | | |
| | 455: 17 | Q. | Did there come a time at Merck when | | |
| | 455: 18 | | you became involved with Vioxx, looking at Vioxx? | | |
| | 455: 19 | A. | Yes. | | |
| 14 | 460:21 - 461:9 | | Demopoulos, Laura 2006-05-25     00:00:39 | | |
| | 460: 21 | Q. | Now, earlier in this deposition you | | |
| | 460: 22 | | were shown several outtakes from a video interview | | |
| | 460: 23 | | prepared in August 2001. Do you recall that? | | |
| | 460: 24 | A. | Yes. | | |
| | 460: 25 | Q. | We spent several days where you were | | |
| | 461: 1 | | asked questions about the video and followup | | |
| | 461: 2 | | questions by counsel. Let me ask you, Dr. | | |
| | 461: 3 | | Dempoulos, what was the purpose of that video | | |
| | 461: 4 | | interview in 2001? | | |
| | 461: 5 | A. | That was conducted as a response to | | |
| | 461: 6 | | the article written by Dr. Topol. | | |
| | 461: 7 | Q. | And were you asked to provide a | | |
| | 461: 8 | | scientific response to Dr. Topol's article? | | |
| | 461: 9 | A. | Yes, I was. | | |
| 15 | 464:20 - 467:2 | | Demopoulos, Laura 2006-05-25     00:01:47 | | |
| | 464: 20 | Q. | And did this article repeatedly | | |
| | 464: 21 | | mention that COX-2 inhibitors might be | | |
| | 464: 22 | | prothrombotic? | | |
| | 464: 23 | A. | It did. | | |
| | 464: 24 | Q. | You also mentioned that there was -- | | |
| | 464: 25 | | there wasn't a scientist at Merck who was working on | | |
| | 465: 1 | | Vioxx who wasn't considering this theory. Do you | | |
| | 465: 2 | | recall that? | Re: 465:4-465:14 Pltf Obj: foundation; hearsay Def Resp: Non-hearsay - testifying to simple fact that debate occurred; Not to any truth of any position/statement asserted. Moreover, witness would have knowledge of the existence of the debate as a member of the scientific community. | overruled |
| | 465: 3 | A. | Yes. | | |
| | 465: 4 | Q. | Was this theory that COX-2 inhibitors | | |
| | 465: 5 | | might be prothrombotic widely debated in the medical | | |
| | 465: 6 | | literature back in 2001? | | |
| | 465: 7 | A. | Yes, it was. | | |
| | 465: 8 | Q. | Debated at the FDA? | | |
| | 465: 9 | A. | Certainly. | | |
| | 465: 10 | Q. | And is it still being debated today? | | |
| | 465: 11 | A. | It is. | | |
| | 465: 12 | Q. | Was there anything secret about this | | |
| | 465: 13 | | theory then or now? | | |
| | 465: 14 | A. | No. No. | | |
| | 465: 15 | Q. | You were asked during this video | | |
| | 465: 16 | | interview back in August of 2001 whether Merck stood | | |
| | 465: 17 | | behind the safety of Vioxx. Do you recall that? | | |
| | 465: 18 | A. | Yes. | | |
| | 465: 19 | | MR. KIERNAN: Okay. I'd like to play | Re: 465:19-467:2 Pltf Obj: hearsay; | |
| | 465: 20 | | two clips for you. | | |

4

| Lines | Text | Time | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|
| 465:21–467:2 | (Whereupon the following was played:<br>"DR. DEMOPOULOS: I too my Vioxx" --<br>MR. LANIER: I need locations,<br>please.<br>MS. MURPHY: Yes. This one is going<br>to be V26345.<br>(Whereupon the following was played:<br>"DR. DEMOPOULOS. ..take my Vioxx<br>this morning.<br>FEMALE SPEAKER 2: I don't care if<br>you say my mother takes Vioxx.<br>"DR. DEMOPOULOS: She does.<br>"FEMALE SPEAKER 1: All right. So,<br>let's say --<br>"DR. DEMOPOULOS: I don't mind saying<br>that one.<br>"FEMALE SPEAKER 1: You know what,<br>put your personal --<br>"DR. DEMOPOULOS: Am I allowed to say<br>Eric Topol takes Vioxx? I take Vioxx all the time.<br>"FEMALE SPEAKER 1: You can talk<br>about yourself. Let's do that.<br>"FEMALE SPEAKER 2: What is your<br>personal opinion about Vioxx and the safety of<br>Vioxx, you, personally, not as an employee of Merck,<br>but as a doctor?<br>"DR. DEMOPOULOS: It's an extremely<br>effective drug that has really changed pain<br>management. I use it all the time in my clinic<br>patients. I take it myself. My mother takes it.<br>It's a phenomenal drug which has an excellent safety<br>profile which we continue to study." | | relevance; 403; outside scope of plaintiff's designation; Plaintiff refers to his previously filed motion in limine on personal use of Vioxx.<br>**Def Resp:** Proper rebuttal; Plaintiffs accused witness of lying about her belief in the cardio safety of Vioxx when she is making these video clips. The outtakes clearly demonstrate that she is not lying when she says she believes in the safety profile of Vioxx. | Sustained as I mentioned on several occasions. This type of testimony is probably under relevant under 401. But it is problematic under 403: misleading, confusing, would result in undue delay. The use is too specific — but specific factors such as age, sex, family history, weight, food, prior cardio history, B.P., etc. all play a role. This would result in trial within a trial, increase discovery — i.e. as to each person who allegedly took it, etc — and in the end it doesn't prove a thing. |
| 16 | **467:6 – 468:4** Demopoulos, Laura 2006-05-25<br>"DR. DEMOPOULOS: My mother takes<br>Vioxx like it's going out of style, and I would<br>never tell her to stop, you know, so, I wouldn't let<br>my mother take an unsafe drug --<br>"FEMALE SPEAKER 1: -- medication --<br>"DR. DEMOPOULOS: -- and I'd say that<br>on camera. It's true, you know. Mom, eat it up.<br>You know, no problem. I take it myself all the<br>time.<br>"FEMALE SPEAKER 1: It might not be a<br>bad idea, you know, to say your personal --<br>"DR. DEMOPOULOS: Hey, do you want me<br>to tell you something? Eric takes Vioxx every day.<br>Eric Topol takes Vioxx every day. Vioxx, Zocor. I<br>know his whole medical history. He's on all our<br>drugs.")<br>BY MR. KIERNAN:<br>Q. Dr. Demopoulos, do you recall making<br>these statements at the time?<br>A. Yes.<br>Q. Were these statements accurate?<br>A. Yes.<br>Q. Truthful?<br>A. Absolutely. | 00:00:41 | **Re: 467:6-468:4**<br>**Pltf Obj:** Hearsay; relevance; 403; outside the scope of plaintiff's designations; Plaintiff refers to his previously filed motion in limine on personal use; assumes facts not in evidence.<br>**Def Resp:** Non-hearsay; goes to belief, state of mind, and motive | |
| 17 | **468:17 – 469:4** Demopoulos, Laura 2006-05-25<br>Q. Were you uncomfortable about any of<br>the issues you were being asked to address in this<br>video interview?<br>A. No.<br>Q. Did you accurately present your views<br>about what the science reflected on Vioxx?<br>A. Absolutely.<br>Q. Were you coached to say anything you<br>did not agree with during this interview?<br>A. No.<br>Q. Were you allowed to express your<br>views in your own words? | 00:00:23 | | |

| # | Lines | Testimony | Time | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 469:4 | A. Yes. | | | |
| 18 | 474:3 - 474:6 | Demopoulos, Laura 2006-05-25 | 00:00:12 | Re: 474:3-474:6<br>Pltf Obj: Relevance; calls for expert opinion testimony<br>Def Resp: Goes to her state of mind at the time she gave interview | overruled |
| | 474:3 | Q. With respect to the video interview | | | |
| | 474:4 | that you gave in 2001 on Vioxx, were you comfortable | | | |
| | 474:5 | with the cardiovascular safety profile of Vioxx? | | | |
| | 474:6 | A. Yes. | | | |
| 19 | 475:20 - 476:20 | Demopoulos, Laura 2006-05-25 | 00:00:38 | | |
| | 475:20 | First of all, you're not here | | | |
| | 475:21 | claiming to the jury that you're an independent | | | |
| | 475:22 | witness, are you? | | | |
| | 475:23 | A. I'm not sure I know what that phrase | | | |
| | 475:24 | means. | | | |
| | 475:25 | Q. Well, for example, you've got a | | | |
| | 476:1 | lawyer with you, right? | | | |
| | 476:2 | A. Yes. | | | |
| | 476:3 | Q. And your lawyer is being paid by | | | |
| | 476:4 | Merck, right? | | | |
| | 476:5 | A. I believe so. | | | |
| | 476:6 | Q. Well, you're not paying your lawyer, | | Re: 476:6-476:20<br>Def Obj: Relevance; argumentative; sarcastic; (Lanier)<br>Pltf Resp: Testimony is relevant to show bias | overruled |
| | 476:7 | are you? | | | |
| | 476:8 | A. No. | | | |
| | 476:9 | Q. You never -- this isn't your family | | | |
| | 476:10 | lawyer or anybody you've ever met before this | | | |
| | 476:11 | litigation, right? | | | |
| | 476:12 | A. Correct. | | | |
| | 476:13 | Q. You didn't go pick him out of a phone | | | |
| | 476:14 | book or something yourself, did you? | | | |
| | 476:15 | A. No. | | | |
| | 476:16 | Q. Didn't pull him off a TV ad or | | | |
| | 476:17 | anything like that, did you? | | | |
| | 476:18 | A. No. | | | |
| | 476:19 | Q. He was, in a sense, assigned to you, | | | |
| | 476:20 | right? | | | |
| 20 | 476:22 - 477:14 | Demopoulos, Laura 2006-05-25 | 00:01:12 | Re: 476:22-478:12<br>Def Obj: Relevance; argumentative; sarcastic | overruled |
| | 476:22 | THE WITNESS: That's correct. | | | |
| | 476:23 | BY MR. LANIER: | | | |
| | 476:24 | Q. All right. | | | |
| | 476:25 | And he's being paid by someone other | | | |
| | 477:1 | than you, right? | | | |
| | 477:2 | A. Correct. | | | |
| | 477:3 | Q. Not being paid by your employer or | | | |
| | 477:4 | anybody you work for, right? | | | |
| | 477:5 | A. No. | | | |
| | 477:6 | Q. By the same token, you've had a | | | |
| | 477:7 | chance to meet with the Merck lawyers repeatedly | | | |
| | 477:8 | before your deposition, haven't you? | | | |
| | 477:9 | A. Yes. | | | |
| | 477:10 | Q. Not only before the last deposition | | | |
| | 477:11 | had you met with them several times, but you've met | | | |
| | 477:12 | with them before this deposition reconvened today, | | | |
| | 477:13 | right? | | | |
| | 477:14 | A. Yes. | | | |
| 21 | 481:15 - 483:7 | Demopoulos, Laura 2006-05-25 | 00:01:23 | | |
| | 481:15 | Q. Ma'am, it's my understanding the | | | |
| | 481:16 | Merck lawyers showed you some items getting ready | | | |
| | 481:17 | for your deposition. Is that fair to say? | | | |
| | 481:18 | A. Yes. | | | |
| | 481:19 | Q. One of the items they showed you was | | | |
| | 481:20 | video outtakes? | | | |
| | 481:21 | A. Yes. | | | |
| | 481:22 | Q. Now, did they show you the whole | | | |
| | 481:23 | video outtakes or just snippets? | | | |
| | 481:24 | A. No. Small segments. | | | |
| | 481:25 | Q. Okay. | | | |
| | 482:1 | Did you -- so, you still hadn't | | | |
| | 482:2 | gotten to see the whole video outtake itself? | | | |
| | 482:3 | A. No. | | | |
| | 482:4 | Q. So, when Mr. Kiernan asked you, is | | | |

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 482: 5<br>482: 6<br>482: 7<br>482: 8<br>482: 9<br>482: 10<br>482: 11<br>482: 12<br>482: 13<br>482: 14<br>482: 15<br>482: 16<br>482: 17<br>482: 18<br>482: 19<br>482: 20<br>482: 21<br>482: 22<br>482: 23 | | there anything in those video outtakes that you said<br>that you take issue with or you're upset with, you<br>don't know because you haven't seen them, you've<br>only seen small snippets, right?<br>A. Well, I remember the experience.<br>Q. Okay. Good.<br>   Who was there with you on that<br>   experience?<br>A. I don't know their names.<br>Q. Well, who were they?<br>A. They were Merck employees or people<br>   contracted by Merck to record a video news release.<br>Q. Well, like who?<br>A. I told you I don't know their names.<br>Q. You don't remember?<br>A. I don't.<br>Q. Well, do you remember what their job<br>   description was?<br>A. No. | | Re: 482:10-482:23<br>Def Obj: Argumentative;<br>irrelevant; asked and<br>answered, repeatedly<br>Pltf Resp:<br>Impeachment;<br>cross-examination | Overruled |
| | 482: 24<br>482: 25<br>483: 1<br>483: 2<br>483: 3<br>483: 4<br>483: 5<br>483: 6<br>483: 7 | | Q. You don't remember who was there, you<br>   don't remember what their names were, you don't<br>   remember who they worked for exactly, and you don't<br>   remember what their job descriptions were, but you<br>   want us to believe you remember every word you said<br>   and every word they said and whether or not they<br>   ever coached you and whether or not they ever made<br>   you uncomfortable or whether or not you were<br>   uncomfortable with anything you said? | | Re: 482:24-483:7<br>Def Obj: Argumentative;<br>sarcastic<br>Pltf Resp:<br>Impeachment;<br>cross-examination | Sustained |
| 22 | 483:9 - | 483:25 | Demopoulos, Laura 2006-05-25    00:00:38 | | |
| | 483: 9<br>483: 10<br>483: 11<br>483: 12<br>483: 13<br>483: 14<br>483: 15<br>483: 16<br>483: 17<br>483: 18<br>483: 19<br>483: 20<br>483: 21<br>483: 22<br>483: 23<br>483: 24<br>483: 25 | | THE WITNESS: I clearly remember my<br>experience at that session, and I was entirely<br>comfortable with how it proceeded.<br>MR. LANIER: Would you please pass me<br>the transcripts and let me ask her some questions<br>and see how good her memory is.<br>BY MR. LANIER:<br>Q. So, you remember everything you said?<br>A. I remember my experience.<br>Q. Okay.<br>   Well, all I'm getting at, ma'am, is<br>when you testified that you were never made to feel<br>uncomfortable, that you were not coached, that you<br>were at peace with everything you said, and you<br>think it's right and accurate, you're saying that<br>when you don't even remember what half of it is,<br>fair? | | Re: 483:9-483:25<br>Def Obj: Irrelevant;<br>argumentative;<br>harassing & sarcastic;<br>this entire line of<br>question designed to<br>badger & harass the<br>witness<br>Pltf Resp:<br>Impeachment;<br>cross-examination | Sustained<br><br>Overruled |
| 23 | 484:3 - | 485:19 | Demopoulos, Laura 2006-05-25    00:01:44 | | |
| | 484: 3<br>484: 4<br>484: 5<br>484: 6<br>484: 7<br>484: 8<br>484: 9<br>484: 10<br>484: 11<br>484: 12<br>484: 13<br>484: 14<br>484: 15<br>484: 16<br>484: 17<br>484: 18<br>484: 19<br>484: 20<br>484: 21<br>484: 22<br>484: 23<br>484: 24<br>484: 25 | | THE WITNESS: No. Certainly not<br>fair. As I've said, I clearly remember my<br>impression of that experience.<br>BY MR. LANIER:<br>Q. Well, what did you say about wanting<br>   to do a study, a cardiovascular study?<br>A. Generally, I said that Merck was<br>   interested in conducting a study.<br>Q. Well, you don't remember saying,<br>   please give me the money, let's do the study and<br>   clasping your hands in front of the camera?<br>A. No. You showed me a clip where that<br>   took place.<br>Q. Do you remember how much money it was<br>   you asked for?<br>A. No. It was probably at least several<br>   million dollars.<br>Q. Do you remember how your initial<br>   assessment, your initial answers of your studies on<br>   cardiosafety for Vioxx, how many patients you said<br>   on your own had been studied?<br>A. I'm sorry. Could you repeat that?<br>Q. Yes, ma'am. | | Re: 484:3-485:19<br>Def Obj: Irrelevant;<br>argumentative;<br>harassing & sarcastic;<br>entire line of questions<br>designed to badger<br>& harass the witness<br>Pltf Resp:<br>Impeachment;<br>cross-examination | |

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 485: 1<br>485: 2<br>485: 3<br>485: 4<br>485: 5<br>485: 6<br>485: 7<br>485: 8<br>485: 9<br>485: 10<br>485: 11<br>485: 12<br>485: 13<br>485: 14<br>485: 15<br>485: 16<br>485: 17<br>485: 18<br>485: 19 | | Do you remember how many patients you, yourself, said had been assessed as being treated with Vioxx to see whether or not there was a risk of CV events, heart events?<br>A. Well, I remember characterizing them in two different ways, patients that had been involved in clinical trials, and patients that had been assessed according to post-marketing studies. And so I know one was on the order of thousands, and the other was, you know, more on the order of several hundred thousand.<br>Q. Actually, ma'am, one was on the order of, you said, we currently have an assessment of over 28,000 patients. And then you were asked to talk about it in terms of millions instead. Do you remember that?<br>A. Yes.<br>Q. You don't consider that coaching?<br>A. No. | | |
| 24 | 487:24 - 489:3 | Demopoulos, Laura 2006-05-25 | | 00:01:12 | |
| | 487: 24<br>487: 25<br>488: 1<br>488: 2<br>488: 3<br>488: 4<br>488: 5<br>488: 6<br>488: 7<br>488: 8<br>488: 9<br>488: 10<br>488: 11<br>488: 12<br>488: 13<br>488: 14<br>488: 15<br>488: 16<br>488: 17<br>488: 18<br>488: 19<br>488: 20<br>488: 21<br>488: 22<br>488: 23<br>488: 24<br>488: 25<br>489: 1<br>489: 2<br>489: 3 | | Q. You told this jury in response to Mr. Kiernan's questions that the purpose of the video was a "scientific response" to the Topol article. Do you really want to stand by that?<br>A. Sure.<br>Q. Because the reason I'm curious is, then you said a little later on that some of what we had called coaching, that you don't call coaching, where you were asked about pressing the limits with the legal department, do you remember that part?<br>A. Yes.<br>Q. You said, well, what you meant once you saw the little snippet in front of that is that you were trying to see whether or not you could simplify the presentation by not having to use the names of the drugs. Do you remember that answer?<br>MR. KIERNAN: Objection to form.<br>THE WITNESS: Yes.<br>BY MR. LANIER:<br>Q. Okay. Well, ma'am, if this is a scientific response that you're doing, why do you feel the need to simplify and not use words like ibuprofen? Isn't the truth of the matter that this wasn't a scientific response, this was a PR move by your company? True?<br>A. Oh, no. I was not in the public relations group at Merck.<br>Q. You didn't know one of the people in there coaching you was a PR person? | Re: 487:24-488:17<br>Def Obj:<br>Exceeds scope of testimony counter-designated by defendant; harassing; argumentative<br>Pltf Resp:<br>Impeachment; cross-examination<br><br>Re: 488:18-489:3<br>Def Obj:<br>Exceeds scope of testimony counter-designated by defendant; harassing; argumentative; also compound; lacks foundation<br>Pltf Resp:<br>Impeachment; cross-examination | Overruled<br><br><br><br><br><br><br><br><br><br><br><br>Overruled |
| 25 | 489:5 - 489:17 | Demopoulos, Laura 2006-05-25 | | 00:00:25 | |
| | 489: 5<br>489: 6<br>489: 7<br>489: 8<br>489: 9<br>489: 10<br>489: 11<br>489: 12<br>489: 13<br>489: 14<br>489: 15<br>489: 16<br>489: 17 | | THE WITNESS: There wasn't anyone there coaching me.<br>BY MR. LANIER:<br>Q. Okay. Not coaching. One of the people in there giving you suggestions as to answers and wording and how you might say something and whether you might push the limits with legal. Did you know that one of those people were PR people?<br>A. Well, if you're asking me that I knew someone in the room was from public affairs, I did, but I still disagree with your characterization of what their role there was. | Re: 489:9-489:17<br>Def Obj: argumentative; sarcastic<br>Pltf Resp:<br>Impeachment; cross-examination | Overruled |
| 26 | 504:2 - 504:15 | Demopoulos, Laura 2006-05-25 | | 00:00:36 | |
| | 504: 2<br>504: 3<br>504: 4<br>504: 5 | | Q. And you're saying that Merck in the year 2001 thought, almost all the Merck scientists thought it was a reasonable possibility that Vioxx could be prothrombotic, right? | Re: 504:2-504:15<br>Def Obj: Foundation; mischaracterizes testimony | |

| | | | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|---|---|
| | 504:6<br>504:7<br>504:8<br>504:9<br>504:10<br>504:11<br>504:12<br>504:13<br>504:14<br>504:15 | A.<br>Q.<br><br><br><br><br>A. | I didn't say that, no.<br>Well, you said it was widely debated,<br>that almost -- that most of the people there thought<br>it, quote, might be prothrombotic in 2001. Do you<br>remember saying that? And she's typed it up, so we<br>can check.<br>The weight of the data at that time<br>and Merck's perspective at that time was that Vioxx<br>did not result in an increase in cardiovascular<br>events. | **Pltf Resp:**<br>Impeachment;<br>cross-examination | |
| 27 | **505:4 - 505:25**<br>505:4<br>505:5<br>505:6<br>505:7<br>505:8<br>505:9<br>505:10<br>505:11<br>505:12<br>505:13<br>505:14<br>505:15<br>505:16<br>505:17<br>505:18<br>505:19<br>505:20<br>505:21<br>505:22<br>505:23<br>505:24<br>505:25 | Demopoulos, Laura 2006-05-25<br>Q.<br><br>A.<br><br><br>Q.<br><br><br>A.<br>Q.<br>A.<br>Q. | <br>Did people at Merck think Vioxx might<br>be prothrombotic in 2001? Yes or no?<br>People at Merck thought that it was a<br>potential explanation for a study result, one of<br>several.<br>Is that yes? So, people at Merck<br>thought it might be prothrombotic in 2001, thought<br>Vioxx might be prothrombotic, true?<br>No.<br>False?<br>False.<br>Okay.<br>Now, I'm going to play for the jury<br>right here your video clip that's got not only you<br>in your scientific response admitting off camera,<br>hey, I can't say it's not possible, everybody thinks<br>it's possible, and I'm going to play what<br>Mr. Kieman asked you just a few minutes ago, and<br>then I'm going to play this over again.<br>And it's your understanding, right<br>now you're saying, that Merck did not think Vioxx<br>might be prothrombotic in 2001? | 00:00:55<br><br>Re: 505:4-505:14<br>**Def Obj:** Asked &<br>answered; harassing<br>**Pltf Resp:**<br>Impeachment;<br>cross-examination<br><br>Re: 505:15-505:25<br>**Def Obj:** Harassing;<br>sarcastic lawyer<br>speech<br>**Pltf Resp:**<br>Impeachment;<br>cross-examination | *Overruled*<br><br><br><br><br><br><br><br>*Overruled* |
| 28 | **506:2 - 507:10**<br>506:2<br>506:3<br>506:4<br>506:5<br>506:6<br>506:7<br>506:8<br>506:9<br>506:10<br>506:11<br>506:12<br>506:13<br>506:14<br>506:15<br>506:16<br>506:17<br>506:18<br>506:19<br>506:20<br>506:21<br>506:22<br>506:23<br>506:24<br>506:25<br>507:1<br>507:2<br>507:3<br>507:4<br>507:5<br>507:6<br>507:7<br>507:8<br>507:9<br>507:10 | Demopoulos, Laura 2006-05-25<br><br><br><br><br><br><br><br><br><br>BY MR. LANIER:<br>Q.<br><br>A.<br><br>Q.<br><br><br><br>A.<br><br><br><br>Q.<br>A. | <br>THE WITNESS: It really depends a lot<br>on how you're phrasing it. So, it's been phrased<br>different ways in all of those scenarios you just<br>described. So, what I've answered in an attempt to<br>be clear, as opposed to simply saying yes or no, is<br>that Merck believed that it was one of several<br>possible explanations for study results, but that<br>the weight of available data suggested it was not<br>the likely explanation.<br><br>So, were y'all warning people who<br>were being tested?<br>Were we warning people who were being<br>tested?<br>Yeah. Were you warning people who<br>had signed up for your Vioxx test that they might<br>have an increased risk of heart attacks taking Vioxx<br>over against other drugs?<br>I really -- I'd have to look at all<br>the informed consents for all the studies that went<br>on at that point to tell you so, and I don't<br>think --<br>Should you have warned them?<br>-- I saw all of them.<br>Well, you know, you have to be rather<br>circumspect in what you warn. I mean, do you warn<br>people that they could choke on the pill? So, you<br>know, you have to be reasonable about what could<br>happen. So, if anything was a theoretical<br>possibility, it would depend on the weight of<br>scientific evidence. And the weight of the evidence<br>suggested that that was not an issue.<br>Now, as to what all of the informed<br>consents said at that time, I couldn't tell you. | 00:01:23<br><br>Re: 506:2-507:10<br>**Def Obj:** Irrelevant;<br>exceeds scope of<br>counter-designations;<br>sarcastic tone<br>**Pltf Resp:**<br>Impeachment;<br>cross-examination<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Re: 514:24-515:1<br>**Def Obj:** Relevance;<br>outside the scope of<br>counters; sarcastic tone | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>*Overruled* |
| 29 | **514:24 - 515:1** | Demopoulos, Laura 2006-05-25 | | 00:00:08 | |

| | | Objections/Responses | Ruling in Barnett |
|---|---|---|---|
| 514: 24 | Should Merck tell about expected side | **Pltf Resp:** | overruled |
| 514: 25 | effects in the informed consent? Yes or no? | Impeachment; | |
| 515: 1 | A. Yes. | cross-examination | |