UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS<br>LIABILITY LITIGATION | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | MDL Docket No. 1657 <br><br> SECTION L <br><br> JUDGE FALLON <br><br> MAGISTRATE JUDGE KNOWLES |
| This Document Relates to All<br>Individual Cases | | |
| * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO
PLAINTIFFS' STEERING COMMITTEE'S MOTION TO COMPEL THE
PRODUCTION OF MERCK PROFILE FORMS ("MPF") AND FOR AN ORDER
COMPELLING MERCK TO CEASE AND DESIST DELAYING
THE PRODUCTION OF MPFS BASED ON UNWARRANTED GROUNDS**

Defendant Merck & Co., Inc. ("Merck"), by and through its attorneys, submits this opposition to the motion filed by the Plaintiffs' Steering Committee ("PSC") to compel production of the Merck Profile Form ("MPF") in cases pending in the MDL. The production of *thousands* of MPFs in this MDL makes plain that Merck has in no way limited or delayed MPF productions and the PSC's motion should be denied.

**I.   FACTUAL BACKGROUND**

Pretrial Order No. 18 (subsequently amended by Pretrial Order Nos. 18A, 18B and 18C) obligated Merck to produce a Merck Profile Form ("MPF") in response to the Plaintiff Profile Form ("PPF") filed in each case where it is alleged a plaintiff suffered a cardiovascular injury defined as myocardial infarction, ischemic stroke, or death from Vioxx. *See* Pre-Trial Order No.

1

828329v.1

18C.[1] In preparing for its initial MDL MPF production in December 2005, Merck identified *seven fields* of the nine-page PPF where plaintiff-specific information was essential to query its live databases and systems to generate reliable (i.e., accurate and complete) information for MPFs.[2] These seven fields -- called the "core criteria" -- were compiled by Merck to identify the most basic information that should be affirmatively provided by all plaintiffs initially as a matter of course.[3] Creation and dissemination of the core criteria was fully consistent with the Court's expectations that plaintiffs provide complete PPF information prior to Merck processing MPFs in the eligible cases.[4]

In early December 2005, Merck asked the Plaintiffs' Liaison Counsel ("PLC") to communicate the "core criteria" to plaintiffs' counsel of record in an effort to *avoid* any delay in production of MPFs. In fact, Merck's counsel prepared the draft of a form letter to be sent under

---

[1] All prior versions of the MPF order – Pre-Trial Order Nos. 18, 18A and 18B – included the requirement currently embodied in Pre-Trial Order No. 18C that PPFs and MPFs must be served only in cases where there is an alleged "cardiovascular injury," as defined in that order.

[2] The terms of PTO 18C require Merck to certify, under penalty of perjury, that the materials produced in each MPF are as true and accurate as possible. Without complete answers to the core criteria, however, the accuracy and reliability of the ultimate MPF data output cannot be confirmed (let alone certified) by Merck. If data is unreliable, Merck cannot produce it in the MPF. In this way, the core criteria works to the benefit of plaintiffs who will receive an MPF containing only as much information as is available in Merck's systems given the accuracy and completeness of the answers to the core criteria provided in the PPF.

[3] The "core criteria" consists of the following seven items:
1. Type of injury (cardiovascular cases relating to ischemic stroke, myocardial infarction & death);
2. Date (month and year) of Plaintiff's injury;
3. Full name of person who used Vioxx;
4. Maiden or other names of person who used Vioxx;
5. Full address of person who used Vioxx;
6. Full name and full address of prescriber (including suite number, if any); and
7. Full name and full address of sample provider (including suite number, if any).

[4] *See* Transcripts from May 2006 MDL Monthly Status Conference, at p. 10; June 2006 MDL Monthly Status Conference, at p. 10; and July 2006 MDL Monthly Status Conference, p. at 12, attached hereto as "Exhibit A."

PLC's signature to all plaintiffs' counsel of record in the MDL to inform them how to comply with the requirements of the core criteria in an effort to facilitate the production of MPFs in their cases. *See* Copy of E-mail Correspondence to Russ Herman and Accompanying Form Letter to Plaintiffs' Counsel of Record, attached hereto at "Exhibit B." Despite these efforts, the core criteria apparently was not communicated to plaintiffs' counsel of record in the MDL until almost seven months later when it was codified in Pre-Trial Order No. 18C ("PTO 18C").[5]

Shortly before entry of PTO 18C, counsel on behalf of PLC informed Merck that plaintiffs' counsel in the MDL still did not know what sort of information they needed to provide in PPFs to receive MPFs in their cases. As a result, on June 13, 2006, Merck voluntarily assumed the responsibility of sending out *thousands* of "notice letters" to all counsel of record in the MDL to identify how their particular PPFs were deficient in the core criteria such that MPFs could not be processed.[6] These letters were a massive undertaking by Merck and were limited exclusively to the core criteria required for processing MPFs.[7] Contrary to the PSC's assertion, the purpose for sending these letters was to educate plaintiffs' counsel regarding how to comply

---

[5] The repeated references in PSC's motion to inclusion of the core criteria in PTO 18C as an "accommodation to Merck" makes little sense. Long before entry of PTO 18C, the parties had agreed that requiring this critical information (so that Merck could sufficiently query its databases and systems) was the best way to ensure that responsive information at Merck was discovered and produced to plaintiffs. Including the core criteria in the order, therefore, cannot be properly characterized as an accommodation to Merck.

[6] Merck has affirmatively sent out notice letters pertaining to plaintiffs' counsel approximately 5,200 deficient PPFs to inform plaintiffs what additional information is required to satisfy the core criteria such that MPFs could be processed in their cases. Of course, notice letters are only sent in cases where the PPF is deficient in the core criteria, and an MPF is not processed until the additional information is provided by plaintiffs.

[7] Importantly, these notice letters are totally separate and distinct from the more comprehensive letters sent to plaintiffs' counsel that identify general deficiencies in the PPF form for purposes of affirmative discovery or trial preparation.

3

with the "core criteria" requirement of PTO 18C such that MPFs could be produced in these cases *without* delay caused by an insufficient PPF.[8]

On August 7, 2006, the PSC provided Merck with a draft of its motion to compel, and Merck prepared an informal response to this motion and provided feedback – a document that the PSC has now attached as "Appendix A" to its motion – as a vehicle for a discussion that occurred between the PSC and Merck's counsel on August 16, 2006.  *See* Merck's Informal Response to PSC's Draft Motion to Compel, attached hereto at "Exhibit D."  With the benefit of Merck's good faith response, the PSC filed its formal motion to compel on August 23, 2006.

## II.     DISCUSSION

Merck has again reviewed each of the PPFs identified in the PSC's motion to compel in an effort to respond to the claim that Merck has been somehow using the core criteria to limit or delay the production of MPFs in these cases.  Indeed, Merck had already prepared a case-specific response to each of these PPFs in the chart that became "Appendix A" to the PSC's motion.[9]  In an effort to illustrate the larger issues in a more cognizable format for the Court, Merck has

---

[8]  Merck's counsel also agreed to meet and confer with the PSC's representative on several occasions, including two face-to-face meetings, several conference calls, and various written correspondence over the last several months.  Unfortunately, some of the this communication appeared to be aimed at creating not resolving issues.  *See, e.g.,* E-mail Correspondence from Michael Weinkowitz, attached hereto at "Exhibit C."

[9]  The PSC also identified in its motion a number of cases that were filed by a particular plaintiff's counsel, Ann Oldfather.  Merck has already had a number of communications directly with Ms. Oldfather regarding these twenty-eight cases.  *See* Correspondence to Ann Oldfather, attached hereto as "Exhibit E."  Moreover, there is little benefit in restating here Merck's justification for its application of the core criteria in each of the additional cases filed by Ms. Oldfather, as those cases do not present any novel issues not already highlighted in PPFs referenced by the PSC in their motion.

4

828329v.1

identified seven distinct disputes relating to the application of the core criteria in this litigation as well as the respective positions of the parties relating to those categories.

### A. Type of Injury

The PSC contends that Merck is taking too narrow a view of the "type of injury" requirement of the core criteria and PTO 18C and refusing to process MPFs for cases that the PSC believes properly fall within this definition. For example, the PSC maintains that a plaintiff who claims "heart problems resulting in coronary artery bypass surgery" should be entitled to an MPF.[10] Merck does not consider such PPFs deficient per se, but rather believes that they are not even candidates for Merck's deficiency analysis because they do not rise to the level of injury that must be alleged under PTO 18C's definition of "cardiovascular injury" – namely, "myocardial infarction, ischemic stroke, or death" – to obligate Merck to process MPFs. Merck has agreed to expand the definition to those alleged injuries within the "spirit" of the order and has provided PLC with a list of those specific injuries for which Merck will process an MPF (and has been doing so since inception of the MPF order) regardless of the strict construction of PTO 18C.[11] *See* E-mail Correspondence to Plaintiffs' Liaison Counsel, attached hereto as "Exhibit

---

[10]  Merck explained in its informal response to the PSC's draft motion that an MPF in the <u>Engle</u> case (from which this example is taken) is not being processed because plaintiff's PPF identifies at least three separate injuries that meet the definition of "cardiovascular injury" under PTO 18C – namely, "stroke, multiple ischemic attacks, heart attack . . . " – but the PPF is deficient because the additional requirement of "injury date" states only "Beginning approx. 2001." As stated in its informal response to PSC's draft motion, both a month and year must be provided in the PPF, and it must be provided for each of the alleged injuries identified in the PPF.

[11]  Contrary to the assertion in PSC's motion that "Merck has agreed to broaden its interpretation of this definition," Merck has only agreed not to require certain "magic words" – one of the three injuries required by PTO 18C – as a condition for processing MPFs. It should go without saying that Merck would never make an agreement with the PSC that would violate the terms of an order entered by this Court.

5

F." Moreover, Merck has invited the PSC to raise with counsel additional injuries that it believes qualify under PTO 18C.

### B. Initials for Physicians' Name

The PSC contends that initials for the first name of plaintiff's prescribing physician or sample provider (e.g., "C. D. Collins") fulfills the "full name" requirement of the core criteria and PTO 18C. Merck has explained to the PSC that initials are not a "full name," and it was precisely this sort of situation for which this component of the core criteria was created. Merck requires a full name because there are databases at Merck that do not include address fields. This means that the physician's name is the *only* field Merck can use to obtain responsive data. Therefore, if Merck returns multiple entries for an initialed name (e.g., multiple physicians known only as "C. D. Collins" or individual entries for different named individuals like "Charles David" or "Charlotte Dorothy") – without any additional information – it simply cannot obtain reliable results.[12] Importantly, this requirement was created by Merck in the interest of requiring plaintiffs to identify as much specific information available to them such that Merck is able to disclose as much information to plaintiffs that can be reliably identified in its systems. As already explained above, when Merck returns data that it cannot sufficiently verify, the only alternative available to Merck is to provide no data at all. Accordingly, this requirement of "full

---

[12] In a meet and confer session with the PSC's representative occurring on June 2, 2006, Merck's counsel agreed that – based on representations by counsel – there was no additional name information available in the specific case where "C. D. Collins" was identified as a prescriber (LaChance), and an MPF is being processed in this case under the timeframe set forth in PTO 18C. There is no reason to repeat this exercise for potentially dozens or hundreds of cases.

name" exists for the benefit of plaintiffs who want to receive more rather than less information in their MPFs.

        **C.**     **Fields Left "Blank" in PPF**

The PSC contends that because the "sample provider" and "maiden/other name" questions in the PPF are qualified with an "if," no response is required *if* the plaintiff did not receive samples or go by a maiden/other name. The PSC, therefore, believes that Merck should produce an MPF in cases where such questions are left blank. The problem here is that Merck cannot be in a position of speculating whether a question left "blank" in the PPF should be construed as plaintiff's representation that the particular request does not apply, that it was to be answered in the negative, or that it was a simple oversight by the plaintiff in failing to provide a response. Merck's counsel needs "closure" for these types of questions (e.g., None or N/A) to avoid having to reprocess MPFs potentially several times in a single case as plaintiffs recall new or different information – on their own terms and timeframe – that would materially affect the accuracy or completeness of the MPF response. The added expense of reprocessing the same MPF multiple times – and its affect on the production of MPFs in cases where plaintiffs properly complete their PPFs – cannot be overstated. For cases in which plaintiffs have already submitted PPFs, a writing of any kind – including e-mail correspondence to the appropriate designee under the terms of PTO 18C – is sufficient to correct the deficiency of fields left "blank" in the PPF.

        **D.**     **Purpose of Maiden Name or Other Name Inquiry**

The PSC contends that Merck is inappropriately using the "Maiden or Other Names Used or By Which You Have Been Known" requirement of the core criteria and PTO 18C as it relates

828329v.1

to male plaintiffs. Merck states that this requirement is not limited to "maiden name" but also includes "other names" by which a particular plaintiff has been known, which is a requirement that specifically pertains to male plaintiffs. See Exhibit ___ at p. 2. If a male plaintiff does not provide his other names, Merck will obviously not be able to query its systems for information corresponding to that name. Ultimately, plaintiff will be the one prejudiced by the possibility that additional data relating to him exists in Merck's systems that is never identified and produced. One relatively high-profile example of this situation was in the Humeston trial case in the New Jersey Vioxx proceedings where the plaintiff's actual name was Frederick Michael Humeston and yet he went by "Mike Humeston" in all papers and court filings. Had the "other name" not been provided in this case, Merck would not have searched for all documents and data relating to this particular plaintiff. Accordingly, plaintiffs are the ones most prejudiced by not providing this required information.

### E. Providing Only Partial Information in PPF

The PSC contends that certain "partial" information provided in the PPF should be sufficient to satisfy the core criteria and PTO 18C and that Merck – not plaintiffs -- should be required to do additional research to obtain the missing information. For example, the PSC insists that "Professional Associates Building, Suite 200, Pikesville, KY 41502" is sufficient address information despite the fact that plaintiff does not provide the required street number and street name.[13] The fact that Merck takes the affirmative step, when possible, of going online and

---

[13] Merck has explained in its informal response to the PSC's draft motion that an MPF in the Bevins case (from which this example is taken) would be produced as soon as this additional information was provided by plaintiff.

searching the Internet to obtain this sort of additional information otherwise missing from the PPF does not mean that Merck should be *required* to do so in every case. The core criteria and PTO 18C require "full" address information, and plaintiffs stand in a better position (with direct access to their clients) of obtaining all of the correct information and providing it to Merck rather than asking Merck to fill in the omissions left by plaintiffs who do not properly and/or fully complete their PPF forms. The responsibility and burden of completing plaintiffs' own PPFs should not fall to Merck, and Merck should not be obligated to do additional research relating to PPFs not properly completed by plaintiffs and their counsel.

### F.    Answers Not Apparent on Face of PPF

The PSC contends that providing "pointers" in the PPF to medical records is sufficient to respond to the questions in the PPF, including the core criteria.[14] The PSC further contends that reference to such materials in the PPF is substantially the same as MPF productions referring to enclosed materials in the accompanying data package. The problem here is that the PSC fails to understand how the PPF and MPF obligations differ significantly from each other in both concept and execution. The purpose of the PPF is to provide Merck with specific information that is readily available to plaintiff – usually without requiring any research or investigation by plaintiff at all. The purpose of the MPF, however, is to provide information *in the form of documents and data* identified after a number of specific queries of Merck's relevant databases and systems. The MPF necessarily refers to accompanying documents and data because it is the

---

[14] Merck does not object to the attachment of certain additional documentation, such as an original chart created by counsel, that shows an effort by plaintiffs to provide more comprehensive information – or to present such information in a more usable format for Merck's counsel – than would otherwise be allowed by the contours of the PPF form.

documents and data themselves that form the basis – and substance – of the MPF production. The information that Merck requires in the PPF (viz., the core criteria) can and should be provided within the four corners of the PPF form, and, because the PPF provides the initial information on which the ultimate MPF production is based, there can be no substitute for complete and accurate written answers in the PPF form itself. Again, the responsibility and burden of completing plaintiffs' own PPFs should not fall to Merck or its counsel.

    G. **Service on Lexis-Nexis File & Serve**

  The PSC routinely contends that service on Lexis-Nexis File & Serve ("LNFS") of some or most of the four named counsel/firms representing Merck identified in PTO 18C is sufficient to trigger the start date for effective service of a PPF for purposes of processing an MPF. Merck obviously disagrees with this approach. Anything less than service on all four counsel/firms for the defense is inadequate to trigger Merck's obligation to process an MPF in an individual case because: (1) it is in direct violation of the negotiated terms of the MPF order that have been in effect since its very inception; and (2) it does not give the required notice to the very firm -- Dechert LLP --  that requires receipt of the PPF so that the MPF process can be initiated. Plaintiff's counsel must simply "check a box" on LNFS to effect service of all defense counsel (including Dechert), and there is no additional expense in doing so. If plaintiffs fail to designate Dechert as a recipient for service on LNFS, Merck's counsel at Dechert will never know that a PPF has been served in a given case – regardless of service on Merck's other counsel – and the MPF process will never get off the ground.

### III. CONCLUSION

Because there is no evidence that Merck has improperly limited or delayed the production of MPFs in this litigation and has only required only the most basic and essential information to be provided in PPFs as a condition to Merck's obligation to process MPFs, the PSC's motion to compel should be denied.  The problems raised in the PSC's motion are of their own creation because plaintiffs have not properly completed PPFs as required by Pre-Trial Order No. 18C.  To the extent such non-compliance by plaintiffs exists, the remedy is not to compel Merck somehow to produce MPFs under these impossible circumstances but to require plaintiffs to provide complete answers to all of the items identified in the core criteria.  Accordingly, if any relief is to flow from the PSC's motion, it should be a reminder – in the form of an oral or written order – that plaintiffs and/or their counsel must provide complete answers to all of the items listed in the core criteria.  Counsel for Merck will provide the Court with such a proposed order on this subject, should the Court so desire it.

Dated: September 12, 2006                                          Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

11

828329v.1

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Benjamin R. Barnett
Eben S. Flaster
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
Phone: 215-994-4000
Fax:     215-994-2222

Attorneys for Merck & Co., Inc.

828329v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of Merck & Co., Inc. ("Merck") to Plaintiffs' Steering Committee's Motion to Compel the Production of Merck Profile Forms ("MPF") and for an Order Compelling Merck to Cease and Desist Delaying the Production of MPFs Based on Unwarranted Grounds has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, or by hand delivery and e-mail, and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 12th day of September, 2006.

>  */s/ Dorothy H. Wimberly*
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel