# Flaster, Eben

| | |
|---|---|
| **From:** | Flaster, Eben |
| **Sent:** | Tuesday, August 15, 2006 5:32 PM |
| **To:** | LDAVIS@hhkc.com |
| **Cc:** | Barnett, Ben; Henderson, Chris; coronato@HughesHubbard.com; Poulos@HughesHubbard.COM; Lillian Flemming; Michael Weinkowitz |
| **Subject:** | MPF - Proposed Motion to Compel |
| **Attachments:** | PPF Analysis.pdf |

Dear Lenny --

In the spirit of good faith and the prospect of having a productive discussion on the subject, we are providing the attached analysis of the PPFs identified in your proposed motion to compel as well as an informal response to some of the issues raised therein. Our decision not to address the unsubstantiated claims of delay and/or insufficiency of our MPF productions should not be construed to dignify these unfounded claims. However, the PSC's accusation that Merck and its counsel are somehow acting in bad faith does require a response. After the numerous meet and confer sessions and discussions in which Merck has actively participated and proposed (as well as executed) solutions to address plaintiffs' concerns or otherwise accommodated the requests of plaintiffs' counsel, this accusation of bad faith is not only meritless but also particularly unfair. In the past, we have successfully negotiated the resolution of numerous discovery disputes because, I believe, both parties were working in good faith. Merck continues to do so here.

Your draft motion identified eleven (11) PPFs that the PSC believes are exemplars of properly completed forms. Merck respectfully disagrees and has repeatedly discussed with representatives of the PSC (namely, Michael Weinkowitz) as to why these PPFs provide insufficient information in terms of the core criteria. Indeed, with one exception (where a PPF was erroneously deemed deficient as an initial matter but since been processed on an expedited basis and produced to counsel), all of these PPFs remain deficient in the core criteria. The details of this determination are explained briefly in the attached document and can be discussed further tomorrow in real-time on our call. Meanwhile, on the subject of core criteria, I believe that two points of clarification are necessary:

(1) Merck voluntarily sent out so-called "notice letters" to all counsel of record to identify for them -- in specific terms and on a case-by-case basis -- how their PPFs were lacking in the core criteria such that MPFs could not be processed. These letters were a massive undertaking by Merck and were limited exclusively to the very basic information (i.e., the core criteria) required for processing MPFs and totally separate and distinct from the standard deficiency-letter writing campaign of which plaintiffs' counsel routinely complain. The primary purpose for sending such letters was to educate plaintiffs' counsel regarding how to comply with the "core criteria" requirement of Pre-Trial Order No. 18C such that MPFs could be produced in their cases without delay.

(2) The repeated references in the draft motion regarding inclusion of the core criteria in Pre-Trial Order No. 18C as an "accommodation to Merck" makes no sense. Long before entry of Pre-Trial Order No. 18C, I thought that the parties had agreed that requiring this most fundamental information so that Merck could sufficiently query its databases and systems was the best way to ensure that responsive (and reliable) information at Merck was discovered and produced to plaintiffs. Including the core criteria in the order, therefore, cannot be properly characterized as an accommodation to Merck. Moreover, as you know, there was never any secret as to the core criteria Merck required to process MPFs, and as early as December 2005, Merck had asked that this critical information be communicated to plaintiffs' counsel of record in an effort to avoid any delay in production of MPFs.

I hope that the attached chart is helpful to you and that we can have a productive discussion on the subject tomorrow morning. I also sincerely appreciate the opportunity to respond to the proposed motion prior to its filing in the hope that we can resolve these issues without court intervention.

The call is scheduled for 10 am CST / 11 am EST and the call-in information is as follows: 866.279.8448 / 9425162. Talk to you then.

Thanks,
Eben

1


PPF Analysis.pdf
(374 KB)

*Eben S. Flaster*
*Dechert LLP*
*Cira Centre*
*2929 Arch Street*
*Philadelphia, PA 19104-2808*
*215.994.2407 (w)*
*215.655.2407 (f)*
eben.flaster@dechert.com

2

| Plaintiff/Case | PPF Question | Plaintiff's Response | The PSC's Position | Merck's Response |
|---|---|---|---|---|
| *Wallace Engle v. Merck*, 2006 cv 06731 | **What is your understanding of the bodily injury you claim resulted from your use of VIOXX?** | Stroke, multiple ischemic attacks, heart attack, congestive heart failure" [sic] | Both plaintiffs' answer are full and complete and consistent with the Federal Rules, PTO 18(C). | The injury alleged in this PPF is sufficient. However, the PPF is deficient as to injury date. Plaintiff states that the injury was stroke, heart attack, multiple ischemic attacks, and congestive heart failure, yet we are only given the date of injury as "Beginning approx. 2001"; we are given several adverse events by plaintiff, yet only a year for injury date. |

| | **What is your understanding of the bodily injury you claim resulted from your use of VIOXX?** | | |
|---|---|---|---|
| *Roger Allen v. Merck*, 2:05-cv-06138 | | Heart problems resulting in coronary artery bypass surgery x 5 in 2005 and 5 stents in October, 2005. | *As stated in footnote 4:* According to PTO 18(C)(1). Plaintiffs in all "cardiovascular event cases" are required to complete a PPF. Likewise, Merck is required to complete and serve an MPF 90 days after its receipt of a complete verified PPF according to PTO 18(C)(17). The Preamble to PTO 18(C) states that an MPF is to "be completed by Merck in all individual (that is non-class action) cases in which plaintiffs claim to have sustained a myocardial infarction, an ischemic stroke, or death ("cardiovascular event"). If a Plaintiffs' PPF answer does not contain these "magic words" then Merck consider [sic] it deficient and refuses to produce an MPF. For instance[,] one Plaintiff, as set forth below, answered "Heart problems resulting in coronary artery bypass surgery x 5 in 2005 and five stents in October, 2005," and Merck refused to produce an MPF even since [sic] PTO 18(C). Furthermore, if a Plaintiffs' answer contains the magic words but also contains other injuries as did Mr. Wallace's answer "... **Multiple ischemic attacks ... heart failure**" Merck considers the answers deficient and refuses to produce an MPF. | In this PPF, plaintiff states that he suffered "Heart problems resulting in coronary artery bypass surgery x 5 in 2004 and 5 stented in October 2005." Under the definition of "cardiovascular injury" in PTO 18C (and even an expansive reading of what constitutes that injury), a claim of "heart problems" identified by plaintiff would not qualify as a heart attack. |

2

| | | | |
|---|---|---|---|
| *Steven Clark v. Merck*, 2:05-cv-00732 | **If you received any samples for VIOXX, state who provide [sic] them, what dosage, how many and when they were provided?** | [Mr. Clark received no samples, he did not answer; the question on page 5 (leaving it blank) that begins **"IF you received samples …"**] | The question is qualified with an "if" – therefore no response is required – "if" the plaintiff did not receive samples. Merck should produce an MPF in cases where this answer is left blank. | The space for plaintiff's response to the Sample Provider question is left blank in this PPF. Plaintiff's counsel now indicates that plaintiff did not receive samples, but this could not be ascertained from the PPF. An affirmative answer is required (and requested in the so-called "notice letters" sent to counsel). |
| *Larry Krieg v. Merck*, 2:05-cv-02356 | **Maiden Or Other Names Use or By Which You have Been Known?** | [Mr. Krieg has no maiden name nor any other name by which he has ever been known so he listed nothing on the line] [Page 2] | Same as above. | The space for plaintiff's response to the Maiden/Other Name question is left blank by plaintiffs in this PPF. Plaintiffs counsel now indicate that plaintiff has no maiden or any other name, but this could not be ascertained from the PPF. An affirmative answer is required (and requested in the so-called "notice letters" sent to counsel). |
| *Larry Krieg v. Merck*, 2:05-cv-02356 (cont.) | N/A | → | At the time this PPF was due, plaintiffs are [sic] required to serve an electronic version of the PPF via Lexis-Nexis file and serve to four different attorneys at four separate law firms: Hughes Hubbard & Reed; Stone Pigman Walther Wittmann LLC; Dechert LLP and Womble Carlyle, Sandridge & Rice, LLC, according to PTO 18(C)(5). Merck's claim that Mr. Krieg did not electronically serve his PPF, as demonstrated by the Lexis-Nexis case report attached as Exhibit "15" | Plaintiffs' documentation might show (although "Exhibit 15" was not attached) that plaintiffs served their PPF on Lexis/Nexis File & Serve ("LNFS"), however, Dechert is not one on the parties selected for service. The requirement to serve an attorney at Dechert LLP – which is the firm that coordinates the processing and production of the MPFs on behalf of Merck – has always been a requirement as far back as the initial Pre-Trial Order 18. |

3

| | | | which reflects that Merck was indeed served the PPF on January 26, 2006[.] This is an example of Merck ceasing [sic] any opportunity to not produce an MPF and to further delay the progress of this litigation. | |
|---|---|---|---|---|
| James T. Bevins v. Merck, 2:06-cv-00732 | **Who prescribed VIOXX for you?** | Samuel J. King, M.D. [Page 5] | Plaintiff provided the information sought – the only think [sic] missing is that the "J" was omitted from Dr. King's name – when mentioned second time in the PPF. | The insufficiency of this PPF has nothing to do with the "J" in the physician's name. The insufficiency in this PPF relates to the physician's address. Plaintiff does not provide the street address of the "Professional Associates Building" identified in the PPF. The address is, of course, not complete without this critical information. |
| | **If you received any samples for VIOXX, state who provide [sic] them, what dosage, how many and when they were provided?** | Samuel King, M.D. given samples regularly at office appointments. [Page 5] | | |
| | **Your Current family and/or primary care physician:** | Samuel J. King, M.D. - Professional Associates Bldg, Suite 200, Pikesville, KY 41502 [Page 8] | | |
| Earl Crank v. Merck, 2:06-cv-00746 | **Who prescribed Vioxx for you?** | Lida Oxnard, M.D. and Terry Thornsberry, ARNP [Page 5] | The answer is fully responsive. | This PPF is deficient because the address for Terry Thornsberry is not listed. Although it is conceivable that Thornsberry's address is the same as Dr. Lida Oxnhard's address, there is no reason to make this leap (and the information is not otherwise provided in the PPF). |
| | **Your current family and/or primary care physician?** | Lida Oxnard, M.D., 809 Morton Avenue, Bartstown, KY 40004 (which is the same address for Nurse at Dr. Oxnard's office). [Page 8] | | |

4

| | | | |
|---|---|---|---|
| *Norma Lachance v. Merck*, 2:05-cv-5384 | **Who prescribed VIOXX for you?** | Dr. Michael Cucka, Dr. Richard Guerriere. [Page 5] | The answer is fully responsive. |
| | **To the best of your ability, identify each of your primary care physicians for the last ten (10) years?** | Dr. Richard Guerriere, ProHealth Physicians, 625 Clark Avenue, Bristol, CT 06010; Dr. C. D. Collins, Primary Care Physicians of Central CT, 7 N. Washington St., Plainville, CT [Page 10] | This PPF was deemed deficient for prescriber name (i.e., full first name for prescriber C.D. Collins was not provided, and full first name is required to obtain the most accurate and reliable results from Merck's systems). At the request of Eben Flaster and after a criteria change in the treatment of prescriber names, this PPF was deemed sufficient (despite a known LNFS service deficiency). The MPF is set to be served on 9/2/2006, which is 90 days from the date plaintiff's counsel confirmed that "C.D. Collins" was the full and complete first name of this physician. |
| | **Each physician or health care provider from whom you received treatment in the last ten (10) years?** | Dr. Michael Cucka, Bristol Orthopaedics 25 Newell Rd., Suite C14, Bristol, CT 06010 [Page 11] | |

5

| | Who prescribed VIOXX for you? | | |
|---|---|---|---|
| William Maas v. Merck, 2:06-cv-00325 | Who prescribed VIOXX for you? | R. Bruce Leppink, Minn Health Family Physicians 3220 Bellaire Avenue, Suite 2, White Bear Lake, MN 55110 [Page 5] | The answer is fully responsive. Merck refused to produce this MPF for months and only recently produced it and as set for on Appendix "B" its MPF was inadequate and deficient. | This PPF was deemed deficient for prescriber address for a Dr. Robert Wilson. After re-review of the PPF, the analysis of this PPF was found to be in error because Dr. Wilson's address at a Medical Center was located elsewhere within the four corners of the PPF. Importantly, as a result of the error, this MPF was processed on an expedited basis and has already been produced to counsel. |
| Althea Newman v. Merck, 2:05-cv-05389 | Who prescribed VIOXX for you? Prescriber Address? | Dr. J. Mahoney and other providers at VAMC. [Page 5] VA Medical Center, 1300 Douglas Circle, Key West, FL 33040 [Page 10] | The answer is fully responsive. | This PPF was deemed deficient due to lack of prescriber's full name; only first initial was provided. Further, the PPF states that plaintiff was prescribed Vioxx by "other providers at VAMC," but those physicians are also not identified. |

6

| | | | |
|---|---|---|---|
| *Jimmy Munn v. Merck*, 2:06-cv-00440 | **Prescriber Address?**<br><br>**If you received any samples for VIOXX, state who provide [sic] them, what dosage, how many and when they were provided?** | Bill Walton, DO, Melanie Wallace, MD, Terry Miller, 903 Mississippi Drive, Tupelo, MS 38804 [Page 10]<br><br>I believe Amy Forrest, CFNP gave me about a one month supply of samples of Vioxx 25 mg in or about April 2002. I may have also received samples from the other providers who prescribed Vioxx for me, but I do not recall. [Page 5] | The answer is fully responsive but Merck delayed producing the MPF for months and the MPF produced was deficient. See Appendix "B." | This PPF states that there are four prescribers of Vioxx (Bill Walton, Amy Forrest, Angel Harbin, and Paul White), however, plaintiff does not provide us with an address for Amy Forrest and Angel Harbin; Harbin and Forrest are CFNPs, but we cannot determine from the four corners of the PPF whether or not Harbin and Forrest are affiliated with Drs. Walton or White.<br><br>As for the representation by plaintiff's counsel that this MPF was produced and is deficient, Merck has no record of processing or producing an MPF in this case (for reasons stated above), and Appendix "B" was not provided. |
| *David Beeman v. Merck*, 2:06-cv-00441 | **If you received any samples for VIOXX, state who provide them, what dosage, how many and when they were provided?** | I was given samples of 25 mg and perhaps 12.5 mg Vioxx by Kaiser Permanente Clinic – I don't recall the exact person who gave me samples. I was given samples throughout 2001 and 2002 but I could not pinpoint specific dates. [Page 5] | The answer is fully responsive. | This PPF was deemed deficient because Merck has not yet received a supplement (or other representation by counsel) providing a name or statement that plaintiff cannot identify this sample provider. Had a supplement been provided or representation by counsel given, Merck would have processed this MPF without giving plaintiff documents relating to a sample provider. |

7