FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 14  AM 7: 49

LORETTA G. WHYTE
CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT J. BENOIT, JR., INDIVIDUALLY, AND ON BEHALF OF JOEL MICHELE SHUMACHER-BENOIT, DECEASED<br>Plaintiff | § § § § § § | |
| VS. | § § | Civil Action No. 05-6040 |
| MERCK & CO., INC.<br>Defendant | § § § | |

| | | |
|---|---|---|
| IN RE: VIOXX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § | MDL NO. 1657<br><br>SECTION L |
| THIS DOCUMENT RELATES TO:<br>ROBERT J. BENOIT, JR., INDIVIUALLY, AND ON BEHALF OF JOEL MICHELE SCHUMACHER-BENOIT, DECEASED | § § § § § § § | JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE DANIEL E. KNOWLES, III |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW, ROBERT J. BENOIT, JR., INDIVIDUALLY AND ON BEHALF OF

JOEL MICHELE SCHUMACHER-BENOIT, DECEASED, hereinafter referred to as Plaintiff,

and complains of the following multiple causes of action against Defendant, MERCK & CO.,

INC., and for causes of action would show the Court and Jury as follows:

Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No_____

## I.   PARTIES

2.      ROBERT J. BENOIT, JR. is an individual who is a citizen of the state of Louisiana and is the Representative of the Estate of JOEL MICHELE SCHUMACHER-BENOIT. JOEL MICHELE SCHUMACHER-BENOIT was a citizen of the state of Louisiana at the time of her death.   ROBERT J. BENOIT, JR., as the husband of JOEL MICHELE SCHUMACHER-BENOIT, files this suit on behalf of all statutory beneficiaries of JOEL MICHELE SCHUMACHER-BENOIT, including minor child ABIGAIL RAE SCHUMACHER-BENOIT (daughter). *See* La. C.C. Art. 2315.1 - 2315.2.

3.      Defendant, MERCK & CO., INC., is a New Jersey corporation, with its principal place of business in New Jersey.   Plaintiff intends to sue that group or association doing business as Merck, who manufactured, promoted, sold and distributed the drug Vioxx to pharmacies and physicians worldwide and in the United States.   Plaintiff intends to sue the private corporation, individual unincorporated association and/or partnerships doing business under the name of "Merck", which manufactured, sold and was responsible for the marketing of Vioxx in the United States.   Plaintiff reserves the right, if needed, to add or amend any formal names to properly reflect the correct party.   At all times relevant hereto, Merck was registered to do and was doing business in the State of Texas.   Merck may be served with citation by serving its registered agent, C.T. Corporation System, at 350 North St. Paul Street, Dallas, Texas 75201.

## II.   JURISDICTION

4.      This court has jurisdiction over this lawsuit under 28 USC § 1332 (a) (1) because the plaintiff and the defendant are citizens of different state's and the amount in controversy exceeds $75.000.00 excluding interest and costs.

## III.   FACTS

5.      Plaintiff maintains that the pharmaceutical drug Vioxx is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked the proper warnings as to the dangers associated with its ingestion.

6.      At all times relevant and material hereto, Merck acted and gained knowledge itself and by and through its various agents, servants, employees, and/or ostensible agents.

7.      Decedent was prescribed and ingested the drug Vioxx as directed by a physician in 2004.

8.      Decedent suffered physical injury, death and damages arising from the prescription of Vioxx, including, but not limited to, heart attack, stroke, pulmonary embolism, and/or some other cardiovascular event or condition.

9.      Plaintiff would also show that nothing the Decedent did contributed in any way to Decedent's injuries and damages.

10.     Decedent was using Vioxx in the manner for which it was intended and/or in a reasonably foreseeable manner.  Decedent was not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx.

11.     Plaintiff would show that all injuries and damages were proximately caused by the Defendant's conduct more fully described below.

## IV.   THEORIES OF RECOVERY

### A.   Count I: Strict Products Liability

12.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

13.     Merck created, manufactured, designed, tested, labeled, packaged, marketed, sold, advertised, distributed, supplied and/or placed into the stream of commerce the dangerous drug Vioxx described herein, which Merck distributed throughout the world, including the United States and Louisiana.  Under the theory of Strict Products Liability, the Plaintiff would show that the drug Vioxx was defectively designed, marketed, and manufactured and was unsafe for its intended purposes at the time the drug left the control of Merck and was sold.

14.     Decedent was using Vioxx in the manner for which it was intended and/or in a reasonably foreseeable manner.  Decedent was not aware of and reasonably could not have discovered the dangerous nature of Vioxx.

15.     The drug Vioxx was unaccompanied by proper warnings regarding the injuries associated with the use of it and the comparative severity and duration of such injuries.  The warnings given did not accurately reflect the symptoms, scope, frequency, or severity of such injuries.  Additionally, or in the alternative, Merck failed to perform adequate testing in that adequate testing would have shown that Vioxx possessed undisclosed risks of potentially serious. injuries.  Full and proper warnings accurately and fully reflecting the symptoms, scope, frequency, and severity of the harm should have been made with respect to the use of this drug.

16.     Merck knew, or should have known, that Vioxx was a dangerously defective drug that posed unacceptable risks of serious injury, which risks were unknown and unknowable by the Decedent.

17.     Vioxx was defective due to inadequate warnings or instructions because, after Merck knew or should have known of the risk of serious injury from Vioxx use, it failed to provide adequate warnings to Decedent and/or Decedent 's physicians, and Merck continued to aggressively promote the dangerously defective product.  Merck failed to provide adequate

warnings to Decedent and/or Decedent 's physicians, and Merck continued to aggressively promote the dangerously defective product.   Merck failed to give warnings (1) that could reasonably be expected to catch the attention of a reasonably prudent person, in the circumstances that the product was used; (2) that were comprehensible to the average user; and (3) that conveyed a fair indication of the nature and extent of the danger.   The failure to give these warnings rendered Vioxx dangerous to an extent beyond that which would be contemplated by the ordinary users of the product with ordinary knowledge common to the community.

18.     The drug Vioxx was defective in design or formulation in this, when it left the hands of the manufacturer and/or distributor, the foreseeable risks far exceeded the benefits associated with the design or formulation.  Alternatively, the drug Vioxx was defective in design or formulation, in that, when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect, and it was more dangerous than other drugs of the same class as Vioxx.

19.     Merck is liable under the theory of Strict Product Liability as set forth in Section 402A of the Restatement of Torts 2d and under Louisiana Strict Product Liability Law, La. R.S. 9:2800.51 *et. seq.*  Merck was at all times material hereto engaged in the business of designing, manufacturing, distributing, marketing, promoting, and placing into the stream of commerce the drug.  Merck is in the business of selling Vioxx with the expectation that such product would reach the user without substantial change in the condition in which it was sold.  The drug Vioxx reached the ultimate users without substantial change in the condition in which it was sold.

## B.    Count II: Negligence

20.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

21.    Merck was negligent in designing, manufacturing, marketing, promoting, distributing and placing into the stream of commerce, a product that they knew or should have known was not safe. Merck was also negligent in the post-market safety surveillance of such drugs, and negligently failed to detect and warn about the increased frequency of adverse events associated with such drug. Merck negligently failed to adequately warn Decedent and/or Decedent 's physicians about the adverse events associated with Vioxx. Further, Merck failed to warn the Decedent and/or Decedent 's physicians or the public that Vioxx was not safe. Merck assumed a duty to warn the Decedent directly, because Merck voluntarily contacted entities other than the Decedent 's physicians when marketing and aggressively promoting this drug. Further, Merck failed to first determine that the product was safe for all applicable foreseeable uses.

## C.    Count III: Misrepresentation and Fraud

22.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

23.    Merck, through advertising, labeling, and other communications, made misrepresentations to physicians and the public, including the Decedent and/or Decedent 's physicians, about the safety and efficacy of Vioxx for controlling pain caused by inflammation. Physicians and their patients, including the Decedent and Decedent's physicians, justifiably relied on Merck's misrepresentations and were harmed as a result. Plaintiff is entitled to recover

damages since such damages were produced by Merck's misrepresentations.  See Restatement (Second) of Torts §402B.

24.     Further, Merck, through advertising, labeling, promotion, and other communications intentionally made misrepresentations to physicians and the public, including the Decedent and/or Decedent 's physicians, about the safety and efficacy of Vioxx for controlling pain.  From its inception until its withdrawal, the labeling for Vioxx and other representations of Merck were inaccurate and misleading.

25.     Plaintiff would also show that Merck knew, or should have known, that Vioxx was not as effective as competing anti-inflammatory pain medications, but Merck chose to disregard, downplay, and conceal that information.  This conduct constitutes an intentional and/or negligent misrepresentation and concealment.

26.     Physicians and their patients, including the Decedent and/or Decedent 's physicians, relied on Merck's fraudulent misrepresentations, and Decedent was harmed as a result.  Further, because Merck's conduct was willful, reckless, intentional and maliciously fraudulent, Plaintiff is entitled to an award of exemplary damages in order to punish such conduct and to deter such conduct in the future.

**D.     Count IV: Civil Conspiracy**

27.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

28.     Merck committed civil conspiracy in that fiduciaries of Merck knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon Physicians, pharmacists and insurance companies for the purpose of these

entities continued to use the drug Vioxx, to switch patients from other and more effective anti-inflammatory drugs to Vioxx, and to convince their patients and others of the safety and effectiveness of Vioxx.

### E.  Count V: Breach of Implied Warranty of Merchantability

29.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

30.   Defendant's Vioxx was not of merchantable quality and not fit for the ordinary purposes for which such a product is used.

31.   At the time Merck marketed, sold and distributed Vioxx for use by Decedent, Merck impliedly warranted the product to be fit for a particular purpose and for the ordinary purpose for which such product was to be used, i.e., the treatment of arthritis pain and acute pain. Merck had reason to know of the particular purpose for which Vioxx was required.  Decedent and/or Decedent 's physicians reasonably relied upon the skill and judgment of Defendant to select or furnish a suitable product that was of merchantable quality and safe for its intended use.

32.   As a direct and proximate result of Defendant's defective and unreasonably dangerous product Vioxx and the breach of these implied warranty of merchantability, Decedent was injured.


### F.  Count VI: Breach of the Implied Warranty of Fitness for a Particular Purpose

33.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

34.     Defendant's Vioxx was not fit for its particular purpose of safely treating arthritis pain or acute pain.

35.     Defendant Merck actually and/or constructively knew of the purposes to which its Vioxx was to be used.

36.     Decedent relied upon Defendant to furnish Vioxx in a condition suitable for its particular purpose.

37.     As a direct and proximate result of Defendant's defective and unreasonably dangerous product Vioxx and its breach of implied warranty of fitness for a particular purpose, Plaintiff was harmed as alleged herein.

G.      **Count VII: Breach of Express Warranty**

38.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

39.     Merck expressly warranted to Decedent and/or Decedent 's physicians that Vioxx was safe and effective when Merck knew the product had never been proven as safe and effective, when Merck knew that substantial questions existed with respect to the safety and efficacy of this product, and when, in fact, the product was not safe or effective for all foreseeable uses.

H.      **Count VIII: Gross Negligence/Malice**

40.     Plaintiff also alleges that the acts or omissions of Merck, whether taken singularly or in combination with others, constitute gross negligence/malice that proximately caused the injuries to Decedent.   Merck's conduct was more than momentary thoughtlessness or mere inadvertence, but it amounted to such an entire want of care so as to constitute gross negligence,

malice. Thus, Plaintiff seeks exemplary damages in an amount that would punish Merck for its unconscionable conduct and which would deter other similarly situated drug manufacturers, distributors, and promoters from engaging in such misconduct in the future.

### I.    Count IX: Wrongful Death

41.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

42.    The acts or omissions of Merck led to the wrongful death of JOEL MICHELE SCHUMACHER-BENOIT. La. C.C. Art. 2315.2 (2006).

43.    ROBERT J. BENOIT, JR., as the husband of JOEL MICHELE BENOIT-SCHUMACHER, and ABIGAIL RAE SCHUMACHER-BENOIT as the daughter of JOEL MICHELE-BENOIT SCHUMACHER are members of the class of persons who may bring a Wrongful Death cause of action in Louisiana. La. C.C. Art. 2315.2 (A)(1) (2006).

### J.    Count X: Survival

44.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein and, additionally or in the alternative, if same be necessary, alleges as follows:

45.    The acts or omissions of Merck led to damages to JOEL MICHELE SCHUMACHER-BENOIT, including physical pain and suffering, which survive her death under Louisiana law. La. C.C. Art. 2315.1 (2006).

46.    ROBERT J. BENOIT, JR., as the husband of JOEL MICHELE SCHUMACHER-BENOIT, and ABIGAIL RAE SCHUMACHER-BENOIT as the daughter of JOEL MICHELE

10

SCHUMACHER-BENOIT, are members of the class of persons who may bring a Survival cause of action in Louisiana.  La. C.C. Art. 2315.1 (A)(1) (2006).

## V.    AGENCY

47.    Whenever in this petition it is alleged that Merck did any act or thing, it is meant that it performed or participated in such act or thing, or that such act was performed by the officers, agents, employees or representatives (including, but not limited to "detail men" and salespersons) of Merck.  In each instance, the officers, agents, employees or representatives of Merck were then authorized to and did in fact act and/or make representations on behalf of Merck, or otherwise acted under the guidance and direction of Merck and Merck ratified all such acts.

## VI.    ALLEGATIONS AND CAUSES OF ACTION IN THE ALTERNATIVE

48.    All factual allegations and/or causes alleged by Plaintiff herein are made in the alternative.

## VII.    CAUSATION

49.    Each of the aforementioned acts, omissions, negligence, gross negligence, malice, and/or knowing injury to the elderly, breaches of warranty, and/or defective products of Merck was a proximate and/or a producing cause of the injuries to Decedent.

## VIII.    DAMAGES

50.    As a result of the incident made the basis of this lawsuit, described in the preceding paragraphs, and the negligence of Defendant, Decedent sustained significant injuries and damages.

51.    Due to the gravity of the injuries stated above, Decedent had to seek reasonable and necessary medical care and attention, and this caused Decedent to incur reasonable and

11

necessary medical expenses for the treatment of Decedent's injuries.

52.     Further, Decedent suffered mental anguish with physical manifestations as a result of this incident.

53.     Further, Decedent has suffered physical impairment as a result of this incident.

54.     Further, Decedent suffered lost wages and a loss of earning capacity in the past.

55.     Further, for the Wrongful Death of JOEL MICHELE SCHUMACHER-BENOIT, plaintiffs seeks damages for the loss of love, affection, services, support, society, and grief, as well as loss of inheritance.

56.     Further, Plaintiff seeks Survival damages for loss of earnings from the time of injury to death, general damages, including the victim's conscious pain and suffering, medical expenses, and funeral and burial expenses.

57.     Damages in this case are above the minimum jurisdictional limits of this Court.

58.     Plaintiff seeks reasonable attorney's fees, to the extent allowed, and costs.

59.     Plaintiff also seeks exemplary and/or punitive damages from Defendant Merck, as allowed by law, to set an example and to prevent wrongful conduct in the future.

60.     Plaintiff seeks both prejudgment and post-judgment interest as allowed by law, for all costs of court, actual damages, compensatory damages, exemplary damages, punitive damages and all other relief, both in law and in equity, to which Plaintiff may be entitled.

## IX.     JURY DEMAND

61.     Plaintiff respectfully demands a trial by jury.

FOR THESE REASONS, Plaintiff requests that the Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff have:

    a.  judgment in Plaintiff's favor and against the Defendant, Merck;

b.  all damages as fully described in the petition above, including, but not limited to, physical pain and mental anguish, physical disfigurement, physical impairment, loss of earning capacity, lost wages, the cost of reasonable medical care, loss of love, affection, services, support, society, and grief, loss of inheritance, loss of earnings from the time of injury to death, general damages, and funeral and burial expenses;

c.  exemplary and punitive damages in an amount in excess of the jurisdictional limit;

d.  reasonable attorney's fees, to the extent allowed by law, and expenses;

e.  all elements of interest, including, but not limited to, pre-judgment and post-judgment interest in the maximum amount as allowed by law;

f.  costs of court; and

g.  such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**THE O'QUINN LAW FIRM**

JOHN R. LEACH, III (Federal No: 6929)
MICHAEL J. LOWENBERG (Federal No: 22584)
ANTHONY E. FARAH (Federal No: 23059)
440 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:  713-223-1000
Facsimile:  713-223-4870

**ATTORNEYS FOR PLAINTIFF**

13

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's First Amended Original Complaint has been served on Liaison Counsel, as listed below, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by U.S. Mail on this _12_ day of September, 2006.

**VIA U.S. MAIL**
Russ Herman
PLAINTIFF'S LIAISON COUNSEL
HERMAN, HERMAN, KATZ & COTLAR, LLP
201 St. Charles Avenue, Suite 4310
New Orleans, LA 70170
Email: rherman@hhkc.com

**VIA U.S. MAIL**
Philip Wittman
DEFENDANT'S LIAISON COUNSEL
STONE PIGMAN WALTHER WITTMANN, LLC
546 Carondelet St.
New Orleans, LA 70130
Email: pwittmann@stonepigman.com

**VIA U.S. MAIL**
Thomas P. Owen, Jr.
DEFENDANT'S STEERING COMMITTEE
STANLEY, FLANAGAN & REUTER, L.L.C.
Counselors at Law
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Email: tpo@sfr-lawfirm.com

JOHN R. LEACH, III  (Federal No: 6929)
MICHAEL J. LOWENBERG (Federal No: 22584)
ANTHONY E. FARAH (Federal No: 23059)

14