UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE |
| **CHARLES L. MASON**, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF LAURA PLUNKETT, PH.D.**

**(EXPERT CHALLENGE NO. 4)**

Merck moves to exclude the testimony of Laura Plunkett, Ph.D., pursuant to Federal Rule of Evidence 702 and *Daubert*. Dr. Plunkett's testimony should be excluded in its entirety for four reasons. First, without the requisite knowledge and expertise, Dr. Plunkett opines as to the adequacy of Merck's warning. Second, Dr. Plunkett improperly opines on Merck's state of mind and motives in connection with its interactions with the FDA, subjects on which Dr. Plunkett has no knowledge or expertise and which are properly within the province of the jury. Third, Dr. Plunkett offers improper testimony about her judgment of the FDA's decisions with respect to Vioxx® labeling, despite the fact that such testimony is preempted by federal law. Finally, Dr. Plunkett is not qualified to offer opinions on general causation and, in fact, presents opinions that are entirely speculative and without scientific support.

II. **LEGAL STANDARD.**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Motion to Exclude the Testimony of Isaac Wiener, M.D., filed concurrently herewith and incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the relevant requirements of the Federal Rules of Evidence, including Rules 401 and 403.

III. **DR. PLUNKETT MAY NOT TESTIFY THAT MERCK'S WARNINGS WERE INADEQUATE.**

Dr. Plunkett should not be permitted to testify about the adequacy of Merck's warning labels for two reasons. First, as a number of courts have already concluded, she does not have the requisite knowledge, training, or expertise to opine on the subject of labeling. Second, Dr. Plunkett's unsupported personal opinions on what she would have done with the warning labels are not helpful testimony to a jury and are thus inadmissible.

A. **Dr. Plunkett Is Not Qualified To Opine About Merck's Warnings.**

Under Rule 702, plaintiff must show that Dr. Plunkett has the requisite "scientific, technical, or other specialized knowledge" to opine on the issue of Merck's warning labels. FED. R. EVID. 702. Plaintiff cannot meet this burden. Dr. Plunkett is a pharmacologist and toxicologist by training and experience. She is not a medical doctor. She has no expertise in the labeling, marketing, or testing of prescription drugs. In fact, a number of different courts have determined in other litigation that Dr. Plunkett lacks the qualifications necessary to opine on prescription drug labeling. Dr. Plunkett admitted to two such decisions in her June 1, 2006 deposition. (June 1, 2006 Deposition of Dr. Laura Plunkett ("Plunkett 6/1/06 Dep.") at 261:10-

2

262:1 ("Q: So, as far as you know, there are two Courts that have prohibited you from giving opinions regarding the adequacy of labeling? Is that right? A: Two different judges that I know of, yes."), attached hereto as Ex. A.)  In January 2004, Judge Tracy Christopher of the District Court of Harris County, Texas excluded Dr. Plunkett's testimony on labeling in a Baycol trial due to her lack of qualifications. *In re Texas Second Region Baycol Litigation*, Master File No. 0247408, January 26, 2004 Order, attached hereto as Ex. B.  Similarly, when she was presented as an expert in another Baycol case in Mississippi, the trial judge refused to allow her to testify about labeling because she is not qualified. *Hardy v. Bayer Corp., et. al.,* Case No. 2001-6900-COV, In the County Court of Hinds County, Mississippi, attached hereto as Ex. C.  Most recently, on June 26, 2006, Judge Victoria Chaney of the Superior Court of the State of California prohibited Dr. Plunkett from proffering her opinion on the adequacy of Merck's warnings due to her lack of expertise in this area.  (June 26, 2006 *Grossberg v. Merck* Tr. at 611:24-612:2, attached hereto as Ex. D.)

Those courts correctly held that Dr. Plunkett has no such expertise.  Although she claims to have "worked on a variety of projects dealing with the regulation of products by the FDA" (Expert Statement of Laura M. Plunkett, Ph.D., DABT, August 10, 2006 ("Plunkett Rpt.") at 2, attached hereto as Ex. E), she admitted in her deposition that she has no experience with prescription drug labeling outside the context of litigation:

> Q: All right.  So am I correct that you've never, either at FDA, consultant to FDA, as an employee or consultant to a pharmaceutical company, ever worked on a prescription drug labeling that's associated with an approved product?
>
> A: At this point in time, that would be – well, yes, that would be correct, except in a litigation context.  But yes, that's right.

(Plunkett 6/1/06 Dep. at 261:2-9.)

Because Dr. Plunkett is not qualified to testify on the issue of pharmaceutical drug

labeling, her testimony should be excluded.

### B. Dr. Plunkett's Personal Opinions On The Adequacy Of Merck's Labels Are Inadmissible.

An expert's personal opinions that are not grounded in any established standard should be excluded. *See, e.g., Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (excluding an expert's testimony because "no understandable scientific basis is stated. Personal opinion, not science, is testifying here"); *see also Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (holding that "conclusions based only on personal opinion and experience do not suffice" to establish the reliability or utility of expert testimony). But Dr. Plunkett offers exactly that with respect to Merck's labels. When asked to opine on the FDA's course of action regarding Merck's warnings in her June 1, 2006 deposition, Dr. Plunkett repeatedly said that "I would have done it differently." (*See, e.g.,* Plunkett 6/1/06 Dep. at 277:3-21.) Beyond this conclusory statement, however, she offers nothing. She does not explain the basis for this opinion, the standard against which she measures the warning labels, or the methodology she used to arrive at her opinion. This type of testimony does not assist the jury in making any factual determinations about Merck's labels. As such, it is inadmissible under Rule 702 and must be excluded.

### IV. THE COURT SHOULD NOT PERMIT DR. PLUNKETT TO OPINE ON MERCK'S STATE OF MIND OR MOTIVE.

Dr. Plunkett should also not be permitted to offer her views on Merck's state of mind and intent. For example, Dr. Plunkett testified in her June 1, 2006 deposition that Merck was intentionally trying to deceive the FDA with respect to labeling:

> Q: I understand that you believe that the labeling Merck suggested was misleading, but just so I'm clear, you're not giving the opinion that Merck was trying to be misleading in its negotiation with FDA regarding the content of the Vioxx label, right?

4

> A: I certainly am inferring that their attempt was to be misleading. That's my inference. I don't have a piece of paper where I can state that one of them swore that was their intent, but I'm just saying from my perspective, that is what is going on. From reading the internal documents that I see, the discussions they had about not wanting to accept certain changes or this and that in the labeling and then the way it was worded, to me, it's very misleading. As a scientist looking at what their results were, I don't see how they came up with that interpretation of the data. So that's misleading.

(Plunkett 6/1/06 Dep. at 272:12-273:5.)

This testimony is inadmissible because Dr. Plunkett's training as a pharmacologist and toxicologist does not render her qualified or convey "special" expertise in divining a company's knowledge, motives, or state of mind. As the court in another failure-to-warn case against a pharmaceutical manufacturer reasoned when rejecting similar expert testimony regarding corporate intent and state of mind:

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

*In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (rejecting expert testimony "on the intent, motives or states of mind of corporations, regulatory agencies and others" because they "have no basis in any relevant body of knowledge or expertise").[1]

---

[1] In addition to having no expertise in this area, Dr. Plunkett bases her opinions as to Merck's state of mind exclusively on a review of selected internal Merck documents produced in this litigation (Plunkett 6/1/06 Dep. at 273:6-274:25) – a review that plainly omitted key documents. For example, Dr. Plunkett has no recollection of reviewing the following documents: (i) the pharmacology section that Merck prepared with regard to the Vioxx New Drug Application ("NDA") (*id.* at 239:17-23); (ii) the toxicology section of the Vioxx NDA (*id.* at 239:24-240:1); (iii) the Integrated Summary of Safety (*id.* at 240:16-23); (iv) the Integrated Summary of

(*footnote continued next page*)

5

Moreover, the jury is fully capable of deciding whether the total evidence – including the documents Dr. Plunkett reviewed and those she did not review – supports plaintiff's claims about what Merck knew and intended. *See In re Rezulin*, 309 F. Supp. 2d at 546 (excluding expert testimony as to corporate state of mind because otherwise experts would "improperly . . . assume the role of advocates for the plaintiffs' case"); *see also In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d at 603, 616 (E.D. La. 2003) ("A court should not admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Tanner v. Westbrook*, 174 F.3d 547, 548 (5th Cir. 1999). To the extent that evaluating the evidence requires a credibility determination about Merck, it is especially important that judgment be reserved for the jury and not supplanted by a paid "expert." *See Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (expert accountant was not "specially equip[ped] . . . to divine what [defendant] truly believed" about reliability of financial reports; any opinions offered in that regard are "at worst, rank speculation" and at best, "credibility choices that are within the province of the jury").

In addition, this type of evidence would confuse the factual, legal, and technical issues for the jury. Permitting Dr. Plunkett to give "expert" opinions on Merck's state of mind would not assist the jury in deciding fact issues but, rather, would provide plaintiff with an advocate mouthpiece on the witness stand. The obvious danger is that the jury would attribute undue credibility to an alleged expert opinion from the witness stand. *See Eymard v. Pan Am World Airways (In re Air Crash Disaster at New Orleans, La.)*, 795 F.2d 1230, 1233 (5th Cir. 1986)

---

Efficacy (*id.* at 241:4-7); and (v) the adverse event reporting submissions Merck submitted to the FDA (*id.* at 242:12-16). And, although Dr. Plunkett reviewed the September 2001 DDMAC Warning letter from the FDA to Merck (which she cites in her expert report), she could not recall whether she ever reviewed the FDA's resulting letter closing the matter. (*Id.* at 234:6-235:5.)

6

(holding that expert testimony should be excluded if it fails to "bring to the jury more than the lawyers can offer in argument").

A similar attempt by a plaintiff to introduce experts to simply parrot his view of the world was rejected by the court in a recent pharmaceutical product liability multi-district litigation case, where the district court noted that plaintiffs were increasingly attempting to twist the Federal Rules of Evidence to allow expert witnesses to be "oath helpers":

> A practice reminiscent of wager of law has become fashionable among some well-financed litigants – the engagement of "expert" witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit. These "experts" thus are loosely analogous to compurgators, also known as oath helpers, in that they lend their credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue.

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 538. The Court should exclude this type of testimony here as well.

### V. DR. PLUNKETT'S OPINIONS ON THE FDA'S DECISIONS WITH RESPECT TO VIOXX LABELING ARE PREEMPTED BY FEDERAL LAW.

To the extent that Dr. Plunkett plans to testify about the inadequacy of Merck's interactions with the FDA or the FDA's decisions with respect to VIOXX, her testimony would be relevant only to a claim preempted by federal law. The U.S. Supreme Court has held that claims of fraud on the FDA – which is essentially what Dr. Plunkett's expected testimony implies – are preempted by the FDCA. *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350, 353 (2001). Thus, her testimony would be irrelevant.

It is clear from her deposition testimony that Dr. Plunkett seeks to judge Merck's disclosures and interactions with the FDA – disclosures and interactions that the FDA itself has never questioned. (Plunkett 6/1/06 Dep. at 272:12-273:5 ("Q: I understand that you believe that the labeling Merck suggested was misleading, but just so I'm clear, you're not giving the opinion

7

that Merck was trying to be misleading in its negotiation with FDA regarding the content of the Vioxx label, right?  A: I certainly am inferring that their attempt was to be misleading.  That's my inference. I don't have a piece of paper where I can state that one of them swore that was their intent, but I'm just saying from my perspective, that is what is going on.").) The Supreme Court in *Buckman* specifically foreclosed such evidence, cautioning that companies should not have to "fear that their disclosures to the FDA, although deemed appropriate by the Administration, will later be judged insufficient in state court."  *See Buckman Co.*, 531 U.S. at 351.  Such fear, the Supreme Court explained, could lead to results undesired by the regulatory scheme.  For instance, it might place additional burdens on the FDA, which would likely face a deluge of unnecessary disclosures; it might discourage pharmaceutical companies from seeking approval of helpful uses of medical devices or drugs; and, in general, it could skew the balance sought by the FDCA.  *See id.* at 348, 350-51.

Furthermore, based on the preemption principles articulated in *Buckman*, Dr. Plunkett's testimony criticizing the FDA's actions in connection with its regulation of Vioxx is irrelevant:

> Q: Your expert report, Exhibit 3, does not contain any criticisms regarding the adequacy of FDA's efforts between May 1999 and September 2004 to monitor the safety of Vioxx, correct?
>
> A: Not specifically, but certainly I would say that – my overall opinion, that I believe that the risks outweigh the benefits for the drug and did so earlier than the drug was removed from the market, but certainly that's an indirect criticism of FDA, I guess.  But I have not tried to put myself in the position of FDA and state that FDA was – did this wrong or that wrong at any particular point in time.
>
> Q: You have no criticisms in your expert report regarding FDA's multiple approvals of Vioxx as safe and effective between May 1999 and August 2004, correct?
>
> A: Again, no specific criticisms, but if you read my report, I think it's clear that I disagree with the assessment that – I would be disagreeing with the assessment based upon the different points in time where I believe that

> there were issues raised about the safety of the drug that weren't addressed through either labeling or through the approval of the drug.

(Plunkett 6/1/06 Dep. at 245:22-246:22.)

Dr. Plunkett should not be permitted to supplant the FDA's determinations about the adequacy of the information Merck disclosed about Vioxx. Any testimony suggesting that Merck misled or concealed information from the FDA, or that the FDA's actions were inappropriate, makes a preempted claim of fraud on the FDA and therefore is irrelevant.

## VI.  DR. PLUNKETT SHOULD NOT BE PERMITTED TO RENDER OPINIONS ON GENERAL CAUSATION.

Dr. Plunkett is not a medical doctor and has virtually no experience with Vioxx or COX-2 inhibitors.[2] She should not be permitted to offer opinions regarding causation. To the extent

---

[2] Among other things, she admitted the following facts in her depositions:

- She is not a medical doctor (Plunkett 6/1/06 Dep. at 40:8-10) and has no expertise in the area of clinical cardiovascular medicine (*id.* at 40:18-23).

- She has never done any clinical or laboratory research about COX-2 inhibitor drugs. (*Id.* at 34:1-4.)

- Other than assisting a fellow student with a project 23 years ago, she has never done any laboratory research on NSAIDs. (*Id.* at 27:6-28:9.)

- She has never published an article, whether peer-reviewed or not, that discusses COX-2 inhibitors. (*Id.* at 33:12-18; June 5, 2006 Deposition of Dr. Laura Plunkett ("Plunkett 6/5/06 Dep.") at 13:10-15, attached hereto as Ex. F.)

- Other than the report she prepared in connection with the present litigation, she has no recollection of writing any paper, whether or not published, that discusses COX-2 inhibitors. (Plunkett 6/1/06 Dep. at 33:19-25.)

Additionally, plaintiff cannot seriously argue that Dr. Plunkett has the necessary qualifications to offer general causation opinions merely because she reviewed selected literature provided by plaintiff's counsel. Not only is this literature one-sided, but Dr. Plunkett's so-called "research" on the cardiovascular risks allegedly associated with Vioxx appears to be woefully inadequate. Although Dr. Plunkett, at her June 1, 2006 deposition, produced an 81-page list of materials that she allegedly relied on in forming her opinion (*id.* at 48:9-49:6, 65:23-66:21), she admitted that she reviewed the majority of the documents only in a "cursory fashion" (*id.* at 66:13-21). The

(*footnote continued next page*)

that she attempts to opine on the issue, however, her opinion should be excluded because she has not done the requisite study and work necessary to create a reliable basis for her causation testimony. Her general causation opinions are pure speculation, relying only on unproven assumptions and a selected subset of scientific literature that does not support her hypothesis. Such testimony is inadmissible.

### A. Dr. Plunkett Cannot Establish The Mechanism By Which Vioxx Supposedly Causes Plaque Ruptures.

Dr. Plunkett opines that Vioxx can contribute to plaque rupture through hypertension and edema. (*Id*. at 176:12-23.) This theory is not supported by any credible evidence. Dr. Plunkett's opinions in this regard are mere speculation and are thus insufficient to establish causation. In fact, there are no published studies establishing that Vioxx is capable of causing coronary plaque ruptures. Dr. Plunkett does not dispute this fundamental proposition.

> Q: Are you aware of any scientific proof that would establish that Vioxx carries any increased risk of plaque rupture above that which could be associated with the NSAID class?
>
> A: I don't know of any clinical trial that's tried to address that or human epidemiological study that's tried to address that, which is the most direct way to answer your question. So I don't know. Again, I can't answer that based on what I can remember off the top of my head, and I'd have to look at the clinical trials individually to see if somebody has tried to do some analysis like that, but I don't believe that they have.

(Plunkett 6/1/06 Dep. at 184:10-23.)

Because expert testimony is admissible *only* if it is supported by the record and is not speculative or conjectural, and because Dr. Plunkett concededly can cite to no data to support her opinion, plaintiff cannot establish general causation under her plaque rupture theory.

---

review must have been "cursory" indeed, because during her deposition Dr. Plunkett was unable to remember most of what she had researched. (*See, e.g., id*. at 148:3-14, 161:4-11, 301:1-7.)

### B. Dr. Plunkett Cannot Establish The Mechanism By Which Vioxx Supposedly Causes A Thrombotic Cardiovascular Event.

To establish causation in a pharmaceutical case, an expert must offer a "reliable explanation" of the physiological process by which the agent causes the alleged harm. *McClain*, 401 F.3d at 1253; *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999). When assessing the scientific reliability of expert testimony, therefore, courts should consider whether the expert has identified "the specific mechanism by which the drug supposedly causes the alleged disease." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 3d at 617. Indeed, without a reliable explanation of the specific mechanism by which Vioxx supposedly causes heart attacks, Dr. Plunkett cannot conclude to any degree of medical certainty that Vioxx has this effect, so her testimony must be excluded. *See Propulsid,* 261 F. Supp. 2d at 617; *see also McClain*, 401 F.3d at 1253 (excluding expert testimony where plaintiffs' experts have not "offered a reliable explanation of the physiological process by which Metabolife causes heart attacks and ischemic strokes, *i.e.,* establish general causation").

Here, Dr. Plunkett relies on what she believes to be the pharmacology of Vioxx to provide support for a hypothetical mechanism by which it could cause a CV event. (Plunkett Rpt. at 14 (opining that "the most likely mechanism [for the prothrombotic effects of Vioxx] . . . involves the basic pharmacological effects of Vioxx as a selective COX-2 inhibitor").) More specifically, Dr. Plunkett believes that Vioxx's inhibition of COX-2 creates an imbalance in the physiology of the vascular system by differentially suppressing the synthesis of thromboxane and prostacyclin, resulting in a prothrombotic state. (*Id.*) This theory is often referred to as the "FitzGerald hypothesis." (*See id.* (citing FitzGerald, G.A. 2004. *NEJM* 351:1709-1711 in support of the imbalance hypothesis.).)

11

There are two basic reasons why the FitzGerald hypothesis is scientifically unreliable for purposes of Rule 702.  First, there is no evidence that Vioxx inhibits prostacyclin in the vasculature as opposed to other parts of the body.  In fact, Dr. Plunkett was unable to identify *any* studies showing that Vioxx had such an effect:

> Q: Are you aware of any human data which has shown that inhibiting COX-2 reduces the level of prostacyclin locally in the blood vessels in or around the heart?
>
> . . .
>
> A: And I think I answered you that it would be unethical to do such a study, so no, I'm not aware.
>
> Q: Of any such data, right?
>
> A: That's what I just stated.
>
> Q: Are you aware of any animal data which has shown that COX-2 inhibition reduces the level of prostacyclin, in an animal model, locally in or around the heart?
>
> A: Again, I haven't seen such a study, but in that case, I think it would be very difficult to do such a study in order to be able to dissect it out at that level.  It's possible in a pig, you might be able to do that.

(Plunkett 6/1/06 Dep. at 119:23-120:17 (objections omitted).)

Moreover, it is undisputed that prostacyclin is produced in various areas of the body.  (*Id.* at 117:10-12.)  This fact is significant because, as Dr. Plunkett herself concedes, it is unlikely that the risk of thrombosis in the vasculature would be affected by the inhibition of prostacyclin that is produced elsewhere in the body.  (*Id.* at 118:9-18 ("Q: You would agree that if Vioxx produces prostacyclin, say, in the lungs, that that wouldn't necessarily result in an increased risk of blood clots in the coronary arteries, right?  A: Not as likely.  It's possible. . . I mean, they lay next to each other.  They communicate directly through blood vessels.  *But I would say the issue you're wanting to look at in the case of the heart attack would be the local effects, yes.*" (emphasis added)).)

12

Second, the FitzGerald hypothesis assumes that there is a critical balance between prostacyclin and thromboxane that is upset by Vioxx. But Dr. Plunkett has no evidence of the degree to which Vioxx supposedly upsets that balance. (*Id.* at 130:24-131:2 ("Q: What degree does Vioxx reduce prostacyclin in or around the heart? A: I don't think that study has been done either, so I don't think anybody can answer that.").) Without such evidence, Dr. Plunkett cannot opine to a reasonable degree of medical certainty that Vioxx is capable of causing a prothrombotic effect.[3]

### C. Dr. Plunkett Cannot Establish The Mechanism By Which Vioxx Supposedly Accelerates Atherogenesis.

Dr. Plunkett also testified that she believes that Vioxx accelerates atherogenesis. (Plunkett 6/1/06 Dep. at 145:22-146:21.) Dr. Plunkett should not be able to opine as to the legitimacy of this mechanism, however, because she has not demonstrated that it is supported by reliable scientific evidence. At her deposition, she was unable to remember or cite to a single

---

[3] In addition, the FDA confirmed as recently as April 2005 that the FitzGerald hypothesis is based on speculative and unproven science. After noting that the FitzGerald hypothesis is associated with an increased risk of adverse CV events, the FDA had this to say on the subject of the FitzGerald hypothesis, which it referred to as the "COX-2 hypothesis"

> It remains unclear, however, that it is the presence of, or the degree of, COX-2 selectivity that accounts for these observations, as some have hypothesized. As noted above, in various controlled clinical trials, COX-2 selective drugs have been indistinguishable from non-selective NSAIDS (*i.e.*, ibuprofen, diclofenac) in studies of substantial size and duration. Further, although on theoretical grounds the addition of low-dose aspirin (a COX-1 inhibitor) to a COX-2 selective drug should resolve any increased CV risk caused by COX-2 selectivity, this effect has not in fact been observed in several studies in which such comparisons are possible. Taken together, these observations raise serious questions about the so-called "COX-2 hypothesis," which suggests that COX-2 selectivity contributes to increased CV risk.

(April 6, 2005 FDA Memorandum at 8, attached hereto as Ex. G.)

study that demonstrates that Vioxx can increase atherogenesis. (*Id.* at 149:21-157:1.) Although she stated that she believed that studies have shown increased atherogenesis in animals, she did not cite to these studies in her expert report and was not able to name even one such purported study in her deposition. (*Id.* at 146:22-147:19 ("Q: Where in your report do you discuss these animal studies that you say exist that show athero – increased atherogenesis in animals? A: I don't think I have – they're in my list of documents, but they're – I haven't cited every document in my report that provides a basis for every opinion, so . . ." (ellipses in original)).)

In fact, the only evidence Dr. Plunkett was able to point to as alleged support for this hypothesis is the Walter study, which quite simply offers no reliable basis for her opinion.[4] (*Id.* at 159:6-160:17.) In that study, the authors attempted to demonstrate the effect of COX-2 inhibitors *in vitro*, *i.e.* in a test tube, not even in a live animal. Because the effects observed in a test tube are not reliable indicator of what happens *in vivo*, however, the authors merely speculated that their "findings *may* provide mechanistic insight into reported differences in cardiovascular risk for COX-2 inhibitors."[5] Courts faced with this issue have recognized that applying *in vitro* studies to humans is scientifically improper and legally insufficient. *See Allen v. Pennsylvania Eng'g Corp.,* 102 F.3d 194, 198 (5th Cir. 1996) (stating that *in vitro* studies are "the beginning, not the end of the scientific inquiry and prove[] nothing about causation without other scientific evidence"); *see also Richardson v. Richardson-Merrell, Inc.,* 857 F.2d 823, 830 (D.C. Cir. 1988) ("Positive results from *in vitro* studies may provide a clue signaling the need for

---

[4] Walter et al., *Sulfone COX-2 inhibitors increase susceptibility of human LDL and plasma to oxidative modification: comparison to sulfonamide COX-2 inhibitors and NSAIDs*, ATHEROSCLEROSIS 2004 Dec; 177(2):235-43.

[5] Walter at 235 (emphasis added).

14

further research, but alone do not provide a satisfactory basis for opining about causation in the human context."). Dr. Plunkett's opinion on general causation must be excluded.

## VII. CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court grant its Motion to Exclude Testimony of Laura Plunkett, Ph.D.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Testimony of Laura Plunkett, Ph.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th day of September, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel