UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE<br>KNOWLES |
| CHARLES L. MASON, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF GARY SANDER, M.D.**

**(EXPERT CHALLENGE NO. 3)**

Merck moves to exclude the testimony of Gary Sander, M.D., a cardiologist and "blood pressure physician" retained by plaintiff to give general and specific causation opinions. Dr. Sander opines that Vioxx® increases the risk of cardiovascular events by causing an imbalance between prostacylin and thromboxane, that Vioxx caused such an imbalance in Mr. Mason, and that this purported Vioxx-induced imbalance was a substantial contributing factor in the development of Mr. Mason's coronary thrombosis and myocardial infarction. As Merck previously has explained to the Court, there is no scientifically reliable support for plaintiff's imbalance theory (commonly referred to as the "FitzGerald hypothesis"). Dr. Sander should not be permitted to premise his causation opinions on it.

Dr. Sander also opines that Vioxx caused an increase in Mr. Mason's blood pressure, which may have contributed to his myocardial infarction. Dr. Sander's blood pressure opinions not only are scientifically unreliable, but they also are irrelevant to plaintiff's claims against Merck, and they find no support in Mr. Mason's medical history. Mr. Mason's blood pressure history is incomplete and, therefore, any argument about how Vioxx affected it is nothing more than speculation. Moreover, *Merck explicitly warned that Vioxx could increase blood pressure* – an effect which, as Dr. Sander admitted, has been a well-known risk of all NSAIDs for nearly two decades. Thus, even assuming that Vioxx caused Mr. Mason's blood pressure to increase and that the increase had any clinical significance (although there is no evidence supporting either contention), those facts would be irrelevant to plaintiff's claims, all of which are premised on Merck's alleged failure to warn.

Dr. Sander's testimony about how Vioxx might increase the risk of myocardial infarction does not stop with the imbalance theory and the purported effects on blood pressure, however. In his report, Dr. Sander also suggests that Vioxx may accelerate atherosclerosis. (*See* Aug. 7, 2006 Expert Report of Gary E. Sander, M.D. ("Sander *Mason* Rpt.") at 6, attached hereto as Ex. A.) But he previously has acknowledged, as he must, that this hypothesis has not been scientifically proven, and that he has no evidence to support an opinion that Vioxx led to accelerated atherosclerosis in a particular patient. And, here, Dr. Sander has testified that he will not offer opinions on whether Vioxx accelerated Mr. Mason's atherosclerosis. (Sept. 5, 2006 Deposition of Dr. Gary E. Sander ("Sander 9/5/06 Dep.") at 67:16-68:8, attached hereto as Ex. B.) Because there is no scientifically reliable support for an opinion that Vioxx accelerates atherosclerosis or that it had such an effect in Mr. Mason, and because Dr. Sander has admitted

as much, and has said he will not give such opinions, Merck asks that this Court exclude any such opinions.

Finally, although not disclosed in his report, in his deposition taken in a prior case (*Smith*), Dr. Sander purported to offer his views on Merck's ethics and corporate conduct based on his very limited personal experiences with Merck.  Dr. Sander's personal opinions and experiences on these subjects are inadmissible because plaintiff did not designate Dr. Sander to offer such opinions, and Dr. Sander admittedly is unqualified to assess the propriety of Merck's conduct.  Dr. Sander's personal views and experiences, which are too vague to be in any way meaningful, also are irrelevant to any issue in this case.  Dr. Sander has said that he will not testify about Merck's conduct in this case, and Merck asks that the Court hold him to his word.

Because all of Dr. Sander's opinions are scientifically unreliable, irrelevant and/or he is not qualified to give them, he should be precluded from testifying.

## I. THIS COURT'S PRIOR RULINGS ON DR. SANDER'S TESTIMONY.

In *Smith v. Merck*, the Court denied Merck's motion to exclude Dr. Sander's testimony. (*See* Sept. 6, 2006 *Smith v. Merck* Tr. at 10:2-11:10, attached hereto as Ex. C.)  In doing so, the Court acknowledged that Dr. Sander's "blood pressure" opinions could be "problematic," but held "that is an area of cross-examination as opposed to an area of whether or not he used proper methodology."  (*Id.*)  The Court deferred ruling on whether Dr. Sander could testify that Vioxx accelerates atherosclerosis.  (*Id.*)  The Court also noted that Dr. Sander would not be permitted to offer opinions outside the scope of his report, and instructed the parties to bring any such issues to the Court's attention if they were to come up at trial.  (*Id.*)

With regard to Mr. Mason, as explained below, Dr. Sander cannot rely on an argument that Vioxx increased his blood pressure because there is insufficient evidence to demonstrate that Vioxx had any effect on Mr. Mason's blood pressure.  Moreover, Dr. Sander expressly has

3

admitted that he will not opine that Vioxx accelerates atherosclerosis or give opinions on Merck's conduct. Therefore, Merck requests that the Court reconsider its ruling based on the specifics of this case.

## II. LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Motion to Exclude the Testimony of Isaac Wiener, M.D., filed concurrently herewith and incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the relevant requirements of the Federal Rules of Evidence, including Rules 401 and 403.

## III. THE COURT SHOULD EXCLUDE DR. SANDER'S SCIENTIFICALLY UNRELIABLE, IRRELEVANT AND FACTUALLY UNSUPPORTED OPINION THAT VIOXX CAUSES A PROSTACYCLIN/THROMBOXANE IMBALANCE.

Dr. Sander relies on the "FitzGerald hypothesis" as the foundation for his opinion that Vioxx increases CV risk. The FitzGerald hypothesis remains speculative and cannot form the basis for plaintiff's experts' causation opinions.

As the Court knows, Dr. FitzGerald hypothesized in an article published in 1999 that *if* COX-2 inhibitors reduced prostacyclin levels *in blood vessels* – a question his study could neither assess nor determine – then such drugs *might* promote increased clotting and, therefore, increased CV risks since they do not simultaneously interfere with the normal production of thromboxane, a known vasoconstrictor.[1] But, as Dr. FitzGerald has recognized on multiple

---

[1] Catella-Lawson et al., *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics, and Vasoactive Eicosanoids*, J. PHARM. AND EXP. THERP. 1999; 289:735-741.

4

occasions since the 1999 publication, his hypothesis remains just that – a hypothesis – that remains unproven. In a follow-up article published in 2002, Dr. FitzGerald further explained that "[t]he clinical sequela of inhibiting prostacyclin activity in the absence of concomitant inhibition of [thromboxane] *are not currently clear*" and that "for the present, the *perception* of a cardiovascular hazard in humans exceeds the evidential basis for this notion."[2]

Nor is Dr. FitzGerald alone in conceding that his hypothesis remains unproven. After observing that selective COX-2 inhibitors were associated with an increased risk of adverse CV events, the FDA confirmed this fact in April 2005:

> *It remains unclear, however, that it is the presence of, or the degree of, COX-2 selectivity that accounts for these observations, as some have hypothesized.* As noted above, in various controlled clinical trials, COX-2 selective drugs have been indistinguishable from non-selective NSAIDs (*i.e.*, ibuprofen, diclofenac) in studies of substantial size and duration. Further, although on theoretical grounds the addition of low-dose aspirin (a COX-1 inhibitor) to a COX-2 selective drug should resolve any increased CV risk caused by COX-2 selectivity, this effect has not in fact been observed in several studies in which such comparisons are possible. *Taken together, these observations raise serious questions about the so-called "COX-2 hypothesis," which suggests that COX-2 selectivity contributes to increased CV risk.*

(FDA Memo at 8 (emphasis added), attached hereto as Ex. D.) Thus, the FitzGerald hypothesis remains speculative and cannot form the basis for Dr. Sander's opinion that the prostacyclin/thromboxane imbalance caused Mr. Mason's heart attack.

Dr. Sander also takes the FitzGerald hypothesis one step further, however, purporting to opine that Vioxx causes a prostacyclin/thromboxane imbalance, and causes CV events, by reducing prostacyclin production *in the coronary vasculature*. (Aug. 15, 2006 Deposition of Dr. Gary E. Sander ("Sander 8/15/06 Dep.") at 216:22-217:20, attached hereto as Ex. E; *see also*

---

[2] FitzGerald, GA, *Cardiovascular Pharmacology of Nonselective Nonsteroidal Anti-inflammatory Drugs and Coxibs: Clinical Considerations*," AM J CARDIOL 2002; 89 (suppl):26D, 32D (emphasis added).

July 10, 2006 Expert Report of Gary E. Sander, M.D. ("Sander *Smith* Rpt.") at 3-4, attached hereto as Ex. F.)  Although Dr. Sander *admits that there is no scientific evidence supporting his theory*, he nonetheless uses it as the foundation for his opinions:

> Q: Would it be fair to say that there is no scientific study out there, either in humans or animals, that shows that Vioxx decreases protacyclin in the coronary vasculature?
>
> . . .
>
> A: I'm not aware of any.
>
> . . .
>
> Q: So would you agree that the theory that Vioxx reduces prostacyclin in the coronary vasculature is a hypothesis at this time?
>
> . . .
>
> A: Since I do not know specifically of any literature that has measured it. Although, we do know COX-2 is expressed.  And there is no reason to believe this mechanism is not operative.  I do not know of anything that specifically demonstrates it.
>
> Q: Therefore, it is a hypothesis right now?
>
> . . .
>
> A: I would not use the word hypothesis.  I think that is the presumptive reason why thrombotic events occur in coronary arteries.
>
> Q: But with no science right now proving that, would you agree that is a hypothesis until proven?  Would you agree it is –
>
> A: Well, clots occur in patients taking Vioxx in the coronary arteries.  I have no better mechanism, so I think it is a working hypothesis.  And I would go so far as to say it is an assumption by those of us who treat people with these problems.
>
> . . .
>
> Q: Are you aware of any scientific proof that Vioxx reduces prostacyclin in the coronary vasculature?
>
> A: I have never seen that measurement published.

6

(Sander 8/15/06 Dep. at 216:2-218:18.) Dr. Sander's theory, which admittedly is derived from the fact that he "has no better mechanism" to explain how Vioxx might cause heart attacks, is speculative and unproven. He, therefore, should not be permitted to testify about it.

Additionally, there is no scientifically reliable evidence indicating that this mechanism was at work in Mr. Mason. Dr. Sander has admitted that Mr. Mason had multiple risk factors for heart attack and that there is nothing in Mr. Mason's medical examinations or clinical symptoms or in his angiogram results that specifically identified Vioxx as a contributing factor to his heart attack.[3] (Sander 9/5/06 Dep. at 59:16-61:18.) Dr. Sander also admits that, according to his theory, everyone who has had a heart attack by virtue of plaque rupture – as he claims Mr. Mason did – has by definition experienced the prostacyclin/thromboxane imbalance. (*Id.* at 80:3-18.) Therefore, even if Mr. Mason did have such an imbalance, there is no way to know whether it was caused by Vioxx or his preexisting risk factors.

**IV.   THE COURT SHOULD EXCLUDE DR. SANDER'S SCIENTIFICALLY UNRELIABLE, IRRELEVANT AND FACTUALLY UNSUPPORTED BLOOD PRESSURE OPINIONS.**

Dr. Sander testifies that "Vioxx can increase blood pressure" and, by increasing blood pressure, Vioxx increases the risk of plaque rupture and resulting cardiovascular events. (Sander *Mason* Rpt. at 8-9.) He is also of the opinion that Vioxx increased Mr. Mason's blood pressure, and that this increase caused Mr. Mason to experience a plaque rupture, and ultimately led to his heart attack. (Sander 9/5/06 Dep. at 74:19-23.) Dr. Sander's opinions are scientifically unreliable. There is no scientific evidence that Vioxx causes plaque rupture and, thus, Dr. Sander has no reliable basis for opining that Vioxx causes plaque rupture by increasing blood

---

[3] Dr. Sander did indicate that he was "a little concerned about the higher blood pressures after [Mr. Mason] started Vioxx." (Sander 9/5/06 Dep. at 60:24-25.) However, as explained in Section IV below, Dr. Sander's blood pressure opinions are not scientifically reliable.

7

pressure or any other mechanism. Moreover, Dr. Sander's opinions regarding Vioxx's alleged impact on Mr. Mason's blood pressure are wholly irrelevant to any issue in this case.

### A. There Is No Reliable Scientific Support For An Opinion That Vioxx Causes Plaque Rupture.

Dr. Sander's testimony that Vioxx can cause plaque rupture through its effects on blood pressure is scientifically unsupportable and irrelevant. Indeed, Dr. Sander readily admits that Vioxx did not make Mr. Mason's plaque any more prone to rupture. He testified:

> Q: Let me state it differently. Vioxx certainly didn't make Mr. Mason's atherosclerotic plaque have any thinner cap than it otherwise would?
>
> A: I would not think so.
>
> Q: Vioxx certainly didn't make any Mason's plaque any more lipid rich than it was otherwise. Correct?
>
> A: Correct. Yes. That is correct.
>
> Q: And you certainly will not be offering the opinion at trial that Vioxx made Mr. Mason's plaque rupture prone. Correct?
>
> A: Yes. Correct.
>
> Q: Let me state that differently. Vioxx did not make Mr. Mason's plaque vulnerable to rupture. Correct?
>
> A: Yes. I am just trying to get the right answer. That is correct.

(Sander 9/5/06 Dep. at 71:22-72:14.) Accordingly, whether Vioxx *can* make plaque more prone to rupture is irrelevant to Mr. Mason's claims, given that it undisputedly did not have such an effect in him.

Moreover, as explained in Merck's concurrently-filed Motion to Exclude Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture ("Merck's Atherosclerosis and Plaque Rupture Motion"), incorporated herein by

8

reference, *no* study establishes that Vioxx increases the risk of plaque rupture.[4] Plaintiff and his experts cannot make up for that lack of evidence by asserting that Vioxx may have such an effect by increasing blood pressure. The uncontroverted fact remains: *no* study shows that Vioxx increases the risk of plaque rupture – neither through its effects on blood pressure nor through any other mechanism.

### B. Mr. Mason May Have Had Hypertension Before He Started Taking Vioxx And There Is No Reliable Evidence That It Increased With His Vioxx Use.

Dr. Sander claims that Mr. Mason's "increased blood pressure was a contributing factor to plaque rupture" which caused his heart attack. (Sander 9/5/06 Dep. at 74:21-23.) However, there is no scientifically reliable evidence to establish whether Mr. Mason had an increase in his blood pressure caused by his use of Vioxx. It is possible that Mr. Mason had hypertension prior to taking Vioxx and so even if he had hypertension after taking Vioxx, it is unclear whether Vioxx had any effect on Mr. Mason's blood pressure.

According to Dr. Sander, Mr. Mason had "labile hypertension" prior to taking Vioxx. (*Id.* at 175:22-176:20.) He explained that this term means "varying blood pressure readings" which could be due to a condition known as "white coat hypertension" or because the readings were taken carelessly. (*Id.* at 174:14-19.) Labile hypertension is a risk factor for heart disease. (*Id.* at 175:22-24.) Dr. Sander admits though that diagnosing Mr. Mason with hypertension is fraught with uncertainty because there were only three blood pressure readings taken in the two years prior to his heart attack. (*Id.* at 176:4-14.) Then, after Mr. Mason began taking Vioxx, his blood pressure was only recorded on two occasions: (i) when he took a stress test in September of 2002

---

[4] Indeed, Dr. Benedict Lucchesi, another of plaintiff's experts, *admits* that the plaintiff's plaque rupture theory is speculative and that he is unaware of any studies showing that Vioxx increases the risk of plaque rupture. (Oct. 18, 2005 Deposition of Benedict Lucchesi at 331:21-332:6, attached hereto as Ex. G.)

9

and (ii) when he showed up at the hospital having a heart attack. Dr. Sander admits that it is impossible to diagnose Mr. Mason with hypertension based on these two readings:

> Q: So while Mr. Mason is on Vioxx, you would agree that he does not meet the definition of hypertension. Correct?
>
> . . .
>
> A: I think that probably I would have to answer, I would be suspicious, but could not make a diagnosis.
>
> Q: . . . Do you have any basis upon which to opine to a reasonable degree of medical probability that while on Vioxx Mr. Mason met the definition of hypertension?
>
> A: I would have to tell you I am concerned by his exercise blood pressure. But can I say more likely than not he had hypertension, I don't believe I can.

(Sander 9/5/06 Dep. at 177:10-178:4.) Similarly, plaintiff's other expert cardiologist, Dr. Wiener, admits that he had no evidence that Vioxx increased Mr. Mason's blood pressure. (Deposition of Isaac Wiener, M.D. at 154:5-155:5 ("So I don't have any – I don't have any evidence one way or the other, or I don't have any evidence that Vioxx raises blood pressure, no."), attached hereto as Exhibit H.) Thus, Dr. Sander has no evidence of a relationship between, and therefore cannot attribute, Mr. Mason's hypertension, if there was any, to his Vioxx use. Dr. Sander's opinions regarding blood pressure are irrelevant and unduly prejudicial and should be excluded as such.

### C. Increased Blood Pressure Has Long Been A Well-Known Risk Of All NSAIDs And Merck Warned Of The Risk In Its Vioxx Label.

Even if there were evidence that Mr. Mason's Vioxx use caused his blood pressure to increase (and there is not), such evidence would be irrelevant to plaintiff's failure to warn claims because Merck explicitly warned of the risk of increased blood pressure in its label. When Merck began marketing Vioxx in 1999, it specifically warned prescribing physicians about the attached hereto as Ex. I.)

[5]Dr. Sander admits that hypertension is a well-known risk associated with all NSAIDs, and it has been known for 15 to 20 years. (Sander 8/15/06 Dep. at 73:6-15.) As Dr. Sander also admits, any drug that may cause hypertension increases cardiovascular risk. (*Id.* at 122:23-123:23.)[6] *See id.; see also Schaerrer v. Stewart's Plaza Pharm., Inc.*, 79 P.3d 922, 928 (Utah 2003) ("It is the physician who is best situated to weigh the potential risks associated with a prescription drug against the possible benefits of the drug and the unique needs and susceptibilities of each patient."); *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231-32 (4th Cir. 1984) ("It is the physician's duty to remain abreast of product characteristics and, exercising an informed professional judgment, decide which facts should be told to the patient. Once adequate warnings are given to the physician, the choice of treatment and the duty to disclose properly fall on the doctor."); *Odom v. G. D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992) (upholding trial court's granting of summary judgment because plaintiff failed to prove that her doctor would have prescribed a different course of treatment if more drastic warnings had been given).[7]

---

[5] The Vioxx label in effect when Mr. Mason was prescribed Vioxx warned:

> Fluid retention, edema, and hypertension have been reported in some patients taking VIOXX. In clinical trials of VIOXX at daily doses of 25 mg in patients with rheumatoid arthritis the incidence of hypertension was twice as high in patients treated with VIOXX as compared to patients treated with naproxen 1000 mg daily.

(*See* April 2002 Vioxx label, attached hereto as Ex. J.)

[6] In a general sense, it is well-known that atherosclerosis is associated with hypertension. Indeed, hypertension is a traditional risk factor for atherosclerotic disease. (*See, e.g.*, Anderson KM et al., *Cardiovascular Disease Risk Profiles*, AM. HEART J. 1991; 121:293-298; *see also* Sander 8/15/06 Dep. at 123:3-15.)

[7] In his previous report and deposition, Dr. Sander opined about other alleged risks of Vioxx – including edema (swelling caused by fluid retention) and heart failure – but these opinions are irrelevant to Mr. Mason, who did not suffer these injuries. (*See* Sander *Smith* Rpt. at 5; Sander 8/15/06 Dep. at 240:19-241:21.) Moreover, Merck warned of the risk of edema, and recommended cautious use by patients with edema or heart failure, in the Vioxx label. (*See* Vioxx Label # 9183800 dated May 1999.) As these alleged risks, too, are irrelevant, Dr. Sander

(*footnote continued next page*)

### V. THE COURT SHOULD EXCLUDE DR. SANDER'S SCIENTIFICALLY UNRELIABLE OPINIONS REGARDING ATHEROSCLEROSIS.

Dr. Sander's opinions on whether Vioxx causes or accelerates atherosclerosis are scientifically unreliable. In his expert report, Dr. Sander suggests that Vioxx may accelerate atherosclerosis. (Sander *Mason* Rpt. at 6; *see also* Sander 9/5/06 Dep. at 67:21-68:3 ("There is suggestion in the literature – and I am just going to mention this to complete my answer. Although, I am not going to go there – that Vioxx may in fact accelerate atherosclerosis. So there is a potential that the plaque formation is accelerated.").) This theory of causation lacks a foundation in reliable science, as explained in Merck's Atherosclerosis and Plaque Rupture Motion. For the reasons stated in that motion, Merck moves to exclude Dr. Sander's testimony about Vioxx's alleged ability to cause or accelerate atherosclerosis.

Moreover, in his deposition in the *Smith* case, Dr. Sander admitted the theory is unproven and that he had no evidence to support an opinion that Vioxx accelerated atherosclerosis. He even said he would not offer opinions on the subject:

> Q: We talked earlier [about Dr. Sander's statement in his report that "at least in certain animal models, interruption of PGI-2 accelerates the development of progression of atherosclerosis"] and you agreed that this is not scientifically proven, but is a hypothesis at this time.
>
> . . .
>
> A: I think the actual interactions in the formation of atherosclerosis is still experimental as opposed to COX-2 in humans. I think there is some evidence that supports it.
>
> I think there are some people who still argue that they are not convinced and I don't intend to go there.

(Sander 8/15/06 Dep. at 239:3-239:15.)[8] And, in this case, Dr. Sander said in his deposition that

---

should be precluded from testifying about them.

[8] Indeed, Dr. Sander's lack of scientific certainty on this point is demonstrated by the fact that he
(*footnote continued next page*)

12

he will not "go there." (Sander 9/5/06 Dep. at 67:21-68:3; *see also id.* at 71:14-21.) In light of this, Dr. Sander should be precluded from opining that Vioxx may accelerate atherosclerosis, or that it did so in Mr. Mason.

## VI.   THE COURT SHOULD EXCLUDE DR. SANDER'S TESTIMONY ABOUT MERCK'S CORPORATE CONDUCT AND ETHICS.

In his *Smith* deposition, Dr. Sander purported to offer his views on Merck's ethics and corporate conduct, based upon one meeting he had with an unidentified Merck representative sometime in 2001 or 2002. He alleged, in hindsight, that this unidentified representative misrepresented the "true data" on Vioxx, and that this interaction causes Dr. Sander to question Merck's integrity. (*See* Sander 8/15/06 Dep. at 71:2-4, 74:19-76:4, 77:9-18, 78:15-79:21, 119:21-120:19, 140:12-141:9.) In testifying about this alleged meeting, Dr. Sander also purported to talk about the unidentified Merck representative's state of mind, speculating that the purpose of the visit to him was to "convince [him] that there was no issue with Vioxx" and "to assure [him] that the VIGOR trial in fact did not implicate Vioxx as a thrombotic agent." (*Id.* at 71:2-4, 74:19-75:4.) Dr. Sander's personal opinions and experiences in this regard are inadmissible because plaintiff did not designate Dr. Sander to offer opinions of this sort, Dr. Sander admittedly is unqualified to assess the propriety of Merck's conduct, and Dr. Sander's personal views are irrelevant to any issue in this case.

Dr. Sander says nothing in his report about Merck's conduct or ethics, nor does he mention the meeting he allegedly had with a Merck representative in 2000 or 2001. (*See generally* Sander *Smith* Rpt. and Sander *Mason* Rpt.) He should be precluded from offering

---

acknowledged that the converse may well be true – that it is a sound scientific hypothesis that Vioxx might actually slow the progression of atherosclerosis and help stabilize plaque in animal models. (Sander 8/15/06 Dep. at 268:22-269:14.)

opinions on these topics, and from testifying about the alleged Merck meeting, because plaintiff did not designate him to offer any such opinions. Rule 26 requires a party to file a report for each expert witness it intends to use at trial and to provide "a complete statement of all opinions to be expressed and the basis and reasons therefor." *See* FED. R. CIV. P. 26(a)(2)(B). If a party does not comply, the Court should exclude the expert from testifying at trial on the matters the party was required to disclose. *See* FED. R. CIV. P. 37(c)(1); *see also Sheridan v. Merck & Co., Inc.* No. Civ. A-02-2581, 2003 WL 22902622, at *2 (E.D. La. Dec. 8, 2003) (refusing to allow plaintiff's experts to offer opinions and testimony not included in reports; stating "[t]o allow Plaintiff to now garner from his experts testimony addressing for the first time, an alleged drug defect would unfairly prejudice Merck and its defense" and "to allow an expert to state an opinion for the first time in his deposition, *after his expert report has been produced,* would render meaningless the expert report deadline").[9]

Dr. Sander should be precluded from offering his opinions for the additional reason that he has no expertise that qualifies him to testify about Merck's corporate conduct or ethics. He acknowledges that he has no expertise in these areas:

> Q:  And those meetings and any feelings you have about Merck are not a basis, a factual basis, for any of the opinions you are giving in this case?
>
> A:  Of course not.
>
> Q:  I assume you don't have any plans to discuss those meetings with the jury in the case?
>
> . . .
>
> A:  I have not been asked to deal with issues of Merck's behavior relative to drug analysis and release. And I don't feel that I have expertise to do it.

---

[9] Dr. Sander also should be precluded from offering any other opinions not contained in his report.

> Q: And you don't have the expertise to do what?
>
> A: To discuss what Merck knew, when they knew it, what the issues with publication were, the data tables. The entire discussion that I had read, but I am not going to talk about.

(Sander 8/15/06 Dep. at 78:10-79:7.) Moreover, any such testimony would be unduly prejudicial and would not assist the jury. Expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).

Dr. Sander's personal views of Merck's conduct, or his speculation as to its state of mind, are also irrelevant and therefore inadmissible. Examining and drawing factual inferences from the evidence are roles left properly to the trier of fact. The jury does not need Dr. Sander's assistance in carrying out that responsibility.

Dr. Sander's testimony about his alleged meeting with a Merck representative also is too vague to be in any way useful to the jury. He does not even recall when the meeting occurred or the name of the person with whom he purportedly met. (Sander 8/15/06 Dep. at 74:19-75:12.) Courts routinely exclude expert testimony based on such vague testimony or evidence. *See, e.g., In re Rezulin*, 309 F. Supp. 2d at 543 (stating that expert testimony "must comport with the reliability and helpfulness requirements of Rule 702" and excluding testimony that was "so vague as to be unhelpful to a fact-finder").

Finally, in his deposition in this case, Dr. Sander admitted that he would not provide opinions on Merck's conduct. He testified:

> Q: So you are not relying on any internal Merck documents for your opinions. Correct?
>
> A: That is correct.

15

Q: And you are not purporting to give any opinions about Merck's conduct with regard to Vioxx. Correct?

A: That has always been correct.

(Sander 9/5/06 Dep. at 21:22-22:4.) This Court should hold Dr. Sander to his word, and issue an order precluding him from giving such opinions.

## VII. CONCLUSION.

For the reasons stated above, Merck respectfully requests that this Court grant Merck's Motion to Exclude Testimony of Gary Sander, M.D.

Dated:  September 19, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Testimony of Gary Sander, M.D., has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th day of September, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel