Exhibit A - 7/12/06 Guireguian

• Mason - Motion to Exclude Gueriguian

| | | |
|---|---|---|
| [1:] - [1:24] | 7/12/2006 | Gueriguian, John v.01 (McFarland-Hatch & MDL) |

```
page 1
    0001
1       IN RE: VIOXX LITIGATION  : SUPERIOR COURT OF NEW JERSEY
                                 : LAW DIVISION:ATLANTIC COUNTY
2       AND                      : CASE NO. 619
                                 :
3       ROBERT McFARLAND         : DOCKET NO:
               V.                : ATL-L-0199-04MT
4       MERCK & CO., INC.        :
                                 :
5       AND                      :
                                 :
6       PATRICIA HATCH,          : DOCKET NO:
        ADMINISTRATOR of the     : ATL-L-0403-05MT
7       ESTATE OF STEPHEN        :
        HATCH, DECEASED AND      :
8       PATRICIA HATCH, IN HER   :
        OWN RIGHT                :
9              V.                :
        MERCK & CO., INC.        :
10
        AND
11
                                 - - -
12                          July 12, 2006
13                               - - -
14           ORAL DEPOSITION OF JOHN LEO GUERIGUIAN, M.D.
15      held at the offices of Seeger Weiss, One William
16      Street, New York, New York, commencing at 9:30 a.m.,
17      on the above date before Constance E. Perks, CRR, CLR,
18      Certified Shorthand Reporter License No. XI01429
19                          --------------
20              GOLKOW LITIGATION TECHNOLOGIES
                      Four Penn Center
21              1600 John F. Kennedy Boulevard
                         Suite 1210
22              Philadelphia, Pennsylvania 19103
                         1.877.DEPS.USA
23
24
25
page 2
1       A P P E A R A N C E S:
```

| | | |
|---|---|---|
| [33:11] - [33:13] | 7/12/2006 | Gueriguian, John v.01 (McFarland-Hatch & MDL) |

```
page 33
9   just want to make sure it's clear.
10       A.      Sorry.
11       Q.      The last time you treated a patient
12  was 1967?
13       A.      Correct.
14       Q.      So you never prescribed Vioxx?
15       A.      No.
```

| | | |
|---|---|---|
| [33:14] - [33:23] | 7/12/2006 | Gueriguian, John v.01 (McFarland-Hatch & MDL) |

```
page 33
12  was 1967?
13       A.      Correct.
14       Q.      So you never prescribed Vioxx?
15       A.      No.
16       Q.      Have you ever taken Vioxx?
17       A.      No.
18       Q.      Have any of your family members ever
19  taken Vioxx?
20       A.      No.
```

**Exhibit A - 7/12/06 Guireguian**

• **Mason - Motion to Exclude Gueriguian**

```
                            21      Q.      Have you ever prescribed any NSAID?
                            22      A.      No.  I haven't prescribed anything to
                            23 anyone.
                            24      Q.      So during the period of time you were
                            25 treating patients, you didn't write prescriptions?
```

[157:25] - [158:3]    7/12/2006    Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
page 157
23 how to interpret the data through education and
24 hands-on experience.
25      Q.      During your tenure at the FDA, did
page 158
1  you ever have authority for the final approval of
2  initial labels?
3       A.      No.  The final authority vests in the
4  division director for certain easy-to-approve NDAs,
5  E2s and the like, and one level at least above the
```

[158:23] - [159:5]    7/12/2006    Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
page 158
21 to the label, and then let the recommendation float
22 upwards.
23      Q.      Okay.  And in that same vein, did you
24 ever have authority for the final approval of
25 labeling supplements during your tenure at FDA?
page 159
1       A.      Only when I was acting division
2  director for certain periods.  But out of those
3  periods, no, not the formal delegation by the
4  Secretary of Health and Human Services to the center
5  director and division director.
6       Q.      During your tenure at FDA, did you
7  ever review any changes being affected labeling
```

[160:19] - [160:25]    7/12/2006    Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
page 160
17 on the safety issue, and the FDA has a short period
18 of time to say yes, that's good.
19      Q.      Focusing on the -- I want to make
20 sure I understand your testimony.  You had occasion
21 during your tenure at FDA to reject a CBE?
22      A.      That is what I said.
23      Q.      How many times?
24      A.      Well, it was a series of two or three
25 CBEs, they were of the same category,
page 161
1  pharmacological category, and the we took a serious
2  look at it and we decided rather rapidly that this
```

[178:5] - [178:7]    7/12/2006    Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
page 178
3       A.      I'm aware that they didn't agree.
4  And the point is that from 2001 to 2002, for one
5  full year, Merck didn't agree with the proposed
6  labeling change of the FDA, fought tooth and nail,
7  didn't budge.  They kept giving little packets at a
8  time of the information that the FDA needed, and
9  otherwise obstructed the system.
```

[180:5] - [180:6]    7/12/2006    Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
page 180
3  -- I have all the documents going back and forth,
4  and all the signs that there's foot dragging, and
5  insistence that we're not going to accept what the
```

**Exhibit A - 7/12/06 Guireguian**

- **Mason - Motion to Exclude Gueriguian**

```
                                    6   FDA says.  Scolnick says I will never sign this
                                    7   thing, and he never did sign it.
                                    8        Q.     Would you agree that the FDA
```

[183:16] - [183:20]     7/12/2006     Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
                        page 183
                        14  page is that the FDA cannot change the labeling
                        15  without the cooperation of the company.  Cooperation
                        16  in terms of giving all the data.  Cooperation in
                        17  terms of accepting a reasonable change in the label.
                        18  Cooperation in not foot dragging, not insisting to
                        19  have one's way, whereas the FDA thinks that all the
                        20  data cannot support Merck's proposals.
                        21              So you can control only if there is a
                        22  collaboration by the other party with whom you're
```

[189:11] - [189:24]     7/12/2006     Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
                        page 189
                         9       Q.     Okay.  You can put the document
                        10  aside, if you want.
                        11              You understand that there are FDA
                        12  labeling requirements, correct?
                        13       A.     Yes, I do.
                        14       Q.     Do you agree or disagree with the
                        15  view that those labeling requirements represent
                        16  minimum safety standards?
                        17       A.     I answered that question, and I don't
                        18  know how to answer differently.  The minimum
                        19  standard -- I'm sorry.
                        20              The minimum standards that you're
                        21  alluding to concern regulations, and company's
                        22  acceptance and following the regulations.  I have
                        23  never heard of the labeling being a minimal thing.
                        24  What does that mean?  It makes no sense.
                        25              The labeling is there to inform the
                        page 190
                         1  public of all the events.  If you have to inform
```

[198:1] - [198:24]     7/12/2006     Gueriguian, John v.01 (McFarland-Hatch & MDL)

```
                        page 197
                        24
                        25
                        page 198
                         1                 C E R T I F I C A T E
                         2
                         3              I, CONSTANCE E. PERKS, CRR, CCP, CLR, a
                         4  Certified Shorthand Reporter and Notary Public of the
                         5  State of New Jersey, do hereby certify that prior to
                         6  the commencement of the examination, the witness, JOHN
                         7  L. GUERIGUIAN, M.D., was duly sworn by me to testify to
                         8  the truth, the whole truth, and nothing but the truth.
                         9              I DO FURTHER CERTIFY that the foregoing is
                        10  a true and accurate transcript of the testimony as
                        11  taken stenographically by and before me at the time,
                        12  place, and on the date hereinbefore set forth.
                        13              I DO FURTHER CERTIFY that I am neither a
                        14  relative nor employee nor attorney nor counsel of any
                        15  of the parties to this action, and that I am neither a
                        16  relative nor employee of such attorney or counsel, and
                        17  that I am not financially interested in the action.
                        18
                        19
                        20
                                        NEW JERSEY CSR LICENSE NO. XI01429
                        21              Notary Public of the State of New Jersey
                                        My Commission expires August 6, 2007
                        22
```

**Exhibit A - 7/12/06 Guireguian**

- **Mason - Motion to Exclude Gueriguian**
  ```
  23
  24  Dated:  July 13, 2006
  25
  page 199
  1
  ```