UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 06-0810 | * | |
| CHARLES L. MASON, | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF JERRY AVORN, M.D.**

**(EXPERT CHALLENGE NO. 7)**

Merck moves to exclude the testimony of Jerry Avorn, M.D., a pharmacoepidemiologist who testified via video deposition in *Barnett v. Merck* and *Smith v. Merck* and who has been designated as an expert witness again in this case. As the Court is well-aware, only one paragraph of Dr. Avorn's 25-page expert report addresses the risks associated with Vioxx®, a subject upon which expert testimony is appropriate and which is within the realm of Dr. Avorn's expertise in pharmacoepidemiology. (*See* Expert Report of Jerry Avorn, M.D. ("Avorn Rpt.") at 19, Section VI, attached hereto as Ex. A.) Rather than focus on pharmacoepidemiology, the approximately four hours of Dr. Avorn's testimony that plaintiffs in *Barnett* and *Smith* designated are comprised of Dr. Avorn's opinions on topics that are outside his area of expertise and are not the proper subject of expert testimony in any case – including Dr. Avorn's

interpretation of internal Merck documents, his evaluation of Merck's conduct, his speculation about Merck's state of mind, and his judgment that Merck did not act responsibly. If past experience is any guide, plaintiff in this case will designate some if not all of this same testimony, which is neither grounded in "scientific, technical, or other specialized knowledge" nor necessary, from the jury's point of view, "to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. The testimony is nothing more than "spin" – counsel's attempt to put their arguments before the jury under the guise of expert testimony. As other federal courts have acknowledged in excluding Dr. Avorn's opinions, this testimony is inadmissible, because it "does not implicate Dr. Avorn's expertise in pharmacoepidemiology." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 550 (S.D.N.Y. 2004).

In *Barnett* and *Smith*, the Court denied Merck's motion to exclude Dr. Avorn's testimony and permitted him to testify. (*See* July 25, 2006 *Barnett v. Merck* Tr. at 4:13-19, attached hereto as Ex. B.) Merck hereby reasserts its objections, in order to preserve its record for appeal. For the reasons stated below, the Court should exclude Dr. Avorn's: (i) speculative testimony on non-science issues; (ii) undisclosed "expert" opinions; and (iii) testimony on causation.

I. **LEGAL STANDARD.**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Motion to Exclude the Testimony of Isaac Wiener, M.D., filed concurrently herewith and incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the relevant requirements of the Federal Rules of Evidence, including Rules 401 and 403.

**II.    THE COURT SHOULD EXCLUDE DR. AVORN'S SPECULATIVE OPINIONS ON NON-SCIENCE ISSUES.**

Rule 702 allows expert opinion testimony that will "assist the trier of fact," provided it comes from a witness with "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. It does not permit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). This "requirement of 'knowledge' guards against the admission of subjective or speculative opinions." *In re Rezulin*, 309 F. Supp. 2d at 541; *see also Daubert*, 509 U.S. at 589-90 ("the word 'knowledge' connotes more than subjective belief or unsupported speculation"). Rule 702 also "ensures that expert witnesses will not testify about lay matters which a jury is capable of understanding and deciding without the expert's help." *In re Rezulin*, 309 F. Supp. 2d at 541 (citation and internal quotation marks omitted).

Contrary to these well-settled principles, Dr. Avorn proffers "expert" testimony that consists of little more than his personal views on: (i) the Vioxx "story"; (ii) what Merck knew or should have known about the risks allegedly associated with Vioxx; (iii) Merck's alleged suppression of information about Vioxx; and (iv) regulatory issues, including Merck's negotiations with the FDA over Vioxx labeling. These opinions are not based on Dr. Avorn's "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. In fact, they are not related in any way to Dr. Avorn's area of expertise, pharmacoepidemiology – which, as noted above, only informs one paragraph in his expert report. Nor would Dr. Avorn's opinions on these non-science issues help the jury determine any issue of consequence in this case. Mr. Mason's claims should be resolved on their merits, not based on a retained expert's subjective,

*ex post facto* opinions about what Merck could or should have done differently. Merck thus moves the Court to exclude Dr. Avorn's improper opinion testimony in full.

        **A.    Dr. Avorn's Recounting Of The Vioxx "Story" Is Improper Expert Testimony That Must Be Excluded.**

The vast majority of Dr. Avorn's expert report and testimony is devoted to chronicling the "[a]vailable evidence prior to FDA approval of Vioxx" and "[a]dditional clinical trial evidence of risk following FDA approval of Vioxx." (*See* Avorn Rpt. at 2-21.) He summarizes this "evidence," given to him by plaintiff's counsel, and provides a timeline starting in 1996 and ending with Merck's voluntary withdrawal of Vioxx from the market in 2004. This narrative, which is essentially a collection of excerpts from internal Merck documents, does not qualify as "expert" testimony.[1] It is inadmissible on a number of grounds.

First, Dr. Avorn's description of selected events is "merely a narrative of the case which a juror is equally capable of constructing." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (citation and internal quotation marks omitted). His "spin" on the facts, apparently intended to bolster plaintiff's case, "does no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [Merck's] conduct." *Id.* (citation omitted). Such advocacy on the part of a retained expert poses a host of problems, as the *In re Rezulin* court recognized:

> A practice reminiscent of wager of law has become fashionable among some well-financed litigants – the engagement of "expert" witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit. These "experts" thus are loosely analogous to compurgators, also known as oath helpers, in that they lend their

---

[1] The sources of Dr. Avorn's opinions are clear from a cursory review of the "Materials Considered" section of Dr. Avorn's expert report. (Avorn Rpt., "Materials Considered," at 1-9.) This list is comprised almost entirely of internal Merck documents.

4

> credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue.

309 F. Supp. 2d at 538.

Allowing Dr. Avorn to filter and feed the facts of this case to the jury is improper. This testimony does not require any "scientific, technical, or other specialized knowledge," and it cannot assist the trier of fact. Instead, it simply gives Dr. Avorn a platform to act as an advocate for the plaintiff. *See id.* at 546 (excluding expert testimony addressing corporate state of mind because otherwise experts would "improperly . . . assume the role of advocates for the plaintiffs' case"); *see also Tanner v. Westbrook*, 174 F.3d, 542, 548 (5th Cir. 1999); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d at 616; *cf. Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (expert accountant was not "specially equip[ped] to divine what [defendant] truly believed" about reliability of financial reports; any opinions offered in that regard are "at worst, rank speculation" and at best, "credibility choices that are within the province of the jury"). It is for counsel – not witnesses, and certainly not retained experts – to present argument at trial. To allow Dr. Avorn to do so would inevitably confuse the jury and run afoul of Rules 403 and 702 of the Rules of Evidence.

Second, to the extent the underlying facts detailed in Dr. Avorn's report are admissible, his regurgitation of these facts is cumulative and wastes time. *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378, 382 (5th Cir. 1969) ("It is well established that evidence which is merely repetitious and cumulative of testimony already introduced may be excluded by the court."). Foundational material is properly put into evidence only through the testimony of percipient witnesses or through documentary evidence. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (excluding expert's "historical commentary of what happened"). There is no evidence that Dr. Avorn has any personal knowledge of any of the facts he has included in his

5

narrative of the case, other than knowledge acquired from his review of the documents given to him by plaintiff's counsel in anticipation of this litigation.[2] (*See, e.g.*, June 16, 2006 Deposition of Jerry Avorn, M.D. ("Avorn 6/16/06 Dep.") at 453:12-23 ("Q: Am I right, sir, that you don't have any personal knowledge of the facts described in [internal Merck documents]; you're just relying on those documents, true? A: Correct."), attached hereto as Ex. C.) An expert such as Dr. Avorn who "lacks personal knowledge may only testify about the underlying facts if he is actually bringing to bear his scientific expertise" – which Dr. Avorn is not doing here, since his narrative does not draw on his background in pharmacoepidemiology. *See In re Rezulin*, 309 F. Supp. 2d at 554.

### B. The Court Should Exclude Dr. Avorn's Opinions About What Merck Knew Or Should Have Known.

In offering opinions on "the methods by which Merck evaluated and managed [the cardiovascular] issue throughout the development and marketing of Vioxx" (Avorn Rpt. at 2), Dr. Avorn purports to testify about what Merck knew about the alleged cardiovascular risks associated with Vioxx, what Merck did or did not do given this knowledge, and whether Merck's actions were reasonable. (*E.g.*, June 15, 2006 Deposition of Jerry Avorn, M.D. ("Avorn 6/15/06 Dep.") at 180:2-180:14, attached hereto as Ex. D.) Yet, as Dr. Avorn himself concedes, he is not an expert on the "state of mind" of a pharmaceutical company and has no idea "what people

---

[2] Courts should be especially cautious in dealing with expert opinions developed solely for the purpose of litigation. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying. That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture. But in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office."); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001).

believed or didn't believe." (*Id.* at 56:22-57:1, 279:6-15.) He also admits that there are "no standards" by which once can measure the intent of a pharmaceutical company and no "statistical test for reasonable behavior." (*Id.* at 59:13-60:12, 191:7-15 ("Q: What statistics have you applied to demonstrate that Merck's conduct concerning Vioxx was unreasonable? A: Well, it's not like there's a statistical test for reasonable behavior.").)

Expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise." *In re Rezulin*, 309 F. Supp. 2d at 546. Dr. Avorn's deposition clips contains exactly this kind of impermissible testimony. He opines, *inter alia*, that:

- "Merck's conduct over the research program and analysis of its data and communication of those data to physicians, to patients, even to the FDA, was inadequate in that it failed to truthfully represent what was *known to Merck at the time* about the risks of its drug in relation to the cardiovascular symptoms." (June 29, 2006 Deposition of Jerry Avorn, M.D. ("Avorn 6/29/06 Dep.") at 110:4-111:10 (emphasis added), attached hereto as Ex. E.)

- Merck "didn't really want [Dr. Avorn's] study to get done" and thus dragged its feet intentionally in an effort to slow the process. (*Id.* at 194:17-195:13.)

- "*Merck should have recognized* – a reasonable and prudent company with the knowledge that Merck had before the drug was on the market should have recognized that there was the potential for cardiovascular disease in patients who took Vioxx." (*Id.* at 301:22-302:7 (emphasis added).)

This and other similar testimony is inadmissible and must be excluded under Rule 702. As one court reasoned, in rejecting testimony from an expert on a pharmaceutical manufacturer's "state of mind":

> The witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations and the pharmaceutical marketplace react, behave or think regarding their nonscientific goals of maintaining a profit-making organization that is subject to rules, regulations, standards, customs and practices among competitors and influenced by shareholders or public opinion.

7

*In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 U.S. Dist. LEXIS 9037, at *28-29 (E.D. Pa. June 20, 2000). Dr. Avorn lacks this very knowledge and experience. Accordingly, the Court should exclude his speculative testimony about what Merck knew and when it supposedly knew it.

Dr. Avorn's opinions on this same subject have been excluded by other courts. In the Fen-Phen litigation, the United States District Court for the Eastern District of Pennsylvania ruled that Dr. Avorn lacked the requisite qualifications to opine on the "corporate intent" of the defendant – and that, in any case, such testimony was unreliable and thus inadmissible. *Id.*, at *30. The court further noted that "[t]he question of intent is a classic jury question and not one for experts." *Id.*, at *29. The same is true here. Dr. Avorn's testimony on Merck's state of mind is improper and unnecessary, in that it "describes lay matters which a jury is capable of understanding and deciding without [an] expert's help." *In re Rezulin*, 309 F. Supp. 2d at 546 (citation and internal quotation marks omitted). Dr. Avorn concedes as much. (Avorn 6/15/06 Dep. at 192:17-193:17 (admitting that, in assessing whether Merck's conduct was reasonable, there are issues "which any person with common sense can interpret" and "a juror could handle on their own").) The Court should exclude all of Dr. Avorn's proffered testimony on Merck's alleged "state of mind."

   **C. Testimony About Merck's Alleged Suppression Of Information Is Inadmissible.**

For similar reasons, the Court should preclude Dr. Avorn from testifying about Merck's alleged failure to provide the medical community or the FDA with complete and accurate information on the risks associated with Vioxx. (*E.g.*, Avorn Rpt. at 15 ("Merck did not provide a complete and accurate account of these study outcomes to FDA until after the drug had been taken off the market."); 19-21 (Section VII, "Inaccurate communication of risks to physicians");

21-24 (Section VIII, "Negotiations with FDA over labeling and promotion").)  His testimony on this subject so hyperbolic as to be extreme:

> That there was a *pattern of gross distortion* of the risks of Vioxx, and that no matter which way physicians turn, whether it was looking at the label, hearing what they were hearing from the Merck-trained sales representatives, trying to read the literature in the medical journals and trying to get some accurate, complete depiction of what was happening in the clinical trials, even the information their patients were bringing to them from the commercials and ads that they had seen, across the board, there was a pattern of what I would characterize as *systematic distortion that rose almost to the level of grotesque*. And, frankly, it was an *embarrassment for me* as a member of the medical profession that this was going on in presenting information to doctors in such a one-sided and lopsided manner.

(Avorn 6/29/06 Dep. at 430:4-432:10 (emphasis added).)  This testimony, which is unduly prejudicial, cannot pass muster under Rule 403.

But, more fundamentally, Dr. Avorn's testimony on what he calls Merck's "systematic distortion" of the risks associated with Vioxx is inadmissible under Rules 401 and 702.  Dr. Avorn has no specific knowledge of what any of the individual physicians involved in this litigation knew about Vioxx, or what factors went into their decisions to prescribe the drug.  (Avorn 6/15/06 Dep. at 164:20-165:4 ("I can't get into the head of a given doctor that I've never met"); Avorn 6/16/06 Dep. at 758:13-759:7.)  Nor has he done any research on the subject.  (Avorn 6/16/06 Dep. at 758:13-16.)  Any testimony from him about what safety information Merck communicated to physicians – and how this information impacted their prescribing decisions – is thus speculative and inadmissible.

Dr. Avorn's testimony on this subject was excluded from the *In re Rezulin* case:

> To the extent that the challenged testimony relates, as plaintiffs contend, to the factual accuracy of [defendant's] clinical data submissions to the FDA, it constitutes lay matter that the fact-finder can understand without the assistance of experts, regardless of [how] much experience these witnesses have with clinical trials.  Dr. Avorn's testimony illustrates the point.  His view that [defendant] failed to disclose information to the FDA boils down to a contention that [defendant] "buried" certain lab results in an Appendix to the Rezulin NDA.  This

9

> opinion does not implicate Dr. Avorn's expertise in pharmacoepidemiology. It is a simple inference drawn from his review of two documents – which, if admissible, plaintiffs' counsel may present directly to the fact-finder while arguing his or her view as to their significance. Expert testimony interpreting [defendant's] conduct in disclosing information to the FDA therefore will not assist the fact-finder in these cases.

309 F. Supp. 2d at 549-50. This Court should likewise preclude Dr. Avorn from testifying about the manner in which Merck communicated information about the risks and benefits of Vioxx to the medical community and to the FDA.

### D. Dr. Avorn Is Not Qualified To Opine On Merck's Negotiations With The FDA Over Vioxx Labeling And Promotion.

Dr. Avorn's testimony on regulatory issues – including Merck's "[n]egotiations with FDA over labeling and promotion" (*see* Avorn Rpt. at 21-24) – is also inadmissible. By Dr. Avorn's own admission, he is not a regulatory expert. *In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at *36 ("Dr Avorn admits that he is not an expert in the regulatory field."). He has never been employed by the FDA and has never prepared or approved a pharmaceutical product's labeling. (Avorn 6/15/06 Dep. at 326:23-327:2; Avorn 6/16/06 Dep. at 678:5-10.) He has no personal knowledge about Merck's labeling decisions concerning Vioxx. (Avorn 6/16/06 Dep. at 696:8-18.) Nor does his training as a pharmacoepidemiologist qualify him to weigh in on: (i) the process by which Merck and the FDA revised the Vioxx label following VIGOR; (ii) whether the Vioxx label provided adequate information to health professionals; (iii) whether Merck was concerned "about the effect of a possible label change on increasing physician awareness of [Vioxx's] cardiovascular hazards"; (iv) whether risk information provided on a prescription drug label "can heavily influence a drug's sales"; (v) whether, "in the absence of a negotiated agreement with the FDA concerning the contents of its official label," Merck could have "notified physicians or consumers about the emerging data about the risks of Vioxx"; and (vi) whether the post-VIGOR Vioxx label was adequate. (Avorn Rpt. at 21-24.)

10

Despite his lack of qualifications, Dr. Avorn offers the following regulatory opinions, among others:

- He testifies about "correspondence between Merck and FDA" regarding the proposed post-VIGOR modifications to the Vioxx label – stating that the FDA wanted the information in the "Warnings" section of the label and editorializing that information on cardiovascular risks was an "important piece of information for doctors to have" in that section. (Avorn 6/29/06 Dep. at 397:9-12, 398:5-16, 399:19-400:4, 400:11-14.)

- He opines – based on his speculative and subjective interpretation of an internal Merck document – that the addition of cardiovascular risk information to the "Warnings" section would have impacted doctors' prescribing practices. (*Id.* at 402:3-405:2.)

- He goes so far as to divine the FDA's view of the risks and benefits of Vioxx – even though he has no foundation for this opinion, not having participated in any Vioxx-related Advisory Committees or any other part of the agency's approval process. (*Id.* at 109:18-110:3 ("Vioxx's risks do indeed outweigh its benefits, which is the view that the FDA agreed with as well.").)

This testimony is improper and outside Dr. Avorn's area of expertise, as other courts have recognized.[3] *See In re Rezulin*, 309 F. Supp. 2d at 549 (finding Dr. Avorn "not qualified to render opinions describing or interpreting FDA regulations, or commenting on [the defendant's] adherence to those regulations"); *In re Diet Drugs*, 2000 U.S. Dist. LEXIS 9037, at *36 (finding that, although Dr. Avorn is "fully qualified" in his specialty, "that does not qualify [him] to speak as [an] expert[] in the field of the requirements of the federal regulations regarding labeling and warnings for FDA approved drugs"). Accordingly, this Court should exclude Dr. Avorn's testimony on regulatory matters.

---

[3] At the very least, it is duplicative of the testimony proffered by plaintiff's purported regulatory experts, Drs. Guerigian and Moye.

11

## III. THE COURT SHOULD EXCLUDE TESTIMONY CONCERNING MATTERS NOT DISCLOSED IN DR. AVORN'S EXPERT REPORT.

As the Court has often recognized, it is fundamentally unfair to permit an expert to opine on issues not disclosed in his or her expert report. (*E.g.*, Sept. 6, 2006 *Smith v. Merck* Tr. at 11:3-10 ("[Y]ou have to put in the areas that you are going to talk about [in the report]; not the specific questions, by the areas. *If he didn't talk about this or he didn't bring it up in his report, then it's outside of the scope of his testimony.*" (emphasis added)), attached hereto as Ex. F.) Dr. Avorn's previously-designated testimony is replete with undisclosed and thus improper opinions, including testimony on the following subjects:

- *Standard of Care*. Dr. Avorn opines at great length about what a "reasonable and prudent" company should have done in Merck's position. (*E.g.*, Avorn 6/29/06 Dep. at 137:6-138:16, 301:23-303:4, 311:21-312:7, 313:2-316:8, 339:3-11, 340:5-9.) But, his expert report does not disclose any such opinions or explain any of the standards that Dr. Avorn thinks pharmaceutical companies should follow.

- *Direct to Consumer Advertising*. Dr. Avorn's expert report also does not identify DTC as an issue he intends to cover, but his testimony contains opinions on the subject. (*E.g.*, *id.* at 255:22-256:7, 421:1-15, 421:22-422:15.)

- *The APPROVe "Correction."* Dr. Avorn testifies about the "Correction" that the *New England Journal of Medicine* published after Dr. Avorn submitted his expert report but before his trial preservation deposition. (*Id.* at 290:5-11, 290:15-291:21, 414:13-417:2.) Had he intended to testify about the article, he should have submitted an amended report to Merck prior to his trial testimony, to give Merck notice and an opportunity to prepare.

- *Mortality Data*. Dr. Avorn testifies that the association he believes exists between Vioxx and an increase in mortality should have been in the "Warnings" section of the Vioxx label. (*Id.* at 395:19-24, 396:23-397:8.) His expert report is silent on the subject.

- *"All Major Publications."* Dr. Avorn's testimony contains the undisclosed, sweeping statement that every major publication about Vioxx failed to disclose the cardiovascular risks associated with the drug. (*Id.* at 419:1-8, 419:14-420:13 ("I have never known a collection of papers on any one topic in which there has been such a constellation of skewed and distorted presentation of data in any drug studies that I have ever looked at.").)

There is no mention of these subject in his expert report. It is information Merck learned for the first time not in the report and not even during Dr. Avorn's discovery deposition, but rather during Dr. Avorn's trial preservation deposition. To permit Dr. Avorn to offer the testimony at trial – where Merck has been deprived of an opportunity to effectively cross-examine him – would be unfair. *See* FED. R. CIV. P. 26(a)(2)(B) (requiring a party to file a report for each expert witness it intends to use at trial and to provide "a complete statement of all opinions to be expressed and the basis and reasons therefor"); *see also Sheridan v. Merck & Co., Inc.*, No. Civ. A-02-2581, 2003 WL 22902622, at *2 (E.D. La. Dec. 8, 2003) (refusing to allow plaintiff's experts to offer opinions and testimony not included in reports; stating "[t]o allow Plaintiff to now garner from his experts testimony addressing for the first time, an alleged drug defect would unfairly prejudice Merck and its defense" and "to allow an expert to state an opinion for the first time in his deposition, after his expert report has been produced, would render meaningless the expert report deadline"). Therefore, the Court should exclude this testimony as well.

**IV.   DR. AVORN'S CAUSATION OPINIONS ARE UNRELIABLE AND THUS INADMISSIBLE.**

Finally, Merck moves to exclude Dr. Avorn's causation opinions, for the reasons articulated in Merck's concurrently-filed Motion to Exclude Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture, incorporated herein by reference.

**V.   CONCLUSION.**

For the reasons stated above, Merck respectfully requests that the Court grant its Motion to Exclude Testimony of Jerry Avorn, M.D.

Dated: September 19, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

And

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Testimony of Jerry Avorn, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th day of September, 2006.

                                              */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel