Exhibit D - Avorn Deposition Excerpts

• Mason - Avorn Motion

| | |
|---|---|
| [1:] - [1:23] | 6/15/2006   Avorn, Jerry (Barnett) |

```
page 1
    0001
1                         UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF LOUISIANA
2                          MDL DOCKET NUMBER:   1657
                                      SECTION L
3
              In re:  VIOXX PRODUCTS LIABILITY LITIGATION
4             GERALD BARNETT AND CORRINE BARNETT,
5                    Plaintiffs,
6                  VS.                        CIVIL ACTION NUMBER:
                                                  2:06cv485
7             MERCK & CO., INC.,
8                    Defendant.
              ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
9
                                     DEPOSITION OF
10
                                  JERRY AVORN, M.D.
11
                                    June 15, 2006
12                                    8:36 a.m.
13                              Sheraton Boston Hotel
                                   39 Dalton Street
14                           Boston, Massachusetts 02199
15         Susan A. Romano, Notary Public, Register Merit Reporter and Certified
            Realtime Reporter within and for the Commonwealth of Massachusetts
    15
16
17
18
19
20
21
22
23
```

| | |
|---|---|
| [56:22] - [57:1] | 6/15/2006   Avorn, Jerry (Barnett) |

```
page 56
22   Q.   You wouldn't consider yourself to
23  be an expert in the state of mind of a
24  pharmaceutical company, right?
page 57
1    A.   Right.
```

| | |
|---|---|
| [59:13] - [60:12] | 6/15/2006   Avorn, Jerry (Barnett) |

```
page 59
13   Q.   So I take that to mean you don't
14  consider yourself an expert in determining
15  pharmaceutical companies' intent?
16   A.   Well, I think that's a very
17  problematic question for a lot of ways.
18  One is there are no standards for
19  determining expertise, and it's not like
20  you're board certified in pharmaceutical
21  company intent.
22       Secondly, the concept of intent
23  implies knowing something about the
24  intrapsychic processes of a company, and
page 60
1   companies don't have intrapsychic
2   processes.
```

Exhibit D - Avorn Deposition Excerpts

- **Mason - Avorn Motion**

```
                         3          So I think one can look at
                         4     behaviors of individuals in companies, and
                         5     one can make very plausible conclusions
                         6     about the goals that those behaviors were
                         7     designed to achieve.
                         8          But the way you phrased it, since
                         9     nobody can get inside the head of a
                        10     company, since companies don't have heads,
                        11     no one can be an expert in that, the way
                        12     you phrased the question.
```

[164:20] - [165:4]      6/15/2006   Avorn, Jerry (Barnett)

```
                        page 164
                        20     Q.   Can you say, sir, under oath, that
                        21     you are aware of what the doctors who are
                        22     treating -- were treating the patients in
                        23     the Vioxx litigation knew, actually knew,
                        24     about the potential cardiovascular effects
                        page 165
                         1     of Vioxx?
                         2               MR. TISI:  Objection.
                         3     A.   Of course I can't get into the head
                         4     of a given doctor that I've never met.
```

[180:2] - [180:14]      6/15/2006   Avorn, Jerry (Barnett)

```
                        page 180
                         2          When you say that you were asked to
                         3     assess the methods by which Merck
                         4     evaluated and managed the cardiovascular
                         5     issue during the time that Vioxx was
                         6     developed and while it was on the market,
                         7     are you basically offering your opinion
                         8     about what Merck knew about any potential
                         9     cardiovascular risks, what Merck did or
                        10     didn't do in response to what you believe
                        11     they knew, and whether you believe that
                        12     Merck's actions or inactions were
                        13     reasonable?
                        14     A.   Correct.
```

[191:7] - [191:15]      6/15/2006   Avorn, Jerry (Barnett)

```
                        page 191
                         7     Q.   What statistics have you applied to
                         8     demonstrate that Merck's conduct concerning
                         9     Vioxx was unreasonable?
                        10     A.   Well, it's not like there's a
                        11     statistical test for reasonable behavior.
                        12     But what I mean is that there -- in
                        13     looking at study results, one needs to
                        14     know enough statistics to be able to
                        15     interpret the importance of the findings.
```

[192:17] - [193:17]     6/15/2006   Avorn, Jerry (Barnett)

```
                        page 192
                        17     Q.   Do you believe that jurors are
                        18     capable of evaluating Merck's conduct in
                        19     coming to a conclusion about whether
                        20     Merck's conduct was reasonable or
                        21     unreasonable?
                        22     A.   In some ways yes and in some ways
                        23     no, and let me explain.  They would not
                        24     be able to understand what acceptable
                        page 193
```

Exhibit D - Avorn Deposition Excerpts

• **Mason - Avorn Motion**

```
                    1  standards of behavior in the medical
                    2  community are because they're not doctors,
                    3  or about interpreting the meaning of
                    4  certain findings because they're not
                    5  pharmacoepidemiologists.  So there are some
                    6  important technical things which a juror,
                    7  on his or her own, could not be able to
                    8  interpret.
                    9       And then there are other things
                   10  which any person with common sense can
                   11  interpret, as in if you saw a particular
                   12  signal of a problem what would a
                   13  reasonable company do.  So there's --
                   14  There's the two kinds.
                   15       And the latter I think a juror
                   16  could handle on their own.  The former, I
                   17  think, requires some expert interpretation.
```

[279:6] - [279:15]     6/15/2006   Avorn, Jerry (Barnett)

```
page 279
 6    Q.   Is it your testimony that when
 7  Vioxx was on the market, the marketing
 8  people believed that Vioxx causes heart
 9  attacks?
10    A.   I can't indicate what people
11  believed or didn't believe.  What I can
12  indicate is that there was information
13  available to Merck, because Merck generated
14  most of it, indicating a higher risk of
15  heart attacks in people taking its drug.
```

[326:23] - [327:2]     6/15/2006   Avorn, Jerry (Barnett)

```
page 326
23    Q.   Have you ever worked for the FDA as
24  an employee?
page 327
 1    A.   I've been on advisory committees,
 2  but I've not been an employee.
```

[428:1] - [429:1]     6/15/2006   Avorn, Jerry (Barnett)

```
page 428
 1              CERTIFICATE
 2         COMMONWEALTH OF MASSACHUSETTS
 3              SUFFOLK SS.
 4    I, SUSAN A. ROMANO, Certified Shorthand
 5  Reporter No. 119393, Registered Merit
 6  Reporter and Notary Public in and for the
 7  Commonwealth of Massachusetts, do hereby
 8  certify that the witness whose deposition
 9  is hereinbefore set forth, was duly sworn
10  and that such deposition is a true record
11  of the testimony given by the witness.
12   I further certify that I am neither
13  related to or employed by any of the
14  parties in or counsel to this action, nor
15  am I financially interested in the outcome
16  of this action.
17   In witness whereof, I have hereunto set
18  my hand and seal this 19TH day of June
19  2006.
20  .
21  .
22
23
```

**Exhibit D - Avorn Deposition Excerpts**

**• Mason - Avorn Motion**
```
                24      Susan A. Romano, Notary Public
        page 429
        1       My commission expires April 21, 2006
```