# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to** | * | |
| **Case No. 06-0810** | * | |
| | * | **MAGISTRATE JUDGE** |
| **CHARLES L. MASON**, | * | **KNOWLES** |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF DOUGLAS P. ZIPES, M.D.

### (EXPERT CHALLENGE NO. 8)

Plaintiff has designated Dr. Douglas Zipes, a cardiologist, as an expert on general causation.  Merck suspects that Dr. Zipes will not testify in this case, and the Court may wish to get confirmation from plaintiff before investing the time necessary to rule on this motion.  Also, because Mr. Mason's counsel refused to produce Dr. Zipes for deposition in this case, Merck has moved to compel his deposition, or in the alternative, to preclude his testimony because of plaintiff's refusal to permit the deposition.  (*See* Merck's Motion to Compel the Deposition of Douglas P. Zipes, M.D. or, in the Alternative, to Exclude Him from Testifying at Trial (Record Docket No. 5892).)  That motion is pending and should be resolved before this one.

In *Barnett*, the Court granted Merck's *Daubert* motion on Dr. Zipes in part and denied it in part.  The Court denied Merck's Motion to exclude Dr. Zipes's testimony that Vioxx®

accelerates atherosclerosis and his opinions based on improper subgroup analysis because the Court found that these opinions were based on proper methodology.  With regard to Dr. Zipes's testimony concerning what Merck knew or should have known, the Court held that Dr. Zipes may only testify about what Merck should have known of the risks of Vioxx based upon what was known in the medical and scientific community, but not on what it knew.  The Court reserved ruling on whether Dr. Zipes may testify about conversations he had with other doctors regarding whether Vioxx causes heart attacks.  The Court granted Merck's motion to exclude testimony by Dr. Zipes on the subject of Merck's compliance with FDA regulations.  The Court denied Merck's motion to exclude Dr. Zipes's testimony premised on Dr. Kronmal's report.[1]

By this motion, Merck seeks the same relief as it sought in *Barnett*.  First, Merck requests that the Court reaffirm in this case its *Barnett* ruling that Dr. Zipes may not testify about (i) what Merck knew and (ii) Merck's compliance with FDA regulations.  Second, Merck seeks an order on the issue the Court reserved in *Barnett,* precluding Dr. Zipes from testifying about his conversations with other doctors.  Third, although the Court previously ruled in *Barnett* that Dr. Zipes could rely on the Kronmal report, the situation is different here because Dr. Kronmal was not designated as an expert in this case.  Thus, the Court should preclude Dr. Zipes from testifying to the contents of or relying on the Kronmal report.  Finally, Merck urges the Court to reach a different conclusion in this case on Dr. Zipes's general causation opinions regarding atherosclerosis and those based on improper subgroup analyses than it did in *Barnett*.  It does so for two reasons.  First, Merck continues to believe that these opinions are scientifically unreliable

---

[1] (*See* July 29, 2006 *Barnett v. Merck* Order.)  After *Barnett*, the plaintiff in *Smith v. Merck* designated Dr. Zipes as an expert on general causation.  Merck again moved to exclude Dr. Zipes' testimony, but the motion became moot because plaintiff Smith withdrew Dr. Zipes before the Court had an opportunity to rule.

and irrelevant.  Second, and perhaps more compelling to the Court, the opinions are irrelevant to this case.  Plaintiff has no specific cause expert who can or will tie Dr. Zipes's opinions to Mr. Mason.  None of Mr. Mason's specific cause experts believe that Dr. Zipes's opinions on this score are supportable.  Moreover, none will testify that Mr. Mason had the "blood pressure spikes" that form the bedrock of Dr. Zipes's theory.  (*See* Motion of Merck for Order Excluding Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture, filed concurrently herewith).

## I.      LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Motion to Exclude the Testimony of Isaac Wiener, M.D., filed concurrently herewith and incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the relevant requirements of the Federal Rules of Evidence, including Rules 401 and 403.

## II.     IN ACCORDANCE WITH THIS COURT'S PRIOR RULINGS, DR. ZIPES SHOULD BE PRECLUDED FROM TESTIFYING ABOUT MERCK'S KNOWLEDGE OR MERCK'S COMPLIANCE WITH FDA REGULATIONS.

### A.      Dr. Zipes's Opinions About What Merck Knew And What Merck Should Have Done Are Beyond Dr. Zipes's Knowledge And Unduly Prejudicial And Must Be Excluded.

Dr. Zipes purports to know what Dr. Scolnick and Merck knew, at various times, about the risks allegedly associated with Vioxx.  (May 22, 2006 Report of Douglas Zipes, M.D. ("Zipes Rpt.") at 23, attached hereto as Ex. A.)  In addition, Dr. Zipes opines that Merck should have conducted clinical trials designed to study the alleged cardiovascular risks of Vioxx. Testimony on both of these subjects is grounded neither in Dr. Zipes's personal knowledge nor

his expertise.  Moreover, it is unduly prejudicial and will not assist the jury.  Expert witnesses are routinely prohibited from providing testimony regarding the "intent, motives or states of mind of corporations, regulatory agencies and others," because they "have no basis in any relevant body of knowledge or expertise."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).

First, the Court should exclude Dr. Zipes's opinion testimony about Merck's state of mind.  At his deposition, Dr. Zipes admitted that he does not know anything about this issue – but in the next breath stated that he may testify on the subject anyway:

> A:    You are asking me to interpret what Merck's thinking was and I cannot do that.
>
> Q:    You are not going to come to trial and state what is Merck's state of mind or motivation; right?
>
> A:    I don't know.  It would depend on the questions that I am asked.

(Deposition of Douglas P. Zipes, M.D. ("Zipes Dep.") at 68:21-69:1, attached hereto as Ex. B.)

Dr. Zipes bases his opinions about Merck's "state of mind" on a selective set of internal Merck documents given to him by plaintiff's counsel.  (Zipes Dep. at 76:20-24.)  From these documents, he draws inferences about the state of Merck's and Dr. Scolnick's knowledge about the cardiovascular risks allegedly associated with Vioxx.  For example, he opines that Merck "was actually aware" of the prostacyclin/thromboxane theory as early as 1997, and that Dr. Scolnick accepted this theory as an explanation for the excess cardiovascular events in VIGOR. (Zipes Rpt. at 23.)  Examining and drawing factual inferences from the evidence are roles left properly to the trier of fact.  The jury does not need Dr. Zipes's assistance in carrying out that responsibility.

Second, the Court should exclude Dr. Zipes's opinion that, based on what he claims Merck knew in 2000, "Merck should have initiated a trial powered to conclusively test the safety

of Vioxx in a population that would be representative of the subjects who were using the drug, i.e., those with multiple risk factors for cardiovascular disease." (Zipes Rpt. at 23.) Evidence relating to studies that were never performed is not probative of any issue of consequence in this case. The outcome of any such study is completely a matter of conjecture. The same is true of any testimony offered to show that the clinical studies that were completed should have been designed differently. All such testimony lacks a reliable foundation, and would result in undue prejudice to Merck, juror confusion, and delay if admitted.

**B.    Any Testimony From Dr. Zipes Relating To Merck's Compliance With FDA Regulations Should Be Excluded As Outside Of Dr. Zipes's Expertise.**

At his deposition, Dr. Zipes explained that he believes he is an expert on FDA regulations and that he is prepared, if asked, to give opinions about the approval of Vioxx. (Zipes Dep. at 41:22-42:13.) But his only alleged qualification to give this testimony is that he has "dealt with the FDA on numerous occasions." (*Id.*) That is plainly insufficient to qualify Dr. Zipes to give opinions about the adequacy of Merck's warnings or whether Merck complied with FDA regulations. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (trial court properly excluded testimony where witness lacked training or schooling necessary to qualify as an expert in the subject). This Court already agreed and precluded Dr. Zipes from opining on such issues in *Barnett*. Merck requests that the Court again preclude Dr. Zipes from giving any opinions regarding Merck's compliance with FDA regulations.

**III.    DR. ZIPES'S TESTIMONY REGARDING HIS MEETINGS WITH OTHER CARDIOLOGISTS MUST BE EXCLUDED AS HEARSAY AND UNDULY PREJUDICIAL.**

Dr. Zipes testified at his deposition that, after he was retained as an expert, he had various meetings with other doctors, all of whom he claims agreed with his opinions. Specifically, Dr. Zipes claims that he met with six other cardiologists and Mr. Barnett's counsel over the course of

two days to discuss the alleged cardiovascular risks of Vioxx and that all six of these doctors agreed with him that Vioxx increases the risk of heart attack. (Zipes Dep. at 31:11-36:14.) Merck does not assert that Dr. Zipes may not rely on materials that are ordinarily relied upon by experts in the field of cardiology, but rather Merck objects to any testimony that other doctors or experts agreed with Dr. Zipes's opinions. Any testimony regarding what these other doctors said or thought about Vioxx is hearsay. FED. R. EVID. 802. Merck has not had any opportunity to cross-examine these individuals and there is no independent evidence as to what they thought or if they indeed agreed with Dr. Zipes about the risks of Vioxx. Admitting Dr. Zipes's hearsay testimony that these other doctors all agreed with him would amount to an improper attempt to bolster Dr. Zipes's testimony and would be unduly prejudicial to Merck. Therefore, it must be excluded. FED. R. EVID. 403.

## IV.  DR. ZIPES'S TESTIMONY ABOUT THE KRONMAL'S REPORT MUST BE EXCLUDED.

In proffering his "expert" opinions, Dr. Zipes relies on the expert report of Dr. Kronmal – an expert retained by other plaintiffs in the Vioxx litigation.[2] (*See* Zipes Dep. at 79:13-80:9, 211:5-213:20, 231:22-232:6.) Dr. Zipes must be precluded from putting Dr. Kronmal's conclusions into evidence. Allowing Dr. Zipes to rely on Dr. Kronmal's untested conclusions would be manifestly unfair and prejudicial to Merck – particularly here where plaintiff has not even identified Dr. Kronmal as an expert. *See Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993) (holding that testimony relating to a non-testifying expert's report must be excluded because "[t]here was no opportunity to cross-examine [the expert]

---

[2] Merck has previously set out the reasons why Dr. Kronmal's calculations are scientifically unreliable and prejudicial, and hereby incorporates those arguments by reference. (*See* Motion for Order Excluding Testimony of Richard Kronmal, Ph.D. (Record Docket No. 5270), filed in *Barnett v. Merck*.)

regarding the methodology he employed, statistical discrepancies in his report, or any other matters which might illuminate shortcomings in his work").  Indeed, because Dr. Zipes has not made any attempt to verify the accuracy of Dr. Kronmal's findings or calculations, his testimony would simply be a regurgitation of Dr. Kronmal's opinions with no opportunity for effective cross-examination.  (Zipes Dep. at 79:13-80:9.)  If plaintiff hoped to present Dr. Kronmal's conclusions to the jury, plaintiff should have designated Dr. Kronmal as an expert and asked him – not Dr. Zipes – to testify about the contents of his report, so that Merck could have had an adequate opportunity to cross-examine Dr. Kronmal concerning his methods and conclusions.

## V.  THE COURT SHOULD EXCLUDE DR. ZIPES'S GENERAL CAUSE OPINIONS RELATING TO ATHEROSCLEROSIS AND THOSE BASED ON IMPROPER SUBGROUP ANALYSES.

### A.  Dr. Zipes's Opinions On Whether Vioxx Causes Or Accelerates Atherosclerosis Are Scientifically Unreliable.

In his expert report and deposition testimony, Dr. Zipes opines that Vioxx accelerates plaque build-up.  (*See* Zipes Rpt. at 12-13, 36-42; *see also* Zipes Dep. at 89:3-91:12, 104:15-108:8.)  This theory of causation lacks a foundation in reliable science, as explained in Merck's concurrently-filed Motion to Exclude Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture.  Merck incorporates that motion herein by reference and, for the reasons stated in the motion, moves to exclude Dr. Zipes's testimony about Vioxx's alleged ability to cause or accelerate atherosclerosis.

### B.  Dr. Zipes's Opinions Based On Improper Subgroup Analyses Are Scientifically Unreliable And Irrelevant.

Dr. Zipes's opinions are irrelevant to Mr. Mason's claims.  As explained below, Dr. Zipes's opinions rests on subgroup analysis of (i) persons with prior symptomatic atherosclerotic disease and (ii) persons who experienced blood pressure "spikes" while taking Vioxx.  There has been no showing that Mr. Mason had symptomatic atherosclerotic disease prior to taking Vioxx.

Also, as explained more fully in Merck's Motion for Order Excluding Testimony of Gary Sander, M.D., filed concurrently herewith and incorporated by reference, there is no reliable evidence that Vioxx had any effect on Mr. Mason's blood pressure.  There are only two recorded blood pressure readings for Mr. Mason while he was on Vioxx – one of which was recorded at the hospital on the day of his heart attack.  Therefore, the underlying basis for Dr. Zipe's opinion has no relevance to Mr. Mason and should be excluded from this case.

Even if Dr. Zipes's opinions were relevant to Mr. Mason, they should be excluded as they are scientifically unreliable.  Dr. Zipes admits that he is not an expert in biostatistics, yet he has extracted two numbers from the *post hoc* subgroup analysis of the APPROVe data and attempted to apply them to show that Vioxx particularly increases cardiovascular risk in (i) persons with prior-atherosclerotic symptoms; and (ii) persons who experienced blood pressure "spikes" while taking Vioxx.[3]  (Zipes Dep. at 41:15-21.)  Specifically, Dr. Zipes cites the APPROVe study[4] for the proposition that subjects with known atherosclerotic disease had a relative risk of 9.59 for thrombotic events in Vioxx patients versus placebo (Zipes Rpt. at 30), and claims that the APPROVe data also demonstrate a relative risk of 3.82 for myocardial infarction in users who experienced elevations in their blood pressure while on Vioxx.  (*Id.* at 31; Zipes Dep. at 103:5-104:14.)  These statistics, however, are based on *post hoc* subgroup analyses from the APPROVe study and, as described below, cannot properly be used for this purpose.

Several recent scientific articles specifically addressing cardiologic clinical trials indicate that subgroup analyses – examinations of partitioned pieces of an entire dataset – are unreliable

---

[3] Dr. Zipes renders this opinion despite admitting that, prior to having been retained in this case, he had neither diagnosed a person as having had a heart attack caused by Vioxx, nor had he even prescribed Vioxx to his patients.  (Zipes Dep. at 44:11-19, 45:16-24.)

[4] Bresalier R., et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, N. ENGL. J. MED. 2005 Mar. 17; 352(11):1092-102.

even in large data sets.[5]  There is scientific consensus that such analyses must be conducted and interpreted with great caution.  Parker 2006 at 580; *see* also Sleight at 1 ("Analysis of subgroup results in a clinical trial is surprisingly unreliable, even in a large trial.").  When subgroup analyses are not pre-specified, their results should be regarded as merely hypotheses, requiring confirmation in subsequent studies.  Parker 2006 at 580; *see also* Hernandez at 260 ("subgroup analysis is a secondary, hypothesis-generating exercise to stimulate further research"); Lagakos at 1668 ("Post hoc subgroup analyses undertaken because of an intriguing trend seen in the results or selective reporting of certain subgroup analyses can be especially misleading.").

Moreover, a *post hoc* analysis cannot prove a causal relationship.[6]  Again, it is simply a tool to generate hypotheses for future study.  *See* Elliott H.L., *Post hoc analysis: use and dangers in perspective*, J. OF HYPERTENSION 1996, 14 (suppl 2):S21-S25 at S21 ("Post hoc analysis is of major importance in the generation of hypotheses.  However, the hypothesis is created by the analysis and has not been proved by any 'experiment.'").  Here, the *post hoc* analysis of patients who experienced high blood pressure simply creates the *hypothesis* that such patients are at higher risk of cardiovascular events on Vioxx than the general population – it does nothing to prove it.  Similarly, the *post hoc* analysis of persons with symptomatic atherosclerotic cardiovascular disease cannot prove that the risks were higher for these patients.  Indeed, if such

---

[5] *See* Hernandez AV, et al., *Subgroup analyses in therapeutic clinical trials: Are most of them misleading?*, AM. HEART J. 2006; 151:257-64; Lagakos SW, *The Challenge of Subgroup Analyses - Reporting without Distorting*, N. ENGL. J. MED. 2006; 354:1667-69; Parker AB, Naylor CD, *Interpretation of subgroup results in clinical trial publications: Insight from a survey of medical specialists in Ontario, Canada*, AM. HEART J. 2006; 151:580-8; Parker AB, Naylor CD, *Subgroups, treatment effects, and baseline risks: some lessons from major cardiovascular trials*, AM. HEART J. 2000; 139:952-61; Sleight P., *Debate: Subgroup analyses in clinical trials - fun to look at, but don't believe them!*, CURR. CONTROL TRIALS CARDIOVASC. MED. 2000;1:25-27.

[6] In fact, "[e]mploying the results of group-based studies of risk to make a causal determination for an individual plaintiff is beyond the limits of epidemiology."  *See* Fed. Judicial Ctr., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 481(2d ed. 2005).

analyses were sufficient, every spurious finding in every clinical trial would be self-proving.

"The results of a post hoc analysis should be viewed with considerable skepticism and, in advance of confirmation by other appropriately designed prospective studies, should not be regarded as definitive proof." *Id.* at S21. Indeed, the APPROVe Cardiovascular Safety Report ("APPROVe CSR") warns against relying on potentially spurious subgroup analyses, "Caution must be exercised when interpreting these post hoc results." (APPROVe CSR at 27, attached hereto as Ex. C.) For Dr. Zipes to argue that the subgroup analysis in APPROVe proves that patients with prior symptomatic atherosclerotic disease or those who experienced elevated blood pressure are at an increased risk from Vioxx distorts the data in a way that is scientifically improper and creates a significant risk that the jury will be confused and misled. The Court should exclude all such evidence or argument.

**VI.    CONCLUSION.**

For the reasons stated above, Merck respectfully requests that this Court grant Merck's Motion to Exclude Testimony of Douglas Zipes, M.D.


Dated:  September 19, 2006                              Respectfully submitted,


                                                       */s/ Dorothy H. Wimberly*
                                                       Phillip A. Wittmann, 13625
                                                       Dorothy H. Wimberly, 18509
                                                       STONE PIGMAN WALTHER
                                                       WITTMANN L.L.C.
                                                       546 Carondelet Street
                                                       New Orleans, Louisiana  70130
                                                       Phone:  504-581-3200
                                                       Fax:      504-581-3361

                                                       Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Testimony of Douglas P. Zipes, M.D., has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th day of September, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel