FILED

'05 NOV 21 P 2:56

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CIVIL DISTRICT COURT

NO. 05-12714                                DIVISION: L-6

JACOB LEWIS, INDIVIDUALLY AND ON BEHALF OF HIS
DECEASED WIFE, DEBRA LEWIS

VERSUS

MERCK & COMPANY, INC. AND
DR. SOPHIA L. MORRIS

FILED: _____       _____
                                    DEPUTY CLERK

### PETITION FOR DAMAGES AND/OR WRONGFUL DEATH

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Jacob Lewis, Individually and on behalf of his deceased wife, Debra Lewis, a person of the full age of majority and a resident of LOUISIANA, Parish of Orleans, who respectfully represents that:

### BACKGROUND

1. **Plaintiff, Debra Lewis**, was a resident of LOUISIANA, who has taken the prescription drug **Rofecoxib**, more commonly known by its brand name **Vioxx**, manufactured by Defendant.

2. The **Defendant, Merck & Co., Inc.** (hereinafter "Merck"), is a foreign corporation with its principal place of business, with its principal place of business at One Merck Drive, White House Station, New Jersey 08889 and with CT Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809 as its agent for service of process.

3. At all times relevant hereto, Defendant Merck was and continues to be engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug, Vioxx throughout the United States in general, and this state and judicial district.

EXHIBIT "A"

05/31/06  WED 12:46  [TX/RX NO 7446]

4.  **Defendant, Dr. Sophia L. Morris,** a person of the full age of majority and a resident of Louisiana, and practicing physician who treated plaintiff in Orleans Parish, State of Louisiana, who at all times prescribed Vioxx to his/her patient and was charged with monitoring the patient while on this drug.

## FACTS

Defendants are liable unto plaintiff pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.54, et seq. in that its product is reasonably dangerous in that:

1.  This case involves the prescription drug VIOXX, generic name rofecoxib, which was researched, designed, developed, manufactured, marketed, promoted, advertised and distributed by defendant Merck & Co, Inc. for relief of pain and inflammation (swelling and soreness) in adults suffering from osteoarthritis, rheumatoid arthritis, short-term pain, menstrual pain, and migraine headaches; and in juveniles suffering from rheumatoid arthritis.

2.  At all times relevant to this litigation, defendant Merck misrepresented the safety of Vioxx, a defective product, and negligently manufactured, marketed, advertised, promoted and sold Vioxx as a safe prescription medication, when in fact defendant Merck knew or should have known that Vioxx was not safe for its intended purpose for patients for whom it was prescribed and to whom it was sold; and that Vioxx caused serious medical problems, and in certain patients, catastrophic injuries and deaths.

3.  At all times pertinent hereto, Merck developed, designed, researched, manufactured, promoted, marketed, advertised, distributed and sold Vioxx for use in human individuals patients such as plaintiffs identified herein, and those whom they seek to represent throughout the United States.

4.  In 2003 alone, worldwide sales of Vioxx reached 2.5 billion dollars (U.S.), following the most impressive global sales growth of any drug in history. From a marketing standpoint, Vioxx was an unqualified, if not unprecedented, success. However, from a public safety standpoint, it was an unmitigated disaster. Vioxx's pre-and post-marketing history was plagued with safety concerns which Merck repeatedly ignored, concealed, and/or downplayed.

5. Merck successfully downplayed, and in some instances, actively concealed the fact that Vioxx significantly increased the risk of adverse thrombotic events, including devastating cardiovascular and cerebrovascular injuries such as myocardial infarctions (heart attacks) and strokes, until the drug was finally recalled in late September 2004.

6. By early 1998, Merck's own clinical investigators, in fact, based on findings from a Merck-sponsored study (Protocol 023) advised the company that by inhibiting Cox-2, Vioxx, at the cellular level of blood vessel linings, may alter the hemostatic balance between prostacyclin - a Cox-2 platelet inhibitor that dilates blood vessels - such that it could provoke the creation of blood clots.

7. In December 1997, Merck appointed a "Task Force" to investigate the incidence of cardiovascular serious adverse events in the ongoing Vioxx clinical trials.

8. The task force agreed to investigate the incidence of thrombotic events by analyzing the ongoing osteoarthritis (OA) trials. Because the trials were still blinded as to treatment groups, it could not be determined whether the adverse events in the database had occurred in the Vioxx, placebo or compared to drug populations. Therefore, the Task Force designed a study in which cardiovascular events from all arms of the OA trials would be added together, and the combined groups' incidence rate would be compared to placebo patients from trials of other Merck drugs.

9. In January 1998, the analysis pursuant to the Task Force plan showed a statistically significant increased relative risk of 2.16 for females in the Vioxx study versus the placebo group selected by Merck for comparison. These results constituted a clear signal of cardiovascular toxicity that should have triggered immediate investigation and concern. Instead, Merck made an after-the-fact claim that the placebo comparison group must have had an "atypically low" incidence of cardiovascular events, such that the higher rate in the Vioxx group was downplayed. Further, Merck changed the rules after the game had been played, by deciding to compare the rate in the Vioxx group to a so-called "background" rate, even though no such comparison was stated in the plan for the study. Merck intentionally chose an inappropriate "background" rate for comparison, from a published study of older

Page 3 of 11

patients at a high risk of cardiovascular disease. Based upon the result of this comparison, Merck incorrectly dismissed the signal as of no concern. Merck failed to disclose the results of this pre-marketing analysis, and instead has misrepresented that it had no indication of cardiovascular risk before Vioxx was marketed.

10. In or about 1998, six months before Merck filed its New Drug Application ("NDA") with the FDA, Merck's Scientific Advisory Board for the drug recommended that researchers "systematically collect data on cardiovascular (CV) events in all clinical trials" for Vioxx.

11. On or about November 23, 1998, Merck submitted a New Drug Application ("NDA") for Vioxx 12.5 mg and 25 mg tablets to treat the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

12. On or about May 20, 1999, the FDA approved Vioxx for the relief of signs and symptoms of acute pain, dysmenorrhea, and osteoarthritis, a chronic swelling and painful joint disease of one or more joints.

13. Signs of Vioxx's risks of serious adverse events emerged soon after the FDA's approval of the drug.

14. In or about March of 2000, Merck released the results of the VIGOR study. The study data revealed, among other things, that Vioxx users suffered five times as many heart attacks than their Naproxen counterparts. In addition, serious cardiovascular events (including heart attacks, ischemic strokes, unstable angina, and sudden unexplained deaths) were reported for more than twice as many Vioxx and Naproxen patients.

15. After the VIGOR study, evidence of the dangers of cardiovascular and cerebrovascular adverse events associated with Vioxx use continued to surface.

16. Merck undertook another clinical study called the Adenomatous Polyp Prevention on Vioxx ("APPROVe") trial of Vioxx, 25 mg/day, to try to demonstrate the drug's effectiveness in preventing colon polyps.

17. On or about September 17, 2004, the ESMB noted that "the trend for excess risk" for heart attacks and strokes "has continued to grow at each meeting over the last 102

years." Consequently, the ESMB recommended that participating patients in APPROVe be instructed to discontinue the study treatment. Merck abruptly discontinued the APPROVe study in mid-September 2004.

18. On or about September 28, 2004, Merck informed the FDA that it was withdrawing Vioxx from the market. Merck finally withdrew Vioxx from the market on September 29, 2004.

19. Merck acted to conceal material facts regarding the risks, dangers, defects and disadvantages of Vioxx from the general public.

20. Merck knowingly and intentionally failed to disclose important and material information regarding the risks, dangers, defects, and disadvantages of Vioxx to the general public.

21. When placed in the stream of commerce in 1999, Vioxx was not accompanied by adequate warnings regarding the significant cardiovascular risks associated with the ingestion of Vioxx. The warnings given by the Defendant did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

22. Defendant failed to perform adequate testing concerning the safety of the drug Vioxx in that adequate testing would have shown that Vioxx poses serious risk of cardiovascular problems which would have permitted adequate and appropriate warning to have been given by Defendant to the consuming public.

23. Defendant had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug Vioxx, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous die effect when used alone or in foreseeable combination with other drugs.

24. Merck failed to include in its Vioxx label a cardiovascular warning that Vioxx was contraindicated in high risk CV patients.

25. Merck ignored the casual relationship between Vioxx and this significantly increased rate of cardiovascular events in the VIGOR study.

26. Merck knowingly downplayed and, in certain instances, withheld from publication, the severity of cardiovascular and cerebrovascular risks associated with Vioxx.

27. Merck persistently failed to advise patients and the consuming public of serious cardiovascular and cerebrovascular adverse events occasioned by the use of Vioxx.

28. Merck purposefully and knowingly misrepresented, understated and otherwise down played the serious health hazards and risks associated with protracted Vioxx use- precisely the use for which Vioxx was most often prescribed and, in fact, was intended.

29. Merck, through the Vioxx promotional literature, audio conferences, professional meetings, press releases, and advertisements too numerous to catalogue herein, deceived Plaintiff and potential consumers by relaying positive information, including testimonials from satisfied consumers; manipulating the statistics to suggest widespread acceptability and safety of the product; and intentionally understating the known adverse and serious health risks associated with the use of Vioxx.

30. Merck concealed materially relevant information from potential Vioxx consumers and minimized user and prescriber concerns regarding the safety of Vioxx.

31. Merck falsely misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx.

32. In their marketing promotional presentations, Merck omitted the warning about the possibility of serious gastrointestinal toxicity occurring with use of Vioxx, such as gastric bleeding, ulceration or perforation.

33. Vioxx was and is unsafe for human ingestion;

34. Defendant designed, manufactured, and/or marketed Vioxx with knowledge that it was a dangerously defective product;

35. Defendant acted knowingly, recklessly, or negligently in marketing and selling Vioxx;

36. Defendant conducted, either directly or indirectly, inadequate testing of Vioxx;

37. Defendant acted to conceal or failed to adequately warn consumers of the adverse health hazards caused by using Vioxx;

38. Defendant falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety of using Vioxx;

39. Defendant knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of Vioxx from governmental regulators and the consuming public.

40. Defendant's post-marketing safety and surveillance system was designed and implemented in an unreasonable manner.

41. Defendant designed and manufactured a drug that was dangerously defective because its use leads to or poses a substantial increased risk of the existence of potentially dangerous side effects, including, but not limited to, heart attack and stroke.

42. Defendant knew or should have known that the ingestion of Vioxx leads to or poses a substantial increased risk of side effects.

43. Defendant continued to manufacture, label, license, market, distribute, promote and/or sell the drug, Vioxx, notwithstanding its knowledge of the drug's dangerous nature and side effects.

44. The warnings and information defendant provided with Vioxx were inadequate in warning of the potential hazards resulting from its use.

45. Ingestion of Vioxx causes an increased risk of side effects and the public was not properly warned.

46. Defendant failed to use reasonable care to design an arthritis drug (Vioxx) that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous.

47. Defendant failed to use reasonable care in designing and manufacturing Vioxx so as to make it safe for its intended uses, not defective and not unreasonably dangerous.

48. Defendant failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discovery such defects and unreasonably dangerous conditions associated with Defendant's Vioxx.

49. Defendant failed to comply with and/or to use reasonable care to comply with standards of care including accepted industry standards.

50. Defendant failed to use reasonable care to timely remove and/or recall from the market, retrofit, and/or otherwise prevent the continued contact of plaintiff or person like plaintiff with such defects and unreasonably dangerous conditions of Vioxx.

51. Defendant failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Vioxx.

52. Defendant failed to use reasonable care to warn plaintiffs of dangers known and/or reasonably suspected to Defendant to be associated with Vioxx.

53. Vioxx was unreasonably dangerous because of defendant's inadequate warnings.

54. Defendant failed to issue proper warnings regarding all possible adverse side effects associated with the use of Vioxx and the comparative severity and duration of such adverse effects, despite the fact the defendant knew, or should have known that numerous case reports, adverse event reports, and other data that associated Vioxx with myocardial infarction and stroke.

55. Defendant failed to warn Plaintiffs prior to actively encouraging and promoting the sale of Vioxx, either directly, or indirectly, orally, in writing, or other media about the adverse side effects associated with the use of Vioxx, including, but not limited to, death, myocardial infarction and stroke; and the possibility of becoming disabled as a result of using Vioxx.

56. Defendant failed to timely develop and implement a safer, alternative design of Vioxx, which would meet the same need without the known risks associated with Vioxx and which would have made the product too expensive to maintain its utility.

57. As a direct and proximate cause and result of the defendant's negligence, carelessness, failure to warn, providing inadequate warnings, breach of express warranty, providing of a product that was unreasonably dangerous in design, and providing a product that was unreasonably dangerous in construction and/or composition, plaintiff sustained injuries and defendant is liable for those injuries under the Louisiana Products Liability Act.

58. Further, defendant, Merck, is a seller within the meaning of Louisiana Law, more particularly those articles including La. Civil Code Arts. 2520, etc. By adoption of the above factual allegations contained in this petition, Defendant, Merck, aforementioned conduct was committed in bad faith causing the product to be unreasonably dangerous and unfit for its intended, reasonably foreseeable and/or ordinary purpose for which is was intended, rendering Vioxx with a redhibition defect. Plaintiff therefore alleges he/she is entitled to Redhibition for the purchase of the product, along with penalties, costs, attorney fees, and a refund of the purchase price. Had plaintiff been properly informed, plaintiff would not have purchased Vioxx.

## PLAINTIFF'S USE OF VIOXX

59. Plaintiff began taking Vioxx on or about December 2003. As a result of taking Vioxx, Plaintiff suffered a Pulmonary Embolism and subsequently died on August 6, 2004.

60. Had Defendants, Merck, and/or Dr. Sophia L. Morris properly disclosed the risks associated with using Vioxx, Plaintiff would not have taken the drug.

## MEDICAL MALPRACTICE

61. Since all facts are undetermined at this time, alternatively and/or jointly, Petitioner alleges that his/her treating physician, Dr. Sophia L. Morris, was negligent in the following, non-exclusive list of particulars:

   a. Failure to fully monitor and evaluate petitioner's heart function and/or other adverse medical effects.

   b. Failure to accurately monitor and diagnose petitioner's heart and/or other adverse medical effects when petitioner exhibited signs of a deteriorating medical condition;

   c. Failure to recognize that Vioxx was a cause of petitioner's heart and/or and/or other adverse medical effects;

   d. Failure to warn or adequately inform petitioner of the potential harm associated with the use of Vioxx, and failure to protect petitioner from that harm; and;

Page 9 of 11

    e. Failure to properly render appropriate treatment to plaintiff;

    f. Failure to know of the medical literature written about the problems associated with Vioxx.

    g. Any and all other acts of negligence which will be proven at the trial of this matter.

62. Petitioner, Jacob Lewis, Individually, and on behalf of his deceased wife, Debra Lewis, is entitled to survival damages for Debra Lewis and itemized survival damages are as follows:

    a. Physical pain and suffering; and

    b. Mental anguish and emotional distress.

63. Petitioner, Jacob Lewis, Individually, and on Behalf of his deceased wife, Debra Lewis, itemize his damages for the wrongful death of decedent as follows:

    a. Medical expenses;

    b. Funeral expenses;

    c. Loss of love and affection - past/present/future;

    d. Loss of society - past/present/future; and

    e. Loss of consortium - past/present/future.

**WHEREFORE**, petitioner, Jacob Lewis, Individually and on Behalf of his Deceased Wife, Debra Lewis, prays that defendants, Merck & Company, Inc. and Dr. Sophia L. Morris, be served with a copy of this petition and duly cited to appear and answer same, and that after due proceedings are had, that there be judgment herein in favor of petitioner, Jacob Lewis, Individually, and on behalf of his deceased wife, Debra Lewis, against the defendants, Merck & Company, Inc. and Dr. Sophia L. Morris, jointly, severally, and *in solido*, for an amount reasonable in the premises and for legal interest from the date of the filing of the complaint until paid and for all costs of these

proceedings, and for all general and equitable relief as allowed by law.

Respectfully submitted,

ALLAN BERGER & ASSOCIATES, P.L.C.

ALLAN BERGER (BAR NO. 2977)
JOHN D. SILEO (BAR NO. 17797)
4173 Canal St.
New Orleans, LA 70119-5972
(504) 486-9481
FAX: (504) 483-8130

**PLEASE SERVE:**

Merck & Co., Inc.
Through its registered agent for service
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70809

Dr. Sophia L. Morris
5640 Read Blvd., Suite 300
New Orleans, Louisiana 70127

Page 11 of 11

05/31/06 WED 12:46 [TX/RX NO 7446]

FILED

2005 DEC 28 A 10: 26

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  05-12714                                             DIVISION: L-6

JACOB LEWIS, INDIVIDUALLY AND ON BEHALF OF HIS
DECEASED WIFE, DEBRA LEWIS

VERSUS

MERCK & COMPANY, INC. AND
DR. SOPHIA L. MORRIS

FILED: _____           _____
                                                               DEPUTY CLERK

### FIRST SUPPLEMENTAL AND AMENDING PETITION

NOW INTO COURT, through undersigned counsel comes plaintiff, JACOB LEWIS, in the above entitled and numbered cause, respectfully represent that he desires to amend his Petition filed on November 21, 2005, in the following respects:

1.

Plaintiff hereby reiterates and reavers each and every allegation of his original petition as if copied in extenso.

2.

Where the name DEBRA LEWIS appears in the caption and body of the petition, let it be changed to read HESTER LEWIS.

WHEREFORE, petitioner, Jacob Lewis, Individually and on Behalf of his Deceased Wife, Hester Lewis, prays that defendants, Merck & Company, Inc. and Dr. Sophia L. Morris, be served with a copy of this petition and duly cited to appear and answer same, and that after due proceedings are had, that there be judgment herein in favor of petitioner, Jacob Lewis, Individually, and on behalf of his deceased wife, Hester Lewis, against the defendants, Merck & Company, Inc. and Dr. Sophia L. Morris, jointly, severally, and *in solido*, for an amount reasonable in the premises and for legal interest from the date of the filing of the complaint until paid and for all costs of these

proceedings, and for all general and equitable relief as allowed by law.

Respectfully submitted,

ALLAN BERGER & ASSOCIATES, P.L.C.

ALLAN BERGER (BAR NO. 2977)
JOHN D. SILEO (BAR NO. 17797)
4173 Canal St.
New Orleans, LA 70119-5972
(504) 486-9481
FAX: (504) 483-8130

**PLEASE SERVE:**

Merck & Co., Inc.
Through its registered agent for service
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70809

Dr. Sophia L. Morris
5640 Read Blvd., Suite 300
New Orleans, Louisiana 70127

Page 2 of 2



**LOUISIANA
PATIENTS' COMPENSATION FUND**
www.lapcf.louisiana.gov
**CERTIFICATE OF ENROLLMENT**

SOPHIA L. MORRIS
WEST JEFFERSON MEDICAL CENTER
1101 MEDICAL CENTER BLVD.
MARRERO, LA 70072

The above named Health Care Provider is hereby certified as an Enrollee under La. R.S. 40:1299.41 et seq., with effective dates as follows:

| ENROLLMENT PERIOD | COMPANY | TYPE COVERAGE | CLASS TYPE | SPECIALTY |
|---|---|---|---|---|
| 07/01/2005 – 07/01/2006 | LAMMICO INSURANCE COMPANY | CLAIMS MADE | CLASS 2A | INTERNAL MEDICINE-NO SURGERY |
| 07/01/2004 – 07/01/2005 | LAMMICO INSURANCE COMPANY | CLAIMS MADE | CLASS 2A | INTERNAL MEDICINE-NO SURGERY |
| 07/01/2003 – 07/01/2004 | LAMMICO INSURANCE COMPANY | CLAIMS MADE | CLASS 2A | INTERNAL MEDICINE-NO SURGERY |

It is further certified that professional liability coverage for ONE HUNDRED THOUSAND ($100,000.00) Dollars through the above named insurance company, acknowledges primary responsibility for the indicated period(s).

It is further acknowledged that surcharges for excess coverages are paid for the indicated period(s).

**This certificate verifies the type of coverage and payment to the Patients' Compensation Fund; however, qualification for a medical review panel can only be determined at the time the request is filed.**

Date: 6/01/2006

LOUISIANA PATIENTS' COMPENSATION

EXHIBIT "B"



**LOUISIANA
PATIENTS' COMPENSATION FUND**

www.lapcf.louisiana.gov

**CERTIFICATE OF ENROLLMENT**

SOPHIA L. MORRIS
WEST JEFFERSON MEDICAL CENTER
1101 MEDICAL CENTER BLVD.
MARRERO, LA  70072

The above named Health Care Provider is hereby certified as an Enrollee under La. R.S. 40:1299.41 et seq., with effective dates as follows:

| ENROLLMENT PERIOD | COMPANY | TYPE COVERAGE | CLASS TYPE | SPECIALTY |
|---|---|---|---|---|
| 07/01/2005 – 07/01/2006 | LAMMICO INSURANCE COMPANY | CLAIMS MADE | CLASS 2A | INTERNAL MEDICINE- NO SURGERY |
| 07/01/2004 – 07/01/2005 | LAMMICO INSURANCE COMPANY | CLAIMS MADE | CLASS 2A | INTERNAL MEDICINE- NO SURGERY |

It is further certified that professional liability coverage for ONE HUNDRED THOUSAND ($100,000.00) Dollars through the above named insurance company, acknowledges primary responsibility for the indicated period(s).

It is further acknowledged that surcharges for excess coverages are paid for the indicated period(s).

**This certificate verifies the type of coverage and payment to the Patients' Compensation Fund; however, qualification for a medical review panel can only be determined at the time the request is filed.**

Date: 6/01/2006

*Lorraine Lebeau*
LOUISIANA PATIENTS' COMPENSATION FUND