UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | * |
|   Products Liability Litigation | * |
| | * |
| This Document Relates to: | *   MDL No. 1657 |
| | * |
|   BOYD EDMONDS and | *   SECTION L |
|     JANET EDMONDS, Plaintiffs, | * |
| | *   JUDGE ELDON E. FALLON |
|   versus | * |
| | *   MAGISTRATE JUDGE |
|   MERCK & CO., INC., Defendant, | *   KNOWLES |
| | * |
|   Case No. 05-5450, | * |
| | * |
|   &  | * |
| | * |
|   DONALD STINSON, Plaintiff, | * |
| | * |
|   versus | * |
| | * |
|   MERCK & CO., INC., Defendant, | * |
| | * |
|   Case No. 05-5494, | * |
| | * |
|   & | * |
| | * |
|   TIMOTHY R. WATSON, Plaintiff, | * |
| | * |
|   versus | * |
| | * |
|   MERCK & CO., INC., Defendant, | * |
| | * |
|   Case No. 05-5545. | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MERCK'S STATEMENT OF MATERIAL FACTS
<u>AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED</u>**

831192v.1

Pursuant to Local Rule 56.1, Merck & Co., Inc. hereby submits the following Statement of Material Facts as to Which There is No Genuine Issue to be Tried in support of its Motion for Summary Judgment:

### *Vioxx Was Approved By The FDA*

1. On May 20, 1999, the FDA approved Vioxx as safe and effective for treatment of osteoarthritic pain, primary dysmenorrhea, and acute pain. (*See* MRK-99420021411-34 (May 20, 1999 Approval Letter from R. DeLap of FDA to R. Silverman of Merck) (attached as Ex. 1).)

### *VIGOR Study Leads To A Change In Vioxx's FDA-Approved Label*

2. After Vioxx was approved by the FDA, Merck continued to conduct clinical trials to assess the safety and efficacy of Vioxx for additional patient populations and other medical conditions. (*See, e.g.*, MRK-I8940042881-83 (cover letter to FDA enclosing Amended VIGOR Protocol – a clinical trial examining gastrointestinal toxicity) (attached as Ex. 2).)

3. In March 2000, Merck learned the preliminary results of the Vioxx GI Outcomes Research ("VIGOR") study, a double-blind, 8,000-patient trial designed to assess the relative incidence of gastrointestinal perforations, ulcers, and bleeds ("PUBs") in rheumatoid arthritis patients treated with Vioxx as compared to those treated with the drug naproxen. (*See* Testimony of Alise Reicin, M.D. 1658:7–1662:4, *Evelyn Irvin Plunkett v. Merck & Co., Inc.* (Dec. 6, 2005) (attached as Ex. 3).)

4. The VIGOR data showed that patients taking Vioxx suffered fewer serious gastrointestinal PUBs than patients taking naproxen, and it also showed that the Vioxx group suffered a higher incidence of serious cardiovascular thrombotic events than did naproxen users.

2

The difference was statistically significant.  (*See* MRK-I8940060171-238, at MRK-I8940060175 (March 23, 2000 facsimile from B. Goldmann of Merck to R. DeLap of FDA forwarding VIGOR data) (attached as Ex. 4).)

5. On April 11, 2002, the FDA approved a revised label for Vioxx.  This revised label incorporated the VIGOR results, the results from additional placebo-controlled studies, as well as a new indication for rheumatoid arthritis.  (*See*  MRK-ABS0323348–67 (April 11, 2002 approval letter from L. Goldkind of FDA to R. Silverman of Merck) (attached as Ex. 5).)

6. In approving the revised label, the FDA stated: "We have completed the review of these supplemental applications, as amended, and have concluded that adequate information has been presented to demonstrate that the drug products are safe and effective for use as recommended in the agreed upon enclosed labeling text."  (*See id.* at MRK-ABS0323349.)

7. The post-VIGOR label substantially revised the former label.  In the Precautions section, it read as follows:

> *Cardiovascular Effects*
>
> The information below should be taken into consideration and caution should be exercised when VIOXX is used in patients with a medical history of ischemic heart disease.
>
> In VIGOR, a study of 8076 patients (mean age 58; VIOXX n=4047, naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily (n=45) as compared to patients treated with naproxen 500 mg twice daily (n=19).  In VIGOR, mortality due to cardiovascular thrombotic events (7 vs. 6, VIOXX vs naproxen, respectively) was similar between the treatment groups.  (See CLINICAL STUDIES, *Special Studies, VIGOR, Other Safety Findings: Cardiovascular Safety.*)  In a placebo-controlled database derived from 2 studies with a total of 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n=1075) with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs 35 for patients treated with VIOXX 25 mg

once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs 3 for VIOXX versus placebo, respectively. The significance of the cardiovascular findings from these 3 studies (VIGOR and 2 placebo-controlled studies) is unknown. Prospective studies specifically designed to compare the incidence of serious CV events in patients taking VIOXX versus NSAID comparators or placebos have not been performed.

**Because of its lack of platelet effects, VIOXX is not a substitute for aspirin for cardiovascular prophylaxis.** Therefore, in patients taking VIOXX, antiplatelet therapies should not be discontinued and should be considered in patients with an indication for cardiovascular prophylaxis. (See CLINICAL STUDIES, *Special Studies, Platelets,* PRECAUTIONS, *Drug Interactions, Aspirin*.) Prospective, long-term studies on concomitant administration of VIOXX and aspirin evaluating cardiovascular outcomes have not been conducted.

(*See* MRK-P0011429–39 (April 2002 Dear Healthcare Professional letter enclosing revised Vioxx labeling with changes highlighted) (attached as Ex. 6).)

8. After revising the Vioxx label as approved by the FDA, Merck publicized the content of the new label to the medical community and the news media. (*See id.*; MRK-PRL0000246-50 (April 11, 2002 Merck Press Release) (attached as Ex. 7).)

*The First Vioxx Personal-Injury Class Action Suit Is Filed Against Merck*

9. On May 29, 2001, Dominick Lettieri and Mary Lombardozzi filed a complaint in the United States District Court for the Eastern District of New York seeking certification of a "nationwide class of persons who are taking . . . Vioxx . . . [or] Celebrex." *See* Complaint ¶ 1, *Lettieri v. Merck & Co., Inc.*, CV 01 3441 (E.D.N.Y. May 23, 2001) ("*Lettieri* Compl.") (attached as Ex. 8).

10. The *Lettieri* action sought relief under several theories, including for personal injury. *See Lettieri* Compl. ¶¶ 27-45.

11. On August 1, 2001, the Lettieri complaint was amended, substituting Alex Cain and William Watkins as new named plaintiffs and making other changes but retaining personal injury claims. *See* Amended Class Action Complaint ¶¶ 1, 20, 21, 37-53, *Cain v. Merck & Co., Inc.*, CV 01 3441 (E.D.N.Y. Aug. 1, 2001) (attached as Ex. 9).

4

831192v.1

12. On September 18, 2002, the Cain complaint was amended again, dropping personal injury claims, prior to any ruling on certification. *See* Second Amended Class Action Complaint, *Cain v. Merck & Co., Inc.*, CV 01 3441. (E.D.N.Y. Sept. 18, 2002) (attached as Ex. 10).

### Merck Obtains Additional Information About Vioxx Risks And Immediately Withdraws Vioxx From The Market

13. On September 24, 2004, an external safety board monitoring the results of a separate long-term study – the APPROVe study – informed Merck that interim data from the study showed an increased rate of cardiovascular events in the Vioxx arm compared to the placebo arm. (*See* MRK-ACH0000051–53 (September 24, 2004 facsimile from K. Horgan of Merck to P. Kim and B. Gertz of Merck forwarding APPROVe ESMB's meeting minutes and recommendations) (attached as Ex. 11).)

14. On September 30, 2004, Merck withdrew Vioxx from the market. (*See* MRK-N0520018917–20 (September 30, 2004 letter from N. Braunstein of Merck to B. Harvey of FDA) (attached as Ex. 12).)

15. Merck publicly announced the results of the APPROVe study and the withdrawal of Vioxx from the market in a press release on September 30, 2004. (*See* Merck, press release, *Merck Announces Voluntary Worldwide Withdrawal of VIOXX®* (Sept. 30, 2004), (attached as Ex. 13).)

16. The results of the APPROVe study and Merck's decision to withdraw Vioxx from the market were reported in major newspapers the next day, including the USA Today, the Wall Street Journal, and the New York Times. *See* Rita Rubin, *Merck halts Vioxx sales*, USA Today, Oct. 1, 2004, at A1 (attached as Ex. 14); Barbara Martinez, Anna Wilde

Mathews, Joann S. Lublin and Ron Winslow, *Expiration Date: Merck Pulls Vioxx From Market After Link to Heart Problems --- Stock Plunges Amid Questions About Drug Giant's Future*, Wall St. J., Oct. 1, 2004, at A1 (attached as Ex. 15); Gina Kolata, *A Widely Used Arthritis Drug Is Withdrawn*, N.Y. Times, Oct. 1, 2004, at A1 (attached as Ex. 16).

*Plaintiffs File Complaints Alleging Personal Injury Resulting From Their Use Of Vioxx*

17. On November 7, 2005, Boyd Edmonds and Janet Edmonds filed a complaint directly in this Court, alleging personal injury from Boyd Edmonds's use of Vioxx. (*See* Edmonds Compl. ¶ 9 (attached as Ex. 17).)

18. Edmonds resides in Alabama, was prescribed and took Vioxx there, and claims that he suffered two heart attacks in that state (one on March 27, 2001 and another on September 2, 2001). (*See* Edmonds Compl. ¶¶ 1, 9; Edmonds Fact Sheet at 2-3, 5, 7-8 (attached as Ex. 18).)

19. On November 8, 2005, Donald Stinson filed a complaint directly in this Court, alleging personal injury from his use of Vioxx. (*See* Stinson Compl. ¶ 5 (attached as Ex. 19).)

20. Stinson resides in Tennessee, was prescribed and took Vioxx there, and alleges that he suffered a heart attack on October 14, 2000 in that state. (*See* Ex. 19, Stinson Compl. ¶¶ 1, 5; Stinson Fact Sheet at 2-3, 5, 8 (attached as Ex. 20).)

21. On November 14, 2005, Timothy R. Watson filed a complaint directly in this Court, alleging personal injury from his use of Vioxx. (*See* Watson Compl. ¶ 34 (attached as Ex. 21).)

22. Watson resides in Kentucky, was prescribed and took Vioxx in that state, and alleges that he suffered a stroke in Kentucky on August 23, 2002. (*See* Watson Compl. ¶¶ 1, 4; Watson Fact Sheet at 2, 9, 10, 12 (attached as Ex. 22).)

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Merck & Co., Inc.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of September, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel