UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE<br>KNOWLES |
| CHARLES L. MASON, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF  CORNELIA PECHMANN, Ph.D.**

**(EXPERT CHALLENGE NO. 11)**

The Court has already imposed significant limitations on the testimony of plaintiff's marketing expert, Professor Cornelia Pechmann.  In *Smith v. Merck*, the Court ruled that Professor Pechmann, who is not a doctor and has no medical training, could not testify about whether a specific prescriber was misled or whether Merck's advertising was generally misleading:

> The challenge that Pechmann presents is that this is a person that is not a doctor, and it seems to me *it's difficult for her to say what a specific doctor did and why they did it and how they did it, so I don't see her testifying as to that*.  I see the thrust of her testimony mainly in the structure of [Merck's] campaign, the focus of the campaign, how the campaign or campaigns dealt with various information, various studies, and things of that sort.  I see it more as a general testimony than specifics, even perhaps how the advertising dealt with certain events and the levels of the advertising, television, or various other levels of it getting the message out, so to speak, and dealing with the message.  *I don't see her testifying*

1

*as to this doctor was misled or even this advertising was misleading because it depends upon who's listening to it as to whether or not it's misleading. I don't know whether something is generally misleading. I don't see that.*

(Sept. 6, 2006, *Smith v. Merck* Tr. at 5:4-20 (emphasis added); *see also* Sept. 8, 2006 Order (Record Docket Number 6762) (adopting rulings from Sept. 6, 2006 hearing).)

Undaunted, Professor Pechmann seeks to offer in this case the same opinions that this Court has previously excluded. Her report remains virtually unchanged. Apart from the addition of case-specific opinions regarding the effect of Merck's marketing on Mr. Mason and his prescribers – exactly the sort of testimony the Court prohibited in *Smith* – Professor Pechmann offers nothing new. Therefore, in accordance with this Court's prior rulings, the Court should rule that:

- Professor Pechmann may not testify that Nurse Olson Fields or Dr. Vogeler were misled by Merck's marketing. As this Court has already noted, Professor Pechmann is not a medical doctor and therefore lacks the qualifications necessary to determine whether information conveyed to Mr. Mason's prescribers by Merck was misleading. Additionally, to the extent that Professor Pechmann relies on her reading of Nurse Olson Fields' and Dr. Vogeler's depositions or her telephone conversation with Nurse Olson Fields to form her opinions that they were misled, these opinions must similarly be excluded. The jury will hear both Nurse Olson Fields (live) and Dr. Vogeler (by video) testify about the information they received from Merck and thus do not need Professor Pechmann to echo this testimony. It would also be highly prejudicial to allow Professor Pechmann to testify about her private telephone conversation with Nurse Olson Fields, as Merck and its experts are not allowed to have direct contact with individual prescribers.

- As the Court has already ruled, Professor Pechmann cannot testify about what doctors and medical personnel *other than* plaintiff's prescribers thought or knew either. Plaintiff hopes to use Professor Pechmann to talk about otherwise inadmissible "marketing reports." These are surveys and reports about what certain doctors *other than Mr. Smith's prescribers* knew about cardiovascular risks or recalled about the information they received from Merck sales representatives. That information is irrelevant and highly prejudicial, because Professor Pechmann intends to persuade the jurors that they can ascribe the understandings and experiences of these *other* physicians to plaintiff's prescribers, no matter what they say under oath.

2

- Professor Pechmann may not testify about "what Merck knew or when Merck knew it," as these are issues for the jury. The Court has refused to let other experts do this, including those who – unlike Professor Pechmann – have scientific and medical training. In particular, Professor Pechmann should be precluded from opining, as she does in her report, that "Merck's marketing executives knew or should have known that Vioxx® posed a potential cardiovascular risk." Because that opinion is the lynchpin for her opinion that Merck's marketing materials were misleading (because they did not disclose this risk that she claims Merck knew), the Court should follow its prior ruling and preclude her from offering this opinion as well.

- Professor Pechmann is unqualified to render an opinion on whether Merck's marketing complied with FDA regulations.

- Professor Pechmann may not discuss how much money Merck spent on marketing.

Merck therefore respectfully requests that this Court adopt its prior rulings regarding the admissibility of Professor Pechmann's testimony, for the reasons stated below and in Merck's prior briefing on this subject, which is incorporated herein by reference. (*See* Merck's Motion to Exclude Cornelia Pechmann, Ph.D. (Record Docket No. 6258), attached hereto as Exhibit A.)

**I.   LEGAL STANDARD.**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Motion to Exclude the Testimony of Isaac Wiener, M.D., filed September 19, 2006 and incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the requirements of the Federal Rules of Evidence, including Rules 401 and 403.

**II.   PROFESSOR PECHMANN MAY NOT TESTIFY ABOUT WHETHER MR. MASON'S PRESCRIBERS WERE MISLED BY MERCK'S ADVERTISING.**

As noted above, the Court already ruled in the *Smith* case that Professor Pechmann cannot testify about whether particular doctors were misled by Merck's marketing of Vioxx or

3

whether Merck failed to adequately warn them of Vioxx's potential cardiovascular risk. In this case, plaintiff has tried to avoid the Court's earlier ruling by having Professor Pechmann call one of the prescribers on the phone, interview her, and conclude on the basis of that interview that the prescriber was misled. That ploy fails, however, for the following reasons.

   **A.**  **Deposition Testimony and Telephone Conversations Are Not Proper Sources On Which Professor Pechmann May Rely In Forming Her Opinion.**

The primary basis for Professor Pechmann's case-specific opinions regarding Nurse Olson Fields and Dr. Vogeler are Professor Pechmann's review of their deposition transcripts and a private telephone conversation that she had with Nurse Olson Fields. (*See* Expert Report of Cornelia Pechmann ("Pechmann Rpt.") at ¶¶ 23(b), 24(b), attached hereto as Ex. B; Sept. 14, 2006 Deposition of Cornelia Pechmann, Ph.D. ("Pechmann 09/14/06 Dep.") at 13:12-24, 58:15-59:6, attached hereto as Ex. C.) These are not proper materials on which Professor Pechmann can reasonably rely. Although under Federal Rule of Evidence 703 an expert may rely on hearsay testimony in forming her opinion, this is only the case if it is the type of material reasonably relied on by an expert. As Professor Pechmann freely admits, the depositions on which she relies were not conducted in accordance with "standard marketing research practices." (Pechmann Rpt. at ¶ 23(d).) Additionally, Professor Pechmann has testified that she "wasn't treating [her telephone conversation with Nurse Olson Fields] like a marketing research project." (Pechmann 09/14/06 Dep. at 26:19-27:4.) Her reliance on these sources is thus inappropriate, meaning that any opinions based on them must be excluded.

   **B.**  **Professor Pechmann's Parroting Of Other Witnesses' Testimony Is Not Proper Expert Testimony And Must Be Excluded.**

Additionally, even if Professor Pechmann could properly rely on depositions and telephone conversations to form her opinions – which she cannot – she should not be permitted to simply recount or comment on the statements of other witnesses. Plaintiff has informed

Merck that Nurse Olson Fields will be testifying live at trial and that Dr. Vogeler will testify by deposition. The jury will accordingly hear from them directly about what information they received from Merck regarding the potential cardiovascular risks associated with Vioxx. As this Court ruled in *Plunkett v. Merck*, where plaintiff attempted to offer expert opinion merely to parrot the testimony of other witnesses in the proceeding:

> Validating or adding credibility to another witness' testimony is not the proper realm for an expert. Cheerleading the testimony of another [witness] does not constitute expert testimony. The Plaintiff's attorneys can argue for [these other witnesses] just as well as Dr. Fletcher.

(Feb. 2, 2006 *Plunkett v. Merck* Order at 9-10.) So should Professor Pechmann be precluded from simply repeating the testimony of other witnesses here.

### C. Because Allowing Professor Pechmann To Testify About Her Telephone Conversation With Nurse Olson Fields Is Unfair and Would Result In Prejudice To Merck, Opinions Based On This Conversation Must Be Excluded.

Finally, it would be unfair and prejudicial for the Court to allow Professor Pechmann to offer opinions based on her *ex parte* contact with Nurse Olson Fields. The Court has prohibited Merck and its experts from making similar contact with plaintiff's prescribers and treating physicians. Merck's experts therefore have not had a similar opportunity to explore Nurse Olson Fields' recollections regarding the communications that she received from Merck. It would be unfair and unduly prejudicial to afford one party an advantage over the other by allowing its paid experts to have private conversations with prescribers and then rely on those conversations in forming their opinions. Merck thus requests that the Court exclude all of Professor Pechmann's opinions that were formed as a result of her conversation with Nurse Olson Fields, as well as all testimony about the substance of that hearsay conversation.

### III. TESTIMONY REGARDING MERCK'S INTERNAL MARKETING RESEARCH IS IRRELEVANT AND MUST BE EXCLUDED.

As has been more fully discussed in prior briefing, Professor Pechmann should likewise be precluded from testifying about the results of internal marketing research conducted on behalf of Merck or the interpretation that she believes the jury should draw from this research.

The marketing research Professor Pechmann seeks to explain to the jury consists of studies of the number of visits made by sales representatives to physicians, sales data, copy testing of promotional materials, and physicians' and consumers' perceptions of Vioxx.  (May 26, 2006 Deposition of Cornelia Pechmann, Ph.D. at 295:20-296:17, attached hereto as Ex. D.)  This testimony should be excluded for the same reasons already articulated by the Court.  Professor Pechmann is not qualified to say what medical personnel understood.  Moreover, the only purpose of this evidence is to confuse the jury into thinking that Mr. Mason's prescribers – from whom the jury will hear directly – must have thought whatever the surveyed doctors thought, whether or not they heard the same thing from the same source.

Each of these categories of studies is inadmissible hearsay, irrelevant, and highly prejudicial; it could not be presented to the jury directly.  For instance, Professor Pechmann admits that one set of studies she relies on, those involving surveys regarding physician's recall of information conveyed by sales representatives, does not prove what Merck's sales representatives actually said to the doctors being surveyed (let alone what different sales representatives said at different times to Mr. Mason's prescribers).  At most, this evidence shows what the doctors – none of whom were plaintiff's doctor – said they recalled having heard from sales representatives.  (June 15, 2006 Deposition of Cornelia Pechmann, Ph.D. at 99:10-16 ("Q: If I understand this testing, it's asking doctors what they recalled.  That doesn't necessarily mean, Professor Pechmann that something was not said; it's simply what the doctor recalled,

correct? . . . A: That is true."), attached hereto as Ex. E.)  Therefore, not only are these studies double hearsay, but they are completely irrelevant.  By offering Professor Pechmann to testify about the contents of these studies, plaintiff is attempting to perform an end run around the rules of evidence.  The Court should see through this artifice and exclude Professor Pechmann's testimony on Merck's internal marketing research.

### IV. PROFESSOR PECHMANN'S TESTIMONY ABOUT MARKETING OR WHAT PHYSICIANS KNEW BEFORE THE APRIL 2002 LABEL IS IRRELEVANT AND UNDULY PREJUDICIAL.

Finally, the Court should exclude any testimony proffered by Professor Pechmann regarding Merck's marketing or the state of physicians' knowledge prior to April 2002.  Mason is a post-VIGOR label case.  In a case about the adequacy of the post-VIGOR label, Professor Pechmann's testimony that physicians did not understand the cardiovascular risks in periods pre-dating that label is irrelevant and prejudicial.  The issue should be whether Merck's April 2002 post-VIGOR label and other communications after that date adequately warned Mr. Mason's prescribers of known or reasonably knowable risks associated with Vioxx.  The Court should thus exclude Professor Pechmann's opinions to the extent that they are based on pre-VIGOR label communications from Merck.

### V. CONCLUSION.

For the reasons stated above and in Merck's prior briefing, Merck respectfully requests that the Court grant Merck's Motion to Exclude the Testimony of Cornelia Pechmann, Ph.D. in its entirety.

831229v.1

Dated: September 25, 2006                    Respectfully submitted,

                                                                                              */s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

8

831229v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Testimony of Cornelia Pechmann, Ph.D., has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 25th day of September, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

831229v.1