# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
   *Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S PROPOSED INSTRUCTIONS AND INTERROGATORIES, AND INITIAL  OBJECTIONS TO THE PROPOSED FIRST DRAFT OF THE COURT'S JURY CHARGE AND INSTRUCTIONS

---

TO THE HONORABLE JUDGE OF SAID COURT:

On Friday, September 22, 2006, this Court delivered to the parties a first draft of the proposed jury charge and interrogatories in this case for review and comment.  At that time, the Court instructed the parties not to submit their own proposed charges as a whole.

After reviewing the Court's draft, Plaintiff can agree with the vast majority of the submissions the Court proposes to make; however, there are several critical issues where the Court has either used an improper standard under Kentucky or federal law or omitted what Plaintiff believes is an important element of his claims and damages. For that reason, Plaintiff files this Memorandum in Support of Plaintiff's Proposed Instructions and Interrogatories and Initial Objections to the Proposed First Draft of the Court's Jury Charge and Instructions.[1] In support, Plaintiff would show the following:

---

[1] Plaintiff reserves the right to assert additional objections or urge other submissions raised by changes and discussions at the Court's informal and formal charge conferences.

I.      **Kentucky Has Adopted the Restatement's "Substantial Factor" Test for Causation; Therefore, Use of and an Instruction on the Term "Proximate Causation" is Improper**

This Court has utilized the concept of proximate causation in its proposed instructions and interrogatories. Merck agrees, however, that Kentucky substantive law, which governs in this case,[2] however, does not.  Instead, Kentucky has adopted the "substantial factor" test set forth in Restatement (Second) of Torts § 431which provides that " The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm . . ." *See Deutsch v. Shein*,  597 S.W.2d 141, 143-44 (Ky. 1980) (adopting "substantial factor" test); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91 (Ky. 2003) (reaffirming adoption of "substantial factor" test  - "this standard is consistent with Kentucky law") (citing *McCoy v. Carter*, 323 S.W.2d 210, 215 (Ky. 1959)).  For this reason, the Kentucky Instruction to Juries utilize this standard even for claims other than negligence. *See, e.g.*, Palmore, 2 *Ky. Instructions to Juries* § 31.08 (strict liability).

Plaintiff has, therefore, submitted Instruction No. 7, which sets forth the "substantial factor" test.[3] It states:

> In order for Garry Smith to prevail on any of his claims, he must establish that Vioxx was a "substantial factor" in bringing about his injuries.

---

[2]Causation is considered substantive law for *Erie* purposes. *Shedlock v. Uniroyal Goodrich Tire Co.*, 1999 U.S. App. LEXIS 11113 *5 (6th Cir. May 26, 1999); *In re Bendectin Litig.*,  857 F.2d 290, 302 (6th Cir.1988). Thus, Kentucky law concerning causation would apply.

[3]Although Kentucky does not have a pattern instruction for the "substantial factor" test or any other on causation, other states that have adopted this Restatement section do. Thus, Proposed Instruction No. 7 is taken verbatim from 2-4 California Forms of Jury Instruction CACI 430, "Causation: Substantial Factor," which provides: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct."

I will now define the term "substantial factor" for you. A substantial factor in causing harm is one that a reasonable person would consider to have contributed to or been a cause of the harm. It does not have to be the only cause of the harm; however, it must be more than a remote, trivial, or insignificant factor.  Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

In addition, Plaintiff has submitted Proposed Jury Interrogatories 1 and 2, which utilize this standard, to make them comport with Kentucky law. Merck does not agree actually to ***use*** the admittedly applicable standard. Instead, it would mix and match them. The Kentucky pattern instructions actually use the "substantial factor" standard. In fact, most of Plaintiff's proposed submissions are drawn directly from these pattern instruction.

Because Kentucky substantive law governs here, this Court should utilize the causation standard its courts have adopted. Plaintiff respectfully requests that this Court do so.

## II.    This Court Should Not Submit a Question or Instruction on Either the Alleged Negligence of Plaintiff or His Treating Physician

### A.    Merck Has Not Included These Affirmative Defenses in Its Pretrial Order

The pretrial order in this case controls the issues to be tried.  *See, e.g., Marschand v. Norfolk & W. Ry.,* 81 F.3d 714, 716 (7th Cir. 1996)*; Roland M. v. Concord Sch. Comm*., 910 F.2d 983, 998-99 (1st Cir. 1990).  Merck did not include a reference to these affirmative defenses in its statement of its contentions. Most courts are, therefore, reluctant to allow a party to amend its pleadings under such circumstances. *Roland M*, 910 F.2d at 998-99.

These issue cannot be said to have been tried by implied consent since evidence as to any alleged contributory negligence  addresses other pleaded issues in the case. *U.S. v. Ideal Elec. Sec.*

3

*Co.*, 81 F.3d 240, 247 (D.C. Cir. 1996); *Douglas v. Owen*, 50 F.3d 1226, 1235-36 (3d Cir. 1995);

*DCPB, Inc., v. City of Lebanon,* 957 F.2d 913, 917 (1ˢᵗ Cir. 1992).

Because they are not supported in the pretrial order, they should not be submitted to the jury.

**B.    The Court Should Not Submit an Instruction or Question on Plaintiff's Alleged Negligence**

**1.    No Legally Sufficient Evidence Supports Its Submission in Light of the Learned Intermediary Doctrine**

In this case, Merck wants to have it both ways: to apply the learned intermediary doctrine to free it from any duty to warn the Plaintiff directly of the dangers associated with Vioxx yet also to deprive the Plaintiff of recovery because of his own alleged negligence or knowledge of such dangers. The two concepts are fundamentally incompatible. As one commentator explained:

> Though these time-honored defenses [contributory negligence and assumption of risk] are frequently invoked to defeat recovery, they are theoretically inapplicable when the defendant's breach of duty is based on a failure to warn. To allow these defenses is to indulge in circular reasoning, since usually the plaintiff cannot be said to have assumed a risk of which he was ignorant or to have contributed to his own injury when he had no way of reasonably ascertaining that the danger of injury existed.

Dillard and Hart, *Product Liability: Directions for Use and the Duty To Warn*, 41 Va.L.Rev. 145, 163 (1955). For these reasons, the only circumstances in which courts have permitted the defense of Plaintiff's alleged negligence to be asserted in a failure to warn case where there is a learned intermediary involved are where the patient failed to inform the learned intermediary of his or her ***relevant*** medical history or about side effects experienced ***after*** ingesting a certain medication.[4]

---

[4] *See, e.g., Dyer v Best Pharmacal*,  577 P2d 1084 (Ariz. App. 1978) (patient misled doctor re her medical history). Even intentional misuse by the patient has not been held to break the chain of causation. *Erony v. Alza Corp*., 913 F. Supp. 195 (S.D.N.Y. 1995); *Ortho Pharm.Corp. v. Chapman*, 388 N.E.2d 541 (Ind. [1st Dist.] 1979).

Apparently aware of these severe limitations, Merck attempts to portray various disparate actions by Garry Smith, often remote in the past, as falling within them . They do not. For example, Merck contends that a submission on contributory negligence is warranted by Mr. Smith's alleged failure to heed ***another*** doctor's advice sometime in the distant past about ***investigating*** heart issues. That is hardly non-compliance and certainly not activity that would qualify as contributory negligence ***in this case***.

Merck likewise claims Mr. Smith failed to inform Dr. Grefer of unrelated family medical history. There is no evidence that any of the conditions suffered by his scores of relatives have any relation to the injuries Mr. Smith himself suffered nor was there any reliable medical expert testimony to that end. Similarly, Merck would have this Court believe that Mr. Smith's Alleged failure to reveal a suggestion of hyperlipidemia, ***a condition never listed or mentioned in Merck's label for Vioxx,*** somehow makes him contributorily negligent. There is no testimony in this record that such a revelation would have been relevant to Dr. Grefer's decision to prescribe Vioxx. Finally, Merck claims that Mr. Smith failed to read the package insert. He was never required to do so. Instead, he is entitled to rely upon his doctor. Plaintiff's counsel was unable to find any case in which it was alleged that Plaintiff's alleged knowledge of any risks associated with a prescription drug trumps his physician's lack of such knowledge where the learned intermediary doctrine applied. Thus, there is no evidence in this record of any of these theories justifying the submission of this issue.[5]  That fact alone should prevent its submission.

---

[5]A party is not entitled to a jury instruction for which there is no evidentiary predicate at trial. *Perry v. Ethan Allen, Inc*., 115 F.3d 143, 153 (2d Cir. 1997).

2.      **Merck Would Have this Court Misuse the Notion of Comparative Negligence**

Although, for purposes of getting an instruction, Merck focuses on the evidentiary scraps it can, before the jury,  Merck apparently wants to use a negligence question to focus undue attention and cast doubt upon Mr. Smith's lifestyle or actions to free Merck from responsibility for its own failure to warn. There is no legal basis for misusing the notion of comparative negligence in this fashion. To the contrary,  virtually all other courts that have considered the question whether a patient's own pre-treatment "negligence" could be considered for purposes of comparative negligence have ultimately decided that it should not.[6]  Instead, under certain circumstances, the Plaintiff's condition, risk factors, lifestyle or habits could be factors that a jury might consider when it determines whether a defendant's actions caused a plaintiff's injuries.[7]  In addition,  such evidence

---

[6]*See Owens v Stokoe*, 115 Ill. 2d 177,183; 503 N.E.2d 251 (1987) (dental patient's failure to obtain second opinion, prior poor oral hygiene, and alleged  refusal to  permit X-ray to be taken of his teeth were insufficient to raise issue of contributory negligence because parasthesia was proximately caused by damage to the left interior alveolar nerve during surgery and conduct of patient did not prevent surgeon from properly performing surgery); *Eiss v Lillis*, 233 Va 545, 553-554; 357 S.E.2d 539; 3(1987) (the plaintiff's negligently taking aspirin along with heart medicine before the physician's alleged negligence was not a proximate cause of the plaintiff's death); *Jensen v Archbishop Bergan Mercy Hosp*, 236 Neb 1, 15-16; 459 N.W.2d 178 (1990) (although the plaintiff's failure to lose weight may have been causally related to his injury, his conduct regarding his weight problem merely furnished an occasion or condition for the medical care that was the basis of the medical malpractice action, and it was improper to instruct the jury to consider whether the plaintiff had been contributorily negligent); *Harding v Deiss*, 2000 MT 169, 300 Mont 312, 318; 3 P3d 1286 (2000) (the plaintiff's negligence in riding a horse when she had asthma and was allergic to horses could not be compared to physician's failure to immediately intubate her upon her arrival at the hospital); *DeMoss v Hamilton*, 644 N.W.2d 302, 307 (Iowa 2002) (the plaintiff's failure to stop smoking, have regular follow-up examinations, lose weight, and begin an exercise program after a heart attack provided the occasion for medical treatment, but was irrelevant to the question of defendant's medical negligence); *see also Harvey v. Mid-Coast Hosp,* 36 F. Supp. 2d 32, 37-38 (D Me, 1999); *Spence v. Aspen Skiing Co*, 820 F. Supp. 542, 544 (D Colo, 1993): *Van Vacter v. Hierholzer*, 865 S.W.2d 355, 359 (Mo App. 1993); *Nelson v. McCreary*, 694 A.2d 897 (D.C. App. 1997).

[7]*See, e.g.,  Fall v. White,* 449 N.E.2d 628, 631-32 (Ind. App. [4th Dist.] 1983) (even though pre-treatment evidence is inadmissable for purposes of proving contributory negligence, such evidence may be admissible for purposes of proving causation).

could be relevant to damages and the question of Mr. Smith's life expectancy or "in assessing the value of the interest destroyed or affected."  *See* Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353, 1361 (1981)). What is crystal clear, however, is that such evidence does not support the submission of a jury interrogatory on Garry Smith's own alleged negligence. The Court should not submit such a question or instruction to this jury.

C.     **The Court Should Not Submit an Instruction or Question on Garry's Smith Physician's Alleged Negligence Either**

As explained above, the notion that there can even be any contributory negligence in a failure to warn case is suspect and circular. If a physician did not receive an adequate warning or got a misleading one, how is it possible that he or she could have been negligent in not heading it?  In this respect, a failure to adequately warn claim, like the one here, as opposed to one in which there was no warning at all, is more akin to a claim alleging failure to disclose or misrepresentation where another's negligence is no defense. In any event, submitting such an instruction would lead to a contradictory verdict: a jury could find that Merck did not adequately warn Dr. Grefer but also find that r. Grefer fell below the standard of care because he alleged ly failed to read a misleading article disclosing the same information the jury has just found was inadequate or misleading.

The Fifth Circuit has recently rejected Merck's argument that a doctor is obliged to dig, like some truffle hunting pig, for information sufficient to enable him to determine whether or not to prescribe medication for his patients. Instead, it held that mere mention of the Plaintiff's condition in a label in not sufficient to escape liability for failure to warn. "McNeil's claim . . . is  not that the warning is inadequate because her condition was not mentioned. Rather, her argument, is that the

label is misleading as to the risk level for developing the condition. . . even in the context of a learned intermediary, 'if the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user.'"[8] Thus, the Court explained that "the FDA regulations require a manufacturer to inform a medical professional ***precisely how to exercise his professional judgment in certain circumstances***." *Id*. at *11.

Perhaps for this reason, Comment n to Restatement (Second) of Torts §402A prevents the use of contributory negligence as a defense to a failure to warn claim under these circumstances. It states:

> n. Contributory negligence.  Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. ***Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.*** On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

(Emphasis added). The real question here then is whether the warning here was adequate to apprise the doctor of the CV risks of Vioxx, in other words, whether Merck fulfilled its duty to warn. The focus is, therefore, properly on whether that label adequately warned Mr Smith's physicians of the

---

[8]*McNeil v. Wyeth*, 2006 U.S. App. LEXIS 21499*10 n.3 (5th Cir. Aug. 22, 2006)(quoting *Wyeth-AyerstLab. Co. v. Medrano*, 28 S.W.3d 87 (Tex. App.-Texarkana 2000, no writ); *see also Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801(Tex. 1978); *Crocker v. Winthrop Labs*., 514 S.W.2d 429 (Tex. 1974). Other courts have also recognized that warnings that are "unreasonably diluted" may be misleading and thus inadequate. *See Salmon v. Parke, Davis & Co.*, 520 F.2d 1359 (4th Cir. 1975) (deciding that although a specific condition was mentioned in the label, "[c]omparing the company's warning with [that suggested in] the article, a jury could infer that Parke, Davis' version was unreasonably diluted").

CV risks of Vioxx. Merck would improperly shift that burden to Plaintiffs' to show that he was reasonable in his reading of the label, which is not contributory negligence or an element of a negligence claim. In this respect, the  jury would effectively assume that the Vioxx label was adequate.  If the jury considers Mr. Smith's physician's conduct at all, it should be encompassed in the jury's deliberations on causation.[9]  A question on his negligence is improper and misleading.

It is also unsupported by the facts in this case. Merck first suggests that such a submission is proper because Dr. Grefer allegedly failed to read a letter from Merck enclosing the article on the same VIGOR article the NEJM later found misleading and retracted. Merck does not point to anything in the letter or article that would have changed the information included in its label or more adequately apprised Dr. Grefer of whether he should have prescribed Vioxx for Garry Smith. It is little wonder since the implication of Merck's argument is that a physician must read its article to have sufficient information with which to prescribe the drug. In that fashion, Merck  admits that the label was inadequate. Most important, to have justified a submission, ***Merck would have had to have provided the jury with expert testimony that Dr. Grefer's failure to read Merck's discredited article or self-serving letter fell below the standard of care required***. There was no such evidence. Instead, Merck's throwaway argument is a simple "red herring" tossed to the Court to get an instruction to which Merck is not entitled.

---

[9]Thus, in *Hamilton v. Hardy*, 549 P.2d 1099 (Colo. App. 1976), the court went so far as to hold that a prescribing physician's actions are irrelevant to a drug manufacturer's liability. It stated: "where an ethical (*i.e.*, prescription) drug manufacturer puts a drug on the market without adequate warning, the prescribing doctor's conduct may not insulate the manufacturer from liability where the inadequacy of the warning may have contributed to the plaintiff's injury." *Id.* at 1109. Instead, a defendant drug manufacturer may show that a physician's negligence was an intervening cause of a defendant's injury to rebut the plaintiff's prima facie showing that failure to warn was a proximate cause.

Merck also argues that Dr. Grefer, an orthopedic specialist should have undertaken to investigate and diagnose Garry Smith's alleged pre-existing atherosclerosis. Once again, there is absolutely no expert medical testimony in this record that would support the conclusion that such activity or lack thereof fell below any recognized standard of care nor does Merck cite any case for the notion. Instead, it tosses more red fish. No such instruction or question should be included.

## III.   The Court Should Submit Separate Questions and Instructions on Negligence and Strict Liability

Although the claims have similar although not identical elements in Kentucky, as set forth above, they are not subject to the same defenses. In the event this Court submits the negligence of Plaintiff Garry Smith or his treating physician, it will be impossible to tell from the jury's answer to a single question encompassing both negligence and strict liability theories, whether Plaintiff's claim may arguably be precluded. Thus, submission of contributory negligence would be superfluous, yet another reason for this Court to drop such questions from its proposed charge. Moreover, submission of Plaintiff's and his physician's negligence without any mention of the negligence of Merck is highly misleading and improperly leaves the impression that, while Merck may have merely made a mistake in leaving something out of its label, Plaintiff and his physician are guilty of negligence.

In addition, Kentucky law makes several fine distinctions between strict liability failure to warn claims and those involving negligence. As set forth in Plaintiffs Proposed Interrogatories Nos. 1 and 2, as well as their accompanying Proposed Instructions Nos. 10 and 11 , negligence claims in Kentucky speak of foreseeable risks[10] whereas a strict liability focuses on whether the product was

_____

[10]Palmore, 2 *Ky. Instructions to Juries* § 14.01; *See, e.g., Ostendorf v. Clark Equip Co.*, 122 S.W.3d 530, 535 (Ky. 2003)(negligence standard);  *M &T Chems., Inc. v. Westrick*, 525 S.W.2d 740, 741

10

unreasonably dangerous.[11] Perhaps for this reason, the Sixth Circuit has held that, under Kentucky law, "***when a plaintiff has made a claim of negligence in addition to a product defect claim, a separate 'negligence instruction is warranted***.'" *Tobin v. Astra Pharmaceutical Prods., Inc.*, 993 F.2d 528, 535 (6th Cir.), *cert. denied*, 510 U.S. 914, 126 L. Ed. 2d 252, 114 S. Ct. 304 (1993) (quoting *Ingersoll-Rand Co. v. Rice*, 775 S.W.2d 924, 932 (Ky. Ct. App. 1989)) (emphasis added).

Particularly where it intends to submit questions of contributory or comparative negligence, this Court should submit separate questions and instructions on these two theories. Moreover, where, as here, gross negligence should also be submitted, a separate question on negligence is also warranted.

## IV.    A "Gross Negligence" Instruction and Question Should Be Submitted

Plaintiff has pleaded both gross negligence and sought punitive damages in this case. Even Merck acknowledges the inevitability and need to insert an instruction on this issue by including one in its proposed instructions. Plaintiff has requested the following instruction: "I will now instruct you on the law concerning Plaintiff's claim that Merck committed 'gross negligence' in its actions toward Garry Smith and his prescribing doctors. Gross negligence means negligence committed with a

---

(Ky. 1974); *Conner v. Dayton Rogers Mfg. Co.*, 377 F. Supp. 937, 940 (E.D. Ky. 1974), aff'd, 524 F.2d 1405 (6th Cir. 1975) (duty to warn and examples); *Post v. American Cleaning Equipment Corp.*, 437 S.W.2d 516, 520 (Ky. 1968), quoting Annot., 76 A.L.R.2d 37; *Butler v. L. Sonneborn Sons, Inc.*, 296 F.2d 623, 626 (2d Cir. 1961) (quoted in *Conner*); *Paducah Coca-Cola Bottling Co. v. Harris*, 316 S.W.2d 128, 130 (Ky. App.1958) (quoting with approval instruction on duty to warn from *C. D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534, 537 (Ky. App. 1956)).

[11]Palmore,  2 *Ky. Instructions to Juries* § 49.02 (modified).

reckless disregard for the lives and safety of other persons, including Garry Smith."[12] In addition,

Plaintiff has sought th following jury interrogatory:

> Please proceed to Question No. 3 only if you answered "yes" to Question No. 2 (negligence). Other wise, skip to Question No.4.

> Question No. 3  [Gross negligence]: Do you find that Merck & Co., Inc. acted with reckless disregard for the lives, safety or property of others in its conduct toward Garry Smith, including through Mr. Smith's treating physicians?

> ANSWER:          _____ YES          _____ NO

Evidence has been introduced that demonstrates or, at least, from which a jury could reasonably infer

that Merck knew about the CV risks of Vioxx but made an economic decision based upon detailed

financial analysis, that it would make more money if it had a more watered-down warning. *See e.g.*,

PX 1135. Such evidence is sufficient to justify the submission of a gross negligence question.

Moreover, Merck apparently agrees.  Thus, the Court should submit such an instruction and question.

## V.     The Court Should Submit and Instruction on Damage Enhancement for Increased Risk of Future Harm

The Kentucky Instructions to Juries have recently added an instruction warranted by

Kentucky law concerning the risk of future harm. It provides:

> If you find for Garry Smith and award him damages for pain and suffering, for permanent impairment of his power to earn money, and for hospital and medical services, and if you find that there is a reasonable likelihood that he may suffer future harm as a direct result of his injuries, you will include in your award for each of those items of damages a reasonable enhancement for the increased risk of such future harm. If you award enhanced damages for an increased risk of future harm, the amount of such enhancement should reflect your assessment of the percentage by

---

[12]*Id.* at § 14.07 ("gross negligence"); *Horton v. Union Light & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) ("in a case where gross negligence is used as the basis for punitive damages, terms such as willful and malicious occasionally have been used. But this terminology is a contradiction in terms when applied to negligent conduct, if we take it to mean intentionally causing injury to the victim. By definition a negligent injury has not been intentionally inflicted").

which Garry Smith's's risk of such future harm is greater than it was before he took Vioxx.

Palmore, 2 *Ky. Instructions to Juries* § 39.02.1; *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 195 (Ky. 1993); *Davis v. Graviss*, 672 S.W.2d 928, 932 (1984). In *Capital Holding*, the court confirmed the earlier holding in *Davis* that the increased likelihood of future complications is a proper element of compensable damages under Kentucky law.

Merck and Kentucky law require that Garry Smith bring his lawsuit now. There has been reliable expert medical testimony of the reasonable likelihood that Garry Smith will suffer future harm as a direct result of his injuries. There is, therefore, more than adequate evidence to support such a submission.

## VI.     The Court Should Submit and Instruction on Aggravation of Pre-Existing Condition

The Kentucky Instructions to Juries have also added an instruction concerning aggravation of pre-existing physical condition. It provides:

> If you determine that the Plaintiff is entitled to recover damages for his injuries, your award shall include compensation for losses attributable or related to his pre-existing physical condition but only if and to the extent that such pre-existing condition was aroused or aggravated as the result Merck's conduct.[13]

Merck makes much of the alleged fact that Garry Smith had risk factors or was otherwise in less than perfect health before he took Vioxx and expert testimony in this case has demonstrated that taking Vioxx was particularly problematic for those who have certain risks factors. The failure to alert

---

[13]Palmore, 2 *Ky. Instructions to Juries* § 39.02-39.05; 39.02.1;39.07.1; Ky. CR 8.01(2) (lifting certain limitations on monetary damages); *Leslie v. Egerton*, 445 S.W.2d 116, 119 (Ky. 1969) ("It is well established that "a tort-feasor is liable for all damages proximately resulting from the negligent act, even though the plaintiff's injuries may in part result from an aggravation of a preexisting physical or mental condition") (citing *T. C. Young Constr. Co. v. Brown*, 372 S.W.2d 670 (Ky. 1963): 99 A.L.R.2d 730; *Louisville & Nashville R.R. Co. v. Daugherty*, 108 S.W. 336 (Ky. 1908); 22 Am.Jur.2d, Damages, Sections 122, 123).

doctors to those increased risks is, in part, the reason Merck's label for Vioxx was inadequate. There is, therefore, more than adequate evidence to support such a submission.

Moreover, such a submission is particularly appropriate where, as here, Merck seeks a submission that Garry Smith was somehow negligent or non-compliant in the past by not taking care of his health. The enhancement instruction would, therefore, act as a check and counterbalance to the impression Merck may attempt to leave with jurors that alleged contributory negligence is all-encompassing and correct such misimpression by reaffirming that it consists, if at all, of only *post-use* actions or failures to *relevant* disclose information to doctors and that Merck must take its victims as it finds them. For these reasons, the Court should make such a submission.

## VII.   The Court Has Omitted an Element of Damages Permitted Under Kentucky Law

In its instructions on damages at page 15 of its Proposed Charge, the Court has omitted to include any reference to the jury's ability to award damages for the loss or impairment of Garry Smith's power to earn money in the future as the result of his use of Vioxx.

In its Propose Instruction No. 14, concerning compensatory damages, Plaintiff has set forth the four categories of damages available under Kentucky law:

    1)    whatever physical or mental suffering you believe the believe from the evidence he has sustained or is reasonably certain to endure hereafter as a direct result of his injuries;

    2)    whatever necessary and reasonable expenses for medical services you believe from the evidence he has incurred or is reasonably certain to incur hereafter as a direct result of his injuries;

    3)    a sum of money that will fairly and reasonably compensate him for such loss of wages and income you believe from the evidence he has sustained directly by reason of his injuries; and

4)    *a sum of money that will fairly and reasonably compensate him for such loss of or impairment of his power to earn money in the future as you believe from the evidence he has suffered directly by reason of his injuries*.

(Emphasis added). While the court has included variations on the first three elements in its instruction on damages at pp. 14-15, it has omitted any reference to the latter element. Kentucky law authorizes recovery of these amounts. *See* Palmore, 2 *Ky. Instructions to Juries* § 39.05; Ky. CR 8.01(2) (lifting certain limitations on monetary damages); *Caton v. McGill*, 488 S.W.2d 345, 346 (Ky. 1972); *Spurlock v. Spurlock*, 349 S.W.2d 345, 346 (Ky. 1961). For these reasons, such an instruction should be included.

## VIII.   The Court Should *Not* Give an Instruction on Vioxx's Removal from the Market

At Merck's instance, the Court proposes to give a limiting instruction on Merck's removal of Vioxx from the market. The Court effectively treats it as a subsequent repair. That is improper under the circumstances here.

Merck claims that it needs a limiting instruction under Fed. R. Evid. 105; however, Merck itself ***admitted*** its voluntary withdrawal and it made its withdrawal evidence of its alleged good faith and civic spirit. Such self-serving use constitutes waiver of any rights under Rule 105 to a limiting instruction. This is precisely the circumstance faced by the Eighth Circuit in *Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 613 (8th Cir. 1983). In upholding the trial court's decision not to give a limiting instruction that would have relegated that matter to the obscurity to which Merck would consign it here, the court observed that, in that case, as in this one, the defendant

[d]id not argue that the trial court should altogether exclude evidence of its withdrawal of Rely from the market; instead, it introduced the evidence on its own and requested that the jury be instructed to consider the evidence only for a specific limited purpose. ***Thus the issue before us is not whether the trial court erroneously***

15

*admitted the evidence, but whether it abused its discretion in refusing to give a limiting instruction. We think it did not.*

\* \* \* \*

*Procter & Gamble introduced evidence of the Rely market withdrawal to show the company's good faith towards the consuming public. It attempted to portray the withdrawal as wholly voluntary on its part.* . . .

Whether Procter & Gamble withdrew Rely voluntarily was hotly contested by the parties. *At least four times during the trial, Procter & Gamble called attention to the voluntary nature of its withdrawal. Evidence relating to the withdrawal was thus admissible for purposes of impeachment, and perhaps also to show the existence or non-existence of a duty to withdraw the product.* Clearly, then, Procter & Gamble was not entitled to an instruction that the jury consider the evidence for no purpose other than as an illustration of the case's "background."

Most important, *given the substantial amounts of time and testimony devoted at trial to the circumstances surrounding Rely's market withdrawal, the likelihood that a limiting instruction would have lessened the possibility of prejudice, or that the absence of such an instruction would have generated prejudice, is very small. Indeed, a limiting instruction may well have served only to confuse the issues. The withdrawal of Rely from the market is inextricably bound up with Procter & Gamble's credibility and its portrait of itself as a corporation concerned for the public's welfare. It would only obscure the issues to instruct the jury to regard the fact of withdrawal as mere "background," when Procter & Gamble itself made the voluntariness of the withdrawal a part of its attempt to show that it acted responsibly during the TSS crisis.*

Accordingly, we conclude that the district court did not abuse its discretion in refusing to give the jury instruction Procter & Gamble requested.

*Id.* at 621-22 (emphasis added). The same considerations should govern in this case plus one other.

Here, unlike the *Kehm* case, Merck vociferously sought to exclude the FDA warning letters that would have disabused the jury of the notion that Merck's withdrawal was truly voluntary and not done

16

at FDA gunpoint. There is no need or justification  for this instruction and, as *Kehm* points out, it would be confusing under the circumstances here. The instruction should not be given at all.[14]

IX.     **The Court Should Not Include Any Reference to the "Personal Feelings" Of Witnesses**

At page 4 of its Proposed Charge, the Court includes the following statement: "In weighing the testimony and in determining the credibility of any witness, you may consider the conduct of the witness, his or her bearing on the witness stand, ***his or her personal feelings as demonstrated by his or her actions*** . . ."  (emphasis added). No rule or case authorizes the jury to speculate in such fashion. Moreover, the personal feelings of witnesses are irrelevant to this action so no such instruction os needed. Such an open invitation will also lead to confusion because the jurors themselves have been instructed to put aside their own personal feelings. Finally, in this particular case, where Plaintiff have fought with only limited success in keeping out the personal use of Vioxx by certain witnesses, their giving Vioxx to family members, and other irrelevant personal involvement with the drug, such an instruction constitutes an improper comment on the weight of the evidence because it would give the matter undue weight, that is to say, any weight at all. The concept for which the Court is striving is adequately addressed by the remainder of the instruction. The Court should omit the highlighted phrase.

---

[14]There is no equivalence between this Court's giving an instruction to cure the incredibly prejudicial impact of evidence of government certification and one seeking to insulate the defendant from its own self-serving conduct.

**X.     The Court Should Not Instruct the Jury to Discount Reliable Expert  Medical Opinion in a Failure to Warn Claim**

At page 11 of its proposed instructions, the Court includes the following paragraph:

To be fraudulent, the seller must fail to disclose the matter of fact, not opinion. The distinction between a fact and an opinion is generally characterized by what is susceptible of exact knowledge when the omission is made.

Although the Court's instruction is technically correct it is highly misleading to the point that it could improperly cost Plaintiff his fraud claim.

This is a failure to warn case grounded in reasonable medical probability. The Court has previously instructed the jurors on expert opinion and the weight, if any, it is to be given. For the Court now to suggest that omission of or misrepresentations concerning medical opinion or otherwise reliable scientific knowledge that is nevertheless  not "susceptible of exact knowledge" is not actionable fraud incorrectly states applicable law and will confuse and mislead the jury. Nothing in Kentucky law, the Fifth Circuit pattern instruction [from which this deviates] or the *Barnett* charge this Court recently gave requires so stringent a standard. Moreover, where every expert witness for the Plaintiff was subject to a *Daubert* motions, there is no need for such an instruction. It should be omitted in its entirety.

18

Dated:  September 25, 2006

Respectfully submitted,

Drew Ranier
Louisiana Bar No. 8320
**RANIER, GAYLE & ELLIOT LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

Walter Umphrey
Texas Bar No. 20380000
**PROVOST UMPHREY LAW FIRM LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

James L. "Larry" Wright
Texas Bar No. 22038500
**THE WATTS LAW FIRM LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Mikal Watts
Texas Bar No. 20981820
**THE WATTS LAW FIRM LLP**
Tower II Building, 14th Floor
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

John Eddie Williams, Jr.
Texas Bar No. 21600300
Jim Doyle
Texas Bar No.6094450
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23rd day of September, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk            rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski          carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440

20