**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **Section L** |
| | **Judge Eldon E. Fallon** |
| | **Magistrate Judge Daniel E. Knowles, III** |

**THIS DOCUMENT RELATES TO:**
   *Robert G. Smith v. Merck & Co., Inc.*, **Case No. 2:05-CV-04379**

<u>**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**</u>

Plaintiff R. Garry Smith submits the following proposed jury instructions, number 1 through

15. Plaintiff reserves the right to amend its proposed instructions as required by rulings of the court

and the evidence admitted in the case.

Dated:  September 25, 2006

Respectfully submitted,

| | |
|---|---|
| Drew Ranier | /s/ Grant Kaiser |
| Louisiana Bar No. 8320 | Grant Kaiser |
| **RANIER, GAYLE & ELLIOT LLC** | Texas Bar No. 11078900 |
| 1419 Ryan Street | **THE KAISER FIRM LLP** |
| Lake Charles, Louisiana 70601 | 8441 Gulf Freeway, Suite 600 |
| (337) 494-7171; fax (337) 494-7218 | Houston, Texas 77017 |
| | (713) 223-0000; fax (713) 223-0440 |
| | |
| Walter Umphrey | Mikal Watts |
| Texas Bar No. 20380000 | Texas Bar No. 20981820 |
| **PROVOST UMPHREY LAW FIRM LLP** | **THE WATTS LAW FIRM LLP** |
| 490 Park Street | Tower II Building, 14th Floor |
| Beaumont, Texas 77701 | 555 North Carancahua Street |
| (409) 835-6000; fax (409) 838-8888 | Corpus Christi, Texas 78478 |
| | (361) 887-0500; fax (361) 887-0055 |
| | |
| James L. "Larry" Wright | John Eddie Williams, Jr. |
| Texas Bar No. 22038500 | Texas Bar No. 21600300 |
| **THE WATTS LAW FIRM LLP** | Jim Doyle |
| 111 Congress Avenue, Suite 1010 | Texas Bar No.6094450 |
| Austin, Texas 78701 | **WILLIAMS BAILEY LAW FIRM LLP** |
| (512) 479-0500; fax (512) 473-0328 | 8441 Gulf Freeway, Suite 600 |
| | Houston, Texas 77017 |
| | (713) 230-2200; fax (713) 643-6226 |

ATTORNEYS FOR PLAINTIFF ROBERT G. SMITH

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23rd day of September, 2006.

/s/ Grant Kaiser
Grant Kaiser
**THE KAISER FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc      By email only:

Robert Van Kirk          rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski          carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440

## PROPOSED INSTRUCTION NO. 1

### General Instructions[1]

Members of the Jury:

You have now heard all the evidence in this case as well as the final argument.

I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. *It is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.*

On the other hand, you, the jury, are the judges of the facts. Do not consider any statement that I have made in the course of the trial or make in these instructions as an indication that I have any opinion about the facts in this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments] [You have heard the closing arguments of the attorneys.] Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions *save Question Nos. 4 [fraud] and ___ [punitive damages]* from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, *and whether they appeared in person, on videotape, or by written deposition*, and all exhibits received in evidence, regardless of who may have produced them.

You must decide Question No. 3 by clear and convincing evidence. "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue. This involves a greater degree of persuasion that is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

---

[1]The portions of the text written in italics, for the Court's convenience, reflect variations from the text of the Fifth Circuit pattern instruction. The additions to paragraph 2 here are from this Court's instructions in the *Barnett* trial.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose. You may consider such evidence only for the specific purpose for which it was admitted.

In determining the weight to give the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was difference from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things in accurately. So, if a witness has made a misstatement, you need to consider whether the misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if the greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as the testimony of an eyewitness. The other in indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial, *except where instructed on a different standard of proof.*

While knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his or her opinion of those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether or not to rely upon it.

*In deciding whether to accept or rely upon the testimony of any expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has economic, philosophical or any other interest in the outcome of the case.*[2]

Any notes that you have taken during the trial are only aides in memory. If your memory should differ from your notes, the you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight that the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even me, your numerical division on any question.

If you want to communicate with time at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk to anyone about the case unless the Court orders otherwise.

**Source:** FCPJI 2.14; 3.1.

---

[2]Second paragraph on expert witnesses has been removed to reflect the prior rulings of this Court. The Court's instructions from the *Barnett* trial have been substituted.

## PROPOSED INSTRUCTION NO. 2

### Duty to Deliberate

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Source:** FCPJI 2.11

## PROPOSED INSTRUCTION NO. 3

### Deposition Testimony

Certain testimony will be/has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances,  if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be/ have been read to you. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you insofar as possible in the same was as if the witness had been present and testified from the witness stand in court.

***Source:*** FCPJI 2.23.

## PROPOSED INSTRUCTION NO. 4

### Comments by the Court

During the course of the trial, I have occasionally made comments to the lawyers, or asked a question of a witness, or admonished a witness concerning the manner in which he or she should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinions concerning any of the facts in this case. In arriving at your own finding as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

The law of the United States permits the judge to comment on evidence presented during a case. [I do not believe that I have made any comments on the evidence in this case.] If you could possibly construe any remarks which I have made during the course of this trial, however, as a comment on the evidence, then I instruct you that any such comment on my part is only an expression of my opinion as to the facts, and you, the jury, may disregard such comment or comments entirely since you, as jurors, are the sole judges of the facts of this case.

*Source:* Court's instruction in the *Barnett* trial.

## PROPOSED INSTRUCTION NO. 5

### Questions by the Court

During the course of the trial, I have occasionally asked a question of a witness in order to bring out facts not them fully covered in the testimony. Do not assume that I hold any opinion on the facts to which my question may have related. Remember at all times, you, as jurors, are the sole judges of the facts.

***Source:*** Court's instruction in the *Barnett* trial.

## PROPOSED INSTRUCTION NO. 6

### Plaintiff's and Defendant's Contentions

This lawsuit arises out of Plaintiff Garry Smith's use of Vioxx. Defendant Merck manufactured and marketed Vioxx.

Mr. Smith contends his use of Vioxx was a substantial factor in causing his heart attack. He seeks compensatory and punitive damages under four theories of recovery.

First, Plaintiff Smith alleges that Merck negligently marketed Vioxx with inadequate warnings. Second, Plaintiff Smith alleges that Merck's negligent failure to warn was done with reckless disregard for the lives and safety of others. Third, Plaintiff Smith alleges that Merck should be held strictly liable for his injuries because Merck marketed Vioxx with inadequate warnings, making it unreasonably dangerous to consumers. Finally, Plaintiff Smith alleges that Merck concealed from Mr. Smith's physicians known or knowable information regarding the potential cardiovascular risks concerning Vioxx.

Merck contends that Vioxx did not cause Garry Smith's injuries. It contends that the use of Vioxx at Mr. Smith's dose level and duration of use does not cause an increased risk of thrombotic cardiovascular events such as myocardial infarction. In particular, Merck alleges that Vioxx did not cause Garry Smith's myocardial infarction. Instead, it contends that his injuries were caused by his independent health risk factors.

Merck further contends that its warnings and instruction for Vioxx were adequate and complied with the rules of the Food and Drug Administration. Merck also asserts that it acted reasonably and that it had disclosed to the FDA all relevant Vioxx safety data and risk information at the time Garry Smith's physicians prescribed Vioxx to him. Finally, Merck contends that Mr. Smith's physicians did not detrimentally rely upon any allegedly inadequate warnings for Vioxx in prescribing Vioxx for Mr. Smith.

Although all of the Plaintiff's theories of recovery have been tried together, each is separate from the others and each party is entitled to have you separately consider each claim; therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would have if each claim had been tried before you separately. The Plaintiff is not required to prove all five of these theories to recover. Proof of his claim under any one of these theories would enable you to find that he is entitled to a verdict in his favor.

**Source:** Joint Pretrial Order; Court's instructions in *Barnett*; *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91 (Ky. 2003) ("substantial factor" test for causation).

## <u>PROPOSED INSTRUCTION NO. 7</u>

### <u>Causation: "Substantial Factor"</u>

In order for Garry Smith to prevail on any of his claims, he must establish that Vioxx was a "substantial factor" in causing his injuries.

I will now define the term "substantial factor" for you. A substantial factor in causing harm is one that a reasonable person would consider to have contributed to or been a cause of the harm. It does not have to be the only cause of the harm; however, it must be more than a remote, trivial, or insignificant factor.  Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

***Source:***  RESTATEMENT (SECOND) OF TORTS § 431;  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91 (Ky. 2003) (reaffirming Kentucky's adoption of the "substantial factor" test for causation set forth in § 431 of the RESTATEMENT (SECOND) OF TORTS).

## PROPOSED INSTRUCTION NO. 8

### Learned Intermediary Doctrine

The "learned intermediary" rule defines "proper warning" in the context of prescription drugs. A prescription drug or medical device is not reasonably safe due to inadequate instructions or warnings if reasonable instructions or warnings regarding foreseeable risks of harm are not provided to:

1)   prescribing and other health-care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings; or

2)   the patient when the manufacturer knows or has reason to know that health-care providers will not be in a position to reduce the risks of harm in accordance with the instructions or warnings.

**Source:** *Larkin v. Pfizer, Inc.,* 153 S.W.3d 758, 761 (Ky. 2004), *judgment entered by Larkin v. Pfizer, Inc.,* 122 Fed. Appx. 263, 2005 U.S. App. LEXIS 3335 (6th Cir. 2005) (certified question) *(quoting* RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 6(d) (1998)).

## <u>PROPOSED INSTRUCTION NO. 9</u>

### <u>FDA Approval</u>

I will now instruct you on the effect, if any, of FDA approval.

You are the sole judges of whether Merck& Co. failed to warn Garry Smith's prescribing doctors of certain risks associated with Vioxx. FDA certification or approval of Vioxx is evidence, but not conclusive evidence, of a drug manufacturer's reasonableness; therefore, you may assign FDA approval whatever weight you believe it deserves. Thus, if the Plaintiff shows that a reasonable manufacturer would have done more, Merck & Co.'s alleged compliance with FDA standards and the FDA's approval of Vioxx for certain uses is not dispositive under Kentucky law.

In evaluating the weight, if any, to be given FDA approval, you may but need not consider whether the FDA had an opportunity to consider and evaluate the information about which Garry Smith contends Merck failed to warn his prescribing physicians.

***Source:*** *See O'Gilvie v. International Playtex, Inc.,* 821 F.2d 1438, 1446 (10th Cir. 1987) (affirming jury instruction); *Graham v. Wyeth Laboratories, Div. of American Home Products Corp.*, 666 F. Supp. 1483 (D. Kan. 1987) ( approving instruction); *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1272 (D. Minn. 1988) (court gave limiting instruction on effect of FDA approval) 21 C.F.R. § 314.50(d)(2), (5).

## PROPOSED INSTRUCTION NO. 10

## Strict Liability Failure to Warn

I will now discuss with you the law governing the Plaintiff's strict liability failure to warn and design defect claims. In order to decide this claim, you must determine whether Vioxx was unreasonably dangerous by reason of an inadequate warning and, if so, whether the use of Vioxx and the absence of an adequate warning was a substantial factor in causing Garry Smith's injuries.

As the term is used in this instruction, a product is "unreasonably dangerous" if it creates such a risk of injury to a prospective user that an ordinarily prudent company engaged in the manufacture of similar products, being fully aware of the risk, would not have put it on the market.

Prescription drugs often cause unwanted or dangerous side effects whether or not they have been carefully designed and properly manufacturer. Such products are deemed "unavoidably unsafe" but are not considered defective or unreasonably dangerous if they include adequate warnings of those potential side effects. A prescription drug, however, is defective due to inadequate warning if the manufacturer fails to give a reasonably prudent physician adequate warning of a particular risk the manufacturer knew or should have known in light of generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

Protection which is not reasonably commensurate with the danger to which it refers is, in effect, no protection. Thus, a manufacturer's duty to warn of product danger is a duty to give a warning which is adequate and sufficient to the danger.  The warning must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse. As an example, it may be doubted that a sign warning, 'Keep off the Grass,' could be deemed sufficient to apprise a reasonable person that the grass was infested with deadly snakes, or a warning to 'Keep in a Cool Place' might not be sufficient if the result of nonobservance was a lethal explosion of the container.

To establish Merck's liability for strict liability failure to warn, Plaintiff Smith must prove the following:

1) as manufactured and put on the market by Merck & Co., Inc., Vioxx was unreasonably dangerous for use by a person or persons whom Merck should have expected to use or be exposed to it without a reasonable warning of the danger;

2) the label concerning Vioxx was not reasonably adequate to warn an ordinarily prudent physician of risks associated with Vioxx; and

3) Merck's failure to warn was a substantial factor in bringing about Gary Smith's injuries.

If the greater weight of the evidence supports the claim of the Plaintiff Garry Smith, then you should answer Question No. 1 "yes." If the greater weight of the evidence does not support the claim

of the Plaintiff, then you should answer Question No. 1  concerning Plaintiff's strict liability failure to warn claim "no."

***Source:***  2 *Ky. Instructions to Juries* § 49.02(modified); *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 432 (Ky. 1980) (rejecting common knowledge defense to failure to warn); *Conner v. Dayton Rogers Mfg. Co.*, 377 F. Supp. 937, 940 (E.D. Ky. 1974), *aff'd,* 524 F.2d 1405 (6th Cir. Ky. 1975) (duty to warn and examples); *Post v. American Cleaning Equipment Corporation,* 437 S.W.2d 516, 520 (Ky. 968), *quoting* Annot., 76 A.L.R.2d 37; *Butler v. L. Sonneborn Sons, Inc.,* 296 F.2d 623, 626 (2d Cir. 1961) (quoted in *Conner)*; *Paducah Coca-Cola Bottling Co. v. Harris*, 316 S.W.2d 128, 130 (Ky. App.1958) (quoting with approval instruction on duty to warn from *C. D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534, 537 (Ky. App. 1956)).

## PROPOSED INSTRUCTION NO. 11

### Negligent Failure to Warn

I will now discuss with you the law governing the Plaintiff's negligent failure to warn claim. In this claim, Plaintiff Smith alleges that Merck was negligent in failing to warn Garry Smith's prescribing physicians of a known or foreseeable danger in Vioxx and that such negligence was a substantial factor in causing his injuries.

"Negligence" as used in this instruction means the failure to use ordinary care, that is, such care as the jury would expect an ordinarily prudent person engaged in the pharmaceutical business to exercise under similar circumstances.

To establish Merck's liability for negligent failure to warn, Plaintiff Smith must prove the following:

1)    that Merck was negligent in failing to warn Garry Smith's prescribing physicians and/or the medical community of risk(s) associated with Vioxx that were known to Merck or medically or scientifically foreseeable by Merck;

2)    Merck's negligence was a substantial factor in bringing about Garry Smith's injuries.

Under Kentucky law, a manufacturer has a duty to warn prescribing physicians of any dangers in its product other than those that are open and obvious.[3] It was also Merck's duty to make such tests and inspections as should be recognized as being reasonably necessary to secure production of a safe article, and that where the risk of danger is high the manufacturer must, if practicable and economically feasible, employ methods designed to insure a safe product. Thus, while a manufacturer is not held to that degree of clairvoyance which hindsight alone can give, especially when injury is likely to be serious, even a slightly foreseeable risk  may warrant the conclusion that the manufacturer has a duty to provide appropriate warnings to address such risk.

Protection which is not reasonably commensurate with the danger to which it refers is, in effect, no protection. Thus, a manufacturer's duty to warn of product danger is a duty to give a warning which is adequate and sufficient to the danger.  The warning must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse. As an example, it may be doubted that a sign warning, 'Keep off the Grass,' could be deemed sufficient to apprise a reasonable person that the grass was infested with deadly snakes, or a warning to 'Keep in a Cool Place' might not be sufficient if the result of nonobservance was a lethal explosion of the container.

---

[3]*Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776 782 (Ky. 1984), *quoting with approval Minert v. Harsco Corp.*, 26 Wash. App. 867, 874, 614 P.2d 686, 691 (1980); *see also Hutt v. Gibson Fiber Glass Prod., Inc.,* 914 F.2d 790, 793 (6th Cir. 1990) (Kentucky law) ("there is no duty to warn the user of a product when the user is aware of the product's danger").

If the greater weight of the evidence supports the claim of the Plaintiff Garry Smith, then you should answer Question No. 2 "yes." If the greater weight of the evidence does not support the claim of the Plaintiff, then you should answer Question No. 2 concerning Plaintiff's negligence claim "no."

**Source:** 2 *Ky. Instructions to Juries* § 14.01; *See, e.g., Ostendorf v. Clark Equip Co.,* 122 S.W.2d 530, 535 (Ky. 2003)(negligence standard); *M &T Chems., Inc. v. Westrick,* 525 S.W.2d 740, 741 (Ky. 1974); *Conner v. Dayton Rogers Mfg. Co.*, 377 F. Supp. 937, 940 (E.D. Ky. 1974), *aff'd,* 524 F.2d 1405 (6th Cir. Ky. 1975) (duty to warn and examples); *Post v. American Cleaning Equipment Corporation,* 437 S.W.2d 516, 520 (Ky. 968), *quoting* Annot., 76 A.L.R.2d 37; *Butler v. L. Sonneborn Sons, Inc.,* 296 F.2d 623, 626 (2d Cir. 1961) (quoted in *Conner)*; *Paducah Coca-Cola Bottling Co. v. Harris*, 316 S.W.2d 128, 130 (Ky. App.1958) (quoting with approval instruction on duty to warn from *C. D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534, 537 (Ky. App. 1956)); *Tobin v. Astra Pharmaceutical Prods., Inc*., 993 F.2d 528, 535 (6th Cir. 1993) ("when a plaintiff has made a claim of negligence in addition to a product defect claim, a separate 'negligence instruction is warranted'") (quoting *Ingersoll-Rand Co. v. Rice*, 775 S.W.2d 924, 932 (Ky. Ct. App. 1989)); *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 432 (Ky. 1980) (rejecting common knowledge defense to failure to warn).

## PROPOSED INSTRUCTION NO. 12

### Gross Negligence

"Gross negligence" means negligence committed with a reckless disregard for the lives and safety of other persons, including Garry Smith.

***Source:*** 2 *Ky. Jury Instructions to Juries* § 14.07 ("gross negligence"); *Horton v. Union Light & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985).

## PROPOSED INSTRUCTION NO. 13

### Fraud

I will now discuss with you the law governing the Plaintiff's fraud claim. In this claim, Plaintiff Smith alleges that Merck concealed from Mr. Smith's physicians known or knowable information regarding the potential cardiovascular risks concerning Vioxx and that such failure to disclose such information was a substantial factor in causing his injuries.

To establish Merck's liability for fraud, Plaintiff Smith must prove the following:

1)      that Merck & Co., Inc. had a duty to disclose the risks associated with the use of Vioxx;

2)      that Merck & Co., Inc. made material misrepresentations about the safety and efficacy of Vioxx and/or failed to disclose and concealed material facts about Vioxx within its knowledge.

3)      that, when it made such statements or failed to disclose such facts, Merck & Co., Inc. knew its statements about Vioxx were false or had been rendered false by its failure to disclose materials facts, and/or that it made those statements with reckless disregard for whether they were true or false;

4)      that Merck & Co., Inc. intended that physicians, including Garry Smith's treating physicians, rely on the truth of such statements in deciding whether or not to prescribe Vioxx for their patients, including Garry Smith.

5)      that Gray Smith's treating physicians did in fact rely upon Merck & Co., Inc.'s statements as being true and otherwise would not have been prescribed and/or supplied Vioxx to Garry Smith.

6)      Gary Smith was injured as the direct result.


**Source:**  2 *Ky. Instructions to Juries* § 31.08; *Smith v. Gen'l Motors Corp.*, 979 S.W.2d 127, 129 (Ky. App. 1998); *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468, 46 6 Ky. L. Summary 44 (Ky. 1999 ) (*quoting Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. App. 1978)).

## PROPOSED INSTRUCTION NO. 14

### Compensatory Damages

I will now discuss with you the law governing the Plaintiff's compensatory damages. If you find for Plaintiff Gary Smith, you will determine from the evidence and award him a sum of money, if any, that will fairly and reasonably compensate him for the following:

1) whatever physical or mental suffering you believe the believe from the evidence he has sustained or is reasonably certain to endure hereafter as a direct result of his injuries;

2) whatever necessary and reasonable expenses for medical services you believe from the evidence he has incurred or is reasonably certain to incur hereafter as a direct result of his injuries;

3) a sum of money that will fairly and reasonably compensate him for such loss of wages and income you believe from the evidence he has sustained directly by reason of his injuries; and

4) a sum of money that will fairly and reasonably compensate him for such loss of or impairment of his power to earn money in the future as you believe from the evidence he has suffered directly by reason of his injuries.

If you find for Gary Smith and award him damages for pain and suffering, for permanent impairment of his power to earn money, and for hospital and medical services, and if you find that there is a reasonable likelihood that he may suffer future harm as a direct result of his injuries, you will include in your award for each of those items of damages a reasonable enhancement for the increased risk of such future harm. If you award enhanced damages for an increased risk of future harm, the amount of such enhancement should reflect your assessment of the percentage by which Gary Smith's's risk of such future harm is greater than it was before he took Vioxx.

If you determine that the Plaintiff is entitled to recover damages for his injuries, your award shall include compensation for losses attributable or related to his pre-existing physical condition but only if and to the extent that such pre-existing condition was aroused or aggravated by Merck's conduct.

***Source:*** *2 Ky. Instructions to Juries* § 39.02-39.05; 39.02.1;39.07.1; Ky. CR 8.01(2) (lifting certain limitations on monetary damages); *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 195 (Ky. 1993); *Davis v. Graviss*, 672 S.W.2d 928, 932 (1984); *Leslie v. Egerton*, 445 S.W.2d 116, 119 (Ky. App. 1969) ("It is well established that "a tort-feasor is liable for all damages proximately resulting from the negligent act, even though the plaintiff's injuries may in part result from an aggravation of a preexisting physical or mental condition") (citing *T. C. Young Constr. Co. v. Brown*, Ky., 372 S.W.2d 670, 99 A.L.R.2d 730; *Louisville & Nashville R.R. Co. v. Daugherty*, 32 Ky.Law Rep. 1392, 108 S.W. 336, 15 L.R.A.,N.S., 740; 22 Am.Jur.2d, Damages, Sections 122, 123).

**PROPOSED INSTRUCTION NO. 15  [PHASE 2]**

**<u>Punitive Damages</u>**

I will now discuss with you the law governing punitive or exemplary damages. "Punitive damages" are damages awarded against Merck & Co. for the purpose of punishing Merck & Co. for its misconduct in this case and deterring it and others from engaging in similar conduct in the future.

In exercising your discretion to determine and award an amount, if any, of punitive damages, you should consider the following factors:

1)      the harm to Gary Smith as measured by the damages you have awarded in Question No. 6 and the potential of further harm to Gary Smith caused by Merck & Co., Inc.'s conduct toward Gary Smith, including  and/or his treating physician, Dr. Grefer;

2)      the degree, if any, to which you have found from the evidence the Merck & Co's conduct toward Gary Smith, including Mr. Smith's treating physicians, was reprehensible, considering:

   A)      the harm caused was physical as opposed to economic;

   B)      the degree to which Merck & Co.'s conduct evinced an indifference to or a reckless disregard of the health and safety of others;

   C)      the degree to which Merck & Co.'s conduct involved repeated actions as opposed to an isolated incident;

   D)      evidence of Merck & Co.'s conduct occurring outside Kentucky may be considered only in determining whether Merck & Co.'s conduct was reprehensible, and if so, the degree of reprehensibility.

If you award punitive damages, they must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

**Source:** 2 *Ky. Instructions to Juries* § 39.15 (2004 Supp.) (modified to reflect bifurcation); *Williams v. Wilson,* 972 S.W.2d 260, 269 (Ky. 1998); *see also State Farm Mutual Life Ins. Co. v. Campbell,* 123 S.Ct. 1513 (2003).