IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx<br>PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1657 |
| | Section L |
| THIS DOCUMENT RELATES TO:<br>Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v.<br>MERCK & CO., INC. | Mag. Judge Knowles |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE THE OPINION TESTIMONY
OF NICHOLAS FLAVAHAN, Ph.D.

(EXPERT CHALLENGE NO. 2)

TO THE HONORABLE JUDGE ELDON E. FALLON:

PLAINTIFF, Charles Laron Mason, files this Memorandum in Support of Motion to Exclude the Opinion Testimony of Nicholas Flavahan, Ph.D., and in support thereof shows:[1]

I.
INTRODUCTION

Merck & Co., Inc. ("Merck") has designated Dr. Nicholas Flavahan, Ph.D., a vascular cell biologist, to provide opinions "regarding the pharmacological effects of COX-2 inhibitors (in particular Vioxx) on the blood vessel wall and endothelium of human beings."[2] Dr. Flavahan

---

[1] Although a motion to exclude the testimony of Dr. Flavahan was filed in *Barnett v. Merck & Co., Inc.*, the plaintiff in that case withdrew the motion in exchange for Merck's agreement to withdraw one of its challenges to one of the plaintiff's experts, John W. Farquhar, M.D.  *See* Transcript of July 6, 2006 Motions Hearing at 83:8-10.  Therefore, Plaintiff does not believe this Court has yet addressed a challenge to Dr. Flavahan.
[2] Expert Report of Nicholas Flavahan, Ph.D. ("Flavahan Report"), attached hereto as Exhibit A at p. 1; *see also* Deposition of Nicholas Flavahan, Ph.D. ("Flavahan Dep."), attached hereto as Exhibit B at 57:16-21; 58:2-8.

1

is a Professor of Internal Medicine at Ohio State University in Columbus, Ohio.[3] Dr. Flavahan is not a medical doctor and he does not diagnose patients with any medical conditions, including heart conditions.[4]

According to his report and deposition, Dr. Flavahan will seek to testify to the following opinions: (1) The chief source of systematic prostacyclin synthesis is COX-1, not COX-2;[5] (2) Fitzgerald's imbalance theory artificially focuses on the role of COX-1 and COX-2 in regulating thrombotic and vascular mechanisms, and fails to address important roles played by numerous COX-independent mediators."[6]; (3) There is no scientific evidence that selective COX-2 inhibitors pathologically disrupt this vascular homeostatic balance in humans, and considerable evidence that they do not increase platelet or thrombotic activity.[7]; and (4) "COX-2 inhibitors should not accelerate the atherothrombotic process, and would be expected to provide a stabilizing influence on atherosclerotic lesions."[8]

Dr. Flavahan's opinions are subject to the requirements of *Daubert*, *Kumho Tire* and Rule 702 Federal Rules of Evidence. As a result, Dr. Flavahan should not be permitted to offer speculative and conjectural testimony, to testify to opinions that he is not qualified to render, and to testify to opinions which are without sufficient factual bases and are unreliable.

## II.
## STATEMENT OF THE FACTS

This action for personal injuries arises from Plaintiff, Charles Mason's use of Vioxx, which Plaintiff contends caused a heart attack on July 25, 2003. Mr. Mason was 59 years old

---

[3] *See* Flavahan Report, p. 1; *see also* Flavahan Dep., 8:15-17.
[4] *See* Flavahan Dep., 8:18-22.
[5] Flavahan Report, pp. 7-8.
[6] *Id.* at 8.
[7] *Id.* at 12.
[8] *Id.* at 17.

when his nurse practitioner prescribed him Vioxx in September 2002. He had been taking the drug for approximately ten (10) months at the time of his heart attack. It is Plaintiff's contention that his heart attack was caused by a clot in one of his coronary arteries which resulted from a plaque rupture as well as the acceleration of atherogenesis due to Vioxx use. Mr. Mason's treating nurse practitioner has testified that had Merck disclosed the known risks of Vioxx she would not have prescribed Vioxx to Mr. Mason.

### III.
### LEGAL STANDARD

The legal standard for the admission of expert testimony in federal court is set forth at pages 4-6 of the Memorandum in Support of the Motion To Exclude Argument Or Opinion Testimony That An Increased Risk Of Heart Attack Exists Only After 18 Months Of Vioxx Use, filed concurrently herewith and incorporated herein by reference.

### IV.
### ARGUMENT

Dr. Flavahan is unqualified to testify regarding Vioxx. Dr. Flavahan is unfamiliar with clinical studies and other data relevant to Vioxx and its safety profile. Dr. Flavahan should not be permitted to offer speculative and conjectural testimony. During previous pre-trial and trial proceedings, the Court has stated that in order for an expert to testify he must be qualified not only in his field of expertise but be knowledgeable about Vioxx and scientific and clinical trials conducted to study the drug. Dr. Flavahan's deposition testimony clearly reveals that he is not familiar with major clinical trials and studies of Vioxx.

Dr. Flavahan has virtually no experience with Vioxx. Dr. Flavahan did not begin to focus on Vioxx until after December 2005 when he was hired by Merck to serve as an expert witness.[9]

---

[9] *See* Flavahan Dep., 27:2-6; 252:2-11; 263:2-14.

3

Dr. Flavahan has not performed basic science research in relation to Vioxx or other COX-2 inhibitors. He has never been asked to conduct any research for the development of any COX-2 inhibitor.[10] He has never participated in human clinical trials.[11] He was not consulted by Merck during the development of Vioxx.[12] He has never reviewed or considered any pre-clinical studies on the pharmacological mechanism of Vioxx.[13] Dr. Flavahan has not performed any clinical research on Vioxx, or COX-2 inhibitors generally.[14] He has not reviewed the record of the meeting of Scientific Advisors to Merck regarding Vioxx that took place in May 1998.[15] Dr. Flavahan has not seen and internal research by Merck regarding whether Vioxx accelerates atherosclerosis.[16] Dr. Flavahan has not published any scientific articles related specifically to Vioxx; he has not published any scientific papers relating to whether prostacyclin originates from COX-1 or COX-2.[17] Dr. Flavahan has not published any studies supporting his conclusion that Vioxx is not proatherogenetic and that it does not increase atherosclerotic lesion formation.[18]

Dr. Flavahan purports to have reviewed all of the relevant medical literature associated with Vioxx and other COX-2 inhibitors. Dr. Flavahan's testimony, however, reveals that he is unable to answer basic questions regarding the literature:

> Q: Did you look at the results of VIGOR, the results of APPROVe?
> A: As I said, I did not review how they were designed and the interpretation of the results, no.[19]

---

[10] See Flavahan Dep., 22:2-5.
[11] See id. at 22:17-19.
[12] See id. at 24:4-15.
[13] See id. at 28:22-30:2.
[14] See id. at 252;2-16.
[15] See id. at 30:17-12. As the Court is aware, the Board of Scientific Advisors concluded that if COX-2 is blocked, but COX-1 is not, the following can occur: (1) development of lipid-rich coronary plaques; (2) destabilization of plaque caps making them prone to rupture; and (3) thrombotic occlusion of the vessel at the site of plaque rupture with ensuing ischemia, also known as a heart attack.
[16] See id. at 34:4-8.
[17] See id. at 14:14-15:14.
[18] See id. at 264:20-265:9.
[19] Id. at 60:8-11.

4

* * *

> Q. Sir, my -- my understanding of your testimony before was that you looked at the New England Journal publication of the VIGOR study, correct?
> A. As I said, I read the papers.
> Q. Okay. When you looked at it did you notice that there was a five-fold excess of MIs with Vioxx versus Naproxen?
> A. To be honest with you, I concentrated on the introduction and the discussion. I was looking at it from a mechanism-based standpoint. I did not review carefully the design, the results, or the interpretation of the studies.[20]

Dr. Flavahan testified that Vioxx is not cardiotoxic.[21] In outlining his opinion, Dr. Flavahan refuses to discuss the outcomes of the clinical trials and repeatedly stated that he did not rely on any clinical trials to form the basis of his opinions.[22] Furthermore, he testifies that he only scanned the published clinical trials "early on in the process" and did not analyze them.

> Q. Okay. And there's no mention of any of the published literature on clinical trials in -- involving Vioxx in your report. Is that also true?
> A. I'm not sure if any of the clinical trials actually are referenced in the report, no.
> Q. Did you reference the publication of the VIGOR report in your expert opinions?
> A. I don't think it's in there, no.
> Q. Did you reference the APPROVe publication in your report?
> A. I don't think it's in there.
> Q. Did you reference the intention to treat data that has recently been submitted by Merck within the last couple of weeks regarding the approved trial patients?
> A. I don't think that's in there, no.
> Q. Have you reviewed any of the intention-to-treat data that has been released by Merck in the last two weeks?
> A. No.
> Q. Do you know what is meant by intention to treat?
> A. No.
> Q. Sir, do you -- strike that. You have not commented in your report about statistically significant excess cardiovascular events, including heart attacks, in any of the randomized clinical trials involving Vioxx. Is that true?
> A. I have not commented on the results of any of the clinical trials, that's right.[23]

* * *

---

[20] Flavahan Dep., at 60:22-61:9.
[21] Id. at 194:23-195:1.
[22] Id. at 47:21-49:8; 57:13-60:11.
[23] Id. at 45:11-46:16.

5

> Q. Sir, do you have the expertise to deny that Vioxx has caused statistically significant increased cardiovascular events, including MIs, in several of their randomized clinical trials?
> MR. KREPS: Object to the form of the question.
> A. (Continuing) I've looked at the clinical trials. Actually scanned them early on in this process. And my participation in these events is actually to look at mechanisms, pharmacological action of Vioxx, the role of COX-2 within the blood vessel wall. So I -- I have the ability to discuss what may be happening in the blood vessel with regard to atherosclerosis. I am not involved in the design or assessment or analysis of clinical trials. And so I will not be discussing the clinical trials. But I will be discussing the action of these agents in the blood vessel wall and the role of COX-2 in the blood vessel wall.[24]

> * * *

> Q. My question was: Do you deny that there were statistically significant excess of CV events including MIs in randomized clinical trials involving Vioxx, including VIGOR and APPROVe?
> A. As I said, I'm not here to discuss the results or interpretation of the clinical trials.[25]

> * * *

> Q. My question is a simple one. In forming your opinions that are contained in the expert report of May 31, 2006 did you look at, consider in any way the results of the randomized clinical trials involve -- involving Vioxx?
> A. I looked to the clinical trials manuscripts to see what mechanisms they were discussing within the studies. **I did not analyze them. I did not review the interpretations of the studies.**[26]

Dr. Flavahan further testified that Naproxen's capacity to inhibit platelet aggregation is similar to low-dose aspirin. In doing so, he is unable to outline the studies he puts forward in support of this proposition:

> Q. Okay. With regard to Naproxen, what study or studies did you look at to determine whether or not Naproxen has an aspirin-like cardioprotective effect?
> A. The -- the data that's contained in the references there includes analysis of the inhibitory effects of Naproxen on platelet aggregation and -- as well as the release of thromboxane from the platelets at various times during its therapeutic administration. And it -- it basically provides the same degree or similar degree of inhibition as low-dose aspirin.

---

[24] Flavahan Dep., 47:2-20.
[25] *Id.* at 48:9-14.
[26] *Id.* at 58:10-18.

6

> Q. Is the -- there any study, other than -- than the Van Hecken study, that attempts to measure the platelet-derived thromboxane inhibition by Naproxen?
> A. Yeah, there's a few there. We can go through the references, if you want me to find them.
> Q. Okay. Did you review the Van Hecken study?
> A. I read the Van Hecken study, yeah.
> Q. Okay. Did the Van Hecken study describe a mean of platelet inhibition or did -- or did they describe individual patients?
> A. We'd have to look at the paper.
> Q. I'm wondering if you can recall that, as we sit here now.
> A. I can't recall.
> Q. Okay. Do you recall any subsequent studies to Van Hecken in which there was individual patient variability in terms of the Naproxen effect of inhibiting platelets at whatever percentage it did?
> A. It may be contained within the references I have in the report, but I can't recall that here.[27]

Plaintiff does not challenge Dr. Flavahan's qualifications as a vascular cell biologist. Rather, the issue before the Court and the basis of Plaintiff's challenge are his qualifications and knowledge of Vioxx. *Daubert* and Rule 702 require that in order for expert testimony to be admissible it must be relevant and reliable. The testimony must be based "upon sufficient facts or data" and the witness must "have applied the principles and methods reliability to the facts of the case." FED. R. EVID. 702. Dr. Flavahan asserts that Vioxx has not been demonstrated to increase vascular thrombotic events.[28] Dr. Flavahan acknowledges the importance of testing a biological mechanism theory in human clinical trials.[29] Yet Dr. Flavahan is not familiar with and refuses to acknowledge the results of human clinical trials involving Vioxx. Dr. Flavahan's lack of knowledge regarding the results of clinical trials involving Vioxx and his failure to factor in the results of those clinical trials render his opinions unreliable and irrelevant.

Plaintiff has demonstrated that Dr. Flavahan, though seemingly knowledgeable about vascular biology, is not knowledgeable about the clinical trials involving Vioxx that have been

---

[27] Flavahan Dep., 81:22-83:4.
[28] *Id.* at 213:24-214:2; 215:9-215:16.
[29] *See id.* at 53:9-54:4.

published in the medical literature.  In short, Dr. Flavahan is not qualified to offer expert opinions regarding Vioxx in the trial of this case.

## V.
## CONCLUSION

For these reasons, Dr. Flavahan's opinions do not meet the standards for expert testimony.  Plaintiff respectfully requests that the Court issue an order precluding Dr. Flavahan from offering expert opinion in this case, and for such other and further relief to which Plaintiff may be entitled.

Date:  September 19, 2006                              Respectfully submitted,


                                                       _____
                                                       Edward Blizzard (TBN 02495000)
                                                       Scott Nabers (TBN 14769250)
                                                       Rebecca Briggs King (TBN 24027110)
                                                       Holly M. Wheeler (TBN: 24006035)
                                                       BLIZZARD, MCCARTHY & NABERS, L.L.P.
                                                       440 Louisiana, Suite 1710
                                                       Houston, Texas 77002
                                                       (713) 844-3750
                                                       (713) 844-3755 (fax)

                                                       **ATTORNEYS FOR PLAINTIFF
                                                       CHARLES LARON MASON**

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 9, on this 19th day of September, 2006.

Phillip Wittmann
Stone, Pigman Walther, Wittmann, LLC
546 Carondelet Street
New Orleans, LA 70130-3588
Phone: (504) 581-3200
Fax: (504) 581-3361

Shayna S. Cook
Bartlit, Beck, Herman, Palechar & Scott
Courthouse Place
54 West Hubbard Street
Chicago, IL 60610
Phone: (312) 494-4400
Fax: (312) 494-4440

Richard Krumholz
Fulbright & Jaworski
2200 Ross Avenue, Suite 2800
Dallas, TX 75201-2784
Phone: (214) 855-8000
Fax: (214) 855-8200

/s/ H. Wheeler
Holly M. Wheeler