IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>Case No. 2:06cv810<br><br>CHARLES LARON MASON v.<br>MERCK & CO., INC. | MDL DOCKET NO. 1657<br><br>Section L<br><br>Judge Fallon<br>Mag. Judge Knowles |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DR. JANET ARROWSMITH-LOWE**

**(EXPERT CHALLENGE NO. 3)**

**TO THE HONORABLE JUDGE ELDON FALLON:**

Plaintiff, Charles Laron Mason, files this memorandum in support of motion to exclude the testimony of Dr. Janet Arrowsmith-Lowe.[1]

**I.
INTRODUCTION**

Merck & Co., Inc. ("Merck") has designated Dr. Janet Arrowsmith-Lowe ("Arrowsmith-Lowe") as an expert witness on Merck's interactions with the FDA and on the company's communications with the medical community. In addition to information about Merck's communications with the FDA and the medical community, Arrowsmith-Lowe's report contains numerous opinions on the efficacy of Vioxx, the alleged cardioprotective effect of naproxen, and

---

[1] Plaintiff is aware that this Court has denied a similar motion to exclude Arrowsmith-Lowe's testimony in *Irvin*. The Court concluded on that occasion that Arrowsmith-Lowe was qualified and her testimony based on reliable methodology. *See Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 597 (E.D. La. 2005). However, Plaintiff challenges any opinions rendered by Arrowsmith-Lowe that invade the arenas of epidemiology, cardiology and gastroenterology for which she lacks requisite training, experience and knowledge. Plaintiff also challenges Arrowsmith-Lowe in order to

her interpretation of various Vioxx clinical trials. In addition to being duplicative of the opinions offered by Merck's other experts, these opinions go well outside Arrowsmith-Lowe's area of expertise.

## II.
## STATEMENT OF THE FACTS

This action for personal injuries arises from Plaintiff, Charles Mason's use of Vioxx, which Plaintiff contends caused a heart attack on July 25, 2003. Mr. Mason was 59 years old when his nurse practitioner prescribed him Vioxx in September 2002. He had been taking the drug for approximately ten (10) months at the time of his heart attack. It is Plaintiff's contention that his heart attack was caused by a clot in one of his coronary arteries which resulted from a plaque rupture as well as the acceleration of atherogenesis due to Vioxx use. Mr. Mason's treating nurse practitioner has testified that had Merck disclosed the known risks of Vioxx she would not have prescribed Vioxx to Mr. Mason.

## III.
## LEGAL STANDARD

The legal standard for the admission of expert testimony in federal court is set forth at pages 4-6 of the Memorandum in Support of the Motion To Exclude Argument Or Opinion Testimony That An Increased Risk Of Heart Attack Exists Only After 18 Months Of Vioxx Use, filed concurrently herewith and incorporated herein by reference.

## IV.
## ARGUMENT

A.   **Arrowsmith-Lowe is Not Qualified to Offer Opinions Regarding the Efficacy of Vioxx, the Alleged Cardioprotective Effect of Naproxen, or Interpret Vioxx Clinical Data.**

Many of Arrowsmith-Lowe's opinions contained within her report improperly invade

---

preserve his record for appeal and respectfully asks the Court to reconsider its prior ruling.

2

scientific and medical fields that go well beyond her area of expertise. Specifically, she offers the following opinions:

- Merck adequately tested the potential risks of its drug Vioxx;[2]

- Existing data from ongoing clinical trials (including VIGOR) showed no indication of a statistically significant difference in the incidence of serious thromboembolic cardiovascular events between Vioxx, and placebo or comparator non-naproxen NSAIDs;[3]

- With respect to VIGOR, the "weight of the available evidence pointed to a cardioprotective effect of naproxen as the most plausible explanation for the thromboembolic cardiovascular results in VIGOR";[4]

- "The preliminary results [of APPROVe] showed a small increased risk of confirmed cardiovascular events beginning after 18 months of continuous treatment with Vioxx. The results from the first 18 months show no increased risk, which was consistent with prior Vioxx randomized clinical trial data, including the results from two large placebo-controlled Alzheimer's studies that were in the product circular for Vioxx."

- "In my opinion, in light of the data now available and the fact that Vioxx has a proven gastrointestinal advantage relative to traditional NSAIDs, as well as the desire of physicians to have it available to prescribe in appropriate patients, [Merck's work with the FDA to determine the best course of action with respect to the reintroduction of Vioxx into the U.S. market] is the responsible approach for Merck to take."

Arrowsmith-Lowe lacks the requisite training, experience and knowledge to render such opinions. She is not a cardiologist or a gastroenterologist. Although she claims to be an epidemiologist, she does not have a Ph.D. or master's degree in epidemiology.[5] The only formal schooling she has in epidemiology consists of two classes during a "summer epidemiology program" at Johns Hopkins University related to "General Principles" of epidemiology for which

---

[2] See Rule 26(a)(2)(B) Expert Report of Dr. Janet Arrowsmith-Lowe, pp. 4-5, attached hereto as Exhibit A.
[3] See id. at p. 7.
[4] Id.
[5] See Deposition of Janet Arrowsmith-Lowe, *In Re: Diet Drugs (Phentermine/ Fenfluramine/ Dexfenfluramine) Products Liability Litigation*, MDL NO. 1203, In the United States District Court for the Eastern District of Pennsylvania (March 12, 2004), pp. 81-83, attached hereto as Exhibit B.

3

she obtained a "certificate," and a course in clinical trials; however, she cannot remember the specific name of the courses, the course numbers, or the number of course hours.[6] She does <u>not</u> believe she even received credit hours for the courses.[7] She received "several weeks" of training in epidemiology at the Center for Disease Control (CDC) in 1984 on general principles of epidemiology and statistics.[8] During her two year fellowship with the CDC, she attended only "two or three" courses in epidemiology for which she did not receive any university credit and her performance was not evaluated.[9] Once she arrived at the FDA, Arrowsmith-Lowe attended a "two or three" day course in epidemiology; she does not recall the title of the course.[10] She has never done any work or consulted with pharmaceutical companies other than as a litigation expert.[11]

Arrowsmith-Lowe has never presented any study results to the Society of Epidemiologic Research, American Epidemiology Society or the International Society of Pharmacoepidemiology.[12] She is not a member of the Society of Epidemiologic Research or the American Epidemiology Society.[13] She did not join the American College of Epidemiology until 2003; she is not aware of any criteria that is required to be a member and she was not asked to join.[14] Although a member of the American College of Epidemiology, Arrowsmith-Lowe has not been invited to join as a fellow, which requires a person's significant and sustained contribution to the profession through research and

---

[6] *See id.* at pp. 83-88.
[7] *See id.*
[8] *See id.* at pp. 87-88.
[9] *See id.* at pp. 88-89.
[10] *See id.* at p. 91.
[11] *See id.* at pp. 105-109.
[12] *See id.* at p. 104.
[13] *See id.* at pp. 103-104.
[14] *See id.*

4

leadership.[15]

Arrowsmith-Lowe has published only one controlled epidemiologic study in a peer-reviewed journal, and has been involved in the publishing of only two cohort studies.[16] She has not had any epidemiologic studies published in any peer-reviewed epidemiologic publication.[17] In total, Arrowsmith-Lowe has published only nine studies in peer-reviewed publications.[18] She agrees that publishing the results of epidemiologic research was never a major activity during her 12 years with the FDA or since she left the FDA in 1996.[19] This testimony demonstrates that Arrowsmith-Lowe's training and experience in epidemiology is woefully inadequate. Further, Arrowsmith-Lowe does not believe she has ever prescribed Vioxx or Celebrex.[20]

Even if Arrowsmith-Lowe had the requisite training, experience and knowledge to render such opinions (which she does not), her opinions should nevertheless be excluded because she has neither a reliable scientific basis for them nor has she used a proven methodology to generate them. Arrowsmith-Lowe's opinions clearly include interpretation of the clinical studies of Vioxx. Yet she conducted no analyses of the data or results from any of the studies she cites. Instead, she relies on her faith in the quality of Merck's scientists and the FDA's review of their work.[21]

This Court has previously stated that an expert may not simply repeat or adopt the findings of another expert. *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 414 F.Supp.2d 574, 580-81 (E.D. La. 2006) ("[c]heerleading the testimony of another editor or a

---

[15] *See id.* at pp. 97-98.
[16] *See id.* at p. 99.
[17] *See id.* at p. 101.
[18] *See id.* at pp. 101-102.
[19] *See id.* at pp. 102-103.
[20] *See* Exhibit C, Deposition of Janet Arrowsmith-Lowe taken on June 7, 2006, 12:22-13:10.
[21] *See* Exhibit D, Deposition of Janet Arrowsmith-Lowe taken on October 28, 2005, 152:15-19.

medical publication does not constitute expert testimony."). Moreover, such testimony must be excluded when the expert does not attempt to assess the validity of the opinions on which she relies. *In re TMI Litig.*, 193 F.3d 613, 715-16 (3rd Cir. 1999) (finding blind reliance by expert on another expert's opinions demonstrates flawed methodology); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reason underlying the hearsay report). Because Arrowsmith-Lowe has not conducted any analyses of the data or results from any of the studies she cites, she should not be able to opine on that data.

**B.     Arrowsmith-Lowe's Opinions Are Duplicative Of Those Rendered By Merck's Other Experts.**

The above opinions are also duplicative of the opinions offered by Merck's other experts, including KyungMann Kim, Ph.D., Michael Rothkopf, M.D., Craig Pratt, M.D., Donald David, M.D. and Nicholas Flavahan, M.D. As discussed above, Arrowsmith-Lowe is not entitled to simply mimic the opinions of other experts. *Plunkett* 414 F.Supp.2d at 580-81; *In re TMI Litig.*, 193 F.3d at 715-16; *TK-7 Corp.*, 993 F.2d at 732-33. Therefore, the opinions discussed above should be excluded.

## V.
## CONCLUSION

As demonstrated through her own testimony, Arrowsmith-Lowe is not qualified to render opinions in the fields of epidemiology, cardiology or gastroenterology. Consequently, she is not qualified to opine on topics such as on the efficacy of Vioxx, the alleged cardioprotective effect of naproxen, and is not qualified to interpret data from the Vioxx clinical trials. Furthermore, even if she were qualified to render such opinions, she clearly has not conducted the requisite

analyses of the data from any of the studies she cites. Lastly, her testimony would be duplicative of testimony anticipated from Merck's other experts and, therefore, should be excluded.

Date:  September 19, 2006                          Respectfully submitted,

                                                                /s/ Wheeler
                                                                Edward Blizzard (TBN 02495000)
                                                                Scott Nabers (TBN 14769250)
                                                                Rebecca Briggs King (TBN 24027110)
                                                                Holly M. Wheeler (TBN: 24006035)
                                                                BLIZZARD, MCCARTHY & NABERS, L.L.P.
                                                                440 Louisiana, Suite 1710
                                                                Houston, Texas 77002
                                                                (713) 844-3750
                                                                (713) 844-3755 (fax)

                                                                **ATTORNEYS FOR PLAINTIFF
                                                                CHARLES LARON MASON**

| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
|---|---|
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 9, on this 19th day of September, 2006.

Phillip Wittmann  
Stone, Pigman Walther, Wittmann, LLC  
546 Carondelet Street  
New Orleans, LA 70130-3588  
Phone: (504) 581-3200  
Fax: (504) 581-3361  

Shayna S. Cook  
Bartlit, Beck, Herman, Palechar & Scott  
Courthouse Place  
54 West Hubbard Street  
Chicago, IL 60610  
Phone: (312) 494-4400  
Fax: (312) 494-4440  

Richard Krumholz  
Fulbright & Jaworski  
2200 Ross Avenue, Suite 2800  
Dallas, TX 75201-2784  
Phone: (214) 855-8000  
Fax: (214) 855-8200  

_____  
Holly M. Wheeler