IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx<br>PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1657 |
| | Section L |
| THIS DOCUMENT RELATES TO:<br>Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v.<br>MERCK & CO., INC. | Mag. Judge Knowles |

**PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN LIMINE CONCERNING EVIDENCE OR ARGUMENT THAT MERCK EMPLOYEES, FORMER EMPLOYEES, OR THEIR FAMILY MEMBERS TOOK VIOXX PRIOR TO THE DRUG'S WITHDRAWAL FROM THE MARKET**

(Plaintiff's Motion in Limine No. 2)

**TO THE HONORABLE JUDGE ELDON FALLON:**

Before voir dire examination of the jury panel, and out of the hearing of the jury, Plaintiff Charles Laron Mason, by and through his undersigned counsel, respectfully moves the Court for an order excluding all evidence, references, testimony and/or argument that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market on September 30, 2004. Such testimony is not relevant to Plaintiff's claims that Vioxx is defective and that Merck failed to warn physicians and patients of the increased risk of cardiovascular events associated with the drug. Such evidence and argument are without supported and no attempt has been made to meet the rigid requirements of *Daubert*. Where family members are involved, such testimony may also constitute hearsay or double hearsay. Even if relevant,

1

reliable or otherwise admissible, the probative value of such evidence (if any) is substantially outweighed by its prejudicial effect.

I. THE COURT'S PRIOR RULINGS

In *Plunkett v. Merck & Co., Inc.* and *Smith v. Merck & Co., Inc.*, the Court granted the plaintiffs' motions in limine to exclude evidence or testimony that Merck employees, former employees or family members of employees took Vioxx prior to the drug's removal from the market.[1] In *Barnett v. Merck & Co., Inc.*, the Court reserved its ruling on the same issue, indicating that such testimony would require context, but generally would *not* be inadmissible "since it is of no relevance" and would confuse the jury because of multiple variables such as the duration and dosage of Vioxx use and the witnesses' and/or their family members' various risk factors.[2]

In both *Plunkett* trials, the Court allowed Merck's witnesses, Alise Reicin ("Reicin") and Ed Scolnick to testify about their personal Vioxx use. During the *Barnett* trial, however, the Court did *not* allow Merck to solicit testimony from Reicin about her personal use of Vioxx on redirect examination.[3] In *Smith*, the Court did allow Merck to solicit this testimony from Reicin after Merck argued that plaintiff's counsel attacked her credibility on cross examination.[4] The Court did not verbalize its reasoning behind its ruling.[5]

Plaintiff respectfully requests that the Court grant this motion and preclude Merck from soliciting such testimony during the trial of this matter or, at a minimum, reserve its ruling until the time of trial, as the Court did in *Barnett*, when the issue can be placed in context.

---

[1] *See* Order, *Plunkett v. Merck & Co., Inc.*, (Nov. 18, 2005) (Rec. Doc. 1528) and Order, *Smith v. Merck & Co.*, Inc., (Sept. 6, 2006) (Rec. Doc. 6721).
[2] *See* Order, *Barnett v. Merck & Co., Inc.*, (June 28, 2006).
[3] *Barnett v. Merck & Co., Inc.*, August 14, 2006 Transcript, 2430:24-2431:23.
[4] *Smith v. Merck & Co., Inc.*, September 21, 2006 Transcript, 2505:15-2507:12.

2

## II. THE ALLEGED USE OF VIOXX BY MERCK EMPLOYEES OR THEIR FAMILY MEMBERS IS IRRELEVANT TO PLAINTIFF'S CLAIMS.

Anecdotal evidence that Merck employees or their family members took Vioxx is irrelevant to Plaintiff's claims of defective product and failure to warn. Such evidence, testimony, or discussion is irrelevant to prove or disprove that Vioxx is unreasonably dangerous. Arguably, those who have testified they took Vioxx had considerably more information about the safety profile of the drug and were well aware of the cardiovascular risks associated with taking Vioxx. Unlike physicians who prescribe the drug to millions of patients, these employees and their family members would have been privy to data questioning the safety of Vioxx. These employees and their family members or their physicians would have had opportunity to perform a different risk-benefit analysis prior to taking the drug than the rest of the public.

Plaintiff has not been given medical records on the employees and family members in question.[6] Plaintiff has not had opportunity to depose their treating physicians. These persons' medical conditions, risk factors and other medications are unknown. There is no indication that their experience with Vioxx is the same or similar to that of Mr. Mason. The variables of Vioxx use differ from person to person. For example, Merck employees, having knowledge of the drugs prothrombotic nature, could have taken blood thinners to minimize the risk of a thrombotic event.

---

[5] *See id.*

[6] All such testimony to date has not been supported by any evidence with the exception of Reicin's medical records which were produced in *Plunkett* but have not been produced in the present case. The medical records of Dr. Scolnick, Dr. Anstice, Dr. Kim, or Mrs. Gilmartin establishing that they were in fact prescribed and took Vioxx have also not been produced by Merck. Merck witnesses should not be allowed to testify they or their family member took Vioxx without producing medical records sufficient to allow meaningful cross examination.

3

This issue was considered by Judge Carol E. Higbee in New Jersey. In *Humeston, et al v. Merck & Co., Inc.*, the court made the following finding directed at the inadmissibility of such evidence based on the fact that evidence regarding the ingesting of Vioxx by a non-party Merck employee or Merck family member was irrelevant as involving a factual analysis unrelated to the Plaintiff:

> The individual decision made by a person in consultation with their doctor to take a drug is a personal decision which can be made for many reasons. People are willing to take different risks. Some people, depending on their medical condition, may have been willing to gamble on the cardiovascular risks even if they knew of the risk. The exploration at trial of each employee's personal decision would be prejudicial, confusing and time consuming.

*See* Memorandum of Decision on Motion, *Humeston v. Merck & Co.*, No. ATL-L-2272-03-MT, slip op. at 3 (N.J. Super., Atlantic Cty. September 9, 2005).

These individual choices cannot be extrapolated across the entire population of those taking Vioxx and judged as evidence that Vioxx is safe as labeled. Such testimony does not prove that the drug is not unreasonably dangerous. It is irrelevant.

To allow the admission of this testimony would be much like allowing a cigarette company executive to testify that he smoked or that members of his family smoked and that somehow that testimony of those facts proved that cigarettes are not unreasonably dangerous. Clearly, cigarettes are dangerous and cause untold harm. Individual choices to smoke have no bearing on that conclusion. The Court's analysis in this case should be the same as the New Jersey Court.

One of Plaintiff's primary claims is that Merck knew of the cardiovascular dangers associated with the use of Vioxx but failed to warn the physicians and their patients. Testimony regarding Merck executives and their family members using Vioxx is immaterial and irrelevant to this claim.

Merck executives and their family members had the benefit of internal safety data that was not available to the public. Clearly, any decisions they made to take Vioxx are irrelevant to Plaintiff's claim that he and his treating physicians were not adequately warned of the risks associated with the drug. Rather, at best, such evidence is merely confusing. As Judge Higbee found in *Humeston*, "[s]uch evidence does not have any probative value in answering the ultimate issues in the failure to warn aspect of this litigation." *Id.* Defendant should therefore be precluded from introducing such evidence.

### III. SUCH EVIDENCE OR ARGUMENT IS INADMISSIBLE UNDER *DAUBERT* AND RULE 802.

The evidence and argument concerning personal use that Merck has introduced in prior trials has been, for the most part, completely unsupported. Merck has made no attempt to meet the rigid scientific requirements of *Daubert* and show that such evidence, if any, is scientifically reliable. No expert has been designated to testify about this issue. For that reason alone, they should be excluded under Rule 702 and 703.

Moreover, where family members are involved, such testimony may also constitute impermissible hearsay or double hearsay under Rules 802 and 805 because it would include reports about what a relative told the witness about his or her experience with Vioxx.

### IV. THE PROBATIVE VALUE OF EVIDENCE THAT MERCK EMPLOYEES OR THEIR FAMILY MEMBERS TOOK VIOXX IS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT.

Plaintiff contends that the Court has correctly ruled that testimony and evidence that Merck employees and their family members took Vioxx is not relevant under Rule 401. As suggested above, it also suffers from other admissibility problems under Rule 702, 703, 802 and 805. Plaintiff urges the Court to return to its previous decision and find that the testimony is inadmissible. In the

event the Court finds that the evidence is relevant or otherwise admissible, the evidence clearly should not be admitted under Rule 403. Though any probative value is highly questionable, it is clearly substantially outweighed by the danger of unfair prejudice, confusion of issues and waste of time.

The probative value of the testimony at issue is minimal and pales in comparison to the prejudicial effect of the testimony. Testimony that a witness' relative took Vioxx could mislead a jury into believing that Vioxx was safe and effective, since, as Merck will undoubtedly argue, no witness would have allowed his or her relative to take a drug that was known to be dangerous. This implication, however, is not necessarily the case. Merck employees may have taken and allowed their relatives to take Vioxx knowing its dangerous condition for numerous reasons - it was taken in addition to a blood thinning agent (something a physician without knowledge of the drug's prothrombotic effect would not have known to add to a patient's therapy), the risk in the case of extreme pain was outweighed by the benefit, or the family member was just a risk taker. Allowing such testimony would only confuse the jury and cause the jury to disregard the *reliable* scientific evidence that was introduced during the course of the trial.

Moreover, allowing the testimony is counter to the Court's expressed desire to streamline the trial process. If allowed, Plaintiff will be forced to seek the medical records of those offering such testimony and will have to spend considerable time exposing the underlying health condition and risk-benefit analysis undertaken for each witness. This will result in a mini-trial in the midst of a trial, a considerable investment of the Court's time, but essential in order that Plaintiff be given opportunity to adequately answer this evidence.

Judge Higbee, after briefing an oral argument on the same issues presented herein, correctly ruled:

> The court finds that evidence that Merck employees or their family members took VIOXX is substantially more prejudicial than probative and must be excluded during trial. Such evidence does not have any probative value in answering the ultimate issues in the failure to warn aspect of this litigation. Allowing Merck employees to testify that they or their family members took VIOXX would be highly prejudicial to plaintiffs' claims and would not demonstrate with any reliability that VIOXX was more or less safer than was being represented by Merck to the public.

*Id.,* slip op. at 3.

Judge Higbee has continued to follow this ruling in the *McDarby/Cona* trial. Plaintiff submits this reasoning is persuasive and should be adopted.

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order excluding any evidence or discussion that Merck employees, former employees or their family members used Vioxx.

Date: September 27, 2006

Respectfully submitted,

/s/ H. Wheeler

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF
CHARLES LARON MASON**

7

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of September, 2006.

_____
Holly M. Wheeler