IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx<br>PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1657 |
| | Section L |
| THIS DOCUMENT RELATES TO:<br>Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v.<br>MERCK & CO., INC. | Mag. Judge Knowles |

**PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN LIMINE CONCERNING DEFENDANT'S ARGUMENT THAT IT WAS PROHIBITED BY FDA REGULATIONS FROM MAKING LABEL CHANGES WITHOUT PRIOR APPROVAL**

(Plaintiff's Motion in Limine No. 4)

**TO THE HONORABLE JUDGE ELDON FALLON:**

Before voir dire examination of the jury panel, and out of the hearing of the jury, Plaintiff Charles Laron Mason, by and through his undersigned counsel, respectfully moves the Court for an order excluding all evidence, references, testimony and/or argument relating to Defendant Merck & Co., Inc.'s argument that it was prohibited by FDA regulations from making label changes without prior approval. In the alternative, Plaintiff Mason seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial.

**I.
INTRODUCTION**

Plaintiff is aware that the Court has already visited this issue and denied the plaintiffs' motions in limine to exclude such testimony in *Plunkett v. Merck & Co., Inc., Barnett v. Merck &*

1

*Co., Inc.* and *Smith v. Merck & Co., Inc.*[1] Plaintiff files this motion to preserve his record for appeal and respectfully requests that the Court reconsider its previous rulings for the reasons set forth below.

There is no question that drug manufacturers are held to be experts in their particular field and are under a continuous duty to keep abreast of scientific developments touching upon the manufacturers' product and to notify the medical profession of any additional side effects discovered from the products' use. *See e.g.*, *Barson v. E.R. Squibb & Sons*, 682 P.2d 832, 835-836 (Utah 1984); *Stanback v. Parke, Davis & Co.*, 502 F. Supp. 772, 773 (W.D. Va. 1980); *Mink v. University of Chicago*, 460 F.Supp. 713, 720 (N.D. Ill. 1978); *Chambers v. G. D. Searle and Co.*, 441 F.Supp. 377 (D.C.Md.1975), *aff'd,* 567 F.2d 269 (4th Cir. 1977); *Vaughn v. G. D. Searle and Co.*, 536 P.2d 1247 (Or. 1975); *McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d 522, 528 (Or. 1974); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966); *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623 (Mo.1968).

Plaintiff anticipates that Merck will offer testimony and argue at trial that it could not have changed its Vioxx label to include warnings of the cardiovascular risks or reports of cardiovascular and other adverse events without prior approval of the FDA. As a result, ***it suggests that Merck was prohibited by law from fulfilling its duty to warn.*** Such testimony and/or argument is both a misstatement of existing law, as the discussion below suggests, and highly misleading. It should, therefore, be precluded.

In response to similar motions, Merck has urged that it should be allowed to argue such an ***absolute legal*** prohibition under the guise of proving, as a matter of ***scientific fact***, whether it needed

---

[1] *See* Order, *Plunkett v. Merck & Co., Inc.*, (Nov. 18, 2005) (Rec. Doc. 1528); Order, *Barnett v. Merck & Co.,*

to alter its label at all. They are not the same thing. By conflating the two arguments, it apparently hopes this Court will allow it to make flagrantly improper arguments and to bolster improperly its untenable position.

This motion and the evidence and arguments it seeks to exclude address only Merck's attempt to excuse its failure to warn and to circumvent to question of whether it was scientifically required to strengthen its warning by arguing that its hands were tied and that it simply could not have done so even if it had wanted to do so. That is a misstatement of federal law. Though subject to FDA oversight, Merck was responsible as a matter of substantive law for ensuring that adequate warnings appeared in the Vioxx label at all times. Whether the warning was adequate or needed to be strengthened is, as Merck suggests, the question for the jury. Merck should not, however, be permitted to argue or introduce evidence, as it routinely has, that a jury need not even consider the evidence in the case in answering this question because Merck was powerless to alter its label and would have broken the law had it done so. Such misstatement of the law is impermissible. Plaintiff respectfully requests entry of an order prohibiting Merck from eliciting such testimony or making the argument that Merck could not have changed its warning without breaking the law.

A.     **FEDERAL REGULATIONS REQUIRED MERCK TO WARN OF KNOWN HAZARDS ASSOCIATED WITH THE USE OF VIOXX.**

Any suggestion that Merck could not have changed the Vioxx label without prior FDA approval is false and misleading. The Food, Drug and Cosmetic Act (the "Act") expressly required Merck to immediately to inform the public of newly discovered dangers rather than waiting for the FDA to act. *See Labeling and Prescription Drug Advertising; Content and Format for Labeling for Human Prescription Drugs,* 44 Fed. Reg. 37434, 37447 (1979); *McEwen v. Ortho Pharm. Corp.,*

---

*Inc.,* (June 28, 2006); and Order, *Smith v. Merck & Co., Inc.,* (Sept. 6, 2006) (Rec. Doc. 6721).

528 P.2d, 522, 534-535 (Or. 1974). It is, therefore, Merck's legal obligation to promptly take steps to strengthen its warnings to physicians and consumers of newly discovered dangers and risks associated with an approved product. 21 C.F.R. §201.57 (c).

The intention of the Act is "to protect consumers from dangerous products." *United States v. Sullivan,* 332 U.S. 689, 696 (1948); *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120 (2000). Consistent with its purpose, the FDA and its regulations explicitly permit a manufacturer to unilaterally strengthen a warning label ***at any time*** without regulatory approval, 21 C.F.R. § 314.70(c)(6)(iii)(A), to allow the drug manufacturer to immediately strengthen warnings when evidence of adverse side effects, risks, or dangers are discovered. *See* 30 Fed. Reg. 993 (Jan. 30, 1965).

In the recent case of *McNellis v. Pfizer, Inc.,* No. 05-1286-JBS, 2005 WL 3752269 (D. N.J. Dec. 29, 2005), the district court, after outlining 21 C.F.R.§ 314.70(c)(6), acknowledged a manufacturer's unilateral duty to warn:

> If the manufacturer desires to make changes to the labeling after a drug is approved, it must generally submit a Supplemental NDA to the FDA pursuant to 21 C.F.R. §314.70(b)(2)(v)(A). Although most labeling changes require a Supplemental NDA, a number of exceptions have been enumerated in 21 C.F.R. §314.70(c)(6)(iii), which provides in pertinent part:
>
> (6) The agency may designate a category of changes for the purpose of providing that, in the case of a change in such category, the holder of an approved application may commence distribution of the drug product involved upon receipt by the agency of a supplement for the change. These changes include, but are not limited to:
>
> \* \* \*
>
> (I) Changes in the labeling to accomplish any of the following:
>
>> (A) To add or strengthen a contraindication, warning, precaution or adverse reaction;

4

> (B) To add or strengthen a statement about drug abuse, dependence, psychological effect, or over dosage;
>
> (C) To add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product;
>
> (D) To delete false, misleading, or unsupported indications for use or claims for effectiveness; or
>
> (E) Any labeling change normally requiring a supplement submission and approval prior to distribution of the drug product that FDA specifically requests be submitted under this provision.

21 C.F.R. §314.70(c)(6)(iii). Thus, it is apparent that prior FDA approval need not be obtained, nor will a product be deemed mislabeled, if the manufacturer voluntarily or even unilaterally strengthens the approved warnings, precautions or potential adverse reactions upon the label pursuant to 21 C.F.R.§314.70(c)(6)(iii)(A); *McNellis,* 2005 WL 3752269 at 4-5.

Moreover, "Section 201.57 delineates the 'specific requirements on content and format of labeling for human prescription drugs' and subsection (e) specifically governs 'warnings.'" *Motus v. Pfizer, Inc.*, 127 F. Supp.2d 1085, 1095 (C.D. Ca. 2000). Section 201.57 provides: "labeling shall be revised to include a warning ***as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.*** 21 C.F.R. §201.57 (e) (emphasis added). Also, 21 C.F.R. §314.70(c) is explicit that labeling changes to "add or strengthen a contraindication, warning, precaution, or adverse reaction" ***do not*** require FDA's prior approval.

In fact, when promulgating these regulations the FDA Commissioner invited companies to strengthen the warnings contained in their drug labels.

> [D]rug labeling does not always contain the most current information and opinion available to physicians about a drug because advances in medical knowledge and

5

> practice inevitably precede formal submission of proposed new labeling by the manufacturer and approval by FDA. . . *[L]abeling regulations do not prohibit a manufacturer . . . from warning health care professionals wherever possibly harmful adverse effects associated with the use of a drug are discovered. The addition to labeling and advertising of additional warnings . . . is not prohibited by these regulations* . . . .[P]racticing physicians will welcome such information so they can make their best informed medical judgments in the care of their patients.

44 Fed. Reg. at 37,434 (emphasis added).

Without question, Merck was permitted to add a warning for cardiovascular risks to the Vioxx label at any time after the VIGOR study was completed without advance authorization from the FDA. *Id.; see also* 30 Fed. Reg. 993 (Jan. 30, 1965) (encouraging drug manufacturers to strengthen its warnings "in the interest of drug safety" at any time without FDA pre-approval to enable adoption of new warnings as soon as possible). Any argument or testimony that Merck was required to obtain prior approval from the FDA before changing the Vioxx label to include warnings or information concerning serious cardiovascular adverse events is simply false.

**B.    COURTS RECOGNIZE THAT DRUG MANUFACTURERS HAVE DUTY TO WARN OF KNOWN HAZARDS REGARDLESS OF PRIOR FDA APPROVAL.**

Federal and state courts have concluded that current FDA regulations do not impose any restrictions on a drug manufacturer's ability to add warnings or precautions regarding newly-discovered risks and dangers but dictate that a warning of known risks be added to a label prior to FDA approval.

In *Witczak v. Pfizer, Inc.*, the district court found that FDA regulations explicitly permit pharmaceutical companies to unilaterally strengthen the warning label at any time without regulatory pre-approval. 377 F.Supp.2d 726 (D. Minn. 2005) (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)). The *Witczak* court noted that the "particular regulation was promulgated precisely to allow drug-makers

to quickly strengthen label warnings when evidence of new side effects are discovered." *Id.* at 726 (citing 30 Fed.Reg. 993 (Jan. 30, 1965)). FDA regulation "permits the addition to the drug's labeling or advertising of information about a hazard without advance approval" by the FDA. *Id.*

Judge Steger of the United States District Court for the Eastern District of Texas recently provided an in-depth analysis of the FDCA's applicability to state law claims against pharmaceutical companies, and the issue of preemption. *Cartwright v. Pfizer, Inc.,* 369 F.Supp. 2d 876 (E.D. Tex. 2005). In the *Cartwright* case, the defendant claimed that plaintiff's state law failure to warn claims were preempted because under the Food, Drug and Cosmetic Act, the manufacturer was required to obtain FDA approval before revising the product labeling. *Id.* The district court specifically rejected this argument:

> Since 1965, the FDA's regulations permit a manufacturer '[T]o add or strengthen a contraindication, warning, precaution, or adverse reaction," without prior approval by the FDA . . . ." *(citing* 21 C.F.R. § 314.70(c)(6)(iii)(A) and finding that the Act sets minimum standards that "expressly do not prohibit a manufacturer from 'add[ing to] or strengthen[ing] a contraindication, warning, precaution or adverse reaction.'") . . . . Thus, FDA's position regarding stronger warnings by drug manufacturers, as expressed through **its own regulations**, is that a manufacturer **could, and should**, provide stronger warnings as soon as such a warning is warranted.

*Id.* (emphasis added).

The *Cartwright* court further pointed out that, under these regulations, a manufacturer should issue a warning whenever there is "reasonable evidence of an association of a serious hazard with a drug; **a causal relationship need not have been proved.** " *Id.* (citing 21 C.F.R.§ 201.57(e)).[2] The *Cartwright* court concluded "it is clear to this Court that ***manufacturers must act quickly to warn***

---

[2] As the *Cartwright* court noted, this same regulation requires that "black box" warnings be added to the label of drugs "that may lead to death or serious injury." *Id.*

7

*regarding possibly deadly side effects associated with a drug because the FDA only sets forth minimum standards for labeling and safety of drugs.*" *Id.* (emphasis added).

In *Madden v. Wyeth*, 2005 WL 2278081 (N.D. Tex. Sept. 14, 2005), the defendant claimed its warning label was adequate in support of a summary judgment motion. The district court rejected "defendant's argument that its warning label is adequate because it was approved by the FDA. Federal regulations do not prohibit a manufacturer from "add[ing to] or strengthen[ing] a contraindication, warning, precaution, or adverse reaction." *Id.* at *10 n.4 (citing 21 C.F.R. §314.70(c)(6)(iii)(A)).

In *Caraker v. Sandoz Pharmaceuticals Corp.,* 172 F.Supp.2d 1018 (S.D. Ill 2001), the district court found that the manufacturer was explicitly authorized by FDA regulations to add or strengthen its warnings without prior FDA approval. *Id.* at 1033-34. The *Caraker* court cited to the FDA commissioner's statement that "labeling regulations do not prohibit a manufacturer, packer, relabeler, or distributor from warning health care professionals whenever possibly harmful adverse effects associated with the use of the drug are discovered." *Id.* at 1034 (citing 44 Fed. Reg. 37,434 & 37,447 (1979)); *see Jamison v. Purdue Pharma Company,* 251 F.Supp.2d 1315 (S.D. Miss. 2003) (listing situations where company may amend labeling without prior approval, including "adding or strengthening" (I) a contraindication, warning, precaution, or adverse reaction").

Lastly, the court in *Ohler v. Purdue Pharma. L.P.,* 2002 WL 88945 (E.D. La 2002), addressed a similar issue in the context of a motion to remand, where removal was partially based on preemption grounds. In rejecting the defendants' arguments, this Court noted that the "applicable regulation states that changes in labeling that 'add or strengthen a contraindication, warning, precaution, or adverse reaction'" fall within the category of adjustments that "may be made before

8

FDA approval.'" *Id.*; *see Kurer v. Parke, Davis & Co.*, 679 N.W.2d 867, 873 (Wis.App. 2004) ("[E]ven after approval, a drug manufacturer can add warnings without prior FDA approval.").

Adhering to these same principles, Judge Higbee in the Cona/McDarby trial involving Vioxx interrupted the testimony of a Merck employee, David Anstice, who had testified that the company could not have added a warning to the label without prior FDA approval, to give a curative instruction. The court informed the jury that the manufacturer was *not* limited by FDA regulations to add to the warning label at any point in time. The curative instruction was reported to be:

> I just wanted to advise you that the law under FDA regulations does allow a company to change their warnings, to warn consumers and physicians about dangers they find out about after the label is approved,' Higbee told the panel. **'They're allowed to make those changes through a special procedure, without prior FDA approval.**

Brennan, *Judge Interrupts Vioxx Testimony to Instruct Jury on Label Warnings*, The Legal Intelligencer, March 20, 2006, at 3, col 1 http://www.law.com/jsp/article.jsp?id=1142429894927 (emphasis added).

The overwhelming majority of federal and state courts have concluded and recognized that a manufacturer not only may, but should add or strengthen warnings related to a pharmaceutical drug, without waiting for FDA approval. Federal regulations require that Merck should have strengthened the precautions and/or warnings contained in the Vioxx label as soon as it had actual or constructive knowledge of the increased risk of cardiovascular risks associated with the ingestion of the drug.

For these reasons, Plaintiff moves to exclude all evidence, references, testimony and/or argument relating to Defendant Merck & Co., Inc.'s argument that it was prohibited by FDA regulations from making label changes without prior approval. In the alternative, Plaintiff seeks a

9

motion in limine requiring that Merck first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial.

Date:  September 27, 2006                Respectfully submitted,

*/s/ H. Wheeler*
Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF
CHARLES LARON MASON**

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of September, 2006.

_____
Holly M. Wheeler