IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Vioxx | \| | MDL DOCKET NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | \| | |
| | \| | Section L |
| THIS DOCUMENT RELATES TO: | \| | |
| Case No. 2:06cv810 | \| | |
| | \| | Judge Fallon |
| CHARLES LARON MASON v. | \| | Mag. Judge Knowles |
| MERCK & CO., INC. | \| | |

---

**PLAINTIFF'S MISCELLANEOUS MOTION TO EXCLUDE OR,
IN THE ALTERNATIVE, MOTION IN LIMINE AND/OR
REQUEST FOR LIMITING INSTRUCTIONS**

**(Plaintiff's Motion in Limine No. 1)**

---

**TO THE HONORABLE JUDGE ELDON FALLON:**

Before voir dire examination of the jury panel, and out of hearing of the jury, Plaintiff Charles Laron Mason, by and through his undersigned counsel, respectfully moves the Court for an order excluding all evidence, references, testimony and/or argument relating to the topics set forth below. In the alternative, Plaintiff Mason seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial. In the event this Court does not exclude and/or limine such matters, then Plaintiff requests that a mandatory limiting instruction as to its proper use be given upon its admission and each and every time thereafter as such a reference is made pursuant to FED. R. EVID. 105.

# I.
## SPECIFIC GROUNDS FOR MOTIONS TO EXCLUDE OR, IN THE ALTERNATIVE, MOTIONS IN LIMINE

Defendant should be precluded from any comment or inference, or submitting any evidence, eliciting any testimony, or documents suggesting or referring to the following or, at minimum, Defendant should be required first to approach the bench and ask for a ruling before attempting to introduce such evidence or discuss such matters at trial:

A.    **That a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications.**    Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote,  is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict. For these reasons alone, it should be excluded. For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402 (only relevant evidence is admissible). Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*. *Id.*

Under FED. R. EVID. 403, even "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence."  Thus, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

2

**B.      That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide.** Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote, is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict.   In addition, the Fifth Circuit has condemned such appeals to "community conscience" or collective self-interest as improper.  *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1239 (5th Cir. 1985). For these reasons alone, it should be excluded. For many of the same reasons, it is not relevant to any matter in this action.  *See* FED. R. EVID. 402. Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert.  Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**C.      That this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial hardship or loss of employment.**   Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote, is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict.  In addition, the Fifth Circuit has

3

condemned such appeals to "community conscience" or collective self-interest as improper. *Westbrook,* 754 F.2d at 1239. For these reasons alone, it should be excluded. For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402. Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703. Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert.* *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**D.      That this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining insurance.** Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote, is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of its verdict. In addition, the Fifth Circuit has condemned such appeals to "community conscience" or collective self-interest as improper. *Westbrook,* 754 F.2d at 1239. For these reasons alone, it should be excluded. For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402. Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703. Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert.* *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues,

misleading the jury, or causing undue delay and waste of time.

E.   **That this case or any other Vioxx product liability case may cause an increase in the cost of purchasing medications for the public.**  Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote,  is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of the its verdict.   In addition, the Fifth Circuit has condemned such appeals to collective self-interest as improper. *Westbrook,* 754 F.2d at 1239.  For these reasons alone, it should be excluded.  For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402.  Finally, no expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert. Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

F.   **Health Canada's or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries.**  Numerous courts have held that evidence concerning approvals or disapprovals of prescription drugs by foreign regulatory bodies should be excluded because such regulatory bodies use different standards than are used in the United States and, therefore, such evidence is irrelevant or of such minimal probative value that any such value is greatly outweighed by the likelihood that it will confuse, mislead, or unfairly prejudice the jury. *See* FED. R. EVID. 403; *Deviner v. Electrolux Motor, AB.,* 844 F.2d 769, 771 n.2, 773 (11th Cir. 1988) (affirming lower court's in limine excluding evidence that Swedish law required chain brakes on

chain saws because "Swedish standards are not relevant in a U.S. product liability case involving a saw sold in the U.S" and, even if relevant, they are unduly prejudicial); *Tews v. Husqvarna, Inc.,* 390 N.W.2d 363, 366 (Minn. Ct. App. 1986) (affirming trial court's exclusion of evidence because "legal standards in other countries are irrelevant"); *see also Harrison v. Wyeth Labs.,* 510 F. Supp. 1, 4-5 (E.D. Pa. 1980, *aff'd,* 676 F.2d 685 (3d Cir. 1982) (drug manufacturer's liability must be judged solely in the country where the alleged injury occurred). In addition, the introduction of such evidence or argument is likely to needlessly waste time or cause undue delay while each side lines up evidence of one country or another's approval, disapproval or withdrawal. *See* FED. R. EVID. 403.

No expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702. Moreover, no reasonable notice of intent to raise an issue concerning the law of a foreign country has been given. *See* FED. R. CIV. P. 44.1.

**G.     That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question.** Mr. Mason testified at his deposition that he had insurance at the time he received Vioxx. The collateral source rule is well-established in Utah. As the result, that fact is irrelevant to any issue in this case and any mention or inference, direct or indirect, will be harmful and unduly prejudicial to the Plaintiff. *See, e.g., Mahana v. Onyx Acceptance Corp.,* 96 P.3d 893, 901 (Utah 2004); *Gibbs M. Smith, Inc. v. United States Fid. & Guar. Co.,* 949 P.2d 337, 345 (Utah 1997); *Suniland Corp. v. Radcliffe,* 576 P.2d 847 (Utah 1978). Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**H.**    **That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law.** Federal and Utah state law both permit the award of punitive damages. UTAH CODE ANN. § 78-18-1. To suggest otherwise is improper and would be unduly prejudicial. *See generally TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 462 (1993).

**I.**    **The purported "litigation crisis," "lawsuit crisis," "lawsuit abuse," or similar terms or phrases.** Such "evidence," if any, and argument constitutes unsupported speculation, insurance company propaganda and hype, and is likely to involve matters outside the record. It is, therefore, also irrelevant to any matter at issue in this case. *See* FED. R. EVID. 402. No expert has been designated to testify on such matters which would require expert support. *See* FED. R. EVID. 702.

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time. Such language and argument suggest that this lawsuit is groundless. Had that been the case, this Court would have addressed the problem.

**J.**    **That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or routinely employ contingent fee arrangements [except as they relate to any fees in this case].** Such evidence or argument would be irrelevant, unduly prejudicial, and calculated solely to inflame the jury. *See Bufford v. Rowan Companies, Inc.* 994 F.2d 155, 157-58 (5th Cir. 1993). It should be excluded under FED. R. EVID. 402 and 403.

**K.**   **Other Vioxx cases and other cases involving Plaintiff's counsel or other drugs.**

As this court is perhaps best aware, there are thousands of other Vioxx cases pending in the courts and a few Vioxx cases have been tried around the country and in this Court. The result in those cases are irrelevant in this matter and introduction of such matters before the jury would be so prejudicial as likely to cause a mistrial. For these reasons, any such reference should be excluded under Rules 402 and 403.

Similarly, Plaintiff's counsel have participated in a number of well-known cases, including breast implant litigation, Ephedra, Baycol and fen-phen litigation. None of the cases, nor the fact that counsel participated in them, is relevant here. Moreover, even if it were, its probative value, if any, would be outweighed by the potential for undue prejudice.

Finally, Defendant may try to introduce into the case matters pertaining to drug litigation involving breast implant litigation, Ephedra, Baycol and fen-phen or other prescription drugs or medical devices. The specific medical issues relating to a given patient are difficult and complex. Allowing such evidence would result in time-consuming, collateral mini-trials to determine whether the drug at issue caused injury and would be highly prejudicial and likely to confuse or mislead the jury.

**L.**   **That Vioxx was taken off the market due to "media hype" caused by attorneys or the media themselves.**   Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation, and is likely to involve matters outside the record, including hearsay and double hearsay. For these reasons alone, it should be excluded. For the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402 (only relevant evidence is admissible). Finally, no expert has been designated to testify on such matters which would require expert support.

*See* FED. R. EVID. 702; 703.

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**M.    Unsupported hearsay statements of health care providers.**  Defendant should be prevented from eliciting, referencing, or introducing any statements, based upon hearsay discussions with healthcare providers. *See* FED. R. EVID. 802; 805 (double hearsay); *Bradley v. Brotman*, 836 So. 2d 1129, 1135 (Fla. Dist. Ct. App. 4th 2003) (citing, *inter alia*, FED. R. EVID. 403).   Where such conversations involve unsupported  medical conclusions and opinions, such evidence or argument also violates Rule 702 and 703.

**N.    That any member of the public or medical community desire that Vioxx be placed back on the market.**  Such anecdotes, if any, and argument is highly subjective, may constitute unsupported speculation, and is likely to involve matters outside the record, including hearsay and double hearsay.  For these reasons alone, it should be excluded.  For many of the same reasons, it is not relevant to any matter in this action. *See* FED. R. EVID. 402 (only relevant evidence is admissible). Finally, no expert has been designated to testify on such matters which would require expert support and there has been no showing that such conclusion would be statistically and scientifically reliable. *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions are scientifically or statistically reliable under *Daubert*. *Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**O.**   **The potential impact on pharmaceutical companies and/or the FDA, if any, of permitting state failure to warn claims to be asserted or of allowing a plaintiff in such a case to prevail.** Defendant is likely to argue and have in other cases argued that permitting state failure to warn claims, such as this one, to be asserted has the following effects: (1) causes or pressures drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits; (2) undercuts the FDA's mission to provide only scientifically valid warnings; (3) frustrates the FDA's protective regime; and (4) that too many warnings of serious injuries will dilute the effectiveness of warnings generally.   Such "evidence," if any, and argument is highly subjective, constitutes unsupported speculation and is too remote, is likely to involve matters outside the record, including hearsay and double hearsay, and is in the nature of telling the jury the consequences of its verdict.  In addition, the Fifth Circuit Court of Appeals has condemned such appeals to "community conscience" or collective self-interest as improper.  *Westbrook,* 754 F.2d at 1239.  For these reasons alone, it should be excluded.  For many of the same reasons, it is not relevant to any matter in this action.  *See* FED. R. EVID. 402.  Finally, no expert has been designated to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert. Id.*

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**P.** **The fees received and/or charged by Plaintiff's experts for work in lawsuits involving drugs other than Vioxx and reference to them as "paid litigation experts" or the like.**

Defendant is likely to attempt to show that certain of Plaintiff's experts, in particular Dr. Lemuel Moyé, Dr. Connie Pechmann and Dr. Gary Edward Sander, have received substantial sums of money for work in other kinds of cases. While evidence of fees received in this case is arguably relevant to show potential bias, evidence relating to work in other cases involving other drugs has no probative value and is, therefore, irrelevant.

Counsel for Merck has also referred to plaintiff's experts in prior trials as "paid litigation experts" or the like in an apparent attempt to make some distinction between these well-qualified physicians and what he calls "real doctors." Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time. In particular, a holding otherwise would open the trial to all sorts of collateral evidence, including of the vast amounts of research funding certain defense experts had received from pharmaceutical defendants for work with other drugs.

**Q.** **Plaintiff's alleged knowledge of cardiovascular risks associated with the use of Vioxx.** At his deposition, Mr. Mason was questioned extensively about his alleged personal knowledge of the cardiovascular risks associated with the use of Vioxx. It is undisputed that Vioxx was prescribed for and/or provided to Mr. Mason by his nurse practitioner, Karen Olson-Fields. Utah has adopted a learned intermediary doctrine. *See Schaerrer v. Stewart's Plaza Pharm., Inc.*, 79 P.3d 922, 928 (Utah 2003) ("The physician, after having received complete and appropriate warnings from the drug manufacturer, acts as a learned intermediary between the drug manufacturer and the patient

when preparing the drug prescription."). Thus, Mr. Mason's knowledge and understanding, if any, of risks associated with Vioxx and warnings addressed to physicians is irrelevant. Equally important, even if relevant, the microscopic probative value, if any, of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Mason's role, and misleading the jury.

**R.**     **That typographical errors in Dr. Moyé's report indicate that it was cut and pasted from another case.**     Counsel for Merck has argued, without foundation or evidence to support this argument, that typographical errors and printing marks on Dr. Moyé's report indicate that it was cut and pasted from another case. Such "evidence," if any, and argument is highly subjective, and wholly unsupported speculation. Both the fact that there are typographical errors and any conclusions that can allegedly be drawn from them are not relevant to any matter in this action. *See* FED. R. EVID. 402 (only relevant evidence is admissible).

**S.**     **That any Plaintiff's counsel may have advertised for persons injured by the use of Vioxx or in any other manner.**     As this court is perhaps best aware, millions of Vioxx prescriptions were written during the time Vioxx was sold. The fact that some attorneys may utilize their First Amendment right to advertise is irrelevant in this matter and introduction of such matters before the jury would be so prejudicial as to likely cause a mistrial. For these reasons, any such reference should be excluded under Rules 402 and 403.

Under FED. R. EVID. 403, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time, precisely what counsel for Merck intends.

T.   **That Mr. Mason's injury is his own fault or the fault of his prescribing and/or treating physicians and nurse practitioners**.  Defendant has designated no expert to testify on such matters which would require expert support.  *See* FED. R. EVID. 702; 703.  Even if one had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*.  *Id.*

U.   **That FDA approval of Vioxx means that Merck met is standard of care and/or fulfilled its duty to warn as a matter of law.**  In prior trials, counsel for Merck has argued that FDA approval of Vioxx means that Merck met is standard of care and/or fulfilled its duty to warn as a matter of law.  This is not a correct statement of Utah law as Utah has not adopted the FDA standards as its own.  No expert has been designated to make such a statement and, because it would require testimony as to what they law is, such testimony would improperly invade the province of the Court.  Moreover, where, as here, the FDA never knew about or considered the information in question, such a conclusion is not even possible.

Merck is entitled to tell the jury that its drug was approved by the FDA; however, it is not entitled to suggest that such approval has legal significance beyond that which it actually has.  Otherwise, confusion of the issues and misleading the jury, clearly the intent of such arguments, would result.  For these reasons, any such reference, inference or suggestion should be excluded.

The Court previously granted the plaintiff's motion in limine on this subject matter in *Smith v. Merck & Co., Inc.*[1]  In the event this Court does not exclude and/or limine such matters, then Plaintiff requests that a limiting instruction as to its proper use be given upon its admission and each and every

---

[1] *See* Order, *Smith v. Merck & Co., Inc.*, (Sept. 6, 2006) (Rec. Doc. 6721).

time thereafter as such a reference is made pursuant to FED. R. EVID. 105.

    **V.**    <u>**Voir dire questions that discuss the wrong legal standard and contain argument.**</u>

In prior trials, counsel for Merck has asked the following question "Do you believe that a pharmaceutical company has a duty to warn even if there is no scientific proof that the drug causes side effects?"  Voir dire comments or questions that discuss the wrong legal standard or are argumentative and attempt to convince a juror to commit to certain views or conclusions are improper. *See Jewell v. Arctic Enters.,* 801 F.2d 11, 12 (1st Cir. 1986); *Soria v. Johnson,* 207 F.3d 232, 243-44 (5th Cir. 2000).  This jury will not be faced with such a question.  It is, therefore, improper to ask it.

    **W.**    <u>**Jury consultants.**</u>  Defendant may refer to the use, identity or presence of jury consultants assisting Plaintiff.  Such reference is improper because it is irrelevant and potentially unduly prejudicial.

    **X.**    <u>**Settlement, negotiations or the lack thereof.**</u>  Mentioning or referencing any settlement demands, offers, negotiations, or the fact that Merck allegedly does not engage in them is irrelevant and improper. *See* FED. R. EVID. 408.

    **Y.**    <u>**Stipulations.**</u>  Mentioning or referencing the refusal of either party to enter into a stipulation prior to trial or otherwise seeking any stipulation from counsel in the presence of the jury is impermissible and should be excluded.

    **Z.**    <u>**Motions to exclude or in limine.**</u>  The filing of this motion, its contents, and any agreements or proceedings in connection with this motion or reference to any such matter would be irrelevant and unduly prejudicial.

**AA.    Product labeling for other drugs taken by Mr. Mason.**  Defendant may attempt to introduce evidence and make reference to the warning labels accompanying other prescription drugs Mr. Mason took.  Specifically, Mr. Mason testified that he took Celebrex for a brief period in June and July of 2005, two years *after* his heart attack.[2]  Merck questioned Mr. Mason at length to determine whether he was aware of cardiovascular risks associated with Celebrex and even showed him Celebrex's "black box" label.  At the time Mr. Mason took Celebrex, the drug did not contain a "black box" warning.  Therefore, any testimony, evidence or argument that Mr. Mason disregarded the cardiovascular risks associated with Celebrex based on such testimony should be excluded.

Further, Celebrex and other drugs were prescribed for and/or provided to Mr. Mason by his physician.  Utah has adopted a learned intermediary doctrine.  *See Schaerrer v. Stewart's Plaza Pharm., Inc.*, 79 P.3d 922, 928 (Utah 2003).  Thus, Mr. Mason's knowledge and understanding, if any, of risks associated with other drugs and other warnings addressed to physicians is irrelevant. Equally important, even if relevant, the microscopic probative value, if any, of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Mason's role, and misleading the jury.

Each drug is different and a physician makes his or her decision to use a drug based upon a balance of safety, efficacy and need.  Thus, the fact that Mr. Mason may use another drug that includes a warning similar to the one Vioxx should have had is not relevant to his nurse practitioner's decision to allow him to use Vioxx. To allow such evidence to be admitted, evidence which could be highly prejudicial, confusing and misleading, would require that Plaintiff be permitted to show what ameliorative measures Mr. Mason's medical providers, and have taken to address the issues raised by

---

[2] *See* Deposition of Charles Laron Mason, 94:6-15; 231:5-233:10, attached hereto as Exhibit A.

such warnings, what circumstances have changed, what the new drug is needed for and all of the factors that went into the balance reached by the nurse practitioner on the other drug. Such evidence should be excluded under Rule 402 and 403.

Moreover, such evidence may be admitted, if at all, only with the ordinary scientific indicia of reliability under *Daubert*. Merck has made no attempt to do so and has designated no expert on this subject.

**BB.    Plaintiff's Prior Arrests and Work Related Incidents.** During his deposition, Mr. Mason testified that he was arrested on two occasions: (1) assault on a police officer in 1964; and (2) willful violation of a game law (shooting at an elk) in October 2000. Under FED. R. EVID. 404(b) and 608, character evidence is not admissible to show conformity therewith and any extrinsic evidence of bad conduct, other than conviction of a crime within the federal rules, is not admissible. The rule does allow cross examination on specific instances of past conduct to impeach but only on the very limited issue of character for truthfulness or untruthfulness where that matter has been put at issue. Even where criminal conduct is involved, however, to be admissible, it must involve a conviction within the rigid time limits set by FED. R. EVID. 609 and plaintiff must be given written notice of defendant's intention to use any such matter. None has been given. Even then, such evidence is subject to a balancing test and must be excluded if its probative value, if any, is outweighed by its prejudicial effect. In this personal injury case, it undoubtedly would be.

Before his heart attack, Mr. Mason was employed as a manager of collections with Utah First Credit Union. For the above reasons, Merck should not be allowed to present any evidence or testimony regarding any confrontations Mr. Mason may have had with co-workers, clients or debtors, nor should Merck be allowed to present evidence or testimony regarding any grievances or complaints

contained within Mr. Mason's personnel file.  Furthermore, this evidence should be excluded under Federal Rules of Evidence 402 and 403 because such evidence is not relevant and, even if relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**CC.**   **Plaintiff's Viagra Use and Erectile Dysfunction.**  During his deposition, Mr. Mason was asked in detail about his use of the drug Viagra for erectile dysfunction.  Mr. Mason testified that he only took Viagra *only a few times* in 2000 or 2001.[3]  He was not prescribed Vioxx until September 2002.  Mr. Mason did *not* take Viagra while he was taking Vioxx.[4]  None of Merck's experts have suggested that Viagra played any role in Mr. Mason's heart attack, which occurred on July 25, 2003.  Viagra was prescribed to Mr. Mason by his nurse practitioner, Karen Olson-Fields.  Utah has adopted a learned intermediary doctrine.  *See Schaerrer v. Stewart's Plaza Pharm., Inc.*, 79 P.3d 922, 928 (Utah 2003).  Mr. Mason's decision to take drugs prescribed by his nurse practitioner is, therefore, irrelevant.  Even if relevant, the lack of probative value of such evidence is vastly outweighed by the potential for undue prejudice, confusion as to the standard of care and Mr. Mason's role, and misleading the jury.  Such evidence should also be excluded and/or subjected to an order in limine because no expert has been designated and none can testify that Mr. Mason's use of Viagra or his erectile dysfunction caused or contributed to Mr. Mason's injuries.  Even if an expert had been designated, there is no indication that such conclusions and opinions would be scientifically or statistically reliable under *Daubert*.  Thus, such evidence or argument should be excluded.

---

[3] Exhibit A, 142:4-144:19.

[4] *See id.*

**DD.**   **Mr. Mason's Tobacco Use.**   During his deposition, Mr. Mason testified that he last used tobacco in 1976, *thirty years ago*.  Mr. Mason's treating physician has testified that Mr. Mason's history of smoking is not an issue.[5]  In fact, Merck's own cardiology expert, Michael Rothkopf, M.D., states in his report that Mr. Mason's history of smoking "would not be considered a risk factor for the acute event, as he quit sometime in the 1970s."[6]  This "evidence" should be excluded under Federal Rules of Evidence 402 and 403 because such evidence is not relevant and, even if relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

**EE.**   **Testimony of Dr. Douglas Vogeler.**   Dr. Vogeler is Mr. Mason's treating physician. However, Dr. Vogeler did not prescribe Vioxx or Celebrex to Mr. Mason.  Rather, Vioxx and Celebrex were prescribed to Mr. Mason by his nurse practitioner, Karen Olson-Fields.  During his deposition, Dr. Vogeler testified that he would prescribe Celebrex and, if it were still on the market, Vioxx today, including to Mr. Mason.[7]  Dr. Vogeler also testified that he took Vioxx for osteoarthritis and found it to be effective.[8]  In this case, Dr. Vogeler is not the learned intermediary.  As such, his testimony on these subject matters is not relevant and should be excluded under Federal Rules of Evidence 402 and 403.  Even if such testimony were relevant, its probative value (if any) is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.  Therefore, such testimony from Dr. Vogeler, or any other of Mr. Mason's medical providers (with the possible exception of Karen Olson-Fields), should be excluded.

---

[5] *See* Deposition of Douglas Vogeler, M.D., 165:25-166:16, attached hereto as Exhibit B.
[6] *See* Report of Michael Rothkopf, M.D., p. 14.  Dr. Rothkopf's report is attached as an exhibit to Plaintiff's Motion to Exclude the Testimony of Michael Rothkopf, M.D., which is also being filed today, September 27, 2006.  This report is incorporated herein by reference.
[7] *See* Exhibit B, 205:13-206:20; 226:6-11.

## II.
## CONCLUSION

For the foregoing reasons, Plaintiff Mason moves to exclude the preceding matters. In the alternative, Plaintiff Mason seeks a motion in limine requiring that Defendant first approach the bench and ask for a ruling before attempting to introduce or refer to such evidence and/or issues at trial. In the event this Court does not exclude and/or limine such matters, then Plaintiff requests that a limiting instruction as to its proper use be given upon its admission and each and every time thereafter as such a reference is made pursuant to FED. R. EVID. 105.

Date: September 27, 2006

Respectfully submitted,

_signature_

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF
CHARLES LARON MASON**

---

[8] *See id.* at 201:10-202:1.

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of September, 2006.

_A. Wheeler_
Holly M. Wheeler