## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Vioxx** | **MDL DOCKET NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | |
| | Section L |
| THIS DOCUMENT RELATES TO: | |
| Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v. | Mag. Judge Knowles |
| MERCK & CO., INC. | |

---

**PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN LIMINE AND/OR REQUEST FOR LIMITING INSTRUCTIONS REGARDING THE CAUSE OF RETA MASON HURLEY'S DEATH**

**(Plaintiff's Motion in Limine No. 9)**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Before voir dire examination of the jury panel, and out of the hearing of the jury, Plaintiff Charles Laron Mason, by and through his undersigned counsel, respectfully moves the Court for an order excluding all evidence, references, testimony and/or argument regarding the cause of death or medical condition of Plaintiff's sister, Reta Mason Hurley ("Ms. Hurley"). Defendant is likely to attempt to introduce evidence or argument that Mr. Mason's sister died of a heart attack and/or coronary artery atherosclerosis at the age of 55 and, therefore, that Mr. Mason's cardiovascular risk factors include a family history of coronary artery disease. Such testimony and argument is based on hearsay, speculation and improperly obtained and unreliable evidence. Furthermore, even if relevant, the probative value of such "evidence" (if any) is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

I.    **TESTIMONY THAT MS. HURLEY DIED OF A HEART ATTACK IS BASED ON HEARSAY AND SPECULATION.**

During his deposition, Mr. Mason testified that he *assumed* his sister died of a heart attack based on statements made by his nephew (Ms. Hurley's son).[1]  Such testimony is based on speculation and inadmissible hearsay for which there is no exception.  *See* FED.R.EVID. 802 and 803.  Merck had ample opportunity to depose Mr. Mason's nephew but chose not do so.  Mr. Mason's nephew does not appear on Merck's designation of fact witnesses.  Therefore, any testimony, evidence and/or argument concerning the out-of-court statements made by Ms. Hurley's son should be excluded.

II.   **MS. HURLEY'S DEATH CERTIFICATE IS NOT ADMISSIBLE BECAUSE IT WAS OBTAINED IN VIOLATION OF UTAH AND FEDERAL LAW.**

Rather than going through the proper discovery channels, Merck improperly obtained a copy of Ms. Hurley's death certificate.[2]  In Utah, death certificates are issued under the authority of section 26-2-22 of the Utah Code Annotated, which provides that a custodian of records may only issue a certified copy of a record if the applicant has satisfied "a direct, tangible, and legitimate interest."[3]  A "direct, tangible, and legitimate interest" is present only under the following circumstances:

(a)   the request is from the subject, a member of the subject's immediate family, the guardian of the subject, or a designated legal representative;

(b)   the request involves a personal or property right of the subject of the record;

(c)   the request is for official purposes of a state, local, or federal governmental agency;

(d)   the request is for a statistical or medical research program and prior consent has been obtained from the state registrar; or

(e)   the request is a certified copy of an order of a court of record specifying the

---

[1] *See* Deposition of Charles Mason, 68:16-70:10; 228:5-229:4, attached hereto as Exhibit A.
[2] Merck has provided Plaintiff with a copy of the death certificate.  If the Court wishes to review the death certificate, Plaintiff will provide the same with the request that the record be kept under court seal in order to protect the privacy interests of Ms. Hurley and her family.
[3] UTAH CODE ANN. § 26-2-22 (1)(c), attached hereto as Exhibit B.

record to be examined or copied.[4]

Merck and its attorneys do not meet any of these requirements.   Furthermore, the section specifically provides that a death record is not available to the public unless 50 years or more have passed since the date of death.[5]  Ms. Hurley died on June 29, 1988.  Therefore, her death certificate has not yet become public record.  By obtaining the death certificate without proper authorization, Merck violated Utah law.

Recognizing the importance of the privacy of medical records, Congress enacted the Health Insurance Portability and Accountability Act (HIPAA) in 1996.  42 U.S.C.S. 1320-d7 et seq.  The statute establishes standards of privacy with regard to disclosure of medical records. *Id.*  The plain language of HIPAA protects the privacy interests of deceased persons.  45 C.F.R. §164.502(f) (2004) ("Standard: deceased individuals. A covered entity must comply with the requirements of this subpart with respect to the protected health information of a deceased individual").   Although HIPAA's regulations permit the disclosure of non-party medical information (subject to certain limitations) in the course of judicial proceedings in response to an order of the court, § 164.512(e)(1)(i), no such order was obtained in the present case.  Because Ms. Hurley's death certificate contains private information about her medical condition and the cause of death, Merck violated HIPAA by obtaining her death certificate without first securing an order from the Court.

When confronted about this violation, Merck's attorneys explained that their local counsel's legal assistant obtained the death certificate by representing to a government website that she was an attorney obtaining the certificate for purposes of litigation.  Regardless of Merck's professed "innocent and unintentional" violation of Utah law, the death certificate was

---

[4] *See id*. at §26-2-22 (2)(a)-(e).
[5] *See id*. at §26-2-22(4)(b).

obtained illegally without the consent or authorization of the Hurley family. Merck's acceptance of responsibility does not pave the way for its use of this private document in litigation involving Ms. Hurley's brother. Plaintiff asks that the Court preclude Merck's use of the death certificate, or any argument derived therefrom, at trial or for any other purpose. Plaintiff also requests that the Court order Merck to destroy the certificate copy and any additional copies of the death certificate.

### III.   MERCK CANNOT PRESENT ANY RELIABLE EVIDENCE THAT MS. HURLEY DIED OF A HEART ATTACK OF SUFFERED FROM CORONARY ARTERY ATHEROSCLEROSIS.

Even if the Court overlooks Merck's violation of Utah law and HIPPA, any conclusion reached by Merck or its experts that Ms. Hurley died of a sudden heart attack or suffered from coronary artery atherosclerosis would be based scientifically unreliable data. The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both reliable and relevant. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998).[6]

Ms. Hurley's death certificate provides that the immediate cause of death was coronary artery atherosclerosis. **The certificate also lists phenylpropanolamine (PPA) intoxication as another significant condition contributing to death**. As the Court is likely aware, PPA is an ingredient used in prescription and over-the-counter (OTC) drug products as a nasal decongestant to relieve stuffy nose or sinus congestion and in OTC weight control drug products to control appetite. **PPA has been shown to increase the risk of hemorrhagic stroke and pulmonary embolism**. Due to the ambiguity of the death certificate and the uncertainty of the actual cause of death, Merck cannot present conclusive evidence that Ms. Hurley died as the

---

[6] For brevity's sake, Plaintiff has not reiterated the standard set for by Federal Rule of Evidence 702 and *Daubert*. However, the legal standard for the admission of expert testimony in federal court is set forth at pages 4-6 of the Memorandum in Support of the Motion To Exclude Argument Or Opinion Testimony That An Increased Risk Of Heart Attack Exists Only After 18 Months Of Vioxx Use, which is incorporated herein by reference.

result of a heart attack or coronary artery atherosclerosis. Given the importance of plaintiffs' risk factors in these Vioxx trials, such speculative and unreliable evidence simply should not be allowed.

The Fifth Circuit Court of Appeals addressed this very issue in a case involving a plaintiff who sued a defendant distributor, alleging that her late husband's stroke and subsequent death were caused by the distributor's ventilator used on the decedent following his cardiac bypass surgery. *Anderson v. Siemens Corp.*, 335 F.3d 466 (5th Cir. 2003). The decedent died two years after his stroke and the death certificate listed pneumonia as the immediate cause of death and the stroke as an underlying cause. *Id.* at 469. Over the distributor's hearsay objection, the district court admitted the decedent's death certificate, which the plaintiff relied on to show the cause of death. *Id.* at 471. The jury returned a verdict for the plaintiff and the distributor appealed. On appeal, the distributor argued that there was no evidence to support the jury's finding that decedent's 1996 stroke (caused by the ventilator's design defect) was a producing cause of his death in 1998. *Id.*

First, the Fifth Circuit concluded that district court erroneously admitted the decedent's death certificate because the certificate was not properly certified by the state registrar. *Id.* at 472-473. The court then considered whether, even if properly certified by the state registrar, the statements in the death certificate would have been admissible. *Id.* at 473-474. The Court declared, "Whether such statements are admissible would depend on how they are characterized: as facts, or as opinions. If such statements can be fairly characterized as facts, then they are admissible as prima facie evidence of cause of death." *Id.* at n.16 (citations omitted).

In this case, Merck will undoubtedly argue that the death certificate should be admitted because the statements contained therein constitute facts – not opinions – and, therefore, the

death certificate constitutes prima facie evidence of Ms. Hurley's cause of death. The problem with this argument is that Ms. Hurley's death certificate does not provide conclusive evidence of cause of death, and does not satisfy the reasonable medical probability standard for establishing a causal link. The death certificate does <u>not</u> read that Ms. Hurley's death was caused by a myocardial infarction or a coronary thrombosis. *See Aetna Life Ins. Co. v. Kegley,* 389 F.2d 348, 355 (5th Cir. 1967) (holding that a death certificate's identification of the cause of death as a "coronary thrombosis" is prima facie proof that coronary thrombosis was the cause of death). Rather, the death certificate provides that the immediate cause of death was coronary artery atherosclerosis, but PPA intoxication was a condition contributing to death. As such, any proffered testimony or evidence that Ms. Hurley's death was caused by a heart attack or stroke due to coronary artery atherosclerosis, where PPA, a drug known to cause sudden death, was obviously also a factor, cannot be considered "fact" or prima facie evidence.

Given the ambiguity of Ms. Hurley's death certificate, any testimony on the cause of death will necessarily require expert opinion testimony. In *Anderson,* the Fifth Circuit emphasized that if statements on cause of death are better characterized as opinions (as in this case), then they may not be admissible. *Id.* at n.16 (citing *Texas Employers' Ins. Assoc. v. Gregory,* 534 S.W.2d 166, 168 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ)(determining that the cause of death portion of a death certificate is inadmissible because the "notation is not a 'fact'. . . but is, rather, an opinion of the justice of the peace"); *Armstrong v. Employers Cas. Co.,* 357 S.W.2d 168, 169-72 (Tex. Civ. App.—Waco 1962, no writ) (holding that a statement in a death certificate signed by Justice of the Peace, after inquest, that the death was accidental was not admissible ***where the cause of death was controverted***)). Merck has already disclosed such an expert opinion through the report of one of its cardiologists, Dr.

Michael Rothkopf, who writes that "Mr. Mason's sister died in her early 50's of an *apparent* heart attack, and his family history is therefore considered a risk factor."[7]  Dr. Rothkopf does not divulge the basis of this opinion, though Ms. Hurley's death certificate is listed under the "Materials Reviewed" section of the report.[8]

 During his deposition, Dr. Rothkopf testified as follows:

> Q. And then you indicate that a positive family history.
> A. Right.
> Q. So what have you seen in connection with Mr. Mason's familiar history that would suggest to you that he has a -- that's a risk factor for coronary artery disease for him?
> A. Well, I've seen a death certificate of his sister, which apparently she was 55 and died a sudden death.[9]
>
>      * * *
>
> Q. All right.  And what was significant to you from the death certificate?
> A. Just that the patient died a sudden -- sudden death is my understanding.
> Q. Okay.  **And did it indicate that the patient had phenylpropanolamine toxicity**?
> A. **I don't recall that.**
> Q. **That would be important, wouldn't it?**
> A. **Yes**.
> Q. **And why would that be important?**
> A. **Because that has been associated in the literature with sudden death.**[10]

Thus, even though Dr. Rothkopf has opined that Mr. Mason's risk factors include family history of coronary artery disease, Dr. Rothkopf was not even aware that Ms. Hurley's death certificate suggested that PPA was a contributing cause of her death.   Yet, Dr. Rothkopf clearly acknowledges that PPA toxicity has been associated with sudden death, which he believes occurred with Ms. Hurley.  Despite this testimony, Dr. Rothkopf still opines that Ms. Hurley's

---

[7] *See* Expert Report of Michael Rothkopf, M.D., p. 14 (emphasis added).  In conjunction with this motion, Plaintiff has filed a Motion to Exclude the Testimony of Michael Rothkopf, M.D.  His report is attached as an exhibit to that motion and is incorporated herein by reference.

[8] *See id.*

[9] Deposition of Michael Rothkopf, M.D., 137:21-138:7, attached hereto as Exhibit C.

[10] *Id.* at 139:9-24.

sudden death *suggests* that she suffered from coronary artery disease.[11]  **Amazingly, Dr. Rothkopf clings to this opinion even though he has *not* seen Ms. Hurley's autopsy, does *not* know whether she actually had coronary artery disease, and has seen *no objective evidence* to suggest that she had coronary artery disease.**[12]

As Ms. Hurley's death certificate suggests that she had ingested a significant amount of PPA, there is a certainly the possibility that Ms. Hurley suffered a stroke or pulmonary embolism (events associated with PPA) rather than a heart attack.  The Fifth Circuit has clearly recognized the problems associated with such uncertainty.  In *Anderson*, the Fifth Circuit stated as follows:

> The death certificate was, in essence, the only evidence linking Decedent's 1996 stroke to his death in 1998.  Petitioner failed to present the testimony of the certifying physician - or any other expert medical witness - to support the death certificate's conclusion that the immediate cause of Decedent's death, pneumonia, was "due to" (or "a likely consequence of") his 1996 stroke. Thus, insofar as Petitioner's suit against Siemens sought to recover damages for Decedent's death, the critical lynchpin holding together Petitioner's case was the erroneously-admitted death certificate's unsupported conclusion on the cause of death. **Even assuming, arguendo, that the death certificate's statements on cause of death were admissible, we seriously doubt that such statements, unsupported by expert testimony, could have provided sufficient evidentiary support for the jury's finding that Decedent's 1996 stroke (listed on the death certificate as the "underlying" cause of death) was the producing cause of his death from pneumonia (the "immediate" cause of death) two years later.**

*Id.* at 473-475 (citations omitted).

Merck cannot present the testimony of the certifying physician, or any other expert medical witness, to support the death certificate's conclusion that the cause of Ms. Hurley's death was coronary artery atherosclerosis, as such conclusion is wholly without support, particularly when PPA intoxication is listed in the death certificate as contributing to her death.  Even assuming that the death certificate's statements on cause of death were admissible, such

---

[11] Exhibit C, 140:1-141:1.
[12] *See id.* at 141:2-12.

statements, unsupported by expert testimony, cannot survive the rigors of Rule 702 and *Daubert*. Therefore, Plaintiff requests that the Court enter an order declaring Ms. Hurley's death certificate inadmissible and excluding all testimony, argument or discussion of Ms. Hurley's medical condition or cause of death at trial or for any other purpose.

IV.     THE PROBATIVE VALUE OF EVIDENCE THAT MR. MASON'S SISTER DIED OF A HEART ATTACK AT THE AGE OF 55 IS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT.

As already discussed, the cause of Ms. Hurley's death is unknown and contested. In light of the uncertainty, such evidence can hardly be considered relevant. However, even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time. FED. R. EVID. 403. The diagnosis of coronary artery atherosclerosis and PPA intoxication must be subjected to vigorous cross examination in order for it to be meaningful to a jury. Such a diagnosis is something that has to be examined as to method of diagnosis, technique of diagnosis and certainty of diagnosis. *See Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 786 (3d Cir. 1996) (under Rule 403, court required under that references to malignant mesothelioma be deleted from death certificate because the authors of the documents did not testify about the bases of their diagnoses and because "the diagnosis of mesothelioma is a diagnosis that must be subjected to cross-examination in order for it to be meaningful to a jury."). The author(s) of Ms. Hurley's death certificate will not be testifying about the basis of the diagnosis. As such, they will not be subjected to cross examination. Clearly this will place Mr. Mason at an unfair advantage. As such, any relevancy of this evidence is outweighed by the certain prejudice that will be suffered by Mr. Mason.

Further, admission of Ms. Hurley's death certificate will necessarily require Plaintiff to

delve into PPA issues in order to disprove any theory offered by Merck that Ms. Hurley died of a heart attack and/or coronary artery atherosclerosis.   This will cause undue delay and jury confusion, particularly in light of the already complex medical and scientific issues associated with Vioxx.

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order excluding any evidence, argument, testimony or discussion regarding the medical condition or cause of death of Mr. Mason's sister, Reta Mason Hurley.

Date:  September 27, 2006                   Respectfully submitted,

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF
CHARLES LARON MASON**

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of September, 2006.

Holly M. Wheeler