# Exhibit C

[1:1] – [1:24]             9/20/06    Rothkopf, Michael M.D. (Mason)

Page 1
1  UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF LOUISIANA
2
   IN RE: VIOXX          : MDL DOCKET NO.
3  LITIGATION PRODUCTS   : 1657
   LIABILITY LITIGATION  : SECTION L
4                        :
   THIS DOCUMENT RELATES : JUDGE FALLON
5  TO                    :
   CHARLES LARON MASON   : MAGISTRATE JUDGE
6      V.                : KNOWLES
   MERCK & CO., INC.     :
7
8
9            - - -
10        September 20th, 2006
11           - - -
12
13
14      Oral deposition of MICHAEL
15  ROTHKOPF, M.D., held at the offices of the
16  witness, 1320 Greenway, Suite 200, Irving,
17  Texas, commencing at 1:58 p.m., on the above
18  date, before Daniel J. Skur, Certified
19  Shorthand Reporter and Notary Public.
20           - - -
21
        GOLKOW LITIGATION TECHNOLOGIES
22           Four Penn Center
        1600 John F. Kennedy Boulevard
23            Suite 1210
        Philadelphia, Pennsylvania 19103
24            877.DEPS.USA

| | |
|---|---|
| [137:21] – [141:12] | 9/20/06   Rothkopf, Michael M.D. (Mason) |

Page 137
21  Q.   Okay.  And then you indicate
22  that a positive family history.
23     A.   Right.
24     Q.   So what have you seen in

Page 138
1  connection with Mr. Mason's familiar history
2  that would suggest to you that he has a --
3  that's a risk factor for coronary artery
4  disease for him?
5     A.   Well, I've seen a death
6  certificate of his sister, which apparently
7  she was 55 and died a sudden death.
8     Q.   And whenever you practice
9  medicine, do you try to follow the HIPPA
10  laws?
11     A.   Yes.
12     Q.   Okay.  Did you know that was
13  obtained without a HIPPA authorization?
14         MR. KRUMHOLZ:  Objection, form.
15     A.   No.
16     Q.   (BY MR. NABERS)  You would
17  agree that wouldn't be a good thing, right?
18         MR. KRUMHOLZ:  Objection, form.
19     Q.   (BY MR. NABERS)  If it was
20  obtained in violation of the HIPPA laws?
21         MR. KRUMHOLZ:  Same objection.
22     A.   Well, I mean, if you really
23  think that that was the case, then you should
24  go to the authorities and --

Page 139
1     Q.   (BY MR. NABERS)  I have.
2     A.   But I'm not going to, you know,
3  speculate on that one way or the other
4  because I really don't know anything about it
5  except --
6     Q.   Okay.
7     A.   -- that I've seen the death
8  certificate.
9     Q.   All right.  And what was
10  significant to you from the death

11  certificate?
12     A.   Just that the patient died a
13  sudden -- sudden death is my understanding.
14     Q.   Okay.  And did it indicate that
15  the patient had phenylpropanolamine toxicity?
16     A.   I don't recall that.
17     Q.   That would be important,
18  wouldn't it?
19     A.   Yes.
20     Q.   And why would that be
21  important?
22     A.   Because that has been
23  associated in the literature with sudden
24  death.

Page 140
1      Q.   Okay.  And wouldn't that change
2   your opinion on whether or not he had a
3   family history that was a risk factor for
4   coronary artery disease if you were aware his
5   sister died as a result of
6   phenylpropanolamine toxicity?
7           MR. KRUMHOLZ:  Objection, form.
8      A.   Probably not, because, again,
9   in medical probabilities, statistically, if
10  you have sudden death, by far and away, it's
11  because you have underlying undiagnosed
12  coronary artery disease whether you're a male
13  or female, and the mechanism of sudden death
14  with phenylpropanolamine toxicity could
15  certainly be an arrhythmia because the
16  patient had underlying coronary artery
17  disease, and, basically, the physiologic
18  effects of the phenylpropanolamine basically
19  exposed the patient to the risk of sudden
20  death because you had coronary disease.
21          So I think, again, in medical
22  probability you would have to say that the
23  patient probably -- you know, it's reasonable
24  to say that she died and had coronary artery

Page 141
1   disease.
2      Q.   You've never seen an autopsy.
3      A.   No.
4      Q.   You don't know whether she had

```
 5  coronary artery disease or not, right?
 6          MR. KRUMHOLZ:  Objection, form.
 7     A.   That's correct.
 8     Q.   (BY MR. NABERS)  Never seen any
 9  objective evidence to suggest to you that she
10  had coronary artery disease.
11          MR. KRUMHOLZ:  Objection, form.
12     A.   That's correct.
```