**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In Re: Vioxx**<br>**PRODUCTS LIABILITY LITIGATION** | **MDL DOCKET NO. 1657** |
| THIS DOCUMENT RELATES TO:<br>Case No. 2:06cv810 | Section L |
| CHARLES LARON MASON v.<br>MERCK & CO., INC. | Judge Fallon<br>Mag. Judge Knowles |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DR. MICHAEL ROTHKOPF**

**(EXPERT CHALLENGE NO. 6)**

---

**TO THE HONORABLE JUDGE ELDON FALLON:**

Merck & Co., Inc. ("Merck") has designated Michael Rothkopf, M.D. ("Dr. Rothkopf") as a cardiology expert. As Merck has emphasized to this Court time and time again, a causation expert who has little to no experience with Vioxx, or diagnosing Vioxx as the cause of a cardiac event, or conducting clinical research related to Vioxx, is not qualified to opine about whether Vioxx can or did cause a particular cardiac event. The Court reached this conclusion with respect to plaintiffs' experts, Dr. Thomas Baldwin and Dr. Michael Graham in *Plunkett v. Merck & Co., Inc.* (Dec. 3, 2005 *Plunkett v. Merck & Co., Inc.* Order & Reasons, p. 6; Feb. 2, 2006 *Plunkett v. Merck & Co., Inc.* Order & Reasons, pp. 10-11).

Dr. Rothkopf is not qualified to opine on either general or specific causation because he has virtually no experience with Vioxx. Further, it is evident that Dr. Rothkopf failed to utilize proper methodology in formulating many of opinions. Therefore, the Court should preclude Dr. Rothkopf from offering Vioxx-related testimony.

# I.
# LEGAL STANDARD

The legal standard for the admission of expert testimony in federal court is set forth at pages 4-6 of the Memorandum in Support of the Motion To Exclude Argument Or Opinion Testimony That An Increased Risk Of Heart Attack Exists Only After 18 Months Of Vioxx Use, filed on September 19, 2006 and incorporated herein by reference.

# II.
# ARGUMENT

Dr. Rothkopf is a general cardiologist, but his professional training does not automatically render him qualified to opine that Vioxx was *not* a factor in Mr. Mason's heart attack.[1] Nevertheless, he opines that "there is no evidence to support the notion that Mr. Mason suffered 'harm' from rofecoxib therapy."[2] Yet he has not undertaken any independent study or analysis of Vioxx which would provide reliable scientific basis for such testimony. Dr. Rothkopf's general and specific causation opinions are merely speculation, as they rely on unproven assumptions and on a selected subset of scientific literature that does not support his opinions.

## A. DR. ROTHKOPF LACKS THE NECESSARY SKILL, TRAINING, EXPERIENCE AND EDUCATION TO OPINE ON GENERAL CAUSATION.

Dr. Rothkopf's experience with Vioxx is practically non-existent. Yet he considers himself to be an expert on Vioxx.[3] However, his lack of qualifications and expertise in this area is apparent:

- Dr. Rothkopf has never received anything from Merck on Vioxx.[4]
- Dr. Rothkopf has never lectured on this topic;[5]

---

[1] *See* Deposition of Michael Rothkopf, M.D., 108:13-16, attached hereto as Exhibit B.
[2] Expert Report of Michael Rothkopf, M.D., p. 17, attached hereto as Exhibit A.
[3] *See* Exhibit B, 98:9-13.
[4] *See id.* at 23:6-11.

- Dr. Rothkopf has never given any presentations on Vioxx.[6]
- Dr. Rothkopf has never published on the topic of Vioxx or myocardial infarction;[7]
- Dr. Rothkopf has never been involved in any clinical studies that looked at Vioxx or risk-benefit analysis of Vioxx;[8]
- In fact, Dr. Rothkopf has never conducted any clinical investigation or studies of *any* drug for a pharmaceutical company;[9]
- Dr. Rothkopf has never conducted any bench research on Vioxx;[10]
- Dr. Rothkopf has never discussed Vioxx with anyone from Merck;[11]
- Dr. Rothkopf has never attended any conferences or medical education courses on Vioxx;[12]
- Dr. Rothkopf was not retained by Merck for Vioxx litigations until February or March of this year;[13]
- Dr. Rothkopf has never spoken with any other Merck-retained experts about Vioxx;[14]
- Dr. Rothkopf has not reviewed any of the in-house pharmacologic studies conducted by Merck on Vioxx, including animal studies;[15]
- Dr. Rothkopf has not reviewed any of the cardiovascular adverse drug events with regard to Vioxx;[16]
- Dr. Rothkopf has not reviewed any of the FDA's DDMAC letters;[17]
- Dr. Rothkopf has not reviewed any of the Dear Doctor letters on Vioxx;[18]

---

[5] *See* Exhibit B, 98:18-22.
[6] *See id.* at 22:19-21.
[7] *See id.* at 98:22-99:1.
[8] *See id.* at 99:5-8.
[9] *See id.* at 85:2-5; 87:8-11.
[10] *See id.* at 99:9-11.
[11] *See id.* at 99:12-19; 99:20-100:10.
[12] *See id.* at 100:11-14.
[13] *See id.* at 47:7-48:5.
[14] *See id.* at 100:15-18.
[15] *See id.* at 104:21-105:8; 108:1-3.
[16] *See id.* at 106:22-107:1.
[17] *See id.* at 107:2-107:6.
[18] *See id.* at 107:11-13.

- Dr. Rothkopf has not reviewed any of the physician information request letters on Vioxx;[19]

Dr. Rothkopf concedes that he has no experience with Vioxx other than his review of the medical literature.[20]  **Furthermore, Dr. Rothkopf has absolutely no experience with diagnosing Vioxx as the cause of a cardiac event.**[21]  Therefore, Dr. Rothkopf should not be permitted to provide opinion testimony on general causation related to Vioxx and cardiovascular events.

Likewise, Dr. Rothkopf's opinion testimony on specific causation is equally without basis or support.  Dr. Rothkopf opines that "the prevailing pathologic process that led to [Mr. Mason's] acute event would be that of underlying, progressive coronary artery disease leading to atherosclerotic plaque rupture with non ST elevation myocardial infarction."[22]  During his deposition, Dr. Rothkopf testified that his opinion that Mr. Mason had coronary artery disease before taking Vioxx is based solely on his comparison between two stress tests and the "natural history of coronary artery disease."[23]  Dr. Rothkopf admits he did not even consider Mr. Mason's 10-month use of Vioxx in any differential diagnosis.[24] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *Propulsid Prods. Liab. Litig.*, 261 F.Supp.2d 603, 618 (E.D. La. 2003); (*see also* Nov. 18, 2005 *Plunkett v. Merck & Co., Inc.* Order & Reasons at 6 [in assessing admissibility of expert testimony, trial courts should consider whether the expert has adequately accounted for alternative explanations]).  Therefore, Dr. Rothkopf's opinion regarding specific causation is scientifically unreliable and should be excluded.

---

[19] *See* Exhibit B, 107:14-24.
[20] *See id.* at 102:5-11.
[21] *See id.* at 167:9-168:17.
[22] Exhibit A, p. 16.
[23] Exhibit B, 155:15-161:24.
[24] *See id.* at 174:24-176:6.

Additionally, Dr. Rothkopf offers opinions on what Mr. Mason can and cannot do today as far as physical activity goes. For example, he states in his report that Mr. Mason's heart condition does not prevent him from playing with his grandchildren, hiking at altitude or playing golf.[25] He blames Mr. Mason's inability to hunt elk in the Utah mountains on his "chronic back problems" and "recently diagnosed knee problem."[26] Dr. Rothkopf has absolutely no basis for these "opinions." During his deposition, he acknowledged that only Mr. Mason can be the judge of what he can and cannot do.[27] Therefore, any opinion testimony from Dr. Rothkopf about Mr. Mason's physical restrictions should be excluded.

## B. DR. ROTHKOPF MAY NOT OFFER TESTIMONY REGARDING THE MEDICAL CONDITION OR CAUSE OF DEATH OF PLAINTIFF'S SISTER, RETA MASON HURLEY.[28]

As the party seeking to introduce the expert testimony, Merck bears the burden of demonstrating that the testimony is both reliable and relevant. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). Dr. Rothkopf states in his report that "Mr. Mason's sister died in her early 50's of an *apparent* heart attack, and his family history is therefore considered a risk factor."[29] Dr. Rothkopf does not divulge the basis of this opinion though Reta Mason Hurley's death certificate is listed under the "Materials Reviewed" section of Dr. Rothkopf's report.[30] Dr. Rothkopf testified as follows:

> Q. Okay. And then you indicate that a positive family history.
> A. Right.
> Q. So what have you seen in connection with Mr. Mason's familiar history that would suggest to you that he has a -- that's a risk factor for coronary artery disease for him?

---

[25] *See* Exhibit A, p. 17.
[26] *Id.*
[27] *See* Exhibit B, 376:14-23.
[28] In conjunction with this Motion, Plaintiff has filed a Motion To Exclude Or, In The Alternative, Motion In Limine And/Or Request For Limiting Instructions Regarding The Cause Of Reta Mason Hurley's Death, which Plaintiff incorporates fully herein.
[29] *See* Exhibit A, p. 14 (emphasis added).
[30] *See id.*

A. Well, I've seen a death certificate of his sister, which apparently she was 55 and died a sudden death.[31]

* * *

Q. All right. And what was significant to you from the death certificate?
A. Just that the patient died a sudden -- sudden death is my understanding.
Q. Okay. **And did it indicate that the patient had phenylpropanolamine toxicity**?
A. **I don't recall that.**
Q. **That would be important, wouldn't it?**
A. **Yes.**
Q. **And why would that be important?**
A. **Because that has been associated in the literature with sudden death.**[32]

Dr. Rothkopf still opines that Ms. Hurley's sudden death *suggests* that she suffered from coronary artery disease.[33] **Amazingly, Dr. Rothkopf clings to this opinion even though he has *not* seen Ms. Hurley's autopsy, does *not* know whether she actually had coronary artery disease, and has seen *no objective evidence* to suggest that she had coronary artery disease.**[34] Dr. Rothkopf has not conducted any research to verify his opinion. Clearly, Dr. Rothkopf has not utilized any sort of methodology in reaching his conclusion, which is clearly based on pure speculation, as well as on a death certificate that was obtained in violation of Utah law and HIPAA, and the admissibility of which is in serious question. As such, Dr. Rothkopf should be precluded from offering any testimony regarding the medical condition or cause of death of Ms. Hurley.

## C. DR. ROTHKOPF MAY NOT OFFER OPINIONS REGARDING "CLASS EFFECT" OF NSAIDS.

Dr. Rothkopf testified that if there is an increased cardiovascular risk with the use of

[31] Exhibit B, 137:21-138:7.
[32] *Id.* at 139:9-24.
[33] *See id.* at 140:1-141:1.
[34] *See id.* at 141:2-12.

NSAIDs, the risk applies to all NSAIDs.[35] The available scientific data and analyses do not support Dr. Rothkopf's opinion. This issue is addressed in Plaintiff's Motion to Exclude Opinion Testimony that Vioxx is the same as All NSAIDs Regarding Cardiotoxic Effects, which Plaintiff incorporates herein by reference. In that motion, two recently published peer-reviewed opinions which dismiss the "class effect" theory are described at length.[36] The Court should preclude Dr. Rothkopf from opining that there is a class effect of all NSAIDs.

### D. Dr. Rothkopf May Not Offer Opinions Regarding Cardiovascular Risk Based on Duration of Vioxx Use.

Dr. Rothkopf opines as follows: "The APPROVe trial . . . did not show a significant difference in the incidence of myocardial infarction at approximately 10 months of use."[37] As discussed above, Dr. Rothkopf is not qualified to render such an opinion. Further, the available scientific data and analyses do not support this opinion. This issue is addressed in Plaintiff's Motion To Exclude Argument Or Opinion Testimony To The Effect That An Increased Risk Of Heart Attack Exists Only After 18 Months Of Vioxx Use, which Plaintiff incorporates herein by reference. The Court should preclude Dr. Rothkopf from offering the opinion that the risk cardiovascular risks does not present at 10 months of Vioxx use.

## III. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court grant its Motion to Exclude the Testimony of Dr. Michael Rothkopf.

---

[35] *See* Exhibit B, 220:2-9; 236:22-237:14.

[36] Zhang JJ, Ding EL, Song Y. *Adverse Effects of Cyclooxygenase 2 Inhibitors on Renal and Arrhythmia Events: Meta-analysis of Randomized Trials*, JAMA 2006; 296:13, and McGettigan, P, Henry, D, *Cardiovascular Risks and Inhibition of Cyclooxygenase: A Systematic Review of the Observational Studies of Selective and Nonselective Inhibitors of Cyclooxygenase 2*, JAMA 2006;296:13.

[37] Exhibit A, p. 16.

Date: September 29, 2006

Respectfully submitted,

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF CHARLES LARON MASON**

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA 70013<br>PH: (504) 581-4892<br>FAX: (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA 70013<br>PH: (504) 581-4892<br>FAX: (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandun has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 29th day of September, 2006.

Holly M. Wheeler