UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| CHARLES L. MASON, | * | MAGISTRATE JUDGE<br>KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION TO EXCLUDE ARGUMENT OR OPINION TESTIMONY THAT AN INCREASED RISK OF HEART ATTACK EXISTS ONLY AFTER 18 MONTHS OF VIOXX USE**

**(EXPERT CHALLENGE NO. 1)**

Plaintiff seeks an order precluding Merck "from arguing or offering testimony to the effect that an increased risk of heart attack exists only after 18 months of Vioxx use," claiming that such argument or testimony should be excluded under Federal Rule of Evidence 702.  (Pl.'s Mot. at 1.)  Plaintiff admits that this Court has denied nearly identical motions on this subject brought by previous plaintiffs.  He claims, however, that this motion is different because he "does not attack the conclusions of Merck's 18-month hypothesis; rather, plaintiff attacks the *methodology* upon which that hypothesis is based."  (Pl.'s Mot. at 1-2.)  Plaintiff is wrong.  He

introduces no new argument and, like previous plaintiffs, simply attacks the sound scientific conclusions of experts and improperly seeks to shift the burden of proof of causation to Merck. The Court should thus deny plaintiffs' motion, for two reasons:

First, despite his protestations to the contrary, plaintiff seeks through his motion to shift the burden of proof on causation to Merck. Of course, Merck does not plan to introduce affirmative evidence that Vioxx® causes heart attacks after 18 months of use. *It is plaintiff's burden to prove that Vioxx can cause heart attacks with less than eleven months of use, and Merck is entitled to point out that no reliable scientific evidence supports that theory.*

Second, Merck is entitled to point out that the APPROVe study does not show any increased cardiovascular risk until after 18 months of use. As this Court knows, after 18 months of use, nine patients on the Vioxx arm of APPROVe suffered heart attacks, compared to eight on placebo. That is not a statistically significant difference. After 18 months, the heart attack rates began to diverge, and the difference became statistically significant after 30 months. APPROVe is the first and only placebo-controlled clinical trial to show a statistically significant association between Vioxx use and heart attacks.

Plaintiff's criticisms of Merck's interpretation of the APPROVe study have all been considered by this Court in connection with its denial of earlier iterations of this motion. They are without merit. As discussed below, the Court should once again deny this motion.

**I.   PLAINTIFF BEARS THE BURDEN OF PROOF ON CAUSATION.**

Plaintiff's arguments impermissibly seek to shift the burden of proof to Merck. Plaintiff even criticizes Merck for not providing a "biologically plausible" explanation of the mechanism by which by which Vioxx supposedly becomes harmful after 18 months. (Pl.'s Mot. at 9.) It is plaintiff's burden, however, to prove that Vioxx can heart attacks after less than eleven months

2

of use. *Fitz v. Synthes*, 990 P.2d 391, 393 (Utah 1999) (plaintiff bears burden to provide medical expert testimony establishing defendant's product caused the alleged injury); *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005) (plaintiff's evidence must answer the "general question of whether the drug or chemical can cause the harm plaintiff alleges"); *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996) (plaintiffs in pharmaceutical cases must present evidence they were "exposed to levels of that agent that are known to cause the kind of harm" they allegedly suffered); RESTATEMENT (THIRD) OF TORTS:  Liability for Physical Harm § 28 cmt. c (Proposed Final Draft No. 1, April 6, 2005).

Moreover, because "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect," *McClain*, 401 F.3d at 1242, a plaintiff cannot establish general causation merely by showing "that a certain chemical agent sometimes causes the kind of harm that he or she is complaining of."  *Wright*, 91 F.3d at 1107. Instead, the plaintiff must present evidence that he or she was "exposed to levels of that agent that are known to cause the kind of harm" that he or she allegedly suffered.  *Id.*; *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002) ("[T]he appropriate understanding of generic causation is . . . whether exposure to a substance for which a defendant is responsible, such as radiation at the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition in the general population.").

Here, Mr. Mason claims to have used 25 mg Vioxx for less than eleven months.  The threshold issue to be decided is whether plaintiff's short-term use of Vioxx is capable of causing the type of injury he allegedly suffered – a heart attack.  Given the actions of plaintiffs in prior Vioxx cases, Merck anticipates that plaintiff will argue that one or two observational studies with extremely low relative risks – which are not scientifically reliable – indicate that short-term

Vioxx use might be capable of causing thrombotic cardiovascular events. Should plaintiff do so, Merck would be entitled to demonstrate the shortcomings of the observational studies on which plaintiff relies and to explain how the results of those studies are inconsistent with randomized clinical trial data from APPROVe and other studies. The absence of consistent findings in epidemiologic studies "is a strong indication" that the existing research "does not support a causal interpretation," and Merck must not be prevented from showing plaintiff's arguments are inconsistent with the clinical data. *See* Michael J. Saks et al., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE ("Reference Manual on Scientific Evidence") at 531 (2d ed. 2005-2006). After all, assessing causation requires consideration of *all* the available epidemiologic data. *Id.* at 480 ("[I]t should be emphasized that *an association is not equivalent to causation*. An association identified in an epidemiological study may or may not be causal. Assessing whether an association is causal requires an understanding of the strengths and weaknesses of the study's design and implementation, as well as a judgment about how the study findings fit with other scientific knowledge.").

Thus, to the extent plaintiff seeks to present only selected scientific data to the jury, Merck is entitled to present expert testimony on the results of any relevant studies, including the lack of short-term risk shown in APPROVe, so that the Court or jury can decide whether the *totality* of scientific evidence supports plaintiffs' theory that their limited Vioxx use is capable of causing heart attacks.

## II. THERE IS NO RELIABLE SCIENTIFIC EVIDENCE INDICATING AN INCREASED CARDIOVASCULAR RISK IN PATIENTS USING VIOXX FOR LESS THAN 18 MONTHS.

As discussed above, it is plaintiff's burden to prove causation. Contrary to plaintiff's arguments, it is his theory – that less than eleven months use of Vioxx at the 25 mg dose

increases cardiovascular risk – and not Merck's position that is entirely unsupported. VIGOR, as the Court well knows, compared patients taking 50 mg of Vioxx (twice the dose taken by Mr. Mason) with patients taking high doses of Naproxen. The significance of those results has been, and continues to be, debated in court and in the scientific community. APPROVe is the only placebo-controlled study to show an association between use of Vioxx at the 25-mg dose and an increased rate of heart attacks, but as discussed above, the difference did not become statistically significant until well after 18 months of use. Accordingly, the Court should deny plaintiff's request to preclude Merck from demonstrating that there is no evidence showing an increased risk at plaintiff's dose and duration of use.

### III. THE APPROVE DURATIONAL ANALYSIS IS RELIABLE SCIENTIFIC EVIDENCE THAT THERE IS NO INCREASED RISK WITH FEWER THAN 18 MONTHS OF USE.

The APPROVe study results, published in 2005, showed that, during the first 18 months of use, individuals taking Vioxx encountered nearly the same number of cardiovascular thrombotic events as individuals taking a placebo.[1] During the first 18 months of the study, there were 22 confirmed on-drug thrombotic events on Vioxx versus 20 on placebo, a statistically insignificant difference.[2] During the same 18 month period, there were nine heart attacks among patients on Vioxx and eight for patients on placebo, also not a statistically significant difference. (*See* APPROVe Trial Abbreviated Clinical Study Report, excerpt attached hereto as Ex. A.) After 18 months of continuous use the number of events among Vioxx users began to be greater

---

[1] *See* Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, 352 NEW. ENG. J. MED. 1092-102 (March 17, 2005), at 1097. Merck voluntarily withdrew Vioxx from the market on September 30, 2004, when interim unblinded data from the APPROVe study indicated that continuous daily use of Vioxx for an average of 30 months might increase the risk of thrombotic cardiovascular events.

[2] *Id*.

5

than among those on placebo, but the difference did not become statistically significant until after about 30 months of continuous use.[3]

In May of 2006, "extension data" from APPROVe was published.[4] Like the original APPROVe data, the extension data did not find a statistically significant difference in the risk of confirmed thrombotic cardiovascular events in patients who had previously taken VIOXX compared to those who had previously taken placebo over the first 18 months. In June of 2006, the New England Journal of Medicine published a Correction of the March 2005 APPROVe article relating to the test for proportionality of the risks and the statistical model used for interpreting the data. (*Correction*, NEW. ENG. J. MED. 355(2):221 (July 13, 2006) ("*Correction*"), attached hereto as Ex. C).

### A. The APPROVe Duration Analysis Is Not Scientifically Unreliable *Post Hoc* Subgroup Analysis.

Plaintiff, like previous plaintiffs, claims that Merck's experts' opinions should be excluded because the duration analysis contained in APPROVe is supposedly scientifically unreliable because it is a "*post hoc* subgroup analysis." (Pl.'s Mot. at 6-9.) As in the past, the Court should reject this argument.

*Post hoc* analysis is analysis conducted after the study and not a planned analysis included in the study design. The analysis plaintiff challenges, however – known as a "Kaplan-Meier survival analysis" – is a widely accepted method for plotting and analyzing the

---

[3] *Id*.

[4] *See* APPROVe Extension Statistical Package, dated May 26, 2006, attached hereto as Ex. B. The extension data evaluated the rate of serious thrombotic cardiovascular events experienced by patients more than 15 days after they stopped taking Vioxx or placebo, while the original published data only considered events up to 15 days later.

comparative rates of adverse events over time.[5]  The use of Kaplan-Meier curves to analyze the APPROVe data was part of an article published, after peer review, in the *New England Journal of Medicine*.  Plaintiff does not challenge – because he cannot – that the intention from the beginning of the study was to use this widely-accepted durational analysis.

Moreover, as Merck's expert Dr. Kim has explained, "the analysis of the Kaplan-Meier estimates at month 18 in the APPROVe study is not a subgroup analysis as the Kaplan-Meier estimates are based on all randomized subjects in the APPROVe study."  (Expert Report of KyungMann Kim, Ph.D. at 9, attached hereto as Ex. D.)  Subgroup analysis "refers to an analysis that includes only a subset of the study's intent-to-treat analysis population, *i.e.*, all randomized subjects in a study."  (*Id*. at 9.)  The final APPROVe results did not break the patients into subgroups – the *entire population of participants was analyzed*.  Plaintiff's claims that the APPROVe results are unreliable because they are a *post hoc* subgroup analysis are therefore groundless.[6]

**B.    The APPROVe Data Continues to Support Merck's Position.**

Plaintiff offers the wholly unsupported opinion that APPROVe "showed that cardiovascular risk was present early in Vioxx use," and claims that the June 2006 Correction "indicated that risk was increased from the start of therapy."  (Pl.'s Mot. at 9-10.)  That is incorrect.  The only reason for the Correction was that the proportionality test was originally

---

[5] *See, e.g.*, Elandt-Johnson and Johnson, SURVIVAL MODELS AND DATA ANALYSIS (Wiley 1980) at 172-174; Cox, DR and Oakes, D, ANALYSIS OF SURVIVAL DATA (Chapman and Hall 1984).

[6] Plaintiff is correct that Merck has previously argued against the admission of expert testimony based on unreliable *post hoc* subgroup analyses.  (Pl.'s Mot. at 7-8.)  Plaintiffs in previous cases have relied on such analyses by Topol, Kronmal, Juni, and others.

conducted using linear time, but was reported as having been conducted as a logarithm of time.[7] That proportionality test was "corrected" to log time, but the Correction did nothing to alter the study's published data and the figures illustrating the data remained unchanged.

For instance, the Correction did nothing to change the fact that, during the first 18 months of the study, there were 22 confirmed on-drug thrombotic events among patients on Vioxx versus 20 on placebo and nine MI's among patients on Vioxx versus eight on placebo – a statistically insignificant difference.[8] Also, the APPROVe Kaplan-Meier curve was not altered or deleted from the article.[9] The Correction reaffirmed that "[v]isual inspection of the Kaplan-Meier curves suggested that there was an increasing frequency of thrombotic events associated with rofecoxib therapy after 18 months."[10]

Nothing about the Correction has changed what the APPROVe base study demonstrated and the May 2006 extension data confirmed – that there was no statistically significant increase in the number of confirmed thrombotic events for patients on Vioxx compared to placebo during the first 18 months of use.[11]

---

[7] *See Correction*. There is no suggestion in *Correction* that use of a linear time analysis is not an appropriate scientific method.

[8] *See* Bresalier RS et al., *supra* n. 1; see also APPROVe Trial Abbreviated Clinical Study Report.

[9] *See Correction*; Bresalier RS et al., *supra* n. 1; APPROVe Extension Statistical Package, at 52.

[10] *Correction*.

[11] *Compare* APPROVe Extension Statistical Package, *supra*, at 51 *with* Bresalier RS et al., *supra* n. 1, at 1092-1102. Over the first 18 months of use, the extension data revealed a relative risk of 1.27, with a 95% confidence interval between 0.71 and 2.25, while the published base study produced a relative risk of 1.18, with a 95% confidence interval between 0.64 and 2.15. Thus, given that the confidence intervals fell below 1.0, neither revealed a statistically significant increased risk within the first 18 months. Accordingly, the APPROVe data is strong evidence refuting plaintiff's theory. *See, e.g., Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989), *modified on reh'g*, 884 F.2d 166, 167 (reversing verdict in Bendectin litigation given plaintiff's "failure to present statistically significant epidemiological proof"; *LeBlanc v. Merrell*

(*footnote continued next page*)

    **C.    Merck's Position is Consistent with the Totality of Available Clinical Evidence.**

Plaintiff again confuses who bears the burden of proving causation in arguing that Merck fails to support its position with peer-reviewed literature.  (Pl.'s Mot. at 9.)  To prove that Vioxx could have caused his heart attack after less than eleven months' use, it is plaintiff who must identify reliable peer-reviewed scientific literature.  Additionally, while the APPROVe data that plaintiff seeks to exclude supports Merck's position, the opinions of Merck's experts concerning the absence of scientific evidence supporting plaintiff's general causation theory are not based solely on the APPROVe results.  On the contrary, consistent with sound science, their opinions are based on the *totality* of the available evidence.  (*See, e.g.*, Merck's Motion for Order Excluding Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk, filed 9/19/06 (Record Docket No. 7195).)

In fact, before seeking FDA approval of Vioxx, Merck conducted over 55 clinical studies involving over 8,000 patients exposed either to Vioxx or to placebo or traditional NSAIDs for up to 86 weeks.[12]  These comparisons revealed *no* statistically significant difference in the rate of adverse cardiovascular events.[13]  After receiving FDA approval of Vioxx, Merck scientists conducted a pooled analysis of cardiovascular data from over two dozen randomized clinical trials that lasted longer than four weeks and that involved more than 28,000 patients and more than 14,000 patient years.  This pooled analysis similarly revealed *no* statistically significant increased risk of cardiovascular adverse events for patients taking Vioxx, as compared to placebo

---

*Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996) (granting summary judgment in Bendectin litigation given absence of "statistically significant epidemiological studies").

[12] *See* Merck's New Drug Application submitted November 23, 1998, attached hereto as Ex. E.

[13] *See, e.g.*, Aug. 10, 2005 *Ernst v. Merck* Tr. at 29:22-31:5 (Test. of Dr. Alise Reicin).

or NSAIDs other than naproxen.[14]  In addition, multiple observational studies have *failed* to find a statistically significant increased risk associated with the use of 25 mg Vioxx.[15]  Contrary to plaintiffs' suggestion, the APPROVe data is fully consistent with the data from these and other clinical trials and observational studies.

## IV.   CONCLUSION.

Merck is entitled to refute plaintiff's causation argument, both by challenging plaintiff's evidence and by presenting expert testimony explaining why the available clinical studies, including APPROVe, refute plaintiff's theory.  Plaintiff's criticisms of Merck's interpretation of the clinical data, specifically the data from the APPROVe study, are without merit.  As plaintiff has failed to show that the results of the APPROVe study should somehow bar Merck from making its arguments on causation, the Court should deny plaintiff's motion, just as it has denied virtually identical motions in the past.

---

[14] *See* Konstam MA, et al., *Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib*, CIRCULATION (Nov. 2001) 104(19):2280-2288; Weir MR, et al., *Selective COX-2 Inhibition and Cardiovascular Effects: A Review of the Rofecoxib Development Program*, AM. HEART J. (Oct 2003) 146:591-604.

[15] *See, e.g.*, Juni, P., et al., *Risk of cardiovascular events and rofecoxib: cumulative meta-analysis*, THE LANCET (2004) 364:2021-2029; W. Ray et al., *Cox-2 selective non-steroidal anti-inflammatory drugs and the risk of serious coronary heart disease:  an observational cohort study*, THE LANCET (2002) 360:1071-73 ("there was no evidence of a raised risk" of coronary heart disease in patients taking Vioxx "at doses of 25 mg or less" over an average of nearly one year).

832852v.1

Dated:  October 3, 2006                                    Respectfully submitted,


                                                                   */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition to Plaintiff's Motion to Exclude Argument or Opinion Testimony That an Increased Risk of Heart Attack Exists Only After 18 Months of Vioxx Use has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 3rd day of October, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

832852v.1