## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx | MDL DOCKET NO. 1657 |
| **PRODUCTS LIABILITY LITIGATION** | |
| | Section L |
| THIS DOCUMENT RELATES TO: | |
| Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v. | Mag. Judge Knowles |
| MERCK & CO., INC. | |

---

## OPPOSITION OF PLAINTIFF CHARLES LARON MASON TO DEFENDANT'S MOTION FOR ORDER EXCLUDING EXPERT TESTIMONY THAT SHORT-TERM VIOXX USE INCREASES CARDIOVASCULAR RISK

### (Defendant's Expert Challenge No. 10)

---

**TO THE HONORABLE JUDGE ELDON FALLON:**

Plaintiff Charles Laron Mason, by and through his undersigned counsel, asks this Court to deny Defendant Merck & Co., Inc.'s Motion to Exclude Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk. In support thereof, Plaintiff would show as follows:

## I.
## INTRODUCTION

As this Court is aware, it is Merck's position that there is no reliable evidence that using Vioxx 25 mg for less than 18 months increases the risk of thrombotic cardiovascular events. In this particular case, Merck argues that Mr. Mason's experts should be precluded from testifying that there is an increased risk of cardiovascular events with less than 11 months of use, or that Vioxx could have caused Mr. Mason's heart attack given the duration of use. The Court has previously addressed this issue and denied a virtually identical motion filed by Merck in *Smith v.*

*Merck & Co., Inc.*[1]   The Court has allowed such testimony in *Plunkett v. Merck & Co., Inc.*, *Barnett v. Merck & Co., Inc.*, and *Smith v. Merck & Co., Inc.*   Plaintiff respectfully requests the Court do the same in this case.[2]

## II.
## DISCUSSION

Scientifically reliable, peer reviewed publications continue to appear that support the fact that increased cardiovascular risk occurs with short-term Vioxx usage.   A court should allow such testimony from an expert if it is reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-593 (1993).   For the expert's testimony to be reliable, a court must consider the following factors: (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, and (3) the expert must apply the principles and methods reliably to the facts of the case.  FED. R. EVID. 702.  Much of this testimony regarding short-term use of Vioxx is based on independent evaluations of Merck's *own* published, controlled, randomized clinical trials such as VIGOR and APPROVe, in addition to other scientifically reliable published epidemiological studies.

A court should also allow an expert to offer an opinion at trial if it is relevant.  FED. R. EVID. 401, 402, 702; *Daubert*, 509 U.S. at 592-593.   Relevance requires that there be a valid scientific connection to the pertinent inquiry in the case.  *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 972 (8th Cir. 1995).   In the present case, the challenged expert testimony will be helpful to the fact finder who will ultimately decide whether it is more likely than not that

---

[1] *See* Order, *Smith v. Merck & Co., Inc.* (Sept. 8, 2006) (Rec. Doc. 6763).
[2] Plaintiff has filed a Motion to Exclude Argument or Opinion Testimony to the Effect that an Increased Risk of Heart Attack Exists Only After 18 Months of Vioxx Use, which Plaintiff incorporates herein.

Vioxx caused Mr. Mason's heart attack even with what Merck considers to be "short-term use."
*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002).

This Court has consistently emphasized that, as a gatekeeper, it must evaluate methodology, not conclusions.[3]  Similarly, the Fifth Circuit has consistently held that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration."  *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F. 2d 420, 422 (5th Cir. 1987)).

Protocol 090 (unpublished), the VIGOR trial,[4] the APPROVe trial,[5] ADVANTAGE trial,[6] the Lévesque study,[7] and the Ingenix study,[8] in addition to others, establish a scientific connection between short-term Vioxx use and increased cardiovascular risk, as well as a scientific connection between Mr. Mason's heart attack and his Vioxx use.

## A.   MERCK'S OWN CONTROLLED RANDOMIZED CLINICAL TRIALS SHOW THAT SHORT-TERM USE OF VIOXX INCREASES CARDIOVASCULAR RISK.

The "gold standard" for determining the relationship between a drug and a health outcome is the clinical trial.  *In re Rezulin Prods. Liab. Litig.*, 369 F.Supp. 2d 398, 406 (S.D. NY 2001).  In these trial, subjects are assigned randomly to one of two groups: one exposed, and the other not exposed, to the drug of interest.  *Id.*  Multiple clinical trials support the proposition that

---

[3] *See, e.g.*, Order, *Smith v. Merck & Co., Inc.* (Sept. 8, 2006) (Rec. Doc. 6763).
[4] *See* Bombardier C, et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 N. ENG. J. MED. 1520 (Nov. 30, 2000), attached as Exhibit A.
[5] *See* Bresalier RS, et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, 352 N. ENG. J. MED 1092 (March 17, 2005), attached as Exhibit B.
[6] Lisse J, et al., *Gastroentistinal Tolerability and Effectiveness of Rofecoxib verses Naproxen in the Treatment of Osteoarthritis*, ANNALS OF INTERNAL MEDICINE 2003; 139:539-546, attached as Exhibit C.
[7] *See* Lévesque, LE, et al., *Time variations in the risk of myocardial infarction among elderly users of COX-2 inhibitors,* CMAL, 2006; 174 (II), attached as Exhibit D.
[8] Ingenix Epidemiology Report, *Cardiovascular Risk of COX-2 Inhibitors and Other NSAIDs*, Feb. 16, 2004, attached as Exhibit E.

Vioxx causes a significant increase in the risk of serious cardiovascular events even with short-term use. Plaintiff's experts have relied on the data from these clinical trial in formulating their opinions in this case. Some of these clinical trials are briefly described below.

Protocol 090, a randomized *six week study* involving 978 patients with osteoarthritis of the knee, tested Vioxx 12.5 mg against nabumetone, one of a number of non-steroidal anti-inflammatory drugs (NSAIDs), and against placebo.[9] The rate of serious adverse CV events was 3-fold higher in the Vioxx group as compared to either the nabumetone or placebo groups.[10] This included a heart attack and two strokes in the Vioxx group verses no events in either the nabumetone or placebo groups.[11]

The VIGOR trial was a controlled randomized clinical trial designed to evaluate the effect of Vioxx 50 mg versus naproxen (Aleve) 1000 mg. It was designed by Merck to prove that Vioxx caused less gastrointestinal toxicity than traditional NSAIDs such as naproxen. Merck investigators examined over 8,000 patients who were randomly assigned one of these drugs. The VIGOR study ultimately revealed a significantly greater number of strokes, myocardial infarctions (MI), and cardiac deaths in the Vioxx group.[12] The difference in the number of CV events between Vioxx and naproxen was seen *within the first two months* of treatment.[13]

The strength of the VIGOR study alone provides the reliability and relevance basis for admission of testimony that short term usage results in increased cardiovascular risk. There is no question that based on VIGOR alone, numerous experts have reached the conclusion that short-

---

[9] *See* Expert Report of Jerry Avorn, M.D., at 14, attached as Exhibit F ("Avorn Report"); *see also* Report of Douglas Zipes, M.D., at 22, attached as Exhibit G ("Zipes Report").

[10] *See id.*

[11] *See id.*

[12] *See* Expert Report of Lemuel A. Moyé, at 40, attached as Exhibit H ("Moyé Report").

[13] *See id.*; *see also* Zipes Report at 21-22. Dr. Zipes uses the Kaplan-Meier curve prepared by Richard Kronmal, Ph. D. to demonstrate that the thrombotic evens seen in the Vioxx group began 4 to 6 week after exposure.

term Vioxx use results in an increased risk of cardiovascular events.   There is certainly no question about the reliability of VIGOR.   Merck stands firmly behind the propriety of the scientific analysis and presentation of data in the VIGOR publication when touting its "naproxen theory."   Plaintiff's experts are entitled to rely of the VIGOR data to refute Merck position that Vioxx did not cause Mr. Mason's heart attack because Mr. Mason did not take Vioxx long enough.   Regardless of whether Vioxx was compared to placebo or naproxen, VIGOR was a controlled randomized clinical trial in which one group was exposed to Vioxx and the other group was not, thus meeting the "gold standard" for determining a relationship between a drug and its health effects.   Merck argues that VIGOR is inapplicable because the dosage in VIGOR is higher than that taken by Mr. Mason.   Such hair-splitting is fodder for cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.   *Daubert*, 509 U.S. at 596.

ADVANTAGE, a randomized ***twelve week study*** involving 5,500 patients with osteoarthritis, compared Vioxx 25 mg with 1000 mg naproxen.[14]   Results showed a tripling a CV events with Vioxx as compared to naproxen.[15]

The APPROVe study, a controlled randomized trial involving 2,586 patients with colorectal adenomas, compared Vioxx 25 mg with placebo in order to test the hypothesis that COX-2 inhibition would prevent recurrence of the adenoma or progression to colon cancer.[16] The study showed a doubling of the risk of serious cardiovascular events in the Vioxx group.[17]

---

[14] *See* Avorn Report at 14-15; *see also* Zipes Report at 23-24.
[15] *See id.*
[16] *See* Avorn Report at 14-15; *see also* Zipes Report at 25-27.
[17] *See* Avorn Report at 17.

A Kaplan-Meier graph for this study shows the Vioxx curve above placebo after only three months.[18]

Clearly, there is ample reliable scientific evidence establishing a connection between increased risk of thrombotic cardiovascular events and short-term Vioxx use.

This Court has consistently allowed expert's to testify that Merck's clinical trials show an increased risk of serious cardiovascular events will less then 18 months of Vioxx use.   In *Plunkett v. Merck & Co., Inc.*, decedent Dicky Irvin had taken Vioxx for only 22 days prior to his heart attack[19].   The Court allowed the plaintiff's expert pharmacoepidemiologist, Dr. Wayne Ray, to testify as follows:

> Q.     Do you have an opinion whether Vioxx causes heart attacks in less than 30 days?
>
> A.     Yes.   The evidence that I have reviewed from the clinical trials and the epidemiologic studies shows that it's – to a reasonable degree of certainty, likely to increase heart attacks and serious coronary artery disease in 1 to 30 days.
>
> Q.     Thank you, doctor.   Doctor, how long did it take for heart attack risks to begin in the VIGOR study?
>
> A.     One of the ways we assess that is by looking at what we call cumulative incidence curves, and those are just the curves that show, for a given point in time, how many patients have developed the disease.   When those curves begin to separate, that's when the risk for one drug is – it's at least statistically – we are able to show statistically greater than that for the other drug.   In VIGOR, that happened within two months.[20]

In *Barnett v. Merck & Co., Inc.*, plaintiff Gerald Barnett took Vioxx for approximately three years, making "short-term use" a non-issue.   Nevertheless, Dr. Douglas Zipes was able to testify as follows:

---

[18] *See* Zipes Report at 27.
[19] November 29, 2005 transcript, *Plunkett v. Merck & Co., Inc.,* p. 108.
[20] December 1, 2005 testimony of Dr. Wayne Ray, *Plunkett v. Merck & Co., Inc.,* pp. 730-731.

A.    But the importance of the APPROVe trial was that Merck then did a study of 25 milligrams against a sugar pill.  So there can't be any argument that there's any benefit from the naproxen…

Q.    Can we go to the next slide?  What does that show?

A.    ….Now, the importance if this is as follows: When the APPROVe study was published, Merck said, with their primary endpoint, that there was no difference between Vioxx and the sugar pill until patients had taken the drug for 18 months, and that if you took it for less than 18 months, you had no difference.  But the investigator-reported results said, "Uh-uh.  That's not true."  When we report as the investigator that this patient had a heart attack and so on, those curves separate very early.  You can see that the rofecoxib or Vioxx curve gets higher than the placebo sugar pill curve very early.

Q.    Is that months on the bottom there?

A.    Yes, the months are on the bottom.  So sometimes, four or six months, there is a separation –

Q.    What does this mean if there is a separation?

A.    That means that Vioxx, indeed, is causing increased cardiac events, compared with the placebo pill, and it sure didn't take 18 months for it to happen.[21]

In *Smith v. Merck & Co., Inc.*, plaintiff Robert Smith took Vioxx for approximately five months.

In that trial, Dr. Lemuel Moyé was allowed to testify as follows:

Q.    Okay.  And, doctor, is there a certain period of time you have to take Vioxx for before it can increase the risk of heart attack?

A.    There is no -- there is no safe period of time.  Certainly, Vioxx, like any other poison, of course, the more you take, the worse it is.  The longer you take it, the worse it is.  But that doesn't mean that there is a safe exposure.  So short durations of exposure, as we've seen in some of these studies which have followed patients for 6 weeks or 3 months, demonstrate an increased risk of heart attack associated with Vioxx.[22]

Plaintiff respectfully requests that the Court continue to allow such testimony.

---

[21] *Barnett v. Merck & Co., Inc.*, August 8, 2006 Trial Transcript, 1707-1709.
[22] *Smith v. Merck & Co., Inc.*, September 16, 2006 Trial Transcript, 1466:16-1467:1.

**B.      EPIDEMIOLOGICAL STUDIES SUPPORT THE FACT SHORT-TERM VIOXX USE INCREASES CARDIOVASCULAR RISK.**

Merck seeks to exclude reliable expert testimony based on epidemiological studies because the studies allegedly (1) are not statistically significant, and (2) do not show a doubling of the relative risk of injury.

In support of its first argument, Merck cites *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307 (5th Cir. 1989) and *LeBlanc v. Merrell Dow Pharms.,* 932 F. Supp. 782 (E.D.La. 1996), two cases which addressed the causal link between the drug Bendectin and birth defects. In both cases, the courts concluded the scientific evidence available at that time, which consisted exclusively of epidemiologic studies (no clinical trials), was not sufficient to allow a jury to find by a preponderance of the evidence that Bendectin caused the plaintiffs' birth defects.  *Brock*, 874 F.2d at 313; *LeBlanc*, 932 F. Supp. at 784.  These cases are distinguishable from the present case because, in those cases, (1) no published epidemiological study found a statistically significant increased risk between exposure to Bendectin and birth defects, and (2) there were no randomized controlled clinical trials establishing a causal connection between exposure to Bendectin and birth defects.  In the present case, there are a number of randomized controlled clinical trials establishing that short-term use of Vioxx causes an increased risk of cardiovascular events (i.e., VIGOR, ADVANTAGE, APPROVe).  Moreover, there are multiple peer reviewed epidemiologic studies that have found a statistically significant increased risk between short-term Vioxx use and cardiovascular events (i.e., Juni, Lévesque, Solomon).

The peer reviewed study published in *Lancet* by Peter Juni and colleagues concluded that there is an increased risk of myocardial infarction in both short-term ("only a few months") and

long term duration.[23]  The study also concluded that there was no evidence to support the theory that Vioxx's cardiovascular toxicity was dose-dependent.[24]   Specifically, the researchers concluded as follows:

> We identified 18 randomized controlled trials and 11 observational trials.  By the end of 2000 (52 myocardial infarctions, 20742 patients) the relative risk from randomized controlled trials was 2. 30 (95% confidence interval [CI]; 1.22-4.33, p=0.010), and 1 year later (64 events, 21432 patients) it was 2.24 (1.24-4.02, p=0.007).  There was little evidence that the relative risk differed depending on the control group (placebo, non-naproxen NSAIDs, or naproxen, p=0.41) *or trial duration (p=0.82).*[25]

In addition to dismissing Merck's position that there is no evidence of an increase risk in cardiovascular events with less then 18 month use, the analysis also intimates there is no evidence that Vioxx's cardiovascular toxicity is dose dependant.  As such, this study refutes Merck's position that VIGOR is inapplicable to Mr. Mason's case because he took Vioxx 25 mg as opposed to Vioxx 50 mg.

The peer reviewed *Circulation* study showing the results of Daniel Solomon and colleagues reported rofecoxib use for 1 to 30 days was associated with an elevated risk of acute myocardial infarction (odds ration [OR], 1.43; 95% confidence interval [CI], 1.12 To 1.83; P=0.005).[26]  A similar elevation was associated with 31 to 90 days of rofecoxib use (OR, 1.46; 95% CI, 1.14 to 1.86; P=0.003).[27]  The elevated relative risk in patients taking rofecoxib for 90 days or less was not restricted to those taking greater than 25 mg.[28]

---

[23] *See* Juni P, et al., *Risk of cardiovascular events and rofecoxib: cumulative meta-analysis*, LANCET 2004; 364:2021-2029, 2025, attached as Exhibit I.
[24] *See id.*
[25] *Id*. at 2021 (emphasis added).
[26] *See* Solomon D, et al., *Relationship Between Selective Cyclooxygenase-2 Inhibitors and Acute Myocardial Infarction in Older Adults*, CIRCULATION 2004; 109; 2068-2073, 2071, attached as Exhibit J.
[27] *See id.*
[28] *See id.*

The Ingenix cardiovascular safety study, which was funded by Merck, also confirms there is increased cardiovascular risk with short-term Vioxx use. The study confirmed that crude and adjusted rates of MI/ACS (Acute Coronary Syndrome) were higher during periods of current rofecoxib use than periods of other NSAID use, and found that there was no clear trend with time since the onset of use - (RR for rofecoxib 1.51, 95% CI, 1.09-1.68).[29] Merck seeks to exclude this on the basis that the study did not distinguish between patients who took Vioxx at the 25 mg dosage and those who took it at the 50 mg. However, the Merck's scientists concluded that dose analyses also did not indicate trends of increasing risk with a higher daily dose of rofecoxib (RR for rofecoxib 25 mg 1.54, 95% CI 1.15-2.04: RR for rofecoxib 26-50 mg 0.81, 95 % CI 0.41-1.60).[30] Merck should not be able to pick and choose which if its own studies are presented to the jury.

The peer reviewed CMAJ published results of the Lévesque and colleagues reported the risk of an acute myocardial infarction was highest following first-time Vioxx use (adjusted rate ratio 1.67, 95% CI 1.21-2.30), with events occurring within a median of 9 (6-13) days after therapy was started.[31] The report further concluded that repeated use of rofecoxib was associated with a delayed risk increase. Compared with no use of NSAIDs in the year preceding the index date, the risk for rofecoxib was highest for those having received only one prescription (RR 1.64, 95% CI 1.20-2.23), only slightly lower and still statistically significant for 2-4 months (RR 1.24, 95% CI 0.95-1.61) and 5-8 prescriptions (RR 1.31, 95% CI 0.97-1.76) and did not return to the

---

[29] Ingenix Epidemiology Report, *Cardiovascular Risk of COX-2 Inhibitors and Other NSAIDs*, Feb. 16, 2004, attached as Exhibit E.
[30] *See id.*
[31] *See* Lévesque, LE, et al., *Time variations in the risk of myocardial infarction among elderly users of COX-2 inhibitors,* CMAL, 2006; 174 (II), attached as Exhibit D.

baseline statistically insignificant risk until after eight prescriptions.[32]   These statistically

significant scientifically reliable findings need not be excluded from the province of the jury.

The fact that a cause-effect relationship has not been conclusively established does not

render an expert's testimony inadmissible. *Ambrosini v. Labarraque*, 2322 U.S. App. D.C. 19

(D.C. Cir. 1996), *cert. dism'd*, *Upjohn Co. v. Ambrosini,* 520 U.S. 1205 (1997) (reversing district

court's finding that expert testimony was inadmissible because none of the studies relied upon

specifically concluded that Depo-Provera caused the type of birth defects suffered by the

Plaintiff).   Plaintiffs' experts, in opining that increased cardiovascular risk has been associated

with short-term Vioxx use, have employed the analogical reasoning based on objective,

verifiable evidence and scientific methodology that has been subject to peer review and has been

published, and the kind traditionally used by experts in their respective fields.   This is precisely

what *Daubert* requires.   *See, e.g., Hopkins v. Dow Corning.*, 33 F.3d 1116, 1125 (9th Cir. 1994)

(finding admissible expert testimony of a rheumatologist based on medical records, his clinical

experience, preliminary results of an epidemiological study and medical literature).

Even if Merck were correct that the epidemiological studies are not statistically

significant (which Plaintiff denies), it is the jury's province to determine whether expert

testimony rests upon tenuous evidentiary inferences and weak scientific data.   The court merely

ascertains whether the evidence, in the light most favorable to the party against whom the motion

is made, satisfies the minimum threshold of sufficiency.   *Mitchell v. Lone Star Ammunition, Inc.*,

913 F.2d 242, 252 (5th Cir. 1990).   The Court has stated time and time again that it must

evaluate the methodology - not the conclusions.   If Merck believes the epidemiological studies

show only a weak association between Vioxx and increased risk of cardiovascular events, Merck

can address this issue on cross-examination.

---

[32] *See* Exhibit D.

## III.
## CONCLUSION

Vioxx clinical trials clearly support the theory of an increased risk associated with short term use of Vioxx. Furthermore, there are a number of peer reviewed and published epidemiological studies which support expert testimony to the same effect. Plaintiff asks the Court adhere to the precedent it has set forth in *Plunkett, Barnett* and *Smith* and allow testimony that there is an increased risk associated with short term 25 mg use of Vioxx. For these reasons, Plaintiff requests the Court deny Merck's Motion for Order Excluding Expert Testimony That Short Term Vioxx Use Increases Cardiovascular Risk.

Date:  October 3, 2006                    Respectfully submitted,

_____
Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF
CHARLES LARON MASON**

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 3rd day of October, 2006.

Holly M. Wheeler