UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE<br>KNOWLES |
| CHARLES L. MASON, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S
MOTION TO EXCLUDE THE TESTIMONY OF DR. DONALD DAVID**

**(EXPERT CHALLENGE NO. 5)**

Merck has designated Dr. Donald David to offer expert testimony regarding three topics: (i) the complications, including perforations, ulcers, and bleeds ("PUBs"), associated with the use of traditional non-steroidal anti-inflammatory drugs ("NSAIDs"), narcotics, and steroids for chronic and acute pain symptoms; (ii) the demonstrated gastrointestinal benefits of Vioxx® as compared to other medications; and (iii) the overall risk/benefit profile of Vioxx.[1]  Plaintiff does not dispute that Dr. David is qualified to offer opinions regarding the first two topics, given his well-established expertise in the field of gastroenterology.  (Pl.'s Mot. at 1.)  Plaintiff argues, however, that Dr. David should be precluded from offering opinions on the third topic because

---

[1] *See generally* Expert Report of Donald S. David, M.D. ("David Rpt."), attached hereto as Ex. A.

he lacks the proper qualifications and his conclusions are based on unreliable scientific data or methodologies. (*Id.*)

Plaintiff's claims have no foundation. First, as even plaintiff recognizes, Dr. David has extensive experience dealing with patients suffering from chronic and acute pain. Dr. David has been a distinguished physician for over fifteen years, with board certifications in internal medicine and gastroenterology and an active practice treating patients with serious illnesses, including cancer, rheumatoid arthritis, and degenerative joint disease. Dr. David's experience outside of the clinical environment is equally impressive: he serves as an instructor at UCLA's medical school; he is the patient safety officer at his local hospital; he has been involved in various capacities in many clinical trials; and he has devoted numerous hours – both before and after his retention as an expert in Vioxx-related litigation – to evaluating peer-reviewed articles regarding Vioxx and other NSAIDs. Plaintiff's assertion that Dr. David is ill-suited to opine on the overall safety profile of Vioxx, therefore, is false.

Second, while plaintiff appears to argue otherwise, the Federal Rules of Evidence do not require a witness to have expertise in every conceivable field related to a case in order to testify. (Pl.'s Mot. at 3-13.) Instead, Dr. David need only be qualified to offer opinions that would assist the jury's understanding of a specialized field of knowledge and, in so doing, not go beyond the bounds of his own training, knowledge and experience. Dr. David does not, for example, purport to offer opinions on labeling or marketing of pharmaceuticals, as such topics are clearly not within his expertise. However, Dr. David's medical education, training, distinguished record of professional service, as well as his study of the pertinent scientific and medical literature, qualify him to render his medical opinions in this case. Further, contrary to plaintiff's claim, his testimony is not duplicative. Dr. David is uniquely situated to offer opinions concerning the

overall balance of risks and benefits associated with Vioxx given his extensive knowledge of the pain management and gastrointestinal problems faced by patients — including his ability to draw on his knowledge from his own use of Vioxx and other NSAIDs in his daily clinical practice.

Dr. David's testimony thus easily satisfies the requirements of *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993) and Rule 702. Not only is he qualified to provide expert opinion on the subjects in which he has been offered, *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998), but his testimony is also both relevant[2] and reliable, *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). For these reasons, explained further below, the Court should deny plaintiff's motion.

I.  **DR. DAVID IS QUALIFIED TO OFFER OPINIONS REGARDING THE OVERALL RISK/BENEFIT PROFILE OF VIOXX.**

Dr. David demonstrated in his expert report and at his deposition that he is well qualified to opine on issues relating to the overall safety profile of Vioxx. Dr. David has an undergraduate degree in biology from the University of California, San Francisco. (David Rpt. at 1.) He received his medical training at UCLA and served as a clinical fellow in gastroenterology. (*Id.*) Dr. David has current board certifications in internal medicine and gastroenterology, and is a member of several professional medical organizations. (*Id.*) He also provides clinical instruction to students at UCLA's medical school, as well as to fellows specializing in gastroenterology. (*Id.*; Sept. 15, 2006 Deposition of Donald S. David ("David 9/15/06 Dep.") at 48:4-50:15, attached hereto as Ex. B.)

Furthermore, for the past thirteen years, Dr. David has maintained an active clinical practice at the City of Hope National Medical Center, where he currently serves as the head of the Department of Gastroenterology. (David Rpt. at 1-2.) Dr. David sees hundreds of patients a

---

[2] Plaintiff does not challenge the relevance of any of Dr. David's opinions.

3

year who suffer from a variety of serious and life-threatening diseases, such as cancer, degenerative joint disease, osteoarthritis, and rheumatoid arthritis, as well as complications – gastrointestinal and otherwise – relating to those diseases.  (David Rpt. at 2; David 9/15/06 Dep. at 57:3-16, 66:7-67:24.)  Many of Dr. David's patients are elderly and thus face a variety of cardiovascular risks and suffer from significant gastrointestinal problems.  (David 9/15/06 Dep. at 68:17-69:2.)  Among other responsibilities, Dr. David also serves as the Patient Safety Officer at City of Hope, which involves supervising the other physicians and overseeing the administration of prescription drugs.  (June 6, 2006 Deposition of Donald S. David, M.D. ("David 6/6/06 Dep.") at 85:6-87:13, attached hereto as Ex. C.)

With regard to Vioxx specifically, Dr. David had significant experience with the medication while it was on the market.  He began prescribing Vioxx when it was approved, and estimates that he wrote approximately 300 Vioxx prescriptions per year (new and refills).  (David 9/15/06 Dep. at 61:8-21, 74:6-16.)  Before ever becoming an expert in this litigation, Dr. David kept up with relevant medical literature regarding Vioxx – including the VIGOR, APPROVe, ADVANTAGE, and related studies – and the changes to the Vioxx label.  (*Id*. at 80:16-22, 88:14-23.)  In addition, Dr. David made presentations and/or gave several informal talks to his colleagues and students regarding Vioxx and the significant gastrointestinal problems associated with traditional NSAIDs.  (*Id*. at 52:16-53:19; 104:11-105:9.)  Dr. David also is familiar with the design, implementation, and interpretation of clinical trials for pharmaceutical drugs.  He served as the principal investigator on two clinical trials, and has participated in numerous other trials at his hospital.  (David Rpt. at Ex. A.)  Moreover, Dr. David has been repeatedly published in peer-reviewed literature – primarily in the field of gastroenterology – and

serves on various bodies responsible for monitoring clinical trials performed at City of Hope. (*Id*. at Exs. A, B.)

This experience alone qualifies Dr. David to offer his opinions regarding the overall safety profile of Vioxx. Nevertheless, in order to further develop his knowledge of the risks and benefits associated with Vioxx, Dr. David reviewed over 100 additional studies from various peer-reviewed medical and scientific journals, devoting some 90 hours of his time to do so. (*Id*.; *see also* David 9/15/06 Dep. at 34:15-19.) In his expert report, Dr. David detailed the methodologies and findings of many of these studies – particularly those discussing the purported cardiovascular risks (or lack thereof) associated with Vioxx and other NSAIDs. (David Rpt. at 7-15.) Dr. David also reviewed the deposition testimony of certain of plaintiff's experts, as well as the findings of an Advisory Committee to the Food and Drug Administration in 2005. (*Id*. at Ex. B.) After taking into consideration all the scientific and medical literature that he reviewed, along with the experience he has accumulated through his clinical practice and other professional responsibilities, Dr. David concluded that: (i) there is no "increased risk of cardiovascular events [associated] with the use of [Vioxx]"; and (ii) "the benefit of [Vioxx], particularly when viewed in light of its unquestioned efficacy in the treatment of serious pain and inflammation and its impressive gastrointestinal safety record, far outweighs any potential risk." (*Id*. at 17.)

In the face of these obvious qualifications, plaintiff raises several red herrings in an effort to exclude Dr. David's testimony. First, plaintiff claims that Dr. David is not qualified to review and interpret cardiovascular data from Vioxx clinical trials, observational studies, and pooled analyses because does not have advanced training in cardiology, pharmacology, epidemiology, or biostatistics. (Pl.'s Mot. at 3-5, 8-9.) Similarly, plaintiff cites Dr. David's lack of health

policy and regulatory experience. (*Id.* at 10.) Plaintiff also takes issue with the fact that Dr. David did not participate in Vioxx clinical trials or presentations and that he did not undertake an all-encompassing review of Vioxx literature while it was on the market. (*Id.* at 4-5.)

Although Federal Rule of Evidence 702 requires specialized knowledge of the subject on which the expert is opining, it does not require the level of specialization plaintiff suggests. As shown above, Dr. David's medical training and clinical experience (including with Vioxx specifically, and NSAIDs generally), coupled with his involvement with a number of clinical trials and as a patient safety officer, easily qualify him to opine on the overall safety profile of Vioxx.[3] Furthermore, Dr. David's detailed review over more than two months of 100+ peer-reviewed articles regarding the potential benefits and risks associated with Vioxx demonstrates that his opinions are supported by reliable scientific methodology.[4] Plaintiff's attacks on Dr.

---

[3] Dr. David also stated in his report that he did not recall seeing a single occurrence of a peptic ulcer, gastrointestinal bleed, or cardiovascular complication associated with Vioxx in his clinical practice. (David Rpt. at 15-16.) Plaintiff argues that Dr. David should not be allowed to make these statements at trial because he has not produced any of his patient records. (Pl.'s Mot. at 11-12.) Numerous courts, however, have held that testimony concerning a doctor's clinical experience is admissible if that experience is consistent with otherwise scientifically reliable evidence." *See Cantrell v. GAF Corp.*, 999 F.2d 1007, 1014 (6th Cir. 1993); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1125 (9th Cir. 1994). As shown above, Dr. David's clinical experience is entirely consistent with numerous studies regarding the risks and benefits associated with Vioxx.

[4] Plaintiff also seeks to preclude Dr. David's opinion that any potential cardiovascular risks associated with Vioxx exist for the entire NSAID class of drugs because he "chose not to review [two] studies before his deposition." (Pl.'s Mot. at 8-9.) First, Dr. David never testified that he "chose not" to review these articles. Instead, he explained that he only learned about these articles – which were published just *three days* before his deposition – by email the *day before* his deposition and that he simply did not have time to review them. (David 9/15/06 Dep. at 93:15-94:24.) Second, the mere fact that Dr. David did not review two articles that may (or may not) support plaintiff's scientific theories does not render Dr. David's opinion unreliable. These studies (if even relevant) are better left for cross-examination.

6

David's qualifications go to weight and credibility, and thus, should be dealt with on cross-examination at trial – not through wholesale preclusion.[5]

Second, plaintiff claims that Dr. David's opinion that naproxen is cardioprotective is not based on reliable data. (Pl.'s Mot. at 5-8.) Dr. David's report, however, cited various peer-review studies and other data sources that support the conclusion that naproxen has cardioprotective properties, including the VIGOR clinical trial published in the *New England Journal of Medicine* ("*NEJM*") and three other studies published in the *Archives of Internal Medicine*. (*See, e.g.*, David Rpt. at 7-8.) Moreover, contrary to plaintiff's characterization of Dr. David's deposition, Dr. David testified that both the *NEJM* article regarding the VIGOR study and the article published by Dr. Marvin A. Konstam and his colleagues in *Circulation* supported his opinion. (David 9/15/06 Dep. at 86:14-21, 88:9-23, 89:24-90:24.) Indeed, Dr. David further testified that he has observed the platelet-inhibitory effects of naproxen in his own medical practice and that he now recommends naproxen instead of other NSAIDs like ibuprofen to his patients. (*Id.* at 85:25-86:7, 114:19-115:23); s*ee also Cantrell*, 999 F.2d at 1014 (expert may rely upon clinical experience that supports reliable scientific data). Dr. David's opinions regarding naproxen, therefore, are based on scientifically reliable data and clinical experiences.

Third, plaintiff misleadingly claims that the testimony of two of Merck's other experts, Dr. Craig Pratt and Dr. Michael Rothkopf, "contradicts" Dr. David's opinions regarding the cardioprotective properties of naproxen and the potential long-term cardiovascular risks of Vioxx, respectively. (Pl.'s Mot. at 5-6; 10-11.) Dr. Pratt, however, never disputed that naproxen has "antiplatelet and cardiovascular cardioprotective effects similar to aspirin," as Dr. David has

---

[5] Although Dr. David discussed his experience on the Pharmacy and Therapeutics Committee at the City of Hope in his report, he does not plan on relying on that experience to support his opinions on direct examination at trial, per the parties' stipulation. (David Rpt. at 16; David 9/15/06 Depo. at 25:4-26:25.)

opined. (David Rpt. at 8.) Instead, Dr. Pratt merely agreed at his deposition that it has not been "established" that naproxen was cardioprotective. (October 14, 2005 Deposition of Craig Pratt, M.D. ("Pratt 10/14/05 Depo.") at 71:8-72:2, attached hereto as Ex. D.) In fact, Dr. Pratt testified further that, like Dr. David, he was switching patients with coronary disease off of ibuprofen *to naproxen*. (*Id.* at 71:8-20; *see also* David 9/15/06 Dep. at 114:19-115:10.) Similarly, Dr. Rothkopf never "acknowledge[d] a cardiovascular risk associated with Vioxx after 18 months of use," as plaintiff contends. (Pl.'s Mot. at 10.) As Dr. Rothkopf's report states in full, "[a]lthough it is virtually impossible to rule out a small, but finite cardiovascular risk attributed to long-term [Vioxx] treatment, as discussed here, it is important to emphasize that thousands of patients have been treated with this drug safely and with clinical benefit, *and any such long-term risk is likely to be a class effect of all NSAIDs*." (Expert Report of Michael Rothkof, M.D.., at 14 (emphasis added), attached hereto as Ex. E.) Dr. Rothkopf's report, therefore, in no way undermines Dr. David's conclusion that "[t]he totality of the clinical trial data do not support an increased risk of cardiovascular events with the use of [Vioxx]." (David Rpt. at 17.)[6]

Fourth, plaintiff contests the substantive merits of Dr. David's opinions that naproxen is cardioprotective and that the cardiovascular risks associated with Vioxx in the APPROVe study appeared only after 18 months of continuous use. (Pl.'s Mot. at 8-9.) Dr. David's report details the scientific bases for his opinions, but these arguments are more fully addressed in Merck's oppositions to: (i) Plaintiff's Motion to Exclude Argument or Opinion Testimony to the Effect

---

[6] In any event, the mere fact that one expert has certain views does not mandate the preclusion of all other experts with different or even contrary opinions – particularly where, as here, the opinions are supported by years of clinical experience and a detailed review of relevant scientific and medical literature. *See Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (cardiologist was qualified to offer opinions that were contradicted by three testifying pathologists). Again, this determination simply goes to the weight and credibility of Dr. David's opinion, which should be left for the jury.

that an Increased Risk of Heart Attack Exists Only After 18 Months of Vioxx Use; and (ii) Plaintiff's Motion to Exclude Opinion Testimony that Vioxx is the Same as All NSAIDs Regarding Cardiotoxic Effects, which are incorporated herein by reference.

Finally, plaintiff contends that Dr. David's opinions on the risks and benefits associated with Vioxx – particularly any potential cardiovascular risks – are duplicative of the opinions proffered by Merck's cardiology and regulatory experts. (Pl.'s Mot. at 13.) While it is certainly true that Dr. David's testimony relates in part to the efficacy of Vioxx, his opinions on the subject are informed by his many years as a practicing physician and his experience managing his patients' pain and prescribing Vioxx and other NSAIDs. He brings this practical experience to bear in his role as an expert, and would therefore offer a different perspective at trial. In a learned intermediary case such as this one, the testimony of a practicing physician – who is, after all, the one who much evaluate the risks and benefits of a given drug – is invaluable. Dr. David is thus uniquely qualified to assess the overall risk/benefit profile of Vioxx – *e.g.*, its efficacy as a pain and inflammation medication, its gastrointestinal benefits, and its potential cardiovascular risks – and should be allowed to testify on the subject at trial.

**II.     CONCLUSION.**

For the foregoing reasons, Merck respectfully requests that the Court deny plaintiff's Motion to Exclude the Testimony of Dr. Donald David.

Dated:  October 3, 2006               Respectfully submitted,


                                      */s/ Dorothy H. Wimberly*
                                      Phillip A. Wittmann, 13625
                                      Dorothy H. Wimberly, 18509
                                      STONE PIGMAN WALTHER
                                      WITTMANN L.L.C.
                                      546 Carondelet Street
                                      New Orleans, Louisiana  70130
                                      Phone:  504-581-3200
                                      Fax:    504-581-3361

                                      Defendants' Liaison Counsel

                                      Philip S. Beck
                                      Tarek Ismail
                                      Shayna Cook
                                      BARTLIT BECK HERMAN PALENCHAR
                                      & SCOTT LLP
                                      54 West Hubbard Street, Suite 300
                                      Chicago, Illinois  60610
                                      Phone:  312-494-4400
                                      Fax:    312-494-4440

                                      Brian Currey
                                      Catalina J. Vergara
                                      O'MELVENY & MYERS LLP
                                      400 South Hope Street
                                      Los Angeles, CA 90071
                                      Phone:  213-430-6000
                                      Fax:    213-430-6407

                                      And

                                      Douglas Marvin
                                      WILLIAMS & CONNOLLY LLP
                                      725 Twelfth Street, N.W.
                                      Washington, D.C.  20005
                                      Phone:  202-434-5000
                                      Fax:    202-434-5029

                                      Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Opposition to Plaintiff's Motion to Exclude the Testimony of Dr. Donald David has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 3rd day of October, 2006.

                                                */s/ Dorothy H. Wimberly*
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER
                                                WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, Louisiana  70130
                                                Phone:  504-581-3200
                                                Fax:     504-581-3361
                                                dwimberly@stonepigman.com

                                                Defendants' Liaison Counsel