**EXHIBIT B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657<br><br>Section L<br><br>Judge Eldon E. Fallon<br><br>Magistrate Judge Daniel E. Knowles, III |

THIS DOCUMENT RELATES TO:
*Robert G. Smith v. Merck & Co., Inc.*, Case No. 2:05-CV-04379

ALL ACTIONS

## DECLARATION OF GARY SANDER, M.D.

**I, Gary Sander, MD, hereby state as follows:**

"I have been provided with a copy of Merck's **MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF GARY SANDER, M.D**. and would submit this declaration to The Court in response:

Both in my report and in my deposition testimony, I stated my opinions regarding VIOXX's essential role in causing Mr. Smith's myocardial infarction on February 17, 2003 and the scientific basis for my opinions. It is my understanding upon review of Merck's Motion noted above that Merck asserts that my opinions on the role of blood pressure, the acceleration of atherosclerosis, and prostacyclin production are "scientifically unreliable" and "irrelevant" and seeks to preclude my testimony on that premise. Of note is that Merck apparently has either misunderstood or misrepresented

my opinions as stated in their Motion although I am convinced that my positions were communicated clearly in both my report and in my deposition. Contrary to Merck's assertions, my opinions as truly stated are based on sound scientific and reliable evidence (including evidence authored and promulgated by Merck), my own years of clinical training and experience, my own research and published articles, and are most relevant to the issues in this case.

Of note is that Merck did not challenge my qualifications to render these opinions. My particular academic and clinical interests have centered upon cardiovascular pharmacology; furthermore, Hypertension and the role of blood pressure in contributing to the development of cardiovascular disease has been one of my specific areas of focus since my original appointment as faculty at Tulane Medical School in 1980, over two decades ago. I am designated as a Specialist in Clinical Hypertension by the American Society of Hypertension. I have published over twenty peer-reviewed articles and numerous abstracts and have given numerous presentations on various aspects of hypertension, in fact, as recently as last week. I have also published on the subject of anti-platelet agents and their impact on coronary artery disease and coronary events as noted on my curriculum vitae, which is attached. I have been given research grants by The American Heart Association-Louisiana Chapter and the pharmaceutical industry to study hypertension and anti-platelet agents and their impact on coronary artery disease and acute coronary events. I am board certified by the American Board of Internal Medicine in Internal Medicine and Cardiovascular Diseases as well. I hold fellowship status with the American College of Physicians, American College of Cardiology, the American College of Chest Physicians, and the American Heart Association, and

membership in such related organizations as the American Society of Hypertension, the Heart Failure Society of America, the Southern Society of Clinical Investigation, and the American Society of Pharmacology and Experimental Therapeutics. I hold positions as a Professor of Medicine in the Sections of Cardiology at Louisiana State University Health Sciences Center and Adjunct Professor at Tulane University Health Sciences Center in New Orleans and in this role supervise medicine house staff and cardiology fellows in the practice of cardiology. I also maintain a private cardiology practice with Canal Street Cardiology Associates in New Orleans. I have authored over 100 publications dealing with various aspects of Cardiovascular Medicine, and have taught and lectured extensively in these areas as well. My qualifications and experience are more specifically listed in the attached curriculum vitae.

**BLOOD PRESSURE OPINIONS**

There is ample scientific evidence that VIOXX causes increase in blood pressure (ie, Aw, TJ et al; VIOXX label). Merck in fact acknowledges in their Motion that "Merck explicitly *warned* of the risk of increased blood pressure in its label" (Merck Motion at page 6). I would take exception to use of the term "warned" as there is nothing in the Warnings section of the label about hypertension or blood pressure. However, Merck clearly concurs with my opinion that VIOXX causes increased blood pressure.

It is important to understand that there are direct and indirect mechanisms of cause and effect in medicine with each being scientifically valid and reliable. Further, medicine relies on and accepts biologically plausible mechanisms to explain the relationship between an ingestion of a dangerous drug and a serious medical event. Such is the case with VIOXX and myocardial infarction. Merck's own consultant, Dr. Garret FitzGerald,

has stated "thus, a single mechanism, depression of prostaglandin $I_2$ formation, might be expected to elevate blood pressure, accelerate atherogenesis, and predispose patients receiving coxibs to an exaggerated thrombotic response to the rupture of an atherosclerotic plaque." (FitzGerald, 2004, New England Journal of Medicine)

A.  **"VIOXX Causes Plaque Rupture"**

It is well established in the medical literature and even acknowledged by Merck in the VIOXX label that VIOXX causes increased blood pressure (VIOXX labels; Aw, et al; Sowers, et al) and that increased blood pressure increases the risk of cardiovascular events (Aw, et al; Framingham Heart Study). It is also accepted in the medical and scientific communities that increased blood pressure (hypertension) causes increased sheer stress in the blood vessels and that this increased sheer stress is a mechanical factor in plaque rupture. As early as 1998, Liao listed "high turbulent flow," which is the result of hypertension, as one of the "factors that increase plaque rupture" (Liao, JK, 1998). Wong et al further state "indeed, in some settings, COX-2 inhibition might also contribute to destabilization of an accumulated atherosclerotic plaque, allowing for an exaggerated thrombotic response, again via the same mechanism." (Wong, et al, 2005)

As stated in my report and supported by the peer-reviewed, published scientific literature, some of which is noted above, potent COX-2 inhibitors such as VIOXX can increase blood pressure and blood platelet coagulability; the increased blood pressure will increase shear stress in such blood vessels as coronary arteries, thus increasing the risk of vulnerable plaque rupture, then increasing the likelihood of platelet clumping leading to further platelet activation and ultimately activation of blood protein coagulation factors, clot formation, arterial obstruction, and finally stroke or acute coronary syndrome,

including myocardial infarction. Merck has attempted to misrepresent my position regarding plaque rupture and thrombosis. Thrombosis, beginning as platelet activation followed by formation of a blood clot or thrombus, is the end result of plaque rupture. VIOXX has been determined to increase the frequency of thrombosis and resulting cardiovascular events, which is the reason that it was withdrawn from the market. VIOXX causes thrombosis by increasing the production of thromboxane relative to that of the protective prostaglandin prostacyclin, and this thrombosis occurs at the site of plaque rupture, a well established mechanism for the development of coronary artery occlusion and myocardial infarction. Plaque rupture occurs, and when it does so the increased platelet activation resulting from the presence of VIOXX accentuates the severity of the subsequent thrombosis.

### B. "Mr. Smith had Hypertension Long Before He Started Taking VIOXX and There is No Reliable Evidence That It Increased With His VIOXX Use"

Merck again, misstates my testimony. As noted in my deposition, Mr. Smith had labile blood pressures prior to his ingestion of VIOXX which, at most, would be characterized as "white coat" or prehypertension depending according to JNC7 guidelines; he would be Stage 1 hypertension by ASH-1 criteria, not due to blood pressure alone but rather due to associated cardiovascular risk factors. As a specialist in hypertension, I am very experienced in diagnosing hypertension, which requires consistent blood pressures, measured appropriately, over 140/90. Mr. Smith's pattern of blood pressures did not meet the clinical criteria for hypertension by established guidelines, and I would not personally diagnose or "brand" one of my own patients with hypertension based upon these numbers alone. Additionally, Merck in its Motion focuses on episodic, diastolic

blood pressures when it is the systolic blood pressure that is more closely related to cardiovascular events in someone of Mr. Smith's age. Mr. Smith was initially given VIOXX on October 2, 2002. Blood pressures noted in his medical records prior to the initiation of VIOXX were 120/82 mm Hg (5-1-02) and 120/92 mm Hg (8-26-02). Blood pressures reflected a significant increase in systolic blood pressure at the time of his hospitalization for anterior cruciate ligament repair with systolic blood pressures of 148 to 160 mmHg. At the time he presented with acute myocardial infarction on 2-17-03, his initial blood pressure in the ambulance was 174/104 mm Hg and 167/91 mm Hg after aspirin and administration of two doses of Nitroglycerin. As stated in my report and supported by the medical literature, it is critical to understand that it is the systolic blood pressure that is more closely related to cardiovascular events than is the diastolic blood pressure (Sipahi, 2006). Aw, et al, note "we note a disproportionate rise in systolic BP compared with diastolic BP, on average, with coxib use. This potential widened pulse pressure could have significant cardiovascular risk implications, as demonstrated in the Framingham study, which observed a very steep relationship between both systolic blood pressure and pulse pressure and cardiovascular risk" (Aw, et al; 2005). Mr. Smith's medical records support an increase in systolic blood pressure after commencing VIOXX use; this is consistent with one of the mechanisms by which VIOXX can cause or contribute to acute thrombotic cardiovascular events such as Mr. Smith suffered while on this drug. These observations support my opinion that VIOXX caused an increase in blood pressure in Mr. Smith that significantly contributed to his thrombotic CV event on February 17, 2003.

C. **"Increased Blood Pressure Has Long Been a Well-Known Risk of All NSAIDs and Merck Warned of the Risk in its VIOXX Label"**

Merck states in its Motion they "specifically warned prescribing physicians about the potential link between VIOXX (and NSAIDs generally) and hypertension- i.e., high blood pressure." The Merck label contains nothing in the Warning section about hypertension and only mentions "renal effects (eg. Hypertension)" similar to comparator NSAIDs had occurred. However, as stated in my deposition, not all NSAIDs or COX-2 inhibitors increase blood pressure to the same magnitude as VIOXX (Aw, et al). While I stated in my deposition I have been aware of the potential of this class of drugs' potential to increase blood pressure, I am a hypertension specialist and have particular expertise in this area while other physicians would not. Merck notably agrees by the statements in its motion that VIOXX indeed does increase blood pressure which is the mechanism I have opined and supported through the medical and scientific literature whereby plaque rupture and acute myocardial infarction occurs.

**WHETHER VIOXX CAUSES OR ACCELERATES ATHEROSCLEROSIS**

As stated in my deposition, there is evidence in the medical and scientific literature that VIOXX contributes to or accelerates atherosclerosis, not the least of which is through its ability to increase blood pressure which Merck has acknowledged in its literature and the very Motion to exclude my testimony on the issue (Sipahi,2006). As noted on page 8 of Merck's Motion to exclude my testimony, "In a general sense, it is well-known that atherosclerosis is associated with hypertension. Indeed, hypertension is a traditional risk factor for atherosclerotic disease" (Anderson, KM et al).  Hypertension causes

endothelial dysfunction, a mechanism which is well established and accepted in the medical community as an initial pathophysiological process that ultimately leads, through a series of biochemical changes, to cardiovascular events. As noted by Liao, hypertension is listed as a factor which causes endothelial dysfunction and which is an atherosclerotic risk factor. "There is a strong association between atherogenic risk factors and endothelial dysfunction" (Liao, 1998). FitzGerald, Merck's own consultant, acknowledged "thus, a single mechanism, depression of prostaglandin $I_2$ formation, might be expected to elevate blood pressure, <u>accelerate atherogenesis,</u> and predispose patients receiving coxibs to an exaggerated thrombotic response to the rupture of an atherosclerotic plaque," exactly what I opine occurred to Mr. Smith on 2-17-03 (FitzGerald, 2004). As stated in my deposition, it is my opinion that VIOXX promoted thrombosis at a site of atherosclerotic plaque rupture, the mechanism stated by Merck's own Dr. FitzGerald.

**"VIOXX Reduces Prostacyclin Production in the Coronary Endothelium"**
Merck has either misunderstood or misstated my opinions in its Motion. My opinions as stated in my deposition and report are that VIOXX alters the balance between Prostacyclin production and Thromboxane production and it is this imbalance that places the patient in a prothrombotic state and increases the risk of a thrombotic event such as plaque rupture. That imbalance of prostacyclin and thromboxane affects clot formation is based on reliable science and, in fact, is described in medical and scientific literature funded and authored by Merck. Merck's own 16th Edition of The Merck Manual, Chapter 285 titled "Prostaglandins, Thromboxanes and Leukotrienes states "whether physiologic or pathologic clot formation ensues appears to depend on the relative amount of $PGI_2$

[prostacyclin] vs. $TXA_2$ [thromboxane] production." Of note is that this edition of the Merck Manual was published in 1992, long before VIOXX was marketed in the United States. VIOXX is a COX-2 inhibitor. The VIOXX label itself states in the "Clinical Pharmacology" section that "The mechanism of action of VIOXX is believed to be due to inhibition of prostaglandin synthesis, via inhibition of cyclooxygenase-2 (COX-2). At therapeutic concentrations in humans, VIOXX does not inhibit the cyclooxygenase-1 (COX-1) isoenzyme." In other words, VIOXX inhibits prostacyclin production by the endothelium, which, as stated in the Merck Manual "is the most potent of all inhibitors of platelet aggregation" and does not at the same time inhibit Thromboxane, which as stated in the Merck Manual is "a potent platelet aggregator." It is critical to understand that blood platelets can only produce thromboxane, and this production is inhibited by aspirin, thus providing the mechanism by which aspirin therapy becomes so critically important in the prevention of cardiovascular events. It is the first drug given to individuals presenting with acute coronary syndrome. In this sense, VIOXX, which inhibits production of the protective prostacyclin while not affecting platelet thromboxane production, can be considered an "anti-aspirin," which is consistent with its observed role in producing thrombotic cardiovascular events. Fries et al further state "thus, depression of COX-2 dependent $PGI_2$ biosynthesis, without concomitant inhibition of platelet function, provides a mechanism for a prothrombotic effect of COX-2 inhibitors." (Fries, S. et al, 2005). The mechanism whereby VIOXX promotes thrombus formation through inhibition of prostacyclin synthesis is also described in the article by Dr. Elliott Antman and colleagues and published in the journal of the American Heart Association, *Circulation* (Antman, et al; 2005) and in Merck's own funded and coauthored manuscript

by Bresalier, et al describing the results of the APPROVe trial, which resulted in VIOXX being withdrawn from the United States market. Bresalier, et al state "COX-2 is the chief source of systemic prostacyclin synthesis, and COX-2 inhibitors may increase the cardiovascular risk by shifting the functional balance of these vasoactive eicosanoids toward the promotion of thrombosis or atherogenesis." This was a randomized, controlled clinical trial which, according to the disclosures, was funded by Merck and in which all 12 authors were either employees of Merck, received consulting fees from Merck or had owned equity in Merck. Thus, in Merck's own clinical study, Merck acknowledges that COX-2 inhibition promotes thrombosis and increases the risk of cardiovascular events, exactly what I have opined in my report and deposition.

In summary, Merck's own literature and funded studies, in addition to other peer-reviewed, published scientific literature, confirm the mechanism I have opined and testified is operative in promoting thrombus formation in coronary arteries and in this Plaintiff.

**MERCK CORPORATE CONDUCT AND ETHICS**

My experiences with Merck representatives, who approached me as a "thought leader" in cardiovascular pharmacology and presented the VIGOR study as showing the thrombotic events were not induced by VIOXX, but rather were due to cardio-protection rendered by naprosyn, and information communicated by Merck through its sales representatives and slides provided to me are factual information which are part of my experience and education regarding coxibs, VIOXX and cardiovascular disease and in that way, contribute to my opinions in this case. I produced the slides given to me by the Merck representative at my deposition.

**SUMMARY**

In summary, the opinions I have stated in my report and deposition are based on sound, reliable, scientific evidence as stated above and cited on the attachments containing exerpts from my deposition, my report, my CV, the peer-reviewed, published literature and Merck's own literature, labeling, and publications. My opinions are also based on my education, training, 26 years of clinical experience, my specialized training in hypertension, and my own contributions to the peer-reviewed medical and scientific literature on the issues in this case,

Further, Affiant sayeth not."

_____                                   _____

Date                                                                                        Gary Sander, M.D.

## SUMMARY

In summary, the opinions I have stated in my report and deposition are based on sound, reliable, scientific evidence as stated above and cited on the attachments containing exerpts from my deposition, my report, my CV, the peer-reviewed, published literature and Merck's own literature, labeling, and publications. My opinions are also based on my education, training, 26 years of clinical experience, my specialized training in hypertension, and my own contributions to the peer-reviewed medical and scientific literature on the issues in this case.

Signed on this date, August 29, 2006, in Metairie, Parish of Jefferson, State of Louisiana.

_[signature]_
Gary Sander, M.D.

_[signature]_
Witness

_[signature]_
Witness

_[signature]_
Brett M. Powers, Esq.
Notary
My Commission Expires at Death.