## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Vioxx** | **MDL DOCKET NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | |
| | Section L |
| THIS DOCUMENT RELATES TO: | |
| Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v. | Mag. Judge Knowles |
| MERCK & CO., INC. | |

**PLAINTIFF CHARLES LARON MASON'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR ORDER EXCLUDING OPINION TESTIMONY BY PLAINTIFF'S EXPERTS THAT VIOXX ACCELERATES ATHEROSCLEROSIS OR CAUSES PLAQUE RUPTURE**

**(Defendant's Expert Challenge No. 9)**

**TO THE HONORABLE JUDGE ELDON FALLON:**

Plaintiff Charles Laron Mason, by and through his undersigned counsel, asks this Court to deny Defendant Merck & Co., Inc.'s motion to exclude opinion testimony by Plaintiff's experts that Vioxx causes plaque rupture. In support thereof, Plaintiff would show as follows:

### I.
### INTRODUCTION

Plaintiff understands that Merck intends to present evidence and testimony at trial that Vioxx slows the progression of atherosclerosis. If this occurs, Plaintiff is certainly entitled to put on contrary evidence. Plaintiff *does* intend to present evidence that Vioxx generally, and in himself specifically, causes plaque rupture. Merck requests that the Court exclude expert testimony that Vioxx causes coronary artery plaque to rupture because Plaintiff's experts allegedly will not opine that Mr. Mason's injuries are the result of plaque rupture. Merck further argues (as it has in the past)

that Plaintiff has not and cannot present reliable scientific support for this mechanism. Because

Merck is incorrect on both counts, and because this Court has already denied a virtually identical

motion in *Smith v. Merck & Co., Inc.*,[1] Merck's motion should be denied.

## II.
## DISCUSSION

**A.    PLAINTIFF'S EXPERT, GARY SANDER, M.D., HAS OPINED AND TESTIFIED THAT VIOXX CONTRIBUTED TO MR. MASON'S PLAQUE RUPTURE.**

Dr. Sander has explained his opinion in how Vioxx causes plaque rupture:

> Potent Cox-2 inhibitors such as Vioxx can increase blood pressure and blood coagulability, contributing to the incidence of cardiovascular events by two separate but re-enforcing mechanisms. The increased blood pressure will increase shear stress forces in such blood vessels as the coronary arteries, ***thus increasing the risk of vulnerable plaque rupture***, then increasing the likelihood of platelet activation and aggregation (clumping), leading to activation of blood protein coagulation factors, blood clot formation, arterial obstruction, and finally acute coronary syndromes including stroke myocardial infarction. . . . Clinical data now clearly indicate that these COX- 2 induced mechanisms are operative in increasing the rate of cardiovascular events in humans; recognition of these data has led Merck to withdraw Vioxx from the market.[2]

In its motion, Merck omits crucial deposition testimony from Dr. Sander. Specifically, Dr.

Sander testified as follows:

---

[1] *See* Sept. 8, 2006 *Smith v. Merck & Co., Inc.* Order at 1-2. Merck mischaracterizes the court's exclusion of testimony concerning Vioxx and atherosclerosis. *See* Merck's Motion at 2, n.1 (citing the court's ruling allegedly "holding that the 'extremely prejudicial' impact of testimony 'that it is possible or biologically plausible that Vioxx can be, in fact, causing atherosclerosis' would outweigh such testimony's probative value"). The truth is that the Court excluded such evidence because Mr. Cona, the plaintiff in that case did not suffer from atherosclerosis and the Court thought evidence regarding atherosclerosis would confuse the jury or be prejudicial. The Court observed that the testimony itself was "probative on supporting his opinion, it could I think, be admissible for that" but excluded it because the jury might believe that "there is an atherosclerotic condition that Mr. Cona now has which was either – and counsel for plaintiff has assured me they weren't . . ." *See* Merck's Motion, Exhibit B at p. 1182, lns. 15-16; 24-25; p. 1183, lns.1. No such concerns come into play here.

[2] Report of Dr. Gary E. Sander, dated August 7, 2006, at ¶¶ 11-12 (emphasis added), attached as Exhibit A.

Q.    Other than believing that Vioxx caused an imbalance of thromboxane and prostacyclin in Mr. Mason, is there any other mechanism by which you believe Vioxx contributed to his 2003 heart attack?

A.    The issue of blood pressure and certainly a higher blood pressure is going to cause more likely a rupture of vulnerable plaques than a lower blood pressure.[3]

* * *

Q.    Now, will you be offering the opinion at trial that Vioxx caused Mr. Mason's clot to rupture?

A.    The opinion I will be offering is that there appears to be a blood pressure change which may have contributed to that.

Q.    Have you formed an opinion to a reasonable degree of medical probability that Vioxx contributed to Mr. Mason's plaque rupture?

A.    Yes.

Q.    And you have determined that by virtue of the blood pressure?

A.    Blood pressure and the mechanism of unstable angina, thromboxane, prostacyclin interaction.

Q.    How does the thromboxane/prostacyclin interaction relate to rupture of atherosclerotic plaque?

A.    Well, once the plaque begins to have damage in it, then in fact the platelet plug forms and the interaction of the prostacyclin generated by the endothelium, versus a thromboxane generated by the platelet in terms of the extent of the clotting.  That is why people take aspirin.[4]

* * *

Q.    Now, do you believe Vioxx caused Mr. Mason's plaque to rupture?

A.    I believe that the increased blood pressure was a contributing factor to plaque rupture.[5]

Thus, even if Dr, Sander testified that Vioxx did not make Mr. Mason's plaque more "rupture prone," clearly Dr. Sander nevertheless opines that Vioxx did contribute to Mr. Mason's plaque rupture by other means as described in the above testimony.  Therefore, Merck's statement that "plaintiff's experts do not opine that Vioxx . . . caused [Mr. Mason's] plaque rupture" is incorrect.

---

[3] Sept. 5, 2006 Deposition of Gary Sander, M.D., 73:2-74:2, attached hereto as Exhibit B.
[4] Exhibit B at 73:2-74:2.
[5] *Id*. at 74:19-23.

3

**B.**     **THERE IS AMPLE DATA SUPPORTING A LINK BETWEEN VIOXX AND ACCELERATION OF ATHEROSCLEROSIS AND PLAQUE RUPTURE.**

Plaintiff will not argue that Vioxx caused the acceleration of atherosclerosis *in his particular case*. However, Plaintiff is entitled to present evidence to the jury through expert testimony about the various mechanisms by which Vioxx causes heart attacks, including acceleration of atherosclerosis. Such testimony is vital to Plaintiff's case in part to establish what Merck knew prior to Vioxx being put on the market. Furthermore, despite Merck's insinuation to the contrary, Dr. Lucchesi testified that he does believe Vioxx can accelerate atherosclerosis and identifies specific studies that support this theory.[6] Dr. Sander is also qualified and well-prepared to offer similar testimony.[7]

Plaintiff's claims here are grounded in the very well established and unchallenged[8] notion that Vioxx can cause or accelerate atherosclerosis through depression of prostaglandin $I_2$ formation which, in turn, has multiple effects: elevation of blood pressure, platelet aggregation (clumping) and activation, *and rupture of atherosclerotic plaque*. This is the same process of atherogenesis Merck's own Scientific Advisory Panel described to Merck in 1998,[9] that Merck adopted and in which it manifested a belief in its truth in removing Vioxx from the market, that Merck has repeatedly admitted in its internal documents, Merck-funded studies, and that this Court has already

---

[6] *See* Sept. 7, 2006 Deposition of Benedict Lucchesi, M.D., Ph.D. ("Lucchesi Dep. 9/7/06"), 148:12-151:2, attached hereto as Exhibit C.

[7] *See* Opposition of Plaintiff Charles Laron Mason to Defendant's Motion to Exclude Testimony of Gary Sander, M.D. ("Sander Opposition"), which Plaintiff incorporates herein.

[8] In the past, Merck has *not* challenged the "FitzGerald hypothesis" concerning the means by which Vioxx "leads to a pro-thrombotic state," a theory this Court has already accepted as scientifically reliable. *See* Sander Opposition at 6. Interestingly, Merck does not address the "FitzGerald hypothesis" in its most recent motion regarding atherosclerosis.

[9] Merck Scientific Advisors Meeting, May 3-6, 1998, attached as Exhibit D.

found reliable under *Daubert*.[10]   As this Court concluded in its prior Vioxx *Daubert* rulings, the FitzGerald hypothesis[11] is "supported by numerous articles as well as recognized medical journals."[12]

Since this Court's ruling in November 2005, more compelling scientific evidence to support for this core theory has come to light.   In a recent article in the peer reviewed Journal of Clinical Investigation, Professor FitzGerald, a key member of Merck's Scientific Advisory Committee and his co-authors definitively concludes that: "In summary, *a substantial body of evidence has accumulated that 1 mechanism, suppression of Cox-2-dependent PGI2 formation, can both augment the response to thrombotic and hypertensive stimuli and initiate and accelerate atherogenesis.*"[13]

In addition to the study by Dr. Rott that Merck financed, Plaintiff's experts rely upon the following studies in forming their opinions.

---

[10] *In re Vioxx Products Liability Litigation*, 401 F.Supp.2d 565, 586-587 (E.D.La. 2005).

[11] The "FitzGerald hypothesis" holds that COX-2 inhibitors depress systemic PGI2 without concomittant inhibition of platelet-dervied thromboxane A2 (TxA2). This can result in an augmented response to thrombotic and hypertensive stimuli and the acceleration of atherogenesis. This mechanistic explanation is supported by data from the Adenomatous Polyp Prevention on Vioxx (APPROVe) trial and the Adenoma Prevention with Celecoxib (APC) trial.   *See* Solomon SD, McMurray JJ, Pfeffer MA, et al, *Adenoma Prevention with Celecoxib (APC) Study Investigators. Cardiovascular risk associated with celecoxib in a clinical trial for colorectal adenoma prevention*, N.ENGL.J.MED. 2005;352:1071-1080.

[12] *See In re Vioxx Products Liability Litigation*, 401 F.Supp.2d at 586-587.

[13] *See* Grosser, Fries & FitzGerald, *Biological basis for the cardiovascular consequences of COX-2 inhibition: therapeutic challenges and opportunities*, Vol. 116, No. 1, JOURNAL OF CLINICAL INVESTIGATION 4, 6 (January 2006) (emphases added), attached as Exhibit E.

1. **Karine Egan, John A. Lawson, Suzanne Fries, Beverley Koller, Daniel Rader, Emer M. Smyth, Garret A. FitzGerald, *COX-2-Derived Prostacyclin Confers Atheroprotection on Female Mice*, Science 10 Dec 2004; Vol. 306, 1954-57**[14]

*Abstract* (excerpts): ...Deletion of the PGI2 receptor removed the atheroprotective effect of estrogen in ovariectomized female mice.  This suggests that chronic treatment of patients with selective inhibitors of COX-2 could undermine protection from cardiovascular disease in premenopausal females.

*Discussion* (excerpts):
(1954-7)
...The prostaglandin PGI2 exhibits properties of relevance to atheroprotection, inhibiting platelet activation, vascular smooth muscle contraction and proliferation, leukocyte-endothelial cell interactions, cholesteryl ester hydrolase.  PGI2 analogs retard atherogenesis, and atherosclerotic lesions exhibit a decreased capacity to produce PGI2 ex vivo.  Cyclooxygenase 2 (COX_2) expressed in vascular endothelial cells, catalyzes prostaglandin endoperoxide formation from arachidonic acid.  This is subsequently transformed to PGI2 by PGI2 synthesis, a process that occurs in endothelial cells.  Selective COX-2 inhibitors depress PGI2 metabolite excretion.  Inhibition of the COX-2-PGIS pathway may have particular relevance to atheroprotection in females because E2 increases COX-2 expression in vascular tissues and augments PGI2 production in vitro.

...Selective inhibitors of COX-2 depress PGI2, but not platelet COX-1 derived TxA2, *which affords a mechanism whereby they might elevate blood pressure, accelerate atherogenesis, and augment the thrombotic response to plaque rupture.*  Depression of PGI2 may accelerate atherogenesis by multiple mechanisms, including augmenting platelet and neutrophil interactions with the vasculature.  PGI2 also exerts an antioxidant effect, which may retard atherogenesis.  IP deletion augments lipid peroxidation, whereas its overexpression in human embryonic kidney cells has the opposite effect.  An antioxidant role for PGI2 which may reflect induction of HO1, is consistent with exacerbation of reperfusion injury by IP deletion...

...Although extrapolation of results in mice to humans is performed with caution, the experience with rofecoxib has focused attention on the role of atherogenesis in transformation of cardiovascular risk during chronic treatment with selective inhibitors of COX-2.  We reveal a substantial contribution of ERa-mediated, COX-2 derived PGI2 to atheroprotection in female LDLR KOs.  This finding raises concern about the use of COX-2 inhibitors in juvenile arthritis, a disease that predominantly

---

[14] These four peer reviewed studies, attached as Exhibit F, support the position that Vioxx causes atherosclerosis.

affects females.  It may also have implications for the design and interpretation of trials of hormone-replacement therapy.

2.  **Rudic D, et al., *Cox-2 Derived Prostacyclin Modulates Vascular Remodeling*, Circ Res. 2005; 96:1240-1247)**[15]

*Abstract* (excerpts):...***Suppression of Cox-2 derived PGI2 or deletion of IP profoundly influences the architectural response of the vasculature to hemodynamic stress.***

*Preface* (excerpts):
(1239-1)
...***Among the factors which might have contributed to acceleration of cardiovascular risk during that time are elevation of blood pressure and acceleration of atherogenesis, both of which may result from deletion of the receptor for PGI2*** (the IP) in genetically predisposed strains of mice.  Indeed, blood pressure was elevated by 3-4 mm Hg as early as 1 month in patients receiving rofecoxib in APPROVe.  Aside from initiation and early development of atherogenesis, little is known about how suppression of COX-2 dependent PGI2 might condition the response of the vasculature to sustained stress, such as a rise of blood pressure.  In this study we examine the effect of disrupting PGI2 action in mouse models of transplant arteriosclerosis and vascular remodeling which preserve the integrity of the endothelium, either by removing the IP or by administration of nimesulide, a nonproprietary but commercially available COX-2 inhibitor which confers COX-2 selectivity comparable to that of celecoxib.  We report that either deletion of the IP or administration of a COX-2 inhibitor induces vascular hyperplasia and remodeling of the vasculature while maintaining luminal geometry.  Such perturbation of the relationship between vascular hemodynamics and structure may interact with hypertension and atherogenesis to contribute to an emerging cardiovascular hazard in patients initially at low cardiovascular risk during extended therapy with selective inhibitors of COX-2...

*Discussion* (excerpts):
(1244-1246)
...Cox-2 is a major source of PGI2 biosynthesis in humans.  Depression of PGI2 without a concomitant inhibition of TxA2 has been suggested as a mechanism by which selective inhibitors of COX-2 might predispose individuals to cardiovascular hazard.  The emergence of this risk in placebo controlled clinical trials involving three COX-2 inhibitors is compatible with such a class-based effect.  Deletion of the IP predisposes mice to an exaggerated response to thrombotic stimuli and both

---

[15] Attached as Exhibit G.

modulate blood pressure and accelerate atherogenesis in genetically predisposed animals…

…Here under conditions of flow reduction, suppression of PGI2 by nimesulide or disruption of its activity by IP deletion may have magnified the effects of hemodynamic-induced Tx formation.  PGI2 acts as a constraint on oxidant stress, both in occlusion/reperfusion injury and as atherogenesis proceeds in genetically predisposed mice…

…Here, Tx biosynthesis increases with atherogenesis and is further increased by a structurally distinct COX-2 inhibitor.  Analogous to the experience with TP deletion, addition of a TP antagonist to the COX-2 inhibitor results in a marked augmentation of Tx biosynthesis and plaque destabilization…

…Vascular remodeling occurs in both hypertension and atherosclerosis and deletion of the IP results in a rise in blood pressure (citing Francois and Coffmann unpublished observations; 2004) and accelerates atherogenesis in genetically prone mice.  Here, we show a distinct impact on the remodeling process to hemodynamic stress, again mediated, at least in part, by removal of a biological constraint on TP ligands.  ***These consequences of PGI2 suppression, elevation of blood pressure, acceleration of atherogenesis and modulation of the vascular response to hemodynamic stress, may converge to alter vascular architecture and elevate cardiovascular risk*** during extended dosing with selective inhibitors of COX-2.

3. **Kobayashi Y, et al., *Roles of Thromboxane A2 and prostacyclin in the development of atherosclerosis in apoE-deficient mice*, J. CLIN INVEST. 114:784-794 (2004)**[16]

*Abstract (*excerpts): …Production of thromboxane (TX) A2 and PGI2 is increased in patients with atherosclerosis…We conclude that TXA2 promotes and PGI2 prevents the initiation and progression of atherogenesis through control of platelet activation and leukocyte-endothelial cell interaction.

*Discussion* (excerpts):
(790—91)
…In contrast to those findings in the previous studies, our study here using genetically engineered mice has demonstrated significant suppression and significant enhancement of atherosclerosis in apoE-/-TP-/- and apoE-/-IP-/- mice, respectively, suggesting strongly proatherogenic and antiatherogenic actions of TXA2 and PGI2, respectively.

_____

[16] Attached as Exhibit H.

...It is noteworthy that atherogenesis was significantly accelerated and reached a plateau early in apoE-/-IP-/- compared with apoE-/- mice. These results indicated that signaling from PGI2 to IP is important in preventing the initiation of atherosclerosis. Impaired PGI2 function, moreover, appeared to affect the progression and nature of atherosclerotic plaques.

...Lesion rupture, when it occurs in vivo, then precipitates thrombosis, which is further accelerated in the absence of IP. *Disruption of IP is known to increase the risk of thrombosis.* Thus, PGI2 appears to exert important inhibitory actions on the initiation and progression of atherosclerosis, and the reduction in PGI2 in the presence of normal TxA2 formation is likely to lead an increased risk of atherosclerosis and thrombosis. Currently, an important question concerning COX-2 inhibitors is whether the selective reduction in PGI2 increases the risk of atherosclerosis. Our findings support that conclusion. However, our findings cannot be directly extrapolated to the clinical outcome of patients treated with COX-2 inhibitors. Although the majority of PGI2 under basal conditions is derived from COX-2 catalysis, both COX-1 and COX-2 contribute to the increase in PGI2 in patients with atherosclerosis as well as in apoE-/- mice, and selective inhibition of COX-2 usually results in only partial inhibition of PGI2 production.

...In conclusion, using the IP-deficient and TP-deficient mice, we were able to evaluate separately the contributions of PGI2 and TxA2 to the development of atherosclerosis. The information presented here will aid in the interpretation of clinical findings and the evaluation of risk in atherosclerotic patients treated with various drugs modulating the arachidonate cascade. Our findings also indicate that administration of PGI mimetics and TP antagonists may be useful in the prevention of atherosclerosis. This line of genetic approach may also help to identify the contributions of PGs other than PGI2 and TXA2.

### 4. Thal, LJ, et al., *A Randomized, Double Blind Study of Rofecoxib in Patients with Mild Cognitive Impairment*, NEUROPHARMACOLOGY (2005) 30, 1204-1215)

As described above, Merck conducted two clinical trials (Protocol 078 and the long-term APPROVe follow-up study) which followed patients after they stopped taking Vioxx. Specifically, Protocol 078 found that there was an increase in mortality in the trial subjects randomized to Vioxx. Of the 39 persons who died, 24 were in the Vioxx group. Notably, the sponsors continued to collect data after the study was stopped (356 in the Vioxx arm and 307 in the placebo group). In the follow up, 17 deaths occurred in the Vioxx arm versus 5 in the placebo group.

5. **Dr. Garrett Fitzgerald (2005-2006)**

In January 2006, Dr. FitzGerald, one of the members of Merck's 1998 Scientific Advisory Panel, summarized the results of the Rudic, Egan, Egan and Kobayashi studies: "In summary, *a substantial body of evidence has accumulated that 1 [one] mechanism, suppression of COX-2 dependent PGI2 formation, can both augment the response to thrombotic and hypertensive stimuli and initiate and accelerate atherogenesis.*"[17]

The general acceptance of the biologic effects of COX-2 suppression by coxibs such as Vioxx as contributing to the progression of atherosclerosis is demonstrated in the presentation of Dr. FitzGerald to the FDA Advisory Committee considering the scientific risks and benefits of specific COX-2 inhibitors in February, 2005.

> Let's think of a more chronically unfolding cardiovascular hazard. These data are taken from Narumiya. They are looking at the development of atherosclerosis in a genetically prone mouse, and you can see that deletion of the prostacyclin receptor accelerates atherogenesis in male ApoeE-deficient mice. In fact, the impact was most particularly marked at initiation and early development of atherogenesis. By contrast, deletion of the thromboxane receptor does the complete reverse, and other studies conducted by us and others have shown that inhibition of COX-1 selectively or antagonism of the thromboxane receptor will have the same effect as deleting the thromboxane receptor, as shown here.
>
> So, as far as atherosclerosis is concerned, we see this buffering capacity between COX-1 and COX-2. Furthermore, we have shown recently that in a different genetically prone mouse model deletion of the prostacyclin receptor and inhibition of COX-2 dependent formation of prostacyclin is important in affording the atheroprotection conferred by estrogen in female mice.
>
> So, here we see the atheroprotection in terms of reduction of lesion development with estrogen treatment in vasectomized mice being dramatically reduced by deletion of the prostacyclin receptor, which raises a whole new set of questions about the use of these drugs in premenopausal women.

---

[17] Exhibit E.

So, as far as this other manifestation of a cardiovascular hazard is concerned, initiation and acceleration of early atherogenesis occurs in response to deletion of the prostacyclin receptor.  I haven't gotten into mechanism but it fosters platelet and neutrophil activation and vascular interactions of these cells, and removes the constraint on attendant oxidant stress.

Now, we know that **hypertension,** which is also a consequence of inhibition of this pathway, itself accelerates atherogenesis.  So, one could imagine that the direct and indirect effect could converge to transform cardiovascular risk.  Finally, again COX-1 is playing a modulatory role.[18]

Merck's primary attack on Plaintiffs' causation evidence is that Drs. Lucchesi and Sander, among others, rely on studies done on animals.  In making that argument, Merck ignores the clinical trials, peer-reviewed article and admissions, previously mentioned, reviewed and considered by Drs. Lucchesi and Sander used in formulating their opinions.  This Court ruled in *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F.Supp.2d 565, 590 (E.D. La. 2005) that the expert in question "based his opinion on a thorough review of the scientific literature [animal studies] . . . [and] drew proper and supported inferences from the studies he reviewed."

Additionally, the Federal Judicial Center's Reference Manual on Scientific Evidence, at 33-34, recognizes that toxicology models based on animal studies may be used to determine adverse effects in humans. The only consideration is whether, in the Court's view, the studies adequately support the expert's opinion on causation. This can be accomplished by having the expert explain the basis on which he can extrapolate the expert's results.

Merck implies that, if there is any disagreement in the scientific community concerning a given hypothesis – no matter how shaky the opposition – that hypothesis is presumptively unreliable. As an initial matter, the focus of the *Daubert* inquiry "must be solely on principles and methodology,

---

[18] February 2005 FDA Advisory Committee Transcript Volume I, at pp. 93-95, attached here as Exhibit I.

[and] not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95. Stated differently, any error affects only the weight a jury may choose to Plaintiff's evidence, but not its admissibility. Thus, evidence cannot be excluded under *Daubert* because Merck disagrees with its conclusions. Second, while "general acceptance" is a factor that may be used in assessing reliability, unanimity in the scientific community is not. *Id.* at 592-594. Thus, the fact that there are studies which may reach contrary results using different markers is irrelevant to a determination of reliability.

For example, Merck suggests "several recent studies in humans have suggested that COX-2 inhibition (including COX-2 inhibition from Vioxx) is associated with significantly reduced levels of C-reactive protein—considered a marker for progression of atherosclerosis with possible [emphasis added] direct involvement in the atherosclerotic process" (citing studies by Bogaty, et. al, Monakier et al, and Ridker). The Bogaty study, however dealt with 35 subjects *on low-dose aspirin* who had had greater than two previous acute coronary events.[19] These subjects all took 160 mg of aspirin daily. Of note, during the study, it was reported: one patient on rofecoxib had unstable angina one month after randomization, in two others a diuretic was begun because of peripheral edema and increased blood pressure, and an ACE inhibitor was begun in three patients because of increased blood pressure. The authors commented that "this study must be tempered [emphasis added] by the fluctuation of serum values of CRP and IL-6 that was manifest during screening" and they also commented that their findings "cannot be definitive." Recommendations were made to further "explore whether COX-2 inhibition may be beneficial in patients with ischemic heart disease who are at very high risk of acute coronary events because of their heightened inflammatory profile." The

---

[19] Peter Bogaty, et al., *Impact of Prolonged Cyclooxygenase-2 Inhibition on Inflammatory Markers and Endothelial Function in Patients With Ischemic Heart Disease and Raised C-Reactive Protein—A Randomized Placebo Controlled Study*, CIRCULATION. 2004; 110:934-939.

methodology and findings in this study are speculative at best.

Merck also cites an article by Ridker for the proposition that COX-2 inhibition is associated with significantly reduced levels of C-reactive protein.[20] While C-reactive protein may be a marker for underlying systemic inflammation, and can possibly be associated with a risk of myocardial infarction, it must be noted that this was a study where participants were randomly assigned to receive aspirin or a placebo. The conclusion made in this study was that the data "suggest[s] that inflammatory markers such as C-reactive protein may provide a method of identifying people for whom aspirin is likely to be more or less effective—a hypothesis requiring direct testing in randomized trials ." The relevance to the COX-2 enzyme was not tested or studied here.

In the Monaker study, also cited by Defendant, the conclusion was made that in patients recovering from ACS (Acute Coronary Syndrome) when treated with rofecoxib plus aspirin, suppression of inflammatory processes may lead to retardation of coronary atherosclerosis and coronary events.[21] Here the authors indicated that patients with ACS have high levels of inflammatory mediators such as CRP and interleukin (IL)-6. Their aim was to evaluate whether patients with ACS treated with rofecoxib would have reduced CRP, I:-6 and soluble tumor necrotic factor receptor levels and improved endothelial function.

Thirty-four hospitalized patients were randomized to receive 25 mg of rofecoxib plus 100mg/d aspirin, or placebo plus aspirin, 100 mg/d for a period of 3 months. Relying on the published reports of VIGOR the authors considered the study "to be safe for our study population." Thirty-four patients participated in the study, and all completed at least one month of treatment.

---

[20] Ridker P, et al., *Inflammation, Aspirin, and the Risk of Cardiovascular Disease in Apparently Healthy Men*, N.ENG.J.MED. 1997; 336:973-9.
[21] Monaker D. et al., *Rofecoxib, a Cox-2 Inhibitor, Lowers C-Reactive Protein and Interleukin-6 Levels in*

Twenty-three of the patients completed three months of treatment and most of the patients who did not complete the 3-month follow-up were excluded, mainly due to the development of infections and inflammatory conditions that could potentially elevate the inflammatory markers studied.

This study has major limitations as the authors concede questionable methodology. A small number of patients were studied and there was a high drop out rate at the three-month follow-up. Further, patients were excluded because of various reasons listed as: rehospitalization because of acute MI (n=3), unstable angina (n=2), and infection or inflammatory conditions requiring anti-inflammatory treatment. Thus, the results in this study are unreliable, and lack sound methodology.

## C. MERCK HAS ADMITTED THAT VIOXX CAUSES PLAQUE RUPTURE; THEREFORE, MERCK'S ADMISSIONS PRECLUDE ITS *DAUBERT* CHALLENGE.

### 1. Rule 801 Renders Merck's Admissions Free from Rule 702's Requirements.

In the Advisory Committee Note to FED. R. EVID. 801, the Committee states that "no guarantee of trustworthiness is required in the case of an admission." The Committee explained:

> The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

Thus, if this Court finds statements to be Merck's admissions, no *Daubert* challenge is permitted. Under Rule 801(d)(2), an admission can include any of the following: (1) the party's own statement in either an individual or a representative capacity or 2) *a statement of which the party has manifested an adoption or belief in its truth*, or (3) a statement by a person authorized by the party

---

*Patients with Acute Coronary Syndromes*, CHEST 2004; 125:1610-1615.

to make a statement concerning the subject, or (4) *a statement by the party's agent or servant concerning a matter within the scope of the agency or employment*, made during the existence of the relationship, or (5) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.  Thus, statements adopted by Merck or in which it manifested its belief – for example, by withdrawing a very profitable drug from the market – or those made by its Scientific Advisory Committee[22] or those made in articles it funded or in emails by its employees are admissible when offered by Plaintiff, but not Defendant, because they are admissions immune from *Daubert* scrutiny because of their independent indicia of trustworthiness.

## 2. Merck's Admissions That Vioxx Causes or Accelerates Atherosclerosis and Causes Plaque Rupture.

### (i) Merck's Board of Scientific Advisors

As early as May 3, 1998, Merck's Board of Scientific Advisors (including Dr. Garrett Fitzgerald, M.D.) met and discussed "progression of atherosclerosis as a potential hypothesis that would occur due to Vioxx's inhibition of Cox-2."[23]

At Bates No. MRK-AE10002736-38, the Board states:

Cardiovascular Pathophysiology: The Board addressed the potential for either benefits or adverse consequences of selective inhibition of COX-2 on coronary heart disease. The possible effects of COX-2 inhibition on three separate components of the process leading to coronary ischemic events were considered.  These are:

1. The development of lipid-rich coronary plaques

2. The destabilization of the cap of these plaques by inflammatory cells, making them "rupture prone," and

---

[22] Statements made by consultants are admissions.  *See Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980).
[23] Exhibit D.

3.    The thrombotic occlusion of the vessel at the site of plaque rupture with ensuing consequences of ischemia.

### *The Development of Lipid-rich Coronary Plaques*:

The formation of foam cells is central to the process of atherogenesis. The development of foam cells is modulated at numerous steps, known and unknown, including adherence of the monocyte precursor to the vessel wall, its migration into the vessel wall, and the uptake, export, and peroxidation of lipids that occur during the process of differentiation into a lipid-laden foam cell. This process involves an inflammatory cell type that is the prototype for regulation of COX-2. There is a growing body of evidence indicating that inflammatory disease is a risk factor for myocardial infarction, and such inflammatory processes almost certainly are accompanied by the release of cytokines that affect cells in the monocytic series in general, and COX-2 expression in particular. *Accordingly, it is appropriate to ask whether COX-2 expression in monocyte-macrophage-foam cell development regulates the progression of the atherosclerosis that accompanies dyslipidemias, either positively or negatively. If this were the case, then inhibition of COX-2 might be expected to alter the process of plaque formation.*

### *Destabilization of the Cap of an Atheromatous Plaque:*

*[A]s the critical cells in this process are inflammatory cells, the possibility exists that the products of COX-2 could regulate thinning of the cap of plaques and render them rupture-prone.*

### *Events Following Plaque Rupture:*

After the rupture of a coronary plaque, factors which regulate thrombus formation and which regulate the occurrence of ischemic ventricular fibrillation are critical to the clinical outcome. The initial thrombus at the site of plaque-rupture is platelet-rich and is labile. Accordingly, it is susceptible to any anti-aggregatory influences, as is illustrated by the effectiveness of GPIIb-IIIa antagonist. Prostacyclin is the most potent endogenous inhibitor of platelet aggregation, and studies in animal models indicate that its participation in inhibiting platelet activation is substantial. This is further supported by the thrombotic events occurring in the IP receptor knockout mouse. . . .

One hypothesis would be that the excretion of the prostacyclin metabolite 2.3-dinor-6-keto-PGFa, does not reflect systemic/vascular prostacyclin biosynthesis. *An alternative hypothesis is that prostacyclin biosynthesis in the vasculature is inhibited by Vioxx (without blocking production of thromboxane A, by the platelet). By removing this potent inhibitor of platelet aggregation, the probability that a*

16

*coronary plaque rupture would lead to myocardial infarction or ischemic ventricular fibrillation is enhanced*. . . .[24]

### (ii)    The APPROVe Study

While Merck now claims the FitzGerald hypothesis is "speculative and remains unproven," that was not its position in company-sponsored meetings, FDA filings and published medical literature. In fact, it is undisputed and the Court can take judicial notice that Merck relied upon the APPROVe study in removing Vioxx from the market. Sacrificing billions of dollars in Vioxx sales is a pretty strong manifestation of Rule 801's "belief in its truth."

In the Merck-sponsored 2005 New England Journal of Medicine article publishing the results of the APPROVe study, Merck unequivocally adopted the biologic mechanism of action euphemistically referred to as "the FitzGerald hypothesis" that Vioxx causes or accelerates atherosclerosis and causes plaque rupture.

> Thromboxane A2, a major COX-1-mediated product of arachidonic acid metabolism, causes irreversible platelet aggregation, vasoconstriction, and smooth-muscle proliferation, whereas prostacyclin is an inhibitor of platelet aggregation, a vasodilator, and an inhibitor of smooth-muscle proliferation. COX-2 is the chief source of systemic prostacyclin synthesis, and *COX-2 inhibitors may increase the cardiovascular risk by* shifting the functional balance of these vasoactive eicosanoids toward the *promotion of thrombosis or atherogenesis. COX-2 inhibition combined with thromboxane-receptor antagonism may also lead to the destabilization of atheromatous plaque.*[25]

### (iii)    APPROVe and 078 Re Coronary Artery Disease Follow-Up

Because the hazards from drugs like Vioxx are particularly increased in those otherwise predisposed to thrombosis through a single mechanism with multiple effects, Dr. FitzGerald made it

---

[24] Exhibit D (emphasis added).
[25] Bresalier, Robert S., et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, N.ENG.J.MED. 2005; 352:1092-1102 at pp. 1098-1099 (footnotes omitted) (emphasis

clear that the APPROVe study patients needed to be followed to see if the excess in heart attacks or thrombotic events in the Vioxx group over the placebo group persists or will dissipate within a matter of days.[26]

In the only two clinical trials conducted by Merck which followed patients after their discontinuation of Vioxx, the results were a significant increase in cardiovascular deaths and thrombotic events. Protocol 078 found an increase in mortality in the subjects randomized to Vioxx. Of 39 deaths, 24 occurred in the Vioxx group. Of note, however, the sponsor continued to accrue data on a significant number of subjects after discontinuation of the study, i.e., 356 in the Vioxx arm and 307 in placebo. Over a median follow-up of 29 and 20 weeks respectively, 17 deaths occurred in the Vioxx arm versus only 5 in placebo. The authors do not offer other statistical analysis, although it is clearly very significant. Indeed, this is a disturbing signal, consistent with long-term toxic effects. As reported by Thal, et al. (March 2005) there was a substantial excess of cardiovascular deaths in the Vioxx group versus placebo. The fact that off drug cardiovascular mortality during the trials was increased significantly strengthens the interpretation of these events as being causes by persistent damage by Vioxx.

Both APPROVe "on drug" data and "off drug" follow up data show that Vioxx was causing coronary artery disease at an accelerated rate over the placebo group. The March 15, 2005 APPROVe "on drug" data showed cardiac events indicative of developing CAD while on Vioxx for patients in the APPROVe study.[27] These include events like stable angina or pain at rest (i.e., angina

---

added), attached as Exhibit J.

[26] FitzGerald G, Coxibs and Cardiovascular Disease, N.ENG.J.MED. 2004; 351:1709-1711, attached as Exhibit K.

[27] *See* APPROVe Trial Cardiovascular Safety Report [MRK-AFV0426355], Table 13 [MRK-AFV0426390-91], attached hereto as Exhibit L.

pectoris, coronary artery disease (CAD), coronary artery occlusion, ischemic heart disease, myocardial ischemia). There were 25 Vioxx CAD events and only 10 placebo CAD events. This shows that coronary artery disease is being accelerated in the Vioxx group over the placebo group.

APPROVe subjects were followed off drug after the termination of APPROVe and Merck has recently released the data from this study. According to Merck's analysis, there were 31 versus 15 MIs for Vioxx and placebo, respectively, for the on-drug study plus one (1) year of follow-up, a statistically significant difference (p=0.017).

"Off drug" proof of Vioxx initiating and accelerating atherosclerosis is found in the summary of tables and figures produced on May 26, 2006 that represent analyses of follow-up data of the APPROVe study. A review of the "off drug" Vioxx versus placebo CV event Table C14, which is the Summary of Confirmed APTC Endpoint by Time Interval, shows that at zero to six (0-6) months, there were 3 ½ times more Vioxx CV events compared to placebo with a relative risk of 3.74, which is statistically significant. Further, Table B7 shows an overall persistence of thrombotic events off the drug with a persistent RR of 1.64 for Vioxx over placebo. These data offer evidence that Vioxx-induced changes that occur in the coronary arteries while patients are taking the drug continue to exert clinical effects after the drug has been stopped and is consistent with the opinions as expressed by FitzGerald that continued accumulation of events is consistent with acceleration of atherosclerosis by the drug. Clearly as Dr. FitzGerald stated, if Vioxx were not causing plaque buildup, the thrombotic events would have dissipated in a few days rather than over a period of six months.

**(iv.)**   **David Rott, M.D., Jianhui Zhu, MD, PhD, Mary Susan Burnett, PhD, Yi Fu Zhou, MD, Alexandra Zalles-Ganley, BS, Jibike Ogunmakinwa, BS, Stephen Epstein, MD (J. Am. Coll. Cardiol. 2003; 41:1812-9)[28]**

<u>Abstract/Conclusions</u> (excerpts): …Our study demonstrates that selective inhibition of COX-2 in vivo increases viral load. ***The finding that inhibition of COX-2 increases atherosclerosis development*** in apoE deficient mice suggests, unexpectedly, that this enzyme exerts antiatherosclerosis activity, at least in this model. (Emphasis added.)

<u>Discussion</u> (excerpts):
(1816-1818)
…The result of the study exploring the validity of the second hypothesis we examined was also unexpected. Lesion analysis showed that ***selective COX-2 inhibition with MF-tricyclic [a Vioxx analog] increases atherosclerotic lesion area*** (Figs. 3 and 4). It should be noted that lesions in this particular model, in which apoE knockout mice were sacrificed at only 11 weeks of age and after only 3 weeks on the selective COX-2 inhibitor, were very early lesions. Therefore, our results are probably more relevant to lesion initiation.

…"Selective Cox-2 inhibition and CMV replication": Although initially surprising, upon further reflection the contrast between in vitro and in vivo COX-2 inhibition effects should have been anticipated…

…"Selective Cox-2 inhibition and atherosclerosis": The second unanticipated finding of our study was that in contrast to our hypothesis, selective COX-2 inhibition actually increased early lipid aortic accumulation in the apoE knockout mice. This raises a major conundrum: why should an anti-inflammatory drug accelerate the initiation of atherosclerosis, a disease recognized as having a major inflammatory component?

Recent studies have demonstrated a complex role for COX-2 in inflammation, in that the enzyme appears to possess not only its well-known inflammatory activity, but also anti-inflammatory properties. This latter activity resides in a previously unrecognized role of COX-2 in the resolution phase of the inflammatory response…

…Consequently, Colville-Nash and Gilroy suggested that COX-2 is pro-inflammatory early in inflammation, but facilitates inflammatory resolution later.

---

[28] Attached as Exhibit M. This work was financed in part by a grant from Merck Pharmaceuticals, and the Vioxx surrogate Cox-2 inhibitor (Tricyclic) was supplied Merck to Dr. Epstein. Under Rule 801(d)(2), it can be considered Merck's admission.

*...Potential deleterious effects of selective COX-2 inhibition on the course of atherosclerosis in humans were suggested by the demonstration in patients with rheumatoid arthritis that rofecoxib, a selective COX-2 inhibitor, was associated with a higher number of acute coronary events that occurred in patients treated with naproxen, a non-selective COX inhibitor. Moreover, a meta-analysis (with all the limitations inherent in such an analysis) of several published studies employing selective COX-2 inhibitors suggested that such treatment increased the incidence of myocardial infarction...*

*The mechanism responsible for precipitation of acute coronary events derive from plaque instability and plaque rupture.* Following rupture, the highly thrombogenic plaque core is exposed to blood within the vessel lumen, resulting in platelet aggregation, thrombus formation, and acute vascular occlusion. *Thus, any deleterious effects of selective COX-2 inhibitors on the course of atherosclerosis could involve three separate processes: 1) a proinflammatory effect that accelerates the initiation and chronic progression of the atherogenesis process, and that may induce plaque instability and rupture; 2) a procoagulant effect (induced by inhibition of COX-2 mediated expression of the highly anti-thrombotic PGI2 without concomitant reduction of COX-1 mediated expression of the highly thrombotic thromboxane A2 that precipitates an acute coronary syndrome; and 3) a pro-proliferative effect that could increase lesion size through accumulation of SMCs.*

Of additional relevance is the finding that indomethacin, a non-selective COX inhibitor, significantly reduced atherosclerosis in mice. Indomethacin is more potent inhibiting COX-1 compared with COX-2. Therefore, the data taken in their entirety, suggest that COX-1 is not proatherosclerotic and may even have a protective effect; conversely, inhibitors of COX-1 appear to protect against atherosclerosis, and selective inhibitors of COX-2 may have deleterious effects.

... In conclusion, the results of this investigation raise disturbing questions about possible adverse effects deriving from chronic use of selective COX-2 inhibitors on susceptibility to viral infection and on early atherosclerosis lesion development. However, extrapolation of our results obtained in a mouse model to humans taking COX-2 inhibitors may not necessarily be valid ...

It should be clear from these documents that Merck knew all about and reluctantly conceded the Fitzgerald hypothesis about Vioxx's atherogenetic effects. Having made such admissions, it should not be heard to question them now. Merck's motion should be denied.

21

## III.
## CONCLUSION

This Court has already ruled that the scientific methodology supporting the conclusion that Vioxx accelerates atherogenesis, including its plaque rupture stage, is reliable and meets the standards under *Daubert*. Merck's own consultant and scientist, Dr. Garrett FitzGerald, M.D., has repeatedly generated peer reviewed studies publications supporting this conclusion. There are sound and scientifically reliable studies for correctly concluding that Vioxx causes accelerated atherogenesis, which are based on recognized pathophysiology, animal studies and Merck's own clinical studies and findings. Merck has even submitted to the FDA, through human clinical trials, the data which show this progression. Plaintiff's experts' outstanding qualifications are more than sufficient to permit them to qualify to testify regarding the aforementioned issues in this litigation. For these reasons, Plaintiff respectfully requests that this Court deny Merck's Motion to Exclude Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture.

Dated:  October 3, 2006

Respectfully submitted,

_____
Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, McCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF**
**CHARLES LARON MASON**

| | |
|---|---|
| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 3rd day of October, 2006.

_____
Holly M. Wheeler