IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>Case No. 2:06cv810<br><br>CHARLES LARON MASON v.<br>MERCK & CO., INC. | MDL DOCKET NO. 1657<br><br>Section L<br><br><br>Judge Fallon<br>Mag. Judge Knowles |

**OPPOSITION OF PLAINTIFF CHARLES LARON MASON TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OR ARGUMENT THAT MERCK (1) SHOULD OR COULD HAVE UNILATERALLY CHANGED THE VIOXX LABEL TO INCLUDE THE VIGOR DATA; OR (2) "DRAGGED ITS FEET "TO PREVENT THE VIGOR DATA FROM BEING ADDED TO THE VIOXX LABEL**

(Plaintiff's Opposition to Defendant's Motion in Limine No. 4)

**TO THE HONORABLE JUDGE ELDON E. FALLON:**

Plaintiff Charles Laron Mason, by and through his undersigned counsel, asks this court to deny Defendant Merck & Co., Inc.'s Motion to Exclude relating to evidence that Merck (1) should or could have unilaterally changed the Vioxx label to include the so-called VIGOR data; or (2) "dragged its feet" to prevent the VIGOR data from being added to the Vioxx label. In support thereof, Plaintiff would show as follows:

## I.
## INTRODUCTION

Merck asks the Court to exclude evidence responsive to Merck's consistent argument that it would have been illegal for Merck to add a warning about the known cardiovascular risks associated with Vioxx use to the original Vioxx label without prior FDA approval because this is a "post-

1

VIGOR label case."[1] The Court denied Merck's motion on this issue in the *Smith* case, indicating "this is a question of fact"[2] and permitted the plaintiff to present such evidence at trial. For the reasons discussed below, the Court should do the same in this case.

While in prior trials the focus of Merck's argument has been the VIGOR data, the data the initial label change was specifically made to reflect, Plaintiff's motion is not confined to such data. Instead, it deals with the underlying legal issue. Moreover, nothing in Merck's motion here should be read to affect Plaintiff's ability to respond to such a "legal" argument or prevent this Court from granting Plaintiff's motion to prohibit Merck from misrepresenting FDA regulations to a jury.

Placed in its proper context, Merck's motion should be read as addressing only specific evidence that Merck should have added the information confirmed by the VIGOR data to the Vioxx label but delayed including it. The admissibility and relevance of such evidence has already been discussed in detail in Plaintiff's Opposition to Defendant's Motion to Exclude (1) Evidence of Motive and (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of Employees, filed in this case contemporaneously with this document and incorporated herein for all purposes.

First, Merck's motion is based on the flawed assumption that *any* mention of the VIGOR results in a label, no matter how inadequate or misleading, somehow ended its "footdragging" or obligation to strengthen its label. It did not. Second, such evidence is admissible to show Merck's routine practice of failing to disclose or downplaying the cardiovascular risks associated with Vioxx at every turn. Either way, Merck's motion should be denied.

---

[1] *See* Plaintiff's Motion to Exclude or, in the Alternative, Motion in Limine Concerning Defendant's Argument That it Was Prohibited by FDA Regulations from Making Label Changes Without Prior Approval, filed September 27, 2006, and incorporated herein by reference.
[2] *See* Order, *Smith v. Merck & Co., Inc.* (Sept. 6, 2006) (Rec. Doc. 6721).

2

## II.
## DISCUSSION

A.     **MERCK DID NOT ADEQUATELY WARN OF VIOXX'S CARDIOVASCULAR EFFECTS IN ANY LABEL; THEREFORE, EVIDENCE OF MERCK'S ATTEMPTS TO WITHHOLD AND/OR MISREPRESENT SUCH INFORMATION ARE RELEVANT TO PLAINTIFF'S CLAIMS**

Merck's motion's underlying assumption is that its calculated attempt to withhold from patients and their doctors Vioxx's dangers somehow ended when *some* reference to the so-called VIGOR test results were finally included in the warning label and that anyone who used Vioxx thereafter was adequately warned of such dangers. If Merck succeeds in having this Court adopt such an argument without examining it too carefully, Merck apparently hopes to deal a fatal blow to all post-label change cases, including the one filed by Mr. Mason.

Merck's assumptions are not well-founded or, at the very least, are fact issues for the jury. As Mr. Mason's prescriber has testified, Merck's labeling was still inadequate even when Mr. Mason used Vioxx because Merck never fully or accurately apprised doctors or their patients of the VIGOR results or Vioxx's cardiovascular effects until the day it was pulled off the market. Thus, even after Merck finally included some mention of Vioxx's cardiovascular effects in its label, Merck so badly misrepresented those effects that practitioners could not accurately assess whether the drug was appropriate for use with their patients. For example, even after the label change, a practitioner reading the label would have been told that the potential cardiovascular problem was only a concern in patients "with a medical history of ischemic heart disease" when the VIGOR data actually showed *all* patients were at risk. In short, even after Merck changed its label, it continued to "drag its feet" on including *accurate and complete* warnings of Vioxx's cardiovascular risks. Merck had a duty to accurately and completely warn doctors of Vioxx's risks, which it breached.

B.     **THE EVIDENCE IS RELEVANT TO SHOW MERCK'S ROUTINE PRACTICE OF WITHHOLDING OR MISREPRESENTING INFORMATION REGARDING THE CARDIOVASCULAR RISKS OF VIOXX.**

The evidence will show that, from the first day it considered marketing Vioxx, Merck's strategy and practice was to ignore, minimize or "spin" the cardiovascular risk to gain and preserve market share and avoid losses related to stronger warnings. Despite having clear notice of a potentially serious risk from Vioxx as early as 1998 Merck and its marketing department, which conducted many of the studies, (1) designed those studies to obscure a cardiovascular risk, (2) failed to disclose other studies that showed the risk, and (3) refused to do a specific study to analyze the cardiovascular risk until it was effectively force to do the so-called VIGOR study.

Once they got the VIGOR results, Merck consistently downplayed the risk, even in its revised label, concocted the "naproxen" alibi (that the drug against which Vioxx was compared was allegedly *cardioprotective* and this such qualities accounted for the difference in heart attack risks), misrepresented the results, withheld data (which the New England Journal has criticized them for), again refused to do an additional cardiovascular study, and dragged their feet as long as they could before issuing a new label which did not include a complete and accurate warning about such risks. At every turn then, Merck always tried to withhold, minimize or misrepresent the cardiovascular risk, from rushing the drug to market all the way to product withdrawal.

Plaintiffs believe that such conduct constitutes a continuing tort. If, however, Merck is permitted to portray each instance of its conduct as discrete and separable, Plaintiff should, under FED. R. EVID. 406, be permitted to show each discrete instance is part of Merck's routine practice in dealing with Vioxx.

4

Rule 406 permits a party to show that a corporation such as Merck engaged in a routine practice and that "[t]he conduct of that organization on a particular occasion was in conformity with the habit or routine practice." The comments to Rule 406 note that:

> ***Courts admit routine organizational practice fairly liberally, noting that there is significant probative value in the routinized aspects of organizational activity.*** *See, e.g., Rosenburg v. Lincoln Am. Life Ins. Co.*, 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence that an insurance company waived certain standard conditions when issuing a policy was admissible as evidence of routine practice). However, in order to invoke the more liberal admissibility requirements attendant to organizational activity, the proponent must at least show that ***the activity is that of a structured organization***; a loose-knit, ad hoc alliance of individuals does not give rise to the same inference of consistent, routinized activity. *See, e.g., United States v. Rangel-Arreola, 991 F.2d 1519, 1524 (10th Cir. 1993)* (evidence that it was common practice for truck drivers to accept jobs without checking the fuel tanks was properly excluded; 406 was not applicable because the loose-knit group of freelance truck drivers did not form a cohesive organization with a structure and routinized practice).

(Emphasis added). On this ground, Plaintiff should be permitted to introduce the evidence Merck seeks to exclude on the ground that it represents Merck's routine practice with regard to Vioxx and is relevant to show that Merck acted in precisely the same manner even after it made its label change to add some mention of the VIGOR study.

For these reasons, and for the reasons set forth in Plaintiff's Motion To Exclude Or, In The Alternative, Motion In Limine Concerning Defendant's Argument That It Was Prohibited By FDA Regulations From Making Label Changes Without Prior Approval, which Plaintiff incorporates herein, evidence relating to Merck's actions with regard to the VIGOR data through its labeling are relevant to and probative of Plaintiff's claims.

### III.
### CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Exclude relating to evidence that Merck (1) should or could have unilaterally changed the Vioxx label to include the so-

called VIGOR data; or (2) "dragged its feet" to prevent the VIGOR data from being added to the Vioxx label.

Dated: October 4, 2006                    Respectfully submitted,

*/s/ H. Wheeler*

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF
CHARLES LARON MASON**

| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
|---|---|
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA 70013<br>PH: (504) 581-4892<br>FAX: (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA 70013<br>PH: (504) 581-4892<br>FAX: (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 4th day of October, 2006.

_____
Holly M. Wheeler