## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Vioxx** | **MDL DOCKET NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | |
| | Section L |
| THIS DOCUMENT RELATES TO: | |
| Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v. | Mag. Judge Knowles |
| MERCK & CO., INC. | |

---

### OPPOSITION OF PLAINTIFF CHARLES LARON MASON TO DEFENDANT'S OMNIBUS MOTION FOR ORDER EXCLUDING EVIDENCE AND TESTIMONY ADDRESSED IN MOTIONS PREVIOUSLY GRANTED BY THE COURT

### (Defendant's Motion in Limine No. 6)

---

**TO THE HONORABLE JUDGE ELDON FALLON:**

Plaintiff Charles Laron Mason, by and through his undersigned counsel, asks this Court to deny Defendant, Merck & Co., Inc.'s Omnibus Motion For Order Excluding Evidence And Testimony Addressed In Motions Previously Granted By The Court.

## I.
## INTRODUCTION

Merck's attempt to exclude broad categories of evidence in this case is inappropriate. Merck has essentially requested that the Court exclude any and all relevant evidence that even contradicts the theories of Merck's defense. This is not the purpose of the motion to exclude or in limine. *See United States v. Feola*, 651 F.Supp. 1068, 1129 (S.D.N.Y. 1987) ("it would be improper for this court to speculate as to the circumstances that might surround the introduction of this evidence at trial, specifically, the adequacy of the foundation . . . the probative value

weighed against the potential prejudicial impact in light of the evidence presented, and the purpose for which such a statement will be introduced at the time."), *aff'd*, 875 F.2d 857 (2nd Cir. 1989).

The Fifth Circuit has noted: "[w]hen evidence is challenged solely on the ground that it is irrelevant, it is inadmissible only if it fails to meet the definition of Rule 401 – it must be without probative value as to *any* fact of consequence to the determination of the action.  If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402." *See Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 599 (E.D.La. 1993) (quoting *Lubbock Feed lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 167 (5th Cir. 1980) (emphasis in original). Thus, Merck must establish that the evidence it seeks to have be excluded on relevancy grounds is *not* relevant to *any* issue in the case, not simply the issues it thinks are important. It has not done so.

## II.
## DISCUSSION

**A.    COMMUNICATIONS BETWEEN MERCK AND THE FDA IN 2005 AND/OR BLACK BOX WARNING**

Although the Court granted Merck's motion on this issue, the Court indicated that it would "revisit if the issue of ability to reintroduce w/ black box comes up."[1]  At a minimum, Plaintiff asks that the Court consider revisiting the issue during trial.  Merck has consistently opened the door to such evidence by arguing that the FDA has concluded that all NSAIDs are equal from a cardiovascular risk standpoint and that various doctors, scientists and FDA representatives have suggested that Vioxx is safe enough to be reintroduced to the market.  If Merck presents such evidence or testimony to that effect at trial, Plaintiff should be entitled to

---

[1] Order, *Smith v. Merck & Co., Inc.* (Sept. 6, 2006) (Rec. Doc. 6721).

present evidence that Vioxx could *not* be placed back on the market *without* a black box warning and should be able to show the jury what a black box warning looks like.

1.    BACKGROUND

In February 2005, the FDA held an Advisory Committee meeting to discuss COX-2 inhibitors.  The conclusions of the Advisory Committee were memorialized in the FDA's April 6, 2005 Memorandum, which is the subject of a motion in limine.  In prior trials, Merck has relied heavily on the April 6th FDA Memo.  In that memo, the FDA recommended that "the professional labeling (package insert) for all prescription NSAIDs, including both COX-2 selective and non-selective drugs, be revised to include a boxed warning highlighting the potential increased risk of CV events."[2]  In response to the Advisory Committee's finding, Merck prepared and presented a "Type A Meeting Background Package" (Pl.'s Ex. 1.1031, 1.1220) that it now seeks to exclude.  In these documents, Merck offered that "[a] black box is proposed to convey the results of the APPROVe study" and proposed the following labeling language to the FDA: "Use of selective COX-2 inhibitors has been associated with an increased risk of serious cardiovascular thrombotic events."  *See* Pl.'s Ex. 1.1031 at MRK-18940096278 and MRK-18940096282.

2.    **Evidence is Not Excludable as a Subsequent Remedial Measure**

Merck seeks to exclude these documents as a subsequent remedial measure under FED. R. EVID. 407.  The Court should deny Merck's motion because the documents it seeks to exclude do not represent a subsequent remedial measure. It is undisputed that the Merck withdrew the drug

---

[2] *See* FDA Memo at 13-14, attached to Defendant's Motion as Exhibit "A".

from the market in 2004.  The evidence Merck seeks to exclude is not a remedial measure, but rather a *proposal* to the FDA in an attempt to reintroduce Vioxx to the market.

Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The rule is based on the theory of "encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."  Advisory Committee Note, FED. R. EVID. 407.  Rule 407 is intended to apply in situations in which subsequent remedial measures were actually taken.  In this case, there has been no remedial measure, but rather a proposal to the FDA in an attempt to reintroduce Vioxx to the market.  Under these circumstances, the documents are not excludable as a subsequent remedial measure.  The documents are also admissible for impeachment purposes under FED. R. EVID. 407.

### 3.   Evidence is Relevant under Federal Rule of Evidence 403

Evidence of Merck's communications with the FDA should not be excluded under Federal Rule of Evidence 403.  Merck contends that the probative value of this evidence is outweighed by its prejudicial nature.  As the court in *National Railroad Passenger Corp. (Amtrak) v. Transwood Inc.,* 2001 W.L. 986868 (E.D. LA August 27, 2001), explained: "The Fifth Circuit has explained that all probative evidence is by its very nature prejudicial."  See *United States v. Bermea,* 30 F.3rd 1539, 1562 (5th Cir. 1994).  As a result, evidence "should be excluded 'sparingly' and only in those circumstances where the prejudicial effect substantially

outweighs the probative value." *United States v. Powers,* 168 F.3rd 741, 749 (5th Cir. 1999); *United States v. Leahy,* 82 F.3rd 634, 637 (5th Cir. 1996).

The issue in this motion is whether evidence of the Merck's communications with the FDA regarding a warning label is substantially outweighed by the damage of unfair prejudice or confusion. Federal Rule of Evidence 403 "does not exclude evidence because it is strongly persuasive or compellingly relevant...The truth may hurt, but Rule 403 does not make it inadmissible on that account." *In re: Air Crash Disaster,* 86 F3d 498, 538 (6th Cir. 1996).

While Merck argues that the information was not available to it at the time Mr. Mason took Vioxx, the issue of how much information Merck had and the type of warning it should have issued are contested factual matters in this case. Plaintiff contends that Merck had enough information for years to issue the type of strong warning that ultimately it was later forced to recognize was appropriate. It is for the jury to decide whether Merck did or did not have sufficient information to issue a stronger warning, but this evidence tends to support Plaintiff's claim and is therefore admissible.

**B.   THE FRIES LETTER AND RELATED EVIDENCE**

Merck seeks to exclude in its entirety a letter from Dr. James Fries ("Fries Letter").[3] In *Smith,* the Court reserved its ruling on this issue, indicating that the Fries Letter "might be

---

[3] As the Court is aware, Dr. James Fries is a California physician and professor at Stanford University's School of Medicine. The letter at issue was written by Dr. Fries to then Merck CEO, Raymond Gilmartin. *See* P. 1.0179, attached as Exhibit A. Dr. Fries complains that Merck failed to disclose to doctors Vioxx safety data and had attacked academics, including Dr. Fries himself, who questioned the drug's safety. *See id.* at 4. In addition, Dr. Fries also relates his first hand experience with a Merck employee, Dr. Louis Sherwood, during which Dr. Fries himself felt threatened and intimidated. *See id.* at 1-3. Additionally, Dr. Fries reported the results of his own personal investigation into Merck's conduct. *See id.*

admissible to show action or habit."[4]  Merck contends in its chart of prior rulings that the Court "again excluded the Fries Letter from evidence at trial."  (Merck's Motion at 2).  This is not an accurate statement.  In fact, the plaintiff in *Smith* did *not* offer the Fries letter at trial.  This is not the only time in Merck's Motion that is misrepresents the previous rulings of the Court.

Merck objects to the Fries Letters on hearsay, relevance and Rule 403 grounds.

1.    **The Fries Letter Should Be Admitted Because Any Alleged Hearsay It Contains is Subject to Recognized Exceptions or is Not Hearsay.**

Hearsay concerns out-of-court statements, not out-of-court actions.  Thus, Dr. Fries' own complaints about Merck's actions and his own investigation of its conduct cannot constitute hearsay.

Similarly, Dr. Fries' statements concerning his encounter with Dr. Sherwood cannot be excluded on hearsay grounds because Dr. Sherwood is a Merck employee.  As such, his statements are considered admissions of Merck under Rule 801(d)(2).  Moreover, such statements are not offered for their truth but only to demonstrate how they made Dr. Fries and other physicians feel.  *See* FED. R. EVID. 801(c).  Thus, even idle threats are admissible to show their impact on Dr. Fries.  *See United States v. Tinsley*, 172 Fed. Appx. 431, 441; 2006 U.S. App. LEXIS 7571 (3d Cir., Jan. 31, 2006) ("evidence of the purported threats was not hearsay"); *United States v. Saada*, 212 F.3d 210 (3d Cir. 2000).  The Court explained: "The testimony was not offered to establish the truth of any threat of harm, but to establish the threat was made. . ."

In the alternative, if the Court finds that the letter contains hearsay, Plaintiff submits that the letter is admissible under the business record exception to the hearsay rule.  FED. R. EVID. 803(6).  Under 803(6), records of regularly conducted activity such as reports or letters are

---

[4] Order, *Smith v. Merck & Co., Inc.* (Sept. 6, 2006) (Rec. Doc. 6721).

admissible if: (1) the memorandum or report is made at or near the time the information was transmitted; (2) by a person with knowledge; (3) if kept in the regular course of business; and 4) it was the regular practice of the business activity to make such a letter.

The letter was written at or near the time of observation, by a person with actual knowledge. Clearly, Dr. Fries had personal knowledge of the information contained in the letter; indeed, the information contained in the letter was obtained as a result of his own personal investigation. Plaintiff assumes that Dr. Fries kept the letter in his ordinary course of business. The letter was written on the Stanford School of Medicine letterhead and, as such, bears the indicia of correspondence regularly written and maintained in the academic, medical community. Merck does not dispute that deans, department heads, and noted physicians from medical schools correspond with drug companies all the time.

Whether evidence is admissible under rule 803(6) is "chiefly a matter of trustworthiness." *Mississippi River Grain Elevator, Inc. v. Bartlett & Co. Grain*, 659 F.2d 1314, 1319 (5th Cir. 1981); *see also United States v. Morrow*, 177 F.3d 272, 295 (5th Cir.)(per curiam), *cert. denied*, 120 S.Ct. 333 (1999); *United States v. Box*, 50 F.3d 345, 355-356 (5th Cir. 1995); *United States v. Veytia-Bravo*, 603 F.2d 1187, 1188-1189 (5th Cir. 1979), *cert. denied*, 100 S.Ct. 686 (1980). Plainly, the letter is trustworthy, comes from a credible source, and was not written in anticipation of litigation. Indeed, in support of its claims that the Fries letter is confidential, Merck has previously submitted an affidavit from Dr. Fries that attested to the fact that he wrote the letter with the intention that Merck would be on notice of his concerns and respond accordingly.

2.      <u>The Fries Letter is Relevant</u>

As this Court has already recognized, the Fries Letter may be relevant to showing action or habit by Merck.   More specifically, the Fries Letter demonstrates Merck's pattern of "neutralizing" and intimidating members of the scientific and medical community who were not echoing Merck's messages about the safety and efficacy of Vioxx.   As such, the Fries Letter is very relevant to the issues in this case.

Merck claims that the Fries Letter is irrelevant if offered to show that Merck "attacked" certain members of the scientific community.   In making this argument, Merck fails to disclose the full nature of the documents.   First, the Fries Letter is a four-page document which makes no mention of "attacks" by Merck employees until the last page.   The letter is primarily devoted to alerting Merck of the serious concerns Dr. Fries and other notable research physicians have about the company's disclosure of Vioxx clinical data.   The letter gives specific examples regarding the lack of information Merck has provided about the safety of Vioxx following the VIGOR study and explains that several investigators and speakers have felt harassed by Merck employees when they raised safety concerns with respect to the drug.

The question is whether Merck had a duty to warn people like Mr. Mason and his Vioxx prescriber, whether Merck knew the safety information was not reaching its target audience and whether Merck directly or indirectly placed misinformation about the risks associated with Vioxx into the marketplace.   With respect to failure to warn, the duty arises when the Defendant knew or should have known of the need to issue a warning. *See GIIR Energy Corp. v. Carboline Co.*, 744 F. Supp. 1405, 1407 (E.D. La. 1990).   To establish duty to warn, the plaintiff must prove a manufacturer had knowledge of the harmful and dangerous nature of the drug. *See id.*

8

Plaintiff anticipates Merck will defend this case by arguing it fully discharged its duty to warn. As such, Plaintiff should be permitted to offer evidence showing that Merck was on notice that members of the medical community thought Merck was failing to disclose safety data related to Vioxx and that the safety data was not reaching the people who needed it to make informed prescribing decisions.

The Fries Letter demonstrates that Merck was on notice of Vioxx's dangers and had established a pattern of "neutralizing" and intimidating persons who questioned the safety of VIoxx.  The letter is relevant, fits within recognized exceptions to the hearsay rule, and should be admitted into evidence.

### 3. The Fries Letter Will Not Cause Unfair Prejudice, Jury Confusion, or Undue Delay.

The Fries Letter is not unduly prejudicial under Rule 403.  Evidence is unduly prejudicial only when "its probative value is *substantially* outweighed by the danger of unfair prejudice." *U.S. v. Delgado*, 903 F.2d 1495, 1503-04 (11th Cir. 1990); *see also U.S. v. Cerullo*, 435 F.2d 142, 143 (5th Cir. 1970).  "'Unfair prejudice' cannot be simplistically defined as evidence having adverse effects on a party's case; rather, it is an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *See Cauchon v. United States*, 824 F.2d 908, 914 (11th Cir. 1987) (citations omitted); *see also Delgado*, 903 F2d at 1504. The letter's probative value is not outweighed by the danger of unfair prejudice.  Moreover, "Rule 403 rulings are best made at the time of trial when the Court may balance relevant factors before it." *Minshew v. Brown*, NO. 95-2507, 1996 WL 601436 (E.D. La. 1996) (Fallon, J.).

C.   **EVIDENCE OF MOTIVE AND EVIDENCE RELATING TO ASSETS AND PROFITABILITY OF MERCK OR COMPENSATION AND FINANCIAL DECISIONS OF ITS EMPLOYEES**

Merck again misrepresents the Court's ruling on this issue in the *Smith* case when Merck suggests the Court excluded such evidence at trial.  (Merck Motion at 2, 6).  In fact, the section of the trial transcript cited by Merck in support of this statement does not concern this issue at all.  Rather, at that point in the *Smith* trial, plaintiff's counsel was cross examining Briggs Morrison about Merck's 1998 Annual Report.[5]  Counsel simply asked Briggs Morrison whether he had stock options in order to establish that, as a stock holder, he *received* the Annual Report.[6]  Merck's attorney argued that the Court had previously ruled that evidence about stock options was inadmissible.[7]  The Court did not make a ruling, or even comment on any prior ruling, but rather instructed plaintiff's counsel to ask Briggs Morrison whether he received the Annual Report.[8]  The Annual Report was then admitted without objection from Merck.[9]

The Court also allowed Briggs Morrison to testify about Vioxx profit forecasts, over Merck's objection, stating that such information "is always relevant."[10]  Alise Reicin was allowed to testify about Merck's long-range operating plans for Vioxx which predicted that Merck would lose $500 million a year if Vioxx contained a cardiovascular risk warning.[11]  The Court admitted Merck 2001 and 2003 Long-Range Operating Plans into evidence.[12]  Merck's attempts to have this Court issue a definitive ruling to exclude all evidence of financial motive

---

[5] *See* Sept. 13, 2006 *Smith v. Merck & Co., Inc*. Trial Transcript, 610:25-612:14.
[6] *See id.*
[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See id.* at 702:25-705:23.
[11] *See* Sept. 21, 2006 *Smith v. Merck & Co., Inc*. Trial Transcript, 2333:2-2336:24.
[12] *See id.* at 2335:10-24 (admitting P1.0166 [July 15, 2003 Long-Range Operating Plan] and P7.0200 [July 2001 Long-Range Operating Plan]).

and Merck's profitability by erroneously suggesting it has done so in the past is highly improper.

Merck apparently wants to have it both ways. It want to tell the jury that its motive for putting Vioxx on the market was to help the public, while attempting to withhold from the jury evidence that it fought a cardiovascular risk warning because the negative effect the warning would have on its profits. This evidence is essential to show the reasons for Merck's actions and inactions. On this basis alone, it should be admitted.

The financial information Merck seeks to exclude is also critical to the jury's assessment of Merck's credibility. Merck will argue that the evidence will reveal a company that acted reasonably and promptly with patient safety first and foremost amongst its concerns at all times. Evidence of the personal financial incentives of Merck employees as they made critical safety and marketing decisions, evidence of the profit incentive for the company as it chose between safety studies, and evidence of the financial pressures Merck faced during the time that it made these critical decisions, is without question admissible. Such evidence bears directly on the credibility of Merck's interpretation of the evidence and the testimony of its witnesses.

Merck's alternative argument that this evidence should be excluded under Rule 403 should also be rejected. Just because the evidence is damaging or prejudicial to Merck does not mean such evidence should be excluded. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). Instead, any prejudice must be "unfair" or undue. *Dollar v. Long Mfg, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest (a) decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee on Proposed Federal Rules of Evidence, Rule 403 at 102.

In relevant part, Federal Rule of Evidence 403 directs that relevant evidence is

inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. FED. R. EVID. 403. The careful use of "substantially" demonstrates the emphasis placed on this balancing test. "Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence" *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994). Moreover, slight prejudice is insufficient to warrant granting a motion *in limine* or to exclude. *Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983) (quoting, *United States v. Hearod*, 499 F.2d 1003 (5th Cir. 1974)). Moreover, as this Court has noted, "Rule 403 rulings are best made at the time of trial when the Court may balance relevant factors before it." *Minshew v. Brown*, NO. 95-2507, 1996 WL 601436 (E.D. La. 1996) (Fallon, J.); *see Hines v. Consol. R. R. Corp.*, 926 F.2d 262, 274 (3rd Cir. 1991).

Evidence of the financial incentives that Merck executives had to maximize sales at the expense of patient safety is not unfairly prejudicial. Such evidence will give the jury necessary context and insight as they evaluate the credibility of Merck's employees as well as the validity of Plaintiff's claims and Merck's defenses. Lastly, such evidence is not cumulative but helpful in giving the jury a clear picture of the decision making process relating to Vioxx, specifically, the market and profit forces and pressures that were impacting Merck's decisions not to inform physicians and patients about the potentially harmful side effects associated with Vioxx.

## D.      **Merck's Incorporated Arguments.**

Merck incorporates a number of its prior motions into its omnibus motion. As such, Plaintiff incorporates by reference the oppositions filed by the plaintiffs in *Plunkett*, *Barnett* and *Smith* to the following Merck motions:

- Motions to Exclude (1) Evidence of Motive And (2) Evidence Relating to the Assets and Profitability of Merck or to the Compensation and Financial Decisions of its Employees;

- Motions to Exclude Communications Between Merck and the FDA in 2005 About the Potential Reintroduction of Vioxx to the Market and/or Any Proposed Black Box Warning; and

- Motion for Order Excluding the Fries Letter (*Barnett*); Motion to Exclude Evidence or Argument Pertaining to Conduct with No Nexus to Issues Being Tried in This Case (*Plunkett*); Omnibus Motion to Exclude Evidence and Testimony on Issues Previously Addressed by the Court (*Smith*).

**III.**
**CONCLUSION**

For these reasons, Plaintiff respectfully requests that Merck's Omnibus Motion For Order Excluding Evidence And Testimony Addressed In Motions Previously Granted By The Court be denied.

Dated:  October 4, 2006

Respectfully submitted,

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN: 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF**
**CHARLES LARON MASON**

| Andy D. Birchfield, Esq.<br>P. O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Christopher Seeger, Esq.<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| --- | --- |
| Leonard Davis<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 | Russ M. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA  70013<br>PH:  (504) 581-4892<br>FAX:  (504) 561-6024 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 4th day of October, 2006.

_____

Holly M. Wheeler