UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 06-0810 | * | |
| CHARLES L. MASON, | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MISCELLANEOUS MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, <u>MOTION IN *LIMINE* AND/OR REQUEST FOR LIMITING INSTRUCTIONS</u>**

**(MOTION IN *LIMINE* NO. 1)**

Plaintiff asks the Court to exclude evidence or argument on a laundry list of topics. Much of plaintiff's motion is unnecessary and not relevant to this case, as Merck does not intend to offer evidence or make arguments related to many of the enumerated issues. As to certain other topics, Merck opposes plaintiff's request either conditionally or in full.

I.  SUMMARY OF MERCK'S POSITIONS.

For the Court's convenience, the following chart summarizes Merck's position on the 31 requests included in plaintiff's motion. Merck's responses can be categorized as follows: (i) requests that the Court should deny (designated in the chart as "deny"); (ii) evidence that Merck does not plan to introduce at trial unless plaintiff introduces such evidence, in which case Merck reserves the right to use such evidence in rebuttal ("qualified exclusion"); and (iii) requests for which Merck does not intend to offer evidence or make any argument in the compensatory phase of this trial ("not relevant").

| ¶ | Description | Merck's Position |
|---|---|---|
| A | "That a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications." | Not Relevant |
| B | "That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide." | Not Relevant |
| C | "That this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial hardship or loss of employment." | Not Relevant |
| D | "That this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining insurance." | Not Relevant |
| E | "That this case or any other Vioxx product liability case may cause an increase in the cost of purchasing medications for the public." | Not Relevant |
| F | "Health Canada's or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries." | Qualified Exclusion |
| G | "That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question." | Qualified Exclusion |
| H | "That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law." | Not Relevant |
| I | "The purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases." | Not Relevant |
| J | "That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or routinely employ contingent fee arrangements [except as they relate to any fees in this case]." | Qualified Exclusion |

| ¶ | Description | Merck's Position |
|---|---|---|
| K | "Other Vioxx cases and other cases involving Plaintiff's counsel or other drugs." | Qualified Exclusion |
| L | "That Vioxx was taken off the market due to 'media hype' caused by attorneys or the media themselves." | Not Relevant |
| M | "Unsupported hearsay statements of health care providers." | Qualified Exclusion |
| N | "That any member of the public or medical community desire that Vioxx be placed back on the market." | Deny |
| O | "The potential impact on pharmaceutical companies and/or the FDA, if any, of permitting state failure to warn claims to be asserted or of allowing a plaintiff in such a case to prevail." | Qualified Exclusion; Deny |
| P | "The fees received and/or charged by Plaintiff's experts for work in lawsuits involving drugs other than Vioxx and reference to them as 'paid litigation experts' or the like." | Qualified Exclusion |
| Q | "Plaintiff's alleged knowledge of cardiovascular risks associated with the use of Vioxx." | Deny |
| R | "That typographical errors in Dr. Moye's report indicate that it was cut and pasted from another case." | Not Relevant |
| S | "That any Plaintiffs' counsel may have advertised for persons injured by the use of Vioxx or in any other manner." | Not Relevant |
| T | "That Mr. Mason's injury is his own fault or the fault of his prescribing and/or treating physicians and nurse practitioners." | Deny |
| U | "That FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law." | Deny |
| V | "Voir dire questions that discuss the wrong legal standard and contain argument." | Deny |
| W | "Jury consultants." | Deny |
| X | "Settlement, Negotiations or the Lack Thereof." | Not Relevant |
| Y | "Stipulations." | Not Relevant |
| Z | "Motions to exclude or in limine." | Not Relevant |
| AA | "Product labeling for other drugs taken by Mr. Mason." | Deny |
| BB | "Plaintiff's prior arrests and work related incidents." | Not Relevant; Deny |
| CC | "Plaintiff's Viagra Use and Erectile Dysfunction." | Deny |
| DD | "Mr. Mason's tobacco use." | Deny |
| EE | "Testimony of Dr. Douglas Vogeler." | Deny |

## II.   MERCK'S SPECIFIC RESPONSES TO PLAINTIFF'S REQUESTS.

**A.   "That a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

**B.   "That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

**C.   "That this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial hardship or loss of employment."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

**D.   "That this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining insurance."**

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

> E. "That this case or any other Vioxx product liability case may cause an increase in the cost of purchasing medications for the public."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

> F. "Health Canada's or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries."

Merck's Response: Merck agrees that it would be inappropriate for either party to mention statements, decisions, or requirements of a foreign regulatory agency. Such evidence bears no relation to Mr. Mason's use of Vioxx®, his nurse practitioner's decision to prescribe Vioxx to him, or any of Merck's alleged conduct in this case. If, however, plaintiff improperly raises evidence of, for example, how Vioxx is labeled in other countries, then Merck should be entitled to rebut this evidence with proof of other foreign regulatory actions, such as the Health Canada statement.

> G. "That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question."

Merck's Response: Merck is willing to agree to make no comment about plaintiff's liability insurance if plaintiff will agree to refrain from making any comment about Merck's liability insurance. To the extent plaintiff's request encompasses more than just evidence of insurance, Merck opposes this request.

> H. "That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

>   I.  **"The purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases."**

<u>Merck's Response</u>:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

>   J.  **"That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or routinely employ contingent fee arrangements [except as they relate to any fees in this case]."**

<u>Merck's Response</u>:  Merck is willing to agree to make no comment about the subject matter of paragraph J if plaintiff will agree to refrain, to the same extent, from making any comment about Merck's defense counsel.

>   K.  **Other Vioxx cases and other cases involving Plaintiff's counsel or other drugs.**

<u>Merck's Response</u>:  Merck is willing to agree to make no comment about the subject matter of paragraph K if plaintiff will agree to refrain, to the same extent, from making any comment about other cases involving Merck's counsel.  Evidence other Vioxx cases and other cases involving plaintiff's counsel, Merck's counsel, or other drugs bears no relation to Mr. Mason's use of Vioxx, his prescribers' decisions to prescribe Vioxx to him, or any of Merck's alleged conduct in this case.  If, however, plaintiff improperly raises these issues, then Merck should be entitled to rebut this evidence.  An exception would be reference to other testimony of a witness, *e.g.*, for impeachment purposes or to show bias or financial motive.

>   L.  **"That Vioxx was taken off the market due to 'media hype' caused by attorneys or the media themselves."**

<u>Merck's Response</u>:  Merck does not intend to offer evidence or make any argument on this topic.

      **M.**    **"Unsupported hearsay statements of health care providers."**

<u>Merck's Response</u>:  Merck agrees that it would be inappropriate for either party to offer unsupported hearsay statements that are specifically excluded by Federal Rule of Evidence 802, although this cannot be assessed in a vacuum.  To the extent Merck seeks to introduce evidence under Federal Rule of Evidence 803(4) – an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof" – or under any other appropriate basis for admitting such evidence, such statements should be permitted by the Court.  FED. R. EVID. 803(4).

      **N.**    **"That any member of the public or medical community desire that Vioxx be placed back on the market."**

<u>Merck's Response</u>:  The Court should deny this request.  Evidence that people today want to take Vioxx even after all of the publicity that the withdrawal of Vioxx from the market has received (and that the litigation has received) is relevant to assessing the credibility of plaintiff's claim.  When assessing plaintiff's contention that he would not have taken Vioxx, the jury should not be kept in the dark about the fact that many people today would take the drug if permitted and that the FDA has conducted discussions or made recommendations that Vioxx be put back on the market.

    This evidence is also relevant if the Court allows the jury to consider without a limiting instruction the fact of withdrawal as bearing on such issues as negligence or causation.  In that case, Merck should be entitled to present evidence of public or medical support for the availability of Vioxx to counter such inferences.

> **O.     "The potential impact on pharmaceutical companies and/or the FDA, if any, of permitting state failure to warn claims to be asserted or of allowing a plaintiff in such a case to prevail."**

This request actually includes a number of requests that each merit a separate response:

**_Subsection (1)_**: "[P]ermitting state failure to warn claims, such as this one, to be asserted . . . causes or pressures drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits[.]"

Merck's Response:  Merck agrees that it would be inappropriate to mention any of the matters described in subsection (1) *unless* the Court allows plaintiff to argue that Merck's warnings for Vioxx were inadequate because Merck did not add a "black box" warning or make other label changes not approved by the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

**_Subsection (2)_**: "[P]ermitting state failure to warn claims, such as this one, to be asserted . . . undercuts the FDA's mission to provide only scientifically valid warnings[.]"

Merck's Response:  Merck agrees that it would be inappropriate to mention any of the matters described in subsection (2) *unless* the Court allows plaintiff to argue that Merck committed fraud on or misled the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

**_Subsection (3)_**: "[P]ermitting state failure to warn claims, such as this one, to be asserted . . . frustrates the FDA's protective regime[.]"

Merck's Response:  Merck agrees that that it would be inappropriate to mention any of the matters described in subsection (3) *unless* the Court allows plaintiff to argue that Merck committed fraud on or misled the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

8

***Subsection (4)***: "[P]ermitting state failure to warn claims, such as this one, to be asserted has the . . . effect[] . . . that too many warning of serious injuries will dilute the effectiveness of warnings generally."

Merck's Response:  The Court should deny this request.  Evidence of this nature is relevant to the adequacy of the warnings given about Vioxx and to the reasonableness of Merck's conduct.  Merck is prepared to offer expert testimony at trial that the FDA does not want the effectiveness of warnings in general diluted by too many warnings of every alleged risk associated with a drug.

Note that each of plaintiff's requests is contextual and Merck's response will depend, in part, on what arguments plaintiff advances at trial.

**P.     "The fees received and/or charged by Plaintiff's experts for work in lawsuits involving drugs other than Vioxx and reference to them as 'paid litigation experts' or the like."**

Merck's Response:  Merck is willing to agree to make no comment about the subject matter of paragraph P if plaintiff will agree to refrain, to the same extent, from making any comment about Merck's experts.

**Q.     "Plaintiff's alleged knowledge of cardiovascular risks associated with the use of Vioxx."**

Merck's Response:  The Court should deny this request, as it did in *Smith v. Merck*. (*See* Aug. 31, 2006 *Smith v. Merck* Tr. at 7:23-8:2.; Aug. 31, 2006 *Smith v. Merck* Order re Motions in *Limine* at 5.)  Merck agrees that Utah has adopted the learned intermediary doctrine.  *See Barson ex rel. Barson v. E.R. Squibb & Sons,* 682 P.2d 832 (Utah 1984).  However, plaintiff's knowledge of cardiovascular risks associated with the use of Vioxx is probative, among other things, of whether he was aware of any risks when he took the drug, whether he received adequate warnings directly from the manufacturer, and whether his doctor understood the risks

9

and conveyed that knowledge to him. Plaintiff's understanding of the potential cardiovascular risks goes to the heart of issues surrounding the failure to warn and fraud claims as well as Merck's defense of contributory negligence.

### R. "That typographical errors in Dr. Moye's report indicate that it was cut and pasted from another case."

Merck's Response: This is a moot point, given plaintiff's decision not to call Dr. Moye at trial. However, as a general matter, the Court should deny plaintiff's request to limit the cross-examination of plaintiff's experts on the condition and accuracy of their reports. These issues, including what plaintiff characterizes as typographical errors and printing marks, are relevant to the integrity of the experts' reports. They are also probative of the experts' trustworthiness and are a proper subject for cross-examination – as the Court recognized in *Smith v. Merck*. (*See* Aug. 31, 2006 *Smith v. Merck* Tr. at 8:8-9 ("That's argument and it's legitimate if it's used properly."); Aug. 31, 2006 *Smith v. Merck* Order re Motions in *Limine* at 5.)

### S. "That any Plaintiffs' counsel may have advertised for persons injured by the use of Vioxx or in any other manner."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

### T. "That Mr. Mason's injury is his own fault or the fault of his prescribing and/or treating physicians and nurse practitioners."

Merck's Response: The Court should deny this request, as it did in *Smith v. Merck*. (*See* Aug. 31, 2006 *Smith v. Merck* Tr. at 8:15-16 ("That's an issue that is what learned intermediary is all about."); Aug. 31, 2006 *Smith v. Merck* Order re Motions in *Limine* at 6.) Plaintiff cannot, by motion in *limine*, preclude Merck from presenting an affirmative defense at trial. Obviously, any and all acts by plaintiff or his treating physicians and nurse practitioners that could have contributed to plaintiff's alleged injury are relevant and admissible at trial. The jury will be

asked to apportion liability if it finds Merck liable.

    **U.**    **"That FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law."**

Merck's Response:  The Court should deny this request.  As plaintiff correctly points out, Merck is entitled to explain to the jury that Vioxx was approved by the FDA.  Whether or not that fact, along with other facts presented by Merck at trial, convinces the jury that Merck "met its standard of care and/or fulfilled its duty to warn" is a question that will ultimately be answered by the jury.  An order limiting the arguments that *might* be made at trial (especially since such arguments might be made in concert with other arguments) is untimely because it requires context.  It would be inappropriate at this early stage to limit, by motion in *limine*, the arguments that Merck might make based on this overbroad request by plaintiff.

    **V.**    **"Voir dire questions that discuss the wrong legal standard and contain argument."**

Merck's Response:  The Court should deny this request.  Although Merck agrees that voir dire questions may be the proper subject of the Court's review, here plaintiff's request is premature.  Presently there are no voir dire questions before the Court, so the Court cannot properly consider plaintiff's vague request at this time.

    **W.**    **"Jury consultants."**

Merck's Response:  The Court should deny this request.  Whether or not it is appropriate to reference jury consultants is contextual and cannot be decided in the abstract.  As the Court recognized in the *Barnett v. Merck* case, a party may cross-examine an expert witness on how he or she has prepared to testify and, in so doing, may inquire about jury consultants with whom the expert has met.

X.  **"Settlement, Negotiations or the Lack Thereof."**

Merck's Response:  Merck does not intend to offer evidence or make any argument on this topic.

Y.  **"Stipulations."**

Merck's Response:  Merck does not intend to offer evidence or make any argument on this topic.

Z.  **"Motions to exclude or in limine."**

Merck's Response:  Merck does not intend to offer evidence or make any argument on this topic.

AA.  **"Product labeling for other drugs taken by Mr. Mason."**

Merck's Response:  The Court should deny this request, as it did in *Smith v. Merck*. (Aug. 31, 2006 *Smith v. Merck* Tr. at 11:12 ("That may be relevant."); Aug. 31, 2006 *Smith v. Merck* Order re Motions in *Limine* at 7.)  Plaintiff must prove that Vioxx caused his alleged injury.  The warning labels accompanying any other drugs taken by plaintiff could provide evidence of confounding factors, and are therefore relevant to plaintiff's claims.

Plaintiff misstates the issue by contending that his prescribers' decision to prescribe other drugs ends the inquiry under the learned intermediary doctrine.  This is not correct.  The real issue is whether other drugs, in fact, could have contributed to plaintiff's alleged injury.  As the product warning labels for each of the drugs plaintiff was taking would provide important information about whether those drugs posed CV risks, they are highly relevant to the issue of causation and should be admitted at trial.

Warning labels on other drugs also could be relevant to contributory negligence and/or used for impeachment.  For example, Nurse Olson Fields, who prescribed both Vioxx and Celebrex to plaintiff, did not know that Celebrex had a black box label.  (*See* July 27, 2006

12

Deposition of Karen Olson-Fields, N.P. at 49:3-9; 54:13-58:16, attached hereto as Ex. A.) Because Mr. Mason has alleged that Merck withheld information from the medical community about the safety of Vioxx, the knowledge and practices of his health care providers is directly relevant to his claims. Merck is entitled to impeach Nurse Olsen-Fields with her deposition testimony.

BB.  **"Plaintiff's Prior Arrests And Work-Related Incidents."**

Mr. Mason seeks to exclude two types of evidence in this category: (i) arrests (in 1964 for assault on a police officer, and in 2000 for willful violation of a game law); and (ii) confrontations with or grievances filed by co-workers. Each category merits a separate response:

*Category (1)*: Arrests

Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

*Category (2)*: Confrontations/Grievances

Merck's Response:  The Court should deny this request. Evidence of the stressful, combative nature of Mr. Mason's job at a collections agency is directly relevant to his claims against Merck. Stress is associated with heart disease. In addition, plaintiff seeks wages that he lost because he retired early after his heart attack, which he attributes to his Vioxx use. He testified that he could no longer handle the stress and frequent threats from debtors whose vehicles he repossessed and whose homes went into foreclosure. (Deposition of Charles Mason ("Mason Dep.") at 40:24-41:23, 151:24-152:14, attached hereto as Ex. B).[1] He believed he had

---

[1] He is seeking $160,000 in lost wages because the part-time job he subsequently found paid him a lower salary. (Mason Dep. at 49:5-51:17.) In December 2003, Mr. Mason quit his job at the collections agency and found part-time work delivering flowers. He testified that before his heart attack, he had planned to retire from the collections agency in 2007. (*Id*. at 43:1-2.)

13

lost the "fire in the belly" that warned debtors they had better not carry out their threats against him. (*Id*. at 152:5.)   When asked to explain how her husband's job was stressful, Mr. Mason's wife Linda said they once had to call the police to check his truck for bombs after an anonymous caller warned him to be careful when he started the truck in the morning. (Deposition of Linda Mason at 24:4-13, attached hereto as Ex. C.)  Evidence regarding Mr. Mason's job is relevant to both his claims for damages and as a contributing factor to his heart attack.  The Court should deny his request to exclude this evidence.

      **CC.**    **"Plaintiff's Viagra Use and Erectile Dysfunction."**

Merck's Response:  The Court should deny this request.  Mr. Mason claims that his use of Viagra and Levitra in 2000 and 2001 is irrelevant because he did not take those medications at the same time he took Vioxx; he did not suffer his heart attack until July 2003; and no expert can testify that Viagra, Levitra, or erectile dysfunction "caused or contributed" to his injuries. (Pl.'s Mot. at 17.)  Mr. Mason overlooks the fact that erectile dysfunction is a marker of cardiovascular disease.  (*See* Sept. 20, 2006 Deposition of Michael Rothkopf, M.D. at 146:18-147:10, attached hereto as Ex. D.)  Therefore, its onset in 2000 indicates that he had cardiovascular disease one to two years before he first took Vioxx.  The Court should deny plaintiff's request to exclude this evidence.

      **DD.**    **"Mr. Mason's tobacco use."**

Merck's Response:  The Court should deny this request.  As this Court is aware, tobacco use is a well-known risk factor for cardiovascular disease.  Any potentially contributing factor to Mr. Mason's alleged injuries is relevant and should not be excluded.

      **EE.**    **Testimony of Dr. Douglas Vogeler**

Merck's Response:  The Court should deny this request.  Mr. Mason seeks to exclude the testimony of his own physician, Douglas Vogeler, because it destroys the very premise of his

case. Dr. Vogeler employs the nurse practitioner, Karen Olson-Fields, who prescribed Vioxx to Mr. Mason. Dr. Vogeler testified at his deposition that he knew Vioxx carried a cardiovascular risk five times greater than Naprosyn at the time Mr. Mason was taking Vioxx, and that this did not change his prescribing habits. (*See* Aug. 30, 2006 Deposition of Douglas M. Vogeler, M.D. ("Vogeler 8/30/06 Dep.") at 463:9-464:20, attached hereto as Ex. E.) In fact, Dr. Vogeler testified that: (i) he still believes Mr. Mason is an appropriate candidate for Vioxx; (ii) it was safe for his patients; and (iii) if it were still on the market he would "give it to [Mr. Mason] today." (*See* July 26, 2006 Deposition of Douglas M. Vogeler, M.D. ("Vogeler 7/26/06 Dep.") at 204:4-6, 206:9-20, attached hereto as Ex. F; Vogeler 8/30/06 Dep. at 464:21-25.) He believes it was appropriate for Nurse Olson-Fields to prescribe Vioxx to Mr. Mason. (Vogeler 7/26/06 Dep. at 205:13-17.) In fact, Dr. Vogeler took Vioxx to relieve his own pain from surgery and arthritis and found it to be effective. (*Id.* at 201:10-204:3.)

Mr. Mason has alleged that Merck withheld information from the medical community about the safety of Vioxx. As a result, the knowledge and practices of his health-care providers are directly relevant to his claims. Dr. Vogeler's testimony that he was aware of the cardiovascular risks of Vioxx directly rebuts Mr. Mason's claim of fraud. Recognizing this, Mr. Mason argues that because Dr. Vogeler was not Mr. Mason's "learned intermediary," his knowledge is irrelevant. (Pl.'s Mot. at 18.) This argument fails for several reasons. Dr. Vogeler has treated Mr. Mason for 16 years for a variety of ailments, from back pain to chest tightness. (Vogeler 7/26/06 Dep. at 9:25-10:2, 192:16-19; *see also* January 1994 Medical Records (Bates-labeled MasonC-VogelerDDr-00003-00004, 000092), attached hereto as Ex. G.) He is Nurse Olson-Fields' employer and supervises her work. (Vogeler 7/26/06 Dep. at 24:14-16.) As Mr. Mason's family physician, Dr. Vogeler saw plaintiff "a lot," and surmised that the reason she

15

treated Mr. Mason on the day she prescribed him Vioxx was that his own schedule may have been full. (Vogeler 7/26/06 Dep. at 25:22-26:7.) Dr. Vogeler testified that he and Nurse Olson-Fields discuss "significant" safety issues on a "routine" basis (*id*. at 208:3-7), such as the cardiovascular risk described in the Celebrex's black box warning (*id*. at 208:8-17). Most importantly, however, he testified that he expected her to be aware of the increased cardiovascular risk associated with Vioxx at the time she prescribed it to Mr. Mason. (Vogeler 8/30/06 Dep. at 464:2-20.)

Not only is Dr. Vogeler's testimony relevant because he was Mr. Mason's treating physician, it will be critical for the impeachment of Nurse Olson-Fields. As he testified at his deposition, he met with her and Merck sales representatives to discuss cardiovascular safety. Therefore, he is a witness to the same conversations Nurse Olson-Fields will presumably discuss when she testifies at trial. (Vogeler 8/30/06 Dep. at 264:7-265:13.)

### III.   CONCLUSION.

For the reasons stated above, the Court should deny the following of plaintiff's requests, at least in part: N, O, Q, T, U, V, W, AA, BB, CC, DD, and EE.


Dated:  October 4, 2006                                                          Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

16

Philip S. Beck
Andrew Goldman
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of Merck to Plaintiff's Miscellaneous Motion To Exclude Or, In The Alternative, Motion In *Limine* And/Or Request For Limiting Instructions has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 4th day of October, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel