Exhibit B - 6-28-06 Mason Deposition (Excerpts)

• Mason - Oppo MIL 1 (Limiting Instructions)

[1:] - [1:24]        6/28/2006    Mason, Charles (Mason)

```
page 1
    0001
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2
 3      _____
 4      In re:  VIOXX                )
                                     )
 5      PRODUCTS LIABILITY LITIGATION )
                                     ) MDL DOCKET NO. 1657
 6      This document relates to:    )
        Case No. 2:06-CV-00810       ) SECTION L
 7                                   )
        CHARLES MASON,               ) JUDGE FALLON
 8                                   )
            Plaintiff,               ) MAGISTRATE JUDGE
 9                                   )  KNOWLES
            vs.                      )
10                                   ) Deposition of:
        MERCK & CO., INC.,           ) CHARLES L. MASON
11                                   )
            Defendant.               )
12      _____
13
14                     June 28, 2006
                         9:08 a.m.
15
              Location:  Ray, Quinney & Nebeker
16            36 South State Street, Suite 1400
                    Salt Lake City, Utah
17
                  Reporter:  Rashell Garcia
         Notary Public in and for the State of Utah
19
20
21
22
23
24
25
page 2
 1                  A P P E A R A N C E S
 2
 3
```

[40:24] - [41:23]        6/28/2006    Mason, Charles (Mason)

```
page 40
20  probably.
21     Q.  Do you have any problems doing all of what's
22  required in that job?
23     A.  No.
24     Q.  Did you have any problems doing any of the
25  work as a collections manager before you retired?
page 41
 1     A.  No.
 2     Q.  Okay.  So you were never unable to perform
 3  your work as a collections manager?
 4     A.  No, I was not.
 5     Q.  And that wasn't one of the reasons you
 6  retired?
 7     A.  No, that was not the reason I retired.
 8     Q.  It had nothing to do with your health
 9  condition; true?
10     A.  It had to do with my health, yes.
11     Q.  It did?
12     A.  Yes.
```

Exhibit B - 6-28-06 Mason Deposition (Excerpts)

• **Mason - Oppo MIL 1 (Limiting Instructions)**

```
            13     Q.   And why did it have anything to do with your
            14 health?
            15     A.   Well, to be a good collection officer, or a
            16 good manager, you've got to have a certain attitude,
            17 ability to -- I hate to say it, you cannot be afraid of
            18 what you're facing there.  There is always the threat
            19 -- people are always threatening you from time to time.
            20 And I felt, and my wife, we discussed it, we felt very
            21 simply is that I didn't have the stamina to do the
            22 things that I was doing.  What I mean by that is I run
            23 out of steam long before I run out of time.
            24     Q.   Has any doctor or other health care
            25 professional ever indicated or suggested that you
            page 42
            1  couldn't perform the requirements of a collection
            2  manager?
```

[43:1] - [43:2]        6/28/2006      Mason, Charles (Mason)

```
            page 42
            22     Q.   When were you expecting to retire -- let's
            23 take you back in your mind's eye back to June of 2003.
            24 What were you expecting in terms of retirement at that
            25 point?
            page 43
            1      A.   I was planning on retiring when I turned 66,
            2  which would have been 2007.  That was subject to the
            3  fact that my wife would have been 62 in 2007, if she
            4  wanted to retire.  But due to the fact that we wanted
            5  medical insurance and required medical insurance
            6  because of our medicine and that, we felt that that
```

[49:5] - [51:17]       6/28/2006      Mason, Charles (Mason)

```
            page 49
            1  out of.
            2      Q.   Okay.  Did you ever work in Texas?
            3      A.   Never worked in Texas, never been -- been
            4  there once.
            5      Q.   And how long were you with OGIO International?
            6      A.   I worked for OGIO International from probably
            7  May of 1996 through October of 1998.
            8      Q.   And why did you leave?
            9      A.   I had an offer to go as the collection manager
            10 with the credit union, which was at more pay at the
            11 time.
            12     Q.   Okay.  And how much did you earn at OGIO?
            13     A.   I was averaging about $20,000 a year.
            14     Q.   So it was a $17,000 dollar increase when you
            15 went over to --
            16     A.   Yeah.  I went to -- it was about a $7,000
            17 dollar increase, or about a four -- I was making
            18 $24,000, so it was about a -- they put me on at $2,400
            19 a month.  So it was about a $6,000 dollar increase when
            20 I went over there, $5,000, $6,000 increase.
            21     Q.   So when you started with Utah First Credit
            22 Union, you were earning about twenty-five, $26,000
            23 dollars, and then it went up to $37,000?
            24     A.   Yes.  And then I went up to $37,000 in the six
            25 years, yes.  I got a raise every year.
            page 50
            1      Q.   And you were never fired or suspended from
            2  OGIO International?
            3      A.   No.  No.
            4      Q.   And you're now claiming lost wages in
            5  connection with this case; is that right?
            6      A.   I am, yes.
            7      Q.   Okay.  And tell me what that's made up of.
            8      A.   It's made up of bonus and wages and insurance,
            9  the costs that I would have -- I had by working with
            10 Utah First.
```

Exhibit B - 6-28-06 Mason Deposition (Excerpts)

• **Mason - Oppo MIL 1 (Limiting Instructions)**

```
11     Q.   And can you break that down for me?  What
12  wages are you --
13     A.   My wages would have been $37,000.  I was
14  averaging a thousand dollars a month bonus, and then
15  I've got a four percent 401(k) that was placed in my --
16  started out at five, but the last year, it was four
17  percent was placed into a 401(k) for me.
18     Q.   Can you break down the numbers in terms of
19  what you're claiming in each category?  And I --
20     A.   I was looking at about -- I was looking at
21  about $180,000 in wages.  I was looking at --
22     Q.   $180,000 is what you think you've lost?
23     A.   That's the wages that I would have lost, and I
24  would have had for those four years.
25     Q.   The four years up until you would have
page 51
1   retired?
2      A.   Until I would have retired.  I looked at
3   seven -- let's see, I looked at --
4      Q.   Does that include bonuses, the hundred and
5   eighty thousand?
6      A.   Pardon?
7      Q.   Does that include bonuses?
8      A.   Yes.
9      Q.   The hundred and eighty thousand?
10     A.   Right.
11     Q.   How much --
12     A.   Otherwise it's a hundred and sixty, about a
13  hundred and sixty.
14     Q.   So, $20,000 --
15     A.   Say I make $40,000 with all the way through
16  for four years, it would have been a hundred and sixty
17  thousand.
18     Q.   How much in insurance?
19     A.   Insurance, that's incalculable now that I've
20  had my heart attack.  My insurance was costing me
21  roughly about $135 dollars to $140 dollars a month.  I
```

[151:24] - [152:14]     6/28/2006    Mason, Charles (Mason)

```
page 151
20  in connection with medications?
21     A.   I rely entirely on my doctor, especially on
22  prescription medicine.  Always on prescription
23  medicine.
24     Q.   You mentioned that one of the reasons you
25  retired was because there's certain threats that can be
page 152
1   made and you're -- in the collection business.  Do you
2   recall that?
3      A.   Certain threats, yeah.  You will have
4   individuals that will make threats to you from time to
5   time.  And I always refer to it as fire in the belly is
6   to be able to look somebody in the eye -- and I believe
7   that to look them in the eye and say, okay, now do you
8   really mean to carry that out?  And if so -- and I kind
9   of lost the fire.  I didn't have the desire to go
10  through that for the next four years, especially when
11  you've taken somebody's vehicle away or you're
12  foreclosing on their home.  People react -- in fact,
13  it's become much more dangerous today than it was when
14  I started in the business in 1965.
15     Q.   In the flower delivery business that you're in
16  now, what are the specific -- what is your day like?
17  What do you specifically do?
18     A.   I drive a van.  And what I go do is deliver
```

[238:1] - [238:25]     6/28/2006    Mason, Charles (Mason)

```
page 237
     Utah, this _____ day of _____, 2006.
```

**Exhibit B - 6-28-06 Mason Deposition (Excerpts)**

• **Mason - Oppo MIL 1 (Limiting Instructions)**

```
24                  _____
                         NOTARY PUBLIC
25
page 238
1                  C E R T I F I C A T E
2
    STATE OF UTAH       )
3                       :ss
    COUNTY OF SALT LAKE )
4
5        THIS IS TO CERTIFY that the deposition of CHARLES
    L. MASON, the witness in the foregoing deposition
6   named, was taken before me, Rashell Garcia, Certified
    Shorthand Reporter and Notary Public in and for the
7   State of Utah, residing in Salt Lake City.
8        That the said witness was by me, before
    examination, duly sworn to testify the truth, the whole
9   truth, and nothing but the truth in said cause.
10       That the testimony of said witness was by me
    reported in Stenotype, and thereafter caused to be
11  transcribed into typewriting, and that a full, true,
    and correct transcription of said testimony so taken
12  and transcribed is set forth in the foregoing pages,
    numbered from 2 to 238, inclusive, and said witness
13  deposed and said as in the foregoing annexed
    deposition.
14
         I further certify that a reading copy of
15  the same was delivered to the witness for reading and
    signature, signing before a Notary Public, and
16  to be returned within 30 days of the date hereon.
17       I further certify that I am not of kin or
    otherwise associated with any of the parties to said
18  cause of action, and that I am not interested in the
    event thereof.
19
         WITNESS MY HAND and official seal at Salt Lake
20  City, Utah, this _____ day of_____,
    2006.
21
22  My Commission Expires:   _____
    12-15-2008               Rashell Garcia C.S.R.
23                           License No. 144
24
25
```