UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE<br>KNOWLES |
| CHARLES L. MASON, | * | |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * *

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S
MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, MOTION IN *LIMINE*
AND/OR REQUEST FOR LIMITING INSTRUCTIONS REGARDING
THE CAUSE OF RETA MASON HURLEY'S DEATH**

**(MOTION IN *LIMINE* NO. 9)**

Mr. Mason had a sister named Reta Mason Hurley who died in 1988 at the age of 55.  He testified at his June 2006 deposition that his sister's son told him that she had died of a heart attack, and that he had no reason to disbelieve what his nephew had told him.  (Deposition of Charles Mason ("Mason Dep.") at 69:20-70:10, attached hereto as Ex. A.)  Although Mr. Mason now attempts to downplay this information as "speculation," he stated in writing that his sister had a heart attack when he completed the "Family History" section of a medical questionnaire he provided to his doctor.  (*Id.*; Mason Dep. Ex. 3 at 3, attached hereto as Ex. B.)  His sister's death certificate lists the "immediate cause" of her death as "CORONARY ARTERY ATHEROSCLEROSIS."  It also lists "phenylpropanolamine intoxication" in a section of the

833296v.1

form asking for "other significant conditions – contributing to death, but not related to the immediate cause." (Copy of Certified Copy of Reta Mason Hurley's Death Certificate, attached hereto as Ex. C.)

As the Court knows, a person's family history of cardiovascular disease is a risk factor for that person suffering a heart attack. It indicates the possibility of a genetic predisposition to cardiovascular disease. Thus, plaintiff does not argue that his sister's medical condition is irrelevant. Instead, he seeks to exclude evidence and argument "regarding the cause of death or medical condition" of his sister – including his own sworn testimony and written statement to his doctor – on the grounds that it is speculation and hearsay. (Pl.'s Mot. at 1.) He also claims that Merck violated state and federal law by obtaining the death certificate, making it inadmissible. Finally, he argues that the evidence should be excluded under Federal Rule of Evidence 403. For the reasons discussed below, the Court should deny the motion.

I.  **MR. MASON'S TESTIMONY AND WRITTEN STATEMENTS ARE NOT HEARSAY.**

As described above, Mr. Mason wrote that his sister had a heart attack in the "Family History" section of a medical questionnaire. (Mason Dep. Ex. 3.) Mr. Mason also testified at his deposition that his nephew had informed him that Ms. Mason-Hurley had died of a heart attack. These statements constitute admissions of a party-opponent and are thus nonhearsay and admissible pursuant to Federal Rule of Evidence 801(d)(2)(A).[1] In addition, these statements qualify for admission under Rule 803(19), which relates to "[r]eputation among members of a person's family" concerning matters such as birth, death, adoption, and marriage. Because Mr. Mason attributed his knowledge of his sister's cardiovascular condition to his nephew, his

---

[1] Rule 801(d)(2)(A) provides: "A statement is not hearsay if . . . offered against a party and . . . the party's own statement, in either an individual or a representative capacity."

833296v.1

statements are admissible under this rule. *See, e.g.*, *United States v. Jean-Baptiste*, 166 F.3d 102 (5th Cir. 1999) (reversing conviction because trial court excluded the testimony of defendant's father about the place of defendant's birth).

### II. MERCK DID NOT VIOLATE STATE OR FEDERAL LAW BY OBTAINING MS. MASON HURLEY'S DEATH CERTIFICATE.

#### A. The Utah Statute Cited By Plaintiff Governs The Conduct Of State Officials, Not Private Citizens.

Plaintiff quotes Utah Code Annotated section 26-2-22 at length to support his allegation that Merck obtained the death certificate in violation of Utah law. (Pl.'s Mot. at 2.) He points to the requirement that an applicant demonstrate a "direct, tangible, and legitimate interest" in order to be eligible to receive a death certificate. UTAH CODE ANN. § 26-2-22 (2). Plaintiff fails to recognize, however, that this statute targets the behavior of public officials, not private citizens seeking to purchase copies of official records. The only act designated by this statute as "unlawful" is that of a "state or local officer or employee" who "disclose[s] data contained in vital records contrary to this chapter or department rule," *not* any act by a person seeking to obtain records. *Id.* § 26-2-22(1)(b). The state of Utah maintains a website that directs persons seeking copies of public records to on-line vendors who provide copies for a fee. A legal assistant working for Merck's counsel obtained the death certificate from such a vendor in good faith. The statute does not make Merck's conduct unlawful.

Furthermore, the statute cited by plaintiff is silent regarding the admissibility of a record that was improperly disclosed by a government official. It relates only to the lawfulness of the disclosure, not the admissibility of the document in court.

3

**B.     The Health Insurance Portability And Accountability Act (HIPAA) Does Not Apply To Merck.**

Plaintiff additionally claims that Merck violated the federal HIPAA statute by obtaining Ms. Mason Hurley's death certificate without first securing a court order. (Pl.'s Mot. at 3.) This statute also does not apply to Merck, however. According to the implementing regulations, the statute applies to three categories of "covered entities": (1) a "health plan"; (2) a "health care clearinghouse"; and (3) "a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R. § 164.104 (a) (2006). None of these three categories describes pharmaceutical companies. The statute defines the term "health plan" as "an individual or group plan that provides, or pays the cost of, medical care," such as an employee or veteran's medical benefit plan. 42 U.S.C. § 1320d(5) (2006). A "health care clearinghouse" is defined as a "public or private entity that processes or facilitates the processing of nonstandard data elements of health information into standard data elements." 42 U.S.C. § 1320d(2). The third category encompasses any provider of health care services or supplies who engages in electronic transactions relating to health plan enrollments, health care and premium payments, and health claims. 42 U.S.C. §§ 1320d-2(a)(2), 1320d(3), 1395x(u), and 1395x(s). Clearly, Merck meets none of these definitions, which are intended to cover health insurance programs, physicians, and medical billing companies.

Even if Merck were a "covered entity" under HIPAA, that statute authorizes use of the death certificate in litigation relating to health care operations. 45 C.F.R. § 164.502. According to a guidance document issued by the U.S. Department of Health and Human Services, a covered entity that is party to a lawsuit relating to its health care operations (such as a defendant in a

4

malpractice action), may use or disclose protected health information for such litigation.[2] The covered entity must restrict its disclosures to the "minimum necessary to accomplish the intended purpose." 45 C.F.R. §§ 164.502(b), 164.514(d). The only information that Merck seeks to disclose is the fact that coronary artery atherosclerosis was listed as Ms. Mason Hurley's immediate cause of death.

### C. State And Federal Law Do Not Prohibit The Introduction Of The Death Certificate At Trial.

The death certificate is clearly admissible under federal and Utah law. When a party seeks to introduce a death certificate, a federal court with diversity jurisdiction looks to the law of the underlying state as well as the Federal Rules of Evidence to determine the admissibility of the record. *See, e.g.*, *Metro. Life Ins. Co. v. Butte,* 333 F.2d 82 (10th Cir. 1964); *accord*, *Weiner v. Metro. Life Ins. Co.*, 416 F. Supp. 551 (E.D. Pa. 1976). Federal Rule of Evidence 803(9) permits the introduction of certain public records, including death certificates, as nonhearsay evidence.[3] Many states, such as Utah, have adopted this principle. Under Utah law, a public record (such as a death certificate) is prima facie evidence of the facts it contains. *See* UTAH CODE ANN. § 78-25-3 (1953).[4] For example, in *Metropolitan Life,* the Tenth Circuit reversed the trial court's decision to exclude an official death certificate that attributed an insured's death to

---

[2] Health Information Privacy and Civil Rights Questions & Answers, Answer ID 705, attached hereto as Ex. D.

[3] Rule 803(9) provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (9) Records of vital statistics. Records or data compilations, in any form, of births, fetal deaths, deaths, or marriages, if the report thereof was made to a public office pursuant to requirements of law."

[4] This statute provides: "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state or by any other person in the performance of a duty specially enjoined by the law, are prima facie evidence of the facts stated therein."

carbon monoxide poisoning, holding that the certificate should have been admitted under Utah's section 78-25-3. 333 F.2d at 83; *accord Weiner,* 416 F. Supp. at 558 (admitting, under Pennsylvania law and Federal Rule of Evidence 803(9), a death certificate listing ventricular fibrillation due to idiopathic cardiomyopathy as the cause of death).

Plaintiff cites *Anderson v. Siemens Corp*. for the proposition that death certificates are unreliable and speculative. In *Anderson*, the widow of a cardiac patient sued the manufacturer of the respirator that her husband had used after his surgery (and which, she alleged, caused the stroke that contributed to his death). 335 F.3d 466 (5th Cir. 2003). His death certificate listed two causes of death: pneumonia (the primary cause) and stroke (the underlying cause). The lower court admitted the husband's death certificate, even though it was defective under Texas law because it had been certified by the county instead of the state. *Id*. at 474-75. The Fifth Circuit reversed the lower court's ruling because of the certificate's technical defect and because it was "in essence, the only evidence" linking the decedent's injury to his subsequent death, and therefore seriously affected the fairness of the proceedings. *Id*. at 473-75. Unlike the plaintiff in *Anderson*, Merck is not necessarily seeking to prove that Ms. Mason Hurley died as a direct result of the condition listed on the death certificate (coronary artery atherosclerosis). Nor does Merck wish to challenge the conclusion that a contributing cause of her death was phenylpropanolamine ("PPA") intoxication. Rather, Merck primarily wants to use the death certificate as evidence that Ms. Mason Hurley had coronary artery atherosclerosis. As this Court is well aware from prior trials, evidence of a genetic predisposition to cardiovascular disease is relevant to an evaluation of a patient's risk factors for heart attack. The fact that Mr. Mason's sister had cardiovascular disease is significant, relevant, and admissible.

>   D.  **Even If The Death Certificate Is Held To Be Inadmissible, Merck's Experts Should Still Be Permitted To Testify About Plaintiff's Sister's Cardiovascular Disease and Death.**

Finally, even if the Court excludes the death certificate itself, it should allow Merck's experts to rely on the information it contains. Federal Rule of Evidence 703 allows experts to base their opinions on inadmissible evidence so long as it is of the "type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Death certificates meet that definition. S*ee, e.g., Burton v. Johns-Manville Corp.*, 613 F. Supp. 91, 93 n.2 (W.D. Pa. 1985) (upholding admission of death certificate because it is the type of record on which experts typically rely). For the same reason, the Court should also permit Merck's experts to rely on Mr. Mason's own description of his family history of cardiovascular disease regardless of whether his sister's death certificate is admitted into evidence.

**III.  THE PROBATIVE VALUE OF PLAINTIFF'S SISTER'S CARDIOVASCULAR DISEASE OUTWEIGHS ANY POTENTIAL PREJUDICE TO MR. MASON.**

As previously discussed, Merck seeks to introduce evidence that Ms. Mason Hurley had cardiovascular disease because Mr. Mason's family history is a risk factor for his own illness. The possibility that PPA intoxication may have also contributed to her death is inconsequential, and should not confuse the jury. There will be no need to delve into any medical issues surrounding PPA.

On the other hand, Merck would be greatly prejudiced by the exclusion of the evidence of Mr. Mason Hurley's cardiovascular disease. The fact that Mr. Mason has a family history of heart disease is highly relevant to his claim that Vioxx caused his heart attack because it provides a plausible alternative cause of his heart attack.

833296v.1

**IV.    CONCLUSION.**

    For the reasons stated above, the Court should deny plaintiff's Motion to Exclude or, in the Alternative, Motion in *Limine* and/or Request For Limiting Instructions Regarding the Cause of Reta Mason Hurley's Death.


Dated: October 4, 2006                                         Respectfully submitted,


                                                                   */s/ Dorothy H. Wimberly*
                                                                   Phillip A. Wittmann, 13625
                                                                   Dorothy H. Wimberly, 18509
                                                                   STONE PIGMAN WALTHER
                                                                   WITTMANN L.L.C.
                                                                   546 Carondelet Street
                                                                   New Orleans, Louisiana  70130
                                                                   Phone:  504-581-3200
                                                                   Fax:     504-581-3361

                                                                   Defendants' Liaison Counsel

                                                                   Philip S. Beck
                                                                   Tarek Ismail
                                                                   Shayna Cook
                                                                   BARTLIT BECK HERMAN PALENCHAR
                                                                   & SCOTT LLP
                                                                   54 West Hubbard Street, Suite 300
                                                                   Chicago, Illinois  60610
                                                                   Phone:  312-494-4400
                                                                   Fax:     312-494-4440

                                                                  Brian Currey
                                                                  Catalina J. Vergara
                                                                  O'MELVENY & MYERS LLP
                                                                  400 South Hope Street
                                                                  Los Angeles, CA 90071
                                                                  Phone:  213-430-6000
                                                                  Fax:     213-430-6407

                                                                  And

833296v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

833296v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to Plaintiff's Motion to Exclude or, in the Alternative, Motion in *Limine* and/or Request for Limiting Instructions Regarding The Cause of Reta Mason Hurley's Death has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 4th day of October, 2006.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

833296v.1