UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| CHARLES L. MASON, | * | MAGISTRATE JUDGE<br>KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S
MOTION TO EXCLUDE THE TESTIMONY OF DR. MICHAEL ROTHKOPF**

**(EXPERT CHALLENGE NO. 6)**

Plaintiff seeks to exclude Dr. Rothkopf's causation testimony, claiming that, like plaintiff's experts Drs. Thomas Baldwin and Michael Graham in *Plunkett v. Merck*, "he has virtually no experience with Vioxx[®]." (Pl.'s Mot. at 1.)  That is simply not true.  Dr. Rothkopf is a cardiologist who – unlike Drs. Baldwin and Graham – has treated patients with coronary artery disease and myocardial infarctions for the past 27 years, has regularly prescribed anti-inflammatory agents (including Vioxx, prior to its withdrawal), and has conducted a comprehensive review of the Vioxx literature.  He is no Dr. Baldwin, who the Court found "doesn't know anything about Vioxx."[1]  And, he is certainly no Dr. Graham, whose testimony

---

[1] (Dec. 1, 2005 *Plunkett v. Merck (Plunkett I)* Tr. at 508:3-15.)

the Court excluded in part because "to compensate for his lack of education, experience, and training," he spent only "eight hours reviewing sixty-seven scientific medical articles, nine depositions, four expert reports, and three days' worth of trial transcripts – far less than this Court or any attorney in this case."[2] Unlike these men, Dr. Rothkopf is not only well-qualified by virtue of his skill, training, experience, and education to render opinions about general and specific causation, but his opinions are also relevant and reliable.

Plaintiff also seeks to exclude Dr. Rothkopf's testimony about: (i) the alleged limitations to plaintiff's physical activity following his heart attack; (ii) plaintiff's positive family history of heart disease, including his sister's early and sudden death; (iii) the "class effect" associated with all NSAIDs; and (iv) the lack of scientific support for plaintiff's theory that the use of 25 mg doses of Vioxx at the duration at issue here, less than eleven months, increases one's cardiovascular risk. As explained below, plaintiff's arguments on these points are without merit. The Court should, therefore, deny plaintiff's motion in its entirety.

I.  **DR. ROTHKOPF HAS THE NECESSARY SKILL, TRAINING, EXPERIENCE, AND EDUCATION TO OPINE ON CAUSATION, AND HIS OPINIONS ARE BOTH RELEVANT AND RELIABLE.**

Plaintiff makes two broad challenges to Dr. Rothkopf's causation opinions, claiming that: (i) Dr. Rothkopf "is not qualified to opine on either general or specific causation because he has virtually no experience with Vioxx"; and (ii) Dr. Rothkopf "failed to utilize proper methodology in formulating many of [his] opinions." (Pl.'s Mot. at 1.) As explained below, plaintiff is wrong on both counts.

---

[2] (Feb. 2, 2006 *Plunkett v. Merck (Plunkett II)* Order & Reasons at 10-11.)

### A.     Dr. Rothkopf Is Well-Qualified To Offer Causation Opinions.

In arguing that Dr. Rothkopf is not qualified to opine on causation, plaintiff ignores his extensive clinical experience and asserts, without foundation, that Dr. Rothkopf "has not undertaken any independent study or analysis of Vioxx which would provide a reliable scientific basis for [his] testimony." (Pl.'s Mot. at 2.) Even a cursory review of Dr. Rothkopf's expert report and his deposition testimony belies plaintiff's claims.

Dr. Rothkopf is board certified in internal medicine, cardiology, and interventional cardiology. (Expert Report of Michael Rothkopf, M.D. ("Rothkopf Rpt.") at 1, attached hereto as Ex. A.) He is the Director of Cardiology Services at Baylor Medical Center of Irving, including the Cardiac Catheterization Laboratory, and has held that position for the past 20 years. (*Id.*) Throughout his 27-year career, Dr. Rothkopf has cared for thousands of patients, like the plaintiff, who have coronary artery disease and heart attacks. (*Id.*) He prescribes non-selective NSAIDs as well as COX-2s, including Celebrex and Vioxx (before its withdrawal), on a regular basis to patients with and without coincident heart disease. (*Id.*) Moreover, Dr. Rothkopf performs angioplasties and stent placements similar to those performed on Mr. Mason. (Sep. 20, 2006 Deposition of Michael Rothkopf, M.D. ("Rothkopf Dep.") at 109:7-12, attached hereto as Ex. B.)

In addition to his clinical experience, Dr. Rothkopf has reviewed a "vast amount of literature which addresses the potential cardiovascular effects of non-steroidal anti-inflammatory drugs (NSAIDS), including COX-2 agents and specifically [Vioxx]." (Rothkopf Rpt. at 1.) He reviewed some in the ordinary course of his practice – before he ever prescribed Vioxx to any of his patients. (Rothkopf Dep. at 237:19-24.) More recently, Dr. Rothkopf not only reviewed articles provided to him by counsel, but also searched the literature independently and reviewed

additional articles that he deemed relevant to his expert testimony. (*Id.* at 33:18-34:7.) Unlike Dr. Baldwin in *Plunkett* – who reviewed only a few studies and even then was unable to understand and properly analyze them – Dr. Rothkopf cited over fifty articles in his expert report and carefully analyzed the data reviewed in forming his opinions. (*See* Rothkopf Rpt. at 3-14.) And, unlike Dr. Graham – who spent approximately eight hours reviewing Vioxx literature – Dr. Rothkopf spent over one hundred hours analyzing the pertinent literature. (Rothkopf Dep. at 101:18-102:4.)

In an attempt to tarnish Dr. Rothkopf's credentials, plaintiff offers a number of mostly irrelevant challenges to his qualifications. For example, plaintiff makes much of the fact that "Dr. Rothkopf has absolutely no experience with diagnosing Vioxx as the cause of a cardiac event." (Pl.'s Mot. at 4.) That is not the *sine qua non* of expert testimony on causation, as this Court has recognized.[3] In any event, plaintiff has turned on its head the Court's concern about Dr. Baldwin's litigation-driven analysis in the *Plunkett* case. There, Dr. Baldwin applied a methodology on specific causation for the first time for the purposes of litigation. Here, Dr. Rothkopf has applied the same methodology as he does in clinical practice. This methodology yielded his conclusion that use of Vioxx at the same dose and duration as that used by Mr. Mason does not increase cardiovascular risk.

Plaintiff also claims that Dr. Rothkopf's historical independence from Merck somehow renders him unsuited to opine on causation:

- "Dr. Rothkopf has never received anything from Merck on Vioxx." (Pl.'s Mot. at 2.)

---

[3] (*See* Feb. 14, 2006 *Plunkett v. Merck (Plunkett II)* Tr. at 1737:5-1739:3 ("I don't think that an expert . . . has to have years and years of experience with Vioxx. *Even that he diagnose Vioxx is not a condition.* He just has to know something about Vioxx.").)

4

- "Dr. Rothkopf has never discussed Vioxx with anyone from Merck." (*Id.* at 3.)

- "Dr. Rothkopf was not retained by Merck for Vioxx litigations until February or March of this year." (*Id.*)

Of course, Dr. Rothkopf does not have to be affiliated with Merck to be qualified to opine about the alleged cardiovascular risks associated with Vioxx.

These and plaintiff's other attacks on Dr. Rothkopf's qualifications are particularly ironic given that Dr. Rothkopf has devoted far greater time to reviewing and analyzing the relevant medical literature than plaintiff's own experts, Drs. Sander and Wiener. Plaintiff's experts selectively reviewed clinical trial data provided by plaintiff's counsel and had little familiarity with relevant cardiovascular data from the Alzheimer's trials, the osteoarthritis trials, or the complete set of cancer trials. (*See* Sept. 5, 2006 Deposition of Gary Sander, M.D. at 92:5-17, 94:1-16, 95:21-96:2, 98:23-100:13, attached hereto as Ex. C; Aug. 24, 2006 Deposition of Isaac Wiener, M.D. at 22:16-19, 70:5-17, 71:8-14, 73:6-7, 74:24-25, 79:17-23, 90:10-15, 91:3-15, 173:17-174:5, attached hereto as Ex. D.) Dr. Rothkopf, in contrast, has the requisite skill, training, experience, and education to opine on both general and specific causation. He should be permitted to do so at trial.

    **B. Dr. Rothkopf's Causation Testimony Is Both Relevant and Reliable.**

In addition to possessing the requisite qualifications, Dr. Rothkopf offers testimony that is both relevant to the issues the jury must determine in this case and reliable under *Daubert* and Federal Rule of Evidence 702. Plaintiff's assertions to the contrary notwithstanding, Dr. Rothkopf's methodology is sound.

First, Dr. Rothkopf's general causation opinions are well-supported, in that they are based on his reasoned interpretation of the "totality of the relevant literature." (Rothkopf Rpt. at 10.) Plaintiff criticizes Dr. Rothkopf for failing to review Vioxx-related adverse event reports.

5

(Pl.'s Mot. at 3.) But, as the Court well knows, AERs – which are collected in an uncontrolled manner, are based on incomplete information, and consist of unreliable hearsay – cannot establish a causal relationship. *See, e.g., Black v. Food Lion, Inc.*, 171 F.3d 308, 312-13 n.2 (5th Cir. 1999). Equally implausible is plaintiff's claim that Dr. Rothkopf's failure to review "DDMAC letters" and "Dear Doctor letters on Vioxx" renders him unqualified to opine on causation. Marketing-related letters from the FDA and Merck's letters to doctors have no bearing on whether Vioxx could have and did cause plaintiff's heart attack. What matters is whether Dr. Rothkopf reviewed the published, peer-reviewed literature and plaintiff's medical records in forming his opinions – which he did.

Dr. Rothkopf's specific cause opinions meet the requirements of *Daubert* and Rule 702 as well. Plaintiff argues that Dr. Rothkopf's opinion that plaintiff had coronary artery disease before taking Vioxx is based "solely" on his "comparison between two stress tests and the 'natural history of coronary artery disease'" and that Dr. Rothkopf "did not even consider Mr. Mason's 10-month use of Vioxx in any differential diagnosis." (Pl.'s Mot. at 4.) But, plaintiff ignores that Dr. Rothkopf distinctly did consider and reject plaintiff's Vioxx use as a cause of plaintiff's heart attack. As noted in Dr. Rothkopf's expert report:

> Mr. Mason received [Vioxx] 25 mg daily for 10 months prior to his heart attack. The aforementioned randomized clinical trials which studied patients treated with this dosage compared to placebo failed to show a significant association between [Vioxx] and myocardial infarction.
>
> . . .
>
> *Therefore, in review of this case, in reasonable medical probability, there is no evidence to support the notion that Mr. Mason suffered 'harm' from [Vioxx] therapy.*

(Rothkopf Rpt. at 16-17.) Similarly, at his deposition, Dr. Rothkopf testified:

> Q: . . . So you've excluded Vioxx as a contributing cause of [Mr. Mason's] heart attack to a hundred percent.

6

> A:  No, in medical probability.
>
> Q:  Well, medical probability, what does that mean to you?  51 percent or greater?
>
> . . .
>
> A:  *. . . I'm very confident from looking at the literature and looking at this patient's clinical presentation and his angiogram that, you know, this should not be viewed as a heart attack that was caused by Vioxx.*  And in my mind, it's much more than 51 percent.  I mean, I'm not going to give you a percentage.

(Rothkopf Dep. at 179:18-180:17 (emphasis added; objections omitted).)

Moreover, Dr. Rothkopf's opinions regarding plaintiff's pre-existing coronary artery disease are well-founded.  As Dr. Rothkopf explained, based on his experience and knowledge of the natural progression of coronary artery disease, it would take "many years" – and certainly more than 10 months – to develop the level of coronary artery disease plaintiff suffered at the time of his heart attack.  (*Id.* at 154:15-155:14; *see also* Rothkopf Rep. at 15.)  Further, a comparison of plaintiff's two stress tests – one before he started taking Vioxx and the other after his heart attack and subsequent treatment for coronary artery disease – revealed a change consistent with a finding that plaintiff already had significant coronary artery disease when he started taking Vioxx.  (*Id.*; Rothkopf Dep. at 155:15-157:2.)  Plaintiff does not articulate any legitimate basis to contest Dr. Rothkopf's findings on this subject.

In sum, plaintiff has simply failed to mount a credible challenge to Dr. Rothkopf's qualifications, or to the reliability of his causation opinions.  The Court should accordingly deny plaintiff's motion.

## II. DR. ROTHKOPF'S TESTIMONY REGARDING ALLEGED LIMITATIONS TO MR. MASON'S PHYSICAL ACTIVITY IS APPROPRIATE.

Plaintiff also seeks to exclude Dr. Rothkopf's opinions about "what Mr. Mason can and cannot do today as far as physical activity goes," arguing Dr. Rothkopf has "absolutely no basis

7

for these 'opinions.'" (Pl.'s Mot. at 5.)  That is incorrect.  As a practicing cardiologist who routinely treats and monitors heart attack patients, Dr. Rothkopf is well-qualified to opine about any physical limitations plaintiff claims to suffer as a result of his heart attack.  (Rothkopf Rpt. at 1.)  Dr. Rothkopf reviewed plaintiff's medical records and bases his opinions about plaintiff's alleged physical limitations on clinical data including plaintiff's "excellent aerobic capacity as documented by the stress test done on 10 /22/2003." (Rothkopf Rpt. at 17-18; *see also* Rothkopf Dep. at 375:5-378:16.)  As Dr. Rothkopf explains, functional capacity as gauged by stress testing is one of "the most important predictors of prognosis in patients post myocardial infarction." (*Id.* at 17.)

### III. DR. ROTHKOPF'S TESTIMONY REGARDING THE MEDICAL CONDITION AND CAUSE OF DEATH OF PLAINTIFF'S SISTER IS ADMISSIBLE.

Plaintiff asserts that Dr. Rothkopf should not be allowed to testify about the medical condition and death of plaintiff's sister, Ms. Hurley, at age 55 and whether her death indicates a positive "family history" for coronary artery disease.  (Pl.'s Mot. at 5-6.)  Mr. Mason testified at his deposition that his sister's son told him she died of a heart attack.  Mr. Mason also wrote in a medical questionnaire he filled out for his doctor that his sister had a heart attack.  Her death certificate lists her "immediate cause" of death as "CORONARY ARTERY ATHEROSCLEROSIS."

Plaintiff argues that Dr. Rothkopf "does not know whether [Ms. Hurley] actually had coronary artery disease" and that his testimony would amount to pure speculation.  (Pl.'s Mot. at 6.)  Federal Rule of Evidence 703, however,  allows experts to base their opinions on facts outside their personal knowledge so long as they are of the "type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  Both patient histories and death certificates meet that definition.  S*ee, e.g., Burton v. Johns-Manville Corp*.,

613 F. Supp. 91 (W.D. Pa. 1985) (upholding admission of death certificate because it is the type of record on which experts typically rely).

As a cardiologist who routinely identifies and evaluates cardiac risk factors in patients, Dr. Rothkopf should be allowed to explain the significance of Ms. Hurley's death in connection with identifying plaintiff's risk factors for coronary artery disease.[4]  His testimony is not aimed at making a definitive determination of the cause of Ms. Hurley's death.  Rather, Dr. Rothkopf is focused on identifying plaintiff's risk factors for coronary artery disease.

**IV.   DR. ROTHKOPF'S OPINIONS REGARDING THE "CLASS EFFECT" OF NSAIDS ARE ADMISSIBLE.**

Plaintiff claims that the available scientific data and analyses – including two recently published articles – do not support Dr. Rothkopf's opinions about the "class effect" associated with all NSAIDs.  (Pl.'s Mot. at 6-7.)  For support, plaintiff references and incorporates his Motion to Exclude Opinion Testimony that Vioxx Is the Same As All NSAIDs Regarding Cardiotoxic Effects.  As explained in Merck's Opposition to that motion, which is incorporated herein by reference, plaintiff's argument (including any reliance on the two recently published articles plaintiff cites) is without basis.[5]

---

[4] Plaintiff also argues that Merck obtained Ms. Hurley's death certificate in violation of Utah and federal law and that it, therefore, is not an appropriate basis for Dr. Rothkopf's testimony.  (Pl.'s Mot. at 6.)  Merck has addressed this argument in its opposition to Plaintiff's Motion to Exclude or, in the Alternative, Motion in *Limine* and/or Request for Limiting Instructions Regarding the Cause of Reta Mason Hurley's Death (Motion in *Limine* No. 9), filed concurrently herewith.

[5] *See* Opposition to Plaintiff's Motion to Exclude Opinion Testimony that Vioxx is the Same as All NSAIDs Regarding Cardiotoxic Effects, filed October 3, 2006.

## V. DR. ROTHKOPF'S OPINIONS REGARDING CARDIOVASCULAR RISK BASED ON DURATION OF VIOXX USE ARE ADMISSIBLE.

Plaintiff asserts that Dr. Rothkopf should not be permitted to opine that "cardiovascular risks do[] not present at 10 months of Vioxx use." (Pl.'s Mot. at 7.) Plaintiff claims first that Dr. Rothkopf is not qualified to render such an opinion. That is not so. As explained in greater detail above, Dr. Rothkopf has the necessary knowledge, skill, experience, training, and education to offer that opinion. (*See supra* Part II.) Second, plaintiff claims that the available scientific data and analyses do not support the opinion. (Pl.'s Mot. at 7.) For support, plaintiff references and incorporates Plaintiff's Motion to Exclude Argument or Opinion Testimony to the Effect That an Increased Risk of Heart Attack Exists Only After 18 Months of Vioxx Use. (*Id.*) Merck fully refutes plaintiff's claim in its opposition to that motion, which is incorporated herein by reference.[6]

## VI. CONCLUSION.

For the reasons stated above, the Court should deny plaintiff's Motion to Exclude the Testimony of Dr. Michael Rothkopf in its entirety.

> /s Dorothy H. Wimberly
> Phillip A. Wittmann, 13625
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana 70130
> Phone: 504-581-3200
> Fax:   504-581-3361
>
> Defendants' Liaison Counsel

---

[6] *See* Opposition to Plaintiff's Motion to Exclude Argument or Opinion Testimony That an Increased Risk of Heart Attack Exists Only After 18 Months of Vioxx Use, filed October 3, 2006.

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Opposition to Plaintiff's Motion to Exclude the Testimony of Dr. Michael Rothkopf has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 4th day of October, 2006.

                                               */s/ Dorothy H. Wimberly*
                                               Dorothy H. Wimberly, 18509
                                               STONE PIGMAN WALTHER
                                               WITTMANN L.L.C.
                                               546 Carondelet Street
                                               New Orleans, Louisiana  70130
                                               Phone:  504-581-3200
                                               Fax:     504-581-3361
                                               dwimberly@stonepigman.com

                                               Defendants' Liaison Counsel