UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE |
| **CHARLES L. MASON**, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.**, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF GARY SANDER, M.D.**

**(EXPERT CHALLENGE NO. 3)**

Notwithstanding his burden of proving the mechanism by which Vioxx® supposedly caused his heart attack, plaintiff's apparent strategy is to introduce "evidence" of as many theorized mechanisms as possible – even mechanisms that plaintiff's experts admit did not contribute to plaintiff's heart attack – in the hope that the jury will hear enough about the alleged harmful effects of Vioxx to infer that it somehow is responsible for what happened to plaintiff.

Consistent with this strategy, plaintiff attempts to broaden the scope of Dr. Sander's opinions to include opinions that Dr. Sander has admitted he will not offer. According to plaintiff, Dr. Sander will opine that Vioxx "more likely than not caused Mr. Mason's heart attack" by one of three methods. (*See* Pl.'s Opp'n at 5.) Those three methods are: "1) Vioxx causes high blood pressure and plaque rupture, 2) Vioxx accelerates atherosclerosis, and

833779v.1

3) Vioxx causes an imbalance of prostacyclin and thromboxane that leads to a prothrombotic state and cardiovascular events." (*Id.*)  Plaintiff ignores that Dr. Sander testified, at his deposition, that he cannot prove that the first of these supposed mechanisms played a role in Mr. Mason's alleged Vioxx-related injury.  (*See* Sept. 5, 2006 Deposition of Dr. Gary E. Sander ("Sander 9/5/06 Dep.") at 72:6-14 ("Q: . . . [Y]ou certainly will not be offering the opinion at trial that Vioxx made Mr. Mason's plaque rupture prone. Correct? A: Yes. Correct."), attached hereto as Ex. A.)  He also ignores Dr. Sander's testimony that he would not offer "expert" opinions on whether Vioxx accelerates atherosclerosis.  (*Id.* at 67:21-68:3 ("Q: . . . You will not be offering the opinion at trial that Vioxx accelerated the formation of atherosclerosis in Mr. Mason. Correct? A: That is correct."), 71:14-21 ("[A:] [T]hat is something where I am not going to go.  I mean, [Vioxx] could have accelerated atherosclerosis.  But I am not going there.").)  Dr. Sander's opinions on these purported mechanisms are thus beyond the scope of the opinions that he has said he will offer, and should be excluded on that ground.

More broadly, and as explained in Merck's underlying motion, each of these mechanisms now advanced by plaintiff is unsupported by sufficient evidence, scientifically unreliable, and/or irrelevant.  For the reasons set forth in Merck's motion and explained more fully below, Dr. Sander's opinions should be excluded.[1]

---

[1] Although plaintiff and Dr. Sander both argue that Merck has not challenged Dr. Sander's qualifications (*see* Pl.'s Opp'n at 3; *id.* at Ex. B), they are wrong.  Merck has challenged Dr. Sander's qualifications to opine on Merck's conduct, state of mind, and ethics.  (*See* Merck's Mot. at 15-17; *see also* Aug. 15, 2006 Deposition of Dr. Gary E. Sander ("Sander 8/15/06 Dep.") at 78:10-79:7 ("I have not been asked to deal with issues of Merck's behavior relative to drug analysis and release.  And I don't feel that I have expertise to . . . discuss what Merck knew, when they knew it, what the issues with publication were, the data tables."), attached to Merck's Mot. as Ex. E.)  More generally, Merck challenges Dr. Sander's qualifications on all issues and opinions discussed in Merck's motion.

## I.   THE COURT SHOULD EXCLUDE DR. SANDER'S CAUSATION OPINIONS.

Dr. Sander opines that, by reducing prostacyclin production, "Vioxx can increase blood pressure" and, by increasing blood pressure, Vioxx increases the risk of plaque rupture and resulting cardiovascular events. (Aug. 7, 2006 Expert Report of Gary E. Sander, M.D. at 8, attached to Merck's Mot. as Ex. A.)  He also opines that Vioxx increased Mr. Mason's blood pressure, and that this increase caused Mr. Mason to experience a plaque rupture and ultimately led to his heart attack. (Sander 9/5/06 Dep. at 74:19-23.)  In other words, Dr. Sander's general and specific causation opinions are premised on the purported effects of Vioxx on blood pressure.  In its motion, Merck demonstrated that Dr. Sander's causation opinions not only are scientifically unreliable, but also are wholly irrelevant to plaintiff's claims, given that Merck warned of the risk of increased blood pressure in its Vioxx label and there is no reliable evidence that Vioxx had any effect on Mr. Mason's blood pressure in any case.  Plaintiff now tries to back away from Dr. Sander's opinions, arguing that he is not required to prove the mechanism by which Vioxx increases CV risk or caused Mr. Mason's heart attack.  Plaintiff also attempts to hedge his bets by arguing there are three "plausible" mechanisms by which Vioxx increases CV risk: (i) through its effect on blood pressure; (ii) by accelerating atherosclerosis; and (iii) by creating a prothrombotic state through the alleged imbalance known as the FitzGerald hypothesis.  Plaintiff argues that Dr. Sander should be permitted to testify about these three plausible mechanisms and that the jury should be permitted to infer that one, or some combination, of these mechanisms caused Mr. Mason's heart attack.  But plaintiff cannot be permitted to change or expand Dr. Sander's opinions.  Moreover, plaintiff's other plausible mechanisms are unreliable and irrelevant.

### A. There Is No Basis For Plaintiff's Argument That He Need Not Identify The Mechanism By Which Vioxx Allegedly Increases CV Risk.

Although plaintiff argues that "[a] plaintiff is not required to show the precise mechanism of action through which the drug injuries [*sic*] a patient" (Pl.'s Opp'n at 4), he is wrong. As part of his burden of proof, plaintiff must identify, to a reasonable degree of medical probability, the biological mechanism by which Vioxx can and did cause his heart attack. *See, e.g.*, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) (excluding expert testimony where plaintiffs' experts have not "offered a reliable explanation of the physiological process by which Metabolife causes heart attacks and ischemic strokes, *i.e.*, establish general causation"); *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) ("The underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur."). The only circumstance in which proof of mechanism is not required is when there is "*compelling* proof that the agent *must* have caused the damage somehow." *In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 289 F. Supp. 2d 1230, 1247 (W.D. Wash. 2003) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1314 (9th Cir. 1995)). Plaintiff offers no such compelling evidence in this case.[2]

---

[2] Plaintiff improperly relies on *Kennedy v. Collagen Corp.*, 161 F.3d 1226 (9th Cir. 1998), to support his argument that he is not required to identify the mechanism. (*See* Pl.'s Opp'n at 4.) In *Kennedy*, the plaintiff's expert had a clear mechanism theory to support his causation opinion; his opinion that Zyderm causes autoimmune disorders was based upon "the finding, established in both peer-reviewed publications and clinical studies, that Zyderm induces the body to produce the same autoimmune antibodies that are the hallmark of autoimmune diseases." 161 F.3d at 1228. Although there were no epidemiological studies linking Zyderm to the autoimmune disease suffered by the plaintiff, the court held that the plaintiff's expert's causation opinions should have been admitted because epidemiological studies were "almost impossible to perform" and because the defendant failed to introduce any evidence that the expert's reasoning was

(*footnote continued next page*)

Moreover, Dr. Sander has provided unequivocal testimony on the mechanism by which Vioxx supposedly caused Mr. Mason's heart attack – *i.e.*, by increasing his blood pressure and causing a plaque rupture. Regardless of whether Dr. Sander's mechanism testimony is scientifically reliable (and, as explained in Merck's motion, it is not), Dr. Sander's mechanism testimony renders his causation opinions irrelevant. Plaintiff cannot rectify the flaws in Dr. Sander's opinions by arguing that plaintiff is not required to prove mechanism.

### B. Dr. Sander's Blood Pressure Opinions Are Scientifically Unreliable, Irrelevant And Inadmissible.

*1.    Plaintiff offers no – nor could he offer any – scientifically reliable support for Dr. Sander's opinion that Vioxx causes plaque rupture by increasing blood pressure.*

As explained in Merck's motion and more fully in its Motion to Exclude Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture (the "Atherosclerosis and Plaque Rupture Motion"), filed September 19, 2006 and incorporated herein by reference, and its Reply Brief in support of the same motion, filed concurrently herewith and incorporated herein by reference, there is no scientifically reliable evidence that Vioxx can cause plaque rupture. Most notably, there is no study that would support such an opinion. Plaintiff cannot get around this fact because Dr. Sander says that Vioxx causes plaque rupture *through its effect on blood pressure*.

Although plaintiff argues that Merck "unequivocally adopted" the link between Vioxx and plaque rupture, pointing to statements in the APPROVe study (*see* Pl.'s Opp'n at 6), plaintiff overstates both the study's findings and how they relate to Merck. The APPROVe publication

---

invalid. *Id.* at 1229-30. Here, epidemiological data has been, and continues to be, gathered and Merck has detailed at length the numerous flaws in the reasoning of plaintiff's experts.

5

was not written by Merck; it was written by distinguished physicians in the community.[3] Moreover, the APPROVe publication does not conclude that Vioxx causes plaque rupture. And, even the statement that plaintiff quotes in support of his argument that "Merck unequivocally adopted the . . . hypothesis that Vioxx causes plaque rupture" cannot, by any stretch, be argued to be unequivocal:

> Cox-2 inhibitors *may* increase cardiovascular risk by shifting the functional balance of these vasoactive eicosanoids toward the promotion of thrombosis or atherogenesis. Cox-2 inhibition combined with thromboxane-receptor antagonism *may* also lead to the destabilization of atheromatous plaque.

(Pl.'s Opp'n at 6 (citing *Bresalier* at 1098-99) (emphasis added).) Moreover, the suggestion in the APPROVe publication quoted above was, on its face, limited to concurrent use of a COX-2 inhibitor and a very specific, experimental second drug (a thromboxane receptor antagonist) that Mr. Mason did not take. Plaintiff also omits that this same study referenced in the APPROVe publication – a single study in genetically altered mice – found *no* evidence of plaque destabilization with COX-2 inhibition alone.[4]

Finally, plaintiff quotes an article by Dr. Wong for the proposition that "*in some settings*, Cox-2 inhibition *might* also contribute to destabilization of an accumulated atherosclerotic plaque." (Pl.'s Opp'n at 6.) This quote by Dr. Wong refers to the same mouse study discussed in the APPROVe publication – the study that found evidence for plaque destabilization only with

---

[3] *See* Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial* (2005), 352 NEW. ENG. J. MED. 1092.

[4] Even so, changes in the vasculature of genetically-modified mice are not predictive of any changes in the vasculature of humans. *See, e.g., Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (5th Cir. 1989) (rejecting animal studies given difficulty in extrapolating results to humans); *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 197-98 & n.5 (5th Cir. 1996) (rat studies were "inconclusive" and "unreliable" and could not establish that chemical would have same effect in humans); *Maurer v. Heyer-Schulte Corp.*, No. Civ.-A-92-3485, 2002 WL

(*footnote continued next page*)

concurrent use of a COX-2 inhibitor and a thromboxane receptor antagonist. Plaintiff's reliance on such speculative statements serves only to highlight the lack of scientific support for his theory.

> 2. *Dr. Sander's causation opinions are irrelevant because there is no evidence that Vioxx caused Mr. Mason's blood pressure to increase and because Merck warned of the risk of high blood pressure.*

Plaintiff attempts to establish the relevance of Dr. Sander's causation opinions by arguing that: (i) "Dr. Sander's observations of Mr. Mason's blood pressure . . . add further weight to the opinion that Vioxx-induced high blood pressure and plaque rupture is a plausible medium for Mr. Mason's heart attack"; and (ii) Merck did not adequately warn of the increased risk of high blood pressure. (*See* Pl.'s Opp'n at 6-7.) Neither argument has any merit. Moreover, even if Vioxx did cause Mr. Mason's blood pressure to increase (and there is no evidence that it did), Dr. Sander's blood pressure opinions still would be irrelevant to plaintiff's claims against Merck.

Dr. Sander has no reliable evidence that Mr. Mason's blood pressure even increased while he was taking Vioxx. As explained in Merck's underlying motion, there is no reliable evidence that Vioxx had any effect on Mr. Mason's blood pressure. (*See* Merck's Mot. at 9-10.) In fact, Dr. Sander and another one of plaintiff's experts, Dr. Wiener, both admitted that they do not have sufficient evidence to opine that Vioxx increased Mr. Mason's blood pressure. (Sander 9/5/06 Dep. at 177:10-178:4; Deposition of Isaac Wiener, M.D. at 154:5-155:5, attached to Merck's Mot. as Ex. H.)

Even assuming that Vioxx caused Mr. Mason's blood pressure to rise – and there is no evidence that it did – Dr. Sander's opinions still would be irrelevant because Merck warned of

---

31819160, at *3-4 (E.D. La. Dec. 13, 2002) (court "frowns upon the use of animal studies to predict carcinogenicity in humans").

the risk of increased blood pressure in its Vioxx label. In the label effective when Mr. Mason took Vioxx, Merck warned:

> In clinical trials of VIOXX at daily doses of 25 mg in patients with rheumatoid arthritis the incidence of hypertension was twice as high in patients treated with VIOXX as compared to patients treated with naproxen 1000 mg daily.

(*See* April 2002 Vioxx label, attached to Merck's Mot. as Ex. J.) Merck even included in the label the percentage of patients who experienced hypertension in the clinical trials in the Vioxx, placebo, and comparator arms. (*See id.*)

Although plaintiff does not directly address Merck's blood pressure warnings, he implies that they somehow are inadequate, citing *McNeil v. Wyeth*, No. 05-10509, 2006 WL 2411547, at *3-4 (5th Cir. Aug. 22, 2006), and stating, "[i]n that case the Fifth Circuit refused to find, as a matter of law, a warning adequate simply because it mentions a condition from which the plaintiff suffered." (*See* Pl.'s Opp'n at 7.) *McNeil*, which was decided under Texas law, provides no support for an argument that Merck's Vioxx label inadequately warned of the risk of hypertension. In *McNeil*, the drug manufacturer, Wyeth, warned of the potential risk of the movement disorders from which plaintiff suffered, but it also described the disorders as "comparatively rare." *McNeil* at *2-3. The plaintiff's claims were premised, not on an outright failure to warn, but on "argument . . . that the label is misleading as to the risk level for developing the condition." *Id.* at *3. The court provided that "[w]arning the learned intermediary of a much lower risk than the actual risk could render the warning not just misleading, but ineffective," and it held that a factual dispute existed over whether the label was misleading. *Id.* at *3, 8.[5]

---

[5] Because *McNeil* involved an appeal from an order granting summary judgment in Wyeth's favor, the legal standard was different from (*i.e.*, more favorable to the plaintiff than) the standard applicable here.

833779v.1

Here, by contrast, Merck did not describe the occurrence of hypertension as "comparatively rare." It simply warned of the risk. Plaintiff has not claimed, nor could he claim, that Merck's hypertension warning was inaccurate, or that the label otherwise suggested that the risk of elevated blood pressure was any less frequent than it is. Indeed, plaintiff concedes that he is not claiming that Merck failed to warn of the risk of increased blood pressure; rather, his claims are premised on an alleged "fail[ure] to warn of the increased cardiovascular risk." (*See* Pl.'s Opp'n at 7.)

However, as explained in Merck's motion, and as plaintiff and Dr. Sander acknowledge, the association between hypertension and CV events is widely known, and it has been for fifteen to twenty years. (*See* Merck's Mot. at 10-11; *see also* Sander 8/15/06 Dep. at 73:6-15, 123:3-15.) Although plaintiff ignores *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. 2006), in his opposition, that case is instructive. (*See* Merck's Mot. at 12.) In *Meridia*, the Sixth Circuit recognized that "'[p]hysicians are well aware of the scope of the risks associated with increased blood pressure and do not need specifics regarding the possible consequences of blood pressure increases.'" 447 F.3d at 867 (quoting *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 813 (N.D. Ohio 2004)). Here, where Merck warned of the risk of increased blood pressure, plaintiff cannot legitimately claim that Merck was obligated to also warn that hypertension leads to increased CV risk.[6]

---

[6] Dr. Sander also implies, in his *Smith* declaration, that Merck's hypertension warning somehow was inadequate. (*See* Pl.'s Opp'n, Ex. B.) Not only is this suggestion unfounded, Dr. Sander also is unqualified to give opinions on the adequacy of Merck's Vioxx label and has not been designated on this subject. Accordingly, the Court should disregard and exclude Dr. Sander's testimony on the adequacy of Merck's label.

### C. Testimony That Vioxx Accelerates Atherosclerosis, Or That It Accelerated Mr. Mason's Atherosclerosis, Is Scientifically Unreliable, Irrelevant And Inadmissible.

As stated in Merck's motion, Dr. Sander admitted in his deposition that the theory that Vioxx accelerates atherosclerosis is unproven and that he has no evidence to support an opinion that Vioxx accelerated Mr. Mason's atherosclerosis. (Merck's Mot. at 13-14; *see also* Sander 8/15/06 Dep. at 238:18-240:18.) Dr. Sander even said he would not offer opinions on this subject. (Sander 9/5/06 Dep. at 67:21-68:3.) Remarkably, plaintiff ignores Dr. Sander's deposition testimony in his opposition – arguing that the theory is, nonetheless, reliable and stating that "Dr. Sander will testify that the medical evidence and Merck's admissions support the theory that Vioxx accelerates atherosclerosis." (*See* Pl.'s Opp'n at 10.) As explained in the papers filed in support of Merck's Atherosclerosis and Plaque Rupture Motion, such an opinion is scientifically unreliable and should be excluded. The argument in plaintiff's opposition does nothing (nor could it do anything) to establish otherwise.

Plaintiff relies on a November 2005 article by Dr. FitzGerald as support for his theory that Vioxx accelerates atherosclerosis. (*See* Pl.'s Opp'n at 8-9.) In that article, Dr. FitzGerald rejects the FitzGerald imbalance hypothesis advanced by plaintiffs in Vioxx litigation – writing that "the concept of simply tipping a 'balance' between COX-2-derived [prostacyclin] and COX-1-derived platelet thromboxane is misplaced."[7] Dr. FitzGerald goes on to discuss other "biologically plausible" mechanisms that, he contends, might be influenced by COX-2 inhibition and that might, in turn, play a role in causing adverse cardiac events. Among these is the atherogenic mechanism that plaintiff speculates about – that is, the blood pressure mechanism

---

[7] *See* Grosser, Fries, and FitzGerald, *Biological basis for the cardiovascular consequences of COX-2 inhibition: therapeutic challenges and opportunities*, THE JOURNAL OF CLINICAL INVESTIGATION, Vol. 116, No. 1, January 2006 ("FitzGerald Article"), at 4.

10

possibly influenced by COX-2 inhibition's potential effects on vasodilation, and vascular smooth muscle proliferation. Dr. FitzGerald, however, makes it abundantly clear that such "alternative explanations" are purely speculative and conjectural. He writes:

> [O]ne might *speculate* how the disparate effects of [protacyclin] suppression on atherogenesis, blood pressure, and the remodeling response might converge, over time, to result in transformation of cardiovascular risk in patients initially at low risk when exposed to chronic COX-2 inhibition.[8]
>
> . . .
>
> A variety of alternative explanations for the cardiovascular effects of COX-2 inhibitors, *again based largely on conjecture*, in vitro data, and/or drug concentrations unlikely ever to be attained therapeutically have begun to emerge.[9]

Dr. Fitzgerald's article, therefore, falls far short of establishing that Vioxx accelerates atherosclerosis.

Plaintiff also relies on internal Merck documents that he contends "admit Merck's concerns that Vioxx accelerates atherosclerosis." (Pl.'s Opp'n at 9.) The documents do no such thing. The first document cited by plaintiff is an e-mail from Dr. Epstein regarding the results of a study, which did not involve humans or Vioxx, he performed with Dr. Rott. (Pl.'s Opp'n at 9; *id.* at Ex. F.)[10] In that e-mail, Dr. Epstein said: "as we tried to emphasize in our paper, our results in mice, using our particular experimental conditions, *may not be at all relevant to what happens clinically*." (Pl.'s Opp'n, Ex. F (emphasis added).) Moreover, the Rott study does not establish that Vioxx accelerates atherosclerosis. Indeed, the study's authors acknowledged the

---

[8] FitzGerald Article at 6 (emphasis added).

[9] *Id.* at 13 (emphasis added).

[10] *See also* Rott D, Zhu J, Burnett MS, et al., *Effects of MF-tricyclic, a selective cyclooxygenase-2 inhibitor, on atherosclerosis progression and susceptibility to cytomegalovirus replication in apolipoprotein-E knockout mice*, J AM COLL CARDIOL., 2003 May 21;41(10):1818.

limitations of animal studies, and conceded that any association between COX-2 inhibitors and accelerated atherosclerosis remains hypothetical:

> Because of the importance of the implications of the conclusions deriving from our investigation, and because of the intrinsic limitations of an animal model outlined above, *the conclusions must be regarded as tentative and hypothesis generating*.[11]

Dr. Epstein reconfirmed these limitations during his testimony (via deposition) at the *Barnett* trial. He testified:

> Q: So how long would you estimate three weeks of treatment in a mouse translates into treatment in humans?
>
> A: I wouldn't – I wouldn't – there's no way I could make that estimation.
>
> Q: Would it be improper to say that just because you see an effect on lesion size with MF-tricyclic after three weeks of treatment that that reflects that even in humans you would expect to see an increase in atherosclerosis in a short period of time if you use a COX-2 inhibitor?
>
> A: I don't think that the results in this model can be so equivalently transferred to patients. It raises that as a question, but certainly our study doesn't definitively answer that.

(Aug. 5, 2006 *Barnett v. Merck* Tr. at 1220:22-1221:9; *see also id.* at 1185:18-24, 1191:2-1192:1, 1196:10-14.) Dr. Epstein also acknowledged that it would be improper to conclude, from the results of the Rott study, that Vioxx accelerates atherosclerosis or causes plaque rupture. (*Id.* at 1235:24-1236:9.)

The other document cited by plaintiff is a document showing that Merck accepted, in principle, a proposal for a study regarding the "[r]ole of COX-2 in the pathophysiology of atherosclerosis and myocardial infarction." (Pl.'s Opp'n at 9; *id.* at Ex. G.) This says nothing about whether Vioxx accelerates atherosclerosis.

---

[11] Rott at MRK-AEG0053082 (emphasis added).

833779v.1

Regardless of what Merck thought, plaintiff has the burden of presenting scientifically reliable evidence of causation. Plaintiff cannot meet that burden by relying on Merck documents that do nothing more than acknowledge the existence of hypotheses. Moreover, because Dr. Sander acknowledges that there is no evidence that Vioxx increased Mr. Mason's atherosclerosis, any testimony regarding the purported ability of Vioxx to accelerate atherosclerosis is irrelevant. And because Dr. Sander said in his deposition that he will not testify that Vioxx can or did accelerate atherosclerosis – a representation on which Merck has relied – Dr. Sander cannot be permitted to offer opinions that he expressly disavowed.[12]

### D. Testimony About The FitzGerald Hypothesis Is Scientifically Unreliable, Irrelevant And Inadmissible.

Plaintiff also says that Dr. Sander will testify about the FitzGerald hypothesis and, specifically, "that Vioxx alters the balance between prostacyclin and thromboxane production, and this imbalance leads to a prothrombotic state and increases the risk of . . . plaque rupture." (*See* Pl.'s Opp'n at 10.) Contrary to plaintiff's argument, Merck has never said that the FitzGerald hypothesis is proven or correct. As Merck has argued to this Court on several occasions, and need not repeat here, the FitzGerald hypothesis is speculative and unproven, and it cannot constitute reliable support for the proposition that Vioxx increases CV risk or causes heart attacks. (*See, e.g.*, Merck's Mot. at 4-7.)

Moreover, Dr. Sander largely uses the FitzGerald hypothesis as the foundation for his blood pressure opinions. For example, he testified that the alleged imbalance caused an increase

---

[12] In his declaration, Dr. Sander testifies that Vioxx accelerates atherosclerosis by increasing blood pressure. (Pl.'s Opp'n, Ex. B.) This testimony is irrelevant because: (i) as explained above, Merck expressly warned of the risk of increased blood pressure; and (ii) Dr. Sander has acknowledged that he has no evidence and will not testify that Vioxx had such an effect in Mr. Mason. Moreover, as explained in Merck's briefing on the Atherosclerosis and Plaque Rupture motion, such an opinion is scientifically unreliable.

13

in blood pressure, which ultimately caused Mr. Mason's heart attack. (Sander 9/5/06 Dep. at 73:13-17.) Because, as explained above, that opinion is unreliable and irrelevant, Dr. Sander should not be permitted to testify about the theory by which Vioxx allegedly increases blood pressure.

**II. THE COURT SHOULD EXCLUDE DR. SANDER'S TESTIMONY ABOUT MERCK'S CORPORATE CONDUCT AND ETHICS.**

Plaintiff also does not dispute that Dr. Sander's personal opinions about Merck's corporate conduct and ethics and his personal experiences with Merck are inadmissible. (*See* Pl.'s Opp'n at 12.) As explained in Merck's motion, plaintiff did not designate Dr. Sander to offer opinions on these subjects, Dr. Sander admittedly is unqualified to assess the propriety of Merck's conduct, and Dr. Sander's personal views are irrelevant to any issue in this case. (*See* Merck's Mot. at 15-17.) Plaintiff says that he "does not plan to question Dr. Sander regarding his personal experiences with Merck representatives" unless Merck questions Dr. Sander, or otherwise introduces evidence, on the subject. (Pl.'s Opp'n at 12.)[13] Plaintiff's concession is not enough, however, as Merck's motion was directed not only to Dr. Sander's personal experiences, but included all opinions on Merck's conduct, state of mind, and integrity. (*See* Merck's Mot. at 15-17.) Moreover, although plaintiff suggests that Dr. Sander will opine on these subject if Merck "opens the door" (Pl.'s Opp'n at 12), Dr. Sander is unqualified to testify on these topics. This fact will not change regardless of the evidence Merck introduces at trial. Because plaintiff

---

[13] Dr. Sander, nonetheless, advocates in his declaration that his personal experiences are relevant to his opinions, stating that they "are factual information which are part of my experience and education regarding coxibs, Vioxx and cardiovascular disease." (Pl.'s Opp'n, Ex. B.) This is precisely the opposite of what Dr. Sander said in his deposition. At that time, he testified that his personal experiences provide no factual basis for his opinions. (Sander 8/15/06 Dep. at 78:10-79:7.)

833779v.1

offers no evidence that Dr. Sander is qualified to opine on Merck's corporate conduct or ethics, the Court should issue an order precluding him from testifying on these subjects.

### III. CONCLUSION.

For the reasons stated above and in Merck's underlying motion, Merck respectfully requests that this Court grant Merck's Motion to Exclude Testimony of Gary Sander, M.D.

Dated:  October 10, 2006                                                                  Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

833779v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

833779v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Motion to Exclude Testimony of Gary Sander, M.D., has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of October, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

833779v.1