UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to<br>Case No. 06-0810 | * | |
| CHARLES L. MASON, | * | MAGISTRATE JUDGE<br>KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF JOHN L. GUERIGUIAN, M.D.**

**(EXPERT CHALLENGE NO. 6)**

Plaintiff opposes Merck's motion to exclude the testimony of Dr. John L. Gueriguian by asserting that the scope of Dr. Gueriguian's expert testimony will be limited and that he is qualified to give general expert opinions that do not relate to Vioxx- or Merck-specific issues. But plaintiff's opposition fails to rebut the need to exclude Dr. Gueriguian's testimony for three reasons.  First, general expert testimony untethered to the specific issues in this case is completely irrelevant and too broad to assist the jury.  Second, the purported limitation to "general" opinions is belied by plaintiff's opposition itself, which makes plain that Dr. Gueriguian plans to opine on several issues related to Merck and Vioxx.  Third, Dr. Gueriguian's testimony, even as limited in his shorter report, goes beyond his expertise and into subjects on

833777v.1

which expert testimony is inappropriate. Accordingly, Dr. Gueriguian's testimony should be excluded in its entirety.

## I. DR. GUERIGUIAN'S "GENERAL" OPINIONS ABOUT THE LABELING PROCESS AND WHAT A "REASONABLE AND PRUDENT" PHARMACEUTICAL COMPANY WOULD DO ARE IRRELEVANT AND INADMISSIBLE.

Dr. Gueriguian's general opinions on "warning labels and the standards to which pharmaceutical companies should be held" are irrelevant and inadmissible. FED. R. EVID. 401. Plaintiff repeatedly states that he "does not intend to solicit testimony from Dr. Gueriguian regarding Vioxx or Merck specific issues." (Pl's Opp'n at 2.) Plaintiff supports this limitation by arguing that Dr. Gueriguian's testimony will only reiterate those opinions contained in his September 23, 2005 expert report – a report that never discusses or even mentions Merck or Vioxx. (Gueriguian September 23, 2005 Expert Report ("Gueriguian Rpt."), attached to Plaintiff's Opp'n as Ex. A.) If true, Dr. Gueriguian's opinions are irrelevant to any fact at issue in this case. Without tying Dr. Gueriguian's general opinions to the issues that the jury will decide – whether Merck failed to warn plaintiff's prescribers of known or knowable risks and whether Vioxx caused plaintiff's injury – the "general" expert opinions are entirely irrelevant and must be excluded.

## II. DR. GUERIGUIAN IS NOT QUALIFIED TO RENDER OPINIONS THAT ARE SPECIFIC TO VIOXX AND HIS PROFFERED OPINIONS RUN AFOUL OF *BUCKMAN*.

Despite repeated assurances, plaintiff's opposition contradicts the allegedly limited nature of Dr. Gueriguian's testimony. Plaintiff concedes that he intends to offer Dr. Gueriguian's opinions on the "[a]dequacy of Merck's warnings and whether Merck acted as a 'reasonable and prudent' pharmaceutical company." (Pl.'s Opp'n at 2, 9.) As discussed in Merck's motion, and unrefuted in plaintiff's opposition, Dr. Gueriguian is not qualified to offer opinions that are

2

specific to Vioxx or Merck. Also unaddressed by plaintiff is the fact that such opinions are only offered in support of a claim that Merck misled the FDA – a claim that is preempted by *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350, 353 (2001).

### A. Dr. Gueriguian Lacks The Qualifications Necessary To Render Opinions Related To Vioxx Or Merck's Involvement In The Labeling Process.

Dr. Gueriguian is not qualified to opine about what information should and should not be given to the FDA, or what the FDA would and would not do with information given to it. While Dr. Gueriguian was at the FDA, he worked with scientists to evaluate diabetic-related drugs. He did not have responsibility for labeling decisions, and did not work on any studies or drugs related to cardiovascular safety. (Gueriguian Rpt. at 2; July 12, 2006 Deposition of Dr. John L. Gueriguian at 157:25-158:3, 158:23-159:5, 160:19-25, attached to Merck's Mot. as Ex. A.) It is well settled that expertise in one area does not qualify a witness as an expert in another, even related, area. *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (excluding doctor's testimony when expert leaped from the area of his expertise to a matter in which he had no specialized knowledge or other supporting authority). Nevertheless, plaintiff intends to offer Dr. Gueriguian's general opinions on warnings and interaction with the FDA as they apply to Merck and Vioxx specifically. (Pl.'s Opp'n at 2, 9.) Dr. Gueriguian is clearly unqualified to offer such opinions, and no amount of experience with diabetic-related drugs can compensate for this inexperience.

### B. Dr. Gueriguian's Opinions That Merck Misled The FDA Or Did Not Otherwise Act Appropriately During The Labeling Process Are Inadmissible Under *Buckman*.

Dr. Gueriguian's attempt to second-guess Merck's disclosures to and interactions with the FDA is inadmissible for the independent reason that it amounts to a claim that Merck committed a fraud on the FDA. Dr. Gueriguian's testimony boils down to an assertion that

3

Merck was not forthcoming with the FDA and that, if it had been, the FDA would have acted differently. As discussed in detail in Merck's underlying motion, this is a claim that the United States Supreme Court has held is preempted by the FDCA. *Buckman*, 531 U.S. at 350, 353. Notably, plaintiff does not even address this point in his opposition; nor could he. Consequently, Dr. Gueriguian's attempt to second-guess the FDA's decisions about the adequacy of Merck's warnings and compliance with FDA regulations should be excluded.

**III.    DR. GUERIGUIAN'S SUBJECTIVE ETHICAL OR NORMATIVE STANDARDS CONCERNING FEDERAL REGULATIONS, THE PHARMACEUTICAL INDUSTRY IN GENERAL, AND MERCK SPECIFICALLY, ARE IRRELEVANT AND UNRELIABLE.**

Plaintiff's argument that Dr. Gueriguian is entitled to offer normative opinions is contrary to law and unfounded. Rule 702 does not permit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993). Yet, Dr. Gueriguian attempts to opine on several issues without explaining the basis for his opinions. Such evidence is inadmissible.

In its motion to exclude Dr. Gueriguian's testimony, Merck noted that Dr. Gueriguian offers no support for his opinions that "federal regulations governing pharmaceuticals are minimal standards" and that these regulations "should be exceeded where it is responsible and prudent to do so." (Merck's Mot. at 5; Gueriguian Rpt. at 4.) To refute this argument, plaintiff merely states "the FDA is responsible for monitoring . . . the pharmaceutical industry" and "is dependent upon the drug manufacturer to provide . . . information." (Pl.'s Opp'n at 8.) In no conceivable way does an annunciation of the FDA's responsibilities and those of the pharmaceutical industry support Dr. Gueriguian's personal opinion that the applicable federal

regulations are "minimal standards." Nor does anything in the regulations support such a contention.

Moreover, plaintiff fails to address the fatal deficiency of Dr. Gueriguian's normative opinions, which is that they would be impossible to satisfy. As discussed in Merck's motion, Dr. Gueriguian offers no guidance on what it means to "exceed" federal standards or when it would be "responsible and prudent" to do so. Similarly, Dr. Gueriguian simply opines that a "responsible" pharmaceutical company must exceed its legal obligations "when reasonably necessary" in order to "protect the public health and well-being." (Gueriguian Rpt. at 4, 11.) He offers no support for those normative standards or guidance on when something would be "reasonably necessary" or what other "obligations" should be met. Particularly in the arena of drug labeling – where the FDA has recognized that over-warning of remote risks may dilute warnings that address more common risks – Dr. Gueriguian does not make clear what a company would need to do even if it wished to comply with his personal rules. An expert's personal opinions that are not grounded in any established standard should be excluded under Rule 702. (*See* Merck Mot. at 5.)

In short, the Court should exclude Dr. Gueriguian's testimony because it amounts to nothing more than his own normative opinions, rather than meaningful and supported standards that could provide useful guidance to the jury.

**IV.   PLAINTIFF'S ARGUMENT THAT A PHARMACEUTICAL COMPANY CAN ALWAYS MAKE LABEL CHANGES WITHOUT FDA APPROVAL MISSTATES THE LAW AND IS IRRELEVANT.**

Dr. Gueriguian's interpretation of the "Changes Being Effected" ("CBE") regulation should be excluded for two reasons. First, in other Vioxx-related litigation, this Court has already rejected plaintiff's argument that the CBE procedure permits a manufacturer to unilaterally strengthen a warning label at any time without regulatory approval. (*See* Aug. 31,

2006 *Smith v. Merck* Order re Motions in *Limine* at 9; June 28, 2006 *Barnett v. Merck* Order re Motions in *Limine*; Nov. 20, 2005 *Plunkett v. Merck (Plunkett I)* Order re Motions in *Limine* at 7.) Second, plaintiff did not start taking Vioxx until September 2002, five months after the Vioxx label was changed. Therefore, opinions about whether the label could have been changed earlier using the CBE procedure are irrelevant to this action.

### A.    Dr. Gueriguian's Interpretation Of The CBE Regulation Misstates The Law.

This Court has already ruled that whether the CBE procedure can be used to change a label depends upon the nature of the proposed change. (*See* Aug. 31, 2006 *Smith v. Merck* Tr. at 11:21-12:7 ("it depends on what type of change and specifics of the label change"); June 28, 2006 *Barnett v. Merck* Order re Motions in *Limine*.) There is no reason for the Court to approach this issue differently here than it did in *Smith* and *Barnett*. Dr. Gueriguian's testimony that the CBE procedure can always be used is contrary to the Court's previous rulings and should be excluded.

The FDA regulations in effect in 2000 (when Merck first had access to unblinded VIGOR results) stated that "[a]ny change in labeling" required the pharmaceutical company to submit a supplemental application and "obtain approval . . . from FDA . . . prior to distribution of a drug product" with the labeling change. 21 C.F.R. § 314.70(b)(3)(i) (*as amended by* 63 Fed. Reg. 66,378, 66,399 (Dec. 1, 1998)).[1] As an exception to this general rule, the regulations provided that a pharmaceutical company could make a change without FDA pre-approval "[t]o add or strengthen a contra-indication, warning, precaution, or adverse reaction." 21 C.F.R.

---

[1] Plaintiff's citations to 21 C.F.R. § 201.57 are not applicable to the question posed here regarding the procedures for making a label change. That section sets forth specific requirements for the *content* and *format* of a drug label. The statement in 21 C.F.R. § 201.57(e) that "[t]he labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug" does not address whether such a revision may be made without prior FDA approval.

§ 314.70(c)(6)(iii)(A). This regulation is commonly referred to as the "Changes Being Effected" or "CBE" regulation.

Dr. Gueriguian opines that the CBE regulation established a rule that, no matter what the nature or complexity of the safety information at issue, a pharmaceutical company can always, as a matter of law, change its label to add or strengthen a warning or precaution without FDA pre-approval. (Pl.'s Opp'n at 5.) The FDA's interpretation of the CBE regulation – as demonstrated by statements from the FDA and the FDA's application of the CBE procedure – rejected Dr. Gueriguian's interpretation and read the CBE regulation to mean that a manufacturer may not always amend its labels without prior FDA approval. 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006) ("manufacturers typically consult with FDA prior to adding risk information to labeling"); *see also id.* at 3968-69 (similar language); FDA, *Guidance for Industry: Changes to an Approved NDA or ANDA* (Nov. 1999) ("Guidance") at 24-25, attached hereto as Ex. A.; *Amicus Curiae* Brief for the United States in Support of Defendants/Respondents SmithKline, 2003 WL 23527781, at *10-*11, filed in *Dowhal v. SmithKline Beecham Consumer Healthcare*, 32 Cal. 4th 910 (2004); *see also id.* at *31 ("[A] drug manufacturer's use of the 'changes being effected' supplement is generally limited to circumstances involving noncontroversial labeling changes.").

Application of the CBE procedure also contradicts Dr. Gueriguian's interpretation. As explicitly noted in the 2006 Final Rule, Dr. Gueriguian's opinion that a pharmaceutical company is free to use the CBE regulation to bypass FDA pre-approval to add or strengthen a warning or precaution concerning adverse events associated with a drug is inconsistent with the FDA's application of the CBE procedure "in practice." *See* 71 Fed. Reg. at 3934, 3969. Merck's own prior experience with the FDA in connection with a separate Vioxx labeling issue is illustrative of that practice. On October 6, 1999 (five months before Merck received the VIGOR data),

Merck submitted a CBE labeling change to the FDA in order to add two discrete sentences to the Vioxx label: one sentence adding risk information about the interaction between Vioxx and another drug, Warfarin, and the other calling attention to a pregnancy registry. (*See* Oct. 6, 1999 NDA 21-042: Vioxx (rofecoxib tablets), Special Supplement – Changes Being Effected, from Eric A. Floyd, Ph.D., Merck Research Laboratories, to the Food and Drug Administration, attached hereto as Ex. B.) The FDA rejected Merck's CBE submission, stating: "Changes of the kind you have proposed *are not the kind of changes permitted by regulation to be put into effect prior to approval of a supplement.*" (*See* Oct. 28, 1999 Letter from Anthony Zeccola, Food and Drug Administration, to Eric A. Floyd, Ph.D., Merck Research Laboratories (emphasis added), attached hereto as Ex. C.)

The FDA's statement about Merck's proposed CBE supplement confirms what is reflected in the 2006 Final Rule, in the case law, and in the FDA's interpretation of its own regulation in its official guidance. The CBE regulation is *not* appropriate for any and all safety labeling changes concerning adverse events associated with a drug. Dr. Gueriguian's opinion to the contrary must be excluded.

**B.    Dr. Gueriguian's Interpretation Of The CBE Procedure Is Irrelevant To Any Issue In This Case.**

Even if Dr. Gueriguian's testimony about the CBE procedure were not incorrect as a matter of law, is should still be excluded. Plaintiff asserts that Dr. Gueriguian will opine generally about the CBE procedure without tying his opinions to either Merck or Vioxx. (Pl.'s Opp'n at 2, 5; *see generally* Gueriguian Rpt.) As discussed above, this testimony is entirely irrelevant to any fact of consequence in this case as it does not relate to either Merck or Vioxx specifically. For this reason, it must be excluded.

8

Testimony about the CBE procedure is irrelevant for the additional reason that this is a post-VIGOR label change case. Plaintiff did not start taking Vioxx until September 2002, five months *after* the VIGOR data was incorporated into Merck's FDA-approved label for Vioxx. As the Court knows, in April 2002, after nearly two years of discussion and analysis of the data, the FDA approved a label that added information about the possible cardiovascular risk associated with Vioxx. (FDA website, "Sequence of Events with VIOXX, since opening of IND", at http://www.fda.gov/ohrms/dockets/ac/05/briefing/2005-4090b1_04_E-FDA-TAB-C.htm (last accessed August 14, 2006).) Because plaintiff did not begin taking Vioxx until September 2002, the only label at issue in this case is the label that already incorporated the VIGOR data. Therefore, any argument that Merck could or should have used the CBE mechanism to change the Vioxx label without FDA approval is irrelevant and inadmissible.

## V. CONCLUSION.

For the reasons stated above and in Merck's underlying motion, Merck respectfully requests that the Court grant its Motion to Exclude Testimony of John L. Gueriguian, M.D.

Dated: October 10, 2006                Respectfully submitted,

                                       */s/ Dorothy H. Wimberly*
                                       Phillip A. Wittmann, 13625
                                       Dorothy H. Wimberly, 18509
                                       STONE PIGMAN WALTHER
                                       WITTMANN L.L.C.
                                       546 Carondelet Street
                                       New Orleans, Louisiana  70130
                                       Phone:  504-581-3200
                                       Fax:    504-581-3361

                                       Defendants' Liaison Counsel

833777v.1

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

833777v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Motion to Exclude Testimony of John L. Gueriguian, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of October, 2006.

                                                          */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

833777v.1