UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| BOYD EDMONDS and | * | SECTION L |
|     JANET EDMONDS, Plaintiffs, | * | |
| | * | JUDGE ELDON E. FALLON |
|    versus | * | |
| | * | MAGISTRATE JUDGE |
| MERCK & CO., INC., Defendant, | * | KNOWLES |
| | * | |
| Case No. 05-5450, | * | |
| | * | |
|     & | * | |
| | * | |
| DONALD STINSON, Plaintiff, | * | |
| | * | |
|    versus | * | |
| | * | |
| MERCK & CO., INC., Defendant, | * | |
| | * | |
| Case No. 05-5494, | * | |
| | * | |
|     & | * | |
| | * | |
| TIMOTHY R. WATSON, Plaintiff, | * | |
| | * | |
|    versus | * | |
| | * | |
| MERCK & CO., INC., Defendant, | * | |
| | * | |
| Case No. 05-5545. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF MERCK'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Merck respectfully submits this amended motion to correct an error in its original motion regarding Alabama's statute of limitations, which has been found unconstitutional by the Alabama Supreme Court.

Plaintiffs Boyd Edmonds, Donald Stinson, and Timothy Watson each filed complaints against Merck directly in this Court after September 30, 2005, claiming personal injury from Vioxx®. Because Stinson and Watson each reside in a state with a one-year limitations period and filed suit in a state with a one-year limitations period, and because the ***latest*** possible date on which their claims could have accrued is September 30, 2004, the date Merck announced it was withdrawing Vioxx from the market, their claims are time-barred and should be dismissed. Edmonds's claims are similarly barred because Alabama's two-year limitation period expired on September 2, 2003, two years after Edmonds's last alleged injury date, and that state does not have a discovery rule that could potentially toll the statute of limitations.

While plaintiffs are likely to argue that they should be given reprieve from these deadlines under the *American Pipe* doctrine, which, in certain circumstances, permits tolling of statutes of limitations during the pendency of a class action, no Vioxx personal injury class actions have ever been pending in Kentucky or Tennessee, and those states have never recognized cross-jurisdictional tolling (*i.e.*, they toll limitations periods pending certification of a class action only when the relevant class action is pending in their own states' courts). In addition, the *American Pipe* doctrine affords a tolling benefit to plaintiffs for one class action only. And because plaintiffs allege injuries suffered during the pendency of the *Cain* nationwide class action filed against Merck in federal court in New York in May 2001, their one bite at the tolling apple – if any – expired under both their own states' laws and Louisiana law when the *Cain* plaintiffs amended their complaint to drop their personal injury allegations. Accordingly,

plaintiffs cannot rely on subsequently filed class actions to continue to toll their respective applicable limitations periods.

For these reasons, as discussed in more detail below, the Court should grant summary judgment to Merck in all three plaintiffs' cases.

## BACKGROUND

On May 29, 2001, Dominick Lettieri and Mary Lombardozzi filed a complaint in the United States District Court for the Eastern District of New York seeking certification of a "nationwide class of persons who are taking . . . Vioxx . . . [or] Celebrex." Complaint ¶ 1, *Lettieri v. Merck & Co., Inc.*, CV 01 3441 (E.D.N.Y. May 23, 2001) ( "Initial Cain Compl.") (attached as Ex. 1). Plaintiffs sought relief under several theories, including for personal injury. *Id.* ¶¶ 27-32 (failure to warn), ¶¶ 33-38 (strict liability), ¶¶ 39-45 (negligence). The complaint was amended August 1, 2001, substituting Alex Cain and William Watkins as new named plaintiffs and making other changes but retaining the personal injury claims. Amended Class Action Complaint, *Cain v. Merck & Co., Inc.*, CV 01 3441 (E.D.N.Y. Aug. 1, 2001) ( "First Am. Cain Compl.") (attached as Ex. 2). The complaint was amended a second time on September 18, 2002, and the personal injury claims were dropped at that time, prior to any disposition of the certification issue. Second Amended Class Action Complaint, *Cain v. Merck & Co., Inc.*, CV 01 3441. (E.D.N.Y. Sept. 18, 2002) ("Second Am. Cain Compl.") (attached as Ex. 3).

According to the complaints and Plaintiff Profile Forms filed by the three plaintiffs in these matters, plaintiff Edmonds resides in Alabama, was prescribed and took Vioxx there, and suffered two heart attacks in that state (one on March 27, 2001 and another on September 2, 2001). (*See* Edmonds Compl. ¶¶ 1, 9 (attached as Ex. 4); Edmonds Plaintiff Profile Form at 2-3, 5, 7-8 (attached as Ex. 5).) Plaintiff Stinson resides in Tennessee, was prescribed and took

3

Vioxx there, and suffered his alleged injury in Tennessee as well – a heart attack on October 14, 2000. (*See* Stinson Compl. ¶¶ 1, 5 (attached as Ex. 6); Stinson Plaintiff Profile Form at 2-3, 5, 8 (attached as Ex. 7).) Plaintiff Watson resides in Kentucky, was prescribed and took Vioxx in that state, and alleges that he suffered a stroke in Kentucky on August 23, 2002. (*See* Watson Compl. ¶¶ 1, 4 (attached as Ex. 8); Watson Plaintiff Profile Form at 2, 9, 10, 12 (attached as Ex. 9).) Each plaintiff attributes his injury to his use of Vioxx while the drug was on the market. (*See* Edmonds Fact Sheet at 5; Edmonds Compl. ¶ 9; Stinson Fact Sheet at 2, 5; Watson Fact Sheet at 2, 6.) Accordingly, each plaintiff was a putative member of the *Cain* class action. *See* First Am. Cain Compl. ¶ 1 (nationwide class includes "all persons who have taken either [Vioxx or Celebrex] since these drugs became available on the market in 1999").[1]

On September 24, 2004, an external safety board monitoring the results of a separate long-term study – the APPROVe study – informed Merck that interim data from the study showed an increased rate of cardiovascular events in the Vioxx arm compared to the placebo arm. (*See* MRK-ACH0000051–53 (September 24, 2004 facsimile from K. Horgan of Merck to P. Kim and B. Gertz of Merck forwarding APPROVe ESMB's meeting minutes and recommendations) (attached as Ex. 10).) Merck withdrew Vioxx from the market on September 30, 2004. Merck's withdrawal of Vioxx triggered substantial media attention and advertising campaigns by attorneys in all 50 states. *See, e.g.*, Rita Rubin, *Merck halts Vioxx sales*, USA Today, Oct. 1, 2004, at A1 (attached as Ex. 11); *see also* Thomas H. Maugh II and Denise Gellene, *Arthritis Drug Vioxx Pulled, Risk of Heart Attacks Is Cited*, L.A. Times, Oct. 1, 2004, at A1 (attached as Ex. 12); Gina Kolata, *A Widely Used Arthritis Drug Is Withdrawn*, N.Y. Times, Oct. 1, 2004, at A1 (attached as Ex. 13); Barbara Martinez, Anna Wilde Mathews, Joann S.

---

[1]      Because Watson was the last of the three plaintiffs to suffer an injury allegedly caused by his use of Vioxx, and because he alleges the injury occurred on August 23, 2002 (*i.e.*, while personal injury claims were still pending in the *Cain* litigation), each plaintiff was a putative member of and had personal injury claims in the *Cain* litigation.

Lublin and Ron Winslow, *Expiration Date: Merck Pulls Vioxx From Market After Link to Heart Problems --- Stock Plunges Amid Questions About Drug Giant's Future*, Wall St. J., Oct. 1, 2004, at A1 (attached as Ex. 14); Mark Kaufman, *Merck Withdraws Arthritis Medication - Vioxx Maker Cites Users' Health Risks*, Wash. Post, Oct. 1, 2004, at A01 (attached as Ex. 15).

Over one year later, on November 7, 2005, plaintiff Edmonds filed his complaint, followed a day later by plaintiff Stinson.  Plaintiff Watson filed his complaint the next week, on November 14, 2005.  Each plaintiff filed directly in this Court.  Each claims personal injury. Although numerous class actions were filed in the wake of the Vioxx withdrawal in 2004, no Vioxx personal injury class action has been pending in Kentucky or Tennessee at any time.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . [Merck] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Because "only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment," questions that are "unnecessary" to the resolution of a particular case "will not be counted."  *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

The Supreme Court has repeatedly "emphasized the importance of the policies underlying state statutes of limitations.  Statutes of limitations are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 487 (1980).  In keeping with the principles it elucidated in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) the Supreme Court has instructed that state statutes of limitations are "matters of local law properly to be

5

respected by federal courts sitting" in diversity.  *Guar. Trust Co. v. York*, 326 U.S. 99, 110

(1945); *see Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 (5th Cir. 1981) ("[I]n diversity

lawsuits, a federal court is ordinarily bound to look to the choice of law rules of the state in

which it sits to determine whether the state courts of that state would apply their own state's

statute of limitations or the statute of limitations of some other state.").  Thus, federal courts

sitting in diversity apply statutes of limitations provided by state law.[2]

     As set forth below, under Louisiana choice-of-law rules, the Court must consider both

Louisiana prescription rules and the rules of each plaintiff's home state.  Because plaintiffs'

claims are barred both under Louisiana law and the law of their own states, the Court need not

decide which of those laws to apply, however.  Either way, the claims are time-barred and

summary judgment is therefore appropriate.

**I.**     **LOUISIANA'S TWO-STEP CHOICE-OF-LAW REGIME ULTIMATELY POINTS THE COURT TO THE LIMITATIONS LAWS OF PLAINTIFFS' HOME STATES.**

     In order to decide which law to apply to plaintiffs' claims, the Court must conduct a

choice-of-law analysis under the choice-of-law principles of Louisiana, the state in which

plaintiffs chose to file their claims.  *See Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496-97

(1941) (forum state's choice-of-law rules apply in diversity case).

     Louisiana's choice-of-law rule for selecting the applicable limitations period (or

"prescription" period) in a particular case requires the Court to conduct two separate choice-of-

law determinations:  ***first***, the Court must determine what state's substantive laws govern the

proceeding, and ***second***, based on that determination, it must decide the applicable limitations

---

[2]     This is so even though state courts often deem their own statutes of limitation "procedural" in nature because "state courts may have slapped the 'procedure' label on an issue for purposes that are completely divorced from the policies underlying *Erie*."  *In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1156-57 (5th Cir. 1987) (en banc) (citing *Guaranty Trust*, 326 U.S. at 109), *vacated and remanded sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated in relevant part by* 883 F.2d 17, 17 (5th Cir. 1987) (en banc).

833976v.1

law.  Where, as here, "the substantive law of another state would be applicable to the merits of

an action brought in this state," Louisiana prescription law applies except in two circumstances:

> (1) If the action would be barred under Louisiana prescription law but allowed
> under the other state's law, and "maintenance of the action in this state is
> warranted by compelling considerations of remedial justice," La. Civ. Code Ann.
> art. 3549(B)(1), the court will apply the limitations law of the state whose
> substantive law governs.

> (2) If the action would not be barred under Louisiana prescription law but would
> be barred under the law of the state whose substantive law governs, then the
> action is allowed to proceed unless allowing the case to continue "is not
> warranted by the policies of this state and its relationship to the parties or the
> dispute nor by any compelling considerations of remedial justice."  *Id.* art.
> 3549(B)(2).

As set forth below, the Court need not undertake this analysis because plaintiffs' claims would

be barred both under their own states' laws (which will govern the substance of their claims) and

under Louisiana law.  Accordingly, regardless of which state's prescription law applies, their

claims are time-barred and must be dismissed.

> A.      **Each Plaintiff's Claims Are Governed By The Substantive Law Of His Home
> State.**

Under Louisiana's substantive choice-of-law rules, the Court should apply "the law of the

state whose policies would be most seriously impaired if its law were not applied to that issue."

La. Civ. Code Ann. art. 3542.  The key factors in making this determination include:

> (1) "the pertinent contacts of each state to the parties and the
> events giving rise to the dispute, including the place of conduct and
> injury, the domicile, habitual residence, or place of business of the
> parties, and the state in which the relationship, if any, between the
> parties was centered," *id.* art. 3542(1);

> (2) "the policies of . . . deterring wrongful conduct and of repairing
> the consequences of injurious acts," *id.* art. 3542(2);

> (3) "the policies and needs of the interstate and international
> systems, including the policies of upholding the justified
> expectations of parties and of minimizing the adverse

7

consequences that might follow from subjecting a party to the law of more than one state," *id.* art. 3515(2); and

(4) policies against forum shopping, *id.* art. 3515 rev. cmt. (c).

As this Court and others have recognized, these factors almost always direct the Court to the state in which the plaintiff resides and alleges he was injured.  (*See* Order & Reasons at 12, Aug. 30, 2006 ("FNC Order") (attached as Ex. 16) (noting that French and Italian law would apply to the claims of French and Italian Vioxx claimants, since they "were injured abroad," and "the relationship of the parties is clearly centered in Italy and France, since this is where the Plaintiffs were prescribed, purchased, and ingested Vioxx").)  *See also Oliver v. Davis*, 679 So. 2d 462, 468 (La. App. 1st Cir. 1996) ("Because a Louisiana resident allegedly suffered injuries in Louisiana, Louisiana law would probably be applied by either [a Florida or Louisiana] court to determine the negligence of Davis."); *Brookshire Bros. Holdings, Inc. v. Total Containment Inc.*, No. 04-1150, 2006 U.S. Dist. LEXIS 62576, at *14 (W.D. La. Sept. 1, 2006) ("After considering the impact of applying either state's laws in light of each state's relationship to the parties and the dispute, the place of injury, the expectation of the parties, the domicile and place of business of the parties, the Court finds that Texas law should be applied to those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana.").

This case is no different.  Alabama, Kentucky, and Tennessee each have a greater interest in the resolution of the injury claims of their residents than any other state, because those are the states in which plaintiffs live, where they took Vioxx, and where they claim their injuries were sustained.  Moreover, with regard to limitations policy, Alabama, Kentucky, and Tennessee have balanced the compensatory and deterrent interest served by their torts policies against the

8

interest in repose served by their limitations policies.[3]  *See, e.g.*, *Travis v. Ziter*, 681 So. 2d 1348, 1355 (Ala. 1996) ("At its core, the statute of limitations advances the truth-seeking function of our justice system, promotes efficiency by giving plaintiffs an incentive to timely pursue claims, and promotes stability by protecting defendants from stale claims.").  Both interests are served by applying their laws because these states have declared that their interest in securing compensation and deterrence runs for one or two years and no longer.

While plaintiffs in some Vioxx cases have sought to apply New Jersey law to claims of plaintiffs from other states, the Court has rightly applied the plaintiff's home state's laws to each trial held so far in the MDL proceeding.  That is consistent with this Court's historical practice.  In *Grabert v. New Palace Casino, LLC*, No. 03-0382 SECTION "K," 2005 U.S. Dist. LEXIS 36602, at *5 (E.D. La. Aug. 26, 2005), for example, a woman sued a casino after she sustained an injury while trying to sit down at a slot machine.  The Court considered the factors under Louisiana's choice-of-law test and applied Mississippi law, noting that the contacts, the place of injury, and the policy of Mississippi law favored it.  The same is true here.  New Jersey has no cognizable interest in securing compensation for citizens of other states; thus, no compensation interest stands to be frustrated by the application of another state's statute of limitations.  And while New Jersey has an interest in seeing that its domestic companies are sufficiently deterred from tortious behavior, that interest is more than satisfied by claims brought by New Jersey residents in that state.  (*Cf.* FNC Order at 11 (noting that the enormous volume of Vioxx litigation in the United States assures that its interests will be served without the addition of litigation by foreign plaintiffs).)  Thus, New Jersey's interests do not stack up against those of

---

[3]     Though Louisiana's first choice-of-law step requires a determination of what **substantive** law applies, the policy interests each state has in its limitations periods is also considered when the relevant conflict is the limitations period itself.  *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 489-90 (5th Cir. 2001) (examining policies supporting both a state's tort law *and* its limitation of that law in the form of statutes of limitation and repose).

plaintiffs' home states, and plaintiffs' claims should be governed by the substantive law of their own home states.

**B.      The Second Step Of Louisiana's Prescription Period Choice-of-Law Analysis Requires Application Of Louisiana Prescription Law.**

The second step of Louisiana's choice-of-law analysis effectively requires the Court to consider whether Louisiana prescription law differs from the laws of each plaintiff's home state. Although Louisiana law generally governs, if the plaintiffs' claims are barred by Louisiana law but allowed by their home states (or vice versa), the Court must consider whether to allow the action to proceed. *See* La. Civ. Code Ann. art. 3549. Here, however, this complicated analysis is unnecessary. As set forth below, plaintiffs' claims are barred both by their own states' laws and Louisiana law, because all four states have one-year limitations periods and because their claims cannot be saved by the *American Pipe* doctrine under any of these states' laws. Accordingly, defendants are entitled to summary judgment regardless of which law applies in all three cases.

**II.     ALL OF THE PLAINTIFFS' CLAIMS ARE BARRED UNDER LOUISIANA PRESCRIPTION LAW.**

Louisiana employs a one-year limitations period on personal injury claims. La. Civ. Code Ann. art. 3492. However, Louisiana also employs a discovery rule that postpones accrual of a cause of action while an injury or its cause are unknown. *E.g.*, *Reed v. St. Charles Gen. Hosp.*, 815 So. 2d 319, 322 (La. Ct. App. 4th Cir. 2002). Under the Louisiana discovery rule, accrual is held in abeyance only so long as ignorance of an injury and its cause is "not willful, negligent or unreasonable." *In re Med. Review Panel of Howard*, 573 So. 2d 472, 474 (La. 1991). The limitations period begins whenever, in light of actual or constructive notice, a reasonable plaintiff would be aware of his claim. *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (1970) (recognizing constructive notice); *Jordan v. Employee Transfer Corp.*, 509 So. 2d

10

420, 423 (La. 1987) (sustaining *Cartwright*'s basic rule but refocusing inquiry on reasonableness).

In *Touchet v. Baker Hughes Inc.*, 737 So. 2d 821 (La. App. 3d Cir. 1999), for example, a Louisiana appeals court held that discovery was triggered for plaintiffs exposed to a toxic spill when the plaintiffs exhibited symptoms and the "story regarding the spill was reported three times on television in the local news and once in the local newspaper." *Id.* at 825. The court declined to postpone discovery because the facts of the case suggested that "it would have been reasonable for the plaintiffs, at least, to attempt to find out whether their ailments could be connected to the spill. The plaintiffs are 'deemed to know' facts that they could have discovered through exercise of reasonable diligence." *Id.* 827.

Here, a reasonable plaintiff in Edmonds's, Stinson's, or Watson's shoes would have been on notice of a possible claim against Merck by the time the *Cain* litigation was underway.[4] During that time, from May 2001 until September 2002, the possible link between Vioxx and cardiovascular injury was widely aired in the media,[5] and that kind of media coverage continued right up until the date of withdrawal.[6] Even at the very latest, however, a reasonable plaintiff would have been on notice of his or her claims on September 30, 2004, the date that Merck announced the results of APPROVe and its decision to withdraw Vioxx from the market. That fact is evidenced by the thousands of plaintiffs who managed to file their claims within a year of

---

[4]    Even before the *Cain* litigation, there were numerous widely publicized articles regarding the alleged risks of Vioxx prior to the product's withdrawal. *See, e.g.,* Rita Rubin, *Data: Vioxx might raise heart risk*, USA Today, Feb. 9, 2001, at 05B (attached as Ex. 17); Ransdell Pierson, *Vioxx, Celebrex aim to profit from improved safety labels*, Reuters, May 21, 2000 (attached as Ex. 18).

[5]    *See, e.g.*, David Brown, *Heart Risk from Celebrex, Vioxx?  'Super Aspirin' Makers Contest Analysis*, Wash. Post, Aug. 22, 2001, at A04 (attached as Ex. 19); Melody Petersen, *Doubts are Raised on the Safety of 2 Popular Arthritis Drugs*, N.Y. Times, May 22, 2001, at C1 (attached as Ex. 20); Lindsey Tanner, *New studies add to debate over arthritis drugs and suspected risk of heart attacks*, Associated Press, May 26, 2002 (attached as Ex. 21).

[6]    *See, e.g.*, Thomas M. Burton and Patricia Callahan, *Vioxx Study Sees Heart-Attack Risk -- Merck Funded Research After Concerns Were Raised About its Painkilling Drug*, Wall St. J., Oct. 30, 2003, at B2 (attached as Ex. 22).

833976v.1

that date.  Thus, at the latest, each plaintiff's claim was stale under Louisiana's applicable limitation doctrine on October 1, 2005.

While plaintiffs may try to argue that their claims were tolled under *American Pipe* principles, that argument fails because:  (1) *American Pipe* tolling was available to plaintiffs, if at all, only once, during the pendency of the *Cain* personal injury action; and (2) *American Pipe* tolling is generally not available to plaintiffs awaiting certification of personal injury class actions, because reliance on the possibility of class treatment of such inherently individualized cases is objectively unreasonable.

In *American Pipe & Construction Co. v. Utah*, the U.S. Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554.  At the time, this rule was limited to "purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," *id.* at 553, but the rule was later extended to allow tolling when a plaintiff sought to file an entirely new action.  *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) ("[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors" (quoting *American Pipe*, 414 U.S. at 554)).

But the *American Pipe* doctrine is not without limitations.  Federal courts have uniformly held that the *American Pipe* rule operates only with respect to the first class action filed with regard to a specific controversy.  If class certification has been denied, plaintiffs cannot receive the benefit of tolling in a second, subsequently filed class action involving the same proposed class and claims.  *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985).  This doctrine is known colloquially as the prohibition on "stacking" or "piggybacking"

833976v.1

class actions.  Every federal circuit court to consider the question has adopted this rule,[7] and state courts that have considered the issue have generally adopted the same prohibition.

The *American Pipe* doctrine does not apply directly in a diversity case.  Though the federal circuits are divided on the issue, the U.S. Court of Appeals for the Fifth Circuit and others have held that, in the event of a conflict between the federal tolling rule and the tolling rules under the applicable state's statute of limitations, the *Erie* doctrine requires application of the state's tolling rule.  *See Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1147 (5th Cir. 1997) (noting that a state's interest in its own tolling rules has "quite considerable depth" and *Erie* requires application of state rule that would undermine the policy rationale of *American Pipe* because neither "the federal constitution nor federal law would be displaced"); *see also, e.g.*, *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999) (holding that "in any case in which a state statute of limitations applies – whether because it is 'borrowed' in a federal question action or because it applies under *Erie* in a diversity action – the state's accompanying rule regarding equitable tolling should also apply") (citing *Chardon v. Soto*, 462 U.S. 650, 660-62 (1983) and *Board of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980)).  Thus, the Court must

---

[7]     As the Ninth Circuit has noted:

The Supreme Court has not yet considered whether the filing of a class action tolls the statute of limitations for a subsequently filed successor class action. However, every circuit to consider the question, including this one, has held that such tolling is not available.  *See Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir.1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."), *cert. denied*, 142 L.Ed.2d 135, 525 U.S. 870, 119 S.Ct. 165 (1998); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir.1994) ("Plaintiffs may not piggyback one class action onto another and thus toll the statute of limitations indefinitely."); *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir.1988) ("The courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class."); *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir.1987) (holding that a class action tolls the statute of limitations only for subsequent individual actions, not for subsequent class actions); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir.1987) (same).

*Catholic Soc. Servs., Inc. v. I.N.S.*, 182 F.3d 1053, 1059 (9th Cir. 1999).

833976v.1

ask how each relevant state would interpret and apply *American Pipe* in deciding whether plaintiffs' claims are time-barred in this instance.

Many states have adopted a form of the *American Pipe* doctrine, but they have not applied it consistently.  Most significantly, some states afford "cross-jurisdictional" tolling, while others do not.  A state that does not recognize cross-jurisdictional tolling will not toll the statute of limitations pending certification of a related class action filed in the court of another state or in a federal court.  And even a state that observes some form of cross-jurisdictional tolling may not toll under all circumstances – for example, it may toll while a federal class action is pending within that state, but not while a class action is pending out-of-state.

Finally, several jurisdictions have held that *American Pipe* tolling is simply unavailable for personal injury cases because they are uncertifiable and filed merely to achieve an illegitimate tolling benefit for unnamed members of the purported class.   The Supreme Court itself justified the *American Pipe* rule in part because it found the putative class members' reliance on the pending certification decision to be reasonable.  *See Am. Pipe*, 414 U.S. at 553 (noting that "'maintenance of the class action was denied ***not*** for failure of the complaint to state a claim on behalf of the members of the class . . . not for lack of standing of the representative, ***or for reasons of bad faith or frivolity***'" (quoting decision below) (emphasis added)).  Seizing on this proviso, most jurisdictions to consider the issue have adopted a rule that reliance on a pending class must be reasonable for tolling to apply.  And because personal injury class actions are usually not certifiable, particularly in the context of pharmaceutical drugs and medical devices, *see, e.g.*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1089 (6th Cir. 1996) (recognizing the "national trend to deny class certification in drug or medical product liability/personal injury cases"), some jurisdictions have applied this rule to bar *American Pipe* tolling for such actions.

*See, e.g.*, *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1125 (Cal. 1988) (admonishing that personal injury plaintiffs "would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations. ***The presumption, rather, should be to the contrary*** . . . ." (emphasis added)); *see also Philip Morris USA, Inc. v. Christensen*, No. 68, Sept. Term, 2005, 2006 Md. LEXIS 484, at *50-52 (Md. Aug. 4, 2006) (expressing support for *Jolly*'s presumption against tolling in the mass tort context); *In re Rezulin Prods. Liab. Litig.*, MDL 1348, Civ. No. 03-8933, 2005 WL 26867, at *3 (S.D.N.Y. Jan. 5, 2005) (noting that the "wisdom of adopting the *American Pipe* rule in mass tort cases is, to say the least, highly debatable"); *Barela v. Showa Denko K.K.*, No. CIV. 93-1469 LH/RLP, 1996 U.S. Dist. LEXIS 7830, at *16 (D.N.M. Feb. 28, 1996) (expressing doubt whether a federal court should adopt *American Pipe* tolling for a state that had not adopted the doctrine in a mass-tort personal injury case in light of the fact that "most federal courts . . . refuse to permit the use of the class-action device in mass-tort cases" (citation and internal quotation marks omitted)).

Louisiana follows *American Pipe*. Under the Civil Code, a limitation period "is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue." La. Civ. Code Ann. art. 3462. Citing *American Pipe*, a Louisiana appeals court recently explained that this rule applies to class actions. *Smith v. Cutter Biological*, 770 So. 2d 392, 408 (La. App. 4th Cir. 2000). In *Smith*, plaintiff sued producers of a clotting factor for hemophiliacs after he contracted HIV by use of the products. The court determined that the plaintiff's claim was filed too late, *id.* at 400, and the plaintiff sought *American Pipe*-like tolling to save his claim. *Id.* at 408. To do so, however, he had to rely on several overlapping class action periods in order to make his claim timely. *Id.* at 408-10. The court rejected the effort, noting that article 3462 "was

15

833976v.1

not intended to interrupt prescription where the stacking of class actions is concerned" and citing federal cases discussing the stacking prohibition. *Id.* at 410 (citing *Basch*).

The court also embraced (in dicta) cross-jurisdictional tolling under the expansive language of article 3462, which requires tolling whenever an action is commenced in any "court of competent jurisdiction and venue." *Id.* at 408. That observation was consistent with the Louisiana Supreme Court's earlier statement that "it has become well settled that prescription may be interrupted under article 3462 by the timely filing of a suit in a court of competent jurisdiction and venue, regardless of whether it is a federal, Louisiana or another state court." *Taylor v. Liberty Mut. Ins. Co.*, 579 So. 2d 443, 446 (La. 1991).

Notwithstanding Louisiana's recognition of cross-jurisdictional tolling, these principles operate to bar plaintiffs' claims. The *Cain* nationwide class action filed in New York in 2001 against Merck was the first Vioxx personal injury class action to suspend plaintiffs' one-year limitation period, and the prohibition on stacking class actions prevented plaintiffs from benefiting from any subsequently filed class action, whether in Louisiana or elsewhere. *See Smith*, 770 So. 2d at 410 ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely.").

The fact that the *Cain* plaintiffs voluntarily dismissed their personal injury claims prior to a certification ruling does not change this result. As other courts have recognized, the test cannot be how the class action ends; otherwise, plaintiffs could file an unending series of class actions that they voluntarily dismiss in each case prior to certification, thereby short-circuiting the stacking rule. *See Hunter v. Am. Gen. Life & Accident Ins. Co.*, 384 F. Supp. 2d 888, 893 (D.S.C. 2005) (holding that stacking prohibition applies to voluntarily dismissed claims because allowing tolling would encourage "spin-off litigation" in which "counsel could initially pursue a

16

broad definition in one jurisdiction, voluntarily narrow it for settlement purposes, dismiss any remaining claims, and then revive the dismissed claims in multiple suits in other jurisdictions while gaining the benefit of tolling from the earlier litigation"); *see also Am. Pipe*, 414 U.S. at 561 (Blackmun, J., concurring) (urging that *American Pipe*'s rule "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights"); *Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring) (warning that the "tolling rule of *American Pipe* is a generous one, inviting abuse").

Finally, even if *Cain* did not disqualify plaintiffs from seeking additional subsequent tolling, Louisiana law bars reliance on pending classes when such reliance is unreasonable. *Cf. Smith*, 700 So. 2d at 409 (agreeing that "continued tolling of the statute of limitations after the district court denies class certification is unnecessary to protect any ***reasonable*** . . . reliance by putative class members on their former class representatives" (emphasis added) (quoting *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1382 (11th Cir. 1998))). *Smith* held in part that reliance on the possibility that a district court would reverse its negative ruling on a certification question was "ordinarily not reasonable" and thus that tolling was inappropriate. *Id.* Reliance on the hope that a court would certify a statewide or nationwide class action for personal injury is similarly not reasonable. As set forth in Merck's class certification briefing to this Court, court after court has resoundingly rejected personal injury pharmaceutical class actions. *See In re Am. Med Sys.*, 75 F.3d at 1089 (there is a "national trend to deny class certification in drug or medical product liability/personal injury cases").[8] Like the California

---

[8]      *See also In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 144-45 (E.D. La. 2002) (prescription drug) ("In the present case the monetary claims are dependent in a significant way on differences of each class member's circumstances. They will require additional hearings to resolve the disparate merits of each individual's case." (quotation omitted)); *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982)

833976v.1

courts, Louisiana courts would thus not afford *American Pipe* tolling in cases like this one, where reliance on the possibility of class certification is objectively and empirically unreasonable. *See Jolly*, 44 Cal. 3d at 1125. For this reason too, plaintiffs were required to file their actions by September 30, 2005, and because they failed to do so, Louisiana courts would bar their claims.

## III.   THERE IS NO NEED TO BALANCE LOUISIANA LAW AGAINST THE PLAINTIFFS' HOME STATES' LAWS BECAUSE PLAINTIFFS' CLAIMS WOULD BE BARRED UNDER THOSE STATES' LAWS AS WELL.

Louisiana's choice-of-law test requires a consideration of another state's tolling rule only if that rule would bar an action where Louisiana's rule would not, or vice-versa. In this case, Alabama, Kentucky, and Tennessee would, like Louisiana, each ban plaintiffs' claims. Thus, a choice-of-law comparison will ultimately prove unnecessary.[9]

---

(contraceptive device) ("In products liability actions . . . individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability."); *Zehel-Miller v. AstraZenaca Pharms., LP*, 223 F.R.D. 659, 663 (M.D. Fla. 2004) (antipsychotic drug) (certification of personal injury damages claims "would be indisputably inappropriate, since individual issues would overwhelm any common questions"); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 204 (D. Minn. 2003) (cholesterol drug) ("[N]o [federal] Court of Appeals decision has approved class certification of an action involving prescription drugs."); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (antidepressant) ("[I]ndividual questions of fact regarding causation . . . subvert any benefits to be gained through a class action proceeding."); *Mertens v. Abbott Labs.*, 99 F.R.D. 38, 41 (D.N.H. 1983) (prescription drug DES) (resolving common issue of a drug's capacity to cause injury would do "substantially nothing" to advance the litigation "[i]n light of the varied degrees of use, exposure and harm in each Plaintiff's case"); *Ryan v. Eli Lilly & Co.*, 84 F.R.D. 230, 233 (D.S.C. 1979) (synthetic estrogen) ("A class situation is simply not efficient when so much in the way of individual proof by each of the class members will obviously be required.").

[9]    Even if the Court finds that plaintiffs' claims are barred under their own states but could proceed in Louisiana, there is no compelling reason to apply Louisiana law. Under such circumstances, the Fifth Circuit has made it clear that maintenance of an action in Louisiana courts when they would be barred by the state supplying the applicable substantive law is "inappropriate." *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 492 (5th Cir. 2001) ("We are cautioned that 'if none of the parties are domiciled in this state and neither they nor their dispute are related to this state in any other significant way,' then 'the policies of this state would not be served by imposing on its overburdened courts the adjudication of a dispute which, but for the existence of jurisdiction, is essentially a foreign dispute.'" (quoting La. Civ. Code Ann. art. 3549 cmt. (i))). Particularly in light of Louisiana's *de minimis* interest in the maintenance of these actions, its more pronounced interest against becoming a magnet to other plaintiffs who have slept on their claims favors the application of the other states' laws. (*Cf.* FNC Order at 11 (noting the "administrative difficulties that are created when litigation piles up in congested centers rather than handled at its origin" (citation omitted) (quotation omitted)).)

833976v.1

### A.    Plaintiff Stinson's Claims Are Barred Under Tennessee Law.

Tennessee, whose law governs plaintiff Stinson's claims, observes a one-year limitation period for personal injuries in a product liability case.  Tenn. Code Ann. § 28-3-104.  The one-year period begins either at the date of injury or, if the plaintiff did not know the basis of his injury at the time, the claim begins to accrue when he discovers that basis and the identity of the tortfeasor.  *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982) (explaining that the discovery rule is an equitable necessity because "no judicial remedy was available to this plaintiff until he discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty").

Tennessee courts have explained that the "discovery rule will not protect claimants who ignore readily available information and do not investigate what they know or have reason to suspect."  *Maestas v. Somafor Danek Group, Inc.*, No. 02A01-9804-CV-00099, 1999 Tenn. App. LEXIS 97, at *10 (Tenn. Ct. App. Feb. 16, 1999).  Events giving rise to extensive media coverage have thus been held to trigger discovery whether plaintiffs understand their significance or not.  In *Maestas*, for example, the court held that because on "December 16, 1993 a nationwide television program publicized many of the allegations that plaintiffs are making here[,] [w]e do not see how the discovery rule could continue to toll the statute of limitations after that date, since the nature of the allegedly wrongful conduct was at minimum knowable, if not actually known, to plaintiffs from that day forward."  *Id.* at 12 (citation omitted).  Thus, under Tennessee law, like Louisiana, Stinson had to file his complaint – ***at the latest*** – by September 30, 2005, one year after Merck announced its withdrawal of Vioxx.  Because he did not do so, his claim would be barred under Tennessee law.

19

Nor are Stinson's claims saved by *American Pipe* tolling.  Tennessee recognizes *American Pipe* but has expressly rejected cross-jurisdictional tolling.  *Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("[W]e decline to adopt the doctrine of cross-jurisdictional tolling in Tennessee.").  Thus, Tennessee will not toll a limitation period unless the plaintiff is the putative member of a related class action pending in Tennessee courts.  Neither a federal nor state Vioxx personal injury class action has ever been pending in Tennessee.  Thus, Stinson cannot rely on any past or pending Vioxx class actions for *American Pipe* tolling.  Because Stinson's claims are time-barred under both Louisiana and Tennessee law, Merck is entitled to summary judgment without a further choice-of-law analysis.

## B.     Plaintiff Edmonds's Claims Are Barred Under Alabama Law.

Alabama, whose law applies to plaintiff Edmonds's claims, imposes a two-year limitations period on personal injury claims.  Ala. Code § 6-2-38(l).[10]  However, unlike the other two plaintiffs' home states, ***Alabama does not have a discovery rule***.  Accordingly, under Alabama law, a cause of action accrues at the time the plaintiff was injured, unless the plaintiff suffered a latent injury that is itself not discoverable.[11]

---

[10]     Alabama's one-year limitations period on personal injury claims is still on the books, Ala. Code § 6-5-502(b), and continues to be applied by some courts.  *See Johnson v. S. Energy Homes, Inc.*, 391 F. Supp. 2d 1118, 1122-23 (S.D. Ala. 2005) (applying one-year period of section 6-5-502(b)).  Because of a nonseverability clause affecting the application of section 6-5-502(b), however, this provision became inoperative when the Alabama Supreme Court struck a repose provision under 6-5-502(c) in *Lankford v. Sullivan, Long & Hagerty*, 416 So. 2d 996 (Ala. 1982).  *See* Ala. Code § 6-5-504 (nonseverability provision); *Ridling v. Armstrong World*, 627 F. Supp. 1057 (S.D. Ala. 1986) (declaring one-year period void and applying two-year period applicable to personal injury claims generally); *Daniel v. Heil Co., Inc.*, 418 So. 2d 96, 97 (Ala. 1982) (explaining that *Lankford* rendered all of section 6-5-502 inoperative).  As explained in this amended memorandum, an analysis of Mr. Edmonds's claims under a two-year limitations period yields the same result – *i.e.*, that plaintiff Edmonds's claims are time-barred.

[11]     Alabama's products liability discovery rule was not designed to protect plaintiffs in the event that the identity of the defendant is unknown; instead, it was designed to address the problem of latent injury unique to exposure to toxic substances.  For other kinds of injuries, a plaintiff must file a claim to preserve his rights, even if the identity of the tortfeasor is unknown.  *See Robinson v. Graves*, 456 So. 2d 793, 794-95 (Ala. 1984) (holding that tolling of statute of limitations in absence of a known defendant is only possible by filing a claim against a fictional defendant).  And the Alabama Supreme Court has made clear that only discovery rules expressly authorized by the state legislature should disrupt the operation of the state's statutes of limitation.  The application of an equitable discovery rule is therefore barred.  *See Travis*, 681 So. 2d at 1354 (acknowledging that courts in other jurisdictions

In *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983), for example, the Supreme Court of Alabama ruled that a plaintiff's cause of action arose when she was first injured by the insulin she was taking, not later when she discovered for the first time that a pharmacy had negligently supplied her with the wrong kind of insulin. *Id*; *see also Ramey v. Guyton*, 394 So. 2d 2 (Ala. 1980) (holding that statute of limitation for medical malpractice began running when plaintiff suffered a stroke, not when she later discovered that birth control pills prescribed to her by her doctor were the potential cause).

The same is true here. Because Edmonds was aware that he had heart attacks on March 27 and September 2, 2001, the limitations period accrued immediately, and he had to file his complaint no later than September 2, 2003, two years after his last injury.

Once again, plaintiff's claims cannot be saved by *American Pipe* tolling. **First,** while Alabama courts have not addressed the stacking rule, every federal and state court to do so had rejected indefinite tolling by the calculated stacking of multiple class actions and Alabama would likely do as well.[12] As discussed above, Edmonds's one and only chance for tolling would have ended when plaintiffs in *Cain* dropped their personal injury claims. Thus, the prohibition on stacking class actions would have prevented Edmonds from relying on any subsequently filed class actions under Alabama law, just as it did under Louisiana law.

**Second**, even if plaintiff's claims were not barred by the "no stacking" rule, Alabama would not afford *American Pipe* tolling in a case like this, because it permits reliance on pending class actions only when such reliance is reasonable. *See Redman Homes, Inc. v. Surtees*, 933 So. 2d 1100, 1103 & n.1 (Ala. Civ. App. 2005) (holding that *American Pipe* tolling is not available

---

have employed equitable discovery rules but explaining that "these cases are not persuasive because this Court will not apply the discovery rule unless it is specifically prescribed by the Legislature").

[12]     Because there are Vioxx class actions pending in Alabama, this memorandum does not address cross-jurisdictional tolling under Alabama law.

833976v.1

to putative class members who "know or should know that the administrative proceeding constitutes the *exclusive* method of obtaining the relief they seek" (emphasis added)).  As discussed above, reliance on the hope that a court would certify a statewide or nationwide class action for personal injury claims is simply not reasonable, particularly in the context of pharmaceutical litigation.  Accordingly, a reasonable litigant concerned about preserving his rights would file an individual claim without awaiting the certification decision of whatever putative class or classes he might be a member of.  (Indeed, thousands of plaintiffs have filed actions or signed on to tolling agreements with Merck for just that reason.)

In short, under Alabama law, Edmonds had to file his action by September 2, 2003, two years after his last heart attack.  He failed to do so, waiting until November 8, 2005 to file his complaint and thereby missing his deadline by over two years.  For this reason, his claim would be time-barred under Alabama law.

C.     **Plaintiff Watson's Claims Are Barred Under Kentucky Law.**

Plaintiff Watson's claims would be similarly barred under Kentucky law since like Tennessee, Kentucky also has a one-year limitation period for personal injury claims.  Ky. Rev. Stat. Ann. § 413.140(1)(a).  As in Tennessee, a personal injury cause of action does not accrue in Kentucky until discovery of the injury and its cause, including the identity of the tortfeasor. *Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 819 (1991) (explaining that "a cause of action will not accrue . . . until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct" (citations omitted) (quotation omitted)).

Kentucky's discovery rule operates similarly to Louisiana's and Tennessee's.  Once substantial media coverage supplies the information necessary to state a claim, the clock starts ticking.  For example, in *Blanton v. Cooper Industries*, 99 F. Supp. 2d 797, 802 (E.D. Ky. 2000),

22

the district court held that local media coverage of water contamination caused by a power plant triggered discovery. It did so even though the media coverage confined its discussion of the contamination to the "Dayhoit community," in which the plaintiffs did not reside. The court explained that "media coverage of the [relevant facts] was so widespread and pervasive that anyone exercising ordinary, reasonable care and diligence should have discovered the cause of their injuries." *Id.* Moreover, the fact that plaintiffs might not have seen the stories in the media did not save the claims.

> [Plaintiff's] claim that he never heard anyone talk about the contamination, never heard anything on the radio about it, or never saw anything on TV about it is also difficult to believe. More to the point, however, these claims demonstrate that he failed to exhibit the qualities of attention, knowledge, intelligence and judgment that society requires of its members for their own protection.

*Id.* at 802-03 (quotation omitted). Application of Kentucky's discovery rule yields a similar result to the rules of the other states. ***At the very latest***, Watson was put on notice of his claims on September 30, 2004 – the date on which Merck announced the Vioxx withdrawal. Indeed, Watson alleges in his complaint that it was the very results of the APPROVe study that "confirmed ***what researchers had been saying for years***, i.e., that Vioxx significantly increases the risk of thrombotic events." (Watson Compl. ¶ 27.) Watson failed to file by September 30, 2005, however, waiting instead until November 14, 2005. Thus, Watson's claims are stale under Kentucky law as well.

Finally, Watson's claim is not saved by tolling because Kentucky has never recognized *American Pipe* tolling. *See Highland Park Ass'n of Bus. & Enters. v. Abramson*, No. 94-6424, 1996 U.S. App. LEXIS 19122, at *14 (6th Cir. July 3, 1996) (noting that "Kentucky law does not specify the tolling effect of a class action when class certification has been denied"). Though Kentucky courts have never expressly rejected *American Pipe* tolling, they have generally held

23

that tolling is inappropriate unless expressly authorized by the legislature.  *Cf. Roman Catholic Diocese v. Secter*, 966 S.W.2d 286, 288 (Ky. Ct. App. 1998) (noting that "Kentucky courts have generally refused to extend the discovery rule without statutory authority to do so" and declining to extend it in that case).  Thus, this Court should respect Kentucky's interest in the vitality of its limitations rules and not invent a tolling doctrine that Kentucky's courts have never adopted for themselves.  Indeed, this Court has previously declined to author an *American Pipe* doctrine for a state that had not yet embraced one on its own.  *See Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995) ("The limitations periods of *American Pipe* and *Crown, Cork* were derived from federal statutes.  Here, we are dealing with Hawaii's limitation statutes.  Because none of them provide for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown, Cork* can be treated as applicable precedent."); *see also Barela v. Showa Denko K.K.*, No. CIV. 93-1469 LH/RLP, 1996 WL 316544, at *4 (D.N.M. Feb. 28, 1996) (explaining that no "overriding federal interest in class actions mandates application of *American Pipe* in diversity cases in the absence of applicable state tolling law").[13]

Even if Kentucky adopted *American Pipe*, however, Watson's claims would still be barred.  No Vioxx personal injury class action is or ever has been pending in Kentucky.  Thus, unless Kentucky would not only adopt *American Pipe* tolling but also a doctrine of cross-jurisdictional tolling, Watson would have no pending class action to point to as a basis for tolling his limitation period.  As the U.S. Court of Appeals for the Fourth Circuit has explained, federal courts should not invent a cross-jurisdictional tolling doctrine for a state that has not even

---

[13]      When a state court has not spoken with respect to a particular question of law, federal courts sitting in diversity must make an "*Erie* guess" about what rule the state's highest court would adopt.  Federalism concerns counsel against making guesses that would work a dramatic change in state law.  For example, in *Rhynes v. Branick Manufacturing Corp.*, 629 F.2d 409 (5th Cir. 1980) the Fifth Circuit rejected a personal injury plaintiff's suggestion that Texas would adopt an innovative theory of product liability on the ground that it should tread lightly when asked to embrace a "substantive innovation" in state law.  *Id.* at 410 (explaining that "[w]hatever the merits or demerits of the proposed new rule, for us to adopt it for Texas would be presumptuous").

833976v.1

embraced *American Pipe* tolling for suits filed in the state itself.  *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 286-87 (4th Cir. 1999).  And even cross-jurisdictional tolling could not save Watson's claims unless Kentucky rejected the rule against stacking, which would make it the first state or federal jurisdiction to do so.  Furthermore, even if Kentucky were to adopt some form of *American Pipe*, Watson would independently be prevented from seeking tolling because, as discussed *supra*, his reliance on the possible certification of a personal injury class action would be objectively unreasonable.  Thus, under every possible scenario and every potentially applicable state's laws, Watson's claims are time-barred and should be dismissed.

## CONCLUSION

Plaintiffs' claims are time-barred regardless of whether the Court applies Louisiana prescription law or the law of their respective home states.  For the foregoing reasons, the motion for summary judgment should be granted.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Defendants' Liaison Counsel

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005
Attorneys for Merck & Co., Inc.

833976v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Amended Memorandum of Law in Support of Merck's Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 10th day of October, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

833976v.1