# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
BETH ANN McNELLIS, on behalf    :
of the Estate of Theodore       :
DeAngelis, Deceased, and IN     :
HER OWN RIGHT,                   :     HONORABLE JEROME B. SIMANDLE
                                 :
                Plaintiffs,      :     Civil No. 05-1286 (JBS)
                                 :
        v.                       :
                                 :     OPINION
PFIZER, INC., et al.,            :
                                 :
                Defendants.      :
```

APPEARANCES:

Gregory S. Spizer, Esq.
ANAPOL, SCHWARTZ, WEISS, COHEN, FELDMAN & SMALLEY, P.C.
402 Park Boulevard
Cherry Hill, New Jersey 08002
    Attorney for Plaintiffs

M. Karen Thompson, Esq.
Steven A. Karg, Esq.
NORRIS, McLAUGHLIN & MARCUS, P.A.
721 Route 202-206
P.O. Box 1018
Somerville, New Jersey 08876
    and
Malcolm E. Wheeler, Esq. (pro hac vice)
WHEELER, TRIGG KENNEDY, LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
    Attorneys for Defendant Pfizer, Inc.

**SIMANDLE**, District Judge:

This products liability case arises from the suicide death of Theodore DeAngelis on January 30, 2003. Plaintiffs, Beth Ann McNellis, on behalf of the estate of Theodore DeAngelis, deceased, and in her own right, bring this action contending that

Zoloft, an antidepressant drug manufactured by Defendant Pfizer, Inc., ("Pfizer") which Theodore DeAngelis began taking shortly before he died, was responsible for his suicide.  Plaintiffs contend principally that Pfizer's warnings regarding suicide as a possible adverse reaction associated with Zoloft were inadequate, and that Pfizer is liable for failure to warn under New Jersey Product Liability Act.  In 2005, Pfizer filed a motion for summary judgment arguing that Plaintiffs' state law tort claims are preempted by the Federal Food, Drug and Cosmetic Act (the "FDCA") and its implementing regulations.  On December 29, 2005, this Court issued an Opinion (the "December 29 Opinion") and Order (the "December 29 Order") denying Pfizer's motion, without prejudice to renewal after a period of factual discovery. Presently before the Court is Pfizer's motion to vacate this Court's summary judgment order or, in the alternative, to certify under 28 U.S.C. § 1292(b) the December 29 Order for immediate interlocutory appeal.  For the reasons expressed below, the Court will (1) deny Pfizer's motion to vacate this Court's December 29 Order but (2) will grant Pfizer's motion to certify the December 29 Order (as augmented by today's Order) for interlocutory appeal and, pursuant to 28 U.S.C. § 1292(b), stay the proceedings in this Court pending a determination by the Court of Appeals.

## I.   **BACKGROUND**

The Court will include only a brief summary of the relevant facts.  Theodore DeAngelis ("DeAngelis") was a sixty-four year old retiree who, in late 2002, began to feel depressed and consulted his family doctor.  Mr. DeAngelis was initially prescribed Lexapro, an anti-depressant, but disliked that medication and was prescribed Zoloft instead on January 22, 2003.  Six days later, Mr. DeAngelis consulted a psychiatrist, who prescribed a higher dose of Zoloft.  Two days later, on January 30, 2003, Mr. DeAngelis was found dead, having taken his own life.  Mr. DeAngelis apparently had no prior history of depression or suicidal tendencies, and had not previously taken anti-depressant medications before Lexapro.

Plaintiff Beth Ann McNellis ("McNellis"), suing individually and as executrix of the estate of her father, DeAngelis,[1] claims that (1) Zoloft, a medication prescribed for Mr. DeAngelis, can and does "drive some people to their death" by suicide; (2) Pfizer failed to adequately warn Mr. DeAngelis's physician of risks of suicidality associated with Zoloft that had become apparent prior to his prescribing of Zoloft to Mr. DeAngelis; and (3) the purported failure-to-warn caused Mr. DeAngelis to ingest

_____

[1]   McNellis and DeAngelis shall be referred to collectively as the "Plaintiffs."

Zoloft and become more prone to the suicide which ended his life.
(Compl. at ¶¶ 10, 12, 16.)

Plaintiffs' claims against Defendant Pfizer include
allegations of (1) defective design, N.J.S.A. 2A:58C-2, et seq.
(Count I), (2) failure-to-warn (Count II), (3) violations of the
New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, et seq. (Count
III), and (4) breach of express warranty (Count IV).  Plaintiffs'
primary contention is that Pfizer failed to adequately warn of
the risk of suicidality associated with antidepressants such as
Zoloft, despite the presence of the warning label which the FDA
had authorized to be given verbatim.  Pfizer filed a motion for
summary judgment, arguing that Plaintiffs' state law tort claims
are preempted by the federal Food, Drug and Cosmetic Act and its
implementing regulations.  On December 29, 2005, this Court
denied Pfizer's motion.  See McNellis v. Pfizer, Inc., 2005 U.S.
Dist. LEXIS 37505 (D.N.J. December 29, 2005).

This Court based its December 29, 2005 ruling in part on
regulations of the Food and Drug Administration (FDA) at 21
C.F.R. § 314.70(c)(6) which, under certain circumstances, allows
a pharmaceutical manufacturer to strengthen warnings while FDA
approval is being sought for an enhanced warning.  See id.
Specifically, the Court held that "[i]f Plaintiffs can prove to
the fact finder that Pfizer had, prior to January, 2003,
'reasonable evidence of an association of a serious hazard with a

drug,' see 21 C.F.R. § 201.57(e), then the enhanced warning sought by Plaintiffs herein would not be preempted by the FDCA." Id. at *33.

Pfizer now brings this motion (1) to vacate this Court's December 29 Order or, (2) in the alternative, to certify the December 29 Order for interlocutory appeal, and (3) for an order staying discovery pending appeal.  Pfizer moves to vacate the order on the basis that new evidence exists that establishes the actual meaning and intent of 21 C.F.R. § 314.70.  Pfizer cites as new evidence a document published by the Food and Drug Administration ("FDA" or the "Agency") on January 24, 2006, about a month after this Court's December 29 Opinion, titled "Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products" (the "Final Rule"). The Final Rule, according to Pfizer, explicitly explained the agency's purposes, policies, and intent regarding Section 314.70, how the agency precludes any deviation in labeling notwithstanding the language of Section 314.70, and why preemption should apply in cases such as the present case.  See 21 Fed. Reg. 3922, 3933-36, 3967-69 (Jan. 24, 2006).  The FDA's new reading of its labeling regulations, the text of which is unchanged in relevant part, constitutes the new evidence that Pfizer posits in this motion to vacate.

## II.   DISCUSSION

### _____ A.   Pfizer's Motion to Vacate

The district court has inherent power to vacate or revise its interlocutory orders before final judgment when justice so requires.  See Gallant v. Telebrands Corp., 35 F. Supp. 2d 378, 394 (D.N.J. 1998).  An interlocutory order, such as the prior order herein denying summary judgment, may be vacated when there is newly discovered, non-cumulative evidence or in light of relevant changes in the facts or law of a case that would have altered earlier rulings by the Court.  See id.; see also Electric Mobility Corp. v. Bourns, 87 F. Supp. 2d 394, 401 (D.N.J. 2000)("Reconsideration may be justified on the basis of an intervening change in law . . . and is not necessarily barred by Local Civ. R. 7.1(g), requiring motions for reconsideration to be filed within ten days of an order.")  Such a motion to vacate, however, is not intended as a vehicle to re-litigate issues that have already been decided.  See Gallant, 35 F. Supp. 2d at 394.  Rather, "[i]n the absence of newly discovered, non-cumulative evidence, the parties should not be permitted to reargue previous rulings made in the case."  Id.

### 1.   The Preamble to the Final Rule is New Evidence

In its submissions and at oral argument, Pfizer argues that there have been two significant developments since the December 29 Order which constitute new evidence and that this new evidence

should cause the Court to reconsider its denial of Pfizer's
earlier motion for summary judgment.  The most significant
development, Pfizer argues, is the issuance of the Final Rule on
January of 2006.  The preamble to the Final Rule (the
"Preamble"), according to Pfizer, constitutes new, compelling
evidence requiring vacation of this Court's December 29 Order
because it confirms the position the FDA had taken in amicus
briefs in other cases that Pfizer had earlier submitted for
consideration by this Court.[2]  The second development is the
recent decision of <u>Colacicco v. Apotex, Inc.</u>, 432 F. Supp. 2d 514
(E.D. Pa. 2006), in which the court (1) gave deference to the
FDA's interpretation (outlined in the Preamble) of its own
regulations, and (2) held that the regulations to the FDCA
preempt state failure-to-warn tort claims.

Plaintiffs counter-argue that Pfizer's motion to vacate
rests on a faulty premise -- that the Preamble to the FDA's newly
issued Final Rule constitutes new evidence.  According to
Plaintiffs, the Preamble simply repeats the same position that
was already argued to and rejected by this Court.  Plaintiffs
point out numerous examples of where both Pfizer and the Court
have explained that the issue before the Court on Pfizer's motion

_____

[2]  Specifically, Pfizer submitted amicus briefs from the
<u>Motus v. Pfizer, Inc.</u>, 358 F.3d 659 (9th Cir. 2004) (the "<u>Motus</u>
brief") and <u>Kallas v. Pfizer, Inc.</u>, No. 2:04-CV-0998 (Utah
September 15, 2005)(the "<u>Kallas</u> brief").  Each of these briefs
was considered herein previously and they are not "new."

for summary judgment was whether the FDCA and the FDA's
regulations conflict with New Jersey's failure-to-warn law and
whether the state law cause of action is preempted.  Now,
according to Plaintiffs, Pfizer seeks the "unusual" relief of a
motion to vacate because the FDA's position on the preemptive
effect of its regulations -- which is identical to the FDA's
position as articulated in the <u>Motus</u> and <u>Kallas</u> amicus briefs --
is now articulated in "an advisory preamble" to the Final Rule.
(Pl.'s Opp. Br. at 5.)  Plaintiffs continue, contending that the
format for this advisory opinion is meaningless because the
Preamble and the <u>Motus</u> and <u>Kallas</u> amicus briefs carry the same
weight -- they are both advisory positions from the FDA, <u>see</u> 21
C.F.R. § 10.80, and, thus, there is no new evidence before the
Court.  <u>See</u> <u>Gallant</u>, 35 F. Supp. 2d at 378.

This Court disagrees with Plaintiffs and finds that the
Preamble to the Final Rule is new evidence that should be
considered in a motion to vacate.  The Preamble is an official
agency statement purporting to establish preemption of
conflicting state law claims.  At minimum, the Final Rule is an
advisory opinion representing the formal position of the FDA.  As
an advisory opinion, it "represents the formal position of FDA on
a matter and except [under unusual situations involving an
immediate or significant danger to health], obligates the agency
to follow it until it is amended or revoked."  21 C.F.R. §

10.85(e).  The Preamble is also distinguishable from an amicus
brief.  Amicus briefs, by their nature, are drafted in the
context of specific ongoing litigation.  The Motus and Kallas
briefs, for example, represent the FDA's position on an issue
that is tailored to those particular cases.  In contrast, in the
Preamble, the Agency (1) put forth its general position on the
preemptive effect of its regulations (rather than a position
tailored to a particular case) and (2) is obligated to follow it
until amended or revoked.  See 21 C.F.R. § 10.85(e).

> ### 2.  Although the Issuance of the Preamble is "New Evidence," it does not Warrant Vacation of this Court's December 29 Order
>
> #### a.  Pfizer's Argument

Next Pfizer argues that the issuance of the Final Rule
articulating the FDA's interpretation of its regulations
(specifically, that the regulations preempt state tort law)
requires this Court to vacate its December 29 Order.  According
to Pfizer, because the Preamble represents an administrative
agency interpreting its own regulations, the FDA's interpretation
of regulations related to the FDCA are entitled to substantial
deference.  See Auer v. Robbins, 519 U.S. 452 (1997)(courts must
give an administrative agency's interpretation of its own
regulations substantial deference).  Specifically, Pfizer argues
that, in the Preamble, the FDA reaffirms that "under existing
preemption principles, FDA approval of labeling...preempts

conflicting or contrary State law." 71 Fed. Reg. at 3934. The
Preamble to the Final Rule also addresses the factual situation
where the FDA has specifically considered and rejected the
warning a plaintiff advocates, and explains why such an action by
a plaintiff would, if allowed to proceed, impair the Agency's
safety purposes and policies. Id. Specifically, the Preamble
states:

> FDA believes that State laws conflict with and stand as
> an obstacle to achievement of the full objectives and
> purposes of Federal law when they purport to compel a
> firm to include in labeling or advertising a statement
> that FDA has considered and found scientifically
> unsubstantiated.

Id. at 3935. Pfizer argues that this statement explains why two
positions that served as the basis for this Court's December 29
Order misinterpret the agency's regulations. First, the FDA
states that its labeling regulations are not "minimum standards"
(as the Court's Opinion holds) but "establish both a 'floor' and
'ceiling.'" Id. Second, the FDA states that Section 314.70 --
the FDA regulation that explicitly permits drug manufacturers to
unilaterally strengthen warning labels at any time without
regulatory pre-approval -- negates the preemptive effect of
labeling requirements and "conflicts with the agency's own
interpretations" of its own regulations. Id. Rather, the FDA
explains that Section 314.70 does not preclude preemption because
the FDA remains the final arbiter of the form and content of all

labeling regardless of whether the manufacturer may temporarily alter a medication's label.

Next Pfizer argues that the Final Rule also addresses why preemption precludes a plaintiff from arguing to a jury or court that a manufacturer withheld information from the FDA.   The Preamble to the Final Rule states that the FDA precludes:

> [C]laims that a drug sponsor breached an obligation to warn by failing to include a statement in labeling or in advertising, the substance of which has been proposed to FDA for inclusion in labeling, if that statement was not required by FDA at the time plaintiff claims the sponsor had an obligation to warn (unless FDA has made a finding that the sponsor withheld material information relating to the proposed warning before plaintiff claims the sponsor had the obligation to warn.)

21 Fed. Reg. at 3936; see Buckman Co. v. Plaintiff's Legal Comm., 531 U.S. 341, 352-53 (2001)("fraud on the FDA" theories are preempted by federal law); Garcia v. Wyeth-Ayerst Labs., 385 F.3d 961, 966 (6th Cir. 2004)(affirming district court decision finding preemption because "Buckman teaches that state tort remedies requiring proof of fraud committed against the FDA are foreclosed since federal law preempts such claims.")

## b.   Analysis

The FDCA contains no explicit preemption of state law as to labeling of pharmaceutical drugs, as Congress has historically declined to take this step.[3]   If the FDCA is seen as preempting

---

[3]   In contrast, the Medical Devices Amendment of 1976 to the FDCA contains an express preemption provision that is considerably broader than the limiting principle of the conflict

state tort claims for failure to warn, it is only through
conflict preemption that this can occur.  Absent such language,
this Court's inquiry is limited to whether Plaintiffs' claim
"would stand as an obstacle to the accomplishment and execution
of the objective of the safety and effectiveness" of the drug
specifically and "would conflict with the federal requirements
imposed' by the FDCA."  Horn v. Thoratec Corp., 376 F.3d 163, 179
(3d Cir. 2004)(internal quotations omitted).

This Court must be mindful that the Supreme Court has
instructed that there is a presumption against conflict
preemption, and that the Court should presume "that the historic
police power of the States were not to be superceded by the
Federal Acts unless that was the clear and manifest purpose of
Congress."  New York Conference of Blue Cross & Blue Shield Plans
v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)(internal
quotations omitted).  With this in mind, this Court finds that,
despite the issuance of the Preamble in January of 2006, vacation
of the Court's December 29 Order is not warranted for two
reasons.  First, the text of the regulatory language upon which
this Court seized in rejecting Pfizer's preemption argument

_____

preemption doctrine in that it "preempts not only when a state
law actually conflicts with federal law, but even when a state
law is merely 'different from, or in addition to,' [a Medical
Devices Amendment] requirement applicable to the medical device
at issue."  McNellis, 2005 U.S. Dist. LEXIS at *30 (citing 21
U.S.C. § 360k(a)).

(i.e., that a drug manufacturer is permitted to unilaterally strengthen the warnings on its labels under certain circumstances) was not changed in the Final Rule amendments. Indeed, the text of the relevant FDA regulations has been unchanged for years.  As such, there can be no conflict preemption because the FDA's regulations do not conflict with New Jersey's failure-to-warn laws.  Second, while the Court's deference to the agency's interpretation is substantial, it is not dispositive of the issue because (1) the FDA's position regarding the preemptive force of its regulations has not been consistent, requiring this Court to give it less deference, (2) the regulations at issue empower drug manufacturers to enhance the labeling warnings beyond the approved text when new risks emerge (otherwise, these regulations would have no meaning at all), and (3) as this Court explained in its December 29 Opinion, this Court finds certain of the cases Pfizer relies on in support of their argument unpersuasive, as they interpret medical device labeling regulations that contain an express preemption clause, while the Food, Drug and Cosmetic Act does not.

### 1. The FDA's Final Rule Does Not Conflict with New Jersey's Failure-to-Warn Law

In its December 29 Opinion, this Court found that no conflict existed as a result of Pfizer's alleged inability to comply with both state and federal requirements.  McNellis, 2006 U.S. Dist. LEXIS at *16-17.  In making this conclusion, the

13

Court noted that the FDA's regulations at issue "explicitly permit drug manufacturers to unilaterally strengthen warning labels at any time without regulatory pre-approval." Id. at * 17 (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)).  Moreover, when discussing FDA regulations that permit a drug manufacturer to "add or strengthen a statement about drug abuse, dependence, psychological effect, or overdosage" or "add or strengthen an instruction about dosage or administration that is intended to increase the safe use of the drug product" without prior approval, see 21 C.F.R. § 314.70(c)(6)(iii)(B)-(C), this Court held that "[t]hese regulations require a manufacturer to issue a warning whenever there is 'reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.'"  Id. at * 17 (citing 21 C.F.R. § 201.57(e)). The Court concluded that "the FDCA and the FDA's regulations do not conflict with New Jersey's failure-to-warn law because those federal regulations merely set minimum standards with which manufacturers must comply."  Id. at *18.

Here, vacation of this Court's December 29 Order is not warranted because the regulatory language seized upon by the Court in rejecting Pfizer's preemption arguments (see 21 C.F.R. § 201.57(e) and 314.70(c)(6)) is unaffected by the rule amendments articulated in the Final Rule.  FDA regulations explicitly allow a manufacturer to add or strengthen warnings without prior FDA

14

approval.   See 21 C.F.R. § 314.70(c)(6)(iii)(A).   Indeed, the
amended version of 21 C.F.R. § 201.57(e) (which will be
recodified as 21 C.F.R. § 201.80(e)) will still place an
affirmative responsibility upon drug manufacturers to revise a
drug's label to "to include a warning as soon as there is
reasonable evidence of an association of a serious hazard with a
drug; a causal relationship need not have been proved."   21
C.F.R. § 201.57(e)).   As such, the FDA's approved warnings will
continue to reflect merely "minimum standards," to be enhanced as
soon as new evidence of a serious hazard exists, whether or not a
causal relationship is proved.   To the extent that the Preamble
purports to forbid a manufacturer from enhancing the warning when
reasonable evidence of an association of a serious hazard
emerges, the Preamble is squarely contradicted by the plain
language of the regulations themselves, namely, 21 C.F.R. §
314.70(c)(6)(iii)(A) and 21 C.F.R. § 201.57(e).

The Preamble's words are in irreconcilable tension with the
Final Rule itself.   Specifically, the Final Rule states:

> While a sponsor is permitted to add risk information to
> the [full prescribing information] without first
> obtaining FDA approval via a [change being effected]
> supplement, FDA reviews all such submission and may later
> deny approval of the supplement, and the labeling remains
> subject to enforcement action if the added information
> makes the labeling false or misleading under Section
> 502(a) of the Act.

71 Fed. Reg. at 3934.  Thus, despite the issuance of the Final Rule and the language existing in the Preamble, the rationale of the Court's December 29 Opinion remains sound.

> **2.   The Preamble Cannot be Enforced to Nullify the FDA's Own Regulations it Purports to Interpret.**

As discussed previously, under the Final Rule, 21 C.F.R. § 314.70(c)(6)(iii) will still explicitly permit a drug manufacturer to change the labeling of a drug in order to "add or strengthen a contraindication, warning, precaution or adverse reaction . . . ."  Moreover, the amended version of 21 C.F.R. § 201.57(e) (now 21 C.F.R. § 201.80(e)) will still place an affirmative duty upon drug manufacturers to revise a drug's label to include a warning "as soon as there is reasonable evidence of an association of serious hazard with a drug . . . ."  If drug manufacturers were to follow the FDA's interpretation of these regulations as set out in the Preamble -- which states that the FDA's labeling requirements are not "minimum standards" and that, instead, those regulations "establish both a 'floor' and a 'ceiling,'" see 21 Fed. Reg. at 3934, -- drug manufacturers would be precluded from enhancing a warning on their own.  As such, the Preamble cannot be enforced as doing so would nullify Section 314.70(c)(6)(iii) and Section 201.57(e).  An agency's interpretation of its own regulations which would nullify those regulations is not entitled to controlling weight.

16

   3. **The Interpretation Set Out in the Preamble is Not Entitled to Substantial Deference Because the FDA's Position Regarding Preemption has not been Consistent.**

According to Pfizer, the FDA's interpretation of its own regulation (Section 314.70) is controlling unless that interpretation is "clearly erroneous" or "inconsistent" with FDA regulations; here, Pfizer continues, the FDA's conclusion that Section 314.70 does not preclude preemption is "neither plainly erroneous nor contrary to any FDA regulation." (Def.'s Br. at 7.) Pfizer also argues that the FDA's assessment of the preemptive effect of its actions is also entitled to substantial deference. In support of this position, Pfizer cites Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996), in which the Supreme Court held that the FDA, in interpreting the express preemption provision of the Medical Devices Act (21 U.S.C. § 360(k)), "is uniquely qualified to determine whether a particular form of state law 'stands as an obstacle to the . . . execution of the full purpose of objective of Congress,' and therefore, whether it should be pre-empted." 518 U.S. at 496 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). This is because the FDA has a "special understanding of the likely impact of both state and federal requirements, as well as an understanding of whether . . . state requirements may interfere with federal objectives." Id. at 506 (Breyer, J., concurring). The Supreme Court has ruled

17

similarly with respect to the deference a court must give to the
Department of Transportation's interpretation of its regulations.
See Geier v. American Honda Motor Co., 529 U.S. 861, 883
(2000)(holding that because the underlying "subject matter is
technical" and the background into the issue "complex and
extensive," the Department of Transportation was "uniquely
qualified to comprehend the likely impact of state
requirements.")  Thus, according to Pfizer, the Court should
vacate its December 29 Order and grant Pfizer summary judgment
because Plaintiffs' claims are preempted by the FDCA.

For the reasons next discussed, this Court, as it did in its
December 29 Opinion with respect to legal positions taken by the
FDA in amicus briefs, declines to give the Preamble preemptive
force of law for two reasons.  First, according to recent Supreme
Court precedent, this Court is required to give less deference to
an agency's interpretation of its own regulations if the agency's
interpretation of those regulations has not been consistent.
Second, this Court finds that the majority of cases cited by
Pfizer in support of its argument that this Court should grant
deference to the FDA's interpretation of its regulations involve
the agency's interpretation of an express preemption clause.  As
such, these arguments carry little weight in this Court's
determination of the present regulations.

18

### (i)   Inconsistency between the FDA's 2006 Preamble and the 2000 Proposed Rule

In determining the amount of deference to give to agency interpretations of their own regulations, this Court must consider whether an agency's interpretation of its own regulations has been consistent.  See United State v. Mead Corp., 533 U.S. 218, 228 (2001)("The fair deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to (1) the degree of the agency's care, (2) its consistency, formality and relative expertness . . . .")(emphasis added); see also Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417 (1993)("[T]he consistency of an agency's position is a factor in assessing the weight that position is due.")  The Supreme Court has affirmed this stance towards deference to the FDA's interpretation of the Public Health Services Act, see Hillsborough County v. Automated med. Labs, Inc., 471 U.S. 707, 714 (1985)[4], and more recently in the Environmental Protection Agency's interpretation of the Federal

---

[4]   In Hillsborough County, when discussing the amount of deference to give to the FDA's interpretation of the FDA's blood plasma regulations, the Court stated "[t]he FDA's statement is dispositive on the question of implicit intent to pre-empt unless either the agency's position is inconsistent with clearly expressed congressional intent, or subsequent developments reveal a change in that position."  Hillsborough County, 471 U.S. at 714 (emphasis added).

Insecticide, Fungicide, and Rodenticide Act.  See Bates v. Dow
Agrosciences, LLC, 544 U.S. 431 (2005).[5]

Here, the FDA's interpretation of regulations in 2006 (as
expressed in the Preamble to the Final Rule) is in stark contrast
to the FDA's position regarding the same regulations outlined in
the FDA's 2000 Proposed Rules.  As discussed previously, in the
Preamble to Final Rule, which represents the finalized version of
a proposal that was originally published in December 2000, the
FDA fields comments submitted in response to the original
proposal.  In particular, the FDA addresses a number of comments
expressing concern that the new labeling requirements "might have
product liability implications" and requesting that the FDA
"state in the final rule that FDA approval of labeling . . .
preempts conflicting and contrary State law, regulations, or
decisions of a court of law . . . ."  71 Fed. Reg. at 3933-34.
In responding to those comments, the Final Rule discusses why, in
its view, FDA regulations preempt State law tort claims.

The position of the FDA as outlined in the Final Rule is
opposite to the position of the FDA as stated in its December
2000 proposal of the same amendments (the "2000 Proposal.")  See

---

[5]  In Bates, the Supreme Court rejected the Environmental
Protection Agency's position supporting preemption, explaining
that the agency's argument in favor of preemption was
"particularly dubious given that just five years ago the United
States advocated the interpretation [i.e., no preemption] that we
adopt today."  544 U.S. at 449.

65 Fed. Reg. 81082 (Dec. 22, 2000).  The 2000 Proposal explicitly
stated that its regulations <u>do</u> <u>not</u> have preemptive effect.  <u>See</u>
<u>id.</u>  Rather, the preamble to the 2000 Proposal explained that the
FDA did not want its regulations to preempt state tort law,
stating that "there should be little, if any, impact from this
rule, if finalized, on the States" and that the "FDA has
determined that this proposed rule <u>does</u> <u>not</u> contain policies that
have federalism implications or that <u>preempt</u> <u>State</u> <u>law</u>."  <u>Id.</u>[6]
(emphasis added).

Also contained in the 2000 Proposal is a discussion of
"Executive Order 13132: Federalism."  <u>Id.</u> at 81103.  In the 2000
Proposal, the FDA states that it has "analyzed this proposed rule
in accordance with Executive Order 13132: Federalism . . .
[which] requires Federal agencies to carefully examine actions to
determine if they contain policies that have federalism
implications or that preempt State law" and concluded that:

> Because enforcement of these labeling provisions is a
> Federal responsibility, there should be little, if any,

---

[6]  The Court notes too that the position taken by the FDA in
the 2000 Proposal was entirely consistent with the position the
Agency took in 1998 in the Preamble to the new regulations
regarding consumer medications guides.  <u>See</u> 63 Fed. Reg. 66378
(Dec. 1, 1998.)  Specifically, the comments stated that:

> FDA's regulations establish the minimum standards
> necessary, but were not intended to preclude the states
> from imposing additional labeling requirements.  States
> may authorize additional labeling....

<u>Id.</u>

impact from this rule, if finalized, on the States, on
the relationship between the National Government and the
States, or on the distribution of power and
responsibilities among the various levels of Government.
In addition, this proposed rule does not preempt State
law. Accordingly, FDA has determined that this proposed
rule does not contain policies that have federalism
implications or that preempt State law.

Id. (emphasis added). However, in the Preamble to the Final Rule

in 2006, the FDA has changed its position on the preemptive

effect of the very same regulations while still maintaining that

the FDA complied with Executive Order 13132:

> [The FDA has] analyzed this final rule in accordance with
> the principles set forth in Executive Order 13132 [and]
> [h]ere, FDA has determined that the exercise of State
> authority conflicts with the exercise of Federal
> authority under the act.
>             .    .    .    .
> In conclusion, the agency believes that it has complied
> with all of the applicable requirements under Executive
> Order 13132 and has determined that this final rule is
> consistent with the Executive order.

71 Fed. Reg. at 3967-68.

Because of the unexplained change in position, under

the rule in Bates and Hillsborough, this Court must give

less deference to the FDA's interpretation of its

regulations.

Further, the 2006 Preamble was a novation, not

subjected to prior public notice or comment while inverting

the agency philosophy standing behind the regulations when

proposed in 2000. While an agency's explanatory statement,

composed after receiving comment upon the duly-published

proposed regulations, is admittedly not itself subject to notice and comment before final publication, the abrupt rejection of the agency's own prior interpretation (while the regulations themselves are unchanged) suggests a degree of informality yielding an interpretation unhinged from the text and original intent of the regulations themselves.

> **(ii) The case law cited by Pfizer does not support its position that the FDA's interpretation should be given deference**

Finally, as noted in the December 29 Opinion, the case law cited by Pfizer does not support its argument that the FDA's most recent opinion on preemption (i.e., the Preamble) is entitled to deference.  Specifically, Pfizer cites <u>Medtronic, Inc. v. Lohr</u>, in which the Supreme Court held, in the context of medical devices, that the FDA "is uniquely qualified to determine whether a particular form of state law 'stands as an obstacle to the . . . execution of the full purpose of objective of Congress,' and therefore, whether it should be pre-empted."  518 U.S. at 496 (quoting <u>Hines</u>, 312 U.S. at 67); <u>see also</u> <u>Horn</u>, 376 F.3d at 171 (holding that, while the FDA's interpretation of statutes it has been charged by Congress with enforcing is not fully dispositive of the issues in the case, "the Supreme Court has instructed us that the FDA's preemption determinations

23

are significant and should inform our interpretation" of the preemption clause of the Medical Device Amendments to the FDCA.)

As noted in the December 29 Opinion, "the issue before this Court is not one of express preemption, as presented in those cases [i.e., Medtronic and Horn] addressing the language set forth explicitly by Congress in the Medical Device Amendments ("MDA") of 1976 to the FDCA." McNellis, 2005 U.S. Dist. at *30.  In Medtronic, the Supreme Court afforded deference to the FDA's determination of the preemptive effect of the medical device labeling regulations because it found that Congress had included an express preemption clause in the statute that explicitly authorized the FDA to preempt state law.  Medtronic, 518 U.S. at 496. Congress, however, "did not extend such preemptive force to the regulation of pharmaceutical drugs in the FDCA." McNellis, 2005 U.S. Dist. at *30.

Thus, the reasoning in McNellis remains sound and this Court will not vacate its December 29 Order.  The Preamble, without more, does not signal to this Court Congressional intent to obviate state law.  The issuance of the Preamble does not change the fact that Congress has not expressed an intent to preempt state failure-to-warn laws with respect to pharmaceutical drugs.  See e.g., Bates, 544 U.S. at 449 ("If

24

Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly.")  Thus, this Court remains "unwilling to find, as Pfizer would have it, that Congress intended to obviate the very state laws that provide remedies to consumers harmed by dangerous products and deceptive marketing in the absence of clear and compelling Congressional statement."  McNellis, 2005 U.S. Dist. at *31.

### 3.    The Recent Decision in Colacicco v. Apotex, Inc. does not Warrant Vacation of this Court's December 29 Order

In its supplemental submissions to this Court and at oral argument, Pfizer urges this Court to follow the recent decision of Colacicco v. Apotex, Inc., 432 F. Supp. 2d 514 (2006) in which a district court in the Eastern District of Pennsylvania granted summary judgment in favor of a defendant-pharmaceutical company on grounds that the FDA's regulations preempt state failure-to-warn laws. Specifically, in Colacicco, the district court gave substantial deference to the FDA's interpretation of its own regulations -- as outlined in the Preamble -- including the FDA's interpretation that Section 314.70 preempts state tort law.  See id.

Having considered the holding in Colacicco, this Court will not depart from its holding that the Preamble should not be afforded the force of law.  First, it is fundamental, but bears repeating, that Colacicco is not binding on this Court.  Thus, while the Colacicco opinion is persuasive authority on this Court, the holding is not controlling.  Second, for the reasons discussed supra, this Court respectfully disagrees with Colacicco that the "principles of deference do not allow [the Court] to question the FDA's interpretation of its own regulations . . ." or that the Court must defer to the FDA's interpretation of its own regulations.  Id. at 528.  This overstates the deference due to an agency's interpretation under the present circumstances.  Under well-settled precedent, where Congress has given no implicit empowerment to the FDA to preempt state law when the FDA deems it appropriate, this Court can not conclude that a high degree of deference is warranted where (1) the agency's interpretation has been inconsistent and (2) where there is no ambiguity in the federal regulations in question here.  As such, the Court concludes that the recent decision in Colacicco does not warrant vacation of this Court's December 29 Order.

26

**B.   Pfizer's Motion for Interlocutory Appeal**

As an alternative to vacating this Court's December 29 Order, Pfizer advocates that the Court certify the Order for immediate interlocutory appeal.  Under 28 U.S.C. § 1292(b), interlocutory review is appropriate if the appeal (1) involves a controlling question of law; (2) there is a "substantial ground for difference of opinion" about that question of law; (3) and where immediate appeal may materially advance the ultimate termination of the litigation.[7]  See Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974).  Interlocutory appeal under § 1292(b), however, is to be "used sparingly" and only in "exceptional" cases.  Hulmes v. Honda Motor Co., 936 F. Supp. 195, 208 (D.N.J. 1996)(citing 16 Charles A. Wright, et al., Federal Practice and Procedure, § 3929 at 132 (1977)); see Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 480

---

[7]   Section 1292(b) ("Interlocutory decisions") states, in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b).

(1977).  As such, even if Pfizer meets all three requirements, this Court may still deny certification as the decision to deny certification is entirely within the Court's discretion.  See Bachowski v. Usery, 545 F.2d 363 (3d Cir. 1976).  According to Pfizer, the preemption issue presented satisfies all three prongs of the interlocutory appeal test, while Plaintiffs oppose interlocutory appeal.

### 1. Controlling Question of Law

The Third Circuit Court of Appeals has held that a "controlling question of law" is one in which, either: (1) if decided erroneously, would lead to reversal on appeal; or (2) is "serious to the conduct of the litigation either practically or legally."  See Katz, 496 F.2d at 755 (citations omitted); see Public Interest Research Group of N.J., Inc. v. Hercules, Inc., 830 F. Supp. 1549, 1554 (D.N.J. 1993).  The Third Circuit has held that the preemptive scope of federal law is a "controlling question of law" for interlocutory appeal purposes.  See Cipollone v. Liggett Group, Inc., 789 F.2d 181, 183 (3d Cir. 1986)(finding that question of whether Federal Cigarette Labeling and Advertising Act preempts state common law claims granted review under Section 1292(b)); see also C.E.R. 1988, Inc. v. Aetna Casualty and Surety Co., 386 F.3d 263 (3d Cir. 2004)(accepting for interlocutory appeal the question whether National Flood Insurance Program preempted state tort claims).

28

Here, there is little question that the preemption issue
would be dispositive if decided in Pfizer's favor and therefore
is "controlling" under either definition advanced by the Third
Circuit in Katz.  In addition, Plaintiffs concede that the
summary judgment decision is a controlling question of law.
(Pl.'s Opp. Br. at 15.)   As such, this Court finds Pfizer has
satisfied the first requirement of the three-prong test.

### 2.   Substantial grounds for a difference of opinion

The second requirement for an interlocutory appeal is that
the question of law at issue present "substantial grounds for a
difference of opinion."  28 U.S.C. § 1292(b).   Here, there is
sufficient grounds for a difference of opinion for two reasons.

First, numerous conflicting decisions can constitute a
sufficient basis for the finding that substantial differences of
opinion exist.  See White v. Nix, 43 F.3d 374, 378 (8th Cir.
1994)(conflicting and contradictory opinions provide substantial
grounds for a difference of opinion); see also Oyster v. Johns-
Manville Corp., 568 F. Supp. 83, 88 (E.D. Pa. 1983)
(identification of "a sufficient number of conflicting and
contradictory opinions" would provide substantial ground for
disagreement).  Here, the district courts throughout the country
have come to different conclusions when addressing the same issue
of law addressed by this Court in its December 29 Opinion.
Specifically, the cases of Colacicco, Dusek v. Pfizer, Inc. and

29

Needleman v. Pfizer, Inc. have held that state failure-to-warn

claims were preempted by the FDCA and the FDA regulations.  See

Colacicco, 432 F. Supp. 2d at 536; Dusek v. Pfizer, Inc., No. 02-

3559, 2004 U.S. Dist. LEXIS 28056 (S.D. Tex. Feb. 20, 2004) and

Needleman v. Pfizer, Inc., No. 03-3074, 2004 U.S. Dist. LEXIS

15495 (N.D. Tex. Aug. 6, 2004).  In contrast, a number of recent

decisions addressing the same issue have held, consistent with

this Court's December 29 Opinion, that the FDA regulations

establish minimum requirements such that they do not preempt

state laws.  See Jackson v. Pfizer, Inc., 432 F. Supp. 2d 964

(2006); Madden v. Wyeth, No. 03-0167, 2005 U.S. Dist. LEXIS 19989

(N.D. Tex. 2005); Witczak v. Pfizer, 377 F. Supp.2d 726 (D. Minn.

2005); Sybinski v. Pfizer, No. YC047439 (Cal. Super. Ct., County

of Los Angeles, July 12, 2005); Zikis v. Pfizer, No. 04-8104,

2005 U.S. Dist. LEXIS 27253 (N.D. Ill. Nov. 8, 2005); Miles v.

Pfizer, 03-731C (M.D. La. Mar. 30, 2005); and Cartwright v.

Pfizer, Inc., 369 F. Supp.2d 876 (E.D. Tex. 2005).  Such a split

in authority certainly constitutes a "sufficient number of

conflicting and contradictory opinions."

Second, this Court can rest its conclusion that a

substantial difference of opinion exists on the fact that the

FDA's position -- as established in the Preamble to the Final

Rule -- that Section 314.70 requires a finding of preemption, is

in contrast to this Court's conclusions in its December 29

Opinion and today.  Thus, Pfizer has satisfied the second prong
of the analysis.

### 3.   Resolution of Issues Will Materially Advance the Termination of Litigation

Third, Pfizer must prove that resolution of the issue to be
appealed will materially advance the termination of the
litigation.  See 28 U.S.C. 1292(b).  This presents a closer
issue.  One "critical requirement [is] that [an interlocutory
appeal] have the potential for substantially accelerating the
disposition of the litigation."  In re Duplan Corp., 591 F.2d
139, 148 n.11 (2d Cir. 1988).  According to Pfizer, because none
of Plaintiffs' claims can survive the dismissal of their failure-
to-warn claim, the resolution of this issue may terminate this
litigation at the summary judgment stage.  Plaintiffs disagree.
According to Plaintiffs, any grant of interlocutory review would
have the opposite effect as it would halt this litigation as the
Third Circuit reviewed the issue.[8]

In the December 29 Opinion and Order, this Court provides a
roadmap by which a limited period of discovery will be undertaken
during which Plaintiffs may acquire essential information and
provide an expert's report, to determine whether Pfizer had

------------------------------------------------------------

[8]  Plaintiffs also contend that, "because the Court's
finding is so clearly supported by case law . . . the Third
Circuit would in all likelihood affirm the District Court's
finding and trial would proceed as intended originally."  (Pl.'s
Opp. Br. at 17.)

"knowledge of a heightened risk of suicidality, which should have
resulted in enhanced labeling beyond the FDA-approved warning."
McNellis, 2005 U.S. Dist. LEXIS 37505 at *33.  Specifically, the
Court stated:

> If Plaintiffs can prove to the factfinder that Pfizer
> had, prior to January 2003, "reasonable evidence of an
> association of a serious hazard [suicidality] with a
> drug [Zoloft or the SSRI class generally,]" see 21
> C.F.R. § 201.57(e), then the enhanced warning sought by
> Plaintiffs herein would not be preempted by the FDCA.

Id. at *33.  If Plaintiffs then have no evidence, then their case
cannot withstand summary judgment and the case will be over soon.
If Plaintiffs survive summary judgment, then they will have
demonstrated a reasonable basis upon which Pfizer shall have
enhanced its warning of suicidality consistent with the governing
regulations, 21 C.F.R. § 314.70(c)(6)(iii) and 201.57(e), and
there is no conflict between the FDCA and the New Jersey Product
Liability Act, and hence no conflict preemption.  It is tempting
to let this case go forward to this phase of renewal of the
Defendant's summary judgment motion to test whether Plaintiffs
can meet this standard, consistent with the FDA's regulations.

On balance, however, given the dispositive nature of the
preemption issue, immediate appellate review will prevent the
needless expenditure of resources on further discovery and
renewed summary judgment motion practice, in the event Defendant
were to succeed on appeal.

## III.   <u>CONCLUSION</u>

For the reasons discussed above, Pfizer's motion to vacate this Court's December 29 Order will be denied.  The Court finds that the FDCA does not preempt a plaintiff from claiming that an FDA-approved warning was inadequate under State law if the plaintiff is able to demonstrate that the manufacturer knew of "reasonable evidence of an association of a serious hazard with a drug" and thus had a duty to supplement its warning under 21 C.F.R. § 201.57(e).  While Pfizer has demonstrated that new evidence (in the form of the Preamble) exists, this Court is not persuaded that the Preamble should be given the force of law under the circumstances explained above, nor should it persuade this Court to vacate its December 29 Order.  However, this case is appropriate for interlocutory review as the appeal meets all three criteria under 28 U.S.C. § 1292(b).  As such, this Court will grant Pfizer's motion to certify the Order for immediate interlocutory appeal.[9]  Finally, because this Court is certifying

---

[9]  The precise question to be certified for interlocutory appeal is stated:

> Whether that the United States Food and Drug Administration's requirements for the form and content of the labeling for the prescription antidepressant Zoloft preempted New Jersey's failure-to-warn law, under the doctrine of conflict preemption, where the FDA's regulations at 21 C.F.R. 201.57(e) and 314.70(c)(6)(iii) permit a manufacturer to unilaterally enhance its warning when the manufacturer has reasonable evidence of an association of a serious hazard with a drug.

the Order for immediate interlocutory appeal, it is appropriate
for this Court to stay the proceedings pending a determination by
the Court of Appeals.

The accompanying Order is entered.

**September 29, 2006**                     **s/ Jerome B. Simandle**
DATE                                       JEROME B. SIMANDLE
                                           United States District Judge