UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION: L(3) |
| | * | |
| | * | JUDGE FALLON |
| | * | MAG. JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO:**
  *Barnett v. Merck & Co., Inc.*, 06-485

## ORDER AND REASONS

Pending before the Court is the Plaintiff Steering Committee's ("PSC") Motion to Compel the Appearance of David Anstice (Rec. Doc. 4352, pp. 13-24). For the following reasons, the motion is GRANTED.

**I.  BACKGROUND**

Mr. Anstice is currently Merck & Co., Inc.'s ("Merck") President of Human Health for Canada, Latin America, Japan, Australia, and New Zealand. Prior to serving in his current capacity, Mr. Anstice served as Merck's President of Human Health for the United States. As part of his responsibilities as Merck's President of Human Health for the United States, Mr. Anstice was responsible for the marketing activities and commercial operations of Merck during the time Vioxx was being developed and marketed.

On April 19, 2006, the PSC filed a Generic Motion in Limine (Rec. Doc. 4352). The third issue addressed in the Generic Motion in Limine was a motion to compel the appearance of a Merck corporate representative, namely Mr. Anstice, at the July 24, 2006 trial of *Barnett v. Merck & Co., Inc.*, 06-485.

1

According to the PSC, much of the Plaintiff's products liability claims in *Barnett* focus on Merck's allegedly aggressive direct to consumer advertising campaign and Merck's failure to warn of Vioxx's alleged health risks. In this regard, the PSC argues that it requires the testimony of a corporate designee, such as Mr. Anstice, to establish Merck's negligence in these areas, to move relevant Merck documents into evidence, and to have a corporate presence that can respond to the Plaintiff's inquiries at trial.

## II.     PRESENT MOTION

In its present motion, the PSC first contends that Mr. Anstice, as a Merck corporate officer, must personally attend and testify at the *Barnett* trial pursuant to Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure. In the alternative, pursuant to Rule 43 of the Federal Rules of Civil Procedure, the PSC asserts that Mr. Anstice should be compelled to present live testimony in open court through contemporaneous transmission from a remote location via videoconferencing. Lastly, in the event that the Court does not approve of either of the previously mentioned propositions, the PSC argues that the Court should admit Mr. Anstice's deposition testimony and former New Jersey state court trial testimony in lieu thereof.[1]

Merck, on the other hand, opposes all three options. First, Merck contends that Rule 45 does not require Mr. Anstice's personal appearance at trial. Second, Merck asserts that the "good cause" and "compelling circumstances" requirements of Rule 43 have not been met. Finally, although agreeing to the use of Mr. Anstice's deposition testimony at trial, Merck opposes the use of Mr. Anstice's former trial testimony because the mode and substance has

---

[1] Mr. Anstice recently testified in the New Jersey state court proceeding *Cona, et al. v. Merck & Co., Inc.*, ATL-L-3553-05-MT (N.J. Super. Ct. 2006).

2

been shaped by New Jersey state rules of evidence, the pretrial rulings of the presiding New Jersey judge, and the facts of the particular case. Moreover, according to Merck, the use of such testimony is unnecessary considering the hours of properly noticed taped deposition testimony that exist in this MDL.

## III. LAW AND ANALYSIS

### A. Rule 45(c)(3)(A)(ii)

In general, Rule 45 governs subpoenas issued by United States District Courts. Specifically, Rule 45(c)(3)(A)(ii) provides:

> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held,

(emphasis added).

As President of Human Health for Canada, Latin America, Japan, Australia, and New Zealand, Mr. Anstice is an officer of Merck, which is a party to this litigation. Therefore, provided service is proper, Rule 45(c)(3)(A)(ii) allows the PSC to subpoena Mr. Anstice to personally attend and testify at trial.

### B. Rule 43

Rule 43 governs the taking of testimony at trial. In particular, Rule 43(a) provides:

> In every trial, the testimony of witnesses shall be taken in open court, unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise. The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location.

3

The PSC and Merck dispute whether "good cause" and "compelling circumstances" exist in this case so as to justify the contemporaneous transmission of Mr. Anstice's trial testimony.

Before proceeding to the merits of this specific issue, the Court notes that there has been an increasing trend by federal courts allowing and by legal commentators advocating for the use of contemporaneous transmission of trial testimony. *See* Carolyn Hertzberg, *Clever Tool or Dirty Pool?: WPPSS, Closed Circuit Testimony and the Rule 45(e) Subpoena Power*, 21 Ariz. St. L.J. 275 (1989); *cf.* Cathaleen A. Roach, *It's Time to Change the Rule Compelling Witness Appearance at Trial: Proposed Revisions to Federal Rule of Civil procedure 45(e)*, 79 Geo. L.J. 81 (1990). In 1988 and 1989, respectively, in the context of multidistrict litigation, the Western District of Washington, *In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551, 1988 WL 525314 (W.D. Wash. Aug. 9, 1988), and the District of Puerto Rico, *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424 (D. P.R. 1989), each allowed the testimony of witnesses through the use of contemporaneous transmission. Subsequently, other courts have also allowed or discussed the availability of trial testimony by contemporaneous transmission. *Dagen v. CFC Group Holdings Ltd.*, No. CIV.A. 00-5682, 2003 WL 22533425 (S.D.N.Y. Nov. 7, 2003); *United States v. Gigante*, 971 F. Supp. 755 (E.D.N.Y. 1997); *Duncan v. IBM Corp.*, No. CIV.A. 95-1785, 1996 WL 720106, at *5 (S.D.N.Y. 1996). *But see Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, No. CIV.A. 96-8414, 2002 WL 32068971 (S.D.N.Y. Mar. 31, 2003). In fact, one district court even allowed an entire trial to be conducted by contemporaneous transmission. *Edwards v. Logan*, 38 F. Supp. 2d 463 (W.D. Va. 1999).

Moreover, Rule 43, itself, was specifically amended in 1996 to allow for the use of contemporaneous transmission. *Gigante*, 971 F. Supp at 757. Furthermore, the advisory

Case 2:05-md-01657-EEF-DEK   Document 5614-5   Filed 06/29/2006   Page 5 of 8

committee's notes to the 1996 amendment of Rule 43 recognize the appropriateness of contemporaneous transmission in certain circumstances. Rule 43(a) advisory committee's notes. Lastly, the Manual for Complex Litigation recognizes the permissibility and value of contemporaneous transmission through the use of videoconferencing. Manual for Complex Litigation (Fourth) § 12.334 (2004).

With this mind, the Court acknowledges the benefits of videoconferencing at trial and supports its use in the appropriate situations. The question before the Court, however, is not whether contemporaneous transmission is permissible or valuable, but whether the facts of the present case present an appropriate situation for its use. The Court finds that they do.

In determining whether contemporaneous transmission of trial testimony should be allowed, the Court must find there is "good cause" and "compelling circumstances." In addition, the Court must fashion "appropriate safeguards." The relevant jurisprudence sheds little light on the meaning of "good cause" and "compelling circumstances" as used in the context of Rule 43. The Court, however, is guided by the *Washington Public* and *San Juan Dupont* decisions, which are factually similar to the case at hand.

In *Washington Public*, although analyzing the case under the then-current Rule 45(e), the court fashioned a five-prong test for determining whether the use of videoconferencing was permitted at trial. 1988 WL 525314, at \*\*2-3. The five factors were: (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-

district litigation. *Id*. This same five-prong test was adopted and used by the court in *San Juan Dupont*. 129 F.R.D. at 426. For the present case, the Court finds that this five-prong test may also be employed to determine the existence of "good cause" and "compelling circumstances" under Rule 43.

 First, based on Mr. Anstice's occupation as an upper-level Merck officer, the Court finds that Merck has significant control over Mr. Anstice. Second, although the *Barnett* case involves only a single plaintiff, a single defendant, and the law of a single jurisdiction, it is a bellwether trail for a MDL involving thousands of lawsuits over the damage allegedly caused by a drug prescribed to millions of patients in every state of the nation. As such, the Court finds that this factor weighs in favor of allowing Mr. Anstice's trial testimony by contemporaneous transmission. Third, considering that the PSC has offered to pay Mr. Anstice's travel expenses and the Court would mandate such an arrangement, the Court finds that Merck's refusal to voluntarily produce Mr. Anstice is for a purely tactical advantage. The Court is quite conscious that Mr. Anstice possesses information highly-relevant to the plaintiff's claims. This information may be damaging to Merck's position. As such, the Court assumes that Merck would like to eliminate any unpredictability and limit Mr. Anstice's trial testimony to his "canned" deposition testimony—a purely tactical reason. The Court cannot surmise any other legitimate reason why Merck would protest to Mr. Anstice's personal appearance. Thus, the Court finds Merck's apparent motive in refusing to produce Mr. Anstice is purely tactical. Fourth, the Court finds that Merck would not suffer any true prejudice in having Mr. Anstice testify by contemporaneous videoconferencing. Mr. Anstice has already testified at numerous depositions and at another Vioxx trial. Furthermore, Mr. Anstice is employed by Merck. Thus,

6

Merck should not be surprised at all by Mr. Anstice's testimony, regardless of whether it is from a deposition or via contemporaneous transmission. Lastly, the Court finds that the fifth factor is essentially an extension of the second factor and, as such, finds it also weighs in favor of videoconferencing. Following the guidance of the *Washington Public* and *San Juan Dupont* courts, the Courts finds that these five-factors weigh heavily in favor of having Mr. Anstice testify by contemporaneous videoconferencing.

Moreover, the Court notes live, in-person testimony is optimal for trial testimony, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947), because "[t]he very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling. The opportunity to judge the demeanor a witness face-to-face is accorded great value in our tradition." Rule 43(a) advisory committee's notes. On the other hand, the deposition is "a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Learned Hand, J.). By allowing for contemporaneous transmission, the Court allows the jury to see the live witness along with "'his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration,'" *Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir. 1946) (quoting Sir John Coleridge), and, thus, satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony. For all these reasons, as an alternative to his testifying in person at trial and provided service is properly effectuated, the Court finds that there is "good cause" and "compelling circumstances" for contemporaneous transmission through videoconferencing.[2]

---

[2] Depending on how the PSC chooses to proceed, the Court may have to provide appropriate safeguards for Mr. Anstice's testimony. If the PSC chooses the route of contemporaneous transmission, the Court will request the parties' advice on how best to

### C. Prior Trial Testimony

As a final alternative to Mr. Anstice's live trial testimony or testimony via contemporaneous transmission, the PSC asserts that it should be allowed to present Mr. Anstice's prior trial testimony. Notwithstanding Merck's objections, the Court finds no reason to deny the PSC's request at this time. First, the Court has not had a chance to review Mr. Anstice's former trial testimony. Second, to the extent that Merck has a specific objection to a portion of Mr. Anstice's testimony, it may seek to have that specific portion excluded.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that all three of the PSC's proposed options are valid and, therefore, the PSC may choose to elicit Mr. Anstice's trial testimony by any of three methods. Accordingly, the PSC's motion to compel the appearance of Dr. Graham is GRANTED.

New Orleans, Louisiana, this __28th__ day of __June__, 2006.

*Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE

---

accomplish this procedure. At that time, if necessary, the Court will address the appropriate safeguards.