UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUL 21 PM 2: 20

LORETTA G. WHYTE
CLERK

IN RE:  VIOXX
   PRODUCTS LIABILITY LITIGATION

\*   MDL NO. 1657

\*

\*   SECTION: L(3)

\*

\*   JUDGE FALLON

\*   MAG. JUDGE KNOWLES

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIS DOCUMENT RELATES TO:
  *Barnett v. Merck & Co., Inc.*, 06-485

## ORDER AND REASONS

Pending before the Court is David Anstice and Merck & Co., Inc.'s ("Merck") Motion to

Quash Subpoena (Rec. Doc. 5758). For the following reasons, the motion is DENIED.

## I. BACKGROUND

Mr. Anstice is currently Merck & Co., Inc.'s ("Merck") President of Human Health for

Canada, Latin America, Japan, Australia, and New Zealand. Prior to serving in his current

capacity, Mr. Anstice served as Merck's President of Human Health for the United States. As

part of his responsibilities as Merck's President of Human Health for the United States, Mr.

Anstice was responsible for the marketing activities and commercial operations of Merck during

the time Vioxx was being developed and marketed.

On April 19, 2006, the PSC filed a Generic Motion in Limine (Rec. Doc. 4352). The

third issue addressed in the Generic Motion in Limine was a motion to compel the appearance of

a Merck corporate representative, namely Mr. Anstice, at the July 31, 2006 trial of *Barnett v.*

*Merck & Co., Inc.*, 06-485.

1

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

On June 28, 2006, the Court granted the PSC's motion to compel the appearance of Mr. Anstice finding that the PSC could choose to: (a) compel Mr. Anstice to appear and testify in person at the *Barnett* trial; (b) compel Mr. Anstice to testify at trial from a remote location via contemporaneous video transmission; or (c) present Mr. Anstice's former testimony from a New Jersey state court Vioxx trial (Rec. Doc. 5614). At the time of the PSC's motion and the Court's ruling, Mr. Anstice had not been served. Therefore, the Court explicitly stipulated that Mr. Anstice could only be subpoenaed to testify in person or via remote location if he was properly served under Rule 45.

On July 7, 2006, Philip Beck, Merck's trial counsel, agreed to accept service on Mr. Anstice's behalf. As a condition of the acceptance, Mr. Beck indicated that he would accept the subpoena on behalf of Mr. Anstice as an out-of-state resident and, as such, service would, for all legal purposes, be considered effectuated on Mr. Anstice at his residence in Pennsylvania. In addition, Mr. Beck stated that his acceptance of the subpoena would not waive any of Merck's Rule 45 objections to the subpoena. Pursuant to this agreement, the PSC served Mr. Beck in Chicago, Illinois via email on July 7, 2006. The subpoena lists two United States District Courts in the caption: the Eastern District of Louisiana and the District of New Jersey. The subpoena purports to compel Mr. Anstice to appear and testify live at the *Barnett* trial in New Orleans, Louisiana. Subsequently, on July 12, 2006, Mr. Anstice and Merck filed the present motion to quash.

## II.     PRESENT MOTION

In its motion to quash, Merck asserts that Mr. Anstice is beyond the Court's trial subpoena power and, thus, the Court cannot compel Mr. Anstice to testify in this forum.

Specifically, Merck puts forth two reasons why the Court cannot compel Mr. Anstice's testimony. First, according to Merck, Rule 45(b)(2) only allows service of a trial subpoena within 100 miles of the place of trial. Considering that the place of trial—New Orleans—is greater than 100 miles from Pennsylvania, Merck argues that the Court must quash the subpoena. Second, since the PSC's subpoena was issued for trial testimony rather than pre-trial purposes, Merck argues that the Court does not possess the expanded subpoena powers granted to an MDL court under 28 U.S.C. § 1407. On the other hand, the PSC argues that the interplay between Rule 45(b)(2) and Rule 45(3)(A)(ii) grants district courts the authority to subpoena parties or officers of parties—such as Mr. Anstice—to testify at trial regardless of where they might be served.[1]

## III.    LAW AND ANALYSIS

In general, Rule 45 governs subpoenas issued by United States District Courts. Rule 45(b) governs the service of subpoenas, and Rule 45(b)(2) provides:

> [s]ubject to the provisions of clause (ii) of subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within the district of the court by which it issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a

---

[1] In its opposition to Mr. Anstice and Merck's motion to quash, the PSC's only defense is that Merck's motion is a meritless and untimely motion for reconsideration. While acknowledging that the issues raised in Mr. Anstice and Merck's current motion were briefed in the PSC's Generic Motion in Limine and Merck's opposition thereto, the Court, however, finds that Mr. Anstice and Merck's motion to quash is not a motion for reconsideration.

In its earlier Order and Reasons, the Court explicitly did not rule on the present issue—propriety of service. At the time of the Court's earlier Order and Reasons, Mr. Anstice had not been served. As such, the Court believed that the current issues were not yet ripe and, as such, did not issue a ruling. Now, considering that the PSC has served Mr. Anstice, the Court finds that it is appropriate to rule on the current issues.

Since the PSC has misconstrued Mr. Anstice and Merck's motion to quash as a motion to reconsider and failed to urge its earlier arguments from the Generic Motion in Limine, the Court will assume that the PSC would have raised the same arguments and will consider them as such.

subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

(emphasis added).

Rule 45(c) governs protection of persons subject to subpoenas, and Rule 45(c)(3)(A) provides the grounds upon which a court may quash or modify a subpoena. Specifically, Rule 45(c)(3)(A)(ii) provides:

> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held,

(emphasis added).

Merck contends that the "person not a party or an officer of a party" language of Rule 45(c)(3)(A)(ii) does not affect or extend the geographic limitations of a district court's subpoena power under Rule 45(b)(2). *See, e.g., Jamsports & Entm't, LLC v. Paradama Prods., Inc.*, No. CIV.A. 02-2298, 2005 WL 14917, at *1 (N.D. Ill. Jan. 3, 2005); *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 396-97 (N.D. Ia. 1998). Instead, Merck argues that Rule 45(b)(2) defines the Court's subpoena power; whereas, Rule 45(c)(3)(A)(ii) allows a Court to quash a subpoena within its subpoena power. *Land O'Lakes*, 181 F.R.D. at 397.

Conversely, the PSC asserts the "person who is not a party or an officer of a party" language of Rule 45(c)(3)(A)(ii) permits the inverse inference that parties and their officers are subject to compulsion to attend trials that occur outside the 100 mile limit otherwise available to non-parties. *See, e.g., Am. Fed. of Gov't Emplolyees Local 922 v. Ashcroft*, 354 F. Supp. 2d 909, 915 (E.D. Ark. 2003); *In re Ames Dep't Stores, Inc.*, No. CIV.A. 01-42217, 2004 WL 1661983,

4

at *1 (Bankr. S.D.N.Y. June 25, 2004); *Mason v. Texaco, Inc.*, 741 F. Supp. 1472, 1504 (D. Kan. 1990); *Ferrel v. IBP, Inc.*, No. CIV.A. 98-4047, 2000 WL 34032907, at *1 (N.D. Ia. Apr. 28, 2000); *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 587 (D. Minn. 1999); *Younis v. American Univ. in Cairo*, 30 F.Supp.2d 390, 395 n.44 (S.D.N.Y. 1998); *Prudential Sec., Inc. v. Norcom Devel., Inc.*, No. CIV.A. 97-6308, 1998 WL 397889, at *5 (S.D.N.Y. July 16, 1998); *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498, 500-01 (D. Utah 1997); *Venzor v. Chavez Gonzalez*, 968 F. Supp. 1258, 1267 (N.D. Ill. 1997); *Nat'l Prop. Investors, VIII v. Shell Oil Co.*, 917 F. Supp. 324, 329 (D.N.J. 1995); *M.F. Bank Restoration Co. v. Elliott, Bray & Riley*, No. CIV.A. 92-0049, 1994 WL 719731, at *8 (E.D. Pa. Dec. 22, 1994). Essentially, the PSC contends that Rule 45(c)(3)(A)(ii) expands a district court's subpoena power under Rule 45(b)(2). The Court agrees.

The plain, unambiguous language of Rule 45 supports the PSC's position. Rule 45(b)(2), which imposes the 100 mile rule, is expressly limited by Rule 45(c)(3)(A)(ii). Rule 45(c)(3)(A)(ii) mandates that a district court must quash a subpoena if it requires "a person who is <u>not a party</u> or <u>an officer of a party</u>" to travel more than 100 miles from his residence or place of employment. (emphasis added). In this case, Mr. Anstice is a Merck officer. Accordingly, Rule 45(c)(3)(A)(ii) does not require the Court to quash the subpoena. Instead, Rule 45(c)(3)(A)(ii) supports the inverse inference that Rule 45(b)(2) empowers the Court with the authority to subpoena Mr. Anstice, an officer of a party, to attend a trial beyond the 100 mile limit.

Merck argues and the Court acknowledges that nothing in the history or adoption of current Rule 45(b)(2), the substance of which was located in Rule 45(e) prior to December 1, 1991, or Rule 45(c)(3)(A)(ii), the substance of which was newly adopted in 1991, conveys any

intention to alter the 100 mile rule. *Jamsports*, 2005 WL 14917, at 1. In fact, the 1991 advisory committee's notes to Rule 45(b) and Rule 45(c) reinforce Merck's argument. Fed. R. Civ. Proc. 45 advisory committee's notes. Nevertheless, the Court cannot consider the history or intent behind the 1991 amendment to Rule 45 as the rule is plain and unambiguous on its face. *In re Abbott Labs.*, 51 F.3d 524, 528 (5th Cir. 1995). Instead, the Court must look solely to the text of Rule 45 in reaching its decision. This look leads the Court to conclude that the interaction between Rule 45(b)(2) and Rule 45(c)(3)(A)(ii) vests the Court with the authority to subpoena Mr. Anstice to testify at trial in New Orleans.

Although the Court may now stop its analysis, the Court prefers to take a brief look at the history and purpose of the 100 mile rule to test its decision. In doing so, the Court finds that its reading of Rule 45 is bolstered by the realities of modern life and multi-district litigation.

From its inception in the 14th century English courts of chancery, the subpoena has been limited by the territorial bounds of the issuing court. Rhonda Wasserman, *The Subpoena Power: Pennoyer's Last Vestige*, 74 Minn. L. Rev. 37, 43-46 (1989). Even as the subpoena made its way from England to the United States, it maintained its territorial boundaries. James B. Sloan & William T. Gotfryd, *Eliminating the 100 Mile Limit for Civil Trial Witnesses: A Proposal to Modernize Civil Trial Practice*, 140 F.R.D. 33, 34-35 (1992). The American subpoena first found life in the Judiciary Act of 1789, which provided courts with the authority to issue deposition subpoenas to civil witness who could not be found within 100 miles of the issuing court. Federal Judiciary Act of 1789, ch. 20, § 30, 1 Stat. 73, 88 (1789). Four years later, in 1793, the 100 mile rule made its first appearance as Congress enacted a statute allowing courts to issue trial subpoenas for the appearance of witnesses, provided that the witnesses did not live

6

more than 100 miles from the issuing court. Act of March 2, 1793, ch. 22, § 6, 1 Stat. 333, 335 (1793). The purported justifications for the 100 mile rule were two-fold: "to protect witnesses from the harassment of long, tiresome trips" and "to minimize the costs of litigation." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 234 (1964).

From 1793 to present day, the subpoena has been amended numerous times and evolved significantly. Yet, except for a six year period between 1922 and 1928, the 100 mile rule has always remained a part of the federal subpoena's life, even though the subpoena's fatherland—the United Kingdom—disbanded its own territorial limitations in 1854. Act of March 4, 1925, ch. 526, § 2, 43 Stat. 1264, 1265 (1925); Act of September 19, 1922, ch. 344, 42 Stat. 848, 848 (1922); Attendance of Witnesses Act, 17 & 18 Vict., ch. 34 (1854).

Realistically, the purposes behind the 100 mile rule no longer justify its existence. While a cross-country trip may have been deemed impossible in 1793 or harassing and economically burdensome in 1964, it is now commonplace and a necessary incident to multi-district litigation. Additionally, the current costs borne by a witness traveling cross-country to testify at trial are generally much less than the costs incurred by an army of attorneys and their respective entourages traveling cross-country to depose the very same witness. Moreover, in the present case, the PSC will bear Mr. Anstice's travel expenses eliminating any case-specific value to the rule's second goal. While these twin rationales were laudable in 1793, there are now questionable, if not anachronistic. Modern day litigation should not be restrained by antiquated relics of a bygone era.

Certainly, our founding fathers could not have envisioned a world of superhighways, commercial jet airlines, or high speed commuter trains, just as they most likely could not have

7

envisioned a single, consolidated lawsuit consisting of thousands of parties seeking billions of dollars in damages allegedly caused by an allegedly defective prescription drug prescribed to millions of patients across the country and world. *See* Cathaleen A. Roach, *It's Time to Change the Rule Compelling Witness Appearance at Trial: Proposed Revisions to Federal Rule of Civil Procedure 45(e)*, 79 Geo. L.J. 81, 83-84 (1990). Yet, while superhighways, jet airliners, and commuter trains have provided access to the vast expanses of our nation and beyond and allowed the United States to flourish socially and economically, our federal court system's subpoena power is still bound by a 100 mile colonial leash.

Not only does the 100 mile rule perpetuate obsolete notions of fairness, it actually inhibits the truth seeking purpose of litigation. For all its virtues and faults and although some may argue that litigation's ultimate goal is conflict resolution, the true aspiration of trial is truth. As an alternative to live trial testimony, the Court, the parties, and, most importantly, the jury is left with the deposition—"a second-best." *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Learned Hand, J.).

To best fulfill its fact-finding duties, a jury should be engaged and highly sensitive to each witness. As this Court knows all too well, the deposition, whether read into the record or played by video, has the opposite effect. It is a sedative prone to slowly erode the jury's consciousness until truth takes a back seat to apathy and boredom. The 100 mile rule forces this predicament upon the jury. Whatever minimal benefits the 100 mile rule provides witnesses, it is severely outweighed by its detrimental effect upon the trial process.

While this Court understands the limitations of its judicial power and accepts that it is not a deliberative body, the Court believes that the 100 mile rule as it currently exists has little utility.

8

Although this Court lacks any power to repeal or amend Rule 45, the Court suggests that an amendment to the rule would be wise. *See* Sloan & Gotfryd, *supra*, at 40-44; Roach, *supra*, at 109-117. This Court, however, does have the power to interpret Rule 45. In interpreting Rule 45, the Court finds that it has authority to compel the appearance of Mr. Anstice to attend and testify at a trial in New Orleans.

Although superfluous to its decision, the Court has briefly discussed the history and purpose behind the 100 mile rule. The Court has done so, not because it is necessary or even helpful to the Court's determination, which was based solely upon the plain language of Rule 45, but because the Court takes comfort in knowing that its ruling is supported by the realities of our present world. Moreover, the Court takes further comfort in knowing that the majority of courts that have been faced with the same issue have ruled likewise.[2] Lastly, this result is consistent with the objectives of 28 U.S.C. § 1407. If one court is going to be legislatively mandated to handle thousands of cases from throughout the nation, it needs some national reach at least as to the parties.

## IV.    CONCLUSION

For the foregoing reasons, Merck's motion to quash is DENIED.

New Orleans, Louisiana, this ___20th___ day of __July__, 2006.

UNITED STATES DISTRICT JUDGE

---

[2] Having found that Rule 45 alone gives it the authority to subpoena Mr. Anstice, the Court finds that it need not reach the issue of whether 28 U.S.C. § 1407 expands the Court's trial subpoena power.