# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION
FILED
APR 0 7 2005
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | | |
|---|---|---|
| NETTIE PATTERSON | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | W05CA137 |
| MERCK & CO., INC. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, NETTIE PATTERSON, Plaintiff herein complaining of MERCK & CO., INC., Defendant, and for cause of action would respectfully show the Court as follows:

#### Parties

1. Nettie Patterson (hereinafter also referred to as "Plaintiff") is, and was at all times material herein, a resident of Bell County, Texas.

2. Merck & Co., Inc. (hereinafter also referred to as "Defendant") is a foreign corporation organized under the laws of the State of New Jersey and authorized to do business in the State of Texas who may be served with process by serving its registered agent, CT Corp. System, 350 N. St. Paul Street, Dallas, Texas 75201.

#### Jurisdiction and Venue

3. This Court has jurisdiction over Defendant because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a).

4. This Court has venue of this case because a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in this judicial district. 28 U.S.C. § 1391(a)(2).

M0036142O4

### Statement of Facts Applicable to All Counts

5. Defendant is a pharmaceutical company that, at all times relevant herein, transacted substantial and continuous business within the State of Texas including marketing and sales of the drug Vioxx.

6. Defendant began marketing the drug Vioxx (rofecoxib), a Cox-2 inhibitor, in May, 1999 as a safe, effective medication for the relief of both chronic and acute pain associated with inflammation.

7. As a selective Cox-2 inhibitor, Vioxx acts to reduce prostacyclin, a vasodilator and inhibitor of platelet aggregation, in order to reduce inflammation and pain associated with inflammation.

8. Prior to beginning to market Vioxx, Defendant undertook studies that revealed that the drug was likely to cause cardiovascular problems including, but not limited to, stroke, myocardial infarction, transient ischemic attacks, blood clots, and/or hypertension.

9. Despite having this knowledge, Defendant failed to provide the Food and Drug Administration with information that revealed the dangers associated with the use of Vioxx.

10. Shortly after beginning to market Vioxx, in March 2000, the Vioxx Gastrointestinal Outcomes Research (VIGOR) Study, comparing Vioxx to Naproxen, another anti-inflammatory medication, showed that patients taking Vioxx were five times more likely to suffer a heart attack than patients taking Naproxen and patients taking Vioxx were almost two and half times more likely to suffer from serious cardiovascular events (heart attack, sudden unexplained death, strokes and unstable angina) than patients taking Naproxen.

11. Despite these results, Defendant Merck denied that Vioxx caused any

cardiovascular problems and aggressively marketed the drug, to physicians and directly to consumers, as safe to use for the relief of chronic and acute pain.

12. After the VIGOR results were published in the New England Journal of Medicine in November, 2000, Merck issued a press release that misrepresented the cardiovascular risks of Vioxx "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of Vioxx."

13. Numerous other studies were published through 2001-2004 that recognized the cardiovascular risks associated with use of Vioxx. These studies recognized, among other things, that Vioxx increased the thrombotic (blood clotting) properties of the blood thereby leading to increased thrombotic adverse events such as stroke, heart attack, pulmonary embolism, kidney failures and deep venous thrombosis.

14. However, Vioxx was a multi-billion dollar moneymaker for Merck and Merck continued to deny any adverse cardiovascular risks were associated with use of the drug.

15. Instead, Merck continued to aggressively advertise and market Vioxx, both directly to consumers and to physicians, as a safe and effective means of eliminating inflammatory pain.

16. In 1998, Plaintiff Nettie Patterson was prescribed Vioxx. Plaintiff Nettie Patterson took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, from 1998 until 1999.

17. As a direct, proximate and producing result of consumption of the medication Vioxx, in 1999, Plaintiff Nettie Patterson suffered a stroke.

18. As further set forth below, Plaintiff Nettie Patterson suffered, among other things,

physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

### Count One: Strict Liability

For strict liability cause of action against Defendant, Plaintiff says:

19. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

20. At all times material hereto, Defendant was engaged in the design, manufacture, marketing and sale of Vioxx, including the Vioxx purchased by Plaintiff and used by Plaintiff Nettie Patterson which was sold to consumers, including Plaintiff.

21. Plaintiff Nettie Patterson purchased and used Vioxx in its intended manner and/or in a reasonably foreseeable manner.

22. Just before Plaintiff purchased the Vioxx, it was then in the condition existing when such products left the control of Defendant.

23. Defendant expected the Vioxx sold by it to reach consumers or users in the condition in which it sold Vioxx.

24. Plaintiff was not aware of the dangerous nature of Vioxx, nor could have reasonably discovered its dangerous nature.

25. When Plaintiff sustained injuries and damages when using Vioxx, it was in a defective condition unreasonably dangerous to a user or consumer in one or more of the following particulars, among others:

    (a)    it caused blood clots;

    (b)    it caused myocardial infarction;

M003614207

(c) it caused stroke;

(d) it caused pulmonary embolism;

(e) it caused high blood pressure;

(f) it caused kidney failure; and

(g) it caused transient ischemic attacks.

26. The aforesaid conditions were not observable by Plaintiff who, lacking the technical knowledge and skill required to examine and analyze the products, relied on the duty of Defendant to deliver the products at the time of sale by it in a condition fit for use for the purpose intended; and Plaintiff was not aware of such defective conditions. The breach of that duty by Defendant and the defective conditions of the products caused the injuries and damages sustained by Plaintiff, more particularly set forth below.

27. Moreover, Vioxx was defective and unreasonably dangerous because it was accompanied by inadequate warnings that wholly failed to advise consumers, including Plaintiff and her healthcare providers, of the dangers associated with the use of Vioxx of which Defendant was aware, or of which Defendant should have been well aware by the application of reasonably developed human skill and foresight. Rather than provide adequate warnings, Defendant concealed from the general public and others the dangers associated with the use of Vioxx.

28. The warnings were inadequate in that they were not in a form that could fairly be expected to catch the attention of a reasonably prudent person and the content of the warnings, if any, were not comprehensible to the average user and did not convey to a reasonably prudent person a fair indication of the nature and extent of the danger associated with the use of Vioxx and how to avoid such dangers.

29. While actively concealing the unreasonably dangerous properties of Vioxx from healthcare providers, consumers and others, Defendant aggressively marketed Vioxx in an effort to increase its sales.

30. By reason of the above and foregoing circumstances, among others, Defendant is strictly liable for the damages caused Plaintiff, more particularly set forth below, by the defects in the products, more particularly set forth above.

### Count Two: Negligence

For negligence cause of action against Defendant, Plaintiff says:

31. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

32. At all times material hereto, Defendant was engaged in the design, manufacture and marketing of Vioxx, including the Vioxx purchased by Plaintiff, which was sold to the general public as ultimate consumers.

33. Defendant owed Plaintiff, and the public, a duty to use reasonable care in advertising, testing, inspecting, designing, and providing warnings of the dangers in using Vioxx.

34. Defendant was negligent in its design, manufacture and/or marketing of Vioxx in one or more of the following particulars, among others:

    (a) in failing to properly test Vioxx;

    (b) in failing to adequately warn of the risks and hazards of Vioxx; and

    (c) in concealing the dangers associated with the use of Vioxx.

35. Each and every one of the foregoing acts, omissions, or both, taken singularly or in any combination, proximately caused Plaintiff's damages, more particularly set forth below.

M003614209

### Count Three: Breach of Implied Warranty of Fitness

For breach of the implied warranty of fitness cause of action against Defendant, Plaintiff says:

36. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

37. Plaintiff purchased the Vioxx manufactured by Defendant for sale to ultimate consumers. The Vioxx was in the condition existing at the time it left Defendant's control as at the time of its delivery by Defendant to Plaintiff.

38. Defendant knew, or should have known, of the particular purpose for which Plaintiff required Vioxx because the purpose for which Defendant sold Vioxx products was for treatment/management of pain.

39. Defendant impliedly warranted that Vioxx was fit, safe and suitable for use in the treatment of pain, the use for which Plaintiff used the Vioxx, and the purpose for which it was designed.

40. In purchasing and using Vioxx, Plaintiff relied on Defendant's skill and judgment and the implied warranty of fitness for the purpose for which Plaintiff purchased the products.

41. Vioxx was not fit for use for its intended purpose for one or more of the following reasons, among others:

    (a)    it caused blood clots;

    (b)    it caused myocardial infarction;

    (c)    it caused stroke;

    (d)    it caused pulmonary embolism;

(e) it caused high blood pressure;

(f) it caused kidney failure; and

(g) it caused transient ischemic attacks.

42. Defendant's breach of the implied warranty of fitness, more particularly set forth above, proximately caused Plaintiff's damages, more particularly set forth below.

### Count Four: Breach of Implied Warranty of Merchantability

For breach of the implied warranty of merchantability cause of action against Defendant, Plaintiff says:

43. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

44. Defendant impliedly warranted that Vioxx was of merchantable quality, fit, safe, and in proper condition for the ordinary use for which it was designed and used.

45. In purchasing and using Vioxx, Plaintiff relied on Defendant's skill and judgment and the implied warranty of merchantability for the purpose for which Plaintiff purchased the products.

46. The Vioxx purchased by Plaintiff was not merchantable in one or more of the following particulars, among others:

(a) it caused blood clots;

(b) it caused myocardial infarction;

(c) it caused stroke;

(d) it caused pulmonary embolism;

(e) it caused high blood pressure;

M003614211

(f) it caused kidney failure; and

(g) it caused transient ischemic attacks.

47. Defendant's breach of the implied warranty of merchantability, more particularly set forth above, proximately caused Plaintiff's damages, more particularly set forth below.

### Count Five: Negligent Misrepresentation and Fraud

For negligent misrepresentation and fraud causes of action against Defendant, Plaintiff says:

48. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

49. Defendant knowingly made false representations as to material facts to the public, including Plaintiff, with the intent of inducing the public, including Plaintiff, to purchase its product, Vioxx.

50. Defendant knowingly made the following representations, among others:

(a) that Vioxx was safe and dependable for the treatment of pain.

51. Each and every one of the foregoing representations concerned material facts for the reason that Plaintiff would not have purchased the products had Plaintiff known the truth regarding such representations.

52. By reason of Plaintiff's reliance upon Defendant's foregoing representations, Plaintiff have been damaged, as more particularly set forth above and below.

### Count Six: Breach of Express Warranty

For breach of express warranty cause of action against Defendant, Plaintiff says:

53. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of

M003614212

Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

54. Through all periods of time material to this petition each Defendant aggressively advertised, marketed, promoted and warranted to their consumers, including to Plaintiff, that Vioxx was safe and reliable.

55. Such representations became the basis of the bargain when Plaintiff purchased the products.

56. Defendant breached the aforesaid express warranties of the product in that, among other things, Vioxx:

 (a) caused blood clots;

 (b) caused myocardial infarction;

 (c) caused stroke;

 (d) caused pulmonary embolism;

 (e) caused high blood pressure;

 (f) caused kidney failure; and

 (g) caused transient ischemic attacks.

57. As a direct and proximate result of the aforesaid conduct of Defendant, and each of them, Plaintiff suffered the damages more particularly set forth above and below.

### Count Seven: Gross Negligence/Malice

For Gross Negligence/Malice Claims against Defendant, Plaintiff say:

58. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

59. Plaintiff hereby adopts and realleges each and every Paragraph of Counts One

through Six of this Petition as if fully copied and set forth at length herein.

60. The aforesaid conduct of Defendant, when viewed objectively from the standpoint of said Defendant at the times in question, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, including Plaintiff.

61. Defendant had actual and subjective awareness of the risk involved, but nevertheless proceeded to engage in the aforesaid conduct with conscious indifference to the rights, safety and/or welfare of others, including that of Plaintiff.

### Damages Applicable to All Counts

62. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Complaint as if fully copied and set forth at length herein.

63. Plaintiff hereby adopts and realleges each and every paragraph of each and every Count of this Complaint as if fully copied and set forth at length herein.

64. As a proximate and/or producing result of Defendant's conduct, Plaintiff Nettie Patterson suffered, sustained and incurred, the following injuries and damages, among others:

a. Physical pain and mental anguish sustained in the past;

b. Medical care in the past and, in reasonable probability, Plaintiff Nettie Patterson will incur in the future;

c. Physical impairment sustained in the past and, in reasonable probability, Plaintiff Nettie Patterson will sustain in the future;

d. Disfigurement that, in reasonable probability, Plaintiff Nettie Patterson will sustain in the future; and

M003614214

  e. Exemplary damages.

  65. Plaintiff also seeks punitive damages from Defendant under TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 for their gross negligence/malice that resulted in the Plaintiff's injuries and damages as set forth above. Plaintiff prefers to leave the precise amount of punitive damages to the sole determination of the jury, based upon the credible evidence presented at trial, without regard to sympathy, prejudice or bias. In assessing punitive damages against defendant, the jury should take into account the following considerations: 1) the nature of the defendant's wrong; 2) the character of the conduct involved; 3) the degree of culpability of the wrongdoer; 4) the situation and sensibilities of the parties concerned, and 5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). The jury should also be guided by previous exemplary sums, if any, paid by or on behalf of the Defendants for the same or similar unsafe practices alleged in this case. The jury should also take into account the net worth of the Defendants and reasonable attorney's fees incurred by Plaintiff.

## Demand for Jury Trial

  66. Plaintiff requests a jury trial.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays that Defendant Merck be cited to appear and answer herein, and that upon trial Plaintiffs have judgment against Defendant and recover, among other things, the following:

  a. actual damages against the Defendant;

  b. exemplary damages;

  c. Pre and Post-judgment interest in the maximum amount allowed by law;

M003814215

d. Costs of suit; and

e. Such other and further relief, both general and special, to which Plaintiff may be justly entitled to receive.

Respectfully submitted,

HOUSSIERE, DURANT & HOUSSIERE, L.L.P.

By: *Monica Vaughan w/p CRH*
CHARLES R. HOUSSIERE, III
SBN: 10050700
MONICA C. VAUGHAN
SBN: 00794784
JOHN P. CARD
SBN: 24031918
1990 Post Oak Boulevard, Suite 800
Houston, Texas 77056-3812
Telephone: (713) 626-3700
Facsimile: (713) 626-3709

ATTORNEYS FOR PLAINTIFFS