# Exhibit C

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

APR 1 1 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

SYLVIA CASTILLO; ENRIQUE §
ENRIQUES; MARIA GABALDON; §
NARCISA GARZA; JOE GRANADO; §
ALICIA GUZMAN; ROSA ORTIZ; §
LORENZO ORTIZ; VIRGINIA §
RODRIGUEZ; AND REGINO URIAS §
§
V. §
§
MERCK & CO., INC. §

WO5CA146

CIVIL ACTION NO._____

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW, SYLVIA CASTILLO; ENRIQUE ENRIQUES; MARIA GABALDON;

NARCISA GARZA; JOE GRANADO; ALICIA GUZMAN; ROSA ORTIZ; LORENZO ORTIZ;

VIRGINIA RODRIGUEZ; and REGINO URIAS, Plaintiffs herein complaining of MERCK &

CO., INC., Defendant, and for cause of action would respectfully show the Court as follows:

### Parties

1.      Sylvia Castillo (hereinafter also referred to as "Plaintiff") is, and was at all times

material herein, a resident of Ector County, Texas.

2.      Enrique Enriques (hereinafter also referred to as "Plaintiff") is, and was at all

times material herein, a resident of Ector County, Texas.

3.      Maria Gabaldon (hereinafter also referred to as "Plaintiff") is, and was at all times

material herein, a resident of Ector County, Texas.

4.      Narcisa Garza (hereinafter also referred to as "Plaintiff") is, and was at all times

material herein, a resident of Ector County, Texas.

5.      Joe Granado (hereinafter also referred to as "Plaintiff") is, and was at all times

M002D5478Z

material herein, a resident of Ector County, Texas.

6.     Alicia Guzman (hereinafter also referred to as "Plaintiff") is, and was at all times material herein, a resident of Ector County, Texas.

7.     Rosa Ortiz and Lorenzo Ortiz, husband and wife, (hereinafter also referred to as "Plaintiffs") are, and were at all times material herein, residents of Ector County, Texas.

8.     Virginia Rodriguez (hereinafter also referred to as "Plaintiff") is, and was at all times material herein, a resident of Ector County, Texas.

9.     · Regino Urias (hereinafter also referred to as "Plaintiff") is, and was at all times material herein, a resident of Ector County, Texas.

10.     Merck & Co., Inc. (hereinafter also referred to as "Defendant") is a foreign corporation organized under the laws of the State of New Jersey and authorized to do business in the State of Texas who may be served with process by serving its registered agent, CT Corp. System, 350 N. St. Paul Street, Dallas, Texas 75201.

### Jurisdiction and Venue

11.     This Court has jurisdiction over Defendant because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a).

12.     This Court has venue of this case because a substantial part of the events or omissions giving rise to Plaintiffs' causes of action occurred in this judicial district. 28 U.S.C. § 1391(a)(2).

### Statement of Facts Applicable to All Counts

13.     Defendant is a pharmaceutical company that, at all times relevant herein,

MOD2D54783

transacted substantial and continuous business within the State of Texas including marketing and sales of the drug Vioxx.

14.     Defendant began marketing the drug Vioxx (rofecoxib), a Cox-2 inhibitor, in May, 1999 as a safe, effective medication for the relief of both chronic and acute pain associated with inflammation.

15.     As a selective Cox-2 inhibitor, Vioxx acts to reduce prostacyclin, a vasodilator and inhibitor of platelet aggregation, in order to reduce inflammation and pain associated with inflammation.

16.     Prior to beginning to market Vioxx, Defendant undertook studies that revealed that the drug was likely to cause cardiovascular problems including, but not limited to, stroke, myocardial infarction, transient ischemic attacks, blood clots, and/or hypertension.

17.     Despite having this knowledge, Defendant failed to provide the Food and Drug Administration with information that revealed the dangers associated with the use of Vioxx.

18.     Shortly after beginning to market Vioxx, in March 2000, the Vioxx Gastrointestinal Outcomes Research (VIGOR) Study, comparing Vioxx to Naproxen, another anti-inflammatory medication, showed that patients taking Vioxx were five times more likely to suffer a heart attack than patients taking Naproxen and patients taking Vioxx were almost two and half times more likely to suffer from serious cardiovascular events (heart attack, sudden unexplained death, strokes and unstable angina) than patients taking Naproxen.

19.     Despite these results, Defendant Merck denied that Vioxx caused any cardiovascular problems and aggressively marketed the drug, to physicians and directly to consumers, as safe to use for the relief of chronic and acute pain.

PLAINTIFFS' ORIGINAL COMPLAINT                                                    PAGE 3

M000054784

20.     After the VIGOR results were published in the New England Journal of Medicine in November, 2000, Merck issued a press release that misrepresented the cardiovascular risks of Vioxx "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of Vioxx."

21.     Numerous other studies were published through 2001-2004 that recognized the cardiovascular risks associated with use of Vioxx. These studies recognized, among other things, that Vioxx increased the thrombotic (blood clotting) properties of the blood thereby leading to increased thrombotic adverse events such as stroke, heart attack, pulmonary embolism, kidney failures and deep venous thrombosis.

22.     However, Vioxx was a multi-billion dollar moneymaker for Merck and Merck continued to deny any adverse cardiovascular risks were associated with use of the drug.

23.     Instead, Merck continued to aggressively advertise and market Vioxx, both directly to consumers and to physicians, as a safe and effective means of eliminating inflammatory pain.

24.     In 2003, Plaintiff Sylvia Castillo was prescribed Vioxx. Plaintiff Sylvia Castillo took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, from 2003 until 2004 when she suffered a cardiovascular illness.

25.     As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Sylvia Castillo suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

26.     In 2002, Plaintiff Enrique Enriques was prescribed Vioxx. Plaintiff Enrique Enriques took the Vioxx daily, as prescribed by his doctor in accordance with the

PLAINTIFFS' ORIGINAL COMPLAINT                                                          PAGE 4

M002D54785

recommendations of Defendant, from 2002 to 2004 when she suffered a cardiovascular illness.

27.     As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Enrique Enriques suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

28.     In 2002, Plaintiff Maria Gabaldon was prescribed Vioxx. Plaintiff Maria Gabaldon took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, from 2002 to 2004 when she suffered a cardiovascular illness.

29.     As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Maria Gabaldon suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

30.     In August, 2004, Plaintiff Narcisa Garza was prescribed Vioxx. Plaintiff Narcisa Garza took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, from 2004 through September, 2004 when she suffered a cardiovascular illness.

31.     As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Narcisa Garza suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

32.     In 2004, Plaintiff Joe Granado was prescribed Vioxx. Plaintiff Joe Granado took the Vioxx daily, as prescribed by his doctor in accordance with the recommendations of Defendant, during 2004 when he suffered a cardiovascular illness.

33.     As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Joe Granado suffered, among other things, physical pain and mental anguish,

PLAINTIFFS' ORIGINAL COMPLAINT                                                    PAGE 5

M002D54786

loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

34.    In 2003, Plaintiff Alicia Guzman was prescribed Vioxx. Plaintiff Alicia Guzman took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, during 2004 when she suffered a cardiovascular illness.

35.    As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Alicia Guzman suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

36.    In 2001, Plaintiff Lorenzo Ortiz was prescribed Vioxx. Plaintiff Lorenzo Ortiz took the Vioxx daily, as prescribed by his doctor in accordance with the recommendations of Defendant, during 2001 when he suffered a cardiovascular illness.

37.    As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Lorenzo Ortiz suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

38.    In 1998, Plaintiff Rosa Ortiz was prescribed Vioxx. Plaintiff Rosa Ortiz took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, from 1998 through September, 2000 when she suffered a cardiovascular illness.

39.    As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Rosa Ortiz suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

40.    In 2002, Plaintiff Virginia Rodriguez was prescribed Vioxx. Plaintiff Virginia Rodriguez took the Vioxx daily, as prescribed by her doctor in accordance with the recommendations of Defendant, from 2002 through 2003 when she suffered a cardiovascular

M002054787

illness.

41. As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Virginia Rodriguez suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

42. In 2001, Plaintiff Regino Urias was prescribed Vioxx. Plaintiff Regino Urias took the Vioxx daily, as prescribed by his doctor in accordance with the recommendations of Defendant, from 2001 through 2004 when he suffered a cardiovascular illness.

43. As a direct, proximate and producing result of consumption of the medication Vioxx, Plaintiff Regino Urias suffered, among other things, physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment and requires continual medical care.

### Count One: Strict Liability

For strict liability cause of action against Defendant, Plaintiffs say:

44. Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

45. At all times material hereto, Defendant was engaged in the design, manufacture, marketing and sale of Vioxx, including the Vioxx purchased by Plaintiffs and used by Plaintiffs which was sold to consumers, including Plaintiffs.

46. Plaintiffs purchased and used Vioxx in its intended manner and/or in a reasonably foreseeable manner.

47. Just before Plaintiffs purchased the Vioxx, it was then in the condition existing when such products left the control of Defendant.

PLAINTIFFS' ORIGINAL COMPLAINT                                                    PAGE 7

M002054788

48.    Defendant expected the Vioxx sold by it to reach consumers or users in the condition in which it sold Vioxx.

49.    Plaintiffs were not aware of the dangerous nature of Vioxx, nor could have reasonably discovered its dangerous nature.

50.    When Plaintiffs sustained injuries and damages when using Vioxx, it was in a defective condition unreasonably dangerous to a user or consumer in one or more of the following particulars, among others:

        (a)    it caused blood clots;

        (b)    it caused myocardial infarction;

        (c)    it caused stroke;

        (d)    it caused pulmonary embolism;

        (e)    it caused high blood pressure;

        (f)    it caused kidney failure; and

        (g)    it caused transient ischemic attacks.

51.    The aforesaid conditions were not observable by Plaintiffs who, lacking the technical knowledge and skill required to examine and analyze the products, relied on the duty of Defendant to deliver the products at the time of sale by it in a condition fit for use for the purpose intended; and Plaintiffs were not aware of such defective conditions. The breach of that duty by Defendant and the defective conditions of the products caused the injuries and damages sustained by Plaintiffs, more particularly set forth below.

52.    Moreover, Vioxx was defective and unreasonably dangerous because it was accompanied by inadequate warnings that wholly failed to advise consumers, including Plaintiffs

MOO2D54789

and their healthcare providers, of the dangers associated with the use of Vioxx of which

Defendant was aware, or of which Defendant should have been well aware by the application of

reasonably developed human skill and foresight. Rather than provide adequate warnings,

Defendant concealed from the general public and others the dangers associated with the use of

Vioxx.

    53.    The warnings were inadequate in that they were not in a form that could fairly be

expected to catch the attention of a reasonably prudent person and the content of the warnings, if

any, were not comprehensible to the average user and did not convey to a reasonably prudent

person a fair indication of the nature and extent of the danger associated with the use of Vioxx

and how to avoid such dangers.

    54.    While actively concealing the unreasonably dangerous properties of Vioxx from

healthcare providers, consumers and others, Defendant aggressively marketed Vioxx in an effort

to increase its sales.

    55.    By reason of the above and foregoing circumstances, among others, Defendant is

strictly liable for the damages caused Plaintiffs, more particularly set forth below, by the defects

in the products, more particularly set forth above.

### Count Two: Negligence

For negligence cause of action against Defendant , Plaintiffs say:

    56.    Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of

Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

    57.    At all times material hereto, Defendant was engaged in the design, manufacture

and marketing of Vioxx, including the Vioxx purchased by Plaintiffs, which was sold to the

M002054790

general public as ultimate consumers.

58.     Defendant owed Plaintiffs, and the public, a duty to use reasonable care in advertising, testing, inspecting, designing, and providing warnings of the dangers in using Vioxx.

59.     Defendant was negligent in its design, manufacture and/or marketing of Vioxx in one or more of the following particulars, among others:

      (a)     in failing to properly test Vioxx;

      (b)     in failing to adequately warn of the risks and hazards of Vioxx; and

      (c)     in concealing the dangers associated with the use of Vioxx.

60.     Each and every one of the foregoing acts, omissions, or both, taken singularly or in any combination, proximately caused Plaintiffs' damages, more particularly set forth below.

### Count Three: Breach of Implied Warranty of Fitness

For breach of the implied warranty of fitness cause of action against Defendant, Plaintiffs say:

61.     Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

62.     Plaintiffs purchased the Vioxx manufactured by Defendant for sale to ultimate consumers. The Vioxx was in the condition existing at the time it left Defendants' control as at the time of its delivery by Defendant to Plaintiffs.

63.     Defendant knew, or should have known, of the particular purpose for which Plaintiffs required Vioxx because the purpose for which Defendant sold Vioxx products was for treatment/management of pain.

64.     Defendant impliedly warranted that Vioxx was fit, safe and suitable for use in the

PLAINTIFFS' ORIGINAL COMPLAINT                                                    PAGE 10

M002054791

treatment of pain, the use for which Plaintiffs used the Vioxx, and the purpose for which it was designed.

65.    In purchasing and using Vioxx, Plaintiffs relied on Defendant's skill and judgment and the implied warranty of fitness for the purpose for which Plaintiffs purchased the products.

66.    Vioxx was not fit for use for its intended purpose for one or more of the following reasons, among others:

        (a)    it caused blood clots;

        (b)    it caused myocardial infarction;

        (c)    it caused stroke;

        (d)    it caused pulmonary embolism;

        (e)    it caused high blood pressure;

        (f)    it caused kidney failure; and

        (g)    it caused transient ischemic attacks.

67.    Defendant's breach of the implied warranty of fitness, more particularly set forth above, proximately caused Plaintiffs' damages, more particularly set forth below.

### Count Four: Breach of Implied Warranty of Merchantability

For breach of the implied warranty of merchantability cause of action against Defendant, Plaintiffs say:

68.    Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

69.    Defendant impliedly warranted that Vioxx was of merchantable quality, fit, safe,

MRKMRC01212472

and in proper condition for the ordinary use for which it was designed and used.

70.     In purchasing and using Vioxx, Plaintiff relied on Defendant's skill and judgment and the implied warranty of merchantability for the purpose for which Plaintiffs purchased the products.

71.     The Vioxx purchased by Plaintiff was not merchantable in one or more of the following particulars, among others:

        (a)     it caused blood clots;

        (b)     it caused myocardial infarction;

        (c)     it caused stroke;

        (d)     it caused pulmonary embolism;

        (e)     it caused high blood pressure;

        (f)     it caused kidney failure; and

        (g)     it caused transient ischemic attacks.

72.     Defendant's breach of the implied warranty of merchantability, more particularly set forth above, proximately caused Plaintiffs' damages, more particularly set forth below.

### Count Five: Negligent Misrepresentation and Fraud

For negligent misrepresentation and fraud causes of action against Defendant, Plaintiffs say:

73.     Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

74.     Defendant knowingly made false representations as to material facts to the public, including Plaintiff, with the intent of inducing the public, including Plaintiff, to purchase its

PLAINTIFFS' ORIGINAL COMPLAINT                     PAGE 12

M002D54793

product, Vioxx.

75.     Defendant knowingly made the following representations, among others:

    (a)     that Vioxx was safe and dependable for the treatment of pain.

76.  ·   Each and every one of the foregoing representations concerned material facts for
the reason that Plaintiff would not have purchased the products had Plaintiff known the truth
regarding such representations.

77.     By reason of Plaintiffs' reliance upon Defendant's foregoing representations,
Plaintiff have been damaged, as more particularly set forth above and below.

### Count Six: Breach of Express Warranty

For breach of express warranty cause of action against Defendant, Plaintiffs say:

78.     Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of
Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

79.     Through all periods of time material to this petition Defendant aggressively
advertised, marketed, promoted and warranted to their consumers, including to Plaintiffs, that
Vioxx was safe and reliable.

80.  ·   Such representations became the basis of the bargain when Plaintiffs purchased
the products.

81.     Defendant breached the aforesaid express warranties of the product in that, among
other things, Vioxx:

    (a)     caused blood clots;

    (b)     caused myocardial infarction;

    (c)     caused stroke;

M002D54794

    (d)    caused pulmonary embolism;

    (e)    caused high blood pressure;

    (f)    caused kidney failure; and

    (g)    caused transient ischemic attacks.

82.    As a direct and proximate result of the aforesaid conduct of Defendant, and each of them, Plaintiffs suffered the damages more particularly set forth above and below.

### Count Seven: Gross Negligence/Malice

For Gross Negligence/Malice Claims against Defendant, Plaintiff say:

83.    Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

84.    Plaintiffs hereby adopt and reallege each and every Paragraph of Counts One through Six of this Petition as if fully copied and set forth at length herein.

85.    The aforesaid conduct of Defendant, when viewed objectively from the standpoint of said Defendant at the times in question, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, including Plaintiffs.

86.    Defendant had actual and subjective awareness of the risk involved, but nevertheless proceeded to engage in the aforesaid conduct with conscious indifference to the rights, safety and/or welfare of others, including that of Plaintiff.

### Damages Applicable to All Counts

87.    Plaintiffs hereby adopt and reallege each and every Paragraph of the Statement of Facts Applicable to All Counts of this Complaint as if fully copied and set forth at length herein.

88.    Plaintiffs hereby adopt and reallege each and every paragraph of each and every

PLAINTIFFS' ORIGINAL COMPLAINT                          PAGE 14

M000054795

Count of this Complaint as if fully copied and set forth at length herein.

89.     As a proximate and/or producing result of Defendant's conduct, Plaintiff Sylvia

Castillo suffered, sustained and incurred, the following injuries and damages, among others:

a.     Physical pain and mental anguish sustained in the past;

b.     Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.     Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.     Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.     Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.     Exemplary damages.

90.     As a proximate and/or producing result of Defendant's conduct, Plaintiff Enrique

Enriques suffered, sustained and incurred, the following injuries and damages, among others:

a.     Physical pain and mental anguish sustained in the past;

b.     Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.     Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.     Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.     Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.     Exemplary damages.

91.     As a proximate and/or producing result of Defendant's conduct, Plaintiff Maria

M002D54796

Gabaldon suffered, sustained and incurred, the following injuries and damages, among others:

a.  Physical pain and mental anguish sustained in the past;

b.  Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.  Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.  Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.  Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.  Exemplary damages.

92.   As a proximate and/or producing result of Defendant's conduct, Plaintiff Narcisa

Garza suffered, sustained and incurred, the following injuries and damages, among others:

a.  Physical pain and mental anguish sustained in the past;

b.  Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.  Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.  Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.  Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.  Exemplary damages.

93.   As a proximate and/or producing result of Defendant's conduct, Plaintiff Joe

Granado suffered, sustained and incurred, the following injuries and damages, among others:

a.  Physical pain and mental anguish sustained in the past;

M002D54797

b.    Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.    Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.    Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.    Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.    Exemplary damages.

94.    As a proximate and/or producing result of Defendant's conduct, Plaintiff Alicia Guzman suffered, sustained and incurred, the following injuries and damages, among others:

a.    Physical pain and mental anguish sustained in the past;

b.    Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.    Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.    Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.    Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.    Exemplary damages.

95.    As a proximate and/or producing result of Defendant's conduct, Plaintiff Lorenzo Ortiz suffered, sustained and incurred, the following injuries and damages, among others:

a.    Physical pain and mental anguish sustained in the past;

b.    Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.  . Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.  Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.  Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future;

f.  Loss of Household services in the past and, in reasonable probability, that will be sustained in the future;

g.  Loss of consortium in the past and, in reasonable probability, that will be sustained in the future; and

h.  Exemplary damages.

96.  As a proximate and/or producing result of Defendant's conduct, Plaintiff Rosa

Ortiz suffered, sustained and incurred, the following injuries and damages, among others:

a.  Physical pain and mental anguish sustained in the past;

b.  Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.  Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.  Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.  Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.  Loss of Household services in the past and, in reasonable probability, that will be sustained in the future;

g.  Loss of consortium in the past and, in reasonable probability, that will be sustained in the future; and

h.  Exemplary damages.

M002D54799

97.   As a proximate and/or producing result of Defendant's conduct, Plaintiff Virginia

Rodriguez suffered, sustained and incurred, the following injuries and damages, among others:

a.   Physical pain and mental anguish sustained in the past;

b.   Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.   Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.   Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.   Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.   Exemplary damages.

98.   As a proximate and/or producing result of Defendant's conduct, Plaintiff Regina

Urias suffered, sustained and incurred, the following injuries and damages, among others:

a.   Physical pain and mental anguish sustained in the past;

b.   Medical care in the past and, in reasonable probability, that will be sustained in the future;

c.   Physical impairment sustained in the past and, in reasonable probability, that will be sustained in the future;

d.   Disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future;

e.   Lost earning capacity sustained in the past and, in reasonably probability, that will be sustained in the future; and

f.   Exemplary damages.

99.   Plaintiffs also seek punitive damages from Defendant under TEX. CIV. PRAC. &

REM. CODE ANN. § 41.003 for their gross negligence/malice that resulted in the Plaintiffs'

M002D54800

injuries and damages as set forth above. Plaintiffs prefer to leave the precise amount of punitive damages to the sole determination of the jury, based upon the credible evidence presented at trial, without regard to sympathy, prejudice or bias. In assessing punitive damages against defendant, the jury should take into account the following considerations: 1) the nature of the defendant's wrong; 2) the character of the conduct involved; 3) the degree of culpability of the wrongdoer; 4) the situation and sensibilities of the parties concerned, and 5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). The jury should also be guided by previous exemplary sums, if any, paid by or on behalf of the Defendants for the same or similar unsafe practices alleged in this case. The jury should also take into account the net worth of the Defendants and reasonable attorney's fees incurred by Plaintiffs.

<u>Demand for Jury Trial</u>

100.    Plaintiffs request a jury trial.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendant Merck be cited to appear and answer herein, and that upon trial Plaintiffs have judgment against Defendant and recover, among other things, the following:

    a.    actual damages against the Defendant;

    b.    exemplary damages;

    c.    Pre and Post-judgment interest in the maximum amount allowed by law;

    d.    Costs of suit; and

    e.    Such other and further relief, both general and special, to which Plaintiffs
          may be justly entitled to receive.

M002054801

Respectfully submitted,

HOUSSIERE, DURANT & HOUSSIERE, L.L.P.

By: _____
     CHARLES R. HOUSSIERE, III
     SBN: 10050700
     MONICA C. VAUGHAN
     SBN: 00794784
     JOHN P. CARD
     SBN: 24031918
1990 Post Oak Boulevard, Suite 800
Houston, Texas 77056-3812
Telephone: (713) 626-3700
Facsimile: (713) 626-3709

ATTORNEYS FOR PLAINTIFFS

M002D54802