# EXHIBIT 1

# ABRAHAM
# FRUCHTER
# & TWERSKY LLP

CELIA A. COLBERT
NOV 2 2004
RECEIVED
NOV 03 2004
JON FILDERMAN

October 29, 2004

**By Federal Express**

Board of Directors
Merck & Co., Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, N.J. 08889-0100

To the Board of Directors of Merck & Co., Inc.:

This firm represents Ellen Fagin and Judith Fagin, individuals who are, and were at the times relevant to the issues addressed in this letter, shareholders of Merck & Co., Inc. ("Merck" or the "Company"). This letter is intended to demand that you take legal action against Raymond V. Gilmartin, the Chairman of the Board, Chief Executive Officer and President of the Company and any other individuals responsible for causing the damage to the Company with respect to any improper marketing of Vioxx.

In a September 17, 2001, "WARNING LETTER" addressed to Mr. Gilmartin, the Food and Drug Administration ("FDA"), criticized Merck's promotional campaign for Vioxx as "minimiz[ing] potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx." The warning letter goes on to criticize Merck's marketing of Vioxx through the omission of important risk information, the making of unsubstantiated superiority claims and the promotion by Merck of Vioxx for unapproved uses. The warning letter is single spaced and eight pages in length and it is attached to this demand letter and incorporated herein by reference for your review.

According to an FDA press release, on September 27, 2004, the Data Safety Monitoring Board for an ongoing long-term study of Vioxx known as APPROVe (Adentomatous Polyp Prevention on VIOXX) had recommended the study be stopped early for safety reasons based upon an observed increase in cardiovascular events (including heart attacks and strokes). A report

One Penn Plaza • Suite 2805 • New York • New York • 10119
Telephone: (212) 279•5050 Fax: (212) 279•3655

Board of Directors
Merck & Co, Inc.
October 29, 2004
Page 2

in the October 6, 2004, issue of *The Wall Street Journal* stated that the FDA study projected that the widespread use of Vioxx may have led to more than 27,000 heart attacks and sudden cardiac deaths. According to the article in *The Wall Street Journal*, these conclusions began to emerge in August. On September 30, 2004, Merck, in response to the FDA recommendation, withdrew Vioxx from the market. Vioxx has been characterized by at least one leading epidemiologist as potentially one of the biggest drug safety catastrophes in U.S. history.

As reported in, among other places, the October 5, 2004 edition of *The Wall Street Journal*, the withdrawal of Vioxx is expected to "open the floodgate on lawsuits against Merck." That article contains an estimate from Steve Scala, an analyst at SG Cowen & Co. that Vioxx litigation could result in $10 billion or more of liability risk for Merck. Similar estimates have been made by other informed analysts. Forbe's in an article appearing in its November 1, 2004 edition in an articled titled *Merck's Mess* states that the legal onslaught could rival the $13.3 billion paid out by Wyeth in the fen-phen fiasco. Indeed, the exposure to damages from such litigation is responsible, in part, for the recent substantial drop in the price of Merck's stock following announcement of Vioxx's withdrawal.

This demand letter is intended to give the Board of Directors the first opportunity at instituting claims on behalf of the Company against Mr. Gilmartin and any other person responsible for causing Merck damage from the improper marketing of Vioxx. If you fail to respond or contact me within one month from the date of this letter, we will be forced to assume that you have decided not to pursue these claims. At that time, we will free to institute an action in New Jersey State Court to obtain the remedies we are seeking through writing this letter.

If you have any questions or wish to discuss any of the matters referred to above, please do not hesitate to contact me.

Very truly yours,

Jeffrey S. Abraham

# Abraham Fruchter & Twersky LLP

One Penn Plaza, Suite 2805
New York, NY 10119
Tel : (212) 279-5050
Fax: (212) 279-3655
www.aftlaw.com

December 10, 2004

**By Federal Express**

Celia A. Colbert, Esq.
Merck & Co., Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, N.J. 08889-0100

Dear Ms. Colbert:

I write in response to your letter of November 30, 2004, and to follow up on the demand (the "Demand") made by my letter of October 29, 2004, on behalf of Ellen Fagin and Judith Fagin, shareholders (the "Shareholders") of Merck & Co., Inc. ("Merck" or the "Company").

Given developments since the time of the Demand, we are writing to: (1) identify additional factual information which the Board may wish to consider in acting on the Shareholders' Demand; (2) identify additional proposed individual defendants and their relationships to the wrongful conduct which has damaged Merck; (3) identify additional sources of damages to the Company from the wrongful conduct; and (4) request additional information concerning the announced formation of the special committee.

## Additional Factual Information

Mr. Gilmartin has publicly stated that as soon as Merck learned of the potential adverse cardiovascular effects of Vioxx the drug was pulled from the market. This statement has been made in, among other places, full page advertisements titled "An Open Letter from Merck by Raymond V. Gilmartin Chairman, President and CEO, " appearing in such newspapers as *The Wall Street Journal*. Regrettably, there is a strong factual record to the contrary.

The VIGOR study identified in the Shareholders' Demand is one example of such knowledge on the part of Merck's senior executives, as is the FDA's September 17, 2001 warning letter. There are, however, other indications from facts which have been subsequently disclosed and which we have uncovered through our continued investigation of this matter that senior executives at Merck knew, but covered up, the potential adverse cardiovascular side effects from taking Vioxx.

# Abraham Fruchter & Twersky LLP

On November 1, 2004, a front page article in *The Wall Street Journal* titled "E-Mails Suggest Merck Knew Vioxx's Dangers at Early Stage" also casts considerable doubt on the Company's denials. The article identifies the following e-mails and memos evidencing knowledge by responsible individuals at Merck of the increased cardiovascular risk now known to be associated with taking Vioxx:

- A February 25, 1997 e-mail from Briggs Morrison arguing that unless Vioxx patients also took aspirin, those patients would get more thrombotic events or blood clots;

- A responsive e-mail from Alise Reicin, stating that "the possibility of increased CV [cardiovascular] event is of great concern;" and

- A March 2000 e-mail in which Dr. Scolnick noted that increased cardiovascular events "are clearly there."

## Additional Proposed Individual Defendants

The Shareholders have determined based upon their further investigation into the facts of this case that the following individuals, in addition to Mr. Gilmartin, should be the target of any lawsuit which Merck files with respect to this matter:

1. Kenneth C. Frazier, Senior Vice President and General Counsel, who realized proceeds of $1,967,325.40 from the sale of Merck stock during the relevant period of time;

2. Judy C. Lewent, Senior Vice President and Chief Financial Officer, who realized proceeds of $16,574,556.06 from the sale of Merck stock during the relevant period of time;

3. Edward Scolnick, Executive Vice President for Science and Technology and President for Merck Research Laboratories, who realized proceeds of $32,402,000.00 from the sale of Merck stock during the relevant period of time;

4. David Anstice, President of Merck's Human Health Prescription Division, who realized proceeds of $29,718,650.49 from the sale of Merck stock during the relevant period of time; and

5. Bernard Kelly, senior executive in charge of manufacturing drugs, who realized proceeds of $10,298,600.00 from the sale of Merck stock during the relevant period of time.

# Abraham Fruchter & Twersky LLP

### Additional Claims for Relief and Sources of Damages

Since the announcement of Vioxx's withdrawal from the marketplace Merck has also been named as a defendant in several class action lawsuits filed in federal court arising under Section 10(b) of the Securities Exchange Act of 1934, including one filed by the New York State Common Retirement Fund. A similar class action arising under Section 11 of the Securities Act of 1933 has been filed in New Jersey state court on behalf of persons who purchased Merck shares through the Company's dividend reinvestment plan. Also, several class actions have been filed arising under, *inter alia*, § 502(a)(2) of the Employee Retirement Income Security Act ("ERISA") on behalf of current and former Merck employees for losses sustained in the Company's pension plans from purchases of Merck stock. These actions focus on the alleged failure by Merck to properly disclose to members of the investing public, as required by applicable provisions of the federal securities laws, the risks involved in marketing Vioxx or the suppression of unfavorable clinical results or, in the case of ERISA, to properly discharge its fiduciary duty by investing in Merck stock at the time when the Company's stock was overvalued by virtue of these material non-disclosures.

In the event that Merck is required to pay any money towards settlement or defense of the federal securities law and ERISA claims, it should seek contribution or indemnification from Mr. Gilmartin and the additional proposed individual defendants identified in the section above. Merck should also seek the disgorgement of any proceeds from the sale of Merck common stock or other securities made by those persons at the times when Merck was failing to make adequate disclosure of relevant material facts.

In addition, in the aftermath of Vioxx's withdrawal, Merck's long-term debt rating has already been downgraded by Moody's Investment Service from Aaa to Aa2 and it is keeping the rating under review for a possible further downgrade. Also, according to a November 8, 2004 Form 10-Q filing Merck made with the Securities and Exchange Commission ("SEC"), the Company is now the subject of an informal inquiry by the SEC and a criminal investigation by the U.S. Justice Department.

### Request for Additional Information

I also understand from a press release issued by Merck earlier this week that Merck has appointed a special committee of the board of directors (the "Special Committee") to investigate these matters and that committee has selected Judge Martin as its counsel. I assume that this is what you meant by the statement in your letter that Merck's board of directors would deal with the issues raised by the Demand in "due course."

On behalf of the Shareholders, I request that you provide my firm with a copy of the board resolution authorizing creation of the Special Committee as well as all documents concerning the scope of authority allocated to the Special Committee. Also, we would like to see

# Abraham Fruchter & Twersky LLP

a copy of the written retention agreement the Special Committee (or Merck's board) has entered into with the Debevoise & Plimpton law firm, identified in the press release as counsel to the Special Committee.

I look forward to hearing from you.

Very truly yours,

Jeffrey S. Abraham

cc: Hon. John S. Martin, Jr.

# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
www.debevoise.com

John S. Martin, Jr.
Of Counsel
Tel 212 909 6202
Fax 212 521 7802
jsmartin@debevoise.com

February 24, 2005

BY FEDERAL EXPRESS

Jeffrey S. Abraham, Esq.
Abraham Fruchter & Twersky LLP
One Penn Plaza, Suite 2805
New York, New York 10119

Dear Mr. Abraham:

      We are writing in our capacity as counsel to a Special Committee of the Board of Directors of Merck & Co., Inc. ("Merck" or "the Company") in response to your letter to Merck's Board of Directors (the "Board"), dated October 29, 2004, and your letter to Celia A. Colbert, Esq., Vice President, Secretary and Assistant General Counsel of Merck, dated December 10, 2004. In your letters, you demand that the Board take legal action against Raymond V. Gilmartin, the Chairman of the Board, Chief Executive Officer and President of Merck, and other Merck executives whom you claim (i) marketed VIOXX, or permitted VIOXX to be marketed, in a manner that damaged the Company, and (ii) failed adequately to disclose to investors the risks associated with the marketing and sale of VIOXX.

      As you know, last December, the Board appointed a Special Committee to investigate the allegations contained in your letters to the Board and Ms. Colbert, which, shortly after being appointed, retained Debevoise & Plimpton LLP ("Debevoise") to serve as its counsel in this matter. Since then we have been in the process of investigating the manner in which Merck's senior management team handled a series of issues relating to VIOXX, including issues raised in your letters.

      In your December 10 letter, you state that you have conducted your own "investigation into the facts of this case" and that, on the basis of that investigation, have identified certain individuals whom you believe should be the "targets" of any lawsuit filed by the Company on behalf of its shareholders. To the extent you have discovered relevant information that has not already been reported in the press, we would be interested in receiving that information from you directly. We would be particularly interested in any specific information concerning the conduct of any of the individuals named in your letters.

      We do not and will not represent the Company or the Board in any shareholder litigation. Our sole mandate is to conduct an independent investigation of the issues relating to the integrity of management arising from the Company's development and

Jeffrey S. Abraham, Esq.                    2                    February 24, 2005

distribution of VIOXX. Any information you can provide us that will assist us in carrying out that mandate would be appreciated. We are willing to receive information in whatever form is convenient for you, including an in-person meeting if you desire. Please feel free to contact me or Mark Goodman, the partner working with me on this matter, at any time.

    Thank you.

Sincerely,

John S. Martin, Jr.

# Abraham Fruchter & Twersky LLP

One Penn Plaza, Suite 2805
New York, NY 10119
Tel : (212) 279-5050
Fax: (212) 279-3655
www.aftlaw.com

February 25, 2005

*By Electronic Mail and U.S. Mail*

John S. Martin, Jr., Esq.
Debevoise & Plimpton
919 Third Avenue
New York, N.Y. 10022

Dear Judge Martin:

    I write in response to your letter of February 24, 2005.

    I understand your letter to be seeking any information my firm has gathered in the course of its investigation into the facts of the matters identified in my letters of October 29, 2004 and December 10, 2004. In referring to "the press," I assume that you are including newspapers, medical journals, televised news reports and other factual information readily available on NEXIS or similar information databases.

    Given that definition of "the press" the only other information we have reviewed at this time consists of SEC filings, FDA materials and pleadings filed in other actions alleging wrongful conduct on the part of Merck and its senior executives. I assume that you have access to that material as well. If you do not, I will be pleased to provide you with the same.

    However, we do not, at this time, have access to Merck internal communications in the form of memoranda, studies, letters, reports and e-mails. I trust that in your firm's capacity as counsel to the Special Committee, you have been given free access to those materials.

    Your letter also states that your "sole mandate is to conduct an independent investigation of the issues relating to the integrity of management arising from the Company's development and distribution of VIOXX." In that regard, I hope that your firm is also investigating: (a) the state of knowledge of Merck insiders identified in my December 10, 2004 letter at the time they sold shares in Merck.; and (b) whether any of Merck's senior executives have been unjustly

# Abraham Fruchter & Twersky LLP

February 25, 2005
Page 2

enriched through, among other things, the payment of bonuses and award of stock options based upon Merck's success in marketing VIOXX or other benefits provided to them.

If there is any other information you feel I can provide you with or which you wish to discuss further with me concerning this matter, please do not hesitate to contact me.

I look forward to hearing from you.

Sincerely yours,

Jeffrey S. Abraham

# Abraham Fruchter & Twersky LLP

One Penn Plaza, Suite 2805
New York, NY 10119
Tel : (212) 279-5050
Fax: (212) 279-3655
www.aftlaw.com

May 6, 2005

*By Electronic Mail and U.S. Mail*

John S. Martin, Jr., Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, N.Y. 10022

Dear Judge Martin:

  I write in response to your letter of April 21, 2005. I apologize for the delay but your letter arrived while I was on vacation.

  I believe that you are, regrettably, misinformed as to the scope of potential claims which my clients would like to have either Merck bring in its own name or, failing that, be brought derivatively on behalf of Merck. My demand letter of October 29, 2004, specifically states that:

> This letter is intended to demand that you take legal action against Raymond V. Gilmartin, the Chairman of the Board, Chief Executive Officer and President of the Company and any other individuals responsible *for causing the damage to the Company with respect to any improper marketing of Vioxx*. (Emphasis added).

  It is not correct that my clients seek to constrain the scope of any litigation and, therefore, the scope of any investigation being conducted by the two categories identified in your most recent letter. The December 10, 2004 letter was merely intended to elaborate upon the initial demand letter and was not intended in any way to supersede that initial demand letter.

  I also appreciate that any investigation may be time consuming. However, it has now been more than six months since my clients made their demand on Merck's board of directors. Sufficient time has passed, as reported in Merck's Form 8-K filed with the SEC on or about April 21, 2005, for: (1) Merck's upper level excess insurance carriers to commence an arbitration against Merck seeking, among other things, to cancel their insurance policies with respect to the

# Abraham Fruchter & Twersky LLP

May 6, 2005
Page 2

VIOXX lawsuits; and (2) for Merck to have sufficient information in its possession to establish a *$675 million reserve* solely for the Company's future legal defense costs related to the VIOXX lawsuits and investigations. There has also been sufficient time, as disclosed today, for Mr. Gilmartin to take, unexpectedly, early retirement as a result of the disclosure of certain information relating to the VIOXX matter.

Therefore, it seems that at some point in the very near future, your firm should be able to draw its investigation to completion in this matter. The failure to do so would have to be taken as a sign that Merck and/or its senior executives and directors are not cooperating in the investigatory process or in making any findings final. At some point in the very near future, my clients are likely to authorize my firm to file a shareholder derivative suit based upon, among other things, the theory that the extreme passage of time demonstrates that Merck's board will not act on the demand made in October 2004.

Nonetheless, until such time as we commence an action, we will obviously continue to cooperate in any way reasonably possible in your firm's investigation. In that vein, if we come into possession of non-public materials which we believe are relevant to your investigation and the disclosure of which will not compromise any potential confidential sources or privilege we may be afforded under the work product doctrine, we will share such information with you.

In the interim, I would greatly appreciate it and am specifically requesting a date by which you expect the investigation will be completed..

Sincerely yours,

Jeffrey S. Abraham

# Abraham Fruchter & Twersky LLP

One Penn Plaza, Suite 2805
New York, NY 10119
Tel : (212) 279-5050
Fax: (212) 279-3655
www.aftlaw.com

March 15, 2006

*By Electronic Mail and U.S. Mail*

Debra Todres, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, N.Y. 10022

Dear Debra:

I write in my capacity as counsel for Ellen Fagin and Judith Fagin, shareholders of Merck & Co., Inc. ("Merck") and the demand letter dated October 29, 2004, addressed to Merck's board of directors (the "Board").

It is my understanding, based upon our conversation yesterday, that attorneys from your firm met with the members of the special committee of the "Board (the "Special Committee") approximately two weeks ago to review the progress of the investigation. It is also my understanding that your firm hopes to conclude its investigation by mid-April and meet again at that time with the Special Committee which is then expected to make a recommendation to the Board as to how to proceed with respect to the demand..

I appreciate your firm continuing to keep me informed of the progress of your work and trust that you will inform me promptly of any decision made by the Special Committee and the Board with respect to the demand.

Sincerely yours,

Jeffrey S. Abraham

## Todres, Debbie

**From:** Jeff Abraham [jabraham@aftlaw.com]
**Sent:** Thursday, October 06, 2005 5:31 PM
**To:** Todres, Debbie
**Subject:** Merck Investigation

Dear Debra:

I write to confirm our conversation today that the internal investigation is ongoing with approximately 80 witnesses having been interviewed to date and millions of pages of documents reviewed. It is also my understanding from our conversation that counsel continues to be on track towards completing the investigation by year end and that monthly reports being made to Merck's special committee.

Also, consistent with my earlier conversations with you and Mark Goodman, I am awaiting and hope to receive soon a copy of the pleadings (including motions to dismiss) in the pending federal and state court shareholder derivative actions as well as the federal securities class action.

Finally, you agreed to check and see whether Merck has received demand letters from any shareholders other than the one I sent on behlaf of the Fagins.

Best wishes to you, Mark and your respective families for a Happy and Healthy New Year.

I look forward to hearing from you.

Sincerely,
Jeff Abraham

10/10/2005

### Todres, Debbie

**From:** Todres, Debbie
**Sent:** Wednesday, March 15, 2006 1:21 PM
**To:** 'Jeff Abraham'
**Cc:** Goodman, Mark P.
**Subject:** RE: Merck Investigation

Hi Jeff,

I received your email and letter regarding our telephone conversation yesterday. Just so that there's no misunderstanding, I want to reiterate that I do not know when the Special Committee will be making a recommendation to the full Board regarding the demand letter that you sent. To the extent that your letter implies that such recommendation will take place in mid-April, that does not reflect our conversation. I expect that we will have a clearer view of the timetable after we conclude our investigation. We will continue to keep you informed.

Regards,

Debbie Todres
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  10022
Tel: 212-909-6730
Fax: 212-909-6836
email: dtodres@debevoise.com

\*    \*    \*    \*    \*    \*    \*    \*

PRIVILEGED AND CONFIDENTIAL

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure.   If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise.  Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail.  Thank you.


-----Original Message-----
**From:** Jeff Abraham [mailto:jabraham@aftlaw.com]
**Sent:** Wednesday, March 15, 2006 12:45 PM
**To:** Todres, Debbie
**Subject:** Merck Investigation

3/15/2006

## Todres, Debbie

**From:** Jeff Abraham [jabraham@abrahamlaw.com]
**Sent:** Wednesday, April 26, 2006 6:00 PM
**To:** Todres, Debbie
**Subject:** Re: Merck Demand Letter


Thanks.  I asumem you would be informed of such developments.

Jeff
----- Original Message -----
From: "Todres, Debbie" <dtodres@debevoise.com>
To: "Jeff Abraham" <jabraham@aftlaw.com>
Cc: "Goodman, Mark P." <mpgoodman@debevoise.com>; "Martin, John S. Jr."
<jsmartin@debevoise.com>
Sent: Wednesday, April 26, 2006 5:58 PM
Subject: RE: Merck Demand Letter



Jeff,

I think that within a month sounds reasonable.  With regard to an
additional demand letter, I have not heard anything about it.

-Debbie

-----Original Message-----
From: Jeff Abraham [mailto:jabraham@aftlaw.com]
Sent: Wednesday, April 26, 2006 5:41 PM
To: Todres, Debbie
Cc: Goodman, Mark P.; Martin, John S. Jr.
Subject: Re: Merck Demand Letter


Dear Debbie,

Thanks for getting back to me.

Should I take the relatively near future to be within a month?  If not,
what
range of time period would you deem that to be?

Also, Karen Morris, a lawyer in Delaware called me again and told me
that a
client represented by Richhard Greenfield, a lawyer in Philadelphia, had
sent their own demand letter.  Am I correct in assuming that much like
last
time Karen Morris told me the same thing that she is equally misinformed
this time?

I hope al is well.

Sincerely,
Jeff Abraham
----- Original Message -----
From: "Todres, Debbie" <dtodres@debevoise.com>
To: "Jeff Abraham" <jabraham@aftlaw.com>
Cc: "Goodman, Mark P." <mpgoodman@debevoise.com>; "Martin, John S. Jr."
<jsmartin@debevoise.com>
Sent: Wednesday, April 26, 2006 5:35 PM
Subject: RE: Merck Demand Letter

1

Sorry not to have responded sooner, Jeff. I did get your email but was traveling Monday and Tuesday and have been tied up in meetings much of today.

In response to your questions, we expect to submit our report to the Special Committee next week. We expect that the Special Committee will then decide how to communicate to the full Board on the investigation and we further assume that the Board will then have to decide how to respond to your clients' demand. Although we are only advising the Special Committee, we would assume that the full Board will make a decision with respect to your client's demand in the relatively near future.

Regards,

Debbie Todres
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  10022
Tel: 212-909-6730
Fax: 212-909-6836
email: dtodres@debevoise.com

-----Original Message-----
From: Jeff Abraham [mailto:jabraham@aftlaw.com]
Sent: Wednesday, April 26, 2006 4:45 PM
To: Todres, Debbie
Subject: Re: Merck Demand Letter


Dear Debbie,

I see that you have read my e-mail. Do you plan on responding?

Jeff
----- Original Message -----
From: "Todres, Debbie" <dtodres@debevoise.com>
To: "Jeff Abraham" <jabraham@aftlaw.com>
Sent: Monday, April 24, 2006 6:11 PM
Subject: Read: Merck Demand Letter


Your message

   To:      Todres, Debbie
   Subject: Merck Demand Letter
   Sent:    Mon, 24 Apr 2006 17:38:18 -0400

was read on Mon, 24 Apr 2006 18:11:28 -0400

2