FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 OCT -2  P 12: 04

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| * * * * * * * * * * * * * * | MDL NO. 1657 |
| In re: VIOXX * | |
| PRODUCTS LIABILITY LITIGATION * | SECTION: L |
| * | |
| * | |
| * | JUDGE FALLON |
| GREGORY FRASER, Individually, and * | |
| on behalf of GWENDOLYN FRASER, * | MAG. JUDGE KNOWLES |
| * | |
| Plaintiff, * | Ref: 06-6952 |
| * | |
| vs. * | |
| * | |
| MERCK & CO., INC., a New Jersey * | |
| Corporation, * | |
| Defendant. * | |
| * | |
| * * * * * * * * * * * * * * | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, GREGORY FRASER, ("Plaintiff"), Individually,

and on behalf of GWENDOLYN FRASER,  by and through her attorneys,

KENNETH B. MOLL & ASSOCIATES, LTD., and complaining of the Defendant,

MERCK & CO., INC. (MERCK), state as follows:

### I. PARTIES

#### A. PLAINTIFFS

1.     GWENDOLYN FRASER, was a citizen and resident of East Orange,

New Jersey.  GWENDOLYN FRASER was prescribed, purchased and ingested 25

mg of Vioxx one time per day since on or about December of 1999 through August



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50™ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com


Fee_____
Process_____
X Dkld_____
CtRmDep_____
Doc. No._____

4, 2001. On or about August 4, 2001, GWENDOLYN FRASER suffered a transient ischemic attack as a proximate result of his ingestion of Vioxx.

2.     GREGORY FRASER, is the son of the GWENDOLYN FRASER and has been at all relevant times hereto.

## B.  DEFENDANT

3.     Defendant, MERCK & CO., INC., is headquartered in Whitehouse Station, New Jersey.

4.     At all times relevant hereto, Defendant, MERCK & CO., INC., was engaged in the business of testing, marketing, distributing, and promoting the pharmaceutical Vioxx in New Jersey.

## II.  JURISDICTION

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this is an action by an individual who is a citizen of a different state from the Defendant.

6.     Filing of this claim directly in this Multidistrict Litigation proceeding is proper pursuant Pretrial Order No. 11 issued by this court on May 18, 2005.

7.     Defendant is a corporation headquartered and a resident of the State of New Jersey. Defendant has, therefore, subjected itself to personal jurisdiction and venue is proper in this District pursuant to 28 U.S.C. § 1391.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

## III.  FACTUAL BACKGROUND OF VIOXX

8.      MERCK was incorporated more than 100 years ago; its principal place of business and worldwide headquarters is in Whitehouse Station, in the state of New Jersey. The research and development of Vioxx (including the manufacture of its active ingredient Rofecoxib),  took place at MERCK's research laboratories, which are located in Rahway, also in New Jersey.

9.      MERCK made every decision related to the development, design, manufacture, testing, marketing, distribution, and commercialization of Vioxx from its headquarters in New Jersey.  All aspects of Vioxx's worldwide commercialization and the ultimate decision to withdraw Vioxx from the world market were orchestrated by MERCK from its headquarters in the state of New Jersey.

10.     Vioxx is classified as a nonsteroidal anti-inflammatory drug (NSAID) with anti-inflammatory, analgesic and antipyretic properties.  As such, it is indicated for pain, dysmenorrhea, osteoarthritis and rheumatoid arthritis.  The earlier marketed NSAID products (i.e., ibuprofen, naproxen, etc.) are approved for similar indications.

11.     Vioxx was approved by the U.S. Food and Drug Administration in May 1999.

12.     Vioxx is a Cyclooxygenase-2 (Cox -2) selective inhibitor and as such had a lower incidence of gastrointestinal upset and a lower ulcerogenic potential. However, inhibiting the Cox-2 enzyme selectively causes an imbalance between

KBM

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

3
GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

Prostacyclin (PGI) and Thromboxane A-2 (TX A2).  Because "TX A2 is a major compound in the clotting process, and is a potent platelet aggregator and vasoconstrictor," the resulting imbalance between PGI and TX A2 places patients at an increased risk of thromboembolic events, primarily heart attacks and strokes. *The MERCK Manual (16th* ed. 1992).

13.    MERCK, the maker of Vioxx, is also the publisher of *The MERCK Manual* (16th ed. 1992), which includes the following definition: "Thrombaxane A-2 is a major compound involved in the clotting process, and is a potent platelet aggregator and vasoconstrictor."  This section of *The MERCK Manual* was not included in the 17th edition, published in 1999.

14.    MERCK-employed physicians, as well as industry leaders supported by MERCK, have published on the subject of Cox-2 inhibition induced prostaglandin synthesis and TXA2, creating a pro-thrombotic state that places patients at an increase risk of heart attack and stroke.  *See Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemo-dynamics, and Vasoactive Eiosanoids,* 289 (2) PHARMACOLOGY & EXPERIMENTAL THERAPEUTICS (May 1999).

15.    In June of 2000, MERCK submitted to the FDA a safety study called VIGOR (Vioxx Gastrointestinal Outcomes Research) that found an increased risk of serious cardiovascular events, including heart attacks and strokes, in patients taking Vioxx compared to patients taking naproxen.  In the VIGOR study, analysis of the

**K:M**

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50™ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

4
GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

cardiovascular data by the Safety Monitoring Board focused on "the excess deaths and cardiovascular adverse experiences in [the Vioxx group] compared to [the Naproxen group].

16.     On September 17, 2001, the Division of Drug Marketing, Advertising, and Communications (DDMAC) issued the following warning letter to MERCK; *"You (MERCK) have engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus misrepresents the safety profile for Vioxx."*

17.     MERCK undertook studies on its research laboratories located in New Jersey on the effects of Rofecoxib, collecting adverse drug data from all over the world. Based on results obtained in its research laboratories in New Jersey, MERCK submitted to the FDA, from its headquarters in New jersey, Supplemental New Drug Applications in order to propose labeling changes for Vioxx in its commercialization around the world.

18.     In 2000, MERCK spent $130 million on direct to consumer advertising.

19.     In 2001, MERCK spent $166 million on direct to consumer advertising.

20.     Shari L. Targum, M.D. of the FDA, Division of Cardio-Renal Drug Products, in the February 1, 2001 Review of Cardiovascular Safety Database states: In analyzing adverse events in VIGOR, "it can be seen that... there is an increased risk of MI and stroke in the [Vioxx group] compared with Naproxen; in the MI group,

**K:M**

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

5
GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

the 95% confidence interval is significant." "This analysis could lead one to conclude that Naproxen . . . would be the preferred drug."

21.    Vioxx sales exceeded $2.5 billion in 2003.

22.    On September 30, 2004 MERCK officially announced a voluntary withdraw of Vioxx from all markets in light of unequivocal results from a clinical trial demonstrating that Vioxx almost triples the risk of heart attack and stroke for those who take the product long term.  The company's decision is based on three-year data from a prospective, randomized, placebo-controlled clinical trial, the APPROVe (Adenomatous Polyp Prevention on VIOXX) trial.

23.    MERCK current and former employees are crucial liability witnesses who have testified about having developed, tested and marketed Vioxx. The large majority of those current and former employees work or used to work at MERCK's headquarters or at its research laboratories in New Jersey.

24.    Despite knowledge of both the general pharmacology related to Vioxx, and the specific cardiovascular risks demonstrated in the APPROVe and VIGOR studies, MERCK has failed to initiate studies to investigate the cardiovascular risk associated with Vioxx.

25.    On April 7, 2005, the U.S. Food and Drug Administration (FDA) stated that MERCK & Co., which withdrew Vioxx from the market last September, has not presented sufficient evidence to lift the moratorium. The FDA commissioner

**K:M**

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50™ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

6
GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

affirmed that the risks of these drugs outweighed the benefits, overruling the earlier recommendation of an advisory panel that believed the painkillers could be safely marketed.

26.    The FDA decision to continue the moratorium was based upon the scientific evidence that Vioxx and other Cox-2 inhibitors increase the risk of cardiovascular (CV) events such as heart attacks and strokes, gastrointestinal (GI) bleeding and ulcers, as well as adverse skin reactions such as Stevens-Johnson Syndrome, in which the patient suffers blisters and burn-like sensations. These were recognized as class-wide risks associated with the entire family of NSAIDs, even over-the-counter medications like Advil, Aleve, and Motrin. The FDA recommended that those NSAIDs which remain on the market should carry "black-box" labels, the strictest type of warning, in order to ensure that physicians and consumers are aware of the risks.

27.    MERCK's tortious conduct took place entirely at its headquarters and research laboratories in New Jersey. MERCK obtained the results of its tests at its laboratories and decided to continue to commercialize Vioxx after it knew from the resulting cardiovascular risks from its headquarters in New Jersey. It was at MERCK's headquarters in New Jersey where the ultimate decisions on research protocols and on interpretation and dissemination of the results of its internal studies were made.

KBM

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

## IV. CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY PURSUANT TO
### §402A OF THE RESTATEMENT (SECOND) OF TORTS

28.   Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

29.   The Defendant, from its headquarters in New Jersey, made every and all decisions regarding the manufacturing, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx in the United States, which it sold and distributed throughout the United States to GWENDOLYN FRASER.

30.   GWENDOLYN FRASER was using Vioxx in a manner for which it was intended or in a reasonably foreseeable manner.

31.   Vioxx was expected to and did reach GWENDOLYN FRASER without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

32.   GWENDOLYN FRASER was not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx.

33.   The Defendant's Vioxx caused increased risks of transient ischemic attacks and therefore constitute a product unreasonably dangerous for normal use

**KBM**

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

8

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

due to their defective design, defective manufacture, and the Defendant's misrepresentations and inadequate facts disclosed to GWENDOLYN FRASER.

34.     As a direct and proximate result of Defendant's decision making process that took place in New Jersey, related to the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx, GWENDOLYN FRASER suffered a transient ischemic attack and consequently suffered compensatory and punitive damages in an amount to be proven at trial.

35.     The Defendant, therefore, is strictly liable to the Plaintiff. Additionally, Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the consumers. The Plaintiff, therefore, is entitled to punitive damages.

## COUNT II
## NEGLIGENCE

36.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

37.     It was the duty of the Defendant to use reasonable care in the marketing, selling, advertising, warning, and otherwise distributing Vioxx.

38.     Contrary to its duty, the Defendant was guilty of one or more of the following careless and negligent acts and/or omissions:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

9

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

(A).   Failed to adequately and properly test and inspect Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

(B).   Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

(C).   Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

(D).   Failed to adequately and properly warn GWENDOLYN FRASER purchasing Vioxx of the risks of complications when used in a manner for which it was intended;

(E).   Failed to adequately and properly warn GWENDOLYN FRASER purchasing Vioxx of the risks of diseases when used in a manner for which it was intended;

(F).   Failed to adequately and properly label Vioxx so as to warn the GWENDOLYN FRASER of the risks of complications;

(G).   Failed to adequately and properly label Vioxx so as to warn the GWENDOLYN FRASER of the risks of developing a transient ischemic attack;

(H).   Manufactured Vioxx which constituted a hazard to health;

(I).   Manufactured Vioxx which caused adverse side effects; and

(J).   Were otherwise careless and negligent.

39.   As a direct and proximate result of Defendant's marketing, selling, advertising, and otherwise distributing Vioxx, GWENDOLYN FRASER was at an increased risk of developing a transient ischemic attack and has suffered compensatory and punitive damages in an amount to be proven at trial.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

10

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

## COUNT III
## NEGLIGENCE PER SE

40. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

41. Defendant had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

42. Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

43. GWENDOLYN FRASER, as a purchaser and consumer of Vioxx, is within the class of persons the statutes and regulations described above are designed to protect and GWENDOLYN FRASER's injury was of the type of harm these statutes are designed to prevent.

44. Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331 and constitutes a breach of duty subjecting Defendant to civil liability for all damages arising therefrom, under theories of negligence per se.

**K:M**

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

45.    Defendant failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as the GWENDOLYN FRASER, making Defendant negligent per se:

(A)    The labeling lacked adequate information on the use of the drug Vioxx [21 C.F.R. Section 201.56(a) and (d);

(B)    The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitations, thromboembolic events, primarily heart attacks and stroke, and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug [21 C.F.R. 201.57(e)];

(C).    There was inadequate information for patients for the safe and effective use of Defendant's drug [21 C.F.R. 201.57(f)(2)];

(D)    There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendant's drug [21 C.F.R. 201.57(f)(1)]; and

(E)    The labeling was misleading and promotional [21 C.F.R. 201.56(b)].

46.    As a result of the violations of the statutes described above, GWENDOLYN FRASER suffered injuries and damages as alleged herein.

COUNT IV
VIOLATIONS OF NEW JERSEYS'
CONSUMER PROTECTION STATUTES

47.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

48.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of New Jersey consumer protection statutes when it

KBM
KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

represented, through advertising, warranties, and other express representations, that Vioxx had benefits or characteristics that it did not actually have. Defendant further violated state consumer protection statutes when it falsely represented that Vioxx was of a particular standard or quality when it was not. Finally, Defendant violated New Jersey consumer protection statutes when it advertised Vioxx with the intent not to sell it as advertised, and when, in so doing, Defendant concealed and suppressed facts material to the true characteristics, standards, and quality of Vioxx.

49.     Defendant's deceptive practices were specifically designed to induce GWENDOLYN FRASER to buy Vioxx.

50.     As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, GWENDOLYN FRASER suffered actual damages and was threatened with irreparable harm by undue risk of physical injuries and death.

## COUNT V
## BREACH OF EXPRESS WARRANTY

51.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

52.     Defendant expressly warranted to GWENDOLYN FRASER, by and through statements made by Defendant or their authorized agents or sales representative, orally and in publications, package inserts and other written materials

**K:M**

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

13

intended for physicians, medical patients and the general public, that Vioxx was safe, effective, fit and proper for its intended use.

53.     In using Vioxx, GWENDOLYN FRASER relied on the skill, judgment, representations and foregoing express warranties of the Defendant.  Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

54.     As a direct and proximate result of Defendant's breach of warranty, GWENDOLYN FRASER was at an increased risk of developing and did in fact suffer a transient ischemic attack.   Indeed GWENDOLYN FRASER has suffered compensatory and punitive damages in an amount to be proven at trial.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

55.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

56.     Prior to the time that Vioxx was used by GWENDOLYN FRASER, Defendant impliedly warranted to GWENDOLYN FRASER that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

57.     GWENDOLYN FRASER was unskilled in the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of the Defendant in using Vioxx.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.

58.    Vioxx was neither safe for its intended use nor of merchantable quality, as warranted by Defendant, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

59.    As a direct and proximate result of Defendant's breaches of warranties, GWENDOLYN FRASER was at an increased risk of a transient ischemic attack and has suffered compensatory and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, GREGORY FRASER, Individually, and on behalf of GWENDOLYN FRASWER, pray that the Court enter judgment against Defendant, MERCK CO., INC., and in favor of Plaintiff, for a sum in an amount that will properly, adequately and completely compensate Plaintiff for the nature, extent and duration of the injuries and damages inflicted and the costs of this action.

RESPECTFULLY SUBMITTED,

By: _____
Kenneth B. Moll, #06199874
Pamela G. Sotoodeh, #6284622
Lynn M. Herbstman #6286390
Melissa A. Hunt, #6288265
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
www.kbmoll.com

K:3M

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
www.kbmoll.com

GREGORY FRASER, INDIVIDUALLY, AND ON BEHALF OF
GWENDOLYN FRASER, et al. v. MERCK & CO., INC.