UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|    Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
|    LENE ARNOLD | * | |
| | * | SECTION L |
| versus | * | |
| | * | JUDGE ELDON E. FALLON |
| MERCK & CO., INC. | * | |
|    Defendant | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| Case No. 05-2627 | * | |
| | * | |
| & | * | |
| | * | |
| ALICIA GOMEZ | * | |
| | * | |
| versus | * | |
| | * | |
| MERCK & CO., INC. | * | |
|    Defendant | | |

   Case No.  SA 05 CA0016 FB
* * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MERCK'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I.    THE FDA HAS AUTHORITY TO ISSUE REGULATIONS THAT PREEMPT STATE LAW ........................................................................................................... 5

II.   THE FDA'S DETERMINATION THAT ITS LABELING REGULATIONS DISPLACE CONFLICTING STATE-LAW LABELING CLAIMS IS ENTITLED TO DEFERENCE ..................................................................................... 13

III.   PLAINTIFFS' PROCEDURAL OBJECTIONS ARE BASELESS ............................ 16

IV.   PLAINTIFFS FAIL TO DEMONSTRATE THAT THE FDA'S CONSTRUCTION OF ITS REGULATIONS IS CONTRARY TO THOSE REGULATIONS ....................................................................................................... 19

V.   PLAINTIFFS' CLAIMS ARE RIPE FOR SUMMARY JUDGMENT ........................ 23

CONCLUSION ............................................................................................................................. 25

834025v.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ackermann v. Wyeth Pharms.*,
  2006 WL 2591078 (E.D. Tex. 2006) ............................................................... 22

*Auer v. Robbins*
  519 U.S. 452 (1997) ..............................................................................2, 13, 18

*Bates v. Dow Agrosciences, L.L.C.*,
  544 U.S. 431 (2005) ......................................................................... *passim*

*Belt v. Emcare, Inc.*,
  44 F.3d 403 (5th Cir. 2006) ................................................................... 2, 13

*Brooks v. Howmedica, Inc.*,
  273 F.3d 785 (8th Cir. 2001) ....................................................................... 21

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................ 22, 24

*Capital Cities Cable, Inc. v. Crisp*,
  467 U.S. 691 (1984) ................................................................................ 1, 8

*Chevron U.S.A. Inc. v. Natural Res. Def. Council Inc.*,
  467 U.S. 837 (1984) ................................................................................... 13

*Desiano v. Warner-Lambert & Co.*,
  2006 WL 2846354 (2d Cir. 2006) ................................................................. 9

*Fid. Fed. Savings & Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982) ......................................................................... *passim*

*Garcia v. Wyeth-Ayerst Labs.*,
  385 F.3d 961 (6th Cir. 2004) ....................................................................... 24

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) ....................................................................1, 2, 13, 15

*Gonzales v. Oregon*,
  126 S. Ct. 904 (2006) ............................................................................ 13, 14

*Henley v. FDA*,
  77 F.3d 616 (2d Cir. 1996) .......................................................................... 10

*Hillsborough County v. Automated Med. Labs.*,
  471 U.S. 707 (1985) ......................................................................... *passim*

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
  452 U.S. 264 (1981) ................................................................................... 12

*Hurley v. Lederle Labs.*,
  863 F.2d 1173 (5th Cir. 1988) ..................................................................... 20

*In re Baycol Prods. Litig.*,
  MDL No. 1431 (D. Minn.) ............................................................................. 3

*In re Bextra & Celebrex Mktg. Sales & Practices & Prod. Liab. Litig.*,
  2006 WL 2374742 ........................................................................9, 15, 22, 24

834025v.1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page**

*In re Diet Drug Prods. Liab. Litig.*,
 MDL No. 1203 (E.D.Pa) ............................................................................ 3
*In re Norplant Contraceptive Prods. Liab. Litig.*,
 MDL No. 1038 (E.D. Tex.) ......................................................................... 3
*In re Prempro Prods. Liab. Litig.*,
 MDL No. 1507 (E.D. Ark.) ......................................................................... 3
*In re Rezulin Prods. Liab. Litig.*,
 MDL No. 1348 (S.D.N.Y) ........................................................................... 3
*Kobar v. Novartis Corp.*,
 378 F. Supp. 2d 1166 (D. Ariz. 2005) ...................................................... 24
*McNellis v. Pfizer, Inc.*,
 Civil. No. 05-1268 (E.D.N.J.) .................................................................. 20
*Medtronic, Inc. v. Lohr*,
 518 U.S. 570 (1996) ......................................................................... *passim*
*NCNB Tex. Nat'l Bank v. Cowden*,
 895 F.2d 1488 (5th Cir. 1990) ............................................................ 2, 8, 9
*New York v. FCC*,
 486 U.S. 57 (1988) ........................................................................ 1, 2, 9, 14
*Norfolk S. Ry. Co. v. Shanklin*,
 529 U.S. 344 (2000) ................................................................................. 18
*Osburn v. Anchor Labs., Inc.*,
 825 F.2d 908 (5th Cir. 1987) .................................................................... 20
*Pauley v. BethEnergy Mines, Inc.*,
 501 U.S. 680 (1991) ............................................................................. 2, 13
*Planned Parenthood v. Sanchez*,
 403 F.3d 324 (5th Cir. 2005) ...................................................................... 1
*Pub. Citizen Health Research Group v. Comm'r*,
 740 F.2d 21 (D.C. Cir. 1984) .................................................................... 10
*Robertson v. Methow Valley Citizens Council*,
 490 U.S. 332 (1989) ............................................................................. 2, 13
*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944) ................................................................................. 16
*Texas v. United States*,
 730 F.2d 339 (5th Cir. 1984) .................................................................... 12
*Union City Barge Line, Inc. v. Union Carbide Corp.*,
 823 F.2d 129 (5th Cir. 1987) .................................................................... 24
*United States v. Locke*,
 529 U.S. 89 (2000) ...................................................................................... 1
*United States v. Shimer*,
 367 U.S. 374 (1961) ........................................................................... 1, 2, 9

iii

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page**

*United States v. Vernon Home Health, Inc.,*
  21 F.3d 693 (5th Cir. 1994)......................................................................................... 2, 8

*Zammit v. Shire US., Inc.,*
  415 F. Supp. 760 (E.D. Mich. 2006) .......................................................................... 24

**Statutes**

21 C.F.R. § 314.70(c)(6)(iii) ............................................................................................ 19

21 U.S.C. § 360k ............................................................................................................... 10

7 U.S.C. § 136v(b)............................................................................................................. 10

71 Fed. Reg. 3922-97 .............................................................................................6, 7, 13, 21

Drug Amendments Act of 1962
  Pub. L. No. 87-781, Tit. II, § 202
  76 Stat. 780, 783 (1962)............................................................................................... 10

**Other Authorities**

Jonathan V. O'Steen & Van O'Steen, *The FDA Defense: Vioxx® and the Argument Against
  Federal Preemption of State Claims for Injuries Resulting from Defective Drugs*, 48 Ariz. L.
  Rev. 67 (2006)................................................................................................................ 22

834025v.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
|     LENE ARNOLD | * | |
| | * | SECTION L |
| versus | * | |
| | * | JUDGE ELDON E. FALLON |
| MERCK & CO., INC. | * | |
|     Defendant | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
|     Case No. 05-2627 | * | |
| | * | |
|             & | * | |
| | * | |
| ALICIA GOMEZ | * | |
| | * | |
| versus | * | |
| | * | |
| MERCK & CO., INC. | * | |
|     Defendant | | |

Case No.  SA 05 CA0016 FB
* * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MERCK'S
MOTION FOR SUMMARY JUDGMENT**

The motion of defendant Merck & Co., Inc. ("Merck") for summary judgment on federal

preemption grounds is governed by black-letter principles of administrative law dating back at

least to *United States v. Shimer*, 367 U.S. 374 (1961), and enunciated time and again since by the

Supreme Court and by the Fifth Circuit:

- **First**, federal "regulations have no less preemptive effect than federal statutes."
  *Planned Parenthood v. Sanchez*, 403 F.3d 324, 336 (5th Cir. 2005).  In the
  Supreme Court's words, "[w]e have held **repeatedly** that state laws can be pre-
  empted by federal regulations as well as by federal statutes." *Hillsborough
  County v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985) (emphasis added); *see*,
  *e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000); *United States v.*

1

*Locke*, 529 U.S. 89, 109-10 (2000); *New York v. FCC*, 486 U.S. 57, 63 (1988); *Fid. Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154 (1982); *Shimer*, 367 U.S. at 382-83.

- *Second*, an agency's power to promulgate regulations with the effect of preempting state laws "does not depend on express congressional authorization to displace state law." *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 695 (5th Cir. 1994); *see de la Cuesta*, 458 U.S. at 154; *NCNB Tex. Nat'l Bank v. Cowden*, 895 F.2d 1488, 1494 (5th Cir. 1990). What matters – all that matters – is whether the agency's choice to promulgate regulations that preempt state law reflects a reasonable exercise of the regulatory power delegated by Congress to the agency: "[E]ven in the area of pre-emption, if the agency's choice to pre-empt represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *NCNB*, 895 F.2d at 1494 (quotation omitted); *see New York*, 486 U.S. at 63-64; *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 700 (1984); *Shimer*, 367 U.S. at 383.

- *Third*, an agency may express its view that its regulations have preemptive effect in a variety of ways, including through a formal statement in a regulatory Preamble. *See Geier*, 529 U.S. at 883; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 506 (1996) (Breyer, J., concurring); *Hillsborough*, 471 U.S. at 718.

- *Fourth*, and finally, an agency's reasonable interpretation of its own regulations – including an interpretation that gives them preemptive effect – necessarily governs subsequent inquiry into the intended meaning of the regulations. *See Belt v. Emcare, Inc.*, 444 F.3d 403, 416 & n.35 (5th Cir. 2006); *accord Geier*, 529 U.S. at 883; *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Medtronic*, 518 U.S. at 506 (Breyer, J., concurring); *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 698 (1991); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989).

Those basic principles are not in doubt, they are not ambiguous, and they control the result here. Congress delegated to the Food and Drug Administration ("FDA") broad authority to establish and administer policy governing the approval, distribution and use of prescription drugs in the United States. That broad delegation of authority presumptively encompasses the power to issue regulations that have the effect of displacing state laws, when the FDA reasonably determines that such laws undermine the federal regulatory scheme to protect public health and safety. Nothing in the text or history of the statute indicates that Congress intended to withhold

2

from the agency the power to displace those state laws that the agency finds to be in conflict with federal regulatory objectives. And as to the exercise of that basic authority in this instance, there is no ambiguity whatsoever as to the FDA's intent to preempt state-law claims that would require disclosure of risk information the FDA itself reviewed and deemed unnecessary to disclose. Such claims, the FDA has concluded, encourage manufacturers to craft prescription drug labels bloated with information the agency does not consider sufficiently helpful to doctors and consumers, thereby undermining consumer safety and public health by spawning confusing labels that at once underdeter misuses (by obscuring the most important risk information) and overdeter effective uses (by driving users away from the drug, toward less effective and possibly riskier therapies).

To be sure, the FDA's view that the objectives underlying the agency's labeling requirements are best advanced without additional disclosures forced by the threat of tort liability is not necessarily *required* by the statute. And indeed for many years the FDA itself did not regard such state-law claims as necessarily in conflict with its regulatory objectives, since the agency did not believe that prescription drug manufacturers would actually be held liable in tort for drug warning labels that were approved by the agency. (*See* Def.'s Br. at 24.) But the modern reality of prescription drug litigation – including mass filings involving tens of thousands of cases[1] and increasingly excessive punitive damages awards in product liability cases – ultimately disproved the FDA's hypothesis. Accordingly, pursuant to its mandate to protect consumers and public health, the FDA chose to interpret and apply its regulatory scheme

---

[1]      In the past decade, prescription drug liability litigation has been marked by mass filings of lawsuits. *See, e.g.*, *In re Baycol Prods. Litig.*, MDL No. 1431 (D. Minn.) (approximately 40,000 claims filed in federal and state courts); *In re Norplant Contraceptive Prods. Liab. Litig.*, MDL No. 1038 (E.D. Tex.) (50,000 claims); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348 (S.D.N.Y) (35,000 cases or claims); *In re Prempro Prods. Liab. Litig.*, MDL No. 1507 (E.D. Ark.) (8,000 claims); *In re Diet Drug Prods. Liab. Litig.*, MDL No. 1203 (E.D.Pa) (122,000 claims filed in settlement program with approximately 50,000 opt-outs).

834025v.1

so as to displace state laws and claims that impose on manufacturers a duty to warn that exceeds the duty established by the FDA after its review of known risk data.  Again, that policy choice may not have been required, but it was reasonable – to say the least – under the circumstances, and unquestionably within the FDA's regulatory authority.  Under the settled, black-letter principles summarized above, that ends the inquiry:  the FDA's unambiguous and wholly reasonable position that its regulations displace state-law claims asserting liability for failure to include labeling information not required by the FDA after review of available scientific data – which is precisely what plaintiffs' claims here assert – compels preemption of plaintiffs' claims.

Plaintiffs' contrary arguments rest almost entirely on resistance to, or misunderstanding of, the basic principles set forth above.  Plaintiffs' main argument, for example, is that Congress did not explicitly delegate to the FDA authority to issue regulations that preempt state law.  But as already noted, the governing precedents clearly do not require any such express delegation. Plaintiffs also insist repeatedly that the FDA Preamble itself lacks the "force of law" and hence can be disregarded by this Court.  But as already noted, it is perfectly well settled that an agency may express the preemptive effect of its regulations through a Preamble (or even in an amicus brief or opinion letter) that lacks its own force of law.  Plaintiffs complain that promulgation of the Preamble did not satisfy all relevant procedural requirements, but – in addition to being factually wrong – plaintiffs themselves admit that agency actions lacking their own force of law need not comply with such procedural requirements.  Finally, and perhaps most illustrative of the weakness of their arguments, plaintiffs attack the merits of the FDA's policy determination, as if the function of the judiciary were to second-guess the policy determinations made by federal agencies.  It is not.  Because Congress delegated authority over federal drug labeling policy to the FDA, which exercised that authority to promulgate regulations that displace conflicting state

4

laws, the sole question for the Court under settled administrative law principles is whether that exercise of authority was reasonable.  Plaintiffs cannot seriously answer that question in the negative, which is why they struggle so mightily to change the terms of the question.  But those terms are fixed by controlling precedent, which requires deference to the FDA's view, and thus preemption of plaintiffs' claims.

## ARGUMENT

As detailed in Merck's opening brief and summarized above, a court considering whether agency regulations preempt state law must ask two questions:  (1) Did the agency intend to preempt state law? and (2) Is such preemption a reasonable accommodation of the policies committed to the agency?  Here, the answer to both questions is yes, for the reasons Merck explained in its opening brief.

In the 70-plus pages plaintiffs spend trying to respond to Merck's motion, they do not deal squarely with *either* of those basic questions.  Instead, plaintiffs advance a series of arguments that are either red herrings or attempts to rewrite the law of regulatory preemption. Many of these arguments were anticipated and refuted in Merck's opening brief.  Others are truly novel – and even more seriously misguided.  Below, we address plaintiffs' arguments in turn.

## I.  THE FDA HAS AUTHORITY TO ISSUE REGULATIONS THAT PREEMPT STATE LAW.

Plaintiffs' main argument is that Congress did not confer the FDA with authority to issue regulations that "preempt state common law related to prescription medications."  (Pls.' Br. at 32; *see id.* at 2 ("there has never been any positive statement by the Congress, either express or implied, authorizing the Food and Drug Administration . . . to preempt state common law claims involving prescription medications"); *id.* at 29 ("no authority to preempt state law in the

834025v.1

prescription drug arena has issued from Congress").)  Plaintiffs' argument both mischaracterizes Merck's submission and misunderstands the governing rule.

To start, nobody contends that "field preemption" is at issue here or that "all state claims related to labeling are preempted."  (Pls.' Br. at 16.)  To the contrary, Merck's opening brief specifically noted the FDA's express acknowledgment in the Preamble that "'FDA's regulation of drug labeling will not preempt all State law actions.'"  (Def.'s Br. at 17 n.7 (quoting 71 Fed. Reg. at 3936).)  As the FDA has elaborated again recently, "FDA has not attempted to 'occupy the field' of prescription drug labeling, and state tort liability for failure to warn does not necessarily prevent FDA from carrying out its regulatory goals."  Letter Brief of FDA as Amicus Curiae at 11, *Perry v. Novartis Pharmaceuticals*, Civ. No. 05-5350 (E.D. Pa. Sept. 21, 2006) ("FDA *Perry* Br.").  Thus, state-law failure-to-warn claims based on labels the FDA has deemed or would deem misbranded may proceed.  *Id.* at 11; 71 Fed. Reg. at 3936.  Such "parallel" state tort suits do not conflict with federal regulatory requirements because they do not rest on labeling requirements different from federal requirements.  *See Medtronic*, 518 U.S. at 495 (Medical Device Amendment ("MDA") preemption provision of FDCA does not preempt "parallel" state-law claims); *Bates v. Dow Agrosciences, L.L.C.*, 544 U.S. 431, 447-48 (2005) (federal statute preempting state laws that impose labeling requirements "'different from, or in addition to'" federal law preempts state failure-to-warn tort claims except those that "parallel" substantive requirements of federal law (quoting *Medtronic*, 518 U.S. at 513)).

This case, however, involves a type of state-law labeling claim the FDA has unambiguously pronounced to be in irreconcilable conflict with its regulatory scheme. According to the agency, a state-law claim that challenges labeling statements approved by the FDA, based on information available to the FDA when the label was approved, *is* categorically

6

preempted by the FDA's labeling regulation.  FDA *Perry* Br. at 10; 71 Fed. Reg. at 3936.  Such a claim may assert that a label statement required by the FDA was affirmatively false, or it may – as here – assert that label statements approved by the FDA did not adequately disclose risks apparent from data available to the FDA.  *See* FDA *Perry* Br. at 10.  The second situation, the FDA recognizes, is simply the "[c]onverse[]" of the first, *id.* – either way, the state-law claim would constitute a direct challenge to the FDA's determination as to what disclosure would best protect consumer safety and public health, and thus would conflict directly with the FDA's regulatory objectives.  *Id.*  Stating the rule applicable here, the FDA explains that "any claim premised on the defendants' failure to provide additional warnings about [a drug]" as of the date of the drug's approval, "premised on scientific information known to and considered by FDA as part of the approval process, would also be preempted."  *Id.* at 12.

This straightforward conflict preemption rule bars plaintiffs' claims in the instant cases because those claims are premised entirely on Vioxx use that occurred ***after*** the FDA reviewed the VIGOR data and approved a new label, and ***before*** either Merck or the FDA obtained additional information from the APPROVe study about Vioxx risks.  *See infra* at 19-20.  Such preemption does not result because the FDA has occupied the field of prescription drug labeling, but because plaintiffs unambiguously seek to impose labeling requirements on top of those considered appropriate by the FDA after review of the data available at the time.[2]  *See Bates*, 544 U.S. at 447-48 (holding that common law failure-to-warn claims asserting product labeling requirements in addition to or different from federal regulatory standards are conflict preempted); *Medtronic*, 518 U.S. at 495 (same).

---

[2]      As explained below, *infra* at 20, 24 & n.17, all of the information that plaintiffs assert should have been disclosed was presented to and reviewed by the FDA.

Plaintiffs' analysis of the FDA's position not only mischaracterizes the agency's position, but fails to apply the proper standard of review of federal agency action preempting state law. According to plaintiffs, Congress did not "expressly" delegate to the FDA the power to preempt state laws that conflict with FDA regulations.  (Pls.' Br. at 26.)  However, the case law has **never** required Congress to act with such specificity.  The Fifth Circuit and U.S. Supreme Court could not speak more plainly on this issue:  an agency's power to preempt state law "***does not depend upon express congressional authorization to displace state law***."  *Vernon Home Health*, 21 F.3d at 695 (emphasis added); *see de la Cuesta*, 458 U.S. at 154 (same).  As the Fifth Circuit has emphasized, "even in the area of pre-emption," the question is simply whether "the agency's choice to pre-empt represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute."  *NCNB*, 895 F.2d at 1494 (quotation omitted). Indeed, the Supreme Court has on more than one occasion addressed the power of the ***FDA specifically*** to preempt state law, and has explained in careful detail the reasons why the FDA may exercise such power even in the absence of an explicit delegation of authority by Congress:

> [T]he [FDA] can be expected to monitor, on a continuing basis, the effects on the federal program of local requirements. . . .
>
> Congress, unlike an agency, normally does not follow, years after the enactment of federal legislation, the effects of external factors on the goals that the federal legislation sought to promote.  Moreover, it is more difficult for Congress to make its intentions known – for example by amending a statute – than it is for an agency to amend its regulations or to otherwise indicate its position.

*Hillsborough*, 471 U.S. at 721; *see Medtronic*, 518 U.S. at 506 (S. Breyer, J., concurring) ("[The FDA has a] special understanding of the likely impact of both state and federal requirements, as well as an understanding of whether (or the extent to which) state requirements may interfere with federal objectives.  The FDA can translate these understandings into particularized pre-emptive intentions accompanying its various rules and regulations." (citation omitted)); *see also*

8

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 2006 WL 2374742, at *7 (N.D. Cal. 2006) ("Congress has delegated the responsibility for administering the FDCA to the FDA; such responsibility implies the authority and expertise to determine which state laws conflict with its regulations.").

The presumption against preemption that applies to review of an otherwise ambiguous statute thus does not apply where the agency has expressly stated that it intends its regulations to preempt.  *See, e.g., Crisp*, 467 U.S. at 700 (holding that agency regulation preempt laws within traditional police power of states where agency intent is clear); *Hillsborough*, 471 U.S. at 721 (FDA possesses authority to preempt state health laws when it makes its intentions clear).  In that situation, the issue of preemptive intent is resolved, and the only question remaining under the "limited" review applicable to an agency's preemption determination, *de la Cuesta*, 458 U.S. at 154, is whether the agency's action reflects a "'reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.'"  *New York*, 486 U.S. at 64 (quoting *Shimer*, 367 U.S. at 383); *see NCNB*, 895 F.2d at 1494.[3]

There is no basis for concluding here that the FDA's preemption determination exceeds the scope of the broad policy authority delegated to it by Congress.  Plaintiffs' contrary argument rests primarily on the fact that long after the enactment of the FDCA, Congress added an express preemption provision in the Medical Device Amendments ("MDA") to the FDCA and a similar provision to the FDCA sections governing over-the-counter ("OTC") drugs.  Plaintiffs leap to the conclusion that by adding these provisions, Congress must have tacitly intended to withdraw

---

[3]          In footnoted dictum in *Desiano v. Warner-Lambert & Co.*, 2006 WL 2846454 (2d Cir. 2006), the Second Circuit recently suggested that "an agency cannot supply, on Congress's behalf, the clear legislative statement of intent required to overcome the presumption against preemption."  *Id.* at *11 n.9.  That dictum cannot be reconciled with precedents such as *Hillsborough*, *FCC v. New York*, *Crisp*, or *Shimer*, all of which make unambiguously clear that an agency may promulgate regulations preempting state laws – even laws concerning an area of traditional state regulation – so long as the ***agency's*** intent to preempt is clear, and the regulation is within the policy authority conferred by Congress.

from the FDA all authority to preempt conflicting state laws in all other statutory contexts.  (Pls.'

Br. at 28-30.)  But the text and history of the MDA and OTC provisions do not indicate in any

way that Congress intended, *sub silentio*, to restrict the FDA's general authority to reconcile

policy conflicts in favor of federal objectives by preempting state law.  Indeed, the Supreme

Court squarely rejected an effort to draw an identical inference in *de la Cuesta*:

> Although Congress made decisions about the applicability of certain aspects of
> state law to federal savings and loans, these provisions do not imply that Congress
> intended no further pre-emption of state law.  Rather, Congress invested the
> Board with broad authority to regulate federal savings and loans so as to effect the
> statute's purposes, and plainly indicated that the Board need not feel bound by
> existing state law.

*de la Cuesta*, 458 U.S. at 162.  Likewise, here, Congress invested the FDA with broad authority

to regulate prescription drug labels so as to effectuate the FDCA's objective of protecting

consumer safety and public health.  *See Henley v. FDA*, 77 F.3d 616, 621 (2d Cir. 1996); *Pub.*

*Citizen Health Research Group v. Comm'r*, 740 F.2d 21, 28 (D.C. Cir. 1984).  Congress even

**explicitly** indicated that state laws should be overridden when they are found to be in actual

conflict with the statute's regulatory objectives.  (*See* Def.'s Br. at 26-27 (discussing Drug

Amendments Act of 1962, Pub. L. No. 87-781, Tit. II, § 202, 76 Stat. 780, 783 (1962)).)  As *de*

*la Cuesta* makes clear, the more specific MDA and OTC express preemption provisions do not

establish a conclusive limit on the FDA's fundamental power to resolve conflicting federal and

state policy objectives by displacing state laws that interfere with the federal scheme.

   Relatedly, plaintiffs rely heavily on two precedents of the Supreme Court – *Medtronic*

and *Bates* – as purportedly rejecting preemption arguments where the statutes contained express

preemption provisions.  (Pls.' Br. at 28, 34-35.)  But both of those cases strongly **support**

preemption in the instant case.  *Medtronic* involved the MDA preemption provision discussed

above, which preempted state laws that impose requirements "'different from, or in addition to'"

federal regulatory requirements.  518 U.S. at 543 (quoting 21 U.S.C. § 360k).  *Bates* involved an essentially identical preemption provision in a different statute, which preempted state laws that impose pesticide labeling requirements "'in addition to or different from'" federal regulatory requirements.  544 U.S. at 443 (quoting 7 U.S.C. § 136v(b)).  The Court held in both cases that the provisions applied to the duties that would be imposed by state-law failure-to-warn claims, and thus the provisions preempted any such claims that asserted duties different from, or in addition to, the duties already specifically prescribed by federal regulation.  *See Bates*, 544 U.S. at 447-48 (federal statute preempts failure-to-warn claims based on standards not "equivalent" or "parallel" to federal regulatory standards); *Medtronic*, 518 U.S. at 495 (same).  As the Court put it in *Bates*, any "[s]tate-law requirements" that would be imposed through failure-to-warn liability "must . . . be measured against any relevant [agency] regulations that give content to [the federal statute's] misbranding standards," and any claims that rest on differing requirements are preempted.  544 U.S. at 453; *see id.* at 454 ("a manufacturer should not be held liable under a state labeling requirement subject to [the federal preemption rule] unless the manufacturer is also liable for misbranding as defined by [the federal statute and implementing regulations]").

The result here should be exactly the same.  Plaintiffs' claims are not "parallel" state-law claims, *i.e.*, claims based on violation of the FDA's labeling requirements.  To the contrary, plaintiffs explicitly and repeatedly ***attack*** as inadequate under state law the post-VIGOR label information sanctioned by the FDA in its approval process.  Plaintiffs' theory, in other words, is that state law required Merck to include information on the Vioxx label about risks revealed in the VIGOR study that was different from, or in addition to, the information required by the FDA.  *Medtronic* and *Bates* plainly support preemption of such claims.[4]

---

[4]      Plaintiffs confusingly cite *Bates* as holding that "jury verdicts" are not state-law "requirements" preempted by federal law because they do not themselves force manufacturers to do anything.  (Pls.' Br. at 15 n.13.)  *Bates* did

11

Plaintiffs also submit that Congress's rejection in recent years of several medical malpractice bills "unambiguously demonstrat[es]" the intent of the Congress that enacted the FDCA decades ago "not to preempt state tort claims based on compliance with FDA regulations." (Pls.' Br. at 30.) This argument too is meritless. As plaintiffs themselves admit, those bills proposed "sweeping restrictions" on all medical malpractice cases in the United States; the FDA preemption provisions were but a tiny component of this enormously broad and highly controversial legislation. It is fantasy to infer that Congress rejected the bills simply because they would have codified a particular preemption standard for the FDA's prescription drug labeling regulations.

Finally, plaintiffs cite this Court's earlier suggestion that the Tenth Amendment might preclude Congress or an agency from preempting state law. (Pls.' Br. at 55.) Merck respectfully submits that the many precedents cited above establish, with no uncertainty, that Congress does have the constitutional authority to preempt state laws, that such authority may be delegated to a federal agency, and that an agency's reasonable exercise of such authority must be respected by courts.[5] This Court's initial skepticism of the power of Congress – and of agencies with delegated policymaking authority – to preempt state laws simply cannot be reconciled with those precedents.

---

make that observation, but it then went on to hold that failure-to-warn claims nevertheless *do* "qualify as requirements," because they "set a standard for a product's labeling." 544 U.S. at 446 (quotation omitted). Likewise, plaintiffs' claims here rest on an asserted state-law labeling standard that would conflict with the federal standard adopted by the FDA.

[5]     In addition to the precedents cited *supra*, the Supreme Court and the Fifth Circuit have conclusively rejected the argument that the Tenth Amendment limits federal authority to preempt state law in the course of regulating interstate commerce by statute or regulation. *See, e.g., Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 289-90 (1981) (describing as "incorrect" the "assum[ption] that the Tenth Amendment limits congressional power to pre-empt or displace state regulation of private activities affecting interstate commerce"); *Texas v. United States*, 730 F.2d 339, 357 (5th Cir. 1984) (same).

834025v.1

II.     **THE FDA'S DETERMINATION THAT ITS LABELING REGULATIONS DISPLACE CONFLICTING STATE-LAW LABELING CLAIMS IS ENTITLED TO DEFERENCE.**

There is no serious question that the FDA intends its labeling regulations to be read as displacing state-law claims that seek to establish liability for statements approved by the FDA, when such claims are based on information made available to the FDA.  *See* 71 Fed. Reg. at 3923-35; FDA *Perry* Br. at 11.  Further, it is settled that an agency may make its preemptive intentions known through Preamble statements.  *See Geier*, 529 U.S. at 883; *Medtronic*, 518 U.S. at 506 (Breyer, J., concurring); *Hillsborough*, 471 U.S. at 718.  It is equally well settled that a court must give "controlling" deference – as the Fifth Circuit recently put it – to an agency's construction of the meaning of its own regulations, including when that construction is advanced in a regulatory Preamble.  *Belt v. Emcare, Inc.*, 444 F.3d 403, 416 & n.35 (5th Cir. 2006).  Although recited in numerous precedents, *see, e.g.*, *Gonzales v. Oregon*, 126 S. Ct. 904, 914 (2006); *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 698 (1991); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989); *de la Cuesta*, 458 U.S. at 158 n.13, this rule of deference has come to be known as "*Auer* deference," after one of the many decisions applying the rule, *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  Under this rule, the FDA's construction of its own labeling regulations as establishing a labeling content "ceiling" – which displaces state-law claims that would require the disclosure of information the agency deemed unnecessary to disclose after its own review of the information – is entitled to controlling deference from this Court.

Plaintiffs argue that deference is not warranted here for essentially two reasons.  One is irrelevant; the other is wrong.

To start, plaintiffs repeatedly insist that deference is not appropriate under *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837 (1984), because the FDA's

13

Preamble statement does not itself carry the "force of law."  (Pls.' Br. at 37, 43, 45, 46, 58 n.47.)
Merck has never claimed otherwise.  The Preamble does *not* itself carry the force of law and thus
is *not* entitled to deference under *Chevron*.  Plaintiffs' repeated statements about *Chevron*
deference are thus beside the point.  The deference at issue here is *Auer* deference, which – as
even plaintiffs themselves concede (Pls.' Br. at 37) – fully applies to agency "interpretive rules"
and other statements that do not themselves carry the force of law.[6]

As for *Auer* deference, plaintiffs contend that such deference is inapplicable here because
the FDA is not interpreting any ambiguous regulation, but instead is making "a legal argument
about the preemptive effect of its labeling decisions on state failure to warn claims."  (Pls.' Br. at
37.)  Not so.  The Preamble is not an "argument" – it is a specific finding and express statement
of the agency's intent with respect to its own regulations.  *See New York*, 486 U.S. at 64
(explaining that "where state law is claimed to be pre-empted by federal regulation," the "correct
focus" is not the intent of Congress, but of the federal agency).  As already noted, it is settled that
an agency may express its intent to preempt state law in a Preamble or interpretive rule, and the
cases so holding have not held that such statements are entitled to less deference merely because
they result in preemption of state law.  *See Gonzales v. Oregon*, 126 S. Ct. 904, 914 (2006);
*Medtronic*, 518 U.S. at 506 (Breyer, J., concurring); *Hillsborough*, 471 U.S. at 718; *de la Cuesta*,
458 U.S. at 158 n.13.[7]  Further, the FDA's clear expression of its preemptive intent is important
because the FDA's regulations do not themselves answer the question whether they impose a
"ceiling" or only a "floor" for the content of approved labels.  Either construction is plausible;

---

[6]    Plaintiffs also suggest that the Preamble should have no retroactive effect because deference to the FDA's
view of preemption would violate the Due Process clause of the Fourteenth Amendment.  (Pls.' Br. at 49 n.41.)  This
argument is wrong for reasons noted in Merck's opening brief, to which plaintiffs offer no response.  (*See* Def.'s Br.
at 31-32.)

[7]    Plaintiffs also suggest that *Auer* deference does not apply because the FDA lacked the authority to preempt
state law.  (Pls.' Br. at 38.)  The premise of this argument is false, as shown above, *supra* Part I.

14

the answer turns on one's view of how best to serve the statute's policy objectives of protecting consumer safety and public health by ensuring accurate, clear and helpful labels. The FDA's Preamble answers the question in favor of construing the regulations as establishing not only a floor but also a ceiling, so as to displace state laws that – in the agency's expert judgment – undermine consumer health and public safety by mandating warnings the agency has found to be unnecessary and even improper given the available data, resulting in confusing and unhelpful prescription drug labels.

Ultimately, plaintiffs concede the weakness of their deference arguments by mounting a general assault on the very concept of judicial deference to agency action, asserting that such deference is tantamount to abdication of the judicial function. (Pls.' Br. at 59-60.) This contention is baseless. Deference under *Auer* (as under *Chevron*) simply requires a court to acknowledge and respect the important role of federal agencies in establishing and carrying out federal policies within their domain, including judgments about whether state law interferes with those policies. As noted above, the Supreme Court has repeatedly explained that agencies are authorized to make preemption decisions as part of their ongoing duty to establish and administer federal law and policy, which includes the responsibility to review the effects of state law on federal policies, and to mitigate those effects through preemption where the agency deems it necessary. *See Hillsborough*, 471 U.S. at 721; *Medtronic*, 518 U.S. at 518 (S. Breyer, J., concurring); *see also Bextra*, 2006 WL 2374742, at *6 (C. Breyer, J.) (explaining that FDA is "'likely to have a thorough understanding of its own regulation and its objectives and is "uniquely qualified" to comprehend the likely impact of state requirements'" (quoting *Geier*, 529 U.S. at 883)). Justice Breyer aptly summarized the point in *Bates*: "As suggested by *Medtronic*, the federal agency charged with administering the statute is often better able than are courts to

15

determine the extent to which state liability rules mirror or distort federal requirements. . . .  And, within appropriate legal and administrative constraints, it can act accordingly."  544 U.S. at 455.  The function of a court in reviewing agency action is to police those well-recognized "legal and administrative constraints," and thus to invalidate those agency actions – but only those actions – that demonstrably exceed the bounds of agency authority and reasonableness.  In other words, to enforce the basic authority of an agency to establish federal policy within the domain of broadly delegated regulatory authority is not to abdicate the judicial function – it *is* the judicial function.

### III.   PLAINTIFFS' PROCEDURAL OBJECTIONS ARE BASELESS.

Plaintiffs also recite a series of procedural objections to the preemption statements in the Preamble to the 2006 Labeling Regulation, designed to show that the FDA's policy decision lacks "the power to persuade" under the less deferential standard of *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  (Pls.' Br. at 40.)  Plaintiffs concede, however, that the *Skidmore* standard applies only where the agency's action "is not entitled to *Auer* or *Chevron* deference."  *Id.* Where *Auer* deference *does* apply, the Court must enforce the agency's decision so long as it is not plainly inconsistent with the regulations or beyond the agency's power under the statute, as already discussed.  Plaintiffs do not contend otherwise.  Plaintiffs' recitation of procedural factors solely relevant to *Skidmore* deference is, therefore, beside the point.

Nonetheless, a brief review of plaintiffs' objections reveals them all to be in error.  Plaintiffs' primary argument is that the Preamble can be ignored because it did not satisfy the requirements of notice-and-comment under the Administrative Procedure Act ("APA") and of Executive Order 13132.  But plaintiffs concede that APA notice-and-comment procedures apply only to "legislative rules" – *i.e.*, rules with the force of law – and ***not*** to "interpretive rules" such

as the Preamble's preemption statements.  (Pls.' Br. at 46-47.)[8]  Plaintiffs also appear to concede

that the federalism-based notice requirement of Executive Order 13132 likewise applies only to

formally promulgated legislative rules and adjudications, rather than to agency statements

outside the scope of APA notice-and-comment procedures.  (Pls.' Br. at 42.)  What is more,

nothing in the Order indicates that it is intended to be enforced by courts, rather than by the

President himself in his capacity to supervise and control the policymaking decisions of

subordinate, non-independent agencies.[9]  Finally, plaintiffs themselves acknowledge that the

FDA confirmed that it consulted with six distinct organizational and individual representatives of

state interests.  (Pls.' Br. at 44 n.38.)  While plaintiffs complain that the FDA did not provide

details of the various parties' responses to the proposed statements, the Order requires only

consultation, not a published elaboration of every entity's individual viewpoint.

Plaintiffs also object to the Preamble statement on the ground that it is "inconsistent"

with the FDA's prior construction of its regulations.  Plaintiffs are assuredly correct that for

many years the FDA did not consider it necessary to displace state-law failure-to-warn claims –

the agency simply did not believe that state-law liability would actually attach for labeling

statements approved by the FDA.  (*See* Def.'s Br. at 24.)  Plaintiffs are just as assuredly incorrect,

however, in their assertion that "[w]hen an agency changes its mind and reverses position, its

---

[8]    Plaintiffs also ignore Merck's demonstration that the Preamble's preemption statement in any event did
satisfy the requirements of notice-and-comment because it was a logical outgrowth of the agency's concerns about
the connection between product liability litigation and its regulatory objectives, concerns clearly expressed in the
initial Notice of Proposed Rulemaking.  (Def.'s Br. at 28-30.)

[9]    The Order contrasts with the APA, in which ***Congress*** – not the President – set forth the legal requirements
applicable to agency action.  Congress has no enforcement authority of its own and thus requires the courts to ensure
that agencies abide by the procedural requirements Congress has prescribed.  To the extent Executive Order 13132
adds an additional requirement applicable to agencies under the direct control of Executive Branch, it is a
requirement imposed entirely as a matter of the President's discretion, one fully capable of being enforced within the
Executive Branch itself.  Thus, if the President believes that the FDA has not adequately complied with his own
Order, he can require the agency to rescind the action.  There is no reason for courts to intervene in that intra-branch
process – the duty of courts is limited to ensuring adherence to the APA requirements imposed by Congress.

views are not entitled to deference." (Pls.' Br. at 56.) The precedents could not be more clearly to the contrary. (Def.'s Br. at 23 (citing cases).)

The two cases plaintiffs cite (Pls.' Br. at 56) do not suggest otherwise. In *Bates*, the Court rejected the EPA's interpretation of the underlying statute's express preemption provision because that interpretation could not be reconciled with the plain text of the provision. *See* 544 U.S. at 449 (Court's interpretation "is at once the only one that makes sense of each phrase" in the provision). That is a straightforward application of standard *Chevron* deference principles, which require a court to reject an agency interpretation at odds with the statute's text. The Court simply cited the agency's prior inconsistent interpretation to confirm the error in its new reading of the statute – not as a basis for declining to apply deference principles. *See id.* Likewise, in *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344, 356 (2000), the Court rejected an agency's new interpretation of its own regulation principally because it "contradict[ed] the regulation's plain text." *Id.* at 356. Again, this is a straightforward application of the *Auer* deference rule, which requires a court to reject an agency's interpretation of its own regulation if it is "inconsistent with the regulation." *Auer*, 519 U.S. at 461. As in *Bates*, the agency's prior position in *Shanklin* merely evidenced the flaw in its current position – it was not cited as a reason to deny deference that would otherwise be appropriate.

By contrast, in the instant case, the FDA's current position is in no way inconsistent with the text of the statute or the labeling regulations. The FDA's view may not be ***compelled*** by the statute or regulations, as evidenced by the fact that for years, the FDA believed it could satisfy the policy objectives of its regulations without explicitly preempting tort claims based on failure to provide information the FDA deemed unnecessary at the time. But that history does not require the Court to reject the revised approach the FDA has developed over the last six years,

because the entire point of *Auer* deference is that unless the regulations permit only one conclusion, the agency itself must be allowed to decide how its own regulations should be construed so as to best advance the policy objectives underlying them.  By 2000, the FDA began to make explicitly clear its view that the federal policies underlying the labeling regulations were no longer being advanced by the application of additional labeling requirements imposed through state tort standards, but instead were being actively hindered by them.  That is exactly what agencies are expected to do:  "monitor, on a continuing basis, the effects on the federal program of local requirements."  *Hillsborough*, 471 U.S. at 721.  And because nothing in the plain text of the labeling regulations precludes the construction adopted by the FDA, *see infra* Part IV, it must be respected and enforced by the Court.

## IV.    PLAINTIFFS FAIL TO DEMONSTRATE THAT THE FDA'S CONSTRUCTION OF ITS REGULATIONS IS CONTRARY TO THOSE REGULATIONS.

Much of plaintiffs' brief is an attempt to demonstrate that the FDA's preemption determination is an unwise policy decision.  But that is not a decision for plaintiffs to make.  As already shown, under accepted principles of deference, the Court must only ask whether the agency's construction of its regulations is precluded by their text or beyond the authority granted by Congress.  *See supra*, Part II.  Plaintiffs' discussion of the policy merits of the FDA's construction thus proceeds under the wrong standard from start to finish.  What is more, their entire discussion is infected by a fundamental misunderstanding of the preemptive conflict at issue here.

Plaintiffs contend that preemption of these cases would be inconsistent with the FDA's "changes being effected" ("CBE") regulations allowing manufacturers to supplement warnings in light of "newly discovered risks."  (Pls.' Br. at 52-53 (citing 21 C.F.R. § 314.70(c)(6)(iii)).)  But the conflict at issue here has nothing to do with the CBE regulations – plaintiffs' claims in

19

these cases do **not** assert a failure to warn of risks under review by the FDA during the CBE

procedures.  Rather, plaintiffs' claims arise entirely out of Vioxx use that occurred **after** the FDA

reviewed the VIGOR study data (and all other data available at the time), **after** the FDA

approved the VIGOR label, and **before** either Merck or the FDA became aware of the results of

the APPROVe study or other information that would warrant further label changes.  In other

words, these cases are about the extent of Merck's disclosure about a risk known to, reviewed,

and analyzed by the FDA.  The explicit allegations are that in light of the VIGOR data it

reviewed, the FDA should have required a stronger label warning.  That is a type of claim that,

the FDA has determined, conflicts directly with the regulatory objectives of the agency's label

approval process.  *See supra* at 6-7.[10]  Thus the FDA's CBE regulations are irrelevant to the

preemptive conflict created by plaintiffs' claims.[11]

---

[10]     The nature of the claims asserted also distinguishes the Fifth Circuit's decisions in *Osburn v. Anchor Labs., Inc.*, 825 F.2d 908 (5th Cir. 1987), and *Hurley v. Lederle Labs.*, 863 F.2d 1173 (5th Cir. 1988).  As made perfectly clear in the lengthy block quote excerpted in plaintiffs' brief (Pls.' Br. at 17-18), *Osburn* merely held that FDA regulations did not preempt a state-law claim based on a failure to disclose a **newly discovered** risk.  825 F.2d at 912-13.  As explained in the text, that holding is irrelevant to the post-VIGOR label claims at issue here.  Likewise, *Hurley* held only that the FDCA itself did not occupy the entire field of vaccine regulation, also a point not in dispute here.  863 F.2d at 1176-77.

     The preemption opinion in *McNellis v. Pfizer, Inc.*, Civil. No. 05-1268 (E.D.N.J.), provided by plaintiffs as supplemental authority – is inapposite for the same reason.  The state-law claim in that case asserts that Pfizer was required to include an "enhanced warning" based on information allegedly discovered after the FDA approved the label.  *Id.* at 4-5.  The court held that preemption of such a claim would conflict with the FDA's CBE regulations, which the court interpreted as allowing a drug label "to be enhanced as soon as new evidence of a serious hazard exists," even prior to FDA approval of the enhanced warning.  *Id.* at 15.  The merits of that holding are not before the Court in the instant cases, which – as explained – are based on data the FDA did review as opposed to "new evidence" of risk discovered after approval of the label.

[11]     Plaintiffs also half-heartedly suggest that the FDA's preemption determination cannot be squared with the FDA's enforcement authority, but that suggestion makes no sense.  Plaintiffs contend that, absent the looming specter of tort liability, the FDA cannot meaningfully control the content of drug labels because its own enforcement power is limited to withdrawing approval of the drug, which plaintiffs say the FDA has rarely exercised.  (Pls.' Br. at 23 & n.20.)  But as explained above, *supra* at 6, the threat of tort liability is **still available** for drugs the FDA deems misbranded – claims that nobody contends are preempted – and thus the FDA's withdrawal of approval has instantaneous tort consequences for continued marketing of such a drug.  Because the mere **threat** of withdrawal necessarily gives the FDA leverage to obtain whatever labeling changes it deems necessary, it is no surprise that the agency has not often been forced to actually invoke that authority.

834025v.1

Plaintiffs also attack the FDA's policy decision squarely on the merits and contend that there is simply no problem of overwarning and confusion that would justify preemption of claims requiring disclosures not compelled by the FDA.  (Pls.' Br. at 63-66.)  Plaintiffs' primary support for this assertion – that state-law claims do not require the disclosure of "false" warnings (*id.* at 64) – completely misses the point.  As the FDA has explained, lay juries lack the scientific expertise to decide when disclosure of particular information is warranted, and *post hoc* assessments of risk in an individual case where the risk appears to have materialized are especially likely to result in a finding of liability that is not justified by a broader assessment of benefit and risk.  71 Fed. Reg. at 3935.[12]  Thus, the FDA determined, the threat of tort liability for failure to include information not required by the FDA encourages manufacturers to employ labels that, while not necessarily "false," are nevertheless bloated with information and thus are confusing, unhelpful, and affirmatively counterproductive to overall public health.

Plaintiffs cite nothing to show that the FDA's concerns are so plainly mistaken that they cannot support this policy decision within the scope of the agency's authority.  To the contrary, as Merck's opening brief noted, many courts and expert commentators have identified the same policy problem.  (Def.'s Br. at 19.)  Indeed, the U.S. Supreme Court itself acknowledged the salience of such concerns in finding that state-law claims alleging acts of "fraud on the FDA" are preempted:

> [F]raud-on-the-FDA claims would also cause applicants to fear that their
> disclosures to the FDA, although deemed appropriate by the Agency, will later be
> judged insufficient in state court.  Applicants would then have an incentive to

---

[12]     In the broader assessment of risks and benefits conducted by the FDA, the agency considers data relevant not only to the drug at issue but also alternative therapies.  Changing a drug's label can drive physicians and patients to alternative therapies that may be less effective, more risky, or both.  But a jury considering the adequacy of a drug's label is not asked to examine the risks and benefits of other drugs or alternative therapies and to assess how labeling for the drug at issue would have affected usage of alternative drugs or therapies.  Only the FDA is in a position to make assessments across classes and therapies and evaluate the impact of label changes on overall public health.  *See* 71 Fed. Reg. at 3935.

> submit a deluge of information that the Agency neither wants nor needs, resulting
> in additional burdens on the FDA's evaluation of an application. As a result, the
> comparatively speedy § 510(k) process could encounter delays, which would, in
> turn, impede competition among predicate devices and delay health care
> professionals' ability to prescribe appropriate off-label uses.

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 (2001). A recent decision finding a

state-law failure-to-warn claim preempted by the FDA's labeling regulations emphasized similar

concerns:

> Allowing each state to require different standards for drug labeling promotes
> confusion not only for the manufacturers but also the consumers. To usurp the
> FDA's regulation in this area offers the potential for far more harm than benefit to
> patients. A manufacturer would find itself in a position where every known or
> possible consequence of ingesting its product would have to be disclosed even in
> the light of a paucity of valid scientific testing to support the disclosure. Patients
> would possibly be denied the benefits of a useful drug because of
> contraindications that were speculative or remote. In the end analysis, uniformity
> as to warnings promotes confidence in the safety and efficacy of drugs for which
> Congress has mandated that the FDA is to have exclusive jurisdiction.

*Ackermann v. Wyeth Pharms.*, 2006 WL 2591078, at *7 (E.D. Tex. 2006); *see also Brooks v.*

*Howmedica, Inc.*, 273 F.3d 785, 797 (8th Cir. 2001) ("It would be difficult for a jury focused on

a single case to take into account 'the cumulative, systemic effects' of a series of verdicts. In

contrast, the FDA possesses a broader perspective. Regulation by the FDA allows the agency to

craft labels that maximize safety and effectiveness." (citation omitted)); *Bextra*, 2006 WL

2374742, at *9 ("The FDA is in a better position than the Court to determine whether state laws

that encourage manufacturers to propose defensive labels upset the FDA's careful balance of

statutory objectives."). Even if one ultimately disagrees with the combined wisdom of all these

authorities, and thus concludes that allowing tort claims requiring additional labeling information

reflects a sounder approach to the nation's drug labeling policies,[13] it is impossible to conclude

---

[13]     In contrast to the many courts and academic authorities Merck cites as acknowledging the risks of
overwarning, plaintiffs rely heavily on two "commentators" as agreeing that preemption is contrary to the public
interest (*see* Pls.' Br. at 24, 58, 70 (citing and quoting Jonathan V. O'Steen & Van O'Steen, *The FDA Defense:*

that the contrary view is simply unreasonable and therefore an impermissible basis for agency

action. *Cf. de la Cuesta*, 458 U.S. at 169-70 ("Admittedly, the wisdom of the Board's policy

decision is not uncontroverted.  But neither is it arbitrary or capricious." (footnote omitted)).[14]

Accordingly, the FDA's preemption determination must be respected and enforced.

## V.    PLAINTIFFS' CLAIMS ARE RIPE FOR SUMMARY JUDGMENT.

Finally, plaintiffs suggest that even if the FDA's preemption determination is permissible

and subject to deference, their claims are not ripe for summary judgment because they need

additional discovery into Merck's communications with the FDA prior to approval of the

VIGOR label.  (Pls.' Br. at 15 n.14.)  This argument too is meritless.

Plaintiffs' assertion that Merck's preemption-based motion for summary judgment

created a need for additional discovery makes no sense:  plaintiffs are already fully aware of the

data and information the FDA considered in approving the post-VIGOR label; they simply claim

that the data and information reviewed by the FDA warranted additional disclosures as a matter

of state law.  If their state-law claims were actually based on other statements made to the FDA

prior to approval of the VIGOR label, they would have had every incentive and opportunity to

pursue such discovery long before the submission of Merck's motion.  Particularly given that

plaintiffs have already received full discovery of Merck's written communications with the

agency (they do not claim otherwise), they cannot now assert a vague need for additional,

---

*Vioxx® and the Argument Against Federal Preemption of State Claims for Injuries Resulting from Defective Drugs*, 48 Ariz. L. Rev. 67 (2006))).  These supposed "commentators," however, are actually personal injury lawyers whose firm website explicitly advertises its connection to the PSC in this case.  *See* www.vanosteen.com (noting that a member of the PSC "is working with [their firm] to assist a number of seriously injured Vioxx users").

[14]     The Institute of Medicine report provided by the plaintiffs as supplemental authority does not change this analysis.  The report offers a critique of various FDA processes, but it is not a legal document, and thus does not purport to address the scope of the agency's broad authority under the statute or suggest that the FDA's labeling regulations do not displace state-law claims of the type at issue in this case.  The merits of the report's general conclusion that the FDA's regulatory authority and recourses should be enhanced even further is a matter to be debated by the policymaking branches of the Government.  It is not relevant to the legal question at issue here, *viz.*, whether the FDA's judgment that its regulations preempt claims challenging approved labels in the absence of new evidence of risk is a judgment within the scope of the agency's broad authority under the statute.

irrelevant depositions to justify postponing consideration of this motion.  *See Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 137 (5th Cir. 1987) ("The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly where, as here, ample time and opportunities for discovery have already lapsed.").[15]

In short, plaintiffs' professed interest in Merck's communications with the FDA is irrelevant to their actual claims and irrelevant to the preemption analysis.  There are very few facts actually material to this motion, and they are not disputed:  the FDA was presented with the VIGOR data, its scientists reviewed the data thoroughly, and the FDA ultimately approved a new label that included additional information based on that data.  (*See* Pls.' Br. at 6-11.)[16]  Plaintiffs' state-law claims assert that the post-VIGOR label approved by the FDA should have included still more information based on the VIGOR data.  (*Id.* at 12.)[17]  Allowing such claims to proceed

---

[15]     To the extent plaintiffs are now asserting a need for such discovery to prove that Merck defrauded the FDA, such a claim would in any event be preempted under *Buckman*, which holds that claims of fraud on the FDA conflict with, and are therefore preempted by, the FDCA.  531 U.S. at 353.  The *Buckman* Court explained that in order to achieve the desired and delicate balance of the various goals of the FDCA, Congress "amply empower[ed] the FDA to punish and deter fraud against the Agency." *Id.* at 348.  Permitting state courts to police the same conduct would "skew[]" that balance. *Id.*  Accordingly, the *Buckman* Court held that state-law tort claims resting on proof of fraud on the FDA are preempted – only the FDA has authority to identify and punish asserted fraud against the agency. *Id.*

         Preemption under *Buckman* is not narrowly limited to state-law causes of action for fraud on the FDA, but is implicated whenever a showing of fraud on the FDA would be a prerequisite to recovery under any state-law claim.  *See Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004); *Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1173 (D. Ariz. 2005); *Zammit v. Shire US, Inc.*, 415 F. Supp. 2d 760, 767-68 (E.D. Mich. 2006).  As Judge Breyer recently concluded in an analogous situation:  "Plaintiffs' allegations that Pfizer withheld material cardiovascular risk data from the FDA does not change the preemption analysis.  The law is well established that a claim premised on a drug manufacturer's failure to provide data to the FDA is preempted." *Bextra*, 2006 WL 2374742, at *10.

[16]     While Merck disputes many of the statements and characterizations in plaintiffs' counter-statement of material facts, those disputes are beside the point for present purposes.  The ***material*** facts are undisputed.

[17]     In contrast to the FDA's position in *Perry*, there is no need for further proceedings here to determine precisely what additional warnings plaintiffs believe should have been included in the label. *Cf.* FDA *Perry* Br. at 11 (arguing that summary judgment could not be granted because of "uncertainties" as to nature and timing of the warning plaintiff claims should have been given).  Plaintiffs have made very clear what information they believe was unlawfully omitted from the post-VIGOR label:  it "did not include a CV warning, or specific information on the disparity in CV events in study 090 and ADVANTAGE, or the disparity in CV deaths in all of the Alzheimer trials."  (Pls.' Resp. to Merck's Statement of Material Facts at 31.)  There is no dispute that this information was

24

would directly conflict with the FDA's ultimate, expert policy determination that the post-VIGOR label reflected an appropriate balance of benefit and risk information.  Plaintiffs' claims are therefore preempted and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, and for the reasons previously stated, Merck's motion for summary judgment should be granted.

Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

John H. Beisner
Jonathan D. Hacker
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

---

provided to the FDA, and that the FDA did not require ***any*** of this information to be in the approved label.  The preemption issue is, therefore, clearly presented and ripe for resolution.

834025v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply Memorandum in Support of Merck's Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 10th day of October, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

26

834025v.1