## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx | **MDL DOCKET NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | |
| | Section L |
| THIS DOCUMENT RELATES TO: | |
| Case No. 2:06cv810 | |
| | Judge Fallon |
| CHARLES LARON MASON v. | Mag. Judge Knowles |
| MERCK & CO., INC. | |

### JURY INSTRUCTIONS PROPOSED BY PLAINTIFF
### CHARLES LARON MASON

Plaintiff hereby submits the following proposed jury instructions.

Date:  October 23, 2006                    Respectfully submitted,


_____

Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 14769250)
Rebecca B. King (TBN 24027110)
Holly M. Wheeler (TBN 24006035)
BLIZZARD, MCCARTHY & NABERS, L.L.P.
440 Louisiana, Suite 1710
Houston, Texas 77002
(713) 844-3750
(713) 844-3755 (fax)

**ATTORNEYS FOR PLAINTIFF**
**CHARLES LARON MASON**

| Andy D. Birchfield, Esq. | Christopher Seeger, Esq. |
|---|---|
| P. O. Box 4160 | One William Street |
| 234 Commerce Street | New York, NY 10004 |
| Montgomery, AL 36103-4160 | PH: (212) 584-0700 |
| PH: (800) 898-2034 | FAX: (212) 584-0799 |
| FAX: (334) 954-7555 | |
| Leonard Davis | Russ M. Herman |
| Herman, Herman, Katz & Cotlar, LLP | Herman, Herman, Katz & Cotlar, LLP |
| 820 O'Keefe Avenue | 820 O'Keefe Avenue |
| New Orleans, LA 70013 | New Orleans, LA 70013 |
| PH: (504) 581-4892 | PH: (504) 581-4892 |
| FAX: (504) 561-6024 | FAX: (504) 561-6024 |
| | |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Proposed Jury Instructions has been served on Liaison Counsel Russ Herman and Phillip Wittmann, Shayna S. Cook and Richard Krumholz by U.S. Mail, facsimile and/or e-mail; and e-mail upon all parties by electronically uploading the same to Lexis-Nexis File and Serve Advanced, in accordance with Pretrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of the Court of the Untied States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23rd day of October, 2006.

_____
Holly M. Wheeler

## PROPOSED INSTRUCTION NO. 1

### General Instructions

Members of the Jury:

You have now heard all the evidence in this case as well as the final argument.

It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in this case.

In any jury trial, there are, in effect, two judges. I am one of the judges; the other is you the jury. It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You, as jurors, are the judges of the facts. But in determining what actually happened in this case—that is, in reaching your decision as to the facts—it is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely upon the testimony and other evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and corporations or public entities stand equal before the law and are to be dealt with as equals in the court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that they are particularly concerned that you recall. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case. What the lawyers say is not binding upon you.

Also, during the course of trial, I have occasionally made comments to the lawyers, or asked a question of a witness, or admonished a witness concerning the manner in which he should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the facts in this case. In arriving at your own findings as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

The law of the United States permits the judge to comment on evidence presented during a case. I do not believe that I have made any comments on the evidence in this case. If you could possibly construe any remarks which I have made during the course of this trial, however, as a comment on the evidence, then I instruct you that any such comment on my part is only an expression of my opinion as to the facts, and you, the jury, may disregard such comment or comments entirely since you, as jurors, are the sole judges of the facts in this case.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You may consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating a fact to be proved. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

In deciding this case, you are expected to use your good sense. Give the evidence and the testimony of the witnesses a reasonable and fair interpretation in the light of your knowledge of the natural tendencies of human beings.

In weighing the testimony and in determining the credibility of any witness, you may consider the conduct of the witness, his or her bearing on the witness stand, his or her personal feelings as demonstrated by his or her testimony and his or her actions, any interest he or she may have in the outcome of the case, any prejudice or bias he or she may have shown, and any partiality he or she may have demonstrated.

If a witness is shown to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony on other matters and you may distrust all of the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field may be called as an expert witness and is permitted to state his opinion on those technical matters. Such witnesses have testified in this case. You are not, however, required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has economic, philosophical, or any other interest in the outcome of the case.

Certain testimony has been presented to you through a video deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers were presented by video to you. This deposition testimony is entitled to the same consideration, is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

During the course of trial, you will have heard objections to evidence. Sometimes these have been argued out of the hearing of the jury.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against or show any prejudice against a lawyer or his client because of the making of an objection.

Upon allowing testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, you, the jury, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer the question.

During the course of trial, I have occasionally asked a question of a witness in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the facts to which my question or questions may have related. Remember at all times, you, as jurors, are the sole judges of the facts.

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

This lawsuit arises out of Charles Mason's use of Vioxx. Merck manufactured Vioxx. The Plaintiff, Charles Mason, contends that he suffered a heart attack as a result of his use of Vioxx. The Plaintiff seeks compensatory damages proximately caused by his injury. He seeks recovery under any of several separate theories of recovery.

First, the Plaintiff claims that Merck was negligent in failing to warn Karen Olson-Fields, the Certified Nurse Practitioner (CNP) who prescribed him Vioxx to Charles Mason, that Vioxx could cause heart attacks in some patients. Second, the Plaintiff alleges that, regardless of whether Merck was negligent, Merck should be held strictly liable because Merck placed Vioxx on the market with inadequate warnings, making it unreasonably dangerous to consumers. Third, the Plaintiff alleges that Merck is liable for his heart attack and resulting injuries because Merck was negligent in designing Vioxx. Fourth, the Plaintiff alleges that Merck violated Utah law by its use deceptive acts or practices in connection with the sale of Vioxx. Fifth, the Plaintiff alleges that Merck is liable for fraudulent misrepresentation and concealment because Merck made false representations regarding, and knowingly failed to disclose, known risks associated with Vioxx to CNP Olson-Fields.

Merck contends that the use of Vioxx at Mr. Mason's dose level and duration of use does not cause an increased risk of thrombotic cardiovascular events such as myocardial infarction. In particular, Merck alleges that Vioxx did not cause Charles Mason's myocardial infarction. Instead, it contends that his injuries were caused by his independent health risk factors. Further, Merck contends that Mr. Mason has recovered without any residual injury from his cardiac event.

Merck further contends that its warnings and instruction for Vioxx were adequate and complied with the rules of the Food and Drug Administration. Merck also asserts that it acted reasonably and that it disclosed to the FDA all relevant Vioxx safety data and risk information in a timely and responsible manner. Merck further contends that that Mr. Masons prescriber did not detrimentally rely upon the alleged inadequate warnings for Vioxx in prescribing Vioxx to Mr. Mason. Finally, Merck contends that Mr. Mason's alleged injuries were the proximate result of his actions and/or those of Nurse Olson-Fields.

Although all of the Plaintiff's claims for recovery have been tried together, each is separate from the other, and each party is entitled to have you separately consider each claim. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you

would have if each claim had been tried before you separately. The Plaintiff is not required to prove all of these theories in order to recover. Proof of his claim under any of the theories would enable you to find that he is entitled to a verdict in his favor.

The mere fact that the Plaintiff may have been injured, standing alone, does not permit you, the jury, to draw any inference that such injuries were caused by Merck.

**References:** Jury Charges, *Plunkett v. Merck*, 05-4046; *Barnett v. Merck*, 06-0485; *Smith v. Merck*, 05-4379; FCPJI 2.14; 3.1; UTAH CODE ANN. § 78-15-6; *Slisze v. Stanley-Bostitch*, 979 P.2d 317 (Utah 1999) (a party may simultaneously bring a negligence and a strict liability claim); *Keane by & Through Keane v. Lederle Lab.*, 1994 U.S. Dist. LEXIS 4305 (S.D. Ala. 1994) (interpreting Utah law) (Comment k does not bar liability for negligence if the manufacturer knew or should have known that the product was defectively designed)

## PROPOSED INSTRUCTION NO. 2

### Burden of Proof

The burden of proof is on the plaintiff in a civil action, such as this one. When I tell you that a party has the burden of proof or that a party must prove something by a "preponderance of the evidence," I mean that the party must persuade you, by the evidence presented in court, that the fact is more likely to be true than not true.

You may have heard that in a criminal case proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case. In a civil case such as this one, a different level of proof applies: proof by a preponderance of the evidence.

Another way of saying this is proof by the greater weight of the evidence, however slight. Weighing the evidence does not mean counting the number of witnesses nor the amount of testimony. Rather, it means evaluating the persuasive character of the evidence. In weighing the evidence, you should consider all of the evidence that applies to a fact, no matter which party presented it. The weight to be given to each piece of evidence is for you to decide.

After weighing all of the evidence, if you decide that a fact is more likely true than not, then you must find that the fact has been proved. On the other hand, if you decide that the evidence regarding a fact is evenly balanced, then you must find that the fact has not been proved. I will instruct you in more detail about the specific elements that must be proved by a preponderance of the evidence.

Some facts in this case must be proved by a higher level of proof called "clear and convincing evidence." When I tell you that a party must prove something by clear and convincing evidence, I mean that the party must persuade you, by the evidence presented in court, to the point that there remains no serious or substantial doubt as to the truth of the fact.

Proof by clear and convincing evidence requires a greater degree of persuasion than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt. I will tell you specifically which of the facts must be proved by clear and convincing evidence.

**References:**  Model Utah Jury Instructions (MUJI) 2.16; 2.18; 2.19; *Johns v. Shulsen*, 717 P.2d 1336 (Utah 1986); *Morris v. Farmers Home Mut. Ins. Co.*, 500 P.2d 505 (Utah 1972); *Alvarado v. Tucker*, 268 P.2d 986 (Utah 1954); *Hansen v. Hansen*, 958 P.2d 931 (Utah App. 1998); *Jardine v. Archibald*, 279 P.2d 454 (Utah 1955); *Greener v. Greener*, 212 P.2d 194 (Utah 1949); *Kirchgestner v. Denver & R.G.W.R. Co.*, 233 P.2d 699 (Utah 1951)

## PROPOSED INSTRUCTION NO. 3

### Causation

In order for the Plaintiff to prevail on either of his claims, he must establish that Vioxx was a proximate cause of his alleged injuries. To prove his negligent design and failure to warn claims, the Plaintiff must prove proximate causation by a preponderance of the evidence. To prove his deceptive trade practices and fraud claims, the Plaintiff must prove proximate causation by clear and convincing evidence.

Proximate cause means the efficient cause or direct cause. The law defines proximate cause as something that produces a natural chain of events which, in the end, bring about the injury. In other words, proximate cause is the cause without which the injury would not have occurred. Proximate cause requires proof of both causation in fact and legal cause.

Causation in fact is proved by establishing that the Plaintiff's injury would not have occurred "but for" the Defendant's actions. In order to prove cause in fact in this case, the Plaintiff must show to a reasonable degree of medical certainty that Vioxx can cause heart attacks and was a cause of Charles Mason's heart attack.

Legal cause is proved by establishing foreseeability. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of conduct. The law requires only reasonable foresight. It is not necessary for the Plaintiff to demonstrate that the Defendant should have foreseen the particular event which occurred, but merely that the Defendant should have foreseen that its actions would probably cause injury to someone. The Plaintiff proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the Defendant's actions.

Proximate cause does not mean the sole cause. The Defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged injury. However, the Plaintiff must show that it is more likely than not that the conduct of the Defendant was a substantial factor in bringing about the result. Moreover, the Plaintiff must proffer a competent medical expert to testify to a reasonable degree of medical probability that Vioxx was a substantial factor in causing his injuries.

**References:**  Jury Charges, *Plunkett v. Merck*, 05-4046; *Barnett v. Merck*, 06-0485; *Smith v. Merck*, 05-4379

## PROPOSED INSTRUCTION NO. 4

### Learned Intermediary

Under the applicable law, a prescription drug manufacturer only has a duty to warn a "learned intermediary" of the potential risks or dangers inherent in a product.  In this case, Karen Olson-Fields, the Certified Nurse Practitioner (CNP) who prescribed Vioxx to Charles Mason, is the learned intermediary.  The reasoning is that it is the prescribing health care provider who is best situated to weigh the potential risks associated with a prescription drug against the possible benefits of the drug and the unique needs and susceptibilities of each patient.  Although a prescription drug manufacturer's duty to warn of the potential risks of its product is directed only to the prescribing health care provider, a manufacturer will be held directly liable to the patient for breach of the duty to make timely and adequate warnings to the prescribing health care provider of any dangerous side effects produced by its drug of which it knows or has reason to know.

**References:**  *Schaerrer v. Stewart's Plaza Pharm., Inc.*, 79 P.3d 922, 928-929 (Utah 2003); *Barson v. E.R. Squibb & Sons*, 682 P.2d 832, 835 (Utah 1984)

## PROPOSED INSTRUCTION NO. 5

### Negligence

Negligence is the failure to use reasonable care, whether by acting, or by failing to act.  In this case, reasonable care is that degree of care which a reasonably prudent pharmaceutical company would use under like circumstances.  Negligence may consist either in doing something that a reasonably prudent pharmaceutical company would not do under like circumstances or in failing to do something a reasonably prudent pharmaceutical company would do under like circumstances.

Negligence is a legal cause of an injury if it directly and in natural and continuous sequence, produces or contributes substantially to producing such injury, so that it can reasonably be said that, but for the negligence, the injury would not have occurred.  In order to be regarded as a legal cause of an injury, negligence need not be the only cause.  Negligence may be a legal cause of an injury even though it operates in combination with the act of another, some natural cause or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing the alleged injury.  Negligence may also be a legal cause of an injury even though it operates in combination with the act of another, some natural cause or some other cause occurring after the negligence occurs if such other cause was itself reasonably foreseeable and the negligence contributes substantially to producing such injury, or the resulting injury was a reasonably foreseeable consequence of the negligence and the negligence contributes substantially to producing it.  Furthermore, a defendant may still be liable when the defendant's negligence operates upon a concealed physical condition, such as a latent disease, to produce consequences which the defendant could not reasonably anticipate.

In order for an injury to be a reasonably foreseeable consequence of negligence or a product defect, it is not necessary that the exact nature and extent of the injuries or harm or the precise manner in which the injuries or harm occur be foreseen; rather, in order for liability to arise, the likelihood that some injury or harm will result based on negligence is enough.

**References:**  MUJI 3.13; 3.14; 3.15; *Steffensen v. Smith's Management Corp.*, 862 P.2d 1342, 1346 (Utah 1993); *Dwiggins v. Morgan Jewelers*, 811 P.2d 182 (Utah 1991); *Mitchell v. Pearson Enterprises*, 697 P.2d 240 (Utah 1985); *Barson v. E.R. Squibb & Sons*, 682 P.2d 832, 835 (Utah 1984); *Rees v. Albertson's, Inc.*, 587 P.2d 130 (Utah 1978); *Meese v. BYU*, 639 P.2d 720 (Utah 1981)

## PROPOSED INSTRUCTION NO. 6

### Failure to Warn

The Plaintiff's failure to warn claim arises out of strict liability and negligence.  I will now discuss with you the law governing the Plaintiff's strict liability for failure to warn claim.

Under the applicable law, a drug manufacturer may be held "strictly liable" for any physical harm caused by its failure to provide adequate warnings regarding the use of its product.  Where a manufacturer knows or should know of a risk associated with its product, the absence or inadequacy of warnings renders that product "unreasonably dangerous," subjecting the manufacturer to strict liability.  Under the applicable law, "unreasonably dangerous" means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.

Generally speaking, the doctrine of "strict liability" is a rule under which liability is imposed without regard to the exercise of reasonable care (as required in a negligence claim), on one who sells a product in a defective condition unreasonably dangerous to the consumer, for physical harm caused to the consumer.

Prescription drugs often cause unwanted side effects despite the fact that they have been carefully designed and properly manufactured.  The law deems such products "unavoidably unsafe," but they are not defective, nor unreasonably dangerous, if they include adequate warnings of potential side effects.  A drug manufacturer has a duty to make timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it knows or has reason to know.  You must determine whether Vioxx was unreasonably dangerous by reason of inadequate warning and, if so, whether the use of Vioxx and the absence of an adequate warning was the proximate cause of Charles Mason's injury.

A warning is inadequate if the manufacturer fails to give a reasonably prudent physician warning of a particular risk that was known or knowable to the manufacturer in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.  The drug manufacturer has a duty to take reasonable precautions to provide an adequate warning that would place prescribing physicians on guard against the harmful consequences that might result from use of the product.  The duty to warn includes the duty to warn with a degree of intensity that would cause a reasonable prescribing physician to exercise caution commensurate with the potential danger.

In determining whether a drug manufacturer has breached its duty to make timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs, and the extent to which a manufacturer is required to know of dangers inherent in its drug, the drug manufacturer is held to be an expert in its particular field and is under a continuous duty to keep abreast of scientific developments touching upon the manufacturer's product and to notify the medical profession of any additional side effects discovered from its use. The drug manufacturer

is responsible therefore for not only actual knowledge gained from research and adverse reaction reports, but also for constructive knowledge as measured by scientific literature and other available means of communication.

In order to prove his failure to warn claim, the Plaintiff must not only show that Merck's warnings regarding Vioxx were inadequate, but also that such inadequacy affected the decision of his prescribing nurse practitioner to prescribe or not to prescribe Vioxx. In other words, that Plaintiff must show that his nurse practitioner would not have prescribed Vioxx to him is Merck had provided adequate warning. To satisfy the burden of establishing that a failure to warn or an inadequate warning was a proximate cause of injury, the Plaintiff may introduce either objective evidence of how a reasonable physician or nurse practitioner would have responded to an adequate warning, or subjective evidence of a reasonable physician or nurse practitioner would have responded.

The manufacturer has no duty to warn a health care provider who already has independent knowledge of the risks associated with the prescription drug. Moreover, if the prescriber unreasonably ignores the warning, or fails to exercise ordinary care, the manufacturer is not liable for any injuries caused by the patient's use of the product. An adequate warning to the profession may be eroded or even nullified by over-promotion of the drug through a vigorous sales program which may have the effect of persuading prescribing health care providers to disregard the warnings given.

I will now discuss with you the law governing the Plaintiff's negligence claim for failure to warn. The Plaintiff asserts that Merck was negligent in failing to adequately warn Certified Nurse Practitioner Olson-Fields of a dangerous condition in Vioxx and that such negligence was the proximate cause of Charles Mason's injury.

To establish Merck's liability for negligent failure to warn, the Plaintiff must prove by a preponderance of the evidence the following three elements:

(1)   Merck knew or should have known that Vioxx was or was likely to be unreasonably dangerous;

(2)   Merck failed to exercise reasonable care to adequately warn Certified Nurse Practitioner Olson-Fields of a known or reasonably scientifically or medically knowable risk associated with Vioxx;

(3)   Merck's negligence was the proximate cause of the Plaintiff's injuries.

If the greater weight of the evidence does not support the claim of the Plaintiff, your verdict should be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then your verdict should be for the Plaintiff.

**References:**  Jury Charges, *Plunkett v. Merck*, 05-4046; *Barnett v. Merck*, 06-0485; *Smith v. Merck*, 05-4379; MUJI 12.7, 12.13, 12.14; UTAH CODE ANN. § 78-15-6(2); Restatement (Second) of Torts § 402A & cmt. j (1965); *Grundberg v. Upjohn Co.*, 813 P.2d 89, 97 (Utah 1991); *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 835-837 (Utah 1984); *House v. Armour of Am.*, 929 P.2d 340, 343, 346 (Utah 1996); *Schaerrer v. Stewart's Plaza Pharm., Inc.*,

79 P.3d 922, 928-929 (Utah 2003); *Slisze v. Stanley-Bostitch,* 979 P.2d 317, 321 (Utah 1999); *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir.); *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 69-70 (5th Cir. 1988).

## PROPOSED INSTRUCTION NO. 7

### Negligent Design

In this case Plaintiff asserts that Merck was negligent in designing Vioxx in that Merck subjected users to increased risks of heart attacks, strokes and other illnesses. In addition, the Plaintiff asserts that Merck failed to perform adequate testing, study or analysis of Vioxx and failed to act properly on adverse reports related to Vioxx.

Under the applicable law, the Plaintiff must prove by a preponderance of the evidence that Vioxx, as designed, was in a defective condition at the time it was sold by Merck and the defective condition was unreasonably dangerous to the user or consumer. As the term is used in this instruction, a product is "unreasonably dangerous" when it is dangerous to an extent beyond that which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in the Plaintiff's community, considering the product's characteristics, propensities, risks, dangers and uses, together with any actual knowledge, training, or experience possessed by the Plaintiff.

Drug manufacturers have a duty to exercise reasonable care in the design, manufacture, testing and inspection of a drug so that the drug may be safely used in a manner and for a purpose for which it was made. The Plaintiff must also prove by a preponderance of the evidence that Merck breached its duty to exercise reasonable care to adopt a safe design. This burden is met by showing that Merck knew or should have known of the defective condition and failed to take reasonable steps to correct it.

The Plaintiff must also prove by a preponderance of the evidence that Merck's negligence proximately caused of the Plaintiff's injury.

If the greater weight of the evidence does not support the claim of the Plaintiff, your verdict should be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then your verdict should be for the Plaintiff.

**Resources**: MUJI 12.16; Utah Code Ann. § 78-15-6; *Bishop v. GenTec, Inc.*, 48 P.3d 218, 225-226 (Utah 2002); *Barson v. E.R. Squibb & Sons*, 682 P.2d 832, 835 (Utah 1984); *Grundberg v. Upjohn Co.*, 813 P.2d 89, 99 (Utah 1991); *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1283 (10th Cir. 2003) (applying the definition of "defective" as used in strict liability claims to negligence claim)

## PROPOSED INSTRUCTION NO. 8

### FDA Approval

Compliance with an FDA regulation may establish that the manufacturer met the appropriate minimum standards of due care, but compliance does not necessarily absolve the manufacturer of all liability, nor does it establish that the warnings at issue were adequate. Even if you find that the Defendant Merck met all government regulations and requirements, such compliance is not a defense if a reasonable and prudent manufacturer would have taken added precautions or if you find that Merck failed to appraise treating physicians of risks that became known or should have became known after the FDA approved the Vioxx label. In other words, you are instructed that even if you find that Defendant Merck met all government regulations and requirements, which are minimum standards, such compliance is not a defense if a reasonable and prudent manufacturer would have taken added precautions.

FDA certification or approval of Vioxx is evidence, but not conclusive evidence, of a drug manufacturer's reasonableness; therefore, you may assign FDA approval whatever weight you believe it deserves. In evaluating the weight, if any, to be given FDA approval, you may but need not consider whether the FDA had an opportunity to consider and evaluate the information about which Charles Mason contends Merck failed to warn CNP Olson-Fields.

**References:** Jury Charges, *Barnett v. Merck*, 06-0485; *Smith v. Merck*, 05-4379; *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1446 (10th Cir. 1987) (affirming jury instruction); *Graham v. Wyeth Laboratories, Div. of American Home Products Corp.*, 666 F. Supp. 1483 (D. Kan. 1987) (approving instruction); *Hoppe v. G.D. Searle & Co.*, 779 F. Supp. 1413, 1416 (S.D. N.Y. 1991) (court gave limiting instruction on effect of FDA approval).

**PROPOSED INSTRUCTION NO. 9**

**Deceptive Trade Practices**

I will now discuss with you the law governing the Plaintiff's deceptive trade practices claim. The Utah Consumer Sales Practices Act (the Act) prohibits deceptive acts or practices by a supplier in connection with a consumer transaction.

The Act defines "supplier" as a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer.

The Act defines "consumer transaction," as a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance), to a person for primarily personal, family, or household purposes or a solicitation or offer by a supplier with respect to any of these transfers or dispositions.

A deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction.

In order to succeed on his deceptive trade practices claim, the Plaintiff must prove by clear and convincing evidence that:

    (1)    Merck, as a supplier, knowingly or intentionally:

        (a)    indicated that Vioxx has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; *or*

        (b)    indicated that Vioxx is of a particular standard, quality, grade, style, or model, if it is not; and

    (2)    Merck's deceptive acts or practices were the proximate cause of Plaintiff's loss.

**References:**  Utah Code Ann. §§ 13-11-2, 13-11-3, 13-11-4(1)-(2); § 13-11-3(6); *Rawson v. Conover*, 20 P.3d 876, 883-884 (Utah 2001); *State by Division of Consumer Protection v. GAF Corp.*, 760 P.2d 310, 313 (Utah 1988); *Iadanza v. Mather*, 820 F. Supp. 1371, 1376 (C.D. Utah 1993)

## PROPOSED INSTRUCTION NO. 10

### Fraudulent Misrepresentation/Concealment

I will now discuss with you the law governing the Plaintiff's fraud claims. Unlike the Plaintiff's strict liability and negligence claims, which must only be proven by a preponderance of the evidence, the Plaintiff must prove each element of his fraud claims by clear and convincing evidence.

In order to succeed on his claim of fraudulent misrepresentation, the Plaintiff must prove by clear and convincing evidence that:

(1)     Merck made a representation;

(2)     Concerning the cardiovascular safety of Vioxx;

(3)     Which was false;

(4)     Which Merck knew to be false or made recklessly knowing that it had insufficient knowledge upon which to base such representation;

(5)     For the purpose of inducing Certified Nurse Practitioner Olson-Fields to act upon it by prescribing Vioxx to Charles Mason;

(6)     That CNP Olson-Fields acted reasonably and in ignorance of its falsity; and

(7)     That CNP Olson-Fields relied upon the representation and Charles Mason was thereby injured and damaged.

In this case, Merck had a special duty to know the truth of its representation regarding cardiovascular safety of Vioxx.

Fraud may also be committed by the suppression of the truth. Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is the party's legal duty to communicate to the other party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. The principle is basic in the law of fraud as it relates to nondisclosure that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent.

In order to succeed on his claim of fraudulent concealment, the Plaintiff must prove by clear and convincing evidence that:

(1)     The nondisclosed information about the cardiovascular risk associated with Vioxx was material;

- 16 -

(2)     The nondisclosed information about the cardiovascular risk associated with Vioxx was known to Merck; and

(3)     Merck did not disclose the information about the risks associated with Vioxx to Certified Nurse Practitioner Olson-Fields.

**References:** *Mitchell v. Christensen*, 31 P.3d 572, 574 (Utah 2001); *Educators Mut. Ins. Ass'n v. Allied Property & Cas. Ins. Co.*, 890 P.2d 1029, 1032 (Utah 1995); *First Sec. Bank N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1328 (Utah 1990); *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980); *Elder v. Clawson*, 384 P.2d 802, 804-05 (Utah 1963); *Larsen v. Exclusive Cars, Inc.*, 97 P.3d 714, 716 (Utah Ct. App. 2004); *Schuhman v. Green River Motel*, 835 P.2d 992, 994 (Utah Ct. App. 1992)

## PROPOSED INSTRUCTION NO. 11

### Withdrawal of Vioxx From the Market

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004. Merck contends that the withdrawal was voluntary. The Plaintiff contends that the withdrawal was not voluntary.

If you find that the withdrawal of Vioxx from the market was voluntary, you may not consider the withdrawal as evidence that Vioxx was negligently designed. You also may not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause heart attacks in certain people. You may, however, consider this withdrawal for other purposes, such as proving ownership, control or feasibility of precautionary measures.

On the other hand, if you find that the withdrawal was not voluntary, you may consider the withdrawal as evidence that Vioxx was negligently designed. You may also consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx, or as evidence that Vioxx can cause heart attacks in certain people.

## PROPOSED INSTRUCTION NO. 12

### Susceptibility to Injury

A person who may be more susceptible to injury than someone else is still entitled to recover the full amount of damages that were caused by Merck's fault. In other words, the amount of damages should not be reduced merely because Charles Mason may be more susceptible to injury than someone else.

**References:**  MUJI 27.6; *Tingey v. Christensen,* 987 P.2d 588 (Utah 1999); *Brunson v. Strong,* 412 P.2d 451 (1966); *Biswell v. Duncan,* 742 P.2d 80 (Utah App. 1987)

## PROPOSED INSTRUCTION NO. 13

### Damages

I will now instruct you about damages. "Damages" in this compensatory phase of the case is the term in dollars and cents which expresses the injuries sustained by the Plaintiff. If the Plaintiff has proven one or more of his claims against Merck, you must determine the amount of compensatory damages to which the Plaintiff is entitled. You should not interpret the fact that I give you instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether Merck is liable. I am instructing you on damages only so that you will have guidance in the event that you decide Merck is liable and the Plaintiff is entitled to recover money from Merck.

The Plaintiff claims that he has suffered a heart attack as a result of his use of Vioxx. He is entitled to recover compensatory damages if he has proven either of the above theories of recovery. If you find that the Plaintiff has proven one or more of his claims, then you must determine the amount of compensatory damages to which he is entitled. Compensatory damages are not allowed as a punishment against a party. Whether or not punishment is warranted in this case may be determined at a later time, for now you must only consider the issue of compensatory damages.

If you decide that Merck's fault caused Charles Mason's harm, you must decide how much money will fairly and adequately compensate Charles Mason for that harm. There are two kinds of compensatory damages: economic and noneconomic.

Economic damages are the amount of money that will fairly and adequately compensate Charles Mason for measurable losses of money or property caused by Merck's fault. Noneconomic damages are the amount of money that will fairly and adequately compensate Charles Mason for losses other than economic losses. Noneconomic damages are not capable of being exactly measured, and there is no fixed rule, standard or formula for them. Noneconomic damage must still be awarded even though they may be difficult to compute. It is your duty to make this determination with calm and reasonable judgment. The law does not require the testimony of any witness to establish the amount of noneconomic damages.

In awarding noneconomic damages, among the things that you may consider are: (1) the nature and extent of injuries; (2) the pain and suffering, both mental and physical; (3) the extent to which Charles Mason has been prevented from pursuing his ordinary affairs; (4) the extent to which Charles Mason has been limited in the enjoyment of life; and (5) whether the consequences of these injuries are likely to continue and for how long.

While you may not award damages based upon speculation, the law requires only that the evidence provide a reasonable basis for assessing the damages but does not require a mathematical certainty.

When one has been injured the healing process usually takes some time and there is often some uncertainty as to what the future may bring. There is thus a practical difficulty in assessing future damages. However, this should not entirely defeat a claim for compensation which is justly due,

nor should the settlement have to abide indefinitely. Of course, no award of damages should be based on mere speculation or conjecture. There must be a firm foundation for any award by proof that is at least more probable than not that the damage will be suffered. For this reason, you should not assess future damages on probability, but only such damages as you believe from the preponderance of the evidence the Plaintiff will with reasonable certainty incur in the future.

I will now instruct you on particular items of economic and noneconomic damages presented in this case.

Economic damages the following:

(1)    Reasonable and necessary expenses for medical care and other related expenses incurred in the past and those that will probably be incurred in the future; and

(2)    Past and future lost earnings, including lost benefits, and lost earning capacity.

Calculate past lost earnings from the date of the harm until the trial.  Calculate future lost earnings from the date of trial forward.

Lost earning capacity is not the same as lost earnings.  Lost earning capacity means the lost potential to earn income. In determining lost earning capacity, you should consider:

(a) Charles Mason's actual earnings; (b) his work before and after his heart attack; (c) what he was capable of earning had he not been injured; and (d) any other facts that relate to Charles Mason's employment.

Noneconomic damages include the following:

(1)    Mental pain and suffering Plaintiff incurred in the past and will with reasonable certainty incur in the future; and

(2)    Physical pain and suffering Plaintiff incurred in the past and will with reasonable certainty incur in the future.

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of the Plaintiff.  The Court will enter a judgment based on your verdict and, if you find that the Plaintiff was negligent in any degree, the Court in entering judgment will reduce the total amount of damages by the percentage of negligence which you find is chargeable to the Plaintiff or third parties.

You shall award damages in an amount that fully compensates Charles Mason.  Do not speculate on or consider any other possible sources of benefit Charles Mason may have received. After you have returned your verdict, I will make whatever adjustments may be appropriate.

- 21 -

**References**: Jury Charge, *Smith v. Merck*, 05-4379; MUJI 14.16; 27.1; 27.2, 27.3, 27.4, 27.5; Utah Code Section 78-27-44; *Mahana v. Onyx Acceptance Corp.*, 96 P.3d 893, 901 (Utah 2004); *C.S. v. Nielson*, 767 P.2d 504 (Utah 1988); *Judd v. Rowley's Cherry Hill Orchards, Inc.*, 611 P.2d 1216 (Utah 1980) ("The pain and suffering for which damages are recoverable in a personal injury action include not only physical pain but also mental pain or anguish, that is, the mental reaction to that pain and to the possible consequences of the physical injury. Included in mental pain and suffering is the diminished enjoyment of life, as well as the humiliation and embarrassment resulting from permanent scars and disability"); *Cohn v. J. C. Penney Co.*, 537 P.2d 306 (Utah 1975); *Robinson v. Hreinson*, 409 P.2d 121, 125 (Utah 1965); *Picino v. Utah-Apex Mining Co.*, 73 P. 900, 902 (Utah 1918); *Dalebout v. Union Pacific R. Co.*, 980 P.2d 1194, 1200 (Utah App. 1999); *Corbett v. Seamons dba Big O Tire*, 904 P.2d 229, 232, n.2 (Utah App. 1995)

## PROPOSED INSTRUCTION NO. 14

### Concluding Instructions

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.