

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE |
| CHARLES L. MASON, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

## PRETRIAL ORDER

The following constitutes the Proposed Pretrial Order to be entered in the above-styled case.

**Trial Date:**            October 30, 2006

**Pretrial Conference Date:**    October 20, 2006

**Trial Attorneys:**

    <u>For the Plaintiff</u>:

    Edward Blizzard (TBN 02495000)
    Scott Nabers (TBN 147692500
    Rebecca Briggs King (TBN 24027110)
    Holly M. Wheeler (TBN 24006035)
    **BLIZZARD, MCCARTHY & NABERS, LLP**
    440 Louisiana, Suite 1710
    Houston, Texas 77002
    Phone: 713-844-3750
    Fax:    713-844-3755

835026v.1

Amy Carter (TBN 24004580)
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Phone: 713-230-2200
Fax:    713-643-6226

For the Defendant:

Philip S. Beck
Tarek Ismail
Shayna S. Cook
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

1. **Parties:**

   Plaintiff is Charles Laron Mason.

   Defendant Merck & Co., Inc. is the manufacturer of Vioxx®, a prescription medication first approved by the United States Food and Drug Administration in 1999 and voluntarily withdrawn from the market in 2004.

2. **Jurisdiction:**

   a.  The jurisdiction of this Court is based diversity of citizenship under 28 U.S.C. § 1332.

   b.  It is stipulated that this claim exceeds $75,000.

   c.  Jurisdiction is uncontested by the parties.

3. **Procedural History and Posture:**

   Plaintiff filed his Complaint on February 16, 2006 in the United States District Court for the Eastern District of Louisiana as part of *In re Vioxx Product Liability Litigation,* MDL No. 1657. Plaintiff asked for a trial by jury on all issues.

   Merck & Co. answered the Complaint on March 21, 2006.

4.     **Pending Motions:**

    a.    Plaintiff's Motions:

       (1)    Plaintiff has filed the following *Daubert* motions:

           A.    Motion to Exclude Argument or Opinion Testimony That an Increased Risk of Heart Attack Exists only After 18 Months of Vioxx Use (Expert Challenge No. 1)
           B.    Motion to Exclude the Opinion Testimony of Nicholas Flavahan, Ph.D. (Expert Challenge No. 2)
           C.    Motion to Exclude the Opinion Testimony of Dr. Janet Arrowsmith-Lowe (Expert Challenge No. 3)
           D.    Motion to Exclude Opinion Testimony that Vioxx® Is the Same as All NSAIDS Regarding Cardiotoxic Effects (Expert Challenge No. 4)
           E.    Motion to Exclude the Opinion Testimony of Donald David, M.D. (Expert Challenge No. 5)
           F.    Motion to Exclude the Opinion Testimony of Michael Rothkopf, M.D. (Expert Challenge No. 6)
           G.    Motion to Exclude the Opinion Testimony of Craig Pratt, M.D. (Expert Challenge No. 7)[*]

       (2)    Plaintiff has filed the following motions in *limine*:

           A.    Miscellaneous Motion to Exclude or, in the Alternative, Motion in Limine and/or Request for Limiting Instructions (Motion in *Limine* No. 1)
           B.    Motion to Exclude or, in the Alternative, Motion in Limine Concerning Evidence or Argument that Merck Employees, Former Employees, or their Family Members Took Vioxx Prior to the Drug's Withdrawal from the Market (Motion in *Limine* No. 2)
           C.    Motion to Exclude or, in the Alternative, Motion in Limine Concerning Evidence or Discussion Concerning Defendant's Alleged Good Reputation and/or "Good Acts" (Motion in *Limine* No. 3)
           D.    Motion to Exclude or, in the Alternative, Motion in Limine Concerning Defendant's Argument that it was Prohibited by FDA Regulations from Making Label Changes without Prior Approval (Motion in *Limine* No. 4)
           E.    Motion to Exclude or, in the Alternative, Motion in Limine Concerning Merck Employees Offering Undisclosed Expert Opinions (Motion in *Limine* No. 5)

---

[*] This motion is moot.

   F. Motion to Exclude or, in the Alternative, Motion in Limine Concerning Annual Deaths Attributable to NSAID Gastropathy (Motion in *Limine* No. 6)

   G. Motion to Exclude or, in the Alternative, Motion in Limine Re: The April 6, 2005 FDA Memorandum (Motion in *Limine* No. 7)

   H. Motion to Preclude Defendant Merck from Referring to Mr. Mason's Left Anterior Descending Coronary Artery as a "Widow-Maker" (Motion in *Limine* No. 8)

   I. Motion to Exclude or, in the Alternative, Motion in Limine and/or Requesting for Limiting Instructions Regarding the Cause of Reta Mason Hurley's Death (Motion in *Limine* No. 9)

   J. Motion to Exclude or, in the Alternative, Motion in Limine Regarding the "Martin Report" (Motion in *Limine* No. 10)

 b. Defendant's Motions:

  (1) Merck has filed the following *Daubert* motions:

   A. Motion to Exclude Testimony of Isaac Wiener, M.D. (Expert Challenge No. 1)[*]

   B. Motion to Exclude Testimony of Benedict R. Lucchesi, M.D., Ph.D., M.S., F.A.H.A. (Expert Challenge No. 2)[*]

   C. Motion to Exclude Testimony of Gary Sander, M.D. (Expert Challenge No. 3)[*]

   D. Motion to Exclude Testimony of Laura Plunkett, Ph.D. (Expert Challenge No. 4)[*]

   E. Motion to Exclude Testimony of Lemuel A. Moye, M.D., PhD. (Expert Challenge No. 5)[*]

   F. Motion to Exclude Testimony of John L. Gueriguian, M.D. (Expert Challenge No. 6)[†]

   G. Motion to Exclude Testimony of Jerry Avorn, M.D. (Expert Challenge No. 7)

   H. Motion to Exclude Testimony of Douglas P. Zipes, M.D. (Expert Challenge No. 8)[*]

   I. Motion to Exclude Opinion Testimony by Plaintiff's Experts that Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture (Expert Challenge No. 9)[*]

   J. Motion to Exclude Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk (Expert Challenge No. 10)

   K. Motion to Exclude Testimony of Cornelia Pechmann, Ph.D. (Expert Challenge No. 11)

---

[*] This motion is moot.
[†] This motion has been deferred.

(2) Merck has filed the following motions in *limine*:

- A. Motion to Preclude Improper Reference to Merck's Defense of Other Vioxx-Related Lawsuits or to the Number of Times Merck Witnesses Have Testified Previously (Motion in *Limine* No. 1)
- B. Motion to Exclude Improper Personal Opinions of David Graham Regarding the Food and Drug Administration (Motion in *Limine* No. 2)
- C. Motion to Exclude Evidence or Argument Pertaining to Dr. Graham's "Excess Events" Calculation (Motion in *Limine* No. 3)[*]
- D. Motion to Exclude Testimony or Argument That Merck: (1) Could or Should Have Unilaterally Changed the Vioxx Label; or (2) "Dragged Its Feet" to Prevent the VIGOR Data from Being Added to the Vioxx Label (Motion in *Limine* No. 4)
- E. Motion to Exclude Evidence or Argument Regarding "All-Cause" Mortality Data From Alzheimer's Disease Clinical Trials (Motion in *Limine* No. 5)[*]
- F. Omnibus Motion for Order Excluding Evidence and Testimony Addressed in Motions Previously Granted by the Court (Motion in *Limine* No. 6)
- G. Omnibus Motion for Order Excluding Evidence and Testimony Raised by Motions Previously Denied by the Court (Motion in *Limine* No. 7)

5. **Plaintiff's Claims:**

For years Charles Mason took regular NSAIDs to treat his chronic back pain. On September 10, 2002, Mr. Mason saw his nurse practitioner, Karen Olson-Fields, for a physical at which time she prescribed Vioxx. Mr. Mason took Vioxx as prescribed for approximately ten and a half months. Mr. Mason suffered a heart attack on July 25, 2003 as a direct and proximate cause of taking Vioxx. His heart attack required immediate cardiac catheterization. The catheterization showed that the left anterior descending coronary artery (LAD) was 90% occluded and the first diagonal coronary artery was 70% occluded. The doctor doing the study noted on his report that there was a thrombus or blood clot at the site of both blockages.

Mr. Mason contends that he has past and future damages. Mr. Mason contends that Vioxx and Merck's actions in designing and marketing Vioxx were substantial contributing factors in causing Mr. Mason's heart attack and associated damages.

Plaintiff contends the following:

- Merck negligently failed to adequately study and test Vioxx for potential cardiovascular risks.

---

[*] This motion is moot.

835026v.1

- Merck failed to adequately warn Mr. Mason and Mr. Mason's health care providers concerning the potential serious cardiovascular risks of Vioxx.

- Merck violated Utah Code Ann. §13-11a-3 by its use of false and misleading misrepresentations or omissions of material fact in connection with the sale of Vioxx. Merck's outrageous conduct was an intentional and willful violation of Utah law and showed complete indifference to or conscious disregard for the safety of users of Vioxx, including Mr. Mason.

- Merck fraudulently misrepresented and/or concealed from the medical community and Mr. Mason known or knowable information regarding the potential cardiovascular risks concerning Vioxx.

Based on evidence of these and other facts, Mr. Mason asserts claims arising in strict liability – failure to warn and defective design. Mr. Mason also asserts claims of negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, and fraudulent omission/concealment. Plaintiff seeks the following damages:

1) General damages in an amount according to proof

2) Special damages in an amount within the jurisdiction of the Court and according to proof

3) Past and future medical expenses

4) Lost wages and lost earning capacity

5) Punitive Damages

6) Restitution or disgorgement of profits and other equitable relief

7) Attorney's fees

8) Cost of the suit herein

9) For prejudgment interest as provided by law; and

10) For such other and further relief the Court may deem proper.

6.  **Defendant's Claims:**

Merck contends that there is no evidence that the use of Vioxx at the 25 mg dose causes an increased risk of heart attacks. Merck also contends that there is no evidence that Mr. Mason's use of Vioxx at a 25 mg dose for approximately ten months actually caused his heart attack, but that Mr. Mason's alleged injuries were

caused instead by his preexisting cardiovascular disease and independent health risk factors. Further, Merck contends that Mr. Mason has recovered without any residual injury from his cardiac event.

Further, Merck contends that its warnings and instructions to Mr. Mason's prescriber, Nurse Olson-Fields, were adequate and complied with the rules of the FDA. Merck also asserts that it acted reasonably and that it disclosed to the FDA all relevant Vioxx safety data and risk information in a timely and responsible manner. Regardless, there is no evidence that any allegedly inadequate warnings impacted the decisions of Nurse Olson-Fields to prescribe Vioxx to Mr. Mason. Plaintiff cannot show that additional or different information would have changed her prescribing decisions. Nor can plaintiff show that Mr. Mason or his prescriber detrimentally relied on any Vioxx-related statements Merck made. Merck further contends that Mr. Mason's alleged injuries were the proximate result of his actions and/or those of Ms. Olson.

7. **<u>Uncontested Material Facts:</u>**

By Plaintiff:

a. Mr. Mason took Vioxx.

b. Mr. Mason suffered a heart attack on July 25, 2003.

c. Vioxx was designed, manufactured, and marketed by Defendant, Merck & Co., Inc.

d. The Vioxx taken by Mr. Mason were in substantially same condition as when drug left control of Defendant, Merck & Co., Inc.

e. Mr. Mason relied on his nurse practitioner's advice.

By Defendant:

a. Vioxx is prescription pain medication regulated by the United States Food and Drug Administration ("FDA"). It is a member of the class of drugs known as non-steroidal anti-inflammatory drugs ("NSAIDs"), which are used to treat pain and inflammation.

b. In May 1999, the FDA first approved Vioxx as "safe and effective" for marketing and distribution within the United States.

c. Mr. Mason received a prescription for Vioxx at the 25 mg dose from Nurse Olson-Fields on September 11, 2002. His pharmacy records reflect that he used Vioxx 25 mg from September 2002 to July 2003.

d. Mr. Mason relied on his prescriber's advice in deciding to take Vioxx.

e. The label or package insert accompanying the Vioxx taken by Mr. Mason was approved by the FDA in April 2002.

835026v.1

f. Merck sent Nurse Olson-Fields a PIR letter addressing whether Vioxx had cardiovascular effects on November 19, 2001.

g. On July 25, 2003, Mr. Mason was hospitalized for chest pain and was diagnosed with an acute myocardial infarction. He was taken for immediate cardiac catheterization, which revealed a 90% occlusion of his left anterior descending artery and a 70% occlusion of his first diagonal vessel. His left ventricular ejection fraction was 60%.

h. On September 30, 2004, Merck announced that it had decided to withdraw Vioxx from the market. This decision followed the release of interim data from a clinical trial, APPROVe, which was commissioned and financed by Merck.

i. At all times relevant to this action, Vioxx was approved by the FDA as safe and effective for marketing and distribution within the United States.

8. **Contested Issues of Fact:**

By Plaintiff:

a. Vioxx is in a special class of COX-2 pain relievers which are different from other NSAIDs.

b. Mr. Mason had previously seen ads for Vioxx, which did not alert him to the cardiovascular risks associated with Vioxx use.

c. Merck failed to conduct adequate and reasonable testing, studying and evaluation of Vioxx for cardiovascular risks, including the build up of plaque, plaque rupture and thrombotic events. Merck failed to follow the testing recommended by its advisors regarding atherosclerotic and cardiovascular risks.

d. Vioxx significantly increased the risk of serious side effects such as heart attacks and cerebrovascular adverse events such as ischemic strokes and other serious injuries.

e. Merck concealed its knowledge of Vioxx's increased cardiovascular risks from Mr. Mason, other consumers and the medical community.

f. Merck successfully downplayed and, in certain instances, concealed the fact that Vioxx significantly increased the risk of adverse thrombotic events, including cardiovascular and cerebrovascular injuries such as myocardial infarctions (heart attacks) and strokes, until the drug was recalled in late September 2004, and continues to do so since the recall.

g.  Merck failed to warn the medical community and patients of the true nature of the serious cardiovascular and cerebrovascular adverse events caused by using Vioxx.

h.  Merck over promoted and aggressively marketed Vioxx by falsely misleading potential users and prescribing health care providers such Nurse Olson-Fields about the product and by failing to warn and protect the consumers from serious dangers associated with the use of the drug.

i.  Merck misrepresented, understated and otherwise downplayed the serious health hazards and risks associated with Vioxx.

j.  Merck failed to conduct adequate and sufficient pre-marketing and post-marketing testing, studying or surveying of Vioxx.

k.  Merck knowingly downplayed and, in certain instances, withheld from publication, the risk and severity of cardiovascular and cerebrovascular risks associated with Vioxx. For example, Merck downplayed this information in connection with the New England Journal of Medicine's November 2000 report regarding the VIGOR study, written by Merck sponsored authors.

l.  In the VIGOR study, Merck ignored the causal relationship between Vioxx and the significantly increased rate of cardiovascular events. Merck widely and continuously disseminated the *post hoc* litigation position that the VIGOR study showed that Naproxen reduced cardiovascular risk, *i.e.*, it was "cardioprotective effect" -- not that Vioxx posed a serious cardiovascular risk.

m.  The FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") reviewed promotional activities and materials and warned Merck that its marketing of Vioxx was false, lacked fair balance, and was otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act and applicable regulations.

n.  According to the FDA's September 17, 2001, Warning Letter issued to Mr. Raymond Gilmartin, CEO of Merck & Co.:

(1)  Merck, its agents, employees and representatives minimized the rate of myocardial infarctions.

(2)  Merck knew it was misleading to assert "that Vioxx does not increase the risk of [heart attacks] and that the VIGOR finding is consistent with Naproxen's ability to block platelet aggregation like aspirin. That is a possible explanation, but if you fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation, that Vioxx may have pro-thrombotic properties."

      (3)     Merck knew that the promotional statement was false because the reason for the difference between the myocardial infarction outcomes for the Vioxx users versus the Naproxen users had not yet been determined;

      (4)     DDMAC reprimanded Merck for misrepresenting claims regarding the efficacy of Vioxx as compared to its competitor Celebrex; and

      (5)     Merck failed to point out that the more affordable and safer alternative was Naproxen.

o.    Merck systematically attempted to intimidate physicians or other "thought leaders" in the medical community who raised concerns about the cardiovascular safety of Vioxx.

p.    Merck undertook another clinical study known as APPROVe which compared Vioxx 25 mg to placebo.

q.    At its first meeting in or about January 2002, the External Safety Monitoring Board ("ESMB") for the APPROVe trial voiced concerns regarding "trends noted in serious adverse clinical events and in thromboembolic events."

r.    On or about September 17, 2004, the ESMB recommended that participating patients in APPROVe be instructed to discontinue treatment because of "trends noted in serious adverse clinical events and in thromboembolic events."

s.    Merck misrepresents that the APPROVe study did not show a difference between the incidences of cardiovascular injuries until after 18 months of exposure to Vioxx. However, Merck concealed from the public its internal analysis showing that, in fact, there was a higher incidence of such injuries in the Vioxx group in both the 0 to 18 month and 19 to 36 month exposure periods, when all events reported by the clinical trial investigators are considered. Merck included this data in a January 2005 draft of the APPROVe study, but excluded it from the version submitted for publication a month later. Thus, contrary to statements made repeatedly by Merck to the public and FDA, the APPROVe data actually show that Vioxx is dangerous with both short-term and long-term use. Based on follow-up data from the APPROVe study, the New England Journal of Medicine denounced Merck's 18-month theory.

t.    APPROVe reinforces the conclusion that the increased thromboembolic events of VIGOR were due to Vioxx cardiovascular toxicity rather than the alleged cardioprotective nature of naproxen.

u.    APPROVe showed a statistically significant relative risk of 2.80 for the cardiovascular events category including fatal and non-fatal myocardial infarction, sudden death due to cardiac causes, and unstable angina.

    APPROVe also showed a 3.82 relative risk for Vioxx over placebo for persons with blood pressure spikes while on Vioxx. There was a similar relative risk for the increased risk group on Vioxx over placebo as well.

v.  In addition to myocardial infarction, Merck was aware that Vioxx could accelerate atherosclerosis and make plaque more rupture prone. Merck failed to warn health care providers or consumers of this fact.

w.  As a result of taking Vioxx and Merck's actions, Mr. Mason suffered a heart attack on July 25, 2003. As a result of his heart attack, Mr. Mason sustained permanent injury to his heart and is at greater risk for serious harm in the future.

x.  Mr. Mason's Vioxx prescriber, Nurse Olson-Fields, and one of his treaters, Dr. Douglas Vogeler, asked Merck sales representatives about cardiovascular risks associated with Vioxx and were reassured that there was no risk and that the product was safe to prescribe.

y.  The November 19, 2001 PIR letter Merck sent Nurse Olson-Fields did not provide adequate notification of the cardiovascular risks associated with Vioxx. Rather, the letter reassures that there is no cardiovascular risk associated with Vioxx.

By Defendant:

a.  There is no scientifically reliable evidence that Vioxx taken at the 25 mg dose for the duration taken by Mr. Mason causes heart attacks.

b.  Nor is there any scientifically reliable evidence that the use of Vioxx at the 25 mg dose reduces the level of prostacyclin in the coronary vasculature or causes or leads to a "pro-thrombotic" state.

c.  Further, there is no evidence that Mr. Mason's purported use of Vioxx at a 25 mg dose actually caused his heart attack or any of his alleged injuries.

d.  Mr. Mason had coronary artery disease before he ever took Vioxx. The cause of his heart attack was his coronary artery disease, namely the 90% blockage of one of his major coronary arteries.

e.  Until the APPROVe data were released, the weight of the available scientific evidence indicated that Vioxx did not pose an increased risk of thrombotic cardiovascular events as compared with patients taking a placebo.

835026v.1

9. **Contested Issues of Law:**

By Plaintiff:

a. The strict liability of Defendant Merck & Co., Inc., for the defective design of Vioxx, distributing Vioxx in a defective condition unreasonably dangerous to the user, and for the defective marketing of Vioxx.

b. The negligent failure of Merck to warn about the foreseeable risks associated with the use of Vioxx.

c. The negligent failure of Merck to exercise ordinary care in the design and manufacture of Vioxx when they knew or should have known that Plaintiff could foreseeably suffer injury as a result.

d. That Merck intentionally and fraudulently concealed or suppressed the truth about the dangers of Vioxx with the intent to defraud the Plaintiff.

e. The negligent misrepresentation by Merck & Co., that induced Plaintiff to purchase and use Vioxx without knowledge of the true facts of the dangers of Vioxx and/or the negligent misrepresentation that failed to alert Plaintiff to the true facts of the dangers of Vioxx and therefore did not deter him from purchasing and using Vioxx.

f. The cause and extent of Mr. Mason's heart attack.

g. The amount of compensatory damages suffered by Mr. Mason.

h. The amount of punitive damages warranted by Merck's wantonness, willfulness or reckless disregard for the rights of safety and well being of people who were prescribed Vioxx during the time it was on the market without any or adequate warning of the cardiovascular dangers associated with the drug.

i. The appropriateness of bifurcating the trial. Plaintiff asserts that the trial of this case should not be bifurcated. In the event that the trial is bifurcated by the Court, Plaintiff urges the Court to admit evidence of conscious disregard and submit appropriate jury interrogatories in Phase I of the trial and inform the jury (as the Court did in *Smith*) that there may be a punishment phase after the compensatory phase.

j. All other defenses asserted by Merck at the trial of this cause.

By Defendant:

a. The insufficiency of scientifically reliable evidence to show general and/or specific causation.

b. Plaintiff's failure to show that Vioxx was defectively marketed or that additional or different warnings would have changed the decisions of Mr. Mason's prescribers to prescribe Vioxx at the 25 mg dose to Mr. Mason.

c. Whether Plaintiff may assert a design defect claim under Utah law, and, if so, Plaintiff's failure to prove that Vioxx had a design defect.

d. Preemption, by federal law, of plaintiff's failure to warn and design defect claims.

e. Whether plaintiff has presented sufficient evidence to overcome the presumption that Vioxx was not defective or unreasonably dangerous.

f. Plaintiff's failure to prove that Merck made any false or misleading material misrepresentations about the safety or efficacy of Vioxx or that Merck concealed or failed to disclose any material facts regarding Vioxx.

g. Whether plaintiff is entitled to compensatory and/or punitive damages.

h. The appropriateness of bifurcating the trial, separating the question of entitlement to and amount of punitive damages from the question of compensatory damages. Merck contends that such bifurcation is warranted and may be ordered within the Court's discretion.

10. **Exhibits:**

By Plaintiff:

The items listed on Plaintiff's Exhibit List (Attachment "A") may be offered, introduced, and/or filed into the record at the trial of this matter.

By Defendant:

The items listed on Defendant's Exhibit List (Attachment "B") may be offered, introduced, and/or filed into the record at the trial of this matter.

11. **Editing Trial Depositions/Filing Objections:**

For the Court's convenience, the parties have submitted binders for each witness who may testify by video deposition, containing each party's designations and the opposing party's objections. The witnesses who may testify by video deposition are included in No. 13 below.

835026v.1

12. **Listing of Charts, Graphs, Models, etc. for Use in Opening/Closing Statements:**

Plaintiff has not made a final decision regarding the demonstratives to be used during opening and closing statements.

Defendant has not made a final decision regarding the demonstratives to be used during opening and closing statements.

13. **Witnesses:**

Plaintiff may call the following witnesses either in person or by video deposition. All of these witnesses were included on Plaintiff's Witness List. This list does not include those witnesses for whom Plaintiff would seek to counter-designate deposition testimony if Defendant seeks to introduce deposition testimony from the same witness. Additional depositions may be taken before or during trial, and Plaintiff reserves the right to supplement this list to include some or all of those additional witnesses and depositions. Plaintiff reserves the right to call any witness designated by Merck.

a. David Anstice

b. Jerry Avorn, M.D.

c. Susan Baumgartner

d. Mary Blake

e. Ned Braunstein, M.D.

f. Tom Cannell

g. Gregory Curfman, M.D.

h. Laura Demopoulos, M.D.

i. Wendy Dixon

j. James Dunn

k. Stephen Epstein, M.D.

l. James F. Fries, M.D.

m. Edward Ganellen, M.D.

n. Raymond Gilmartin

835026v.1

o.  David Graham, M.D.

p.  Jay Grove, M.D.

q.  John L. Gueriguian, M.D.

r.  Aaron Jacobs

s.  Mark Keep, M.D.

t.  Marilyn Krahe

u.  Bard R. Madsen, M.D.

v.  Charles Laron Mason

w.  Linda K. Mason

x.  Charlotte McKines

y.  Malachi Mixon

z.  Briggs Morrison, M.D.

aa. Alan Nies, M.D.

bb. Karen Olsen-Fields, R.N., F.N.P.

cc. Connie Pechmann, Ph.D.

dd. Charles Rardin

ee. Alise Reicin, M.D.

ff. Gary Edward Sander, M.D.

gg. Edward Scolnick, M.D.

hh. Gary Symkoviak, M.D.

ii. Eric Topol

jj. Jan Weiner

kk. James Zebrack, M.D.

ll. Doug Vogeler, M.D.

835026v.1

Defendant may call the following witnesses, either live or by deposition. All of these witnesses were included on Defendant's Witness List. This list does not include those witnesses for whom Defendant would seek to counter-designate deposition testimony if Plaintiff seeks to introduce deposition testimony from the same witness. Additional depositions may be taken before trial, and Defendant reserves the right to supplement this list to include some or all of those additional depositions. Merck anticipates eliciting fact testimony from Merck employees and/or advisors, as well as opinion testimony related to their duties (which do not regularly involve giving expert testimony). Merck reserves the right to call any witness designated by Plaintiff.

a. Janet Arrowsmith-Lowe, M.D.

b. Dr. Eliav Barr

c. Susan Baumgartner

d. Gregory Curfman, M.D.

e. Donald David, M.D.

f. Stephen Epstein, M.D.

g. Lynette Fegley

h. Nicholas Flavahan, Ph.D.

i. Edward Ganellen, M.D.

j. Barry Gertz, M.D.

k. Raymond Gilmartin

l. Jay Grove

m. Aaron Jacobs

n. Mark Keep, M.D.

o. KyungMann Kim, Ph.D.

p. Bard Madsen, M.D.

q. Charles L. Mason

r. Linda K. Mason

s. Robert A. McMahon

t. Malachi Mixon

u.     Briggs Morrison, M.D.

v.     Alan Nies, M.D.

w.     Karen Olson-Fields, R.N., F.N.P.

x.     Craig M. Pratt, M.D.

y.     Charles Rardin

z.     Alise Reicin, M.D.

aa.     Michael Rothkopf, M.D.

bb.     Nancy Santanello, M.D.

cc.     Edward Scolnick, M.D.

dd.     Robert E. Silverman

ee.     Scott Summers

ff.     Gary Symkoviak, M.D.

gg.     Douglas Vogeler, M.D.

hh.     James Zebrack, M.D.

14. **For Jury Trials:**

This is a jury trial.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing Counsel not later than five (5) working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

15. **The issue of liability for compensatory damages will be tried separately from the issue of liability for punitive damages.**

16. **Other matters that may expedite case disposition.**

None.

17. **Trial shall commence on October 30, 2006 at 8:30 a.m. and is expected to last 10-14 days.**

835026v.1

18. **Pre-trial Order:**

This pretrial order has been formulated after conference at which counsel for the respective parties have met and conferred by e-mail. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. **Settlement:**

The possibility of settlement of this case was not considered.

*Holly M. Wheeler*
Edward Blizzard (TBN 02495000)
Scott Nabers (TBN 147692500
Rebecca Briggs King (TBN 24027110)
Holly M. Wheeler (TBN 24006035)
**BLIZZARD, MCCARTHY & NABERS, L.L.P.**
440 Louisiana, Suite 1710
Houston, Texas 77002
Phone: 713-844-3750
Fax:    713-844-3755

Amy Carter (TBN 24004580)
**WILLIAMS BAILEY LAW FIRM LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Phone: 713-230-2200
Fax:    713-643-6226

ATTORNEYS FOR PLAINTIFF


*Shayna S. Cook*
Philip S. Beck
Tarek Ismail
Shayna S. Cook
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL 60610
Phone: 312-494-4400
Fax:    312-494-4440

ATTORNEYS FOR DEFENDANT

835026v.1

This <u>20th</u> day of <u>October</u>, 2006.

_____
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Pre-Trial Order has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 17th day of October, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

835026v.1