UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX ) <br>     PRODUCTS LIABILITY LITIGATION ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> THIS DOCUMENT RELATES TO CIVIL NO. 06 - 06641 ) <br> _____) | MDL NO. 1657 <br><br> SECTION: L <br><br><br> JUDGE FALLON <br> MAG. JUDGE KNOWLES |

## AMENDED COMPLAINT

### INTRODUCTION

1. Rofecoxib (Vioxx) is a non-steroidal anti-inflammatory drug (NSAID). It was approved for marketing in the U.S. in May of 1999 for the treatment of acute pain in adults, dysmenorrhea and the signs and symptoms of osteoarthritis (OA). Plaintiff's personal physician prescribed and Plaintiff took a daily dosage of Vioxx for a period in excess of three years to provide pain relief for OA. Plaintiff discontinued her daily dose of Vioxx upon its withdrawal from the market in September of 2004. After discontinuing her use of Vioxx, Plaintiff suffered a major heart attack that severely damaged her heart in March of 2005.

### JURISDICTION AND VENUE

2. This action arises under the common law of the State of Arizona.

3. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1333. Venue is proper in this District under 28 U.S.C. § 1391 (c).

## THE PARTIES

### Plaintiff

4. Plaintiff is an octogenarian who lives in Green Valley, Arizona. Plaintiff has long suffered from OA and has been under medical care for OA for many years. For a period in excess of three years, Plaintiff had taken a daily dose of Vioxx in tablet form to ease the pain of her OA. Plaintiff discontinued her use of Vioxx upon its withdrawal from the market in September of 2004.

5. Plaintiff suffered a severe heart attack on March 20, 2005 in Tucson, Arizona.

6. Plaintiff had had no prior history of heart disease and was not being treated for heart disease at the time of her heart attack.

### Defendant

7. Defendant is a New Jersey corporation with its headquarters in New Jersey. Defendant is engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the prescription drug, Vioxx.

8. Defendant marketed and distributed Vioxx in the State of Arizona.

## FACTS COMMON TO ALL COUNTS

9. In 1998, Defendant conducted a small clinical trial named Study 090 that suggested the possibility that Vioxx increases the risk of serious cardiovascular events.

10. Study 090 involved patients with OA.

11. A New Drug Application (NDA) for Vioxx was submitted by Defendant to the

Federal Food and Drug Administration (FDA) in November of 1998. The application included safety and effectiveness data on OA patients who had participated in clinical trials.

12. 21 Code of Federal Regulations (CFR) Part 314 (1998) contained the federal regulations regarding applications for FDA approval to market a new drug applicable to the above noted NDA

13. The purpose of Part 314 was to ensure the approval of drugs shown to be safe and effective and the disapproval of drugs not shown to be safe and effective.

14. 21 CFR Section 314.50 (5) (1998) set forth the clinical data requirements to be met by Defendant regarding clinical investitgations of Vioxx.

15. 21 CFR Section 314.50 (5) (1998) required Defendant to include in the NDA all controlled and uncontrolled clinical studies pertinent to the proposed use of Vioxx as well as a description of any other data or information relevant to an evaluation of the safety and effectiveness of Vioxx obtained or otherwise received by Defendant.

16. Study 090 was not submitted with the NDA for Vioxx in 1998.

17. In May of 1999, Vioxx was approved for marketing by Defendant

18. In March of 2000, Defendant submitted results of its Vioxx Gastrointestinal Outcomes Research (VIGOR) study to the FDA.

19. The VIGOR study was not a safety study designed to determine the risk of cardiovascular events associated with Vioxx.

20. In the VIGOR study a higher incidence of serious cardiovascular thrombotic events were seen in patients receiving VIOXX 50 mg once daily compared to patients treated with naproxen 500 mg twice daily. This was largely due to a difference in the incidence of non-

fatal heart attacks.

21. In the Spring of 2000, Defendant began and continued until September of 2004 marketing efforts designed to address the implications of data either suggesting or demonstrating the cardiovascular risks of Vioxx, including but not limited to the so-called "Cardiovascular Card."

22. In order to make recommendations about drug therapies, physicians must have information about both the benefits and risks of the drug therapy so that patients, with the aid of their physicians, can make informed choices.

23. Arizona law requires a physician to inform a patient of the risks and benefits of taking a prescribed medication.

24. Physician's are legally and ethically prohibited from prescribing a drug where the potential harm to the patient outweighs the potential benefits.

25. In marketing Vioxx to physicians in Arizona, Defendant was required to inform physicians of both the risks and the benefits associated with the use of Vioxx for its intended purpose of the treatment of OA.

26. In October of 2000, Merck submitted a Safety Update Report in compliance with 21 CFR Part 314. The Safety Update Report contained final VIGOR data.

27. Between October of 2000 and February of 2001, Defendant submitted Study 090 to the FDA.

28. Potential cardiovascular safety issues with Vioxx were identified in the FDA Gastrointestinal (GI) Safety Review of February 1, 2001.

29. Among the potential safety issues with Vioxx identified in the FDA GI Safety

Review of 2001 was an increase in cardiovascular thrombotic events, including heart attacks.

30. In April of 2002, the U.S. prescribing information for Vioxx was updated with VIGOR information and data. The Vigor information and data were not in the warning section of the prescribing information.

31. APPROVe (Adenomatous Polyp PRevention On Vioxx) was a three year clinical trial sponsored by Defendnant. APPROVe was not a safety study designed to determine the cardiovascular risks associated with the use of Vioxx.

32. In the APPROVe clinical trial, it was determined that there was an increased relative risk for confirmed cardiovascular events, such as heart attacks, beginning after 18 months of continous use by patients taking Vioxx as compared to a placebo.

33. The APPROVe clinical trial was terminated on September 30, 2004. On the same day, Defendant announced the withdrawal of Vioxx from the market.

34. On information and belief, neither Defendant or third parties have conducted scientific studies specific to the issue of whether the cardiovascular risks from the long term use of Vioxx decrease upon discontinuing use.

## COUNT I

### STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN

35. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

36. Defendant was the researcher, developer, manufacturer, distributor, promoter, supplier and seller of Vioxx, which was defective and unreasonably dangerous to consumers.

37. Vioxx was defective in its design or formulation in that it was not reasonably fit, suitable or safe for the intended purpose of use in the treatment of OA.

38. The defective condition of Vioxx rendered it unreasonably dangerous for use in the treatment of OA, and Vioxx was in this defective condition at the time it left the hands of the Defendant.

39. Vioxx was expected to and did reach consumers, including Plaintiff without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

40. Plaintiff, as a consumer of Vioxx, had the reasonable expectation that Vioxx would not harm her.

41. Plaintiff, as a consumer of Vioxx, had the reasonable expectation that the benefits of Vioxx for use in the treatment of OA would outweigh any risks associated with such use.

42. Plaintiff was unaware of the significant hazards and defects in Vioxx and consequent risk. During the period that Plainiff was taking Vioxx, the medication was being used in a manner that was intended by Defendant. At the time Plaintiff received and consumed Vioxx, it was represented to be safe and free from latent defects.

43. Vioxx was, during the time that Plainiff took Vioxx, in a defective condition unreasonably dangerous.

44. Defendant Merck is strictly liable to Plaintiff under Arizona law for designing, manufacturing and distributing in Arizona and to Plaintiff a product which was in a defective condition unreasonably dangerous for use in the treatment of OA at the time it left the control of Defendant because of design defects.

45. As a direct and proximate cause of the design defect as set forth herein, Plaintiff suffered and continues to suffer serious and permanent physical injuries.

WHEREFORE, Plaintiff seeks judgment against Defendant for compensatory damages in excess of $75,000.00 together with interest, costs of suit, attorneys' fees and all such other relief as the court deems proper.

## COUNT II

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

46. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

47. Defendant was the researcher, developer, manufacturer, distributor, promoter, supplier and seller of Vioxx, and in the course of same, sought approval for its sale from the FDA and directly advertised or marketed Vioxx to consumers and physicians responsible for consumers, and therefore had a legal and ethical duty to warn of the risks associated with the use of Vioxx in the treatment of OA.

48. Vioxx was under the exclusive control of the Defendant as aforesaid, and was unaccompanied by an appropriate warning regarding the potential cardiovascular risks of using Vioxx in the treatment of OA.

49. Defendant failed to timely and reasonably warn of material facts regarding the safety of Vioxx in the treatment of OA so that no medical provider would have prescribed, or consurmer would have used Vioxx had those facts been made known to such providers and consumers.

50. Defendant had knowledge prior to the submission of the initial NDA for Vioxx to the FDA that Vioxx had the potential to increase the risk of cardiovascular events for patients in the treatment of OA.

51. Neither prior to or after submission of the NDA did Defendant perform or otherwise facilitate safety testing specific to the potential risk of cardiovascular events associated with the use of Vioxx in the treatment of OA.

52. After Defendant knew or should have known othat Vioxx posed serious and potentially life-threatening side effects and complications, Defendant failed to provide adequate warnings to medical care providers and the consuming public, including Plaintiff.

53. As a direct and proximate result of the conduct of Merck as aforesaid, Plaintiff suffered serious and permanent physical injury.

**WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages in excess of $75,000.00, together with interest, cost of suit, attorneys' fees and all other relief as the Court deems proper.

## COUNT III

## STRICT PRODUCTS LIABILITY- DEFECTIVE DESIGN & FAILURE TO WARN

## PUNITIVE DAMAGES

54. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

55. Defendant, before making Vioxx available for public use, knowingly, in violation of applicable federal food and drug regulations, withheld from the FDA information known by Defendant to be material and relevant to the potential risk of cardiovascular events, including the

harm suffered by Plaintiff, from the use of Vioxx in the treatment of OA.

56. Defendant's action in withholding such information was in conscious and deliberate disregard of public safety and welfare.

**WHEREFORE,** Plaintiff demands judgment against Defendant for punitive damages in excess of $75,000, together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

A jury trial is demanded in accordance with Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

_____
Gordon J. Apple
Minnesota Atty. Reg. #0166236
Law Offices of Gordon J. Apple, P.C.
Saint Paul, MN 55105
(651) 292-1524 (telephone)
(651) 292-1543  (facsimile)
*Attorney for Plaintiff*

Date: October 25, 2006

## CERTIFICATE OF SERVICE

I hearby certify that the above and foregoing Amended Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(b), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a notice of Electronic Filing in accord with procedures established in MDL 1657 on this 25th day of October, 2006.

Gordon J. Apple
MN 0166236
Attorney for Thelma J. Thornton
Law Offices of Gordon J. Apple, P.C.
787 Osceola Avenue, Suite 400
Ph. 651-292-1524
Fax. 651-292-1543
GordonJApple@msn.com