UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L - DIVISION 3 |
| | * | |
| This document relates to | * | JUDGE FALLON |
| CASE NO. 2:05CV2524 | * | |
| | * | |
| ANTHONY WAYNE DEDRICK, | * | MAG. JUDGE KNOWLES |
| an Individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

## Motion in Limine No. 3

### PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN SUBJECTS FROM EVIDENCE AT TRIAL

Plaintiff Anthony Dedrick, by and through his undersigned counsel, hereby respectfully moves the Court for an order excluding all evidence, references, testimony or argument relating to the various topics set forth below.

Under the Federal Rules of Evidence, only relevant evidence is admissible. Relevant evidence is defined as matters which may tend to prove or disprove a material fact at issue. Fed. R. Evid. 401. Further, the Federal Rules of Evidence provide that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading

the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In Tennessee, where this case arose, the state has adopted each of these federal rules. See Tenn. R. Evid. 401, 402 and 403.

The following evidence is not only irrelevant to these proceedings, but its probative value is greatly outweighed by the danger of unfair prejudice, of confusion of issues, of misleading the jury, or of causing undue delay and waste of time. Moreover, such argument is irrelevant, highly prejudicial and calculated to sway the sympathies of the jury. The tactic of appealing to the collective self-interest of jurors has been condemned by the courts and clearly applies to this and other issues presented below. The Fifth Circuit Court of Appeals has condemned such appeals to "community conscience" as improper. See *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1239 (5th Cir. 1985).

Merck should be precluded from offering evidence, argument, or eliciting testimony concerning or regarding:

a) Any suggestion that a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive and/or ability to develop new medications.

b) Any comment, inference, testimony, or documents tending to suggest in any way that an award of damages in this case will adversely affect the ability of any member of the jury to purchase or receive medications in the future, adversely affect the cost of medication, or adversely affect the availability of pharmaceutical drugs to individuals or industries in the United States or worldwide.

c) Any comment, reference, or inference that this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly-traded pharmaceutical manufacturer.

d) Any comment, inference, evidence, testimony, or documents suggesting or referring to Health Canada or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries.[1]

---

[1] Plaintiff asks that the Court give special attention to this particular issue. In the *Smith* case, the Court ruled that evidence of "Health Canada or other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries" was inadmissible. *Smith v. Merck & Co.*, No. 05-4379, Order of September 7, 2006, at 3. In disregard of the Court's Order, counsel for Merck elicited testimony from Dr. Alise Reicin concerning Health Canada's decision to allow Vioxx to be sold in Canada. *Smith*, trial transcript at 2509 (September 21, 2006) (Ex. "A"). Plaintiff asks the Court once again order that all references to Health Canada's actions regarding Vioxx be excluded from evidence at the trial of this case. In addition, Plaintiff asks that the Court admonish counsel for Merck not to violate its order as Merck did in the *Smith* case.

e) Any reference, comment, or inference that this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining health insurance.

f) Any reference, comment, or inference that this case or any other Vioxx product liability case may cause an increase in the cost of pharmaceutical drugs to the public.

g) Any comment, evidence, testimony, inference or document mentioning medical conditions of Plaintiff or Plaintiff's family that are unrelated to the injuries at issue in this lawsuit.

h) Any comment, evidence, testimony, inference or document mentioning any non-criminal bad conduct of Plaintiff. Misdemeanors and human frailties should not become "fair game" during trial. Federal and state rules of evidence prohibit such character assassination. Such testimony is improper under Fed. R. Evid. 610. See *Hudson v. United States*, 387 F.2d 331 (5th Cir. 1967).

i) Any reference, comment, or disclosure, whether directly or indirectly, in any manner, that Plaintiff's medical bills were and will be paid in the future for or covered by TennCare, Plaintiff's health insurer. Such evidence is entirely immaterial to any issue in this case and any mentioning or inference thereof, directly or indirectly, in any manner, will be harmful and unjustly prejudicial to the Plaintiff. See *Fye v. Kennedy,* 991 S.W.2d 754, 763 (Tenn. App. 1998) ("[T]the fact that the plaintiff has received payments from a collateral source, other than the defendant, is not admissible in evidence and does not reduce or mitigate the defendant's liability.")

j) Any comment, inference, evidence, testimony, or document tending to suggest in any way that an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law. See generally *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 (1993).

k) Any mention of the purported "litigation crisis," "lawsuit crisis," "lawsuit abuse," or similar terms or phrases.

l) Any comment or inference that Plaintiff's attorneys and their law firm primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation. See *Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157-58 (5th Cir. 1993).

m) Any comment, inference, or personal anecdote from any Merck witness or lawyer that they or their family members used Vioxx. See *U.S. v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979).

n) Any comment, evidence, testimony, inference or document mentioning, suggesting or inferring that Vioxx was taken off the market due to "media hype" caused by attorneys or the media.

o) Any comment, evidence, testimony, inference or document that preemptively bolsters the unchallenged character (e.g., honest) or traits (e.g., generous) of Merck's current or former employees, managers, consultants, experts, agents, or fiduciaries.

p) Any comment or reference to the medical conditions of Plaintiff's family members that are unrelated to the to the injuries in this case. Plaintiff specifically refers to the following: 1) Plaintiff's brother Kenny Dedrick's heart attack, heart disease, and smoking; and 2) Plaintiff's brother Phil Dedrick's heart disease and smoking.

q) Any reference to Plaintiff's non-criminal bad conduct. Plaintiff anticipates that Merck will Plaintiff regarding the following subjects: 1) use of Viagra; and 2) use of alcohol.

r) Any comment or reference to opinions of healthcare personnel who are not witnesses at trial, either in person or by deposition.

s) Any reference, comment or evidence that any members of the public or medical community desire that Vioxx be placed back on the market.

t) Any comment, evidence, testimony, inference or document inferring that state product liability defect and/or failure-to-warn laws pressure drug manufacturers to add unsubstantiated, false, or invalid warnings to their labels in order to avoid lawsuits.

u) Any comment, evidence, testimony, inference or document mentioning that state tort law undercuts the U.S. Food and Drug Administration's (FDA) mission to require drug manufacturers to include only scientifically valid warnings on drug labels.

v) Any comment, evidence, testimony, inference or document mentioning that too many warnings of serious injuries will dilute the effectiveness of warnings generally.

w) Any comment, evidence, testimony, inference or document mentioning that state products liability law frustrates the FDA's protective regime.

x) Any reference, comment, or inference that FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law.

y) Any reference, comment, or inference to settlement negotiations or the lack thereof.

Any comment, reference, testimony or document related to the subjects above would only be offered to appeal to the self-interest or sympathies of jurors. As noted above, the Fifth Circuit Court of Appeals condemns such appeals. See *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1239 (5th Cir. 1985). Thus, Plaintiff urges the Court to grant his motion and to preclude Merck from referring to the above-referenced matters in their entirety throughout the trial of this case.

Date: October 27, 2006

        Respectfully submitted,

        By _____
        Andy D. Birchfield, Jr.
        P. Leigh O'Dell
        BEASLEY, ALLEN, CROW,
        METHVIN, PORTIS & MILES, P.C.
        P.O. Box 4160
        234 Commerce Street
        Montgomery, Alabama 36103-4160
        Telephone: (334) 269-2343
        Facsimile: (334) 954-7555

        Counsel for Plaintiff

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Motion in Limine to Exclude Certain Subjects from Evidence at Trial has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of October, 2006.

_____
P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

## Page 2509

1  BEEN WITHDRAWN NOT ONLY IN THE UNITED STATES BUT ALSO
2  WORLDWIDE. DO YOU REMEMBER THAT?
3  A. YES, I DO.
4  Q. DO YOU KNOW, DR. REICIN, WHETHER, AFTER THE WITHDRAWAL,
5  THE HEALTH CANADIAN EXPERT ADVISORY PANEL VOTED ON WHETHER THE
6  BENEFITS OF VIOXX OUTWEIGH THE RISKS?
7  A. YES, THEY DID.
8  Q. WHAT WAS THE WROTE?
9  A. THAT THE BENEFITS OUTWEIGHED THE RISKS FOR VIOXX.
10 Q. MR. WATTS ASKED YOU ABOUT DR. RAY. DO YOU REMEMBER
11 QUESTIONS ABOUT DR. RAY?
12 A. YES, I DO.
13 Q. HE ASKED YOU ABOUT A LANCET ARTICLE CONCERNING NAPROXEN;
14 RIGHT?
15 A. THAT'S CORRECT.
16 Q. I'M GOING TO MARK FOR IDENTIFICATION PURPOSES ON EXHIBIT
17 628, WHICH IS AN ARTICLE THAT DR. RAY WROTE. LET'S SEE WHAT HE
18 SAID ABOUT VIOXX. THIS WAS IN WHAT YEAR?
19 A. THIS WAS IN 2002.
20 Q. DID HE DO SOME TYPE OF AN EPIDEMIOLOGICAL STUDY?
21 A. THAT'S CORRECT. ONE OF THE DATABASE STUDIES.
22 Q. WHAT DOES DR. RAY AND OTHERS SAY HERE IN THE LAST
23 SENTENCE? STARTING WITH "BY CONTRAST..."
24 A. DID YOU WANT ME TO READ IT?
25 Q. YES, PLEASE.

## Page 2510

1  A. "BY CONTRAST, THERE WAS NO EVIDENCE OF RAISED RISK OF
2  CORONARY HEART DISEASE AMONG USERS OF ROFECOXIB AT DOSES OF 25
3  MILLIGRAMS OR LESS OR AMONG USERS OF OTHER NSAIDS."
4  Q. DOES THAT INDICATE THAT, ACCORDING TO DR. RAY IN 2002,
5  THERE WAS NO INCREASED RISK ASSOCIATED WITH THE 25 MILLIGRAMS
6  DOSE OF VIOXX?
7  A. THAT IS CORRECT IN THIS STUDY.
8  Q. DO YOU KNOW WHETHER DR. RAY WAS ALSO GIVING LECTURES AND
9  TALKS AT MEDICAL GATHERINGS IN THAT TIME FRAME SAYING THAT
10 VIOXX AT THE 25-MILLIGRAM DOSE, MR. SMITH'S DOSE, WAS SAFE?
11 A. I DON'T KNOW. IT'S POSSIBLE. I JUST CAN'T CONFIRM OR
12 DENY THAT.
13 Q. YOU WERE ASKED QUESTIONS ABOUT THE WARNING LETTER THAT
14 MERCK RECEIVED IN SEPTEMBER OF 2001. DO YOU REMEMBER THAT?
15 A. YES, I DO.
16 Q. DID MERCK RESPOND TO THAT LETTER?
17 A. YES, WE DID. WE TAKE THOSE LETTERS VERY, VERY SERIOUSLY.
18 Q. I'M SHOWING YOU WHAT'S BEEN MARKED AS DEFENSE EXHIBIT 236.
19 DO YOU RECOGNIZE THIS AS A LETTER MERCK WROTE TO THE FDA
20 OCTOBER 1, 2001?
21 A. YES, I DO.
22      MR. GOLDMAN: WE OFFER DEFENSE EXHIBIT 236.
23      MR. WATTS: NO OBJECTION.
24      THE COURT: LET IT BE ADMITTED.
25

## Page 2511

1  BY MR. GOLDMAN:
2  Q. SO THIS IS THE LETTER, OCTOBER 1, 2001, THAT MERCK IS
3  WRITING TO THE FDA; IS THAT RIGHT?
4  A. THAT'S CORRECT.
5  Q. DO YOU REMEMBER MR. WATTS ASKED YOU ABOUT THIS PRESS
6  RELEASE IN PARTICULAR; RIGHT?
7  A. YES, HE DID.
8  Q. IF WE TURN TO THE FOURTH PAGE OF THIS RESPONSE LETTER BY
9  MERCK, DO YOU SEE THERE'S AN ENTIRE SECTION TALKING ABOUT THE
10 PRESS RELEASE?
11 A. YES, I DO SEE THAT.
12 Q. WHAT DOES MERCK SAY IN THE FIRST SENTENCE?
13 A. "MERCK STRONGLY DISAGREES WITH DDMAC'S COMMENTS REGARDING
14 THE MAY 22, 2001, PRESS RELEASE FOR SEVERAL REASONS."
15 Q. DDMAC, WHAT IS THAT, WITHOUT SPELLING OUT WHAT IT MEANS?
16 A. THAT IS THE DIVISION OF THE FDA THAT OVERSEES MARKETING
17 AND ADVERTISING ACTIVITIES AS THEY RELATE TO DRUGS.
18 Q. DID MERCK THEN GO ON AND EXPLAIN THE CIRCUMSTANCES AROUND
19 THE PRESS RELEASE? I WON'T DO THAT NOW, BUT IN THE NEXT THREE
20 PAGES OR SO THAT FOLLOW IN THIS LETTER.
21 A. EXACTLY WE WERE EXPLAINING THE CONTEXT AND WHY THIS PRESS
22 RELEASE WAS PUT OUT AND WHAT IT WAS RESPONDING TO.
23 Q. DID THE FDA SEND A FOLLOW-UP LETTER TO MERCK AFTER
24 RECEIVING THE RESPONSE THAT MERCK WROTE?
25 A. YES, THEY DID.

## Page 2512

1  Q. THIS IS DEFENSE EXHIBIT 359. IS THIS THE LETTER FROM THE
2  FDA TO MERCK?
3  A. YES, IT IS.
4       MR. GOLDMAN: WE OFFER DEFENSE EXHIBIT 359.
5       MR. WATTS: NO OBJECTION.
6       THE COURT: LET IT BE ADMITTED.
7  BY MR. GOLDMAN:
8  Q. SO HERE, THIS IS THE FDA? DOWN AT THE BOTTOM RIGHT, THE
9  DIVISION OF DRUG MARKETING, ADVERTISING, AND COMMUNICATIONS,
10 THAT'S THE DIVISION OF THE FDA; RIGHT?
11 A. THAT IS CORRECT.
12 Q. THEN IT SAYS, "THIS LETTER RESPONDS TO YOUR LETTER";
13 RIGHT? MEANING TO MERCK'S LETTER?
14 A. RIGHT, THE ONE WE JUST REVIEWED.
15 Q. JUST FOCUSING ON THE SECOND PARAGRAPH, WHAT DOES THE FDA
16 TELL MERCK, THE DDMAC DIVISION, TELL MERCK ABOUT THIS ISSUE IN
17 THE WARNING LETTER?
18 A. THAT THEY HAVE REVIEWED OUR CORRECTIVE ACTIONS OF THAT
19 LETTER, AND BASED ON THE INFORMATION PROVIDED IN THAT LETTER
20 THEY CONCLUDED THAT MATTER WAS RESOLVED AND CONSIDERED CLOSED.
21 Q. DID THE DDMAC DIVISION OF FDA REQUIRE MERCK TO SEND
22 ANYTHING OUT CONCERNING THIS PRESS RELEASE?
23 A. NO, THEY DID NOT.
24 Q. DID MERCK EVER RECEIVE ANY OTHER LETTERS FROM THE DDMAC
25 DIVISION FROM FDA AFTER SEPTEMBER OF 2001 ALL THE WAY THROUGH

