UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| This document relates to<br>CASE NO. 2:05CV2524 | * | JUDGE FALLON |
| ANTHONY WAYNE DEDRICK,<br>an Individual, | * | MAG. JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

Motion in Limine No. 11

**PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT MERCK FROM OFFERING ANY TESTIMONY OR ARGUMENT RE THE PREAMBLE TO 71 FEDERAL REGISTER § 3922-01 AND ANY STATEMENT BY THE FDA REGARDING PREEMPTION**

Plaintiff Anthony Dedrick, by and through his undersigned counsel, hereby moves to exclude any evidence, testimony or argument regarding the preamble to 71 Federal Register § 3922-01 (Jan. 24, 2006), including any statement by the FDA regarding preemption or the FDA's position with respect to preemption of state law by federal regulations.

I.  INRODUCTION

Plaintiff anticipates that Merck will attempt to introduce into evidence, through the testimony of its own experts or through cross-examination of Plaintiff's experts, the fact that the FDA has previously

1

taken a position that its labeling regulations preempt conflicting state law. On January 24, 2006 the FDA issued new drug regulations (codified at 21 C.F.R. pts. 201, 314, 601). See Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922-33 (Jan. 24, 2006) (Ex. "A"). As published in the Federal Register, the Preamble to the regulations, which took effect until June 30, 2006, provides the statement "FDA believes that under existing preemption principles, FDA approval of labeling under the act, whether it be in the old or new format, preempts conflicting or contrary State law." *Id.*

Any reference to this statement or regarding preemption should be excluded from the trial of this case, as it would have no probative value, would only mislead the jury, and would result in undue prejudice, confusion of issues, undue delay and waste of trial time.

## II.   THE SUBJECT EVIDENCE HAS NO PROBATIVE VALUE, AND NO TENDENCY TO MAKE THE EXISTENCE OF ANY FACT THAT IS OF CONSEQUENCE TO THIS ACTION MORE OR LESS PROBABLE.

Under the Federal Rules of Evidence, only relevant evidence is admissible. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401. Plaintiff anticipates that Merck will attempt to introduce evidence of the FDA's recent preemption statement in the preamble to 71 Fed.Reg. 3922 to imply that Plaintiff's action, and, for that matter, any prescription drug products liability action should be barred as inconsistent with the purposes and policies of the FDA.

The statement in 71 Federal Register 3922-33 has no probative value whatsoever. Though in effect at this time, the statement is not controlling. However, it was only published this year and was not in existence when this action was filed. More importantly, the subject of preemption has no relevance to any question of fact the jury will be asked to decide. Regardless of how the preamble is interpreted by

2

the courts, by manufacturers or the FDA, it had no effect on the conduct of the parties in this action, and will have no effect on this action. It is not germane to any of the issues before the jury as the jury will not be asked to determine any fact which relates to preemption or the FDA's position on preemption.

### III. THE SUBJECT EVIDENCE CARRIES A SUBSTANTIAL RISK OF UNDUE PREJUDICE, CONFUSION OF ISSUES, AND MISLEADING THE JURY, AND WILL RESULT IN UNDUE DELAY AND WASTE OF TIME.

The Federal Rules of Evidence provide that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As the probative value of proffered evidence becomes more marginal, the danger of unfair prejudice will more frequently compel the exclusion of the same under Rule 403. See *U.S. v. Huffine*, No. CR.A. 02-93, 2003 WL 122313, at *4 (E.D. La. Jan. 13, 2003).

Injecting the subject of preemption into this case would inevitably confuse jurors as to the law they will apply to the evidence and create a risk that the jurors will incorrectly perceive the preamble as having a legal effect upon the Plaintiff's case. Plaintiff would be forced to put on rebuttal evidence and testimony on what is clearly a non-issue, resulting in delay and unnecessary consumption of time. Moreover, the statements regarding preemption are inconsistent with past statements made by the FDA. See 63 Fed.Reg. 66383, 66384; 65 Fed.Reg. 81082, 81103 (Dec. 22, 2000) ("FDA's regulations establish the minimal standards necessary, but were not intended to preclude the states from imposing additional labeling requirements."); 63 Fed.Reg. 66378, 66384 (Dec. 1, 1998) ("[F]ederal preemption could unduly interfere with the goals and objectives of existing State programs ... This final rule is intended to complement these State efforts, not replace or hinder them.").

The preemption statements are also inconsistent with myriad decisions of courts which have concluded that Congress has evinced no intention of preempting state tort liability for injuries from

3

prescription drugs. See, e.g. *Feldman v. Lederle Laboratories,* 592 A.2d 1176, 1192 (1991) ( "[W]e find nothing in the federal scheme to support the assertion that manufacturers of prescription drugs and antibiotics who literally comply with [FDA regulations] must be immune from state tort liability for injuries caused by their products."); *Abbot v. American Cyanamid Co.,* 844 F.2d 1108, 1112 (4th Cir.1988) (federal law does not preempt imposition of state common law liability for failure to warn, despite the fact that labeling, "once approved, cannot be changed without FDA approval."); *Mazur v. Merck & Co., Inc.,* 742 F.Supp. 239, 247 (E.D. Pa.1990) ("[M]ere compliance with an FDA suggestion, or for that matter, regulation or order, does not mean that state tort law becomes irrelevant. . . . State tort law is intended to supplement federal regulation ...."); cf. *Medtronic, Inc. v. Lohr,* 116 S. Ct. 2240, 2243 (1996) (plur. opn. of Stevens, J.) (negligence and strict liability claims for failure to warn about risks of a medical device were not preempted by federal regulations."); *Cartwright v. Pfizer, Inc.,* 369 F.Supp.2d 876, 885 (E.D. Tex. 2005) ("Congress and the FDA has chosen not to include an express preemption clause in the statutes and regulations for prescription drugs. Clearly, Congress knows how to enact FDA legislation that contains a preemption clause. Thus, the absence of any such clause with respect to prescription drugs demonstrates an implied intent not to preempt cases, such as this.")

At least one court in a Vioxx trial has already found that the preamble should not be referenced. On June 9, 2006, in *Doherty v. Merck,* Superior Court of New Jersey, Atlantic County Civil Div. Docket No. ATL-L-0638-05MT, Judge Carol Higbee granted a motion by the plaintiff to strike any reference to the new regulation:

```
21      The preamble, as I see it, is a political
22   statement by the FDA. The primary purpose of it is to
23   criticize state courts and to set forth the FDA's
24   position that -- not to criticize state courts so much
25   as to set forth the FDA's position that they believe
```

4

```
        586
  1   there should be federal preemption of all tort actions.
  2   That is basically what the preamble is saying. What
  3   the preamble is saying is the FDA should be the final
  4   word.
  5       It has nothing to do with science. It has
  6   nothing to do with what happened back in 2000, 2001,
  7   2002, when these issues were being decided. It is
  8   contrary to the U.S. Supreme Court's decisions. It is
  9   contrary to all the law on preemption. And I am not
 10   going to allow you to use it.
```

See Doherty v. Merck & Co., trial transcript at 585-586 (June 9, 2006).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order precluding Merck from offering any evidence, testimony or argument regarding the preamble to 71 Federal Register 3922-01, including any statement by the FDA regarding preemption or the FDA's position with respect to preemption of state law by federal regulations.

Date:  October 27, 2006                    Respectfully submitted,

                                           By _____
                                           Andy D. Birchfield, Jr.
                                           P. Leigh O'Dell
                                           BEASLEY, ALLEN, CROW,
                                           METHVIN, PORTIS & MILES, P.C.
                                           P.O. Box 4160
                                           234 Commerce Street
                                           Montgomery, Alabama 36103-4160
                                           Telephone:  (334) 269-2343
                                           Facsimile:  (334) 954-7555


                                           Counsel for Plaintiff

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Motion in Limine to Preclude Defendant Merck from Offering Any Testimony or Argument RE the Preamble to 71 Federal Register § 3922-01 and any Statement by the FDA Regarding Preemption has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of October, 2006.

_P. Leigh O'Dell_
P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

Westlaw.

71 FR 3922-01                                                              Page 1
71 FR 3922-01, 2006 WL 160271 (F.R.)
(Cite as: 71 FR 3922)

RULES and REGULATIONS

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration

21 CFR Parts 201, 314, and 601

[Docket No. 2000N-1269] (formerly Docket No. 00N-1269)

RIN 0910-AA94

Requirements on Content and Format of Labeling for Human Prescription Drug and
Biological Products

Tuesday, January 24, 2006

AGENCY: Food and Drug Administration, HHS.

*3922 ACTION: Final rule.

SUMMARY: The Food and Drug Administration (FDA) is amending its regulations governing the content and format of labeling for human prescription drug products (including biological products that are regulated as drugs). The final rule revises current regulations to require that the labeling of new and recently approved products include highlights of prescribing information and a table of contents. The final rule also reorders certain sections, requires minor content changes, and sets minimum graphical requirements. These revisions will make it easier for health care practitioners to access, read, and use information in prescription drug labeling. The revisions will enhance the safe and effective use of prescription drug products and reduce the number of adverse reactions resulting from medication errors due to misunderstood or incorrectly applied drug information. For both new and recently approved products and older products, the final rule requires that all FDA-approved patient labeling be reprinted with or accompany the labeling. The final rule also revises current regulations for prescription drug labeling of older products by clarifying certain requirements. These changes will make the labeling for older products more informative for health care practitioners.

DATES: This rule is effective June 30, 2006. See section III of this document for the implementation dates of this final rule.

FOR FURTHER INFORMATION CONTACT:

For information on drug product labeling: Janet Norden, Center for Drug Evaluation and Research (HFD-40), Food and Drug Administration, 10903 New Hampshire Ave., Bldg. 22, rm. 4202, Silver Spring, MD 20993-0002, 301-796- 2270, nordenj@CDER.FDA.GOV, or Elizabeth Sadove, Center for Drug Evaluation and Research (HFD-7), Food and Drug Administration, 5600 Fishers Lane, Rockville, MD 20857, 301-594-2041, sadovee@CDER.FDA.GOV.

For information on labeling of biological products that are regulated as prescription drugs: Toni M. Stifano, Center for Biologics Evaluation and Research (HFM-600), Food and Drug Administration, 1401 Rockville Pike, Rockville, MD 20856, 301-827-6190, stifano@CBER.FDA.GOV, or Kathleen Swisher, Center for Biologics Evaluation and Research (HFM-17), Food and Drug Administration, 1401 Rockville Pike,

© 2006 Thomson/W_____ig. U.S. Govt. Works.

PLAINTIFF'S
EXHIBIT
A

```
71 FR 3922-01                                                         Page 2
71 FR 3922-01, 2006 WL 160271 (F.R.)
(Cite as: 71 FR 3922)
```

Rockville, MD 20852, 301-827-6210.

SUPPLEMENTARY INFORMATION:

Table of Contents

I. Background

II. Overview of the Final Rule Including Changes to the Proposed Rule

III. Implementation

IV. Overview of Agency Initiatives to Improve the Content and Format of Prescription Drug Labeling

V. Implications of This Final Rule for the Electronic Labeling Initiative

VI. Comments on the Proposed Rule

VII. Legal Authority

VIII. Paperwork Reduction Act of 1995

IX. Environmental Impact

X. Executive Order 13132: Federalism

XI. Analysis of Economic Impacts

XII. Executive Order 12988: Civil Justice Reform

XIII. References

I. Background

In the Federal Register of December 22, 2000 (65 FR 81082), FDA issued a proposed rule to revise its regulations governing the content and format of labeling for human prescription drug products, which appear in §§ 201.56 and 201.57 (21 CFR 201.56 and 201.57). [FN1]

FN1 Although §§ 201.56 and 201.57 do not specifically mention the term "biologics", under the Federal Food, Drug, and Cosmetic Act (the act), most biologics are drugs that require a prescription and thus are subject to these regulations. (See section VII of this document for legal authority.) For the purposes of this document, unless otherwise specified, all references to "drugs" or "drug products" include human prescription drug products and biological products that are also drugs.

A. *FDA-Approved Prescription Drug Labeling*

A prescription drug product's FDA-approved labeling (also known as "professional labeling," "package insert," "direction circular," or "package circular") is a compilation of information about the product, approved by FDA, based on the agency's thorough analysis of the new drug application (NDA) or biologics license application (BLA) submitted by the applicant. This labeling contains information necessary for safe and effective use. It is written for the health care practitioner audience, because prescription drugs require "professional supervision of a practitioner licensed by law to administer such drug" (section 503(b) of the act (21 U.S.C. 353(b))). FDA-approved labeling is defined in section 201(m) of the act (21 U.S.C. 321(m)) and is subject to all applicable provisions of section 502 of the act (21 U.S.C. 352). It satisfies the requirement of § 201.100(d) (21 CFR 201.100(d)) that "[a]ny labeling, as defined in section 201(m) of the act * * * that furnishes or purports to furnish information for use or which prescribes, recommends, or suggests a dosage for the use of the drug * * * contains * * * [a]dequate information for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

71 FR 3922-01                                                                    Page 3
71 FR 3922-01, 2006 WL 160271 (F.R.)
**(Cite as: 71 FR 3922)**

such use," as further described in that provision. FDA-approved labeling also accompanies "promotional" materials, as described in §  202.1(l)(2) (21 CFR 202.1(l)(2)). FDA-approved labeling also "bears adequate information" within the meaning of §  201.100(c)(1), which applies to "labeling on or within the package from which a prescription drug is to be dispensed", referred to in this document as "trade labeling." In this document, FDA-approved labeling for prescription drugs is referred to as "labeling" or "prescription drug labeling."

*B. Developing the Proposed Rule*

In recent years, there has been an increase in the length, detail, and complexity of prescription drug labeling, making it harder for health care practitioners to find specific information and to discern the most critical information. Before issuing the proposal, the agency evaluated the usefulness of prescription drug labeling for its principal audience to determine whether, and how, its content and format could be improved. The agency used focus groups, a national physician survey, a public meeting, and written comments to develop multiple prototypes and to ascertain how prescription drug labeling is used by health care practitioners, what labeling information practitioners consider most important, and how practitioners believed labeling could be improved. The agency developed a prototype based on this accumulated information as the model for the proposed rule.

*3923 *C. The Proposed Rule*

The agency's proposed changes were designed to enhance the ability of health care practitioners to access, read, and use prescription drug labeling.

1. Proposed Provisions for New and Recently Approved Drugs

FDA proposed the following changes for the labeling for prescription drugs that were approved on or after the effective date of the final rule, drugs that had been approved in the 5 years before the effective date of the final rule, and older approved drugs for which an efficacy supplement is submitted. FDA believed that applying the revised content and format requirements only to more recently approved products was appropriate because, among other reasons, health care practitioners are more likely to refer to the labeling of recently approved products (see comment 113).

• The addition of introductory prescribing information, entitled "Highlights of Prescribing Information" (Highlights).

• The addition of a table of contents.

• Reordering and reorganizing to make the labeling easier to use and read.

• Minimum graphical requirements for format.

• Certain revisions to the content requirements, such as modifying the definition of "adverse reaction" to make the "Adverse Reactions" section of labeling more meaningful and useful to health care practitioners.

2. Proposed Provisions for Older Approved Drugs

The agency proposed that older approved drug products would not be subject to these proposed changes. These older products would, instead, be subject to the labeling requirements at proposed §  201.80. The agency proposed to redesignate then-current §  201.57 as §  201.80 to describe labeling requirements for older drugs and add new §  201.57 to describe labeling requirements for new and recently approved drugs.

3. Proposed Provisions for All Drugs

FDA also proposed certain revisions to the requirements governing the content of labeling to help ensure that statements appearing in labeling related to effectiveness or dosage and administration are sufficiently supported. These

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provisions would have applied to all drugs.

• The labeling for all drugs would contain all FDA-approved patient labeling (i.e., approved printed patient information and Medication Guides) for the drug, not just the information required by regulation to be distributed to patients (see table 2).

• Minor revisions would be made to the requirements for labels affixed to prescription drug containers and packaging.

The proposal called for the submission of comments by March 22, 2001. At the request of the Pharmaceutical Research and Manufacturers of America, and to provide all interested persons additional time to comment, the comment period was reopened until June 22, 2001 (66 FR 17375, March 30, 2001). After careful consideration of the comments, FDA has revised the proposal and is issuing this final rule.

The following sections of this document provide:

• An overview of the final rule including changes to the proposed rule (section II of this document),

• A discussion of the implementation requirements for the final rule (section III of this document),

• An overview of the agency's prescription drug labeling initiatives (section IV of this document),

• The implications of this rule for the electronic labeling initiative (section V of this document),

• A discussion of the comments received on the proposal and the agency's responses to the comments (section VI of this document),

• A statement of legal authority (section VII of this document),

• A description of the information collection provisions of the rule (section VIII of this document),

• An statement on the environmental impact of the rule (section IX of this document),

• A statement on federalism (section X of this document),

• An analysis of the economic impacts of the rule (section XI of this document),

• A statement on the impact of the rule on the civil justice system (section XII of this document), and

• A list of references (section XIII of this document).

II. Overview of the Final Rule Including Changes to the Proposed Rule

This final rule amends part 201 (21 CFR part 201) of FDA regulations by revising the requirements for the content and format of labeling for prescription drug products (see tables 1 and 2 of this document). Table 1 lists the sections required for prescription drug labeling before the effective date of this final rule (and which will remain in effect for older products), and, for new and recently approved products, the sections FDA proposed in 2000 and those required by this final rule.

BILLING CODE 4160-01-S

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
71 FR 3922-01                                                          Page 5
71 FR 3922-01, 2006 WL 160271 (F.R.)
(Cite as: 71 FR 3922)
```

Table 1.--Prescription Drug Labeling Sections

| Sections Required for All Products Before the Effective Date of the Final Rule and for Older Products On and After the Effective Date of the Final Rule | Sections That Were Proposed for New and Recently Approved Products | Sections Required for New and Recently Approved Products On or After the Effective Date of the Final Rule |
|---|---|---|
| Description<br>Clinical Pharmacology<br>Indications and Usage<br>Contraindications<br>Warnings<br>Precautions<br>Adverse Reactions<br>Drug Abuse and Dependence<br>Overdosage<br>Dosage and Administration<br>How Supplied<br>Optional:<br>   Animal Pharmacology and/or Animal Toxicology<br>   Clinical Studies<br>   References | Highlights of Prescribing Information<br>   Product Names, Other Required and Optional Information<br>   Boxed Warning<br>   Recent Labeling Changes<br>   Indications and Usage<br>   Dosage and Administration<br>   How Supplied<br>   Contraindications<br>   Warnings/Precautions<br>   Drug Interactions<br>   Use in Specific Populations<br><br>Comprehensive Prescribing Information: Index<br><br>Comprehensive Prescribing Information<br>   ! Boxed Warning<br>   1 Indications and Usage<br>   2 Dosage and Administration<br>   3 How Supplied/Storage and Handling<br>   4 Contraindications<br>   5 Warnings/Precautions<br>   6 Drug Interactions<br>   7 Use in Specific Populations<br>   8 Adverse Reactions<br>   9 Drug Abuse and Dependence<br>   10 Overdosage<br>   11 Description<br>   12 Clinical Pharmacology<br>   13 Nonclinical Toxicology<br>   14 Clinical Studies<br>   R References<br>   P Patient Counseling Information | Highlights of Prescribing Information<br>   Product Names, Other Required Information<br>   Boxed Warning<br>   Recent Major Changes<br>   Indications and Usage<br>   Dosage and Administration<br>   Dosage Forms and Strengths<br>   Contraindications<br>   Warnings and Precautions<br>   Adverse Reactions<br>   Drug Interactions<br>   Use in Specific Populations<br><br>Full Prescribing Information: Contents<br><br>Full Prescribing Information<br>   Boxed Warning<br>   1 Indications and Usage<br>   2 Dosage and Administration<br>   3 Dosage Forms and Strengths<br>   4 Contraindications<br>   5 Warnings and Precautions<br>   6 Adverse Reactions<br>   7 Drug Interactions<br>   8 Use in Specific Populations<br>   9 Drug Abuse and Dependence<br>   10 Overdosage<br>   11 Description<br>   12 Clinical Pharmacology<br>   13 Nonclinical Toxicology<br>   14 Clinical Studies<br>   15 References<br>   16 How Supplied/Storage and Handling<br>   17 Patient Counseling Information |

\*3924 The final rule requires that any FDA-approved patient labeling either: (1) Accompany the prescription drug labeling or (2) be reprinted at the end of such labeling (§§ 201.57(c)(18) and 201.80(f)(2)). Table 2 lists the requirement in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

effect before the effective date of this final rule, the 2000 proposed requirement, and the final requirement (see comment 92 for discussion of FDA-approved patient labeling). For the purposes of this document, the term "FDA-approved patient labeling" will be used to refer to any approved printed patient information or Medication Guide, unless a comment is addressing one or the other specifically.

Table 2.--FDA-Approved Patient Labeling with Prescription Drug Labeling

| Requirement for All Products Before the Effective Date of the Final Rule | Proposed Requirement for All Products | Final Requirement for All Products |
|---|---|---|
| To be reprinted at the end of labeling: | To be reprinted at the end of labeling: | To be reprinted at the end of labeling or to accompany the labeling: |
| • Full text of FDA-approved patient labeling that is required to be distributed to patients | • Full text of any FDA-approved patient labeling | • Full text of any FDA-approved patient labeling |

*3925 In this rulemaking, the agency finalizes many of the provisions in the December 2000 proposal. In addition, the final rule reflects revisions the agency made in response to comments on the December 2000 proposal and revisions made by the agency on its own initiative. FDA also has made editorial changes to clarify provisions, correct cross-references, and support the agency's plain language initiative. Table 3 lists the substantive changes made to the general provisions and Highlights and table 4 lists the substantive changes made to the Full Prescribing Information (FPI).

*A. Content and Format of Labeling for New and More Recently Approved Prescription Drug Products*

The final rule, like the proposed rule, requires that the labeling for new and more recently approved drug products comply with revised content and format requirements (§ 201.56(d)) (see table 1). Like the proposed rule, the final rule provides that new and more recently approved products include drug products with an NDA, BLA, or efficacy supplement that: (1) Was approved between June 30, 2001, and June 30, 2006; (2) is pending on June 30, 2006; or (3) is submitted anytime on or after June 30, 2006 (§ 201.56(b)(1)).

On its own initiative, the agency added a provision on pediatric risk information to the general labeling requirements of the final rule. Section 11 of the Best Pharmaceuticals for Children Act (Public Law 107-109) (BPCA), which was signed into law on January 4, 2001, addresses labeling requirements for generic versions of drugs with pediatric patent protection or exclusivity. The agency added a provision in § 201.56(d)(5) of the final rule to make clear that any risk information from the "Contraindications," "Warnings and Precautions," or "Use in Specific Populations" section is "pediatric contraindications, warnings, or precautions" within the meaning of section 11 of the BPCA (21 U.S.C. 355A(l)(2)). By adding § 201.56(d)(5), the agency intends to avoid any possible confusion as to what information the agency may require in generic labeling that otherwise omits a pediatric indication or other aspect of labeling pertaining to pediatric use

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

71 FR 3922-01                                                              Page 7
71 FR 3922-01, 2006 WL 160271 (F.R.)
**(Cite as: 71 FR 3922)**

protected by patent or exclusivity.

   In addition, the agency declined to adopt the use of symbols that were proposed to
emphasize or identify information in prescription drug labeling. Based on comments,
FDA declined to use the inverted black triangle (see comment 15) and the exclamation
point (!) to emphasize the boxed warning (see comment 43). On its own initiative,
for the same reasons that FDA rejected use of the two symbols commented upon, FDA
declined to use the following three proposed symbols:

   • The Rx symbol (proposed § 201.57(a)(3)) in Highlights. The agency proposed the
symbol to identify a product that is available only by prescription under section
503(b) of the act. The agency decided that the Rx symbol in Highlights is
unnecessary because the new prescription drug labeling format is so distinct from
the over-the-counter (OTC) drug labeling format that it will be clear to prescribers
that labeling in the new format is for a prescription drug product.

   • The "R" symbol in the FPI (proposed § 201.56(d)(2)), which would have identified
the "References" section.

   • The "P" symbol in the FPI (proposed § 201.57(c)(18)), which would have
identified the "Patient Counseling Information" section.

1. Highlights of Prescribing Information

   Like the proposed rule, the final rule requires that the labeling for new and more
recently approved products include introductory information entitled "Highlights of
Prescribing Information" (Highlights) (§ § 201.56(d)(1) and 201.57(a)) (see table
1).

   The final rule requires the same headings for Highlights as proposed, except that,
in response to comments, FDA moved "Most Common Adverse Reactions" from "Warnings
and Precautions" (proposed § 201.57(a)(10)) to a new heading entitled "Adverse
Reactions" (§ § 201.56(d)(1) and 201.57(a)(11)) (see table 1 and comment 28). Like
the proposed rule, the final rule requires that Highlights, except for the boxed
warning, be limited in length to one-half of the page (§ 201.57(d)(8)) (see comment
104).

   The agency is also revising its regulations on supplements and other changes to an
approved application in § § 314.70 and 601.12 (21 CFR 314.70 and 601.12) to require
applicants to obtain prior approval of any labeling changes to Highlights, except
for identified minor changes (see comment 5).


Table 3.--Substantive Changes From the Proposed Rule to the Final Rule: General
                              Provisions and to Highlights
--------------------------------------------------------------------------------
21 CFR Section in Final         Description of Change from Proposed Rule
         Rule
                                See comment or section of this document (identified
                                  in parentheses) for more detailed information
                                              regarding the change.
--------------------------------------------------------------------------------
201.55, 201.57(c)(4)(v),
  201.57(c)(12)(i)(D),
  and 201.100(b) ........  Container Labels
                              • Withdrew proposed amendments regarding content of
                                container labels and associated proposed amendments
                                to the labeling (106 and 107)
201.56(a)(2) ............  General Requirement
                              • Revised to clarify that the labeling must be
                                updated when new information becomes available that
                                causes the labeling to become inaccurate, false, or
                                misleading (114)

             © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
71 FR 3922-01                                                          Page 8
71 FR 3922-01, 2006 WL 160271 (F.R.)
(Cite as: 71 FR 3922)


201.56(d) ...............  Product Title
                             • Deleted proposed §  201.56(d)(4), which permitted a
                               "Product Title" section to be included at the
                               beginning of the FPI (39)
201.56(d)(4) ............  Format of Contents
                             • Revised to require that the Contents identify if
                               sections have been omitted (37)
201.56(d)(5) ............  Pediatric Risk Information
                             • Added, on its own initiative, a provision to make
                               clear that pediatric risk information within the
                               meaning of the BPCA may be located in the "Use in
                               Specific Populations" section (II.A)
201.57 and 201.80 .......  Unsubstantiated Claims
                             • Removed the 1-year implementation requirement for
                               provisions in § §  201.57 and 201.80 that prohibit
                               inclusion of unsubstantiated claims in labeling
                               (114)
201.57 ..................  Promotional Labeling
                             • Removed, on its own initiative, the reference to
                               statements made in promotional labeling and
                               advertising in proposed 201.57(a) (111)
201.57(a)(1) ............  Highlights Limitation Statement
                             • Moved the Highlights limitation statement to the
                               beginning of Highlights (35)
201.57(a)(3) ............  Inverted Black Triangle Symbol
                             • Instead of an inverted black triangle symbol,
                               labeling will state the "Initial U.S. Approval"
                               date (15)
201.57(a)(4) ............  Boxed Warning
                             • Revised to require that Highlights contain a
                               concise summary of any boxed warning in the FPI
                               (16)
201.57(a)(5) ............  Recent Labeling Changes
                             • Changed the heading to "Recent Major Changes" and
                               revised to identify only substantive changes to the
                               "Boxed Warning," "Indications and Usage," "Dosage
                               and Administration," "Contraindications," and
                               "Warnings and Precautions" sections and the date of
                               the change(s) (18-22)
201.57(a)(6) ............  Indications and Usage
                             • Revised to require identification of the
                               pharmacologic class of the drug if it is a member
                               of an established pharmacologic class (6)
201.57(a)(8) ............  How Supplied
                             • Changed the heading to "Dosage Forms and Strengths"
                               (41)
201.57(a)(11) ...........  Adverse Reactions
                             • Moved "Most Common Adverse Reactions" from
                               "Warnings and Precautions" to a new heading:
                               "Adverse Reactions" (28)
                             • Revised the criteria used for determining which
                               adverse reactions to include in Highlights and that
                               the criteria used be specified (28)
                             • Revised to require that the adverse reactions
                               reporting contact statement be included under the
                               "Adverse Reactions" heading of Highlights; deleted
                               proposed §  201.57(c)(6)(v) that would have required
                               that this statement also be included in the FPI (28
                               and 30)
                             • Revised the requirements associated with the
                               adverse reactions reporting contact statement (31
                               and 32)
201.58 ..................  Waiver Provision
                             • Revised to make clear applicants can request
```

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
                            waivers from any requirement under § §  201.56,
                            201.57, and 201.80 (104)
-------------------------------------------------------------------------------
```

**\*3926 2. Full Prescribing Information: Contents**

Like the proposed rule, the final rule requires that the labeling for new and recently approved products include, after Highlights, a list of headings and subheadings contained in the FPI preceded by the numerical identifier for the heading or subheading (§ 201.57(b)). FDA has revised, on its own initiative, the heading for this portion of the labeling to read "Full Prescribing Information: Contents" (Contents) instead of proposed "Comprehensive Prescribing Information: Index." FDA made this change for editorial reasons to correctly reflect the function of the section. In response to comments, FDA added certain format requirements for the Contents (see table 3 and comments 37 and 101).

**\*3927 3. Full Prescribing Information**

FDA has revised, on its own initiative, the heading for this portion of the labeling to read "Full Prescribing Information" instead of proposed "Comprehensive Prescribing Information." FDA made this change to more accurately reflect that this portion of prescription drug labeling contains the information that FDA determined is necessary for the safe and effective use of the drug, but may not contain all known information about the drug (e.g., details of all clinical trials).

The final rule revises the requirements for the content and format of the FPI in former § § 201.56(d) and 201.57 for new and recently approved products (see tables 1 and 2). The final rule establishes minimum requirements for key graphic elements, including bold type, bullet points, type size, spacing and use of vertical and horizontal lines. The final rule requires the same sections for the labeling of these products as proposed except the major, substantive changes listed in table 4, which the agency made in response to comments and, in a few cases as noted, on its own initiative. In addition, FDA made revisions, none of which changed substantive requirements, to the "Dosage and Administration," "Indications and Usage," "Overdosage," "Clinical Pharmacology," and "Drug Interactions" sections. FDA made these changes in response to comments that requested FDA to clarify these proposed requirements.

In addition, FDA has revised, on its own initiative, "Contraindications" to emphasize that the section must only describe situations in which the potential risks associated with drug use outweigh any possible benefit. FDA believes that including relative or hypothetical hazards diminishes the usefulness of the section. For clarity and emphasis, FDA is requiring that "none" be stated when no contraindications are known. Similarly, FDA deleted, on its own initiative, proposed § 201.57(c)(9)(iii) because it was redundant with requirements in "Warnings and Precautions" and "Contraindications."

Table 4.--Substantive Changes From the Proposed Rule to the Final Rule: Full Prescribing Information

| 21 CFR Section in Final Rule | Description of Change From Proposed Rule |
| --- | --- |
| | See comment or section of this document (identified in parentheses) for more detailed information regarding the change. |
| 201.57(c)(3) | Dosage and Administration<br>• Revised to make clear that this section must include dosing recommendations based on clinical pharmacologic data, certain dosage modifications, and specified compliance information (51-54) |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
71 FR 3922-01                                                         Page 10
71 FR 3922-01, 2006 WL 160271 (F.R.)
(Cite as: 71 FR 3922)


201.57(c)(4) and
  201.57(c)(17) ...... How Supplied/Storage and Handling
                        • Reorganized information in proposed "How
                          Supplied/Storage and Handling" (§ 201.57(c)(4)) such
                          that the information is now contained in two sections:
                          § 201.57(c)(4) retitled "Dosage Forms and Strengths"
                          and "How Supplied/Storage and Handling" at §
                          201.57(c)(17) (41)
201.57(c)(7) .......... Adverse Reactions
                        • Moved the "Adverse Reactions" section (proposed §
                          201.57(c)(9)) to follow "Warnings and Precautions"
                          (38)
                        • Withdrew the proposed definition of adverse reaction
                          and retained the definition at former § 201.57(g)
                          (designated in this final rule at § 201.80(g)), with a
                          minor modification (68)
                        • Revised the requirements on how to classify and
                          categorize adverse reactions and how to describe
                          adverse reaction rates (71-75)
                        • Revised to require a description of the overall
                          adverse reaction profile based on entire safety
                          database (70 and 77)
201.57(c)(9) .......... Use in Specific Populations
                        • Withdrew the proposed warning statements at § §
                          201.57(c)(8)(i)(A)(4) and (c)(8)(i)(A)(5) for
                          pregnancy categories D and X and will continue to
                          require the warning statements at former § §
                          201.57(f)(6)(i)(d) and (f)(6)(i)(e) be used (66)
                        • Withdrew the proposed revisions for the "Nursing
                          Mothers" subsection at § 201.57(c)(8)(iii) and will
                          continue to use the language at former § 201.57(f)(8)
                          (66)
201.57(c)(13)(ii) and
  201.80(b)(2) ....... In Vitro Data for Anti-infectives
                        • Deferred action on proposed § § 201.57(c)(13)(ii) and
                          201.80(b)(2) that would have only permitted in vitro
                          data for anti-infective drugs not shown by adequate
                          and well-controlled studies to be pertinent to
                          clinical use be included in labeling if a waiver was
                          granted (81)
201.57(c)(18) and
  201.80(f)(2) ....... Patient Counseling Information
                        • Revised to require that the full text of FDA-approved
                          patient labeling either accompany labeling or be
                          reprinted at the end of the labeling and clarified the
                          type size requirements that apply (93 and 94)(see
                          table 7)
201.57(d)(6) .......... Font size
                        • Revised to require that font for trade labeling be a
                          minimum of 6-point type instead of 8-point type (102)
201.57(c)(16) and
  201.80(l) .......... References
                        • Clarified requirements for including a reference (89)
----------------------------------------------------------------------------
```

*3928 B. *Content and Format for Older Prescription Drug Products*

Like the proposed rule, the final rule redesignates former § 201.57 as § 201.80. New § 201.80 provides content and format requirements for labeling of older prescription drug products (older products) that are not subject to the labeling requirements at new § 201.57 (see tables 1 and 2).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 201.80 is the same as former § 201.57 with the following exceptions that are the same as the changes for new and more recently approved products:

• Modifications that help ensure that statements currently appearing in labeling for older products relating to effectiveness or dosage and administration are sufficiently supported (§ 201.80(c)(2)(i), (c)(2)(ii), (j), and (m)(1)).

• Deletion of proposed § 201.80(b)(2) regarding in vitro data for anti-infectives (see table 4 and comment 81).

• Deletion of "induced emesis" as an example of treatment procedures in the "Overdosage" section of labeling.

• Revisions that allow manufacturers the option of either reprinting the FDA-approved patient labeling immediately following the last section of the prescription drug labeling or having it accompany such labeling (§ 201.80(f)(2))(see table 4 and comment 93).

• Addition of the font size provision to redesignated § 201.80(f)(2) (on the agency's own initiative with modifications made in response to comments) (see table 4 and comments 93 and 94).

C. Content of Prescription Drug Product Labels

FDA has reconsidered its proposal to revise the requirements for the content of prescription drug product labels (proposed §§ 201.55 and 201.100(b)). In response to comments, FDA has decided to withdraw these proposed revisions at this time (see comments 106 and 107). The agency had proposed to move certain information about inactive ingredients and storage conditions from the product label to the prescription drug labeling and to remove the requirement to include the statement "See package insert for dosage information" on the product label in cases when it is currently required to be used. These proposed requirements (proposed § 201.57(c)(4)(v) and (c)(12)(i)(D)) were also withdrawn.

The agency intends to conduct a comprehensive evaluation of information required to be contained on product labels. If necessary, FDA will propose changes to these requirements after that evaluation has been completed.

III. Implementation

The final rule is effective June 30, 2006. The final rule has the same implementation plan as proposed for the revised labeling content and format requirements at §§ 201.56(d) and 201.57 for new and more recently approved products (see table 5). Manufacturers of older products that voluntarily elect to revise the format and content of their labeling to be consistent with §§ 201.56(d) and 201.57 may submit a supplement with proposed labeling at any time (see table 5).

Table 5.--Implementation Plan

| Applications (NDAs, BLAs, and Efficacy Supplements) Required to Conform to New Labeling Requirements | Time by Which Conforming Labeling Must Be Submitted to the Agency for Approval |
|---|---|
| Applications submitted on or after June 30, 2006 | Time of submission |
| Applications pending on June 30, 2006 and applications approved 0 to 1 year before June 30, 2006 | June 30, 2009 |
| Applications approved 1 to 2 years before June 30, 2006 | June 30, 2010 |
| Applications approved 2 to 3 years before June 30, 2006 | June 30, 2011 |
| Applications approved 3 to 4 years before June 30, 2006 | June 30, 2012 |
| Applications approved 4 to 5 years before June 30, 2006 | June 30, 2013 |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

71 FR 3922-01                                                           Page 12
71 FR 3922-01, 2006 WL 160271 (F.R.)
**(Cite as: 71 FR 3922)**

Applications approved more than 5 years before June 30,
  2006 .................................................... Voluntarily at any
                                                                         time
--------------------------------------------------------------------------------


  As indicated in the proposed rule, the implementation plan for revised labeling for
products approved or submitted for approval under an ANDA depends on the labeling of
the listed drug referenced in the ANDA. In accordance with § 314.94(a)(8) (21 CFR
314.94(a)(8)), the labeling of a drug product submitted for approval under an ANDA
must be the same as the labeling of the listed drug referenced in the ANDA, except
for changes required because of differences approved under a suitability petition (§
314.93 (21 CFR 314.93)) or because the drug product and the reference listed drug
are produced or distributed by different manufacturers.

  As the agency proposed (65 FR at 81099), the provisions requiring FDA-approved
patient labeling to accompany labeling (§ § 201.57(c)(18) and 201.80(f)(2) of the
final rule) will be implemented by June 30, 2007. The agency clarified this
provision at § § 201.57 and 201.56(e)(6).

IV. Overview of Agency Initiatives to Improve the Content and Format of Prescription
Drug Labeling

  The agency is engaged in a broad effort to improve the communication to health care
practitioners of information necessary for the safe and effective use of
prescription drugs. A major component of this effort is improvement of the content
and format of prescription drug labeling to make the information in labeling easier
for health care practitioners to access, read, and use.

  Elsewhere in this issue of the Federal Register, the agency is announcing the
availability of four guidance documents on content and format of labeling. [FN2]
These guidances are intended to assist manufacturers and FDA reviewers in developing
clear, concise, and *3929 accessible prescription drug labeling. The four guidances
are as follows:

  FN2 The agency announces the availability of guidances in the Federal Register.
Draft and final guidances for the Center for Drug Evaluation and Research (CDER)-
related information are posted on the Internet at http://
www.fda.gov/cder/guidance/index.htm. The Center for Biologics Evaluation and
Research (CBER)-related information is posted at http://
www.fda.gov/cber/guidelines.htm (21 U.S.C. 371(h), 21 CFR 10.115).

  1. A draft guidance entitled "Labeling for Human Prescription Drug and Biological
Products--Implementing the New Content and Format Requirements" (the new labeling
format guidance). This guidance, which is intended to assist manufacturers in
complying with the provisions of this final rule, includes, among other things, how
to determine what information from the FPI should be included in Highlights.

  2. A draft guidance entitled "Warnings and Precautions, Contraindications, and
Boxed Warning Sections of Labeling for Human Prescription Drug and Biological
Products--Content and Format" (the "Warnings and Precautions" section guidance).

  3. A guidance entitled "Adverse Reactions Section of Labeling for Human
Prescription Drug and Biological Products--Content and Format " (the "Adverse
Reactions" section guidance). The agency issued a draft of this guidance on June 21,
2000 (65 FR 38563).

  4. A guidance entitled "Clinical Studies Section of Labeling for Prescription Drug
and Biological Products--Content and Format" (the "Clinical Studies" section
guidance). The agency issued a draft of this guidance on July 9, 2001 (66 FR 35797).

  The agency is also developing two additional guidances on the content and format of
specific sections of labeling--the "Clinical Pharmacology" and "Dosage and

71 FR 3922-01                                                          Page 13
71 FR 3922-01, 2006 WL 160271 (F.R.)
**(Cite as: 71 FR 3922)**

Administration" sections. In the future, the agency may develop guidance for additional sections of prescription drug labeling, if necessary.

  FDA has undertaken additional rulemaking related to prescription drug labeling. The agency published a final rule in the Federal Register entitled "Labeling Requirements for Systemic Antibacterial Drug Products Intended for Human Use" that became effective on February 4, 2004 (68 FR 6062, February 6, 2003). This rule requires that the labeling for all systemic antibacterial drug products (i.e., antibiotics and their synthetic counterparts) intended for human use include certain statements about using antibiotics in a way that will reduce the development of drug-resistant bacterial strains. The rule encourages health care practitioners: (1) To prescribe systemic antibacterial drugs only when clinically indicated and (2) to counsel their patients about the proper use of such drugs and the importance of taking them exactly as directed.

  The agency is also engaged in an effort to revise the regulations concerning the content and format of the "Pregnancy" subsection of prescription drug labeling (see the notice of a 21 CFR part 15 hearing to discuss the pregnancy category requirements (62 FR 41061, July 31, 1997) and the notice of a public advisory committee meeting to discuss possible changes to pregnancy labeling (64 FR 23340, April 30, 1999)).

V. Implications of This Final Rule for the Electronic Labeling Initiative

  Developing standards for the conversion of paper labeling to an electronic format is a high priority for the agency. On December 11, 2003, FDA published its final rule in the Federal Register entitled "Requirements for Submission of Labeling for Human Prescription Drugs and Biologics in Electronic Format" (68 FR 69009). The final rule requires the content of prescription drug labeling, including text, tables, and figures, to be submitted to FDA in an electronic format that the agency can process, review, and archive.

  The agency views this final rule on the content and format of labeling as an essential step towards the success of its electronic labeling initiative. The labeling format required by this rule for new and more recently approved products should facilitate transition to an electronic format. The agency believes that an electronic version of labeling in the new format, particularly Highlights and Contents, will significantly expand health care practitioners' ability to access information in prescription drug labeling, enable them to rapidly obtain answers to questions for a range of drug products, and ultimately facilitate the development of a comprehensive repository for drug labeling. For example, FDA envisions that an electronic version of the new format will eventually enable health care practitioners to quickly access labeling information for all drugs in a pharmacologic or therapeutic class with a single electronic query.

  FDA realizes that this final rule will affect the agency's existing electronic labeling requirements and guidances and will work to ensure consistency with the electronic labeling initiative. [FN3] The agency believes the electronic labeling initiative, in conjunction with this new format for labeling described in this final rule, could dramatically improve the way practitioners obtain information about prescription drugs and, as a consequence, significantly improve patient care.

   FN3 See http://www.fda.gov/cder/guidance/index.htm under "Electronic Submissions" and http://www.fda.gov/cber/guidelines.htm for the most recent guidances on submission of labeling in an electronic format for drug and biological products, respectively.

VI. Comments on the Proposed Rule

  The agency received 97 comments on the December 22, 2000, proposal. Comments were received from prescription drug manufacturers and related companies; trade organizations representing prescription drug manufacturers and other interested parties; professional associations and organizations representing health care practitioners; health care and consumer advocacy organizations; individual

                ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.