UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| This document relates to CASE NO. 2:05CV2524 | * | JUDGE FALLON |
| ANTHONY WAYNE DEDRICK, an Individual, | * | MAG. JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

Motion in Limine No. 7

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING THE NUMBER OF HEART ATTACKS IN THE UNITED STATES OF AMERICA**

COMES NOW, Plaintiff Anthony Dedrick, by and through his undersigned counsel, and files this Motion in Limine to exclude evidence regarding the number of heart attacks occurring in the United States of America from the years 1999 to 2004.

Plaintiff anticipates that Merck intends to introduce evidence that the number of heart attacks occurring in the United States did not increase during the years in which Vioxx was sold in the United States. In other words, Plaintiff anticipates that Merck will offer some form of proof

1

comparing the number of heart attacks occurring in the United States prior to 1999 to the number of heart attacks occurring in the United States between 1999 and 2004 (the time period during which Vioxx was sold in the United States). Such information should be excluded for the following reasons: 1) the information is irrelevant; 2) the information is inadmissible hearsay, and 3) the prejudicial effect of the evidence would substantially outweigh any potentially probative value.

### I. Evidence of the Total Number of Heart Attacks in the United States Is Irrelevant.

Based on Merck's conduct in previous MDL trials, Plaintiff anticipates that Merck will attempt to offer unreliable statistics, reported from random sources, compiled into a comparative survey in an effort to prove an immaterial fact – the number of heart attacks occurring the in the United States. Statistical evidence suggesting that the number of heart attacks in the United States did not increase between 1999 and 2004 while Vioxx was sold in the United States is irrelevant to the issues in this case and should be excluded from the trial of this case. The offered evidence is irrelevant because the pre-1999 facts, circumstances and conditions are neither similar to the instant facts nor the time period while Vioxx was sold in the United States (1999 - 2004).

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 Merck's comparative – the number of heart attacks prior to Vioxx being on the market versus the number while Vioxx was on the market – is neither indicative of whether Vioxx caused Mr. Dedrick's heart attack nor indicative of a rise in the number of heart attacks across the nation. Essentially, Merck is attempting to

prove the absence of evidence – an absence in the increased number of heart attacks between 1999 and 2004. In order for the evidence of the absence of other similar events to be relevant for any purpose, Merck must show that during the period involved the conditions were substantially similar to those prevailing at the time of Mr. Dedrick's heart attack. Courts have routinely excluded such evidence because of the failure to establish that conditions at the time in question were substantially the same as the period when plaintiff was injured. See generally 10 A.L.R. 5th 371; see also *Chesapeake & O.R. Co. v. Newman,* 243 F.2d 804 (6th Cir. 1957) (The court excluded testimony regarding the absence of evidence relating to claims arising in the previous 32 years that the witness was employed by the defendant.).

A myriad of factors contribute to the number of heart attacks which occur in the United States each year. Over the last 7 years, dramatic improvements have been made in the treatment of high cholesterol due to the use of statins as well as other treatments of contributors to coronary artery disease. Merck cannot prove that the conditions involved in the pre-1999 data are substantially similar to the conditions while Vioxx was on the market. The reason being, the variables are uncontrolled, different and constantly changing. Medical research, scientists, doctors and others in the health care profession are constantly seeking innovative and new ways to prohibit, prevent and treat heat attacks. Reducing the number of heart attacks in the United States has been a major priority of the medical community for years. As a result of the efforts of those in the scientific, medical and health care communities, each year heart attacks are prevented and treated. Between 1999 and 2004, while Vioxx was on the market, science and medicine no doubt improved and contributed to the successful prevention of heart attacks. Moreover, new drugs like statins, which decrease the likelihood of heart attacks, were introduced

3

to the market. Thus, while many heart attacks were prevented for various and changing reasons, others were caused by various and changing reasons. Any evidence suggesting that the number of heart attacks did not increase while Vioxx was sold in the United States could only be admissible if the variables were controlled. Only if the science, medicine, research and public awareness remained constant and no new pharmaceutical drugs were introduced to the market after Vioxx was approved for use could the information the Defendant seeks to introduce even be potentially admissible.

In addition to the ever-changing and uncontrolled variables related to heart attacks, the demographics involved in the comparative are dissimilar. Vioxx, although widely prescribed, was not widely used by a randomized, cross-section of America. Instead, Vioxx was used by a disproportionately large number of older people suffering from Osteoarthritis (OA) and Rheumatoid Arthritis (RA). Traditionally, older members of the population report a higher incidence rate of heart attacks. That is to say, Vioxx was used by a disproportionately large demographic of people that already reported a higher incidence rate of heart attacks. Any comparison is incongruent. Juxtaposing the entire number of heart attacks reported throughout the United States prior to 1999 with the number of heart attacks occurring after a pharmaceutical drug has been introduced and consumed by a smaller subsection of that population, under different conditions, in an ever-changing environment, is too dissimilar to be probative. Such information is unreliable, speculative and confusing. Therefore, any evidence relating to this issue should be excluded from the trial of this case.

## II. The Prejudicial Effect of the Evidence of the Number of Heart Attacks Substantially Outweighs Its Probative Value

Assuming that Merck constructs a viable argument that the information offered is relevant, the information should be excluded because any potentially probative value is substantially outweighed by all of the concerns outlined in Rule 403, including the danger of unfair prejudice, confusion of the issues, and misleading the jury, etc. The Court has wide discretion in excluding evidence which is relevant but which may tend to confuse issues or inflame the jury. *U. S. v. Ravich*, 421 F.2d 1196 (2nd Cir.), cert. denied 400 U.S. 834 (1970).

Moreover, the introduction of such information will needlessly waste time and confuse jurors. The number of heart attacks arbitrarily reported to various entities and amassed into random groups of data is immaterial to the claims raised by the Plaintiff. The real issue is: Did Vioxx cause Mr. Dedrick's heart attack? Unreliable statistics, from random sources, compiled into a comparative survey, do not help prove or disprove any material fact in issue. On the contrary, introduction of such information will needlessly waste time and only confuses jurors.

For the foregoing reasons, Plaintiff urges the Court to grant Plaintiff's motion and preclude from evidence in this case any reference, comment, document or inference regarding the number of heart attacks occurring in the United States of America during the time that Vioxx was being marketed.

Date:  October 27, 2006

                                  Respectfully submitted,

                              By  /s/ P. Leigh O'Dell
                              Andy D. Birchfield, Jr.
                              P. Leigh O'Dell
                              BEASLEY, ALLEN, CROW,
                              METHVIN, PORTIS & MILES, P.C.
                              P.O. Box 4160
                              234 Commerce Street
                              Montgomery, Alabama  36103-4160
                              Telephone:  (334) 269-2343
                              Facsimile: (334) 954-7555

                              Counsel for Plaintiff

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiff's Motion in Limine to Preclude Defendant Merck from Referring to Mr. Dedrick's Left Anterior Descending Coronary Artery as a "Widow-Maker" has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of October, 2006.

*P. Leigh O'Dell*
P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.