## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION: | | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES: | | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### NOTICE OF FRE 30(B)(6) CORPORATE DEPOSITION (ORAL AND VIDEOTAPED)

TO:  **Merck & Co, Inc.**
**Through**
**Phillip A. Wittmann, Esq.**
**STONE, PIGMAN**
**546 Carondelet Street**
**New Orleans, Louisiana 70130-3588**
**LIAISON COUNSEL FOR DEFENDANTS**

PLEASE TAKE NOTICE that pursuant to Rule 26 and 30(b)(6) of the Federal Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the Plaintiffs Steering Committee in the MDL, will take the deposition of Merck & Co., Inc. ("Merck") on November 20, 2006, at 10:00 o'clock a.m. at the offices of Herman, Herman, Katz & Cotlar, LLP, 201 St. Charles Avenue, Suite 4310, New Orleans, Louisiana 70170 or at another location mutually agreed upon by the parties.  Pursuant to Fed. R. Civ. P. 30(b)(6), Merck shall designate and produce a designated representative or representatives, as may be required, to testify on behalf of Merck concerning the topics identified herein.

Statement of Deposition Procedures - The deposition shall be taken pursuant to Pre-Trial Order No. 9 (Deposition Guidelines) entered April 15, 2005.  The terms of such order are incorporated into this Notice.

| | |
|---|---|
| Primary Examiner: | A member of the PSC or its desigee |
| Videotaped Deposition: | Yes |
| Call-In Number: | 866-261-4013, Conf. Id. No. 2728103 |

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

## I. INSTRUCTIONS AND DEFINITIONS

1. **"And"** as well as **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any matters which might otherwise be construed to be outside of the scope.

2. **"Business Documents"** as used herein shall mean the writings or documents evidencing the formation of each corporate or other business entity, its business purpose and its ongoing organization, including but not limited to articles, by-laws, annual reports, merger agreements, consolidation agreements, share exchange agreements, dissolution agreements, liquidation agreements, reorganization agreements, receivership agreements, transfer of assets or liability agreements, management agreements, and operating agreements.

3. **"Communication"** means any transmission from one person to another, or in the presence of another, whether by written, oral, telephonic, electronic or by any other means and includes any records of such transmission.

4. **"Computer"** means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop

computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

5.    **"Computer system,"** when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including operating system, private- and custom-developed applications, commercial applications, and/or shareware.

6.    **"Defendant"** as used herein shall mean each of the named defendants in this matter.

7.    **"Documents"** as used in this Request is coextensive with the meaning of the terms "documents" and "tangible things" in FRCP 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "documents" and "tangible things" under FRCP 34.  Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings or

communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

8.   **"Electronic data"** or "data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.   Electronic data includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said

electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal.  The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

9.     **"Electronic media"** means any magnetic or other storage media device used to record electronic data.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

10.    **"Financial records"** means all documents and statements containing information about the financial condition, operating success, and future potential of the business enterprise which include but are not limited to financial documents and statements such as balance sheets, income statements, statements of retained earnings, statements of shareholder's equity, statement of changes in financial position, annual reports, accountant work papers, audits, SEC filings, tax returns, and financial projections.

11.    **"Identify"** or **"identity"** with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

12.    **"License Agreement"** as used herein shall mean the right, agreement, authority or granting of ownership to use, borrow, loan, or incorporate any Trademark, Trade name or corporate or other business enterprise logo or designation of another.

13.    **"Merck"** means defendant Merck & Co., Inc., and any of its subsidiaries, affiliates, officers, agents, attorneys, employees, representatives, or others acting on its behalf.

14.    **"Network"** means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them.   For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

15.    **"Notification"** includes communication, documents and computer generated or assisted methods of transmitting information.

16.    **"Or"** and **"and"** will be used interchangeably.

17.    **"Person"** means natural person, as well as corporate and/or governmental entity.

18.    **"Photographs"** means any and all positive and negatives of any pictures as well as any film, microfilm, microfiche or any video used to obtain representations of objects by means of chemical, action of light, digital technology or other kinds of radiant energy on special treated surfaces or films.

19.    **"Plaintiff"** as used herein shall mean each of the named plaintiffs in this matter.

20.     **"Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern"** shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.  The term **"relate to"** including but not limited to, its various forms such as **"relating to"** shall mean, consist of, refer to, reflect or be in anyway relevant to the matter.

21.     **"Request for Document"** or **"Records"** refers to originals unless otherwise specified, and for copies when originals are not available.  The Request includes all documents and records in the actual or constructive possession, custody or control of you or your agents or representatives.

22.     **"Rotation"** means any plan, policy or procedure that involves the re-use of an electronic media device after it has been used for backup, archival, or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to its re-use.

23.     **"Trademark"** shall mean any work, name, symbol or device or any combination thereof adapted and used by a person or business entity to identify goods made or sold by him and to distinguish them from goods made or sold by others.

24.     **"Trade name"** shall mean a word, name, symbol, device or any combination thereof used by a person or business entity to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others.

25.     **"Vioxx"** means the drug Rofecoxib, also known by the brand name Vioxx or Vioxx, and

any predecessor or non-final derivation of the drug that later became Vioxx.

26.     **"You"** or **"Your"** shall refer to the person, firm, entity or entities to whom this document

is directed, or to any party, their officers, agents, servants, employees and attorneys, and

anyone acting in active concert or participation with them.

27.     With respect to the identification or production of any documents or information which

you claim to be privileged, a statement shall be provided setting forth as to each such

document:

a)   the name of the sender, if any, of the document;
b)   the name of the author of the document;
c)   name of the person, if any, to whom the document and copies were sent;
d)   a description of the nature and the subject matter of the document;
e)   the statute, rule or decision which is claimed to give rise to the privilege;
f)   the last known custodian of the document and the present location of the document;
g)   a description of any attachments to the document;
h)   the number of pages comprising the document;
i)   whether the document was handwritten, typewritten, or otherwise prepared; and
j)   any other information which is useful in identifying or is necessary to identify the document.

28.     Whenever appropriate, the singular form of a word shall be interpreted in the plural and

vice versa.

29.     Unless otherwise indicated, the relevant time period for the information sought is 1980 to

present.

30.     In responding to this request, if applicable, furnish documents as they are kept in the

usual course of business or organize them to correspond with the categories of this

request.

31.    In responding to this request, for each document furnished, you are requested to produce the document as it is kept in its normal course of business <u>and</u> any English translations or interpretations of said document or thing.

32.    The instructions and definitions set forth herein are expressly incorporated by reference and made a part of each of the requests set forth below.

## II. DEPOSITION SUBJECT MATTER

Pursuant to Rule 30(b)(6), Merck shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

1.    The sale/purchase and/or underwriting of policies of insurance to Merck, Merck's subsidiaries, and/or other entity where Merck and/or Merck subsidiaries appears as an insured.

2.    All policies of insurance issued to Merck and/or Merck subsidiaries, or as to which Merck and/or Merck subsidiaries are named as additional named insured(s), including:

    a.    The dates of issue and effective dates of any such policies;

    b.    The types of policies (e.g. Commercial General Liability (CGL), Completed Products Hazards, Professional Liability, etc.);

    c.    The limits of insurance provided under any such policies;

    d.    Any modifications and/or endorsements to any such policies during the policy period;

    e.    The time and place of delivery of any such policies.

3.    The identify of  corporate officers, managers, claims handling personnel, or any other personnel, either directly employed by Merck and/or its subsidiaries or acting on its

behalf, who were and are responsible for handling any and all insurance matters relating to Vioxx.

4.    Any notification(s) of insurance claims, tender of defenses, and/or requests/claims for indemnity, by Merck, its subsidiaries, and/or anyone acting on behalf of Merck and/or its subsidiaries, to its insurers with respect to any and all insurance claims relating to Vioxx, including:

     a.    the time, place, and manner of notification;

     b.    the person(s) providing the notice on behalf of Merck;

     c.    any and all ongoing procedures for notifying of any such claims;

     d.    the identity of any person or person(s) responsible for providing notice of claims relating to the ingestion of Vioxx.

5.    Any investigation by Merck or anyone acting on Merck's behalf into any insurance matters relating to Vioxx, including the extent of the investigation; any materials reviewed in the course of any such investigation; the identities of any persons conducting any such investigation; any and all conclusions drawn as a result of any such investigation, including but not limited to any determinations as the availability of coverage.

6.    Any determinations with respect to the availability of insurance or indemnity coverage under any policy issued to Merck or its subsidiaries for any insurance matters relating to Vioxx, including the factual bases for any such determination; the identities of persons who made any such determination; and any communications with with respect to any such determination.

7.    Any coverage defenses asserted by your insurers and/or anyone acting on insurer's behalf

that precludes or limits coverage for claims arising from ingestion of Vioxx under any policies issued to Merck and/or its subsidiaries or on which Merck and/or its subsidiaries appear as additional named insured(s), including:

a.    any coverage exclusions and/or endorsements to any such policy;

b.    any assertion that Merck, its subsidiaries and/or any entity insured under a policy breached any obligation under the policy, which breach precludes and/or limits coverage for claims relating to Vioxx;

c.    any assertion that any claims relating to Vioxx do not fall within the scope of coverage afforded by any policy of insurance;

d.    The factual bases for any of the foregoing assertions.

8.    The drafting and contents of all correspondence between insurers and Merck, its subsidiaries, and/or anyone acting on behalf of Merck and/or its subsidiaries with respect to the availability of coverage under any policies for claims relating to Vioxx, including any "reservation of rights" letters.

9.    The identities of any insurance agents and/or brokers (including intermediate or third party brokers) involved in the placement of any policies of insurance to Merck and/or its subsidiaries or as to which Merck and/or its subsidiaries appear as additional named insured(s).

10.   All communications between insurer's behalf and Merck, its subsidiaries, or anyone acting on their behalf with respect to the scope of coverage offered by any policy issued to Merck and/or its subsidiaries or as to which Merck and/or its subsidiaries appear as additional named insured(s), whether such communications occurred before, at the time of, or after placement of any such policies.

11.     The identities of any personnel employed by Merck and/or its subsidiaries or acting on their behalf dealing with respect to:

    a.     The placement and acquisition of insurance policies insuring Merck and/or its subsidiaries or as to which Merck and/or its subsidiaries appear as additional named insured(s); and

    b.     Claims handling with respect to any claims relating to Vioxx.

12.     Any and all loss control investigations, site visits, inspections, and/or reports conducted and/or prepared in connection with the issuance or placement of policies of insurance to Merck, its subsidiaries, and/or any entity insured under a policy as to which Merck and/or its subsidiaries appear as an additional named insured, particularly as related to the development, research, sale, distribution, advertisement, and/or marketing of pharmaceutical products, including but not limited to Vioxx.   Excluded from this deposition topic are any loss control measures relating to protection of Merck employees from hazards associated with the operations of Merck and/or its subsidiaries (e.g. premises liability, manufacturing hazards, shipping hazards, etc.)  Expressly included in the scope of this deposition topic, however, is any such information as it relates to conduct of research studies and protection of human research subjects.

13.     Any communications with any state insurance commissioner, state attorney general, and/or any other state insurance regulatory body regarding any insurance policy term(s) relating to coverage for claims relating to Vioxx.

14.     Insurance coverage which may cover any personal injury claim against Defendant, Merck & Co., Inc. for Vioxx related claims.

15.     All polices that may afford Merck & Co., Inc. coverage for Vioxx related claims.

16. All reservation of rights issued by insurers in connection with claims made against Merck & Co., Inc. regarding any and all Vioxx related claims.

17. All insurance arbitrations or similar type proceedings relating to insurance coverage for any Vioxx related claims or settlements.

18. Any subpoena received by Merck from the United States Department Of Justice for documents relating to Vioxx.

19. All investigations of Merck by the United States Securities and Exchange Commission.

20. All investigations by Risk Managers and/or claims handling personnel for Merck relating to Vioxx from 1990 to present.

### III. REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 30 & 45 of the Federal Rules of Civil Procedure, plaintiffs request that Merck produce each of the documents and other things from which information can be obtained, set forth in the Schedule of Documents and Other Things to Be Produced. The documents and other things shall be produced for inspection and copying at the office of Herman, Herman, Katz & Cotlar, L.L.P., 201 St. Charles Avenue, Suite 4310, New Orleans, Louisiana  70170 prior to the deposition, at the place noted above or as mutually agreed upon or as ordered by the Court.

### SCHEDULE OF DOCUMENTS & OTHER THINGS TO BE PRODUCED

1. All policies of insurance issued to Merck and/or Merck subsidiaries, or as to which Merck and/or Merck subsidiaries are named as an insured or additional named insured(s) from the year 1990 to the present.

2. All polices of insurance that may afford Merck coverage for Vioxx related claims from the year 1990 to the present.

3.      All documents, including but not limited to organizational charts, identifying your corporate officers, managers, claims handling personnel, or any other personnel, either directly employed by Merck or acting on your behalf, who were and are responsible for handling any and all insurance claims relating to Vioxx, including their titles, duties and dates of such responsibility from the year 1990 to the present.

4.      All documents regarding notification(s) of claims, tender of defenses, and/or requests/claims for indemnity, by Merck, its subsidiaries, and/or anyone acting on behalf of Merck and/or its subsidiaries, with respect to any and all insurance matters relating to Vioxx.

5.      All documents regarding any investigation by Merck or anyone acting on your behalf into any insurance matters relating to Vioxx.

6.      All materials reviewed by Merck and/or anyone acting on Merck's behalf in connection with any investigation into insurance matters relating to Vioxx.

7.      All documents, including without limitation reports, memoranda, and/or correspondence reflecting any coverage determinations with respect to claims against Merck relating to Vioxx.

8.       All documents which reflect the factual bases for any coverage defenses asserted by any insurance carrier with respect to claims made against or by Merck relating to Vioxx.

9.      All documents reflecting correspondence between any insurer and/or anyone acting on an insurer's behalf and Merck, its subsidiaries, and/or anyone acting on behalf of Merck and/or its subsidiaries with respect to the availability of coverage under any policies of insurance for claims relating to Vioxx.

10. Any documents identifying any insurance agents and/or brokers (including intermediate or third party brokers) involved in the placement of any policies of insurance for Merck and/or its subsidiaries or as to which Merck and/or its subsidiaries appear as additional named insured(s) and which applies to Vioxx claims.

11. All documents reflecting scope of coverage offered by any insurance policy issued to Merck and/or its subsidiaries or as to which Merck and/or its subsidiaries appear as additional named insured(s), whether such communications occurred before, at the time of, or after placement of any such policies and which relates to any Vioxx claim.

12. All claims files pertaining to insurance claims relating to Vioxx.

13. All documents relating to loss control investigations, site visits, inspections, including any loss control or site inspection reports, conducted in connection with the issuance of policies of insurance to Merck, its subsidiaries, and/or any entity insured under a policy as to which Merck and/or its subsidiaries appear as an additional named insured, particularly as related to the development, research, sale, distribution, advertisement, and/or marketing of pharmaceutical products, including but not limited to Vioxx. Excluded from this request for production are any such documents relating to loss control efforts in connection with protection of Merck employees from hazards associated with the operations of Merck and/or its subsidiaries (e.g. premises liability, manufacturing hazards, shipping hazards, etc.). Expressly included in the scope of this document request, however, are any documents pertaining to any such information as it relates to conduct of research studies and protection of human research subjects.

14.   Any documents reflecting communications between Merck and any state insurance commissioner, state attorney general, and/or any other state insurance regulatory body regarding any policy term(s) for insurance that may provide coverage relating to Vioxx.

15    All documents relating in any way to reservations of rights from any insurance carrier issued to Merck regarding Vioxx related claims.

16.   All insurance arbitration materials and documents relating to Vioxx.

17.   All materials and documents responsive to any and all subpoenas received by Merck from the United States Department Of Justice relating in any way to Vioxx.

18.   All materials and documents relating to any and all investigations of Merck by the United States Securities and Exchange Commission.

19.   All documents which identify Risk Managers and/or claims handling personnel for Merck relating to Vioxx from 1990 to present.

20.   All documents in the possession of Merck's Risk Manager and/or Risk Management Department and/or claims handling personnel relating to Vioxx from 1990 to present.

21.   All documents which identify insurers that provide or may provide insurance to cover claims made against Merck relating to Vioxx from 1990 to present.

22. All documents which relate, in any way, to arbitrations, including the results of such arbitrations, between Merck and any of its insurers relating in any way to Vioxx related claims.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024

Temporary Office:

Place St. Charles, Suite 4310
New Orleans, LA  70170
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH:  (318) 487-9874<br>FAX:  (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>FAX:  (504) 528-9973 |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH:  (850) 435-7000<br>FAX:  (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415)-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH:  (215) 772-1000<br>FAX:  (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292 |

| | |
|---|---|
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Shelly Sanford, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

### PLAINTIFFS' STEERING COMMITTEE

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of October, 2006.

**Leonard A. Davis** (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, L.L.P.*
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
ldavis@hhkc.com