## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | **MDL DOCKET No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L - DIVISION 3** |
| | * | |
| **This document relates to** | * | **JUDGE FALLON** |
| **CASE NO. 2:05CV2524** | * | |
| | * | |
| **ANTHONY WAYNE DEDRICK,** | * | **MAG. JUDGE KNOWLES** |
| an Individual, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.,** | * | |
| | * | |
| **Defendant.** | * | |

---

### Plaintiff's Objections and Counter-Designations to Defendant's Designations of Deposition Testimony of John McPherson, M.D.

---

Plaintiff, Anthony Wayne Dedrick, by and through his attorneys, hereby submits the following deposition testimony for the Court's consideration and pre-trial rulings:

1. Plaintiff's Objections to Defendant's Affirmative Designations of Deposition Testimony of John McPherson, M.D. (Ex. "A"); and

2. Plaintiff's Counter-Designations of Deposition Testimony of John McPherson, M.D. (Ex. "B").

Plaintiff reserves the right to supplement or amend his objections or counter-designations, withdraw any testimony counter-designated, and make other changes.

Plaintiff also reserves the right to supplement or amend his objections and counter-designations

based upon any ruling of the Court or any other court decisions that affect the scope of evidence in this trial, including rulings on its motions *in limine*.  Plaintiff reserves the right to also counter-designate any testimony designated by Defendant in the event it is not offered by Defendant.

In preparing its objections and counter-designations, Plaintiff attempted to respond to the testimony designated by Defendant even though much of it is inadmissible, objectionable and/or pertains to topics that arguably should be ultimately excluded from evidence at trial.  By so designating, Plaintiff does not intend to waive any of its objections to deposition testimony, exhibits, or other evidence or argument.  By designating this testimony, Plaintiff does not waive his right to object to or move to exclude any documents or testimony that Defendant Merck & Co., Inc. may offer at trial.

Plaintiff reserves the right to make additional completeness designations upon receipt of any of Merck's final designations or counter-designations.

Respectfully submitted this 2⁴ᵗʰ day of October, 2006.

<br>

ANDY BIRCHFIELD
P. LEIGH O'DELL
Attorney for Plaintiff
*BEASLEY, ALLEN, CROW,*
*METHVIN, PORTIS & MILES, P.C.*
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343 telephone
(334) 954-7555 facsimile

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**Plaintiffs' Liaison Counsel**

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Objections and Counter-Designations to Defendant's Designations of Deposition Testimony of John McPherson, M.D. has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this _27th_ day of October, 2006.

P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| [6:11] - [14:20] 10/24/2006 McPherson, John 9-12-2006 | |
| * Defendant's Affirmative Depo Designations | |
| page 6<br>11   Q.   Dr. McPherson, we've never met before<br>12  today; is that right?<br>13   A.   Correct. | |
| 14   Q.   Have you had your deposition taken<br>15  before?<br>16   A.   Yes.<br>17   Q.   So you know the procedures generally?<br>18   A.   Uh-huh, yes.<br>19   Q.   Obviously, there's some ground rules.<br>20  If -- if you ever need me to re-ask or rephrase my<br>21  question because you don't understand it, will you<br>22  just agree with me that you'll do that?<br>23   A.   Yes.<br>24   Q.   And if you need to take a break for<br>25  whatever reason, if it's a patient or just you need<br>page 7<br>1  a break -- it's not an endurance contest, so feel<br>2  free to tell me, and we'll be happy to take a<br>3  break, okay?<br>4   A.   Yes. | PI's Obj.:  R. 401, R. 402. |
| 5   Q.   And where are we today?<br>6   A.   We're in my office.<br>7   Q.   And your office is in -- is it The Heart<br>8  Institute?<br>9   A.   It's The Heart Group --<br>10   Q.   Okay.<br>11   A.   -- at the St. Thomas Heart Institute.<br>12   Q.   And this is where you practice<br>13  cardiology every day?<br>14   A.   Yes.<br>15   Q.   And you're an interventional<br>16  cardiologist; is that right?<br>17   A.   Correct.<br>18   Q.   Could you explain to the jury what an<br>19  interventional cardiologist is?<br>20   A.   An interventional cardiologist is a<br>21  cardiologist who also specializes in performing<br>22  catheter-based interventions to work on the<br>23  coronary arteries.<br>24   Q.   And when you say a catheter-based<br>25  procedure, are you talking about like a cardiac<br>page 8<br>1  catheterization?<br>2   A.   Correct.<br>3   Q.   And a cardiac catheterization is a | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4  procedure you use to actually go in through a vein<br>5  or artery and actually look at the heart; is that<br>6  right?<br>7     A.    Not exactly.<br>8     Q.    Can you explain to the jury what that<br>9  is?<br>10    A.    A cardiac catheterization is when you<br>11  put a catheter into either a vein or an artery and<br>12  you either measure pressures inside the heart or<br>13  perform an angiogram of the arteries.<br>14    Q.    And what is an angiogram?<br>15    A.    It's a radiologic movie of the coronary<br>16  arteries when you inject contrast into the arteries<br>17  to look for obstructions.<br>18    Q.    So when you do a cardiac<br>19  catheterization, you can actually see the arteries<br>20  and the heart or the inside of the heart; is that<br>21  right?<br>22    A.    You see an outline of the arteries.<br>23    Q.    And what's the purpose of doing a<br>24  cardiac catheterization?<br>25    A.    There are many purposes.<br>page 9<br>1     Q.    Can you go through those with the jury,<br>2  please?<br>3     A.    The most common purpose is to look for<br>4  an obstruction in the coronary artery that may be<br>5  restricting blood flow to the heart.  Another<br>6  reason would be to look for problems with the<br>7  patient's heart valves, with pressures, to diagnose<br>8  congestive heart failure, to diagnose the cause of<br>9  somebody whose heart's not pumping normally.<br>10    Q.    And how many cardiac catheterizations do<br>11  you either perform or read for purposes of treating<br>12  your patients each year, ballpark?<br>13    A.    Approximately a thousand.<br>14    Q.    Okay.  So is that one of your<br>15  specialties?<br>16    A.    Yes.<br>17    Q.    Could you briefly describe your<br>18  educational background and training?<br>19    A.    When do you want me to start?<br>20    Q.    Let's start with your undergraduate<br>21  degree and move forward from there.<br>22    A.    I went to college at Princeton<br>23  University in Princeton, New Jersey.  I went to<br>24  medical school right after college at the<br>25  University of California in Los Angeles.  I did my<br>page 10<br>1  residency in internal medicine at Johns Hopkins<br>2  Hospital in Baltimore.  And I did my cardiology<br>3  training at the University of Virginia in | |

## Dedrick v. Merck Co., Inc.
### Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4 Charlottesville.  And I did my interventional<br>5 cardiology training also at University of Virginia.<br>6     Q.    Are you board certified?<br>7     A.    Yes.<br>8     Q.    In -- in multiple specialties or in how<br>9 many specialties?<br>10     A.    I'm board -- I'm board certified in<br>11 internal medicine and in subspecialties:<br>12 Cardiovascular medicine and interventional<br>13 cardiology.<br>14     Q.    And what does it take to be board<br>15 certified in that speciality?<br>16     A.    You have to complete an appropriate<br>17 training program, as designated by the board, and<br>18 then pass a written examination.<br>19     Q.    And -- and you've done both of those<br>20 things in connection with your board<br>21 certifications?<br>22     A.    Correct.<br>23     Q.    And do you have to keep current, so to<br>24 speak, in order to be board certified?<br>25     A.    You have to recertify in ten years --<br>page 11<br>1 every ten years.<br>2     Q.    And when did you move to Tennessee?<br>3     A.    2000.<br>4     Q.    Did you practice medicine elsewhere<br>5 before that time, or was that during your<br>6 fellowship period?<br>7     A.    I moved here from Charlottesville after<br>8 completing my interventional cardiology fellowship.<br>9     Q.    So immediately after completing your<br>10 last fellowship, you moved to Tennessee?<br>11     A.    Correct.<br>12     Q.    And since that time, have you practiced<br>13 here?<br>14     A.    Yes.<br>15     Q.    In this office?<br>16     A.    Yes.<br>17     Q.    Treating patients much like Mr. Dedrick?<br>18     A.    Yes.<br>19     Q.    And is this the only hospital -- that<br>20 is, St. Thomas Hospital -- where you have<br>21 privileges?<br>22     A.    No.<br>23     Q.    How many hospitals do you have<br>24 privileges at? | |
| 25     A.    I have privileges at St. Thomas;<br>page 12<br>1 Centennial Medical Center in Nashville, Crockett<br>2 Hospital in Lawrenceburg, Tennessee; Marshall<br>3 Medical Center in Lewisburg, Tennessee. | Pl's Obj.:  R. 401, R. 402. |

### Dedrick v. Merck Co., Inc.
### Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4    Q.    How long have you been treating patients<br>5  with cardiovascular disease?<br>6    A.    I've been in private practice for six<br>7  years. | Pl's Obj.:  Asked and answered. |
| 8    Q.    I assume that you would agree that<br>9  cardiovascular disease is a serious health problem<br>10  in the United States?<br>11    A.    Yes.<br>12    Q.    Is it -- or would you agree that it is<br>13  the leading cause of death in the United States;<br>14  that is, cardiovascular disease?<br>15    A.    Yes.<br>16    Q.    And that's been true for decades; is<br>17  that right?<br>18    A.    Correct.<br>19    Q.    That was true before Vioxx was on the<br>20  market, right?<br>21    A.    Yes.<br>22    Q.    And that was true while Vioxx was on the<br>23  market?<br>24    A.    Yes.<br>25    Q.    And that's certainly been true since<br>page 13<br>1  Vioxx left the market?<br>2    A.    Yes. | Pl's Obj.:  R. 401, R. 402, R. 403. |
| 3    Q.    I'd like you, if you would, to educate<br>4  us as to atherosclerosis.  If you could, just tell<br>5  the ladies and gentlemen of the jury what<br>6  atherosclerosis is and how that disease process<br>7  progresses.<br>8    A.    Atherosclerosis is an inflammatory<br>9  condition involving the inner lining of the<br>10  arteries in the body.  It can affect the coronary<br>11  arteries in the heart.  It can affect other<br>12  arteries throughout the body and the brain and the<br>13  kidney and elsewhere.  It generally results in a<br>14  condition that occurs over several decades of<br>15  low-grade inflammation culminating in the<br>16  deposition of fatty deposits inside the walls of<br>17  the arteries filled with cholesterol and other<br>18  inflammatory debris that can on occasion become<br>19  unstable and rupture and cause heart attack, stroke<br>20  or other life-threatening conditions.<br>21    Q.    All right.  We've heard this<br>22  atherosclerosis called a number of different<br>23  things.  Is it sometimes called plaque?<br>24    A.    Atherosclerosis is the process of plaque<br>25  deposition inside the artery.<br>page 14 | |
| 1    Q.    And so from time to time, patients will<br>2  have or people may have plaque buildup, so to<br>3  speak, inside the coronary arteries; is that right? | Pl's Obj.:  R. 611 - leading questions. |

## Dedrick v. Merck Co., Inc.
### Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4   A.   Correct. | |
| 5   Q.   And the process by which that progresses | |
| 6 and builds up on itself is called atherosclerosis? | |
| 7   A.   Correct. | |
| 8   Q.   And I know these aren't scientific | |
| 9 terms, but just so that everybody understands what | |
| 10 we're talking about, is that a fair description of | |
| 11 the process? | |
| 12   A.   Yes. | |
| 13   Q.   And then I guess the fear is, is that | Pl's Obj.:  Call for speculation. |
| 14 that atherosclerosis or plaque buildup will build | |
| 15 up over time and actually narrow the arteries so | |
| 16 that the blood flow is limited? | |
| 17   A.   That's one fear. | |
| 18   Q.   And, in fact, that can -- I believe you | Pl's Obj.:  R. 611. Leading. |
| 19 indicated that that happens generally over decades; | |
| 20 is that right? | |
| | |
| [14:22] - [17:9] 10/24/2006 McPherson, John 9-12-2006 | |
| | |
| * Defendant's Affirmative Depo Designations | |
| | |
| page 14 | |
| 22   A.   Generally speaking. | Pl's Obj.:  R. 611. Leading. |
| 23   Q.   Okay.  That's typically what you see in | |
| 24 your practice?  Let me ask you -- | |
| 25   A.   We typically see the end result of | |
| page 15 | |
| 1 plaque buildup. | |
| 2   Q.   But in connection with your education | |
| 3 and training, you've learned that that is a process | |
| 4 that generally takes decades? | |
| 5   A.   Generally speaking. | |
| 6   Q.   And I guess when the atherosclerosis or | |
| 7 plaque buildup gets to a certain point, it can | |
| 8 restrict blood flow to the heart; is that right? | |
| 9   A.   That can happen. | |
| 10   Q.   And as a result, it can cause, I | |
| 11 believe, what's called angina; is that right? | |
| 12   A.   Correct. | |
| 13   Q.   And angina can cause chest pain or -- | |
| 14 that is chest pain; is that right? | |
| 15   A.   One manifestation of angina is chest | |
| 16 pain. | |
| 17   Q.   And so it's important for patients to | |
| 18 monitor chest pain or discomfort because it could | |
| 19 be an indication of heart disease and coronary | |
| 20 artery disease, right? | |
| 21   A.   Correct. | |
| 22   Q.   And then another thing that can happen, | |
| 23 I guess, in connection with this plaque buildup is | |

### Dedrick v. Merck Co., Inc.
### Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 24 there can actually be a clot form; is that right?<br>25    A.    Yes.<br>page 16<br>1    Q.    And that can be caused by a rupture of<br>2 the plaque; is that right?<br>3    A.    Correct.<br>4    Q.    Can you describe for the jury what a<br>5 rupture means, when we talk about it in terms of<br>6 coronary artery disease?<br>7    A.    A rupture refers to a cholesterol plaque<br>8 in the lining of the artery in which the lining of<br>9 the artery separating the plaque from the<br>10 bloodstream is disrupted, and upon contact of the<br>11 plaque with the bloodstream, a -- the process of<br>12 activating the clot is initiated -- is initiated<br>13 with the subsequent formation of a clot that can<br>14 sometimes suddenly obstruct the coronary artery.<br>15    Q.    And in that circumstance, a heart attack<br>16 can be caused; is that right?<br>17    A.    Correct.<br>18    Q.    And a heart attack is sometimes referred<br>19 to as a myocardial infarction, right?<br>20    A.    Yes.<br>21    Q.    Sometimes that's referred to as an MI?<br>22    A.    Correct.<br>23    Q.    And we've seen records in this case and<br>24 others, I guess, where "MI" is used, the term "MI"<br>25 is used?<br>page 17<br>1    A.    Yes.<br>2    Q.    Does that mean myocardial infarction or<br>3 heart attack?<br>4    A.    Yes. | |
| 5    Q.    And this process that we've just<br>6 discussed, that is, plaque buildup, restricting of<br>7 blood flow, rupture and clot, what percentage of<br>8 patients who have heart attacks does that process<br>9 generally occur in? | **PI's Obj.:**  Attorney sidebar.<br>No answer given. Otherwise,<br>improper leading question. |
| [17:15] - [17:18] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 17<br>15        Generally speaking, is plaque rupture<br>16 and clot the most common cause of heart attacks and<br>17 strokes?<br>18    A.    Yes.<br><br>[18:4] - [18:19] 10/24/2006 McPherson, John 9-12-2006 | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| * Defendant's Affirmative Depo Designations<br><br>page 18<br>4    Q.   And just so the question is clean, do<br>5  you have an opinion about what percentage of<br>6  myocardial infarctions or heart attacks are caused<br>7  by plaque rupture and clots?<br>8    A.   My impression is about 70 percent of<br>9  myocardial infarctions are caused by plaque<br>10  rupture.<br>11    Q.   And -- and just so we're all clear, this<br>12  process that we've described atherosclerosis,<br>13  plaque buildup, rupture and clot, that's something<br>14  that occurs -- that you see in your patients<br>15  routinely?<br>16    A.   Yes.<br>17    Q.   What percentage of your patients have<br>18  atherosclerosis?<br>19    A.   I would estimate 80 to 90 percent. | |
| [18:22] - [19:10] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 18<br>22       This process that happens, that is, the<br>23  plaque rupture and clotting mechanism that we've<br>24  just described, happens in patients in your<br>25  practice all the time?<br>page 19<br>1    A.   Yes.<br>2    Q.   Regardless of what medications they're<br>3  taking?<br>4    A.   Yes.<br>5    Q.   You see that in patients who are not<br>6  taking Vioxx or any other COX-2 inhibitors, true?<br>7    A.   Correct. | |
| 8    Q.   And what we do know is that in people<br>9  who have coronary artery disease, plaque -- plaque<br>10  buildup progresses over time, true? | **Pl's Obj.:** R. 611 - Improper leading question. |
| [19:12] - [21:16] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 19 | |
| 12    A.   That's generally true. | **Pl's Obj.:** Same. |
| 13    Q.   Do folks out in our community have<br>14  plaque buildup or atherosclerosis and not know it? | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 15    A.    Yes.<br>16    Q.    How would there not be signs or<br>17 symptoms?<br>18    A.    The process of atherosclerosis is<br>19 generally a chronic progressive condition.  And<br>20 patients typically do not develop cardiac symptoms<br>21 unless their arteries become significantly<br>22 obstructed.<br>23    Q.    And when you say "significantly<br>24 obstructed," what do you mean?<br>25    A.    In general, it is thought that patients<br>page 20<br>1 do not develop symptoms of angina or ischemia<br>2 unless the lumen of the artery is obstructed<br>3 greater than 70 percent.<br>4    Q.    And when you talk of ischemia, does that<br>5 mean restricted blood flow?<br>6    A.    Correct.<br>7    Q.    And so you don't see signs of chest pain<br>8 or discomfort as a result of restricted blood flow<br>9 unless arteries, generally speaking, are blocked at<br>10 the 70 percent range or greater?<br>11    A.    Generally speaking.<br>12    Q.    Okay.  Do many people have plaque in<br>13 multiple arteries?<br>14    A.    Yes.<br>15    Q.    Again, without signs or symptoms?<br>16    A.    Yes.<br>17    Q.    And does that pose a greater risk for<br>18 heart attacks --<br>19    A.    Yes.<br>20    Q.    -- when people have multivessel disease?<br>21    A.    Yes.<br>22    Q.    Do people with multivessel coronary<br>23 artery disease often not know it until they have an<br>24 MI?<br>25    A.    Yes.<br>page 21<br>1    Q.    And are those for the same reasons that<br>2 we just discussed?<br>3    A.    Yes.<br>4    Q.    That they wouldn't have angina or<br>5 ischemia to highlight that issue until an<br>6 unfortunate event like an MI?<br>7    A.    Correct.<br>8    Q.    Okay.  And this process that you've just<br>9 described, that is, plaque buildup, rupture and<br>10 clot, that process occurs in patients who have<br>11 never taken Vioxx?<br>12    A.    Correct.<br>13    Q.    That happens -- you see that in your<br>14 practice consistently in patients who have never | |

Dedrick v. Merck Co., Inc.
Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 15  taken Vioxx or any other COX-2 inhibitor?<br>16    A.   Yes. | |
| [21:21] - [21:24] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 21<br>21    Q.   Yeah.  I've seen in the literature<br>22  places where it suggests that a third of myocardial<br>23  infarction patients had those heart attacks without<br>24  any known risk factors at the time. | Pl's Obj.:  R. 611 - Improper<br>leading question. |
| [22:1] - [22:23] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 22 | |
| 1    A.   I agree with that.<br>2    Q.   Okay.  So just to rephrase and clean<br>3  this up, do you have an opinion as to how many or<br>4  what percentage of the myocardial infarction or<br>5  heart attack patients actually have no known risk<br>6  factors at the time that they have a heart attack?<br>7    A.   I would guess that that percentage would<br>8  be roughly between 20 and 30 percent.<br>9    Q.   And that's based upon not only your<br>10  education and training, but your review of the<br>11  relevant literature?<br>12    A.   Correct.<br>13    Q.   Okay.  In other words, a person walking<br>14  down the street may not know they have any<br>15  particular risk for an MI or heart attack but<br>16  indeed have a sudden myocardial infarction?<br>17    A.   Yes. | Pl's Obj.:  R. 611 - Improper<br>leading question. |
| 18    Q.   Now, of course, it can happen in people<br>19  who don't have any known risk factors, but it's<br>20  known in the scientific and medical community that<br>21  if people have particular traditional risk factors,<br>22  it significantly increases the risk of<br>23  cardiovascular disease, true? | Pl's Obj.:  R. 611 - Improper<br>leading question.  Lack of<br>foundation. |
| [22:25] - [23:11] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 22 | |
| 25   A.   Yes.<br>page 23 | Pl's Obj.:  Same. |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 1    Q.   Including coronary artery disease, true?<br>2    A.   Yes.<br>3    Q.   And it also significantly increases the<br>4  risk for myocardial infarction or heart attack?<br>5    A.   Yes.<br>6    Q.   In other words, if individuals or<br>7  patients have traditional risk factors, certain<br>8  traditional risk factors identified by<br>9  cardiologists such as yourself, that poses<br>10  significant additional risk for them in terms of<br>11  the development of atherosclerosis? | Pl's Obj.:  Lack of foundation. |

[23:13] - [25:10] 10/24/2006 McPherson, John 9-12-2006

* Defendant's Affirmative Depo Designations

page 23
13    A.   Yes.
14    Q.   Are there risk factors that
15  cardiologists look to in determining whether a
16  patient is at significant risk for coronary artery
17  disease or heart attacks?
18    A.   Yes.
19    Q.   What are those risk factors?
20    A.   Risk factors would be family history of
21  premature coronary artery disease, cigarette
22  smoking, obesity, diabetes, hypertension, history
23  of stroke or other vascular disease.
24    Q.   Are those the significant risk factors?
25    A.   Yes. I probably forgot to mention high
page 24
1  cholesterol.
2    Q.   And just so -- you went a little fast
3  for me. I apologize. But family history, smoking,
4  diabetes, high cholesterol, hypertension?
5    A.   Yes.
6    Q.   Any others that you can think of that
7  are the more significant ones?
8    A.   Obesity.
9    Q.   Obesity. Okay.  And each one of these
10  risk factors puts patients at -- at significantly
11  greater risk for the development of
12  atherosclerosis?
13    A.   Yes.
14    Q.   And puts them at significantly greater
15  risk for heart attack?
16    A.   Yes.
17    Q.   And for stroke?
18    A.   Yes.
19    Q.   I forgot to ask you this, but Exhibit 1
20  is a true and correct copy of your resume or

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 21 curriculum vitae; is that right? | |
| 22    A.    Yes. | |
| 23    Q.    And is it up-to-date? | |
| 24    A.    Yes. | |
| 25    Q.    And does it reflect your latest | |
| page 25 | |
| 1 education, training and experience with respect to | |
| 2 your cardiology practice? | |
| 3    A.    Yes. | |
| 4    Q.    Okay. | |
| 5         (Defendant's Exhibit Number 1 | |
| 6         was marked for identification.) | |
| 7    Q.    I'm going to hand you what I've marked | |
| 8 as Exhibit 2 to your deposition. | |
| 9         (Defendant's Exhibit Number 2 | |
| 10         was marked for identification.) | |
| | |
| | |
| [25:17] - [33:19] 10/24/2006 McPherson, John 9-12-2006 | |
| | |
| * Defendant's Affirmative Depo Designations | |
| | |
| page 25 | |
| 17    Q.    Yeah.  I'll represent that it's the | |
| 18 seventh edition of Braunwald's.  What is | |
| 19 Braunwald's? | |
| 20    A.    Braunwald's is a term referring to his | |
| 21 textbook on heart disease. | |
| 22    Q.    Is it a reliable source of information | |
| 23 regarding heart disease? | |
| 24    A.    Yes. | |
| 25    Q.    Is it a text that many cardiologists | |
| page 26 | |
| 1 such as yourself look to for information about | |
| 2 heart disease? | |
| 3    A.    Yes. | |
| 4    Q.    Do you find it to be reliable? | |
| 5    A.    Yes. | |
| 6    Q.    If you could look at -- first of all, | |
| 7 what's the title of that particular passage or that | |
| 8 chapter? | |
| 9    A.    Risk Factors for Atherothrombotic | |
| 10 Disease. | |
| 11    Q.    And if you look through Exhibit 2, that | |
| 12 is, the chapter in Braunwald's, does it accurately | |
| 13 reflect various of the risk factors that are the | |
| 14 traditional risk factors that one looks to, to | |
| 15 determine if somebody is at risk for coronary | |
| 16 artery disease? | |
| 17    A.    Yes. | |
| 18    Q.    Okay.  If you could, turn to smoking. | |
| 19 And it's on the very first page, right? | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 20   A.   Correct. | |
| 21   Q.   It states: "Cigarette consumption | |
| 22 remains the single most important modifiable risk | |
| 23 factor for coronary artery disease in the | |
| 24 leading -- leading preventable cause of death in | |
| 25 the United States." Did I read that right? | |
| page 27 | |
| 1   A.   Yes. | |
| 2   Q.   And then it says "where it accounts for | |
| 3 more than 400,000 deaths annually." | |
| 4   A.   Yes. | |
| 5   Q.   Do you consider smoking to be a | |
| 6 significant risk factor for coronary artery | |
| 7 disease? | |
| 8   A.   Yes. | |
| 9   Q.   Could you tell us why that is, what the | |
| 10 mechanism is, so to speak, that puts patients at | |
| 11 risk when they smoke? | |
| 12   A.   I don't think there is one mechanism. | |
| 13   Q.   Are there multiple mechanisms? | |
| 14   A.   Yes. | |
| 15   Q.   What are the mechanisms believed to be? | |
| 16   A.   Well, my -- I am by no means an expert | |
| 17 on the effects of cigarette smoking on the coronary | |
| 18 artery. But to my knowledge, some of the effects | |
| 19 would be constriction of the artery causing sudden | |
| 20 spasm, promotion of damage to the inner lining of | |
| 21 the arteries, the endothelium, which could | |
| 22 accelerate the process of atherosclerosis. Through | |
| 23 mechanisms with which I'm not familiar, cigarette | |
| 24 smoking has been shown to cause a hypercoagulable | |
| 25 state in which patients are more prone -- more | |
| page 28 | |
| 1 prone to form blood clots. | |
| 2   Q.   Okay. | |
| 3   A.   Those are some of the major mechanisms. | |
| 4   Q.   Is -- do you tell your patients that | |
| 5 they should stop smoking? | |
| 6   A.   Yes. | |
| 7   Q.   And I assume it's for the reasons -- | |
| 8 some of the reasons you've just described? | |
| 9   A.   Yes. | |
| 10   Q.   And others? | |
| 11   A.   Yes. | |
| 12   Q.   There are obviously risk factors -- some | |
| 13 of the risk factors are controllable; is that | |
| 14 right? | |
| 15   A.   Yes. | |
| 16   Q.   Is smoking one of those? | |
| 17   A.   Yes. | |
| 18   Q.   You mentioned strong family history or a | |
| 19 family history as being a risk factor. Could you | |

Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 20  describe that for the -- for the jury? | |
| 21    A.   Patients who have a history of heart | |
| 22  disease in their family are sometimes -- are | |
| 23  statistically sometimes at higher risk for | |
| 24  developing cardiac disease and heart attack in the | |
| 25  future. | |
| page 29 | |
| 1    Q.   And you also mentioned diabetes, I | |
| 2  believe, or if you didn't mention diabetes -- | |
| 3    A.   Yes. | |
| 4    Q.   -- I guess I should raise that as an | |
| 5  issue.  Is diabetes also a known risk factor? | |
| 6    A.   Yes. | |
| 7    Q.   For cardiovascular disease? | |
| 8    A.   Yes. | |
| 9    Q.   And coronary artery disease? | |
| 10    A.   Yes. | |
| 11    Q.   And myocardial infarctions or heart | |
| 12  attacks? | |
| 13    A.   Yes. | |
| 14    Q.   Okay.  And can you describe the disease | |
| 15  process, so to speak, when it comes to diabetes? | |
| 16    A.   Like smoking, diabetes can cause | |
| 17  multiple -- can -- can exacerbate multiple | |
| 18  processes that can lead to worsening of heart | |
| 19  disease.  Diabetes has been shown to accelerate the | |
| 20  process of atherosclerosis. | |
| 21    Q.   Anything else that diabetes does in | |
| 22  terms of mechanism of impacting coronary arteries? | |
| 23    A.   Diabetes can also affect the platelet | |
| 24  function and make patients more prone to | |
| 25  thrombosis. | |
| page 30 | |
| 1    Q.   Can you read the highlighted passage in | **Pl's Obj.:** Lack of proper |
| 2  Exhibit 2 and in Braunwald's under "Diabetes"? | foundation. |
| 3    A.   "Patients with diabetes have two to | |
| 4  eightfold higher rates of future cardiovascular | |
| 5  events as compared with age and ethnically-matched | |
| 6  nondiabetic individuals, and three-fourths of all | |
| 7  deaths in diabetic patients result from coronary | |
| 8  heart disease." | |
| 9    Q.   And if you turn back to the first page, | |
| 10  the last sentence that's highlighted under | |
| 11  "Smoking," it also talks about the percentage of | |
| 12  deaths of smokers.  Do you see that? | |
| 13    A.   Yes. | |
| 14    Q.   Can you read that for the jury? | |
| 15    A.   "Of these, ischemic heart disease causes | |
| 16  35 to 40 percent of all smoking-related deaths." | |
| 17    Q.   Okay.  So a very significant percentage | |
| 18  of deaths related to smoking are caused by heart | |
| 19  disease such as myocardial infarctions? | |

Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 20    A.    Correct.<br>21    Q.    And a very significant percentage of<br>22 diabetics who die also are caused by heart disease<br>23 including myocardial infarction?<br>24    A.    Correct.<br>25    Q.    Now, you also mentioned hypertension,<br>page 31<br>1 and that's high blood pressure, correct?<br>2    A.    Correct.<br>3    Q.    And can you describe for the jury the<br>4 risks associated with high blood pressure?<br>5    A.    High blood pressure is a traditional<br>6 risk factor for coronary artery disease, heart<br>7 attack and stroke.<br>8    Q.    And can you describe the mechanisms that<br>9 make that happen in terms of the coronary arteries?<br>10    A.    Hypertension causes damage to the inner<br>11 lining of the artery, which can result in worsening<br>12 the process of atherosclerosis.<br>13    Q.    And it's -- so it's important for<br>14 cardiologists to monitor their patients as to<br>15 whether they have hypertension?<br>16    A.    Yes.<br>17    Q.    And -- and if a patient has longstanding<br>18 hypertension or for a number of years has<br>19 hypertension, that can be a significant risk factor<br>20 for cardiovascular disease and heart attacks?<br>21    A.    Yes.<br>22    Q.    And you mentioned obesity.  Can you<br>23 describe that for us?<br>24    A.    Obesity has been linked statistically to<br>25 higher rates of diabetes and heart disease.<br>page 32<br>1    Q.    And I assume that it can also lead to<br>2 some of these issues that we've just discussed?<br>3    A.    Yes.<br>4    Q.    Such as hypertension and high<br>5 cholesterol?<br>6    A.    Yes.<br>7    Q.    And could you also -- I think you<br>8 mentioned high cholesterol or hypercholesterolemia<br>9 as a significant risk factor?<br>10    A.    Yes.<br>11    Q.    Could you describe that risk to the<br>12 jury?<br>13    A.    Patients who have elevated cholesterol<br>14 are at higher risk for heart disease due to its<br>15 effect on the formation of plaques within the<br>16 coronary artery.<br>17    Q.    Is it your practice, that is, your<br>18 medical practice, each day when you see patients,<br>19 to assess the risk profile of your cardiology | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 20 patients? | |
| 21    A.   Yes. | |
| 22    Q.   And to go through these traditional risk | |
| 23 factors that science has known about for some time? | |
| 24    A.   Yes. | |
| 25    Q.   And in each patient, do you assess the | |
| page 33 | |
| 1 extent to which any particular patient is at | |
| 2 additional risk for coronary artery disease or | |
| 3 heart attacks because of these risk factors you've | |
| 4 described? | |
| 5    A.   Yes. | |
| 6    Q.   Have you found them to be reliable | |
| 7 factors in determining whether somebody is at risk | |
| 8 for heart disease? | |
| 9    A.   Yes. | |
| 10    Q.   And you rely on these sorts of factors | |
| 11 each and every day in your practice? | |
| 12    A.   Yes. | |
| 13    Q.   Now, there are -- we mentioned some of | |
| 14 these risk factors are controllable and some are | |
| 15 not? | |
| 16    A.   Yes. | |
| 17    Q.   And he -- you would also have to look at | |
| 18 somebody's age and gender; is that right? | |
| 19    A.   Yes. | |
| | |
| | |
| [34:1] - [34:13] 10/24/2006 McPherson, John 9-12-2006 | |
| | |
| * Defendant's Affirmative Depo Designations | |
| | |
| page 34 | |
| 1    Q.   Can you describe what age and gender, | |
| 2 how they play into these risk factors? | |
| 3    A.   The older someone is, the higher the | |
| 4 risk of cardiovascular disease and myocardial | |
| 5 infarction.  For a given age -- let me rephrase | |
| 6 that. | |
| 7        Male gender seems to be a risk factor | |
| 8 for coronary artery disease, myocardial infarction, | |
| 9 at a younger age, say less than age 65. | |
| 10    Q.   Okay.  Is it true that a patient's risk | |
| 11 profile for heart disease and myocardial infarction | |
| 12 increases with each risk factor that they face? | |
| 13    A.   Yes. | |
| | |
| | |
| [34:19] - [36:17] 10/24/2006 McPherson, John 9-12-2006 | |
| | |
| * Defendant's Affirmative Depo Designations | |

Dedrick v. Merck Co., Inc.
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| page 34<br>19   Q.   If a patient has one risk factor, it may<br>20 increase that patient's risk for heart disease or<br>21 heart attack, but it may not do so appreciably; is<br>22 that fair?<br>23   A.   That's fair.<br>24   Q.   But if they face two or three risk<br>25 factors, the risk of coronary artery disease and<br>page 35<br>1 heart attack significantly increases, true?<br>2   A.   Yes. | |
| 3   Q.   And if a patient came to you with many<br>4 of the risk factors, more than three -- if they<br>5 came to you with a strong family history of heart<br>6 disease and heart attacks, if he came to you with<br>7 high cholesterol, if he came to you with a 30-plus<br>8 year or 20-plus year habit of smoking a pack and a<br>9 half of cigarettes per day and had hypertension,<br>10 what would you say about that person's risk<br>11 profile?<br>12   A.   It's significantly increased over --<br>13 over a patient who would not have those risk<br>14 factors. | **Pl's Obj.:**  Lack of foundation.<br>Improper hypothetical. |
| 15   Q.   What would you tell a patient who would<br>16 fit that risk profile?<br>17   A.   In general, I would tell them that they<br>18 are at a significant risk for cardiovascular<br>19 disease.<br>20   Q.   Would you tell them that if they didn't<br>21 change some of the controllable risk factors, that<br>22 they were putting themselves at risk?<br>23   A.   Yes. | |
| 24   Q.   Would you tell them that it would be<br>25 very important, if they cared about their physical<br>page 36<br>1 health, to try their level best to stop smoking?<br>2   A.   Yes. | **Pl's Obj.:**  R. 611 - leading. |
| 3   Q.   Would you tell them that it would be<br>4 important to get on a diet and exercise program to<br>5 limit their hypercholesterolemia and hopefully<br>6 limit some of these other risk factors that may be<br>7 affected by poor diet or lack of exercise?<br>8   A.   Sometimes.<br>9   Q.   Have you had patients refuse to do those<br>10 things?<br>11   A.   I've had patients not quit smoking when<br>12 I've told them that I think they should quit<br>13 smoking.<br>14   Q.   And when that happens, does that concern<br>15 you as their cardiologist?<br>16   A.   When that happens, I'm concerned that<br>17 their risk for heart disease is elevated. | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| [37:9] - [38:6] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 37 | |
| 9    Q.   Can cocaine be a significant risk factor<br>10 for heart disease or myocardial infarction?<br>11    A.   Yes.<br>12    Q.   Can you describe for the jury how --<br>13 what the mechanisms are or how that happens?<br>14    A.   I'm not familiar with all the mechanisms<br>15 that cocaine has on the heart, but cocaine can<br>16 certainly cause intense constriction of the<br>17 coronary arteries and result in sudden acute angina<br>18 or ischemia.  And cocaine can also trigger life-<br>19 threatening heart rhythms that can result in sudden<br>20 death. | **Pl.'s Obj.:**  R. 401, R. 402,<br>R. 403.  Subject of MIL # 1. |
| 21    Q.   Can physical inactivity be a risk<br>22 factor?<br>23    A.   Yes.<br>24    Q.   And does that play into the overweight<br>25 or obesity risk, or is that additional risk?<br>page 38<br>1    A.   I'm not sure.<br>2    Q.   But it is known to be a risk factor?<br>3    A.   Yes. | |
| 4    Q.   I've seen articles where erectile<br>5 dysfunction is discussed as a marker for coronary<br>6 artery disease.  Have you seen those?<br><br><br>[38:8] - [38:17] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations | **Pl.'s Obj.:**  R. 401, R. 402,<br>R. 403.  Subject of MIL. |
| page 38<br>8    A.   Yes.<br>9    Q.   What is -- is erectile dysfunction known<br>10 to be a marker or risk factor for heart disease?<br>11    A.   I've read that it's been shown to be a<br>12 marker of heart disease.<br>13    Q.   And so when somebody has erectile<br>14 dysfunction, you may look for other issues or risks<br>15 to assess whether or not that's meaningful for that<br>16 particular patient?<br>17    A.   Correct.<br><br><br>[38:22] - [42:24] 10/24/2006 McPherson, John 9-12-2006 | **Pl.'s Obj.:**  R. 401, R. 402,<br>R. 403.  Subject of MIL. |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| * Defendant's Affirmative Depo Designations<br><br>page 38<br>22    Q.    But regardless, the risk factors that<br>23  you've identified, as we've discussed, are<br>24  associated with increased risk for heart attacks<br>25  and -- and coronary artery disease?<br>page 39<br>1    A.    Yes.<br>2    Q.    Handing you what's been marked Exhibit 3<br>3  to your deposition.<br>4            (Defendant's Exhibit Number 3<br>5            was marked for identification.)<br>6    Q.    Can you identify Exhibit 3?<br>7    A.    Exhibit 3 is a photocopy of my admission<br>8  and history -- my admission history and physical<br>9  note from January 8th, 2003 on Anthony Dedrick.<br>10    Q.    And so is this when you first saw<br>11  Mr. Dedrick as a patient?<br>12    A.    I believe so.<br>13    Q.    And you served as his cardiologist when<br>14  he came in to St. Thomas Hospital in connection<br>15  with his heart attack?<br>16    A.    Correct.<br>17    Q.    And one of the things that doctors do<br>18  when they see a patient for the first time is take<br>19  a medical history; is that right?<br>20    A.    Correct.<br>21    Q.    And the reason for that is, it's<br>22  important to know as much about that patient's<br>23  medical history as possible so that you can make<br>24  informed decisions what about the patient may be<br>25  experiencing; is that right?<br>page 40<br>1    A.    Yes.<br>2    Q.    And to treat that patient appropriately?<br>3    A.    Yes.<br>4    Q.    Do you have an independent recollection<br>5  of Mr. Dedrick?<br>6    A.    No.<br>7    Q.    So your recollection today is going to<br>8  be based upon the records that I provide to you or<br>9  that you see in his chart?<br>10    A.    Yes.<br>11    Q.    And so it's important for patients to<br>12  provide you with truthful and accurate and complete<br>13  information when it comes to providing past medical<br>14  history; is that right?<br>15    A.    Yes.<br>16    Q.    And in that regard, you took a medical<br>17  history from Mr. Dedrick, right?<br>18    A.    Yes. | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 19    Q.    And that's reflected on Exhibit 3,<br>20  correct?<br>21    A.    Correct.<br>22    Q.    And it says, "It's notable for multiple<br>23  cardiac risk factors."  Do you see that?<br>24    A.    Yes.<br>25    Q.    "Including active tobacco use."  Do you<br>page 41<br>1  see that?<br>2    A.    Yes.<br>3    Q.    And then down below, it actually goes<br>4  into more detail about his active tobacco use, does<br>5  it not, under "Social History"?<br>6    A.    Yes.<br>7    Q.    And it says that he -- and this is all<br>8  from Mr. Dedrick, true, or from people who were<br>9  with him?<br>10    A.    I don't recall this particular<br>11  encounter.  But typically, when I take a patient's<br>12  history, it's directly from the patient or from<br>13  family, if that's --<br>14    Q.    Okay.  And either Mr. Dedrick or his<br>15  family reported to you that he smokes one and a<br>16  half packs of cigarettes per day.  Do you see that?<br>17    A.    What I see is that somebody must have<br>18  informed me that he smokes one and a half packs of<br>19  cigarettes per day.<br>20    Q.    And that was the tobacco use that you<br>21  were referring to in his medical history?<br>22    A.    Yes.<br>23    Q.    And then it says "noninsulin dependent<br>24  diabetes."  Do you see that?<br>25    A.    Yes.<br>page 42<br>1    Q.    And we talked about diabetes as a<br>2  significant risk factor?<br>3    A.    Yes.<br>4    Q.    And then it says "hypertension"?<br>5    A.    Yes.<br>6    Q.    And that's, again, a significant risk<br>7  factor?<br>8    A.    Yes.<br>9    Q.    And then it says "hypercholesterolemia."<br>10    A.    Yes.<br>11    Q.    Is that high cholesterol?<br>12    A.    Yes.<br>13    Q.    And, again, that's a significant risk<br>14  factor?<br>15    A.    Yes.<br>16    Q.    And so what was your impression of<br>17  Mr. Dedrick's risk factors when it comes -- when it<br>18  came to seeing him that day? | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 19   A.   According to my note, I noted that he<br>20  had multiple significant cardiac risk factors. | |
| 21   Q.   And so it was not surprising to you,<br>22  when he came in to St. Thomas Hospital, to see a<br>23  man with this -- these traditional risk factors<br>24  have a heart attack? | **Pl's Obj.:**  R. 611 - leading.<br>R. 401, R. 402. |
| [43:1] - [43:20] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 43 | |
| 1    A.   Correct.<br>2    Q.   It would not surprise you for a man like<br>3  Mr. Dedrick, given his history, to have coronary<br>4  artery disease?<br>5    A.   Correct.<br>6    Q.   Or multivessel coronary artery disease?<br>7    A.   Correct.<br>8    Q.   Or diffuse coronary artery disease?<br>9    A.   Correct.<br>10   Q.   There was nothing unusual about his<br>11  presentation --<br>12   A.   No.<br>13   Q.   -- is that correct?<br>14   A.   Yes. | **Pl's Obj.:**  R. 611 - leading.<br>R. 401, R. 402. |
| 15   Q.   And it notes there that he was taking<br>16  various medications at the time.  Do you see that?<br>17   A.   Yes.<br>18   Q.   And one of those medications was Vioxx.<br>19  Do you see that?<br>20   A.   Yes.<br><br><br>[44:5] - [49:9] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 44<br>5    Q.   Okay.  And then if you turn the page of<br>6  that exhibit, on page two, it says, "He appears to<br>7  have clinical reperfusion with thrombolytics and<br>8  resolution of his ST elevation and resolution of<br>9  his chest pain." Do you see that?<br>10   A.   Correct.<br>11   Q.   What are thrombolytics?<br>12   A.   Thrombolytics are medications that can<br>13  dissolve blood clots.<br>14   Q.   Are they used in patients who have heart<br>15  attacks to reproduse the heart?<br>16   A.   Yes. | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17    Q.    And to restore blood flow? | |
| 18    A.    Yes. | |
| 19    Q.    And does that sometimes have an impact | |
| 20 of relieving any pain they might be feeling? | |
| 21    A.    Sometimes. | |
| 22    Q.    And does that appear to have happened | |
| 23 here? | |
| 24    A.    Yes. | |
| 25    Q.    Did Mr. Dedrick or anyone else provide | |
| page 45 | |
| 1 you a history, his history, with respect to a | |
| 2 family history of heart disease on this day? | |
| 3    A.    According to my notes, I found out that | |
| 4 he had a younger brother with established coronary | |
| 5 artery disease. | |
| 6    Q.    And was that significant to you in your | |
| 7 treatment? | |
| 8    A.    Yes. | |
| 9    Q.    And why was that? | |
| 10    A.    That indicated that Mr. Dedrick's | |
| 11 brother, being younger -- being younger than 47, | |
| 12 indicating that there is a strong family history of | |
| 13 coronary disease at a relatively young age. | |
| 14    Q.    Is it true that every day people with | **Pl's Obj.:**  R. 401, R. 402. |
| 15 similar histories who are not on Vioxx or other | |
| 16 COX-2s or other traditional NSAIDs, for that | |
| matter, have heart attacks like Mr. Dedrick did? | |
| 18    A.    Yes. | |
| 19    Q.    And is it true that people with other | |
| 20 similar histories with respect to their traditional | |
| 21 risk factors and are not taking Vioxx or COX-2s | |
| 22 have heart attacks or strokes like Mr. -- | |
| 23    A.    Yes. | |
| 24    Q.    -- like Mr. Dedrick did? | |
| 25    A.    Yes. | |
| page 46 | |
| 1    Q.    What was your plan of action after you | |
| 2 fist saw Mr. Dedrick as reflected in your January | |
| 3 8, 2003 visit? | |
| 4    A.    According to my note -- at the time he | |
| 5 was in the emergency room.  According to my note, I | |
| 6 felt that he would be stable for admission to the | |
| 7 hospital, continuing him on most of his medications | |
| 8 and performing a cardiac catheterization while in | |
| 9 the hospital. | |
| 10    Q.    And you understand that he did indeed | |
| 11 undergo a cardiac catheterization? | |
| 12    A.    Yes. | |
| 13    Q.    And that was done by your partner, Dr. | |
| 14 -- is it Koenig? | |
| 15    A.    Yes. | |
| 16        (Defendant's Exhibit Number 4 | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17      was marked for identification.) | |
| 18    Q.   And I'm going to hand you what's been | |
| 19 marked as Exhibit 4 to your deposition.  And is | |
| 20 that a true and correct copy of the cardiac | |
| 21 catheterization report that was done on Mr. Dedrick | |
| 22 on January 10 of 2003? | |
| 23    A.   Yes. | |
| 24    Q.   And I believe it says that you were the | |
| 25 referring physician; is that right? | |
| page 47 | |
| 1    A.   Yes. | |
| 2    Q.   And one of the reasons why you perform a | |
| 3 cardiac catheterization is to look inside the | |
| 4 arteries to determine if there are any blockages, | |
| 5 true? | |
| 6    A.   Correct. | |
| 7    Q.   And to formulate a plan, so to speak, of | |
| 8 action for that particular patient; is that right? | |
| 9    A.   Yes. | |
| 10    Q.   And one of the things you also do is | |
| 11 measure the left ventricular function for a | |
| 12 patient; is that right? | |
| 13    A.   Yes. | |
| 14    Q.   And you can do that via left | |
| 15 ventriculography? | |
| 16    A.   Correct. | |
| 17    Q.   Can you describe what a left | |
| 18 ventriculography is? | |
| 19    A.   Left ventriculography is when you place | |
| 20 a catheter into the left ventricle from the aorta | |
| 21 through the aortic valve and inject contrast into | |
| 22 the ventricle while obtaining an X-ray film | |
| 23 watching the heart pump out the contrast. | |
| 24    Q.   And this is the sort of interventional | |
| 25 procedure that you do on heart attack patients, | |
| page 48 | |
| 1 true? | |
| 2    A.   It's one of them, yes. | |
| 3    Q.   And -- and so you can assess, so to | |
| 4 speak, where they are right now in terms of their | |
| 5 heart condition and their coronary artery | |
| 6 condition? | |
| 7    A.   Ventriculography assesses their heart | |
| 8 function, their left ventricular function at that | |
| 9 time. | |
| 10    Q.   And then the other procedures that are | |
| 11 indicated that were performed also look for | |
| 12 blockages? | |
| 13    A.   Correct. | |
| 14    Q.   And then do you see under "Findings" -- | |
| 15    A.   Yes. | |
| 16    Q.   -- where it says "left ventricle"? | |

Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17    A.    Yes.<br>18    Q.    And it says, "Normal size left ventricle<br>19 with severe inferior hypokinesis to akinesis to the<br>20 mid-inferior wall."  And then it says, "The EF is<br>21 55 to 60 percent"; is that right?<br>22    A.    Yes.<br>23    Q.    What is EF?<br>24    A.    EF is ejection fraction.<br>25    Q.    And what is the purpose of calculating<br>page 49<br>1 the EF?<br>2    A.    Calculating the ejection fraction or EF<br>3 tells us how well the left ventricle is pumping at<br>4 that time, and it also aids in forming a prognosis<br>5 after myocardial infarction. | |
| 6    Q.    Is it one of the gold standards, so to<br>7 speak, in -- in determining the prognosis for any<br>8 particular patient after a heart attack?<br>9    A.    It's important. | Pl's Obj.:  R. 611-leading.<br>Lack of foundation. |

[50:11] - [51:5] 10/24/2006 McPherson, John 9-12-2006

* Defendant's Affirmative Depo Designations

page 50
11    Q.    And if his ejection fraction was normal,
12 that would be a very good sign for Mr. Dedrick?
13    A.    Yes.
14    Q.    And why is that?
15    A.    Patients with myocardial infarction that
16 have a normal ejection fraction have a very good
17 prognosis compared to patients with impaired
18 ejection fractions.
19    Q.    And when you see reports like this that
20 talk about hypokinesis, generally speaking, they --
21 they follow that with a statement about ejection
22 fraction?
23    A.    Correct.
24    Q.    Have you -- have you noted that --
25    A.    Yes.
page 51
1    Q.    -- in your -- and why is that important
2 to put it in that context?
3    A.    When you comment on abnormal function of
4 a segment of the left ventricle, it's important to
5 try to quantify the degree of dysfunction.

[51:10] - [52:3] 10/24/2006 McPherson, John 9-12-2006

* Defendant's Affirmative Depo Designations

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| page 51<br>10    Q.    Okay.  While the hypokinesis may<br>11  indicate that there's a wall motion, a wall<br>12  motion issue of some sort, true?<br>13    A.    Yes.<br>14    Q.    What the ejection fraction tells you is<br>15  the overall function of the heart is normal, true?<br>16    A.    It tells you that the percentage of<br>17  blood ejected with each beat is within normal<br>18  limits.<br>19    Q.    In other words, the amount of blood that<br>20  is ejected and distributed to the rest of body is<br>21  normal?<br>22    A.    Correct.<br>23    Q.    Okay.  And that's how oxygen is<br>24  distributed to the various -- to the rest of the<br>25  body?  It gets more technical than that?<br>page 52<br>1    A.    Pumping blood from the heart to the<br>2  peripheral arteries is important -- is one<br>3  important part of oxygenating the tissues.<br><br><br>[52:7] - [52:11] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 52<br>7          Let me ask it a different way.  Is the<br>8  -- are we talking about the left ventricle and the<br>9  ability of the left ventricle to beat normally or<br>10  to squeeze normally?<br>11    A.    Yes.<br><br><br>[52:18] - [56:19] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 52<br>18    Q.    Sure.  The left ventricle pumps blood to<br>19  the rest of the body, true?<br>20    A.    Yes.<br>21    Q.    And so if it is squeezing normally,<br>22  that's a good sign for a patient?<br>23    A.    It portends a good prognosis, yes.<br>24    Q.    Okay.  And then the rest of the report<br>25  goes through in some detail what blockages were<br>page 53<br>1 found by Dr. Koenig in connection with the cardiac<br>2 catheterization? | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 3    A.   Yes. | |
| 4    Q.   And the fist one is the LMCA.  Do you | |
| 5 see that? | |
| 6    A.   Yes. | |
| 7    Q.   And I guess rather than me trying to ask | |
| 8 all the appropriate questions about each particular | |
| 9 artery, could you go through and tell us what you | |
| 10 find significant in connection with the coronary | |
| 11 arteries? | |
| 12    A.   Yes.  The LMCA refers to the left main | |
| 13 coronary artery, which appears to have | |
| 14 nonsignificant plaquing or narrowing, at least, by | |
| 15 angiography. | |
| 16        The LAD is the left anterior descending | |
| 17 coronary artery, which supplies blood to the front | |
| 18 wall of the heart and, according to Dr. Koenig's | |
| 19 note has a moderate plaque in the mid-section | |
| 20 followed downstream by a 70 to 75 percent stenosis, | |
| 21 which would indicate a severe obstruction from a | |
| 22 coronary plaque. | |
| 23        The first diagonal branch would be one | |
| 24 of the major branches off of the LAD, which appears | |
| 25 to have a moderate plaque by percentage of | |
| page 54 | |
| 1 obstruction at the ostium, which is at the takeoff | |
| 2 of the branch. | |
| 3        The LCX refers to the left circumflex | |
| 4 coronary artery, which, in general, supplies the | |
| 5 back wall of the heart.  It was described as a | |
| 6 small nondominant vessel, meaning that it does not | |
| 7 supply a significant portion of the myocardium or | |
| 8 left ventricular. | |
| 9        There appears to be a long, moderate -- | |
| 10 or moderate obstruction of approximately 50 to 60 | |
| 11 percent in the artery extending from the proximate | |
| 12 portion to the midportion of the artery.  There | |
| 13 appears to be a moderate plaque scene at the | |
| 14 takeoff of the third marginal branch, which is a | |
| 15 side branch, and the downstream or terminal portion | |
| 16 of the artery appears to have a moderate to severe | |
| 17 plaque. | |
| 18        The right coronary artery was described | |
| 19 as a very large dominant vessel, which means that | |
| 20 it likely supplies a good portion of the inferior | |
| 21 wall of the heart. | |
| 22        Dr. Koenig in his report notes that | |
| 23 there is a very severe blockage in the mid-section | |
| 24 of the right coronary artery with thrombus, which | |
| 25 would be blood clots as seen by angiography. | |
| page 55 | |
| 1        The posterior descending artery, which | |
| 2 is one of the big terminal branches from the right | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 3  coronary artery, appeared to have a very long -- or<br>4  a -- a long 60 to 70 percent blockage in one of its<br>5  major branches, with the other branch having a 50<br>6  to 60 percent or moderate blockage at its takeoff.<br>7      Q.    And it's described as severe multivessel<br>8  disease; is that right?  Or actually, multivessel<br>9  coronary artery disease; is that right?<br>10     A.    Correct.<br>11     Q.    And is it typical -- is this the type of<br>12  disease that's typically caused by longstanding<br>13  coronary artery disease?<br>14     A.    Yes.<br>15     Q.    Okay.  In other words, something that<br>16  happens over a period of years?<br>17     A.    Yes.<br>18     Q.    And then it talks about the possibility<br>19  of doing a bypass graft or bypass grafting.  Can<br>20  you explain what bypass grafting is?<br>21     A.    Bypass grafting is a surgical procedure<br>22  in which the blockages are bypassed by inserting a<br>23  -- some sort of conduit, typically in the aorta,<br>24  and attaching one end to the aorta and the other<br>25  end to the artery downstream from the blockage so<br>page 56<br>1  that blood flows from the aorta down through the<br>2  conduit into the artery, bypassing the blockage.<br>3      Q.    And it says that this is -- would be<br>4  recommended especially with his known diabetes.<br>5  What's significant about his known diabetes and<br>6  that recommendation?<br>7      A.    There has been evidence that shows that<br>8  diabetic patients have better outcomes with<br>9  coronary bypass grafting rather than with<br>10  multivessel stenting or angioplasty in patients<br>11  that are diabetic and have multivessel coronary<br>12  artery disease.<br>13     Q.    And then it talks a little bit down<br>14  further about a restenosis risk.  Is restenosis a<br>15  reblocking of the artery in the same place if it --<br>16  if there was a stent or some other procedure done?<br>17     A.    Restenosis is the renarrowing of the<br>18  artery within the segment of artery treated with<br>19  either a balloon or a stent.<br><br><br>[57:2] - [59:7] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 57<br>2      Q.    Is -- would it be typical for Dr. Koenig<br>3  to discuss his findings with you for one of your | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4 patients? | |
| 5    A.   Yes. | |
| 6    Q.   And given what you saw or what you see | |
| 7 in the cardiac catheterization record, would you | |
| 8 agree that bypass grafting would be best for | |
| 9 Mr. Dedrick? | |
| 10    A.   After reviewing these records, it | |
| 11 appears that that would be very reasonable. | |
| 12    Q.   Who is Dr. Coltharp, do you know him? | |
| 13    A.   Dr. Coltharp is a cardiac surgeon here | |
| 14 at St. Thomas. | |
| 15    Q.   And from reviewing your record, did you | |
| 16 note that he -- by the way, Mr. Dedrick actually | |
| 17 did undergo multivessel bypass grafting, true? | |
| 18    A.   True. | |
| 19    Q.   And how many vessels were -- were | |
| 20 bypassed in the grafting? | |
| 21    A.   I don't recall.  I do have a copy of his | |
| 22 operative note. | |
| 23       (Defendant's Exhibit Number 5 | |
| 24       was marked for identification.) | |
| 25    Q.   Here -- I'm handing you what's been | |
| page 58 | |
| 1 marked as Defendant's Exhibit 4 (sic).  Is that the | |
| 2 operative note that you're talking about? | |
| 3    A.   Yes. | |
| 4    Q.   From Exhibit 4 (sic), can you tell me | |
| 5 how many vessels were grafted? | |
| 6    A.   Four. | |
| 7    Q.   Is this what is known as a quadruple | |
| 8 bypass? | |
| 9    A.   Yes. | |
| 10    Q.   And what was significant in terms of | |
| 11 this report for Mr. Dedrick?  If you could review | |
| 12 it and just tell us the significant of -- first of | |
| 13 all, there were four bypasses that were actually | |
| 14 performed on Mr. Dedrick, true? | |
| 15    A.   According to the operative note, yes. | |
| 16    Q.   And then it indicates there were no | |
| 17 complications, on the third page, under paragraph | |
| 18 11. Do you see that? | |
| 19    A.   Yes. | |
| 20    Q.   Was that a good sign for Mr. Dedrick? | |
| 21    A.   Yes. | |
| 22    Q.   So this essentially was telling you -- I | |
| 23 assume you were copied on this record -- | |
| 24    A.   Yes. | |
| 25    Q.   -- that the procedure went well? | |
| page 59 | |
| 1  A.   Yes. | |
| 2  Q.   And the procedure went as expected? | |
| 3  A.   Correct. | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4    Q.   And the procedure accomplished what you<br>5  hoped to accomplish in connection with this<br>6  procedure?<br>7    A.   Yes.<br><br><br>[59:15] - [61:5] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 59<br>15    Q.    Exhibit 5 is a copy of the January 13<br>16  cardiac -- excuse me -- bypass procedure report<br>17  performed by Dr. Coltharp; is that correct?<br>18    A.    Correct.<br>19    Q.    And this is the record that indicates<br>20  that indeed a quadruple bypass was performed on<br>21  Mr. Dedrick, true?<br>22    A.    True.<br>23    Q.    And that the procedure went well,<br>24  correct?<br>25    A.    Correct.<br>page 60<br>1    Q.   And that there were no complications?<br>2    A.    Correct.<br>3    Q.    And that is exactly what you had hoped<br>4  for in connection with Mr. Dedrick's bypass?<br>5    A.   Yes.<br>6    Q.   Did you follow Mr. Dedrick, according to<br>7  your records, while he was in the hospital?<br>8    A.   I followed Mr. Dedrick closely prior to<br>9  his bypass surgery.  After his bypass surgery, I<br>10  visited him briefly on at least one occasion.<br>11        (Defendant's Exhibit Number 6<br>12          was marked for identification.)<br>13    Q.    And handing you what's been marked as<br>14  Exhibit 6.  Does Exhibit 6 reflect or contain a<br>15  progress report that indicates that you actually<br>16  saw Mr. Dedrick in the hospital on January 16?<br>17    A.   Yes.<br>18    Q.    And could you read your entry on Exhibit<br>19  6?<br>20    A.   Yes.  It's entitled "Cardiology," dated<br>21  January 16th.  "Making great recovery, period.<br>22  Appreciate good care, period.  Will arrange follow-<br>23  up," or FU, which is an abbreviation for follow-up.<br>24    Q.    So at this point in time, January 16,<br>25  which, I guess, is three days after the bypass<br>page 61<br>1  surgery, you felt he was making a great recovery?<br>2    A.   Yes.<br>3    Q.   And, again, that was exactly what you | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Pl's Obj.:  R. 611 -- leading. |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 4  had hoped for from Mr. Dedrick?<br>5     A.   Yes.<br><br><br>[61:12] - [62:4] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 61<br>12     Q.   Doctor, we talked about a number of<br>13  traditional risk factors for Mr. Dedrick, true?<br>14     A.   Yes.<br>15     Q.   Do you believe that his traditional risk<br>16  factors are sufficient to fully account for the<br>17  significant multivessel disease that is seen in the<br>18  records that you've reviewed today?<br>19     A.   Yes. | |
| 20     Q.   Do you believe that his traditional risk<br>21  factors are sufficient to fully account for his<br>22  myocardial infarction or heart attack?<br>23     A.   Yes.<br>24     Q.   Do you believe that his traditional risk<br>25  factors are sufficient to fully account for all of<br>page 62<br>1  the findings that you see in connection with both<br>2  the cardiac catheterization that your partner did<br>3  and the bypass surgery that Dr. Coltharp did?<br>4     A.   Yes. | Pl's Obj.:  R. 611 -- leading.<br>Calls for speculation. |
| <br>[62:9] - [62:24] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 62<br>9          (Defendant's Exhibit Number 7<br>10             was marked for identification.)<br>11     Q.   I'm handing you what's been marked as<br>12  Exhibit 7.  And this is the discharge summary that<br>13  was signed by Dr. Coltharp at St. Thomas Hospital,<br>14  correct?<br>15     A.   Yes.<br>16     Q.   You've seen that document before?<br>17     A.   Yes.<br>18     Q.   And is it typical to list various items<br>19  under "Discharge Diagnosis" when you discharge any<br>20  particular patient?<br>21     A.   Yes.<br>22     Q.   Does this reflect what Dr. Coltharp<br>23  believed in terms of his diagnosis at the time of<br>24  discharge? | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| [63:1] - [65:4] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 63<br>1    A.   Yes.<br>2    Q.   That's what that typically means; that<br>3 is, discharge diagnosis, true?<br>4    A.   Yes.<br>5    Q.   And it goes through and under number<br>6 two, it says, "Triple vessel coronary artery<br>7 disease with normal left ventricular function."  Do<br>8 you see that?<br>9    A.   Yes.<br>10   Q.   And that's what we talked about earlier<br>11 in connection with the ejection fraction<br>12 discussion?<br>13   A.   Yes.<br>14   Q.   And then down in the "Hospital Course"<br>15 section, do you see towards the end he says, "His<br>16 operation went well, and his postoperative course<br>17 has been uneventful"?  Do you see that?<br>18   A.   Yes.<br>19   Q.   What does that mean when a doctor says,<br>20 "His postoperative course has been uneventful?"<br>21   A.   It generally means that there were no<br>22 complications.<br>23   Q.   And that's consistent with your review<br>24 of the various procedures that were performed on<br>25 Mr. Dedrick, true?<br>page 64<br>1    A.   Yes.<br>2    Q.   And then it says, "He is tolerating a<br>3 regular diet at this point and participating in the<br>4 rehabilitation program."  Do you see that?<br>5    A.   Yes.<br>6    Q.   Is that important, that he was<br>7 participating in a rehabilitation program?<br>8    A.   Yes. | |
| 9    Q.   Okay.  And so these were all good signs<br>10 for Mr. Dedrick?<br>11   A.   Yes.<br>12   Q.   And exactly what you would hope for, for<br>13 Mr. Dedrick in terms of what you would have wanted<br>14 at discharge?<br>15   A.   Yes. | **Pl's Obj.:**  R. 611 - leading.<br>Speculative. |
| 16   Q.   Now, we talked a little bit earlier<br>17 about hypokinesis, and there was a reference to<br>18 akinesis on the cardiac cath report.  Do you recall<br>19 that language?<br>20   A.   Yes. | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 21   Q.   All right.  What is stunning?<br>22   A.   Stunning in the context of a heart<br>23 attack or myocardial infarction is when a region of<br>24 the left ventricle does not move in the early<br>25 stages of myocardial infarction, but is not<br>page 65<br>1 permanently damaged and recovers its function after<br>2 appropriate treatment. | |
| 3   Q.   And so that could have happened with<br>4 respect to Mr. Dedrick, true? | **Pl's Obj.:**  Speculative.  Lack<br>of foundation. |
| <br>[65:6] - [65:17] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 65<br>6   A.   True.<br>7   Q.   I'm sorry.  I didn't get an answer.<br>8   A.   True.<br>9   Q.   Okay.  And, in fact, the fact that he<br>10 has a normal left ventricular function, again, is a<br>11 good sign in terms of the ability of his left<br>12 ventricle to perform properly?<br>13   A.   It would be, yes.<br>14   Q.   Okay.  Now, under "Discharge<br>15 Medications," do you see where Dr. Coltharp has put<br>16 him on Vioxx?  Do you see that?<br>17   A.   Yes.<br><br><br>[66:1] - [74:8] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 66<br>1   Q.   If there -- if Mr. Dedrick's left<br>2 ventricular function was not normal, would you put<br>3 him on Cardizem?<br>4   A.   I use Cardizem in patients that have at<br>5 least -- that do not have severe LV dysfunction.<br>6   Q.   And it's a calcium blocker; is that<br>7 right?<br>8   A.   It's a calcium channel blocker.<br>9   Q.   Okay.  Now, you saw Mr. Dedrick after he<br>10 was discharged from the hospital; is that right,<br>11 according to your records?<br>12   A.   Yes.<br>13         (Defendant's Exhibit Number 8<br>14         was marked for identification.)<br>15   Q.   I'm going to hand you what's been marked<br>16 as Exhibit 8.  Is Exhibit 8 a patient information | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17 form, together with your report that you prepared<br>18 in connection with a visit that Mr. Dedrick made to<br>19 your office?<br>20    A.    Yes.<br>21    Q.    And, again, it talks about reason for<br>22 visit, and it says "Follow-up from bypass<br>23 surgery." Do you see that --<br>24    A.    Yes.<br>25    Q.    -- in your report? I apologize.<br>page 67<br>1        And what is the typical follow-up for a<br>2 patient like Mr. Dedrick that you recommend?<br>3    A.    I typically recommend that they see me<br>4 six weeks after discharge.<br>5    Q.    And do you recommend that they see you<br>6 any after that date?<br>7    A.    I typically see them every six months<br>8 after that date.<br>9    Q.    Forever?<br>10    A.    Indefinitely.<br>11    Q.    Okay. And so for a patient like<br>12 Mr. Dedrick, you would normally tell them to come<br>13 in a month or so or two months or so after the<br>14 procedure, after discharge, and then six months<br>15 thereafter indefinitely?<br>16    A.    Correct.<br>17    Q.    Okay. And in your history of present<br>18 illness, you indicate that the catheterization<br>19 demonstrated normal LV function, correct?<br>20    A.    Correct.<br>21    Q.    And that was based on the<br>22 catheterization that was performed by Dr. Koenig?<br>23    A.    Correct.<br>24    Q.    And then in the last sentence, under<br>25 "History of Present Illness," it says: "The<br>page 68<br>1 patient did quite well with a good postoperative<br>2 recovery and is now here for follow-up." Did I<br>3 read that correctly?<br>4    A.    Yes.<br>5    Q.    And so at this point, you felt like the<br>6 patient had done quite well, not only through the<br>7 hospital course, but up to that point in time? Is<br>8 that --<br>9    A.    That sentence refers to his hospital<br>10 course.<br>11    Q.    Okay. And then it says -- I'm sorry.<br>12 And then it goes on to say, "Since discharge, he<br>13 has been doing fairly well." So you had -- you --<br>14 is that what the patient reported to you?<br>15    A.    Yes.<br>16    Q.    So the patient would have reported that | |

Dedrick v. Merck Co., Inc.
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17 he had been doing fairly well? | |
| 18    A.    Yes. | |
| 19    Q.    And then he says, "He notes a mild | |
| 20 productive cough and sinus drainage, but otherwise | |
| 21 denies any cardiac symptoms"; is that right? | |
| 22    A.    That's what I wrote. | |
| 23    Q.    And from a heart perspective, that's a | |
| 24 very good sign for Mr. Dedrick, true? | |
| 25    A.    True. | |
| page 69 | |
| 1    Q.    That's what you would hope for? | **Pl's Obj.:**  Speculative.  Lack |
| 2    A.    Yes. | of foundation. |
| 3    Q.    That he would have no heart-related | |
| 4  symptoms? | |
| 5    A.    Yes. | |
| 6    Q.    And that's what he reported to you? | |
| 7    A.    Yes. | |
| 8    Q.    And the in the "Impression" section on | |
| 9 the next page, it says, "Mr. Dedrick appears to be | |
| 10 doing fairly well from a cardiac standpoint." | |
| 11    A.    Yes. | |
| 12    Q.    Was that your conclusion in March of | |
| 13 2004, when you saw him -- excuse me -- March of | |
| 14 2003, when you saw him? | |
| 15    A.    That's what I documented, so it must be | |
| 16 accurate. | |
| 17    Q.    So then it says, "Plan:  We will | |
| 18 otherwise plan to see him back for follow-up in six | |
| 19 months or sooner should his symptoms change."  Do | |
| 20 you see that? | |
| 21    A.    Yes. | |
| 22    Q.    Was that the last time that you saw | |
| 23 Mr. Dedrick? | |
| 24    A.    According to our records here in the | |
| 25 office, it is. | |
| page 70 | |
| 1    Q.    Do you -- | |
| 2    A.    I don't recall seeing -- | |
| 3    Q.    Do you have any records which indicate | |
| 4 or suggest that Mr. Dedrick called with any | |
| 5 complications whatsoever after March of 2003? | |
| 6    A.    No. | |
| 7    Q.    Or that Dr. Herrera, his primary | |
| 8 treating physician, referred him to your office | |
| 9 with any complications or concerns? | |
| 10    A.    I have no evidence of that happening. | |
| 11    Q.    Do you have any reason to believe that | |
| 12 Mr. Dedrick suffered from any complications after | |
| 13 March of 2003 concerning his heart or his | |
| 14 cardiovascular disease? | |
| 15    A.    I have no idea. | |
| 16    Q.    Okay.  Is it fair to say that you have | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17 no opinion about Mr. Dedrick's current condition?<br>18    A.    Yes. | |
| 19    Q.    But you do know that based upon his<br>20 cardiac catheterization results, that he had a good<br>21 prognosis in terms of his EF function, his ejection<br>22 fraction percentage, as compared to a patient who<br>23 has -- who had a -- a lesser ejection fraction<br>24 percentage?<br>25    A.    Yes. | Pl's Obj.:  Speculative.  Lack of foundation.  Improper hypothetical. |
| page 71<br>1    Q.    Now, you did a physical exam in March of<br>2 2004; is that right?<br>3    A.    March of --<br>4    Q.    March of 2003?  I apologize.<br>5    A.    Yes.<br>6    Q.    And did he deny anxiety, stress, panic<br>7 attack or depression at that time?<br>8    A.    Yes.<br>9    Q.    And those were also all good signs for<br>10 Mr. Dedrick?<br>11    A.    Yes.<br>12    Q.    Did you ever place Mr. Dedrick on any<br>13 sort of work or other restrictions?  Let me<br>14 rephrase that.<br>15         On or after March of 2003, did you place<br>16 Mr. Dedrick on any sort of work or other<br>17 restrictions?<br>18    A.    I have no recollection.<br>19    Q.    Does your record indicate or suggest<br>20 that you put him on any work or other restrictions?<br>21    A.    No.<br>22    Q.    Did you ever limit any activities after<br>23 March of 2003 that Mr. Dedrick could participate<br>24 in?<br>25    A.    Not to my knowledge.<br>page 72<br>1    Q.    I assume that you are not here to<br>2 discuss whether Vioxx played any particular role in<br>3 Mr. Dedrick's myocardial infarction?  That's not<br>4 something that you have an opinion on, I assume?<br>5    A.    Correct.<br>6    Q.    You have not performed an analysis of<br>7 all the studies that have been done into whether or<br>8 not Vioxx can or cannot cause any sort of increased<br>9 risk, true?<br>10    A.    True. | |
| 11    Q.    And before providing any opinions about<br>12 whether Vioxx could cause myocardial infarction in<br>13 patients like Mr. Dedrick, you would want to review<br>14 the totality of the evidence in that regard, true?<br>15    A.    True. | Pl's Obj.:  R.401, R.402.<br>R.611 - leading.  Speculative |
| 16    Q.    And you have not done so? | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
### Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 17   A.   Correct. | |
| 18   Q.   Okay.  I assume you do not hold yourself | |
| 19  out as an expert on COX-2s or Vioxx on the coronary | |
| 20  -- on the cardiovascular system? | |
| 21   A.   Correct. | |
| 22   Q.   Or the effect of COX-2s or Vioxx on | |
| 23  plaque formation? | |
| 24   A.   Correct. | |
| 25   Q.   And you don't consider yourself an | |
| page 73 | |
| 1  expert in these areas? | |
| 2   A.   Correct. | |
| 3   Q.   I just want to sort of summarize what | |
| 4  we've gone over. | |
| 5       Mr. Dedrick had significant coronary | |
| 6  artery disease when he showed up at the hospital, | |
| 7  true? | |
| 8   A.   True. | |
| 9   Q.   The extent of that coronary artery | |
| 10  disease was undiagnosed until his cardiac | |
| 11  catheterization on January 10 of 2003, true? | |
| 12   A.   To my knowledge, that's true. | |
| 13   Q.   And if Mr. Dedrick did not have a heart | **Pl's Obj.:**  Lack of proper foundation.  Speculative. |
| 14  attack, but you knew the extent of his coronary | |
| 15  artery disease in January of 2003, would you have | |
| 16  recommended the quadruple bypass that he received? | |
| 17   A.   It's possible. | |
| 18   Q.   And you agree that he got the bypass | |
| 19  surgery that he really needed, true? | |
| 20   A.   From my review of the record, it appears | |
| 21  that that was the most appropriate treatment. | |
| 22   Q.   And the operation went well? | |
| 23   A.   According to the record, it went well. | |
| 24   Q.   And his postoperative course went well? | |
| 25   A.   Yes. | |
| page 74 | |
| 1   Q.   And after discharge, he reported to you | |
| 2  that he had not -- he did not have any cardiac | |
| 3  complaints, true? | |
| 4   A.   True. | |
| 5   Q.   And he never came in complaining of -- | |
| 6  complaining of any cardiac problems or symptoms | |
| 7  after discharge, true? | |
| 8   A.   True. | |
| | |
| [93:2] - [93:23] 10/24/2006 McPherson, John 9-12-2006 | |
| | |
| * Defendant's Affirmative Depo Designations | |
| | |
| page 93 | |
| 2   Q.   Okay.  I want to go back to the cath | |

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 3 report for just one minute.  This is Defendant's<br>4 Exhibit 4.<br>5       Does the -- does the cath report show a<br>6 thrombus?  If you'll look in the right coronary<br>7 artery section here, it indicates, "Large dominant<br>8 vessel with a mid-95 percent stenosis with<br>9 thrombus."<br>10     A.   Correct.<br>11     Q.   And in -- in the records that you've<br>12 gone over before, it was mentioned that Mr. Dedrick<br>13 had thrombolytic therapy?<br>14     A.   Correct.<br>15     Q.   And he had thrombolytic therapy when he<br>16 arrived at the emergency room in Waynesboro before<br>17 he was even transported here; is that correct?<br>18     A.   According to the records.<br>19     Q.   Is there anything significant to you<br>20 about the finding of a thrombus?  This is two days<br>21 after thrombolytic therapy had been given.<br>22     A.   It's a common finding after acute<br>23 myocardial infarction.<br><br><br>[94:11] - [94:14] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 94<br>11     Q.   And does the -- does the fact that the<br>12 clot still exists after the thrombolytic therapy<br>13 suggest anything to you about the size of the clot?<br>14     A.   No.<br><br><br>[98:16] - [99:14] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 98<br>16     Q.   Doctor, Mr. Birchfield asked you<br>17 questions about the triggers of myocardial<br>18 infarctions, and I think you said the triggers of<br>19 MIs are not well known.  Do you recall that --<br>20     A.   Yes.<br>21     Q.   -- just a few minutes ago?<br>22     A.   Yes.<br>23     Q.   What is known in the scientific<br>24 community is that certain traditional risk factors<br>25 significantly increase the risk for myocardial<br>page 99<br>1 infarction?<br>2     A.   Yes. | |

## Dedrick v. Merck Co., Inc.
## Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections
## Exhibit "A"

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| 3    Q.    Just the kinds of risk factors that<br>4  Mr. Dedrick faced at the time you saw him in the<br>5  hospital on January of 2003?<br>6    A.    Yes. | |
| 7    Q.    And if he does not control those risk<br>8  factors, if he doesn't quit smoking, if he doesn't<br>9  get his diet under control or his cholesterol under<br>10  control or his hypertension under control, he faces<br>11  serious and significant risk for further<br>12  cardiovascular events such as myocardial<br>13  infarctions?<br>14    A.    Yes. | **Pl's Obj.:**  Lack of proper<br>foundation.  Speculative. |

[100:19] - [101:24] 10/24/2006 McPherson, John 9-12-2006

* Defendant's Affirmative Depo Designations

page 100
19    Q.    Just had a couple last questions,
20  Doctor.
21          As I understand your record from March
22  of 2003, you requested that Mr. Dedrick follow up
23  in six months; is that right?
24    A.    Correct.
25    Q.    You never dismissed him from your care;
page 101
1  is that right?
2    A.    Correct.
3    Q.    You expected him to follow up?
4    A.    Correct.
5    Q.    And that was his responsibility to do
6  so?
7    A.    We schedule the patients an appointment
8  for follow up.  It's their responsibility to come
9  in for their appointment.
10    Q.    Did he miss that appointment?
11    A.    I'm not sure.
12    Q.    If it was your routine -- it is your
13  routine and practice in your office to schedule a
14  six-month appointment?
15    A.    Yes.
16    Q.    And if that routine practice was
17  followed with respect to Mr. Dedrick, he was to
18  come in in September or so of 2003?
19    A.    Probably.
20    Q.    Did he come in in September of 2003?
21    A.    Not according to our records.
22    Q.    Did he ever follow up after March of
23  2003?
24    A.    Not to my knowledge.

**Dedrick v. Merck Co., Inc.**
**Dr. John McPherson -- Defendant's Affirmatives with Plaintiff's Objections**
**Exhibit "A"**

| Defendant's Affirmatives | Plaintiff's Objections |
|---|---|
| [102:4] - [102:7] 10/24/2006 McPherson, John 9-12-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 102<br>4    Q.   And you know of no other cardiologist<br>5  that he went to see after March of 2003; is that<br>6  correct?<br>7    A.   Correct. | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL DOCKET No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| | * | |
| This document relates to | * | JUDGE FALLON |
| CASE NO. 2:05CV2524 | * | |
| | * | |
| ANTHONY WAYNE DEDRICK, | * | MAG. JUDGE KNOWLES |
| an Individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

Plaintiff's Counter-Designations of Deposition Testimony of John McPherson, M.D.
Exhibit "B"

| Start Page | Line | End Page | Line |
|---|---|---|---|
| 49 | 10 | 49 | 17 |