# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL DOCKET No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| | * | |
| This document relates to | * | JUDGE FALLON |
| CASE NO. 2:05CV2524 | * | |
| | * | |
| ANTHONY WAYNE DEDRICK, | * | MAG. JUDGE KNOWLES |
| an Individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

---

### Plaintiff's Objections and Counter-Designations to Defendant's
### Designations of Deposition Testimony of Esmeraldo Herrera, M.D.

---

Plaintiff, Anthony Wayne Dedrick, by and through his attorneys, hereby submits the following

deposition testimony for the Court's consideration and pre-trial rulings:

1. Plaintiff's Objections to Defendant's Affirmative Designations of Deposition Testimony of

   Esmeraldo Herrera, M.D. (Ex. "A"); and

2. Plaintiff's Counter-Designations of Deposition Testimony of Esmeraldo Herrera, M.D. (Ex.

   "B").

Plaintiff reserves the right to supplement or amend his objections or counter-designations,

withdraw any testimony counter-designated, and make other changes.

Plaintiff also reserves the right to supplement or amend his objections and counter-designations

based upon any ruling of the Court or any other court decisions that affect the scope of evidence in this trial, including rulings on its motions *in limine*. Plaintiff reserves the right to also counter-designate any testimony designated by Defendant in the event it is not offered by Defendant.

In preparing its objections and counter-designations, Plaintiff attempted to respond to the testimony designated by Defendant even though much of it is inadmissible, objectionable and/or pertains to topics that arguably should be ultimately excluded from evidence at trial. By so designating, Plaintiff does not intend to waive any of its objections to deposition testimony, exhibits, or other evidence or argument. By designating this testimony, Plaintiff does not waive his right to object to or move to exclude any documents or testimony that Defendant Merck & Co., Inc. may offer at trial.

Plaintiff reserves the right to make additional completeness designations upon receipt of any of Merck's final designations or counter-designations.

Respectfully submitted this 27th day of October, 2006.

P. Leigh O'Dell

**ANDY BIRCHFIELD**
P. LEIGH O'DELL
Attorney for Plaintiff
***BEASLEY, ALLEN, CROW,***
***METHVIN, PORTIS & MILES, P.C.***
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343 telephone
(334) 954-7555 facsimile

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
 **Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Objections and Counter-Designations to Defendant's Designations of Deposition Testimony of Esmeraldo Herrera, M.D. has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of October, 2006.

P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| Annotations Report [Dedrick v. Merck] | Plaintiff's Objections |
|---|---|
| [5:15] - [5:21] 10/24/2006 Herrera, Esmeraldo 9-14-2006 <br><br> * Defendant's Affirmative Depo Designations <br><br> page 5 <br> 15  BY MR. SKIDMORE: <br> 16     Q.   Doctor, my name is John Skidmore, and, <br> 17  as I introduced myself to you earlier, I represent <br> 18  Merck in this lawsuit.  Do you understand that? <br> 19     A.   Yes, sir. | |
| 20     Q.   We've never met before, have we? <br> 21     A.   No, we haven't before. | Pl's Obj.:  R. 401, R. 402. |
| | |
| [6:18] - [6:23] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | Pl's Obj.:  R. 401, R. 402. |
| * Defendant's Affirmative Depo Designations <br><br> page 6 <br> 18     Q.   Okay.  Well, let me just tell you a <br> 19  little bit.  It's kind of informal here. <br> 20     A.   Okay. <br> 21     Q.    But the same rules apply about you're <br> 22  under oath just like you were in court. <br> 23     A.   Okay. | |
| [7:13] - [10:8] 10/24/2006 Herrera, Esmeraldo 9-14-2006 <br><br> * Defendant's Affirmative Depo Designations <br><br> page 7 | |
| 13     Q.   Now, we're here in your offices, are we <br> 14  not? <br> 15     A.   Yes, sir. | Pl's Obj.:  R. 401, R. 402. |
| 16     Q.   And can you tell the jury where your <br> 17  offices are located? <br> 18     A.   My office is located at 905 Andrew <br> 19  Jackson Drive, Waynesboro, Tennessee. <br> 20     Q.   And we're here, I assume you <br> 21  understand, because one of your patients has sued <br> 22  Merck? <br> 23     A.   Yes. <br> 24     Q.   Claiming that Vioxx caused or <br> 25  contributed to his heart attack.  Are you aware of <br> page 8 <br> 1  that? <br> 2     A.   Yes, sir, they told me. | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 3    Q.    Okay.  Now, have you done anything to<br>4  prepare for your deposition?<br>5    A.    What I got is, I just did a little<br>6  reading.  I have reviewed his chart, and I read<br>7  some of your notes because I'm not very familiar<br>8  with the whole thing, so I tried to prepare myself<br>9  to know what happened to him, what medication was<br>10  given to him and what are the latest or -- or<br>11  journal opinion about Vioxx.  So that's what I<br>12  did.  That's what I did.<br>13    Q.    Before you started doing that, you had<br>14  not been keeping up-to-date on Vioxx since it was<br>15  withdrawn from the market?<br>16    A.    Actually, I just started doing that<br>17  after I learned I was -- I was surprised -- after<br>18  I learned that my patient is trying to sue Merck,<br>19  so I started to look at journals about Vioxx.<br>20    Q.    Okay.<br>21    A.    That's the only time that I started<br>22  looking. | |
| 23    Q.    Okay.  Well, let me show you this<br>24  deposition notice.  It asked you to bring certain<br>25  things today, which you have done.  Have you seen<br>page 9<br>1  that before?<br>2    A.    Yes, sir.  I think I've got this.<br>3    Q.    Okay.  Good.  And did you bring all the<br>4  material that you have that we asked for?<br>5    A.    I got -- I got almost all of this.  I<br>6  talked to my secretary to prepare this, and<br>7  actually, the data is all in the chart order<br>8  except for my curriculum vitae.  And some I have<br>9  are dates.  I don't have anything else.<br>10    Q.    Okay.<br>11    A.    That's what I've got.<br>12    Q.    Okay.  Well, let me -- the chart that<br>13  you have here, we're going to kind of check<br>14  through it and make sure we have.  But I think<br>15  your office has already provided us a copy of all<br>16  your records.<br>17    A.    Yes. | **Pl's Obj.:** R. 401, R. 402.<br>Testimony regarding<br>housekeeping details<br>not relevant to the issues<br>in this case would be a<br>waste of time for the jury. |
| 18    Q.    When was the last time you saw<br>19  Mr. Dedrick?<br>20    A.    The last visit in my office?<br>21    Q.    Yes, sir.<br>22    A.    Can I --<br>23    Q.    You need your chart?<br>24    A.    I need my chart to see.  It was last<br>25  month.  Last month.  I should have my computer<br>page 10<br>1  with me.  It should be last month. | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 2    Q.    Last month?<br>3    A.    Ordinary medication calls, something<br>4  like that.  For his medication.<br>5    Q.    I was just --<br>6    A.    But nothing since.<br>7    Q.    You saw him about a month ago?<br>8    A.    Yes, sir. | |
| [10:20] - [11:8] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 10<br>20    Q.    Okay.  Now, we've never met before?<br>21    A.    No.<br>22    Q.    Now, did you meet with the other<br>23  lawyers, Mr. Dedrick's attorneys?<br>24    A.    Yes, sir.  They come to my office two<br>25  times just to ask about Mr. Dedrick and about the<br>page 11<br>1  chart.<br>2    Q.    Okay.  And when did y'all meet?  Do you<br>3  remember?<br>4    A.    That was August and 6 -- June and<br>5  August.  Is that right?  June and August.<br>6    Q.    So June of this year and August of this<br>7  year?<br>8    A.    Yes. | **Pl's Obj.:**  R. 401, R. 402. |
| [13:5] - [14:16] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 13<br>5    Q.    Do you read any journals?<br>6    A.    We do, but because of the lot of<br>7  patients that we see, I sometimes -- we don't even<br>8  have time to look much in the journal.  We just<br>9  look at the summary in passing.<br>10    Q.    Right.  What do you read to familiarize<br>11  yourself with medications and their side effects?<br>12  Do you read the package insert?<br>13    A.    I just read the -- I have a software<br>14  PDA, Palm Pilot, and I usually look at the dose of<br>15  medicine with this Palm Pilot and a dose of a<br>16  medicine and the correct spelling of the<br>17  medicine.  And there's so many medicines, that's<br>18  how I do now.  On some instances, the drug<br>19  representative comes to us.  They tell us about | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

20  the drugs, and sometimes when reading journals, we
21  look at the highlighted letters or the warnings in
22  the black box warning.  That's how I do -- that's
23  how I do it.
24     Q.    You usually look at the drug labels for
25  your drugs?
page 14
1     A.    In scanning, yes, sir.  But I just look
2  at the highlighted one, the most important one.
3     Q.    Okay.  Do you look -- do you use the
4  label itself, or do you use the PDR?
5     A.    I use the PDR.  What do you mean "the
6  label"?  This one here, like this.
7     Q.    Yes, sir.  The label that comes with
8  the medicine.
9     A.    In passing, just the most -- just the
10  indication and some adverse side effect and the
11  doses --
12     Q.    Right.
13     A.    -- in passing.
14     Q.    You want to know what the precautions
15  are for the drugs?
16     A.    Yes, sir.  Yes.


[15:2] - [17:5] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 15
2     Q.    Now, this first one, this article about
3  VIGOR, had you seen that before?
4     A.    I've heard about that, but I really
5  forgot.  So many heart study that was done, and
6  it's just like when it's -- enforcement, just make
7  me remember it again.
8     Q.    Something you heard about back when the
9  study came out?
10     A.    I heard about it before, sir.
11     Q.    Do you think you read it before?
12     A.    I don't remember.  I think I did in
13  passing, but I forgot.
14     Q.    It's been many years?
15     A.    It's been many years.
16     Q.    And you treat a lot of patients, don't
17  you?
18     A.    Yes, sir.
19     Q.    I know we're in a rural county, aren't
20  we?
21     A.    Yes, this is a rural county.
22     Q.    And you're a doctor that has a very big

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

23  practice?
24     A.   Yes, sir.
25     Q.   How many patients do you care for?
page 16
1     A.   When I was in the old office, I would
2  see about 40, 45 to 50 patients a day, and now
3  that we've moved here, I see like 25 to 30.
4     Q.   And how long ago did you move?
5     A.   I started my practice in Waynesboro in
6  1994, so I've been in practice 12 years.
7     Q.   And when did you move to this office?
8     A.   I moved to this office in 2006.
9  January of 2006.
10     Q.   So, you've only been here nine or ten
11  months?
12     A.   Yes, sir.
13     Q.   And before January of 2006, you were
14  seeing like 45 patients a day?
15     A.   Yes, sir.
16     Q.   Wow, that's a lot of patients.
17     A.   That's a lot of patients.  There's a
18  lot of poor people.
19     Q.   And a lot of very sick people?
20     A.   Yes, sir.
21     Q.   Is there a lot of heart disease in this
22  county?
23     A.   There's a lot of heart disease in this
24  county.
25     Q.   A lot of smoking?
page 17
1     A.   A lot of smoking, that's true.
2     Q.   And that's something I assume you try
3  to work on your patients, to get them to stop
4  smoking?
5     A.   Yes, sir.


[23:18] - [26:13] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 23
18     Q.   And one of the things I noticed in your
19  stack, too, and sitting in front of you is a copy
20  of the label?
21     A.   Yes, sir.
22     Q.   Now, you had seen the label before, had
23  you not?
24     A.   Yes, sir.
25     Q.   I mean, you saw -- this is a label that
page 24

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

1 was in effect when you were prescribing it?
2    A.   Yes, sir.
3    Q.   And you saw this, did you not?
4    A.   Well, it was given to us by the drug
5 reps.  You know, all of the medicine that they
6 give us, they give us the label like this.
7    Q.   Right.  So you're familiar with the
8 label?
9    A.   Not the whole entirety.  I can say that
10 just in scanning the indication and the doses and
11 some adverse reaction.
12    Q.   Right.
13    A.   Yes, sir.
14          (Defendant's Exhibit Number 5
15           was marked for identification.)
16    Q.   The label that I've marked as Exhibit
17 5, you at least familiarized yourself with what
18 you believe is important information before you
19 prescribed?
20    A.   Yes, sir.
21    Q.   And you would have made sure you were
22 familiar with the important information before you
23 prescribed to Mr. Dedrick, too?
24    A.   Yes, sir.
25    Q.   And the Vioxx label that's marked as
page 25
1 Exhibit 5 is the same one you were familiar with
2 back then?
3    A.   Yes, sir.

| | |
|---|---|
| 4    Q.   Okay.  Now, when you met with<br>5 Mr. Dedrick's attorneys on those two occasions,<br>6 did they ask you any questions about Vioxx? | **Pl's Obj.:**  R. 401, R. 402.<br>R. 801, R. 802. |

7    A.   They just asked me about what's in the
8 chart, the first time I saw Mr. Dedrick, the first
9 time that I prescribed the Vioxx, everything
10 that's in the chart.
11    Q.   Okay.  Did they ask you any questions
12 about whether Vioxx had anything to do with
13 Mr. Dedrick's heart attack?
14    A.   They -- no, sir.  They asked me about
15 -- well, they -- they really don't ask, that they
16 would like me to form my on opinion about that.
17 They didn't tell me Vioxx causes this.  They
18 didn't tell me that.  They just would like to know
19 how many months Mr. Dedrick took the Vioxx.
20    Q.   Right.
21    A.   And when did he have the heart attack.
22 And they clarified the date for me, to make sure
23 we have the correct date as what I did.
24    Q.   And you don't plan to give any
25 testimony in this case about whether Vioxx had

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

page 26
1  anything to do with his heart attack, do you?
2     A.    No.  I'll just be honest with you.  I
3  just tell you what I think is honest and true in
4  the chart and what is -- and everything that I
5  think that is true.  That's what I'm going tell.
6     Q.    Okay.  I understand that.
7     A.    I'm not going to -- I'm going to be
8  objective and things like that.
9     Q.    You -- you have not studied all the
10  information about Vioxx, have you?
11    A.    No, sir, just this.
12    Q.    You know that the FDA has studied this
13  very extensively?


[26:15] - [27:2] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 26
15    A.    I assume they did because that's the
16  FDA.  They should study it.
17    Q.    Do you remember if they put together an
18  advisory committee to study information pertaining
19  to Vioxx?
20    A.    I'm -- I don't know, but I'm sure they
21  do.
22    Q.    You've not seen any clinical data, have
23  you, regarding Vioxx?
24    A.    I don't remember, sir.
25    Q.    Do you plan to give any opinions in
page 27
1  this case about whether Vioxx caused Mr. Dedrick's
2  heart attack at all?


[27:4] - [27:16] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 27
4     A.    I am -- I -- just what is written in
5  the chart.  I really don't want to give --
6     Q.    Right.
7     A.    -- a view --
8     Q.    You don't have the expertise about
9  Vioxx --
10    A.    No, sir.
11    Q.    -- for those kinds of opinions?
12    A.    No.  This is just -- I'm just relying

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

13  on my information in this chart and what happened
14  to Mr. Dedrick.
15      Q.   That's not your area of expertise, is
16  it?


[27:18] - [27:22] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 27
18      A.   No, sir.
19      Q.   About Vioxx?
20      A.   Except for the information that I got
21  from reading that, and that's all.  And I'm not an
22  expert on doing like this in deposition.


[28:20] - [29:2] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 28
20      Q.   You never -- I looked at your medical
21  records.
22      A.   Yes, sir.
23      Q.   And nowhere in there do you ever
24  indicate that Vioxx had anything to do with his
25  heart attack; is that fair?
page 29
1       A.   No, I didn't write anything about Vioxx
2   -- in the chart?


[29:7] - [30:9] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 29
7       Q.   Now, all drugs have side effects, don't
8   they?
9       A.   Yes, sir, all drugs have side effects.
10      Q.   And you have a lot of patients that are
11  on a lot of different medications, don't you?
12      A.   Yes, sir.
13      Q.   Mr. Dedrick is one of them?
14      A.   Yes, sir.
15      Q.   And just because a drug has a side
16  effect, doesn't mean that there's something bad
17  about that, does there?
18      A.   No, sir.  It depends on the person, the

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

19 patient itself.  Each patient has their own
20 reaction to medication.  What is bad for one is
21 not bad for the other one.
22    Q.    Everybody is different, aren't they?
23    A.    Yes, sir.
24    Q.    And depending on somebody's -- what's
25 wrong with them and what they need, you have to
page 30
1 kind of evaluate each medication --
2    A.    Yes, sir.
3    Q.    -- in making the decision, kind of a
4 risk/benefit --
5    A.    Yes, sir.
6    Q.    Now, let me get a little background
7 from you.  Do you have a CV?
8    A.    Yes, sir, I have a CV.  Did you get a
9 copy of my CV?


[30:12] - [37:23] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 30
12    Q.    I'm going to mark your CV as Exhibit
13 Number 6.
14            (Defendant's Exhibit Number 6
15             was marked for identification.)
16    Q.    And can you tell the jury, where did
17 you go to college?
18    A.    I went to the -- I'm from the
19 Philippines, and I went to University of Manila
20 College of Medicine.  That's where I graduated.
21    Q.    And that's in the Philippines?
22    A.    That's in the Philippines.
23    Q.    And that is a major university there?
24    A.    Yes, sir.
25    Q.    And then where did you get your medical
page 31
1 degree?
2    A.    I got it from the Philippines, the
3 medical degree.
4    Q.    And that was from -- in Manila?
5    A.    Yes, sir.
6    Q.    How long does it take to get your
7 medical degree there?
8    A.    You have four years of preparatory
9 medicine and four years of proper medicine, and
10 then you've got one year of post-graduate
11 internship.  And so the nine years, and then you
12 take your board exam.  So it takes nine years to

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

13  finish medicine.
14     Q.   I notice that in May of 1980 through
15  1981, that's when you did your post-graduate
16  medical internship?
17     A.   Yes, sir, in the hospital there in
18  Manila.
19     Q.   And what's the name of that hospital?
20     A.   Prosaris [phonetic] Memorial Medical
21  Center.
22     Q.   And that was in Manila also?
23     A.   Yes, sir.
24     Q.   And Manila is a big city there?
25     A.   It's a big city.
page 32
1      Q.   And then after you got your -- you
2  finished your post-graduate internship in 1981
3  there in the Philippines?
4      A.   Yes, sir.
5      Q.   Did you practice medicine there?
6      A.   I immigrated here.
7      Q.   What year was that?
8      A.   That was -- can I see it, sir?
9      Q.   Yes, sir.
10     A.   That was 1982.  1982.  Over here going
11  upward.
12     Q.   Okay.  And is that when you became an
13  EKG technician?
14     A.   Yes, sir.  When I came here, I don't
15  have a license yet, so I work at Los Angeles, and
16  I applied for a job in the hospital, and they -- I
17  started doing EKG.
18     Q.   Okay.
19     A.   And that's where I started doing that
20  kind of job.
21     Q.   And when did you -- you came here in
22  1982?
23     A.   Yes, sir.
24     Q.   When did you get a medical license in
25  the United States?
page 33
1      A.   I got -- 1993, when I -- in my third
2  year of residency at Cabrini Hospital in New York,
3  I took a board exam in state of New York for a
4  medical license, and I passed the exam.  And that
5  was in 1993.
6      Q.   Okay.  So you took your boards -- after
7  you immigrated here, you took your boards in '93
8  in New York and passed them?
9      A.   Yes, sir.
10     Q.   And became a medical doctor in the
11  U.S.?

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

12   A.   Yes, sir.
13   Q.   And then it looks like you had a --
14  kind of a private practice?
15   A.   Yes, sir.
16   Q.   And where was that?
17   A.   After my residency in New York, my
18  first job was -- I got invited to come here, and
19  this is my first job here:
20   Q.   So you've been here ever since?
21   A.   Yes, sir.
22   Q.   And you worked at the -- was it the
23  Wayne Medical Center?
24   A.   Yes, sir, the hospital for one year.
25  And then after one year, I decided to start my own
page 34
1  private practice.
2   Q.   Is your practice an internal medicine
3  practice?
4   A.   Yes, sir.
5   Q.   Kind of like a family medical doctor?
6   A.   Yes, sir, general practice.
7   Q.   And do you practice with any other
8  doctors?
9   A.   No, sir, I just practice on my own.
10   Q.   And so you went from New York?
11   A.   To Wayne County.
12   Q.   Kind of rural Tennessee?
13   A.   Yes, sir.
14   Q.   And during that time, you built your
15  practice over in an office there by the hospital?
16   A.   Yes, sir.
17   Q.   And that's when you built it to seeing
18  45 patients a day?
19   A.   Yes, sir.
20   Q.   And now you've moved out a little bit?
21   A.   I moved out a little bit here.
22   Q.   And now you're seeing -- what did you
23  say -- about 25 to 30 patients a day?
24   A.   25 to 30 patients a day.
25   Q.   And is it of all ages?
page 35
1   A.   All ages.
2   Q.   Is there a lot of elderly in this
3  county?
4   A.   Yes, sir, there's a lot of elderly.
5   Q.   You mentioned there's a lot of heart
6  disease?
7   A.   There's a lot of heart disease in this
8  county.
9   Q.   And are there other -- is there a lot
10  of diabetes?

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

11   A.   Yes, sir.
12   Q.   A lot of people with a lot of major
13  risk factors for heart disease?
14   A.   There is a lot of them here with risk
15  factors.
16   Q.   And you've been a member of the AMA
17  since 1994?
18   A.   Yes, sir.
19   Q.   You haven't done any board
20  certifications, have you?
21   A.   No, I did not.
22   Q.   Have you ever tried to do any?
23   A.   One time I got sick.  I got sick, and I
24  had to stop.
25   Q.   Was it when you were taking the test?
page 36
1   A.   Yes, when I was taking the test.  So I
2  stopped, and I just totally ignore it because I
3  have my own private practice, and I'm not working
4  for anybody.
5   Q.   You're in a very busy practice?
6   A.   Yes, sir.
7   Q.   Now, do you -- do you -- what hospital
8  -- there's a hospital here locally?
9   A.   Yes, sir, there's a hospital here.
10   Q.   Is that where you do all your hospital
11  work?
12   A.   Yes, sir.
13   Q.   Do you have privileges at that
14  hospital?
15   A.   I do have privileges at the hospital.
16   Q.   Do you have privileges at any other
17  hospitals?
18   A.   No, sir, just this hospital.
19   Q.   Now, in your practice, what are the --
20  what are the most common things you see?  Is there
21  anything you see most commonly?
22   A.   Hypertension, diabetes, upper
23  respiratory infection, metabolic syndrome, high
24  cholesterol, arthritis and low back pain.
25   Q.   Now, many of these are conditions that
page 37
1  Mr. Dedrick has had over the years while you've
2  treated him?
3   A.   Yes, sir.
4   Q.   He's had hypertension?
5   A.   Yes, sir.
6   Q.   He's had diabetes?
7   A.   Yes, sir.
8   Q.   Did you ever diagnose him with
9  metabolic syndrome?

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 10    A.    Well, he qualified for that.  He<br>11 qualifies for that.  He's got all the risk factors<br>12 for metabolic syndrome.<br>13    Q.    I mean, if you wanted to diagnose him<br>14 as having metabolic syndrome, you could?<br>15    A.    Yes, sir.<br>16    Q.    And he has arthritis?<br>17    A.    Yes, sir.<br>18    Q.    And he has low back pain?<br>19    A.    Yes, sir.<br>20    Q.    He's also a heavy smoker, isn't he?<br>21    A.    Yes, sir.<br>22    Q.    And that adds more risk factors?<br>23    A.    Yes, sir.<br><br><br>[38:6] - [40:8] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 38<br>6    Q.    Before that, though, he had a lot of<br>7 the serious risk factors for heart disease?<br>8    A.    Yes, sir.<br>9    Q.    And is it common for you to see<br>10 somebody like Mr. Dedrick that has all these risk<br>11 factors to develop heart disease?<br>12    A.    Yes, sir. | |
| 13    Q.    That's the way you're headed when you<br>14 have these risk factors?<br>15    A.    Yes, sir.<br>16    Q.    And if you smoke two packs of<br>17 cigarettes a day for 25 and 30 years, that can<br>18 lead to heart disease?<br>19    A.    It can lead to heart disease.<br>20    Q.    And can lead to heart attacks?<br>21    A.    Yes, sir. | **Pl's Obj.:**  R.611-leading.<br>Lack of foundation.  Assumes<br>facts not in evidence. |
| 22    Q.    Okay.  Now, he had a lot of pain, too?<br>23 He has over the years, hadn't he?<br>24    A.    Yes, sir, yes.<br>25    Q.    Has he been a chronic pain patient?<br>page 39<br>1    A.    Well, the first time I saw him -- I<br>2 would like to base it on the record.  He fell<br>3 down.  That was the first time I saw him, and he<br>4 was complaining of neck pain, and we did an MRI,<br>5 and there was damage, bulging disk on the neck.<br>6 And that justified the pain.  And from that time<br>7 on, he complains of pain.<br>8    Q.    Since the first time you saw him?<br>9    A.    Yes, sir. | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 10    Q.    And would you agree that he's a chronic<br>11  pain patient?<br>12    A.    Yes, sir.<br>13    Q.    And he's developed arthritis?<br>14    A.    Yes, sir.<br>15    Q.    And he has pain in most of his joints?<br>16    A.    Yes, sir.<br>17    Q.    And those are very difficult patients<br>18  to treat, aren't they?<br>19    A.    Sometimes they are.<br>20    Q.    And why is that?<br>21    A.    Well, it's hard to quantify the pain.<br>22  The pain is very subjective.  And you have to do<br>23  some imaging studies and -- to see if -- to verify<br>24  whether they really have the pain.<br>25    Q.    And I assume you felt all along that<br>page 40<br>1  Mr. Dedrick had the pain?<br>2    A.    Yes, sir.<br>3    Q.    And that's why you prescribed<br>4  medications to him to try to help relieve the<br>5  pain?<br>6    A.    Yes. | |
| 7    Q.    And you've had a lot of trouble finding<br>8  something that will relieve his pain? | **PI's Obj.:**  R.611-leading.<br>Lack of foundation.  Assumes<br>facts not in evidence. |
| [40:10] - [46:16] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 40 | |
| 10    A.    I had trouble finding something to<br>11  relieve the pain.  We have a lot of medicine that<br>12  we can use.  I try not to use narcotic.  That's<br>13  why -- I try to start with NSAID and things like<br>14  that. | **PI's Obj.:**  R.611-leading.<br>Lack of foundation.  Assumes<br>facts not in evidence. |
| 15    Q.    Like Motrin?<br>16    A.    Yes, sir.<br>17    Q.    And did those work for him?<br>18    A.    Initially, it does.  But then he<br>19  continued to have pain, and that medicine is not<br>20  working, so we have to go higher.  So we went to<br>21  narcotic eventually.<br>22    Q.    And you went there because the other<br>23  things weren't relieving the pain?<br>24    A.    Yes, sir.<br>25    Q.    Now, do you keep a sample closet here.<br>page 41<br>1  Do you keep samples?<br>2    A.    Here, yes, I do. | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

3    Q.   And did you keep a sample closet at
4  your other facility?
5    A.   Yes, sir.
6    Q.   And if you ever use samples for
7  patients, do you usually note that in the chart?
8    A.   Yes, sir.
9    Q.   And that's a good practice.
10    A.   Thank you.
11    Q.   And you do that -- you've done that for
12  a number of years?
13    A.   Yes, sir.
14    Q.   And why do you do that?
15    A.   Well, I like to know where my sample is
16  going.  I like to know if the sample I gave is
17  working and so that I can give and prescribe it
18  later on.
19    Q.   I've heard some doctors say they like
20  to give a few samples for the patient to try
21  before the patient goes and buys the medicine --
22    A.   Yes, sir.
23    Q.   -- to make sure it works.
24    A.   Yes, sir.
25    Q.   Do you follow that?
page 42
1    A.   Well, most of my patients are poor, and
2  I would rather help them.  And if I can give a
3  one-month supply, I'll give it to them so that
4  they don't have to buy because they have to spend
5  their own money.  Some medications are not covered
6  by the insurance, so I think I can give help to
7  them by giving them a month supply, and they don't
8  have to worry about buying it.
9    Q.   But when you do that, you write it down
10  in the chart?
11    A.   Yes, sir, I do write it down in the
12  chart.
13    Q.   So if you give a sample, it's written
14  down?
15    A.   Yes, sir.
16    Q.   And if you don't give any samples --
17    A.   It's not, not written.
18    Q.   Now, other than this Journal Watch that
19  you have here --
20    A.   Yes, sir.
21    Q.   -- do you subscribe to any other
22  journals?
23    A.   They gave it to me free.
24    Q.   This Journal Watch?
25    A.   Yeah.  But I just don't have time to
page 43
1  read it.  Just quickly like that.  And something

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

2  that will get my attention, I just read it.  Some
3  of them, I admit, I really -- don't really have
4  time to read it.
5    Q.   Has that been true for many years?
6    A.   Yes, sir.
7    Q.   Do you -- do you -- are there any
8  journals that you read?
9    A.   No, just -- anything.  Anything --
10  well, they gave me a newspaper for American
11  Medical Association.  I sometimes kind of -- all
12  kind of journals, I just kind of preview the
13  title.  But that's all.  If there's some topic
14  that gets my attention, I read them all.
15    Q.   Right.
16    A.   But most of the time, I'm so tired when
17  I go home, I just scan it like this and just put
18  it aside.
19    Q.   Now, do you take calls at the hospital?
20    A.   Yes, sir, I do.
21    Q.   How often?
22    A.   Right now, I take calls like -- I work
23  in the emergency room two days a month, but at
24  that time last year, we go -- we take calls like
25  five calls or four calls in the emergency room.
page 44
1    Q.   A month?
2    A.   Not last.  But last -- five years ago,
3  four calls, four days a month.
4    Q.   That's a lot.
5    A.   That's a lot.  And we -- on call, not
6  in the emergency room, but we get called for
7  problem with a patient.  We do that like four
8  times a month every month.
9    Q.   So you've always had a very busy
10  practice?
11    A.   We all do in Waynesboro.
12    Q.   And are there other internal medicine
13  doctors here?
14    A.   Yes, sir.
15    Q.   And you share calls?
16    A.   Yes, sir, we do.
17    Q.   Now, you are not a cardiologist?
18    A.   I'm not a cardiologist.
19    Q.   If you have patients that have
20  cardiology issues, do you refer them to a
21  specialist?
22    A.   I do refer them to a specialist.
23    Q.   Do you know Mr. Dedrick's specialist?
24    A.   It's Dr. McPherson, Dr. Koenig and
25  Dr. Coltharp.  I heard about them in Heart Group
page 45

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 1  in St Thomas Hospital.<br>2    Q.   Yes, sir.<br>3    A.   That's what -- I remember -- I think I<br>4  was on call in the emergency room when Mr. Dedrick<br>5  had the heart attack, and I was the one who called<br>6  St. Thomas Hospital.  And the doctor on call at<br>7  that time was Dr. McPherson or Dr. Koenig, and<br>8  they took care of him.<br>9    Q.   And they took good care of him?<br>10    A.   Yes, sir.<br>11    Q.   They're respected cardiologists?<br>12    A.   Oh, they are.  They are, sir.<br>13    Q.   And they are a very well-respected<br>14  hospital system?<br>15    A.   Yes, sir.<br>16    Q.   And if you have a patient that has a<br>17  cardiology problem, are these the type doctors you<br>18  want to send them to?<br>19    A.   Yes, sir.  They are the best hospital<br>20  in Nashville.<br>21    Q.   Some say it is the best in the state?<br>22    A.   Yes, sir, they are, Nashville,<br>23  St. Thomas.<br>24    Q.   Now, you know they treated him after<br>25  his heart attack and cared for him?<br>page 46<br>1    A.   Yes, sir.<br>2    Q.   And do you think they gave him good<br>3  care?<br>4    A.   They did.  They did give him good care.<br>5    Q.   And they really got him back on his<br>6  feet quickly?<br>7    A.   Yes, sir. | |
| 8    Q.   Now, do you know that their depositions<br>9  have been taken?<br>10    A.   No. | **Pl's Obj.:**  R. 401, R. 402. |
| 11    Q.   They're the ones that cared for his<br>12  problems after his heart attack, right?<br>13    A.   Yes, sir, they are. | |
| 14    Q.   Would you defer to them on any opinions<br>15  concerning the cardiovascular issues?<br>16    A.   Yes, sir.<br><br><br>[47:1] - [47:3] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations | **Pl's Obj.:**  R. 611 - leading. |
| page 47<br>1    Q.   Would you agree that they probably have<br>2  the most knowledge in the field of cardiovascular | **Pl's Obj.:**  R. 611 - leading. |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 3  health and heart attacks than you do? | |
| | |
| [47:5] - [47:25] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |
| * Defendant's Affirmative Depo Designations | |
| page 47 | |
| 5    A.    They do because they're cardiologists. | PI's Obj.:  R. 611 - leading. |
| 6    Q.    That's what they do every day? | |
| 7    A.    Yes, sir. | |
| 8    Q.    When you have a patient that has this | |
| 9  cardiovascular disease, you don't treat them; you | |
| 10  send them to cardiovascular specialists? | |
| 11    A.    I do.  When they become worse, I do.  I | |
| 12  just maintain the treatment after they come back. | |
| 13    Q.    You follow up with the cardiovascular | |
| 14  -- | |
| 15    A.    I do. | |
| 16    Q.    -- doctors? | |
| 17        Now, Mr. Dedrick had a lot of risk | |
| 18  factors? | |
| 19    A.    Yes, sir.  Yeah. | |
| 20    Q.    Now, those doctors, whose depositions | PI's Obj.:  R. 611 - leading. |
| 21  we took, the ones that cared for him, would you | |
| 22  agree that they are in a very good position to | |
| 23  give us opinions about how those risk factors | |
| 24  contributed to his heart attack? | |
| 25    A.    Yes, sir. | |
| | |
| [48:2] - [48:13] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |
| * Defendant's Affirmative Depo Designations | |
| page 48 | |
| 2    Q.    And are they kind of in a good position | |
| 3  to tell us how well his surgery went? | |
| 4    A.    Yes, sir. | |
| 5    Q.    And would you kind of defer to them for | |
| 6  all the diagnostic tests they did to determine -- | |
| 7    A.    Yes, sir. | |
| 8    Q.    -- how bad the heart attack was and | |
| 9  what his prognosis is? | |
| 10    A.    Yes, sir. | |
| 11    Q.    And would you defer to them, too, as to | PI's Obj.:  R. 611 - leading. |
| 12  whether or not Vioxx played any role in | |
| 13  Mr. Dedrick's heart attack? | |
| | |
| [48:15] - [48:18] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| * Defendant's Affirmative Depo Designations<br><br>page 48 | |
| 15    A.    They should know.  They should know.<br>16  They're the expert.  So, yeah.  You can ask them<br>17  the question.  They should know.<br>18    Q.    And you would defer to them on that? | Pl's Obj.:  R. 611 - leading. |
| [48:20] - [49:18] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 48 | |
| 20    A.    Yeah. | Pl's Obj.:  R. 611 - leading. |
| 21    Q.    Now, I assume -- just some questions I<br>22  always ask.<br>23    A.    Yes, sir.<br>24    Q.    You don't have any expertise in the<br>25  FDA's handling of new drug applications?<br>page 49<br>1    A.    No, sir.<br>2    Q.    Or clinical trials?<br>3    A.    No, no, sir.<br>4    Q.    FDA labeling?<br>5    A.    No.<br>6    Q.    The FDA's determination of whether a<br>7  prescriptions drug is safe and effective?<br>8    A.    No, sir.<br>9    Q.    That's not your area of expertise?<br>10    A.    No, sir.<br>11    Q.    You're on the ground treating patients?<br>12    A.    Yes, sir.<br>13    Q.    But you rely upon the FDA process to<br>14  provide you with, for example, labeling that you<br>15  can utilize?<br>16    A.    Yes, sir.<br>17    Q.    And labeling is very important, is it<br>18  not?<br><br><br>[49:20] - [51:17] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 49<br>20    A.    Yes, sir.<br>21    Q.    And you've never participated -- you've<br>22  never participated in any clinical trials, have<br>23  you? | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 24    A.   No, sir. | |
| 25    Q.   From your chart -- do you mind if I | |
| page 50 | |
| 1  mark that chart?  I will not keep it.  I'll just | |
| 2  mark a copy.  Let me mark your chart as Exhibit | |
| 3  number 7. | |
| 4          (Defendant's Exhibit Number 7 | |
| 5          was marked for identification.) | |
| 6    Q.   And I know this was not a fancy chart, | |
| 7  but this was something you prepared to help you | |
| 8  remember things, right? | |
| 9    A.   Yes, sir. | |
| 10    Q.   You have a pretty big chart on | |
| 11  Mr. Dedrick. | |
| 12    A.   I do.  Yes, sir. | |
| 13    Q.   And this kind of helps you remember the | |
| 14  time line? | |
| 15    A.   Right.  That's true. | |
| 16    Q.   Now, when did you first treat | |
| 17  Mr. Dedrick? | |
| 18    A.   First time was January 13, 1997. | |
| 19    Q.   And the last time you saw him was, you | |
| 20  think, in about -- | |
| 21    A.   A month ago. | |
| 22    Q.   About a month ago? | |
| 23    A.   Yes, sir. | |
| 24    Q.   Now, I'm going -- this chart that you | |
| 25  prepared, it looks like you put down -- what is | |
| page 51 | |
| 1  "LM"? | |
| 2    A.   Those are the Motrin and the narcotic | |
| 3  medicine, the Lortab. | |
| 4    Q.   So this is just helping you remember | |
| 5  what -- | |
| 6    A.   What medicine I gave him when he came | |
| 7  in and the date that he came in. | |
| 8    Q.   Okay.  Now, shortly after you started | |
| 9  treating him, you realized his pain was very | |
| 10  severe? | |
| 11    A.   Yes, sir. | |
| 12    Q.   As a matter of fact, at some point | |
| 13  along there, he was completely disabled and | |
| 14  couldn't work? | |
| 15    A.   Yes, sir. | |
| 16    Q.   That was like '97, '98, '99, that time | **Pl's Obj.:**  R. 611 - leading. |
| 17  period? | Lack of proper foundation. |

[51:19] - [51:21] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| page 51 | |
|---|---|
| 19   A.   Yes, sir. | Pl's Obj.: R. 611 - leading. |
| 20   Q.   And that was because of his pain, | Lack of proper foundation. |
| 21  wasn't it? | |

[51:23] - [54:14] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 51
23    A.    Yes, sir.
24    Q.    And his pain was so bad, you had to put
25  him on a narcotic?
page 52
1    A.    Yes, sir, that's what it says.
2    Q.    And can you explain to the jury when --
3  when do you put people on narcotics versus using a
4  Motrin or an NSAID?
5    A.    Well, when I see a patient, I usually
6  will like to start with NSAID, something that's
7  not addictive.  I really don't want to give the
8  Lortab because of the addictive -- the addiction
9  effect of it.  So I give them the NSAID.  So I --
10  they come back.  So I try to tell him do some
11  basic therapy exercise or heating pad and give
12  them -- take the medicine and rest.  But they
13  still come back, and they said nothing is
14  working.  So I said you have to treat the pain.
15  It's hard to quantify how much pain they have.
16  It's very hard.  There's no objective way.  You
17  can see a patient in pain, some of them crying.
18  And as a doctor, you have to alleviate the pain.
19  That's the reason you're the doctor, to help the
20  patient.  And that the time you start trying
21  narcotic medicine.  I usually start a low dose
22  once a day, low dose Lortab, 5 milligram once a
23  day or two times a day if they come back and say
24  it's not helping.  You just don't want them in
25  pain.  That's how I do that treatment.
page 53
1         Unfortunately, once they start the
2  medicine, they say that's the only medicine that
3  helps.  So you don't have a chart.  You don't want
4  to get -- you just want them to come back because
5  you want to be sure that at some point, you can
6  stop it.  You know you want to assess the
7  patient.  If he's working, can you cut it out; if
8  not, no, you have to keep on taking it.  That's
9  the reason I gave it.  This is the only medicine