Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| Designation | Objection |
|---|---|
| 8 mentioning to you that he might be having erectile<br>9 dysfunction problems?<br>10   A.   That's right. That's correct.<br>11   Q.   And his -- is this common with somebody<br>12 with hypertension and diabetes?<br>13   A.   Yes, it is common. | is unfairly prejudicial to Plaintiff and subject of MIL # 1. Irrelevant to Plaintiff's injuries. |
| [145:17] - [145:20] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 145<br>17   Q.   Is that right? August 8th of '02; do I<br>18 have that right?<br>19       MR. BIRCHFIELD: Objection.<br>20   A.   I got Vioxx wrong. July. | Please remove objection. |
| [145:22] - [146:18] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 145<br>22   Q.   I'm sorry. Vioxx 25 milligrams?<br>23   A.   Yes, sir.<br>24   Q.   Okay. Now, from there until he had his<br>25 heart attack, was there any place in the records<br>page 146<br>1 that indicated that he had any complaint about the<br>2 Vioxx?<br>3   A.   No, sir. He never had any -- except<br>4 for the Vioxx not easing the pain on December 23,<br>5 2002.<br>6   Q.   Okay. We'll get to that one in just a<br>7 second.<br>8       On October 14th, 2002, did you seek to<br>9 treat his erectile dysfunction?<br>10   A.   Yes. I tried to give him some Viagra<br>11 samples on October 14th, 2002.<br>12   Q.   Okay. Do you know if -- whether they<br>13 helped him or not?<br>14   A.   I don't have -- I don't have<br>15 documentation here.<br>16   Q.   Okay.<br>17   A.   It must have helped him because he<br>18 never said anything bad about it. | |
| [147:19] - [151:2] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

\* Defendant's Affirmative Depo Designations

page 147
19   Q.   Now, between the time when he got out
20  of prison and you saw him in July of '02 and when
21  you saw him the last time before his heart attack
22  on January 7th, '03, were you able to slowly over
23  that time get his blood pressure under control?
24   A.   It says here on January 7th, 2003, his
25  blood pressure is 110 over 70, which is low.
page 148
1   Q.   That's one of the best ones he's had,
2  isn't it?
3   A.   Yeah, that's right.
4   Q.   And so do you recall what blood
5  pressure medication he was on at that time?
6   A.   I put him on Cardizem.
7   Q.   You found that --
8   A.   60 milligrams once a day and Vasotech
9  once a day.
10   Q.   So this combination, it appears at
11  least on that day, it was working?
12   A.   It was working even on December 23,
13  2002. His blood pressure is already 123 over 84.
14  It's going down.
15   Q.   The one before that 12/17, he was --
16   A.   It was high, 150 over 86.
17   Q.   So between December 17th and December
18  23rd, did this combination of Cardizem and
19  Vasotech seem to work?
20   A.   Yes, sir.
21   Q.   And it was still working on January
22  7th?
23   A.   2003.
24   Q.   Is that a blood pressure that you liked
25  to see with a diabetic?
page 149
1   A.   Yes, sir.
2   Q.   And on January 7th, what did he come
3  see you for?
4   A.   He came to see me for pain on his left
5  knee and on his neck. He was also complaining of
6  coughing, runny nose and sneezing.
7   Q.   And what did you -- did you continue to
8  prescribe him pain medications?
9   A.   I gave him the Vioxx on January 7th,
10  2003, because I wanted to control the
11  inflammation.
12   Q.   And was he still on Lortab?
13   A.   He was still supposed to be on Lortab,
14  still on Lortab.

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 15  Q.   Okay. And was he continuing to take<br>16 his blood pressure medication?<br>17  A.   Yes, sir.<br>18  Q.   And was he still taking his diabetes<br>19 medication?<br>20  A.   That's right.<br>21  Q.   Was he taking -- other than some maybe<br>22 for his nose, was he taking any other medications<br>23 that you remember?<br>24  A.   Yeah. He was taking Flonase for sinus<br>25 allergy. You spray it through your nose to stop<br>page 150<br>1 the inflammation of the allergy, the inflammation<br>2 of the tiranex [phonetic] to stop the drainage of<br>3 your nose.<br>4  Q.   And the next time you saw him was after<br>5 his heart attack?<br>6  A.   That's right.<br>7  Q.   I don't note his heart attack in your<br>8 records.<br>9  A.   I don't have it in my records.<br>10  Q.   But you were aware of it?<br>11  A.   I was the doctor on call in the<br>12 emergency room when he came in with the heart<br>13 attack.<br>14  Q.   Did he come in by ambulance, or did he<br>15 come in on his own?<br>16  A.   He came in on his own, and he was<br>17 clutching his chest, and we diagnosed him<br>18 immediately with heart attack with EKG and --<br>19  Q.   Now, did you give him thrombolytics?<br>20  A.   I did give him thrombolytic therapy.<br>21  Q.   Do you know that his cardiologist feels<br>22 that that did a lot to help him? Did you know<br>23 that?<br>24  A.   I don't remember. No, sir. | |
| 25  Q.   Well, his cardiologist said that helped<br>page 151<br>1 to quickly reprofuse him, and they felt that that<br>2 was part of the reason he had very good result. | Pl's Obj.: R. 401, R. 402.<br>Sidebar. |

[151:4] - [152:1] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 151

| | |
|---|---|
| 4  Q.   Did you know that?<br>5  A.   That's what he told me afterwards.<br>6  Q.   I'm just telling you you did a good<br>7 thing. | Pl's Obj.: R. 401, R. 402.<br>R. 801, R. 802. |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 8   A.   Thank you.<br>9   Q.   And then he was -- it's my<br>10  understanding when he had his heart attack, he was<br>11  flown to Nashville?<br>12  A.   I called the life flight, and we flew<br>13  him to St. Thomas.<br>14  Q.   And that's to get him there quickly?<br>15  A.   Yes, sir.<br>16  Q.   Because how long would it take to drive<br>17  to Nashville?<br>18  A.   Two hours.  Take him like 25 minutes to<br>19  go to St. Thomas.<br>20  Q.   And then when he went there, his care<br>21  was in the hands of those cardiologists there?<br>22  A.   Yes, sir.<br>23  Q.   And they did -- or did you understand<br>24  what they did, what kind of procedures they did?<br>25  A.   They did a bypass surgery, three-vessel<br>page 152<br>1   bypass -- four-vessel bypass. | |

[152:11] - [153:9] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

| | |
|---|---|
| page 152<br>11       Let me hand you Exhibit 12 and see if<br>12  that kind of refreshes your memory on that.<br>13           (Defendant's Exhibit Number 12<br>14           was marked for identification.)<br>15  A.   Okay.  Yes, sir.<br>16  Q.   Do you remember that at all?<br>17  A.   I remember it.<br>18  Q.   Yeah.  Are you aware that after they<br>19  did the -- after Dr. Koenig did the<br>20  catheterization, that he recommended because of<br>21  how severe the disease was, that he have bypass<br>22  surgery?<br>23  A.   That's what's written there.<br>24  Q.   And I assume you would defer to the<br>25  cardiologists as what the appropriate course of<br>page 153<br>1   treatment is?<br>2   A.   I would, yes, sir.<br>3   Q.   Now, are you also aware that<br>4   Dr. Coltharp was the surgeon that did the bypass<br>5   surgery?<br>6   A.   That's what is written there. | |
| 7   Q.   Are you aware that they found<br>8   Mr. Dedrick to have a normal ejection fraction | Pl's Obj.: R.611-leading. |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 9  following the heart attack? | |
| [153:11] - [153:21] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 153 | |
| 11   A.   Yes, sir. | Pl's Obj.: R.611-leading. |
| 12   Q.   Why is that important?<br>13   A.   Normal ejection fraction?<br>14   Q.   Yes, sir.<br>15   A.   It's important because he didn't have<br>16  any heart damage of heart muscle and that<br>17  prevented him from developing a complication from<br>18  heart failure later on. | |
| 19   Q.   The bypass surgery that they did for<br>20  him, it's my understanding that he was up and out<br>21  of the hospital in three or four days? | Pl's Obj.: R.611-leading.<br>Lack of foundation. R. 602.<br>Speculation. |
| [153:23] - [154:1] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 153 | |
| 23   A.   Yes, sir.<br>24   Q.   Is that -- I think that's right. Is<br>25  that a good result?<br>page 154<br>1   A.   That's good. | Pl's Obj.: R.611-leading.<br>Lack of foundation. R. 602.<br>Speculation. |
| [154:8] - [156:6] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 154<br>8   Q.   Since he had his heart attack, are you<br>9  aware of any problems he's had with his heart?<br>10   A.   At this time, he denies any problem.<br>11  He feels fine, according to him.<br>12   Q.   And you have seen him a lot since his<br>13  heart attack?<br>14   A.   Yes, sir, I have.<br>15   Q.   And you've examined him many times?<br>16   A.   Yes, sir.<br>17   Q.   During that time, have you seen any<br>18  indication of him having any problem from that<br>19  heart attack?<br>20   A.   He -- no, he feels fine. That's what | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| Testimony | Objections |
|---|---|
| 21 he told me.<br>22  Q.  And do you, as the doctor, believe he's<br>23 doing very well?<br>24  A.  Yes, sir, he is.<br>25  Q.  Are you aware of any -- as his doctor,<br>page 155<br>1 any restrictions he should have on him since his<br>2 heart attack due to the heart attack?<br>3  A.  Well, he needs to watch his sugar. He<br>4 needs to avoid smoking. And he needs to watch his<br>5 food. He needs to lose weight and --<br>6  Q.  He needs to exercise?<br>7  A.  He needs to exercise. He needs to<br>8 control -- his cholesterol is well controlled. We<br>9 were able to bring it down 56 and 58, the bad<br>10 cholesterol. | |
| 11  Q.  And you brought it down from way up<br>12 there?<br>13  A.  Yes, sir. | Pl's Obj.: R. 611. |
| 14  Q.  After his heart attack, have you been<br>15 able to control some of these -- help him control<br>16 some of these risk factors?<br>17  A.  I did after the heart attack. I was<br>18 able to control some of the risk factors.<br>19  Q.  And is that good for him, for his<br>20 future?<br>21  A.  Yes, sir.<br>22  Q.  Since his heart attack, other than<br>23 trying to reduce all his risk factors, are you<br>24 aware of anything, any restriction the heart<br>25 attack has placed on him from doing the things he<br>page 156<br>1 wants to do?<br>2  A.  Not -- no, did some doctors told him?<br>3 Is that what you say, some specialist,<br>4 cardiologist?<br>5  Q.  I'm not aware of any restrictions.<br>6  A.  I'm not aware of any restrictions. | |

[156:8] - [156:14] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

| | |
|---|---|
| page 156<br>8  Q.  I'm not hiding anything from you. I<br>9 have not -- we took the depositions of the<br>10 cardiologists.<br>11  A.  Yes, sir.<br>12  Q.  And assume with me that they told us he<br>13 has no restrictions other than what you say, to | Pl's Obj.: Improper foundation. Assumes facts not in evidence. |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 14  live healthy. | |
| [156:16] - [157:19] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 156 | |
| 16    A.   Yeah. | Pl's Obj.:  Same. |
| 17    Q.   But I was wondering if you were aware<br>18  of any restrictions he's under.<br>19    A.   No, sir.  No.<br>20    Q.   Do you think the bypass surgery --<br>21    A.   Helped him --<br>22    Q.   -- has helped him?<br>23    A.   Yes, sir, it has.<br>24    Q.   In what way?<br>25    A.   Well, he was able to have good<br>page 157<br>1  profusion of the heart muscles because of the<br>2  open-heart surgery in the heart.  His ejection<br>3  fractions remain stable and good. | |
| 4    Q.   His -- have you had patients before<br>5  that the first time they know anything about<br>6  having heart disease is when they have a sudden<br>7  death from a heart attack?  Does that happen?<br>8    A.   Yes, sir. | Pl's Obj.:  R. 401, R. 402. |
| 9    Q.   If the patient has very severe heart<br>10  disease, like three-vessel disease with -- like<br>11  Mr. Dedrick had with, you know, anywhere from 50<br>12  percent to 90 percent blockage --<br>13    A.   Yes, sir.<br>14    Q.   -- if they have a heart attack and<br>15  survive it with a good ejection fraction, is that<br>16  unusual?<br>17    A.   No, sir. | Pl's Obj.:  R. 611 - leading.<br>Improper hypothetical. |
| 18    Q.   Is that because our medicine is so good<br>19  today, our cardiologists?<br><br>[157:21] - [158:23] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 157<br>21    A.   The surgery was very good.  It was done<br>22  properly.<br>23    Q.   Did he benefit from having such a good<br>24  medical center --<br>25    A.   Yes, sir.<br>page 158 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 1  Q.  -- close by?<br>2  A.  Yes, sir.<br>3  Q.  And did he benefit from having<br>4  thrombolytic therapy?<br>5  A.  Yes, sir, he did. | |
| 6  Q.  Other than living a healthy lifestyle,<br>7  do you have him on any restrictions today because<br>8  of his heart attack?<br>9  A.  No, sir, just healthy lifestyle. | **Pl's Obj.:**  Asked & answered. |
| 10  Q.  Now, do you know if Mr. Dedrick<br>11  continues to smoke?<br>12  A.  I don't know. I don't know.<br>13  Q.  Have you talked to him about that since<br>14  his heart attack?<br>15  A.  I always do tell him not to smoke.<br>16  Q.  If he continues to smoke after his<br>17  heart attack, what kind of problems can that<br>18  cause?<br>19  A.  That can cause narrowing of your<br>20  artery, coronary artery, and nicotine can cause<br>21  vasoconstrictions. It can cause some blockages<br>22  again, poor circulation, poor blood supply of your<br>23  heart muscles. It can cause chest pain.<br><br><br>[159:6] - [160:7] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 159<br>6  Q.  And if he's continuing to smoke, is he<br>7  taking a great risk?<br>8  A.  Smoke, yes, sir. It's not -- yes,<br>9  sir. Smoking is not good.<br>10         (Defendant's Exhibit Number 13<br>11            was marked for identification.)<br>12  Q.  I'm going to hand you what I've marked<br>13  as Exhibit 13 and this is a doppler study you had<br>14  done in March -- April of '03. Do you see that?<br>15  A.  That's right.<br>16  Q.  And down there under the "Impressions,"<br>17  it talks about mild occlusion?<br>18  A.  Occlusion of the coronary artery.<br>19  Q.  Is that consistent with somebody that<br>20  has, you know, vascular disease?<br>21  A.  Yes, sir.<br>22  Q.  This is showing more occlusions?<br>23  A.  It shows occlusions of the artery.<br>24  Q.  And where are these?<br>25  A.  It was --<br>page 160 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

```
1   Q.  It says in the legs?
2   A.  On the leg, below the knee mostly.
3   Q.  Okay.
4   A.  More on the left side, left leg.
5   Q.  And was this because of some leg pain,
6  you would have done this?
7   A.  Yes, sir.
```

[160:12] - [161:10] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

page 160

| | |
|---|---|
| 12  Q.  Were you aware that he had had two very<br>13 serious automobile accidents?  Do you remember<br>14 that?<br>15   A.  I don't remember, sir.<br>16   Q.  I think maybe your initial -- it was in<br>17 your initial history?<br>18   A.  He had initial history.  History of<br>19 MVA.  I remember that here.  History of motor<br>20 vehicle accident in 1992.<br>21   Q.  Okay.  As a matter of fact, he had two<br>22 of them.<br>23   A.  With left collapsed lung and left rib<br>24 fractures.<br>25   Q.  As a matter of fact, I'll mark for you<br>page 161<br>1 his history.  It's Exhibit 14, which a progress<br>2 note in August of 2003 at Tennessee Valley HCS.<br>3       (Defendant's Exhibit Number 14<br>4        was marked for identification.)<br>5   Q.  And if you'll look at that, it talks<br>6 about on the front of his history -- do you see<br>7 that --<br>8   A.  1988 --<br>9   Q.  Yeah.  It says an auto wreck with<br>10 cracked ribs and head injury? | **Pl's Obj.:** R. 401, R. 402.<br>Testimony relating to prior accidents is remote & irrelevant to Plaintiff's condition at time he was prescribed Vioxx or suffered a heart attack. |

[161:15] - [162:15] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

| | |
|---|---|
| page 161<br>15   Q.  And do you see it talks about another<br>16 auto accident in 1992?<br>17   A.  Yes, sir.<br>18   Q.  With a head injury, fractured ribs,<br>19 fractured patella? | **Pl's Obj.:** R. 401, R. 402.<br>Testimony relating to prior accidents is remote & irrelevant to Plaintiff's condition at time he was prescribed Vioxx or suffered a heart attack. |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 20  A.  Uh-huh.<br>21  Q.  Could that be the cause of some of his<br>22  pain?<br>23  A.  It could be. Could be the cause of<br>24  some of the pain.<br>25  Q.  The back and the neck pain?<br>page 162<br>1  A.  Yes, sir. | It is undisputed that Plaintiff suffers from osteoarthritis. |
| 2  Q.  If you'll also flip to page two, about<br>3  a third of the way down, you notice some -- what<br>4  is this? August 2003. This is some eight months<br>5  after his heart attack. What does it say about<br>6  whether he's a smoker or not?<br>7  A.  Current smoker. And smoking cessation<br>8  constantly was given to him.<br>9  Q.  Somebody like him, if he's offered<br>10 smoking cessation therapy, counseling, should he<br>11 take it?<br>12  A.  Yes, sir, he should.<br>13  Q.  What does it say he did?<br>14  A.  He declines to be referred to smoking<br>15 cessation class. | |

[162:22] - [164:7] 10/24/2006 Herrera, Esmeraldo 9-14-2006

* Defendant's Affirmative Depo Designations

| | |
|---|---|
| page 162<br>22  Q.  Now, you help -- you wrote a letter to<br>23 help support him for disability benefits?<br>24  A.  Yes, sir, I did.<br>25  Q.  And it's my understanding that the<br>page 163<br>1 disability was actually granted as of the date in<br>2 1999. Were you aware of that?<br>3  A.  I heard that he was able to get his<br>4 disability. But I forgot what year it was given.<br>5  Q.  As a matter of fact, I'll mark as<br>6 Exhibit 15 the disability determination where they<br>7 granted it. And if you'll look, that's -- that's<br>8 Exhibit 15.<br>9  A.  Yes, it is.<br>10       (Defendant's Exhibit Number 15<br>11       was marked for identification.)<br>12  Q.  If you'll look down at the date they<br>13 began the disability. Do you see that?<br>14  A.  Yes, sir.<br>15  Q.  What is that date?<br>16  A.  July 3, 1999.<br>17  Q.  Okay. Is that about the date when you | Pl's Obj.: R. 401, R. 402. Plaintiff's disability claim is irrelevant to his claim that Vioxx is unreasonably dangerous, and was a substantial contributing cause of his heart attack. Irrelevant to damages as well since Plaintiff does not claim lost wages. Moreover, the disability claim was filed in August 1993, after Plaintiff's heart attack not in 1999. The disability judge ordered disability benefits back to 1999; this was not requested in Plaintiff's disability petition. R. 602. Witness lacks personal knowledge of this matter other than his report. R. 403. Testimony would be confusing to jury on immaterial facts and waste the jury's |

Case 2:05-md-01657-EEF-DEK   Document 8322-3   Filed 10/27/06   Page 11 of 18

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 18  quit seeing him for a while, when he went off<br>19  somewhere?<br>20     A.  Yes, sir. I did see him that day.<br>21     Q.  And that was several years prior to him<br>22  having any heart problems, that you're aware of?<br>23     A.  Yes, sir. | time. |
| 24     Q.  Can stress be a cardiovascular risk?<br>25     A.  It can. It is.<br>page 164<br>1     Q.  If you saw any problem with<br>2  Mr. Dedrick's cardiovascular issues, would you<br>3  send him back to the cardiovascular --<br>4     A.  I would.<br>5     Q.  -- the cardiologists?<br>6     A.  I would send him back. | |
| 7     Q.  And you haven't needed to, have you? | Pl's Obj.:  R. 611. |
| [164:9] - [164:23] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 164 | |
| 9     A.  I usually tell him to see the<br>10  cardiologist once a year. All my patients with<br>11  bypass or cardiac problem or heart attack, I make<br>12  it a point that they see their cardiologist once a<br>13  year. | Pl's Obj.:  R. 611. |
| 14     Q.  Let me talk to you a minute about --<br>15  we've talked about earlier that sales<br>16  representatives from the pharmaceutical companies<br>17  --<br>18     A.  That's correct.<br>19     Q.  -- will come to see you?<br>20     A.  Yes, sir.<br>21     Q.  And generally, you consider that to be<br>22  helpful to you?<br>23     A.  Yeah, they're very helpful.<br><br><br>[167:15] - [167:16] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 167<br>15     Q.  Do you feel that anyone -- anybody from<br>16  Merck ever misled you in any way?<br><br><br>[167:18] - [171:15] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

\* Defendant's Affirmative Depo Designations

page 167
18   A.   I don't think they really would likely
19 misled me, I don't believe.
20   Q.   You believe they were honest people?
21   A.   I believe they were -- I believe them.
22 They were honest.
23   Q.   If you ever asked them questions and
24 needed information, would they give it to you?
25   A.   Yes, sir.
page 168
1   Q.   Do you recall them giving you copies of
2 labels?
3   A.   All of them does, they give me
4 brochures about the product.
5   Q.   So if somebody from Merck gave you a
6 copy of a label of Vioxx or mailed it to you, that
7 would not surprise you?
8   A.   No, it would not. They do that.
9          (Defendant's Exhibit Number 16
10            was marked for identification.)
11   Q.   Let me hand you what is marked as
12 Exhibit 16. And, actually, the front page is what
13 the outside of the envelope would have said. But
14 let me represent to you that this is information
15 about the Vioxx label --
16   A.   Okay.
17   Q.   -- that Merck records show was mailed
18 to you.
19   A.   Okay.
20   Q.   At some point in time -- and it's got a
21 letter and then that label we've already seen.
22 Okay? That's my representation to you.
23   A.   Okay.
24   Q.   If you take a minute to look at it, and
25 tell me, one, would you dispute that that was sent
page 169
1 to you and, two, do you remember it?
2   A.   I don't remember it.
3   Q.   Okay.
4   A.   I don't remember it.
5   Q.   Is this the type of information that
6 you would receive from pharmaceutical companies?
7   A.   Yes, sir, I do. I do see a lot of
8 information about different kind of drugs.
9   Q.   Do you know one way or the other
10 whether you ever read this?
11   A.   I don't remember. I don't remember.
12   Q.   All right. Is it possible that you
13 received it?

Case 2:05-md-01657-EEF-DEK   Document 8322-3   Filed 10/27/06   Page 13 of 18

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

14   A.   It's possible that I -- I may have
15   received this.
16   Q.   As a matter of fact, if you'll look at
17   the back of it, you'll see that attached it to is
18   the same label we went over earlier today.
19   A.   Okay.
20   Q.   The label that was in effect when you
21   prescribed Vioxx to Mr. Dedrick.
22   A.   Yes, sir.
23   Q.   You did see the label back then?
24   A.   Yes, sir.
25   Q.   You're just not sure if you saw the
page 170
1   letter?
2   A.   That's right.
3   Q.   Is that fair?
4   A.   Yes, sir.
5   Q.   We talked earlier about pharmaceutical
6   companies sending you information from time to
7   time.
8   A.   That's correct.
9   Q.   That could be helpful.
10           (Defendant's Exhibit Number 17
11              was marked for identification.)
12   Q.   Let me hand you this letter that I've
13   marked as Exhibit Number 17.  That's back from a
14   year before June of 2001 after the VIGOR results
15   were out.
16   A.   Okay.
17   Q.   And you'll see it's dated June 8,
18   2001.  And did they have your correct address on
19   there back at that time?
20   A.   Yes, sir, it was my correct address.
21   Q.   Do you remember a Merck medical
22   representative named Lee English?
23   A.   Yeah, I remember him.
24   Q.   And the letter starts off saying that
25   Lee has referred your request, meaning your --
page 171
1   your doctors to them, for information regarding
2   Vioxx and your inquiry concerned a request for a
3   reprint of the VIGOR trial.  Do you see that?
4   A.   Yes, sir.
5   Q.   And if you'll look down at the bottom
6   of the page, it talks about the enclosed reprint
7   of the VIGOR study should be reviewed for complete
8   information.
9   A.   Okay.
10   Q.   Does this refresh your recollection
11   about whether you saw that VIGOR study before?
12   A.   I must have gotten it, but I don't

Case 2:05-md-01657-EEF-DEK   Document 8322-3   Filed 10/27/06   Page 14 of 18

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 13  think I remember it. | |
| 14    Q.   It's been a long time, hadn't it? | Pl's Obj.:  R. 401, R. 402. |
| 15    A.   Yes, sir. | |
| [172:12] - [172:23] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 172<br>12    Q.   I understand.  Is it possible that this<br>13  was received by your office, but that you just did<br>14  not have time to review it?<br>15    A.   Yes, sir. | |
| 16    Q.   You did look at -- read and look at the<br>17  label back at that time, though, true?<br>18    A.   The label.<br>19    Q.   Just the label, you looked at earlier?<br>20    A.   Yes, sir, I did.<br>21    Q.   And would that have been the one that<br>22  came with the product or one that you looked at --<br>23    A.   That came with the product. | Pl's Obj.:  R. 611. |
| [173:20] - [174:4] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 173<br>20         MR. SKIDMORE:  Doctor, last thing I had<br>21    for right now is I'm going to just make your<br>22    file Exhibit 18, all your papers.  And while<br>23    we were off the record, I just mentioned that<br>24    you had agreed to have somebody copy it, and<br>25    we really do appreciate that, and also let<br>page 174<br>1    you know that we would like to reimburse you<br>2    for any cost for doing that.  And we'll make<br>3    your entire chart Exhibit 18, and I'll pass<br>4    the witness. | Pl's Obj.:  Not a question.<br>Sidebar.  No foundation for<br>document. |
| [198:20] - [199:9] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 198 | |
| 20    Q.   You mentioned earlier that you thought<br>21  that he was physically disabled like in 1997.<br>22  Were you just going off your memory there?  Is<br>23  that just the best you remember? | Pl's Obj.:  R. 611.  Lack of<br>proper foundation.  Merck's<br>counsel misrepresents<br>witness's prior testimony. |

Case 2:05-md-01657-EEF-DEK   Document 8322-3   Filed 10/27/06   Page 15 of 18

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| 24  A.   He was hurting all the time, and the<br>25  MRI in 1997 showed some bulging disks.<br>page 199 | |
| 1   Q.   If Tony said and records showed that he<br>2   was working like heavy construction up until 1999,<br>3   would that -- would that surprise you?<br>4   A.   Yeah.<br>5   Q.   Okay.<br>6   Q.   And why is that?<br>7   A.   Well, he's complaining of pain, unable<br>8   to ambulate without having pain, and then working<br>9   heavy construction, that would be surprising. | **Pl's Obj.:** R. 401, R. 402.<br>Plaintiff's arthritis pain<br>in 1999 is irrelevant to his<br>claims. Moreover, witness<br>is speculating and lacks<br>personal knowledge since<br>him as a patient 1 or 2<br>times prior to 1999. |
| [202:24] - [203:3] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 202 | |
| 24  Q.   Were you aware that at the time<br>25  Mr. Dedrick had his bypass and when he was<br>page 203<br>1   discharged that his cardiologists and<br>2   cardiovascular surgeons believed that he had a<br>3   normal ejection fraction? | **Pl's Obj.:** R. 611. |
| [203:5] - [203:19] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 203 | |
| 5   Q.   Were you aware of that?<br>6   A.   That's what -- that's -- what the<br>7   letter said. There was normal left ventricular<br>8   function during the catheterization, and after<br>9   that, they decided to do the bypass, based on the<br>10  letter.<br>11  Q.   And is that a good thing, that he had a<br>12  normal --<br>13  A.   Yes, sir.<br>14  Q.   Does that mean he's got a strong heart?<br>15  A.   Strong heart. It's not damaged at all<br>16  by the heart attack. | **Pl's Obj.:** R. 611. |
| 17  Q.   Now, are you aware that sometimes right<br>18  after a heart attack, the heart can be stunned a<br>19  little bit? | **Pl's Obj.:** R. 611. |
| [203:21] - [204:4] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| | |
|---|---|
| * Defendant's Affirmative Depo Designations<br><br>page 203 | |
| 21  A.  Yes, sir. | Pl's Obj.: R. 611. |
| 22  Q.  The 35 to 40 percent that<br>23 Mr. Birchfield mentioned to you earlier, are you<br>24 aware that that was done before the heart<br>25 catheterization? Did you remember that?<br>page 204<br>1  A.  No, I didn't know that. | |
| 2  Q.  Were you aware that at the time of the<br>3 heart catheterization, they found an ejection<br>4 fraction of 55 to 60 percent? | Pl's Obj.: R. 611. R. 602<br>Witness lacks personal knowledge. |
| [204:6] - [205:6] 10/24/2006 Herrera, Esmeraldo 9-14-2006<br><br>* Defendant's Affirmative Depo Designations<br><br>page 204 | |
| 6  A.  I'm not aware, but it's possible<br>7 because it's more accurate when they do the<br>8 catheterization. That's the -- it gives you the<br>9 true ejection fraction. It's more 100 percent<br>10 accurate. | Pl's Obj.: R. 611. R. 602<br>Witness lacks personal knowledge. |
| 11  Q.  If you had to look at an echo to find<br>12 the ejection fraction or work -- look at a cardiac<br>13 cath report, what would you do for your patient?<br>14  A.  The cardiac cath is more accurate. You<br>15 rely on the cardiac cath. | |
| 16  Q.  In terms of Mr. Dedrick's diabetes in<br>17 prison, you weren't involved in that?<br>18  A.  I was not involved in that.<br>19  Q.  So it's kind of hard for you to comment<br>20 on it if you weren't involved?<br>21  A.  Yes, sir.<br>22  Q.  Okay.<br>23  A.  I don't know who was the doctor that<br>24 treated him. I don't know who was the doctor that<br>25 gave the insulin. I do not know. | Pl's Obj.: R. 401, R. 402,<br>R. 403. Reference to prison<br>is unfairly prejudicial to<br>Plaintiff and subject of MIL # 1.<br>Irrelevant to Plaintiff's injuries.<br>R. 602. |
| page 205 | |
| 1  Q.  When you prescribe people narcotics,<br>2 would you recommend they do heavy construction<br>3 work?<br>4  A.  No.<br>5  Q.  That would be something that would be<br>6 warned against, wouldn't it? | Pl's Obj.: R. 401, R. 402,<br>R. 403. |
| [205:7] 10/24/2006 Herrera, Esmeraldo 9-14-2006 | |

Dedrick v. Merck Co., Inc.
Defendant's Affirmatives and Plaintiff's Objections to Deposition Testimony of Dr. Esmeraldo Herrera
Exhibit "A"

| * Defendant's Affirmative Depo Designations | |
|---|---|
| page 205 | |
| 5    Q.    That would be something that would be<br>6  warned against, wouldn't it?<br>7    A.    Yes, sir. | **Pl's Obj.:** R. 401, R. 402, R. 403. |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| This document relates to<br>CASE NO. 2:05CV2524 | * | JUDGE FALLON |
| ANTHONY WAYNE DEDRICK,<br>an Individual, | * | MAG. JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**Plaintiff's Counter-Designations of Deposition Testimony of Esmeraldo Herrera, M.D.
Exhibit "B"**

| Start Page | Line | End Page | Line |
|---|---|---|---|
| 29 | 3 | 29 | 6 |
| 37 | 24 | 38 | 5 |
| 72 | 6 | 73 | 3 |