# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE |
| CHARLES L. MASON, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE IMPROPER PERSONAL OPINIONS OF DAVID GRAHAM REGARDING THE FOOD AND DRUG ADMINISTRATION

### (MOTION IN *LIMINE* NO. 2)

In *Smith v. Merck*, Dr. David Graham was allowed to offer his personal opinions criticizing the Food and Drug Administration ("FDA") and the regulatory process. As part of that testimony, Dr. Graham opined that the FDA rules should be different and that the higher standards he suggests were not met by Merck. Dr. Graham's subjective criticism of the FDA's rules and decisions have no relevance to the issues in this case and, if admitted, would only confuse and mislead the jury. He was not involved in any FDA decision regarding Vioxx, and has no expertise in either drug labeling or the approval process. Moreover, his personal views on how and whether Vioxx should have been approved and labeled are inconsistent with the FDA's own regulations. But, even if Dr. Graham's opinions about the FDA were correct – and they are

not – it is for Congress, not the jury, to address such concerns. Accordingly, Merck requests that the Court exclude Dr. Graham's testimony in full.

## I.   DR. GRAHAM'S SUBJECTIVE ETHICAL OR NORMATIVE STANDARDS CONCERNING THE FEDERAL REGULATIONS, THE FDA, AND MERCK ARE IRRELEVANT AND UNRELIABLE.

An expert's personal opinions that are not grounded in any established standard should be excluded under Rule 702. *See, e.g.*, *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (excluding an expert's testimony because "no understandable scientific basis is stated. Personal opinion, not science, is testifying here"); *see also Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (holding that "conclusions based only on personal opinion and experience do not suffice" to establish the reliability or utility of expert testimony). Rule 702 does not permit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589-90 (1993) (more is required than "subjective belief or unsupported speculation"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (courts should guard against the admission of subjective or speculative opinions).

Dr. Graham's proposed testimony is replete with opinions that are little more than his personal views. For example, much of Dr. Graham's testimony is an elaboration of why and how he believes the FDA is "broken":

- "The FDA, its Center for Drug Evaluation and Research, are broken."

- "[W]hat FDA frequently does, almost always does, is it takes the efficacy – when it says benefits exceed the risks, what it's really saying is in our estimation, the FDA's estimation, the efficacy should lead to a benefit, and we say that benefit exceeds the risk. But FDA has never done a formal benefit analysis on any drug product to my knowledge."

831919v.1

- "Vioxx is the single greatest drug safety catastrophe in the history of this country" and "a terrible tragedy and a profound regulatory failure."

- "[A risk/benefit analysis] on Vioxx was not done by FDA."

- "[W]hat I was trying to talk about here is the evidence that was accruing on Vioxx and heart attack risks and FDA's response, which in my experience has been to downplay or ignore those risks and to let things get worse in a sense to, let the problem continue unabated."

- "It's my view that warnings as implemented by FDA have been very ineffective. There are means, I believe, whereby labeling could be constructed in a fashion that it actually would potentially influence physician behavior and perhaps then find its way into patient behavior."

- "[Better labeling] would actually just be more straightforward about what the problems are, using very bold and frank and plain language, not sort of using adjectives that kind of downplay it and not burying it in tremendous amounts of text so that when a physician looks at the label, they're confronted by three paragraphs of warnings, and the warning that really matters is kind of buried in the midst of it.  I think that there's a lot of room for experimentation where these labeling interventions might actually have an effect.  But as practiced, the way FDA implements them, they are not – have not been, until now, effective, in my view."

- "[G]oing back to the conflict of interest that we talked about before, that FDA has a vested interest in maintaining the decisions that it's made previously. And that their biggest concern here was that they had, in quotes, done a labeling change in 2002, and that solved the problem. But I contend that it didn't really accomplish very much at all."

(Deposition of Dr. David Graham ("Graham Dep.") at 36:21-37:1, 37:8-37:14; 37:18-22, 135:6-22, 137:16-23, 175:11-19, 274:7-14, 274:18-275:10, 325:8-21, attached hereto as Ex. A; *see also id.* at 177:19-178:3, 178:14-179:6 (calling the scientific community's investigation of the naproxen hypothesis a "wild goose chase").)

Dr. Graham then goes on to express his view that Merck should have been held to a higher standard because Vioxx "was going to be used widely and that it was used widely means that the exposure to potential harm was very large at a population level."  (Graham Dep. at 140:13-17.)  Therefore, Dr. Graham opines, the FDA should have never approved Vioxx, and the

3

FDA should have required Merck to withdraw Vioxx immediately after the VIGOR study. (*Id.* at 222:22-223:24.)

Dr. Graham offers no support for these opinions, nor does he offer any guidance on what it means to "be more straightforward" "using very bold and frank and plain language." He was not involved in the FDA's decision to approve Vioxx and does not even work in the division of FDA that decides whether to approve drugs. By his own admission, he is not an expert in the drug approval process. (Graham Dep. at 83:22-84:19.) Particularly in the arena of drug labeling – where over-warning of remote risks may dilute warnings that address more common risks – it is not clear what a company would need to do even if it wished to comply with Dr. Graham's personal rules. *See, e.g.*, Requirements for Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922, 3935 (Jan. 24, 2006) (to be codified at 21 C.F.R. pts. 201, 314, 601) ("Overwarning, just like underwarning, can similarly have a negative effect on patient safety and public health.").

Dr. Graham's subjective and normative opinions are also inadmissible because they are not based on reliable methodology and because they are irrelevant to the issue the jury must decide – whether Merck met its *legal* obligations to plaintiff. To be reliable under Rule 702, the "reasoning or methodology" underlying the testimony must be both applicable to the facts and scientifically valid. *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93); FED. R. EVID. 702. By definition, subjective normative testimony is unreliable under *Daubert*. *See Daubert*, 509 U.S. at 589-90 ("The subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation."). A recent order in *In re Welding Fume Prods. Liab. Litig.*, where the

4

court considered the admissibility of expert testimony about whether the defendants had acted as they "*should have done*," addresses the dual problems of the lack of reliability and relevance of such testimony:

> No right-minded person would disagree with the aspirational character of [the expert's] ethical principles. But the critical question for the jury in this case is whether the defendant corporations did what the law *required* them to do, not whether, from a societal perspective, they did what an "ethical corporation" *should have* done. [The expert's] opinions regarding the latter, accordingly, will tend to misdirect the finder of fact.

*In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, MDL 1535, 2005 WL 1868046, at *20 (N.D. Ohio Aug. 8, 2005) (Order) (emphasis in original). The court found that the subjective standards crafted by the expert "set[] out a standard in excess of what the law requires; this is unlikely to 'assist the trier of fact to understand the evidence or to determine a fact in issue'" as required by Rule 702. *Id.* Here, too, Dr. Graham's theory is based on nothing more than his own conjecture and therefore is not an appropriate subject for expert testimony. *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture.").

The Court should require that plaintiff's claims be resolved on their merits, not based on Dr. Graham's subjective, *ex post facto* opinions about what the Federal Regulations should require or what the FDA or Merck could or should have done differently. Dr. Graham's opinions are nothing more than speculation and they are not necessary to assist the jury in understanding the issues of the case. Therefore the testimony of Dr. Graham should be excluded in full.

## II. ADMITTING DR. GRAHAM'S OPINIONS SECOND-GUESSING THE FDA WOULD UNDULY PREJUDICE MERCK.

Even if there were some relevance to Dr. Graham's opinions about the FDA and if they were based on an appropriate scientific methodology, his criticism of the adequacy of the FDA's

831919v.1

conduct would serve only to distract and prejudice the jury against Merck. Because Dr. Graham is a career FDA employee – a fact plaintiff's counsel emphasizes in his examination – he bears a false weight of authority. But he does not speak for the FDA. Instead, Dr. Graham is admittedly biased against his employer. He stated in his deposition, referring to the FDA, "I experienced threats, intimidation and actually what in my view appears to have been a very organized and orchestrated campaign to smear and discredit me." (Graham Dep. at 129:18-22; *see also id.* at 194:17-22 (claiming the FDA tried to "suppress publication of [his] paper.").) These unfounded statements underlie all of Dr. Graham's discussion of the FDA and risk inflaming the jury's passions against Merck.

Moreover, Dr. Graham is not opining on whether Merck or the FDA violated the standards within the FDA's carefully-crafted regulatory scheme, but whether Merck and the FDA violated his own subjective standards for the approval and labeling of drugs. This testimony runs afoul of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). For instance, Dr. Graham asserts:

> It is my professional opinion, based on the evidence that I've looked at, that Vioxx should not have been approved at the time that it was approved, that there were substantial areas of concern relating to cardiovascular safety that should have been explored more fully and more thoroughly prior to consideration of an approval.

(Graham Dep. at 64:7-16.)

Pursuant to *Buckman*, all of this testimony should be excluded because it is an attempt to second-guess the FDA's decisions. There are real dangers in permitting juries applying state law to impose their judgments on the adequacy of the drug approval process under state law standards. Such a system "would exert an extraneous pull on the scheme established by Congress" to protect the public. *Buckman*, 531 U.S. at 353. If there are problems with the

functioning of the FDA, those problems should be addressed by Congress. Admitting Dr. Graham's opinions can only distract and confuse the jury and for that reason, his opinions must be excluded. *See* FED. R. EVID. 403.

## III.  CONCLUSION.

For the foregoing reasons, Merck respectfully requests that the Court exclude Dr. Graham's testimony in full.

Dated:  September 27, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

And

831919v.1

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

Attorneys for Merck & Co., Inc.

831919v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Improper Personal Opinions of David Graham Regarding the Food and Drug Administration has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of September, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

831919v.1