## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0810 | * | |
| | * | MAGISTRATE JUDGE |
| CHARLES L. MASON, | * | KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING "ALL-CAUSE"
<u>MORTALITY DATA FROM ALZHEIMER'S DISEASE CLINICAL TRIALS</u>**

**(MOTION IN *LIMINE* NO. 5)**

According to the reports and deposition testimony of plaintiff's designated experts, and if past trials are any measure, plaintiff will offer testimony and argument at trial regarding the "all-cause" mortality data from two long-term clinical trials that were conducted by Merck to determine the efficacy of Vioxx in preventing or slowing the progression of Alzheimer's disease. These figures – which, as plaintiff's expert Dr. Lemuel Moye admits, include incidents equivalent to where "somebody who is in a clinical trial is walking down the street and a piano falls on their head" – have no relevance whatsoever in a case, such as this one, where the issue is whether Merck failed to disclose known or knowable heart attack risks caused by Vioxx. Put

simply, Mr. Mason cannot complain about a failure to warn of events that were not caused by Vioxx and that did not harm him, including death by electrocution, shock, or "infestation." Nor do the "all-cause" mortality figures have any bearing on the causation questions to be determined by the jury in this case: whether Mr. Mason's use of Vioxx at the 25 milligram dose for less than eleven months *could have* and *did* cause his heart attack.

Admitting this data into evidence would thus unduly prejudice Merck by creating the risk that the jury would base its liability determinations on emotion rather than on the facts relevant to Mr. Mason's claims. Moreover, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), requires the Court to prohibit plaintiff's experts, including Dr. Avorn and Dr. Moye, from basing opinions that Vioxx is "unsafe" on "all-cause" mortality data that is meaningless in terms of drug safety. Accordingly, and as explained further below, the Court should exclude any evidence or argument pertaining to the "all-cause" mortality data from Merck's Alzheimer's trials.[1]

## I. THE "ALL-CAUSE" MORTALITY DATA ARE IRRELEVANT TO MR. MASON'S CLAIMS.

Given that Mr. Mason has alleged a cardiovascular injury, the only data relevant to this case are data pertaining to the alleged cardiovascular risks associated with Vioxx. On this score, the Alzheimer's studies actually *contradict* plaintiff's causation theory. As plaintiff's own experts concede, neither study showed a statistically significant difference in the rates of adverse cardiovascular events experienced by patients in the Vioxx and placebo groups of the studies. (*See* Sept. 13, 2006 *Smith v. Merck* Tr. at 518:18-21 (Test. of Dr. Avorn) (admitting "there was

---

[1] In *Smith v. Merck*, where this data was addressed as part of a broader motion in *limine* on unreliable scientific evidence, the Court reserved ruling on the motion, calling it "too broad." (Aug. 31, 2006 Hearing Tr. at 22:9-10; Aug. 31, 2006 Order re Motions in *Limine* at 13.) Having heard how the "all-cause" mortality evidence came in during that case – and having had the chance to evaluate how meaningless it is – the Court should now rule on Merck's motion and should exclude the "all-cause" mortality data from the *Mason* trial.

2

no difference [in cardiovascular events] between Vioxx and placebo in the Alzheimer's trials"); Sept. 16, 2006 *Smith v. Merck* Tr. at 1503:10-1504:10; 1523:8-1525:17 (Test. of Dr. Moye) (same)); *see also* L.J. Thal *et al.*, *A Randomized, Double-Blind Study of Rofecoxib in Patients with Mild Cognitive Impairment,* NEUROPSYCHOPHARMACOLOGY (2005) 30:1212 ("Elderly patients are at increased risk for serious vascular events. Rofecoxib did not appear to increase the risk in this study, since the number of confirmed serious thrombotic vascular events was similar in each treatment group.").

In an apparent attempt to minimize this data or to confuse the issue, plaintiff focuses – as other plaintiffs in this MDL have done – not on the cardiovascular data from the Alzheimer's trials, but on the "all-cause" mortality data from these same studies. (*See*, *e.g.*, Expert Report of Dr. Lemuel Moye at ¶ 126 (the Alzheimer's studies "revealed excess deaths in patients on rofecoxib when compared to placebo"), attached hereto as Ex. A; *see also* Sept. 12, 2006 *Smith v. Merck* Tr. at 388:10-389:5 (Test. of Dr. Avorn); Sept. 16, 2007 *Smith v. Merck* Tr. at 1457:7-1458:23 (Test. of Dr. Moye).) Plaintiff's expert Dr. Avorn even goes so far as to opine that this data should have been included in the Vioxx label. (Sept. 12, 2006 *Smith v. Merck* Tr. at 388:10-389:5 (Test. of Dr. Avorn).)

Yet, as both Dr. Avorn and Dr. Moye readily concede, the Alzheimer's data on which they rely in support of their opinions includes death from *all causes*, whether or not related to Vioxx or even to cardiovascular events:

> Q: And all-cause mortality means that people died, and regardless of what somebody thinks about the cause of the death, more people died in the Vioxx group than in the placebo group, right?
>
> A: That's correct.

(Sept. 13, 2006 *Smith v. Merck* Tr. at 514:11-15 (Test. of Dr. Avorn).)

3

831887v.1

Q: And all-cause mortality, just so that we're clear about this, when people do these clinical trials, and group A is taking one thing, don't know what it is while they are taking it, and group B is taking another thing, then the doctors keep track of all deaths for whatever reason they take place; right?

A: That's correct, yes.

Q: So that if somebody who in a clinical trial is walking down the street and a piano falls on their head, that counts, doesn't it?

A: The death of that unfortunate victim does count, yes.

Q: And if that person happened to be in the Vioxx half of the trial and a piano fell on their head, the death counts against Vioxx, so to speak; right?

A: That's true, yes.

(Sept. 16, 2006 *Smith v. Merck* Tr. at 1500:13-1501:1 (Test. of Dr. Moye).)

Moreover, Dr. Moye claims never to have looked at the causes of death underlying the "all-cause" mortality data, and that he is unaware that the data he claimed proved that Vioxx was unsafe actually showed no such thing:

Q: Did you ever look to see what happened to these people who died while on Vioxx in the Alzheimer's study?

A: I don't know how to answer that.

Q: Well, when you said this morning that it was significant, that there were more all-cause – there was higher all-cause mortality on Vioxx than on placebo in Alzheimer's, did you ever go look at the documentation to see what it is that caused these deaths that you're saying were so significant in a heart attack case involving Vioxx?

A: I went to look – let me try to answer you this way. I went to look at the reasons patients died in these studies. So I did do that. But that is the best answer I can give.

Q: Well, do you remember, for example, that these poor folks who died, who happened to be taking Vioxx, three of them died in car crashes?

A: Yes.

Q: Do you know that one of them went down to the basement and – working with his power tools and got electrocuted?

4

> A: Yes.
>
> Q: Do you know that one fellow was in the hot tub and got confused, and he took a bromide table that's supposed to be used to sanitize the hot tub water, and he swallowed it and burned his esophagus and died of an infection?
>
> A: I don't think I knew all those details, but I did know about a hot-tub death.

(Sept. 16, 2006 *Smith v. Merck* Tr. at 1523:18-1524:17.)

In other words, this data has no conceivable relevance to Mr. Mason's claims. Plaintiff is not alleging wrongful death, and accordingly has no grounds to argue that the "all-cause" mortality data should have been included in the Vioxx label. *See In re Rezulin Prods. Liab. Litig.*, 331 F. Supp. 2d 196, 200 (D.N.Y. 2004) (explaining in a failure to warn case that "[w]here, as here . . . the plaintiff suffered no injury of which the manufacturer failed to warn, there is no claim"); *see also* Dan B. Dobbs, THE LAW OF TORTS 1018 (2001) ("[T]he injury suffered must be within the class of injury that the warning requirement was meant to avoid."). More importantly, there is no proof that Vioxx caused an excess rate of death. Mr. Mason's claims are predicated on an alleged cardiovascular event – not electrocution, or cancer, or pneumonia. Deaths from such disparate causes, which are reflected in the Alzheimer's "all-cause" mortality data, cannot support plaintiff's allegation that Vioxx could have and did cause his heart attack.

Because the "all-cause" mortality figures are irrelevant to any question at issue in this case, they – and any expert opinion relying on them – must be excluded. *See* FED. R. EVID. 401-402; *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert.")). Plaintiff should not be permitted to deflect attention

5

from the facts pertinent to his claims – including the cardiovascular data from the Alzheimer's studies – by introducing, through expert testimony or otherwise, data that has no bearing on his case.

## II. ADMITTING THE MORTALITY DATA WOULD UNDULY PREJUDICE MERCK.

Even if the Alzheimer's studies' "all-cause" mortality figures had any probative value, their exclusion would still be warranted under Rule 403. Permitting the jury to consider this evidence would plainly risk "unfair prejudice, confusion of the issues, or misleading the jury . . . ." FED. R. EVID. 403.

Evidence is unfairly prejudicial where it "'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (quoting 1 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE 403(03), at 403-15 to 403-17 (1978)); FED. R. EVID. 403 advisory committee's note (evidence having an "undue tendency to suggest decision on an improper basis, commonly, although not necessarily, an emotional one," should be excluded as unfairly prejudicial). The "all-cause" mortality figures qualify under this description; they are precisely the type of evidence that is calculated to appeal to the jurors' sympathies and cause the jury to base its decision on "something other than the established propositions in the case." *Carter*, 617 F.2d at 972. There is a danger that the jury might make its determinations based on emotion and prejudice, were plaintiff permitted to present evidence that, in Dr. Moye's words, Vioxx presented "a serious safety hazard in elderly patients, in older patients taking Vioxx, because the death rate is between two to four times greater." (Sept. 16, 2006 *Smith v. Merck* Tr. at 1458:19-23.) The likelihood of juror confusion and undue delay would also be great. In order to explain the mortality data,

Case 2:05-md-01657-EEF-DEK Document 7463-2 Filed 09/27/2006 Page 7 of 9

Case 2:05-md-01657-EEF-DEK Document 7463-2 Filed 09/27/2006 Page 7 of 9

Merck would have to spend time explaining (as it did in *Smith*) the irrelevance of data regarding electrocution, other trauma, and cancer in a case involving a cardiovascular injury.

Any evidence or argument regarding the "all-cause" mortality data should accordingly be excluded under Rule 403 as well.

### III. CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court exclude all evidence of and reference to "all-cause" mortality data from Alzheimer's disease clinical trials.

Dated: September 27, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax:    312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax:    213-430-6407

And

7

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

Attorneys for Merck & Co., Inc.

# CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Evidence or Argument Regarding "All-Cause" Mortality Data From Alzheimer's Disease Clinical Trials has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of September, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

831887v.1