UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING TESTIMONY OF DONNA K. ARNETT, PH.D., M.S.P.H.**

**(EXPERT CHALLENGE NO. 3)**

Plaintiff proffers Dr. Donna K. Arnett, an epidemiologist, as a general cause expert to testify that, in her opinion, Vioxx® is "cardiotoxic" and the "cardiovascular risk from Vioxx is present in short term usage and is continuous."  (Expert Report of Donna K. Arnett, Ph.D., M.S.P.H. ("Arnett Rpt.") at 3, attached hereto as Ex. A.)  As the Court is aware, there are no clinical data showing a statistically significant difference in the rate of heart attacks associated with Vioxx as compared to placebo if taken for six months, the length of use at issue in this case. In an effort to overcome this glaring hole in Mr. Dedrick's evidence on general cause, Dr. Arnett bases her opinions on a compilation of scientifically unreliable data and interpretations of data that she is not qualified to make.  Dr. Arnett's general cause opinions must be excluded under

1

Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Dr. Arnett also opines that Merck failed to provide adequate warnings about the cardiovascular risks of Vioxx. Dr. Arnett is neither qualified to offer this opinion, nor does she base it on reliable data. For these reasons, Federal Rule of Evidence 702 and *Daubert* require exclusion of this opinion, as well.

## I. LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Memorandum In Support of Motion For Order Excluding Testimony Of Ira J. Gelb, M.D., which has been filed concurrently herewith and is incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert*, 509 U.S. at 589, expert testimony, like all evidence, must satisfy the relevant requirements of the Federal Rules of Evidence, including Rules 401 and 403.

## II. THE COURT SHOULD EXCLUDE DR. ARNETT'S GENERAL CAUSE OPINIONS.

As discussed in Merck's concurrently-filed Motion to Exclude Testimony of Ira Gelb, the dose and duration at which a plaintiff is exposed to a drug are among the most critical facts for any causal analysis in pharmaceutical cases. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242-43 (11th Cir. 2005); *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996); *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996). To establish general cause, Mr. Dedrick must offer scientifically reliable evidence that his use of 25 mg of Vioxx for a period of six months was capable of causing a heart attack. The absence of any such evidence is well documented in this case and is discussed in Merck's concurrently filed Motion To

Exclude Expert Testimony That Short-term Vioxx Use Increases Cardiovascular Risk, which Merck incorporates herein by reference.

### A. The Vioxx Clinical Data Does Not Support Dr. Arnett's General Causation Opinion.

Like all of Mr. Dedrick's expert witnesses, Dr. Arnett cannot identify any clinical trial data showing a statistically significant increased risk of cardiovascular events for patients taking 25 mg of Vioxx for less than 18 months.  Instead, she relies primarily on raw cardiovascular event data and the "totality of data" from the major Vioxx clinical trials to prove what she contends is a causal connection between Vioxx and cardiovascular events in short term use and at any dosage.  Specifically, Dr. Arnett cites to ADVANTAGE, Protocol 090, Protocol 010, Protocol 017, Protocol 023, VIGOR, VICTOR, the Shapiro meta-analysis, and APPROVe.  She also includes the early discontinuations of Vioxx patients due to hypertension, elevated blood pressure and edema in some of the studies to buttress her opinion.  The problem, however, and the reason Dr. Arnett cannot be permitted to testify that Vioxx is capable of causing a heart attack if taken at 25 mg for six months, is that none of the data upon which she relies demonstrates a statistically significant relationship between Vioxx and adverse cardiovascular events if taken at that dose and duration.

It is "unreasonable as a matter of law" for an expert to base causation opinions on statistically insignificant data.  *Kelly v. Am. Heyer-Sculte Corp.*, 957 F. Supp. 873, 878 (W.D. Tex 1997).  The Fifth Circuit has held that epidemiologic studies,[1] including clinical trials, are "[u]ndoubtedly . . . the most useful and conclusive type of evidence" of causation.  *See*, *e.g.*,

---

[1] There are two types of epidemiological studies – randomized clinical trials and observational studies.  Data from blinded, randomized, placebo-controlled clinical trials are the "gold standard for determining the relationship of an agent to a disease or health outcome." Saks et al., Federal Judicial Center, ANNOTATED REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (2d ed. 2005-06) ("REFERENCE MANUAL ON SCIENTIFIC EVIDENCE") at 484.

3

*Allen*, 102 F.3d at 197; *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 311, *reh'g denied*, 884 F.2d 166 (5th Cir. 1989); *see also Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 664-65 (M.D. La. 2000). In order to be admissible on the issue of causation, epidemiological studies must be statistically significant and show more than a doubling of the risk. *See Brock*, 874 F.2d at 313 (reversing verdict in Bendectin litigation given plaintiff's failure to present statistically significant epidemiological proof); *LeBlanc v. Merrell Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996) (granting summary judgment in Bendectin litigation given absence of "statistically significant epidemiological studies"); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995); *Deluca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990).

### B. Dr. Arnett Admits That The Mechanisms On Which She Relies To Support A Causal Relationship Between Vioxx and Cardiovascular Events Are Uncertain.

In addition to relying on statistically insignificant data, Dr. Arnett also admits that the biological mechanisms she believes underlie Vioxx's cardiotoxic effects – increased blood pressure and the FitzGerald hypothesis – are not sufficiently certain to support a causal connection between Vioxx and cardiovascular events.

Regardless of whether the purported findings of epidemiological studies are statistically significant and show more than a doubling of the risk, such studies cannot prove causation in the absence of additional reliable scientific evidence supporting the causal inference to be drawn from the studies. *See, e.g.*, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 480 ("[I]t should be emphasized that an association is not equivalent to causation."). *See Havner*, 953 S.W.2d at 718 ("[E]pidemiological studies only show association. There may in fact be no causal relationship even if the relative risk is high."). In particular, plaintiffs in a case such as this are required to demonstrate the biological plausibility of the causal inference they seek to draw from

4

epidemiological studies.  *See* A. Bradford Hill, The Environment and Disease: Association or Causation?, 58 Proc. Royal Soc'y Med. 295 , 532 (1965) ("Biological plausibility is not an easy criterion to use and depends upon existing knowledge about the mechanism by which the disease develops."); *Havner*, 953 S.W.2d at 718-19.  *See also Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999) (after considering *Daubert* factors, trial courts may consider additional factors when assessing the scientific reliability of expert testimony); *Propulsid*, 261 F. Supp. 2d at 617 (citing *Black*, 102 F.3d at 314) (in pharmaceutical and toxic tort cases, court should consider whether expert has identified the specific mechanism by which the drug supposedly causes the alleged disease).

In arguing that the "totality of data" proves a causal connection between Vioxx and cardiovascular events, Dr. Arnett relies heavily on studies demonstrating the association between Vioxx and high blood pressure and hypertension (the association between NSAIDs, including Vioxx, was well known to the medical community long before Merck withdrew Vioxx from the market).  (*See* Arnett Rpt. at 4 ("[P]rotocols 010 and 017 noted an increase in Vioxx participant blood pressure.").)  Yet, Dr. Arnett admits that blood pressure does not explain the cardiovascular risk that she associates with Vioxx:

> Q: But you are not going to say that because [Vioxx] raises blood pressure it causes heart attacks or any other cardiovascular event?
>
> A: The totality of the evidence that I've reviewed relative to the effect of hypertension on mediating the excess cardiovascular risk associated with Vioxx has been to -- has been negative, that it is not the reason solely for the increased risk.
>
> Q: You said solely.
>
> A: Uh-huh.

5

> Q: Are you going to offer an opinion that it -- that there is a partial effect of blood pressure, or can you not say at this point?
>
> A: I can say that adjustment for blood pressure in some of the data that I have reviewed did not explain the excess risk associated with Vioxx.
>
> Q: Put in plain English that means that in the data reviewed you could not see a correlation between blood pressure increases and bad outcomes?
>
> . . .
>
> A: The data have not been provided to me in that way.
>
> . . .
>
> Q: I just -- I just want to make sure that I understand in plain English your answer which was you -- the data that you've looked at don't establish a cause-and-effect relationship between patients who had an increase in blood pressure in studies and patients who had MIs?
>
> . . .
>
> A: From the data I reviewed I cannot answer that question.

(Sept. 6, 2006 Deposition of Donna Arnett, Ph.D., M.S.P.H. Dep. ("Arnett Dep.") at 137:9 – 138:18, attached hereto as Ex. B.)  Dr. Arnett further agrees that there are no epidemiology studies that she can point to that "looked at patients for six months, and . . . found six months of raising your blood pressure five points resulted in heart attacks of x magnitude." (Oct. 20, 2006 Arnett Dep. at 120:20-121:5, attached hereto as Ex. C.)  Accordingly, even though the association between Vioxx and increased blood pressure is one of the critical factors upon which Dr. Arnett bases her opinion that Vioxx is cardiotoxic, she admittedly cannot attribute any adverse cardiovascular events associated with Vioxx to high blood pressure.  Dr. Arnett's opinion in this regard is circular and unreliable.

Second, Dr. Arnett also points to the FitzGerald hypothesis in forming her opinion that

6

Vioxx is cardiotoxic. (*See* Sept. 6, 2006 Arnett Dep. at 104:7-18 (protocol 023); *see also* Arnett Rpt. at 4 (Vioxx patents).) Despite the importance of mechanism of action to Dr. Arnett's opinion, she testified that she does not intend to offer any opinion about mechanism of action. (*See* Sept. 6, 2006 Arnett Dep. at 99:20-22.) As Dr. Arnett admits, she is "not an expert in terms of cardiology," (*id.* at 99:23 – 100:3), and she does not have the expertise even to know the status of the science on mechanism:

> Q: Do you agree that there continues to be scientific debate as to whether different proposed mechanisms of action, in fact, play a role in any potential adverse effects caused by Vioxx or other COX-2 inhibitors?
>
> A: I don't have expertise to answer that question.

(*Id.* at 100:15-21.) Moreover, as the Court knows, and as other of Mr. Dedrick's experts have admitted, the FitzGerald hypothesis remains unproven. Accordingly, because Dr. Arnett's opinions are based on proposed mechanisms which she herself admits are uncertain and unproven, she cannot be permitted to opine on general cause.

In short, Dr. Arnett's general cause testimony fails to meet the requirements set forth under *Daubert* in that it lacks a reliable scientific basis and depends on hypothesized mechanisms of action that are at best uncertain.

### III. THE COURT SHOULD EXCLUDE DR. ARNETT'S OPINION THAT MERCK FAILED TO ADEQUATELY WARN OF VIOXX'S ALLEGED CARDIOVASCULAR RISKS.

Dr. Arnett also seeks to offer the opinion that Merck "failed to adequately warn the public, as well as the prescribing physician population of the cardiovascular risk associated with Vioxx." (Arnett Rpt. at 5.) Dr. Arnett cites two specific examples of Merck's supposed failure to warn. First, she says that the VIGOR publication by Bombardier should have had a "table" devoted to cardiovascular disease and should have "labeled the effects seen in VIGOR as being

7

attributable to Vioxx's cardiotoxicity instead of attribution of the difference to unsubstantiated and now defunct allegations of Naproxen cardioprotection." (*Id.*)  Second, she opines that "the ADVANTAGE study should have been published in a more expeditious fashion . . . ." (*Id.*)  Dr. Arnett's testimony on the adequacy of Merck's warnings must be excluded.  She is unqualified to be an expert in this area, and has not provided any data, research, or reliable methodology that would permit her to offer any such expert testimony.

### A. Dr. Arnett Is Not Qualified To Opine On Merck's Warnings.

It is clear that Dr. Arnett does not qualify as an expert on the warnings provided by Merck in connection with Vioxx.  Dr. Arnett is an epidemiologist; she is not a medical doctor, for whom prescription drug warning labels are intended.  She admits that she has never done any work related to the labeling or approval of a pharmaceutical.  (*See* Sept. 6, 2006 Arnett Dep. at 86:11-17.)  In addition, Dr. Arnett has not "done any research for the purpose of testing the safety of any medications, either pre-approval or post-approval." (*Id.* at 88:1-5.)  Dr. Arnett has never even reviewed any of the package labels for Vioxx or any other COX-2 inhibitor:

> Q: I also did not see in any of the materials you've given me any package labels for Vioxx or any other COX-2 inhibitors.  I didn't miss anything, did I?
>
> A: You didn't.
>
> Q: And I gather you haven't reviewed any of the package labels, correct?
>
> A: That is correct.  I'm an epidemiologist.
>
> Q: So you're not going to offer any opinion as to the appropriateness of any particular warning that was included in the package label at a given time?
>
> A: I will restrict my opinions to epidemiology and the science involved in epidemiology.

(*See id.* at 100:22 – 101:11.)

B. **<u>Dr. Arnett's Proffered Testimony Is Not Reliable.</u>**

Before expert opinion testimony may be admitted under Rule 702, the proponent of the testimony must demonstrate that the evidence is reliable, which includes identifying the factual bases for the conclusions, explaining the methodology, and demonstrating that the factual bases and methodology are scientifically reliable. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1988). The warnings testimony proffered by Dr. Arnett cannot withstand this scrutiny.

Dr. Arnett does not present any methodology, research, or standard against which the Court could assess the reliability of her opinion that Merck's warnings were inappropriate. These opinions are therefore inadmissible "net opinions." *Daubert*, 43 F.3d at 1319 ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). Indeed, Dr. Arnett's opinion that the VIGOR publication should have "labeled the effects seen in VIGOR as being attributable to Vioxx's cardiotoxicity instead of attribution of the difference to unsubstantiated and now defunct allegations of Naproxen cardioprotection" is patently unreliable for several reasons.

First, the basis for this opinion is Dr. Arnett's view that there was already "compelling evidence of the cardiovascular risk" associated with Vioxx at the point the VIGOR results became known. (Sept. 6, 2006 Arnett Dep. at 103:25 – 104:6.) The "compelling" evidence, according to Dr. Arnett, consisted entirely of: (i) the 010 and 017 studies, which showed the association with elevated blood pressure, (2) the 023 study, which supposedly "confirmed the mechanism of action" (i.e., the FitzGerald hypothesis), (3) and Merck patent applications, which Dr. Arnett argues are "consistent" with the FitzGerald hypothesis because she claims through these patents Merck was pursuing a combination COX-2/antiplatelet therapy due to alleged fears of a cardiovascular risk associated with Vioxx. (*Id.* at 104:7-20; Oct. 20, 2006 Arnett Dep. at

9

75:11-77:24; Arnett Rpt. at 4.) As already noted above, however, Dr. Arnett admits that she can point no data linking high blood pressure to the adverse cardiovascular events associated with Vioxx, and likewise admits she is not qualified to address the unproven FitzGerald hypothesis. As for the Merck patents, Dr. Arnett cannot identify anything in the patents showing that Merck believed that COX-2 inhibition required antiplatelet therapy. (*See* Oct. 20, 2006 Arnett Dep. at 75:11-77:24.) Rather, she incorrectly assumes that Merck was seeking the combination therapy because of the "known downside of using Vioxx," which she describes as the (unproven) FitzGerald hypothesis. (*Id.* at 77:8-24.) Dr. Arnett's reasoning is circular. She cites the patents to prove the unproven FitzGerald hypothesis, and cites the FitzGerald hypothesis to support her interpretation of the patents. All the while, she either ignores or is unaware of the uncontested evidence that these patents were developed for reasons unrelated to the alleged cardiovascular risk associated with Vioxx (*e.g.*, to provide gastrointestinal benefit to patients also needing cardiovascular protection). (*See*, *e.g.*, Deposition of Edward Scolnick, *Barlow v. Merck et al.*, Case No. CV 022842-MC, In the Circuit Court of Montgomery County, Alabama, at 175:3-10 & 22-23, attached hereto as Ex. D; March 12, 1999 Patent filed by S. Nichtberger, attached hereto as Ex. E.)

Second, Dr. Arnett relies on "observational studies that had evaluated -- that have subsequently evaluated the effect of Naprosyn" and the fact that "Naprosyn had been on the market for years and no one has used it as a cardioprotective drug," to support her opinion that the published VIGOR article should have attributed the differential in CV event rates to Vioxx rather than the alleged cardioprotective effects of naproxen. (Sept. 6, 2006 Arnett Dep. at 164:2-7; Arnett Rpt. at 5.) In the first place, Dr. Arnett has mischaracterized the VIGOR article. The article did not attribute the difference in cardiovascular events to the cardioprotective effect of

naproxen, but rather expressed uncertainty as to whether the effect was due to naproxen or Vioxx or some combination, due to the lack of a placebo control group. In addition to offering a facially flawed opinion based on a misreading of the VIGOR article, Dr. Arnett conceded at deposition that she has not studied naproxen, did not review the published naproxen literature or its NDA, and did not know of any observational study where naproxen, given at the high dose used in VIGOR, failed to show a reduced risk of MI. (Oct. 20, 2006 Arnett Dep. at 141:2-3; Sept. 6, 2006 Arnett Dep. at 165:7-23.) Dr. Arnett also admitted that she has not (as she purported to do with Vioxx) "attempted to gather and review the totality of the data and form an opinion as to whether the totality of data shows whether Naprosyn may have a protective effect." (*Id.* at 166:13-17.) Therefore, Dr. Arnett's warnings-related opinions, which she is unqualified to give, must also be excluded because they hinge on her evaluation and interpretation of VIGOR – and she admittedly lacks data concerning the comparator drug in that study.

      Moreover, Dr. Arnett cannot point to any evidence demonstrating that the publication of the VIGOR article mislead or confused the medical community with regard to the potential (although unproven) cardiovascular risk associated with high dose Vioxx. Indeed, she admits that the medical community became aware of the possible cardiovascular risks associated with Vioxx as soon as the VIGOR article was published. She testified that after the VIGOR publication, she "heard about the concern about elevated risk" even without having read the publication, and that "people were talking about VIGOR," and the possible cardiovascular risk "was something that had gotten a fair amount of attention in the academic and medical community." (Sept. 16, 2006 Arnett Dep. at 110:6-14, 110:22–111:7.) It was "the kind of thing that just being at conferences, you heard other doctors debating what VIGOR might mean, what the significance might mean from a cardiovascular standpoint, and that "debate . . . went on for

11

some time after VIGOR was published." (*Id.* at 111:8-16.)  In short, Dr. Arnett can point to no evidence demonstrating that the VIGOR article misled the medical community, much less the FDA, which subsequently approved a Vioxx label which reflected the scientific uncertainty surrounding the interpretation of the VIGOR results.  That Dr. Arnett's "net opinion" is inadmissible is hardly unusual.  Unsupported opinions on the adequacy of warnings are routinely excluded in this type of litigation.  *See Dillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (expert testimony regarding inadequate warnings excluded where expert had not tested effectiveness of alternative warning); *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (expert testimony regarding inadequate warnings excluded where expert provided no basis for belief that such warnings would be effective); *Masters v. Hesston Corp.*, No. 99 C 50279, 2001 U.S. Dist. LEXIS 6732, at *24-25 (N.D. Ill. May 23, 2001) (expert's warning failed reliability test because expert conducted no tests or analyses to determine effectiveness).

## IV.     CONCLUSION

For the reasons stated above, Merck respectfully requests that this Court grant Merck's Motion for Order Excluding Testimony of Donna K. Arnett, Ph.D., M.S.P.H.

Dated:  October 30, 2006

Respectfully submitted,

s/ Dorothy H,. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Memorandum in Support of Motion of Defendant Merck & Co., Inc. for Order Excluding Testimony of Donna K. Arnett, Ph.D., M.S.P.H. has been served on Liaison Counsel, Russ Herman, and on counsel for Mr. Dedrick, Andy Birchfield, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of October, 2006.

                                                    */s/ Dorothy H. Wimberly*
                                                    Dorothy H. Wimberly, 18509
                                                    STONE PIGMAN WALTHER
                                                    WITTMANN L.L.C.
                                                    546 Carondelet Street
                                                    New Orleans, Louisiana  70130
                                                    Phone:  504-581-3200
                                                    Fax:     504-581-3361
                                                    dwimberly@stonepigman.com

                                                    Defendants' Liaison Counsel