UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANTHONY WAYNE DEDRICK, an Individual, | * * | MDL DOCKET No. 1657 |
| | * | SECTION L - DIVISION 3 |
| Plaintiff, | * * | |
| | * | JUDGE FALLON |
| v. | * | |
| | * | MAG. JUDGE KNOWLES |
| MERCK & CO., INC., | * * | |
| Defendant. | * | CASE NO. 2:05CV2524 |

## EXPERT WITNESS REPORT OF DONNA K. ARNETT, Ph.D, M.S.P.H. PLANTIFF ANTHONY DEDRICK

My name is Donna K. Arnett, Ph.D, M.S.P.H. I have been retained by the law firm of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. as an expert witness in the case of Anthony Dedrick vs. Merck and Company, Inc. I have been asked to render an opinion concerning epidemiological issues surrounding Merck's drug Vioxx. I understand that this report is being submitted to the United States District Court for the Eastern District of Louisiana in accordance with Rule 26 (a)(2)(B) of the Federal Rules of Civil Procedure and as a disclosure of myself as an expert witness in this matter.

### Professional Background and Qualifications

My educational background, qualifications, experience and publications are set forth in my curriculum vitae, a copy of which is attached to this report as Exhibit A. I am currently the Chair, as well as a Professor, for the Department of Epidemiology, School of Public Health at the University of Alabama at Birmingham. I received my Ph.D. in epidemiology from the University of North Carolina Chapel Hill and a master's degree in biostatistics and epidemiology from the University of South Florida. My primary research area is

cardiovascular and genetic epidemiology and I have conducted significant research in pharmacogenetics as well. I have broad expertise in reference to cardiovascular system pathophysiology. I have published on the issue of arterial stiffness and endothelial function as risk factors for cardiovascular disease. Further, I have received education on the topics of pathophysiology and vascular biology. In fact, my dissertation concerned ventricular coupling wherein I evaluated the effect of vascular compliance in relation to cardiovascular outcomes. My current research involves the genetic epidemiology of atherosclerosis hypertension and target organ damage from hypertension.

I am currently as Chair of the Programs Subcommittee of the Research Committee for the American Heart Association (AHA). I am the immediate past Chair of the AHA Functional Genomics Interdisciplinary Working Group (IWG) and serve as a Liaison to the Council of the Epidemiology Leadership Committee. Until July of this year when I rotated off of my term as Chair of the Functional Genomics IWG, I served on the Scientific Advisory Committee (SACC) which is a national level advisory group to the AHA Board of Directors that has responsibility for overseeing all scientific matters relative to the AHA. I am a member of the strategic planning panel for the American Heart Association and the National Heart Lung and Blood Institute.

I am on the Editorial Board of the American Journal of Epidemiology and serve as a consulting editor for the journal Circulation. I have published about 200 peer-reviewed articles.

I have been the Principal Investigator and Co-Investigator on numerous research grants funded by the National Institutes of Health (NIH). I also serve as a volunteer scientist reviewing grants for NIH. I have also served as a member of the Data Safety Monitoring Board for the NIH sponsored AIM High clinical trial. I am a recent grant recipient from NIH in

reference to the Hypergen: Genetics of Left Ventricular Hypertrophy. I am also currently a Special Government Employee for the Food and Drug Administration. I have previously served as a consultant for Merck in reference to Cox-2 inhibitors.

**Issues Addressed and Opinions**

The basis for my opinions expressed herein is derived from my education, training, research, experience, and review of the peer-reviewed medical literature and other publicly available documents concerning Vioxx and its relationship to cardiovascular problems. In developing my opinions in this case, I am relying primarily upon the Vioxx related published literature, the meta-analysis conducted by Merck, the major Vioxx related studies conducted by Merck and FDA published Vioxx related documents. I have spent over 100 hours reviewing literature and documents related to Vioxx.

Based upon my review of the above specified documents, I have developed the following opinions in this case: (1) Vioxx is cardiotoxic; (2) the cardiovascular risk from Vioxx is present in short term usage and is continuous; and (3) the VIGOR results demonstrated a significant heart attack risk which should have been clearly communicated to the scientific community, physicians, patients and the public.. I have developed these opinions utilizing the normal methodology that I exercise as a cardiovascular epidemiologist in the ordinary scope of my practice. Further, I state these opinions to a reasonable degree of scientific certainty.

In further substantiation of these opinions, I would note the following points that were important in my development in these opinions. The ingestion of Vioxx is associated with an increased risk of cardiovascular events. Such a finding is consistent with a review of the confirmed cardiovascular thrombotic events, investigator reporter events and APTC events

M009612219

delineated within the major Vioxx clinical trials. Moreover, there was compelling evidence of the cardiovascular risk associated with Vioxx from the inception of the development program. For example, protocols 010 and 017 noted an increase in Vioxx participant blood pressure. Later, protocol 023 confirmed the previously hypothetical deleterious mechanism of action whereby the reduction of prostacyclin through Vioxx ingestion would tip users towards a prothrombotic state. The totality of the evidence up to this point in time, contributed a "red flag" for cardiovascular risk.

The inherent cardiovascular risk of Vioxx was acknowledged by Merck through the dissemination and filing of patents which describe a Coxib/anti-thrombotic combination product. These patents further delineate the cardiovascular risk associated with unopposed Cox-2 inhibition consistent with the above mechanism of action.

This cardiovascular hazard, which should have been recognized by Merck prior to the approval of Vioxx, was both confirmed and consistently replicated in subsequent studies. The well known VIGOR study revealed a five fold increase in myocardial infarctions for Vioxx users compared to Naproxen users. The short term (i.e., twelve week) ADVATAGE study, which involved one-half the Vioxx dosage utilized in the VIGOR study, is evidence of the consistency of the hazard associated with Vioxx. The ADVATAGE study was inappropriately powered to collect cardiovascular events, yet detected the cardiotoxicity of Vioxx. For example, APTC adverse events were 7 to 1 in favor of the comparator. Similarly, acute myocardial infarctions were 5 to 1 in favor of the comparator in ADVATANGE. Numerous other studies conducted by Merck clearly established and replicated the cardiovascular hazard associated with Vioxx (e.g., 090, APPROVE and VICTOR).

M009612220

Despite the consistency of the evidence establishing the cardiotoxicity of Vioxx, Merck failed to adequately warn the public, as well as the prescribing physician population of the cardiovascular risk associated with Vioxx. For example, there should have been a clear description of the findings of a cardiovascular risk associated with Vioxx delineated in the medical literature. Explicit articulation of the excess cardiovascular risk of Vioxx should have been enunciated in the medical literature, especially the VIGOR publication by Bombardier. There should have been a table in the Bombardier paper devoted to cardiovascular disease; unfortunately, there was not. This paper should have also labeled the effects seen in VIGOR as being attributable to Vioxx's cardiotoxicity instead of attribution of the difference to the unsubstantiated and now defunct allegations of Naproxen cardioprotection. The totality of the data prior to VIGOR, coupled with the VIGOR findings, clearly established the cardiotoxicity of Vioxx. Moreover, the ADVANTAGE study should have been published in a more expeditious fashion so as to warn of the cardiovascular risk associated with Vioxx. For example, the ADVATAGE study was completed near in time to the completion of the VIGOR trial, but was not published until June of 2005.

The FDA warned Merck that: (1) there was a cardiovascular risk associated with Vioxx and that additional research needed to be done to define the risk; (2) that the Naproxen hypothesis was not a salient explanation for VIGOR; and (3) there was inadequate power to detect cardiovascular events in the Alzheimer's and Osteoarthritis studies. Indeed, utilizing my epidemiological expertise I have conducted my own power calculations in reference to Merck's studies. I have concluded that both the Alzheimer's and Osteoarthritis studies were underpowered to detect cardiovascular hazards. Moreover, the meta-analysis conducted by Merck and published the Konstam article had less than a 5% chance of finding the correct

M009612221

answer about whether Vioxx was causally related in terms of increased cardiovascular risk. Such a study is patently unreliable and Merck's continued reliance upon this meta-analysis to argue the cardiovascular safety of Vioxx is misplaced.

Finally, Merck sponsored studies clearly reveal that the hazard associated with Vioxx manifests itself quickly after initial ingestion. Protocols 090 and ADVANTAGE were both short term studies (i.e., 6 weeks and 12 weeks respectively) that revealed early onset cardiovascular problems with Vioxx. VIGOR reveals onset of the cardiovascular hazard within a matter of weeks. VICTOR revels near instantaneous onset of the hazard. The Shapiro meta-analysis is additionally consistent with this proposition. These studies are all supported by the APPROVe study (and correction thereof) which establishes an early and consistent danger over time with Vioxx.

Moreover, the major clinical trials, including VIGOR and APPROVe, show very early discontinuations due to hypertension, elevated blood pressure and edema. All of these early discontinuation events are related to the cardiovascular consequences of Vioxx. Indeed, there was an approximate four-fold increase in dropouts on Vioxx that was consistent throughout the major studies. Thus, the major Merck sponsored clinical trials reveal that the hazard associated with Vioxx develops early with usage and is consistent over time.

Similar consistency is observed in reference to the hazard associated with all doses of Vioxx. Internal Merck studies in doses of 12.5 mg, 25 mg, 50 mg and even 125 mg have all evidenced cardiotoxicity. There is no evidence in the major Merck sponsored Vioxx trials of a dose dependant hazard. All doses of Vioxx are unsafe and cardiotoxic.

**Conclusion**

I have reviewed the published literature, the Merck sponsored meta-analysis, the major studies in reference to Vioxx conducted by Merck and relevant FDA documentation in developing the following opinions: (1) Vioxx is cardiotoxic; (2) the cardiovascular risk from Vioxx appears early and is continuous; and (3) after VIGOR it was reasonable to warn future patients about the cardiovascular risk associated with Vioxx. I have developed the above opinions utilizing the methodology typical of an epidemiologist and maintain these opinions to a reasonable degree of scientific certainty. As medical literature is consistently being published in reference to this subject I reserve the right to supplement this report at anytime. Past testimony and charges are attached, as exhibits hereto.

Executed this 18 September, 2006

*[signature]*

Donna K. Arnett, Ph.D., M.S.P.H.