UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE TESTIMONY OF LEMUEL A. MOYE, M.D., PH.D.**

**(EXPERT CHALLENGE NO. 4)**

The Court is already familiar with some, but not all, of the proposed testimony of one of plaintiff's "all-purpose experts," Dr. Lemuel A. Moye.  (*See generally* Sept. 15, 2006 COX-2 Inhibitor Report of Lemuel A. Moye, M.D., Ph.D. ("Moye Rpt."), attached hereto as Ex. A.) Merck does not challenge all of Dr. Moye's testimony.  Rather, by this motion, Merck seeks to exclude the following testimony that runs afoul of *Daubert*, is outside the scope of Dr. Moye's expertise, or is not included in his report:

- Dr. Moye's startling new opinion that he is entitled to base causation opinions on statistically insignificant data;

- Dr. Moye's assertion that so-called "excess deaths" in the Alzheimer's trials demonstrate that Vioxx is unsafe, even though those deaths were not caused by Vioxx;

- Dr. Moye's opinions concerning the biomechanisms by which Vioxx purportedly can cause cardiovascular events by accelerating cardiovascular disease;

- Dr. Moye's opinion that Vioxx is unreasonably dangerous at any dose and duration for any patient;

- Dr. Moye's opinion that Vioxx is "the worst" or most dangerous COX-2 inhibitor;

- Dr. Moye's opinions concerning the risk/benefit analysis involved in determining whether to prescribe Vioxx; and

- Dr. Moye's speculation about Merck's purported motives or intentions.

As discussed below, other courts have excluded Dr. Moye's testimony about the adequacy of pharmaceutical labels, the biomechanism by which Vioxx supposedly causes cardiovascular disease, the comparative risks and benefits of similar prescription drugs, and the corporate intent of pharmaceutical companies. Merck requests that Dr. Moye be prevented from offering these opinions at trial.

## I. LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Memorandum In Support of Motion For Order Excluding Testimony Of Ira J. Gelb, M.D., F.A.C.C., which has been filed concurrently herewith and is incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the relevant requirements of the Federal Rules of Evidence, including Rules 401 and 403.

**II.     DR. MOYE MAY NOT OFFER "EXPERT" OPINION BASED ON STATISTICALLY INSIGNIFICANT EVIDENCE.**

Plaintiff has the burden of proof, which requires that he establish causation by *statistically significant* epidemiological proof.  *See, e.g.*, *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313, *modified on reh'g*, 884 F.2d 166, 167 (5th Cir. 1989) (reversing verdict in Bendectin litigation given plaintiff's "failure to present statistically significant epidemiological proof"); *LeBlanc v. Merrell Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996) (granting summary judgment in Bendectin litigation given absence of "statistically significant[] epidemiological studies"); *Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 664-66 (M.D. La. 2000) (an expert's causation testimony must be excluded if not based on "statistically significant epidemiological proof").

Dr. Moye admits that certain of the studies he has chosen to rely upon, such as Study 090, do not show a statistically significant relationship between Vioxx use and heart attacks. (Moye Rpt. at ¶ 42.)  In his amended expert report served on behalf of Mr. Dedrick, however, he claims that "[s]tatistical significance in these assessments is irrelevant" because "[t]hese studies were not designed to detect myocardial infarction with precision." (*Id*.)  What Dr. Moye is saying is that the studies lack statistical power; *i.e.*, the sample size is not large enough to measure the heart attack rate. (Sept. 16, 2006 *Smith v. Merck* Tr. at 1440:17-1442:11.)  But that is not a justification for relying on statistically insignificant data as proof of his hypothesis.  Indeed, the "significance" of data being "statistically insignificant" in a clinical trial is that they "are not strong enough to persuade you to reject" the proposition that the populations under review have the same characteristics.  H. Motulsky, INTUITIVE BIOSTATISTICS 114 (1995).   Accordingly, the Court should preclude Dr. Moye from testifying that statistically insignificant studies support his opinions.

3

### III. DR. MOYE'S OPINIONS CONCERNING THE PURPORTED RISKS OF VIOXX USE BASED ON IRRELEVANT "ALL-CAUSE" MORTALITY STATISTICS ARE INADMISSIBLE.

The Court should also preclude Dr. Moye from claiming that the "all-cause mortality" data from the Alzheimer's studies support his opinion that Vioxx is unsafe at any dose or duration. Dr. Moye claims that the studies "revealed excess deaths in patients on rofecoxib when compared to placebo." (Moye Rpt. at ¶ 126.) At the recent *Smith* trial, however, Dr. Moye admitted that the "excess deaths" were not caused by Vioxx at all, but were instead caused by car accidents, infection, electrocution, and other non-drug related causes. (Sept. 16, 2006 *Smith v. Merck* Tr. at 1498:18-1501:18, 1524:5-17.) As Dr. Moye reluctantly conceded, in the Alzheimer's studies the number of *cardiovascular events* for patients on Vioxx was actually smaller than the number for patients on placebo. (*Id.* at 1503:10-1504:10.) The FDA thus concluded there was "no excess of CV thrombotic events, in particular, no excess of heart attacks, in the rofecoxib group." (*Id.* at 1509:3-18, 1510:10-1512:4.) In fact, Dr. Moye eventually acknowledged that, when one considers only confirmed thrombotic cardiovascular events, confirmed myocardial infarctions, and confirmed cerebrovascular events, patients on Vioxx in the Alzheimer's studies actually had fewer events than patients on placebo. (*Id.* at 1524:18-1526:16.)

The relevant data from the Alzheimer's studies, as Dr. Moye admits, does not show an increased risk of cardiovascular events for patients using Vioxx, and thus does not support his opinions. His inclusion of the "all-cause mortality" data appears to have resulted from his failure to inquire into the causes of death. As he admitted on the stand in the *Smith* case:

> Q:   . . . They [the patients counted in the "all-cause mortality" figure] died from deaths that had nothing to do with Vioxx, though. You know that, don't you?
>
> A:   I don't know that.

4

> Q:     You haven't looked at that?
>
> A:     Again, sir, I don't know that.

(Sept. 16, 2006 *Smith v. Merck* Tr. at 1501:12-16.)

That sort of sloppy methodology does not satisfy *Daubert*, or the Supreme Court's pronouncements in *Joiner*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert."). The Court should not permit Dr. Moye to confuse the jury by arguing that irrelevant "all-cause mortality" data support his opinion.

## IV.  DR. MOYE'S TESTIMONY ON THE MECHANISMS BY WHICH VIOXX PURPORTEDLY INCREASES RISK MUST BE EXCLUDED.

In an effort to bolster his general causation argument, plaintiff seeks to offer Dr. Moye's testimony that Vioxx increases the risk of thrombotic cardiovascular events by "excit[ing] production of cardiovascular disease." (Moye Rpt. at ¶ 24.) Dr. Moye proposes two theories about how Vioxx accelerates cardiovascular disease. First, he hypothesizes that Vioxx causes an increase in blood pressure, which, in turn, accelerates the development of atherosclerosis. Second, he hypothesizes that Vioxx "destabilizes the blood's delicate clotting balance, producing catastrophic thrombotic events in the heart." (*Id.*) Without even considering the merits of these theories, this testimony must be excluded because, as other courts have recognized, Dr. Moye is not qualified to offer expert testimony on biomechanics. Plaintiff will offer other experts – such as his cardiologist, Dr. Gelb – to opine on mechanism. Dr. Moye's testimony on the subject is thus cumulative in addition to being outside his area of expertise.

### A. Dr. Moye Is Not Qualified To Testify About The Mechanisms By Which Vioxx Allegedly Increases Cardiovascular Risk.

Dr. Moye does not have the requisite knowledge, training, or education to opine on the mechanisms by which Vioxx allegedly causes cardiovascular events.  He is not a cardiologist or a pharmacologist (June 2, 2006 Deposition of Lemuel A. Moye, M.D., Ph.D. ("Moye 6/2/06 Dep.") at 87:18-88:3, 88:22-89:1, attached hereto as Ex. B), and his limited experience is insufficient to qualify him as an expert in this area.  In fact, the *Grossberg v. Merck* court in California recognized Dr. Moye's lack of expertise and held that Dr. Moye could not offer expert testimony on "the chemical, mechanistic and physiological specifics of how Vioxx allegedly causes cardiovascular disease." (Aug. 1, 2006 *Grossberg v. Merck* Order Re: Notice of Ruling at 21-22, attached hereto as Ex. C; July 5, 2006 *Grossberg v. Merck* Tr. at 1511:20-24, attached hereto as Ex. D.)  This Court should do the same.

Dr. Moye implies that, because he has been involved in studies and has participated on a FDA Advisory Committee that addressed renal and cardiovascular issues, he may provide expert testimony.  But, his experience has been limited to requests that he design and analyze studies *as a biostatistician*. (*See, e.g.,* Moye 6/2/06 Dep. at 108:17-19; Moye Rpt. at ¶ 4 (stating he is "in charge of the biostatistics group that is carrying out research on the treatment of strokes").)  This is an important distinction.  The fact that Dr. Moye has applied his experience in biostatistics to help design clinical trials involving patients who are at risk for, or have suffered, a heart attack or stroke does not mean he is qualified to testify about the *biological mechanism* by which Vioxx allegedly causes heart attacks.[1]

---

[1] His conclusory statements to the contrary do not make him an expert in cardiology. (*See* Moye 6/2/06 Dep. at 108:20-109:4 ("Q: And even though you were on the cardiorenal Advisory Committee, you're not an expert in cardiology or nephrology, right?  A: I would disagree with you about that.  I certainly am not a cardiologist, but I have extensive training and experience
(*footnote continued next page*)

Dr. Moye's own testimony confirms his lack of expertise. For example, while he opines that one of the mechanisms by which Vioxx purportedly causes cardiovascular events is by upsetting the balance of prostacyclin and thromboxane, his deposition testimony reveals he actually knows very little about this complex subject:

Q: Is prostacyclin a prostaglandin?

A: (Witness reviewing document.) I'm sorry. I don't see where I mention prostacyclin here.

Q: You don't. . . . My question is, is prostacyclin a prostaglandin?

A: It's related to it. I don't know the chemical composition of it. So, I don't know if it meets the chemist's definition of being a prostaglandin or not.

Q: Is that outside your area of expertise?

A: Whether prostacyclin is a prostaglandin, yes.

Q: Do you know whether thromboxane is a prostaglandin?

A: It's regulated by prostaglandin. I don't know if itself it is a prostaglandin.

(Moye 6/2/06 Dep. at 331:7-332:9.) Furthermore, Dr. Moye has no idea what organs produce these chemicals and, in fact, he admits to having very little knowledge or understanding of the chemicals that he alleges Vioxx affects. (*Id.* at 242:15-243:6, 333:13-21, 336:8-15.)

In sum, because Dr. Moye does not have any relevant background, training, education or experience in cardiology, the Court should preclude Dr. Moye from testifying about the mechanisms by which Vioxx allegedly causes cardiovascular events.

---

carrying out cardiovascular trials."); *see also id.* at 132:6-19; 134:13-135:18.) As evidenced by his work experience, Dr. Moye's expertise lies in the area of biostatistics, not cardiology. (*See id.* at 135:20-137:13, 176:7-177:5, 181:10-182:11.)

### B. Dr. Moye's Opinions On Mechanism Are Not Supported By Reliable Scientific Evidence.

Dr. Moye's opinions on this subject should also be excluded because neither of his hypotheses is supported by a proven methodology or reliable scientific evidence.

First, Dr. Moye admits that he knows of no clinical studies supporting his theory that Vioxx advances cardiovascular disease by disturbing the prostacyclin/thromboxane balance – and, in fact, that the theory is based on his subjective beliefs:

> Q: Dr. Moye, is there any specific study that you're relying on for your opinion that Vioxx causes an imbalance between prostacyclin and thromboxane?
>
> A: *No. It was my understanding that the biochemistry of it, but I haven't reviewed the basic biochemical studies, no.*
>
> Q: Do you know whether the studies measure prostacyclin directly or whether they measure a metabolite of prostacyclin?
>
> A: I don't know that.
>
> Q: Do you know the difference between PGI2 and PGF1α?
>
> A: No.[2]

(Moye 6/2/06 Dep. at 376:21-377:13 (emphasis added).)

Second, Dr. Moye also admits that he is unaware of a single study supporting his opinion that Vioxx causes cardiovascular events by promoting atherosclerosis and causing coronary plaque to break off, and that his opinion is simply the result of his own (inexpert) understanding of the biomechanism:

> Q: . . . [W]hat's your basis for saying that Vioxx destabilizes plaque? Do you have any paper or any scientific evidence of that?
>
> A: *I don't have any paper that shows definitively that in intravascular atherosclerosis production that COX-2 inhibitors can accelerate that . . .*

---

[2] PGI2 is the proper name for prostacyclin and PGF1α is a metabolite of prostacyclin.

8

> However, I do understand the complexity of the atherosclerotic generation system. I also understand the delicate interplay in the role of thrombus, and I believe it is admissible that COX-2 inhibitors, like Vioxx, . . . can make atherogenic caps more friable.
>
> Q:   *Based on what?*
>
> A:   *Based on my understanding of how these mechanisms work.*
>
> . . .
>
> Q:   . . . My question is, is there a study, not what's his understanding.
>
> A:   My answer is, no, there's not . . . .

(Moye 6/2/06 Dep. at 299:7-301:12 (emphasis added; objections omitted).)

Dr. Moye cannot provide foundational data or articulate the methodology supporting his conclusions. As such, his opinions amount to no more than his subjective beliefs. But, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert." *Black v. Johnson & Johnson* (*In re Propulsid Prods. Liab. Litig.*), 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (*quoting Joiner*, 522 U.S. at 146). Accordingly, the Court should preclude Dr. Moye from opining on the mechanisms by which Vioxx allegedly causes cardiovascular events.[3]

## V.   DR. MOYE'S OPINIONS ON THE RELATIVE RISKS AND BENEFITS OF VIOXX USE MUST BE EXCLUDED.

Dr. Moye concludes that Vioxx "is unsafe at any dose/duration combination in any patient *regardless* of their underlying risk for cardiovascular disease." (Moye Rpt. at ¶ 25 (emphasis added); Moye 6/2/06 Dep. at 339:21-340:7, 343:21-24, 351:12-15, 360:7-13) and "that Vioxx is the worst" of all the COX-2 inhibitors (*id.* at 394:11-18). Dr. Moye's blanket

---

[3] Merck's Motion for Order Excluding Testimony of Colin Funk, Ph.D., filed concurrently herewith and fully incorporated herein by reference, more fully addresses the complete lack of reliable scientific evidence for the theories that Vioxx accelerates cardiovascular disease or causes plaque ruptures.

9

conclusions are not supported by scientific evidence. Nor is Dr. Moye qualified to opine on either the individual medical judgment involved in prescribing Vioxx to particular patients or the risks imposed by Vioxx relative to other similar drugs.

### A. Dr. Moye's Opinion That Vioxx Is Unsafe At *Any* Dose Or Duration Is Not Supported By Reliable Scientific Evidence.

Dr. Moye's conclusion that Vioxx "is unsafe at any dose/duration combination in any patient *regardless* of their underlying risk for cardiovascular disease" (Moye Rpt. at ¶ 25 (emphasis added)) is inadmissible because it lacks evidentiary support. Dr. Moye cannot cite any clinical studies providing reliable evidence that Vioxx is unsafe at all doses and durations.

In fact, Dr. Moye cannot identify any statistically significant evidence of an increased risk of thrombotic cardiovascular events at any dose and duration even remotely relevant to this case. This includes the 50 mg dose, twice the dose Mr. Dedrick used:

> Q:  Okay. Are you aware of any controlled clinical trial that shows – even to today, that shows a statistically significant increased risk of myocardial infarction in 50-milligram Vioxx users compared to placebo?
>
> A:  Compared to placebo? No.

(*See, e.g.*, June 16, 2006 Deposition of Lemuel A. Moye, M.D., Ph.D. ("Moye 6/16/06 Dep.") at 645:3-9, attached hereto as Ex. E.) Nor can Dr. Moye identify clinical trials showing a statistically significant increased risk resulting from exposure to the 12.5 mg dose:

> Q:  So let's just – so the record is clear: Are you aware of any controlled clinical trial that shows a statistically significant increased risk of MI in 12.5-milligram Vioxx users compared to placebo?
>
> A:  No.
>
> Q:  Okay. And are you aware of any controlled clinical trial that shows a statistically significant increased risk of MI in 12.5-milligram Vioxx users compared to nonselective NSAIDs?
>
> A:  No.

10

(Moye 6/16/06 Dep. at 646:12-24.) Similarly, Dr. Moye admits the studies he references concerning the 25 mg dose did not show a statistically significant increased risk:

> Q:    Okay. ADVANTAGE and VIP were both 25 milligrams, right?
>
> A:    Right. Well, your question was –
>
> . . .
>
> Q:    Okay. Was the difference in myocardial infarctions in the VIP study between the Vioxx group and the placebo group a statistically significant difference?
>
> A:    The data I saw had *insignificant differences.*

(Moye 6/16/06 Dep. at 646:5-9, 649:10-15 (emphasis added).)

There is simply "too great an analytical gap" between any reliable data and Dr. Moye's opinion on this subject. *Joiner*, 522 U.S. at 146. Therefore, his testimony that Vioxx is unreasonable at any dose or duration must be excluded.

### B.    Dr. Moye Is Not Qualified To Opine On The Risk/Benefit Analysis Involved In Prescribing Vioxx.

Dr. Moye has no experience with Vioxx as a treating physician, has never prescribed Vioxx, has never counseled a patient on Vioxx use, and has never prescribed any other COX-2 inhibitor. (Moye 6/2/06 Dep. at 91:5-20.) He also admitted that he never read the product label for Vioxx while it was on the market.[4] (*Id.*) In fact, Dr. Moye has never discussed with other physicians their experiences prescribing Vioxx and he has never talked to a single person who has taken Vioxx to learn about that patient's experience.[5] (*Id*. at 91:21-92:4.) Plainly, Dr. Moye

---

[4] Dr. Moye also admits that he has not conducted any original laboratory research on COX-2 inhibitors (Moye 6/2/06 Dep. at 95:1-4) nor been the author of any original epidemiological studies on Vioxx or any other COX-2 inhibitors (*id.* at 95:9-96:2).

[5] This is perhaps unsurprising. Dr. Moye has not been in practice since March 1992, but has focused instead on his academic career. (Moye 6/2/06 Dep. at 89:2-23; Moye Rpt. at ¶ 8.)
(*footnote continued next page*)

11

is unqualified to offer his opinions concerning the risk/benefit analysis involved in prescribing Vioxx.

Even Dr. Moye admits that the risk/benefit analysis in using any drug is an issue of individual medical judgment. (Moye 6/2/06 Dep. at 120:15-121:4.) His lack of experience with Vioxx or recent experience with any similar drugs leaves him unqualified to opine on the relevant "individual medical judgment" called-for in prescribing Vioxx. *Compare Plunkett v. Merck & Co.*, (*In Re: Vioxx Prods. Liab. Litig.*), 401 F. Supp. 2d 565, 582 (E.D. La. 2005) (finding Dr. Silver qualified to offer a risk-benefit analysis because of his experience as a physician in internal medicine and rheumatology and as the Director of a Chronic Pain Rehabilitation Center) *with* (Dec. 1, 2005 *Plunkett* Tr. at 506:21-508:15 (allowing Dr. Baldwin, a cardiologist, to testify generally concerning "the functioning of the heart," but precluding him from testifying "as to the part, if any, that Vioxx or COX-2 inhibitors played in Mr. Irvin's death," where the doctor had inadequate Vioxx-specific experience.) Whatever Dr. Moye's expertise in biostatistics, he is not educated on the current treatments for patients who have chronic pain. Nor does he have the requisite personal experience to tell the jury that the alleged risks of Vioxx outweigh all potential benefits for all patients.

### C. Dr. Moye's Opinion That "Vioxx Is The Worst" COX-2 Inhibitor Must Be Excluded.

Dr. Moye has testified that "Vioxx is the worst" of all the COX-2 inhibitors. (Moye 6/2/06 Dep. at 394:11-18.) The FDA, however, has concluded that there is a "class effect" for all NSAIDs and there is no basis for rank ordering the various COX-2 inhibitors in terms of cardiovascular risk. (*See* April 6, 2005 FDA Memo at 1-2, attached hereto as Ex. F.) As his own

---

Vioxx was introduced to the public in September 1999, seven and a half years after Dr. Moye stopped regularly seeing patients.

testimony reveals, Dr. Moye's conclusion is unsupported by reliable scientific evidence and should be excluded.

In contrast to the FDA's comprehensive review of the existing data concerning the cardiovascular risk of *all* NSAIDs, including COX-2 inhibitors such as Vioxx, Dr. Moye admits he has not reviewed the relevant materials and does not have a sufficient basis to disagree with the FDA's conclusion that COX-2 inhibitors, such as Vioxx and Celebrex, have a similar effect on the vasculature and cannot be ranked as having a greater risk of causing cardiovascular events:

> Q: Is it your position that you know that Vioxx has a greater cardiovascular risk than these other drugs which you have not done a scientific investigation of, or is it your opinion you've not looked at the question and don't have an opinion one way or the other?
>
> A: I have not looked at the question, so, I can't rank order . . .
>
> Q: With respect to cardiovascular risks?
>
> A: Right.
>
> Q: . . . And that's true with respect to Vioxx and Celebrex also, right?
>
> A: Well, it means the same thing. Rank order with respect to COX-2s – with respect to [Vioxx] and other COX-2s, because I haven't looked at other COX-2s.
>
> . . .
>
> Q: Rank order with respect to Vioxx versus Celebrex, you haven't looked at that question, right?
>
> A: That's right. I have not looked at that point.
>
> Q: So, you can't have an opinion not having looked at that question?
>
> A. Right.

(Moye 6/2/06 Dep. at 370:2-371:21.)    It is clear that Dr. Moye's opinion that Vioxx is "the worst" is not based on the "sufficient facts or data" Rule 702 requires:

13

> A: . . . my understanding of Celebrex is that it has more COX-1, anti-COX-1 activity than Vioxx does. So, to the degree that it has more anti-COX-1 activity is the degree to which it might inhibit thromboxane.
>
> Q: Have you looked at any literature that discusses the effect of Celebrex on thromboxane or not?
>
> A: I have not looked at any particular literature, no.
>
> Q: There's nothing you've seen that tells you one way or the other?
>
> A: I haven't looked to answer the question.

(*Id.* at 207:14-208:6.) Notwithstanding this admitted lack of scientific support, Dr. Moye would still opine that the conclusions stated in the FDA Memo are wrong "based on [his] understanding of the effects of [Vioxx]" (*id.* at 368:22-369:24) and his opinion "that Vioxx is the worst" of all the COX-2 inhibitors (*id.* at 394:11-18).

But, as discussed above, Dr. Moye is not a pharmacologist. (June 27, 2006 Deposition of Lemuel A. Moye, M.D., Ph.D. ("Moye 6/27/06 Dep.") at 25:24-26:3, attached hereto as Ex. G.) This fact was determinative in another case, where a federal court precluded Dr. Moye's opinion comparing diet drugs. *See, e.g.*, *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 702 (W.D.N.C. 2003) (prohibiting Dr. Moye from testifying to alleged similarities between diet drugs because he is not a pharmacologist). Here, too, Dr. Moye's lack of expertise is determinative.

## VI. DR. MOYE MUST NOT BE ALLOWED TO TESTIFY ABOUT MERCK'S ALLEGED INTENT OR MOTIVE.

Under Federal Rule of Evidence 702, a defendant's intent or state of mind are not proper topics for expert testimony. During his deposition, Dr. Moye made clear that, if allowed, he would offer exactly this type of inadmissible motive and intent testimony. (Moye 6/2/06 Dep. at 83:20-24 ("I think it became clear to me what they weren't doing, so, I suppose I am going to speak to some degree about the motives."), 84:22-85:3 ("Q: Are you offering any opinions that Merck intended to hurt patients or intended to mislead the FDA? . . . A: I think I am."), 85:18-

14

24 ("I think I can probably speak most clearly about Merck's intent. And I believe Merck's intent was not to provide a fair, clear assessment of the relationship between Vioxx and cardiovascular events"); Moye Rpt. at ¶¶ 89, 192, 195, 198.)

Jurors are fit to conduct the same analysis Dr. Moye is conducting, and to reach their own conclusions based on the totality of the evidence – including the Merck documents Dr. Moye has reviewed. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (excluding expert testimony as to corporate state of mind because otherwise experts would "improperly . . . assume the role of advocates for the plaintiffs' case"); *see also Yeager v. State*, 737 S.W.2d 948, 952 (Tex. App.-Fort Worth 1987, *no writ*) (explaining that when the jury as the trier of fact is capable of making its own determination about the evidence, "[n]o opinion testimony is required.")

Other courts have recognized this fact and have excluded Dr. Moye's proposed testimony on the alleged intent of pharmaceutical companies. The California court in *Grossberg v. Merck* granted Merck's motion to exclude Dr. Moye's testimony "regarding marketing issues or Merck's state of mind or intent." (Aug. 1, 2006 *Grossberg v. Merck* Order Re: Notice of Ruling at 21-22.) In the Fen-Phen litigation, Dr. Moye was prevented from offering the same kind of "intent" testimony Merck seeks to exclude from this case:

> Dr. Moye's "fact" and "corporate intent" testimony is inadmissible. Indeed, the MDL Court, Judge Bechtle, has already ruled that testimony regarding corporate intent is inadmissible . . . . [T]he jury should hear and/or see first-hand any relevant evidence pertaining to the Defendant's intent. Then the jury, not the witnesses, should consider the facts and make its own determination regarding Defendant's intent.

*Smith*, 278 F. Supp. 2d at 700 (citation omitted). This Court should also preclude this testimony, on the ground that it would improperly invade the province of the jury.

15

## VII. CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court preclude Dr. Moye from offering expert testimony: (i) on or based upon statistically insignificant data; (ii) about the irrelevant "all-cause mortality" data from the Alzheimer's clinical trials; (iii) concerning the mechanisms by which Vioxx allegedly causes injury; (iv) suggesting that Vioxx is dangerous at any dose and duration for any potential user; (v) purporting to explain the risk-benefit analysis involved in prescribing Vioxx; (vi) explaining Dr. Moye's conclusion that Vioxx is more dangerous than all other similar drugs; and (vii) concerning Merck's intent or state of mind.

Dated:  October 30, 2006

Respectfully submitted,

s/Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:    312-494-4440

Douglas Marvin
Elaine Horn

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum In Support Of Motion Of Merck & Co., Inc. ("Merck") To Exclude Testimony of Lemuel A. Moye, M.D., Ph.D. has been served on Liaison Counsel, Russ Herman, and on counsel for Mr. Dedrick, Andy Birchfield, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of October, 2006.

                                                  */s/ Dorothy H. Wimberly*
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, Louisiana  70130
                                                  Phone:  504-581-3200
                                                  Fax:     504-581-3361
                                                  dwimberly@stonepigman.com

                                                  Defendants' Liaison Counsel