

Aug 14 2006
6:17PM

| | | |
|---|---|---|
| IN RE VIOXX PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 1657 |

### SUPPLEMENTAL/REBUTTAL EXPERT REPORT OF JOHN W. FARQUHAR, M.D.
THIS DOCUMENT APPLIES TO ALL CASES

A. **High Risk and Vioxx Interaction in APPROVe.**

1.      The question arose in my deposition of 6/9/06 whether 28 rather than 30 events were correctly assigned to the Vioxx arm of the pre-specified subgroup of "high cardiovascular" risk for analysis of "all thrombotic" events. As predicted, the results using 28 rather than 30 bear out the conclusion stated in my Supplemental Report of 5/26/06 that a significant multiplicative interaction was present between Vioxx use and baseline risk (see ¶¶ 13-15).

2.      Despite the considerable similarity of these two results, the 30 Vioxx-related events represent a better estimate of events derived from the high-risk subgroup, because (a) the two additional patients were diabetics, who are well-known to be among the highest risk population for CV events; and (2) both of the diabetics had additional risk factors for CV events that met the criteria for Merck's "increased cardiovascular risk" category, which were overlooked by the personnel who entered the data on those patients into the database used by Merck to create the risk subgroups, as follows:

   a.      As to patient 91512, the record of 2/9/01 shows a "PmHx" (Past Medical History) of "↑ BP" (High Blood Pressure), p. MRK-AHC0004347; also, the pre-study clinical exam recorded a blood pressure of 140/85, which meets the threshold of 140 systolic for high blood pressure under prevailing professional guidelines. For either or both of these reasons, Patient 91512 therefore had "two or more risk factors" on the list specified by Merck, *i.e.*, diabetes and hypertension.

M006E73834

b.   Patient 93522 was qualified for the "increased CV risk" category based on either "two or more risk factors" or "symptomatic atherosclerotic cardiovascular disease." This patient had diabetes diagnosed in 1991 (MRK-AHC0004743); a pre-study blood pressure reading of 154/81, which exceeds the high systolic blood pressure threshold (MRK-AHC0004722); and a "history of retinal artery infarct" (MRK-AHC0004743), suggestive of a symptomatic atherosclerotic condition. This patient was also "aspirin-indicated" due to the retinal infarct and was on low-dose aspirin as of 1999. (MRK-AHC0004714).

3.   The questioning of defense counsel at my deposition implied some impropriety in reviewing the records of these patients to determine their true medical status. There is nothing improper about performing a thorough review of the records to ascertain and correct the data entry errors that miscategorized the risk status of those patients. On the contrary, placing them in the proper category based on documentary evidence confirms that all patients included in the analysis of high-risk patients in my Supplemental Report belonged in the single subgroup of "increased CV risk" defined by Merck, and provides a more accurate estimate of the effects of high-risk status plus Vioxx.

4.   I also reaffirm that the high-risk analyses were designed to <u>confirm</u> prior evidence of such an interaction (Bombardier, *et al.*, NEJM 2000). Therefore, this analysis was confirmatory, not exploratory.

**B.   Overall Cumulative Evidence Curves for All Thrombotic Events: Protocol 203.**

5.   For completeness, at my direction Professor Jewell calculated and I now add the analysis of "all thrombotic events" to the cardiac events analysis reported in my Supplemental Report of 5/26/06 (¶¶ 2-10). Since cardiac events are a major subset of "all thrombotic" events, it is no surprise that closely analogous findings are present (<u>see</u> Figs. 1-8, attached).

- 2 -

M006E73835

6.  Given Mr. Barnett's cardiac diagnoses, the cardiac event analysis (¶¶ 2-10) remains as the most appropriate one to this case.

### C. Effect of Naproxen on Cardiovascular Outcomes.

7.  In Dr. Kim's Expert Witness Report, he cited an observational study as support for his belief that his VIGOR findings were explained by naproxen's protective effect. However, a recent meta-analysis of randomized NSAID trials (Kearny, et al., 2006) revealed a Relative Risk = 0.92 (95% CI 0.67-1.26) for naproxen versus placebo. This fails to show a naproxen protective effect.

### D. Generalizability of APPROVe and Protocol 203 Results.

8.  I disagree with Dr. Kim's assertion that APPROVe's results cannot be generalized to populations other than those with polyps. First of all, the data were intended to be generalized. Secondly, the Alzheimer's trials were underpowered, thus results were inconclusive (see Jewell @ pp. 8 & 9). Finally, the combined OA and RA population studies by Merck demonstrated a Relative Risk of Vioxx/placebo of 3.4 (95% CI 1.19-10.46, p = 0.01), and the OA trials alone also showed a significant increased risk, RR = 3.03, 95% CI 1.02-12.13, p = 0.03). (See Jewell, p. 10).

9.  Therefore, Vioxx's risk clearly extends to the OA and RA populations.

### E. Individual Confidence Interval (CI).

10. I agree with Professor Jewell's statement that the concept of a CI for an individual is completely inapplicable here, since a potential Vioxx-induced cardiovascular event is a binary outcome, not a continuous outcome. Dr. Kim agreed that he has never seen the "individual confidence interval" concept applied to a binary outcome in the peer-reviewed literature.

### F. The Data Sets Used for Protocol 203.

11. I agree with Professor Jewell that the VICTOR data he used for his

- 3 -

M006E73836

calculation of events in my Supplemental Report of 5/22/06 were appropriate. If the single event now postulated to be eligible were included, its effect would be inconsequential (see Jewell, p. 12).

6/22/06
Date

John W. Farquhar, M.D.