UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC.
("MERCK") TO EXCLUDE EXPERT TESTIMONY THAT SHORT-TERM
VIOXX® USE INCREASES CARDIOVASCULAR RISK**

**(EXPERT CHALLENGE NO. 4)**

Plaintiff alleges, and his experts purport to testify, that the short-term use of Vioxx increases the risk of thrombotic cardiovascular ("CV") events, can cause heart attacks, and in fact caused him to have a heart attack.  Mr. Dedrick claims that he took the 25 mg dose of Vioxx daily for six months – from July 8, 2002 to January 8, 2003.  (Aug. 29, 2006 Plaintiff Profile Form at 2-6, attached hereto as Ex. A.)  There is no reliable scientific evidence that using Vioxx 25 mg for less than 18 months, let alone six months, increases thrombotic risk.  Accordingly, Mr. Dedrick's experts should be precluded from testifying either that it does so, or that Vioxx caused Mr. Dedrick's heart attack, given his limited duration of use.

1

I.      LEGAL STANDARD.

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Memorandum In Support of Motion For Order Excluding Testimony Of Ira J. Gelb, M.D., which has been filed concurrently herewith and is incorporated herein by reference.

In addition to the qualifications and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), expert testimony, like all evidence, must satisfy the relevance requirements of the Federal Rules of Evidence, including Rules 401 and 403.

II.     THERE IS NO SCIENTIFIC SUPPORT FOR AN OPINION THAT VIOXX TAKEN FOR SIX MONTHS AT THE 25 MG DOSE INCREASES CARDIOVASCULAR RISK.

It is widely recognized that the degree of exposure to an agent, whether by dosage or duration, can have a major impact on the effect of the agent on the body.[1]  Indeed, "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) (internal citations and quotation marks omitted) (excluding expert's opinion based in part on failure to provide dose-response evidence, which is "the hallmark of basic toxicology"). Because of this, it is "not enough for a plaintiff to show that a certain chemical agent sometimes causes the kind of harm that he or she is complaining of." *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996).  Instead, plaintiffs in pharmaceutical and toxic tort cases must present *evidence* that they were "exposed to levels of that agent that are known to cause the kind

---

[1] *See, e.g.*, Michael J. Saks et al., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 559 (2d ed. 2005-06).

of harm" that they allegedly suffered.  *Id.*; *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002) ("[T]he appropriate understanding of generic causation is . . . whether exposure to a substance for which a defendant is responsible, such as radiation at the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition in the general population.").

For causation opinions in pharmaceutical and toxic tort cases, the Fifth Circuit has held that epidemiologic studies are "[u]ndoubtedly . . . the most useful and conclusive type of evidence" of causation, even if they are not necessarily required in every case.  *Allen v. Penn. Eng'g Corp.* 102 F.3d 194, 197 (5th Cir. 1996); *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 311, *modified on reh'g*, 884 F.2d 166 (5th Cir. 1989); *see also Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 664 (M.D. La. 2000) ("Epidemiological studies are necessary to determine the cause and effect relationship between an agent, in this case exposure to benzene, and a disease, CML."); *Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224, 227-28 (N.D. Miss. 1989) ("conclusive epidemiological proof [is] essential to the plaintiff's case in a toxic tort pharmaceutical drug setting").  There are two broad categories of epidemiologic studies: randomized clinical studies and observational epidemiologic studies.  REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 484.  Data from blinded, randomized, placebo-controlled clinical trials are the "gold standard for determining the relationship of an agent to a disease or health outcome." *Id.*

In accord with these principles, Mr. Dedrick cannot establish causation in this case simply by showing that exposure to Vioxx at a particular dosage or duration may cause some adverse health effects.  Instead, he must offer scientifically reliable evidence that the use of 25 mg Vioxx for six months is capable of causing myocardial infarctions – the type of harm Mr.

Dedrick claims to have suffered. Plaintiff cannot meet this burden; he can provide no reliable data from clinical trials or observational studies establishing that using 25 mg Vioxx for six months is capable of causing CV events generally or that it caused his heart attack in particular. Accordingly, Mr. Dedrick's experts lack the scientific basis to opine that Vioxx was a cause, and should be precluded from so testifying.

### A. No Clinical Trial Establishes That Taking 25 mg Vioxx For Six Months Is Capable Of Causing CV Events.

As Merck has fully briefed in the past, no clinical studies prior to the FDA's approval of Vioxx support the theory that 25 mg Vioxx, taken for less than 18 months – let alone six months – can increase the risk of thrombotic CV events. In fact, there are no reliable, statistically significant data from *any* clinical trials that using 25 mg Vioxx for less than 18 months can increase the risk of thrombotic CV events. Merck incorporates its prior briefing on this subject, including in particular its Motion to Exclude Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk, filed August 14, 2006 in *Smith v. Merck* (Record Docket No. 6261), and its Reply in Support of that Motion, filed September 5, 2006 also in the *Smith* case (Record Docket No. 6640).

As discussed at length in these briefs, the two studies most commonly cited by plaintiffs' experts, VIGOR[2] and APPROVe,[3] do not support plaintiffs' claims in a case such as this one. VIGOR involved patients regularly taking the 50 mg dose, which is twice the dose Mr. Dedrick claims to have taken. Because, as noted above, "[d]ose is the single most important factor to

---

[2] Claire Bombardier et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 NEW. ENG. J. MED. 1520 (Nov. 30, 2000). VIGOR, an acronym, stands for "Vioxx GI Outcomes Research" study.

[3] Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, 352 NEW. ENG. J. MED. 1092 (Mar. 17, 2005).

4

consider in evaluating whether an alleged exposure caused a specific adverse effect," *McClain*, 401 F.3d at 1242 (internal citations and quotation marks omitted), the results of VIGOR, which involved the use of high-dose Vioxx, cannot and do not provide a generally accepted scientific basis for concluding that the use of Vioxx at the 25 mg dose is capable of causing a heart attack such as the one Mr. Dedrick allegedly suffered.

Unlike VIGOR, APPROVe studied the use of 25 mg Vioxx. It did *not*, however, reveal a statistically significant risk of confirmed thrombotic events before 30 months of use, and thus also cannot support Mr. Dedrick's position. *See, e.g.*, *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991) ("If the . . . duration of exposure to [substance is] the type[] of information upon which experts reasonably rely when forming opinions on the subject, then the district court was justified in excluding Dr. Miller's opinion that is based upon critically incomplete or grossly inaccurate . . . duration data."); *Thompson v. S. Pac. Transp. Co.*, 809 F.2d 1167, 1169 (5th Cir. 1987) (expert's opinion on dioxin as source of plaintiff's illness had "insufficient factual basis" in part because expert had no knowledge of duration of exposure).

Notwithstanding the absence of reliable scientific evidence to show an increased risk of thrombotic cardiovascular events resulting from six months of use of 25 mg Vioxx, plaintiff's experts seek to prove causation based merely on the fact that *some* clinical trial patients had heart attacks within the first few months of Vioxx use. That fact is of no scientific consequence. *See, e.g., Moore v Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (expert's reliance on the temporal relationship between the exposure and the onset of symptoms was entitled to little weight in the absence of supporting literature); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (rejecting expert testimony that nicotine patch caused a heart attack because the attack occurred just three days later as "lack[ing] scientific rigor").

5

To allow plaintiff's experts to rely merely on temporal coincidence, without more, would be to disregard both law and science.  The Court, therefore, should preclude these experts from opining that clinical trial data show an increased CV risk with six months of Vioxx use.

**B.     No Observational Study Establishes That Taking 25 mg Vioxx For Six Months Is Capable Of Causing CV Events.**

Plaintiff's experts also purport to rely on a handful of observational epidemiological studies, but no such study can meet the two independent, threshold requirements to establish reliability.

First, to be reliable evidence, any such study must be statistically significant.  *See*, *e.g.*, *Brock*, 874 F.2d at 313, *modified on reh'g*, 884 F.2d 166, 167 (reversing verdict in Bendectin litigation given plaintiff's "failure to present statistically significant epidemiological proof"); *LeBlanc v. Merrell Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996) (granting summary judgment in Bendectin litigation given absence of "statistically significant[] epidemiological studies").  Second, an epidemiologic study cannot establish causation unless it also shows that the drug more than doubles the relative risk of injury.  *See*, *e.g.*, *Deluca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990) ("[A] relative risk of '2' means that, on the average, there is a fifty per cent likelihood that a particular case of the disease was caused by the event under investigation and a fifty per cent likelihood that the disease was caused by chance alone."); REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 539.  Accordingly, an expert's proffered testimony is no admissible when it is based on epidemiologic data that do not show more than a doubling of the risk.  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1315 n. 16 (11th Cir. 1999) ("The threshold for concluding that an agent more likely than not caused a disease is 2.0 . . . .  Moreover, showing *association* is far removed from proving *causation*.").

As fully explained in Merck's prior briefing on this issue, no observational studies provide statistically significant evidence that the use of 25 mg Vioxx for six months can double the risk of thrombotic CV events. At best, the purported findings of the existing observational studies are inconsistent and inconclusive, even for dosages and durations of Vioxx use that are not at issue in this case. Moreover, these unreliable observational findings are themselves contradicted by the randomized clinical trial data, which courts have recognized as a far superior source for assessing causation.

**III.   CONCLUSION.**

For the foregoing reasons, as well as those articulated in Merck's prior briefing on this subject, Merck respectfully requests that the Court exclude the testimony of plaintiff's experts suggesting that the use of 25 mg Vioxx for six months is capable of causing thrombotic CV events such as heart attacks, or that it caused plaintiff's heart attack.

Dated:  October 30, 2006                                    Respectfully submitted,

                                                            s/ Dorothy H. Wimberly
                                                            Phillip A. Wittmann, 13625
                                                            Dorothy H. Wimberly, 18509
                                                            STONE PIGMAN WALTHER
                                                            WITTMANN L.L.C.
                                                            546 Carondelet Street
                                                            New Orleans, Louisiana  70130
                                                            Phone:  504-581-3200
                                                            Fax:    504-581-3361

                                                            Defendants' Liaison Counsel

                                                            Philip S. Beck
                                                            Mark Ouweleen
                                                            Carrie Jablonski
                                                            BARTLIT BECK HERMAN PALENCHAR
                                                            & SCOTT LLP

54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax: 312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

And

Brian Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing Memorandum In Support Of Motion Of Merck & Co., Inc. ("Merck") To Exclude Expert Testimony That Short-Term Vioxx Use Increases Cardiovascular Risk has been served on Liaison Counsel, Russ Herman, and on counsel for Mr. Dedrick, Andy Birchfield, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of October, 2006.

              */s/ Dorothy H. Wimberly*
              Dorothy H. Wimberly, 18509
              STONE PIGMAN WALTHER
              WITTMANN L.L.C.
              546 Carondelet Street
              New Orleans, Louisiana  70130
              Phone:  504-581-3200
              Fax:  504-581-3361
              dwimberly@stonepigman.com

              Defendants' Liaison Counsel