## IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re: VIOXX | ) |
| PRODUCTS LIABILITY LITIGATION | ) |
|  | ) |
| THIS DOCUMENT RELATES TO ALL | ) |
| CASES | ) |

)
) **MDL NO. 1657**
)
) **SECTION: L**
)
) **JUDGE FALLON**
) **MAG. JUDGE KNOWLES**

## MERCK'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PROHIBITING DISCOVERY OF ATTORNEY WORK PRODUCT AND PRIVILEGED COMMUNICATIONS RELATED TO THE MARTIN REPORT

# TABLE OF CONTENTS

**Page**

I.    THE MARTIN REPORT WAS PREPARED IN ANTICIPATION OF
      LITIGATION.................................................................................................................. 2

II.   PUBLICATION OF THE MARTIN REPORT DID NOT WAIVE WORK-
      PRODUCT PROTECTION OVER ALL OF THE ATTORNEY MATERIALS
      UNDERLYING THE REPORT ...................................................................................... 6

III.  PLAINTIFFS CANNOT SHOW THAT THEY HAVE A "SUBSTANTIAL
      NEED" FOR THE MATERIALS..................................................................................... 8

IV.   PLAINTIFFS HAVE NOT REFUTED MERCK'S CLAIM THAT SOME OF
      THE UNDERLYING DOCUMENTS ARE ALSO PROTECTED BY THE
      ATTORNEY-CLIENT PRIVILEGE............................................................................... 10

CONCLUSION............................................................................................................................ 13

837907v.1

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page**

*Carroll v. Praxair, Inc.,*
No. 2:05-cv-307, 2006 WL 1793656 (W.D. La. June 28, 2006) ................................................. 5

*Fletcher v. Union Pac. Ry. Co.,*
194 F.R.D. 666 (S.D. Cal. 2000) ............................................................................................... 8

*Hanley v. James McHugh Constr. Co.,*
419 F.2d 955 (7th Cir. 1969) .................................................................................................... 8

*Hauger v. Chi., R.I. & P.R. Co.,*
216 F.2d 501 (7th Cir. 1954) .................................................................................................. 10

*Hollinger Int'l Inc. v. Hollinger Inc.,*
230 F.R.D. 508 (N.D. Ill. 2005) ........................................................................................... 7, 8

*In re Grand Jury Investigation,*
599 F.2d 1224 (3d Cir. 1979) ................................................................................................... 9

*In re Grand Jury Subpoenas Duces Tecum,*
574 A.2d 449 (N.J. Super. Ct. App. Div. 1989) ...................................................................... 12

*In re Kaiser Aluminum & Chem. Co.,*
214 F.3d 586 (5th Cir. 2000) .................................................................................................... 2

*In re Leslie Fay Companies, Inc. Sec. Litig.,*
161 F.R.D. 274 (S.D.N.Y. 1995) ...................................................................................... 5, 6, 7

*In re Om Group Sec. Litig.,*
226 F.R.D. 579 (E.D. Ohio 2005) ............................................................................... 5, 6, 7, 12

*In re Thompson,*
624 F.2d 17 (5th Cir. 1980) ...................................................................................................... 8

*Payton v. N.J. Tpk. Auth.,*
691 A.2d 321 (N.J. 1997) ........................................................................................................ 11

*Republic Gear Co. v. Borg-Warner Corp.,*
381 F.2d 551 (2d Cir. 1967) ..................................................................................................... 8

*Sicpa N. Am., Inc. v. Donaldson Enterprises, Inc.,*
430 A.2d 262 (N.J. Super. Ct. Law Div. 1981) ................................................................... 7, 12

*S. Scrap Material Co. v. Fleming,*
No. Civ. A. 01-2554, 2003 WL 21474516 (E.D. La. June 18, 2003) ..................................... 7, 8

*United Jersey Bank v. Wolosoff,*
483 A.2d 821 (N.J. Super. Ct. App. Div. 1984) ........................................................................ 7

*United States v. Davis,*
636 F.2d 1028 (5th Cir. 1981) ............................................................................................... 2, 3

*United States v. El Paso Co.,*
682 F.2d 530 (5th Cir. 1982) .................................................................................................... 2

*Upjohn Co. v. United States,*
449 U.S. 383 (1981) ................................................................................................................ 10

837907v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | ) | |
| In re:  VIOXX | ) | **MDL NO. 1657** |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | **SECTION: L** |
| THIS DOCUMENT RELATES TO ALL | ) | |
| CASES | ) | **JUDGE FALLON** |
| | ) | **MAG. JUDGE KNOWLES** |

## MERCK'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PROHIBITING DISCOVERY OF ATTORNEY WORK PRODUCT AND PRIVILEGED COMMUNICATIONS RELATED TO THE MARTIN REPORT

In their Opposition to Merck's Motion For Protective Order, plaintiffs urge the Court to

deny Merck the protection of the attorney work-product doctrine based on speculation that

Merck's Special Committee to the Board of Directors ("the Special Committee") retained the

Honorable John S. Martin Jr. ("Judge Martin") of Debevoise & Plimpton LLP ("Debevoise") to

prepare the Martin Report not for a litigation purpose, but rather to "absolve[e] upper

management of any wrongdoing and re-establish[] the good-will of the company with the general

public." (Pls' Mem. at 14.)  Plaintiffs' assertion ignores entirely the declaration of William

Bowen, Chairman of the Special Committee that retained Judge Martin and Debevoise, stating

unequivocally that the trigger for the retention was indeed litigation.  It also ignores the

circumstances surrounding the retention – *i.e.*, that the Special Committee was formed and

retained Judge Martin and Debevoise almost immediately following a demand from shareholders

that Merck take *legal action* against its directors and officers.

As set forth below, the documents underlying the Martin Report were in fact prepared in

anticipation of litigation and are therefore subject to work-product protection.  Moreover,

plaintiffs are unable to show that Merck has waived that protection by publishing the report

1

itself, and plaintiffs do not have any "special need" to overcome that protection. Finally, and also contrary to plaintiffs' arguments, many of the documents are also subject to attorney-client privilege. The Court should grant Merck's motion.

# I.   THE MARTIN REPORT WAS PREPARED IN ANTICIPATION OF LITIGATION.

Plaintiffs' argument that the materials underlying the Martin Report are not entitled to work-product protection because Merck created the Martin Report as part of a public relations scheme – rather than in anticipation of litigation (Pls.' Mem. at 14) – asks the Court to ignore record evidence about the primary purpose of Judge Martin's investigation and instead deny Merck protection based on plaintiffs' unsupported speculation about the company's "true" motive. However, plaintiffs' assertions cannot overcome the undisputed record that Judge Martin was retained and conducted his investigation "to provide legal advice to the Special Committee concerning threatened shareholder litigation and on-going regulatory investigations." (Declaration of William G. Bowen ("Bowen Decl.") ¶ 8.)

As set forth in Merck's opening brief – and as plaintiffs concede – materials qualify for work-product protection under Fifth Circuit law if the "primary purpose" for their creation was related to potential litigation. *See In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), and *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (attorney materials are subject to work product protection "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation"). (*See also* Pls.' Mem. at 10 (citing *Davis*, 636 F.2d at 1039).)

Merck has easily satisfied this standard. According to the sworn testimony of William Bowen, Judge Martin was hired in direct response to Merck's receipt of "a shareholder demand

letter asking the Board to take legal action against members of senior management involved in the development and marketing of Vioxx" (Bowen Decl. ¶ 3 ), as well as announcements by the Securities and Exchange Commission and the U.S. Department of Justice that the agencies were "initiating . . . investigation[s] of Merck's conduct with respect to Vioxx." (Bowen Decl. ¶ 4.) Thus, as Mr. Bowen unequivocally states, the Special Committee was formed, and in turn hired Judge Martin and the lawyers at Debevoise, to "investigate the allegations made in the shareholder demand letter and the integrity of senior management in connection with the development and marketing of Vioxx." (Bowen Decl. ¶ 6.)

Plaintiffs' efforts to counter Mr. Bowen's sworn testimony are unavailing. *First*, plaintiffs' claim that Merck's real purpose was to improve the Company's public image so that it could "survive the Vioxx disaster" (Pls.' Mem. at 2) – is fiction, not fact. There is not a single shred of evidence in the record suggesting that the retention was a publicity stunt, that Judge Martin and Debevoise did not act independently, or that the Special Committee acted contrary to its fiduciary duties. Above all, there is no evidence disputing that the purpose of the retention was to prepare for litigation. As already explained, both William Bowen's declaration and the circumstances surrounding the retention affirmatively disprove plaintiffs' suggestions.

*Second*, plaintiffs' argument that the Special Committee's continued authorization of the Martin investigation even after a shareholder derivative suit was dismissed in May of 2006 disproves any litigation purpose is a red herring. In the first place, the pertinent legal question is why the Special Committee decided to retain Judge Martin in 2004 – not why the Special Committee decided to publish the Martin Report in 2006. On that pertinent legal question, as already explained, the record facts are indisputably in Merck's favor.

3

In addition, although plaintiffs are correct that a shareholder suit was indeed dismissed in May, the dismissal hardly ended the threat of litigation. That derivative suit was dismissed for want of a demand that the Board take legal action. Plaintiffs have also appealed the dismissal of the derivative action, and that appeal is pending in the Third Circuit Court of Appeals. *See* Notice of Appeal, *In re Merck & Co., Inc. Securities, Derivative and "ERISA" Litig.*, MDL No. 1658 (D.N.J. June 6, 2006) (attached as Ex. 1). In any event, the dismissal of the shareholder lawsuit plaintiffs reference does not eliminate litigation arising from the distinct October 29, 2004 shareholder *demand* which triggered the Special Committee to retain Judge Martin and Debevoise. That demand, like one made as recently as July 18, 2006, is still pending. (*See, e.g.,* Letter from Jeffery S. Abraham to Merck's Board of Directors (October 29, 2004) (attached as Ex. 2); Letter from Todd S. Collins to Merck's Board of Directors (July 18, 2006 ) (attached as Ex. 3).) Given the pendency of those demands, Judge Martin's work remained "in anticipation of litigation" in September 2006. And, of course, along with the potential private litigation against the company, government investigations of Merck remain open as well. Under these circumstances, it is absurd to say that the Special Committee's decision to let Judge Martin and Debevoise complete the project they had begun nearly a year-and-a-half before the dismissal had nothing to do with "litigation."

Finally, plaintiffs also disingenuously suggest that the timing of Merck's publication of the Martin Report buttresses their claim that the real motive was publicity. According to plaintiffs, Merck posted the report on September 6, 2006, in part because the *McFarland* case was "on the eve of . . . trial." (Pls.' Mem. at 5.) That is demonstrably false. Nearly *two months* before then, Judge Higbee had made clear to the parties that the *McFarland* case would not proceed to trial in September. *See* Tr. at 7:22-8:16, *In re Vioxx*, Case No. 619 (N.J. Super. Ct.

4

Law Div. July 18, 2006) (attached as Ex. 4). Similarly, the simple fact that one MDL case – the *Smith* case – was scheduled to begin in September is hardly a reason to doubt Merck's motives: there was not a single month in 2006 in which a Vioxx case was neither headed to trial or in trial.[1]

For all of these reasons, the cases cited by plaintiffs – *Carroll v. Praxair, Inc.*, No. 2:05-cv-307, 2006 WL 1793656, \*2 (W.D. La. June 28, 2006), *In re Leslie Fay Cos., Sec. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1995) and *In re OM Sec. Litig.*, 226 F.R.D. 579 (E.D. Ohio 2005) (Pls.' Mem. at 10) – are wholly inapposite. In *Carroll*, for example, the court held that documents underlying a company's internal investigation of the cause of an industrial accident were unprotected because of testimony that the company regularly conducted investigations "in the ordinary course of business" to "ascertain the cause of the accident, to evaluate equipment failures, and to implement changes in an attempt to prevent similar accidents in the future." 2006 WL 1793656, at \*4. Moreover, the court specifically noted that the investigation took place within 24 hours of the accident itself and there was no evidence that the party "had a particularized reason to believe that litigation would result from the accident." *Id.*

*Carroll* could not be more distinguishable from the facts here. After all, the 20-month investigation conducted by Judge Martin was anything but ordinary. Merck had no established practice of investigating drug withdrawals; nor did it commence the investigation immediately upon removing Vioxx from the market. Instead, as the record establishes, the Martin

---

[1]     Plaintiffs' unsubstantiated allegations are directed not only at Merck, but also at Judge Martin himself. In an attempt to undercut the independence and credibility of the Martin Report, plaintiffs incorrectly suggest that Judge Martin improperly used the title "Judge" when authoring the Martin Report – as is custom for former members of the federal judiciary – in order to lend "false credibility" to his conclusions. (Pls.' Mem. at 3 n.1.) Not only is this allegation without factual basis, but it is also entirely irrelevant to the issue of whether plaintiffs are entitled to any of the materials underlying Judge Martin's report.

5

investigation was conducted in direct response to a specific threat of shareholder litigation arising after the drug's withdrawal and not in the "ordinary course of business."

Plaintiffs' reliance on *Leslie Fay* and *In re OM* is similarly misplaced because in both cases, the court ordered production of materials created during an **audit** committee's investigation of accounting irregularities in the company's finances. *See Leslie Fay*, 161 F.R.D. at 280; *Om*, 226 F.R.D. at 587. In *Leslie Fay*, for example, the audit committee undertook an investigation so that it could make "specific recommendations to senior management relating to the Company's financial structure, organization, financial reporting, and internal control systems." 161 F.R.D. at 281. Similarly, in *In re Om*, the record established that the audit committee conducted its investigation for the "business purpose" of helping the Board to determine "the accuracy of earnings and financial statements" so that it could **adjust** its financial statements accordingly. 226 F.R.D. at 587. By contrast, the record here shows that the Martin investigation was conducted for the primary purpose of advising the Board whether litigation was required in light of the shareholder demand that had been served on the company – and the work-product doctrine is thus applicable under Fifth Circuit law.

## II.  PUBLICATION OF THE MARTIN REPORT DID NOT WAIVE WORK-PRODUCT PROTECTION OVER ALL OF THE ATTORNEY MATERIALS UNDERLYING THE REPORT.

Plaintiffs' second argument – that Merck waived work-product protection over the materials used in preparing the Martin Report as a result of the extra-judicial publication of the report – similarly fails.

As set forth in Merck's opening brief, there is no waiver of work-product protection when the material has not been used affirmatively in the litigation by the party seeking protection. *See Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005) (no waiver of work product where report was not "used offensively" in the litigation). This is so

6

because the whole purpose of the work-product doctrine is to shield from discovery counsels' efforts in preparing for and pursuing litigation. For that reason, it is not until a disclosure is made within the *litigation* that a waiver has occurred. At that point, fairness demands disclosure; until that point, parties are not permitted to piggy-back on the work of their adversaries and uncover their adversaries' thoughts and strategies. Accordingly, because the Martin report is not being used affirmatively in the product liability litigation, plaintiffs have no grounds for demanding disclosure of any of the underlying work product.

Once again, plaintiffs' cases do not support their position. For starters, most of their cases relate to waiver of the attorney-client privilege and are thus irrelevant to the work product issues in this litigation. *See Sicpa N. Am., Inc. v. Donaldson Enters., Inc.*, 430 A.2d 262, 265 (N.J. Super. Ct. Law Div. 1981) (discussing waiver of the attorney client privilege) (Pls.' Mem. at 21); *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 282 (S.D.N.Y. 1995) (same) (Pls.' Mem. at 22); *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 828 (N.J. Super. Ct. App. Div. 1984) (same) (Pls.' Mem. at 22); *In re OM Group Sec. Litig.*, 226 F.R.D. 579, 593 (N.D. Ohio 2005) (same) (Pls.' Mem. at 24). And the only case plaintiffs cite involving the work-product doctrine – *Southern Scrap Material Co. v. Fleming*, (Pls.' Mem. at 22) – merely confirms Merck's argument that extra-judicial disclosure of the Martin Report does not compel disclosure of the underlying attorney work product. In *Fleming*, the court observed that disclosure of work product is warranted "where a party deliberately disclosed work product in order to gain a tactical advantage and in instances where a party made testimonial use of work-product and then attempted to invoke the work-product doctrine to avoid cross-examination." *S. Scrap Material Co. v. Fleming*, No. Civ. A. 01-2554, 2003 WL 21474516, at *8 (E.D. La. June 18, 2003) (quotation omitted). As plaintiffs themselves admit (Pls.' Mem. at 22), that is not the case here.

7

In sum, because Merck has not made any litigation disclosure of the work product underlying the Report, it has not waived its right to assert work-product protection over the materials.[2] *See Hollinger*, 230 F.R.D. at 518.

## III.   PLAINTIFFS CANNOT SHOW THAT THEY HAVE A "SUBSTANTIAL NEED" FOR THE MATERIALS.

Plaintiffs' opposition brief also attempts to water down the requirement that they must demonstrate a "substantial need" for the work product underlying the Martin Report by arguing that they have a substantial need for the materials because they go "to the heart of this litigation." (Pls.' Mem. at 26.)  But while plaintiffs suggest that "substantial need" is roughly equivalent to whatever materials are helpful to the prosecution of their claims, the standard actually requires much more. *See In re Thompson*, 624 F.2d 17 (5th Cir. 1980); *Hanley v. James McHugh Constr. Co.*, 419 F.2d 955 (7th Cir. 1969) (discovery of statements of witnesses should not have been ordered in the absence of any reason for allowing discovery other than that the documents were given by people who were present at the scene and might be admissible as evidence in the case); *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 558 (2d Cir. 1967) (production not required where documents might possibly be helpful to thorough preparation of the case but were not essential to preparation); *Fletcher v. Union Pac. Ry. Co.*, 194 F.R.D. 666, 673 (S.D. Cal. 2000) (injured railroad worker did not establish substantial need to obtain surveillance films deemed work product where, *inter alia*, defendant railroad stated that it would not introduce any of the films at trial and the worker sought the films only to corroborate his injury claims, not as essential element to his prima facie case).

Rather than attempt to make a traditional showing of substantial need by, for example,

---

[2]     Plaintiffs instead argue that, although it has not used the Report in litigation, Merck has used it to "mislead the public" and "influence potential jurors." (*See* Pls.' Mem. at 23.)  Waiver cannot possibly result from completely unsubstantiated assertions of juror bias. If plaintiffs are concerned about the Martin Report's influence on jurors, they should raise that during *voir dire* with the Court.

8

showing that Merck intends to use the report in product liability cases – which Merck indisputably does not – or claiming that a critical witness is deceased or otherwise unavailable (a showing that they could not make insofar as most of the witnesses interviewed by Debevoise have already been deposed in this litigation), plaintiffs argue instead that it would require substantial hardship for them to re-create the Martin investigation. According to plaintiffs, they cannot be expected to conduct an investigation that "transpired over the course of 20 months and cost in excess of $22 million dollars." (Pls.' Mem. at 26.) This argument turns the work-product doctrine on its head. The purpose of the work-product doctrine is to permit attorneys to prepare for litigation without fear of having their adversaries piggy-back on those efforts. If the very thoroughness and complexity of the work product *justified* disclosure, then that purpose would be completely eliminated. It is not surprising that plaintiffs are unable to cite a single case supporting their novel position.

Lastly, plaintiffs' related suggestion that they would be at a disadvantage if required to conduct a similar investigation because – as adversaries – they "will be unable to replicate the information that has been uncovered by Mr. Martin" (Pls.' Mem. at 28) is similarly unpersuasive. If this were the required showing to compel production of attorney work product, the doctrine would lose all meaning. Under plaintiffs' approach, an opposing side need only assert that a deponent was "more truthful" with his or her own attorney in preparing for a deposition to establish a "substantial need" for the work product used to prepare the witness to testify. That is not the law. Indeed, courts have expressly concluded that mere speculation regarding the possibility of inconsistent statements does not constitute a substantial need. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (concluding that the desire to impeach or corroborate witness testimony, by itself, would never overcome the protection given to a

9

memorandum by an attorney of his interview with the witness); *Hauger v. Chi., R.I. & P.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954) ("A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeaching material in the statements.").

In short, the fact that the materials underlying the Martin Report may be relevant to the prosecution of plaintiffs' claims is plainly insufficient to demonstrate a "substantial need" for work-product materials. Because plaintiffs provide nothing more, their arguments must be rejected on this ground as well.

## IV.  PLAINTIFFS HAVE NOT REFUTED MERCK'S CLAIM THAT SOME OF THE UNDERLYING DOCUMENTS ARE ALSO PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Plaintiffs also fail to overcome Merck's showing that documents underlying the Martin Report that reveal the substance of Debevoise's communications with Merck employees, executives, officers and directors are subject to protection not only as work product, but also as privileged attorney-client communications. As an initial matter, plaintiffs' argument that Judge Martin and the other lawyers at Debevoise were not acting in their capacity as attorneys when conducting their investigation of executive conduct at Merck is without merit. As Mr. Bowen states in his sworn declaration, Judge Martin was retained by the Special Committee "to conduct a comprehensive investigation of the actions of Merck's senior management . . . and *to provide legal advice* to the Special Committee concerning threatened shareholder litigation and on-going regulatory investigations." (Bowen Decl. ¶ 8 (emphasis added).) Thus, the Debevoise attorneys were working as counsel to the Special Committee in conducting an investigation of alleged misconduct within the Company – a situation that is clearly covered by the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).

10

Plaintiffs' next argument – that the privilege is inapplicable because Judge Martin was motivated by the "business purpose" of clearing Merck's executives of wrongdoing, rather than the legal purpose of preparing for litigation (Pls.' Mem. at 14) – is also without merit. Plaintiffs rely on *Payton v. New Jersey Turnpike Authority*, 691 A.2d 321 (N.J. 1997), for the proposition that Merck cannot claim privilege over any of the communications underlying the Martin Report because they may have had some ancillary business purpose. However, *Payton* is inapposite in several respects. In *Payton*, the court suggested, but did not hold, that an investigation conducted by inside counsel into sexual harassment claims alleged by an employee would not be subject to privilege if the investigation was conducted primarily for a business purpose. *Id.* at 334. However, the court based its opinion on the fact that the investigation in that case was initiated months before the employee brought suit against the company and, thus, it was probable that the company "began to investigate in order to comply with its internal policies and fulfill its legal duties" under sexual harassment laws. *Id.* Moreover, the *Payton* court specifically rejected a general rule that the privilege is inapplicable where a potential business purpose exists, instead remanding the case to the trial court to determine the extent and nature of the attorney's involvement in the investigation. *Id.* at 335. As a result, the *Payton* decision at most suggests that the Court must review the documents at issue to determine their privileged status before it may fairly deny Merck's motion to compel. For these reasons, plaintiffs' argument that privilege does not apply to any of the documents underlying the Martin Report as a general matter must fail.

Plaintiffs also err in arguing that Merck waived attorney-client privilege over these communications by publishing the final version of the Martin Report itself. (Pls.' Mem. at 17.) As explained in Merck's opening brief, under New Jersey law, a party does not waive protection

11

of communications made during a privileged investigation merely by disclosing the eventual *conclusions* made as a result of that investigation. *See In re Grand Jury Subpoenas Duces Tecum*, 574 A.2d 449, 456 (N.J. Super. Ct. App. Div. 1989). And plaintiffs' cases do not say otherwise. For example, in *Sicpa North America, Inc. v. Donaldson Enterprises, Inc.*, 430 A.2d 262 (N.J. Super. Law Div. 1981) (Pls.' Mem. at 19), the plaintiff sought production of a report that had been voluntarily provided to the defendant's previous counsel for settlement purposes only. The defendant argued that the report *itself* was protected by the attorney-client privilege but the court disagreed, concluding that the report, having been previously disclosed, was "no longer privileged" and therefore discoverable. *Id.* at 266.

*In re OM Group Sec. Litig.*, 226 F.R.D. 579 (N.D. Ohio 2005) (Pls.' Mem. at 20), is similarly inapposite. That case involved allegations that disclosure of a privileged PowerPoint presentation and spreadsheets summarizing an Audit Committee's investigation waived the attorney-client privilege with respect to documents underlying the presentation. The court in *In re OM* observed that the "voluntary disclosure of purportedly privileged material is inconsistent with an assertion of the privilege," *id.* at 590, and that courts are to examine "whether there has been a disclosure of a 'significant part' of a privileged communication to determine if the privilege, in fact, has been waived." *Id.* The *Om* court found that disclosure of the PowerPoint presentation, which itself was privileged, also waived privilege as to the underlying investigation because it "directly quoted" privileged communications and summarized the content of specific privileged e-mails. *Id.* at 592. Here, in contrast, the Martin Report did not quote or directly summarize any specific privileged communications. As a result, no waiver as to the documents underlying the report can result from its publication, and plaintiffs cannot meet their burden of proving that Merck has waived the attorney-client privilege.

12

## CONCLUSION

For the foregoing reasons and those set forth in Merck's opening brief, the Court should

grant Merck's motion for a protective order and shield the materials underlying the Martin

Report from discovery based on the application of the attorney work-product doctrine and the

attorney-client privilege.

Dated: November 3, 2006          Respectfully submitted,

                                 /s/ Dorothy H. Wimberly
                                 Phillip A. Wittmann, 13625
                                 Dorothy H. Wimberly, 18509
                                 STONE PIGMAN WALTHER
                                 WITTMAN L.L.C.
                                 546 Carondelet Street
                                 New Orleans, LA 70130
                                 Phone: 504-581-3200
                                 Fax:    504-581-3361

                                 Defendants' Liaison Counsel

13

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Memorandum in Support of

Motion for Protective Order Prohibiting Discovery of Attorney Work Product and Privileged

Communications Related to the Martin Report has been served on Liaison Counsel, Russ

Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon

all parties by electronically uploading the same to LexisNexis File & Serve Advanced in

accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the

Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures

established in MDL 1657, on this 3rd day of November, 2006.

> /s/ Dorothy H. Wimberly
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana 70130
> Phone: 504-581-3200
> Fax:    504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

14