1622 LOCUST STREET | PHILADELPHIA, PA 19103-6305 | phone 215/875-3000 | fax 215/875-4604 | www.bergermontague.com

# Berger&Montague,P.C.
ATTORNEYS AT LAW

TODD S. COLLINS  *ALSO ADMITTED IN DE*
WRITER'S DIRECT DIAL | 215/875-3040
WRITER'S DIRECT FAX | 215/875-5715
WRITER'S DIRECT E-MAIL | tcollins@bm.net

July 18, 2006

**VIA OVERNIGHT DELIVERY**

Board of Directors
c/o Celia A. Colbert, Vice President, Secretary,
 and Assistant General Counsel
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889-0100

Dear Board of Directors:

Pursuant to New Jersey law, M. Marc Zimmerman (the "Shareholder"), by and through his attorneys, respectfully demands that the Board of Directors of Merck & Co., Inc. (the "Corporation" or "Merck") take legal action against the Board of Directors and management of Merck who, during the period May 1999 - September 2004 (the "Relevant Period"), allowed Merck to market and sell its multi-billion dollar drug Rofecoxib, more commonly known as Vioxx, for arthritis and pain, to the detriment of the Corporation.

During the Relevant Period, such directors and management personnel ("Defendants") misrepresented the safety profile of Vioxx and failed to advise the public of the increased risk of heart attack and other cardiovascular problems associated with Vioxx. During this time, Merck recorded billions of dollars in Vioxx sales.

Also during the Relevant Period, several Defendants engaged in widespread insider selling of Merck stock. This insider selling amounted to at least 1,613,034 shares, for proceeds of over $94 million for the personal, private benefit of such Defendants.

As the Board is aware, on May 19, 1999, the U.S. Food & Drug Administration ("FDA") approved Vioxx for relief of symptoms of osteoarthritis, management of acute pain in adults, and treatment of menstrual pain. Following the launch of Vioxx, Defendants directed Merck to market Vioxx heavily, resulting in, e.g., 2003 global sales of $2.5 billion. However, throughout the Relevant Period, Defendants made, and caused Merck to make, false and misleading statements concerning the cardiovascular safety profile of Vioxx.

EXHIBIT 3

# Berger&Montague,P.C.
ATTORNEYS AT LAW

Board of Directors
c/o Celia A. Colbert, Vice President, Secretary,
  and Assistant General Counsel
Merck & Co., Inc.
July 18, 2006
Page 2

For example, according to Merck, VIGOR, a Merck-sponsored study, indicated that any difference in cardiovascular mortality between one group treated with Vioxx and another group treated with Naproxen was attributable to the cardio-protective nature of Naproxen, not any risk associated with taking Vioxx. On April 27, 2000, a Merck spokesman, acting at the direction of Defendants, reiterated that there was no evidence that Vioxx created an increased cardiovascular risk compared to Naproxen.

Defendants' campaign of promoting Vioxx, despite Defendants' awareness of Vioxx's undisclosed risks, continued for years. On May 22, 2001, for example, Merck "today reconfirmed the favorable cardiovascular safety profile of Vioxx." On August 10, 2001, Defendants again praised Vioxx's "overall safety profile." In addressing lawsuits filed against Merck with respect to Vioxx, Defendants directed Merck to state in the 2001 Form 10-K filed with the SEC the following: "The Company believes these lawsuits are completely without merit and will vigorously defend against them." Merck repeated this statement one year later, on March 21, 2003, in Merck's 2002 Annual Report.

Defendants' campaign to conceal the truth continued into 2003 and 2004. As late as November 14, 2003, following substantial declines in Merck's stock price as the truth about the dangers of Vioxx began to filter into public awareness, Defendants caused Merck to file with the SEC its Form 10-Q for the period ending September 2003. In this Form 10-Q, Defendants caused Merck to continue to conceal the cardiovascular risks associated with Vioxx.

In August 2004, an FDA study found that patients taking Vioxx had a 50% greater chance of heart attack and sudden death. Defendants directed a Merck spokesman to dispute the findings of the FDA study. According to a Merck spokesman, "Based on all the data that are available from our clinical trials, Merck stands behind the efficacy and safety, including cardiovascular safety, of Vioxx."

It was not until September 30, 2004, that Defendants finally allowed Merck to announce the worldwide withdrawal of Vioxx from the market.

As a result of Defendants' wrongdoing, as described above, Merck has suffered grave damage to its goodwill among shareholders, patients and the medical community. Merck's liability and losses are likely to climb into the hundreds of millions or billions of dollars. Such damage has resulted from Defendants' concerted avoidance of the truth with respect to Vioxx's dangers, as well as their prolonged campaign to mislead with regard to the cardiovascular dangers posed by Vioxx.

## Berger & Montague, P.C.
ATTORNEYS AT LAW

Board of Directors
c/o Celia A. Colbert, Vice President, Secretary,
 and Assistant General Counsel
Merck & Co., Inc.
July 18, 2006
Page 3

    Accordingly, the Shareholder, through his undersigned attorneys, respectfully demands that the Board of Directors bring suit and take other appropriate against Defendants. If the Board of Directors fails to comply with this demand within ninety (90) days from today, the Shareholder intends to institute a shareholders' derivative action for return of funds and for damages to the Corporation.

Very truly yours,

Todd S. Collins
Berger & Montague, P.C.

Evan Smith
Brodsky & Smith LLC

TSC/mag

cc:    William R. Stein, Esq.
       Hughes Hubbard & Reed, LLP

       Robert H. Barron, Esq.
       Cravath, Swain & Moore, LLP

       Richard L. Posen, Esq.
       Wilkie Farr & Gallagher, LLP

407263_04.wpd