UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN SUBJECTS FROM EVIDENCE AT TRIAL**

**(PLAINTIFF'S MOTION *IN LIMINE* NO. 3)**

Plaintiff asks the Court to exclude evidence or argument on a laundry list of topics. Much of plaintiff's motion is unnecessary, as Merck does not intend to offer evidence or make arguments related to many of the enumerated issues. As to certain other topics, Merck opposes plaintiff's request either conditionally or in full.

I.      SUMMARY OF MERCK'S POSITIONS.

For the Court's convenience, the following chart summarizes Merck's position on the 25 requests included in plaintiff's motion. Merck's responses can be categorized as follows: (i) requests that the Court should deny (designated in the chart as "deny"); (ii) evidence that Merck does not plan to introduce at trial unless plaintiff introduces such evidence, in which case Merck reserves the right to use such evidence in rebuttal ("qualified exclusion"); and

837911v.1

(iii) requests for which Merck does not intend to offer evidence or make any argument in the compensatory phase of this trial ("unopposed").

| ¶ | Description | Merck's Position |
|---|---|---|
| A | "Any suggestion that a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive and/or ability to develop new medications." | Unopposed |
| B | "Any comment, inference, testimony, or documents tending to suggest in any way that an award of damages in this case will adversely affect the ability of any member of the jury to purchase or receive medications in the future, adversely affect the cost of medication, or adversely affect the availability of pharmaceutical drugs to individuals or industries in the United States or worldwide." | Unopposed |
| C | "Any comment, reference, or inference that this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly-traded pharmaceutical manufacturer." | Unopposed |
| D | "Any comment, inference, reference, testimony, or documents suggesting or referring to Health Canada or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries." | Qualified Exclusion |
| E | "Any reference, comment, or inference that this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining health insurance." | Unopposed |
| F | "Any reference, comment, or inference that this case or any other Vioxx products liability case may cause an increase in the cost of pharmaceutical drugs to the public." | Unopposed |
| G | "Any comment, evidence, testimony, inference or document mentioning medical conditions of Plaintiff or Plaintiff's family that are unrelated to the injuries at issue in this lawsuit." | Deny |
| H | "Any comment, evidence, testimony, inference or document mentioning any non-criminal bad conduct of Plaintiff.  Misdemeanors and human frailties should not become 'fair game' during trial. Federal and state rules of evidence prohibit such character assassination. Such testimony is improper under Fed. R. Evid. 610. See *Hudson v. United States*, 387 F.2d 331 (5th Cir. 1967)." | Deny |

837911v.1

| ¶ | Description | Merck's Position |
|---|---|---|
| I | "Any reference, comment, or disclosure, whether directly or indirectly, in any manner, that Plaintiff's medical bills were and will be paid in the future for [sic] or covered by TennCare, Plaintiff's health insurer. Such evidence is entirely immaterial to any issue in this case and any mentioning or inference thereof, directly or indirectly, in any manner, will be harmful and unjustly prejudicial to the Plaintiff. See *Fye v. Kennedy*, 991 S.W.2d 754,763 (Tenn. App. 1998) ('[T]the fact that the plaintiff has received payments from a collateral source, other than the defendant, is not admissible in evidence and does not reduce or mitigate the defendant's liability.')" | Qualified Exclusion |
| J | "Any comment, inference, evidence, testimony, or document tending to suggest in any way that an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law. See generally *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443,462 (1993)." | Unopposed |
| K | "Any mention of the purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases." | Unopposed |
| L | "Any comment or inference that Plaintiff's attorneys and their law firm primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation. See *Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157-58 (5th Cir. 1993)." | Unopposed |
| M | "Any comment, inference, or personal anecdote from any Merck witness or lawyer that they or their family members used Vioxx. See *U.S. v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979)." | Deny |
| N | "Any comment, evidence, testimony, inference or document mentioning, suggesting or inferring that Vioxx was taken off the market due to 'media hype' caused by attorneys or the media." | Unopposed |
| O | "Any comment, evidence, testimony, inference or document that preemptively bolsters the unchallenged character (e.g., honest) or traits (e.g., generous) of Merck's current or former employees, managers, consultants, experts, agents, or fiduciaries." | Deny |
| P | "Any comment or reference to the medical conditions of Plaintiff's family members that are unrelated to the to [sic] the injuries in this case. Plaintiff specifically refers to the following: 1) Plaintiff's brother Kenny Dedrick's heart attack, heart disease, and smoking; and 2) Plaintiff's brother Phil Dedrick's heart disease and smoking." | Deny |
|   | (*continued on next page*) |   |

| ¶ | Description | Merck's Position |
|---|---|---|
| Q | "Any reference to Plaintiff's non-criminal bad conduct. Plaintiff anticipates that Merck will [sic] Plaintiff regarding the following subjects: 1) use of Viagra; and 2) use of alcohol." | Deny |
| R | "Any comment or reference to opinions of healthcare personnel who are not witnesses at trial, either in person or by deposition." | Deny |
| S | "Any reference, comment or evidence that any members of the public or medical community desire that Vioxx be placed back on the market." | Deny |
| T | "Any comment, evidence, testimony, inference or document inferring that state product liability defect and/or failure-to-warn laws pressure drug manufacturers to add unsubstantiated, false, or invalid warnings to their labels in order to avoid lawsuits." | Deny |
| U | "Any comment, evidence, testimony, inference or document mentioning that state tort law undercuts the U.S. Food and Drug Administration's (FDA) mission to require drug manufacturers to include only scientifically valid warnings on drug labels." | Deny |
| V | "Any comment, evidence, testimony, inference or document mentioning that too many warnings of serious injuries will dilute the effectiveness of warnings generally." | Deny |
| W | "Any comment, evidence, testimony, inference or document mentioning that state products liability law frustrates the FDA's protective regime." | Deny |
| X | "Any reference, comment, or inference that FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law." | Deny |
| Y | "Any reference, comment, or inference to settlement negotiations or the lack thereof." | Unopposed |

II.   **MERCK'S SPECIFIC RESPONSES TO PLAINTIFF'S REQUESTS.**

   A.   **"Any suggestion that a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive and/or ability to develop new medications."**

   Merck's Response:  Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic.  If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

4

837911v.1

> B. "Any comment, inference, testimony, or documents tending to suggest in any way that an award of damages in this case will adversely affect the ability of any member of the jury to purchase or receive medications in the future, adversely affect the cost of medication, or adversely affect the availability of pharmaceutical drugs to individuals or industries in the United States or worldwide."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

> C. "Any comment, reference, or inference that this case or other Vioxx product liability litigation cases may have a negative impact on the stock price of Merck or any other publicly traded pharmaceutical manufacturer."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

> D. "Any comment, inference, reference, testimony, or documents suggesting or referring to Health Canada or any other foreign regulatory agency's decision to allow the sale of Vioxx within their respective countries."

Merck's Response: Merck agrees that it would be inappropriate for either party to mention statements, decisions, or requirements of a foreign regulatory agency. Such evidence bears no relation to Mr. Dedrick's use of Vioxx®, his doctor's decision to prescribe Vioxx to him, or any of Merck's alleged conduct in this case. If, however, plaintiff improperly raises evidence of, for example, whether Vioxx is available in other countries or the contents of its non-U.S. labels, then Merck should be entitled to rebut this evidence with proof of other foreign regulatory actions, such as the Health Canada statement. This is precisely what happened in the *Smith* trial (which plaintiff mischaracterizes in his motion). Mr. Smith's counsel opened the door to testimony about Health Canada by asking Dr. Reicin if Merck's withdrawal of Vioxx was worldwide. (Sept. 21, 2006 *Smith v. Merck* Tr. at 2319:5-8.) After Merck's counsel interceded,

the Court stated that Mr. Smith's counsel "could well" have opened the door to Merck's questions about Health Canada. (*Id.* at 2319:13-19.) Apparently as a result of the Court's comments that the questions "may have" opened the door (*id.* at 2319:20), Mr. Smith's counsel did not object when Merck's counsel asked Dr. Reicin about Health Canada on redirect. (*Id.* at 2508:25-2509:9.) Should Mr. Dedrick's counsel open the door to such testimony, Merck requests that the Court allow it to conduct similar redirect examination.

E.  **"Any reference, comment, or inference that this case or any other Vioxx products liability case may cause an increase in the cost of purchasing or maintaining health insurance."**

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

F.  **"Any reference, comment, or inference that this case or any other Vioxx products liability case may cause an increase in the cost of pharmaceutical drugs to the public."**

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

G.  **"Any comment, evidence, testimony, inference or document mentioning medical conditions of Plaintiff or Plaintiff's family that are unrelated to the injuries at issue in this lawsuit."**

Merck's Response: Merck opposes this motion to the extent that it seeks to exclude evidence regarding Mr. Dedrick's relatives' history of cardiovascular disease and diabetes. (*See, e.g.*, Deposition of Anthony Dedrick ("Dedrick Dep.") at 101:4-111:6, attached hereto as Ex. A.) As this Court recently noted in *Mason*, such evidence is relevant to the cause of a plaintiff's own cardiovascular disease and heart attack:

> The motion to exclude the information about Reta Mason Hurley's cardiovascular problems, you know, that, to me, is a relevant issue.

> I mean, cardiovascular, whether or not she had it, you know, I don't know. That's a question of proof. But if she had it or if there is a suspicion or if the plaintiff said she had it or if there is some information that she had it, that's relevant to the person's risk factor. It increases the risk factor. These cases, really, there are general aspects and there are specific aspects, and the specific aspects are the risks of the individual who's claiming that he has a heart attack: age, sex, family history, prior medical use, and so forth and so on. So I see that as a relevant issue.

(Oct. 12, 2006 *Mason v. Merck* Tr. at 11:15-12:2.)  Merck requests that the Court follow its ruling in *Mason* and prior cases admit all evidence relating to plaintiff's extensive family history of cardiovascular disease and diabetes.

> **H.     "Any comment, evidence, testimony, inference or document mentioning any non-criminal bad conduct of Plaintiff. Misdemeanors and human frailties should not become 'fair game' during trial. Federal and state rules of evidence prohibit such character assassination. Such testimony is improper under Fed. R. Evid. 610. See Hudson v. United States, 387 F.2d 331 (5th Cir. 1967)."**

Merck's Response:  The vagueness of paragraph H prevents a precise response.  To the extent that plaintiff seeks to exclude evidence of conduct or misdemeanors involving dishonesty or relating to plaintiff's risk factors, Merck hereby incorporates by reference its Opposition To Plaintiff's Motion *In Limine* No. 1, filed in *Dedrick v. Merck* on Oct. 27, 2006 (Record Docket No. 8352).  Because this opposition was filed under seal, Merck will not reiterate its arguments here.

> **I.     "Any reference, comment, or disclosure, whether directly or indirectly, in any manner, that Plaintiff's medical bills were and will be paid in the future for or covered by TennCare, Plaintiff's health insurer. Such evidence is entirely immaterial to any issue in this case and any mentioning or inference thereof, directly or indirectly, in any manner, will be harmful and unjustly prejudicial to the Plaintiff. See *Fye v. Kennedy*, 991 S.W.2d 754,763 (Tenn. App. 1998) ('[T]the fact that the plaintiff has received payments from a collateral source, other than the defendant, is not admissible in evidence and does not reduce or mitigate the defendant's liability.')."**

Merck's Response:  Merck is willing to agree to make no comment about plaintiff's liability insurance if plaintiff will agree to refrain from making any comment about Merck's

7

837911v.1

liability insurance. To the extent plaintiff's request encompasses more than just evidence of insurance, Merck opposes this request.

> J. "Any comment, inference, evidence, testimony, or document tending to suggest in any way that an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law. See generally *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 (1993)."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

> K. "Any mention of the purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases."

Merck's Response: Merck does not intend to offer evidence or make any argument in the compensatory damages phase of trial on this topic. If there is a punitive damages phase of trial, Merck reserves the right to address this topic at that time.

> L. "Any comment or inference that Plaintiff's attorneys and their law firm primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation. See *Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157-58 (5th Cir. 1993)."

Merck's Response: Merck is willing to agree to make no comment about the subject matter of paragraph L if plaintiff will agree to refrain, to the same extent, from making any comment about Merck's defense counsel.

> M. "Any comment, inference, or personal anecdote from any Merck witness or lawyer that they or their family members used Vioxx. See *U.S. v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979)."

Merck's Response: Plaintiff has filed a separate motion *in limine* on this very topic. Merck respectfully requests that the Court deny this motion for the reasons set forth in its concurrently filed Opposition to Plaintiff's Motion to Preclude Testimony By Merck's Employees Regarding Their Personal Use of Vioxx (Motion *In Limine* No. 5).

N. **"Any comment, evidence, testimony, inference or document mentioning, suggesting or inferring that Vioxx was taken off the market due to 'media hype' caused by attorneys or the media."**

Merck's Response:  Merck does not intend to offer evidence or make any argument on this topic.

O. **"Any comment, evidence, testimony, inference or document that preemptively bolsters the unchallenged character (e.g., honest) or traits (e.g., generous) of Merck's current or former employees, managers, consultants, experts, agents, or fiduciaries."**

Merck's Response:  Merck's position on this request depends on whether plaintiff is permitted to introduce evidence purportedly showing the "bad character" of Merck. Evidence of allegedly "bad acts" or generalized "bad character" is irrelevant and/or inadmissible on a number of grounds.  As a general matter, Merck does not intend to offer evidence of its good character or that of its employees "preemptively."  However, Merck does plan to offer general background information about its witnesses, and should plaintiff claim that Merck or its employees committed bad acts or acted dishonestly, Merck would plainly be entitled to rebut such evidence.

Merck also opposes this request to the extent that plaintiff is seeking an order excluding evidence of the basic nature of Merck's business, for the reasons and to the extent set forth in its concurrently filed Opposition To Plaintiff's Motion *In Limine* To Exclude Evidence Or Discussion Concerning Defendant's Reputation And/Or "Good Acts" (Motion *In Limine* No. 4).

P. **"Any comment or reference to the medical conditions of Plaintiff's family members that are unrelated to the to [sic] the injuries in this case. Plaintiff specifically refers to the following: 1) Plaintiff's brother Kenny Dedrick's heart attack, heart disease, and smoking; and 2) Plaintiff's brother Phil Dedrick's heart disease and smoking."**

Merck's Response:  Merck hereby incorporates by reference its response to Paragraph G above and requests that the Court follow its decision in *Mason* and deny this motion.

> Q. "Any reference to Plaintiff's non-criminal bad conduct. Plaintiff anticipates that Merck will [sic] Plaintiff regarding the following subjects: 1) use of Viagra; and 2) use of alcohol."

Merck's Response:

   1. *Viagra use.*

Merck does not consider plaintiff's use of Viagra to be "bad conduct." However, Mr. Dedrick's Viagra use would be relevant to his heart problems if it predated his Vioxx use because erectile dysfunction is a marker of cardiovascular disease. (*See* Sept. 20, 2006 Deposition of Michael Rothkopf, M.D. at 146:18-147:12, attached hereto as Ex. B.) The timing of when Mr. Dedrick took Viagra is unclear at this time.[1] To the extent that there is evidence that Mr. Dedrick used Viagra prior to his heart attack, this is relevant to causation and should not be excluded.

   2. *Alcohol use.*

Merck hereby incorporates by reference its Opposition To Plaintiff's Motion *In Limine* No. 1, filed in *Dedrick v. Merck* on Oct. 27, 2006 (Record Docket No. 8352). Because this opposition was filed under seal, Merck will not reiterate its arguments about the relevance of plaintiff's alcohol use to his cardiovascular disease. (*See id.* at p. 8-10.)

> R. "Any comment or reference to opinions of healthcare personnel who are not witnesses at trial, either in person or by deposition."

Merck's Response: Merck opposes this motion to the extent that it seeks to exclude evidence of journal articles or other publications. Merck further opposes this motion to the extent Merck seeks to introduce evidence under Federal Rule of Evidence 803(4), an exception to the hearsay rule, for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or

---

[1] Mr. Dedrick cannot recall whether he took Vioxx or Levitra before or after his heart attack. (Dedrick Depo. at 121:16-122:1.)

general character of the cause or external source thereof[,]" or under any other appropriate basis for admitting such evidence.  FED. R. EVID. 803(4).  Such statements should be permitted by the Court.

    **S.**    **"Any reference, comment or evidence that any members of the public or medical community desire that Vioxx be placed back on the market."**

Merck's Response:  The Court should deny this request.  Evidence that people today want to take Vioxx even after all of the publicity that the withdrawal of Vioxx from the market has received (and that the litigation has received) is relevant to assessing the credibility of plaintiff's claim.  When assessing plaintiff's contention that he would not have taken Vioxx, the jury should not be kept in the dark about the fact that many people today would take the drug if permitted and that the FDA has conducted discussions or made recommendations that Vioxx be put back on the market.

    **T.**    **"Any comment, evidence, testimony, inference or document inferring that state product liability defect and/or failure-to-warn laws pressure drug manufacturers to add unsubstantiated, false, or invalid warnings to their labels in order to avoid lawsuits."**

Merck's Response:  Merck agrees that it would be inappropriate to mention any of the matters described in paragraph T *unless* the Court allows plaintiff to argue that Merck's warnings for Vioxx were inadequate because Merck did not add a "black box" warning or make other label changes not approved by the FDA.  In that case, Merck should be free to rebut plaintiff's allegations.

    **U.**    **"Any comment, evidence, testimony, inference or document mentioning that state tort law undercuts the U.S. Food and Drug Administration's (FDA) mission to require drug manufacturers to include only scientifically valid warnings on drug labels."**

Merck's Response:  Merck agrees that that it would be inappropriate to mention any of the matters described in paragraph U *unless* the Court allows plaintiff to argue that Merck

committed fraud on or misled the FDA. In that case, Merck should be free to rebut plaintiff's allegations.

> V. "Any comment, evidence, testimony, inference or document mentioning that too many warnings of serious injuries will dilute the effectiveness of warnings generally."

Merck's Response: The Court should deny this request. Evidence of this nature is relevant to the adequacy of the warnings given about Vioxx and to the reasonableness of Merck's conduct. Merck is prepared to offer expert testimony at trial that the FDA does not want the effectiveness of warnings in general diluted by too many warnings of every alleged risk associated with a drug.

> W. "Any comment, evidence, testimony, inference or document mentioning that state products liability law frustrates the FDA's protective regime."

Merck's Response: Merck agrees that that it would be inappropriate to mention any of the matters described in paragraph W *unless* the Court allows plaintiff to argue that Merck committed fraud on or misled the FDA. In that case, Merck should be free to rebut plaintiff's allegations.

> X. "Any reference, comment, or inference that FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law."

Merck's Response: The Court should deny this request. Under Tennessee law, if a product's design complied with federal or state statute or administrative regulations that existed at the time it was manufactured, there is a rebuttable presumption in favor of the defendant with respect to that product. TENN. CODE ANN. § 29-28-104. Therefore, Merck is entitled to explain to the jury that Vioxx was approved by the FDA. Whether or not that fact, along with other facts presented by Merck at trial, convinces the jury that Merck "met its standard of care and/or fulfilled its duty to warn" is a question that will ultimately be answered by the jury. An order

837911v.1

limiting the arguments that *might* be made at trial (especially since such arguments might be made in concert with other arguments) is untimely because it requires context. It would be inappropriate at this early stage to limit, by motion *in limine*, the arguments that Merck might make based on this overbroad request by plaintiff.

Y.   "Any reference, comment, or inference to settlement negotiations or the lack thereof."

Merck's Response:  Merck does not intend to offer evidence or make any argument on this topic.

### III. CONCLUSION.

For the reasons stated above, the Court should deny the following of plaintiff's requests, at least in part: G, H, M, O, P, Q, R, S, T, U, V, W, and X.

Dated:  November 3, 2006                                   Respectfully submitted,


/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin

13

Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

14

837911v.1

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Opposition of Motion of Merck & Co., Inc. ("Merck") To Plaintiff's Motion *In Limine* To Exclude Certain Subjects Evidence From Trial has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of November, 2006.

                                                  */s/ Dorothy H. Wimberly*
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, Louisiana  70130
                                                  Phone:  504-581-3200
                                                  Fax:     504-581-3361
                                                  dwimberly@stonepigman.com

                                                  Defendants' Liaison Counsel