UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | * | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S
MOTION TO PRECLUDE TESTIMONY BY MERCK EMPLOYEES
REGARDING THEIR PERSONAL USE OF VIOXX**

**(PLAINTIFF'S MOTION *IN LIMINE* NO. 5)**

Merck urges the Court to reserve ruling on this motion until trial.  Experience has shown that the Court's rulings on the admissibility of evidence that Merck employees or their family members took Vioxx® very much depends upon context.  The Court may be more likely to admit this evidence if the plaintiff attacks the motives or credibility of Merck and its employees.  For example, if plaintiff tries to show that, despite their testimony to the contrary, Merck's employees are uncaring individuals who believed Vioxx was dangerous but hid that information

1

in order to increase corporate profits, the Court may conclude – as it has in the past – that the evidence should be admitted on the issues of credibility and motive.

Contrary to plaintiff's claims, evidence that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market is neither irrelevant nor unfairly prejudicial. It bears directly on plaintiff's failure to warn claim, because the very individuals who plaintiff contends knew of the cardiovascular risks allegedly associated with Vioxx either personally took Vioxx or permitted their family members to take it. The jury may logically conclude that, had these witnesses – and through them Merck itself – believed Vioxx to be as dangerous as plaintiff claims it is, they would not have taken it or allowed their family members to do so. The evidence bears equally on plaintiff's contention that, had Mr. Dedrick known what these witnesses allegedly knew, he would not have taken Vioxx and his physicians would not have prescribed it to him. It is "prejudicial" only to the extent that it is powerful evidence, as plaintiff essentially concedes.

Indeed, if the Court excludes this testimony, it is Merck who will suffer unfair prejudice. If history is any guide, plaintiff's experts will offer testimony that Merck's scientists allegedly knew that Vioxx was harmful at any dose and any duration but hid this information from the public. Merck is entitled to defend itself by presenting evidence to the jury that in fact, Merck's scientists used Vioxx themselves, which tends to disprove plaintiff's allegation of this alleged knowledge and counter plaintiff's attack on the character of Merck's employees.

To the extent the Court is not inclined to allow this testimony without restriction, it should still abide by its prior rulings allowing such testimony where the credibility of Merck's witnesses is attacked. As the Court has explained, when plaintiffs "attack [a] person and say that they're a liar," as plaintiff did with Dr. Reicin in *Plunkett v. Merck*, then evidence of personal

use has "some relevance to credibility." (Feb. 3, 2006 *Plunkett v. Merck* Tr. at 9:12-24; *see also id.* at 9:4-9 ("Phil, for example, brought up the issue about the person [Dr. Reicin] taking Vioxx. I can see where at this point that might have some relevance because of the attack on her credibility that's going to be launched with the article . . . . My thinking on that is that I would let her do that now because it does go to the credibility.").) Similarly, the Court allowed Dr. Reicin to testify about her personal use in *Smith* after plaintiff's counsel attempted to portray her during cross examination as akin to Hannibal Lecter. (9/21/06 *Smith v. Merck* Tr. at 2507:11-12.) Plaintiff's motion is thus premature at best, given the strong possibility that counsel will question the credibility of Merck's witnesses again at this trial. The Court should deny or reserve ruling on the motion.

### I. EVIDENCE THAT MERCK WITNESSES TOOK VIOXX OR ALLOWED THEIR FAMILY MEMBERS TO DO SO IS RELEVANT.

The Court has previously concluded that testimony by Merck witnesses that they or their family members took Vioxx is relevant, and rightly so. Plaintiff's argument to the contrary is incorrect.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to a determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Testimony that Merck scientists and executives, who were intimately aware of Vioxx's safety profile, themselves took Vioxx or allowed their family members to do so unquestionably bears on the issue of what those witnesses knew about the risks associated with taking Vioxx.[1] It therefore satisfies the requirements of

---

[1] The key players involved in developing, testing, and marketing Vioxx are the very witnesses who may testify that they or their family members took Vioxx. They include Raymond Gilmartin, the former CEO of Merck; Edward Scolnick, the former chief scientist at Merck and head of its research laboratories; Peter Kim, the present head of the Merck research laboratories;
(*footnote continued next page*)

Rule 401. As a matter of basic fairness, Merck must be permitted to offer this evidence in order to defend itself against plaintiff's contention that Merck knew of cardiovascular risks but failed to provide an adequate warning of those risks.

Plaintiff's only counterargument is that testimony from Merck employees that they took Vioxx neither proves or disproves that Vioxx is unreasonably dangerous because these individuals "had considerably more information about the safety profile of the drug" and "would have had opportunity to perform a different risk-benefit analysis prior to taking the drug than the rest of the public." (Pl.'s Mot. at 3.) Plaintiff speculates:

> Merck employees may have taken and allowed their relatives to take Vioxx knowing its dangerous condition for numerous reasons – it was taken in addition to a blood thinning agent (something a physician without knowledge of the drug's prothrombotic effect would not have known to add to a patient's therapy), the risk in the case of extreme pain was outweighed by the benefit, or the family member was just a risk taker.

(*Id.* at 6.) These arguments are frivolous, entirely disingenuous, and should be rejected out of hand. Plaintiff suggests that the fact that these witnesses allegedly knew of the cardiovascular risks of Vioxx shows that "Merck" was aware of those risks. At the same time, however, plaintiff contends that the fact that those witnesses either personally used or permitted their family members to use Vioxx is irrelevant because their knowledge cannot be imputed to Merck. Plaintiff cannot have it both ways. Unless he is willing to stipulate that he will not accuse these witnesses at trial of having knowledge of Vioxx's cardiovascular risks, plaintiff cannot

---

David Anstice, the head of marketing and United States sales at Merck; Alise Reicin, a senior Merck scientist and physician extensively involved in the development and testing of Vioxx; Alan Nies, a former senior scientist at Merck who was the head of the Vioxx development program; Louis Sherwood, a physician and Senior Vice-President of Medical and Scientific Affairs at Merck; and Nancy Santanello, the head of epidemiology at Merck. If it becomes necessary to do so at trial, Merck will make offers of proof concerning the personal use of Vioxx by these individuals.

persuasively argue that evidence of these witnesses' personal or family use of Vioxx is irrelevant to the issue of Merck's knowledge.

Even if plaintiff was willing to stipulate to that effect, this evidence would still be admissible as it is also highly relevant to the issue of warning causation – specifically, in assessing the credibility of plaintiff's contention that he would not have taken Vioxx but for Merck's failure to warn adequately of cardiovascular risks that it knew about.  The jury should not be kept in the dark about the fact that Merck employees who were extremely knowledgeable about Vioxx were taking the drug.  If they hear this evidence, the jury might well question the contention that Mr. Dedrick would have never taken Vioxx, had he or his physicians only known what these witnesses allegedly knew.

II.  **EVIDENCE THAT MERCK EMPLOYEES AND THEIR FAMILY MEMBERS TOOK VIOXX IS NOT UNFAIRLY PREJUDICIAL AND SHOULD NOT BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403.**

Plaintiff's fallback position is that this evidence is unfairly prejudicial and thus should be excluded under Federal Rule of Evidence 403.  As plaintiff's brief put it, this evidence "could mislead a jury into believing that Vioxx was safe and effective, since, as Merck will undoubtedly argue, *no witness would have allowed his or her relative to take a drug that was known to be dangerous*."  (Pl.'s Mot. at 6 (emphasis added).)  Far from demonstrating any unfairly prejudicial aspect of this evidence, this statement simply confirms the common-sense notion that this evidence *is* probative in assessing the witnesses' knowledge.  Indeed, to the extent that plaintiff means the jury might fully credit the testimony and therefore conclude that a particular witness believed that Vioxx was safe and effective, that is precisely why the evidence is relevant, and

5

thus admissible.  That is not unfair prejudice; it is just good evidence.[2]

### III.  CONCLUSION.

For the reasons stated above, Merck respectfully requests that the Court either reserve ruling on or deny Plaintiff's Motion *in Limine* to Preclude Testimony by Merck Employees Regarding Their Personal Use of Vioxx.

| | |
|---|---|
| Dated:  November 3, 2006 | Respectfully submitted, |
| | |
| | */s/ Dorothy H. Wimberly* |
| | Phillip A. Wittmann, 13625 |
| | Dorothy H. Wimberly, 18509 |
| | STONE PIGMAN WALTHER WITTMANN L.L.C. |
| | 546 Carondelet Street |
| | New Orleans, Louisiana  70130 |
| | Phone:  504-581-3200 |
| | Fax:     504-581-3361 |
| | |
| | Defendants' Liaison Counsel |
| | |
| | Philip S. Beck |
| | Mark Ouweleen |
| | Carrie Jablonski |
| | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP |
| | 54 West Hubbard Street, Suite 300 |
| | Chicago, Illinois  60610 |
| | Phone:  312-494-4400 |
| | Fax:     312-494-4440 |
| | |
| | Douglas Marvin |
| | Elaine Horn |
| | WILLIAMS & CONNOLLY LLP |
| | 725 Twelfth Street, N.W. |
| | Washington, D.C.  20005 |
| | Phone:  202-434-5000 |
| | Fax:     202-434-5029 |

---

[2] Plaintiff notes that Judge Higbee excluded this evidence during the *Humeston v. Merck* trial. (Pl.'s Mot. at 5.)  With respect, Merck believes that Judge Higbee's ruling was in error.

And

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

837951v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition of Merck & Co., Inc. ("Merck") to Plaintiff's Motion to Preclude Testimony By Merck's Employees Regarding Their Personal Use of Vioxx has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Andy Birchfield by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of November, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

837951v.1