UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| GERALD D. BARNETT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO PLAINTIFF'S MOTION TO EXCLUDE THE OPINION TESTIMONY OF NICHOLAS FLAVAHAN, PH.D.**

Merck has designated Nicholas Flavahan, Ph.D., a vascular biologist and pharmacologist, to provide his expert opinion concerning the pharmacological effects of COX-2 inhibitors, particularly Vioxx, on the blood vessel wall and endothelium of human beings.  (*See* Expert Report of Nicholas Flavahan ("Flavahan Rpt.") at 1, attached hereto as Ex. A; Deposition of Nicholas Flavahan ("Flavahan Dep.") at 27:17-20, 47:8-20, 57:16-21, attached hereto as Ex. B.)  Mr. Barnett, the plaintiff, asks the Court to preclude Dr. Flavahan from offering any expert opinion in this case.  Plaintiff's motion is baseless.

Plaintiff purports to challenge Dr. Flavahan's qualifications to offer his opinions concerning the subject for which Merck has designated him – the pharmacological effects of COX-2 inhibitors. In making this argument, however, plaintiff cites only Dr. Flavahan's testimony concerning a distinct subject: clinical trials of Vioxx and cardiovascular events in those trials. If plaintiff's motion were intended to exclude Dr. Flavahan's opinion on these clinical trials it might be well taken, but it is not. Moreover, plaintiff wholly ignores that Dr. Flavahan's testimony and record of experience establish not only his expertise in the pharmacology of COX-2 inhibitors but also his well-founded methodology in support of his opinions. The Court should deny plaintiff's motion in its entirety.

## I. LEGAL STANDARD.

A party must establish that its expert witness has an adequate level of expertise in the subject matter on which he or she will testify. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). The expert's opinion must be supported by a reasonable scientific basis. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The Supreme Court has identified several non-exclusive factors in evaluating an expert's testimony, including whether the bases of the expert's opinion have been subject to peer review and publication and the degree of acceptance in the scientific community of the expert's opinion. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Whether the expert is qualified to opine on separate matters, even if related matters, is entirely irrelevant if the expert is not offering an opinion on those matters.

## II. PLAINTIFF FAILS TO IDENTIFY ANY SHORTCOMINGS IN DR. FLAVAHAN'S RELEVANT EXPERTISE OR METHODOLOGY.

Dr. Flavahan offers his opinion on the pharmacology of COX-2 inhibitors – a subject at the heart of plaintiff's theory of general causation. Plaintiff's motion fails to identify any

M006E32341

shortcoming in Dr. Flavahan's qualifications to testify on this subject or in his methods.

Plaintiff has the burden in this case to identify and provide reliable evidence of the biological mechanism by which Vioxx supposedly could have caused his alleged heart attack. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) (excluding expert testimony where plaintiffs' experts have not "offered a reliable explanation of the physiological process by which Metabolife causes heart attacks and ischemic strokes, *i.e.*, establish general causation"); *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) ("The underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur."). To that end, plaintiff must prove general causation by establishing a scientifically reasonable biological mechanism explaining how Vioxx could have caused his cardiovascular injuries.

Mr. Barnett's theory for the biological mechanism by which Vioxx is supposedly capable of causing heart attacks is derived from the "FitzGerald hypothesis." According to this hypothesis, Vioxx suppresses the production of prostacyclin relative to thromboxane and thereby leads to an "imbalance." Based on the reports and deposition testimony of plaintiff's experts, Merck expects plaintiff to attempt to show that by supposedly causing this imbalance Vioxx is capable of causing heart attacks by accelerating atherosclerosis – *i.e.*, the build-up of coronary artery plaque – and/or placing the body in a "pro-thrombotic state."

Dr. Flavahan's opinion directly addresses plaintiff's theory of biological mechanism. His report details his opinions on how a COX-2 inhibitor such as Vioxx interacts with the blood vessel walls, the flaws of the "imbalance theory," and the relationship of COX, and COX-2 inhibitors, to atherosclerosis. (*See, e.g.*, Flavahan Rpt. at 12-17.) Merck has designated Dr.

3

Flavahan to testify on these pharmacological issues, a subject matter independent of the clinical trials of Vioxx. Whether Dr. Flavahan is qualified to testify about the latter is irrelevant to his expertise in the former. As Dr. Flavahan explained, "[T]he randomized clinical trials were not getting at mechanism. Now, I have not analyzed the results of the clinical trials. It's not what I do. That – my role in these proceedings is to look at the mechanisms of COX activity within the blood vessel wall . . . ." (Flavahan Dep. at 58:2-8.)

The testimony plaintiff cites concerns only the clinical trials of Vioxx, and thus is irrelevant to Dr. Flavahan's expert opinion on the subject of pharmacology. When plaintiff pressed Dr. Flavahan on the issue of clinical trials, Dr. Flavahan made the distinction clear:

> [M]y participation in these events is actually to look at mechanisms, pharmacological action of Vioxx, the role of COX-2 within the blood vessel wall. So I – I have the ability to discuss what may be happening in the blood vessel wall with regard to atherosclerosis. *I am not involved in the design or assessment or analysis of clinical trials. And so I will not be discussing the clinical trials. But I will be discussing the action of these agents in the blood vessel wall and the role of COX-2 in the blood vessel wall.*

(Flavahan Dep. at 47:10-20 (emphasis added).) Yet, plaintiff continued asking about clinical trials:

> Q: My question was: Do you deny that there were statistically significant excess of CV events including MIs in randomized clinical trials involving Vioxx, including VIGOR and APPROVe?
>
> A: As I said, I'm not here to discuss the results or interpretation of clinical trials.

(Flavahan Dep. at 48:9-14.) If anything, Dr. Flavahan deserves credit for resisting plaintiff's efforts to solicit his opinion on matters for which he was not designated. Since Merck offers Dr. Flavahan as an expert witness on the subject of pharmacology, and he repeatedly confirms he will not be offering any opinion based on clinical trials of Vioxx, the testimony plaintiff has cited cannot be the basis for precluding Dr. Flavahan's expert testimony.

816469v.1
M006E32343

## III. DR. FLAVAHAN IS QUALIFIED TO OFFER OPINION TESTIMONY CONCERNING ISSUES OF PHARMACOLOGY RELATED TO VIOXX.

Dr. Flavahan's expert report and deposition testimony confirm his expertise in the only subject matter for which Merck offers his opinion – the pharmacological impact of COX-2 inhibitors. Plaintiff ignores Dr. Flavahan's ample credentials. He is a Professor of Internal Medicine at The Ohio State University, and has a Ph.D. in Cardiovascular Physiology and Pharmacology. (Flavahan Rpt. at 1.) Dr. Flavahan's primary research interest is mechanisms that regulate the blood vessel wall, both during healthy conditions and during vascular disease. (Flavahan Dep. at 10:13-18.) He has conducted research on the cardiovascular system for over 25 years, and has published over 100 peer-reviewed manuscripts, including investigations of the role of cyclooxygenase (COX) in regulating endothelial and vascular smooth muscle function, the interaction between aggregating platelets and the blood vessel wall, the interaction between endothelium and prostacyclin, and the mechanisms contributing to atherosclerotic disease. (Flavahan Rpt. at 1-2 and *Curriculum Vitae* at 13-22.)[1] Dr. Flavahan has lectured on vascular biology many times, and is acting as Session Chair and Keynote Speaker at the 11th International

---

[1] For example: **M-107** Zhou Y, Mitra S, Varadharaj S, Parinandi N, Zweier JL and Flavahan, NA (2006), *Increased expression of cycloooxygenase-2 mediates enhanced contraction to endothelin ETA receptro stimulation in endothelial nitric oxide synthase knockout mice*, CIRCULATION RESEARCH, April 27 [Epub ahead of print]; **M-102** Baily SR, Mitra S, Flavahan S and Flavahan NA (2005), *Reactive oxygen species from smooth muscle mitochondria initiate cold-induced constriction of cutaneous arteries,* AM J PHYSIOL HEART CIRC PHYSIOL, 289(1):H243-50 [Epub March 11, 2005]; **M-98** Wilgus TA, Bergdall VK, Tober KL, Hill KJ, Mitra S, Flavahan NA and Tatiana M. Oberyszyn (2004), *The impact of cyclooxygenase-2 mediated inflammation on scarless fetal wound healing*, AM J PATHOL, 165:753-761; **M-81** Yoshida K, Flavahan NA, Smedira NG and Murray PA (1999), *Endothelial defect mediates attenuated vasorelaxant response to isoproterenol after lung transplantation*, AM J PHYSIOL, 276:H159-66; **M-75** Gambone L, Murray P and Flavahan NA (1997) *Synergistic interaction between endothelium-derived NO and prostacyclin in pulmonary artery: potential role for KATP channels*, BR. J. PHARMACOL., 121:271-279; **M-67** Flavahan NA and Vahnhoutte PM (1995), *Endothelial cell signaling and endothelial dysfunction*, AM J HYPERTENS 8:28S-41S.

5

M006E32344

Vascular Neuroeffector Mechanisms and Cardiovascular Pharmacology and Medicine Symposium in Suzhou, China, on June 27-30, 2006. (Flavahan Rpt., *Curriculum Vitae* at 11.)

Dr. Flavahan's impressive experience in the mechanisms that regulate the vascular system and the effects of agents on those mechanisms is a more than sufficient basis for him to offer his opinions: COX-2 inhibitors do not accelerate the atherothrombotic process to cause atherosclerosis (Flavahan Rpt. at 17) and the "imbalance theory" relied on by plaintiffs is not supported by either plausible evidence (*id.* at 7-8) or by what is known about human pharmacological biology (*id.* at 12). Rather than acknowledge Dr. Flavahan's expertise, plaintiff makes misleading assertions about Dr. Flavahan's experience and claims that Dr. Flavahan has not performed clinical research "on Vioxx, or COX-2 inhibitors generally." (Pl.'s Mot. at 6.) Dr. Flavahan testified, however, that he *has used* COX inhibitors in his published research. (Flavahan Dep. at 252:15-16.)

Notably, plaintiff does not challenge whether Dr. Flavahan's opinions are supported by tested, peer-reviewed research that is generally accepted in the scientific community. *See Daubert*, 509 U.S. 593-94. Plaintiff could not make such a challenge in good faith. After all, Dr. Flavahan's expert report is rife with citations to his 153 references concerning the pharmacology of COX-2 inhibitors – including their effects on prostacyclin and thromboxane formation, possible relationship to atherosclerosis, and other impact on human blood vessels and endothelium. (Flavahan Rpt. at 20-33.) In other words, Dr. Flavahan's references, like his own publications, concern the effects of agents on the vascular system – the biological mechanisms plaintiff relies on to explain his theory of general causation. These references are comprised of peer-reviewed publications, many of which are leading publications in the scientific community.

816469v.1

M006E32345

The only opinion offered by Dr. Flavahan at his deposition that plaintiff actually discusses in his motion is his reference in his report to the fact that some Nonsteroidal Anti-inflammatory Drugs ("NSAIDs"), such as naproxen and indobufen, have been "observed" to inhibit platelet COX-1 and are "thought to confer an aspirin-like cardioprotective effect." (Flavahan Rpt. at 3, Flavahan Dep. at 81:7-82:8.) Plaintiff's "challenge" to this opinion consists solely of making much of Dr. Flavahan's inability to instantly recall every study on which he relied in forming that opinion. That Dr. Flavahan could not remember, off the top of his head, the seven separate references he cites in his report on this point cannot be the basis for excluding his opinion, especially given the specifics of the exchange:

> Q: Is the – there any study, other than – than the Van Hecken study, that attempts to measure the platelet-derived thromboxane inhibition by Naproxen?
>
> A: Yeah, there's a few there. We can go through the references, if you want me to find them.

(Flavahan Dep. at 82:9-14.) Plaintiff never took Dr. Flavahan up on the offer to walk plaintiff through his references.

Dr. Flavahan is well qualified to testify on the impact of COX-2 inhibitors on blood vessels, pharmacological balance, and the relationship – or lack thereof – of these factors with vascular disease, including atherosclerosis. His expert testimony is not only scientifically reliable, it is precisely relevant to the theory of biological mechanism on which plaintiff's general causation argument rests.

## IV. CONCLUSION.

Plaintiff's motion purports to challenge Dr. Flavahan's qualifications to testify on the pharmacology of Vioxx, yet it completely fails to support this claim with any relevant testimony or lack of credentials. Moreover, Dr. Flavahan's deposition testimony and expert report clearly

7

M006E32346

establish him as qualified to testify on the subjects identified in his expert report and deposition. Accordingly, Merck respectfully requests that the Court deny plaintiff's motion in its entirety.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
Phone: 312-494-4400
Fax: 312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax: 202-434-5029

And

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Attorneys for Merck & Co., Inc.

816469v.1

M006E32347

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition of Merck to Plaintiff's Motion to Exclude the Opinion Testimony of Nicholas Flavahan, Ph.D. has been served on Liaison Counsel Russ Herman by U.S. Mail and e-mail or by hand delivery and e-mail, upon plaintiff's counsel Mark Robinson by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 26th day of June, 2006.

/s/ Dorothy H. Wimberly