## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROGER GLEASON and**<br>**DIANE GLEASON,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**MERCK & CO., INC., and G. D.**<br>**SEARLE, LLC. (hereinafter**<br>**"Searle") a subsidiary of**<br>**PHARMACIA CORPORATION,**<br>**(hereinafter "Pharmacia"), a Foreign**<br>**Corporation; MONSANTO**<br>**COMPANY,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    In Re:  MDL-1657<br>   Vioxx Products Liability Litigation<br><br>   Case No. 2:05-cv-06128 |

## FIRST AMENDED COMPLAINT

### PARTIES

1.     Plaintiffs Roger Gleason ("Mr. Gleason") and Diane Gleason ("Mrs. Gleason) are

of legal age and residents of Wheaton, DuPage County, Illinois.

2.     Defendant Merck & Co., Inc. ("Merck") is an American pharmaceutical company

incorporated under the laws of the State of New Jersey with its principal place of business in

New Jersey.  Defendant is in the business of profiting from the design, manufacture, marketing,

distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib), including

engaging in business in the State of Illinois and this judicial district.

3.     Defendant G. D. Searle LLC. (hereinafter "Searle") is a subsidiary of Pharmacia,

Corporation and is upon information, knowledge and belief an Illinois Corporation.  At all times

1



relevant hereto, Searle was a subsidiary of Pharmacia Corporation (hereinafter "Pharmacia") and at all times relevant to this action Pharmacia was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (hereinafter "Celebrex").

4.   Defendant Pharmacia is a Delaware Corporation licensed and registered to do business in Illinois.

5.   Defendant Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia and is a Delaware Corporation.  At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex.  Defendant Monsanto is licensed and registered to do business in Illinois.

## JURISDICTION

8.   Complete diversity of citizenship exists in this case as the Plaintiff is an Illinois resident citizen and Defendants are residents of New Jersey and Delaware.

9.   The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.   Mr. Gleason was prescribed Vioxx and Celebrex in the State of Illinois by one or more doctors practicing in DuPage County, Illinois, and Vioxx and Celebrex was sold or otherwise provided to the plaintiff in the State of Illinois by one or more Illinois pharmacies and health care providers.  This action is brought on behalf of Mr. Gleason who was prescribed and used Vioxx and Celebrex.  This action seeks monetary damages for injuries and damages caused by Vioxx and Celebrex, including, but not limited to Plaintiff's stroke.

2

## FACTUAL ALLEGATIONS

11.     The Food and Drug Administration approved Vioxx on May 20, 1999 for the

treatment of dysmenorrhea (painful menstrual cramps), management of acute pain in adults, and

for relief of the signs and symptoms of osteoarthritis.  Subsequent to FDA approval, Vioxx was

widely advertised and marketed by all named Defendants as a safe and effective pain relief

medication.

12.     Celebrex is a pharmaceutical treatment for musculoskeletal joint pain associated

with osteoarthritis, among other maladies.  Defendants Searle, Pharmacia, Monsanto and Pfizer

manufacture, design, package, market and distribute this drug.  Defendants Searle, Pharmacia

and Pfizer (hereinafter "Celebrex") encouraged the use of this drug in improper customers,

misrepresented the safety and effectiveness of this drug and concealed or understated its

dangerous side effects.  These Defendants aggressively marketed this drug directly to the

consuming public, although only available through prescription, through the use of various

marketing mediums, including, but not limited to, print and television advertisements.  These

Defendants did this to increase sales and profits.

13.     Mr. Gleason began taking Vioxx as prescribed by his physicians in January of

2001, and continued taking Vioxx as prescribed by his physicians through approximately March

of 2003.  In approximately July of 2001 and again in April of 2002, Plaintiff suffered Vioxx-

induced transient ischemic attacks and/or strokes that have caused Plaintiff to suffer serious

mental, physical, and emotional injury as well as economic damage.

14.     Mr. Gleason began taking Celebrex as prescribed prior to and until January 25,

3

2001.

15.     In July of 2001 and again in April of 2002, Plaintiff suffered a COX-2 induced transient ischemic attacks and/or strokes that has caused Plaintiff to suffer serious mental, physical, and emotional injury as well as economic damage.

16.     According to Merck, more than 52 million prescriptions have been written for Vioxx since 1999.  Vioxx generated sales of 2.6 billion dollars in 2001 in an anti-arthritic market that generated a total sale of 5.5 billion dollars for that same year.

17.     Vioxx and Celebrex are members of a class of drugs known as "NSAIDs" (non-steroidal anti-inflammatory drug), but more specifically contains cyclooxygenase 2 ("COX-2") inhibitory properties.  Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, of which there are two known types ("COX-1" and "COX-2").  Vioxx and Celebrex are generally different than NSAIDs in that they are solely COX-2 inhibitors, the rationale being that if the COX-1 enzyme is unaltered, the patient will experience fewer gastrointestinal complications commonly associated with NSAIDs.  Further, the inhibition of COX-2 enzymes is said to decrease pain and inflammation.

18.     After Vioxx was approved and made available to the public, Merck sponsored the VIGOR study to obtain information regarding clinically meaningful gastrointestinal events and to develop a large controlled database for overall safety assessment.[1]  At the conclusion of the VIGOR study, it was reported that serious cardiovascular events occurred in 101 patients who took Vioxx, compared to 46 patients who took naproxen (a type of over-the-counter NSAID).  Additionally, myocardial infarctions ("MI") occurred in 20 patients in the Vioxx treatment group

---

[1]     "VIGOR" stands for Vioxx Gastrointestinal Outcomes Research.

4

as opposed to only four patients in the naproxen treatment group.

19.    In addition to the aforementioned, Vioxx has been linked to several severe and life threatening medical disorders including, but not limited to edema, changes in blood pressure, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications, meningitis and death. These known material risks were not disclosed to or shared with Plaintiff by any Defendant.

20.    Merck's strategy beginning in the 1990's has been to aggressively market and sell their products by falsely misleading potential users about the products and by failing to protect users from serious dangers which Defendant knew or should have know to result from use of these products.

21.    Merck widely and successfully marketed Vioxx in the United States by undertaking an advertising blitz extolling the virtues of Vioxx in order to induce widespread use of the products. The marketing campaign consisted of advertisements, telephonic conferences, live conferences, promotional literature to be placed in the offices of doctors and other healthcare providers, and other promotional materials provided to potential Vioxx users.

22.    The Celebrex Defendants widely and successfully marketed Celebrex in the United States by undertaking an advertising blitz extolling the virtues of Celebrex in order to induce widespread use of the products. The marketing campaign consisted of advertisements, telephonic conferences, live conferences, promotional literature to be placed in the offices of doctors and other healthcare providers, and other promotional materials provided to potential Celebrex users.

23.    The advertising program as a whole sought to create the image, impression and

belief by consumers and physicians that the use of Vioxx was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Defendant knew these representations to be false, and even though the Defendant had no reasonable grounds to believe them to be true.

24.     The advertising program as a whole sought to create the image, impression and belief by consumers and physicians that the use of Celebrex was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Celebrex Defendants knew these representations to be false, and even though the Celebrex Defendants had no reasonable grounds to believe them to be true.

25.     Merck purposefully downplayed and understated the health hazards and risks associated with Vioxx.  Defendant, through promotional literature, audio conferences, professional meetings, and press releases deceived potential users of Vioxx by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendant concealed material relevant information from potential Vioxx users and minimized user and prescriber concern regarding the safety of Vioxx.

26.     In particular, in the materials produced by Merck, Merck falsely misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx, and falsely represented that adequate testing had been conducted concerning Vioxx.

27.     Defendant Merck's conduct was such that the FDA wrote the company a "Warning Letter" in September 2001 which demanded Merck to correct the false and/or misleading messages contained in the promotional campaign for Vioxx.  Most if not all of the

6

noted misrepresentations were made in reference to the VIGOR study conducted by Merck.[2]

Aforesaid warning letter delineated the following misrepresentations made during six

promotional audio conferences presented on behalf of Merck by Peter Holt, M.D.  Defendants

misrepresented that:

> a.    "When you looked at the MI (myocardial infarction) rate
> the rate was different for the two groups.  The MI rate for Vioxx
> was 0.4 percent and if you looked at the Naprosyn arm it was 0.1
> percent, so there was a reduction in the MIs in the Naprosyn
> group."
>
> > 1)    Defendants knew that this statement was false as the
> > reason for the difference between Vioxx and naproxen has
> > not yet been determined. Defendants publicly asserted that
> > the naproxen is a "wonderful platelet inhibitor" when in
> > fact this has not been proven.  An alternative explanation
> > that Defendants carefully excluded from their promotional
> > campaign is that Vioxx may have pro-thrombotic
> > properties, therefore providing an explanation for the
> > increase in adverse cardiac events.
>
> b.    Merck and its agents and/or representatives also falsely
> claimed that the myocardial infarction rate associated with the use
> of Vioxx was 0.4%, when in fact it was clearly 0.5%.  Though the
> difference in the number seems minuscule, when dealing with tens
> of millions of prescriptions, the number of people affected by that
> 0.1% increase is very significant.  Furthermore, Defendants failed
> to point out that the more affordable alternative, naproxen, has
> been statistically proven to produce *half* as many myocardial
> infarctions as Vioxx.[3]
>
> c.    Merck and its agents and/or representatives misrepresented

---

[2]    The study compared the safety and tolerability of two treatments (Vioxx vs. naproxen) in patients with rheumatoid arthritis.

[3]    Such misrepresentation and omissions were made not only at promotional audio conferences in June 2000, but also at the Annual Meeting of the American Society of Health-systems Pharmacists (ASHP), in Los Angeles, California, on June 3 - June 6, 2001.

claims regarding the efficacy of Vioxx as compared to its competitor, Celebrex. When publicly comparing the VIGOR study to a study done on Celebrex known as "CLASS", Defendants failed to inform consumers that the patient populations in the two studies were extremely different.[4] For instance, the VIGOR study excluded patients who had angina or congestive heart failure with symptoms that occurred at rest or with minimal activity, as well as patients taking aspirin or other antiplatelet agents. The CLASS study did not exclude these patients, therefore making it more than likely that the CLASS trial included patients with a higher risk for myocardial infarctions prior to their ingestion of Celebrex. Nevertheless, Defendants used the results from aforementioned studies to misrepresent that Vioxx was the better drug.

d.     Merck and its agents and/or representatives made false statements about the risk of Vioxx therapy in patients who are taking warfarin. At an audio conference on June 16, 2000, defendants stated, "…if you look at the thromboembolic events it's very clear that these selective COX-2 inhibitors (of which Vioxx is a member) have the benefit of not having platelet aggregation and bleeding time, and therefore, can be used safely in terms of post-op and with Coumadin."[5] This statement flies in the face of the product insert (PI) included with each prescription of Vioxx. Said insert states that "…in post-marketing experience, bleeding events have been reported, predominately in the elderly, in association with increases in prothrombin time in patients receiving Vioxx concurrently with warfarin."

e.     Defendants' promotional audio conferences fail to present serious and significant risks associated with Vioxx therapy. For example, Defendants failed to state that Vioxx is contraindicated in patients who have experienced asthma, urticaria, or allergic-type reactions after taking aspirin or other NSAIDSs. Defendants also failed to present the gastrointestinal ("GI") warning about the possibility of serious GI toxicity such as bleeding, ulceration, or perforation in patients taking Vioxx. Moreover, Defendants failed to present Vioxx's precautions for use in patients who have liver and kidney disease, information about patient populations in which Vioxx's use is not recommended, such as women in late

---

[4]     "CLASS" stands for Celebrex Long-Term Arthritis Safety Study.

[5]     Coumadin is a specific type of warfarin.

pregnancy, and information about Vioxx's most common adverse
events.

28.     As a result of the Defendant's advertising and marketing efforts, and
representations concerning the subject products, Vioxx was pervasively prescribed throughout
the United States, up to and through its withdrawal on September 30, 2004.

29.     As a result of the Searle, Pharmacia, and Monsanto's (hereinafter jointly referred
to as the "Celebrex Defendants") advertising and marketing efforts, and representations
concerning the subject products, Celebrex is pervasively prescribed throughout the United States
despite black box warnings.

30.     If Mr. Gleason had known the risks and dangers associated with Vioxx and
Celebrex, he would not have taken Vioxx or Celebrex and consequentially would not have been
subject to their life-threatening side effects.


## COUNT ONE
## Strict Product Liability - Merck


31.     Plaintiffs adopt and incorporate by reference the allegations contained in the
foregoing paragraphs as if fully set forth.

32.     At all material times, the Defendant has been engaged in the business of selling,
distributing, manufacturing, marketing and promoting Vioxx, a pharmaceutical product that is
unreasonably dangerous, and therefore defective.

33.     At all material times, Vioxx was sold, distributed, manufactured, promoted and
marketed by the Defendant and was expected to reach, and did reach consumers, including the

9

Plaintiff, without substantial change in the condition in which it left the possession of the Defendant.

34.      Plaintiff was unaware of the significant hazards and defects in the Vioxx medication, both because of Merck's failure to inform the medical and pharmacist community of these hazards and defects (including Plaintiff's doctors and pharmacists), and because Merck failed to provide direct information to its Vioxx consumers (including the Plaintiff) of these hazards and defects. For these reasons, Vioxx was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user who knew the truth. During the periods Plaintiff was taking Vioxx, the medication was utilized in a manner which was intended by Defendant.

35.      Defendant had superior knowledge of the defective and/or unreasonably dangerous nature of Vioxx. Defendant held itself out to Plaintiff and the medical community as having superior knowledge of the alleged safety and efficacy of Vioxx. Plaintiff neither knew nor had reason to know of the defective condition of Vioxx.

36.      As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Mr. Gleason used Vioxx and suffered Vioxx-induced strokes and/or transient ischemic attacks with related serious mental, physical, and emotional injuries and economic damages.

37.      As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT TWO
## Strict Products Liability - Celebrex Defendants

38.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

39.     At all times material hereto, the Celebrex Defendants have engaged in the business of  designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Celebrex, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

40.     At all times material hereto, Celebrex was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by the Celebrex Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.      When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

b.      The drug was insufficiently tested;

c.      The drug caused harmful side effects that outweighed any potential utility;

11

    d.     The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff and her decedent, of the potential risks and serious side effects associated with its use;

    e.     In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Celebrex should not have been  marketed in that condition.

41.    At all times the drug Celebrex  was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

42.    At all times, Plaintiff used Celebrex for its intended or reasonably foreseeable purpose.

43.    As a  direct, legal,  proximate  and  producing result of the defective and unreasonably  dangerous condition of Celebrex, Plaintiff sustained substantial injuries including, among  other things, a stroke.  These injuries caused extensive pain and  suffering and severe  emotional distress and substantially reduced Plaintiff's  ability to enjoy life.  In addition,  the defective and unreasonably dangerous condition of Celebrex caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

44.     As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Celebrex, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

45.     As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Celebrex, Plaintiff, required reasonable and necessary health care treatment and service and had incurred expenses therefore.

46.     By reason of the foregoing, Plaintiff was damaged by the wanton and willful recklessness of the Defendants, who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

47.     As a proximate consequence of the actions on the part of the Celebrex Defendants, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendants Searle, Pharmacia and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

13

## COUNT THREE
## Failure to Warn - Merck

48.     Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

49.     At all material times, Vioxx was unreasonably dangerous and defective, because, Merck recklessly and /or intentionally, with utter disregard for the Plaintiff's safety:

    a.      Failed to include adequate warnings with the medications that would alert Plaintiff and other consumers to the potential risks and serious thrombotic and cardiovascular side effects of Vioxx ingestion;

    b.      Failed to include adequate information or warnings with the medication that would alert Plaintiff and the health care community and pharmacist community to refrain from prescribing or providing Vioxx without first prescribing or recommending traditional nonsteroidal anti-inflammatory drugs ("NSAIDs") such as naproxen or ibuprofen;

    c.      Failed to adequately and properly test Vioxx before and after placing it on the market;

    d.      Failed to conduct sufficient testing on Vioxx which, if properly performed, would have shown that Vioxx had serious side effects, including, but not limited to the cardiovascular events described above;

    e.      Failed to adequately warn Plaintiff and Plaintiff's health care providers that use of Vioxx carried a risk of cardiovascular and cerebrovascular events and death, among other serious side effects;

14

f.    Failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death, among other serious side effects, from the use of Vioxx;

g.    Failed to adequately disclose and warn Plaintiff that Plaintiff undertook the risk of adverse events and death by ingesting Vioxx;

h.    Failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion; and

i.    Failed to recall Vioxx in a reasonably and timely manner.

50.    At all relevant times, there existed safer methods and products for pain relief.

51.    As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Mr. Gleason used Vioxx and suffered Vioxx-induced strokes and/or transient ischemic attacks with related serious mental, physical, and emotional injuries and economic damages.

52.    As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

15

## COUNT FOUR
## Failure to Warn - Celebrex Defendants

53.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

54.     Celebrex was defective and unreasonably dangerous when it left the possession of the Celebrex Defendants in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the dangerous risks and reactions associated with Celebrex when used for its intended or reasonably foreseeable purpose.  Those dangerous risks and reactions included, but were not limited to, heart attack, stroke and/or death and other serious and life threatening side effects.

55.     At all times, Plaintiff used the drug for its intended or reasonably foreseeable purpose.

56.     Plaintiff could not have discovered any defect in the drug through the exercise of care.

57.     The Celebrex Defendants, as manufacturers of a prescription drug, is held to the level of knowledge of an expert in the field.

58.     The warnings that were given by Defendants were not accurate or clear and/or were ambiguous.

59.     The Celebrex Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of

Celebrex.

60.    As a direct, legal, proximate and producing result of the Celebrex Defendant's failure to warn, Plaintiff sustained harm, including, among other things, a stroke.  These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life.  In addition, the Celebrex Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

61.    As a direct, legal, proximate and producing result of the Celebrex Defendants' failure to warn, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish.   All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

62.    As a direct, legal, proximate and producing result of the Celebrex Defendants' failure to warn, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore.

63.    By reason of the foregoing, Plaintiff was damaged by the wanton and willful recklessness of the Celebrex Defendants who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

64.    As a proximate consequence of the actions on the part of the Celebrex Defendants, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendants Searle, Pharmacia and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

17

## COUNT FIVE
## Negligence - Merck

65.     Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

66.     Defendant negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Vioxx in the state of Illinois.

67.     At all material times, Defendant had a duty to exercise reasonable care in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of its medications, including Vioxx.

68.     Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward the Plaintiff in the following ways:

    a.     Failed to include adequate warnings with the medications that would alert Plaintiff and other consumers to the potential risks and serious thrombotic and cardiovascular side effects of Vioxx ingestion;

    b.     Failed to include adequate information or warnings with the medication that would alert Plaintiff and the health care community and pharmacist community to refrain from prescribing or providing Vioxx without first prescribing or recommending traditional nonsteroidal anti-inflammatory drugs ("NSAIDs") such as naproxen or ibuprofen;

    c.     Failed to adequately and properly test Vioxx before and after placing it on the market;

18

    d.      Failed to conduct sufficient testing on Vioxx which, if properly

performed, would have shown that Vioxx had serious side effects,

including, but not limited to the cardiovascular events described above;

    e.      Failed to adequately warn Plaintiff and Plaintiff's health care providers

that use of Vioxx carried a risk of cardiovascular events and death,

among other serious side effects;

    f.      Failed to provide adequate post-marketing warnings or instructions after

the Defendant knew or should have known of the significant risks of

personal injury and death, among other serious side effects, from the

use of Vioxx;

    g.      Failed to adequately disclose and warn Plaintiff that Plaintiff undertook

the risk of adverse events and death;

    h.      Failed to adequately and timely inform the health care industry of the

risks of serious personal injury and death from Vioxx ingestion; and

    i.      Failed to recall Vioxx in a reasonably and timely manner.

69.    Defendant knew or should have known that Vioxx caused unreasonably

dangerous risks and serious side effects of which Plaintiff would not be aware. Defendant

nevertheless advertised, marketed, sold and distributed the drug knowing that there were safer

methods and products for pain relief.

70.    As a direct and proximate result of the actions and inactions of the Defendant

as set forth above, Mr. Gleason used Vioxx and suffered Vioxx-induced strokes and/or

transient ischemic attacks with related serious mental, physical, and emotional injuries and

economic damages.

71.    As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT SIX
### Negligence - Celebrex Defendants

72.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

73.    The Celebrex Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Celebrex.

74.    At all times material hereto, the Celebrex Defendants had a duty to users and/or consumers of Celebrex, including Plaintiff, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Celebrex.

75.    The Celebrex Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Celebrex in that: Celebrex was defective when put on the market by Defendants; that with such defect, Celebrex was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Celebrex or in inspecting it for defects.

20

Specifically, Defendants breached their duty by, among other things:

a.   Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the potential risks and serious side effects of the drug;

b.   Failing to adequately and properly test and inspect the drug before placing the drug on the market;

c.   Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke and/or death.

d.   Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke and/or death;

e.   Failing to provide adequate post-marketing warnings or instructions after the Celebrex Defendants knew or should have known of the significant risks associated with the use of the drug.

f.   Failing to recall and/or remove the drug from the stream of commerce despite the fact that the Celebrex Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

g.   Encouraging misuse and overuse while failing to disclose the side

21

effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to make a profit from sales.

76.     The Celebrex Defendants knew or should have known that Celebrex caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware. The Celebrex Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Celebrex knowing that there were safer methods for pain relief.

77.     As a direct, legal, proximate and producing result of the negligence of the Celebrex Defendants, Plaintiff sustained substantial injuries including, among other things, a stroke. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life.  In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

78.     As a direct, legal, proximate and producing result of the negligence of the Celebrex Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

79.     As a direct, legal, proximate and producing result of the negligence of the Celebrex Defendants, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non economic loss.

80.     As a proximate consequence of the actions on the part of the Celebrex

Defendants, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

81.     By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants.  The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

WHEREFORE, Plaintiffs demand judgment of the Defendants Searle, Pharmacia and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

### COUNT SEVEN
### Gross Neglience - Merck

82.     Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

83.     Defendant wantonly and recklessly manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Vioxx in Illinois.

84.     At all material times, Defendant had a duty to exercise reasonable care in the design, manufacture, testing, research and development, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of its medications, including Vioxx

85.     Defendant breached its duty and was wanton and reckless in its actions, misrepresentations, and omissions, in that Defendant recklessly and/or intentionally, with utter disregard for the Plaintiff's safety:

a.     Failed to include adequate warnings with the medications that would

23

alert Plaintiff and other consumers to the potential risks and serious thrombotic and cardiovascular side effects of Vioxx ingestion;

b.    Failed to include adequate information or warnings with the medication that would alert Plaintiff and the health care community and pharmacist community to refrain from prescribing or providing Vioxx without first prescribing or recommending traditional nonsteroidal anti-inflammatory drugs ("NSAIDs") such as naproxen or ibuprofen;

c.    Failed to adequately and properly test Vioxx before and after placing it on the market;

d.    Failed to conduct sufficient testing on Vioxx which, if properly performed, would have shown that Vioxx had serious side effects, including, but not limited to the cardiovascular events described above;

e.    Failed to adequately warn Plaintiff and Plaintiff's health care providers that use of Vioxx carried a risk of cardiovascular events and death, among other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death, among other serious side effects, from the use of Vioxx;

g.    Failed to adequately disclose and warn Plaintiff that Plaintiff undertook the risk of adverse events and death;

h.    Failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion; and

24

i.      Failed to recall Vioxx in a reasonably and timely manner.

86.      Defendant knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the drug knowing that there were safer methods and products for pain relief.

87.      As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Mr. Gleason used Vioxx and suffered Vioxx-induced strokes and/or transient ischemic attacks with related serious mental, physical, and emotional injuries and economic damages.

88.      As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT EIGHT
## Fraudulent Misrepresentation and Concealment - Merck

89.      Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

90.      Defendant misrepresented to Plaintiff and the health care industry, including Plaintiff's doctors and pharmacists, the safety and effectiveness of Vioxx and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Vioxx.

25

91.     Defendant made misrepresentations and actively concealed adverse information at times when the Defendant knew, or should have known, that Vioxx had defects, dangers, and characteristics that it was other than what Defendant had represented to Plaintiff and the health care industry generally, including Plaintiff's doctors and pharmacists.

92.     Defendant's misrepresentations and concealment went on during the pre-market time period for Vioxx when Defendant was attempting to gain permission to market Vioxx. Defendant's misrepresentations and concealment continued during the May of 1999 release of Vioxx in the United States and were ongoing until the time Plaintiff was injured by Vioxx. Defendant's misrepresentations and concealment about Vioxx continued after the time of Plaintiff's stroke and related injuries and damages.  Specifically, Defendant misrepresented to and/or actively concealed from Plaintiff the health care industry and consuming public, including Plaintiff's doctors and pharmacists, that:

    a.      Vioxx had statistically significant increases in cardiovascular cerebrovascular side effects, including stroke, myocardial infarction, and sudden onset death;

    b.      There had been insufficient studies regarding the safety and efficacy of Vioxx before and after its product launch;

    c.      Vioxx was not fully and adequately tested for the cardiovascular side effects at issue;

    d.      Other testing and studies showed the risk of or actual serious adverse risks; and/or that there was a greatly increased risk of such cardiovascular events and death; there was a confirmed mechanism by which these thrombotic or cardiovascular events occurred as reported in

26

the scientific literature.

93.     The misrepresentations and/or active concealment alleged were perpetuated directly and/or indirectly by Defendant.

94.     Defendant knew or should have known that these representations were false and made the representations with the intent or purpose that Plaintiff would rely on them, leading to the use of Vioxx.

95.     At the time of Defendant's fraudulent misrepresentations, Plaintiff was unaware of the falsity of the statements being made and believed them to be true.  Plaintiff had no knowledge of the information concealed and/or suppressed by Defendant.

96.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendant did suppress, conceal or failed to disclose.

97.     Defendant had a post-sale duty to warn Plaintiff and the public about the potential risks and complications associated with Vioxx in a timely manner.

98.     Defendant made the misrepresentations and actively concealed information about the defects and dangers of Vioxx with the intention and specific desire that Plaintiff, health care professionals and the consuming public would rely on such or the absence of information in selecting Vioxx as treatment.

99.     Defendant had a duty to Plaintiff and Plaintiff's doctors and pharmacists to disclose the aforementioned material facts concerning Vioxx because those facts affected public health and safety, including the Plaintiff's health and safety.

100.    As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Mr. Gleason used Vioxx and suffered Vioxx-induced strokes and/or

transient ischemic attacks with related serious mental, physical, and emotional injuries and economic damages.

101.    As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT NINE
### Fraud - Celebrex Defendants

102.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

103.    The Celebrex Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Celebrex.

104.    The Celebrex Defendants misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

105.     The Celebrex Defendants either knew or should have known that the representations were false.

106.     The Celebrex Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Celebrex as a pain reliever.

107.     The Celebrex Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Celebrex in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

108.     The Celebrex Defendants made these misrepresentations and actively concealed adverse information at a time when the Celebrex Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what the Celebrex Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, the Celebrex Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

      a.     There had been insufficient studies regarding the safety and efficacy of the drug;

      b.     The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

      c.     Prior studies, research, reports and/or testing had been conducted

29

linking the use of the drug to serious prothrombotic reactions, including, but not limited to, adverse cardiovascular events;

d.    The Celebrex Defendants knew or should have known of reports of increased heart attacks and/or strokes associated with the use of the drug;

e.    The Celebrex Defendants knew or should have known of the greatly increased risk of developing heart attacks and/or strokes associated with use of Celebrex; yet, despite this they were downplaying the risk of the drug.

109.    The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

110.    The misrepresentations of and/or active concealment by the Celebrex Defendants constitute a continuing tort. Indeed, through the Celebrex Defendants' product inserts, the Celebrex Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Celebrex. Moreover, the Celebrex Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Celebrex in a timely manner, yet they failed to provide such warning.

111.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of the Celebrex Defendants to purchase and ingest Celebrex to his detriment.

30

112.    As a direct, legal, proximate and producing result of the misrepresentations of the Celebrex Defendants, Plaintiff sustained substantial injuries including, among other things, a stroke.  These injuries caused extensive pain and suffering and severe emotional distress for Plaintiff, and substantially reduced Plaintiff's ability to enjoy life.  In addition, the misrepresentations of the Celebrex Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

113.    As a direct, legal, proximate and producing result of the misrepresentations of the Celebrex Defendants, Plaintiff has been injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

114.    As a direct, legal, proximate and producing result of the misrepresentations of the Celebrex Defendants, Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore.

115.    By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of the Celebrex Defendants who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

116.    As a proximate consequence of the actions on the part of the Celebrex Defendants, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendants Searle, Pharmacia

31

and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT TEN
## Negligent Misrepresentation - Celebrex Defendants

117.     Plaintiff repeats and realleges each of the allegations contained in the Complaint.

118.     The Celebrex Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Celebrex.

119.     The Celebrex Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

120.     The Celebrex Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Celebrex in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

121.     The Celebrex Defendants either knew or should have known that the representations were false.

122.     The Celebrex Defendants knew or should have known that the

misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, in selecting Celebrex as a pain reliever.

123.    The Celebrex Defendants made these misrepresentations and actively concealed adverse information at a time when the Celebrex Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what the Celebrex Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, the Celebrex Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

   a.    There had been insufficient studies regarding the safety and efficacy of the drug;

   b.    The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

   c.    Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events and strokes;

   d.    The Celebrex Defendants knew or should have known of reports of strokes associated with the use of the drug;

   e.    The Celebrex Defendants knew or should have known of the greatly increased risk of heart attacks, strokes and/or death and other serious and life threatening side effects associated with the drug; yet, despite

this was downplaying the risks of the drug.

124.     The misrepresentations of and/or active concealment by the Celebrex

Defendants were perpetuated directly and/or indirectly by the Celebrex Defendants, their sales

representatives, employees, distributors, agents and/or detail persons.

125.     The misrepresentations of and/or active concealment by the Celebrex

Defendants constitute a continuing tort.  Indeed, through the Celebrex Defendants' product

inserts, the Celebrex Defendants continued to misrepresent the potential risks and

complications associated with Celebrex.  Moreover, the Celebrex Defendants had a post-sale

duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or

consumers of the drug, including Plaintiff, about the potential risks and serious side effects

associated with the use of Celebrex in a timely manner, yet it failed to provide such

warning.

126.     Plaintiff justifiably relied on and/or was induced by the misrepresentations

and/or active concealment of the Celebrex Defendants to purchase and ingest Celebrex to

his detriment.

127.     As a direct, legal, proximate and producing result of the misrepresentations of

the Celebrex Defendants, Plaintiff sustained harm, including, among other things, a stroke.

These injuries have caused extensive pain and suffering and severe emotional distress and

substantially reduced Plaintiff's ability to enjoy life.  In addition, the misrepresentations

of the Celebrex Defendants caused Plaintiff  to expend substantial sums of money for

medical, hospital, and related care.

128.     As a direct, legal, proximate and producing result of the misrepresentations of

the Celebrex Defendants, Plaintiff was injured in health, strength and activity and suffered

34

physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

129.     As a direct, legal, proximate and producing result of the misrepresentations of the Celebrex Defendants, Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore.

130.     By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Celebrex Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

131.     As a proximate consequence of the actions on the part of the Celebrex Defendants, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendants Searle, Pharmacia and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.


## COUNT ELEVEN
## Breach of Express Warranties - Merck

132.     Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

133.     Defendant expressly warranted to Plaintiff that Vioxx was not defective and was, in fact, safe and effective when used in the treatment of joint pain.

134.    In purchasing the subject Vioxx, Plaintiff relied on the Defendant's express warranties and its skill and judgment in selecting and furnishing medicine suitable for ingestion and for the treatment of joint pain.

135.    At the time of making the express warranties to Plaintiff, Defendant knew of the true defective and/or unreasonably dangerous conditions of the subject Vioxx, and recklessly and/or intentionally gave the warranties regardless of this knowledge, making the breach of warranties reckless and/or intentional.

136.    As a direct and proximate consequence of the Defendant's breach of express warranties, Mr. Gleason incurred medical expenses and bills, lost wages, endured physical pain and suffering, mental anguish, and sustained physical injuries and damages as a result of the ingestion of Vioxx and consequent Vioxx-induced injuries.

137.    As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.


## COUNT TWELVE
### Breach of Express Warranties - Celebrex Defendants


138.    Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

139.    The Celebrex Defendants expressly warranted to Plaintiff that Celebrex was not defective and was, in fact, safe and effective when used in the treatment of joint pain.

36

140.    In purchasing the subject Celebrex, Plaintiff relied on the Celebrex Defendant's express warranties and its skill and judgment in selecting and furnishing medicine suitable for ingestion and for the treatment of joint pain.

141.    At the time of making the express warranties to Plaintiff, the Celebrex Defendant knew of the true defective and/or unreasonably dangerous conditions of the subject Celebrex, and recklessly and/or intentionally gave the warranties regardless of this knowledge, making the breach of warranties reckless and/or intentional.

142.    As a direct and proximate consequence of the Celebrex Defendant's breach of express warranties, Mr. Gleason incurred medical expenses and bills, lost wages, endured physical pain and suffering, mental anguish, and sustained physical injuries and damages as a result of the ingestion of Celebrex and consequent Celebrex-induced injuries.

143.    As a proximate consequence of the actions on the part of the Celebrex Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendants  Searle,  Pharmacia and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.


### COUNT THIRTEEN
### Breach of Implied Warranty of Fitness for Particular Purpose - Merck

144.    Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

145.    Defendant impliedly warranted to Plaintiff that Vioxx was fit for the ordinary

37

use for which anti-inflammatory medications are designed and used, including the treatment of joint pain, and that Vioxx was, in fact, suitable for the treatment of joint pain.

146.    In purchasing and using Vioxx, Plaintiff relied on the Defendant's skill and judgment in selecting and furnishing medicine suitable for ingestion and for the treatment of joint pain.

147.    Defendant breached its implied warranties of fitness for a particular purpose in that the Vioxx purchased by Plaintiff and ingested into Plaintiff's body was defective and/or unreasonably dangerous to Plaintiff and was not suitable for the treatment of joint pain.

148.    At the time of making the implied warranties to Plaintiff, the Defendant knew or should have known of the true defective and/or unreasonably dangerous condition of Vioxx, and recklessly and/or intentionally gave the warranties regardless of this knowledge, making the breach of warranties intentional.

149.    As a direct and proximate consequence of the Defendant's breach of express warranties, Mr. Gleason incurred medical expenses and bills, lost wages, endured physical pain and suffering, mental anguish, and sustained physical injuries and damages as a result of the ingestion of Vioxx and consequent Vioxx-induced injuries.

150.    As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT FOURTEEN
## Breach of Implied Warranty of Merchantability - Celebrex Defendants

151.     Plaintiff repeats and realleges each of the allegations contained in the

Complaint.

152.     The Celebrex Defendants are "merchants" as defined in 810 ILCS 5/2-104.

153.     Celebrex is a "good" as defined in 810 ILCS 5/2-105.

154.     At the time that the Celebrex Defendants designed, tested, inspected,

manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised,

promoted, sold, packaged, supplied and/or distributed the drug Celebrex, they knew of the

intended, reasonably foreseeable and/or ordinary use of Celebrex and impliedly warranted the

drug to be of merchantable quality and safe and fit for such use.

155.     Plaintiff, in ingesting Celebrex, reasonably relied upon the skill and judgment

of the Celebrex Defendants as to whether Celebrex was of merchantable quality and safe and

fit for its intended, reasonably foreseeable and/or ordinary use.

156.     In breach of the implied warranty given by the Celebrex Defendants, Celebrex

was not of merchantable quality or safe or fit for its intended, reasonably foreseeable

and/or ordinary use because the product was and is unmerchantable, in a defective

condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable

and/or ordinary purpose for which it was intended as described above.

157.     In breach of the implied warranty given by the Celebrex Defendants, Celebrex

was not of merchantable quality or safe or fit for its intended, reasonably foreseeable

and/or ordinary use because, among other things:

        a.     Use of Celebrex carried a risk of, among other things, heart attack,

            stroke and/or death and other serious and life threatening side effects;

b. The Celebrex Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects of the drug;

c. The Celebrex Defendants failed to provide adequate post-marketing warnings or instructions after they knew or should have known of the potential risks and serious side effects associated with the use of the drug.

158. As a direct, legal, proximate and producing result of the Celebrex Defendants' breach of warranty, Plaintiff sustained substantial injuries including, among other things, a stroke. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the Celebrex Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital and related care.

159. As a direct, legal, proximate and producing result of the Celebrex Defendants' breach of warranty, Plaintiff has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

160. As a direct, legal, proximate and producing result of the Celebrex Defendants' breach of warranty, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore.

161. By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of the Celebrex Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise

have jurisdiction over this matter.

WHEREFORE, Plaintiffs demand judgment of the Defendants Searle, Pharmacia and Monsanto for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT FIFTEEN
## Breach of Express Warranties of Merchantability - Merck

162.    Plaintiffs adopt and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth.

163.    Defendant impliedly warranted that the subject Vioxx was of merchantable quality, fit, safe and in a proper condition for the ordinary use for which anti-inflammatory medications are designed and used.

164.    In purchasing and using Vioxx, Plaintiff relied on the Defendant's skill and judgment in selecting and furnishing medicine suitable for ingestion and for the treatment of joint pain.

165.    The Defendant breached its warranties of merchantability in that the Vioxx purchased by Plaintiff and ingested into Plaintiff's body was defective and/or unreasonably dangerous to Plaintiff, and was not of merchantable quality for the ordinary use for which Vioxx was designed and used.

166.    At the time of making the implied warranties to Plaintiff, Defendant knew or should have known of the true defective and/or unreasonably dangerous condition of Vioxx, and recklessly and/or intentionally gave the warranties regardless of its knowledge, making the breach of the warranties reckless and/or intentional.

167.    As a direct and proximate consequence of the Defendant's breach of implied warranties, Mr. Gleason incurred medical expenses and bills, lost wages, endured physical

41

pain and suffering, mental anguish, and sustained physical injuries and damages as a result of the ingestion of Vioxx and consequent Vioxx-induced injuries.

168.   As a proximate consequence of the actions on the part of the Defendant, Plaintiff Mrs. Gleason was caused to lose the care, comfort, service and society of her husband.

WHEREFORE, Plaintiffs demand judgment of the Defendant Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY IN ALL ISSUES.**

Respectfully submitted,

Michael W. Clancy
Clancy Law Offices
7 S. Second Avenue
St. Charles, IL 60174
Tel: (630) 584-7666
Fax: (630) 584-1649