## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to Case No. 06-0810 | * | |
| CHARLES L. MASON, | * | MAGISTRATE JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY IN SUPPORT OF MOTION OF DEFENDANT MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OR ARGUMENT THAT MERCK: (1) COULD OR SHOULD HAVE UNILATERALLY CHANGED THE VIOXX® LABEL TO INCLUDE THE VIGOR DATA; OR (2) "DRAGGED ITS FEET" TO PREVENT THE <u>VIGOR DATA FROM BEING ADDED TO THE VIOXX LABEL</u>**

**(MOTION IN *LIMINE* NO. 4)**

Because this is a post-VIGOR label change case, the evidence that plaintiff needs to support his claims is different than in cases like *Plunkett v. Merck* and *Barnett v. Merck*, which involved pre-VIGOR label use. To prevail, plaintiff must show that the label contained an inadequate warning *at the time his doctor prescribed Vioxx®*. He does not need to introduce evidence of Merck's labels or negotiations with the FDA before the date of his prescription to make his case. In fact, the consequences of admitting such evidence – namely, jury confusion, undue delay and unfair prejudice – far outweigh any marginal relevance that it may have to the issues in the case.

833938v.1

Plaintiff does not dispute – or even address – Merck's position that Federal Rule of Evidence 403 precludes the admissibility of such evidence. Instead, in his opposition, plaintiff argues that he should be able to introduce evidence that Merck could have unilaterally changed the Vioxx label for two reasons. First, plaintiff asserts that Merck's April 2002 VIGOR label "did not adequately warn" of the dangers of Vioxx. Plaintiff, of course, is entitled to try to prove that to the jury. The adequacy of that label is at the very core of plaintiff's failure-to-warn case. But it has nothing to do with alleged "foot-dragging" that predates the adoption of that label. Second, plaintiff asserts that evidence of alleged "foot-dragging" before the adoption of the April 2002 label shows that Merck routinely sought to mislead doctors. But Federal Rule of Evidence 404 prohibits any such use of "character evidence."

For the reasons stated below and in Merck's underlying motion, the Court should exclude testimony and argument that Merck (i) could have used the CBE procedure in periods before the April 2002 label; and (ii) "dragged its feet" in changing the Vioxx label to include information about the cardiovascular events that occurred in the VIGOR study.

## I. IN THIS POST-VIGOR LABEL CASE, MERCK'S ABILITY TO UTILIZE THE "CBE" PROCEDURE TO ADD THE VIGOR DATA IS IRRELEVANT.

Regardless of whether plaintiff believes the post-VIGOR label was still inadequate, the timing of that label change and any arguments that Merck should have made the change earlier is completely irrelevant to any issue being tried in this case. Plaintiff began taking Vioxx *five months* after the Vioxx label was modified to add the adverse cardiovascular data from the VIGOR study. Merck first learned about this data in March 2000 and, in previous Vioxx trials, plaintiffs have argued that between March 2000 and April 2002, Merck "dragged its feet" because it did not want prescribing physicians to know about the cardiovascular data from VIGOR. In those cases, plaintiffs began taking Vioxx before the VIGOR data was added to the

label and argued that if this information had been available earlier, they would not have taken Vioxx.[1] But in this case, plaintiff did not begin taking Vioxx until September 2002. Consequently, it is irrelevant whether Merck could have added the VIGOR data to the Vioxx label before April 2002.[2] *See, e.g., Werner v. Upjohn Co.*, 628 F.2d 848, 852 & n.1 (4th Cir. 1980) (noting that because plaintiff first visited the doctor on December 10, 1974, "[t]he adequacy of the warnings issued prior to 1974 was not in issue in this case.").

## II.   MERCK'S COMMUNICATIONS WITH THE FDA BETWEEN MARCH 2000 AND APRIL 2002 ARE NOT EVIDENCE OF MERCK'S "ROUTINE PRACTICE."

Plaintiff's argument that this evidence should be admitted under Federal Rule of Evidence 406, which allows evidence of "habit" to be introduced in some circumstances, is misguided. Rule 406 is an exception to Rule 404's prohibition against character evidence.[3] To avoid "thwarting Rule 404's prohibition against the use of character evidence," "[c]ourts have generally proceeded cautiously in permitting the admission of a pattern of conduct as habit, 'because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character...'" FED. R. EVID. 406 cmt. (quoting *Simplex, Inc. v. Diversified Energy Sys.*, 847 F.2d 1290, 1293 (7th Cir. 1988);

---

[1] Merck, of course, disputes the validity of this argument since it published the VIGOR data and discussed its significance in several other contexts before the FDA concluded in April 2002 that the Vioxx label should state that the significance of the VIGOR data is "unknown."

[2] Likewise, Merck's alleged motive to delay the label change is irrelevant. Plaintiff's argument that it is entitled to prove Merck failed to warn of Vioxx's alleged cardiovascular risk because it was motivated by money does not implicate the issue of whether Merck could or should have used the "CBE" procedure to add the VIGOR data before April 2002.

[3] Rule 404 prohibits "(a) Evidence of a person's character or a trait of character . . . for the purpose of proving action in conformity therewith on a particular occasion . . . [and] (b) Evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."

3

*see also United States v. Mascio*, 774 F.2d 219, 222 (7th Cir. 1985) (holding there is no such thing as a "habit" of committing insurance fraud, because evidence of such "habits" "would be identical to the kind of evidence that is the target of the general rule against character evidence") (quoting Cleary, McCormick on Evidence § 195, at 574 (3d ed. 1984) (citations omitted)).

Specifically, the advisory committee notes to Rule 406 describe a habit as "one's regular response to a repeated specific situation" and then state that "[e]quivalent behavior on the part of a group is designated 'routine practice of an organization' in this rule." FED. R. EVID. 406 advisory committee's note. Thus, "activity that is extremely complicated is unlikely to be considered habit, since such activity would ordinarily be dependent on a significant thought process, as well as a number of contingencies, and all that is inconsistent with the notion of habit as reflexive and semiautomatic." FED. R. EVID. 406 cmt. (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987) (excluding evidence of past official conduct because "extortion or refraining from extortion is not a semi-automatic act and does not constitute habit")).

Rule 406 does not support plaintiff's argument. First, Merck's communications with the FDA about the VIGOR data are highly fact-specific and do not qualify as evidence of Merck's "routine practice." Second, Rule 406 allows a party to offer evidence to prove the opposing party's action in conformity therewith "on a particular occasion." FED. R. EVID. 406. Plaintiff has not pointed to any "particular occasion" for which this evidence is directly relevant. Instead, plaintiff argues that this evidence "will show that, from the first day it considered marketing Vioxx, Merck's strategy and practice was to ignore, minimize or 'spin' the cardiovascular risk" and that "[a]t every turn then, Merck always tried to withhold, minimize or misrepresent the cardiovascular risk." (Pl.'s Opp'n at 4.) Plaintiff's statements and argument are nothing more than an attempt to bootstrap evidence that is entirely irrelevant to plaintiff's specific case to show

4

that Merck acted as plaintiff argues it did. Rule 406 does not allow otherwise irrelevant evidence to be admitted in this way.

Merck's communications with the FDA about the VIGOR data, which occurred between March 2000 and April 2002, are anything but a "routine practice of an organization." FED. R. EVID. 406. Plaintiff's argument that this evidence is therefore relevant under Rule 406 should be rejected.

### III. ANY TESTIMONY OR ARGUMENT ABOUT PRE-APRIL 2002 VIOXX LABELS IS INADMISSIBLE UNDER RULE 403.

Plaintiff should not be permitted to introduce evidence for the primary purpose of showing that Merck was a "bad" company. Federal Rule of Evidence 403 protects against exactly this type of situation by precluding admissibility of evidence that has minimal probative value but carries with it a significant danger of jury confusion, undue delay, and unfair prejudice. Merck should not be put on trial for conduct that is wholly divorced from the warning given to plaintiff and his prescribers at the time plaintiff began taking Vioxx. Nor should the jury have to evaluate the information provided by Merck in Vioxx labels that preceded the operative label in this case. To have them do so would risk juror confusion and would certainly result in an undue consumption of the Court's, the parties', and the jury's time. The Court should thus preclude plaintiff from offering any testimony or argument about these prior Vioxx labels under Rule 403.

### IV. CONCLUSION.

For the reasons stated above and in Merck's motion, Merck asks this Court to grant its motion and exclude all testimony and argument that Merck: (i) could or should have unilaterally modified the Vioxx label to add the VIGOR results sooner than it did; and (ii) "dragged its feet" in changing the Vioxx label to include information about the cardiovascular events that occurred in the VIGOR study.

5

Dated:  October 10, 2006                                  Respectfully submitted,

*/s Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Tarek Ismail
Shayna Cook
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Brian Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

And

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Attorneys for Merck & Co., Inc.

6

833938v.1

# CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply In Support Of Motion Of Defendant Merck & Co., Inc. ("Merck") To Exclude Testimony Or Argument That Merck: (1) Could Or Should Have Unilaterally Changed The Vioxx® Label To Include The Vigor Data; Or (2) "Dragged Its Feet" To Prevent The Vigor Data From Being Added To The Vioxx Label has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of October, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

833938v.1