# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to | : | JUDGE FALLON |
| | : | |
| Gerald Barnett v. Merck & Co., Inc. | : | MAG. JUDGE KNOWLES |
| Case No. 02:06CV00485 | : | |
| | : | |

## PLAINTIFFS' STEERING COMMITTEE AS *AMICUS CURIAE* IN RESPONSE TO THE MOTION OF MERCK & CO., INC. FOR A NEW TRIAL ON ALL ISSUES

## I.   INTRODUCTION

The Plaintiffs' Steering Committee (PSC) submits this memorandum as *Amicus Curiae* for the Court and plaintiff Gerald Barnett in response to the Motion of Merck & Co., Inc. ("Merck") for a New Trial on All Issues. The PSC stands in the unique position of being representative of all plaintiffs in these MDL proceedings, including state court proceedings coordinated through PTO No. 19, and its insights regarding the propriety of a new trial on all issues reflects considerations encompassing these broader responsibilities and concerns.

At the outset of the Vioxx MDL litigation, this Court set upon a course to proceed with trials of bellwether cases to obtain jury verdicts. Given that the purpose underlying this Court's selection of test cases was to advance the litigation as a whole by providing instructive and illustrative results flowing from these verdicts, the Barnett jury's verdict is very informative. Although the jury's $51 million verdict was perceived by the Court as excessive, that verdict nevertheless confirms other

1

jury findings from different jurisdictions that Merck is vulnerable to findings of liability, generous compensatory damage awards, and wilful, wanton conduct deserving of punitive damage awards. As the Barnett jury's verdict has fulfilled this important function of the court's strategic plan for the MDL, to require Mr. Barnett to undergo the crucible of a whole, new trial actually frustrates and works against the Court's strategy.  There are no efficiencies or benefits gained from this added process.

Trials are not inexpensive to conduct.  They impose great financial costs on the individual plaintiffs' counsel, as well as Merck, and tax the limited resources and time available to the litigants and, more importantly, the Court to engage in otherwise productive time administering the overall docket of this MDL and other matters.  This burden should not be minimized, nor overlooked, as it impacts on the ability of the Court to manage and direct the process of the MDL, and delays the ultimate goal of placing a value on outstanding cases to enable the parties to initiate the ultimate intent of the bellwether trials – considerations of resolution.

To foster the speedy disposition of the litigation, the PSC submits that a new trial absolute should not be granted.  Nor does the PSC agree that a new trial limited to damages furthers the ultimate conclusion of the litigation.  Instead, the PSC encourages the Court to permit the plaintiff to accept a remittitur to preserve the integrity of the jury's finding, eliminate the prospective burden on the litigants from retrying some or all of the case, accelerate a final judgment that will assuredly be appealed by at least one of the parties, and allow the Court to step beyond the individual fray of trial practice to permit it to focus its attention on the overall progress and resolution of the MDL.

A new trial absolute is unnecessary under the circumstances presented by this case.  As a bellwether case there are efficiencies derived from not having to retry the matter.  Further, given its

status as an exemplar trial, the jury's determination of liability is not challengeable.  The favored solution, taking into account economy, efficiency and manageability, suggests molding the verdict through the use of remittitur.

Accordingly, the discussion which follows will address itself to 1) the ability of the Court to permit a remission of the jury verdict; or alternatively, 2) to allow a trial limited only the separable issue of damages; and 3) why the jury's verdict was not inconsistent.

## II.   FACTUAL BACKGROUND

Mr. Barnett represents the third MDL plaintiff to have had his/her claim resolved by a jury under the auspices of this Court's test trial plan.  Both the Irvin/Plunkett and Smith cases ultimately resulted in verdicts favoring Merck.  Mr. Barnett is the first federal plaintiff to obtain a plaintiffs' verdict.  Notably, his verdict included a jury finding of liability under the heightened "clear and convincing" burden of proof on his deceit by concealment claim, and a finding that Merck's behavior was sufficiently wilful and  wanton to justify the imposition of punitive damages.[1]

Based upon these verdicts, there can be no dispute that Vioxx claims are matured. The results from the totality of these case has brought into focus the range of potential recoveries.  This Court

_____

[1]The results of the MDL's test cases are consistent with other verdicts obtained in state fora.  In New Jersey, Judge Higbee has presided over three jury trials, involving four plaintiffs, resulting in two defense verdicts: Humeston and Doherty, and the split verdicts in Cona and McDarby, where both plaintiffs recovered under the New Jersey consumer fraud statute but only McDarby proved that his injury was caused by his use of Vioxx and recovered about $4.5 million in compensatory damages and $9 million in  punitive damages.  The Humeston verdict has since been vacated and a new trial granted.
In Texas, the Ernst case resulted in a plaintiff's jury verdict of $24 million in compensatory damages, and then another $229 million in punitive damages, for a total of around $253 million.  The Garza case also resulted in a substantial plaintiff award of $7 million in compensatory damages and $25 million in punitive damages.
In California, the Grossberg case resulted in a defense verdict.

can be assured that it has accomplished its objective of reaching instructive verdicts to quantitatively evaluate Merck's liability exposure.

Having obtained these results, the time is now approaching for the Court to turn its attention towards the global resolution of the MDL. Given the thousands of cases transferred to the MDL docket, the luxury of time in which to address each claim individually is evaporating. Most of these cases are from outside of this district and can not be tried here.[2] The litigation either has to be globally resolved or the transferred actions will have to be remanded back to their original, transferee forums for final disposition. To have yet another trial in the Barnett case, even limited to damages, further diminishes this  Court's available resources and distracts the Court from its overriding mandate to aid in the ultimate resolution of not just the one case, but the entire MDL.

As to the one case at issue, to attempt to preserve some of the Court's time, the PSC accepts and incorporates by reference the factual statements of Mr. Barnett's counsel submitted in Mr. Barnett's response to the instant motion. *See* Plaintiff Gerald Barnett's Memorandum in Opposition to Motion of Merck & Co., Inc. ("MERCK") for a New Trial on All Issues (filed Oct. 31, 2006).

III. **ARGUMENT**

A. **TO PRESERVE THE INTEGRITY OF THE JURY VERDICT, REMITTITUR IS PREFERRED OVER A NEW TRIAL LIMITED TO DAMAGES**

This Court found that the compensatory damage award of the jury in the amount of $50 million was "excessive under any conceivable substantive standard of excessiveness." Order and Reasons at 6 (Aug. 30, 2006). After enumerating the injuries suffered by Mr. Barnett, which

---

[2] *See Lexecon Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach*, 523 U.S. 26 (1998).

included a heart attack, quintuple CABG surgery, further occlusions, additional cardiac injury, decreased exercise tolerance, and a lost nine to ten years of life expectancy, the Court nevertheless found that, "no reasonable jury could have found that the Plaintiff's losses totaled $50 million." *Id.* Although "not troubled" by the jury's punitive damage award, *id.*, the Court concluded that a new trial limited to damages was in order.

Understandably and justifiably, Mr. Barnett believes that rather than *sua sponte* ordering a new trial limited to damages, the Court should have first offered him a choice to remit his damage award. The PSC agrees. Without the benefit of adversarial briefing the Court's Order and Reasons improperly and prematurely characterized the nature of the award. That characterization--implying that the award was imbued with passion or prejudice--should not apply. Large jury awards such as the Barnett panel's decision have been analogously characterized in other ways, including: "complete absence of evidence to support the verdict," "the award was contrary to all reason," and "the award shocks the judicial conscience." *See Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 769 (5th Cir. 1990), cited by the Court in its Order and Reasons. *See also Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)("We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to 'shock the judicial conscience,' 'so gross or inordinately large as to be contrary to right reason,' so exaggerated as to indicate 'bias, passion, prejudice corruption, or other improper motive,' or as 'clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to.'); *Osburn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 918-19 (5th Cir. 1987)(same).

Accordingly, in *Brunnemann v. Terra International, Inc.*, 975 F.2d 175 (5th Cir. 1992), the court recognized that even where the damage award is excessive remittitur may be available:

> In determining whether a new trial or remittitur is the appropriate remedy, this Circuit has held that when a jury verdict results from passion or prejudice, a new trial, not remittitur is the proper remedy. <u>Damage awards which are merely excessive or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial</u>.

*Id.* at 178 (emphasis added).  *See also Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir. 1967)(offer to remit $1.9 million jury award (in 1967 dollars) should have been extended to plaintiff because, "the verdict was excessive as a matter of law in that it exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before the jury."); *Calderera*, 705 F.2d at 784 ("The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained . . . Nonetheless, when a jury's award exceeds the bounds of any reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so."); *Osburn*, 825 F.2d at 919 ("Having determined that the award is excessive, we can either order a new trial on damages or allow plaintiffs the option of avoiding such a new trial by agreeing to a remittitur of the excessive portion of the award.").

Because this is a diversity cased based upon South Carolina law, the Barnett verdict will be reconciled against similar verdicts from South Carolina to determine whether the verdict is excessive.  Reason and Order at 5, *citing, Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996).[3]  Based upon empirical review of South Carolina verdicts, the Barnett jury panel's verdict

─────────────────────

[3]Even though South Carolina law provides the standard of excessiveness, *Gasperini*, 518 U.S. at 438 n. 22, South Carolina law mirrors that of the many Fifth Circuit cases referenced above.  *See O'Neal v. Bowles*, 431 S.E.2d 555, 527 (S.C. 1993)(distinction between "merely" excessive and "grossly" excessive is based upon judicial finding that the verdict is "the result of passion, caprice, prejudice, or some other influence outside the evidence."); *Allstate Ins. Co. v. Durham*, 431 S.E.2d 557, 531 (S.C. 1993)("shockingly disproportionate" standard); *Murray v. Bank of America, N.A.*, 580 S.E.2d 194 (S.C.App. 2003)("Mere undue liberality on the part of

(continued...)

is not grossly excessive, but obviously trends towards a liberal award.  Nevertheless it is not far

beyond recognized bounds.  Only recently, a jury returned a $30 million award resulting from a

cardiac injury in *Sheikh v Lexington Medical Center*, Case.No. 2003-CP-32-0675 (Lexington C.P.

Sept. 18, 2006)[Attached hereto as Exhibit "A"].  In reported cases, South Carolina courts have

upheld $35.4 million and $16 million verdicts in personal injury cases.  *See Welch v. Epstein*, 536

S.E.2d 408 (S.C.App. 2000); *Hundley v. Rite Aid of South Carolina, Inc.*, 529 S.E.2d 45 (S.C.App.

2000).

Simply because the Barnett verdict was as large as it was, even if liberally excessive, that

result does not reflect any untoward influence on the jury's conclusions regarding Merck's liability.

*See Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 282 (5th Cir. 1975).  Indeed, this Court

separately found that the "jury's verdict on liability is reasonable."  Order and Reasons at 5.

Assuming that the jury placed too high a value on life expectancy is not grounds for a new trial;

instead, it is the paradigm situation to impose remittitur.  Ample precedent exists to support the

application of remittitur under these circumstances.  *See Edwards*, 512 F.2d at 282 ("A jury's

finding as to liability can be binding even though its monetary award is found to be excessive or

even improperly influenced – our deference to and faith in the jury system demands at least this

much. If the passion, prejudice, caprice, undue sympathy, arbitrariness or more taints only the

---

[3](...continued)
the jury does not warrant an inference that the verdict resulted from caprice, passion, prejudice,
or other improper motives.").  Considering that the Barnett jury was comprised of residents from
Louisiana, not South Carolina, any such reconciliation would naturally be imprecise.  The
reconciliation ought to respect local sensibilities about damages rather than yield to some fixed
accounting.  The age and composition of the jury, which just recently experienced the ravages of
Hurricanes Katrina and Rita, likely played a role in its calculation of the value of Mr. Barnett's
lost life expectancy that could not be fully appreciated by a South Carolina jury.

damage award and not the liability assessment, the proper response is a remittitur or a new trial addressed to damages alone. ") (citations omitted).

The PSC therefore submits that this Court's *sua sponte* Order and Reasons, limiting relief to a new trial based solely on damages, is misplaced.  Mr. Barnett should have been offered remittitur consistent with this Court's perception of the "maximum possible" award based upon its understanding of the factual record.[4]  *See Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 670 (5th Cir. 1974)("We have, therefore, held that the trial court may not require remission of a sum which would reduce the verdict below the maximum award which is reasonably supported by the evidence.").

**B.     SINCE THE JURY'S FINDING OF LIABILITY WAS
        REASONABLE, THE ALTERNATIVE RELIEF OF A
        NEW TRIAL LIMITED TO DAMAGES IS PROPER**

As previously discussed, this Court should employ its discretion by affording remittitur to Mr. Barnett.  Alternatively, the relief provided by the Court in its Order and Reasons is well founded.  Relying on inapposite cases and a skewed view of the record, Merck contends that a whole, new trial should be granted.  Unlike those situations where both the jury's liability and damages findings were affected by improper influence, here only the damage award was determined to be excessive.  The jury's liability finding was "reasonable." Order and Reasons at 5.  To preserve the sanctity of the jury's findings as much as possible, that liability finding should not be discarded.

---

[4]Understandably, the Court may be reluctant to calculate the quantum of damages based upon concerns that such a determination may have repercussions in subsequent MDL proceedings.  However weighty those concerns might be, they are counterbalanced by the need to expeditiously and successfully conclude the bellwether trials so that the MDL participants can proceed to the next level of claims resolution.  From Mr. Barnett's individual perspective, there is also ample evidence from which this Court can measure the maximum possible award of damages resulting from his injuries.  *See* Barnett Memorandum at 6-13.

A new trial limited to damages is an appropriate remedy.

Merck suggests that the entire verdict was infected with passion and prejudice. Having been found liable under the heightened "clear and convincing" burden of proof for deceipt and denounced for its wilful and wanton behavior, Merck's take of the trial is not credible. It goes so far as to cite to nods of the head of one juror that is not even part of the record (and, even if it did occur, might simply reflect that the juror heard Mr. Beck, not that he agreed with him), to suggest that the outcome of the trial was based purely on the jury's motive to punish Merck. With the facts against it, even the legal authorities relied upon by Merck can offer it no solace or succor - where the jury's finding of liability is untainted, it should stand leaving only damages to be retried.

This point is confirmed in *Edwards*, which even Merck acknowledges requires a finding of improper influences "on both liability <u>and</u> damages." Merck's Brf. at 19 (emphasis added), *citing Edwards*, 512 F.2d at 282-83. *See also Williams v. Slade*, 431 F.2d 605, 608 (5th Cir. 1970)(same). In Edwards, several disturbing details that do not exist in this case were present. For example, there was significant evidence suggesting that the plaintiff was contributorily negligent by speeding in his car. The district court instructed the jury that any speeding would have exonerated or mitigated any findings against the defendants. The jury's failure to adhere to these instructions led both the district court and the circuit court to believe that the jury's verdict was improper. *Edwards*, 512 F.2d at 280 n. 6 & 283. The Fifth Circuit was also critical of plaintiff's counsel's closing argument wherein evidence of a disputed and highly prejudicial admission not of record was emphasized. *Id*. at 283-85. In light of these factors, which the court found "were calculated to prejudice," the jury's passions were inflamed in a manner that could not be attributed as "harmless error." *Id*. at 286.

Again, nothing of this sort occurred in the Barnett trial. Mr. Robinson's closing argument

was focused almost exclusively on liability and causation, not damages.  Only subtle prompting by

the Court elicited the few comments made by Mr. Robinson regarding damages.  Nothing he stated

regarding damages was remotely likely, nor intended to inflame the passions of the jury to provide

an excessive award of damages.   To the contrary, his only request of the jury was that it act

reasonably:

> The Deputy Clerk: Mr. Robinson, you've used one hour.
>
> Mr. Robinson: Okay.  Thank you.
>
> The Court: If you're going to discuss damages, you're going to have to do it.
>
> Mr. Robinson: So now, basically.  Dr. Karavan today says today there is plaque burden.  He testified that he may have had a small heart attack caused by the hypokinesis but did not leave permanent scar.  Dr. Karavan testified that the angiogram might not visualize all segments of the heart like the echocardiogram did.
>
> In any event, the bottom line is he doesn't have the same energy level.  He's got this plaque buildup.  He can walk around, but he's got it all inside of his body.
>
> And his life expectancy has been reduced.  There are studies that show 42 percent of people who had bypass surgery die within ten years.
>
> In any event, I'm going to tell you this on damages.  I think he deserves your verdict.  I think he deserves damages –
>
> Mr. Beck: Your Honor, this is –
>
> Mr. Robinson:  I think the evidence shows that he deserves your verdict.  The evidence shows he deserves damages in this case.
>
> You know, the medical bills are in evidence. you can look at those, but I don't think that's the big part of it here.  I think that, really, his life has been changed. yes, he's tried to live his life properly.  He tried to change his risk factors, modify his risk factors.  He's tried to do everything he can do.  He tried to stay alive to be with his wife and brother and people like that.  But the problem is that vioxx threw him off course, and I think that his life has been   changed forever.
>
> And frankly, I think that he's entitled to a serious level of damages, but I believe it's -- you know, and primarily, they are damages for pain and suffering.  The judge will give you an instruction on that.
>
> And frankly, I don't -- I don't ever -- I don't like to tell the jury how much pain and suffering is worth. you've heard jerry during this case, you've heard what's going on.  I'm asking you to be fair and reasonable to him, to just do the right thing for him, you know, what

> you think is fair.
> That's all I'm asking for.  And that's all he really wants.  This case is
> about principle for him.  So you do what's fair for him.  That's all we
> ask.
> So with that, I thank you for your attention, and I will be back up
> here after Mr. Beck gets to give his closing.

August 20 , 2006, Trial Transcript at 2577-79 (emphasis added).

Where in these few comments is there anything approaching a request of the jury to punish

Merck?  Where is there any comment beseeching the jury to employ passion or prejudice in its

deliberations?  Mr. Robinson's argument makes a simple request:  be fair and reasonable.  Mr.

Robinson never incited the jury to impose any punishment.  Merck has no basis for arguing

otherwise.  Under this scenario, the Court's determination to simply limit the new trial solely to

damages is appropriate.  *See Brunnemann, supra; Edwards, supra; Osburn, supra.*

### 1.   A New Trial Limited to Damages Will Not Run Afoul of the Seventh Amendment

The Seventh Amendment to the United States Constitution provides:

> In Suits at common law, where the value in controversy shall exceed
> twenty dollars, the right of trial by jury shall be preserved, and no
> fact tried by a jury, shall be otherwise reexamined in any Court of the
> United States, than according to the rules of the common law.

U.S. CONST. amend. VII.

Merck contends that the Reexamination Clause of the Seventh Amendment prohibits this

Court from allowing a retrial of Mr. Barnett's claims to occur limited to damages on the grounds that

the damages and liability issues are inextricably intertwined.  There is little to commend for this

argument as there exists a host of well established authority permitting new trials limited to damages

only.  *See, e.g., Brunnemann, supra; Edwards, supra; Osburn, supra.*  Merck therefore attempts to

place this case into the framework of *Gasoline Products Co., Inc. v Champlin Refining Co.*, 283 U.S.

494 (1931), asserting that damages would not be capable of determination without confusion and uncertainty regarding liability.

*Gasoline Products* may be the seminal case on the Reexamination Clause but its facts are hardly illustrative for this case.  In *Gasoline Products*, the plaintiff brought suit upon a breach of contract to recover royalties under a contract with the defendant involving refining devices.  The defendant counterclaimed, including a claim of breach of an oral contract.  As a consequence of the plaintiff's asserted breach of that oral contract, the defendant claimed several types of consequential damages.  At the conclusion of trial, the jury found for both parties but awarded more damages to the plaintiff.  On appeal, the Circuit court found error in the district court's instructions regarding damages for the counterclaim, reversed and remanded with instructions to conduct a new trial limited to damages.  On certiorari, the Supreme Court found that such a trial involving the interplay of two competing claims would be too confusing and ordered a new trial of all issues.

The convoluted nature of the facts in the case led the Supreme Court to its now famous holding:

> Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.  Here the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial. There should be a new trial of all the issues raised by the counterclaim.

*Id*. at 500-501 (citations omitted).  Merck adverts to this standard as being an absolute impediment to the new trial contemplated by this Court.  *Gasoline Products*, however, is distinguishable.

*Gasoline Products* found that retrial of damages alone would not be "distinct" and

"separable" from the facts decided by the jury as to liability. The reason was that the jury would not be able to fix the amount of damages without knowing the terms of the oral contract which it found was breached, but as to which there were differing versions of the terms. Thus, the Court found that the fact issues as to damages were "interwoven" with those found by the jury as to the breach of contract. In contrast, the jury here found all the elements of Mr. Barnett's claim were proven, *i.e.*, duty, negligence, and causation, in finding liability for the negligence claim. All that is left is for a new jury to determine is the quantum of damages. Unlike *Gasoline Products*, there is no uncertainty here as to the facts found by the jury as to the elements of liability. A new trial for damages alone will not require the jury to reexamine the facts found by the first jury as to the elements of liability which are not unknown as they were in *Gasoline Products*. The jury will be free to make fact determinations as to the plaintiff's injuries caused by Merck's negligence, and such fact findings will not in any way reexamine facts found as to liability or be incapable of determination because of unknown critical facts as to liability.

Applying this reasoning, the Manual for Complex Litigation (Fourth) §22.93 at 465 (Fed.Jud.Cntr. 2004)[hereafter "MCL"], proposes that in mass torts, in pursuing test cases, "the judge may conduct a unitary trial, bifurcate liability and damages, or create other helpful trial structures." Merck challenges this reasoning and relies upon *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) and *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), for its support. Even the MCL distinguishes these cases because they involve issues class actions. *See* MCL §22.755 at 433. *See also* Wooley, *Mass Tort Litigation and the Seventh Amendment Reexamination Clause*, 83 Iowa L.Rev. 499, 542 (1988)("A well thought-out bifurcated proceeding, by contrast, should be able to avoid the sort of problem that would have made a limited retrial in

Gasoline Products unfair.").

Commentators and other courts have now rejected the Reexamination Clause defense when it is possible in subsequent cases of a phased trial to use special issues and other court management devices to insure against reexamination of facts decided by the first jury. *See* Sherman, *Segmenting Aggregate Litigation: Initiatives and Impediments for Reshaping the Trial Process*, 25 Rev. of Litigation, 691 (2006), where Professor Sherman explicated this point:

> Undoubtedly issues that are not sufficiently free-standing to warrant separate trial should not be the subject of bifurcation. But presumably a second jury would be instructed that it had to accept the first jury's findings. Judge Rovner, dissenting in *Rhone-Poulenc*, noted that the trial judge could modify severance orders, procedural decisions, and certification rulings to avoid any Seventh Amendment problems. Judge Weinstein commented in *Simon v. Philip Morris* that "there is some doubt about whether a second jury would be reexamining the first jury's findings of the defendant's negligence when it found the plaintiff also contributorily liable to some percentage (assuming that the first jury did not put an end to the case by finding no negligence)." But he also found that reexamination could be avoided in bifurcation by appropriate judicial supervision. *Rhone-Poulenc* and *Castano* have not been followed by most courts which have continued to order bifurcation in appropriate cases, finding no Seventh Amendment problem even as to issues like comparative fault and proximate cause.

*Id.* at 705 (footnotes omitted).

Indeed, even the Fifth Circuit has distinguished its prior rulings in *Castano* and *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (5th Cir. 1978), on precisely this point and approved the trial plan of a personal injury class to proceed on a bifurcated basis (between liability and damages) without running afoul of the Seventh Amendment. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 628-29 (5th Cir. 1999), where the Fifth Circuit held:

> In any case, we would not find the risk of infringing upon the parties' Seventh Amendment rights significant in this case. The Seventh

14

Amendment does not prohibit bifurcation of trials as long as the " 'the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries.' " *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 320 n. 50 (5th Cir.1998) (quoting *Rhone-Poulenc*, 51 F.3d at 1303); *see Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir.1978). In *Castano*, we were concerned that allowing a second jury to consider the plaintiffs' comparative negligence would invite that jury to reconsider the first jury's findings concerning the defendants' conduct. We believe that such a risk has been avoided here by leaving all issues of causation for the phase-two jury. When a jury considers the comparative negligence of a plaintiff, "the focus is upon causation. It is inevitable that a comparison of the conduct of plaintiffs and defendants ultimately be in terms of causation." *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1431 (5th Cir.1983) (en banc); *see id.* (permitting the use of comparative negligence in strict liability claims). Thus, in considering comparative negligence, the phase-two jury would not be reconsidering the first jury's findings of whether Treasure Chest's conduct was negligent or the Casino unseaworthy, but only the degree to which those conditions were the sole or contributing cause of the class member's injury. Because the first jury will not be considering any issues of causation, no Seventh Amendment implications affect our review of the district court's superiority finding.

A retrial in this case limited to damages is permissible and will not violate the Seventh Amendment. *See Mullen, supra.* Mr. Barnett's new trial will necessarily encompass evidence of injury and causation, as well as compensatory and non-economic loss, and culpability for punitive damages, with instructions to the jury from the Court that liability has already been determined. While certainly the jury will revisit some of the same evidence as that employed in the first trial, that is to be expected. *See In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444, 452 n. 5 (3d Cir. 1997)("[The] Seventh Amendment prohibition is not against having two juries review the same evidence, but rather having two juries decide essentially the same issues."). Because the jury can be instructed not to revisit the essential finding of liability and only consider the appropriate quantum of damages, the Seventh Amendment will not be implicated in the next trial.

### C.    THE JURY'S VERDICT WAS NOT INCONSISTENT

Mr. Barnett tried three separate and distinct claims to the jury.  The jury was instructed that each theory was separate and distinct and that each could have been tried separately.  *See* Barnett v. Merck & Co., Inc., Aug. 16, 2006, Trial Transcript at 2653-54.  Nevertheless, because the jury returned a verdict only on the negligent failure to warn and deceit claim, Merck finds the verdict inconsistent with the jury rejecting a finding of strict liability.  Merck disingenuously infers that the "jury found <u>both</u> that Merck negligently and fraudulently failed to warn <u>and</u> that it did not fail to warn."  Merck Brf. at 25 (emphasis supplied).  Merck's argument is specious.

As a threshold matter, even if Merck was correct that the verdict was inconsistent (which as explained below, it is not) Merck's failure to immediately object to the jury's finding prohibits it from raising the matter now.   Since a trial court has the power, before accepting a verdict and discharging the jury, to permit the jury to correct the mistake, the time for Merck to have raised its objection was while the jury was still empaneled.  *See University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 (5th Cir. 1974)("We believe the trial court had the authority to request the jury to correct its verdict. While the problem has arisen infrequently, several courts have held a trial court may order a jury to continue its deliberation if the verdict is contrary to the court's instructions. Similarly if the jury returns two inconsistent verdicts, the trial court may resubmit the issue to them for clarification.").  Having failed to timely do so, Merck's objection is waived.

On the merits, Merck fares no better.  Its objection is simply not well founded.  The jury was fully instructed on both theories of liability addressing Merck's failure to warn.  Fundamentally, because the elements of both theories are so separate and distinct, the jury's failure to find strict

liability had no bearing on the negligent failure to warn claim.

In terms of strict liability the jury was charged that:

> In order to decide this claim, you must determine whether Vioxx was defective and unreasonably dangerous by reason of an inadequate warning; and, if so, whether the use of Vioxx and the absence of adequate warning was a legal cause of the injuries sustained by Gerald Barnett.

August 20 , 2006, Trial Transcript at 2656.  Contrasted against the strict liability claim's findings of defect and unreasonably dangerous condition, the negligence claim's elements were explained to include:

> First, Merck negligently failed to adequately  warn the plaintiff's treating physicians or the medical community of a known or reasonably scientifically or medically knowable risk associated with Vioxx; two, he suffered injuries as a result of Merck's alleged failure to warn; and three, Merck's negligence was the proximate cause of his injuries.

*Id.* at 2660.  Plainly, a different quantum of proof was demanded of Mr. Barnett under these distinct theories regarding the nature of Vioxx (defect vs. knowable risk), the consequence of which, could have and did result in disparate findings by the jury.  However, there is no  inconsistency between the two claims.  The distinctions are fully expected under South Carolina law.

In *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254 (4th Cir. 1998), the Fourth Circuit Court of Appeals reviewed the jury verdict in a products liability case decided under South Carolina law.  The action was premised on the theories of both strict liability and negligence. The jury had found the defendants' product was not defective and unreasonably dangerous, but still found the defendants liable under the negligence theory. The defendants, just like Merck does here, asserted that the jury's verdict was inconsistent.  The Fourth Circuit rejected that argument:

> In this diversity action, we follow the South Carolina appellate

17

> courts' consistent holdings that the doctrines of strict liability and negligence are distinct theories of recovery in a products liability case, and that the denial of liability under one of these doctrines does not automatically preclude the imposition of liability under the other.

*Id*. at 258.

The Fourth Circuit was especially persuaded by the opinion of the South Carolina Court of Appeals in *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 325-26 (S.C.App. 1995), where the state appellate court similarly held:

> Although substantial similarities in analysis exist between strict liability for the sale of defective products and negligence principles of liability, especially in design and inadequate warning cases, differences do exist . . . . Strict liability and negligence are not mutually exclusive theories of recovery; that is, an injury may give rise to claims that can be established either under principles of strict liability or negligence, and failure to prove one theory does not preclude proving the other.

*Id.* (emphasis added).

The reasoning of these cases decided under South Carolina law overwhelms Merck's efforts to distinguish them by reference to *Valentine v. Baxter Healthcare Corp.*, 68 Cal.App.4th 1467 (Cal.App. 1999), decided under the law of California, and other inapposite cases.

As there is no inconsistency in the jury's verdict, this Court's obligation to uphold the jury's verdict to the extent it can be reconciled is not difficult. The absence of an irreconcilable conflict reveals the lack of merit to Merck's position.

## IV.    CONCLUSION

The PSC accepts that the program conceived by the Court to advance the MDL included numerous bellwether trials. Thanks to efforts described in the MCL , academia, and other sources, there is growing importance placed upon test cases to achieve a broad outlook on the merits of mass

tort litigation and the spectrum of liability exposure such cases present.  The MDL bellwether trials have been expensive to conduct but the PSC recognizes that their intended benefits are designed to produce a construct whereby Merck and the litigants can realistically evaluate the liability exposure of Merck by providing a range of potential outcomes.  This Court has now presided over four Vioxx trials, with more to follow.  To disrupt the orderly process contemplated by the Court by throwing out the Barnett liability verdict is counter-productive.

The Court already has years of experience conducting other trials and resolving other cases. Based upon this knowledge the Court could readily ascertain the maximum possible value of Mr. Barnett's claim to propose as a remittitur.  Such a course of action inures to the benefit of the MDL as a whole.  This Court can avoid weeks of additional trial time and the impositions that trial brings through this procedure.  It liberates the Court from engaging in focused binary litigation and allows it to consider the litigation on an aggregate basis.

Shortly, the expected termination of the bellwether trial phase will expire, as only two trials remain.  The demands on this Court's attention imposed by the upcoming plans for the remaining transferred cases – including the anticipated remand of thousands of cases – is fast approaching. Merck has repeatedly announced publicly that its litigation strategy is to have every case tried by a jury.  Merck's public financial disclosures reveal that the company has set aside close to $1 billion for defense costs, but not a penny for compensation, to realize its objectives.  This strategy will require careful consideration by the Court and the litigants as to how best to process remands, whether in stages, in stratified groups, en mass, or some other arrangement.  Given the demands imposed by these considerations, the PSC submits that freeing the Court and the litigants from retrying Mr. Barnett's cases is in everyone's best interest.  We must come to terms with the overall

resolution of the litigation.  Individual trials, while necessary, should not overwhelm, nor upset these orderly proceedings.

For the reasons stated above, the PSC respectfully requests that Merck's Motion for a New Trial on All Issues be denied.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

Date:  November 10, 2006          By: _____

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
PLAINTIFFS' LIAISON COUNSEL

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Drew Ranier. Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**OF COUNSEL:**

Harry T. Lemmon, Esquire **(on brief)**
650 Poydras Street
Suite 2335
New Orleans, LA 70130

Edward F. Sherman, Esquire **(on brief)**
Tulane Law School
Weinmann Hall
6329 Freret Street
Room 216G
New Orleans, LA 70118-6231

21

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of November, 2006.

_____
Leonard A. Davis (Bar No. 14190)
**_Herman, Herman, Katz & Cotlar, LLP_**
201 St. Charles Ave., Suite 4310
New Orleans, LA  70170
PH:    (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com

# EXHIBIT "A"

OCT-02-2006 09:26 From:GERALD D JOWERS ATTY 8037650085          To:8037271059          P.2/4

**FORM 4**

| STATE OF SOUTH CAROLINA | JUDGMENT IN A CIVIL CASE |
|---|---|

COUNTY OF <u>LEXINGTON</u>

IN THE COURT OF COMMON PLEAS

CASE NO. *2003* -CP- *32* - *0675*

_Margaret Sheikh as_
_Pers Rep etc_

_Lexington Medical_
_Center, et al_

PLAINTIFF(S)                                       DEFENDANT(S)

*CHECK ONE*:

[☑] **JURY VERDICT**. This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

[ ] **DECISION BY THE COURT**. This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

[ ] **ACTION DISMISSED** (*CHECK REASON*): [ ] Rule 12(b), SCRCP; [ ] Rule 41(a), SCRCP (Vol. Nonsuit); [ ] Rule 43(k), SCRCP (Settled); [ ] Other _____

[ ] **ACTION STRICKEN** (*CHECK REASON*): [ ] Rule 40(j) SCRCP; [ ] Bankruptcy; [ ] Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award; [ ] Other _____

**IT IS ORDERED AND ADJUDGED**: [ ] See attached order; [ ] Statement of Judgment by the Court:

_Verdict was rendered 8-11-06_

Dated at _Lexington_, South Carolina, this _18_ day of _Aug_, 20 _06_

_____
**PRESIDING JUDGE**

This judgment was entered on the _18_ day of _Sept_, 20 _06_, and a copy mailed first class this _22_ day of _Sept_, 20 _06_ to attorneys of record or parties (when appearing pro se) as follows:

_Gerald Jowers_
_Geoffrey Fieger_
_Rebecca Walsh_

_Weldon Johnson_
_George Bleakley_
_John Hamilton Smith_

_____
ATTORNEY(S) FOR THE PLAINTIFF(S)

_____
ATTORNEY(S) FOR THE DEFENDANT(S)

LCF 583 ( 11/00 )

_____
CLERK OF COURT

**SCRCP APP-24**

SCRCP FORM 4 (Revised 5/00)



## VERDICT FORM

### LIABILITY

PLEASE PLACE AN X AS TO EACH DEFENDANT YOU FIND LIABLE TO THE PLAINTIFF

WE THE JURY FIND AGAINST:       __X__ Defendant Lexington Medical Center

_____ Defendant Dr. Gross/Midlands Orthopedics PA

__X__ Defendant Dr. Cappell

IF YOU FOUND AGAINST ONE OR MORE DEFENDANTS GO ON TO DAMAGES.

### DAMAGES

TOTAL ACTUAL DAMAGES          $ _30,000,000_

_Thirty Million Dollars_

IF YOU FOUND AGAINST DEFENDANT LEXINGTON MEDICAL CENTER GO TO PROPORTION OF LIABILITY.

### PROPORTION OF LIABILITY:

DEFENDANT LEXINGTON MEDICAL CENTER          _98_ %

DEFENDANT DR. GROSS/MIDLANDS ORTHOPEDIC PA          _0_ %

DEFENDANT DR. CAPPELL          _2_ %

YOUR PERCENTAGES MUST EQUAL 100%

### PUNITIVE DAMAGES

(ANSWER THIS QUESTION ONLY IF YOU FOUND AGAINST DR. GROSS AND / OR DR. CAPELL)

DEFENDANT DR. GROSS/MIDLANDS ORTHOPEDIC PA     $ _0_

DEFENDANT DR. CAPELL          $ _0_

Date: _8-11-06_          Foreperson _Lacey Stanfield_

'NKE

Beth A. Carigg
Clerk of Court
Lexington, SC

2006 SEP 18 PM 4: 22

Filed



## SPECIAL INTERROGATORY TO
## JURY REGARDING LEXINGTON MEDICAL CENTER

As to Lexington Medical Center, please indicate the employee(s) you found to be liable.

Place an X next to one category only.

__X__    Nurses only

_____    Emergency physician participating in Mayday Code only

_____    Nurses and emergency physician

8-11-06     _Lacey Stanfield_
            Foreperson