UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF IRA J. GELB, M.D., F.A.C.C.**

**(EXPERT CHALLENGE NO. 1)**

In his opposition to Merck's motion to preclude Dr. Gelb from testifying that Vioxx® caused plaintiff's heart attack, plaintiff fails to cure the fatal flaws in Dr. Gelb's general and specific causation opinions.  Dr. Gelb continues to rely on statistically insignificant data and uncertain mechanism hypotheses to support his general causation opinions, and plaintiff is unable to articulate any legally defensible argument which would allow him to do so.  On specific causation, plaintiff does not dispute that he was at serious risk of a heart attack even without Vioxx, and Dr. Gelb cannot identify any facts that support his opinion that Vioxx, rather than Mr. Dedrick's severe preexisting risk factors, was to blame.  Dr. Gelb relies merely on his general cause opinions and on his conclusory assertions that Vioxx was one of the causes.

Plaintiff also is unable to rehabilitate Dr. Gelb's unqualified and unsupported opinions about Merck's warnings in the Vioxx label and otherwise. Merck's motion should be granted.

I.  **PLAINTIFF'S OPPOSITION FAILS TO CURE DR. GELB'S FLAWED GENERAL CAUSATION OPINIONS, WHICH SHOULD BE EXCLUDED.**

A.  **Dr. Gelb Is Not Qualified To Opine On General Causation.**

In its opening brief, Merck set forth the deficiencies in Dr. Gelb's qualifications to opine on general causation. Most notably, Merck pointed out Dr. Gelb's complete lack of *any* clinical or research experience with Vioxx. In his opposition brief, plaintiff attempts to cast Dr. Gelb as an expert on Vioxx based solely on his experience as a cardiologist, one lecture Dr. Gelb gave in China on COX-2s, Dr. Gelb's speaking engagements at "other functions on COX-2 inhibitors" and Dr. Gelb's review of the medical literature on Vioxx. (*See* Pl.'s Opp'n at 1-2, 9.) Merck respectfully submits that plaintiff should not be permitted to rely on Dr. Gelb to prove general causation. Whatever experience Dr. Gelb has as a cardiologist, he is not qualified to opine on the cardiovascular profile of Vioxx.

B.  **Plaintiff Cannot Avoid Dr. Gelb's Admissions About The Lack Of Statistically Significant Data Proving General Causation.**

As Merck argued in its opening brief, plaintiff cannot establish general causation without scientifically reliable evidence that the use of 25 mg of Vioxx for a period of six months is capable of causing heart attacks. Merck pointed out Dr. Gelb's own testimony that: (1) there is no clinical trial showing a *statistically significant* increased risk of cardiovascular events for patients taking 25 mg of Vioxx for less than 18 months, (*see* Oct. 12, 2006 Deposition of Ira J. Gelb, M.D., F.A.C.C. ("Gelb Dep.") at 328:8-18, attached hereto as Ex. A,) and (2) under no circumstances should scientific conclusions be based on statistically insignificant results, (*see id.* at 275:18 - 276:3.) Dr. Gelb's admissions are fatal to his opinions.

Plaintiff nonetheless argues that "there is ample evidence that Vioxx usage at 25 mg for

1

six months or less statistically increases the rate of cardiovascular events." (Pl.'s Opp'n at 10.) Plaintiff does not, and cannot, argue there is any such *statistically significant* evidence, much less any cited by Dr. Gelb himself to support his opinions.  Rather, plaintiff lists a series of data, studies and reports, none of which shows a statistically significant difference in the rate of heart attacks associated with Vioxx as compared to placebo if taken for six months. (*See id.* at 11-12.) Then, without citation to any legal authorities, plaintiff argues that "a scientist may look to the entire body of evidence on a drug to base his opinions related to general causation." (*Id.* at 12.) That, however, is simply not the appropriate test to determine whether plaintiff's experts have set forth a sufficient amount of reliable scientific data to establish general causation.  In fact, the applicable case law, which plaintiff continues to ignore, holds that it is "unreasonable as a matter of law" for an expert to base causation opinions on statistically insignificant data.  *Kelly v. Am. Heyer-Sculte Corp.*, 957 F. Supp. 873, 878 (W.D. Tex. 1997); *see also Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 197 (5th Cir. 1996); *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 311, *modified on reh'g*, 884 F.2d 166 (5th Cir. 1989); *Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 664-65 (M.D. La. 2000); *LeBlanc v. Merrell Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995); *Deluca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990).[1]

### C.  Plaintiff Cannot Avoid The Uncertainty And Unreliability Of The Mechanism Hypotheses On Which Dr. Gelb Relies.

Plaintiff does not dispute in his opposition brief that to prove general causation he must present reliable scientific evidence of the biological mechanism by which Vioxx supposedly can

---

[1] For a further discussion of the absence of scientifically reliable evidence that use of Vioxx at 25 mg for six months is capable of causing thrombotic cardiovascular events, Merck hereby incorporates its concurrently filed Reply Brief in Support of Merck's Motion to Exclude Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk.

cause a heart attack. Although plaintiff continues to proffer Dr. Gelb's mechanism hypotheses – *i.e.*, that "Vioxx is prothrombotic, atherogenic, increases the risk of plaque rupture, and is vasoconstrictive," (Pl.'s Opp'n at 13) – plaintiff still has not, and cannot, identify reliable scientific evidence proving the existence of these mechanisms as they apply to Vioxx. Instead, plaintiff simply argues that Dr. Gelb has read "over 200 studies . . . to support his opinions." (*Id.* at 14.) The few journal articles that plaintiff specifically references do not reliably prove Dr. Gelb's espoused mechanism hypotheses. (*See id.* at 14-16.) Indeed, the language plaintiff quotes from two of the articles demonstrates the uncertainty surrounding the mechanism theories, which are all based in one way or another on the FitzGerald hypothesis:

- "'Thus, *any* deleterious effects of selective COX-2 inhibitors on the course of the atherosclerosis *could* involve three separate processes . . . .'" (*Id.* at 15 (quoting 2003 Rott article) (emphasis added).)

- "[A single mechanism, depression of [PG12] *might* be expected to elevate blood pressure, accelerate atherogenesis, and predispose patients receiving coxibs to an exaggerated thrombotic response to the rupture of an atherosclerotic plaque." (*Id.* at 16 (quoting 2004 FitzGerald article) (brackets in original) (emphasis added).)

The doubt expressed above by Rott and FitzGerald reflects the fact that these mechanism theories are mere hypotheses that have not been proven to the reasonable degree of medical certainty necessary to support a causation opinion here. As noted in Merck's opening brief, even Dr. Gelb testified to the uncertainty of these mechanism hypotheses:

- Dr Gelb testified that the FitzGerald hypothesis is "still a hypothesis" and has not been conclusively proven. (Gelb Dep. at 266:23-267:5.)

- Dr. Gelb admitted at deposition that there have been no human studies proving that Vioxx causes atherosclerosis and that it is "really a hypothesis still that Vioxx causes atherosclerosis." (*Id.* at 262:11-23, 261:24-262:4, 265:8-10.)

- Dr. Gelb could not point to any study that proves Vioxx can cause a plaque rupture to occur. (*See id.* at 298:18-25.)

- Dr. Gelb has never stated the basis for his opinion that Vioxx causes coronary

3

vasoconstriction – an opinion for which there is no scientifically reliable supporting evidence.

Plaintiff completely ignores Dr. Gelb's telling admissions about the lack of certainty of the mechanism theories – admissions which make clear that Dr. Gelb cannot meet the scientific and legal requirements necessary to testify about general causation.

## II. PLAINTIFF'S OPPOSITION FAILS TO SUPPORT DR. GELB'S CONCLUSORY SPECIFIC CAUSATION OPINIONS.

### A. Plaintiff's Opposition Confirms That Dr. Gelb's Specific Cause Opinion Is Based Merely On Conclusory Assertions And His General Cause Opinions.

Merck does not disagree that Dr. Gelb *claims* to know "to a reasonable degree of medical certainty" that Vioxx caused plaintiff's heart attack. Indeed, that is the very opinion that Merck seeks to exclude. Yet, in his opposition brief, plaintiff merely reiterates that Dr. Gelb is certain that Vioxx caused plaintiff's heart attack. (*See* Pl.'s Opp'n at 16.) Other than Dr. Gelb's conclusory reassurances, neither plaintiff nor Dr. Gelb have ever identified any facts that support Dr. Gelb's opinion that Vioxx caused plaintiff's heart attack. Neither plaintiff nor Dr. Gelb has ever identified any methodology, test or any other evaluation that Dr. Gelb employed that supports his specific causation opinion, or that even distinguishes plaintiff's heart attack from many others which occurred in people who never took Vioxx. As Merck noted in its opening brief, Dr. Gelb testified again and again that he could not identify anything about plaintiff's condition that suggested Vioxx contributed in any way to his heart attack. (See Merck's Opening Brief at 12-14.) Plaintiff fails to address any of this testimony. Plaintiff merely provides the Court with Dr. Gelb's general causation opinions and Dr. Gelb's assurances that he is certain that Vioxx is responsible for plaintiff's heart attack. That is not enough to permit Dr. Gelb to testify about specific causation.

The only fact that plaintiff points to as somehow proving to a reasonable degree of

4

medical certainty that Vioxx caused plaintiff's heart attack is the size of plaintiff's thrombus. (*See* Pl.'s Opp'n at 4, 17.)  Plaintiff identifies no evidence that Vioxx causes or even is associated with heart attacks resulting from a larger than usual thrombus.  Even more telling, plaintiff mischaracterizes Dr. Gelb as having testified that the "unusually large thrombus observed on Plaintiff Dedrick's film is additional evidence that the thrombus was caused by Vioxx and that Vioxx was a substantial contributing factor in the thrombus formation and resulting heart attack." (*See id.* at 4 (citing Gelb Dep. at 201).)  Although Dr. Gelb testified that plaintiff's thrombus was unusually large, *he did not testify* that the size of the thrombus itself is evidence that it was caused by Vioxx:

> Q. Okay. Doctor, you've offered the opinion that his thrombus was unusual, correct?
>
> A. Well, the word "unusual" -- it should be you expect it to be minimal, if not seen at all, two days later.
>
> Q. So what's unusual about his thrombus was that it was bigger than you would have expected to see?
>
> A. Yes.
>
> Q. Is there anything else that was unusual about the thrombus?
>
> A. No.

(Gelb Dep. at 201:10-19.)

In fact, as noted in Merck's opening brief, on the very next page of the deposition transcript Dr. Gelb was asked specifically whether there was anything about the appearance of plaintiff's thrombus indicating that it was caused by Vioxx, and Dr. Gelb testified there was not:

> Q. So, was there anything in the appearance of the thrombus that indicated to you that it was caused by Vioxx?
>
> A. No.

(*Id.* at 202:6-8.)  The fact that plaintiff resorted to mischaracterizing Dr. Gelb's testimony to find

5

a way to somehow support Dr. Gelb's specific causation opinion speaks volumes.  Dr. Gelb cannot be permitted to testify that Vioxx caused plaintiff's heart attack.

### B. In Light Of Plaintiff's Other Numerous Risk Factors, Dr. Gelb Cannot Reliably Opine That Vioxx Caused Plaintiff's Heart Attack.

Not once in his opposition brief does plaintiff deny that he was at serious risk of having a heart attack regardless of Vioxx.  Plaintiff admits that Dr. Gelb "conceded" that plaintiff's "other cardiovascular risk factors likely contributed to the development of atherosclerosis and, indirectly, to his heart attack." (Pl.'s Opp'n at 17.) (As pointed out in Merck's opening brief, Dr. Gelb actually testified that the plaintiff's risk factors *did* contribute to his heart attack, not that they merely "likely" contributed. (*See* Gelb. Dep. at 157:1-159:14.)

In the face of all the other admitted causes of plaintiff's heart attack, plaintiff argues that "Tennessee law does not require that a medical expert rule out all other causes of an event; rather, Tennessee law permits proof and evidence that an event was one cause of among many, and not the *sole* proximate cause of the plaintiff's injuries." (Pl.'s Opp'n at 17 (citing *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005)).)  Plaintiff avoids saying that Tennessee law requires that he prove he would not have suffered the heart attack "but for" Vioxx.  The "but for" standard is clearly stated even in the *Hale* case that plaintiff cites:

> The defendant's conduct is the cause in fact of the plaintiff's injury if, as a factual matter, it directly contributed to the plaintiff's injury. In a case such as this one, we must ask whether the plaintiff's injury would have happened "but for" the defendants' act. *See Wood v. Newman, Hayes & Dixon Ins. Agency*, 905 S.W.2d 559, 562 (Tenn. 1995). If not, then the defendants' conduct is a cause in fact of the plaintiff's injury.  It is not necessary that the defendants' act be the sole cause of the plaintiff's injury, only that it be a cause.

*Hale*, 166 S.W.3d at 718 (emphasis removed).

Given Dr. Gelb's inability to identify anything other than his general cause opinions to support his view that Vioxx caused plaintiff's heart attack, and given the many serious

6

preexisting risk factors facing plaintiff that had nothing to do with Vioxx, Dr. Gelb cannot be permitted to opine at trial on specific causation, particularly not in a case governed by Tennessee law, which requires plaintiff to prove that he would not have suffered the heart attack but for Vioxx.[2]

### III. DR. GELB CANNOT BE PERMITTED TO TESTIFY ABOUT THE ADEQUACY OF MERCK'S WARNINGS IN THE LABEL OR OTHERWISE.

Nothing in plaintiff's opposition supports permitting Dr. Gelb to opine that Merck "attempted to minimize the perception of the cardiovascular risk associated with Vioxx" in the medical literature. (Sept. 15, 2006 Expert Witness Report of Ira J. Gelb, M.D., F.A.C.C. ("Gelb Rpt.") at 6, attached hereto as Ex. B.) Dr. Gelb is not qualified to testify about what Merck "attempted" to do in the articles it published in peer-reviewed journals. Plaintiff also fails to identify any methodology, research, or standard against which the Court can assess the reliability of Dr. Gelb's opinion that Merck's warnings and publications were inappropriate.

Nor should Dr. Gelb be permitted to opine that information from VIGOR about the difference in incidence of coronary events between Vioxx and naproxen users should have been included in the "warnings" section of the Vioxx label as opposed to the "precautions" section. (Gelb Dep. at 314:4-322:3.) First, plaintiff does not address Dr. Gelb's complete lack of experience working with either the FDA or pharmaceutical companies on prescription drug labels. (*See id.* at 21:11-22:2, 22:24-23:19.) Nor does plaintiff address Dr. Gelb's admission that he is not considered an expert on FDA regulations for drug labeling. (*See id.* at 22:3-6.) Plaintiff merely relies on Dr. Gelb's experience as a cardiologist and as an editor of medical

---

[2] Plaintiff does not dispute that without scientifically reliable evidence of general causation, Dr. Gelb cannot be permitted to testify that Vioxx caused plaintiff's heart attack. That point is not controversial. Accordingly, because plaintiff cannot establish general cause, Dr. Gelb's specific causation opinion must be excluded for this additional reason as well.

journals to qualify him as an expert to testify about the adequacy of the Vioxx label. (See Pl.'s Opp'n at 17-19.) That is not enough, and Dr. Gelb's opinions about the label should be excluded based on his lack of qualifications alone.

Moreover, Merck's opening brief pointed out that Dr. Gelb failed to apply any established standards or methodology in arriving at his opinions about whether doctors distinguish between precautions and warnings, and plaintiff fails, in his opposition, to dispute this point. Dr. Gelb's opinion on the adequacy of Vioxx's warning, therefore, must be deemed a mere personal opinion. *See*, *e.g.*, *Turpin v. Merrell Dow Pharms.*, *Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001). Plaintiff also fails to address the fact that Dr. Gelb's opinion is at odds with the FDA's recent abolition of the distinction between precautions and warnings. *See Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products,* 71 Fed. Reg. 3922, 3939 (Jan. 24, 2006) (to be codified at 21 C.F.R. Parts 201, 314, and 601). Dr. Gelb should not be permitted to attest to his unfounded opinions about the adequacy of the Vioxx label at trial, particularly given that it directly contradicts what the FDA determined was appropriate.

## IV.     CONCLUSION

For the reasons stated above and in Merck's opening brief, Merck respectfully requests that this Court grant Merck's Motion for Order Excluding Testimony of Ira J. Gelb, M.D., F.A.C.C.

Dated:  November 14, 2006                               Respectfully submitted,


                                                        s/ Dorothy H. Wimberly
                                                        Phillip A. Wittmann, 13625

8

Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

9

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck & Co., Inc. ("Merck") For Order Excluding Testimony of Ira J. Gelb, M.D., F.A.C.C. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 14th day of November, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel