UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") TO EXCLUDE TESTIMONY OF LEMUEL A. MOYE, M.D., PH.D.**

**(EXPERT CHALLENGE NO. 4)**

Plaintiff's opposition to Merck's motion to exclude some testimony of Dr. Moye relies entirely on an effort to parlay Dr. Moye's experience in biostatistics and epidemiology into support for his purported expert testimony in *unrelated* areas. As discussed in Merck's motion, Dr. Moye's experience in biostatistics does not qualify him to testify as an expert on many of the subjects on which he purports to opine and he is unable to support those opinions with reliable scientific evidence. Plaintiff's opposition brief − including his efforts to compare Dr. Moye to previously admitted experts with vastly different training and experience − does nothing to salvage these opinions, which include:

- Dr. Moye's conclusion that Vioxx is unreasonably dangerous at any dose or duration, particularly as he can identify no statistically significant clinical data supporting his opinion;

- his theories on the pharmacological mechanisms by which Vioxx® purportedly can accelerate cardiovascular disease, particularly as he admits there is no clinical study supporting his opinion on this subject;

- his conclusion that Vioxx is the "worst" COX-2 inhibitor, particularly as he admits to having not reviewed the relevant clinical studies of other COX-2 inhibitors;

- his opinion that Merck committed scientific misconduct or was unethical in relation to the publication of the VIGOR data;

- his critique of the FDA-approved Vioxx label; and

- his opinions concerning Merck's motives, intent, or state of mind, subjects on which, despite plaintiff's efforts to otherwise characterize them, Dr. Moye has made clear he intends to opine.

As discussed in Merck's Motion, Dr. Moye must not be allowed to salvage his unsupported scientific opinions by relying on either statistically insignificant evidence or the "all-cause" mortality data from the Alzheimer's studies – data which he admits reflects events that are irrelevant to the effects of Vioxx use.  Plaintiff has neglected to even respond to this argument, and Dr. Moye should, accordingly, be precluded from offering either statistically insignificant data or the irrelevant "all-cause" mortality figures as support for his opinions.

I. **DR. MOYE'S OPINION THAT VIOXX IS UNREASONABLY DANGEROUS FOR ANY PATIENT AT ANY DOSE IS NOT SUPPORTED BY ANY RELIABLE SCIENTIFIC EVIDENCE.**

Nothing in plaintiff's opposition changes the fact that Dr. Moye cannot cite *any* clinical studies providing statistically significant evidence supporting his opinion that Vioxx "is unsafe at any dose/duration combination in any patient *regardless* of their underlying risk for cardiovascular disease" (Sept. 15, 2006 COX-2 Inhibitor Report of Lemuel A. Moye, M.D., Ph.D. ("Moye Rpt."), attached to Merck's Motion as Ex. A, at ¶ 25 (emphasis added)), an

1

opinion that should thus be excluded. (*See* Merck's Mot. at 10-11.)

Plaintiff fails to even address Merck's challenge to Dr. Moye's claim that statistical significance "is irrelevant" in his decision to rely on certain studies. (Merck's Mot. at 3.) As Merck argued in its Motion, plaintiff has the burden of proof, which requires that he establish causation by *statistically significant* epidemiological proof and expert causation testimony must be excluded if it is not based on such proof. (*See id*.) Plaintiff's choice to ignore Merck's argument does nothing to remedy the root issue – Dr. Moye cannot identify any statistically significant epidemiological proof to support his opinion. It must be excluded.

Nor can Dr. Moye rely on the "all-cause mortality" data from the Alzheimer's studies to support his opinion that Vioxx is unsafe at any dose or duration, a point which plaintiff has also not attempted to refute in his opposition. (Merck's Mot. at 4.) The relevant data from the Alzheimer's studies, as Dr. Moye admits, does not show an increased risk of cardiovascular events for patients using Vioxx, and thus does not support his opinions. (*See id*.) As plaintiff fails to address this fact, Dr. Moye must be precluded from basing any of his opinions on this irrelevant "all-cause mortality" data. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert.").

Even if there were studies providing statistically significant data supporting Dr. Moye's overbroad conclusion, nothing in plaintiff's opposition changes the fact that Dr. Moye is wholly unqualified to offer this opinion. (Pl.'s Opp'n at 7.) A risk-benefit analysis requires knowledge about both Vioxx and alternative therapies. Dr. Moye testified that he did not review the medical literature for other COX-2 inhibitors, he has never discussed Vioxx with other physicians who prescribed it, and he has not talked to a single person who had taken Vioxx to learn about that person's experience. (*See* Merck's Mot. at 11-12; *see also* June 2, 2006 Deposition of Lemuel

2

A. Moye, M.D., Ph.D. ("June 2, 2006 Moye Dep.") at 78:20-79:14; 80:2-16; 81:22-82:1, attached hereto as Ex. A.)  Accordingly, he has no relevant experience to inform a risk-benefit analysis for Vioxx.  (*See* Merck's Mot. at 12 and related comparison with experience of Dr. Silver.)

## II. DR. MOYE IS NOT QUALIFIED TO OFFER EXPERT OPINION ON HYPOTHETICAL PHARMACOLOGICAL MECHANISMS AND HIS OPINION ON THIS SUBJECT IS NOT SUPPORTED BY ANY CLINICAL EVIDENCE.

Plaintiff's claim that Dr. Moye been involved in "investigations that concern the risk of cardiovascular events, neurological events, and atherosclerotic events" (Pl.'s Opp'n at 8)  does nothing to change the fact that Dr. Moye has no expertise that would qualify him to explain the pharmacological mechanism by which Vioxx purportedly causes cardiovascular events.  (*See* Merck's Mot. at 6.)  As Merck explained in its motion (*see* Merck's Mot. at 6), Dr. Moye's use of his experience in biostatistics to help design clinical trials does not mean he is qualified to testify about the *biological mechanism* by which Vioxx allegedly causes heart attacks – consequently, his testimony should be limited to issues of study design, relative and attributable risk, and statistical interpretation of the data from studies he reviewed.

Plaintiff seeks to equate Dr. Moye's experience with that of Dr. Ray.  However, while Dr. Ray "has conducted several studies of the gastrointestinal and cardiovascular safety of NSAIDs and COX-2 inhibitors" (*id*.),  Dr. Moye has no equivalent experience.  (June 2, 2006 Moye Dep. at 88:22-89:1.)  The Court should reject plaintiff's efforts to equate Dr. Moye with Dr. Ray.

Even if Dr. Moye had the expertise to testify on pharmacological mechanism, nothing in plaintiff's opposition remedies the fact that Dr. Moye cannot provide any data supporting his theory or adequately explain his methodology.  By way of comparison, Dr. Ray actually purported to identify scientific data in support of his opinions, and he "point[ed] to the *raw data* of these studies as support for his conclusion." *Plunkett*, 401 F. Supp. 2d at 586 (emphasis

3

added).  Dr. Moye certainly does not rely on raw data and, in fact, has *admitted* that he knows of *no clinical studies supporting his theory that Vioxx advances cardiovascular disease by disturbing the prostacyclin/thromboxane balance*.  (Merck's Mot. at 8-9.)   In fact, all Dr. Moye can offer for support is "[his] understanding of how these mechanisms work."  (June 2, 2006 Moye Dep. at 299:7-301:14.)  Dr. Moye's inexpert opinion is unreliable speculation, and must be excluded.  Plaintiff has other experts who will testify on this subject and who are far more qualified.

### III.  DR. MOYE LACKS THE EXPERTISE TO COMPARE VIOXX WITH OTHER COX-2 INHIBITORS AND THERE IS NO RELIABLE SCIENTIFIC EVIDENCE SUPPORTING HIS OPINION THAT VIOXX IS THE "WORST" COX-2 INHIBITOR.

As explained in Merck's Motion, because Dr. Moye admits that he has not performed an adequate review of medical literature concerning COX-2 inhibitors, he is not in a position to discuss how the CV risks associated with Vioxx compare to the CV risks of other similar medications, nor to offer the opinion that "Vioxx is the worst" of all the COX-2 inhibitors.  (June 2, 2006 Moye Dep. at 394:11-18.)  Plaintiff now attempts to obfuscate this point by lumping COX-2 inhibitors with all NSAIDs.  For example, plaintiff states in his opposition that Dr. Moye "review[ed] the scientifically relevant literature on Vioxx and other NSAIDs."  (Pl.'s Opp'n at 12 (citing June 2, 2006 Moye Dep. at 35:2-20).)  This is misleading.  The specific testimony that Merck seeks to exclude is Dr. Moye's opinion that Vioxx is the worst *of the COX-2 inhibitors*. (*Id*. at 394:11-18.)  The issue, therefore, is whether Dr. Moye is knowledgeable about Celebrex® and Bextra®, the other COX-2 inhibitors.  He is not, and admits as much.  (*See* Merck Mot. at 13-14; s*ee also* June 2, 2006 Moye Dep. at 207:14-208:6; 368:22-369:24.)[1]  Plaintiff's vague

---

[1] Notably, the FDA, which did undertake a comprehensive review and analysis of data regarding COX-2 inhibitors, concluded that "[t]he available data do not permit a rank ordering of these
(*footnote continued next page*)

4

claim that Dr. Moye "relied upon his own training, knowledge, and experience in the areas of biostatistics and epidemiology" to conclude that Vioxx is the worst of the COX-2 inhibitors does nothing to remedy his lack of relevant expertise. (Pl.'s Opp'n at 12-13.)

Finally, plaintiff's efforts to rely on this Court's prior ruling allowing Dr. Silver to testify about the differences between the COX-2 inhibitors is misplaced. (Pl.'s Opp'n at 11-12.) Dr. Silver is a rheumatologist and the Director of the Chronic Pain Rehabilitation Program at Cedars-Sinai Medical Center in Los Angeles, California. *Plunkett*, 401 F. Supp. 2d at 582. He had "years of experience in treating his patients' cardiac conditions," was involved in over 20 clinical trials pertaining to COX-2 inhibitors, "authored a number of publications and [has] given over 200 lectures on the subject of NSAIDs and COX-2 inhibitors over the course of his career," and, because of this experience, was allowed to testify "regarding chronic pain and the risk/benefit calculations of COX-2 inhibitors." *Id.* Dr. Moye, meanwhile, has no personal clinical experience with Vioxx or any other COX-2 inhibitor, has not been involved with any clinical trials involving COX-2 inhibitors, and he has never lectured on NSAIDs, COX-2 inhibitors, or pain management. (June 2, 2006 Moye Dep. at 95:1-4; 95:9-96:2.) Plaintiff's argument by analogy simply cannot support the admissibility of Dr. Moye's testimony on this subject.

### IV. DR. MOYE'S SUBJECTIVE MORAL OPINION ON MERCK'S ACTIONS ARE NOT EXPERT OPINION AND SHOULD NOT BE ADMITTED.

Plaintiff argues that Dr. Moye's experience with peer-reviewed journals and his 120 published articles transform his opinion on morality into relevant or acceptable expert testimony. (Pl.'s Opp'n. at 14.) Plaintiff is wrong. Dr. Moye's beliefs about what Merck should have done

---

drugs with regard to CV risk." (April 2005 FDA Decision Memorandum at 3.)

5

are inadmissible. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (finding "expert opinion as to the ethical character of [defendants'] actions simply is not relevant to these lawsuits."); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *8 (E.D. Pa. Feb. 1, 2001) (finding irrelevant whether "pharmaceutical company has fulfilled its ethical requirements").

## V.  DR. MOYE IS NOT QUALIFIED TO OFFER EXPERT OPINION ON THE ADEQUACY OF PRESCRIPTION DRUG LABELS.

Plaintiff ignores Dr. Moye's frank admission that he is *not* an expert in the federal regulations that govern prescription drug labeling. (June 16, 2006 Moye Dep. at 626:17-627:4, attached hereto as Ex. B.)  The creation or modification of a pharmaceutical warning label is not an area for those without specific expertise. *Henley v. FDA*, 77 F.3d 616, 621 (2d Cir. 1996) ("The FDA possesses the requisite know-how to conduct such analyses, by sifting through the scientific evidence to determine the most accurate and up-to-date information regarding a particular drug, and how those data affect human usage."); 71 Fed. Reg. 3922, 3935 (Jan. 24, 2006) ("[L]abeling that includes theoretical hazards . . . can cause meaningful risk information to lose its significance . . . .  Overwarning, just like underwarning, can similarly have a negative effect on patient safety and public health.")  (internal quotation marks and citations omitted).

Moreover, despite plaintiff's protestations to the contrary, testimony concerning the 1999 label is irrelevant to this case, because the operative label at the time plaintiff used Vioxx was the 2002 label.  It is, accordingly, only the adequacy of the 2002 label that is at issue.

## VI.  DR. MOYE'S TESTIMONY CONCERNING MERCK'S INTENT OR STATE OF MIND MUST BE EXCLUDED.

Plaintiff claims that he "does not intend to solicit testimony from Dr. Moye regarding the motive and intent behind Merck's actions of inactions." (Pl.'s Opp'n at 15.)  But plaintiff fails to address Dr. Moye's testimony to the contrary.  (June 2, 2006 Moye Dep. at 83:20-24 ("I think it

6

became clear to me what they weren't doing, so, I suppose I am going to speak to some degree about the motives."), 84:22-85:3 ("Q. Are you offering any opinions that Merck intended to hurt patients or intended to mislead the FDA? . . . A. I think I am."), 85:18-24 ("I think I can probably speak most clearly about Merck's intent.  And I believe Merck's intent was not to provide a fair, clear assessment of the relationship between Vioxx and cardiovascular events"); Moye Rpt. at ¶¶ 89, 192, 195, 198.)  For the reasons stated in Merck's motion, the Court should order that Dr. Moye may not offer testimony on intent, motive, or state of mind.  (Merck's Mot. at 14-15.)  As explained in Merck's motion, previous courts have excluded Dr. Moye's proposed testimony on this subject, and this Court should as well.

Finally, plaintiff's attempts to equate Dr. Moye with Drs. Kapit and Arrowsmith-Lowe are misguided.  (Pl.'s Opp'n at 16.)  In *Plunkett*, based on their FDA experience, the two other doctors were directed to "focus on the significance of certain documents and how these documents fit into the FDA's regulatory scheme."  *Plunkett*, 401 F. Supp. 2d at 595.  That was not a license to provide expert testimony of "what Merck knew and when," rather it was the admission of expert testimony concerning the FDA's regulatory scheme.  Moreover, plaintiff does not even attempt to establish that Dr. Moye has similar extensive "knowledge and expertise of FDA procedures, regulations, and regulatory guidelines."  *Id*. at 594.  As have previous courts (*see* Merck's Mot. at 15), this Court should deny plaintiff's efforts to offer Dr. Moye's "expert" testimony on what is properly an issue of fact for the jury's determination.

## VII. CONCLUSION

For the reasons stated above and in its moving papers, Merck respectfully requests that the Court preclude Dr. Moye from offering expert testimony: (i) on or based upon statistically insignificant data; (ii) about the irrelevant "all-cause mortality" data from the Alzheimer's clinical trials; (iii) concerning the mechanisms by which Vioxx allegedly causes injury;

(iv) suggesting that Vioxx is dangerous at any dose and duration for any potential user; (v) purporting to explain the risk-benefit analysis involved in prescribing Vioxx; (vi) concluding that Vioxx is more dangerous than all other similar drugs; (vii) critiquing the ethics of Merck's actions; (viii) challenging the adequacy of the FDA-approved Vioxx label, and (ix) concerning Merck's intent or state of mind.

Dated:  November 14, 2006                                        Respectfully submitted,


                                      s/ Dorothy H. Wimberly
                                      Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

8

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:    213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck & Co., Inc. ("Merck") To Exclude Testimony of Lemuel A. Moye, M.D., Ph.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 14th day of November, 2006.

                                                                                   */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel