UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK") FOR ORDER EXCLUDING TESTIMONY OF DONNA K. ARNETT, PH.D., M.S.P.H.**

**(EXPERT CHALLENGE NO. 3)**

In his opposition brief, plaintiff does not dispute that to prove general causation he must show that Vioxx® is capable of causing a heart attack if used at 25 mg per day for six months, as plaintiff did before he suffered a heart attack.  In an effort to meet that burden, plaintiff proffers Dr. Arnett's opinions that (1) Vioxx is "cardiotoxic," meaning that it is "associated with an increased risk of cardiovascular events" (Deposition of Donna Arnett, Ph.D. ("Arnett Dep.") at 200:13-17, attached as Ex. A), and (2) "the cardiovascular risk from Vioxx is present in short term usage and is continuous" (Expert Report of Donna Arnett, Ph.D. ("Arnett Rpt.") at 3).  Plaintiff does not deny that Dr. Arnett bases her opinions squarely and solely on statistically insignificant data.  Thus, the first issue for the Court is whether plaintiff can meet his burden of

proof on general causation by proffering expert opinions that are not based on statistically significant data. The answer is no. Opinions like Dr. Arnett's that are based on raw numeric events cannot, as a matter of law, prove causation by a preponderance of the evidence. The cases Merck cites in its opening brief support that conclusion. Plaintiff not only ignores those cases, but he fails to cite any legal authority supporting his ability to prove causation in the absence of statistically significant data.

If the Court were to disregard applicable case law and resolve the statistical significance question in plaintiff's favor, Dr. Arnett's opinions would nevertheless be inadmissible to prove general causation given that she bases them on uncertain biological mechanism hypotheses. Plaintiff's opposition brief fails to identify any reasonably certain biological mechanism on which Dr. Arnett relies. The brief also fails to address the legal authorities Merck cites, which require scientifically reliable evidence of an established biological mechanism to prove general causation.

A separate issue raised by this motion is whether Dr. Arnett should be permitted to opine on the adequacy of Merck's warnings in the peer-reviewed medical literature after the VIGOR trial, even though she unequivocally is not an expert on warnings. Plaintiff focuses much of his opposition reciting Dr. Arnett's background and experience. But while Dr. Arnett may be an experienced epidemiologist, this hardly provides her with the qualification to be an expert witness on warnings. Moreover, even if she were qualified, plaintiff's opposition is silent on the other incurable problems with Dr. Arnett's warnings opinion, namely that she bases it on the uncertain biological mechanisms referenced above and on her uninformed opinion that naproxen did not have a cardioprotective effect in the VIGOR trial. Plaintiff also ignores Dr. Arnett's admission that the medical community was aware of the possible risks she claims Merck should

have more clearly disclosed in the Bombardier VIGOR article.

In short, plaintiff's opposition brief consists largely of regurgitation of Dr. Arnett's opinions. It does not address the serious flaws in those opinions, which cannot withstand judicial scrutiny. Merck's motion must be granted.

I.  **PLAINTIFF'S OPPOSITION FAILS TO ESTABLISH THAT DR. ARNETT'S OPINIONS ARE ADMISSIBLE TO PROVE GENERAL CAUSATION.**

   A.  **Dr. Arnett's Opinions Are Inadmissible To Prove General Causation Because They Are Based On Statistically Insignificant Data.**

In its opening brief, Merck argued that Dr. Arnett's opinions are inadmissible to prove general causation because Dr. Arnett cannot identify any clinical data showing a *statistically significant* difference in the rate of heart attacks associated with Vioxx as compared to placebo if taken for six months. Plaintiff cannot dispute the absence of such data, and he does not attempt to do so in his opposition brief. Instead, recognizing that Dr. Arnett bases her general causation opinions on a series of studies that do not show a statistically significant relationship at the dose and duration at issue in this case, plaintiff argues, in essence, that statistical significance is not important. (*See* Pl.'s Opp'n at 8.) Plaintiff does not cite a single legal authority to support that argument and relies merely on Dr. Arnett's own bare assertions that as an epidemiologist she was "trained to pursue causation in a much broader scope than statistically significant" and that with safety issues "numerical risk is incredibly important." (*See id.* (quoting Oct. 20, 2006 Arnett Dep. at 39:4-6, 44:2-3).) Even if Dr. Arnett is right, *pursuing* a causation explanation in the scientific realm does not amount to *proving* causation in federal court, whether the issue is safety or something else. Indeed, it is "unreasonable as a matter of law" for an expert to base causation opinions on statistically insignificant data. *Kelly v. Am. Heyer-Sculte Corp.*, 957 F. Supp. 873, 878 (W.D. Tex 1997); *see also Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 197 (5th Cir. 1996); *Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 311, *modified on reh'g*, 884 F.2d 166 (5th

2

Cir. 1989); *Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 664-65 (M.D. La. 2000); *LeBlanc v. Merrell Dow Pharms., Inc.*, 932 F. Supp. 782, 784 (E.D. La. 1996); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995); *Deluca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990). Plaintiff does not address any of these authorities, all of which Merck cited in its opening brief.

In a further effort to somehow excuse Dr. Arnett's reliance on statistically insignificant studies, plaintiff argues, based on Dr. Arnett's "power calculations," that a "majority" of those studies were "under-powered" to detect a statistically significant relationship between Vioxx and cardiovascular events. (*See* Pl.'s Opp'n at 9-11.) Even assuming Dr. Arnett's power calculations are correct, the fact remains that Dr. Arnett is relying on statistically insignificant studies to prove causation. Simply because those studies may not have been designed, in some cases, to detect a statistically significant relationship between Vioxx and cardiovascular events, Dr. Arnett cannot assume the opposite – that such a relationship must exist – and thereby prove causation. Although plaintiff blames Merck for under-powering the studies, it is plaintiff's burden to prove general causation. He cannot do so by proffering an expert opinion that is based on studies that cannot reliably exclude the possibility that chance was responsible for any alleged correlation Dr. Arnett claims to have found.

### B. Dr. Arnett's Opinions Are Inadmissible To Prove General Causation Because They Are Based On Uncertain Biological Mechanisms.

In addition to Dr. Arnett's reliance on statistically insignificant data, Merck's motion to exclude Dr. Arnett's general causation opinions is based on the uncertainty of the biological mechanisms on which Dr. Arnett relies, specifically increased blood pressure and the FitzGerald hypothesis. Plaintiff does not attempt to refute the fact that these mechanism hypotheses are uncertain. (*See* Pl.'s Opp'n at 8.) Instead, plaintiff argues that Dr. Arnett relies on other

3

"causative elements supporting the elevated risks of cardiovascular events" in addition to increased blood pressure and the FitzGerald hypothesis. (*Id.*) However, none of these other so-called "causative elements" amounts to reliable proof of biological mechanism.

Plaintiff first notes that Dr. Arnett identified the "higher dropout rate for Vioxx patients in the clinical trials" as a "causative element." (Pl.'s Opp'n at 8.) Setting aside the vagueness and overbreadth of this statement, the fact of higher dropout rates, even if true, does not explain the biological mechanism underlying plaintiff's theory that Vioxx causes heart attacks. Plaintiff's first argument is a nonsequitur.

Second, plaintiff argues that Dr. Arnett opined that "elevated blood pressure is a known contributor to cardiovascular disease." (Pl.'s Opp'n at 8.) This argument ignores Dr. Arnett's admission, emphasized in Merck's opening brief, that blood pressure does not explain the cardiovascular risk that she associates with Vioxx. (*See* Sept. 6, 2006 Arnett Dep. at 137:9 – 138:18).[1]

Finally, plaintiff argues that "Dr. Arnett noted that Vioxx had other known mechanisms of action, including thrombus formation, promotion of atherosclerosis, and plaque rupture." (Pl.'s Opp'n at 8.) That argument avoids the issue. The question is by what *biological mechanism* can Vioxx supposedly cause a thrombus to form, promote atherosclerosis, or cause a plaque to rupture. Dr. Arnett fails to identify any. Moreover, Dr. Arnett's opinions about

---

[1] Plaintiff mocks Merck for being "critical of Dr. Arnett's opinions relative to Vioxx's known effects on blood pressure," while still contending that plaintiff's high blood pressure was a risk factor possibly contributing to his heart attack. (Pl.'s Opp'n at 8, fn.6.) Plaintiff misses the point. While high blood pressure is a known heart attack risk factor, even Dr. Arnett agrees that there are no epidemiology studies that she can point to that "looked at patients for six months, and . . . found six months of raising your blood pressure five points resulted in heart attacks of x magnitude." (Oct. 20, 2006 Arnett Dep. at 120:20-121:5.) Moreover, plaintiff ignores the fact that Merck included a blood pressure warning in its Vioxx label from its inception, and that elevated blood pressure is a known side effect of all NSAIDs.

biological mechanisms are not reliable because, as Merck pointed out in its opening brief, Dr. Arnett is not qualified to testify about them.  (*See* Sept. 6, 2006 Arnett Dep. at 99:20-100:3, 100:15-21.)   Indeed, she admits that she has not reviewed the literature on whether Vioxx promotes atherosclerosis and causes plaque rupture:

> Q. Are you saying that there are controlled clinical trials that demonstrate that Vioxx increases the formation of atherosclerotic plaque in humans?
>
> . . .
>
> A. Not in humans, but in animal studies.
>
> Q. Are there animal studies that fail to demonstrate that?
>
> A. There may be.  I have -- as I said before, I have not reviewed that literature.
>
> Q. Are there animal studies that show that Vioxx stabilizes or reduces the formation of atherosclerotic plaque?
>
> A. I haven't reviewed the literature.

(Oct. 20, 2006 Arnett Dep. at 186:18-187,6.)

> Q. I'm not asking you whether the mechanism matters or not.  I'm just asking you whether you can state to a reasonable degree of expert certainty that Vioxx causes plaque rupture.  And if you're going to go out and say that, I want to know what controlled clinical trial on human beings actually looked at that endpoint and proved that endpoint.
>
> . . .
>
> A. I would say that that type of study is probably not feasible, and that's why we use animal models for such mechanistic studies.
>
> Q. And are there any animal studies that can prove or can demonstrate that Vioxx causes plaque rupture even in animals?
>
> A. According to the introductions I've read in these papers, yes.  I have not reviewed the actual data in the papers themselves.

5

> Q. You haven't read all the animal studies, correct?
>
> A. Correct.

(*Id.* at 193:7-194:1.)  Had Dr. Arnett conducted a through review of the literature, she would know that there is no reliable science supporting the theory that Vioxx causes atherosclerosis and plaque rupture.[2]

## II. DR. ARNETT CANNOT BE PERMITTED TO TESTIFY ABOUT THE ADEQUACY OF MERCK'S WARNINGS IN THE MEDICAL LITERATURE.

Plaintiff completely ignores *all* the arguments Merck made in its opening brief about the inadmissibility of Dr. Arnett's opinion that Merck failed to adequately warn about Vioxx in the medical literature, and in particular the Bombardier article on VIGOR.  Plaintiff's opposition on this point consists entirely of (1) a clarification that Dr. Arnett will not testify about the Vioxx label, and (2) a summary of Dr. Arnett's opinion about the medical literature.  (*See* Pl.'s Opp'n at 11-14.)

Merck argued in its opening brief that Dr. Arnett is not qualified to opine on the adequacy of Merck's warnings in the medical literature.  Plaintiff does not make any effort to address this argument in his opposition brief.  Dr. Arnett is an epidemiologist, and she is patently

---

[2] Another problem with Dr. Arnett's opinions that Vioxx is "cardiotoxic" and that "the cardiovascular risk from Vioxx is present in short term usage and is continuous" is that these opinions do not prove that Vioxx can cause a heart attack if taken at 25 mg per day for six months.  Dr. Arnett merely opines that there is a cardiovascular risk "associated" with Vioxx, not that Vioxx causes heart attacks.  (Arnett Dep. at 200:13-17.)  The Court, therefore, should exclude Dr. Arnett's opinions on the additional grounds that they are irrelevant, or at a minimum, because their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence under Rule 403 of the Federal Rules of Evidence.  *See Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 224 (N.D. Ill. 1996) (disallowing statistically-insignificant expert testimony because there is a high chance that the alleged correlation is simply due to chance, and thus, to opine that an association does exist "would be a time consuming distraction, with real potential for unfair prejudice and essentially no potential to contribute to an accurate decision.").

unqualified to testify about what Merck should have said in its peer-reviewed published papers and when.  For this reason alone Dr. Arnett should not be permitted to testify about her warnings opinion.

Merck also argued in its opening brief that Dr. Arnett has not identified any methodology, research, or standard against which the Court can assess the reliability of her opinion that Merck's warnings were inappropriate.  Plaintiff likewise fails to address this point.

Finally, plaintiff does not dispute the unreliability of Dr. Arnett's opinions about the VIGOR publication.  Dr. Arnett argues that there was "compelling evidence of the cardiovascular risk" associated with Vioxx at the point the VIGOR results became known (Arnett Dep. at 103:25-104:6) but, as Merck noted in its opening brief, the "compelling evidence" consists of an association with high blood pressure that Dr. Arnett admits she cannot link to the adverse cardiovascular events associated with Vioxx, the unproven FitzGerald hypothesis and Dr. Arnett's circular reasoning about the Merck patents.  (*See* Merck's opening brief at 9-10.)  Plaintiff's opposition addresses none of these holes in Dr. Arnett's opinion.  Nor does he address any of Dr. Arnett's concessions about her complete lack of knowledge about naproxen.  (*See id.* at 10-11.)  Finally, plaintiff is silent as to Dr. Arnett's admissions that the medical community was aware of the possible cardiovascular risks associated with Vioxx as soon as the VIGOR article was published.  (*See id.* at 11-12.)

### III.   CONCLUSION

For the reasons stated above and in Merck's opening brief, Merck respectfully requests that this Court grant Merck's Motion for Order Excluding Testimony of Donna K. Arnett, Ph.D., M.S.P.H.

Dated:  November 14, 2006                                   Respectfully submitted,

s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck & Co., Inc. ("Merck") for Order Excluding Testimony of Donna K. Arnett, Ph.D., M.S.P.H. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 14th day of November, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel