UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * *

REPLY BRIEF IN SUPPORT OF MOTION
OF MERCK & CO., INC. ("MERCK") FOR ORDER
<u>EXCLUDING THE TESTIMONY OF  JOHN W. FARQUHAR, M.D.</u>

(EXPERT CHALLENGE NO. 8)

I.    DR. FARQUHAR MAY NOT PASS OFF THE UNTESTED ANALYSES AND
CONCLUSIONS OF NON-TESTIFYING EXPERTS ON SUBJECT MATTERS
OUTSIDE HIS AREA OF EXPERTISE.

Dr. Farquhar relies extensively – and, in some instances, almost exclusively – on the

reports of two experts hired by the MDL plaintiffs, Professors Jewell and Kronmal, who are not

slated to testify at trial.  Merck showed in its opening papers that there are numerous reasons

why Dr. Farquhar should not be allowed simply to act as a conduit through which plaintiff can

offer the scientifically unreliable analyses and conclusions of these out-of-court statisticians.

(Merck's Motion at 4-8.)  Dr. Farquhar, who is not a statistician, has never analyzed any of the

underlying data or methodologies Professor Jewell used in either of the two reports that purport

to analyze the statistical results of various Merck studies,[1] nor has he analyzed or verified Dr.

Kronmal's conclusions.   The Jewell and Kronmal reports have never been published or peer-

reviewed.   In fact, the Jewell Rebuttal Report was drafted explicitly to respond to various

arguments proffered by Merck's experts and attorneys.   Plaintiff does not dispute these facts.

Allowing Dr. Farquhar to champion Professor Jewell's and Professor Kronmal's work – *without*

the benefit of cross-examination at trial – would thus be misleading and prejudicial to Merck.

Plaintiff contends that, because Merck has access to the data underlying Professor

Jewell's analysis, Merck would in fact suffer no prejudice from not being able to cross-examine

him.  (Pl.'s Opp'n at 8.)   To the contrary, while it has the aggregate data regarding the various

studies analyzed by Dr. Jewell,[2] Merck does not know the specific data used by Professor Jewell

and whether the methodologies he followed are scientifically reliable.  Merck also does not know

if Dr. Jewell considered any alternate data or methodologies.[3]   Dr. Farquhar, of course, also does

---

[1] These two reports are (1) the "Analysis Of Vioxx Data From The APPROVe, VICTOR, And VIP Studies – Protocol 203 ("Jewell Report"), appended to Dr. Farquhar's May 2006 Supplemental Report and attached to Merck's opening memorandum in support of this motion as Exhibit E; and (2) the report submitted in connection with plaintiff's now-withdrawn designation of Professor Jewell as a testifying expert in this case and submitted in *Barnett v. Merck* as an attachment to an attorney declaration ("Jewell Rebuttal Report"), attached to Merck's opening memorandum in support of this motion as Exhibit H.

[2] Plaintiff speculates that Merck must have had access to the data earlier because the study's lead investigator, Dr. Michael Langman, had worked in varying capacities as a Merck consultant over a five-year period. (Pl.'s Opp'n at 9-10.)  The newspaper article upon which plaintiff relies for this accusation is of course not evidence at all.  Moreover, plaintiff presents no evidence that, with regard to the VICTOR study specifically, Dr. Langman was beholden to Merck or that Merck had any pre-specified right to that data.  Indeed, to the contrary, data from the VICTOR study were released by Oxford University this past spring only after entry of a protective order in the MDL. (Merck's Motion at 5 n.4.)

[3] The weakness of plaintiff's position is further demonstrated by the fact that Dr. Jewell submitted a fourteen page report to challenge Merck's expert's analysis of data from the very same clinical trials. (*See* Jewell Rebuttal Report at 1 ("This report is submitted to respond to

not know the answer to any of these questions; instead, he has stated simply that he supports Dr. Jewell's work.  (Merck's Motion at 5.)  In assessing whether an expert's testimony is relevant and reliable, the trial court need not "tak[e] the expert's word for it."  *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1244 (11th Cir. 2005) (quoting FED. R. EVID. 702 advisory committee's note (2000)).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert."  *Black v. Johnson & Johnson (In re Propulsid Prods. Liab. Litig.),* 261 F. Supp. 2d 603, 616 (E.D. L.a. 2003) (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).  Unless this Court bars the testimony of Dr. Farquhar that is based on the Jewell analyses,  Merck will be effectively – and unfairly – precluded from testing the *bona fides* of Professor Jewell's work before the jury.  *See Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 546 (5th Cir. 1978).

Second, contrary to plaintiff's assertion that he conducted independent research of the Vioxx Alzheimer's studies (*see* Pl.'s Opp'n at 14-15), Dr. Farquhar's expert report and subsequent deposition testimony demonstrate that he is simply relaying the opinions of Professor Kronmal.  In paragraph 133 of the Initial Report, for example, Dr. Farquhar expressly cites Professor Kronmal's report as the source for the statistics on alleged increased risk that he gives. Most of the other paragraphs that address the Alzheimer's studies have no source attribution, and those that do, such as paragraphs 135-136, confirm Dr. Farquhar's unequivocal acknowledgement at his June 8, 2006 deposition that he is relying exclusively on Professor Kronmal's analysis of the Alzheimer's clinical trials for his opinions.

In short,  Dr. Farquhar's "reliance" on the litigation-driven work of Professors Jewell and

---

some issues raised by defense counsel in the deposition of Dr John Farquhar and in the Expert Witness Statement and Deposition of defense biostatistician Dr Kim.").)

Kronmal cannot be defended as being  tantamount to routine reliance by an epidemiologist on the work of a biostatistician, despite plaintiff's attempt to characterize it as such (*see*, *e.g.*, Pl.'s Opp'n at 2).  Instead, what plaintiff seeks to do is to have Dr. Farquhar serve as a mouthpiece for out-of court advocates whose work was commissioned and overseen by others (*i.e.*, counsel for MDL plaintiffs).  The Court should preclude that improper use of an expert witness.

## II.    THE JEWELL ANALYSIS OF COMBINED DATA FROM THREE MERCK CLINICAL TRIALS THAT DR. FARQUHAR HAS ADOPTED IS NEITHER SCIENTIFICALLY RELIABLE NOR RELEVANT.

The Jewell analysis of data from the APPROVe, VICTOR, and ViP trials that Dr. Farquhar adopts did not disclose a statistically significant elevated risk of cardiovascular events associated with Vioxx for either of the only two periods of usage even arguably relevant in this case -- use of up to six months and use of up to twelve months.   Nor, for either period of use, did the analysis find that there was at least a doubling of the risk.  Plaintiff's opposition studiously ignores both of these fatal deficiencies.

To be admissible, scientific testimony must be both reliable and relevant.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  Professor Jewell's attempt to calculate excess risk for the two pertinent  usage periods does not meet these basic requirements because his calculations cannot establish causation.  (*See* Merck's Motion at 10-11).   The lengthy description of Protocol 203 and its Data Analysis Plan in plaintiff's oppositions does nothing to cure these fatal deficiencies.[4]

---

[4] The analysis that Professor Jewell did -- plaintiff's protestations to the contrary –  is not the combined analysis of the three studies that was prespecified in Protocol 203.  The Data Analysis Plan ("DAP") provided that the combined analysis for formal assessment of the primary hypothesis (*i.e.,* that Vioxx at the 25 mg dose would be non-inferior to placebo in the risk of developing a confirmed thrombotic serious adverse event) would take place after there were at least 611 confirmed events of that nature *from the three studies in combination*.  (Statistical Data Analysis Plan at ii [Ex. D to Pl.'s Opp'n].)  Plaintiff's opposition fails to note that the required

Plaintiff argues that Merck is somehow estopped to challenge the reliability of the analysis performed by plaintiff's experts because Merck itself has not performed the combined analysis called for by Protocol 203.  (Pl.'s Opp'n at 8-10.)  But plaintiff can derive no support for the admission of Dr. Farquhar's testimony by accusing Merck of not analyzing the clinical studies in the manner now proposed by plaintiff's experts.  (*See* Pl.'s Opp'n at 8.)  *Cf. Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 602 (S.D. Tex. 2001) ("Dr. Polukoff may have pointed out an important void in the scientific literature, but the lack of proof of a drug's safety does not prove it is dangerous.").  It is plaintiff's burden to prove causation in this case.  *See Richardson v. GlaxoSmithKline,* 412 F. Supp. 2d 863, 869 (W.D. Tenn. 2006).  It is not Merck's burden to disprove causation.

## III.   POST-HOC SUBGROUP ANALYSES CANNOT SUPPLY ADMISSIBLE EVIDENCE OF CAUSATION.

Plaintiff's attempt to characterize Professor Jewell's analyses of "high risk" patients in the APPROVe study as "confirmatory" and not post-hoc subgroup analyses is unconvincing. (*See* Pl.'s Opp'n at 11-13.)  Plaintiff asserts that the hypothesis – that patients with a high baseline risk for a cardiovascular event experienced a higher rate of such events when taking Vioxx than patients with a lower baseline risk – was generated by Merck itself in connection with reporting the  VIGOR results.  But this was not a prespecified hypothesis in APPROVe, the source of the data that Professor Jewell actually analyzed, and plaintiff cannot use this rationale

---

minimum number of events never accrued because the studies were stopped prematurely in September 2004.  Thus, Professor Jewell was working with a different data set from that prespecified for the combined analysis in Protocol 203.  Plaintiff asserts that, had the three studies not been terminated in September 2004, the External Safety Monitoring Board ("ESMB") would have ended them a month later because the criteria for conclusion for inferiority had allegedly been met by then.  (Pl.'s Opp'n at 4, 7.).  This assertion is  bald speculation, and the Court should lend no credence to this unsupported attempt to second-guess the ESMB.

to avoid the post-hoc nature of that analysis.  (Cardiovascular Safety Report for APPROVe at 41-44, attached hereto as Ex. A.)

Instead, what the approach Professor Jewell and Dr. Farquhar have followed actually reveals is that they first came to a conclusion and then looked selectively for support for that conclusion.  Proceeding in this fashion "invert[s] the scientific method" and "undermines the reliability" of the analysis performed.  *In re Diet Drugs Prods. Liab. Litig.*, MDL Docket No. 1203, 2001 U.S. Dist. LEXIS 1174, at *42 (E.D. Pa. Feb. 1, 2001); *see also Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method."); *Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 786 (S.D. Tex. 2000) ("From that conclusion [plaintiffs' experts] have 'worked backward' to find medical and scientific support. Such a practice cannot withstand *Daubert* scrutiny and is not due any credence in a court of law.").  Dr. Farquhar's and Professor Jewell's reliance on subgroup analyses of APPROVe data strongly suggests that they have worked backwards from the conclusion they had already reached – the "hypothesis" described above – an approach that is inconsistent with the scientific method and unreliable as a matter of methodology under *Daubert*.  In short, plaintiff's effort to adopt a different term for the analysis that Professor Jewell performed cannot change the fact that this type of analysis, whatever its utility in other contexts, cannot supply scientifically reliable evidence of causation.

IV.   **THE COURT SHOULD EXCLUDE DR. FARQUHAR'S INFLAMMATORY AND UNSUPPORTED ASSERTION THAT VIOXX CAUSES MORE SEVERE HYPERTENSION THAN ANY OTHER DRUG IN ITS CLASS.**

In its opening papers, Merck showed that Dr. Farquhar's "guess" that Vioxx causes more severe hypertension than any other drug in its class was just that, a guess, and should be excluded as being speculative, scientifically unreliable, and unfairly prejudicial.  Dr. Farquhar admitted that he is aware of no studies comparing the hypertensive effect of Vioxx to numerous

prescription NSAIDs.  (*See* Merck's Motion at 21-22 n.13.)   Plaintiff has not refuted this, and

cannot do so.   Instead, he merely asserts that Vioxx has been shown to have a more severe

hypertensive effect than certain other prescription NSAIDs – not as compared with all other

NSAIDs or even as compared with all other prescription NSAIDs.[5]  (*See* Pl.'s Opp'n at 10-11.)

The Court should preclude Dr. Farquhar from making the unsupported and inflammatory

assertion that Vioxx is worse in this respect than all other drugs in its class.

## V.     DR. FARQUHAR MAY NOT PROPERLY TESTIFY ABOUT MERCK'S ALLEGED "OMISSIONS" OF DATA FROM PUBLISHED ARTICLES ABOUT MERCK-SPONSORED STUDIES OR OTHERWISE ABOUT MERCK'S STATE OF MIND OR THE PROPRIETY OF ITS CONDUCT.

Plaintiff asserts that Dr. Farquhar should be permitted to tell the jury about instances

when Merck allegedly "omitted" important data from published articles about Merck-sponsored

studies.  (*See* Pl.'s Opp'n at 16-17.)  This, according to plaintiff, is not "state of mind" evidence,

but instead is necessary to assess the reliability and credibility of expert testimony.   (*Id.* at 17.)

Plaintiff's argument cannot withstand even minimal scrutiny.  To permit Dr. Farquhar to

provide such testimony would be improper for multiple reasons, which can be seen by examining

the four specific instances of alleged "omissions" that plaintiff lists:

- First, Dr. Farquhar would apparently: (i) relate to the jury allegations that Merck failed to disclose to the editors of the *New England Journal of Medicine* ("*NEJM*") the existence of Protocol 203; and (ii) tell the jury that he agrees with the *NEJM* that Merck should have disclosed this. (*See* Pl.'s Opp'n at 16.)  Such testimony is not admissible as either percipient or expert testimony.  Dr. Farquhar has no personal knowledge of this, and telling the jury that he agrees with the *NEJM* would obviously not assist the jury as required by Rule 702.  In addition, this alleged omission is irrelevant to the reliability or lack of reliability of the scientific testimony of Dr. Farquhar or any other expert witness.

- Second, plaintiff suggests that Dr. Farquhar should be able to tell the jury that

---

[5]  That no one, as plaintiff contends, has conducted "head-to-head" studies of Vioxx as compared to at least eleven other prescription NSAIDS simply confirms the lack of a reliable basis for Dr. Farquhar's sweeping assertion about Vioxx.  (*See* Pl.'s Opp'n at 11.)

Merck failed to provide to the *NEJM* editors investigator-reported data from APPROVe that allegedly showed a statistically significant increased risk of a cardiovascular event in the first 18 months of use of Vioxx. (Pl.'s Opp'n at 17.) Again, Dr. Farquhar has no foundation in personal knowledge to make that assertion, nor is Merck's alleged failure to provide this information presented as the basis of any opinion that Dr. Farquhar is prepared to give. It would not be proper for Dr. Farquhar to provide such testimony under either Rule 702 or 703.[6] *See, e.g., In re Rezulin Prods, Liab. Litig.,* 309 F. Supp. 2d 531, 554 (S.D.N.Y 2004) (Purported "expert" testimony on data suppression "pertains to lay matters which a jury is capable of understanding and deciding without the expert's help.") (citation and internal quotation marks omitted).

- Third, plaintiff suggests that Dr. Farquhar should be able to tell the jury that Merck did not comply with the *NEJM* peer reviewers' request for a composite Kaplan-Meier plot that included CHF (congestive heart failure) endpoints. (Pl.'s Opp'n at 17.) This proposed testimony is subject to the same defect in foundation as plaintiff's other examples. Nor would evidence of that alleged omission be relevant in this or any other heart attack case.

- Finally, plaintiff would have Dr. Farquhar tell the jury about the contents of internal Merck documents. (Pl.'s Opp'n at 17.) Again, this is not a proper subject of expert testimony and not testimony that would assist the jury. *See, e.g., In re Rezulin,* 309 F.Supp. 2d at 554.|

As these examples show, it would completely subvert the proper role of an expert witness in a jury trial if Dr. Farquhar were permitted to provide this and any other testimony about alleged "omissions" from the literature. All such testimony on his part, as well as any other testimony about state of mind or normative judgments on ethics (which plaintiff does not even address apart from the focus on alleged "omissions" of data), should be excluded.

## VI.   CONCLUSION

For the reasons stated above and in Merck's opening memorandum, the Court should

---

[6] "Investigator-reported events" are essentially raw data. They are medical events that field investigators involved in a clinical trial observe in trial subjects and report. (October 10, 2005 Deposition of John W. Farquhar, M.D. at 138:23-139:7, attached hereto as Ex. B.) "Adjudicated" data or events are those that have been reviewed by experts in the appropriate field to determine that they were in fact cardiovascular events, for example – a "good process," according to Dr. Farquhar, "that should always be done." (*Id.* at 139:8-21.) Investigator-reported data have no probative value when adjudicated data exist. As Dr. Farquhar concedes, adjudication results in "better" data than investigator-reported events. (*Id.* at 139:23-140:10.)

exclude the testimony of Dr. Farquhar.

Dated:  November 14, 2006

Respectfully submitted,


s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071

9

                                        Phone:  213-430-6000
                                        Fax:     213-430-6407

                                        Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief in Support of Motion of Merck & Co., Inc. ("Merck") for Order Excluding the Testimony of John. W. Farquhar, M.D. has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 14th day of November, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel