UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY BRIEF IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
TO EXCLUDE EXPERT TESTIMONY THAT SHORT-TERM VIOXX® USE
<u>INCREASES CARDIOVASCULAR RISK</u>
(EXPERT CHALLENGE NO. 10)**

In opposing Merck's motion to exclude expert testimony that short-term Vioxx use increases cardiovascular ("CV") risk, plaintiff briefly discusses a handful of studies that he claims "establish the 'scientific connection' between short-term Vioxx use and increased cardiovascular risk, as well as a scientific connection between Mr. Dedrick's heart attack and his Vioxx use." (Pl.'s Opp'n at 3.) Each of these studies, however, fails to provide reliable, statistically significant evidence that the use of 25 mg Vioxx for six months[1] – the duration at issue in this case – increases CV risk or causes heart attacks. Thus, plaintiff's theory that short-

---

[1] Pl.'s Opp'n at 1.

term Vioxx use increases CV risk fails to meet the threshold set by *Daubert* and its progeny. All testimony or argument on the subject must be excluded.

I.  **PLAINTIFF MISCHARACTERIZES THE AVAILABLE CLINICAL DATA ON SHORT-TERM USE OF VIOXX.**

Plaintiff cites three clinical trials as purported support for the proposition that short-term use of 25 mg Vioxx increases CV risk. But, as described below, plaintiff mischaracterizes the results of these studies, ignoring, among other things, the fundamental scientific concept of statistical significance. In fact, not one of these studies provides reliable scientific evidence that the use of 25 mg Vioxx for six months increases CV risk. Accordingly, the testimony of plaintiff's experts on plaintiff's causation theory must be excluded because "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997); *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) ("A court may rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is too great an analytical gap between the data and the opinion proffered." (internal quotation marks and citations omitted)).

A.  **The VIGOR Study.**

There are at least three critical flaws with plaintiff's reliance on the VIGOR study as the basis for his experts' causation opinions. First, as discussed in Merck's moving papers, VIGOR involved patients taking 50 mg Vioxx daily, *twice the dose Mr. Dedrick claims to have taken*. Plaintiff mentions but neglects to respond to this critical fact (Pl.'s Opp'n at 7), completely ignoring the well-established scientific and legal principle that "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) (excluding expert's opinion based in part on failure to provide dose-response evidence, which is "the

2

hallmark of basic toxicology").[2]  The dosage differential alone renders VIGOR an unreliable basis for plaintiff's causation argument here.

Second, VIGOR cannot establish causation because it compared Vioxx with naproxen rather than placebo.  Plaintiff asserts that the VIGOR trial meets "the 'gold standard' for determining a relationship between a drug and its health effect," because "one group was exposed to Vioxx and the other group wasn't."  (Pl.'s Opp'n at 7.)  Plaintiff is wrong – only blinded, randomized, *placebo-controlled* clinical trials meet the "gold standard for determining the relationship of an agent to a disease or health outcome."[3]  Because VIGOR was not placebo-controlled, it is impossible to know whether the results were due to the cardio-protective qualities of naproxen, a risk imposed by 50 mg Vioxx, chance, or a combination of these factors.[4]

Third, the patients who participated in VIGOR had rheumatoid arthritis, a condition known to be associated with high rates of CV events – and which Mr. Dedrick does not have.[5] VIGOR simply does not provide reliable evidence that someone in plaintiff's condition faces an

---

[2] *See also* cases cited in Merck's Motion at 2-3.

[3] Michael J. Saks et al., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 484 (2d ed. 2005-2006).  Plaintiff's own expert Dr. Lemuel Moye recognized this important aspect of epidemiological studies when testifying in the *Barnett v. Merck* trial.  (Aug. 3, 2006 *Barnett v. Merck* Tr. at 802:3-21.)

[4] *See* Patrono, FitzGerald et al., *Platelet Active Drugs:  The Relationships Among Dose, Effectiveness, and Side Effects*, CHEST 2004; 126:234S-264S ("While the cause of the apparent excess risk of MI in [VIGOR] cannot be conclusively established, a combination of some cardioprotective effect of naproxen and the play of chance does seem to offer a plausible explanation for these unexpected findings."); REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 484-5.

[5] Wolfe et al., *The Mortality of Rheumatoid Arthritis, Arthritis & Rheumatism* (08/19/93); Myllykangas-Luosujarvi et al., *Mortality in Rheumatoid Arthritis, Arthritis & Rheumatism* (12/95).

increased CV risk with short-term Vioxx use. *See, e.g.*, *In re Silicone Gel Breasts Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 894 (C.D. Cal. 2004) (use of epidemiological studies to show causation requires that "the plaintiff is comparable to the subjects of the epidemiological study and that there were no other causal agents present in the plaintiff's case not accounted for by the study").

Moreover, plaintiff's proposed interpretation of the VIGOR CV data is inconsistent with that of the FDA, which in 2002 approved a revised label that included a precaution advising physicians that the "significance of the [VIGOR and Alzheimer's CV data] is unknown."[6]

B.   **The APPROVe Study.**

Plaintiff's reliance on the APPROVe study is similarly misplaced.[7]  If APPROVe reveals anything about the alleged CV risk associated with Vioxx, it is that there is *no* reliable scientific evidence of an increased risk during the first 18 months of use.  During the first 18 months of the study, there were 22 confirmed on-drug thrombotic events on Vioxx versus 20 on placebo, and

---

[6] *See* April 2002 Vioxx Label No. 9183810, attached hereto as Ex. A.

[7] Plaintiff's allegations of misconduct by Merck in the VIGOR and APPROVe trials are spurious. As this Court is well aware, Merck did not fail to report the total number of heart attacks in the VIGOR study to the *New England Journal of Medicine*. (*See* Dec. 9, 2005 *Plunkett v. Merck* Tr. at 2068:6-2080:3.)   Regarding the APPROVe study, there was nothing untoward about Merck's decision to use a 14-day cutoff for adverse events.  Merck added its CV protocol in order to test the FitzGerald hypothesis – that an imbalance of prostacyclin and thromboxane allegedly caused by Vioxx promotes a prothrombotic and proatherosclerotic environment.  Dr. FitzGerald's hypothesis predicts a transient imbalance that lasts while Vioxx is in the body.  Once a patient stops taking Vioxx, the drug clears the body in days.  There is no reason to continue to test the FitzGerald hypothesis after a patient has been off Vioxx for two weeks.  Following the trial participants for additional time would not have provided any useful data because, as plaintiff's expert Dr. Jewell acknowledged in his report, the alleged cardiovascular risks of Vioxx observed in the APPROVe trial differed significantly over time.  (*See* Expert Report of Nicholas P. Jewell, Ph.D. at 5-6, attached hereto as Ex. B.)

nine myocardial infarctions among patients on Vioxx versus eight for patients on placebo – not a statistically significant divergence.[8]

Indeed, contrary to plaintiff's claims, the APPROVe Kaplan-Meier curve reveals that the actual rate of events in the APPROVe trial began to diverge only after 18 months, and diverged with statistical significance only after 30 months.[9]  As was confirmed in the recently published "correction" to the article publishing the APPROVe results, "[v]isual inspection of the Kaplan-Meier curves suggested that there was an increasing frequency of thrombotic events associated with rofecoxib therapy after 18 months."[10]

What APPROVe did *not* show was a statistically significant increased risk of heart attacks after six months of use of 25 mg Vioxx.  Thus, regardless of what significance the APPROVe results may or may not have in a case involving a longer duration of use, APPROVe cannot establish, to a reasonable degree of medical and scientific certainty, that Mr. Dedrick's short-term use of Vioxx was capable of causing his heart attack.  *See, e.g., Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991) ("If the . . . duration of exposure to [substance is] the type[] of information upon which experts reasonably rely when forming opinions on the subject, then the district court was justified in excluding Dr. Miller's opinion that is based upon critically incomplete or grossly inaccurate . . . duration data."); *Thompson v. S.*

---

[8] *See* Bresalier RS et al., *Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial*, 352 NEW. ENG. J. MED. 1092 (Mar. 17, 2005); APPROVe Trial Abbreviated Clinical Study Report, excerpt attached hereto as Ex. C.  After 18 months of continuous use, the number of events began to increase among Vioxx users, but the difference did not become statistically significant until after approximately 30 months of continuous use.

[9] Bresalier RS et al., *supra*; APPROVe Extension Statistical Package, dated May 26, 2006, at 25, 52, attached hereto as Ex. D.

[10] *Correction*, NEW ENG. J. MED. 355(2):221 (July 13, 2006), attached hereto as Ex. E.

*Pac. Transp. Co.*, 809 F.2d 1167, 1169 (5th Cir. 1987) (expert's opinion on dioxin as source of plaintiff's illness had "insufficient factual basis" in part because expert had no knowledge of duration of exposure).

Moreover, in his efforts to recast the APPROVe data, plaintiff relies on the opinions and prior testimony of Dr. Zipes (Pl.'s Opp'n at 8-9), who is not listed as a trial witness in this case and whose opinions are contradicted by the APPROVe data itself, as discussed above. This motion seeks to exclude the testimony of experts *at trial*. Dr. Zipes's opinions, accordingly, are of no consequence here. Plaintiff also implies that because Dr. Zipes's testimony in the *Barnett* case included his opinion that APPROVe shows short-term Vioxx use increases CV risk, a precedent has been established requiring the Court to admit similar testimony here. (Pl.'s Opp'n at 6.) No such precedent was established. *Barnett* was not a case involving the short-term use of Vioxx. Thus there was no reason for the Court or the parties to focus on the admissibility of the kind of testimony at issue here.

### C.     The ADVANTAGE Study.

Plaintiff's reference to the ADVANTAGE study is misleading. The study itself makes clear that it does not support plaintiff's causation theory:

> *The rofecoxib [Vioxx] and naproxen groups did not differ significantly in the number of cardiovascular events*, as defined by the combined Antiplatelet Trialists' Collaboration end points (10[0.4%] vs. 7 [0.3%]; P>0.2).[11]

In fact, the only statistically significant result from ADVANTAGE was that the naproxen patients actually suffered more strokes than those taking Vioxx. Also, as explained in the

---

[11] Liss RJ et al., "Gastrointestinal Tolerability and Effectiveness of Rofecoxib versus Naproxen in the Treatment of Osteoarthritis," ANN. INTERN. MED. 2003 Oct. 7; 139(7)539-46, at 543.

discussion of VIGOR, *supra*, the lack of a placebo arm renders ADVANTAGE unreliable as supporting evidence for plaintiff's causation theory.

## II.  NO OBSERVATIONAL STUDY OFFERS RELEVANT, RELIABLE EVIDENCE THAT SHORT-TERM VIOXX USE INCREASES CV RISK.

Plaintiff now claims that Merck is wrong to seek exclusion of his experts' testimony based on epidemiological studies that do not provide statistically significant results. (Pl.'s Opp'n at 10.)  Plaintiff claims that Merck's argument must fail because the Juni, Levesque, and Solomon studies purport to establish that short-term use of Vioxx causes an increased risk of cardiovascular events. (Pl.'s Opp'n at 10-13.)  As discussed below, none of the studies relied on by plaintiff provides statistically significant data showing that the use of 25 mg Vioxx for six months can more than double the risk of thrombotic CV events.  Such a doubling of the risk is a required, although not independently sufficient, factor to establish causation. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995); *Deluca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990); *see also* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 529.  Studies that do not demonstrate a relative risk of 2.0 or greater cannot meet the *Daubert* sufficiency threshold given that a causation result premised on such studies must, by definition, fail the "more likely than not" test. *Daubert*, 43 F.3d at 1321; *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1315 n.16 (11th Cir. 1999) ("The threshold for concluding that an agent more likely than not caused a disease is 2.0 . . . .  Moreover, showing *association* is far removed from proving *causation*.").  Each observational study cited by plaintiff falls short of these well-established requirements of reliability.

### A.  The Juni Study.

The data from Dr. Juni's 2004 meta-analysis study is *directly contrary* to the conclusions of plaintiff's experts.  Juni found that, when compared against placebo and all NSAID

7

comparators, Vioxx at the 25 mg dose neither doubled the risk for heart attacks nor resulted in a statistically significant increased risk (RR = 1.37, CI = 0.52-3.61).[12]  Moreover, when Juni compared Vioxx at all doses against placebo, he again found that Vioxx neither doubled the risk of heart attacks nor resulted in a statistically significant increased risk (RR = 1.04, CI = 0.34-3.12).[13]  The Juni study cannot support an opinion that 25 mg Vioxx, taken for fewer than eleven months, increases the risk of thrombotic CV events.

### B. The Solomon Study.

The 2004 "Solomon Study," which was based on a review of patient records in a Medicare database, also fails to support plaintiff's causation argument.  The only short-term risk Solomon found was an anomalous result involving a comparison between Vioxx and Celebrex – not a placebo – during the first 90 days of therapy.[14]  The risk of acute heart attacks on Vioxx versus Celebrex was nearly identical *after* 90 days of therapy, as is the case here; further, the study found *no* excess risk of acute heart attacks with Vioxx versus no-NSAID use, much less a doubling of the risk.[15]

### C. The Ingenix Study.

The Ingenix study did not distinguish between individuals who took Vioxx at the 25 mg and 50 mg doses when compared against use of ibuprofen/diclofenac, and even this combined-

---

[12] Juni, P. et al., *Risk of cardiovascular events and rofecoxib: cumulative meta-analysis*, THE LANCET Nov. 5, 2004 (online) at Table 2.

[13] *Id*.

[14] Daniel Solomon et al., *Relationship between selective cyclooxygenase-2 inhibitors and acute myocardial infarction in older adults*, CIRCULATION 2004 May; 109:2068-2073 at 2071.

[15] *Id.* at 2070-2071.

dose comparison was statistically insignificant for heart attacks and sudden cardiac death.[16] Moreover, as with several other studies on which plaintiff purports to rely, the Ingenix study did not compare against placebo, making it useless in a causal analysis. This fact alone renders Ingenix wholly unreliable as supporting evidence for plaintiff's theory of causation.

### D. The 2006 Levesque Study.

The data from the "Levesque Study" also discredits plaintiff's position. The figures plaintiff himself points to confirm this fact. The *only* increased risk the Levesque authors found was during the first nine days of Vioxx use,[17] while plaintiff's heart attack occurred after six months of alleged Vioxx use. Also, plaintiff's cited figure for the relative risk for these "new" patients was 1.67, not the doubling of risk required for an observational study to meet the sufficiency threshold in a causal analysis. Plaintiff also incorrectly asserts that the study revealed a "statistically significant" risk for patients who used Vioxx for either "2-4 [prescriptions]" or "5-8 prescriptions." (Pl.'s Opp'n at 13.) Yet, plaintiff's cited figures revealed a confidence interval of 0.95-1.61 for the former group and 0.97-1.76 for the latter – results that are statistically *in*significant. *See, e.g., Allison*, 184 F.3d at 1315 & n.16. Moreover, the relative

---

[16] Ingenix Epidemiology Report, *Cardiovascular Risk of COX-2 Inhibitors and Other NSAIDs*, Feb. 16, 2004; Velentgas P. et al., *Cardiovascular risk of selective cyclooxygenase-2 inhibitors and other non-aspirin non-steroidal anti-inflammatory medications*, PHARMACOEPIDEMIOL DRUG SAF. 2006 Jan 4; (Epub ahead of print) available at www.interscience.wiley.com (DOI: 10.1002/pds.1192) at 8, Table 4.

[17] Levesque LE, *The Risk for Myocardial Infarction with Cyclooxygenase-2 Inhibitors: A Population Study of Elderly Adults*, ANN. OF INTERN. MED. 2005; 142:481-489 at 483-84; Levesque LE et al., *Time variations in the risk of myocardial infarction among elderly users of COX-2 inhibitors*, CMAJ 2006 May 23; 174(11):1563-9. Epub 2006 May 2, at 1-2.

risks for these two groups were 1.24 and 1.31 – again not the doubling of risk required to demonstrate a reliable causal relationship.[18]

### III. CONCLUSION

For the reasons stated above and in Merck's underlying motion and prior briefing on this subject, Merck respectfully requests that the Court exclude any testimony from plaintiff's expert witnesses that the use of 25 mg Vioxx for six months is capable of causing heart attacks or that it caused plaintiff's heart attack.

Dated: November 14, 2006                                     Respectfully submitted,


                                                             s/ Dorothy H. Wimberly
                                                             Phillip A. Wittmann, 13625
                                                             Dorothy H. Wimberly, 18509
                                                             STONE PIGMAN WALTHER

---

[18] The Levesque authors also identified several issues casting doubt on the reliability of the study's results:

- It is possible that the risk of myocardial infarction returns to baseline sooner than they were able to demonstrate, but they had insufficient numbers for a daily assessment.

- Only cases admitted to hospital could be included in the analyses. Consequently, events such as silent MI or sudden death could have resulted in incomplete case ascertainment.

- The intermittent use that occasionally accompanies NSAID therapy may have lead to misclassification of exposure.

- Authors did not have information on smoking status, obesity, physical activity, family history or socioeconomic status.

- Authors were unable to account for the use of aspirin and ibuprofen obtained without a prescription.

(*Id.* at 7.)

10

WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck & Co., Inc. ("Merck") To Exclude Expert Testimony That Short-Term Vioxx® Use Increases Cardiovascular Risk has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 14th day of November, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel