UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| | JUDGE FALLON |
| This document relates to Case No.  05-2524 | |
| | MAGISTRATE JUDGE KNOWLES |
| ANTHONY WAYNE DEDRICK, | |
| Plaintiff, | |
| v. | |
| MERCK & CO., INC., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION OF MERCK & CO., INC. ("MERCK")
FOR ORDER EXCLUDING OPINION TESTIMONY BY PLAINTIFF'S EXPERTS
THAT VIOXX® ACCELERATES ATHEROSCLEROSIS
OR CAUSES PLAQUE RUPTURE**

**(EXPERT CHALLENGE NO. 12)**

This Motion seeks to exclude expert testimony that Vioxx® causes cardiovascular events by directly accelerating atherosclerosis – *i.e.*, the build-up of coronary artery plaque – or by causing coronary artery plaque to rupture.  The Court denied this motion in *Smith v. Merck*. Merck is submitting this motion to preserve its record.

Plaintiff has presented no reliable scientific support for either of these hypothesized mechanisms, nor could he present any.  These mechanisms are speculative and unproven, and there are significant limitations to the studies plaintiff's experts rely upon to support these theories.  Moreover, there are studies that directly contradict plaintiff's theories and suggest that

1

Vioxx actually *slows* the progression of atherosclerosis. Merck therefore requests that the Court issue an order precluding plaintiff's experts (including Professor Funk and Drs. Fosslien, Farquhar and Furman) from opining that Vioxx can accelerate atherosclerosis or causes plaque ruptures.

I.   **LEGAL STANDARD.**

The legal standard for the admission of expert testimony in federal court is set forth at pages 3-4 of Merck's Memorandum In Support of Motion For Order Excluding Testimony Of Ira J. Gelb, M.D., which was filed on October 30, 2006, and is incorporated herein by reference.

II.  **PLAINTIFF'S EXPERTS CAN POINT TO NO EVIDENCE ESTABLISHING THAT VIOXX CAN ACCELERATE THE PROGRESSION OF ATHEROSCLEROSIS.**

In making its *Daubert* rulings in this proceeding, the Court has focused primarily on the qualifications and methodology of experts. As the Supreme Court has noted, however, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Plaintiff's experts rely heavily on "experiments and clinical studies which show a decrease in prostacyclin production without a concomitant change in thromboxane levels." (*See*, *e.g.*, Expert Report of Colin Funk, Ph.D. ("Funk Rpt.") at 12-13, attached as Ex. A (opining that "[t]his [imbalance] leads to a state that is pre-disposed to thrombosis, hypertension and atherosclerosis.").) But reliance on these studies is misguided. For example, the study that Professor Funk cites regarding platelet aggregation did not actually involve Vioxx, but merely ibuprofen and indomethacin. (*Id*. at 13; *see also* Deposition of Colin Funk, Ph.D. ("Funk Dep.") at 178:8-17, attached as Ex. B.) Professor Funk speculates that this data suggest that Vioxx

"would *enhance*" atherosclerosis if prostacyclin was blocked, (*Id*. at 173:9-10) (emphasis added), but he cannot and does not state that Vioxx actually *causes* atherosclerosis because (1) such a study has never been conducted with Vioxx; and (2) as a result, there is no data for humans. (Funk Dep. at 190:3-10.) The only actual data regarding adverse plaque-related effects from administering COX-2 inhibitors are drawn from animal studies, most of which did not involve Vioxx. But animal studies *cannot* establish causation in humans. *See, e.g., Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313 (rejecting animal studies given difficulty extrapolating results to humans), *modified on reh'g*, 884 F.2d 166 (5th Cir. 1989); *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 197-98 & n.5 (5th Cir. 1996) (rat studies were "inconclusive" and "unreliable" and could not establish that chemical would have same effect in humans); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1480 (D.V.I. 1994) (extrapolation from animal studies to humans to prove causation is "scientifically invalid" because, among other reasons, "different species can react differently to the same agent"), *aff'd*, 46 F.3d 1120 (3d Cir. 1994); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1241 (E.D.N.Y. 1985) (finding animal studies inadmissible in an action alleging health problems arising from exposure to herbicide "because they [the animal studies] involve different biological species"); *Maurer v. Heyer-Schulte Corp.*, No. Civ.-A-92-3485, 2002 WL 31819160, at *3-4 (E.D. La. Dec. 13, 2002) (court "frowns upon the use of animal studies to predict carcinogenicity in humans").

Moreover, these studies did not even show an adverse link between any form of COX-2 inhibition and plaque in the animals used – much less a link between Vioxx specifically and plaque *in humans*. In fact, the one study that specifically involved Vioxx suggests that COX-2 inhibition might actually slow or reduce plaque formation – which has biological plausibility because of the role that COX-2-related inflammation plays in plaque phenomena. As the

3

Supreme Court has noted in the context of animal studies that fail to support a plaintiff's theory, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Even assuming that animal studies were sufficient under *Daubert* to establish causation in humans – and they are not – the studies do not support plaintiff's position. The objective flaws in the animal studies further render plaintiff's experts' methods unreliable. For example, the 2002 Cheng study[1] does not support his position. (*See*, *e.g.*, Funk Rpt. at 26 n. 99 (referencing the Cheng study.) That study involved the use of mice genetically engineered to have no prostacyclin receptor. As such, this study yielded no data on the effect of COX-2 inhibition on plaque phenomena even in mice, much less in humans. In fact, in addition to other potentially material differences between administering COX-2 inhibitors and genetic alteration, no one has shown that any COX-2 inhibitors reduce prostacyclin to zero in any part of the body of mice or man. But the effect of the genetic alteration is akin to a total elimination of prostacyclin.

Similarly, the Antman article[2] also does not support plaintiff's theory. (*See*, *e.g.*, Funk Rpt. at 26 n. 101 (referencing the Antman article.) In the article, the authors merely review literature on COX-2 inhibitors prepared by others and address only in passing the hypothesis that COX-2 inhibition may be associated with the progression of atherosclerosis. Indeed, Antman

---

[1] Citing to Cheng et al., *Role of prostacyclin in the cardiovascular response to thromboxane A2*, SCIENCE 2002 Apr. 19; 296(5567):539-41.

[2] Citing to Antman et al., *Cyclooxygenase Inhibition and Cardiovascular Risk (Special Report)*, CIRCULATION 2005, 112:759-770, 760.

concedes that plaintiff's theory "is currently controversial."[3]  Nor does the article report any original research supporting plaintiff's theory.  On its face, this article provides no scientific support for an opinion that Vioxx can accelerate the progression of atherosclerosis.

In short, none of the animal studies upon which plaintiff's experts rely actually support his theory. And as explained below, existing animal studies show that Vioxx actually *retards* the progression of atherosclerosis.  The Court therefore should exclude any testimony by plaintiff's experts that Vioxx can accelerate the progression of atherosclerosis.  *See, e.g., Moore*, 151 F.3d at 278 (holding, in part, that experts' reliance on studies that did not support their conclusions was grounds for excluding the expert testimony).

Indeed, no study that plaintiff's experts traditionally rely on to support their atherosclerosis acceleration theory is reliable for this proposition.  For example, the Egan study[4] did not involve humans, nor did it even involve Vioxx.  Instead, the authors administered a different COX-2 inhibitor, alone and in combination with a thromboxane receptor antagonist, to genetically altered mice.  Animal studies involving drugs other than Vioxx provide an insufficient basis for an opinion that Vioxx can accelerate atherosclerosis in humans.[5]  Even in mice, however – and putting aside that the study did not involve Vioxx – the authors did not find

---

[3] *Id*.

[4] Egan, K. at al., *Cyclooxygenase, Thromboxane, and Atherosclerosis: Plaque Destabilization by Cycooxygenase-2 Inhibition Combined with Thromboxane Receptor Antagonism*, CIRCULATION 2005: 111:334-42.

[5] *Compare Brock*, 874 F.2d at 313 (holding animal studies have "very limited usefulness" given difficulty extrapolating results to humans) *and Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 729 (Tex. 1997) ("the only way to test whether data from nonhuman studies can be extrapolated to humans would be to conduct human experiments or to use epidemiological data") *with McClain v. Metabolife International, Inc.*, 401 F.3d 1233, 1246 (11th Cir. 2005) (excluding expert's opinion that ephedrine causes vasospasms based on analogy to different drug and noting that "even small differences in chemical structure can sometimes make very large differences in the type of toxic response that is produced") (internal quotation marks and citations omitted).

that COX-2 inhibition accelerated the development of atherosclerosis. On the contrary, they found the *opposite*. As the published article reports, the authors found that administration of a selective COX-2 inhibitor, either alone or in combination with a thromboxane receptor antagonist, "*failed to modify* disease progression" in mice.[6]

Like the Egan study, the Rudic study[7] also did not involve humans or Vioxx. Instead, it involved mice genetically-engineered to lack a prostacyclin receptor[8] and mice that received numesulide, a COX-2 inhibitor that is not related to Vioxx. In one experiment, the researchers transplanted atherosclerotic arteries into the two groups of mice and measured the rate at which the transplanted tissues were rejected in both groups. The results of this experiment have no relevance here because – in addition to the fact that this is a study of mice, not men – Mr. Dedrick did not receive numesulide or coronary artery transplants. In a second experiment, the researchers surgically narrowed the arteries in both groups of mice to simulate ischemia and reported that *neither* group experienced a "further . . . reduction in luminal diameter."[9] The

---

[6] Egan, K. at al., *Cyclooxygenase, Thromboxane, and Atherosclerosis: Plaque Destabilization by Cycooxygenase-2 Inhibition Combined with Thromboxane Receptor Antagonism*, CIRCULATION 2005: 111:334-42.

[7] Rudic et al., *COX-2-Derived Prostacyclin Modulates Vascular Remodeling*, CIRCULATION RESEARCH 2005; 96:1240-1247, at 1244.

[8] No evidence suggests that COX-2 inhibition, by Vioxx or any other COX-2 inhibitor, reduces human prostacyclin production to zero. Dr. FitzGerald's study, conducted with Merck researchers and later published, found that Vioxx reduced urinary prostacyclin metabolites by only about 50 percent. *See* Catella-Lawson, F. et al., *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics and Vasoactive Ekosanoids*, J. PHARMACOL. AND EXP. THERAP. 1999 May; 289(2):735-41. This alone precludes any scientifically reliable extrapolation from Dr. Rudic's mouse study to hypothetical clinical effects of Vioxx in humans.

[9] Rudic et al., *COX-2-Derived Prostacyclin Modulates Vascular Remodeling*, CIRCULATION RESEARCH 2005; 96:1240-1247, at 1244.

results of this latter experiment contradict plaintiff's theory that COX-2 inhibition can accelerate atherosclerosis.

**III.     MULTIPLE STUDIES UNDERMINE PLAINTIFF'S EXPERTS' THEORY.**

Further demonstrating the lack of support for plaintiff's theory that Vioxx can accelerate the progression of atherosclerosis, there are various animal studies that either have refuted the theory or, in some cases, demonstrated that Vioxx in fact *slowed* the development of atherosclerosis.

For example, an earlier mouse study by Olesen (2002) found that administration of a potent experimental COX-2 inhibitor (not Vioxx) did not accelerate atherosclerosis.[10]  An even more recent mouse study published in September 2005 by Burleigh and others (including noted pharmacologist Dr. John Oates),[11] in which the authors found that "[s]elective inhibition of COX-2" – this time using Vioxx as opposed to some other COX-2 inhibitor – in fact "reduces atherosclerosis in . . . mice."[12]  Notably, this finding was not isolated or unexpected, but replicated and expanded on the similar finding of an earlier published mouse study by the same authors.[13]  In both studies, the authors hypothesized that these results occurred because the anti-inflammatory properties of Vioxx reduced COX-2-associated inflammation involved in the

---

[10] Olesen, M et al., *No effect of Cyclooxygenase Inhibition on Plaque Size in Atherosclerosis-prone Mice*, SCAND. CARDIOVASC. J., 2002 Dec; 36(6):362-7.  *See also* Pratico, D et al., *Acceleration of atherogenesis by COX-1 dependent prostanoid formation in low density lipoprotein receptor knockout mice*, PROC NATL ACAD SCI USA, 2001 Mar. 13;98(6):3358-63, Epub 2001 Mar 6.

[11] Burleigh, ME et al., *Cyclooxygenase-2 Promotes Early Atherosclerotic Lesion Formation in ApoE-deficient and C57BL/6 Mice*, J MOL CELL CARDIOL, 2005 Sep. 39(3):443-52.

[12] *Id.* at 446.

[13] Burleigh, ME et al., *Cyclooxygenase-2 Promotes Early Atherosclerotic Lesion Formation in LDL Receptor-deficient Mice*, CIRCULATION, 2002 Apr. 16; 105(15):1816-23.

atherosclerotic process.[14]  Finally, several recent studies in humans have suggested that COX-2 inhibition (including COX-2 inhibition from Vioxx) is associated with significantly reduced levels of C-reactive protein – considered a marker for progression of atherosclerosis with possible direct involvement in the atherosclerotic process.[15]  Again, these results reinforce the absence of reasonable or meaningful support in the scientific literature for *any* suggestion that Vioxx promotes or accelerates atherosclerosis in humans.

Given this absence of reliable scientific support for the theory that Vioxx can accelerate atherosclerosis, the Court should preclude plaintiff's experts from testifying that such a theory was a possible mechanism for injury in this case.

## IV. PLAINTIFF PRESENTS NO DATA SUPPORTING AN OPINION THAT VIOXX CAUSES PLAQUE RUPTURES.

As with his atherosclerosis acceleration theory, plaintiff's theory that Vioxx causes plaque ruptures is devoid of scientific support.  Of the various studies in patients taking Vioxx, *none* purported to examine the extent or progression of atherosclerosis in those patients.  Accordingly, no study supports plaintiff's theory that Vioxx can cause plaque ruptures.

Plaintiffs' experts in other cases have purported to rely on a mouse study by Egan as support for an opinion that Vioxx can cause plaque ruptures.  But that study provides no support either.  As explained above, it involved genetically-modified mice that were not even given

---

[14] *See* Ross, R., *Atherosclerosis – An Inflammatory Disease*, NEW ENG. J. MED., Jan.14, 1999; 340:115-26 (describing atherosclerosis as "an inflammatory disease").

[15] Bogaty, P et al., *Impact of Prolonged Cyclooxygenase-2 Inhibition on* Inflammatory *Markers, and Endothelial Function in Patients With Ischemic Heart Disease and Raised C-reactive Protein: A Randomized Placebo Controlled Study*, CIRCULATION, 2004; 110:934-39; Monakier, D et al., *Rofecoxib, a COX-2 inhibitor, Lowers C-reactive Protein and Interleukin-6 Levels in Patients With Acute Coronary Syndromes*, CHEST, 2004 May;125(5):1610-5; *see also* Ridker, P et al., *Inflammation, Aspirin, and the Risk of Cardiovascular Disease in Apparently Healthy Men*, NEW ENG. J. MED., April 3, 1997; 336:973-79 (clinical finding of relationship between C-reactive protein and stroke and myocardial infarction).

8

Vioxx and that were given a thromboxane receptor antagonist. This study thus does not establish that Vioxx is capable of causing plaque ruptures in humans. In fact, in the Egan study, administration of a COX-2 inhibitor alone *did not* lead to plaque destabilization in the mice. It was only when the COX-2 inhibitor (again, not Vioxx) was given with the thromboxane receptor antagonist (a drug that Mr. Dedrick did not take) that there were "changes" in the plaque of the genetically modified mice. Plaintiff should not be permitted to present the jury a theory of general causation that plaintiff's own experts admit is completely unsupported by scientific evidence and totally irrelevant to the plaintiff's injury.

## V.     CONCLUSION.

For the foregoing reasons, Merck respectfully requests that the Court grant this Motion and preclude any testimony from plaintiff's expert witnesses: (i) that Vioxx can or did accelerate the progression of atherosclerosis; and (ii) that Vioxx can or did cause plaque rupture.

Dated:   November 15, 2006                    Respectfully submitted,

s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Mark Ouweleen
Carrie Jablonski
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300

9

Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

And

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Opinion Testimony by Plaintiff's Experts That Vioxx Accelerates Atherosclerosis or Causes Plaque Rupture has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 15th day of November, 2006.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel