## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX | ) MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) |
| | ) SECTION: L |
| THIS DOCUMENT RELATES TO ALL | ) |
| CASES | ) JUDGE FALLON |
| | ) MAG. JUDGE KNOWLES |

### MERCK & CO., INC.'S MOTION AND INCORPORATED MEMORANDUM FOR A PROTECTIVE ORDER PREVENTING CORPORATE DEPOSITION ON DUPLICATIVE, IRRELEVANT AND PRIVILEGED TOPICS

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Merck respectfully moves for a protective order preventing plaintiffs from conducting the Rule 30(b)(6) corporate deposition noticed by the PSC for November 20, 2007.  As set forth below, the topics plaintiffs seek to cover in that deposition – related to Merck's insurance coverage, ongoing insurance arbitrations, and investigations by federal regulatory agencies – are duplicative, irrelevant, confidential and/or privileged and are therefore not properly subject to discovery.  As a result, Merck should not be required to designate a corporate representative for deposition on any of these topics.

### BACKGROUND

The PSC has noticed a corporate deposition, pursuant to Rule 30(b)(6), requiring Merck to designate and produce a representative to testify on Monday, November 20, 2006.  (*See* Pls.' Notice of [Fed. R. Civ. P.] 30(b)(6) Corporate Deposition (Oral and Videotaped) ("Deposition Notice") at 1, October 27, 2006 (attached as Ex. A).)  In their Notice of Deposition, plaintiffs identify twenty subjects to be covered at the deposition and set forth twenty-one requests for production of documents.  (Deposition Notice at 9-16.)  Merck has objected to  plaintiffs'

requests for production on multiple grounds.  (*See* Responses and Objections of Merck & Co., Inc. To The Document Requests Contained in Plaintiffs' Notice Of [Fed. R. Civ. P.] 30(b)(6) Corporate Deposition (Oral and Videotaped) ("Document Request Objection"), November 16, 2006 (attached as Ex. B).)  Merck now submits this motion for a protective order to prohibit plaintiffs from deposing a designated corporate representative about Merck's insurance policies and claims, the ongoing arbitration between Merck and its insurers, and information related to Merck's knowledge of regulatory investigations conducted by the Department of Justice and Securities Exchange Commission.

## ARGUMENT

Plaintiffs seek to depose Merck's designated corporate representative regarding: (1) Merck's insurance coverage and claims; (2) ongoing, confidential insurance arbitration proceedings involving Merck and its insurers; and (3) regulatory investigations by the Department of Justice ("DOJ") and Securities Exchange Commission ("SEC").  Because discovery relating to these subjects is irrelevant to plaintiffs' product liability actions and, in some cases, will require Merck to disclose information subject to confidentiality orders or attorney-client privilege, this Court should issue a protective order barring plaintiffs from deposing a Merck representative on any of these subjects.

## I.     DISCOVERY RELATED TO INSURANCE COVERAGE IS IRRELEVANT AND DUPLICATIVE.

Seventeen of the twenty subjects plaintiffs identify as potential topics to be covered in the scheduled 30(b)(6) deposition relate to Merck's insurance coverage, claims, and information. (*See* Deposition Notice at 9-13, ¶ II.1-II.16, II.20.)  Because the insurance-related matters identified by plaintiffs fall outside the permissible scope of discovery allowed by the Federal Rules, Merck should not be required to provide deposition testimony on these topics.

Two provisions of the Federal Rules govern disclosure of insurance information.  First, Rule 26(a)(1)(D) requires disclosure of "any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(D).  While plaintiffs are automatically entitled to this information, insurance-related materials that do not fall under the narrow scope of Rule 26(a)(1)(D) are not discoverable unless plaintiffs can show that the information sought is "relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1); *see also Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987), cert. denied 484 U.S. 917 (1987) ("information as to risk management reserves is beyond the reach of [mandatory insurance disclosure]" and need only be produced upon a showing of relevance).

Here, additional discovery regarding Merck's insurance coverage and claims is inappropriate because:  (1) Merck has already satisfied the requirements of Rule 26(a)(1)(D), and (2) the remaining insurance information plaintiffs request is not relevant to the claim or defense of any party.

A.    **Merck Has Already Disclosed The Insurance Information Required Under Rule 26(a)(1)(D).**

Rule 26(a)(1)(D) requires a defendant to disclose to plaintiffs the insurance policies that may help satisfy part or all of any judgment in a case.  The purpose of the Rule is to "enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation."  Advisory Committee's Note to Fed. R. Civ. P. 26(b)(2) (1970).  As a result, the Rule is very limited in nature, providing only for the disclosure of insurance coverage information and not the disclosure of any peripheral facts, such as a party's application for insurance.  *Id.*

3

Case law interpreting Rule 26(a)(1)(D) confirms that the rule requires disclosure of only the insurance policy itself – it does ***not*** require disclosure of underlying information or documents relating to the relevant policy.  *See Excelsior Coll. v. Frye*, 233 F.R.D. 583, 586 (S.D. Cal. 2006) (holding that Rule 26(a)(1)(D) merely requires the disclosure of an insurance policy or other agreement that gives rise to an insurer's obligation to indemnify or hold its insured harmless for a judgment, and does not require the production of all documents related to insurance, such as information regarding policy limits and information regarding any release of the insurer's obligations under the policy); *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, No. 01 C 1618, 2003 U.S. Dist. LEXIS 4393, at *7 (N.D. Ill. March 20, 2003) (Rule 26(a)(1)(D)'s reference to "any insurance agreement" did not embrace insurer's reservation-of-rights letter; plaintiff was entitled to nothing more than the insurance policies themselves); *All AT&T Corp. Fiber Optic Plaintiffs v. All AT&T Corp. Fiber Optic Defendants*, MDL Docket No. 1313, 2002 U.S. Dist. LEXIS 11219, at *8 (S.D. Ind. June 5, 2002) (Rule 26(a)(1)(D) did not require disclosure of defendant's settlement agreement with its insurers, under which the insurers did not have an obligation to indemnify defendant or otherwise satisfy a judgment against it).

Here, Merck has already disclosed all the insurance policies that may help satisfy any judgment in this matter, thereby satisfying its disclosure requirements under Rule 26(a)(1)(D). Moreover, Merck's previous disclosures about these policies cover many of the topics identified by plaintiffs as potential subject matters for the deposition in question.  For example, subject matter 2 seeks testimony regarding "[a]ll policies of insurance issued to Merck . . . including the dates of issue and effective dates of such policies, the types of policies . . . the limits of insurance provided under any such policies."  (Deposition Notice at 9.)  Subject matter 14 relates to "[i]nsurance coverage which may cover any personal injury claim against Defendant Merck …

4

for Vioxx related claims," and subject matter 15 seeks information regarding "all policies that may afford Merck coverage for Vioxx related claims." (Deposition Notice at 12.) These topics are clearly covered by the disclosure already made by Merck, and Merck should not be burdened with re-providing this information in a deposition setting. There is simply no reason that a corporate representative should be required to appear and testify at a deposition only to read from documents already in plaintiffs' possession.

Because requiring a representative of Merck to rehash all of the information already provided to the plaintiffs would unnecessarily burden Merck and increase the costs of discovery, the Court should preclude plaintiffs from deposing Merck's representative about the insurance matters already covered by Merck's Rule 26(a)(1)(D) disclosures.

### B.   Other Insurance Information Is Irrelevant and Exceeds the Permissible Scope of Discovery.

Insurance-related matters not covered by Merck's 26(a)(1)(D) insurance policy disclosure are also inappropriate subjects for corporate deposition because these issues are irrelevant and outside the scope of permissible discovery. *See* Fed. R. Civ. P. 26(b)(1) (plaintiffs may only depose Merck witnesses as to "any matter, not privileged, that is relevant to the claim or defense of any party").

Courts have consistently recognized that insurance information with no direct bearing on the parties' claims is not discoverable. For example, in *Ballard v. Allegheny Airlines, Inc.*, 54 F.R.D. 67, 69 (E.D. Pa. 1972), an action for slander, false imprisonment, and assault arising out of an incident on defendant's airplane, the court held that the defendant was not required to answer plaintiff's interrogatories requesting the name of defendant's insurance company's employee handling the case, as well as the "insurer's attitudes toward questions of coverage" because such matters were irrelevant to the plaintiff's case. *Id*. Similarly, in *Potomac Electric*

*Power Co. v. Cal. Union Ins. Co.*, 136 F.R.D. 1, 2 (D.D.C. 1990), the court held that the existence and contents of reinsurance policies were discoverable, but correspondence and other documents relating to reinsurance agreements did not fall within the mandatory disclosure provision and were otherwise irrelevant.

The same is true here.  Plaintiffs seek information about Merck's insurance coverage that has absolutely nothing to do with the claims or defenses of any party in this case.  Information regarding the nature or extent of Merck's insurance coverage and claims is wholly irrelevant to the issue of Merck's liability for Vioxx-related personal injury claims.  As a result, additional discovery on insurance issues is not reasonably calculated to lead to the discovery of admissible evidence.  For example, Subject Matter 9 asks for the identities of any insurance agents or brokers involved in the placement of insurance policies to Merck.  (Deposition Notice at 11, ¶ II.9.)  However, information regarding the individual responsible for  brokering Merck's insurance is not the least bit relevant for purposes of determining liability in a product liability case – nor could this information possibly lead to the discovery of relevant information.  Subject Matter 1, which asks about ***all*** underwriting policies of insurance to Merck, is similarly irrelevant, as it covers policies written during times when Vioxx was not on the market and therefore would not be available to help satisfy a judgment in Vioxx-related claims.  (Deposition Notice at 9, ¶ II.1.)  And Subject Matter 3, which deals with the Merck employees responsible for handling insurance matters, is equally immaterial.  (Deposition Notice at 9-10, ¶ II.3.)  The identity of these employees, as well as their dealings with Merck's insurance companies, are simply not relevant to the claims or defenses made by the plaintiffs in this product liability action.

In short, this is a product liability action, involving issues such as failure to warn, personal injury, and consumer fraud – not insurance.  While the insurance policies that may help pay for any judgment could be relevant to case management decisions (and only case management decisions), such policies have already been disclosed.  Anything beyond the policies themselves will have no bearing on any aspect of this case whatsoever.  Allowing plaintiffs to engage in a corporate fishing expedition involving utterly irrelevant discovery would cause Merck undue burden and expense and unnecessarily waste the time of Merck's representative and all other parties involved.  For these reasons, the Court should enter a protective order precluding plaintiffs from deposing Merck's corporate representative regarding insurance issues.

II.    **INFORMATION RELATED TO ONGOING INSURANCE ARBITRATION PROCEEDINGS IS SUBJECT TO CONFIDENTIALITY ORDERS AND SHOULD THUS BE SHIELDED FROM DISCOVERY.**

Plaintiffs also seek to question Merck's corporate representative regarding "[a]ll insurance arbitrations or similar type proceedings relating to insurance coverage for any Vioxx related claims or settlements."  (Deposition Notice at 13, ¶ II.17.)  However, Merck is expressly prohibited from revealing such information under the terms of the confidentiality orders issued in *SR International Business Insurance, Ltd., et. al. v. Merck & Co., Inc.*, ("SRI Arbitration") and *Merck & Co., Inc. v. XL Insurance (Bermuda) Ltd.* ("XL Arbitration"), the only insurance coverage arbitrations involving Vioxx claims.  As a result, Merck is entitled to a protective order prohibiting plaintiffs from deposing Merck's corporate representative regarding insurance arbitrations.

The SRI and XL Arbitrations involve disputes regarding Bermuda Form insurance coverage between Merck and its British insurance providers.  The London Arbitration Tribunal, which is controlling the insurance arbitration proceedings, issued express Confidentiality Orders

in both actions.  (*See* SRI Confidentiality Order, (attached as Ex. C); XL Confidentiality Order (attached as Ex. D).)  These orders require that all parties to the arbitrations, as well as the members of the Board of Arbitration, keep the arbitration proceedings and all related documents confidential.  Specifically, the SRI Confidentiality Order prohibits disclosure of "the arbitral proceedings and all related documents, including rulings or awards" (SRI Confidentiality Order at ¶ 1) and restricts the parties from disclosing "confidential information" related to the arbitration proceedings.  Such confidential information includes, but is not limited to:

> the notice of arbitration, pleadings, communications with arbitrators, documents produced by the Parties during the course of disclosure (other than documents produced which are in the public domain), statements of fact and expert witnesses, exhibits, memoranda, and hearing transcripts.

*Id.*  The XL confidentiality order expressly adopts these same terms.  (*See* XL Confidentiality Order at 2 ("The Parties to this proceeding shall be required and expected, in all actions and submissions relating to this proceeding, to comply with applicable obligations of confidentiality, as imposed under English law and the SRI Confidentiality Order.").)

Pursuant to both the SRI and XL Confidentiality Orders, parties to the arbitration proceedings may use confidential information only for the purposes of the arbitration unless disclosure is required by court order or other applicable law.  (*See* SRI Confidentiality Order at ¶ 2, 4; XL Confidentiality Order at 2 (citing SRI Order).)  In fact, the SRI Confidentiality Order requires that "in the event that a third party serves a subpoena or a document request on a Party that calls for the production of Confidential Information obtained from other Parties, the Party … shall reasonably cooperate with such other Parties in resisting such request by appropriate means."  (SRI Confidentiality Order at ¶ 5; *see also* XL Order at 2 (citing SRI Order).)  Thus, under the plain terms of these orders, Merck is not permitted to answer questions relating to the details of the insurance arbitrations in a deposition in this unrelated products liability litigation.

Nor should this Court force Merck to respond to plaintiffs' inquiries regarding insurance arbitration proceedings ongoing in London.  Rather, the Court should respect and enforce the terms of the Confidentiality Orders issued by the London Tribunal because: (1) U.S. courts have a strong policy interest in promoting arbitration of disputes; and (2) principles of international comity dictate that U.S. courts should not interfere with ongoing foreign proceedings.

*First*, this Court should protect the confidentiality of the SRI and XL insurance arbitration proceedings so as not to discourage the parties' participation in arbitration proceedings.  As a corollary of the general policy favoring and promoting the arbitration of disputes, U.S. courts have explicitly recognized that arbitration panels must have the ability to make and enforce confidentiality orders applicable to their proceedings.  *See, e.g.*, *Odfjell ASA v. Celanese AG*, 348 F. Supp. 2d 283, 287-88 (S.D.N.Y. 2004) (noting, under the Federal Arbitration Act, that arbitrators are competent to decide issues of confidentiality and privilege in regard to materials produced in their arbitrations).  Further, courts generally recognize that confidentiality orders issued in arbitration proceedings must be respected in order to avoid unfair "surprise" to the parties involved.  *See Jaffe Pension Plan v. Household International, Inc.*, No. Civ. A. 04-N-1228 (CBS, 04-X-0057), 2004 WL 1821968, at *2 (D. Colo. Aug. 13, 2004) (cautioning that "a court should not cavalierly disregard the expectations of the parties to an arbitration as memorialized in their confidentiality agreement").  *See also Fla. ex rel. Butterworth v. Jones Chemicals, Inc.*, 148 F.R.D. 282, 288 (M.D. Fla. 1993) (acknowledging that failure to protect a party's reliance on a protective order would not only prejudice the confidentiality interests of that party, but also would undermine the effectiveness of protective orders in facilitating discovery).

In this case, Merck and its insurers entered the London arbitrations with an expectation of confidentiality as to those proceedings.  By issuing Confidentiality Orders in these proceedings, the London Tribunal essentially promised the parties that materials created for the arbitration and information exchanged during the proceedings would not be disclosed to the general public or made available to third-parties involved in other litigation.  Merck has relied on these orders throughout the insurance proceedings and did not expect that plaintiffs alleging product liability claims would be able to obtain information relating to the SRI and XL insurance arbitrations. This Court should not discourage Merck – or any other company – from participating in arbitration proceedings in the future by disregarding the expectations of the parties and ordering discovery of confidential arbitration information.

*Second*, basic principles of international comity dictate that this Court should respect the rulings of the arbitration panel and refuse to allow deposition questioning regarding the London arbitration proceeding.  Under English common law, which governs the conduct of the London arbitrations, confidentiality is a necessary and inherent attribute of arbitration proceedings.  For example, in *Ali Shipping Corp.* the court held that:

> strangers shall be excluded from the hearing and conduct of the arbitration and neither the tribunal nor any of the parties can insist that the dispute should be heard or determined concurrently with or even in consonance with another dispute, however convenient that course may be to the parties seeking it and however closely associated the disputes in question may be

[1998] 1 Lloyd's Rep. 643, 650-51.  This confidentiality extends to all aspects of the proceedings.  *AEGIS Ltd. v. European Reinsurance Co.* [2003] 1 W.L.R. 1041, 1046-47, 1050 ("commercial arbitrations are essentially private proceedings and unlike litigation in public courts do not place anything in the public domain").  Further, leading English commentators have reinforced the importance of confidentiality in the specific context at issue here – where

insurance coverage arbitration proceedings are being conducted contemporaneously with related, underlying tort litigation:

> The confidentiality of the arbitral proceedings, and documents exchanged within those proceedings, may be particularly important in the context of . . . arbitration.  For example, litigation of the underlying claims against the policyholder may be continuing in the United States or elsewhere, and the policyholder may wish to avoid documents exchanged in the arbitration becoming discoverable in underlying litigation against it . . . English law protects the confidentiality of arbitration proceedings, and indeed, confidentiality is a term implied into arbitration agreements as a matter of law.

R. Jacobs, L. Masters & P. Stanley, *Liability Insurance in International Arbitration: The Bermuda Form* ¶¶ 15.21-15.22 (Hart, 2004).

U.S. courts regularly afford respect to confidentiality restrictions issued by courts in other domestic jurisdictions on grounds of comity.  *See, e.g.*, *Dushkin Pub. Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335-36 (D.D.C. 1991) (court declined, on comity grounds, to order production of documents subject to protective order entered by another federal district court, and stated that plaintiff should direct any such request to the court that issued the protective order). U.S. courts have also extended comity to orders issued in foreign proceedings regarding other matters.  *See, e.g.*, *In re Enercons Virginia, Inc.*, 812 F.2d 1469, 1473 (4th Cir. 1987) (affirming district court's deference to Italian court's order appointing a bankruptcy trustee under the doctrine of international comity, noting that "the Italian proceedings were sufficiently analogous to our fundamental concepts of justice as to warrant our extension of comity to them").  The same principles should apply to confidentiality orders issued in foreign jurisdictions.  Otherwise, U.S. courts would render confidentiality orders issued by the London Arbitration Tribunal null and void.  For this reason too, the Court should respect the confidentiality of the London

insurance arbitrations and prohibit plaintiffs from questioning Merck's corporate representatives regarding those proceedings.

## III.   RELEVANT INFORMATION RELATED TO REGULATORY INVESTIGATIONS HAS ALREADY BEEN PRODUCED IN THIS LITIGATION AND ANY ADDITIONAL DISCOVERY IS PROTECTED BY ATTORNEY-CLIENT PRIVILEGE.

Finally, plaintiffs seek to depose Merck's corporate representative regarding the investigations initiated by the DOJ and SEC after Vioxx was withdrawn from the market in September of 2004.  (*See* Deposition Notice at 13, ¶ II.18 – II.19.)  As plaintiffs well know, Merck has already produced to plaintiffs all relevant, non-privileged information relating to these regulatory investigations.  Further discovery related to the investigations would necessarily involve information that is protected by attorney-client privilege.

Throughout the SEC and DOJ investigations Merck communicated with both agencies through its attorneys.  Merck's attorneys, in turn, evaluated the agencies' requests for information and provided legal advice to the company regarding the best way to respond to the government agencies' inquiries.  Thus, a non-legal Merck representative would be unable to answer most, if not all, of plaintiffs' questions about these investigations.  Nor would it be appropriate for Merck to designate one of its lawyers to appear and give deposition testimony as a corporate representative, because Merck's counsel would be unable to answer most – if not all – of plaintiffs' questions without revealing privileged communications.  For example, counsel could not testify as to any of the communications with Merck's officers and employees regarding the company's response to the government investigations.  *See Upjohn Co. v. United States*, 449 U.S. 383, 391-92 (1981) (communications between corporate employees and corporate counsel are privileged so long as the attorney is acting in his legal capacity and the information at issue is conveyed in connection with the rendering of legal advice).  Similarly, privilege would preclude

counsel from answering questions regarding the kind of information Merck provided to its attorneys in connection with the government investigations without violating the privilege. *See Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 518 (D.N.J. 1987) (documents prepared and transmitted by corporate personnel to corporation's counsel, in connection with request for information from SEC, are protected by attorney-client privilege).

As other courts have recognized, "[b]ecause deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a . . . protective order." *New York v. Solvent Chem. Co.*, 214 F.R.D. 106, 111 (W.D.N.Y. 2003) (citing *SEC* v. *Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992); *see also Stavola v. Northeast Utilities*, No. 3:05cv998 (JBA), 2006 WL 2850414, *2 (D.Conn. Oct. 4, 2006) ("Depositions of opposing counsel are typically held in a 'negative light'"). Indeed, courts recognize that attorney depositions "merely embroil[] the parties and the court in controversies over the attorney-client privilege and more importantly, involve[] forays into the area most protected by the work product doctrine." *Solvent*, 214 F.R.D. at 111. As the Eighth Circuit held in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986):

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation.

*Id*. (citation omitted).

Thus, deposition of an attorney "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the

information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.  These same

limitations apply where a party seeks to depose in-house counsel.  For example, in *Stalling v.*

*Union Pacific Railroad Co.*, No. 01 C 1056, 2004 WL 783056, at *3-4 (N.D. Ill. Jan. 23, 2004),

the court issued a protective order preventing plaintiff from deposing defendant's in-house

counsel based on the factors set forth in *Shelton*.  There, the court held that the proposed

deposition was inappropriate, as plaintiff failed to demonstrate that no other means existed to

obtain the information sought from in-house counsel, especially in light of the fact that "the

information [plaintiff] seeks is available in materials already produced."  *Id.* at *3.

  Here, just as in *Stalling*, plaintiffs cannot show that they are entitled to depose Merck's

in-house counsel.  As explained above, Merck has already turned over to plaintiffs all relevant,

non-privileged information regarding the SEC and DOJ investigations.  As a result, it is clear

that: (1) plaintiffs have available, and have in fact exercised, an alternative means of obtaining

information relevant to the governmental  investigations, (2) any additional information sought

in an attorney deposition would likely be privileged, and (3) any such deposition is not crucial to

plaintiffs' preparation of the case because plaintiffs are already in possession of all discoverable

information relevant to the regulatory investigations at issue.  For these reasons, Merck should

not be required to designate a corporate representative to give deposition testimony that may

violate the company's attorney-client privilege.

  In sum, because Merck has already responded to discovery requests for relevant, non-

privileged information regarding the DOJ and SEC investigations, additional discovery on this

subject would merely be duplicative, resulting in a waste of time for both parties.  Moreover, to

the extent that plaintiffs seek to obtain additional information on this topic by questioning

Merck's counsel, such inquiries would be objectionable under the attorney-client privilege.  For

these reasons, Merck should not be required to provide a corporate representative deposition regarding the SEC and DOJ investigations.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Merck's motion for a protective order and prohibit plaintiffs from deposing a Merck representative regarding (1) irrelevant insurance policies and claims; (2) confidential insurance arbitration proceedings; and (3) privileged information relating to SEC and DOJ investigations.

Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone:  504-581-3200
Fax:  504-581-3361

Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion and Incorporated Memorandum for Protective Order has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of November, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel