U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED    11-15-06
LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | : | **MDL NO. 1657** |
| **IN RE: VIOXX** | : | |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
| | : | |
| | : | **JUDGE FALLON** |
| | : | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO**
*Mason v. Merck & Co., Inc.*, 06-810

### JURY CHARGE

Members of the Jury:

You have now heard all the evidence in this case as well as the final argument.

It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in this case.

In any jury trial, there are, in effect, two judges.  I am one of the judges; the other is you the jury.  It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration.  It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You, as jurors, are the judges of the facts.  But in determining what actually happened in this case—that is, in reaching your decision as to the facts—it is your sworn duty to follow the law I am now in the process of defining for you and you must follow my instructions as a whole.

-1-

Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely upon the testimony and other evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and corporations or public entities stand equal before the law and are to be dealt with as equals in the court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that they are particularly concerned that you recall. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case. What the lawyers say is not binding upon you.

Also, during the course of trial, I have occasionally made comments to the lawyers, or

asked a question of a witness, or admonished a witness concerning the manner in which he should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the facts in this case. In arriving at your own findings as to the facts, you should disregard anything I may have said during the trial, except for my instructions to you on the law.

The law of the United States permits the judge to comment on evidence presented during a case. I do not believe that I have made any comments on the evidence in this case. If you could possibly construe any remarks which I have made during the course of this trial, however, as a comment on the evidence, then I instruct you that any such comment on my part is only an expression of my opinion as to the facts, and you, the jury, may disregard such comment or comments entirely since you, as jurors, are the sole judges of the facts in this case.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

You may consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating a fact to be proved. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

In deciding this case, you are expected to use your good sense. Give the evidence and the testimony of the witnesses a reasonable and fair interpretation in the light of your knowledge of

the natural tendencies of human beings.

In weighing the testimony and in determining the credibility of any witness, you may consider the conduct of the witness, his or her bearing on the witness stand, his or her personal feelings as demonstrated by his or her testimony and his or her actions, any interest he or she may have in the outcome of the case, any prejudice or bias he or she may have shown, and any partiality he or she may have demonstrated.

If a witness is shown to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony on other matters and you may distrust all of the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field may be called as an expert witness and is permitted to state his opinion on those technical matters. Such witnesses have testified in this case. You are not, however, required to accept that opinion. As with any other witness, it is up to

-4-

you to decide whether to rely upon it.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the facts the expert relied upon are incorrect, that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has economic, philosophical, or any other interest in the outcome of the case.

Certain testimony has been presented to you through a video deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers were presented by video to you. This deposition testimony is entitled to the same consideration, is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

During the course of trial, you will have heard objections to evidence. Sometimes these have been argued out of the hearing of the jury.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against or show any prejudice against a lawyer or his client because of the

making of an objection.

Upon allowing testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, you, the jury, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer the question.

During the course of trial, I have occasionally asked a question of a witness in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the facts to which my question or questions may have related. Remember at all times, you, as jurors, are the sole judges of the facts.

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

This lawsuit arises out of Charles Laron Mason's use of Vioxx. Merck manufactured Vioxx. The Plaintiff, Charles Mason, contends that he suffered a heart attack as a result of his use of Vioxx. The Plaintiff seeks compensatory damages proximately caused by his injury. He seeks recovery under any of several separate theories of recovery.

-6-

First, the Plaintiff alleges that Merck failed to warn, or inadequately warned, his nurse practitioner of a risk associated with Vioxx.  The Plaintiff asserts this claim under both a strict liability theory and a negligence theory.  Second, the Plaintiff alleges that Merck is liable for fraud because it recklessly or knowingly misrepresented or knowingly failed to disclose known risks associated with Vioxx to Charles Mason's treating nurse practitioner.

Merck contends that its warning to Charles Mason's prescribing nurse practitioner was adequate and complied with the rules of the FDA.  Merck also asserts that it acted reasonably and that it disclosed to the FDA and the medical community all relevant Vioxx safety data and risk information available at the time Charles Mason's nurse practitioner prescribed Vioxx to him. Finally, Merck contends that Vioxx did not cause or contribute to Charles Mason's injuries.

Although both of the Plaintiff's claims for recovery have been tried together, each is separate from the other, and each party is entitled to have you separately consider each claim. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would have if each claim had been tried before you separately.  The Plaintiff is not required to prove both of these theories in order to recover.

The mere fact that the Plaintiff may have been injured, standing alone, does not permit you, the jury, to draw any inference that such injuries were caused by Merck.

Let me now discuss the law applicable to each of the Plaintiff's theories of recovery.

## FAILURE TO WARN

I will now discuss with you the law governing the Plaintiff's first claim, failure to warn.

The burden of proof is on the plaintiff in a civil action, such as this one, to prove every essential element of this claim by a "preponderance of the evidence."  A preponderance of the

evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true.  In other words, to establish a claim by a "preponderance of the evidence" means to prove that the claim is more likely so than not so.

In determining whether any fact has been proved by a "preponderance of the evidence" in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  If the proof should fail to establish any essential element of the Plaintiff's claim by a preponderance of the evidence, you, the jury, should find for the Defendant as to that claim. The Plaintiff need not produce every possible witness, and he need not prove his claim beyond a reasonable doubt, as is necessary in a criminal prosecution.  But speculation or mere possibility and even unsupported probability is not sufficient to support a judgment in his favor.

Under the law applicable to this case, theories of negligence and strict liability in failure-to-warn cases have been deemed functional equivalents.  Thus, whether analyzed under a negligence or a strict liability theory, the test used in evaluating warning issues is one of reasonableness.  In order to decide the Plaintiff's failure-to-warn claim, therefore, you must determine whether the Plaintiff has proven by a preponderance of the evidence that Merck failed to adequately warn his treating nurse practitioner, Karen Olson, of a risk created by Vioxx that was known or reasonably scientifically knowable at the time, and if so, whether Merck's failure to warn was a proximate cause of Charles Mason's heart attack and resulting injuries.

Prescription drugs often cause unwanted side effects despite the fact that they have been carefully designed and properly manufactured.  The law deems such products "unavoidably

-8-

unsafe," but they are not defective, nor unreasonably dangerous, if they include adequate warnings of potential side effects.

Under the applicable law, a prescription drug manufacturer only has a duty to warn a "learned intermediary," such as a physician or nurse practitioner, of the potential risks or dangers inherent in a product. It does not have a duty to warn the consumer directly. This is because physicians and nurse practitioners are generally in a superior position to impart the warning to the patient, and can provide an independent medical decision as to whether use of the drug is appropriate for a particular patient. Although a prescription drug manufacturer's duty to warn of the potential risks of its product is directed only to the reasonably prudent prescriber and not to the consumer, the manufacturer is directly liable to the patient for breach of such duty.

When a prescription drug manufacturer provides a warning, it may reasonably assume that it will be read and heeded by the prescriber. Providing an adequate warning to the prescriber relieves the manufacturer of its duty to warn the patient regardless of how or if the prescriber warns the patient.

A warning is inadequate if the manufacturer fails to give a reasonably prudent prescriber warning of a particular risk that was known or knowable to the manufacturer in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. The drug manufacturer has a duty to take reasonable precautions to provide an adequate warning that would place a prescriber on guard against the harmful consequences that might result from use of the product. The duty to warn includes the duty to warn with a degree of intensity that would cause a reasonable prescriber to exercise caution commensurate with the potential danger. In determining the scope of a manufacturer's duty to

warn of dangers associated with the use of its product, the manufacturer is held to the knowledge and skill of an expert in its field. The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so and has a continuing duty to appraise consumers through their learned intermediaries of new information bearing upon a drug's risks.

In order to prove his failure-to-warn claim, the Plaintiff must not only show that Merck's warnings regarding Vioxx were inadequate, but also that such inadequacy affected the decision of his prescribing nurse practitioner to prescribe or not to prescribe Vioxx. In other words, the Plaintiff must show that Nurse Olson would not have prescribed Vioxx to him if Merck had provided an adequate warning. The manufacturer has no duty to warn a prescriber who already has independent knowledge of the risks associated with the prescription drug. However, an adequate warning to the profession may be eroded or even nullified by over-promotion of the drug through a vigorous sales program which may have the effect of persuading prescribers to disregard the warnings given.

If the greater weight of the evidence does not support the claim of the Plaintiff, your verdict should be for Merck. If the greater weight of the evidence, however, does support the claim of the Plaintiff, then your verdict should be for the Plaintiff.

## **FRAUD**

I will now discuss with you the law governing the Plaintiff's second claim, his fraud claim. Unlike the Plaintiff's first claim which must only be proven by a preponderance of the evidence, the Plaintiff must prove each element of his fraud claim by clear and convincing evidence. Clear and convincing evidence is an elevated standard of proof, which lies between the lesser standard

of "preponderance of the evidence," and the higher standard of "beyond a reasonable doubt," which is required in criminal cases. Clear and convincing evidence is that degree of proof which will produce in your mind a firm belief as to the allegations sought to be established.

To establish this claim, the Plaintiff must show that Merck made a misrepresentation concerning the cardiovascular safety of Vioxx which was false, and which Merck knew to be false or made recklessly knowing that it had insufficient knowledge upon which to base such representation, for the purpose of inducing Nurse Olson to act upon it by prescribing Vioxx to Charles Mason. The Plaintiff must further show that Nurse Olson acted reasonably and in ignorance of its falsity, that she relied on the misrepresentation, and that Charles Mason was thereby injured and damaged.

The Plaintiff may also establish his fraud claim by showing that Merck knowingly failed to disclose to his treating nurse practitioner a risk created by Vioxx that was known at the time, and that Merck's non-disclosure was a proximate cause of his heart attack and resulting injuries.

Non-disclosure, or silence, becomes fraudulent when it is the duty of the party having knowledge of the facts to reveal them and that party fails to do so. Where material facts are accessible to the manufacturer only and the manufacturer knows that they are not within the reach of the diligent attention, observation, and judgment of the purchaser's prescriber, the manufacturer is bound to disclose such facts and make them known to the purchaser's prescriber. In such a situation, the manufacturer's non-disclosure of these facts is equivalent to fraud.

To be fraudulent, the manufacturer must misrepresent or fail to disclose a matter of fact, rather than an opinion. The distinction between a fact and an opinion is generally characterized by what is susceptible of exact knowledge when the misrepresentation or omission is made.

-11-

The misrepresentation or non-disclosure must also be material.  If an objective, reasonable physician or nurse practitioner would have viewed the omitted fact as sufficiently important and significant that it would have played a role in his or her decision to prescribe Vioxx, then the non-disclosure may be deemed material.  To say it another way, the matter is material if a reasonable physician or nurse practitioner would attach importance to its existence or nonexistence in determining whether or not to prescribe Vioxx.

To recover for fraud in a pharmaceutical case, the Plaintiff's prescribing nurse practitioner must have relied on the alleged misrepresentation or non-disclosure.  If the Plaintiff's nurse practitioner was aware of the omitted facts, the Plaintiff cannot recover under this theory because his nurse practitioner could not have relied on the misrepresentation or omission.  A victim of fraud has a right to rely on the information provided so long as her reliance is not reckless or grossly negligent.  The right to rely must be determined in light of the duty of the Plaintiff's nurse practitioner to use reasonable prudence and diligence under the circumstances in ascertaining the truth with respect to the representations or omissions made to her.  The legitimacy of the nurse practitioner's reliance on the misrepresentation or omission is an issue to be decided by you, the jury.

**CAUSATION**

In order for the Plaintiff to prevail on either of his claims, he must establish that Vioxx was a proximate cause of his alleged injuries.  To prove his failure-to-warn claim, the Plaintiff must prove proximate causation by a preponderance of the evidence.  To prove his fraud claim, the Plaintiff must prove proximate causation by clear and convincing evidence.

Proximate cause means the efficient cause or direct cause.  The law defines proximate

-12-

cause as something that produces a natural chain of events which, in the end, bring about the injury. In other words, proximate cause is the cause without which the injury would not have occurred. Proximate cause requires proof of both causation-in-fact and legal cause.

Causation-in-fact is proved by establishing that the Plaintiff's injury would not have occurred "but for" the Defendant's actions. In order to prove cause-in-fact in this case, the Plaintiff must show to a reasonable degree of medical certainty both that Vioxx can cause heart attacks and that it was a cause of his heart attack.

Legal cause is proved by establishing foreseeability. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of conduct. The law requires only reasonable foresight. It is not necessary for the Plaintiff to demonstrate that the Defendant should have foreseen the particular event which occurred, but merely that the Defendant should have foreseen that its actions would probably cause injury to someone. The Plaintiff proves legal cause by establishing that the injury in question occurred as a natural and probable consequence of the Defendant's actions.

Proximate cause does not mean the sole cause. The Defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged injury. However, the Plaintiff must show that the conduct of the Defendant was a substantial factor in bringing about the result. Moreover, the Plaintiff must proffer a competent medical expert to testify to a reasonable degree of medical probability that Vioxx was a proximate cause of his injuries.

## APPORTIONMENT OF FAULT

If you find that more than one person is at fault in this case, you must decide each person's

percentage of fault. This allocation of fault must be done on a percentage basis and must total 100%. Each person's percentage should be based upon how much that person's fault contributed to the harm. If you decide that Charles Mason was at fault and that his fault was 50% or greater, under the law applicable to this case he will recover nothing. Do not reduce any award of damages to reflect these percentages of fault, however, I will make that calculation at a later time if appropriate.

## VOLUNTARY WITHDRAWAL OF VIOXX

You have heard testimony about Merck's voluntary withdrawal of Vioxx from the market in September 2004. You may not consider that fact as evidence that Vioxx was defective or defectively designed or that Merck was negligent or acted culpably. You may also not consider that fact as evidence that Merck did not adequately warn of the risks associated with taking Vioxx or as evidence that Vioxx can cause injuries such as those alleged by Charles Mason. You may, however, consider this withdrawal for other purposes, such as proving ownership, control, or feasibility of precautionary measures.

## FDA CERTIFICATION

Compliance with an FDA regulation may establish that the manufacturer met the appropriate minimum standards of due care, but compliance does not necessarily absolve the manufacturer of all liability, nor does it establish that the warnings at issue were adequate. Even if you find that the Defendant Merck met all government regulations and requirements, such compliance is not a defense if a reasonable and prudent manufacturer would have taken added precautions or if you find that Merck failed to appraise treating physicians and nurse practitioners of risks that became known or should have became known after the FDA approved the Vioxx

-14-

label.

## DAMAGES

Now let me speak with you about damages. "Damages" in this compensatory phase of the case is the term in dollars and cents which expresses the injuries sustained by the Plaintiff. If the Plaintiff has proven one or more of his claims against Merck, you must determine the amount of compensatory damages to which the Plaintiff is entitled. You should not interpret the fact that I give you instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether Merck is liable. I am instructing you on damages only so that you will have guidance in the event that you decide Merck is liable and the Plaintiff is entitled to recover money from Merck.

The Plaintiff claims that he has suffered a heart attack as a result of his use of Vioxx. He is entitled to recover the compensatory damages he sustained if he has proven either of the above theories of recovery. Compensatory damages are not allowed as a punishment against a party. Whether or not punishment is warranted in this case may be determined at a later time, for now you must only consider the issue of compensatory damages and not punitive damages.

Compensatory damages cannot be based on speculation, for it is only actual damages that are recoverable. However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of the injury, tangible and intangible. They are an attempt to make the Plaintiff whole, or to restore him to the position he would have been in if the injury had not happened.

You should consider the following elements of damages to the extent you find that the Plaintiff has established such damages by a preponderance of the evidence: past loss of earnings;

-15-

past, present, or future physical pain and suffering, including physical disability, impairment, and inconvenience, and the effect of the Plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life; past, present, or future mental anguish and feelings of insecurity caused by disability; medical expenses; and the reasonable value, not exceeding actual cost to the Plaintiff, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate the Plaintiff for his injuries.

In the event you find that the Plaintiff is entitled to receive an award for mental and/or physical disability, or mental and/or physical pain and suffering, past, present, or future, I instruct you that such an award is not subject to income tax; neither the state nor federal government will tax it. Therefore, you should determine the amount that the Plaintiff is entitled to receive without considering the effect of taxes upon it.

Also, if you find that there is a reasonable likelihood that Charles Mason may suffer future harm as a direct result of his injuries, you may include in your award a reasonable enhancement for the increased risk of such future harm. If you award damages for an increased risk of future harm, the amount of such enhancement should reflect your assessment of the percentage by which Charles Mason's risk of such future harm is greater than it was before he took Vioxx.

If you make any award for future medical expenses, you should adjust or discount the award to present value by considering what return would be realized on a relatively risk free

-16-

investment if it were invested over the period of time in which the medical expenses were likely to occur.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

Suggestions as to the amount of damages that should be awarded are mere arguments of counsel. You may consider them and use them only as guidelines to whatever extent they may aid you in arriving at a reasonable and just award in view of the evidence. But you are in no way bound by, nor should you use, any rigid mathematical formula. The determination of damages is solely your function and must be based on competent evidence.

Again, the mere fact that I have given you instructions on the law of damages does not in any way suggest that I believe that any damages are due in this case. Whether or not the Plaintiff is entitled to recover and whether or not any damages are due is for you to decide.

## CONCLUDING INSTRUCTIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach a unanimous agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. Do not, however, give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

-17-

## VERDICT FORM

I have prepared a special verdict form for your convenience and to aid you in reaching a unanimous decision. You will take the form with you to the jury room. The verdict must represent the considered judgment of each juror.

You will note that the form contains several interrogatories or questions. The answer to each question must be the unanimous answer of the jury. In the space provided below each question, you will find directions which instruct you either to answer the next question, to answer some other question, or to stop and return to the courtroom with your verdict. You must carefully follow these directions as you complete the form.

[READ THE VERDICT FORM]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. First, select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given about your conduct during the trial. After you have reached your unanimous verdict, your foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, any numerical division on any question.

If you want to communicate with me at any time, please give a signed written message or question to the Marshal, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your

-18-

question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 1657** |
| **IN RE: VIOXX** | : |  |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION: L** |
|  | : |  |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO**
   *Mason v. Merck & Co., Inc.*, 06-810

## JURY INTERROGATORIES

1.   Do you find by a preponderance of the evidence that Merck & Co., Inc. failed to adequately warn Charles Mason's treating nurse practitioner of a risk created by Vioxx that was known or reasonably scientifically knowable at the time, and that such failure to adequately warn was a proximate cause of Charles Mason's heart attack and resulting injuries?

   YES _____            NO _____

(If you answered "no" to Question #1, please skip all remaining questions, date and sign this verdict form, and inform the Marshal that a verdict has been reached.  If you answered "yes" to Question #1, please proceed to Question #2.)

2.   Do you find by clear and convincing evidence that Merck & Co., Inc. either recklessly or knowingly misrepresented or failed to disclose a material fact to Charles Mason's treating nurse practitioner, that Charles Mason's treating nurse practitioner was entitled to and did rely on that misrepresentation or omission, and that the misrepresentation or omission was a proximate cause of Charles Mason's heart attack and resulting injuries?

   YES _____            NO _____

(Please proceed to Question #3.)

-1-

3.    Do you find by a preponderance of the evidence that there was negligence on the part of Charles Mason that was a proximate cause of his heart attack and resulting injuries?

YES _____                    NO _____

(Please proceed to Question #4.)


4.    Do you find by a preponderance of the evidence that there was negligence on the part of Nurse Olson that was a proximate cause of Charles Mason's heart attack and resulting injuries?

YES _____                    NO _____

(If you answered "no" to Questions #3 and #4, please skip Question #5 and proceed to Question #6. If you answered "yes" to either of these questions, please proceed to Question #5.)


5.    What percentage of fault, if any, do you attribute by a preponderance of the evidence to Merck & Co., Inc., Charles Mason, and/or Nurse Olson?

Merck & Co., Inc.                         _____ %

Charles Mason                            _____ %

Nurse Olson                              _____ %

(Please proceed to Question #6.)

-2-

6.    What amount, if any, do you find by a preponderance of the evidence will fairly and adequately compensate Charles Mason for the compensatory damages suffered due to his heart attack and resulting injuries? (Remember, you are not to reduce any award of damages to reflect the percentages of fault, if any, that you found in Question #5.  I will make that calculation at a later time if appropriate.)

$ _____

(Please date and sign the verdict form, inform the Marshal that a verdict has been reached, and return to the courtroom.)

New Orleans, Louisiana, this _____ day of _____, 2006.

_____
JURY FOREPERSON