UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL DOCKET No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| This document relates to<br>CASE NO. 2:05CV2524 | * | JUDGE FALLON |
| ANTHONY WAYNE DEDRICK,<br>an Individual, | * | MAG. JUDGE KNOWLES |
| Plaintiff, | * | |
| v. | * | |
| MERCK & CO., INC., | * | |
| Defendant. | * | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION *IN LIMINE*
TO PRECLUDE TESTIMONY BY MERCK EMPLOYEES
REGARDING THEIR PERSONAL USE OF VIOXX**

*(Plaintiff's Motion in Limine No. 5)*

Plaintiff Gerald Barnett, by and through his attorneys, urges the Court to preclude Defendant Merck & Co. from offering testimony or other evidence during the trial of this case that Merck employees or family members of Merck employees took Vioxx.[1] Such testimony is not relevant to Plaintiff's claims that Vioxx is defective and that Merck failed to warn Mr. Barnett and his physicians of the increased risk of cardiovascular events associated with the use of the drug.  Moreover, the probative value of the evidence is substantially outweighed by its prejudicial effect.

---

[1] The Court originally in *Irvin I*, and Plaintiff believes correctly, ruled that evidence of employee use of Vioxx was irrelevant and inadmissible pursuant to F.R.E. 401. The Court reversed its decision during *Irvin*

First, Merck's argues that if Plaintiff attacks the credibility of a Merck witness, the witness should be allowed to testify that they or their family member took Vioxx. Defendant's argument presumes that such evidence is probative of the individual employee's belief in the safety of Vioxx. That presumption is flawed and does not address the core issues of the case, i.e., Merck's corporate knowledge of the drug's safety and its corporate actions in light of that knowledge. Evidence of employee use of Vioxx or their family members' use serves only to confuse the jury. These individual choices cannot be extrapolated across the entire population of those taking Vioxx and judged as evidence that Vioxx is safe as labeled.

As the Court is aware, Judge Carol E. Higbee in both *Humeston v. Merck & Co.* and *Cona/McDarby v. Merck & Co.* granted similar motions to exclude testimony of Vioxx use. In the *Hummeston* case, Judge Higbee wrote the following, "The individual decision made by a person in consultation with their doctor to take a drug is a personal decision which can be made for many reasons." (See Plaintiff's Motion *In Limine*, Ex. B). It would be improper to allow the Defendant to use a broad brush to imply to the jury that individual decisions to take Vioxx were based solely on the Merck employees' belief the drug was safe and would fail to recognize the complex and personal nature of such decisions. These personal decisions would have been made with knowledge of the increased risks of heart attacks on Vioxx. This knowledge was not available to Mr. Barnett and his prescribing physicians, Mr. Mikola and Dr. McCaffrey.

Such testimony does not prove that the drug is safe and not unreasonably dangerous. To allow the admission of this testimony would be much like allowing a Wyeth executive to testify that phen-fen was not unreasonably dangerous because they or a family took the drug to

control their weight. The testimony that an executive took a drug has no bearing on whether a drug is safe. It is undisputed that phen-fen is unreasonably dangerous. Individual choices to take the diet drugs have no bearing on that conclusion.

Merck further argues that, "As a matter of basic fairness, Merck must be permitted to offer this evidence in order to defend itself against plaintiff's contention that Merck knew of the cardiovascular risks but failed to provide an adequate warning." (Merck's Br. in Opp. at 3.) Defendant's argument is inapposite. Testimony of anecdotal witnesses with different illnesses, different prescribing physicians, and under different factual circumstances is too attenuated to have any significant probative value to any of the issues present in this case. Because of the lack of any tie to the factual circumstances of this case, such testimony would simply be evidence of "sporadic and isolated occurrences," occurrences that are irrelevant to these proceedings. See Mooney v. Aramco Services Co., 54 F.3d 1207, 1221 (5th Cir. 1995), reversed on other grounds, Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004); See also Pfeiffer v. C.I.A., 60 F.3d 861, 865 (C.A.D.C.1995) ("Suffice it to say that anecdotal evidence about what other former employees of other government agencies have done is irrelevant to Pfeiffer's case"). For example, in BASF Corp. v. Old World Trading Co., Inc., 1992 WL 232078 (N.D. Ill. 1992), the plaintiff attempted to call as witnesses certain individuals who were dissatisfied with the defendant's product. The court disallowed this evidence, partially on the basis of Rule 403, finding that "anecdotal evidence, unless accompanied by testimony that such evidence was statistically significant, was irrelevant and would consume too much time." Id. at 4. Testimony from executives that they believe in their hearts that Vioxx is safe is not relevant.

In addition, Merck argues that,

> It is entirely disingenuous for plaintiff to suggest that the fact that these witnesses allegedly knew of the cardiovascular risks of Vioxx shows that "Merck" was aware of the risks, while at the same time contending that the fact that those witnesses either personally used or permitted their family members to use Vioxx is irrelevant because their knowledge cannot be imputed to Merck.

(Merck's Br. in Opp. at 3-4.) Defendant's argument misses the point. Dr. Alise Reicin, Dr. Edward Scolnick, and others who have testified that they or their family members took Vioxx were the primary decision makers regarding Vioxx. Dr. Reicin has acknowledged that her role was to "vigorously defend the Vioxx franchise." Dr. Scolnick, at the Court is well aware, was President of Merck Research Labs throughout the development of Vioxx and for the years it was on the market. When it comes to Vioxx, they are Merck; their actions bind the company.

Plaintiff makes a different argument here. There is no question that the witnesses in question have the most knowledge about Vioxx's safety profile. Plaintiff contends that they were aware from the beginning that Vioxx significantly increases the risk of adverse cardiovascular events. The fact that they themselves or a family member took the drug only means that after weighing the risks associated with the drug, they chose to assume the risk. Ordinary patients and their physicians, like Mr. Barnett and his physicians, would not have had the relevant safety information in order to properly and accurately evaluate the risks associated with the use of Vioxx.

Lastly, Merck argues that evidence that an employee or their family member took Vioxx is "not unfairly prejudicial – this evidence confirms the common-sense notion that this evidence is probative in assessing the witnesses' knowledge." (Merck's Br. in Opp. at 4.) The probative value of the testimony at issue is minimal and pales in comparison to the prejudicial

effect of the testimony. Testimony that a witness or a relative took Vioxx could mislead a jury into believing that Vioxx was safe and effective, since—as Merck will undoubtedly argue—no witness would take or allow his or her relative to take a drug that was known to be dangerous. This implication, however, is not necessarily the case.

As demonstrated above, Merck employees may have taken or allowed their relatives to take Vioxx knowing of its dangerous propensities for numerous reasons – i.e., Vioxx was taken with another medication to counterbalance its prothrombotic tendencies, the person has no cardiovascular risk factors, or the person's pain was so great it was worth the risk of a heart attack. The point is that Merck failed to warn Mr. Barnett's doctors and other physicians that Vioxx substantially increases the risk of heart attack so that they might engage in the same risk-benefit analysis.

To allow Merck to present this evidence in such a way that it intimates that the Vioxx is safe will result in unfair prejudice to Plaintiff.[2] Such evidence, testimony, or discussion is irrelevant to prove or disprove that Vioxx is unreasonably dangerous. Arguably, those who have testified they took Vioxx had substantial information about the safety profile of the drug. It can be argued that they were well aware of the cardiovascular risks associated with taking Vioxx. **Unlike physicians who prescribed the drug to millions of patients**, these executives and their family members would have been privy to data drawing into question the safety of Vioxx. These employees and their family members or their physicians would have had opportunity to perform a different risk benefit analysis prior to taking the drug than the rest of the public. Ordinary patients and their physicians would not have had the relevant safety information in order to properly and accurately evaluate the risks associated with the use of

---

[2] All such testimony to date has not been supported by any evidence with the exception of Dr. Reicin. Medical records of Dr. Scolnick, Mr. Anstice, Dr. Kim, or Mrs. Gilmartin establishing that they were in fact prescribed

Vioxx. The individual choices of Merck executives and their family members, therefore, cannot be extrapolated across the entire population of those taking Vioxx and judged as evidence that Vioxx is safe as labeled.

Moreover, if allowed, the Court must give Plaintiff opportunity to answer this evidence by allowing Plaintiff to discover the medical records of those offering such testimony and to discover the underlying health condition and the risk-benefit analysis undertaken for each witness. This will result in a "mini-trial" on this issue for each witness offering such testimony.

For these reasons and those outlined in Plaintiff's original motion, Plaintiff urges the Court to grant his motion and issue and order precluding Merck from offering evidence regarding their employees and their relatives personal use of Vioxx.

Respectfully submitted this <u>10th</u> day of November, 2006.

_____
ANDY BIRCHFIELD
P. LEIGH O'DELL
Attorney for Plaintiff
***BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.***
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343 telephone
(334) 954-7555 facsimile

---

and took Vioxx have not been produced by Merck. Merck witnesses should not be allowed to testify they or their family member took Vioxx without producing medical records sufficient to allow meaningful cross examination.

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
**Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BY MERCK EMPLOYEES REGARDING THEIR PERSONAL USE OF VIOXX has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of November, 2006.

                                            /s/ P. Leigh O'Dell
                                            P. Leigh O'Dell
                                            Attorney for Plaintiff
                                            Beasley, Allen, Crow,
                                            Methvin, Portis & Miles, P.C.