

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL DOCKET No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| | * | |
| This document relates to | * | JUDGE FALLON |
| CASE NO. 2:05CV2524 | * | |
| | * | |
| ANTHONY WAYNE DEDRICK, | * | MAG. JUDGE KNOWLES |
| an Individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MERCK WITNESSES FROM TESTIFYING ABOUT THE ANNUAL NUMBER OF DEATHS ATTRIBUTABLE TO NSAID GASTROINTESTINAL TOXICITY WITHOUT APPROPRIATE QUALIFICATIONS AND SCIENTIFIC SUPPORT**

*(Plaintiff's Motion in Limine No. 8)*

Plaintiff Anthony Dedrick urges the Court to grant his motion and preclude Merck witnesses, specifically Dr. Briggs Morrison, from testifying to an inflated, unfounded number of deaths each year attributable to NSAID gastrointestinal toxicity.  Plaintiff argues that Dr. Morrison is unqualified to give such an opinion and that the numbers to which he has previously testified (and Plaintiff expects him to testify again) are not supported by scientific evidence.

In its opposition, Merck argues that Dr. Briggs Morrison while testifying in *Hummeston v. Merck* regarding the number of deaths attributable to perforations, ulcers, and bleeds ("PUBs")

1



does "not offer any opinion about the number of GI-related deaths caused by NSAIDs. He did not even say that he agreed with the estimates to which he referred." (Def.'s Opp. at 2.) Dr. Morrison testified similarly to inflated numbers during the *Irvin 2* trial:

> Q. IS IT FAIR TO SAY THAT THE GASTROINTESTINAL SIDE EFFECTS FROM THE NONSTEROIDAL PAIN RELIEVERS, WE'RE NOT TALKING STOMACH ACHES HERE, WE'RE TALKING SERIOUS POTENTIAL LIFE-THREATENING PROBLEMS?
>
> A. ABSOLUTELY. IT WAS ESTIMATED THAT SOMEWHERE BETWEEN 10,000 AND 15,000 PEOPLE A YEAR DIED FROM THIS SIDE EFFECT OF THE MEDICATION. SO THAT'S -- YOU KNOW, YOU'RE GIVING A PATIENT A MEDICINE TO TREAT THEIR PAIN AND INFLAMMATION, AND AS A RESULT OF THAT MEDICATION, ABOUT 10- OR 15,000 PEOPLE A YEAR WERE DYING, AND IT WAS ESTIMATED THAT PROBABLY 100,000 PEOPLE A YEAR WERE ENDING UP IN THE HOSPITAL WITH ONE OF THESE SIDE EFFECTS.

(*See* Transcript of *Irvin 2 v. Merck & Co.,* Feb. 14, 2006, at 1531 (emphasis added) (Ex. A). Merck essentially argues that these were the estimates in 1997 and that Dr. Morrison and Merck relied upon them regardless of whether they believe the accuracy of the numbers or not.

There is no scientific basis to support Merck's conclusions that these were the prevailing estimates in 1997 or during the development of Vioxx. In 1997, it was estimated that the annual number of GI deaths attributed to NSAIDS in United States was 7,600 (about a third of Dr. Morrison's highest guess). (*See* Tamblyn R, Berkson L, Dauphinee WD, Gayton D, Grad R, Huang A, Isaac L, McLeod P, Snell L. (1997) Unnecessary prescribing of NSAIDs and the management of NSAID-related gastropathy in medical practice. *Ann Intern Med.* 127(6):429-38 (attached to Pl's motion as Ex. "B").

Plaintiff also wants to emphasize that Dr. Morrison is not a gastroenterologist, but an oncologist. He has no expertise in gastrointestinal toxicity or the deaths attributable to that

2

condition. He is not qualified to offer opinions or testimony regarding the number of deaths associated with gastrointestinal toxicity.

To the extent that this number is offered--as it has been in the past--without any support from medical or scientific literature, and by a witness who lacks the necessary skill, training, experience and education to render such an opinion, it should be excluded by the Court.

Merck goes on to argue, "It is a fact – not an opinion – that estimates Dr. Morrison mentioned actually existed. Moreover, it is a fact – not opinion – that such estimates were among the reasons that Merck developed, marked, and continued to market Vioxx." (Def.'s Opp. at 3.)

In 1997, the rate of hospitalizations and deaths due to NSAID gastrointestinal toxicity was decreasing. According to Dr. James Fries of Stanford, the percentage of patients with GI hospitalizations fell 80% from 1992 to 1998, a period time when Vioxx was not even on the market. (*See* Fries JF, Murtagh KN, Bennett M, Zatarain E, Lingala B, Bruce B. (2004) The rise and decline of nonsteroidal antiinflammatory drug-associated gastropathy in rheumatoid arthritis. *Arthritis Rheum.* 50(8):2433-40, 2435 (attached to Pl's motion as Ex. D). This would suggest that the 1997 estimate of 7,600 annual GI deaths related to NSAIDS decreased as well. Interestingly, the incidence of GI hospitalizations actually increased following the introduction of Vioxx. *Id.* Dr. Fries and his colleagues attribute the decrease in NSAID related GI hospitalizations to a number of factors, most of which had nothing to do with the advent of Vioxx, including: 1) decreased doses of aspirin and ibuprofen; 2) increased use of less GI-toxic NSAIDS, like nabumetone, etodolac and Arthrotec; and 3) the increased use of proton-pump inhibitors. Id. at 2438.

Plaintiff does not deny that NSAID gastropathy exists and unfortunately, results in death for some patients.. What Plaintiff objects to, however, is Merck's insistence on having its witnesses testify to a number that is not supported by the science, that is more than three times the more accurate number, and that is misleading to the jury.

Lastly, Merck states, "Whether the exact true number in the United States is ten thousand a year or twenty thousand a year – or, for that matter, five thousand a year – is not the relevant point." (Def.'s Opp. at 3.) Merck's argument misses the point. The true number, the most accurate prediction, is entirely relevant to the issues before this Court. Merck has argued in previous trials, and Plaintiff expects that it will do so again, that the number of GI-related deaths was such a serious public health problem of epidemic proportions – up to 20,000 deaths a year and 100,000 hospitalizations – and that Vioxx was a mission critical drug to address this problem. The unmistakable intent of offering an inflated estimate about NSAID related deaths is to convince to the jury that Vioxx was designed and marketed specifically to address an epidemic. Merck inflates these numbers to justify its unreasonable actions in rushing the drug to the market, despite the knowledge of the much greater risk of heart attacks and strokes.

Though Merck fails to respond to this fact in its opposition, Merck's own experts do not support Dr. Morrison's conjecture about the number of deaths. As Plaintiff noted in his initial motion, a gastroenterologist, Merck consultant, and co-author of the VIGOR study, Dr. Loren Laine, is of the opinion that the numbers testified to by Dr. Morrison are incorrect: "...those numbers, by the way, are totally incorrect and they're based on just extreme totally incorrect data. Everybody uses them because they sound good. They sound good, but it's the same person that keeps putting them out. . . . There's about five different reasons why those numbers are totally

bogus, . . ." See Transcript of Video News Release Outtakes, Pl's Ex. 1.1889, at 41:2-8, 16-21.

In fact, whatever the number of GI-related NSAID deaths, a sizeable portion are attributable to the use of aspirin for cardiovascular prophylaxis. In a recent study of hospitals serving more than seven million patients, researchers concluded that as many as one third of all NSAID/aspirin related GI deaths are associated with the use of *low-dose aspirin*. Plainly, Vioxx would have no effect on these events as it is not a substitute for low-dose aspirin.

In light of the foregoing, it is disingenuous for Merck to throw out an inflated number of GI-related deaths, suggest that Vioxx was safer, and then hope for the jury to conclude that Vioxx was a necessary, life-saving drug in the fight against fatal NSAID gastropathy. In truth, the numbers were never as large as Dr. Morrison suggested, and they were decreasing significantly before Vioxx was introduced, because of cheaper and safer alternatives in pain management.

For reasons discussed above, Merck's assertion that there were 20,000 deaths annually attributable to NSAID GI gastropathy is a compelling misrepresentation. It prompts the jury to conclude that before Vioxx was marketed, there was an epidemic of NSAID-related fatalities that Merck's new wonder drug was going to prevent. It is precisely this kind of opinion testimony that Rule 702 was designed to exclude. In previous trials, Merck has offered this opinion without support and without first disclosing it to plaintiffs. This practice contravenes Federal Rules of Evidence, and is not in keeping with the orders of this Court, which require prior notice of all expert opinions. As such, Merck should be precluded from offering any such opinion without first showing that it is admissible under F.R.E. 702 and <u>Daubert</u>.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion and enter an order precluding Defendant Merck & Co., Inc., from offering any expert testimony regarding estimates of annual deaths attributable to NSAID gastropathy from witnesses who lack the necessary expertise and where they lack adequate support under the Federal Rules of Evidence and appropriate case law.

Respectfully submitted this 10th day of November, 2006.

_____
**ANDY BIRCHFIELD**
P. LEIGH O'DELL
Attorney for Plaintiff
***BEASLEY, ALLEN, CROW,***
***METHVIN, PORTIS & MILES, P.C.***
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343 telephone
(334) 954-7555 facsimile

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
 **Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MERCK WITNESSES FROM TESTIFYING ABOUT THE ANNUAL NUMBER OF DEATHS ATTRIBUTABLE TO NSAID GASTROINTESTINAL TOXICITY WITHOUT APPROPRIATE QUALIFICATIONS AND SCIENTIFIC SUPPORT has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of November, 2006.

_P. Leigh O'Dell_
P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.