# EXHIBIT 2

# ASHCRAFT & GEREL, LLP

ATTORNEYS AND COUNSELLORS AT LAW
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS*

SUITE 400
2000 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) 783-6400
FAX (202) 416-6392

**DISTRICT OF COLUMBIA**
JAMES A. MANNINO*
MARK L. SCHAFFER*
WAYNE M. MANSULLA
JAMES F. GREEN
ALLEN J. LOWE
H. VINCENT McKNIGHT
MICHELLE A. PARFITT
CHRISTOPHER V. TISI
SIDNEY SCHUPAK
GEORGE E. SWEGMAN
REBEKAH R. MILLER
JERRY D. SPITZ
MOHAMMAD A. SYED
JENNIFER L. ORENDI
BRIAN L. KINSLEY
SALMAN H. ELMI

OF COUNSEL
ALTOMEASE R. KENNEDY

ROCKVILLE, MD 20852
SUITE 1002
11300 ROCKVILLE PIKE
(301) 770-3737

LANDOVER, MD 20785
SUITE 301
4301 GARDEN CITY DRIVE
(301) 459-8400

ALEXANDRIA, VA 22311
SUITE 650
4900 SEMINARY ROAD
(703) 931-5500

BALTIMORE, MD 21202
SUITE 1212
10 EAST BALTIMORE STREET
(410) 539-1122

**MARYLAND**
MARTIN E. GEREL*
ROBERT G. SAMET
DAVID M. LaCIVITA
WILLIAM F. MULRONEY
ROBERT P. ENDERLE
JONATHAN S. BEISER
ROBERT A. FLACK
DENISE J. GOTTRON
DAVID M. LAYTON
MARTIN TRPIS
PATRICK M. WYSONG
ALAN J. MENSH
KELLY E. COOK

**VIRGINIA**
LAWRENCE J. PASCAL
J. HUNT BRASFIELD
MICHAEL W. HEAVISIDE
CRAIG A. BROWN
DAVID L. BAYNE, JR.
DAVID B. VERMONT
SUSAN C. MINKIN

LEE C. ASHCRAFT
1908-1993

September 13, 2006

Martin Frederic Evans, Presiding Partner
or Custodian of Records
Debevoise and Plimpton, LLP
919 Third Avenue
New York, NY 10022

Re:   In Re: Vioxx Product Liability Litigation, MDL 1657 (E.D.La)

Dear Mr. Evans or Custodian of Records:

Please find attached a Notice of Deposition and Subpoena for Documents and Testimony for use in the case entitled In Re: Vioxx Product Liability Litigation, MDL 1657 (E.D.La.) currently pending before Eldon Fallon, Judge for the United States District Court for the Eastern District of Louisiana, 500 Poydras Street, Room C-456, New Orleans, LA 70130. These documents are served on behalf of the Plaintiff's Steering Committee (PSC). The PSC was appointed by Judge Fallon to represent the interests of all plaintiffs with cases pending in the federal courts.

Pursuant to the Notice of Deposition and Subpoena, you are required to appear at the offices of Seeger Weiss, LLP, One William Street, New York, New York 10004, October 11, 2006, 11:00 A.M. to provide documents and deposition testimony related to your production of documents. In this regard, you will note that the requested documents are identical to those requested by a subpoena also served on Of Counsel Hon. John S. Martin, Jr. It is expected that these documents not be reproduced as a result of the subpoena to Hon. John S. Martin, Jr. Moreover, while we do request that Hon. John S. Martin, Jr. appear live for a record deposition pursuant to the subpoena served on him, you (or your records custodian) could avoid appearing at this deposition if you produce responsive documents prior to deposition on/or before September 27, 2006. If, so please send them by September 25, 2006 to the following address: Michael Wagner, Seeger Weiss, LLP Vioxx MDL Document Depository One William Street, New York, NY 10004. (212) 584-0700.

You will find attached a check in the amount of $100, which would be for your witness fee and travel expense.

Should you have any questions, please feel free to contact me directly at 307-733-0028 or my assistant Thaddeus Akum at 202-416-6374.

Thank you for your attention to this matter.

Very truly yours,

Christopher V. Tisi

**Plaintiff's Steering Committee**

CVT/ta
Enclosure(s)

cc:    Chris Seeger, Esq (w/out  attachments)
       Andy Birchfield, Esq (w/out  attachments)
       Russ Herman, Esq (w/out  attachments)
       Troy Rafferty, Esq (w/out  attachments)
       David Buchanan, Esq. (w/out  attachment)
       Leonard Davis, Esq
       Phillip Wittman, Esq.

# CERTIFICATE OF AUTHENTICITY

BEFORE ME, the Undersigned Notary, personally came and appeared:

_____, after being duly sworn did depose and state the following under oath:

(1)   That I am _____, the records Custodian for Debevoise and Plimpton, LLP.

(2)   I have personal knowledge of the records maintained by, Debevoise and Plimpton, LLP,

(3)   I submit this Certificate of Authenticity verifying that Debevoise and Plimpton, LLP has produced all documents in his possession responsive to the subpoena *duces tecum* propounded by the Plaintiff's Steering Committee in the matter of In re: Vioxx Products Liability Litigation, MDL 1657 (E.D.La.);

(4)   I submit that the documents produced in connection with the subpoena *duces tecum* propounded on Debevoise and Plimpton, LLP by the Plaintiff's Steering Committee in the matter of In re: Vioxx Products Liability Litigation, MDL 1657 (E.D.La) are true, accurate and complete copies of all documents maintained by Debevoise and Plimpton, LLP,

(5)   I submit that the documents produced in connection with the subpoena *duces tecum* propounded on Debevoise and Plimpton, LLP by the Plaintiff's Steering Committee in the matter of In re: Vioxx Products Liability Litigation, MDL 1657 (E.D.La) have been maintained by Debevoise and Plimpton, LLP in the normal course of business;

(6)   I submit that Debevoise and Plimpton, LLP has no further documents that are responsive to the subpoena *duces tecum* served by the Plaintiff's Steering Committee on Debevoise and Plimpton, LLP in the matter of In re: Vioxx Products Liability Litigation, MDL 1657 (E.D. La.).

1

_____

SIGNATURE
Custodian of Records


_____

(Please Print Name)


Sworn to and subscribed before me this
_____day of_____, 2006.


_____

Notary Public

[Notary Seal]


My Commission Expires:


_____

2

*ᵃAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern | DISTRICT OF | New York

In Re: Vioxx Products Liabilty Litigation

### SUBPOENA IN A CIVIL CASE

Case Number:[1] | MDL No. 1657
Case Pending in the Eastern District of Louisiana at New Orleans

TO: Martin F. Evans or Records Custodian
Debevoise and Plimpton, LLP
919 Third Avenue
New York, NY 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

PLACE OF TESTIMONY | COURTROOM

DATE AND TIME

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

PLACE OF DEPOSITION: Seeger Weiss, LLP, One William Street, New York, New York 10004 | DATE AND TIME

October 11, 2006 11:00 A.M.

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit A Attached

Seeger Weiss, LLP, One William Street, New York, New York 10004

DATE AND TIME

October 11, 2006 11:00 A.M.

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

PREMISES | DATE AND TIME

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf. and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  DATE

*Plaintiffs Strg Committee*   *9/13/06*

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| DATE | | SIGNATURE OF SERVER |
|---|---|---|
| | | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in whi trial is held, or

(iii) requires disclosure of privileged or other protected and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confid research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opini information not describing specific events or occurrences in dispute resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a to incur substantial expense to travel more than 100 miles to attend trial court may, to protect a person subject to or affected by the subpoena, qua modify the subpoena, or, if the party in who behalf the subpoena is is shows a substantial need for the testimony or material that cannot be other met without undue hardship and assures that the person to whom the subp is addressed will be reasonably compensated, the court may order appear or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents produce them as they are kept in the usual course of business or shall orga and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim th. is privileged or subject to protection as trial preparation materials, the cl shall be made expressly and shall be supported by a description of the natur the documents, communications, or things not produced that is sufficie enable the demanding party to contest the claim.

## EXHIBIT A TO SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MARTIN FREDERIC EVANS AND/OR CUSTODIAN OF RECORDS FOR DEBEVOISE AND PLIMPTON, LLP

## DEFINITIONS

The following definitions apply to each of the requests for documents set forth herein and are deemed to be incorporated in each of said requests:

1.     "DOCUMENTS" and "RECORDINGS" means paper and electronic writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained and translated through electronic means.  If a DOCUMENT or a RECORDING was prepared in several copies or if additional copies were thereafter made, and if ANY such copies were not identical or are no longer identical by reason of notation or modification of ANY kind whatsoever, including notations on the front or back of ANY pages thereof, then EACH such copy must be produced.  Consistent with the above definition, the term DOCUMENT or RECORDING shall include, without limitation, any computer-generated, computer-stored, or otherwise maintained or reproduced COMMUNICATION or representation, any data compilation in any form, whether composed of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof.  [PLEASE NOTE that the term RECORDING shall specifically include all voice recordings, voice mails or messages and MVX records or recordings, which refer or relate to the requests identified herein.}

2.     " MARTIN REPORT" means the report, and any attachments, exhibits or appendices thereto, entitled "The Report of the Hon. John S. Martin, Jr. to the Special Committee of the Merck Board of Directors" presented to the Special Committee of the Board of Directors of Merck & Co, Inc on August 30, 2006 and Released to the Public on September 6, 2006.

3.     "MERCK" means Merck & Co., Inc. and ANY of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliates, predecessors, officers, directors, employees, representatives, independent contractors, or agents, including attorneys and accountants.

4      "SPECIAL COMMITTEE" means the Special committee to the Merck Board of Directors, including William G. Bowen, M.D., Lawrence A. Bossidy, William N. Kelly, M.D., Shelly Lazarus, Samuel O. Their, M.D., Peter C. Wendell, and their staff.

5.     DEBEVOISE means John S. Martin, Jr. and "a team of lawyers and paralegals" as set forth on Page 1 of the Martin report in the section entitled "Introduction." This specifically includes Mark P. Goodman and the "14 lawyers and six legal assistants" identified in the "Outline of Investigative Process" section of the Martin Report attached hereto as Exhibit 1.

6      "YOU," or "YOUR" means YOU and ANY employees, representatives, independent contractors, or agents, including attorneys and accountants, within the control of Martin Frederic Evans or DEBEVOISE.

7      "PERSON" or "PERSONS" means natural persons, proprietorships, joint ventures, partnerships, corporations, trusts, groups, associations, organizations, governmental agencies, and ALL other entities.

8.     "COMMUNICATION" means EVERY manner of transmitting or receiving information, opinions, or thoughts, whether orally, in writing, or otherwise, between two or more PERSONS.

9"     IDENTIFY" with respect to PERSONS, means to give, to the extent known, the PERSON's full name, present or last known address, and when referring to a natural PERSON, additionally, the present or last known place of employment. Once a PERSON has been identified in accordance with this paragraph, only the name of that PERSON need be listed in response to subsequent discovery requesting the identification of that PERSON.

10     "AND" and "OR" are to be considered conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. "OR" is understood to include and encompass "AND."

11     "ANY" is understood to include and encompass "ALL." The word "ALL" also includes "EACH" and vice versa.

12     "VIOXX" means Vioxx (rofecoxib) in any form, whether tablet, suspension, or otherwise.

13   Reference to a drug by its generic name (e.g., rofecoxib) or its trade name (i.e., VIOXX) means both the active pharmaceutical ingredient (API) and any and all drug products which contain that API, irrespective of whether or not such drug product is a "new drug" or "new animal drug," instant release or extended release or sustained release, or approved or unapproved by FDA, under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 321 et seq. and any predecessor or non-final derivation of the drug that later became VIOXX.

14.   Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, EMPLOYEES, agents, clients, or other representatives of affiliated third parties.

15.   Use of the phrase "United States Food and Drug Administration," "National Institutes of Health," or reference to any Federal agency or agencies includes agencies or divisions of all state and local political subdivisions as well as the foreign equivalents of Federal, state or local agencies including but not limited to all foreign governments or agencies thereof including but not limited to the European Union Committee for Proprietary Medicinal Products (CPMP), the United Kingdom's Medicines Control Agency (MCA), France, Canada, Ireland, Australia and Japan.

## INSTRUCTIONS

1.   ALL DOCUMENTS shall be produced that respond to ANY part, clause, or sentence of ANY paragraph of these requests.

2.   The DOCUMENTS to be produced pursuant to these requests specifically embrace, in addition to DOCUMENTS within YOUR possession, custody or control, DOCUMENTS within the possession, custody or control of ANY of YOUR agents, accountants, representatives or attorneys. Such DOCUMENTS also embrace originals, and identical copies (whether different from the original because of notes made thereon or otherwise) of the DOCUMENTS described in these requests.

3.   YOU shall produce ALL DOCUMENTS in a form which renders the DOCUMENTS susceptible to copying either by photocopy or otherwise.

4.    Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

5.    Privilege/Redaction Log.  If ANY DOCUMENTS are within the scope of ANY request for production but are not being produced or are being produced with portions redacted, pursuant to ANY claim of privilege or confidentiality:

    a.   State the nature of the privilege claimed (i.e., attorney-client work product, etc.)

    b.   State the name of the PERSON or entity claiming privilege and the name of the attorney, if ANY, with respect to whom the privilege is claimed;

    c.   State the facts upon which YOU rely as the basis for claiming ANY privilege as to the specific information or DOCUMENT; and

    d.   State the name of such DOCUMENT; identify the type of DOCUMENT (i.e., letter, memo, etc.); set forth the subject matter thereof; IDENTIFY the PERSON who prepared it and EACH PERSON (if ANY) who signed it; IDENTIFY EACH PERSON to whom it was directed, circulated or shown; and IDENTIFY EACH PERSON now in possession of the DOCUMENT.  If ANY DOCUMENT is produced in redacted form, the word "redacted" is to be placed in the redacted section of the DOCUMENT.

6.    Destruction Log.  In the event that ANY DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

    a.   The nature of the DOCUMENT;

    b.   ANY addressor or addressee;

    c.   ANY indicated or blind copies;

    d.   The DOCUMENT's date, subject matter, number of pages, and attachments OR appendices;

    e.   ALL PERSONS to whom the DOCUMENT was distributed, shown or explained;

    f.   Its date of destruction or discard, manner of destruction or discard; and

g.    The PERSONS authorizing or carrying out such destruction or discard.

7.    The following DOCUMENT demand is continuing in nature and in the event YOU become aware of or acquire additional DOCUMENTS responsive hereto, such additional DOCUMENTS are to be promptly produced.

8.    If YOU are unable to comply fully with ANY of the specific requests, YOU shall comply with the extent possible AND provide an explanation as to why full compliance is not possible.

9.    DOCUMENTS are to be produced in their full and unexpurgated form.  Redacted DOCUMENTS shall not constitute compliance with these requests, unless such DOCUMENTS are redacted pursuant to ANY claim of privilege as set forth in paragraph 5 above.

10    Unless otherwise indicated, ALL DOCUMENTS requested pertain to the time period from January 1, 1995 to the present.

11.    For the Purposes of responding to this subpoena, you shall not be required to produce the following:

a.)    The "millions of pages produced in tort litigation" by Merck as set forth in the "Outline of Investigative Process" section of the Martin Report (attached hereto as "Exhibit 1") under the heading INVESTIGATIVE TOOLS.  Please note that this exemption does relieve you from producing:

i.)    Documents or recordings provided to regulatory agencies (including the FDA and other regulatory agencies, both foreign and national), that have not been "produced in tort litigation";

ii.)    "Files of Merck Employees, Merck Board materials and third party documents" as described in the INVESTIGAIVE TOOLS section of the Martin Report been not been "produced in tort litigation."

b)    The Investigational New Drug Application (INDA), the New Drug Application (NDA) and Supplemental NDSs (SNDAs) for Vioxx;

c.)    Deposition transcripts and exhibits, publicly available Congressional testimony and trial transcripts and exhibits, for the eight trials that took place during the investigation. *Ernst* (Texas State Court), *Humeston* (New Jersey State Court), *Garza* (Texas State Court), *Plunkett* (federal Court in Texas), *McDarby/Cona* (New Jersey State Court), *Doherty* (New Jersey State Court), *Grossberg* (California State Court) and *Barnett* (Federal Court in Louisiana).

d.)    All publicly available scientific literature reviewed.

12.    A confidentiality order has been entered by in this case by the Honorable Eldon Fallon, Judge of the United States District Court for the Eastern District of Louisiana in the matter of In Re: Vioxx Product Liability Litigation, MDL 1957 (E.D.La).  A copy of the confidentiality order is attached hereto as Exhibit 2.

## DOCUMENTS AND RECORDINGS TO BE PRODUCED

1.    Please produce all Documents and Recordings (including witness statements, interviews or memoranda), referring or relating to contacts or communications between Debevoise or John S. Martin, Jr., and any of the following:

a.)    The Merck Board of Directors or its agents employees (including attorneys);

b)    The Special Committee, including its agents and attorneys;

b)    Any and all present any all Merck employees interviewed as identified in the attached Exhibit 3.

c)    Any and all Former Merck employees denoted in "Exhibit 3" with a "**" next to their names.  These witnesses include Marcia Avedon, Gregory Bell, M.D, David Blois, M.D, J. Martin Carroll, Brian Daniels, M.D., Wendy Dixon, M.D, Elliot Ehrich, M.D., Gregory Geba, M.D., Raymond Gilmartin, Bonnie Goldman, M.D., Douglas Greene, M.D., Michael Gresser, M.D., Peter Gruer, M.D., Kevin Horgan, M.D., Jennifer Ng, M.D., Steven Nichtbeger, Alan Neis, M.D., Leonard Oppenheimer, M.D., Roger Perlmutter, M.D., Hui Quan, M.D., Scott Reines, M.D., Edward Scholnick,M.D., Elizabeth Seidenberg. M.D., Louis Sherwood, M.D.,

Steven Snappin, M.D., Reynold Spector, M.D., Kenneth Truitt, M.D., Ellen Westrick, George Willaims, M.D., and John Yates, M.D.

d.)     Any and All persons identified in the Martin Report as an Outside Consultants to Merck and Merck directors that were interviewed and who are denoted in "exhibit 2" with a "t" next to their names including:  John Baron, M.D., David Bjorkman, MD, Lawrence Bossidy,  William G. Bowen, M.D., Robert Bresalier, M.D., Desmond Fitzgerald, M.D., Garret FitzGerald, M.D., William N.Kelly, M.D., Marvin Konstam, M.D.,  John Oates, M.D., Carlo Patrono, M.D., Robert Sandler, M.D., Samuel Their, M.D., Michael Weinblatt, M.D, Scott Zeger, M.D.

e.)     Kenneth Frazier;

f.)     Theodore V. H. Mayer or any employee of Hughes Hubbard and Reed

2.)     Please produce all Documents and Recordings (including witness statements, interviews or memoranda or letters), referring or relating to contacts or communications between Debevoise or John S. Martin, Jr., and any of the following persons (or their agents or attorneys) who you state on page 16 of the Martin report "Were not willing to take the time" to talk to John S. Martin or Debevoise, including:

a.)     Carolyn Cannusio, M.D;

b.)     Laura Demopolous, M.D;

c.)     Peter DiBattiste;

d.)     Karen Grosser;

e.)     Eve Slater;

f.)     Rhonda Sperling.

3.)     Please produce all Documents and Recordings (including witness statements, interviews or memoranda or letters), referring or relating to contacts or communications between Debevoise or John S. Martin, Jr., and any other person about the subject matter of the Martin investigation, including but not limited to any of the following:

a.)     Jerry Avorn, M.D.

    b.)    Daniel Solomon, M.D

    c.)    Wayne Ray, M.D.

    d.)    Theodore MacDonald, M.D.

    e.)    David Graham, M.D.

    f.)    David Campen, M.D

    g.)    James Fries, M.D.

    h.)    Andrew Whelton, M.D.

    i.)    Peter Juni, M.D.

    j.)    Lee Simon, M.D.

    k.)    Steven Nissen, MD

    l.)    Eric Topol, M.D.

4.)    Any and all documents or recordings referencing communications with or Communications between Debevoise and the "special counsel" whom the Special Committee retained to review documents that Merck claims are protected by the attorney-client or work-product privileges as referred to in "footnote 6" to the Martin Report.

5.)    Any and all documents or recordings referencing communications with or Communications between Debevoise and any public relations or other similar agency (Including Ogelvy and DDB, and the Media Relations, Public Relations or Affairs department(s) at Merck) concerning the publication of the Martin Report, Vioxx or Merck.

6.)    Any and all documents or recordings referencing communications with, Communications between Debevoise and any reporter or member of the press concerning Merck, Vioxx or the Martin Repot.

7.)    Any document or recording referring to or relating to the trial entitled beginning on September 11, 2006 entitled *Robert G. Smith v. Merck, Inc* case No 05 CV 4379-L (E.D.La)(Fallon,J), including but not limited to any document which discusses the impact, if any, of the timing of the release of the Martin Report on the conduct of the *Smith* Trial.

8.)     Any document or recording which refers or relates to the timing of the release of the Martin Report.

9.)     Any and all drafts, edits, reviews, commentaries of the draft Martin report, including any comments or suggestions made by Merck, The Merck Board or directors or Merck's attorneys

10)     Any and all documents or recordings referring to the retention of Debevoise and/or John S. Martin, Jr. for the Conduct of the investigation leading to the publication of the Martin Report.

11.)     Any and all documents or recordings referring to or relating to any informal meetings or communications between Debevoise and the Special Committee or the Board or any member thereof.

12.)     Any and all documents or recordings referring to or relating to the 23 formal meetings or between Debevoise and the Special Committee as identified in the document entitled "Vioxx Investigation: Outline of Investigative Process" (attached hereto as Exhibit 1) under the subsection entitles "Reporting".

13.)     Any and all documents or recordings referring to or relating to the "frequent" meetings between Debevoise and "Dr. Bowen, Chairman of the Special Committee" as identified in the document entitled "Vioxx Investigation:  Outline of Investigative Process" (attached hereto as Exhibit 1) under the subsection entitles "Reporting."

14.)     Any and all documents or recordings referring to or relating to the "periodic []" meetings between Debevoise and Drs. Their and Kelly as identified in the document entitled "Vioxx Investigation: Outline of Investigative Process" (attached hereto as Exhibit 1) under the subsection entitled "Reporting."

15.)     Any and all billing statements submitted by Debevoise to Merck and payments made by Merck to Debevoise for any and all work performed on the martin Investigation.

16.)     Any and all reports of any conflicts-of-interest checks between Debevoise and Merck.

17)     Any and all documents pertaining to the retention of Debevoise by Merck for any reason for the past ten (10) years, including the retention agreement relating to the Martin report.

18.)    Any and all documents or recordings relating to communications between Debevoise and any consultant or proposed consultant, including R. Wayne Alexander, MD, Nancy L. Buc, Esq., Ralph B. D'Augustino, M.D. and Michael Pencina, M.D. concerning the Vioxx investigation.

19.)    Any and all documents or recordings relating to or referring to the "investigations by the SEC, The DOJ, the FDA and three Congressional Committees" as identified on page 12 of the Martin report. (Note: You may exclude from production all above transcripts of hearings and public documents referred to in those hearings).

20.)    Any document or recording produced to you in connection with "Government and Congressional subpoenas" that have not been produced in response to requests by civil plaintiffs as referred to on page 12 of the Martin Report.

21.)    Any and all documents and recordings regarding the decision to release the Martin Report to the Shareholders and the Public.

22.)    Any and all documents or recordings which refer or relate to each of the 27 "allegations" contained in the Martin Report, including any preliminary legal opinions concerning these allegations.

DEBEVOISE & PLIMPTON LLP

The Report of The Hon. John S. Martin, Jr. to the Special Committee of the Merck Board of Directors ("the Martin Report")

Vioxx Investigation

Outline of Investigative Process

## FORMATION AND MANDATE

- November 23, 2004:  Board of Directors of Merck & Co., Inc. formed Special Committee to thoroughly examine the conduct of senior management in the development and marketing of Vioxx and to make recommendations to the full Merck Board regarding shareholder demand letters.

- December 6, 2004:  Special Committee retained The Honorable John S. Martin, Jr. of Debevoise & Plimpton LLP, a former United States District Judge for the Southern District of New York and former United States Attorney for the Southern District of New York, to conduct the investigation.

- Judge Martin was instructed by the Special Committee to conduct a comprehensive and objective investigation, and to report to the Special Committee candidly and on a regular basis.

- The Special Committee instructed Merck to cooperate fully with the investigation.

- Debevoise had full access to Merck employees, documents, and deposition and trial transcripts.

- May 23, 2006:  At a regularly scheduled meeting, the Board of Directors extended the mandate of the Special Committee to include a review of post-withdrawal analyses and reporting of cardiovascular data arising from the APPROVe Trial.

## PROCESS

- An investigation was undertaken by Judge Martin and the Debevoise team, which consisted of 14 lawyers and six legal assistants, and had seven principal (and overlapping) components:

  - Review of scientific literature
  - Review of Company and third-party documents
  - Review of deposition and trial testimony
  - Witness interviews
  - Consultation of consulting experts
  - Reporting of findings to Special Committee
  - Drafting of Report and Appendices

-more-

## INVESTIGATIVE TOOLS

- Judge Martin and the Debevoise team reviewed a broad universe of documentary and testimonial evidence, including:

    - Millions of pages of documents produced in tort litigation, and provided to regulatory agencies and to Congress, including files of Merck employees, Merck Board materials, and third-party documents.

    - Deposition transcripts and exhibits, Congressional testimony, and trial transcripts and exhibits for the eight trials that took place during the investigation: *Ernst* (Texas state court), *Humeston* (New Jersey state court), *Garza* (Texas state court), *Plunkett* (federal court in Texas), *McDarby/Cona* (New Jersey state court), *Doherty* (New Jersey state court), *Grossberg* (California state court), and *Barnett* (federal court in Louisiana).

    - Plaintiff and defense expert reports from the civil litigation.

- Judge Martin and the Debevoise team conducted a total of 150 interviews of 115 witnesses, including:

    - 100 witnesses who were Merck employees or former employees.

    - Third-party witnesses, including Merck outside consultants: Drs. Baron, Bjorkman, Bresalier, Collins, FitzGerald, Fitzgerald, Konstam, Oates, Patrono Sandberg, Weinblatt, and Zeger.

- Three prominent consultants were retained to assist with the medical, scientific, statistical and regulatory issues involved in the investigation:

    - Dr. R. Wayne Alexander – prominent cardiologist and Chair of Department of Medicine at Emory University's School of Medicine

    - Nancy L. Buc, Esq. – former Chief Counsel to the FDA and member of the law firm Buc & Beardsley

    - Dr. Ralph B. D'Agostino, Sr. – Professor of Mathematics, Statistics and Public Health at Boston University, Director of the Boston University Statistics and Consulting Unit, and co-principal investigator of the Framingham Heart Study contract

-more-

**REPORTING**

- Judge Martin and the Debevoise team reported on a regular and ongoing basis to the Special Committee.

  - The Special Committee met formally with Debevoise 23 times during the 20-month investigation for status updates and to discuss any issues arising in the investigation.

  - Dr. Bowen, the Chairman of the Special Committee, frequently met with, or otherwise spoke to, Debevoise and/or Judge Martin to discuss the investigation.

  - Drs. Thier and Kelley, members of the Special Committee, were consulted periodically by Debevoise on a range of scientific and medical issues.

# # #

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | MAG. JUDGE KNOWLES |

**THIS DOCUMENT RELATES TO ALL CASES**

## PRETRIAL ORDER #13
### (Stipulation and Protective Order Regarding Confidential Information)

.

WHEREAS, certain documents and information have been and may be sought, produced, or exhibited by and among the parties to the above-styled proceeding (the "Action") which relate to the parties' confidential and proprietary information that may be subject to protection pursuant to Fed. R. Civ. P. 26(c); and

WHEREAS, the parties have provided and will provide a significant amount of discovery materials in this Action and the parties agree that a protective order will facilitate a timely and efficient discovery process;

IT IS HEREBY STIPULATED AND AGREED, AND FOR GOOD CAUSE SHOWN, ORDERED THAT:

Scope

1.      This Protective Order shall govern all documents, the information contained therein, and all other information produced or disclosed during this Action whether revealed in a

document, deposition, other testimony, discovery response or otherwise, by any party in this Action (the "Supplying Party") to any other party or parties (the "Receiving Party").

2.      Third parties who so elect may avail themselves of, and agree to be bound by, the terms and conditions of this Protective Order and thereby become a Supplying Party for purposes of this Protective Order.

3.      The entry of this Protective Order does not prevent any party from seeking a further order of this Court pursuant to Fed. R. Civ. P. 26(c).

4.      Nothing herein shall be construed to affect in any manner the admissibility at trial or any other court proceeding of any document, testimony, or other evidence.

Confidential Information

5.      "Confidential Information" as used herein means any information that the Supplying Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c)(7), whether it is a document, information contained in a document, information revealed during a deposition or other testimony, information revealed in an interrogatory response, or information otherwise revealed.

6.      Specific documents and discovery responses produced by a Supplying Party shall, if appropriate, be designated as Confidential Information by marking the pages of the document that contain Confidential Information as follows: "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER".  Except as provided in paragraphs 8 and 21, documents that do not bear the foregoing designation are not Confidential Information as that term is used in this Order.

7.      Any material produced or provided in this Action for inspection is to be treated by the Receiving Party as Confidential Information pending the copying and delivery of any copies of the same by the Supplying Party to the Receiving Party.

8.     Information disclosed at a deposition taken in connection with this Action may be designated as Confidential Information by:

(a)     stating on the record during the taking of the deposition that the deposition, or some part of it, may constitute Confidential Information; and

(b)     designating the portions of the transcript in a letter to be served on the court reporter and opposing counsel within thirty (30) calendar days of the Supplying Party's receipt of the transcript of a deposition. The Court reporter will indicate the portions designated as confidential and segregate them as appropriate. Designations of transcripts will apply to audio, video, or other recordings of the testimony. The court reporter shall clearly mark any transcript released prior to the expiration of the 30-day period as "Confidential-Subject to Further Confidentiality Review." Such transcripts will be treated as Confidential Information until the expiration of the 30-day period. If the Supplying Party does not serve a designation letter within the 30-day period, then the entire transcript will be deemed not to contain Confidential Information.

9.     A party in this Action may designate as Confidential Information any document or information produced by or testimony given by any other person or entity that the party reasonably believes qualifies as such party's Confidential Information pursuant to this Protective Order.

Permissible Disclosure of Confidential Information

10.     Subject to Paragraph 13, the Receiving Party may show and deliver Confidential Information to the following people:

(a)     counsel for the Receiving Party and Merck in-house counsel, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel;

3

(b)     with respect to any Confidential Information produced by any plaintiff or third party with respect to plaintiff, any employee of the Receiving Party to whom it is necessary to disclose such information for the purpose of assisting in, or consulting with respect to, the preparation of this Action;

(c)     stenographic employees and court reporters recording or transcribing testimony in this Action;

(d)     the Court, any Special Master appointed by the Court, and any members of their staffs to whom it is necessary to disclose the information;

(e)     any outside consultant or expert whether formally retained or not if the Receiving Party signs the certification described in paragraph 12;

(f)     any attorney for claimants in other pending U.S. litigation alleging personal injury or economic loss arising from the alleged use, purchase, or payment of VIOXX (or attorneys for claimants in any other pending litigation as the parties may mutually agree or the Court directs) for use in this or such other action, provided that the proposed recipient is: (i) already operating under a stipulated Protective Order or (ii) agrees to be bound by this Order and signs the certification described in paragraph 12;

(g)     any third party for whom there is a litigation need to disclose the information if the Receiving Party signs the certification described in paragraph 12; and

(h)     any physician who treated a plaintiff for whom there is a litigation need to show Confidential Information that declines to sign the certification described in paragraph 12, provided that the physician is advised that, pursuant to this Order, such physician (1) may not make copies of any of the documents, (2) may not disclose the information beyond the parties involved in the litigation, and (3) must return the documents to counsel for the Receiving Party

4

after the litigation need for the documents has past.

11.     The Receiving Party may show Confidential Information to any witness during a deposition, hearing, or trial.  Confidential Information shown to any witness during a deposition shall not lose its Confidential status through such use, and counsel shall exercise their best efforts and take all steps reasonably required to protect its confidentiality during such use.  If, after a deposition is noticed or a hearing or trial is set, the Supplying Party objects to Confidential Information being shown to that witness, the Supplying Party shall attempt to confer with counsel to resolve the issue.  If counsel are unable to resolve the issue themselves, counsel may seek an order from the Court prohibiting or limiting such use or for other relief.

12.     Where indicated in this Order, each putative recipient of Confidential Information shall be provided with a copy of this Protective Order, which he or she shall read.  Upon reading this Protective Order, such person shall sign a Certification, in the form annexed hereto as Exhibit A, acknowledging that he or she has read this Protective Order and shall abide by its terms.  These certifications are strictly confidential.  Counsel for each party shall maintain the certifications without giving copies to the other side.  The parties expressly agree, and it is hereby ordered that, except in the event of a violation of this order, they will make no attempt to seek copies of the certifications or to determine the identities of persons signing them.  If the Court finds that any disclosure is necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel only and outside counsel shall not disclose any information to their clients that could tend to identify any certification signatory unless and until there is specific evidence that a particular signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.  Persons who come into contact with Confidential Information for clerical or administrative purposes, and who do not retain copies or

5

extracts thereof, are not required to execute Certifications.

13.    Before disclosing Confidential Information to any person who is, independent of this litigation, a current director, officer, employee of, or counsel for a pharmaceutical company other than Merck that is marketing or has in development a selective COX-2 inhibitor, or a consultant, other than an occasional consultant, who is currently consulting about a selective COX-2 inhibitor, the party wishing to make such disclosure shall give at least ten (10) days' advance notice in writing to the counsel who designated such information as confidential, stating the names and addresses of the person(s) to whom the disclosure will be made. If, within the ten day period, a motion is filed objecting to the proposed disclosure, the designated document or item shall not be disclosed unless and until ten days have elapsed after the appeal period from a Court order denying the motion. Alternatively, the party wishing to make such disclosure may provide the counsel who designated such information as confidential with information concerning the proposed recipient that does not identify the proposed recipient but is sufficient to permit an informed decision to be made with respect to any potential objection. If there is no consent to the disclosure within ten (10) days, the party wishing to make the disclosure may submit the information to the Court for a determination of whether the disclosure may be made. The objecting party will have opportunities to (1) request that the Court direct the party wishing to make disclosure to produce additional information about the proposed recipient and (2) submit such papers and argument as it may feel necessary to allow the Court to make an informed decision. Because only the party seeking to make the disclosure may know who the proposed recipient is, it is the responsibility of the party seeking to make the disclosure to determine prior to making any disclosure whether the proposed recipient is a person described in this paragraph. The parties have agreed that plaintiffs do not have to give notice or invoke the Court with respect

6

to any person whom plaintiffs have retained to assist them in the prosecution of this Action as of September 17, 2004 who otherwise would be a consultant described in this paragraph as long as any such person signs the certification described in paragraph 12. This agreement does not cover any person who as of September 17, 2004 was not a consultant described in this paragraph, but who later becomes a person described in this paragraph.

## Use of Confidential Information

14.     The Receiving Party shall use confidential information only in connection with this Action or an action in which the Receiving Party is permitted by this Order to use Confidential Information.

15.     Notwithstanding any other provisions hereof, nothing herein shall restrict any party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Confidential Information, provided that in rendering such advice, counsel shall not disclose any other party's Confidential Information other than in a manner provided for in this Protective Order.

16.     Nothing contained in this Protective Order shall preclude any party from using its own Confidential Information in any manner it sees fit, without prior consent of any party or the Court.

## Protection of Confidential Information

17.     Counsel shall take all reasonable and necessary steps to assure the security of any Confidential Information and will limit access to Confidential Information to those persons authorized by this Order.

18.     Any party that is served with a subpoena or other notice compelling the

7

production of discovery materials produced by another party must immediately give written notice of such subpoena or other notice to the original Supplying Party. Upon receiving such notice, the original Supplying Party shall bear the burden of opposing, if it deems appropriate, the subpoena on grounds of confidentiality.

19.    If a Receiving Party learns of any unauthorized disclosure of Confidential Information, the party shall immediately upon learning of such disclosure inform the Supplying Party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

20.    Upon the conclusion of any attorney's last case in this proceeding (or such other case in which the Receiving Party is permitted by this order to use Confidential Information), including any appeals related thereto, at the written request and option of the Supplying Party, all discovery materials produced by the Supplying Party and any and all copies, summaries, notes, compilations (electronic or otherwise), and memoranda related thereto, shall be returned within thirty (30) calendar days to the Supplying Party, provided, however, that counsel may retain their privileged communications, work product, certifications pursuant to paragraph 12, and all court-filed documents even though they contain discovery materials produced by the Supplying Party, but such retained privileged communications and work product and court-filed documents shall remain subject to the terms of this Protective Order. At the written request of the Supplying Party, any person or entity having custody or control of recordings, notes, memoranda, summaries or other written materials, and all copies thereof, relating to or containing discovery materials produced by the Supplying Party shall deliver to the Supplying Party an affidavit certifying that reasonable efforts have been made to assure that all such discovery materials produced by the Supplying Party and any copies thereof, any and all records, notes, memoranda,

8

summaries, or other written material regarding the discovery materials produced by the Supplying Party (except for privileged communications, work product and court-filed documents as stated above) have been delivered to the Supplying Party in accordance with the terms of this Protective Order.

<u>Changes in Designation of Information</u>

21.   Any Supplying Party may designate as Confidential Information or withdraw a Confidential Information designation from any material that it has produced; provided, however, that such redesignation shall be effective only as of the date of such redesignation. Such redesignation shall be accomplished by notifying counsel for each party in writing of such redesignation and simultaneously producing a re-designated copy of such material.

22.   Any party may object to the propriety of the designation (or redesignation) of specific material as Confidential Information by serving a written objection upon the Supplying Party's counsel. The Supplying Party or its counsel shall thereafter, within ten (10) calendar days, respond (by hand delivery or facsimile transmission) to such objection in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. If the Objecting Party and the Supplying Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue, the document will have its designation removed unless within thirty (30) days after written notice that the parties' negotiations are ended, the Supplying Party moves the Court for an order upholding the designation. On such a motion, the Supplying Party shall have the burden of proving that the material is Confidential Information. The material(s) in issue shall continue to be treated in the manner as designated by the Supplying Party until the Court orders otherwise.

23.   To the extent that any material designated as Confidential Information herein

becomes publicly available other than through a violation of this or another protective order, or has its designation as Confidential Information withdrawn or judicially removed in any U.S. VIOXX action or MDL-1658, the Confidential Information designation shall be deemed withdrawn from such material and shall, on notice, be removed from the log.

<u>Filing Papers In Court Records</u>

24.    The parties will use the following procedure for submitting to the Court material consisting of, relating to, containing, incorporating, reflecting, describing, or attaching Confidential Information:

(a)    Any such material shall be filed in a sealed envelope, labeled with the case name, case number, the motion to which the documents relate, and a listing of the titles of the documents in the envelope (such titles not to reveal Confidential Information).

(b)    Within seven (7) business days of the submission of any material pursuant to the preceding sub-paragraph, the parties shall confer to determine if the Supplying Party objects to the filing of the subject Confidential Information in unsealed form. To the extent of the parties agreement concerning the treatment of the subject Confidential Information, the filing party may file the subject materials in unsealed form. To the extent the parties are unable to reach agreement, either party may file a motion to address the appropriate treatment of the subject materials. On such a motion, the Supplying Party shall have the burden of proving that the material is Confidential Information. The material shall remain sealed unless the Court orders otherwise.

25.    When submitting deposition testimony pursuant to the previous paragraph that has been designated as Confidential Information, the submitting party shall submit, to the extent reasonably possible, only those pages of the deposition transcript that are cited, referred to, or

10

relied on by the submitting party.

Miscellaneous Provisions

26.     Defendant shall produce within thirty days of this Order a confidentiality log in a searchable electronic format that can be used with commercially available database software (*e.g.*, Microsoft Access) identifying the following information for each document produced or made available in this litigation: the document's (a) beginning and ending Bates numbers; (b) date; (c) title, (d) document type; (e) author(s); (f) recipient(s); and (g) confidentiality status (*e.g.*, "Confidential" or "Non-Confidential"). Defendant shall update the confidentiality log on the first business day of each month. Each confidentiality log shall reflect all documents produced by defendant by the fifteenth day of the prior month. Documents designated "Confidential-Subject to Protective Order" that do not appear on the log are Confidential Information under this Order.

27.     Within seven days of entry of this Order (or within seven days of entry or execution of any applicable order or stipulation), Defendant shall produce to Plaintiffs copies of any order from any U.S. VIOXX action or MDL-1658 or any stipulation allowing disclosure beyond the protective order in such action that concerns, in whole or in part, the treatment of Confidential Information concerning VIOXX. The parties shall meet and confer to discuss any issues raised by such orders or stipulations.

28.     It is expressly understood by and between the parties that in producing Confidential Information in this litigation, the parties shall be relying upon the terms and conditions of this Protective Order.

11

29.    By written agreement of the parties, or upon motion and order of the Court, the terms of this Protective Order may be amended or modified.  This Protective Order shall continue in force until amended or superseded by express order of the Court, and shall survive any final judgment or settlement in this Action.

30.    Notwithstanding any other provision in the order, nothing in this Order shall affect or modify Merck's ability to review plaintiffs' information and report information to regulatory agencies.

DONE this  24th  day of  May , 2005.


ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

12

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX<br>PRODUCTS LIABILITY LITIGATION | : <br> : <br> : <br> : <br> : <br> : | MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..:

THIS DOCUMENT RELATES TO ALL CASES

## CERTIFICATION

I hereby certify that I have read the Stipulation and Protective Order entered in the above-captioned action and that I understand the terms thereof.

I agree to be bound by the Stipulation and Protective Order.

I further agree to submit to the jurisdiction of this Court for purposes of enforcing the Stipulation and Protective Order, and I understand that the Court may impose sanctions on me for any violation of the Stipulation and Protective Order.

I understand that these certifications are strictly confidential, that counsel for each party are maintaining the certifications without giving copies to the other side, and that the parties expressly agreed and the Court ordered that, except in the event of a violation of this Order, the parties will make no attempt to seek copies of the certifications or to determine the identities of persons signing them. I further understand that if the Court finds that any disclosure is necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel only and outside counsel shall not disclose any information to their clients that could tend to identify any certification signatory unless and until there is specific evidence that a particular signatory may

1

have violated the Order, in which case limited disclosure may be made with respect to that signatory.

Date:_____

_____
(Signature)

Name:_____
(Typed or Printed)

2

Report of John S. Martin, Jr to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

## EXHIBIT 2

## ALPHABETICAL LIST OF WITNESSES INTERVIEWED.[1]

| | | |
|---|---|---|
| 1. | Mr. David Anstice | President, Human Health –The Americas; member of Management Committee |
| 2. | Ms. Marcia Avedon** | Senior Vice President, Human Resources |
| 3. | Dr. Raymond Bain | Vice President and Head, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 4. | Dr. John Baron† | Professor of Medicine and of Community and Family Medicine, Dartmouth Medical School |
| 5. | Dr. Eliav Barr | Senior Director, Biologics Clinical Research, Merck Research Laboratories |
| 6. | Ms. Susan Baumgartner | Marketing Manager, Arthritis and Analgesia Therapeutic Business Group[2] |
| 7. | Ms. Lucine Beauchard | Vice President, Business Practices and Compliance; formerly Executive Director, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |

---

[1]    Many of the witnesses we interviewed held more than one position at Merck over the course of the period covered by our investigation.  We have included the position each witness held during the major part of the relevant period, as well as important committee memberships.  Witnesses who are no longer with Merck are denoted with an "**" next to their names.  Outside consultants to Merck and Merck directors that we interviewed are denoted with an "†" next to their names.

[2]    As described in Exhibit 1, we use the term "Therapeutic Business Group" to refer to the team under that name, and under its previous name, the "Franchise Business Group," and do the same with regard to the titles in this Exhibit.

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 8. | Dr. Gregory Bell** | National Medical Director |
|---|---|---|
| 9. | Dr. Diane Benezra-Kurshan | Director and Head, Worldwide Product Labeling Group, Merck Research Laboratories |
| 10. | Dr. David Bjorkman† | Professor of Medicine, University of Utah School of Medicine |
| 11. | Dr. David Blois** | Senior Vice President, Global Regulatory Affairs, Merck Research Laboratories |
| 12. | Dr. Thomas Bold | Senior Director, Worldwide Product Safety and Epidemiology, Merck Research Laboratories |
| 13. | Mr. James Bolognese | Biostatistician, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 14. | Mr. Lawrence Bossidy† | Member of Merck Board of Directors and Special Committee |
| 15. | Dr. William G. Bowen† | Member of Merck Board of Directors and Special Committee |
| 16. | Mr. E.B. Brakewood | Director, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
| 17. | Dr. Ned Braunstein | Senior Director, Domestic Regulatory Division, Merck Research Laboratories |
| 18. | Dr. Robert Bresalier† | Professor and Chairman, Department of Gastrointestinal Medicine, University of Texas M.D. Anderson Cancer Center |

Exhibit 2

- 2 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 19. | Dr. Thomas Cannell | Executive Director, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
|-----|--------------------|------|
| 20. | Dr. Thomas Capizzi | Senior Director, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 21. | Mr. J. Martin Carroll** | Executive Vice President, Primary Care Sales and Managed Care, U.S. Human Health |
| 22. | Mr. Thomas Casola | Executive Director, Office of Medical/Legal, U.S. Human Health |
| 23. | Dr. Francesca Catella-Lawson | Associate Director, Clinical Research, Gastrointestinal Group, Clinical Sciences, Merck Research Laboratories; formerly Assistant Professor, Department of Medicine, University of Pennsylvania |
| 24. | Mr. Richard Clark | Chief Executive Officer, Merck |
| 25. | Ms. Celia Colbert | Secretary, Merck |
| 26. | Dr. Rory Collins† | Professor of Medicine, Epidemiology, Oxford University |
| 27. | Mr. Thomas Cook | Clinical Biostatistics, Merck Research Laboratories |
| 28. | Dr. Brian Daniels** | Senior Director, Clinical Research, Pulmonary-Immunology Group, Merck Research Laboratories |

Exhibit 2
- 3 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 29. | Dr. Linda Distlerath | Vice President, Public Affairs |
|---|---|---|
| 30. | Dr. Wendy Dixon** | Senior Vice President, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
| 31. | Mr. James Dunn | Senior Manager, Market Integration Team for Vioxx, U.S. Human Health |
| 32. | Dr. Elliot Ehrich** | Senior Director, Clinical Research, Pulmonary-Immunology Group, Merck Research Laboratories |
| 33. | Mr. Riad El-Dada | Senior Director, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
| 34. | Dr. Desmond Fitzgerald† | Professor and Head, Department of Clinical Pharmacology, Royal College of Surgeons in Dublin, Ireland |
| 35. | Dr. Garret FitzGerald† | Robinette Foundation Professor of Cardiovascular Medicine, Department of Medicine, University of Pennsylvania; Chairman, Department of Pharmacology, University of Pennsylvania |
| 36. | Mr. Kenneth Frazier | Senior Vice President and General Counsel; member of Management Committee |
| 37. | Dr. Gregory Geba** | Senior Medical Director, Clinical Development Program, Medical and Scientific Affairs, U.S. Human Health |

Exhibit 2

- 4 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 38. | Dr. Barry Gertz | Executive Vice President, Clinical Sciences, Merck Research Laboratories; formerly Vice President, Clinical Pharmacology, Merck Research Laboratories |
|-----|-----------------|---|
| 39. | Mr. Raymond Gilmartin** | Chairman of the Board, President, and Chief Executive Officer; member of Management Committee |
| 40. | Dr. Bonnie Goldmann** | Vice President, Domestic Regulatory Affairs, Merck Research Laboratories |
| 41. | Dr. Robert Gould | Vice President, Basic Research, Merck Research Laboratories |
| 42. | Dr. Douglas Greene** | Executive Vice President, Clinical Sciences and Product Development, Merck Research Laboratories |
| 43. | Dr. Michael Gresser** | Executive Director, Molecular Biology, Merck Frosst Centre for Therapeutic Research, Merck Research Laboratories |
| 44. | Dr. Peter Gruer** | Executive Director, Worldwide Product Safety and Epidemiology, Merck Research Laboratories |
| 45. | Dr. Lawrence Hirsch | Executive Director, Medical Communications, Merck Research Laboratories; formerly Executive Director, Public Affairs |
| 46. | Dr. Peter Honig | Senior Vice President, Worldwide Regulatory Affairs & Product Safety, Merck Research Laboratories |

Exhibit 2

- 5 -

Report of John S. Martin, Jr to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 47. | Dr. Kevin Horgan** | Senior Director, Gastrointestinal Group, Merck Research Laboratories |
|---|---|---|
| 48. | Ms. Linda Hostelley | Executive Director, Adverse Experience Reporting, Worldwide Product Safety and Epidemiology, Merck Research Laboratories |
| 49. | Dr. Philip Huang | Senior Director, Regulatory Affairs |
| 50. | Mr. Mark James | Executive Director, Market Integration Team, U.S. Human Health |
| 51. | Ms. Jo Jerman | Vice President, Sales, Southeastern Business Group, U.S. Human Health |
| 52. | Mr. Art Kaufmann | Director, Public Affairs, Manufacturing Division |
| 53. | Dr. William Keane | Vice President, U.S. Medical and Scientific Affairs |
| 54. | Dr. William N. Kelley† | Member of Merck Board of Directors and Special Committee |
| 55. | Mr. Deepak Khanna | Associate Director, Worldwide Human Health Marketing Division |
| 56. | Dr. Peter Kim | President, Merck Research Laboratories; member of Management Committee |
| 57. | Dr. Marvin Konstam† | Professor of Medicine, Tufts University; Chief of Cardiology, New England Medical Center, Boston, Massachusetts |

Exhibit 2

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 58. | Ms. Joanne Lahner | Managing Counsel |
|-----|-------------------|------------------|
| 59. | Dr. Martino Laurenzi | Director, Middle European Region, Clinical Research Operations |
| 60. | Mr. Bruce Lesser | Senior Director, National Health Science Associates, U.S. Human Health |
| 61. | Ms. Judy Lewent | Chief Financial Officer and Executive Vice President |
| 62. | Ms. Kyra Lindemann | Public Affairs |
| 63. | Mr. Christopher Lines | Director, Medical Communications |
| 64. | Ms. Gaye Margiatto | Regulatory Associate, Worldwide Product Labeling Group, Merck Research Laboratories |
| 65. | Ms. Margaret McGlynn | Executive Vice President, Primary Care Sales and Managed Care, U.S. Human Health |
| 66. | Ms. Charlotte McKines | Executive Director, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
| 67. | Mr. Leonard Mendez | Executive Director, Integrated Health Systems/ Group Purchasing Organization Sales and Marketing, U.S. Human Health |
| 68. | Ms. Tracy Mills | Senior Director, Vioxx Therapeutic Business Group, Marketing, U.S. Human Health |

Exhibit 2

- 7 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 69. | Dr. Briggs Morrison | Senior Director, Pulmonary-Immunology Group, Merck Research Laboratories |
| 70. | Dr. Thomas Musliner | Executive Director, Endocrine/Metabolism Group, Clinical Sciences, Merck Research Laboratories |
| 71. | Dr. Jennifer Ng** | Biostatistician, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 72. | Dr. Steven Nichtberger** | Vice President, Worldwide Human Health Marketing |
| 73. | Dr. Alan Nies** | Senior Vice President, Clinical Sciences, Merck Research Laboratories |
| 74. | Dr. John Oates† | Senior Professor of Medicine and Pharmacology, Vanderbilt University School of Medicine |
| 75. | Dr. Leonard Oppenheimer** | Vice President, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 76. | Dr. Bettina Oxenius | Clinical Monitor, Gastrointestinal Group, Merck Research Laboratories |
| 77. | Dr. Carlo Patrono† | Professor of Pharmacology, University of Rome "La Sapienza" School of Medicine in Rome, Italy; Director, MIUR Center for Excellence on Aging, University of Chieti |

Exhibit 2
- 8 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 78. | Dr. Roger Perlmutter** | Executive Vice President, Basic Research, Merck Research Laboratories |
|---|---|---|
| 79. | Mr. Russell Posner | Senior Director, Executive and International Compensation |
| 80. | Dr. Hui Quan** | Associate Director, Scientific Staff, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 81. | Mr. Michael Quinlan | Assistant General Counsel |
| 82. | Dr. Alise Reicin | Senior Director, Pulmonary-Immunology Group, Merck Research Laboratories |
| 83. | Dr. Scott Reines** | Vice President, Central Nervous System, Ophthalmology and Gastrointestinal Groups, Merck Research Laboratories |
| 84. | Dr. Theodore Reiss | Vice President, Clinical Research, Merck Research Laboratories |
| 85. | Mr. Robert Rode | Manager, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
| 86. | Mr. Tim Ruef | Senior Director, Worldwide Human Health Marketing Division |
| 87. | Dr. Robert Sandler† | Professor, Cancer Epidemiology, Cancer Prevention and Control, University of North Carolina (Chapel Hill) |

Exhibit 2

- 9 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 88. | Dr. Nancy Santanello | Senior Director, Epidemiology Group, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
|---|---|---|
| 89. | Mr. Adam Schechter | Vice President, Arthritis and Analgesia Therapeutic Business Group, Marketing, U.S. Human Health |
| 90. | Dr. Jules Schwartz | Director, Scientific Staff, Clinical Pharmacology Group, Merck Research Laboratories |
| 91. | Dr. Edward Scolnick** | President, Merck Research Laboratories; member of Merck's Board of Directors; member of Management Committee |
| 92. | Dr. Elizabeth Seidenberg** | Vice President, Clinical Research, Pulmonary-Immunology Group, Merck Research Laboratories |
| 93. | Dr. Deborah Shapiro | Director, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 94. | Dr. Bradley Sheares | President, U.S. Human Health |
| 95. | Dr. Louis Sherwood** | Senior Vice President, Medical and Scientific Affairs, U.S. Human Health |
| 96. | Dr. Robert Silverman | Senior Director, Domestic Regulatory Affairs, Merck Research Laboratories |
| 97. | Dr. Thomas Simon | Vice President, Gastrointestinal Group, Clinical Sciences, Merck Research Laboratories |

Exhibit 2
- 10 -

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 98. | Dr. Irwin Singer | Senior Research Director, Immuno-Labeling Studies, Merck Research Laboratories |
|-----|------------------|-------------------------------------------------------------------------------|
| 99. | Dr. Steven Snapinn** | Senior Director, Cardiovascular Group, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 100. | Dr. Reynold Spector** | Executive Vice President, Clinical Sciences, Merck Research Laboratories |
| 101. | Ms. Kathryn Steinbugler | Assistant General Counsel |
| 102. | Dr. Elizabeth Stoner | Vice President, Clinical Research, Endocrine/Metabolism Group, Clinical Sciences, Merck Research Laboratories |
| 103. | Mr. Leonard Tacconi | Executive Director, Integrated Marketing Communications, U.S. Human Health |
| 104. | Dr. Samuel O. Thier† | Member of Merck Board of Directors and Special Committee |
| 105. | Dr. Kenneth Truitt** | Director, Pulmonary-Immunology Group, Clinical Sciences, Merck Research Laboratories |
| 106. | Dr. Mervyn Turner | Senior Vice President, Basic Research, Merck Frosst Centre for Therapeutic Research, Merck Research Laboratories |
| 107. | Dr. Janet van Adelsberg | Director, Clinical Immunology and Analgesia Group, Merck Research Laboratories |
| 108. | Ms. Joan Wainwright | Vice President, Public Affairs |

Exhibit 2

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

| 109. | Dr. Douglas Watson | Director, Epidemiology Group, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 110. | Dr. Michael Weinblatt† | Professor of Medicine, Harvard Medical School |
| 111. | Ms. Jan Weiner | Executive Director, U.S. Human Health Public Affairs |
| 112. | Ms. Ellen Westrick** | Executive Director, Office of Medical/Legal, U.S. Human Health |
| 113. | Dr. George Williams** | Executive Director, Biostatistics and Research Decision Sciences, Merck Research Laboratories |
| 114. | Dr. John Yates** | Senior Vice President, Medical and Scientific Affairs, U.S. Human Health |
| 115. | Dr. Scott Zeger† | Chair, Department of Biostatistics, Johns Hopkins University |

Exhibit 2
- 12 -

0771518   DEBEVOISE & PLIMPTON

221921

| DATE | INVOICE NUMBER | MEMO | | BALANCE |
|---|---|---|---|---|
| 09/14/2006 | 000309704 | VIOXX MDL | | 100.00 |
| | | 1-   750 | 01 -180 -61499-00000 | |
| | | CC-Other Client Costs | | |

| CHECK DATE | CHECK NUMBER | | | |
|---|---|---|---|---|
| 09/14/2006 | 000221921 | | TOTAL | 100.00 |

THE FACE OF THIS CHECK HAS A COLORED BACKGROUND · PHOTOCOPY TO VERIFY AUTHENTICITY · THIS CHECK HAS A REFLECTIVE WATERMARK ON BACK · HOLD AT AN ANGLE TO VIEW.

**ASHCRAFT & GEREL LLP**
ATTORNEYS AT LAW
OPERATION ACCOUNT
4900 SEMINARY ROAD, SUITE 650
ALEXANDRIA, VA 22311

WACHOVIA BANK
WASHINGTON, D.C. 20013
18 - 122 / 540

221921

PAY: *One Hundred and 00/100 Dollars*

| NUMBER | DATE | AMOUNT |
|---|---|---|
| 000221921 | 09/14/2006 | ********100.00 |

TO THE DEBEVOISE & PLIMPTON
ORDER 919 THIRD AVENUE
OF    NEW YORK, NY 10022

⑈221921⑈ ⑇054001220⑇ 2076500 27586 2⑈

ASHCRAFT & GEREL ATTORNEYS AT LAW   0771518   DEBEVOISE & PLIMPTON

221921

| DATE | INVOICE NUMBER | MEMO | | BALANCE |
|---|---|---|---|---|
| 09/14/2006 | 000309704 | VIOXX MDL | | 100.00 |
| | | 1-   750 | 01 -180 -61499-00000 | |
| | | CC-Other Client Costs | | |

| CHECK DATE | CHECK NUMBER | | | |
|---|---|---|---|---|
| 09/14/2006 | 000221921 | | TOTAL | 100.00 |