# EXHIBIT 12

# DEBEVOISE & PLIMPTON LLP

The Report of The Hon. John S. Martin, Jr. to the Special Committee of the Merck Board of Directors ("the Martin Report")

**EMBARGOED UNTIL 5:00 PM EDT**
September 6, 2006

CONTACT: Keith Blackman
Phone: 202-494-1017
212-614-4530
Keith.blackman@bm.com

## SPECIAL COMMITTEE OF BOARD OF DIRECTORS OF MERCK & CO., INC. RELEASES RESULTS OF INDEPENDENT 20-MONTH INVESTIGATION INTO INTEGRITY OF MERCK SENIOR MANAGEMENT IN DEVELOPMENT, TESTING AND MARKETING OF VIOXX

**New York, N.Y. (EMBARGOED until 5:00 p.m. EDT September 6, 2006)** - A Special Committee of the Board of Directors of Merck & Co., Inc. today released a report by The Honorable John S. Martin, Jr. of Debevoise & Plimpton LLP (the "Martin Report") setting forth the factual record and conclusions resulting from a 20-month independent investigation into the integrity of Merck's senior management in the development, testing and marketing of Vioxx (rofecoxib). The Martin Report, while not endorsing every action that Merck employees took with respect to Vioxx, found that Merck's senior management acted with integrity. The Martin Report and accompanying Appendices comprise more than 1,700 pages.

The Board of Directors created a Special Committee to investigate the conduct of senior management in connection with Vioxx, a widely used pain medication, after Merck voluntarily withdrew Vioxx from the worldwide market in September 2004.

In December 2004, the Special Committee retained Judge Martin, a former United States District Judge for the Southern District of New York and former United States Attorney for the Southern District of New York, and Debevoise & Plimpton LLP to conduct the investigation and report to the Special Committee. The investigation spanned 20 months, during which time Judge Martin and the Debevoise team of lawyers reviewed millions of pages of documents and conducted 150 witness interviews of current and former Merck employees and outside scientists and physicians who had acted as consultants to Merck. The Debevoise team, which spent over 53,000 hours on the investigation, also reviewed deposition and trial testimony in litigation and other proceedings.

"The Special Committee instructed Merck to cooperate fully with the investigation and we had full access to Merck employees, trial transcripts, depositions and documents," said Judge Martin.

-more-

"The Special Committee is reassured by the fact that, in reviewing numerous allegations of wrongdoing, the Martin Report concludes that management acted with integrity and had legitimate reasons for making the decisions that it made, in light of the knowledge available at the time," said Dr. William G. Bowen, former President of the Andrew W. Mellon Foundation and former President of Princeton University, chairman of the six-member Committee. The Special Committee's other members were Mr. Lawrence A. Bossidy, Dr. William N. Kelley, Ms. Rochelle B. Lazarus, Dr. Samuel O. Thier and Mr. Peter C. Wendell.

The Martin Report addresses four broad categories of conduct that have given rise to allegations against the Company: (i) Merck's alleged knowledge of cardiovascular risks of Vioxx before FDA approval; (ii) Merck's scientific response to cardiovascular data from the VIGOR Trial; (iii) Merck's marketing efforts; and (iv) Merck's analysis and reporting of cardiovascular data arising from the APPROVe Trial. The Report is accompanied by a set of 20 Appendices that provide a detailed review of the evidence relating to development, testing and marketing of Vioxx.

Some of the Martin Report's key findings include:

- There is no basis for the suggestion made by critics that Merck scientists believed that Vioxx posed or was likely to pose a cardiovascular risk prior to its approval by the FDA.

- In March 2000, Merck scientists responded appropriately to cardiovascular data from a clinical trial (called the VIGOR Trial) and reasonably determined, after substantial scientific inquiry, that the comparator agent in the trial, naproxen, likely had conferred a cardioprotective effect and that Vioxx likely had not caused cardiovascular events.

- Merck disclosed all clinical trial data to the FDA.

- Merck scientists continually generated, collected and analyzed data bearing on the cardiovascular safety of Vioxx. Their review of the data did not reveal a difference in the relative risk of Vioxx compared to placebo until the APPROVe Trial data were unblinded in late September 2004, at which point Merck immediately withdrew the drug.

- Merck scientists' view that the cardiovascular hazard ratio in the APPROVe Trial was not constant over time was reasonable in light of the evidence, and the inaccurate description in the APPROVe Trial article of the statistical method used to test the constancy of the hazard ratio was a result of simple error.

The Martin Report also contains criticisms of certain conduct by Merck employees that is fully described in the Appendices, including certain interactions with academic scientists who were critical of Merck and Vioxx, the clarity of certain public statements by Merck concerning Vioxx, the use of a promotional aid by sales representatives after the VIGOR Trial cardiovascular data were unblinded that did not, standing alone, provide all of the available cardiovascular data on Vioxx, and documents prepared by the Marketing and Sales Departments that discussed potentially providing grants and other incentives to physicians who were critical of Merck or Vioxx.

-more-

"Our investigation did find instances of poor judgment and errors, but it is important to note that they were not made with intent to deceive," said Judge Martin.

"It is the opinion of the Special Committee that Merck senior management acted with integrity in the development and marketing of Vioxx," said Dr. Bowen.

To view the Martin Report in its entirety or to obtain an online press kit, please visit www.debevoise.com/martinreport.

**About the Special Committee of the Board of Directors of Merck & Co.**

The mission of the Special Committee was to examine the principal allegations of wrongdoing that have been asserted with respect to Merck's development and marketing of Vioxx to determine whether the Company's senior management acted with integrity.

**About Debevoise & Plimpton LLP**

In addition to Judge Martin, the Debevoise team was led by partner Mark P. Goodman, a former Assistant United States Attorney for the Southern District of New York. The team also included partner Maeve O'Connor and senior associate Debbie Todres.

Debevoise & Plimpton LLP is a leading international law firm, representing a wide range of clients around the world. Founded in 1931, the firm has offices in New York, Washington, D.C., London, Paris, Frankfurt, Moscow, Hong Kong and Shanghai. The firm's Web site can be found at www.debevoise.com.

**Forward-looking Statement**

This press release contains "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. These statements are based on management's current expectations and involve risks and uncertainties, which may cause results to differ materially from those set forth in the statements. The forward-looking statements may include statements regarding product development, product potential or financial performance. No forward-looking statement can be guaranteed, and actual results may differ materially from those projected. Merck undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events, or otherwise. Forward-looking statements in this press release should be evaluated together with the many uncertainties that affect Merck's business, particularly those mentioned in the cautionary statements in Item 1 of Merck's Form 10-K for the year ended Dec. 31, 2005, and in its periodic reports on Form 10-Q and Form 8-K, which the Company incorporates by reference.

###

 Statement

### Merck & Co., Inc. Statement regarding the Martin Report

WHITEHOUSE STATION, N.J., Sept. 6, 2006 – We commend the Special Committee and Judge Martin for conducting a comprehensive, independent and objective investigation of the development and marketing of Vioxx. Throughout the entire process, we have cooperated fully with Judge Martin and his team.

After an exhaustive review, the final report confirms what we at Merck have always believed—that there is no basis for the claim that Merck knowingly put patients at risk of cardiovascular events. The report also concludes that no member of Merck's senior management, including the senior scientists at Merck Research Labs, believed that Vioxx was prothrombotic or attempted to mislead the public. In short, Judge Martin found the Merck scientists to be highly skilled and dedicated professionals who acted in good faith.

It is to be expected that such an intense evaluation of events that took place over many years would lead to some criticisms. Some we have already addressed. For others, we will consider carefully the criticism and the facts underlying it and determine whether action is appropriate to address it.

Merck has a proud legacy of both scientific excellence and adherence to high ethical standards. We are committed to acting ethically, responsibly and, above all, with integrity.

**About Merck**

Merck & Co., Inc. is a global research-driven pharmaceutical company dedicated to putting patients first. Established in 1891, Merck currently discovers, develops, manufactures and markets vaccines and medicines to address unmet medical needs. The Company devotes extensive efforts to increase access to medicines through far-reaching programs that not only donate Merck medicines but help deliver them to the people who need them. Merck also publishes unbiased health information as a not-for-profit service. For more information, visit www.merck.com.

- more -

2

**Forward-Looking Statement**

This statement contains "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. These statements are based on management's current expectations and involve risks and uncertainties, which may cause results to differ materially from those set forth in the statements. The forward-looking statements may include statements regarding product development, product potential or financial performance. No forward-looking statement can be guaranteed, and actual res ults may differ materially from those projected. Merck undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events, or otherwise. Forward-looking statements in this statement should be evaluated togeth er with the many uncertainties that affect Merck's business, particularly those mentioned in the cautionary statements in Item 1 of Merck's Form 10-K for the year ended Dec. 31, 2005, and in its periodic reports on Form 10-Q and Form 8-K, which the Company incorporates by reference.

# # #