UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE-TRIAL ORDER

The following constitutes the Proposed Pretrial Order to be entered in the above-styled case.

**Trial Date:**            November 27, 2006

**Pretrial Conference Date:**    November 21, 2006

**Trial Attorneys:**

   For the Plaintiff:

   Andy D. Birchfield, Jr.
   P. Leigh O'Dell
   **Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.**
   234 Commerce Street
   Montgomery, Alabama 36104
   (334) 269-2343

<u>For the Defendant</u>:

Philip S. Beck
Mark Ouweleen
Carrie A. Jablonski
**BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

1. <u>**Parties:**</u>

   Plaintiff is Anthony Wayne Dedrick, a resident of Waynesboro, Tennessee.

   Defendant Merck & Co., Inc. is the manufacturer of Vioxx®, a prescription medication first approved by the United States Food and Drug Administration in 1999 and voluntarily withdrawn from the market in 2004.

2. <u>**Jurisdiction:**</u>

   a. The jurisdiction of this Court is based on diversity of citizenship under 28 U.S.C. § 1332.

   b. It is stipulated that this claim exceeds $75,000.

   c. Jurisdiction is uncontested by the parties.

3. <u>**Procedural History and Posture:**</u>

   Plaintiff filed his Complaint on June 21, 2005, in the United States District Court for the Eastern District of Louisiana as part of *In re Vioxx Product Liability Litigation*, MDL No. 1657. Plaintiff asked for a trial by jury on all issues.

   Merck & Co. answered the Complaint on August 19, 2005.

4. <u>**Pending Motions:**</u>

   a. Plaintiff's Motions:

      (1) Plaintiff has filed the following *Daubert* motions:

       A. Plaintiff's Motion to Reassert Daubert Motions Previously Considered by the Court
       B. Plaintiff's Motion to Exclude Opinion Testimony of Paul J. Roach, M.D.
       C. Plaintiff's Motion to Exclude Evidence That Cocaine Was a Contributing Cause of Plaintiff's Heart Attack (filed under seal).

(2) Plaintiff has filed the following motions *in limine*:

       A. Plaintiff's Motion in Limine No. 1 – Plaintiff's Motion In Limine To Exclude Evidence Regarding Plaintiff's Prior Criminal History And Prior Drug Use (filed under seal).
       B. Plaintiff's Motion in Limine No. 2 – Plaintiff's Motion In Limine To Preclude Defendant Merck From Referring To Mr. Dedrick's Left Anterior Descending Coronary Artery As A "Widow Maker"
       C. Plaintiff's Motion in Limine No. 3 – Plaintiff's Motion In Limine To Exclude Certain Subjects From Evidence At Trial
       D. Plaintiff's Motion in Limine No. 4 – Plaintiff's Motion In Limine To Exclude Evidence Or Discussion Concerning Defendant's Reputation And/Or "Good Acts"
       E. Plaintiff's Motion in Limine No. 5 – Plaintiff's Motion In Limine To Preclude Testimony By Merck Employees Regarding Their Personal Use Of Vioxx
       F. Plaintiff's Motion in Limine No. 6 – Plaintiff's Motion In Limine To Preclude Merck From Arguing That FDA Regulations Prohibited The Company From Making Label Changes Without Prior Agency Approval
       G. Plaintiff's Motion In Limine No. 7 – Plaintiff's Motion In Limine To Exclude Evidence Regarding The Number Of Heart Attacks In The United States Of America
       H. Plaintiff's Motion in Limine No. 8 – Plaintiff's Motion In Limine To Preclude Merck Witnesses From Testifying About The Annual Number Of Deaths Attributable To NSAID Gastrointestinal Toxicity Without Appropriate Qualifications And Scientific Support
       I. Plaintiff's Motion in Limine No. 9 – Plaintiff's Motion In Limine To Preclude Merck Employee and Former Employee Witnesses From Offering Opinion Testimony Which They Are Unqualified To Offer, Which Has Not Previously Been Disclosed, And Which Lacks Appropriate Support Under Daubert
       J. Plaintiff's Motion in Limine No. 10 – Plaintiff's Motion In Limine To Exclude Evidence, Testimony Or Argument That Vioxx Is A Potential Cure For Cancer
       K. Plaintiff's Motion in Limine No. 11 – Plaintiff's Motion In Limine To Preclude Defendant Merck From Offering Any Testimony Or

     Argument Re The Preamble To 71 Federal Register §3922-01 And Any Statement By The FDA Regarding Preemption
  L. Plaintiff's Motion in Limine No. 12 – Plaintiff's Motion In Limine To Exclude The "Martin Report"
  M. Plaintiff's Motion in Limine No. 13 -- Plaintiff's Motion In Limine Regarding The April 6, 2005 FDA Staff Memorandum Addressing Analysis And Recommendations For Agency Action

b.  Defendant's Motions:

 (1)  Merck has filed the following *Daubert* motions:

  A. Motion to Exclude Testimony of Ira J. Gelb, M.D., F.A.C.C. (Expert Challenge No. 1)
  B. Motion to Exclude Testimony of Colin Funk, Ph.D. (Expert Challenge No. 2)
  C. Motion to Exclude Testimony of Donna K. Arnett, Ph.D., M.S.P.H. (Expert Challenge No. 3)
  D. Motion to Exclude Testimony of Lemuel A. Moye, M.D., Ph.D. (Expert Challenge No. 4)
  E. Motion to Exclude Testimony of John L. Gueriguian, M.D. (Expert Challenge No. 5)[*]
  F. Motion to Exclude Testimony of Cornelia Pechmann, Ph.D. (Expert Challenge No. 6)
  G. Motion to Exclude Testimony of Jerry Avorn, M.D. (Expert Challenge No. 7)
  H. Motion to Exclude Testimony of John W. Farquhar, M.D. (Expert Challenge No. 8)
  I. Motion to Exclude Testimony of Egil Fosslien, M.D. (Expert Challenge No. 9)
  J. Motion to Exclude Expert Testimony that Short-Term Vioxx Use Increases Cardiovascular Risk (Expert Challenge No. 10)
  K. Motion to Exclude Testimony of Mark I. Furman, M.D. (Expert Challenge No. 11)[†]

 (2)  Merck has filed the following motions *in limine*:

  A. Omnibus Motion for Order Excluding Evidence and Testimony Addressed in Motions Previously Considered by the Court (Motion in *Limine*)
  B. Omnibus Motion for Order Excluding Evidence and Testimony Addressed in Motions Previously Granted by the Court (Motion in *Limine* No. 2)

---

[*] This motion is moot.
[†] This motion will be filed on November 13, 2006, after Dr. Furman's deposition takes place.

        (3)      Merck has filed the following other motions:

              A. Motion to Quash Subpoena of David Anstice[‡]
              B. Motion for Protective Order Regarding the Trial Preservation Deposition of John W. Farquhar[§]

## 5. Plaintiff's Claims:

Plaintiff Anthony Wayne "Tony" Dedrick suffers from osteoarthritis. On July 8, 2002, Dr. Esmeraldo Herrera prescribed to Mr. Dedrick the pain reliever, Vioxx, at a dose of 25 mg which was to be taken daily. Vioxx is manufactured and marketed by Merck & Co. Mr. Dedrick took Vioxx as prescribed and in a reasonably foreseeable manner for over 9 months.

As a direct and proximate result of his ingestion of Vioxx, on January 8, 2003, six months after he began taking the drug, Mr. Dedrick suffered a myocardial infarction. Mr. Dedrick underwent coronary artery bypass surgery as a result of his heart attack. Dr. Herrera would not have prescribed Vioxx to Mr. Dedrick if Merck had properly disclosed the cardiovascular risks associated with taking the drug.

Plaintiff claims that Merck designed, manufactured, sold, distributed, marketed, and promoted Vioxx and that Vioxx is unreasonably dangerous or defective. Moreover, Plaintiff asserts that Merck sold and distributed Vioxx without notice to doctors and patients, including Mr. Dedrick, of the increased risk of adverse cardiovascular events associated with the ingestion of Vioxx. The defective nature of Vioxx and Merck's failure to warn of its dangers caused or was a substantial contributing factor in Mr. Dedrick's heart attack.

## 6. Defendant's Claims:

Merck contends that there is no evidence that the use of Vioxx at the 25 mg dose causes an increased risk of heart attacks. Merck also contends that there is no evidence that Mr. Dedrick's use of Vioxx at a 25 mg dose for approximately six months caused his heart attack, but that Mr. Dedrick's alleged injuries were caused instead by his preexisting cardiovascular disease and independent health risk factors. Merck contends that Mr. Dedrick contributed to his own cardiovascular disease in a number of ways, including *inter alia* smoking, eating a high fat diet, inactivity, illegal drug use and alcohol use, and refusal to control his diabetes through insulin treatment. Mr. Dedrick also failed to disclose all relevant information to his treating physicians.

Further, Merck contends that its warnings and instructions to Mr. Dedrick's prescribing physician, Dr. Herrera, were adequate and complied with the rules of the

---

[‡] The Court denied this motion on Oct. 16, 2006. Merck is seeking mandamus review of this order.
[§] This motion is moot.

FDA. Merck also asserts that it acted reasonably and that it disclosed to the FDA all relevant Vioxx safety data and risk information in a timely and responsible manner. Regardless, there is no evidence that any allegedly inadequate warnings impacted the decision of Mr. Dedrick's physician to prescribe Vioxx to Mr. Dedrick. Plaintiff cannot show that additional or different information would have changed his doctor's prescribing decision. Nor can plaintiff show that Mr. Dedrick or his physician detrimentally relied on any statement or omission by Merck.

7.   **Uncontested Material Facts:**

By Plaintiff:

a.   Mr. Anthony Wayne "Tony" Dedrick suffered a heart attack on January 8, 2003. As a result of the heart attack, Mr. Dedrick underwent coronary artery bypass surgery.

b.   Vioxx, the pain reliever ingested by Mr. Dedrick, was designed, manufactured, and marketed by Merck & Co.

c.   The Vioxx pills ingested by Mr. Dedrick were in the substantially same condition as when the drug left the control of Merck & Co.

By Defendant:

a.   Vioxx is prescription pain medication regulated by the United States Food and Drug Administration ("FDA"). It is a member of the class of drugs known as non-steroidal anti-inflammatory drugs ("NSAIDs"), which are used to treat pain and inflammation.

b.   In May 1999, the FDA first approved Vioxx as "safe and effective" for marketing and distribution within the United States.

c.   Mr. Dedrick was diagnosed with osteoarthritis in 1999.

d.   Mr. Dedrick received a prescription for Vioxx at the 25 mg dose from Dr. Esmeraldo Herrera on July 8, 2002. His pharmacy records reflect that he had prescriptions for Vioxx 25 mg from July 2002 to April 2003.

e.   Mr. Dedrick relied on his prescriber's advice in deciding to take Vioxx.

f.   The label or package insert that was in effect at the time Mr. Dedrick was taking Vioxx was approved by the FDA in April 2002.

g.  On January 8, 2003, Mr. Dedrick was hospitalized for chest pain. His EKG showed ST-segment elevation consistent with acute myocardial infarction. He was treated with thrombolytics with resolution of his symptoms and ST-segment elevation.

h.  On September 30, 2004, Merck announced that it had decided, on its own initiative, to withdraw Vioxx from the market. This decision followed the release of interim data from a clinical trial, APPROVe, which was commissioned and financed by Merck.

i.  At all times relevant to this action, Vioxx was approved by the FDA as safe and effective for marketing and distribution within the United States.

8.  **Contested Issues of Fact:**

By Plaintiff:

a.  Vioxx, unlike other non-steroidal anti-inflammatory drugs (NSAIDs), selectively inhibited COX-2 and not COX-1. Vioxx substantially increased the risk of catastrophic side effects such as heart attacks and cerebrovascular adverse events such as ischemic strokes, and other serious injuries.

b.  Merck concealed its knowledge of Vioxx's unreasonably dangerous risks from physicians, like Dr. Esmeraldo Herrera, and consumers, like Mr. Dedrick.

c.  Merck successfully downplayed and, in certain instances, concealed the fact that Vioxx significantly increased the risk of adverse thrombotic events, including devastating cardiovascular and cerebrovascular injuries such as myocardial infarctions (heart attacks) and strokes, until the drug was recalled in late September 2004.

d.  Merck persistently failed to warn the medical community and patients of serious cardiovascular and cerebrovascular adverse events occasioned by the use of Vioxx.

e.  Merck aggressively marketed Vioxx to physicians, other healthcare providers, and patients by misleading physicians about the product and by failing to warn and protect the consumers from serious dangers associated with the use of the drug.

f.  Sales of Vioxx soared to $2.5 billion dollars in 2003 alone on the strength of the biggest direct-to-consumer marketing campaign ever undertaken by a pharmaceutical company for a prescription medication.

g. Merck purposefully misrepresented, understated and otherwise downplayed the serious health hazards and risks associated with Vioxx.

h. Merck failed to conduct adequate and sufficient post-marketing surveillance of Vioxx after it began marketing, advertising, distributing, and selling the drug.

i. Merck knowingly downplayed and, in certain instances, withheld from publication, the severity of cardiovascular and cerebrovascular risks associated with Vioxx. For example, Merck downplayed this information in connection with the *New England Journal of Medicine's* November 2000 report regarding the VIGOR study, authored by Merck sponsored authors.

j. In the VIGOR study, Merck ignored the causal relationship between Vioxx and the significantly increased rate of cardiovascular events among participants taking Vioxx. Instead, Merck widely and continuously disseminated the post hoc rationalization that the VIGOR study showed that Naproxen reduced cardiovascular risk (i.e., it exerted a "cardioprotective effect"), not that Vioxx posed a serious cardiovascular hazard.

k. The FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") reviewed the Vioxx promotional activities and materials and warned Merck that its marketing of Vioxx was: "false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations."

l. According to the FDA's September 17, 2001 Warning Letter issued to Mr. Raymond Gilmartin, CEO of Merck & Co., Merck minimized the rate of heart attacks among Vioxx users when communicating with healthcare providers and patients, knew it was false and misleading to assert that naproxen's limited ability to block platelet aggregation explained the VIGOR results, and failed to point out that the more affordable and safer alternative to Vioxx was naproxen. The Warning Letter also reprimanded Merck for misrepresenting claims regarding the efficacy of Vioxx as compared to Celebrex.

m. From its inception until Vioxx was pulled from the market, Merck systematically attempted to intimidate physicians or other "thought leaders" in the medical community who sought to raise concerns regarding the cardiovascular safety of Vioxx.

n. Merck undertook a randomized clinical trial called the Adenomatous Polyp Prevention on Vioxx ("APPROVe") -- a trial of Vioxx, 25 mg/day -- to try to demonstrate the drug's effectiveness in preventing colon polyps.

o.  At its first meeting in or about January 2002, the External Safety Monitoring Board ("ESMB") for the APPROVe trial voiced concerns regarding "trends noted in serious adverse clinical events and in thromboembolic events."

p.  On or about September 17, 2004, the ESMB recommended that participating patients in APPROVe be instructed to discontinue the study treatment.

q.  Merck claims that the APPROVe study did not show a difference between the incidences of cardiovascular injuries until after 18 months of exposure to Vioxx. However, Merck concealed from the public its internal analysis showing that, in fact, there was a higher incidence of such injuries in the Vioxx group in both the 0 to 18 months and 19-36 months exposure periods, when all events reported by the clinical trial investigators are considered. Merck included this data in a January 2005 draft of the APPROVe study, but excluded it from the published version a month later. Thus, contrary to the statements Merck has repeatedly made to the public and the FDA, the APPROVe data actually show that Vioxx is dangerous in both short-term and long-term users.

r.  APPROVe reinforces the conclusion that the VIGOR results were due to Vioxx cardiovascular toxicity rather than supposed protection by Naproxen.

s.  APPROVe showed a statistically significant relative risk of 2.80 for the cardiovascular events category including fatal and non-fatal MI, sudden death due to cardiac causes, and unstable angina.

t.  As a result of Merck's actions and the unreasonably dangerous nature of Vioxx, Mr. Dedrick suffered a myocardial infarction and underwent coronary artery bypass surgery. Accordingly, Plaintiff seeks compensatory and punitive damages.

By Defendant:

a.  There is no scientifically reliable evidence that Vioxx taken at the 25 mg dose for the duration taken by Mr. Dedrick causes heart attacks.

b.  Nor is there any scientifically reliable evidence that the use of Vioxx at the 25 mg dose reduces the level of prostacyclin in the coronary vasculature or causes or leads to a "pro-thrombotic" state.

c.  There is also no scientifically reliable evidence that the use of Vioxx at the 25 mg dose is associated with an acceleration of atherosclerosis (*i.e.*, build-up of coronary artery plaque).

    d.    Further, there is no evidence that Mr. Dedrick's purported use of Vioxx at a 25 mg dose actually caused his heart attack or any of his alleged injuries.

    e.    Mr. Dedrick had coronary artery disease before he ever took Vioxx. The cause of his heart attack was his preexisting coronary artery disease as precipitated by his many risk factors.

    f.    Mr. Dedrick had factors associated with heart disease and heart attack, including alcohol abuse and illegal drug use.

    g.    On January 10, 2003, Mr. Dedrick underwent cardiac catheterization, which revealed severe multi-vessel coronary artery disease, including a 70-75% stenosis in the mid-segment of the left anterior descending artery, a 70-80% stenosis in the distal left circumflex artery, and a 95% stenosis of the right coronary artery with thrombus. Overall systolic function was normal. He underwent successful quadruple coronary bypass surgery on January 13, 2003.

    h.    Until the APPROVe data were released, the weight of the available scientific evidence indicated that Vioxx did not pose an increased risk of thrombotic cardiovascular events as compared with patients taking a placebo.

## 9. Contested Issues of Law:

By Plaintiff:

    a.    The appropriateness of bifurcating the trial. Plaintiff asserts that the trial of this case should not be bifurcated.

    b.    The strict liability of Merck & Co. for designing, manufacturing and marketing Vioxx which is defective and unreasonably dangerous.

    c.    The strict liability of Merck & Co. for failing to warn the medical community and consumers of the increased dangers associated with the ingestion of Vioxx.

    d.    The strict liability of Merck & Co. for failing to properly and adequately test Vioxx to learn about the increased dangers associated with the ingestion of Vioxx.

    e.    The compensatory damages suffered by the Plaintiff.

    f.    The punitive damages warranted by Merck's wantonness, willfulness or reckless indifference to the rights of safety and well-being of 20 million people who were prescribed Vioxx during the time it was on the market without any warning of the cardiovascular dangers associated with the drug.

By Defendant:

a. The insufficiency of scientifically reliable evidence to show general and/or specific causation.

b. Plaintiff's failure to show that Vioxx was defectively marketed or that additional or different warnings would have changed the decisions of Mr. Dedrick's prescribing physician to prescribe Vioxx at the 25 mg dose to Mr. Dedrick.

c. Whether plaintiff may assert a design defect claim under Tennessee law, and, if so, plaintiff's failure to prove that Vioxx had a design defect.

d. Preemption, by federal law, of plaintiff's failure to warn and design defect claims.

e. Whether plaintiff has presented sufficient evidence to overcome the presumption that Vioxx was not defective or unreasonably dangerous.

f. Plaintiff's failure to prove that Merck made any false or misleading material misrepresentations about the safety or efficacy of Vioxx or that Merck concealed or failed to disclose any material facts regarding Vioxx.

g. Whether plaintiff is entitled to compensatory and/or punitive damages.

h. Whether the jury may conclude that Mr. Dedrick's prescribing physician breached his duty of care by failing to adequately review the Vioxx label or package insert, or the available literature on Vioxx, before prescribing it to Mr. Dedrick.

i. Whether the jury may conclude that Mr. Dedrick was contributorily negligent.

10. **Exhibits:**

By Plaintiff:

The items listed on Plaintiff's Exhibit List (Attachment "A") may be offered, introduced, and/or filed into the record at the trial of this matter.

By Defendant:

The items listed on Defendant's Exhibit List (Attachment "B") may be offered, introduced, and/or filed into the record at the trial of this matter.

11. **Editing Trial Depositions/Filing Objections:**

For the Court's convenience, the parties will submit a single binder for each witness who may testify by video deposition, containing each party's designations and the opposing party's objections. The witnesses who may testify by video deposition are included in No. 13 below.

12. **Listing of Charts, Graphs, Models, etc. for Use in Opening/Closing Statements:**

Plaintiff has not made a final decision regarding the demonstratives to be used during opening and closing statements.

Defendant has not made a final decision regarding the demonstratives to be used during opening and closing statements.

13. **Witnesses:**

Plaintiff may call the following witnesses either in person or by video deposition. All of these witnesses were included on Plaintiff's Witness List. This list does not include those witnesses for whom Plaintiff would seek to counter-designate deposition testimony if Defendant seeks to introduce deposition testimony from the same witness. Additional depositions may be taken before or during trial, and Plaintiff reserves the right to supplement this list to include some or all of those additional witnesses and depositions. Plaintiff reserves the right to call any witness designated by Merck.

   a.   Anthony Wayne Dedrick

   b.   Sherry Curtis

   c.   Kenny Dedrick

   d.   Phil Dedrick

   e.   William Coltharp, M.D.

   f.   Mark Koenig, M.D.

   g.   John McPherson, M.D.

   h.   Esmeraldo Herrera, M.D.

   i.   Kristin Harris

j.     Lee Michael English, Jr.

k.     Vinay K. Sood

l.     Melissa C. McAllister

m.     Darrell Baker

n.     Donna K. Arnett, Ph.D., M.S.P.H.

o.     Jerry Avorn, M.D.

p.     John Farquhar, M.D.

q.     Egil Fosslien, M.D.

r.     Colin Funk, Ph. D.

s.     Mark Furman, M.D.

t.     Ira J. Gelb, M.D.

u.     Lemuel Moye, III, M.D.

v.     Connie Pechmann, Ph. D.

w.     David Anstice

x.     Susan Baumgartner

y.     Mary Blake

z.     Ned Braunstein

aa.     Tom Cannell

bb.     Carolyn Cannuscio

cc.     J. Martin Carroll

dd.     Gregory Curfman, M.D.

ee.     Laura Demopolous

ff.     Wendy Dixon

gg. James Dunn

hh. Stephen Epstein, M.D.

ii. Barry Gertz

jj. Raymond Gilmartin

kk. David Graham, M.D.

ll. Jo Jerman

mm. Marilyn Krahe

nn. Charlotte McKines

oo. Briggs Morrison, M.D.

pp. Alise Reicin, M.D.

qq. Edward Scolnick, M.D.

rr. Deborah Shapiro, Ph.D.

ss. Lou Sherwood, M.D.

tt. Eric Topol, M.D.

uu. Douglas Watson

vv. Jan Weiner

ww. Thomas Bold

xx. Peter Kim, M.D.

yy. James Fries, M.D.

zz. Any witness necessary for purposes of rebuttal.

aaa. Any witness that is discovered subsequent to the filing of this list.

Defendant may call the following witnesses, either live or by deposition. All of these witnesses are included on Defendant's Witness List. This list does not include those witnesses for whom Defendant would seek to counter-designate deposition testimony

if Plaintiff seeks to introduce deposition testimony from the same witness. Additional depositions may be taken before trial, and Defendant reserves the right to supplement this list to include some or all of those additional depositions. Merck anticipates eliciting fact testimony from Merck employees and/or advisors, as well as opinion testimony related to their duties (which do not regularly involve giving expert testimony). Merck reserves the right to call any witness designated by Plaintiff.

a. Robert Adams, M.D.

b. David Anstice

c. Janet Arrowsmith-Lowe, M.D.

d. Darrell Baker

e. Dr. Eliav Barr

f. Susan Baumgartner

g. Harold Butler, M.D.

h. William H. Coltharp, M.D.

i. Gregory Curfman, M.D.

j. Sherry Curtis

k. Anthony Wayne Dedrick

l. Kenny Dedrick

m. Phil Dedrick

n. Kenneth Dickson, M.D.

o. Lee Michael English, Jr.

p. Stephen Epstein, M.D.

q. Nicholas Flavahan, Ph.D.

r. Barry Gertz, M.D.

s. Raymond Gilmartin

t. Anita Glover

u. Esmeraldo Herrera, M.D.

    v.     Girendra Hoskere, M.D.

    w.    Saji Jacob, M.D.

    x.     George E. Jacoby, M.A.

    y.     KyungMann Kim, Ph.D.

    z.     Mark Koenig, M.D.

    aa.   Melissa C. McAllister

    bb.   John McPherson, M.D.

    cc.   D. Patterson

    dd.   Ann McSpadden, Ph.D.

    ee.   Malachi Mixon

    ff.    Briggs Morrison, M.D.

    gg.   Alan Nies, M.D.

    hh.   Dr. Oranburg

    ii.    Craig M. Pratt, M.D.

    jj.    Alise Reicin, M.D.

    kk.   Paul J. Roach, M.D.

    ll.    Nancy Santanello, M.D.

    mm.  Edward Scolnick, M.D.

    nn.   Alfred W.H. Stanley, M.D.

14. **For Jury Trials:**

This is a jury trial.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing Counsel not later than five (5) working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

15. **The issue of liability for compensatory damages will be tried separately from the issue of liability for punitive damages.**

16. **Other matters that may expedite case disposition.**

    None.

17. **Trial shall commence on November 27, 2006 at 8:30 a.m. Defendant believes that the trial will last 10-14 days (in keeping with the *Barnett v. Merck*, *Smith v. Merck* and *Mason v. Merck* trials); Plaintiff believes the trial will last 14-17 days.**

18. **Pre-trial Order:**

    This pretrial order has been formulated after conference at which counsel for the respective parties have spoken by phone. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. **Settlement:**

    The possibility of settlement of this case was not considered.

/s/ P. Leigh O'Dell
Andy D. Birchfield, Jr.
P. Leigh O'Dell
**Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.**

Attorneys for Plaintiff


/s/ Carrie A. Jablonski
Philip S. Beck
Mark Ouweleen
Carrie A. Jablonski
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Attorneys for Defendant

This  21st  day of  November , 2006.

_____
UNITED STATES DISTRICT JUDGE