# Exhibit C

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| **Plaintiff = Red** <br> **Defendant = Blue** | | | **Testimony of Witness was not ruled upon in *Smith* or *Mason*.** |
| **15:11 - 15:19** Carroll, Marty 2005-10-27 <br> 15: 11    Q: Mr. Carroll, state your name <br> 15: 12    for the record, please. <br> 15: 13    A: J. Martin Carroll. <br> 15: 14    Q: Mr. Carroll, where are you <br> 15: 15    employed now? <br> 15: 16    A: Boehringer Ingelheim. <br> 15: 17    Q: What do you do with that <br> 15: 18    company? <br> 15: 19    A: I'm president and CEO. | 00:00:15 | | |
| **17:6 - 17:13** Carroll, Marty 2005-10-27 <br> 17: 6    Q: And then how long have you <br> 17: 7    been president and CEO of that company? <br> 17: 8    A: Just over three years. <br> 17: 9    Q: And before then, how many <br> 17: 10    years had you been employed in the area <br> 17: 11    of pharmaceuticals in any capacity? <br> 17: 12    A: I was at Merck just over 25 <br> 17: 13    years. | 00:00:16 | | |
| **18:21 - 20:4** Carroll, Marty 2005-10-27 <br> 18: 21    Q: Now, sir, would you describe <br> 18: 22    what you're looking at here? <br> 18: 23    A: It's an organizational <br> 18: 24    chart. <br> 19: 1    Q: And in that organization, <br> 19: 2    you have -- describe what you're looking <br> 19: 3    at as far as where you fall in that <br> 19: 4    organization from that chart. <br> 19: 5    A: The top of the chart is <br> 19: 6    David Anstice, listed as president, The <br> 19: 7    Americas, and I'm in one of the boxes <br> 19: 8    underneath that, listed as J. Martin <br> 19: 9    Carroll, Executive Vice President, <br> 19: 10    Primary Care Sales & Managed Care. <br> 19: 11    Q: And how long did you hold <br> 19: 12    that position? <br> 19: 13    A: I held that position about <br> 19: 14    three years. <br> 19: 15    Q: And tell us what your role <br> 19: 16    was in that position. <br> 19: 17    A: My role in the position was <br> 19: 18    primary care sales, which would have been <br> 19: 19    part of the sales group, not all of the <br> 19: 20    sales groups. There was also a managed <br> 19: 21    care group that I led. <br> 19: 22    Q: How many years did you do <br> 19: 23    that? <br> 19: 24    A: About three years. <br> 20: 1    Q: And before then, what did <br> 20: 2    you do with Merck? <br> 20: 3    A: Before then, I led the <br> 20: 4    managed care group for about three years. | 00:01:06 | | |
| **42:22 - 44:3** Carroll, Marty 2005-10-27 <br> 42 22    Now, in the process of <br> 42 23    passing on information to doctors, one <br> 42 24    thing that your sales force passed on was <br> 43 1    that it was important -- this was an | | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 43 2 | important medication, that Vioxx was an | | |
| 43 3 | important medication for the elderly; | | |
| 43 4 | correct? | | |
| 43 5 | MR. TSOUGARAKIS:  Object to | | |
| 43 6 | the form. | | |
| 43 7 | THE WITNESS:  Let's step | | |
| 43 8 | back for a second.  What you | | |
| 43 9 | showed is a study that I'm not | | |
| 43 10 | familiar with, but what went with | | |
| 43 11 | the reps was information that was | | |
| 43 12 | consistent with the label that | | |
| 43 13 | they were preparing.  I fully | | |
| 43 14 | trust that our scientists studied | | |
| 43 15 | the drug, as well as they studied | | |
| 43 16 | many drugs, on an ongoing basis | | |
| 43 17 | with many, many different studies. | | |
| 43 18 | I'm not familiar with all of that, | | |
| 43 19 | but I'm really confident that they | | |
| 43 20 | would do the appropriate thing of | | |
| 43 21 | submitting to the FDA, making the | | |
| 43 22 | information available. | | |
| 43 23 | On the sales side, once | | |
| 43 24 | those things occur and you have a | | |
| 44 1 | label, that's how the sales | | |
| 44 2 | organization goes out to be | | |
| 44 3 | consistent with the label. | | |
| | | | |
| **44:5  -  44:9** | Carroll, Marty 2005-10-27 | 00:00:10 | |
| 44: 5 | Q:  It's important that once a | | |
| 44: 6 | sales organization goes out, that the | | |
| 44: 7 | sales organization certainly talk about | | |
| 44: 8 | issues that are known or knowable in the | | |
| 44: 9 | company about potential dangers; correct? | | |
| | | | |
| **44:12  -  45:7** | Carroll, Marty 2005-10-27 | 00:00:38 | |
| 44: 12 | THE WITNESS:  No. We have | | |
| 44: 13 | to be clear here. A sales | | |
| 44: 14 | representative, by policy, has to | | |
| 44: 15 | be consistent with the label, and | | |
| 44: 16 | there's approaches and processes | | |
| 44: 17 | by which science gets submitted to | | |
| 44: 18 | the FDA and gets, you know, placed | | |
| 44: 19 | in the label. That's one | | |
| 44: 20 | discussion about what sales reps | | |
| 44: 21 | do. | | |
| 44: 22 | In terms of the company and | | |
| 44: 23 | knowledge, I have full confidence | | |
| 44: 24 | that this company always studied | | |
| 45: 1 | drugs on an ongoing basis and | | |
| 45: 2 | always put that information into | | |
| 45: 3 | the public domain in ways that are | | |
| 45: 4 | consistent with how science does | | |
| 45: 5 | that, but that's different from | | |
| 45: 6 | representatives promoting the | | |
| 45: 7 | product. | | |
| | | | |
| **47:4  -  47:19** | Carroll, Marty 2005-10-27 | | |
| 47: 4 | Q.   One thing for sure is you'd | | |
| 47: 5 | certainly want to be honest about what | | |
| 47: 6 | you're telling doctors?  If you have | | |
| 47: 7 | tests in your file cabinets, you want to | | |
| 47: 8 | tell the FDA about those tests, and you | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 47: 9 | certainly want to be honest about your | | |
| 47: 10 | findings in those tests, don't you?  I | | |
| 47: 11 | mean, honesty always works, doesn't it, | | |
| 47: 12 | Mr. Carroll? | | |
| 47: 13 | A.   Honesty always works, and | | |
| 47: 14 | I'm comfortable that we were always | | |
| 47: 15 | honest. | | |
| 47: 16 | Q.   You want to believe that you | | |
| 47: 17 | were always honest, certainly, don't you, | | |
| 47: 18 | Mr. Carroll? | | |
| 47: 19 | A.   I know we were. | | |
| **61:23  -   62:9** | | | |
| 61: 23 | Q.   Okay. | | |
| 61: 24 | So, now, tell us what the | | |
| 62: 1 | launch meeting for Vioxx was. | | |
| 62: 2 | A.   The launch meeting for Vioxx | | |
| 62: 3 | was, like all products, we, upon approval | | |
| 62: 4 | from the FDA, bring together the sales | | |
| 62: 5 | representatives to work through the | | |
| 62: 6 | label, the medical information on the | | |
| 62: 7 | disease, the medical information on the | | |
| 62: 8 | product, and prepare them to promote the | | |
| 62: 9 | product to physicians. | | |
| **70:21  -   71:6** | | | |
| 70: 21 | Q.   Well -- okay. | | |
| 70: 22 | A.   Second of all, the launch | | |
| 70: 23 | meeting was built around preparing the | | |
| 70: 24 | representatives to launch a product that | | |
| 71: 1 | the FDA had approved, and the FDA | | |
| 71: 2 | approval included an approved circular, | | |
| 71: 3 | and we train the representatives around | | |
| 71: 4 |  the circular to promote the benefits and | | |
| 71: 5 | the risks of the drug to doctors after | | |
| 71: 6 | the approval. | | |
| **73:9  -   73:20** | | | |
| 73: 9 | Q.   Scientists? | | |
| 73: 10 | A.   There were scientists at the | | |
| 73: 11 | meeting.  The purpose of the launch | | |
| 73: 12 | meeting is to review the data that was | | |
| 73: 13 | submitted to the FDA that obtained | | |
| 73: 14 | approval for the drug and informed the | | |
| 73: 15 | label.  And the purpose of the meeting is | | |
| 73: 16 | to go through all that science with the | | |
| 73: 17 | representatives so that they are | | |
| 73: 18 | completely knowledgeable about that and | | |
| 73: 19 | then to launch the product into the | | |
| 73: 20 | marketplace. | | |
| **86:24  -   87:12** | Carroll, Marty 2005-10-27 | | |
| 86: 24 | Q.   So, you certainly wouldn't | | |
| 87: 1 | want your salespeople out there taking | | |
| 87: 2 | risks on what they tell people about | | |
| 87: 3 | Vioxx?  You want to tell them as much | | |
| 87: 4 | information as they have, you want to | | |
| 87: 5 | pass it on, no risk; right? | | |
| 87: 6 | A.   I'm confident that our | | |
| 87: 7 | representatives, who are terrific, went | | |
| 87: 8 | out and they did what they were supposed | | |
| 87: 9 | to do, which was consistent with the | | |
| 87: 10 | label, explain the benefits and the risk | | |
| 87: 11 | of that drug and all drugs that they | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 87: 12 | promoted. | | |
| | | | |
| **95:23  -  96:15** | Carroll, Marty 2005-10-27 | 00:00:33 | |
| 95: 23 | Q:  Mr. Carroll, now, you say | | |
| 95: 24 | one thing is, the information that you | | |
| 96: 1 | share with representatives or sales | | |
| 96: 2 | representatives is information that you | | |
| 96: 3 | share so they can pass on to the doctor. | | |
| 96: 4 | We've talked about that concept; right? | | |
| 96: 5 | A:  Yes. | | |
| 96: 6 | Q:  And we just -- I just asked | | |
| 96: 7 | you about the fact, you certainly don't | | |
| 96: 8 | want to take unnecessary risks when | | |
| 96: 9 | you're giving information to the doctors; | | |
| 96: 10 | correct? | | |
| 96: 11 | A:  We want to make sure that we | | |
| 96: 12 | give the doctors the appropriate | | |
| 96: 13 | information consistent with the label. | | |
| 96: 14 | Q:  Let me show you Number 8, | | |
| 96: 15 | please. | | |
| | | | |
| **96:24  -  98:7** | Carroll, Marty 2005-10-27 | 00:01:25 | |
| 96: 24 | Q:  Have you ever seen this | | |
| 97: 1 | before? | | |
| 97: 2 | A:  I recall this. | | |
| 97: 3 | Q:  Take a minute and look at it | | |
| 97: 4 | and see if you are familiar. This is a | | |
| 97: 5 | CV card, isn't it? Cardiovascular card | | |
| 97: 6 | is what y'all referred to this as? | | |
| 97: 7 | A:  Yes. I remember that, yes. | | |
| 97: 8 | Q:  'Cardiovascular Event | | |
| 97: 9 | Profile.' Do you see that on, let's see, | | |
| 97: 10 | the third page over? | | |
| 97: 11 | A:  Yes, I see that. | | |
| 97: 12 | Q:  Do you see where it has the | | |
| 97: 13 | third page over, it has that chart there? | | |
| 97: 14 | A:  Yes, I've got it. | | |
| 97: 15 | Q:  Do you see where it says, | | |
| 97: 16 | will have Vioxx 12 milligrams, Vioxx 25 | | |
| 97: 17 | milligrams, Vioxx 50 milligrams. Do you | | |
| 97: 18 | see that? | | |
| 97: 19 | A:  Yes, I do. | | |
| 97: 20 | Q:  It has ibuprofen next to it | | |
| 97: 21 | and then nabumetone. Do you see that? | | |
| 97: 22 | A:  Yes, I do. | | |
| 97: 23 | Q:  Tell me, you have actually | | |
| 97: 24 | -- you're familiar with the fact that | | |
| 98: 1 | salespeople actually use this when they | | |
| 98: 2 | talk to doctors. You know that, don't | | |
| 98: 3 | you? | | |
| 98: 4 | A:  What I remembered about the | | |
| 98: 5 | CV card was, it was to respond to | | |
| 98: 6 | questions the doctor might have on the CV | | |
| 98: 7 | risk. | | |
| | | | |
| **99:19  -  101:5** | Carroll, Marty 2005-10-27 | 00:01:13 | |
| 99: 19 | Q:  And then so what you had is, | | |
| 99: 20 | you had the CV card, so when the issue | | |
| 99: 21 | about CV risk came out, you could tell | | |
| 99: 22 | the doctor any information that you have | | |
| 99: 23 | about CV risk; correct? | | |
| 99: 24 | A:  The purpose of this, because | | |
| 100: 1 | it was a representative that was | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 100: 2 | promoting it, was to, consistent with the | | | |
| 100: 3 | label, go through the cardiovascular risk | | | |
| 100: 4 | that was consistent with the label at the | | | |
| 100: 5 | time. | | | |
| 100: 6 | Q: You see where it says | | | |
| 100: 7 | 'nabumetone' up to the right there? | | | |
| 100: 8 | A: Yes. | | | |
| 100: 9 | Q: See underneath that, what | | | |
| 100: 10 | does it say? It says, 'The incidence of | | | |
| 100: 11 | events was similar among the groups.' Do | | | |
| 100: 12 | you see that? | | | |
| 100: 13 | A: Yes, I see that. | | | |
| 100: 14 | Q: I read that right. It says, | | | |
| 100: 15 | 'The incidence of events' and we're | | | |
| 100: 16 | talking about cardiovascular events, 'was | | | |
| 100: 17 | similar among the groups.' Correct? | | | |
| 100: 18 | A: That's what it says, yes. | | | |
| 100: 19 | Q: So, you can assume if that | | | |
| 100: 20 | was there, written there with this chart, | | | |
| 100: 21 | that what you're telling doctors is that | | | |
| 100: 22 | the incidence of cardiovascular events | | | |
| 100: 23 | was similar between Vioxx and nabumetone; | | | |
| 100: 24 | correct? | | | |
| 101: 1 | A: That's what this says, yes. | | | |
| 101: 2 | Q: That's what you had | | | |
| 101: 3 | salespeople actually -- that's what you | | | |
| 101: 4 | had salespeople actually telling doctors; | | | |
| 101: 5 | is that correct? | | | |
| | | | | |
| **101:8 - 102:23** | Carroll, Marty 2005-10-27 | 00:01:09 | | |
| 101: 8 | THE WITNESS: The | | | |
| 101: 9 | salespeople had to be consistent | | | |
| 101: 10 | with the labeling. And as I | | | |
| 101: 11 | recall, it's a long time ago, this | | | |
| 101: 12 | information was consistent with | | | |
| 101: 13 | the labeling at the time. | | | |
| 101: 14 | BY MR. PAPANTONIO: | | | |
| 101: 15 | Q: But if we're looking at -- | | | |
| 101: 16 | in other words, I don't want to -- I | | | |
| 101: 17 | don't want to -- I want to make sure | | | |
| 101: 18 | we're talking about the exact same thing | | | |
| 101: 19 | here, Mr. Carroll. | | | |
| 101: 20 | This cardiovascular event | | | |
| 101: 21 | profile that I'm showing you right now | | | |
| 101: 22 | where it says, 'The incidence of events | | | |
| 101: 23 | was similar among the groups,' do you see | | | |
| 101: 24 | that? | | | |
| 102: 1 | A: Yes. | | | |
| 102: 2 | Q: Then above that, right above | | | |
| 102: 3 | it, it's comparing Vioxx and nabumetone. | | | |
| 102: 4 | Do you see that? | | | |
| 102: 5 | A: Yes. | | | |
| 102: 6 | Q: So, it's saying that the | | | |
| 102: 7 | incidence of events was similar among | | | |
| 102: 8 | Vioxx and nabumetone; correct? | | | |
| 102: 9 | A: Right. | | | |
| 102: 10 | Q: So, as a matter of fact, | | | |
| 102: 11 | it's even saying Vioxx was similar in | | | |
| 102: 12 | cardiovascular events to placebo; | | | |
| 102: 13 | correct? | | | |
| 102: 14 | A: Correct. | | | |
| 102: 15 | Q: And placebo is a sugar pill? | | | |
| 102: 16 | A: That's correct. | | | |
| 102: 17 | Q: And so what the people in | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 102: 18 | | the sales force were doing is they were | | |
| 102: 19 | | going out and telling doctors that the | | |
| 102: 20 | | incidence of risk is similar between | | |
| 102: 21 | | Vioxx and placebo, and the cardiovascular | | |
| 102: 22 | | event was also similar between Vioxx and | | |
| 102: 23 | | nabumetone. We can agree to that? | | |
| | | | | |
| **103:2  -  103:9** | | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 103: 2 | | THE WITNESS:  What I'm | | |
| 103: 3 | | agreeing to is, at the time this | | |
| 103: 4 | | card was being used, as far as I | | |
| 103: 5 | | recall, the information on the | | |
| 103: 6 | | card was consistent with the label | | |
| 103: 7 | | for Vioxx. | | |
| 103: 8 | | MR. PAPANTONIO:  Would you | | |
| 103: 9 | | please show him document 235. | | |
| | | | | |
| **103:19  -  108:11** | | Carroll, Marty 2005-10-27 | 00:04:43 | |
| 103: 19 | | Q:  Sir, do you see the first | **[103:19-114:21]:** | **Barnett:**  Overruled. |
| 103: 20 | | page on that document? | **Def's Obj.:**  Foundation. | |
| 103: 21 | | A:  Yes. | Counsel testifying. | |
| 103: 22 | | Q:  'February 1, 2001.' Do you | Witness has never seen | |
| 103: 23 | | see that? | this document before.  See | |
| 103: 24 | | A:  Yes. | 104:15: "A. I've not seen | |
| 104: 1 | | Q:  And you see where it says, | this before. | |
| 104: 2 | | 'Name Of Drug' -- well, 'MK-0966,' you | | |
| 104: 3 | | see that? | | |
| 104: 4 | | A:  Yes. | **PI's Resp.:**  Witness was | |
| 104: 5 | | Q:  'Trade Name: Vioxx'? | a former Exec. VP of Sales. | |
| 104: 6 | | A:  Yes. | The fact that he does not | |
| 104: 7 | | Q:  And that comes -- that | know about studies is | |
| 104: 8 | | memorandum is 'Division of Cardio-Renal | relevant.  FDA document | |
| 104: 9 | | Drug Products, HFD...Food & Drug | offered to impeach the | |
| 104: 10 | | Administration.' That's the FDA; | witness and to show that | |
| 104: 11 | | correct? | the data contained in CV Card | |
| 104: 12 | | A:  That's right. | was erroneous. | |
| 104: 13 | | Q:  And have you ever seen this | | |
| 104: 14 | | before me showing this to you? | | |
| 104: 15 | | A:  I've not seen this before. | | |
| 104: 16 | | Q:  Now, did you know that the | | |
| 104: 17 | | FDA actually took a look at comparative | | |
| 104: 18 | | studies that were done to find out | | |
| 104: 19 | | whether there were increased | | |
| 104: 20 | | cardiovascular events when we compared | | |
| 104: 21 | | people taking Vioxx and people taking | | |
| 104: 22 | | placebo and people taking nabumetone? | | |
| 104: 23 | | Did you know that? | | |
| 104: 24 | | A:  I'm not familiar with those | | |
| 105: 1 | | particular studies or submission to the | | |
| 105: 2 | | FDA. | | |
| 105: 3 | | Q:  Well, could you go to Page | | |
| 105: 4 | | 24 of that document? The page number is | | |
| 105: 5 | | going to be down in the bottom right-hand | | |
| 105: 6 | | corner. | | |
| 105: 7 | | A:  I see it. Thank you. Okay. | | |
| 105: 8 | | Q:  Do you see it says, | **[105:8-106:8]** | |
| 105: 9 | | 'Comments: This is a large comparative | **Def's Obj.:**  Counsel | |
| 105: 10 | | study using rofecoxib 50 mg daily and | improperly testifying and | |
| 105: 11 | | naproxen 1000 mg daily in patients with | reading document into record. | |
| 105: 12 | | rheumatoid arthritis.' Now, if you'll | If counsel wants to establish | |
| 105: 13 | | read this with me now, it says, 'A | that the witness is not | |
| 105: 14 | | significant difference is seen in the | familiar with the particular | |
| 105: 15 | | composite of stroke, myocardial | studies at issue | |
| 105: 16 | | infarction, and cardiac death which is | (104:24-105:2), that is one | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 105: 17 | unfavorable for rofecoxib; consistent | thing, but it is improper for | |
| 105: 18 | with this result are the time-to-event | counsel to continue on for | |
| 105: 19 | tables, and myocardial infarction, | pages and read numerous | |
| 105: 20 | and...cardiovascular death events.' | portions of the document into | |
| 105: 21 | Now, I want to ask you | the record when the witness | |
| 105: 22 | something. What's rofecoxib? It's | has no knowledge of the | |
| 105: 23 | Vioxx, isn't it? | document, which counsel has | |
| 105: 24 | A:  I believe that's the generic | already established. | |
| 106: 1 | name or the generic for Vioxx, yes. | | |
| 106: 2 | Q:  And the words here say, 'A | | |
| 106: 3 | significant difference is seen in the | | |
| 106: 4 | composite of stroke, myocardial | | |
| 106: 5 | infarction, and cardiac death which is | | |
| 106: 6 | unfavorable for' Vioxx or 'rofecoxib.' | | |
| 106: 7 | Do you see that? | | |
| 106: 8 | A:  Yes. | | |
| 106: 9 | Q:  Do you see where it says | | |
| 106: 10 | 'Study 085' right up underneath there? | | |
| 106: 11 | A:  Yes, I see that. | | |
| 106: 12 | Q:  You'd never study 085 during | | |
| 106: 13 | the time that you were talking to | | |
| 106: 14 | salespeople; is that right? | | |
| 106: 15 | A:  Not to my knowledge, no. | | |
| 106: 16 | Q:  Let's describe -- Study 085 | **[106:16] - [107:16]** | |
| 106: 17 | is 'A Randomized Placebo-Controlled | **Def's Obj.:**  Same. | |
| 106: 18 | Parallel Group, Double Blind Study to | | |
| 106: 19 | Evaluate the Efficacy and Safety of | | |
| 106: 20 | MK-0966 12 mg vs. Nabumetone 1000 mg in | | |
| 106: 21 | Patients with Osteoarthritis of the | | |
| 106: 22 | Knee.' Do you see that? | | |
| 106: 23 | A:  Yes, I do. | | |
| 106: 24 | Q:  Then it goes on to say -- do | | |
| 107: 1 | you see where it says 'Results' there up | | |
| 107: 2 | underneath the very next thing? | | |
| 107: 3 | A:  Yes. I've got it. | | |
| 107: 4 | Q:  '1459 patients were | | |
| 107: 5 | screened.' It talks about the study of | | |
| 107: 6 | these patients. And then it has down at | | |
| 107: 7 | the bottom, you can see they're actually | | |
| 107: 8 | comparing 12 milligrams, you see, of | | |
| 107: 9 | Vioxx -- | | |
| 107: 10 | MR. TSOUGARAKIS: | | |
| 107: 11 | 12-and-a-half. | | |
| 107: 12 | BY MR. PAPANTONIO: | | |
| 107: 13 | Q:  -- 12-and-a-half milligrams | | |
| 107: 14 | of Vioxx with 1,000 milligrams of | | |
| 107: 15 | nabumetone. Do you see that? | | |
| 107: 16 | A:  I do. | | |
| 107: 17 | Q:  Now, sir, would you then go | | |
| 107: 18 | over to Page 28 of that same document? | | |
| 107: 19 | A:  Okay. | | |
| 107: 20 | Q:  Do you see where it says | | |
| 107: 21 | 'Comments'? | | |
| 107: 22 | A:  Yes. | | |
| 107: 23 | Q:  It says, 'Because of the | **[107:23-108:8]** | |
| 107: 24 | smaller sample size and event rates, the | **Def's Obj.:**  Same. | |
| 108: 1 | results of this study do not convince | | |
| 108: 2 | this reviewer that there is no safety | | |
| 108: 3 | issue with rofecoxib. Furthermore, the | | |
| 108: 4 | dose of rofecoxib 12.5 mg, is lower than | | |
| 108: 5 | that used in the rofecoxib treatment arm | | |
| 108: 6 | in the VIGOR study. An increase in | | |
| 108: 7 | cardiovascular events at higher doses of | | |
| 108: 8 | rofecoxib cannot be excluded.' | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 108: 9 | | Now, what was the typical | | |
| 108: 10 | | milligrams that was prescribed to | | |
| 108: 11 | | patients using Vioxx? | | |
| | | | | |
| 108:14 - 109:4 | | Carroll, Marty 2005-10-27 | 00:00:20 | |
| 108: 14 | | THE WITNESS:  I just know | | |
| 108: 15 | | the two milligram doses that were | | |
| 108: 16 | | available, I think, were | | |
| 108: 17 | | 12-and-a-half and 25. | | |
| 108: 18 | | BY MR. PAPANTONIO: | | |
| 108: 19 | | Q:  12-and-a-half and 25? | | |
| 108: 20 | | A:  As far as I remember. | | |
| 108: 21 | | Q:  Now, this next -- do you see | | |
| 108: 22 | | where it says 'Study 090'? | | |
| 108: 23 | | A:  I'm sorry. You're on | | |
| 108: 24 | | page -- | | |
| 109: 1 | | Q:  Same page. | | |
| 109: 2 | | A:  Yes. | | |
| | | | | |
| 109:3 - 109:13 | | Carroll, Marty 2005-10-27 | | **[109:3-13]** |
| 109: 3 | | Q.   "Study 090." | | **Pl's Obj.:**  R.401, 402. |
| 109: 4 | | A.   I'm sorry.  I'm just -- | | Witness says that he can |
| 109: 5 | | Q.   No.  No.  It is right up | | see the screen - "I've got it." |
| 109: 6 | | underneath "Comments."  I understand.  Go | | This is a waste of time. |
| 109: 7 | | to the middle of the page, right up | | |
| 109: 8 | | underneath "Comments."  If you have a | | |
| 109: 9 | | question of where we are, you can see -- | | |
| 109: 10 | | it will be on the screen where we are. | | |
| 109: 11 | | A.   My chances of seeing the | | |
| 109: 12 | | screen -- this one maybe I've got a shot | | |
| 109: 13 | | at.  Anyway, I've got it.  Study 090. | | |
| | | | | |
| 109:14 - 112:4 | | Carroll, Marty 2005-10-27 | 00:02:12 | |
| 109: 14 | | Q:  Study 090. This is another | | **[109:14-112:21]** |
| 109: 15 | | study that nobody has talked to you | | **Def's Obj.:**  Counsel |
| 109: 16 | | about, have they? | | improperly testifying and |
| 109: 17 | | A:  I'm not familiar with it, | | reading document into record. |
| 109: 18 | | no. | | If counsel wants to establish |
| 109: 19 | | Q:  It says, 'Title: A | | that the witness is not |
| 109: 20 | | randomized, placebo-controlled, | | familiar with the particular |
| 109: 21 | | parallel-group, double-blind study to | | studies at issue |
| 109: 22 | | evaluate the efficacy and safety of | | (104:24-105:2), that is one |
| 109: 23 | | MK-0966 (Rofecoxib) 12.5 mg versus | | thing, but it is improper for |
| 109: 24 | | Nabumetone 1000.' Do you see that? | | counsel to continue on for |
| 110: 1 | | A:  Yes. | | pages and read numerous |
| 110: 2 | | Q:  So, we're talking about a | | portions of the document into |
| 110: 3 | | similar kind of study; right? | | the record where the witness |
| 110: 4 | | A:  Yes. | | has no knowledge of the |
| 110: 5 | | Q:  Would you please go then to | | document, which counsel has |
| 110: 6 | | Page 34, and let's see what they had to | | already established. |
| 110: 7 | | say about that study. | | |
| 110: 8 | | A:  Okay. | | |
| 110: 9 | | Q:  Up at the top on that study | | |
| 110: 10 | | it says, 'In this particular study,' here | | |
| 110: 11 | | are -- 'there are numerically more | | |
| 110: 12 | | myocardial infarctions in the rofecoxib | | |
| 110: 13 | | group, compared with' the 'nabumetone' | | |
| 110: 14 | | group 'and placebo. There are also more | | |
| 110: 15 | | cardiovascular adverse experiences and | | |
| 110: 16 | | discontinuations due to | | |
| 110: 17 | | cardiovascular...experiences in the | | |
| 110: 18 | | rofecoxib group; this can be partly | | |
| 110: 19 | | accounted for the incidence of | | |

| Designated Testimony of J. Martin Carroll | | | | Objections | Rulings |
|---|---|---|---|---|---|
| | 110: 20 | hypertension. As with 085, this study | | | |
| | 110: 21 | has a smaller sample...and cardiovascular | | | |
| | 110: 22 | event rate compared with VIGOR.' | | | |
| | 110: 23 | Now, do you see right up | | | |
| | 110: 24 | underneath that it says that number 2 -- | | | |
| | 111: 1 | see paragraph number 2 there? | | | |
| | 111: 2 | A:  Yes. | | | |
| | 111: 3 | Q:  It says, 'Evaluation of CV | | | |
| | 111: 4 | events in other rofecoxib studies that | | | |
| | 111: 5 | allowed ASA' -- do you see that? | | | |
| | 111: 6 | A:  Yes. | | | |
| | 111: 7 | Q:  -- '(085 and 090) Despite | | | |
| | 111: 8 | lower dose, smaller sample size and | | | |
| | 111: 9 | aspirin use, the trend is against | | | |
| | 111: 10 | rofecoxib.' Do you see that? | | | |
| | 111: 11 | A:  Yes. | | | |
| | 111: 12 | Q:  Now, you understand why I | | | |
| | 111: 13 | just read that to you, don't you, sir? | | | |
| | 111: 14 | Do you understand why I just read that to | | | |
| | 111: 15 | you? | | | |
| | 111: 16 | A:  No. | | | |
| | 111: 17 | Q:  Because we just looked at a | | | |
| | 111: 18 | document just a minute ago where you had | | | |
| | 111: 19 | salespeople using the CV event card | | | |
| | 111: 20 | telling that the incidents are similar. | | | |
| | 111: 21 | Do you remember that? | | | |
| | 111: 22 | A:  I do. | | | |
| | 111: 23 | Q:  That would not be true if we | | | |
| | 111: 24 | believe what this has to say. This says | | | |
| | 112: 1 | the trend is against rofecoxib. It | | | |
| | 112: 2 | doesn't say that they're similar when you | | | |
| | 112: 3 | compare Vioxx to placebo or nabumetone; | | | |
| | 112: 4 | right? That's what they that says? | | | |
| **112:7 -** | **112:21** | Carroll, Marty 2005-10-27 | 00:00:24 | | |
| | 112: 7 | THE WITNESS:  That's what | | | |
| | 112: 8 | that says. | | | |
| | 112: 9 | BY MR. PAPANTONIO: | | | |
| | 112: 10 | Q:  Let's look at the further | | | |
| | 112: 11 | paragraph underneath there. Again, | | | |
| | 112: 12 | remember as we're going through this | | | |
| | 112: 13 | document that I just showed you, a CV | | | |
| | 112: 14 | card that salespeople were using to talk | | | |
| | 112: 15 | to doctors, and in that CV card | | | |
| | 112: 16 | salespeople were representing to doctors | | | |
| | 112: 17 | that when they compared Vioxx with | | | |
| | 112: 18 | nabumetone and placebo, that the | | | |
| | 112: 19 | incidence of cardiovascular events were | | | |
| | 112: 20 | similar. Remember? | | | |
| | 112: 21 | A:  Yes. | | | |
| **112:22 -** | **113:5** | Carroll, Marty 2005-10-27 | | | |
| | 112: 22 | Q.   Okay. | | | |
| | 112: 23 | Then it says, "Assessment of | | | |
| | 112: 24 | the sponsor's claim regarding CV" events. | | | |
| | 113: 1 | Do you see that? | | | |
| | 113: 2 | A.   Yes. | | | |
| | 113: 3 | Q.   It says, "The sponsor," | | | |
| | 113: 4 | which is Merck.  Did you know that? | | | |
| | 113: 5 | A.   I didn't know that, no. | | | |
| **113:6 -** | **113:24** | Carroll, Marty 2005-10-27 | 00:00:47 | | |
| | 113: 6 | Q:  'The sponsor claims that the | | **[113:6-113:24]** | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 113: 7 | | difference in myocardial infarctions | **Def's Obj.:**  Same. | |
| 113: 8 | | between the two groups is primarily due | | |
| 113: 9 | | to the antiplatelet effect of naproxen. | | |
| 113: 10 | | This hypothesis is not supported by any | | |
| 113: 11 | | prospective placebo-controlled trials | | |
| 113: 12 | | with naproxen. One can further argue | | |
| 113: 13 | | that, no matter what the attribution, the | | |
| 113: 14 | | results (from a cardiovascular | | |
| 113: 15 | | standpoint)   are favorable for naproxen.' | | |
| 113: 16 | | Now, do you remember telling | | |
| 113: 17 | | salespeople that when doctors asked about | | |
| 113: 18 | | CV events in the VIGOR study, that | | |
| 113: 19 | | salespeople were supposed to tell the | | |
| 113: 20 | | doctor that, no, it was -- that the | | |
| 113: 21 | | difference was that one group was | | |
| 113: 22 | | naproxen and the other group was not | | |
| 113: 23 | | naproxen? Do you remember talking about | | |
| 113: 24 | | the naproxen issue at all -- | | |
| | | | | |
| 114:4  -   114:21 | | Carroll, Marty 2005-10-27 | 00:00:39 | |
| 114: 4 | | Q:  -- with salespeople? | | |
| 114: 5 | | A:  What I mentioned when we | | |
| 114: 6 | | talked about it earlier is from a | | |
| 114: 7 | | salesperson's point of view, they have to | | |
| 114: 8 | | be consistent with the label. So, as | | |
| 114: 9 | | they went out and spoke to doctors in a | | |
| 114: 10 | | promotional setting, they had to be | | |
| 114: 11 | | consistent with the label. From a | | |
| 114: 12 | | doctor's point of view, there were other | | |
| 114: 13 | | channels available, and you mentioned the | | |
| 114: 14 | | VIGOR trial, and there were numerous | | |
| 114: 15 | | channels, and doctors were highly | | |
| 114: 16 | | interested in the VIGOR trial for that | | |
| 114: 17 | | information to be available to | | |
| 114: 18 | | physicians. But the sales | | |
| 114: 19 | | representatives would not be able to | | |
| 114: 20 | | promote VIGOR until it was approved by | | |
| 114: 21 | | the FDA. | | |
| | | | | |
| 115:15 -   116:1 | | Carroll, Marty 2005-10-27 | | |
| 115: 15 | | Q.  Do you remember telling | | |
| 115: 16 | | salespeople that they should tell people | | |
| 115: 17 | |  -- they should tell doctors that? | | |
| 115: 18 | |  MR. TSOUGARAKIS:  Object to | | |
| 115: 19 | | form. | | |
| 115: 20 | | THE WITNESS:  Again, the | | |
| 115: 21 | | salespeople weren't able to | | |
| 115: 22 | | promote or talk about VIGOR.  The | | |
| 115: 23 | | data for VIGOR was made available | | |
| 115: 24 | |  to physicians through a variety of | | |
| 116: 1 | | different channels. | | |
| | | | | |
| 116:3  -   116:19 | | Carroll, Marty 2005-10-27 | | |
| 116: 3 | | Q.   So, it's your memory then, | | |
| 116: 4 | | Mr. Carroll, that you never -- that | | |
| 116: 5 | | nobody in the sales force was out there | | |
| 116: 6 | | telling doctors that the reason that the | | |
| 116: 7 | | VIGOR study showed that five times more | | |
| 116: 8 | | people using Vioxx as using naproxen, | | |
| 116: 9 | | five times the number of people had | | |
| 116: 10 | | cardiovascular events, and the reason was | | |
| 116: 11 | | because naproxen protected the heart? | | |
| 116: 12 | | You don't remember that? | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 116: 13 | MR. TSOUGARAKIS: I'll | | |
| 116: 14 | object to the form. | | |
| 116: 15 | THE WITNESS: I don't | | |
| 116: 16 | remember that. Again, what I'm | | |
| 116: 17 | saying is, the sales | | |
| 116: 18 | representatives would be | | |
| 116: 19 | consistent with the label. | | |
| | | | |
| 120:9 - 120:15 | Carroll, Marty 2005-10-27 | 00:00:09 | |
| 120: 9 | Q: Sir, had you seen the | | |
| 120: 10 | document I just showed you prior to me | | |
| 120: 11 | showing it to you? | | |
| 120: 12 | A: No. The FDA report, no. | | |
| 120: 13 | Q: Had you seen this document? | **[120:13-123:21]** | **Barnett:** Overruled. |
| 120: 14 | MR. PAPANTONIO: Please give | **Def's Obj.:** Foundation: | |
| 120: 15 | him 1084. | Witness has never seen | |
| | | document before (Ex. 1084). | |
| 121:3 - 123:21 | Carroll, Marty 2005-10-27 | 00:02:23 See 121:11-13. | |
| 121: 3 | Q: See the first page on that | Further, Counsel is | |
| 121: 4 | document? It says, 'Advisory Committee | testifying by reading | |
| 121: 5 | Briefing Document...Vioxx.' Do you see | portions of the document and | |
| 121: 6 | it's Vioxx? | asking whether the witness | |
| 121: 7 | A: Yes. | can "see that?" | |
| 121: 8 | Q: It says 'February 8, 2001.' | Objection also applies to | |
| 121: 9 | Do you see that? | 133:13-137:19. | |
| 121: 10 | A: Yes. | | |
| 121: 11 | Q: Now, sir, again, just to be | | |
| 121: 12 | fair with you, you've never seen that? | **PI's Resp.:** Witness was | |
| 121: 13 | A: No, I have not seen that. | a former Exec. VP of Sales. | |
| 121: 14 | Q: Would you go to Page 17? | FDA document relevant to | |
| 121: 15 | A: Yes. | Plaintiff's failure to warn | |
| 121: 16 | Q: Where it says, down at the | claim. FDA document | |
| 121: 17 | bottom it says, 'Study 102.' Do you see | offered to impeach the | |
| 121: 18 | that? | witness. | |
| 121: 19 | A: Yes. | | |
| 121: 20 | Q: It says, '12-week, | | |
| 121: 21 | randomized, double blind active | | |
| 121: 22 | controlled study of rofecoxib 25 mg/day | | |
| 121: 23 | and naproxen' -- do you see that? | | |
| 121: 24 | A: Yes. | | |
| 122: 1 | Q: -- '1000 mg/day in | | |
| 122: 2 | approximately 5500 patients with OA' -- | | |
| 122: 3 | osteoarthritis. Is that what -- you | | |
| 122: 4 | understand what osteoarthritis is? | | |
| 122: 5 | A: Yes. | | |
| 122: 6 | Q: -- 'who were allowed low | | |
| 122: 7 | dose ASA' -- which is an aspirin; | | |
| 122: 8 | correct? | | |
| 122: 9 | A: Yes. | | |
| 122: 10 | Q: You know that? | | |
| 122: 11 | -- 'patients taking low dose | | |
| 122: 12 | ASA were 12.1% and 12.8%.' Do you see | | |
| 122: 13 | that? | | |
| 122: 14 | A: Yes. | | |
| 122: 15 | Q: All right? | | |
| 122: 16 | So, we're talking about | | |
| 122: 17 | study 102, and in that study, the amount | | |
| 122: 18 | of Vioxx that was given to people is 25 | | |
| 122: 19 | milligrams a day. Do you see that? And | | |
| 122: 20 | those people are actually given aspirin, | | |
| 122: 21 | right, ASA, you saw that? | | |
| 122: 22 | A: Yes. | | |
| 122: 23 | Q: And do you see the next -- | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 122: 24 | go to the very next page. | | | |
| 123: 1 | A:  Page 19? | | | |
| 123: 2 | Q:  Page 18. | | | |
| 123: 3 | A:  18, I've got it. | | | |
| 123: 4 | Q:  It says -- do you see down | | **[123:4-123:20]** | |
| 123: 5 | at the bottom it says, 'Serious CV | | **Def's Obj.:**  Counsel | |
| 123: 6 | events: Preliminary results.' It says, | | improperly testifying and | |
| 123: 7 | 'There were 6 myocardial infarctions (MI) | | reading document into record. | |
| 123: 8 | in the rofecoxib 25 mg group and one MI | | If counsel wants to establish | |
| 123: 9 | in the naproxen 1000 mg group. Of the 6 | | that the witness is not | |
| 123: 10 | MI in the rofecoxib group, 3 were in | | familiar with the particular | |
| 123: 11 | patients taking low ASA for | | studies at issue, that is one | |
| 123: 12 | cardiovascular prophylaxis. The patient | | thing, but it is improper for | |
| 123: 13 | with MI in the naproxen group was a | | counsel to continue on for | |
| 123: 14 | non-ASA user.' | | pages and read numerous | |
| 123: 15 | Now, read this with me, if | | portions of the document into | |
| 123: 16 | you would. It says, 'A trend towards an | | the record where the witness | |
| 123: 17 | excess of MI's in the rofecoxib 25 mg | | has no knowledge of the | |
| 123: 18 | group in a 12 week study is noted. This | | document, which counsel has | |
| 123: 19 | observation is consistent with the | | established. | |
| 123: 20 | pattern seen in VIGOR.' Do you see that? | | | |
| 123: 21 | A:  Uh-huh. | | | |
| | | | | |
| **124:11  -  126:17** | Carroll, Marty 2005-10-27 | 00:01:52 | | |
| 124: 11 | Q:  The CV card says -- | | | |
| 124: 12 | MR. PAPANTONIO:  Underline | | | |
| 124: 13 | this, please. | | | |
| 124: 14 | BY MR. PAPANTONIO: | | | |
| 124: 15 | Q:  'The incidence of events was | | | |
| 124: 16 | similar among the groups.' Do you see | | | |
| 124: 17 | that? In other words, do you see this is | | | |
| 124: 18 | a chart where we have compared placebo, | | | |
| 124: 19 | we've compared nabumetone, we've compared | | | |
| 124: 20 | it to Vioxx? Do you see that? You were | | | |
| 124: 21 | actually out telling people, the | | | |
| 124: 22 | salespeople -- I don't know if Marty | | | |
| 124: 23 | Carroll was, but salespeople were saying, | | | |
| 124: 24 | doc, this is what we have found is the | | | |
| 125: 1 | similarities of incidence of events | | | |
| 125: 2 | similar among patient groups; right? | | | |
| 125: 3 | A:  No. The marketplace at the | | | |
| 125: 4 | time had -- VIGOR was in the marketplace | | | |
| 125: 5 | because physicians were extremely | | | |
| 125: 6 | interested in that study, and there was | | | |
| 125: 7 | enormous discussion and interest in the | | | |
| 125: 8 | study. There were channels available for | | | |
| 125: 9 | that study to become available for | | | |
| 125: 10 | physicians. There was conferences, there | | | |
| 125: 11 | was publications, there was consultant | | | |
| 125: 12 | meetings. When they requested the study, | | | |
| 125: 13 | which most of them did, they could get | | | |
| 125: 14 | that. | | | |
| 125: 15 | Q:  So, doctors were extremely | | | |
| 125: 16 | interested in this relationship between | | | |
| 125: 17 | cardiovascular events and Vioxx? You | | | |
| 125: 18 | just said that; right? | | | |
| 125: 19 | A:  There was a lot of interest | | | |
| 125: 20 | in the marketplace on VIGOR because of | | | |
| 125: 21 | two things: One, protection of the | | | |
| 125: 22 | stomach and; two, the cardiovascular | | | |
| 125: 23 | findings. | | | |
| 125: 24 | Q:  So, doctors were | | | |
| 126: 1 | interested -- you'll agree with this. | | | |
| 126: 2 | Doctors were interested in the | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 126: 3 | relationship between cardiovascular | | | |
| 126: 4 | events and Vioxx? Yes? | | | |
| 126: 5 | A:  Yes. | | | |
| 126: 6 | Q:  Okay. | | | |
| 126: 7 | A:  Along with the other parts | | | |
| 126: 8 | of the VIGOR study. | | | |
| 126: 9 | Q:  So, what are these -- these | | | |
| 126: 10 | studies we've just reviewed, 085, do you | | | |
| 126: 11 | remember the one we just did, 090 -- | | | |
| 126: 12 | A:  Right. | | | |
| 126: 13 | Q:  -- those were studies that | | | |
| 126: 14 | were designed to look at the relationship | | | |
| 126: 15 | between Vioxx and cardiovascular events; | | | |
| 126: 16 | right? | | | |
| 126: 17 | A:  Right. | | | |
| | | | | |
| **126:21 - 127:2** | Carroll, Marty 2005-10-27 | 00:00:10 | | |
| 126: 21 | Q:  Okay. You didn't have | | | |
| 126: 22 | anything -- well, let's go on with this. | | | |
| 126: 23 | This study I just showed you, 102, what | | | |
| 126: 24 | is that study? | | | |
| 127: 1 | A:  I'm not familiar with study | | | |
| 127: 2 | 102. | | | |
| | | | | |
| **127:22 - 127:24** | Carroll, Marty 2005-10-27 | 00:00:04 | | |
| 127: 22 | Q:  Had you ever heard of study | | | |
| 127: 23 | 102? | | | |
| 127: 24 | A:  No. | | | |
| | | | | |
| **128:8 - 129:2** | Carroll, Marty 2005-10-27 | 00:00:41 | | |
| 128: 8 | Q:  Did you share this | | | |
| 128: 9 | information with the doctors since they | | | |
| 128: 10 | were interested in cardiovascular events? | | | |
| 128: 11 | Do you know whether the sales force | | | |
| 128: 12 | shared this information? | | | |
| 128: 13 | A:  Again, and we've covered it, | | | |
| 128: 14 | the sales force would not be involved in | | | |
| 128: 15 | this information. This information would | | | |
| 128: 16 | be for research, to share with the FDA, | | | |
| 128: 17 | to do the appropriate analysis. The | | | |
| 128: 18 | sales force is in a position where they | | | |
| 128: 19 | promote what's in the circular. | | | |
| 128: 20 | Q:  Well, if they're not in the | | | |
| 128: 21 | position to share information with | | | |
| 128: 22 | doctors, then why do we have this | | | |
| 128: 23 | document that I've been talking about | | | |
| 128: 24 | where it says the incidence of events | | | |
| 129: 1 | among the groups is similar? You just | | | |
| 129: 2 | said they don't share this with doctors? | | | |
| | | | | |
| **129:5 - 129:23** | Carroll, Marty 2005-10-27 | 00:00:33 | | |
| 129: 5 | THE WITNESS:  That | | | |
| 129: 6 | information was consistent with | | | |
| 129: 7 | the circular approved by the FDA | | | |
| 129: 8 | at that time. That's what | | | |
| 129: 9 | representatives could promote. | | | |
| 129: 10 | The other information that you're | | | |
| 129: 11 | referencing that I'm not familiar | | | |
| 129: 12 | with is studies that would go | | | |
| 129: 13 | through a process of review with | | | |
| 129: 14 | the FDA and ultimately impact a | | | |
| 129: 15 | change in the circular if that was | | | |
| 129: 16 | warranted. | | | |
| 129: 17 | BY MR. PAPANTONIO: | | | |

Case 2:05-md-01657-EEF-DEK Document 8649-3 Filed 11/09/06 Page 15 of 43
Dedrick v. Merck Co., Inc.
Plaintiffs' and Defendant's Designations of J. Marty Carroll

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 129: 18<br>129: 19<br>129: 20<br>129: 21<br>129: 22<br>129: 23 | Q: Sir, just so we know what<br>we're talking about, maybe you're not<br>understanding what I'm talking about<br>here. Would you look where it says<br>'Cardiovascular Event Profile' on that<br>document? Do you see that? | | |
| **130:3 - 130:12** Carroll, Marty 2005-10-27<br>130: 3<br>130: 4<br>130: 5<br>130: 6<br>130: 7<br>130: 8<br>130: 9<br>130: 10<br>130: 11<br>130: 12 | Q: On 08 CV card,<br>'Cardiovascular Event Profile.' Do you<br>see that? And it says 'Cardiovascular<br>thromboembolic adverse events in the OA<br>clinical trials.' What is the OA<br>clinical trials?<br>A: As far as I recall, the OA<br>clinical trials were the trials that were<br>submitted for the initial approval of<br>Vioxx. | 00:00:23 | |
| **130:13 - 130:23** Carroll, Marty 2005-10-27<br>130: 13<br>130: 14<br>130: 15<br>130: 16<br>130: 17<br>130: 18<br>130: 19<br>130: 20<br><br>130: 21<br>130: 22<br>130: 23 | Q. Do you realize that the OA<br>trials are exactly what we're reviewing<br>right now, sir? Is that the first time<br>that you've ever put that together?<br>These trials we're going over right now<br>are exactly the OA trials that's talked<br>about in this CV event. Is that the<br>first time you've ever heard that?<br><br>MR. TSOUGARAKIS: I'll<br>object to the form.<br>BY MR. PAPANTONIO: | | **[130:13-20]**<br>**PI's Obj.:** Defendant has<br>designated a quesiton without<br>answer.<br>**Def.'s Resp.:** Counsel asks<br>two questions directly in a<br>row and is harassing witness.<br>In this context, it's appropriate<br>to show how out of line<br>counsel is. | |
| **130:24 - 132:23** Carroll, Marty 2005-10-27<br>130: 24<br>131: 1<br>131: 2<br>131: 3<br>131: 4<br>131: 5<br>131: 6<br>131: 7<br>131: 8<br>131: 9<br>131: 10<br>131: 11<br>131: 12<br>131: 13<br>131: 14<br>131: 15<br>131: 16<br>131: 17<br>131: 18<br>131: 19<br>131: 20<br>131: 21<br>131: 22<br>131: 23<br>131: 24 | Q: Have you ever heard -- have<br>you even ever heard of this profile of<br>the OA trial 102? You'd never heard of<br>it, had you?<br>A: No.<br>Q: Had you ever heard of OA<br>trial number 085? Never heard of it, had<br>you?<br>A: I'm not familiar with all of<br>those trials.<br>Q: What did we see in both of<br>those trials? We saw that the trend was<br>against Vioxx, didn't we?<br>A: I'm not an expert on that<br>data.<br>Q: No, sir. You're not. I<br>understand. But you were responsible for<br>giving information to the sales force so<br>they could be honest with doctors about<br>the dangers of Vioxx? That is something<br>Marty Carroll -- the buck stopped with<br>Marty Carroll, didn't it?<br>A: And I'm confident that every<br>bit of information we gave the<br>representatives was appropriate and it | 00:01:43 | **[131:10] - [131:12]**<br>**Def's Obj.:** Counsel<br>testifying. Witness said he<br>wasn't familiar with trials, yet<br>counsel testifies that "we<br>saw that the trend was<br>against Vioxx, didn't we?" | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 132: 1 | | was in the marketplace. There are other | | |
| 132: 2 | | studies that are available through the | | |
| 132: 3 | | FDA, and there was the VIGOR study which | | |
| 132: 4 | | was available on the marketplace. | | |
| 132: 5 | | Q: I just showed you a card | | |
| 132: 6 | | that you gave to salespeople to represent | | |
| 132: 7 | | to doctors that when we looked at the OA | | |
| 132: 8 | | studies, which are osteoarthritis | | |
| 132: 9 | | clinical studies, that when we looked at | | |
| 132: 10 | | all those studies, that the incidence of | | |
| 132: 11 | | events was similar in the groups when we | | |
| 132: 12 | | compared the incidence of cardiovascular | | |
| 132: 13 | | events of Vioxx to cardiovascular events | | |
| 132: 14 | | of nabumetone even to placebo. You were | | |
| 132: 15 | | telling -- you were allowing people in | | |
| 132: 16 | | the field to tell doctors that there was | | |
| 132: 17 | | a similar incidence; correct? | | |
| 132: 18 | | A: And this was consistent with | | |
| 132: 19 | | the label at the time that that card was | | |
| 132: 20 | | used. | | |
| 132: 21 | | Q: The first time that you even | **[132:21-132:23]** | |
| 132: 22 | | saw these OA trials is when I started | **Def's Obj.:** Question | |
| 132: 23 | | showing them to you today; correct? | without answer. Examiner | |
| | | | repeats question below; | |
| | | | including question twice is | |
| **133:3 - 133:19** | | Carroll, Marty 2005-10-27 | improper. | 00:00:29 |
| 133: 3 | | Q: First time -- you've never | | |
| 133: 4 | | seen these trials that I'm going over. | **PI's Resp.:** Permissible | |
| 133: 5 | | 102 you'd never seen; correct? | because it makes the | |
| 133: 6 | | A:   (Witness shakes head.) | question clear for jury. Does | |
| 133: 7 | | Q: 085, you'd never seen; | not prejudice Defendant to | |
| 133: 8 | | correct? | include. | |
| 133: 9 | | A: I've answered that I haven't | | |
| 133: 10 | | seen those trials. It wouldn't be | | |
| 133: 11 | | something I would normally see in my | | |
| 133: 12 | | role. | | |
| 133: 13 | | Q: Why don't you go to Page 19 | **[133:13-133:19]** | **Barnett:** Overruled. |
| 133: 14 | | in the document I just gave you, which | **Def's Obj.:** | |
| 133: 15 | | was 1084. Go to Page 19, and I'll show | Again, witness has never | |
| 133: 16 | | you something else and ask you if you've | seen the document counsel | |
| 133: 17 | | seen that. You see this says, 'Data from | calls Ex. 1084, and yet asks | |
| 133: 18 | | the original NDA.' Right? | witness question after | |
| 133: 19 | | A: Yes. | question about the document. | |
| | | | Witness can only respond by | |
| | | | looking at what the document | |
| **133:20 - 134:6** | | Carroll, Marty 2005-10-27 | says, e.g., "in the context of | |
| 133: 20 | | Q:   You know what the NDA is; | of this note, that's what the | |
| 133: 21 | | right? | sentence say." 136:20-22. | |
| 133: 22 | | A.   Yes. | **PI's Resp.:** Witness was | |
| 133: 23 | | Q.   You just talked about the | a former Exec. VP of Sales. | |
| 133: 24 | | fact that information was submitted to | FDA document relevant to | |
| 134: 1 | | the FDA by way of an NDA; right? | Plaintiff's failure to warn | |
| 134: 2 | | A.   That's correct. | claim.  FDA document | |
| 134: 3 | | Q.   This is what we're talking | offered to impeach the | |
| 134: 4 | | about here, isn't it? | witness. | |
| 134: 5 | | A.   I'll have to read it, but | | |
| 134: 6 | | that's the heading, yes. | | |
| | | | | |
| **134:7 - 134:9** | | Carroll, Marty 2005-10-27 | | 00:00:03 |
| 134: 7 | | Q: Had you ever seen study | | |
| 134: 8 | | number 069? | | |
| 134: 9 | | A: No. | | |
| | | | | |
| **134:17 - 135:11** | | Carroll, Marty 2005-10-27 | | 00:00:44 |
| 134: 17 | | Q: Now, you see -- let me -- | **[134:17-135:11]:** | |
| | | | **Def's Obj.:** Counsel | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 134: 18<br>134: 19<br>134: 20<br>134: 21<br>134: 22<br>134: 23<br>134: 24<br>135: 1<br>135: 2<br>135: 3<br>135: 4<br>135: 5<br>135: 6<br>135: 7<br>135: 8<br>135: 9<br>135: 10<br>135: 11 | let's cut through some of this. You can<br>read any part you want. It says, 'These<br>studies were' different from -- 'These<br>studies were of different duration (from<br>6 weeks to 86 months).  Most patients<br>were exposed for less than 6 months.' It<br>says, 'The Division has serious concerns<br>with a combined analysis of studies of<br>different length and dosing regimens.<br>Furthermore, combining multiple different<br>drugs within a single comparator arm may<br>not be reflective of the risk of any one<br>drug. These concerns were discussed<br>extensively.' Do you see that?<br>A:  Yes.<br>Q:  Do you see where it says,<br>'This database' -- do you see that?<br>A:  Yes. | improperly testifying and<br>reading document into record.<br>If counsel wants to establish<br>that the witness is not<br>familiar with the particular<br>studies at issue, that is one<br>thing, but it is improper for<br>counsel to continue on for<br>pages and read numerous<br>portions of the document into<br>the record where the witness<br>has no knowledge of the<br>document, which counsel has<br>established. | |
| **135:18  -  136:2**  Carroll, Marty 2005-10-27 | | 00:00:29 | |
| 135: 18<br>135: 19<br>135: 20<br>135: 21<br>135: 22<br>135: 23<br>135: 24<br>136: 1<br>136: 2 | Q:   So, we're talking about<br>comparative doses; right?  We're talking<br>about comparing Vioxx with other<br>products; correct?<br>MR. TSOUGARAKIS:  I'll<br>object to the form.<br>THE WITNESS:  Again, I'm not<br>an expert in this area, and I just<br>don't know. | | |
| **136:4  -  136:13**  Carroll, Marty 2005-10-27 | | 00:00:29 | |
| 136: 4<br>136: 5<br>136: 6<br>136: 7<br>136: 8<br>136: 9<br>136: 10<br>136: 11<br>136: 12<br>136: 13 | Q:  So, sir, when we're talking<br>about what we've seen now, we've actually<br>seen study 085, we've seen 090, we've<br>seen 0 -- I mean, we've seen study 102.<br>We've seen study 069. Do you see that?<br>And all of those were OA studies; right?<br>A:  They appear to be, yes.<br>Q:  And when they took all the<br>OA studies, they said the trend was<br>against Vioxx; true? | **[136:11] - [136:13]**<br>**Deft's Obj.:** Question<br>without an answer. | |
| **136:16  -  136:17**  Carroll, Marty 2005-10-27 | | 00:00:05 | |
| 136: 16<br>136: 17 | Q:  Do you remember seeing that?<br>Do you want to go back and read it again? | **[136:16-136:17]**<br>**Deft.'s Obj.:** Argumentative,<br>sarcastic (Mr. Pappantonio). | **Irvin 2:**  Overruled on<br>other grounds.<br>**Barnett.**  Overruled. |
| **136:20  -  137:19**  Carroll, Marty 2005-10-27 | | 00:00:42 | different objection which was<br>lack of knowledge. |
| 136: 20<br>136: 21<br>136: 22<br>136: 23<br>136: 24<br>137: 1<br>137: 2<br>137: 3<br>137: 4<br>137: 5<br>137: 6<br>137: 7<br>137: 8<br>137: 9<br>137: 10<br>137: 11<br>137: 12 | THE WITNESS:  In the context<br>of this note, that's what that<br>sentence said.<br>BY MR. PAPANTONIO:<br>Q:  Let's go back and make sure<br>I read it right. It says, 'A trend' --<br>do you see the page right before, Page<br>18?<br>A:  Yes.<br>Q:  It says, 'A trend towards an<br>excess of MIs in the rofecoxib 25 mg<br>group in a 12-week study is noted.' Do<br>you see that?<br>A:  Yes.<br>Q:  But when we pull out the CV<br>card that you were talking to doctors<br>about, it says, 'The incidence of events | **PI's Resp.:**  Permissible<br>cross-examination.<br><br>**[136:24-137:9]**<br>**Def's Obj.:**  Counsel<br>improperly testifying and<br>reading document into record.<br>If counsel wants to establish<br>that the witness is not<br>familiar with the particular<br>studies at issue, that is one<br>thing, but it is improper for<br>counsel to continue on for<br>pages and read numerous<br>portions of the document into<br>the record where the witness | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 137: 13<br>137: 14<br>137: 15<br>137: 16<br>137: 17<br>137: 18<br>137: 19 | was similar among the groups.' Correct?<br>A: That's what it says, yes.<br>Q: And that is what -- that's<br>what you had salespeople talking to<br>doctors about, the CV events? That card<br>they carried around with them every day,<br>didn't they? | has no knowledge of the<br>document, which counsel has<br>established. | |
| 137:22 - 137:24<br>137: 22<br>137: 23<br>137: 24 | Carroll, Marty 2005-10-27     00:00:04<br>THE WITNESS: That card was<br>part of what the sales<br>representatives had. | | |
| 138:8 - 138:15<br>138: 8<br>138: 9<br>138: 10<br>138: 11<br>138: 12<br>138: 13<br>138: 14<br>138: 15 | Carroll, Marty 2005-10-27     00:00:13<br>Q: So, it was important when<br>they asked that you shared as much<br>information at least as the company had<br>about the dangers of CV events; correct?<br>A: And I think we did.<br>Q: But you think you did, but<br>you had never seen any of the information<br>I just covered with you, had you? | **[138:13-138:15]**<br>**Def's Obj.:** Question<br>without answer. | |
| 138:19 - 138:24<br>138: 19<br>138: 20<br>138: 21<br>138: 22<br>138: 23<br>138: 24 | Carroll, Marty 2005-10-27     00:00:08<br>Q: Yes or no? Just go back<br>through it again, that you'd never seen<br>any information I just covered with you<br>on these protocols?<br>A: I hadn't seen the<br>information. | **[138:19-138:22]**<br>**Deft.'s Obj.:** Repetitive;<br>argumentative; sarcastic<br>(Mr. Papantonio)<br>**Pl's Resp.:** Permissible<br>cross-examination. | |
| 142:22 - 143:16<br>142: 22<br>142: 23<br>142: 24<br>143: 1<br>143: 2<br>143: 3<br>143: 4<br>143: 5<br>143: 6<br>143: 7<br>143: 8<br>143: 9<br>143: 10<br>143: 11<br>143: 12<br>143: 13<br>143: 14<br>143: 15<br>143: 16 | Carroll, Marty 2005-10-27     00:00:38<br>Q: That's brand new stuff to<br>you, isn't it?<br>A: I'm not a science guy.<br>Q: So, in other words, not<br>being a science guy, you could only pass<br>on what you were told; right?<br>A: No. Let's step back again.<br>I have full confidence that what we were<br>working with the sales reps was accurate.<br>It went through a lot of internal<br>policies and procedures to make sure of<br>that. And regarding all the studies and<br>the scientists, I have full trust in the<br>scientists at Merck. You'd have to<br>understand the scientists at Merck.<br>Their integrity around the science was<br>always there, and I fully trust that that<br>information was shared with the FDA and<br>all the appropriate channels. | **[142:22-143:16]**<br>**Deft.'s Obj.:** Question<br>included completely out of<br>context. If objection<br>overruled, Merck counters<br>with 142:13-20.<br>**Pl's Resp.:** Counter<br>designation is a series of<br>questions in which the<br>witness admits he has<br>never heard of a prostaglandin,<br>does not know what prosta-<br>cyclin is or how Cox-2<br>inhibitors work. Testimony<br>is clear without additional<br>questions which are a waste<br>of time. | |
| 143:17 - 144:3<br>143: 17<br>143: 18<br>143: 19<br>143: 20<br>143: 21<br>143: 22<br>143: 23<br>143: 24<br>144: 1<br>144: 2 | Carroll, Marty 2005-10-27<br>Q. Because you thought they<br>were being honest and fair with the FDA;<br>right?<br>A. They were.<br>Q. And as a matter of fact,<br>they're certainly being cooperative with<br>the FDA? Would you have a memory of them<br>being cooperative?<br>A. I wasn't involved in that<br>particularly, but I know Merck, and I'm | | |

Case 2:05-md-0165...Plaintiffs' and Defendant's Designations of J. Martin Carroll  Page 19 of 43
Dedrick v. Merck Co., Inc.
Plaintiffs' and Defendant's Designations of J. Martin Carroll 11/28/06

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 144: 3 | confident they were. | | |
| **160:3 - 160:14** | | | |
| 160: 3 | Q.   If they don't have the | **[160:3-160:14]** | |
| 160: 4 | information, the FDA can't pass anything | **Pl's Obj.:** Witness has | |
| 160: 5 | on, can they? | testified that he was not | |
| 160: 6 | MR. TSOUGARAKIS:  Object to | involved in Merck's interaction | |
| 160: 7 | form. | with the FDA and is not | |
| 160: 8 | THE WITNESS:  The FDA has | familiar with how the FDA | |
| 160: 9 | its own processes where they get | works.  602.  Lack of | |
| 160: 10 | the information, it goes through | knowledge. | |
| 160: 11 | Advisory Committees, it goes | | |
| 160: 12 | through a lot of filters to come | | |
| 160: 13 | to whatever conclusion they're | | |
| 160: 14 | going to come to. | | |
| **170:10 - 170:11** | Carroll, Marty 2005-10-27 | 00:00:02 | |
| 170: 10 | Q: In other words, sales were | | |
| 170: 11 | unimportant to you? In other words, you | | |
| **170:17 - 170:21** | Carroll, Marty 2005-10-27 | 00:00:05 | |
| 170: 17 | MR. PAPANTONIO:  Would you | | |
| 170: 18 | please give him 1258. | | |
| 170: 19 | BY MR. PAPANTONIO: | | |
| 170: 20 | Q: Is that what you're telling | | |
| 170: 21 | me, Mr. Carroll? | | |
| **170:23 - 172:5** | Carroll, Marty 2005-10-27 | 00:00:58 | |
| 170: 23 | THE WITNESS:  First of all, | | |
| 170: 24 | sales are important on all | | |
| 171: 1 | products, but myself and the sales | | |
| 171: 2 | force would always do the right | | |
| 171: 3 | thing with integrity, talk about | | |
| 171: 4 | the products' benefits and risks | | |
| 171: 5 | consistent with the approved | | |
| 171: 6 | label. | | |
| 171: 7 | BY MR. PAPANTONIO: | | |
| 171: 8 | Q: All right. | **[171:8-172:9]** | **Irvin 2:**  Overruled. |
| 171: 9 | Well, I think we've heard | **Deft's Obj.:** Witness does | on different grounds. |
| 171: 10 | that answer, but have you seen this | not have direct knowledge | |
| 171: 11 | document, 'U.S. Long Range Operating Plan | of analysis (see 197:9-10 -- | **Barnett:**  Overruled |
| 171: 12 | Franchise: Analgesic & Anti-Inflammatory | "I don't know what the | objection on following grounds: |
| 171: 13 | Products: Vioxx.' Do you see that? | author meant. I don't know - | relevance, prejudicial, |
| 171: 14 | A:  I see it. | I don't know." See also | speculation. |
| 171: 15 | Q: Date, 'July, 2001.' | 176:19-21; 179:21 "all we | |
| 171: 16 | A:  Right. | know is, we have a | |
| 171: 17 | Q: Where was Mr. Carroll in | document. . ."); he says | |
| 171: 18 | 2001? | numerous times he can't | |
| 171: 19 | A:  I was still with Merck. | recall seeing the document | |
| 171: 20 | Q: Still there. You were still | (see, e.g., 196:11-12); he | |
| 171: 21 | in sales, weren't you? | also testifies he was not | |
| 171: 22 | A:  That's correct. | involved in the direct | |
| 171: 23 | Q: And you'd seen this document | product insert process. | |
| 171: 24 | back then where they analyzed what was | **Pl's Resp.:**  Witness | |
| 172: 1 | going to happen if we told people about | testifies that he needs to be | |
| 172: 2 | -- if we had a label, CV warning, we knew | refreshed about contents of | |
| 172: 3 | what was going to happen with sales. | document not that he has | |
| 172: 4 | You've seen this document before, haven't | not seen before.  Witness | |
| 172: 5 | you? | was an Executive Vice | |
| **172:8 - 172:9** | Carroll, Marty 2005-10-27 | 00:00:02 | President of Sales for Merck |
| 172: 8 | THE WITNESS:  I've got to be | | and would certainly been |
| 172: 9 | refreshed. | | familiar with projections like |
| | | | those contained in the U.S. |
| | | | Long Range Operating Plan. |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| | | Testimony and document are relevant to Plaintiff's claim of failure to warn and to rebut Merck's claim that it put patients over profits. | |
| 172:11 - 173:18 | Carroll, Marty 2005-10-27 | 00:00:36 | |
| 172: 11 | Q. Let me refresh you. Go to | | |
| 172: 12 | Page 17 and see if this refreshes your | | |
| 172: 13 | memory here. Do you realize that the | | |
| 172: 14 | company actually spent money trying to | | |
| 172: 15 | forecast what would happen if consumers | | |
| 172: 16 | and doctors actually knew that CV events | | |
| 172: 17 | were higher with Vioxx than other NSAIDs? | | |
| 172: 18 | Did you know that prior to me showing | | |
| 172: 19 | this document to you today? | | |
| 172: 20 | MR. TSOUGARAKIS: I'll | | |
| 172: 21 | object to form. | | |
| 172: 22 | THE WITNESS: I think it's | | |
| 172: 23 | common for a marketing group to | | |
| 172: 24 | analyze different possibilities as | | |
| 173: 1 | they forecast sales over the | | |
| 173: 2 | future. I do not think it | | |
| 173: 3 | reflects anything other than that. | | |
| 173: 4 | For instance -- | | |
| 173: 5 | BY MR. PAPANTONIO: | | |
| 173: 6 | Q. Well -- | | |
| 173: 7 | A. For instance, before a new | | |
| 173: 8 | product would be launched, there's a | | |
| 173: 9 | range of possible circular language that | | |
| 173: 10 | could be approved by the FDA, and you | | |
| 173: 11 | would routinely have a forecast that | | |
| 173: 12 | might range across that. | | |
| 173: 13 | Q. Well, one message from Marty | | |
| 173: 14 | Carroll was that Vioxx was important to | | |
| 173: 15 | Merck, right? For making money, Vioxx | | |
| 173: 16 | was important to Merck? | | |
| 173: 17 | A. Vioxx was important for | | |
| 173: 18 | patients, and it was important for Merck. | | |
| 173:23 - 174:19 | Carroll, Marty 2005-10-27 | 00:00:36 | **[173:23-183:20]** |
| 173: 23 | But I'm asking you, Vioxx from | | **Deft's Obj.:** Witness does |
| 173: 24 | the standpoint of Marty Carroll in sales, | | not have direct knowledge |
| 174: 1 | was important for Merck? | | of analysis (see 197:9-10 -- |
| 174: 2 | A: Yes. | | "I don't know what the |
| 174: 3 | Q: Right. When we look at this | | author meant. I don't know - |
| 174: 4 | chart here, we've got -- do you see where | | I don't know." See also |
| 174: 5 | it says 'Upside 25% in '06'? | | 176:19-21; 179:21 "all we |
| 174: 6 | A: Yes. | | know is, we have a |
| 174: 7 | Q: It says 'CV Labeling' Minor? | | document. . ."); he says |
| 174: 8 | MR. TSOUGARAKIS: Milder. | | numerous times he can't |
| 174: 9 | BY MR. PAPANTONIO: | | recall seeing the document |
| 174: 10 | Q: 'Milder,' excuse me. Do you | | (see, e.g., 196:11-12); he |
| 174: 11 | see that? | | also testifies he was not |
| 174: 12 | A: Yes. | | involved in the direct |
| 174: 13 | Q: You knew that if the | | product insert process. |
| 174: 14 | cardiovascular event label where you're | | **PI's Resp.:** Witness |
| 174: 15 | warning people about cardiovascular | | testifies that he needs to be |
| 174: 16 | events, you knew if it was a milder label | | refreshed about contents of |
| 174: 17 | that you would have more sales? You knew | | document not that he has |
| 174: 18 | that back when you were in charge of | | not seen it before. Witness |
| 174: 19 | sales; right? | | was an Executive Vice President of Sales for Merck and would certainly been |
| 174:22 - 175:7 | Carroll, Marty 2005-10-27 | 00:00:18 | |

| Designated Testimony of J. Martin Carroll | | | | Objections | Rulings |
|---|---|---|---|---|---|
| | 174: 22 | THE WITNESS: I think the | | familiar with projections like | |
| | 174: 23 | purpose of this was to forecast | | those contained in the U.S. | |
| | 174: 24 | different potential outputs from | | Long Range Operating Plan. | |
| | 175: 1 | the FDA. | | Testimony and document | |
| | 175: 2 | BY MR. PAPANTONIO: | | are relevant to Plaintiff's | |
| | 175: 3 | Q: Right. You heard my -- can | | claim of failure to warn and | |
| | 175: 4 | you answer my question? You knew that if | | to rebut Merck's claim that | |
| | 175: 5 | there was a CV label that was milder, | | it put patients over profits. | |
| | 175: 6 | less stringent, that it would be better | | | |
| | 175: 7 | for sales, right? You knew that? | | | |
| 175:9 - 176:5 | | Carroll, Marty 2005-10-27 | 00:00:46 | | |
| | 175: 9 | THE WITNESS: That's what | | | |
| | 175: 10 | this particular analysis -- again, | | | |
| | 175: 11 | it ranges from upside to downside | | | |
| | 175: 12 | depending on the different | | | |
| | 175: 13 | circular potentials that could | | | |
| | 175: 14 | occur. | | | |
| | 175: 15 | BY MR. PAPANTONIO: | | | |
| | 175: 16 | Q: 'Circular potentials' being | | | |
| | 175: 17 | information that doctors are given and | | | |
| | 175: 18 | patients are given about the potential | | | |
| | 175: 19 | dangers of Vioxx? Yes or no? | | | |
| | 175: 20 | A: Yes. But it doesn't predict | | | |
| | 175: 21 | any outcome of that. It just suggests on | | | |
| | 175: 22 | a forecasting basis what it might be. | | | |
| | 175: 23 | Q: So, if you had a milder CV | | | |
| | 175: 24 | event, a CV label, then you were going to | | | |
| | 176: 1 | make $2.5 billion that year, but if you | | | |
| | 176: 2 | had a label that had a CV warning, then | | | |
| | 176: 3 | you were only going to make $1.5 billion | | | |
| | 176: 4 | dollars that year. That's what that | | | |
| | 176: 5 | chart shows, doesn't it? | | | |
| 176:8 - 176:14 | | Carroll, Marty 2005-10-27 | 00:00:09 | | |
| | 176: 8 | THE WITNESS: According to | | | |
| | 176: 9 | this analysis. | | | |
| | 176: 10 | BY MR. PAPANTONIO: | | | |
| | 176: 11 | Q: So, there's a billion | | | |
| | 176: 12 | dollar, one billion dollar difference | | | |
| | 176: 13 | with the CV label and without the CV | | | |
| | 176: 14 | label; correct? | | | |
| 176:18 - 177:9 | | Carroll, Marty 2005-10-27 | 00:00:40 | | |
| | 176: 18 | Q: According to that chart? | | | |
| | 176: 19 | A: The people who are | | | |
| | 176: 20 | responsible for forecasting did an | | | |
| | 176: 21 | analysis that said, based on different | | | |
| | 176: 22 | outcomes from the FDA, there could be | | | |
| | 176: 23 | different ranges. | | | |
| | 176: 24 | Q: And you knew from the | | | |
| | 177: 1 | standpoint of Vioxx being important that | | | |
| | 177: 2 | it was important to Merck from a money | | | |
| | 177: 3 | standpoint? You knew Vioxx could -- if | | | |
| | 177: 4 | Vioxx could be sold without CV warnings, | | | |
| | 177: 5 | cardiovascular event warnings, without | | | |
| | 177: 6 | talking about increased deaths among the | | | |
| | 177: 7 | elderly, that sales would be better? You | | | |
| | 177: 8 | knew that? When you were in charge of | | | |
| | 177: 9 | sales, Marty Carroll knew that; correct? | | | |
| 177:12 - 177:19 | | Carroll, Marty 2005-10-27 | 00:00:19 | | |
| | 177: 12 | THE WITNESS: What we knew | | | |
| | 177: 13 | was not knowing what the outcome | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| | 177: 14 | of the circular discussions would | | |
| | 177: 15 | be, there could be a range of | | |
| | 177: 16 | forecast. All this was was | | |
| | 177: 17 | predicting what the range | | |
| | 177: 18 | potential could be depending on | | |
| | 177: 19 | what the label was changed to. | | |
| | | | | |
| **179:5 - 179:17** | Carroll, Marty 2005-10-27 | 00:00:28 | | |
| | 179: 5 | Q: So, Mr. Carroll, if sales -- | | |
| | 179: 6 | MR. PAPANTONIO: Give him | | |
| | 179: 7 | 402, please. | | |
| | 179: 8 | BY MR. PAPANTONIO: | | |
| | 179: 9 | Q: So, we just looked at a | | |
| | 179: 10 | document -- as you're going through | | |
| | 179: 11 | there, we just looked at a document that | | |
| | 179: 12 | showed -- to put everything back on the | | |
| | 179: 13 | record and in perspective, we looked at a | | |
| | 179: 14 | document that showed that sales would | | |
| | 179: 15 | decrease by $1 billion with the stronger | | |
| | 179: 16 | CV label. You saw that. Remember that | | |
| | 179: 17 | document we just talked about? | | |
| **179:20 - 180:17** | Carroll, Marty 2005-10-27 | 00:00:36 | | |
| | 179: 20 | THE WITNESS: That document | | |
| | 179: 21 | didn't say that. All we know is, | | |
| | 179: 22 | we have a document that provided | | |
| | 179: 23 | forecasts on different scenarios. | | |
| | 179: 24 | We don't know what would have | | |
| | 180: 1 | happened. | | |
| | 180: 2 | BY MR. PAPANTONIO: | | |
| | 180: 3 | Q: Well, somebody thought it | | |
| | 180: 4 | was a billion dollar difference, Mr. | | |
| | 180: 5 | Carroll, didn't they? Do you want to | | |
| | 180: 6 | look at it again? If you want to pull it | | |
| | 180: 7 | out again? We'll go over it again if you | | |
| | 180: 8 | want to. But somebody showed that if you | | |
| | 180: 9 | put a CV warning on that was a strong CV | | |
| | 180: 10 | warning, that the company would lose $1 | | |
| | 180: 11 | billion in sales. Look at it again and | | |
| | 180: 12 | tell me if there's anything else that | | |
| | 180: 13 | that page there shows. | | |
| | 180: 14 | A: Remind me of the page. | | |
| | 180: 15 | Sorry. | | |
| | 180: 16 | MR. TSOUGARAKIS: I have | | |
| | 180: 17 | Page 17. | | |
| | | | | |
| **180:23 - 182:16** | Carroll, Marty 2005-10-27 | 00:01:14 | | |
| | 180: 23 | Q: 2.5 billion, you see there? | | |
| | 180: 24 | A: I see it. | | |
| | 181: 1 | Q: And 1.5 billion? | | |
| | 181: 2 | A: Right. | | |
| | 181: 3 | Q: Subtract 1.5 billion from | | |
| | 181: 4 | 2.5 billion, and what number do you get, | | |
| | 181: 5 | Mr. Carroll? | | |
| | 181: 6 | A: And all I'm saying is, that | | |
| | 181: 7 | this is a forecast by marketing that goes | | |
| | 181: 8 | to different scenarios in the label. | | |
| | 181: 9 | MR. PAPANTONIO: Put this | | |
| | 181: 10 | up. This is document -- what's | | |
| | 181: 11 | the document number? | | |
| | 181: 12 | MS. LUNSFORD: 1258. | | |
| | 181: 13 | MR. PAPANTONIO: 1258, put | | |
| | 181: 14 | 1258 back up there again, and I | | |
| | 181: 15 | want to go to Page 17. | | |
| | 181: 16 | BY MR. PAPANTONIO: | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 181: 17 | Q: Now, what statement do you | | | |
| 181: 18 | want to make about this? | | | |
| 181: 19 | MR. PAPANTONIO: First of | | | |
| 181: 20 | all, underline $2.5 billion. | | | |
| 181: 21 | Right here. 2.5 billion. | | | |
| 181: 22 | BY MR. PAPANTONIO: | | | |
| 181: 23 | Q: Do you see that? | | | |
| 181: 24 | MR. PAPANTONIO: And then | | | |
| 182: 1 | underline 1.5 billion. | | | |
| 182: 2 | BY MR. PAPANTONIO: | | | |
| 182: 3 | Q: When you subtract 1.5 | | | |
| 182: 4 | billion from 2.5 billion, what do you | | | |
| 182: 5 | get? | | | |
| 182: 6 | A: That's a billion. | | | |
| 182: 7 | Q: $1 billion. | | | |
| 182: 8 | And just so we can be | | | |
| 182: 9 | abundantly clear, it says -- at the top | | | |
| 182: 10 | of it, it says, 'Upside/Downside Sales | | | |
| 182: 11 | Forecast.' Do you see that? | | | |
| 182: 12 | A: Yes. | | | |
| 182: 13 | Q: And it says, 'Upside.' Do | | | |
| 182: 14 | you see that? Okay. | | | |
| 182: 15 | So, is there anything else | | | |
| 182: 16 | you want to add about this document? | | | |
| **182:19 - 183:20** | Carroll, Marty 2005-10-27 | 00:00:49 | | |
| 182: 19 | THE WITNESS: Again, my | | | |
| 182: 20 | point is this is a forecast. | | | |
| 182: 21 | There was pending changes to the | | | |
| 182: 22 | label, and the marketing group was | | | |
| 182: 23 | merely forecasting different | | | |
| 182: 24 | ranges that would occur depending | | | |
| 183: 1 | on that change. | | | |
| 183: 2 | BY MR. PAPANTONIO: | | | |
| 183: 3 | Q: And that didn't -- you | | | |
| 183: 4 | weren't concerned about sales, sir? You | | | |
| 183: 5 | weren't concerned about -- you were not | | | |
| 183: 6 | concerned -- | | | |
| 183: 7 | If I'm hearing what you said | | | |
| 183: 8 | earlier, you weren't concerned that | | | |
| 183: 9 | labeling of CV events were going to | | | |
| 183: 10 | affect sales? Is that what you're | | | |
| 183: 11 | telling me -- | | | |
| 183: 12 | A: What I'm telling -- | | | |
| 183: 13 | Q: -- Marty Carroll? | | | |
| 183: 14 | A: What I'm telling you is that | | | |
| 183: 15 | when the label is informed by all the | | | |
| 183: 16 | data and the FDA, you take that to the | | | |
| 183: 17 | marketplace, and what happens, happens. | | | |
| 183: 18 | That's not the primary view. The primary | | | |
| 183: 19 | view is appropriately taking the product | | | |
| 183: 20 | to the marketplace with the circular. | | | |
| **187:7 - 183:10** | Carroll, Marty 2005-10-27 | 00:00:55 | | |
| 187: 7 | Q. And in the package insert, | | | |
| 187: 8 | you actually had something to do with | | | |
| 187: 9 | what was put in that package insert, the | | | |
| 187: 10 | sales force did? | | | |
| **183:15 - 183:5** | Carroll, Marty 2005-10-27 | | | |
| 187: 15 | THE WITNESS: That wouldn't | | | |
| 187: 16 | be a role that I would take. | | | |
| 187: 17 | BY MR. PAPANTONIO: | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 187: 18 | | Q.  They never ran anything | | |
| 187: 19 | | about the package insert by Marty | | |
| 187: 20 | | Carroll? | | |
| 187: 21 | | A.  Not normally.  That would be | | |
| 187: 22 | | through R&D, medical, and the groups that | | |
| 187: 23 | | interact with the FDA. | | |
| 187: 24 | | Q.   And so where it came to what | | |
| 188: 1 | | you -- when it came to what you told | | |
| 188: 2 | | doctors, were you telling doctors the | | |
| 188: 3 | | same thing that the package insert told | | |
| 188: 4 | | doctors? | | |
| 188: 5 | | A.   We were.  Always. | | |
| | | | | |
| **190:19  -  192:3** | | Carroll, Marty 2005-10-27 | 00:00:55 | **[190:19-192:3]** |
| 190: 19 | | Q: You knew, sir, didn't you, | | **Deft's Obj.:** Witness does |
| 190: 20 | | that if there was a product insert or a | | not have direct knowledge |
| 190: 21 | | label that talked about CV events, that | | of analysis (see 197:9-10 -- |
| 190: 22 | | sales would drop, didn't you? You knew | | "I don't know what the |
| 190: 23 | | that all the way back to 2001? | | author meant. I don't know - |
| 190: 24 | | A: Again, I've got the | | I don't know." See also |
| 191: 1 | | document, but what are you referencing in | | 176:19-21; 179:21 "all we |
| 191: 2 | | the document? | | know is, we have a |
| 191: 3 | | Q: Well, let's look at the | | document. . ."); he says |
| 191: 4 | | front of the document. What does it say? | | numerous times he can't |
| 191: 5 | | A: The one I have is '2001 | | recall seeing the document |
| 191: 6 | | Profit Plan for Vioxx.' | | (see, e.g., 196:11-12); he |
| 191: 7 | | Q: Let's look at the first page | | also testifies he was not |
| 191: 8 | | there. | | involved in the direct |
| 191: 9 | | MR. PAPANTONIO:  Put that up | | product insert process. |
| 191: 10 | | there. | | **Pl's Resp.:**  Witness |
| 191: 11 | | BY MR. PAPANTONIO: | | testifies that he needs to be |
| 191: 12 | | Q: '2001 Profit Plan for | | refreshed about contents of |
| 191: 13 | | Vioxx.' | | document not that he has |
| 191: 14 | | A: Right. | | not seen it before.  Witness |
| 191: 15 | | Q: Did you participate in this? | | was an Executive Vice |
| 191: 16 | | Is this something you participated in? | | President of Sales for Merck |
| 191: 17 | | A: I can't recall, but most | | and would certainly been |
| 191: 18 | | likely, I would have been involved in | | familiar with projections like |
| 191: 19 | | some way. | | those contained in the U.S. |
| 191: 20 | | Q: All right. | | Long Range Operating Plan. |
| 191: 21 | | And you were also involved | | Testimony and document |
| 191: 22 | | in the product insert process, weren't | | are relevant to Plaintiff's |
| 191: 23 | | you? | | claim of failure to warn and |
| 191: 24 | | A: No. I wasn't involved in | | to rebut Merck's claim that |
| 192: 1 | | direct product insert process. That was | | it put patients over profits. |
| 192: 2 | | regulatory, marketing, and the people who | | |
| 192: 3 | | dealt with the FDA. | | |
| | | | | |
| **192:4  -  192:12** | | Carroll, Marty 2005-10-27 | | |
| 192: 4 | | Q.   And that letter that I just | | |
| 192: 5 | | showed you that said Marty Carroll -- | | |
| 192: 6 | | A.   That's from -- | | |
| 192: 7 | | Q.   -- talking about product | | |
| 192: 8 | | insert -- | | |
| 192: 9 | | A.   That's from a packaging | | |
| 192: 10 | | group that has to do with packaging.  It | | |
| 192: 11 | | has nothing to do with the content of the | | |
| 192: 12 | | insert. | | |
| | | | | |
| **192:13  -  193:2** | | Carroll, Marty 2005-10-27 | 00:00:28 | **[192:13-194:22]** |
| 192: 13 | | Q: Let's look at Page 38 on | | **Deft's Obj.:** Witness does |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 192: 14 | this, and let's see what the whole thing | not have direct knowledge | |
| 192: 15 | about labeling and product insert had to | of analysis (see 197:9-10 -- | |
| 192: 16 | do with. Okay? | "I don't know what the | |
| 192: 17 | A: (Witness reviewing | author meant. I don't know - | |
| 192: 18 | document.) | I don't know." See also | |
| 192: 19 | Q: You were concerned, Marty | 176:19-21; 179:21 "all we | |
| 192: 20 | Carroll was concerned that there was a | know is, we have a | |
| 192: 21 | safety issue that was looming over Vioxx | document. . ."); he says | |
| 192: 22 | all the way back to 2001; correct? | numerous times he can't | |
| 192: 23 | A: I was not concerned at all | recall seeing the document | |
| 192: 24 | about that. | (see, e.g., 196:11-12); he | |
| 193: 1 | Q: You didn't know anything | also testifies he was not | |
| 193: 2 | about it? | involved in the direct | |
| **193:5 - 193:23** | Carroll, Marty 2005-10-27 | 00:00:33 | product insert process. | |
| 193: 5 | THE WITNESS: I knew about | **PI's Resp.:** Witness | |
| 193: 6 | the information that we had | testifies that he needs to be | |
| 193: 7 | through VIGOR and the label, and I | refreshed about contents of | |
| 193: 8 | wasn't concerned about safety. | document not that he has | |
| 193: 9 | BY MR. PAPANTONIO: | not seen it before. Witness | |
| 193: 10 | Q: We're talking about 2001 | was an Executive Vice | |
| 193: 11 | here in this document. | President of Sales for Merck | |
| 193: 12 | A: I see that. | and would certainly been | |
| 193: 13 | Q: You were there with the | familiar with projections like | |
| 193: 14 | company; correct? | those contained in the U.S. | |
| 193: 15 | A: Yes. | Long Range Operating Plan. | |
| 193: 16 | Q: And you knew that there was | Testimony and document | |
| 193: 17 | an issue about safety in relationship to | are relevant to Plaintiff's | |
| 193: 18 | CV events, cardiovascular events, heart | claim of failure to warn and | |
| 193: 19 | attack, stroke, thrombo process, blood | to rebut Merck's claim that | |
| 193: 20 | clots, you knew all of those issues were | it put patients over profits. | |
| 193: 21 | safety issues that folks at Merck were | | |
| 193: 22 | concerned about with Vioxx? You knew | | |
| 193: 23 | that in 2001; right? | | |
| **194:3 - 195:4** | Carroll, Marty 2005-10-27 | 00:00:46 | | |
| 194: 3 | THE WITNESS: What I knew is | | |
| 194: 4 | that we had a lot of data that was | | |
| 194: 5 | being shared into the marketplace | | |
| 194: 6 | and with the FDA. That's what I | | |
| 194: 7 | knew. And I also knew that Merck | | |
| 194: 8 | at that time had no safety | | |
| 194: 9 | concerns on Vioxx. | | |
| 194: 10 | BY MR. PAPANTONIO: | | |
| 194: 11 | Q: Oh, they had no safety | | |
| 194: 12 | concerns? | | |
| 194: 13 | A: No. | | |
| 194: 14 | Q: Would you take a look at | | |
| 194: 15 | that chart right there? | | |
| 194: 16 | A: Yes. | | |
| 194: 17 | Q: Would you look at the last | | |
| 194: 18 | -- do you see that last box at the front | | |
| 194: 19 | where it says, 'Assumptions'? It says, | | |
| 194: 20 | 'Assumptions.' 'Vioxx is unable to | | |
| 194: 21 | neutralize safety' -- what does that say? | | |
| 194: 22 | A: 'Safety/tolerability.' | | |
| 194: 23 | Q: -- 'safety/tolerability | | |
| 194: 24 | issues.' What in your mind is | | |
| 195: 1 | safety/tolerability issues, sir, if it's | | |
| 195: 2 | not safety? What is it? How is that | | |
| 195: 3 | different from the question I just asked | | |
| 195: 4 | you? | | |
| **195:8 - 196:19** | Carroll, Marty 2005-10-27 | 00:01:07 | **[195:8-196:19]** | **Barnett:** Overruled |
| 195: 8 | Q: I just asked you whether or | | **Def's Obj.:** Argumentative, | objecton on grounds of |
| 195: 9 | not the folks at Merck were concerned | | sarcastic (Mr. Papantonio) | compound, argumentative, |
| 195: 10 | about safety issues, didn't I, just 30 | | | |

Dedrick v. Merck Co., Inc.
Case 2:05-md-01657-EEF-DEK Document 8644-6 Filed 11/08/06   Page 26 of 43
Plaintiffs' and Defendant's Designations of J. Martin Carroll

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 195: 11 | seconds ago? I said, Mr. Carroll, were | | | asked and answered, speculation. |
| 195: 12 | the folks at Merck in 2001 concerned | | | |
| 195: 13 | about safety issues? What did you tell | | | |
| 195: 14 | me? | | | |
| 195: 15 | A:  I said no. | | | |
| 195: 16 | Q:  They weren't? | | | |
| 195: 17 | A:  They were not. | | | |
| 195: 18 | Q:  What does this say right | | | |
| 195: 19 | here? | | | |
| 195: 20 | A:  This? | | | |
| 195: 21 | Q:  Vioxx -- let's read it | | | |
| 195: 22 | again. 'Vioxx is unable to neutralize' | | | |
| 195: 23 | -- an assumption. 'Vioxx is unable to | | | |
| 195: 24 | neutralize safety/tolerability issues.' | | | |
| 196: 1 | Right? Go out to the side. Do you see | | | |
| 196: 2 | -- go out to the side. Do you see what | | | |
| 196: 3 | the number is right there? $437 million. | | | |
| 196: 4 | Do you know what they're | | | |
| 196: 5 | talking about here, Mr. Carroll? They're | | | |
| 196: 6 | saying in 2001 -- Marty Carroll was in | | | |
| 196: 7 | charge in 2001, weren't you? | | | |
| 196: 8 | A:  Yes. | | | |
| 196: 9 | Q:  In 2001, and you say you've | | | |
| 196: 10 | never seen this document; is that right? | | | |
| 196: 11 | A:  I said I can't recall the | | | |
| 196: 12 | documents. | | | |
| 196: 13 | Q:  Yeah. | | | |
| 196: 14 | A:  It's four or five years ago. | | | |
| 196: 15 | Q:  And in 2001, they're already | | **[196:15-196:19]** | |
| 196: 16 | talking about, if Vioxx is unable to | | **Deft.'s Obj.:** Question without | |
| 196: 17 | neutralize their safety/tolerability | | an answer; 602. | |
| 196: 18 | issues, then it's going to cost them just | | | |
| 196: 19 | in sales for 2001 $437 million; right? | | | |
| **197:7  -  198:7** | Carroll, Marty 2005-10-27 | 00:00:47 | | |
| 197: 7 | Q:  That's the question. That's | | | |
| 197: 8 | what it says. | | | |
| 197: 9 | A:  In the context of the | | | |
| 197: 10 | document, I don't know what the author | | | |
| 197: 11 | meant. I don't know -- I don't know. | | | |
| 197: 12 | Q:  But you did -- you were | | | |
| 197: 13 | willing to tell me just a minute ago that | | | |
| 197: 14 | there were no concerns about safety of | | | |
| 197: 15 | Vioxx around Merck. Isn't that what you | | | |
| 197: 16 | told me a minute ago? | | | |
| 197: 17 | A:  That's because there was | | | |
| 197: 18 | not. | | | |
| 197: 19 | Q:  So, who might have put this | | | |
| 197: 20 | in here, 'Vioxx is unable to neutralize | | | |
| 197: 21 | safety/tolerability issues'? That is | | | |
| 197: 22 | 2001. They're talking about | | | |
| 197: 23 | safety/tolerability issues; right? | | | |
| 197: 24 | A:  I don't know the context. I | | | |
| 198: 1 | mean, was the context as the FDA reviewed | | | |
| 198: 2 | data with the label change? I don't know | | | |
| 198: 3 | the context. | | | |
| 198: 4 | Q:  Sir, you were in charge of | | **[198:4] - [198:7]** | |
| 198: 5 | sales. Mike Papantonio was nowhere | | | |
| 198: 6 | around the Merck sales department in | | | |
| 198: 7 | 2001, but Marty Carroll was; right? | | | |
| **199:7  -  200:1** | Carroll, Marty 2005-10-27 | 00:00:34 | **[199:7] - [200:1]** | **Irvin 2:**  Overruled. |
| 199: 7 | Q:  In 2001, sir, you were in | | **Deft's Obj.:**  Speculation, | **Barnett:** Sustained |
| 199: 8 | charge of sales. Yes or no? | | argumentative.  Also, Counsel | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 199: 9 | A: Yes. | asks mulitple questions in a row. | |
| 199: 10 | Q: In 2001 you told -- in 2005, | | |
| 199: 11 | today, you told me that in 2001 nobody | | |
| 199: 12 | around Merck was concerned about safety | | |
| 199: 13 | issues? | | |
| 199: 14 | A: We were not concerned about | | |
| 199: 15 | safety issues. | | |
| 199: 16 | Q: But then I showed you this | | |
| 199: 17 | document that says, written in 2001, that | | |
| 199: 18 | Vioxx is unable -- if Vioxx is unable to | | |
| 199: 19 | neutralize -- what does the word | | |
| 199: 20 | 'neutralize' mean to you, sir? | | |
| 199: 21 | A: I don't know the context | | |
| 199: 22 | that the person used it. It could mean a | | |
| 199: 23 | lot of different things. | | |
| 199: 24 | Q: Give me your shot. What | | |
| 200: 1 | does 'neutralize' mean to you? | | |
| 200:4 - 200:10 | Carroll, Marty 2005-10-27 | 00:00:09 | [200:4-201:24] | Irvin 2: Overruled on other grounds. |
| 200: 4 | THE WITNESS: Balance. | | Deft's Obj.: Witness does not have direct knowledge of the analysis (see 197:9-10 -- "I don't know what the author meant. I don't know - I don't know." See also 176:19-21; 179:21 "all we know is, we have a document. . ."); he says numerous times he can't recall seeing the document (see, e.g., 196:11-12); he also testifies he was not involved in the direct product insert process. | Barnett: Overruled objection on grounds of relevance, prejudicial, speculation. |
| 200: 5 | BY MR. PAPANTONIO: | | | |
| 200: 6 | Q: Okay. | | | |
| 200: 7 | So, if Vioxx is unable to | | | |
| 200: 8 | balance safety/tolerability issues, you | | | |
| 200: 9 | see it's going to cost them $437 million; | | | |
| 200: 10 | right? | | | |
| 200:13 - 201:5 | Carroll, Marty 2005-10-27 | 00:00:29 | | |
| 200: 13 | Q: That's what it says. Do you | | | |
| 200: 14 | see where it says, 'Revenue Impact' up | | | |
| 200: 15 | there at the very top? | | | |
| 200: 16 | A: Yeah. | | | |
| 200: 17 | Q: What does that word mean, | | | |
| 200: 18 | 'Revenue Impact'? What does the word | | | |
| 200: 19 | 'revenue' mean to you? | | | |
| 200: 20 | A: Range of different options. | | PI's Resp.: Witness testifies that he needs to be refreshed about contents of document not that he has not seen it before. Witness was an Executive Vice President of Sales for Merck and would certainly been familiar with projections like those contained in the U.S. Long Range Planning Guide. Testimony and document are relevant to Plaintiff's claim of failure to warn and to rebut Merck's claim that it put patients over profits. | |
| 200: 21 | Q: And what does -- when you | | | |
| 200: 22 | put an MM out to the side of it, what | | | |
| 200: 23 | does that mean? Millions, isn't it? | | | |
| 200: 24 | A: That's correct. | | | |
| 201: 1 | Q: So, revenue impact of Vioxx | | | |
| 201: 2 | being unable to neutralize | | | |
| 201: 3 | safety/tolerability is going to cost | | | |
| 201: 4 | Merck $437 million, and you're telling me | | | |
| 201: 5 | you've never seen this document? | | | |
| 201:9 - 201:10 | Carroll, Marty 2005-10-27 | 00:00:01 | | |
| 201: 9 | THE WITNESS: I don't recall | | | |
| 201: 10 | the document. | | | |
| 201:19 - 201:24 | Carroll, Marty 2005-10-27 | 00:00:06 | | |
| 201: 19 | Q: And you were in charge of | | | |
| 201: 20 | sales? | | | |
| 201: 21 | A: Yes. | | | |
| 201: 22 | Q: That's talking about revenue | | | |
| 201: 23 | impact, isn't it? | | | |
| 201: 24 | A: That's correct. | | | |
| 206:15 - 207:12 | Carroll, Marty 2005-10-27 | 00:00:16 | | |
| 206: 15 | Q. Did you give this order not | | | |
| 206: 16 | to initiate discussions on the result of | | | |
| 206: 17 | Vioxx GI outcomes research? Yes or no? | | | |
| 206: 18 | A. It's not a yes or no | | | |
| 206: 19 | question. | | | |
| 206: 20 | Q. Well, then, you answer the | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 206: 21 | best way you can. | | | |
| 206: 22 | A.   The best way I can is, | | | |
| 206: 23 | representatives could not initiate a | | | |
| 206: 24 | discussion on VIGOR because it was | | | |
| 207: 1 | outside the label as approved by the FDA. | | | |
| 207: 2 | It was outside company and FDA policy. | | | |
| 207: 3 | However, I believe, as the | | | |
| 207: 4 | bulletin goes on to show, there were | | | |
| 207: 5 | other avenues to respond to customer | | | |
| 207: 6 | inquiries to get the VIGOR information to | | | |
| 207: 7 | them. | | | |
| 207: 8 | So, there was no hiding of | | | |
| 207: 9 | information.  The information was being | | | |
| 207: 10 | sent out through many different channels | | | |
| 207: 11 | to make sure that physicians got the data | | | |
| 207: 12 | that they needed to have? | | | |
| | | | | |
| **210:5   -   211:5** | Carroll, Marty 2005-10-27 | 00:00:16 | | |
| 210: 5 | Q.   They can talk about whatever | | | |
| 210: 6 | they want that involves health and safety | | | |
| 210: 7 | if it's going to give the doctor | | | |
| 210: 8 | information.  Yes or no? | | | |
| 210: 9 | MR. TSOUGARAKIS:  Objection. | | | |
| 210: 10 | THE WITNESS:  They cannot | | | |
| 210: 11 | talk about just any information. | | | |
| 210: 12 | They can only talk about what the | | | |
| 210: 13 | approved label is.  Again, this | | | |
| 210: 14 | bulletin points out that there | | | |
| 210: 15 | were other avenues available to | | | |
| 210: 16 | get information to physicians upon | | | |
| 210: 17 | their request.  There was a | | | |
| 210: 18 | professional information request | | | |
| 210: 19 | that totally outlined VIGOR | | | |
| 210: 20 | completely, and that information | | | |
| 210: 21 | would be requested, and it would | | | |
| 210: 22 | be sent to the doctor directly. | | | |
| 210: 23 | And, in fact, during a | | | |
| 210: 24 | period of time, the | | | |
| 211: 1 | representatives had the PIR in | | | |
| 211: 2 | their possession so that if the | | | |
| 211: 3 | physician asked about it, they | | | |
| 211: 4 | could hand them the total VIGOR | | | |
| 211: 5 | information. | | | |
| | | | | |
| **214:20   -   215:17** | Carroll, Marty 2005-10-27 | 00:00:16 | | |
| 214: 20 | Q.   So, why is it, sir -- did | | | |
| 214: 21 | the doctors have to go out and find | | | |
| 214: 22 | VIGOR?  Did doctors have to go online and | | | |
| 214: 23 | find the results of VIGOR before they | | | |
| 214: 24 | could know the truth about VIGOR?  Is | | | |
| 215: 1 | that what you're telling me? | | | |
| 215: 2 | MR. TSOUGARAKIS:  I'll | | | |
| 215: 3 | object to the form. | | | |
| 215: 4 | THE WITNESS:  I'm telling | | | |
| 215: 5 | you that doctors were very | | | |
| 215: 6 | interested in VIGOR, and there was | | | |
| 215: 7 | over 100,000 professional | | | |
| 215: 8 | information requests that went out | | | |
| 215: 9 | to doctors on VIGOR.  It's just | | | |
| 215: 10 | that because of the regulations of | | | |
| 215: 11 | the government, FDA, the | | | |
| 215: 12 | representatives themselves cannot | | | |
| 215: 13 | speak outside the approved label. | | | |
| 215: 14 | So, there were other channels | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 215: 15 | | available, and those channels were | | |
| 215: 16 | | wide open, and physicians got the | | |
| 215: 17 | | information on VIGOR. | | |
| | | | | |
| 273:14 - | 274:18 | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 273: 14 | | Q.   So, when doctors in the | | |
| 273: 15 | | field would ask a sales representative | | |
| 273: 16 | | about the VIGOR increase, five times | | |
| 273: 17 | | increase risk of CVs, of cardiovascular | | |
| 273: 18 | | events, or when they would ask about CV, | | |
| 273: 19 | | cardiovascular events in general, there | | |
| 273: 20 | | was no response from the salespeople to | | |
| 273: 21 | | say that there was a study underway to | | |
| 273: 22 | | figure all that out? | | |
| 273: 23 | | A.   If the doctor asked about | | |
| 273: 24 | | the VIGOR study, the response would be to | | |
| 274: 1 | | provide a professional information | | |
| 274: 2 | | request directly to the doctor regarding | | |
| 274: 3 | | the VIGOR study. | | |
| 274: 4 | | Q.   Say that again. | | |
| 274: 5 | | A.   If the doctor wanted to know | | |
| 274: 6 | | more information about the VIGOR study, | | |
| 274: 7 | | the representative would provide them | | |
| 274: 8 | | with what was known as a PIR, a | | |
| 274: 9 | | professional information request, with | | |
| 274: 10 | | the entire VIGOR study results to the | | |
| 274: 11 | | doctor. | | |
| 274: 12 | | Q.   And in fairness, that was | | |
| 274: 13 | | only if the doctor asked for that PIR? | | |
| 274: 14 | | A.   It would be if the doctor | | |
| 274: 15 | | asked for it, but my recollection of the | | |
| 274: 16 | | marketplace at the time is almost every | | |
| 274: 17 | | doctor was asking for it because of the | | |
| 274: 18 | | interest in the study. | | |
| | | | | |
| 294:16 - | 294:17 | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 294: 16 | | MR. PAPANTONIO:  Give me | | |
| 294: 17 | | 1504, please. Can you give him a | | |
| | | | | |
| 295:3 - | 295:9 | Carroll, Marty 2005-10-27 | 00:00:24 | |
| 295: 3 | | Q: Do you see your name at the | | |
| 295: 4 | | top there, to Marty Carroll? | | |
| 295: 5 | | A: I do. | | |
| 295: 6 | | Q: Who is Karen Hinckley? | | |
| 295: 7 | | A: Karen Hinckley was a sales | | |
| 295: 8 | | vice president at the time probably in | | |
| 295: 9 | | the Northeast U.S. | | |
| | | | | |
| 295:12 - | 295:22 | Carroll, Marty 2005-10-27 | 00:00:25 | |
| 295: 12 | | Q: It says, 'Hi Ron and Bob, | | |
| 295: 13 | | attached are Kristin's slides from her | | |
| 295: 14 | | meeting. I like them because there is | | |
| 295: 15 | | one performance slide, the message slide | | |
| 295: 16 | | is very, very specific and the remaining | | |
| 295: 17 | | data, to be quite honest, we don't even | | |
| 295: 18 | | use.' | | |
| 295: 19 | | Now, do you see where it | | |
| 295: 20 | | says 'My suggestion for the agenda is as | | |
| 295: 21 | | follows'? Do you see that? | | |
| 295: 22 | | A: Yes. | | |
| | | | | |
| 297:1 - | 298:11 | Carroll, Marty 2005-10-27 | 00:01:02 | |
| 297: 1 | | Do you see down where it | | |
| 297: 2 | | says, 'Talk about the main' -- almost the | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 297: 3 | second to the last paragraph, it says, | | | |
| 297: 4 | 'Talk about the 4 main components of the | | | |
| 297: 5 | Vioxx Message.' Do you see that? '4 | | | |
| 297: 6 | main components of the Vioxx Message: | | | |
| 297: 7 | Efficacy,' you see, 'in acute pain?' | | | |
| 297: 8 | A:  Yes. | | | |
| 297: 9 | Q:  'Transitioning to OA.' What | | | |
| 297: 10 | does that mean? | | | |
| 297: 11 | A:  I'm not sure what that | | | |
| 297: 12 | means. | | | |
| 297: 13 | Q:  You don't know about these | | | |
| 297: 14 | four main components? | | | |
| 297: 15 | A:  I don't recall them. | | | |
| 297: 16 | Q:  'GI safety.' Do you see | | | |
| 297: 17 | that? | | | |
| 297: 18 | A:  I see that. | | | |
| 297: 19 | Q:  Do you know what GI safety | | | |
| 297: 20 | is? | | | |
| 297: 21 | A:  Yes. | | | |
| 297: 22 | Q:  What is it? | | | |
| 297: 23 | A:  The GI safety profile of the | | | |
| 297: 24 | drug. | | | |
| 298: 1 | Q:  And then 'QD efficacy,' what | | | |
| 298: 2 | does that mean? | | | |
| 298: 3 | A:  Once a day -- QD is once a | | | |
| 298: 4 | day. | | | |
| 298: 5 | Q:  So this person says, 'Talk | | | |
| 298: 6 | about the 4 main components of the Vioxx | | | |
| 298: 7 | Message.' Now, in there, is any of the | | | |
| 298: 8 | components of the Vioxx message any | | | |
| 298: 9 | mention about CV risk, cardiovascular | | | |
| 298: 10 | event risk? Do you see that in the four | | | |
| 298: 11 | main components of the message? | | | |
| **298:13  -  298:20** | Carroll, Marty 2005-10-27 | | | |
| 298: 13 | THE WITNESS:  First of all, | | **[298:13-20]** | |
| 298: 14 | I want to read the memo, if I can. | | **Pl's Obj.:**  R. 401, R. 402. | |
| 298: 15 | BY MR. PAPANTONIO: | | Waste to time. | |
| 298: 16 | Q.   Yes, go ahead.  If you find | | | |
| 298: 17 | it, please let me know. | | | |
| 298: 18 | A.   (Witness reviewing | | | |
| 298: 19 | document.) | | | |
| 298: 20 | Q.   Okay. | | | |
| **298:21  -  300:5** | Carroll, Marty 2005-10-27 | 00:01:37 | | **Barnett:**  Overruled. |
| 298: 21 | In those four main | | **[298:21-303:`2]:** | |
| 298: 22 | components, you see he was talking about | | **Def.'s Obj.:**  Foundation. | |
| 298: 23 | four main components of the Vioxx | | Witness is not familiar with | |
| 298: 24 | message -- | | the memo and is not sure | |
| 299: 1 | A:  Yes. | | what various terms contained | |
| 299: 2 | Q:  -- 'efficacy in acute pain, | | therein mean. See 299:8-9: | |
| 299: 3 | transitioning to OA, GI safety, and QD | | "I'm not familiar with the | |
| 299: 4 | efficacy.' Did you find anywhere in there | | memo." | |
| 299: 5 | that one of the components of the message | | **Pl's Resp.:**  Witness | |
| 299: 6 | should be what is the cardiovascular | | was received the document. | |
| 299: 7 | event safety? | | 300:1-2.  Permissible | |
| 299: 8 | A:  First of all, I'm not | | cross-examination. | |
| 299: 9 | familiar with the memo, so, I don't | | | |
| 299: 10 | recall it specifically, so, I'm going to | | | |
| 299: 11 | suggest that the word 'GI safety' from my | | | |
| 299: 12 | interpretation would include the CV | | | |
| 299: 13 | information. | | | |
| 299: 14 | Q:  What does 'GI' mean, | | | |
| 299: 15 | gastrointestinal? | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 299: 16 | A: Right. | | | |
| 299: 17 | Q: What does gastrointestinal | | | |
| 299: 18 | have to do with cardiovascular? | | | |
| 299: 19 | A: Well, then, I'm going to say | | | |
| 299: 20 | that I don't know the purpose of the | | | |
| 299: 21 | note, other than it looks like a note | | | |
| 299: 22 | preparing for an internal meeting, and | | | |
| 299: 23 | I'm not sure what the total components of | | | |
| 299: 24 | that meeting would be. | | | |
| 300: 1 | Q: Your name is on this; right? | | | |
| 300: 2 | A: As a cc, yes. | | | |
| 300: 3 | Q: Did you just try to tell me | | | |
| 300: 4 | that GI safety was the same thing as | | | |
| 300: 5 | cardiovascular event safety? | | | |
| **300:8 - 301:7** | Carroll, Marty 2005-10-27 | 00:00:47 | | |
| 300: 8 | THE WITNESS: I misread | | | |
| 300: 9 | that, yes. | | | |
| 300: 10 | BY MR. PAPANTONIO: | | | |
| 300: 11 | Q: So, there's no mention in | | | |
| 300: 12 | here about cardiovascular safety, is | | | |
| 300: 13 | there? If you find it, please point it | | | |
| 300: 14 | out. | | | |
| 300: 15 | A: What I'm saying is, I can't | | | |
| 300: 16 | answer that, because in the context of a | | | |
| 300: 17 | meeting, I don't know what else would be | | | |
| 300: 18 | done at the meeting. There could be | | | |
| 300: 19 | other sections, other segments. So, this | | | |
| 300: 20 | note is referring to one person and how | | | |
| 300: 21 | they might have a section of the meeting | | | |
| 300: 22 | and how they might go about that. | | | |
| 300: 23 | Q: Do you see it says, 'Talk | | **[300:23-301:7]:** | |
| 300: 24 | about the four main components of the | | **Def's Obj.:** Compound | |
| 301: 1 | Vioxx Message,' four main components. We | | question. Counsel is | |
| 301: 2 | went through them, and in none of those | | testifying. | |
| 301: 3 | four main components is there one word, | | | |
| 301: 4 | not any mention whatsoever in the Vioxx | | | |
| 301: 5 | message of cardiovascular events, | | | |
| 301: 6 | correct, strokes, MI, blood clot, nothing | | | |
| 301: 7 | in there; right? | | | |
| **301:11 - 303:12** | Carroll, Marty 2005-10-27 | 00:01:30 | **[301:11-303:12]** | **Barnett:** Overruled. |
| 301: 11 | Q: So, point it out if it's | | **Def's Obj.:** Foundation. | |
| 301: 12 | there. | | Witness not familiar with | |
| 301: 13 | A: First of all, I said that I | | the meeting (or parts thereof) | |
| 301: 14 | don't know in the context of this note | | or the document at issue: "In | |
| 301: 15 | what the total meeting was and what other | | the context of not knowing | |
| 301: 16 | sections would be. I also would point | | what else was at the meeting, | |
| 301: 17 | out that every Merck sales rep into the | | I can't suggest that this is | |
| 301: 18 | marketplace always provided balance | | what the meeting was about." | |
| 301: 19 | around benefits and safety for all the | | | |
| 301: 20 | drugs, not just Vioxx. | | **Pl's obj.:** Witness is | |
| 301: 21 | Q: Point out in this document | | being impeached. R. 607. | |
| 301: 22 | where it says anything about the sales | | Witness received document. | |
| 301: 23 | rep talking about cardiovascular safety. | | | |
| 301: 24 | Where is that? | | | |
| 302: 1 | A: I'm saying this document is | | | |
| 302: 2 | a separate document, and in the context | | | |
| 302: 3 | of not knowing what else was at the | | | |
| 302: 4 | meeting, I can't suggest that this is | | | |
| 302: 5 | what the meeting was about. | | | |
| 302: 6 | Q: But somebody told Marty | | | |
| 302: 7 | Carroll the meeting was going to take | | | |
| 302: 8 | place, didn't they? | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 302: 9 | A: Yes, somebody -- | | | |
| 302: 10 | Q: It has your name on top of | | | |
| 302: 11 | it, right? And it says, you see, 'Put up | | | |
| 302: 12 | a message slide and discuss Vioxx mantra. | | | |
| 302: 13 | What does the word 'mantra' mean to you? | | | |
| 302: 14 | A: In the context of this, I | | | |
| 302: 15 | don't know. | | | |
| 302: 16 | Q: After you got this, did you | | | |
| 302: 17 | say, well, gee, you got four main | | | |
| 302: 18 | components, those four main components | | | |
| 302: 19 | are efficacy, GI safety, transitioning | | | |
| 302: 20 | and QD. Where is something in there | | | |
| 302: 21 | about safety? You didn't write them back | | | |
| 302: 22 | and say, where is something about safety, | | | |
| 302: 23 | did you? | | | |
| 302: 24 | A: I don't recall. | | | |
| 303: 1 | Q: About cardiovascular safety? | | | |
| 303: 2 | A: I don't recall. I might | | | |
| 303: 3 | have, I might not have. | | | |
| 303: 4 | Q: It's not in that -- you | | | |
| 303: 5 | think you might have, that you might have | | | |
| 303: 6 | written back and said, hey, you know, one | | | |
| 303: 7 | of our components needs to be | | | |
| 303: 8 | cardiovascular safety when we talk about | | | |
| 303: 9 | this product? Did you remember doing | | | |
| 303: 10 | that? | | | |
| 303: 11 | A: I'm saying I don't recall | | | |
| 303: 12 | one way or the other. | | | |
| | | | | |
| 417:19 - 418:13 | Carroll, Marty 2005-10-27 | 00:00:09 | | |
| 417: 19 | Q. And if you had information, | | | |
| 417: 20 | you could pass it on, and if you didn't | | | |
| 417: 21 | have information, you weren't able to | | | |
| 417: 22 | pass it on; correct? | | | |
| 417: 23 | MR. TSOUGARAKIS: I'll | | | |
| 417: 24 | object. | | | |
| 418: 1 | THE WITNESS: First of all, | | | |
| 418: 2 | it's not about an individual, | | | |
| 418: 3 | Marty Carroll. It's about a team | | | |
| 418: 4 | at Merck and how the process is to | | | |
| 418: 5 | take information through the sales | | | |
| 418: 6 | reps to the marketplace. And as | | | |
| 418: 7 | I've described it, it's based on | | | |
| 418: 8 | the science, it's based on the | | | |
| 418: 9 | data, it goes through | | | |
| 418: 10 | medical/legal, it goes through the | | | |
| 418: 11 | FDA, and those messages go in | | | |
| 418: 12 | through the sales force to the | | | |
| 418: 13 | physician. | | | |
| | | | | |
| 418:15 - 418:20 | Carroll, Marty 2005-10-27 | 00:00:09 | | |
| 418: 15 | Q: Well, one thing Marty | | | |
| 418: 16 | Carroll has already told us today is that | | | |
| 418: 17 | money was not the motivation for Vioxx; | | | |
| 418: 18 | right? | | | |
| 418: 19 | A: I don't believe money was | | | |
| 418: 20 | the motivation for any medicine. | | | |
| | | | | |
| 419:8 - 419:20 | Carroll, Marty 2005-10-27 | 00:00:17 | **[419:8-431:9]** | |
| 419: 8 | MR. PAPANTONIO: Show him | | **Deft.'s Obj.:** Foundation | |
| 419: 9 | 1004, please. | | Witness repeatedly says | |
| 419: 10 | - - - | | he has not seen document | |
| 419: 11 | (Whereupon, Deposition | | before. Questioning witness | |
| 419: 12 | Exhibit P1.1004, Confidential | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 419: 13 | | Memo, June 21, 1999, | about document he's seeing | |
| 419: 14 | | MRK-ABL0000609 - MRK-ABL0000654, | for the first time at the | |
| 419: 15 | | was marked for identification.) | deposition is improper. | |
| 419: 16 | | - - - | See 427:2-3 ("this is the | |
| 419: 17 | | BY MR. PAPANTONIO: | first time I've seen this"); | |
| 419: 18 | | Q: Now, you were at the company | 431:16-17 ("I've never seen | |
| 419: 19 | | on June 21st, 1999, weren't you? | this document before") | |
| 419: 20 | | A: Yes. | | |
| | | | | |
| **420:6 - 420:16** | | Carroll, Marty 2005-10-27 | 00:00:18 | **PI's Resp.:** Witness is aware if the prospect of |
| 420: 6 | | Q: Do you see this document | | pill splitting and the fact that |
| 420: 7 | | that says, 'Memo Confidential' at the top | | preventing pill splitting would |
| 420: 8 | | of it? | | increase sales. Relevant |
| 420: 9 | | A: Yes. | | to Plaintiff's claim that Merck |
| 420: 10 | | Q: What does that mean when you | | put profits over people. |
| 420: 11 | | get a document that says, 'Confidential'? | | Permissible cross-examin- |
| 420: 12 | | What does that mean within the family of | | ation. |
| 420: 13 | | Merck? What is that supposed to mean? | | |
| 420: 14 | | A: It generally means it's | | |
| 420: 15 | | confidential vis-a-vis outside the | | |
| 420: 16 | | company. | | |
| | | | | |
| **420:21 - 421:3** | | Carroll, Marty 2005-10-27 | 00:00:14 | |
| 420: 21 | | Q: Now, I want to ask you | | |
| 420: 22 | | whether anybody had ever told you that | | |
| 420: 23 | | money was important for the people at | | |
| 420: 24 | | Merck as far as sales of Vioxx. Has | | |
| 421: 1 | | anybody told you that money was | | |
| 421: 2 | | important, that that was a big factor for | | |
| 421: 3 | | them? | | |
| | | | | |
| **421:7 - 423:1** | | Carroll, Marty 2005-10-27 | 00:01:39 | |
| 421: 7 | | THE WITNESS: Again, I think | | |
| 421: 8 | | what's important is patients and | | |
| 421: 9 | | the benefit to patients. Business | | |
| 421: 10 | | is important and Merck is a | | |
| 421: 11 | | business of marketing and selling | | |
| 421: 12 | | and research. And, yes, business | | |
| 421: 13 | | performance would be important, | | |
| 421: 14 | | but not to the detriment of | | |
| 421: 15 | | patients. | | |
| 421: 16 | | BY MR. PAPANTONIO: | | |
| 421: 17 | | Q: You never would want to | | |
| 421: 18 | | cause a detriment to patients, would you? | | |
| 421: 19 | | A: No. | | |
| 421: 20 | | Q: No. It wouldn't be good. | | |
| 421: 21 | | You want to do what is best for the | | |
| 421: 22 | | patient, don't you? | | |
| 421: 23 | | A: You do. | | |
| 421: 24 | | Q: That's a good policy, isn't | | |
| 422: 1 | | it? | | |
| 422: 2 | | A: Yes. | | |
| 422: 3 | | Q: How about flipping over to | | |
| 422: 4 | | Page 38 of that document? Top of the | | |
| 422: 5 | | page says, 'Vioxx Alternate Shape Tablet | | |
| 422: 6 | | and Alternate' Formulas '(12.5, 25 & 50 | | |
| 422: 7 | | mg doses).' Do you see that? | | |
| 422: 8 | | A: Yes. | | |
| 422: 9 | | Q: It says, 'Marketing | | |
| 422: 10 | | Rationale. The current 25 mg and 50 mg | | |
| 422: 11 | | tablets for Vioxx can be broke in half by | | |
| 422: 12 | | patients and can easily be cut by a pill | | |
| 422: 13 | | cutter. This represents a revenue | | |
| 422: 14 | | threat...to the flat pricing strategy for | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 422: 15<br>422: 16<br>422: 17<br>422: 18<br>422: 19<br>422: 20<br>422: 21<br>422: 22<br>422: 23<br>422: 24<br>423: 1 | Vioxx. The objective is to identify a<br>modified tablet shape for the 25 mg and<br>50 mg tablets to make the tablets more<br>difficult to break by hand in the short<br>term. In the long term, we should pursue<br>alternative formulation options...to<br>minimize tablet splitting.'<br>Did you know, sir -- did I<br>read that right, first of all? Does that<br>look right?<br>A: Yes. | | | |
| **424:3 - 424:9** | Carroll, Marty 2005-10-27 | 00:01:10 | | |
| 424: 3<br>424: 4<br>424: 5<br>424: 6<br>424: 7<br>424: 8<br>424: 9 | Q. Yeah. Why don't you tell me<br>how much free Vioxx that Merck provided?<br>A. I don't know. I just know<br>that there's a program to provide<br>medicine free.<br>Q. How about Vioxx?<br>A. All medicines. | | **[424:3-9]**<br>**Pl's Obj.:** Defendant's<br>"good acts" such as giving<br>away medicine are irrelevant.<br>R. 403. Subject of MIL.<br>The free drug program is to be<br>distinguished from giving out<br>samples. | |
| **424:24 - 426:5** | Carroll, Marty 2005-10-27 | 00:01:10 | **Def's Resp.:** Plaintiff makes<br>a big deal out of the fact that<br>Meck gave Vioxx away for<br>free in other depositions it is<br>playing. It is proper for the<br>jury to know that Merck did<br>not single out Vioxx in this<br>respect. | |
| 424: 24<br>425: 1<br>425: 2<br>425: 3<br>425: 4<br>425: 5<br>425: 6<br>425: 7<br>425: 8<br>425: 9<br>425: 10<br>425: 11<br>425: 12<br>425: 13<br>425: 14<br>425: 15<br>425: 16<br>425: 17<br>425: 18<br>425: 19<br>425: 20<br>425: 21<br>425: 22<br>425: 23<br>425: 24<br>426: 1<br>426: 2<br>426: 3<br>426: 4<br>426: 5 | Do you see 'Technical<br>Assessment'? See where it says, the<br>second paragraph, 'Worldwide Human Health<br>Marketing has suggested that some<br>patients may be encouraged by their<br>physicians to sub-divide the higher dose<br>strength Vioxx tablets in order to<br>provide multiple doses from a single<br>tablet. Because of the flat pricing<br>structure for Vioxx tablets this option<br>might be attractive to patients who are<br>motivated to save money on prescription<br>charges. To date there has been no<br>suggestion that Vioxx suspension'<br>formulas -- 'formulations might be<br>subjected to the same sub-division by<br>patients.'<br>Now, do you see the next<br>paragraph? Your company, sir, is<br>actually trying to figure out how to<br>prevent people from splitting your pills<br>in half so they can save money. Do you<br>see it?<br>'The best way to discourage<br>sub-division of pharmaceutical dosage<br>forms (tablets or suspensions) is to<br>market doses which are not exact<br>multiples and to avoid linear pricing<br>wherever possible.'<br>Do you see that? | | | |
| **426:11 - 426:13** | Carroll, Marty 2005-10-27 | 00:00:03 | | |
| 426: 11<br>426: 12<br>426: 13 | Q: Do you see that language?<br>Yes.<br>A: I see that language, yes. | | | |
| **426:23 - 427:24** | Carroll, Marty 2005-10-27 | 00:00:50 | | |
| 426: 23<br>426: 24<br>427: 1<br>427: 2<br>427: 3 | Q: Did you ever know that? Is<br>this the first time you've ever seen<br>this?<br>A: A couple things. This is<br>the first time I've seen this. In the | | | |

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 427: 4 | context of the document, it says | | | |
| 427: 5 | 'alternate.' It could be an alternate | | | |
| 427: 6 | strategy, it could be a thought process. | | | |
| 427: 7 | And again, in terms of | | | |
| 427: 8 | tablet splitting, there is a lot of | | | |
| 427: 9 | debate about that. Some physicians and | | | |
| 427: 10 | pharmacists will be uncomfortable with | | | |
| 427: 11 | tablet splitting because the appropriate | | | |
| 427: 12 | dose is not being achieved. | | | |
| 427: 13 | Q:  That's not what this says. | | | |
| 427: 14 | This doesn't say anything about | | | |
| 427: 15 | appropriate dose. This says, 'The | | | |
| 427: 16 | current 25 and 50 milligram tablets for | | | |
| 427: 17 | Vioxx can be broke in half and can easily | | | |
| 427: 18 | be cut by a pill cutter. This,' read | | | |
| 427: 19 | this with me, just so there's no question | | | |
| 427: 20 | that this ain't about patients. 'This | | | |
| 427: 21 | represents a revenue threat.' Do you see | | | |
| 427: 22 | that? It doesn't say a patient threat. | | | |
| 427: 23 | It says a 'revenue threat.' What is | | | |
| 427: 24 | revenue? | | | |
| **428:4  -  428:16** | Carroll, Marty 2005-10-27 | 00:00:13 | | |
| 428: 4 | Q:  What is revenue, Mr. | | | |
| 428: 5 | Carroll? | | | |
| 428: 6 | A:  Revenue would be sales of a | | | |
| 428: 7 | product. | | | |
| 428: 8 | Q:  And that's what you were in | | | |
| 428: 9 | charge of, is sales of the product; | | | |
| 428: 10 | right? | | | |
| 428: 11 | A:  I had responsibility for the | | | |
| 428: 12 | sales organization. | | | |
| 428: 13 | Q:  And that was revenue? | | | |
| 428: 14 | A:  Everybody in the | | | |
| 428: 15 | organization had responsibility for | | | |
| 428: 16 | revenue. | | | |
| **429:17  -  430:22** | Carroll, Marty 2005-10-27 | 00:00:13 | | |
| 429: 17 | THE WITNESS:  This document, | | | |
| 429: 18 | I don't have the context of.  It | | | |
| 429: 19 | says "alternate." It could have | | | |
| 429: 20 | been a strategy plan.  It's 1999. | | | |
| 429: 21 | And to my knowledge, the product | | | |
| 429: 22 | never was changed in any way. | | | |
| 429: 23 | BY MR. PAPANTONIO: | | | |
| 429: 24 | Q.   It was, wasn't it?  You | | **[429:24-430:22]** | |
| 430: 1 | don't know that it was changed, but if I | | **Pl's Obj.:**  Witness's | |
| 430: 2 | were to tell you it was changed, you | | testimony that he took Vioxx | |
| 430: 3 | don't know whether that's true or false, | | is irrelevant and prejudicial. | |
| 430: 4 | do you? | | Subject of MIL. | |
| 430: 5 | A.   No.  I took the product, so | | | |
| 430: 6 | I would know if it was changed and -- | | | |
| 430: 7 | Q.   And could you split your | | | |
| 430: 8 | pill? | | | |
| 430: 9 | A.   I didn't attempt to split my | | | |
| 430: 10 | pill. | | | |
| 430: 11 | Q.   Was the pill that you got, | | | |
| 430: 12 | the pill that you were selling to | | | |
| 430: 13 | doctors, was it a pill that could be | | | |
| 430: 14 | split or subdivided at any time that you | | | |
| 430: 15 | know of? | | | |
| 430: 16 | MR. TSOUGARAKIS:  Objection. | | | |
| 430: 17 | THE WITNESS:  All I'm | | | |
| 430: 18 | pointing out is this is an | | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 430: 19<br>430: 20<br>430: 21<br>430: 22 | alternate strategy, and some<br>people might have had this<br>opinion, but in the end, the<br>product was never changed. | | |
| **430:24 - 431:2**   Carroll, Marty 2005-10-27 | | 00:00:06 | |
| 430: 24<br>431: 1<br>431: 2 | Q:  Well, do you know, sir, how<br>they went about changing the pill so it<br>could not be subdivided? | **[430:24] - [431:9]**<br>**Deft's Obj.:** Counsel<br>testifying (incorrectly). | |
| **431:4 - 431:9**   Carroll, Marty 2005-10-27 | | 00:00:07 | Question without an answer<br>at 431:9. |
| 431: 4<br>431: 5<br>431: 6<br>431: 7<br>431: 8<br>431: 9 | THE WITNESS:  If they had<br>done that, which I don't think<br>they did, they would have to<br>reformulate the product.<br>BY MR. PAPANTONIO:<br>Q:  And you know they did? | Further, the witness said<br>the exact opposite | |
| **431:13 - 432:1**   Carroll, Marty 2005-10-27 | | 00:00:07 | |
| 431: 13<br>431: 14<br>431: 15<br>431: 16<br>431: 17<br>431: 18<br>431: 19<br>431: 20<br>431: 21<br>431: 22<br>431: 23<br>431: 24<br>432: 1 | Q.   Do you?  So, this is the<br>first time you've ever seen this, isn't<br>it?<br>A.   I've never seen this<br>document before.<br>Q.   But this company was all<br>about the patients, wasn't it?  Patients<br>first, not profit, patient first?  That's<br>what Mr. Carroll telling us today, all<br>about the patient?<br>A.   That's what I'm telling you<br>today, and the company was about patients<br>first and is about patients first. | | |
| **432:2 - 432:5**   Carroll, Marty 2005-10-27 | | 00:00:13 | |
| 432: 2<br>432: 3<br>432: 4<br>432: 5 | MR. PAPANTONIO:  Give me<br>667, please. Excuse me, 140. 140<br>first. While we are on this topic<br>about patient first, show me 140. | | |
| **432:13 - 433:8**   Carroll, Marty 2005-10-27 | | 00:00:38 | |
| 432: 13<br>432: 14<br>432: 15<br>432: 16<br>432: 17<br>432: 18<br>432: 19<br>432: 20<br>432: 21<br>432: 22<br>432: 23<br>432: 24<br>433: 1<br>433: 2<br>433: 3<br>433: 4<br>433: 5<br>433: 6<br>433: 7 | Q:  Were you with the company in<br>1998, sir?<br>A:  Yes.<br>MR. PAPANTONIO:  Show him<br>140, please.<br>BY MR. PAPANTONIO:<br>Q:  Do you see the date up top<br>there, 1998?<br>A:  Yes.<br>Q:  Do you see your name down<br>there anywhere?<br>A:  I do.<br>Q:  J.M. Carroll, that's you,<br>isn't it?<br>A:  That's me.<br>Q:  And it's from D.W. Anstice.<br>Tell us who that is.<br>A:  David Anstice ran all the<br>marketing and sales group, and he was my | | |

Dedrick v. Merck Co., Inc.
Case 2:05-md-01657-EEF-DEK Document 8641-6 Filed 11/10/06 Page 37 of 43
Plaintiffs and Defendant's Designations of J. Martin Carroll

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 433: 8 | | boss. | | |
| **434:6 - 434:9** | | Carroll, Marty 2005-10-27 | 00:00:10 | |
| 434: 6 | | Q: Okay. | | |
| 434: 7 | | This is an organizational | | |
| 434: 8 | | chart; right? It says 'David W. Anstice' | | |
| 434: 9 | | at the top? | | |
| **434:16 - 436:17** | | Carroll, Marty 2005-10-27 | 00:01:56 | |
| 434: 16 | | Q: See that? | | |
| 434: 17 | | A: Yes, I've got it. | | |
| 434: 18 | | Q: And then underneath it says, | | |
| 434: 19 | | right up underneath it has 'Martin | | |
| 434: 20 | | Carroll.' Do you see that? | | |
| 434: 21 | | A: Yes. | | |
| 434: 22 | | Q: So, as far as the pecking | | |
| 434: 23 | | order, David Anstice was the president of | | |
| 434: 24 | | the Americas. What does that mean? | | |
| 435: 1 | | A: That meant Canada, the U.S. | | |
| 435: 2 | | and South and Latin America. | | |
| 435: 3 | | Q: So, he was Canada, U.S. and | | |
| 435: 4 | | South and Latin America; right? | | |
| 435: 5 | | A: Yes. | | |
| 435: 6 | | Q: And right up underneath him | | |
| 435: 7 | | there is Wendy Dixon and then there's | | |
| 435: 8 | | Martin Carroll; correct? | | |
| 435: 9 | | A: Yes. | | |
| 435: 10 | | Q: Now, this letter that I | | |
| 435: 11 | | showed you before I showed you that is a | | |
| 435: 12 | | memo to Martin Carroll from D.W. Anstice; | | |
| 435: 13 | | correct? | | |
| 435: 14 | | A: Yes. There was a number of | | |
| 435: 15 | | people on it, but I'm included. | | |
| 435: 16 | | Q: And it says, 'Subject: | | |
| 435: 17 | | Vioxx.' 'Battle is now joined with | | |
| 435: 18 | | Pfizer in another major therapeutic area | | |
| 435: 19 | | and one which is CRITICAL to Merck from | | |
| 435: 20 | | 2000 onward.' | | |
| 435: 21 | | Can you tell me why the | | |
| 435: 22 | | battle was so critical for Merck? In | | |
| 435: 23 | | 1998, why was this battle so critical for | | |
| 435: 24 | | Merck? | | |
| 436: 1 | | A: Like any new launched | | |
| 436: 2 | | product, you want to make sure that you | | |
| 436: 3 | | have good marketing positions, good | | |
| 436: 4 | | plans, and that you execute well. In my | | |
| 436: 5 | | opinion, David was merely calling to | | |
| 436: 6 | | action the team to make sure that we were | | |
| 436: 7 | | prepared for the launch of Vioxx. | | |
| 436: 8 | | Q: And did you know that prior | | |
| 436: 9 | | to the launch of Vioxx, sir, that there | | |
| 436: 10 | | had not been one single clinical test | | |
| 436: 11 | | that was done to try to determine what | | |
| 436: 12 | | the relationship was between CV events | | |
| 436: 13 | | and Vioxx? Did you know that prior to | | |
| 436: 14 | | the time -- when you got this letter in | | |
| 436: 15 | | your hand, did you know not one single | | |
| 436: 16 | | long-term clinical data test had been | | |
| 436: 17 | | done? | | |
| **436:20 - 437:15** | | Carroll, Marty 2005-10-27 | 00:00:36 | |
| 436: 20 | | Q: Did you know that? | | |
| 436: 21 | | A: I don't recall whether I | | |
| 436: 22 | | knew that or didn't know that back then. | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 436: 23 | Q: But we're not talking about | | |
| 436: 24 | data here. We're talking about the | | |
| 437: 1 | 'Battle is now...with Pfizer in another | | |
| 437: 2 | major therapeutic area and one which is | | |
| 437: 3 | CRITICAL to Merck from 2000 onward.' It | | |
| 437: 4 | goes on to say, 'We should assume Pfizer | | |
| 437: 5 | will promote Celebrex everywhere.' And | | |
| 437: 6 | then it says -- | | |
| 437: 7 | MR. PAPANTONIO: Blow that | | |
| 437: 8 | up. | | |
| 437: 9 | BY MR. PAPANTONIO: | | |
| 437: 10 | Q: It says, 'We simply CANNOT | | |
| 437: 11 | LOSE in any single market in The | | |
| 437: 12 | Americas.' Why could you not lose? Why | | |
| 437: 13 | was it so important that you not be able | | |
| 437: 14 | to lose in this fight with Pfizer? Why | | |
| 437: 15 | is that so important? | | |
| | | | |
| **437:18  -  439:13** | Carroll, Marty 2005-10-27 | 00:01:11 | |
| 437: 18 | THE WITNESS: Any new | | |
| 437: 19 | product launch is important. In | | |
| 437: 20 | this particular case, Vioxx was a | | |
| 437: 21 | great product, and it was | | |
| 437: 22 | important that we take that data | | |
| 437: 23 | into the marketplace. It was | | |
| 437: 24 | going to benefit patients. And | | |
| 438: 1 | from a marketing and sales point | | |
| 438: 2 | of view, it's David challenging | | |
| 438: 3 | the team to make sure that we're | | |
| 438: 4 | prepared to do that well. | | |
| 438: 5 | BY MR. PAPANTONIO: | | |
| 438: 6 | Q: Well, did you know, sir -- | | |
| 438: 7 | did you know what the financial situation | | |
| 438: 8 | was for Merck at the time that Vioxx was | | |
| 438: 9 | put on the market? At the time that you | | |
| 438: 10 | launched -- at the time -- let me say it | | |
| 438: 11 | this way. | | |
| 438: 12 | At the time that Mr. Anstice | | |
| 438: 13 | was talking about how critical this | | |
| 438: 14 | battle was for Merck, do you know what | | |
| 438: 15 | the financial situation was for Merck at | | |
| 438: 16 | that time? | | |
| 438: 17 | A: As far as I remember, it was | | |
| 438: 18 | very strong because we had launched a | | |
| 438: 19 | number of new products between '95 and | | |
| 438: 20 | '99. | | |
| 438: 21 | Q: It's your belief that the | | |
| 438: 22 | financial situation was strong? | | |
| 438: 23 | A: That's what I recall. | | |
| 438: 24 | Q: Do you remember being in any | | |
| 439: 1 | competition with Pfizer on any other | | |
| 439: 2 | products? | | |
| 439: 3 | A: Absolutely. | | |
| 439: 4 | Q: Which ones? | | |
| 439: 5 | A: A lot of them. | | |
| 439: 6 | Q: Tell me which ones you were | | |
| 439: 7 | in competition with Pfizer with. | | |
| 439: 8 | A: The one I remember the most | | |
| 439: 9 | was Zocor and Lipitor. | | |
| 439: 10 | Q: Right. | | |
| 439: 11 | And they were killing you in | | |
| 439: 12 | sales, weren't they? | | |
| 439: 13 | A: Lipitor was doing very well. | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| **442:21 - 443:11** | Carroll, Marty 2005-10-27   00:01:11 | | |
| 442: 21 | Q.   And how many other products | | |
| 442: 22 | out -- you had ibuprofen out there; | | |
| 442: 23 | right?  You had Aleve; correct?  You had | | |
| 442: 24 | Celebrex already out there; correct?  You | | |
| 443: 1 | had aspirin already out there; correct? | | |
| 443: 2 | You had a whole list of analgesics that | | |
| 443: 3 | were already on the market that people | | |
| 443: 4 | could use if they wanted to use them; | | |
| 443: 5 | correct? | | |
| 443: 6 | A.   There were a number of | | |
| 443: 7 | choices, but as physicians and patients | | |
| 443: 8 | will tell you, increasing that number of | | |
| 443: 9 | choices, especially with a product that | | |
| 443: 10 | potentially provided stomach protection, | | |
| 443: 11 | is a very important medical improvement. | | |
| | | | |
| **445:1 - 445:5** | Carroll, Marty 2005-10-27   00:00:15 | | |
| 445: 1 | Q:  You've seen this? | | |
| 445: 2 | A:  No, I haven't seen it. | | |
| 445: 3 | You're refreshing my mind, but I don't | | |
| 445: 4 | specifically recall it, so I am going to | | |
| 445: 5 | quickly scan it. | | |
| | | | |
| **445:10 - 446:8** | Carroll, Marty 2005-10-27   00:01:00 | | |
| 445: 10 | Q:  You knew, sir, at the time | | |
| 445: 11 | that Vioxx was being launched, that Merck | | |
| 445: 12 | needed Vioxx because patents that you had | | |
| 445: 13 | on other drugs were getting ready to | | |
| 445: 14 | expire?  You knew that; right? | | |
| 445: 15 | A:  I knew that there was a | | |
| 445: 16 | number of patent expirations in 2001, 2 | | |
| 445: 17 | and 3. | | |
| 445: 18 | Q:  Those were Merck drugs? | | |
| 445: 19 | A:  Right. | | |
| 445: 20 | Q:  And you knew that what that | | |
| 445: 21 | would do would open the door to less | | |
| 445: 22 | expensive generic versions of the same | | |
| 445: 23 | drug; right? | | |
| 445: 24 | A:  Which is good for the | | |
| 446: 1 | consumer. | | |
| 446: 2 | Q:  Right. | | |
| 446: 3 | But it's not good for Merck? | | |
| 446: 4 | A:  From a business point of | | |
| 446: 5 | view, when you have scientific | | |
| 446: 6 | advancements and they run the course of | | |
| 446: 7 | patents, they run the course of patents, | | |
| 446: 8 | and that's why you have innovation. | | |
| | | | |
| **446:9 - 446:16** | Carroll, Marty 2005-10-27   00:00:24 | | |
| 446:  9 | Q.   So, you think it was good | | |
| 446: 10 | that Merck -- you're trying to tell me, | | |
| 446: 11 | you are thinking that Merck was happy | | |
| 446: 12 | that they were getting ready to lose | | |
| 446: 13 | their patents on drugs? | | |
| 446: 14 | A.   I didn't say that.  I said | | |
| 446: 15 | it was good for patients who could go to | | |
| 446: 16 | generics at that point. | | |
| | | | |
| **446:17 - 447:5** | Carroll, Marty 2005-10-27 | | |
| 446: 17 | Q:  But it wasn't good for | | |
| 446: 18 | Merck, was it? | | |
| 446: 19 | A:  Merck needed to make sure | | |

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 446: 20 | that it grew the existing brands it had. | | |
| 446: 21 | Q:  At the same time, you knew | | |
| 446: 22 | there was a slow down that was taking | | |
| 446: 23 | place in sales growth of the big | | |
| 446: 24 | cholesterol drug franchises. There was | | |
| 447: 1 | an actual slow down in that growth, you | | |
| 447: 2 | knew that; right? | | |
| 447: 3 | A:  Zocor was growing, but it | | |
| 447: 4 | was slower because it had competition in | | |
| 447: 5 | the marketplace. | | |
| | | | |
| **448:14  -  449:6** | Carroll, Marty 2005-10-27 | 00:00:25 | |
| 448: 14 | Q:  And you knew that Merck -- | | |
| 448: 15 | that Pfizer was already on the market | | |
| 448: 16 | with its product Celebrex when y'all came | | |
| 448: 17 | along; right? | | |
| 448: 18 | A:  Yes. | | |
| 448: 19 | Q:  They had beat you to the | | |
| 448: 20 | market? | | |
| 448: 21 | A:  They were in the market five | | |
| 448: 22 | or six months before the approval and | | |
| 448: 23 | launch of Vioxx. | | |
| 448: 24 | Q:  And because of that, it was | | |
| 449: 1 | critical that you try to catch up with | | |
| 449: 2 | Celebrex; right? | | |
| 449: 3 | A:  It was critical to launch | | |
| 449: 4 | the product well, and it was critical | | |
| 449: 5 | from a competitive point of view to try | | |
| 449: 6 | to win in that marketplace. | | |
| | | | |
| **469:11  -  469:17** | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 469: 11 | Q:  Now, why was it so important | | |
| 469: 12 | to catch up with Celebrex? Why was it so | | |
| 469: 13 | important that your company was in this | | |
| 469: 14 | race with Celebrex? | | |
| 469: 15 | A:  I just see this as the usual | | |
| 469: 16 | competitive interaction in the | | |
| 469: 17 | marketplace. | | |
| | | | |
| **484:5  -  484:16** | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 484: 5 | Q.   Do you know that sometimes | | |
| 484: 6 | pharmaceutical companies, very often | | |
| 484: 7 | pharmaceutical companies send these news | | |
| 484: 8 | releases, these video news releases out | | |
| 484: 9 | to news organizations so they can have | | |
| 484: 10 | information about a new product? | | |
| 484: 11 | A.   I'm not familiar one way or | | |
| 484: 12 | the other with that. | | |
| 484: 13 | Q.   So, is this the first time | | |
| 484: 14 | you've ever seen a video news release? | | |
| 484: 15 | A.   I have seen video news | | |
| 484: 16 | releases. | | |
| | | | |
| **484:19  -  484:22** | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 484: 19 | Q.   Which ones have you seen? | | |
| 484: 20 | A.   I don't recall specifically. | | |
| 484: 21 | But the concept of a news release, I have | | |
| 484: 22 | seen. | | |
| | | | |
| **486:3  -  486:9** | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 486: 3 | Q.   Why can't you answer?  Do | | |
| 486: 4 | you know the difference between wrong and | | |
| 486: 5 | right? | | |
| 486: 6 | A.   I know the difference | | |

Dedrick v. Merck Co., Inc.
Case 2:05-md-01657-EEF-DEK Document 6014-3 Filed 07/28/06 Page 41 of 43
Plaintiffs' and Defendant's Designations of J. Martin Carroll

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 486: 7 | between wrong and right, and I know that | | |
| 486: 8 | Merck would always do the right thing in | | |
| 486: 9 | any channel they went out with. | | |
| | | | |
| 516:19 - 517:19 | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 516: 19 | What is it you don't | | **[516:19-517:19]** |
| 516: 20 | understand about my question? You are | | **Pl's obj.:** There is no |
| 516: 21 | the president of a pharmaceutical | | context to this testimony. |
| 516: 22 | company. | | Lack of foundation. The |
| 516: 23 | MR. TSOUGARAKIS: There's no | | subject of the testimony |
| 516: 24 | need to yell. | | testimony is not clear. |
| 517: 1 | BY MR. PAPANTONIO: | | Based on question at lines |
| 517: 2 | Q. You're the president of a | | 19-20, it is obvious that |
| 517: 3 | pharmaceutical company; right? | | another question is pending. |
| 517: 4 | MR. TSOUGARAKIS: All right. | | Improper designation. |
| 517: 5 | BY MR. PAPANTONIO: | | **Def's Resp.:** Plaintiff's |
| 517: 6 | Q. As we sit here right now, | | counsel (Papantonio) is |
| 517: 7 | you are the president of a pharmaceutical | | completely out of line |
| 517: 8 | company. You're telling me that you | | throughout much of the |
| 517: 9 | don't know whether a pharmaceutical | | deposition. This helps put it |
| 517: 10 | company has the right at any time to pull | | in context for the jury. |
| 517: 11 | a product off the market if they suspect | | |
| 517: 12 | the product may not be safe? | | |
| 517: 13 | MR. TSOUGARAKIS: I'll | | |
| 517: 14 | object to the form. | | |
| 517: 15 | THE WITNESS: The only thing | | |
| 517: 16 | I can comment on that is that if a | | |
| 517: 17 | company wanted to take a product | | |
| 517: 18 | off the market voluntarily, they | | |
| 517: 19 | could do it. But it doesn't -- | | |
| | | | |
| 532:11 - 532:17 | Carroll, Marty 2005-10-27 | 00:00:16 | |
| 532: 11 | Q. In 2001, you're telling me | | |
| 532: 12 | the American public, doctors had no | | |
| 532: 13 | concern of the safety of Vioxx? Is that | | |
| 532: 14 | Martin Carroll's testimony today? | | |
| 532: 15 | A. What I'm saying is that | | |
| 532: 16 | within Merck, the data that we had did | | |
| 532: 17 | not suggest any safety issues. | | |
| | | | |
| 557:24 - 558:3 | Carroll, Marty 2005-10-27 | | |
| 557: 24 | Q. Well, you would be able to | | **[557:24-558:3]** |
| 558: 1 | tell me -- you remembered this meeting, | | **Def's Obj.:** Relevance. |
| 558: 2 | didn't you? | | In the course of this Q & A, |
| 558: 3 | A. This meeting I remembered. | | plaintiff's counsel is asking |
| | | | the witness about many |
| | | | meetings. This clip is |
| | | | completely out of context. |
| | | | **Pl's Resp.:** Witness is |
| | | | referring to the launch |
| | | | meeting and says he |
| | | | remembers it. It was at the |
| | | | launch meeting that the |
| | | | video was recorded. |
| | | | |
| 560:21 - 563:2 | Carroll, Marty 2005-10-27 | | |
| 560: 21 | Q. Right. | | **[560:21-563:2]** |
| 560: 22 | A. The launch, we did have | | **Def's Obj.:** Improper |
| 560: 23 | 3,000 people. | | question. Plaintiff's counsel |
| 560: 24 | Q. You said there were 3 or | | cherry-picks a portion of a |
| 561: 1 | 4,000 people there? | | video (i) without setting any |
| 561: 2 | A. That's correct. | | context, and (ii) then cuts |
| 561: 3 | MR. PAPANTONIO: Okay. | | witness off and won't let him |

Dedrick v. Merck Co., Inc.

| Designated Testimony of J. Martin Carroll | | Objections | Rulings |
|---|---|---|---|
| 561: 4 | Well, let's see -- let's see clip | properly answer -- See 565:3-7 | |
| 561: 5 | number 4. | and proceeds to badger him | |
| 561: 6 | (Whereupon, the following | with his questions.  If | |
| 561: 7 | video was played:) | testimony allowed, Merck | |
| 561: 8 | "MR. CARROLL:  Next we | reserves the right to counter | |
| 561: 9 | talked about this at the 2T.  Even | with additional testimony | |
| 561: 10 | though we're focused on patients, | about the launch to help | |
| 561: 11 | even though that's important, at | put this in context. | |
| 561: 12 | least I, and I think all of you | **PI's Resp.:**  Video is a | |
| 561: 13 | say, it is payback time. | recording of witness speaking | |
| 561: 14 | (Applause.) | at the launch meeting for | |
| 561: 15 | "MR. CARROLL:  We talked | Vioxx.  There is nothing | |
| 561: 16 | about it, we've got the product, | improper about asking | |
| 561: 17 | we've got the best sales | questions of the witness about | |
| 561: 18 | organization, and we're going to | his remarks.  No context is | |
| 561: 19 | win. | needed. | |
| 561: 20 | "Now, I have to remind you, | | |
| 561: 21 | though, even though this victory | | |
| 561: 22 | will taste very sweet and by the | | |
| 561: 23 | end of the year we will be tasting | | |
| 561: 24 | this victory, I know, | | |
| 562: 1 | nevertheless, our focus is on the | | |
| 562: 2 | broad market.  It is COX-2s, it is | | |
| 562: 3 | branded NSAIDs and it is OTCs. | | |
| 562: 4 | This market has many players, our | | |
| 562: 5 | physicians have many options, and | | |
| 562: 6 | we have to be a winner across all | | |
| 562: 7 | of these alternatives. | | |
| 562: 8 | "Now, here's another benefit | | |
| 562: 9 | of winning in this market. | | |
| 562: 10 | Access.  You've already given us a | | |
| 562: 11 | lot of stories back in the first | | |
| 562: 12 | two or three weeks where you | | |
| 562: 13 | gained access with this great | | |
| 562: 14 | product.  Use it to win on access. | | |
| 562: 15 | Use it to get in to see those hard | | |
| 562: 16 | to see physicians with this great | | |
| 562: 17 | product, and then use Vioxx to win | | |
| 562: 18 | with your other products, build | | |
| 562: 19 | that longer-term relationship. | | |
| 562: 20 | That's another way that Vioxx is | | |
| 562: 21 | going to help us win." | | |
| 562: 22 | BY MR. PAPANTONIO: | | |
| 562: 23 | Q.   Now, would you please tell | **[562:23-563:1]** | |
| 562: 24 | me what payback time is?  What is payback | **Def's Obj.:**  Question without | |
| 563: 1 | time? | an answer.  Plaintiff's | |
| 563: 2 | A.   Payback time was -- | counsel won't let witness | |
| | | answer. | |
| **563:3   -   563:24** | Carroll, Marty 2005-10-27 | | |
| 563: 3 | Q.   This is -- first of all, | | |
| 563: 4 | this is you? | | |
| 563: 5 | A.   That's me.  It's a little | | |
| 563: 6 | younger me, but it's me. | | |
| 563: 7 | Q.   And you're talking about | | |
| 563: 8 | payback time.  Tell the jury what payback | | |
| 563: 9 | time is here. | | |
| 563: 10 | A.   Well, first of all, we only | | |
| 563: 11 | saw a portion of the clip.  And if you | | |
| 563: 12 | saw the whole clip, you would see the | | |
| 563: 13 | context of patients are first, great | | |
| 563: 14 | product, and part of the speech is to | | |
| 563: 15 | bring the morale of the sales force up to | | |
| 563: 16 | be ready to launch the product. | | |
| 563: 17 | In terms of payback time, it | | |

Dedrick v. Merck Co., Inc.
Case 2:05-md-01657-EEF-DEK Document 8614-8 Filed 11/21/06 Page 43 of 43
Plaintiffs and Defendant's Designations of J. Marty Carroll

| Designated Testimony of J. Martin Carroll | | | Objections | Rulings |
|---|---|---|---|---|
| 563: 18 | | was a very competitive market.  These | | |
| 563: 19 | | representatives had been out there with | | |
| 563: 20 | | Zocor and Lipitor, and they were in a | | |
| 563: 21 | | position where I think they feel -- felt | | |
| 563: 22 | | like they had a great product to go out | | |
| 563: 23 | | and win against Pfizer.  And that's | | |
| 563: 24 | | what -- | | |
| **564:1** - | **564:5** | Carroll, Marty 2005-10-27 | **[564:1-565:2]** | |
| 564: 1 | | Q.   So what's payback?  Who were | **Def's Obj.:**  Plaintiff's counsel | |
| 564: 2 | | you paying back? | completely cuts off witness. He | |
| 564: 3 | | A.   In the marketplace, take a | is argumentative and | |
| 564: 4 | | great product and win competitively | completely over the top in the | |
| 564: 5 | | against Pfizer/Celebrex. | full transcript.  He is not letting | |
| | | | witness answer questions | |
| **565:1** - | **565:2** | Carroll, Marty 2005-10-27 | and is trying to put words in | |
| 565: 1 | | 1      Q.   Is it?  That's not a very | Mr. Carroll's mouth. | |
| 565: 2 | | 2   good payback? | **Pl's Resp.:** Witness's | |
| | | | answer appears at lines 3-5. | |
| **565:3** - | **565:7** | Carroll, Marty 2005-10-27 | | |
| 565: 3 | | A.   I don't get a question | | |
| 565: 4 | | there.  We were talking about a clip | | |
| 565: 5 | | where I was at a launch meeting, and you | | |
| 565: 6 | | went to a whole different place.  I don't | | |
| 565: 7 | | agree that there -- | | |
| **567:11** - | **567:15** | Carroll, Marty 2005-10-27 | | |
| 567: 11 | | Q.   Whatever you want to say. | | |
| 567: 12 | | A.   Merck put a good product | | |
| 567: 13 | | into the marketplace.  They had the | | |
| 567: 14 | | science behind it.  They worked closely | | |
| 567: 15 | | with the FDA. | | |