UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L - DIVISION 3 |
| | * | |
| This document relates to | * | JUDGE FALLON |
| CASE NO. 2:05CV2524 | * | |
| | * | |
| ANTHONY WAYNE DEDRICK, | * | MAG. JUDGE KNOWLES |
| an Individual, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

## PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO PRESENT EVIDENCE, OR IN THE ALTERNATIVE, FOR MISTRIAL

Prior to the trial of this case, Plaintiff Anthony Dedrick moved the Court for an order excluding any evidence, discussion or argument that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market on September 30, 2004.

In a Pre-trial Conference on November 21, 2006, the Court made the following statements regarding Plaintiff's motion to exclude evidence that Merck employees and former employees used Vioxx, specifically in regard to Dr. Edward Scolnick:

> I understand the issue with Scolnick. I'm going to, I'm not going to let it in on Scolnick. As I have said several times, I think this is not a relevance issue, it's a 401 clearly it's relevant. It's a 403 issue. And the 403 issue in this instance has more to do with the fact that this drug is case

1

specific, and some people it apparently and may adversely affect others it may not. Therefore, the specific risk factors, the knowledge of this as a warning case also, so what the person knew, or when they knew it, comes into play. What their medical background was, what their risk factors were, all of that comes into play, and if I let it in, then I have to let the plaintiffs or the other side go into all the other factors, and we begin getting away from the issue at hand. So in the 403, it's not a question only of balancing it. It's a question of confusion, it's a question of misleading. That's the way I see it for the most part.

See Transcript of November 21, 2006, at 59-60. The Court granted Plaintiff's motion on November 22, 2006, ruling that evidence of personal use of Vioxx by Merck employees and former employees would not be allowed at the trial of this case. See Order on Motions in Limine, at 6.

On November 29, 2006, Counsel for Merck asked the Court to reconsider its ruling and allow testimony from Dr. Scolnick that he used Vioxx. The Court denied that motion.

```
                            675
20       THE COURT: THE JURY IS OUT OF THE ROOM AND COUNSEL
21  HAS A MOTION TO MAKE OR COMMENT TO MAKE.
22       MR. BECK: YES, YOUR HONOR. IN THE DEPOSITION
23  DESIGNATION OF DR. SCOLNICK, THERE'S A PORTION WHERE HE
24  EXPLAINS HOW HE PERSONALLY TOOK VIOXX. YOUR HONOR HAD
25  SUSTAINED THE OBJECTIONS TO THAT.

                            676
1        I HAD ASKED THAT YOUR HONOR LISTEN WHEN THE
2   DESIGNATIONS WERE PLAYED BECAUSE, AS YOU HAVE SAID BEFORE, IT
3   IS RELEVANT, THAT IT'S A 403 QUESTION OF BALANCING THE
4   PREJUDICIAL EFFECT, AND SOMETIMES THE PENDULUM SWINGS THE OTHER
5   WAY WHEN THERE'S A PERSONAL ATTACK ON A WITNESS.
6        THE FIRST 10 OR 15 MINUTES OF THIS DEPOSITION,
7   IN MY JUDGMENT, WAS A CLEAR PERSONAL ATTACK. THERE WAS VERY
8   LITTLE SUBSTANCE. IT STARTED WITH A LAWYER WITH A SNEERING
9   VOICE ACCUSING THE WITNESS OF HAVING PREPPED USING A CERTAIN
10  DOCUMENT WHEN ANYBODY WHO HAS READ THE TRANSCRIPT KNOWS THAT
11  THE ANSWER IS GOING TO BE, "NO, I HAVEN'T SEEN IT BEFORE."
12  THEN IT'S TALKING ABOUT BOILING SOMEBODY IN OIL. THE WHOLE
13  PASSAGE FOR 10 OR 15 MINUTES IS A SNEERING TONE, SHOUTING AT
14  THE WITNESS, IN AN ATTEMPT TO HUMILIATE THE WITNESS, AND
15  THERE'S VERY LITTLE SUBSTANCE THERE.
16       MR. BIRCHFIELD GETS TO DECIDE WHAT HE WANTS TO
17  PLAY AND WHAT HE DOESN'T WANT TO PLAY. HE DECIDED TO PLAY
18  THAT. IN OUR VIEW, IT REALLY SWINGS THE THING BACK TO WHERE WE
```

```
19  OUGHT TO BE ABLE TO SHOW THAT THIS WITNESS, WHO HAS BEEN
20  SUBJECT TO THIS PERSONAL ATTACK, IN FACT, BELIEVES SO MUCH IN
21  THE MEDICINE THAT HE TOOK VIOXX HIMSELF.
22       MR. BIRCHFIELD: YOUR HONOR, FIRST OF ALL, IT'S NOT A
23  PERSONAL ATTACK, AND IT IS QUITE SURPRISING THAT HE SAYS THAT
24  HE HAS NEVER SEEN AN E-MAIL THAT HE WROTE. IT IS HIGHLY
25  SUBSTANTIVE BECAUSE WHAT IT SHOWS IS HIS RESPONSE TO SOMEONE

                            677
 1  WHO RAISES CONCERNS ABOUT THE CARDIOVASCULAR SAFETY OF VIOXX.
 2  IT MATCHES PERFECTLY WITH THE THEME OF OUR CASE ABOUT HOW MERCK
 3  CONSISTENTLY RESPONDED TO CONCERNS, AND IT DID NOT RISE TO THE
 4  LEVEL OF A PERSONAL ATTACK.
 5       MR. BECK: THIS ILLUSTRATES THE PROBLEM. ANDY SAYS
 6  HE SAID HE NEVER SAW THE E-MAIL, AND THAT MAY BE THE IMPRESSION
 7  THAT WAS LEFT BY THE TONE OF VOICE OF THE QUESTIONER, BUT THE
 8  ACTUAL QUESTION WAS:
 9       "Q. I BET YOU'VE SEEN THIS E-MAIL IN THE LAST TWO
10    DAYS, GETTING READY FOR THIS DEPOSITION, HAVEN'T YOU?"
11       "A. ACTUALLY, NO."
12       SO THE WAY THAT ANDY HEARS THE TESTIMONY IS PRECISELY
13  ONE OF THE PROBLEMS BECAUSE THE TONE OF VOICE IS SO SNEERING
14  AND DISBELIEVING THAT IT OVERWHELMS THE SUBSTANCE OF THE
15  TESTIMONY.
16       THE COURT: I UNDERSTAND THE ISSUE. I HAVE
17  CONSIDERED IT AND I'VE LISTENED TO THE WHOLE DEPOSITION. IN
18  FACT, THIS IS SEVERAL TIMES THAT I HAVE LISTENED TO THE
19  DEPOSITION. FRANKLY, I DON'T KNOW WHETHER IT HELPS OR HURTS
20  THE PLAINTIFFS. **IN ANY EVENT, I DON'T FEEL IT RISES TO THE**
21  **LEVEL OF PERSONAL ATTACK OTHER THAN JUST HIS CREDIBILITY, AND I**
22  **WILL OVERRULE THE MOTION TO RECONSIDER.** THANK YOU VERY MUCH,
23  BOTH OF YOU.
```

See Transcript at 675-677 (emphasis added).

The video designations of Defendant's examination of Dr. Scolnick were given to Plaintiff for review. Plaintiff reviewed the transcript and corresponding video. Testimony regarding Dr. Scolnick's use of Vioxx was not included. See Ex. A (testimony of Dr. Scolnick's personal use of Vioxx appears on p. 919:2-920:1 of his deposition). Plaintiff approved the transcript. See Email of Frank Woodson to Brian O'Donoghue (November 28, 2006) (Ex. B).

Today, while playing the deposition of Dr. Scolnick, Defendant violated the Court's Order by playing the testimony that had previously been disallowed by the Court:[1]

```
                              1395
17  Q.  BEFORE THE VIGOR RESULTS CAME OUT, HAD YOU USED VIOXX
18  PERSONALLY?
19  A.  YES.
20  Q.  FOR WHAT CONDITION?
21  A.  I HAVE A CHRONIC SCIATIC NERVE PROBLEM DUE TO A DISC AND A
22  BACK FUSION THAT WAS DONE IN THE LATE '70S.
23  Q.  HOW OFTEN DID YOU TAKE VIOXX BEFORE THE VIGOR RESULTS CAME
24  OUT.
25  A.  ON THE AVERAGE, ONCE OR TWICE A WEEK, SOMETIMES SEVERAL

                              1396
1  DAYS IN A ROW WHEN I TRAVELED, BUT ON THE AVERAGE, ONCE OR
2  TWICE A WEEK.
3  Q.  AFTER THE VIGOR RESULTS CAME OUT AND SHOWED A DIFFERENCE
4  BETWEEN VIOXX AND NAPROXEN, DID YOU STOP TAKING VIOXX?
5  A.  NO. I USED IT IN THE SAME WAY.
6  Q.  DID YOU HAVE ANY CONCERN THAT YOU WERE PUTTING YOUR HEALTH
7  AT RISK BY TAKING VIOXX?
8  A.  NO, I DID NOT.
```

By inserting this testimony into the trial of this case, Merck essentially attempts to put forward a "trump" card – if Merck employees took the drug, it must be safe.

This violative testimony severely prejudices Plaintiff. The violative testimony substantially increases Plaintiff's burden of proving that Vioxx increases the risk of heart attack.

The limiting instruction given by the Court today was inadequate to eliminate the severe prejudice suffered by the Plaintiff. It is well known that you cannot "un-ring the bell." In fact, the limiting instruction may have caused further damage by focusing even more attention on the violative testimony.

---

[1] This is not the first time that Merck has violated the Court's order on a motion in limine regarding this subject. In *Irvin 1 v. Merck*, Counsel asked Dr. Alise Reicin about her personal use of Vioxx in violation of the Court's prior ruling on a motion in limine. See *Irvin 2 v. Merck*, Transcript at 1710.

4

Because the inclusion of this testimony increases Plaintiff's burden of proving that Vioxx increases the risk of heart attack tremendously, Plaintiff moves the Court for leave to play the following testimony of Dr. Scolnick that was previously disallowed by the Court.

Scolnick 644.14-644.16    644:14-644:16

```
644:14        Q.    Merck's stock price had a nice run up
644:15   in the first few years after Vioxx was introduced to
644:16   the market; isn't that true?
```

Scolnick 644.19-644.23    644:19-644:23

```
644:19             THE WITNESS:  Merck's stock price
644:20   went up associated with the approval of Vioxx, yes.
644:21   BY MR. BUCHANAN:
644:22        Q.    Did you understand what I meant when
644:23   I said, "had a nice run-up"?
```

es64502    645:2-646:18

```
645: 2             THE WITNESS:  I understand that.
645: 3   What I think you meant is that the price went up.
645: 4   BY MR. BUCHANAN:
645: 5        Q.    In fact, you benefited personally
645: 6   from that stock appreciation; right?
645: 7        A.    Yes, I did.
645: 8        Q.    You sold $32 million worth of stock
645: 9   on October 25th, 2000; isn't that right?
645:10        A.    That's correct.
645:11        Q.    You sold $32 million worth of stock
645:12   -- well, October 25th, 2000, that's the week after
645:13   Deborah Shapiro did a heart attack meta-analysis;
645:14   right?
645:15        A.    I don't remember when she did the
645:16   heart attack meta-analysis.
645:17        Q.    Well, the heart attack meta-analysis
645:18   we looked at earlier, that's dated October 18, 2000;
645:19   right?
645:20        A.    Yes.  That's a document I don't
645:21   recall seeing, as I've told you.
645:22        Q.    And seven days later you unloaded $32
645:23   million worth of Merck stock; true?
645:24        A.    Yes.  And I planned to do that for a
```

```
645:25     couple of months.
646: page 646
646: 1       Q.    I see.
646: 2             Well, you'll notice you can file an
646: 3     intent with the Securities and Exchange Commission
646: 4     indicating that you plan to sell securities; right?
646: 5       A.    Whatever I did, I asked the legal
646: 6     department for advice and followed whatever rules
646: 7     existed at that time through the Merck legal
646: 8     department. I always consulted them.
646: 9       Q.    You sold $32 million worth of stock
646:10     at $85 a share; right?
646:11       A.    I have to take your word for it. I
646:12     don't remember.
646:13       Q.    Well, do you remember selling stock
646:14     in the fall of 2000 --
646:15       A.    Yes.
646:16       Q.    -- at virtually an all time high?
646:17       A.    I remember the stock price was
646:18     elevated, yes, and it was very high.

es64725    647:25-648:9

647:25       Q.    Sir, Merck hasn't seen $85 a share
648: page 648
648: 1     since the fall of 2000; right?
648: 2       A.    To the best of my knowledge, that's
648: 3     correct.
648: 4       Q.    All right.
648: 5             So, a week after Deborah Shapiro's
648: 6     heart attack meta-analysis, you were able to capture
648: 7     $32 million in proceeds from a stock sale at the
648: 8     highest price Merck has seen in, what, five years;
648: 9     is that true?

es64812    648:12-648:13

648:12             THE WITNESS: I captured half of
648:13     that. That is correct.

es65011    650:11-650:12

650:11       Q.    Sir, you've got an interest in Merck
650:12     stock staying at its current value; true?

es65014    650:14-650:15
```

    650:14    THE WITNESS: I would prefer Merck
    650:15  stock to stay up rather than be down, yes.

    If the Court rules that Plaintiff may not play the testimony requested, in the alternative, Plaintiff requests that the Court allow Plaintiff additional time to introduce evidence in his case-in-chief. Specifically, Plaintiff requests that the Court allow Plaintiff one additional day of testimony during which Dr. Colin Funk would be allowed to testify. Dr. Funk's testimony is essential to counter the highly prejudicial and unfair testimony offered by Defendant in violation of the Court's clear rulings. The violation of the Court's order has unfairly and quite substantially elevated Plaintiff's burden of persuasion in this case, and the additional testimony is necessary to mitigate the damage caused by this violation.

    Lastly, in the alternative, Plaintiff moves the Court for a mistrial of this case. As the Court has said on a number of occasions, once a "skunk is in the box," one cannot get it out. Indeed, Merck's pernicious behavior today by playing the testimony of Dr. Edward Scolnick in violation of the Court's clear rulings has now caused there to be a "skunk in the box."

    Plaintiff urges the Court to grant his motion by allowing the testimony of Dr. Scolnick's $32 million stock sale, by allowing Plaintiff additional time to put on the testimony of Dr. Colin Funk, or by ordering a mistrial of this case.

Date:  December 1, 2006

                        Respectfully submitted,

By _____
Andy D. Birchfield, Jr.
P. Leigh O'Dell
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
234 Commerce Street
Montgomery, Alabama  36103-4160
Telephone:  (334) 269-2343
Facsimile: (334) 954-7555

Counsel for Plaintiff

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
 **Plaintiffs' Liaison Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

**Christopher A. Seeger**, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelley Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W.
Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

**PLAINTIFF'S STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Motion for Additional Time to Present Evidence or, in the alternative, for Mistrial has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail, on Merck's Counsel, Douglas R. Marvin and Philip S. Beck, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 2nd day of December, 2006.

_P. Leigh O'Dell_
P. Leigh O'Dell
Attorney for Plaintiff
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

# EXHIBIT A

**Scolnick Merck cross**

|   |   |   |   |
|---|---|---|---|
| | | 913:8 | accepted their hypothesis based on all our |
| | | 913:9 | discussions, I still thought we needed even more |
| | | 913:10 | data to have 1,000 percent certainty. |
| 95 | 913:24-914:6 | Scolnick, Edward 2005-06-01   00:00:21 | |
| | | 913:24 | Q: Dr. Scolnick, after you wrote this |
| | | 913:25 | e-mail to Alise Reicin on April 12, 2000, did Merck |
| | | 914:1 | continue to collect and analyze data about Vioxx |
| | | 914:2 | during the year 2000? |
| | | 914:3 | A: Yes. We continually looked at the |
| | | 914:4 | updated, ongoing trial database to see if there was |
| | | 914:5 | a difference between Vioxx and the other |
| | | 914:6 | nonsteroidals. |
| 96 | 918:16-919:1 | Scolnick, Edward 2005-06-01   00:00:32 | |
| | | 918:16 | Q: Dr. Scolnick, did you consider taking |
| | | 918:17 | Vioxx off the market in light of the VIGOR results? |
| | | 918:18 | A: No, not at all. I never considered |
| | | 918:19 | taking it off the market. As you know, I told you |
| | | 918:20 | what my initial reaction was, and in the context of |
| | | 918:21 | that initial reaction, I considered what kind of |
| | | 918:22 | labeling we would have. But as the data evolved and |
| | | 918:23 | there was no evidence to support my initial |
| | | 918:24 | reaction, I never considered taking it off the |
| | | 918:25 | market at all, even though I hadn't even considered |
| | | 919:1 | it in the beginning. |
| 101 | 920:10-920:24 | Scolnick, Edward 2005-06-01   00:00:55 | |
| | | 920:10 | Q: Did you ever share your thoughts |
| | | 920:11 | after you had seen all the data relating to naproxen |
| | | 920:12 | and Vioxx and placebo, did you ever share your |
| | | 920:13 | feeling that you believed there was no safety |
| | | 920:14 | problem with Vioxx? |
| | | 920:15 | A: Yes. I told people that all the |
| | | 920:16 | evidence we had was completely consistent with the |
| | | 920:17 | fact that naproxen was cardioprotective, that one |
| | | 920:18 | could not exclude any effect of Vioxx, because that |
| | | 920:19 | was trying to prove a negative, and that was very |
| | | 920:20 | difficult to do in science, and those were the kinds |
| | | 920:21 | of statements I would make to people. |
| | | 920:22 | Q: Dr. Scolnick, I want to show you a |
| | | 920:23 | document we'll mark as Exhibit 105. It has the |
| | | 920:24 | numbers MRK-ACT0009918. |
| 102 | 921:6-922:4 | Scolnick, Edward 2005-06-01   00:01:15 | |
| | | 921:6 | Q: Can you identify for us the e-mail |
| | | 921:7 | that appears in the middle of the page on Exhibit |
| | | 921:8 | 105? |

# EXHIBIT B

**Melisa Bruner**

From: Frank Woodson
Sent: Tuesday, November 28, 2006 11:24 AM
To: 'Brian.ODonoghue@bartlit-beck.com'
Cc: Leigh O'Dell; Melisa Bruner
Subject: Re:

We have completed review and it is ok to play.  Can you send me your Topol playlist so we can review that quickly please

-----Original Message-----
From: O'Donoghue, Brian <Brian.ODonoghue@bartlit-beck.com>
To: Frank Woodson
Sent: Tue Nov 28 11:11:50 2006
Subject:

Any word on our Scolnick video yet?

Thanks.

Brian O'Donoghue
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60610
312-494-4402 (office)
312-494-4440 (fax)
Brian.ODonoghue@bartlit-beck.com
http://www.bartlit-beck.com

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged.  This communication is the property of Bartlit Beck Herman Palenchar & Scott LLP and is intended only for the use of the addressee.  If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is prohibited.

1