**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No.  05-2524 | * | |
| | * | MAGISTRATE |
| ANTHONY WAYNE DEDRICK, | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION OF MERCK & CO., INC. ("MERCK") TO
PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO PRESENT
EVIDENCE, OR IN THE ALTERNATIVE, FOR MISTRIAL**

Merck's counsel has already apologized to the Court and plaintiff's counsel for mistakenly playing the personal use portion of Dr. Scolnick's testimony.  Merck regrets the error.

Mr. Beck informed the Court and plaintiff's counsel that he would try to determine what happened.  He has done so.  In addition to a "master" version of the video containing all the testimony that Merck initially designated, Merck's technical consultant had with him on his laptop computer two other versions that he had prepared at the request of Merck's trial team. One reflected all of the Court's rulings to date.  Another reflected the Court's rulings, except that it included Dr. Scolnick's testimony on his personal use of Vioxx, to be used *only* if the Court granted Merck's motion to reconsider its ruling on that issue.  After the Court denied Merck's

request to reconsider that ruling (Nov. 29, 2006 Tr. at 675:22-677:23), a lawyer from Merck's trial team instructed the technical consultant to play the correct version that reflected all of the Court's rulings.  Unfortunately, Merck's technician made a mistake.  He typed in the wrong keystrokes – "Z4" instead of "Z4A" – and played the "master" version.

As it happens, there is no difference between the "master" version and the correct version up until the point of the personal use testimony.  Once the video reached that point and Mr. Beck understood that an incorrect version was being played, he stopped the video, asked for a sidebar, informed the Court what had happened, apologized, and agreed to a corrective instruction.

The Court's curative instruction to the jury was the appropriate response and fully resolves the issue:

> Members of the jury, we're going to stop here; but before we do so, let me make a comment.  You've heard testimony about Dr. Scolnick's personal use of the drug.  I've excluded that part of the testimony.  It should not have been played to you.  The reason I excluded it is because the question of personal use is germane to who is using it.  One person may be able to use it, and another person may not be able to use it.  So rather than have a person say, "I used it," out of context -- we don't know his background, we don't know his risk factors, we don't know his atherosclerosis situation, we don't know anything about that.  So that, in and of itself, is not relevant, and that's why I excluded that testimony. Unfortunately, through just a technical problem, it came in.  No one intended it.  It just came in.  So I ask you to disregard that because I personally feel that it's not relevant and should not be considered by you.

(Dec. 2, 2006 Tr. at 1401:24-1402:15.)

Plaintiff now seeks to capitalize on the technician's slip-up by asking, in the alternative, (1) for a mistrial; (2) to play unrelated testimony by Dr. Scolnick concerning his sale of stock; or (3) for additional time to present the unrelated testimony of Dr. Funk.  Each of these requests should be rejected:

- *A mistrial would be a gross overreaction to an innocent mistake.* The Court repeatedly has permitted personal use testimony in the past. Although the Court exercised its discretion under Rule 403 to exclude personal use testimony in this instance, it could have chosen to exercise its discretion to allow it, as it has done in earlier trials. Thus, Merck's mistake, although unfortunate, is not the sort of error that warrants a mistrial. In *Plunkett I*, Mr. Birchfield's team made exactly the same sort of error, playing testimony from Mr. Anstice's deposition concerning executive compensation and stock options that the Court had excluded. The Court gave a curative instruction, just as it did here. No one thought a mistrial was warranted then, and it is not warranted now.

- *The Court should not reconsider its denial of plaintiff's request to admit the unrelated testimony of Dr. Scolnick's stock sale.* The Court already denied plaintiff's request to play the stock sale testimony – which would in essence be an evidentiary sanction – and instead issued its curative instruction. (Dec. 2, 2006 Tr. at 1400:13-1401:16.)

- *An inadvertent mistake by Merck's technical consultant should not result in a windfall of additional time to the plaintiff.* Plaintiff's counsel stubbornly refused to trim his case despite repeated warnings from both the Court and Merck's counsel that plaintiff would run out of time. This is a problem of plaintiff's own making and is wholly unrelated to the unintended error of Merck's technical assistant. Plaintiff's motion should be denied.

## I.   MISTRIAL IS UNWARRANTED UNDER THE CIRCUMSTANCES.

Mistrial is an extraordinary remedy and is unwarranted. "As a general matter, the decision whether to grant a mistrial is within the sound discretion of the district court." *McQuaig v. McCoy*, 806 F.2d 1298, 1303 (5th Cir. 1987) (internal quotation omitted). "Mistrials seriously impede the judicial process. Denials of a mistrial are deemed to be an abuse of discretion only in extraordinary situations." *Underwood v. Colonial Penn Ins. Co.*, 888 F.2d 588, 590 (8th Cir. 1989). And "[m]istrial is not justified if an affirmative direction to disregard is issued to the jury and it does not appear that the challenged remarks infected the verdict." *Orjias v. Stevenson*, 31 F.3d 995, 1005-06 (10th Cir. 1994); *see also McQuaig v. McCoy*, 806 F.2d at 1303 (affirming district court's denial of motion for mistrial after court gave curative instruction to disregard certain prejudicial testimony). Here, the Court immediately gave a curative instruction, so the prejudice, if any, to plaintiff was slight.

Moreover, the Court's prior rulings on the personal use issue demonstrate that the Rule 403 balance is a fine one, and the decision on admissibility of personal use testimony can go either way, depending on the circumstances.  Thus, on several prior occasions the Court has ruled that evidence of personal use of Vioxx by Merck employees or their family members is admissible.  In other instances, the Court decided to exclude the evidence under Rule 403, or to permit it only after plaintiff attacked the credibility of a Merck employee.

For example, in *Plunkett I* and *Plunkett II*, the Court allowed testimony on personal use. As the Court explained:

> Phil, for example, brought up the issue about the person [Dr. Reicin] taking Vioxx.  I can see where at this point that might have some relevance because of the attack on her credibility that's going to be launched with the [NEJM's Expression of Concern] . . .  My thinking on that is that I would let her do that now because it does go to the credibility.

(Feb. 3, 2006 *Plunkett II* Tr. at at 9:4-9.)[1]

In *Barnett* and *Mason*, the Court precluded Dr. Reicin's personal use testimony, finding that, in those particular cases, the prejudice outweighed the probative value.  (*See* Aug. 14, 2006 *Barnett* Tr. at 2275:17-2276:2:   "I've rethought the position with Dr. Reicin.  This is the way I see it.  Although it's relevant to her, I think that 403 predominates in favor of not allowing her to do it";  Oct. 16, 2006 *Mason* Order re Plaintiff's Motions *in Limine*.)

But in *Smith*, the Court again concluded that the equities favored admissibility and allowed Merck to question Dr. Reicin about personal use on re-direct, on the ground that plaintiff's counsel had attacked her credibility on cross-examination.  (*See* Sept. 21, 2006 *Smith*

---

[1] Thus, plaintiff's assertion in footnote 1 of his motion that Merck elicited personal use testimony from Dr. Reicin "in violation of the Court's prior ruling on a motion in limine" is false. Moreover, the transcript reference that plaintiff cites – p. 1710 of the *Plunkett II* transcript – is testimony of Dr. Morrison (not Dr. Reicin) that has nothing to do with personal use.

Tr. at 2505:20-2507:12.)   Dr. Reicin was permitted to testify that she used Vioxx "often for prolonged periods of time." (*Id.*)   Whether or not to admit this testimony is a judgment call committed to the sound discretion of the Court.  *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 355 (5th Cir. 1995) (evidentiary rulings are reviewed under the abuse-of-discretion standard).  This is hardly the sort of mistake that warrants a mistrial.

Ironically, in *Plunkett I*, Mr. Birchfield's team made a virtually identical blunder to the one made by Merck in this case, although the source of their mistake was never explained.  In that case, although the Court had granted Merck's motion *in limine* to exclude evidence of employee compensation, plaintiff accidentally played testimony from David Anstice's deposition on the issue.  The Court's remedy was a curative instruction, not a mistrial:

> Q.    So Merck has got to make sure they have got money coming in the door to pay all these things, don't they?
>
> A.    Yes.
>
> Q.    Not the least of which they have got to pay you, don't they?
>
> A.    They have to pay all 60,000 of our people.
>
> Q.    Yes.  But, I mean, you executives.  Y'all are some of the highest-paid executives in the industry, aren't you?
>
> A.    I think we're comparatively well paid.
>
> Q.    I mean, you get millions and millions of dollars in stock options in -- in some years, don't you?  So it is important to keep the money in, coming in to Merck, so that Merck can keep paying you and everybody else.  Right?
>
> A.    It's important to keep finding products to bring them to market and to generate revenues, yes.
>
> Q.    And Merck hit a point where it wasn't going to have any more money coming in on the Pepcid and some of these other

drugs that had been keeping the machine going.  Right?

A.      Patent expirations were going to reduce revenues for those products, correct.

Q.      And "reduce revenues for those products" -- you are an economics major -- in everyday talk, that means y'all aren't going to get as much money anymore.  Right?

A.      Those products will have less sales.

Q.      So Merck has really invested a lot of hopes and plans in Vioxx to pick up the slack for the year 2000-2001 --

Mr. Beck: Your Honor, can we approach?

The Court: Stop it.

(Whereupon, the following proceedings were held at  the bench.)

The Court:      I thought you went over this.  What's the page?  I thought that was excluded.

Mr. Beck: Yes, there was a whole --

Mr. Robinson: It was--

Mr. Beck: May I state my objection?

The Court: Yes.

Mr. Beck: There was a specific objection to the business about the financial stuff and paying salaries and the stock options, and the objection was sustained and it was just made for the jury.

Mr. Robinson: No, the salary part wasn't; it was the stock options.  That was the one question added.  We had cut that out.  I don't know how that got back in.

The Court: I thought you all checked it.

Mr. Robinson: We did.

Mr. Beck: We were given a play list, but we haven't had a chance to review the video.

Mr. Robinson: I didn't mean to put the stock option
in at all.

The Court: It has nothing to do with the case.  That
was clearly sustained.  I remember sustaining it.

(Whereupon, the following proceedings were held in open court.)

The Court: Members of the jury, there was some
question about the amounts paid to employees and things of that
sort.  That has nothing to do with this litigation, nothing
whatsoever.  There was some comment made about employees' pay
and supervisors' pay or officers' pay.  That has nothing to do
with this litigation, nothing whatsoever to do with this
litigation.  You are to disregard that because that's not what
we're here for.  That, inadvertently, was left in when I
instructed the parties to exclude it.  It should not have been
a part of this record.  To that extent, I tell you to exclude
and disregard that portion of the testimony.  All right.  Let's
continue, please.

(Nov. 30, 2005 *Plunkett I* Tr. at 427:14-430:25 (Test. of Anstice).)

## II.  THERE IS NO JUSTIFICATION FOR PLAYING UNRELATED VIDEO TESTIMONY OF DR. SCOLNICK.

The Court already denied plaintiff's request to play Dr. Scolnick's unrelated testimony

regarding the sale of stock in retribution for Merck's error.  (Dec. 2, 2006 Tr. at 1400:13-

1401:16.)  This is essentially a request for an evidentiary sanction, and is unwarranted.  In a

lengthy, complicated trial such as this one, mistakes are bound to happen, and have happened by

both sides   None of these trespasses resulted in the imposition of an evidentiary sanction.

Otherwise, the trial would devolve into a series of "make-up calls" where any inadvertent

mention of inadmissible evidence results in an intentional introduction of more inadmissible

evidence – all to offset the supposed effects of matters the Court has already instructed the jury

to disregard.  The Scolnick stock sale testimony has nothing to do with his personal use

testimony.  The Court should stand by its earlier ruling.

### III.     PLAINTIFF SHOULD NOT BE PERMITTED MORE TIME TO PUT ON DR. FUNK.

Both the Court and Merck's counsel have on many occasions urged plaintiff's lawyers to trim their case because they would run out of time.  (*See*, *e.g.*, Nov. 30, 2006 at 986:4-5:  The Court:  "Let's not retread all of these things, counsel.  You are going to run out of time.").  But they made little effort to cut back either the number of witnesses or the witnesses' testimony.  By way of example, plaintiff spent several hours putting on Dr. Moye, yet only a few minutes of his testimony had anything to do with Vioxx.  The balance of his testimony was then largely repeated by Dr. Arnett.  Plaintiff also spent hours dwelling on subjects that have little or no relevance to this case, such as marketing efforts that predated the April 2002 label and all-cause mortality.

One of the few things plaintiff did in an attempt to finish on time is to jettison Dr. Funk.  Merck never objected to Dr. Funk and in fact withdrew its *Daubert* motion directed to his testimony.  Cutting Dr. Funk was the plaintiff's own decision and had nothing to do with the error, nor does plaintiff's effort to reinstate him have anything to do with Merck's mistake.  Plaintiff cannot use this unfortunate error as an excuse to get more time to put on his case.

Moreover, Merck would be prejudiced if it has to delay putting on its case.  All of its witnesses are from out of town and have limited availability.  For example, Merck's lead witness, Dr. Morrison, has scheduling issues that require his testimony to go forward as planned on Wednesday.

### IV.     CONCLUSION.

Merck takes its obligations to comply with the Court's orders very seriously, and regrets the error.  The inadvertent single-keystroke mistake of its technical consultant, however, should

not serve as a springboard for plaintiff to introduce otherwise objectionable testimony, obtain additional time to reinstate a witness he has dropped, or obtain a mistrial.  The Court's prompt instruction cured any prejudice plaintiff may have suffered.  Thus, the Court should deny the motion.

Dated:  December 3, 2006                         Respectfully submitted,


                                                 */s/ Dorothy H. Wimberly*_____
                                                 Phillip A. Wittmann, 13625
                                                 Dorothy H. Wimberly, 18509
                                                 STONE PIGMAN WALTHER
                                                 WITTMANN L.L.C.
                                                 546 Carondelet Street
                                                 New Orleans, Louisiana  70130
                                                 Phone:  504-581-3200
                                                 Fax:     504-581-3361

                                                 Defendants' Liaison Counsel

                                                 Philip S. Beck
                                                 Mark Ouweleen
                                                 Carrie Jablonski
                                                 BARTLIT BECK HERMAN PALENCHAR
                                                 & SCOTT LLP
                                                 54 West Hubbard Street, Suite 300
                                                 Chicago, Illinois  60610
                                                 Phone:  312-494-4400
                                                 Fax:     312-494-4440

                                                 Douglas Marvin
                                                 Elaine Horn
                                                 WILLIAMS & CONNOLLY LLP
                                                 725 Twelfth Street, N.W.
                                                 Washington, D.C.  20005
                                                 Phone:  202-434-5000
                                                 Fax:     202-434-5029

                                                 And

Brian S. Currey
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Opposition Of Merck & Co., Inc. ("Merck") To Plaintiff's Motion For Additional Time To Present Evidence, Or In The Alternative, For Mistrial has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Dedrick, Andy Birchfield, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of December, 2006.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel