## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: VIOXX PRODUCTS     |     **MDL Docket No. 1657**
LIABILITY LITIGATION     |
    |
    |
**THIS DOCUMENT RELATES TO**     |     **Judge Eldon Fallon**
      **06-CV-1951**     |     **Magistrate Judge Knowles**

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Sarah E. Nichols, submits the following Response and Opposition to the Motion for Summary Judgment filed by G. Randolph Schrodt, Jr., M.D. and Integrative Psychiatry, LLC (collectively "defendants").

## I.  INTRODUCTION

As a initial matter, Ms. Nichols maintains her position that the Court lacks subject matter jurisdiction over this case due to lack of diversity of citizenship.  Therefore the Court may not issue *any* orders:  "Without jurisdiction, the court cannot proceed at all in any case."[1]  Instead, the Court should decide Ms. Nichols' motion to remand this case to the Kentucky state court where it began.[2]  The remand issue must be decided before the Court considers the present motion: "If at any time before final judgment it appears that the district court lacks subject matter

---

[1]  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) (citation omitted); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over the subject matter and the parties.").

[2]  Ms. Nichols moved the Western District of Kentucky to remand this case before it was transferred to the current MDL action.

jurisdiction, the case shall be remanded."[3]  In fact, defendants made this exact same argument in the Western District of Kentucky before this case was transferred.[4]

Thus, in the interest of judicial economy and the applicable authority, the jurisdictional issue must be resolved before proceeding further.  Nevertheless, and in the event the Court decides to hear defendant's current motion, Ms. Nichols responds below.

## II.  RESPONSE TO MOTION

### A.  Introduction

Defendants erroneously frame the issue before the Court.  Citation to the applicable limitations period is useless until it is determined at what time the cause of action accrued.  The true issue for the Court – which presents material issues of genuine fact – is when Ms. Nichols knew or should have known that defendants' conduct was a substantial factor in the death of her mother.

Defendants cannot deny that before calculating the applicable statue of limitations period, it must first be determined when that cause of action came into existence.  Yet oddly defendants fail to address this pivotal issue, and instead simply pick a date – without any discussion of the relevant authority or evidence in the record – upon which they would like to begin the limitations period.  Defendants thus mistakenly put the cart before the horse in their analysis.  The Court should ignore defendants' erroneous and misleading issue statement, and instead focus on when the cause of action arose.  Only then can the limitations period be determined.

---

[3]  28 U.S.C. § 1447(c); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction.").

[4]  Defendants' Motion to Dismiss and Response to Plaintiff's Motion for Remand ("'the jurisdictional issue [diversity jurisdiction] must be resolved before deciding whether to stay or transfer the case to the MDL panel.'"), *quoting Farkas v. Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107, 1115 (W.D. Ky. 2000).

Therefore, the true issue is framed as follows: Kentucky law provides that a cause of action against a medical provider, or an action involving a dangerous product and latent injury, accrues on "***the date the plaintiff knew or should have discovered 'not only that he has been injured but also that his injury may have been caused by the defendant's conduct***."[5]  Here, September 30, 2004 is the earliest possible day that Ms. Nichols could have discovered that Defendants' conduct substantially contributed to the death of her mother, Sarah G. Nichols.  This is the day that Merck & Company, Inc. ("Merck") issued its recall of VIOXX.[6]  On September 28, 2005, the estate of Sarah G. Nichols then filed this action within the one year time period permitted by KRS 413.140(1)(e).[7]

Ms. Nichols filed this action timely.  Defendants may eventually dispute the date that Ms. Nichols knew or should have known that her mother's death occurred due to their negligence. Until that factual dispute is resolved, however, summary judgment is inappropriate.[8]  What's more, defendants' motion offers no evidence that suggests when they believe the cause of action accrued.

---

[5]  *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 818-19 (Ky. 1991) (emphasis added), *quoting Louisville Trust Co. v. Johns-Manville Products*, 580 S.W.2d 497, 501 (Ky. 1979); KRS 413.140(2).

[6]  *See* Exhibit 2, Merck Worldwide Withdrawal of VIOXX.  This document is admission by a party opponent under FRE 801(d)(2), printed from Merck's website at the address shown.

[7]  *Worldwide Equipment v. Mullins*, 11 S.W.3d 50, 59 (Ky. App. 2000) (Wrongful death actions are governed by the one-year statute of limitations for personal injury actions contained in KRS 413.140).

[8]  *Hackworth v. Hart*, 474 S.W.2d 377, 380 (Ky. 1971); *Johnson v. Sandoz Pharmaceuticals Corp.*, 24 Fed.Appx. 533, 538 (6th Cir. 2001) (applying Kentucky law); *see also Imes v. Touma*, 784 F.2d 756, 758 (6th Cir. 1986) (applying Kentucky law, holding that whether plaintiff should have known that the injury was the result of negligence was a fact question not properly decided on summary judgment.).

Thus, not only is defendants' motion substantively wrong, it is also procedurally defective.  Defendants offer no evidence that bears on the crucial issue, namely, when this cause of action accrued.  The only verified evidence on ths issue is Ms. Nichols' affidavit attached to this response.  It is well-settled that the moving party bears the initial burden to show the absence of a genuine issue of material fact.  Defendants' motion fails to even attempt to carry this heavy burden, and thus must be denied.

Finally, a related factual issue exists as to whether Merck and the defendants fraudulently concealed the risks posed by VIOXX, thereby tolling the applicable statute of limitations until Ms. Nichols' discovered the fraud.  Kentucky law recognizes that tolling of the limitations period occurs where there is some evidence of fraudulent concealment, active deception, or misleading conduct.[9]  Under this line of authority, the limitations period does not begin to run until the plaintiff discovers, or should discover, the fraud and that the cause of action existed.  This aspect of the discovery rule creates factual issues for the jury, and therefore summary judgment is inappropriate on this basis as well.

### B.  Factual Background

Sarah Elizabeth Nichols filed this action upon behalf of the estate of her mother, Sarah Gulledge Nichols, on September 28, 2005.   Defendant, G. Randolph Schrodt, M.D., a psychiatrist, prescribed VIOXX to Ms. Nichols' mother regularly until her untimely death on

---

[9]  *See, e.g., McCollum v. Sisters of Charity*, 799 S.W.2d 15, 19 (1990) ("Since an issue of material fact exists as to whether the hospital in these five cases fraudulently concealed information or misled appellants, it was improper for the circuit court to grant appellees' motion for summary judgment."); *St. Clair v. Bardstown Transfer Line*, 221 S.W.2d 679, 681 (Ky. 1949).

May 1, 2003, at the age of 60.[10]  On September 30, 2004, Ms. Nichols learned that VIOXX may have contributed to her mother's pulmonary thromboembolism that resulted in her death.[11]

Initially, Hilliard Lyons was appointed the executor of the estate.  Ms. Nichols, however, assumed this role on September 9, 2005, within a year of her discovery that Dr. Schrodt's prescriptions of VIOXX contributed to her mother's death.  Ms. Nichols filed this case shortly thereafter.

Merck manufactured and marketed VIOXX beginning in 1999.  A detailed history of the drug, its development and subsequent recall, are outlined in Ms. Nichols' complaint.  Needless to say, Merck aggressively marketed and promoted VIOXX despite inadequate study of its effects on the cardiovascular system, and despite a mountain of evidence indicating that it caused negative cardiovascular events in a large number of consumers.  Merck continued to promote VIOXX in the face of scientific evidence that it was dangerous, and even downplayed or concealed the relevant studies to ensure that doctors prescribed it.[12]  The extent to which defendants knew or should have known that VIOXX was not safe for consumers, as well as the larger issue of when Ms. Nichols knew or should have known of defendants' negligence, are factual issues that prohibit summary judgment at this early stage.

---

[10]  *See* Plaintiff Profile Form, p. 6.

[11]  *See* Exhibit 3, Affidavit of Sarah E. Nichols, ¶ 3.

[12]  *See* Exhibit 4, Merck Bulletin regarding the VIGOR study of VIOXX, which questioned the safety of VIOXX in light of the dangers it posed for causing adverse cardiovascular events in users, *available at* http://dida.library.ucsf.edu/pdf/wib00a10.

### C. Argument

**1.   Defendants Fail to Carry Their Heavy Burden In Moving for Summary Judgment.**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[13]  The party seeking summary judgment bears the initial burden of establishing the basis for summary judgment by identifying those parts of the record that demonstrate any absence of genuine issue of material fact.[14]  Once the movant has met this burden, the burden shifts to the party opposing summary judgment to present evidence that there is an issue of material fact in the case.[15]

Summary judgment is inappropriate if the dispute about a material fact is genuine, meaning the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[16]  The non-moving party is not required to prove conclusively that it would prevail on the issue of fact at trial; the non-moving party must only present sufficient evidence supporting the factual dispute to "require a jury or judge to resolve the parties' differing versions of the truth at trial."[17]  The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine the whether there is a genuine issue for trial.[18]  Thus, the judge must determine

---

[13]  F.R.C.P. 56.

[14]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16]  *Id.*

[17]  *Id.*, *quoting First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).

[18]  *Id.* at 249.

whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[19]   The standard for summary judgment is so high that a court may grant summary judgment only where the evidence of record is "so one-sided that one party *must* prevail as a matter of law."[20]

In making this determination, the judge must ask whether a fair-minded jury could possibly return a verdict for the plaintiff on the evidence presented.[21]   If a reasonable jury could possibly find in favor of the non-moving party, the judge must deny summary judgment.[22]   All evidence of the non-moving party is to be believed, and all justifiable inferences are to be construed in the non-moving party's favor.[23]   If reasonable minds could differ as to the import of the evidence, the court must deny the motion for summary judgment.

In this case, defendants fall far short of meeting their heavy burden.   Clearly, Ms. Nichols' affidavit is more than sufficient evidence to demonstrate that a reasonable jury could conclude that she could not have known that defendants' conduct contributed to her mother's death until the VIOXX recall, at the earliest.   Ms. Nichols' sworn testimony establishes that a reasonable jury could find in her favor on this issue, leaving many other issues of fact for their consideration, including whether defendants' conduct fell below the standard of care, and whether that conduct caused injury and death to Sarah G. Nichols.   This testimony sets forth the factual predicate for the inescapable conclusion that this cause of action did not accrue until Merck recalled VIOXX on September 30, 2004.

---

[19]  *Id*. at 250.

[20]  *Id*. at 251-52 (emphasis added).

[21]  *Id*. at 252.

[22]  *Id*.

[23]  *Id*. at 255, *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

Further, the testimony presented by Ms. Nichols is to be believed and construed in her favor for purposes of this motion.  The evidence of record eliminates any possibility that defendants are entitled to a judgment as a matter of law.  Thus, at the very least, there is a genuine issue as to whether Ms. Nichols knew or should have known of the causal connection between her mother's death and defendants' prescription of VIOXX before the recall.

Finally, there are factual issues regarding whether defendants fraudulently concealed the true nature of VIOXX and the risks it posed to consumers.  Misleading conduct by the defendants, and encouraged by co-defendant Merck, may also operate to toll the statute of limitations.  Again, the truth was not revealed to the public until September 30, 2004, a year and a half after the death of Ms. Nichols' mother.  Additional discovery will tend to prove the extent to which defendants knew or should have known of VIOXX's dangerous propensities, which also presents a material issue of fact.  Therefore, the Court must deny defendants' motion.

**2.     A Genuine Issue of Material Fact: When – in the exercise of reasonable care – should Ms. Nichols have known that defendants' treatment was a substantial factor in the death of her mother?**

*A.     The Limitations Period Is Determined by the Discovery Rule*

Wrongful death actions are governed by the one-year statute of limitations for personal injury actions contained in KRS 413.140.[24]  As defendants point out, this time may be extended by up to one year through the operation of KRS 413.180, which provides:

> (1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after expiration of that time, if commenced within one (1) year after qualification of the representative.

> (2) If a person dies before the time at which the right to bring any action mentioned in KRS 413.090 to 413.160 would have accrued

---

[24] *Worldwide Equipment v. Mullins*, 11 S.W.3d 50, 59 (Ky. App. 2000).

8

> to him if he had continued alive, and there is an interval of more
> than one (1) year between his death and the qualification of his
> personal representative, that representative, for purposes of this
> chapter, shall be deemed to have qualified on the last day of the
> one-year period.

Defendants fail to address KRS 413.140(2), however, which is explicitly incorporated into the

wrongful death statute.  This provision, known as the "discovery rule," logically provides that a

claim against a medical provider – such as the one at issue in this case – does not accrue until the

injured party (or representative) discovers that defendants' conduct may have caused the injury:

> In respect to an action referred to in paragraph (e) of subsection (1)
> of this section, the cause of action shall be deemed to accrue at the
> time the injury is first discovered or in the exercise of reasonable
> care should have been discovered; provided that such action shall
> be commenced within five (5) years from the date on which the
> alleged negligent act or omission is said to have occurred.

For the cause of action to accrue, this section requires that the injured party discover not only the

injury, but also that the injury may have been caused by the defendants' conduct.[25]  Here, a

genuine issue of material fact exists as to when Ms. Nichols, in the exercise of reasonable

diligence, should have discovered that defendants' conduct caused her mother's death.[26]

It is elementary that the date on which the cause of action accrues must be determined

before the limitations period is calculated.  This reality precludes summary judgment at this time.

Ms. Nichols claims that she could not possibly have known that the defendants' prescription of

---

[25] *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000).

[26] *Johnson v. Sandoz Pharmaceuticals Corp.*, 24 Fed.Appx. 533, 538 (6th Cir. 2001)
(Applying Kentucky law, trial court's grant of summary judgment reversed because a genuine
issue of fact existed as to whether plaintiff "'in the exercise of reasonable diligence should have
discovered not only that  she  had been injured but also that her injury may have been caused
by'" her use of the drug Parlodel.), *citing Louisville Trust Co. v. Johns-Manville Products Corp.*,
580 S.W.2d 497, 501 (Ky. 1979); *see also Imes v. Touma*, 784 F.2d 756, 758 (6th Cir. 1986)
(applying Kentucky law, holding that whether plaintiff should have known that the injury was
the result of negligence was a fact question not properly decided on summary judgment.).

VIOXX caused her mother's death until Merck issued its recall on September 30, 2004.[27] Indeed, it is hard to imagine how Ms. Nichols could have ever known the serious risks that accompanied the prescription and use of VIOXX until Merck finally disclosed them to the public.

Until the time of the recall, Merck continuously represented to the public that VIOXX was safe. The autopsy of Ms. Nichols' mother revealed that her death was due to pulmonary emboli, but did not give any indication that VIOXX may have been the cause. Defendants may ultimately dispute whether Ms. Nichols should have known of defendants' negligence before the recall, but the Court may not issue summary judgment until that is determined by the jury.

### B. The "Discovery Rule" Also Applies to Wrongful Death Actions Involving Dangerous Drugs

The limitations period simply cannot begin until the plaintiff has reason to believe that defendants' conduct might have caused the injury. Just as in medical negligence cases, Kentucky law provides that in dangerous drug cases, such as the present one involving VIOXX, the discovery rule is equally applicable. In *Perkins v. Northeastern Log Homes,* the Supreme Court of Kentucky recognized the difficulty faced by injured persons when the injury and the discovery of the causal connection do not occur simultaneously, and thus adopted the discovery rule in those types of cases.[28] *Perkins* clearly held that the "discovery rule" applies to wrongful death actions involving dangerous products, and – because it controls the outcome of this motion – merits lengthy quotation:

---

[27] *See* Exhibit 3, Affidavit of Sarah E. Nichols, ¶ 3.

[28] *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 818-19 (Ky. 1991).

The second question certified to us from the U.S. District Court is "whether KRS 413.135 applies to latent disease cases and, if so, *whether the statute of limitations commences from the date the plaintiff knows or should have discovered the injury or disease*."

...

 *Louisville Trust Co. v. Johns-Manville Products,* Ky., 580 S.W.2d 497 (1979), controls the answer to this question. In the *Johns-Manville Products* case, the plaintiff's decedent was exposed to asbestos fiber dust which resulted from sawing and planing asbestos boards in the course of his employment. *His estate filed a personal injury and wrongful death action alleging "malignant mesothelomina, a rare type of lung cancer, caused by breathing asbestos dust and fibers*." 580 S.W.2d at 498. Our Court applied the "analysis adopted by the U.S. Supreme Court in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)," stating "*[t]he thrust of Urie is that when an injury does not manifest itself immediately the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor*." 580 S.W.2d at 499-500. We applied our previous decisions in *Tomlinson v. Siehl,* Ky., 459 S.W.2d 166 (1970) and *Hackworth v. Hart,* Ky., 474 S.W.2d 377 (1971), which "apply the so-called 'discovery' rule to actions for medical malpractice," to a latent disease case against the manufacturer of a defective product. *Id.* We then addressed a further problem in latent disease cases, one which seems to be present in the case before us, regarding knowledge of the "causal connection" between the product and the disease, resolving this problem by embracing the following quote from a New Hampshire Supreme Court case, *Raymond v. Eli Lily & Co.,* 117 N.H. 164, 371 A.2d 170                                                              (1977):

"In a case, such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule means. We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of courts: *a cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct*." [Emphasis original]. 580 S.W.2d at 501.

Thus in reply to Question Two certified to us by the U.S. District Court we respond that in the circumstances presented *the statute of limitations commences from the date the plaintiff knew or should have discovered "not only that he has been injured but also that*

*his injury may have been caused by the defendant's conduct*."[29]

Thus Kentucky law is well-settled.  The discovery rule holds that a cause of action involving a dangerous drug does not accrue until the plaintiff knows, or should know, both that an injury occurred and that the injury was attributable to defendants' conduct.[30]  Here, until Merck issued its recall on September 30, 2004, there is no way that Ms. Nichols could have ever known that defendants' prescription of VIOXX may have caused her mother's death.  It is simply untenable to expect Ms. Nichols or the average consumer to have suspected the dangers associated with VIOXX, much less to have the knowledge, ability or resources to discover this information.[31]  But regardless, when Ms. Nichols knew or should have known of that defendants' prescription of VIOXX contributed to her mother's death is a genuine issue of material fact that precludes summary judgment.[32]

---

[29] *Id*.  (emphasis added).

[30] *Louisville Trust Co. v. Johns-Manville Products,* Ky., 580 S.W.2d 497, 501 (1979) (The Court stated it was "convince[d]" that "the clear trend in most jurisdictions in cases dealing with ***drugs***, chemicals, and asbestos has been to apply some variation of the discovery rule which is based on equitable considerations.  Courts have felt that the injured party should be allowed to have his day in court when his injury was of an inherently unknowable nature.") (emphasis added).

[31] *See Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712-13 (Ky. 2000) ("One who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician.").

[32] *Hackworth v. Hart*, 474 S.W.2d 377, 380 (Ky. 1971); *Johnson v. Sandoz Pharmaceuticals Corp.*, 24 Fed.Appx. 533, 538 (6th Cir. 2001) (applying Kentucky law); *see also Imes v. Touma*, 784 F.2d 756, 758 (6th Cir. 1986) (applying Kentucky law, holding that whether plaintiff should have known that the injury was the result of negligence was a fact question not properly decided on summary judgment.).

**C.**   ***Defendants' Fraudulent Concealment of the Risks of VIOXX Also Precludes Summary Judgment***

The circumstances under which Merck distributed, marketed and promoted VIOXX also create several sub-issues of fact that really bear upon the central factual dispute that precludes summary judgment – *i.e.* when Ms. Nichols' knew or should have known that defendants' negligence was a substantial factor in the death of her mother, thereby beginning the limitations period.   These factual issues center upon the reality that the adverse effects of VIOXX were never disclosed to the public, thus prohibiting consumers from ever realizing that a cause of action might exist.   Kentucky law is clear that such misleading conduct will toll the applicable limitations period until the truth is discovered.[33]   Clearly Merck engaged in this type of conduct. The extent to which defendants Dr. Schrodt and Integrative Psychiatry knew or should have known that VIOXX posed substantial threat to the health of Ms. Nichols' mother is a factual issue for the jury.

Indeed, Merck has claimed, in other cases, that physicians were fully informed regarding the risks of VIOXX.   Merck has asserted ***in the present action*** that the defendants were learned intermediaries as a bar to Ms. Nichols' claims.   Merck's CEO, Raymond Gilmartin, has testified before Congress that Merck fully disclosed the risks associated with VIOXX to physicians, asserting:

> Second, over the past six years, since the time Merck submitted a New Drug Application for Vioxx® to the FDA, we have promptly disclosed the results of numerous Merck-sponsored studies to the FDA, physicians, the scientific community and the media and

---

[33]   *See, e.g., McCollum v. Sisters of Charity*, 799 S.W.2d 15, 19 (1990) ("Since an issue of material fact exists as to whether the hospital in these five cases fraudulently concealed information or misled appellants, it was improper for the circuit court to grant appellees' motion for summary judgment."); *St. Clair v. Bardstown Transfer Line*, 221 S.W.2d 679, 681 (Ky. 1949).

participated in a balanced, scientific discussion of its risks and benefits.[34]

More recently, in the *Humeston* trial, Merck's lawyers told jurors that any physician who didn't know about the VIGOR study that demonstrated cardiovascular risks in Vioxx users "*had to be living under a rock*."  Therefore, because factual issues regarding defendants' knowledge and concealment of the dangers posed by VIOXX also bear upon the applicable limitations period, summary judgment is inappropriate.

## IV.  CONCLUSION

In sum, there is a genuine issue of fact as to when Ms. Nichols knew or should have known that defendants' prescription of VIOXX was a substantial factor in her mother's death. Defendants offer no evidence to suggest that this knowledge came to Ms. Nichols before Merck's recall of the drug.  Ms. Nichols, however, offers evidence that proves just the opposite. It is plainly incorrect for defendants to argue that the average consumer should have discovered the health risks associated with VIOXX before the recall; so instead they chose a date to start the limitations period *ad hoc*, without any discussion of the controlling authority.   Defendant's motion is without merit.  Thus Ms. Nichols respectfully requests the Court to enter the attached order denying defendants' motion.

---

[34]  Testimony of Raymond Gilmartin before the Senate Finance Committee, November 18, 2004, *available at* http://finance.senate.gov/hearings/testimony/2004test/111804RGtest.pdf.

Respectfully submitted,


 /s/ D. Brian Rattliff
Gregory J. Bubalo
D. Brian Rattliff
Attorney for Plaintiff
BUBALO & HIESTAND, PLC
401 S. Fourth Street, Suite 800
Louisville, Kentucky   40202
Telephone:  502.753.1600
Facsimile:   502.753.1601
brattliff@bhtriallaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Response and Opposition to Defendants' Motion for Summary Judgment and its attached exhibits has been served on Liaison Counsel, Russ Hermann and Phillip Wittmann, by U.S. Mail and email or by hand-delivery and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with the Pretrial Order, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 6th day of December, 2006.


 /s/ D. Brian Rattliff
Gregory J. Bubalo, Ky. Bar No. 08805
D. Brian Rattliff, Ky. Bar No. 56665
Attorney for Plaintiff
BUBALO & HIESTAND, PLC
401 S. Fourth Street, Suite 800
Louisville, Kentucky   40202
Telephone:  502.753.1600
Facsimile:   502.753.1601
brattliff@bhtriallaw.com