UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS<br>LIABILITY LITIGATION | * * * * | MDL Docket No. 1657 |
| THIS DOCUMENT RELATES TO<br>06-CV-1951 | * * * | Judge Eldon Fallon<br>Magistrate Judge Knowles |

\* \* \* \* \* \* \* \* \* \* \*

PLAINTIFF'S LOCAL RULE 56.2
COUNTER-STATEMENT OF FACTS

Plaintiff, Sarah E. Nichols, submits the following Counter-Statement of Facts in response and opposition to the motion for summary judgment filed by G. Randolph Schrodt, Jr., M.D. and Integrative Psychiatry, LLC (collectively "defendants"). This Counter-Statement of Facts shall be Exhibit 1 to Ms. Nichols' Response and Opposition to the defendants' motion for summary judgment.

Pursuant to Local Rule 56.2, Ms. Nichol's states as follows:

1. Ms. Nichols does not dispute defendants' statement in numerical paragraph 1 of their Statement of Undisputed Facts. Ms. Nichols agrees that this is an alleged medical negligence action as to Dr. Schrodt.

2. Nor does Ms. Nichols dispute defendants' statement in numerical paragraph 2 of their Statement of Undisputed Facts.

3. Ms. Nichols does not dispute the statement contained in numerical paragraph 3 of defendants' Statement of Undisputed Facts.

PLAINTIFF'S EXHIBIT
1

4. Ms. Nichols does not dispute defendants' statement in numerical paragraph 4 of their Statement of Undisputed Facts.

5. Defendants' statement in numerical paragraph 5 of their Statement of Undisputed Facts is improper. This paragraph contains a legal conclusion rather than a statement of fact, and therefore does not merit a response from Ms. Nichols. Nonetheless, Ms. Nichols disputes defendants' statement that the statute of limitations expired May 12, 2004. There is an issue of fact as to when Ms. Nichols knew or should have known that the treatment by Dr. Schrodt and Integrative Psychiatry, LLC, was the substantial cause of the death of Sarah G. Nichols. That issue of fact must be decided before the applicable statute of limitations is determined. The statute of limitations began to run on September 30, 2004, the day that Ms. Nichols discovered or had reason to know that defendants' treatment of Sarah G. Nichols might be negligent and a cause of her death.

An issue of fact also exists as to whether defendants and co-defendant Merck & Company, Inc. ("Merck") fraudulently concealed the dangers posed by VIOXX, prohibiting Ms. Nichols from discovering the cause of her mother's death and thus tolling the statute of limitations.

6. Ms. Nichols does not dispute defendants' Statement in numerical paragraph 6 of their Statement of Undisputed Facts in that Ms. Nichols did not file this action on or before May 12, 2004, rather she filed her Complaint on September 28, 2005. The remaining portion of Defendants' numerical paragraph 6 is a legal conclusion, and is therefore improper. Ms. Nichols is not required to respond to this statement, as Local Rules 56.1 and 56.2 mandate that the parties submit factual statements rather than legal conclusions.

Ms. Nichols, however, disputes defendants' statement that this action is time-barred. A factual issue exists as to the point in time that Ms. Nichols knew or should have known that

Defendants' conduct was causally connected to the death of Sarah G. Nichols. Ms. Nichols discovered this information on September 30, 2004. This is a material issue of fact that must be decided by the jury before a statute of limitations decision can be made.

Lastly, an issue of fact exists as to whether defendants and co-defendant Merck knew the dangers posed by VIOXX but failed to alert Plaintiff to those dangers, thus fraudulently concealing the information needed to assert a cause of action. This issue of fact also bears upon the calculation of the applicable limitations period.



## Product News



### Merck Announces Voluntary Worldwide Withdrawal of VIOXX®

WHITEHOUSE STATION, N.J., Sept. 30, 2004 - Merck &. Co., Inc. today announced a voluntary worldwide withdrawal of VIOXX® (rofecoxib), its arthritis and acute pain medication. The company's decision, which is effective immediately, is based on new, three-year data from a prospective, randomized, placebo-controlled clinical trial, the APPROVe (Adenomatous Polyp Prevention on VIOXX) trial.

The trial, which is being stopped, was designed to evaluate the efficacy of VIOXX 25 mg in preventing recurrence of colorectal polyps in patients with a history of colorectal adenomas. In this study, there was an increased relative risk for confirmed cardiovascular events, such as heart attack and stroke, beginning after 18 months of treatment in the patients taking VIOXX compared to those taking placebo. The results for the first 18 months of the APPROVe study did not show any increased risk of confirmed cardiovascular events on VIOXX, and in this respect, are similar to the results of two placebo-controlled studies described in the current U.S. labeling for VIOXX.

"We are taking this action because we believe it best serves the interests of patients," said Raymond V. Gilmartin, chairman, president and chief executive officer of Merck. "Although we believe it would have been possible to continue to market VIOXX with labeling that would incorporate these new data, given the availability of alternative therapies, and the questions raised by the data, we concluded that a voluntary withdrawal is the responsible course to take."

APPROVe was a multi-center, randomized, placebo-controlled, double-blind study to determine the effect of 156 weeks (three years) of treatment with VIOXX on the recurrence of neoplastic polyps of the large bowel in patients with a history of colorectal adenoma. The trial enrolled 2,600 patients and compared VIOXX 25 mg to placebo. The trial began enrollment in 2000.

VIOXX was launched in the United States in 1999 and has been marketed in more than 80 countries. In some countries, the product is marketed under the trademark CEOXX. Worldwide sales of VIOXX in 2003 were $2.5 billion.

Results of the VIGOR (VIOXX Gastrointestinal Outcomes Research) study, released in March 2000, demonstrated that the risk of gastrointestinal toxicity with VIOXX was less than with naproxen, but indicated an increased risk of cardiovascular events versus naproxen. However, in other studies including Merck's Phase III studies that were the basis of regulatory approval of the product, there was not an increased risk of cardiovascular events with VIOXX compared with placebo or VIOXX compared with other non-naproxen non-steroidal anti-inflammatory drugs (NSAIDs). Merck began long-term randomized clinical trials to provide an even more comprehensive picture of the cardiovascular safety profile of VIOXX.



PLAINTIFF'S EXHIBIT 2

"Merck has always believed that prospective, randomized, controlled clinical trials are the best way to evaluate the safety of medicines. APPROVe is precisely this type of study - and it has provided us with new data on the cardiovascular profile of VIOXX," said Peter S. Kim, Ph.D., president of Merck Research Laboratories. "While the cause of these results is uncertain at this time, they suggest an increased risk of confirmed cardiovascular events beginning after 18 months of continuous therapy. While we recognize that VIOXX benefited many patients, we believe this action is appropriate."

Merck has informed the U.S. Food and Drug Administration and regulatory authorities in other countries of its decision. The company also is in the process of notifying health care practitioners in the United States and other countries where VIOXX is marketed. Patients who are currently taking VIOXX should contact their health care providers to discuss discontinuing use of VIOXX and possible alternative treatments. In addition, patients and

health care professionals may obtain information from www.merck.com and www.vioxx.com, or may call (888) 36-VIOXX (1-888-368-4699).

The results of clinical studies with one molecule in a given class are not necessarily applicable to others in the class. Therefore, the clinical significance of the APPROVe trial, if any, for the long-term use of other drugs in this class, consisting of COX-2 specific inhibitors and NSAIDs, is unknown. The company will work with regulatory authorities in the 47 countries where ARCOXIA is approved to assess whether changes to the prescribing information for this class of drugs, including ARCOXIA, are warranted. Merck is continuing to seek approval for ARCOXIA in other countries, including the United States.

Merck will continue its extensive clinical program to collect additional longer-term data for ARCOXIA, its medication for arthritis and acute pain.

With regard to financial guidance, prior to today's announcement, Merck remained comfortable with its 2004 earnings per share guidance of $3.11 to $3.17. The company currently expects earnings per share to be negatively affected by $0.50 to $0.60 as a result of today's announcement. This estimate includes foregone sales, writeoffs of inventory held by Merck, customer returns of product previously sold and costs to undertake the pullback of the product. Included in this cost estimate is the expectation of foregone fourth quarter sales of VIOXX of $700 million to $750 million. In addition, Merck expects that worldwide approximately one month of inventory is held by customers and will be returned.

At this point it is uncertain which of these costs will be recorded in the third quarter and which will be recorded in the fourth quarter. Therefore, at this point, Merck is retracting the third quarter guidance it had previously provided.

Merck will report third-quarter earnings on Oct. 21. At that point, the company will provide additional information regarding the costs for product withdrawal.

**About Merck**
Merck & Co., Inc. is a global research-driven pharmaceutical company. Merck discovers, develops, manufactures and markets a broad range of innovative products to improve human and animal health, directly and through its joint ventures.

**Forward Looking Statement**
This press release contains "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. These statements involve risks and uncertainties, which may cause results to differ materially from those set forth in the statements. The forward-looking statements may include statements regarding product development, product potential or financial performance. No forward-looking statement can be guaranteed, and actual results may differ materially from those projected. Merck undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events, or otherwise. Forward-looking statements in this press release should be evaluated together with the many uncertainties that affect Merck's business, particularly those mentioned in the cautionary statements in Item 1 of Merck's Form 10-K for the year ended Dec. 31, 2003, and in its periodic reports on Form 10-Q and Form 8-K (if any), which the company incorporates by reference.

*VIOXX® (rofecoxib) is a registered trademark of Merck & Co., Inc.*

**ESPAÑOL**

(PDF 44KB)

* Some files are presented in PDF format. This software is available at no charge through the Adobe Web site. Get Adobe Reader

# # #



<u>UNITED STATES DISTRICT COURT</u>

<u>EASTERN DISTRICT OF LOUISIANA</u>

| | | |
|---|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | * * * * | **MDL Docket No. 1657** |
| **THIS DOCUMENT RELATES TO 06-CV-1951** | * * | **Judge Eldon Fallon** <br> **Magistrate Judge Knowles** |

\* \* \* \* \* \* \* \* \* \* \*

<u>**AFFIDAVIT OF SARAH E. NICHOLS**</u>

For her Affidavit in support of Plaintiff's Response and Opposition to the Motion for Summary Judgement filed by Defendants, G. Randy Schrodt, Jr., MD, and Integrative Psychiatry, LLC, Sarah E. Nichols states as follows:

1. I am over 18 (eighteen) years of age and otherwise competent and qualified to give this testimony from my personal knowledge.

2. On September 9, 2005, I was substituted as the Personal Representative of my mother's (Sarah G. Nichols) estate by the Shelby County District Court, Shelbyville, Kentucky.

3. I did not discover that my mother's death may have been caused by defendants' prescription of Vioxx, over the course of nearly 18 (eighteen) months of psychiatric treatment, until Merck issued its recall of the drug on September 30, 2004.

4. At that time, I learned that Vioxx may cause clotting disorders, including heart attack, stroke, pulmonary emboli and other potentially fatal disorders.

5. Upon learning that these risks accompanied the prescription and use of Vioxx, I began an investigation into potential causes of my mother's death.

PLAINTIFF'S EXHIBIT 3

6. I discovered that defendants prescribed Vioxx to my mother continuously during their psychiatric treatment of my mother.

7. On September 28, 2005, less than one (1) year after my discovery of the fact that Vioxx may have contributed to my mother's death, I filed this action.

I, Sarah E. Nichols, certify that the foregoing statements are true and accurate to the best of my knowledge and belief.

_____
SARAH E. NICHOLS

COMMONWEALTH OF KENTUCKY  )
                          )ss
COUNTY OF JEFFERSON       )

Subscribed and sworn to before me by Sarah E. Nichols, on this the 4th day of December, 2006.

My commission expires: 11-12-08.

_____
NOTARY PUBLIC STATE AT LARGE
KENTUCKY

2

No. COX 04-063
Aug 26, 2004

## BULLETIN FOR VIOXX:
### Action Required: Observational Analysis by Graham et. al.

**TO:**

| | |
|---|---|
| Primary Care Representatives with Responsibility for VIOXX | Action Required |
| A & A Specialty Representatives | Action Required |
| Hospital Representatives with Responsibility for VIOXX | Action Required |
| A & A HSAs | Action Required |
| Neurology/Urology Specialty Representatives | Action Required |
| HIV Specialty Representatives | Action Required |
| Cardiovascular Specialty Representatives | Action Required |
| Managed Care NAEs and Customer Managers | Action Required |

**PURPOSE:**

To notify you that a recent observational analysis by D.J.Graham, et al, was presented in France at the International Society for Pharmacoepidemiology Conference. This analysis questioned the safety of VIOXX and is expected to receive press coverage. This bulletin will provide you with an issue response letter that you may provide to your customers only if they raise a question about the study.

**ACTION REQUIRED:**

- Do not proactively raise this article with your physicians. Respond to questions only as set forth in the attachments
- Use the following issue response when asked an unsolicited question by a physician regarding this article
- Return to your entire, well-balanced efficacy story for VIOXX once the obstacle is addressed
- Do not deviate from the language in this obstacle response
- Remember to provide appropriate balancing information as part of all product discussions

(continued on next page)





Confidential - Subject To Protective Order

MRK-AAR0069485

**ISSUE RESPONSE:**

*There is an observational analysis that says VIOXX causes more CV events than Celebrex.*

| | |
|---|---|
| 1. Merck stands behind the overall safety of VIOXX | First, Dr, let me say that based on all of the data that are available, Merck stands behind the overall efficacy and safety profile of VIOXX. Based on all of the available data, VIOXX remains an excellent choice for your appropriate patients. |
| 2. Interpret with caution | Merck believes that conclusions from retrospective, observational analyses should be interpreted with caution. Observational studies, even those conducted in as rigorous a manner as possible, are often unable to completely control for differences between groups, which may produce confounded results. These types of analyses must always be considered in light of their limitations and within the context of randomized, controlled clinical trials. For example, epidemiological analyses showed that use of hormone replacement therapy was associated with a reduced risk of heart attack and death. This influenced clinical practice for years. However, data from the Women's Health Initiative, a landmark randomized clinical trial, have shown that hormone replacement therapy was not associated with a cardiovascular benefit. |
| 3. Review Precautions Section of Label for VIOXX GI Outcomes Research Study | Doctor, let me review the cardiovascular effects section of the VIOXX label.<br>– In the VIOXX GI Outcomes Research Study, 8076 rheumatoid arthritis patients (mean age 58) were followed for an average of 9 months.<br>– Cardiovascular thrombotic events were 45 for VIOXX 50mg qd as compared to 19 for naproxen 500mg bid, largely due to nonfatal myocardial infarction (18 vs. 4)<br>– Mortality due to cardiovascular thrombotic events (7 vs 6, VIOXX vs naproxen respectively) was similar between the treatment groups. |
| 4. Review Precautions Section of Label for Placebo-Controlled Trials | The VIGOR study did not include a non-naproxen NSAID comparator, so let me review data from long-term placebo-controlled trials that is also included in the label for VIOXX.<br>– In a placebo-controlled trials database derived from 2 studies with a total of 2142 elderly patients (mean age 75) followed for an average of 14 months.<br>– Serious cardiovascular thrombotic events were 21 vs 35 for patients treated with VIOXX 25mg qd vs placebo, respectively.<br>– Mortality due to cardiovascular thrombotic events was 8 vs 3 for VIOXX vs placebo, respectively. |
| 5. Significance Unknown | As stated here in the label, the significance of the cardiovascular findings from these 3 studies is unknown. |

Business Confidential
use only

Confidential – Subject To Protective Order

MRK-AAR0069486

*(continued on next page)*

| | |
|---|---|
| 6. VIOXX is not a replacement for aspirin | Because of its lack of platelet effects, VIOXX is not a substitute for aspirin for cardiovascular prophylaxis. Therefore, in patients taking VIOXX, anti-platelet therapies should not be discontinued and should be considered in patients with an indication for cardiovascular prophylaxis. |
| 7. Merck is conducting more studies | Lastly Dr., Merck is conducting large prospective randomized clinical trials that when added to the extensive data from controlled clinical trials that are already available, will provide an even more comprehensive picture of the cardiovascular safety profile of VIOXX. |
| 8. Response letter and transition | If your customer continues to have questions, you may leave a copy of the letter in response to DJ Graham's analysis. Then transition to your core messages based on your physician's beliefs. |

### ISSUES RESPONSE LETTER:

- Do not proactively raise this topic with your customers
- You may print the attached letter and hand it out to your customers, when appropriate, along with a copy of the current PI for VIOXX.

Issue Response Letter

**For product and service information, call the Merck National Service Center at 1-800-NSC MERCK (1-800-672-6372).**


Confidential – Subject To Protective Order

MRK-AAR0069487

*** Slip Sheet ***

Child

Merck & Co., Inc.
U.S. Human Health
P.O. Box 1000
North Wales, PA 19454-1099



## Merck Strongly Disagrees with Conclusions of Observational Analysis Presented at International Medical Meeting

Dear Healthcare Professional:

Nothing is more important to Merck than the safety of its medicines. Merck stands behind the efficacy, overall safety, and cardiovascular safety of VIOXX® (rofecoxib).

You have asked about one of the observational analyses presented recently in France at the International Society for Pharmacoepidemiology conference. In the observational study by D.J. Graham et al, the authors questioned the safety of VIOXX and other NSAIDs.

Observational studies, even those conducted in as rigorous a manner as possible, are often unable to completely control for differences between groups, which may produce confounded results. These types of analyses must always be considered in light of their limitations and within the context of randomized, controlled clinical trials. For example, epidemiologic analyses showed that use of hormone replacement therapy was associated with a reduced risk of heart attack and death. This influenced clinical practice for years. However, data from the Women's Health Initiative, a landmark randomized clinical trial, have shown that hormone replacement therapy was not associated with a cardiovascular benefit.

Prospective, randomized, controlled clinical trials are the gold standard to evaluate the safety and efficacy of any medicine. The available prospective clinical data support the safety and efficacy of VIOXX. VIOXX has been extensively studied and more than 24,000 patients have been treated with VIOXX in randomized, controlled clinical trials. Based on all of the available data, VIOXX remains an excellent choice for your appropriate patients.

Although the study was funded by the US Food and Drug Administration, the conclusions presented by the authors do not necessarily reflect the views of the FDA.

VIOXX is indicated for relief of the signs and symptoms of osteoarthritis (OA), relief of the signs and symptoms of rheumatoid arthritis (RA) in adults, management of acute pain in adults, treatment of primary dysmenorrhea, and acute treatment of migraine attacks with or without aura in adults. The safety and effectiveness of VIOXX have not been established for cluster headache, which is present in an older, predominantly male, population.

### Selected Safety Information

VIOXX is contraindicated in patients with known hypersensitivity to rofecoxib or any other component of VIOXX.

VIOXX should not be given to patients who have experienced asthma, urticaria, or allergic-type reactions after taking aspirin or other nonsteroidal anti-inflammatory drugs (NSAIDs). Severe, rarely fatal, anaphylactic-like reactions to NSAIDs have been reported in such patients.

Confidential - Subject To Protective Order

MRK-AAR0069488

In the VIGOR Study, which involved more than 8,000 RA patients, VIOXX® (rofecoxib) 50 mg once daily, twice the recommended chronic dose, reduced the risk of clinically significant gastrointestinal (GI) events by 54% compared with naproxen 500 mg bid.

Also in the VIGOR Study, the risk of a serious cardiovascular (CV) thrombotic event on VIOXX 50 mg was higher than with naproxen (45 vs 19, respectively [$P<0.002$]), largely due to nonfatal myocardial infarction (18 vs 4). CV mortality was similar (7 on VIOXX vs 6 on naproxen).

In 2 long-term (median 14 months) studies involving elderly patients (N=2,142, mean age 75), the number of serious CV thrombotic events in patients on VIOXX 25 mg compared with placebo was 21 vs 35, and mortality due to these events was 8 vs 3, respectively.

The clinical significance of the CV findings from these 3 studies is unknown.

**Because of its lack of effects on platelets, VIOXX is not a substitute for aspirin for CV prophylaxis.**

Caution should be exercised when VIOXX is used in patients with a medical history of ischemic heart disease.

Common adverse events in OA studies included upper respiratory infection (8.5%), diarrhea (6.5%), nausea (5.2%), and hypertension (3.5%).

In RA studies of at least 3 months (which included extensions of up to 1 year), the adverse-event profile was generally similar to that reported in the OA studies; the incidence of hypertension in RA patients was 10.0% with VIOXX 25 mg qd and 4.7% with naproxen 500 mg bid.

In OA and RA clinical trials of VIOXX 12.5 mg or 25 mg, as well as 50 mg, VIOXX 50 mg qd was associated with a higher incidence of GI symptoms, lower extremity edema, hypertension, serious adverse experiences, and discontinuation due to clinical adverse experiences. For additional information, see the Adverse Reactions section of the Prescribing Information.

In OA, the recommended starting dose is 12.5 mg once daily. Some patients may receive additional benefit by increasing the dose to 25 mg once daily, the maximum recommended dose.

In RA, the recommended dose is 25 mg once daily. The maximum recommended daily dose is 25 mg.

In acute pain and in primary dysmenorrhea, the recommended dose of VIOXX is 50 mg once daily. The maximum recommended daily dose is 50 mg. Use of VIOXX for more than 5 days in management of acute pain has not been studied. Chronic use of VIOXX 50 mg daily is not recommended.

In acute treatment of migraine attacks with or without aura, the recommended starting dose of VIOXX is 25 mg once daily. Some patients may receive additional benefit with 50 mg as compared to 25 mg. The maximum recommended daily dose is 50 mg. The safety of treating more than 5 migraine attacks in any given month has not been established. Chronic daily use of VIOXX for acute treatment of migraine is not recommended.

Before prescribing VIOXX, please read the accompanying Prescribing Information.

Sincerely,

*William F. Keane*

William F. Keane, MD
Vice President
US Medical and Scientific Affairs

VIOXX is a registered trademark of Merck & Co., Inc.
©2004 Merck & Co., Inc. All rights reserved.    20406453(1)-03/04-VIO    Printed in USA  Minimum 10% Recycled Paper

Confidential - Subject To Protective Order

MRK-AAR0069489