**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

adults. The purpose of this bulletin is to provide you with important updated information based on the results of this label change and immediate actions required by you.
Did I read that correctly?
A. Yes, you did.
Q. Under the heading below that of action required, the first bulletin point says diligently follow all actions with physicians and customers; right?
A. Yes.
Q. The next bullet point says review the new label for Vioxx and distribute to physicians and customers, and attached to this bulletin are -- well, there's several items that are attached to it. Can you tell us whether or not one of the things that's attached is a copy of the new Vioxx label?
A. Yes, it has it on the very last page of the PI issued April 2002.
Q. And now let's look at the next heading on Page 1 of the bulletin which was referenced earlier. Actions with physicians and customers. What does -- what does actions with physicians

page 226

and customers mean?
A. Means this is what we're supposed to do when we went to visit with them.
Q. Okay. And the very first thing listed under that heading is proactively review all changes to the PI with physicians and customers, and then underneath that, it says, bullet point, new Vioxx GI outcomes research study information, then another bullet point, new CV precaution. Do you see that?
A. Yes, I do.
Q. What did you interpret this instruction to mean?
A. It means that we were to go out and proactively discuss all of the new label changes on every call.
Q. And what does it mean when you say proactively discuss?
A. It means that's the first thing that comes out of your mouth is I've got these changes to discuss with you.
Q. And what specific changes were you instructed to point out to physicians?
A. The Vioxx GI outcomes research information.

page 227

Q. That's the VIGOR information?

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Objection | Response |
|---|---|---|
| A. VIGOR, uh-huh, the new CV precaution.<br>Q. What's the new CV precaution?<br>A. It was under the precautions that included the VIGOR study, findings of the VIGOR study was now included in the PI.<br>Q. Under the heading of precautions?<br>A. Precautions.<br>Q. And anywhere else in the label, as well?<br>A. From what I can remember, it was under the precautions.<br>Q. Okay. We'll take a look at the label in just a second.<br>A. Okay. | Overruled | |
| Q. And what did this bulletin tell you not to do? If you look at the next bullet point under the heading action with physicians and customers, it reads do not provide promotional messaging until the PI has been thoroughly reviewed with the physician or customer. | **[227:16] - [227:21]**<br>**Pl's Obj.:** R. 611 - leading | **Deft's Resp.:** Objection to form waived at deposition (Fed.R.Civ.P.32(d)(3)(B). |
| [227:23] - [228:9] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 227<br>BY MR. HOURIHAN: | | |
| Q. Do you see that? | **[227:24] - [227:24]**<br>**Pl's Obj.:** R. 611 - leading | **Deft's Resp.:** See above. |
| A. Yes, I do. | **[227:25] - [227:25]**<br>**Pl's Obj.:** R. 611 - leading | **Deft's Resp.:** See above. |
| page 228<br>Q. What did you understand this instruction to mean?<br>A. We were to utilize the prescribing information in all of our contacts with physicians. That was what we were to use and we weren't to have promotion. It was to inform them of all the new product label changes.<br>Q. Did you follow this bulletin?<br>A. Yes. | | |
| [229:7] - [229:15] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 229<br>Q. Okay. Let's do it this way. I'm going to mark a new exhibit which is McAllister Exhibit 7. It's got some of the same | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| information, but why don't you take a look at that? And I just want to explain to you, because I know you've never seen this before, Ms. McAllister, but this is a document that was produced by Merck in this litigation.<br>A. Uh-huh (affirmative response). | | |
| [230:1] - [230:20] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 230<br>BY MR. HOURIHAN:<br>Q. And I want to point you in particular to the very last page of McAllister 7, and if you look there about halfway down the page, there's a series of entries with your name next to it. It says Dr. Herrera and then there's several dates and then it says MeLissa McAllister. Do you see that?<br>A. Yes, uh-huh.<br>Q. And among other things, it reflects calls on Dr. Herrera pertaining to Vioxx on April 11th, 2002. Do you see that?<br>A. Uh-huh, yes, I do.<br>Q. And above that, May 23rd, 2002?<br>A. Uh-huh (affirmative response).<br>Q. And above that, June 11th, 2002.<br>A. Uh-huh (affirmative response).<br>**Q. Do you have any reason to doubt that you, in fact, did call on Dr. Herrera to discuss Vioxx on those dates?** | <br>**[230:18] - [230:20]**<br>**Pl's Obj.:** R. 602. Lack of personal knowledge. | **Deft's Resp.:** Fact that witness is not 100% sure does not mean she lacks personal knowledge; witness says she is "confident" she had such discussions with Dr. Herrera; jury can weigh the testimony as they see fit; testimony goes to habit or routine practice (Fed.R.Evid.406). |
| [230:22] - [231:21] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 230<br>**THE WITNESS: I mean, it states that I was there and I had discussions with him, and I think it would be reasonable that I would have brought up the product label changes.**<br>page 231<br>BY MR. HOURIHAN:<br>Q. Okay. Well, that's kind of my question. You have this bulletin that went to you on April 18th; right -- excuse me -- April | **[230:22] - [230:25]**<br>**Pl's Obj.:** R. 602. Lack of personal knowledge. | **Deft's Resp.:** See above. |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Pl's Objection | Deft's Response |
|---|---|---|
| 11th?<br>A. Okay.<br>Q. Instructing you to go over the new label with all the physicians that you called on.<br>A. Uh-huh (affirmative response).<br>Q. Right?<br>A. Right.<br>Q. And I think we just saw that Merck records reflect that you called on Dr. Herrera on April 11th as well as May 23rd and June 11th?<br>A. Uh-huh (affirmative response).<br>Q. 2002; right?<br>A. Right. | | |
| Q. How confident are you that during that time period, you did, in fact, follow that bulletin and go over the new label with Dr. Herrera? | **[231:18] - [231:21]**<br>**Pl's Obj.:** R. 602. Lack of personal knowledge. Witness does not remember. | **Deft's Resp.:** See above. |
| [231:23] - [232:8] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 231<br>THE WITNESS: I'm confident that I would have in my discussions with him because that was the directive that Merck had for us.<br>page 232<br>was to proactively bring this up with physicians regarding the label change. | **[231:23] - [232:2]**<br>**Pl's Obj.:** R. 602. Lack of personal knowledge. Witness does not remember. | **Deft's Resp.:** See above. |
| BY MR. HOURIHAN:<br>Q. Was it -- how often did you get instructions from Merck to go out and discuss a label change and make sure you discussed it before having any promotional conversations with the physician? | **[232:4] - [232:8]**<br>**Pl's Obj.:** R. 611. | **Deft's Resp.:** Objection to form waived at deposition (Fed.R.Civ.P.32(d)(3)(B)). |
| [232:10] - [234:19] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 232<br>THE WITNESS: It was very strong language for sure as far as, you know, what they wanted us to do. | **[232:10] - [232:12]**<br>**Pl's Obj.:** R. 611. | **Deft's Resp.:** See above. |
| BY MR. HOURIHAN:<br>Q. And in your career, how often have you received those sorts of very strong language bulletins, to use your phrase?<br>A. Not very often.<br>Q. Do you have a memory of going out and | | |

Sustained

Overruled

going over this label change with different physicians?
A. Yes. I remember this, uh-huh (affirmative response).
Q. Do you know whether Merck -- do you recall whether Merck did anything else to alert physicians to this label change besides the
page 233
bulletin that we just looked at that instructed sales representatives to speak with physicians?
A. I mean, other than the bulletin, I mean, I don't know if they issued press releases at that time or, you know, what; but as far as any experience as a professional rep at that point, I followed the bulletin that was on April 11th.
Q. Okay. Well, let me -- let's move now to another bulletin just a week later on April 18th, 2002. I've marked this as McAllister Exhibit 8 and you're obviously getting a few of those in front of you there. You can push those to the side now and get them out of your way. Let me hand you now a copy of McAllister Exhibit 8 and ask you to take a moment to familiarize yourself with that.
(WHEREUPON, THE ABOVE-MENTIONED DOCUMENT WAS MARKED AS EXHIBIT NO. 8 TO THE TESTIMONY OF THE WITNESS AND IS ATTACHED HERETO.)
BY MR. HOURIHAN:
Q. Okay. Do you recognize this document, ma'am?
A. Yes, I do.
page 234
Q. And what is it?
A. It's another bulletin in regards to Vioxx, and it's an action required for dear healthcare provider letter distribution.
Q. What is the date on this particular bulletin?
A. April 11th -- I mean April 18th, 2002.
Q. And again, that's the same time frame that we just saw you had several calls on Dr. Herrera?
A. Yes.
Q. And this particular bulletin is addressed to all field sales representatives?
A. Uh-huh (affirmative response).
Q. Would that include you?
A. Yes, that would include me.
Q. So is this a document that you would have received?

**[233:9] - [233:21]**
**Pl's Obj.:** Sidebar.

**Deft's Resp.:** 233:15-21 necessary for identifying what "this document" (233:23) refers to.

Overruled

A. Yes, I would have received this.

[235:5] - [237:5] 10/25/2006 McAllister, Melissa

* Defendant's Affirmative Depo Designations

page 235

Q. When you received this bulletin back in April 2002, what did you understand its purpose to be?
A. Was to let us know that there was a dear healthcare provider letter that was going out to physicians but it wasn't something that we could print off but we were to receive additional quantities and to make sure that, you know, in our follow-up visits with physicians that they did receive it and if they didn't receive it, to offer that to them.
Q. What is a dear healthcare provider letter?
A. Basically what it is. It's a dear healthcare provider with changes like, you know, in this situation to the prescribing information for Vioxx.
Q. Well, who sends out a dear healthcare provider letter?
A. Merck. Merck sends that out.
Q. And when we use the term healthcare

page 236

provider, who are we talking about?
A. That would include physicians, nurse practitioners, physician assistants, pharmacists, healthcare professionals.
Q. So is this a letter from Merck to all healthcare professionals?
A. I believe it would be.
Q. And did you follow this bulletin back in April of 2002?
A. Yes, I did.
Q. How confident are you that you would have followed this bulletin with all your physicians?
A. I mean, I was very confident because this was the direction that was set forth for us.
Q. Attached to this bulletin is a letter -- I think it's Page 3 of the exhibit on Merck letterhead dated April 2002. It says dear healthcare professional underneath it and then it contains the following -- the first two paragraphs read as follows: Merck and Company would like to bring to your attention recent

changes in the current prescribing information and patient product information for Vioxx. Vioxx is a nonsteroidal antiinflammatory drug NSAID
page 237
that was approved by the United States Food and Drug Administration or FDA in May 1999 for relief of the signs and symptoms of osteoarthritis, management of acute pain in adults and the treatment of primary dysmenorrhea?

[237:11] - [237:21] 10/25/2006 McAllister, Melissa

* Defendant's Affirmative Depo Designations

page 237
Q. Did I read that paragraph correctly?
A. Yes, you did.
Q. The next sentence reads -- the next paragraph reads, the prescribing information has been revised to reflect the results of the Vioxx gastrointestinal outcomes research or VIGOR study and the FDA approval of Vioxx for the relief of the signs and symptoms of rheumatoid arthritis in adults. Excerpts of the changes to the prescribing information are provided below. Did I read that sentence correctly?

[237:23] - [238:25] 10/25/2006 McAllister, Melissa

* Defendant's Affirmative Depo Designations

page 237
THE WITNESS: Yes, you did.
BY MR. HOURIHAN:
Q. The remainder of this letter contains
page 238
what, ma'am?
A. The prescribing information.
Q. And attached to the letter -- well, let me step back for just a second. The information that's contained in the remainder of this dear healthcare provider comes from where?
A. Comes from the PI.
Q. The new PI?
A. The new PI, uh-huh (affirmative response).
Q. And attached to the letter itself is what?
A. The new PI.
Q. The bulletin that attaches these

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

letters refers to a highlighted PI, highlighted copy of the PI. If you look at the first paragraph under the heading overview?

A. Uh-huh (affirmative response).

Q. It says that beginning Friday, a copy of the attached dear healthcare provider letter will be sent to all prescribers of Vioxx, pharmacists and managed care customers in the Merck universe along with highlighted copies of the PI and PPI for Vioxx. Do you know what that term refers to, highlighted copy of the PI?

[239:2] - [240:1] 10/25/2006 McAllister, Melissa

* Defendant's Affirmative Depo Designations

page 239

THE WITNESS: It refers to a PI that Merck has highlighted with the changes to -- the new changes.

BY MR. HOURIHAN:

Q. Now, this copy of the PI that was attached to the bulletin, is that what you were actually supposed to distribute to physicians?

A. No.

Q. Where were you supposed to get the copy to distribute to physicians?

A. It was going to be mailed to us.

**Q. I may have asked this before but let me ask again, how confident are you that you would have followed up with all your physicians to confirm that they had received a dear healthcare provider as set forth in this bulletin?**

**A. I'd be very confident that I followed these instructions.**

**Q. And how confident are you that you would have followed up with Dr. Herrera to ensure that he received a copy of the dear healthcare provider letter?**

**A. I would have followed up with Dr.**

**page 240**

**Herrera, as well.**

**[239:13] - [240:1]**

**Pl's Obj.:** Witness is speculating. R. 602. Witness has no memory of specific conversations with Dr. Herrera.

**Deft's Resp.:** Fact that witness is not 100% sure does not mean she lacks personal knowledge; witness says she is "confident" she had such discussions with Dr. Herrera; jury can weigh the testimony as they see fit; testimony goes to habit or routine practice (Fed.R.Evid.406).

Overruled. I'll allow this. It is general + not specific

[240:4] - [244:25] 10/25/2006 McAllister, Melissa

* Defendant's Affirmative Depo Designations

page 240

Q. Let me now hand you what I've marked

as McAllister Exhibit 9.

(WHEREUPON, THE ABOVE-MENTIONED DOCUMENT WAS MARKED AS EXHIBIT NO. 9 TO THE TESTIMONY OF THE WITNESS AND IS ATTACHED HERETO.)

BY MR. HOURIHAN:

Q. Can you identify what McAllister Exhibit 9 is, ma'am?

A. It's the dear healthcare professional letter that was sent out for Merck in April and has the excerpts from the PI and has the highlighted PPI and the highlighted prescribing information.

Q. So this is the actual color copy of the document that we saw in black and white attached to the bulletin; right?

A. Yes.

Q. And the version that would have been sent to physicians and distributed by you and your colleagues to physicians, would that have been color or black and white?

page 241

A. It would have been color.

Q. And in this document, McAllister Exhibit 9, the color PPI, at the top of the letter in the blue box are the words important prescribing information.

A. Yes.

Q. Right?

A. Uh-huh (affirmative response).

Q. And that blue box with those words would have been a letter that you distributed to physicians you called on?

A. Yes, sir.

Q. And if you flip now to the attachments and in particular, the attached copy of the product label which I believe begins at the page with the Bates ending MRK -- well, last three digits are 436. Do you have that in front of you?

A. Yes, I do.

Q. There's yellow highlighting in numerous places both on this first page and throughout the rest of the label; right?

A. Yes.

Q. Would that yellow highlighting have been on the version of the PI and dear healthcare

page 242

provider letter that was sent to Dr. Herrera and that was distributed by you to the physicians you called on?

A. Yes.

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

Q. And what portions of the label are highlighted in yellow?
A. The new changes to the PI.
Q. And does that highlighted section include -- well, let's talk about the dear healthcare provider letter first. If you flip back to Page 1 of the dear healthcare provider letter. As we just read a moment ago, it says that there have been changes to the prescribing information; right?
A. Yes.
Q. And as we turn over to Page 2 and carrying over to Page 3, what kinds of changes are discussed on Pages 2 to 3 of the dear healthcare provider letter?
A. Are you referring to the second from the bottom paragraph?
Q. Yes.
A. Other safety findings, cardiovascular safety.
Q. And in particular, on that page
page 243
carrying over to the next page, is there anything about the VIGOR cardiovascular data as set forth in the dear healthcare provider letter?
A. Yes, Table 2 and Table 3, it has information regarding VIGOR summary of patients with serious cardiovascular thrombotic adverse events over time comparison to naproxen.
Q. And if you now turn to the fourth page of the dear healthcare provider letter, there's a section under the heading precautions. Do you see that?
A. Yeah, uh-huh.
Q. And what kind of information is discussed under the heading of precautions?
A. Cardiovascular events.
Q. And what specifically is discussed as a precaution under the heading cardiovascular effects?
A. The information below should be taken into consideration and caution should be exercised when Vioxx is used in patients with a medical history of ischemic heart disease.
Q. And following that in the paragraph below, is there anything about VIGOR?
A. Yeah, it states in VIGOR.
page 244
Q. And what information from VIGOR is contained in that paragraph?
A. You want me to read it?
Q. Why don't you take a moment and review

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| it and just let us know if there's anything that pertains to cardiovascular results in there?<br>A. Yeah, it does talk about in the duration of exposure of nine months, the risk of developing a serious cardiovascular thrombotic event was significantly higher in patients treated with Vioxx 50 milligram once daily, number was 45 as compared with patients treated with naproxen 500 milligrams twice daily and the number there was 19.<br>Q. Now let me ask you to turn to the highlighted PI that was attached to this letter that was sent to physicians. The very first page of this highlighted PI, almost the entire right hand column is in yellow highlighting.<br>A. Uh-huh (affirmative response).<br>Q. And that's under the heading special studies and in particular, it says Vioxx GI outcomes research or VIGOR study. Do you see that?<br>A. Yes. | | |
| [245:3] - [246:15] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 245<br>Q. What kind of -- where under that heading would we find any information about the cardiovascular safety results of VIGOR?<br>A. It's actually further down. It's the paragraph above Table 2.<br>Q. Okay. And Table 2, by the way, is titled -- Table 2 contains what information?<br>A. VIGOR summary of patients with serious cardiovascular thrombotic adverse events over time comparison to naproxen. | | overruled |
| **Q. And the paragraph that you're referring to above that is under the heading other safety findings, cardiovascular safety; right?**<br>**A. Yes, it does state that.**<br>**Q. And if you turn to the next page, there's another table that contains data from VIGOR pertaining to cardiovascular results; correct?**<br>**A. Yes.** | **[245:13] - [245:22]**<br>**Pl's Obj.:** R. 611. | **Deft's Resp.:** Objection to form waived at deposition (Fed.R.Civ.P. 32(d)(3)(B); not leading; subject matter not in controversy. |
| Q. Now, can you also point us to the precaution section of this new label?<br>A. Yes. It's on two columns over from<br>page 246 | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Plaintiff's Objection | Defendant's Response |
|---|---|---|
| that.<br>Q. So we're still on the second page of the label, far right hand column?<br>A. Yes, far right hand column under precautions. | | |
| Q. Under precautions, there's a one -- three paragraph section under the heading of cardiovascular effects. Is that what you're referring to?<br>A. Yes, I am.<br>Q. Does that also contain a discussion of the VIGOR cardiovascular data?<br>A. Yes, it does. | **[246:6] - [246:13]**<br>**Pl's Obj.:** R. 611. | **Deft's Resp.:** See above. |
| Q. What's your understanding of why Merck has highlighted the new portions of the label? | | |
| [246:17] - [247:5] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 246<br>THE WITNESS: Because it's the new -- it's new information that's been added to the PI and wanted to draw attention to all the new information that was added to the PI.<br>BY MR. HOURIHAN:<br>Q. Did you use this highlighted copy of the PI in your conversations with physicians to draw their attention to the new information?<br>A. Well, I mean, if they had not received<br>page 247<br>this information, we received copies of that and we were able to use it. | | |
| Q. Did Dr. Herrera ever indicate to you that he didn't understand any aspect of the VIGOR study? | **[247:3] - [247:5]**<br>**Pl's Obj.:** R. 611. R. 602. Witness does not recall any conversations with Dr. Herrera. Speculative. | **Deft's Resp.:** Objection to form waived at deposition (Fed.R.Civ.P.32(d)(3)(B)); not leading; witness recalled conversations about Vioxx generally (206:1-3); lack of specific memory has evidentiary value; jury can weigh testimony as it sees fit. |
| [247:7] - [247:21] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 247<br>THE WITNESS: I don't recall any specific question. | **[247:7] - [247:8]**<br>**Pl's Obj.:** R. 611. R. 602. Witness does not recall any conversations with Dr. Herrera. Speculative. | **Deft's Resp.:** See above. |
| BY MR. HOURIHAN: | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Pl's Objection | Deft's Response |
|---|---|---|
| Q. Do you recall Dr. VIGOR ever indicating -- sorry. Do you recall Dr. Herrera ever indicating that he did not understand any of the VIGOR cardiovascular data that was contained in the new label or in the dear healthcare provider label?<br>A. I don't recall a specific time of him asking that.<br>Q. Did Dr. Herrera ever indicate to you that he wasn't satisfied in any way with the information that he was receiving from you or from Merck concerning Vioxx? | **[247:10] - [247:21]**<br>**Pl's Obj.:** R. 611. R. 602. Witness does not recall any conversations with Dr. Herrera. Speculative. | **Deft's Resp.:** See above. |
| [247:23] - [247:24] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 247<br>THE WITNESS: No, I don't remember any specific times. | **[247:23] - [247:24]**<br>**Pl's Obj.:** R. 611. R. 602. Witness does not recall any conversations with Dr. Herrera. Speculative. | **Deft's Resp.:** See above. |
| [248:1] - [248:16] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 248<br>Q. During the course of your trainings and retrainings at Merck and just across the eight and a half years you've been with the company, what have you been taught about the importance of patient safety?<br>A. It's first and foremost. I mean, that was one of the -- I can remember the first day of training, they talked about, you know, Merck's, you know, statements that you put patients first and the profits will follow and that's -- that is definitely something that has been engrained in all Merck employees.<br>Q. At any time did Merck or -- did anybody at Merck ever suggest to you that sales or profits were more important than patient safety? | **[248:1] - [248:12]**<br>**Pl's Obj.:** R. 404(a). Self-serving statements. | **Deft's Resp.:** Plaintiff designated cross examination testimony on nature of training generally (e.g., 21:20-23:25); testimony re training on patient safety refutes contention that reps disregarded patient safety for the sake of sales or profits. |
| [248:20] - [249:25] 10/25/2006 McAllister, Melissa<br><br>* Defendant's Affirmative Depo Designations<br><br>page 248<br>Q. How, if at all, did patient safety | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

effect how you did your job?
A. Well, I mean, it's always part of the conversation. I want to make sure that I convey the information so that the physician makes the right choice for that patient to make sure that

page 249

they have the appropriate drug for the appropriate patient, appropriate dose so that they make the most -- the best decision for that patient.
Q. Did you ever see any situation where a Merck employee was doing something that you felt compromised a patient's safety?
A. No, I have not.
Q. When you were promoting Vioxx to physicians, did you believe that you were selling a drug that was causing heart attacks?
A. No, I did not.
**Q. Did you ever use Vioxx?**
**A. Yes, I did.**
**Q. And did any member of your family ever use Vioxx?**
**A. Yes, my husband took Vioxx. My parents took Vioxx and my grandmother took Vioxx.**
**Q. During that period when you and your family were using the product, did you ever have any concern about your family's safety as a result of taking the drug?**
**A. I did not have any concerns of safety.**
MR. HOURIHAN: Thanks. I have no further questions at this time.

**[249:13] - [249:23]**
**Pl's Obj.:** R. 401. R.402, R. 403. See MIL #5.

**Deft's Resp.:** Relevant to refute contention that witness promoted a drug she knew was or might be unsafe; designated portions of plaintiff's cross repeatedly emphasized that rep "never ever told a doctor that there is a potential increased risk of heart attack associated with Vioxx" (e.g., 27:11-28:8), thereby opening the door with respect to witness's own use of the drug.

Sustained 401 + 403, particularly 403 (confusion of issues + misleading)

[250:3] - [250:6] 11/1/2006 Melissa McAllister

page 250

Q. Ms. McAllister, if I understand your testimony correctly, everything that you've said to doctors had to be consistent with what was in the product label; is that correct?

[250:8] - [250:13] 11/1/2006 Melissa McAllister

page 250

THE WITNESS: In my discussions with physicians, everything had to be within the product label or consistent with the product

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

label.
BY MR. BIRCHFIELD:
Q. So the answer is yes?

[250:15] - [250:17] 11/1/2006 Melissa McAllister

page 250
THE WITNESS: I think I answered it.
Yeah, I had to stay within the product label or consistent with the product label.

[250:19] - [251:9] 11/1/2006 Melissa McAllister

page 250
Q. So it would be very, very important for you to as a Merck sales representative to be familiar with the product label?
A. Right. I mean, we were -- we were tested on the product label and, yes, we know the product label.
Q. So you kept up to date with what was
page 251
in the Vioxx product label at all times while you were promoting the drug; correct?
A. Well, and Merck would issue out bulletins and I would read them and make sure I understood them.
Q. And in preparing -- in the three days that you spent preparing for this deposition, you went back over the product labels for Vioxx; correct?

*Overruled*

| Defendant's Objection | Plaintiff's Response |
| --- | --- |
| **[251:6] - [251:9]** **Deft's Obj.:** Question without an answer | **Pl's Resp.:** Counsel for Merck instructed witness not to answer. |

[251:24] - [251:25] 11/1/2006 Melissa McAllister

page 251
Q. Right. Did you review the product labels?

[252:4] - [252:5] 11/1/2006 Melissa McAllister

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| page 252<br>THE WITNESS: I reviewed different<br>versions. | | |
| [252:14] - [252:16] 11/1/2006 Melissa McAllister | | |
| page 252<br>Q. Do you believe that the information<br>contained in the Vioxx label is correct and<br>accurate information?<br><br>[252:18] - [252:23] 11/1/2006 Melissa McAllister<br><br>page 252<br>THE WITNESS: The product label that<br>I, you know, used when I was having discussions<br>with Vioxx was the ones that, you know, were<br>issued down bulletins based on what Merck said<br>was the current product label and FDA said was<br>the current product label.<br><br>[252:25] - [253:13] 11/1/2006 Melissa McAllister<br><br>page 252<br>Q. So do you believe that the information<br>page 253<br>contained in the Vioxx product labels from the<br>time that it first went on the market in '99<br>until it was pulled off the market in September<br>30, 2004, do you believe that all of the<br>information contained in those labels was<br>accurate information?<br>A. I have no other reason to believe so,<br>I mean, that was what Merck had out as far as the<br>current product label and FDA approved, so yes. | **[252:14] - [253:9]**<br>**Deft's Obj.:** Foundation<br><br>Overruled | **Pl's Resp.:** Witness's knowledge and belief about the information in the label are relevant to Plaintiff's failure to warn claim. She has testified as a part of her responsibilities as a rep she is to be aware of all the information contained in the label |
| Q. So then it's safe to say that there is<br>nothing in those product labels, in any of those<br>product labels, that suggest that Vioxx increases<br>the risk of heart attacks; correct?<br><br>[253:15] - [254:4] 11/1/2006 Melissa McAllister | **[253:10] - [253:16]**<br>**Deft's Obj.:** Lacks foundation; calls for speculation; vague; calls for expert testimony | **Pl's Resp.:** Witness's knowledge and belief about the information in the label are relevant to Plaintiff's failure to warn claim. She has testified as a part of her responsibilities as a rep she is to |

## Dedrick v. Merck Co.

### Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister

| Testimony | Objection | Response |
|---|---|---|
| page 253<br>**THE WITNESS: Say that again. I'm sorry.**<br>BY MR. BIRCHFIELD:<br>Q. You've told us that you do not believe that Vioxx causes heart attacks; correct?<br>A. I believe that Vioxx does not cause heart attacks.<br>Q. And you believe that all of the information contained in the Vioxx product labels is accurate; correct?<br>A. I have no other -- I don't have any<br>page 254<br>reason to believe they're not. | Overruled | be aware of all the information contained in the label |
| **Q. So then it's safe to say that there is nothing in the product labels that suggests that Vioxx causes heart attacks?** | **[254:2] - [254:11]**<br>**Deft's Obj.:** Lacks foundation; vague; calls for expert testimony | **Pl's Resp.:** Same. |
| [254:6] - [254:11] 11/1/2006 Melissa McAllister<br><br>page 254<br>**THE WITNESS: The information, up until the latest PI, had the whole VIGOR study information regarding the number of heart attacks with Vioxx and naproxen. That is information I educated physicians on and the physicians made the decision.** | | |
| [254:21] - [254:24] 11/1/2006 Melissa McAllister<br><br>page 254<br>**Q. Well, the information pertaining to VIGOR that is set out in the product label does not suggest that Vioxx causes heart attacks, does it?** | **[254:21] - [255:4]**<br>**Deft's Obj.:** Repetitive Lacks foundation; calls for speculation; calls for expert testimony | **Pl's Resp.:** Same. Witness testified that VIGOR data was put in label in 2002. The data that was put into the label is relevant. |
| [255:1] - [255:7] 11/1/2006 Melissa McAllister<br><br>page 255<br>**THE WITNESS: From my understanding as a representative, the information that's** | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| presented in this -- the latest Vioxx PI was the information that came from the VIGOR study.<br>BY MR. BIRCHFIELD:<br>Q. Does it suggest that Vioxx causes heart attacks? | **[255:6] - [255:13]**<br>**Deft's Obj.:** Lacks foundation; calls for speculation; vague; calls for expert testimony<br>Overruled | **Pl's Resp.:** Same. |
| [255:9] - [255:13] 11/1/2006 Melissa McAllister<br><br>page 255<br>THE WITNESS: It states what the number of heart attacks there were and it was under the OA -- this new studies. It was under the precautions and that's what the FDA -- I mean, that's all approved by the FDA. | | |
| [255:18] - [255:19] 11/1/2006 Melissa McAllister<br><br>page 255<br>THE WITNESS: I think I've answered this. | **[255:15] - [256:7]**<br>**Deft's Obj.:** Same, also argumentative; asked and answered. | |
| [255:25] - [256:1] 11/1/2006 Melissa McAllister<br><br>page 255<br>Q. Does the label suggest that it<br>page 256<br>increases the risk of heart attacks? | | |
| [256:3] - [256:7] 11/1/2006 Melissa McAllister<br><br>page 256<br>THE WITNESS: Information in the PI, it just says this is what was seen. This is the -- the numbers and this. It doesn't say one way or the other. It just has the information laid out. | | |
| [256:9] - [257:2] 11/1/2006 Melissa McAllister | | |

## Dedrick v. Merck Co.

### Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister

| Testimony | Defendant's Objection | Plaintiff's Response |
|---|---|---|
| page 256<br>Q. Have you read the VIGOR article, VIGOR study as it was published?<br>A. I would assume I probably had at some point.<br>Q. Let me show you what's marked as plaintiff's Exhibit 2.0146. Do you recognize that as a copy of the VIGOR study as it was published in New England Journal of Medicine?<br>A. Yes.<br>Q. And the title of the article, Comparison of Upper Gastrointestinal Toxicity of Rofecoxib -- that's Vioxx; correct?<br>A. That would be Vioxx.<br>Q. And Naproxen in patients with Rheumatoid Arthritis, that's the title of the article?<br>A. That's the title. | | |
| page 257<br>**Q. Nothing in there suggesting it has anything to do with cardiovascular risk; correct?**<br><br>[257:4] - [257:13] 11/1/2006 Melissa McAllister<br><br>**page 257**<br>**THE WITNESS: The title is it's a comparison of gastrointestinal toxicity.**<br>BY MR. BIRCHFIELD:<br>Q. And then right underneath the title, all of the authors of the study are listed. Do you see that?<br>A. Yes, I do. | **[257:1] - [257:5]**<br>**Deft's Obj.:** Lacks foundation; vague with respect to "suggesting it has anything to do with"; calls for expert testimony | **Pl's Resp.:** Same. |
| **Q. And do you know that all of the authors of this study are either Merck employees or paid consultants of Merck?**<br><br>[257:15] - [258:7] 11/1/2006 Melissa McAllister<br><br>**page 257**<br>**THE WITNESS: I'm not a part of the study, so I don't know who all the different authors are and their relationship with Merck.**<br>BY MR. BIRCHFIELD:<br>Q. Well, you discussed the VIGOR study | **[257:11] - [257:17]**<br>**Deft's Obj.:** Lacks foundation | **Pl's Resp.:** The fact that the authors of VIGOR are Merck employees or consultants is not in dispute. |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Objection | Response |
|---|---|---|
| and its publication with physicians; correct?<br>A. Yes, I did.<br>Q. And surely, you read it before you discussed it with physicians; correct?<br>A. Yes, I read it.<br>Q. And are you aware that in the article,<br>page 258<br>it states the connection that each of the authors have with Merck?<br>A. What page is that? | | |
| **Q. Well, did you look -- when you're evaluating an article for its validity, do you see if the authors are connected with the manufacturer of the drug?** | **[258:4] - [258:11]**<br>**Deft's Obj.:** Assumes facts not in evidence; lacks foundation | **Pl's Resp.:** No foundation necessary. Asking her what her practice is when reading journals.<br>Sustained |
| [258:9] - [259:16] 11/1/2006 Melissa McAllister<br>page 258<br>**THE WITNESS: I don't think it's my place to say as -- I'm not a scientist, but yeah, I can see here.** | | |
| BY MR. BIRCHFIELD:<br>Q. And are you familiar with the -- with the abstract section of a medical journal?<br>A. Yes, I am.<br>Q. And what is the abstract section?<br>A. Abstract is basically kind of a quick synopsis of the entire article.<br>Q. Is there anything in the abstract section that would tell doctors there's -- that Vioxx increases the risk of heart attacks?<br>A. Can I take a minute to read it?<br>Q. Sure.<br>A. There's no mention of cardiovascular safety in there.<br>page 259<br>Q. All right. And if you will turn to the next to the last page in the very -- starting at the sentence at the very bottom of that page and then continuing to the next page, do you see where it says, thus, our results are consistent with the theory that naproxen has a contra -- coronary protective effect and highlight the fact that rofecoxib does not provide this type of protection owing to its selective inhibition of cyclooxygenase-2 at its therapeutic dose and at higher doses. Do you see that?<br>A. Yes, I do. | | |
| **Q. So the authors of this study are** | **[259:13] - [259:19]** | **Pl's Resp.:** Witness is |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Objection | Response |
|---|---|---|
| **concluding that the difference in heart attack risk are explained by the cardio protective effect of naproxen; correct?** | **Deft's Obj.:** Lacks foundation; calls for speculation | is familiar with the VIGOR study. |
| [259:18] - [260:2] 11/1/2006 Melissa McAllister<br><br>**page 259**<br>**THE WITNESS: I think it says not**<br>**risk but it states cardiovascular rates.**<br>BY MR. BIRCHFIELD:<br>Q. Okay. The difference in rates?<br>A. Difference in rates.<br>Q. Are explained by a cardio protective<br>effect of naproxen; correct?<br>A. That's what the study is saying.<br>page 260<br>**Q. That's what these authors are saying**<br>**about the VIGOR study; correct?** | Overruled<br><br>**[260:1] - [260:5]**<br>Deft's Obj.: Lacks foundation; calls for speculation | **Pl's Resp.:** Witness is is familiar with the VIGOR study. |
| [260:4] - [260:21] 11/1/2006 Melissa McAllister<br><br>**page 260**<br>**THE WITNESS: That's what they've**<br>**concluded.**<br>BY MR. BIRCHFIELD:<br>Q. Now, you've talked about the basic<br>training that you had at Merck?<br>A. Uh-huh (affirmative response).<br>Q. And part of the basic training, this<br>ten week course, was a study of pharmacology<br>pertaining to the drugs that you were selling;<br>correct?<br>A. Right. We learned about pharmacology.<br>That was kind of in its own separate subject and<br>then, of course, when we were learning about the<br>products, how did they -- the pharmacology of it.<br>Q. And you studied the pharmacology of<br>Vioxx; correct?<br>A. Yeah, I mean, to the degree that was<br>within the prescribing information. | | |
| [261:19] - [262:24] 11/1/2006 Melissa McAllister | | |

## Dedrick v. Merck Co.

### Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister

| Testimony | Objection | Response |
|---|---|---|
| page 261<br>Q. All right. So in the training of the -- pertaining to the pharmacology of Vioxx, did you understand that there are two Cox enzymes, a COX-1 and a COX-2?<br>A. Yes.<br>Q. And that Vioxx selectively blocks COX-2?<br>page 262<br>A. Yes, COX-2 inhibitor.<br>Q. If -- did you know -- were you taught that COX-1 is responsible for the production of a chemical called prostacyclin?<br>A. Prostaglandin.<br>Q. Prostacyclin is a prostaglandin?<br>A. Uh-huh (affirmative response).<br>Q. That COX-2 produces prostacyclin; right?<br>A. Uh-huh (affirmative response).<br>Q. And COX-1 produces a chemical called thromboxane?<br>A. I don't know if I remember to that degree.<br>Q. Did you understand -- were you trained by Merck scientists pertaining to the pharmacology of Vioxx?<br>A. I'm sure in part of the disease state and learning about Vioxx as far as how it was metabolized and the different effects. It's been a while since I've reviewed that. | **[261:19] - [264:14]**<br>**Deft's Obj.:** Lacks foundation; calls for expert testimony; counsel testifying<br>Sustained | **Pl's Resp.:** Witness received training as a Merck employee on how Cox-2 inhibitors work. |
| Q. And did they tell you that prostacyclin is a potent vaso dilator, causes your vessels to expand? Did they teach you that?<br><br>[263:1] - [263:6] 11/1/2006 Melissa McAllister<br><br>page 263<br>THE WITNESS: I don't remember that.<br>BY MR. BIRCHFIELD: | **[262:22] - [263:1]**<br>**Deft's Obj.:** Assumes facts not in evidence; relevance | **Pl's Resp.:** Witness received training as a Merck employee on how Cox-2 inhibitors work. |
| Q. And did they teach you that prostacyclin was an antiaggregate, it caused the platelets in the blood to avoid clotting? Did they teach you that?<br><br>[263:8] - [263:13] 11/1/2006 Melissa McAllister | **[263:3] - [264:14]**<br>**Deft's Obj.:** Assumes facts not in evidence; relevance | **Pl's Resp.:** Witness received training as a Merck employee on how Cox-2 inhibitors work. |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

page 263

THE WITNESS: I don't remember if they taught, but it was part of our product label.

BY MR. BIRCHFIELD:

Q. And did they teach you that thromboxane was a potent vaso constrictor?

[263:17] - [263:18] 11/1/2006 Melissa McAllister

page 263

Q. And it would cause your blood vessels to squeeze in?

Sustained

[263:20] - [263:24] 11/1/2006 Melissa McAllister

page 263

THE WITNESS: I don't remember that.

BY MR. BIRCHFIELD:

Q. And did they teach you that thromboxane was a platelet aggregate or would cause the blood to clump or clot?

[264:1] - [264:7] 11/1/2006 Melissa McAllister

page 264

THE WITNESS: Again, I don't remember that far back.

BY MR. BIRCHFIELD:

Q. And did they teach you that by selectively blocking COX-2 that you could leave thromboxane, this vaso constrictor and platelet aggregator unopposed and cause clots?

[264:9] - [264:12] 11/1/2006 Melissa McAllister

page 264

THE WITNESS: I don't remember.

BY MR. BIRCHFIELD:

Q. Did they teach you that that could

overruled (allow this testimony - it was a direct Q + witness answers it)

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

**cause a prothrombotic state in people?**

**[264:14] 11/1/2006 Melissa McAllister**

**page 264**

**THE WITNESS: No, they did not.**

Overruled — allow response

[264:25] - [265:3] 11/1/2006 Melissa McAllister

page 264

Q. The VIGOR article that was published

page 265

in the new England journal of medicine, was that used as a marketing tool by Merck sales representatives?

[265:5] - [265:10] 11/1/2006 Melissa McAllister

page 265

THE WITNESS: Well, once it became part of the product label, excuse me, it was an approved resource for us to use.

BY MR. BIRCHFIELD:

Q. And you would use it as a marketing tool with physicians; correct?

[265:12] - [265:22] 11/1/2006 Melissa McAllister

page 265

THE WITNESS: I would use it as a resource for educating physicians.

BY MR. BIRCHFIELD:

Q. Educating physicians about the GI benefits of Vioxx; right?

A. Well, as far as I can remember, I think I stuck a lot to the PI information because it gave the benefits and limitations of Vioxx.

Sustained

| | | |
|---|---|---|
| **Q. And it's safe to say there's nothing in the VIGOR article that suggests that Vioxx increases the risk of heart attacks; correct?** | **[265:20] - [266:1]** **Deft's Obj.:** Lacks foundation; calls for expert | **Pl's Resp.:** Witness is familiar with VIGOR article and used it to |

## Dedrick v. Merck Co.

### Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister

| | | |
|---|---|---|
| | testimony | detail Vioxx. |
| [265:24] - [266:6] 11/1/2006 Melissa McAllister<br><br>page 265<br>THE WITNESS: I need to review the whole article then, I mean, if you're asking me<br>page 266<br>about --<br>BY MR. BIRCHFIELD:<br>Q. I don't think you'd have to because you've told us that you do not believe and you never believe that Vioxx increases the risk of heart attacks; correct? | Sustained<br><br>**[266:3] - [266:9]**<br>**Deft's Obj.:** Argumentative | |
| [266:8] - [266:13] 11/1/2006 Melissa McAllister<br><br>page 266<br>THE WITNESS: What was your original question?<br>BY MR. BIRCHFIELD:<br>Q. There's nothing in the VIGOR article that suggests that Vioxx increases risk of heart attacks? | **[266:11] - [266:18]**<br>**Deft's Obj.:** Lacks foundation; calls for expert testimony<br><br>Overruled | **Pl's Resp.:** Witness is familiar with VIGOR article and used it to detail Vioxx. |
| [266:15] - [266:23] 11/1/2006 Melissa McAllister<br><br>page 266<br>THE WITNESS: No. The information that's presented in the VIGOR study -- I mean, obviously, it's looking at the GI safety but it also has the cardiovascular events.<br>BY MR. BIRCHFIELD:<br>Q. Right. But it presents the cardiovascular events in a way that explains away any heart attack risk associated with Vioxx; is that right? | **[266:20] - [267:16]**<br>**Deft's Obj.:** Lacks foundation; calls for speculation | **Pl's Resp.:** Witness is familiar with VIGOR article and used it to detail Vioxx. |
| [266:25] - [267:16] 11/1/2006 Melissa McAllister<br><br>page 266 | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| THE WITNESS: I wasn't part of the<br>page 267<br>study and how they came up with it and how they wrote it. I can only, as a representative, tell you what this actually has in there. It's a GI safety study and it's got all the numbers including the cardiovascular events.<br>BY MR. BIRCHFIELD:<br>Q. But after reading the study and after using and discussing that study, that article with doctors, there was nothing in there to suggest to you that Vioxx increases the risk of heart attacks; right?<br>A. Well, in reading the information, there's no information. There's nothing that talks about risk. It just -- it talks -- it just has the information laid out in it as far as the events. | | |
| [267:17] - [268:2] 11/1/2006 Melissa McAllister<br>page 267<br>Q. On the CV card and we've spent a lot of time talking about that and you discussed that just a moment ago with the Merck lawyer. It's your understanding that the FDA approved that sales aid before y'all ever used it?<br>A. Can you say that again?<br>Q. Did I understand you correctly that the FDA approves all of your sales material before it's used by sales represents?<br>page 268<br>A. Yeah, it has to go through FDA before we can use it. | | |
| [268:3] - [268:5] 11/1/2006 Melissa McAllister<br>page 268<br>Q. Would it shock you to learn at FDA did not approve that sales piece before y'all used it? | **[268:3] - [268:10]**<br>**Deft's Obj.:** Relevance; assumes facts not in evidence<br>Sustained | **Pl's Resp.:** Relevant because witness relied on Merck to give to her accurate information to convey to physicians. |
| [268:7] - [268:19] 11/1/2006 Melissa McAllister | | |

## Dedrick v. Merck Co.

### Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister

| Testimony | Defendant's Objection | Plaintiff's Response |
|---|---|---|
| page 268<br>THE WITNESS: All I have is the direction from the bulletins as far as what we can and we can't use and that was one of the resources that was given to us.<br>BY MR. BIRCHFIELD:<br>Q. Okay. And in the -- in the CV card, it talks about, what, six OA studies; is that right?<br>A. Can I find it again?<br>Q. Sure.<br>A. What was the question?<br>Q. The CV card uses the OA, six OA studies; is that correct? | **[268:12] - [269:19]**<br>**Deft's Obj.:** Relevance-v Card was not used with the prescriber during the relevant period. *See* 197:20-198:16. Further, Ms. McAllister has no knowledge of <u>ever</u> using the CV Card with the prescriber. *See* 195:3-6.<br>Sustained | **Pl's Resp.:** As outlined at p.193 of deposition witness would have used CV Card with Dr. Herrera because it was her practice to do so. Bulletin issued to explain CV Card to witness and other sales reps is relevant. |
| [268:21] - [269:7] 11/1/2006 Melissa McAllister<br>page 268<br>THE WITNESS: No, I'm reading here in the small print that data are based on nine double blind studies and approximately 6,000 OA patients actively taking Vioxx, active compared or placebo.<br>page 269<br>BY MR. BIRCHFIELD:<br>Q. Okay. Nine OA?<br>A. Nine and that ranged from six weeks to maximum duration of 86 weeks.<br>Q. So that's a pooled analysis where you lump in all nine of these OA studies for that data; is that correct? | **[269:5] - [269:12]**<br>**Deft's Obj.:** Lacks foundation | **Pl's Resp.:** Witness is testifying about the content of the CV Card a copy of she is reviewing. |
| [269:9] - [269:16] 11/1/2006 Melissa McAllister<br>page 269<br>THE WITNESS: I don't know how they -- how they brought in all that information, but from what I can tell, it's the nine OA studies that Merck had.<br>BY MR. BIRCHFIELD:<br>Q. Did anyone at Merck ever tell you that the FDA expressed serious concerns about that type of analysis of pooling the OA studies? | **[269:14] - [269:19]**<br>**Deft's Obj.:** Lacks foundation; assumes facts not in evidence; mischaracterizes evidence | **Pl's Resp.:** same |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

[269:18] - [269:19] 11/1/2006 Melissa McAllister

page 269

THE WITNESS: No, I have not heard
any of that.

[271:3] - [272:4] 11/1/2006 Melissa McAllister

page 271

BY MR. BIRCHFIELD:
Q. And the date on this -- on McAllister Number 4, what is that?
A. May 23rd, 2001.
Q. And that is after the VIGOR study results have come out; correct?
A. After they've been published, yes.
Q. And this is in regards to some concerns in the press about cardiovascular risk; is that right?
A. In response to New York Times article.
Q. And this is something that you were provided; right, McAllister Number 4?
A. Yes.
Q. All right. And it attaches a press release on the back, next to the last page, do you see that?
A. Uh-huh (affirmative response).
Q. Okay. And what's the headline of that press release?
A. Well, the press release headline is Merck confirms favorable cardiovascular safety profile of Vioxx.

page 272

Q. And do you know that that's the -- that's the headline that the FDA in their warning letter to Merck described as simply incomprehensible?

Sustained argumentative adds nothing

[272:1] - [272:10] **Deft's Obj.:** Ms. McAllister testified that she did not receive the Warning Letter and does not remember ever seeing a copy of it. Further, the allegations in the Warning Letter have nothing to do with this witness. She has no personal knowledge of the Warning Letter and counsel uses her as a prop to put the Warning Letter

**Pl's Resp.:** A copy of the Warning Letter was found in the Witness's custodial file. Witness testified she was aware of the letter and its contents. p. 129:8-20 which appears above.

[272:6] - [272:10] 11/1/2006 Melissa McAllister

page 272

THE WITNESS: I don't -- we didn't receive the warning letter so I don't know -- you know, I'm not a part of all of that that

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| goes on, so I don't know that this was what they were talking about. | in front of the jury. Counsel did not establish that the letter came from the witness's custodial file, as it now claims. | |
| [272:12] - [273:8] 11/1/2006 Melissa McAllister<br><br>page 272<br>Q. Well, if I remember correctly, when I was asking you questions before the lunch break, you told me that the warning letter was the type of letter that you would, as a field representative, would expect to receive.<br>A. Well, if was issued in a bulletin, then I didn't get it.<br>Q. Are you sure that you did not receive that?<br>A. I can't say with certainty, but we only get information provided from Merck and that type of information would have been provided in a bulletin.<br>Q. And if it was produced as part of your<br>page 273<br>custodial file, would that -- would that indicate that you actually did receive it?<br>A. Well, all I'm saying is it looked very unfamiliar to me when you presented it. I don't think I did receive it.<br>Q. Okay. And so it's safe to say that if you did receive it, it wasn't a big deal to you; correct? | **[272:12] - [273:8]**<br>**Deft's Obj.:** Same as above.<br>Sustained | |
| [273:10] - [273:11] 11/1/2006 Melissa McAllister<br><br>page 273<br>THE WITNESS: I wouldn't say it wasn't a big deal to me if I did receive it. | | |
| [273:13] - [273:14] 11/1/2006 Melissa McAllister<br><br>page 273<br>Q. It wasn't something that would stand out in your mind; correct? | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| [273:16] - [273:23] 11/1/2006 Melissa McAllister<br><br>page 273<br>THE WITNESS: I mean, what do you mean as far as stand out in my mind?<br>BY MR. BIRCHFIELD:<br>**Q. Well, it's a letter to Merck describing Merck's promotional activities of Vioxx that the FDA finds to be false and misleading and minimizing serious cardiovascular risk of the drug.** | Sustained<br><br>**[273:19] - [273:23]**<br>**Deft's Obj.:** Counsel testifying | **Pl's Resp.:** Counsel is laying foundation for question beginning at line 3. |
| [274:3] - [274:6] 11/1/2006 Melissa McAllister<br><br>page 274<br>Q. I'm just asking is that not something that would be striking to you and would stand out, something that you would be likely to remember? | | |
| [274:8] - [274:21] 11/1/2006 Melissa McAllister<br><br>**page 274**<br>**THE WITNESS: I mean, I remember that there was a warning letter but I don't remember receiving it and, you know, in the questioning from the Merck lawyer, you know, it had information in there that had -- I mean, it didn't respond to me personally. I mean, I wasn't part of what they were talking about so, you know, it's -- a warning letter in any situation is not -- it's not a good thing but, you know, as far as, you know, my experience as a rep, that's -- I mean, that's as far as it went because I don't think I received that letter. If it wasn't in a bulletin, I didn't get it.** | **[274:8] - [274:21]**<br>**Deft's Obj.:** Ms. McAllister testified that she did not receive the Warning Letter and does not remember ever seeing a copy of it. Further, the allegations in the Warning Letter have nothing to do with this witness. She has no personal knowledge of the Warning Letter and counsel uses her as a prop to put the Warning Letter in front of the jury. Counsel did not establish that the letter came from the witness's custodial file, as it now claims. | |
| [274:23] - [275:2] 11/1/2006 Melissa McAllister<br><br>page 274 | | |

Q. But the messages that the FDA calls false and misleading and minimizing serious cardiovascular risks, those are the same messages
page 275
that you were receiving from Merck about Vioxx; right?

[275:4] - [275:8] 11/1/2006 Melissa McAllister

page 275
THE WITNESS: All I can say is I followed the bulletins that Merck gave us and I always thought Vioxx was a safe drug, great drug, worked well and I always followed the instructions that were given in bulletins.

[277:9] - [277:19] 11/1/2006 Melissa McAllister

page 277
Q. And you went over McAllister Number 6. It was a pretty thick document here. Do you see that it has the bulletin and then it has the product label, is that right, the new label, the April 2002 Vioxx label; is that correct? Do you see that document?
A. Yeah, I was just checking. Yeah, it does have April 2002.
Q. And this is a document that you believe that you discussed with Dr. Herrera; correct?

[277:20] 11/1/2006 Melissa McAllister

page 277
A. Like I said before --

[277:22] - [278:17] 11/1/2006 Melissa McAllister

page 277
THE WITNESS: -- I don't have a

specific recollection of having this conversation but during that time, it was a requirement. It was routine for me to go over

page 278

the changes in the prescribing information.

BY MR. BIRCHFIELD:

Q. All right. And you told us earlier that your visits, typical visits with the doctor was one to two minutes; is that correct?

A. Typically.

Q. Do you recall ever any meetings with Dr. Herrera that extended beyond one to two minutes?

A. I might have had a lunch with Dr. Herrera and that would have been more than one to two minutes.

Q. Do you ever recall meeting with Dr. Herrera and reviewing the product label in a discussion that lasted more than one or two minutes?

A. I can't remember a specific time.

[278:18] - [279:23] 11/1/2006 Melissa McAllister

page 278

Q. Okay. If you'll take a look at McAllister Number 5 that Merck's lawyer showed you. Do you have that in front of you?

A. Yes, I do.

Q. And this is the letter to Dr. Herrera in response to his request for information pertaining to VIGOR; is that correct?

A. Yes, it is.

page 279

Q. Okay. And if you'll look at that -- the first page there, all of that information pertains to the gastrointestinal issue; right?

A. Yes, it does.

Q. Okay. And the same is true for the second page?

A. Yes.

Q. And the same is true for the third page until you get down to the very, very bottom where it has cardiovascular; is that correct?

A. Yes, it's at that point.

Q. Okay. And then that bottom paragraph, which continues over to the next page, the top of the next page, it talks about the cardiovascular results in VIGOR; is that correct?

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Objection | Response |
|---|---|---|
| A. Yes.<br>Q. And so when Dr. Herrera asked for information pertaining to VIGOR, this is what he gets as a PIR; correct?<br>A. It appears so at that time. | | |
| Q. And there is nothing in this PIR that suggests that Vioxx increases the risk of heart attacks, is there? | **[279:21] - [280:21]**<br>**Deft's Obj.:** Lacks foundation; calls for speculation (witness did not issue or approve PIRs, nor was she required to read them) | **Pl's Resp.:** Witness was required to be familiar with all data in PIR. |
| [279:25] - [280:8] 11/1/2006 Melissa McAllister<br><br>page 279<br>THE WITNESS: The information<br>page 280<br>contained in here talks about GI safety information and it does have a section on cardiovascular.<br>BY MR. BIRCHFIELD:<br>Q. Tell the jury then, please, in that cardiovascular section, what's the language in there that suggests that Vioxx may increase the risk of heart attacks? | Sustained | |
| [280:10] - [280:12] 11/1/2006 Melissa McAllister<br><br>page 280<br>THE WITNESS: It actually just talks about the rate of cardiovascular events was .4 percent in patients taking Vioxx. | | |
| [280:14] - [280:21] 11/1/2006 Melissa McAllister<br><br>page 280<br>Q. Doesn't give a comparator or anything, does it?<br>A. No, it does not.<br>Q. Does that suggest to you that Vioxx increases the risk of heart attacks?<br>A. It doesn't suggest anything. All it is stating is that the rate of cardiovascular events was .4 percent. | | |
| [281:10] - [283:1] 11/1/2006 Melissa McAllister | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

page 281

Q. Ms. McAllister, I want to start with plaintiff's Exhibit 2.0146 and I know you got a bunch of them there in front of you. Why don't we take a minute and get that in front of you?
This is a copy of the VIGOR reprint that Mr. Birchfield asked you about, and the other thing, if you could hang on to the color copy of the 2002 label.
A. Okay.
Q. All right. This New England Journal of Medicine article, this is the reprint that was, at least according to the statements on McAllister Exhibit 5, the PIR letter, enclosed with the PIR letter and sent to Dr. Herrera; is that right?
A. Yes, it was.

page 282

Q. And Mr. Birchfield asked you some questions about the abstract section?
A. Uh-huh (affirmative response).
Q. Of that, do you remember?
A. Yes.
Q. He was asking you if you could find any place where it talked about, you know, the risk of heart attacks or information pertaining to heart attacks. Do you remember that?
A. Uh-huh (affirmative response).
Q. And I think you took a look at it and said you couldn't find anything and let me direct your attention to under the third paragraph of abstract which is titled results. About, oh, two-thirds of the way down, there's a sentence that says the incidence of myocardial infarction. Do you see that one?
A. Yes, I do.
Q. That full sentence reads the incidence of Myocardial infarction was lower among patients in the naproxen than among those in the rofecoxib group. Rofecoxib was Vioxx?
A. Yes.
Q. 0.1 percent versus 0.4 percent, relative risk 0.2, 95 percent confidence

page 283

interval, 0.1 to 0.7. Do you see that?

[283:3] 11/1/2006 Melissa McAllister

Overruled

**[282:6] - [283:1]**
**Pl's Obj.:** 282:6 - 283:1
R. 611. Leading. Witness is Merck employee. Leading is improper.

**Deft's Resp:** 282:6 - 283:1
Objection to form waived at deposition (Fed. R. Civ. P. 32(d)(3)(B)); necessary to develop the witness's testimony (Fed. R. Evid. 611c)) because
(a) foundational question (directing the witness to the passage that plaintiff's counsel asked about), and
(b) subject matter not in controversy (document says what it says).

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| page 283<br>THE WITNESS: Yes. | **[283:3] - [283:3]**<br>**Pl's Obj.:**<br>R. 611. Leading. Witness is Merck employee. Leading is improper. | **Deft's Resp:** See above. |
| [283:9] - [283:19] 11/1/2006 Melissa McAllister<br><br>page 283<br>Having reviewed that sentence now, can you see anything in this abstract that answers Mr. Birchfield's question as to whether or not it disclosed information about heart attacks?<br>MR. BIRCHFIELD: Object to the form.<br>THE WITNESS: Yes. Actually there is a sentence in there in the abstract.<br>BY MR. HOURIHAN:<br>Q. And that sentence actually discloses what about the rates for heart attacks? | **[283:9] - [283:19]**<br>**Pl's Obj.:**<br>R. 611. Leading. Witness is Merck employee. Leading is improper. | **Deft's Resp:**<br>**283:9-283:19 -**<br>not leading; plaintiff's counsel misleadingly suggested there was nothing about CV risk in lengthy abstract (258:13-258:25) while not directing witness's attention to relevant sentence. |
| [283:21] - [284:22] 11/1/2006 Melissa McAllister<br><br>page 283<br>THE WITNESS: That the naproxen group was .1 percent and the Vioxx group was .4 percent with a relative risk of .2 percent with a 95 percent confident interval, .1 to .7.<br>BY MR. HOURIHAN:<br>page 284<br>Q. And so that's something that would have been enclosed -- this document is something that would have been enclosed with the PIR to Dr. Herrera?<br>A. Yes. I think I remember it had that in one of the enclosures.<br>Q. Now I want to talk about the other sentence in this article that Mr. Birchfield pointed out to you. I believe it's the last -- second to last -- no, third to last page of the exhibit that ends with numbers 307 in the bottom right-hand corner.<br>A. Yes.<br>Q. He showed you the sentence carrying over from that page to the next?<br>A. Uh-huh (affirmative response).<br>Q. And I want you to look at two paragraphs above that. It's paragraph beginning the overall mortality rate. Do you see that? | **[283:21] - [284:22]**<br>**Pl's Obj.: 283:21-283:24**<br>R.611. Leading. Witness is Merck employee. Leading is improper. | **Deft's Resp:** See 283:9-283:19 above. |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

A. Uh-huh (affirmative response).
Q. Could you read out loud the second sentence of that paragraph?

[284:24] - [285:2] 11/1/2006 Melissa McAllister

page 284
THE WITNESS: The rate of myocardial infarction was significantly lower in the
page 285
naproxen group than in the Vioxx group rofecoxib .1 percent versus .4 percent.

[285:4] - [287:15] 11/1/2006 Melissa McAllister

page 285
Q. That's good enough. So that sentence, is that sentence talking about heart attacks?
A. Yes.
Q. And what does that sentence say about heart attacks?
A. That the rate of heart attacks, of myocardial infarction was significantly lower in the naproxen group than the rofecoxib group.
Q. And when you provided reprints like this either through PIR or actually handing it to physicians, was it your expectation that a physician who was interested in it would actually read it?
A. That was the hope. They asked for it if they had an interest in it.
Q. Let me ask you to turn now to McAllister Exhibit 9 which is that highlighted -- well, color copy of the dear healthcare provider and the highlighted product label.
A. Okay.
Q. Mr. Birchfield asked you some questions about whether or not there was anything
page 286
in there saying that Vioxx increases the risk of heart attack?
A. Uh-huh (affirmative response).
Q. And what were -- what was your response to those questions?
A. That the information contained in the PI was the actual VIGOR studies and response to

## Dedrick v. Merck Co.

### Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister

| Testimony | Pl's Objection | Deft's Response |
|---|---|---|
| the numbers that were submitted on myocardial events with Vioxx and naproxen.<br>Q. And after the label changed, if you got a question from a physician about the risk of heart attacks or cardiovascular safety, what exactly were you supposed to go over with him or her?<br>A. I was supposed to go over all the numbers that came about from the VIGOR study.<br>Q. Let me direct your attention to the page ending with numbers 437, the precaution section?<br>A. Yes.<br>Q. In the heading cardiovascular effects?<br>A. Uh-huh (affirmative response). | | |
| Q. Do you remember that that is the section that you were supposed to go over with physicians in response to questions about heart<br>page 287<br>attacks?<br>A. Yes.<br>Q. And let's look at the second paragraph of that section. That paragraph discusses both the data from the VIGOR study as well as the data from the OA studies?<br>A. Yes, it does.<br>Q. So that VIGOR data is the same data that is contained in the VIGOR study itself; right?<br>A. Uh-huh, yes.<br>Q. And that OA study -- excuse me, that OA data is the same data that is contained in the cardiovascular card that you all used sometime before the label changed? | **[286:23] - [287:15]**<br>**Pl's Obj.:** 286:23-287:15 R. 611. Leading. Witness is Merck employee. Leading is improper. | **Deft's Resp:** 286:23-287:11 Objection to form waived at deposition (Fed. R. Civ. P. 3(d)(3)(B)). **287:12-287:15** necessary to develop the witness's testimony (Fed. R. Evid. 611(c)) because subject matter not in controversy (OA data in label is from same studies as in CV Card). |
| [287:17] - [287:22] 11/1/2006 Melissa McAllister | | |
| page 287<br>THE WITNESS: Yes, that's correct.<br>BY MR. HOURIHAN:<br>Q. Let me ask you now to read out loud the second to last sentence of that paragraph that you were to go over with physicians. It begins with the words the significance. | **[287:17] - [287:22]**<br>**Pl's Obj.:** 287:17 R. 611. Leading. Witness is Merck employee. Leading is improper. | **Deft's Resp:** **287:17** - see **287:12-287:15** above. |
| [288:1] - [288:14] 11/1/2006 Melissa McAllister | | |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| Testimony | Objection | Response |
|---|---|---|
| page 288<br>A. The significance of the cardiovascular findings from these three studies, VIGOR and the two placebo control studies is unknown.<br>Q. Was that an approved message?<br>A. Yes, it was.<br>Q. And as an approved message, is that something that you delivered to physicians who had questions about cardiovascular safety issues after you discussed all the data?<br>A. Yes, it was one of the messages after discussing all the data.<br>Q. And just so it's clear, could you just read it again a little more slowly so we make sure we get it right in the record? | | |
| [288:16] - [288:23] 11/1/2006 Melissa McAllister<br><br>page 288<br>THE WITNESS: Significance of the cardiovascular findings from these three studies, VIGOR and the two placebo controlled studies is unknown.<br>MR. HOURIHAN: Thank you. I don't have any further questions.<br>MR. BIRCHFIELD: I've got a couple follow up on that. | **[288:16] - [288:23]**<br>**Pl's Obj.: 288:20-288:23**<br>Attorney sidebar. Please delete.<br>T Overruled | **Deft's Resp:** Agree to remove **288:20-288:23.** |
| [290:4] - [290:9] 11/1/2006 Melissa McAllister<br><br>page 290<br>Q. All right. Do you know that the way that the rates, the heart attack rates are reported in the VIGOR article are reported in a way to suggest that it's naproxen that is reducing the number of heart attacks as opposed to Vioxx increasing the risk?<br><br>[290:11] - [290:13] 11/1/2006 Melissa McAllister<br><br>page 290 | **[290:4] - [290:13]**<br>**Deft's Obj.:** Lacks foundation; counsel testifying<br>T Sustained | **Pl's Resp.:** Witness is familiar with VIGOR article and used it to detail Vioxx. |

**Dedrick v. Merck Co.**

**Plaintiff's and Defendant's Designations of Testimony of Melissa McAllister**

| | | |
|---|---|---|
| THE WITNESS: I don't think I follow what you're saying. Where is that in this study? | | |
| [290:15] - [290:25] 11/1/2006 Melissa McAllister<br><br>page 290<br>Q. Well, the last sentence says that the results are consistent with the theory that naproxen has a coronary protective effect and highlight the fact that rofecoxib does not provide this type of protection, owing to it's selective inhibits of COX-two and it's therapeutic dose and higher doses. Do you see that?<br>A. Well, like I've said before, that information was background information. Now, it wasn't something that we discussed so... | | |
| [291:1] - [291:2] 11/1/2006 Melissa McAllister<br><br>page 291<br>MR. BIRCHFIELD: All right. Thank you. | **[291:1] - [291:2]**<br>**Pl's Obj.:** Attorney sidebar. Please delete. | **Deft's Resp:** Necessary to show that witness was cut off before finishing her answer. |

overruled