**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 288 6 | significant increase for heart attacks, | | |
| 288 7 | whether -- and whether above 25 does. | | |
| 288 8 | Are you with me? | | |
| 288 9 | A: Uh-huh. | | |
| | | | |
| 290:16 -   291:6 | Graham, David 2006-05-09 | | |
| 290 16 | Q: Dr. Graham, what I want to | | |
| 290 17 | do now is fill in these blanks on the | | |
| 290 18 | chart I have on the screen for the | | |
| 290 19 | relative risk and confidence intervals in | | |
| 290 20 | these different categories. | | |
| 290 21 | So, with the May 2004 ACR | | |
| 290 22 | abstract, do I have that correct that the | | |
| 290 23 | relative risk that was reported was 1.02 | | |
| 290 24 | for 25 milligrams or less, with the | | |
| 291 1 | confidence intervals as I've indicated up | | |
| 291 2 | there? | | |
| 291 3 | A: Yes, that's correct. | | |
| 291 4 | Q: And that is not | | |
| 291 5 | statistically significant, correct? | | |
| 291 6 | A: That's correct. | | |
| | | | |
| 291:23  -  295:19 | Graham, David 2006-05-09 | | |
| 291: 23 | Q: Okay. | | |
| 291: 24 | Now, after this May 2004 | | |
| 292: 1 | abstract, you went back and reclassified | | |
| 292: 2 | some of the patients from the Kaiser | | |
| 292: 3 | study who had been classified as low-dose | | |
| 292: 4 | patients for the purposes of the analysis | | |
| 292: 5 | that's shown in the abstract. I think my | | |
| 292: 6 | hand just snuck across the screen. | | |
| 292: 7 | Excuse me. | | |
| 292: 8 | You reclassified some | | |
| 292: 9 | patients who had been counted as low-dose | | |
| 292: 10 | patients, and then you counted them | | |
| 292: 11 | instead as high-dose patients; is that | | |
| 292: 12 | right? | | |
| 292: 13 | A: Yes. And high-dose patients | | |
| 292: 14 | who are reclassified as low dose. | | |
| 292: 15 | - - - | | |
| 292: 16 | (Whereupon, Deposition | | |
| 292: 17 | Exhibit Graham-12, E-mail 5-25-04 | | |
| 292: 18 | KP002153, was marked for | | |
| 292: 19 | identification.) | | |
| 292: 20 | - - - | | |
| 292: 21 | BY MR. BECK: | | |
| 292: 22 | Q: After you reclassified | | |
| 292: 23 | patients, then I'm going to show you what | | |
| 292: 24 | we marked as Exhibit 12. Did you write | | |
| 293: 1 | an e-mail which is -- I'm looking for the | | |
| 293: 2 | date. Can you help me with the date? | | |
| 293: 3 | Oh, it is also from May. Up at the top | | |
| 293: 4 | you will see your e-mail is May 25th, | | |
| 293: 5 | 2004? | | |
| 293: 6 | A: Uh-huh. | | |
| 293: 7 | Q: And then you report new | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 293: 8 | relative risks and confidence intervals | | |
| 293: 9 | based on the reclassifications, right? | | |
| 293: 10 | A: Yes. | | |
| 293: 11 | Q: Okay. | | |
| 293: 12 | And tell me if I have it | | |
| 293: 13 | right up here. The relative risk that | | |
| 293: 14 | you reported after reclassifying people | | |
| 293: 15 | for the 25 milligrams or less was .98, | | |
| 293: 16 | correct? | | |
| 293: 17 | A: Yes. | | |
| 293: 18 | Q: With the confidence | | |
| 293: 19 | intervals as I've indicated there, right? | | |
| 293: 20 | A: Yes. | | |
| 293: 21 | Q: And that is not | | |
| 293: 22 | statistically significant, correct? | | |
| 293: 23 | A: Correct. | | |
| 293: 24 | Q: And we're talking here about | | |
| 294: 1 | Vioxx 25 milligrams or less compared to | | |
| 294: 2 | people who are not taking pain | | |
| 294: 3 | medication, no difference in risk, right? | | |
| 294: 4 | A: Right. | | |
| 294: 5 | Q: And in your analogy of | | |
| 294: 6 | bullets in chambers, there would be zero | | |
| 294: 7 | bullets in the chambers for people who | | |
| 294: 8 | were using 25 milligrams of Vioxx, right? | | |
| 294: 9 | A: Yeah. They'd be pretty | | |
| 294: 10 | close to zero. There would be five or | | |
| 294: 11 | six, but yes. | | |
| 294: 12 | Q: Well, there would be -- | | |
| 294: 13 | A: The P is .91. So, what that | | |
| 294: 14 | means is that 91 out of 100 chances that | | |
| 294: 15 | the answer lies between those confidence | | |
| 294: 16 | intervals and that that .98 -- so, it's | | |
| 294: 17 | the most likely answer. | | |
| 294: 18 | Q: The most likely thing is -- | | |
| 294: 19 | and when we say .98, that's actually a | | |
| 294: 20 | little bit lower risk than someone who's | | |
| 294: 21 | not taking any medicine at all. I mean, | | |
| 294: 22 | it doesn't -- it's so little that it | | |
| 294: 23 | doesn't make any difference, but we're | | |
| 294: 24 | talking about Vioxx 25 milligrams is | | |
| 295: 1 | basically indistinguishable from not | | |
| 295: 2 | taking any medicine at all when it comes | | |
| 295: 3 | to cardiovascular risk, right? | | |
| 295: 4 | A: Yes. | | |
| 295: 5 | Q: Okay. | | |
| 295: 6 | And then after this | | |
| 295: 7 | reclassification, the risk that you | | |
| 295: 8 | reported, the relative risk for higher | | |
| 295: 9 | dose goes up substantially, and then it | | |
| 295: 10 | is statistically significant, correct? | | |
| 295: 11 | A: Yes. | | |
| 295: 12 | Q: Now, after the e-mail, did | | |
| 295: 13 | you -- I think you said you did something | | |
| 295: 14 | called a poster, you wrote up a poster? | | |
| 295: 15 | A: Right. That was in August. | | |

**Dedrick v. Merck Co., Inc.**

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 295: 16 | Q: August of -- | | |
| 295: 17 | A: Of 2004. | | |
| 295: 18 | Q: Of 2004? | | |
| 295: 19 | A: Correct. | | |
| | | | |
| 295:24 -   296:13 | Graham, David 2006-05-09 | | |
| 295 24 | (Whereupon, Deposition | | |
| 296 1 | Exhibit Graham-13, 'Risk of Acute | | |
| 296 2 | Myocardial Infarction and Sudden | | |
| 296 3 | Cardiac Death with Use of COX-2 | | |
| 296 4 | Selective and Non-Selective | | |
| 296 5 | NSAIDs' (Graham, et al) KP001521 | | |
| 296 6 | - KP001526, was marked for | | |
| 296 7 | identification.) | | |
| 296 8 | - - - | | |
| 296 9 | BY MR. BECK: | | |
| 296 10 | Q: And I think I got it right. | | |
| 296 11 | Is it the ISPE poster that you talked | | |
| 296 12 | about on direct examination? | | |
| 296 13 | A: Yes. | | |
| | | | |
| 298:5 -   299:5 | Graham, David 2006-05-09 | | |
| 298 5 | Q: And all I want you to do is | | |
| 298 6 | confirm for me, sir, after you | | |
| 298 7 | reclassified people and then changed the | | |
| 298 8 | regression analysis, is this the relative | | |
| 298 9 | risk that you recorded for 25 milligrams | | |
| 298 10 | or less? | | |
| 298 11 | A: Yes, it is. | | |
| 298 12 | Q: And that is under | | |
| 298 13 | traditional approach not statistically | | |
| 298 14 | significant, correct? | | |
| 298 15 | A: It's elevated, that's | | |
| 298 16 | correct. | | |
| 298 17 | Q: Correct that it's not | | |
| 298 18 | statistically significant? | | |
| 298 19 | A: Yes, but -- yes. | | |
| 298 20 | Q: And then the high dose | | |
| 298 21 | numbers came down somewhat, but still | | |
| 298 22 | elevated. And after the reclassification | | |
| 298 23 | and change in methodology, they remained | | |
| 298 24 | statistically significant, right? | | |
| 299 1 | A: Yes. | | |
| 299 2 | Q: Now, finally you reported | | |
| 299 3 | these results in The Lancet article that | | |
| 299 4 | you testified about, right? | | |
| 299 5 | A: Yes. | | |
| | | | |
| 300:18 -   305:6 | Graham, David 2006-05-09 | | |
| 300 18 | So, after the | | |
| 300 19 | reclassification in May and the change in | | |
| 300 20 | methodology in August, and then the | | |
| 300 21 | quality control in 2005, your final | | |
| 300 22 | result for 25 milligrams and below was a | | |
| 300 23 | relative risk of 1.23 with a confidence | | |
| 300 24 | interval from below 1 to above 1, right? | | |

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 301 1   A: Yes. | | |
| 301 2   Q: And under traditional | | |
| 301 3   approach, that is not statistically | | |
| 301 4   significant, correct? | | |
| 301 5   A: Correct. | | |
| 301 6   Q: And then the final numbers | | |
| 301 7   for the high dose that you had were 3 | | |
| 301 8   with the confidence interval as | | |
| 301 9   indicated, right? | | |
| 301 10   A: Yes. | | |
| 301 11   Q: And that under this analysis | | |
| 301 12   remains statistically significant; is | | |
| 301 13   that right? | | |
| 301 14   A: Yes. | | |
| 301 15   Q: So, just sort of a summary | | |
| 301 16   question that in all four of your reports | | |
| 301 17   as to the outcome of your study, the 25 | | |
| 301 18   milligrams and below, the relative risk | | |
| 301 19   at all times remained under traditional | | |
| 301 20   views as to statistical significance; is | | |
| 301 21   that right? | | |
| 301 22   A: Compared to remote use, but | | |
| 301 23   not compared to -- well, compared to | | |
| 301 24   remote use. | | |
| 302 1   Q: Yeah. I'm asking about | | |
| 302 2   comparing it to remote use, which is -- | | |
| 302 3   A: Basically nonuse. | | |
| 302 4   Q: Right. | | |
| 302 5   So, in all four at 25 | | |
| 302 6   milligrams or below, there was no | | |
| 302 7   statistically significant difference | | |
| 302 8   between taking that dose of Vioxx and not | | |
| 302 9   taking any medicine at all, right? | | |
| 302 10   A: Yes. | | |
| 302 11   Q: I want to focus a bit on, a | | |
| 302 12   little bit more on how these changes came | | |
| 302 13   about from the abstract to the poster and | | |
| 302 14   also what people within the FDA were | | |
| 302 15   saying about your analysis, because I | | |
| 302 16   think you testified about that this | | |
| 302 17   morning. Do you remember that? | | |
| 302 18   A: Uh-huh. | | |
| 302 19   Q: The abstract itself, did you | | |
| 302 20   have that reviewed by anybody from the | | |
| 302 21   FDA before the abstract was published? | | |
| 302 22   A: What are we referring to? | | |
| 302 23   Q: We're referring to back up | | |
| 302 24   on the screen, May of 2004 -- | | |
| 303 1   A: The ACR abstract. | | |
| 303 2   Q: -- ACR abstract. | | |
| 303 3   A: What happened with the ACR | | |
| 303 4   abstract is that David Campen at Kaiser | | |
| 303 5   was the first author, and I sent him the | | |
| 303 6   quick analysis that we had done, and he | | |
| 303 7   submitted the abstract, and I did not put | | |
| 303 8   it through FDA clearance, and that was an | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 303 9 | oversight on my part. | | |
| 303 10 | Q:  And then because there is a | | |
| 303 11 | procedure that you are supposed to follow | | |
| 303 12 | at FDA to show them studies and articles | | |
| 303 13 | and abstracts and posters that you intend | | |
| 303 14 | to have your name on, whether you're the | | |
| 303 15 | first author or second, third, fourth or | | |
| 303 16 | fifth, right? | | |
| 303 17 | A:  Yes. | | |
| 303 18 | Q:  Okay. | | |
| 303 19 | And then when it came to the | | |
| 303 20 | poster in August of 2004, after you've | | |
| 303 21 | reclassified people and changed the | | |
| 303 22 | methodology, did you submit that for | | |
| 303 23 | review by folks from the FDA? | | |
| 303 24 | A:  Yes, I did. | | |
| 304 1 | Q:  And I think you indicated | | |
| 304 2 | that your supervisor reviewed that | | |
| 304 3 | poster; is that right? | | |
| 304 4 | A:  Yes. | | |
| 304 5 | Q:  And what was his name? | | |
| 304 6 | A:  Paul Seligman. | | |
| 304 7 | Q:  And at the time, was he the | | |
| 304 8 | acting head of the Office of the Drug | | |
| 304 9 | Safety? | | |
| 304 10 | A:  I think so, yes. | | |
| 304 11 | Q:  And you said something about | | |
| 304 12 | how he suggested a change in the | | |
| 304 13 | conclusion. Was your -- did your initial | | |
| 304 14 | draft of the poster have a conclusion | | |
| 304 15 | that the high dose of Vioxx, the 50 | | |
| 304 16 | milligram dose should not be prescribed | | |
| 304 17 | or used? | | |
| 304 18 | A:  Let me see what this one | | |
| 304 19 | says and then I can answer you. | | |
| 304 20 | (Witness reviewing | | |
| 304 21 | document.) | | |
| 304 22 | Yes. | | |
| 304 23 | Q:  Okay. | | |
| 304 24 | And then I think you said | | |
| 305 1 | that Dr. Seligman did not agree with that | | |
| 305 2 | conclusion and said that you should take | | |
| 305 3 | out the conclusion that high dose 50 | | |
| 305 4 | milligrams should not be prescribed or | | |
| 305 5 | used; is that right? | | |
| 305 6 | A:  Correct. | | |
| 305:10 -     305:16 | Graham, David 2006-05-09 | | |
| 305 10 | (Whereupon, Deposition | | |
| 305 11 | Exhibit Graham-14, E-mails with | | |
| 305 12 | attachment 'Comments on ISPE | | |
| 305 13 | Paper' FDACDER006048 - | | |
| 305 14 | FDACDER006049, was marked for | | |
| 305 15 | identification.) | | |
| 305 16 | - - - | | |

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| **305:19 -   306:11**   Graham, David 2006-05-09 | | |
| 305 19   BY MR. BECK: | | |
| 305 20   Q: Do you recognize Exhibit 14? | | |
| 305 21   A: Yes, I do. | | |
| 305 22   Q: What is Exhibit 14? | | |
| 305 23   A: It's an e-mail from Dr. | | |
| 305 24   Seligman to me with his comments on the | | |
| 306 1   poster. | | |
| 306 2   Q: All right. | | |
| 306 3   And then the next page are | | |
| 306 4   his comments, right? | | |
| 306 5   A: Right. | | |
| 306 6   Q: Was Mr. -- is it Dr. | | |
| 306 7   Seligman? | | |
| 306 8   A: Dr. Seligman. | | |
| 306 9   Q: Dr. Seligman, is he one of | | |
| 306 10   the people that you think was out to get | | |
| 306 11   you at the FDA? | | |
| | | |
| **306:14 -   308:6**   Graham, David 2006-05-09 | | |
| 306 14   THE WITNESS: Let's put it | | |
| 306 15   this way. Dr. Seligman ordered an | | |
| 306 16   illegal criminal investigation in | | |
| 306 17   early 2004 to identify the person | | |
| 306 18   or persons who spoke to the media | | |
| 306 19   about the fact that Dr. Andrew | | |
| 306 20   Mossholder, an FDA medical officer | | |
| 306 21   who had done a study looking at | | |
| 306 22   SSRI antidepressants and | | |
| 306 23   suicidality in children, that that | | |
| 306 24   had been suppressed. | | |
| 307 1   Dr. Seligman, under oath | | |
| 307 2   before the House subcommittee on | | |
| 307 3   investigations and oversight for | | |
| 307 4   FDA, admitted under oath that he | | |
| 307 5   had ordered that illegal criminal | | |
| 307 6   investigation to identify the | | |
| 307 7   source of the leak and that he had | | |
| 307 8   named me as a suspect, although he | | |
| 307 9   had no grounds to do so, except | | |
| 307 10   that he thought that this is the | | |
| 307 11   kind of thing that I would do. | | |
| 307 12   And so there is that past history | | |
| 307 13   with Dr. Seligman to keep in mind. | | |
| 307 14   At this point, I wasn't | | |
| 307 15   interpreting his comments in that | | |
| 307 16   regard except that the reason why | | |
| 307 17   I hadn't said in the original | | |
| 307 18   version was that high dose | | |
| 307 19   rofecoxib should be removed from | | |
| 307 20   the market was because I knew the | | |
| 307 21   type of reaction it would get, and | | |
| 307 22   toning it down a little bit still | | |
| 307 23   elicited pretty much the same | | |
| 307 24   response, and that's expressed | | |
| 308 1   here. | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 308 2 | BY MR. BECK: | | |
| 308 3 | Q: Well, this morning, didn't | | |
| 308 4 | you testify, in effect, that there were | | |
| 308 5 | several people at the FDA who were out to | | |
| 308 6 | get you? | | |
| | | | |
| 308:10 - 308:18 | Graham, David 2006-05-09 | | |
| 308 10 | THE WITNESS: No, I never | | |
| 308 11 | used those, but I can -- | | |
| 308 12 | BY MR. BECK: | | |
| 308 13 | Q: No. The terms you used were | | |
| 308 14 | that there was an 'organized and | | |
| 308 15 | orchestrated campaign to smear and | | |
| 308 16 | discredit me.' Do you remember that | | |
| 308 17 | phrase? | | |
| 308 18 | A: Yes. | | |
| | | | |
| 308:21 - 311:5 | Graham, David 2006-05-09 | | |
| 308 21 | THE WITNESS: And we can | | |
| 308 22 | talk about that in detail if you | | |
| 308 23 | would like. | | |
| 308 24 | BY MR. BECK: | | |
| 309 1 | Q: Okay. | | |
| 309 2 | My question right now is a | | |
| 309 3 | narrow one. Is Dr. Seligman one of the | | |
| 309 4 | people that you were referring to this | | |
| 309 5 | morning as part of this organized and | | |
| 309 6 | orchestrated campaign that you thought | | |
| 309 7 | existed to smear and discredit you? | | |
| 309 8 | A: Yes. He would be part of | | |
| 309 9 | that group. | | |
| 309 10 | Q: Okay. | | |
| 309 11 | So, let's look at what Dr. | | |
| 309 12 | Seligman said when you submitted the | | |
| 309 13 | poster to him. He said, 'In general an | | |
| 309 14 | excellent study and analysis of a complex | | |
| 309 15 | topic.' | | |
| 309 16 | Do you see that? | | |
| 309 17 | A: Yes. | | |
| 309 18 | Q: And then he says, 'As you | | |
| 309 19 | might expect, my only comment has to do | | |
| 309 20 | with the conclusion that 'higher-dose | | |
| 309 21 | rofecoxib should not be prescribed or | | |
| 309 22 | used." | | |
| 309 23 | That's the conclusion that | | |
| 309 24 | you and I were talking about a few | | |
| 310 1 | minutes ago, right? | | |
| 310 2 | A: Right. | | |
| 310 3 | Q: Then he went on to explain | | |
| 310 4 | why he was concerned with having a | | |
| 310 5 | conclusion like that, didn't he? | | |
| 310 6 | A: Yes. | | |
| 310 7 | Q: And then he said, 'My | | |
| 310 8 | concern is based both on the small number | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 310 9 | of cases (10) and the lack of information | | |
| 310 10 | inherent in such a study regarding the | | |
| 310 11 | time-to-event." | | |
| 310 12 | Now, small number of cases | | |
| 310 13 | being ten, does that mean that there were | | |
| 310 14 | only ten cases in your study of thousands | | |
| 310 15 | and thousands of patients where somebody | | |
| 310 16 | taking high-dose Vioxx had either a heart | | |
| 310 17 | attack or sudden cardiac death? | | |
| 310 18 | A: We had ten patients who were | | |
| 310 19 | currently exposed to high-dose rofecoxib | | |
| 310 20 | Vioxx at the time of their heart attack | | |
| 310 21 | or sudden death. | | |
| 310 22 | Q: And the concern expressed by | | |
| 310 23 | Dr. Seligman, whether you believe him | | |
| 310 24 | today or not, was that that number is | | |
| 311 1 | just too small to draw a meaningful | | |
| 311 2 | conclusion from, correct? | | |
| 311 3 | A: That's what I think he's | | |
| 311 4 | driving at here, but that's what a | | |
| 311 5 | confidence interval is for. | | |
| 312:2 - 314:2 | Graham, David 2006-05-09 | | |
| 312 2 | Q: But in any event, Dr. | | |
| 312 3 | Seligman disagreed and said the number of | | |
| 312 4 | cases is just so small that you cannot | | |
| 312 5 | legitimately draw such a conclusion, | | |
| 312 6 | correct? | | |
| 312 7 | A: Yes. But he's not referring | | |
| 312 8 | to the confidence intervals, and, you | | |
| 312 9 | know, if you ask him the same questions | | |
| 312 10 | you're asking me, he'd have to say that | | |
| 312 11 | the confidence intervals permit it. | | |
| 312 12 | Q: Well, did others in the FDA | | |
| 312 13 | express similar concerns that Dr. | | |
| 312 14 | Seligman expressed about whether you | | |
| 312 15 | could draw conclusions from such a small | | |
| 312 16 | number -- | | |
| 312 17 | A: Yes, they did. | | |
| 312 18 | Q: -- of people who used the | | |
| 312 19 | high-dose Vioxx? | | |
| 312 20 | A: Yes, they did. | | |
| 312 21 | Q: Who is Dr. John Jenkins? | | |
| 312 22 | A: He's the director of the | | |
| 312 23 | Office of New Drugs. | | |
| 312 24 | Q: And is Dr. Jenkins another | | |
| 313 1 | one of the FDA people that you think was | | |
| 313 2 | out to get you? | | |
| 313 3 | A: No. | | |
| 313 4 | - - - | | |
| 313 5 | (Whereupon, Deposition | Pl's Obj.: 602. Witness | Barnett: Sustained. |
| 313 6 | Exhibit Graham-15, E-mails | has never seen email. Lack | Smith: Overruled. |
| 313 7 | FDACDER011048 - FDACDER011049, | of knowledge. Speculation. | Mason: Overruled. |
| 313 8 | was marked for identification.) | Hearsay. | |
| 313 9 | - - - | Def's Rep.: See Merck's | |

Overruled

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 313: 10 BY MR. BECK: | cover memo. If Plaintiff is | |
| 313: 11 Q: Let me show you Exhibit 15. | allowed to play its expansive | |
| 313: 12 A: (Witness reviewing | version of Graham's direct, | |
| 313: 13 document.) | including 88,000-140,000 | |
| 313 14 Q: Exhibit 15 is an e-mail | additional "excess events" | |
| 313 15 string. The last one appears to be dated | testimony, it is critical that | |
| 313 16 August 11, 2004. They're all around that | Merck be allowed to question | |
| 313 17 time frame. | Graham's credibility through | |
| 313 18 Do you see that the middle | these documents. Court | |
| 313 19 e-mail on Page 1 is from Dr. Jenkins? | allowed these emails in *Smith* | |
| 313 20 A: Yes, I see it. I've never | where Plaintiff played the | |
| 313 21 seen this e-mail before, the best I can | excess events testimony. | |
| 313 22 recollect. | | |
| 313 23 Q. Let's go through what Dr. | | |
| 313 24 Jenkins said, focusing on the second | | |
| 314 1 paragraph of his e-mail of August 11, | | |
| 314 2 2004 | | |
| | | |
| 315:4 - 319:7  Graham, David 2006-05-09 | Pl's Obj.: 602. Witness | Barnett: Sustained. |
| 315 4 Q: So, Dr. Jenkins here, he | has never seen email. Lack | Smith: Overruled. |
| 315 5 says -- I put the little red marker where | of knowledge. Speculation. | Mason: Sustained |
| 315 6 I'm going to begin reading. Second | Hearsay. | on hearsay grounds re: |
| 315 7 paragraph, 'I would also note that I find | **Def's Rep.:** Same as above. | 316:1-316:24. |
| 315 8 the conclusions reached in the poster to | | |
| 315 9 be far in excess of the available data. | | |
| 315 10 For example, 'Rofecoxib use at a dose | | |
| 315 11 over 25 milligrams increases the risk of | | |
| 315 12 AMI or SCD' is the primary conclusion of | | |
| 315 13 the poster. This is a far too definitive | | |
| 315 14 conclusion based on the data. Similar | | |
| 315 15 language appears in other parts of the | | |
| 315 16 poster and implies that a causal | | |
| 315 17 relationship has been confirmed.' | | |
| 315 18 Now, just stopping there. | | |
| 315 19 Did you know back in 2004 that Dr. | | |
| 315 20 Jenkins was of the same view that Dr. | | |
| 315 21 Seligman expressed to you? | | |
| 315 22 A: There was one e-mail from | | |
| 315 23 sometime after this date, but in the | | |
| 315 24 teens of August, it was like a two-line | | |
| 316 1 e-mail in which Dr. Jenkins suggested | | |
| 316 2 what he thought different wording for our | | |
| 316 3 conclusions would be acceptable to him | | |
| 316 4 were, and that's pretty much the extent | | |
| 316 5 of what my knowledge of what Dr. Jenkins | | |
| 316 6 thought. | | |
| 316 7 Q: Do you see where he goes on | | |
| 316 8 to say: 'This is misleading at best and | | |
| 316 9 deceptive at worst, since what has been | | |
| 316 10 demonstrated as an association between | | |
| 316 11 the use of the drug and the events in | | |
| 316 12 question. Yes, we have some priors and | | |
| 316 13 randomized controlled clinical trials | | |
| 316 14 that suggest rofecoxib may be associated | | |
| 316 15 with an increased risk of MI, but those | | |

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 316 16 | priors do not support reaching such a | | |
| 316 17 | definitive conclusion about the findings | | |
| 316 18 | in the study'? | | |
| 316 19 | Were you aware that Dr. | | |
| 316 20 | Jenkins was expressing the view that the | | |
| 316 21 | conclusion that you had in your draft | | |
| 316 22 | poster was misleading at best and | | |
| 316 23 | deceptive at worst? | | |
| 316 24 | A:  Nope. No idea. | | |
| 317 1 | Q:  And then he goes on to say, | | |
| 317 2 | These types of overstated conclusions | | |
| 317 3 | are typical of David's writing' -- David | | |
| 317 4 | is you, correct? | | |
| 317 5 | A:  Correct. | | |
| 317 6 | Q:  -- 'and only serve to | | |
| 317 7 | undermine his credibility as an objective | | |
| 317 8 | evaluator of the data at hand.' | | |
| 317 9 | And then he says, 'It is | | |
| 317 10 | even more ridiculous for him to make | | |
| 317 11 | broad recommendations about not using the | | |
| 317 12 | drug based on the data from this study, | | |
| 317 13 | and such sweeping clinical/regulatory | | |
| 317 14 | conclusions represent the primary reason | | |
| 317 15 | for difficulties in the interactions | | |
| 317 16 | between David and staff in OND.' | | |
| 317 17 | That would be Office of New | | |
| 317 18 | Drugs, right? | | |
| 317 19 | A:  Correct. | | |
| 317 20 | Q:  Then before I get to the | | |
| 317 21 | last couple of sentences, when you write | | |
| 317 22 | articles like you talked about this | | |
| 317 23 | morning and including this poster, do you | | |
| 317 24 | typically have a disclaimer on there that | | |
| 318 1 | says these are not necessarily the views | | |
| 318 2 | of the FDA, they're just the views of the | | |
| 318 3 | author, David Graham? | | |
| 318 4 | A:  Oh, we're pretty much | | |
| 318 5 | required to have that disclaimer. | | |
| 318 6 | Q:  And do you see here where | | |
| 318 7 | Dr. Jenkins says, 'Perhaps the disclaimer | | |
| 318 8 | should read that 'The views expressed are | | |
| 318 9 | those of the author and DO NOT reflect | | |
| 318 10 | the views of the FDA." And 'Also, | | |
| 318 11 | perhaps, the COI statement' -- what's a | | |
| 318 12 | COI statement? | | |
| 318 13 | A:  I think that's probably | | |
| 318 14 | conflict of interest. | | |
| 318 15 | Q:  Okay. | | |
| 318 16 | And I think this morning you | | |
| 318 17 | said in response to questions from | | |
| 318 18 | counsel that you didn't have any | | |
| 318 19 | conflicts of interest. | | |
| 318 20 | Do you see where Dr. Jenkins | | |
| 318 21 | says that 'perhaps the conflict of | | |
| 318 22 | interest statement should say 'Dr. Graham | | |
| 318 23 | has no FINANCIAL conflicts of interest, | | |

**Dedrick v. Merck Co., Inc.**

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 318 24 | but' systemic 'bias in his viewpoints | | |
| 319 1 | cannot be excluded.' | | |
| 319 2 | Were you aware that that was | | |
| 319 3 | Dr. Jenkins' views as to the merits of | | |
| 319 4 | the poster conclusion? | | |
| 319 5 | A: Dr. Jenkins is entitled to | | |
| 319 6 | his opinions. I wasn't aware of them. | | |
| 319 7 | The same could be said of the FDA. | | |
| | | | |
| 320:22 -  326:9 | Graham, David 2006-05-09 | | |
| 320 22 | BY MR. BECK: | | |
| 320 23 | Q: Who is Sharon Hertz? | | |
| 320 24 | A: I think she's a deputy | | |
| 321 1 | division director for the analgesic and | | |
| 321 2 | anti-inflammatory reviewing division, and | | |
| 321 3 | that would be the reviewing division | | |
| 321 4 | responsible for NSAID drugs, both | | |
| 321 5 | naproxen and drugs like Vioxx. | | |
| 321 6 | - - - | | |
| 321 7 | (Whereupon, Deposition | | |
| 321 8 | Exhibit Graham-16, E-mails | | |
| 321 9 | FDACDER006056 - FDACDER006058, | | |
| 321 10 | was marked for identification.) | | |
| 321 11 | - - - | | |
| 321 12 | BY MR. BECK: | | |
| 321 13 | Q: I'm handing you what we've | | |
| 321 14 | marked as Exhibit 16, which I will put up | | |
| 321 15 | on the screen. This is a document that | | |
| 321 16 | you've seen before, correct? | | |
| 321 17 | A: That is correct. | | |
| 321 18 | Q: And it's from Sharon Hertz. | | |
| 321 19 | Is it Dr. Hertz? | | |
| 321 20 | A: Yes, it is. | | |
| 321 21 | Q: And Dr. Hertz, and it's to | | |
| 321 22 | you and your boss, Dr. Seligman, right? | | |
| 321 23 | A: Correct. | | |
| 321 24 | Q: And it copies Dr. Bull, who | | |
| 322 1 | we just read an e-mail from, as well as | | |
| 322 2 | Dr. Jenkins and some others, right? | | |
| 322 3 | A: Yes. | | |
| 322 4 | Q: Did Dr. Hertz say to you | | |
| 322 5 | that 'There is information to suggest | | |
| 322 6 | that use of aspirin may mitigate possible | | |
| 322 7 | CV risk associated with COX-2 | | |
| 322 8 | inhibitors,' and go on to ask 'why would | | |
| 322 9 | you choose to study CV risk from a | | |
| 322 10 | database that does not collect | | |
| 322 11 | information on something as relevant as | | |
| 322 12 | aspirin use'? | | |
| 322 13 | A: She said it, but she didn't | | |
| 322 14 | understand the study, the methods, or why | | |
| 322 15 | her question actually is not pertinent to | | |
| 322 16 | the analysis that we did because we | | |
| 322 17 | showed that aspirin is not a confounder | | |
| 322 18 | of any association between NSAID use and | | |
| 322 19 | heart attack risk. And because she | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 322 20 | doesn't understand epidemiology, she | | |
| 322 21 | wrote this, but this is a statement | | |
| 322 22 | that's coming from her lack of | | |
| 322 23 | understanding of epidemiology. | | |
| 322 24 | Q: And she also referred to | | |
| 323 1 | your conclusion concerning high-dose | | |
| 323 2 | Vioxx and the fact that that represented | | |
| 323 3 | a very small subgroup of a large | | |
| 323 4 | population,' correct? | | |
| 323 5 | A: She says that, but high-dose | | |
| 323 6 | Vioxx represented 18 percent of all the | | |
| 323 7 | Vioxx use in the country. So, it has | | |
| 323 8 | public health importance. | | |
| 323 9 | Q: And did she tell you that | | |
| 323 10 | drawing conclusions about this subgroup | | |
| 323 11 | at all is inappropriate because of the | | |
| 323 12 | small size of it? | | |
| 323 13 | A: She says that, but her | | |
| 323 14 | statement is incorrect, because the | | |
| 323 15 | confidence intervals permit that. And it | | |
| 323 16 | was stated a priori at the beginning of | | |
| 323 17 | our study that we would do that analysis, | | |
| 323 18 | that we would take a look as best we | | |
| 323 19 | could at the effect of dose of rofecoxib, | | |
| 323 20 | of Vioxx, on heart attack risk. So, she | | |
| 323 21 | can use words like it's inappropriate for | | |
| 323 22 | us to do that but the fact is that, she's | | |
| 323 23 | mistaken. There's nothing inappropriate | | |
| 323 24 | about it. | | |
| 324 1 | Q: And you'll see at the bottom | | |
| 324 2 | of the paragraph she said, 'This is | | |
| 324 3 | simply bad science.' | | |
| 324 4 | A: She's entitled to her | | |
| 324 5 | opinion. | | |
| 324 6 | Q: I forgot to ask you. Is | | |
| 324 7 | Dr. Hertz one of the people at the FDA | | |
| 324 8 | that you think was out to get you? | | |
| 324 9 | A: I didn't use those terms, | | |
| 324 10 | but, no, she is not one of those people. | | |
| 324 11 | Q: Is she one of the people, | | |
| 324 12 | who, to use your terms, was part of the | | |
| 324 13 | very organized and orchestrated campaign | | |
| 324 14 | to smear and discredit you? | | |
| 324 15 | A: She is not a member of that | | |
| 324 16 | group. | | |
| 324 17 | Q: She just disagreed with you | | |
| 324 18 | and thought you were using bad science, | | |
| 324 19 | right? | | |
| 324 20 | A: That's what she says here. | | |
| 324 21 | But she's not an epidemiologist, and I'm | | |
| 324 22 | not sure that she would recognize good | | |
| 324 23 | epidemiology if she saw it. | | |
| 324 24 | Q: And Dr. Jenkins, who we | | |
| 325 1 | talked about a minute ago, who commented | | |
| 325 2 | on what he thought was the invalidity of | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 325 3    your analysis, do you think he knows what | | |
| 325 4    he's talking about when it comes to | | |
| 325 5    epidemiology? | | |
| 325 6    A: I think that Dr. Jenkins is | | |
| 325 7    not an epidemiologist. He's a | | |
| 325 8    pulmonologist. I think that he has broad | | |
| 325 9    responsibilities for the approval of | | |
| 325 10    drugs, and that it's his office, Office | | |
| 325 11    of New Drugs, that approved Vioxx, and | | |
| 325 12    that going back to the conflict of | | |
| 325 13    interest that we talked about before, | | |
| 325 14    that FDA has a vested interest in | | |
| 325 15    maintaining the decisions that it's made | | |
| 325 16    previously. And that their biggest | | |
| 325 17    concern here was that they had, in | | |
| 325 18    quotes, done a labeling change in 2002, | | |
| 325 19    and that solved the problem. But I | | |
| 325 20    contend that it didn't really accomplish | | |
| 325 21    very much at all. | | |
| 325 22    - - - | | |
| 325 23    (Whereupon, Deposition | | |
| 325 24    Exhibit Graham-17, E-mails | Pl's Obj.: 602. Witness | Barnett: Sustained. |
| 326 1    FDACDER021810 - FDACDER021811, | has never seen document. | Smith: Overruled. |
| 326 2    was marked for identification.) | Lack of knowledge. | Mason: Sustained |
| 326 3    - - - | Hearsay. Speculation. | on hearsay grounds as to |
| 326 4    BY MR. BECK: | Def's Rep.: See Merck's | 326:5-9. |
| 326 5    Q: I'm going to hand you what | cover memo. If Plaintiff is | |
| 326 6    we've marked as Exhibit 17. Have you | allowed to play its expansive | |
| 326 7    seen Exhibit 17 before? | version of Graham's direct, | Overruled |
| 326 8    A: No. I have never seen this | including 88,000-140,000 | |
| 326 9    before. | additional "excess events" | |
| | testimony, it is critical that | |
| 326:17 - 328:20    Graham, David 2006-05-09 | Merck be allowed to question | |
| 326 17    Q: Lourdes Villalba. Who is | Graham's credibility through | |
| 326 18    Lourdes Villalba? | these documents. Court | |
| 326 19    A: She was the medical officer | allowed these emails in Smith | |
| 326 20    who was responsible for Vioxx. She may | where Plaintiff played the | |
| 326 21    have been the medical officer who | excess events testimony. | |
| 326 22    reviewed the original Vioxx NDA, but that | [326:17-328:20] | Barnett: Sustained. |
| 326 23    I'm not absolutely certain about, but she | Pl's Obj.: 602. Witness | Smith: Overruled. |
| 326 24    had responsibility for it as the primary | has never seen document. | Mason: Sustained |
| 327 1    medical officer in the reviewing division | Lack of knowledge. | on hearsay grounds for |
| 327 2    of the Office of New Drugs at this time. | Hearsay. Speculation. | 326:17 - 328:10 only. |
| 327 3    So, she's the one who did the | Def's Rep.: Same as above. | |
| 327 4    review -- well, actually, she did the | | |
| 327 5    original review that we showed on the | | |
| 327 6    slide. So, any supplements or any | | |
| 327 7    submissions from Merck regarding Vioxx, | | |
| 327 8    they would come to her desk. | | |
| 327 9    Q: Was she one of the people | | |
| 327 10    that was part of the organized and | | |
| 327 11    orchestrated campaign to smear and | | |
| 327 12    discredit you that you think existed at | | |
| 327 13    the FDA? | | |
| 327 14    A: No, she was not. | | |
| 327 15    Q: At the bottom of this e-mail | | |

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 327 16 | string. Lourdes writes, 'I learned of | | |
| 327 17 | this study a couple of weeks ago when | | |
| 327 18 | Jonca requested my opinion about the | | |
| 327 19 | abstract that was going to be presented | | |
| 327 20 | in France. This study is not a good | | |
| 327 21 | study to address the cardiovascular | | |
| 327 22 | question. The conclusions are not well | | |
| 327 23 | supported by the data.' | | |
| 327 24 | Did you learn back in 2004 | | |
| 328 1 | that Lourdes Villalba felt that your | | |
| 328 2 | conclusions were not supported? | | |
| 328 3 | A:  No. I was never told that, | | |
| 328 4 | but I'm not surprised. This is the | | |
| 328 5 | typical response of people in the Office | | |
| 328 6 | of New Drugs to studies that are done in | | |
| 328 7 | the Office of Drug Safety that we talked | | |
| 328 8 | about earlier where -- and that would | | |
| 328 9 | lead Dr. Galson to say that our office | | |
| 328 10 | doesn't add value to the center. | | |
| 328 11 | Q:  Who is Anne Trontell? | | |
| 328 12 | A:  Dr. Trontell is the deputy | | |
| 328 13 | director for the Office of Drug Safety. | | |
| 328 14 | Q:  And is Dr. Trontell one of | | |
| 328 15 | the people that you were referring to | | |
| 328 16 | this morning when you said that within | | |
| 328 17 | the FDA there was a very organized and | | |
| 328 18 | orchestrated campaign to smear and | | |
| 328 19 | discredit you? | | |
| 328 20 | A:  Yes. | | |
| | | | |
| 329:3 -  329:5 | Graham, David 2006-05-09 | Pl's Obj.:  602.  Witness | Barnett:  Sustained. |
| 329 3 | BY MR. BECK: | has never seen document. | Smith:  Overruled. |
| 329 4 | Q:  Please take a look at | Lack of knowledge. | Mason:  No objection. |
| 329 5 | Exhibit 18. | Hearsay.  Speculation. | |
| | | Def's Rep.:  Same as below. | |
| 329:24 -  333:6 | Graham, David 2006-05-09 | Pl's Obj.:  Same. | |
| 329 24 | Q:  Do you remember whether | Def's Rep.:  See Merck's | |
| 330 1 | you've seen this document before? | cover memo.  If Plaintiff is | |
| 330 2 | A:  No, I don't think that I | allowed to play its expansive | |
| 330 3 | have seen this document before. | version of Graham's direct, | |
| 330 4 | Q:  Do you see that Dr. Trontell | including 88,000-140,000 | |
| 330 5 | is writing to Dr. Seligman in the e-mail | additional "excess events" | |
| 330 6 | on the top? | testimony, it is critical that | |
| 330 7 | A:  Yes. | Merck be allowed to question | |
| 330 8 | Q:  Starting with the second | Graham's credibility through | |
| 330 9 | paragraph, she says, 'I understand John's | these documents.  Court | |
| 330 10 | consternation, but let us all acknowledge | allowed these emails in Smith | |
| 330 11 | the problem arose when David Graham | where Plaintiff played the | |
| 330 12 | overstepped the bounds of what anyone can | excess events testimony. | |
| 330 13 | conclude from a brief poster of a complex | | |
| 330 14 | study. He ignored advice from multiple | | |
| 330 15 | FDA sources by making a strong conclusion | | |
| 330 16 | without giving enough information or time | | |
| 330 17 | to others in FDA to evaluate it | | |
| 330 18 | rigorously.' | | |
| 330 19 | Did Dr. Trontell communicate | | |

Dedrick v. Merck Co., Inc.
## Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 330 20  those views to you even though you didn't | | |
| 330 21  see this particular e-mail? | | |
| 330 22  A:  She communicated views | | |
| 330 23  similar to this. She never said that I | | |
| 330 24  overstepped my bounds, and she didn't use | | |
| 331 1  words like I ignored advice. And at the | | |
| 331 2  end of the day, the poster was cleared by | | |
| 331 3  FDA, so that they can complain all they | | |
| 331 4  want, but I didn't -- I stuck to what I | | |
| 331 5  believed based on the data, and they | | |
| 331 6  cleared it at the end of the day. So, we | | |
| 331 7  had honest disagreements about the data | | |
| 331 8  and how to interpret it. | | |
| 331 9  Q:  And as part of that | | |
| 331 10  disagreement, do you see here where she | | |
| 331 11  says that you 'subverted FDA review as | | |
| 331 12  well as the normal standards of peer | | |
| 331 13  review by stating an | | |
| 331 14  inadequately-supported conclusion based | | |
| 331 15  upon the limited data' you 'made | | |
| 331 16  available for review'? Again, did she | | |
| 331 17  express those views to you in substance? | | |
| 331 18  A:  No. And that statement | | |
| 331 19  actually makes absolutely no sense to me | | |
| 331 20  as it's stated. If she's talking about | | |
| 331 21  the differences between the ACR abstract | | |
| 331 22  and the ISPE abstract, those things I | | |
| 331 23  described to both Dr. Seligman and Dr. | | |
| 331 24  Trontell between the end of May and | | |
| 332 1  August, as we came upon each of the | | |
| 332 2  problems and had to deal with them. And | | |
| 332 3  she doesn't recall that. | | |
| 332 4  We had many, many | | |
| 332 5  conversations. And I had them with Dr. | | |
| 332 6  Seligman as well. And so looking at | | |
| 332 7  this, that's the only thing that I can | | |
| 332 8  guess she is -- she's saying from that, | | |
| 332 9  but that's just a guess. | | |
| 332 10  Q:  She says here, 'To publicize | | |
| 332 11  findings that have not been fully vetted | | |
| 332 12  is irresponsible and professionally | | |
| 332 13  suspect.' | | |
| 332 14  A:  Where are you? | | |
| 332 15  Q:  If you look up on the | | |
| 332 16  screen, I'm in the middle of the next | | |
| 332 17  paragraph. | | |
| 332 18  A:  Uh-huh. | | |
| 332 19  Q:  Did she communicate those | | |
| 332 20  views to you? | | |
| 332 21  A:  No. But the fact is, is | | |
| 332 22  that I didn't communicate anything to the | | |
| 332 23  public that hadn't been cleared by FDA. | | |
| 332 24  So, this statement really, in my mind, is | | |
| 333 1  inaccurate and, you know, she's using a | | |
| 333 2  lot of pejorative terms towards me, so, | | |
| 333 3  she can be very critical of me, but the | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 333 4 | fact is, is that the document was | | |
| 333 5 | cleared, and I have the signed clearance | | |
| 333 6 | form, and so she can have her opinion. | | |
| | | | |
| 333:7 - | 333:13 | Graham, David 2006-05-09 | | |
| 333 7 | Q.   She refers in here to an | **[333:7-13]** | Barnett: Not designated. |
| 8 | internal peer review process at the FDA. | PI's Obj.:  The answer to the | Smith: Not designated. |
| 9 | A.   Where are you now? | question at  lines 10-13 has | Mason: Not designated. |
| 10 | Q.   Up in the first paragraph | not been designated. | |
| 11 | right after she says you "subverted FDA | | *Overruled* |
| 12 | review." It says, "as well as the normal | | |
| 13 | standards of peer review." | | |
| | | | |
| 335:19 - | 336:8 | Graham, David 2006-05-09 | | |
| 335: 19 | Q.   And did the folks at the FDA | **[335:19-336:8]** | Barnett: Not designated. |
| 335: 20 | ask you for suggestions as to people who | PI's Obj.:  Answer continues | Smith: Not designated. |
| 335: 21 | could serve as good peer reviewers, | to line 15. Regardless, | Mason: Not designated. |
| 335: 22 | people that you would respect and trust? | irrelevant. R. 401, 402. | |
| 335: 23 | A.   Yes.  And they were the same | | |
| 335: 24 | names that they would have come up with | | |
| 336: 1 | as well. | | |
| 336: 2 | Q.   And what were those names? | | |
| 336: 3 | A.   Robert O'Neill, who is the | | |
| 336: 4 | director of the office of biostatistics | | |
| 336: 5 | at FDA.  Bruce Stadel, Dr. Bruce Stadel | | |
| 336: 6 | who's, in my view, the best | | |
| 336: 7 | epidemiologist at FDA and who is retired | | |
| 336: 8 | now.  And then, I believe I had mentioned | | |
| | | | |
| 337:16 - | 337:20 | Graham, David 2006-05-09 | | |
| 337 16 | Q:  I'm going to hand you | | |
| 337 17 | Exhibit 19 here, which is a memorandum | | *Overruled* |
| 337 18 | from Dr. Trontell to Dr. Seligman. Have | | |
| 337 19 | you seen this document before? | | |
| 337 20 | A:  Yes, I have. | | |
| | | | |
| 339:4 - | 339:23 | Graham, David 2006-05-09 | | |
| 339 4 | Q:  Does Dr. Trontell in this | PI's Obj.:  Hearsay. | Barnett: Not designated. |
| 339 5 | memorandum raise concerns with the | 801, 802. | Smith: Overruled. |
| 339 6 | methodology used in the study that you | | Mason: Overruled. |
| 339 7 | had done? | | |
| 339 8 | A:  She raises a number of | | |
| 339 9 | questions which we've actually discussed | | |
| 339 10 | and have the answers to, yes. | | |
| 339 11 | Q:  Over on Page 2 in the last | | |
| 339 12 | paragraph of the executive summary, did | | |
| 339 13 | Dr. Trontell state: 'My review notes | | |
| 339 14 | several unexplained inconsistencies in | | |
| 339 15 | the conduct of the study and the | | |
| 339 16 | reporting of results. Before the | | |
| 339 17 | findings and conclusions of the study | | |
| 339 5 | report can be accepted, the authors must | | |
| 339 19 | address all inconsistencies with adequate | | |
| 339 20 | documentation that clearly explains how | | |
| 339 21 | they occurred, in order to address the | | |

Case 2:05-md-01657-EEF-DEK Document 9235-7 Filed 12/04/06 Page 17 of 50

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 339 22 potential appearance of data manipulation | | |
| 339 23 and post hoc analyses.' | | |
| 340:14 - 345:16 Graham, David 2006-05-09 | | |
| 340 14 BY MR. BECK: | | |
| 340 15 Q: Is a post hoc analysis where | | |
| 340 16 somebody, after a study is conducted, | | |
| 340 17 goes back and changes the rules of the | | |
| 340 18 study, and the concern then is that the | | |
| 340 19 results are invalid? I'm not asking | | |
| 340 20 whether you did it. I'm asking whether | | |
| 340 21 that's what the post hoc analysis is. | | |
| 340 22 A: When people talk about a | | |
| 340 23 post hoc analysis, what they mean is | | |
| 340 24 they're referring to an analysis that | | |
| 341 1 wasn't prespecified before the study | | |
| 341 2 began or before the analysis began. | | |
| 341 3 So, for example, in our | | |
| 341 4 study, I know that Dr. Trontell kept | | |
| 341 5 insisting that our comparison of Vioxx to | | |
| 341 6 Celebrex was a post hoc analysis. But it | | |
| 341 7 was there from the beginning of our | | |
| 341 8 protocol. And so -- and I had explained | | |
| 341 9 that to her multiple times. But that's | | |
| 341 10 what a post hoc analysis is. | | |
| 341 11 Q: And data manipulation, | | |
| 341 12 again, not focusing on her concerns about | | |
| 341 13 you, but what data manipulation is | | |
| 341 14 generally is basically rigging the | | |
| 341 15 numbers to come out the way you want | | |
| 341 16 them? | | |
| 341 17 A: It's scientific misconduct. | | |
| 341 18 Q: And please turn over two | | |
| 341 19 more pages. Under, at the bottom, | | |
| 341 20 Recommendations,' do you see where Dr. | | |
| 341 21 Trontell says, 'The authors should | | |
| 341 22 document their methods in detail and | | |
| 341 23 respond to questions raised in this | | |
| 341 24 review in particular the noted | | |
| 342 1 inconsistencies in the study objectives, | | |
| 342 2 results and statistical findings of | | |
| 342 3 significance of their published ACR | | |
| 342 4 abstract and the August 2004 ISPE | | |
| 342 5 poster.' So, do you see there where | | |
| 342 6 she's expressing concern that you've come | | |
| 342 7 up with different conclusions and | | |
| 342 8 different methodologies between that | | |
| 342 9 original ACR abstract, and then your | | |
| 342 10 later poster, like we saw in the chart | | |
| 342 11 that I showed on the screen? Is that the | | |
| 342 12 subject that's being addressed here? | | |
| 342 13 A: Uh-huh. Yes. | | |
| 342 14 Q: And, in particular, what | | |
| 342 15 she's saying is that before you submit | | |
| 342 16 this article for publication, that you | | |
| 342 17 should address these issues and explain | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 342 18 | them, right? | | |
| 342 19 | A: Dr. Trontell is saying that, | | |
| 342 20 | but Dr. Trontell is not my supervisor. | | |
| 342 21 | She wrote this to Dr. Seligman. Dr. | | |
| 342 22 | Seligman, I believe, e-mailed it to me | | |
| 342 23 | with basically no instructions. And so | | |
| 342 24 | Dr. Trontell can have her opinions about | | |
| 343 1 | what it is I should do, but she's not my | | |
| 343 2 | supervisor, and, in fact, has never been | | |
| 343 3 | someone who reviews any of the work that | | |
| 343 4 | I do. | | |
| 343 5 | Q: In any event, you submitted | | |
| 343 6 | the article to the Lancet without making | | |
| 343 7 | the responses that Dr. Trontell said you | | |
| 343 8 | should make, right? | | |
| 343 9 | A: The responses were actually | | |
| 343 10 | included in the manuscript, A: B, we | | |
| 343 11 | submitted the manuscript with the | | |
| 343 12 | approval of my supervisors. Because I | | |
| 343 13 | sent multiple e-mails to Dr. Seligman and | | |
| 343 14 | to Dr. Trontell giving them my | | |
| 343 15 | interpretation of FDA's clearance | | |
| 343 16 | policies and asking them to instruct me | | |
| 343 17 | if I had misinterpreted them in any way, | | |
| 343 18 | because I was anxious to -- I wanted to | | |
| 343 19 | be sure that I followed all of FDA's | | |
| 343 20 | rules and procedures. And that if they | | |
| 343 21 | didn't get back to me, then I would | | |
| 343 22 | assume that I had interpreted them | | |
| 343 23 | correctly and that it is all right for me | | |
| 343 24 | to submit it. | | |
| 344 1 | Dr. Trontell consulted with | | |
| 344 2 | the head lawyer for the Center for Drug | | |
| 344 3 | Evaluation and Research, Jane Axelrod, | | |
| 344 4 | who basically said to Dr. Trontell by way | | |
| 344 5 | of e-mail that it was fine, that I could | | |
| 344 6 | submit it. And so Anne did not have a | | |
| 344 7 | written response to these questions, but | | |
| 344 8 | I had -- my understanding was I had the | | |
| 344 9 | permission of FDA to submit the paper. | | |
| 344 10 | And it was never my understanding, quite | | |
| 344 11 | honestly, that I was required to give | | |
| 344 12 | written responses to these questions, and | | |
| 344 13 | I tried to express that in an e-mail to | | |
| 344 14 | Dr. Paul Seligman somewhere around | | |
| 344 15 | November 10th or 9th or somewhere in that | | |
| 344 16 | neighborhood, because I was about to go | | |
| 344 17 | on a four-day weekend, because Veterans' | | |
| 344 18 | Day, which is November 11th, is a Federal | | |
| 344 19 | holiday, and I was going to take off the | | |
| 344 20 | 12th and then I would have a four-day | | |
| 344 21 | weekend. | | |
| 344 22 | And on the 9th, Dr. Seligman | | |
| 344 23 | said that I could take leave on Friday, | | |
| 344 24 | but before I left, he needed written | | |
| 345 1 | responses to these questions. And I | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 345 2 | e-mailed back that I hadn't understood | | |
| 345 3 | that that's what he wanted. And he never | | |
| 345 4 | came back. He had an entire day, | | |
| 345 5 | November 10th, Wednesday, the entire day | | |
| 345 6 | he had to disabuse me of my understanding | | |
| 345 7 | if he wanted to, and he never said to me | | |
| 345 8 | that, no, I misunderstood, I really do | | |
| 345 9 | want you to give a written response. And | | |
| 345 10 | so I think that I acted reasonably and | | |
| 345 11 | tried to get management to communicate | | |
| 345 12 | with me, and management, in this case, | | |
| 345 13 | did not answer my e-mails, did not come | | |
| 345 14 | back to me to communicate with me in | | |
| 345 15 | clear, unambiguous instructions about | | |
| 345 16 | what it is that they wanted me to do. | | |
| | | | |
| 353:2 -  353:18 | Graham, David 2006-05-09 | | |
| 353 2 | Q: And who is Dr. Steven | | |
| 353 3 | Galson? | | |
| 353 4 | A: He is the Center director | | |
| 353 5 | for CEDR. | | |
| 353 6 | Q: And I think you described | | |
| 353 7 | this morning that CDER, both the Office | | |
| 353 8 | of New Drugs and the Office For Drug | | |
| 353 9 | Safety are underneath CDER, which is the | | |
| 353 10 | Center for Drug Evaluation and Research, | | |
| 353 11 | right? | | |
| 353 12 | A: Right. | | |
| 353 13 | Q: And is Dr. Galson one of the | | |
| 353 14 | people that you think is part of this | | |
| 353 15 | very organized and orchestrated campaign | | |
| 353 16 | to smear and discredit you? | | |
| 353 17 | A: Yes, he was. He may have | | |
| 353 18 | been an unwitting participant. | | |
| | | | |
| 361:23 -  363:2 | Graham, David 2006-05-09 | | |
| 361 23 | (Whereupon, Deposition | | |
| 361 24 | Exhibit Graham-23, E-mails, | | |
| 362 1 | TOPOLE0000333, was marked for | | |
| 362 2 | identification.) | | |
| 362 3 | - - - | | |
| 362 4 | BY MR. BECK: | | |
| 362 5 | Q: What's Exhibit 23? | | |
| 362 6 | A: It looks like an e-mail | | |
| 362 7 | dated November 1st from me to Dr. Eric | | |
| 362 8 | Topol at the Cleveland Clinic. And it's | | |
| 362 9 | -- it looks like it's kind of like in | | |
| 362 10 | response to an e-mail that he had sent to | | |
| 362 11 | me. And there are several other e-mails | | |
| 362 12 | that went back and forth between Dr. | | |
| 362 13 | Topol and myself, dating back, I think, | | |
| 362 14 | to like the end of October when he first | | |
| 362 15 | telephoned me to ask if I knew who was in | | |
| 362 16 | FDA he could talk to about COX-2 pain | | |
| 362 17 | relievers and heart attack risk. And I | | |
| 362 18 | referred him to Shari Targum, whose | | |

Dedrick v. Merck Co., Inc.
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 362 19    review I spoke about earlier. | | |
| 362 20    Q:  You referred to Dr. Topol as | | |
| 362 21    at the Cleveland Clinic. Is he still at | | |
| 362 22    the Cleveland Clinic? | | |
| 362 23    A:  My understanding is that | | |
| 362 24    he's now at Case Western, but I'm not | | |
| 363 1    really -- it's basically what I read in | | |
| 363 2    the newspaper. | | |
| | | |
| 367:19 -    368:15    Graham, David 2006-05-09 | | |
| 367 19    Now, are you saying here | | |
| 367 20    that you thought that Merck decided to | | |
| 367 21    withdraw Vioxx on September 30 because | | |
| 367 22    people at FDA management gave them a | | |
| 367 23    heads up that your article was going to | | |
| 367 24    be published, and Merck said we'd better | | |
| 368 1    get Vioxx off the market before that | | |
| 368 2    article was published? | | |
| 368 3    A:  No. I was just pointing to | | |
| 368 4    the coincidence of the dates. | | |
| 368 5    Q:  Well, you said it wasn't a | | |
| 368 6    coincidence, didn't you? | | |
| 368 7    A:  Well, I don't think it was a | | |
| 368 8    coincidence, but... | | |
| 368 9    Q:  So, that's my question. | | |
| 368 10    Do you think that Merck's | | |
| 368 11    withdrawal on September 30 was timed | | |
| 368 12    because people at the FDA told Merck that | | |
| 368 13    Dr. Graham is going to publish an | | |
| 368 14    article, and so Merck said we'd better | | |
| 368 15    get this drug off the market? | | |
| | | |
| 368:17 -    369:1    Graham, David 2006-05-09 | | |
| 368 17    THE WITNESS:  No, I don't. | | |
| 368 18    BY MR. BECK: | | |
| 368 19    Q:  That's what you told Dr. | | |
| 368 20    Horton -- | | |
| 368 21    A:  I know that. | | |
| 368 22    Q:  -- though, isn't it? | | |
| 368 23    A:  That's what I -- and at the | | |
| 368 24    time, I think under the duress that I was | | |
| 369 1    under, that is what I believed. | | |
| | | |
| 369:11 -    369:20    Graham, David 2006-05-09 | | |
| 369 11    Q:  That was kind of a wild and | | |
| 369 12    crazy charge you made to the editor of | | |
| 369 13    Lancet concerning -- | | |
| 369 14    A:  No. | | |
| 369 15    Q:  -- FDA management, don't you | | |
| 369 16    agree? | | |
| 369 17    A:  It's not wild and crazy. If | | |
| 369 18    you experienced what I experienced, you | | |
| 369 19    would understand -- you would understand | | |
| 369 20    better. | | |
| | | |
| 370:14 -    374:21    Graham, David 2006-05-09 | | |

Dedrick v. Merck Co., Inc.
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 370 14 | Q: Dr. Graham, as an | | |
| 370 15 | epidemiologist, do you deal with the | | |
| 370 16 | concept of incidence rates? | | |
| 370 17 | A: Yes, I do. | | |
| 370 18 | Q: And in a sentence or two, | | |
| 370 19 | can you describe what an incidence rate | | |
| 370 20 | is? | | |
| 370 21 | A: It's the occurrence of an | | |
| 370 22 | outcome, a disease, in a defined | | |
| 370 23 | population over a specified period of | | |
| 370 24 | time. So, you might express something as | | |
| 371 1 | 10 per 100,000 per year would be an | | |
| 371 2 | incidence rate. | | |
| 371 3 | Q: I have created a chart that | | |
| 371 4 | I want to go over with you, and I want to | | |
| 371 5 | look at some numbers from the Kaiser | | |
| 371 6 | study that you did, and I understand that | | |
| 371 7 | an adjustment was applied for a | | |
| 371 8 | cardiovascular risk score that I'll get | | |
| 371 9 | to later in the examination, but I want | | |
| 371 10 | to look at the kind of raw numbers about | | |
| 371 11 | incidence rates of heart attacks and | | |
| 371 12 | sudden cardiac death for Vioxx and | | |
| 371 13 | Celebrex as you saw them in your study. | | |
| 371 14 | Okay? | | |
| 371 15 | So, if you will take out | | |
| 371 16 | Exhibit 4, which is your 2005 Lancet | | |
| 371 17 | publication, and if you'll look over at | | |
| 371 18 | the third page in the right column under | | |
| 371 19 | Results,' tell me if the numbers I | | |
| 371 20 | filled in on the screen there for number | | |
| 371 21 | of users for Vioxx of something over | | |
| 371 22 | 26,000, and then for Celebrex, something | | |
| 371 23 | over 40,000, are those accurate numbers | | |
| 371 24 | -- | | |
| 372 1 | A: Yes. | | |
| 372 2 | Q: -- from your study? | | |
| 372 3 | A: Yes. | | |
| 372 4 | Q: And then if you'll look at | | |
| 372 5 | Table 3 on that same page or is -- Table | | |
| 372 6 | 3, I guess it's the next page. If you'll | | |
| 372 7 | look at Table 3, do I have it right that | | |
| 372 8 | the number of heart attacks and sudden | | |
| 372 9 | cardiac deaths, Vioxx was 68 and for | | |
| 372 10 | Celebrex was 126? | | |
| 372 11 | A: Yes. | | |
| 372 12 | Q: And when we're talking about | | |
| 372 13 | Vioxx here, that includes both low dose | | |
| 372 14 | and high dose, right? | | |
| 372 15 | A: Correct. | | |
| 372 16 | Q: And so just taking the | | |
| 372 17 | numbers that you report before the | | |
| 372 18 | adjustments are made, is this correct | | |
| 372 19 | that the incidence rate of heart attacks | | |
| 372 20 | and sudden cardiac deaths for Vioxx would | | |
| 372 21 | be about .25 percent, whereas for | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 372 22 | Celebrex, it would actually be a little | | |
| 372 23 | higher, .31 percent? | | |
| 372 24 | A: No. That's not an incidence | | |
| 373 1 | rate. That is a proportion. An | | |
| 373 2 | incidence rate would take into account | | |
| 373 3 | the amount of time that each of the users | | |
| 373 4 | was on the drug, and so then what you'd | | |
| 373 5 | end up having is years of exposure to | | |
| 373 6 | Vioxx in the denominator and number of | | |
| 373 7 | cases in the numerator and the same for | | |
| 373 8 | Celebrex. So, these are proportions, but | | |
| 373 9 | they are not incidence rates. | | |
| 373 10 | Q: Okay. | | |
| 373 11 | So, proportions. | | |
| 373 12 | And the proportions of | | |
| 373 13 | Celebrex users who experienced heart | | |
| 373 14 | attacks or sudden cardiac deaths was | | |
| 373 15 | actually slightly higher than the | | |
| 373 16 | proportion of Vioxx users, correct? | | |
| 373 17 | A: That is correct. | | |
| 373 18 | Q: And you said that in order | | |
| 373 19 | to do an incidence rate, you'd want to | | |
| 373 20 | know how long they were using the drugs, | | |
| 373 21 | so you'd take into account patient years; | | |
| 373 22 | is that right? | | |
| 373 23 | A: Correct. | | |
| 373 24 | MR. BECK: Let me mark for | | |
| 374 1 | you, please, Exhibit 25. | | |
| 374 2 | - - - | | |
| 374 3 | (Whereupon, Deposition | | |
| 374 4 | Exhibit Graham-25, Chart | | |
| 374 5 | FDACDER005940, was marked for | | |
| 374 6 | identification.) | | |
| 374 7 | - - - | | |
| 374 8 | BY MR. BECK: | | |
| 374 9 | Q: And this Exhibit 25, do you | | |
| 374 10 | recognize this as a document or a page of | | |
| 374 11 | a longer document that was created as | | |
| 374 12 | part of your study? | | |
| 374 13 | A: Yes. I don't recall, | | |
| 374 14 | though, at what stage in the study that | | |
| 374 15 | this run was done, and so I don't know if | | |
| 374 16 | it included sort of the modifications | | |
| 374 17 | that we had to make because of | | |
| 374 18 | eligibility problems and the like. But | | |
| 374 19 | it is from our study. I'm not able here | | |
| 374 20 | to read the column on the right-hand side | | |
| 374 21 | because of it being smudged. | | |
| | | | |
| 375:5 -   386:13 | Graham, David 2006-05-09 | | |
| 375 5 | In the right-hand column, | | |
| 375 6 | while we may have to struggle with the | | |
| 375 7 | exact numbers, it does say, does it not, | | |
| 375 8 | incidence rate per 1,000 patient years'? | | |
| 375 9 | A: That's what it looks like it | | |
| 375 10 | says to me, yes. | | |

Dedrick v. Merck Co., Inc.
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 375 11 | Q: Okay. | | |
| 375 12 | I mean, there's no doubt it | | |
| 375 13 | says this? | | |
| 375 14 | A: Right, no. This table is | | |
| 375 15 | set up to calculate incidence rates, so, | | |
| 375 16 | there's no question about that. | | |
| 375 17 | Q: Okay. | | |
| 375 18 | So, and then if we look down | | |
| 375 19 | at rofecoxib, that's Vioxx as we know, | | |
| 375 20 | correct? | | |
| 375 21 | A: Right. | | |
| 375 22 | Q: And then the rofecoxib | | |
| 375 23 | number is 7. something, right? | | |
| 375 24 | A: Right. | | |
| 376 1 | Q: Again, we'll just blow it | | |
| 376 2 | up. And does that look like 7.49 to you | | |
| 376 3 | once it's been blown up? | | |
| 376 4 | A: Yes. When I was looking at | | |
| 376 5 | this (indicating), I would have said | | |
| 376 6 | 7.48, but it looks like 7.49 there | | |
| 376 7 | (indicating). | | |
| 376 8 | Q: Okay. | | |
| 376 9 | Well, close enough for | | |
| 376 10 | government work. It's 7.48 or 7.49, | | |
| 376 11 | right? | | |
| 376 12 | A: Right. | | |
| 376 13 | Q: And then if we look up at | | |
| 376 14 | Celebrex, celecoxib, it is like 7.8 | | |
| 376 15 | something? | | |
| 376 16 | A: Yes. It looks like 7.84 to | | |
| 376 17 | me, but... | | |
| 376 18 | Q: Okay. | | |
| 376 19 | Whatever it is, it's | | |
| 376 20 | actually the incidence rate taking into | | |
| 376 21 | account the patient years, as you said, | | |
| 376 22 | the incidence rate for heart attacks and | | |
| 376 23 | sudden cardiac death for Celebrex is | | |
| 376 24 | actually higher than the incidence rate | | |
| 377 1 | for sudden cardiac death in heart attacks | | |
| 377 2 | for Vioxx, correct? | | |
| 377 3 | A: It's a crude incidence rate, | | |
| 377 4 | and the number is higher. They're | | |
| 377 5 | probably at this point with crude rates | | |
| 377 6 | not statistically different, but Celebrex | | |
| 377 7 | rate is higher than the rofecoxib or | | |
| 377 8 | Vioxx rate. | | |
| 377 9 | Q: Yeah. And I didn't mean to | | |
| 377 10 | suggest that there was a statistically | | |
| 377 11 | significant difference, but the Lancet | | |
| 377 12 | article, one of the conclusions is that | | |
| 377 13 | there is a statistically significant | | |
| 377 14 | difference between Vioxx and Celebrex and | | |
| 377 15 | that Vioxx has a statistically | | |
| 377 16 | significant higher risk of serious | | |
| 377 17 | coronary heart disease, right? | | |
| 377 18 | A: Right. And that's based on | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 377 19 | odds ratios as opposed to incidence | | |
| 377 20 | rates. | | |
| 377 21 | Q: But the incidence rates | | |
| 377 22 | would be basically the same? | | |
| 377 23 | A: Yes. The incidence rates | | |
| 377 24 | form the base of the data, but this is | | |
| 378 1 | before adjustments have been done for the | | |
| 378 2 | types of patients that are given these | | |
| 378 3 | different drugs. | | |
| 378 4 | Q: And that's what I want to | | |
| 378 5 | get to now. | | |
| 378 6 | So, you start out with | | |
| 378 7 | actual numbers of users and how long they | | |
| 378 8 | use the drug and how many of them had | | |
| 378 9 | heart attacks, and Vioxx and Celebrex | | |
| 378 10 | look basically identical. And then in | | |
| 378 11 | your analysis, you applied adjustments to | | |
| 378 12 | the Vioxx users and Celebrex users, and | | |
| 378 13 | the end result of those adjustments was | | |
| 378 14 | that Vioxx ended up appearing to have a | | |
| 378 15 | higher risk, right? | | |
| 378 16 | A: Yes. | | |
| 378 17 | Q: And the person who -- first | | |
| 378 18 | of all, these adjustments, at least one, | | |
| 378 19 | a significant one is called a cardiac | | |
| 378 20 | risk score, cardiovascular risk score, | | |
| 378 21 | right? | | |
| 378 22 | A: Right. | | |
| 378 23 | Q: Is that the main adjustment | | |
| 378 24 | that was applied? | | |
| 379 1 | A: *That was the main* | | |
| 379 2 | adjustment, and it represented basically | | |
| 379 3 | a collapsing of 25 or 30 other variables | | |
| 379 4 | into a single measure. | | |
| 379 5 | Q: And the cardiovascular risk | | |
| 379 6 | score, basically that says, well, people | | |
| 379 7 | who take one type of medicine might have | | |
| 379 8 | a whole bunch of other factors that make | | |
| 379 9 | them prone to have heart attacks more | | |
| 379 10 | than people who take a different | | |
| 379 11 | medicine, and we want to take that into | | |
| 379 12 | account? | | |
| 379 13 | A: Right. They have to be | | |
| 379 14 | differential distribution of risk | | |
| 379 15 | factors. | | |
| 379 16 | Q: And the person who developed | | |
| 379 17 | the methodology to come up with the | | |
| 379 18 | cardiovascular risk scores for Celebrex | | |
| 379 19 | and Vioxx in your study was Dr. Wayne | | |
| 379 20 | Ray, who you mentioned before, right? | | |
| 379 21 | A: Well, actually, we reference | | |
| 379 22 | him as having used it, but the use of | | |
| 379 23 | this -- it's basically -- it's a | | |
| 379 24 | confounder's score. The use of a | | |
| 380 1 | confounder's score in case control | | |
| 380 2 | studies has been well described by Jim | | |

Dedrick v. Merck Co., Inc.
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 380 3 | Schlesselman in his textbook on case | | |
| 380 4 | control studies and then by Norman | | |
| 380 5 | Breslow in his textbook on case control | | |
| 380 6 | studies. And so this is a technique | | |
| 380 7 | that's been described before. It's a | | |
| 380 8 | technique that Dr. Ray has used, but he's | | |
| 380 9 | not the person who created it, developed | | |
| 380 10 | it. | | |
| 380 11 | Q:  Well, he didn't invent the | | |
| 380 12 | idea of a cardiovascular risk score, but | | |
| 380 13 | he's the one who came up with the formula | | |
| 380 14 | to account for all of these variables, | | |
| 380 15 | and he's the one who did the statistical | | |
| 380 16 | heavy lifting in order to implement that | | |
| 380 17 | idea in this case, right? | | |
| 380 18 | A:  In this case, he taught me | | |
| 380 19 | how to do it. I was the one who did it, | | |
| 380 20 | working with him by telecon. | | |
| 380 21 | Q:  And Dr. Ray and you ended up | | |
| 380 22 | assigning a higher cardiovascular risk | | |
| 380 23 | score to the Celebrex users to the Vioxx | | |
| 380 24 | users, correct? | | |
| 381 1 | A:  That's correct. | | |
| 381 2 | Q:  And the result of that then | | |
| 381 3 | was that even though the incidence rate | | |
| 381 4 | was the same -- | | |
| 381 5 | A:  The crude incidence rate. | | |
| 381 6 | Q:  -- when you applied the | | |
| 381 7 | cardiovascular risk score that the two of | | |
| 381 8 | you came up with, that's what accounts | | |
| 381 9 | for the difference in your paper between | | |
| 381 10 | risks of Vioxx and risks of Celebrex, | | |
| 381 11 | right? | | |
| 381 12 | A:  It's not just the | | |
| 381 13 | cardiovascular risk score. It's | | |
| 381 14 | adjusting for these risk factors. And in | | |
| 381 15 | our paper, we showed that using all of | | |
| 381 16 | the variables, all of the risk factors in | | |
| 381 17 | our study to adjust for cardiovascular | | |
| 381 18 | risk or using the cardiovascular risk | | |
| 381 19 | score gave us virtually identical | | |
| 381 20 | answers. But use of this confounder's | | |
| 381 21 | score was a more efficient, statistically | | |
| 381 22 | efficient way to deal with the data. | | |
| 381 23 | Q:  And, of course, Dr. Ray was | | |
| 381 24 | involved heavily in the confounder's | | |
| 382 1 | score, right? | | |
| 382 2 | A:  He was the person who worked | | |
| 382 3 | with me in showing me how to derive that | | |
| 382 4 | score. | | |
| 382 5 | Q:  Okay. | | |
| 382 6 | And here I've put up on the | | |
| 382 7 | screen a copy of the article, the Lancet | | |
| 382 8 | article that's already been marked as an | | |
| 382 9 | exhibit. | | |
| 382 10 | When people write articles | | |

Dedrick v. Merck Co., Inc.
## Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 382 11 | in scientific journals, are they supposed | | |
| 382 12 | to disclose any financial conflicts of | | |
| 382 13 | interest that they have? | | |
| 382 14 | A:  They should, and I believe | | |
| 382 15 | that Dr. Ray did. | | |
| 382 16 | Q:  Okay. | | |
| 382 17 | Let's take a look at that. | | |
| 382 18 | If you'd go to Page 6. The person who | | |
| 382 19 | came, who taught you how to make these | | |
| 382 20 | adjustments that resulted in Vioxx | | |
| 382 21 | looking like it had a higher risk than | | |
| 382 22 | Celebrex, he had two significant | | |
| 382 23 | conflicts of interest, didn't he? | | |
| 382 24 | A:  Well, he has two potential | | |
| 383 1 | conflicts of interest, and I was unaware | | |
| 383 2 | of these when I invited him to | | |
| 383 3 | participate in our study, and I was | | |
| 383 4 | actually unaware of them until it came | | |
| 383 5 | time to do our poster, at which time then | | |
| 383 6 | you need to put on it, you know, the | | |
| 383 7 | conflict of interest statement, and it | | |
| 383 8 | had never crossed my mind to ask people | | |
| 383 9 | about it. So, that was when I learned | | |
| 383 10 | about it. And -- | | |
| 383 11 | Q:  And I want you to complete | | |
| 383 12 | this, but before you do, this 'WAR,' this | | |
| 383 13 | thing I have up on the screen, that's | | |
| 383 14 | Wayne A. Ray, right? | | |
| 383 15 | A:  Yes. | | |
| 383 16 | Q:  And he's a consultant to | | |
| 383 17 | Pfizer, it says in this disclosure, | | |
| 383 18 | correct? | | |
| 383 19 | A:  Yes. | | |
| 383 20 | Q:  Who is it that makes | | |
| 383 21 | Celebrex? | | |
| 383 22 | A:  Pfizer. | | |
| 383 23 | Q:  And so he's got a financial | | |
| 383 24 | interest in making Celebrex look good, | | |
| 384 1 | right? | | |
| 384 2 | A:  You could argue that he | | |
| 384 3 | does, but that didn't operate in our | | |
| 384 4 | study. | | |
| 384 5 | Q:  And then he's also -- under | | |
| 384 6 | the conflict of interest, they say that | | |
| 384 7 | he's a consultant to plaintiffs' | | |
| 384 8 | attorneys regarding Vioxx, right? | | |
| 384 9 | A:  Yes. | | |
| 384 10 | Q:  And did you know that he's | | |
| 384 11 | actually served as an expert witness in | | |
| 384 12 | Vioxx trials? | | |
| 384 13 | A:  I learned about that only | | |
| 384 14 | like within the last month or so, but I | | |
| 384 15 | didn't know that beforehand. | | |
| 384 16 | Q:  So, anyway, here is Dr. Ray | | |
| 384 17 | teaching you how to make these | | |
| 384 18 | adjustments, and these adjustments were | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 384 19 | made by the time your poster was | | |
| 384 20 | published, right? | | |
| 384 21 | A: Yes. | | |
| 384 22 | Q: And it wasn't until after he | | |
| 384 23 | taught you how to make the adjustments | | |
| 384 24 | and all the adjustments were made that | | |
| 385 1 | you even found out that he was a paid | | |
| 385 2 | consultant to the maker of Celebrex and | | |
| 385 3 | was being paid by plaintiffs' lawyers who | | |
| 385 4 | were suing Merck in Vioxx cases? Is that | | |
| 385 5 | right? | | |
| 385 6 | A: Yes. But that didn't impact | | |
| 385 7 | the methodology that was used to derive | | |
| 385 8 | this adjustment, this confounder's score. | | |
| 385 9 | This is a way of adjusting for a | | |
| 385 10 | difference in distribution of risk | | |
| 385 11 | factors across exposure groups. And so | | |
| 385 12 | he may have these associations, but that | | |
| 385 13 | doesn't ~ | | |
| 385 14 | Q: 'May have,' what do you mean | | |
| 385 15 | may have'? | | |
| 385 16 | A: Well, he has those | | |
| 385 17 | associations. They don't affect the way | | |
| 385 18 | statistics work. They don't affect the | | |
| 385 19 | way, the methods of how one derives a | | |
| 385 20 | confounder's score. They don't affect | | |
| 385 21 | the way one does a regression model and | | |
| 385 22 | what happens after the computer program | | |
| 385 23 | spits out the results. | | |
| 385 24 | Q: Is there a book you can go | | |
| 386 1 | to or an article that says, here's the | | |
| 386 2 | formula, here's the exact way to | | |
| 386 3 | implement this idea of a confounder's | | |
| 386 4 | score in your study, or did it require | | |
| 386 5 | some judgment by Dr. Ray as to how he was | | |
| 386 6 | going to implement this idea when coming | | |
| 386 7 | up with a confounder's score and the | | |
| 386 8 | cardiovascular risk score? | | |
| 386 9 | A: It's described in | | |
| 386 10 | Schlesselman's textbook and in Breslow's | | |
| 386 11 | textbook. I don't recall that all the | | |
| 386 12 | methods are described there, but the | | |
| 386 13 | notion of how to do this is. | | |
| 388:14 - 388:23 | Graham, David 2006-05-09 | | |
| 388 14 | Q: And you did say that the | | |
| 388 15 | fellow who taught you how to do it was | | |
| 388 16 | Dr. Ray, the guy with the two conflicts, | | |
| 388 17 | right? | | |
| 388 18 | A: Yes, that is correct. | | |
| 388 19 | Q: And I think you said this | | |
| 388 20 | morning that there are 'lies, damned lies | | |
| 388 21 | and statistics,' right? | | |
| 388 22 | A: I said that, too. It | | |
| 388 23 | doesn't apply here, but I did say that. | | |

**Dedrick v. Merck Co., Inc.**

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| :2 -   400:18 | Graham, David 2006-05-09 | | |
| 389 2 | We talked about how from the | | |
| 389 3 | original abstract to the poster, the | | |
| 389 4 | number of high-dose patients changed. Do | | |
| 389 5 | you remember that? | | |
| 389 6 | A: Uh-huh. | | |
| 389 7 | Q: So, you had a smaller number | | |
| 389 8 | of high-dose patients in the abstract | | |
| 389 9 | when you said there was no statistically | | |
| 389 10 | significant difference between high-dose | | |
| 389 11 | Vioxx and basically no use of medicine. | | |
| 389 12 | And then some people got changed, and the | | |
| 389 13 | net result was that there was a larger | | |
| 389 14 | number of high-dose patients when it came | | |
| 389 15 | time to write up the poster. Do you | | |
| 389 16 | remember that? | | |
| 389 17 | A: Yes. | | |
| 389 18 | Q: And we looked at Dr. | | |
| 389 19 | Trontell's memo where she expressed | | |
| 389 20 | concern about that. Do you recall that? | | |
| 389 21 | A: Yes. | | |
| 389 22 | Q: To try to save time, because | | |
| 389 23 | you may remember the numbers, I suspect | | |
| 389 24 | you do, in the abstract when you were | | |
| 390 1 | talking about high-dose people, am I | | |
| 90 2 | right that you had five people who had | | |
| 90 3 | experienced -- five so-called cases and | | |
| 390 4 | seven so-called controls? | | |
| 390 5 | A: Correct. | | |
| 390 6 | Q: And in one sentence, what is | | |
| 390 7 | a case and what's a control? | | |
| 390 8 | A: A case is someone who had a | | |
| 390 9 | heart attack or sudden death. And a | | |
| 390 10 | control was someone who was randomly | | |
| 390 11 | selected to compare to that person, who | | |
| 390 12 | on that date had not, as of that date, | | |
| 390 13 | had a heart attack or sudden death. | | |
| 390 14 | Q: Okay. | | |
| 390 15 | And then sort of going | | |
| 390 16 | forward to by the time your article was | | |
| 390 17 | published in The Lancet, instead of five | | |
| 390 18 | cases with the same population group | | |
| 390 19 | after the reclassification, you now have | | |
| 390 20 | ten cases, right? | | |
| 390 21 | A: Yes. | | |
| 390 22 | Q: So, the number of heart | | |
| 390 23 | attacks and sudden cardiac deaths that | | |
| 390 24 | you were ascribing to the high-dose Vioxx | | |
| 391 1 | users doubled from when you did the | | |
| 391 2 | abstract to when you did the article, | | |
| 91 3 | right? | | |
| 91 4 | A: Correct. | | |
| 391 5 | Q: And then you also, instead | | |
| 391 6 | of seven controls, you had eight | | |
| 391 7 | controls, right? | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 391 8    A: Correct. | | |
| 391 9    Q: And was it your idea to do | | |
| 391 10   this reclassification? | | |
| 391: 11  A: What I noticed when we were | | |
| 391: 12  looking -- | | |
| 391: 13  Q: Before you say what you | | |
| 391: 14  noticed -- | | |
| 391: 15  A: Yes. | | |
| 391: 16  Q: -- can you answer, was it | | |
| 391: 17  your idea to do the reclassification? | | |
| 391 18   A: Yes. | | |
| 391 19   Q: And then before -- I think | | |
| 391 20   this is clear, but I want to make sure. | | |
| 391 21   Before you did the | | |
| 391 22   reclassification, even the high-dose | | |
| 391 23   Vioxx users, the difference in risk | | |
| 391 24   between them and people who didn't use | | |
| 392 1    any medicine was not statistically | | |
| 392 2    significant, and then after you did the | | |
| 392 3    reclassification, then it became | | |
| 392 4    statistically significant, right? | | |
| 392 5    A: That's correct. | | |
| 392 6    Q: Now, did any of the authors, | | |
| 392 7    your co-authors, express concern about | | |
| 392 8    whether this reclassification was proper? | | |
| 392 9    A: Dr. Craig Cheetham from | | |
| 392 10   Kaiser did express reservations about the | | |
| 392 11   reclassification. His concern was | | |
| 392 12   primarily that it be adequately | | |
| 392 13   described, and that eventually was done | | |
| 392 14   to his satisfaction, and he was a | | |
| 392 15   co-author on the published paper. | | |
| 392 16   - - - | | |
| 392 17   (Whereupon, Deposition | | |
| 392 18   Exhibit Graham-26, E-mail | | |
| 392 19   10-23-04 KP002315, was marked for | | |
| 392 20   identification.) | | |
| 392 21   - - - | | |
| 392 22   BY MR. BECK: | | |
| 392 23   Q: Please take a look at | | |
| 392 24   Exhibit 26. Have you seen Exhibit 26 | | |
| 393 1    before? | | |
| 393 2    A: Yes, I have. | | |
| 393 3    Q: And this is a -- is this an | | |
| 393 4    e-mail from doctor -- how do you | | |
| 393 5    pronounce his last name? | | |
| 393 6    A: Cheetham. | | |
| 393 7    Q: -- Cheetham to you and other | | |
| 393 8    co-authors in the study? | | |
| 393 9    A: Yes, it is. | | |
| 393 10   Q: Does Dr. Cheetham say here | | |
| 393 11   in the first paragraph, 'I have never | | |
| 393 12   been comfortable with the recoding of | | |
| 393 13   Vioxx patients into the high dose | | |
| 393 14   category. However, it was done with the | | |
| 393 15   full participation of five investigators. | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 393 16 | The process by which this was done needs | | |
| 393 17 | to be fully disclosed in the methods | | |
| 393 18 | section. Therefore, the methods section | | |
| 393 19 | needs to be clear on three points.' And | | |
| 393 20 | then his first point is the coding 'was | | |
| 393 21 | done post hoc.' Do you see that? | | |
| 393 22 | A: Uh-huh. | | |
| 393 23 | Q: And that 'post hoc,' did you | | |
| 393 24 | understand that to mean that that was | | |
| 394 1 | after the fact? | | |
| 394 2 | A: The fact that I think he's | | |
| 394 3 | talking about here is, is that we hadn't | | |
| 394 4 | planned on doing this at the start of the | | |
| 394 5 | study. | | |
| 394 6 | Q: Okay. | | |
| 394 7 | So, this was something that | | |
| 394 8 | was not part of the original study plan, | | |
| 394 9 | but then the reclassification took place | | |
| 394 10 | after -- in fact, it was after you | | |
| 394 11 | learned of the results reported in the | | |
| 394 12 | abstract of no statistically significant | | |
| 394 13 | difference, right? | | |
| 394 14 | A: That coincidence in timing | | |
| 394 15 | is correct. | | |
| 394 16 | Q: Okay. | | |
| 394 17 | So, you learned no | | |
| 394 18 | statistically significant difference | | |
| 394 19 | based on the planned classification, and | | |
| 394 20 | then you changed the plan and | | |
| 394 21 | reclassified, right? | | |
| 394 22 | A: We did that, and for a good | | |
| 394 23 | reason, because we had misclassification | | |
| 394 24 | of the exposure. And to leave that | | |
| 395 1 | misclassification of exposure in the | | |
| 395 2 | study would be to misrepresent the study, | | |
| 395 3 | and so it became necessary -- we were | | |
| 395 4 | trying to use a computerized algorithm to | | |
| 395 5 | classify dose. And what we discovered | | |
| 395 6 | was that just because somebody was | | |
| 395 7 | getting a 50-milligram tablet didn't mean | | |
| 395 8 | they were taking 50 milligrams a day. | | |
| 395 9 | Sometimes it was cheaper for patients to | | |
| 395 10 | take the 50 milligram tablet and break it | | |
| 395 11 | in half and actually take 25 milligrams a | | |
| 395 12 | day or to take two 25s instead of 50. | | |
| 395 13 | So, we were obligated to correct that | | |
| 395 14 | misclassification once we discovered that | | |
| 395 15 | it was present. | | |
| 395 16 | Q: And the second point he | | |
| 395 17 | makes is, 'All five investigators | | |
| 395 18 | participated.' And then he has the | | |
| 395 19 | initials of the five investigators, | | |
| 395 20 | including 'DG,' and that's David Graham, | | |
| 395 21 | you, right? | | |
| 395 22 | A: That's right. And I was | | |
| 395 23 | part of the call that this took place in, | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 395 24 | but I was not a voting member whose votes | | |
| 396 1 | would determine whether or not | | |
| 396 2 | reclassification occurred. For | | |
| 396 3 | reclassification to occur, these other | | |
| 396 4 | four people had to agree that based on | | |
| 396 5 | the evidence that they saw about how | | |
| 396 6 | Vioxx was being used, that the patients | | |
| 396 7 | should be reclassified. | | |
| 396 8 | Q:  And then his third point | | |
| 396 9 | was, 'David Graham was not blinded to | | |
| 396 10 | cases and controls when the recoding was | | |
| 396 11 | done.' | | |
| 396 12 | Now, you talked about cases | | |
| 396 13 | being -- that's where somebody had a | | |
| 396 14 | heart attack and controls being somebody | | |
| 396 15 | did not have a heart attack. And when he | | |
| 396 16 | says that you were 'not blinded to cases | | |
| 396 17 | and controls,' does that mean that at the | | |
| 396 18 | time that individual patients were | | |
| 396 19 | reclassified from short-term users to | | |
| 396 20 | long-term users, you had access to the | | |
| 396 21 | information that would tell you whether, | | |
| 396 22 | in fact, patient A had a heart attack or | | |
| 396 23 | did not have a heart attack? | | |
| 396 24 | A:  That's correct, and that's | | |
| 397 1 | why I wasn't a voting member. | | |
| 397 2 | Q:  So, what Dr. Cheetham said | | |
| 397 3 | was that, fine, we made these | | |
| 397 4 | adjustments, but our article needs to set | | |
| 397 5 | forth what we did and how we did it and | | |
| 397 6 | needs to say that it was not part of the | | |
| 397 7 | original plan, that all five | | |
| 397 8 | investigators, including Dr. Graham, | | |
| 397 9 | participated, and when Dr. Graham was | | |
| 397 10 | participating, he knew which patients had | | |
| 397 11 | heart attacks and which ones didn't. | | |
| 397 12 | That's what he wanted to be put forth in | | |
| 397 13 | the article as published in Lancet, | | |
| 397 14 | right? | | |
| 397 15 | A:  That's what he says in this | | |
| 397 16 | e-mail. | | |
| 397 17 | Q:  And, you didn't do -- in | | |
| 397 18 | fact, he says at the bottom of this | | |
| 397 19 | e-mail, 'From my perspective this issue | | |
| 397 20 | is not negotiable,' right? | | |
| 397 21 | A:  Yes. | | |
| 397 22 | Q:  But you did not make the | | |
| 397 23 | disclosure that Dr. Cheetham felt was | | |
| 397 24 | necessary, and, in fact, not even | | |
| 398 1 | negotiable, did you? | | |
| 398 2 | A:  We placed in the methods, | | |
| 398 3 | had a description of the process that we | | |
| 398 4 | used to reclassify these cases. It | | |
| 398 5 | didn't meet with Dr. Cheetham's -- his | | |
| 398 6 | personal requirements, but the other | | |
| 398 7 | co-authors were quite comfortable, and | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 398 8 | there's a lot of e-mail traffic about | | |
| 398 9 | that. | | |
| 398 10 | I will add that after this, | | |
| 398 11 | I had a conversation, after we submitted | | |
| 398 12 | the paper to the Lancet, with the editor | | |
| 398 13 | of the Lancet, Dr. Horton, in which I | | |
| 398 14 | described in detail all of these things. | | |
| 398 15 | And Dr. Horton had no problem with the | | |
| 398 16 | way that we had conducted this, and when | | |
| 398 17 | Dr. Cheetham learned that, his | | |
| 398 18 | reservations went away. | | |
| 398 19 | Q:  Well, when you say that it | | |
| 398 20 | wasn't done exactly the way he said it | | |
| 398 21 | should be done, the way that it was | | |
| 398 22 | actually done, the disclosures that were | | |
| 398 23 | made in the Lancet, they left you out | | |
| 398 24 | when it described who did the recoding, | | |
| 399 1 | isn't that true? | | |
| 399 2 | A:  Because I didn't vote on the | | |
| 399 3 | recoding. The recoding required the | | |
| 399 4 | unanimous vote to change of the four | | |
| 399 5 | people listed, and if even one of them | | |
| 399 6 | said that the case should not be recoded, | | |
| 399 7 | it wasn't recoded. And -- | | |
| 399 8 | Q:  Did the Lancet article | | |
| 399 9 | disclose that you were the one who | | |
| 399 10 | suggested the reclassification after you | | |
| 399 11 | already knew which patients had heart | | |
| 399 12 | attacks and which ones didn't? | | |
| 399 13 | A:  No. But that wasn't -- the | | |
| 399 14 | editor didn't feel that that was | | |
| 399 15 | necessary. | | |
| 399 16 | Q:  Did the Lancet article | | |
| 399 17 | disclose that even though you say you | | |
| 399 18 | didn't have a vote, you wrote memos to | | |
| 399 19 | the other authors saying here's the | | |
| 399 20 | people I think ought to be reclassified? | | |
| 399 21 | A:  I did send a list of patient | | |
| 399 22 | IDs that I thought that there was a | | |
| 399 23 | question about the reclassification, and | | |
| 399 24 | each of the members of the study team | | |
| 400 1 | were asked to come up with a similar | | |
| 400 2 | list. And then that composite list was | | |
| 400 3 | what the group voted on together, and | | |
| 400 4 | there were 29 or 30 patients in that | | |
| 400 5 | group that the four participants voted | | |
| 400 6 | upon. | | |
| 400 7 | Q:  Did the Lancet article | | |
| 400 8 | disclose that even though you didn't have | | |
| 400 9 | a vote, that you, knowing who had heart | | |
| 400 10 | attacks and who didn't, came up with a | | |
| 400 11 | list of people that you wanted the others | | |
| 400 12 | to look at and you suggested should be | | |
| 400 13 | reclassified? Did the Lancet article | | |
| 400 14 | disclose that? | | |
| 400 15 | A:  No, it didn't. But the | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 400 16 | editor was fully aware of it and believed | | |
| 400 17 | that the process, the voting process was | | |
| 400 18 | sufficient and stringent enough. | | |
| | | | |
| 402:20 - 403:6 | Graham, David 2006-05-09 | | |
| 402: 20 | Q: Before our break, Dr. | | |
| 402: 21 | Graham, we started to discuss this | | |
| 402: 22 | estimate of yours of excess heart attacks | | |
| 402: 23 | and sudden cardiac deaths, your number of | | |
| 402: 24 | 88,000 to 139,000. | | |
| 403: 1 | And I think we covered this, | | |
| 403: 2 | but am I correct that even though you | | |
| 403: 3 | published this in your Kaiser study, the | | |
| 403: 4 | numbers did not come from the work that | | |
| 403: 5 | you did with the Kaiser information? | | |
| 403: 6 | A: That's correct. | | |
| | | | |
| 403:7 - 405:1 | Graham, David 2006-05-09 | | |
| 403 7 | Q.   And did you say that they | | |
| 403 8 | came from the VIGOR study and the APPROVe | | |
| 403 9 | study? | | |
| 403 10 | A.   Correct. | | |
| 403 11 | Q.   In fact, you had to take | | |
| 403 12 | some numbers from VIGOR and APPROVe and | | |
| 403 13 | then apply them to other numbers from | | |
| 403 14 | still other studies in order to come up | | |
| 403 15 | with this estimate, didn't you? | | |
| 403 16 | A.   We took the numbers from | | |
| 403 17 | VIGOR and APPROVe, which were the risks, | | |
| 403 18 | the estimates of relative risk, the five | | |
| 403 19 | for the high dose and two for the low | | |
| 403 20 | dose, and we applied that to the | | |
| 403 21 | estimates of how many people had high | | |
| 403 22 | dose or low dose.  And in the formula | | |
| 403 23 | that you use, you also need background | | |
| 403 24 | rates for what is the background rate in | | |
| 404 1 | the population that you are dealing with. | | |
| 404 2 | Q.   When you did the background | | |
| 404 3 | rates, you took background rates from | | |
| 404 4 | still other studies, some of which didn't | | |
| 404 5 | have anything to do with Vioxx, right? | | |
| 404 6 | A.   We took background rates | | |
| 404 7 | from the CLASS study, using their control | | |
| 404 8 | group because they had an unexposed | | |
| 404 9 | control group, and so what we could do | | |
| 404 10 | is, is by doing that, we could get a | | |
| 404 11 | handle on the types of patients who might | | |
| 404 12 | be prescribed a COX-2 inhibitor and look | | |
| 404 13 | to see what their experience of heart | | |
| 404 14 | attacks were. | | |
| 404 15 | We didn't have that in the | | |
| 404 16 | VIGOR study, because the VIGOR study | | |
| 404 17 | compared two active treatments. | | |
| 404 18 | We also, because people who | | |
| 404 19 | get enrolled in clinical trial are, as a | | |
| 404 20 | rule, healthier than the patients who | | |
| 404 21 | ultimately get the drugs, we also took a | | |
| 404 22 | background incidence rate from another | | |
| 404 23 | study with a somewhat sicker population, | | |
| 404 24 | and so then we had a range.  And it was | | |

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 405 1   because of the range in those two | | |
| 5:2 -   405:4   Graham, David 2006-05-09 | | |
| 405 2   background rates that we end up with | [405:2-4] | Overruled |
| 405 3   ultimately the 88,000 and the 139 or the | Def.'s Obj.: Dr. Graham's | |
| 405 4   40,000, that they relate to those rates. | testimony regarding estimates | |
| | of 88,000-140,000 excess | |
| 405:19 - 406:16   Graham, David 2006-05-09 | events caused by Vioxx | |
| 405: 19   Q: Now, when you submitted your | should be excluded from this | |
| 405: 20   article to the FDA peer reviewers, you | case on Rule 403 grounds. | |
| 405: 21   had a much different estimate of excess | Also, no foundation or | |
| 405: 22   cardiovascular events than you ended up | methodology that supports this | |
| 405: 23   putting in the Lancet publication, | opinion. | |
| 405: 24   correct? | PI's Resp.: Witness explains | |
| 406: 1   A: That's correct. | methodology at p. 154-155. | |
| 406: 2   MR. BECK: I'm going to mark | Estimates appear in one of | |
| 406: 3   the draft as it was submitted to | the premiere medical journals | |
| 406: 4   the FDA reviewers. This is | in the world. Paper and | |
| 406: 5   Exhibit 27. | conclusions were subject to | |
| 406: 6   - - - | peer-review. | |
| 406: 7   (Whereupon, Deposition | | |
| 406: 8   Exhibit Graham-27, Memo 9-30-04 | | |
| 406: 9   'Risk of acute myocardial | | |
| 406: 10   infarction and sudden cardiac | | |
| 406: 11   death in patients treated with | | |
| 406: 12   COX-2 selective and non-selective | | |
| 406: 13   NSAIDs,' FDACDER022369 - | | |
| 06: 14   FDACDER022388, was marked for | | |
| 06: 15   identification.) | | |
| 406: 16   - - - | | |
| 407:9 - 407:13   Graham, David 2006-05-09 | | |
| 407: 9   So, this is a report to the | | |
| 407: 10   FDA, and the manuscript reflected the | | |
| 407: 11   same information that's in this report? | | |
| 407: 12   A: Right. But it had to be | | |
| 407: 13   more concise and the like. | | |
| 407:19 - 408:3   Graham, David 2006-05-09 | | |
| 407: 19   And did you say in the | | |
| 407: 20   report to the FDA, as well as the | | |
| 407: 21   manuscript that you submitted for their | | |
| 407: 22   review, that combining -- that when you | | |
| 407: 23   looked at all of the data of Vioxx versus | | |
| 407: 24   Celebrex, that you came up with the | | |
| 408: 1   excess of adverse cardiovascular events | | |
| 408: 2   of 27,785 cases? | | |
| 408: 3   A: That's correct. | | |
| 410:1 - 410:17   Graham, David 2006-05-09 | | |
| 410: 1   Q: You indicated before that | | |
| 410: 2   there were two specific FDA employees | | |
| 410: 3   that you had suggested as peer reviewers, | | |
| 410: 4   right? | | |
| 0: 5   A: Correct. | | |
| 0: 6   Q: And I think it was Dr. Bruce | | |
| 410: 7   Stadel and Dr. Bob O'Neill? | | |
| 410: 8   A: Stadel, yes. | | |
| 410: 9   Q: Stadel is how to pronounce | | |

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 410: 10 | it? | | |
| 410: 11 | A:  Yes. | | |
| 410: 12 | Q:  And they, in fact, looked at | | |
| 410: 13 | your manuscript, the one that had the | | |
| 410: 14 | 27,000 number in it, Vioxx versus | | |
| 410: 15 | Celebrex, as part of their peer review, | | |
| 410: 16 | right? | | |
| 410: 17 | A:  Correct. | | |
| | | | |
| 411:23   -   413:2 | Graham, David 2006-05-09 | | |
| 411: 23 | BY MR. BECK: | | |
| 411: 24 | Q:  Is this an e-mail from you | | |
| 412: 1 | to Dr. Seligman and Dr. Trontell of the | | |
| 412: 2 | FDA, as well as your co-authors dated | | |
| 412: 3 | October 22nd, 2004? | | |
| 412: 4 | A:  Yes, it is. | | |
| 412: 5 | Q:  And the very first thing you | | |
| 412: 6 | say is, 'I reviewed the comments of Bob | | |
| 412: 7 | and Bruce' -- that's Dr. Bruce Stadel | | |
| 412: 8 | and Dr. Bob O'Neill, right? | | |
| 412: 9 | A:  Yes. | | |
| 412: 10 | Q:  -- 'and discussed them with | | |
| 412: 11 | the co-authors. We' -- that's you and | | |
| 412: 12 | the co-authors, right? | | |
| 412: 13 | A:  Right. | | |
| 412: 14 | Q:  'We changed the paper to | | |
| 412: 15 | exclude our estimate of the actual number | | |
| 412: 16 | of excess cases of heart attacks and | | |
| 412: 17 | sudden cardiac deaths, suggested by both | | |
| 412: 18 | Bob and Bruce,' right? | | |
| 412: 19 | A:  Yes. | | |
| 412: 20 | Q:  Okay. | | |
| 412: 21 | So, the manuscript that you | | |
| 412: 22 | submitted to the Lancet took out that | | |
| 412: 23 | 27,000 estimate that the two peer | | |
| 412: 24 | reviewers you suggested said was | | |
| 413: 1 | scientifically unsound, right? | | |
| 413: 2 | A:  That's correct. | | |
| | | | |
| 413:20   -   414:21 | Graham, David 2006-05-09 | | |
| 413: 20 | (Whereupon, Deposition | | |
| 413: 21 | Exhibit Graham-29, E-mail with | | |
| 413: 22 | attachment 'Risk of Acute | | |
| 413: 23 | Myocardial Infarction and Sudden | | |
| 413: 24 | Cardiac Death in Patients Treated | | |
| 414: 1 | with COX-2 Selective and | | |
| 414: 2 | Non-Selective NSAIDs,' (Graham, | | |
| 414: 3 | et al)  KP001133; KP001133A - | | |
| 414: 4 | KP001133X, was marked for | | |
| 414: 5 | identification.) | | |
| 414: 6 | - - - | | |
| 414: 7 | BY MR. BECK: | | |
| 414: 8 | Q:  Is Exhibit 29 a copy of an | | |
| 414: 9 | e-mail from you to the Lancet folks | | |
| 414: 10 | attaching a revised manuscript? And all | | |
| 414: 11 | of this is dated November 11, 2004. | | |
| 414: 12 | A:  Yes. | | |
| 414: 13 | Q:  Let me put that on the | | |
| 414: 14 | screen here. | | |
| 414: 15 | And so you say here on the | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 414: 16 | first page, 'Dear Richard and Stuart, | | |
| 414: 17 | Attached is our revised-revised | | |
| 414: 18 | manuscript,' right? | | |
| 414: 19 | A:  (Witness nods.) | | |
| 414: 20 | Q:  Correct? | | |
| 414: 21 | A:  Yes. | | |
| | | | |
| 415:6  -  415:17 | Graham, David 2006-05-09 | | |
| 415: 6 | Q:  So, when Lancet says we kind | | |
| 415: 7 | of like that comparison that the peer | | |
| 415: 8 | reviewer said was scientifically unsound, | | |
| 415: 9 | you put it back in, but this time you | | |
| 415: 10 | increased it by 10,000 cases, right? | | |
| 415: 11 | A:  That is -- I'm just trying | | |
| 415: 12 | to look for -- oh, it's because -- | | |
| 415: 13 | Q:  First, before you get to the | | |
| 415: 14 | reason why -- | | |
| 415: 15 | A:  Yes. | | |
| 415: 16 | Q:  -- is it true? | | |
| 415: 17 | A:  Yes. | | |
| | | | |
| 416:5  -  416:18 | Graham, David 2006-05-09 | | |
| 416: 5 | Q:  Now, did Dr. Stadel and | | |
| 416: 6 | Dr. O'Neill, the two peer reviewers that | | |
| 416: 7 | you said you trusted, and who said that | | |
| 416: 8 | the 27,000 figure was scientifically | | |
| 416: 9 | unsound, did they have a chance to review | | |
| 416: 10 | this 37,000 figure that you came up with | | |
| 416: 11 | after you submitted the manuscript to | | |
| 416: 12 | Lancet? | | |
| 416: 13 | A:  No. Once a paper goes into | | |
| 416: 14 | a journal and you're dealing with the | | |
| 416: 15 | journal and its peer reviewers, what | | |
| 416: 16 | happens is between the author and the | | |
| 416: 17 | journal. So, there was no requirement | | |
| 416: 18 | to, and I didn't. | | |
| | | | |
| 417:23  -  418:4 | Graham, David 2006-05-09 | | |
| 417: 23 | Q:  And did you ever give your | | |
| 417: 24 | peer reviewers who told you that your | | |
| 418: 1 | 27,000 number was scientifically unsound, | | |
| 418: 2 | did you ever give those peer reviewers | | |
| 418: 3 | whom you recommended the chance to take a | | |
| 418: 4 | look at these new comparison -- | | |
| | | | |
| 418:6  -  419:2 | Graham, David 2006-05-09 | | |
| 418: 6 | BY MR. BECK: | | |
| 418: 7 | Q:  -- and new numbers of 88,000 | | |
| 418: 8 | to 139,000? | | |
| 418: 9 | A:  No. There was no | | |
| 418: 10 | requirement to. Lancet has a very | | |
| 418: 11 | extensive and exhaustive peer review | | |
| 418: 12 | process. Our paper was reviewed by five | | |
| 418: 13 | peer reviewers, which is two more than | | |
| 418: 14 | normally happens with the medical | | |
| 418: 15 | journal. And those peer reviewers and | | |
| 418: 16 | the editors of the journal didn't happen | | |
| 418: 17 | to agree with those two people from the | | |
| 418: 18 | FDA. | | |
| 418: 19 | Q:  Just so that we're clear, | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 418: 20 | nobody from the FDA during the peer | | |
| 418: 21 | review process ever got a chance to look | | |
| 418: 22 | at this new comparison that you did for | | |
| 418: 23 | the first time and the revised-revised | | |
| 418: 24 | manuscript, correct? | | |
| 419: 1 | A: That's correct, and it | | |
| 419: 2 | wasn't required. | | |
| | | | |
| 419:8  -  420:3 | Graham, David 2006-05-09 | | |
| 419: 8 | Q: Can you just tell me whether | | |
| 419: 9 | you included the 37,000 number in the | | |
| 419: 10 | Lancet article? | | |
| 419: 11 | A: No. | | |
| 419: 12 | Q: And, in fact, by the time we | | |
| 419: 13 | finally get to the published article in | | |
| 419: 14 | Lancet, the only numbers that you include | | |
| 419: 15 | were these 88 to 139,000 numbers that you | | |
| 419: 16 | first came up with in the revised-revised | | |
| 419: 17 | manuscript, right? | | |
| 419: 18 | A: That's correct. | | |
| 419: 19 | Q: Now, I want to see if we can | | |
| 419: 20 | understand a little better how you came | | |
| 419: 21 | up with them. I think you said that you | | |
| 419: 22 | used the relative risks from the VIGOR | | |
| 419: 23 | study and the APPROVe study, right? | | |
| 419: 24 | A: That is correct. | | |
| 420: 1 | Q: And the relative risk for | | |
| 420: 2 | VIGOR was 5, right? | | |
| 420: 3 | A: Correct. | | |
| | | | |
| 420:11  -  420:13 | Graham, David 2006-05-09 | | |
| 420: 11 | Q: And the relative risk from | | |
| 420: 12 | APPROVe was 2.0, right? | | |
| 420: 13 | A: Correct. | | |
| | | | |
| 421:5  -  422:11 | Graham, David 2006-05-09 | | |
| 421: 5 | Q: Well, in your article, you | | |
| 421: 6 | state that 'The background rate for acute | | |
| 421: 7 | myocardial infarction among control | | |
| 421: 8 | groups from studies of cardiovascular | | |
| 421: 9 | risk and NSAID users varied from 7.9 per | | |
| 421: 10 | 1,000 person years in CLASS,' one of the | | |
| 421: 11 | studies you referred to, to 12.4 per | | |
| 421: 12 | 1,000 person years in what was called the | | |
| 421: 13 | TennCare study, right? | | |
| 421: 14 | A: Correct. | | |
| 421: 15 | Q: So, the background rate that | | |
| 421: 16 | you used when doing your calculation was | | |
| 421: 17 | this range of 7.9 to 12.4, right? | | |
| 421: 18 | A: Correct. | | |
| 421: 19 | Q: And by 'background rate,' | | |
| 421: 20 | what we mean is people who aren't taking | | |
| 421: 21 | any medicine at all. For every 1,000 | | |
| 421: 22 | person years of people not taking | | |
| 421: 23 | medicine, 7.9 to 12.4 people are going to | | |
| 421: 24 | have an adverse cardiovascular event, | | |
| 422: 1 | right? | | |
| 422: 2 | A: Right. Within the age | | |
| 422: 3 | groups that those populations came from, | | |
| 422: 4 | right. | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 422: 5 | Q: So, that's sort of what | | |
| 422: 6 | you'd expect from someone taking no | | |
| 422: 7 | medicine at all, is somewhere between 8 | | |
| 422: 8 | to 12 or so people per thousand are going | | |
| 422: 9 | to have heart attacks just because that's | | |
| 422: 10 | what happens in life, right? | | |
| 422: 11 | A: That's what happens. Right. | | |
| | | | |
| 424:17 - 424:24 | Graham, David 2006-05-09 | | |
| 424: 17 | Q: So, the rate for myocardial | | |
| 424: 18 | infarctions, heart attacks -- | | |
| 424: 19 | A: Uh-huh. | | |
| 424: 20 | Q: -- for people who were | | |
| 424: 21 | taking the high-dose Vioxx in the VIGOR | | |
| 424: 22 | study was 7.4 per hundred -- per thousand | | |
| 424: 23 | person years, right? | | |
| 424: 24 | A: Yes. | | |
| | | | |
| 426:12 - 426:18 | Graham, David 2006-05-09 | | |
| 426: 12 | Q: Let's now talk about | | |
| 426: 13 | APPROVe. | | |
| 426: 14 | What's the equivalent number | | |
| 426: 15 | here for the APPROVe study which involved | | |
| 426: 16 | a 25 milligram dose of Vioxx? | | |
| 426: 17 | A: You'll have to show me the | | |
| 426: 18 | paper and we can derive that number. | | |
| | | | |
| 427:5     427:15 | | | |
| 427: 5 | BY MR. BECK: | | |
| 427: 6 | Q: Have you seen Exhibit 31 | | |
| 427: 7 | before? | | |
| 427: 8 | A: Yes, I have read this paper | | |
| 427: 9 | before. | | |
| 427: 10 | Q: And I'll put it on the | | |
| 427: 11 | screen. Well, let's just you and I go to | | |
| 427: 12 | Table 2 over on the fourth page. | | |
| 427: 13 | Is this a paper that deals | | |
| 427: 14 | with the APPROVe study? | | |
| 427: 15 | A: Yes. | | |
| | | | |
| 428:8 - 428:20 | Graham, David 2006-05-09 | | |
| 428: 8 | Q: And when you did it the | | |
| 428: 9 | right way, you would come up with an | | |
| 428: 10 | event rate in APPROVe of 6.9; is that | | |
| 428: 11 | right? | | |
| 428: 12 | A: I'll trust your arithmetic. | | |
| 428: 13 | Q: And, again, the real life | | |
| 428: 14 | heart attack rate in both VIGOR and | | |
| 428: 15 | APPROVe was lower than what you say is | | |
| 428: 16 | the normal background rate for people who | | |
| 428: 17 | are not taking any medicine at all, | | |
| 428: 18 | right? | | |
| 428: 19 | A: That's correct. But | Pl's Obj.: Entire answer | Barnett: Court ruled that |
| 428 20 | background rates vary from study to | should be included. | testimony be added. |
| | | Remainder of answer at 428: | R. 106. |
| | | 23-430:15. | Smith: No objection. |
| 16 - 432:6 | Graham, David 2006-05-09 | | Testimony not added. |
| 430: 16 | Q: Now, the patients involved | | Mason: Testimony |
| 430: 17 | in the VIGOR study, these were rheumatoid | | not designated. |
| 430: 18 | arthritis patients, right? | | |
| 430: 19 | A: Yes. | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 430: 20 | Q: And rheumatoid arthritis | | |
| 430: 21 | patients have a higher risk of heart | | |
| 430: 22 | attack, all other things being equal, | | |
| 430: 23 | than people who don't have rheumatoid | | |
| 430: 24 | arthritis, right? | | |
| 431: 1 | A: Some studies have found | | |
| 431: 2 | that, and other studies have found that | | |
| 431: 3 | there's no increase in risk. | | |
| 431: 4 | Q: Now, you mentioned that | | |
| 431: 5 | CLASS was one of the studies that you | | |
| 431: 6 | used to come up with your range. Those | | |
| 431: 7 | people had osteoarthritis, right? | | |
| 431: 8 | A: That's correct. | | |
| 431: 9 | Q: And that is not associated | | |
| 431: 10 | with a higher heart attack risk, right? | | |
| 431: 11 | A: Not that we're aware of. | | |
| 431: 12 | Q: And the other study that you | | |
| 431: 13 | used for the background rate was | | |
| 431: 14 | TennCare? | | |
| 431: 15 | A: Yes. | | |
| 431: 16 | Q: And that's short for | | |
| 431: 17 | Tennessee Care, right? | | |
| 431: 18 | A: Right. It's a Medicaid | | |
| 431: 19 | program. | | |
| 431: 20 | Q: And that's anybody who used | | |
| 431: 21 | a prescription NSAID, regardless of what | | |
| 431: 22 | their condition was, right? | | |
| 431: 23 | A: Right, but these were the | | |
| 431: 24 | nonusers. | | |
| 432: 1 | Q: So, these were nonusers in | | |
| 432: 2 | Tenn Care, but they didn't have | | |
| 432: 3 | rheumatoid arthritis or anything like | | |
| 432: 4 | that? | | |
| 432: 5 | A: Some of them did, but most | | |
| 432: 6 | of them didn't. | | |
| | | | |
| 432:22  -  433:1 | Graham, David 2006-05-09 | | |
| 432: 22 | Q: But even with all of that, | | |
| 432: 23 | VIGOR and APPROVe both had lower rates | | |
| 432: 24 | than your background rates, correct? | | |
| 433: 1 | A: Yes. | | |
| | | | |
| 434:11  -  437:11 | Graham, David 2006-05-09 | | |
| 434: 11 | Q: Do you know that Dr. Graham | | |
| 434: 12 | has estimated the United States | | |
| 434: 13 | background rate to be approximately 6 per | | |
| 434: 14 | thousand? | | |
| 434: 15 | A: And that is in people who | | |
| 434: 16 | are 15 and older. And one-third of the | | |
| 434: 17 | population is between the ages of 15 and | | |
| 434: 18 | 40, and the occurrence of myocardial | | |
| 434: 19 | infarction in that group is almost zero. | | |
| 434: 20 | So, if you were to truncate those people | | |
| 434: 21 | out and then calculate what the actual | | |
| 434: 22 | rate is among the people who are most | | |
| 434: 23 | likely to get the Vioxx, the number ends | | |
| 434: 24 | up smack in the middle of that range. | | |
| 435: 1 | Q: And I've referred to you in | | |
| 435: 2 | the third person. I'm sorry. I'm trying | | |
| 435: 3 | to get through. | | |

Case 2:05-md-01657-EEF-DEK   Document 9235-7   Filed 12/04/06   Page 40 of 50

**Dedrick v. Merck Co., Inc.**
### Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 435: 4 | A: I took no offense. | | |
| 435: 5 | Q: I did not intend any. I was | | |
| 435: 6 | actually thinking of Dr. Topol when I | | |
| 435: 7 | referred to Dr. Graham. | | |
| 435: 8 | Dr. Topol, are you | | |
| 435: 9 | acquainted with his publication where he | | |
| 435: 10 | uses a placebo rate of 5.2? | | |
| 435: 11 | A: Yes. And that was from | | |
| 435: 12 | randomized clinical trials. And | | |
| 435: 13 | randomized clinical trials, no matter | | |
| 435: 14 | what they are, they select patients who | | |
| 435: 15 | are healthier than the real world | | |
| 435: 16 | patients that get the drugs after they go | | |
| 435: 17 | on the market. | | |
| 435: 18 | Q: And in APPROVe, as I just | | |
| 435: 19 | put up there, the people who took | | |
| 435: 20 | placebos in the APPROVe study, their rate | | |
| 435: 21 | was only 2.7, right? | | |
| 435: 22 | A: Yes. And they were younger | | |
| 435: 23 | patients without cardiovascular disease, | | |
| 435: 24 | but yes. | | |
| 436: 1 | Q: And so when you have these | | |
| 436: 2 | relative risks that come from VIGOR and | | |
| 436: 3 | APPROVe, and you are taking the VIGOR | | |
| 436: 4 | heart attacks number of 7.4 and you're | | |
| 436: 5 | comparing it with this super low number | | |
| 436: 6 | of naproxen, 1.5, and that's how you come | | |
| 436: 7 | up with the -- that's how that high | | |
| 436: 8 | number of relative risk of 5 is derived, | | |
| 436: 9 | correct? | | |
| 436: 10 | A: Those are the results from | | |
| 436: 11 | the VIGOR study. | | |
| 436: 12 | Q: And the same thing with | | |
| 436: 13 | APPROVe. The relative risk is 2, but it | | |
| 436: 14 | is not because a lot of people had heart | | |
| 436: 15 | attacks on Vioxx, it is because not very | | |
| 436: 16 | many people had them on the placebo, | | |
| 436: 17 | right? | | |
| 436: 18 | A: That I don't know the -- I | | |
| 436: 19 | don't know the answer to that question. | | |
| 436: 20 | If you have an odd placebo group that's | | |
| 436: 21 | been selected that has an unusually low | | |
| 436: 22 | background rate, that's a possibility. I | | |
| 436: 23 | can't answer that question. I don't know | | |
| 436: 24 | the answer to that question. | | |
| 437: 1 | Q: You never looked into that | | |
| 437: 2 | when doing your estimate? | | |
| 437: 3 | A: No. Realize at the time | | |
| 437: 4 | that we did our estimate, what we had to | | |
| 437: 5 | work on were press announcements, because | | |
| 437: 6 | none of these data -- | | |
| 437: 7 | Q: If the answer is no, that's | | |
| 437: 8 | fine. I only have about ten minutes | | |
| 437: 9 | left. | | |
| 437: 10 | A: Okay. | | |
| 437: 11 | I'm sorry. | | |
| | | | |
| 440:20 - 440:24 | Graham, David 2006-05-09 | | |
| 440 20 | You talked about how you | | |
| 440 21 | made a presentation in February of 2005 | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | Objections | Rulings |
|---|---|---|
| 440 22    to the FDA Advisory Committee. Do you | | |
| 440 23    remember that? | | |
| 440 24    A: Yes, I do. | | |
| | | |
| 441:1 -    442:2     Graham, David 2006-05-09 | | |
| 441: 1    Q: And that was one of the | | |
| 441: 2    exhibits that you went over with Mr. | | |
| 441: 3    Kline with some of the pages from the | | |
| 441: 4    presentation that you made to the | | |
| 441: 5    Advisory Committee, right? | | |
| 441: 6    A: Correct. | | |
| 441 7    Q: Then the Advisory Committee | | |
| 441 8    made recommendations to the FDA, and the | | |
| 441 9    FDA, in turn, reached some conclusions | | |
| 441 10    concerning the safety of COX-2 | | |
| 441 11    inhibitors; is that correct? | | |
| 441 12    A: I believe it is. | | |
| 441 13    MR. BECK: We'll mark as | | |
| 441 14    Exhibit 32 the April 6, 2005 | | |
| 441 15    memorandum. | | |
| 441 16    - - - | | |
| 441 17    (Whereupon, Deposition | | |
| 441 18    Exhibit Graham-32, Memo 4-6-05 | | |
| 441 19    Analysis and recommendations for | | |
| 441 20    Agency action regarding | | |
| 441 21    non-steroidal anti-inflammatory | | |
| 441 22    drugs and cardiovascular risk,' | | |
| 441 23    (19 pages),   was marked for | | |
| 441 24    identification.) | | |
| 442 1    - - - | | |
| 442 2    BY MR. BECK: | | |
| | | |
| 442:15 -    448:1     Graham, David 2006-05-09 | | |
| 442 15    Is this the memorandum we've | | |
| 442 16    been talking about? | | |
| 442 17    A: Yes, it is. | | |
| 442 18    Q: Okay. | | |
| 442 19    And then on the bottom of | | |
| 442 20    Page 3 where it lists the different | | |
| 442 21    offices, did the division of | | |
| 442 22    anti-inflammatories participate in this | | |
| 442 23    review? | | |
| 442 24    A: Yes, it did. | | |
| 443 1    Q: Did the -- | | |
| 443 2    A: They were probably the major | | |
| 443 3    participant, because they are the ones | | |
| 443 4    who ultimately regulate these products. | | |
| 443 5    Q: Anti-inflammatories includes | | |
| 443 6    NSAIDs and COX-2 inhibitors, right? | | |
| 443 7    A: Correct. | | |
| 443 8    Q: And the Division of | | |
| 443 9    Over-the-Counter Drug Products also | | |
| 443 10    participated, correct? | | |
| 443 11    A: Yes, because they're | | |
| 443 12    over-the-counter NSAIDs. | | |
| 443 13    Q: And the Office of Drug | | |

Dedrick v. Merck Co., Inc.
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 443 14 | Evaluation II and V participated, right? | | |
| 443 15 | A: Right. Those are the parent | | |
| 443 16 | organizations of these other divisions. | | |
| 443 17 | Q: And the Office of New Drugs | | |
| 443 18 | participated? | | |
| 443 19 | A: Right. That's the super | | |
| 443 20 | office over them. | | |
| 443 21 | Q: Office of Drug Safety, | | |
| 443 22 | that's your office, right? | | |
| 443 23 | A: Correct. | | |
| 443 24 | Q: Office of Biostatistics. | | |
| 444 1 | Does that include epidemiologists? | | |
| 444 2 | A: No. Epidemiologists are in | | |
| 444 3 | the Office of Drug Safety. The Office of | | |
| 444 4 | Biostatistics is exclusively | | |
| 444 5 | statisticians. | | |
| 444 6 | Q: And the Office of | | |
| 444 7 | Pharmacoepidemiology and Statistical | | |
| 444 8 | Science participated, right? | | |
| 444 9 | A: Right. That's the office | | |
| 444 10 | that contains both drug safety and | | |
| 444 11 | statistics. | | |
| 444 12 | Q: The Office of Medical Policy | | |
| 444 13 | participated? | | |
| 444 14 | A: Right, yes. | | |
| 444 15 | Q: And the Office of Regulatory | | |
| 444 16 | Policy? | | |
| 444 17 | A: Yes. | | |
| 444 18 | Q: And the Office of the Center | | |
| 444 19 | Director, right? | | |
| 444 20 | A: Correct. | | |
| 444 21 | Q: And they looked at all kinds | | |
| 444 22 | of materials, including your PowerPoint | | |
| 444 23 | and your, I don't know if it's testimony | | |
| 444 24 | or remarks that were delivered to the | | |
| 445 1 | Advisory Committee, correct? | | |
| 445 2 | A: Presumably. I wasn't part | | |
| 445 3 | of the internal decision-making, but | | |
| 445 4 | presumably that was part of what they | | |
| 445 5 | considered. | | |
| 445 6 | Q: Then focusing on the first | | |
| 445 7 | page here, in terms of who authored this | | |
| 445 8 | memorandum from the FDA, I think you've | | |
| 445 9 | already identified John Jenkins, Dr. John | | |
| 445 10 | Jenkins, of the Office of New Drugs, | | |
| 445 11 | right? | | |
| 445 12 | A: Correct. | | |
| 445 13 | Q: And then also you've | | |
| 445 14 | identified your boss, Paul Seligman, | | |
| 445 15 | right? | | |
| 445 16 | A: Correct. | | |
| 445 17 | Q: And then it says 'Through: | | |
| 445 18 | Steven Galson.' What does it mean when | | |
| 445 19 | it is from Drs. Jenkins and Seligman | | |
| 445 20 | through Dr. Galson? | | |
| 445 21 | A: What it typically means is, | | |

Case 2:05-md-01657-EEF-DEK Document 9235-7 Filed 12/04/06 Page 43 of 50

Dedrick v. Merck Co., Inc.
Plaintiff's and Defendant's Designations of David Graham, M.D.

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 445 22 | is the 'froms' have written the report. | | |
| 445 23 | It goes to the 'through' person, who can | | |
| 445 24 | edit it and ask for modifications and the | | |
| 446 1 | like. And then after they've signed off | | |
| 446 2 | on it, it is sent off to whomever the | | |
| 446 3 | to' is. | | |
| 446 4 | Q: All right. | | |
| 446 5 | And the 'to' is the NDA | | |
| 446 6 | files and has all these numbers, right? | | |
| 446 7 | A: Correct. | | |
| 446 8 | Q: So, if I understand it | | |
| 446 9 | correctly, they got input from all these | | |
| 446 10 | different groups, and then the head of | | |
| 446 11 | the Office of New Drugs and the director | | |
| 446 12 | of the Office of Pharmacoepidemiology and | | |
| 446 13 | Statistical Science got together and | | |
| 446 14 | wrote a draft that then was approved by | | |
| 446 15 | the director of the entire Center for | | |
| 446 16 | Drug Evaluation and Research, right? | | |
| 446 17 | A: Correct. | | |
| 446 18 | Q: Then I just want to go | | |
| 446 19 | through with you the first five bullet | | |
| 446 20 | points, and then I'll be done. | | |
| 446 21 | In the executive summary | | |
| 446 22 | here, do you see where the FDA says that | | |
| 446 23 | Following a thorough review of the | | |
| 446 24 | available data we have reached the | | |
| 447 1 | following conclusions regarding currently | | |
| 447 2 | approved COX-2 selective and | | |
| 447 3 | non-selective non-steroidal | | |
| 447 4 | anti-inflammatory drugs and the risk of | | |
| 447 5 | adverse cardiovascular events.' So | | |
| 447 6 | that's their setup. | | |
| 447 7 | Then the first point they | | |
| 447 8 | make is: 'The three approved COX-2 | | |
| 447 9 | selective NSAIDS (i.e. celebrex,' Vioxx, | | |
| 447 10 | and what's the third one, 'valdecoxib'? | | |
| 447 11 | A: That would be Bextra. | | |
| 447 12 | Q: So, they say that three | | |
| 447 13 | COX-2 selective NSAIDs 'are associated | | |
| 447 14 | with an increased risk of serious adverse | | |
| 447 15 | CV events compared to placebo. The | | |
| 447 16 | available data do not permit a rank | | |
| 447 17 | ordering of these drugs with regard to CV | | |
| 447 18 | risk.' Now, what they're saying here is | | |
| 447 19 | that any one of these COX-2 inhibitors | | |
| 447 20 | can increase CV risk, but there's no | | |
| 447 21 | basis on which to say that one is riskier | | |
| 447 22 | than another, right? | | |
| 447 23 | A: What they're saying is, is | | |
| 447 24 | that the absence of evidence is evidence | | |
| 448 1 | of absence. They're basing -- | | |
| 449:14 - 449:21 | Graham, David 2006-05-09 | | |
| 449 14 | Does it mean that the people | | |
| 449 15 | who wrote this memo and the person who | | |

Dedrick v. Merck Co., Inc.

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 449 16 | approved it, whether you agree with them | | |
| 449 17 | or not, what they're saying is that you | | |
| 449 18 | cannot draw a distinction between the | | |
| 449 19 | cardiovascular risks of Vioxx versus | | |
| 449 20 | Celebrex versus Bextra? | | |
| 449 21 | A: That's what they are saying. | | |
| | | | |
| 450:16 - 453:17 | Graham, David 2006-05-09 | | |
| 450 16 | Q: Your article, one of its | | |
| 450 17 | core conclusions, is that there is a | | |
| 450 18 | difference, statistically significant | | |
| 450 19 | difference between the risk of using | | |
| 450 20 | Vioxx versus Celebrex, correct? | | |
| 450 21 | A: Correct. | | |
| 450 22 | Q: And they disagree with you, | | |
| 450 23 | right? | | |
| 450 24 | A: They're saying there are no | | |
| 451 1 | clinical trials to show that, and so they | | |
| 451 2 | disagree. | | |
| 451 3 | Q: Then the next point says, | | |
| 451 4 | Data from large long-term controlled | | |
| 451 5 | clinical trials that have included a | | |
| 451 6 | comparison of COX-2 selective and | | |
| 451 7 | non-selective NSAIDs do not clearly | | |
| 451 8 | demonstrate that the COX-2 selective | | |
| 451 9 | agents confer a greater risk of serious | | |
| 451 10 | adverse...events than non-selective | | |
| 451 11 | NSAIDs.' | | |
| 451 12 | Now, again, whether you | | |
| 451 13 | disagree or agree with them, are they | | |
| 451 14 | saying here that according to the | | |
| 451 15 | long-term controlled clinical trials, we | | |
| 451 16 | cannot say that COX-2 inhibitors have any | | |
| 451 17 | different risk than traditional NSAIDs? | | |
| 451 18 | A: They're saying based on the | | |
| 451 19 | evidence they have from clinical trials | | |
| 451 20 | that they can't distinguish the two. | | |
| 451 21 | What one should recognize, however, is | | |
| 451 22 | that there's virtual absence of real | | |
| 451 23 | long-term data. There's relatively very | | |
| 451 24 | small numbers for any of these things, | | |
| 452 1 | and so if you have low power, you're not | | |
| 452 2 | going to be able to show things. That's | | |
| 452 3 | why observational data is needed to | | |
| 452 4 | complement what is inadequate about | | |
| 452 5 | controlled clinical trials. | | |
| 452 6 | Q: And then on the next page, | | |
| 452 7 | do they say on this first bullet, | | |
| 452 8 | Long-term placebo controlled clinical | | |
| 452 9 | trial data are not available to | | |
| 452 10 | adequately assess the potential for the | | |
| 452 11 | non-selective NSAIDs to increase the risk | | |
| 452 12 | of serious adverse CV events.' Is that | | |
| 452 13 | the point you just made? | | |
| 452 14 | A: Yes. | | |
| 452 15 | Q: So, they recognized that, | | |

Dedrick v. Merck Co., Inc.
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 452 16 | didn't they? | | |
| 452 17 | A: Yes, they did. | | |
| 452 18 | Q: The next point they say, | | |
| 452 19 | Pending the availability of the | | |
| 452 20 | additional long-term controlled clinical | | |
| 452 21 | trial data, the available data are best | | |
| 452 22 | interpreted as being consistent with a | | |
| 452 23 | class effect of an increased risk of | | |
| 452 24 | serious...cardiovascular events for COX-2 | | |
| 453 1 | selective and non- selective NSAIDs.' | | |
| 453 2 | Now, does that mean that, | | |
| 453 3 | again, whether you agree or disagree, | | |
| 453 4 | that they're saying that the best | | |
| 453 5 | conclusion you can draw based on the data | | |
| 453 6 | that's available now is that all of these | | |
| 453 7 | medications, whether it's Vioxx, Celebrex | | |
| 453 8 | or the nonselective NSAIDs, all have the | | |
| 453 9 | same basic cardiovascular risk? | | |
| 453 10 | A: They're saying that, and | | |
| 453 11 | they're also saying that observational | | Sustained |
| 453 12 | data is not something they're -- that | | |
| 453 13 | they're willing to consider. | | |
| 453 14 | Q: Where do they say that? | | |
| 453 15 | A: Because there is a plethora | Pl's Obj.: Cuts off answer | Barnett: No objection. |
| 453 16 | of existing observational data that | which continues to 454:21. | Smith: No objection. |
| 453 17 | show -- | | Mason: Sustained. |
| 454:22 - 455:5 | Graham, David 2006-05-09 | | |
| 454 22 | Q: You're aware, aren't you, | Pl's Obj.: 602. Lack of | Barnett: Sustained. |
| 454 23 | that there are six published | foundation. Assumes facts | Smith: No objection. |
| 454 24 | epidemiological studies that find no | not in evidence. | Testimony played. |
| 455 1 | difference between Celebrex and Vioxx? | | Mason: No objection. |
| 455 2 | A: No. I mean, you could show | | Testimony played. |
| 455 3 | me the articles and I'm sure I'm familiar | | |
| 455 4 | with the articles, but I have not thought | | |
| 455 5 | about them in that way. | | |
| 455:14 - 457:19 | Graham, David 2006-05-09 | | |
| 455 14 | MR. BECK: Last point. | | |
| 455 15 | BY MR. BECK: | | |
| 455 16 | Q: 'Short-term use of NSAIDs to | | |
| 455 17 | relieve acute pain, particularly at low | | |
| 455 18 | doses, does not appear to confer an | | |
| 455 19 | increased risk of serious adverse CV | | |
| 455 20 | events (with the exception of' -- what | | |
| 455 21 | was that one again? | | |
| 455 22 | A: That's 'valdecoxib,' that's | | |
| 455 23 | Bextra. | | |
| 455 24 | Q: -- Bextra. | | |
| 456 1 | So, what the authors of this | | |
| 456 2 | paper and the reviewer concluded was that | | |
| 456 3 | Short-term use of NSAIDs' including | | |
| 456 4 | Vioxx 'particularly at low doses, does | | |
| 456 5 | not appear to confer an increased risk of | | |
| 456 6 | serious adverse CV events.' Isn't that | | |
| 456 7 | correct? | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 456 8 | A: That's what they're saying. | | |
| 456 9 | But once again, they have zero | | |
| 456 10 | statistical power to actually make this | | |
| 456 11 | statement. What they really have is, is | | |
| 456 12 | uncertainty, because they haven't | | |
| 456 13 | adequately studied it. | | |
| 456 14 | Q: I think you said that these | | |
| 456 15 | senior people from the FDA who wrote and | | |
| 456 16 | reviewed this consulted with lots and | | |
| 456 17 | lots of people from the FDA, but they | | |
| 456 18 | didn't consult with you, right? | | |
| 456 19 | A: No. That's not what I'm -- | | |
| 456 20 | I wasn't part of the discussions that | | |
| 456 21 | happened internally. What I would note | | |
| 456 22 | is, is that people from the Office of New | | |
| 456 23 | Drugs approved these drug products. And | | |
| 456 24 | that if you look at the organizations | | |
| 457 1 | that you have represented here, most of | | |
| 457 2 | them fall into the amoeba that I | | |
| 457 3 | described earlier and that are part of | | |
| 457 4 | the review and approval process and that | | |
| 457 5 | our own management in drug safety answers | | |
| 457 6 | to the people in the Center for Drug | | |
| 457 7 | Evaluation who have the controlling | | |
| 457 8 | power. So, the Office of New Drugs is | | |
| 457 9 | the gorilla in the room. So, in any | | |
| 457 10 | event, I'm not saying that at all. I'm | | |
| 457 11 | not saying that I wasn't hurt. What I'm | | |
| 457 12 | saying is that in constructing this | | |
| 457 13 | report, what FDA has done is, has said | | |
| 457 14 | that because we don't have data from | | |
| 457 15 | control trials, we can't be forced to say | | |
| 457 16 | that the drugs are different, even though | | |
| 457 17 | there's observational data that would | | |
| 457 18 | suggest that there are some differences | | |
| 457 19 | that can be made. | | |
| | | | |
| 458:17 -    459:22 | Graham, David 2006-05-09 | | |
| 458 17 | Q: My question is the senior | | |
| 458 18 | people at the FDA, when they asked for | | |
| 458 19 | input from all of those groups that we | | |
| 458 20 | saw on Page 3, including drug safety | | |
| 458 21 | people, right, one person they didn't ask | | |
| 458 22 | for input from was Dr. David Graham. Is | | |
| 458 23 | that true or false? | | |
| 458 24 | A: They're listing offices | | |
| 459 1 | here. I can't tell you who the | | |
| 459 2 | individuals are that they asked for input | | |
| 459 3 | in this. I was a participant in an open | | |
| 459 4 | public Advisory Committee meeting, and so | | |
| 459 5 | presumably that material is part of the | | |
| 459 6 | record. I wrote an FDA report that I'm | | |
| 459 7 | sure is part of the record. So, I would | | |
| 459 8 | imagine that the work that I did was | | |
| 459 9 | under consideration there. But in the | | |
| 459 10 | actual writing of this memorandum, I | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 459 11 | can't tell you who actually was consulted | | |
| 459 12 | to write it except John Jenkins and Paul | | |
| 459 13 | Seligman because they're the only -- oh, | | |
| 459 14 | and Steven Galson, because those are the | | |
| 459 15 | only names that appear. | | |
| 459 16 | Q: Lastly, I just can't | | |
| 459 17 | remember, are all three of those | | |
| 459 18 | individuals included in the group that | | |
| 459 19 | you think was conspiring to smear your | | |
| 459 20 | name? | | |
| 459 21 | A: No. Dr. Jenkins was not | | |
| 459 22 | part of that group. | | |
| | | | |
| 463:2    463:13 | | [463:2-463:18] | **Barnett:** Overruled. |
| 463 2 | 2        The estimates that you have, | **Def.'s Obj.:** Dr. Graham's | **Smith:** Sustained -- asked |
| 463 3 | 3   88,000 to 140,000? | testimony regarding estimates | and answered; restating |
| 463 4 | 4     A.  Yes. | of 88,000-140,000 excess | direct; already covered. |
| 463 5 | 5     Q.  First of all, are they lower | events caused by Vioxx | **Mason:** Not designated. |
| 463 6 | 6  than some other folks' estimates of the | should be excluded from this | |
| 463 7 | 7  number of increased cardiovascular, both | case on Rule 403 grounds. | |
| 463 8 | 8  deaths and incidents, that have occurred | Also, no foundation or | |
| 463 9 | 9  as a result of the drug Vioxx? | methodology that supports this | |
| 463 10 | 10    A.  Yes, they are. | opinion. | |
| 463 11 | 11    Q.  Is yours a conservative | **Pl's Resp.:** Witness explains | |
| 463 12 | 12  estimate compared to others in the | methodology at p. 154-155. | |
| 463 13 | 13  published medical literature? | Estimates appear in one of | |
| | | the premiere medical journals | |
| 463:16    463:18 | | in the world.  Paper and | |
| 463 16 | 16        THE WITNESS:  I wouldn't say | conclusions were subject to | |
| 463 17 | 17    that it is conservative.  I would | peer-review. | |
| 463 18 | 18    say that it is realistic. | | |
| | | | |
| 509:13    511:6 | | [509:13] - [511:6] | **Barnett:** Sustained |
| 509 13 | 13    Q.  And, sir, the labeling, two | **Deft's Obj.:**  Outside scope | (outside scope of |
| 509 14 | 14  years you had mentioned about the | of redirect. | redirect) |
| 509 15 | 15  labeling, and you discussed labeling at | | **Smith:**  Not designated. |
| 509 16 | 16  length with Mr. Beck, and I want to talk | | **Mason:**  Not designated. |
| 509 17 | 17  to you a little bit about labeling in a | | |
| 509 18 | 18  minute. | | |
| 509 19 | 19        The labeling, two years.  Is | | |
| 509 20 | 20  there anyone in those two years in | | |
| 509 21 | 21  particular who dragged their feet? | | |
| 509 22 | 22        MR. BECK:  Object to the | | |
| 509 23 | 23  form of the question.  It's also | | |
| 509 24 | 24  improper redirect. | | |
| 510 1 | 1        MR. KLINE:  Yes, sir.  Go | | |
| 510 2 | 2  ahead. | | |
| 510 3 | 3        MR. BECK:  I didn't get into | | |
| 510 4 | 4  this subject at all. | | |
| 510 5 | 5        THE WITNESS:  The two-year | | |
| 510 6 | 6  period for coming up with the | | |
| 510 7 | 7  revised label for a problem as | | |
| 510 8 | 8  serious as high risk of heart | | |
| 510 9 | 9  attacks with Vioxx, this is an | | |
| 510 10 | 10  extraordinary long period of time, | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | | Objections | Rulings |
|---|---|---|---|---|
| 510 11 | 11 | and the only explanation based on | | |
| 510 12 | 12 | my long experience at FDA is that | | |
| 510 13 | 13 | there was foot dragging by the | | |
| 510 14 | 14 | company. I've seen this countless | | |
| 510 15 | 15 | times with other companies with | | |
| 510 16 | 16 | other serious drug-related adverse | | |
| 510 17 | 17 | reactions where FDA comes in | [510:17-19] | **Barnett:** Sustained on |
| 510 18 | 18 | saying we want to put a boxed | **Def's Obj.:** Testimony about | other grounds. |
| 510 19 | 19 | warning on a drug, and the company | black box warning -- 401/402; | **Smith:** Not designated. |
| 510 20 | 20 | says basically no way, Jose, and | 403. Graham implies that the | **Mason:** Not designated. |
| 510 21 | 21 | then FDA sort of banters back and | FDA told Merck it wanted a | *Sustained* |
| 510 22 | 22 | forth with the company, and things | black box warning, which is | |
| 510 23 | 23 | just go on for months and months | untrue. | |
| 510 24 | 24 | and months and months. | | |
| 511 1 | 1 | At the same time, companies | [511:1-6] | |
| 511 2 | 2 | are free to voluntarily implement | **Def's Obj.:** Testimony about | **Barnett:** Sustained on |
| 511 3 | 3 | labeling changes such as boxed | black box warning: 403; also | other grounds. |
| 511 4 | 4 | warnings, and in this case, I | Graham provides expert | **Smith:** Not designated. |
| 511 5 | 5 | imagine FDA would have gone along | testimony on whether | **Mason:** Not designated. |
| 511 6 | 6 | with it. | companies are free to | |
| | | | voluntarily implement black | |
| 515:10 - 516:6 | | Graham, David 2006-05-09 | box warnings, which is not | |
| 515: 10 | | Q: Let's talk about your | accurate, but more importantly, | |
| 515: 11 | | testimony, sir. | this is clearly an undisclosed | |
| 515: 12 | | In response to questions by | expert opinion that Graham | |
| 515: 13 | | Mr. Beck, you said -- I want to talk | opines on in redirect (and | |
| 515: 14 | | label for a minute, labeling in response | Merck does not have a chance | |
| 515: 15 | | to the questions that he asked you. | to adequately cross-examine | |
| 515: 16 | | First of all, sir, you testified earlier | him on this opinion). | |
| 515: 17 | | about how labels can make a difference. | | |
| 515: 18 | | You said that a straightforward -- I | | |
| 515: 19 | | actually have from Mrs. Golkow's | | |
| 515: 20 | | transcription here today instant access | | |
| 515: 21 | | to it on real time. And it says here, | | |
| 515: 22 | | 'it would actually just be more | | |
| 515: 23 | | straightforward about what the problems | | |
| 515: 24 | | are, using very bold and frank and plain | | |
| 516: 1 | | language, not sort of using adjectives | | |
| 516: 2 | | that downplay it and not burying it in | | |
| 516: 3 | | tremendous amounts of text.' Your words. | | |
| 516: 4 | | Do you recall saying that to the jury | | |
| 516: 5 | | here today? | | |
| 516: 6 | | A: Yes, I do. | | |
| 516:7 - 517:12 | | Graham, David 2006-05-09 | | |
| 516: 7 | | Q: Now, sir, can a | | |
| 516: 8 | | straightforward, bold, frank, plain | | |
| 516: 9 | | language label warning make a difference | | |
| 516: 10 | | in prescribing of drugs as you see and | | |
| 516: 11 | | know and understand it? | | |
| 516: 12 | | A: It certainly can. in the | | |
| 516: 13 | | case of Vioxx, I think had the warning | | |
| 516: 14 | | been very clear, had it been boxed, the | | |
| 516: 15 | | number of patients exposed to the drug | | |
| 516: 16 | | would have probably been much reduced, | | |
| 516: 17 | | and this would have resulted in a | | |

**Dedrick v. Merck Co., Inc.**
**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | Objections | Rulings |
|---|---|---|---|
| 516: 18 | substantial reduction in the number of | | |
| 516: 19 | people who were injured by heart attacks | | |
| 516: 20 | or killed by heart attacks. | | |
| 516: 21 | Q:  Sir, in your testimony | | |
| 516: 22 | before the United States Senate Finance | | |
| 516: 23 | Committee before Senator Grassley and his | | |
| 516: 24 | committee, you were asked the question -- | | |
| 517: 1 | you were saying -- you were asked the | | |
| 517: 2 | question by Senator Graham (sic): 'A | | |
| 517: 3 | black box will catch everybody's | | |
| 517: 4 | attention.' You said, 'As I pointed out | | |
| 517: 5 | before, I think the most effective thing | | |
| 517: 6 | that this black box would have done is it | | |
| 517: 7 | would have given prominence to the heart | | |
| 517: 8 | attack risk of Vioxx and it would have | | |
| 517: 9 | stopped direct-to-consumer advertising.' | | |
| 517: 10 | Do you recall making that | | |
| 517: 11 | statement, sir, before the Congress? | | |
| 517: 12 | A:  Yes, I do. | | |
| 517:16    517:20 | Graham, David 2006-05-09 | | |
| 517 16 | Q.   My question is, do you abide | | |
| 517 17 | by and agree with that particular public | | |
| 517 18 | statement which was made then today? | | |
| 517 19 | A.   Oh, definitely.  There's no | | |
| 517 20 | question about that. | | |
| 517:21    518:14 | | [517:21-518:4] | **Barnett:** Sustained. |
| 517 21 | 21          Could I add one other thing | Def's Obj.: 801/802; 403. | **Smith:** Not designated. |
| 517 22 | 22  since we're talking about labeling. | | **Mason:** Not designated. |
| 517 23 | 23  Sheri Targum, whose review we talked | | |
| 517 24 | 24  about earlier, in the very conclusion of | | |
| 518 1 | 1  her review, I was really stunned, I only | | |
| 518 2 | 2  saw this recently in rereading the | | |
| 518 3 | 3  review, she wrote basically that this -- | | |
| 518 4 | 4  that Vioxx should have warnings.  And she | | Sustained |
| 518 5 | 5  said "at least warnings."  And so I think | | |
| 518 6 | 6  reading that and looking at her review, | | |
| 518 7 | 7  the fact that here's the expert who | | |
| 518 8 | 8  reviewed the drug, thought that it should | | |
| 518 9 | 9  have been in warnings, and then | | |
| 518 10 | 10  eventually we have it came out that it's | | |
| 518 11 | 11  sort of, you know, buried in the fine | | |
| 518 12 | 12  print, I was actually fairly surprised | | |
| 518 13 | 13  because I hadn't realized that Dr. Targum | | |
| 518 14 | 14  had actually stated that. | | |
| 564:19    565:1 | | | |
| 564 19 | 19  BY MR. KLINE: | | |
| 564 20 | 20      Q.   Is there anything, sir, | | |
| 564 21 | 21  having been subjected to lawyers' | | |
| 564 22 | 22  questions here, sir, for over seven, | | |
| 564 23 | 23  pushing eight hours that changes the | | |
| 564 24 | 24  opinion that you gave publicly to the | | |
| 565 1 | 1  senators in that hearing? | | |

**Dedrick v. Merck Co., Inc.**

**Plaintiff's and Defendant's Designations of David Graham, M.D.**

| Designated Testimony of David Graham, M.D. | | | Objections | Rulings |
|---|---|---|---|---|
| 5:5 | 565:6 | | | |
| 565 5 | | 5 | THE WITNESS: Nothing | |
| 565 6 | | 6 | whatsoever. | |