# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

|   |   |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | ) <br>) MDL NO. 1657<br>) <br>) SECTION: L<br>) <br>) JUDGE FALLON<br>) MAG. JUDGE KNOWLES |

### MERCK & CO, INC.'S MOTION AND INCORPORATED MEMORANDUM FOR PROTECTIVE ORDER PROHIBITING DISCOVERY OF ATTORNEY WORK PRODUCT AND PRIVILEGED COMMUNICATIONS RELATED TO THE MARTIN REPORT

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Merck moves for a protective order precluding discovery of any and all documents relating to the independent investigation conducted by the Honorable John S. Martin Jr. ("Judge Martin") of Debevoise & Plimpton LLP ("Debevoise") and preparation of the Martin Report – including drafts of the report and attorney interview notes and memoranda developed in preparation of the report – on the ground that the materials sought are attorney work product protected from discovery under Rule 26(b)(3) and also contain privileged attorney-client communications. Because the discovery sought by plaintiffs includes the protected work product of outside counsel retained by a Special Committee of Merck's Board of Directors as to which no waiver has been made, and for which plaintiffs can make no showing of "substantial need," and because it includes privileged communications, these documents are protected from discovery under applicable federal and New Jersey law.[1]

---

[1] Although this Court should apply New Jersey law to Merck's arguments for protection based on attorney-client privilege, *see* Fed R. Evid. 501, Merck's arguments under the work-product doctrine are governed by federal law. *See PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002) (federal law applies to work product claims); *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill.

1

834718v.1

## BACKGROUND

In November 2004, shortly after receiving a demand from shareholders that Merck take legal action against any directors or officers responsible for any corporate wrongdoing related to Vioxx (*see* Letter from Jeffery Abraham to the Merck Board of Directors, October 29, 2004 ("Demand Letter") (attached as Ex. 1)), Merck's Board of Directors formed a Special Committee ("the Special Committee") to investigate the conduct of senior Merck management with regard to Vioxx. The Special Committee hired The Honorable John S. Martin Jr. ("Judge Martin") of Debevoise & Plimpton LLP ("Debevoise") to conduct that independent investigation and to report regularly to the Special Committee regarding their findings. (*See* Report of the Honorable John S. Martin, Jr. to the Special Committee of the Board of Directors of Merck & Co., Inc. Concerning the Conduct of Senior Management in the Development and Marketing of Vioxx, at 8 ("Martin Report") (relevant portions attached as Ex. 2).)

The actions of the Board were triggered, in large part, by regulatory investigations by the Department of Justice ("DOJ") and Securities Exchange Commission ("SEC") and by a threat of shareholder litigation against senior Merck management. (*See* Declaration of William G. Bowen ("Bowen Decl.") at ¶ 5 ("It became clear to me and to the entire Board that in light of the threatened shareholder litigation, pending investigations by regulators and Congress, and the public criticism of management that had given rise to those investigations, the Board needed to investigate the conduct of senior management.") (attached as Ex. 3).)

To be sure, Debevoise was not retained to investigate facts related to ***all*** threatened and ongoing Vioxx litigation. In particular, Debevoise was not asked to investigate Merck's civil liability in connection with potential personal injury and consumer fraud claims resulting from

---

1997) ("[u]nlike the attorney-client privilege, in diversity cases, federal law governs issues concerning the work-product doctrine.").

2

the withdrawal of Vioxx from the worldwide market. (Martin Report at 17 (the authors "have not attempted to answer the question whether the conduct of Merck employees should give rise to civil liability").) Instead, the investigation materials and report were created for the purpose of determining whether the Board could trust the integrity of senior management or whether, if not, legal action should be brought as a result of the shareholder demand. (*See* Bowen Decl. at ¶ 5.) In addition, the Martin investigation was intended to provide the company with the facts it may need to respond to anticipated shareholder derivative actions and possible regulatory enforcement proceedings focused on the conduct of senior Merck personnel. (*Id*. at ¶ 5, 8.) In fact, at the time Judge Martin was retained, six derivative actions, filed without pre-suit demand that the company investigate, were already pending in state and federal court.

The Special Committee tasked Debevoise with conducting an independent review of corporate executive conduct with regard to Vioxx and presenting its conclusions to the Special Committee, so that the full Board could then make an informed decision concerning potential shareholder and regulatory litigation. (*See* Vioxx Investigation: Outline of Investigative Process, at 1 (included within the Martin Report) (attached as Ex. 4); Bowen Decl. at 8 ("[T]he Special Committee, on my recommendation, retained The Honorable John S. Martin, Jr. of Debevoise & Plimpton LLP to conduct an independent and comprehensive investigation of the conduct of senior management concerning the development and marketing of Vioxx, to report to the Special Committee regularly and candidly about their findings, and to provide legal advice to the Special Committee concerning threatened shareholder litigation and on-going regulatory investigations.").)

Over a period of approximately twenty months, Judge Martin and other lawyers and paralegals at Debevoise investigated the actions of Merck executives regarding the

3

cardiovascular safety of Vioxx, conducting interviews with Merck employees, reviewing internal Merck documents, consulting with experts retained by Debevoise, communicating regularly with the Special Committee and ultimately preparing a report summarizing their findings. (Martin Report at 1-2.) On September 5, 2005, the Special Committee publicly released the Martin Report. Shortly thereafter, the Martin Report was posted on Merck's website for review by Merck's investors, as well as other individuals seeking information about Vioxx.

On September 15, 2006, counsel for MDL plaintiff Anthony Wayne Dedrick served Merck with a request for production of documents relating to the creation, preparation and publication of the Martin Report. (*See* Plaintiff's Second Set of Request for Production to Defendant Merck & Co., Inc., September 15, 2006 ("Dedrick Request").) Among the discovery sought by plaintiff were:

> [A]ll Documents and recordings (including witness statements, interviews or memoranda or letters), referring or relating to contacts or communications between Debevoise or John. S. Martin Jr., and any of the following: a.) The Merck Board of Directors or its agent employees (including attorneys); b.) The Special Committee, including its agents and attorneys; c.) Any and all present Merck employees interviewed; d.) Any and all former Merck employees; e.) Kenneth Frazier; and f.) Theodore V. H. Mayer or any employee of Hughes Hubbard and Reed.

(*Id*. at 6.) On September 21, 2006, Plaintiffs' Steering Committee served Merck with a similar request for production of documents and responses to interrogatories related to the Martin Report. (*See* Plaintiff Steering Committee's Third Set of Interrogatories and Requests for Production of Documents Directed to Defendant, Merck & Co., Inc., September 21, 2006 ("PSC's Request").) Merck seeks a protective order with regard to both sets of document requests related to the Martin Report, as well as all subpoenas for documents issued to Judge Martin and the attorneys at Debevoise.

4

**ARGUMENT**

Plaintiffs seek interview notes, memoranda and other documents that are entitled to protection from discovery as attorney work product. Many of these documents are also entitled to protection as privileged attorney-client communications. Because plaintiffs have not and cannot demonstrate a basis for vitiating the protections afforded these documents under federal and New Jersey law, Merck asks that this Court issue a protective order barring such discovery.

I. **THE MATERIAL SOUGHT BY PLAINTIFFS IS PROTECTED BY THE WORK-PRODUCT DOCTRINE.**

The "work product doctrine generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Reg'l Airport Authority of Louisville v. LFG, LLC*, No. 05-5754, 2006 U.S. App. LEXIS 21035, at *45 (6th Cir. Aug. 17, 2006). The work-product rule protects against "attempt[s], without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (recognizing "the need for a lawyer to work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel").

Because of the important need to protect the privacy of attorneys' legal strategies, the protection afforded to attorney work product is broad and exceeds the protection courts extend to other privileges. *United States v. Nobles*, 422 U.S. 225, 238 (1975) (recognizing that "the work-product doctrine is distinct from and broader than the attorney-client privilege"). Under the pertinent federal rule, a party may discover materials prepared in anticipation of litigation by or from another party's attorney only upon a showing that "the party seeking discovery has substantial need of the materials in the preparation of the party's case *and* is unable without

5

undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26 (b)(3) (emphasis added).

Here, work-product protection clearly applies to materials prepared by outside counsel retained by the Special Committee during their investigation of executive conduct related to the cardiovascular risks of Vioxx because: (a) the materials were prepared to assist the Board in responding to shareholder demands, existing and anticipated shareholder derivative litigation, and pending regulatory investigations; (b) Merck did not waive work-product protection merely by publishing the results of the Martin Report itself; and (c) plaintiffs cannot demonstrate either the "substantial need" for the documents or the lack of "other means" to obtain the materials required to vitiate work-product protection under Rule 26(b)(3). Moreover, even if plaintiffs could prove substantial need and undue burden – which they clearly cannot – the majority of the materials requested by plaintiffs are entitled to almost absolute protection, because they reflect the legal opinions, mental impressions and legal theories of Judge Martin and other Debevoise attorneys.

### A. Attorney Materials Underlying The Martin Report Were Prepared In Anticipation Of Litigation.

In determining whether a document is protected from disclosure by the work-product privilege, the threshold question is whether the document was prepared in anticipation of litigation or for trial. *Upjohn Co.*, 449 U.S. at 400. Here, the answer to that question is clearly yes.

The documents sought were created in response to both the threat of derivative litigation *and* shareholder suits and regulatory investigations that had already commenced. However, in order to satisfy the requirement that documents be prepared in anticipation of litigation, "it is not necessary that the documents be prepared after litigation has been commenced. The work-

6

product doctrine applies to material prepared when litigation is merely a contingency." *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 42 (D. Md. 1974). *See also In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979) (quashing subpoena for notes and memoranda related to attorney's interviews with corporate employees regarding suspected criminal violations; "[i]ndisputably, the work-product doctrine extends to material prepared or collected before litigation actually commences"); *Upjohn Co. v. United States*, 449 U.S. 383, 386-87 (1981) (applying work-product protection to documents created during a corporate investigation even though no proceedings against the company were threatened when the documents were prepared). Thus, materials qualify for work-product protection if the "primary purpose" for their creation was related to potential litigation, even if litigation has not yet been initiated. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) and *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)). As the U.S. Court of Appeals for the Fifth Circuit has recognized, "litigation need not necessarily be imminent [for a document to be prepared in anticipation of litigation] . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Davis*, 636 F.2d at 1040 (citations omitted).

In *In re Grand Jury Investigation*, for example, the court held that interview memoranda compiled by a company's attorneys during an internal investigation of suspected criminal violations were protected from discovery under the work-product doctrine. 599 F.2d at 1229. The court noted that the documents were created in anticipation of litigation because if the investigation confirmed that violations had in fact occurred, "litigation of some sort was almost inevitable," including "criminal prosecutions, derivative suits, securities litigation, or even litigation by [the company]." *Id*. "Moreover," the court held, "the potential for litigation was

7

immeasurably intensified by [the company's] obligations to *report* any wrongdoing to its stockholders and to various governmental agencies." *Id*. (emphasis added).

Other courts interpreting the "in anticipation of litigation" requirement have squarely held that materials created by a committee hired to investigate alleged corporate wrongdoing in response to a shareholder demand is entitled to work-product protection. *See Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005). In *Hollinger*, a corporation formed a special committee in response to a minority shareholder's demand that the company investigate and take corrective action respecting payments made to executives as a result of improper non-competition agreements. *Id*. at 513. The special committee, which was tasked with investigating the allegations set forth in the shareholder demand, hired outside counsel to assist in the investigation and to prepare interim reports to the committee. *Id*. Eventually, the special committee's 513-page report was disclosed to opposing counsel, who then sought discovery of all of the drafts of the report, notes from witness interviews, and attorney memoranda. *Id*. The court rejected this discovery request, holding – on grounds wholly applicable here – that the documents underlying the report were created in anticipation of litigation because the purpose of the report was to address the "***shareholder derivative demand, investigate the claims alleged, and if appropriate, sue for corrective action and restitution***." *Id*. at 514 (emphasis added).

Likewise, in *In re Woolworth Corp. Securities Class Action Litigation*, No. 94 CIV-2217, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996), the district court held that internal notes and memoranda created by a law firm retained to investigate the corporation's accounting irregularities were made "in anticipation of litigation" because "[a]ll participants knew when Paul, Weiss became involved, that litigation – civil, and possibly criminal – as well as regulatory action were virtually certainties. Applying a distinction between 'anticipation of litigation' and

8

'business purposes' is in this case artificial, unrealistic, and the line between is here essentially blurred to oblivion."

Here, just as in *In re Grand Jury*, *Hollinger* and other similar cases, the materials underlying the investigation and report regarding Merck's executives' conduct were clearly created in anticipation of possible litigation by Merck stockholders, as well as potential regulatory action by the SEC and DOJ. (*See* Martin Report at 8.) Just as in *Hollinger*, the Special Committee retained Debevoise to conduct its investigation following a specific demand by Merck shareholders to investigate possible corporate wrongdoing and, in part, to determine whether the company should bring claims against its executives. As the Martin Report itself states, the Special Committee that retained Judge Martin and Debevoise was formed in November 2004 "[i]n light of" both the SEC and DOJ investigations regarding Vioxx and shareholder demands that the company take legal action against any executives that may have been responsible for causing harm to the company. (*See* Martin Report at 9.) As a result, a primary purpose for creating all of the materials underlying Judge Martin's investigation and eventual report was to advise the Special Committee of Merck's Board on the appropriate disposition of shareholder demands and other requests to the Board related to Vioxx. (*Id.*) For these reasons, the materials underlying the Martin Report were clearly created in anticipation of future Vioxx litigation and are subject to work-product protection.

**B.  Merck Did Not Waive Work-Product Protection Over Attorney Materials By Publishing The Martin Report.**

Nor does public issuance of the Martin Report undermine the applicability of the work-product doctrine to the work product created by Debevoise in preparing the report. Any suggestion to the contrary would be no different from a demand that Merck, after serving an interrogatory answer in the Vioxx litigation, produce all draft versions of that answer, including

9

834718v.1

all attorney notes and communications made while drafting the document. Every federal court to address this issue has rejected such a suggestion because the work product doctrine exists "not . . . to protect a confidential relationship," but rather "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

For this reason, federal courts have consistently held that a party does ***not*** waive work product protection over materials created during an attorney's investigation merely by releasing a report setting forth the conclusions of that investigation. *See*, *e.g.*, *Ziner v. Cedar Crest College*, Civ. No. 04-3491, 2006 U.S. Dist. LEXIS 34858 (E.D. Pa. May 30, 2006). In *Ziner*, for example, the defendant publicly disclosed an investigative report prepared by its attorney addressing the validity of sexual discrimination allegations against the defendant. The court held that although the disclosure "waiv[ed] any work-product protection as to that report," the attorney's "underlying notes, communications to the college and documentary compilations undoubtedly constitute clear attorney work-product. The simple fact that defendant was willing to share the report of an investigation involving a third party neither enabled plaintiff to gain access to that underlying information nor put the subject matter of that report at issue." *Id*. at *16. Similarly, in *Hollinger*, the court found that a corporation did not waive work product when it released a 513-page report resulting from outside counsel's investigation, in response to a shareholder demand, into allegedly improper payments made to executives. 230 F.R.D. at 518. Because Hollinger did "not disclose[ ] the Special Committee counsel's opinion work product [and] . . . has not put the Special Committee counsel's opinion work product at issue in any litigation," disclosure of the final version of the report did not waive work product as to the interview memoranda and attorney notes underlying the investigation. *Id*.; *see also In re*

10

*Commercial Fin. Servs., Inc.*, 247 B.R. 828, 852-53 (Bankr. N.D. Okla. 2000) (mere disclosure of investigative report did not waive protection of counsel's interview notes, memos, research, selection and arrangement of documents, investigation strategies, and personal recollections); *Kraemer v. Franklin & Marshall Coll.*, Civ. A. No. 95-0020, 1995 WL 447634, at *3 (E.D. Pa. July 27, 1995) (notes of counsel's interviews with employees in connection with Title VII case were not waived by the disclosure of the substance of the interviews by the interviewees); *Chamberlain Mfg. Corp. v. Maremont Corp*, No. 90 C 7127, 1993 WL 11885, at *2-3 (N.D. Ill Jan. 19, 1993) (disclosure of report prepared by attorney following investigation of fraud allegations did not waive work-product claim protection for attorney's interview memoranda and summaries underlying the report).

Here, just as in *Ziner*, *Hollinger* and other cases, plaintiffs seek attorney notes and memoranda related to outside counsel's investigation of corporate conduct, as well as draft reports prepared by the attorneys. However, as those courts recognized, publication of the Martin Report did not waive protection for the underlying materials created by Judge Martin and other Debevoise attorneys in preparing the report.

Finally, plaintiffs cannot argue that disclosure should be required because Merck has attempted to use the work product at issue as a "sword and shield" in the Vioxx product liability litigation. Merck has not attempted to introduce the Martin Report into evidence in any Vioxx product liability case and has represented that it no plans to do so. Accordingly, there is simply no reason to invade work-product protection and allow plaintiffs in these cases access to counsel's thoughts and opinions. *See Hollinger*, 230 F.R.D. at 518 (no waiver of work product where "Hollinger has not taken affirmative steps to inject the Special Committee Report or the materials used to create it into this litigation. The Report has not been used offensively in this

11

litigation. Hollinger has not cited the Special Committee Report in the complaint or any other pleading in this action.").

### C. Plaintiffs Do Not Have A Substantial Need For The Work Product Materials At Issue And Are Able To Obtain The Substantial Equivalent From Some Other Means.

Because, as explained above, the discovery plaintiffs seek is subject to work-product protection, plaintiffs may obtain the material only if they have a "substantial need of the materials *in the preparation of the party's case*" and are "unable without undue hardship to obtain the *substantial equivalent* of the materials by other means." Fed. R. Civ. P. 26(b)(3) (emphasis added). Even under those circumstances, however, plaintiffs would not be entitled to "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*; s*ee also Upjohn Co.*, 449 U.S. 383, 401 (1981) ("such work product [attorney's opinions and mental impressions] cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship"). Here, plaintiffs have no substantial need for the materials requested; nor can they show that they are unable to obtain the evidence they seek by reviewing Merck documents or deposing Merck employees. Moreover, most of the materials sought are not discoverable under any circumstance because they directly reflect the mental impressions, conclusions, and opinions of outside counsel retained by the Special Committee.

Plaintiffs cannot meet their burden of proving that they have a "substantial need" for these materials in preparing their case, or that the evidence cannot be obtained in a less intrusive manner. *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 689 (E.D. Pa. 1986) (once a party has made a showing that materials are subject to work product protection, "the party seeking discovery has the burden of showing substantial need and undue hardship"). As an initial matter, there is no reason why the PSC would have a substantial need for documents

12

relating to the Martin Report "in the preparation of [plaintiffs'] case" when Merck has not sought to introduce the Martin Report into evidence in any MDL case and does not intend to do so. *Id.*; *see also Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 16 (D. Mass. 1997) (plaintiff unable to show "substantial need" for work product protected documents because the materials were "not relevant" to plaintiffs' insurance claim against defendant). Because Merck has not put the existence or conclusions of the Martin Report at issue in product liability cases, there is no reason why plaintiffs in this proceeding would need to examine the materials underlying the Report. In addition, because the report was commissioned and created after the withdrawal of Vioxx from the market, the report has no bearing on notice, or any other relevant issue in failure-to-warn cases. In fact, the Martin Report explicitly states that the authors "have not attempted to answer the question whether the conduct of Merck's employees should give rise to civil liability." (Martin Report at 17.) Moreover, neither Merck's executives nor counsel retained to assist the company in defending the product liability litigation have seen any of the interview notes or legal memoranda underlying the Martin Report. As a result, there is no argument that plaintiffs need these materials to respond to Merck's attempts to use them in preparing its defense to any cases in this MDL proceeding or that there is any unfairness in denying plaintiffs' counsel access to the materials at issue.

Moreover, even if plaintiffs did have a legitimate need for evidence regarding the basis for Judge Martin's conclusions, they have not identified any information that they legitimately need in order to prosecute this litigation that would not be available through deposition or through the review of documents produced in the course of ordinary discovery. Notably, in order to ensure that the Martin investigation did not lead to a waiver of attorney-client privilege in the product liability action, Judge Martin did not have access to any of Merck's privileged

13

documents when conducting his investigation. (*See* Martin Report at 11 n.6 ("[w]e have not reviewed any documents that the Company has claimed are protected by the attorney-client privilege or the work product doctrine").) In addition, plaintiffs have readily available opportunities for discovery of the relevant information gathered by Debevoise and, indeed, have already availed themselves of those opportunities. Under these circumstances, there is simply no legitimate need to violate Merck's work product privilege. *See Ziner*, 2006 U.S. Dist. LEXIS 34858, at \*13-14 (refusing to order production of work product underlying defense counsel report where plaintiff "may easily conduct his own research into the substance of [defense attorney's] investigation by interviewing the same witnesses or specifically requesting particular documents from defendant"); *see also In re Commercial Fin. Servs., Inc.*, 247 B.R. at 852 ("An adversary seeking to discover alleged wrongdoing is not precluded from making its own investigation of the facts by deposing employees, requesting documents, etc. An adversary may not, however, demand and make use of the fruits of the corporation's attorney's own investigation."). As a result, plaintiffs cannot establish that it would cause "undue burden" to discover the information underlying the report from a less intrusive source.

Finally, even if plaintiffs could prove substantial need and undue burden – which they clearly cannot – the majority of the materials requested by plaintiffs are entitled to almost absolute protection because they reflect the legal opinions, mental impressions, and legal theories of outside counsel retained by the Special Committee. *See In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982) ("to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification"). Plaintiffs here have requested, among other things, "all Documents and Recordings (including witness statements, interviews or

14

memoranda), referring or relating to contacts or communications" between retained counsel and Merck executives, employees, attorneys, and even outside counsel. (Dedrick Request at 5-6; *see also* PSC Request at 12-14.) These materials will inevitably reflect the legal opinions and theories of Judge Martin and other Debevoise attorneys regarding the importance and legal implications of evidence they reviewed and the interviews they conducted, and will certainly reveal the attorneys' mental processes in determining what information should be included in the final report and what information should be excluded. Because these materials will reflect the Debevoise attorneys' mental processes and legal opinions in preparing the Martin Report, they are not subject to discovery even upon a showing of substantial need (which is absent here). *See In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) ("In our view, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."). For this reason too, Merck is entitled to a protective order.

## II. THE REQUESTED MATERIALS CONSTITUTE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS PROTECTED FROM DISCLOSURE.

While the documents requested by plaintiffs are subject to protection based on the application of the work-product doctrine alone, many of the documents requested, *i.e.* those documents that reveal the substance of Debevoise's communications with Merck employees, executives, officers and directors are also subject to protection as privileged attorney-client communications. Judge Martin and the Debevoise firm were retained by a Special Committee of Merck's Board to "conduct a comprehensive investigation of the actions of Merck's senior management . . . and to provide other legal advice to the Committee." (Martin Report at 9.) As a result, all communications between Debevoise attorneys and Merck employees were conducted for the purpose of obtaining relevant information in order to provide informed legal advice to the Special Committee of Merck's Board and are therefore privileged. *See Upjohn Co.*, 449 U.S. at

15

394 (holding that privilege extends to attorney communications with corporate employees during internal investigation of alleged illegal payments because communications "concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice").

Moreover, under New Jersey law, Merck did not waive attorney-client protection over these privileged communications merely by publishing the eventual findings of the Martin Report itself. *See In re Grand Jury Subpoenas Duces Tecum*, 574 A.2d 449, 456 (N.J. Super. Ct. App. Div. 1989). In *In re Grand Jury Subpoenas*, a local county board retained counsel to conduct an investigation of its practices and members in order to provide legal advice to the board. *Id.* at 452. In the course of performing its services for the board, the law firm "interviewed numerous County employees, examined a plethora of documents, engaged in extensive legal research and prepared several preliminary reports." *Id.* One such preliminary report was released to the public by a board member and, as a result, members of the law firm were subpoenaed to testify before the grand jury as to their investigation of the board's activities. The trial court quashed the subpoenas and the Appellate Division affirmed, noting that it "would not deem that limited disclosure [of the preliminary report] to be an absolute and complete waiver" of the privilege. *Id.* at 456. Because the report "did not expressly disclose communications made to [attorneys] by the Board [members]" but rather "provided preliminary recommendations designed to cure deficient past practices and procedures," the court held that the attorney-client privilege protected the attorneys from testifying. *Id.*

Federal courts are in agreement. For example, in *In re Woolworth*, the court expressly held that a corporation does not waive privilege as to documents created during law firm's

16

investigation into corporate activities by publishing a report setting forth the findings of that investigation. 1996 WL 306576 at *2. Noting that "[i]t is the communication, and notes and memoranda memorializing or detailing the communication, that is protected by the privilege," not the report itself, the court found that publication of the report had no impact on the privileged status of the underlying materials. *Id*. Moreover, the court held that, as matter of policy, "[a] finding that publication of an internal investigative report constitutes waiver might well discourage corporations from taking the responsible step of employing outside counsel to conduct an investigation when wrongdoing is suspected." *Id*. *See also Chamberlain Mfg. Corp.*, 1993 WL 11885, at *2-3 (disclosure of report prepared by attorney following investigation of fraud allegations did not waive attorney-client privilege as to attorney's underlying interview memoranda and summaries).

For the same reasons set forth in these cases, privilege is not waived here. The Special Committee's disclosure of Judge Martin's findings and conclusions does not operate as an automatic waiver of privilege as to all confidential communications between the Debevoise attorneys and Merck employees, executives and directors. Just as in *In re Grand Jury Subpoenas*, the Martin Report does not reveal the communications underlying Judge Martin's conclusions regarding the conduct of Merck executives during the development and sale of Vioxx. Instead, the report merely releases retained counsel's final conclusions as to whether "senior management of the Company acted with integrity" with regard to Vioxx. For the reasons set forth in *In re Grand Jury Subpoenas*, such a disclosure does not constitute an absolute waiver of privilege. As a result, many of the documents plaintiffs seek are protected by attorney-client privilege, and Merck is entitled to a protection on this ground as well.

17

## CONCLUSION

For the foregoing reasons, the Court should grant Merck's motion for a protective order and shield the materials underlying the Martin Report from discovery based on the application of the attorney work-product doctrine and the attorney-client privilege.

Dated: October 13, 2006

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361

Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Merck & Co., Inc.'s Motion and Incorporated Memorandum for Protective Order Prohibiting Discovery of Attorney Work Product and Privileged Communications Related to the Martin Report has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 13th day of October, 2006.

        */s/ Dorothy H. Wimberly*
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana 70130
        Phone: 504-581-3200
        Fax:    504-581-3361
        dwimberly@stonepigman.com

        Defendants' Liaison Counsel