# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | ) <br> ) MDL NO. 1657 <br> ) <br> ) SECTION: L <br> ) <br> ) JUDGE FALLON <br> ) MAG. JUDGE KNOWLES |

### DECLARATION OF DEBBIE TODRES IN SUPPORT OF MERCK & CO., INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENAS

DEBBIE TODRES, hereby declares and states as follows:

1.  I am associated with the firm of Debevoise & Plimpton LLP ("Debevoise") and participated in conducting the investigation for the Special Committee of the Board of Directors of Merck & Co., Inc. (the "Special Committee") concerning the conduct of senior management in the development and marketing of Vioxx.

2.  I submit this Declaration in support of Merck's opposition to plaintiffs' motion to compel compliance with third party subpoenas.

Purpose of Engagement

3.  Debevoise was retained by the Special Committee in December 2004, after the Board had received a letter from a shareholder demanding that the Board take legal action against members of senior management who allegedly caused damage to the Company in connection with the marketing and development of Vioxx.

22344876v1

4. The purpose of the investigation was to pursue thoroughly and objectively all allegations that went to the integrity of senior management in the Vioxx matter. A determination with respect to the integrity of management was essential to a decision whether there were grounds to bring the legal actions against members of management that were demanded in the shareholders' letters. As part of our mandate, Debevoise provided legal advice to the Special Committee with regard to derivative litigation.

Debevoise Internal Work Product

5. Given the number of documents produced in litigation that was produced to us for review, the complicated scientific and medical issues involved, and the number of depositions taken in connection with the litigation, it took Debevoise lawyers months to digest and analyze facts and identify issues for investigation.

6. During this period, Debevoise lawyers generated hundreds of internal memoranda and other communications – including summaries of deposition testimony, analyses of scientific articles, commentaries concerning public criticisms gleaned from the press and publicly filed pleadings, chronologies and internal tutorials to familiarize team members with the facts and issues involved – that were never circulated outside of the firm.

7. As our investigation progressed, Debevoise prepared outlines for witness interviews, draft outlines of what ultimately became the Martin Report and drafts of the Report and Appendices, all of which were used and discussed exclusively within the firm.

8. All of these documents and communications were generated for the purpose of assessing the good faith of Merck's management, which was vital to our legal assessment of shareholder demands. To that end, these documents reflect the internal thought processes, opinions and mental impressions of Debevoise lawyers concerning the legal assessment of good faith. In addition, many of the legal opinions expressed in these documents reflect junior lawyers' preliminary questions, views and/or thinking, and are not reflective of Judge Martin's or the Debevoise team's final views based on a complete record.

9. It is hard to see what relevance these internal documents could have to litigation. Indeed, Mr. Christopher V. Tisi, Esq. of the Plaintiffs' Steering Committee previously represented to me that plaintiffs were not interested in Debevoise's purely internal work product. See October 23, 2006 letter to Mr. Tisi, attached as Exhibit A ("In the course of our conversation, you also advised us that you are not interested in documents and/or communications that are purely internal to Debevoise, that is, documents reflecting our internal thought processes and communications with one another concerning our analyses of the issues or drafting of the Martin Report.").

I declare under penalty of perjury that the foregoing is true and correct.
Executed on December 8, 2006

_____
DEBBIE TODRES

22344876v1

# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
Fax 212 909 6836
www.debevoise.com

October 23, 2006

BY ELECTRONIC MAIL and FEDERAL EXPRESS

Christopher V. Tisi, Esq.
Ashcraft & Gerel, LLP
2000 L Street, N.W.
Suite 400
Washington, D.C. 20036

Subpoenas Issued to John S. Martin, Jr.,
Martin Frederic Evans and Debevoise & Plimpton LLP

Dear Chris:

During our conversations on October 16 and October 20, 2006, you asked that we identify for you in writing the categories of documents Debevoise has in its possession relating to our investigation for the Special Committee of the Board of Directors of Merck & Co., Inc. (the "Special Committee") and our preparation of the Report of The Honorable John S. Martin, Jr. to the Special Committee of the Board of Directors of Merck & Co., Inc. Concerning the Conduct of Senior Management in the Development and Marketing of Vioxx, dated September 5, 2006 (the "Martin Report"). Specifically, you asked (i) whether Debevoise has any documents that fall within the categories of documents further described below, and (ii) that we identify the types of documents, if any, that we possess in each of the categories. The categories you identified are:

- Communications concerning the timing of the release of the Martin Report;

- Memoranda of witness interviews;

- Communications with the former Merck employees identified in the Martin Report who were not willing to take the time to be interviewed in connection with our investigation;

- Communications with members of the Special Committee;

- Communications with members of the full Board of Directors;

Christopher V. Tisi, Esq.           2          October 23, 2006

- Communications with the three consulting experts we retained to assist us in understanding issues concerning biostatistics, FDA regulations and cardiology; and

- Communications with counsel for the Company concerning the Martin Report.

In the course of our conversation, you also advised us that you are not interested in documents and/or communications that are purely internal to Debevoise, that is, documents reflecting our internal thought processes and communications with one another concerning our analyses of the issues or drafting of the Martin Report.

In response to your questions, we are attaching a list that reflects generally the types of documents we believe we possess that fall within the categories you identified. As we explained to you during our conversation, because we are in the early stages of collecting and reviewing documents that are potentially responsive to the subpoenas, we cannot be certain that the attached list is entirely accurate or exhaustive.

Finally, as we explained during our telephone call, Merck, as the holder of the protections afforded under the work product doctrine and the attorney-client privilege, has instructed us to fully assert those protections in response to the subpoenas.

If you have any questions about the attached, please do not hesitate to contact us.

Sincerely,

Mark P. Goodman
Debbie Todres

22309063v1

### Types of Documents Within The Possession of Debevoise That Are Potentially Responsive to Categories Identified by Counsel for Plaintiffs

1.  <u>Communications Concerning the Timing of the Release of the Martin Report</u>

    To our knowledge, the only documents concerning the timing of the release of the Martin Report are the minutes of certain Special Committee meetings and, potentially, email correspondence concerning Judge Martin's and Special Committee members' schedules in September.

    The minutes of the Special Committee meetings are privileged. We will review any potentially responsive email correspondence to determine whether it is privileged.

2.  <u>Memoranda of Witness Interviews</u>

    Debevoise lawyers prepared interview memoranda for an overwhelming majority of the witnesses identified in Exhibit 2 to the Martin Report. These memoranda are protected as both privileged communications and attorney work product.

3.  <u>Communications with the Former Merck Employees Identified in the Martin Report Who Were Not Willing to Take the Time To Be Interviewed in Connection With Our Investigation</u>

    Although subject to confirmation, we do not believe we possess any responsive documents within this category.

4.  <u>Communications with Members of the Special Committee</u>

    We possess several types of documents within this category, including minutes of the Special Committee's meetings, email and other written communications with members of the Special Committee, Debevoise presentations to the Special Committee, and drafts (including preliminary outlines) of the Martin Report. All of these documents are protected by the attorney-client privilege, the work product doctrine, or both.

5.  <u>Communications with the Board of Directors</u>

    Debevoise prepared a presentation to the full Board of Directors and provided all Board members with drafts of the Martin Report. These documents are protected by the attorney-client privilege, the work product doctrine, or both.

6. <u>Communications With the Consulting Experts Debevoise Retained to Assist Us In Understanding Issues Concerning Biostatistics, FDA Regulations and Cardiology</u>

Our consulting experts did not prepare any written reports. We entered into engagement letters with our consulting expert, provided them with drafts of the Martin Report and Appendices and, from time to time, corresponded with them concerning schedules and other logistical issues. Although subject to confirmation, we may have handwritten notes or other documents reflecting comments provided by our experts. To the extent that the engagement letters and certain non-substantive email correspondence are not privileged or otherwise protected, we will produce them to you. Substantive communications with our experts, including drafts of the Martin Report and Appendices, and any notes reflecting such communications, are work product.

7. <u>Communications Concerning the Martin Report with the Company Counsel</u>

Debevoise may have email correspondence or other documents to or from Company counsel or counsel for individual Company employees concerning the scheduling of interviews and documents. To the extent that these documents do not seek or provide legal advice and do not constitute work product, we will produce them.

Additionally, once our investigation was completed and the Martin Report and Appendices were in virtually final form, the Special Committee authorized Debevoise to allow Company counsel to read the Martin Report and Appendices in order to give counsel the opportunity to provide comments with respect to facts they believed were incomplete or inaccurate. Thereafter, we communicated with Company counsel concerning their comments, and some of those communications are reflected in documents. These documents are protected by the attorney-client privilege, the work product doctrine, or both.

\* \* \*