## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX : | |
| : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| : | SECTION L |
| : | |
| *This document relates to ALL CASES* : | JUDGE FALLON |
| : | MAG. JUDGE KNOWLES |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION
### TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENAS

## I.     INTRODUCTION

The PSC hereby replies to Merck's argument that the work-product and/or attorney client privilege applies to third-party publicity firms employed as part of a publicity campaign. Although Merck has asserted the work-product and attorney-client privileges with respect to materials in the possession of the third-party publicity firms, there is absolutely no basis for extending either privilege to such entities under the law of New Jersey and/or the law of this Circuit.

## II.    LEGAL ARGUMENT

### A.    The Work-Product Privilege is Inapplicable to Materials in the Possession of Third-Party Publicity Firms

Because the law of this Circuit requires a strong showing of the "in anticipation of litigation" requirement when evaluating assertions of the work-product privilege, Merck's weak assertion of the work-product privilege fails to meet this standard.

According to the Fifth Circuit, courts must assess the "primary motivating purpose" behind the creation of a document, because the mere fact that a party "anticipates litigation resulting from an incident does not automatically insulate ... [materials] from discovery as work product." *See United States v. Davis*, 636 F.2d 1028, 1039-1040 (5th Cir. 1981)(rejecting argument that materials

prepared by attorney should be subject to work-product protection where the primary motivating purpose for the preparation of the materials was not for possible future litigation), *cert. denied*, 454 U.S. 862 (1981); *see also Carroll v. Praxair, Inc.*, 2006 WL 1793656, * 2 (W.D.La. 2006)(Wilson, M.J.)(same).  When a party is motivated by dual purposes, *i.e.*, litigation as well as non-litigation purposes, a court must consider whether the party would have created the document anyway had there been no actual or threatened litigation.  *See Carroll*, 2006 WL 1793656, * 4 (finding investigative report and related documents that were prepared following an accident at a company's facility were not protected from disclosure as work-product where company would have conducted the investigation anyway "in the ordinary course of business").

Based on the above standard, Merck cannot sustain its efforts to extend the work-product privilege to third-party publicity firms.  The launching of a publicity campaign to bolster Merck's tarnished reputation serves no valid litigation purpose and only serves the ulterior purpose of poisoning potential jury pools.  Indeed, although Merck contends that the third-party publicity firms assisted in the preparation of a report that was prepared in anticipation of litigation,[1] Merck's assertions in support of this claim actually prove the report was prepared for non-litigation purposes, *i.e.* as part of Merck's publicity campaign.  In Merck's opposition to the PSC's motion to compel, Merck makes the following claims as to the reasons Debevoise retained the third party publicity firms:

> As the retention agreement between Debevoise and Mr. Paster makes clear, the public relations consultants were retained to provide 'attorneys at Debevoise with advice concerning the form of the

---

[1] *See* Declaration of William G. Bowen at ¶¶ 1 and 5 ("Bowen Declaration")(asserting that the Martin Report was prepared in light of pending shareholder litigation), attached as Exhibit 9 to the PSC's Motion to Compel.

> Martin Report and other publication considerations, including probable public reaction to relevant information so that Debevoise could provide legal advice to the Special Committee of the Board of Directors of Merck & Co., Inc." (*See* Paster Decl. ¶ 7.) Specifically, Burson-Marsteller needed information surrounding the investigation and preparation of the Martin Report in order to advise Debevoise regarding the manner of the public release of the Martin Report and the necessary communications to accompany such release. Similarly, Debevoise needed the guidance provided by Mr. Paster to advise the Special Committee regarding the statements that should accompany the Report and how the Board's responses to likely questions by the press could affect the litigation purposes of the Martin investigation.

*See* Merck's Opposition to Plaintiffs' Motion to Compel at 15. Thus, rather than assisting Debovoise by helping in the preparation of an objective report or in advising Merck on legal issues, the third-party publicity firms were retained with an eye toward the ultimate publication of the report in a format that would influence and shape public opinion.[2] This included advising Debevoise

---

[2] By fictionalizing a supposed litigation and/or legal purpose served by Burson-Marsteller, Merck has unwittingly admitted that the report was intended for public distribution all along, and that Debevoise was not acting independently by preparing an objective report designed to assist Merck's board of directors in determining whether or not to pursue litigation against Merck's upper management. As an independent investigator, Mr. Martin and his team never should have considered the publicity implications of his investigation and report since it was supposedly prepared to assist the board of directors in terms of its decision making functions. Nor would it be appropriate for such independent investigators to use a publicity firm to help in the drafting of the report and/or to help advise Merck with respect to communications related to a decision to publish the report. These assertions not only fail to establish that Debevoise needed the third party publicity firms to assist in the preparation of the report but also confirm that the investigation and report itself were prepared for non-litigation purposes, *i.e.* as part of Merck's publicity campaign. It is clear from these assertions that Merck contemplated that it would publish the report from the very beginning. This conclusion is further bolstered by the actual text of the Martin Report, which states in relevant part:

> The Special Committee's Principal concern was to determine whether senior management of the Company acted with integrity throughout the period that Vioxx was developed and marketed to the public.

(continued...)

concerning communications about the actual publication of the report itself.  These functions clearly involve "spin" as opposed to the objective preparation of a report designed to assist the Special Committee in its decision making function.

Nor is there any sound basis for extending the work-product privilege to third party publicity firms under the law of this Circuit given the extensive case law rejecting the application of the privilege where a party has consulted with or retained an expert for non-litigation purposes and/or requested the preparation of an investigative report for such non-litigation purposes.[3]  Simply stated,

---------------------------------

[2](...continued)

**********

> Second, <u>and perhaps most important</u>, we recognize that given the extensive controversy that has developed concerning Merck's actions with respect to Vioxx, the Board may determine to release our Report to the shareholders and the public.... Thus, it is important for the public to have as extensive a record as possible against which it can judge the conclusions we reach herein.

*See* Martin Report, Introduction, at 16-14, Exhibit 14 to the Plaintiffs' Motion to Compel (emphasis added).  Taking these expressions of purpose from the Martin Report at face value, there can only be one conclusion: the most important purpose of the Martin Report was a public statement of corporate integrity.  Such a statement has no privileged legal nature.

[3] *See Carroll*, 2006 WL 1793656, * 4 (finding investigative report and related documents that were prepared following an accident at a company's facility were not protected from disclosure as work-product); *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D.Tex. 2004)(finding materials were not protected by work-product privilege even though developed in the course of an investigation conducted by an attorney, who was asked amongst other things to "investigate possible legal causes of action", even though the materials "may be helpful in legal proceedings", since the "primary motivation in preparing these documents was the protection of its confidential information."); *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, * 7 (E.D.La. 2003)(Knowles, M.J.)( "If a party or its attorney prepares a document in the ordinary course of business, it will not be protected from discovery even if the party is aware that the document may also be useful in the event of litigation.")(emphasis added); *Seibu Corporation v. KPMG LLP*, 2002 WL 87461, * 4 (N.D. Texas 2002)(finding files and document created by auditors pursuant to an internal investigation initiated by in-house counsel were not within work-product doctrine even if "KPMG reasonable anticipated litigation", where

(continued...)

the Fifth Circuit would not extend the work-product privileges to materials prepared by a third-party publicity firm where the publicity firm has been retained to assist a party in litigating a case in the court of public opinion.  Given this fact it is not surprising that NO court sitting in the Fifth Circuit has even extended the work-product privilege to a third-party publicity firm.

Finding no support in Fifth Circuit jurisprudence, Merck has chosen to rely upon the law of the Second Circuit, which unlike the law of this Circuit has rejected the idea that a document must be created "primarily" or "exclusively" for litigation in order to qualify for protection under the work-product privilege.  *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).  The fact that the Second Circuit is at odds with the law of this Circuit is clear from a reading of *Haugh v. Schroder Investment Management North America Inc.*, 2003 WL 21998674 (S.D.N.Y. 2003), wherein after finding the attorney-client privilege inapplicable in a case involving a third-party publicity firm, the court nevertheless found materials privileged under the work-product doctrine in light of the liberal standard adopted by the Second Circuit in *Adlman*.  For instance, in finding the attorney-client privilege inapplicable the court in *Haugh* stated as follows:

> Haugh has not identified any legal advice that required the assistance
> of a public relations consultant.  For example, she has not identified
> any nexus between the consultant's work and the attorney's role in

---

[3](...continued)
"the primary purpose of the internal investigation was to make personnel decisions regarding the termination of partners responsible for the Q-Zar audit."); *McEwen v. Digitran Systems, Inc.*, 155 F.R.D. 678 (D.Utah 1994)(Counsel's retained accountants prepared the documents primarily to enable the re-issuance of the corporation's financial statements despite pending litigation and SEC investigation); *In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, 1997 WL 118369 (S.D.N.Y. 1997)(the documents were primarily prepared for business purposes in order to maintain the integrity of the financial reports of the corporation); *In re OM Group Securities Litigation*, *supra*, (documents generated for dual litigation and business purposes would have been generated in the absence of pending or possible future litigation and thus were not protected from disclosure under the work-product doctrine).

5

> preparing Haugh's complaint or Haugh's case for court. A media
> campaign is not a litigation strategy. Some attorneys may feel it is
> desirable at time to conduct a media campaign, but that does not
> transform their coordination of a campaign into legal advice.

*Id*. at * 3. Despite making the above observations with respect to the claim of the attorney-client

privilege, as note above, the court nevertheless found the items to be privileged under the work-

product doctrine. *Id*. at * 5. *Haugh* highlights the diverging work-product standards between the

two circuits. Merck's request to apply foreign law, however, must be declined. *See In re Food Lion,*

*Incorporated, Fair Labor Standards Act "Effective Scheduling" Litigation*, 73 F.3d 528 (4th Cir.

1996)(applying law of the Circuit where transferee court was located in a MDL proceeding); *In re*

*Korean Airlines*, 829 F.2d 1171 (D.C.Cir. 1987)(same), *aff'd* 490 U.S. 122 (1989); *Mark v. Keycorp*

*Mortg. Inc.*, 1996 WL 465400 (N.D.Ill. 1996)(same). This Court is obliged to look to the primary

motivating purpose when evaluating assertions of the work-product privilege. *See Davis*, *supra*.

Given that Merck's primary motivating purpose in retaining Debevoise was to further its publicity

campaign, Merck's argument fails. The publicity firms merely aided Debevoise in accomplishing

this non-litigation task.

Nor would the retention of the third-party publicity firms by Debevoise satisfy the work-

product standard developed in the Second Circuit, even if it applied. One of the cases relied upon

by Merck, *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (2d Cir. 2000), illustrates

this point. In *Calvin Klein* the court stated as follows:

> Turning to the assertion of "work product," it is obvious that as a
> general matter public relations advice, even if it bears on anticipated
> litigation, falls outside the ambit of protection of the so-called "work
> product" doctrine embodied in Rule 26(b)(3), Fed.R.Civ.P. That is
> because the purpose of the rule is to provide a zone of privacy for
> strategizing about the conduct of litigation itself, not for strategizing
> about the effect of the litigation on the client's customers, the media,

or on the public generally.

*Id*. at 55.   Despite making the above cautionary statement, the court went on to find the work–product doctrine applicable since the third-party publicity firm was actually retained to help counsel develop a litigation strategy.   *Id* at 55 (finding work-product doctrine applicable where the "public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form.").

The current situation is distinguishable since Debevoise was not retained to represent Merck in any litigation.   Rather, Debevoise was allegedly retained to conduct an investigation and to prepare a report in order to assist the board of directors in determining whether of not to pursue litigation against Merck' upper management.   *See* Bowen Declaration, *supra*.   Normally, public relations considerations would be totally irrelevant to such an investigation.

Thus, even assuming it would be proper to follow the law of the Second Circuit, the rationale of *Calvin Klein* does not apply since Burson-Mersteller was not retained to assist Debevoise in formulating a litigation strategy.   However, the law of the Second Circuit does not apply and based on well established precedent in this Circuit, the work-product privilege should not be extended to third-party publicity firms, especially where such firms have been retained as part of a publicity campaign.

## B.   The Attorney-Client Privilege is Inapplicable to Materials in the Possession of Third-Party Publicity Firms

Because the services provided by third-party publicity firms to Debevoise were performed for business as opposed to legal purposes, it should come as no surprise that there are NO New Jersey cases recognizing the application of the attorney-client privilege to third party publicity firms

retained as agents of law firms or otherwise.

Again, Merck relies on case law from the Second Circuit in arguing that it would be proper to apply the attorney-client privilege under the circumstances of this case. However, even under the standards applied in the Second Circuit it is clear the attorney-client privilege is inapplicable given the facts of this case. For instance, in finding the attorney-client privilege inapplicable in *Calvin Klein* the Second Circuit stated as follows:

> None of these vague and largely rhetorical contentions by the respective parties is particularly helpful to assessing the purpose of the documents here in issue, many of which appear on their face their to be routine suggestions from a public relations firm as to how to put the "spin" most favorable to CKI on successive developments in the ongoing litigation. In any event, however, no matter how these documents are viewed, none qualifies for the protection of the attorney client privilege ...

*Calvin Klein*, 198 F.R.D. at 54;[4] *see also Haugh*, 2003 WL 21998674, * 3 (a media campaign is not a litigation strategy and third party publicity firms do not assist in providing legal services).

All of the cases relied upon by Merck in making its attorney-client privilege argument are distinguishable. *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001), is distinguishable since it involved the functional equivalent test for the application of the attorney-client privilege. In this case the court determined that a public relations firm was the functional equivalent of an in-house PR firm and thus equated it to the position of the client in its evaluation of the attorney-client privilege claim. This scenario is impossible under the facts of this case since

---

[4] The Second Circuit also found a waiver of the attorney-client privilege with respect to material provided to the third party publicity firm. *Id.*

both Merck and Debevoise are contending that the publicity firms were agents of Debevoise.[5]

The other case relied upon by Merck, *In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F.Supp.2d 321 (S.D.N.Y. 2003), is also distinguishable.  *In re Grand Jury*, which was a criminal case, involved a situation where a party claimed that its counsel had hired a publicity firm:

> ... [o]ut of a concern that "unbalanced and often inaccurate press reports about Target created a clear risk that the prosecutors and regulators conducting the various investigations would feel public pressure to bring some kind of charge against" her.  Firm's "primary responsibility was defensive-to help restore balance and accuracy to the press coverage.  The objective ... was to reduce the risk that prosecutors and regulators would feel pressure from the constant anti-Target drumbeat in the media to bring charges ... [and thus] to neutralize the environment in a way that would enable prosecutors and regulators to make their decisions and exercise their discretion without undue influence from the negative press coverage."  Witness claims that "a significant aspect" of Firm's "assignment that distinguished it from standard public relations work was that [its] target audience was not the public at large.  Rather, Firm was focused on affecting the media-conveyed message that reached the prosecutors and regulators responsible for charging decisions in the investigations concerning ... Target."

*See In re Grand Jury*, 265 F.Supp.2d at 323–4.  Merck cannot and does not assert these same objectives for the retention of the publicity firms by Debevoise.  According to Merck, the Martin Report was prepared to assist the board of directors in determining whether or not to bring legal action against high ranking members of Merck's upper management.  *See* Bowen Declaration, *supra*. Under this scenario, as opposed to the scenario in *In re Grand Jury*, there would be no need to influence the decision making of outsiders parties such as prosecutors and regulators.  Furthermore,

---

[5] *See* Merck's Opposition to the Plaintiffs' Motion to Compel at pg. 4 (acknowledging that the public relations firms were retained by Debevoise).

any contention by Merck that the report was prepared for a similar purpose, *i.e.* to influence outside parties, would be tantamount to an acknowledgment that the report was part of a publicity campaign and thus would be without any valid litigation purpose. *See* Fn. 2, *supra*.

*In re Grand Jury* is also significant in terms of its discussion of instances where the attorney-client privilege applies to third-party publicity firms. According to the court in *In re Grand Jury*, the attorney-client privilege applies where communications with third-party publicity firms are for the purpose of obtaining legal advice from the attorney and/or for the purpose of assisting the attorney in performing tasks that go beyond advising a client as to the law. *Id*. at 326. The court very quickly determined that the first situation was inapplicable since the "Firm was not retained to help Target's lawyers understand technical matters to enable the lawyers to advise their client as to the requirements of the law ...". *Id*. Based on the very unique circumstances before it, the court held that influencing prosecutors and regulators through the use of a publicity firm fit the second category for the application of the privilege, *i.e.* assisting an attorney in performing tasks for the client. *Id*. at 330. This was because the client was "confronted with the broad power of the government", *i.e.* a criminal case, and because "the advocacy of the client's case in the public forum will be important to the client's ability to achieve a fair and just result in pending or threatened litigation."[6] *Id*.

Even under the Second Circuit standard, no similar purposes exist in this case due to the nature of Merck's retention of Debevoise. Although Merck may claim that the media reporting after

---

[6] Even under the Second Circuit's standard, the court in *In re Grand Jury* recognized the likelihood that an appellate court could disagree with its findings on the assertion of the attorney-client privilege. *Id*. at 333 ("The Court recognizes the possibility that a reviewing court may come to a different conclusion with respect to the attorney-client privilege issue.").

10

the withdrawal of Vioxx from the market threatened its ability to obtain fair civil trials and that it needed publicity firms to help obtain balanced reporting, such a claim is contrary to the purported reason espoused for the retention of Debevoise by the Special Committee.  Debevoise was not retained to defend Merck against any actual or threatened litigation.  Debevoise was hired to conduct an independent investigation and to prepare a report that would assist the Special Committee in advising the full board as to whether or not the company should bring legal action against members of Merck's upper management.  This objective is devoid of publicity considerations.[7]

Finally, even though *In re Grand Jury* determined that the third-party publicity firm had assisted counsel in performing legal tasks for a client, the court nevertheless ordered production of certain materials in the possession of the publicity firm since they were outside the privilege.  *Id.* at 331-332.  Thus, even if this Court is persuaded by Merck's claim that the third-party publicity firms assisted Debevoise in performing some task for Merck, an in camera inspection is still in order to assure that the privilege is not being abused.  Since neither Merck, Debevoise or either of the third-party publicity firms has provided a privilege log, only an in camera inspection can assure an objective review, unless the court deems the failure to produce a privilege log a waiver of any privilege.  In such case, the documents should be produced forthwith.

---

[7] This case would have been far different had Merck's current counsel in this litigation retained a publicity firm to assist Merck in obtaining balanced reporting in the media.  Although it is doubtful this Circuit would follow cases like *In re Grand Jury* by finding a valid legal purpose behind the launching of a publicity campaign, at least the facts of this case would arguable fit within those of the principle case relied upon by Merck in making its attorney-client privilege argument.

## III.    CONCLUSION

For the reasons set forth above, the PSC's motion to compel should be granted.

Respectfully submitted,

/s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:  (504) 561-6024

Temporary Address:
201 St. Charles Ave.
Suite 4310
New Orleans, LA 70170

**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA  71309-1190<br>PH:  (318) 487-9874<br>FAX:  (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA  70163-2800<br>PH:  (504) 522-2304<br>FAX:  (504) 528-9973 |
| Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL  36103-4160<br>PH:  (800) 898-2034<br>FAX:  (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL  32502<br>PH:  (850) 435-7000<br>FAX:  (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH:  (215) 772-1000<br>FAX:  (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292 |

12

| | |
|---|---|
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Shelly Sanford, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, as well as copies being forwarded via U.S. Mail on the following listed individuals, on this 27 th day of December, 2006.

1. Jesse B. Schneider
   Davis & Gilbert, LLP
   1740 Broadway
   New York, NY 10019
2. Mark P. Goodman
   Debevoise & Plimpton, LLP
   919 Third Avenue
   New York, NY 10022
3. Debra Todres
   Debevoise & Plimpton, LLP
   919 Third Avenue
   New York, NY 10022

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, LLP*
201 St. Charles Ave., Suite 4310
New Orleans, LA  70170
PH:    (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com