# Exhibit "A"

FEBRUARY 2006                    000046

Court of Common Pleas of Philadelphia County
Trial Division    JURY FEE PAID
**Civil Cover Sheet**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MARK HENNELLY | MERCK AND COMPANY |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 592 SNOWDEN ROAD, UPPER DARBY, DELAWARE COUNTY, PA | ONE MERCK DRIVE, WHITE HOUSE STATION, NEW JERSEY  08889 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| STEPHANIE HENNELLY | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 592 SNOWDEN ROAD, UPPER DARBY, DELAWARE COUNTY, PA | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal ☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☒ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| Y | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

T1 - MASS TORT  - VIOXX

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| IN RE VIOXX LITIGATION, APRIL TERM 2005, NO. 0736 | Yes  No ☒  ☐ ☐  ☐ ☐  ☐ |

TO THE PROTHONOTARY:

. Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| RICHARD M. GOLOMB, ESQUIRE | 121 SOUTH BROAD STREET 9TH FLOOR |
| **PHONE NUMBER** 215-985-9177 | **FAX NUMBER** 215-985-4169 | PHILADELPHIA, PA  19107 |
| **SUPREME COURT IDENTIFICATION NO.** 42845 | **E-MAIL ADDRESS** rgolomb@golombhonik.com |
| **SIGNATURE** Richard Golomb | **DATE** 2/6/06 |

**GOLOMB & HONIK**
BY: RICHARD M. GOLOMB, ESQUIRE
121 South Broad Street
9th Floor
Philadelphia, PA 19107
(215) 985-9177

**ATTEST**

**JURY FEE PAID**   FEB 0 6 2006

Attorneys for Plaintiffs   JOHN SHELLENBERGER

## IN THE COURT OF COMMON PLEAS
## PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| IN RE VIOXX LITIGATION | FEBRUARY 2006 |
| | NO.   **000046** |

### CIVIL ACTION COMPLAINT - SHORT FORM

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re: Vioxx ("Vioxx") Litigation in Philadelphia County Court of Common Pleas, filed under Master Docket Number 0736. Pursuant to an Order by the Honorable Norman Ackerman, Philadelphia County Court of Common Pleas, the following Short Form Complaint is utilized in this Vioxx action.

Plaintiff selects and indicates by checking off the appropriate spaces, those products, parties and claims that are specific to her or his case. Where certain claims require, pursuant to Pennsylvania law, specific pleading or case specific facts and individual information, plaintiff shall add and include them herein.

1. Plaintiff, Mark Hennelly, is an individual who resides at 592 Snowden Road, Upper Darby, Delaware County, in the state of Pennsylvania (herein referred

1

to as the "plaintiff").

      Plaintiff's date of birth is November 22, 1961.

    1b. Plaintiff is married to Stephanie Hennelly.

    2. Prior to his myocardial infarction from which this action arises, Plaintiff ingested Vioxx from on or about January 2000 until June 15, 2001.

    3. Plaintiff was prescribed and/or otherwise obtained Vioxx from his primary care physician.

    4. Plaintiff was diagnosed as having a myocardial infarction on or about June 15, 2001 at Delaware County Memorial Hospital by Robert Marvin, M.D.

    5. Plaintiff did not discover - and could not have discovered through his own diligence - that Vioxx was the cause of his myocardial infarction until September, 2004, when Plaintiff's discovery that his injury was caused by Vioxx first became reasonably possible.

    6. Plaintiff-spouse, Stephanie Hennelly (hereinafter referred to as "Spouse") is an individual resident at the above address and claims damages as a result of:

        Loss of Consortium

    Spouse's date of birth is August 10, 1961.

    7. The following claims asserted in the Master Complaint, and the allegations with regard thereto in the Master Complaint, are herein adopted by reference.

        Count One: Negligence

        Count Two: Breach of Implied Warranty

Count Three:  Breach of Express Warranty

Count Four:  Fraud & Misrepresentation[1]

Count Five:  Violation of Consumer Protection Laws

Count Six:  Punitive Damages

Count Nine: Loss of Consortium

8.  Plaintiff's dependents, relationship and date of birth, are:

Jennifer Hennelly - Daughter, May 19, 1990

Danielle Hennelly - Daughter, January 23, 1993

Mark Hennelly - Son, March 21, 1995

9.  Plaintiff, Mark Hennelly, asserts the following additional theories against these defendants (See FN. 1):

Plaintiffs' fraud and misrepresentation claims against Defendant are set forth below.

WHEREFORE, Plaintiffs pray for relief as set forth in the Plaintiffs' Master Long Form Complaint in the matter In Re: Vioxx Litigation, filed in the Philadelphia County Court of Common Pleas under Master Docket Number 0736.

### PLAINTIFF'S FRAUD AND MISREPRESENTATION CLAIMS

In accordance with footnote one of the Short Form Complaint, Plaintiff, Mark Hennelly sets forth the following fraud and misrepresentation claims against

---

[1] If additional counts, Count Four and/or counts directed to other defendants are alleged, the specific facts supporting these allegations must be pleaded by the plaintiff in a manner complying with the requirements of the Pennsylvania Rules of Civil Procedure, and the defendants against whom they are alleged must be specifically identified on a separate sheet of paper attached to the Short Form Complaint.

Defendant.[10]

I.    **FACTS**

A.    **The Development of Vioxx and How the Drug Works**

10.  Vioxx is the brand name of rofecoxib, one of a class of drugs called
"prostaglandins," which work to reduce inflammation and pain by providing
analgesic and anti-inflammatory benefits to persons with, among other conditions,
arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX
enzymes metabolize arachidonic acid to produce prostaglandins.

11.  Vioxx is a COX-2 inhibitor.  COX-2 is an enzyme which is produced at
points of inflammation and pain.  Inhibiting COX-2 relieves inflammation and pain,
however it also causes an imbalance between Prostacyclin (which has the effect of
keeping the blood thin and the blood vessels wide) and Thromboxane (which has
the effect of constricting blood vessels and causing platelets to aggregate.)
Thromboxane is unopposed when Prostacyclin is inhibited, thus increasing the risk
of blood clots.

B.    **Defendant's FDA Applications for Approval to Sell Vioxx**

12.  In pre-marketing clinical trials, prior to the submission of the Application
to Market a New Drug for Human Use (hereinafter "NDA"), Defendant realized the
potential for Vioxx to favor platelet aggregation and thus increase the risk of
cardiovascular events including, but not limited to myocardial infarction, stroke and

---

[10] The paragraph numbers of Plaintiff's fraud and misrepresentation claims follow those in
the preceding paragraphs of the Short Form Complaint.

4

transient ischemic attack.

13.  Defendant submitted an NDA for rofecoxib to the United States Food and Drug Administration (hereinafter "FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.  This application was denoted NDA 21-042 by the FDA.

14.  Defendant also submitted an NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

15.  On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

16.  Defendant submitted a Supplemental New Drug Application, NDA-007, with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib.  In conjunction with this NDA, Defendant performed a study entitled the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was conducted from January 6, 1999 through March 17, 2000.

17. The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking Naproxen 1000 mg/day;" and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

### C.    The FDA's Warnings Regarding Defendant's Aggressive Marketing of Vioxx

18. The results of the VIGOR Study showed an increased risk of, including, but not limited to, myocardial infarction and stroke in patients taking Vioxx as compared to those patients taking Naproxen. Following VIGOR, Defendant made certain representations regarding the safety of Vioxx.

19. On September 17, 2001, Thomas W. Abrams, R.Ph., MBA; Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Defendant relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

20. The Warning Letter stated that Defendant had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus, misrepresents the safety profile for Vioxx." The letter further stated:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIS) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (Naproxen).

### D.    Defendant's Refusal or Failure to Properly Label Vioxx

21. On April 11, 2002, the FDA approved a supplemental application for the

6

use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the
previously approved indications for osteoarthritis and pain. The FDA also approved
new labeling, a "Dear Doctor" letter, and a new patient package insert. The revised
labeling contained information concerning the results of the VIGOR Study, however,
the risk of myocardial infarction and stroke were not listed in the warnings section
of the label. Instead, this information was buried in the clinical study information,
with the provision that the clinical significance of the increased cardiovascular
events was unknown.

22. Both the initial labeling and the revised labeling were ineffective because
they did not properly advise physicians and patients of the potential cardiovascular
side effects of Vioxx.

**E.     Defendant's Continued Misrepresentations to the Public Regarding the
         Safety of Vioxx**

23. Despite knowledge of the ineffectiveness of the warnings, and despite
knowledge that Vioxx could cause serious cardiovascular side effects, including,
but not limited to myocardial infarction and stroke, Defendant concealed and/or
downplayed the dangers associated with Vioxx, and continued to market the drug
in the United States and abroad.

24. Defendant engaged in a $500 million direct-to-consumer advertising
campaign that featured numerous celebrities and touted the perceived benefits of
Vioxx without adequately warning consumers of the serious cardiovascular risks.

25. Defendant's 2001 Annual Report stated:

7

The Company also noted that a number of federal and state lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx. . . . The lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are completely without merit and will vigorously defend them.

26. In its January 23, 2001 8-K filing with the Securities and Exchange

Commission, Defendant made no mention of the cardiac and cardiothrombotic

findings of the VIGOR study:

"Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX and SINGULAIR, drove Merck's performance for the year and created a powerful platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.

"Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. Vioxx, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, Vioxx has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck's second largest-selling medicine. In the United States, Vioxx now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. Vioxx achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.

A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which Vioxx reduced the risk of serious gastrointestinal complications by half compared to the nsaid naproxen, was published in November in The New England Journal of Medicine. Another study, presented in November, showed that Vioxx significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

## F.    Defendant's Knowledge of the Falsity of Its Misrepresentations

27.    In 2001, Dr. Eric J. Topol published a report in the Journal of the

American Medical Association which analyzed data from several clinical trials

8

involving Vioxx and Celebrex. Dr. Topol found an increased danger of heart attacks and strokes in patients taking Vioxx.

28. In 2002, Dr. Wayne Ray conducted a study of patients taking high doses of Vioxx and found that those patients had significantly more myocardial infarctions and strokes.

29. In August 2004, Dr. David Graham, an FDA researcher conducted an epidemiological study based on 1.4 million patients in the Kaiser Permanente Health Care System and found a heightened cardiovascular risk among Vioxx users.

30. Despite the foregoing, Defendant continued to represent to consumers, including Plaintiffs, that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. Merck downplayed any potential cardiovascular and gastrointestinal side effects of Vioxx, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

### G.   Plaintiff's Injury

31. On June 15, 2001, Plaintiff, then 39 years old, suffered a myocardial infarction. Prior to his myocradial infarction, Plaintiff had taken Vioxx, containing the active ingredient, rofecoxib, to address pain related to a herniated disc in his back, as well as other symptoms of pain, daily for in excess of 18 months during 2000 and 2001.

### H.   Defendant's Withdrawal of Vioxx from the Market

32. On September 30, 2004, Defendant announced the voluntary

9

withdrawal of Vioxx after a three-year study of 2,600 patients which showed that those who took Vioxx were more likely to suffer heart attacks and strokes than those who took a placebo. Defendant has asserted those these findings were based upon "new data." However, it is obvious that Defendant ignored the pre-existing data, described in part above, showing increased risk of heart attacks and strokes in Vioxx users, and misrepresented the safety of the drug to physicians and to consumers.

33. Consumers, including Plaintiff, Mark Hennelly, detrimentally relied on Defendant's misrepresentations and material omissions, thus subjecting Mr. Hennelly to the unreasonable risk of myocardial infarction and stroke.

### COUNT IV - FRAUD AND MISREPRESENTATION
### Mark Hennelly vs. Merck & Company, Inc.

34. Plaintiff incorporates by reference all preceding paragraphs of his Complaint as though fully set forth herein, and further alleges as follows:

35. Defendant, having undertaken the manufacturing, marketing, dispensing, distribution, and promotion of Vioxx, owed a duty to provide accurate and complete information regarding Vioxx.

36. Defendant's advertising program, using affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that Vioxx was safe for human use and did not have unacceptable side effects.

37. Defendant spent 500 million dollars on a direct-to-patient advertising campaign.

10

38.     Defendant misrepresented to Plaintiff, Mark Hennelly and to members of the general public their knowledge about the propensities of Vioxx to cause injuries such as those sustained by Mr. Hennelly.

39.     Defendant concealed, failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Vioxx.

40.     Defendant falsely and deceptively kept relevant information from Vioxx users and minimized concerns regarding the safety of Vioxx to induce Plaintiff and the general public to purchase and use Vioxx.

41.     In justifiable and detrimental reliance on the truth of Defendant's representations about the safety of Vioxx, Plaintiff, Mark Hennelly purchased Vioxx and used the product in the manner and for the purpose intended as represented and instructed by Defendant.

42.     The representations, misrepresentations, acts and omissions made by Defendant deprived the Plaintiff, Mark Hennelly, and his physicians, as well as other foreseeable users of Vioxx, of the opportunity to freely or knowingly choose whether or not to expose themselves and their patients to the aforementioned dangers of ingesting Vioxx.

43.     As a direct and proximate result of Plaintiff, Mark Hennelly's lack of awareness of the dangers of Vioxx, caused by the fraudulent acts and omissions of the Defendant, Mr. Hennelly ingested Vioxx and suffered serious and permanent injuries, including but not limited to, myocardial infarction. As a further direct and proximate result of the acts and omissions of Defendant, Mr. Hennelly has been

11

prevented from pursuing his normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of his ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), punitive damages, attorneys' fees, costs, pre-judgment interest and post-judgment interest.

GOLOMB & HONIK

BY: _____

**RICHARD M. GOLOMB, ESQUIRE**
**Attorney for Plaintiff**

Date:   2/6/06

12

<u>**VERIFICATION**</u>

**Plaintiffs, Mark Hennelly and Stephanie Hennelly** hereby state that they are

Plaintiffs in this action and verify that the statements made in the foregoing **Plaintiffs'**

**Civil Action Complaint** are true and correct to the best of their knowledge, information

and belief. The undersigneds understand that the statements therein are made subject

to penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to

authorities.

_____
**MARK HENNELLY**

_____
**STEPHANIE HENNELLY**

**Date:** 2/2/06