# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:  VIOXX                                           :

PRODUCTS LIABILITY LITIGATION          :

                                                               :

This document relates to:                         :

        BOYD EDMONDS and                     :
        JANET EDMONDS, Plaintiffs,       :

              v.                               :

        MERCK & CO., INC.                     :

        Case No. 05-5450,                       :

             and                            :

        DONALD STINSON, Plaintiff,         :

              v.                               :

        MERCK & CO., INC.                     :

        Case No. 05-5494,                       :

             and                            :

        TIMOTHY R. WATSON, Plaintiff,  :

              v.                               :

        MERCK & CO., INC.                     :

        Case No. 05-5545.                       :

MDL Docket NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO MERCK'S MOTION FOR SUMMARY JUDGMENT

I.     **INTRODUCTION**

Plaintiffs Boyd Edmonds and Janet Edmonds, Donald Stinson and Timothy R. Watson hereby respond to Merck's summary judgment motion relating to the statutes of limitations. In its motion for summary judgment Merck makes a series of erroneous assertions that misdirect this Court's analysis of the proper timing of these personal injury claims. Upon inspection, Merck has not established that it is entitled to summary judgment as each plaintiff has timely asserted claims for relief within the applicable limitations periods.

Each of the Plaintiffs were injured by Vioxx. Their injuries occurred at various times before Vioxx was withdrawn from the market, at a time that Merck was vigorously denying that Vioxx had any association with cardiovascular injuries. When Merck could no longer maintain its charade after the early results of the APPROVe study were disclosed, each Plaintiff filed their complaints within approximately 13 months of the time that Merck withdrew Vioxx from the market. Given that the jurisdictions in which the plaintiffs reside apply 1 or 2-year statutes of limitations to their claims for strict liability, negligence and the like, Merck contends that each plaintiffs' case is time-barred. Plaintiffs demur for several reasons: 1) their claims are timely because they are entitled to rely on Louisiana's prescription laws, which provide not only a liberal discovery rule, but also allow for tolling during the pendency of a class action under the *American Pipe* tolling doctrine;[1] 2) alternatively, under their home states' laws their claims are not time-barred thanks again to the application of combinations of the discovery rule and/or class action tolling (with certain

_____

[1] The class action tolling doctrine, whereby the claims of absent class members are tolled for limitations purposes upon the filing of a class action complaint, was first announced by the Supreme Court in the seminal case of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

exceptions); and 3) not all of plaintiffs' claims are covered by 1 or 2-year statutes of limitations, *e.g.*, plaintiffs' fraud claims and warranty claims have longer statutes of limitations applicable to them, which claims are not even addressed by Merck's motion and are patently timely.

Merck's principle argument to evade *American Pipe* tolling is that plaintiffs are entitled to only "one bite"at the tolling apple.  In other words, Merck contends that tolling may only follow from the first class action complaint and if the premier class action extinguishes a claim, then subsequent class actions can not be employed to toll a statute of limitations.  Once establishing this rubric, Merck attempts to fit the instant plaintiffs' claims into the *Cain* nationwide class action to extinguish any potential *American Pipe* tolling.[2]  However, it is immediately obvious that there is a lack of identity of claims between the *Cain* class action that sought only injunctive relief and the personal injury claims asserted by the plaintiffs in these cases.  A close inspection of the pleadings in *Cain* reveals that it was a purchaser's class that only requested injunctive relief and the recoupment of out of pocket expenses relating to purchases of both Vioxx and Celebrex.  *Cain* was not a personal injury class action, as Merck contends.  It is inapposite and affords no basis for Merck's assertion that *Cain* not only triggered the statute of limitations but also extinguished class tolling for every individual nationwide.

Merck also attempts to argue that in those jurisdictions that recognize the discovery rule,

---

[2] In making its various arguments about the relevance of the *Cain* litigation, Merck refers to the initial complaint that commenced the litigation, *see* Complaint in *Lettieri v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.*, CV 01-3441 (E.D.N.Y. May 23, 2001), which is exhibit 8 to Merck's Statement of Facts ("Merck's SOF"), and two amended complaints that were filed during the course of that litigation.  *See* Amended Complaint in *Cain v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.*, CV 01-3441 (E.D.N.Y. Aug. 1, 2001), exhibit 9 to Merck's SOF; Second Amended Complaint in *Cain v. Merck & Co., Inc.*, CV 01-3441 (E.D.N.Y. Sept. 18, 2002), exhibit 10 to Merck's SOF.

Kentucky, Louisiana and Tennessee, that plaintiffs should be charged with discovering their claims even prior to the time that Merck ostensibly learned for the first time that Vioxx posed a danger to patients, *i.e.*, approximately coincident with the withdrawal of Vioxx from the market. Merck relies upon cases where the identity of the tortfeasor, the existence of negligence and the danger associated with the negligent act were clear that the negligent act gave rise to liability. In such cases, extensive media coverage in a limited geographical area was deemed to put plaintiffs on notice of their claims. Such is not the case with Vioxx. Prospective plaintiffs suffered injuries years before Merck concedes the possibility that there was any evidence implicating Vioxx's role in causing injuries. Indeed, Merck took extensive actions designed to cloud the waters and cover up the role of Vioxx in causing such injuries. These actions by Merck began well before the withdrawal of Vioxx and continue to this very day, as Merck still denies that Vioxx caused plaintiffs' injuries.

Under all these circumstances, there is simply no basis for determining, as a matter of fact and law, that prospective plaintiffs should be charged with discovering their claims prior to the withdrawal of Vioxx from the market or that their claims are untimely.

## II.   LEGAL ARGUMENT

### A.   Under Louisiana's Choice of Laws Rules Plaintiffs' Claims Are Timely

"A federal court considering a diversity case that implicates choice of laws must determine which state's laws applies by following the choice of law rules of the forum state." *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001). In its motion for summary judgment Merck recognizes that Louisiana's choice of law rules apply to the dispute presently before this

Court. *See* Merck Memo of Law at 6.[3] Assuming that Merck is correct that each plaintiffs' claims are time barred by their home states' laws, application of Louisiana's choice of law doctrine results in the application of Louisiana's prescription laws. And, under Louisiana's prescription laws, plaintiffs' claims are all timely.

A critical component of Louisiana's choice of law regime for purposes of Merck's motion for summary judgment is Article 3549 of the Louisiana Civil Code. Article 3549 allows for the application of Louisiana's statute of limitations even though the substantive law of another state would otherwise be applicable to a dispute. Article 3549 of the Louisiana Civil Code provides a vehicle for allowing the plaintiffs claims to go forward if they are timely under Louisiana law and Merck is correct that their claims are untimely at home. Article 3549 states in relevant part:

> B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and preemption law of this state applies, except as specified below:
>
> * * * * * * * * * *
>
> (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.
>
> C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any

---

[3] The application of Louisiana's choice of law rules is proper since each of the plaintiffs filed their complaints directly in this Court. *See Edmonds v. Merck*, Case No. 05-5450 (E.D.La. November 7, 2005); *Watson v. Merck & Co., Inc.*, Case No. 05-5494 (E.D.La. November 14, 2005); *Stinson v. Merck & Co., Inc.*, Case No. 05-5545 (E.D.La. November 8, 2005). *See Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941)(forum court's choice of law rule applies); *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990)(original forum court's choice of law doctrine applies for transferred cases).

person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or preemption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

La.Civ.Code.Ann.Art. 3549.[4]

---

[4] Although Merck may suggest otherwise, Article 3549 will only be applicable in this litigation for purposes of applying Louisiana's statute of limitations to save a plaintiff's claim where another state's substantive law applies and a plaintiff's claims would be time-barred under that law. Article 3549 will not be applicable in this litigation to preclude a plaintiff from bringing a claim where his or her claim would be timely under the law of the state whose substantive law applies but untimely under Louisiana law irrespective of language in subsection (B)(1) of Article 3549. *See* La.Civ.Code.Ann.Art. 3549 (B)(1)("If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice). Merck simply cannot meet its Article 3549 (B)(1) burden of establishing the absence of "compelling considerations of remedial justice" for purposes of applying the statutes of limitations of the state whose substantive law controls, *i.e.* where a plaintiff's claims would be timely under that law but untimely under Louisiana law. This is because the expectations of plaintiffs and the overwhelming number contacts with the state whose substantive law controls establishes the existence of compelling considerations of remedial justice.

In this binary litigation, the substantive law that will likely be applicable to a particular plaintiff's claims will be the law of his or her home state, which is the state where the injury occurred and where Vioxx was prescribed and ingested. In such cases, it would be inequitable to dismiss a complaint that would be timely under the law of the plaintiff's domicile, given the extent of contacts with that state and the plaintiff's expectations that the timeliness of his or her complaint will be governed by the law of his or her domicile. *See Castano v. American Tobacco Company*, 961 F.Supp. 953, 957 (E.D.La. 1997)(Louisiana "[p]rescription statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished, so if there are two constructions of the statute, the one which favors maintaining the action should be adopted."), *citing Wimberly v. Gatch*, 635 So.2d 206 (La. 1994) and *Bustamento v. J.D. Tucker*, 607 So.2d 532 (La. 1992). Because Louisiana strictly construes statutes against prescription, Article 3549 should be construed in such a way that its application would permit a plaintiff to pursue claims that would be timely under the law of their home state, where that state provides the substantive law applicable to the claims, and where the vast majority of material occurrences transpired in that state.

In its choice of law analysis, Merck relies upon *Marchesani, supra*, for the proposition that each of the plaintiffs' home states' limitations periods apply and that plaintiffs are time-barred in their home courts. *Marchesani*, however, favors plaintiffs in terms of its construction of Article 3549. Merck overlooks the fact that since *Marchesani* was decided, the Louisiana state legislature revised the text of Article 3549 on June 29, 2005. New Article 3549 directs that where the substantive laws of another state applies and the plaintiff's claims would be time barred under the laws of that state, Louisiana courts are to apply Louisiana's prescription laws if the state whose substantive law applies deems its statute of limitations to be procedural. *See* La.Civ.Code.Ann.Art. 3549 (C). Here, all of the foreign jurisdictions comprising plaintiffs' home states, Alabama, Kentucky and Tennessee, find that their statutes of limitations are <u>procedural</u> and not substantive.[5] Assuming that Merck is correct that plaintiffs' claims are time barred in their home jurisdictions, Article 3549 dictates that Louisiana's prescription statute of limitations apply to these claims.

In *Marchesani*, the Fifth Circuit determined that the substantive law of Tennessee controlled the liability aspect of the plaintiffs' claims but nevertheless applied Louisiana law of prescription. *See Marchesani*, 269 F.3d at 491 ("In light of this clear directive, we have no choice but to follow

_____

[5] *See Ex parte Liberty National Life Insurance Company*, 825 So.2d 758, 765 (Ala. 2002)(statutes of limitations are procedural and merely affect the remedy); *Green v. Dixon*, 727 So.2d 781, 784 (Ala. 1998)("statutes of limitations affect the remedy"); *Jefferson County Sav. Bank v. Ben F. Barbour Plumbing & Elec. Co.*, 68 So. 43, 46 (Ala. 1915)("Statutes of limitations go to the remedy, not the rights of the parties."); *see also Gil Ruehl Mechanical, Inc. v. Hartford Fire Insurance Company*, 164 S.W.3d 512, 514 (Ky.App. 2004)(acknowledging that under Kentucky law a statute of limitations is procedural except where a statute creates a new cause of action that did not exist at common law and makes the limitations period an essential element); *see also Jones v. Methodist Healthcare, et al.*, 83 S.W.3d 739, 743 (Tenn.Ct.App. 2002)("Statutes of repose are substantive and extinguish both the right and the remedy while statutes of limitations are procedural, extinguishing only the remedy."), *citing Wyatt v. A-Best Co.*, 910 S.W.2d 851 (Tenn. 1995); *Calaway ex rel. v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2006)(same).

it to the inexorable conclusion that Louisiana's law of prescription, under which the Marchesani's claims are not time-barred, controls this case."). The defendant in *Marchesani*, as in this case, failed to meet its burdens of establishing that maintenance of the action in Louisiana was not warranted by the policies of Louisiana and its relationship to the parties or the dispute, and that application of Louisiana law of prescription was not warranted by compelling considerations of remedial justice. *Id.* at 491 ("Milnor's reach, however, exceeds its grasp of article 3549's high standards for displacing Louisiana's law of prescription."). To meet these "high standards for displacing Louisiana's law of prescription" in such cases, a party must establish that policies underlying Louisiana prescription laws are not implicated, and that the policies of the other state are more seriously implicated. *Id.* Merck has failed to address, much less, meet its burden that Louisiana law should not apply.[6]

_____

[6] Because Merck cannot meet this initial burden of establishing that the policies of Louisiana are not implicated, it is not necessary to evaluate whether the policies of the other states are more seriously implicated for purposes of Article 3549, even assuming that the substantive laws of these other states control and the plaintiff's claims would be time-barred under such law.

Suffice it to say, however, applying Louisiana law, under which plaintiffs' claims are timely, will promote the interests of deterrence and compensation, by forcing a negligent party, Merck, to compensate victims of its negligence where that party has distributed a harmful product nationwide, including in Louisiana. There was no variation in the nature of the product that was distributed by Merck, meaning that Louisiana's interests in deterrence and compensation will be equally served by applying its statute of limitations to parties injured in other states that are litigating their claims here as it would if the plaintiffs were actually from Louisiana. Because Merck does business in Louisiana, distributed Vioxx in the state, and Louisiana residents suffered Vioxx related injuries, the interests in deterrence and compensation that underlie Louisiana's statute of limitations are implicated. In addition, the interest in predictability underlying Louisiana's statute of limitations will also be promoted by applying Louisiana's prescriptive law to a MDL proceeding being litigated in a Louisiana federal court. This is especially true since these MDL proceedings include a national class action complaint filed by a Louisiana resident. *See* discussion of the national class action complaint filed in *Russell v. Merck & Co., Inc.,* Civ.No. 04-712 (M.D.La.), *infra.*

(continued...)

Louisiana employs a short limitations period in personal injury actions of only one-year but a liberal discovery rule in cases where an injury or its cause is unknown. *See* La. Civ. Code. Ann. Art. 3492 (one year limitations period in personal injury cases); *Reed v. St. Charles Gen. Hosp.*, 815 So. 2d 319, 322 (La. Ct. App. 4th Cir. 2002)(recognizing that accrual of cause of action is postponed while an injury or its cause is unknown).   In these cases, each of the plaintiffs was unaware of the association between their injuries and their use of Vioxx before Vioxx was withdrawn from the market due to Merck's efforts to conceal that association, and Merck has asserted it did not know of such an association until it determined that it should remove the drug from the market.[7]   *See*

---

[6](...continued)
For purposes of applying Article 3549 to determine whether the policies of Louisiana warrant application of Louisiana's prescription law, the Louisiana legislature has instructed that such determinations '"should be determined by the court by examining all the circumstances surrounding the particular case' and not merely by a mechanical tabulation of factors."'   *See Marchesani*, 269 F.3d at 492, *quoting* La.Civ.Code.An.art. 3549, Revision Comment (i).   Based upon the above discussion, sufficient grounds exist to warrant the application of Louisiana's prescription laws.

[7] Because Merck had knowledge of the association between Vioxx and cardiovascular injuries well before it withdrew the drug from the market, *see* Plaintiffs' Counter-Statement of Fact at subsections A, B and C, Merck's denial of such association both before and after it withdrew the drug from the market was a continuing tort that tolled the limitations period beyond September 30, 2004.   *See Bunge Corporation v. Gatx Corporation*, 557 So.2d 1376, 1386 (La. 1990)("So long as the defendant with a duty to disclose possesses knowledge and yet fails to act, the tort is a continuing one which renews itself from day to day.   Prescription is such case will not begin to run until the time when plaintiff learns that he has been injured by the failure to disclose.").

Because Merck has asserted its naproxen theory and its 18-month defense both publically and in defense against Vioxx personal injury actions, *i.e. Barnett*, *Dedrick*, *Humeston*, *Irvin*, *Mason* and *Smith*, Merck should be judicially estopped from arguing that the cause of plaintiffs' injuries were discoverable before the withdrawal of Vioxx from the market. *See Insolia v. Phillip Morris Incorporated*, 216 F.3d 596, 598 (7th Cir. 2000)("For decades tobacco companies have assured the public that there is nothing to fear from cigarettes, yet they now slough off lawsuits like this one by professing that everybody knew all along that smoking was risky ... In

(continued...)

.

Affidavit of Timothy Watson in Opp. to Merck's Motion for Summary Judgment at ¶¶ 5 and 6 (prior to September 30, 2004, Mr. Watson did not know that Vioxx was associated with causing strokes and/or that other plaintiffs had brought claims against Merck), Exhibit "A" hereto; Affidavit of Donald Stinson in Opp. to Merck's Motion for Summary Judgment at ¶¶ 5 and 6 (prior to September 30, 2004, Mr. Stinson did not know that Vioxx was associated with causing heart attacks and/or that other plaintiffs had brought claims against Merck), Exhibit "B" hereto; Affidavit of Boyd Edmonds in Opp. to Merck's Motion for Summary Judgment at ¶¶ 5 and 7 (same), Exhibit "C" hereto; *see also* Plaintiffs' Counter-Statement of Facts at subsections A and C (discussing Merck's development of the naproxen-theory and 18-month defense after VIGOR and APPROVe). Merck's efforts to conceal the association between Vioxx and cardiovascular injuries continued until well after the drug was removed from the market. *Id*. Under Louisiana's liberal discovery rule it ordinarily becomes a question of fact for a jury, not a court on a motion for summary judgment, to decide whether or not Plaintiffs' claims were timely filed within a year of the discovery that the cause of their injury was due to Vioxx.[8] *See Harvey v. Amoco Production Company*, 696 So.2d 672, 679

---

[7](...continued)
taking this litigation stance, the cigarette makers either are suffering from amnesia or are acknowledging that their propaganda over the years has been ineffectual. Judicial estoppel, however, applies only to inconsistent position adopted in litigation ...."); *see also Whiteley v. Philip Morris Inc.*, 117 Cal.App.4th 635 (Cal.App. 1ˢᵗ Dict. 2004)(finding tobacco manufacturers were estopped from arguing that plaintiffs claims were discoverable at earlier date since the manufacturers had denied the relationship between smoking and health risks for decades). Indeed, because information conclusively refuting the 18-month defense only recently came to light, *see* Plaintiffs' Counter-Statement of Fact at subsection C, Merck should be estopped from arguing that plaintiffs' claims were discoverable before May 30, 2006, the date that Merck publically admitted its published APPROVe study was incorrect. *Id*.

[8] In arguing that the plaintiffs should have discovered that their injuries were attributable to Vioxx at an earlier date, Merck relies on *Touchet v. Baker Hughes Inc.*, 737 So.2d 821, 825
(continued...)

(La.App. 1ˢᵗ Cir. 1997)(affirming trial court and determining that jury instructions on *contra non valentem* doctrine were proper); *see also In re Med. Review Panel of Howard*, 573 So. 2d 472, 474

---

⁸(...continued)
(La.App. 3ʳᵈ Cir. 1999). In *Touchet*, the court determined that plaintiffs who had been exposed to a toxic spill were on notice of their injuries and the cause after stories regarding the spill had been reported on television and in the local newspaper. Although this litigation also involves exposure to a toxic substance, the similarities end there. In that toxic spill case, the negligence and the toxicity of the substance was obvious from the time of the spill. The identity of the tortfeasor was also obvious as well. Although this is not always the case in such litigation, such was the case in *Touchet*. Under those specific circumstances the plaintiffs who had been exposed to a toxic agent were charged with a duty to investigate upon learning that he or she had been or potentially had been exposed to such an agent. Even in cases like *Touchet*, it is unlikely that a court would charge a plaintiff with notice where the cause of their injury is not obviously linked to their ingestion of a prescription medicine.

In contrast, the role of Vioxx in causing serious adverse cardiovascular events did not become well known until after the drug was withdrawn from the market. Merck's conduct and credibility are at issue since Merck claims it did not know of the association between Vioxx and cardiovascular injury until after the APPROVe study. *See* Counter-Statement of Fact at subsection C. Given that Merck denied that there was evidence of an association between Vioxx and cardiovascular injuries until after the APPROVe study, and that Merck manufactured the 18-month defense based on its review of that study, *Id.*, how can plaintiffs be charged with knowledge that Vioxx caused their injuries and/or that Merck breached a duty owed to plaintiffs when reliance on Merck's explanations of the APPROVe data, as well as the VIGOR data, was entirely reasonable?

Indeed, a series of Louisiana medical malpractice cases support the conclusion that a plaintiff cannot be charged with knowledge of a claim where the plaintiff reasonably relies upon explanations set forth by the defendant. *See Stevenson v Touro*, 640 So.2d 633, 634 (La.App. 4ᵗʰ Cir. 1994)("Mere apprehension that something is wrong will not begin prescription ... a plaintiff cannot be charged with knowledge of ... [the defendant's] negligence when she continues to believe the ... [defendant's] explanation ... Even if a ... victim is aware that an undesirable condition developed after medical treatment, prescription does not run as long as it is reasonable for the victim not to recognize that the condition is related to the alleged ... [negligent act]."); *In re Medical Review Panel of Howard*, 573 So.2d 472, 474 (La. 1991)(same); *Cordova v. Hartford Accident & Indemnity*, 387 So.2d 574, 577 (La. 1980)(same); *Baum v. Cato*, 599 So.2d 909, 911 (La.App. 4ᵗʰ Cir. 1992)(same); *Malbrough v. Hamsa*, 463 So.2d 639, 642-643 (La.App. 5ᵗʰ Cir. 1984)(same). These cases clearly establish that a plaintiff must have actual or constructive knowledge of the causal relationship between the tortious acts or omissions and the damages thus sustained. *See Cordova*, 387 So.2d at 577; *Griffin v. Kinberger*, 507 So.2d 821, 823-24 (La. 1987); *Chaney v. State, DHHR*, 432 So.2d 256, 259-260 (La. 1983).

(La. 1991)(discovery rule will protect a plaintiff so long as his or her ignorance of an injury or its cause is "not willful, negligent or unreasonable.").

With the clamor that arose after Merck withdrew Vioxx from the market on September 30, 2004, Merck now contends that the 1-year prescription period ended no later than October 1, 2005. Because all of the plaintiffs' complaint were filed after that date (November 7, 2005 for Plaintiff Edmonds; November 8, 2005 for Plaintiff Stinson; and November 14, 2005 for Plaintiff Watson), Merck contends that each plaintiff's claim is time barred.   That is not the case.

### 1. Because Louisiana Follows *American Pipe* tolling Plaintiffs' Claims <u>are Timely under Louisiana Law</u>

Plaintiffs' claims are well within this 1-year period because the prescription period was suspended by the filing of a class action.  Under the equitable tolling principles established in the seminal case of *American Pipe* and its progeny, the filing of a class action tolls the running of the statute of limitations for all putative class members.  The Supreme Court recognized the right of prospective class members to intervene if class certification is denied notwithstanding that the applicable limitations periods may have run on their individual claims.

The policy driving the Supreme Court's opinion was its concern that the efficient administration of justice could be thwarted if the very purpose of the class action device was frustrated:

> [T]he commencement of the action satisfied the purpose of the limitations provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs.  To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties ....

12

*American Pipe*, 414 U.S. at 551.  The *American Pipe* doctrine was later expanded by *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983), where the Supreme Court held that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of class' ... not just as to intervenors."  In extending this doctrine in *Crown, Cork*, the Supreme Court stated that:

> A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own limitations.  The result would be a needless multiplicity of actions - - precisely the situation the Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid.

*Crown, Cork*, 462 U.S. at 350-51.  Accordingly, the federal courts recognize that the statute of limitations must be tolled during the pendency of a class action until a definitive denial of class certification to reconcile the statute of limitations with the applicable rules and policies regarding class action proceedings.

   Louisiana follows the *American Pipe* doctrine and even allows cross-jurisdictional tolling of the statute of limitations upon the filing of a class action complaint in any court of competent jurisdiction.  *See Taylor v. Liberty Mut. Ins. Co.*, 579 So.2d 443, 446 (La. 1991)("it has become well settled that prescription may be interrupted under article 3462 by the timely filing of a suit in a court of competent jurisdiction and venue, regardless of whether it is a federal, Louisiana or another state court."); *Smith v. Cutter Biological*, 770 So.2d 392, 408 (La.App. 4th Cir. 2000)(explaining that Louisiana follows *American Pipe* and allows for cross-jurisdictional tolling).

   Two of the first filed Vioxx class action complaints seeking national personal injury classes were filed in *Russell v. Merck & Co., Inc.*, Civ.No. 04-712 (M.D.La.) and *Williams v. Merck & Co., Inc.*, 04-CV-235 (E.D.Ky.), Exhibits "D" and "E" hereto.  *Russell* was filed on October 7, 2004 and *Williams* was filed on November 12, 2004.  Assuming that Merck's announcement of the withdrawal

13

of Vioxx from the market on September 30, 2004, triggered the running of each plaintiffs' prescription period, under the *American Pipe* tolling doctrine, the 1-year prescription period applicable to all of the plaintiffs would have counted down seven days under *Russell* and 43 days under *Williams* before being suspended. *See Taylor*, 579 So.2d at 446. The tolling effect of these class actions would have carried through until their definitive denial (which has yet to occur),[9] but for the fact that while the plaintiff's prescription period was being tolled they filed their individual complaints. As a result, their complaints are all timely since their claims were technically filed within the second week of the prescription period by virtue of *Russell*'s class tolling.

### 2.     The *Cain* Litigation is Irrelevant to this Court's Tolling Analysis

Although Merck acknowledges that Louisiana follows *American Pipe* and recognizes cross-jurisdictional tolling, Merck attempts to evade these doctrines by employing an unrelated Vioxx class action to evaluate tolling, *i.e.* the *Cain* litigation. Merck contends that this unrelated case is the measuring stick for *American Pipe* tolling, and that the tolling effect of this case ended years ago when the *Cain* complaint was amended, purportedly to dismiss a personal injury claim on September 18, 2002, years before any of the plaintiffs' injuries even became discoverable. This argument lacks

---

[9] Presumably, class action tolling is still in effect for each individual state as this Court left open the potential for each jurisdiction to maintain a class action in its Order and Reasons of November 22, 2006. *See In re Vioxx Products Liability Litigation,* MDL No. 1657, Order and Reasons at 5 n. 5 (E.D. La. Nov. 22, 2006)(Order denying nation-wide class personal injury class action); *see also* Second Amended Master Class Action Complaint in *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D.La. January 23, 2006)(wherein a class representative has been identified for the vast majority of states, effectively tolling the limitations periods for plaintiffs in those states); class action complaint filed in *Williams v. Merck & Co., Inc.*, 04-CV-235 (E.D.Ky)(wherein a class action has been filed in Kentucky, tolling the limitations period for Kentucky residents); class action complaint filed in *Turner v. Merck & Co, Inc.*, CV-2004-677 (Cir.Ct., Houston County)(wherein a class action has been filed in Alabama, tolling the limitations period for Alabama residents), Exhibit "F" hereto.

14

merit.

For *American Pipe* tolling to apply, there must be an identity of issues/claims between the purported class and the person claiming the benefits of tolling from the antecedent class proceeding. *See Crown, Cork & Seal Co.*, 462 U.S. at 355 (Powell, J., concurring)("[W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit, so that the defendant will not be prejudiced.")(internal quotation marks and citation omitted).[10] Although *Cain* was a class action, the litigation did not involve a personal injury class. *See* Plaintiffs' Response to Merck's SOF at ¶¶ 9-12.  The plaintiffs in that case sought only equitable relief in the form of the establishment of a medical monitoring fund, out of pocket expenses, and other injunctive relief. *Id*.  The initial complaint filed in the *Cain* litigation, *Lettieri v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.*, CV 01-3441 (E.D.N.Y., filed May 29, 2001), was actually filed on behalf of a discreet class comprised of users of <u>both</u> Vioxx <u>and</u> Celebrex. *Lettieri* Complaint ¶¶1 and 19.[11]  The Complaint in equity requested *inter alia* relief in the form of "emergency notice to all class members" and medical monitoring.  *See Lettieri* Complaint at ¶¶25 and 60, Exhibit 1 to Merck's Motion for Summary Judgment ("Merck's MSJ").

The initial *Lettieri* Complaint was later amended on August 1, 2001, to add new

_____

[10]  *See generally Hromyak v. Tyco Intern. Ltd.*, 2006 WL 3498602, (Fla.App. 4 Dist. 2006)("We agree that the *American Pipe* holding requires that the claims in the later action be the same as those alleged in the earlier action. If the earlier federal class action involved different claims with different classes, plaintiff would not necessarily have been a member of the earlier class. If he was not a member of the class, he could derive no benefit from its pendency. On the other hand if he had been a member, his interests would have been asserted in that litigation.").

[11]  Merck conveniently substitutes "and" with "or" to mask this distinction.  *See* Merck Brf. at 3; *see* Plaintiffs' Response to Merck's SOF ¶ 9-12.

representative plaintiffs and amend the class definition to clarify the disjunction between Vioxx and

Celebrex. *See* Amended Complaint in *Cain v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.*,

CV 01-3441 (E.D.N.Y.), Exhibit 2 to Merck's MSJ.  The Amended Complaint also sought the same

equitable relief. *Id.* at ¶¶16, 19.  Although couched as a complaint in equity the amended complaint

added to its prayer for relief an incongruous request for recovery of damages for wrongful death.

*Id.* at ¶68.[12]

This obvious error was corrected when the second amended complaint was later filed on

September 18, 2002, that withdrew the incorrect language.  *See* Second Amended Complaint, at

¶92, Exhibit 3 to Merck's MSJ.  Once again, the Second Amended Complaint sought primarily

equitable relief.  *See* Plaintiffs' Response to Merck's SOF at ¶¶ 9-12.  However, the Second

Amended Complaint rectified the allegations of its predecessor by removing those assertions relating

to damages for wrongful death. *See Cain* Second Amended Complaint ¶92.  This clarification was

expressly made: "Plaintiffs do not seek in this action damages rising from any physical injury caused

by taking Vioxx or Celebrex." *Id.*  These changes apparently were done with the court's permission

---

[12] This aberrational language is not relied upon by Merck to assert that the *Cain* complaint sought damages for personal injury claims because it was obvious to Merck and that court that the langauge was derived by the *Cain* plaintiffs' awkward attempt to articulate an equitable theory for recoupment of procurement expenses.  Specifically, the Amended Complaint states:

That plaintiffs and other class members be awarded damages incidental to their procurement, taking and/or switching to Vioxx and Celebrex from alternative pain relievers, including but not limited to damages for wrongful death, ehart attacks, strokes or any other cardiac illness they have already suffered as well as damages for the increased risk that they will suffer those illnesses in the future.

*Cain* Amended Complaint ¶68(c).

and without any requirement to provide to notice absent class members of this alteration.[13]  Despite the express disavowal of personal injury claims, Merck contends that *Cain* asserted such claims because the Amended Complaint advanced legal theories of failure to warn, strict liability and negligence.  Merck overlooks that the mere assertion of legal theories is of no moment since legal damages were never requested for them.  Merck's contention is not well founded.

Further distancing *Cain* from these proceedings is the fact that no motion for class certification was ever sought in that case, nor ruled upon prior to the case being transferred to this MDL.[14]  Accordingly, because *Cain* did not involve a personal injury class action, and because there

_____

[13] It is a fundamental concept in federal class action proceedings that the court overseeing the litigation has a fiduciary duty to absent class members.  *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 225 (5th Cir. 1981)(court overseeing class action proceeding acts as fiduciary to absent class members).  Thus, implicit in the fact that the *Cain* court permitted the filing of the second amended complaint is that the court also determined that the filing of such complaint would not be prejudicial to absent class members.  Otherwise, the court would have been required to order notice to persons like the instant plaintiffs who had personal injury claims.  *See Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1409 (9th Cir. 1989)(finding precertification notice to absent class members of dismissal of class action is required where absent class members would be prejudiced in the absence of such notice); *Caston v. Mr. T's Apparel, Inc.*, 157 F.R.D. 31, 34 (S.D.Miss.1994)(notice to absent class members is required whenever plaintiff seeks voluntary dismissal of suit pursuant to settlement of their individual claims, even when dismissal is sought prior to certification), *following Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978); *Philadelphia Electric Company v. Anaconda American Brass Company*, 42 F.R.D. 324, 326 (E.D.Pa. 1967)(prior to entry of order regarding class certification, action must be assumed to be class action for purposes of class action rule requiring notice to all members of class of proposed dismissal or compromise).

[14] Merck's reliance upon *Hunter v. American General Life and Accident Insurance Company*, 384 F.Supp.2d 888 (D.S.C. 2005), for the proposition that a voluntary dismissal of a claim amounts to a denial of class certification is mistaken.  Apart from the settlement context which generated its holding, the court in *Hunter* found that only a definitive denial of class certification operates to sever any tolling principles afforded by an antecedent class action. Indeed, the court found exceptions even to that rule in instances "where the later class action would not constitute relitigation of an earlier denial of class certification based on deficiencies in the class itself."  *Id.* at 892, *citing, Yang v. Odom*, 392 F.2d 97 (3d Cir. 2004); *Catholic Social*

(continued...)

was hardly anything remotely approaching a definitive denial of a personal injury class claim in that case, Merck's reference to *Cain* is immaterial for purposes of *American Pipe* tolling.

### 3.     *American Pipe* Tolling is Available in Personal Injury Cases

In a further effort to deny the plaintiffs the benefit of the class action tolling doctrine, Merck challenges the wisdom of applying the Supreme Court's decision in *American Pipe* to a class action involving personal injuries. *See* Merck's Memo of Law at 14-15. It is Merck's contention that Louisiana would not recognize class action tolling in such cases. This argument, which is again repeated in Merck's discussion of Alabama, Kentucky and Tennessee law, is unsupported by any controlling authority.

The premise for Merck's argument is that personal injury class actions are "uncertifiable." Merck provides no case that directly supports its position and instead offers off-point cases such as *In re American Med. Sys. Inc*, 75 F.3d 1069 (6ᵗʰ Cir. 1996)("personal injury class actions are <u>usually</u> not certifiable"). Merck's argument has not been universally adopted and is not the law in this circuit or elsewhere. *See Mullen v. Treasure Chest Casino*, 186 F.3d 620, 626 (5th Cir.1999)(affirming certification of personal injury class), *cert.denied*, 528 U.S. 1159 (2000). *See also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996)(Ninth Circuit does not recognize an absolute bar to certification of a multistate plaintiff class action in medical products

---

[14](...continued)
*Services, Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139 (9ᵗʰ Cir. 2002). *Hunter* merely determined "[w]hether a second class action should be allowed to rely on the *American Pipe* tolling rule when the earlier class definition was voluntarily abandoned in favor of a narrower definition in the context of settlement negotiations," by holding that settlement revisions of class definitions are the equivalent of denials of class motions if a broader class had been requested. *Hunter*, 384 F.Supp.2d at 892. That fact scenario was not present in *Cain* and is not present in this litigation either.

liability context).[15]  Since the premise for Merck's argument is faulty, there is no basis for its

conclusion.  Until *American Pipe* is reversed, it must be observed and respected.[16]

Although there is scant authority addressing the applicability of *American Pipe* in personal

injury cases, at least one federal court sitting in the Eastern District of Louisiana has determined that

Louisiana would apply *American Pipe* in a personal injury case.  *See In re Factor VIII or IX*

*Concentrate Blood Products Litigation*, 2000 WL 282787 (E.D.La. 2000) (applying Louisiana state

law and finding *American Pipe* doctrine applicable in a mass tort personal injury case).  Since there

is no law to the contrary in any of the other jurisdictions at issue, there is no basis for concluding

that such jurisdictions would reject *American Pipe* tolling in personal injury cases.

### C.   Plaintiffs' Timely Asserted Claims for Relief Under Alabama, Kentucky and Tennessee Law

Assuming that this Court finds that Louisiana law is not applicable to the Plaintiffs' claims,

---

[15] Additionally, despite several opportunities to address this very issue, the Supreme Court has declined any invitation to deem all mass tort cases uncertifiable.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)(in finding the certification of a mandatory settlement class of personal injury claimants to be improper in a limited fund case, *i.e.* because there was no showing that the fund was actually limited, the Supreme Court expressed no opinion as to the propriety of certifying a class of personal injury claimants); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)(leaving open the prospect that certification of settlement-only class in a mass tort case would be proper if there were commonality of issues of fact and law and adequacy of class representation).

[16] Merck relies upon *Redman Home Inc. v. Surtees*, 933 So.2d 1100 (Ala.Civ.App. 2005), in support of its argument that Mr. Edmonds' reliance on the prospect of class certification was unreasonable.  However, *Redman* does not stand for the proposition that reliance on the prospect of class certification is unreasonable.  *Redman* merely determined that the filing of a class action complaint by an earlier class did not preserve the right of a subsequent class to pursue an administrative remedy.  This is because neither class had succeeded in requesting an administrative remedy before the time for doing so had expired.  Under these circumstances, the court declined to apply *American Pipe* tolling for purposes of deeming the subsequent class's request for an administrative remedy to be timely.

alternative arguments exist to support the timeliness of each Plaintiff's claims under their respective state's statutes of limitations.

###    1.    Plaintiff Edmond's Claims are Timely under Alabama Law

Mr. Edmonds first began taking Vioxx in September 1999. *See* Edmonds Affidavit at ¶ 3. While taking Vioxx Mr. Edmonds suffered two heart attacks, which occurred on March 27, 2001 and September 2, 2001. *Id.* at ¶ 4. Upon learning these heart attacks were caused by Vioxx, the Edmonds filed a complaint in this Court on November 7, 2005, asserting claims under strict liability,[17] breach of warranty, and fraud/misrepresentation theories. *See* Edmonds Complaint at ¶¶ 13-25, Exhibit 4 to Merck's MSJ.

Alabama does not recognize the discovery rule for personal injury claims asserted under negligence principles. *See Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983)(cause of action arises at date of injury, not upon discovery of negligent act that caused injury); *Ramey v. Guyton*, 394 So.2d 2 (Ala. 1980)(same). It does provide a two-year limitations period in personal injury cases.[18] To be timely, Mr. Edmonds would have been required to bring suit on such theories by March 27, 2003 or September 2, 2003, unless by some operation of law the time is extended. As discussed momentarily, such relief is available to extend the time for filing. Unmentioned by Merck

---

[17] Under Alabama law, strict liability claims arise under the judicially created Alabama Extended Manufacturer's Liability Doctrine. Though similar in some respects to strict liability as set forth in section 402A of the Restatement (Second) of Torts, the Alabama Extended Manufacturer's Liability Doctrine retains the fault concept as well as the power of the defendant to assert the affirmative defenses of assumption of risk and contributory negligence. *Casrell v. Altec Indust., Inc*, 335 So.2d 128 (Ala. 1976); *Atkins v. American Motors Corp.*, 335 So.2d 134 (1976).

[18] *See Ridling v. Armstrong World*, 627 F.Supp. 1057 (S.D. Ala. 2005)(noting that one-year limitations period of Ala.Code 1975 § 6-5-502 was voided by *Lankford v. Sullivan, Long & Hagerty*, 416 So.2d 996 (Ala. 1982), and applying a two-year statute of limitations).

is any reference to the Edmonds' breach of warranty and fraud/misrepresentation claims. Both claims were timely filed.

Alabama applies a two-year statute of limitations for actions under a fraud theory. *See* Ala.Code 1975 § 6-2-3 (two-year limitations period in fraud cases). In contrast to the strict liability claim, in fraud actions Alabama recognizes tolling of the limitations period until the plaintiff has discovered the basis of the fraud. *See* Ala.Code 1975 § 6-2-3. As discussed above, given Merck's ongoing concealment of the dangers of Vioxx, the earliest that plaintiffs could have discovered Merck's fraud is upon the withdrawal of Vioxx from the market on September 30, 2004. *See* Plaintiffs' Counter-Statement of Facts at subsections A and C (discussing naproxen-theory and 18-month defense); *see also* Edmonds Affidavit at ¶¶ 5 and 7 (at the time Vioxx was withdrawn from the market on September 30, 2004, Mr. Edmonds did not know he had a claim against Merck). Given the 2-year statute of limitations, any filing before October 1, 2006 would be timely. Mr. Edmonds' fraud claim was timely filed on November 7, 2005.[19]

As to Mr. Edmonds implied warranty claim, Alabama applies a four-year statute of limitations for product liability cases proceeding under such a theory. *See* Ala..Code 1975 § 7-2-725 (four-year statute of limitations in breach of warranty cases). *See also Spain v. Brown & Williamson Tobacco Corporation*, 872 So.2d 101, 111 (Ala. 2003)(permitting warranty claims for products

---

[19] Further, Alabama case law suggests that Mr. Edmonds' claim under the Alabama Extended Manufacturer's Liability Doctrine is also timely pursuant to Ala.Code 1975 § 6-2-3. This provision applies to toll the running of the limitations period where a defendant has fraudulently concealed a plaintiff's right to assert <u>any</u> viable cause of action against the defendant. *See Rutledge v. Freeman*, 914 So.2d 364, 369 (Ala.Civ.App. 2004)("Although the wording of § 6-2-3 indicates that it applies only to fraud actions, that section and its predecessor have long been held to apply to any cause of action that has been fraudulently concealed from a plaintiff."); *Tonsmeire v. Tonsmeire*, 233 So.2d 465, 467 (Ala. 1970)(same).

intended for human consumption); *Locke v. Ansell Inc.*, 899 So.2d 250, 251 (Ala. 2004)(extending warranty theory to products liability claim).  Judged from Mr. Edmonds' first heart attack, March 27, 2005 represents the last day of the four year period.  Although Mr. Edmonds' complaint was filed approximately seven months after this date, his implied warranty claim is timely thanks to the *American Pipe* doctrine.[20]

Although Mr. Edmonds' implied warranty claim may appear untimely since it was filed more than four years after the date of his injury, his right to pursue this claim was preserved by the filing of a class action complaint in Alabama state court on October 4, 2004.  *See* class action complaint in *Turner v. Merck & Co, Inc.*, CV-2004-677 (Cir.Ct., Houston County).  That complaint tolled the 4-year statute of limitations from running on Mr. Edmonds' right to pursue a breach of warranty theory as of October 4, 2004, suspending the limitations period after only approximately 3 ½ years into the limitations period.  Thus, all of Mr. Edmonds' claims are timely.

### 2.    Plaintiffs' Claims are Timely under Kentucky Law

Mr. Watson began using Vioxx in July 2001.  *See* Watson Affidavit at ¶ 3.  Mr. Watson suffered a stroke on August 23, 2002, approximately tfourteen months after he began using Vioxx. *Id.* at ¶ 4.  Vioxx was withdrawn from the market on September 30, 2004.  Upon discovering that Vioxx was the cause of his stroke, Mr. Watson filed a Complaint in this Court on November 14,

---

[20] Not only does Alabama allow *American* Pipe tolling, but it also permits stacking of multiple class action complaints.  *See Burdeshaw v. White*, 585 So.2d 842, 846-847(Ala. 1991)(recognize multiple periods of tolling and finding a class action complaint timely where several class actions involving similarly situated classes of plaintiffs had been filed.  The court recognized successive tolling periods up until the denial of class certification in each of the prior class action proceedings).  Although the stacking of multiple class actions is permissible under Alabama law, it is not necessary in this case since the Edmonds need only rely on the *Turner* complaint.

2005, approximately fourteen months later.  *See* Watson Complaint, Exhibit 8 to Merck's MSJ.  In

his complaint, Mr. Watson asserts claims for negligence, design defect, marketing defect, breach of

express warranty, and misrepresentation and fraud.  *Id*. at ¶¶ 31-59.

Although Kentucky applies a one-year statute of limitations in all personal injury cases

regardless of the theory being asserted, *see* Ky. Rev. Stat. Ann. § 413.140(1)(a), Mr. Watson's

claims are timely based upon application of the *American Pipe* tolling doctrine.

In Kentucky the discovery rule delays accrual of a claim until the plaintiff has discovered

the injury and its cause, including the identity of the tortfeasor.  *See Perkins v. Ne. Log Homes*, 808

S.W.2d 809, 819 (1991)("a cause of action will not accrue ... until the plaintiff discovers or in the

exercise of reasonable diligence should have discovered not only that he has been injured but also

that his injury may have been caused by the defendant's conduct")(citations omitted) (quotations

omitted).  For the reasons discussed above, Mr. Watson would not be charged with discovery until

the withdrawal of Vioxx from the market on September 30, 2004, at the very earliest.  *See* Counter-

Statement of Facts at subsection A and C (discussing naproxen-theory and 18-month defense); *see*

*also* Watson Affidavit at ¶¶ 5 and 6 (at the time Vioxx was withdrawn from the market on

September 30, 2004, Mr. Watson did not know he had a claim against Merck).  When Mr. Watson

suffered his stroke on August 23, 2002, there was little or no evidence suggesting that Vioxx played

a role in causing the stroke.[21]  *Id*.

---

[21] Because Mr. Watson was a short-term user of Vioxx when he suffered his stroke, *i.e.*
he used Vioxx for less than eighteen months when he suffered this injury, evidence that his claim
for his stroke was attributable to Vioxx did not become available until well after the drug was
removed from the market.  *See* Counter-Statement of Facts at subsection C (discussing Merck's
acknowledgment that it committed a critical error when publishing APPROVe in such a way that
it established an 18-month defense).  Simply stated, Mr. Watson's claims would not accrue under
(continued...)

23

He would therefore ordinarily have until October 1, 2005 to timely file a complaint. *American Pipe* tolling permits his complaint to be considered timely. As discussed above, contrary to Merck's assertion, a personal injury class was filed in Kentucky on November 12, 2004. *See* class action complaint filed in *Williams v. Merck & Co., Inc.*, 04-CV-235 (E.D.Ky). As Kentucky surely recognizes *American Pipe* tolling, the class action complaint filed in *Williams* tolled the statute of limitations to permit Mr. Watson's claims.[22]

Where a state rule of civil procedure is similar to a federal rule of civil procedure that Kentucky courts have not yet addressed as to a particular issue, Kentucky courts often look to federal case law for guidance. *See Sexton v. Bates*, 41 S.W.3d 452, 456 (Ky.App. 2001)(where federal and state rule of civil procedure are "similar" and the federal rule "has been construed in a long line of cases, including the very issue raised herein ... [and] Kentucky reported law is silent on a particular question pertaining to the Rules, Kentucky courts routinely accept guidance from federal authorities that have spoken on the same question."); *Aurora Loan Services v. Ramey*, 144 S.W.3d

---

[21](...continued)
Kentucky law since he would not be charged with knowing that Vioxx caused his injuries in light of the slew of publications, which were sponsored by Merck, suggesting that Vioxx did not cause heart attacks or strokes until a patient had been using the drug for at least 18-months. *Id.*; *see also* discussion of Mr. Stinson's claim, *infra*.

[22] Plaintiffs anticipate that Merck will argue that Kentucky would not recognize a version of the *American Pipe* tolling doctrine that respects class action complaints filed in federal courts since Mr. Watson is attempting to rely upon a class action complaint that was filed in a Kentucky federal court for tolling purposes, *i.e.* no cross-jurisdictional tolling. *See* class action complaint filed in *Williams v. Merck & Co., Inc.*, 04-CV-235 (E.D.Ky). This argument is specious, however, since both Mr. Watson and Mr. Williams filed their complaints in federal courts, which obviates any cross-jurisdictional issues. Simply stated, because Mr. Watson is not attempting to pursue his claim in a Kentucky state court but rather in a federal court there are no cross-jurisdictional tolling issues. This Court need only determine whether or not Kentucky would recognize the *American Pipe* tolling doctrine.

24

295, 298 (Ky.App. 2004)(same).  In fact, at least one Kentucky state court has turned to federal precedent for purposes of interpreting Kentucky's version of Rule 23.  *See Doe v. Roman Catholic Diocese of Covington*, 2006 WL 250694, * 1 (Ky.Cir.Ct. 2006) ("Because Civil Rule 23 is virtually identical to, and modeled on, Federal Rule of Civil Procedure 23, the Court may look to federal precedents for guidance.").

Because there are no Kentucky cases determining whether or not the state acknowledges *American Pipe* tolling, Kentucky is likely to follow federal precedent on the issue.  It is perhaps an understatement to suggest that Kentucky will accord considerable weight to the long line of Supreme Court cases establishing the *American Pipe* doctrine.  These cases are well considered and virtually every court to address the issue has adopted *American Pipe* tolling.  Indeed, the Sixth Circuit has foreshadowed that Kentucky is likely to permit *American Pipe* tolling.  In a case where the Sixth Circuit was required to turn to Kentucky law in applying a borrowing statute for purposes of an action under 42 U.S.C. § 1983, the court applied *American Pipe* tolling.  *See Highland Park Ass'n of Business and Enterprises v. Abramson*, 91 F.3d 143, * 5 (6th Cir. 1996)(applying *American Pipe* doctrine where the court acknowledged that it "must apply Kentucky's tolling rules to the present case.").

Additionally, a review of the Kentucky rules of civil procedure demonstrates that the commencement of a class action in Kentucky state court would toll the statute of limitations for class members.  Ky.R.Civ.P. 23.03 requires for purposes of class actions pending under Rule 23.02(c), common issues of law and fact, that a court direct notice that "shall advise each member that (a) the court will exclude him from the class if he so requests by a specified date; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) any member who

does not request exclusion may, if he desires, enter an appearance through his counsel." This rule makes it clear that absent class members are considered members of the class and are bound by any determination if they do not request exclusion from the class. Given such a rule, it is difficult to imagine Kentucky rejecting the *American Pipe* doctrine. If Kentucky were to reject the *American Pipe* doctrine it would force those who wished to preserve their claims to enter an appearance and/or file a complaint in countless proceedings in which class litigation is already under way.

Because Kentucky follows the discovery rule and is likely to permit *American Pipe* tolling, Mr. Watson's claims are timely under Kentucky law.

### 3.    Plaintiffs' Claims are Timely under Tennessee Law

Mr. Stinson began using Vioxx on April 14, 2000. *See* Stinson Affidavit at ¶ 3. He suffered a heart attack on October 14, 2000, approximately six months after he began using Vioxx. *Id*. at ¶ 4. Mr. Stinson filed a complaint in this Court on November 8, 2005. In his complaint, Mr. Stinson asserts claims of strict liability, negligence, breach of express warranty, breach of implied warranty and fraud. *See* Stinson Complaint at ¶¶ 10-33, Exhibit 6 to Merck's MSJ.

Tennessee generally applies a one-year statute of limitations in personal injury cases under strict liability and negligence theories. *See* Tenn.Code Ann. § 28-3-104. Mr. Stinson's breach of implied warranty claim, however, is governed by a four-year statute of limitations that did not accrue until at least September 30, 2004 because Tennessee follows the discovery rule. Thus, Mr. Stinson's implied warranty claim is timely. Mr. Stinson's remaining claims are also timely because Tennessee recognizes equitable tolling where a defendant has fraudulently concealed the existence of a claim.[23]

---

[23] The fact that Tennessee does not recognize cross-jurisdictional tolling is irrelevant since he timely filed his warranty claims, and his remaining claims were preserved under the

(continued...)

As noted above, Mr. Stinson has asserted claims under an implied warranty theory, which is governed by a four-year limitations period. *See Owens v. Truckstops of America*, 915 S.W.2d 420, 427 (Tenn. 1996)(personal injury plaintiff's claim for breach of implied warranty of merchantability is governed by four-year statute of limitations); *Commercial Truck & Trailer Sales, Inc. v. McCambell*, 580 S.W.2d 765, 773 (Tenn. 1979)("It is well settled in this jurisdiction that in actions for personal injury or property damage resulting from breach of warranty, the four-year statute provided in T.C.A. § 47-2-725 controls."); *Bates v. Shapard*, 461 S.W.2d 946 (Tenn. 1970)(same); *Kenton v. Untied Technology and its Subsidiaries*, 1990 WL 32121 (Tenn.Ct.App. 1990)(same); 1 Tenn.Prac.UCC Forms § 2-725 (2d ed. 2006)(same).

Since Tennessee follows the discovery rule, for the reasons discussed above, Mr. Stinson's implied warranty claims are timely because they did not become discoverable until September 30, 2004, at the very earliest, and his complaint was timely filed approximately 13 months later on November 8, 2005.[24] *See Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)(applying the discovery rule because "no judicial remedy was available to this plaintiff until he discovered, or reasonably should have discovered, (1) the occasion, manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty"); *see also* Counter-Statement of Facts at subsection A and C (discussing naproxen-theory and Merck's 18-month defense). In cases involving the discovery rule, Tennessee case law clearly recognizes

---

[23](...continued)
fraudulent concealment doctrine.

[24] *See* Counter-Statement of Facts at subsections A and C (discussing naproxen-theory and 18-month defense); *see also* Stinson Affidavit at ¶¶ 5 and 6 (at the time Vioxx was withdrawn from the market on September 30, 2004, Mr. Stinson did not know he had a claim against Merck).

27

that the jury is to determine whether a plaintiff's claims are timely with respect to the applicable limitations period.  *See Collins v. Edwards*, 2004 WL 1056137, * 3 (Tenn.Ct.App. 2004). Accordingly, Mr. Stinson's implied warranty claims are timely as they were filed within four years of his discovering the cause of his injury and/or the identity of Merck as the tortfeasor.

Mr. Stinson's remaining claims against Merck are also timely because they tolled by virtue of Merck's fraudulent concealment.  Tennessee recognizes tolling of the statute of limitations where a defendant has fraudulently concealed a plaintiffs right to pursue a claim against the defendant.  *See Ray v. Scheibert*, 450 S.W.2d 578, 580-81(Tenn. 1969)("in order for the statute of limitations to be tolled by a fraudulent concealment there must be an allegation that the cause of action was known to the defendant and fraudulently concealed by him ...").[25]  In a more recent case, the Tennessee Court of Appeals summarized the elements of this tolling doctrine as follows:

> Plaintiff seeking to take advantage of fraudulent concealment tolling must establish (1) that the defendant affirmatively concealed the cause of action or remained silent and failed to disclose material facts despite a duty to do so, (2) that the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence, (3) that the defendant had knowledge of the facts giving rise to the cause of action, and (4) that the defendant concealed material facts from the plaintiff by withholding information or making use of some device to mislead the plaintiff or by failing to disclose information when he or she had a duty to do so.

*See Bell v. Goforth*, 2006 WL 627189, * 7 (Tenn.Ct.App. 2006), *citing Shadrick v. Coker*, 963 S.W.2d 726, 735-36 (Tenn. 1998) and *Sibley v. McCord*, 173 S.W.3d 416, 420 (Tenn.Ct.App. 2004); *see also First National Bank of Louisville v. Brooks Farms*, 1990 WL 6386 * 8 (Tenn.Ct.App. 1990)(jury is to determine whether defendant took actions designed to prevent plaintiff from

---

[25] Mr. Stinson made such an allegation is his complaint.  *See* Stinson Complaint at ¶ 8.

discovering their cause of action for purposes of fraudulent concealment doctrine), *affirmed in part, reversed in part on other grounds*, 821 S.W.2d 925 (Tenn. 1991).

Because Mr. Stinson was a short term user of Vioxx, his remaining claims are timely since Merck fraudulently concealed the role of Vioxx in causing his injuries. *See* Counter-Statement of Facts at subsection C (discussing Merck's assertion of the 18-month defense and its recent acknowledgment that it erred when publishing data supporting the defense); *see also* Stinson Affidavit at ¶¶ 5 and 6 (at the time Vioxx was withdrawn from the market on September 30, 2004, Mr. Stinson did not know he had a claim against Merck).   Following the withdrawal of Vioxx from the market, Merck aggressively asserted that Vioxx was not associated with heart attack or stroke before 18 months of usage.  *See* Counter-Statement of Facts at subsection C.  Merck successfully sold this defense to the media, the scientific community and others.  This defense was not seriously questioned until Merck released new data to the FDA, including an analysis from a 12-month extension of the APPROVe trial on May 11, 2006, and publically admitted that the 2005 published APPROVe data was incorrect because it used an incorrect statistical method to arrive at the 18-month defense on May 30, 2006.[26]  *Id.*

While Merck may suggest that it did not intentionally mislead the scientific community or the public, its credibility on this issue becomes a material question of fact that must be assessed by

---

[26] This admission by Merck resulted in a barrage of criticism that called Merck's 18-month defense into question.  *See* Plaintiffs' Counter-Statement of Facts at subsections C (discussing criticism of Merck's 18-month defense that was developed following the APPROVe study).  For instance, on June 26, 2006, the New England Journal of Medicine issued a rare formal "Correction" of a March, 2005 article publishing the original APPROVe data.  *See* Journal's correction, Exhibit 23 to the Plaintiffs' Counter-Statement of Fact.  Other sources in the medical community and the news media were also critical of Merck for asserting that Vioxx was not associated with strokes and heart attacks until a patient had been using the drug for 18-months.  *See* Plaintiffs' Counter-Statement of Facts at subsections C.

a jury.  Additionally, in light of the above misinformation that conveyed to the public at the behest

of Merck, Merck cannot establish that Mr. Stinson's claims were discoverable before May 11, 2006.

Mr. Stinson filed his complaint well before this date.

For the reasons set forth above, Mr. Stinson has timely asserted his claims against Merck

under Tennessee law.

**III.**   **CONCLUSION**

For the reasons set forth above, Merck's motion for summary judgment should be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date:  January 4, 2007

By:_____
    **Russ M. Herman (Bar No. 6819)**
    Leonard A. Davis (Bar No. 14190)
    Stephen J. Herman (Bar No. 23129)
    *Herman, Herman, Katz & Cotlar, L.L.P.*
    Place St. Charles
    201 St. Charles Avenue, Suite 4310
    New Orleans, Louisiana 70170
    Telephone: (504) 581-4892
    Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

**AND**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire **(on brief)**
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

**Counsel for Plaintiff Stinson**

**AND**

Jason A. Gibson
Russell W. Endsley
Smith & Gibson, P.C.
3850 Two Houston Center
909 Fannin at McKinney, Suite 3850
Houston, TX 77010
(713) 659-2727 (telephone)
(713) 659-2813 (telecopier)

**Counsel for Plaintiff Watson**

**AND**

Shari Wright
Reich & Binstock
4265 San Felipe, Suite 1000
Houston, TX 77027
(713) 622-7271 (telephone)
(334) 623-8724 (telecopier)

**Counsel for Plaintiffs Edmonds**

32

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 4th day of January, 2007.

Leonard A. Davis (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, LLP*
201 St. Charles Ave., Suite 4310
New Orleans, LA  70170
PH:     (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com