# EXHIBIT D

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2004 OCT -7 A 10: 50

_____ BY DEPUTY CLERK

MICHAEL WAYNE RUSSELL, individually and on behalf of all others similarly situated,

    *Plaintiff/Class Representative,*

vs.

MERCK & CO, INC., a New Jersey Corporation

    *Defendant.*

Civil No. 04-712 A-M1

Jury Trial Demanded

Class Action Complaint

## CLASS ACTION COMPLAINT

NOW INTO COURT comes Plaintiff MICHAEL WAYNE RUSSELL, individually and on behalf of all others similarly situated, and hereby alleges as follows based upon public documents and information and belief against Merck & Co., Inc. (hereinafter "Defendant").

### PARTIES

1. Plaintiff MICHAEL WAYNE RUSSELL is a resident citizen of Louisiana, Parish of East Baton Rouge. Plaintiff was prescribed and purchased the drug Vioxx for treatment of nerve pain. Plaintiff brings this action to recover damages for personal injuries sustained after taking Vioxx.

2. Defendant Merck & Company, Incorporated is a New Jersey corporation with its principal place of business in New Jersey. Merck describes itself as a global research-driven pharmaceutical products company.

| INITIALS | DOCKET# |
|---|---|
|  |  |

BW- summon

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Eastern District of Louisiana.

## FACTUAL ALLEGATIONS

6. Plaintiff brings this action to recover damages for personal injury, restitution, refund and/or for equitable, injunctive relief against Merck, who tested, marketed, distributed, promoted, sold, prescribed and filled Vioxx, which the Plaintiff took after it was prescribed to him, and, as a result thereof, suffered damages.

7. This case involves the Plaintiff's use of a drug called Vioxx (rofecoxib). It was designed to treat osteoarthritis, rheumatoid arthritis, acute pain, and migraines.

8. It was designed, formulated, patented, marketed, sold, and ultimately distributed by the Defendant as Vioxx.

9. Osteoarthritis, or degenerative joint disease, is characterized by the breakdown of the joint's cartilage (which cushions the ends of bones). Cartilage breakdown causes bones to rub against each other, leading to pain and loss of movement.

10. Rheumatoid arthritis is a chronic syndrome characterized by inflammation in the lining of the joints, causing pain, stiffness, warmth, redness and swelling, leading to pain and loss of movement.

11. Vioxx is in a class of drugs called non-steroidal anti-inflammatory drugs ("NSAIDs"). It works by reducing substances that cause inflammation, pain and fever.

12. Prostaglandins are chemicals that are important in promoting inflammation and its symptoms (pain, fever, swelling and tenderness). Vioxx blocks the enzyme that makes prostaglandins thereby reducing the amounts of prostaglandins, and reducing inflammation and its symptoms.

13. The United States Food and Drug Administration ("FDA") first approved Vioxx in 1999 for the reduction of pain and inflammation caused by osteoarthritis, acute pain and menstrual pain. It was subsequently approved to treat rheumatoid arthritis in adults and children.

14. In June 2000, Merck submitted a safety study to the FDA entitled "Vioxx Gastrointestinal Outcomes Research" that found an increased risk of serious cardiovascular events, including heart attacks and strokes in patients taking Vioxx.

15. In February, 2001, the FDA consulted its Arthritis Advisory Committee regarding the clinical interpretation of this new safety information.

16. In April, 2001, the FDA implemented labeling changes which included information about the increase in risk of cardiovascular events, including heart attacks and stroke.

17. Other studies recently suggested an increased risk of cardiovascular events, and the FDA was in the process of reviewing these studies to determine if further labeling changes were needed.

18. On September 30, 2004, Merck voluntarily withdrew Vioxx from the market after the data safety monitoring board overseeing a long-term study of the drug recommended that the study be halted because of an increased risk of serious cardiac events, including heart attack and strokes. The risk was approximately twice that of individuals taking a placebo.

19. Annual sales of Vioxx total approximately $2.5 billion.

20. Defendant had an obligation not to violate the law in the manufacture, design, and sale of Vioxx.

21. Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq.

22. Defendant failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendant negligent per se.

## COUNT I
### Breach of Express Warranty

23. Plaintiff restates and realleges all paragraphs above and in addition, states matters as set forth below.

24. Defendant expressly warranted to the market, including the Plaintiff, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials to the health care community, that Vioxx was safe, effective, fit and proper for its intended use.

25. In using Vioxx, the Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of the Defendant. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended.

- 4 -

26. As a direct and proximate result of Defendant's breaches of warranties, Plaintiff was injured and suffered special and compensatory damages to be proven at trial.

## COUNT II
### Violation Of Warranty Of Redhibition

27. Defendant was aware of the substantial risks from taking Vioxx but failed to disclose such to Plaintiff.

28. Also, because Defendant was the manufacturer of Vioxx, Defendant is deemed to be aware of Vioxx's redhibitory defects pursuant to LSA-C.C. art. 2545.

30. Had plaintiff been aware of the defects contained in Vioxx, Plaintff would not have purchased this medication and would have instead opted for a less harmful alternative. This characteristic rendered it unfit for its intended purposes.

31. Defendant is thus liable to each of the proposed class members under the theory of redhibition.

32. Thus, each class member is entitled to a return of any purchase price paid, including but not limited to insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiff may be entitled.

## COUNT III
### Breach Of The Implied Warranty

33. Plaintiff incorporates the allegations contained in the preceding paragraphs.

34. Defendant has breached the implied warranty of merchantability in that Vioxx was not reasonably fit for the purposes for which it was sold, intended, or reasonably foreseen, to be used. Moreover, the Vioxx manufactured and sold by Defendant was defective on the date of its delivery to Plaintiff and the Class.

- 5 -

35. Defendant has also breached the implied warranty of fitness for a particular purpose. Vioxx is not reasonably fit for the specific purposes for which Defendant knowingly sold it and for which the Plaintiff and Class bought Vioxx in reliance on Defendant.

36. Plaintiff and the Class have suffered damages as a result of Defendant's breach of warranty.

## COUNT IV
### Unjust Enrichment

37. Plaintiff incorporates the allegations contained in the preceding paragraphs.

38. Defendant has knowingly received, and continues to receive, a substantial benefit at the expense of Plaintiff and Class members.

39. It would be unjust and unconscionable to permit Defendant to enrich itself at the expense of Plaintiff and Class members and to retain the funds that Defendant wrongfully obtained from Plaintiff and Class members.

## COUNT V
### Negligence

40. Plaintiff incorporates the allegations contained in the preceding paragraphs.

41. Defendant has a duty to exercise the necessary degree of care expected and required of manufacturers of health care products. Defendant deviated from that duty by failing to warn of the risks of the use of Vioxx.

42. As a result of Defendant's negligence, Plaintiff and the Class have been injured. These damages are the actual and proximate result of Defendant's breach of this duty of care.

## CLASS ACTION

43. This action is appropriate for determination through the Class Action Procedure for the following reasons:

A.  The large number of potential claimants present a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;

B.  The common issues of law and fact pertaining to the determination of fault and the liability for compensatory and exemplary damages predominate over the individual issue of quantum, and such issues are typical of similar claims;

C.  The determination of fault and the basis for assessment of compensatory and exemplary damage may be made in the class action without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary;

D.  Petitioners herein have sustained damages of the nature described hereinabove and are suitable representatives of the class;

E.  The Plaintiffs herein are represented by skilled attorneys who are experienced in handling mass torts and class actions, and who can be expected to handle this matter in an expeditious and economical matter to the best interests of the class membership;

F.  The class action procedure is the superior vehicle for the efficient disposition of the issues and claims herein presented.

**WHEREFORE**, Plaintiffs pray:

1. that defendant be required to answer this class action complaint after all legal delays have run, all in accordance with law;

2. that after due proceedings had, that this action be certified as a class action, as alleged above, for the purposes of determining the common issue of liability for appropriate damages;

3. that upon certification of the class action, the Court call for the formulation of a suitable management plan;

4. that after due proceedings had, and a trial by jury, there be judgment herein in favor of Plaintiff and the members of the class and against defendant, for all damages which are reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings;

5. that the rights of the Plaintiff and the members of the class to establish their entitlement to compensatory damages, and the amounts thereof, be reserved for determination in their individual actions when appropriate;

6. that Plaintiffs recover their costs for the prosecution of this class action;

7. that a medical monitoring class be certified, and the court award appropriate damages sufficient to establish a medical monitoring program as deemed effective by Plaintiffs' medical experts; and

8.  that the Court render judgment in favor of the Plaintiffs' class awarding all damages as prayed for herein, including attorneys' fees, with all costs assessed against Defendant.

RESPECTFULLY SUBMITTED,

*[signature]*

FAYARD AND HONEYCUTT, APC
Calvin C. Fayard, Jr., (La.Bar Roll #5486)
D. Blayne Honeycutt (La.Bar Roll #18264)
Wanda J. Edwards (La. Bar Roll #27448)
519 Florida Avenue, SW
Denham Springs, LA 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925