# EXHIBIT A

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5661-04T5

PHYLLIS SINCLAIR and JOSEPH
MURRAY, Individually and For
All Others Similarly Situated,

> APPROVED FOR PUBLICATION
>
> January 16, 2007
>
> APPELLATE DIVISION

      Plaintiffs-Appellants,

v.

MERCK & CO., INC.,

      Defendant-Respondent.

_____

    Argued September 26, 2006 – Decided  January 16, 2007

    Before Judges Weissbard, Payne and Graves.

    On appeal from Superior Court of New
    Jersey, Law Division, Atlantic County,
    L-3771-04.

    Esther Berezofsky, argued the cause for
    appellants (Williams Cuker Berezofsky,
    attorneys; Ms. Berezofsky, Elizabeth
    Cabraser (Lieff Cabraser Heimann &
    Bernstein) of the California bar, admitted
    pro hac vice, Wendy Fleishman (Lieff
    Cabraser Heimann & Bernstein) of the NY bar,
    admitted pro hac vice, Richard Lewis (Cohen
    Milstein Hausfeld & Toll) of the DC bar,
    admitted pro hac vice, and Daniel Sigelman
    (Cohen Milstein Hausfeld & Toll) of the DC
    bar, admitted pro hac vice, on the brief).

    Jonathan Hacker (O'Melveny & Myers) of the
    DC bar, admitted pro hac vice, argued the

cause for respondent (Dechert and Mr.
Hacker, John Beisner (O'Melveny & Myers) of
the DC bar, admitted pro hac vice, and
Jeffrey Judd (O'Melveny & Myers) of the DC
bar, admitted pro hac vice, attorneys; Diane
P. Sullivan and Richard Jasaitis III, on the
brief).

Porzio, Bromberg & Newman, attorneys for
amicus curiae Product Liability Advisory
Council, Inc. (Anita Hotchkiss and John T.
Chester, on the brief).

Britcher, Leone & Roth, attorneys for
amicus curiae ATLA-NJ (E. Drew Britcher and
Jessica E. Choper, on the brief).

Begley & Bookbinder, attorneys for amicus
curiae AARP (Thomas D. Begley, Jr., on the
brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

An order of May 19, 2005 dismissed on the pleadings a
proposed class action complaint against Merck & Co. Inc.,
initially filed by plaintiffs Phyllis Sinclair and Joseph Murray[1]
on behalf of themselves and others resident in New Jersey or,
alternatively, in the United States, who had taken the drug
Vioxx in any dose for at least six consecutive weeks at any time
between May 20, 1999 and September 30, 2004.  In their complaint

---

[1]   In an amended complaint Robbie L. Traylor was
substituted for Phyllis Sinclair.  However, an order modifying
the caption has not been entered.

A-5661-04T5

(predicated on negligence, breach of the Product Liability Act[2] and the Consumer Fraud Act,[3] breach of warranty and an alleged entitlement to punitive damages) plaintiffs claimed that as a result of their direct and prolonged exposure to Vioxx, they have an enhanced risk of sustaining serious, undiagnosed and unrecognized myocardial infarctions (UMIs) that, in turn, would subject them to the risk of further, significant, long-term cardiovascular harm.  As a consequence, they sought as relief the establishment of a court-administered medical screening program, funded by Merck, "to provide for and/or reimburse medical and diagnostic tests for each member of the Class to detect [UMIs] and other latent or unrecognized injuries and, if such injuries are detected and diagnosed, to educate Plaintiffs about available treatment strategies."  They also sought to compel a Merck-funded follow-up epidemiological study of former Vioxx users as compared to nonusers to further evaluate post-cessation risk, as well as the retention of jurisdiction by the court to enable it to decide whether the findings of the study justified screening for "unrecognized or latent injuries" other than UMIs.  Although plaintiffs claimed no present physical

---

[2]   N.J.S.A. 2A:58C-1 to 11.

[3]   N.J.S.A. 56:8-1 to -135.

3

injury, they alleged that the cost of diagnostic testing represented an ascertainable economic loss for which they were entitled to compensation.

The viability of plaintiffs' medical monitoring claim was the sole focus of Merck's motion to dismiss and the trial court's opinion, and it is the sole issue on appeal. The judge's order dismissing plaintiffs' complaint as failing to state a cause of action for such monitoring was premised in large measure on the decisions by the New Jersey Supreme Court in Mauro v. Owens-Corning Fiberglas Corp., 225 N.J. Super. 196 (App. Div. 1988), aff'd sub. nom., Mauro v. Raymark Indus., Inc., 116 N.J. 126 (1989) and Theer v. Philip Carey Co., 259 N.J. Super. 40 (App. Div. 1992), rev'd, 133 N.J. 610 (1993). In a carefully reasoned opinion, the judge concluded that plaintiffs' "pure" products liability cause of action differed significantly from those toxic tort actions in which a medical monitoring remedy had been recognized, and after noting that the remedy was "not easily invoked," she declined as a matter of law "to find the New Jersey Supreme Court would extend medical monitoring to the proposed class in this particular action." Further, the judge found the existence of a manifest injury to be a necessary prerequisite to the relief that plaintiffs sought

4

A-5661-04T5

under all the legal theories alleged.  She thus dismissed plaintiffs' suit in its entirety.

Plaintiffs have appealed; we reverse and remand the matter for further proceedings.  In doing so, we express no opinion as to the ultimate viability of plaintiffs' action.  However, as we will explain, we find the dismissal to have prematurely terminated plaintiffs' opportunity to establish the existence of a legally cognizable claim.

## I.

A difficulty in this case arises from the relative paucity of New Jersey precedent, which consists in published form of three principal cases:  Ayers v. Twp. of Jackson, 202 N.J. Super. 106 (App. Div. 1985), aff'd in part and rev'd in part, 106 N.J. 557 (1987), Mauro, and Theer.  As the motion judge recognized, the present case little resembles any of these three.

Ayers was an environmental, toxic tort, nuisance action instituted pursuant to the Tort Claims Act by three hundred residents against a public entity, Jackson Township, alleging damages arising from contamination of local wells by toxic pollutants leaching into the aquifer from a township landfill. The case was tried, and substantial damage awards were entered

for emotional distress occasioned by plaintiffs' realization
that they had ingested contaminated water for a period of up to
six years, for deterioration of plaintiffs' quality of life
during the twenty months that they were deprived of running
water, and for the future cost of annual medical surveillance
that plaintiffs' expert found necessary as the result of
plaintiffs' increased susceptibility to cancer and other
diseases.  A pre-trial order of summary judgment dismissing
claims for damages as the result of an unquantified enhanced
risk of disease was affirmed on appeal on the ground that such a
novel claim was not cognizable under the Tort Claims Act.
Ayers, supra, 106 N.J. at 598-99.

On appeal, we had set aside the jury's award for medical
surveillance expenses, determining that it was "impossible to
say that defendant has so significantly increased the
'reasonable probability' that any of the plaintiffs will develop
cancer so as to justify imposing upon defendant the financial
burden of lifetime medical surveillance for early clinical signs
of cancer." 202 N.J. Super. at 122 (citation omitted).  However,
the Supreme Court reversed our determination as "unduly
imped[ing] the ability of courts to recognize that medical
science may necessarily and properly intervene where there is a
significant but unquantified risk of serious disease." 106 N.J.

6

A-5661-04T5

at 600. In doing so, the Court discussed the difficulty of
proving causation upon eventual manifestation of disease in such
environmental exposure cases as the result of the long latency
period prior to manifestation of injury and the existence of
other intervening exposures.   106 N.J. at 585-87.

The Court then held in language that we find significant to
our decision here:

> the cost of medical surveillance is a
> compensable item of damages where the proofs
> demonstrate, through reliable expert
> testimony predicated upon the significance
> and extent of exposure to chemicals, the
> toxicity of the chemicals, the seriousness
> of the diseases for which individuals are at
> risk, the relative increase in the chance of
> onset of disease in those exposed, and the
> value of early diagnosis, that such
> surveillance to monitor the effect of
> exposure to toxic chemicals is reasonable
> and necessary.
>
> [Id. at 606.]

The Court found that recognition of the availability of
such relief, when warranted, advanced the public interest in
early detection and treatment of disease, served to deter
polluters by exposing them to liability when proof of the causal
connection between their tortious conduct and plaintiffs'
exposure to toxic chemicals was most readily available, reduced
the overall cost for treatment to be borne by the responsible

parties, and served to equitably allocate a reasonable and necessary medical expense.  Id. at 603-05.

The Court's decision in Mauro, supra, 116 N.J. 126, represented an extension of Ayers from the context of an environmental tort action against a public entity instituted pursuant to the Tort Claims Act to that of a product liability action instituted against multiple private manufacturers of asbestos-containing products.  There, plaintiff, employed by Ancora State Hospital as an installer of plumbing, water and steam lines, and alleging exposure to asbestos covering and asbestos cement, brought suit claiming damages for bodily injury, enhanced risk of cancer, emotional distress, and medical monitoring.  Prior to suit, New Jersey Department of Health testing had revealed injuries to plaintiff, consisting of bilateral thickening of both chest walls and calcification of the diaphragm.  However, the results of plaintiff's physical examination and lung function test were "normal."  Id. at 129. Following dismissal of plaintiff's  enhanced risk claim at the conclusion of his case, plaintiff received an undifferentiated jury award of $7,500[4] on his remaining claims.

---

[4]    We held that the trial judge had improperly failed to use a special verdict form.  225 N.J. Super. at 211-12 n.3.

A-5661-04T5

Plaintiff appealed to us, arguing that the Court's holding in <u>Ayers</u> declining to recognize a claim for damages premised upon an unquantified, enhanced risk of cancer was restricted to cases against public entities; a claim that we rejected. 225 <u>N.J. Super.</u> at 201-03. Plaintiff argued further that the rejection by <u>Ayers</u> of an unquantified enhanced risk claim was not controlling because, unlike plaintiff Mauro, the plaintiffs in <u>Ayers</u> were not suffering from a present disease. We rejected that claim as well, finding that it was the indefinite nature of the claim and the difficulties inherent in its adjudication, rather than the absence of present disease or injury, that formed the basis of the Court's decision. <u>Id.</u> at 204. Moreover, we noted that although plaintiff Mauro suffered from a present disease, his enhanced-risk-of-cancer claim was based on a separate and distinct disease process, the occurrence of which was speculative. <u>Id.</u> at 205 (citing <u>Devlin v. Johns-Manville Corp.</u>, 202 <u>N.J. Super.</u> 556, 568 (Law Div. 1985)).

Defendants cross-appealed from the award of damages for emotional distress, claiming that plaintiff could recover only upon proof of substantial bodily injury or sickness resulting from the distress. We found such proof unnecessary when the plaintiff demonstrated that he presently suffered from pleural thickening attributable to defendants' tortious conduct. <u>Id.</u> at

A-5661-04T5

210-11.  The claim for damages arising from medical monitoring, arguably subsumed within the jury's verdict, was not the subject of appeal, but for a claim by defendants that the trial judge erred when he failed to instruct that any such award must be reduced to present value (a claim that we rejected as not meeting the plain error standard), id. at 211, and a claim that plaintiff was not entitled to recover medical surveillance expenses as a matter of public policy (a claim that we declined to address pursuant to R. 2:11-3(e)(1)(E)).  Id. at 212.

Our decision was affirmed on further appeal to the Supreme Court.  116 N.J. at 145.  In its decision, the focus of the Court was principally on plaintiff's appeal from the dismissal of his enhanced risk claim, id. at 132-36, 137-45, and to a lesser extent on defendants' appeal from the recognition of his cause of action for emotional distress.  Id. at 137.  During the course of its opinion, the Court noted that, in Ayers, it had upheld the right of plaintiffs with unquantified enhanced risks of disease as the result of exposure to toxic chemicals to recover medical surveillance expenses.  Id. at 136-37.  It additionally affirmed that, in an asbestos-exposure context, "[e]xposure to toxic chemicals may sustain a claim for medical surveillance damages under the criteria set forth in Ayers."  Id. at 138 (citing Ayers, supra, 106 N.J. at 606).  The Court

10

thus extended the remedy of medical monitoring to a product liability claim where exposure was confirmed and neither causation nor the prospect of ultimate recovery of damages, should compensable disease become manifest, posed the same difficulties foreseen in connection with the environmental pollution claims in <u>Ayers</u>.  In asbestos litigation, common-law remedies abound, and damage recovery is demonstrably common.

Nonetheless, the <u>Mauro</u> Court's extension of a medical monitoring remedy to plaintiffs directly exposed to asbestos does not appear to have directly addressed an issue on appeal in that case, but merely to have bolstered the Court's affirmance of the dismissal of plaintiff's enhanced risk claim, since, at the conclusion of the opinion, the Court observed that:

> Recognition of present claims for medical surveillance and emotional distress realistically addresses significant aspects of the present injuries sustained by toxic-tort plaintiffs, and serves as an added deterrent to polluters and others responsible for the wrongful use of toxic chemicals. In our view, these developments in New Jersey law affecting toxic-tort plaintiffs argue persuasively against modification of the reasonable-probability standard in such cases.  We therefore will not disturb the trial court's refusal to submit to the jury plaintiff's damage claim based on his enhanced risk of cancer.
>
> [<u>Id.</u> at 145.]

A-5661-04T5

Theer, supra, 133 N.J. 611, is the third New Jersey Supreme
Court decision that is relevant to the present appeal.  The
Court framed the issue of significance there as follows:
"whether, in the asbestos context, a plaintiff, in the absence
of any manifest asbestos-related condition, can recover as
compensatory damages the cost of future medical surveillance to
monitor his or her health necessitated by the indirect exposure
to asbestos" occasioned by the plaintiff wife's washing the
allegedly asbestos-laden clothing of her husband, an asbestos
worker whose wrongful death was also a subject of the suit.  Id.
at 614-15.

At trial, evidence was offered that the wife, a long-term,
one pack-per-day smoker, had undergone surgery in 1970 for
repair to a mitral heart valve, had been treated in 1981 for
pneumonia of the right lung, and had undergone further surgery
to remove a rounded atelectasis (an area of collapsed lung
tissue) from her right lung.  Her experts testified that
exposure to asbestos on her husband's clothing had caused the
wife's lung mass and increased her risk of developing lung
cancer.  Medical surveillance was recommended.  Defendant's
experts were of the opinion that the mass was the result of
pleural thickening from the pneumonia.  Id. at 615-16.  In
response to special interrogatories, the jury found that the

A-5661-04T5

wife did not have an asbestos-related injury.  As a result, the
court did not permit the jury to reach the wife's medical
surveillance claim.  _Id._ at 616.  On appeal, we determined that,
in light of _Ayers_, the trial court had incorrectly held that the
wife had to prove that she had contracted an asbestos-related
injury in order to recover damages for medical surveillance, and
we remanded the matter for a determination of the medical
surveillance claim.  259 _N.J. Super._ at 49-50.

     The Supreme Court disagreed, and reversed.  In doing so, it
acknowledged that, in _Ayers_, it had "specifically recognized
plaintiffs' right to recover the cost of periodic medical
examinations 'notwithstanding the fact that the extent of
plaintiffs' impaired health [was] unquantified.'"  133 _N.J._ at
626 (quoting _Ayers_, _supra_, 106 _N.J._ at 606).  It also recognized
that in _Mauro_ it had concluded that a worker who experienced
pleural thickening attributable to exposure to asbestos could,
if he met the standards set forth in _Ayers_, recover the cost of
medical surveillance necessitated by the increased risk of
cancer, noting that "'[e]xposure to toxic chemicals may sustain
a claim for medical surveillance damages under the criteria set
forth in _Ayers_.'"  _Ibid._ (quoting _Mauro_, _supra_, 116 _N.J._ at
138).  As to Mauro himself, the _Theer_ Court observed that he
"had been directly and extensively exposed to asbestos.  As a

A-5661-04T5

consequence, he suffered a condition that was directly caused by asbestos, and the risk to his health from cancer was distinctively attributable to the exposure to asbestos." <u>Ibid.</u> Medical surveillance damages were thus recognized in <u>Mauro</u> as available.

However, the <u>Theer</u> Court then stated that medical surveillance damages constituted a

> special compensatory remedy designed to address the unique harm entailed in an increased risk of future injury arising from the exposure to toxic chemicals. It is not easily invoked. The remedy in <u>Ayers</u> was fashioned to help a class of person who had been victimized by a public entity. The feasibility of developing a fund to provide limited compensation was a relevant consideration. Because persons may often be exposed to toxic chemicals in a product-liability context, we recognize the soundness of <u>Mauro</u>, which, in a limited context, extends the <u>Ayers</u> cause of action to plaintiffs who have suffered increased risk of cancer when directly exposed to a defective or hazardous product like asbestos, when they have already suffered a manifest injury or condition caused by that exposure, and whose risk of cancer is attributable to the exposure.

> [<u>Id.</u> at 627.]

Because Mrs. Theer was only indirectly exposed to asbestos, the Court found that it was "impossible to approximate or to quantify the extent to which she may have encountered the substance." <u>Ibid.</u> She "did not suffer from any injury or

A-5661-04T5

condition clearly related to asbestos exposure." _Ibid._
Further, the Court observed that she was a heavy smoker.
"Thus," it concluded, "there may be multiple factors that
contribute to any future injuries that she may have. . . .
Plaintiff's indirect and hence less tangible exposure to
asbestos, when coupled with her chronic smoking, make it
difficult to determine if there is a direct correlation between
the asbestos exposure and future medical costs." _Id._ at 627-28.
On this basis, the Court determined that medical surveillance
damages "are not available for plaintiffs [such as Theer] who
have not experienced direct and hence discrete exposure to a
toxic substance and who have not suffered an injury or condition
resulting from that exposure and whose risk of cancer cannot be
limited and related specifically and tangibly to that exposure."
_Id._ at 628.

To what extent _Theer_ modifies _Ayers_ is a significant issue
in the present appeal.  In her opinion explaining the basis for
her dismissal of plaintiffs' claims, the motion judge observed:

> It is important to note that if only
> the _Ayers_ test were to be applied here, the
> [defendant's] motion would have to be
> denied.  Accepting the pleadings as true,
> every element of the _Ayers_ test would be
> satisfied and thus the claim would be
> appropriate.  In determining that medical
> monitoring is not available in this
> particular case, the court is ruling that
> _Ayers_, as clarified by _Theer_, was not meant

A-5661-04T5

> to extend to all products liability actions
> and should be limited rather than expanded.

Although evidence may prove the judge to be correct that a
medical monitoring remedy should not be recognized in connection
with Vioxx exposure, we do not read Theer as dictating that
result without analysis of the scientific and other evidence
relevant to plaintiffs' claims.

## II.

On appeal from the dismissal of plaintiffs' complaint in
the present matter, the parties focus much of their argument on
the significance of the fact that neither of the named
plaintiffs has alleged a presently cognizable injury.
Plaintiffs claim that the absence of physical manifestations of
their exposure to Vioxx is immaterial, since that exposure by
ingestion is otherwise fully documented through prescription and
other medical records.  Merck claims that the absence is fatal
to plaintiffs' claims, not only because Mauro and Theer demand
that evidence, but also because it is required as a condition to
suit under the Product Liability Act.  N.J.S.A. 2A:58C-2.

It is uncontestable that evidence of "an injury or
condition," Theer, supra, 133 N.J. at 628, resulting from the
exposure to the toxin at issue, is required in an action by a
plaintiff, exposed to other confounding toxins, who is seeking
medical surveillance damages as the result of secondary exposure

to the toxin at issue.  However, despite the language of <u>Theer</u>, it is far less clear to us that the Supreme Court would necessarily require such evidence in a direct exposure case when, as here, the existence of exposure, dose and duration can be determined otherwise.

In analyzing this issue, we find certain facts to be significant.  We note that the "injury" to plaintiff in <u>Mauro</u> consisted of pleural thickening that did not affect his physical condition or lung function.  We note further that the $7,500 awarded to Mauro was not allocated between his three causes of action.  For that reason, any conclusion by us that the physical "injury" suffered by Roger Mauro was deemed by the jury to be compensable would constitute sheer speculation.[5]  Moreover, we note our conclusion in <u>Mauro</u> that "[w]hile plaintiff here suffers from a present disease, his enhanced risk of cancer claim . . . is based on a 'separate and distinct disease process.'"  <u>Mauro</u>, <u>supra</u>, 225 <u>N.J. Super.</u> at 205 (quoting <u>Devlin</u>, <u>supra</u>, 202 <u>N.J. Super.</u> at 568.  Thus, it is not clear what the significance of Mauro's pleural thickening was to the jury's undifferentiated award of compensation in his case or to

---

[5]    However, the trial court instructed that the jury could award damages to Mauro for emotional distress only if it found that he had sustained an asbestos-related injury.  116 <u>N.J.</u> at 131.

A-5661-04T5

the Theer Court's discussion of the necessity of a manifested injury or condition for recovery by plaintiff there on her claim of secondary exposure.

Plaintiffs have argued that the fact of injury to Mauro was significant only to the Court's analysis of his claims for emotional distress and to its conclusion that "although we need not and do not reach the question whether exposure to toxic chemicals without physical injury would sustain a claim for emotional-distress damages based on a reasonable fear of future disease, such a damage claim is clearly cognizable where, as here, plaintiff's exposure to asbestos has resulted in physical injury." Mauro, supra, 116 N.J. at 137.  Support for plaintiffs' view can be derived from the fact of the Court's brief mention of the medical monitoring issue, which was limited to a recitation of the Court's holding in Ayers on that issue. Mauro, supra, 116 N.J. at 136-37 (quoting Ayers, supra, 106 N.J. at 606) and 138.  Indeed, as we have previously observed, it does not appear that an issue relating to compensation for medical monitoring was raised before the Mauro Court.

It is certainly possible that Mauro's pleural thickening was viewed by the Theer Court only as a "marker"[6] of asbestos

---

[6]    In a number of cases, it has been observed that the association between pleural thickening and asbestos exposure is
(continued)

A-5661-04T5

exposure, providing assurance to it of a reasonably close association between exposure to the toxin and the enhanced risk of contracting an asbestos-related type of cancer or other disease.  It is noteworthy in this connection that the Theer Court did not describe Mauro as "injured," but instead stated that as a consequence of his direct and extensive exposure to asbestos, Mauro suffered "a condition" that was "directly caused by asbestos," and then concluded from that fact that "the risk to his health from cancer was distinctively attributable to the exposure to asbestos."  133 N.J. at 626.  If the Court viewed Mauro's pleural thickening as a marker for asbestos exposure, then it is reasonable to assume that other evidence demonstrating exposure can be substituted for the "injury or condition" (id. at 627) evidenced in Mauro.  The Court's rationale for denying compensation to Theer's secondarily-exposed wife for medical monitoring expense turned on the

_____

(continued)
sufficient to render the condition a marker for exposure.  See, e.g., Cimino v. Raymark Indus., Inc., 151 F.3d 297, 303 n.12 (5th Cir. 1998); Rogers v. Raymark Indus., Inc., 922 F.2d 1426, 1428 (9th Cir. 1991) (pleural plaques); Herber v. Johns-Manville Corp., 785 F.2d 79, 88-89 (3d Cir. 1986); In re Hawaii Fed. Asbestos Cases, 734 F.Supp. 1563, 1566 (D. Hawaii 1990); Waterman S.S. Corp. v. Aguiar, 200 B.R. 770, 772 (Bankr. S.D.N.Y. 1996); Austin v. Abney Mills, 824 So. 2d 1137, 1161 (La 2002); Verbryke v. Owens-Corning Fiberglas Corp., 616 N.E.2d 1162, 1163 (Ohio App. 1992); Mobil Oil Corp. v. Bailey, 187 S.W.3d 265, 266 (Tex. App. 2006).  Courts differ as to whether such conditions are compensable.

A-5661-04T5

absence of a clear causal relationship between any prospective injury and her alleged asbestos exposure and on the existence of confounding causal agents of future disease.  Id. at 627-28.  As the Court observed:  "If a plaintiff is exposed to a product in an indirect manner, and, further, has not suffered from any injury or condition relating to that exposure, it becomes increasingly difficult for courts and juries to determine the direct correlation between the indirect exposure and any future risk of injury."  Id. at 627.  If a causal relationship can be established by means other than physical evidence of exposure, it appears that the Court's concerns would be met.

        We recognize as well that asbestos may be relatively unusual, in that exposure to the toxin has been scientifically associated with pleural changes that are identifiable upon x-ray prior to the manifestation of any otherwise demonstrable injury. We do not know at this stage of the litigation whether the UMIs at issue here are, similarly, markers of Vioxx exposure.  If that is the case, then it can be argued, in light of Mauro, that plaintiffs' medical monitoring claim is premature, and that it must await the manifestation of the marker.

        On the other hand, it is equally possible that UMIs cannot be classified as analogous to the pleural plaques that are indicative of asbestos exposure, and that physical evidence of

A-5661-04T5

Vioxx exposure is simply nondetectable by reasonably available and affordable scientific means.  We assume such a circumstance exists in connection with a myriad of toxic substances, and therefore hesitate to adopt a bright-line test that would make the availability of medical monitoring dependent on the existence of a manifested disease or condition, alone.  "[A]t what stage in the evolution of a toxic injury should tort law intercede by requiring the responsible party to pay damages," Ayers, supra, 106 N.J. at 579; Mauro, supra, 116 N.J. at 132, is a public policy issue that can be resolved only by consideration of multiple factors.

Our view is bolstered by the fact that the plaintiffs in Ayers did not assert claims for present illnesses that they posited were caused by their exposure to toxins in their well water, 106 N.J. at 577, 587, and their case was deemed a "pre-symptom" one.[7]  Id. at 604.  The legal differences between the environmental tort actions asserted in that case are insufficiently distinguishable from the product liability claims asserted in Mauro to provide a foundation for the argument that the existence of an illness or condition, alone, should dictate the viability of a medical monitoring cause of action when

---

[7]    There was, however, expert testimony suggesting subcellular injury had occurred.  Id. at 589 and n.8.

A-5661-04T5

presented in a product liability context.  Further, we do not
accept the argument that actions arising from exposure to
asbestos, as "environmental tort actions" exempt from the
Product Liability Act, N.J.S.A. 2A:58C-6 (see Ripa v. Owens-
Corning Fiberglass Corp., 282 N.J. Super. 373, 399 (App. Div.)
certif. denied, 142 N.J. 518 (1995); Stevenson v. Keene Corp.,
254 N.J. Super. 310, 312 (App. Div. 1992), aff'd, 131 N.J. 393
(1993)), are closely akin to plaintiffs' actions in Ayers, and
that the Court intended that compensation for medical monitoring
be limited to such actions.  The Court's unqualified
categorization in Theer of plaintiff's asbestos exposure claim
as a product liability action, 133 N.J. at 627, and its manifest
difference from the pollution claims of the Ayers plaintiffs
refute this overly formulaic position.  Nor do we find that
"toxic chemicals" can be meaningfully distinguished as a matter
of law from other injurious products, including allegedly
harmful drugs.  Further, although cancer may be a more likely
result of exposure to the substances at issue in Ayers and the
asbestos at issue in Mauro, whereas cardiac injury may be the
more likely consequence of ingestion of Vioxx, without medical
evidence to explain the significance of that difference, we are
unwilling to find it dispositive.

A-5661-04T5

In her opinion, the motion judge declined to expand <u>Ayers</u>' recognition of a cause of action for medical monitoring to Vioxx, noting that in <u>Ayers</u>, the remedy was justified by the difficulty of establishing causation and the likelihood that other compensation would not be forthcoming.  Additionally, the judge noted that "the need to deter polluters and provide relief to victims who have no legislative remedy isn't present here." Although those factors were discussed in <u>Ayers</u>, the Court did not limit its consideration to them.  We decline to do so, as well.  Moreover, the relative insignificance of those factors in <u>Mauro</u> suggests that they do not constitute the touchstone of the Court's decisions.

The Court observed in <u>Ayers</u> that the availability of compensation for medical monitoring expense was dependent upon the significance and extent of plaintiffs' exposure to the toxins, their toxicity, the seriousness of the diseases for which the exposed plaintiffs were at risk, the level of increased risk presented, and the value of early diagnosis.  106 <u>N.J.</u> at 606.  We are unwilling to sacrifice a consideration of these additional factors to a bright-line test.  The Court surely did not intend that ease of application supplant a measured consideration of the merits of a particular claim in light of relevant facts, science and policy.

A-5661-04T5

Because the trial court had all the facts before it, the court in Ayers was able to balance the factors that we have listed and to determine that medical surveillance at the expense of Jackson Township was both reasonable and necessary.  A trial had occurred that included testimony by medical and other scientific experts, as was also the case in both Mauro and Theer.  The Supreme Court in Ayers specifically made its decision on the compensability of medical monitoring expenses dependent on the existence of "reliable expert testimony" that addressed the factors the Court had identified as relevant.  106 N.J. at 606; see also Theer, supra, 133 N.J. at 626.  Here, we are faced with bare pleadings, and having rejected the bright-line basis for decision advocated by Merck, we lack a factual foundation for making a determination as to what, if any, relief is reasonable and necessary in the circumstances, bearing in mind that the remedy sought be plaintiffs cannot be "easily invoked."  Theer, supra, 133 N.J. at 627.

We thus decline to affirm the trial court at this stage and remand the matter for discovery and an evidentiary hearing that can supply a foundation for a determination, as a matter of law, as to the availability of compensation for medical surveillance. A sufficient evidential foundation must be developed so that the factors deemed significant in Ayers, together with other factors

A-5661-04T5

specifically relevant to plaintiffs' claims, can be reasonably evaluated.[8]

We are cognizant of the Product Liability Act's requirement of "harm," which is defined in relevant part as "personal physical illness, injury or death." N.J.S.A. 2A:58C-1.  That requirement, alone, may prove fatal to plaintiffs' claims founded upon the Act.[9]  Nonetheless,  plaintiffs' pleadings, which we must view indulgently, Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282 (2004); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989), do not allege the non-existence of injury, but instead allege that the two named plaintiffs have not filed claims for personal injury from exposure to Vioxx and have not had a diagnostic EKG since commencing to take the drug.  Plaintiffs thus must be accorded an opportunity to demonstrate "harm" cognizable under the

---

[8]    The Theer Court's requirement that the course of medical monitoring must be "independent of any other that the plaintiff would otherwise have to undergo," 133 N.J. at 627, is arguably such a factor.

[9]    In contrast, the Consumer Fraud Act permits recovery only of economic damages, N.J.S.A. 56:8-19; Gennari v. Weichert Co. Realtors, 148 N.J. 582, 612-13 (1997).  A claim for medical monitoring has been characterized as a claim for such damage. Ayers, supra, 106 N.J. at 591.  We do not presently express an opinion as to the viability of plaintiffs' consumer fraud claims.

Product Liability Act before the portions of their suit premised on that Act can be dismissed as legally insufficient.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

Paul M. Clocker
CLERK OF THE APPELLATE DIVISION

A-5661-04T5