# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | ) **MDL NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | ) |
| | ) **SECTION: L** |
| **THIS DOCUMENT RELATES TO ALL** | ) |
| **CASES** | ) **JUDGE FALLON** |
| | ) **MAG. JUDGE KNOWLES** |

**MEMORANDUM IN SUPPORT OF JOINT MOTION OF MERCK & CO., INC. AND INSURERS TO QUASH AND/OR FOR PROTECTIVE ORDER PREVENTING <u>IRRELEVANT AND INAPPROPRIATE INSURANCE-RELATED DISCOVERY</u>**

Filed on behalf of:

Merck & Co., Inc.
American Alternative Insurance Company
CNA Casualty of California
Columbia Casualty Company
Continental Casualty Company
Continental Insurance Company
Federal Insurance Company
Lexington Insurance Company
North Rock Insurance Company Limited
Steadfast Insurance Company

*All counsel listed on back page*

January 16, 2007

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

SUMMARY OF ARGUMENT ....................................................................................... 5

ARGUMENT ................................................................................................................... 7

I.    DISCOVERY RELATED TO INSURANCE COVERAGE AND CLAIMS IS
      IRRELEVANT AND DUPLICATIVE. ............................................................... 7

      A.    Merck Has Already Disclosed The Insurance Information Required Under
            Rule 26(a)(l)(D) .................................................................................... 8

      B.    Other Insurance Information Is Irrelevant And Exceeds The Permissible
            Scope Of Discovery ............................................................................ 11

      C.    Plaintiffs' Asserted Grounds For Seeking The Discovery Merely Highlight
            Why It Is Inappropriate ...................................................................... 14

II.   INFORMATION RELATED TO ONGOING INSURANCE ARBITRATION
      PROCEEDINGS IS SUBJECT TO CONFIDENTIALITY RESTRICTIONS AND
      THUS SHOULD BE SHIELDED FROM DISCOVERY. ................................. 17

III.  RELEVANT INFORMATION RELATED TO REGULATORY
      INVESTIGATIONS HAS ALREADY BEEN PRODUCED IN THIS
      LITIGATION ...................................................................................................... 23

IV.   THE SUBPOENAS SERVED ON THE INSURERS VIOLATE RULE 45(C)(1)
      BECAUSE THEY IMPOSE UNDUE AND UNNECESSARY BURDENS ON
      THE NON-PARTY INSURERS ........................................................................ 23

CONCLUSION .............................................................................................................. 25

849468v.1

## TABLE OF AUTHORITIES

**Page**

**Cases**

*AEGIS Ltd. v. European Reinsurance Co.*
  [2003] 1 W.L.R. 1041 ................................................................. 20

*Ali Shipping Corp. v. Shipyard Trogir*
  [1998] 1 Lloyd's Rep, 643 (Ct. App.) ....................................... 20

*All AT&T Corp. Fiber Optic Plaintiffs v. All AT&T Corp. Fiber Optic Defendants,*
  MDL Docket No. 1313, 2002 U.S. Dist. LEXIS 11219 (S.D. Ind. June 5, 2002) ........................ 9

*Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Inc.,*
  Case No. Civ.A. 98-1788, 1999 WL 781495 (E.D. La. Sept. 29, 1999) .................................... 12

*Ballard v. Allegheny Airlines, Inc.,*
  54 F.R.D. 67 (E.D. Pa. 1972) ............................................. 9, 11, 13

*Bio-Vita, Ltd. v. Biopure Corp.,*
  138 F.R.D. 13 (D. Mass 1991) ................................................ 24

*Caringal v. Karteria Shipping, Ltd.,*
  No. Civ. A. 99-3159, 2001 WL 874705 (E.D. La. Jan. 24, 2001) ............................................ 22

*Dart Indus. Co. v. Westwood Chem. Co., Inc.,*
  649 F.2d 646 (9th Cir. 1980) ................................................. 15

*Dolling-Baker v Merrett*
  [1990] 1 W.L.R. 1205 ......................................................... 21

*Dushkin Pub. Group, Inc. v. Kinko's Serv. Corp.,*
  136 F.R.D. 334 (D.D.C. 1991) .............................................. 21

*Excelsior College v. Frye,*
  233 F.R.D. 583 (S.D. Cal. 2006) ............................................ 8, 9

*Exxon Corp. v. Crosby-Mississippi Resources, Ltd.,*
  40 F.3d 1474 (5th Cir. 1995) ................................................ 15

*Fla. ex rel. Butterworth v. Jones Chemicals, Inc.,*
  148 F.R.D. 282 (M.D. Fla. 1993) ........................................... 19

*Grubbs v. Gulf Int'l Marine, Inc.,*
  625 So. 2d 495 (La. 1993) .................................................... 16

*Gulotta v. GE Capital Modular Space,*
  Case No. 03-1669 SECTION: "K" (4), 2005 U.S. Dist. LEXIS 11988,
  (E.D. La. May 31, 2005) ...................................................... 15

*Hassneh Ins. v. Steuart J. Mew*
  [1992] 2 Lloyd's Rep. 243 (Q.B.) ......................................... 21

*In re Enercons Virginia, Inc.,*

849468v.1

# TABLE OF AUTHORITIES
## (cont'd)

Page

812 F.2d 1469 (4th Cir. 1987)............................................................................21, 22, 23

*In re Linerboard Antitrust Litig.,*
223 F.R.D. 357 (E.D. Pa. 2004) ........................................................................ 15

*In re Talbott Big Foot, Inc.,*
887 F.2d 611 (5th Cir. 1989).............................................................................. 16

*Indem. Ins. Co. v Am. Eurocopter, LLC,*
227 F.R.D. 421 (M.D.N.C. 2005)....................................................................... 16

*Jaffe Pension Plan* v. *Household Int'l, Inc.,*
No. Civ. A. 04-N-1228 (CBS, 04-X-0057), 2004 WL 1821968 (D. Colo. Aug. 13, 2004) ........ 19

*Jorden v. Dolphin Towing, L.L.C.,*
Case No. 03-222 SECTION "A"(4), 2004 U.S. Dist. LEXIS 4728 (E.D. La. Mar. 22, 2004).... 14

*Laxalt v McClatchy,*
116 F.R.D. 455 (D. Nev. 1986) .......................................................................... 16

*Micro Motion, Inc. v. Kane Steel Co., Inc.,*
894 F.2d 1318 (Fed. Cir. 1990) .......................................................................... 24

*Missouri Pac. R.R. Co. v. Aetna Cas. & Sur. Co.,*
Case No. 3-93-CV-1898-D, 1995 WL 861146 (N.D. Tex. May 17, 1995) ................... 9

*Native Am. Arts, Inc. v. Bundy-Howard, Inc.,*
No. 01 C 1618, 2003 U.S. Dist. LEXIS 4393 (N.D. Ill. Mar. 20, 2003)...................... 9

*Odfjell ASA v. Celanese AG,*
348 F. Supp. 2d 283 (S.D.N.Y. 2004) ................................................................. 19

*Oklahoma Publ'g Co. v. Cont'l Ins. Co.,*
Case No. CIV-90-1251-A, 1991 WL 323804 (W.D. Okla. Nov. 5, 1991).................. 9

*Potomac Elec. Power Co. v. Cal Union Ins. Co.,*
136 F.R.D. 1 (D.D.C. 1990) .......................................................................... 11, 13

*Reed v. Gen. Motors Corp.,*
773 F.2d 660 (5th Cir. 1985)............................................................................. 14

*Rivera v. NIBCO, Inc.,*
364 F.3d 1057 (9th Cir. 2004)............................................................................ 15

*Schaaf v. Smithkline Beecham Corp.,*
233 F.R.D. 451 (E.D.N.C. 2005) .................................................................... 16, 24

*Simon v. G.D. Searle & Co.,*
816 F.2d 397 (8th Cir. 1987)............................................................................... 8

*Zimmerman v. Int'l Cos. & Consulting, Inc.,*
107 F.3d 344 (5th Cir. 1997) ............................................................................. 16

849468v.1

## TABLE OF AUTHORITIES
### (cont'd)

**Page**

**Statutes**

La. Rev. Stat. 22:655 .............................................................................................. passim

**Regulations**

Fed. R. Civ. P. 26(a)(l)(D) ...................................................................................... passim

Fed. R. Civ. P. 26(b) ...................................................................................................... 15

Fed. R. Civ. P. 26(b)(l) .............................................................................................. 8, 11

Fed. R. Civ. P. 45 ............................................................................................................ 23

Fed. R. Evid. 411 ....................................................................................................... 4, 14

**Other Authorities**

R. Jacobs, L. Masters & P. Stanley, *Liability Insurance in International Arbitration: The Bermuda Form* ¶¶ 15.21-15.22 (Hart, 2004) ........................................................................... 21

## INTRODUCTION

Pursuant to the briefing schedule set by the Court on January 10, 2007, defendant Merck &
Co., Inc. ("Merck") and non-party insurers American Alternative Insurance Company, CNA
Casualty of California, Columbia Casualty Company, Continental Casualty Company, Continental
Insurance Company, Federal Insurance Company, Lexington Insurance Company, North Rock
Insurance Company Limited, and Steadfast Insurance Company (collectively, "Insurers") jointly
move for an order preventing plaintiffs from conducting the insurance-related depositions that
have been noticed by the PSC and quashing the insurance-related document requests that the PSC
has served in conjunction with those deposition notices.[1]

As set forth below, the topics plaintiffs seek to cover in these depositions and the subject
matter of the requested documents – all of which relate to the details of Merck's insurance
coverage and ongoing insurance coverage arbitrations – either are duplicative of materials already
produced to plaintiffs or are irrelevant to this product liability litigation, confidential, or otherwise
inappropriate subjects for discovery.  As a result, Merck and the subject insurance companies
should not be required to designate corporate representatives for the noticed depositions or
undertake any document production on any of these topics.  Moreover, even if any of the requested
discovery were appropriate (and it is not), there would still be no reason to burden the non-party
Insurers with such demands as any appropriate discovery could be obtained directly from Merck.

## BACKGROUND

On October 27, 2006, the PSC served Merck with a Rule 30(b)(6) notice, specifying 20
deposition topics and 21 document requests – all relating to insurance matters.  (*See* Declaration of

---

[1]      This motion supplements and largely supersedes Merck's separate motion on this subject, as filed on
November 16, 2006.  (*See* Barnett Decl., Ex. B.)

Benjamin Barnett in Support of Joint Motion of Merck and Insurers To Quash ("Barnett Decl."), filed herewith, Ex. A.)  On November 16, 2006, Merck responded with objections and a motion for protective order.  (*See* Barnett Decl., Ex. B.)

On November 20 and 22, 2007, after Merck had filed its motion, the PSC served (or attempted to serve) nine of Merck's insurers, all of which are nonparties, with largely duplicative but even more numerous and expansive discovery demands – again, all directed to matters of insurance.[2]  (*See* Barnett Decl., Exs. C-K.)  The PSC's subpoenas and notices specify 23 insurance-related topics to be covered at each Insurer's deposition and 31 requests for production. *Id.*  By way of illustration, the PSC's document requests call for the production of:

- "[a]ny and all policies of insurance issued by [any Insurer] to Merck and/or Merck subsidiaries … from the year 1990 to the present" – *i.e.,* years before Vioxx was ever on the market, or even in development, and irrespective of whether the policy in question provides, or potentially provides, product liability or Vioxx-related coverage (Barnett Decl., Ex. C, RFD No. 1);[3]

- "[a]ny and all documents maintained by [any Insurer] relating to Vioxx" (Barnett Decl., Ex. C, RFD No. 4);

- "[a]ny and all documents … reflecting any coverage determinations … with respect to claims relating to Vioxx" (Barnett Decl., Ex. C, RFD No. 9);

- "[a]ny and all underwriting files pertaining to Merck and/or its subsidiaries," again without limitation to product liability policies or policies relevant or potentially relevant to Vioxx (Barnett Decl., Ex. C, RFD No. 15);

- "[a]ny and all claims files pertaining to claims relating to Vioxx" (Barnett Decl., Ex. C, RFD No. 16);

---

[2]    To date, it does not appear that plaintiffs have properly served at least one of the Insurers, North Rock Insurance Company Limited (and possibly others). Nothing herein is intended to waive the requirement that North Rock, or any other Insurer, be properly served before it is obligated to take any action.  North Rock thus further objects and declines to respond absent proof of proper service.

[3]    The Deposition Notices served on the Insurers are virtually identical in form and substance and are collectively cited throughout.  Following an initial set of Definitions, the notices all set forth an identical list of deposition topics in a set of numbered paragraphs, referred to herein as "DT," followed by an identical list of requests for documents in a further set of numbered paragraphs, referred to herein as "RFD."

849468v.1

- "[a]ny and all marketing files pertaining to the sale of and/or marketing of insurance products to Merck and/or its subsidiaries" (Barnett Decl., Ex. C, RFD No. 17); and

- "[a]ll materials and documents relating to all insurance arbitrations relating to insurance coverage for any Vioxx related claims [or settlements]" (Barnett Decl., Ex. C, RFD Nos. 24-25).

Insurers have jointly responded and objected to all of this discovery.  (*See* Barnett Decl., Ex. L.)

On December 22, 2006, in an effort to resolve this dispute, Merck's counsel, including both MDL defense counsel and insurance coverage counsel, met with PSC representatives to try to understand why the plaintiffs believe they need and are entitled to this discovery.  Merck's counsel also undertook to explain Merck's liability insurance program, as set out in the insurance policies that Merck produced to the PSC a year ago (on February 1, 2006) under Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure, and as laid out in a liability insurance coverage chart that Merck's insurance counsel provided to the PSC.  (*See* Barnett Decl., ¶¶13-14, Ex. M (policy chart).)

During this half-day meeting, Merck's counsel answered every question posed by the PSC representatives about Merck's policies and explained that Merck is actively pursuing ***full limits coverage*** under all of the applicable policies.[4]  (*See* Barnett Decl., ¶ 15.)  Merck's counsel further explained that, as Merck's public statements have made clear, Merck's payments and reserves for Vioxx-related defense costs to date already exceed the full limits of Merck's liability insurance program.  (*See id.*)  Accordingly, whether every insurance dollar within the limits of Merck's liability policies will be obtained by Merck is a matter that will have no foreseeable, practical impact on any MDL plaintiff's potential recovery, and in any event, whether and how much any MDL plaintiff should recover in this action are questions that cannot possibly be answered, either

---

[4]     The Insurers dispute the availability of coverage under Merck's policies for Vioxx-related claims and losses.

factually or legally, by any reference to, or evidence about, Merck's liability insurance.  *See, e.g.,* Fed. R. Evid. 411.

Notwithstanding these facts, both at and after the December 22 meeting, the PSC advised Merck that it intended to press forward with plaintiffs' insurance-related discovery demands. In response to Merck's request that it withdraw or at least narrow the requests, the PSC advised Merck, in an email exchange on January 5, 2007, that it still demands:

"1.   All underwriting files including insurance applications;

"2.   All claims files including reservations of rights letters;

"3.   All policies back to 1990;

"4.   All arbitration documents, with privilege claims submitted to the Judge;

"5.   30(b)(6) one day depo of risk/underwriting manager;

"6.   30(b)(6) one day depo of risk/claims manager; [and]

"7.   Privilege log on all of the above."

(Barnett Decl., Ex. O (Barnett-Ranier email exchange of January 5 and 12, 2007).)  Despite Merck's request for clarification (*see id.*), the PSC has not specified with particularity which, if any, of the deposition topics and document requests its January 5th email actually withdraws, and because the categories listed are broad enough to encompass many of the original requests, it is unclear what Merck and the Insurers are now being asked to provide.[5]  Under any reading, however, plaintiffs' requests remain unreasonably broad and seek irrelevant, impermissible, and

---

[5]       The only topics and requests that the PSC has unequivocally withdrawn are its requests for discovery related to Justice Department or SEC matters.  As stated in Mr. Ranier's second email of January 5, the PSC has agreed to take "off the table for now" its requests relating to such matters.  (*See* Barnett Decl., Ex. O.)  Otherwise, if the PSC's email is to be understood as a good-faith effort to narrow their requests, then it appears that they are withdrawing the following Merck and Insurer deposition topics ("DT") and requests for documents ("RFD"):  Merck DT Nos. 3-7, 9-14, and 18-20; Merck RFD Nos. 3-11, 13-14, and 17-21; Insurer DT Nos. 1, 3-7, 9-11, 13-16, and 21-23; and Insurer RFD Nos. 2-10, 12-14, 17-22, 26-28, and 30.  (*See* Barnett Decl., Exs. A & C.)

- 4 -

inappropriate discovery.

In response to Merck's and the Insurers' objections, the PSC has presented two rationales to justify this discovery:  (1) the prospect that some relevant but previously undisclosed documents regarding "who knew what and when" about the science and safety of Vioxx may exist in some insurance files, and (2) the prospect that some MDL plaintiffs may have insurance rights of their own under the Louisiana Direct Action Statute, La. Rev. Stat. 22:655.  (*See* Barnett Decl., Ex. N (Letter of L. Davis to Hon. E. Fallon, dated Jan. 9, 2006).)[6]  Neither of these rationales justifies plaintiffs' requests or rebuts Merck's or the Insurers' objections or pertinent law.  Accordingly, for the reasons detailed below, Merck and the Insurers request that the Court quash and/or enter a protective order with respect to the PSC's insurance-related discovery demands.

## SUMMARY OF ARGUMENT

The PSC has acknowledged that "[t]he information sought by the PSC all relates to Merck's insurance matters."  (*See* Barnett Decl., Ex. N at 4.)  Under Rule 26 of the Federal Rules of Civil Procedure and related case law, however, plaintiffs in underlying tort litigation are not entitled to insurance-related discovery, beyond the production of insurance policies that may be called upon to satisfy a judgment in the action.  Merck long ago produced the pertinent policies.

The federal courts recognize that the pursuit of broader, insurance-related discovery in underlying tort litigation is typically irrelevant and improper.  Tort liability cannot be proven by reference to matters of insurance, and it contravenes public policy for matters of insurance, or insurance coverage litigation, to be treated as a second front for discovery in tort litigation.  The fact that federal courts are reluctant to allow broader insurance discovery in a tort context is also

---

[6]    The second and third paragraphs of Mr. Davis' letter to the Court do not accurately characterize Merck's position or what Merck explained at the December 22 meeting.

reflected in the Federal Rules of Evidence and related case law, and an abundance of authority supports a denial of the PSC's "fishing-expedition" demands.

Further, to the extent that plaintiffs seek discovery of matters relating to an ongoing insurance coverage arbitration between Merck and the Insurers, a confidentiality order and background English law (pursuant to which that arbitration is proceeding) expressly bar such discovery, and that order and law are entitled to the respect of this Court.  It would be inappropriate for this Court to interfere with those ongoing proceedings or the English tribunal's confidentiality order, particularly in the absence of any showing of compelling need for this discovery by the PSC.[7]  Indeed, at least one Insurer (Lexington) is not a party to the London coverage arbitration, so disclosure in this litigation of confidential, insurance arbitration materials could prejudice the position of Merck or the other Insurers in that ongoing arbitration.

Finally, the PSC's two-part rationale for seeking this insurance-related discovery is both telling and unavailing.  The PSC's first argument – that there may be some previously undisclosed information about underlying facts relevant to plaintiffs' products liability claims in some of the Insurers' or Merck's *insurance* files – represents an impermissible "fishing expedition," particularly given the 25 million pages of documents that Merck has already produced in this litigation from the files of the individuals and departments actually involved in the underlying events.  The PSC's second argument – that some plaintiffs may have insurance rights of their own

---

[7]        Insofar as it relates to the ongoing insurance coverage arbitration, the PSC's demand for a privilege log misses the point.  The issue is one of confidentiality, not privilege, so the process and analysis that apply to a privilege log are inapposite; indeed, the confidentiality extends to the information that the PSC seeks to obtain by privilege log. Further, while claims of privilege may generally require a privilege log to identify the protected documents, to do so in this case, where such documents are irrelevant to the claims and defenses of any party to the product liability litigation and not within the scope of Rule 26, would impose a significant and unwarranted burden on Merck and the non-party Insurers, respectively, without any showing of relevance or need.

- 6 -

under the Louisiana Direct Action Statute – impliedly admits that this discovery is ***not*** relevant to the issues actually pleaded in this litigation and specifically, to plaintiffs' product liability claims.

By any reasonable standard, the PSC's discovery demands are excessive and improper, all the more so because they seek to impose their burdensome demands on the non-party Insurers, before these issues have even been resolved by the Court between the PSC and Merck directly.

## ARGUMENT

I.    **DISCOVERY RELATED TO INSURANCE COVERAGE AND CLAIMS IS IRRELEVANT AND DUPLICATIVE.**

Nineteen of the twenty-three subjects plaintiffs identify as potential topics to be covered in the Insurer depositions relate to Merck's insurance coverage, policy underwriting, insurance claims, and internal procedures of the Insurers.  (*See* Barnett Decl., Ex. C, at 2-7, DT ¶¶ 1-18, 23.) In addition, twenty-six of the thirty-one requests for documents relate to this same insurance information.  (*Id.* at 9-13, RFD ¶¶ 1-23, 28-30.)[8]  Because these insurance-related matters fall outside the permissible scope of discovery allowed by the Federal Rules, Merck and the Insurers should not be required to provide deposition testimony on these topics or produce any documents related thereto.

Two provisions of the Federal Rules govern disclosure of insurance information:  Rule 26(a)(l)(D) and Rule 26(b)(l).  First, Rule 26(a)(l)(D) requires disclosure of "any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."  Fed. R. Civ. P. 26(a)(l)(D).  While plaintiffs are thus automatically entitled to receive applicable liability insurance ***policies*** under this Rule, insurance-

---

[8]    Because the discovery served on Merck covers the same general issues, this motion focuses on the requests served on Insurers.

related materials that do not fall within the narrow scope of Rule 26(a)(l)(D) are not discoverable unless plaintiffs can show that the information sought is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(l); *see, e.g., Simon* v. *G.D. Searle & Co.,* 816 F.2d 397, 404 (8th Cir. 1987), (information as to risk management reserves is beyond the reach of [mandatory insurance disclosure] and need only be produced upon a showing of relevance). Here, additional discovery regarding Merck's insurance coverage and claims filed with the various Insurers is inappropriate because: (1) Merck has already satisfied the requirements of Rule 26(a)(l)(D); and (2) the remaining insurance information plaintiffs request is not relevant to the claim or defense of any party, nor is it reasonably calculated to lead to admissible evidence.

### A.  Merck Has Already Disclosed The Insurance Information Required Under Rule 26(a)(l)(D).

Rule 26(a)(l)(D) requires a defendant to disclose to plaintiffs the insurance policies that may help satisfy part or all of any judgment in a case. The purpose of the Rule is to "enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Advisory Committee's Note to Fed. R. Civ. P. 26(b)(2) (1970). As a result, the Rule is very limited in nature, providing only for the disclosure of insurance coverage information and not the disclosure of any peripheral facts, such as a party's application for insurance. *Id.*

Case law interpreting Rule 26(a)(l)(D) confirms that the rule requires disclosure of only the insurance policy itself – it does not require disclosure of underlying information or documents relating to the relevant policy. For example, in *Excelsior College v. Frye,* 233 F.R.D. 583, 586 (S.D. Cal. 2006), the defendants in a copyright and trademark suit had already disclosed the insurance policies that could cover any judgment in the case, but plaintiffs argued that the language "any insurance agreement" mandated disclosure of *all* agreements relating to insurance.

- 8 -

*Id.* at 585 (emphasis added). The court disagreed, stating that plaintiffs' interpretation "is not supported by the plain language of the rule, its historical underpinnings, or case law." *Id.* The court held that Rule 26(a)(l)(D) merely requires the disclosure of an insurance policy or other agreement that gives rise to an insurer's obligation to indemnify or hold its insured harmless for judgment; it does not require the production of all documents related to insurance, such as information regarding policy limits or any release of the insurer's obligations under the policy. *Id.* at 586.

The ruling of the *Excelsior College* court is consistent with a broad consensus among the federal courts. *See, e.g., Native Am. Arts, Inc. v. Bundy-Howard, Inc.,* No. 01 C 1618, 2003 U.S. Dist. LEXIS 4393, at *7 (N.D. Ill. Mar. 20, 2003) (Rule 26(a)(l)(D)'s reference to "any insurance agreement" did not embrace insurer's reservation-of-rights letter; plaintiff was entitled to nothing more than the insurance policies themselves); *All AT&T Corp. Fiber Optic Plaintiffs v. All AT&T Corp. Fiber Optic Defendants,* MDL Docket No. 1313, 2002 U.S. Dist. LEXIS 11219, at *8 (S.D. Ind. June 5, 2002) (Rule 26(a)(l)(D) did not require disclosure of defendant's settlement agreement with its insurers, under which the insurers did not have an obligation to indemnify defendant or otherwise satisfy a judgment against it); *Oklahoma Publ'g Co. v. Cont'l Ins. Co.*, Case No. CIV-90-1251-A, 1991 WL 323804 (W.D. Okla. Nov. 5, 1991) (affirming a magistrate judge's ruling denying production of information and documents relating to other insureds' claims, the drafting history of the insurance policies, claims manuals, underwriting materials, reserves and reinsurance agreements); *Missouri Pac. R.R. Co. v. Aetna Cas. & Sur. Co.,* Case No. 3-93-CV-1898-D, 1995 WL 861146 (N.D. Tex. May 17, 1995) (holding that requests for organizational charts and corporate affiliates were overly broad, and that absent a showing of an ambiguity in the insurance policy at issue, information concerning drafting history and negotiations was not relevant); *Ballard*

*v. Allegheny Airlines, Inc.,* 54 F.R.D. 67, 69 (E.D. Pa. 1972) (defendant airline not required to respond to tort plaintiff's interrogatories seeking information on "insurers' attitudes toward questions of coverage" and the identity of insurer personnel because such discovery is irrelevant and inappropriate).

Here too, Merck has already disclosed all the insurance policies that may help satisfy any judgment in this matter, thereby fulfilling its disclosure requirements under Rule 26(a)(l)(D). Moreover, Merck's previous disclosures about these policies cover many of the topics identified by plaintiffs as potential subject matters for the depositions in question.  For example, subject matter 2 seeks testimony regarding "[all] policies of insurance issued by [Insurer] to Merck … including the dates of issue and effective dates of any such policies … the types of policies … and the limits of insurance provided under any such policies."  (Barnett Decl., Ex C at 2-3, DT ¶ 2.) Subject matter 15 relates to "insurance coverage which may cover any personal injury claim against [Merck] for Vioxx related claims" (Barnett Decl., Ex C at 6, DT ¶ 15), and subject matter 16 concerns "all policies that may afford Merck coverage for Vioxx related claims."  (Barnett Decl., Ex C at 6, DT ¶ 16.)  Many of the plaintiffs' requests for documents mirror this language. *(See* Barnett Decl., Ex C at 9-13, RFD ¶¶ 1, 21, 30.)

Because the appropriate policy documents were already provided as part of Merck's required Rule 26(a)(l)(D) disclosure, the company's Insurers should not be burdened by duplicative discovery seeking this same information.  There is simply no reason that Merck's Insurers, who are not even parties to this litigation, should be required to appoint corporate representatives to appear and testify at a deposition only to read from documents already in plaintiffs' possession.  Similarly, there is no justification for requiring the Insurers to search their files to produce copies of the exact same policies that have already been disclosed to plaintiffs.

- 10 -

Because the policy-related discovery that plaintiffs seek will unnecessarily burden the third-party Insurers and increase the costs of discovery with no ascertainable benefit, and because the policies speak for themselves, the Court should preclude plaintiffs from deposing the Insurers' representatives or Merck insurance personnel and from seeking documents already covered by Merck's Rule 26(a)(l)(D) disclosure.

**B.** **Other Insurance Information Is Irrelevant And Exceeds The Permissible Scope Of Discovery.**

Insurance-related matters not covered by Merck's Rule 26(a)(l)(D) insurance policy disclosures – *e.g.,* the identities of the Insurers' employees; underwriting, claims and marketing materials; and information regarding the Insurers' own investigations related to Merck coverage (*see generally* Barnett Decl., Ex. C at 2-13) – are also inappropriate subjects for discovery because these issues are irrelevant and outside the scope of permissible discovery.  *See* Fed. R. Civ. P. 26(b)(l) (plaintiffs may only depose witnesses as to "any matter, not privileged, that is relevant to the claim or defense of any party").

Courts have consistently recognized that insurance information with no direct bearing on the parties' claims is not discoverable.  For example, in *Ballard v. Allegheny Airlines, Inc.,* 54 F.R.D. at 69, an action for slander, false imprisonment, and assault arising out of an incident on defendant's airplane, the court held that the defendant was not required to respond to plaintiffs' interrogatories seeking information regarding the "insurer's attitudes toward questions of coverage" or the identities of its employees.  *Id.*  In reaching this conclusion, the court held that the discovery plaintiffs sought was inappropriate because such matters were irrelevant to the plaintiffs' claims.  *Id.*  Similarly, in *Potomac Elec. Power Co. v. Cal Union Ins. Co.,* 136 F.R.D. 1, 2 (D.D.C. 1990), a case in which the plaintiff was seeking insurance benefits from its insurer, the court held that the existence and contents of reinsurance policies were discoverable, but correspondence and

- 11 -

other documents relating to reinsurance agreements that did not fall within the mandatory disclosure provision were irrelevant to the issues presented and not discoverable.  *See also Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Inc.*, Case No. Civ.A. 98-1788, 1999 WL 781495 (E.D. La. Sept. 29, 1999) (holding that reinsurance information was irrelevant to the issues presented and not discoverable).

The same is true here.  All but a handful of the plaintiffs' deposition topics and document requests relate to Merck's dealings with its Insurers regarding Merck's claimed Vioxx-related coverage rights – and the Insurers' corresponding dealings with Merck.  (*See* Barnett Decl., Ex. C at 3-5, 9-10, DT¶¶  5-8, 13, 19, 23; RFD ¶¶ 6-11, 13.)  The Insurers' contractual coverage defenses, analyses of Merck's claims, reservations of rights, and correspondence with Merck are all entirely irrelevant (and collateral) to this product liability action.  After all, the dealings between Merck and its Insurers do not concern whether Merck "failed to warn" or engaged in consumer protection violations, but rather, whether specific insurance claims submitted by Merck to its Insurers are covered by the specific terms of the contracts between them.

Indeed, to the extent that underlying Vioxx-related documents and information are relevant to the insurance issues, the Insurers have received productions of such materials from the product liability litigation.  (*See* Barnett Decl., ¶ 15.)  There is no validity or utility to the suggestion that Merck or its Insurers should now re-produce such materials back to the product liability plaintiffs, who already have them and who, in any event, have already exercised full and appropriate discovery rights vis-à-vis Merck directly.  Further, the PSC's suggestion that there still may be undisclosed information relevant to the underlying tort issues in Merck or non-party insurance files is wholly unsubstantiated and contrary to common sense:  the people and files relevant to plaintiffs' claims are not in the insurance or risk management area, and what the Insurers know

- 12 -

about Vioxx is necessarily derivative of and subsequent to the development of the underlying facts.[9]

Plaintiffs also make numerous requests pertaining to the identity of the personnel who have dealt with Merck in connection with the company's insurance policies.  (*See* Barnett Decl., Ex. C at 2-5, 9-12, DT ¶¶ 1,3,9, 11; RFD ¶¶ 2-3, 12,20, 28.)  As discussed *supra*, courts have consistently held that this type of information is irrelevant unless it relates to the plaintiffs' actual claims.  *See, e.g., Ballard,* 54 F.R.D. at 69 (holding that defendant was not required to disclose the name of defendant's insurance company's employee in an action for slander, false imprisonment, and assault because it was irrelevant).  Here, as in *Ballard,* information regarding the identities of Merck's insurance personnel and the Insurers' employees is similarly irrelevant.  The identities of the individuals responsible for brokering Merck's insurance or the names of the Insurers' corporate officers are not the least bit relevant for purposes of determining liability in a product liability case.  Nor could this information possibly lead to discovery of relevant information.

Plaintiffs also seek information regarding insurance policies that could not even have covered claims for Vioxx.  (*See, e.g.,* Barnett Decl., Ex. C at 11, RFD ¶ 15 ("any and all underwriting files pertaining to Merck and/or its subsidiaries"); RFD ¶ 17 ("any and all marketing files pertaining to the sale of and/or marketing of insurance products to Merck and/or its subsidiaries").  By using the language "any and all," plaintiffs are seeking discovery of insurance products that have nothing to do with Vioxx – this request would encompass, for example, property, workers' compensation, automobile, employee benefits and travel insurance, as well as any marketing ever conducted by the Insurers relating to Merck.  This information is obviously irrelevant, as the subject of plaintiffs' claim is Vioxx, and Vioxx alone.

---

[9]     There likewise is no basis for plaintiffs' requests for insurance materials that date back to 1990, many years before Vioxx was even in development, let alone on the market.

849468v.1

In short, the cases in this proceeding are product liability actions, involving issues such as alleged failure to warn, personal injury, and consumer fraud – not insurance.  Insurance materials beyond the specific policies themselves will have no bearing on any aspect of this litigation. Indeed, they would not be admissible.  *See, e.g.,* Fed. R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."); *Reed v. Gen. Motors Corp.,* 773 F.2d 660 (5th Cir. 1985) (reversing jury verdict in favor of personal injury plaintiffs where court had admitted evidence of insurance coverage in violation of Rule 411); *Jorden v. Dolphin Towing, L.L.C.,* Case No. 03-222 SECTION "A"(4), 2004 U.S. Dist. LEXIS 4728, *12-13 (E.D. La. Mar. 22, 2004) (granting motion to exclude evidence of insurance from tort trial and ordering that "Plaintiff shall not directly mention the issue of insurance in the presence of the jury").  For this reason too, plaintiffs' should be barred from pursuing further insurance-related discovery.[10]

## C.  Plaintiffs' Asserted Grounds For Seeking The Discovery Merely Highlight Why It Is Inappropriate.

Plaintiffs' two rationales for seeking the insurance discovery – that it could include some information relevant to their product liability claims and that they may have rights of their own under the Louisiana Direct Action Statute, La. Rev. Stat. 22:655 (*see* Barnett Decl., Ex. N (Letter of L. Davis to Hon. E. Fallon, dated Jan. 9, 2006) – merely confirm why their requests are inappropriate.

***First,*** as a matter of law, the remote prospect that there could be some relevant, non-duplicative information regarding the underlying Vioxx facts in some insurance files is not

---

[10]     Much of the information sought by the plaintiffs, such as information concerning the Insurers' analysis of their coverage defenses, also falls squarely within the attorney-client privilege and/or work product doctrine, and discovery of such information should be disallowed for this reason as well.

849468v.1

sufficient ground to justify discovery of this nature or scope.  The plaintiffs have no right to

burden Merck – much less the Insurers – with a costly "fishing expedition" based upon that

prospect, particularly in the face of the truly massive (and pertinent) discovery they already have

received from Merck.  *See Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1072 (9th Cir. 2004) ("District

courts need not condone the use of discovery to engage in 'fishing expeditions.'") (citing *Exxon*

*Corp. v. Crosby-Mississippi Resources, Ltd.,* 40 F.3d 1474, 1487 (5th Cir. 1995).  As this Court has

recently noted, "Courts have … recognized that 'the legal tenet that relevancy in the discovery

context is broader than in the context of admissibility should not be misapplied to allow fishing

expeditions in discovery.'"  *Gulotta v. GE Capital Modular Space,* Case No. 03-1669 SECTION:

"K" (4), 2005 U.S. Dist. LEXIS 11988, *5-6 (E.D. La. May 31, 2005) (citation omitted).  Rather, as

the MANUAL FOR COMPLEX LITIGATION states, discovery must be controlled and limited, and

"'[t]his underlying principle of proportionality means that even in complex litigation, discovery

does not require leaving no stone unturned.'"  *In re Linerboard Antitrust Litig.,* 223 F.R.D. 357,

363 (E.D. Pa. 2004) (quoting MANUAL FOR COMPLEX LITIGATION, § 11.41 (4th ed. 2004)).

In this regard, it should also be noted that issues involving the scope of discovery of an

insurer's files most commonly arise in coverage litigation, in which the plaintiff is seeking

insurance coverage from the insurer.  In such cases, the insurer is a party to the litigation.  The

scope of discovery differs significantly between parties and non-parties.  While a party may obtain

discovery under Fed. R. Civ. P. 26(b) "regarding any matter not privileged which is relevant to the

subject matter involved in the pending action" (and Merck and the Insurers assert that the PSC's

document requests do not even meet this standard), mere relevance alone is not enough in regard

to non-parties.  *See Dart Indus. Co. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir.

1980) ("While discovery is a valuable right and should not be unnecessarily restricted…the

- 15 -

'necessary' restriction may be broader when a non-party is the target of discovery"); *Laxalt v McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for non-party discovery… require a stronger showing of relevance than for simple party discovery.").  "In the context of evaluating subpoenas issued to third-parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Indem. Ins. Co. v Am. Eurocopter, LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005); *Schaaf v. Smithkline Beecham Corp.,* 233 F.R.D. 451, 453 (E.D.N.C. 2005).

*Second*, in an implicit admission that their insurance-related discovery requests are not reasonably relevant to the tort claims at issue in this litigation, the PSC has also cited the Louisiana Direct Action Statute, La. Rev. Stat. 22:655, which, subject to certain conditions, allows a tort plaintiff to pursue an insurance claim directly against a defendant's insurers, "within the terms and limits of the [defendant's] policy" and "provided the accident or injury occurred within the state of Louisiana." *Id.,* §§ A, B(1)-(2).  An analysis of the viability of any such claims, and the numerous problems that would inhere in any effort by the plaintiffs to plead and pursue them, is well beyond the scope of this motion, but it should suffice that there are no such insurance claims in this litigation, and thus, neither this statute nor any of the direct action cases referred to by plaintiffs lends any support to the plaintiffs' insurance-related discovery demands.[11]

Notably, the Fifth Circuit's decision in *Talbott Big Foot*, on which the plaintiffs chiefly relied during the parties' December 22 meeting, expressly recognized that, where an insurance

---

[11]     *See, e.g., In re Talbott Big Foot, Inc.*, 887 F.2d 611 (5th Cir. 1989) (direct action suit; holding only that a trial court was not required to dismiss a lawsuit against an insurer under the Louisiana direct action statute pending the outcome of a coverage arbitration between the insurer and the insured, but noting that a trial court might stay such action, in the exercise of its discretion under abstention principles that are frequently applied in the insurance context; offering no comment or guidance at all on the propriety of insurance-related discovery, even in a direct action context, let alone a product liability context); *Zimmerman v. Int'l Cos. & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997) (direct action suit; similarly not addressing any discovery issues); *Grubbs v. Gulf Int'l Marine, Inc.*, 625 So. 2d 495 (La. 1993) (direct action suit; similarly not addressing any discovery issues).

849468v.1

arbitration is already pending, it may well be prudent for a district court to stay any direct action claims, ***even where they have been pleaded***, under abstention principles that would allow the policyholder and its coverage arbitration to proceed first.  (*See* note 11, *supra*.)  Here, as Merck's insurance counsel explained to the PSC representatives at the December 22 meeting, Merck is already pursuing full limits coverage under the applicable policies, and its Vioxx-related defense costs to date already exceed those limits; thus, there is no legitimate reason for plaintiffs to pursue any direct action claims, even if such claims (contrary to the positions of Merck and the Insurers) were viable.[12]

For all of these reasons, the Court should enter a protective order preventing plaintiffs from conducting the noticed 30(b)(6) depositions of Merck and its Insurers or obtaining related insurance documents.

## II.   INFORMATION RELATED TO ONGOING INSURANCE ARBITRATION PROCEEDINGS IS SUBJECT TO CONFIDENTIALITY RESTRICTIONS AND THUS SHOULD BE SHIELDED FROM DISCOVERY.

Plaintiffs also seek deposition discovery regarding "all insurance arbitrations relating to insurance coverage for any Vioxx related [claims or settlements]."  (Barnett Decl., Ex C at 6, DT ¶¶ 19-20.)  Along the same lines, plaintiffs demand documents relating to arbitration claims or settlements, as well as "all documents which relate, in any way, to arbitrations, including the results of such arbitrations, between Merck and [Insurer] relating in any way to Vioxx related claims." (Barnett Decl., Ex C at 13, RFD ¶ 31.)  Merck and the Insurers, however, are expressly prohibited from revealing such information under the terms of an express confidentiality order issued in *SR Int'l Bus. Ins., Ltd., et. al.* v. *Merck & Co., Inc.* ("SRI Arbitration"), the ongoing Vioxx-related

---

[12]     Merck and the Insurers would strongly oppose any effort to amend the pleadings to add any direct action claims and implead any Insurers here, on numerous grounds of both law and practicality, and any suggestion by plaintiffs that such claims could easily be added to or litigated in this action would not be accurate.

849468v.1

insurance coverage arbitration in which Merck and several of the Insurers are parties.  *See* Barnett Decl., Ex. P (SRI Confidentiality Order).  English law, pursuant to which the SRI Arbitration is proceeding, imposes further and independent confidentiality restrictions that also prohibit such discovery, and both the SRI Confidentiality Order and English law are entitled to the respect of this Court, as a matter of comity.

The SRI Confidentiality Order requires that all parties to the SRI Arbitration, as well as the members of the Board of Arbitration, keep the arbitration proceedings and all related documents confidential.  Specifically, the SRI Confidentiality Order prohibits disclosure of "the arbitral proceedings and related documents, including any rulings or award" (Barnett Decl., Ex. P, ¶ 1) and restricts the parties from disclosing "confidential information" related to the arbitration proceedings.  Such confidential information includes, but is not limited to:

> the notice of arbitration, pleadings, communications with arbitrators, documents produced by the Parties during the course of disclosure (other than documents produced which are in the public domain), statements of fact and expert witnesses, exhibits, memoranda, and hearing transcripts.

*Id.*

Pursuant to the SRI Confidentiality Order, parties to the arbitration proceeding, including certain of the Insurers, may use confidential information only for purposes of the arbitration unless disclosure is required by court order or other applicable law.  (*See* Barnett Decl., Ex. P, ¶¶ 2, 4.) In fact, the SRI Confidentiality Order requires that "in the event that a third party serves a subpoena or a document request on a Party that calls for the production of Confidential Information obtained

- 18 -

from other Parties, the Party . . . shall reasonably cooperate with such other Parties in resisting such request by appropriate means."  (Barnett Decl., Ex. P,  ¶ 5).[13]

Under the plain terms of the SRI Confidentiality Order, Merck and the Insurers are not permitted to answer questions relating to the details of the arbitration, or to produce arbitration materials, in this product liability litigation.  To find otherwise would render the Order, which is plainly intended to insulate the insurance matters from the underlying tort litigation, a dead letter. A related complication is that some insurers who are involved in the arbitral proceedings are not U.S. entities, have not been served with discovery by plaintiffs here (and are not movants here), are foreign entities likely not subject to this Court's jurisdiction, and thus, are not present to defend their rights.  By the same token, some Insurers here are not parties to the SRI Arbitration or privy to those proceedings, and disclosures here could impermissibly give them, as well as plaintiffs, potentially prejudicial access.  There is no good reason for this Court to take on  these issues.

U.S. courts have explicitly recognized that even U.S. arbitration panels must have the ability to make and enforce confidentiality orders applicable to their proceedings.  *See, e.g., Odfjell ASA v. Celanese AG,* 348 F. Supp. 2d 283, 287-88 (S.D.N.Y. 2004) (noting, under the Federal Arbitration Act, that arbitrators are competent to decide issues of confidentiality and privilege in regard to materials produced in their arbitrations).  Further, courts generally recognize that confidentiality orders issued in arbitration proceedings must be respected in order to avoid unfair "surprise" to the parties involved.  *See Jaffe Pension Plan* v. *Household Int'l, Inc.,* No. Civ. A. 04-N-1228 (CBS, 04-X-0057), 2004 WL 1821968, at *2 (D. Colo. Aug. 13, 2004) (cautioning that "a court should not cavalierly disregard the expectations of the parties to an arbitration as

---

[13]      A further insurance arbitration pending in London, involving Merck and an off-shore insurer not served with any discovery requests here (XL Bermuda), has resulted in a similar confidentiality order.  (*See* Barnett Dec., Ex. Q). The same arguments and objections apply to discovery in respect to the XL Arbitration as apply to the SRI Arbitration.

849468v.1

memorialized in their confidentiality agreement"); *see also Fla. ex rel. Butterworth* v. *Jones Chemicals, Inc.,* 148 F.R.D. 282, 288 (M.D. Fla. 1993) (acknowledging that failure to protect a party's reliance on a protective order would not only prejudice the confidentiality interests of that party, but also would undermine the effectiveness of protective orders in facilitating discovery).

Merck and certain of its Insurers have engaged in the SRI Arbitration with an expectation of confidentiality as to those proceedings, and the arbitration has proceeded on that basis.  The tribunal and parties to that matter have relied on the understanding that materials created for the arbitration, and information exchanged during those proceedings, will not be disclosed to the general public or made available to third parties involved in other litigation, such as the underlying tort plaintiffs.  Merck and its Insurers have relied on this understanding and Order throughout the insurance proceeding and did not expect that plaintiffs alleging product liability claims would be able to obtain information from the SRI Arbitration.

Basic principles of international comity dictate that this Court should respect the rulings of the arbitration panel and refuse to allow deposition questioning or document production relating to the London arbitration.  According to England's Court of Appeals, confidentiality is a necessary and inherent attribute of arbitration proceedings under English common law, which governs the conduct of the SRI Arbitration.  *Ali Shipping Corp. v. Shipyard Trogir* [1998] 1 Lloyd's Rep, 643, 650-51 (Ct. App.) (the confidentiality of English arbitral proceedings and submissions "ought properly to be regarded as attaching as a matter of law" and does "not depend upon any inherent confidentiality in the material produced").  Indeed, in *Ali Shipping Corp.,* the court held that:

> strangers shall be excluded from the hearing and conduct of the arbitration and neither the tribunal nor any of the parties can insist that the dispute should be heard or determined concurrently with or even in consonance with another dispute, however convenient that course may be to the parties seeking it and however closely associated the disputes in question may be.

- 20 -

[1998] 1 Lloyd's Rep. at 650-51.  This confidentiality extends to all aspects of the proceedings.

*AEGIS Ltd. v. European Reinsurance Co.* [2003] 1 W.L.R. 1041, 1046-47, 1050 (Privy Council)

("commercial arbitrations are essentially private proceedings and unlike litigation in public courts

do not place anything in the public domain"); *Hassneh Ins. v. Steuart J. Mew* [1992] 2 Lloyd's

Rep. 243, 247 (Q.B.) ("the requirement of privacy must in principle extend to documents which

are created for the purpose of [arbitration] … [including] witness statements …."); *Dolling-Baker*

*v Merrett* [1990] 1 W.L.R. 1205, 1213 (Ct. App.).  Leading English commentators have reinforced

the importance of confidentiality in the specific context at issue here, where insurance coverage

arbitration proceedings are being conducted contemporaneously with related, underlying tort

litigation:

> The confidentiality of the arbitral proceedings, and documents
> exchanged within those proceedings, may be particularly important
> in the context of a Bermuda Form arbitration. For example,
> litigation of the underlying claims against the policyholder may
> be continuing in the United States or elsewhere, and the
> policyholder may wish to avoid documents exchanged in the
> arbitration becoming discoverable in underlying litigation against
> it… . English law protects the confidentiality of arbitration
> proceedings, and indeed, confidentiality is a term implied into
> arbitration agreements as a matter of law.

R. Jacobs, L. Masters & P. Stanley, *Liability Insurance in International Arbitration: The*

*Bermuda Form* ¶¶ 15.21-15.22 (Hart, 2004).[14]

   U.S. courts regularly afford respect to confidentiality restrictions issued by courts in other

domestic jurisdictions on grounds of comity.  *See, e.g., Dushkin Pub. Group, Inc. v. Kinko's Serv.*

*Corp.,* 136 F.R.D. 334, 335-36 (D.D.C. 1991) (court declined, on comity grounds, to order

production of documents subject to protective order entered by another federal district court, and

---

[14]     The SRI Arbitration is a "Bermuda form" arbitration.

849468v.1

stated that plaintiff should direct any such request to the court that issued the protective order). U.S. courts have also extended comity to orders issued in foreign proceedings regarding other matters. *See, e.g., In re Enercons Virginia, Inc.,* 812 F.2d 1469, 1473 (4th Cir. 1987) (affirming district court's deference to Italian court's order appointing a bankruptcy trustee under the doctrine of international comity, noting that "the Italian proceedings were sufficiently analogous to our fundamental concepts of justice as to warrant our extension of comity to them"). The same principles should apply to confidentiality orders issued in foreign jurisdictions. Otherwise, U.S. courts would render confidentiality orders issued by London courts or tribunals null and void, and perhaps, *vice versa*.

The PSC's effort to rely on *Caringal v. Karteria Shipping, Ltd.*, No. Civ. A. 99-3159, 2001 WL 874705 (E.D. La. Jan. 24, 2001), in its January 9th letter to this Court, is unavailing. In that case, the trial court declined to set aside a magistrate judge's ruling compelling the disclosure of documents prepared in connection with a London arbitration, where the defendant had argued that any documents "pertaining to the London arbitration" could not be produced "without breaching the duty of confidentiality that attaches to an arbitration" in England. *Id.* at *1. While the decision provides insufficient details to assess exactly what happened in that case, it is clear that – contrary to the PSC's suggestion – the *Caringal* court acknowledged (a) the general duty of confidentiality that attaches to arbitral materials under English law, (b) the need for the requesting party to show relevance and a reasonable need for the requested disclosure to trump such confidentiality, and (c) the propriety of resisting such disclosure in the absence of an express court order by a U.S. court requiring it. *Id.* Indeed, *Caringal* stands only for the fact-bound proposition that, on the (unclear) record presented there, the magistrate judge was not "clearly erroneous" in finding that the requesting party had made a sufficient showing of relevance and need and that nothing in

- 22 -

English law bars disclosure "when appropriate."[15]  In this case, for the extensive reasons detailed above, the plaintiffs have made, and can make, no such showing of relevance or need, and there is also an express confidentiality order in place, barring the requested discovery.

Accordingly, this Court should respect the confidentiality of the London insurance proceedings and prohibit plaintiffs from pursuing discovery related thereto.

## III. RELEVANT INFORMATION RELATED TO REGULATORY INVESTIGATIONS HAS ALREADY BEEN PRODUCED IN THIS LITIGATION.

Plaintiffs also have served discovery, which they also have curiously described as "insurance-related," regarding investigations into Merck's conduct initiated by the DOJ and SEC, after Vioxx was withdrawn from the market in September of 2004.  (*See* Barnett Decl., Ex. C, at 6, DT  ¶¶ 21-22; *id.* at 12, RFD ¶¶ 26-27.)  As noted above, plaintiffs have taken these requests "off the table for now."  (*See* note 5, *supra*; Barnett Decl., Ex. O (Barnett-Ranier email exchange of January 5 and 12, 2007).)  If and to the extent the PSC reverses course and pursues these items, Merck and the Insurers will submit briefing to the Court at that time, explaining why such materials are either non-existent, duplicative and/or irrelevant.

## IV. THE SUBPOENAS SERVED ON THE INSURERS VIOLATE RULE 45(c)(1) BECAUSE THEY IMPOSE UNDUE AND UNNECESSARY BURDENS ON THE NON-PARTY INSURERS.

Finally, the subpoenas served on the Insurers violate Rule 45 because they impose excessive burdens on non-parties to this litigation.

Fed. R. Civ. P. 45, parts C and D, are considered so important that they are required to be on every trial or discovery subpoena.  Rule 45(c)(1) states as follows:

---

[15]     *See Caringal,* 2001 WL 874705, at *1 ("The Court has considered *Hassneh* and its progeny, but finds nothing in this line of cases from Great Britain that undermines the principle that the Court may order disclosure when appropriate.").

- 23 -

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty. …

Courts have interpreted Rule 45 to bar discovery from a non-party, unless "a party [can] establish that its need for discovery outweighs the non-party's interest in non-disclosure." *Bio-Vita, Ltd. v. Biopure Corp.,* 138 F.R.D. 13, 17 (D. Mass 1991).  "Even if relevant, discovery is not permitted where no need is shown or compliance would be unduly burdensome or where harm to the persons from whom discovery is sought outweighs the need of persons seeking discovery of the information."  *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1323 (Fed. Cir. 1990).  *See also Schaaf v. Smithkline Beecham Corp.,* 233 F.R.D. at 453 (quashing subpoena where discovery sought was obtainable from another source that was more convenient, less burdensome and less expensive).

Plaintiffs cannot satisfy this weighty burden.  As discussed above, the subpoenas served upon the Insurers by the PSC seek documents that plaintiffs have already received from Merck, or if remotely discoverable and not already received from Merck, can be obtained from Merck rather than burdening the non-party Insurers.  In fact, with the exception of internal documents generated by the insurers, none of which can be relevant or within the scope of Rule 26, and documents that are protected by the attorney-client privilege or work-product doctrine, all other documents sought by the PSC are either already in their possession or in Merck's possession, or can be obtained by plaintiffs from public sources.  Accordingly, plaintiffs' broad requests – which encompass "all documents relating to Vioxx," "all claim files related to Vioxx," and "all documents reviewed in making coverage determinations" – are far too broad and burdensome to impose on non-parties to the litigation.

Plaintiffs' requests are all the more inappropriate because they would not only impose undue burdens on the Insurers but could also involve other insurers or insureds, confidential and proprietary information of both Merck and other parties (or nonparties), and confidential medical information of consumers, patients and participants in tests – non-parties who are even more tangential to this litigation than the Insurers themselves.  Plaintiffs have simply made no showing to justify brushing all these concerns aside and burdening non-parties with their requests.  For this reason too, the discovery should be prohibited.

## CONCLUSION

For the foregoing reasons, the Court should quash plaintiffs' insurance-related deposition notices and document requests.[16]

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN
L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Defendants' Liaison Counsel

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

---

[16]    For the convenience of the court and in view of the common issues arising from the PSC's subpoenas on the Insurers, Merck and its Insurers have jointly made this submission.  However, Merck and the Insurers are represented by their own counsel, and by joining this motion, no party should be deemed to be represented by any attorneys other than their own counsel.

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

849468v.1

Continental Casualty Company
Columbia Casualty Company
CNA Casualty Company of California
Continental Insurance Company
North Rock Insurance Company Limited


By: */s/ Carl E. Hellmers III*
Carl E. Hellmers III
Frilot Partridge, LC
1100 Poydras Street, Suite 3600
New Orleans, Louisiana 70163
504-599-8000


Patrick T. Nash
Zubair Khan
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606-5076
312-704-7711


Federal Insurance Company


By: */s/ Paul N. Farquharson*
Paul N. Farquharson
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, Maryland 21201
410-576-4742


Steadfast Insurance Company


By: *Glen E. Mercer*
Glen E. Mercer (#21752)
Salley, Hite, Rivera & Mercer, LLC
365 Canal Street
Suite 1710
New Orleans, Louisiana  70130
504-566-880

Antonia B. Ianniello
Molly Poag
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, D.C.  20038-1795
202-429-3000


Lexington Insurance Company


By: *Charles E. Leche*
Charles E. Leche (08218)
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130-3672
504-593-0790

Marlene Monteleone
Bivona & Cohen, P.C.
Wall Street Plaza
88 Pine Street
New York, New York  10005-1886
212-363-3100


American Alternative Insurance Company


By: *David F. Bienvenu*
David F. Bienvenu (La. Bar. No. 03070)
Nathan L. Schrantz (La. Bar. No. 21864)
Simon, Peragine, Smith & Redfearn, L.L.P.
1100 Poydras Street., 30th Floor
New Orleans, LA 70163
Phone: 504.569.2030
Fax: 504.569.2999

William McGrath
William Quackenboss
Smith, Stratton, Wise, Heher & Brennan, LLP
2 Research Way
Princeton, New Jersey 08540
609-924-6000

- 28 -

849468v.1

## CERTIFICATE OF SERVICE

   I hereby certify that the above and foregoing Supporting Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of January, 2007.

        */s/ Dorothy H. Wimberly*
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER WITTMANN
        L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana  70130
        Phone:  504-581-3200
        Fax:     504-581-3361
        dwimberly@stonepigman.com

        Defendants' Liaison Counsel