# Exhibit N



**HERMAN, HERMAN, KATZ & COTLAR**
L.L.P.
Attorneys at Law

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick‡

Stephen J. Herman
Brian D. Katz

Soren E. Gisleson
Joseph E. "Jed" Cain

Joseph A. Kott, M.D. J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

820 O'Keefe Avenue, New Orleans, Louisiana 70113-1116
Telephone (504) 581-4892   Facsimile (504) 561-6024
Http://www.hhkc.com
Temporary Office:
Place St. Charles, 201 St. Charles Ave., Suite 4310
New Orleans, Louisiana 70170

* A Professional Law Corporation
‡ Also Admitted in Texas

This Firm and its Partners Are Also
Partners in Herman, Mathis, Casey,
Kitchens & Gerel, LLP

January 9, 2007

Honorable Eldon E. Fallon
c/o United States District Court
Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130

RE: **MDL No. 1657 - Section L**
*In Re:* **Vioxx Products Liability Litigation**

Dear Judge Fallon:

In connection with Merck Insurance Matters that were addressed at the status conference on December 14, 2006, the parties advised that a meet and confer was scheduled with Merck to discuss issues regarding outstanding Requests for Production of Documents and Interrogatories issued by the PSC and the 30(B)(6) deposition notice all relating to insurance matters relative to the Vioxx claims. On December 22, 2006, representatives of the PSC met in person and by telephone conference call with Merck's legal counsel to discuss the matters. Prior to the meet and confer, Merck provided to PLC the attached spreadsheet/chart to assist in outlining the various levels and layers of insurance policies that Merck advises it produced in MRK-ANJ0000001 through MRK-ANJ0000617. This spreadsheet/chart was requested by the PLC in advance of the December 22, 2006 meet and confer. Since the meet and confer, additional communications have taken place between representatives of the PSC and Merck to attempt to address a number of issues.

At the December 22, 2006 meet and confer, counsel for Merck explained the spreadsheet/chart and advised that all of the policies were "occurrences reported" policies. Typically these types of policies have been referred to as "claims made" policies. Counsel for Merck explained that the insurance carriers and Merck believe that every Vioxx claim or lawsuit is considered an individual claim, however, there are provisions in the policies that consider this "batch" coverage or what is commonly referred to as an "integrated occurrence policy" so that the deductibles will apply on a global basis. Merck further advised that it has taken steps to trigger the "integrated occurrence" dynamic and has indicated that several of the issues that are

Honorable Eldon E. Fallon
January 9, 2007
PAGE 2

in dispute between Merck and its insurers are presently in an arbitration proceeding that is to take place in England. Despite requests by the PSC, Merck continues to refuse to provide information responsive to the PSC's questions regarding whether specific policy payments have been made and the nature of the various coverage disputes.

Merck takes the position that all payments made by insurance companies have and are properly applied towards Merck's Vioxx defense costs and that any other insurance coverage has been exhausted. Thus, Merck takes the position that any claimant who ingested Vioxx will not be entitled to any insurance proceeds and further that claimants are not entitled to explore Merck insurance issues. Obviously, the PSC disagrees with Merck's position. However, even assuming that Merck is correct, Merck's position is of no moment regarding precluding discovery of information surrounding coverage disputes that is calculated to lead to uncovering admissible evidence regarding Merck's liability. This discovery sought by the PSC seeks insurance related information regarding insurance coverage and insurance matters generally and more specifically as it relates to options associated with the Louisiana Direct Action Statute (see below for additional discussion regarding this). In addition, the PSC's discovery requests may also reveal admissible evidence relating to important liability issues. Both of these goals justify the discovery sought by the PSC.

Rule 26(A)(1)(d) requires that a party make initial disclosures of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. The information requested by plaintiffs are not privileged matters and certainly are relevant to the claims and defenses asserted by Merck. Plaintiffs have demonstrated good cause for this discovery and the complete understanding of Merck's insurance is very important for the PSC to discover. The information sought by the PSC all relates to Merck's insurance matters.

The following list of open items need the Court's immediate attention and could not be resolved at the December 22 meet and confer:

1. The PSC requested that Merck identify each specific insurance policy (MRK-ANJ0000001 through MRK-ANJ0000617) so that the spreadsheet/chart that was provided on December 22, 2006 reflects which policy corresponds to which particular entry. This will enable the PSC to better understand the spreadsheet/chart and correlate each policy to the spreadsheet/chart. This information (Merck has agreed and did provide this information) assists the PSC in better understanding the documents that were produced and will assist in

Honorable Eldon E. Fallon
January 9, 2007
PAGE 3

    reducing some of the areas of inquiry that were contemplated by the 30(B)(6) deposition notice provided to Merck by the PSC. However, the PSC should be allowed to proceed with the 30(B)(6) deposition so that it can obtain confirmation of the various insurance policies and the positions of Merck's various insurance companies. Merck has consistently stated that its legal defense costs exhausts all of Merck's insurance coverage. Merck's contention that it will get all of the insurance coverage to pay legal costs and that it is fighting with the insurance carriers to whatever is available so that its legal team can be paid is not a valid objection to the PSC discovering Merck's various layers of insurance and other insurance related matters. The coverage needs to be fully explored so that claimants have a complete understanding of the coverage that exists, whether the coverage affords claimants any protection or proceeds, and the extent of the coverage.

2. The PSC has requested information from Merck's "underwriting files" so that it can confirm coverage, outline whatever risk may have been contemplated and further enable the PSC to determine what Merck contemplated at the time it was seeking to obtain insurance.

3. The PSC has requested information from Merck's "claims files" so that it can confirm coverage, outline whatever risk may have been contemplated and further enable the PSC to determine what Merck's position has been with its insurance carriers relating to claims asserted over Vioxx.

4. The PSC has requested information from Merck relating to the Merck/Insurance Carriers arbitration. Merck contends that the arbitration proceeding is confidential. However, there is already a Confidentiality Order in place in this litigation and therefore, any arbitration materials that are produced will be kept confidential and are discoverable at this time. The PSC maintains that there is no privilege to any of the information. The PSC is interested in the amount of coverage and what issues are in dispute so that the PSC can explore the potential for further insurance coverage and proceeds.

5. The PSC has requested information from Merck regarding investigations by governmental entities such as information by and between Merck and Insurance Commissions, the Attorney General, the Department of Justice and the Securities and Exchange Commission. All of these entities either undertook investigations or have previously dealt with Merck insurance related issues. All of this

Honorable Eldon E. Fallon
January 9, 2007
PAGE 4

information is relevant to the pending Vioxx lawsuits and potential insurance coverage.

In addition to the foregoing, the Louisiana Direct Action Statute ("Direct Action Statute"), La. Rev. Stat. 22:655, authorizes suit directly against a tortfeasor's insurer. At the meet and confer, the PSC explained the importance of the Direct Action Statute to Merck's counsel and advised that it would provide further information concerning plaintiffs' rights under the Direct Action Statute as it relates to discovery of Merck's insurance information. See e.g. *Zimmerman v. Intl. Companies & Consulting, Inc.*, 107 F.3d 344, 346 (5th Cir. 1997). By law, the statute is read into and becomes a part of the policy of insurance, even though the policy may not contain the language required by the statute, or contains language prohibited by the statute. *Zimmerman*, 107 F.3d at 346, *citing*, *Grubbs v. Gulf Int'l Marine, Inc.* 625 So.2d 495 (La. 1993); *Quinlan v. Liberty Bank and Trust Co.*, 575 So.2d 336, 352 (La. 1991) (on rehearing). The Louisiana Direct Action Statute, ". . . is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract." *Quinlan v. Liberty Bank and Trust Co.*, 575 So.2d 336, 352 (La. 1991) (on rehearing). The Direct Action Statute, ". . . applies to every 'policy or contract of liability insurance' and proclaims that 'all policies within their terms and limits are executed for the benefit of all injured persons.'" *Quinlan*, 575 So.2d at 353. "[T]he statute is remedial and should be liberally construed to accomplish its purpose of affording a person suffering loss or damage a direct action against a tortfeasor's insurer." *Quinlan*, 575 So.2d at 353.

Furthermore, terms and conditions of a policy which have the effect of defeating the purpose of the direct action statute, such as no action clauses and provisions which require the personal injury claimant to await arbitration of a coverage dispute before litigating a suit against the insurer, are null and void and superseded by the Direct Action Statute. *Zimmerman*, 107 F.3d at 346; *In the Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 613 (5th Cir. 1989). "[T]he direct action statute grants a personal injury claimant a right of direct action against the tortfeasor's insurer on the policy regardless of any provision in the policy forbidding an immediate direct action." *Zimmerman*, 107 F.3d at 346. "Moreover, the statute does not require the direct action plaintiff to consent to or abide by any policy provision that would contravene the right of the injured party to bring a direct action as provided by the statute." *Zimmerman*, 107 F.3d at 346.

      The PSC is prepared to address these issues with the Court in advance of filing a formal Motion to Compel. The PSC looks forward to discussing these matters at the conference tomorrow morning, Wednesday, January 10, 2007, at 8:30 a.m. Last night I was advised that Drew Ranier will be accompanying me to the conference.

Sincerely,

LEONARD A. DAVIS

LAD:lmf
Enclosure
cc:    Phillip A. Wittmann, Esq.
        Plaintiffs' Steering Committee
        Fred Longer, Esq.