UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| BOYD EDMONDS and | * | SECTION L |
|   JANET EDMONDS, Plaintiffs, | * | |
| | * | JUDGE ELDON E. FALLON |
|  versus | * | |
| | * | MAGISTRATE JUDGE |
| MERCK & CO., INC., Defendant, | * | KNOWLES |
| | * | |
| Case No. 05-5450, | * | |
| | * | |
|     & | * | |
| | * | |
| DONALD STINSON, Plaintiff, | * | |
| | * | |
|  versus | * | |
| | * | |
| MERCK & CO., INC., Defendant, | * | |
| | * | |
| Case No. 05-5494, | * | |
| | * | |
|     & | * | |
| | * | |
| TIMOTHY R. WATSON, Plaintiff, | * | |
| | * | |
|  versus | * | |
| | * | |
| MERCK & CO., INC., Defendant, | * | |
| | * | |
| Case No. 05-5545. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MERCK'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................ 2

I.    PLAINTIFFS' CLAIMS ARE BARRED UNDER LOUISIANA LAW ........................ 2

      A.    Plaintiffs' Discovery Rule Analysis Is Flawed ................................................... 2

      B.    Plaintiffs' *American Pipe* Analysis Is Flawed ................................................... 5

            1.    The Stacking Rule Applies To The *Cain* Class Action ........................... 5

            2.    *American Pipe* Tolling Is Inappropriate In Any Event Because It Is
                  Unreasonable To Rely On A Pending Personal Injury Class Action ........ 8

II.   PLAINTIFFS' CLAIMS ARE BARRED UNDER THE LAWS OF THEIR
      HOME STATES ...................................................................................................... 10

      A.    Plaintiff Edmonds' Claims Are Stale Under Alabama Law ............................... 10

      B.    Plaintiff Watson's Claims Are Stale Under Kentucky Law ............................... 11

      C.    Plaintiff Stinson's Claims Are Stale Under Tennessee Law .............................. 13

III.  PLAINTIFFS MISREAD LOUISIANA'S CHOICE-OF-LAW RULE ........................ 14

CONCLUSION ........................................................................................................... 17

851120v.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Albright v. Merck & Co.*,
No. CV05-2316 (Ala. Ct. Jefferson Cty. Dec. 14, 2006) ..........................................10, 11, 13

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ................................................................................................ *passim*

*Bell v. Goforth*,
2006 WL 627189 (Tenn. Ct. App. Mar. 14, 2006)................................................... 13

*Bunge Corp. v. GATX Corp.*,
557 So. 2d 1376 (La. 1990)...................................................................................... 3, 4

*Cain v. Merck & Co.*,
CV 01 3441 (E.D.N.Y. Aug. 1, 2001) ...................................................................... 6

*Cain v. Merck & Co.*,
CV 01 3441 (E.D.N.Y. Nov. 2, 2001) ...................................................................... 6

*Cain v. Merck & Co.*,
CV 01 3441 (E.D.N.Y. Sept. 18, 2002) .................................................................... 6

*Cartwright v. Chrysler Corp.*,
232 So. 2d 285 (La. 1970) ........................................................................................ 5

*Chardon v. Fumero Soto*,
462 U.S. 650 (1983) ................................................................................................. 12

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) ................................................................................................. 9

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938) ................................................................................................... 13

*Guar. Trust Co. v. York*,
326 U.S. 99 (1945) ................................................................................................... 13

*Harvey v. Amoco Production Co.*,
696 So. 2d 672 (La. App. 1st Cir. 1997).................................................................. 4

*Highland Park Ass'n of Bus. & Enters. v. Abramson*,
No. 94-6424, 1996 U.S. App. LEXIS 19122 (6th Cir. July 3, 1996).................... 12

*Hunter v. American General Life and Accident Insurance Co.*,
384 F. Supp.2d 888 (D.S.C. 2005) .......................................................................... 7, 8

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996).................................................................................... 8

*In re Coastal Plains, Inc.*,
179 F.3d 197 (5th Cir. 1999).................................................................................... 4

851120v.1

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,
  2000 WL 282787 (E.D. La. Mar. 14, 2000) .......................................................... 9

*In re Med. Review Panel of Howard*,
  573 So. 2d 472 (La. 1991) ................................................................................ 5

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ..................................................................................... 9

*Jordan v. Employee Transfer Corp.*,
  509 So. 2d 420 (La. 1987) ................................................................................ 5

*Lettieri v. Merck & Co.*,
  CV 01 3441 (E.D.N.Y. May 23, 2001)................................................................. 5

*Molecular Diagnostics Laboratories v. Hoffmann-La Roche Inc.,* 402 F. Supp. 2d 276 (D.D.C.
  2005) .............................................................................................................. 4

*Redman Home Inc. v. Surtees*,
  933 So. 2d 1100 (Ala. Civ. App. 2005) ............................................................. 11

*Rutledge v. Freeman*,
  914 So. 2d 364 (Ala. Civ. App. 2004) ............................................................... 11

**Statutes**

42 U.S.C. § 1983 ................................................................................................ 12

La. C.C. Art. 3549 ....................................................................................... 15, 16

Tenn. Code Ann. § 29-28-103 ........................................................................... 14

**Regulations**

21 CFR § 211.137(a).......................................................................................... 14

21 CFR § 211.137(b).......................................................................................... 14

21 CFR § 211.166 .............................................................................................. 14

851120v.1

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MERCK'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' opposition brief argues that the Court should apply Louisiana's prescription period to their claims and that under Louisiana law, their claims are still valid even though they were filed more than one year after Merck withdrew Vioxx from the market.  Plaintiffs argue that their claims were timely filed under their own states' one-year statutes of limitations as well. Plaintiffs base their arguments principally on:  (1) a claim that Merck withheld information about the alleged risks of short-term Vioxx use even after the drug was withdrawn from the market; and (2) misapplication of the *American Pipe* doctrine.  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

As set forth below, plaintiffs are wrong on all counts.  First, plaintiffs' "discovery rule" argument would essentially toll the statute of limitations any time a company defended its product in any way in product liability litigation – and is, in any event, belied by the fact that plaintiffs filed their suit before the supposedly withheld information about APPROVe was revealed by Merck.  In other words, under plaintiffs' theory, they did not discover their cases until several months after they were filed.  Second, contrary to plaintiffs' claims, *Cain* was in fact a personal injury class action, and plaintiffs are thus barred from relying on subsequent class actions for tolling purposes (even assuming it were reasonable to rely on the filing of inherently uncertifiable personal injury class actions for tolling in the first place).  Third, plaintiffs' arguments that their claims would also be timely under their home states' laws fail because:  (1) plaintiffs Stinson's and Edmond's claims cannot be saved by the fraudulent concealment doctrine (as an Alabama court recently recognized in a parallel Vioxx action); and (2) plaintiff Watson's home state, Kentucky, does not recognize the *American Pipe* doctrine at all – let alone in the context of cross-jurisdictional tolling.  Finally, plaintiffs misapply Louisiana's choice-of-

law rules because even if one jurisdiction would allow plaintiffs' claims to proceed, it is plaintiffs' burden to show that either compelling considerations of justice or Louisiana's interests in the Vioxx litigation warrant application of the more generous rule.  Plaintiffs have not met this burden.[1]

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE BARRED UNDER LOUISIANA LAW.

### A.   Plaintiffs' Discovery Rule Analysis Is Flawed.

First, plaintiffs attempt to evade Louisiana's one-year limitation period on personal injury claims by contending that a "liberal" Louisiana discovery rule tolls plaintiffs' claims.  (Pls.' Opp. at 9.)[2]  According to plaintiffs, this is so because Merck's assertion of the "naproxen hypothesis" and its statements that the APPROVe data do not show an increased relative risk prior to 18 months of use prevented reasonable plaintiffs from realizing the potential link between Vioxx usage and their alleged injuries.  (*Id.* at 9-10.)

This argument fails for several reasons.  For starters, the fact that 4,400 plaintiffs filed 2,500 lawsuits (involving both short-term and long-term Vioxx use) in the first six months after Vioxx's withdrawal in 2004 and nearly every news outlet in the country reported on the

---

[1]    Plaintiffs' "counter-statement of material facts" raises a number of superfluous issues that do not bear on the resolution of the issues presented in Merck's motion for summary judgment.  Plaintiffs incorrectly characterize Merck's statements regarding the demonstrated antiplatelet effects of naproxen and regarding the separation of the curves over time in APPROVe, among other issues.  However, even if plaintiffs could support the contention that Merck misrepresented facts on these issues prior to and after withdrawal, Merck would still be entitled to summary judgment for the reasons explained below.  Accordingly, there are no disputed material facts.

[2]    Plaintiffs cite an array of cases to support their position that Louisiana's discovery rule is a "liberal" one, but that appellation is not particularly useful without an illustration of how it applies in practice.  Moreover, most of the propositions plaintiffs rely on from these cases simply restate the rule; they do not show how to apply it.  According to plaintiffs' own summary of these cases, a claim accrues when a plaintiff has "actual or constructive knowledge of the causal relationship between the tortious acts or omissions and the damages thus sustained."  (Pls.' Opp. at 11 n.8.)  This is almost precisely how Merck described the rule in its opening brief.  (*See* Mot. at 10 ("The limitations period begins whenever, in light of actual or constructive notice, a reasonable plaintiff would be aware of his claim.").)  The parties' disagreement does not center on the statement of the rule, but its application.

851120v.1

withdrawal and resulting lawsuits undermines plaintiffs' arguments.  Moreover, while plaintiffs implicitly claim to have relied upon the naproxen hypothesis and the so-called "18-month defense" in failing to file timely lawsuits, they never identify any event or evidence that "tipped them off" that they could no longer rely on these representations.  Indeed, though they ultimately point to "a barrage of criticism that called Merck's 18-month defense into question" (Pls.' Opp. at 29 & n.26), that "barrage" did not begin until Merck reported an error in the description in the APPROVe publication of a statistical test used to assess uniformity of effect over time on May 30, 2006, **more than six months after** the last of Edmonds, Stinson, and Watson filed his complaint.  It is particularly telling that plaintiffs were willing to swear in their affidavits only that "**Prior** to the withdrawal of Vioxx from the market on September 30, 2004, I had no knowledge that the drug was associated with causing [cardiovascular injury] and/or that other plaintiffs had brought claims against Merck."  Regarding what they might have learned **after** September 30, 2004, they offer no testimony.  (*See* Pls.' Opp. Exs. A-C (emphases added).)[3]

      For similar reasons, plaintiffs' continuing tort theory and judicial estoppel arguments also fail.  (Pls.' Opp. at 9 n.7.)  By plaintiffs' own authority, a "continuing tort" only "continues" as long as the defendant does not disclose the information that is necessary for the plaintiff's discovery of his claim.  *Id.*  But the clock starts ticking once a "plaintiff learns that he has been injured by the failure to disclose."  *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1386 (La. 1990) (cited in Pls.' Opp. at 9 n.7.)  Here, withdrawal put plaintiff on notice, even if plaintiffs were right that Merck continued to fail to disclose other facts.  Indeed, plaintiffs' own case, *Bunge*, acknowledged that, though the defendant GATX Corp. never admitted that it failed to

---

[3]       Nor do plaintiffs even **allege** reliance on either the "naproxen hypothesis" or the "18-month defense" in their complaints.  To the contrary, Watson's complaint describes the naproxen hypothesis as an "absurdity" as "no manufacturer of Naproxen has <u>ever</u> claimed such properties" (Watson Compl. ¶ 20), and alleges that the withdrawal of the drug after APPROVe "confirmed what researchers had been saying for years, *i.e.*, Vioxx significantly increases the risk of thrombotic events" (*id.* ¶ 27), without any claim of reliance on any "18-month defense."

disclose knowledge of a hazardous situation, "Bunge received clear notice of injury when the tank exploded."  *Bunge Corp.*, 557 So. 2d at 1386.

Plaintiffs' judicial-estoppel argument is ever further off-point.  (*See* Pls.' Opp. at 9 n.7.) Judicial estoppel is only appropriate where (1) "the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced ***the court*** to accept that previous position."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999) (emphasis added).  Neither factor is satisfied here.  First, Merck's position is not inconsistent.  Merck argues only that, for purposes of the discovery rule, plaintiffs' claims accrued when Vioxx was withdrawn from the market.  As explained above, the fact that Merck has argued that the data do not show an increased relative risk in APPROVe prior to 18 months of use has not prevented thousands of litigants from filing claims.  Second, and more importantly, plaintiffs have failed to demonstrate that this Court has ever "accepted" Merck's 18-month argument for judicial estoppel purposes.  Indeed, had it done so, Merck could presumably dispose of all short-term use cases on summary judgment.[4]

Finally, as a policy matter, plaintiffs' plea for a "liberal" discovery rule has no limiting principle and would essentially do away with statutes of limitations.  After all, as long as any defendant chose to defend lawsuits in aggregate litigation, a plaintiff could contend that he or she "reasonably relied" upon the representations made by the defendant at trial and in the media to hold accrual of their claims in quasi-permanent abeyance.  Plaintiffs offer no basis for this Court to believe that Louisiana law intends this backward result – and courts have routinely decried such a result.  *See, e.g., Molecular Diagnostics Laboratories v. Hoffmann-La Roche Inc.*, 402 F.

---

[4]     Plaintiffs also suggest that limitations questions are always a jury question, but the case they cite for this proposition – *Harvey v. Amoco Prod. Co.*, 696 So. 2d 672, 679 (La. App. 1st Cir. 1997) (cited in Pls.' Opp. at 10-11) – demonstrates only that such questions ***can*** go to the jury, not that they must or even that they do in the normal course.  Under Rule 56, if there are no disputed issues of material fact – and as explained in this reply, there are none – summary judgment is appropriate.

4

Supp. 2d 276, 284-85 (D.D.C. 2005) (holding that defending against charges of concealment in related litigation actually eliminates, rather than supports, any argument for tolling based on fraudulent concealment).

As Merck argued in its initial brief, the Louisiana discovery rule delays accrual only so long as ignorance of an injury and its cause is "not willful, negligent or unreasonable." *In re Med. Review Panel of Howard*, 573 So. 2d 472, 474 (La. 1991); (Amended Memorandum of Law in Support of Merck's Mot. for Summary Judgment ("Mot.") at 10.)  The limitations period begins whenever, in light of actual or constructive notice, a reasonable plaintiff would be aware of his claim.  *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (La. 1970); *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987); (Mot. at 10-11.)  Here, that happened – at the very latest – on September 30, 2004, when Vioxx was withdrawn from the market.  Accordingly, plaintiffs' claims accrued – at the latest – on that date and became stale on October 1, 2005.

**B.    Plaintiffs' *American Pipe* Analysis Is Flawed.**

Plaintiffs also fail to rebut Merck's argument that because they were already members of one personal injury class in the *Cain* class action, the rule against stacking prevents them from relying on subsequently filed personal injury claims for additional tolling.

**1.    The Stacking Rule Applies To The *Cain* Class Action.**

Plaintiffs' attempts to circumvent the stacking rule – by arguing that *Cain* was not a personal injury class action and that the stacking rule should not apply because the court never formally denied certification – both fail.

***First,*** there can be no question that *Cain* was a personal injury class action until the second amended complaint.  (Mot. at 3.)  The initial and first and second amended complaints each set forth personal injury claims for relief based on theories of failure to warn, negligence, and strict liability.  *E.g.*, Complaint ¶ 32, *Lettieri v. Merck & Co.*, CV 01 3441 (E.D.N.Y. May

5

23, 2001) ("Initial Cain Compl.") (alleging that because of failure to warn "plaintiff and other class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses"); *id.* ¶ 38 (same); *id.* ¶ 44 (defendants should have known "that consumers such as plaintiff would suffer foreseeable injury as a result of defendants' failure to exercise ordinary care"); *id.* ¶ 59 (alleging right to "damages . . . for wrongful death, pain, suffering and lost earnings").  Furthermore, the initial and first amended complaints sought monetary relief, a fact made plain by the *Cain* plaintiffs' own opposition to Merck's motion to dismiss.  *See* Memorandum in Opposition to Defendants' Motion to Dismiss Claim for Injunctive Relief, *Cain v. Merck & Co.*, CV 01 3441 (E.D.N.Y. Nov. 2, 2001), at 12 ("Cain Opp.") ("Plaintiffs, as representatives of all persons who have taken Vioxx or Celebrex, assert claims for . . . injunctive, equitable, ***and monetary*** relief" (emphasis added)).

Plaintiffs attempt to describe the first amended complaint's request for damages as "incongruous" and an "obvious error."  (Pls.' Opp. at 16.)  But there is nothing incongruous about seeking both monetary and equitable relief, and this is precisely what the *Cain* class sought, until its second amended complaint.  (*See* Mot. at 3); *see also* Initial Cain Compl. ¶ 60(c) (seeking remedy of "damages incidental to [class members'] procurement and ingestion of Vioxx and Celebrex"); Amended Class Action Complaint ¶ 68(c), *Cain v. Merck & Co.*, CV 01 3441 (E.D.N.Y. Aug. 1, 2001) (seeking remedy of "damages incidental to [class members'] procurement, taking and/or switching to Vioxx and Celebrex from alternative pain relievers, including but not limited to damages for wrongful death, heart attacks, strokes or any other cardiac illness they have already suffered"); *cf.* Second Amended Class Action Complaint ¶ 93(c), *Cain v. Merck & Co.*, CV 01 3441 (E.D.N.Y. Sept. 18, 2002) (seeking remedy of "damages incidental to [class members'] procurement, taking and/or switching to Vioxx and

Celebrex from alternative pain relievers, including damages based upon the value of the goods accepted and the value of goods accepted and the value the goods would have had if they had been as warranted).[5]

Plaintiffs also attempt to distinguish *Cain* by arguing that its class membership consisted of only "a discreet [sic] class" of persons who took Vioxx **and** Celebrex and accuses Merck of attempting to "mask" the true nature of the class.  (Pls.' Opp. at 15 & n.11.)  But as plaintiffs themselves observed, the *Cain* complaint suffered from "awkward" phrasing in a number of respects (Pls. Opp. at 16 n.12), and the *Cain* opposition to Merck's motion to dismiss makes clear that all persons who have taken either drug were members of the class.  (*See* Cain Opp. at 12 (noting plaintiffs represent "all persons who have taken Vioxx **or** Celebrex") (emphasis added).)  The language from the class definition in the initial *Cain* complaint is ambiguous and amenable to either construction; however, given the absurdity of the alternative proposed by plaintiffs, and in light of other circumstantial evidence in the complaint, the construction proposed by Merck and confirmed by later complaints is the more reasonable one.  *E.g.*, Initial Cain Compl. ¶ 1 (including in definition "persons who have taken **such** drugs" (emphasis added); *id.* ¶ 7 (noting that lead plaintiff Mary Lombardozzi took Vioxx but saying nothing about Celebrex); *id.* ¶ 8 (noting that lead plaintiff Dominick Lettieri took Celebrex but saying nothing about Vioxx); *id.* ¶ 15 (alleging that defendants manufactured "Vioxx **and** Celebrex," even though Merck manufactured only Vioxx and Pfizer manufactured only Celebrex).

*Second,* plaintiffs are wrong that the stacking rule does not apply to the *Cain* action because the court in that case never formally denied certification of the personal injury claims. As *Hunter v. American General Life and Accident Insurance Co.* makes clear, applying the

---

[5]    Plaintiffs' argument that the *Cain* court would have needed to send notice to absent class members if the second amended complaint truly dropped personal injury claims (Pls.' Opp. at 17 n.13), is not supported by the cases they cite, all of which relate to dismissed suits, not amended complaints.

stacking rule only in cases where a formal denial of class certification has been entered would encourage "spin-off litigation" in other contexts – including but presumably not limited to the settlement context – in which "counsel could initially pursue a broad definition in one jurisdiction, voluntarily narrow it for settlement purposes, dismiss any remaining claims, and then revive the dismissed claims in multiple suits in other jurisdictions while gaining the benefit of tolling from the earlier litigation."  384 F. Supp. 2d 888, 893 (D.S.C. 2005).  Once the universe of claims arising from a given transaction has been tested in one class proceeding, subsequent tolling should not be available.

Plaintiffs' only argument to the contrary is that *Hunter* involved the distinct context of settlement.  (Pls.' Opp. at 17 n.14.)  But they do not explain why that distinction amounts to a meaningful difference for the purpose of *American Pipe* tolling.  As in *Hunter*, the personal injury claims in *Cain* were "voluntarily abandoned in favor of a narrower definition" (Pls.' Opp. at 18 n.14) (quoting *Hunter*), and the same evils that the *Hunter* court believed would attend tolling of the abandoned claims in subsequent class actions would apply in this context as well. The stacking rule therefore should apply to *Cain*.

### 2. *American Pipe* Tolling Is Inappropriate In Any Event Because It Is Unreasonable To Rely On A Pending Personal Injury Class Action.

In response to Merck's argument that stacking aside, *American Pipe* tolling is altogether inappropriate in personal injury cases because they are so unlikely to be certified, plaintiffs do not even attempt to argue that reliance on a pending personal injury class action is reasonable. Rather, they argue that as an empirical matter, personal injury class actions are not "uncertifiable."  (Pls.' Opp. at 18.)  That is beside the point.  The relevant empirical observation is that there is a "national trend to deny class certification in drug or medical product liability/personal injury cases" like this one, *In re Am. Med. Sys.*, 75 F.3d 1069, 1089 (6th Cir.

1996); that such actions are usually not certifiable, *id.*; and that prospective **reliance** on the possibility that such an action will be certifiable is therefore **unreasonable**.[6]  In the personal injury context, therefore, plaintiffs "would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations," *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1125 (1988), a sentiment with which a number of federal courts have expressed their agreement.  (*See* Mot. at 15.)

Plaintiffs' solitary authority to the contrary is an unpublished opinion from this Court that assumed, in *dicta*, that *American Pipe* tolling applied in a personal injury case, and that did ***not*** ***reach*** the question whether reliance on personal injury class actions is reasonable.  *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, No. Civ.A. 94-0382, 2000 WL 282787, at *7 (E.D. La. Mar. 14, 2000) ("Assuming that the *American Pipe* doctrine *is* applicable . . . ."); *see also id.* at *6 (acknowledging but not analyzing the issue that "[f]ederal courts have also found *American Pipe* inapplicable to a mass-tort personal-injury litigation where the court is sitting in diversity jurisdiction, as it is here").  (*See* Pls.' Opp. at 19.)  *In re Factor VIII* is thus not even persuasive authority on the question whether reliance on a pending personal injury class is reasonable.

The requirement of reasonable reliance is the only limiting principle available to prevent *American Pipe* from becoming an "encouragement to lawyers . . . to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." *Am. Pipe*, 414 U.S. at 561 (Blackmun, J., concurring); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring) ("The tolling rule of *American Pipe* is a generous one, inviting abuse.").  Nonetheless, personal injury lawyers in this product liability case and others have sought to turn *American Pipe* into a limitless tolling device

---

[6]      Similarly, state-sponsored lotteries are not "unwinnable," but a person's reliance on the lottery as a source of income would be unreasonable.

by filing obviously uncertifiable actions and then delaying their resolution as long as possible in an effort to keep the doors of the court open indefinitely to mass tort claimants.  Because it is unreasonable to believe that a personal injury class would be certified in a pharmaceutical case like this, plaintiffs should be denied the benefits of *American Pipe* tolling regardless of the *Cain* case.

## II.     PLAINTIFFS' CLAIMS ARE BARRED UNDER THE LAWS OF THEIR HOME STATES.

Plaintiffs' heavy focus in their opposition brief on Louisiana's "liberal" discovery rule is essentially an admission that their claims are even weaker when their own states' laws are considered.  As set forth below, plaintiffs' arguments fail under Alabama, Kentucky and Tennessee law as well.

### A.     Plaintiff Edmonds' Claims Are Stale Under Alabama Law.

Plaintiffs concede that Edmonds' personal injury claim is untimely without the operation of tolling.[7]  Their only basis for such tolling is fraudulent concealment based on the same arguments they rely on for extending the discovery rule in Louisiana.  (Pls.' Opp. at 21 & n.19.) For the reasons already discussed, that argument fails.

As one Alabama court has already held in this litigation, plaintiffs cannot rely on Merck's actions regarding Vioxx to toll that state's limitation period based on fraudulent concealment. *Albright v. Merck & Co.*, No. CV05-2316, (Ala. Ct. Jefferson Cty. Dec. 14, 2006), Tr. at 2282-84

---

[7]     Plaintiffs argue that their fraud and warranty claims are timely.  This is incorrect, unless some tolling saves plaintiffs' claims.  Edmonds filed his complaint on November 7, 2005, over four years after his last injury, on September 2, 2001.  By the time of Edmonds' second injury, the *Cain* action was already pending and the results of the VIGOR study were already publicly available.  For the reasons explained by Merck in its initial motion, these facts were sufficient to trigger discovery in jurisdictions that observe a discovery rule (Mot. at 11 n.4), and they are likewise sufficient to deny Edmonds tolling under Alabama's fraudulent concealment doctrine, as discussed in the text.

Furthermore, for the reasons explained above, *American Pipe* tolling should be unavailable to Edmonds because it should not be available as a general matter in the Vioxx litigation.  Accordingly, all of Edmonds's claims, including his fraud and warranty claims, are untimely.

(granting judgment as a matter of law on negligence claim on statute of limitations grounds and expressly rejecting tolling under fraudulent concealment, even while sending claims for fraudulent concealment to the jury).  Plaintiffs' cases are not to the contrary because they involve situations where the existence of a cause of action itself had been concealed.  *Rutledge v. Freeman*, 914 So. 2d 364, 369 (Ala. Civ. App. 2004) (holding that, where plaintiff's lawyer misrepresented whether he could sue over his incarceration, limitations period was tolled).  Plaintiffs here point to no analogous act.  They do not allege, for example, that Merck suppressed the facts underlying its conclusions regarding the naproxen hypothesis; that hypothesis was an analysis of the results of the VIGOR study, which were publicly available.  They plainly do not allege that Merck lied to plaintiff Edmonds about whether he could sue.  *Rutledge* is thus inapposite, and *Albright* conclusively demonstrates that fraudulent concealment does not toll Alabama's limitation period on Edmonds's personal injury claims.

For these reasons and those set forth in Merck's initial motion, plaintiff Edmonds' personal injury claims are stale under Alabama law.[8]

**B.    Plaintiff Watson's Claims Are Stale Under Kentucky Law.**

Plaintiffs concede that Watson's claims are untimely without tolling, arguing instead that that either Kentucky's discovery rule or its not-yet-recognized *American Pipe* doctrine saves his claims.  Once again, plaintiffs are wrong.

Plaintiffs' discovery-rule argument simply repeats the arguments made under Louisiana law that the "naproxen hypothesis" and the 18-month assertions by Merck delay accrual of

---

[8]     Plaintiffs also argue that Merck has misread *Redman Homes Inc. v. Surtees*, 933 So. 2d 1100 (Ala. Civ. App. 2005), a case relating to tolling in the *American Pipe* context.  (Pls.' Opp. at 19 n.16.)  The important holding in *Redman* was simply that tolling is inappropriate when plaintiffs unreasonably rely on some device for resolution of their claims.  In *Redman*, the device upon which they sought to rely was admittedly not a personal injury class action, but rather an administrative remedy.  But plaintiffs offer no reason why that basic principle – that reliance should be reasonable before tolling should be awarded – is inapplicable in the personal injury class action context.

Watson's claims indefinitely.  (Pls.' Opp. at 23 & n.21.)  For the reasons already set forth above, these arguments are without merit.

With regard to *American Pipe* tolling, plaintiffs essentially ask the Court to predict that Kentucky would recognize a doctrine never before addressed in any Kentucky caselaw.  (Pls.' Opp. at 24-26.)  Apart from anecdotal citations from Kentucky cases looking to federal procedural rules (Pls.' Opp. at 24-26), plaintiffs' authority for the proposition that Kentucky would adopt *American Pipe* is limited to an unpublished opinion in which the Sixth Circuit applied *American Pipe* tolling to a claim under 42 U.S.C. § 1983, a ***federal cause of action***. *Highland Park Ass'n of Bus. & Enters. v. Abramson*, No. 94-6424, 1996 U.S. App. LEXIS 19122, at *3, 10 (6th Cir. July 3, 1996); (Pls.' Opp. at 25 (citing same).)  There is no dispute that *American Pipe* governs such a claim.  The only reason that court turned to Kentucky law was to determine the start of the tolling period, because aside from the *American Pipe* rule, state limitation and tolling rules govern federal claims arising under section 1983. *Highland Park*, 1996 U.S. App. LEXIS 19122, at *14 (applying rule of *Chardon v. Fumero Soto*, 462 U.S. 650 (1983)).  These authorities provide no basis for this Court to rely on Kentucky's as-yet unborn *American Pipe* doctrine.

Even if *American Pipe* did apply, plaintiffs do not attempt to reach so far as to have this Court adopt a cross-jurisdictional tolling doctrine on Kentucky's behalf.  Plaintiffs are satisfied that the fact that there is a Vioxx class action pending in federal court in Kentucky "obviates any cross-jurisdictional issues" since Watson's claim is also in federal court.  (Pls.' Opp. at 24 n.22.)  But the question is not whether all claims are in the federal system.  The question is whether Watson timely filed his claim under Kentucky ***law***.  In applying state limitation and tolling doctrines, the duty of the federal court is to determine whether a plaintiff's claim is timely under

those doctrines.  Any other rule would interrupt the operation of state law as to plaintiffs who file

in federal court, while leaving it in place to bar the claims of plaintiffs who file in state court

under the same limitations law, thereby violating the principle of *Erie Railroad Co. v. Tompkins*,

304 U.S. 64 (1938).  *See Guar. Trust Co. v. York*, 326 U.S. 99, 110 (1945) (concluding that state

limitations laws must be respected by federal courts under *Erie*).  For this reason too, Watson's

claims are barred under Kentucky law.

    C.     **Plaintiff Stinson's Claims Are Stale Under Tennessee Law.**

Although plaintiffs concede that *American Pipe* tolling is unavailable to plaintiff Stinson

under Tennessee law, they once again try to argue that their claims should be saved under the

state's discovery and fraudulent concealment tolling rules.  These arguments fail for the same

reasons they failed under the laws of the other states.

***First***, plaintiffs' discovery-rule argument again depends on the naproxen hypothesis and

the 18-month assertions.  (Pls.' Opp. at 29 & n.26.)  For the reasons outlined under Louisiana

law, these theories should not toll Tennessee's limitations period.

***Second***, with regard to fraudulent concealment, plaintiffs rely on *Bell v. Goforth*, 2006

WL 627189, at *7 (Tenn. Ct. App. Mar. 14, 2006), for the proposition that Merck's alleged

concealment of facts tolled plaintiffs' claims (Pls.' Opp. at 28), but, at a minimum, that tolling

should have ceased on the date of withdrawal.  Indeed, *Bell* itself acknowledges that tolling for

fraudulent concealment persists only so long as "the plaintiff could not have discovered the cause

of action despite exercising reasonable care and diligence," *id.*, the same standard that governs

accrual of claims under the discovery rule.  As already explained throughout this reply, plaintiffs

have given this Court no reason to believe that discovery should have occurred any later than September 30, 2004.[9]

Thus, plaintiff Stinson's claims are barred under Tennessee law.[10]

## III.   PLAINTIFFS MISREAD LOUISIANA'S CHOICE-OF-LAW RULE.

Plaintiffs also devote substantial attention in their opposition brief to the argument that Louisiana's prescription rules govern plaintiffs' claims (Pls.' Opp. at 5-9), but under Louisiana's choice-of-law rule, the Court should first determine whether plaintiffs' claims are timely under the laws of any of the relevant jurisdictions and leave the choice-of-law question to the end.  (*See* Mot. at 6-7, 10.)  Here, because the parties agree that plaintiffs' claims are governed either by Louisiana's prescription rules or by the limitations laws of plaintiffs' home states (Mot. at 7-10; Pls.' Opp. at 7) and because plaintiffs' claims are untimely regardless of which state's law is applied, the Court need not undertake that step of the analysis.

---

[9]      The Alabama court's ruling in *Albright* is further persuasive authority that fraudulent concealment should not be available in any event to toll the limitations period.

[10]      Plaintiffs again point to Stinson's other claims (Pls.' Opp. at 27), but those are only timely if the discovery rule or *American Pipe* tolling applies.  For the same reasons outlined above with respect to Edmonds' additional claims, these rules should not apply.

It is also worth noting that Stinson's warranty claim is not timely even with tolling.  Though plaintiffs are correct that Stinson's warranty claims are governed by a four-year limitations period, the statute establishing that period also includes a repose provision indicating that a suit must in any event be filed "within one (1) year after the expiration of the anticipated life of the product."  Tenn. Code Ann. § 29-28-103.  Tennessee law separately defines the "anticipated life" of a product as determined by any expiration date "placed on the product by the manufacturer when required by law."  *Id.* § 29-28-102(1).  Stinson's claim cannot be timely under this provision.

The FDA requires all drug products to bear an expiration date.  21 CFR § 211.137(a).  That date is determined in advance by stability testing pursuant to standards described in 21 CFR § 211.166.  *See* 21 CFR § 211.137(b).  Under this provision, the shelf life of Vioxx was determined to be 18 months.  Merck, VIOXX in Colorectal Cancer Therapy: Definition of Optimal Regime (VICTOR): Phase III, Ramdomised, Double Blind, Placebo Controlled Study of Rofecoxib (VIOXX®) in Colorectal Cancer Patients Following Potentially Curative Therapy § 5.1.2, at 6.)

Stinson's alleged injury date is October 14, 2000.  Even if he purchased his immediately preceding prescription of Vioxx on the same day, that prescription expired no later than April 14, 2002.  Stinson's warranty claim was thus stale on April 14, 2003, unless saved by tolling.  But even in the latter event, Stinson's claim was stale no later than a year after the withdrawal of Vioxx, just like his personal injury claims.

Even if a conflicts analysis were required, however, plaintiffs would have the Court undertake the wrong analysis.

**First,** plaintiffs misperceive the significance of the amendment of Article 3549. Plaintiffs contend that paragraph (C) of Article 3549 "dictates that Louisiana's prescription statute of limitations apply to these claims" because the limitations periods of plaintiffs' home states are procedural. (Pls.' Opp. at 7.) That is incorrect. Paragraph (C) applies only in cases where the limitations period of a plaintiff's home state is considered "substantive" – that is, part of the right claimed. In those cases, the out-of-state law will trump Louisiana's "procedural" prescriptive periods. Plaintiffs seek to infer a corollary rule that Louisiana's periods therefore trump out-of-state "procedural" limitations periods, but this reading of the statute would render paragraph (B) a nullity. Under paragraph (B), a court must first ask whether a plaintiff's claim is barred under the prescriptive rule of either Louisiana or his home state. If so, it must then bar the claim unless "maintenance of the action in this state is warranted by compelling considerations of remedial justice" or, in the case where Louisiana would not bar the action, maintenance of the action is "warranted by the policies of this state and its relationship to the parties or the dispute." La. C.C. Art. 3549(B). Under plaintiffs' reading, whether the limitations period of a plaintiff's home state is substantive or procedural would answer the question without any reference to the analysis required by paragraph (B). That reading is incorrect.

**Second,** plaintiffs misread paragraph (B) as well. (*See* Pls.' Opp. at 6 n.4, 8 n.6 (describing Merck's burden under the rule).) That paragraph puts the burden on ***plaintiffs*** to show that compelling considerations of justice warrant maintenance of a stale action in Louisiana. It is plain from the language of paragraph (B) that where – as here – Louisiana would bar an action, "the action shall be dismissed unless it would not be barred in the state whose law

would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice."  La. C.C. Art. 3549(B)(1).  Similarly, subparagraph (B)(2) permits an action that Louisiana would allow but a plaintiff's home state would bar, but not where "maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties" or where there are no "compelling considerations of remedial justice."  While it is a defendant's burden to prove that a plaintiff's action is time-barred under the relevant states' laws, it cannot fairly be the defendant's burden to prove an *absence* of compelling considerations of remedial justice.

*Third*, plaintiffs claim that because "Merck does business in Louisiana, distributed Vioxx in the state, and Louisiana residents suffered Vioxx related injuries, the interests in deterrence and compensation that underlie Louisiana's state limitations are implicated."  (Pls.' Opp. at 8 n.6.)  That might be true as a general matter, but not as to *these* plaintiffs, whose claims are untimely.  If Louisiana has any such interests with respect to the Vioxx litigation, they would be amply vindicated by the vast numbers of litigants who have already filed complaints in that jurisdiction in a timely matter.  (*See* Mot. at 9-10 (arguing that New Jersey's interests in the Vioxx litigation are vindicated by virtue of the large number of timely claims filed there).)  In other words, Louisiana's interest in the Vioxx litigation in no way hinges on the resolution of these three plaintiffs' claims, particularly since the parameters of its interests are defined in part by the effective operation of its prescription rules.[11]

---

[11]     Plaintiffs also argue that even though Louisiana's limitation period applies in this case, it will not apply in other cases, where the laws of plaintiffs' home states would not bar their claims.  (Pls.' Opp. 6 n.4.)  That is a difficult position to square with at least two of plaintiffs' other arguments – that Article 3549(C) means that Louisiana's prescriptive period will always trump the procedural limitations rules of other states (Pls.' Opp. at 7), and that there are always "high standards for displacing Louisiana's law of prescription" (Pls.' Opp. at 8).  However, the Court need not reach that issue here, because plaintiffs' claims are in fact not timely under their home states' laws.

16

## CONCLUSION

Plaintiffs' claims are time-barred regardless of whether the Court applies Louisiana prescription law or the law of their respective home states.  For the foregoing reasons and for the reasons set forth in Merck's initial motion, the motion for summary judgment should be granted.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

17

851120v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of January, 2007.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

851120v.1