# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | ) MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) |
| | ) SECTION: L |
| THIS DOCUMENT RELATES TO ALL | ) |
| CASES | ) JUDGE FALLON |
| | ) MAG. JUDGE KNOWLES |

## REPLY OF MERCK & CO., INC. ("MERCK") AND INSURERS IN SUPPORT OF THEIR JOINT MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER PREVENTING IRRELEVANT AND INAPPROPRIATE INSURANCE-RELATED DISCOVERY

Filed on behalf of:

Merck & Co., Inc.
American Alternative Insurance Company
CNA Casualty of California
Columbia Casualty Company
Continental Casualty Company
Continental Insurance Company
Federal Insurance Company
Lexington Insurance Company
North Rock Insurance Company Limited
Steadfast Insurance Company

*All counsel listed on back page*

February 1, 2007

854124v.1

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

I.  THE DISCOVERY PLAINTIFFS SEEK IS IMPROPER, DUPLICATIVE
   AND/OR IRRELEVANT TO THIS PRODUCT LIABILITY LITIGATION ................ 2

   A.  Plaintiffs' Arguments That Merck Has Not Complied With Rule
       26(a)(1)(D) And That They Need More Discovery To Determine The
       Extent Of Merck's Insurance Coverage Are Without Merit................................. 3

   B.  Because Fed. R. Evid. 411 Bars The Use Of Insurance Information To
       Establish Liability, The Burden Of Plaintiffs' Insurance Discovery
       Far Outweighs Any Likelihood Of Unearthing Admissible,
       Non-Duplicative Information.............................................................................. 5

   C.  The Hypothetical Possibility That Some Plaintiffs May File Direct Action
       Suits In The Future Does Not Justify The Heavy Burden That Plaintiffs'
       Requests Place On Merck's Insurers.................................................................. 7

II.  PLAINTIFFS' ATTEMPTS TO DISCOVER INFORMATION SUBJECT TO
    CONFIDENTIALITY ORDERS IN ONGOING INSURANCE ARBITRATIONS
    SHOULD BE DENIED............................................................................................. 9

III. PLAINTIFFS ARE NOT ENTITLED TO THE REGULATORY DISCOVERY
    SOUGHT FROM MERCK – AND THE INSURERS DO NOT HAVE
    RESPONSIVE DOCUMENTS TO THOSE REQUESTS. ......................................... 14

CONCLUSION .................................................................................................................. 16

854124v.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Associated Elec. & Gas Ins. Servs. Ltd. [AEGIS] v. European Reinsurance Co. of Zurich*,
   [2003] 1 All E.R. (Comm.) 253, 1 W.L.R. 1041 .................................................... 13

*Blockbuster Entm't Corp. v. McComb Video Inc.*,
   145 F.R.D. 402 (M.D. La. 1992) ........................................................................ 8

*Calabro v. Stone*,
   224 F.R.D. 532 (E.D.N.Y. 2004) ....................................................................... 4

*Caringal v. Kateria Shipping, Ltd.*,
   No. Civ. A. 99-3159, 2001 WL 874705 (E.D. La. Jan. 24, 2001) .......................... 11

*Contship Container Lines Ltd. v. P.P.G. Industries, Inc.*,
   No. 00 Civ. 0194 RCCHBP, 2003 WL 1948807 (S.D.N.Y. Apr. 23, 2003) .............. 12

*Dollar v. Long Mfg., N.C., Inc.*,
   561 F.2d 613 (5th Cir. 1977) ............................................................................. 7

*Dolling-Baker v. Merrett*,
   [1991] 2 All E.R. 890 (Ct. App.) ...................................................................... 10

*Excelsior College v. Frye*,
   233 F.R.D. 583 (S.D. Cal. 2006) ...................................................................... 5

*In re Talbott Big Foot, Inc.*,
   887 F.2d 611 (5th Cir. 1989) ............................................................................ 8

*Jackson v. Bayou Industries, Inc.*,
   1995 WL 133331 (E.D. La. March 28, 1995) ....................................................... 5

*Jorden v. Dolphin Towing, L.L.C.*,
   No. Civ. A. 03-222 SECTION "A"(4), 2004 U.S. Dist. LEXIS 4728 (E.D. La. 2004) ............. 5

*London & Leeds Estates Ltd. v. Parabas Ltd.*,
   [1995] 02 EG 134, [1995] 1 EGLR 102 ............................................................. 10

*Missouri Pacific R. Co. v. Aetna Cas. & Sur. Co.*,
   No. 3-93-CV-1898-D, 1995 WL 861146 (N.D. Tex. May 17, 1995) ...................... 5

*Native American Arts, Inc. v. Bundy-Howard, Inc.*,
   No. 01C1618, 2003 WL 1524649 (N.D. Ill. March 20, 2003) ............................... 5

*Oklahoma Pub. Co v. Continental Ins. Co.*,
   No. Civ-90-1251, 1991 WL 323804 (W.D. Okla. Nov. 5, 1991) ........................... 5

*Ramos v. Liberty Mut. Ins. Co.*,
   615 F.2d 334 (5th Cir. 1980) ............................................................................ 7

*Reed v. Gen. Motors Corp.*,
   773 F.2d 660 (5th Cir. 1985) ............................................................................ 5

*Tajik Aluminum Plant v. Ermatov*,
   [2006] All E.R. (D) 448 (Q.B.) ........................................................................ 10

854124v.1

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Tucker v. Ohtsu Tire & Rubber Co., Ltd.,*
191 F.R.D. 495 (Md. 2000)................................................................................. 11

*Zimmerman v. Int'l Cos. & Consulting, Inc.,*
107 F.3d 344 (5th Cir. 1997)................................................................................. 8

**Statutes**

La. Rev. Stat. Ann. § 22:655(B)(2) ........................................................................ 9

**Rules**

Fed. R. Civ. P. 26(a)(1)(D) .................................................................................... 3

Fed. R. Civ. P. 45 ................................................................................................... 7

Fed. R. Evid. 411................................................................................................ 5, 6

**Other**

1 *Journal of Insurance Coverage* 68, 71 (1998) ...................................................... 4

Mitchell F. Dolin and Ethan M. Posner, Understanding the Bermuda Excess
Liability Form, 1 *Journal of Insurance Coverage* 68, 71 (1998)............................... 4

*Couch on Insurance* § 1:5....................................................................................... 4

854124v.1

## INTRODUCTION

The core premise of plaintiffs' response to the Joint Motion for a protective order is that plaintiffs should be allowed to undertake extensive and burdensome insurance-related discovery not only of defendant Merck but also of its non-party Insurers on the off-chance that doing so will turn up some new evidence not contained in the 25 million pages of documents already produced by Merck or the dozens of depositions already taken by plaintiffs. According to plaintiffs, additional insurance discovery may be relevant to: (1) the extent of Merck's insurance coverage; (2) Merck's liability in product liability actions; or (3) the Insurers' potential liability in hypothetical and dubious "direct action" suits *not yet filed* by any Vioxx plaintiffs. As set forth in Merck's prior briefing and as explained in more detail below, each of these justifications is entirely meritless.

*First*, to the extent that plaintiffs do, in fact, seek further insurance discovery in order to identify insurance policies held by Merck that could cover a Vioxx judgment, Merck has already disclosed these policies pursuant to its Rule 26(a)(1)(D) obligations.[1] *Second*, to the extent plaintiffs hope to obtain more information related to Merck's knowledge of the alleged risks of Vioxx, the mere hope that plaintiffs might find non-duplicative relevant information is far outweighed by the burden of such additional discovery (particularly the burden on the non-party insurers), since insurance information is wholly inadmissible to show fault under the Federal Rules of Evidence. And *third*, the possibility that a small subset of plaintiffs may one day file

---

[1]      Despite plaintiffs' suggestion that Merck has been unhelpful in "resolving at least some of these issues" without involving the Court (Pls.' Resp. at 4), Merck has made clear its willingness to explain, in detail, the extent of Merck's insurance coverage for Vioxx losses. In fact, at the December 22, 2006 meeting with plaintiffs, Merck made one of its attorneys available to explain Merck's insurance system and provide plaintiffs with an insurance chart as an illustrative document to help plaintiffs' counsel understand the pertinent policies. (Attached as Ex. A to Pls.' Resp.) Though plaintiffs now suggest that the production of this information was late in coming (*see* Pls.' Resp. at 4 (noting that Merck "finally provided the PSC with an insurance coverage chart" at the December 22, 2006 meeting)), Merck was never asked, nor had any obligation, to prepare or produce such a document prior to the meet-and-confer with the PSC. Thus, plaintiffs' suggestion that Merck sought "to avoid any explanation of Merck's complex insurance system" (Pls.' Resp. at 7) is entirely without basis.

direct action claims against one or more of Merck's insurers cannot warrant the broad discovery sought here and now.

Plaintiffs' argument that discovery related to ongoing, confidential insurance arbitration proceedings should be allowed in this case is no more persuasive. Those proceedings are subject to confidentiality orders, and this Court should not interfere with such orders absent an overriding, compelling need for the information at issue. Plaintiffs' suggestion that materials subject to a confidentiality order are "presumptively discoverable" is precisely backward (Pls.' Resp. at 2), and plaintiffs have not made – and cannot make – the required showing of need to justify vitiating the confidentiality orders here.

Finally, plaintiffs also fail to demonstrate any legitimate need for the regulatory materials they seek. Moreover, the Insurers, to their knowledge, have not received any subpoenas from the DOJ or SEC requesting information relating to Vioxx and thus have no information on these regulatory investigations to produce.

For these reasons and those set forth in the joint motion filed by Merck and the Insurers, plaintiffs should be barred from undertaking this discovery.

## <u>ARGUMENT</u>

### I.    <u>THE DISCOVERY PLAINTIFFS SEEK IS IMPROPER, DUPLICATIVE AND/OR IRRELEVANT TO THIS PRODUCT LIABILITY LITIGATION.</u>

Plaintiffs' Response provides three supposed rationales for conducting extensive and burdensome insurance-related discovery. However, none of these grounds justifies their requests. *First*, plaintiffs' suggestion that additional insurance discovery is needed because Merck has refused to disclose all policies responsive to Fed. R. Civ. P. 26(a)(1)(D) is contrary to fact. *Second*, plaintiffs' claim that the additional discovery may turn up information relevant to Merck's liability in the product liability actions merely reinforces Merck's argument that

2

plaintiffs seek to conduct an unnecessary and inappropriate "fishing expedition." And ***third***, plaintiffs' claim that the ***theoretical*** prospect of direct action suits justifies this insurance discovery is not supported by either fact or law.

### A.    Plaintiffs' Argument That They Need More Discovery To Determine The Extent Of Merck's Insurance Coverage Because Merck Has Not Complied With Rule 26(a)(1)(D) Is Without Merit.

Plaintiffs first suggest that additional discovery of insurance-related materials is necessary because Merck has refused to comply with its obligation under Federal Rule 26(a)(1)(D) to provide all of the policies capable of satisfying a Vioxx judgment in this litigation. (Pls.' Resp. at 2 ("Merck has violated FRCP 26(a)(1)(D)'s basic requirement that all possibly relevant policies be produced").) According to plaintiffs, Merck should have produced insurance policies going back to 1990 because "Vioxx was in development and/or clinical trials since at least 1990." (Pls.' Resp. at 2; *see id* at 19.)

However, plaintiffs' suggestion that they are entitled to all insurance policies "in effect during the Vioxx era" (Pls.' Resp. at 7) is contrary to Rule 26(a)(1)(D), which states that a party is only required to disclose those insurance agreements "under which any person carrying on an insurance business ***may be liable to satisfy part or all of a judgment***." Fed. R. Civ. P. 26(a)(1)(D) (emphasis added). As this Court is well aware, Vioxx was not introduced to the market until 1999, and there is no Vioxx plaintiff who could have taken the drug – or claim that he or she suffered injury as a result of taking the drug – before that time. Accordingly, only policies dating from 1999 would be theoretically capable of satisfying a Vioxx judgment in this litigation, and Merck has disclosed all of these policies. In fact, Merck has disclosed all policies dating back to 1996.[2]

---

[2]    Moreover, all of the liability policies that Merck had in place before 1996 were either "claims-made" or "occurrence-reported" policies. In a "claims-made" policy, coverage is available, subject to other policy terms and

854124v.1

Nor do plaintiffs' cases justify production of insurance policies related to time periods prior to the introduction of Vioxx on the market.  For example, in *Calabro v. Stone*, 224 F.R.D. 532 (E.D.N.Y. 2004) (Pls.' Resp. at 21), the court permitted disclosure of the plaintiff's current insurance policies (after an accident that occurred under prior policies) on the ground that they "***may be relevant***" to the issue of whether recovery could be made from policies in effect at the time of the accident.  *Id* at 533-534 (emphasis added).  Here, however, the insurance policies that pre-date the release of Vioxx cannot be responsive to plaintiffs' claims and do not fall within the scope of Rule 26(a)(1)(D).  Thus, Merck is not asking plaintiffs to "take its word" that pre-1999 policies are irrelevant; it is simply a fact that they do not cover potential Vioxx-related losses.

In short, Merck produced all of the policies falling within the scope of Rule 26(a)(1)(D) a year ago, and plaintiffs have never suggested that this production fell short until the filing of their present Response.[3]  Because Merck has fully discharged its insurance disclosure obligation under the Federal Rules by providing all of the pertinent policies to plaintiffs, there is no need for duplicative discovery on this issue.

> **B.      Because Fed. R. Evid. 411 Bars The Use Of Insurance Information To Establish Liability, The Burden Of Plaintiffs' Insurance Discovery Far Outweighs Any Likelihood Of Unearthing Admissible, Non-Duplicative Information.**

Plaintiffs also argue that additional insurance discovery is reasonably likely to uncover evidence relevant "to establishing negligence or some other level of fault of Merck" in Vioxx

---

conditions, only if the claim is made against the insured during the policy period.  In an "occurrence-reported" policy, coverage is available, subject to other policy terms and conditions, only if notice of an "occurrence" is reported to the insurer during the policy period.  *See Couch on Insurance* § 1:5; Mitchell F. Dolin and Ethan M. Posner, Understanding the Bermuda Excess Liability Form, 1 *Journal of Insurance Coverage* 68, 71 (1998).  Both of these types of policies differ markedly from standard "occurrence" policies, which require that the "occurrence" or injury take place during the policy period.  By definition, no claims were or could have been made, and no occurrences were or could have been reported, with regard to plaintiffs' claims, before 1999 when Vioxx was introduced to the market.

[3]      If, for some reason, plaintiffs believe they are missing a pertinent policy, Merck would be amenable to discussing their concerns and, if appropriate, producing such policy.  Merck has never objected to the  production of material required to be disclosed under Rule 26(a)(1)(D).

product liability actions.[4]  (Pls.' Resp. at 11.)  However, this argument merely highlights why the discovery is inappropriate.

*First*, as noted in the Joint Motion (Joint Motion at 14), it is well settled law that evidence of insurance cannot be admitted in an underlying tort action to establish liability or fault, and both this Court and the U.S. Court of Appeals for the Fifth Circuit have strictly enforced this principle.  *See, e.g.,* Fed. R. Evid. 411 ("[E]vidence that a person was or was not insured against liability [is not admissible] upon the issue whether the [person] acted negligently or otherwise wrongfully."); *Reed v. Gen. Motors Corp.*, 773 F.2d 660 (5th Cir. 1985) (reversing jury verdict in favor of personal injury plaintiffs where court had admitted evidence of insurance coverage in violation of Rule 411); *Jorden v. Dolphin Towing, L.L.C.*, No. Civ. A. 03-222 SECTION "A"(4), 2004 U.S. Dist. LEXIS 4728, *12-13 (E.D. La. 2004) (granting motion to exclude evidence of insurance from tort trial and ordering that "[p]laintiff shall not directly mention the *issue of insurance* in the presence of the jury") (emphasis added); *Jackson v. Bayou Industries, Inc.*, 1995 WL 133331, *3 (E.D. La. March 28, 1995) (granting defendants' motion to exclude all evidence related to his insurance coverage, or lack thereof, despite plaintiffs' claim that such evidence was relevant to the issue of punitive damages, because plaintiffs could not show that insurance evidence was specifically relevant to show "agency, ownership, or control, or bias or prejudice of a witness" – matters that are not at issue here).

---

[4]      Plaintiffs claim that several cases cited in the Joint Motion for the proposition that Merck has met its disclosure requirement under Rule 26(a)(1)(D), namely *Excelsior College v. Frye*, 233 F.R.D. 583 (S.D. Cal. 2006) (Pls.' Resp. at 23), *Oklahoma Pub. Co v. Continental Ins. Co.*, No. Civ-90-1251, 1991 WL 323804 (W.D. Okla. Nov. 5, 1991) (*id.* at 24), *Missouri Pacific R. Co. v. Aetna Cas. & Sur. Co.*, No. 3-93-CV-1898-D, 1995 WL 861146 (N.D. Tex. May 17, 1995) (*id.* at 24), and *Native American Arts, Inc. v. Bundy-Howard, Inc.*, No. 01C1618, 2003 WL 1524649 (N.D. Ill. March 20, 2003) (*id.* at 23), do not support the idea that discovery of insurance-related materials beyond the applicable policies is irrelevant and impermissible pursuant to Rule 26(b).  However, plaintiffs fail to address those cases that the Joint Motion ***actually*** cited for the proposition that the insurance-related requests are beyond the scope of permissible discovery, such as *Potomac Electric*, and *American Medical Systems*.  As those cases demonstrate, courts refuse to order disclosure of insurance information not required by 26(a)(1)(D) where, as here, such information is irrelevant to plaintiffs' claims.

5

Despite the Joint Motion's reference to such authorities, plaintiffs do not discuss Fed. R. Evid. 411 or the many cases interpreting its provisions.  Instead, plaintiffs essentially admit that their requests are specifically intended to serve this improper objective.  (*See* Pls.' Resp. at 8-11.) Accordingly, plaintiffs' requests are not reasonably calculated to lead to discovery of admissible evidence.[5]

**Second**, as noted in the Joint Motion, Merck has already produced approximately 25 million pages of documents in response to plaintiffs' requests for materials that ***are*** potentially relevant to the issue of "what Merck knew about Vioxx's risks and when Merck knew it."  (Pls.' Resp. at 9.)  Plaintiffs are unable to identify any specific category of liability-related information that they believe may be in insurance files that would not be in the thousands of company files already turned over in this litigation.  And they should not be allowed to undertake burdensome discovery (particularly from non-parties), in the mere hope that there may be something in an insurance file that was missed in ordinary discovery.

Plaintiffs also attempt to argue that the requested insurance discovery may reveal relevant evidence relating to prior Vioxx-related insurance claims, and perhaps settlements, by other claimants who presumably are not represented by current plaintiffs' counsel.  In support of this proposition, plaintiffs cite a line of cases allowing discovery of "prior similar accidents" as relevant to proof of notice.  (Pls.' Resp. at 13.)  However, these cases have no application here – indeed, plaintiffs have not and cannot identify any relevant "prior similar incident" on which such discovery requests may be based.  The product at issue in this litigation is not a crane (*see Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977) (Pls.' Resp. at 12)), or a mast (*see*

---

[5]     Moreover, there is no merit to plaintiffs' claim that insurance files may contain new evidence relevant to the timing of Merck's discovery of the risks associated with Vioxx.  Contrary to plaintiffs' assertion, Merck's counsel has not said, at any time, that Merck "provided notice of 'integrated loss' to its insurers as much as three years before it actually removed Vioxx from the marketplace."  (Pls.' Resp. at 10.)

854124v.1

*Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334 (5th Cir. 1980) (Pls.' Resp. at 12-13)), or a comparable product involved in an accident.  Rather, Vioxx is a prescription drug, subject to strict FDA approval and regulation, and the facts relevant to Vioxx's science and safety have been subject to thorough discovery in this litigation.  Further, Merck long ago reported – and already produced to plaintiffs – adverse event data from clinical trials and post-approval field reports related to Vioxx.  There is simply no reason for plaintiffs to go to Merck's insurers to obtain this same information again.[6]

  **C.**  **The Hypothetical Possibility That Some Plaintiffs May File Direct Action Suits In The Future Does Not Justify The Heavy Burden That Plaintiffs' Requests Would Place On Merck's Insurers.**

  Plaintiffs' third argument, that the burdensome insurance discovery sought from Merck's insurers is justified because it is relevant to potential direct action suits by product liability plaintiffs against Merck's insurers (Pls.' Resp. at 40) further highlights why the discovery requests at issue are inappropriate.

  For starters, plaintiffs fail to address the fact that the Insurers, as non-parties to this litigation, should not be burdened with these discovery requests pursuant to Fed. R. Civ. P. 45. As outlined in the Joint Motion, the burden for obtaining third-party discovery is a heightened one – plaintiffs must show that they ***need*** this information from the Insurers.  (Joint Motion at 24.)  Rather than attempt to address the cases cited by Merck and the Insurers, plaintiffs simply ignore them, asserting instead – without any legal support – that their requests for insurance-

---

[6]  Plaintiffs' argument that the burden of gathering Vioxx-related information would be minimal because the Insurers have already undertaken similar efforts in connection with the London Arbitration (Pls.' Resp. at 39), is untrue.  As plaintiffs well know, providing the information and materials sought by plaintiffs would in fact impose substantial burdens on all the Insurers, given the broad scope of discovery sought by plaintiffs.  Moreover, to the extent that plaintiffs seek the Insurers' work product, the requested discovery is objectionable on that ground as well.  Nor do plaintiffs note that several Insurers from whom they seek discovery (including Lexington Insurance Company, Continental Casualty Company, Columbia Casualty Company, CNA Casualty Company of California and Continental Insurance Company), are not parties to any of the arbitrations at issue.

related information "satisfy the normal liberal discovery standard."  (Pls.' Resp. at 38.)  That is

the wrong test for third-party discovery and reflects an admission by plaintiffs that they are

unable to satisfy the right one.

Plaintiffs attempt to rationalize the additional Insurer discovery by asserting that some

day in the future, some Vioxx plaintiffs *might* allege direct action claims against the Insurers.

However, it is a basic principle of civil discovery that a plaintiff's requests must be relevant to

actually *pleaded* claims.  None of plaintiffs' cases support the proposition that it is appropriate to

serve burdensome discovery in advance of hypothetical lawsuits.  For example, in *Blockbuster*

*Entm't  Corp. v. McComb Video Inc.*, 145 F.R.D. 402 (M.D. La. 1992) (Pls.' Resp. at 42), the

court ordered insurance discovery where plaintiffs had *actually filed* direct action claims and the

insurer had denied coverage.  *Id* at 405.  Similarly, *In re Talbott Big Foot, Inc.*, 887 F.2d 611

(5th Cir. 1989) (Pls.' Resp. at 43), the court denied a stay of an actual, pending direct action suit

and offered no comment or guidance whatsoever on the propriety of insurance-related discovery

even in the context of that pending direct action, let alone the product liability context where no

direct action has even been alleged.  *See also Zimmerman v. Int'l Cos. & Consulting, Inc.*, 107

F.3d 344 (5th Cir. 1997) (Pls.' Resp. at 43) (ordering discovery where plaintiffs had already

brought a direct action suit).

Moreover, plaintiffs' claim that, if their discovery requests are denied here, Merck and its

Insurers will likely be subject to direct action suits brought by "hundreds or thousands" of Vioxx

plaintiffs in dozens of jurisdictions throughout the U.S. is pure hyperbole.  In fact, the

overwhelming majority of U.S. jurisdictions do not have direct action statutes:  indeed, plaintiffs

only refer to  two states, Louisiana and Wisconsin (plus Puerto Rico and Guam), that have such

laws.  And under the Louisiana statute, for example, such claims would be viable, if at all, only if

brought by or on behalf of claimants allegedly injured *in Louisiana* and against insurers subject to jurisdiction *in Louisiana*. *See* La. Rev. Stat. Ann. § 22:655(B)(2).

In addition, as stated in the Joint Motion (at 3) and as Merck's public statements have made clear (Pls.' Resp. at Ex. B), Merck's payments and reserves for Vioxx-related defense costs to date already exceed the full limits of Merck's liability insurance program, and Merck is already actively pursuing all of that coverage through experienced insurance counsel. As a result, there is no legitimate reason for any plaintiffs – let alone hundreds or thousands – to pursue direct action claims related to these policies and no basis to believe that any plaintiff would benefit from any such claim. Accordingly, plaintiffs' suggestion that the discovery sought here is necessary to fulfill the "efficiency goal" of the MDL is without any basis.

In short, this Court should not force Merck and particularly its Insurers to produce a broad range of irrelevant and duplicative insurance materials to the plaintiffs based on the mere possibility that a very small percentage of Vioxx claimants may one day decide to allege dubious direct action claims against Merck's insurers. Rather, plaintiffs' continued assertion that their insurance-related discovery requests are relevant to potential direct action suits only underscores the fact that such discovery is irrelevant to any present claim at issue in this litigation. For this reason too, the Joint Motion should be granted.

## II.   PLAINTIFFS' ATTEMPTS TO DISCOVER INFORMATION SUBJECT TO CONFIDENTIALITY ORDERS IN ONGOING INSURANCE ARBITRATIONS SHOULD BE DENIED.

Plaintiffs' arguments in support of court-ordered disclosure of the insurance arbitration information currently protected by foreign confidentiality orders – and their suggestion that the mere existence of such orders renders the confidential materials "presumptively discoverable" – are also without merit. If plaintiffs were correct, then confidentiality orders prohibiting disclosure to third parties, which are commonly issued in insurance proceedings in U.S. courts as

well as foreign tribunals, would be completely meaningless.  In fact, plaintiffs offer the court no legitimate reason to disclose documents that should – in the considered view of another tribunal – be subject to protection.  Because plaintiffs have failed to establish that disclosure is necessary, this discovery should be prohibited.

In their Response, plaintiffs set forth a body of caselaw supporting the proposition that this Court **can** order discovery of confidential arbitration materials[7] – a point which Merck and the Insurers do not dispute.  The question before the Court, however, is whether it **should** order disclosure of materials subject to these confidentiality restrictions – and the clear answer to that question is no.

Plaintiffs argue that the London confidentiality orders provide no basis for restricting discovery regarding the SRI Arbitration because they allow for disclosure if mandated by a court or tribunal.  (Pls.' Resp. at 2.)  However, the fact that the confidentiality orders provide that a party will not be held in contempt if it is forced to disclose arbitration information pursuant to a court order says nothing about whether such a court order should be issued.  Indeed, plaintiffs acknowledge, citing *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495 (Md. 2000), that proceedings before other tribunals are "always entitled to comity, courtesy, and respect."  (Pls.' Resp. at 31.)  Plaintiffs' unremarkable observation that these important principles "are not absolute" (*id.*) does not mean that the confidentiality orders should be set aside in this case

---

[7]      *See, e.g., Dolling-Baker v. Merrett*, [1991] 2 All E.R. 890, 899 (Ct. App.) (Pls.' Resp. at 27);  *Tajik Aluminum Plant v. Ermatov*, [2006] All E.R. (D) 448, at ¶ 83 (Q.B.) (Pls.' Resp. at 28);  *London & Leeds Estates Ltd. v. Parabas Ltd.*, [1995] 02 EG 134, [1995] 1 EGLR 102 (Pls.' Resp. at 28).   Plaintiffs' reliance on *London & Leeds* is particularly revealing.  There, the court held that disclosure of an expert report from a prior confidential arbitration was required for the fair resolution of the proceedings because it had been shown to the parties by those who participated in the prior arbitration and was otherwise admissible as rebuttal evidence.   The court also held, however, that a different expert report that had not previously been disclosed and was not shown to be admissible rebuttal evidence was not required and that the request for it was an impermissible "fishing expedition."  *Id.* The discovery sought by plaintiffs here has not been previously disclosed and is generally inappropriate for all the reasons discussed *supra*.  Accordingly, it is far more analogous to the "fishing expedition" that the court did not allow in *London & Leeds* than the narrow discovery it permitted.

without any showing of need by plaintiffs.  As Merck and its Insurers have set forth in more

detail in their prior briefing, a court should not order disclosure of materials subject to an express

confidentiality order unless plaintiffs can prove that the discovery is ***both*** relevant and necessary

to fairly resolve plaintiffs' claims – the same two-part standard applied by Judge Berrigan in the

case on which plaintiffs base the bulk of their argument.  *See Caringal v. Kateria Shipping, Ltd.*,

No. Civ. A. 99-3159, 2001 WL 874705, *1 (E.D. La. Jan. 24, 2001) (disclosure of confidential

arbitration documents is appropriate ***only*** if "(1) the documents are relevant and (2) disclosure is

necessary for disposing fairly of the cause or matter or for saving costs").  In *Caringal*, the court

allowed the specific discovery requested because Judge Berrigan was simply unwilling to

conclude that, on the facts presented in that case, the magistrate judge had been "clearly

erroneous" in finding that the proper showing of need had been made.

          In applying the *Caringal* standard to the facts of this case, it is clear that disclosure

prohibited by the express confidentiality orders is not warranted.  Even if some information at

issue in the insurance arbitrations may be relevant to this litigation, the second prong of the

*Carnigal* test is not satisfied by plaintiffs' request.  Plaintiffs have not made – and cannot make –

any showing that the disclosure of confidential arbitration information is  necessary for disposing

fairly of this matter.   To the contrary, plaintiffs already have pursued (and indeed, are continuing

to pursue) discovery that directly and properly relates to the tort issues involved in the product

liability proceedings,  Thus, there is no need to pursue such information again from collateral

and confidential insurance arbitrations.

          Ordering disclosure of this information will also impose excessive costs on Merck and

particularly the non-party Insurers, all of whom will be forced to conduct exhaustive and broad

searches for the wide range of information sought and bear the burden of producing all of these

materials to plaintiffs.  While plaintiffs continue to argue that such insurance-related discovery is necessary to determine "what Merck knew and when they knew it," Merck has already disclosed millions of documents that directly address this question.  Further, by seeking out documents created in preparation for the arbitration, plaintiffs are simply asking the Insurers to do their job for them.  Thus, plaintiffs cannot demonstrate any genuine need for the arbitration-related discovery.[8]

Nor do the other cases cited by plaintiffs support their requests for the arbitration documents.  For example, plaintiffs cite *Contship Container Lines Ltd. v. P.P.G. Industries, Inc.*, No. 00 Civ. 0194 RCCHBP, 2003 WL 1948807 (S.D.N.Y. Apr. 23, 2003) (Pls.' Resp. at 30), as an example where a court ordered disclosure of arbitration materials.  However, in *Contship*, the court focused on the fact that there was no express confidentiality order and that the disclosure was necessary for disposing of the matter fairly and inexpensively because the documents would add to the information available to the parties.  *Id* at *2 (emphasis added).  Here, in contrast, there is an express order of confidentiality and disclosure would not add anything at all material to the plaintiffs' available information.  Such disclosure cannot be described as "necessary" by any means.

Plaintiffs' reliance on *Associated Elec. & Gas Ins. Servs. Ltd. [AEGIS] v. European Reinsurance Co. of Zurich*, [2003] 1 All E.R. (Comm.) 253, 1 W.L.R. 1041 (Privy Council) (Pls.' Resp. at 37), is similarly misplaced.  While the court there did order the confidential

---

[8]       Even under the balancing approach used by other courts in addressing domestic protective orders, disclosure of the arbitration materials would not be warranted.  (*See* Pls.' Resp. at 32-35.)  First, the purpose of the confidentiality orders entered by the London tribunal is to promote arbitration proceedings by ensuring that information disclosed during such proceedings is not used against the participants.  Second, the relevant arbitration is still in progress, making disclosure particularly inappropriate because it could undermine the results in that proceeding.  And third, turning those proceedings into a fishing expedition for product liability lawyers would penalize Merck for pursuing its claims for insurance coverage by providing plaintiffs with documents and testimony that would not otherwise be available in this litigation and that the tribunals presiding over the arbitration proceedings have expressly ruled are inappropriate for discovery.

854124v.1

documents produced, it did so because that case involved a secondary arbitration between the *same parties* and thus, the general confidentiality principles that the court reaffirmed did not apply to the unique facts at hand.  Obviously a proceeding between the same parties does not invoke the same confidentiality concerns that arise here, where plaintiffs are complete strangers to the relevant arbitration.[9]

Finally, plaintiffs' assertion that Merck is hiding underlying facts behind the arbitration confidentiality orders is false and unfair.  The only materials Merck has declined to produce in reliance on the confidentiality orders are materials defined as "confidential information" in those orders.  This includes only materials specifically generated *in and for* those arbitrations, including "the notice of arbitration, pleadings, communications with arbitrators, documents produced by the Parties during the course of disclosure (other than documents produced which are in the public domain), statements of fact and expert witnesses, exhibits, memoranda, and hearing transcripts."  (Barnett Decl., as filed with Joint Motion Ex. P.)  As plaintiffs well know, Merck has not withheld from plaintiffs any documents provided to the Insurers that are responsive to plaintiffs' non-insurance discovery requests, *i.e.*, documents that exist outside the arbitrations, that were not prepared expressly for the arbitrations, and that relate to underlying Vioxx facts and issues.  Thus, there are no such documents that plaintiffs do not independently and already have.

---

[9]     The confidentiality concerns are all the greater because plaintiffs have chosen not to include in their discovery requests several of Merck's insurers who are involved in the London arbitrations (including its lead insurer, SRI), depriving those entities of an opportunity to be heard on this issue.  In addition, because plaintiffs *have* included insurers who are not parties to the London arbitrations, the disclosure of materials from the arbitrations would compromise the confidentiality orders not only as to the plaintiffs but also as to other insurers who have no right to the information in question.

854124v.1

In sum, plaintiffs have not demonstrated a sufficient need for the arbitration materials to merit overruling the confidentiality orders issued in those proceedings.  Accordingly, the Court should bar discovery of the confidential arbitration documents plaintiffs seek from Merck and the Insurers.

III.   **PLAINTIFFS ARE NOT ENTITLED TO THE REGULATORY DISCOVERY SOUGHT FROM MERCK – AND THE INSURERS DO NOT HAVE RESPONSIVE DOCUMENTS TO THOSE REQUESTS.**

Tacked on to the ends of plaintiffs' deposition notices served on Merck and the Insurers are demands for documents and deposition testimony regarding (1) subpoenas served on Merck by the U.S. Department of Justice ("DOJ") and (2) "any and all investigations of Merck by the United States Securities and Exchange Commission" ("SEC").  Plaintiffs have provided no explanation of how this discovery is connected to Merck's insurance or why such broad discovery – the SEC request is not even limited to Vioxx – is warranted.[10]

In reality, discovery aimed at regulatory investigations is not new.  Plaintiffs' master discovery included both an interrogatory and document request seeking information concerning investigations by government agencies with regard to Vioxx and the production of all documents related thereto.  Merck served its objections and responses to the PSC master discovery on September 15, 2005.  Merck supplemented its master interrogatory responses on March 1, 2006, and supplemented its response to the master document requests on October 12, 2006.  In both its original and supplemental responses, Merck made plain its objection to discovery aimed at government investigations and the bases for its objection.  At no time did plaintiffs ever file a motion to compel a further response to the interrogatory or for the production of documents.

---

[10]     During the December 22, 2006 meet and confer, the PSC representatives stated that these two requests were limited to information Merck provided the DOJ and SEC regarding Merck's insurance.  While that explanation offered a tenuous connection with this insurance-directed discovery, the requests as served are not so limited and the PSC has now walked away from this position.

Instead, plaintiffs served their 30(b)(6) deposition notices and attached document requests apparently in an effort to obtain a subset of this information, limited to the DOJ and SEC.

This procedural posture makes plain that plaintiffs are not entitled to any order compelling testimony or document productions by Merck or its insurers concerning investigations by the SEC or DOJ.  In fact, to date, plaintiffs have articulated no basis why they are entitled to such discovery or provided any evidence that the investigations by the SEC and DOJ are in any fashion congruent with plaintiffs' global discovery efforts in this MDL.

Plaintiffs' statement in their Response regarding narrowing these discovery requests to now seek "only testimony regarding communications made on behalf of the company to the regulatory agencies" and "only those documents that Merck exchanged with the agencies and those in-house documents that do not reflect the advice of counsel" (Pls.' Resp. at 46) provides no justification for this sweeping discovery directed at Merck.  This applies with even more force with respect to the Insurers, since there is no reason to believe they would have *any* responsive documents to these two requests.[11]

Instead of making the required showing, plaintiffs devote a significant portion of their Response to setting forth a litany of cases holding that privilege is waived as it relates to information disclosed to government agencies.  This recitation is largely beside the point. Despite plaintiffs' offer to narrow the scope of its requests to exclude privileged documents, the backdoor manner in which plaintiffs have pursued this discovery make it inevitable that both the testimony of a corporate designee or the demanded document production will involve significant privilege and work product issues.  Put simply, there is likely no corporate representative at Merck who could testify as to such productions to the SEC or the DOJ who is not either in-house

---

[11]    As the Insurers have already asserted in their Joint Objections to the Document Requests (at ¶¶ 26-27), the Insurers, to their knowledge, have not received any subpoenas from the DOJ or SEC requesting information relating to Vioxx and thus have no information on these regulatory investigations to produce.

854124v.1

counsel or an outside attorney.  Plaintiffs have flatly failed to provide this Court with any justification for why it should be permitted to depose a Merck attorney regarding Merck's response to these government investigations.  Rather, this discovery appears to mirror plaintiffs' effort to piggyback on the efforts of counsel for the Insurers by taking discovery of the insurance arbitration matter.  Significantly, if plaintiffs were to seek the same information from the DOJ or SEC through the Freedom of Information Act or regulatory requests for documents or testimony, the government could raise significant legal and procedural objections aimed at protecting the government's investigations and deliberative process.  There is no reason, particularly on the record before this Court, to permit plaintiffs to end-run these protections by seeking this information directly from Merck and the Insurers.

For these reasons, the Joint Motion should be granted as to the government investigation discovery as well.

## CONCLUSION

For the reasons set forth above, and for all of the reasons set forth in prior briefing by Merck and the Insurers, the Joint Motion to quash and/or for protective order should be granted.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

16

854124v.1

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

854124v.1

Continental Casualty Company
Columbia Casualty Company
CNA Casualty Company of California
Continental Insurance Company
North Rock Insurance Company Limited


By:  */s/ Carl E. Hellmers III*
Carl E. Hellmers III
Frilot Partridge, LC
1100 Poydras Street, Suite 3600
New Orleans, Louisiana 70163
504-599-8000

Patrick T. Nash
Zubair Khan
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606-5076
312-704-7711

Federal Insurance Company


By:  */s/ Paul N. Farquharson*
Paul N. Farquharson
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, Maryland 21201
410-576-4742


Steadfast Insurance Company


By:  */s/ Glen E. Mercer*
Glen E. Mercer (#21752)
Salley, Hite, Rivera & Mercer, LLC
365 Canal Street
Suite 1710
New Orleans, Louisiana  70130
504-566-880

854124v.1

Antonia B. Ianniello
Molly Poag
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, D.C.  20038-1795
202-429-3000


Lexington Insurance Company


By:  */s/ Charles E. Leche*
Charles E. Leche (08218)
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130-3672
504-593-0790

Marlene Monteleone
Bivona & Cohen, P.C.
Wall Street Plaza
88 Pine Street
New York, New York  10005-1886
212-363-3100


American Alternative Insurance Company


By:  */s/ David F. Bienvenu*
David F. Bienvenu (La. Bar. No. 03070)
Nathan L. Schrantz (La. Bar. No. 21864)
Simon, Peragine, Smith & Redfearn, L.L.P.
1100 Poydras Street., 30th Floor
New Orleans, LA 70163
Phone: 504.569.2030
Fax: 504.569.2999

William McGrath
William Quackenboss
Smith, Stratton, Wise, Heher & Brennan, LLP
2 Research Way
Princeton, New Jersey 08540
609-924-6000

854124v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Brief has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 1st day of February, 2007.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

854124v.1