# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| THIS DOCUMENT RELATES TO ALL | ) | |
| CASES | ) | JUDGE FALLON |
| | ) | MAG. JUDGE KNOWLES |

## PSC'S SURREPLY IN OPPOSITION TO MERCK AND INSURERS MOTION FOR PROTECTIVE ORDER REGARDING INSURANCE DISCOVERY

## TABLES OF CONTENTS

**Page**

I.  MERCK FAILS TO DEFEND ITS REFUSAL TO SUPPLY BASIC INSURANCE INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PLAINTIFFS ARE ENTITLED TO VERIFY MERCK'S CLAIM THAT VIOXX-ERA INSURANCE POLICIES PROVIDE NO POSSIBLE COVERAGE . . . . . . . . . . . . . . . . 4

III.  PLAINTIFFS HAVE IDENTIFIED RELEVANT INFORMATION THAT IS LIKELY TO BE IN MERCK'S AND THE INSURERS' FILES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  PLAINTIFFS HAVE DEMONSTRATED THAT FACTORS FAVORING DISCOVERY OUTWEIGH THE CONFIDENTIALITY MERCK AND ITS INSURERS USE SOLELY TO DENY PLAINTIFFS' INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.  THE INSURERS FAIL TO ESTABLISH THAT THE BURDEN ON THEM OUTWEIGHS THE NEED FOR INSURANCE-RELATED DISCOVERY  . . . . . . . . . . . . . . . . . . . . . . 12

VI.  MERCK OFFERS NO RESPONSE TO PLAINTIFFS' DEMONSTRATION THAT ITS DOJ/SEC INFORMATION IS NOT PRIVILEGED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*American Medical Systems*
[Case No. Civ. A. 98-1788, 1999
WL 781495 (E.D. La. Sept. 29, 1999)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Boyer v. Riverhead Central School Dist*.
No. CV 05-4955, 2006 WL 3833040
at *2 (E.D.N.Y. Dec. 29, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Calabro v. Stone*
224 F.R.D. 532, 533 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Caringal v. Karteria Shipping, Ltd.*, No. Civ. A. 99-3159,
2001 WL 874705, 2001 A.M.C. 1236 (E.D. La. Jan. 24, 2001) . . . . . . . . . . . . . . . . . . . 11

*Covey v. Simonton*
No. 04 CV 3273NG, 2005 WL 483439
at *1 (E.D.N.Y. Feb. 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hassneh Insurance Co. Of Israel and Others v. Sterart J. Mew*
2 Lloyd's Rep. 243 (1993), 1993 WL 963287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*
293 F.3d 289, 291 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Martin Marietta Corp.,*
856 F.2d 619, 622-24 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Qwest Commc'n Int'l, Inc.*
450 F.3d 1179, 1186-96 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Potomac Electric*
[136 F.R.D. 1 (D.D.C. 1990)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*S.E.C. v. Brady,*
No. 3:05-CV-1415-M, 2006 WL 3301865,
at *9 (N.D. Tex. Oct. 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. v. Mass. Inst. Of Tech.,*

129 F.3d 681, 686 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Westinghouse Elec. Corp. v. Republic of Philippines,*
    951 F.2d 1414, 1424 (3rd Cir. 1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Regulations**

Fed. R. Civ. P. 26(b)(2) (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other**

David J. Graham, et al.
    *Risk of acute myocardial infarction and sudden cardiac death in patients treated with*
    *cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs:*
    *nested case-control study*, THE LANCET 475, 480 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 6

Marvin A. Konstam et al.
    *Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib*, 104
    CIRCULATION 2280, 2285 (tbl. 6) (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

This Surreply responds to the *Reply of Merck & Co., Inc. ("Merck") and Insurers in Support of Their Joint Motion to Quash and/or for Protective Order Preventing Irrelevant and Inappropriate Insurance-Related Discovery*, dated Feb. 1, 2007 ("Merck's Reply").

## I.   MERCK FAILS TO DEFEND ITS REFUSAL TO SUPPLY BASIC INSURANCE INFORMATION

The discovery rules' principal purpose with respect to insurance is to permit informed assessment of a case by providing sufficient information to understand a defendant's insurance situation. Advisory Committee's Note to FRCP 26(b)(2) (1970) (discovery should "enable counsel . . . to make [a] realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation.").  Plaintiffs in this case claim that, "The insurance policies that Merck has provided contain insufficient information to understand Merck's complex insurance system and its volatile changes during the Vioxx era." PSC Resp. at 2.  Plaintiffs thus asserted that Merck had failed to satisfy the elementary requirement of communicating adequate insurance information.  Plaintiffs supported this claim with a detailed list of material questions that cannot reasonably be answered based on Merck's insurance disclosure to date. PSC Resp. at 15-18.  Those questions include basic items such as why information about many policies, including policy numbers, is "unknown," why data about the terms of many policies are "unknown," and how Merck's insurance situation came to vary by nearly a billion dollars during the Vioxx era.  *Id.* Plaintiffs further claimed that Merck's attorneys' failed effort to explain Merck's complex insurance status, even had it been complete, was legally insufficient.  "[G]ood-faith attorney explanation is not a substitute for information that can be legally binding evidence . . . that allows the PSC to explain to thousands of Plaintiffs Merck's actual insurance status." *Id*. at 16.

1

Merck's Reply fails to provide even a hint of explanation about unanswered insurance questions.  The Reply stubbornly reiterates that Merck's attorneys were willing to field insurance questions.  "Merck made one of its attorneys available to explain Merck's insurance system . . .." Merck's Reply at 1 n.1.  Despite acknowledging that Merck has an entire insurance system, not simply isolated, unrelated policies, Merck continues to offer a materially incomplete explanation of the system.

As Plaintiffs showed, the attorneys failed adequately to explain the insurance system.  PSC Resp. at 15-18. Merck's Reply reinforces that failure because not one of the sixteen pages in Merck's Reply answers a single question about the system at the individual policy or larger level. The Reply provides no "unknown" policy numbers, no data about "unknown" policies, no information about Merck's wildly fluctuating coverage structure or coverage levels, no information about how the various insurance layers fit together, no information from insurance files that explain what risks Merck was seeking to insure; the Reply supplies no information whatsoever.  Despite Plaintiffs' having supplied an insurance chart showing major gaps in knowledge of Merck's system, PSC Resp. Exh. C, Merck's Reply does not even address Plaintiffs' chart.  If Merck's attorneys are in fact capable of supplying complete and legally binding insurance information, their Reply was yet another chance to do so.  Yet they failed to answer even a single question.

Given the complex insurance system at work in this case, no reasonable substitute exists for corporate deposition and documentary disclosure from both Merck and its Insurers.  The London arbitration conclusively establishes that they disagree about insurance coverage for Vioxx claims. The PSC must advise thousands of Plaintiffs about both Merck's and its Insurers' insurance positions.  It cannot hope to do so without adequate information about both sides of the insurance

debate.   In this extraordinary situation of a complex insurance system and insurer-insured disagreement, the discovery rules' purpose cannot be fulfilled unless Plaintiffs have information from both Merck and its Insurers "so that settlement and litigation strategy are based on knowledge and not speculation."

The implications of Merck's continuing effort to substitute attorney statements, made in briefs or at meet-and-confer conferences, for legally binding evidence are unacceptable.  Imagine that Merck sought to depose a plaintiff about his health status or other key matters in a case.  No court would seriously consider allowing the plaintiff's attorney to substitute his or her view of health status for legally binding evidence.  Not surprisingly, Merck's Reply nowhere contests that attorney representations about client insurance are not legally binding evidence.  It is time to stop aggressive discovery resistance and allow the PSC adequate information to fulfill its basic insurance duties as contemplated by the discovery rules.

Plaintiffs are also entitled to discover all Vioxx-era insurance policies because of Merck's and the Insurers' putting confidentiality at issue.  Merck and the insurers claim that the need for confidentiality is a basic need; almost a right that attends London arbitrations.  Yet several of Merck's already-disclosed policies indicate that neither Merck nor the Insurers in fact regard confidentiality as essential.  "But Merck's insurance policies show that Merck and the Insurers often regard neither arbitration, nor the confidentiality of arbitration, as essential to protect insurance information."  PSC Resp. at 19 (citing insurance policies).  "Merck policies that do contain arbitration clauses impose no confidentiality requirement."  *Id*. at 20 (citing insurance policies).  Plaintiffs therefore claimed that, "Merck's pre-1996 pattern of dispute resolution clauses in its insurance agreements are plainly relevant to Merck's and its Insurers' motivation in seeking to

invoke confidentiality." *Id*. at 20.  Merck and the Insurers failed to respond to this claim, suggesting that they have no effective response.

## II.     PLAINTIFFS ARE ENTITLED TO VERIFY MERCK'S CLAIM THAT VIOXX-ERA INSURANCE POLICIES PROVIDE NO POSSIBLE COVERAGE

Merck's initial position was that discovery of pre-1996 insurance policies is unwarranted because of when Vioxx began development.  Merck claimed that there "is no basis for plaintiffs' requests for insurance materials that date back to 1990, many years before Vioxx was even in development, let alone on the market."  Joint Mem. at 13 n.9.  Plaintiffs noted that Merck's own materials establish that 1990 was not "many years" before Vioxx was in development.  PSC Resp. at 19.

Merck's Reply abandons its erroneous time-based theory and shifts it grounds for refusing policy discovery.  Merck now refuses discovery of additional insurance policies because of its unilateral, unverified legal conclusion that recovery is not available under them.  Merck states that, "all of the liability policies that Merck had in place before 1996 were either 'claims-made' or 'occurrence-reported policies,'" Merck's Reply at 3 n.2, and then provides an abbreviated discussion of why such policies cannot be relevant.  *Id.*  Plaintiffs need not address at this point whether Merck's insurance law discussion is correct.  For Plaintiffs are first entitled to see the policies, now admittedly in effect during Vioxx's development, to verify their scope.  If Merck is correct that there is no possibility of recovery under them, that can be quickly and efficiently established by providing Plaintiffs with copies of them.   Plaintiffs are not required to accept Merck's unsupported

characterization of polices in effect during the Vioxx era, as established by authorities cited in the PSC Reply.[1]

## III.    PLAINTIFFS HAVE IDENTIFIED RELEVANT INFORMATION THAT IS LIKELY TO BE IN MERCK'S AND THE INSURERS' FILES

Plaintiffs claim that "prior Vioxx claims brought against Merck" are relevant under Fifth Circuit law.  PSC Resp. at 12.  Merck claims that, "Plaintiffs are unable to identify any specific category of liability-related information that they believe may be in insurance files that would not be in the thousands of company files already turned over in this litigation."  Merck's Reply at 6. Merck indicates that it has "already produced to plaintiffs . . . adverse event data from clinical trials and post-approval field reports related to Vioxx," and that no reason exists "to go to Merck's insurers to obtain this same information again."  *Id.* at 7.[2]

Yet Plaintiffs in fact specifically identified "evidence of prior Vioxx-related insurance claims, and information about Vioxx exchanged between Merck and its Insurers" as being capable of leading to relevant evidence under Fifth Circuit precedent.  PSC Resp. at 13.  Merck's claim that disclosure of adverse event data from clinical trials and post-approval field reports renders

---

[1] PSC Reply at 21-22; *Boyer v. Riverhead Central School Dist.*, No. CV 05-4955, 2006 WL 3833040, at *2 (E.D.N.Y. Dec. 29, 2006) ("The summaries [of insurance policies] provided to Plaintiff's counsel fall short of the requirements under Fed.R.Civ.P. 26(a)(1)(D)."); *Calabro v. Stone,* 224 F.R.D. 532, 533 (E.D.N.Y. 2004) ("while counsel may be correct that the policies sought contain enforceable provisions excluding from their coverage the accident at issue here, plaintiff is not limited to counsel's say-so in making this determination"); *Covey v. Simonton*, No. 04CV3273NG, 2005 WL 483439, at *1 (E.D.N.Y. Feb. 23, 2005) (objection to disclosure on the assumption that an insurance policy offered no coverage did not excuse failure to produce the policy).

[2] Merck claims that Plaintiffs fail to address two cases the Joint Motion "cited for the proposition that insurance-related requests are beyond the scope of permissible discovery, such as *Potomac Electric*, [136 F.R.D. 1 (D.D.C. 1990)] and *American Medical Systems* [Case No. Civ. A. 98-1788, 1999 WL 781495 (E.D. La. Sept. 29, 1999)]."  Merck Reply at 5 n.4.  *Potomac Electric* in fact supports Plaintiffs because it ordered discovery of insurers of prior claims and incidents.  136 F.R.D. at 3 ("Defendants [insurers] shall provide information on third party claims there were either litigated or ultimately paid . . .").  The court in *American Medical Systems* merely concluded that reinsurance information was not relevant to the issues in the case before it.  Merck cannot credibly claim that information from it and its Insurers is irrelevant when the Insurers are seeking to deny coverage based on some of the same Merck misbehavior that supports Plaintiffs' claims.

insurance-related discovery duplicative is absurd.  The clinical trials cover a few thousand subjects, a tiny fraction of the millions of Vioxx users.  Research published by FDA researchers shows that an estimated 88,000-140,000 excess cases of serious coronary heart disease probably occurred during the Vioxx era.[3]  Yet Merck's published review of 23 Vioxx clinical trials reports fewer than 100 heart attacks. Marvin A. Konstam et al., *Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib*, 104 CIRCULATION 2280, 2285 (tbl. 6) (2001).  Only these Merck-reported and a few later heart attacks would appear in the adverse events thus far disclosed to Plaintiffs.  The post-approval field reports also cannot realistically be viewed as exhausting the universe of possible Vioxx-related incidents.  Merck presents no evidence that the reports come close to matching the massive number of adverse events that Vioxx is estimated to have caused.  The insurance data requested can help shed light on the huge difference between estimated Vioxx-related adverse events and Merck's reports of adverse events.

Merck's effort to distinguish Fifth Circuit law is similarly unpersuasive.  Merck challenges Plaintiffs' reliance on undisputed Fifth Circuit authority that prior similar events can be admissible evidence.  Merck states that "prior similar accident" cases "have no application here" because the "product at issue in this litigation is not a crane . . . or a mast . . . or a comparable product involved in an accident."  Merck's Reply at 6-7.  True, the product here is not a crane, but the product here, Vioxx, may have wounded or maimed, through heart attack, stroke, and other injuries, thousands of users, some of whom may have triggered a Merck insurance claim.  Those users' existence and characteristics bear directly on liability.  Their existence clearly would tend to establish Merck's

---

[3] David J. Graham et al., *Risk of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs: nested case-control study*, 365 THE LANCET 475, 480 (2005).

knowledge of risks and the timing of Merck's knowledge.   And those users have characteristics—gender, age, time on Vioxx, prior medical history, and the like—that are directly relevant to what Merck knew about Vioxx's risks for various subgroups and when Merck knew it. That Vioxx was an FDA approved drug, Merck's Reply at 7, does not distinguish prior similar accident cases.  The cases are relevant because they tend to show this defendant's knowledge of risk, as in all the prior accident cases.[4]

Thus, both elementary calculations suggested by the gap between any reasonable estimate of the number of persons harmed by Vioxx and the number of Merck-reported events, and indistinguishable Fifth Circuit precedent, establish that Merck's claims and insurance files may contain non-duplicative information to which Plaintiffs are entitled.  That Merck has "produced approximately 25 million pages of documents," Merck's Reply at 6, does not excuse it from producing all documents relating to many people who may have been injured by Vioxx.  When a product was sold to about 20 million people and has allegedly injured thousands of people, resulting litigation discovery is expected to impose substantial burdens.

## IV.   PLAINTIFFS HAVE DEMONSTRATED THAT FACTORS FAVORING DISCOVERY OUTWEIGH THE CONFIDENTIALITY MERCK AND ITS INSURERS USE SOLELY TO DENY PLAINTIFFS' INFORMATION

With respect to arbitration-related discovery, Merck does not seriously defend its frivolous argument that information in the London arbitration proceedings cannot be relevant to this MDL. With the relevancy argument removed, Merck acknowledges that the Court may "order discovery

---

[4] Merck's argument that discovery should be denied because of the possible inadmissibility of evidence of insurance, Merck's Reply at 4-5, is irrelevant.  Plaintiffs' claim is that the requested discovery of insurance-related information is reasonably likely to lead to admissible evidence.

of confidential arbitration materials . . ..." Merck Reply at 10.  Plaintiffs agree that the question is whether the Court should order such disclosure.  *Id.*[5]

Plaintiffs argued that several factors supported the Court exercising its discretion to order disclosure of obviously relevant information.  First, the London confidentiality order involved "no considered deliberation by the UK arbitration tribunal . . . . The tribunal merely and mechanically implemented a private agreement."  PSC Resp. at 32.  Comity concerns are reduced because allowing discovery thus would not undermine the considered opinion and deliberation of any tribunal.  Second, Merck and its Insurers do not routinely agree to confidentiality in all insurance contracts and admit that their confidentiality agreement related to this case is not to protect traditional trade secrets but solely to frustrate discovery by Plaintiffs.  *Id.* at 33.  This both reduces the weight to be accorded the confidentiality agreement and may well violate U.S. law.  *Id.* at 33 n.2.  Third, no reasonable alternative exists through which Plaintiffs can obtain the information.  There is no lawsuit in which Plaintiffs can intervene.  *Id.* at 34.  Fourth, any bona fide claims to confidentiality can be vindicated by imposing confidentiality on Plaintiffs or by Court review of information before disclosing it to Plaintiffs.  *Id.* at 35.  Fifth, differences in information available in arbitration and litigation could lead to inconsistent results in efforts to resolve the Vioxx public

---

[5] In a footnote, Merck and the Insurers appear to complain that the instant discovery requests covers all Insurers, without differentiating between Insurers who are and are not parties to the London arbitration.  Merck's Reply at 13 n.9. This common treatment is because that is what Merck and the Insurers insisted on.  At the Liaison Counsel meeting with the Court that preceded the January 25, 2007 status conference, Plaintiffs suggested that resolution of the instant discovery requests be limited to Merck.  Merck and the Insurers insisted that all issues relating to insurance be taken up together and not in a piecemeal fashion.  It is therefore inappropriate for Merck and the Insurers to now object on the ground that the instant discovery requests do not differentiate among Insurers.  Furthermore, differentiating among Insurers is not productive where they are so interrelated.  For example, SR Internat'l Business Ins. Co. Ltd. (SRI) and Lexington Ins. Co., which nominally appear to be separate companies, share the name policy number for at least some Merck policies.  *See* Lexington Ins. Co. Policy  901/LK9601639, dated Feb. 26, 1998, MRK-ANJ0000149; SRI Policy 901/LK9601639, dated May 5, 1998, MRK-ANJ0000048.  That Lexington Ins. Co. appears on Merck's Reply and SRI does not is hardly telling when they share the same policy numbers.  And the interests of the Insurers are sufficiently common for instant purposes that their views will be reasonably represented before the Court.  Merck's Reply is the second document in which Insurers have had an opportunity to express themselves on this matter and have done so.

health disaster.  Insurers will argue against Merck that Merck misbehaved and argue against Plaintiffs that Merck did nothing wrong.  This risks inconsistent adjudication due to differences in information being available in the two proceedings.  Imagine the policy disaster, due to inconsistent outcomes, if the Insurers use the arbitration to free themselves from liability because of Merck's misbehavior and then Merck or the Insurers systematically succeed in U.S. courts based on findings that Merck did not misbehave. *Id*. at 29.  One important safeguard against inconsistent adjudication is to assure that consistent information is available in both proceedings.  And Merck now admits that discovery would provide Plaintiffs "with documents and testimony that would not otherwise be available in this litigation . . .."  Merck's Reply at 12 n.8, and that the arbitration proceedings contain "statements of fact and expert witnesses . . .."  *Id*. at 13.

Merck's Reply asserts that "Merck has not withheld from plaintiffs any documents provided to the Insurers that are responsive to plaintiffs' non-insurance discovery requests . . . that relate to underlying Vioxx facts and issues."  *Id*.  Merck's carefully worded statement does not deny that Merck has provided Vioxx-related documents to its Insurers and that the Insurers have supplied Vioxx-related documents to Merck.  Merck's counsel's conclusory assertion that nothing further relating to insurance is non-duplicative or discoverable is insufficient.  *Cf. Calabro v. Stone,* 224 F.R.D. 532, 533 (E.D.N.Y. 2004) ("plaintiff is not limited to counsel's say-so in making [insurance-related discovery] determination").  Tellingly, the Reply does not assert that the Insurers have no documents that relate to Vioxx facts and issues.  Plaintiffs are entitled to know, for example, what Merck was telling its Insurers about Vioxx risks after the VIGOR study, and what exchanges occurred between Merck and its Insurers throughout the Vioxx period.  It is not enough that Merck's

counsel proclaim that Plaintiffs already have everything.  Plaintiffs are entitled to access to Merck corporate representatives and documents.

Merck appears to claim that some sort of privilege attaches to "materials specifically generated *in and for* . . . arbitrations . . .."  Merck's Reply at 13 (bold and italics in original). Relevant documents enjoy no privilege from disclosure merely because produced in connection with another proceeding.  Relevant documents that may lead to admissible evidence are prima facie discoverable and the "in and for" claim is no stronger than the general confidentiality claim.  Indeed, this "in and for" exclusion claimed by Merck appears to go beyond the express scope of the arbitration confidentiality order Merck relies on.  That order only expressly refers to "documents produced by the Parties during the course of disclosure . . . ."[6]  It does not expressly reach "documents generated . . . for" the arbitration that are not produced in it.

Allowing Merck and the Insurers to withhold all information contained in materials prepared in and for the arbitration could deprive Plaintiffs of substantial materials to which they are entitled. Since the arbitration has commenced and the Insurers are not yet litigation defendants, the Insurers may incorporate their most relevant documents and information into materials prepared for the arbitration.  There is no need for them to incorporate the documents and information in other unprotected formats.  If the Insurers receive an arbitration-based umbrella to shield against discovery, the items placed under the umbrella will grow in relation to the documents and information reported to be outside the umbrella.  The Insurers do not deny having Vioxx related documents and information.  That they may have first incorporated that information into "materials

---

[6] Confidentiality Order, Exhibit "P" to Joint Motion of Merck & Co., Inc. and Insurers To Quash and/or For Protective Order Preventing Irrelevant and Inappropriate Insurance-Related Discovery.

generated in and for" an arbitration, and not created other embodiments of that information, cannot reasonably deprive Plaintiffs of access to it.  That would be an invitation to uninformed adjudication.

Merck's latest basis for seeking to distinguish *Caringal v. Karteria Shipping, Ltd.*, No. Civ. A. 99-3159, 2001 WL 874705, 2001 A.M.C. 1236 (E.D. La. Jan. 24, 2001), fails.  Merck initially claimed that *Caringal* is distinguishable in part because the information sought here is not relevant. Joint Mem. at 22.  With relevance not being seriously debatable, Plaintiffs easily satisfy Merck's own statement of Plaintiffs' burden under *Caringal*—"that the disclosure of confidential arbitration information is necessary for disposing fairly of this matter."  Merck's Reply at 11.  In addition to the obvious relevance of the information in the arbitration proceedings, the above five factors clearly satisfy any reasonable showing needed to support the claim that discovery is necessary to fairly adjudicate this matter, notwithstanding the existence of the confidentiality order.  Merck fails to cite to any facts in *Caringal* that established greater need for information than Plaintiffs have established in this case.  Merck has yet to supply the Court with any factors favoring confidentiality, not also present in *Caringal*, that support completely prohibiting U.S. discovery.  In contrast, *Caringal* does conclusively establish that Merck's claim that London arbitration confidentiality constitutes an unpenetrated barrier to discovery is incorrect.  *Caringal* does establish that Merck's reliance on *Hassneh Insurance Co. of Israel and Others v. Sterart J. Mew*,[7] has been rejected.  *Caringal* does support Plaintiffs' recommended approach of a careful balancing of interests.  Merck has yet to address the considerations relevant to that balancing process.

---

[7] 2 Lloyd's Rep. 243 (1993), 1993 WL 963287.

## V.    THE INSURERS FAIL TO ESTABLISH THAT THE BURDEN ON THEM OUTWEIGHS THE NEED FOR INSURANCE-RELATED DISCOVERY

Plaintiffs claim that discovery from the Insurers is appropriate because (1) it is necessary to understand Merck's insurance system and the Insurers' legal stance with respect to Merck's coverage, PSC Resp. at 38-39, (2) it is reasonably likely to lead to obtaining admissible evidence, PSC Resp. *passim*, and (3) it is necessary to allow thousands of Vioxx claimants to assess their position in light of the possibility of direct actions against the Insurers. *Id*. at 39-45.

The Insurers provide no response with respect to Plaintiffs' claim that discovery of them is needed to assess their views of Merck's insurance situation. Given Merck's complex insurance system, Merck's and its attorneys' inability to answer many basic questions about that system, Part I *supra*, and the Insurers' acknowledged disagreement with Merck about Merck's insurance coverage, Insurer discovery is needed to satisfy the discovery rules' basic mandate that both sides to a case be able to assess their position in light of full knowledge of insurance coverage. The Insurers also fail to make any credible claim that information they possess cannot be relevant to this MDL.

The Insurers' grounds for opposing discovery are that: (1) the burden on them as non-parties outweighs Plaintiffs' interest in obtaining relevant information, and (2) direct actions against them in which discovery would be required have not yet occurred. Merck's Reply at 7-9.

With respect to the burden on the Insurers, supplying their views with respect to coverage is a limited new burden because they have already formulated those views for the London arbitration. Their position on Merck's insurance is already in documents that they have prepared, whether or not those documents have been made part of the arbitration record. Plaintiffs stated that, because the Insurers have commenced proceedings against Merck, "The Insurers thus likely have

already assembled files containing substantial amount of Vioxx-related information that include most of what Plaintiffs request." PSC Resp. at 39. Tellingly, the Insurers, while setting forth generalities about the burden of discovery, do not deny the existence of files containing precisely the information Plaintiffs request. At a minimum, the Insurers can supply, with reasonable burden, existing documents relating to Vioxx issues.

With respect to direct actions against the Insurers, Merck's Reply ignores the fact that this is an MDL in which pre-trial discovery must serve tens of thousands of federal and state claimants, many of whom require information to assess whether to bring direct actions against the Insurers. Merck's Reply concedes that direct actions are authorized in Louisiana, Wisconsin, Puerto Rico, and Guam. Merck's Reply at 8. Merck's Reply does not deny that additional states cited by Plaintiffs, *see* PSC Resp. at 41 & nn.28-29, including Mississippi and Rhode Island, allow direct actions to some Vioxx claimants. So at least six jurisdictions, with thousands of Vioxx claimants, authorize direct actions. The PSC must have insurance discovery to enable these claimants it represents to assess whether to bring concededly authorized direct actions.

It is not necessary that a direct action have been brought to justify the requested discovery. That discovery is needed by thousands of Vioxx claimants to assess whether to bring direct actions. Merck's Reply seeks to deny the PSC information that would allow Vioxx claimants the ability to assess the viability of direct actions. Of course, with so many Vioxx claimants, it likely is inevitable that a direct action will be brought. When that occurs, this MDL will not have fulfilled its mission if substantial new rounds of Vioxx pre-trial discovery must occur in multiple forums. But even if no direct action is ever brought, discovery will have been warranted because it will have allowed thousands of claimants to assess whether to bring a direct action.

Merck claims that Plaintiffs ignored the cases Merck and the Insurers relied on in opposing discovery from the insurers. Merck Reply at 7. Plaintiffs' spared the Court discussion of the cases Merck and the Insurers cited because they were boilerplate citations regarding limitations on non-party discovery. Merck did not indicate that any of the cases involved third parties who were litigating against a defendant the very same issues that the party seeking discovery was litigating or that any of the cases involved a third party who was itself amenable to a direct action asserting the very grounds of liability invoked against the primary defendant. The cases were irrelevant and remain so. Even the generalized invocation of non-party discovery cases is strained on the facts of this case. The "non-parties" in this case are adjudicating the same legal issues against Merck as Plaintiffs and are indisputably eligible to be formal parties in at least six jurisdictions.

## VI.   MERCK OFFERS NO RESPONSE TO PLAINTIFFS' DEMONSTRATION THAT ITS DOJ/SEC INFORMATION IS NOT PRIVILEGED

In a previous filing with respect to the instant discovery matter, Merck claimed that it had already provided the PSC with all non-privileged information relating to DOJ and SEC objections. Merck's primary objection at that time was based on claims of attorney-client privilege.[8] Plaintiffs showed that Merck's privilege claim was inconsistent with an overwhelming body of case law. That case law establishes that disclosure to government agencies is not protected against civil discovery. PSC Reply at 47-48.[9]

---

[8] *Merck & Co., Inc.'s Motion and Incorporated Memorandum for A Protective Order Preventing Corporate Deposition on Duplicative, Irrelevant and Privileged Topics* ("Merck Mem."), filed Nov. 16, 2006, at 12.

[9] *See, e.g., In re Qwest Commc'n Int'l, Inc.,* 450 F.3d 1179, 1186-96 (10th Cir. 2006) (disclosure of information to SEC and DOJ waived attorney-client privilege); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 291 (6th Cir. 2002) (producing otherwise privileged documents to the DOJ and other government agencies "waived any privilege associated with the documents"); *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1424 (3rd Cir. 1991) ("numerous cases have applied the traditional waiver doctrine to communications disclosed to government agencies"); *U.S. v. Mass. Inst. of Tech.,* 129 F.3d 681, 686 (1st Cir. 1997) (disclosure of documents to one government agency waived privilege with respect to another government agency); *In re Martin Marietta Corp.,* 856

With the case law so clearly contradicting Merck's legal position, it has now shifted its basis for opposing DOJ/SEC discovery. Merck now completely ignores case law. It instead opposes discovery on the ground that Plaintiffs have pursued it in a "backdoor manner." Merck's Reply at 15. This "backdoor" argument is not a legal theory but in the nature of an equitable argument. But Merck fails to identify any inequitable behavior by Plaintiffs and Merck only discovered "backdoor" tactics after its legal argument on this issue was so thoroughly refuted. It is a plaintiff's right to select its mode of discovery. That Plaintiffs did not "file a motion to compel a further response to the interrogatory or for the production of documents," when Merck thought such a motion should be filed, Merck's Reply at 14, does not come close to establishing inequitable behavior. Plaintiffs are fully entitled to "[i]nstead" serve "their 30(b)(6) deposition notices and . . . document requests . . .." *Id.* at 15.

Merck also now claims that "plaintiffs have articulated no basis why they are entitled to such discovery or provided any evidence that the investigations by the SEC and DOJ are in any fashion congruent with plaintiffs' global discovery efforts in this MDL." *Id.* This relevance-based argument is incorrect. The government investigations are quite "congruent" with information Plaintiffs seek in this MDL. Both investigations have been publicly acknowledged by Merck to be related to Merck's Vioxx activities. Merck stated in its Form 10-Q third quarter 2004 SEC filing:

> the Company was advised by the staff of the Securities and Exchange Commission (SEC) that it was commencing an informal *inquiry concerning Vioxx*. Also, the Company has received a subpoena from the U.S. Department of Justice requesting

F.2d 619, 622-24 (4th Cir. 1988) (other privileged materials disclosed to the U.S. Attorney and the Department of Defense waived attorney-client privilege); *S.E.C. v. Brady*, No. 3:05-CV-1416-M, 2006 WL 3301865, at *9 (N.D. Tex. Oct. 16, 2006) (materials provided to the SEC waived attorney-client privilege; "an overwhelming amount of authority has . . . rejected the selective waiver doctrine").

information related to the Company's research, marketing and selling activities *with respect to Vioxx* in a federal healthcare investigation under criminal statutes.

Merck Form 10-Q for the quarterly period ended Sept. 30, 2004, at 9 (emphases added).  With both the DOJ and SEC inquiries directly focusing on Vioxx, these investigations are substantially congruent with information Plaintiffs seek.

## VII.   MERCK'S VARIOUS CLAIMS TO PRIVILEGE

Merck has repeatedly asserted that many of the documents sought to be discovered by the PSC are subject to a privilege or, alternatively, that the documents have already been produced in prior productions.  If any such documents have already been produced, then Merck should be forced to specifically identify such documents by bates number so that the PSC will know which particular documents are claimed by Merck to be responsive to the specific discovery requests.  Without Merck identifying the documents by bates number, the PSC cannot tell which documents Merck contends are responsive.  The PSC should not be placed in a position of having to guess or speculate which documents Merck contends are responsive to the particular discovery requests.

Furthermore, should Merck or the insurers assert a claim for privilege, it is incumbent upon the responding party, pursuant to the Federal Rules of Civil Procedure, to provide a privilege log.  Both Merck and the insurers have refused to provide any privilege log.  The Court should order that a privilege log be provided to the PSC by Merck and the insurers regarding any claimed privileged documents.

## CONCLUSION

Merck and the Insurers have provided no defense of their failure to supply basic insurance information and policies needed to understand Merck's complex insurance system.  They have failed to distinguish well-established Fifth Circuit law about the relevance of prior similar incidents and

16

other information that may be contained in insurance and claims files.  They have provided no persuasive response to the many factors and legal precedents supporting disclosure of plainly relevant documents and information produced for and in the London arbitration proceedings.  The Insurers have provided no argument whatsoever that discovery from them is not absolutely essential to understanding their view of Merck's complex insurance system or that the materials sought are not relevant.  Nor have they shown that the importance of the information sought from them fails to outweigh the burden of discovering files already in existence on the topic of Vioxx.  In the face of overwhelming contrary authority, Merck has abandoned its privilege-based defense to DOJ/SEC discovery and shifted to an unsupported argument that "backdoor" pursuit of discovery has occurred.  Plaintiffs respectfully request that the Court order the requested discovery and deny the requested protective orders.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: February 8, 2007              By:/s/ Leonard A. Davis
                                                            
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
Place St. Charles
201 St. Charles Avenue, Suite 4310
New Orleans, Louisiana 70170
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

17

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire
Fred S. Longer, Esquire
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX  77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

18

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 8th day of February, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
**_Herman, Herman, Katz & Cotlar, LLP_**
201 St. Charles Ave., Suite 4310
New Orleans, LA 70170
PH:   (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com