FILED
SEP 21 2006
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THELMA CATES, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. CIV 06-388-KEW |
| v. | ) |
| | ) (District Court of Pittsburg |
| (1) MERCK & CO., INC. and | ) County, State of Oklahoma, |
| (2) DR. RICARDO VALBUENA, M.D., | ) Case No. CJ-06-835) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL OF DEFENDANT MERCK & CO., INC.

PLEASE TAKE NOTICE that defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, hereby removes the above-captioned action from the District Court of Oklahoma County, Oklahoma, to the United States District Court for the Western District of Oklahoma, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and respectfully states to this Court the following:

1.      On or about the 5th day of September, 2006, the above-named Plaintiff commenced a civil action, bearing cause number CJ-06-835, in the District Court of Pittsburg County, State of Oklahoma, by filing a Petition.

2.      Merck was served with the Petition on September 6, 2006.  Merck has no knowledge concerning whether Defendant Dr. Ricardo Valbuena, M.D. ("Dr. Valbuena") has been served with the Petition.  No further proceedings have been had in the state court action.

3.      As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

*consent to given*

4.   This is one of numerous actions that have been filed recently in both federal and state courts around the country concerning the pharmaceutical Vioxx. On February 16, 2005, the JPML issued a Transfer Order establishing MDL-1657 and transferring 148 federal Vioxx cases to the Eastern District of Louisiana for coordinated pretrial proceedings before The Honorable Eldon E. Fallon. Since then, several hundred more cases have been transferred. Merck intends to seek the inclusion of this case within such MDL proceedings as a "tag-along" action, pursuant to Rules 7.4, 7.5, R. P. J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

I.   **MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

5.   The Petition, filed September 5, 2006, was served on Merck on September 6, 2006. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

6.   The United States District Court for the Eastern District of Oklahoma embraces the place in which the removed action was pending. 28 U.S.C. §§ 116(c), 1441(a).

7.   Merck is the only properly-joined defendant.[1] Therefore, Merck need not obtain the consent of any party to remove this action.

8.   No previous application has been made for the relief requested herein.

9.   No proceedings other than the filing of the Petition have been had in the state court action.

10.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff, and a copy is being filed with the Clerk of the District Court of Pittsburg County, Oklahoma.

---

[1] 28 U.S.C. § 1441(b) does not bar removal. It is well-settled that a co-defendant who has not been served or who is fraudulently joined need not join in the removal. *See, e.g., Balazik v. County of Dauphin,* 44 F.3d 209, 213 n. 4 (3rd Cir. 1995); *Liebau v. Columbia Cas. Co.,* 176 F. Supp. 2d 1236, 1243 (D. Kan. 2001). As explained below, the only other named defendant, Dr. Ricardo Valbuena, M.D., is fraudulently joined. Therefore, his consent is not required.

2

11. In addition to this Notice of Removal, Merck is filing a clearly legible copy of all documents filed in this case (Exhibit 1), and a copy of the docket sheet of this case (Exhibit 2). There are no motions pending before the state court as of the date of this Notice of Removal.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 and 1441.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A. The Amount in Controversy Requirement Is Met.

13. On information and belief, Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiff in this case alleges that Merck "concealed serious cardiovascular and cerebrovascular risks associated with Vioxx," and that she "took Vioxx and has suffered foreseeable health consequences of its use." (Petition, "Facts," ¶¶ 8, 20.) Based on her allegations, Plaintiff seeks damages for past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, lost earnings and loss of future earning capacity, as well as punitive damages. (Petition, "Damages," ¶ 31, "Punitive Damges," ¶ 33.)

14. Plaintiff's claims meet the jurisdictional threshold on several independent grounds.

15. Plaintiff's claims of personal injuries are based on her allegation that serious cardiovascular and cerebrovascular risks are associated with Vioxx and that she "took Vioxx and has suffered foreseeable health consequences of its use." (Petition, "Facts," ¶¶ 8, 20.) Plaintiff's claim for punitive damages is based upon the allegation that Merck "concealed and continues to conceal past and present facts from regulatory agencies, healthcare providers and the consuming

3

public, including Plaintiff, that directly relate to the safety of its product Vioxx," and that Merck's "conduct rises to the level of fraud, malice, and willful and wanton conduct[, . . .] done heedlessly and recklessly and without regard to the rights and safety of others, including Plaintiff." (Petition, "Fraud and Intentional Part [sic]," ¶ 28, and "Punitive Damages," ¶ 33.)

16. Under Oklahoma law, punitive damages may be awarded "[w]here the jury finds by clear and convincing evidence that: 1. The defendant has been guilty of reckless disregard for the rights of others; . . . the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of: a. One Hundred Thousand Dollars ($100,000.00), or b. the amount of the actual damages awarded." *See* 23 Okla. Stat. § 9.1.B. If one were to accept the truth of Plaintiff's allegations that serious cardiovascular and cerebrovascular risks are associated with Vioxx and that he took Vioxx and has suffered foreseeable health consequences of its use (allegations that Merck firmly denies), Plaintiff's claims for compensatory and punitive damages easily satisfy the jurisdictional minimum. *See, e.g., Hanna v. Miller*, 163 F. Supp. 2d 1302, 1306 (D.N.M. 2001) (denying motion to remand; confirming that punitive damages should be considered in determining the amount in controversy). *See also Geoffrey E. MacPherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1245 (10th Cir. 1996) (by aggregating claims for breach of contract and fraud, including punitive damages, claims met jurisdictional requirements for amount in controversy).

17. Oklahoma courts routinely uphold awards far in excess of $75,000 for personal injuries in products liability actions. *See, e.g., Treadway v. Uniroyal Tire* Co., 1988 OK 37, ¶¶ 13, 14, 766 P.2d 938 (verdict of $750,000 in products liability case for personal injury upheld as not excessive); *Cartwright v. Atlas Chem. Indus.*, 1978 OK CIV APP 23, ¶¶ 4, 65, 593 P.2d

4

104 (verdict of $272,045.28 in products liability case for wrongful death upheld as not excessive and supported by "competent evidence reasonably tending to support the verdict"); *Messler v. Simmons Gun Specialties, Inc.,* 1984 OK 35, ¶¶ 6, 687 P.2d 121 (Okla. 1984) (verdict of $275,000.00 in a wrongful death action based on manufacturers' products liability upheld); *Johnson v. Ford Motor Co.,* 2002 OK 24, 45 P.3d 86, n.6 (Okla. 2002) (in a personal injury case, the appellate court affirmed a jury verdict for $5,000,000.00, in which the trial court had given "credit of $150,000.00 for a prior settlement").

18. Furthermore, federal courts around the country have ruled that federal diversity jurisdiction exists in similar actions alleging personal injuries caused by Vioxx. *See, e.g., Stubblefield v. Merck & Co., Inc.,* CIV No. H-02-3139 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.,* No. 02-C-4203 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co., Inc.,* No. 02-0196 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.,* CIV. No. 02-00186 (D. Haw. June 5, 2002). These courts all were presented with complaints seeking actual and punitive damages for injuries caused by Vioxx, and all found that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied. Copies of the orders confirming each court's jurisdictional finding in these four cases are attached hereto collectively as Exhibit 3. These decisions, combined with the foregoing evidence, make clear that Merck has shown by a preponderance of the evidence that the amount in controversy satisfies the requirements for federal jurisdiction. *See, e.g., Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1290 (10th Cir. 2001), *appeal after remand on attorneys' fee issue,* 393 F.3d 1143 (10th Cir. 2004); *cert. granted,* 125 S. Ct. 1941 (2005).

**B. There Is Complete Diversity As Between Plaintiff and All Properly Joined Defendants.**

5

19. There is complete diversity as between Plaintiff and the only properly joined defendant in this action.

20. On information and belief, the plaintiff is an Oklahoma resident. Plaintiff alleges that she is a resident of Pittsburg County, Oklahoma. (Petition, "Parties," ¶ 1.) Plaintiff does not allege any other state of citizenship. Thus, on information and belief, Plaintiff is a citizen of Oklahoma.

21. Merck is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey, and therefore is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

22. For the reasons set forth below, the citizenship of the only non-diverse Defendant -- Dr. Valbuena -- must be ignored. Dr. Valbuena has been fraudulently joined in an apparent attempt to prevent removal, and his citizenship must be ignored for removal purposes. *See American Nat. Bank & Trust Co. of Sapulpa v. BIC Corp.* 931 F.2d 1411, 1412 (10th Cir. 1991) ("[i]f, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder"); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (U.S. 1921) (joinder of a resident defendant "may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal"); *Updike v. West,* 172 F.2d 663, 665 (10th Cir. 1949) ("[a] separate controversy of the requisite amount, wholly between citizens of different states, may be removed to the Federal court, notwithstanding he presence of a resident defendant, if it is shown that the resident defendant was made a party for the fraudulent purpose of defeating removal"). Federal courts have held that, in order to meet this burden, "a defendant must show that the plaintiff has no reasonable basis for a claim against

6

the non-diverse defendant in state court based on the alleged facts." *Graphic Resources Group, Inc. v. Honeybaked Ham Co.*, 51 F. Supp. 2d 822, 825 (E.D. Mich. 1999). *See also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (recognizing that a "reasonable" basis to predict that plaintiff could prevail on the claims against an in-state defendant requires more than a "theoretical" possibility).

23. Plaintiff alleges that he "was initially prescribed Vioxx by the Defendant, Ricardo Valbuena, M.D., a licensed practitioner in the State of Oklahoma." (Petition, "Facts," ¶ 8.) There are no other factual allegations relating to any actions of Dr. Valbuena. In fact, there is no other reference to Dr. Valbuena in the Petition. The only allegation that could possibly relate to Dr. Valbuena is the allegation that "[t]he Defendant failed to use ordinary care, that is, failed to do that which a person or ordinary prudence would have done under the same or similar circumstances, foreseeable causing disease and injury to Plaintiff." (Petition, "Negligence," ¶ 22.) Assuming that Plaintiff intended these allegations of negligence to constitute medical negligence/malpractice claims against Dr. Valbuena, these claims are not supported by specific factual allegations and are fundamentally inconsistent with the claims against Merck. On the one hand, Plaintiff alleges that Merck successfully misrepresented and concealed the risks of Vioxx, proximately causing his injury. (Petition, "Facts," ¶¶ 9, 13, 16-20.) On the other, he maintains that his doctor's lack of ordinary care "foreseeably" caused injury to Plaintiff, the risk of which he claims was hidden from everyone.

### (1) The medical negligence/malpractice claims against Dr. Valbuena are conclusory and insufficient.

24. The elements of medical negligence/malpractice under Oklahoma law are: "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly exercise or perform that duty and (3) the plaintiff's injuries are proximately caused by the defendant's

7

failure to exercise his duty of care." *See McKellips v. Saint Francis Hosp., Inc.*, 1987 OK 69 ¶ 8, 741 P.2d 467 (Okla. 1987). A physician's duty is judged by accepted national medical standards. *See, e.g., Thompson v. Presbyterian Hosp., Inc.*, 1982 OK 87 ¶ 13, 652 P.2d 260, 264 (Okla. 1982); 76 Okla. Stat. § 20.1.

25.     As set forth below, there is no reasonable basis to predict that Plaintiff will prevail on her claim of medical negligence/malpractice against the physician defendant. Indeed, Plaintiff does not plead the required elements of the claim but makes only conclusory allegations of the foreseeability of Plaintiff's injury. Plaintiff alleges that Dr. Valbuena initially prescribed Vioxx for Plaintiff (Petition, "Facts," ¶ 8) and that the defendant failed to use ordinary care, "foreseeable causing disease and injury to Plaintiff." "(Petition, "Negligence," ¶ 22.)

26.     These conclusory allegations against Dr. Valbuena do not state a claim for medical negligence/malpractice and therefore cannot be used to thwart removal. *See, e.g., Strickland v. Brown Morris Pharmacy Inc.*, Civ. A. No. 96-815, 1996 WL 537736, at *2 (E.D. La. Sept. 20, 1996) (conclusory allegations that defendant knew or should have known that drug was dangerous do not warrant remand); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 279-80 (S.D.N.Y. 2001) ("*Rezulin I*") (finding that a doctor was fraudulently joined - and not to be considered for purposes of diversity jurisdiction - where plaintiffs had "failed to state any legally cognizable claim" against the physician).

27.     Further, the Petition does not meet the requirements of 63 Okla. Stat. § 1-1708.1E, which requires that, in any medical liability action, the plaintiff shall attach to the petition an affidavit attesting that:

   a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,

8

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the health care provider against whom the action is brought constituted professional negligence, and

c. on the basis of the qualified expert's review and consultation, the plaintiff has concluded that the claim is meritorious and based on good cause.

63 Okla. Stat. § 1-1708.1E. Plaintiff's failure to comply with this statute is further evidence that Plaintiff has not stated, and cannot state, a claim against Dr. Valbuena for medical negligence/malpractice under Oklahoma law and has only joined Dr. Valbuena as a defendant in an attempt to defeat diversity jurisdiction.

### (2) The conclusory claims against Dr. Valbuena are contradicted by the claims against Merck.

28. As numerous other courts have recognized in other pharmaceutical litigation, a healthcare defendant is improperly joined where, as here, conclusory allegations of the provider's knowledge are contradicted by the specific allegations in the Petition that the manufacturer-defendant concealed information from the general public, including healthcare providers. *See, e.g., Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:000-CV-102-LN, slip op. at 2 (S.D. Miss. Sept. 25, 2001) (in-state pharmacy fraudulently joined where allegation of in-state defendant's knowledge were contradicted by specific allegations that the pharmaceutical manufacturer concealed and/or misrepresented information) (attached as Exhibit 4); *In re Diet Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (same); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001)("*Rezulin I*") (in-state physician fraudulently joined when minimal conclusory allegations of the physician's knowledge were contradicted by specific allegations that the pharmaceutical manufacturer concealed and/or misrepresented information); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) ("*Rezulin*

9

*II*") (non-diverse physician defendant fraudulently joined where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"). *See also Flores v. Merck & Co., Inc.,* No. C-03-362, slip op. at 2 (S.D. Tex. Mar. 15, 2004) (finding doctor fraudulently joined where allegations against the doctor were conclusory and where plaintiffs "claim[ed] that Merck 'failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion'") (attached as Exhibit 5); *Chiles v. Am. Home Prods. Corp.,* No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit 6) (finding doctors fraudulently joined and denying remand where plaintiffs had alleged misrepresentation against a drug manufacturer that "negate[d] any possible liability of the physicians"); *Baisden v. Bayer,* 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer).

29.     Like the plaintiffs in *Louis, Diet Drugs,* and *Rezulin I* and *II*, the Plaintiff here makes only minimal and conclusory allegations regarding Dr. Valbuena's knowledge. However, any allegation against Dr. Valbuena regarding Vioxx is contradicted by the more abundant allegations in the Petition that Merck concealed and/or misrepresented information to prescribing physicians and the general public. For instance, the Plaintiff alleges that Merck "made false and misleading statements concerning the safety profile and superiority of Vioxx," that Merck ignored evidence of a significant increase in a risk of cardiovascular and cerebrovascular events related to Vioxx "and campaigned aggressively to suppress this information," and that Merck "misrepresented to Plaintiff and to the healthcare industry the safety and effectiveness of Vioxx and concealed material information necessary to intelligently determine the dangers of Merck's

product." (Petition, "Facts," ¶¶ 9, 13, 17.) Thus, to the extent Plaintiff claims that Dr. Valbuena failed to warn or negligently prescribed Vioxx, any such allegations are wholly inconsistent with the gravamen of the complaint – that Merck allegedly misled the public and physicians regarding the safety of Vioxx. Notably, even the Plaintiffs' Steering Committee in the Vioxx MDL has recognized that joinder of physicians as defendants is generally improper in cases such as this where the claims against Merck are "by and large incompatible with a claim that the doctor is at fault." (*See In re VIOXX MDL,* Pls. Mem. in Supp. of Mot. to Modify Order of June 6, 2005 Regarding Physician Contacts, at 3 (attached as Exhibit 7).) A number of courts have agreed. *See, e.g., Omobude v. Merck*, No. 3:03CV528LN, slip op. at 3-5 (S.D. Miss. Oct. 3, 2003) (finding fraudulent misjoinder of a physician in a suit against Merck for injuries allegedly caused by Vioxx: "[W]here a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from [the plaintiff], then . . . to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information") (attached as Exhibit 8). For this reason, too, Dr. Valbuena is improperly joined and his citizenship should be disregarded for purposes of determining diversity.[2]

---

[2] Additionally, to the extent that Plaintiff's claims against Dr. Valbuena are based on something other than prescribing Vioxx, his claims against Merck do not arise out of the same transaction or occurrence as required by Fed. R. Civ. P. 20(a) and thus the claims against Merck and the claims against Dr. Valbuena are fraudulently misjoined. *See In re: Rezulin Prod. Liab. Litig.*, 00 Civ. 2843, 2003 WL 21276425 at *1-2 (S.D.N.Y. June 2, 2003) (claims against non-diverse physician fraudulently misjoined with claims against drug manufacturer where basis of claim against physician was failure to diagnose alleged liver dysfunction, while basis of claim against manufacturer went "principally to the safety and efficacy of the drug and ha[d] little if anything to do with the malpractice claim."). If the Plaintiff's negligence claim against Dr. Valbuena is based on his treatment of Plaintiff, and how he administered, as opposed to prescribed, Vioxx, (Petition at ¶ 22), then this claim does not arise out of the same "transaction or occurrence" as Plaintiff's allegations against Merck. Plaintiff's allegations against Merck

11

WHEREFORE, Defendant Merck respectfully removes this action from the District Court of Pittsburg County, Oklahoma, bearing Case Number CJ-06-835 to this Court pursuant to 28 U.S.C. § 1441.

Respectfully submitted,

John A. Kenney, OBA #4976
Sheryl N. Young, OBA #14183
Brandon L. Buchanan, OBA #18661
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone:  (405) 235-9621
Facsimile:  (405) 235-0439

Attorneys for Defendant Merck & Co., Inc.

---

relate to its alleged negligence in how it manufactured, designed, formulated, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, and sold Vioxx. (*Id.* at ¶¶ 9-20, 24, 26, 28). Thus, Plaintiff's claims arising out of Dr. Valbuena's care and treatment of Plaintiff do not arise out of the same "transaction or occurrence" as the claims against Merck and are fraudulently misjoined and the Plaintiff's claims against Merck should be severed from his claims against Dr. Valbuena. *See In re Rezulin Prods. Liab. Litig.*, 2003 WL 21276425 at *1 (remanding fraudulently misjoined claim against non-diverse physician and otherwise denying motion to remand).

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2006, I mailed a copy of the above and foregoing instrument to:

Tim Maxcey
STIPE, HARPER LAW FIRM
P. O. Box 1369
McAlester, OK 74502-1369

ATTORNEY FOR PLAINTIFF