joinder" but noting that the latter inquiry is broader); Cranston
v. Mariner Healthcare Mgmt. Co., 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").⁴

---

⁴      The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge." In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans. He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff." He argues further that

    [j]ust as Merck failed to adequately warn Plaintiff's
    Decedent's physician, Dr. Evans failed to conduct
    regular monitoring of Plaintiff's Decedent to ensure the
    discovery of potentially serious side effects. . . .
    including, not limited to, failing to perform adequate
    tests before the initiation of Vioxx treatment, and
    failing to subsequently perform other tests after
    initiation of Vioxx therapy to monitor any change in the
    status of Plaintiff's decedent. . . . Defendant Evans
    also failed to warn Plaintiff's Decedent of possible
    side effects. . . .

None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug.  Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading.  See However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263
263 n.14 (5ᵗʰ Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7



For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE

8






## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL
## DISTRICT OF HINDS COUNTY, MISSISSIPPI

FRANK OMOBUDE, INDIVIDUALLY
AND ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF
JOSEPHINE OMOBUDE, DECEASED                      **PLAINTIFF**

VS.                                             NO. 2002-_____

MERCK & COMPANY, INC. AND
ROBERT M. EVANS, M.D.                           **DEFENDANTS**

DEC 3 1 2002
BARBARA DUNN
CIRCUIT CLERK      D.C.

### COMPLAINT

COMES NOW the Plaintiff, Frank Omobude, individually and on behalf of the wrongful death beneficiaries of Josephine Omobude, Deceased, in the above-styled and numbered cause, by and through his attorneys of record, and files this, his Complaint against the Defendants, and in support thereof would show unto the Court the following, to-wit:

1.      This is a civil action brought on behalf of Plaintiff's decedent and the wrongful death beneficiaries of Plaintiff's decedent, who was prescribed and used the prescription medication VIOXX (Rofecoxib). This drug caused Plaintiff's decedent to suffer a series of strokes, edema, severe blood clotting, and other injuries and ultimately her death on or about August 23, 2002.  This action seeks damages for personal injuries, including death pursuant to MS Code Ann. Sec. 11-7-13, and damages caused by the drug named herein and ingested by Plaintiff's decedent.

2.      Plaintiff, Frank Omobude, is an adult resident of the First Judicial District of Hinds County, Mississippi and is the son of the Decedent, Josephine Omobude.

3.      Plaintiff's decedent, Josephine Omobude, was as adult resident of the First Judicial District of Hinds County, Mississippi at the time of her death.

4.    Josephine Omobude had five children and her marital status at the time of her death was divorced.    Therefore, the wrongful death beneficiaries of Josephine Omobude are her children, Frank Omobude, Benjamin Omobude, Tony Omobude, Victor Omobude, and Isi Omobude.

5.    Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.    Defendant Robert Evans, M.D. is a physician licensed by the State of Mississippi with his residence and/or principal place of business in the First Judicial District of Hinds County, Mississippi and may be served at his business 1151 N. State Street Suite 601, Jackson, Mississippi 39202.

7.    Venue is proper in the First Judicial District of Hinds County, Mississippi as the cause of action occurred in the First Judicial District of Hinds County, Mississippi.

8.    Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in the First Judicial District of Hinds County, either directly or by agent, and have thus availed themselves of this jurisdiction.

9.    The Plaintiff's claim accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.    Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.    Defendant Merck did manufacture, design, package, market and distribute this drug. This Defendant encouraged the use of this drug

in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums; including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.     At all times relevant hereto, Defendant Merck actually knew of the defective nature of its product as herein set forth, yet continued to design, manufacture, market, distribute and sell its product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by the product. Defendant's conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's decedent's individual rights, and hence punitive damages are appropriate.

<u>COUNT I</u>

12.     Plaintiff alleges all prior paragraphs of this complaint as if fully set out herein.

13.     The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by one or more of these Defendants, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

14.     Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendants Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

15.     The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

-3-



16.     Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx via post-marketing data. The defective nature of this product is a contributing cause of Plaintiff's decedent's injuries and death.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT II

17.     Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

18.     Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce. Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

19.     Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

20.     Defendant Merck knew or should have known that consumers such as Plaintiff's decedent would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein. Defendant's negligence was a contributing cause of Plaintiff's decedent's injuries and death.

WHEREFORE, Plaintiff demands judgment against Defendant Merck in such an

-4-



amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT III

21.  Plaintiff realleges all prior paragraphs of this complaint as if fully set out hereto.

22.  Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

23.  Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

24.  Vioxx does not conform to the express representations made through Defendant Merck's advertising.

25.  Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

26.  Defendants Merck's conduct in this matter was a contributing cause of the injuries and damages suffered by Plaintiff's decedent, including her death.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

### COUNT IV

27.  Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

28.  At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiff's decedent, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

29.  Plaintiff's decedent reasonably relied upon the skill and judgment of

-5-



Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its
intended use.

30. Contrary to such implied warranty, Vioxx was not of merchantable quality, or
safe or fit for its intended use, because the product was and is unreasonably dangerous and
unfit for the ordinary purposes for which they were intended and used described above.

31. Defendant's conduct in this regard was contributing cause of injuries and
damages, including the death of Plaintiff's decedent.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such an
amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

**COUNT V**

53. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out
herein.

54. Defendant Merck negligently, recklessly, intentionally and fraudulently made
material misrepresentations that Vioxx was safe and effective. Defendant represented
Vioxx as safe so that the general consuming public, including Plaintiff's decedent in
particular, would rely upon said representations when purchasing said products.

55. Prior to and following the introduction of Vioxx into the market as a
prescribable pharmaceutical medication, Defendant Merck set in motion a public relations
and advertising/marketing campaign to market its product to the general consuming public
by way of press releases, print advertisement, mass mail out advertisements and TV
advertising. Defendant Merck's representations made concerning Vioxx as a safe and
effective drug were made so that Plaintiff's decedent, and the general consuming public,
would rely on said representations and seek prescriptions for this drug from their treating
physicians. In fact, Plaintiff's decedent did rely on Defendant Merck's representations in
this regard.

-6-

60. At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with reckless disregard to their truth. As a result of Defendant's fraud and misrepresentation, Plaintiff's decedent suffered a premature death and Plaintiff has suffered and will continue to suffer the loss of his mother/decedent.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VI

61. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62. Plaintiff's decedent sought the care and treatment of Defendant Robert M. Evans, M.D. (hereafter "Evans") for various ailments and maladies.

63. In relation to said care and treatment, Defendant Evans prescribed Vioxx.

64. Defendant Evans knew, or should have known, of the dangerous side effects of these medications, and his prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

65. Defendant Evans's medical negligence was a direct and proximate cause of the decedent's injuries and death.

WHEREFORE, this Plaintiff demands judgment against Defendant Evans in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

66. Upon the trial of this case, it will be shown that Plaintiff's decedent was caused to sustain injuries and damages as a direct and proximate result of Defendants' actions; and Plaintiff will respectfully request the Court and jury to determine the amount of

-7-



loss Plaintiff has suffered and incurred, in the past and in the future.  Plaintiff seeks

damages for medical expenses; pain and suffering; emotional distress; loss of enjoyment of

life; loss of the companionship, love and society of decedent; lost wages and other

accumulations of decedent; and other such damages as may be shown at trial of this

matter.

67.     At all times relevant hereto, Defendant Merck actually knew of the

defective nature of their product as herein set forth and continued to design, manufacture,

market, distribute and sell their product so as to maximize sales and profits at the expense

of the public health and safety in conscious disregard of the foreseeable harm caused by

this produce.  Defendant Merck's conduct exhibits such an entire want of care as to

establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or

willful or intentional disregard of the Plaintiff and the Plaintiff's decedent's individual rights.

The Plaintiff, therefore, is separately and singularly entitled to punitive damages from the

Defendant Merck.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be

cited to appear and answer herein; that upon final trial herein, Plaintiffs recover damages as

set forth above from Defendants, including cost of Court, pre-judgment and post-judgment

interest at the legal rate, and that Plaintiffs have such other and further relief, general and

special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

FRANK   OMOBUDE,   INDIVIDUALLY   AND   ON
BEHALF    OF    THE    WRONGFUL    DEATH
BENEFICIARIES    OF    JOSEPHINE    OMOBUDE,
PLAINTIFF

BY _____

Attorneys for Plaintiff

-8-

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

-9-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO

VS.

CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT

DEFENDANTS

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**JUN 17 2003**

J.T. NOBLIN, CLERK
BY_____DEPUTY

PLAINTIFFS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and
motion for leave to amend the complaint. Defendants G.D. Searle
LLC, Pharmacia Corporation, Monsanto Company (now known as
Pharmacia Corporation) and Pfizer, Inc. have responded in
opposition to the motion and the court, having considered the
memoranda of authorities submitted by the parties, concludes that
both the motion to amend and the motion to remand should be
denied.

Plaintiffs, through counsel, filed this lawsuit in the
Circuit Court of Jasper County on December 31, 2002, seeking to
recover damages for injuries allegedly sustained as a result of
their having taken one or both of the prescription pain relief

drugs Celebrex and Vioxx.  Plaintiffs, all Mississippi residents,
named as defendants five non-resident pharmaceutical
manufacturers, and also included four "John Doe" defendants, all
of whom were alleged to be "Mississippi physicians whose true
names and identities are presently unknown or unconfirmed."
On January 10, 2003, the manufacturer defendants, who had not yet
been served with process, removed the case to this court on the
basis of diversity jurisdiction.  In their motion to remand, filed
promptly following removal, plaintiffs contend that defendants'
pre-service removal constitutes a defect in the removal procedure
which necessitates remand.  Plaintiffs further urge that in the
event the case is not remanded on that basis, they should be
allowed to amend their complaint to identify those "Mississippi
physicians" who were initially identified only as "John Doe"
defendants, as a consequence of which complete diversity will be
lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

    There is no question but that there is now (and that there
was at the time of removal) jurisdiction based on diversity of
citizenship pursuant to 28 U.S.C. § 1332.  The amount in
controversy exceeds the $75,000 threshold for jurisdiction under
the diversity statute (a point which plaintiffs do not dispute);
and although plaintiffs, themselves Mississippi residents, named
John Doe defendants whom they represented were also Mississippi
residents, the law is clear that "the citizenship of defendants
sued under fictitious names shall be disregarded" in determining
whether there is complete diversity for removal purposes.  28

2

U.S.C. § 1441(a).  The remaining defendants named by plaintiffs in
the complaint are all citizens of states other than Mississippi,
and consequently there is complete diversity of citizenship
between the parties.

Moreover, while plaintiffs contend that under the Supreme
Court's decision in <u>Murphy Brothers v. Michetti Pipe Stringing,
Inc.</u>, 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448
(1999), defendants could not properly remove the case until they
were formally served with process and that defendants' pre-service
removal was therefore defective, neither this court, nor any court
identified by plaintiff or of which this court is aware, has
interpreted <u>Murphy Brothers</u> as precluding removal by a defendant
<u>prior to</u> formal service of process.  The Court in <u>Murphy Brothers</u>
held only that a defendant is not obligated to take action in a
case until after it has been properly served with process; it did
not hold that a defendant must await service to take action.  <u>See</u>
<u>Mauldin v. Blackhawk Area Credit Union</u>, No. 01 C 50221, 2002 WL
23830, *1 (N.D. Ill. January 2002)(holding that since the
defendant was not properly served with process, "the thirty-day
removal technically never really began," and therefore, "(the

---

[1]    In <u>Murphy Brothers</u>, the Supreme Court, applying the
"bedrock principle" that "(a)n individual or entity named as a
defendant is not obliged to engage in litigation unless notified
of the action, and brought under a court's authority, by formal
process," concluded that "a named defendant's time to remove is
triggered by simultaneous service of the summons and complaint, or
receipt of the complaint, 'through service or otherwise,' after
and apart from service of the summons, but not by mere receipt of
the complaint unattended by any formal service."  <u>Id</u>. at 347-48.

3

defendant's) notice of removal was timely"). Defendants' removal
was therefore both substantively and procedurally proper.
The question then becomes whether plaintiffs should now be
permitted to amend their complaint, post-removal, to include as
defendants those physicians who were identified as John Doe
defendants in their original complaint. For the reasons that
follow, the court is of the opinion that in this case, plaintiffs'
request to amend should be denied.

       28 U.S.C. § 1447(e) states:

       (e) If after removal the plaintiff seeks to join
       additional defendants whose joinder would destroy
       subject matter jurisdiction, the court may deny joinder,
       or permit joinder and remand the action to the State
       court.

While the statute, by its terms, refers only to post-removal
efforts by plaintiffs to "join additional defendants," the Fifth
Circuit has recognized that § 1447(e) applies, as well, to the
identification of fictitious defendants after removal. See Doleac
ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

       In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir.
1987), the Fifth Circuit addressed the standard applicable to
where a plaintiff seeks to amend to add a non-diverse defendant
following removal of an action on the basis of diversity
jurisdiction. The court held that in such cases, the district
court "should consider the extent to which the purpose of the
amendment is to defeat federal jurisdiction, whether plaintiff has
been dilatory in asking for amendment, whether plaintiff will be
significantly injured if amendment is not allowed, and any other

                                  4

factors bearing on the equities." _Id._ at 1182.  Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the _Hensgens_ analysis inappropriate since "the equitable nature of the _Hensgens_ analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well.  _Lacy v. ABC Ins. Co._, No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the _Hensgens_ factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them.  On the other hand, there can be no doubt that plaintiffs themselves knew – they must have known – the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties.  Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

5

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily
have known and confirmed the identity of the John Doe defendants
before filing this suit, and yet did not seek to learn the
identity of the John Doe defendants, or any of them, until after
the case was removed.[3]  Given that the identity of these
defendants could have been known before suit was filed, it can
fairly be said that the post-removal attempt to join them as
defendants is "dilatory."

That brings the court to the question of plaintiffs' purpose,
or motivation, in suing, or attempting to sue, these doctors.  It
is perhaps true in the usual case that the fact that a plaintiff
has included a defendant as a fictitious defendant in his state
court pleading would tend to belie an inference that the
plaintiff's motivation for seeking to amend post-removal to
substitute a real party for the one previously identified only as
a fictitious party is to defeat diversity jurisdiction.  See
Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 358 (E.D. La. 1998)
(fact that the plaintiff was unable to effect the substitution
before the defendant removed "does not somehow convert any
subsequent effort at substitution into a joinder" for the sole

---

[2]    As defendants note, this new legislation, which took
effect the day after plaintiffs' complaint was filed, placed
significant restrictions on filing lawsuits against physicians.

[3]    Perhaps they had intended to do this prior to serving
the diverse defendants, working under the mistaken impression that
the case would not be removable until at least one of the diverse
defendants was served, and were foiled in their efforts when the
diverse defendants filed their notice of removal prior to service
of process.

purpose of destroying diversity'"); <u>Davis v. American Commercial Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D. La. June 25, 1998) (substitution of real party for fictitious party named prior to removal indicates purpose of joinder is not solely to destroy diversity).  Here, however, the court is persuaded that plaintiffs' motivation, not just for undertaking to now substitute these doctors as the real party defendants, but for having undertaken to sue them in the first place, was to avoid federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which are directed against the manufacturer defendants, and assert products liability based claims, and fraudulent and negligent misrepresentation by those defendants as to the safety and efficacy of the products at issue.  A major theme of these counts – in fact, the major theme – is that the manufacturer defendants knew of the dangers posed by these drugs all along, and yet they withheld this information and intentionally marketed them, "both directly to the consuming public and indirectly to physicians through drugs sales representatives," as safe and effective, and at all times, before, during and after marketing the products, failed to provide adequate warnings or instructions of the defective nature of the products.  The complaint alleges throughout that in addition to their marketing to the consuming public, the manufacturer defendants' sales representatives, who marketed the products to doctors, made fraudulent misrepresentations concerning the safety and efficacy of these

7

products. As to the doctors themselves, plaintiffs' complaint
contains one count charging medical negligence in which plaintiffs
bluntly allege that these physicians prescribed these drugs to
plaintiffs, that they "knew, or should have known, of the
dangerous side effects of these medications," and that their
prescribing these medications "presents a deviation from the
standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in
the alternative, here, given plaintiffs' explicit, repeated and
consistent charge that the manufacturer defendants concealed and
misrepresented information about the subject drugs to physicians,
plaintiffs' entirely conclusory allegation that the doctors "knew,
or should have known, of dangerous side effects of these
medications," without any indication of a factual basis for such
an allegation, strongly suggests to the court that plaintiffs have
sued the physicians only as a means of avoiding federal court.
Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No.
5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the
plaintiffs' general references to knowledge possessed by
"defendants," the complaints, which alleged that the manufacturers
undertook to deceive everyone, including the pharmacist
defendants, about the safety of their drugs, could not "reasonably
and legitimately be construed as alleging any factual basis for
the conclusion that any of the pharmacy defendants had any
knowledge or reason to know of any of the dangers associated with
the product(s) of which plaintiffs contend they were unaware");

8

<u>Brown v. Bristol-Myers Squibb Co.</u>, Civil Action No. 4:02CV301LN (S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any legitimate basis for suing these defendants, if it were to turn out that plaintiffs, in fact, do have some basis for suing them, there is nothing to prevent them from bringing a separate action against them in state court, and in the court's opinion, plaintiffs will not be prejudiced if required to proceed against the doctors separately.[4] The court herein holds only that plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs' motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

_____

[4]     Of course, if required to proceed separately against the doctor defendants, plaintiffs would no doubt find their claims subject to the newly enacted medical malpractice tort reform law; but their efforts to avoid that law in the manner they chose was of questionable legitimacy to begin with. Had they a genuinely cognizable claim against the doctors, they could and should have made every reasonable effort to properly name them at the outset, and could and should have pled a proper claim against them. They did neither.

9

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER
COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO

**PLAINTIFFS**

VS.

NO. 2002- 12-0236

MERCK & COMPANY, INC.
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a
foreign corporation; Monsanto Company;
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true
names and identities are presently unknown
or unconfirmed but will be substituted by
amendment

**FILED**
JASPER COUNTY, MISS.

DEC 3 1 2002

MARK A. ISHEE
CIRCUIT CLERK

**DEFENDANTS**

## COMPLAINT

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie
Varnado, in the above-styled and numbered cause, by and through their attorneys of
record, and file this their Complaint against the Defendants, and in support thereof
would show unto the Court the following, to-wit:

1.      This is a civil action brought on behalf of Plaintiffs who were prescribed
and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX
(Celecoxib). Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal
problems, severe edema, and other injuries. Plaintiff Porter used Celebrex which
caused him to suffer a stroke and other injuries. Plaintiff Varnado used Vioxx which
caused her to suffer from heart problems, edema and other injuries. This action seeks
damages for personal injuries and damages caused by the drugs named herein and



Ingested by Plaintiffs.

2.     Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi. Plaintiff Flora Sumrall and Annie Laura Vamado are adult residents of Clarke County, Mississippi.

3.     Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

4.     Defendant G. D. Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi. As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077. At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pharmacia is a Deleware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent:   CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5.     Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.    Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.    Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.    Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.    The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit. Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.    Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendant Merck did manufacture, design, package, market and distribute this drug. This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and

effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.     Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Seale, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.