# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re:  VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
|  | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | |
| ALL MEDICAL MONITORING CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 | MAGISTRATE JUDGE KNOWLES |

**MOTION AND INCORPORATED MEMORANDUM
TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS'
<u>MEDICAL MONITORING MASTER CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 5

I.  PLAINTIFFS' CLASS ALLEGATIONS MUST MEET RULE 23'S
    STRICT PREDOMINANCE, COHESION AND MANAGEABILITY
    REQUIREMENTS ............................................................................................ 6

II. PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS SHOULD BE
    STRICKEN ...................................................................................................... 8

    A.  New Jersey Choice-Of-Law Analysis Requires Application Of The
        Laws Of Forty-Six Different States. .................................................... 9

    B.  Significant Variations Among The Applicable States' Medical
        Monitoring Laws Preclude A Finding Of Predominance, Cohesion,
        Or Typicality. ..................................................................................... 10

III. PLAINTIFFS' STATEWIDE CLASS ALLEGATIONS SHOULD BE
     STRICKEN .................................................................................................... 13

    A.  Plaintiffs Cannot Establish Merck's Alleged Negligence/Wrongful
        Conduct Through Common Proof ....................................................... 15

    B.  Plaintiffs Cannot Demonstrate Entitlement To Medical Monitoring
        On A Classwide Basis. ....................................................................... 17

    C.  Plaintiffs Cannot Address Merck's Affirmative Defenses Through
        Common Proof. .................................................................................. 22

CONCLUSION ............................................................................................................ 24

857370v.1

# TABLE OF AUTHORITIES

Page

**Cases**

*Arch v. Am. Tobacco Co., Inc.,*
   175 F.R.D. 469 (E.D. Pa. 1997) ................................................................. 23

*Ayers v. Jackson,*
   525 A.2d 287 (N.J. 1987) ........................................................ 13, 15, 19, 20

*Ball v. Union Carbide Inc.,*
   385 F.3d 713 (6th Cir. 2004) ...................................................................... 18

*Barnes v. Am. Tobacco Co.,*
   161 F.3d 127 (3d Cir. 1998) ............................................................... passim

*Boughton v. Cotter Corp.,*
   65 F.3d 823 (10th Cir. 1995) ........................................................................ 7

*Bower v. Westinghouse Elec. Corp.,*
   552 S.E.2d 424 (W. Va. 1999) .............................................................13, 19, 20

*Burns v. Jaquays Mining Corp.,*
   752 P.2d 28 (Ariz. Ct. App. 1987) ........................................................12, 19, 20

*Castano v. Am. Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) ............................................................... 3, 9, 11

*Clay v. Am. Tobacco Co.,*
   188 F.R.D. 483 (S.D. Ill. 1999) .................................................................... 7

*Cook v. Rockwell Int'l Corp.,*
   181 F.R.D. 473 (D. Colo. 1998) ................................................................... 7

*Day v. NLO,*
   851 F. Supp. 869 (N.D. Ohio 1994) .......................................................13, 19, 20

*Dhamer v. Bristol-Myers Squibb Co.,*
   183 F.R.D. 520 (N.D. Ill. 1998) .................................................................. 10

*Duncan v. Northwest Airlines, Inc.,*
   203 F.R.D. 601 (W.D. Wash. 2001) ............................................................ 23

*Emig v. Am. Tobacco Co.,*
   184 F.R.D. 379 (D. Kan. 1998) ................................................................... 14

*Gen. Tel. Co. v. Falcon,*
   457 U.S. 147 (1982) .................................................................................... 5

*Georgine v. Amchem Prods.,*
   83 F.3d 610 (3d. Cir. 1996) ......................................................................... 23

*Grovatt v. St. Jude Med.,*
   No. 06-3860 (8th Cir. Nov. 17, 2006) ........................................................... 2

*Guillory v. Am. Tobacco Co.,*
   2001 WL 290603 (N.D. Ill. Mar. 20, 2001) ................................................... 23

i

# TABLE OF AUTHORITIES
## (continued)

Page

*Hammett v. Am. Bankers Ins. Co.*,
   203 F.R.D. 690 (S.D. Fla. 2001) .................................................................... 7

*Hansen v. Am. Tobacco Co., Inc.*,
   1999 WL 33659388  (E.D. Ark. July 21, 1999) ................................................ 24

*In re Am. Med. Sys.*,
   75 F.3d 1069 (6th Cir. 1996)............................................................... 4, 9, 16

*In re Baycol Prods. Litig.*,
   218 F.R.D. 197 (D. Minn. 2003) .................................................................. 2, 15

*In re Paxil Litig.*,
   212 F.R.D. 539 (C.D. Cal. 2003) .................................................................. 22

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   211 F.R.D. 435 (W.D. Wash. 2002)............................................................ 5, 22

*In re Prempro Prods. Liab. Litig.*,
   230 F.R.D. 555 (E.D. Ark. 2005) ........................................................... passim

*In re Propulsid Prods. Liab. Litig.*,
   208 F.R.D. 133 (E.D. La. 2002) ............................................................. passim

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y. 2002)......................................................3, 11, 20, 22

*In re Rhone-Poulenc Rorer Inc.*,
   51 F.3d 1293 (7th Cir. 1995)........................................................................ 9

*In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*,
   2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ................................ 2

*In re St. Jude Med., Inc.*,
   425 F.3d 1116 (8th Cir. 2005).........................................................2, 8, 14, 21

*In re Vioxx Prods. Liab. Litig.*,
   2006 WL 3391432 (E.D. La. Nov. 22, 2006) ......................................... passim

*Lewallen v. Medtronic USA*,
   2002 WL 31300899 (N.D. Cal. Aug. 28, 2002)............................................ 3, 23

*Linkous v. Medtronic, Inc.*,
   1985 U.S. Dist. LEXIS 16277 (E.D. Pa. 1985)............................................... 6

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir. 1985).................................................................... 5

*McCafferty v. Centerior Serv. Co.*,
   983 F. Supp. 715 (N.D. Ohio 1997) ............................................................ 15

*Mehl v. Canadian Pac. Ry.*,
   227 F.R.D. 505 (D.N.D. 2005).................................................................... 7

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*O'Connor v. Boeing N. Am., Inc.*,
   197 F.R.D. 404 (C.D. Cal. 2000) ............................................ 24

*Perez v. Metabolife Int'l, Inc.*,
   218 F.R.D. 262 (S.D. Fla. 2003) ....................................... passim

*Petito v. A.H. Robins Co.*,
   750 So. 2d 103 (Fla. Dist. Ct. App. 1999) ...................... passim

*Philip Morris, Inc. v. Angeletti*,
   752 A.2d 200 (Md. 2000) ......................................................... 14

*Redland Soccer Club v. Dep't of the Army*,
   696 A.2d 137 (Pa. 1997) .................................................. passim

*Rink v. Cheminova, Inc.*,
   203 F.R.D. 648 (M.D. Fla. 2001) .......................................... 19

*Rodney v. Nw. Airlines, Inc.*,
   146 Fed. Appx. 783 (6th Cir. 2005) ...................................... 23

*Ross-Randolph v. Allstate Ins.*,
   2001 U.S. Dist. LEXIS 25645 (D. Md. May 11, 2001) ........... 6

*Sanders v. Johnson & Johnson, Inc.*,
   2006 WL 1541033 (D.N.J. June 2, 2006) ............................... 2

*Sinclair v. Merck & Co., Inc.*,
   913 A.2d 832 (N.J. Super. Ct. App. Div. 2007) ................... 22

*Spence v. Glock GES.m.b.H.*,
   227 F.3d 308 (5th Cir. 2000) ................................................... 9

*State ex rel. City of Martinsburg v. Sanders*,
   632 S.E.2d 914 (W. Va. 2006) ............................................... 15

*Transamerica Ins. Co. v. Doe*,
   840 P.2d 288 (Ariz. Ct. App. 1992) ...................................... 15

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .................................................................. 9

*Werlein v. United States*,
   746 F. Supp. 887 (D. Minn. 1990) ........................................ 19

*Wilson v. Brush Wellman, Inc.*,
   817 N.E.2d 59 (Ohio 2004) .................................................... 23

*Zehel-Miller v. AstraZenaca Pharms., LP*,
   223 F.R.D. 659 (M.D. Fla. 2004) ..................................... 8, 11

857370v.1

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001).................................................................................................. 7

**Statutes**

28 U.S.C. § 1407 ................................................................................................................................ 9

iv

857370v.1

## INTRODUCTION

Plaintiffs' medical monitoring class action complaint seeks certification of a sprawling, nationwide class of individuals who took Vioxx during different time periods, for different conditions, at different dosages and for different lengths of time.

State and federal courts around the country – including this Court – have uniformly rejected medical monitoring classes in similar circumstances, recognizing that such cases cannot be adjudicated on a classwide basis because almost all the inquiries necessary to determine liability (including failure-to-warn, susceptibility and extent of exposure) are highly individualized.  For example:

- In *In re Propulsid Prods. Liab. Litig.*, **208 F.R.D. 133, 147 (E.D. La. 2002)**, this Court denied certification of a class of users of the drug Propulsid seeking medical monitoring relief under Rule 23(b)(2).  The Court noted that the U.S. Court of Appeals for the Fifth Circuit requires a district court to consider the significance and impact of variations in state law on manageability before certifying a class, and ultimately held that "variations involving proof of causation, the effect of warnings, the significance of the defendants' direct marketing to consumers, and other similar issues may swamp any common issues and defeat cohesiveness." *Id.* at 147.  Finally, the Court noted that there was an absence of recommendations from the medical community regarding the need for a medical monitoring program for users of Propulsid and that courts should not attempt to fill such a void.  *Id.*

- In *In re Prempro Prods. Liab. Litig.*, **230 F.R.D. 555, 570 (E.D. Ark. 2005)**, the court denied certification of a medical monitoring class of women who took estrogen replacement therapy.  According to the court, the proposed class failed to satisfy the cohesion requirement of Rule 23(b)(2) because of variations in state law, individualized issues related to specific causation, and the lack of a recommendation within the medical community that women using the therapy receive monitoring.  "[N]o matter how you cut it, cube it, or slice it, Plaintiffs cannot overcome the problems with *individual issues of law and fact*, which eclipse any possible common questions or cohesion among their claims." *Id.* at 573 (emphasis added).

- In *Perez v. Metabolife Int'l, Inc.*, **218 F.R.D. 262, 270 (S.D. Fla. 2003)**, a suit against the manufacturer of a dietary supplement, the court denied class certification of a Florida medical monitoring class under Rule 23(b)(1), (b)(2), and (b)(3), finding that virtually none of the requirements of Rule 23 were

1

satisfied.  The court walked through the requirements of a medical monitoring claim pursuant to Florida law, and determined that almost all of them required some type of individualized determination.  For example, the court noted that proof of negligence by the defendant "may depend largely on individualized issues related to what warning labels the particular class member received and whether the Defendant can defend by proving that the individual was comparatively negligent by ignoring warnings regarding contraindications or health risks for people suffering from certain conditions."  *Id.* at 271.  In addition, the court noted that differences in susceptibility to increased risk of different diseases based on individual factors "would be unmanageable in the framework of a class action."  *Id.* at 272.  Ultimately the court determined that even if it was found that [the drug] could cause injuries, "***individualized inquiries would still be required*** to assure that the medical monitoring elements were met with respect to each member."  *Id.* at 273 (emphasis added).

- In ***In re St. Jude Med., Inc.***, **425 F.3d 1116, 1121 (8th Cir. 2005)**, the U.S. Court of Appeals for the Eighth Circuit decertified a medical monitoring class of patients implanted with mechanical heart valves because the class was not sufficiently cohesive to satisfy Rule 23(b)(2).  In the court's words:  "[p]roposed medical monitoring classes suffer from cohesion difficulties, and numerous courts across the country have denied certification of such classes."  *Id.* at 1122.  According to the court, deciding whether an individual requires medical monitoring is a necessarily "***individualized inquiry*** depending on that patient's medical history, the condition of the patient's heart valves at the time of implantation, the patient's risk factors for heart valve complications, the patient's general health, the patient's personal choice, and other factors."  *Id.* (emphasis added).[1]

- In ***Sanders v. Johnson & Johnson, Inc.***, **Civ. No. 03-2663 (GEB), 2006 WL 1541033, at \*6 (D.N.J. June 2, 2006)**, a suit against the manufacturer of post-surgical gel, the court denied certification of a medical monitoring class under Rule 23(b)(2), finding that the plaintiff failed to demonstrate that the proposed class was cohesive.  In so holding, the court stated that there were numerous individual questions of fact that undercut cohesiveness, including "at the very least, how individual class members were injured, what alternative causes may have led to their alleged injuries and the extent of those injuries."  *Id.* at \*10.  The court further held that the plaintiff offered no basis for the court to find medical monitoring appropriate, as "there is no evidence . . . of any recommendations from the medical community for a medical monitoring program or clinical study of the effects of [the gel] on its users."  *Id.*

---

[1]     On remand, the district court granted plaintiffs' renewed motion for class certification as to a ***consumer protection*** subclass.  *See In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*, MDL No. 01-1396, 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006).  The second class certification order has now been appealed as well.  *See Grovatt v. St. Jude Med.*, No. 06-3860 (8th Cir. Nov. 17, 2006).

857370v.1

- In *In re Baycol Prods. Litig.*, **218 F.R.D. 197, 211 (D. Minn. 2003)**, the court denied class certification of a prescription drug medical monitoring class, finding that the Rule 23(a) adequacy and typicality requirements were not satisfied.  The court was not convinced that those proposed class members who had already suffered injury would be adequate representatives for those who were currently asymptomatic.  *Id.*  The court also noted that "class members took [the drug] at *different times*, in *different amounts*, with different co-prescriptions and with *different medical backgrounds*."  *Id.* at 213 (emphasis added).  Finally, the court held that because "[p]laintiffs' expert . . . pointed out that the risks of future injury vary depending on the amount and length of time during which [the drug] was ingested . . ., the potential for future injury can only be decided by looking to the individual medical histories of the class members."  *Id.*

- In *In re Rezulin Prods. Liab. Litig.*, **210 F.R.D. 61, 73 (S.D.N.Y. 2002)**, the court found that certification of a medical monitoring class for users of a diabetes drug was inappropriate under both Rule 23(b)(2) and Rule 23(b)(3).  According to the court, class certification was inappropriate because the class definition called for medical determinations based on each user's specific medical information.  "Even where medical monitoring may be available in defined circumstances," the court held, "the need and desire of individual subclass members . . . *varies considerably*."  *Id.* at 75 (emphasis added).

- In *Lewallen v. Medtronic USA*, **No. C01-20395RMW, 2002 WL 31300899, at \*2 (N.D. Cal. Aug. 28, 2002)**, the court denied certification of a medical monitoring class on behalf of individuals who had received a stent graft because common questions of law and fact did not predominate.  According to the court, the proposed class was plagued by individual factual variations, including causation issues, physician knowledge, and varying affirmative defenses.  *Id.*

In contrast, there are *no* federal court decisions upholding certification of a medical monitoring class anywhere near the size and scope of the class proposed here.

All of the problems repeatedly noted by courts in rejecting certification of medical monitoring cases infect plaintiffs' proposal as well.  As an initial matter, this Court has already rejected the possibility of a nationwide product liability class action involving Vioxx users across the country in the context of the proposed personal injury class action.  As this Court noted, the U.S. Court of Appeals for the Fifth Circuit – consistent with numerous other courts – has rejected multi-state product liability class actions because "[i]n a multi-state class action, variations in

state law may swamp any common issues and defeat predominance," rendering class treatment

inappropriate. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996); *see also In re Am.

Med. Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (rejecting certification of a multi-state product

liability class, in part because "the law of negligence differs from jurisdiction to jurisdiction").

Plaintiffs' fall-back proposal that the court certify 46 statewide medical monitoring

classes does not solve the problem.  In order to prevail on their claims in this case, each proposed

class member would have to show that Merck failed to warn him or her of the dangers of Vioxx

and that, as a result of such failure, he or she was sufficiently exposed to Vioxx to require the

medical monitoring program proposed by plaintiffs.  Once again, this Court has already

recognized in denying certification of plaintiffs' personal injury claims that such a determination

cannot be made on a classwide basis because it would require separate inquiries into "what

Merck knew about the risks of the alleged injury when the patient was prescribed Vioxx, what

Merck told physicians and consumers about those risks in the Vioxx label and other media, what

the plaintiffs' physicians knew about these risks from other sources, and whether the plaintiffs'

physicians would still have prescribed Vioxx had stronger warnings been given." *In re Vioxx

Prods. Liab. Litig.*, MDL No. 1657, 2006 WL 3391432, at *9 (E.D. La. Nov. 22, 2006).

In addition, the issue of causation is similarly wrought with individualized proof

problems.  There is simply no way to establish on a classwide basis that all of the putative class

members have a similarly "increased risk" of cardiovascular injuries *as a result of* Vioxx use.

For example, as the trials conducted thus far in this litigation have shown, many Vioxx users

have pre-existing risk factors for cardiovascular injury – such as tobacco use, diabetes, prior

heart attacks, hypertension, and/or obesity – that put them at increased risk of cardiovascular

injury separate and apart from their Vioxx use.  Others have no risk factors at all.  Accordingly,

4

it is simply not possible to make a uniform determination that all Vioxx users across the country

have the same, **_increased_** risk of cardiovascular injury and need for medical monitoring as a

result of their Vioxx use.  *Id.* at *7 ("individualized factual issues concerning specific causation

and damages dominate [the Vioxx] litigation and create independent hurdles to certification").

For all of these reasons, there is no possibility that plaintiffs' proposal would survive full

class certification scrutiny, and plaintiffs' class claims should be stricken.

<u>**ARGUMENT**</u>

Where – as here – it is clear from the face of plaintiffs' Complaint that their proposed

class is not certifiable, the better course is to forgo class certification discovery and simply strike

the class action allegations.  *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)

("Although in some cases a district court should allow discovery to aid the determination of

whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie

showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to

produce substantiation of the class allegations.").  *See also Gen. Tel. Co. v. Falcon*, 457 U.S.

147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings" to show that a

class should not be certified).

For example, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 211 F.R.D. 435, 437

(W.D. Wash. 2002), the court granted the defendants' motion to strike plaintiffs' class

allegations without discovery on class issues.  There – as here – the proposed classes consisted of

"a multitude of individuals with different backgrounds, personal characteristics, medical

histories, health problems, and lifestyles," all of whom ingested PPA-containing products "at

different times, in different amounts, and with varying results."  *Id*. at 439.  Based on these

variations, the court concluded that "[a]n assessment of specific causation . . . [would

5

necessarily] dissolve[] into a myriad of individualized causation inquiries." *Id*.  Because

plaintiffs "failed to demonstrate that discovery would be likely to yield persuasive information

substantiating the class allegations," the court simply struck the class allegations.  *Id*.  Other

courts have done the same.  *See*, *e.g.*, *Thompson v. Merck & Co.*, No. 2:01cv1004, 2004 U.S.

Dist. LEXIS 540, at *8-9 (E.D. Pa. Jan. 6, 2004) (striking class allegations where "[n]o amount

of additional class discovery [would] alter" conclusion that plaintiff's claims could not meet

Rule 23 requirements); *Ross-Randolph v. Allstate Ins.*, No. DKC 99-3344, 2001 U.S. Dist.

LEXIS 25645, at *14, *32 (D. Md. May 11, 2001) (striking class allegations and refusing to

permit class discovery because "[i]n determining whether a party complies with Rule 23, a court

does not have to wait until class certification is sought").

       As set forth below, plaintiffs' medical monitoring claims are patently uncertifiable under

controlling Fifth Circuit law because of the numerous legal and factual variations that would

render a class trial unmanageable and unfair.  Accordingly, instead of wasting the Court's and

the parties' resources on full class certification discovery and briefing, the class allegations

should simply be stricken from plaintiffs' Complaint.

## I.    PLAINTIFFS' CLASS ALLEGATIONS MUST MEET RULE 23'S STRICT PREDOMINANCE, COHESION AND MANAGEABILITY REQUIREMENTS.

       In their Complaint, plaintiffs assert that their medical monitoring claims are appropriate

for certification under Fed. R. Civ. P. 23(b)(1), (2), or (3).  (*See* MM Master Compl. ¶¶ 159, 160,

161.)  However, certification under Rule 23(b)(1) applies in "limited fund" cases, not tort cases,[2]

---

[2]      Rule 23(b)(1) allows for class treatment in order to avoid inconsistent adjudications that would create "incompatible standards of conduct" for the defendant, Fed. R. Civ. P. 23(b)(1)(A), or where individual adjudications would "substantially impede" the ability of other proposed class members to protect their interests, Fed. R. Civ. P. 23(b)(1)(B).  Rule 23(b)(1)(A) does not apply to medical monitoring claims like plaintiffs' because "inconsistent adjudications" in medical monitoring cases involving pharmaceuticals "is to be expected, since individual differences in risk factors, medical histories, and history of usage of [the drug] may make medical

6

and regardless of whether Rule 23(b)(2) or (b)(3) applies,[3] plaintiffs' claims fail for the same

reason:  lack of predominance/cohesion.

Although Rule 23(b)(2) "does not expressly contain a predominance and superiority

requirement as does Rule 23(b)(3), certification under 23(b)(2) does not relieve a court of its

obligation to determine whether the existence of individual issues precludes class certification."

*Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 495 (S.D. Ill. 1999).  To the contrary, most courts

have recognized that "[a] Rule 23(b)(2) class should actually have more cohesiveness than a

Rule 23(b)(3) class."  *Id.*; *see also Barnes*, 161 F.3d at 142-43 ("[A] (b)(2) class may require

more cohesiveness than a Rule 23(b)(3) class.  This is so because in a (b)(2) action, unnamed

---

monitoring inappropriate for some class members even if it is found to be warranted for others." *Perez*, 218 F.R.D. at 275.  Accordingly, "there is nothing incompatible about different courts' permitting medical monitoring for some plaintiffs while denying it to others." *Id.* at 274; *see also Linkous v. Medtronic, Inc.*, 1985 U.S. Dist. LEXIS 16277, *22 (E.D. Pa. 1985) (denying certification of class of recipients of allegedly defective pacemakers seeking medical monitoring because "at-risk tort litigation does not fit the standard of 23(b)(1)(A)").  Moreover, Rule 23(b)(1)(B) applies only where "there are multiple claimants to a limited fund and there is a risk that if litigants are allowed to proceed on an individual basis those who sue first will deplete the fund and leave nothing for the late-comers." A. Miller, An Overview of Federal Class Actions: Past, Present and Future at 45 (1977).  *See also Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995) (upholding denial of class certification of medical monitoring class under 23(b)(1)(A) and 23(b)(1)(B) where no showing was made that there was a limited amount of money available to satisfy individual claims).  Plaintiffs have not made – and cannot make – such an allegation in this case.

[3]      Application of Rule 23(b)(2) is also inappropriate because the putative class members allege individual (not group) injuries.  Rule 23(b)(2) "was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998) (internal quotation omitted).  Thus, the "[i]njuries remedied through (b)(2) actions are really **group, as opposed to individual injuries**," and the "members of a (b)(2) class are generally bound together through **preexisting or continuing legal relationships** or by some significant common trait such as race or gender." *Id.* at 143 n.18 (emphasis added).  Moreover, Rule 23(b)(2) does not apply where, as here, "notwithstanding a request for injunctive or declaratory relief, the predominant relief requested is monetary." *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 695 (S.D. Fla. 2001).  *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (upholding denial of Rule 23(b)(2) class certification, noting that "[a] request for medical monitoring cannot be categorized as primarily equitable or injunctive per se.  Many courts . . . have recognized that medical monitoring relief is appropriate only as an element of damages after independent proof of liability."); *Mehl v. Canadian Pac. Ry.*, 227 F.R.D. 505, 516 (D.N.D. 2005) (refusing to certify medical monitoring program to provide screening for individuals exposed to a "toxic cloud" and to "fund an epidemiological and public health study to explore the nature and extent of illness resulting from significant exposures to anhydrous ammonia" under 23(b)(2) because such relief was merely a claim for future expenses); *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 479-80 (D. Colo. 1998) (even where relief sought was diagnostic testing and medical screening necessary to facilitate early detection and treatment of disease, rather than damages for past, present, or future injury, such relief was primarily a suit for damages).

members are bound by the action without the opportunity to opt out."); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 147 (applying "cohesiveness" standard to reject medical monitoring class action). Thus, the individualized issues identified under a Rule 23(b)(3) analysis apply equally to the question of whether a medical monitoring class can be certified under 23(b)(2). *See Zehel-Miller v. AstraZenaca Pharms., LP*, 223 F.R.D. 659, 664 (M.D. Fla. 2004) (denying class certification of medical monitoring class under Rule 23(b)(2) because "all of the individual issues identified in [the 23(b)(3) analysis] destroy any semblance of cohesion").

Furthermore, Rule 23(b)(2) classes must be manageable. As this Court recognized in *Propulsid*, "[t]he need for manageability at trial which has been clearly recognized . . . in (b)(3) actions also exists in (b)(2) actions." 208 F.R.D. at 146; *see also In re St. Jude*, 425 F.3d at 1121 ("A [23(b)(2)] 'suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently.'" (quoting *Barnes*, 161 F.3d at 142-43). Because, as explained below, the highly individualized nature of plaintiffs' claims defeats a finding of predominance or cohesion and because a classwide trial would be wholly unmanageable, certification would be inappropriate in this case regardless of whether it is evaluated under Rule 23(b)(2) or Rule 23(b)(3) – and plaintiffs' class allegations should therefore be stricken.

## II.   PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS SHOULD BE STRICKEN.

Virtually every court across the country has recognized that nationwide product liability class actions are simply not certifiable – regardless of whether plaintiffs seek personal injury damages or medical monitoring – because of wide variations in state law.

This Court has already addressed this very question in connection with the Vioxx personal injury class actions, rejecting certification in part because the "application of the laws of

8

fifty-one jurisdictions to the claims of the proposed class creates problems for the typicality, adequacy, predominance, and superiority requirements of Rule 23." *In re Vioxx Prods. Liab. Litig.*, 2006 WL 3391432, at *7. This is consistent with the clear dictates of the U.S. Court of Appeals for the Fifth Circuit that the need to apply numerous states' laws defeats certification because "variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco*, 84 F.3d 734, 741 (5th Cir. 1996); *see also In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 147 (holding that plaintiff "failed to carry her burden of establishing the prerequisites for class certification" of medical monitoring class where legal standards "involving proof of causation, the effect of warnings, the significance of the defendants' direct marketing to consumers, and other similar issues" could vary among the states); *Spence v. Glock GES.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000); *In re Am. Med. Sys. Inc.*, 75 F.3d at 1085; *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

As in those cases, plaintiffs' proposed medical monitoring class fails because: (1) plaintiffs' claims must be decided under the law of the state where each proposed class member purchased and took the drug; and (2) the need to apply multiple states' laws in this case precludes a finding of predominance, cohesion or typicality.

A. **New Jersey Choice-Of-Law Analysis Requires Application Of The Laws Of Forty-Six Different States.**

Plaintiffs attempt to avoid the serious predominance and cohesion problems posed by a nationwide class by asserting that New Jersey law applies to all class members' claims. (MM Master Compl. ¶ 150.) However, as explained in Merck's Motion to Dismiss Plaintiffs' Medical Monitoring Class Action Complaint ("Motion to Dismiss"), in cases transferred pursuant to 28 U.S.C. § 1407, the transferee court must apply the substantive state law, including the choice-of-law rules, that would have applied in the transferor court. *See Van Dusen v. Barrack*, 376 U.S.

9

612, 639 (1964).  Accordingly, the law applicable to each named plaintiff's claims must be determined by reference to the choice-of-law rules of the state in which that plaintiff originally filed suit.  (Mot. to Dismiss at 4.)

Plaintiffs suggest that the Court should apply New Jersey law to the purported nationwide class because their proposed nationwide class representative, David Scott, filed his medical monitoring claims in New Jersey.  However, as this Court recognized in denying plaintiffs' motion for certification of a nationwide personal injury class action, New Jersey choice-of-law principles dictate that Vioxx claims should be governed by the substantive law of each potential class member's home state – *i.e.*, the state where he or she was prescribed, purchased, and ingested Vioxx.  *In re Vioxx Prods. Liab. Litig.*, 2006 WL 3391432, at *6 (holding that "the substantive law of each plaintiff's home jurisdiction must be applied to his or her respective claims").  *See also Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 532 (N.D. Ill. 1998) (noting that the court would have to "apply the substantive law of the state where the claim of each class member arose" to plaintiffs' medical monitoring claims).  Accordingly, plaintiffs are incorrect that New Jersey law may be applied universally to the entire class.  Instead, each class member's claim will be governed by the widely varying medical monitoring laws of his or her home state.

> B.     **Significant Variations Among The Applicable States' Medical Monitoring Laws Preclude A Finding Of Predominance, Cohesion, Or Typicality.**

This Court has also made clear – and Fifth Circuit law confirms – that application of the varying medical monitoring standards of plaintiffs' homes states defeats both predominance/cohesion and manageability.

In denying certification of a nationwide class in *Propulsid*, this Court found that because multiple states' laws were likely to apply to the putative class members' claims, "it is very

unlikely that the state law claims of the putative class members will be the same." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 146. "[C]onsidering the array of laws applicable to the putative class," the Court correctly recognized that "it is quite possible that in some circumstances individual issues will be of such significance that the action would not be manageable in a unitary trial." *Id.* For example, the Court noted, "some states may allow for medical monitoring while others may not . . . [and] some states may provide an affirmative defense to the defendants in this case, such as a learned intermediary defense." *Id.* The *Propulsid* decision is in accord with a long line of cases from the U.S. Court of Appeals for the Fifth Circuit and courts around the country. *See, e.g.*, *In re Prempro*, 230 F.R.D. at 569 (internal quotation omitted) ("The fact that medical monitoring is not treated uniformly throughout the United States creates a myriad of individual legal issues that may swamp any possible cohesion in a 23(b)(2) class."); *Zehel-Miller*, 223 F.R.D. at 663 (rejecting class certification of medical monitoring claim because the "necessity of applying 'the laws of each of the fifty states to the claims of the putative class'" would be an "insurmountable obstacle to class treatment") (quoting *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 74); *Castano*, 84 F.3d at 741 (reversing certification of multistate product liability class where trial court did not properly consider how variations in state law affect predominance because "variations in state law may swamp any common issues and defeat predominance").

This case is no different. There has been no rationalization of state medical monitoring laws since *Propulsid*, and the same legal variations thus preclude certification of plaintiffs' proposed nationwide class. For example, as set forth in Merck's pending motion to dismiss, most states have never even recognized medical monitoring as a cause of action. (*See, e.g.*, Merck's Mot. To Dismiss at 17 (Arkansas "has never recognized medical monitoring as either a

11

separate cause of action or a proper remedy"); *id.* at 19 (Colorado courts have never recognized medical monitoring relief); *id.* at 24 (Idaho courts have never recognized claims for medical monitoring).)  Other states only recognize medical monitoring claims in toxic tort suits.  (*See*, *e.g.*, Mot. To Dismiss at 15 (Arizona "has only recognized medical monitoring claims absent a present injury in the narrow context of toxic tort cases"); *id.* at 43 (Ohio has "only recognized medical monitoring as a cause of action in the context of toxic torts").)  And still others only allow medical monitoring claims where plaintiffs can prove a presently identifiable injury.  (*See* Mot. to Dismiss at 20 (Connecticut bars claims for medical monitoring absent an allegation of present injury); *id.* at 22 (District of Columbia courts "have never recognized a claim for medical monitoring absent an allegation of injury"); *id.* at 28 (under Kansas law, "medical monitoring is, at most, an additional form of relief available to a tort plaintiff who alleges a present injury"); *id.* at 35 (Michigan has "expressly and unequivocally rejected 'medical monitoring' claims absent actual injury").

Moreover, even in those states that have recognized medical monitoring claims, the standard by which each state assesses those claims also varies.  For example, not all states require the same extent or significance of exposure or the same relative increase in the chance of future disease requisite for medical monitoring relief.  While some states require plaintiffs to show exposure greater than normal background levels, *see*, *e.g.*, *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 106 (Fla. Dist. Ct. App. 1999); *Redland Soccer Club v. Dep't of the Army*, 696 A.2d 137, 145 (Pa. 1997), others only note that the significance and extent of plaintiffs' exposure are relevant to medical monitoring claims.  *See*, *e.g.*, *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 34 (Ariz. Ct. App. 1987).  Similarly, while most states require that plaintiffs demonstrate a specific need for medical monitoring, the actual state laws vary.  New Jersey and West Virginia

require that medical monitoring be "reasonable and necessary" and that the medical monitoring regime "exceeds what is normally prudent for the individual." *Ayers v. Jackson*, 525 A.2d 287, 311 (N.J. 1987) (New Jersey); *Bower v. Westinghouse Elec. Corp.*, 552 S.E.2d 424, 432-33 (W. Va. 1999) (West Virginia).  However, Florida and Pennsylvania require that the prescribed medical monitoring be "reasonably necessary based on contemporary scientific principles" and "different from that normally recommended in the absence of the exposure." *Petito*, 750 So. 2d at 106 (Florida); *Redland Soccer Club*, 696 A.2d at 146 (Pennsylvania).  Finally, Ohio requires that "medical experts assure the necessity and value of the monitoring procedures" and that the monitoring "only include procedures which are medically prudent in light of that risk as opposed to measures aimed at general health." *Day v. NLO*, 851 F. Supp. 869, 881 (N.D. Ohio 1994).

Because there is simply no single standard by which a jury could assess the medical monitoring claims of class members across the country, plaintiffs will not possibly be able to persuade the Court that certification of their claims is appropriate.  Accordingly, there is no need to proceed to class certification discovery on these claims, and the nationwide class allegations should be stricken.

## III.   PLAINTIFFS' STATEWIDE CLASS ALLEGATIONS SHOULD BE STRICKEN.

Recognizing that a nationwide medical monitoring class action is patently uncertifiable, plaintiffs propose, in the alternative, "the certification of individual state class actions" that would consist of the residents of each of the 46 relevant states "who took Vioxx in any dose at any time between May 20, 1999 . . . and September 20, 2004 . . . and who have not been diagnosed with any injury causally associated with Vioxx."  (MM Master Compl. ¶ 6.) However, plaintiffs' attempt to avoid the legal variations that doom a nationwide class is

13

unavailing.[4]  Even if they were to proceed with forty-six separate statewide classes (and 46 different trials), the factual variations inherent in their claims would still preclude a finding of predominance, cohesion, typicality or manageability.

    This Court has already held that failure-to-warn claims related to Vioxx raise individualized issues that preclude a finding of predominance.  In the Court's words:  "even if New Jersey law could be applied to the entire class, individualized factual issues concerning specific causation and damages dominate this litigation and create independent hurdles to certification."  *In re Vioxx Prods. Liab. Litig.*, 2006 WL 3391432, at *7.  Once again, this Court's holdings are consistent with a plethora of caselaw from courts around the country uniformly recognizing that almost all of the inquiries necessary to determine liability in medical monitoring cases (including failure-to-warn, susceptibility and extent of exposure) are highly individualized.  *See, e.g.*, *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 146 (rejecting medical monitoring class proposal in part because need for individualized factual inquiries would make a class trial unmanageable); *In re St. Jude Med., Inc.*, 425 F.3d at 1121 ("[p]roposed medical monitoring classes suffer from cohesion difficulties, and numerous courts across the country have denied certification of such classes"); *In re Prempro*, 230 F.R.D. at 573 (denying certification of a medical monitoring class of women who took estrogen replacement therapy; "[N]o matter how you cut it, cube it, or slice it, Plaintiffs cannot overcome the problems

---

[4]    Plaintiffs' single-state class proposals also raise choice-of-law problems because the states where plaintiffs currently reside may not be the states where they took Vioxx and allege that they suffered a risk of cardiovascular injury.  As other courts have recognized, even legal variations within supposedly single-state classes preclude class certification.  *See Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230-33 (Md. 2000) (reversing certification of Maryland-only smoker class action in part because of potential law variations arising from the fact that it could not be presumed that all current Maryland residents who smoke actually became addicted to cigarettes in Maryland); *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 393-94 (D. Kan. 1998) (refusing to certify a class of Kansas smokers in part because a determination that Kansas law could apply to the entire class would require an individual assessment of where each class member's injury occurred).

14

with individual issues of law and fact, which eclipse any possible common questions or cohesion among their claims."); *Perez*, 218 F.R.D. at 270 (denying certification of medical monitoring suit against manufacturer of a dietary supplement because of the need for individualized inquiries). As set forth below, this case is no different.  Because plaintiffs' claims cannot be fairly adjudicated *en masse*, even their statewide class proposals are doomed to fail.  Accordingly, their statewide class allegations should be stricken as well.

A.   **Plaintiffs Cannot Establish Merck's Alleged Negligence/Wrongful Conduct Through Common Proof.**

The first threshold requirement in every state's medical monitoring laws is that the defendant must have done something wrong.[5]  In this case, the alleged wrong is failure to warn: plaintiffs have alleged that Merck "intentionally and negligently misrepresented the safety and effectiveness of Vioxx and intentionally and negligently concealed material adverse information regarding the safety and effectiveness of Vioxx."  (MM Master Compl. ¶ 171.)  Thus, in order to succeed on their claims, plaintiffs would generally have to prove that Merck had a duty to warn each plaintiff's prescribing physician regarding the risks of Vioxx, that the warnings issued by Merck were inadequate to fulfill that duty, and that, as a result of Merck's failure to warn, each class member sustained an increased risk of injury.

Court after court has recognized that the type of failure-to-warn claims asserted here,

---

[5]   While some type of wrongful conduct is generally required in the small number of states that have recognized medical monitoring claims, states differ on the exact underlying conduct required.  For example, in Florida and Pennsylvania – where medical monitoring is a separate cause of action – negligence is specifically required as one of the elements of the claim.  *See, e.g., Petito*, 750 So. 2d at 106 (exposure to a hazardous substance must be "caused by defendant's negligence"); *Redland Soccer Club*, 696 A.2d at 146 (same).  However, in states that have medical monitoring as a mere remedy, the type of wrongful conduct required depends on the underlying state tort law.  *See, e.g., Transamerica Ins. Co. v. Doe*, 840 P.2d 288, 292 (Ariz. Ct. App. 1992) (plaintiffs can seek medical monitoring "under state law theories of negligence, nuisance, trespass, and strict liability"); *State ex rel. City of Martinsburg v. Sanders*, 632 S.E.2d 914 (W. Va. 2006) (same); *Ayers*, 525 A.2d at 311 (medical monitoring is "an application of tort law that allows post-injury, pre-symptom recovery in toxic tort litigation"); *McCafferty v. Centerior Serv. Co.*, 983 F. Supp. 715, 731 (N.D. Ohio 1997) ("plaintiff's claim for medical monitoring is dependent upon a finding of liability for a substantive cause of action").

15

which involve different warnings that changed over time, simply cannot be resolved on a classwide basis. *See, e.g., In re Baycol Prods. Liab. Litig.*, 218 F.R.D. at 208 (denying class certification because plaintiffs' failure-to-warn claims "depend on individual facts – whether there is a breach of duty or the foreseeability of harm will depend on what Defendants knew or should have known at the time Baycol was prescribed and whether Defendants acted reasonably based on the knowledge it had at that time"); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. at 570 (refusing to certify a medical monitoring class based on a failure-to-warn theory in part because a "finding of negligence is inextricably intertwined with individual issues . . . which would undermine the cohesion of the medical monitoring subclasses"); *Perez*, 218 F.R.D. at 271 (denying certification of medical monitoring class because "proof of negligence by the Defendant, may depend largely on individualized issues related to what warning labels the particular class member received").[6]

That is precisely what this Court recently found in its ruling denying certification of a personal injury class. According to the Court, class certification was inappropriate because, *inter alia*, the plaintiffs' allegations turned on "what Merck knew about the risks of the alleged injury when the patient was prescribed Vioxx; what Merck told physicians and consumers about those risks in the Vioxx label and other media, what the plaintiffs' physicians knew about these risks from other sources, and whether the plaintiffs' physicians would still have prescribed Vioxx had stronger warnings been given." *In re Vioxx Prods. Liab. Litig.*, 2006 WL 3391432, at *9.

---

[6]      *See also Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 501 (E.D. Pa. 1997) (denying certification of medical monitoring class of smokers where "each class member [would] have to establish that the type of cigarettes he or she smoked contained a defect at the time he or she smoked them"), *aff'd by Barnes*, 161 F.3d 127; *In re Am. Med. Sys.*, 75 F.3d at 1080 (denying certification of products liability class involving penile implants where plaintiffs' "claims of strict liability, fraudulent misrepresentation to both the FDA and the medical community . . . negligent testing, design and manufacture, and failure to warn will differ depending upon the model and the year it was issued").

16

Because "during the approximately five years that Merck marketed Vioxx, the package insert changed several times," the Court concluded, "there is no uniform body of representations to which all physicians and putative class members were exposed," *id.*, and a uniform finding on the issue of Merck's negligence was therefore impossible.

This case involves the same failure-to-warn claims and fails for the same reasons. Resolution of plaintiffs' failure-to-warn based medical monitoring claims will require individualized evidence on a host of different issues, including:

- What Merck knew at the time *each particular plaintiff* was prescribed Vioxx;

- What the label/advertisements/product inserts said at the time *each particular plaintiff* was prescribed Vioxx;

- *Each particular plaintiff's* dosage;

- The duration of *each particular plaintiff's* prescription;

- What Merck's professional representatives told the prescribing physician for *each particular plaintiff* (and whether he or she listened);

- What each physician knew from non-Merck sources; and

- Whether each physician would have prescribed Vioxx to *each particular patient* regardless of the allegedly withheld information.

For this reason alone, plaintiffs' statewide class proposal is doomed and should be stricken from their complaint.

B.     **Plaintiffs Cannot Demonstrate Entitlement To Medical Monitoring On A Classwide Basis.**

Plaintiffs' statewide classes fail to satisfy the predominance and cohesion requirements for other reasons as well.  Although the states vary substantially in their application of medical monitoring requirements, those states that do recognize claims for medical monitoring generally require plaintiffs to make some showing of: (1) significant exposure; (2) significantly increased

17

risk; (3) need for monitoring above that which would have been required absent exposure; and (4) in some states, proof of presently identifiable injury. Once again, plaintiffs will be required to present highly individualized evidence in order to establish each of these elements.

*First*, as explained above, in order to prevail on their medical monitoring claims, plaintiffs would have to demonstrate that each class member was exposed to a significant level of a known hazardous substance. The question of exposure, however, is clearly not common to all class members, as each Vioxx user consumed different doses of Vioxx over different periods of time – some continuously and some intermittently. Once again, courts have uniformly recognized that class certification is simply not appropriate for a group like this, where "above-normal exposure to a substance[] will require the individualized determinations as to whether each class member had actually ingested this product" and whether the level of exposure was actually "dangerous or hazardous" to each class member. *Perez*, 218 F.R.D. at 271; s*ee also Ball v. Union Carbide Inc.*, 385 F.3d 713, 727 (6th Cir. 2004) (affirming district court's decision not to certify medical monitoring class because "[e]ach individual's claim was . . . necessarily proportional to his or her exposure to toxic emissions or waste," which would vary from plaintiff to plaintiff based on the facts of his or her case).

Here, the threshold question of whether a plaintiff was exposed to a "significant" amount of Vioxx will vary according to the dosage, duration, and continuity of each plaintiff's Vioxx use. Obviously, a class member who ingested Vioxx at 25 mg once a day for five years to alleviate chronic arthritis pain will have more extensive exposure to Vioxx than someone who ingested Vioxx at 12.5 mg intermittently for a few weeks to relieve pain from a temporary knee injury. And there will be potential class members who fall at every point between these two

18

extremes.[7]

**Second**, plaintiffs must also show that each class member's exposure to Vioxx resulted in a "significantly increased" risk of injury.[8]  However, plaintiffs cannot make this showing on a classwide basis, because a plaintiff's risk of cardiovascular injury will vary based on medical history, family history, lifestyle, and exposure to other substances.  *See Werlein v. United States*, 746 F. Supp. 887, 912 (D. Minn. 1990) (denying class certification; "To recover medical monitoring damages, a plaintiff will have to prove that he or she is at an increased risk of future harm.  Such proof is not workable in a class action format."); *see also In re Prempro*, 230 F.R.D. at 570 (denying certification of medical monitoring class where, *inter alia*, "increased risk" could not be proven on a classwide basis); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 661 (M.D. Fla. 2001) ("[W]hether a putative class member has a significantly increased risk of contracting a serious latent disease . . . is not at all a common issue."); *Perez*, 218 F.R.D. at 271 (noting that a determination as to whether plaintiffs have suffered a substantially increased risk of injury is "particularly unsuitable for class treatment" because each person's risk of disease is the product of several factors).

It would be impossible for Vioxx plaintiffs to show the requisite increased risk on a

---

[7]     Notably, plaintiffs themselves claim that each potential class member's risk of injury varies depending on how long he or she was exposed to Vioxx.  While plaintiffs' proposed class includes all Vioxx users nationwide, their class action complaint specifically alleges that "[p]atients who have ingested Vioxx **continuously for six consecutive weeks or greater** are at a significantly increased risk of having suffered an unrecognized myocardial infarction."  (MM Compl. ¶ 144 (emphasis added).)  As a result, under plaintiffs' own theory, a jury could find that a Vioxx user who took the drug continuously for two years has a significantly increased risk of injury, while another user who took the drug for only four days does not.

[8]     States that recognize medical monitoring generally require some level of significantly increased risk for contracting a disease; however, once again, the state laws vary as to their specific wording and requirements.  For example, Florida and Pennsylvania require "significantly increased risk," *Petito*, 750 So. 2d at 106, while Ohio and West Virginia require "increased risk."  *See Redland Soccer Club*, 696 A.2d at 146 (Pennsylvania); *Day*, 851 F. Supp. at 881 (Ohio); *Bower*, 552 S.E.2d at 432-33.  New Jersey and Arizona mandate that "relative increase in the chance of onset" be taken into account when making a medical monitoring determination.  *Ayers*, 525 A.2d at 311; *see also Burns*, 752 P.2d at 34.

classwide basis.  As prior Vioxx personal injury trials have revealed, Vioxx users suffer from various other medical problems – such as pre-existing heart disease, obesity, diabetes, and high blood pressure, to name but a few – that might affect the increased risk determination. Moreover, as the Court is well aware, many members of the proposed class are likely to have family histories of heart disease, stroke or other cardiovascular maladies that could affect their susceptibility to heart problems in the future.  In addition, different class members will likely have been exposed to various substances and chemicals that could cause the symptoms for which they seek monitoring.  For example, a history of significant alcohol use, heavy smoking, illegal drug use, or addiction to prescription pain killers would make it all the more impossible for plaintiffs to show that their alleged risk of cardiovascular injury is caused by exposure to Vioxx. As a result, any determination as to whether each proposed class member is at an increased risk of cardiovascular injury will necessarily depend on that individual's predisposition to such injury and exposure to other substances.

*Third*, under most states' laws that recognize medical monitoring, plaintiffs would also have to make some showing that they require monitoring different from that which would be recommended in the absence of exposure.[9]  *Barnes*, 161 F.3d at 146 ("In order to state a claim for medical monitoring, each class member must prove that the monitoring program he requires is different from that normally recommended in the absence of exposure."); *In re Rezulin*, 210

---

[9]      While the few states that have recognized any form of medical monitoring generally require that plaintiffs demonstrate a specific need for medical monitoring, the actual state laws vary.  For example, Arizona, New Jersey, and West Virginia require that medical monitoring be "reasonable and necessary" and that the medical monitoring regime "exceeds what is normally prudent for the individual."  *Ayers*, 525 A.2d at 311 (New Jersey); *see also Burns*, 752 P.2d at 34 (Arizona); *Bower*, 552 S.E.2d at 432-33 (West Virginia).  However, Florida and Pennsylvania require that the prescribed medical monitoring be "reasonably necessary based on contemporary scientific principles" and "different from that normally recommended in the absence of exposure."  *Petito*, 750 So. 2d at 106 (Florida); *Redland Soccer Club*, 696 A.2d at 146 (Pennsylvania).  In contrast, Ohio requires that "medical experts assure the necessity and value of the monitoring procedures" and that the monitoring "only include procedures which are medically prudent in light of that risk as opposed to measures aimed at general health."  *Day*, 851 F. Supp. at 881.

857370v.1

F.R.D. at 73 (denying certification of a medical monitoring class in part because "the evidence shows that many patients formerly on Rezulin already are having blood chemistry tests . . . as part of their routine medical care").  However, in order to determine whether the monitoring proposed by plaintiffs meets these criteria, the Court would have to know what procedures are normally recommended for each class member's routine care.  As the court held in denying class certification of medical monitoring claims in *Perez*, "[t]his element demands individualized rulings, because many of the individuals would normally be recommended to undergo exactly the same diagnostic screenings and tests based on risk factors other than" the use of the product at issue.  218 F.R.D. at 272; *see also In re St. Jude Med. Inc.*, 425 F.3d at 1122 ("each plaintiff's need (or lack of need) for medical monitoring is highly individualized").

The same is true in this case, particularly since some Vioxx users may already undergo regular exams related to pre-existing medical symptoms and conditions that would overlap with the monitoring they seek here.  For example, plaintiffs with a history of ischemic heart disease that pre-dates their Vioxx use may already be receiving regular check-ups that consist of the very same cardiovascular diagnostic exams that plaintiffs seek in this litigation.  Plaintiffs who suffer from a host of other conditions, such as blocked arteries, obesity, diabetes, or hypertension may be undergoing these exams as well.  Because many of the proposed class members already suffer from conditions that require periodic cardiovascular checkups and screening, this factor too will be highly individualized and cannot be determined on a classwide basis.

**Fourth**, in states that only allow medical monitoring claims where the plaintiff has a present identifiable injury, proof of that injury will also be highly individualized.  As set forth in Merck's Reply Brief in Support of Motion to Dismiss Medical Monitoring Claims ("Merck's Reply"), the vast majority of the states at issue have either never recognized any cause of action

21

for medical monitoring or require an allegation of present injury to assert a claim for future,

medical monitoring damages.  (*See* Merck's Reply at 14-74 (explaining that the "no injury"

medical monitoring claims asserted in this case are barred under the laws of Arizona, Arkansas,

Connecticut, Colorado, District of Columbia, Idaho, Illinois, Iowa, Kansas, Maine, Maryland,

Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New

Jersey,[10] North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas,

Vermont, Washington, Wisconsin and Wyoming).)  As a result, the proposed class members

from these states will have to prove that they actually suffer from a present injury attributable to

Vioxx.  Such a showing of specific causation will necessarily involve individualized questions

that will overwhelm a finding of predominance.  In fact, as other courts have recognized, the

most serious roadblock to predominance in product liability cases is typically specific causation:

"[w]hether, and to what extent [a drug] causes . . . symptoms varies from patient to patient."  *In

re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003).  "Not only do individual physiologies

affect the causation issues, but so too do the underlying illnesses and medical history of each

individual plaintiff."  *Id.  See also In re Rezulin*, 210 F.R.D. at 66 (highlighting extremely

individualized nature of specific causation inquiry); *In re Phenylpropanolamine (PPA) Prods.

Liab. Litig.*, 208 F.R.D. at 632 ("[a]n assessment of specific causation . . . necessarily dissolves

into a myriad of individualized causation inquiries").  For this reason as well, classwide

treatment is obviously inappropriate in this case.

---

[10]     A recent decision from the New Jersey Appellate Division has created some uncertainty regarding the
elements of a medical monitoring remedy in that state.  *See Sinclair v. Merck & Co., Inc.*, 913 A.2d 832 (N.J. Super.
Ct. App. Div. 2007).  Merck is seeking review of that decision and clarification of the law from the New Jersey
Supreme Court.

857370v.1

C.     **Plaintiffs Cannot Address Merck's Affirmative Defenses Through Common Proof.**

Finally, plaintiffs' proposal also fails the predominance and cohesion requirements of Rule 23(b)(2) and (b)(3) because of the inherently individualized nature of the affirmative defenses that may be available to defendants in many of these cases.  As a long line of courts have recognized, class certification is inappropriate where affirmative defenses applicable to individual plaintiffs' claims would require individualized findings.  *See Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 491 (E.D. Pa. 1997) (refusing to certify a class of smokers in part because the defendants' affirmative defenses of contributory negligence, statutes of limitations, assumption of the risk, and consent "raise[] such individual issues of immense proportions" that class certification "is obviously inappropriate"); *see also Rodney v. Nw. Airlines, Inc.*, 146 Fed. Appx. 783, 786 (6th Cir. 2005) (holding that variations related to affirmative defenses pose significant class certification problems, as "a defendant's evidence may be probative of class cohesiveness and may be such as to cause the class to degenerate into a series of individual trials"); *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 66 (Ohio 2004) (reinstating trial court's refusal to certify class of plant workers seeking medical monitoring based on industrial exposure in light of the "multiple individual questions of fact requiring examination for different plaintiffs within the proposed class" including, "whether [the employer] owed a duty, whether there was a breach of that duty, whether the statute-of-limitations defense applies, and questions of contributory negligence").[11]

---

[11]     Other courts have agreed.  *See Georgine v. Amchem Prods.*, 83 F.3d 610, 628 (3d. Cir. 1996) (holding that if a jury would have to look at facts peculiar to each plaintiff's case when assessing the affirmative defenses, an inherently individual inquiry is required); *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 613  (W.D. Wash. 2001) (denying certification of medical monitoring claims because plaintiffs' alleged injuries, causation determinations, and the allocation of liability were inextricably entwined with individualized facts); *Guillory v. Am. Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *8 (N.D. Ill. Mar. 20, 2001) ("if defendants were not able to

23

The Vioxx cases too raise a number of affirmative defenses – including most notably, the learned intermediary defense, assumption of risk and statute of limitations – that cannot be addressed in the context of a class trial.  *See Lewallen*, 2002 WL 31300899, at *4 (refusing to certify a medical monitoring subclass where "various affirmative defenses require individualized proof, including statutes of limitation, consent, assumption of risk, and comparative fault"); *Barnes*, 161 F.3d at 149 ("[W]e believe that determining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification."); *O'Connor v. Boeing N. Am., Inc*., 197 F.R.D. 404, 409 (C.D. Cal. 2000) (decertifying medical monitoring class in part due to "highly individualistic nature" of statute of limitations defense); *Hansen v. Am. Tobacco Co., Inc*., No. LR-C-96-881, 1999 WL 33659388, at *1 (E.D. Ark. July 21, 1999) ("defenses [such as the] statute of limitations present too many individual problems and preclude certification").  For this additional reason, plaintiffs cannot satisfy the requirements of Rule 23 and their class allegations should be stricken.

## CONCLUSION

For all of the reasons set forth above, the Court should strike plaintiffs' class allegations.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

---

individually probe into the peculiarities of each class member's case, the result would be that they would be denied the opportunity to prepare a defense").

857370v.1

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion and Incorporated

Memorandum to Strike Class Allegations in Plaintiffs' Medical Monitoring Master Class Action

Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S.

Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading

the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and

that the foregoing was electronically filed with the Clerk of Court of the United States District

Court for the Eastern District of Louisiana by using the CM/ECF system which will send a

Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th

day of February, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com
Defendants' Liaison Counsel

25

857370v.1