Slip Copy
Slip Copy, 2007 WL 495150 (S.D.N.Y.)
(Cite as: 2007 WL 495150 (S.D.N.Y.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re **CARDINAL HEALTH, INC.** SECURITIES LITIGATION
No. C2 04 575 ALM.

Jan. 26, 2007.

Pending in the United States District Court for the Southern District of Ohio,
Eastern Division
PATTERSON, J.

*1 Non-party Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), special counsel to the Audit Committee of the Board of Directors of **Cardinal Health** Inc. (the "Audit Committee") moves pursuant to Rule 45(c)(3)(A)(iii) of the Federal Rules of Civil Procedure to quash or modify a subpoena duces tecum (the "Subpoena") served by Plaintiffs' counsel in the **Cardinal Health,** Inc. Securities Litigation pending in the Southern District of Ohio (the "Underlying Litigation") as calling for the production of documents protected by the attorney-client privilege and/or work product doctrine.

By cross motion to compel Plaintiffs insist that 1) the documents are not entitled to any privilege and 2) Kramer Levin had waived any attorney-client or work product privilege since Kramer Levin has previously disclosed the documents to the United States Securities and Exchange Commission ("SEC") and United States Attorney's Office for the Southern District of New York ("USAO").

I. FACTUAL BACKGROUND

In late 2003, the SEC began an inquiry into whether certain accounting practices at Cardinal were not in accordance with applicable laws and regulations, and requested production of documents from Cardinal. (Decl. of Arthur H. Aufses III, August 14, 2006 ("Aufses Decl.") ¶ 4.) As Cardinal reviewed the documents to be produced, it discovered documents suggesting certain employees might have engaged in improper practices. (*Id.*) In April 2004, the Audit Committee of Cardinal's Board of Directors resolved to conduct its own independent investigation of these accounting practices and issues, and retained Kramer Levin to advise it. (*Id.*) [FN1]

> FN1. It is undisputed that Kramer Levin's client was the Audit Committee, not Cardinal. The law firms of Gibson Dunn & Crutcher LLP ("Gibson Dunn") and Wachtell Lipton Rosen & Katz LLP ("Wachtell") represented Cardinal in the SEC investigation.

Kramer Levin performed a number of legal services for the Audit Committee, including an investigation of the legal and accounting issues that the Cardinal documents had raised. (*Id.* at ¶ 5.) Kramer Levin then obtained and reviewed and analyzed hundreds of thousands of Cardinal documents and interviewed dozens of present and former Cardinal employees. (*Id.*) It also retained forensic accountants at AlixPartners LLC ("AlixPartners"), who carried out work under Kramer Levin's direct supervision and who reported their findings directly to Kramer Levin. (*Id.*)

After research of applicable legal and regulatory principles and assessment of the evidence it had compiled in the light of those principles, Kramer Levin advised the Audit Committee of the results of its legal analysis. (*Id.* at ¶ 6.) After receiving Kramer Levin's legal advice, the Audit Committee decided to recommend a number of steps to Cardinal's Board of Directors, including a restatement of certain of Cardinal's financial statements, a series of improvements in Cardinal's policies and procedures for accounting and financial reporting, and actions concerning a number of Cardinal employees. (*Id.*)

While Kramer Levin was pursuing its investigation, it was contacted by the SEC and USAO, each of whom advised that it, too, was investigating accounting issues at Cardinal. (*Id.* at ¶ 7.) Both offices invited Kramer Levin to share the results of its investigation, including determinations whether any wrongdoing had occurred and, if so, the identities of persons re-

sponsible as well as proposed remedial measures. (*Id.*) Kramer Levin determined that its mandate was the same as that of the SEC and USAO, and, working closely, shared issues, evidence, and theories with the SEC and USAO in fulfilling the mandate of the Audit Committee. (*Id.* at ¶¶ 7-8.) On a number of occasions, the SEC advised Kramer Levin of documents and allegations of which its lawyers had become aware and asked Kramer Levin to investigate these issues. (*Id.* at ¶ 8.)

*2 To govern Kramer Levin's production of documents to the SEC, the SEC entered into a written confidentiality agreement with the Audit Committee and Kramer Levin. (*Id.* at ¶ 9.) The same documents were produced to the USAO without a confidentiality agreement with Kramer Levin, but the USAO has since advised Kramer Levin that it maintained confidentiality of all materials produced to it. (*Id.*)

A. The Issues Presented

Kramer Levin maintains that the Subpoena demands it produce almost all of the many hundreds of thousands of pages of material it created or compiled in carrying out its work, many of which are protected by the work product doctrine and/or the attorney-client privilege. (*Id.* at ¶ 10.) The Plaintiffs contend that the documents sought are not covered by the work product doctrine or the attorney-client privilege and that even if those privileges applied, the documents revealed to the SEC and USAO must be produced because by sharing those documents the Audit Committee and Kramer Levin waived any existing privilege. Kramer Levin replies that Plaintiffs have not shown they have "substantial need of the materials" and are "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).

Kramer Levin seeks protection for:
1. interview memoranda and related exhibits of more than 300 witnesses;
2. presentation binders prepared for the Audit Committee containing a review of the evidence of accounting issues and actions of Cardinal employees involved in those issues;
3. work papers of AlixPartners containing its analysis of a series of issues presented to the Audit Committee with documentary support;
4. compilations of documents organized by issue and prepared by Kramer Levin;
5. materials compiled and produced by individual witnesses or lawyers for Cardinal.
(Aufses Decl. ¶ 11.) [FN2]

> FN2. See Aufses Decl. Ex. C for a more expansive set of categories that Kramer Levin believes are potentially response to the Subpoena.

B. Kramer Levin's Position

Kramer Levin principally asserts that (1) the documents responsive to the Subpoena are protected by the work product doctrine; (2) the protection has not been waived; and (3) Plaintiffs cannot show substantial need. (Oral Arg., Oct. 3, 2006, Tr. ("10/3 Tr.") 17.) Additionally, Kramer Levin argues that a subset of the documents is protected by the attorney-client privilege, which has not been waived. (Mem. in Supp. of Mot. to Quash or Modify Subpoena ("Kramer Levin Mem.") 8-12.)

As to each of the above five categories, Kramer Levin takes the position that there has been no waiver of the protection of the work product doctrine because:

First, the Audit Committee was charged with the task of conducting an entirely independent investigation and assessment of accounting at Cardinal. Kramer Levin was retained to conduct that investigation and advise the Audit Committee in that effort, which was the same mandate the SEC and the USAO had in analyzing the evidence eliminating any wrongdoing and preventing the recurrence of any accounting irregularities. (Aufses Decl. ¶ 12.)

*3 Second, as to the SEC, a written agreement preserving the confidentiality of all materials produced was entered into by Kramer Levin, the Audit Committee, and the SEC. (*Id.* at ¶ 9, 12.)

Third, as to the materials produced to the SEC and USAO, both agencies have assured Kramer Levin that the materials have been kept confidential. (*Id.*)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C. Plaintiffs' Cross Motion

Plaintiffs have filed a cross motion to compel the production of documents supported by a memorandum of law and a declaration of Samuel H. Rudman dated September 8, 2006. [FN3]

> FN3. In view of the number of documents involved, a privilege log pursuant to Rule 26 of the Federal Rules of Civil Procedure or Local Civil Rule 26(2)(a)(1) at this stage would incur a needless expenditure of legal costs on the Audit Committee. (*See* 10/3 Tr. 16.)

In their opposition, Plaintiffs argue that Kramer Levin has not shown that the attorney-client privilege or work product doctrine applies to any of the following categories of documents:
1. presentation binders of material collected by Kramer Levin used in presentations to the Audit Committee and in presentations to the SEC and USAO;
2. interview memoranda and exhibits;
3. AlixPartners' forensic accounting work papers;
4. documents received from Cardinal and Cardinal's auditors;
5. documents received from other non-client witnesses;
6. Kramer Levin case files; and
7. Kramer Levin invoices. [FN4]

> FN4. This category is no longer at issue due to an agreement between the parties. (Pls' Opp. 10; Rudman Decl. ¶ 12, Ex. J; 10/3 Tr. 30.)

(Opp. to Non-Party Kramer Levin's Mot. to Quash or Modify Subpoena and Cross-Mot. to Compel Produc. of Docs. ("Pls' Opp.") 20-21; *see* Aufses Decl. Ex. C.) Additionally, Plaintiffs contend that Kramer Levin has waived any work product protection or attorney-client privilege with respect to documents it disclosed to the SEC and USAO, and move to compel the production of these documents. (Pls' Opp. 20-21.)

II. DISCUSSION

Rule 45(c)(3)(A)(iii) of the Federal Rules of Civil Procedure permits parties subject to a subpoena to bring a motion to quash the subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii). "[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir.2003); *see United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995).

After first determining the scope of the work product doctrine, the Court will 1) address Plaintiffs' primary argument that none of the subpoenaed materials are protected by the work product doctrine since they were not prepared by or for Kramer Levin in anticipation of litigation, 2) determine separately whether the doctrine applies to each category of identified materials, and 3) determine whether disclosure to the government waived the doctrine's protection.

A) The Work Product Doctrine

The work product doctrine was first announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), where the Court held on strong public policy grounds that attorney notes taken during witness interviews of the events leading to the lawsuit were not discoverable by the plaintiff. *Id.* at 509-13. The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998). The doctrine has been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides in relevant part:

> *4 Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation....

Fed.R.Civ.P. 26(b)(3). "Where ... the requested documents contain 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative' (Fed.R.Civ.P. 26(b)(3)), the required showing of substantial need is particularly stringent." *In re Natural Gas Commodities Litig.*, 232 F.R.D. 208, 212 (S.D.N.Y.2005) (citing *Adlman*, 134 F.3d at 1204).

The Second Circuit has interpreted the work product doctrine to apply to the selection and compilation of otherwise unprotected materials in certain circumstances:

> Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product. To fit within what we have repeatedly characterized as a "narrow exception" to the general rule that third-party documents in the possession of an attorney do not merit work product protection, the party asserting the privilege must show "a real, rather than speculative, concern" that counsel's thought processes "in relation to pending or anticipated litigation" will be exposed through disclosure of the compiled documents.

*In re Grand Jury Subpoenas*, 318 F.3d at 386 (internal citations omitted); see *McDaniel v. Freightliner Corp.*, No. 99 Civ. 4292, 2000 WL 303293, at *4- 5 (S.D.N.Y. Mar. 23, 2000) (recognizing a limited work product protection for materials that were not created in anticipation of litigation, but might nevertheless reveal an attorney's thought process regarding a lawsuit).

B. "In Anticipation of Litigation"

The *Wright and Miller* interpretation of the phrase "prepared in anticipation of litigation" has been adopted by the Second Circuit: "documents should be deemed prepared 'in anticipation of litigation,' and thus within the scope of the Rule, if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." ' *Adlman*, 134 F.3d at 1202 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024, at 343 (1994) (emphasis added)).

*5 Plaintiffs take the position that the work product doctrine does not apply to any of the materials subpoenaed from Kramer Levin since they were not "prepared in anticipation of litigation": 1) Cardinal hired other firms--Gibson Dunn and Wachtell--to represent it in the litigation with the SEC, (Pls' Opp. 2); Kramer Levin was hired by the Audit Committee for business purposes to conduct an independent investigation and assessment of Cardinal's accounting documents, practices, and issues, (*id.* at 12-13); and 3) the purpose of the investigation was only to enable Kramer Levin to advise the Audit Committee as to whether any of Cardinal's accounting practices had been misused and how to prevent future misuse, (*id.* at 12-14). Plaintiffs rely on *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y.1995), to claim that, under such circumstances, these documents are subject to production. (Pls' Opp. 13- 14.)

Plaintiffs' argument overlooks the context in which Kramer Levin was hired by the Audit Committee:

> In late 2003, the U.S. Securities and Exchange Commission began an inquiry into certain issues at Cardinal, and the SEC requested that Cardinal produce documents concerning those issues. As Cardinal began to collect and review documents in response to those requests, it discovered documents which suggested that certain Cardinal employees might have engaged in accounting practices that were not in accordance with applicable law and regulations. In April 2004, the Audit Committee of the Board of Directors of Cardinal resolved to conduct its own, independent investigation of those accounting practices and issues, and the Audit Committee retained Kramer Levin to advise it.

(Aufses Decl. ¶ 4.) The Audit Committee recognized that the SEC was investigating Cardinal's accounting practices and, after review of certain Cardinal documents, that these practices might not have been "in accordance with applicable law and regulations." (*Id.*) Thus, the likelihood of civil or criminal litigation was anticipated before hiring Kramer Levin.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

These facts, overlooked by Plaintiffs, differ from those in *Leslie Fay*. In *Leslie Fay* the SEC indicated its interest in that company's accounting practices after the investigation by its Audit Committee had commenced. *Leslie Fay,* 161 F.R.D. at 278. Here, the SEC had demanded accounting documents from Cardinal in late 2003 and in April 2004 the Audit Committee, with knowledge of the SEC's investigation and aware that Cardinal employees might have engaged in false and misleading accounting practices, decided to commence an independent investigation and retained outside counsel Kramer Levin to conduct that investigation.

Under similar circumstances the Second Circuit has held that the work product doctrine applies when outside counsel is retained to determine the vulnerability of the corporation in general to criminal and civil sanctions. *In re Grand Jury Subpoena,* 599 F.2d 504, 511 (2d Cir.1979); *see In re Woolworth Corp. Sec. Class Action Litig.,* No. 94 Civ. 2217, 1996 WL 306576, *3 (S.D.N.Y. June 7, 1996) (noting that when government agencies request documents all participants know that civil and possibly criminal litigation is a practical certainty and when as a result a law firm is specially retained, "[a]pplying a distinction between 'anticipation of litigation' and 'business purposes' is ... artificial, unrealistic, and the line between is ... essentially blurred to oblivion"); *see also Upjohn Co. v. United States,* 449 U.S. 383, 397-402 (1981). Accordingly, "in light of the nature of the document [s collected] and the factual situation" leading to the retention of Kramer Levin "the document[s] can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Adlman,* 134 F.3d at 1202 (2d Cir.1998).

C. Materials that were Created or Received by Kramer Levin that Appear to be Responsive to the Subpoena [FN5]

> FN5. The Court's analysis will track the categories identified by Kramer Levin and used by both parties in organizing their arguments in the moving papers. (*See* Aufses Decl. Ex. C; Pls' Opp. 20-21.)

1) Presentation Binders

*6 The presentation binders are binders of materials which Kramer Levin collected for, and used in, presentations to the Audit Committee. (Aufses Decl. ¶ 11, Ex. C.) Copies of the same binders were provided by Kramer Levin to the SEC and the USAO upon authorization by the Audit Committee. (10/3 Tr. 32-33.)

The binders are squarely covered by the work product doctrine since they represent Kramer Levin's legal analysis, opinions, and mental impressions concerning the issues investigated. Fed.R.Civ.P. 26(b)(3). Additionally, these binders are covered by the lawyer-client privilege since they were created for, and presented directly to, the Audit Committee by its counsel, Kramer Levin. *See Upjohn Co. v. United States,* 449 U.S. 383 (1981).

2) The Interview Memoranda and Exhibits

The interview memoranda consist of memoranda prepared by Kramer Levin, exhibits collected by Kramer Levin, and Kramer Levin summaries of documentary interviews of current and former employees, customers, and outside auditors of Cardinal concerning the issues under review. (Aufses Decl. ¶ 11, Ex. C.) Contrary to Plaintiffs' reasonable speculations based on Kramer Levin's moving papers that these memoranda contain verbatim questions and answers, at oral argument, Mr. Aufses represented that they are "not set up, for example, in the form of question colon, answer colon" but are "discussions, based on the lawyers' notes ... of the principle issues that were covered and the responses that were given with references, in many cases, to the documents." (10/3 Tr. 20.) The issues discussed were framed by an overall analysis memorandum by Kramer Levin as to what the attorney would inquire about. (*Id.*)

Giving Plaintiffs access to these interview memoranda and summaries would reveal Kramer Levin's mental impressions and analysis of the principle issues related to its investigation. This is classic, core work product. *See Hickman,* 329 U.S. at 509-13. The associated exhibits, while not normally protected by the work product doctrine since they are third-party documents, fall under the selection and compilation exception. *In re Grand Jury Subpoenas,* 318 F.3d at

386; see *McDaniel,* 2000 WL 303293, at *4-5. The exhibits were selected by Kramer Levin as being particularly relevant to what Kramer Levin believed were key issues to investigate with each witness. Accordingly, producing these exhibits to Plaintiffs would expose Kramer Levin's legal theories and mental impressions concerning its investigation. *In re Grand Jury Subpoenas,* 318 F.3d at 386.

3) AlixPartners Documents

AlixPartners forensic accounting work papers include documents collected from Cardinal, work paper compilations, summaries, charts, and memoranda reflecting analysis of Cardinal documents, financial statements and accounting materials as well as correspondence with Kramer Levin. (Aufses Decl. Ex. C.) The work papers, compilations, and charts were produced to the SEC and USAO by Kramer Levin, but the correspondence was not. (*Id.*)

*7 AlixPartners was retained by Kramer Levin for its expert accounting advice, which was used to prepare reports to the Audit Committee. [FN6] The AlixPartners papers, prepared on behalf of Kramer Levin, reflect the mental impressions of the Kramer Levin attorneys as to the importance of issues being investigated since Kramer Levin set the agenda for AlixPartners' analysis. (*Id.* at ¶ 5.) Accordingly, the work papers are protected by the work product doctrine. Fed.R.Civ.P. 26(b)(3).

> FN6. Kramer Levin set the agenda for the AlixPartners accountants, the accountants conducted their work under Kramer Levin's direct supervision, and the accountants reported their findings directly to Kramer Levin. (Aufses Decl. ¶ 5.)

4) The Cardinal Documents

This category encompasses documents Kramer Levin received from Cardinal, counsel for Cardinal, or auditors of Cardinal. (Aufses Decl. Ex. C.) Plaintiffs maintain that Jones Day, Cardinal's counsel in the Underlying Litigation, has been unable to confirm that the documents Cardinal produced to the SEC are the same as the documents Kramer Levin requested and received from Cardinal. (10/3 Tr. 26-28.)

Plaintiffs argue that since neither Cardinal, nor any law firm representing Cardinal, has confirmed that Kramer Levin's subset of hundreds of thousands of documents is contained in the six million documents produced by Cardinal to the SEC, Plaintiffs have shown a need for Kramer Levin's Cardinal documents to ensure that they have a complete set of documents. (*Id.* at 29-30.) However, Kramer Levin has asserted without contradiction that the Cardinal documents it received from Gibson Dunn comprise a subset of the six million Cardinal documents Gibson Dunn produced to the SEC, (Reply Mem. in Further Supp. of Mot. of Non-Party Witness, Kramer Levin, to Quash or Modify Subpoena and in Opp'n to Pls' Cross-Mot. to Compel ("Kramer Levin Repl. Mem.") 9), and Plaintiffs have not established by correspondence or other evidence from Gibson Dunn that any of Kramer Levin's documents were not produced to the SEC by Cardinal. Thus, Plaintiffs have failed to show a substantial need for Kramer Levin to produce the documents in order for Plaintiffs to prepare their class action case. *In re Natural Gas Commodities Litig.,* 232 F.R.D. at 211-12. Nor have Plaintiffs shown that they cannot ascertain from Gibson Dunn, Wachtell, or Cardinal's auditors what documents were sent to Kramer Levin, or that they cannot "without undue hardship ... obtain the substantial equivalent of the [Kramer Levin documents] by other means." Fed.R.Civ.P. 26(b)(3).

5) Materials Received From Lawyers for Individual Witnesses

These materials received by Kramer Levin consist of documents and correspondence concerning certain individual witnesses and their knowledge of and/or involvement in the issues under review. (Aufses Decl. ¶ 11, Ex. C.) Kramer Levin received the materials from the law firms Day Berry & Howard, Akin Gump Strauss Hauer & Feld, Cleary Gottlieb Steen & Hamilton, and Milbank Tweed Hadley & McCloy. (*Id.* at Ex. C.)

These documents were collected and provided to Kramer Levin pursuant to specific tailored requests made by Kramer Levin based on its analysis of the issues it was investigating for the Audit Committee. (Kramer Levin Repl. Mem. 6.) Thus the documents

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and correspondence concerning the individual witnesses pertain to their knowledge and/or involvement in the particular issues Kramer Levin determined to review. For Kramer Levin to reveal these documents would cause it to reveal, to some extent, its opinion as to the relevancy of the documents to the issues it investigated. Since these are third-party materials that were not themselves prepared in anticipation of litigation, in order to be protected as attorney work product the materials would have to fall within the selection and compilation exception. *In re Grand Jury Subpoenas*, 318 F.3d at 386; *see McDaniel*, 2000 WL 303293, at *4–5. Although disclosure of these materials would not reveal Kramer Levin's analysis, mental impressions, and opinions to the same extent as some of the other targets of the Subpoena--e.g. the presentation binders, attorney case files, and AlixPartners work papers-- considering Plaintiffs' failure to show that they have a substantial need for these materials and cannot obtain their substantial equivalent from other sources without undue hardship, these materials are protected from discovery by Fed.R.Civ.P. 26(b)(3). *See In re Natural Gas Commodities Litig.*, 232 F.R.D. at 211-12. In the absence of substantial need to obtain these documents from Kramer Levin as opposed to from other sources such as the various law firms, production of the documents from Kramer Levin will only serve to disclose Kramer Levin's theories and opinion as to what the relevant issues were in its investigation. *McDaniel*, 2000 WL 303293, at *4 (concluding "that discovery requests which seek to pry into counsel's selection of certain documents as particularly important or relevant violate the attorney work product doctrine in the absence of a showing of compelling need").

6) Kramer Levin Case Files

*8 Kramer Levin case files include:
  1) working files of individual lawyers who worked on the matter
  2) Kramer Levin central files, including background materials, lawyer notes, draft documents, legal research, and memoranda
  3) compilations of Cardinal documents, organized by issue
  4) correspondence files
(Aufses Decl. Ex. C.) First, Plaintiffs concede that the subset of these documents representing communications between Kramer Levin and its client, the Audit Committee, are protected by the attorney-client privilege. (Pls' Opp. 3.)

The case working files of individual lawyers and central files containing background motives, lawyer notes, draft documents, and legal research and memoranda undoubtedly reflect "the mental impressions, conclusions, opinions, or legal theories" of Kramer Levin attorneys. Fed.R.Civ.P. 26(b)(3). Kramer Levin's concern that the compilation of Cardinal documents--critically organized by *issue*--would reflect the issues deemed important by Kramer Levin and the relevance of the individual documents to those issues is " 'a real, rather than speculative, concern' that counsel's thought processes 'in relation to pending or anticipated litigation' will be exposed through disclosure of the compiled documents." *In re Grand Jury Subpoenas*, 318 F.3d at 386 (internal citations omitted); *see McDaniel*, 2000 WL 303293, at *4–5. Correspondence files would similarly reveal the issues deemed relevant by Kramer Levin attorneys, including, for instance, the language of Kramer Levin's requests for documents. Finally, Plaintiffs have not shown that they have a substantial need to obtain the Cardinal source materials from Kramer Levin, and that they are unable to obtain the substantial equivalent of the documents from another source without undue hardship. Fed.R.Civ.P. 26(b)(3); *see In re Natural Gas Commodities Litig.*, 232 F.R.D. at 211-12. To protect the mental impressions and opinions of the Kramer Levin attorneys, as directed in Rule 26(b)(3), the materials in this category are protected from discovery by the work product doctrine.

D. Waiver

In *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir.1993), the Second Circuit held that Steinhardt's voluntary disclosure of privileged materials to the SEC, while under investigation by the SEC, waived the privilege protecting those materials. However, the Court
> decline[d] to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection. Crafting rules relating to privilege in

matters of governmental investigations must be done on a case-by-case basis.... Establishing a rigid rule would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information, or situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of the disclosed materials. *See In re Sealed Case,* 676 F.2d at 817 (work product protection only waived if privileged material is disclosed to a party who doesn't share such common interests); *In re LTV Securities Litigation,* 89 F.R.D. 595, 614-15 (N.D.Tex.1981) (SEC and corporation shared interest in analyzing facts and legal theories upon appointment of an independent special investigatory officer by consent decree).

*9 *Id.* at 236.

In this case, waiver is only at issue with respect to the 1) presentation binders, 2) interview memoranda and exhibits, 3) AlixPartners' work papers, and 4) documents received from Cardinal and its auditors. Only materials from these four categories were shared with the SEC and/or the USAO. (Aufses Decl. Ex. C.)

Kramer Levin's moving papers declare that 1) in view of the SEC's subpoena of Cardinal documents, Kramer Levin was retained by the Audit Committee to conduct an independent investigation to determine whether illegal financial practices had been utilized at Cardinal; 2) on behalf of the Audit Committee, Kramer Levin obtained Cardinal documents; 3) Kramer Levin retained AlixPartners for expert accounting advice; and 4) Kramer Levin interviewed Cardinal employees and former employees to ascertain whether illegal practices or policies had been followed. (*Id.* at ¶¶ 4-5.) Kramer Levin then reported the results of its investigation--that there had been financial irregularities at Cardinal--to the Audit Committee, and obtained Audit Committee approval to share the results of its investigation with the SEC and the USAO. (*Id.* at ¶¶ 7-9.) This led to the SEC sharing additional Cardinal documents with Kramer Levin, as well as a written confidentiality agreement between Kramer Levin and the SEC. (*Id.*) Under these circumstances, it seems clear that the Audit Committee's purpose in authorizing the investigation in the face of almost certain litigation between Cardinal and the SEC or USAO--as well as in sharing the results with the SEC and USAO--was that Cardinal's financial and accounting practices be "clean as a hounds tooth," an interest in common with the SEC and USAO. [FN7]

> FN7. The SEC's obligation is to ensure that the securities laws of the United States are enforced, including that the financial reports of corporations are not false and misleading. The USAO investigates and prosecutes violators of the securities laws including individuals and corporations responsible for producing false and misleading financial statements.

In *In re Steinhardt,* the court not only refuses to create a *per se* rule for the waiver of work product protection when materials are disclosed to the government, but specifically points to the case of "common interest" as a foreseeable reason for doing so. 9 F.3d at 236. [FN8] Therefore, Kramer Levin's failure to obtain a confidentiality agreement with the USAO does not waive the work product protection. *Id.* The Audit Committee determined that it and the SEC shared a "common interest in developing legal theories and analyzing information" concerning potential financial irregularities at Cardinal and authorized sharing of documents with the SEC and the USAO. *Id.* Accordingly, the protection of the work product doctrine has not been waived by Kramer Levin or the Audit Committee sharing such documents with the SEC or the USAO. *See id.; In re Sealed Case,* 676 F.2d 793, 817 (D.C.Cir.1982); *In re LTV Sec. Litig.,* 89 F.R.D. 595, 614-15 (N.D.Tex.1981).

> FN8. Given that the work product doctrine is itself rooted in strong public policy concerns, *see Hickman,* 329 U.S. at 509-13, it is entirely appropriate, as recognized by the Second Circuit in *In re Steinhardt,* 9 F.3d at 236, for courts to protect work product in these circumstances to encourage cooperation between the private and public sectors acting with a common interest.

III. CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 9
Slip Copy, 2007 WL 495150 (S.D.N.Y.)
(Cite as: 2007 WL 495150 (S.D.N.Y.))

For the foregoing reasons, Kramer Levin's motion to quash the Subpoena is granted, and Plaintiffs' cross-motion to compel is denied.

IT IS SO ORDERED.

2011481050

Slip Copy, 2007 WL 495150 (S.D.N.Y.)

END OF DOCUMENT