UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| *This document relates to ALL CASES* | JUDGE FALLON |
| | MAG. JUDGE KNOWLES |

**Response of the PSC to Merck's Notice of Supplemental Authority in Support of Merck's Motion for a Protective Order prohibiting Discovery of Attorney Work Product and Privileged Communications related to the Martin Report**

Merck Contends that *In re Cardinal Health, Inc. Securities Litigation*, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007), is "highly analogous" to the matters before the Court. While that case involved privilege determinations in connection with a motion for a protective order to prohibit disclosure of the documents of the special counsel of the Audit Committee of the Board of Directors of Cardinal Health, the similarity between the two cases ends there. Merck relies on Judge Patterson's decision but overlooks the dissimilarites between its behavior and that of Cardinal Health's special counsel's investigation and Debevoise & Plimpton's investigation performed on Merck's behalf. By failing to account for these differences, Merck misapprehends the persuasive authority of *Cardinal Health*.

In *Cardinal Health*, the company had been under investigation by the SEC into its accounting practices, when it discovered that "certain employees might have engaged in improper practices." *Id.* at *1. In response to the SEC's investigation and its own discovery of impropriety,

1

the Audit Committee retained outside counsel, Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") to investigate these accounting practices and issues. Apparently, Kramer Levin's report found irregularities and recommended a number of actions, including restatement of certain financial statements, to the audit committee. *Id.* Because of this finding of wrongdoing on Cardinal Health's part, Kramer Levin cooperated with the SEC and the U.S. Attorney's Office. It began producing documents to the governmental entities but only after the Firm and the Audit Committee entered into a written confidentiality agreement with the SEC to preserve the confidential nature of the documents. This agreement to maintain confidentiality was also observed by the USAO. Thereafter, plaintiffs in underlying securities litigation served subpoenas upon Kramer Levin to obtain presentation binders, interview memoranda, forensic accounting expert reports, and other documents. The court found that all of this material was prepared in anticipation of litigation and subject to the work product doctrine.

In stark contrast to Cardinal Health's effort to contain publicity of the findings of wrongdoing, confine knowledge about Kramer Levin's findings of wrongdoing, and maintain confidentiality, Merck sought to exploit its situation and went out of its way to widely publish the presentation of its outside counsel's investigator. It hired PR firms to assist in the dissemination of the Debevoise report to the public to great hoopla and fanfare. Both Merck and Debevoise provided news conferences, press releases of the findings of outside counsel and published the material on the internet. Both Merck and Debevoise made certain to highlight and present the exculpatory report as being authored by a federal judge (whose retired status was acknowledged but minimized) to improperly attempt to lend false credibility to the report's findings by confusing the public about Judge Martin's status. *See Boumediene v. Bush*, 2006 WL 3872820 (D.C.Cir. Dec. 29, 2006).

2

The Debevoise report acknowledges that "perhaps [its] most important" purpose was to allow "the public to have as extensive a record as possible" of its findings. *See* Martin Report, Introduction, at 17-18. This express, non-litigation purpose served a discrete business purpose, *i.e.*, to promote the company's public image. Because the Debevoise report acknowledges that it was prepared and presented more so for Merck's business purposes, than defending itself from shareholder litigation (which litigation had actually terminated months before release of the Debevoise report), the more analogous case to the present circumstances is *In re Leslie Fay Cos. Sec. Litigation*, 161 F.R.D. 274 (S.D.N.Y. 1995). Where activities of this nature serve a "dual purpose" cases like *Leslie Fay* and the others cited in our papers do not afford any privilege protection.[1] Merck's attempt to whitewash its behavior by hiding behind the Debevoise report is far different that Cardinal Health's acknowledgment of wrongdoing. The latter case is inapposite.

Although Merck has gone to great lengths to resist the PSC's discovery requests with respect to the Martin Report, curiously absent at this late stage is a privilege log identifying the materials at issue and the basis for the application of the privileges being asserted.[2] This continuing failure should be deemed a waiver of the privileges being asserted, lest Merck be rewarded for its delay by taking advantage of the Court's busy docket by later providing a privilege log and extracting further

---

[1] *See* Plaintiffs' Reply in Support of Motion to Compel Compliance with Third-Party Subpoenas at pgs. 5-7 (discussing critical distinctions between the law of the Fifth and Second Circuit with respect to the "in anticipation of litigation requirement" of the work-product privilege).

[2] The continuing deficiency was most recently brought to Merck's attention on December 27, 2006, when the PSC filed its reply in support of its motion to compel compliance with third-party subpoenas. *See* Plaintiffs' Reply in Support of Motion to Compel Compliance with Third-Party Subpoenas at pg. 11 ("Since neither Merck, Debevoise or either of the third-party publicity firms has provided a privilege log, only an in camera inspection can assure an objective review, unless the court deems the failure to produce a privilege log a waiver of any privilege.").

delay over the production of these documents by some later challenge in the future. *See Bordonaro v. Union Carbide Corporation*, 1995 WL 234545, * 2 (E.D.La. 1995) (finding waiver of work-product and attorney-client privileges where party opposing discovery requests failed to produce a privilege log) (Duval, D.J.); *Steven v. Omega Protein, Inc.*, 2002 WL 1022507, * 3 (E.D.La. 2002) (observing that failure to produce a privilege log will ordinarily result in a waiver of any privilege being asserted) (Wilkinson, M.G.); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 914 F.Supp. 1172 (E.D.Pa. 1996) (finding waiver of right to dispute discovery requests by party failing to produce a privilege log); *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y. 1996) (denying claimed privilege where the party asserting the privilege had failed to supply relevant information in a privilege log).

Nearly six months have elapsed since the PSC made its initial discovery requests. Although numerous pleadings regarding these requests have been submitted in both federal and state court since that time, Merck has never generated a privilege log. "Discovery is not poker where the cards are turned up one at a time." *Massachusetts School of Law at Andover, Inc.*, 914 F.Supp. at 1178.

Merck's decision not to provide a privilege log has resulted in significant delay which has burdened the PSC and this Court. Accordingly, Merck has waived any and all privileges applicable to the PSC's discovery requests.

                              Respectfully submitted,

                              **PLAINTIFFS' STEERING COMMITTEE**

Date: February 27, 2007            By: /s/ Leonard A. Davis
                                              **Russ M. Herman (Bar No. 6819)**
                                              Leonard A. Davis (Bar No. 14190)
                                              Stephen J. Herman (Bar No. 23129)
                                              ***Herman, Herman, Katz & Cotlar, L.L.P.***
                                              820 O'Keefe Avenue
                                              New Orleans, LA 70113
                                              Telephone: (504) 581-4892
                                              Facsimile: (504) 561-6024

                                              **PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337) 494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of February, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
**_Herman, Herman, Katz & Cotlar, LLP_**
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com