UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION:  L |
| | : | |
| | : | JUDGE FALLON |
| | : | |
| | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : 

THIS DOCUMENT RELATES TO ALL CASES

### ORDER & REASONS

Before the Court are Merck's Motion for Protective Order Prohibiting Discovery of Attorney Work Product and Privileged Communications Related to the Martin Report (Rec. Doc. 7960), the Plaintiffs' Motion to Compel Responses to PSC's Third Set of Interrogatories and Third Set of Requests for Production of Documents Directed to Merck (Rec. Doc. 8697), and the Plaintiffs' Motion to Compel Compliance with Third-Party Subpoenas (Rec. Doc. 8881).  The Court heard oral argument and took these motions under submission.  For the following reasons, Merck's motion is now GRANTED and the PSC's motions are DENIED.

## I.       BACKGROUND

This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib.  Merck & Co., Inc. ("Merck"), a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and

-1-

inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches.  On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States.  Vioxx remained available to the public until September 30, 2004, at which time Merck withdrew it from the market when data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarctions (heart attacks) and ischemic strokes.[1]

In the wake of various criticisms, shareholder demands, existing and anticipated shareholder litigation, and pending regulatory investigations by the Department of Justice ("DOJ") and the Securities Exchange Commission ("SEC"), Merck's board of directors established a Special Committee in November of 2004 to investigate the conduct of senior management in relation to the development and marketing of Vioxx.  The Special Committee retained former federal judge John S. Martin, Jr., now "of counsel" at Debevoise & Plimpton LLP ("Debevoise") in New York, to lead the investigation.

Mr. Martin and his team of fourteen lawyers and six legal assistants were given access to both Merck employees (current and former) and millions of pages of Merck documents.  The team's investigation consisted of interviews with employees, review of internal documents, consultation with experts retained by Debevoise, and communications with the Special Committee.  After twenty months of investigation, on July 26, 2006, Mr. Martin issued his report

---

[1]  For a more detailed factual and procedural background, see *In re Vioxx Prods. Liab. Litig.*, ___ F.R.D. ___, 2006 WL 3391432 (E.D. La. Nov. 22, 2006) (denying certification of a nationwide personal injury class action), *In re Vioxx Prods. Liab. Litig.* 448 F. Supp. 2d 741 (E.D. La. 2006) (dismissing foreign class actions on forum non conveniens grounds), and *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

to the Special Committee.  On September 6, 2006, Merck's board of directors publicly released the "Report of the Honorable John S. Martin, Jr. to the Special Committee of the Board of Directors of Merck & Co., Inc. Concerning the Conduct of Senior Management in the Development and Marketing of Vioxx" (hereinafter, the "Martin Report").  The Report was published on Merck's and Debevoise's websites and a number of press conferences were held to announce its release.  In general, the Martin Report concludes that Merck's senior management acted appropriately in the development and marketing of Vioxx and, thus, that the company need not take legal action against its executives.  Merck was billed approximately $22 million for the work associated with the Martin Report.

On September 15, 2006, counsel for MDL plaintiff Anthony Wayne Dedrick served Merck with a request for production of documents relating to the creation, preparation, and publication of the Martin Report.  *See* Plaintiff's Second Set of Request for Production to Defendant Merck & Co., Inc.  Among the discovery sought by Dedrick were:

> [A]ll Documents and recordings (including witness statements, interviews or memoranda or letters), referring or relating to contacts or communications between Debevoise or John S. Martin, Jr., and any of the following:  a) The Merck Board of Directors or its agent employees (including attorneys); b) The Special Committee, including its agents and attorneys; c) Any and all present Merck employees interviewed; d) Any and all former Merck employees; e) Kenneth Frazier; and f) Theodore V. H. Mayer or any employee of Hughes Hubbard and Reed.

On September 21, 2006, the PSC served Merck with a similar request for production.  *See* PSC's Third Set of Interrogatories and Requests for Production of Documents Directed to Defendant, Merck & Co., Inc.  On October 13, 2006, Merck filed the instant motion for a protective order, contending that the materials sought by Dedrick and the PSC are protected from disclosure by the work-product and/or attorney-client privileges.

The PSC also served notices of depositions and subpoenas for documents and testimony upon (1) Mr. John S. Martin, Jr. of Debevoise, (2) Mr. Martin Frederic Evans of Burson-Marsteller, LLP, and (3) Ms. Marcia Silverman, CEO of Ogilvy Public Relations Worldwide, Inc. On October 16 and 17, 2006, these third parties served responses also asserting that the materials sought by the PSC are protected by the work-product and/or attorney-client privileges.

## II.    PRESENT MOTIONS

The Plaintiffs have filed motions to compel the Martin Report discovery from both Merck and the third-parties. As noted, however, Merck seeks a protective order pursuant to Rule 26(c)(1) of the *Federal Rules of Civil Procedure* with regard to both the Dedrick Request and the PSC Request, as well as all third-party subpoenas for documents related to the Martin Report. Merck argues that: (1) these materials, including drafts of the Report and attorney interview notes and memoranda developed in preparation of the Report, are attorney work-product protected from discovery under Rule 26(b)(3) and also contain attorney-client communications; (2) the publication of the final Report did not waive protection for the underlying materials; and (3) the Plaintiffs do not have a "substantial need" for these materials.

The Plaintiffs allege that the Martin Report was primarily intended to influence public opinion and to create positive publicity for Merck. Accordingly, the Plaintiffs argue that the various materials related to the preparation of the Martin Report are not protected and are discoverable. Merck responds that Mr. Martin was retained to prepare a report in response to shareholder demands and the prospect of both litigation and governmental investigation. Therefore, Merck asserts that the discovery sought by the Plaintiffs is protected by the work-product and/or attorney-client privileges.

-4-

### III.    LAW & ANALYSIS

Under Rule 26(b)(3) of the *Federal Rules of Civil Procedure*, a party may discover materials prepared in anticipation of litigation by or from another party's attorney only upon a showing that "the party seeking discovery has substantial need of the materials in the preparation of the party's case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). As the party asserting the privilege, Merck has the burden of demonstrating that the materials are protected. *See Lasalle Bank N.A. v. Mobile Hotel Props., LLC*, No. 03-2225, 2004 WL 1238024, at *2 (E.D. La. June 3, 2004).

### A.    Does the Work-Product Doctrine Apply?

Although state law applies to Merck's attorney-client privilege claims, *see* Fed. R. Evid. 501, the work-product doctrine is a matter of federal law, *see PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002); *Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991). The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Given the Court's conclusion that the materials sought by the Plaintiffs are protected by the work-product doctrine, the Court will not address the attorney-client privilege arguments.

"While the attorney-client privilege protects only confidential communications, the work product doctrine generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006); *see also Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (recognizing "the need for a lawyer to work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel"). Moreover, work-product which is based on oral statements from

witnesses is entitled to "special protection" and is discoverable only in a "rare situation" because such materials "are so much a product of the lawyer's thinking." *See In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979); *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973). However, the work-product doctrine "does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes." *Carroll v. Praxair, Inc.*, No. 05-307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006).

To determine whether a document is protected from disclosure by the work-product doctrine, the threshold question is whether the document was prepared in anticipation of litigation. *See Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). However, the existence of litigation is not a prerequisite; materials qualify for work-product protection if the "primary purpose" for their creation was related to potential litigation. *See In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000); *see also United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 1981) ("[L]itigation need not necessarily be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

The Plaintiffs argue that the Martin Report was primarily motivated by the business purpose of re-establishing Merck's good will and creating positive publicity with respect to Vioxx, and thus that the underlying materials are not entitled to work-product protection.[2] Merck, on the other hand, argues that the materials sought by the Plaintiffs are entitled to work-

---

[2] The Plaintiffs argue that the timing of the release of the Report, less than a week before the start of the *Smith* bellwether trial in this Court, demonstrates its true purpose.

product protection because they were prepared to assist the board of directors in responding to shareholder demands, existing and anticipated shareholder litigation (six derivative actions were pending in state and federal court when Mr. Martin was retained), and pending regulatory investigations by the DOJ and SEC.  The Plaintiffs respond that Mr. Martin's investigation continued several months after the dismissal of a shareholder derivative suit, undermining Merck's claim that the investigation was motivated by anticipated litigation.  *See In re: Merck & Co., Inc. Derivative & ERISA Litig.*, MDL 1658 (D. N.J. May 4, 2006) (dismissal order).

Courts have held that materials created by a committee investigating corporate wrongdoing in response to shareholder demands are entitled to work-product protection.  *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, No. 04-575, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007); *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005); *In re Woolworth Corp. Sec. Class Action Litig.*, No. 94-2217, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996).  As in *Hollinger*, in this case the "prospect of litigation was identifiable and not remote because specific claims had arisen and action had been demanded" of Merck.  *Hollinger*, 230 F.R.D. at 514.  Accordingly, the Court finds that the "primary motivating purpose" of Mr. Martin's investigation was to "aid in possible future litigation."  *Davis*, 636 F.2d at 1040.[3]

---

[3]  With respect to the third-party discovery, the PSC argues that the primary purpose behind the retention of public relations firms by Debevoise was to further Merck's publicity campaign and, thus, that these third-parties have no basis for asserting work-product protection.  Merck argues that the communications consultants were acting under the direction of Debevoise attorneys and therefore any responsive materials in the possession of these third-parties are entitled to work-product and/or attorney-client protection.  The Court agrees that these materials are also protected.  *See In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) ("Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects 'documents prepared by or for a representative party, including his or her agent.'") (citing *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 434 (W.D.N.Y. 1997)); *see also In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F.

While the Martin Report may also have been motivated by business purposes such as creating positive media coverage, any potentially alternative motivation cannot be considered primary in light of the prospective Vioxx litigation.  *See In re Woolworth*, 1996 WL 306576, at *3 ("Applying a distinction between 'anticipation of litigation' and 'business purposes' is in this case artificial, unrealistic, and the line between is here essentially blurred to oblivion."). Moreover, allowing Mr. Martin's investigation to continue beyond Judge Chesler's dismissal of the shareholder derivative suit does not suggest that the investigation was not primarily *motivated* by the prospect of litigation.[4]

### B.    Has Merck Waived Work-Product Protection?

The work-product doctrine is not absolute; "[l]ike other qualified privileges, it may be waived."  *United States v. Nobles*, 422 U.S. 225, 239 (1975).  Merck argues that the publication of the Martin Report did not waive the work-product protection enjoyed by the underlying materials.  The Plaintiffs argue that under the "fairness doctrine," since Merck widely publicized the final Martin Report, it would be unfair to shield related materials involving the same subject matter.  *See In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 283 (S.D.N.Y. 1995).

The publication of a final investigative report does not waive the protection for the underlying drafts and materials because the work-product doctrine exists not to protect a "confidential relationship," but rather "to promote the adversary system by safeguarding the

---

Supp. 2d 321, 326 (S.D.N.Y. 2003) ("[T]he ability of lawyers to perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants.").

[4]  Indeed, the dismissal of the shareholder suit has been appealed to the United States Court of Appeals for the Third Circuit and the suit could potentially be reinstated.

fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989); *see also Ziner v. Cedar Crest College*, No. 04-3491, 2006 U.S. Dist. LEXIS 34858, at *11-17 (E.D. Pa. May 30, 2006). In *Ziner*, the court held that while the publication of the final investigative report waived the protection for that draft, the underlying materials remained protected. *See Ziner*, 2006 U.S. Dist. LEXIS 34858, at *16; *see also Hollinger*, 230 F.R.D. at 516 (finding that disclosure of a final report did not waive "work product protection over the Special Committee counsel's legal analyses, mental impressions, and attorney-client communications involved in the investigative and Report compilation process").

In *Hollinger*, the court also found it relevant that the defendant had not "put the Special Committee counsel's opinion work product at issue in any litigation." *Hollinger*, 230 F.R.D. at 518-19. In this case, the PSC's "sword and shield" analogy does not appropriately reflect Merck's use of the Martin Report. Indeed, Merck has not cited, relied upon, nor used the Martin Report offensively in this litigation, and Merck represents that it has no intention of doing so in the future. Thus, considerations of fairness do not dictate that the work-product protection be vitiated in this case. *Cf. In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 471 (S.D.N.Y. 1996) ("In pressing its position . . . [the defendant] specifically invoked the Lynch report as an authoritative source of detailed information demonstrating the factual basis for its in-court assertion . . ."); *Leslie Fay*, 161 F.R.D. at 283 ("Attempting to shield the documents underlying the [report] from discovery while at the same time urging this Court to award it damages in reliance, at least in part, on the [report's] conclusions, the Audit Committee seems guilty of the exact conduct that the subject matter waiver doctrine was formulated to address."). If things

change, however, and the Martin Report is sought to be used offensively in this litigation, or if

Mr. Martin seeks to testify, the Court will have to reconsider whether the Plaintiffs are entitled to

discover the materials underlying the investigation.

### C.      Do the Plaintiffs Have a Substantial Need for the Materials Sought?

Lastly, Merck argues that the Plaintiffs cannot demonstrate a "substantial need" for the

materials underlying the Martin Report, nor the lack of "other means" to obtain them, as required

by Rule 26(b)(3).

The Plaintiffs argue that the materials sought may be useful in this litigation, essentially

because Mr. Martin may have uncovered evidence of past wrong-doing that has eluded the

Plaintiffs to date.  It has been said that "[w]here an attorney's work product, sought at trial,

contains admissible evidentiary facts, the seeking party has, by definition, a 'substantial need'

for the material."  *Parks v. United States*, 451 A.2d 591, 609 (D.C. 1982).  Given the size,

duration, and cost of Mr. Martin's investigation, the Plaintiffs argue that they cannot practically

obtain this material by any other means.

The Court finds, however, that the Plaintiffs have not demonstrated a substantial need for

the materials underlying the Martin Report.  As noted, the Report has not been used offensively

in this litigation.  Moreover, most of the materials requested by the Plaintiffs reflect the legal

opinions, mental impressions, and legal theories of Debevoise attorneys and are entitled to

special protection.  *See In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982) ("[T]o the

extent that work product reveals the opinions, judgments, and thought processes of counsel, it

receives some higher level of protection, and a party seeking discovery must show extraordinary

justification.");  *see also In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979); *In*

-10-

*re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973).  Lastly, the Court notes that Mr. Martin had access to the same employees and materials to which the PSC has had access since the inception of this litigation.  The Plaintiffs cannot rely on Mr. Martin's investigation to uncover a "smoking gun" when they have had access to the same materials by "other means," namely in the normal course of discovery.

**IV.     CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Merck's Motion for Protective Order Prohibiting Discovery of Attorney Work Product and Privileged Communications Related to the Martin Report is GRANTED.

Accordingly, IT IS FURTHER ORDERED that the Plaintiffs' Motion to Compel Responses to PSC's Third Set of Interrogatories and Third Set of Requests for Production of Documents Directed to Merck and the Plaintiffs' Motion to Compel Compliance with Third-Party Subpoenas are DENIED.

New Orleans, Louisiana, this 5th day of March, 2007.

_____

UNITED STATES DISTRICT JUDGE