UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE |
| GERALD D. BARNETT | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**REPLY OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

As noted in Merck's opening brief, and as explained further below, plaintiff did not offer evidence legally sufficient to prove his case. Merck is thus entitled to judgment in its favor as a matter of law. FED. R. CIV. P. 50(b).

I.  **BECAUSE PLAINTIFF DID NOT PROFFER SCIENTIFICALLY RELIABLE EVIDENCE OF MEDICAL CAUSATION, MERCK IS ENTITLED TO JUDGMENT IN ITS FAVOR ON ALL OF PLAINTIFF'S CLAIMS.**

Plaintiff does not dispute that legally sufficient evidence of both general and specific causation is a predicate to each of his causes of action. What he claims, instead, is that he offered "significant and scientifically reliable evidence" to show that Vioxx caused his alleged injuries. (Pl.'s Opp'n at 1-15.) The record proves otherwise, as Merck demonstrated in its opening brief. In opposition to that brief, plaintiff makes much of the fact that his causation

860914v.1

experts were "unrebutted by any defense expert opinion to the contrary." (Pl.'s Opp'n at 4; *see also id.* at 9.) But, of course, it was *plaintiff's* burden to prove medical causation. He failed to do so – at the very least failing to link his alleged injuries to his use of Vioxx and failing to "rule out" other possible causes of his alleged injuries. Because he fell short of his evidentiary burden, no rebuttal expert testimony was necessary.

**A.   Plaintiff Did Not Proffer Legally Sufficient Evidence To Show His Alleged Injuries Were Attributable To His Use Of Vioxx.**

The evidence presented at trial was insufficient to show that Vioxx was the cause of Mr. Barnett's alleged injuries. To overcome this critical failure of proof, plaintiff simply asserts that "Dr. Zipes 'ruled in' Vioxx as the cause of Mr. Barnett's injuries." (Pl.'s Opp'n at 14.)[1] As explained in Merck's opening brief, that is not the case. Dr. Zipes's testimony was essentially that Vioxx caused Mr. Barnett's injuries because his use of the drug and his injuries were related in time, and Dr. Zipes "c[ould] come up with no other answer" to explain the temporal connection. (8/8/06 Tr. at 1734:15-1735:14.) That is not enough to prove specific causation. What is utterly missing from the record – and from plaintiff's opposition brief – is any legally sufficient evidence of specific causation.

**B.   Plaintiff Failed To "Rule Out" Other Possible Causes Of His Alleged Injuries.**

Plaintiff also does not adequately address, in his opposition brief, the fact that he failed to "rule out" other possible causes of his alleged injuries – including, most importantly, the natural progression of his preexisting CAD. He goes on, at great length, about his witness's testimony regarding "modifiable" and "unmodifiable" risk factors, but makes no mention of the fact that his own expert witness, Dr. Popma, testified that Mr. Barnett's gender, age, family history,

---

[1] Plaintiff also catalogs the extent of his alleged injuries – which adds nothing to the analysis. (Pl.'s Opp'n at 14-15.)

elevated cholesterol levels, and stress were all risk factors for the development of CAD. (8/7/06 Tr. at 1404:10-1410:4, 1432:17-22.) Plaintiff also ignores the elephant in the room: the fact that his witnesses testified that – regardless of his risk factors – Mr. Barnett had CAD *before* he took Vioxx and his problems more likely than not result from the natural progression of that disease. For example, Dr. Zipes testified, on cross-examination:

> Q: Do you agree, sir, that in January of 2000 that Mr. Barnett already had coronary artery disease?
>
> A: Yes, sir.
>
> Q: Do you agree that it is more likely than not that the coronary artery disease that Mr. Barnett already had in January 2000 was not due to Vioxx?
>
> A: Yes, sir.

(8/8/06 Tr. at 1754:17-23; *see also* 8/10/06 Tr. at 1911:9-12.)

> Dr. Karavan's testimony, on the same subject, was as follows:
>
> Q: Is coronary artery disease and atherosclerosis a gradual and chronic process?
>
> A: In most instances, that would be correct, yes.
>
> Q: Is it true that in most instances coronary artery disease gets worse over time and more and more plaque builds up in our arteries as we get older?
>
> A: That would be correct.
>
> Q: Mr. Barnett's severe multi-vessel coronary artery disease did not just develop in two to three years, did it, sir?
>
> A: That's correct.

(8/4/06 Tr. at 1060:10-19.)

> And, as Dr. Mikola explained:
>
> Q: Is it also your understanding, Dr. Mikola, that atherosclerosis builds up over time and gets progressively worse?
>
> A: Atherosclerosis, yes.

3

> Q: I know you didn't look inside Mr. Barnett's arteries in January of 2000, but based on the diagnoses of ischemia, that would suggest that he had plaque and atherosclerotic lesions before January of 2000; right?
>
> A: Yes, sir.
>
> Q: Is it your understanding or not, sir that it takes many years for plaque to develop and atherosclerotic lesions to develop to the point that you have ischemia?
>
> A: Yes, sir. That's correct.

(*Id.* at 949:5-17.)

By failing to rule out Mr. Barnett's pre-existing CAD as an alternative cause for his alleged injuries, plaintiff failed to satisfy his burden to show specific causation. The Court should accordingly set aside the jury's verdict and should enter judgment in Merck's favor.

## II. PLAINTIFFS' FAILURE TO WARN CLAIMS FAIL AS A MATTER OF LAW FOR LACK OF LEGALLY SUFFICIENT PROOF.

Even if there were legally sufficient evidence of medical causation – and there is not – Merck would still be entitled to judgment in its favor on plaintiff's failure to warn claims.[2] These claims fail as a matter of law, because: (1) Merck had no duty to warn Mr. Barnett's physicians of risks that were unproven or uncertain at the time of their prescribing decisions; (2) there was no evidence that Mr. Barnett's physicians were not adequately warned or did not otherwise have sufficient information about the risks associated with Vioxx at the time of their prescribing decisions; and (3) plaintiff failed to show that a different warning would have

---

[2] For the reasons stated in Merck's opening brief and further explained at pages 18-19 of Merck's concurrently-filed Reply in Support of Motion for New Trial on All Issues, plaintiff's strict liability and negligent failure to warn claims rise and fall together. Plaintiff's citation to cases involving "garden variety" products not governed by comment k does not prove otherwise. (*See* Pl.'s Opp'n at 15-18 (*citing Rife v. Hitachi Constr. Mach. Co.*, 609 S.E.2d 565 (S.C. App. 2005) (construction machinery case); *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480 (D.S.C. 2001) (tobacco case); *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254 (4th Cir. 1998) (lighter case); *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321 (S.C. App. 1995) (aerial device case)).)

changed these doctors' decisions to prescribe Vioxx to Mr. Barnett. That would explain the jury's response to the first interrogatory, finding that Mr. Barnett's injuries were not caused by a failure to warn on the part of Merck.

### A. Merck Had No Duty To Warn Of Unproven Or Uncertain Risks.

Plaintiff concedes that a drug manufacturer need only warn of "known or reasonably scientifically or medically knowable" risks. (Pl.'s Opp'n at 18.) Where he parts ways with Merck is on the question of whether the cardiovascular risks of Vioxx were "known or reasonably scientifically or medically knowable" before he started taking the drug. According to plaintiff, "the CV risks of Vioxx, which were not adequately conveyed by Merck, were not only reasonably scientifically and medically knowable, but known to Merck long before Mr. Barnett's heart attacks and surgical interventions." (*Id.* at 19.) In support of this position, plaintiff cites the following evidence – none of which actually proves his point, for obvious reasons:

- *Evidence that post-dates all of the operative facts in this case.* Plaintiff cites, for example, the "unrebutted" testimony of Dr. Avorn that "it is now universally agreed that Vioxx causes heart attacks." (Pl.'s Opp'n at 20.) He also relies upon information that was "generally accepted within the medical community" at the time of the February 2005 FDA Advisory Committee Meeting. (*Id.*) What was "generally accepted" in 2005 and what is now "known" – even if true – cannot possibly show what was "known or knowable" at the time Mr. Barnett received his Vioxx prescriptions.

- *Evidence that shows an association, at best, but that falls short of showing causation.* Plaintiff also relies on the testimony of Dr. Avorn that "by the spring of 2000 the burden of evidence was enough to suggest that there was, indeed, a reason for concern that Vioxx was associated with heart attack and other cardiovascular disease

in humans." (Pl.'s Opp'n at 20 (*citing* 8/1/06 Tr. at 365:18-266:10).) But, it is a well-established tenet of scientific research that association alone is not causation. *See, e.g.*, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 480 ("[I]t should be emphasized that an association is not equivalent to causation."). Plaintiff is thus wrong to suggest that the VIGOR study, the Targum memo, animal studies and other similar data are sufficient to show that Vioxx posed a "known or reasonably scientifically or medically knowable" increased risk of cardiovascular events.[3] And, even if he is right about things such as the VIGOR study, that information was communicated to Mr. Barnett's prescribing physician, as discussed below.

Without evidence that the alleged cardiovascular risks of Vioxx were "known or knowable" at the point in time relevant to this case, plaintiff's failure to warn claims fail as a matter of law. Plaintiff's last-ditch effort to save these claims – his argument that any uncertainty was a function of Merck's "overpromotion" of Vioxx – is nothing more than a smoke screen. (*See* Pl.'s Opp'n at 21-24.) Either the alleged risks of Vioxx were "known or reasonably scientifically or medically knowable," or they were not. How the data was "framed" is irrelevant. Because the alleged cardiovascular risks were not, in fact, "known or knowable" at the time of Mr. Barnett's Vioxx prescriptions, his failure to warn claims fail as a matter of law.

---

[3] Plaintiff's own arguments prove as much. He writes that Merck's Board of Scientific Advisors told Merck in 1998 "that the mechanism of Vioxx *could* result in potentially dangerous developments which would lead to heart disease and heart attacks." (Pl.'s Opp'n at 21 (emphasis added).) He also states that "animal studies conducted before Vioxx ever went on the market showed that Vioxx's mechanism of action . . . *could* be dangerous for the heart." (*Id.* (emphasis added).) Plaintiff thus implicitly concedes that these risks were not "known or knowable."

> **B.   The Independent Knowledge Of Mr. Barnett's Treating Physicians Regarding The Alleged Risks Of Vioxx Also Defeats Plaintiff's Failure To Warn Claims.**

As explained in Merck's opening papers, it is black-letter law that a drug manufacturer's alleged "failure to warn" of the risks associated with one of its products cannot be the proximate cause of a plaintiff's injury where – as here – the plaintiff's treating physicians have independent knowledge of those risks. (*See* Merck's Mot. at 24-26.) Put simply, "[n]o one needs notice of that which he already knows." *Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87, 92 (2d Cir. 1980) (internal quotation marks and citations omitted).[4] Here, the undisputed evidence shows that Mr. Barnett's physicians were independently aware of the risks associated with Vioxx at the time of their treatment decisions. (*See* Merck's Mot. at 35-37.) Plaintiff's failure to warn claims thus fail as a matter of law.

Plaintiff raises three arguments in response, each unpersuasive. First, he takes issue with the basic principle that, if the learned intermediary is already aware of the risks allegedly associated with a drug, no additional duty exists. Plaintiff asserts, to the contrary, that "[a] prescribing physician's awareness of risks involved with a drug does not absolve a manufacturer of liability, where a jury could reasonably infer that additional and more complete disclosures should have been made and the physician was not sufficiently informed." (Pl.'s Opp'n at 24.) Each of the cases cited by plaintiff explicitly recognizes that a prescription drug manufacturer has no duty to warn "so long as the prescribing physician has been adequately warned of any potentially adverse side effects" – which is exactly Merck's point. *Timm v. Upjohn Co.*, 624

---

[4] To characterize Merck's cited authority as "factually inapposite" is to miss this common-sense point entirely. Plaintiff also fails to explain exactly how the many authorities cited by Merck at pages 35 and 36 of its motion are inapplicable. Instead, he simply cites *Odom* – a case that could not be more on point here, as Merck has explained to the Court on numerous occasions. (*See* Pl.'s Opp'n at 38-39 (*citing Odom v. G.D. Searle & Co.*, 979 F.2d 1001 (4th Cir. 1992)).)

7

F.2d 536, 538 (5th Cir. 1980), *cert. denied*, 449 U.S. 1112 (1981); *Tatum v. Schering Corp.*, 795 F.2d 925, 927 (11th Cir. 1986). Moreover, each of plaintiff's cited authorities involves a physician who was "not sufficiently informed," which is not the case here. For example, although the Fifth Circuit in *Timm* held that the trial court did not err in refusing to direct a verdict in the manufacturer's favor on plaintiff's failure to warn claim, it did so on the ground that the prescribing physician's testimony regarding his knowledge of the relevant risks was "certainly not unequivocal; at best it was confused." *Id.* at 539 n.8. That circumstance is not present in this case – where Dr. Mikola testified, unambiguously, that he knew of and understood the VIGOR data at the time of his prescribing decision. (*E.g.*, 8/4/06 Tr. at 958:17-959:2, 960:13-961:15.) Nor is this case analogous to *Tatum*, also cited by plaintiff. In that case, the court found that the learned intermediary was unaware of the "extent or level of risk" associated with a drug, where he testified he was aware there was "some risk of death" but also stated that he did not know the percentage of patients who experienced adverse reactions or the actual or comparative fatality rates associated with a drug. *Tatum*, 795 F.2d at 927-28. In marked contrast, Dr. Mikola testified in this case that he knew the particulars of the VIGOR study, including the facts that: (1) there were four times as many heart attack events in the Vioxx arm of VIGOR as compared to the Naproxen arm; and (2) it was impossible to know for sure whether Vioxx or Naproxen were driving the VIGOR findings, given that the lack of a placebo arm. (8/4/06 Tr. at 958:17-959:2, 960:13-961:15.) In light of this testimony, plaintiff is wrong – even under his own cited cases – to argue that Merck failed to satisfy its duty to warn Mr. Barnett's physicians.

Second, plaintiff contends that Mr. Barnett's doctors "were not sufficiently aware of the risks associated with Vioxx." (Pl.'s Opp'n at 25.) In order to prove the point, plaintiff asserts

that Dr. Mikola wasn't given adequate information because, among other things, he "was never told by Merck that the President of Merck Research Laboratories believed that the CV events associated with Vioxx in the VIGOR trial were mechanism-based." (*Id*.) But, what Dr. Scolnick – or any other Merck employee – "believed" is of no consequence. What matters is whether Merck disclosed the "known or knowable" risks associated with Vioxx to Mr. Barnett's physicians, in accordance with FDA rules and regulations and "in light of the generally recognized and prevailing best scientific and medical knowledge at the time of manufacture and distribution." *Carlin v. Super. Ct. (Upjohn Co.)*, 13 Cal. 4th 1104, 1112 (1996); *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1230-31 (4th Cir. 1984) (applying South Carolina law). It did so. For plaintiff to suggest that Merck failed to discharge its duty to warn because it did not pass along every thought and opinion of the many employees involved in the development and marketing of Vioxx is preposterous. Not only is such a scheme not required by law, but it also would be unworkable – resulting in a complete saturation of the market with incomplete and unsubstantiated risk information, to the detriment of treating physicians and patients alike.

Finally, plaintiff argues that, even if Merck's warnings were adequate, Merck's "overpromotion" of Vioxx "had the effect of nullifying" these warnings. (Pl.'s Opp'n at 26-27.) That is not the law in South Carolina; no court in that state has recognized an "overpromotion" exception to the learned intermediary doctrine. Moreover, in those states that *do* recognize such an exception, it applies only if a manufacturer's alleged "overpromotion" – *i.e.*, marketing materials, advertisements, and promotional pieces – causes the physician to disregard an otherwise satisfactory warning. *See Huntman v. Danek Med., Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *5-6 (S.D. Cal. July 24, 1998) ("In the absence of evidence that a doctor made the decision to use a product in an 'off-label' manner in reliance on a manufacturer's

9

misrepresentations, claims for failure to warn, fraud and breach of warranty cannot stand."); *Love v. Wolf*, 226 Cal. App. 2d 378, 399-400 (1964) ("Of course, if such over-prescription by the doctor was not caused by the over-promotion of Parke-Davis then, however negligent such over promotion may have been, Parke-Davis could not be held liable. Its negligence would not have been an inducing, or proximate, cause of the resulting injuries."). Here, there is no evidence Dr. Mikola was either exposed to or influenced by Merck's marketing materials, and he testified that Merck sales representatives were always professional, open, and forthcoming with him. (8/4/06 Tr. at 939:3-940:7.) In short, even if South Carolina did recognize an "overpromotion" exception to the learned intermediary doctrine – which it does not – the facts in this case do not support its application here.

### C. A Different Warning Would Not Have Changed Mr. Barnett's Doctors' Prescribing Decisions.

Plaintiff's failure to prove that a different warning would have impacted the prescribing decisions of Mr. Barnett's doctors is case-dispositive and separately supports judgment in Merck's favor. As the *Odom* court made clear, without such proof, there can be no proximate cause. *Odom*, 979 F.2d at 1003. Faced with this critical omission, plaintiff makes two somewhat contradictory arguments: first, that Dr. Mikola's testimony "unequivocally shows" that he would not have prescribed Vioxx to Mr. Barnett "had he been adequately informed"; and second, that Dr. Mikola's testimony is irrelevant to the question of proximate cause. (Pl.'s Opp'n at 43-46.) Plaintiff is wrong on both counts.

First, Dr. Mikola's testimony does not "unequivocally show" that he would not have prescribed Vioxx to Mr. Barnett "had he been adequately informed as to the risks of Vioxx and what Merck knew." (*Id.* at 43.) To the contrary, Dr. Mikola testified at trial that he continued to prescribe Vioxx to Mr. Barnett after he read the 2002 label, which contained the VIGOR data

10

and thus apprised him of all of the risk information that was "known or reasonably knowable" at the time. (8/4/06 Tr. at 964:16-965:5; *see also id.* at 970:1-15.)  The excerpts of Dr. Mikola's testimony cited in plaintiff's brief to counter this fact are taken completely out of context. (*See* Pl.'s Opp'n at 43 (*citing* 8/4/06 Tr. at 915:3-11, 928:2-7).)  Dr. Mikola did testify that he would have left Mr. Barnett on Feldene – but only "having known today what I know about Vioxx," "based on hindsight." (*Id.*)  That is not the relevant inquiry.  It is what was known or knowable *at the time* that controls, as Dr. Mikola himself acknowledged on cross-examination:

> Q: Did you understand, [Dr. Mikola], that the questions that you were being asked about what you would have done were based on hindsight?
>
> A: Yes, sir.
>
> Q: You understand that the questions you were asked about what you would have done concerning Vioxx were based on documents that were created – some of which were created after you treated Mr. Barnett?
>
> A: Yes, sir.
>
> Q: You understand that some of the documents that you saw that you were asked about by Mr. Barnett's lawyers included documents that were generated after the withdrawal of Vioxx?
>
> A: Yes, sir.
>
> Q: And those sorts of materials were not available to you at the time you were making a treatment decision for Mr. Barnett, right?
>
> A: That's correct.
>
> Q: And it's a different thing to ask you why you made the decision you made to prescribe Vioxx to Mr. Barnett back at the time you were prescribing it to him, as opposed to what would you have done if you had all of this information that was obtained subsequent to your treatment of Mr. Barnett; correct?
>
> A: Actually the difference is, at the time, I didn't know that Vioxx was going to be withdrawn from the market, and knowing that it was going to be withdrawn from the market, I would not have used it.

11

> Q: When you were making treatment decisions for Mr. Barnett and prescribing Vioxx, were you or were you not relying on the medical information that was available to you at the time?
>
> A: That's correct.

(8/4/06 Tr. at 928:25-930:4.) Considering only the information that was available at the time of Dr. Mikola's prescribing decisions – and not information that post-dates those decisions, as plaintiff would have this Court do – it is uncontroverted that a different warning would not have changed Dr. Mikola's decision to give Mr. Barnett Vioxx.

To get around this fact, plaintiff offers a grab-bag of alternative arguments, each intended to render Dr. Mikola's testimony irrelevant. He argues that "proximate cause of injury is not limited to, nor dependent solely upon, the testimony of the prescribing physician"; that, given Merck's "overpromotion," the jury "could still have reasonably found that Dr. Mikola was not in a position to fully appreciate Vioxx's risks"; and that "Mr. Barnett would not have taken Vioxx had he been warned of the cardiac risks." (Pl.'s Opp'n at 43-46.) None of these assertions is based on the law of South Carolina. As such, none is sufficient to get around plaintiff's obligation – under South Carolina law – to show that Mr. Barnett's physicians would have made different prescribing decisions had they received different information about the risks associated with Vioxx.

### III. MERCK IS ENTITLED TO JUDGMENT IN ITS FAVOR ON PLAINTIFF'S "DECEIT BY CONCEALMENT" CLAIM.

Because plaintiff makes no real effort to respond to Merck's arguments, nothing more needs to be said on this topic. (*See* Pl.'s Opp'n at 31.) For the reasons stated in Merck's opening brief, Merck is entitled to judgment in its favor on plaintiff's "deceit by concealment" claim.

### IV. PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW.

As the Court is aware, the preemption issues that govern these cases have been the subject of extensive briefing by the parties, in connection with the *Arnold* and *Gomez* cases. Merck hereby incorporates its briefing on the subject as if fully set forth herein. For the reasons stated in that briefing, as well as Merck's opening brief here, plaintiff's claims that the FDA-approved Vioxx labels were inadequate – including, most notably, the April 2002 post-VIGOR label – are preempted by federal law.

### V. THE EVIDENCE IN THE RECORD IS INSUFFICIENT TO SUPPORT THE PUNITIVE DAMAGES AWARD.

The Court's New Trial Order vacated the jury's punitive damages award, along with the compensatory damages award. (New Trial Order at 6-7.) Thus, Merck's motion is moot with respect to this issue. In any event, plaintiff's opposition does nothing to justify the jury's punitive damages award. To the contrary, by focusing on conduct with no nexus to Mr. Barnett or his injuries, plaintiff's opposition only serves to underscore the illegitimacy of the award. *See Philip Morris USA v. Williams*, No. 05-1256, slip op. at 5 (U.S. Feb. 20, 2007) ("[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation.").

### VI. CONCLUSION.

For the reasons stated above and those set forth in Merck's opening brief in support of its Renewed Motion for Judgment as a Matter of Law, the Court should enter judgment in favor of Merck, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[5]

---

[5] Merck incorporates by reference all of the arguments raised in its Motion for New Trial on All Issues and the reply brief in support of same.

Dated:  March 8, 2007

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
Adam Mortara
Hamilton Hill
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

Brian S. Currey
Catalina J. Vergara
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Reply of Merck & Co., Inc. ("Merck") In Support of Renewed Motion for Judgment as a Matter of Law has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Barnett, Mark Robinson, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 8th day of March, 2007.

                                                */s/ Dorothy H. Wimberly*
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, Louisiana  70130
                                                Phone:  504-581-3200
                                                Fax:     504-581-3361
                                                dwimberly@stonepigman.com

                                                Defendants' Liaison Counsel

860914v.1