## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | MAGISTRATE |
| GERALD D. BARNETT | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY OF MERCK & CO., INC. ("MERCK") IN SUPPORT OF MOTION FOR NEW TRIAL ON ALL ISSUES

Plaintiff argues that the Court should either: (1) grant a remittitur and reduce the jury's award to $10 million or (2) conduct a new trial on damages only.[1]  Neither option is permissible.

Remittitur is a non-starter.  In its New Trial Order, the Court already acknowledged that the damages award was not merely "generous" (as plaintiff calls it), but was "'excessive under any conceivable standard of excessiveness,'" including both the South Carolina standard of appearing "'to be the result of passion, caprice, prejudice or some other influence outside the evidence'" and the Fifth Circuit standard of "'result[ing] from passion or prejudice.'''  (New Trial Order at 5-6.)  Where, as here, the jury awards excessive damages based on its passion and

---

[1] In this Reply, Merck responds to both plaintiff's opposition and the *amicus curiae* brief of the Plaintiffs' Steering Committee ("PSC").

prejudice, "a new trial is the proper remedy, rather than remittitur." *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir. 1985); *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 781-82 (5th Cir. 1983); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 278 (5th Cir. 1998); *Brabham v. Mississippi*, 96 F.2d 210, 213-14 (5th Cir. 1938); *Glazer v. Glazer*, 278 F. Supp. 476, 481 n.15 (E.D. La. 1968); *see also Proctor v. Dept. of Health & Envtl. Control*, 628 S.E.2d 496, 518-19 (S.C. App. 2006) (explaining that when a verdict is "the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge *must* grant a new trial absolute" (emphasis added)).   Indeed, South Carolina courts are so concerned about reining in excessive verdicts based on passion, caprice or prejudice that "[t]he failure of the trial judge to grant a new trial absolute in [such] situations amounts to an abuse of discretion." *O'Neal v. Bowles*, 431 S.E.2d 555, 556 (S.C. 1993).

Remittitur is permitted only where the court has a basis to excise the "excessive" portion of a verdict, leaving the reasoned portion intact.   That is not the case here, where the damages award resulted from passion or prejudice.   Because there is no reasoned portion of the verdict, the Court would have to calculate damages in first instance.   That would usurp the jury's function and violate the Seventh Amendment.   *See Gautreaux v. Ins. Co. of N. Am.*, 811 F.2d 908, 915-16 (5th Cir. 1987); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 50 (2d Cir. 1984).

Plaintiff's second proposed option – a retrial limited to damages only – also violates well-established legal principles.   As Merck demonstrated in its opening brief, a new trial on all issues is required for four separate and independent reasons:

- *The Seventh Amendment requires a retrial on all issues because damages and liability are inextricably intertwined.*   The Seventh Amendment prohibits a retrial

860909v.1

limited to the issue of damages where, as in this case, the damages question is "so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." *Gasoline Prods. Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 498, 500-01 (1931). Plaintiff and the PSC acknowledge that legal standard, but ask the Court to ignore the substantial liability issues – including causation and fact of damages – that necessarily would permeate a second jury's consideration of Mr. Barnett's alleged damages. Merck's opening papers also pointed out the insurmountable practical challenges that would attend any retrial limited to damages alone, but neither plaintiff nor the PSC has offered a workable solution that would preserve Merck's jury trial rights, other than a complete retrial.

- *The jury's inconsistent verdicts require a new trial on all issues.* Neither plaintiff nor the PSC can reconcile the jury's inconsistent verdicts, because it simply cannot be done. The jury's finding (in response to the first interrogatory) that Merck did not fail to warn Mr. Barnett's treating physicians adequately, and/or that any such failure did not cause Mr. Barnett's injuries, is flatly inconsistent with its findings that Merck negligently or fraudulently failed to warn. In later trials, the Court recognized this inconsistency and crafted the verdict form so that strict liability and negligent failure to warn claims were combined, and a finding in Merck's favor on the initial failure to warn question necessarily resulted in a defense verdict without reaching the deceit claim. (*See, e.g.*, *Mason* and *Dedrick* Jury Interrogatories, attached hereto as Ex. A.)

3

- *A new trial on all issues is required because there is a reasonable probability that passion, prejudice or caprice affected the jury's decision on both liability and damages.*  Here, the question is not – as plaintiff and the PSC would have it – whether it might be reasonable for *a jury* to conclude that Merck was liable.  Nor does the Court's observation in its New Trial Order that "*the jury's findings* on liability are reasonable in this case" end the inquiry.  (New Trial Order at 4.)  Rather, the issue is whether there is a reasonable probability that *this jury* – which in the few hours it deliberated acted under the throes of passion and prejudice to ignore the Court's instructions and enter a punitively excessive and internally inconsistent verdict – was also influenced by passion and prejudice when reaching its liability decisions.  There is at least a reasonable probability that it was.

- *A new trial is also required because the weight of the evidence favors Merck.*  On issues of specific cause and warning causation, the balance of the evidence tipped overwhelmingly in Merck's favor.  Plaintiff and the PSC cannot escape from these key facts:  (1) Mr. Barnett had preexisting CAD, which his own doctors testified likely caused his ailments; and (2) Dr. Mikola was not only aware of the relevant risk information when he prescribed Vioxx, but also continues to prescribe drugs with black box cardiovascular warnings.

Each of these issues was discussed in detail in Merck's opening memorandum, and is addressed as necessary in the body of this brief.  One issue that is not addressed further is plaintiff's and the PSC's illegitimate contention that the Court should rule in plaintiff's favor not because the law or the facts require it, but as a way to force Merck to settle the thousands of cases against it, to conserve the PSC's resources, and to preserve a win in the plaintiff's column.

4

(Pl.'s Opp'n at 13-15; PSC's Opp'n at 1-3, 18-20.)  As both plaintiff and the PSC concede, bellwether trials are useful only if they are representative and illustrative of the larger case population.  That means the Court should call this one straight down the line, fair and square, and on the merits.  Otherwise, the result will be of no use to either side as a bellwether case.  Merck believes that if the Court fairly applies the law, it will order a new trial on all issues.

## I.   REMITTITUR IS IMPERMISSIBLE BECAUSE THE COURT HAS ALREADY DECIDED THAT THE DAMAGES AWARD RESULTED FROM PASSION OR PREJUDICE.

Plaintiff argues that the Court should remit the damages award to $10 million in lieu of a new trial.  But, as the Court already decided, the damages award was influenced by passion or prejudice.  (New Trial Order at 5-6.)  As noted above, "a new trial, rather than remittitur, is the appropriate remedy when a jury award results from passion and prejudice."  *Whitehead*, 163 F.3d at 278; *Caldarera*, 705 F.2d at 781-82; *Glazer*, 278 F. Supp. at 481 n.15.

In federal courts, the rule requiring a new trial when an excessive verdict is based on passion or prejudice is designed in part to protect the Seventh Amendment right to a jury trial, as illustrated in *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45 (2d Cir. 1984).  In that case, after concluding that the jury's award in favor of plaintiff was both excessive and motivated by passion and prejudice, the district court gave plaintiff the option of remittitur or a new trial on damages, and plaintiff chose remittitur.[2]  To derive what the trial court believed to be "the appropriate remittitur," it "computed the damages *de novo* to determine the amount 'a properly functioning jury . . . would have awarded."  *Id.* at 48.  The Second Circuit reversed, explaining

---

[2] The issue of a new trial on damages alone versus a new trial on all issues was not addressed in *Shu-Tao Lin* because the parties entered into a no-contest stipulation on the issue of defendant's liability.  *Id.* at 47.

860909v.1

that remittitur under these circumstances violated the defendant's Seventh Amendment right to jury trial:

> [Remittiturs] are not designed for a case . . . in which prejudicial error has infected the jury's entire consideration of plaintiff's pecuniary loss.  In such circumstances, it is impossible to preserve a portion of the jury's verdict . . . by starting with the jury's verdict and cutting it down.  Instead, one must proceed to calculate the damages from zero and build up.  While this distinction may seem purely semantic, it is not, since building a damage award for pecuniary loss from zero up disregards the jury's verdict entirely and deprives the defendants of their right to trial by jury.

*Id.* at 50 (citations omitted).  In other words, the district court must "confine its role to the removal of the excess portion of the verdict so that the damage calculation leaves in the judgment a portion of what the jury awarded."  *Id.* at 49 (internal quotation marks and citations omitted); *see also Dimick v. Schiedt*, 293 U.S. 474, 486 (U.S. 1935) (remittitur does not improperly interfere with jury trial right because it "has the effect of merely lopping off an excrescence").

Even if remittitur were a proper remedy under these circumstances – which it is not – there is no principled basis upon which the award should be reduced to plaintiff's suggested figure of $10 million dollars, as opposed to any other number.  A court cannot remit an award when there is insufficient evidence on which to base the amount of remittitur.  *See Gautreaux*, 811 F.2d at 915-16 ("Because we are unable to determine the maximum award that the record before us will support, and because we are completely unable to determine loss of future earnings, it is apparent that suggestion of a remittitur is inappropriate."); *Betancourt v. J. C. Penney Co.*, 554 F.2d 1206, 1209 n.5, 1210 (1st Cir. 1977) (reversing an excessive damage award for new trial because it was impossible "even roughly to compute the excessiveness of the verdict," and  "an estimation of proper awards . . . would rest solely on speculation").  Mr.

Barnett made no effort to quantify his damages at trial, and the jury made no findings on either the extent or quantum of his damages, other than the excessive $50 million award.  In particular, the jury did not specify which of Mr. Barnett's claimed damages (first heart attack, increased atherosclerosis, second alleged heart attack, alleged reduced life expectancy, etc.) it ascribed to Merck.  Which, if any, of these damages is attributable to Merck was hotly contested.  Thus, the Court has no basis upon which to decide what damages Mr. Barnett suffered, let alone what they are worth.  Under the circumstances, remittitur is prohibited.  *See Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521-22 (1931).

In light of the foregoing, plaintiff's reliance on *Brunnemann v. Terra International, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992), is misplaced.  (*See* Pl.'s Opp'n at 19.)  *Brunnemann* did not involve a verdict infected by passion or prejudice, and was a case where the amount of the excess verdict was easy to measure.  In the *Brunnemann* court's own words:  "Although the jury award in the present case is excessive, the defects in the award are readily identifiable and measurable, and do not seem to be the product of passion or prejudice, therefore remittitur would be more appropriate than a new trial on damages."  *Id.* at 178.  In contrast here, the defect in the award is not "readily identifiable and measurable" and clearly *was* the result of passion and prejudice. Accordingly, remittitur is not a constitutionally permissible option in this case.

Of course, remittitur is never permitted in situations where a complete new trial on all issues is required, such as when the entire verdict was influenced by passion or prejudice, or where issues of damages and liability are intertwined.  *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2815, at 165 (2d ed. 1995); *Evers v. Equifax*, 650 F.2d 793, 798 (5th Cir. 1981).  As discussed in the following

860909v.1

sections of this brief, a new trial on all issues is required in this case; remittitur therefore is improper for that reason as well.

## II.    THE COURT SHOULD GRANT A NEW TRIAL ON ALL ISSUES.

### A.    The Court Is Constitutionally Bound To Order A New Trial On All Issues Because Damages And Liability Are Intertwined.

The PSC concedes that "Mr. Barnett's new trial will necessarily encompass evidence of injury and causation . . . ."  (PSC's Opp'n at 15.)   According to the PSC, the Seventh Amendment problem can be cured by instructing the jury that liability has already been determined, and that it should focus only on determining the quantum of damages.  (*Id.*)  That simplistic approach would not work in this case, however.

Mr. Barnett's case was by far the most complex of the sample Vioxx cases tried by this Court.  Mr. Barnett's use of Vioxx spanned a 32-month period and included use both before and after the April 2002 label change.  It was not a simple heart attack case.  Instead, as plaintiff's opposition brief makes abundantly clear, Mr. Barnett alleged a host of injuries, also spanning a significant period of time – from his 2002 heart attack, to practically the eve of trial, and well into the future.  Mr. Barnett's brief in opposition to Merck's motion devotes eleven pages to describing the various injuries he allegedly suffered.  (Pl.'s Opp'n at 3-13.)  For example, Mr. Barnett states that not only did he suffer a heart attack in 2002, "he also suffered: a quintuple open-heart CABG surgery; continued rapid development of plaque; a second heart attack resulting in vein occlusions; another angiogram and placement of a stent; and the likelihood of further surgical intervention and a loss of nine to ten years of his life." (*Id.* at 2.)  He also claims pain, suffering, and emotional distress.  But the first jury never decided which of these claimed injuries, if any, was caused by Vioxx.

Not only are the damages claimed by Mr. Barnett more complicated than in the other cases, but the causation theories advanced by him also are far more complex.   As was true in other cases, Mr. Barnett's counsel argued that Vioxx causes a prostacyclin-thromboxane imbalance, which supposedly can lead to blood clots (the FitzGerald hypothesis).   He also argued, however, that Vioxx causes blood pressure spikes, increased blood pressure, and increased atherosclerosis.  (*See, e.g.*, 7/31/06 Tr. at 96:10-21.)

There is no way of knowing which causation theory, if any, the first jury actually believed.  Did it believe that Vioxx caused a clot, triggering Mr. Barnett's first heart attack?  Or did it believe Vioxx caused Mr. Barnett's increased plaque, but not a clot?  Or did it believe it caused both?  Was there a second heart attack (as plaintiff contends) and was Vioxx its cause?  The first jury did not answer these questions.  Does Mr. Barnett face a reduced life expectancy, and if so, is it because he used Vioxx or does it result from his pre-existing CAD?  Again, we do not know what the first jury concluded.

The damages issues are even more hopelessly intertwined with liability issues when the issues of warning causation, the impact of the learned intermediary doctrine, and the effect of the first jury's inconsistent verdicts are taken into account.  Because this is, after all, a *warnings* case, the nature and timing of each alleged injury, and its purported cause, must be considered in light of the warnings given to, and the actual knowledge of, Mr. Barnett's physicians.  But we have no idea whether, or how, the first jury considered these issues.

Through its response to the first interrogatory, however, the first jury found that Mr. Barnett's injuries did *not* result from any failure to warn on the part of Merck.  That finding, as discussed below, relieves Merck of all liability.  In response, plaintiff speculates that perhaps the jury found that Merck's "marketing and promotion" defrauded Mr. Barnett's physicians.

(Pl.'s Opp'n at 33.)  As also discussed below, that is inconsistent with the first verdict.  If that is to be the basis for Merck's liability, however, the second jury would need to know how and when the fraud took place before it could decide which of the alleged injuries could have resulted from it.  Similarly, plaintiff speculates that the jury's negligence verdict was based on negligent testing of Vioxx.  (*Id.* at 36-37.)  Again, that is inconsistent with the first verdict.  But if that is to be the basis for Merck's liability, the second jury would need to be told when the breach of duty supposedly took place, and what it was, before it could assess which (if any) of Mr. Barnett's various alleged injuries resulted from some failure to test.  And, in deciding those issues of causation, the second jury would impermissibly be reexamining issues that were or should have been decided as part of the liability case by the first jury.

Plaintiff concedes that the Seventh Amendment prohibits "having two juries decide the same essential issues," but argues that here the jury would only have to "review the same evidence," not decide the same issues.  (*Id.* at 20.)  As shown above, that argument is simply incorrect.  The second trial demonstrably will *not* be limited to the quantum of damages, as the PSC claims, but will turn also on issues of liability: causation and fact of damages.  Plaintiff has not and cannot propose any instructions that would allow the second jury to sort through these issues without running afoul of the Seventh Amendment.  On this record, only a new trial on all issues can preserve Merck's right to a jury trial.

In an attempt to get around the Seventh Amendment problem, plaintiff relies on cases applying the "eggshell plaintiff doctrine," arguing that "Merck is responsible for all damages suffered regardless of the extent to which its conduct contributed, and regardless of whether such damages were within the contemplation of the parties." (*Id.* at 17.)  But the eggshell plaintiff doctrine does not allow a plaintiff to collect damages without proof of causation.  Rather, it

comes into play only after causation is established. The doctrine gets its name from English cases that discuss a plaintiff with an "eggshell skull" who dies when a normal person would only have suffered a bump on the head. *See* W. Page Keeton et al., PROSSER & KEETON ON THE LAW OF TORTS § 43, at 291-92 (5th ed. 1984). Under the doctrine, the defendant is held liable for even unforeseeable consequences of the personal injury he caused. The issue of unforeseeable risk "is primarily not one of causation, and never arises until causation has been established." *Id.* at 280-81. Plaintiff cannot rely on the doctrine to circumvent the requirement that before being able to recover any damages – whether based on preexisting conditions or otherwise – he must *first* prove causation. *See Eubanks v. Piedmont Nat. Gas Co.*, 198 F. Supp. 522, 527 (W.D.S.C. 1961) (holding that prior to defendant being held liable for damages resulting from an aggravation of a pre-existing condition, plaintiff first had to prove the causal connection between defendant's conduct and the aggravation). Indeed, plaintiff's own authorities support this position. (*See, e.g.*, Pl.'s Opp'n at 18 (*citing Watson v. Wilinson Trucking Co.*, 136 S.E.2d 286, 291 (S.C. 1964) (holding that "plaintiff was entitled to recover all damages *proximately resulting from* the negligent acts of the defendant, including the aggravation of his preexisting condition" (emphasis added))).)

In light of this analysis, plaintiff's pronouncement that "accepting Merck's argument would guarantee a retrial on all issues in every Vioxx case, every time a jury renders an excessive verdict" is specious. (*See* Pl.'s Opp'n at 19.) In support of this argument, plaintiff contends that "Merck would always argue that different aspects of damages and the absence of jury findings separating out medical bills and preexisting conditions, two factor present in most Vioxx cases, foreclose a trial on damages without retrying liability." (*Id.* at 10-20.) Plaintiff misunderstands the point. What makes this case unique is that plaintiff brought it under multiple

860909v.1

theories of causation – *e.g.*, atherogenesis, Fitzgerald hypothesis, blood pressure spikes – and claimed many types of damages, spanning a period of years, all of which could be explained by his preexisting CAD.  He chose to present all of them to the jury.  Not all Vioxx cases are tried this way, as this Court well knows.  Regardless of what might happen in some other case, in this case the Court is constitutionally bound by the Seventh Amendment to order a retrial on all issues.[3]

> **B.**   **The Court Must Order A New Trial On All Issues Because There Is A Reasonable Probability That Passion Or Prejudice Infected Both The Damages And Liability Issues.**

Neither plaintiff nor the PSC disagrees that the Court must also order a retrial on all issues if it concludes that the jury's liability determination as well as its damages award was influenced by passion, prejudice, caprice, undue sympathy, or arbitrariness.  *See Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 282-83 (5th Cir. 1975).  Instead, they insist there is no evidence of any such improper influences on the jury's liability determinations "other than the size of the award."  (Pl.'s Opp'n at 27.)  But the Court need not similarly turn a blind eye to what happened:

- The jury ignored the Court's instructions not to punish Merck, and instead handed down a punitive verdict in the compensatory phase.  Both the plaintiff and the PSC quarrel with Merck's reading of the fact that the jurors nodded when Mr. Beck said, in the punitive phase, "My guess is that you have already awarded punitive damages and that you did not know that this stage was even a possibility."  (8/17/06 Tr. at 2696:19-22.)  But they do not deny that it happened.

---

[3] Plaintiff's argument that a retrial on all issues would deprive him of his Seventh Amendment rights is baseless.  The Seventh Amendment protects a litigant's rights to have all fact issues decided by one jury.  A retrial on all issues would preserve that right for both parties.

The fact that the jurors returned a $1 million punitive award – modest in comparison to the excessive "compensatory" verdict – further supports the notion that the jurors had already punished Merck in the compensatory phase. The Court, of course, is in the best position to assess the courtroom atmosphere and determine whether Merck's interpretation is correct. *Caldarera*, 705 F.2d at 782.

- The Court has already determined that in rendering its excessive damages award, the jury acted under the influence of passion and prejudice. (New Trial Order at 5-6.)

- There is no reason to believe that – in the space of the few hours the jury deliberated – it was both in the throes of passion and prejudice when deciding damages issues and acted rationally and dispassionately when deciding liability issues. We know from its question to the Court that the jury focused almost immediately on calculating damages, without taking the time necessary to sort through the complex medical testimony or thoughtfully examine the critical case specific issues of specific causation, warning causation, and the learned intermediary doctrine.

- The inconsistencies among the jury's responses to the jury interrogatories demonstrate that the jury was not thinking clearly and dispassionately.

- The weight of the evidence favored Merck.

As noted above, the issue is not whether some jury, acting rationally, could have arrived at the conclusion that Merck should be held liable. The issue is whether there is a reasonable probability that *this jury* – which the Court has already determined was acting under the influence of passion or prejudice when deciding damages – was also influenced by those same

13

illegitimate factors when deciding liability.   On that issue, there is at least a reasonable probability that the answer is yes.

### C. The Irreconcilable Inconsistency Among The Jury Interrogatory Answers Requires A New Trial.

In addition to evidencing the fact that passion and prejudice infected the jury's entire verdict, the irreconcilably inconsistent verdicts in this case are yet another separate and independent ground for a new trial on all issues.  *Richardson v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988).  Merck objected to the inconsistency while the jury was still impaneled, and thus did not waive its right to raise the issue now.  Because there is no way to reconcile the jury's findings that Merck *did not* fail to warn under the theory of strict liability with its findings that Merck *did* fail to warn under theories of negligence and deceit, the Court must order a new trial on liability as well as damages.

### 1. Merck Timely Objected To The Inconsistent Verdicts.

The PSC argues that "Merck's failure to immediately object to the jury's finding prohibits it from raising the matter now." (PSC's Opp'n at 16.)  This is factually wrong.  Immediately after the jury returned with the verdict in this case, Merck's attorney raised this issue.  (8/17/06 Tr. at 2682:25-2683:8.)  Because Merck properly objected to the verdict before the jury was discharged, the PSC's waiver argument is wholly without merit.

Plaintiff's position on the issue of waiver is similarly meritless.  Although not arguing that Merck failed to timely raise the inconsistency, plaintiff contends that "[t]he proper procedure is for the attorney to request the verdict to be clarified before jury was discharged."  (Pl.'s Opp'n at 30.)  None of the authorities cited by plaintiff supports this argument.  For example, in the only Fifth Circuit case cited in both oppositions, *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 (5th Cir. 1974), the jury returned with an award of punitive damages

without awarding compensatory damages on one of the claims, and the Court *sua sponte* sent the jury back for further deliberations to clarify the award.  The case does not say anything about waiver, but rather speaks to the judge's options when a problematic verdict is returned, holding that a "trial court may resubmit the issue to [the jury] for clarification."  *Id.* at 547.  The same is true of the other cases cited by plaintiff.  (*See* Pl.'s Opp'n at 30 (*citing Cont'l Cas. Co. v. Howard*, 775 F.2d 876, 886 (7th Cir. 1985) (party may not dispute the verdict at a later date if he failed to object at the time it was rendered); *Fox v. U.S.*, 417 F.2d 84 (1969) (discussing proper procedure if the court enters a verdict even after one juror is silent when being polled about whether s/he agrees with the verdict)).)

Moreover, the Second Circuit recently rejected plaintiff's argument.  In *Kosmynka v. Plaris Indus., Inc.*, 462 F.3d 74 (2d Cir. 2006), the jury found for the defense in a products liability action on claims of strict liability and implied warranty, but found the defendant liable for negligence.  On appeal, the Second Circuit concluded that this verdict was inconsistent and that the proper solution was a new trial on all issues.  *Id.* at 77.  One of the arguments that plaintiff made was that the defendant had waived its objection to the inconsistent verdict because, when the verdict was announced, defendant only asked for a mistrial rather than demanding further deliberations.  After conducting a survey of other Circuits' positions on the subject (including the 4th, 6th, 9th and 10th), the court concluded:

> [T]here is no authority to support plaintiff's contentions that, when faced with an inconsistent verdict, the onus is on the 'dissatisfied party' to ensure that the court keep the jury, or that by a requesting a mistrial, a 'dissatisfied party' waives appellate review of the inconsistent verdict.   Once the court is on notice of the inconsistency, each party has the choice of what to advocate and the court has the choice of what to do.

860909v.1

*Id.* at 83.  Here, Merck properly and timely objected to the inconsistent verdict, and therefore did not waive its right to raise the issue now.

### 2.    The Strict Liability And Deceit Verdicts Are Incurably Inconsistent.

Plaintiff argues that there is no inconsistency between the strict liability and deceit verdicts for three reasons:  (1) strict liability is established by statute and deceit is established by common law (Pl.'s Opp'n at 32); (2) the wording of the elements of each cause of action is different (*id.*); and (3) deceit must be proven by clear and convincing evidence, while strict liability must be proven by a preponderance of the evidence (*id.* at 33).

None of these arguments supports plaintiff's position.  First, that one cause of action is statutory and the other arises from common law, or that the wording of the elements for each cause of action is not identical, are distinctions without a difference.  As soon as the surface of the elements of each claim is scratched, and an inquiry is made into the actual proof required for both claims under the circumstances of this case, it becomes immediately evident that the claims are functional equivalents.  Exoneration from liability under strict liability thus necessarily requires exoneration from the deceit claim.  As explained in Merck's opening brief, in order to prove strict liability, plaintiff had to show that Merck failed to warn plaintiff's physician of a known or knowable risk and that this failure caused plaintiff's injuries.  (Jury Charge at 8-9.) This is exactly the same proof that is required for plaintiff's deceit by concealment claim, under which plaintiff must prove that Merck "failed to disclose a material fact" that it was "required to" disclose to plaintiff's physician and that this caused plaintiff's injuries.  (*Id.* at 12.)  Since the only disclosure that Merck was "required to" disclose related to Vioxx risk/benefit information, it is impossible that Merck both did not fail to warn Mr. Barnett's treating physician of a known or knowable risk *and* that it knowingly failed to disclose such a risk to Mr. Barnett's physician.

860909v.1

Second, the fact that plaintiff's deceit claim requires a higher burden of proof only highlights the illogical nature of the verdict. If plaintiff was unable to prevail under the lower burden of proof of preponderance of the evidence for the strict liability failure to warn claim, how then could plaintiff have met the higher burden of showing by clear and convincing evidence that Merck fraudulently failed to warn?

The cases plaintiff cites in opposition do not say anything different, and are inapplicable. That claims of negligence and unseaworthiness, or breach of warranty and fraud, or RICO fraud counts and Securities Acts violations have been recognized as distinct causes of action is irrelevant to whether, under the circumstances presented here, strict liability failure to warn and deceit are distinct claims. (*See* Pl.'s Opp'n at 31-32 (*citing Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 299 (5th Cir. 1986) and 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2510 (2006) (negligence and unseaworthiness)); Pl.'s Opp'n at 32 (*citing Haynes v. Manning*, 717 F. Supp. 730, 735-36 (D. Kan. 1989) (breach of warranty and fraud)); Pl.'s Opp'n at 32 (*citing Diamond Shamrock Corp. v. Znke & Trumbo, Ltd.*, 791 F.2d 416, 1424-25 (10th Cir. 1986) (RICO and Securities Act)).)

Moreover, plaintiff's attempt to explain the inconsistency by speculating that the jury could have found that "regardless of the warnings issued with Vioxx, and regardless of whether or not Vioxx was defective and unreasonably dangerous, Merck in connection with the marketing and promotion of Vioxx 'knowingly misrepresented or failed to disclose a material fact to Plaintiff's treating physician in a circumstance where it was required to do so'. . ." is without merit. (*See* Pl.'s Opp'n at 33.)  In order for any of Merck's "marketing and promotional" materials to form the basis of a fraud claim, plaintiff would have to have shown at trial that Dr. Mikola saw these materials and relied on them in making his prescribing decision.

Yet, the only material that arguably falls into this category was the VIGOR article, which Dr. Mikola testified he read. This article could not have supported the jury's verdict, however, because Dr. Mikola testified at trial that whether there were 17 or 20 reported cardiovascular events in the Vioxx arm of the study (as discussed in the *New England Journal of Medicine*'s "Expression of Concern") made no difference to him.  (8/4/06 Tr. at 958:24-959:23.)  Merck's "statements" in the VIGOR paper thus cannot have been the legal cause of plaintiff's alleged injuries.  Also, a claim of overpromotion is just failure to warn in another garb.  The claim is that the effectiveness of the warnings is undermined by the promotional material.  Thus, a deceit verdict based on overpromotion is wholly inconsistent with the first verdict.

As noted above, in later cases tried by the court, a "no" response to the failure to warn interrogatories led directly to a defense verdict.  The jury was told not to consider the deceit claims, because a "no" response to failure to warn is inconsistent with a verdict for plaintiff on deceit.  (*See Mason* and *Dedrick* Jury Interrogatories, attached hereto as Ex. A.)

> **3.    The Strict Liability And Negligent Failure To Warn Verdicts Are Also Inconsistent.**

Plaintiff and the PSC argue that the Court has an obligation to "attempt to reconcile and harmonize the jury's answers to validate the verdict."  (Pl.'s Opp'n at 33.)  But even plaintiff's own authorities say that the Court's duty to reconcile the verdicts extends only so far as the answers to the interrogatories can be read in such a way that they "represent a logical and probable decision."  *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987).  The fact is, in a pharmaceutical failure-to-warn case, a "no" answer on strict liability and a "yes" answer on negligence cannot be reconciled.  As explained in detail in Merck's opening brief, the two causes of action (just as the claim for deceit) require the same elements of proof:  that Merck failed to

adequately warn plaintiff's physician of the risks associated with Vioxx, and that the failure to warn caused plaintiff's injuries.  (Jury Charge at 8, 11.)

Citing *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254 (4th Cir. 1998), and *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321 (S.C. App. 1995), plaintiff and the PSC argue that "[u]nder South Carolina law, a jury finding for the manufacturer on a strict liability claim does not exonerate the manufacturer for a claim based upon negligence."  (Pl.'s Opp'n at 35; PSC's Opp'n at 17.)  But neither case supports their position that *in this case*, the two theories of liability are different, because neither case discusses the impact of comment k on a strict liability claim.  *Talkington* was a products liability action in which the issue was whether the manufacturer's failure to include safety features on a lighter rendered it defective for purposes of strict liability or made the manufacturer negligent in its design of the lighter.  It was not a failure-to-warn case.  Similarly, although *Bragg* contained allegations of failure to warn, it involved a defective aerial device, not an "unavoidably unsafe" product under comment k, and the Court did not consider comment k in its analysis.

What plaintiff and the PSC fail to acknowledge – and the reason neither of these cases is applicable here – is that, in a prescription drug case under comment k, negligence and strict liability amount to the same claim.  This is because, under comment k, the issue is not whether the product itself was defective in its design, but rather whether it was "defective" for purposes of strict liability because of an inadequate warning.  This is exactly the same question the jury had to answer when considering the negligent failure-to-warn claim in this case.  As with the deceit claim, it is logically impossible for the jury to have concluded that Merck did not fail to warn for purposes of strict liability, but that it failed to warn for purposes of negligence.  For that reason, in every case following *Barnett*, the Court combined the strict liability and negligent

19

failure to warn claims.  (*See, e.g., Mason* and *Dedrick* Jury Interrogatories, attached hereto as Ex. A.)

Plaintiff's additional arguments attempting to reconcile the inconsistency are similarly without merit.  For example, plaintiff argues negligence is the "broader" theory because even if the jury concluded that Merck adequately warned Mr. Barnett's physician, it "could have found that Merck had failed to warn the medical community."  (Pl.'s Opp'n at 37.)   But that argument is unsupportable.  Because plaintiff has to prove proximate cause to prevail on either negligence or strict liability, even if the *only* person that Merck had adequately warned was Mr. Barnett's physician, that would defeat warning causation.  Indeed, the Court instructed the jury that, "if the user or his treating physician is aware of the danger and nevertheless proceeds to make use of the product and the user is injured by it, the user may not recover from the manufacturer any damage caused by its use."  (Jury Charge at 10.)  Merck is not on trial for failing to warn the medical community in general, but rather for allegedly failing to warn Mr. Barnett's physician.

Similarly, plaintiff's hypothesis that the jury could have found that Merck was negligent in failing to conduct adequate testing also does not resolve the inconsistency.  Under strict liability, Merck has a duty to warn of "knowable" risks, and the question of whether Merck conducted adequate testing must be answered before a determination can be made about whether the risk was "knowable."  *See, e.g., Kincer v. Danek Med., Inc.*, No. 96-3240, 1999 U.S. Dist. LEXIS 6446, at *25 n.13 (D. Tenn. Apr. 19, 1999).  If the jury concluded that Merck was negligent in its testing, as plaintiff suggests, then to avoid an inconsistent verdict, it would have had to conclude that there existed knowable risks of which Merck failed to warn.  The jury did not do so.  Thus, plaintiff's "negligent testing" hypothesis also does not cure the inconsistency.

Finally, plaintiff's argument that "an alternative explanation for the different findings is that the jury simply wanted to leave no doubt that they believed Merck to be negligent, and that an affirmative answer to the first question, which made no reference to negligence, might be misinterpreted as implying that Merck was not negligent" is plainly absurd.  So long as the jury answered "yes" to negligence, there would be no question in anyone's mind that it believed Merck was negligent, regardless of what answers it gave to the other interrogatories.  Additionally, the jury answered "yes" to the deceit interrogatories, even though they made no reference to negligence either.  The cases plaintiff cites in support of the proposition that "[e]ven a jury verdict inconsistent on its face is not inconsistent if it can be explained by assuming the jury reasonably misunderstood the instructions" both involve circumstances in which the inconsistency could logically be explained and reconciled.  *See*, *e.g.*, *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978) (reconciling verdict in which jury exonerated defendant from negligence but found plaintiff only 75% contributorily negligent by concluding that jury believed that 25% of the injury was the result of a preexisting condition).  Here, there is no way to reconcile the inconsistency in the verdict rationally, and thus, the Court must order a new trial on all issues.

### D.    A New Trial Is Also Required Because The Clear Weight Of The Evidence Favored Merck.

As detailed in Merck's opening brief, the fact that the weight of the evidence overwhelmingly favored Merck is an additional indicator that the jury's entire verdict was the result of passion and prejudice.  It also serves as an independent ground for a new trial on all issues.  The clear weight of the evidence presented at trial established that: (1) Mr. Barnett's physicians knew the risks associated with Vioxx at the time of their prescribing decisions; (2) a different warning would not have changed these doctors' decisions to prescribe Vioxx to Mr.

Barnett; and (3) Vioxx neither caused Mr. Barnett's heart attack nor accelerated his atherosclerosis. Plaintiff's arguments in opposition to Merck's motion do not prove otherwise.[4] In fact, plaintiff offers no credible rebuttal to the points raised by Merck. Instead, he goes to great lengths to describe the "significant, serious, permanent and life-threatening damage and disability" that "has substantially reduced his remaining life expectancy" (Pl.'s Opp'n at 37) – all the while overlooking that, in order to be compensable, these claimed damages must not only be attributable to his Vioxx use but must flow from a failure to warn on Merck's part. Plaintiff also returns, time and again, to the refrain that Merck "offered not a single retained expert witness in response" to plaintiff's experts (*e.g.*, *id.* at 22) – ignoring that it was plaintiff's burden to prove his case, not Merck's to disprove it. For the reasons stated in Merck's underlying motion, he failed to do so.[5] The Court should accordingly set aside the jury's verdict, which was against the great weight of the evidence, and should order a new trial on all issues.

## III.    CONCLUSION.

The PSC concedes that a retrial on damages only "will necessarily encompass evidence of injury and causation, as well as compensatory and non-economic loss, and culpability for punitive damages . . . ." (PSC's Opp'n at 15.) In other words, the retrial envisioned by the PSC would save no time and engender no efficiencies because virtually all the evidence from the first trial could be repeated. But, as noted above, a retrial limited to damages alone raises serious

---

[4] The PSC makes no arguments on these points in its opposition brief.

[5] Merck further discusses these issues – albeit under the rubric of insufficiency of the evidence – in its reply brief in support of its Renewed Motion for Judgment as a Matter of Law. Merck's argument that Mr. Barnett's physicians knew the risks associated with Vioxx at the time of their prescribing decisions is addressed in Part II.B of that brief; its argument that a different warning would not have changed these doctors' decisions to prescribe Vioxx to Mr. Barnett is discussed at Part II.C; and its argument that Vioxx neither caused Mr. Barnett's heart attack nor accelerated his atherosclerosis is covered in Part I. Merck hereby incorporates those sections herein by reference.

issues, creating a substantial likelihood of reversal in the event the jury awards any damages.  On

the other hand, there is no precedent for reversing a trial court's decision to order a complete

retrial.  For the reasons stated above and those set forth in Merck's opening brief in support of its

Motion for New Trial, the Court must deny plaintiff's request for remittitur and grant a new trial

on all issues.

Dated:  March 8, 2007                                    Respectfully submitted,


                                                        /s/ Dorothy H. Wimberly
                                                        Phillip A. Wittmann, 13625
                                                        Dorothy H. Wimberly, 18509
                                                        STONE PIGMAN WALTHER
                                                        WITTMANN L.L.C.
                                                        546 Carondelet Street
                                                        New Orleans, Louisiana  70130
                                                        Phone:  504-581-3200
                                                        Fax:     504-581-3361

                                                        Defendants' Liaison Counsel

                                                        Philip S. Beck
                                                        Andrew Goldman
                                                        Adam Mortara
                                                        Hamilton Hill
                                                        BARTLIT BECK HERMAN PALENCHAR
                                                        & SCOTT LLP
                                                        54 West Hubbard Street, Suite 300
                                                        Chicago, Illinois  60610
                                                        Phone:  312-494-4400
                                                        Fax:     312-494-4440

                                                        Douglas Marvin
                                                        Elaine Horn
                                                        WILLIAMS & CONNOLLY LLP
                                                        725 Twelfth Street, N.W.
                                                        Washington, D.C.  20005
                                                        Phone:  202-434-5000
                                                        Fax:     202-434-5029

                                                        And

Brian S. Currey
Catalina J. Vergara
A. Patricia Klemic
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

Attorneys for Merck & Co., Inc.

860909v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply of Merck & Co., Inc. ("Merck") In Support of Motion for New Trial on All Issues has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Barnett, Mark Robinson, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 8th day of March, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

860909v.1