UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:**
   *Edmonds, et al. v. Merck & Co., Inc.*, No. 05-5450
   *Stinson v. Merck & Co., Inc.*, No. 05-5494
   *Watson v. Merck & Co., Inc.*, No. 05-5545

**ORDER & REASONS**

Before the Court is Merck & Co., Inc.'s ("Merck") Motion for Summary Judgment (Rec. Doc. 7345) in three individual Vioxx cases on statutes of limitations grounds. The Court heard oral argument and took this motion under submission. Given the existence of factual disputes regarding both the triggering and tolling of the various limitations periods, Merck's motion is now DENIED.

**I.    BACKGROUND**

This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from

osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained available to the public until September 30, 2004, at which time Merck withdrew it from the market when data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarctions (heart attacks) and ischemic strokes. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States. On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation ("MDL") status on Vioxx lawsuits filed in federal court and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005).[1]

## II.   PRESENT MOTION

On September 22, 2006, Merck filed the instant motion for summary judgment in the following three individual Vioxx cases:

- *Edmonds, et al. v. Merck & Co., Inc.*, No. 05-5450: Boyd and Janet Edmonds

---

[1] For a more detailed factual and procedural background, see *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006) (denying certification of a nationwide personal injury class action) and *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

      reside in Guntersville, Alabama.  Mr. Edmonds allegedly suffered non-fatal heart attacks on March 27, 2001 and September 2, 2001 as a result of taking Vioxx.  Their case was filed on November 7, 2005 in this Court.

- *Stinson v. Merck & Co., Inc.*, No. 05-5494:  Donald Stinson resides in Cheatham County, Tennessee.  Mr. Stinson allegedly suffered a non-fatal heart attack on October 14, 2000 as a result of taking Vioxx.  His case was filed on November 8, 2005 in this Court.

- *Watson v. Merck & Co., Inc.*, No. 05-5545:  Timothy Watson resides in Cadiz, Kentucky.  Mr. Watson allegedly suffered a non-fatal stroke on August 23, 2002 as a result of taking Vioxx.  His case was filed on November 14, 2005 in this Court.

Merck argues that these plaintiffs' claims are time-barred pursuant to any conceivably applicable statute of limitations and therefore that it is entitled to summary judgment.  However, the Plaintiffs' Steering Committee ("PSC") argues that the plaintiffs' claims are timely based on a combination of the discovery rule (which delays the running of the relevant limitations periods) and tolling of the applicable limitations periods under the doctrine announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).  Merck responds that *American Pipe* tolling should no longer be recognized in pharmaceutical personal injury cases, but that even if this Court applies *American Pipe*, the plaintiffs' claims could only have been tolled from May 23, 2001, until September 18, 2002, during which Vioxx personal injury class claims were pending in the *Lettieri/Cain* case in federal court in the Eastern District of New York.  *See Lettieri, et al. v. Merck & Co., Inc., et al.*, CV 01-3441 (E.D.N.Y. filed May 23, 2001).  To the extent that

tolling is necessary to preserve the plaintiffs' claims, the PSC contends that the plaintiffs' claims were tolled by one of several class actions filed after the withdrawal of Vioxx from the market on September 30, 2004, and that the *Lettieri/Cain* case is immaterial for purposes of *American Pipe* tolling.

### III.    LAW & ANALYSIS

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the defendant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While "[t]he issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage," this is only true "if there are no genuine issues of material fact in dispute." *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 835 (8th Cir. 2003). "The moving party bears the burden of demonstrating that there exists no genuine issue of material fact." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2006 WL 3771011, at *2 (S.D.N.Y. Dec. 14, 2006). "In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor." *Id.*

The United States Supreme Court has instructed that state statutes of limitations are "matters of local law properly to be respected by federal courts sitting" in diversity. *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 110-11 (1945). Given that this MDL currently contains cases transferred from every State in the Union, and that federal jurisdiction in these cases is premised on diversity of citizenship, the Court could conceivably be faced with the task of applying each state's statute of limitations in this multidistrict litigation. For purposes of the present motion, however, the Court is asked to examine only three cases.

The Court must first determine which state's choice-of-law rules to apply in these cases. Then, pursuant to those rules, it must choose the applicable statutes of limitations. Lastly, the Court must determine when each limitations period began to run and whether or not the applicable statutes of limitations have been tolled by the pendency of a class action under the *American Pipe* doctrine or otherwise. Merck will be entitled to summary judgment only if the Court can determine that the applicable limitations periods expired prior to the filing of the plaintiffs' respective complaints.

### A.    Which State's Choice-of-Law Rules Should Be Applied?

"[I]n diversity lawsuits, a federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state." *Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 (Former 5th Cir. Unit A Oct. 1981); *see Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496-97 (1941). As noted, all three of the instant cases were filed directly into this MDL in the Eastern District of Louisiana by non-Louisiana citizens. While the parties seemingly agree that this renders Louisiana the forum state and that the Court should therefore apply Louisiana's choice-of-law rules to select the applicable statutes of limitations, this result will not be precipitously reached. Having experimented with direct filing in these cases to eliminate some administrative inefficiencies of multidistrict litigation, it is appropriate to say a few words about the implications of this practice in cases premised on diversity jurisdiction.

Traditionally, the cases in any given MDL originate from two sources.

First, the majority of cases are filed in, or removed to, federal courts across the country

and transferred to the MDL court by the Judicial Panel on Multidistrict Litigation. *See* 28 U.S.C. § 1407(a). In these cases, the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules. *See Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990). While the precise limits of the MDL court's authority over such cases is currently subject to debate, it is clear that the court cannot try these cases, but rather must remand them to the transferor forum when pretrial discovery is complete. *See Lexecon, Inc. v. Miberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). This MDL currently consists of approximately 6,000 such cases.

Second, a number of cases are often filed directly into the MDL by citizens who reside in the MDL court's judicial district. In this MDL, approximately 350 cases have been filed in the Eastern District of Louisiana by citizens of Louisiana. These cases would have been filed here whether or not an MDL existed in this district. In these cases, the MDL court must apply its own state law, that is, the law of the state in which it sits. It is undisputed that the MDL court has complete authority over every aspect of these cases.

In this MDL, however, Pretrial Order No. 11 has created a third category of cases filed directly into the MDL by plaintiffs who do not reside in this district. Pretrial Order No. 11 provides as follows:

### A. Waiver of Any Objections to Improper Venue

In order to eliminate the delays associated with transfer of cases filed in or removed to other federal district courts to this Court, and to promote judicial efficiency, defendant Merck & Co., Inc. ("Merck"), has stipulated and agreed that it will not assert any objection of improper venue pursuant to Fed. R. Civ. P. 12(b) as to any VIOXX®-related cases filed directly in the Eastern District of Louisiana that emanate from districts outside the Eastern District of Louisiana and that would appropriately be included in this multidistrict litigation proceeding. Accordingly, a plaintiff may now file any such complaint against Merck directly in the Eastern

>District of Louisiana, rather than in a federal district court affording proper venue. Merck's stipulation and agreement in this regard is contingent on the understanding that upon the completion of all pretrial proceedings applicable to a case directly filed before this Court pursuant to this provision, this Court, pursuant to 28 U.S.C. § 1404(a), will transfer that case to a federal district court of proper venue, as defined in 28 U.S.C. § 1391, based on the recommendations of the parties to that case. The Court intends to proceed consistent with that understanding. This stipulation and agreement is by Merck only and does not apply to any other defendant, including any of Merck's insurers, employees, or representatives.
>
>>**B.     Waiver Of Right To Assert That Filing In The Eastern District Of Louisiana Did Not Interrupt Prescription**
>
>Merck has further stipulated and agreed that it will not assert that any filing made pursuant to paragraph II.A above did not interrupt the applicable prescriptive or limitations period for the claims raised in such complaint. The waiver, however, does not act as an acknowledgment of any prescriptive or limitations period that may have run prior to the filing and Merck specifically reserves the right to assert that any such period already accrued. Additionally, this stipulation and agreement is by Merck only and does not apply to any other defendant, including any of Merck's insurers, employees or representatives.

*See* Pretrial Order No. 11 (May 18, 2005). Direct filing into the MDL avoids the expense and delay associated with plaintiffs filing in local federal courts around the country after the creation of an MDL and waiting for the Panel to transfer these "tag-a-long" actions to this district. As noted, the three cases that are the subject of the instant motion were filed directly in this district pursuant to Pretrial Order No. 11 by citizens who do not reside in Louisiana, as were approximately 2,000 other cases. This MDL Court technically has complete authority over every aspect of these cases, limited only by the provisions of Pretrial Order No. 11. The filing of these cases in this district also suggests that the Court should apply the law of the state in which it sits, including Louisiana's choice-of-law rules. As will be explained, this could potentially result in the application of Louisiana's statute of limitations in these cases, and a claim that is otherwise time-barred under the law of the plaintiff's home state might be timely solely by virtue

of being directly filed into the MDL. While plaintiffs are generally allowed to reap such choice-of-law benefits by their selection of forum, it is not clear whether defendants can be "properly subjected to suit" in the MDL forum. *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964). However, for the reasons stated below, the Court finds that Louisiana's choice-of-law rules ensure that the plaintiffs do not ultimately realize this potentially significant benefit of direct filing, rendering this a non-issue in these cases. Nevertheless, this potential implication of direct filing is one that should be considered by other MDL courts.[2]

### B.  Selecting the Applicable Statutes of Limitations

Louisiana's choice-of-law rules for selecting the applicable limitations period in a particular case are set forth in Article 3549 of the *Louisiana Civil Code*, which provides as follows:

> A.  When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this

---

[2] Direct filing will also create another oddity when cases are eventually transferred to the plaintiffs' home districts for trial, as the traditional "transferor"/"transferee" roles will be reversed. At that point in time, the MDL court will be considered the "transferor" court and the local trial courts will be considered "transferee" courts. In light of *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), the local "transferee" courts may be faced with the odd duty of applying the law of the MDL forum, including the MDL forum's choice-of-law rules, especially if the MDL forum *could* exercise personal jurisdiction over the defendant. *Cf. Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1110 (5th Cir. Unit A June 1981) ("[W]e hold that following a section 1404(a) transfer from a district in which personal jurisdiction over the defendant could not be obtained, the transferee court must apply the choice of law rules of the state in which it sits, regardless of which party requested the transfer."); *Martin v. Stokes*, 623 F.2d 469, 472 (6th Cir. 1980) ("[F]ollowing a transfer under § 1406(a) [for improper venue], the transferee district court should apply its own state law rather than the state law of the transferor district court."). While it is highly unlikely that the MDL forum's *substantive* law will be applied by the "transferee" courts, this remote possibility and the mere necessity of engaging in this choice-of-law exercise suggests that the Judiciary could benefit from further thought on the direct filing concept, which ultimately has the valuable potential to streamline the MDL process. Perhaps the answer lies in a stipulation which addresses and clarifies these issues.

>    state applies.
>
> B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:
>
>    (1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.
>
>    (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.
>
> C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

La. Civ. Code Ann. art. 3549 (2007). Accordingly, the Court must first determine which state's substantive law will be applicable to the merits of each plaintiff's claims in order to determine which sub-section of Article 3549 controls and, thus, which state's limitations period applies.

On two occasions this Court has determined that the applicable substantive law in Vioxx cases is the law of the state where the plaintiffs resided when they were prescribed Vioxx, when they ingested Vioxx, and when they were allegedly injured by the drug. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 455-58 (E.D. La. 2006) (finding that the substantive law of each plaintiff's home state would apply to their respective claims pursuant to New Jersey's choice-of-

law rules); *In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 741, 749 (E.D. La. 2006) (noting that French and Italian substantive law would likely apply to the claims of French and Italian Vioxx claimants pursuant to Illinois' choice-of-law rules). The Court reached the same conclusion in the *Propulsid* multidistrict pharmaceutical litigation. *See In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 142-44 (E.D. La. 2002) (applying Indiana's choice-of-law rules). Furthermore, five bellwether trials have been conducted in this litigation and on each occasion the Court applied the law of the plaintiff's home state.

Louisiana's choice-of-law rules confirm that the substantive law of the plaintiffs' home states will apply to the merits of the three cases at issue in this motion. *See* La. Civ. Code Ann. art. 3515 (2007) (setting forth Louisiana's general choice-of-law considerations and instructing courts to consider (1) the relationship of each state to the parties and the dispute, and (2) the policies and needs of the interstate and international systems); La. Civ. Code Ann. art. 3542 (2007) (setting forth the specific choice-of-law provisions for tort claims and instructing courts to consider (1) the place of conduct and injury, (2) the domicile, habitual residence, or place of business of the parties; and (3) the state in which the relationship, if any, between the parties was centered); *see also Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 488-90 (5th Cir. 2001) (noting that "under Louisiana's choice of law rules, the ultimate question is not which state has the most 'significant interest' in the dispute, but rather which state's *policies* would be *most seriously impaired* if its law were not applied to the issue," and finding that Tennessee law applied to the merits of the plaintiff's claims). In light of these authorities and recognizing that Louisiana's policies could only be nominally impaired if its substantive law were not applied in cases filed directly into this MDL pursuant to Pretrial Order No. 11 by non-Louisiana citizens

against a New Jersey defendant, the Court finds that Alabama, Tennessee, and Kentucky substantive law will govern the plaintiffs' respective claims.

Although the substantive law of Alabama, Tennessee, and Kentucky will apply to the merits of the plaintiffs' claims, the Court is uniquely aware that Louisiana's prescription law may nevertheless apply pursuant to Article 3549(B) of the *Louisiana Civil Code*. *See Marchesani*, 269 F.3d at 490-93. In order to apply Article 3549(B), however, the Court must determine whether the plaintiffs' claims are barred under the laws of their home states. This, in turn, requires the Court to examine the following details of each state's laws: (1) the length of the limitations periods for each of the claims asserted by the plaintiffs; (2) when the limitations periods began to run, giving effect to various versions of the discovery rule; and (3) whether any of the limitations periods were tolled, under the *American Pipe* doctrine or otherwise. Accordingly, before turning to an analysis of each state's limitations law, the Court will briefly discuss the *American Pipe* doctrine.

### C. *American Pipe* Tolling

In *American Pipe & Construction Co. v. Utah*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). This rule was initially limited to "purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," *id.* at 553, but the rule was later extended to apply to "all asserted members of the class, not just as to intervenors." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) (internal quotation omitted). The Court in *Crown* explained the justification for

-11-

this doctrine:

> A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions–precisely the situation the Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id.* at 350-51.[3]

Federal courts have uniformly held that the *American Pipe* rule operates only with respect to the first class action filed for a specific controversy. If class certification has been denied, plaintiffs cannot receive the benefit of tolling in a second, subsequently filed class action involving the same proposed class and claims. This limitation is known as the prohibition against "stacking" or "piggybacking" class actions for purposes of tolling. *See, e.g., Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any.").

---

[3] As an initial matter, Merck argues that *American Pipe* tolling should not even apply in this case, because it is unreasonable for plaintiffs to rely on the potential certification of a class of persons allegedly injured by a pharmaceutical drug, since such classes are rarely certified. *See In re Rezulin Prods. Liab. Litig.*, MDL 1348, 2005 WL 26867, at *3 (S.D.N.Y. Jan. 5, 2005) (noting that the "wisdom of adopting the *American Pipe* rule in mass tort cases is, to say the least, highly debatable"); *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 937 (Cal. 1988) (noting that personal injury plaintiffs "would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations."); *see also* Mitchell A. Lowenthal & Norman Menachem Feder, *The Impropriety of Class Action Tolling for Mass Tort Statutes of Limitations*, 64 Geo. Wash. L. Rev. 532 (1996). However, until such a uniform rule prohibiting certification of personal injury class actions is announced, the Court will faithfully apply *American Pipe*.

The Court recognizes, however, that the *American Pipe* doctrine is a matter of federal common law, or, as the Fifth Circuit has said, a "judge-made federal practice." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1146 (5th Cir. 1997). In diversity cases, where state law provides the rules of decision, "a federal court should apply not only state statutes of limitation but also any accompanying tolling rules." *Id.* at 1145 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-53 (1980)). Indeed, it has been recognized that *American Pipe* does not apply by its own force in diversity cases:

> The limitations periods of *American Pipe* and *Crown, Cork* were derived from federal statutes. Here, we are dealing with Hawaii's limitation statutes. Because none of them provide for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown, Cork* can be treated as applicable precedent.

*Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995). Accordingly, the Court cannot uniformly apply the *American Pipe* doctrine in the instant cases, but must instead examine each state's tolling law to determine whether or not the states recognize class action tolling, by adopting the *American Pipe* rationale or otherwise. If in fact a state does recognize class action tolling, the Court must determine *which* class actions, if any, tolled the respective plaintiff's claims.

### D.    Analysis of Potentially Applicable State Limitations Laws

With these concepts in mind, the Court will now examine the limitations laws of Alabama, Tennessee, and Kentucky. If the plaintiffs' claims are timely under the law of their home states, Article 3549(B) suggests that Merck's motion should be denied. However, if the plaintiffs' claims are untimely under the law of their home states, Article 3549(B)(2) and Article 3549(C) may dictate a different result.

### *i.  Alabama*

Mr. Edmonds began taking Vioxx in September of 1999 and allegedly suffered heart attacks on March 27, 2001 and September 2, 2001 as a result of ingesting the drug. The Edmonds' filed suit directly in this Court on November 7, 2005, asserting claims for negligence, strict products liability, breach of warranty, and fraud/misrepresentation.

The Edmonds' negligence and strict liability claims are subject to a two-year limitations period in Alabama. *See Ridling v. Armstrong World*, 627 F. Supp. 1057, 1061-62 (S.D. Ala. 1986) (noting that the one-year limitations period of Ala. Code § 6-5-502 was voided by *Lankford v. Sullivan, Long & Hagerty*, 416 So. 2d 996 (Ala. 1982), and applying a two-year statute of limitations located in Ala. Code § 6-2-38 and § 6-2-30(b)). The Edmonds' warranty claims are subject to a four-year statute of limitations. *See* Ala. Code § 7-2-725; *Locke v. Ansell Inc.*, 899 So. 2d 250, 251 (Ala. 2004). Lastly, the Edmonds' fraud claims are subject to a two-year limitations period. *See* Ala. Code § 6-2-3.

Determining when these respective periods began to run in this case is difficult at this stage of the litigation. While Alabama does not recognize the discovery rule for personal injury claims, *see Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983), fraud claims in Alabama do not accrue "until the discovery by the aggrieved party of the fact constituting the fraud," *see* Ala. Code § 6-2-3. Moreover, "[a]lthough the wording of § 6-2-3 indicates that it applies only to fraud actions, that section and its predecessor have long been held to apply to any cause of action that has been fraudulently concealed from a plaintiff." *Rutledge v. Freeman*, 914 So. 2d 364, 369-71 (Ala. Civ. App. 2004). The Court finds that genuine issues of material fact exist with respect to whether the discovery of the Edmonds' right of action "was concealed by

some activity of [Merck], amounting to a fraud." *Van Antwerp v. Van Antwerp*, 5 So. 2d 73, 80 (Ala. 1941). Accordingly, summary judgment is inappropriate in the Edmonds' case. *See Rutledge*, 914 So. 2d at 370-71 ("In cases involving conflicting evidence on the issue whether the statute of limitations should be tolled until the plaintiff discovers the fraud under § 6-2-3, according to the supreme court [of Alabama], 'summary judgment . . . in inappropriate and constitutes reversible error.'") (quoting *Ryan v. Charles Townsend Ford, Inc.*, 409 So. 2d 784, 787 (Ala. 1981)); *see also Crisman v. Odeco, Inc.*, 932 F.2d 413, 417 n.4 (5th Cir. 1991) ("[E]valuating when a plaintiff reasonably was put on notice ordinarily is a factual determination.").[4]

---

[4] Merck argues that an Alabama state court has ruled in a Vioxx case that § 6-2-3 does not toll the statute of limitations on negligence and strict liability claims, *see Albright v. Merck & Co.*, No. CV-05-2316 (Circuit Court of Jefferson County, Alabama) (Dec. 14, 2006 transcript), however, this ruling was made after a trial on the merits and thus is not inconsistent with this Court's resolution of the instant motion.

Although the Court need not reach the issue of class action tolling, it should also be noted that Alabama recognizes the *American Pipe* doctrine, *see White v. Sims*, 470 So. 2d 1191, 1193 (Ala. 1985) ("[W]e hold that the commencement of a class action tolls the statute of limitations until such time as an independent action is filed, or until the denial of class certification, whichever may first occur."), and that the narrow exception announced in *Redman Homes Inc. v. Surtees*, 933 So. 2d 1100, 1103 (Ala. Civ. App. 2005), namely that the filing of a class action will not toll a "statute of limitations for instituting an administrative proceeding when the members of the putative class know or should know that the administrative proceeding constitutes the *exclusive* method of obtaining the relief they seek," does not apply in this case.

Moreover, Alabama specifically allows a limitations period to be tolled by multiple putative class actions filed in Alabama state courts, that is, Alabama does not enforce a prohibition on "stacking" or "piggybacking" class action complaints, at least when those complaints are filed within Alabama. *See Burdeshaw v. White*, 585 So. 2d 842, 845-47 (Ala. 1991). Accordingly, the Edmonds' claims may have been tolled by the filing of a Vioxx personal injury class action in the Circuit Court of Houston County, Alabama on October 4, 2004, *see Turner v. Merck & Co., Inc.*, CV-2004-677, and perhaps even by Vioxx class actions filed in other jurisdictions. Despite extensive briefing on the tolling effect of the *Lettieri/Cain* case filed in federal court in the Eastern District of New York, an analysis of that case is unnecessary at this time.

### ii.    Tennessee

Mr. Stinson began taking Vioxx in April of 2000 and allegedly suffered a heart attack on October 14, 2000 as a result of ingesting the drug.  Mr. Stinson filed suit directly in this Court on November 8, 2005, asserting claims for negligence, strict products liability, breach of express warranty, breach of implied warranty, and fraud.

Tennessee employs a one-year limitations period for personal injury claims premised on theories of negligence and strict liability.  *See* Tenn. Code Ann. § 28-3-104.  Mr. Stinson's fraud claims are subject to a three-year statute of limitations.  *See* Tenn. Code Ann. § 28-3-105.  His warranty claims are subject to a four-year statute of limitations.  *See* Tenn. Code Ann. § 47-2-275; *Commercial Truck & Trailer Sales, Inc. v. McCambell*, 580 S.W.2d 765, 773 (Tenn. 1979). Tennessee's discovery rule provides that these limitations periods do not begin to run until Mr. Stinson discovered, or reasonably should have discovered, the following:  "(1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty."  *Foster v. Harris*, 633 S.W.2d 304, 304-05 (Tenn. 1982); *see also Roe v. Jefferson*, 875 S.W.2d 653 (Tenn. 1994).  Moreover, like Alabama, Tennessee also provides for tolling of statutes of limitations where a defendant fraudulently conceals a plaintiff's right of action.  *See Ray v. Scheibert*, 450 S.W.2d 578, 579-81 (Tenn. 1969); *Bell v. Goforth*, No. 04-997, 2006 WL 627189, at *7 (Tenn. Ct. App. Mar. 14, 2006).

Merck cites the "unprecedented publicity" surrounding the withdrawal of Vioxx from the market on September 30, 2004 and argues that this is the latest date on which the statutes of limitations for Mr. Stinson's claims could have began to run.  Thus, Merck argues that Mr. Stinson's negligence and strict liability claims became stale on September 30, 2005,

approximately one month before he filed suit in this Court. The PSC argues that Merck continued to conceal the dangers of Vioxx after it was withdrawn from the market, and that pursuant to Tennessee's discovery and/or fraudulent concealment rules, the limitations periods were not triggered until sometime after September 30, 2004. Indeed, the parties have submitted conflicting "statements of material facts" addressing these issues.

Tennessee courts recognize that determining "when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question of fact for the trier of fact." *Collins v. Edwards*, No. 03-1508, 2004 WL 1056137, at *3 (Tenn. Ct. App. May 10, 2004). Whether or not Tennessee's fraudulent concealment doctrine tolls a plaintiff's claims is also a factual question for the jury. *See First Nat'l Bank of Louisville v. Brooks Farms*, No. 89-194, 1990 WL 6386, at *8 (Tenn. Ct. App. Jan. 31, 1990). Accordingly, summary judgment is inappropriate in Mr. Stinson's case.[5]

### iii.   *Kentucky*

Mr. Watson began taking Vioxx in July of 2001 and allegedly suffered a stroke on August 23, 2002 as a result of ingesting the drug. Mr. Watson filed suit directly in this Court on November 14, 2005, asserting claims for negligence, strict products liability, breach of express warranty, fraud, and misrepresentation.

Kentucky employs a one-year limitations period for personal injury claims. *See* Ky. Rev.

---

[5] Again, although the Court need not reach the issue of class action tolling, it notes that Tennessee recognizes the *American Pipe* doctrine, but has expressly rejected cross-jurisdictional tolling, that is, Tennessee will not toll its statute of limitations "pending a judicial outcome in a foreign jurisdiction." *See Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 807-08 (Tenn. 2000). As no personal injury Vioxx class action has ever been filed in Tennessee state or federal court, Mr. Stinson's claims likely were not tolled under the *American Pipe* doctrine.

Stat. Ann. § 413.140(1)(a). Kentucky's discovery rule is similar to Tennessee's, in that the "statute of limitations commences from the date the plaintiff knew or should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *See Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 819 (Ky. 1991) (internal quotation omitted). Moreover, Kentucky's discovery rule operates to toll the statute of limitations when "there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999).[6]

Merck again argues that, at the latest, these limitations periods began to run when Vioxx was withdrawn from the market on September 30, 2004. Thus, Merck contends that Mr. Watson's negligence and strict liability claims became stale on September 30, 2005, approximately a month and a half before he filed suit in this Court. The PSC asserts that Merck continued to conceal the dangers of Vioxx after it was withdrawn from the market, and that pursuant to Kentucky's discovery rule, the limitations periods were not triggered until sometime after September 30, 2004. As noted with respect to the previous two cases subject to Merck's motion, the Court finds that there are genuine factual disputes concerning when the limitations periods began to run. Accordingly, summary judgment is inappropriate in Mr. Watson's case as well.[7]

---

[6] Although the parties do not address the issue, the Court notes that Mr. Watson's breach of warranty claims may be timely under a four-year statute of limitations. *See* Ky. Rev. Stat. Ann. § 355.2-725; *Williams v. Fulmer*, 695 S.W.2d 411 (Ky. 1985).

[7] On November 12, 2004, a class action complaint was filed in the United States District Court for the Eastern District of Kentucky on behalf of Vioxx users. *See Williams v. Merck & Co., Inc.*, No. 04-235. Without reaching the issue of class action tolling, the Court notes that Kentucky has not specifically adopted nor rejected *American Pipe* tolling.

### E. Application of Article 3549

Because the Court cannot determine as a matter of law whether or not the plaintiffs' claims are "barred in the state whose law would be applicable to the merits," it is also unable to apply subsections (B)(1) and (C) of Article 3549 of the *Louisiana Civil Code* at this stage of the litigation.  The PSC argues, however, that the Court could assume that the plaintiffs' claims are untimely under the laws of their home states but nevertheless find that the plaintiffs' claims are timely pursuant to Article 3549(B)(2) because such claims are timely under Louisiana law and Merck cannot show that "maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice."  La. Civ. Code Ann. art. 3549(B)(2).

The Court disagrees.  Without discussing whether or not the plaintiffs' claims would be timely under Louisiana law, the Court finds that maintenance of these actions in this state "is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice."  *Id.*  As noted, the only reason these cases were filed in Louisiana is because this Court issued Pretrial Order No. 11 in an effort to streamline the MDL process.  Accordingly, Louisiana's only interest in these cases arises from the fact that this MDL Court sits in Louisiana.  Such a nominal interest, without more, cannot satisfy Article 3549(B)(2).

## IV. CONCLUSION

The plaintiffs in the three instant cases, like every other plaintiff in this multidistrict litigation, assert a number of claims based on various theories of liability.  Some of these claims may shake out during trial, or perhaps even ultimately be dismissed as untimely pursuant to the

applicable statutes of limitations. However, numerous factual issues relating to Merck's conduct both before and after the withdrawal of Vioxx from the market prevent this Court from summarily determining as a matter of law whether any such claims are time-barred. In many instances, the courts in which these cases will be tried (whether labeled "transferor" or "transferee") may well be better suited to weigh the factual disputes and apply the local statutes of limitations. Accordingly, for the foregoing reasons, IT IS ORDERED that Merck's Motion for Summary Judgment is DENIED.

New Orleans, Louisiana, this 22nd day of March, 2007.

*Eldon E. Fallon*

UNITED STATES DISTRICT JUDGE