**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: VIOXX : | |
| : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| : | SECTION L |
| : | |
| ***This document relates to ALL CASES*** : | JUDGE FALLON |
| : | MAG. JUDGE KNOWLES |

**THE PLAINTIFFS STEERING COMMITTEE'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO COMPEL THE RETURN OF ATTORNEY WORK PRODUCT**

## I.   INTRODUCTION

In the course of preparing two experts to testify in state court Vioxx proceedings, counsel cooperating with the PSC inadvertently provided these experts with work product material prepared by the PSC's Science Committee. For the better part of a year Merck retained this material that reveals trial strategies and the mental impression of the PSC's Science Committee. Merck has undoubtedly derived some advantage from this material. However, the unintentional production of the privileged material compels its immediate return.

Through this motion the PSC requests that this Court take action to limit the damage caused by the inadvertent disclosure. As discussed below, Merck should be compelled to return the work-product and/or prohibited from using such materials for any purpose.

## II.   BACKGROUND

On or about December 9, 2005, counsel at Abraham, Watkins, Nichols, Sorrels & Friend ("Abraham Watkins"), a Texas law firm that has agreed to cooperate with the PSC pursuant to PTO No. 19, provided its non-testifying expert consultant, Scientific Evidence, with materials it

understood would be appropriate and helpful to enable its experts to understand Merck's liability. See Affidavit of David P. Matthews, Esq. In Support of Motion to Compel the Return of Attorney Work Product ¶¶1-4 [Attached hereto as Exhibit "A"].   To this end, Abraham Watkins forwarded documents to Scientific Evidence containing voluminous materials from Merck and other sources. *Id*. ¶8.  Unbeknownst to Abraham Watkins, and without any intention, included in the materials was the August 19, 2005 Science Committee conference call agenda and accompanying documents [hereafter the "Agenda" or "Def.Exb. 29"].   *Id*. ¶¶6-7. The Agenda bears a watermark legend prominently announcing the document to be "Confidential Attorney Work Product."

This unwitting oversight lead to Scientific Evidence including the Agenda within an even larger production of materials made available to the two experts, *i.e.*, Lemuel A. Moye, M.D., Ph.D. and Laura M. Plunkett, Ph.D., DABT.   *See* Affidavit of April K. Thomson in Support of Motion to Compel the Return of Attorney Work Product ¶3 [Attached hereto as Exhibit "B"].   Once in Scientific Evidence's possession, all of the material provided by Abraham Watkins, including the Agenda, was assembled for presentation to these experts and forwarded without any qualitative review. *Id*.  Thus, when Scientific Evidence prepared the list of reliance documents for Drs. Moye and Plunkett, it neglected to describe the Agenda as privileged per the document's self-evident legend.   Instead, Scientific Evidence simply described it with the unassuming title,  "Vioxx Scientific Committee, August 19, 2005." *Id*. ¶4.  This failure to "tag" the document as privileged on the reliance list of the experts allowed it to escape any attention by the attorneys at Abraham Watkins.  *See* Matthews Affidavit ¶11. As a result, no one, not even Scientific Evidence, was aware that the material forwarded to Drs. Moye and Plunkett contained confidential work product.

Dr. Plunkett completed her expert report on May 24, 2006.  Merck was provided the report

2

and 12 CDs full of the expert's reliance material in conformance with Fed.R.Civ.P. 26(a)(2)(B) prior to her deposition. On June 1, 2006, Dr. Plunkett was deposed. Dr. Moye completed his expert report on May 22, 2004. The report and his reliance materials (also on 12 CDs) were provided to Merck prior to his June 2, 2006 deposition.

Although both experts briefly reviewed the voluminous materials received from Scientific Evidence prior to preparing their expert reports, each has represented that the Agenda was not relevant and/or was not considered during the preparation of their reports. Dr. Plunkett testified that she was unfamiliar with the Agenda and did not consider it when forming her opinions. Specifically, in response to the question, "[w]hat is the Vioxx Science Committee as of - - or dated August 19, 2005 [as listed in the reliance materials] ...", she testified, "I don't know ... [w]e'd have to open it up."  *See* Deposition of Dr. Plunkett, June 1, 2006,  at pgs. 66-67 [Attached hereto as Exhibit "C"].  Counsel for Merck did not follow up by presenting the witness with a copy of the Agenda as an exhibit and the questioning did not alert counsel to the privileged nature of the document.[1]  Both experts made plain that the Agenda was not used to form their opinions.  Both Dr.

_____

[1]Dr. Moye testified that his practice was to review all material he was provided but items like the Agenda would be given short shrift and set aside as irrelevant.  For instance, Dr. Moye testified as follows when questioned about specific items on the reliance list:

> Q.     Or, for example, the one, the entry right above it, "Hearing
>        on Exhibits"?
> A.     Yes.
> Q.     That's a transcript of a court trial?
> A.     That's right.  That's right.
> Q.     Do you know why that would have been or interest to you?
> A.     No.  For that, what I did was look at it to see first,
>        cursorily, to see if it was going to be directly relevant.  And
>        if it wasn't going to be relevant to my opinions, then I put it
>        down and moved on to something else.

(continued...)

Moye and Dr. Plunkett have provided affidavits in support of this motion which confirm their non-use of the Agenda. *See* Affidavit of Lemuel A. Moye, M.D., Ph.D. and Affidavit of Laura M. Plunkett, Ph.D., DABT [Attached hereto respectively as Exhibit "E" and Exhibit "F"].

Merck, on the other hand, withheld the Agenda for strategic purposes hoping to surprise some unsuspecting MDL expert with the document. Merck waited for the first deposition of an expert to express an opinion about the obvious CV signal Vioxx presented to attempt to divert attention away from the obvious danger demonstrated in Merck's data. That expert turned out to be John W. Farquhar, M.D. This point was conceded by Mr. Beck at the March 8, 2007 Hearing wherein he stated:

> And we were ready–let me say, Judge, we were prepared to use this document at the MDL trial with Dr. Moye, because Dr. Moye, in his report, called Watson a signal, but they never asked Dr. Moye about the Watson analysis at any of the trials, so we had no occasion to use the document there.
>
> * * *
>
> That's a credibility question about whether Dr. Farquhar has been coached to say signal, whether by this document or by Mr. Arbitblit in other communications or by any other plaintiffs' lawyer. That's a credibility question about whether his key opinion is something he reached independently or whether that was something that was spoon-fed to him like it was to Dr. Moye and to Dr. Plunkett.

*In re Vioxx Products Liability Litigation*, MDL No. 1657, March 8, 2007 Hearing Transcript at 12-13 (E.D.La. March 8, 2007)[Attached hereto as Exhibit "G"].

---

[1](...continued)

*See* Deposition of Lemuel A. Moye, M.D., Ph.D., June 2, 2006, at pgs. 73-74 [Attached hereto as Exhibit D]. Doctor Moye similarly testified that he only reviewed the relevant portions of the four-week Ernst trial transcript. *Id.* at 74-75. Indeed, when questioned about specific items listed in the reliance materials, Dr. Moye did not recall reviewing several of the items listed therein. *Id.* at 72-76.

On March 7, 2007,  Plaintiffs first learned of the inadvertent disclosure during the deposition of Dr. Farquhar.  At the deposition, counsel for Merck attempted to cross-examine the witness using the Agenda.  Upon its disclosure, plaintiffs' counsel immediately discontinued the deposition of Dr. Farquhar to present the objection to this Court.  *See* Deposition of John W. Farquhar, M.D. (3/7/07) at 271-274.  [Attached hereto as Exhibit "H"].  The next day, this Court heard argument on the PSC's objection to the use of Exh. 3529.  During the telephonic conference with this Court,  the PSC requested that the privileged materials be returned.  *See* Transcript of March 8, 2007 Proceedings at 2-3.

At the close of the telephonic proceeding, this Court indicated that the materials at issue were "clearly a work product, clearly would be covered by the attorney-client privilege."  *Id*. at 23.  This Court further ruled that the work-product materials could not be used to examine expert witnesses that had not reviewed the materials.  *Id*. at 24-25.  Finally, this Court left open for consideration whether an inadvertent disclosure of work product to a testifying expert would result in a waiver of the work product privilege for purposes of the PSC's request that Merck be compelled to return the privileged materials currently in its possession.  *Id.*

Since this Court's March 8 Hearing, Judge  Randy Wilson, presiding over the Texas State Vioxx Litigation, was presented with the identical issue in the Harris County District Court.  On March 26, 2007, Judge Wilson heard argument on Plaintiffs' Motion for Protection and Assertion of Privilege with Regard to an Inadvertently Produced Document.   During this proceeding, Judge Wilson preliminarily indicated on the record that he would grant the plaintiffs' motion, as follows:

> Mr. Fibich, I will tell you right now, my inclination is to say that it was an inadvertent production and to sustain your objection and to require its non use and destruction, return.  All right?  That's my inclination right now

5

* * *

    Mr. Matthews has persuaded [me] it was inadvertently produced.

*In re Texas State Vioxx Litigation*, Cause No. 2005-59499, March 26, 2007 Hearing Transcript at

54-55 (157th Dist. Ct., Harris County, Tex. March 26, 2007)[Attached hereto as Exhibit "I"].

    As set forth below, the inadvertent production of the Agenda should result in it being

returned to the PSC.

### III.  <u>LEGAL ARGUMENT</u>

    **A.**  **DOCUMENTS THAT ARE INADVERTENTLY FURNISHED TO AN EXPERT WITHOUT AN INTENT THAT THE EXPERT USE THE DOCUMENTS TO FORM THEIR OPINION (AND WHICH ARE NOT USED FOR THAT PURPOSE) REMAIN <u>PRIVILEGED AND SHOULD BE RETURNED.</u>**

    The 1993 amendment to Rule 26 was in line with the federal practice of streamlining

discovery in general and, specifically, as it applies to experts.  To that end the rule provides for

testifying experts to provide certain basic information:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; <u>the data or other information considered by the witness in forming the opinions</u>; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B) (emphasis added).  While the rule provides that information considered

by the expert in forming his opinion is to be produced, there are limitations to that edict.

For instance, the accompanying Advisory Committee Note to Rule 26(a)(2)(B) explains that only documents used to "form" the experts opinions are subject to disclosure. Specifically, the note states:

> [t]he report is to disclose the data and other information considered by the expert.... Given this obligation of disclosure, litigants should no longer be able to argue that <u>materials furnished to their experts to be used in forming their opinions</u> – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

*Id*. (emphasis added). Because the Agenda was not furnished to any expert with the intent that it would be "used in forming their opinions," under the logic of the Advisory Committee, such an inadvertent production may be excused. This result is perfectly in line with established procedures already in place within this MDL. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Pretrial Order No. 17, ¶ II D (E.D.La. June 21, 2005)("Inadvertent production or disclosure is deemed not to waive any privileges or work product protections that would otherwise apply to documents or information. The parties shall confer regarding establishment of protocol for addressing inadvertent production of privileged materials.").[2]

This reasoning is also expressed by other portions of Rule 26. Indeed, Rule 26(a)(2)(B) when read *in pari materia* with the rest of Rule 26, *e.g.*, Rule 26(b)(3),[3] Rule 26(b)(4),[4] and Rule

---

[2]*See also In re Vioxx Products Liability Litigation*, MDL No. 1657, Pretrial Order No. 13, ¶ 19 (E.D.La. May 24, 2005)(addressing preventive measures to contain unauthorized disclosures of confidential information).

[3] Rule 26(b)(3) states: "Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking

(continued...)

26(b)(5),[5] has been interpreted to protect an attorney's mental impressions pursuant to *Hickman v. Taylor*, 329 U.S. 495 (1947). Several courts have ruled that "core" work-product, *i.e.*, mental impressions of counsel rather than factual information, is not discoverable even through expert witnesses. *See Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 590-91 (3d Cir. 1984)(pre-1993 Amendment case); *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 295 (W.D.Mich. 1995) (no waiver of core work product where such materials are provided to testifying expert); *The Nexxus Products Co., v. CVS New York, Inc.*, 188 F.R.D. 7, 11 (D.Mass. 1999) (same); *All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 152 F.R.D. 634, 638 (D.Kan 1993) (same); *Magee v. The Paul Revere Life Insurance Company*, 172 F.R.D. 627, 642 (E.D.N.Y. 1997) (same); *Kennedy v. Baptist Memorial Hospital-Booneville, Inc.*, 179 F.R.D. 520, 521-22 (N.D.Miss. 1998)(core work product that is shared with testifying expert is not ordinarily discoverable).

More prevalently, other courts, such as *Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375

---

[3](...continued)
discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

[4] Rule 26(b)(4) states: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided."

[5] Rule 26(b)(5) states: "If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved."

(Fed.Cir. 2001), find a waiver of work-product privilege that extends to core work-product where a party knowingly provides privileged materials to a testifying expert witness. *See also Elm Grove Coal Co. v. Director, Office of Workers' Compensation Programs,* 2007 WL 678248, *18-19 (4th Cir. 2007); *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713-717 (6th Cir. 2006); *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 635 (N.D.Ind. 1996) (same); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md. 1997) (same); *B.C.F. Oil Refining v. Consolidated Edison Co.*, 171 F.R.D. 57 (S.D.N.Y. 1997) (same); *Southern Scrap Material Co., v. Fleming*, 2003 WL 21474516, * 20 (E.D.La. 2003) (same); *TV-3, Inc. v. Royal Insurance Company of America*, 194 F.R.D. 585, 588 (S.D.Miss. 2000) (same).

Irrespective of this diverging jurisprudence, perhaps the most analogous case to consider the present issue is *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644 (S.D.Indiana 2000).[6] In *Simon*, the court found no waiver of the work product privilege by an inadvertent disclosure to a testifying expert. Like the instant case, that testifying expert saw privileged documents in the course of preparing an expert report and disclosed that such privilege materials had been reviewed when creating the report. *Id*. at 645. However, the lawyer that packaged the documents provided to the testifying expert in *Simon* did not intend to include the privileged materials provided to his

---

[6] Although the present matter before the court does not involve an intentional disclosure of work product to a testifying expert, it is noteworthy that *Simon* was decided by a court that would have recognized a waiver of core work product had the disclosure been intentional. *Simon*, 194 F.R.D. at 647 ("An intentional disclosure of opinion work-product to a testifying expert witness effectively waives the work-product privilege."). Thus, even if this Court agrees with those courts that will allow for such a broad waiver of the work product privilege when materials are voluntarily provided to a testifying expert, the fact that the production in this case was inadvertent alters the analysis as in *Simon*. *See also Bitler Investment Venture II, LLC v. Marathon Ashland Petroleum LLC*, 2007 WL 465444, *5 (N.D.Ind. 2007) (distinguishing *Simon* where disclosure to the testifying expert was intentional); *Construction Industry Services Corp., v. The Hanover Insurance Co.*, 206 F.R.D. 43, 55 (E.D.N.Y. 2001) (same).

expert, but failed to notice that such materials had been included in the package forwarded to the expert.  *Id*. at 646.  The expert in *Simon* "submitted  an affidavit explaining that she "reviewed" the four documents in question but did not "consider, rely or take into account" these four documents in developing her opinions."  *Id*.  After conducting an extensive balancing analysis from *Alldread v. City of Grenada*, 988 F.2d 1425 (5th Cir. 1993), the *Simon* court concluded that the privilege adhered to the documents without any waiver.  *Id*. at 650.

While divergent authority makes it unclear whether even a voluntary disclosure of privileged materials to an expert will result in a waiver of core work product,  in the instant case, this question is academic since the disclosure of the Agenda to Drs. Moye and Plunkett was inadvertent.  Given this unintended consequence, the privilege attaching to the Agenda should remain protected.

## B.   APPLICATION OF THE *ALLDREAD* BALANCING TEST RESULTS IN THE RETURN OF THE AGENDA.

In instances of inadvertent disclosure the Fifth Circuit has long recognized that courts should determine on a case-by-case basis whether a waiver of privilege results from an accidental disclosure.  *See Alldread*, 988 F.2d at 1434 ("In our view, an analysis which permits the court to consider the circumstances surrounding a disclosure on a case-by-case basis is preferable to a *per se* rule of waiver."); *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 172 (5th Cir. 1996), *cert. denied*, 514 U.S. 930 (1996).[7]  *See also In the Matter of Crescent Towing & Salvage Company, Inc.*,

---

[7] In arriving at its case-by-case approach, the Fifth circuit considered and rejected the *per se* or "strict responsibility" analysis employed by other courts.  *Alldread* rejected those cases that hold that where a disclosure is made to a third party, the privilege is lost regardless of whether the disclosure was accidental. *See, e.g., In re Sealed Case*, 877 F.2d 976, 980 (D.C.Cir.1989); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir.1984).  Instead it aligned itself with those court that look to the surrounding circumstances.  *Alldread,* 988 F.2d at 1434 (citing cases).

1993 WL 483525 (E.D.La. 1993) (finding inadvertent disclosure of privileged materials that did not waive privilege and ordering opposing counsel to return the materials); *Newport Limited v. Sears, Roebuck & Company*, 1995 WL 354846 (E.D.La. 1995) (granting order to strike privileged document that was inadvertently included in the moving party's pre-trial list); *Southern Scrap Material Co., v. Fleming*, 2003 WL 21474516 (E.D.La. 2003) (determining that inadvertently produced materials were still protected by the attorney-client privilege).

In *Alldread*, the Fifth Circuit employed a five-part analysis to determine whether the inadvertent production of work-product materials results in a waiver of any privilege. *See Alldread*, 988 F.2d at 1434. This five-part test requires that consideration be given to all of the circumstances surrounding the disclosure, including: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Id.* at 1433. Because the *Alldread* analysis is based upon overall reasonableness, meeting all of these factors is not essential. *See Alldread*, 988 F.2d at 1433 (affirming district court's decision to compel the return of privileged materials even though factors one, three and four weighed against compelling the return of such materials).

Even a cursory application of the *Alldread* factors demonstrates that the disclosures to Dr. Moye and Dr. Plunkett should not result in a waiver of privilege, and that the privileged materials furnished to Merck should be returned:

1. The Reasonableness of Precautions Taken. As described in the Matthews Affidavit the Matthews firm had in place a protocol to prevent their experts from being furnished privileged or other extraneous material. *See* Matthews Affidavit ¶7. Despite their best efforts to contain such

error, the Agenda was mistakenly included in the material furnished to their experts. *Id.* Given the volume of material (over 5 CDs), this lapse over one document is excusable. *See* Simon, 194 F.R.D. at 649. *See also Alldread*, 988 F.2d at 1433 (affirming trial court's order compelling the return of privileged materials that had been inadvertently produced even though the party that had produced such materials had failed to take adequate precautions to guard against such an inadvertent disclosure). *Compare Ferko v. National Association for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 140 (E.D.Texas 2003) (finding party that had inadvertently provided privileged documents to opposing counsel was entitled to have them returned in part because reasonable precautions had been taken since the documents were marked "Highly Confidential"). Thus, reasonable precautions were taken to assure that the privilege would remain intact.

2. The Amount of Time Taken to Remedy the Error. Just as in *Simon* where the inadvertent production was required to be returned, plaintiffs' counsel first learned about the error when presented with the document by opposing counsel. *Simon*, 194 F.R.D. at 649. Plaintiffs first learned of the inadvertent production when Mr. Beck attempted to use the Agenda during Dr. Farquhar's deposition. In *Simon*, as here, the party asserting the privilege did not learn of the error, *i.e.*, that they had inadvertently provided work-product to a testifying expert, until the error was brought to their attention by opposing counsel. Plaintiffs' immediately responded thereby satisfying this factor. *See Alldread*, 988 F.2d at 1433 (affirming trial court's order compelling the return of privileged materials that had been inadvertently produced where the party requesting the return of such materials learned that they had been inadvertently disclosed during a deposition and immediately requested that they be returned). *See also Ferko*, 218 F.R.D. at 140 (finding party acted promptly by requesting that materials be returned four days after discovering that they had been inadvertently

12

produced).

3. <u>The Scope of Discovery or the Process in Question</u>.   As Mr. Matthews affided, the amount of materials provided from his office to the experts occupied 5 CDs.   The quantity of materials was voluminous.   Nevertheless, one document, the agenda, slipped through the cracks. Under these circumstances, this factor weighs against waiver.   *See Myers v. City of Highland Village, Texas*, 212 F.R.D. 324, 327 (E.D.Tex. 2003) (concluding that scope of discovery favored the party who had inadvertently disclosed privileged documents because approximately 1,500 pages of documents were produced); *Lazar v. Mauney*, 192 F.R.D. 324, 330 (N.D.Ga. 2000) (describing a production of 1,000 pages as "voluminous").

4. <u>The Extent of Disclosure</u>.   Neither Dr. Moye, nor Dr. Plunkett used the Agenda for their expert reports.   While in their possession, they made no use of the information.   *See* Affidavit of Dr. Moye and Affidavit of Dr. Plunkett.   The absence of disclosure weighs in favor of protecting the privilege.

5. <u>The Overriding Issue of Fairness</u>.   The court in *Simon* observed that the fifth factor should be examined in terms of the other party's reliance on the inadvertent disclosure, and in terms of the integrity of the ultimate fact-finding process.   *Simon*, 194 F.R.D. at 650.   The court determined that fundamental fairness did not require disclosure of the materials at issue in *Simon* since the materials were not relevant to the expert's testimony and, thus, could not be used during cross-examination, "to explore ... the extent to which mySimon's counsel's theories might have shaped Elsten's opinions on damages."   *Id*.   Accordingly, the court determined that "honoring the privilege will not work any unfairness to SPG, nor will it undermine the integrity of the fact-finding process at trial."

This same reasoning applies here.   Both Dr. Moye and Dr. Plunkett have attested to the fact

that they did not utilize the attorney work product in formulating their opinions. *See* Affidavit of Dr. Moye and Affidavit of Dr. Plunkett. Fundamental fairness dictates that the materials be returned since the Agenda is clearly privileged and because the disclosure was inadvertent. *Alldread*, 988 F.2d 1434. Finally, Merck has no fairness interest in retaining inadvertently produced materials that were conspicuously marked "Attorney Work Product". *See Myers*, 212 F.R.D. at 328 ("A party to whom privileged documents are produced inadvertently has no inherent "fairness" interest in keeping them. This is especially true here where the document was labeled confidential. Any reliance by the Plaintiff on the continued availability of the documents would be unjustifiable." *See also Ferko*, 218 F.R.D. at 141 ("Plaintiffs have no legitimate interest in keeping documents labeled as "highly Confidential.").

For these reasons, the inadvertent disclosure to Merck does not provide an adequate basis for denying the PSC's motion to compel the return of attorney work product.

## IV.   **CONCLUSION**

For the reasons set forth above, the PSC respectfully requests that this Court compel Merck

14

to return the Agenda.  Alternatively, the PSC requests that Merck be precluded from using this material in any capacity.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: March 29, 2007

By:/s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
   MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX  77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Christopher V. Tisi, Esquire **(on brief)**
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

## <u>CERTIFICATE OF SERVICE</u>

_____I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 29th of March, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com

17