UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | : |
| | : MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : |
| | : SECTION L |
| | : |
| *This document relates to ALL CASES* | : JUDGE FALLON |
| | : MAG. JUDGE KNOWLES |

**MEMORANDUM IN SUPPORT OF
THE PLAINTIFFS' STEERING COMMITTEE'S
<u>MOTION FOR A PROTECTIVE ORDER</u>**

**I.     INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC"), pursuant to Fed.R.Civ.P. 26(c), hereby moves for a Protective Order to avoid the undue burden and expense of duplicative discovery proposed by Merck & Co., Inc. ("Merck"). Merck has issued notices for *de bene esse* depositions of several of its key employee fact witnesses. *See* Notices of *De Bene Esse* Trial Preservation Deposition of Dr. Douglas Greene, Dr. Eliav Barr, Dr. Briggs Morrison, Dr. Alise Reicin, Dr. Peter Kim, and Dr. Lisa Rarick (dated March 28, 2007) [Attached hereto as Exhibit "A"]. Because this Court's review of privileged documents has not yet been completed, the PSC submits that it is premature to preserve the testimony of these witnesses until that discovery is concluded. Nor does the PSC subscribe to the alternative proposal of Merck to allow for a supplemental deposition of these witnesses in the event that the currently retained documents are released to the PSC.

Given the importance of these witnesses' testimony, for purposes of the PSC's trial package (which is intended to be used in both federal and state coordinated proceedings), allowing these

1

depositions to go forward prior to the completion of critical discovery is sufficiently prejudicially to warrant a protective order postponing the depositions until such time as the privileged document review is completed.

## II.     BACKGROUND

On February 16, 2005, the Judicial Panel on Multi-District Litigation issued its transfer order initiating MDL 1657. Amongst the Panel's many considerations for the centralization of federal Vioxx litigation was the necessity "to eliminate duplicative discovery, avoiding inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Vioxx Products Liability Litigation*, 360 F.Supp. 2d 1352, 1354 (J.P.M.L. 2005).

Since the consolidation by the JPML, this Court has presided over an enormous amount of discovery encompassing the review of millions of pages of documents, scores of depositions, countless motions and six bellwether trials. As the MDL now has approximately 8,700 cases on the Court's docket, with over 13, 000 cases on tolling agreements, and thousands of other cases associated through coordinating agreements pursuant to Pretrial Order No. 19, and with Merck continuing to assert its intention to try each and every case individually, this Court is within its right to contemplate the future proceedings of the litigation. Concomitant to those considerations is the process by which all of the federal litigants will be remanded back to their originating transferee courts. A necessary adjunct to that process is the need for a comprehensive and effective trial package for both federal and coordinated state cases to be prepared by the committee selected by this Court to accomplish that task, *i.e.*, the PSC.[1]

---

[1] The PSC is currently comprised of the following individuals: Andy D. Birchfield, Jr., Esquire; Christopher A. Seeger, Esquire; Russ Herman, Esquire; Arnold Levin, Esquire; Richard J. Arsenault, Esquire; Elizabeth J. Cabraser, Esquire; Thomas R. Kline, Esquire; Shelly A.

In PTO No. 9, the PSC was charged with the responsibility of attempting to coordinate depositions with the various states that also have Vioxx cases pending. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Pretrial Order No. 9, ¶I(F)(E.D.La. April 15, 2005). In addition to the cases that are proceeding in federal court, there thousands of other cases pending in various sate courts throughout the country. Where possible, the PSC has attempted to coordinate discovery with the various state courts, including those in California, New Jersey and Texas which have active Vioxx litigation. It is the PSC's expectation that Merck will attempt to use the "Cross-notice" mechanism to preserve these witness' testimony in as many state court venues as possible.

To properly prepare the trial package, the PSC must have at its disposal all of the key documents produced by Merck. It is frequently the case that the "crown jewel" documents are withheld by defendants until the end of discovery or identified as privileged documents on a privilege log and retained, unless production is coerced by court order. To force the PSC to engage in depositions of Merck's key witnesses lacking the "crown jewels" that may become available following this court's re-review of Merck's privilege log, imposes an undue burden and prejudice upon the PSC.

Merck has now completed 19 jury trials, the last in Illinois resulting in a defense verdict for Merck. In the MDL, this Court has overseen six bellwether trials. The burden on the parties' resources is enormous. Already, Merck is chafing to avoid the burden of providing testimony at future trials of its key employees. To that end, Merck has noticed *de bene esse* depositions to preserve the testimony of several of its key witnesses, *i.e.*, Dr. Douglas Greene, Dr. Eliav Barr, Dr.

---

Sanford, Esquire; Gerald E. Meunier Esquire; Troy A. Rafferty, Esquire; Drew Ranier, Esquire; Mark P. Robinson, Jr., Esquire; and Christopher V. Tisi, Esquire.

3

Briggs Morrison, Dr. Alise Reicin, Dr. Peter Kim, and Dr. Lisa Rarick. Merck has now noticed certain *de bene esse* depositions to partially avoid the burden of its self-imposed obligation of trying every case without fail. However, wanting and getting are two different things, and in order to have these *de bene esse* depositions, the PSC requires the complete production of Merck's document cache.

Presently, this production has been held in abeyance as a consequence of Merck's mandamus petition to the Fifth Circuit Court of Appeals. On May 26, 2006, the Fifth Circuit ordered that this Court re-review the privileged documents. *See In re Vioxx Products Liability Litigation*, 2006 WL1726675 (5th Cir. May 26, 2006). Because of this duplicative burden, the Court on March 21, 2007 issued a Notice proposing the appointment of Professor Rice as a Special Master to conduct the re-review of privileged documents. The Court's proposal to appoint Professor Rice as a Special Master is to be addressed at the April 12, 2007 Status Conference. It is presumed that Professor Rice could begin his functions as Special Master in April and complete his task presumably by the end of May, 2007. Thereafter, the Court could consider the Special Master's report and recommendation and rule on the purported privileges as asserted by Merck by early July. Assuming such a schedule, the proposed *de bene esse* depositions could still be held within the approximate time frame proposed by Merck. However, should the document review not be completed by that time, the PSC maintains that these *de bene esse* depositions should not be permitted until the Court's ruling has been made on the privileged documents.

In addition to this Court's efforts to deal with Merck's massive withholding of material, other courts are also struggling with this issue. Indeed, the PSC understands that the courts in New Jersey and Texas have begun the process of reviewing documents withheld on the basis of privileged. The

PSC expects that those Courts, no less than this court, may also have an interest in giving plaintiffs full opportunity to cross-examine each of these witnesses in one complete deposition.

**III.     ARGUMENT**

Federal Rule of Civil Procedure 26(c) provides for a protective order when justice is required to protect a party from undue burden or expense. Rule 26(c) provides:

> (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively on matters relating to a deposition, the court in the district where the deposition si to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (2) that the disclosure or discovery may be had only on specific terms and conditions, including a designation of the time or place;

Fed.R.Civ.P. 26(c)(2)

Under the rule, the court has wide latitude in limiting the time and manner of discovery, and in fashioning protective orders. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("judges should not hesitate to exercise appropriate control over the discovery process"). The court may "even bar discovery altogether on certain subjects, as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) (quoting Fed.R.Civ.P. 26(c)). Here, the PSC simply requests that the discovery take place at a later time than that desired by Merck.

From the onset of this MDL, this Court has demanded the highest level of civility and respect by and for each opposing counsel. In connection with the scheduling of depositions, this Court's

Pretrial Order No. 9 provided that "counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions." *In re Vioxx Products Liability Litigation*, MDL No. 1657, Pretrial Order No. 9, ¶I(B) & II(C)(E.D.La. April 15, 2005).  Adhering to the Court's order, the parties conferred over the scheduling of these depositions without success.  As a consequence of Merck's insistence that these *de bene esse* depositions take place in advance of the anticipated re-review of Merck's privileged log, this motion is necessary.

      This Court's oversight and administration of the litigation has benefitted all of the parties due to the insightful case management techniques employed.  This governance has resulted in the orderly prosecution of the litigation.  Merck's position that its key employees should be deposed prior to the potential compelled disclosure of previously withheld documents promises to disrupt these orderly proceedings in both this Court and in the various state courts that would be swept into these proceedings through Merck's inevitable attempt to cross-notice these proposed depositions.  Even if these depositions would proceed in this Court as noticed, other courts which are also struggling with Merck's massive withholding of documents may believe that binding them to these depositions is unfair when their privilege determination have not yet been ruled upon.

      To cure this, Merck proposes that plaintiffs could seek a second deposition to supplement their cross-examination should new documents be released.  This is unworkable and unfair for four (4) reasons:  First, an unruly discovery schedule is wasteful and prejudicial to all parties and to the witnesses themselves, who will needlessly be forced to reappear for multiple depositions and present choppy examinations of important witnesses.  Second, the PSC will be disadvantaged by Merck's inevitable demand that the PSC proffer what new areas of examination are intended in order to obtain a supplemental deposition.  This would require the PSC to reveal its strategy to Merck, which

would allow Merck the opportunity to use this information to prepare its witness to the PSC's prejudice. Third, Merck has defended numerous trials in which it has been able to produce Dr. Morrison and Dr. Reicin and did not produce Drs. Barr and Greene at all. There is no evidence that this process has been burdensome to Merck or its witnesses and, to the extent that it is, it is the result of Merck's strategy to "try every case" regardless of merit. Finally, there is no evidence that producing necessary witnesses live will be a burden on Merck while this and other courts consider the privilege issues. There is no federal trial currently scheduled for 2007 and only a limited number of state cases set for trial. Thus, Merck has not demonstrated prejudice in having any of its key witnesses appear live. Accordingly, there is no reason to permit these depositions to proceed until the outstanding discovery issues have been resolved.

   This Court should intervene and order that the depositions be delayed until after this Court's *in camera* inspection of the privileged material is conducted through the Special Master. By simply postponing these depositions until a time when all parties are adequately prepared and in possession of all material documents and communications will surmount the otherwise oppressive and burdensome ramifications of Merck's proposed schedule. *See, e.g., Lonestar Industries, Inc. v. Liberty Mutual Ins. Co.*, 1990 WL1104267, *1 (Del. Super. 1990)("It is premature to take depositions now when those depositions would have to be repeated after most of the document production is completed. This would create an undue burden on the [party] seeking the protective order. Therefore, pursuant to [Rule 26(c)] this motion for a protective order is hereby granted and such depositions are stayed until document production is completed.").

   If one of the major purposes of the MDL is to avoid duplicative discovery, *In re Vioxx*, 360 F.Supp.2d at 1354; *Wilk v. American Medical Association*, 635 F.2d 1295, 1297, n. 3 (7th Cir. 1980),

then it ill-behooves the parties to engage in a piece-meal deposition program for trial preservation purposes.  Order and logic suggests that given the importance of these depositions they should be done properly the first time.  Because Merck insists on an improper schedule, a protective order should issue.

IV.     <u>CONCLUSION</u>

For the reasons set forth above, the PSC's motion for a protective order should be granted.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: March 30, 2007              By:/s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

| | |
|---|---|
| Mark Robinson, Esquire<br>ROBINSON, CALCAGNIE & ROBINSON<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>(949) 720-1288 (telephone)<br>(949) 720-1292 (telecopier) | Christopher V. Tisi, Esquire<br>ASHCRAFT & GEREL<br>2000 L Street, N.W., Suite 400<br>Washington, DC  20036-4914<br>(202) 783-6400 (telephone)<br>(307) 733-0028  (telecopier) |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of March, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com