**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ) | |
| In re:  VIOXX ) | **MDL NO. 1657** |
| ) | |
| **PRODUCTS LIABILITY LITIGATION** ) | **SECTION: L** |
| ) | |
| ) | **JUDGE FALLON** |
| **THIS DOCUMENT RELATES** ) | |
| **TO ALL CASES** ) | |
| ) | |
| ) | **MAGISTRATE JUDGE KNOWLES** |
| ) | |
| ) | |

**OPPOSITION BY MERCK & CO., INC. ("MERCK") TO PLAINTIFFS' MOTION**
**TO ALTER OR AMEND THE JUDGMENT OF THIS COURT'S**
**ORDER OF MARCH 5, 2007 (RE: MARTIN REPORT)**

## INTRODUCTION

In asking this Court to certify its order barring discovery of attorney work product and

privileged communications related to the Martin Report (Rec. Doc. 10337) for interlocutory

appeal under 28 U.S.C. § 1292(b), plaintiffs argue that the Court erred in determining that the

Martin Report was prepared in anticipation of litigation and that communications underlying the

Report are thus shielded from discovery.  (Pl. Br. at 1.)  According to plaintiffs, the Court

"erroneously found that the Martin Report was prepared 'in anticipation of litigation' despite the

Martin Report's express statement that the 'most important' reason for the report was to permit

the Board to release the report to shareholders and the public . . . ."  (Pls.' Mem. at 1.)

As set forth below, however, plaintiffs' motion fails to satisfy both grounds for

interlocutory review under 28 U.S.C. § 1292.  *First*, plaintiffs cannot show that there is

substantial ground for difference of opinion on controlling questions of law in the Order because

the law is clear that communications in connection with investigations like the one at issue in this

865634v.1

case are protected by the attorney work-product doctrine, and the Court's Order was consistent with broadly accepted legal standards for determining work-product protection. And **second**, an immediate appeal will not materially advance the Vioxx® litigation because the Court's ruling simply addressed the discoverability of certain materials and will not affect the substantive merits of plaintiffs' claims.[1]

## ARGUMENT

"Section 1292(b) was not intended 'to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation', or to be a 'vehicle to provide early review of difficult rulings in hard cases.'" *In re Nasdaq Market Makers Antitrust Litig*, 938 F. Supp. 232, 234 (S.D.N.Y. 1996). Rather, a case should be certified for interlocutory appeal under 28 U.S.C. § 1292(b) only if it satisfies two specific standards. First, the decision on which review is sought must involve "a controlling question of law" regarding which there is "substantial ground for difference of opinion." And second, an immediate appeal from the order must "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See also Belt v. Emcare, Inc.*, 444 F.3d 403, 407 n.6 (5th Cir. 2006).

Courts construe the two requirements for interlocutory appeal "narrowly," *James v. Price Stern Sloan, Inc.,* 283 F.3d 1064, 1068 (9th Cir. 2002), because Congress intended to reserve interlocutory review only for "exceptional" cases, *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 74 (1996), and did not intend to provide interlocutory appellate review to "answer the mere question as to the correctness of [a] ruling," *see Binkley v. Loughran,* 714 F. Supp. 774, 775 (M.D.N.C.

---

[1]     In addition, as Merck has explained in its prior briefing regarding the Martin Report, many of the documents at issue are also subject to protection under the attorney-client privilege. However, because the Court found that all of the materials underlying the Martin investigation are protected from disclosure in accordance with the work-product doctrine, there was no need for the Court to address the issue of privilege in its opinion. Thus, even if an appellate court were to reverse the Court's ruling, the Court would have to undertake a privilege analysis with regard to all the documents.

1989).  *See also Cardona v. Gen. Motors Corp.*, 939 F. Supp. 351, 353 (D.N.J. 1996) (Section 1292(b) "motion should not be granted merely because a party disagrees with the ruling of the district judge") (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983)); *United States v. Grand Trunk Western R.R.*, 95 F.R.D. 463, 471 (W.D. Mich. 1980) (denying certification because the moving party "merely question[ed] the correctness" of the court's ruling); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (recognizing that 1292(b) certification is reserved for "truly exceptional" cases).

Here, plaintiffs fail to meet both standards because:  (1) their disagreement with the Court's decision involves a factual finding regarding application of the "prepared in anticipation of litigation" standard that does not rise to the level of a "controlling question of law" as to which there is "substantial ground for difference of opinion"; and (2) an immediate appeal from this discovery order will not materially advance the termination of the litigation.  For both of these reasons, plaintiffs' motion should be denied.

**I.      THERE IS NO CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS A SUBSTANTIAL DIFFERENCE OF OPINION REGARDING THIS COURT'S APPLICATION OF THE ATTORNEY WORK-PRODUCT DOCTRINE.**

The central inquiry under section 1292(b) is whether there is a substantial ground for difference of opinion regarding a controlling legal issue resolved by the trial court.  In order to qualify as "substantial," the difference of opinion must:  (a) exist ***between the courts*** rather than the parties; and (b) concern ***what the law is*** rather than the outcome of the law's application to the facts.  *See Batton v. Georgia Gulf,* 261 F. Supp. 2d 575, 585-86 (M.D. La. 2003) (characterizing substantial ground for difference of opinion as "broad-based disagreement" among courts about the correct rule of law).  Plaintiffs here fall short of this standard.  There is no substantial difference of opinion on the legal principles underlying the Court's ruling; indeed,

3

plaintiffs are only able to identify three cases from around the country between 1997 and 2006 that they claim contradict this Court's decision, and those cases are not in conflict with this Court's ruling at all.  (*See* Pl. Mem. at 3.)

A "substantial difference of opinion" giving rise to interlocutory appeal is marked by conflicting judicial rulings on non-distinguishable facts, as well as the absence of higher court or statutory resolution of the debate.  *Gavino v. Eurochem Italia,* No. CIV. A. 01-1314, 2001 WL 1491177, at *2 (E.D. La. Nov. 23, 2001) (denying plaintiff's motion to remand and motion for interlocutory appeal, because no substantial ground for disagreement where Fifth Circuit opinion "squarely reject[ed]" plaintiff's position on the law at issue); *Township of Ocean Board of Education v. H.O.,* No. 88-5487, 1989 WL 48420 (D.N.J. May 4, 1989) (refusing 1292(b) certification of denial of plaintiff's remand motion where two other existing cases addressing the same legal issue, but making different determinations, were clearly distinguishable).  As one district court has emphasized:

> The nub of the issue is whether there truly is a substantial ground for difference of opinion.  Not just any close question should be certified for interlocutory appeal.  The law is filled with close cases.  Judicial economy counsels against sending every such close call to the courts of appeals, for district courts are quite capable of making those calls.  Interlocutory appeals are most warranted ***when an issue appears to confound the district courts and divide them***.

*Batton v. Georgia Gulf,* 261 F. Supp. 2d 575, 585 (M.D. La. 2003) (emphasis added).  *See also United States v. Atlas Lederer Co.,* 174 F. Supp. 2d 666, 671 (S.D. Ohio 2001) (finding no substantial ground for difference of opinion regarding legal question at issue, and, thus declining to consider the other two requirements for 1292(b) certification).

No such substantial difference of opinion exists in this case.  As this Court noted in its Order, Fifth Circuit law is clear that a party seeking to compel production of materials protected from discovery by the attorney work-product doctrine must establish, among other things, that

4

the materials at issue were "prepared in anticipation of litigation." (*See* Order at 5 (citing Fed. R. Civ. P. 26(b)(3)).) The Court explained that under controlling Fifth Circuit law, materials are deemed to have been created in anticipation of litigation – and are therefore shielded from discovery – if the "primary motivating purpose behind the creation of the document was to aid in possible future litigation." (Order at 6 (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).) Plaintiffs' assertion that the Court used an incorrect legal standard to evaluate whether the Martin investigation was conducted "in anticipation of litigation" is wrong.

Plaintiffs assert that the Court's ruling was in error because it did "not adhere to" the rationale "that a dual purpose, *i.e.*, both a litigation and a business purpose, takes the material outside of the work product doctrine." (Pls.' Mem. at 2.) However, none of the three cases identified by plaintiffs stand for the proposition that materials are automatically exempted from work-product protection if they are created for both a litigation and a business purpose. For example, in *Carroll v. Praxair, Inc.*, No. 2:05-CV-307, 2006 WL 1793656, *2 (W.D. La. June 28, 2006), the court used the ***exact same "primary purpose" standard*** used by this Court to evaluate whether the materials at issue in that case were entitled to work-product protection. The court there did not hold that materials created for a litigation purpose are not entitled to work-product protection simply because there may have been some additional, ancillary purpose for their creation. Instead, the court merely found that there was a complete absence of evidence in that case that the company "had a particularized reason to believe that litigation would result" from the conduct being investigated. *Id.* at * 4.

Here, by contrast, the Court found that the facts ***did*** prove that the primary purpose of the Martin investigation was litigation-related. The Court based that finding on persuasive evidence provided by Merck that the Martin investigation and report were commissioned by the Special

5

Committee of Merck's Board only after receiving shareholder demand letters and becoming aware of pending Securities and Exchange Commission ("SEC") and Department of Justice ("DOJ") investigations.  Thus, this Court had a sound basis for its finding that even if the Martin investigation were motivated in some part by ancillary business purposes, the "***primary motivating purpose*** of the investigation was to 'aid in possible future litigation.'"  (Order at 7 (emphasis added).)[2]  As a result, there is no real legal conflict between this Court's ruling and the *Carroll* decision.

Nor do plaintiffs' two other authorities contradict the Court's ruling.  In *Poseidon Oil Pipeline Co. v. Transocean Sedco Forex Inc.*, Nos. 00-760, 00-2154, 2001 WL 1360434, at *4 (E.D. La. Oct. 30, 2001) (Pls.' Mem. at 3), the court recognized that, under binding Fifth Circuit precedent, materials underlying an investigation are subject to work product protection "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id*. at *3 (quoting *Davis*, 636 F.2d at 1040).  However, the court found ***on the facts of that case*** that work product protection did not apply to a company's internal investigation of causes of a maritime accident undertaken by ***non-attorneys*** because: (1) the company's manual specifically provided that attorneys must participate in investigations where litigation is anticipated, and (2) post-maritime accident investigations were routinely undertaken by the company regardless of whether litigation was anticipated.  2001 WL 1360434, at *4-5. Moreover, the court there held that the "evidence and documents . . . do not bear any indicia

---

[2]     Plaintiffs' contention that the Court used flawed legal analysis in finding that "sole purpose of the Martin Report was in anticipation of litigation" (Pls.' Mem. at 2) is also wholly inconsistent with the substance of the Court's ruling.  As set forth above, the Court specifically noted in its order that "[w]hile the Martin Report may also have been motivated by business purposes such as creating positive media coverage, any potentially alternative motivation cannot be considered primary in light of the prospective Vioxx litigation."  (Order at 8.)  As a result, plaintiffs' argument that the Court's analysis was erroneous in that it failed to consider Merck's potential business motivations for conducting the investigation is unfounded.  The court clearly considered these possible alternative motivations, concluding that they were merely ancillary to Merck's primary, litigation purpose for the investigation.

865634v.1

that" the investigation was conducted at the behest on an attorney "primarily to prepare for future litigation." *Id.* at *5.

Similarly, in *Occidental Chemical Corp. v. OHM Remediation Service Co.*, 175 F.R.D. 431, 435 (W.D.N.Y. 1997) (Pls.' Mem. at 3), the court held that documents created by a ***non-attorney*** engineering consultant hired by plaintiff chemical company to design an environmental cleanup plan were not entitled to work-product protection because plaintiff "failed to establish, as an initial matter, that [the consultant] was hired for the project to assist its counsel in providing legal advice, or that any of the documents were generated for that purpose." *Id.* Neither *Poseidon* nor *Occidental Chemical* conflicts with this Court's holding that where – as in this case – a party presents evidence that it retained counsel to conduct an investigation in direct response to the threat of shareholder litigation and regulatory enforcement, the materials underlying that investigation are created "in anticipation of litigation" and are therefore subject to work-product protection.

In arguing that there is a substantial difference of opinion on the work-product issues addressed by the Court, plaintiffs also ignore the fact that this Court's application of the work-product rule is consistent with a long line of rulings by courts across the country holding that work-product protection applies to materials created during an internal investigation conducted as a result of the threat of potential litigation or regulatory proceedings.  For example, in *In re Cardinal Health, Inc. Sec. Litig.*, No. 04-575, 2007 WL 495150, at *5 (S.D.N.Y. Jan. 26, 2007) (Order at 7), the court found that materials prepared by a law firm retained to investigate executive conduct regarding the defendant company's accounting were clearly created "in anticipation of litigation" because the internal investigation was initiated ***after*** the SEC had begun its own investigation of the company's accounting practices.  According to the court,

7

Cardinal retained the firm with full "knowledge of the SEC's investigation and aware[ness] that [its] employees might have engaged in false and misleading accounting practices" and therefore counsel's work product was clearly created with an eye towards litigation. *Id.* The *Cardinal Health* case is plainly analogous to the circumstances surrounding the Martin investigation. Just as in *Cardinal Health*, the Special Committee of Merck's Board of Directors retained former District Court Judge Martin and Debevoise & Plimpton LLP ("Debevoise"), to conduct an investigation *after* both the SEC and the Department of Justice initiated their own investigations related to Vioxx. Moreover, Debevoise's investigation of executive conduct – much like the investigation at issue in *Cardinal Health* – was intended to determine the company's vulnerability to future litigation, as well as the Board's fiduciary duty to initiate litigation against its executives if any wrongdoing had in fact occurred. As a result, the Court's ruling is consistent with the reasoning set forth in *Cardinal Health*.

The Court's Order is also in line with the ruling in *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 512 (N.D. Ill. 2005) (Order at 7), where the court held that documents created by a law firm tasked with investigating the allegations set forth in a shareholder demand were created "because of the prospect of litigation" and were therefore subject to work-product protection. Specifically, the court held that because the attorneys were retained to address the "shareholder derivative demand, investigate the claims alleged, and if appropriate, sue for corrective action and restitution," the materials underlying the investigation were created in anticipation of litigation. *Id.* at 514. *See also In re Woolworth Corp Sec. Class Action Litig.*, No. 94-2217, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996) (Order at 7) (internal notes and memoranda created by a law firm retained to investigate the corporation's accounting

865634v.1

irregularities were made "in anticipation of litigation" because "[a]ll participants knew . . . that litigation – civil, and possibly criminal – as well as regulatory action were virtual certainties").

In short, when all the rhetoric is stripped away, plaintiffs' challenge to the Court's Order does not involve an issue of conflicting law; rather, plaintiffs challenge the Court's "*factual finding*" that "the Martin Report was prepared 'in anticipation of litigation' despite the Martin Report's express statement that the 'most important' reason for the report was to permit the Board to release the report to shareholders and the public." (Pls.' Mem at 1.) However, this is not an adequate basis for interlocutory appeal under § 1292. *See Clark-Dietz & Assocs.- Eng'rs Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) (holding that "fact-review questions [are] inappropriate for § 1292(b) review"). Because there is no "sea of conflicting views" with respect to the interpretation of a controlling *legal* issue, *Sealtest Foods Division of National Dairy Products Corp. v. Conrad,* 262 F. Supp. 623, 625 (N.D.N.Y. 1966), and because plaintiffs merely take issue with the Court's application of the law to the facts, rather than "what the law is," *Batton,* 261 F. Supp. 2d at 585-86, there is no legitimate basis for interlocutory review, and plaintiffs' motion should be denied.

## II.     AN APPEAL ON THIS DISCOVERY ISSUE WILL NOT MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

Even if the Court were to determine that plaintiffs have demonstrated substantial ground for differences of opinion over a controlling issue of law (which they clearly have not), certification for interlocutory appeal would still be inappropriate because an immediate appeal would not materially advance the termination of the litigation.

"Ordinarily it is difficult to believe that a discovery order will present a controlling question of law or that an immediate appeal will materially advance the termination of the litigation. Thus, in most instances review under [28 U.S.C. § 1292(b) ] should not be allowed."

865634v.1

8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure* §
2006 (collecting cases); *see also Stockbridge Funding Corp. v. Fowler*, No. 91 C 10069 (FGC)
Adv. No. 92-9398 A.  No. M-47 (PKL), 1993 WL 205225, at * 5 (S.D.N.Y. June 8, 1993)
(noting that "courts have repeatedly held that, except in rare circumstances, discovery orders do
not present 'controlling questions of law' that will materially advance termination of the
litigation.").  Courts are especially unwilling to allow immediate review of discovery orders
under § 1292 where, as here, there is no possibility that reversal would actually "resolve any of
the substantive claims or eliminate the need for trial." *Union Pacific R.R. Co. v. Conagra
Poultry Co.*, 189 Fed. Appx. 576, 579 (8th Cir. 2006).  Indeed, courts have gone so far as to find
that interlocutory review of discretionary discovery order is "likely to delay, rather than advance
[the] litigation." *Franzon v. Massena Memorial Hosp.*, 189 F.R.D. 220, 225 (N.D.N.Y. 1999);
*see also Atlantic City Elec. Co. v. A. B. Chance Co*., 313 F.2d 431, 434 (2d Cir. 1963) ("[T]o
permit appellate review of this kind of discretionary discovery order, merely an intermediate step
in these complex cases, would thwart rather than effectuate the purpose of 1292(b) to 'materially
advance the ultimate termination of the litigation.'").  This is so because interlocutory appeal of
discovery rulings can delay resolution of cases while the parties await a ruling on whether the
materials will be available for the litigation and then, depending on the appeals court's ruling,
must await their actual production.  *Stockbridge Funding Corp.*, 1993 WL 205225, at *6.

Here, plaintiffs argue that interlocutory review will materially advance the litigation
because discovery of the materials in question may "bolster plaintiff's [sic] litigation position"
and "provide an unparalleled benefit to the PSC that may lend itself to the ultimate termination
of the litigation."  (Pl. Mem. at 3.)  Not surprisingly, however, plaintiffs are unable to cite a
single case suggesting that the potential for one party to gain a tactical advantage satisfies this

865634v.1

prong of the 1292(b) standard.[3]  Indeed, the relevant cases are to the contrary.  In *Maxey v. General Motors Corp.*, No. 3:95CV6-D-A, 1996 WL 737537 (N.D. Miss. Dec. 16, 1996), for example, the court rejected a similar argument, noting that whether "the disclosure of these documents might merely make [one party] more or less likely to prevail is ***not*** the question." Instead, "the inquiry focuses upon whether an appellate decision's potential impact is so great as to materially affect the ultimate outcome of the litigation."  *Id*.  Because defendant there offered nothing "[b]eyond its conclusory statements" that "would lend itself to such a finding," there was no basis for immediate review.  *Id*. at * 3.

The same is true here.  In their motion, plaintiffs offer only speculative statements that lawyer-created materials generated during the Martin investigation may "conflict with statements" made by witnesses in this litigation and are therefore "essential" to their defense. (Pls.' Mem. at 3.)  However, they fail to explain how disclosure of these protected materials will actually resolve this litigation any faster than would be the case were the materials to remain confidential.  While plaintiffs focus on their inability to "conduct a meaningful cross examination" without the materials in question (Pls.' Mem. at 3), this argument is unpersuasive given the millions of pages of documents and the great many hours of examination of Merck witnesses at deposition that are already at plaintiffs' disposal, and given the extensive cross-examinations based on those sources in the numerous Vioxx trials held to date.[4]

For this reason too, plaintiffs' motion should be denied.

---

[3]      Notably, not one of the cases cited by plaintiffs in support of their claim that immediate review will "materially advance" this litigation even deals with a motion for certification under 28 § 1292(b).  Instead, all three cases address the wholly separate issue of whether a party has established "special need" under Rule 26 to overcome work-product protection.  *See, e.g.*, *Duck v. Warren*, 160 F.R.D. 80, 82-83 (E.D. Va. 1995) (Pls.' Mem. at 3); *Gargano v. Metro-North*, 222 F.R.D. 38, 40-41 (D. Conn. 2004) (Pls.' Mem. at 3); *Dinter v. Sears, Roebuck & Co.*, 599 A.2d 528, 536 (N.J. Super. App. Div. 1991) (Pls.' Mem. at 3).

[4]      Plaintiffs' argument is particularly dubious in light of this Court's specific finding that "Plaintiffs have not demonstrated a substantial need for the materials underlying the Martin Report."  (Order at 10.)

11

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that the Court deny

plaintiffs' motion.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

865634v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 2d day of April, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

865634v.1