UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | * |
|     Products Liability Litigation | * |
| | * |
| This Document Relates to: | *   MDL No. 1657 |
| | * |
| BOYD EDMONDS and | *   SECTION L |
|     JANET EDMONDS, Plaintiffs, | * |
| | *   JUDGE ELDON E. FALLON |
|     versus | * |
| | *   MAGISTRATE JUDGE |
| MERCK & CO., INC., Defendant, | *   KNOWLES |
| | * |
| Case No. 05-5450, | * |
| | * |
|      & | * |
| | * |
| DONALD STINSON, Plaintiff, | * |
| | * |
|     versus | * |
| | * |
| MERCK & CO., INC., Defendant, | * |
| | * |
| Case No. 05-5494, | * |
| | * |
|      & | * |
| | * |
| TIMOTHY R. WATSON, Plaintiff, | * |
| | * |
|     versus | * |
| | * |
| MERCK & CO., INC., Defendant, | * |
| | * |
| Case No. 05-5545. | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**MERCK & CO., INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S
ORDER AND REASONS DENYING MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................ 1

I.  THE COURT MADE A CLEAR ERROR OF LAW IN FAILING TO
    RECOGNIZE THE WELL-SETTLED PRINCIPLE THAT WIDESPREAD
    PUBLICITY IS SUFFICIENT TO PLACE A PLAINTIFF ON NOTICE OF A
    POTENTIAL CLAIM ............................................................................................................ 2

    A.  The Court Erred In Failing To Recognize That Plaintiff Stinson's Claims
        Are Time-Barred ...................................................................................................... 4

        1.  The Court Misapplied Tennessee Law On Publicity And The
            Discovery Rule .............................................................................................. 4

        2.  Proper Application Of The Discovery Rule Mandates Dismissal Of
            Plaintiff Stinson's Claims ............................................................................. 7

    B.  The Court Erred In Failing To Recognize That Plaintiff Watson's Claims
        Are Time-Barred ...................................................................................................... 8

        1.  The Court Misapplied Kentucky Law On The Discovery Rule ................ 8

        2.  Proper Application Of The Discovery Rule Makes It Clear That
            Plaintiff Watson's Claims Are Time-Barred ............................................ 11

II. THE COURT ERRONEOUSLY CONCLUDED THAT ALABAMA COURTS
    APPLY THE FRAUDULENT CONCEALMENT DOCTRINE TO NON-
    FRAUD TORT CLAIMS ................................................................................................... 11

    A.  The "Discovery" Rule Does Not Apply To Plaintiff Edmonds's Strict
        Product Liability and Negligence Claims .............................................................. 12

    B.  Plaintiff Edmonds's Strict Product Liability, Failure-To-Warn, And
        Negligence Claims Are Time-Barred .................................................................... 14

CONCLUSION ........................................................................................................................... 15

**Cases**

*B&B Props. v. Dryvit Sys.*,
 708 So. 2d 189 (Ala. Civ. App. 1997) ............................................................................... 12, 14
*Ball v. Union Carbide Corp.*,
 376 F.3d 554 (6th Cir. 2004) ................................................................................................ 5
*Bell v. Goforth*,
 No. M2004-00997-COA-R3-CV, 2006 WL 627189 (Tenn. Ct. App. Mar. 14, 2006)............... 6
*Blanton v. Cooper Indus.*,
 99 F. Supp. 2d 797 (E.D. Ky. 2000) ............................................................................. 8, 9, 10
*Crisman v. Odeco, Inc.*,
 932 F.2d 413 (5th Cir. 1991) ............................................................................................... 14
*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
 523 F.2d 389 (6th Cir. 1975) ................................................................................................ 6
*Freeport-McMoran Sulphur L.L.C. v. Mike Mullen Energy Equip. Res., Inc.*,
 03-1496 ,2004 U.S. Dist. LEXIS 12183 (E.D. La. June 30, 2004)........................................ 1, 2
*Garrett v. Raytheon Co., Inc.*,
 368 So. 2d 516 (Ala. 1979) ................................................................................................. 13
*Gilmore v. M&B Realty Co., L.L.C.*,
 895 So. 2d 200 (Ala. 2004) ................................................................................................. 13
*Hazel v. General Motors Corp.*,
 863 F. Supp. 435 (W.D. Ky. 1994)........................................................................................ 9
*Henson v. Celtic Life Insurance Co.*,
 621 So. 2d 1268 (Ala. 1993)........................................................................................... 12, 13
*Hughes v. Vanderbilt Univ.*,
 215 F.3d 543 (6th Cir. 2000) ................................................................................................ 5
*In re Vioxx Prods. Liab. Litig.*,
 230 F.R.D. 473 (E.D. La. 2005)......................................................................................... 1, 2
*Leighton Ave. Office Plaza, Ltd. v. Campbell*,
 584 So. 2d 1340 (Ala. 1991)............................................................................................... 13
*Long v. Jefferson County*,
 623 So. 2d 1130 (Ala. 1993)............................................................................................... 13
*Maestas v. Sofamor Danek Group, Inc.*,
 33 S.W.3d 805 (Tenn. 2000)................................................................................................ 8
*Maestas v. Sofamor Danek Group, Inc.*,
 No. 02a01-9804-cv-00099, 1999 Tenn. App. LEXIS 97 (Tenn. Ct. App. Feb. 16, 1999) ..... 4, 5
*McLain v. Dana Corp.*,
 16 S.W.3d 320 (Ky. Ct. App. 1999) .................................................................................... 10
*Mueller Co. v. Trambeam Corp.*,
 693 So. 2d 1380 (Ala. Civ. App. 1997) ............................................................................... 13
*Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*,
 892 F. Supp. 794 (E.D. La. 1995)........................................................................................ 11
*Rutledge v. Freeman*,
 914 So. 2d 364 (Ala. Civ. App. 2004) ................................................................................. 13

*Ryan v. Charles Townsend Ford, Inc.*,
  409 So. 2d 784 (Ala. 1981) ..................................................................................................... 13
*Sanders v. Peoples Bank & Trust Co.*,
  817 So. 2d 683 (Ala. 2001) ..................................................................................................... 12
*Schildkraut v. Bally's Casino New Orleans, LLC*,
  No. 04-366, 2004 U.S. Dist. LEXIS 21412 (E.D. La. Oct. 20, 2004) ........................................ 2
*Shadrick v. Coker*,
  963 S.W.2d 726 (Tenn. 1998) .................................................................................................... 4
*Shorter v. McManus*,
  No. 03A01-9704-CV-00132, 1997 Tenn. App. LEXIS 789 (Tenn. Ct. App. Nov. 13, 1997) ... 4
*Turner v. Merck & Co., Inc.*,
  CV-2004-677 ............................................................................................................................. 15
*Van Antwerp v. Van Antwerp*,
  5 So. 2d 73 (1941) .................................................................................................................... 13
*Wade v. Danek Med., Inc.*,
  182 F.3d 281 (4th Cir. 1999) ................................................................................................... 11
*Williams v. Norwest Fin. Ala., Inc.*,
  723 So. 2d 97 (Ala. Civ. App. 1998) ....................................................................................... 12
*Wireman v. Fletcher*,
  CA No. 3:06-13-JMH, 2006 U.S. Dist. LEXIS 92059 (E.D. Ky. Dec. 20, 2006) ...................... 9

**Statutes**
Alabama Code § 6-2-3 ................................................................................................ 11, 12, 13, 14

## INTRODUCTION

Defendant Merck & Co., Inc. ("Merck") respectfully requests that the Court reconsider, pursuant to Federal Rule of Civil Procedure 59(e), its March 22, 2007 Order and Reasons (cited to herein as "Op."), denying Merck's motion for summary judgment as to plaintiffs Stinson, Watson, and Edmonds. As explained below, Merck respectfully submits that the Court's ruling is premised on two legal errors. *First*, the Court made an error of law in concluding that the widespread national media attention accompanying the voluntary withdrawal of Vioxx from the market on September 30, 2004 did not, as a matter of law, place claimants on notice of a potential claim against Merck under Tennessee and Kentucky law. Absent that conclusion, the Court would have rightly determined that plaintiffs Stinson's and Watson's claims are barred by the applicable statutes of limitations. *Second*, as to Mr. Edmonds's claim, the Court erroneously concluded that under Alabama law, a non-fraud tort cause of action may be tolled pursuant to the fraudulent concealment doctrine. For both of these reasons, the Court should grant Merck's motion to reconsider and enter summary judgment in Merck's favor as to each plaintiff's claims.

## ARGUMENT

A court should grant a motion to reconsider where the movant demonstrates: "(1) intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent injustice." *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473, 474-75 (E.D. La. 2005) (citing *Freeport-McMoran Sulphur L.L.C. v. Mike Mullen Energy Equip. Res., Inc.*, 03-1496, 03-1664, 2004 U.S. Dist. LEXIS 12183, at *4 (E.D. La. June 30, 2004)). A motion to reconsider is an extraordinary remedy, used sparingly, and not for purposes of re-debating the merits of a particular motion. *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. at 475 (citing *Schildkraut v. Bally's Casino New Orleans, LLC,*

-1-

No. 04-366, No. 04-504, 2004 U.S. Dist. LEXIS 21412, at *1 (E.D. La. Oct. 20, 2004) and

*Freeport-McMoran Sulphur LLC*, 2004 U.S. Dist. LEXIS 12183 at *4). However, even where

"the logic and reasoning of the opinion are sound," a court may "reevaluate its prior approach"

on a motion to reconsider where, for example, "the practical effect [of a ruling] has created

unintended consequences that can cause more problems than it sought to solve." *In re Vioxx*

*Prods. Liab. Litig.*, 230 F.R.D. at 475. In this case, reconsideration is necessary to correct two

clear errors of law that, if not reversed, will result in manifest injustice to Merck and undermine

the Court's efforts to define the parameters of this litigation.

## I. THE COURT MADE A CLEAR ERROR OF LAW IN FAILING TO RECOGNIZE THE WELL-SETTLED PRINCIPLE THAT WIDESPREAD PUBLICITY IS SUFFICIENT TO PLACE A PLAINTIFF ON NOTICE OF A POTENTIAL CLAIM.

In holding that plaintiffs Stinson's and Watson's claims are not barred by the applicable

statutes of limitations, the Court concluded that, notwithstanding the unprecedented media

attention accompanying the voluntary withdrawal of Vioxx from the market on September 30,

2004, material issues of fact remain for the jury as to when each plaintiff was reasonably on

notice of his claim against Merck. The Court's conclusion is erroneous because Tennessee and

Kentucky (like many states around the country) have adopted the principle that media coverage

(even far less extensive media coverage than occurred following the Vioxx withdrawal) is

sufficient to place a plaintiff on notice of a potential claim *as a matter of law*.[1]

Merck's withdrawal of Vioxx triggered substantial media attention and advertising

campaigns by attorneys in all 50 states. Immediately upon the drug's withdrawal, major

newspapers across the country reported both that Merck had withdrawn Vioxx from the market

---

[1]    As discussed in Section II, *infra*, tolling is not available under a fraudulent concealment or discovery rule theory under Alabama law for product liability claims that do not sound in fraud.

and that the reason for withdrawal was a concern about the increased rate of cardiovascular events observed in the APPROVe study. (*See* Mot. for Summ. J. at 4-5 (collecting examples from *USA Today*, *Los Angeles Times*, *New York Times*, *Wall Street Journal*, and *Washington Post*).) *In the first month after the withdrawal of Vioxx, there were at least 1,648 articles or reports in media outlets around the country about the Vioxx controversy.*[2] Moreover, thousands of lawsuits involving even more thousands of plaintiffs were filed in the first six months after withdrawal – compelling circumstantial evidence that the message from those news reports had been received. (*See* Reply in Supp. of Mot. for Summ. J. at 2-3.) Even as scientists debated the significance of the results of APPROVe and other Vioxx and Cox-2 studies, headlines linking Vioxx to cardiovascular injuries and discussing the growing number of lawsuits faced by Merck continued to be printed and broadcast around the country.

Merck's simple contention is that, as a matter of Kentucky and Tennessee law, the publicity surrounding the withdrawal of Vioxx was so voluminous and wide-reaching that reasonable persons who took Vioxx and suffered cardiovascular injuries were on notice of possible causes of action on the date of withdrawal. In fact, as demonstrated below, *the plaintiffs in these cases all but admit knowledge of the drug's risks by the time of its withdrawal.* Accordingly, as explained further below, there is no material factual dispute, and the Court should decide as a matter of law that these Vioxx plaintiffs' limitation periods started ticking no later than September 30, 2004.

---

[2]     This statistic is based on a search of U.S. news outlets on the Lexis/Nexis database for the period between September 30, 2004 and October 30, 2004.

**A.**     **The Court Erred In Failing To Recognize That Plaintiff Stinson's Claims Are Time-Barred.**

>     1.     **The Court Misapplied Tennessee Law On Publicity And The Discovery Rule.**

While the Court was correct that Tennessee law recognizes both a discovery rule and the fraudulent concealment doctrine, the Court erred in failing to recognize that: (1) statute of limitations questions can be resolved as a matter of law; and (2) the unprecedented publicity and ongoing media reports regarding the Vioxx withdrawal and ensuing litigation defeat any argument for tolling plaintiff Stinson's claims past the date on which Vioxx was withdrawn.

*First*, it is plain that questions involving application of the discovery rule under Tennessee law are amenable to resolution by summary judgment where there has been publicity about the controversy at issue in the litigation. In fact, in the main case on which Merck relied, *Maestas v. Sofamor Danek Group, Inc.*, No. 02a01-9804-cv-00099, 1999 Tenn. App. LEXIS 97, at *16-17 (Tenn. Ct. App. Feb. 16, 1999), the Tennessee appellate courts affirmed summary judgment in favor of the defendant on limitations grounds, even though the publicity at issue there paled in comparison to the maelstrom of media coverage following the withdrawal of Vioxx. *See id.* (quoting *Shorter v. McManus*, No. 03A01-9704-CV-00132, 1997 Tenn. App. LEXIS 789 (Tenn. Ct. App. Nov. 13, 1997)). The court noted no need to have the issue resolved by a jury; the issue was resolved as a matter of law.

*Maestas* was part of a litigation over bone screws widely used as spinal fixation devices, which were FDA-approved but not for use in spines. *See Shadrick v. Coker*, 963 S.W.2d 726, 730 (Tenn. 1998). In *Maestas*, the defendant manufacturer moved for summary judgment, arguing that the plaintiffs' claims were barred by the one-year statute of limitations under Tennessee law. Like plaintiffs in this case, the plaintiffs in *Maestas* argued that the discovery rule should have tolled the limitation period. The defendant disagreed, pointing to a *single* airing

-4-

of a nationwide television program on December 16, 1993, as the last date that, as a matter of law, could have started plaintiffs' limitation period.

The trial court granted summary judgment, and the court of appeals affirmed: "We do not see how the discovery rule could continue to toll the statute of limitations after that date, since the nature of the allegedly wrongful conduct was at minimum knowable, if not actually known, to plaintiffs from that day forward." *Maestas*, 1999 Tenn. App. LEXIS 97, at *12. Going further, the court noted that – again as in the instant litigation – the "publicity generated a veritable host of lawsuits in U.S. District Courts as to activate multi-district procedures." *Id.* at *12 n.8.

The Sixth Circuit applied the same rule in *Ball v. Union Carbide Corp.*, 376 F.3d 554, 563-64 (6th Cir. 2004). In *Ball*, the plaintiffs claimed to have been harmed by exposure to radioactive and other toxic substances due to the proximity of a nuclear weapons manufacturing plant. The Sixth Circuit affirmed summary judgment on behalf of the defendants, holding that plaintiffs' claims were barred by the Tennessee statute of limitations. Though plaintiffs argued the statute of limitations did not begin to run until the release of a report outlining the first instance when a definite link between exposure and illness was established, the court disagreed. Applying the one-year statute of limitations for personal-injury actions that is applicable in Mr. Stinson's case, the court concluded that "local and national news media repeatedly covered the issue." *Id.* at 563. As a result, the court held that "[p]laintiffs should have raised their claims sometime in the late 1990s when it became apparent that they may have had a viable claim." *Id.* at 564; *see also Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (affirming summary judgment on limitations grounds under Tennessee law and finding that "publicity was sufficient to charge Hughes with constructive knowledge of the events underlying her cause of

-5-

action" because the "objective standard is the appropriate test for determining a date of discovery").

*Second*, there is no factual dispute regarding plaintiff Stinson's discovery of his cause of action because his affidavit to the Court merely states: "*Prior* to the withdrawal of Vioxx from the market on September 30, 2004, I had no knowledge that the drug was associated with causing cardiovascular injuries and/or that other plaintiffs had brought claims against Merck." (Pls.' Opp. Ex. B ¶ 6.) Notably, Mr. Stinson has *never* alleged in any complaint or affidavit that he had no such knowledge on or after September 30, 2004. Thus, plaintiff himself has essentially conceded awareness of his cause of action on the date of the Vioxx withdrawal.

*Third*, plaintiffs' alternative tolling doctrine – fraudulent concealment – also fails as a matter of law. As Merck explained to the Court in its briefing, the considerations relevant to the discovery rule and fraudulent concealment merge at the requirement of diligence on the part of the plaintiff: both doctrines cease to toll a limitations period under Tennessee law when a plaintiff has reason to know he has a cause of action. *See, e.g., Bell v. Goforth*, No. M2004-00997-COA-R3-CV, 2006 WL 627189 (Tenn. Ct. App. Mar. 14, 2006) (affirming trial court's dismissal of claims as untimely notwithstanding plaintiff's arguments under both discovery rule and fraudulent concealment doctrines for the same reason: "Ms. Bell failed to exercise due diligence"). *See also Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) ("failure to investigate further at [time of industry-wide publicity] was not the exercise of due diligence required in order to employ the fraudulent concealment doctrine to avoid the bar of the statute of limitations"). The same is true here: even if plaintiffs' claims that Merck fraudulently concealed the alleged risks of Vioxx prior to its withdrawal are accurate, the publicity following withdrawal simply precludes any further claim of concealment.

-6-

Finally, even if fraudulent concealment could somehow overcome the widespread media reports that should have alerted a prospective plaintiff of his possible claim, plaintiff Stinson's claims of fraudulent concealment should fail for the additional reason that they are logically flawed. The only specific claim of post-withdrawal concealment raised by plaintiffs is the "18-month defense." With respect to plaintiff Stinson, this claim fails first and foremost because Mr. Stinson alleged in his complaint that *he took Vioxx for more than 18 months*. (*See* Stinson Compl. ¶ 5 ("Donald Stinson . . . was prescribed and used the prescription medication VIOXX (Rofecoxib) from April 2000 through April 2002 . . . .").) Furthermore, as Merck argued in its reply brief, the "18-month defense" is a logically indefensible trigger for the limitation period because all three plaintiffs' complaints were filed *before* Merck reported an error in its APPROVe publication, on May 30, 2006. (*See* Reply at 3.) In any event, the fact that thousands of plaintiffs alleging Vioxx usage for under 18 months filed suit before the error was reported simply highlights the implausibility of plaintiff Stinson's fraudulent concealment theory. Thus, plaintiff Stinson does not have any basis for tolling under the fraudulent-concealment doctrine.

For all of these reasons, the limitations period for Stinson should have begun running no later than September 30, 2004 as a matter of law.

### 2. Proper Application Of The Discovery Rule Mandates Dismissal Of Plaintiff Stinson's Claims.

Proper application of the discovery rule to Mr. Stinson's claims makes it clear that plaintiff Stinson filed his claim too late. As noted above, the latest date on which Mr. Stinson's claims could have accrued was September 30, 2004 (*i.e.*, the date on which Vioxx was withdrawn). Accordingly, under Tennessee law, his claim expired one year later – on September 30, 2005. However, Stinson did not sue until November 8, 2005, more than a month after his claim became time-barred.

-7-

The one potential avenue for tolling Mr. Stinson's claims would be the *American Pipe* doctrine. As Merck explained in its prior briefing, however, the ***Tennessee Supreme Court has explicitly rejected cross-jurisdictional tolling***, and no personal injury Vioxx class actions have ***ever*** been filed in Tennessee. *See Maestas v. Sofamor Danek Group, Inc.,* 33 S.W.3d 805 (Tenn. 2000). (*See* Merck's Mot. For Summ. J., at 20.) Thus, Stinson's claims cannot be saved by *American Pipe* tolling.

For these reasons, the Court's ruling was in error. Plaintiff Stinson's claim is stale, and the Court should reconsider its prior ruling and enter summary judgment in Merck's favor.

## B.     The Court Erred In Failing To Recognize That Plaintiff Watson's Claims Are Time-Barred.

### 1.     The Court Misapplied Kentucky Law On The Discovery Rule.

Kentucky law – like Tennessee law – also compels a finding as a matter of law that plaintiff Watson's limitation period began to run no later than September 30, 2004.

As in Tennessee, it is plain that under Kentucky law, a court can grant summary judgment on questions involving the discovery rule and fraudulent concealment. Once again, the key case Merck relied on its briefing involved a grant of summary judgment based on publicity regarding the plaintiff's cause of action. *Blanton v. Cooper Indus.*, 99 F. Supp. 2d 797, 801 (E.D. Ky. 2000) (emphasis added) (summary judgment is appropriate on limitations issues "if the plaintiffs can prove no set of facts to support a verdict in their favor").

In *Blanton*, plaintiffs sued over a toxic spill that they alleged caused them cancer. Plaintiffs argued that the news reports were insufficient to trigger discovery by focusing on their "subjective knowledge of their injuries and the cause." *Id.* at 802. Specifically, one plaintiff argued that his illiteracy prevented him from learning of the incident; the other plaintiff argued that the reference to a particular community (not hers) prevented her from making the link. *Id.* at

-8-

802-03. The court rejected these arguments and granted summary judgment. According to the court, "widespread reports by local, regional, and national media" of the spill rendered plaintiffs' discovery-rule and fraudulent-concealment arguments insufficient as a matter of law to toll the limitations period. *Id.* at 799, 802-03. According to the court, "[t]he discovery rule focuses not on when a plaintiff has actual knowledge of a legal cause of action, but whether a plaintiff acquired knowledge of existing facts sufficient to put the party on inquiry." *Id.* at 802. Indeed, "'any fact that should excite his suspicion is the same as actual knowledge of his entire claim . . . [and] the means of knowledge are the same thing in effect as knowledge itself.'" *Id.* (quoting *Hazel v. General Motors Corp.*, 863 F. Supp. 435, 440 (W.D. Ky. 1994)). The court also pointed to the hundreds of other plaintiffs who had filed suits in a timely manner, concluding that the plaintiffs in this case "failed to exhibit the qualities of attention, knowledge, intelligence and judgment that society requires of its members for their own protection." *Id.* at 803 (citation and quotation marks omitted). *See also Wireman v. Fletcher*, CA No. 3:06-13-JMH, 2006 U.S. Dist. LEXIS 92059, at *23 (E.D. Ky. Dec. 20, 2006) (plaintiff "had reason to know of her injury" because, *inter alia*, the "defendants she named in her complaint . . . were the subjects of extensive media coverage throughout the summer and fall of 2005, coverage that specifically mentioned that position and their roles in suspect hiring practices").

Once again, the facts here are more – not less – compelling than *Blanton*. Unlike *Blanton*, plaintiffs do not offer any subjective reason such as illiteracy as to why they were not aware of the Vioxx controversy (which was, in any event, covered extensively in the broadcast media as well). Indeed, plaintiff Watson does not allege that he was unaware of the alleged risks of Vioxx as of September 30, 2004. To the contrary, like plaintiff Stinson, his affidavit to the Court merely states: "***Prior*** to the withdrawal of Vioxx from the market on September 30, 2004, I had

-9-

no knowledge that the drug was associated with causing cardiovascular injuries and/or that other plaintiffs had brought claims against Merck." (Pls.' Opp'n Ex. A ¶ 6.) Under *Blanton*, it is clear that plaintiff Watson's discovery period began – as a matter of Kentucky law – no later than the date of the Vioxx withdrawal.

The *Blanton* court also rejected plaintiffs' fraudulent-concealment arguments. The court found fault with these claims because the plaintiffs "have not alleged that any of the defendants' actions actually caused the plaintiffs not to file suit," noting that the "statute cannot be tolled without at least some connection." *Id.* The same is true here. Though Mr. Watson actually did plead that Merck's *pre*-withdrawal representations caused him not to file his suit (*see* Watson Compl. ¶ 64; Pls.' Opp'n Ex. A ¶ 6), he has never made any allegation that any action by Merck after withdrawal caused him to delay filing his suit. The only argument that has ever been set forth that Merck engaged in any specific post-withdrawal concealment is the one contained in plaintiffs' collective opposition to this motion (and not in any pleading) – that of the "18-month defense." But as explained above, the ostensible revelation that the "18-month defense" was no longer viable occurred *after* Mr. Watson filed his suit and is thus not a logical trigger for his limitations period. As *Blanton* explains, there must be a link between a specific action by the defendant and the plaintiff's decision not to file a suit. *Blanton*, 99 F. Supp. 2d at 803. Furthermore, the numerous reports in the media of a link between Vioxx and heart attacks were sufficient to apprise Mr. Watson of a possible cause of action – accrual of a claim is not held in abeyance until the plaintiff has learned every critical detail of his case, as the Court's own authority concedes. *See McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999) ("A person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor.") (cited in Op. at 18). Accordingly, the

-10-

Court should hold as a matter of law that plaintiff Watson could not prove any set of facts that could toll the limitation period under the fraudulent-concealment doctrine.

### 2. Proper Application Of The Discovery Rule Makes It Clear That Plaintiff Watson's Claims Are Time-Barred.

Once it is clear that plaintiff Watson's claims accrued – at the latest – on the date of the Vioxx withdrawal, it is equally clear that his claims are stale. Vioxx was withdrawn from the market on September 30, 2004. Watson filed his suit more than one year later – on November 14, 2005.

*American Pipe* cannot save his tardy claim. Kentucky courts have *never* recognized *American Pipe*, let alone cross-jurisdictional tolling. Moreover, the law is clear that federal courts should not extend *American Pipe and certainly not cross-jurisdictional tolling* to states that do not recognize these concepts. *See Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995) (rejecting extension of *American Pipe* tolling to Hawaii law because the state's limitations statutes do not recognize the concept); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286-87 (4th Cir. 1999) (under *Erie* principles, a federal court should not adopt a cross-jurisdictional tolling doctrine on behalf of a state that has never weighed in on *American Pipe* tolling). Because no personal injury Vioxx-related class actions have been filed in Kentucky state court, and there is certainly no basis under Kentucky law for affording Watson *American Pipe* tolling based on class actions filed in other courts (even if the state had adopted some form of *American Pipe* tolling), plaintiff Watson's claims are barred and should have been dismissed by the Court as a matter of law.

## II. THE COURT ERRONEOUSLY CONCLUDED THAT ALABAMA COURTS APPLY THE FRAUDULENT CONCEALMENT DOCTRINE TO NON-FRAUD TORT CLAIMS.

The Court also wrongly concluded that Alabama Code § 6-2-3, the state's fraudulent

-11-

concealment statute, applied to plaintiff Edmonds's *non-fraud* claims. (Op. at 14.) Under that provision, "[i]n actions *seeking relief on the ground of fraud* where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." *Id.* (emphasis added). As set forth below, this provision – by its terms – does not apply to plaintiff Edmonds's non-fraud claims. Moreover, Alabama does not recognize the "discovery rule" for personal injury claims. Accordingly, plaintiff Edmonds's strict product liability, failure-to-warn, and negligence claims are barred by Alabama's two-year statute of limitations.

## A.   The "Discovery" Rule Does Not Apply To Plaintiff Edmonds's Strict Product Liability and Negligence Claims.

Contrary to the Court's ruling, Alabama law is absolutely clear that the "discovery" rule and "fraudulent concealment" doctrine do not apply to non-fraud causes of action. For example, in *Henson v. Celtic Life Insurance Co.*, the Alabama Supreme Court stated that "[t]here is . . . no discovery rule to toll the running of the limitations period with respect to negligence or wantonness actions; the discovery rule in Alabama is applicable *only* to fraud actions." 621 So. 2d 1268, 1274 (Ala. 1993) (finding that plaintiff's negligence and wantonness claims were barred by the two-year statute of limitations that began running on the date her injury occurred) (emphasis added). *See also Sanders v. Peoples Bank & Trust Co.*, 817 So. 2d 683, 686 (Ala. 2001) ("[D]iscovery rule . . . applies only to fraud actions and does not apply to actions based upon allegations of negligent or wanton conduct."); *Williams v. Norwest Fin. Ala., Inc.*, 723 So. 2d 97, 104 (Ala. Civ. App. 1998) ("Alabama has no 'discovery rule' with respect to negligence or wantonness actions that would toll the running of the limitations period."); *B&B Props. v. Dryvit Sys.*, 708 So. 2d 189, 192 (Ala. Civ. App. 1997) (same). Instead, such claims accrue on the date of the first legal injury whether or not the full amount of damages is apparent at that

-12-

time. *Gilmore v. M&B Realty Co., L.L.C.*, 895 So. 2d 200, 208 (Ala. 2004); *Mueller Co. v. Trambeam Corp.*, 693 So. 2d 1380, 1382 (Ala. Civ. App. 1997) (*quoting Long v. Jefferson County*, 623 So. 2d 1130, 1137 (Ala. 1993)). As a result, plaintiff Edmonds's strict product liability, failure-to-warn, and negligence actions accrued on September 2, 2001 (at the latest), the day his second heart attack occurred. *Henson*, 621 So. 2d at 1274 ("The statutory period of limitations for negligence and wantonness actions . . . is two years *from the date the injury occurred*.") (emphasis added); *see also Gilmore*, 895 So. 2d at 207-08; *Garrett v. Raytheon Co., Inc.*, 368 So. 2d 516, 518-19 (Ala. 1979).

Though the Court relies on *Rutledge v. Freeman,* 914 So. 2d 364, 369-71 (Ala. Civ. App. 2004) (Op. at 14) for the proposition that the provisions of § 6-2-3 apply to any cause of action that has been fraudulently concealed (not solely fraud actions), *Rutledge* provides no basis for the application of § 6-2-3 in the product liability context because that case involved an action for legal malpractice. As the *Rutledge* court noted, the Alabama Supreme Court has explicitly "recognized that the savings provision of § 6-2-3 applies" in actions for legal malpractice based on allegations of fraud. 914 So. 2d at 369. *See Leighton Ave. Office Plaza, Ltd. v. Campbell*, 584 So. 2d 1340, 1344 (Ala. 1991) ("The 'saving provision' applicable in fraud actions generally . . . is also . . . applicable in legal malpractice actions *based on allegations of fraud*.") (emphasis added). The Court's reliance on *Van Antwerp v. Van Antwerp*, 5 So. 2d 73 (1941) (Op. at 15) is similarly misplaced because *Van Antwerp* too involved allegations based on fraud, *i.e.*, the fraudulent conveyance of personal property. *See id.* at 81 ("complainants' claim being to recover personal property, and the assertion of fraud being in the nature of an impediment in the way of that title").[3] In contrast to these fraud-based cases, Alabama courts have uniformly

---

3       The Court's other citations are either inapposite, support Merck's position, or both. *See Ryan v. Charles Townsend Ford, Inc.*, 409 So. 2d 784, 786 (Ala. 1981) (Op. at 15) (applying § 6-2-3 only to plaintiff's fraud cause of

rejected fraudulent concealment tolling in product liability and negligence cases. The cases cited by the Court do not disturb that conclusion.

In short, although the Court concluded that Alabama Code § 6-2-3 applies to any cause of action that has been fraudulently concealed from a plaintiff, thereby creating material fact issues for the jury as to when plaintiff Edmonds's claims accrued (Op. at 14-15), Alabama case law makes clear that conclusion was erroneous. *See B&B Props.*, 708 So. 2d at 192 (finding that statute of limitations on plaintiff's claims for negligence and wantonness began to run as soon as damage was apparent, no matter how slight, and stating that any argument that the claims were tolled because defendants "fraudulently concealed the damage after they inspected and repaired it . . . is without merit" because such tolling can only apply to fraud claims). Accordingly, plaintiff Edmonds's claims accrued, at the latest, on the date of his second heart attack – September 2, 2001.

## B.     Plaintiff Edmonds's Strict Product Liability, Failure-To-Warn, And Negligence Claims Are Time-Barred.

Plaintiff Edmonds alleges that he suffered two heart attacks – the first on March 27, 2001 and the second on September 2, 2001. He filed his suit more than four years *after the second heart attack* – on November 7, 2005. As set forth above, Alabama does not recognize a "discovery rule" for any of plaintiff Edmonds's negligence and failure-to-warn claims, each of which carries a two-year limitations period. Thus, *his non-fraud claims accrued on the date of his alleged injury*, and the limitations period on those claims expired on September 2, 2003.

---

action; reversing summary judgment on implied warranty claim on separate and independent grounds); *Crisman v. Odeco, Inc.*, 932 F.2d 413, 417 (5th Cir. 1991) (Op. at 15) ("While evaluating when a plaintiff reasonably was put on notice ordinarily is a factual determination, in this case there was such an *overwhelming array of evidence indicating that the case was time-barred that summary judgment was appropriate.*") (emphasis added).

Moreover, the Court's contention that Alabama allows a limitations period to be tolled by successive class action filings and the Court's further concern that plaintiff Edmonds's claims may be tolled "by Vioxx class actions filed in other jurisdictions" (Op. at 15 n.4), even if meritorious, do not require a different result. Even allowing for tolling of the limitations period based on the pendency of the *Cain/Lettieri* class action (from May 29, 2001 to September 18, 2002), plaintiff Edmonds's claims still must have been filed by *September 18, 2004*. Furthermore, even if the Court allows for *Cain/Lettieri* tolling and stacking of the personal injury class action identified by the Court, *Turner v. Merck & Co., Inc.*, CV-2004-677, filed in the Circuit Court of Houston County, Alabama, plaintiff Edmonds's claims are still barred because the *Turner* action was filed on *October 4, 2004*, more than two weeks after his claim would have expired.

In short, *even giving plaintiff Edmonds the benefit of all potentially applicable American Pipe-based tolling doctrines*, his claims were still time-barred by the time he sued. For this reason too, Merck is entitled to reconsideration.

## CONCLUSION

For the reasons set forth above, the Court should grant Merck's motion to reconsider and enter summary judgment on all the claims of plaintiffs Stinson and Watson and the product liability, failure-to-warn, and strict liability claims of plaintiff Edmonds.

-15-

Respectfully submitted,

s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Carmelite M. Bertaut, 3054
STONE PIGMAN WALTHER WITTMANN
L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Reconsideration has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 5th day of April, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel